1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN
6   FRED NORTON
    KIERAN P. RINGGENBERG
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com
    (pro hac vice applications to be submitted)
11
    Attorneys for Plaintiffs Oracle USA, Inc. and
12  Oracle International Corp.

    BINGHAM MCCUTCHEN LLP
    GEOFFREY M. HOWARD
    THOMAS S. HIXSON
    KRISTEN A. PALUMBO
    Three Embarcadero Center
    San Francisco, CA  94111-4067
    Telephone:  415.393.2000
    Facsimile:  415.393.2286
    geoff.howard@bingham.com
    thomas.hixson@bingham.com
    kristen.palumbo@bingham.com
    (pro hac vice applications to be submitted)

    DEBORAH K. MILLER
    JAMES C. MAROULIS
    ORACLE CORPORATION
    500 Oracle Parkway
    M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    deborah.miller@oracle.com
    jim.maroulis@oracle.com
    (pro hac vice applications to be submitted)

13

14                  UNITED STATES DISTRICT COURT

15                        DISTRICT OF NEVADA

16
    ORACLE USA, INC., a Colorado corporation;        Case No.  2:10-cv-106
17  and ORACLE INTERNATIONAL
    CORPORATION, a California corporation,           COMPLAINT FOR DAMAGES AND
18                                                   INJUNCTIVE RELIEF FOR:
                    Plaintiffs,
19                                                   (1) COPYRIGHT INFRINGEMENT;
            v.                                       (2) VIOLATIONS OF THE FEDERAL
20                                                   COMPUTER FRAUD AND ABUSE
    RIMINI STREET, INC., a Nevada corporation;       ACT;
21  SETH RAVIN, an individual,                       (3) VIOLATIONS OF THE
                                                     COMPUTER DATA ACCESS AND
22                  Defendants.                      FRAUD ACT;
                                                     (4) VIOLATIONS OF NRS 205.4765;
23                                                    (5) BREACH OF CONTRACT;
                                                     (6) INDUCING BREACH OF
24                                                   CONTRACT
                                                     (7) INTENTIONAL INTERFERENCE
25                                                   WITH PROSPECTIVE ECONOMIC
                                                     ADVANTAGE;
26                                                   (8) NEGLIGENT INTERFERENCE
                                                     WITH PROSPECTIVE ECONOMIC
27                                                   ADVANTAGE;
                                                     (9) UNFAIR COMPETITION;
28                                                   (10) TRESPASS TO CHATTELS;

A/73245022.11/2021039-0000337130

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**(11) UNJUST ENRICHMENT / RESTITUTION;**
**(12) UNFAIR PRACTICES; and**
**(13) AN ACCOUNTING.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Oracle USA, Inc. ("Oracle USA") and Oracle International Corporation ("OIC") (together "Oracle" or "Plaintiffs") for their Complaint against Defendants Rimini Street, Inc. and Seth Ravin, allege as follows based on their personal knowledge as for themselves, and on information and belief as to the acts of others:

**I.     JURISDICTION**

1.     Oracle's first cause of action arises under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and its second cause of action arises under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

2.     This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court also has original subject matter jurisdiction over the state law claims under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the Plaintiffs and the Defendants, and the amount in controversy exceeds $75,000.

**II.    INTRODUCTION**

4.     *"The key is you have to be authorized. . . . Either you're authorized or you're not."*  (Seth Ravin, commenting on Oracle's 2007 lawsuit against SAP for illegally downloading Oracle's intellectual property).

5.     This case is about the massive theft of Oracle's software and related support materials through an illegal business model by Defendant Rimini Street and its CEO and President, Defendant Seth Ravin.  Rimini Street holds itself out as a support provider to companies that license certain of Oracle's enterprise software applications, including its

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    PeopleSoft, J.D. Edwards ("JDE") and Siebel-branded software.  Central to Rimini Street's

2    business model is the illegal downloading of Oracle's Software and Support Materials[1] in a

3    scheme that is vast in scope, consisting of many thousands of Software and Support Materials.

4    Rimini Street typically logs on to Oracle's password protected Technical Support websites using

5    a customer credential, then downloads Software and Support Materials in excess of the

6    customer's authorization under its license agreement.  Sometimes Rimini Street will download

7    hundreds or even thousands of Software and Support Materials at a time, relating to entire

8    families of software (e.g., PeopleSoft, JDE, or Siebel) that the customer does not license and for

9    which it has no use.

10           6.      Rimini Street automates its massive downloading with "robots" or

11   "crawlers," in intentional violation of Oracle's Technical Support website Terms of Use.  These

12   intrusions have damaged Oracle's support services by causing the databases which host the

13   Software and Support Materials to freeze, disrupting their operation and impeding the

14   availability of lawful downloads to Oracle's other customers.

15           7.      Ravin has admitted that downloads in excess of the customer's

16   authorization are improper.  In an interview he explained that "It is very common for [a

17   customer] to provide a password and ID for us to get to download upgrades and support.  It's a

18   standard industry practice across every consulting firm.  *The key is you have to be authorized*."

19   (emphasis supplied).  Ravin emphasized that "[y]ou need to be very careful about parsing

20   documents – whether you take 20 or hundreds.  *Either you're authorized or you're not*."

21   (emphasis supplied).

22           8.      Ravin's admission that Rimini Street may not download Oracle Software

23   and Support Materials for which the customer lacks authorization is correct.  His description of

24   Rimini Street's business practices is false.  Rimini Street's massive, illegal downloads of Oracle

25   _____

26   [1]      These copyrighted materials, which include software applications and environments,
     program updates, software updates, bug fixes, patches, custom solutions, and instructional
27   documents across the entire PeopleSoft, J.D. Edwards and Siebel families of software products,
     are referred to throughout as "Software and Support Materials."

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Software and Support Materials violates Rimini Street's contracts with its customers, their

2    licenses with Oracle, the Terms of Use, and civil and criminal laws.

3           9.    Rimini Street's business model includes more than just illegal

4    downloading.  Ravin has caused Rimini Street to acquire copies of its customers' licensed Oracle

5    enterprise applications software.  In the course of its business, Rimini Street makes additional

6    illegal copies of this software, and uses it in various illegal ways to provide its low-cost support.

7          10.    This illegal business model is not new for Ravin.  He helped create this

8    illegal scheme at his prior company, TomorrowNow ("SAP TN"), with his partner, Andrew

9    Nelson.  Under this business model, SAP TN gained repeated and unauthorized access to

10   Oracle's intellectual property.  It made and used thousands of copies of Oracle's copyrighted

11   software applications and relied on illegal downloading from Oracle websites, using custom

12   programmed "scraping" tools designed to "scrape" Oracle's website for bug fixes, patches,

13   updates and instruction manuals.

14         11.    Ravin and Nelson sold SAP TN to the German software conglomerate

15   SAP AG, and Ravin soon left to later found Rimini Street.  SAP AG publicly admitted that SAP

16   TN improperly copied Oracle Software and Support Materials, and in October 2008 shut down in

17   SAP TN October 2008 having concluded that it could not provide support services without

18   infringing on Oracle's intellectual property rights.

19         12.    Ravin has admitted that Rimini Street mimics and expands the SAP TN

20   model:  "Our [Rimini Street's] basic model for TomorrowNow customers is that you're going to

21   get the same kind of savings" because "[w]hat we're offering is on top of what they're used to,

22   which is the vanilla offering that I actually assembled – because it hasn't changed much from

23   what I put together at TomorrowNow several years ago when we were launching the company."

24         13.    Rimini Street's marketing literature emphasizes how little difference

25   customers would notice from SAP TN's service offering, stating that converting is as "Easy as 1-

26   2-3."  For example, Rimini Street stated that tax and regulatory updates to Oracle software

27   applications "are packaged the same as Client is used to receiving previously from PeopleSoft

28   Corporation and then TomorrowNow, Inc.  There is no difference in how Rimini Street tax and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  regulatory updates are installed." Oracle, of course, owned the intellectual property rights to the

2  software SAP TN copied and used to create its illegal updates. Ravin and Rimini Street knew

3  that and capitalized on it by copying the model and boasting about the similarity in services.

4         14.     The corrupt business model Ravin helped to create continues in full force

5  at Rimini Street. Oracle brings this lawsuit to stop it once and for all, to stop Rimini Street's

6  illegal activity and redress the harm that Rimini Street has caused by its illegal conduct. Rimini

7  Street's copyright infringement and other illegal, wrongful, and unfair business practices threaten

8  to cause irreparable harm to Oracle, its many employees, customers, shareholders and the

9  industry at large. Oracle has no adequate remedy at law for the harm threatened and caused by

10  these acts..

11  **III.    THE PARTIES**

12         15.     Oracle USA is a Colorado corporation, with its principal place of business

13  in Redwood City, California. Oracle USA develops and licenses certain intellectual property,

14  including copyrighted enterprise software programs, and provides related services. Oracle USA

15  is the successor to PeopleSoft USA, Inc. ("PeopleSoft") and a successor in interest to certain

16  PeopleSoft, JDE, and Siebel entities.

17         16.     OIC is a California corporation, with its only place of business in

18  Redwood City, California. OIC owns and licenses certain intellectual property, including

19  copyrighted enterprise software programs used around the world. Intellectual property rights

20  formerly held by certain PeopleSoft, JDE, and Siebel entities were transferred to OIC as part of

21  the acquisitions of PeopleSoft and Siebel by Oracle. OIC is the owner or exclusive licensee of

22  the copyrights at issue in this action.

23         17.     Seth Ravin is the founder, president and CEO of Rimini Street and the

24  former President of SAP TN. He is a resident of Nevada.

25         18.     Rimini Street, Inc., is a Nevada corporation with its principal place of

26  business in Las Vegas, Nevada. Ravin founded and controls Rimini Street.

27         19.     Oracle is currently unaware of the true names and capacities of Does 1

28  through 50, inclusive, whether individual, partnership, corporation, unincorporated association,

1   or otherwise.  Due to the surreptitious nature of Defendants' actions, and the complicated nature

2   of their scheme, the identities of the Does 1 through 50 have been concealed from Oracle,

3   preventing Oracle from identifying them by name.  After discovery, which is necessary to

4   ascertain the true names and capacities of Does 1 through 50, Oracle will amend its complaint to

5   allege the necessary identifying details.

6           20.     Defendants all are doing business in and have directed their activities at

7   Nevada.  Rimini Street is headquartered in this district, and Ravin resides in this district.  Rimini

8   Street committed its illegal downloading in Nevada, and provided illegal copies of Oracle

9   Software and Support Materials from, among other places, Nevada.  Rimini Street also

10  advertises, promotes, sells, licenses, services, and supports customers in Nevada.  Defendants

11  have also committed their unlawful conduct in other states.

12          21.     At all material times, through his ownership of Rimini Street and his role

13  as CEO and President, Seth Ravin had both the right and the authority to control the actions of

14  the corporation.

15          22.     At all material times, each of the Defendants, as well as Does 1 through

16  50, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent,

17  affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial

18  assistance to the alleged activities, and in doing the things alleged, each was acting within the

19  scope of such agency, service, employment, partnership, joint venture, representation, affiliation,

20  or conspiracy, and each is legally responsible for the acts and omissions of the others.

21  **IV.     VENUE**

22          23.     Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because

23  Defendants Rimini Street and Ravin reside in this district and because a substantial part of the

24  events giving rise to the dispute occurred in this district, a substantial part of the property that is

25  the subject of the action was and is situated in this district, and the Court has personal

26  jurisdiction over each of the defendants as alleged throughout this Complaint.

27  **V.      DIVISION ASSIGNMENT**

28          24.     Assignment to the Las Vegas division is proper under Civil Local Rule IA

A/73245022.11/2021039-0000337130

1   8-1(a), because this action arises, in part, in Las Vegas, where Rimini Street is headquartered and

2   Ravin resides and where, among other places, both engaged in their unlawful conduct.

3   **VI.   FACTUAL ALLEGATIONS**

4       **A.   Oracle's Software And Support Materials**

5       25.   Oracle is the world's largest enterprise software company, and the first to

6   receive J.D. Power & Associates' global certification for outstanding service and support based

7   on measuring customer satisfaction worldwide.  Oracle develops, manufactures, markets,

8   distributes, and services software designed to help its customers manage and grow their business

9   operations.  Oracle's enterprise software and technology offerings include database, middleware,

10   and applications software programs.

11       26.   As is typical in the enterprise software industry, Oracle does not sell

12   ownership rights to its software or related support products to its customers.  Instead, Oracle's

13   customers purchase licenses that grant them limited rights to use specific Oracle software

14   programs, with Oracle retaining all copyright and other intellectual property rights in these

15   works.  In addition, licensed customers can, and typically do, purchase some set of technical

16   support services.  Those services include upgraded products such as updates, bug fixes, or

17   patches to the software programs the customers have expressly licensed from Oracle and have

18   the right to use for purposes authorized by Oracle.

19       27.   Oracle's license agreements with its customers may vary according to the

20   products licensed, including because the customers originally contracted with PeopleSoft, Siebel,

21   and/or JDE, but all of the relevant license agreements for what is now Oracle software set

22   comparable rules for access to, and reproduction, distribution, and use of, that software.  Among

23   other things, those rules prohibit access to, or reproduction, distribution, or use of, any portion of

24   the software not expressly licensed to and paid for by the licensee, and any sublicense,

25   disclosure, use, rent, or lease of the software to third parties.  The licenses, with a few exceptions

26   that are not relevant here, also restrict where the customer physically may install the software, to

27   whom it may provide copies, and the purposes for which it may make those copies.  These

28   licensing restrictions are important to protect Oracle's substantial investment in the development

1   of its software.  They also help to make worthwhile Oracle's continuous enhancement of its

2   products for the benefit of its customers, which requires significant investment in research and

3   development.

4           28.     Oracle's license agreements define Oracle's confidential information to

5   include, without limitation, Oracle's software, its object and source code, and any associated

6   documentation or service offerings.  In certain instances, licensees may designate third parties to

7   help maintain Oracle's software, but only subject to the terms of the relevant license agreement

8   between the licensee and Oracle.  With a few exceptions that are not relevant here, those

9   agreements generally preclude the third party from installing the software on an offsite server, or

10  accessing the source code of the software.  The license agreements prohibit the licensee or any

11  third party from using the software offsite without notice to Oracle, prohibit disclosure to third

12  parties, and prohibit any use other than by the customer for production, backup, archival and in-

13  house disaster recovery purposes.  As defined in one illustrative license agreement, "software"

14  specifically includes the update products made available to customers as part of the support

15  contracts that customers purchased from Oracle.

16          29.     Through its Terms of Use, Oracle also restricts access to the Technical

17  Support websites used by Oracle customers and/or their authorized agents to access and

18  download JDE, Siebel and PeopleSoft Software and Support Materials licensed to Oracle

19  customers.  For example, the Terms of Use on Oracle's Metalink 3 website – which related to

20  Oracle's PeopleSoft, JDE and Siebel software – stated:

21          You agree that access to Metalink . . . will be granted only to your
22          designated Oracle technical support contacts and that the Materials
            [on the support website] may be used solely in support of your
23          authorized use of the Oracle programs for which you hold a
            supported license from Oracle.  Unless specifically provided in
24          your licensing or distribution agreement with Oracle, the Materials
            may not be used to provide services for or to third parties and may
25          not be shared with or accessed by third parties.

26          30.     The Metalink 3 Terms of Use explicitly described the confidential nature

27  of the material on the Technical Support website: "the information contained in the Materials

28  [available through the website] is the confidential proprietary information of Oracle.  *You may*

1  *not use, disclose, reproduce, transmit, or otherwise copy in any form or by any means the*

2  *information contained in the Materials for any purpose*, other than to support your authorized

3  use of the Oracle Programs for which you hold a supported license from Oracle, without the

4  prior written permission of Oracle."  (emphasis supplied).

5          31.     The Metalink 3 Terms of Use also prohibited the use of automated

6  downloads, including through robots, or other use of the Technical Support website that

7  overburdens it:

8          *You agree that you will not access or use Metalink in any manner*
           *that could damage, disable, overburden, or impair, or otherwise*
9          *result in unauthorized access to or interference with, the proper*
           *functioning of any Oracle accounts, computer systems or networks.*
10         *For example, you may not use any software routines commonly*
           *known as robots, spiders, scrapers, or other automated means, to*
11         *access Metalink or any Oracle accounts, systems, or networks.*

12  (emphasis supplied).

13

14          32.     In addition, access to Oracle's Metalink 3 and My Oracle Support

15  websites – which provided access to Software and Support Materials for Oracle's PeopleSoft,

16  JDE and Siebel software – was governed by the Oracle web site's Terms of Use governing

17  access to, downloading of, copying of and further use or distribution of support materials.  These

18  Terms of Use stated:  "By accessing or using the Site or the Content provided on or through the

19  Site, you agree to follow and be bound by the following terms and conditions concerning your

20  access to and use of the Site and the Content provided on or through the Site ('Terms of Use') . .

21  . ."  These Terms of Use prohibited users from downloading, storing, viewing or printing the

22  materials made available on that website or available for download through the Site other than

23  "solely for personal, informational, non-commercial purposes."  They also prohibited the user

24  from modifying or altering those materials "in any way" and prohibited redistribution.  The

25  Oracle web site's Terms of Use further stated:  "Your use of software is subject to all agreements

26  such as a license agreement or user agreement that accompanies or is included with the Software,

27  ordering documents, exhibits, and other terms and conditions that apply . . . ."

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**B.**     **Rimini Street's Business Model – "Anything that sounds too good to be true probably is."**

33.     In the world of enterprise software applications, revenue comes from three basic activities:  (a) licenses of the underlying software applications; (b) consulting relating to the implementation and operation of the software; and, (c) support contracts to keep the software updated and upgraded.

34.     Rimini Street provides support services to customers who use Oracle software, including its JDE, Siebel and PeopleSoft families of applications.

35.     Rimini Street claims to compete with Oracle by providing low-cost maintenance and support services to PeopleSoft, JDE and Siebel customers running assorted versions of these software programs.  Rimini Street claims that it can cut customer maintenance and support bills in half and give customers a reprieve from software upgrade cycles by allowing customers to remain on older, often outdated, versions of PeopleSoft, JDE or Siebel software rather than moving to later versions, and by eliminating fees for fixes and upgrades that customers would otherwise have to pay to remain on the older versions.  Rimini Street states that it can provide such fixes and updates and thereby support outdated software for 10 years past its general availability without additional cost to customers.

36.     In addition to those services, Rimini Street offers "customization fixes," "tax and regulatory updates," "applications and repository fixes," and, most remarkably, "24/7 Support with Guaranteed 30 Minutes or less Response" on software programs for which it has no intellectual property rights.  Rimini Street claims to offer this comprehensive support at "More Than 50% Annual Cost Savings."

37.     Rimini Street does not have the development capability to meet the support commitments it advertises at any price, much less the 50% discount it promotes.  It certainly has not matched Oracle's investment in development resources, or even come close to it.

38.     Rimini Street has also offered to provide annual maintenance service for customers using PeopleSoft, JDE or Siebel software for $100.00 for two years.  In the third year,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Rimini Street raises the price, but to only 50% of what SAP TN charged in the third year of its

2    own illegal downloading scheme.  Rimini Street stated that the "$100.00 covers the complete

3    program of tax updates" and "the same service" that the customer has "been getting from

4    TomorrowNow."  One of Rimini Street's customers characterized this as "an awesome deal,"

5    while noting that "anything that sounds too good to be true probably is."

6         **C.    Rimini Street's Theft By Downloading**

7              39.    In and after November 2008, and continuing in 2009, there occurred

8    unusually heavy download activity on Oracle's password-protected Technical Support website.

9    That website permits licensed Oracle customers with active support agreements to download a

10   wide array of Software and Support Materials.  Oracle has invested billions of dollars in

11   research, development, and engineering to create these materials.  Customers who have

12   contracted for support with Oracle have log-in credentials to access the Technical Support

13   website and download Software and Support Materials.  However, Oracle's support contracts

14   limit customers' access and download rights to Software and Support Materials pertaining to the

15   customers' licensed products.  Customers have no contractual right to download Software and

16   Support Materials relating to software programs they have not licensed from Oracle, or for which

17   the customers did not purchase support rights, or once the support rights they did purchase have

18   expired.

19              40.    Thousands of these downloads were made to servers associated with the

20   IP addresses 71.5.6.20, 71.5.6.23 and 71.5.6.28, which are owned by Rimini Street.  Many of

21   these downloads were to users whose log-in name ended with "@riministreet.com."  By way of

22   example only, between December 10, 2008, and December 18, 2008, a user credential ending

23   with "@riministreet.com" downloaded more than 100,000 files to the server associated with IP

24   address 71.5.6.23.  Likewise, between April 20 and May 1, 2009, a user credential ending with

25   "@riministreet.com" downloaded several thousand files to the server associated with the IP

26   address 71.5.6.20.  In these examples and many others, thousands of the downloaded files were

27   unauthorized and exceeded the scope of the Software and Support Materials that were licensed

28   for the customer on whose behalf Rimini Street ostensibly performed the downloading.

1          41.    As another example, from November 18-24, 2008, Rimini Street used an

2  automated crawler in an attempt to download approximately more than 800,000 files from

3  Oracle's Technical Support website, resulting in approximately 120,000 successful downloads to

4  the server associated with the IP address 71.5.6.20.  The reason why such a low percentage of the

5  downloads was successful is that Rimini Street programmed the crawler to increase the

6  document number for each copied file by one digit over the last one (i.e., document ID 0.1, then

7  1.1, 2.1, 3.1, and so on), to indiscriminately and systemically copy literally every document on

8  the website, regardless of the license applicable to the customer credentials input into the crawler

9  software to obtain access to Oracle's systems.  Most of the document numbers the crawler sought

10  to copy did not actually exist as files; Rimini Street simply had programmed the crawler to

11  search for and copy every conceivable document number – comprehensively to take everything.

12  This specific instance of Rimini Street's downloading terminated only when Oracle disabled

13  access to the IP address involved.

14          42.    The indiscriminate nature of Rimini Street's illegal downloading is

15  apparent from the files that it downloaded.  Oracle's software applications are generally grouped

16  into product families, such as PeopleSoft, JDE and Siebel.  A customer using an application

17  typically knows – and a support provider such as Rimini Street would obviously know – what

18  family the application is in, as that is the most basic information about the software.  A customer

19  licensed for and using only Siebel applications, for example, would typically have no use for an

20  update or support document relating to a software application in a different family (e.g.,

21  PeopleSoft), as it would be useless to the customer.  And, of course, that customer would have

22  no right to copy or use the Software and Support Materials corresponding to a separate,

23  unlicensed application.

24          43.    On many occasions, however, Rimini Street downloaded documents in a

25  particular software family while purporting to act on behalf of customers who had no license to

26  any application for any product in that family.  For example, in November 2008 Rimini Street

27  downloaded tens of thousands of documents from the PeopleSoft and JDE families of software

28  applications using the log-in credentials of a customer that had no license for any PeopleSoft

1    software and whose contracts for JDE software had expired years ago.  This indicates that Rimini

2    Street made no attempt to limit its downloading to what was authorized for a given Oracle

3    customer.  To the contrary, it engaged in indiscriminate downloading.

4              44.    These are only examples.  Rimini Street's massive downloading totaled at

5    least 100,000 unauthorized files.  It appears that Rimini Street sometimes performs downloads

6    from a customer's IP address, and the author identification (e.g., "Dennis Chiu") or sign on (e.g.,

7    "rimini_street") indicates that a Rimini Street employee actually performed the downloading.  At

8    other times, neither the IP address nor the log-on credentials expressly identify Rimini Street, but

9    Rimini Street is in fact responsible for the unauthorized download.  For example, there have been

10   occasions when unauthorized downloads were performed from an IP address of a customer listed

11   on Rimini Street's website, and the downloading purportedly done by that customer vastly

12   exceeded the customer's past usage and involves products to which the customer has no license.

13   On information and belief, Rimini Street performed  those unauthorized downloads (or induced

14   the customer to do so).

15             45.    Rimini Street's large-scale, unauthorized downloading has also damaged

16   Oracle's servers that contain the content of the Technical Support websites by causing them to

17   freeze, slow down, or become temporarily non-operational due to the scope of the downloading.

18   This impedes the functioning of Oracle's business and disrupts Oracle's ability to provide

19   service to its customers.

20             46.    Rimini Street has admitted that it has engaged in large-scale downloading

21   that has damaged Oracle's servers.  In November 2008 Oracle blocked access to a Rimini Street

22   IP address which had downloaded thousands of Software and Support Materials.  Rimini Street

23   then complained to Oracle that "a manual methodology is not feasible" to download the sheer

24   number of documents Rimini Street was attempting to, "which is why we've had to employ our

25   methodology."  The Rimini Street employee admitted that the mass downloading impeded the

26   performance of Oracle's servers:  "I understand our current methodology creates issues with the

27   CPU utilization on Oracle's servers, and as such, you've had to block any access from our IP

28   addresses."

47.     Oracle instructed Rimini to immediately cease this massive, indiscriminate downloading.  Rimini Street refused.  Rimini Street, through its lawyers, confirmed that it had "resort[ed] to automation tools as the only feasible way to try to identify, catalog, and download such a large volume of Support Materials."  It complained that when Oracle is able to detect an attempt to "download a substantial amount of Support Material items" in a volume that indicates the use of automated tools – which violates of Oracle's Terms of Use – Oracle will then shut down access to the associated IP address.

**D.     Rimini Street's Access Was Unauthorized**

48.     Rimini Street's unauthorized access to, copying of, and use of Software and Support Materials and its customers' software releases, violated the terms of the Oracle customers' License Agreements and the Technical Support website Terms of Use.  These terms included agreements:

- Not to access or use any portion of the Software, including updates, not expressly licensed and paid for by the Licensee;

- Not to directly or indirectly, sublicense, relicense, distribute, disclose, use, rent, or lease the software or documentation, or any portion thereof, for third party use, or third party training;

- Not to access the customer support system if not the customer's authorized and designated Oracle technical support contact;

- Not to use the materials on the support website except in support of the customer's authorized use of the Oracle programs for which the customer holds a supported license from Oracle;

- That the customer username and password are for the customer's sole use in accessing this support server;

- That the customer username and password may only be distributed to or used by persons in the customer's organization who have a legitimate business purpose for accessing the materials contained on the support server in furtherance of the customer's relationship with Oracle;

1      •      Not to impede the functioning or performance of the Technical Support website;

2      •      Not to use automated mechanisms to perform downloads, such as robots or

3             crawlers; and

4      •      That the materials on the support website are confidential information subject to

5             existing confidentiality agreements.

6             49.    Rimini Street has intimate familiarity with these important restrictions and

7      conditions relating to Oracle's Software and Support Materials.  Of Rimini Street's ten-member

8      management team, seven list prior employment experience with PeopleSoft, Siebel, or Oracle.

9      In addition, other Rimini Street managers and employees claim to have years of experience

10     providing support services for PeopleSoft software.  In short, Rimini Street cannot credibly claim

11     ignorance of Oracle's access rules.  Indeed, in the public statements quoted above, Ravin has

12     demonstrated his close reading of Oracle's allegations against SAP, has confirmed his awareness

13     of Oracle's access rules, and has admitted that Rimini Street must comply with those rules.

14            50.    Notwithstanding Rimini Street's knowledge of Oracle's license

15     agreements with its customers, the support website terms of use, and the confidential,

16     proprietary, and copyrighted nature of Oracle's Software and Support Materials, Rimini Street

17     accessed and downloaded the Software and Support Materials when it either had no legitimate

18     basis to access Oracle's restricted website, or in a way that grossly violated the limited access

19     rights it did have.  Further, the scope of the downloaded Software and Support Materials – across

20     multiple libraries in multiple lines of business – for customers that had no license to take, or need

21     for, those products, suggests that Rimini Street took the Software and Support Materials to

22     stockpile a library to support its present and prospective customers.

23            51.    To the extent Rimini Street had any legitimate basis to access Oracle's site

24     as a contract consultant for a customer with current licensed support rights, it committed to abide

25     by the same license obligations and usage terms and conditions applicable to licensed customers.

26     Indeed, anyone accessing such Software and Support Materials on the Oracle support website

27     must agree to Oracle's terms and conditions, which restrict access to support only for products

28     that a company has licensed, and impose strict confidentiality requirements.  Rimini Street

1   reviewed and agreed to the terms and conditions on Oracle's support website before proceeding,

2   and therefore committed its theft knowingly and intentionally, and in conscious disregard of

3   Oracle's copyrights and other protected intellectual property, contractual restrictions on the use

4   of its intellectual property, and the integrity of its computer systems.

5
6
   **E.    Oracle's Software And Support Materials Are Registered With The Copyright Office**

7         52.    The Software and Support Materials and software applications that Rimini

8   Street downloaded from Oracle's systems included numerous works that are protected under the

9   Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*  These protected works are original works of

10  authorship, owned by Oracle.  Defendants' acts violated Oracle's exclusive rights to reproduce,

11  create derivative works, publish, publicly display, offer for sale, and distribute (collectively,

12  "copy") these works.  Defendants' acts were willful and intentional and constitute both direct

13  and indirect copyright infringement under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*

14        53.    The massive nature of the illicit downloads by Rimini Street make it

15  impossible to detail comprehensively each copyright violation in this Complaint.  However,

16  Oracle has more than 80 certificates of registration from the Register of Copyrights that cover a

17  wide range of Software and Support Materials copied by Rimini Street.  Collectively, these

18  registrations cover thousands of unlicensed Software and Support materials unlawfully copied by

19  Rimini Street.

20  **F.    Defendants Conspired With And Aided And Abetted Each Other**

21        54.    Defendants willfully, intentionally, and knowingly agreed and conspired

22  with each other to engage in the alleged wrongful conduct, including Defendants' copyright

23  infringement, interference with Oracle's business relationships and other unfair business

24  practices, as well as Defendants' trespass on, and computer fraud concerning the Software and

25  Support Materials.

26        55.    Defendants did the acts alleged pursuant to, and in furtherance of, that

27  agreement and/or furthered the conspiracy by cooperating, encouraging, ratifying, or adopting

28  the acts of the others.

1           56.     As a direct and proximate result of the acts in furtherance of the

2    conspiracy, Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss

3    of profits from sales to current and potential customers of Oracle support services and licenses

4    for Oracle's software programs.  The wrongful conduct committed pursuant to the conspiracy

5    was a substantial factor in causing this harm.

6           57.     Defendants also had full knowledge of or should have reasonably known

7    of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such

8    wrongful conduct, including copyright infringement, and other unfair business practices, as well

9    as Defendants' trespass on, and computer fraud concerning the copyrighted Software and

10    Support Materials, by providing substantial assistance and/or encouraging the others to act.

11           58.     Defendants also aided and abetted the described wrongful conduct of the

12    other Defendants by giving substantial assistance and/or encouragement that, separately

13    considered, was wrongful in and of itself.

14           59.     As a direct and proximate result of the aiding and abetting of these acts,

15    Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits

16    from sales to current and potential customers of Oracle support services and licenses to Oracle

17    software programs.  The wrongful conduct aided and abetted by the Defendants was a substantial

18    factor in causing this harm.

19           60.     Defendants' intentional agreement to commit, and commission of, these

20    wrongful acts, and aiding and abetting of these wrongful acts, was willful, malicious, oppressive,

21    and in conscious disregard of Oracle's rights, and Oracle is therefore entitled to an award of

22    punitive damages to punish their wrongful conduct and deter future wrongful conduct.

23                             **First Claim for Relief**

24                            **Copyright Infringement**

25                         (By OIC Against All Defendants)

26           61.     OIC incorporates by reference each of the allegations in the preceding

27    paragraphs of this Complaint as though fully set forth here.

28           62.     OIC owns a valid and enforceable copyright in, or an exclusive license to,

1   all of its software applications and Software and Support Materials, which are creative works of

2   original authorship.  OIC has pre-existing, or has obtained from the Register of Copyrights,

3   Certificates of Registration that cover many of the software applications and Software and

4   Support Materials taken and copied by Rimini Street.[2]

5            63.    OIC has also obtained, through transfer agreements, all rights, title, and

6   interest in registered and unregistered copyrights formerly owned by certain PeopleSoft, JDE,

7   and Siebel entities.

8            64.    OIC owned exclusive rights to each of the copyrights at issue in this case

9   at a point in time during which Defendants infringed those exclusive rights.

10           65.    Defendants have infringed copyrights in Oracle software applications and

11   Software and Support Materials, including the software applications and Software and Support

12   Materials covered by these certificates.  These certificates are identified, dated and numbered as

13   follows:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Shop Floor Control program | March 7, 1995 | TXu 619-303 |
| EDI Interface (6) program | March 7, 1995 | TXu 619-304 |
| Configuration Management program | March 7, 1995 | TXu 619-305 |
| Master Production Scheduling program | March 7, 1995 | TXu 619-306 |
| Capacity Requirements Planning program | March 7, 1995 | TXu 619-307 |
| WorldCASE Development Environment program | March 7, 1995 | TXu 619-308 |
| Equipment Management (5) program | March 7, 1995 | TXu 619-309 |
| General Ledger & Basic Financial program | March 7, 1995 | TXu 619-310 |
| Enterprise Facility Planning program | March 7, 1995 | TXu 619-311 |
| Accounts Receivable program | March 7, 1995 | TXu 619-312 |
| Warehouse Management program | March 7, 1995 | TXu 619-313 |
| Inventory Management program | March 7, 1995 | TXu 619-314 |
| Sales Order Processing/Sales Analysis program | March 7, 1995 | TXu 619-315 |
| Purchase Order Processing program | March 7, 1995 | TXu 619-316 |
| Product Data Management program | March 7, 1995 | TXu 619-317 |
| Financial Reporting (FASTR) program | March 7, 1995 | TXu 619-318 |
| WorldCASE Foundation Environment (3) program | March 7, 1995 | TXu 619-319 |
| Accounts Payable program | March 7, 1995 | TXu 619-320 |
| Financial Modeling, Budgeting & Allocations | March 7, 1995 | TXu 619-321 |

---

26  [2]     Oracle reserves the right to amend the Complaint in the event it obtains additional

27  copyright registrations for Software and Support Materials taken and copied by Rimini Street
beyond the registrations it has already.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| | | |
|---|---|---|
| program | | |
| PeopleSoft HRMS 7.0 | December 15 1998 | TX 4-792-577 |
| PeopleSoft HRMS 7.5 | December 15, 1998 | TX 4-792-575 |
| PeopleSoft HRMS 8.0 | November 20, 2000 | TX 5-291-440 |
| PeopleSoft 8 HRMS SP1 | March 26, 2001 | TX 5-501-312 |
| PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |
| PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| PeopleSoft 8 Customer Relationship Management | September 27, 2001 | TX-5-456-777 |
| PeopleSoft 8.8 Customer Relationship Management | June 11, 2004 | TX 6-015-317 |
| PeopleSoft Financials, Distribution & Manufacturing 7.5 | December 15, 1998 | TX 4-792-574 |
| PeopleSoft 8 Financials and Supply Chain Management: Service Pack 2 | September 27, 2001 | TX-5-456-780 |
| PeopleSoft 8.4 Financials and Supply Chain Management | August 5, 2002 | TX-5-586-247 |
| PeopleSoft 8.8 Enterprise Performance Management | June 11, 2004 | TX-5-993-616 |
| PeopleSoft 8 Student Administration Solutions | November 30, 2001 | TX 5-431-289 |
| Initial release of JDE EnterpriseOne XE | April 26, 2007 | TX 6-541-033 |
| Cumulative Update 8 for JDE EnterpriseOne Xe | April 26, 2007 | TX 6-541-048 |
| Initial release of JDE EnterpriseOne 8.0 | April 26, 2007 | TX 6-541-050 |
| Cumulative Update 1 for JDE EnterpriseOne 8.0 | April 26, 2007 | TX 6-541-034 |
| Initial release of JDE EnterpriseOne 8.9 | April 26, 2007 | TX 6-541-049 |
| Initial release of JDE EnterpriseOne 8.10 | April 26, 2007 | TX 6-541-038 |
| Cumulative Update 2 for JDE EnterpriseOne 8.10 | April 26, 2007 | TX 6-541-032 |
| Initial release of JDE EnterpriseOne 8.11 | April 26, 2007 | TX 6-541-028 |
| Initial release of JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-040 |
| ESU for JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-027 |
| Cumulative Update 1 for JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-039 |
| Initial release of JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-041 |
| ESU for JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-045 |
| Cumulative Update 1 for JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-042 |
| Initial release of JDE World A7.3 | April 26, 2007 | TX 6-541-029 |
| Cumulative Update 16 for JDE World A7.3 | April 26, 2007 | TX 6-541-031 |
| Initial release of JDE World A8.1 | April 26, 2007 | TX 6-541-047 |
| Code Change for JDE World A8.1 | April 26, 2007 | TX 6-541-044 |
| Cumulative Update 6 for JDE World A8.1 | May 1, 2007 | TX 6-545-421 |
| Initial release of JDE World A9.1 | April 26, 2007 | TX 6-541-030 |
| PeopleSoft Financials and Supply Chain Management (FIN/SCM) 8.0 | November 20, 2000 | TX 5-291-439 |
| PeopleSoft 8 EPM SP3 | March 30, 2001 | TX 5-345-698 |
| PeopleSoft 8.3 Enterprise Performance Management | March 11, 2002 | TX 5-485-839 |
| PeopleSoft 8.1 Customer Relationship Management | March 20, 2002 | TX 5-493-450 |

| | | |
|---|---|---|
| PeopleSoft 8 FIN/SCM SP1 | March 26, 2001 | TX 5-501-313 |
| PeopleSoft 7.0 financials, distribution & manufacturing 7.0 | December 15, 1998 | TX 4-792-576 |
| PeopleSoft Benefits Administration 7.50 | June 14, 1999 | TX 5-072-090 |
| PeopleSoft Benefits Administration 7.0 | June 15, 1999 | TX 4-258-824 |
| PeopleSoft Payroll Interface 7.50 | June 21, 1999 | TX 3-772-292 |
| PeopleSoft Pension Administration 7 | June 21, 1999 | TX 3-772-290 |
| PeopleSoft Pension Administration 7.50 | June 21, 1999 | TX 3-772-291 |
| PeopleSoft Payroll 7 | June 22, 1999 | TX 4-501-140 |
| PeopleSoft Payroll Interface 7 | June 22, 1999 | TX 4-501-138 |
| PeopleSoft Human Resources 7 | June 28, 1999 | TX 4-994-865 |
| PeopleSoft Human Resources 7.50 | June 28, 1999 | TX 5-013-123 |
| PeopleSoft Payroll 7.50 | June 28, 1999 | TX 5-013-125 |
| PeopleSoft Payroll Interface 7 Higher Education | June 28, 1999 | TX 5-013-124 |
| PeopleSoft Time and Labor 7 | June 28, 1999 | TX 5-013-128 |
| PeopleSoft Time and Labor 7.0 | June 28, 1999 | TX 4-994-866 |
| PeopleSoft Time and Labor 7.50 | June 28, 1999 | TX 4-994-867 |
| Database of Documentary Customer Support Materials for PeopleSoft Software | July 1, 2009 | TXu1-607-454 |
| Database of Documentary Customer Support Materials for J.D. Edwards Software | July 1, 2009 | TXu1-607-455 |
| Siebel 6.3 Initial Release and Documentation | June 29, 2009 | TX 6-941-989 |
| Siebel 7.0.5 Initial Release and Documentation | June 29, 2009 | TX 6-941-988 |
| Siebel 7.5.2 Initial Release and Documentation | June 29, 2009 | TX 6-941-990 |
| Siebel 7.7.1 Initial Release and Documentation | June 29, 2009 | TX 6-941-993 |
| Siebel 7.8 Initial Release and Documentation | June 29, 2009 | TX 6-941-995 |
| Siebel 8.0 Initial Release and Documentation | June 29, 2009 | TX 6-942-000 |
| Siebel 8.1.1 Initial Release and Documentation | June 29, 2009 | TX 6-942-001 |
| Database of Documentary Customer Support Materials for Siebel Software | July 1, 2009 | TXu1-607-453 |

66.    These registrations generally cover, but are not limited to, numerous versions of Oracle software, including the updates, patches and fixes incorporated in each

1    relevant version, service packs of Oracle updates, patches and fixes, and individual exemplar

2    Software and Support Materials, including certain Oracle knowledge management solutions and

3    certain Oracle updates, patches and fixes, all of which Rimini Street copied without a license.

4            67.    Through the acts alleged above, Defendants have violated the exclusive

5    rights of OIC to reproduce and make copies of their copyrighted Software and Support Materials,

6    including materials covered by the registrations listed above by, among other things,

7    downloading (copying) Oracle's copyrighted Software and Support Materials onto its computers

8    in violation of 17 U.S.C. § 106, repeatedly copying entire releases of Oracle's software, and

9    related documentation, to Rimini Street's own local systems, without authorization or license and

10   creating unlicensed works derived from these copies.

11           68.    Defendants have also violated the exclusive rights of OIC to control the

12   distribution, creation of derivative works and public display of copyrighted works by

13   downloading, copying, creating derivative works from and/or distributing Oracle's Software and

14   Support Materials and/or derivative works to Defendants' customers, via posting to its website,

15   by electronic mail, through file transfer protocol, or otherwise, in violation of 17 U.S.C. § 106.

16           69.    Defendants were not authorized to copy, download, reproduce, create

17   derivative works from, distribute, or publicly display Oracle's copyrighted software applications

18   and Software and Support Materials except as authorized by and in support of a specific licensed

19   customer, using only (in the case of Software and Support Materials) that licensed customer's

20   log-in credentials, and with respect only to Software and Support Materials for which that

21   customer had a current right to have and use.

22           70.    In addition to directly infringing the exclusive rights of OIC, Defendants

23   have contributorily and/or vicariously infringed the exclusive rights of OIC in the Software and

24   Support Materials by controlling, directing, intentionally encouraging, inducing or materially

25   contributing to the copying, distribution, publicly display or creation of derivative works from

26   Oracle's copyrighted software applications and Software and Support Materials.  Defendants

27   also obtained a direct financial benefit from the above alleged infringing activities while

28   declining to exercise their right to stop it or limit it.

71.     Defendants knew or should have known that copying, distributing, public display of, and creating derivative works of and from Oracle Software and Support Materials, which Defendants copied in the name of customers who had no license to copy, distribute, publicly display or create derivative works from those materials, infringed the exclusive rights of OIC in those materials.

72.     OIC is entitled to damages in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504(b).  OIC is entitled to statutory damages under 17 U.S.C. § 504(c) based on Defendants' infringements after the dates of copyright registration.

73.     Defendants' infringement of the exclusive rights of OIC has also caused OIC irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.  OIC's remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling them to remedies including injunctive relief as provided by 17 U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

## Second Claim for Relief

### Violation of Federal Computer Fraud and Abuse Act

### (18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(5))

(By Oracle USA and OIC Against All Defendants)

74.     Oracle USA and OIC incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

75.     Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer.

76.     Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud Oracle USA or OIC, accessing a protected computer, without authorization or by exceeding authorized access to such a computer,

1  and by means of such conduct furthered the intended fraud and obtained one or more things of

2  value, including but not limited to Oracle's Software and Support Materials.

3          77.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.

4  § 1030(a)(5)(A)(i), by knowingly causing the transmission of a program, information, code, or

5  command and as a result intentionally causing damage without authorization to a protected

6  computer owned by Oracle USA.

7          78.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §

8  1030(a)(5)(A)(ii) and (iii) by intentionally accessing a protected computer without authorization,

9  causing damage to Oracle USA or OIC, recklessly or without due regard for their actions.

10          79.    The computer system or systems that Defendants accessed as described

11  above constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).  Oracle

12  USA and OIC have suffered damage and loss by reason of these violations, including, without

13  limitation, harm to Oracle USA's and OIC's data, programs, and computer systems, and other

14  losses and damage in an amount to be proved at trial, but, in any event, in an amount well over

15  $5000 aggregated over a one-year period.

16          80.    Defendants' unlawful access to and theft from Oracle USA's computers

17  have caused Oracle USA and OIC irreparable injury.  Unless restrained and enjoined,

18  Defendants will continue to commit such acts.  Oracle USA's, and OIC's remedies at law are not

19  adequate to compensate them for these inflicted and threatened injuries, entitling Oracle USA

20  and OIC to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

21                      **Third Claim for Relief**

22          **Computer Data Access and Fraud Act – Cal. Penal Code § 502**

23             (By Oracle USA and OIC Against All Defendants)

24          81.    Oracle USA and OIC incorporate by reference the allegations of

25  paragraphs 1 through 51 and 54-60 of this Complaint as though fully set forth here.

26          82.    Defendants have violated California Penal Code § 502(c)(2) by knowingly

27  and fraudulently, and without permission, accessing, taking, copying, and making use of

28  programs, data, and files from Oracle USA's computers, computer systems, and/or computer

1    networks.

2            83.    Defendants have violated California Penal Code § 502(c)(3) by

3    knowingly, fraudulently, and without permission accessing and using Oracle USA's  computer

4    services.

5            84.    Defendants have violated California Penal Code § 502(c)(6) by

6    knowingly, fraudulently, and without permission providing, or assisting in providing, a means of

7    accessing Oracle USA's computers, computer systems, and/or computer networks.

8            85.    Defendants have violated California Penal Code § 502(c)(7) by

9    knowingly, fraudulently, and without permission accessing, or causing to be accessed, Oracle

10   USA's computers, computer systems, and/or computer networks.

11           86.    Oracle USA or OIC own certain data that comprises Software and Support

12   Materials obtained by Defendants as alleged above.

13           87.    As a direct and proximate result of Defendants' unlawful conduct within

14   the meaning of California Penal Code § 502, Defendants have caused damage to Oracle USA

15   and OIC in an amount to be proven at trial.  Oracle USA and OIC are also entitled to recover

16   their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

17           88.    Oracle USA and OIC are informed and believe that the aforementioned

18   acts of the Defendants were willful and malicious in that Defendants' acts described above were

19   done with the deliberate intent to injure Oracle USA's and OIC's business and improve its own.

20   Oracle USA and OIC are therefore entitled to punitive damages.

21           Oracle USA and OIC have also suffered irreparable injury from these acts, and

22   due to the continuing threat of such injury, have no adequate remedy at law, entitling Oracle

23   USA and OIC to injunctive relief.

24                        **Fourth Claim for Relief**

25                        **Nevada Rev. Stat. 205.4765**

26                   (By Oracle USA and OIC Against All Defendants)

27           89.    Oracle USA and OIC incorporate by reference the allegations of

28   paragraphs 1 through 51, 54-60, and 81-88 of this Complaint as though fully set forth here.

1    90.    At least some of Defendants' unlawful conduct, described above, occurred

2  at Rimini Street's operations in Nevada.  Accordingly, Oracle pleads this claim in the alternative,

3  to the extent the Court may determine that NRS 205.4765 applies to such conduct in Nevada

4  instead of California Penal Code § 502.

5    91.    Defendants have violated NRS 205.4765(1) by knowingly, willfully and

6  without authorization using, transferring, taking, retaining possession of, copying, accessing

7  attempting to obtain access to data, programs, and supporting documents that exist inside or

8  outside Oracle USA's computers, computer systems, and/or computer networks.

9    92.    Defendants have violated NRS 205.4765(2) by knowingly, willfully and

10  without authorization using, damaging, accessing or attempting to obtain access to equipment or

11  supplies that are used or intended to be used in equipment or supplies that are used or intended to

12  be used in Oracle USA's  computers, computer systems and/or computer networks.

13    93.    Defendants have violated NRS 205.4765(3) by knowingly, willfully and

14  without authorization using, damaging, accessing or attempting to obtain access to Oracle USA's

15  computer systems and/or computer networks.

16    94.    Defendants have violated NRS 205.4765(4) by knowingly, willfully and

17  without authorization using a device to access Oracle USA's computers, computer networks and

18  data.

19    95.    Defendants have violated NRS 205.4765(5) by knowingly, willfully and

20  without authorization introducing or attempting to introduce a computer contaminant into Oracle

21  USA's computers, computer systems and/or computer networks.

22    96.    Oracle USA or OIC own certain data that comprises Software and Support

23  Materials obtained by Defendants as alleged above.

24    97.    As a direct and proximate result of Defendants' unlawful conduct within

25  the meaning of NRS 205.4765, Defendants have caused damage to Oracle USA and OIC in an

26  amount to be proven at trial.  Oracle USA and OIC are also entitled to recover their reasonable

27  attorneys' fees pursuant to NRS 205.511(1)(c).

28    98.    Oracle USA and OIC are informed and believe that the aforementioned

1    acts of the Defendants were willful and malicious in that Defendants' acts described above were

2    done with the deliberate intent to injure Oracle USA's and OIC's business and improve its own.

3    Oracle USA and OIC are therefore entitled to punitive damages under NRS 205.511(1)(b).

4              99.    Oracle USA and OIC have also suffered irreparable injury from these acts,

5    and due to the continuing threat of such injury, have no adequate remedy at law, entitling Oracle

6    USA and OIC to injunctive relief.

7                              **Fifth Claim for Relief**

8                              **Breach of Contract**

9                         (By Oracle USA Against All Defendants)

10             100.   Oracle USA incorporates by reference the allegations of paragraphs 1

11   through 51, 54-60, and 81-99 of this Complaint as though fully set forth here.

12             101.   Defendants agreed to be bound by the licenses and Terms of Use on

13   Oracle's customer support websites, including the Metalink 3 Terms of Use and the Oracle Web

14   sites Terms of Use when Defendants accessed or downloaded Software and Support Materials

15   from Oracle's customer support websites.

16             102.   Oracle USA has performed all conditions, covenants, and promises

17   required on its part to be performed in accordance with the terms and conditions of Oracle's

18   customer support websites' Terms of Use, including the Metalink 3 Terms of Use and the Oracle

19   Web sites Terms of Use.

20             103.   Defendants have breached Oracle's customer support websites' Terms of

21   Use, including the Metalink 3 Terms of Use and the Oracle Web sites Terms of Use by, among

22   other things:

23   •       Accessing Software and Support Materials not expressly licensed to and/or paid

24           for by Defendants or the customers in whose name Defendants accessed Oracle's

25           customer support websites and took the Software and Support Materials;

26   •       Accessing the content available through Oracle's customer support websites, in

27           the form of the Software and Support Materials, without being an authorized and

28           designated Oracle technical support contact;

1      •     Using the Software and Support Materials other than in support of a customer's

2              authorized use of Oracle software for which a customer holds a supported license

3              from Oracle;

4      •     Using the Software and Support Materials without a legitimate business purpose;

5      •     Using automated mechanisms to perform downloads from the Technical Support

6              website, such as robots or crawlers, and using other methods of downloading that

7              impede the functioning or performance of the Technical Support website;

8      •     Using the Software and Support Materials in ways other than the furtherance of a

9              relationship with Oracle; and,

10     •     Accessing or using Software and Support Materials other than for personal,

11             informational or non-commercial purposes.

12         104.    As a result of Defendants' breach of Oracle's customer support websites'

13 Terms of Use, including the Metalink 3 Terms of Use and the Oracle Web sites Terms of Use,

14 Defendants have caused damage to Oracle USA in an amount to be proven at trial.

**Sixth Claim for Relief**

**Inducing Breach of Contract**

(By Oracle USA Against All Defendants)

18         105.    Oracle USA incorporates by reference the allegations of paragraphs 1

19 through 51, 54-60, and 81-104 of this Complaint as though fully set forth here.

20         106.    Oracle USA's customers agreed to be bound by the licenses and/or Terms

21 of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use and the

22 Oracle Web sites Terms of Use when they or anyone acting on their behalf accessed or

23 downloaded Software and Support Materials from Oracle's customer support websites.

24         107.    Oracle USA has performed all conditions, covenants, and promises

25 required on its part to be performed in accordance with the Terms of Use on Oracle's customer

26 support websites, including the Metalink 3 Terms of Use and the Oracle Web sites Terms of Use.

27         108.    Oracle USA's Terms of Use on Oracle's customer support websites,

28 including the Metalink 3 Terms of Use and the Oracle Web sites Terms of Use are valid

1   contracts.  Defendants had knowledge of the existence of these contracts at all relevant times.

2   However, motivated by a desire to obtain an unfair competitive advantage, Defendants induced

3   Oracle's customers to breach those contracts.  These contracts would otherwise have been

4   performed were it not for Defendants' acts inducing the customers to breach them.

5           109.    Defendants acted at times as the authorized agents of Oracle USA's

6   customers, specifically as their support providers, when they accessed and downloaded Software

7   and Support Materials in violation of the Terms of Use on Oracle's customer support websites,

8   including the Metalink 3 Terms of Use and the Oracle Web sites Terms of Use, as described

9   above.  These actions accordingly caused the customers to be in breach of the Terms of Use on

10  Oracle's customer support websites, including the Metalink 3 Terms of Use and the Oracle Web

11  sites Terms of Use.  Defendants intended their actions to cause Oracle USA's customers to

12  breach these contractual obligations.

13          110.    As a result of Defendants' inducing Oracle USA's customers to breach the

14  Terms of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use and

15  the Oracle Web sites Terms of Use, Defendants have caused damage to Oracle USA in an

16  amount to be proven at trial.

17          111.    Defendants acted with fraud, oppression and malice in inducing Oracle

18  USA's customers to breach the Terms of Use on Oracle's customer support websites, including

19  the Metalink 3 Terms of Use and the Oracle Web sites Terms of Use, and Oracle USA is

20  therefore entitled to an award of punitive damages to punish Defendants' wrongful conduct and

21  deter future wrongful conduct.

22                          **Seventh Claim for Relief**

23              **Intentional Interference With Prospective Economic Advantage**

24                  (By Oracle USA and OIC Against All Defendants)

25          112.    Oracle USA and OIC incorporate by reference the allegations of

26  paragraphs 51, 54-60, and 81-111 of this Complaint as though fully set forth here.

27          113.    Oracle USA and OIC have and had an expectancy in continuing and

28  advantageous economic relationships with current and prospective purchasers and licensees of

A/73245022.11/2021039-0000337130

28

1   Oracle's support services and software, which are conducted through Oracle USA and OIC.

2   114.   These relationships contained the probability of future economic benefit in

3   the form of profitable support service contracts and software licenses.  Had Defendants refrained

4   from engaging in the unlawful and wrongful conduct described in this complaint, there is a

5   substantial probability that support customers of Oracle USA and OIC would have initiated,

6   renewed, or expanded support contracts and software licenses with those Oracle entities, rather

7   than with Defendants.

8   115.   Defendants were aware of these economic relationships and intended to

9   interfere with and disrupt them by wrongfully:

10   •   gaining unauthorized access to Oracle USA's computer systems through Oracle's

11       password-protected customer support websites in violation of the agreements

12       governing such access;

13   •   gaining unauthorized access to the Software and Support Materials available on

14       Oracle USA's computer systems through Oracle's customer support websites, in

15       violation of the agreements governing such access, including by using log-in

16       credentials of customers with no right or license to the Software and Support

17       Materials taken by Defendants;

18   •   breaching the agreements governing access to, and use of, the websites and the

19       Software and Support Materials available through it,

20   •   luring Oracle USA's and OIC's current and prospective customers by making

21       promotional and marketing statements regarding Defendants' ability to provide

22       support services for Oracle software that were only possible because of

23       Defendants' improper access to, and taking from, Oracle USA's computer

24       systems through Oracle's customer support websites;

25   •   using information learned through the improper access to, and taking from, Oracle

26       USA's computer systems through Oracle's customer support websites to provide

27       support services to Defendants' customers;

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1     •     gaining unauthorized access to Oracle's software releases through deceptive

2             representations to Oracle USA's and OIC's customers, causing customers to

3             breach their license agreements with Oracle.

4         116.     Defendants' conduct was wrongful by a measure beyond the fact of the

5 interference itself.  Defendants gained unauthorized access to Oracle USA's computer systems

6 through Oracle USA's password-protected customer support websites, breached the agreements

7 governing access to, and use of, Oracle's customer support websites and the Software and

8 Support Materials available through Oracle's customer support websites, and wrongfully used

9 the property found there to advertise their services, and otherwise obtain and retain the current

10 and prospective clients of Oracle USA and OIC.

11         117.     This conduct, as alleged above, constitutes violations of numerous state

12 and federal statutes and codes, including, but not limited to, violation of the Federal Computer

13 Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*., unauthorized access to computers, NRS

14 205.4765, Cal. Penal Code § 502, receipt of stolen property, Cal. Penal Code § 496, wire fraud,

15 18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related activity in connection

16 with an access device, 18 U.S.C. § 1029, and violation of the Stored Communications Act, 18

17 U.S.C. §§ 2701-11.  Defendants' conduct also constitutes trespass to chattels, breach of contract,

18 and unjust enrichment.

19         118.     As a result of Defendants' acts, the above-described relationships have

20 been actually disrupted, causing certain current and prospective support clients to contract with

21 Defendants instead of with Oracle USA and OIC for those clients' software support and

22 maintenance and, in some cases, for their enterprise software.

23         119.     As a direct and proximate result of Defendants' actions, Oracle USA and

24 OIC have suffered economic harm, including, but not limited to, loss of profits from sales or

25 licenses to current and potential customers of support services and enterprise software programs.

26 Defendants' wrongful conduct was a substantial factor in causing this harm.

27         120.     Unless Defendants are restrained by appropriate injunctive relief, their

28 actions are likely to recur and will cause Oracle USA and OIC irreparable injury for which there

1     is no adequate remedy at law.

2          121.    Defendants' interference with Oracle USA's and OIC's prospective

3     economic advantage with its current and future customers, as described above, was willful,

4     malicious, oppressive, and in conscious disregard of Oracle USA's and OIC's rights, and Oracle

5     USA and OIC are therefore entitled to an award of punitive damages to punish Defendants'

6     wrongful conduct and deter future wrongful conduct.

7                        **Eighth Claim for Relief**

8         **Negligent Interference With Prospective Economic Advantage**

9             (By Oracle USA and OIC Against All Defendants)

10         122.    Oracle USA and OIC incorporate by reference the allegations of

11     paragraphs 51, 54-60, and 81-121 of this Complaint as though fully set forth here.

12         123.    Oracle USA and OIC have and had an expectancy in continuing and

13     advantageous economic relationships with current and prospective purchasers and licensees of

14     Oracle's support services and software, which are conducted through Oracle USA and OIC.

15         124.    These relationships contained the probability of future economic benefit in

16     the form of profitable support service contracts and enterprise software licenses.  Had

17     Defendants refrained from engaging in the unlawful and wrongful conduct described in this

18     complaint, there is a substantial probability that the support customers of Oracle USA and OIC

19     would have initiated, renewed, or expanded support contracts and enterprise software licenses

20     with Oracle USA and OIC, rather than with Defendants.

21         125.    Defendants knew or should have known about the economic relationship,

22     described above, and knew or should have known that these relationships would be interfered

23     with and disrupted if Defendants failed to act with reasonable care in their access of Oracle's

24     customer support websites and use of Oracle's Software and Support Materials.  Defendants

25     failed to act with reasonable care.  Instead, they:

26               •   gained unauthorized access to Oracle USA's computer systems through

27                  Oracle USA's password-protected customer support websites in violation

28                  of the agreements governing such access;

1          • gained unauthorized access to the Software and Support Materials

2            available on Oracle USA's computer systems through Oracle's customer

3            support websites, in violation of the agreements governing such access,

4            including by using log in credentials of customers with no right or license

5            to the Software and Support Materials taken by Defendants;

6          • breached the agreements governing access to, and use of, the websites

7            and the Software and Support Materials available through it;

8          • lured Oracle USA's and OIC's current and prospective customers by

9            making promotional and marketing statements regarding Defendants'

10           ability to provide support services for Oracle software that were only

11           possible because of Defendants' improper access to, and taking from,

12           Oracle USA's computer systems through Oracle's customer support

13           websites; and,

14         • used information learned through the improper access to, and taking from,

15           Oracle USA's computer systems through Oracle's customer support

16           websites to provide support services to Defendants' customers;

17         • gained unauthorized access to Oracle's software releases through

18           deceptive representations to Oracle USA's and OIC's customers, causing

19           customers to breach their license agreements with Oracle.

20         126.    Defendants' conduct was wrongful by a measure beyond the fact of the

21 interference itself.  Defendants gained unauthorized access to Oracle USA's computer systems

22 through Oracle USA's password-protected customer support websites, breached the agreements

23 governing access to, and use of, Oracle's customer support websites and the Software and

24 Support Materials available through it, and wrongfully used the property that they found there to

25 advertise their services, and otherwise obtain and retain Oracle USA's and OIC's current and

26 prospective clients.

27         127.    This conduct, as alleged above, constitutes violations of numerous state

28 and federal statutes and codes, including, but not limited to, violation of the Federal Computer

1    Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*., unauthorized access to computers, NRS

2    205.4765, Cal. Penal Code § 502, receipt of stolen property, Cal. Penal Code § 496, wire fraud,

3    18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related activity in connection

4    with an access device, 18 U.S.C. § 1029, and violation of the Stored Communications Act, 18

5    U.S.C. §§ 2701-11.  Defendants' conduct also constitutes trespass to chattels, breach of contract,

6    and unjust enrichment.

7            128.    As a result of Defendants' acts, the above-described relationships have

8    been actually disrupted, causing certain current and prospective support clients to contract with

9    Defendants instead of Oracle USA and OIC for their software support and maintenance and, in

10   some cases, for their enterprise software.

11           129.    As a direct and proximate result of Defendants' actions, Oracle USA and

12   OIC have suffered economic harm, including, but not limited to, loss of profits from sales or

13   licenses to current and potential customers of support services and enterprise software programs.

14   Defendants' wrongful conduct was a substantial factor in causing this harm.

15           130.    Unless Defendants are restrained by appropriate injunctive relief, their

16   actions are likely to recur and will cause Oracle USA and OIC irreparable injury for which there

17   is no adequate remedy at law.

18                          **Ninth Claim for Relief**

19               **Unfair Competition - Cal. Bus. & Prof. Code § 17200**

20                  (By Oracle USA and OIC Against All Defendants)

21           131.    Oracle USA and OIC incorporate by reference the allegations of

22   paragraphs 51, 54-60, and 81-130 of this Complaint as though fully set forth here.

23           132.    Defendants have engaged in unlawful business acts or practices by

24   committing acts including computer fraud, trespass, breach of contract, and other illegal acts and

25   practices as alleged above, all in an effort to gain unfair competitive advantage over Oracle USA

26   and OIC.

27           133.    These unlawful business acts or practices were committed pursuant to

28   business activity related to providing business applications software and related support and

1    maintenance for that software.

2           134.   The acts and conduct of Defendants constitute fraudulent, unlawful, and

3    unfair competition as defined by California Bus. & Prof. Code §§ 17200, *et seq.*

4           135.   Defendants' conduct constitutes violations of numerous state and federal

5    statutes and codes, including, but not limited to, violation of the Computer Fraud and Abuse Act,

6    18 U.S.C. §§ 1030 *et seq.*, unauthorized access to computers, NRS 205.4765, Cal. Penal Code §

7    502, wire fraud, 18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related

8    activity in connection with an access device, 18 U.S.C. § 1029, and violation of the Stored

9    Communications Act, 18 U.S.C. §§ 2701-11.  Defendants' conduct also constitutes trespass to

10   chattels and unjust enrichment.

11          136.   As described above, Oracle and OIC have lost money and property and

12   suffered injury in fact as a result of Defendants' fraudulent, unlawful, and unfair business acts

13   and practices.

14          137.   Defendants have improperly and unlawfully taken commercial advantage

15   of Oracle USA and OIC investments in their confidential, proprietary, and copyrighted Software

16   and Support Materials and support delivery infrastructure.  In light of Defendants' conduct, it

17   would be inequitable to allow Defendants to retain the benefit of the funds obtained though the

18   unauthorized and unlawful use of that property.

19          138.   Defendants' unfair business practices have unjustly minimized Oracle

20   USA and OIC's competitive advantages and have caused and are causing them to suffer

21   damages.

22          139.   As a result of such unfair competition, Oracle USA and OIC have also

23   suffered irreparable injury and, unless Defendants are enjoined from such unfair competition,

24   will continue to suffer irreparable injury, whereby Oracle USA and OIC have no adequate

25   remedy at law.

26          140.   Defendants should be compelled to disgorge and/or restore any and all

27   revenues, earnings, profits, compensation, and benefits they may have obtained in violation of

28   California Business & Professions Code § 17200 *et seq.*, including, but not limited to, returning

1    any revenue earned from the unlawful and unfair use of Oracle USA and OIC's stolen property,

2    and should be enjoined from further unlawful, unfair, and deceptive business practices.

3                                **Tenth Claim for Relief**

4                                **Trespass To Chattels**

5                           (By Oracle USA Against All Defendants)

6              141.    Oracle USA incorporates by reference the allegations of paragraphs 1

7    through 51, 54-60, and 81-140 of this Complaint as though fully set forth here.

8              142.    At all times mentioned in this Complaint, Oracle USA had legal title or

9    license to and actual possession of Oracle's customer support websites, its access-restricted

10   internet-based support systems and databases, and the copies of the Software and Support

11   Materials on those support systems, as described above.

12             143.    Defendants intentionally interfered with Oracle USA's use or possession

13   of both Oracle's customer support websites and Oracle's related internal databases and systems,

14   and the copies of the Software and Support Materials housed for licensed access through

15   Oracle's customer support websites.

16             144.    Defendants' trespass and interference proximately caused damage to

17   Oracle, including, but not limited to, damage to the functionality of Oracle USA's computer

18   systems and data, damage to Oracle USA's rights to dominion and control over its property, and

19   damage to the confidential nature of the information on Oracle USA's websites.  As a result,

20   Defendants caused Oracle USA's property to diminish in value and deprived Oracle USA of the

21   intended uses of its computer systems.

22             145.    Oracle USA is entitled to recover any and all damages it sustained as a

23   result of such trespass, in an amount to be determined at trial.

24             146.    Defendants' trespass interfered with, and damaged, the integrity and

25   functionality of Oracle USA's computer systems and data.  Defendants will continue to commit

26   such acts and other competitors will be encouraged to sweep Oracle USA's websites, potentially

27   to the point of denying effective access to customers and preventing Oracle USA from using its

28   systems and data for their intended purpose.  Defendants' trespass therefore threatens to cause

A/73245022.11/2021039-0000337130

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    irreparable harm to Oracle USA, for which Oracle USA's remedy at law is not adequate to

2    compensate it for the injuries inflicted and threatened.

3                                    **Eleventh Claim for Relief**

4                                    **Unjust Enrichment/Restitution**

5                           (By Oracle USA and OIC Against All Defendants)

6                   147.    Oracle USA and OIC incorporate by reference the allegations of

7    paragraphs 1 through 51, 54-60, and 81-146 of this Complaint as though fully set forth here.

8                   148.    Defendants unjustly received benefits at the expense of Oracle USA and

9    OIC through Defendants' wrongful conduct, including Defendants' breach of the agreements

10   governing access to and use of Oracle's customer support websites, interference with Oracle

11   USA and OIC's business relationships and other unfair business practices, as well as Defendants'

12   trespass on, and computer fraud concerning the Software and Support Materials, which took

13   substantial time and money for Oracle entities including Oracle USA and OIC to develop.

14   Defendants continue to unjustly retain these benefits at the expense of Oracle USA and OIC.  It

15   would be unjust for Defendants to retain any value they obtained as a result of their wrongful

16   conduct.

17                  149.    Oracle USA and OIC are entitled to the establishment of a constructive

18   trust consisting of the benefit conferred upon Defendants by the revenues derived from their

19   wrongful conduct at the expense of Oracle entities including Oracle USA and OIC as alleged

20   above, and all profits derived from that wrongful conduct.  Oracle USA and OIC are further

21   entitled to full restitution of all amounts in which Defendants have been unjustly enriched at

22   Oracle USA and OIC's expense.

23                                    **Twelfth Claim for Relief**

24                   **Unfair Practices - Cal. Bus. & Prof. Code §§ 17000, *et seq*.**

25                           (By Oracle USA and OIC Against All Defendants)

26                  150.    Oracle USA and OIC incorporate by reference the allegations of

27   paragraphs 1 through 51, 54-60, and 81-150 of this Complaint as though fully set forth here.

28                  151.    Defendants have caused Oracle USA and OIC damage through their use of

1  unfair practices, including but not limited to:

2              (a)    Selling articles or products at less than the cost to Defendants, or

3  charging a price so low as to be in substance or fact a give away, for the purpose of injuring

4  competitors, including specifically Oracle, and destroying competition;

5              (b)    Selling articles or products as a loss leader, with the purpose of

6  inducing, promoting or encouraging the purchase of other merchandise, such as additional

7  services from Rimini Street; or where the effect is a tendency or capacity to mislead or deceive

8  purchasers or prospective purchasers, in particular concerning the illegality of Rimini Street's

9  conduct in providing support services; or where the effect is to divert trade from or otherwise

10 injure competitors, including specifically Oracle.

11             152.   Defendant Ravin, as a director, officer or agent of Rimini Street, assisted

12 or aided, directly or indirectly, in the commission of these unfair practices and is equally liable

13 for them.

14             153.   Oracle USA and OIC are entitled to an injunction to halt Defendants'

15 conduct, and to prevent further unfair practices, applicable to all of Defendants' articles or

16 products.  Oracle USA and OIC are also entitled to damages, treble damages, reasonable

17 attorneys' fees and costs of suit.

18                          **Thirteenth Claim for Relief**

19                              **An Accounting**

20                   (By Oracle USA and OIC Against All Defendants)

21             154.   Oracle USA and OIC incorporate by reference the allegations of

22 paragraphs 1 through 51, 54-60, and 81-153 of this Complaint as though fully set forth here.

23             155.   Defendants have obtained business through the use of unlawful conduct

24 including, but not limited to:

25              (a)    Breaching the agreements governing access to or use of Oracle's

26 customer support websites;

27              (b)    Improperly, willfully, and unlawfully taking commercial advantage

28 of the investment in its Software and Support Materials by Oracle entities including Oracle USA

1    and OIC, for the purpose of sabotaging Oracle USA and OIC's ability to do business and

2    compete in the market; and,

3                    (c)    Fraudulently accessing and intentionally trespassing on Oracle

4    USA's password-protected customer support websites, without authorization or consent, or in

5    excess of authorization or consent, in furtherance of their unlawful and deceptive scheme as

6    described above.

7                    156.    Defendants have received money as a result of their misconduct, at the

8    expense of Oracle USA and OIC, and some or all of such money is rightfully due to Oracle USA

9    and OIC.

10                   157.    The amount of money due from Defendants to Oracle USA and OIC is

11   unknown to Oracle USA and OIC, and cannot be ascertained without an accounting of the

12   income and gross profits Defendants have obtained through their wrongful and unlawful

13   conduct.  Oracle USA and OIC are entitled, therefore, to a full accounting.

14                              **Prayer For Relief**

15                   WHEREFORE, Oracle respectfully prays for the following:

16                   A.    For a preliminary and permanent injunction restraining

17   Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert

18   or participation with any of them, from the following:

19                           (1)    Copying[3], distributing, using, or creating derivative works

20   from Oracle Software and Support Materials in any way, including for any business purpose,

21   except as allowed by express license from Oracle;

22                           (2)    Copying, distributing or storing, or facilitating copying,

23   distribution or storage of, any Oracle Software and Support Materials directly or indirectly from

24   or to any of Defendants' offices, computer systems or networks;

25   _____

26   [3]      As used in this Prayer, "copying" includes downloading from a website or digital storage

27   media.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1        (3)     Using any robot, crawler, scraper, spider, or other software

2 tool to access, copy, distribute or use any Oracle Software and Support Materials in any way,

3 including for any business purpose;

4        (4)     Facilitating the downloading of any Oracle Software and

5 Support Materials from any Oracle support website for, or on behalf of, any customer who does

6 not have a valid, existing and currently-Oracle-supported software license for the specific

7 materials being downloaded from Oracle entitling that customer to have and use those Software

8 and Support Materials;

9        (5)     Facilitating the access to, use of, or downloading from any

10 Oracle support website for, or on behalf of, any customer other than by using that specific

11 customer's valid log-in credentials;

12        (6)     Facilitating the copying, distribution or use of any Oracle

13 Software and Support Materials for, or on behalf of, any customer who did not have a current,

14 valid, existing software and support license from Oracle entitling that customer to have and use

15 those Software and Support Materials, at the time they were downloaded or obtained by or on

16 behalf of the customer;

17        (7)     Regardless of the location of any specific Software and

18 Support Materials, copying, distributing or using Software and Support Materials obtained

19 through or for one customer to support a different customer;

20        (8)     Facilitating the copying, distribution or use of, any Oracle

21 Software and Support Materials without keeping a record, which Oracle may inspect upon three

22 (3) business days' written notice, that accurately reflects all Software and Support Materials (a)

23 copied, distributed or used, organized by customer name, (b) the date(s) of the copying,

24 distribution or use, and (c) all other entities involved in the copying, distribution or use,

25 including name of the entity, principal contact, and contact information; and,

26        (9)     Otherwise engaging in acts of unfair competition, unfair

27 practices, copyright infringement, trespass, and computer fraud against Oracle;

28        B.     That the Court order Defendants to file with the Court and serve on

1    Oracle within thirty (30) days after the service on Defendants of such injunction a report in

2    writing, under oath, setting forth in detail the manner and form in which Defendants have

3    complied with the injunction;

4                    C.      For an Order directing Defendants to return Oracle's property,

5    including, without limitation, Oracle's confidential, proprietary, and copyrighted Software and

6    Support Materials, including data, internal documents, and valuable updates, patches, fixes, and

7    other computer code, that Defendants took from Oracle, as set forth in this Complaint;

8                    D.      For an Order impounding or destroying any and all infringing

9    materials pursuant to 17 U.S.C. § 503;

10                    E.      For an Order awarding Oracle punitive damages in a sum to be

11    determined at trial;

12                    F.      For restitution and disgorgement of all ill-gotten gains unjustly

13    obtained and retained by Defendants through the acts complained of here;

14                    G.      For an Order finding a Constructive Trust for Oracle's benefit,

15    consisting of all revenues received by Defendants from their wrongful conduct which should

16    rightfully have been received by Oracle and all profits derived from that wrongful conduct, and

17    directing Defendants to pay all such sums to Oracle;

18                    H.      For damages to be proven at trial;

19                    I.      For those damages to be trebled;

20                    J.      For statutory damages pursuant to 17 U.S.C. § 504;

21                    K.      For prejudgment interest;

22                    L.      For an accounting;

23                    M.      For an Order awarding Oracle its attorneys' fees and costs; and,

24                    N.      For an Order awarding Oracle such other and further relief as the

25    Court deems just and proper.

26

27

28

40

1  DATED:  January 25, 2010                BOIES SCHILLER & FLEXNER LLP

2

3

                                           By: /s/ Richard J. Pocker
4                                                Richard J. Pocker
                                                 Attorneys for Plaintiffs
5                                          Oracle USA, Inc. and Oracle International Corp.

6

7

    DATED:  January 25, 2010
8                                          BINGHAM McCUTCHEN LLP

9

10
                                           By: /s/ Geoffrey M. Howard
11                                               Geoffrey M. Howard
                                                 Attorneys for Plaintiffs
12                                         Oracle USA, Inc. and Oracle International Corp.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

<u>DEMAND FOR JURY TRIAL</u>

2             In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle USA, Inc., and Oracle

3   International Corp. demand a trial by jury on all issues so triable.

4

5   DATED:  January 25, 2010           BOIES SCHILLER & FLEXNER LLP

6

7                       By: /s/ Richard J. Pocker

8                          Richard J. Pocker
                           Attorneys for Plaintiffs

9                  Oracle USA, Inc. and Oracle International
                              Corp.

10

11  DATED:  January 25, 2010

12                     BINGHAM McCUTCHEN LLP

13

14                     By: /s/ Geoffrey M. Howard

15                       Geoffrey M. Howard
                       Attorneys for Plaintiffs

16                Oracle USA, Inc. and Oracle International Corp.

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF