1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (pro hac vice)
6   FRED NORTON (pro hac vice)
    KIERAN P. RINGGENBERG (pro hac vice)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11  Attorneys for Plaintiffs Oracle America, Inc.
    and Oracle International Corp.

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (pro hac vice)
THOMAS S. HIXSON (pro hac vice)
KRISTEN A. PALUMBO (pro hac vice)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (pro hac vice application
to be submitted)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION (pro hac vice)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual, <br><br> Defendants. | Case No  2:10-cv-0106-LRH-PAL <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> **(1) COPYRIGHT INFRINGEMENT; (2) VIOLATIONS OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT; (3) VIOLATIONS OF THE COMPUTER DATA ACCESS AND FRAUD ACT; (4) VIOLATIONS OF NRS 205.4765; (5) BREACH OF CONTRACT; (6) INDUCING BREACH OF CONTRACT (7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; (8) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** |

**(9) UNFAIR COMPETITION;**
**(10) TRESPASS TO CHATTELS;**
**(11) UNJUST ENRICHMENT /**
**RESTITUTION;**
**(12) UNFAIR PRACTICES; and**
**(13) AN ACCOUNTING.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Oracle USA, Inc. ("Oracle USA"), Oracle America, Inc. ("Oracle America") and Oracle International Corporation ("OIC") (together "Oracle" or "Plaintiffs") for their Complaint against Defendants Rimini Street, Inc. ("Rimini Street") and Seth Ravin, allege as follows based on their personal knowledge as for themselves, and on information and belief as to the acts of others:

## I. JURISDICTION

1. Oracle's first cause of action arises under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and its second cause of action arises under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.* Accordingly, this Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

2. This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. This Court also has original subject matter jurisdiction over the state law claims under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the Plaintiffs and the Defendants, and the amount in controversy exceeds $75,000.

## II. INTRODUCTION

4. *"The key is you have to be authorized. . . . Either you're authorized or you're not."* (Seth Ravin, commenting on Oracle's 2007 lawsuit against SAP for illegally downloading Oracle's intellectual property).

5. This case is about the massive theft of Oracle's software and related support materials through an illegal business model by Defendant Rimini Street and its CEO and

2

1  President, Defendant Seth Ravin.  Rimini Street holds itself out as a support provider to

2  companies that license certain of Oracle's enterprise software applications, including its

3  PeopleSoft, J.D. Edwards ("JDE") and Siebel-branded software.  Central to Rimini Street's

4  business model is the illegal downloading of Oracle's Software and Support Materials[1] in a

5  scheme that is vast in scope, consisting of many thousands of Software and Support Materials.

6  Rimini Street typically logs on to Oracle's password protected Technical Support websites using

7  a customer credential, then downloads Software and Support Materials in excess of the

8  customer's authorization under its license agreement.  Sometimes Rimini Street will download

9  hundreds or even thousands of Software and Support Materials at a time, relating to entire

10  families of software (*e.g.*, PeopleSoft, JDE, or Siebel) that the customer does not license and for

11  which it has no use.

12        6.     Rimini Street automates its massive downloading with "robots" or

13  "crawlers," in intentional violation of Oracle's Technical Support website Terms of Use.  These

14  intrusions have damaged Oracle's support services by causing the databases which host the

15  Software and Support Materials to freeze, disrupting their operation and impeding the

16  availability of lawful downloads to Oracle's other customers.  As a result, Oracle has suffered

17  economic harm in the form of disruptions to its business operations, increased costs to maintain

18  and repair its servers, and decreased ability to meet its customers' support needs.

19        7.     Ravin has admitted that downloads in excess of the customer's

20  authorization are improper.  In an interview he explained that "It is very common for [a

21  customer] to provide a password and ID for us to get to download upgrades and support.  It's a

22  standard industry practice across every consulting firm.  *The key is you have to be authorized*."

23  (emphasis supplied).  Ravin emphasized that "[y]ou need to be very careful about parsing

24  documents – whether you take 20 or hundreds.  *Either you're authorized or you're not*."

25  _____

26  [1]    These copyrighted materials, which include software applications and environments, program updates, software updates, bug fixes, patches, custom solutions, and instructional

27  documents across the entire PeopleSoft, J.D. Edwards, and Siebel families of software products, are referred to throughout as "Software and Support Materials."

28

3

1   (emphasis supplied).

2        8.      Ravin's admission that Rimini Street may not download Oracle Software

3   and Support Materials for which the customer lacks authorization is correct.  His description of

4   Rimini Street's business practices is false.  Rimini Street's massive, illegal downloads of Oracle

5   Software and Support Materials violates Rimini Street's contracts with its customers, their

6   licenses with Oracle, the Terms of Use, and civil and criminal laws.

7        9.      Rimini Street's business model includes more than just illegal

8   downloading.  Ravin has caused Rimini Street to acquire copies of its customers' licensed Oracle

9   enterprise applications software.  In the course of its business, Rimini Street makes additional

10  illegal copies of this software, which it uses in various illegal ways to offer low-cost support and

11  induce Oracle's customers to cancel their support contracts with Oracle in favor of Rimini Street.

12       10.      This illegal business model is not new for Ravin.  He helped create this

13  illegal scheme at his prior company, TomorrowNow ("SAP TN"), with his partner, Andrew

14  Nelson.  Under this business model, SAP TN gained repeated and unauthorized access to

15  Oracle's intellectual property.  It made and used thousands of copies of Oracle's copyrighted

16  software applications and relied on illegal downloading from Oracle websites, using custom

17  programmed "scraping" tools designed to "scrape" Oracle's website for bug fixes, patches,

18  updates, and instruction manuals.

19       11.      Ravin and Nelson sold SAP TN to the German software conglomerate

20  SAP AG, and Ravin soon left to later found Rimini Street.  SAP AG publicly admitted that SAP

21  TN improperly copied Oracle Software and Support Materials, and shut down SAP TN in

22  October 2008 having concluded that it could not provide support services without infringing on

23  Oracle's intellectual property rights.   In March 2010, SAP AG and SAP TN conceded that SAP

24  TN violated Oracle's copyrights during the time after March 1, 2005, which includes a period of

25  time in which Ravin was still managing SAP TN under the supervision and control of SAP AG.

26  In March 2010, SAP AG and SAP TN also conceded that, during the time that Ravin was

27  managing SAP TN under the supervision and control of SAP AG, SAP TN violated both the

28  federal Computer Fraud and Abuse Act and California Penal Code section 502(c)(7) by

4

1   unlawfully accessing Oracle computers.

2          12.     Ravin has admitted that Rimini Street mimics and expands the SAP TN

3 model:  "Our [Rimini Street's] basic model for TomorrowNow customers is that you're going to

4 get the same kind of savings" because "[w]hat we're offering is on top of what they're used to,

5 which is the vanilla offering that I actually assembled – because it hasn't changed much from

6 what I put together at TomorrowNow several years ago when we were launching the company."

7          13.     Rimini Street's marketing literature emphasizes how little difference

8 customers would notice from SAP TN's service offering, stating that converting is as "Easy as 1-

9 2-3."  For example, Rimini Street stated that tax and regulatory updates to Oracle software

10 applications "are packaged the same as Client is used to receiving previously from PeopleSoft

11 Corporation and then TomorrowNow, Inc.  There is no difference in how Rimini Street tax and

12 regulatory updates are installed."  Oracle, of course, owned the intellectual property rights to the

13 software SAP TN copied and used to create its illegal updates.  Ravin and Rimini Street knew

14 that and capitalized on it by copying the model and boasting about the similarity in services.

15          14.     The corrupt business model Ravin helped to create continues in full force

16 at Rimini Street.  Oracle brings this lawsuit to end it once and for all, stop Rimini Street's illegal

17 activity, and redress the harm that Rimini Street has caused by its illegal conduct.  Rimini

18 Street's copyright infringement and other illegal, wrongful, and unfair business practices threaten

19 to cause irreparable harm to Oracle, its many employees, customers, shareholders, and the

20 industry at large.  Oracle has no adequate remedy at law for the harm threatened and caused by

21 these acts.

22 **III.    THE PARTIES**

23          15.     On February 15, 2010, Plaintiff Oracle USA, Inc., a Colorado corporation,

24 merged with and into Sun Microsystems, Inc.  Sun Microsystems, Inc., the surviving

25 corporation, was then renamed "Oracle America, Inc." ("Oracle America").  Plaintiff Oracle

26 America is a Delaware corporation, with its principal place of business in Redwood City,

27 California.  Oracle America develops and licenses certain intellectual property, including

28 copyrighted enterprise software programs, and provides related services.  Oracle America is the

1   successor in interest to Oracle USA, and through Oracle USA is the successor to PeopleSoft

2   USA, Inc. ("PeopleSoft") and a successor in interest to certain PeopleSoft, JDE, and Siebel

3   entities.  Hereinafter, Oracle USA, Inc. and Oracle America, Inc. are referred to collectively as

4   "Oracle America."[2]

5          16.     Plaintiff OIC is a California corporation, with its only place of business in

6   Redwood City, California.  OIC owns and licenses certain intellectual property, including

7   copyrighted enterprise software programs used around the world.  Intellectual property rights

8   formerly held by certain PeopleSoft, JDE, and Siebel entities were transferred to OIC as part of

9   the acquisitions of PeopleSoft and Siebel by Oracle.  OIC is the owner or exclusive licensee of

10  the copyrights at issue in this action.

11         17.     Seth Ravin is the founder, president, and CEO of Rimini Street and the

12  former President of SAP TN.  He is a resident of Nevada.

13         18.     Rimini Street is a Nevada corporation with its principal place of business

14  in Las Vegas, Nevada.  Ravin founded and controls Rimini Street.

15         19.     Oracle is currently unaware of the true names and capacities of Does 1

16  through 50, inclusive, whether individual, partnership, corporation, unincorporated association,

17  or otherwise.  Due to the surreptitious nature of Defendants' actions, and the complicated nature

18  of their scheme, the identities of Does 1 through 50 have been concealed from Oracle, preventing

19  Oracle from identifying them by name.  After discovery, which is necessary to ascertain the true

20  names and capacities of Does 1 through 50, Oracle will amend its Complaint to allege the

21  necessary identifying details.

22         20.     Defendants all are doing business in and have directed their activities at

23  Nevada.  Rimini Street is headquartered in this district, and Ravin resides in this district.  Rimini

24  Street committed its illegal downloading in Nevada, and provided illegal copies of Oracle

25  Software and Support Materials from, among other places, Nevada.  Rimini Street also

26  _____

27  [2] Plaintiffs intend to file a substitution under Federal Rule of Civil Procedure 17 with respect to
these transactions.

28

1  advertises, promotes, sells, licenses, services, and supports customers in Nevada.  Defendants

2  have also committed their unlawful conduct in other states.

3        21.    At all material times, through his ownership of Rimini Street and his role

4  as CEO and President, Seth Ravin had both the right and the authority to control, and had a direct

5  financial interest in, the actions of the corporation.

6        22.    At all material times, each of the Defendants, as well as Does 1 through

7  50, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent,

8  affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial

9  assistance to the alleged activities, and in doing the things alleged, each was acting within the

10  scope of such agency, service, employment, partnership, joint venture, representation, affiliation,

11  or conspiracy, and each is legally responsible for the acts and omissions of the others.

12  **IV.**    **VENUE**

13        23.    Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because

14  Defendants Rimini Street and Ravin reside in this district and because a substantial part of the

15  events giving rise to the dispute occurred in this district, a substantial part of the property that is

16  the subject of the action was and is situated in this district, and the Court has personal

17  jurisdiction over each of the Defendants as alleged throughout this Complaint.

18  **V.**    **DIVISION ASSIGNMENT**

19        24.    Assignment to the Las Vegas division is proper under Civil Local Rule IA

20  8-1(a), because this action arises, in part, in Las Vegas, where Rimini Street is headquartered and

21  Ravin resides and where, among other places, both engaged in their unlawful conduct.

22  **VI.**    **FACTUAL ALLEGATIONS**

23      **A.**    **Oracle's Software And Support Materials**

24        25.    Oracle is the world's largest enterprise software company, and the first to

25  receive J.D. Power & Associates' global certification for outstanding service and support based

26  on measuring customer satisfaction worldwide.  Oracle develops, manufactures, markets,

27  distributes, and services software designed to help its customers manage and grow their business

28  operations.  Oracle's enterprise software and technology offerings include database, middleware,

7

1    and applications software programs.

2           26.    As is typical in the enterprise software industry, Oracle does not sell

3    ownership rights to its software or related support products to its customers.  Instead, Oracle's

4    customers purchase licenses that grant them limited rights to use specific Oracle software

5    programs, with Oracle retaining all copyright and other intellectual property rights in these

6    works.  In addition, licensed customers can, and typically do, purchase some set of technical

7    support services.  Those services include upgraded products such as updates, bug fixes, or

8    patches to the software programs the customers have expressly licensed from Oracle and have

9    the right to use for purposes authorized by Oracle.

10          27.    Oracle's license agreements with its customers may vary according to the

11   products licensed, including because the customers originally contracted with PeopleSoft, Siebel,

12   and/or JDE, but all of the relevant license agreements for what is now Oracle software set

13   comparable rules for access to, and reproduction, distribution, and use of, that software.  Among

14   other things, those rules prohibit access to, or reproduction, distribution, or use of, any portion of

15   the software not expressly licensed to and paid for by the licensee, and any sublicense,

16   disclosure, use, rent, or lease of the software to third parties.  The licenses, with a few exceptions

17   that are not relevant here, also restrict where the customer physically may install the software, to

18   whom it may provide copies, and the purposes for which it may make those copies.  These

19   licensing restrictions are important to protect Oracle's substantial investment in the development

20   of its software.  They also help to make worthwhile Oracle's continuous enhancement of its

21   products for the benefit of its customers, which requires significant investment in research and

22   development.

23          28.    Oracle's license agreements define Oracle's confidential information to

24   include, without limitation, Oracle's software, its object and source code, and any associated

25   documentation or service offerings.  In certain instances, licensees may designate third parties to

26   help maintain Oracle's software, but only subject to the terms of the relevant license agreement

27   between the licensee and Oracle.  With a few exceptions that are not relevant here, those

28   agreements generally preclude the third party from installing the software on an offsite server, or

8

1   accessing the source code of the software.  The license agreements prohibit the licensee or any

2   third party from using the software offsite without notice to Oracle, prohibit disclosure to third

3   parties, and prohibit any use other than by the customer for production, back up, archival and in-

4   house disaster recovery purposes.  As defined in one illustrative license agreement, "software"

5   specifically includes the update products made available to customers as part of the support

6   contracts that customers purchased from Oracle.

7          29.     Through its Terms of Use, Oracle also restricts access to the Technical

8   Support websites used by Oracle customers and/or their authorized agents to access and

9   download JDE, Siebel, and PeopleSoft Software and Support Materials licensed to Oracle

10  customers.  For example, the Terms of Use on Oracle's Metalink 3 website – which related to

11  Oracle's PeopleSoft, JDE, and Siebel software – stated:

12          You agree that access to Metalink . . . will be granted only to your
            designated Oracle technical support contacts and that the Materials
13          [on the support website] may be used solely in support of your
            authorized use of the Oracle programs for which you hold a
14          supported license from Oracle.  Unless specifically provided in
            your licensing or distribution agreement with Oracle, the Materials
15          may not be used to provide services for or to third parties and may
            not be shared with or accessed by third parties.
16
17          30.     The Metalink 3 Terms of Use explicitly described the confidential nature

18  of the material on the Technical Support website:  "the information contained in the Materials

19  [available through the website] is the confidential proprietary information of Oracle.  *You may*

20  *not use, disclose, reproduce, transmit, or otherwise copy in any form or by any means the*

21  *information contained in the Materials for any purpose*, other than to support your authorized

22  use of the Oracle Programs for which you hold a supported license from Oracle, without the

23  prior written permission of Oracle."  (emphasis supplied).

24          31.     The Metalink 3 Terms of Use also prohibited the use of automated

25  downloads, including through robots, or other use of the Technical Support website that

26  overburdens it:

27          *You agree that you will not access or use Metalink in any manner*
            *that could damage, disable, overburden, or impair, or otherwise*
28          *result in unauthorized access to or interference with, the proper*
            *functioning of any Oracle accounts, computer systems or networks.*

9

1

*For example, you may not use any software routines commonly known as robots, spiders, scrapers, or other automated means, to access Metalink or any Oracle accounts, systems, or networks.*

2

3    (emphasis supplied).

4

5    32.    In addition, access to Oracle's Metalink 3 and My Oracle Support websites – which provide access to Software and Support Materials for Oracle's PeopleSoft, JDE, and Siebel software – was governed by the Oracle website's Terms of Use governing access to, downloading of, copying of, and further use or distribution of support materials. These Terms of Use stated:  "By accessing or using the Site or the Content provided on or through the Site, you agree to follow and be bound by the following terms and conditions concerning your access to and use of the Site and the Content provided on or through the Site ('Terms of Use') . . . ."  These Terms of Use prohibited users from downloading, storing, viewing, or printing the materials made available on that website or available for download through the Site other than "solely for personal, informational, non-commercial purposes."  They also prohibited the user from modifying or altering those materials "in any way" and prohibited redistribution.  The Oracle website's Terms of Use further stated:  "Your use of software is subject to all agreements such as a license agreement or user agreement that accompanies or is included with the Software, ordering documents, exhibits, and other terms and conditions that apply . . . ."

6

7

8

9

10

11

12

13

14

15

16

17

18

19

**B.    Rimini Street's Business Model – "Anything that sounds too good to be true probably is."**

20

21    33.    In the world of enterprise software applications, revenue comes from three basic activities:  (a) licenses of the underlying software applications; (b) consulting relating to the implementation and operation of the software; and (c) support contracts to keep the software updated and upgraded.

22

23

24

25    34.    Rimini Street provides support services to customers who use Oracle software, including its JDE, Siebel, and PeopleSoft families of applications.

26

27    35.    Rimini Street claims to compete with Oracle by providing low-cost maintenance and support services to PeopleSoft, JDE, and Siebel customers running assorted

28

10

1   versions of these software programs.  Rimini Street advertises that it can cut customer

2   maintenance and support bills in half and give customers a reprieve from software upgrade

3   cycles by allowing customers to remain on older, often outdated, versions of PeopleSoft, JDE, or

4   Siebel software rather than moving to later versions, and by eliminating fees for fixes and

5   upgrades that customers would otherwise have to pay to remain on the older versions.  Rimini

6   Street claims that it can provide such fixes and updates and thereby support outdated software for

7   10 years past its general availability without additional cost to customers.

8          36.    In addition to those services, Rimini Street offers "customization fixes,"

9   "tax and regulatory updates," "applications and repository fixes," and, most remarkably, "24/7

10   Support with Guaranteed 30 Minutes or less Response" on software programs for which it has no

11   intellectual property rights.  Rimini Street claims to offer this comprehensive support at "More

12   Than 50% Annual Cost Savings."

13          37.    Rimini Street does not have the development capability to meet the

14   support commitments it advertises at any price, much less the 50% discount it promotes.  It

15   certainly has not matched Oracle's investment in development resources, or even come close to

16   it.

17          38.    Rimini Street has also offered to provide annual maintenance service for

18   customers using PeopleSoft, JDE, or Siebel software for $100.00 for two years.  In the third year,

19   Rimini Street raises the price, but to only 50% of what SAP TN charged in the third year of its

20   own illegal downloading scheme.  Rimini Street stated that the "$100.00 covers the complete

21   program of tax updates" and "the same service" that the customer has "been getting from

22   TomorrowNow."  One of Rimini Street's customers characterized this as "an awesome deal,"

23   while noting that "anything that sounds too good to be true probably is."

24   **C.     Rimini Street's and Ravin's Theft By Downloading**

25          39.    In and after November 2008, and continuing in 2009, there occurred

26   unusually heavy download activity on Oracle's password-protected Technical Support website.

27   That website permits licensed Oracle customers with active support agreements to download a

28   wide array of Software and Support Materials.  Oracle has invested billions of dollars in

11

1  research, development, and engineering to create these materials.  Customers who have

2  contracted for support with Oracle have log-in credentials to access the Technical Support

3  website and download Software and Support Materials.  However, Oracle's support contracts

4  limit customers' access and download rights to Software and Support Materials pertaining to the

5  customers' licensed products.  Customers have no contractual right to download Software and

6  Support Materials relating to software programs they have not licensed from Oracle, or for which

7  the customers did not purchase support rights, or once the support rights they did purchase have

8  expired.

9         40.     Thousands of these downloads were made to servers associated with the

10  IP addresses 71.5.6.20, 71.5.6.23, and 71.5.6.28, which are owned by Rimini Street.  Many of

11  these downloads were to users whose log-in name ended with "@riministreet.com."  By way of

12  example only, between December 10, 2008, and December 18, 2008, a user credential ending

13  with "@riministreet.com" downloaded more than 100,000 files to the server associated with IP

14  address 71.5.6.23.  Likewise, between April 20, 2009 and May 1, 2009, a user credential ending

15  with "@riministreet.com" downloaded several thousand files to the server associated with the IP

16  address 71.5.6.20.  In these examples and many others, thousands of the downloaded files were

17  unauthorized and exceeded the scope of the Software and Support Materials that were licensed

18  for the customer on whose behalf Rimini Street ostensibly performed the downloading.

19         41.     As another example, between November 18, 2008 and November 24,

20  2008, Rimini Street used an automated crawler in an attempt to download approximately more

21  than 800,000 files from Oracle's Technical Support website, resulting in approximately 120,000

22  successful downloads to the server associated with the IP address 71.5.6.20.  The reason why

23  such a low percentage of the downloads was successful is that Rimini Street programmed the

24  crawler to increase the document number for each copied file by one digit over the last one (*i.e.*,

25  document ID 0.1, then 1.1, 2.1, 3.1, and so on), to indiscriminately and systemically copy

26  literally every document on the website, regardless of the license applicable to the customer

27  credentials input into the crawler software to obtain access to Oracle's systems.  Most of the

28  document numbers the crawler sought to copy did not actually exist as files; Rimini Street

12

1    simply had programmed the crawler to search for and copy every conceivable document number

2    – comprehensively to take everything.  This specific instance of Rimini Street's downloading

3    terminated only when Oracle disabled access to the IP address involved.

4              42.    The indiscriminate nature of Rimini Street's illegal downloading is

5    apparent from the files that it downloaded.  Oracle's software applications are generally grouped

6    into product families, such as PeopleSoft, JDE, and Siebel.  A customer using an application

7    typically knows – and a support provider such as Rimini Street would obviously know – what

8    family the application is in, as that is the most basic information about the software.  A customer

9    licensed for and using only Siebel applications, for example, would typically have no use for an

10   update or support document relating to a software application in a different family (*e.g.*,

11   PeopleSoft), as it would be useless to the customer.  And, of course, that customer would have

12   no right to copy or use the Software and Support Materials corresponding to a separate,

13   unlicensed application.

14             43.    On many occasions, however, Rimini Street downloaded documents in a

15   particular software family while purporting to act on behalf of customers who had no license to

16   any application for any product in that family.  For example, in November 2008, Rimini Street

17   downloaded tens of thousands of documents from the PeopleSoft and JDE families of software

18   applications using the log-in credentials of a customer that had no license for any PeopleSoft

19   software and whose contracts for JDE software had expired years ago.  This indicates that Rimini

20   Street made no attempt to limit its downloading to what was authorized for a given Oracle

21   customer.  To the contrary, it engaged in indiscriminate downloading.

22             44.    These are only examples.  Rimini Street's massive downloading totaled at

23   least 100,000 unauthorized files.  It appears that Rimini Street sometimes performs downloads

24   from a customer's IP address, and the author identification (*e.g.*, "Dennis Chiu") or sign on (*e.g.*,

25   "rimini_street") indicates that a Rimini Street employee actually performed the downloading.  At

26   other times, neither the IP address nor the log-on credentials expressly identify Rimini Street, but

27   Rimini Street is in fact responsible for the unauthorized download.  For example, there have been

28   occasions when unauthorized downloads were performed from an IP address of a customer listed

1    on Rimini Street's website, and the downloading purportedly done by that customer vastly

2    exceeded the customer's past usage and involves products to which the customer has no license.

3    On information and belief, Rimini Street performed those unauthorized downloads (or induced

4    the customer to do so).

5               45.    Rimini Street's large-scale, unauthorized downloading has also damaged

6    Oracle's servers that contain the content of the Technical Support websites by causing them to

7    freeze, slow down, or become temporarily non-operational due to the scope of the downloading.

8    This impedes the functioning of Oracle's business, increases costs to Oracle of maintaining and

9    repairing the servers, and disrupts Oracle's ability to provide service to its customers.

10              46.    Rimini Street has made a regular practice of downloading massive

11   numbers of materials from Oracle's Technical Support websites.  Numerous Rimini Street

12   employees have been involved in the downloading.  Ravin personally orchestrated, controlled,

13   and was an active participant in Rimini Street's massive downloading scheme.  For example,

14   Ravin personally logged into Oracle's Technical Support website on behalf of a customer, using

15   a Rimini Street IP address, and downloaded over 5,000 documents and over 11,000 files

16   associated with those documents.  Many of these files were not licensed by Rimini Street or by

17   the customer on whose behalf Ravin purported to act.

18              47.    Rimini Street has admitted that it has engaged in large-scale downloading

19   that has damaged Oracle's servers.  In November 2008 Oracle blocked access to a Rimini Street

20   IP address which had downloaded thousands of Software and Support Materials.  Rimini Street

21   then complained to Oracle that "a manual methodology is not feasible" to download the sheer

22   number of documents Rimini Street was attempting to, "which is why we've had to employ our

23   methodology."  The Rimini Street employee admitted that the mass downloading impeded the

24   performance of Oracle's servers:  "I understand our current methodology creates issues with the

25   CPU utilization on Oracle's servers, and as such, you've had to block any access from our IP

26   addresses."

27              48.    Oracle instructed Rimini to immediately cease this massive, indiscriminate

28   downloading.  Rimini Street refused.  Rimini Street, through its lawyers, confirmed that it had

14

1  "resort[ed] to automation tools as the only feasible way to try to identify, catalog, and download

2  such a large volume of Support Materials."  It complained that when Oracle is able to detect an

3  attempt to "download a substantial amount of Support Material items" in a volume that indicates

4  the use of automated tools – which violates Oracle's Terms of Use – Oracle will then shut down

5  access to the associated IP address.

6       **D.**     **Ravin Controlled Rimini Street's Actions**

7         49.     Prior to founding Rimini Street, Ravin managed SAP TN, and helped

8  create SAP TN's illegal business model of making and using thousands of copies of Oracle's

9  copyrighted software applications.  In comparing Rimini Street and SAP TN, Ravin has admitted

10  that he is personally responsible for Rimini Street's operations and business model and its

11  parallels to SAP TN:  "There's no way to separate [SAP TN and Rimini Street].  We look a lot

12  alike in areas because I did both.  …  I designed the TomorrowNow service.  I evolved it and

13  created a better service with Rimini Street."

14         50.     SAP TN has admitted that, during the time that Ravin was managing

15  SAP TN (under the supervision and control of SAP AG), SAP TN violated Oracle's copyrights

16  and unlawfully accessed Oracle's computers.

17         51.     Rimini Street's corporate filings with the Nevada Secretary of State

18  identify Ravin as Director, President, and Treasurer of Rimini Street.  Indeed, Ravin holds all but

19  one of the officer positions – Secretary – identified in Rimini Street's corporate filings.

20         52.     In an Executive Summary included in one Rimini Street response to a

21  customer request for proposals in August 2008, Rimini Street described itself as "a next-

22  generation, independent third party support provider founded *and managed* by industry pioneer

23  Seth Ravin."  In the same response to the RFP, Rimini Street listed Ravin as one of only two

24  people authorized to make representations for Rimini Street.

25         53.     Moreover, as discussed above, Ravin controlled Rimini Street's massive

26  downloading scheme and was himself was an active participant, personally logging into

27  Oracle's Technical Support website from a Rimini IP address, accessing materials that neither

28  he nor Rimini Street's customer was authorized to access.

54.     Ravin also personally signed contracts, on behalf of Rimini Street, in which Rimini Street committed to research, develop, and test updates and fixes to Oracle's products, including PeopleSoft products, at Rimini Street's business location, using Rimini Street's computer system hardware and software.  Through his prior employment at PeopleSoft, Ravin is and was personally familiar with Oracle's license agreements and terms of use, and consequently knew that it was a violation of those agreements and terms to develop fixes and updates at Rimini's business on Rimini's computers, rather than at the business and on the computers of the Oracle licensee.

55.     Ravin also controlled Rimini Street's contractual relationships with customers.  For example, for at least some customers, Ravin was the sole person at Rimini Street with the power to amend, modify, or alter Rimini Street's contracts.

56.     Ravin was personally and directly involved in marketing Rimini Street's services, in Rimini Street's responses to requests for proposals, and negotiating Rimini Street's contracts with customers.

**E.      Rimini Street's Access Was Unauthorized**

57.     Rimini Street's unauthorized access to, copying of, and use of Software and Support Materials and its customers' software releases, violated the terms of the Oracle customers' License Agreements and the Technical Support website Terms of Use.  These terms included agreements:

- Not to access or use any portion of the Software, including updates, not expressly licensed and paid for by the Licensee;

- Not to directly or indirectly, sublicense, relicense, distribute, disclose, use, rent, or lease the software or documentation, or any portion thereof, for third party use, or third party training;

- Not to access the customer support system if not the customer's authorized and designated Oracle technical support contact;

- Not to use the materials on the support website except in support of the customer's authorized use of the Oracle programs for which the customer holds a

16

1          supported license from Oracle;

2     •    That the customer username and password are for the customer's sole use in

3          accessing this support server;

4     •    That the customer username and password may only be distributed to or used by

5          persons in the customer's organization who have a legitimate business purpose for

6          accessing the materials contained on the support server in furtherance of the

7          customer's relationship with Oracle;

8     •    Not to impede the functioning or performance of the Technical Support website;

9     •    Not to use automated mechanisms to perform downloads, such as robots or

10         crawlers; and

11    •    That the materials on the support website are confidential information subject to

12         existing confidentiality agreements.

13         58.    Rimini Street and Ravin have intimate familiarity with these important

14   restrictions and conditions relating to Oracle's Software and Support Materials.  Of Rimini

15   Street's ten-member management team, seven list prior employment experience with PeopleSoft,

16   Siebel, or Oracle.  In addition, other Rimini Street managers and employees claim to have years

17   of experience providing support services for PeopleSoft software.  In short, Rimini Street cannot

18   credibly claim ignorance of Oracle's access rules.  Indeed, in the public statements quoted above,

19   Ravin has demonstrated his close reading of Oracle's allegations against SAP, has confirmed his

20   awareness of Oracle's access rules, and has admitted that Rimini Street must comply with those

21   rules.

22         59.    Notwithstanding Rimini Street's knowledge of Oracle's license

23   agreements with its customers, the support website terms of use, and the confidential,

24   proprietary, and copyrighted nature of Oracle's Software and Support Materials, Rimini Street

25   accessed and downloaded the Software and Support Materials when it either had no legitimate

26   basis to access Oracle's restricted website, or in a way that grossly violated the limited access

27   rights it did have.  Further, the scope of the downloaded Software and Support Materials – across

28   multiple libraries in multiple lines of business – for customers that had no license to take, or need

17

1  for, those products, suggests that Rimini Street took the Software and Support Materials to

2  stockpile a library to support its present and prospective customers.

3        60.    To the extent Rimini Street had any legitimate basis to access Oracle's site

4  as a contract consultant for a customer with current licensed support rights, it committed to abide

5  by the same license obligations and usage terms and conditions applicable to licensed customers.

6  Indeed, anyone accessing such Software and Support Materials on the Oracle support website

7  must agree to Oracle's terms and conditions, which restrict access to support only for products

8  that a company has licensed, and impose strict confidentiality requirements.  Rimini Street

9  reviewed and agreed to the terms and conditions on Oracle's support website before proceeding,

10  and therefore committed its theft knowingly and intentionally, and in conscious disregard of

11  Oracle's copyrights and other protected intellectual property, contractual restrictions on the use

12  of its intellectual property, and the integrity of its computer systems.

13
14      **F.**    **Oracle's Software And Support Materials Are Registered With The Copyright Office**

15        61.    The Software and Support Materials and software applications that Rimini

16  Street downloaded from Oracle's systems included numerous works that are protected under the

17  Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*  These protected works are original works of

18  authorship, owned by Oracle.  Defendants' acts violated Oracle's exclusive rights to reproduce,

19  create derivative works, publish, publicly display, offer for sale, and distribute (collectively,

20  "copy") these works.  Defendants' acts were willful and intentional and constitute both direct

21  and indirect copyright infringement under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*

22        62.    The massive nature of the illicit downloads by Rimini Street make it

23  impossible to detail comprehensively each copyright violation in this Complaint.  However,

24  Oracle has more than 100 certificates of registration from the Register of Copyrights that cover a

25  wide range of Software and Support Materials copied by Rimini Street.  Collectively, these

26  registrations cover thousands of unlicensed Software and Support materials unlawfully copied by

27  Rimini Street.

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  **G.  Defendants Conspired With And Aided And Abetted Each Other**

2      63.    Defendants willfully, intentionally, and knowingly agreed and conspired

3  with each other to engage in the alleged wrongful conduct, including Defendants' copyright

4  infringement, interference with Oracle's business relationships and other unfair business

5  practices, as well as Defendants' trespass on, and computer fraud concerning the Software and

6  Support Materials.

7      64.    Defendants did the acts alleged pursuant to, and in furtherance of, that

8  agreement and/or furthered the conspiracy by cooperating, encouraging, ratifying, or adopting

9  the acts of the others.

10      65.    As a direct and proximate result of the acts in furtherance of the

11  conspiracy, Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss

12  of profits from sales to current and potential customers of Oracle support services and licenses

13  for Oracle's software programs.  The wrongful conduct committed pursuant to the conspiracy

14  was a substantial factor in causing this harm.

15      66.    Defendants also had full knowledge of or should have reasonably known

16  of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such

17  wrongful conduct, including copyright infringement, and other unfair business practices, as well

18  as Defendants' trespass on, and computer fraud concerning the copyrighted Software and

19  Support Materials, by providing substantial assistance and/or encouraging the others to act.

20      67.    Defendants also aided and abetted the described wrongful conduct of the

21  other Defendants by giving substantial assistance and/or encouragement that, separately

22  considered, was wrongful in and of itself.

23      68.    As a direct and proximate result of the aiding and abetting of these acts,

24  Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits

25  from sales to current and potential customers of Oracle support services and licenses to Oracle

26  software programs.  The wrongful conduct aided and abetted by the Defendants was a substantial

27  factor in causing this harm.

28      69.    Defendants' intentional agreement to commit, and commission of, these

19

1  wrongful acts, and aiding and abetting of these wrongful acts, was willful, malicious, oppressive,

2  and in conscious disregard of Oracle's rights, and Oracle is therefore entitled to an award of

3  punitive damages to punish their wrongful conduct and deter future wrongful conduct.

4                                    **First Claim for Relief**

5                                  **Copyright Infringement**

6                                (By OIC Against All Defendants)

7            70.      OIC incorporates by reference each of the allegations in the preceding

8  paragraphs of this Complaint as though fully set forth here, including without limitation

9  Paragraphs 4-16, 26-28, 39-57, and 60-62.

10           71.      OIC owns a valid and enforceable copyright in, or an exclusive license to,

11 all of its software applications and Software and Support Materials, which are creative works of

12 original authorship.  OIC has pre-existing, or has obtained from the Register of Copyrights,

13 Certificates of Registration that cover many of the software applications and Software and

14 Support Materials taken and copied by Rimini Street.[3]

15           72.      OIC has also obtained, through transfer agreements, all rights, title, and

16 interest in registered and unregistered copyrights formerly owned by certain PeopleSoft, JDE,

17 and Siebel entities.

18           73.      OIC owned exclusive rights to each of the copyrights at issue in this case

19 at a point in time during which Defendants infringed those exclusive rights.

20           74.      Defendants have infringed copyrights in Oracle software applications and

21 Software and Support Materials, including the software applications and Software and Support

22 Materials covered by these certificates.  These certificates are identified, dated, and numbered as

23 follows:

| Title of Work | Date of Registration | Registration Number |
| --- | --- | --- |
| Shop Floor Control program | March 7, 1995 | TXu 619-303 |
| EDI Interface (6) program | March 7, 1995 | TXu 619-304 |

26  [3]      Oracle reserves the right to further amend the First Amended Complaint in the event it
27  obtains additional copyright registrations for Software and Support Materials taken and copied
    by Rimini Street beyond the registrations it has already.

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| # | | | |
|---|---|---|---|
| 1 | Configuration Management program | March 7, 1995 | TXu 619-305 |
| | Master Production Scheduling program | March 7, 1995 | TXu 619-306 |
| 2 | Capacity Requirements Planning program | March 7, 1995 | TXu 619-307 |
| 3 | WorldCASE Development Environment program | March 7, 1995 | TXu 619-308 |
| | Equipment Management (5) program | March 7, 1995 | TXu 619-309 |
| 4 | General Ledger & Basic Financial program | March 7, 1995 | TXu 619-310 |
| | Enterprise Facility Planning program | March 7, 1995 | TXu 619-311 |
| 5 | Accounts Receivable program | March 7, 1995 | TXu 619-312 |
| | Warehouse Management program | March 7, 1995 | TXu 619-313 |
| 6 | Inventory Management program | March 7, 1995 | TXu 619-314 |
| | Sales Order Processing/Sales Analysis program | March 7, 1995 | TXu 619-315 |
| 7 | Purchase Order Processing program | March 7, 1995 | TXu 619-316 |
| | Product Data Management program | March 7, 1995 | TXu 619-317 |
| 8 | Financial Reporting (FASTR) program | March 7, 1995 | TXu 619-318 |
| 9 | WorldCASE Foundation Environment (3) program | March 7, 1995 | TXu 619-319 |
| 10 | Accounts Payable program | March 7, 1995 | TXu 619-320 |
| 11 | Financial Modeling, Budgeting & Allocations program | March 7, 1995 | TXu 619-321 |
| 12 | PeopleSoft 7.0 financials, distribution & manufacturing 7.0 | December 15, 1998 | TX 4-792-576 |
| | PeopleSoft HRMS 7.0 | December 15 1998 | TX 4-792-577 |
| 13 | PeopleSoft HRMS 7.5 | December 15, 1998 | TX 4-792-575 |
| 14 | PeopleSoft Financials, Distribution & Manufacturing 7.5 | December 15, 1998 | TX 4-792-574 |
| | PeopleSoft Benefits Administration 7.50 | June 14, 1999 | TX 5-072-090 |
| 15 | PeopleSoft Benefits Administration 7.0 | June 15, 1999 | TX 4-258-824 |
| | PeopleSoft Payroll Interface 7.50 | June 21, 1999 | TX 3-772-292 |
| 16 | PeopleSoft Pension Administration 7 | June 21, 1999 | TX 3-772-290 |
| | PeopleSoft Pension Administration 7.50 | June 21, 1999 | TX 3-772-291 |
| 17 | PeopleSoft Payroll 7 | June 22, 1999 | TX 4-501-140 |
| | PeopleSoft Payroll Interface 7 | June 22, 1999 | TX 4-501-138 |
| 18 | PeopleSoft Human Resources 7 | June 28, 1999 | TX 4-994-865 |
| 19 | PeopleSoft Human Resources 7.50 | June 28, 1999 | TX 5-013-123 |
| | PeopleSoft Payroll 7.50 | June 28, 1999 | TX 5-013-125 |
| 20 | PeopleSoft Payroll Interface 7 Higher Education | June 28, 1999 | TX 5-013-124 |
| | PeopleSoft Time and Labor 7 | June 28, 1999 | TX 5-013-128 |
| 21 | PeopleSoft Time and Labor 7.0 | June 28, 1999 | TX 4-994-866 |
| | PeopleSoft Time and Labor 7.50 | June 28, 1999 | TX 4-994-867 |
| 22 | PeopleSoft HRMS 8.0 | November 20, 2000 | TX 5-291-440 |
| 23 | PeopleSoft Financials and Supply Chain Management (FIN/SCM) 8.0 | November 20, 2000 | TX 5-291-439 |
| 24 | PeopleSoft 8 HRMS SP1 | March 26, 2001 | TX 5-501-312 |
| | PeopleSoft 8 FIN/SCM SP1 | March 26, 2001 | TX 5-501-313 |
| 25 | PeopleSoft 8 EPM SP3 | March 30, 2001 | TX 5-345-698 |
| 26 | PeopleSoft 8 Customer Relationship Management | September 27, 2001 | TX-5-456-777 |
| 27 | PeopleSoft 8 Financials and Supply Chain Management: Service Pack 2 | September 27, 2001 | TX-5-456-780 |
| | PeopleSoft 8 Student Administration Solutions | November 30, 2001 | TX 5-431-289 |
| 28 | PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| | | | |
|---|---|---|---|
| 1 | PeopleSoft 8.3 Enterprise Performance Management | March 11, 2002 | TX 5-485-839 |
| 2 | PeopleSoft 8.1 Customer Relationship Management | March 20, 2002 | TX 5-493-450 |
| 3 | PeopleSoft 8.4 Financials and Supply Chain Management | August 5, 2002 | TX-5-586-247 |
| 4 | PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| 5 | PeopleSoft 8.8 Customer Relationship Management | June 11, 2004 | TX 6-015-317 |
| 6 | PeopleSoft 8.8 Enterprise Performance Management | June 11, 2004 | TX-5-993-616 |
| 7 | Initial release of JDE EnterpriseOne XE | April 26, 2007 | TX 6-541-033 |
| | Cumulative Update 8 for JDE EnterpriseOne Xe | April 26, 2007 | TX 6-541-048 |
| 8 | Initial release of JDE EnterpriseOne 8.0 | April 26, 2007 | TX 6-541-050 |
| | Cumulative Update 1 for JDE EnterpriseOne 8.0 | April 26, 2007 | TX 6-541-034 |
| 9 | Initial release of JDE EnterpriseOne 8.9 | April 26, 2007 | TX 6-541-049 |
| | Initial release of JDE EnterpriseOne 8.10 | April 26, 2007 | TX 6-541-038 |
| 10 | Cumulative Update 2 for JDE EnterpriseOne 8.10 | April 26, 2007 | TX 6-541-032 |
| 11 | Initial release of JDE EnterpriseOne 8.11 | April 26, 2007 | TX 6-541-028 |
| | Initial release of JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-040 |
| 12 | ESU for JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-027 |
| 13 | Cumulative Update 1 for JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-039 |
| 14 | Initial release of JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-041 |
| | ESU for JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-045 |
| 15 | Cumulative Update 1 for JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-042 |
| 16 | Initial release of JDE World A7.3 | April 26, 2007 | TX 6-541-029 |
| | Cumulative Update 16 for JDE World A7.3 | April 26, 2007 | TX 6-541-031 |
| 17 | Initial release of JDE World A8.1 | April 26, 2007 | TX 6-541-047 |
| | Code Change for JDE World A8.1 | April 26, 2007 | TX 6-541-044 |
| 18 | Initial release of JDE World A9.1 | April 26, 2007 | TX 6-541-030 |
| | Cumulative Update 6 for JDE World A8.1 | May 1, 2007 | TX 6-545-421 |
| 19 | Siebel 6.3 Initial Release and Documentation | June 29, 2009 | TX 6-941-989 |
| 20 | Siebel 7.0.5 Initial Release and Documentation | June 29, 2009 | TX 6-941-988 |
| | Siebel 7.5.2 Initial Release and Documentation | June 29, 2009 | TX 6-941-990 |
| 21 | Siebel 7.7.1 Initial Release and Documentation | June 29, 2009 | TX 6-941-993 |
| | Siebel 7.8 Initial Release and Documentation | June 29, 2009 | TX 6-941-995 |
| 22 | Siebel 8.0 Initial Release and Documentation | June 29, 2009 | TX 6-942-000 |
| | Siebel 8.1.1 Initial Release and Documentation | June 29, 2009 | TX 6-942-001 |
| 23 | Database of Documentary Customer Support Materials for PeopleSoft Software | July 1, 2009 | TXu1-607-454 |
| 24 | Database of Documentary Customer Support Materials for J.D. Edwards Software | July 1, 2009 | TXu1-607-455 |
| 25 | Database of Documentary Customer Support Materials for Siebel Software | July 1, 2009 | TXu1-607-453 |
| 26 | Cumulative Update 3 for JDE EnterpriseOne 8.12 | January 15, 2010 | TX-7-041-278 |
| 27 | Initial release of JDE EnterpriseOne 9.0 | January 15, 2010 | TX 7-041-256 |
| 28 | | | |

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| | | |
|---|---|---|
| Cumulative Update 1 for JDE EnterpriseOne 9.0 | January 15, 2010 | TX 7-041-267 |
| Initial release of JDE World A9.2 | January 15, 2010 | TX 7-041-290 |
| PeopleSoft HRMS 8.8 SP1 | February 10, 2010 | TX 7-065-376 |
| PeopleSoft HRMS 8.9 | February 10, 2010 | TX 7-065-381 |
| PeopleSoft HRMS 9.0 | February 10, 2010 | TX 7-065-386 |
| PeopleSoft HRMS 9.1 | February 10, 2010 | TX 7-065-398 |
| PeopleSoft Customer Relationship Management 8.8 SP1 | February 10, 2010 | TX 7-063-664 |
| PeopleSoft Customer Relationship Management 8.9 | February 10, 2010 | TX 7-063-668 |
| PeopleSoft Customer Relationship Management 9.0 | February 10, 2010 | TX 7-065-371 |
| PeopleSoft Customer Relationship Management 9.1 | February 10, 2010 | TX 7-065-653 |
| PeopleSoft Financials and Supply Chain Management 8.8 | February 10, 2010 | TX 7-063-688 |
| PeopleSoft Enterprise Performance Management 8.8 SP2 | February 10, 2010 | TX 7-063-683 |
| PeopleSoft Enterprise Performance Management 8.9 | February 10, 2010 | TX 7-063-672 |
| PeopleSoft Enterprise Performance Management 9.0 | February 10, 2010 | TX 7-063-679 |
| PeopleSoft Financials and Supply Chain Management 8.8 SP1 | February 11, 2010 | TX 7-065-319 |
| PeopleSoft Financials and Supply Chain Management 8.9 | February 11, 2010 | TX 7-065-332 |
| PeopleSoft Financials and Supply Chain Management 9.0 | February 11, 2010 | TX 7-065-354 |
| PeopleSoft Financials and Supply Chain Management 9.1 | February 11, 2010 | TX 7-065-357 |
| PeopleSoft Student Administration Solutions 8.0 SP1 | February 24, 2010 | TX 7-077-447 |
| PeopleSoft Campus Solutions 8.9 | February 24, 2010 | TX 7-077-451 |
| PeopleSoft Campus Solutions 9.0 | February 24, 2010 | TX 7-077-460 |

75.     These registrations generally cover, but are not limited to, numerous

versions of Oracle software, including the updates, patches, and fixes incorporated in each

relevant version, service packs of Oracle updates, patches and fixes, and individual exemplar

Software and Support Materials, including certain Oracle knowledge management solutions and

23

1   certain Oracle updates, patches, and fixes, all of which Rimini Street and Ravin copied without a

2   license.

3          76.    Through the acts alleged above, Defendants have violated the exclusive

4   rights of OIC to reproduce and make copies of their copyrighted Software and Support Materials,

5   including materials covered by the registrations listed above by, among other things,

6   downloading (copying) Oracle's copyrighted Software and Support Materials onto its computers

7   in violation of 17 U.S.C. § 106, repeatedly copying entire releases of Oracle's software, and

8   related documentation, to Rimini Street's own local systems, without authorization or license and

9   creating unlicensed works derived from these copies.

10          77.    Defendants have also violated the exclusive rights of OIC to control the

11   distribution, creation of derivative works and public display of copyrighted works by

12   downloading, copying, creating derivative works from and/or distributing Oracle's Software and

13   Support Materials and/or derivative works to Defendants' customers, via posting to its website,

14   by electronic mail, through file transfer protocol, or otherwise, in violation of 17 U.S.C. § 106.

15          78.    Defendants were not authorized to copy, download, reproduce, create

16   derivative works from, distribute, or publicly display Oracle's copyrighted software applications

17   and Software and Support Materials except as authorized by and in support of a specific licensed

18   customer, using only (in the case of Software and Support Materials) that licensed customer's

19   log-in credentials, and with respect only to Software and Support Materials for which that

20   customer had a current right to have and use.

21          79.    In addition to directly infringing the exclusive rights of OIC, Defendants

22   have contributorily and/or vicariously infringed the exclusive rights of OIC in the Software and

23   Support Materials by controlling, directing, intentionally encouraging, inducing, or materially

24   contributing to the copying, distribution, public display, or creation of derivative works from

25   Oracle's copyrighted software applications and Software and Support Materials.  Defendants

26   also obtained a direct financial benefit from the above alleged infringing activities while

27   declining to exercise their right to stop it or limit it.

28          80.    Defendants knew or should have known that copying, distributing,

1   publicly displaying, and creating derivative works of and from Oracle Software and Support

2   Materials, which Defendants copied in the name of customers who had no license to copy,

3   distribute, publicly display, or create derivative works from those materials, infringed the

4   exclusive rights of OIC in those materials.

5       81.   OIC is entitled to damages in an amount to be proven at trial, including

6   profits attributable to the infringement not taken into account in computing actual damages under

7   17 U.S.C. § 504(b).  OIC is entitled to statutory damages under 17 U.S.C. § 504(c) based on

8   Defendants' infringements after the dates of copyright registration.

9       82.   Defendants' infringement of the exclusive rights of OIC has also caused

10  OIC irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such

11  acts.  OIC's remedies at law are not adequate to compensate it for these inflicted and threatened

12  injuries, entitling it to remedies, including injunctive relief as provided by 17 U.S.C. § 502, and

13  an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

14  **<u>Second Claim for Relief</u>**

15  **Violation of Federal Computer Fraud and Abuse Act**

16  **(18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(5))**

17  (By Oracle America and OIC Against All Defendants)

18      83.   Oracle America and OIC incorporate by reference each of

19  the allegations in the preceding paragraphs of this Complaint as though fully set

20  forth here, including without limitation Paragraphs 4-16, 26-32, and 39-60.

21      84.   Oracle's Technical Support website allows access to certain of Oracle

22  America's computers, computer systems, and computer networks, which are protected computers

23  within the meaning of 18 U.S.C. § 1030(e)(2).  Those computers, computer systems, and

24  computer networks are data storage facilities directly related to and operating in conjunction with

25  Oracle's computers, which are used in and affect interstate and foreign commerce, including by

26  providing access to worldwide communications through applications accessible through the

27  Internet.

28      85.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.

1   § 1030(a)(2)(C), by intentionally accessing Oracle's Technical Support website, without

2   authorization or by exceeding authorized access, and by obtaining information, including

3   Oracle's Software and Support Materials, from Oracle's Technical Support website.

4           86.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.

5   § 1030(a)(4), by knowingly, and with intent to defraud Oracle America or OIC, accessing

6   Oracle's Technical Support website, without authorization or by exceeding authorized access,

7   and by means of such conduct furthered the intended fraud and obtained one or more things of

8   value, including, but not limited, to Oracle's Software and Support Materials.

9           87.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.

10  § 1030(a)(5)(A)(i), by knowingly causing the transmission of robots and crawlers to engage in

11  the massive downloading of Oracle's Software and Support Materials from Oracle's Technical

12  Support website, and as a result intentionally causing damage to Oracle America's computers

13  without authorization.  Defendants knowingly transmitted robots and crawlers capable of

14  freezing, slowing down, or rendering temporarily non-operational Oracle's Technical Support

15  website.

16          88.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §

17  1030(a)(5)(A)(ii) and (iii) by intentionally accessing Oracle's Technical Support website without

18  authorization, and causing damage to Oracle America or OIC, recklessly or without due regard

19  for their actions.

20          89.   Oracle America and OIC have suffered damage and loss, including,

21  without limitation, (i) impairment to the integrity and availability of Oracle's Technical Support

22  website, which froze, slowed down, or became temporarily non-operational as a result of

23  Defendants' actions, including Defendants' massive downloading of Oracle's Software and

24  Support Materials; (ii) the cost of responding to Defendants' actions, conducting a damage

25  assessment, and restoring data, programs, systems, and information to their condition prior to

26  Defendants' actions; and (iii) revenue lost, cost incurred, and other consequential damages

27  resulting from Defendants' actions.  Oracle America and OIC have suffered losses and damage

28  in an amount to be proved at trial, but, in any event, in an amount well over $5,000 aggregated

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    over a one-year period.

2              90.     Defendants' unlawful access to and theft from Oracle America's

3    computers have caused Oracle America and OIC irreparable injury.  Unless restrained and

4    enjoined, Defendants will continue to commit such acts.  Oracle America's and OIC's remedies

5    at law are not adequate to compensate them for these inflicted and threatened injuries, entitling

6    Oracle America and OIC to remedies including injunctive relief as provided by 18 U.S.C. §

7    1030(g).

8                              **<u>Third Claim for Relief</u>**

9              **Computer Data Access and Fraud Act – Cal. Penal Code § 502**

10                      (By Oracle America and OIC Against All Defendants)

11             91.     Oracle America and OIC incorporate by reference each of the allegations

12   in Paragraphs 1 through 60 and 63 through 69 of this Complaint as though fully set forth here,

13   including without limitation Paragraphs 4-16, 26-32, 39-60, and 84-90.

14             92.     Defendants have violated California Penal Code § 502(c)(2) by knowingly

15   accessing and without permission, taking, copying, and making use of Oracle's Software and

16   Support materials and other data from Oracle's Technical Support website.

17             93.     Defendants have violated California Penal Code § 502(c)(3) by knowingly

18   and without permission using or causing Oracle's customers to use Oracle's computer services,

19   including Oracle's Technical Support website.

20             94.     Defendants have violated California Penal Code § 502(c)(6) by knowingly

21   and without permission providing, or assisting in providing, a means of accessing Oracle

22   America's computers, computer systems, and/or computer networks, including Oracle's

23   Technical Support website.

24             95.     Defendants have violated California Penal Code § 502(c)(7) by knowingly

25   and without permission accessing, or causing to be accessed, Oracle America's computers,

26   computer systems, and/or computer networks, including Oracle's Technical support website.

27             96.     Oracle America or OIC own certain data that comprises Software and

28   Support Materials obtained by Defendants as alleged above.

1    97.  As a direct and proximate result of Defendants' unlawful conduct within

2 the meaning of California Penal Code § 502, Defendants have caused damage to Oracle America

3 and OIC in the form of, among other things, expenditures reasonably and necessarily incurred to

4 verify that Oracle's computers, computer systems, and/or computer networks, or data, was not

5 damaged, altered, or deleted by Defendants' access, in an amount to be proven at trial.

6    98.  Oracle America and OIC are also entitled to recover their reasonable

7 attorneys' fees pursuant to California Penal Code § 502(e).

8    99.  Oracle America and OIC are informed and believe that the aforementioned

9 acts of the Defendants were willful and malicious in that Defendants' acts described above were

10 done with the deliberate intent to injure Oracle America's and OIC's business and improve their

11 own.  Oracle America and OIC are therefore entitled to punitive damages.  Oracle America and

12 OIC have also suffered irreparable injury from these acts, and due to the continuing threat of

13 such injury, have no adequate remedy at law, entitling Oracle America and OIC to injunctive

14 relief.

15       **Fourth Claim for Relief**

16       **Nevada Rev. Stat. 205.4765**

17     (By Oracle America and OIC Against All Defendants)

18    100. Oracle America and OIC incorporate by reference each of the allegations

19 in Paragraphs 1-60, 63-69, and 83-99 of this Complaint as though fully set forth here, including

20 without limitation Paragraphs 4-16, 26-32, 39-60, and 84-99.

21    101. At least some of Defendants' unlawful conduct, described above, occurred

22 at Rimini Street's operations in Nevada.  Accordingly, Oracle pleads this claim in the alternative,

23 to the extent the Court may determine that NRS 205.4765 applies to such conduct in Nevada

24 instead of California Penal Code § 502 (Third Claim for Relief).

25    102. Defendants have violated NRS 205.4765(1) by knowingly, willfully and

26 without authorization using, transferring, taking, retaining possession of, copying, obtaining or

27 attempting to obtain access to data, programs, and supporting documents, including Oracle's

28 Software and Support materials, that exist inside or outside Oracle America's computers,

1  computer systems, and/or computer networks, including Oracle's Technical Support website.

2          103.    Defendants have violated NRS 205.4765(2) by knowingly, willfully and

3  without authorization using, damaging, obtaining or attempting to obtain access to equipment or

4  supplies that are used or intended to be used in Oracle America's computers, computer systems

5  and/or computer networks, including Oracle's Technical Support website.

6          104.    Defendants have violated NRS 205.4765(3) by knowingly, willfully and

7  without authorization using, damaging, obtaining or attempting to obtain access to Oracle

8  America's computers, computer systems and/or computer networks, including Oracle's

9  Technical Support website.

10          105.    Defendants have violated NRS 205.4765(4) by knowingly, willfully and

11  without authorization using devices, including robots and crawlers, to access Oracle's Technical

12  Support website and Oracle's computers.

13          106.    Oracle America or OIC own certain data that comprises Software and

14  Support Materials obtained by Defendants as alleged above.

15          107.    As a direct and proximate result of Defendants' unlawful conduct within

16  the meaning of NRS 205.4765, Defendants have caused damage to Oracle America and OIC in

17  an amount to be proven at trial.  Oracle America and OIC are also entitled to recover their

18  reasonable attorneys' fees pursuant to NRS 205.511(1)(c).

19          108.    Oracle America and OIC are informed and believe that the aforementioned

20  acts of the Defendants were willful and malicious in that Defendants' acts described above were

21  done with the deliberate intent to injure Oracle America's and OIC's business and improve their

22  own.  Oracle America and OIC are therefore entitled to punitive damages under NRS

23  205.511(1)(b).

24          109.    Oracle America and OIC have also suffered irreparable injury from these

25  acts, and due to the continuing threat of such injury, have no adequate remedy at law, entitling

26  Oracle America and OIC to injunctive relief.

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**Fifth Claim for Relief**

**Breach of Contract**

(By Oracle America Against All Defendants)

110.    Oracle America incorporates by reference each of the allegations in Paragraphs 1-60, 63-69, and 84-109 of this Complaint as though fully set forth here, including without limitation Paragraphs 7-14, 26-32, and 39-60.

111.    Defendants agreed to be bound by the licenses and Terms of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use and Oracle Web's Terms of Use, when Defendants accessed or downloaded Software and Support Materials from Oracle's customer support websites.

112.    Oracle America has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of Oracle's customer support websites' Terms of Use, including the Metalink 3 Terms of Use and Oracle Web's Terms of Use.

113.    Defendants have breached Oracle's customer support websites' Terms of Use, including the Metalink 3 Terms of Use and Oracle Web's Terms of Use by, among other things:

- Accessing Software and Support Materials not expressly licensed to and/or paid for by Defendants or the customers in whose name Defendants accessed Oracle's customer support websites and took the Software and Support Materials;

- Accessing the content available through Oracle's customer support websites, in the form of the Software and Support Materials, without being an authorized and designated Oracle technical support contact;

- Using the Software and Support Materials other than in support of a customer's authorized use of Oracle software for which a customer holds a supported license from Oracle;

- Using the Software and Support Materials without a legitimate business purpose;

1      •     Using automated mechanisms to perform downloads from the Technical Support

2            website, such as robots or crawlers, and using other methods of downloading that

3            impede the functioning or performance of the Technical Support website;

4      •     Using the Software and Support Materials in ways other than the furtherance of a

5            relationship with Oracle; and,

6      •     Accessing or using Software and Support Materials other than for personal,

7            informational or non-commercial purposes.

8           114.    As a result of Defendants' breach of Oracle's customer support websites'

9  Terms of Use, including the Metalink 3 Terms of Use and Oracle Web's Terms of Use,

10  Defendants have caused damage to Oracle America in an amount to be proven at trial.

11                       **Sixth Claim for Relief**

12                    **Inducing Breach of Contract**

13              (By Oracle America Against All Defendants)

14           115.    Oracle America incorporates by reference each of the allegations in

15  Paragraphs 1-60, 63-69, and 84-114 of this Complaint as though fully set forth here, including

16  without limitation Paragraphs 7-14, 26-32, 39-60, and 110-114.

17           116.    Oracle America's customers agreed to be bound by the licenses and/or

18  Terms of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use and

19  Oracle Web's Terms of Use, when they or anyone acting on their behalf accessed or downloaded

20  Software and Support Materials from Oracle's customer support websites.  Oracle America's

21  licenses and/or Terms of Use on Oracle's customer support websites, including the Metalink 3

22  Terms of Use and Oracle Web's Terms of Use, are valid contracts.  Defendants had knowledge

23  of the existence of these contracts at all relevant times.

24           117.    Oracle America has performed all conditions, covenants, and promises

25  required on its part to be performed in accordance with the licenses and/or Terms of Use on

26  Oracle's customer support websites, including the Metalink 3 Terms of Use and Oracle Web's

27  Terms of Use.

28           118.    Defendants induced Oracle's customers to breach these contracts by

1   engaging in the independently wrongful acts alleged herein, including violations of state and

2   federal laws.  These independently wrongful acts caused Oracle's customers to be in breach of

3   the Terms of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use

4   and Oracle Web's Terms of Use.  Defendants acted with the desire to interfere with the contracts

5   in order to obtain an unfair competitive advantage and/or with the knowledge that such

6   interference was certain or substantially certain to occur as a result of their acts.

7         119.    As a result of Defendants' inducing Oracle America's customers to breach

8   the Terms of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use

9   and Oracle Web's Terms of Use, Defendants have caused damage to Oracle America in an

10   amount to be proven at trial.  Oracle's customers would have otherwise performed on the

11   contracts were it not for Defendants' acts inducing Oracle's customers to breach them.

12         120.    Defendants acted with oppression and malice in inducing Oracle

13   America's customers to breach the Terms of Use on Oracle's customer support websites,

14   including the Metalink 3 Terms of Use and Oracle Web's Terms of Use, and Oracle America is

15   therefore entitled to an award of punitive damages to punish Defendants' wrongful conduct and

16   deter future wrongful conduct.

17                          **Seventh Claim for Relief**

18            **Intentional Interference With Prospective Economic Advantage**

19                 (By Oracle America and OIC Against All Defendants)

20         121.    Oracle America and OIC incorporate by reference each of the allegations

21   in Paragraphs 1-60, 63-69, and 84-120 of this Complaint as though fully set forth here, including

22   without limitation Paragraphs 4-14, 26-32, 39-60, and 110-120.

23         122.    Oracle America and OIC have and had an expectancy in continuing and

24   advantageous economic relationships with current and prospective purchasers and licensees of

25   Oracle's support services and software, which are conducted through Oracle America and OIC.

26         123.    These relationships contained the probability of future economic benefit in

27   the form of profitable support service contracts and software licenses.  Had Defendants refrained

28   from engaging in the unlawful and wrongful conduct described herein, there is a substantial

1  probability that support customers of Oracle America and OIC would have initiated, renewed, or

2  expanded their support contracts and software licenses with those Oracle entities, rather than

3  with Defendants.

4         124.   Defendants were aware of these economic relationships and intended to

5  interfere with and disrupt them by wrongfully:

6  •    gaining unauthorized access to Oracle America's computer systems through

7       Oracle's password-protected customer support websites in violation of the

8       agreements governing such access;

9  •    gaining unauthorized access to the Software and Support Materials available on

10       Oracle America's computer systems through Oracle's customer support websites,

11       in violation of the agreements governing such access, including by using log-in

12       credentials of customers with no right or license to the Software and Support

13       Materials taken by Defendants;

14  •    breaching the agreements governing access to, and use of, the websites and the

15       Software and Support Materials available through it;

16  •    luring Oracle America's and OIC's current and prospective customers by making

17       promotional and marketing statements regarding Defendants' ability to provide

18       support services for Oracle software that were only possible because of

19       Defendants' improper access to, and taking from, Oracle America's computer

20       systems through Oracle's customer support websites;

21  •    using information learned through the improper access to, and taking from, Oracle

22       America's computer systems through Oracle's customer support websites to

23       provide support services to Defendants' customers;

24  •    gaining unauthorized access to Oracle's software releases through deceptive

25       representations to Oracle America's and OIC's customers, causing customers to

26       breach their license agreements with Oracle.

27         125.   Defendants' conduct was wrongful by a measure beyond the fact of the

28  interference itself.  Defendants gained unauthorized access to Oracle America's computer

1    systems through Oracle America's password-protected customer support websites, breached the

2    agreements governing access to, and use of, Oracle's customer support websites and the

3    Software and Support Materials available through Oracle's customer support websites, and

4    wrongfully used the property found there to advertise their services, and otherwise obtain and

5    retain the current and prospective clients of Oracle America and OIC.

6         126.    This conduct, as alleged above, constitutes violations of numerous state

7    and federal statutes and codes, including, but not limited to, violation of the Federal Computer

8    Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, unauthorized access to computers, NRS

9    205.4765, Cal. Penal Code § 502, receipt of stolen property, Cal. Penal Code § 496, wire fraud,

10   18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related activity in connection

11   with an access device, 18 U.S.C. § 1029, and violation of the Stored Communications Act, 18

12   U.S.C. §§ 2701-11.  Defendants' conduct also constitutes trespass to chattels and breach of

13   contract, and entitles Oracle America and OIC to restitution for unjust enrichment.

14        127.    As a result of Defendants' acts, the above-described relationships have

15   been actually disrupted, causing certain current and prospective support customers to contract

16   with Defendants instead of with Oracle America and OIC for those customers' software support

17   and maintenance and, in some cases, for their enterprise software.

18        128.    As a direct and proximate result of Defendants' actions, Oracle America

19   and OIC have suffered economic harm, including, but not limited to, loss of profits from sales or

20   licenses to current and potential customers of support services and enterprise software programs.

21   Defendants' wrongful conduct was a substantial factor in causing this harm.

22        129.    Unless Defendants are restrained by appropriate injunctive relief, their

23   actions are likely to recur and will cause Oracle America and OIC irreparable injury for which

24   there is no adequate remedy at law.

25        130.    Defendants' interference with Oracle America's and OIC's prospective

26   economic advantage with its current and future customers, as described above, was willful,

27   malicious, oppressive, and in conscious disregard of Oracle America's and OIC's rights, and

28   Oracle America and OIC are therefore entitled to an award of punitive damages to punish

34

1  Defendants' wrongful conduct and deter future wrongful conduct.

2  **Eighth Claim for Relief**

3  **Negligent Interference With Prospective Economic Advantage**

4  (By Oracle America and OIC Against All Defendants)

5  131.   Oracle America and OIC incorporate by reference each of the allegations

6  in Paragraphs 1-60, 63-69, and 84-130 of this Complaint as though fully set forth here, including

7  without limitation Paragraphs 4-14, 26-32, 39-56, and 110-130.

8  132.   As alleged in paragraph 112, Oracle America and OIC have and had an

9  expectancy in continuing and advantageous economic relationships with current and prospective

10  purchasers and licensees of Oracle's support services and software, which are conducted through

11  Oracle America and OIC.

12  133.   These relationships contained the probability of future economic benefit in

13  the form of profitable support service contracts and enterprise software licenses.  Had

14  Defendants refrained from engaging in the unlawful and wrongful conduct described in this

15  complaint, there is a substantial probability that the support customers of Oracle America and

16  OIC would have initiated, renewed, or expanded support contracts and enterprise software

17  licenses with Oracle America and OIC, rather than with Defendants.

18  134.   Defendants knew or should have known about the economic relationship,

19  described above, and knew or should have known that these relationships would be interfered

20  with and disrupted if Defendants failed to act with reasonable care in their access of Oracle's

21  customer support websites and use of Oracle's Software and Support Materials.  Defendants

22  failed to act with reasonable care.  Instead, they:

23  •   gained unauthorized access to Oracle America's computer systems

24  through Oracle America's password-protected customer support websites

25  in violation of the agreements governing such access;

26  •   gained unauthorized access to the Software and Support Materials

27  available on Oracle America's computer systems through Oracle's

28  customer support websites, in violation of the agreements governing such

35

1    access, including by using log-in credentials of customers with no right or

2    license to the Software and Support Materials taken by Defendants;

3    •    breached the agreements governing access to, and use of, the websites

4    and the Software and Support Materials available through it;

5    •    lured Oracle America's and OIC's current and prospective customers by

6    making promotional and marketing statements regarding Defendants'

7    ability to provide support services for Oracle software that were only

8    possible because of Defendants' improper access to, and taking from,

9    Oracle America's computer systems through Oracle's customer support

10    websites;

11    •    used information learned through the improper access to, and taking from,

12    Oracle America's computer systems through Oracle's customer support

13    websites to provide support services to Defendants' customers; and

14    •    gained unauthorized access to Oracle's software releases through

15    deceptive representations to Oracle America's and OIC's customers,

16    causing customers to breach their license agreements with Oracle.

17    135.    Defendants' conduct was wrongful by a measure beyond the fact of the

18    interference itself.  Defendants gained unauthorized access to Oracle America's computer

19    systems through Oracle America's password-protected customer support websites, breached the

20    agreements governing access to, and use of, Oracle's customer support websites and the

21    Software and Support Materials available through it, and wrongfully used the property that they

22    found there to advertise their services, and otherwise obtain and retain Oracle America's and

23    OIC's current and prospective clients.

24    136.    This conduct, as alleged above, constitutes violations of numerous state

25    and federal statutes and codes, including, but not limited to, violation of the Federal Computer

26    Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*., unauthorized access to computers, NRS

27    205.4765, Cal. Penal Code § 502, receipt of stolen property, Cal. Penal Code § 496, wire fraud,

28    18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related activity in connection

36

1    with an access device, 18 U.S.C. § 1029, and violation of the Stored Communications Act, 18

2    U.S.C. §§ 2701-11.  Defendants' conduct also constitutes trespass to chattels and breach of

3    contract, and entitles Oracle America and OIC to restitution for unjust enrichment.

4            137.   As a result of Defendants' acts, the above-described relationships have

5    been actually disrupted, causing certain current and prospective support clients to contract with

6    Defendants instead of Oracle America and OIC for their software support and maintenance and,

7    in some cases, for their enterprise software.

8            138.   As a direct and proximate result of Defendants' actions, Oracle America

9    and OIC have suffered economic harm, including, but not limited to, loss of profits from sales or

10   licenses to current and potential customers of support services and enterprise software programs.

11   Defendants' wrongful conduct was a substantial factor in causing this harm.

12           139.   Unless Defendants are restrained by appropriate injunctive relief, their

13   actions are likely to recur and will cause Oracle America and OIC irreparable injury for which

14   there is no adequate remedy at law.

15                       **Ninth Claim for Relief**

16          **Unfair Competition - Cal. Bus. & Prof. Code § 17200**

17            (By Oracle America and OIC Against All Defendants)

18           140.   Oracle America and OIC incorporate by reference each of the allegations

19   in Paragraphs 1-60, 63-69, and 84-139 of this Complaint as though fully set forth here, including

20   without limitation Paragraphs 4-14, 26-32, and 39-60.

21           141.   Defendants have engaged in unlawful business acts or practices, including

22   computer fraud, trespass, breach of contract, and other illegal acts and practices as alleged above,

23   all in an effort to gain unfair competitive advantage over Oracle America and OIC.

24           142.   These unlawful business acts or practices were committed pursuant to

25   business activity related to providing business applications software and related support and

26   maintenance for that software.

27           143.   The acts and conduct of Defendants constitute unlawful and unfair

28   competition as defined by California Bus. & Prof. Code §§ 17200, *et seq.*

1        144.    Defendants' conduct constitutes violations of numerous state and federal

2   statutes and codes, including, but not limited to, violation of the Computer Fraud and Abuse Act,

3   18 U.S.C. §§ 1030 *et seq*., unauthorized access to computers, NRS 205.4765, Cal. Penal Code §

4   502, wire fraud, 18 U.S.C. § 1343, violation of RICO, 18 U.S.C. § 1962, fraud and related

5   activity in connection with an access device, 18 U.S.C. § 1029, and violation of the Stored

6   Communications Act, 18 U.S.C. §§ 2701-11.  Defendants' conduct also constitutes trespass to

7   chattels and unjust enrichment.

8        145.    Defendants devised their massive downloading scheme for the purposes of

9   inducing Oracle's support customers to enter into profitable support contracts with Rimini Street

10   and executed this scheme by means of false pretenses, representations, or promises, including by

11   accessing Oracle's Technical Support website for improper purposes and by exceeding

12   authorized access.  Defendants transmitted or caused to be transmitted robots, crawlers, and other

13   software code for the purpose of executing this scheme in violation of 18 U.S.C. § 1343.

14        146.    Defendants conducted their enterprise by engaging in a pattern of massive,

15   unauthorized downloading of Oracle's Software and Support Materials, constituting racketeering

16   activity, including wire fraud as described above, in violation of 18 U.S.C. § 1962.

17        147.    Defendants knowingly and with intent to defraud used Oracle's Technical

18   Support Website, which is a means of accessing Oracle's customers' support services accounts

19   and is therefore an access device, and obtained unauthorized copies of Oracle's Software and

20   Support Materials, which had a value in excess of $1,000 per year in violation of 18 U.S.C. §

21   1029.

22        148.    Defendants intentionally accessed without authorization or intentionally

23   exceeded an authorization to access Oracle's Technical Support website, which is a facility

24   through which an electronic communication service is provided, and thereby obtained, altered,

25   and prevented authorized access to electronic communications in electronic storage on Oracle's

26   servers in violation of 18 U.S.C. § 2701.

27        149.    As described above, Oracle and OIC have lost money and property and

28   suffered injury in fact as a result of Defendants' unlawful business acts and practices.

38

1    150.    Defendants have improperly and unlawfully taken commercial advantage

2    of Oracle America and OIC investments in their confidential, proprietary, and copyrighted

3    Software and Support Materials and support delivery infrastructure.  In light of Defendants'

4    conduct, it would be inequitable to allow Defendants to retain the benefit of the funds obtained

5    though the unauthorized and unlawful use of that property.

6    151.    Defendants' unfair business practices have unjustly minimized Oracle

7    America and OIC's competitive advantages and have caused and are causing them to suffer

8    damages.

9    152.    As a result of such unfair competition, Oracle America and OIC have also

10   suffered irreparable injury and, unless Defendants are enjoined from such unfair competition,

11   will continue to suffer irreparable injury, whereby Oracle America and OIC have no adequate

12   remedy at law.

13   153.    Defendants should be compelled to disgorge and/or restore any and all

14   revenues, earnings, profits, compensation, and benefits they may have obtained in violation of

15   California Business & Professions Code § 17200 *et seq*., including, but not limited to, returning

16   any revenue earned from the unlawful and unfair use of Oracle America and OIC's stolen

17   property, and should be enjoined from further unlawful and unfair business practices.

18   **Tenth Claim for Relief**

19   **Trespass To Chattels**

20   (By Oracle America Against All Defendants)

21   154.    Oracle America and OIC incorporate by reference each of the allegations

22   in Paragraphs 1-60, 63-69, and 84-153 of this Complaint as though fully set forth here, including

23   without limitation Paragraphs 4-16, 26-32, 39-60, and 84-99.

24   155.    At all times mentioned in this Complaint, Oracle America had legal title or

25   license to and actual possession of Oracle's customer support websites, its access-restricted

26   internet-based support systems and databases, and the copies of the Software and Support

27   Materials on those support systems, as described above.

28   156.    Defendants intentionally interfered with Oracle America's use or

39

1   possession of both Oracle's customer support websites and Oracle's related internal databases

2   and systems, and the copies of the Software and Support Materials housed for licensed access

3   through Oracle's customer support websites.

4          157.   Defendants' trespass and interference proximately caused damage to

5   Oracle, including, but not limited to, damage to the functionality of Oracle America's computer

6   systems and data, damage to Oracle America's rights to dominion and control over its property,

7   and damage to the confidential nature of the information on Oracle America's websites.  As a

8   result, Defendants caused Oracle America's property to diminish in value and deprived Oracle

9   America of the intended uses of its computer systems.

10          158.   Oracle America is entitled to recover any and all damages it sustained as a

11   result of such trespass, in an amount to be determined at trial.

12          159.   Defendants' trespass interfered with, and damaged, the integrity and

13   functionality of Oracle America's computer systems and data.  Defendants will continue to

14   commit such acts and other competitors will be encouraged to sweep Oracle America's websites,

15   potentially to the point of denying effective access to customers and preventing Oracle America

16   from using its systems and data for their intended purpose.  Defendants' trespass therefore

17   threatens to cause irreparable harm to Oracle America, for which Oracle America's remedy at

18   law is not adequate to compensate it for the injuries inflicted and threatened.

19   **Eleventh Claim for Relief**

20   **Unjust Enrichment/Restitution**

21   (By Oracle America and OIC Against All Defendants)

22          160.   Oracle America and OIC incorporate by reference each of the allegations

23   in Paragraphs 1-60, 63-69, and 84-160 of this Complaint as though fully set forth here, including

24   without limitation Paragraphs 4-14, 26-32, and 39-60.

25          161.   Defendants unjustly received benefits at the expense of Oracle America

26   and OIC through Defendants' wrongful conduct, including Defendants' breach of the agreements

27   governing access to and use of Oracle's customer support websites, interference with Oracle

28   America's and OIC's business relationships, and other unfair business practices, as well as

40

1    Defendants' trespass on, and computer fraud concerning the Software and Support Materials,

2    which took substantial time and money for Oracle entities, including Oracle America and OIC, to

3    develop.  Defendants continue to unjustly retain these benefits at the expense of Oracle America

4    and OIC.  It would be unjust for Defendants to retain any value they obtained as a result of their

5    wrongful conduct.

6            162.    Oracle America and OIC are entitled to the establishment of a constructive

7    trust consisting of the benefit conferred upon Defendants by the revenues derived from their

8    wrongful conduct at the expense of Oracle entities including Oracle America and OIC as alleged

9    above, and all profits derived from that wrongful conduct.  Oracle America and OIC are further

10   entitled to full restitution of all amounts in which Defendants have been unjustly enriched at

11   Oracle America and OIC's expense.

12                          **Twelfth Claim for Relief**

13            **Unfair Practices - Cal. Bus. & Prof. Code §§ 17000, *et seq*.**

14                  (By Oracle America and OIC Against All Defendants)

15            163.    Oracle America and OIC incorporate by reference each of the allegations

16   in Paragraphs 1-60, 63-69, and 84-163 of this Complaint as though fully set forth here, including

17   without limitation Paragraphs 4-14 and 26-60.

18            164.    Defendants have caused Oracle America and OIC damage through their

19   use of unfair practices, including but not limited to:

20                  (a)    Selling articles or products at less than the cost to Defendants, or

21   charging a price so low as to be in substance or fact a give away, for the purpose of injuring

22   competitors, including specifically Oracle, and destroying competition;

23                  (b)    Selling articles or products as a loss leader, with the purpose of

24   inducing, promoting or encouraging the purchase of other merchandise, such as additional

25   services from Rimini Street; or where the effect is a tendency or capacity to mislead or deceive

26   purchasers or prospective purchasers, in particular concerning the illegality of Rimini Street's

27   conduct in providing support services; or where the effect is to divert trade from or otherwise

28   injure competitors, including specifically Oracle.

                                    41

1    165.    Defendant Ravin, as a director, officer or agent of Rimini Street, assisted

2    or aided, directly or indirectly, in the commission of these unfair practices and is equally liable

3    for them.

4    166.    Oracle America and OIC are entitled to an injunction to halt Defendants'

5    conduct, and to prevent further unfair practices, applicable to all of Defendants' articles or

6    products.  Oracle America and OIC are also entitled to damages, treble damages, reasonable

7    attorneys' fees and costs of suit.

8                            **Thirteenth Claim for Relief**

9                                **An Accounting**

10                    (By Oracle America and OIC Against All Defendants)

11    167.    Oracle America and OIC incorporate by reference each of the allegations

12    in Paragraphs 1-60, 63-69, and 84-163 of this Complaint as though fully set forth here, including

13    without limitation Paragraphs 4-14 and 26-60.

14    168.    Defendants have obtained business through the use of unlawful conduct

15    including, but not limited to:

16            (a)    Breaching the agreements governing access to or use of Oracle's

17    customer support websites;

18            (b)    Improperly, willfully, and unlawfully taking commercial advantage

19    of the investment in its Software and Support Materials by Oracle entities including Oracle

20    America and OIC, for the purpose of sabotaging Oracle America and OIC's ability to do

21    business and compete in the market; and,

22            (c)    Fraudulently accessing and intentionally trespassing on Oracle

23    America's password-protected customer support websites, without authorization or consent, or in

24    excess of authorization or consent, in furtherance of their unlawful and deceptive scheme as

25    described above.

26    169.    Defendants have received money as a result of their misconduct, at the

27    expense of Oracle America and OIC, and some or all of such money is rightfully due to Oracle

28    America and OIC.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    170.    The amount of money due from Defendants to Oracle America and OIC is

2  unknown to Oracle America and OIC, and cannot be ascertained without an accounting of the

3  income and gross profits Defendants have obtained through their wrongful and unlawful

4  conduct.  Oracle America and OIC are entitled, therefore, to a full accounting.

5                               **Prayer For Relief**

6             WHEREFORE, Oracle respectfully prays for the following:

7             A.    For a preliminary and permanent injunction restraining

8  Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert

9  or participation with any of them, from the following:

10             (1)    Copying[4], distributing, using, or creating derivative works

11  from Oracle Software and Support Materials in any way, including for any business purpose,

12  except as allowed by express license from Oracle;

13             (2)    Copying, distributing or storing, or facilitating copying,

14  distribution or storage of, any Oracle Software and Support Materials directly or indirectly from

15  or to any of Defendants' offices, computer systems or networks;

16             (3)    Using any robot, crawler, scraper, spider, or other software

17  tool to access, copy, distribute or use any Oracle Software and Support Materials in any way,

18  including for any business purpose;

19             (4)    Facilitating the downloading of any Oracle Software and

20  Support Materials from any Oracle support website for, or on behalf of, any customer who does

21  not have a valid, existing and currently-Oracle-supported software license for the specific

22  materials being downloaded from Oracle entitling that customer to have and use those Software

23  and Support Materials;

24             (5)    Facilitating the access to, use of, or downloading from any

25  _____

26  [4]    As used in this Prayer, "copying" includes downloading from a website or digital storage

27  media.

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Oracle support website for, or on behalf of, any customer other than by using that specific

2    customer's valid log-in credentials;

3                    (6)      Facilitating the copying, distribution or use of any Oracle

4    Software and Support Materials for, or on behalf of, any customer who did not have a current,

5    valid, existing software and support license from Oracle entitling that customer to have and use

6    those Software and Support Materials, at the time they were downloaded or obtained by or on

7    behalf of the customer;

8                    (7)      Regardless of the location of any specific Software and

9    Support Materials, copying, distributing or using Software and Support Materials obtained

10   through or for one customer to support a different customer;

11                   (8)      Facilitating the copying, distribution or use of, any Oracle

12   Software and Support Materials without keeping a record, which Oracle may inspect upon three

13   (3) business days' written notice, that accurately reflects all Software and Support Materials (a)

14   copied, distributed or used, organized by customer name, (b) the date(s) of the copying,

15   distribution or use, and (c) all other entities involved in the copying, distribution or use,

16   including name of the entity, principal contact, and contact information; and,

17                   (9)      Otherwise engaging in acts of unfair competition, unfair

18   practices, copyright infringement, trespass, and computer fraud against Oracle;

19           B.      That the Court order Defendants to file with the Court and serve on

20   Oracle within thirty (30) days after the service on Defendants of such injunction a report in

21   writing, under oath, setting forth in detail the manner and form in which Defendants have

22   complied with the injunction;

23           C.      For an Order directing Defendants to return Oracle's property,

24   including, without limitation, Oracle's confidential, proprietary, and copyrighted Software and

25   Support Materials, including data, internal documents, and valuable updates, patches, fixes, and

26   other computer code, that Defendants took from Oracle, as set forth in this Complaint;

27           D.      For an Order impounding or destroying any and all infringing

28   materials pursuant to 17 U.S.C. § 503;

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1      E.  For an Order awarding Oracle punitive damages in a sum to be

2 determined at trial;

3       F.  For restitution and disgorgement of all ill-gotten gains unjustly

4 obtained and retained by Defendants through the acts complained of here;

5      G.  For an Order finding a Constructive Trust for Oracle's benefit,

6 consisting of all revenues received by Defendants from their wrongful conduct which should

7 rightfully have been received by Oracle and all profits derived from that wrongful conduct, and

8 directing Defendants to pay all such sums to Oracle;

9      H.  For damages to be proven at trial;

10     I.  For those damages to be trebled;

11     J.  For statutory damages pursuant to 17 U.S.C. § 504;

12     K.  For prejudgment interest;

13     L.  For an accounting;

14     M.  For an Order awarding Oracle its attorneys' fees and costs; and,

15     N.  For an Order awarding Oracle such other and further relief as the

16 Court deems just and proper.

17

DATED:  April 19, 2010     BOIES SCHILLER & FLEXNER LLP

18

19

20        By: /s/ Richard J. Pocker

21         Richard J. Pocker
           Attorneys for Plaintiffs

22       Oracle USA, Inc., Oracle America, Inc. and
          Oracle International Corp.

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

### DEMAND FOR JURY TRIAL

2          In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle America, Inc., and

3  Oracle International Corp. demand a trial by jury on all issues so triable.

4

DATED:  April 19, 2010                    BOIES SCHILLER & FLEXNER LLP

5

6

7                                          By: /s/ Richard J. Pocker

8                                          Richard J. Pocker
                                           Attorneys for Plaintiffs
9                                          Oracle USA, Inc., Oracle America, Inc. and
                                           Oracle International Corp.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **CERTIFICATE OF SERVICE**

2    I HEREBY CERTIFY that on this 19th day of April, 2010, service of Plaintiffs' First

3    Amended Complaint was effected via the United States District Court e-filing system to the

4    following:

5    SHOOK HARDY & BACON LLP
     B. Trent Webb, Esq.
6    Eric Buresh, Esq.
     2555  Grand Boulevard
7    Kansas City, Missouri 64108-2613
     Telephone:  (816) 474-6550
8    Facsimile:  (816) 421-5547
     bwebb@shb.com
9    eburesh@shb.com

10   Robert H. Reckers, Esq.
     600 Travis Street
11   Houston Texas, 77002
     Telephone:  (713) 227-8008
12   Facsimile:  (731) 227-9508
     rreckers@shb.com
13

     SNELL & WILMER L.L.P.
14   Dan W. Goldfine, Esq.
     One Arizona Center
15   400 East Van Buren
     Phoenix, Arizona 85004-2202
16   Telephone: (800) 382-6000
     Facsimile: (602) 322-0430
17   dgoldfine@swlaw.com

18   Jonathan M. Jacobson, Esq.
     Chul Pak, Esq.
19   WILSON SONSINI GOODRICH & ROSATI
     1301 Avenue of the Americas, 40th Floor
20   New York, NY 10019
     Telephone: (212) 999-5800
21   Facsimile: (212) 999-5899
     JJacobson@wsgr.com
22   CPak@wsgr.com

23   WILSON SONSINI GOODRICH & ROSATI
     David S. Steuer, Esq.
24   Michael B. Levin, Esq.
     650 Page Mill Road
25   Palo Alto, California 94304-1050
     Telephone: (650) 493-9300
26   Facsimile: (650) 565-5100
     DSteuer@wsgr.com
27   MLevin@wsgr.com

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   GREENBERG TRAURIG
    Mark G. Tratos, Esq. (Nevada Bar. No. 1086)
2   Brandon Roos, Esq. (Nevada Bar No. 7888)
    Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3   3773 Howard Hughes Parkway
    Suite 400 North
4   Las Vegas, NV 89619
    Telephone: (702) 792-3773
5   Facsimile: (702) 792-9002
    tratosm@gtlaw.com
6   roosb@gtlaw.com
    godfreyl@gtlaw.com
7

8                                          /s/ Douglass A. Mitchell, Esq.
                                           An employee of Boies, Schiller & Flexner
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

48