BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

Attorneys for Oracle USA, Inc., Oracle
America, Inc., and Oracle International
Corporation

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice application to be submitted*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA., INC, a Colorado corporation, ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-PAL <br><br> **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSE** |

1

# <u>TABLE OF CONTENTS</u>

2

3 I. INTRODUCTION ................................................................................................ 1

4 II. SUMMARY OF ALLEGATIONS ..................................................................... 2

5  A. Oracle's Complaint ................................................................................ 2

  B. Rimini's Counterclaims ......................................................................... 3

6 III. ARGUMENT ...................................................................................................... 5

7  A. Rimini's First Cause of Action Fails to State a Claim ........................... 6

8   1. Rimini Cannot Base a Claim on Statements in Oracle's Court

9    Filings ......................................................................................... 7

10   2. Rimini Fails to Plead Facts Showing Any Defamatory, Published

    Statement .................................................................................... 8

11    a. Rimini Must Plead the Substance of Any Allegedly

12     Defamatory, Published Statement. ................................. 8

13    b. Rimini Fails to Plead the Substance of Any Allegedly

14     Defamatory, Published Statement ................................. 9

15    c. Rimini's Pleading Fails to Give Oracle Fair Notice of the

16     Claim ............................................................................ 11

  B. Rimini Fails to State a Copyright Misuse Defense .............................. 13

17   1. Restrictions on Access and Use of Copyrighted Materials Are Not

18    Misuse of Copyright .................................................................. 13

19   2. Rimini's Misuse Defense Fails Because It Alleges Only

20    Restrictions on Access and Use of Copyrighted Works .......................... 15

21   3. Rimini's Conclusory Allegation that Oracle's Licenses

22    "Effectively" Prevent Customers from Using Third-Party Support

23    Fails on the Facts Alleged by Rimini Itself and the Law ........................ 18

24   4. Rimini's Copyright Misuse Affirmative Defense Should Be

    Stricken .................................................................................... 19

25  C. Rimini Fails to State a Claim under California's Unfair Competition Law ........ 19

26 CONCLUSION .............................................................................................................. 21

27

28

i

1

## **TABLE OF AUTHORITIES**

2

3   Cases

4   *A&M Records, Inc. v. Napster, Inc.*,
        239 F.3d 1004 (9th Cir. 2001).................................................................. 13, 14, 15, 17
5
    *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*,
6       845 F. Supp. 356 (E.D. Va. 1994)..................................................................... 16, 17

7   *Aetna Cas. & Sur. Co v. Centennial Ins. Co.*,
        838 F.2d 346 (9th Cir. 1998)...................................................................................... 7
8
    *Alcatel USA, Inc. v. DGI Technologies, Inc.*,
9       166 F.3d 772 (5th Cir. 1999)..................................................................................... 14

10  *Apple, Inc. v. Psystar Corp.*,
        673 F. Supp. 2d 931 (N.D. Cal. 2009) ...................................................... 14, 16, 17
11
    *Aronson v. Kinsella*,
12      58 Cal. App. 4th 254 (Cal. Ct. App. 1997) ....................................................... 8, 11

13  *Ashcroft v. Iqbal*,
        __ U.S. __, 129 S.Ct. 1937 (2009)..................................................................*passim*
14
    *Bell Atl. Corp. v. Twombly*,
15      550 U.S. 544 (2007)...................................................................................... 5, 8, 9, 11

16  *Blanck v. Hager*,
        360 F. Supp. 2d 1137 (D. Nev. 2005) ...................................................................... 9
17
    *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
18      20 Cal. 4th 163 (Cal. 1999)................................................................................. 19, 20

19  *Church of Scientology of Cal. v. Flynn*,
        744 F.2d 694 (9th Cir. 1984)..................................................................................... 9
20
    *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*,
21      213 P.3d 496 (Nev. 2009) .................................................................................... 6, 7

22  *Cunningham v. Hamilton County, Ohio*,
        527 U.S. 198 (1999)................................................................................................... 15
23
    *Dictor v. Creative Mgmt. Servs., LLC*,
24      223 P.3d 332 (Nev. 2010) .......................................................................................... 7

25  *E & E Co., Ltd. v. Kam Hing Enterprises, Inc.*,
        No. C-08-871-MMC, 2008 WL 4962991 (N.D. Cal. Nov. 19, 2008) ............................. 11, 12
26
    *Eldred v. Ashcroft*,
27      537 U.S. 186 (2003)............................................................................................. 13, 17

28

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
  569 F. Supp. 2d 929 (N.D. Cal. 2008) ................................................................ 9

*Flowers v. Carville*,
  266 F. Supp. 2d 1245 (D. Nev. 2003) ................................................................ 12

*Fortaleza v. PNC Fin. Servs. Group, Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) .............................................................. 19

*Gertz v. Robert Welch, Inc.*,
  418 US 323 (1974) ............................................................................................. 12

*Ghawanmeh v. Islamic Saudi Acad.*,
  672 F. Supp. 2d 3 (D.D.C. 2009) ................................................................... 9, 10

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (Cal. Ct. App. 2007) ......................................................... 12

*In re Napster*,
  191 F. Supp. 2d 1087 (N.D. Cal. 2002) .............................................................. 14

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
  12 F. Supp. 2d 1035 (C.D. Cal. 1998) ............................................................ 6, 12

*Jacobson v. Schwarzenegger*,
  357 F. Supp. 2d 1198 (C.D. Cal. 2004) .......................................................... 9, 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................ 20

*Khoury v. Maly's of Cal., Inc.*,
  14 Cal. App. 4th 612 (Cal. Ct. App. 1993) ......................................................... 19

*Lasercomb America, Inc. v. Reynolds*,
  911 F.2d 970 (4th Cir. 1990) .............................................................................. 14

*Mann v. Quality Old Time Servs., Inc.*,
  120 Cal. App. 4th 90 (Cal. Ct. App. 2004) ........................................................... 6

*Mattel, Inc. v. MCA Records, Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998) ................................................................ 12

*Mazer v. Stein*,
  347 U.S. 201 (1954) ........................................................................................... 17

*MDY Industries, LLC v. Blizzard Entm't Inc.*,
  No. CV-06-2555, 2008 WL 2757357 (D. Ariz. Jul. 14, 2008) ............................ 15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................................................ 14

*Microsoft Corp. v. BEC Computer Co.*,
  818 F. Supp. 1313 (C.D. Cal. 1992) ................................................................... 15

iii

*Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*,
   123 F. Supp. 2d 945 (W.D.N.C. 2000) ................................................................... 15, 19

*Multimedia Patent Trust, v. Microsoft Corp.*,
   525 F. Supp. 2d 1200 (S.D. Cal. 2007) ................................................................... 19

*Pope v. Motel 6*,
   114 P.3d 277 (Nev. 2005) ......................................................................................... 7

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
   121 F.3d 516 (9th Cir. 1997) ................................................................................ 14, 15

*Roland-Warren v. Sunrise Senior Living, Inc.*,
   No. 09-CV-1199-JM, 2009 WL 2406356 (S.D. Cal. Aug. 4, 2009) ....................... 12

*Rubio v. Capital One Bank (USA), N.A.*,
   572 F. Supp. 2d 1157 (C.D. Cal. 2008) ................................................................. 20

*Saldate v. Wilshire Credit Corp.*,
   ___ F.R.D.___, No. CV-F-09-2089-LJO-SMS, 2010 WL 582069 (E.D. Cal.
   Feb. 12, 2010) ........................................................................................................ 19

*Scott v. Solano County Health & Soc. Servs. Dep't*,
   459 F. Supp. 2d 959 (E.D. Cal. 2006) ................................................................... 9

*Service & Training, Inc. v. Data Gen. Corp.*,
   963 F.2d 680 (4th Cir. 1992) ................................................................................. 16

*Silberg v. Anderson*,
   50 Cal. 3d 205 (Cal. 1990) ..................................................................................... 7

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ...................................................................... 9, 10

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ................................................................................ 8, 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................................ 20

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ........................................................................................... 7

*Ticketmaster LLC v. RMG Techs., Inc.*,
   536 F. Supp. 2d at 1198 ......................................................................................... 20

*Triad Systems Corp. v. Southeastern Express Co.*,
   64 F.3d 1330 (9th Cir. 1995) ................................................................................. 15, 16

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................... 20

*Weisbuch v. County of Los Angeles*,
   119 F.3d 778 (9th Cir. 1997) ................................................................................. 18

iv

1

*Williams v. County of Los Angeles*,
   No. CV-06-1766-DSF, 2006 WL 4756376 (C.D. Cal. June 19, 2006)................................. 11

2

*Wyshak v. City Nat'l Bank*,
   607 F.2d 824 (9th Cir. 1979)............................................................................................... 19

3

4

Statutes

5

Cal. Bus. & Prof. Code § 17200 ................................................................................. 1, 5, 19

6

Cal. Civil Code § 47............................................................................................................ 7

7

Rules

8

Fed. R Civ. P. 9 ................................................................................................................ 20

9

Fed. R. Civ. P. 12 .............................................................................................. 1, 11, 12, 19

10

Fed. R. Civ. P. 8 .......................................................................................................*passim*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S MOTION TO DISMISS COUNTERCLAIM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSE**

Plaintiffs Oracle USA, Inc. ("Oracle USA"), Oracle America, Inc. ("Oracle America") and Oracle International Corporation ("OIC") (together "Oracle" or "Plaintiffs") file this motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the Counterclaim of Rimini Street, Inc. ("Rimini"), asserting claims of (1) defamation, business disparagement and trade libel; (2) declaratory relief as to copyright misuse; and (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  Plaintiffs also move pursuant to Rule 12(f) to strike Rimini's fourth affirmative defense of copyright misuse.

## I.   INTRODUCTION

In response to Oracle's Amended Complaint, Rimini and its founder Seth Ravin have answered the claim of copyright infringement and breach of contract and moved to dismiss Oracle's other claims.[1]  Rimini has also asserted three counterclaims – but they are counterclaims in name only.  Each is merely a repackaging of the defenses that Rimini intends to offer in response to Oracle's own complaint – both in the Court and, perhaps more importantly, in the press.  The counterclaims are each legally meritless, and should be disposed of at the outset.

Rimini's first claim, for defamation and trade libel, alleges that an unspecified Oracle representative "insinuated" in some unspecified way to an unspecified industry analyst that some unspecified "Rimini Street practices" are "illegal."  Because Rimini fails to allege the substance of the allegedly defamatory statement, its claim fails under settled law.  Rimini's counterclaim hedges on whether Rimini asserts its claim based upon the content of Oracle's Complaint.  If that is what Rimini intends to assert, such a claim is barred by the litigation privilege and the *Noerr-Pennington* doctrine.   Indeed, Rimini's claims are so vague that they fail to provide Oracle with fair notice of Rimini's claims.

---

[1] Citations to the Amended Complaint and to the Answer to Oracle's First Amended Complaint and Counterclaim are in the form of (AC ¶ __) and (CC ¶ __) respectively.

ORACLE'S MOTION TO DISMISS COUNTERCLAIM

1    Rimini's second claim seeks declaratory relief on the theory that Oracle misused its

2    copyrights.  The only conduct that Rimini alleges, however, is that Oracle limits access to and

3    use of Oracle's copyrighted work.  As a matter of law, that is not copyright misuse.  Further,

4    Rimini asserts that Oracle's exercise of its statutory rights "effectively" prevents customers from

5    contracting with alternative service providers like Rimini.  Not only is such a claim contrary to

6    settled law, but Rimini alleges no facts to support it.  Moreover, the facts that Rimini does allege

7    – such as the assertion that hundreds of customers have already "made the switch to Rimini" –

8    are flatly contrary to any conclusion that Oracle's terms of use "effectively" prevent customers

9    from making the switch to Rimini.  For these same reasons, Rimini's affirmative defense of

10   copyright misuse should be stricken as well.

11   Rimini's third claim, for violation of California's Unfair Competition Law, rests entirely

12   on the same allegations of supposed defamatory insinuations and of copyright "misuse."  For the

13   reasons stated above, Rimini has failed to plead any defamatory conduct and has failed to plead

14   copyright misuse, and thus the Unfair Competition Law claim also must also fail.

15   **II.      SUMMARY OF ALLEGATIONS**

16            **A.      Oracle's Complaint**

17   Oracle is the world's largest enterprise software company.  (AC ¶ 25.)  Oracle earns

18   revenue by licensing software to businesses and by providing support services, among other

19   things.  (*Id.*)  Rimini holds itself out as a competitor to Oracle in providing support to companies

20   that license certain Oracle enterprise software applications.  (*Id.* ¶¶ 34-35.)

21   Oracle asserts in this action copyright infringement and other claims against Rimini and

22   its founder and CEO, Seth Ravin.  Rimini's business is built on systematic theft of Oracle's

23   intellectual property, including illegal downloading of Oracle's copyrighted software and support

24   materials, such as software applications and environments, updates, bug fixes, and

25   documentation.  (*Id.* ¶ 5.)  Rimini typically logs on to Oracle's password-protected technical

26   support websites using a customer's credentials, then downloads Oracle material in excess of the

27   customer's authorization under its license agreement – and Rimini has admitted to downloading

28   "tens of thousand files for a single customer."  (*Id.* ¶¶ 39-48, 57-60; CC ¶ 26.)  Rimini also

1   acquires copies of its customers' licensed Oracle enterprise applications software, makes illegal

2   copies of this software, and uses those copies in various illegal ways to offer low-cost support

3   and induce Oracle's customers to cancel their support contracts with Oracle in favor of Rimini.

4   (AC ¶¶ 9, 33-38; 75-79.)

5        Rimini is Mr. Ravin's second illegal business.  His last venture, TomorrowNow, provided

6   the same types of support services as Rimini.  TomorrowNow was purchased by one of Oracle's

7   major competitors, SAP AG ("SAP").  SAP eventually shut down TomorrowNow and admitted

8   that during Mr. Ravin's management, TomorrowNow engaged in illegal copying of Oracle's

9   intellectual property and illegally accessing Oracle's computer systems.  (*Id.* ¶¶ 10-11, 49-50.)

10              **B.      Rimini's Counterclaims**

11       The allegations of Rimini's counterclaims largely make one point:  Rimini denies the

12   allegations of Oracle's Complaint, and Rimini will "aggressively defend" against Oracle's

13   claims.  (CC ¶ 9; *see also id.*  ¶¶ 2-8.)  Rimini makes its defense stridently, going so far as to

14   accuse Oracle of asserting "malicious" and "knowingly false" claims.  (*Id.* ¶¶ 1-2.)

15       Rimini follows these assertions with paragraphs that read remarkably like Rimini's

16   marketing materials – alleging that "[h]undreds of Fortune 500, mid market, small and public

17   sector organizations around the world have already made the switch to Rimini," that Rimini is

18   Oracle's "fastest-growing" and "[p]rimary competition for after-market support," that Rimini is

19   "threatening Oracle's market control and pricing power," and that Rimini supposedly is able to

20   offer better service than Oracle at half the price.  (*Id.*  ¶¶ 10-19, 31-36.)

21       Oracle disputes these allegations and, at the appropriate time, will prove the allegations

22   of its Amended Complaint – that Rimini's growth and low prices have been based on its illegal

23   copying of Oracle's intellectual property and other wrongful acts.

24       Rimini further says it "counterclaimed herein so as to end Oracle's five year campaign of

25   illegal anticompetitive tactics," (*id.*  ¶ 8), but when it comes time to back up its rhetoric with

26   substance, it fails to plead facts sufficient to state any claims.

27       Rimini alleges three causes of action.  The first is for "defamation, business

28   disparagement, and trade libel."  (*Id.* ¶¶ 42-43.)  In support of this claim, Rimini purports to

3

1    quote a number of statements by Oracle.  For example, Rimini asserts Oracle has made

2    "incendiary and unfounded allegations that Rimini Street and its employees are thieves carrying

3    out a 'corrupt' and 'illegal business model.'" (*Id.* ¶ 44.)  While Rimini does not allege the source

4    of these words, they are found in Oracle's Complaint (*id.* ¶¶ 5, 10, 14), and Rimini does not

5    allege either that Oracle ever made these statements in any place other than the Complaint or that

6    they were ever "published."

7          Rimini's most specific allegation of any alleged publication is:  "an Oracle representative

8    contacted a senior analyst for an influential analyst firm and made statements insinuating that

9    Rimini Street's practices were illegal."  (CC ¶ 45.)  Rimini also alleges that "[s]imilar allegations

10   of illegality" were made to others, and says it "expects discovery will illuminate a pattern of

11   similar defamatory communications."  (*Id.*)  Rimini fails to plead who made these statements; to

12   whom these statements were made; when they were made; how they were made (verbally or in

13   writing); or which "practices" Oracle "insinuated" were unlawful.  Rimini merely asserts the

14   supposed statements were false (*id.* ¶¶ 46-47) and then goes on to make a number of allegations

15   aimed to show that certain of Rimini's practices were legal.  (*Id.* ¶¶ 49-53.)  Rimini also alleges

16   that Oracle "knew" Rimini was behaving lawfully because, in substance, Rimini told Oracle so,

17   and because of a supposed Rimini offer to permit a third-party audit of unspecified practices.

18   (*Id.* ¶ 54.)

19         Second, Rimini asserts a claim for declaratory relief based on the affirmative defense of

20   copyright misuse.  Rimini makes no claim, however, that Oracle has attempted to extend

21   copyright protection to materials that are not subject to copyright.  Rimini concedes that Oracle's

22   distribution of Software and Support Materials via its websites are subject to "browser-wrap" or

23   "click-wrap" agreements, and alleges that Oracle "has attempted" to use the "design of its

24   support website" and the agreements to "interfere with a customer's ability to select a support

25   vendor other than Oracle."  (*Id.* ¶ 59.)  However, Rimini alleges only two specific acts.  First,

26   that Oracle has prohibited the use of "automated tools" to download "significant volumes" of

27   materials from Oracle's website (*id.* ¶ 61); that is to say, Rimini complains that Rimini cannot

28   copy Oracle's intellectual property as easily as Rimini would like.  Second, Rimini also alleges

4

1   that Oracle "prohibits access to and download of support materials unless such access or

2   download 'is in furtherance of the relationship between customer and Oracle,'" (*id.*), which it

3   says represents Oracle's "systemic use of anticompetitive tactics to try and maintain a

4   stranglehold over its customers by effectively requiring them to either continue purchasing after-

5   market support only from Oracle or forego critical support materials to which they are entitled

6   and for which they have already paid." (*Id.*)  Rimini then alleges that the provision "gives

7   Oracle a substantial and unfair advantage over its support and maintenance competitors." (*Id.* ¶

8   63.)  Rimini does not allege any facts explaining how, in light of the alleged "systematic"

9   measures that "effectively require[]" customers to purchase support only from Oracle,

10   nonetheless "[h]undreds" of customers have "made the switch" to Rimini. (*Id.* ¶¶ 10, 61.)

11       Rimini's third cause of action is for violation of California's Unfair Competition Law,

12   Cal. Bus. & Prof. Code § 17200.  Rimini contends that Oracle engaged in "fraudulent business

13   practices" based on allegations that "Oracle caused false and disparaging allegations to be

14   published and republished by Oracle and its agents." (CC ¶ 68.)  But Rimini does not identify

15   what these supposed allegations were. (*Id.*)  Although Rimini further alleges "Oracle has also

16   employed unlawful and/or fraudulent business practices in its dealings with industry analysts,

17   reporters and Rimini Street's customers and potential customers" (*id.* ¶ 69), it does not allege any

18   facts regarding what any of those practices might be.  The most Rimini alleges is that "Oracle

19   has provided [unspecified] false and misleading information about Rimini Street to customers."

20   (*Id.*)  Nothing in Rimini's third cause of action goes substantively beyond anything in its first

21   two causes of action.

22   **III.   ARGUMENT**

23       Under Rule 8, a pleading may survive a motion to dismiss only if, taking all well-pleaded

24   factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on

25   its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v.*

26   *Twombly*, 550 U.S. 544, 570 (2007)).  The Court applies a two-step approach to determine the

27   validity of claims or counterclaims.  *Id.* at 1950.  <u>First</u>, the Court must identify and disregard any

28   "allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951.

5

1   Allegations in this category include any "legal conclusion couched as a factual allegation" and

2   threadbare, formulaic "recitals of the elements of a cause of action, supported by mere

3   conclusory statements." *Id*. at 1949-50.  Second, the Court must evaluate any well-pleaded

4   allegations – that is, those that are not disregarded under the first step of the test – and

5   "determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.

6         The Supreme Court explained the plausibility standard as follows:

7               A claim has facial plausibility when the plaintiff pleads factual
                content that allows the court to draw the reasonable inference that
8               the defendant is liable for the misconduct alleged.  The plausibility
                standard is not akin to a "probability requirement," but it asks for
9               more than a sheer possibility that a defendant has acted unlawfully.
                Where a complaint pleads facts that are "merely consistent with" a
10              defendant's liability, it "stops short of the line between possibility
                and plausibility of 'entitlement to relief.'"
11
    *Id*. at 1949 (internal citations omitted).
12
          A.      **Rimini's First Cause of Action Fails to State a Claim**
13
          Rimini's first cause of action, for "defamation, business disparagement, and trade libel,"
14
    should be dismissed because Rimini fails to allege the substance of any particular published
15
    statement outside of Oracle's court filings in this litigation.
16
          Rimini conflates two distinct torts: defamation and trade libel (also known as business or
17
    product "disparagement").[2]  Rimini also does not specify whether it asserts that California state
18

19   _____

20         [2] Rimini's counterclaim does not reveal which cause of action it intends to assert.  To the
     extent Rimini asserts trade libel, it fails to plead special damages, which are an element that must
21   be pled with specificity under Rule 9(g).  *See Isuzu Motors Ltd. v. Consumers Union of U.S.,*
     *Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).  A "bare allegation of the amount of pecuniary
22   loss is insufficient" for pleading a trade libel claim.  *Id.*  Under California law, Rimini must
     "identify particular customers and transactions of which it was deprived as a result of the libel."
23   *Mann v. Quality Old Time Servs., Inc.*, 120 Cal. App. 4th 90, 109 (Cal. Ct. App. 2004); *Isuzu*
     *Motors*, 12 F. Supp. 2d at 1047.  Under Nevada law, Rimini must allege facts showing a "general
24   business decline" that is the "result of the disparaging statements and the plaintiff must eliminate
     other potential causes."  *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496,
25   505 (Nev. 2009)  Here, Rimini merely alleges:  "On information and belief, Oracle's false and
     disparaging statements regarding Rimini Street's business have directly led to economic loss on
26   the part of Rimini Street through specific loss of sales."  (CC ¶ 54.)  This fails as a matter of law.
27
28

                                                 6

1  law or Nevada state law applies.  Regardless of which label properly applies or which state's law

2  applies,[3] Rimini must plead facts that establish the publication of a false statement.  *See Aetna*

3  *Cas. & Sur. Co v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1998) (California trade libel);

4  *Taus v. Loftus,* 40 Cal. 4th 683, 720 (2007) (California defamation); *Clark County*, 213 P.3d at

5  504 (Nevada trade libel); *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005) (Nevada defamation).

6      Rimini's claim fails for at least three reasons.  First, Rimini's counterclaim contains

7  numerous unattributed quotations from Oracle's Complaint.  To the extent Rimini attempts to

8  base its claim on statements in Oracle's court filings, the claim is barred by the litigation

9  privilege and the *Noerr-Pennington* doctrine.  Second, Rimini fails to allege the substance of any

10  supposed statement made any place other than in a court filing.  Third, Rimini's pleadings are so

11  sparse that they fail to give defendants fair notice of Rimini's claims.

12      **1.**      **Rimini Cannot Base a Claim on Statements in Oracle's Court Filings**

13      Rimini's counterclaim contains numerous unattributed quotations from Oracle's

14  Complaint.  (*Compare*, *e.g.*, CC ¶¶ 2, 32, 44 ("corrupt" and "illegal business model," "illegal

15  scheme," "massive theft of Oracle's software"), *with* AC ¶¶ 5, 10, 14 (same)).  Thus, Rimini's

16  Counterclaim appears to assert a defamation or trade libel claim based on Oracle's Complaint,

17  without expressly saying so.

18      If the true basis for Rimini's claim is the content of Oracle's Complaint, then the state

19  law litigation privilege plainly bars the claim, as does the federal *Noerr-Pennington* doctrine and

20  its state-constitution analogs.  The litigation privilege is absolute, and immunizes "participants

21  from liability for torts arising from communications made during judicial proceedings."  *Silberg*

22  *v. Anderson*, 50 Cal. 3d 205, 214 (Cal. 1990) (citing Cal. Civil Code § 47); *accord Clark County*,

23  213 P.3d at 499, 502 & n.3 (same under Nevada law).  Indeed, this privilege is "the backbone to

24  _____

25      [3] Nevada conflict-of-laws analysis may result in different bodies of law applying to the

26  claim and various defenses.  *Dictor v. Creative Mgmt. Servs., LLC*, 223 P.3d 332, 335-36 & n.5
   (Nev. 2010).  This memorandum cites both California and Nevada authority and shows that

27  Rimini's counterclaims fail under any body of law.

28

1    an effective and smoothly operating judicial system." *Silberg*, 50 Cal. 3d at 215 (internal citation

2    omitted).  Similarly, the *Noerr-Pennington* doctrine derives from the First Amendment's

3    guarantee of the right to petition, and holds that "those who petition any department of the

4    government for redress are generally immune" from liability for those acts.  *Sosa v. DIRECTV,*

5    *Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  These principles clearly bar any claim based on the

6    contents of Oracle's Complaint.[4]  To the extent that Rimini's claim is based on Oracle's

7    litigation activity, it should be dismissed.  *See, e.g.*, *Sosa*, 437 F.3d at 940-42 (affirming

8    dismissal of claims based on conduct protected by *Noerr-Pennington* where claimant failed to

9    plead any applicable exception).

10             2.        **Rimini Fails to Plead Facts Showing Any Defamatory, Published**
11                       **Statement**

12          Likely in recognition of this fatal flaw, Rimini studiously avoids *expressly* basing its

13    claim on litigation statements.  For example, Rimini never actually alleges that any of the quotes

14    taken from Oracle's Complaint were "published" – which is, of course, an element of Rimini's

15    claim.  Instead, the only alleged "published" statements on which Rimini relies are found in

16    cursory allegations in paragraph 45 of the Counterclaim.  Under well-established precedent,

17    those allegations fail to support a claim.

18             a.        **Rimini Must Plead the Substance of Any Allegedly**
                          **Defamatory, Published Statement.**

19          In order to adequately plead the essential element of a published, false statement, Rimini

20    must plead the substance of the allegedly defamatory statement.  Even before the Supreme Court

21    added bite to the Rule 8 pleading standard in *Twombly* and *Iqbal,* federal cases applying

22

23    _____

24          [4] The litigation privilege and the *Noerr-Pennington* doctrine also extend to
      communications outside of litigation but closely related to it, such as pre-litigation demand
25    letters.  *See, e.g.*, *Sosa*, 437 F.3d at 936-37 (affirming dismissal of claims based *Noerr-
      Pennington* protections for pre-litigation communications); *Aronson v. Kinsella*, 58 Cal. App. 4th
26    254, 261-68 (Cal. Ct. App. 1997) (applying California litigation privilege to protect pre-litigation
      communications); *Clark County*, 213 P.3d at 499, 502 (applying Nevada litigation privilege to
27    protect pre-litigation communications).

28

_____

1    California law consistently held that "[t]he words constituting a libel or slander must be

2    specifically identified, if not pleaded verbatim." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,

3    983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (internal citation omitted); *accord Jacobson v.*

4    *Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) ("Even under liberal federal

5    pleading standards, general allegations of the defamatory statements which do not identify the

6    substance of what was said are insufficient.") (internal citation omitted); *see also Scott v. Solano*

7    *County Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 973 (E.D. Cal. 2006).  The same – or

8    higher – demands are made of California trade libel in federal court.  *First Advantage*

9    *Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937-38 (N.D. Cal. 2008).[5]

10   And the cases applying Nevada law are in accord.  *See Blanck v. Hager*, 360 F. Supp. 2d 1137,

11   1160 (D. Nev. 2005) (requiring plaintiff to "allege the specific statements constituting

12   defamation").

13          Moreover, following the clarification in *Twombly*, 550 U.S. at 570, and *Iqbal*, 129 S. Ct.

14   at 1949, that a complaint must plead facts showing that a claim is "plausible," it is clear that any

15   defamation or trade libel claim in federal court must plead the substance of the allegedly

16   wrongful statement:  "Without any information whatsoever about the actual words that were

17   allegedly used, neither the Court nor defendants can assess whether plaintiff has stated a

18   plausible claim for relief sufficient to support an inference of liability."  *Ghawanmeh v. Islamic*

19   *Saudi Acad.*, 672 F. Supp. 2d 3, 20 (D.D.C. 2009).

20                              **b.    Rimini Fails to Plead the Substance of Any Allegedly**
21                                     **Defamatory, Published Statement**

22          Rimini's only allegations of any publication by Oracle occur in paragraph 45 of the

23   Counterclaim.  Rimini alleges that statements have been "published and republished," but does

24   not identify who, where, when, or what was said.  (CC ¶ 45.)  The closest Rimini comes to

25   pleading a specific published statement is in asserting that "an Oracle representative contacted a

26          [5] Federal pleading standards govern this case, but the state standard "is highly relevant"
27   to determining whether a false statement is adequately pled.  *Church of Scientology of Cal. v.*
     *Flynn*, 744 F.2d 694, 696 n.2 (9th Cir. 1984).

28

1  senior analyst for an influential analyst firm and made statements insinuating that Rimini Street's

2  practices were illegal." (*Id.*)

3       Courts have consistently held that such cursory allegations are not enough to withstand a

4  motion to dismiss.  For example, in *Jacobson*, the plaintiff alleged that an unidentified state

5  agent defamed him by "'spuriously leveling a false and defamatory charge against [the plaintiff]

6  of inappropriate comportment towards a female parole agent.'"  357 F. Supp. 2d at 1215

7  (alteration in original).  The court held that "because the plaintiff fails to identify and state the

8  substance of the allegedly defamatory statement, the defamation claim is insufficient."  *Id.* at

9  1216.  For the same reason, Rimini's claim here fails.  Because Rimini's general allegation that

10  an unidentified Oracle representative "made statements insinuating that Rimini Street's practices

11  were illegal" (CC ¶ 45) does not "identify and state the substance of the allegedly defamatory

12  statement," Rimini's "claim is insufficient."  *Id.*

13       In *Silicon Knights*, even allegations that were substantially more specific than those made

14  by Rimini here failed to state a claim.  The plaintiff there alleged that defendant had made

15
16       false and defamatory statements to several of Silicon Knights' customers,
        prospective customers, industry associates and the public regarding: (a) the
        quality and reliability of Silicon Knights' products, (b) the competence and ability
17       of Silicon Knights' employees, and (c) Silicon Knights' cooperation and ability to
        work with customers, suppliers, or other persons in the software industry.
18
19  983 F. Supp. at 1313-14.  Although these allegations provide more detail about the allegedly

20  defamatory statements than Rimini's allegations, the *Silicon Knights* court granted the

21  defendants' motion to dismiss because "the complaint contains only general allegations of the

22  defamatory statements and does not identify the substance of what was stated by the

23  Defendants."  *Id.* at 1314.  The same is doubly true of Rimini's claim.

24       In sum, because Rimini fails to identify and allege the substance of the supposed

25  "insinuation," Rimini has failed to plead facts showing its claim is plausible, and therefore its

26  claim should be dismissed.  *See Ghawanmeh*, 672 F. Supp. 2d at 20.  The other statements

27  alluded to in the Counterclaim – unspecified "[s]imilar allegations of illegality" and a speculative

28  "pattern of similar defamatory communications" that Rimini "expects" will be "illuminated" by

10

1  discovery" (CC ¶ 45) – are entirely devoid of factual content and are, at best, conjecture.

2  Rimini's first cause of action fails because Rule 8 "does not unlock the doors of discovery for a

3  [claimant] armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

4          **c.**      **Rimini's Pleading Fails to Give Oracle Fair Notice of the Claim**

5        Rimini's claim should also be dismissed for an independent reason. Even if Rimini had

6  alleged facts showing a "plausible" claim – and it has not – the allegations are deficient because

7  the claim fails to give Oracle fair notice. To meet the requirements of Rule 8, a claim must

8  provide "fair notice of what the . . . claim is and the grounds on which it rests." *Twombly*, 550

9  U.S. at 555 (citation omitted and alteration in original). Without fair notice, it would be

10  impossible for the party adequately to answer the claim, raise affirmative defenses, or move to

11  dismiss on grounds that are concealed by the claim's vagueness. Thus, in *Williams v. County of*

12  *Los Angeles*, No. CV-06-1766-DSF, 2006 WL 4756376, at *6 (C.D. Cal. June 19, 2006), the

13  court dismissed a claim for defamation because the allegations were "too vague" to determine,

14  among other things, whether the statements at issue were privileged or whether they were merely

15  opinion and not representations of fact. The court held that the allegations did not give the

16  defendant "fair notice of the grounds on which [the] claim is based." *Id.*; *accord E & E Co., Ltd.*

17  *v. Kam Hing Enterprises, Inc.*, No. C-08-871-MMC, 2008 WL 4962991, at *4 (N.D. Cal. Nov.

18  19, 2008) (dismissing where lack of specificity in defamation claim "might [make it] impossible

19  for [the defendant] to assert a proper affirmative defense or Rule 12(b) motion challenging the

20  claim as a matter of law'") (internal citation omitted). The same is true here in three respects.

21        <u>First</u>, as discussed above, Rimini tries to plead around the litigation privilege and the

22  *Noerr-Pennington* doctrine by quoting from Oracle's court filings but failing to identify the

23  source of those quotations. If the only time Oracle has made the allegedly defamatory statements

24  is in a court filing – and Rimini alleges no other instance in which Oracle has called out Rimini's

25  "corrupt" and "illegal business model," "illegal scheme," and "massive theft of Oracle's

26  software" (*compare* CC ¶¶ 2, 32, 44 *with* AC ¶¶ 5, 10, 14) – the counterclaim is barred. *See*

27  *Sosa*, 437 F.3d at 941-42; *Aronson*, 58 Cal. App. 4th at 261-68; *Clark County*, 213 P.3d at 499,

28

11

1  502.  By failing to allege any of the context for the purported statements, Rimini conceals

2  whether the statements are subject to the litigation privilege and *Noerr-Pennington*, and thus fails

3  to give Oracle fair notice so that it can adequately respond to the claim.  *See E & E Co.*, 2008

4  WL 4962991 at *4; *see also Roland-Warren v. Sunrise Senior Living, Inc.*, No. 09-CV-1199-JM,

5  2009 WL 2406356, at *8 (S.D. Cal. Aug. 4, 2009) (dismissing defamation claim; "[T]he court

6  cannot determine whether the statements were intended as opinion or fact or whether they were

7  privileged.  The assertions fail to put Defendants on notice of the factual underpinnings of

8  Plaintiff's claim.").

9      Second, by omitting both the actual words and the substance of other supposed

10  statements, and instead asking the Court to accept Rimini's characterization of them, Rimini

11  prevents Oracle and the Court from determining whether the statements are even susceptible to a

12  defamatory interpretation.  *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 33 (Cal. Ct. App. 2007)

13  ("Whether a statement is reasonably susceptible of a defamatory interpretation is a question of

14  law for the court."); *see also Flowers v. Carville*, 266 F. Supp. 2d 1245, 151 (D. Nev. 2003)

15  (same, dismissing certain claims under Rule 12(b)(6)); *Isuzu Motors,* 12 F. Supp. 2d at 1045-46

16  (same).

17      Third, without knowing what the statements were, it is impossible to know whether they

18  were false, much less whether they were uttered with knowledge of falsity or reckless disregard

19  of the truth.[6]  Rimini claims that the allegedly defamatory statement was an unspecified

20  "insinuation" that some unspecified Rimini practices are illegal in some unspecified way.  (CC ¶

21  45.)  Rimini does not allege *which* of its business practices were criticized.  To show that an

22  "insinuation" that Rimini's *unspecified* "practices are illegal" was a false statement, Rimini

23  ——————————————

24      [6] Rimini's publicity-seeking makes it a limited-purpose public figure.  *See, e.g.*, *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1162-63 (C.D. Cal. 1998) (finding corporation a
25  public figure where it "sought out publicity both for its product, and about the lawsuit once it was filed").  Accordingly, Rimini must plead and, ultimately, prove with clear and convincing
26  evidence that the statement was made with knowledge of its falsity or in reckless disregard of the
27  truth.  *Gertz v. Robert Welch, Inc.*, 418 US 323, 333-34 (1974).

28

1    would have to plead facts establishing that *none* of its practices is illegal.  Instead, Rimini claims

2    that *some* of its practices are legal, and pleads no facts that suggest any connection between those

3    *particular practices* and whatever business practices an Oracle representative supposedly

4    discussed with an analyst.  (*Id.* ¶¶ 49-53.)  Without more, Oracle is not on fair notice of the

5    grounds on which Rimini claims the statements were false.

6          **B.    Rimini Fails to State a Copyright Misuse Defense**

7          Rimini's second cause of action, which seeks a declaratory judgment as to its affirmative

8    defense of copyright misuse, suffers from two dispositive weaknesses.  First, Rimini fails to

9    allege any conduct that could be copyright misuse because all Rimini alleges is that Oracle

10   restricts copying and use of its copyrighted works – precisely what the Copyright Act authorizes

11   a copyright holder to do.  Rimini does not allege any conduct that expressly or specifically

12   expands Oracle's copyrights beyond their legally protected scope by requiring customers to deal

13   only with Oracle.  In the absence of such allegations, the counterclaim does not state either a

14   cause of action or an affirmative defense for copyright misuse.  Second, even if Rimini's

15   copyright misuse theory were viable –  and it is not – Rimini once again alleges only

16   conclusions, not facts, in support of its claim that Oracle's practices "effectively" require

17   customers to purchase support only from Oracle.  Even those conclusory allegations are

18   inconsistent with Rimini's allegations of its own success in luring Oracle customers to switch to

19   Rimini.

20          **1.    Restrictions on Access and Use of Copyrighted Materials Are Not
                  Misuse of Copyright**

21          The essence of the grant of copyright is the exclusive right to exploit the work; that is,

22   "reproduction and distribution of their copyrighted works [are] exclusive rights of copyright

23   holders."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir. 2001).  In this way,

24   "copyright law *celebrates* the profit motive, recognizing that the incentive to profit from the

25   exploitation of copyrights will redound to the public benefit by resulting in the proliferation of

26   knowledge."  *Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2003) (citation omitted) (emphasis in

27   original).

28

13

1       The equitable defense of copyright misuse "prevents copyright holders from leveraging

2    their limited monopoly to allow them control of areas outside the monopoly." *A&M Records*,

3    239 F.3d at 1026; *see also Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th

4    Cir. 1997) (citing *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990)).  In

5    particular, "'most of the cases' that recognize the affirmative defense of copyright misuse

6    involve unduly restrictive licensing schemes." *A&M Records*, 239 F.3d at 1027 n.8 (internal

7    citation omitted).  Typically, misuse is found when a copyright holder explicitly and

8    unreasonably prohibits licensees from creating or using competing products or requires licensees

9    to use non-copyrighted works.  *See, e.g., Lasercomb*, 911 F.2d at 976-79 (license barred licensee

10   from developing competing products for ninety-nine years); *Practice Mgmt.*, 121 F.3d at 520-21

11   (license required customer's agreement to forgo use of all competing products); *Alcatel USA,*

12   *Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 792-94 (5th Cir. 1999) (license explicitly required

13   licensee to use uncopyrighted items manufactured by copyright holder in order to use

14   copyrighted software); *In re Napster*, 191 F. Supp. 2d 1087, 1106 (N.D. Cal. 2002) (license

15   permitted copyright holder to increase its fees or terminate contract if licensee did not license

16   music exclusively from copyright holder).[7]

17       By contrast, a license provision that controls only the access to or use of the copyrighted

18   product cannot be the basis for a misuse defense, even if infringers might find it easier to

19   compete against the copyright holder in the absence of those restrictions.  For example, in *Apple,*

20   *Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 933 (N.D. Cal. 2009), Apple's licenses permitted its

21   Mac OS X software to be used only on Apple computers, and prohibited use on computers sold

22   by Psystar (which were designed and sold to be used with Apple software).  Although this

23   restriction made it more difficult for Psystar to sell computers in competition with Apple, the

24   ————————————

25       [7] The Fourth Circuit in *Lasercomb*, 911 F.2d at 978, was the first court of appeals
26   decision to recognize copyright misuse; the Ninth, Fifth, and Third Circuits have since adopted
      its reasoning.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 994-
27   95 (C.D. Cal. 2006) (citing cases).

28

1    court rejected a misuse defense:  "Apple has not prohibited purchasers of Mac OS X from *using*

2    competitor's products.  Rather, Apple has simply prohibited purchasers from using Mac OS X *on*

3    competitor's products."  *Id.* at 940 (emphasis in original).  This was well within Apple's

4    statutory rights, and therefore not misuse.  *Id.*; *see also A&M Records*, 239 F.3d at 1027 (no

5    copyright misuse where defendants failed to show that "plaintiffs seek to control areas outside of

6    their grant of monopoly").

7            Reflecting the settled rule that merely controlling access to or use of copyrighted work is

8    not misuse, courts "have summarily rejected the copyright abuse defense where the copyright

9    owner did not prohibit its licensees from either using or independently developing a competing

10   product."  *Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945,

11   955-56 (W.D.N.C. 2000) (granting motion to strike affirmative defense of copyright misuse); *see*

12   *also MDY Industries, LLC v. Blizzard Entm't Inc.*, No. CV-06-2555, 2008 WL 2757357, at *7

13   (D. Ariz. Jul. 14, 2008) (defendant not misusing its copyrights where it did not bar third parties

14   from developing competing software); *Microsoft Corp. v. BEC Computer Co.*, 818 F. Supp.

15   1313, 1316-17 (C.D. Cal. 1992) (striking affirmative defense of copyright misuse where the

16   copyright owner did not prohibit development or use of competing products); *compare, e.g.*,

17   *Practice Mgmt.*, 121 F.3d at 520-21 (finding misuse where license required customer to forgo

18   use of all competing products). [8]

19          **2.      Rimini's Misuse Defense Fails Because It Alleges Only Restrictions on
                       Access and Use of Copyrighted Works**

20          Applying this rule, the Ninth Circuit and other courts have rejected copyright misuse

21   claims closely analogous to Rimini's claim here.  In *Triad Systems Corp.  v. Southeastern*

22   *Express Co.*, 64 F.3d 1330 (9th Cir. 1995), *overruled on other grounds by Cunningham v.*

23   *Hamilton County, Ohio*, 527 U.S. 198, 210 (1999), the third-party service provider Southeastern

24

25   _____

26          [8] Although *BEC Computer* predated the Ninth Circuit's formal adoption of the copyright
     misuse defense in *Practice Management*, it applied the copyright misuse standard of *Lasercomb*,
27   which the Ninth Circuit later adopted in *Practice Management.*

28

1    accused Triad of copyright misuse.  The court rejected that claim because Triad "did not attempt

2    to prohibit Southeastern or any other [third-party service provider] from developing its own

3    service software to compete with Triad," but merely prevented the defendant from using Triad's

4    software to "get[] a free ride" when servicing systems sold by Triad.  *Triad*, 64 F.3d at 1337.

5           Moreover, in rejecting the copyright misuse defense, the *Triad* court followed the

6    decision in *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp.

7    356 (E.D. Va. 1994).  In *Advanced Computer*, MAI made computers and software.  MAI's

8    license agreements effectively prohibited competitive service providers from even *turning on* the

9    computers at issue, making it entirely impossible for those competitive providers to service

10   customers' computers without violating MAI's copyrights.  *Id.* at 367.  Nonetheless, MAI's

11   license agreements were not copyright misuse.  The licenses did not "prevent the alleged

12   infringer from developing competing software," *id.*, and instead "MAI is simply attempting to

13   protect the rights accruing to it as the holder of valid copyrights in its software," that is,

14   restrictions on copying and use.  *Id.* at 370; *accord Psystar*, 673 F. Supp. 2d at 930-40 (no

15   misuse where license prevented competitor from using Apple software to sell computers in

16   competition with Apple); *see also Service & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680,

17   690 (4th Cir. 1992) (software copyright owner requiring its software customers to purchase its

18   support services did not commit misuse because limiting the use of its copyrighted software is

19   "an exclusive right of a copyright owner").

20          This line of cases – including *Triad*, *Advanced Computer*, *and Psystar* – shows why

21   Rimini's misuse claim fails as a matter of law.   In each of those cases, the copyright holder had

22   in place restrictions on access and use of copyrighted works which did not expressly prohibit (1)

23   the customer from doing business with a competitor; or (2) the development of competitive

24   works.  Nonetheless, in each case, the restrictions had the *effect* of making it harder – if not

25   impossible – to compete against the copyright holder.  And, in each case, the misuse defense was

26   rejected.  *Triad*, 64 F.3d at 1337; *Psystar*, 673 F. Supp. 2d at 940; *Advanced Computer*, 845 F.

27   Supp. at 370.

28          The facts alleged by Rimini fit the same pattern.  Each of the two license restrictions

1   alleged by Rimini is well within Oracle's statutory rights as a copyright holder.  First, the alleged

2   limits on massive automated downloads of Oracle Software and Support Materials (CC ¶ 61)

3   falls squarely within the scope of Oracle's rights "to control reproduction and distribution of . . .

4   copyrighted works, exclusive rights of copyright holders."  *A&M Records*, 239 F.3d at 1027

5   (citing 17 U.S.C. § 106).  Second, the alleged limitation of downloads to those in furtherance of

6   the customer's relationship with Oracle is, as the counterclaim acknowledges, merely a

7   restriction on customers' "access to and download of support materials," (CC ¶ 61), and thus

8   falls within Oracle's rights to control distribution of its copyrighted material.

9        Rimini's assertion that these alleged restrictions "effectively" prevent customers from

10   using third-party support providers like Rimini, (*id.* ¶ 61), cannot salvage Rimini's claim.

11   Rimini has not alleged any term of an Oracle agreement that bars Rimini from developing

12   competing creative works or requires customers to agree not to do business with Rimini.  Indeed,

13   Rimini admits that Oracle does not prohibit the use or development of a competing product or

14   service.  (*Id.* ¶ 59.)   Thus, regardless of the supposed "effect" of Oracle's alleged restrictions,

15   they do not constitute misuse.  *E.g.*, *Psystar*, 673 F. Supp. 2d at 940 ("Apple's agreement simply

16   attempts to control the use of Apple's own software – an area that is the *focus* of the copyright")

17   (emphasis in original); *Advanced Computer*, 845 F. Supp. at 370 ("MAI has not incorporated

18   overbroad noncompetition clauses in its licensing agreements. . . . MAI is simply attempting to

19   protect the rights accruing to it as the holder of valid copyrights in its software.").

20        The reasons for the settled rule barring a claim based on an "effective" restraint are

21   sound.  That Rimini is unable to offer an attractive competing service to Oracle customers that

22   does not depend on unlicensed access to Oracle's copyrighted works is simply a reflection of the

23   massive investment Oracle has made in its works, the resulting appeal of those works, and

24   Rimini's failure to develop and to offer an adequate substitute of its own.  The "economic

25   philosophy" of copyright "is the conviction that encouragement of individual effort by personal

26   gain is the best way to advance public welfare through the talents of authors and inventors."

27   *Mazer v. Stein*, 347 U.S. 201, 219 (1954); *see also Eldred*, 537 U.S. at 212 n.18 ("[C]opyright

28   law serves public ends by providing individuals with an incentive to pursue private ones.").  It

17

1    would stand that policy (and the Copyright Act itself) on its head to use the success and appeal of

2    Oracle's copyrighted works, and Rimini's failure to develop its own alternatives, as the basis to

3    declare that Oracle cannot enforce its copyrights.

4            **3.**        **Rimini's Conclusory Allegation that Oracle's Licenses "Effectively"**
                           **Prevent Customers from Using Third-Party Support Fails on the**

5                               **Facts Alleged by Rimini Itself and the Law**

6          Rimini's copyright misuse defense and counterclaim also fail because they are based

7    entirely on conclusory allegations, are disproved by Rimini's own allegations elsewhere in the

8    Counterclaim, and therefore fail to "plausibly suggest an entitlement to relief." *Iqbal*, 129 S. Ct.

9    at 1951.

10         As discussed above, Rimini does not allege that Oracle *explicitly* requires its customers to

11   forgo third-party support, but instead asserts that Oracle is "effectively requiring [customers]

12   to . . . continue purchasing after-market support only from Oracle." (CC ¶ 61.)  But Rimini

13   alleges absolutely no facts to show that its ability to provide competing service has in fact been

14   "effectively" restrained.  On a motion to dismiss, the court need not accept a "legal conclusion

15   couched as a factual allegation" or threadbare, formulaic "recitals of the elements of a cause of

16   action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949-50.  Lacking

17   "factual content that allows the court to draw the reasonable inference that the defendant is liable

18   for the misconduct alleged," the copyright misuse allegations fail to satisfy Rule 8 and must be

19   dismissed. *Id.* at 1949.

20         Moreover, Rimini alleges facts that undermine its conclusory allegations.  Rimini claims

21   that "[h]undreds" of customers have "already made the switch to Rimini," and that it has enjoyed

22   tremendous growth in terms of revenues and customers.  (CC ¶¶ 10-11, 13-18.)  These

23   allegations are inconsistent with Rimini's allegation that Oracle's licensing practices

24   "effectively" prevent customers from switching to Rimini.  (*Id.* ¶ 61.)  Consequently, Rimini has

25   not pled a plausible claim that Oracle has "effectively" foreclosed competition. *See Weisbuch v.*

26   *County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("A plaintiff may plead herself out

27   of court.  If the pleadings establish facts compelling a decision one way, that is as good as if

28   depositions and other expensively obtained evidence on summary judgment establishes the

1    identical facts.") (internal citation omitted).

2        **4.    Rimini's Copyright Misuse Affirmative Defense Should Be Stricken**

3        Rimini's Fourth Affirmative Defense is copyright misuse.  Affirmative defenses are

4    governed by the same pleading standard as complaints.  *Wyshak v. City Nat'l Bank*, 607 F.2d

5    824, 827 (9th Cir. 1979).  An affirmative defense may be stricken pursuant to Rule 12(f) "when

6    the defense is insufficient as a matter of law."  *Multimedia Patent Trust, v. Microsoft Corp.*, 525

7    F. Supp. 2d 1200, 1211 (S.D. Cal. 2007).

8        In asserting that defense, Rimini expressly relies on the allegations of the Counterclaim:

9    "As explained by Rimini Street's Second Counterclaim."  (Answer, p. 24.)  As shown above, the

10   misuse counterclaim fails as a matter of law.  Thus, the defense should be stricken as well.  *See,*

11   *e.g.*, *Computer Support*, 123 F. Supp. 2d at 955-56 )(granting motion to strike misuse defense).

12       **C.    Rimini Fails to State a Claim Under California's Unfair Competition Law**

13       Finally, Rimini brings suit under California's Unfair Competition Law ("UCL"), Cal.

14   Bus. & Prof. Code § 17200 *et seq.*   The UCL provides a cause of action for business practices

15   that are (i) unfair, (ii) fraudulent, and/or (iii) unlawful, but a claimant must "'state with

16   reasonable particularity the facts supporting the statutory elements of the violation.'" *Saldate v.*

17   *Wilshire Credit Corp.*, ___ F.R.D.___, No. CV-F-09-2089-LJO-SMS, 2010 WL 582069, at *14

18   (E.D. Cal. Feb. 12, 2010) (quoting *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619

19   (Cal. Ct. App. 1993); *accord Fortaleza v. PNC Fin. Servs. Group, Inc.*, 642 F. Supp. 2d 1012,

20   1019 (N.D. Cal. 2009).  Rimini makes no effort to state a claim under the "unfair" prong,[9] and its

21   allegations are insufficient to state a claim under the "fraudulent" and "unlawful" prongs as well.

22       First, Rimini fails to adequately allege "fraudulent" conduct.  Rimini's UCL claim asserts

23   that Oracle has made unspecified "false and misleading statements," provided unspecified "false

---

24

25       [9] The Counterclaim asserts only "unlawful and/or fraudulent," and not "unfair," conduct.
(CC ¶ 69.)  Indeed, in competitor cases such as this one, conduct is "unfair" under the UCL only
26   if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of
those laws because its effects are comparable to or the same as a violation of the law, or
27   otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los*
*Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999).  Rimini alleges nothing like that.

28

1   and misleading information about Rimini Street" to potential customers, and has caused

2   unspecified "false and disparaging allegations to be published and republished."  (CC ¶¶ 67-69.)

3   These allegations fall short of the specificity required to assert a claim.

4          Because Rimini's UCL claim is based on allegedly false representations, the claim must

5   satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford*

6   *Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

7   1097, 1105-06 (9th Cir. 2003).  Rule 9(b) requires the pleader to allege the "time, place, and

8   specific content of the false representations as well as the identities of the parties to the

9   misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citation

10  omitted).  Here, the allegations of the Counterclaim fall far short of this standard.  No time or

11  place is alleged for any specific representation.  Rimini identifies no specific individual who

12  allegedly made a false representation.  And Rimini fails to identify the specific content of any

13  false representation.  Thus, Rimini fails to state to state a claim for "fraudulent" conduct.  *See*

14  *Kearns*, 567 F.3d at 1126-27 (affirming dismissal of UCL claim based on "concealment"

15  because "general pleadings do not satisfy the heightened pleading requirements of Rule 9(b)").

16         Second, Rimini does not adequately allege any "unlawful" conduct.   The "unlawful"

17  prong of the UCL "borrows violations of other laws and treats them as unlawful practices that

18  the unfair competition law makes independently actionable."  *Cel-Tech*, 20 Cal. 4th at 180.

19  Rimini fails to identify any specific statute or regulation that it contends has been violated.  To

20  the extent Rimini attempts to base an unlawful claim on its tort or copyright misuse claims, its

21  UCL claim fails for the same reasons as the tort and copyright misuse claims (as shown above in

22  Part III.A and III.B).  *See Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168

23  (C.D. Cal. 2008) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot

24  state a UCL claim either.").  Moreover, alleged copyright misuse in particular cannot be a basis

25  for a determination that conduct is "unlawful" because copyright misuse is merely an equitable,

26  affirmative defense (as to which Rimini itself seeks merely a declaration), not a basis for an

27  independent claim. *See Ticketmaster LLC v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1198

28  (C.D. Cal. 2008).

1    For all of these reasons, Rimini fails to state a claim under any prong of the UCL, and its

2  third cause of action should be dismissed.

3

4                            **<u>CONCLUSION</u>**

5    For the foregoing reasons, Rimini's three Counterclaims should be dismissed and its

6  Fourth Affirmative Defense stricken.

7

8  DATED:  May 7, 2010                    BOIES SCHILLER & FLEXNER LLP

9

10                                  By: <u>/s/ Kieran P. Ringgenberg</u>
                                        Kieran P. Ringgenberg
11                                      Attorneys for Plaintiffs
                                        Oracle USA, Inc., Oracle America, Inc. and
12                                      Oracle International Corp.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S MOTION TO DISMISS COUNTERCLAIM

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on the 7th day of May, 2010, I electronically transmitted the

3   foregoing **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND**

4   **ORACLE INTERNATIONAL CORPORATION'S MOTION TO DISMISS**

5   **COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSE** to the Clerk's Office using

6   the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in

7   this matter; all counsel being registered to receive Electronic Filing.

8

9                                            By: /s/ Kieran P. Ringgenberg
                                                 Kieran P. Ringgenberg
10                                                Attorneys for Plaintiffs
                                                  Oracle USA, Inc., Oracle America, Inc. and
11                                                Oracle International Corp.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S MOTION TO DISMISS COUNTERCLAIM