SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. *(pro hac vice)*
Eric Buresh, Esq. *(pro hac vice)*
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers, Esq. *(pro hac vice)*
600 Travis Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

*Attorneys for Defendants*
*RIMINI STREET, INC. and SETH RAVIN*

WILSON SONSINI GOODRICH & ROSATI
Jonathan M. Jacobson, Esq.
1301 Avenue of the Americas, 40th Floor
New York, New York, 110019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jjacobson@wsgr.com
*(pro hac vice applications to be submitted)*

Michael B. Levin, Esq.
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493- 9300
Facsimile: (650) 493 - 6811
mlevin@wsgr.com
*(pro hac vice application to be submitted)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ORACLE USA, INC., a Colorado corporation;
ORACLE AMERICA, INC. a Delaware
corporation; and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation;
SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-0106-LRH-PAL

**DEFENDANT RIMINI
STREET INC.'S ANSWER TO
ORACLE'S FIRST AMENDED
COMPLAINT AND FIRST
AMENDED COUNTERCLAIM**

**RIMINI STREET INC.'S ANSWER AND COUNTERCLAIM**

Defendant Rimini Street Inc. ("Rimini Street") for its Answer and Counterclaim against Plaintiffs Oracle USA, Inc. ("Oracle USA"), Oracle America, Inc. ("Oracle America"), and Oracle International Corporation ("OIC") (together "Oracle" or "Plaintiffs") allege as follows based on its personal knowledge as for itself, and on information and belief as to the acts of others:

**I.    FACTUAL BACKGROUND**

1.    "We believe we should be the ones to support our customers, . . . . If you're a third-party support provider offering multivendor support, we're coming, we're coming." (Juergen Rottler, Oracle's Executive Vice President of Global Customer Services, threatening third-party support vendors that compete with Oracle).[1]  Oracle made this public threat just one day after filing its Complaint against Rimini Street.

**A.    Rimini Street Vehemently Denies Oracle's Knowingly False Accusations.**

2.    Oracle maliciously alleges that Rimini Street's business is an "illegal business model," an "illegal scheme," and that there has been "massive theft of Oracle's software and related support materials by Rimini Street."  These accusations are false, and Rimini Street vehemently denies them.

3.    Rimini Street's business processes and procedures are entirely legal, and Rimini Street has not committed "massive theft," or any theft at all.  Rimini Street is authorized by every one of its clients to perform work on their behalf, and, as a matter of process and procedure, has delivered Oracle Software and Support Materials[2] only to clients who were entitled to them and only within the scope of that client's entitlement.

4.    Far from Oracle's "massive theft" allegation, Rimini Street has implemented extraordinary processes and procedures to assure the proper use of Oracle's intellectual property. For example, Rimini Street performs a unique download of Oracle Software and Support Materials on behalf of each client that authorizes and requests such service.  Rimini Street maintains

---

[1]  Richard Adhikari, *Oracle Puts Third-Party Support in Crosshairs*, E -COMMERCE TIMES, Jan. 28, 2010, http://www.ecommercetimes.com/story/69217.html (last visited Mar. 1, 2010).

[2]  Oracle software applications, updates, bug fixes, patches, across the entire PeopleSoft, JD Edwards and Siebel families of software products are referred to throughout as "Oracle Software and Support Materials."

1   downloaded material only on behalf of the client for whom the download was performed.  And, as a

2   matter of process and procedure, each client is assigned a separate data "silo" where Oracle Software

3   and Support Materials for only that client are maintained. Rimini Street does not co-mingle the

4   independent downloads of clients.

5           5.      With respect to Oracle's complaint about Rimini Street possessing copies of

6   Oracle customer licensed software, Oracle customers authorize Rimini Street to possess and use such

7   copies.  Not only is possessing and using the copies legal, it is an industry standard for third party

8   vendors like IBM, AT&T, Accenture, CedarCrestone, and countless others who work with the same

9   Oracle customer licensed software.  Oracle is well aware of Rimini Street's authorized possession

10  and usage of customer licensed software because Oracle itself delivered the software to Rimini

11  Street for hundreds of its customers.

12          6.      Oracle is fully aware of Rimini Street's processes and procedures.  If Oracle

13  had genuine concerns about Rimini Street's use of its intellectual property, Oracle could have

14  accepted Rimini Street's numerous offers since September 2005 to openly and transparently review

15  and discuss Rimini Street processes and procedures, or Oracle could have even accepted Rimini

16  Street's invitation to review internal materials and Rimini Street's invitation to have a third-party

17  independent auditor review Rimini Street's compliance with its processes and procedures.

18          7.      Instead, Oracle chose to ignore the fact that Rimini Street's processes and

19  procedures are legal and supported by industry-leading practices.  Oracle initiated this baseless

20  litigation as another anticompetitive tactic to try and slow Rimini Street's fast-paced growth and

21  protect Oracle's dominant 95% market share and monopoly-like 92% gross profit margins on the

22  after-market support of its products.[3]

23          8.      Rimini Street will aggressively defend against this baseless litigation and has

24  counterclaimed herein so as to end Oracle's five year campaign of illegal anticompetitive tactics

25  against Rimini Street and to hold Oracle accountable for its actions, related costs and damages.

26  **B.      Oracle Prefers Competition in the Courtroom Rather than the Marketplace.**

27

28  [3] *See* Thomas Wailgum, *ERP Support Drama: How Far Will Oracle Go to Protect Its Golden Egg?*, CIO MAGAZINE, Feb. 24, 2010,  http://www.cio.com/article/554113/ (last visited Mar. 2, 2010).

1    9.    Oracle is the world's largest enterprise software company.  Rimini Street

2    provides after-market support services for enterprise software applications—including software

3    applications licensed by Oracle.

4    10.    Rimini Street is Oracle's fastest-growing competitor for the after-market

5    support business of Oracle's Siebel, PeopleSoft and JD Edwards enterprise software products.

6    Hundreds of Fortune 500, mid market, small and public sector organizations around the world have

7    already made the switch to Rimini Street's innovative, award-winning and highly-praised support

8    model.  Rimini Street has been forecasting significant continued year-over-year growth based on

9    sales pipeline data.

10   11.    Rimini Street's success and growing industry acceptance as a proven

11   alternative to Oracle's much more expensive after-market support offerings is now threatening

12   Oracle's market control and pricing power.  In response, Oracle has now turned to the courtroom

13   instead of choosing to compete in an open and fair market.  Oracle's strategy is to use this calculated

14   litigation to protect its share of the after-market support business for Oracle software products and

15   preserve or increase its profit margin on those services.

16   12.    With a staggering $800 million in quarterly losses in its core businesses,[4]

17   Oracle's power, profits and financial strength can only be maintained if it can continue coercing its

18   customers into paying exorbitant annual fees for after-market support of its products.

19   **C.    Rimini Street is Oracle's Primary Competition for After-Market Support.**

20   13.    In 2009, Rimini Street saw growth of more than 270% in year-over-year

21   revenue, more than doubled its global client base to nearly 300, added substantial new international

22   clients, accumulated nearly $150 million in sales backlog, and more than doubled its global

23   workforce to 160 professionals.  Rimini Street achieved a 95% annual client renewal rate and more

24   than a 99% client satisfaction rating.

25   14.    One reason Oracle's support customers switch to Rimini Street support is a

26   50% annual fee savings. Rimini Street is able to spend more money on each support client and offer

27

28   [4]  *Id.*

1  lower fees by simply eliminating the excessive profits Oracle demands from its support customers.

2  Also, due to Rimini Street's dramatically different support model that includes no required upgrades

3  or updates for a minimum of ten years, Rimini Street clients can achieve a total operating cost

4  savings up to 90% over a decade compared to Oracle's support model.

5       15.    In addition to significant savings, Rimini Street's different support model

6  provides clients with "concierge" level, ultra-responsive service.  Unlike Oracle's generic call center

7  approach, Rimini Street assigns each client a named, highly experienced Primary Support Engineer.

8  Support services are available 24x7x365 with guaranteed 30 minute response time anywhere in the

9  world and 90% guaranteed live call answering during the day.  Rimini Street's track-record of

10 meeting these service level commitments and providing excellent service is well documented by

11 leading industry analysts who work with Rimini Street clients, media interviews with Rimini Street

12 clients, client side-by-side live service comparisons, client satisfaction surveys, and hundreds of

13 client reference calls made by Rimini Street prospects.

14      16.    Rimini Street's different support model also includes many innovative

15 services at no additional charge that go beyond the features of Oracle's standard support.  The

16 additional Rimini Street services include performance support, interoperability support, and support

17 for application customizations. The inclusion of these services represents significant cost savings for

18 Rimini Street clients compared to the additional consulting fees Oracle would generally charge its

19 customers for similar services.

20      17.    Another benefit for Oracle clients who switch to Rimini Street support is a

21 more robust and timely tax, legal and regulatory service spanning up to 190 countries for PeopleSoft

22 and JD Edwards products.  Rimini Street's tax, legal and regulatory update design and development

23 operation is led by veteran tax specialists, attorneys, executives, and engineers who bring a blend of

24 international tax, legal and regulatory expertise.  As part of Rimini Street's commitment to the

25 highest quality deliverables, Rimini Street's tax, legal and regulatory development process has been

26 audited from scoping to delivery for Sarbanes Oxley 404 process compliance by a Big Four

27 accounting firm.

28      18.    Rimini Street has already delivered more than 5,000 high-quality tax, legal

1  and regulatory updates to its clients over the years, and is currently responsible for the accurate

2  processing of billions of dollars in transactions a month.  Further, Rimini Street has delivered every

3  one of its tax, legal and regulatory updates to clients ahead of Oracle's planned delivery date for its

4  equivalent updates since the inception of the company. Rimini Street clients praise the quality,

5  comprehensiveness and timely delivery of Rimini Street's tax, legal and regulatory updates in media

6  interviews, client references for prospects, and press materials.

7         19.     Rimini Street respects the intellectual property rights of Oracle.  As detailed

8  herein, Rimini Street takes extraordinary efforts, in both process and procedure, to ensure that

9  Oracle's intellectual property rights are respected by Rimini Street employees working with Oracle

10  Software and Support Materials.

11      **D.**     **Oracle has a Long History of Trying to Stifle Rimini Street Competition.**

12         20.     The present lawsuit is only Oracle's latest effort to stifle the competitive threat

13  posed by Rimini Street.

14         21.     Rimini Street began operations in September 2005, offering a competitive

15  after-market support offering for Siebel Systems software products.

16         22.     At about the same time Rimini Street began operations, Oracle Corporation

17  announced that it intended to acquire Siebel Systems.  Oracle completed the acquisition of Siebel

18  Systems shortly thereafter.

19         23.     Rimini Street added support offerings for Oracle's PeopleSoft products in

20  April 2006 and Oracle's JD Edwards products in September 2006.

21         24.     Since shortly after Rimini Street's inception, Oracle began a systematic

22  campaign to disrupt and halt Rimini Street's business.  Initially, Oracle's efforts consisted of

23  numerous hostile letters, some of which were published in the media as early as 2005 as examples of

24  how Oracle was trying to forestall after-market competition from a just-launched Rimini Street.

25         25.     Over the years, Rimini Street responded to each Oracle letter, explained the

26  appropriateness of Rimini Street's practices and procedures, and repeatedly offered to meet and

27  discuss any questions or concerns Oracle might have about Rimini Street's processes and

28  procedures.

26. As Rimini Street's success grew, so did Oracle's determination and efforts to disrupt Rimini Street's growth. Since the inception of the company, Rimini Street used automated download tools to help its clients identify and take delivery of the large volume of Oracle Software and Support Materials they paid for and were entitled to possess and use (potentially tens of thousand of files for a single customer). Using such automated tools was necessary because Oracle refused to help its customers identify and take delivery of such large volumes of materials.

27. In June 2007, Oracle attempted to intentionally interfere with Rimini Street's authorized client downloads by changing its website terms and conditions to no longer allow use of such automated download tools. Rimini Street wrote Oracle when it became aware of the change, warning that Rimini Street believed Oracle's actions were not only anti-competitive against Rimini Street, but also constituted a breach of its license agreements with Oracle clients that have protections against reductions in service rights resulting from changes by Oracle in support terms and conditions. As such, the reductions in service rights were not enforceable.

28. Oracle's efforts escalated in December 2008 when Oracle began interfering with Rimini Street's performance of an authorized download for a large client switching from Oracle to Rimini Street support by blocking Rimini Street access to the Oracle support websites. After correspondence from both the client and Rimini Street demanding Oracle cease and desist its access-blocking tactics, Oracle stopped the interference.

29. At this point, as a good-faith attempt at conflict reduction with Oracle, Rimini Street unilaterally agreed to cease using automated download tools in January 2009 and notified Oracle's representatives of this decision in early February 2009.

30. Further, to prevent Oracle's anti-competitive actions from occurring in the future, Rimini Street asked for and was finally granted a call with Oracle representatives in early February 2009. On the call, Rimini Street offered to share Rimini Street internal information with Oracle and/or to work out an agreement that would utilize an independent third party auditor reporting back to both parties to confirm Rimini Street's compliance with its standard processes and procedures. Oracle never responded to any of Rimini Street's proposals.

**E.      Oracle Ignores Truth, Turns to False Allegations**

31.     Ignoring Rimini Street's open invitation to view internal information, engage a third party auditor, or even hold additional dialogue, Oracle filed this baseless lawsuit in an attempt to disrupt Rimini Street's growth and damage Rimini Street's business through false statements and disparagement.

32.     For example, Oracle maliciously casts Rimini Street as a "sham" company that steals Oracle Software and Support Materials and resells them at half the price Oracle charges. Oracle further disparages Rimini Street's business by branding it an "illegal business model" and "illegal scheme." Similarly, Oracle falsely states that there has been "massive theft of Oracle's software and related support materials by Rimini Street." As Oracle is well aware, these characterizations of Rimini Street's business are not only completely false, but they could not be further from the truth.

33.     Rimini Street has informed Oracle that, as a matter of process and procedure, Rimini Street's clients are only delivered the Oracle Software and Support Materials to which they are legally entitled. In fact, Rimini Street performs a unique download of Oracle Software and Support Materials from Oracle's web sites on behalf of each of its clients who: (a) requests and authorizes Rimini Street to download from Oracle on their behalf a unique set of Oracle Software and Support Materials the customer is entitled to use based on their licensed products and Oracle Annual Support product coverage; and (b) represents they are presently an Oracle Annual Support customer whose Oracle Annual Support period has not expired.

34.     Oracle is further aware that each of Rimini Street's clients has a unique data "silo" for storing clients' Oracle Software and Support Materials. Therefore, the clients' Oracle Software and Support Materials are not physically co-mingled together. Despite its awareness of Rimini Street's processes and procedures, Oracle states that Rimini Street has "stockpile[d] a library" of Oracle's intellectual property "to support its present and prospective customers." Such a "library" has never existed at Rimini Street, and Oracle is aware of that fact and could easily have confirmed it by simply accepting Rimini Street's offer of third party verification.

35.     If Oracle really had genuine concerns about the use of its intellectual property and its aims were to simply find the truth and to protect its intellectual property, Oracle has had

1    unlimited opportunities over nearly five years to dialogue and work directly with Rimini Street per

2    the numerous open invitations extended in Rimini Street letters to Oracle.   But, as the facts

3    demonstrate, that is not Oracle's objective.   Instead, Oracle's goal is to forestall after-market product

4    support competition from Rimini Street.   Litigation is Oracle's strategy.

5         36.   While Oracle attempts to disparage Rimini Street and falsely cast this case as

6    being about a "massive theft" that does not exist, the truth is this case is only about Oracle's attempt

7    to protect its 95% dominant market share and monopoly-like 92% gross margins on after-market

8    support of its products.

9                          **RIMINI STREET'S COUNTERCLAIM**

10        For its Counterclaims against Plaintiffs, Rimini Street states as follows:

11   **II.    JURISDICTION**

12        37.   This Court has subject matter jurisdiction over Rimini Street's counterclaims

13   under 28 U.S.C. §§ 1338, 1367 and 2201, and Rule 13 of the Federal Rules of Civil Procedure.

14        38.   In addition, this Court has original subject matter jurisdiction over the state

15   law claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the

16   Plaintiffs and Rimini Street, and the amount in controversy exceeds $75,000.

17   **III.   THE PARTIES**

18        39.   Rimini Street is a Nevada corporation, with its principal place of business in

19   Las Vegas, Nevada.  Rimini Street develops support products and provides support and maintenance

20   for enterprise software, including software licensed by Oracle.

21        40.   Oracle USA is a Colorado corporation, with its principal place of business in

22   Redwood City, California.

23        41.   Oracle America is a Delaware corporation, with its principal place of business

24   in Redwood City, California.

25        42.   Oracle International Corporation is a California corporation, with its principal

26   place of business in Redwood City, California.

27   **COUNT ONE—DEFAMATION, BUSINESS DISPARAGEMENT AND TRADE LIBEL**

28        43.   Rimini Street repeats and incorporates by reference the averments set forth in

1   Paragraphs 1–42 as though fully set forth herein.

2        44.    Oracle has responded to Rimini Street's success, not through fair marketplace

3  competition, but with incendiary and unfounded allegations that Rimini Street and its employees are

4  thieves carrying out a "corrupt" and "illegal business model."

5        45.    On information and belief, defamatory statements have been published and

6  republished by Oracle and its agents to members of the media and analyst community, Rimini

7  Street's customers and potential customers, as well as to the public at large.  For example, Oracle

8  spokesperson Deborah Hellinger publically accused Rimini Street and Mr. Ravin on March 29, 2010

9  of engaging in "massive theft" of Oracle's intellectual property.  These statements were widely

10  published in the media.  *See*, John Letzing, *Upstart fires back at Oracle in legal battle*,

11  MarketWatch, Mar. 29, 2010, http://www.marketwatch.com/story/upstart-fires-back-at-oracle-in-

12  legal-battle-2010-03-29 ("A spokeswoman for Oracle, Deborah Hellinger, said in a statement

13  Monday that Oracle is 'committed to customer choice and vigorous competition, but draws the line

14  with any company, big or small, that steals its intellectual property.'  In reference to Rimini Street

15  Chief Executive Seth Ravin, Hellinger added: 'The massive theft that Rimini and Mr. Ravin engaged

16  in is not healthy competition.'");  Chris Kanaracus, Rimini Street files countersuit against Oracle,

17  Bloomberg Businessweek, Mar. 29, 2010, http://www.businessweek.com/idg/2010-03-29/rimini-

18  street-files-countersuit-against-oracle.html).

19        46.    Further, Juan C. Jones, Oracle's Senior Vice President North America Support

20  Services, approached a potential Rimini Street customer, National Grid, the Spring of 2010 and

21  made derogatory statements regarding Rimini Street, stating in substance that Rimini Street's

22  business model was presently unsustainable and that Rimini Street would not still be in business in

23  two years.  While probably false, Mr. Jones statement regarding the sustainability of Rimini Street's

24  business was presented to National Grid as assertions of actual fact.

25        47.    On information and belief, Oracle executives met with various executives of

26  the CD Group, including Wayne Thrush, an Executive Director at CD Group, in the Winter of 2010.

27  During this meeting, the Oracle executives made defamatory and false statements regarding Rimini

28  Street, including that Oracle had information that, when disclosed, would put Rimini Street out of

3966370v1

1   business.

2          48.    On information and belief, in approximately March of 2009, an Oracle

3   representative contacted a senior analyst, Pat Phelan, for an influential analyst firm, Gartner

4   Research, and made statements insinuating that Rimini Street's business practices were illegal,

5   including its practices employed when providing maintenance and support for Oracle-branded

6   software. Similar allegations of illegality were made to other analysts, analyst firms and members of

7   the media, reflecting an attempt by Oracle to severely tarnish Rimini Street's standing in the

8   industry.  On information and belief, Rimini Street expects discovery will illuminate a pattern of

9   similar defamatory communications by Oracle representatives.

10         49.    Oracle's false and disparaging statements were intended to harm Rimini

11  Street's standing in the business community and, ultimately, to hinder Rimini Street's ability to

12  conduct and grow its business.

13         50.    Oracle published its disparaging statements about Rimini Street's business

14  maliciously, knowing such statements are false or with reckless disregard to their falsity.

15         51.    Dating back to the launch of Rimini Street in 2005, Oracle and Rimini Street

16  have had a long history of communications.  Given these interactions, Oracle is well aware that

17  Rimini Street's business practices are not illegal as Oracle has alleged and published.

18         52.    And, Oracle has had no basis to believe in this stated illegality of Rimini

19  Street's business practices.  Oracle attempts to equate Rimini Street's business with that of

20  TomorrowNow, an unrelated and different third-party support vendor owned by SAP AG, another

21  vendor of enterprise software.  Oracle filed suit against TomorrowNow and SAP AG in 2007.

22  Although Oracle's present Complaint against Rimini Street is highly similar to Oracle's Complaint

23  against SAP AG, et al., in Case No. 07-CV-1658 in the Northern District of California, Oracle is

24  well aware of the significant differences between Rimini Street's practices and procedures and those

25  of SAP's TomorrowNow.  For instance, Rimini Street does not have or make available a "single

26  repository" of downloaded Oracle Software and Support Materials as Oracle states. Nor does Rimini

27  Street mixed or consolidated Oracle Software and Support Materials such that unique downloads for

28  one client are co-mingled with unique downloads from other clients, and support materials are not

1  indiscriminately downloaded and stored for general use.

2       53.    Oracle is further aware that Rimini Street performs a unique download of

3  Oracle Software and Support Materials on behalf of each client that requests such service. Each

4  client (authorizing Rimini Street to act on client's behalf) warrants to Rimini Street that it has the

5  rights to access Oracle's support web sites and take possession of the requested Oracle Software and

6  Support Materials. Rimini Street then maintains downloaded material only on behalf of the client for

7  whom the download was performed.  To safeguard against improper use of downloaded materials, as

8  a matter of process and procedure, each client is assigned a separate data "silo" where Oracle

9  Software and Support Materials for that client are maintained, and Rimini Street does not co-mingle

10  the independent downloads of clients.

11       54.    Rimini Street delivers to each client only the software and support material

12  that each client is entitled to receive, which often are quite voluminous and can consist of thousands

13  or even tens of thousands of materials.

14       55.    Oracle is further aware that Rimini Street has consistently released its own

15  independently-created regulatory and tax updates *before* the release date of Oracle's equivalent

16  update, forestalling any arguments that Rimini Street copied Oracle's updates.

17       56.    Finally, Oracle cannot truthfully claim that Rimini Street is not authorized to

18  possess copies of Oracle's software.  First, every Rimini Street client contract authorizes Rimini

19  Street to possess or access copies of the client's licensed software.  Second, as Oracle is well aware,

20  it is common industry practice by other third party consulting venders such as IBM, AT&T,

21  Accenture, Navisite, WTS, CedarCrestone, and virtually every other hosting service provider to

22  possess and work with copies of their client's licensed software products.  Third, until recently

23  Oracle *itself* directly mailed or made available to Rimini Street through authorized downloads, as an

24  authorized agent of Oracle's licensees, copies of the clients' licensed Oracle software.  Oracle and

25  Rimini Street personnel worked closely together over the years in the software order-to-ship process

26  for hundreds of clients.  Here again, Oracle had full knowledge that Rimini Street's actions were

27  authorized by Oracle's customers.  Far from acting as "fraudulent thieves," Rimini Street has acted

28  legally, openly (and often with Oracle's full cooperation), and in accordance with the agreements

1  held by Rimini Street's clients.

2      57.    Oracle is aware of the falsity of its statements because it was directly

3  informed by Rimini Street of the true facts.  Further, Rimini Street offered to allow Oracle to employ

4  a neutral third party to audit Rimini Street's compliance with its processes and procedures.  Instead

5  of undertaking this reasonable confirmatory exercise, Oracle purposely and recklessly made the

6  above-identified false and disparaging statements regarding Rimini Street.

7      58.    Rimini Street has been damaged by Oracle's conduct as complained of herein,

8  in an amount to be determined at trial.  On information and belief, Oracle's false and disparaging

9  statements regarding Rimini Street's business have directly led to economic loss on the part of

10  Rimini Street through specific loss of sales, as well as a general decline in the growth of Rimini

11  Street's business.

12  **COUNT TWO—DECLARATION OF UNENFORCEABILITY FOR COPYRIGHT MISUSE**

13      59.    Rimini Street repeats and incorporates by reference the averments set forth in

14  Paragraphs 1–58 as though fully set forth herein.

15      60.    Oracle claims to own a valid and enforceable copyright in, or have exclusive

16  license to, all of their software applications and software and support materials.

17      61.    Oracle disseminates Oracle Software and Support Materials via electronic

18  transmissions over a computer network.  Oracle's Software and Support Materials websites contain

19  "browser-wrap" or "click-wrap" agreements.

20      62.    Oracle has admitted that its software licensees have every right to use third-

21  party maintenance and support vendors (such as Rimini Street).  However, Oracle has attempted to

22  use the design of its support website and terms of its "browser-wrap" or "click-wrap" agreements on

23  various Oracle web sites to forestall such legal competition from Rimini Street and to interfere with

24  a customer's ability to select a support vendor other than Oracle.  This attempt to influence

25  competition in an area beyond the scope of Oracle's copyrights constitutes copyrights misuse.

26      63.    Instead of simply providing its customers each of the support files they are

27  entitled to possess under their respective licenses and unexpired Oracle annual support, Oracle

28  requires customers to self-identify and individually download each such file from Oracle's support

1  material web portal.  This portal contains millions of files to sort through and all are accessible to

2  every client, regardless of which products a customer has licensed or whether or not a product is

3  covered by an unexpired Oracle support agreement.  Oracle provides no assistance to its support

4  customers in the identification of all Oracle Software and Support Materials such customer is

5  entitled to possess and use.

6         64.    Though Oracle's support material web portal does not provide a method for

7  customers to easily identify and download all the files they are entitled to possess and use, Oracle

8  has changed its web site terms to prohibit the use of automated tools that can help an Oracle

9  customer identify and download a significant volume of Oracle Software and Support Materials to

10  which an Oracle licensee and support customer is entitled. Further, Oracle's "click-wrap" agreement

11  has once again been changed, and now includes a provision that prohibits access to and download of

12  support materials unless such access or download "is in furtherance of the relationship between

13  customer and Oracle."   This provision is another clear example of Oracle's systematic use of

14  anticompetitive tactics to try and maintain a stranglehold over its customers by effectively requiring

15  them to either continue purchasing after-market support only from Oracle or forego critical support

16  materials to which they are entitled and for which they have already paid.

17         65.    Through its various license agreements and changing web site access and use

18  terms and conditions, Oracle is attempting to use its copyright in a manner adverse to the public

19  policy embodied in copyright law.

20         66.    The requirements Oracle places on the ability of customers (or their agents) to

21  obtain licensed software and support materials gives Oracle a substantial and unfair advantage over

22  its support and maintenance competitors, and these requirements constitute a misuse of copyright by

23  Oracle.

24         67.    Rimini Street has been directly harmed by Oracle's anticompetitive misuse of

25  its copyrights and license agreements.

26         68.    Rimini Street is therefore entitled to a declaratory judgment finding Oracle's

27  copyrights to be unenforceable until that time that Oracle discontinues use of the terms that led to

28  misuse of its copyrights.

**COUNT THREE—UNFAIR COMPETITION—CAL. BUS. & PROF. CODE § 17200**

69.     Rimini Street repeats and incorporates by reference the averments set forth in Paragraphs 1–68 as though fully set forth herein.

70.     Oracle has engaged in fraudulent business acts or practices by false and misleading statements, deceptive business practices, ever-changing contract terms and policies, processes, and procedures.

71.     As evidence of Oracle's fraudulent business practices, on information and belief, Oracle caused false and disparaging allegations to be published and republished by Oracle and its agents to members of the media and analyst community, Rimini Street's customers and potential customers, as well as to the public at large. These allegations were made with Plaintiffs' intent to, and are likely to, deceive members of the public.

72.     Oracle has also employed unlawful and/or fraudulent business practices in its dealings with industry analysts, reporters and Rimini Street's customers and potential customers. For example, Oracle has provided false and misleading information about Rimini Street to customers with which Rimini Street had established a potential business relationship.

73.     The acts and conduct of Oracle constitute fraudulent conduct as defined by California Bus. & Prof. Code §§ 17200, *et seq.*

74.     As a result of Oracle's actions, Rimini Street has suffered irreparable injury, and Rimini Street's standing in the business community has been harmed. Unless Oracle is enjoined, Rimini Street will continue to suffer irreparable harm and Oracle's conduct will continue to harm Rimini Street's standing in the business community, and ultimately hinder Rimini Street's ability to conduct and grow its business.

75.     Oracle should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of California Business & Professions Code § 17200 et seq., including, but not limited to, returning any revenue earned as a proximate result of the unlawful publication of the deceptive statements made to the public.

1                                    **RIMINI STREET'S ANSWER**

2           Rimini Street hereby answers Oracle USA Inc. and Oracle International

3 Corporation's Complaint for Damages and Injunctive Relief ("Complaint") as follows:

4 **I.**      **JURISDICTION**

5           1.     Rimini Street admits that this action has been characterized by Oracle as an

6 action arising under Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Computer Fraud and

7 Abuse Act 18 U.S.C. §§ 1030 *et seq.* Rimini Street admits that this Court has subject matter

8 jurisdiction over certain actions pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. §

9 1338. Rimini Street denies, however, that Plaintiffs' Complaint sets forth any meritorious cause of

10 action from which Plaintiffs could recover its requested injunctive relief or damages.

11           2.     Rimini Street admits that this Court has supplemental subject matter

12 jurisdiction over pendent state law claims under 28 U.S.C. § 1367. Rimini Street denies, however,

13 that Plaintiffs' Complaint sets forth any meritorious cause of action from which Plaintiffs could

14 recover its requested injunctive relief or damages.

15           3.     Rimini Street admits that this Court has original subject matter jurisdiction

16 over state law claims under 28 U.S.C. § 1332 where the matter in controversy exceeds the sum value

17 of $75,000, and there is complete diversity between the Plaintiffs and Defendants. Rimini Street

18 denies, however, that Plaintiffs' Complaint sets forth any meritorious cause of action from which

19 Plaintiffs could recover its requested injunctive relief or damages.

20 **II.**     **INTRODUCTION**

21           4.     Rimini Street admits that Paragraph 4 contains partial quotations Plaintiffs

22 claim are attributed to Seth Ravin, however the date, source, and context of the quotations are not

23 identified, therefore Rimini Street denies the allegations of Paragraph 4.

24           5.     Rimini Street admits that it provides support to companies that license certain

25 of Plaintiffs' enterprise software applications, including Plaintiffs' PeopleSoft, J.D. Edwards

26 ("JDE") and Siebel-branded software. Rimini Street denies the remaining allegations against it,

27 including Plaintiffs' statements regarding Rimini Street's business, in Paragraph 5.

28           6.     Rimini Street denies the allegations against it in Paragraph 6.

1         7.     Rimini Street admits that Paragraph 7 contains partial quotations Plaintiffs

2   claim are attributed to Seth Ravin, however the date, source, and context of the quotations are not

3   identified, and therefore Rimini Street denies the allegations of Paragraph 7.

4         8.     Rimini Street denies the allegations against it in Paragraph 8.

5         9.     Rimini Street denies the allegations against it in Paragraph 9.

6         10.    Rimini Street denies the allegations against it in the first two sentences of

7   Paragraph 10. Rimini Street is without sufficient information or knowledge to form an opinion as to

8   the veracity of the remaining allegations set forth in Paragraph 10 and therefore denies the same.

9         11.    Rimini Street admits that Mr. Ravin and Mr. Nelson sold TomorrowNow to

10  SAP and that Mr. Ravin founded Rimini Street. Rimini Street is without sufficient information or

11  knowledge to form an opinion as to the veracity of the remaining allegations set forth in Paragraph

12  11 and therefore denies the same.

13        12.    Rimini Street admits that Paragraph 12 contains partial quotations Plaintiffs

14  claim are attributed to Seth Ravin, however the date, source, and context of the quotations are not

15  identified, therefore Rimini Street denies the allegations of Paragraph 12.

16        13.    Rimini Street admits that Paragraph 13 contains partial quotations Plaintiffs

17  claim are attributed to Rimini Street's marketing literature, however the date, source, and context of

18  the quotations are not identified, therefore Rimini Street denies the allegations of Paragraph 13.

19  Rimini Street is without sufficient information or knowledge regarding updates from PeopleSoft and

20  TomorrowNow, Inc. to form an opinion as to the veracity of the remaining allegations set forth in

21  Paragraph 13 and therefore denies the same.

22        14.    Rimini Street denies the allegations against it in Paragraph 14.

23  **III.   THE PARTIES**

24        15.    Rimini Street is without sufficient information or knowledge to form an

25  opinion as to the veracity of the allegations set forth in Paragraph 15 and therefore denies the same.

26        16.    Rimini Street is without sufficient information or knowledge to form an

27  opinion as to the veracity of the allegations set forth in Paragraph 16 and therefore denies the same.

28        17.    Rimini Street admits that Seth Ravin is the founder, president and CEO of

1    Rimini Street, as well as a former President of Tomorrow Now.   Rimini Street admits that Seth

2    Ravin is a resident of Nevada.

3            18.     Rimini Street admits that Rimini Street, Inc. is a Nevada Corporation with its

4    principal place of business in Las Vegas, Nevada.   Rimini Street admits that Seth Ravin founded

5    Rimini Street.  Rimini Street denies the remaining allegations against it in Paragraph 18.

6            19.     Rimini Street is without sufficient information or knowledge to form an

7    opinion as to the veracity of the allegations set forth in Paragraph 19 and therefore denies the same.

8            20.     Rimini Street admits that Defendants are doing business in Nevada.   Rimini

9    Street further admits that it is headquartered in this district and that Mr. Ravin resides in this district.

10   Rimini Street denies the remaining allegations against it in Paragraph 20.

11           21.     Rimini Street denies the allegations against it in Paragraph 21.

12           22.     Rimini Street denies the allegations against it in Paragraph 22.

13   **IV.    VENUE**

14           23.     Rimini Street does not contest venue in this matter.

15   **V.     DIVISION ASSIGNMENT**

16           24.     Rimini Street does not contest assignment to the Las Vegas division.

17   **VI.    FACTUAL ALLEGATIONS**

18           25.     Rimini Street is without sufficient information or knowledge to form an

19   opinion as to the veracity of the allegations set forth in Paragraph 25 and therefore denies the same.

20           26.     Rimini Street is without sufficient information or knowledge to form an

21   opinion as to the veracity of the allegations set forth in Paragraph 26 and therefore denies the same.

22           27.     Rimini Street is without sufficient information or knowledge to form an

23   opinion as to the veracity of the allegations set forth in Paragraph 27 and therefore denies the same.

24           28.     Rimini Street is without sufficient information or knowledge to form an

25   opinion as to the veracity of the allegations set forth in Paragraph 28 and therefore denies the same.

26           29.     Rimini Street is without sufficient information or knowledge to form an

27   opinion as to the veracity of the allegations set forth in Paragraph 29 and therefore denies the same.

28           30.     Rimini Street is without sufficient information or knowledge to form an

1   opinion as to the veracity of the allegations set forth in Paragraph 30 and therefore denies the same.

2           31.    Rimini Street is without sufficient information or knowledge to form an

3   opinion as to the veracity of the allegations set forth in Paragraph 31 and therefore denies the same.

4           32.    Rimini Street is without sufficient information or knowledge to form an

5   opinion as to the veracity of the allegations set forth in Paragraph 32 and therefore denies the same.

6           33.    Rimini Street admits revenue may be derived from the three activities

7   identified by Paragraph 33.

8           34.    Rimini Street admits the allegations of Paragraph 34.

9           35.    Rimini Street admits that it competes with Oracle by "providing low-cost

10  maintenance and support services to PeopleSoft, JDE and Siebel customers running assorted

11  versions of these software programs," that it "can cut customer maintenance and support bills in half

12  and give customers a reprieve from software upgrade cycles," that "customers can remain on older

13  versions of PeopleSoft, JDE or Siebel software rather than moving to later versions," and that

14  "Rimini Street can provide fixes and updates and support older software for 10 years past its general

15  availability." Rimini Street denies the remaining allegations against it in Paragraph 35.

16          36.    Rimini Street admits to offering "customization fixes," "tax and regulatory

17  updates, applications and repository fixes," and "24/7 Support with Guaranteed 30 Minutes or less

18  Response." Rimini Street admits to offering comprehensive support at "More Than 50% Annual

19  Savings." Rimini Street denies the remaining allegations against it in Paragraph 36.

20          37.    Rimini Street denies the allegations against it in Paragraph 37.

21          38.    Rimini Street denies the allegations against it in Paragraph 38.

22          39.    Rimini Street is without sufficient information or knowledge to form an

23  opinion as to the veracity of the allegations set forth in Paragraph 39 and therefore denies the same.

24          40.    Rimini Street is without sufficient information or knowledge to form an

25  opinion as to the veracity of the remaining allegations set forth in Paragraph 40 and therefore denies

26  the same.

27          41.    Rimini Street is without sufficient information or knowledge to form an

28  opinion as to the veracity of the allegations set forth in Paragraph 41 and therefore denies the same.

42.     Rimini Street denies the allegations against it in the first sentence of Paragraph 42. Rimini Street is without sufficient information or knowledge to form an opinion as to the veracity of the remaining allegations set forth in Paragraph 42 and therefore denies the same.

43.     Rimini Street denies the allegations against it in the first, third and fourth sentences of Paragraph 43. Rimini Street is without sufficient information or knowledge to form an opinion as to the veracity of the remaining allegations set forth in Paragraph 43 and therefore denies the same.

44.     Rimini Street denies the allegations against it in Paragraph 44.

45.     Rimini Street denies the allegations against it in Paragraph 45.

46.     Rimini Street admits it downloaded, on behalf and as an agent of its customers, materials from Oracle's Technical Support websites.  Rimini Street denies the remaining allegations against it in Paragraph 46.

47.     Rimini Street denies that it has engaged in large-scale downloading that has damaged Plaintiffs' servers. Rimini Street also denies that it "admitted that it has engaged in large-scale downloading that has damaged Oracle's servers."   Rimini Street is without sufficient information or knowledge to form an opinion as to the veracity of the remaining allegations set forth in Paragraph 47 and therefore denies the same.

48.     Rimini Street admits that Paragraph 48 contains partial quotations Plaintiffs claim are attributed to Rimini Street's lawyers, however the date, source, and context of the quotations are not identified, therefore Rimini Street denies the allegations of Paragraph 48. Rimini Street denies the remaining allegations against it in Paragraph 48.

49.     Rimini Street admits that Paragraph 49 contains partial quotations Plaintiffs claim are attributed to Mr. Ravin, however the date, source, and context of the quotations are not identified, therefore Rimini Street denies the allegations of Paragraph 49.  Rimini Street denies the remaining allegations against it in Paragraph 49.

50.     Rimini Street is without sufficient information or knowledge to form an opinion as to the veracity of the allegations set forth in Paragraph 50 and therefore denies the same.

51.     Rimini Street admits the allegations of Paragraph 51.

3966370v1

1         52.    Rimini Street is without sufficient information or knowledge to form an

2 opinion as to the veracity of the allegations set forth in Paragraph 52 and therefore denies the same.

3         53.    Rimini Street denies the allegations against it in Paragraph 53.

4         54.    Rimini Street admits Mr. Ravin signed contracts on behalf of Rimini Street.

5 Rimini Street denies the remaining allegations against it in Paragraph 54.

6         55.    Rimini Street denies the allegations against it in the first sentence of

7 Paragraph 55. Rimini Street is without sufficient information or knowledge to form an opinion as to

8 the veracity of the remaining allegations set forth in Paragraph 55 and therefore denies the same.

9         56.    Rimini Street admits the allegations of Paragraph 56.

10         57.    Rimini Street denies the allegations against it in Paragraph 57.

11         58.    Rimini Street admits that, of its ten-member management team, seven list

12 prior employment experience with PeopleSoft, Siebel, or Oracle. Rimini Street denies the remaining

13 allegations against it in Paragraph 58.

14         59.    Rimini Street denies the allegations against it in Paragraph 59.

15         60.    Rimini Street denies the allegations against it in Paragraph 60.

16         61.    Rimini Street admits that Plaintiffs claim numerous works that are protected

17 under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq.* Rimini Street denies the remaining

18 allegations against it in Paragraph 61.

19         62.    Rimini Street denies the allegations against it in Paragraph 62

20         63.    Rimini Street denies the allegations against it in Paragraph 63.

21         64.    Rimini Street denies the allegations against it in Paragraph 64.

22         65.    Rimini Street denies the allegations against it in Paragraph 65.

23         66.    Rimini Street denies the allegations against it in Paragraph 66.

24         67.    Rimini Street denies the allegations against it in Paragraph 67.

25         68.    Rimini Street denies the allegations against it in Paragraph 68.

26         69.    Rimini Street denies the allegations against it in Paragraph 69.

27         **Oracle's First Claim for Relief**

28         **Copyright Infringement**

1    70.    Rimini Street repeats, realleges, and incorporates by reference its responses to

2    the preceding paragraphs as though fully set forth herein.

3    71.    Rimini Street is without sufficient information or knowledge to form an

4    opinion as to the veracity of the allegations set forth in Paragraph 71 and therefore denies the same.

5    72.    Rimini Street is without sufficient information or knowledge to form an

6    opinion as to the veracity of the allegations set forth in Paragraph 72 and therefore denies the same.

7    73.    Rimini Street is without sufficient information or knowledge to form an

8    opinion as to the veracity of the allegations set forth in Paragraph 73 and therefore denies the same.

9    74.    Rimini Street denies having infringed copyrights in Plaintiffs' software and

10    support material. Rimini Street is without sufficient information or knowledge to form an opinion as

11    to the veracity of the remaining allegations set forth in Paragraph 74 and therefore denies the same.

12    75.    Rimini Street denies the allegations against it in Paragraph 75.

13    76.    Rimini Street denies the allegations against it in Paragraph 76.

14    77.    Rimini Street denies the allegations against it in Paragraph 77.

15    78.    Rimini Street denies the allegations against it in Paragraph 78.

16    79.    Rimini Street denies the allegations against it in Paragraph 79.

17    80.    Rimini Street denies the allegations against it in Paragraph 80.

18    81.    Rimini Street denies the allegations against it in Paragraph 81.

19    82.    Rimini Street denies the allegations against it in Paragraph 82.

20    **Oracle's Second Through Fourth Claims for Relief**

21    As set forth in Rimini Street's Motion to Dismiss, Oracle's Second through Fourth

22    Claims for Relief fail to state a claim against Rimini Street and should be dismissed.  Rimini Street

23    reserves the right to respond further to Oracle's Second through Fourth Claims for Relief once the

24    issues raised in Rimini Street's Motion to Dismiss are resolved, to the extent any claims remain.

25    **Oracle's Fifth Claim for Relief**

26    **Breach of Contract**

27    110.    Rimini Street repeats, realleges, and incorporates by reference its responses to

28    the preceding paragraphs as though fully set forth herein.

1    111.   Rimini Street is without sufficient information or knowledge to form an

2  opinion as to the veracity of the allegations set forth in Paragraph 111 and therefore denies the same.

3    112.   Rimini Street is without sufficient information or knowledge to form an

4  opinion as to the veracity of the allegations set forth in Paragraph 112 and therefore denies the same.

5    113.   Rimini Street denies the allegations against it in Paragraph 113.

6    114.   Rimini Street denies the allegations against it in Paragraph 114.

7  **<u>Oracle's Sixth Through Thirteenth Claims for Relief</u>**

8  As set forth in Rimini Street's Motion to Dismiss, Oracle's Sixth through Thirteenth

9  Claims for Relief have not been adequately plead, and these claims should be dismissed.  Given

10  Oracle's failure to properly plead its Sixth through Thirteenth Claims for Relief, Rimini Street

11  cannot answer Oracle's allegations at this time.  Rimini Street reserves the right to respond further to

12  Oracle's Sixth through Thirteenth Claims for Relief once the issues raised in Rimini Street's Motion

13  to Dismiss are resolved, to the extent any claims remain.

14  **<u>Prayer for Relief</u>**

15  Rimini Street denies that Plaintiffs are entitled to any relief in connection with the

16  allegations of Plaintiffs' Complaint, including, without limitations, the allegations of Paragraphs A.

17  through N of Plaintiffs' Prayer for Relief.

18  To the extent that any allegation contained in Plaintiffs' Complaint has not been

19  specifically admitted herein, it is hereby denied. Rimini Street further denies any allegations that

20  may be implied by or inferred from the headings of Plaintiffs' Complaint.

21  **<u>Affirmative Defenses</u>**

22  **First Affirmative Defense**

23    1.   One or more of the copyrights that are allegedly infringed by Rimini Street are

24  invalid for failure to comply with the requirements for copyrightable subject matter set forth in 17

25  U.S.C. § 102, including that no copyright protection is afforded to "any idea, procedure, process,

26  system, method of operation, concept, principle, or discovery, regardless of the form in which it is

27  described, explained, illustrated, or embodied."

28  **Second Affirmative Defense**

1        2.     Rimini Street's use of Plaintiffs' copyrighted material, if any, is authorized

2  under terms of license agreements held by Rimini Street and/or Rimini Street's licensed customers

3  for whom Rimini Street acts as an agent.

4                                **Third Affirmative Defense**

5        3.     Plaintiffs consented to Rimini Street's use, if any, of Plaintiffs' copyrighted

6  material.  Oracle consented to Rimini Street's use of its copyrighted material by issuing Rimini

7  Street, as a designated "Oracle Technical Support Contact," log-on credentials that enable access to

8  support materials through Oracle's customer support web pages, and by providing copyrighted

9  material directly to Rimini Street on numerous occasions, as an authorized agent of Oracle's

10  licensees

11                                **Fourth Affirmative Defense**

12        4.     Plaintiffs' claims for copyright infringement are barred by the doctrine of

13  copyright misuse. As explained by Rimini Street's Second Counterclaims, Oracle has attempted to

14  use the design of its support website and terms of its license agreements and its "browser-wrap" or

15  "click-wrap" agreements to forestall competition and to significantly interfere with and/or to

16  preclude a customer's ability to select a support vendor other than Oracle.  This attempt to influence

17  competition in an area beyond the scope of Oracle's copyrights constitutes copyrights misuse.

18                                **Fifth Affirmative Defense**

19        5.     One or more of Plaintiffs' claims for statutory damages and attorneys' fees

20  under 17 U.S.C. § 504 are barred because some, if not all, of Plaintiffs' copyright registrations were

21  not made within three months after the first publication of the allegedly infringing works, as required

22  by 17 U.S.C. § 412.

23                               **Sixth Affirmative Defense**

24        6.     Plaintiffs' claims for copyright infringement are barred by implied license.

25  Oracle's conduct, as well as the custom and practice of the community, gives rise to an implied

26  license.  For example, Oracle granted Rimini Street access to the support materials, and Oracle itself

27  directly mailed Rimini Street copies of the software, as an authorized agent of Oracle's licensees.

28

1  These exemplary actions in conjunction with the well-known and accepted practices of the software

2  industry provide Rimini Street an implied license to access and use Oracle's copyrighted content.

**Seventh Affirmative Defense**

4         7.     Plaintiffs' claims for copyright infringement are barred by the doctrines of

5  merger and Scènes-á-faire.  Given the limited number of ways that updates, fixes and other alleged

6  derivative works can by expressed, Plaintiffs' claims for copyright infringement are barred for one

7  or more works and/or derivative works allegedly infringed by Rimini Street.

**Eighth Affirmative Defense**

9         8.     Plaintiffs' claims are barred in whole or in part by the applicable statutes of

10  limitations.  One or more of the alleged acts of infringement occurred prior to the Copyright Act's

11  three year statute of limitations.

**Ninth Affirmative Defense**

13         9.     Plaintiffs' claims for copyright infringement are barred by the doctrines of

14  laches, waiver and estoppel.  Since the inception of Rimini Street in September 2005, Plaintiffs and

15  their predecessors have made allegations and threats against Rimini Street with regard to Rimini

16  Street's provision of after-market support services for Oracle products in numerous direct

17  correspondence to Rimini Street, in media interviews, in industry analyst discussions, and in

18  discussions with prospective Rimini Street clients.  Oracle even threatened litigation in some

19  correspondence with Rimini Street and in its discussions with prospective Rimini Street clients.  As

20  set forth, *supra,* in the Factual Background and with respect to Rimini Street's Counterclaim for

21  business disparagement and trade libel, Plaintiffs have been made well-aware of the business

22  practices and procedures employed by Rimini Street.  Plaintiffs are also well-aware of the

23  longstanding and accepted industry practices and norms of other third party consulting venders.

**Tenth Affirmative Defense**

25         10.    Any reproduction, display, derivation, publication or distribution of any valid

26  copyright of the Plaintiffs by Rimini Street is a fair use protected by the provisions of 17 U.S.C. §

27  107.

**Eleventh Affirmative Defense**

1    11.    Any copy, adaptation, lease, sale, or transfer of any work copyrighted by the

2  Plaintiffs is protected by the provisions of 17 U.S.C. § 117.

3    Rimini Street reserves the right to assert additional defenses as they become known

4  through further investigation and discovery.  In addition, Rimini Street reserves the right to assert

5  additional affirmative defenses to the claims inadequately alleged in Oracle's second through fourth

6  and sixth through thirteenth claims for relief to the extent necessary after resolution of Rimini

7  Street's motion to dismiss.

8    WHEREFORE, Rimini Street request that Plaintiffs' Complaint be dismissed in its

9  entirety, with prejudice; that judgment be entered against Plaintiffs in connection with its Complaint;

10  that judgment be entered in favor of Rimini Street; that the Court declare this case to be exceptional;

11  that Rimini Street be awarded its costs and reasonable attorneys' fees incurred in connection with the

12  defense of this action; and that Rimini Street be awarded such other and further relief as the Court

13  deems appropriate.

14                    **Demand for Jury Trial**

15    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Rimini Street hereby

16  demands a jury trial on all issues so triable.

17

18  DATED:        May 24,  2010                    GREENBERG TRAURIG

19                                                By:

20                                                Mark G. Tratos, Esq. (Nevada Bar No. 1086)
                                                  Brandon Roos, Esq. (Nevada Bar No. 7888)
21                                                Leslie Godfrey, Esq. (Nevada Bar No. 10229)
                                                  3773 Howard Hughes Parkway
22                                                Suite 400 North
                                                  Las Vegas, NV 89169
23

24                                                *Attorney for Defendants*
                                                  *Rimni Street, Inc. and Seth Ravin*

25

26

27

28

3066370v.1

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on the 24th day of May, 2010, I electronically filed the foregoing

3  document with the clerk of the court for the U.S. District Court, District of Nevada, using the

4  electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to

5  the attorneys of record who have consented in writing to accept this Notice as service of this

6  document by electronic means.

7

8        By: _____
              An Employee of Greenberg Traurig

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28