BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN
FRED NORTON
KIERAN P. RINGGENBERG
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com
(admitted *pro hac vice*)

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corp.

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD
THOMAS S. HIXSON
KRISTEN A. PALUMBO
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com
(admitted *pro hac vice*)

DORIAN DALEY (*pro hac vice* application to be
submitted)
DEBORAH K. MILLER (admitted *pro hac vice*)
JAMES C. MAROULIS (admitted *pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORACLE AMERICA, INC., a Colorado
corporation; ORACLE USA, INC., a Delaware
Corporation, and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

　　　　　　　Plaintiffs,

　　v.

RIMINI STREET, INC., a Nevada corporation;
and SETH RAVIN, an individual,

　　　　　　　Defendants.

Case No. 2:10-cv-0106-LRH-PAL

**PLAINTIFFS ORACLE AMERICA
INC., ORACLE USA, INC. AND
ORACLE INTERNATIONAL CORP.'S
OPPOSITION TO DEFENDANT SETH
RAVIN'S MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT**

1

## TABLE OF CONTENTS

2  I. INTRODUCTION ................................................................................................ 1

3  II. SUMMARY OF ALLEGATIONS ...................................................................... 2

4  III. ARGUMENT ...................................................................................................... 4

5  A. Mr. Ravin Can Be Held Personally Liable For Rimini's Conduct Because of His Control Over, Authorization of, and Participation in Rimini's Conduct ................. 6

6

7  B. Mr. Ravin Ignores Oracle's Numerous Allegations Detailing His Control Over and Involvement in Rimini's Illegal Activities ........................................................ 7

8  C. Mr. Ravin's Extensive Control Over All Aspects of Rimini's Operations Makes Him Liable on Counts 6-9 and 11-13 ...................................................................... 9

9

10  D. Mr. Ravin Is Liable for His Direct and Indirect Participation in the Conduct Alleged in Count 12 (Unfair Practices) ................................................................. 11

11  E. Mr. Ravin Is Liable for His Direct, Individual Participation in the Wrongdoing Alleged in Counts 6, 7, 8, 9, and 12 ....................................................................... 12

12

13  1. Count 6 (Inducing Breach of Contract) ........................................................ 12

14  2. Counts 7 and 8 (Intentional and Negligent Interference with Prospective Economic Advantage) ................................................................................... 13

15  3. Count 9 (Unfair Competition – Cal. Bus. & Prof. Code § 17200) ................. 14

16  4. Count 12 (Unfair Practices – Cal. Bus. & Prof. Code § 17000, *et seq.*) ......... 15

17  F. Mr. Ravin Is Liable for Conspiring with Rimini to Commit the Wrongdoing Alleged in the Amended Complaint ........................................................................ 16

18  CONCLUSION ................................................................................................................. 16

19

20

21

22

23

24

25

26

27

28

i

1

### TABLE OF AUTHORITES

2 **Cases**

3 *American Automobile Ass'n, Inc. v. Darba Enterprises Inc.*,
4   No. C 09-00510 (SI), 2009 WL 1066506 (N.D. Cal. Apr. 21, 2009) ...................................... 10

*Ashcroft v. Iqbal*,
5   __ U.S. __, 129 S.Ct. 1937 (2009) ........................................................................................... 4

6 *Bell Atl. Corp. v. Twombly*,
7   550 U.S. 544 (2007) ................................................................................................................. 4

*Black v. Bank of America N.T. & S.A.*,
8   30 Cal. App. 4th 1 (Cal. Ct. App. 1995) ................................................................................ 16

9 *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
10   173 F.3d 725 (9th Cir. 1999) ............................................................................................... 6, 9

*Doctors' Co. v. Superior Court*,
11   49 Cal. 3d 39 (Cal. 1989) ..................................................................................................... 16

12 *Edwards v. Arthur Andersen LLP*,
13   44 Cal. 4th 937 (2008) .......................................................................................................... 13

*Flowers v. Carville*,
14   266 F.Supp.2d 1245 (D. Nev. 2003) ..................................................................................... 16

15 *Golden v. Anderson*,
   256 Cal. App. 2d 714 (Cal. Ct. App. 1967) ......................................................................... 12
16
*Landex, Inc. v. State ex rel. List*,
17   94 Nev. 469 (Nev. 1978) ......................................................................................................... 6

18 *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nevada*,
19   106 Nev. 283 (Nev. 1990) ................................................................................................. i, 13

*Morgan v. AT & T Wireless Servs., Inc.*,
20   177 Cal. App. 4th 1235 (Cal. Ct. App. 2009) ...................................................................... 14

21 *People v. Toomey*,
22   157 Cal. App. 3d 1 (Cal. Ct. App. 1984) ...................................................................... 7, 9, 11

*Perfect 10, Inc. v. Visa International Serv. Ass'n*,
23   494 F.3d 788 (9th Cir. 2007) ................................................................................................... 7

24 *PMC, Inc. v. Kadisha*,
25   78 Cal. App. 4th 1368 (Cal. Ct. App. 2000) ........................................................... 6, 9, 10, 11

*Reeves v. Hanlon*,
26   33 Cal. 4th 1140 (2004) ........................................................................................................ 13

27 *Sutherland v. Gross*,
   105 Nev. 192 (Nev. 1989) ..................................................................................................... 13
28

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
    768 F.2d 1001 (9th Cir. 1985) ............................................................................. 6, 11

*Vacco Industries, Inc. v. Van Den Berg,*
    5 Cal. App. 4th 34 (Cal. Ct. App. 1992) ................................................................ 12

*Venhaus v. Shultz,*
    155 Cal. App. 4th 1072 (Cal. Ct. App. 2007) ........................................................ 13

*Wyatt v. Union Mortgage Co.,*
    24 Cal. 3d 773 (Cal.1979) ...................................................................................... 16

**Statutes**

Cal. Bus. & Prof. Code § 17000 .................................................................. 5, 7, 12, 15

Cal. Bus. & Prof. Code § 17030 ............................................................................... 15

Cal. Bus. & Prof. Code § 17095 .................................................................. 2, 12, 15

Cal. Bus. & Prof. Code § 17200 ........................................................................... 7, 14

California Penal Code Section 502(c)(7) ..................................................................... 3

Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 ..................................... 3

**Rules**

Rule 12(b)(6) ............................................................................................................... 1

Rule 8 .......................................................................................................................... 4

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

1    **PLAINTIFFS' OPPOSITION TO DEFENDANT SETH RAVIN'S MOTION TO DISMISS**

2    **COUNTS 6-9 AND 11-13 OF THE FIRST AMENDED COMPLAINT**

3        Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

4    (together, "Oracle" or "Plaintiffs") submit this memorandum in opposition to Defendant Seth

5    Ravin's motion to dismiss Counts 6-9 and 11-13 of Oracle's First Amended Complaint pursuant

6    to Rule 12(b)(6).

7    **I.      INTRODUCTION**

8        In his motion to dismiss, Mr. Ravin concedes that the First Amended Complaint ("FAC")

9    pleads claims against him personally for copyright infringement and breach of contract.

10   Nonetheless, he moves to dismiss several claims based upon the same wrongful conduct.

11       Mr. Ravin's motion depends on ignoring what the FAC alleges.  Mr. Ravin argues that

12   Oracle fails to allege "facts to support any cognizable legal theory under which Mr. Ravin might

13   be liable for the alleged actions of Rimini Street" (Ravin Mot. at 2), but does not even attempt to

14   respond to the particular allegations showing that Mr. Ravin is liable because of his control and

15   authorization of Rimini Street's conduct.  Likewise, Mr. Ravin says that Oracle "fails to specify

16   any specific wrongful act that would support personal liability against Mr. Ravin" (*id.*), but fails

17   to address the specific wrongful acts by Mr. Ravin alleged in detail in the FAC.

18       In addition to ignoring nearly all of the key allegations against him, Mr. Ravin's motion

19   minimizes and fails to acknowledge the multiple legal theories under which he may be held

20   liable.  The FAC describes how Mr. Ravin founded and leads Rimini Street, manages its day-to-

21   day operations, holds all of its corporate offices but one, designed its corrupt business model, and

22   directs and personally participates in its wrongful conduct.  Yet Mr. Ravin incorrectly asserts that

23   the FAC relies solely on allegations of a "vague conspiracy" between Rimini Street and Mr.

24   Ravin to hold Mr. Ravin liable.  This assertion has three fundamental flaws.

25       First, the standard governing officer liability, which Mr. Ravin dismisses in a footnote,

26   provides that Mr. Ravin may be held directly liable for torts which he authorized, directed, or in

27   which he participated.  The FAC alleges Mr. Ravin controlled Rimini Street, directed Rimini

28   Street's wrongdoing, and personally participated in the wrongful acts at issue here.  It also

1

1    alleges that he personally committed the wrongful acts at issue.

2           Second, Mr. Ravin's assertion entirely ignores California Business and Professions Code

3    Section 17095, which holds corporate officers or agents liable for certain unfair business

4    practices where the officer or agent "assists or aids, directly or indirectly" in the violation.  Cal.

5    Bus. & Prof. Code § 17095.  This statute, which Mr. Ravin's motion never mentions, further

6    refutes his argument that Oracle's claims against him rely on conspiracy liability alone.

7           Finally, the FAC does allege facts sufficient to hold Mr. Ravin liable as a co-conspirator

8    with Rimini – as Mr. Ravin's own cited cases hold, officers and directors can be held liable for

9    conspiring with the corporation if they order, authorize or participate in the corporation's tortious

10   conduct.

11          Mr. Ravin's motion should be denied.

12   **II.       SUMMARY OF ALLEGATIONS**

13          Oracle's allegations regarding Rimini Street, Inc. ("Rimini Street" or "Rimini") are

14   summarized in Oracle's Opposition to Rimini Street's Motion to Dismiss, also filed today.  As

15   that Opposition demonstrates, the FAC alleges facts sufficient to demonstrate that Rimini Street

16   has engaged in the massive theft of Oracle intellectual property and states claims for each of

17   Counts 6-9 (inducing breach of contract, intentional interference with prospective economic

18   advantage, negligent interference with prospective economic advantage, and unfair competition)

19   and Counts 11-13 (unjust enrichment, restitution, unfair practices, and an accounting).

20   Summarized below are the specific allegations regarding Mr. Ravin that show he is also liable

21   for those counts.

22          Mr. Ravin helped create a similar illegal scheme at his prior company, TomorrowNow.

23   Like Rimini Street, TomorrowNow purported to offer customers support for Oracle software

24   products.  (FAC ¶ 10.)  Like Rimini Street, TomorrowNow operated by widespread, unlawful

25   copying of Oracle intellectual property.  (*Id.*)  Mr. Ravin and his partner sold TomorrowNow to

26   the German software conglomerate SAP AG ("SAP").  (*Id.* ¶ 11.)  In October 2008, SAP shut

27   down TomorrowNow, having concluded that it could not operate without infringing Oracle's

28   intellectual property.  (*Id.*)  SAP has *admitted* that TomorrowNow violated Oracle's copyrights

2

1   and violated the federal Computer Fraud and Abuse Act and California Penal Code Section

2   502(c)(7) by unlawfully accessing Oracle computers, including during times when Mr. Ravin

3   managed TomorrowNow.  (*Id.*)

4        After the sale to SAP, Mr. Ravin left TomorrowNow to found Rimini Street.  (*Id.* ¶¶ 11,

5   18.)  Mr. Ravin is Rimini Street's CEO, and Rimini Street's corporate filings also identify him as

6   Director, President, and Treasurer – occupying every corporate position except Secretary.  (*Id.* ¶

7   51.)

8        There is no question Mr. Ravin designed Rimini Street's service offerings and continues

9   to closely manage the business.  In an Executive Summary included in one Rimini Street

10  response to a customer request for proposals in August 2008, Rimini Street described itself as "a

11  next generation, independent third party support provider *founded and managed* by industry

12  pioneer Seth Ravin."  (*Id.* ¶ 52 (emphasis added.))  The same document declares that *only Mr.*

13  *Ravin* and one other person are authorized to make representations for Rimini Street.  (*Id.*)  He is

14  also listed on contracts as the *only* individual at Rimini Street with authority to amend, modify,

15  or alter Rimini Street's contracts.  (*Id.* ¶ 55.)   Mr. Ravin is personally and directly involved in

16  marketing Rimini Street's services, responding to requests for proposals, and negotiating

17  contracts with customers.  (*Id.* ¶ 56.)

18       Mr. Ravin has repeatedly admitted that he personally is the cause of the similarities

19  between TomorrowNow and Rimini Street.  Mr. Ravin admitted in a published interview that

20  "Our [Rimini Street's] basic model for TomorrowNow customers is that you're going to get the

21  same kind of savings" because "[w]hat we're offering is on top of what they're used to, which is

22  the vanilla offering that *I actually assembled* – because it hasn't changed much from what *I put*

23  *together* at TomorrowNow several years ago when we were launching the company."  (*Id.* ¶ 12

24  (emphasis added.))  Mr. Ravin similarly admitted in a separate interview that, "There's no way to

25  separate [TomorrowNow and Rimini Street]. *We look a lot alike in areas because I did both.* . . .

26  *I designed the TomorrowNow service. I evolved it and created a better service with Rimini*

27  *Street*."  (*Id.* ¶ 49 (emphasis added.))

28       In addition to building and managing Rimini Street's illegal business to follow

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

1   TomorrowNow's, Mr. Ravin has been directly and personally involved in the unlawful conduct

2   at issue in this litigation.  For example, Mr. Ravin personally logged into Oracle's Technical

3   Support website, ostensibly on behalf of an Oracle licensee, using a Rimini Street IP address, and

4   downloaded over 5,000 documents and over 11,000 files associated with those documents.  (*Id.* ¶

5   46.)  Many of these files were not licensed by Rimini Street or by the customer on whose behalf

6   Mr. Ravin purported to act.  (*Id.*)   Likewise, Mr. Ravin personally signed Rimini Street contracts

7   with customers in which Rimini Street committed to research, develop, and test updates and fixes

8   to Oracle's PeopleSoft products at Rimini Street's business location using Rimini Street's

9   computer system hardware and software. (*Id.* ¶ 54.)  As Mr. Ravin knew, it is a violation of the

10  customers' license agreements to develop fixes and updates at Rimini Street's business on

11  Rimini Street's computers, and thus these agreements that Mr. Ravin personally signed caused

12  the customers to breach their contracts with Oracle.  (*Id.*)

13       Mr. Ravin knew Rimini Street's and his conduct was improper.  As a former PeopleSoft

14  employee, Mr. Ravin is personally familiar with Oracle's license agreements and Terms of Use.

15  (*Id.*)  He has publicly admitted his knowledge that downloading Oracle's intellectual property

16  without authorization is unlawful:  "You need to be very careful about parsing documents –

17  whether you take 20 or hundreds.  Either you're authorized or you're not." (*Id.* ¶ 7.)

18  **III.   ARGUMENT**

19       Under Rule 8, a pleading will survive a motion to dismiss if, taking all well pleaded

20  factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on

21  its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v.*

22  *Twombly*, 550 U.S. 544, 570 (2007)).

23       Mr. Ravin concedes that the FAC pleads facts that state a claim against him personally

24  for copyright infringement (Count 1) and breach of contract (Count 5).  Nonetheless, Mr. Ravin

25  argues that Counts 6-9 and 11-13 – which rely on the *same* allegations of Mr. Ravin's personal

26  involvement, direction, and control as Counts 1 and 5 – fail to plead his personal liability.[1]  Mr.

27  [1] Counts 6-9 and 11-13 include the following claims against Ravin and Rimini: inducing breach
    of contract (Count 6), intentional interference with prospective economic advantage (Count 7);
28  negligent interference with prospective economic advantage (Count 8); unfair competition in

4

1   Ravin is wrong.  The FAC alleges facts that establish Mr. Ravin's individual liability, on all

2   seven of the counts challenged by his motion, as a result of Mr. Ravin's control and authorization

3   of Rimini's unlawful conduct.[2]  Oracle's FAC also alleges facts that establish Mr. Ravin's

4   individual liability for his direct participation in Counts 6-9 and Count 12.

5          First, Mr. Ravin is liable on all seven of the counts challenged by his motion because he

6   authorized or controlled the unlawful conduct alleged in the FAC.  The FAC alleges, with detail

7   and specificity, that Mr. Ravin exercised extensive authority and control over Rimini Street;

8   controlled every relevant aspect of Rimini's business through his roles as founder, shareholder,

9   director, president, and treasurer; exercised additional control over Rimini as one of only two

10  people authorized to speak for Rimini or modify contracts on its behalf; personally designed

11  Rimini's corrupt business model; personally accessed Oracle's websites and accepted Oracle's

12  contractual terms; personally downloaded proprietary information, including copyrighted

13  material, in violation of those terms; was personally involved in the marketing efforts that lured

14  away Oracle customers in favor of Rimini, and personally caused Rimini to enter into contracts

15  with Oracle licensees in which the Oracle licensees agreed to perform acts that Mr. Ravin knew

16  breached their contracts with Oracle.  (FAC ¶¶ 5, 9-14, 17, 21, 46, 49-56, 58).  Mr. Ravin is

17  liable not just because the FAC alleges that he occupied a position of authority and controlled the

18  entirety of Rimini's operations, but also because it alleges Mr. Ravin's control over the specific

19  illegal conduct described in each count of the FAC.  These same facts also make Mr. Ravin

20  liable for having conspired with Rimini to commit the tortious acts pled in the FAC.

21         Second, Mr. Ravin is personally liable on Counts 6, 7, 8, 9 and 12 because those same

22  allegations summarized immediately above show Mr. Ravin's direct, individual involvement in

23  _____

24  violation of California Business & Professions Code Section 17200 (Count 9); unjust enrichment
    (Count 11); unfair practices in violation of California Business & Professions Code Section
25  17000 *et seq.* (Count 12) and an action for an accounting (Count 13).

26  [2] Mr. Ravin appears to incorporate Rimini's argument that the FAC fails to state a claim for
    relief "for many of its claims."  Def. Mot. at 5.  To the extent that Ravin incorporates any
27  argument that the FAC fails for reasons other than its purported failure to allege sufficient
    involvement by Ravin, Oracle incorporates the responses to those arguments in its opposition to
28  Rimini Street's motion to dismiss, filed simultaneously with this brief.

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

1   the unlawful conduct alleged in those counts.

2   **A.      Mr. Ravin Can Be Held Personally Liable For Rimini's Conduct Because of His Control Over, Authorization of, and Participation in Rimini's Conduct**

3

4   As Mr. Ravin acknowledges only in a footnote, "a corporate officer or director is, in

5   general, personally liable for all torts which he authorizes or directs or in which he participates,

6   notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal*

7   *Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (quoting

8   *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)) (finding

9   officer of defendant corporation liable, along with corporation, for unfair competition, where

10  officer played "instrumental role" in corporation's passing off plaintiff's goods as those of

11  defendant corporation); *see also* Ravin Mot. at 4 n.3 (citing *Transgo*).  "A corporate director or

12  officer's participation in tortious conduct may be shown not solely by direct action but also by

13  knowing consent to or approval of unlawful acts." *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368,

14  1380 (Cal. Ct. App. 2000) (holding that principal directors, officers, and shareholders who

15  "controlled the entity which was engaging in unlawful conduct" may be held liable for the

16  entity's conduct).

17  In addition to being held liable for tortious conduct which they "specifically authorized,

18  directed or participated in," directors and officers are also liable where "although they

19  specifically knew or reasonably should have known that some hazardous condition or activity

20  under their control could injure plaintiff, they negligently failed to take or order appropriate

21  action to avoid the harm." *Id.* (citation omitted).  *See also Landex, Inc. v. State ex rel. List*, 94

22  Nev. 469, 474 (Nev. 1978) (president of defendant sales corporation held liable for deceptive

23  sales practices where he "exercised direct supervision of the sales personnel and their

24  promotional presentations").[3]

25  Moreover, "it is settled that a managing officer of a corporation with control over the

26  _____

27  [3]  Oracle contends that California law applies to all of the claims at issue in this motion, but this memorandum cites both California and Nevada authority to show that the FAC is sufficient to state a claim for relief under either body of law.

28

1   operation of the business is personally responsible for acts of subordinates done in the normal

2   course of business." *People v. Toomey,* 157 Cal. App. 3d 1, 15 (Cal. Ct. App. 1984) (holding

3   liable the "president and operating officer" of a company that had engaged in unfair business

4   practices).  Similarly, for violations of California Business & Professional Code Section 17000

5   (Count 12), Mr. Ravin can be held liable based on "participation in the unlawful practices, either

6   directly or by aiding and abetting" Rimini or if he "was in a position to *control* the activities" of

7   Rimini.  *Id.* (citations omitted).[4]

8       As described in greater detail below, the FAC alleges facts that, if proven, establish Mr.

9   Ravin's liability under these undisputed principles.  Mr. Ravin's motion must be denied.

10      **B.      Mr. Ravin Ignores Oracle's Numerous Allegations Detailing His Control
               Over and Involvement in Rimini's Illegal Activities**

11

12      Mr. Ravin seeks the dismissal of Counts 6-9 and 11-13 because Oracle has purportedly

13  failed to identify wrongful acts committed by Mr. Ravin or give Mr. Ravin fair notice of what

14  facts would support imposing liability against him.  To support his argument, Mr. Ravin relies on

15  a false premise:  that the FAC's only allegations against him relevant to Counts 6-9 and 11-13

16  are that "he is the president and CEO of Rimini Street," and that he "founded and controls"

17  Rimini Street.  Ravin. Mot. at 3.[5]  This summary entirely ignores what the FAC alleges, even

18  though those allegations are specifically incorporated by reference into each count Mr. Ravin

19  seeks to dismiss.  FAC ¶¶ 115 (Count 6); 121 (Count 7); 131 (Count 8); 140 (Count 9); 160

20  (Count 11); 163 (Count 12); 167 (Count 13).

21  [4] Ravin cites *Perfect 10, Inc. v. Visa International Serv. Ass'n,* 494 F.3d 788 (9th Cir. 2007) for
    the same proposition. *Perfect 10* is inapt.  It involved the vicarious liability of a credit card
22  company that processed payments to an independent website that allegedly infringed plaintiff's
    copyright and trademark – not an officer who was alleged to have directed and controlled the
23  unlawful activity in the first place.

24  [5] Ravin also acknowledges Oracle's allegation that Ravin "personally logged into Oracle's
    Technical Support website on behalf of  customer, using a Rimini Street IP address, and
25  downloaded over 5,000 documents and over 11,000 files" in violation of Oracle's licenses and
    website Terms of Use.  Ravin Mot. at 3; FAC ¶ 46.  He claims that this allegation is relevant
26  only to Oracle's copyright infringement and breach-of-contract claims.  This is not true:  Counts
    6-9 and 11-13 also address Rimini's and Ravin's massive illegal downloading scheme, as
27  explained below.  This allegation is highly relevant because it demonstrates Ravin's knowledge
    of and direct participation in the unlawful conduct.

28

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

1      Most glaringly, Mr. Ravin fails to acknowledge paragraphs 49-56 of the FAC, which

2  describe his control over and participation in Rimini's actions.  These paragraphs include the

3  following allegations:

4
5

- Before he founded Rimini Street, Mr. Ravin managed TomorrowNow and "helped create [TomorrowNow]'s illegal business model of making and using thousands of copies of Oracle's copyrighted software applications" (FAC ¶ 49.)

6
7
8

- By Mr. Ravin's own description, TomorrowNow and Rimini Street are similar because Mr. Ravin designed both services:  "We look a lot alike in areas because I did both. . . .  I designed the TomorrowNow service.  I evolved it and created a better service with Rimini Street."  (FAC ¶ 49.)

9
10

- Mr. Ravin is a director and "holds all but one" of Rimini Street's officer positions. (FAC ¶ 51.)

11
12

- Rimini describes itself as a company "managed by" Mr. Ravin, and lists Mr. Ravin as "one of only two people authorized to make representations for Rimini." (FAC ¶ 52.)

13
14

- "Ravin controlled Rimini Street's massive downloading scheme" and "was an active participant, personally logging into Oracle's Technical Support website from a Rimini IP address" and downloading unauthorized materials. (FAC ¶ 53.)

15
16
17

- Mr. Ravin signed contracts in which Rimini agreed to "research, develop, and test updates and fixes to Oracle's products…at Rimini Street's business location," despite Mr. Ravin's personal knowledge that it was a violation of Oracle's license agreements and Terms of Use for Rimini to develop updates on its place of business, rather than at the business of the Oracle licenses. (FAC ¶ 54.)

18
19

- Mr. Ravin "controlled Rimini Street's contractual relationships with customers" and held sole power to amend Rimini's contracts with certain customers. (FAC ¶ 55.)

20
21

- Mr. Ravin was "personally and directly involved in marketing Rimini Street's services" and in "negotiating Rimini Street's contracts with customers."  (FAC ¶ 56.)

22  Other sections of the FAC include still more allegations specifically against Mr. Ravin.  *See,*

23  *e.g.*, FAC ¶¶ 9-11 (Mr. Ravin's role in creating TomorrowNow's illegal business model); FAC

24  ¶¶ 12-14 (Mr. Ravin's knowledge of the similarities between TomorrowNow and Rimini); FAC

25  ¶ 58 (Mr. Ravin's familiarity with Oracle customers' license agreements and the Oracle website

26  Terms of Use).   Each of these allegations is also incorporated by reference into Counts 6-9 and

27  11-13.

28

1    The FAC thus makes clear Mr. Ravin's extensive authority and control over Rimini

2    Street, as well as his specific participation in orchestrating and executing an illegal scheme to

3    download massive amounts of Oracle software without authorization, making misleading

4    statements to Oracle customers to convince them to switch to Rimini, and inducing Oracle's

5    customers to breach their contracts with Oracle.  Mr. Ravin's argument ignores over a dozen

6    particular allegations that describe his role in and his control over Rimini Street.  (FAC ¶¶ 9-14,

7    49-56, 58)  Mr. Ravin cannot prevail by pretending that these specific, detailed allegations in the

8    FAC simply do not exist.  As we explain below, those allegations establish that Mr. Ravin is

9    liable for Rimini's conduct.

10   **C.     Mr. Ravin's Extensive Control Over All Aspects of Rimini's Operations
             Makes Him Liable on Counts 6-9 and 11-13**
11

12   The FAC does not attempt to hold Mr. Ravin liable simply by virtue of his position as

13   Rimini's founder, president or CEO, as Mr. Ravin asserts.  Rather, it seeks to show that he

14   exercised such comprehensive authority over Rimini's operations that he necessarily would have

15   "authorize[d] or direct[ed] or…participat[ed] in" Rimini's illegal conduct – or, at the very least,

16   that he would have known of Rimini's conduct and failed to stop it.  *Coastal Abstract Serv.*, 173

17   F.3d at 734; *PMC,* 78 Cal. App. 4th at 1379-1380.  Consequently, Mr. Ravin may be held liable

18   for that conduct.  *See, e.g., Toomey*, 157 Cal. App. 3d at 15; *see also PMC*, 78 Cal. App. 4th at

19   1389.

20   In *Toomey*, Toomey was the president and CEO of Holiday, a coupon sales company; he

21   was held liable for his company's unfair business practices, unfair competition, and

22   misrepresentations made in connection with his business's sale of fraudulent coupons, as well as

23   other violations.  *Toomey*, 157 Cal. App. 3d at 15-16, 26.  Toomey unsuccessfully argued that he

24   could not be held liable for any actions he did not personally carry out.  *Id.* at 14.  The court

25   rejected Toomey's argument because it found that Toomey "had unbridled control over the

26   practices which were found violative of [California's unfair business practices laws]."  *Id.* at 15.

27   It observed that "Toomey was the president and operating officer of Holiday.  He orchestrated all

28   aspects of the business. Overwhelming evidence shows that he prepared the solicitation scripts,

9

1   determined the content of coupon packages to be sold, and directed the refund policy which the

2   company followed." The court concluded that "[h]is position in the corporation and operation of

3   the business subjects him to liability." *Id.*

4        The FAC alleges facts showing far more than such a claim is plausible in this case. The

5   FAC alleges that Mr. Ravin holds the same positions as Toomey, and more. Mr. Ravin also

6   controlled Rimini's marketing and solicitation process, operations (including its scheme to gain

7   unauthorized access to Oracle's software), and policies (including the terms of its contracts), as

8   Toomey controlled Holiday's. He thus may not avoid liability by arguing that Oracle has not

9   alleged his personal participation in the specific acts underlying Counts 6-9 and 11-13. Mr.

10   Ravin's "unbridled control" over Rimini's practices is enough. *Id.* In a recent case, *American*

11   *Automobile Ass'n, Inc. v. Darba Enterprises Inc.*, No. C 09-00510 (SI), 2009 WL 1066506 (N.D.

12   Cal. Apr. 21, 2009), plaintiff claimed that the defendant corporation's website was infringing

13   plaintiff's "AAA" trademark. *Id.* at *1. Defendant Bagnuolo, who was the President, Secretary,

14   and Treasurer of the defendant corporation, moved to dismiss the claims against him. *Id.* at *7.

15   The court denied the motion, reasoning that "plaintiff has alleged that defendant Bagnuolo

16   operated and maintained the infringing website. That allegation is sufficient to name him as an

17   individual defendant in the action." *Id.*

18        Similarly, in *PMC*, 78 Cal. App. 4th at 1386, the court found that defendants,

19   shareholders and officers of Paul Winkler Plastics Corporation, could be liable for the

20   corporation's intentional torts, including interference with prospective economic advantage and

21   unfair competition, because the officers assumed control of and operated the corporation "with

22   reason to know" that the company engaged in unlawful conduct and allowed that conduct to

23   continue. *Id.* The court rejected defendants' assertion that "they have no liability to plaintiffs

24   unless they personally" committed the illegal acts, stating that "[t]he decisional authority is to the

25   contrary . . . an officer's or director's knowing consent to, or approval or authorization of,

26   wrongdoing suffices to impose personal liability." *Id.* at 1387-88.

27        As in this case, the *PMC* plaintiffs had notified the defendants of their wrongful conduct,

28   and defendants refused to change course. *Id.* at 1378; FAC ¶ 48. The individual defendants in

1   *PMC* were aware of the unauthorized duplication of material for use by the corporation; Mr.

2   Ravin was aware of the unauthorized accessing of Oracle material and the breach of Oracle's

3   license agreements by Rimini Street. *Id.* at 1376-78, 1385; FAC ¶¶ 46, 53, 54.  And Oracle's

4   allegations go further than the PMC plaintiffs':  Oracle alleges not just that Mr. Ravin had reason

5   to know of the illegal conduct, but that he was the mastermind behind it and a direct, hands-on

6   participant.  FAC ¶¶ 9-10, 12, 14, 21, 46, 49, 53-56.  The FAC's allegations that Mr. Ravin

7   created Rimini's illegal scheme, managed its operations, and knew that Rimini's actions violated

8   Oracle's license agreements logically compel the conclusion that the FAC has properly alleged

9   Mr. Ravin's knowledge of Rimini's illegal conduct and failure to stop it, as required to impose

10   liability under *PMC.*

11         Mr. Ravin also resembles Jerry Jacoby, the president of co-defendant Ajac Transmission

12   Parts. Corp., who was held liable for Ajac's copyright and trademark infringement, unfair

13   competition, and other violations in *Transgo*, *Inc.*, 768 F.2d at 1021.  Jacoby masterminded a

14   system to steal Transgo's designs for transmission valve body kits and pass them to a rival

15   company, just as Mr. Ravin masterminded Rimini's unauthorized access to Oracle materials and

16   theft of Oracle's intellectual property.  FAC ¶¶ 9, 14, 46, 49-56.   The *Transgo* court held Jacoby

17   liable because of his "instrumental role" in marketing the infringing products.  *Id.* at 1021.  The

18   FAC alleges that Mr. Ravin is one of the only two persons authorized to speak on Rimini's

19   behalf and was directly involved in marketing Rimini's illegal services – services that depend on

20   unauthorized access to Oracle software support materials.  FAC ¶¶ 33-48 (Rimini's illegal

21   business model); 52, 56 (Ravin's role in marketing).  *Toomey, PMC,* and *Transgo* thus

22   demonstrate that Mr. Ravin, a corporate officer and director who exercised full control over and

23   masterminded Rimini's illegal conduct, should be held liable for that conduct.

24         **D.      Mr. Ravin Is Liable for His Direct and Indirect Participation in the Conduct
            Alleged in Count 12 (Unfair Practices)**

25

26         Mr. Ravin's assertion that Count 12 is inadequate also fails to consider direct statutory

27   authority for officer and director liability.  For Count 12, which alleges violations of California's

28   Unfair Practices Act, Cal. Bus. & Prof. Code § 17000 *et seq.*, Mr. Ravin may be found liable

11

1    even if he has assisted only "indirectly" in a violation of the Act by Rimini.  Cal. Bus. & Prof.

2    Code § 17095 ("any person, who, either as director, officer or agent of any firm or corporation or

3    as agent of any person, violating the provisions of this chapter, assists or aids, *directly or*

4    *indirectly*, in such violation is responsible therefor equally with the person, firm or corporation

5    for which he acts." of the Act) (emphasis added).  As described above (and below in Part III.E.4

6    with respect to Count 12 specifically), the FAC pleads facts sufficient to hold Mr. Ravin liable

7    under Count 12.

8                                   *         *         *

9         Oracle's complaint need only allege facts making plausible the claim that Mr. Ravin had

10   control over Rimini and its illegal conduct.  The facts Oracle has alleged go far further, and

11   therefore Mr. Ravin's motion to dismiss Counts 6-9 and 11-13 of the FAC should be denied.

12        **E.**     **Mr. Ravin Is Liable for His Direct, Individual Participation in the**
                     **Wrongdoing Alleged in Counts 6, 7, 8, 9, and 12**
13

14        Mr. Ravin's motion should be denied for a second, separate reason as well:  the FAC also

15   alleges specific conduct by Mr. Ravin himself that is sufficient to state a claim against him

16   personally as to Counts 6, 7, 8, 9 and 12, independent of his control over Rimini Street's

17   activities more generally.  It is beyond cavil that Mr. Ravin is liable for all intentional torts in

18   which he has participated.  *See, e.g., Golden v. Anderson*, 256 Cal. App. 2d 714, 719-720 (Cal.

19   Ct. App. 1967) (holding company's executive vice president and two officers liable for

20   intentional interference with contract because "[p]laintiff's action is for an intentional tort.  All

21   persons who are shown to have participated are liable for the full amount of the damages

22   suffered"); *Vacco Industries, Inc. v. Van Den Berg,* 5 Cal. App. 4th 34, 53 n. 20 (Cal. Ct. App.

23   1992) (employees and agents are liable for torts they committed, even if "they acted only as

24   agent[s]" and committed those torts "in the corporate name").  As shown below, Counts 6, 7, 8, 9

25   and 12 state claims for relief against Mr. Ravin based on his personal participation in the conduct

26   at issue in each count.

27             **1.**     **Count 6 (Inducing Breach of Contract)**

28        The relevant conduct for a claim for inducing breach of contract is the defendant's

                                            12

1  knowledge of a contract and the defendant's intentional acts designed to induce a breach or

2  disruption of that contractual relationship.  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004); *see*

3  *also Sutherland v. Gross*, 105 Nev. 192, 196 (Nev. 1989) (same).

4       Count 6 alleges that Mr. Ravin induced Oracle customers to breach Oracle's licenses and

5  Terms of Use when they became Rimini customers as well.  FAC ¶¶ 54; 116-19.  Mr. Ravin

6  obviously knew that Rimini's prospective customers were Oracle customers when he solicited

7  them to switch from Oracle's technical support to Rimini's, and he induced them to breach their

8  contracts with Oracle in multiple ways – as Mr. Ravin well knew.  FAC ¶ 54.  For example, he

9  entered into contracts with Oracle customers which provided that the customers would store

10  Oracle's intellectual property on Rimini's premises.  That was an agreement to breach Oracle's

11  license agreement with those third parties, and thus Mr. Ravin individually induced Oracle

12  customers to breach their agreements at very the moment they signed on with Rimini.  *Id.*

13       Mr. Ravin also directed and personally used Oracle customers' log-in accounts to obtain

14  unauthorized access to Oracle's technical support website for purposes that were prohibited by

15  the customers' contracts, which further breached those customers' contracts with Oracle, and

16  which supplied Rimini with the Oracle software it needed to run its illegal business.  FAC ¶¶ 46,

17  53.  From initial contract to ongoing support, Mr. Ravin built a business based on inducing

18  Oracle customers to breach their contracts with Oracle in order to serve Rimini's needs.

19          **2.**      **Counts 7 and 8 (Intentional and Negligent Interference with**
                      **Prospective Economic Advantage)**

20

21       The relevant conduct for intentional and negligent interference with prospective

22  economic advantage includes defendant's knowledge of a prospective economic relationship and

23  an intentional or negligent act by the defendant, designed to disrupt the relationship.  *Edwards v.*

24  *Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008) (intentional interference); *Venhaus v. Shultz*,

25  155 Cal. App. 4th 1072, 1078 (Cal. Ct. App. 2007) (negligent interference); s*ee also Las Vegas-*

26  *Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S.  Nevada*, 106 Nev. 283, 287 (Nev. 1990)

27  (intentional interference under Nevada law).

28       Count 7 details six ways in which Mr. Ravin and Rimini disrupted Oracle's relationships

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

1   with its customers, and the FAC alleges Mr. Ravin's direct participation in this conduct.  For

2   example, Count 7 states that Mr. Ravin and Rimini "gain[ed] unauthorized access to Oracle

3   America's computer systems through Oracle's password-protected customer support websites, in

4   violation of the agreements governing such access." FAC ¶ 124.  In paragraphs incorporated by

5   reference into this count, Oracle has alleged that Mr. Ravin personally participated in

6   unauthorized downloading of material. *See, e.g.*, FAC ¶¶ 46, 53.  Count 7 also alleges that Mr.

7   Ravin "ma[de] promotional and marketing statements regarding Defendants' ability to provide

8   support services for Oracle software that were only possible because of Defendants' improper

9   access to…Oracle America's computer systems." FAC ¶ 124.  The FAC alleges Mr. Ravin's

10  personal involvement in Rimini Street's marketing and quotes marketing statements made by

11  Mr. Ravin.  FAC ¶¶ 12, 52, 56.  In short, Mr. Ravin knew of Oracle's relationships with

12  customers and used improper means to convince those customers to leave Oracle and do business

13  with Rimini Street.

14          Mr. Ravin claims that all this may be true, yet he has no personal liability for tortious or

15  negligent interference with prospective economic advantage.  Mr. Ravin is once again wrong,

16  and the motion to dismiss as to Counts 7 and 8 should be denied for this reason as well.

17          **3.        Count 9 (Unfair Competition – Cal. Bus. & Prof. Code § 17200)**

18          California's unfair competition law, Cal. Bus. & Prof. Code § 17200, outlaws "any

19  unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

20  advertising." Cal. Bus. & Prof. Code § 17200.  "An unlawful business practice under the UCL is

21  anything that can properly be called a business practice and that at the same time is forbidden by

22  law." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App.

23  2009).

24          Count 9 includes allegations that Mr. Ravin personally designed the scheme by which

25  Rimini would gain unauthorized access – or access in excess of its customers' authorization – to

26  Oracle's support website, a scheme which violated numerous state and federal laws.  FAC ¶¶ 9,

27  12, 46, 49, 53, 144-48.  He also personally logged on to Oracle's Technical Support website and

28  downloaded material beyond any authorization.  FAC ¶ 46.  He spoke on Rimini's behalf and

14

marketed its services to Oracle customers, all the while knowing that his business model was corrupt at its core, founded on unauthorized accessing of Oracle's intellectual property.  FAC ¶ 53, 56.  On this motion to dismiss, Mr. Ravin does not address any of this conduct by him.  The motion to dismiss as to Count 9 should be denied.

### 4. Count 12 (Unfair Practices – Cal. Bus. & Prof. Code § 17000, *et seq.*)

The Unfair Practices Act, Cal. Bus. & Prof. Code § 17000, *et seq.*, provides: "It is unlawful for any person engaged in business within this State to sell or use any article or product as a 'loss leader' as defined in Section 17030 of this chapter." Section 17030 defines "loss leader" as

> any article or product sold at less than cost: (a) Where the purpose is to induce, promote or encourage the purchase of other merchandise; or (b) Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or (c) Where the effect is to divert trade from or otherwise injure competitors.

The conduct at issue in Count 12 includes, but is not limited to, Rimini's sales of software support at cut-rate prices that were possible only because it acquired Oracle support materials unlawfully.  FAC ¶¶ 9, 33-38, 164.  Through its cut-rate pricing, made possible by its illegal business model, Rimini was able to lure some customers away from Oracle.  FAC ¶¶ 34-37.  As Mr. Ravin fails to mention, he may be held individually liable as a "director, officer, or agent" of Rimini for even an indirect contribution to this conduct.  Cal. Bus. & Prof. Code § 17095.

The FAC pleads more than the minimum the statute requires, alleging Mr. Ravin's *direct* involvement in the formulation and execution of Rimini's unfair business practices.  The FAC alleges that Mr. Ravin signed Rimini Street's contracts and controlled its contractual relations with customers, and was therefore directly involved in the pricing and sale of Rimini's services at the unfairly low prices.  FAC ¶ 54-55.  Oracle has also alleged that Mr. Ravin was the mastermind behind the unauthorized access and downloading, the acts that enable Rimini to offer the level of support it does at low prices.  FAC ¶¶ 46, 53.  At both TomorrowNow and Rimini Street, Mr. Ravin created a scheme to divert customers from Oracle by offering software support at too-good-to-be-true prices, made possible only by the theft of intellectual property that

15

1    allowed each company to avoid the costs of developing its own software.

2           Counts 6-9 and 12 thus also state a claim against Mr. Ravin based on his personal

3    participation in the wrongful conduct alleged.

4    **F.      Mr. Ravin Is Liable for Conspiring with Rimini to Commit the Wrongdoing
              Alleged in the Amended Complaint**

5

6           Mr. Ravin devotes a substantial portion of his brief to arguing that he cannot be held

7    liable for conspiring with Rimini.  Mr. Ravin is wrong.  The very cases he cites hold that an

8    officer or director can be held liable for conspiring with the corporation where the officer or

9    director controls, authorizes or participates in the unlawful conduct.  *Doctors' Co. v. Superior*

10   *Court*, 49 Cal. 3d 39, 48 (Cal. 1989) ("corporate directors and officers who directly order,

11   authorize or participate in the corporation's tortious conduct…may be held liable, as conspirators

12   or otherwise"); *Black v. Bank of America N.T. & S.A.*, 30 Cal. App. 4th 1, 6 n.4 (Cal. Ct. App.

13   1995).[6]  As explained in Parts IV(B)-(E), the FAC pleads such control, authorization, and

14   participation.[7]  Ravin is thus liable as Rimini's co-conspirator.

15                                    **<u>CONCLUSION</u>**

16          For the foregoing reasons, Mr. Ravin's motion to dismiss should be denied.  In the event

17   that the Court grants Ravin's motion as to any cause of action, Oracle respectfully requests an

18   opportunity to amend.

19

20

---

21   [6] Moreover, the rule Ravin cites does not absolve him of liability for violating duties that he, as
     well as Rimini, owes to Oracle.  *See Doctors' Co.*, 49 Cal. 3d at 48-49.  These duties include the
22   duty not to infringe Oracle's copyrights, not to engage in unfair business practices, and not to
     interfere with Oracle's economic relations.
23

24   [7] Neither are Oracle's allegations of conspiracy too "vague," as Mr. Ravin argues.  Mr. Ravin's
     control over Rimini Street, his financial interests in Rimini, and the acts both authorized and
     personally committed by him provide the basis to infer agreement with Rimini and knowledge of
25   the conduct that gives rise to Oracle's complaint.  *See Wyatt v. Union Mortgage Co.*, 24 Cal. 3d
     773, 785 (Cal.1979) (an alleged conspirator's "requisite concurrence and knowledge may be
26   inferred from the nature of the acts done, the relation of the parties, the interests of the alleged
     conspirators, and other circumstances") (citation omitted); see also *Flowers v. Carville*, 266
27   F.Supp.2d 1245, 1250 (D. Nev. 2003) (a "[c]omplaint is adequate if it sufficiently apprises the
     defendants of the character and type of the facts and circumstances" that establish the
28   conspiracy).

16

1   DATED:  May 24, 2010       BOIES SCHILLER & FLEXNER LLP

2

3                             By: /s/ Fred Norton

                                     Fred Norton

4                       Attorneys for Plaintiffs Oracle USA, Inc.,

5        Oracle America, Inc., and Oracle International Corp.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO SETH RAVIN'S MOTION TO DISMISS COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2010, I electronically transmitted the foregoing **PLAINTIFFS ORACLE AMERICA INC., ORACLE USA, INC. AND ORACLE INTERNATIONAL CORP.'S  OPPOSITION TO DEFENDANT SETH RAVIN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.


      /s/ Catherine Duong
An employee of Boies, Schiller & Flexner LLP

1