SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. *(pro hac vice)*
Eric Buresh, Esq. *(pro hac vice)*
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers, Esq. *(pro hac vice)*
600 Travis Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

WILSON SONSINI GOODRICH & ROSATI
Jonathan M. Jacobson, Esq.
1301 Avenue of the Americas, 40th Floor
New York, New York, 110019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jjacobson@wsgr.com
*(pro hac vice applications to be submitted)*

Michael B. Levin, Esq.
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493- 9300
Facsimile: (650) 493 - 6811
mlevin@wsgr.com
*(pro hac vice application to be submitted)*

*Attorneys for Defendants*
*RIMINI STREET, INC. and SETH RAVIN*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-0106-LRH-PAL

**DEFENDANT RIMINI STREET'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ORACLE'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. Oracle Has Failed to State a Claim under the CFAA. .......... 3

B. Oracle Has Failed to State a Claim for Violations of California and Nevada Criminal Statutes. .......... 5

C. Oracle Has Failed to State a Claim for Inducing Breach of Contract. .......... 6

D. Oracle Has Failed to State a Claim for Intentional or Negligent Interference with Prospective Economic Advantage .......... 7

E. Oracle Has Failed to State a Claim for Unfair Competition .......... 8

F. Oracle Has Failed to State a Claim for Trespass to Chattels. .......... 8

G. Oracle Has Failed to State a Claim for Unjust Enrichment .......... 10

H. Oracle Has Failed to State a Claim for Unfair Business Practices .......... 11

I. Oracle Has Failed to State a Claim for an Accounting. .......... 11

III. CONCLUSION .......... 12

## TABLE OF AUTHORITY

**PAGE**

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ....................2, 3, 9, 15

*Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, 14(Cal. Ct. App. 2nd 1977) ....................14

*Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F. 2d 973, (9th Cir. 1987)....................12

*G.H.I.I. v. MTS*, 195 Cal. Rptr. 211, 223 (Cal. Ct. App. 1983) ....................14

*Hanger Prosthetics & Orthotics v. Capstone Ortho.*, 556 F. Supp. 2d 1122 (E.D. Cal. 2008) ....................7

*Intel v. Hamidi*, 71 P.3d 296, 306-307 (Cal. 2003)....................11

*International Airport Centers, LLC v. Citrin*, 419-20 (7th Cir. 2006)....................4

*Kema, Inc. v. Koperwhats*, 2010 WL 726640, at *8 (N.D. Cal. Mar. 1, 2010) ....................10

*LVRC Holdings LCC v. Brekka*, 581 F. 3d 1127, 1134 (9th Cir. 2009) .................... passim

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (Cal. 1990) ....................8

*People's Fin. & Thrift Co. of Visalia v. Bowman*, 58 Cal. App. 2d 729, 731-32 (Cal. Ct. App. 1943) ....................14

*Richardson v. Stanley Works, Inc.*, (D. Ariz. 2008)....................13

*Rosal v. First Fed. Bank*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009)....................12, 13

*Summit Mach. Tool Mfg. v. Victor CNC Systems*, 7 F. 3d 1434, 1441 9th Cir. 1993) ....................13

*Teselle v. McLoughlin*, 173 Cal. App. 4th at 180 ....................14, 15

*Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 593 (Cal. Ct. App. 2nd 1995)....................14

*United States v. Drew*, 259 F.R.D. 449, 454 (C.D. Cal. 2009)....................5, 6, 8

*United States v. Santos*, 128 S.Ct. 2020, 2025 (2008) ....................5

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278–1280 (11th Cir. 2006)....................12

**Statutes**

Cal. Bus. & Prof. Code §§17000 ....................11

Cal. Penal Code § 502 .......... 6

Nev. Rev. Stats. § 205.4765 .......... 6

**RIMINI STREET'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Rimini Street Inc. ("Rimini Street") files this Reply to Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (together "Oracle" or "Plaintiffs") Opposition to Rimini Street's Motion to Dismiss Oracle's First Amended Complaint. *See* Doc Nos. 36, 49, 59.

## I. INTRODUCTION

Despite Oracle's rhetoric and headline-grabbing accusations that Rimini Street's business is based on "massive theft," the facts of this case do not support these allegations. While Oracle attempts to cast Rimini Street as an "illegal business" that can only compete with Oracle by illegally delivering Oracle materials to Rimini Street clients not entitled to them, in reality Rimini Street's 160 experienced professionals compete with Oracle on their own merits by providing support and custom built deliverables to hundreds of clients around the world, including Fortune 500, mid-market, small and public sector organizations. Rimini Street offers "concierge" level services to software customers seeking a competitive alternative to the service and prices they receive from software vendors such as Oracle.

As one aspect of its offerings, Rimini Street will, on behalf and at the request of a client, assist in obtaining Oracle support materials to which the client is entitled, such as user manuals or technical materials. Third parties, such as Rimini Street, are unquestionably allowed to obtain this support material when acting as agents of licensees, and Oracle does not argue to the contrary. Rimini Street takes extraordinary measures and processes designed to deliver to the client only those materials to which it is entitled as an Oracle licensee, respectful of Oracle's intellectual property rights. Perhaps realizing this, Oracle attempts to bolster its speculative allegations by linking Rimini Street to the defunct company TomorrowNow, owned by German software conglomerate SAP. But, as Oracle is well aware, Rimini Street is an unrelated company, with substantively different processes and procedures. Indeed, contrary to the essential underpinnings of Oracle's allegations, Rimini Street's processes and procedures call for storing a client's materials in that client's unique data "silo" to ensure that client materials are not co-mingled. Far from Oracle's "massive theft"

allegation, Rimini Street has not committed any theft at all, and its processes and procedures are legal and supported by industry-leading practices.

Each of Oracle's claims center around accusations that Rimini Street improperly accessed and copied Oracle's copyrighted software and support materials, thereby violating various license agreements and website terms of use. While these false allegations may meet the minimal *Twombly* pleading standard to support Oracle's claims for copyright infringement and breach of contract, they do not "plausibly suggest[] that the pleader is entitled to relief" for the nearly dozen additional claims Oracle attempts to bring. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

With respect to Oracle's claims under various computer hacking statutes, Oracle confirms that its CFAA claims are premised on the assertion that "Rimini had no permission to access Oracle's website and data except as expressly permitted by Oracle's Terms of Use, <u>which Rimini breached</u>." Doc. No. 59 at 6 (emphasis added). Oracle, however, fails to recognize that the CFAA was not intended to criminalize breach of contract. Indeed, the Ninth Circuit recently rejected such a broad reading of this statute, noting that the "Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants." *LVRC Holdings LCC v. Brekka*, 581 F. 3d 1127, 1134 (9th Cir. 2009). Applying the Ninth Circuit's rationale in *LVRC Holdings*, Oracle's allegation that Rimini Street violated the website terms of use is insufficient, as a matter of law, to establish a CFAA violation. Likewise, Oracle's allegations directed to the California and Nevada computer hacking statutes fail for the same reason, and Oracle's attempt to unreasonably contort the language of these statues should be rejected.

With respect to Oracle's Sixth through Thirteenth Claims for Relief, Oracle's Opposition serves only to demonstrate that these claims are indeed speculative. Most of Oracle's claims simply incorporate over a hundred paragraphs by reference then list threadbare legal conclusions. Rimini Street cannot respond to vague allegations that it has interfered with Oracle's relationships with undefined "prospective customers." Nor can it respond to allegations that it has induced unidentified Oracle customers to take unidentified actions which constituted a breach of unidentified provisions of unidentified contracts. Oracle even argues for an accounting based solely upon an unidentified

contractual relationship. Oracle's vague and conclusory allegations are insufficient under *Twombly*, and it is important that this Court eliminate these speculative claims now. Oracle's Second through Fourth and Sixth though Thirteenth Claims for Relief are without merit, insufficiently pled, and should be dismissed.

## II. ARGUMENT

### A. Oracle Has Failed to State a Claim under the CFAA.

Oracle alleges that Rimini Street breached various license agreements and Terms of Use, and therefore accessed Oracle's computers "without authorization" or "in excess of authorization" in violation of the Computer Fraud and Abuse Act (the "CFAA"). Doc. No. 59 at 17-18. Oracle states, "Rimini's argument that 'the CFAA does not address breach of contract' . . . is simply wrong." *Id*. at 17. Oracle's suggestion that the CFAA has criminalized breach of contract is misguided, and its CFAA claims fail <u>as a matter of law</u>. Indeed, to support its incorrect theory, Oracle relies on cases outside of the Ninth Circuit or decided prior to the Ninth Circuit's express rejection of the *Citrin* standard.

In *Citrin*, the Seventh Circuit held that computer access was "without authorization" under the CFAA if that access was in breach of an employment contract and duties of loyalty. *International Airport Centers, LLC v. Citrin*, 419-20 (7th Cir. 2006). The Ninth Circuit recently examined this standard and explicitly rejected it:

> If we applied the reasoning in *Citrin* to this case … Brekka would have acted "without authorization" for purposes of §§ 1030(a)(2) and (4) once his mental state changed from loyal employee to disloyal competitor. We are unpersuaded by this interpretation.

*LVRC Holdings LCC v. Brekka*, 581 F. 3d 1127, 1134 (9th Cir. 2009). Oracle fails to acknowledge this circuit split, and instead relies on cases decided before *LVRC Holdings* or from other circuits.[1] However, application of the Ninth Circuit's rationale in *LVRC Holdings* forecloses any argument that contractual violations such as those alleged by Oracle are actionable under the CFAA.

---

[1] The *LVRC Holdings* opinion was issued September 15, 2009.

Rejecting *Citrin*'s finding of a CFAA violation based on breach of a contract and duty of loyalty, the *LVRC Holdings* Court explained, "[I]t is well established that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," noting that the "Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants." *Id*. (internal citations omitted). The Ninth Circuit went on to stress that the rule of lenity must be applied to the CFAA even in civil actions, and that courts must construe any ambiguity in favor of a defendant. *Id.* "This venerable rule . . . vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *Id.* (quoting *United States v. Santos*, 128 S.Ct. 2020, 2025 (2008)). Indeed, the *LVRC Holdings* Court observed that "[n]othing in the CFAA suggests that a defendant's liability for accessing a computer without authorization turns on whether the defendant breached a state law duty of loyalty to an employer." *Id.* The *LVRC Holdings* Court thus declined to criminalize civil breaches because the scope of the statute would then be uncertain and the application unexpected: "It would be improper to interpret a criminal statute in such an unexpected manner." *Id*.

Courts have specifically applied these principles in the context of contractual breaches. For example, *United States v. Drew* addressed whether the CFAA may be applied to violations of a website's Terms of Use. Oracle all but ignores this case, superficially addressing *Drew* in a footnote. Doc. No. 59 at 17, fn. 4. But *Drew* is directly on point, and, contrary to Oracle's suggestion, the Terms of Use in that case specifically governed <u>access</u> and <u>authorization</u>: "You are only authorized to use the Services (regardless of whether your access or use is intended) if you agree to abide by all applicable laws and to this Agreement." *United States v. Drew*, 259 F.R.D. 449, 454 (C.D. Cal. 2009) (quoting the Terms of Use Agreement). In *Drew*, the prosecution's argument relied on the fact that these Terms of Use were the sole source of authorization for access to the website, and thus a violation of these terms was a violation of the CFAA. *Drew*, 259 F.R.D. at 452-54. The *Drew* Court unambiguously rejected this notion, holding that breach of a website's

Terms of Use is not acting "without authorization" or "in excess of authorization," for if it were, the CFAA would be unconstitutional:

> [I]f any conscious breach of a website's terms of service is held to be sufficient by itself to constitute intentionally accessing a computer without authorization or in excess of authorization, the result will be that section 1030(a)(2)(C) becomes a law "that affords too much discretion to the police and too little notice to citizens who wish to use the [Internet]."

*Drew*, 259 F.R.D. at 467. Oracle cannot distinguish *Drew*, and so essentially ignores it.[2] Nevertheless, *LVRC Holdings* and *Drew* make clear that violating contracts governing access is not acting "without authorization" or in "excess of authorization" under the CFAA. Thus, Oracle's CFAA claims fail as a matter of law, and Oracle's Second Claim for Relief should be dismissed for failure to state a claim.[3]

### B. Oracle Has Failed to State a Claim for Violations of California and Nevada Criminal Statutes.

With respect to Oracle's Third and Fourth Claims for Relief alleging violations of California and Nevada criminal statutes, Oracle's allegations are again premised on the argument that "Rimini's access was a direct breach of the license agreements and Terms of Use." Doc. No. 59 at 20. In addition, Oracle argues, bizarrely, that to violate Cal. Penal Code § 502 and Nev. Rev. Stats. § 205.4765, "it is irrelevant whether Rimini had permission to access Oracle's computers on any given occasion; all that matters is that Rimini accessed and took, copied, or used 'any data' or 'any supporting documentation' from any Oracle computer, system, or network." Doc. No. 59 at 20. But each of these statutes plainly requires acting "without permission" or "without authorization," paralleling the requirements of the CFAA. Cal. Penal Code § 502; Nev. Rev. Stats. § 205.4765;

---

[2] Oracle points out that *Drew* is a criminal application of the CFAA, which is irrelevant. *LVRC Holdings*, 581 F.3d at 1134 ("Although this case arises in a civil context, our interpretation of §§ 1030(a)(2) and (4) is equally applicable in the criminal context.") (citation omitted).

[3] Oracle also argues that § 1030(a)(5)(A) was violated regardless, because this section "does not depend on 'access' at all." Doc. No. 59 at 19. But it is undisputed that this section requires acting "without authorization," and Oracle again relies on its Terms of Use to establish that the alleged actions were "without authorization." *See* Doc. No. 36, para. 57 (noting that the terms of use prohibit use of automated mechanisms such as robots or crawlers). Thus, this argument also fails for the reasons detailed above.

*Hanger Prosthetics & Orthotics v. Capstone Ortho.*, 556 F. Supp. 2d 1122 (E.D. Cal. 2008) ("California Penal Code section 502 . . . has similar elements to § 1030"). Here again, Oracle has attempted to contort criminal statues in "surprising and novel ways" to fit its theories of the case. *LVRC Holdings*, 581 F.3d at 1134. As noted above, both the Supreme Court and Ninth Circuit have rejected such an approach to statutory construction. *Id.* Further, the criminal statues-at-issue are subject to the same constitutional requirements as addressed by the *Drew* Court, and, as such, these statutes would be unconstitutionally void-for-vagueness if interpreted as criminalizing breaches of contract. *Drew*, 259 F.R.D. at 467. Because Oracle's allegation that Rimini Street breached its websites' terms of use is insufficient, as a matter of law, to establish violations of California and Nevada state criminal statues, Oracle has failed to plead a legally cognizable basis for recovery for its Third and Fourth Claims for Relief, and these claims should be dismissed.

**C. Oracle Has Failed to State a Claim for Inducing Breach of Contract.**

As its Sixth Claim for Relief, Oracle alleges Rimini Street's "wrongful acts" caused Oracle's customers to be in breach of the Terms of Use for Oracle websites:

> Defendants induced Oracle's customers to breach these contracts by engaging in the independently wrongful acts alleged herein . . . These independently wrongful acts caused Oracle's customers to be in breach of the Terms of Use on Oracle's customer support websites, including the Metalink 3 Terms of Use and Oracle Web's Terms of Use . . . As a result of Defendants' inducing Oracle America's customers to breach the Terms of Use on Oracle's customer support websites . . . .

FAC, paras. 118-119. Oracle does not assert that the <u>customer's</u> actions constituted a breach, but rather that <u>Rimini Street's actions</u> constituted a breach of Oracle's Terms of Use by its customers. As noted by Rimini Street's motion, Oracle's framing of this claim is entirely nonsensical, and Oracle's Opposition fails to provide any additional clarity as to the nature of Oracle's allegations. Oracle states, "The FAC never alleges that Rimini acted as an agent of Oracle licensees when it engaged in unlawful" actions. Doc. No. 59 at 7. But if Rimini Street was not an agent for the third party, then <u>Rimini Street's</u> independent actions cannot constitute a breach of that third party's contract. And again, nowhere in its First Amended Complaint does Oracle plead actions by <u>its customers</u> constituting a breach of contract. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50

Cal.3d 1118, 1126 (Cal. 1990) (inducing breach of contract claims require actual breach of the contract). If Rimini Street was indeed not acting as an agent, then Oracle must plead specific customer actions constituting a breach of a particular contract, which it has not done. *See* FAC, paras. 110-114.

Beyond the implausibility of Oracle's claim, Oracle's First Amended Complaint does not name a single customer that was induced to breach, does not point to any specific customer contract or provision that was breached, and does not point to a single customer action constituting a breach. *See* FAC, paras. 110-114. Oracle's conclusory assertions with respect to its inducement claim are insufficient under *Twombly*. Because of the vague, conclusory, and confusing manner in which Oracle has brought this claim, Oracle's Sixth Claim for Relief should be dismissed.

**D. Oracle Has Failed to State a Claim for Intentional or Negligent Interference with Prospective Economic Advantage**

Oracle's Seventh and Eighth Claims for Relief allege intentional and negligent interference with prospective economic advantage. In setting forth these claims, Oracle makes the vague and generic assertion that Oracle has "an expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software." FAC, para. 122. Attempting to justify this pleading approach, Oracle's Opposition states that it is the "world's largest enterprise software company" and that there can be no doubt that it "has economic relationships with current and prospective customers." Doc. No. 59 at 22-23. But this misses the point, and utterly fails to address the fact that Rimini Street cannot meaningfully respond without knowing which relationships have allegedly been interfered with. If anything, that Oracle purports to be the world's largest enterprise software company compounds the difficulty: who might *not* be a prospective customer of the world's largest enterprise software company?

Oracle has made no attempt to put Rimini Street on notice of what actual relationships form the basis for Oracle's claim. Its conclusory and vague assertions are insufficient under *Twombly* and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Indeed, Oracle's generic allegations of interference with "current and prospective customers" are nearly identical to those dismissed as insufficient in *Kema*,

*Inc. v. Koperwhats*, No. C-09-1587 MMC, 2010 WL 726640, at *8 (N.D. Cal. Mar. 1, 2010) ("no prospective business relationship is identified other than by the generic assertion that 'current and prospective customers' were 'dissuaded' from purchasing or licensing Koperwhats' software. Koperwhats' conclusory allegation of a relationship, without identifying such relationship, is insufficient under Rule 8 to allow an opposing party to meaningfully respond."). Oracle's Seventh and Eighth Claims for Relief should be dismissed.

**E. Oracle Has Failed to State a Claim for Unfair Competition**

In setting forth its Ninth Claim for Relief for unfair competition, Oracle has submitted a laundry list of supposed bases for unfair competition, without any attempt to support these claims. As but one example, Rimini Street pointed out that Oracle simply asserts that Rimini Street has violated RICO, without providing any specific factual allegations whatsoever. Oracle responds that its complete failure to plead a RICO violation does not matter because it has also asserted other unlawful acts based on its computer hacking claims, its tortious interference claims, its inducing breach of contract claims, and its unjust enrichment claims. Doc. No. 59 at 24-25. However, as set forth herein and in Rimini Street's motion to dismiss, each of these claims is deficient and, thus, cannot support Oracle's claim for unfair competition. Moreover, Oracle's inability to justify its threadbare allegations that Rimini Street committed wire fraud, violated RICO, the Stored Communications Act and other criminal statutes speaks volumes about Oracle's pleading approach. Oracle cannot simply list multiple causes of action in the hopes that one might be sufficient to avoid dismissal. Oracle has failed to plead the factual allegations necessary to support its claim for unfair competition, and thus, this claim should be dismissed.

**F. Oracle Has Failed to State a Claim for Trespass to Chattels.**

For its Tenth Claim for Relief, Oracle attempts to claim trespass to chattels. In support of this claim, Oracle points out that it has pled that Rimini Street caused its computers to "freeze, slow down, **or** become temporarily non-operational." Doc. No. 59 at 24 (emphasis added). In so pleading, Oracle seemingly cannot decide whether the alleged actions caused its computers to merely slow down *or* to actually become non-operational. While Rimini Street's original motion to

dismiss pointed out this flaw in Oracle's pleadings, Oracle declined to clarify its allegations. This is especially troubling given that Oracle is solely in possession of the computers in question, but still cannot affirmative plead impairment beyond a mere "slow down."

To state a claim for trespass to chattels, Oracle must provide notice as to the nature of the alleged impairment with the requisite particularity. It has not done so, and instead continues to point to its equivocal allegations of freezing, slowing down, *or* temporary interruptions. Such allegations, however, are insufficient because a momentary or theoretical dispossession (e.g., a mere slow down) does not establish trespass to chattels:

> [A]n actionable deprivation of use 'must be for a time so substantial that it is possible to estimate the loss caused thereby. A mere momentary or theoretical deprivation of use is not sufficient unless there is a dispossession . . . .' That Hamidi's messages temporarily used some portion of the Intel computers' processors or storage is, therefore, not enough.

*Intel v. Hamidi*, 71 P.3d 296, 306-307 (Cal. 2003). Oracle's Tenth Claim for Relief, therefore, fails because Oracle has not and presumably cannot allege that Rimini Street's activities lead to an "actionable deprivation of use" under the standard articulated by *Intel*. *See id*.

Perhaps recognizing this deficiency in its pleading, Oracle attempts to salvage its claim by arguing that the temporary slowdowns "impeded the functioning of Oracle's business, increased costs to Oracle of maintaining and repairing the servers, and disrupted Oracle's ability to provide service to its customers." Doc. No. 59 at 25. But, even if true, preventative costs and damages disconnected from the actual chattel cannot be used to bootstrap damages to the chattel, and this argument has been expressly rejected by the Supreme Court of California. *Intel*, 71 P.3d at 308 ("Nor, finally, can the fact Intel staff spent time attempting to block Hamidi's messages be bootstrapped into an injury to Intel's possessory interest in its computers."). And while Rimini Street does not dispute that the use of crawlers *could* give rise to a trespass to chattels claim (as was the case in the *eBay* opinion cited by Oracle), such use is only sufficient to support an action for trespass "when it actually did, or threatened to, interfere with the intended functioning of the system, as by *significantly reducing its available memory and processing power*." *Id.* (emphasis added).

Oracle's pleadings do not come close to meeting this standard. Oracle's Tenth Claim for Relief should be dismissed.

**G. Oracle Has Failed to State a Claim for Unjust Enrichment**

For its Eleventh Claim for Relief, Oracle alleges that Rimini Street unjustly received benefits at the expense of Oracle. But Oracle's claim does little more than incorporate 143 paragraphs by reference and state that Defendants have "unjustly received benefits at the expense of Oracle America and OIC through Defendants wrongful conduct." FAC, paras. 160-161. Attempting to justify this pleading approach, Oracle points to its copyright infringement allegations, arguing that "rather than develop intellectual property of its own, Rimini misappropriated the Software and Support Materials that Oracle developed at substantial expense." Doc. No. 59 at 20. But if this is indeed the basis for Oracle's unjust enrichment claim, it is by no means clear from Oracle's Tenth Claim for Relief. *See* FAC, paras. 160-162. Oracle's attempt to set forth its claim for unjust enrichment illustrates precisely why courts routinely reject the "shotgun" pleading approach adopted by Oracle. *See, e.g., Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278–1280 (11th Cir. 2006); *Rosal v. First Fed. Bank*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) ("This [insufficiently plead] claim merely incorporates the other facts of the FAC by reference and makes a conclusory allegation.").

Moreover, to the extent Oracle's unjust enrichment claim is indeed premised upon the misappropriation of its copyrights – as Oracle's Opposition now suggests – such a claim is preempted as a matter of law. *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F. 2d 973, (9th Cir. 1987) ("us[ing] or copy[ing] materials within the subject matter of copyright is equivalent to the protection provided by section 106 of the Copyright Act. Therefore, this portion of Del Madera's unjust enrichment claim is also preempted."); *Summit Mach. Tool Mfg. v. Victor CNC Systems*, 7 F. 3d 1434, 1441 9th Cir. 1993) ("If Summit was simply complaining that Victor has misappropriated the time and effort expended in the development and production of its idea for the lathe, its claim would be preempted by copyright and patent law."); *Richardson v. Stanley Works, Inc.*, (D. Ariz. 2008). While Oracle argues that it may plead in the alternative, it cannot recast its

copyright infringement action as an unjust enrichment claim as such a claim would be preempted by the copyright law.

In sum, Oracle cannot incorporate over a hundred paragraphs by reference and summarily state that Rimini Street has been unjustly enriched. See *Rosal*, 671 F. Supp. 2d at 1133. Neither can it base its unjust enrichment claims on misappropriation of copyrighted materials, as Oracle's Opposition now argues. Oracle's Eleventh Claim for Relief is insufficient, and should be dismissed.

**H. Oracle Has Failed to State a Claim for Unfair Business Practices**

For its Twelfth Claim for Relief, Oracle asserts a claim for unfair practices under Cal. Bus. & Prof. Code §§17000, *et seq*. Amended Complaint, paras. 163–166. In setting forth this claim, Oracle relies solely on generic allegations and does not even bother to cite a specific statutory provision of Cal. Bus. & Prof. Code §§17000, *et seq*. *See id*. Attempting to defend such inadequate pleadings, Oracle's Opposition argues that, because Rimini Street's prices are lower than Oracle's, Rimini Street must be selling at "below cost" and as "loss leaders". Doc. No. 59 at 26-27. But Oracle's vague and conclusory allegations of selling items "below cost" cannot support its unfair practices claim because, to properly plead such a "loss leader" theory, "the plaintiff must allege defendant's sales price, its cost in the product and its cost of doing business." *G.H.I.I. v. MTS*, 195 Cal. Rptr. 211, 223 (Cal. Ct. App. 1983). Oracle has failed to meet this standard, and Oracle's Twelfth Claim for Relief should be dismissed.

**I. Oracle Has Failed to State a Claim for an Accounting.**

Finally, Oracle's Complaint brings an independent claim for an accounting of the money allegedly obtained by Rimini Street "through their wrongful and unlawful conduct." FAC, para. 170. Though an independent accounting claim is only appropriate in rare situations, Oracle argues that it may bring its accounting claim based on a "contractual relationship between" Oracle and Rimini Street. Doc. No. 59 at 28. In arguing for its claim, Oracle reaches back over sixty years to find a case that even comes close to supporting its position. *Id*. (citing *People's Fin. & Thrift Co. of Visalia v. Bowman*, 58 Cal. App. 2d 729, 731-32 (Cal. Ct. App. 1943)). But even this early case makes clear that it is <u>not</u> the mere existence of a contractual relationship that provides a basis for an

accounting. *See id.* Rather, *Bowman* addressed a complex contractual relationship that involved a financial company and accounts to be settled involving a mix of trust receipts, liens, cash, personal property, commissions, and possible fraud and misappropriation of monies. *Bowman*, 58 Cal. App. 2d at 734-36. Other accounting cases are in accord, requiring complex financial transactions or obligations to support the accounting claim. *See, e.g., Teselle v. McLoughlin*, 173 Cal. App. 4th at 180 (an action involving partnership assets, real property, trusts, and estates); *Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 593 (Cal. Ct. App. 2nd 1995) ("The grounds alleged in the accounting cause of action were that: there was a breach of fiduciary duty; the accounts were complicated; and fraud. These are proper grounds for an accounting."); *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, 14(Cal. Ct. App. 2nd 1977) ("An accounting cause of action is equitable in nature, and may be sought 'where . . . the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'") (citations omitted).

While Oracle's Opposition clarifies that its accounting claim is based only upon a contractual relationship with Rimini Street, an accounting must be based on "a relationship *that requires an accounting*." *Teselle v. McLaughlin*, 173 Cal. App. 4th 156, 179 (Cal. Ct. App. 2009). Oracle cannot show this. All it has pointed to is its website Terms of Use, but it has given no reason why this has created a relationship requires an accounting. It has not alleged any complex financial transactions or obligations arising out of this relationship. This is not the rare situation where an independent accounting claim is appropriate. Oracle's claim for an accounting is misplaced, and should be dismissed under *Twombly*.

## III. CONCLUSION

Oracle's Second through Fourth and Sixth though Thirteenth Claims for Relief claims are without merit, are insufficiently pled, and should be dismissed.

| DATED: June 3, 2010 | SHOOK, HARDY & BACON LLP<br><br>By: _/s/*Robert H. Reckers*________<br><br>Robert H. Reckers, Esq. *(pro hac vice)*<br>600 Travis Street, Suite 1600<br>Houston, Texas 77002<br>Telephone: (713) 227-8008<br>Facsimile: (731) 227-9508<br>rreckers@shb.com<br><br>*Attorney for Defendants*<br>*Rimni Street, Inc. and Seth Ravin* |
| --- | --- |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of June, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: _/s/Robert H. Reckers___
*Attorney for Defendants*
*Rimni Street, Inc. and Seth Ravin*