1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
6   FRED NORTON (*pro hac vice*)
    KIERAN P. RINGGENBERG (*pro hac vice*)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11  Attorneys for Oracle USA, Inc., Oracle
    America, Inc., and Oracle International
12  Corporation

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice
application to be submitted*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

13

14

## UNITED STATES DISTRICT COURT

15

### DISTRICT OF NEVADA

16

17   ORACLE USA., INC, a Colorado corporation,
     ORACLE AMERICA, INC., a Delaware
18   corporation; and ORACLE INTERNATIONAL
     CORPORATION, a California corporation,

19                            Plaintiffs,

20         v.

21   RIMINI STREET, INC., a Nevada corporation;
     and SETH RAVIN, an individual,

22                            Defendants.

23

Case No. 2:10-cv-0106-LRH-PAL

**PLAINTIFFS ORACLE USA, INC.,
ORACLE AMERICA, INC., AND
ORACLE INTERNATIONAL
CORPORATION'S MOTION TO
DISMISS FIRST AMENDED
COUNTERCLAIM AND STRIKE
AFFIRMATIVE DEFENSE**

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   SUMMARY OF ALLEGATIONS ....................................................................... 2

      A.    Oracle's Complaint ................................................................................. 2

      B.    Rimini's Counterclaim ........................................................................... 3

III.  ARGUMENT ....................................................................................................... 6

      A.    Rimini's First Cause of Action Fails to State a Claim ........................... 7

            1.    Rimini's Generalized Allegations Cannot Support a Claim ...... 8

            2.    The Only Specified Statements Are Non-Actionable Opinion ................. 9

            3.    Rimini Alleges Conduct Protected by the Litigation Privilege ............... 12

      B.    Rimini Fails to State a Copyright Misuse Defense ............................... 13

            1.    Restrictions on Access and Use of Copyrighted Materials Are Not
                  Misuse of Copyright .................................................................. 13

            2.    Rimini's Misuse Defense Fails Because It Alleges Only
                  Restrictions on Access and Use of Copyrighted Works .......... 16

            3.    Rimini's Conclusory Allegation that Oracle's Licenses
                  "Effectively" Prevent Customers from Using Third-Party Support
                  Fails on the Facts Alleged by Rimini Itself and the Law ......... 19

            4.    Rimini's Copyright Misuse Affirmative Defense Should Be
                  Stricken ..................................................................................... 20

      C.    Rimini Fails to State a Claim Under California's Unfair Competition Law ........ 21

IV.   CONCLUSION .................................................................................................. 23

1

# TABLE OF AUTHORITIES

2

<u>CASES</u>

3

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)................................................................................ 14, 15, 18

4

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*,
5    845 F. Supp. 356 (E.D. Va. 1994)........................................................................... 17, 18, 19

6

*Aetna Cas. & Sur. Co v. Centennial Ins. Co.*,
7    838 F.2d 346 (9th Cir. 1998)............................................................................................ 7

8

*America, Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990)................................................................................... passim

9

*Apple, Inc. v. Psystar Corp.*,
10    673 F. Supp. 2d 931 (N.D. Cal. 2009) .................................................................... passim

*Aronson v. Kinsella*,
11    58 Cal. App. 4th 254 (Cal. Ct. App. 1997) ...................................................................... 13

12

*Ashcroft v. Iqbal*,
13    __ U.S. __, 129 S.Ct. 1937 (2009)......................................................................... passim

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
14    350 F.3d 640 (7th Cir. 2003).......................................................................................... 15

15

*Bell Atl. Corp. v. Twombly*,
16    550 U.S. 544 (2007)...................................................................................................... 6, 8

*Blanck v. Hager*,
17    360 F. Supp. 2d 1137 (D. Nev. 2005) .............................................................................. 8

18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
19    20 Cal. 4th 163 (Cal. 1999)...................................................................................... 21, 22

*Church of Scientology of Cal. v. Flynn*,
20    744 F.2d 694 (9th Cir. 1984)............................................................................................ 8

21

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*,
22    173 F.3d 725 (9th Cir. 1999).......................................................................................... 11

*Cochran v. NYP Holdings, Inc.*,
23    58 F. Supp. 2d 1113 (C.D. Cal. 1998) .............................................................................. 9

24

*ComputerXpress, Inc. v. Jackson*,
25    93 Cal. App. 4th 993 (Cal. Ct. App. 2001) ....................................................................... 9

*Cunningham v. Hamilton County, Ohio*,
26    527 U.S. 198 (1999)....................................................................................................... 16

27

*Dictor v. Creative Mgmt. Servs., LLC*,
    223 P.3d 332 (Nev. 2010) ................................................................................................ 7

28

1

*Dorsey v. Nat'l Enquirer, Inc.*,
    973 F.2d 1431 (9th Cir. 1992)................................................................................. 12

2

*Eldred v. Ashcroft*,
3       537 U.S. 186 (2003) .................................................................................... 14, 19

4   *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
        569 F. Supp. 2d 929 (N.D. Cal. 2008) ...................................................................... 8
5

*Flowers v. Carville*,
6       266 F. Supp. 2d 1245 (D. Nev. 2003) ....................................................................... 9

7   *Fortaleza v. PNC Fin. Servs. Group, Inc.*,
        642 F. Supp. 2d 1012 (N.D. Cal. 2009) .................................................................. 21
8

*Freecycle Network, Inc. v. Oey*,
9       505 F.3d 898 (9th Cir. 2007).................................................................................. 11

10  *Ghawanmeh v. Islamic Saudi Acad.*,
        672 F. Supp. 2d 3 (D.D.C. 2009) ............................................................................. 8
11

*Gillespie v. AST Sportswear, Inc.*,
12      No. 97 Civ.1911, 1998 WL 289681 (S.D.N.Y. June 4, 1998) ............................... 10

13  *In re Napster*,
        191 F. Supp. 2d 1087 (N.D. Cal. 2002) .................................................................. 15
14

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
15      12 F. Supp.2d 1035 (C.D. Cal. 1998) ....................................................................... 7

16  *Jacobson v. Schwarzenegger*,
        357 F. Supp. 2d 1198 (C.D. Cal. 2004) ................................................................ 8, 9
17

*Kearns v. Ford Motor Co.*,
18      567 F.3d 1120 (9th Cir. 2009)................................................................................. 22

19  *Khoury v. Maly's of Cal., Inc.*,
        14 Cal. App. 4th 612 (Cal. Ct. App. 1993) ............................................................ 21
20

*Knievel v. ESPN*,
21      393 F.3d 1068 (9th Cir. 2005).................................................................................. 4

22  *Mann v. Quality Old Time Servs., Inc.*,
        120 Cal. App. 4th 90 (Cal. Ct. App. 2004) .............................................................. 7
23

*Mazer v. Stein*,
24      347 U.S. 201 (1954)................................................................................................ 19

25  *MDY Industries, LLC v. Blizzard Entm't Inc.*,
        No. CV-06-2555, 2008 WL 2757357 (D. Ariz. Jul. 14, 2008) ............................. 16
26

27  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
        454 F. Supp. 2d 966 (C.D. Cal. 2006) ................................................................... 14
28

*Microsoft Corp. v. BEC Computer Co.*,
   818 F. Supp. 1313 (C.D. Cal. 1992).................................................................. 16

*Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*,
   123 F. Supp. 2d 945 (W.D.N.C. 2000) ......................................................... 16, 21

*Microsoft Corp. v. Yokohama Telecom Corp.*,
   993 F. Supp. 782 (C.D. Cal. 1998)............................................................... 12, 13

*Milkovich v. Lorain Journal Co.*,
   497 U.S. (1990) ........................................................................................... 9

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004)........................................................................ 22

*Multimedia Patent Trust v. Microsoft Corp.*,
   525 F. Supp. 2d 1200 (S.D. Cal. 2007) ...................................................... 20

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995)........................................................................ 9

*Pegasus v. Reno Newspapers, Inc.*,
   57 P.3d 82 (Nev. 2002) ................................................................................ 9

*Pope v. Motel 6*,
   114 P.3d 277 (Nev. 2005) ............................................................................ 7

*Republic Tobacco L.P. v. North Atl. Trading Co.*,
   No. 06-C-2738, 2007 WL 1424093 (N.D. Ill. May 10, 2007) ............................... 10

*Rodriguez v. Panayiotou*,
   314 F.3d 979 (9th Cir. 2002)...................................................................... 9, 11

*Rubio v. Capital One Bank (USA), N.A.*,
   572 F. Supp. 2d 1157 (C.D. Cal. 2008) ...................................................... 22

*Saldate v. Wilshire Credit Corp.*,
   ___ F.R.D.___, No. CV-F-09-2089-LJO-SMS,  2010 WL 582069
   (E.D. Cal. Feb. 12, 2010) ............................................................................ 21

*Scott v. Solano County Health & Soc. Servs. Dep't*,
   459 F. Supp. 2d 959 (E.D. Cal. 2006)........................................................ 8

*Silberg v. Anderson*,
   50 Cal. 3d 205 (Cal. 1990) ......................................................................... 12

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) .......................................................... 8

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006)....................................................................... 13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007)....................................................................... 22

*Taus v. Loftus,*
   40 Cal. 4th 683 (2007) ............................................................................... 7

*Ticketmaster LLC v. RMG Techs.,Inc.,*
   536 F. Supp. 2d 1191 ................................................................................. 22

*Triad Systems Corp.  v. Southeastern Express Co.,*
   64 F.3d 1330 (9th Cir. 1995)............................................................... 16, 17

*Uline, Inc. v. JIT Packaging, Inc.,*
   437 F. Supp. 2d 793 (N.D. Ill. 2006) ...................................................... 10

*UMG Recordings, Inc. v. MP3.com, Inc.,*
   92 F. Supp. 2d 349 (S.D.N.Y. 2000)....................................................... 14

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003)................................................................. 22

*Weisbuch v. County of Los Angeles,*
   119 F.3d 778 (9th Cir. 1997).................................................................. 20

*Wyshak v. City Nat'l Bank,*
   607 F.2d 824 (9th Cir. 1979).................................................................. 20

*ZL Techns. Inc. v. Gartner Inc.,*
   ___ F. Supp. 2d ___, No. CV 09-02393, 2010 WL 1801582
   (N.D. Cal. May 3, 2010) ..................................................................... 9, 10

RULES

Fed. R Civ. P. 9 ........................................................................................ 22

Fed. R. Civ. P. 12 .................................................................................. 1, 20

Fed. R. Civ. P. 8 ............................................................................... 6, 8, 20

STATUTES

17 U.S.C. § 106................................................................................... 13, 18

Cal. Bus. & Prof. Code § 17200 ....................................................... 1, 5, 21

Cal. Civil Code § 47................................................................................. 12

1

**PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSE**

2

3      Plaintiffs Oracle USA, Inc. ("Oracle USA"), Oracle America, Inc. ("Oracle America")

4   and Oracle International Corporation ("OIC") (together "Oracle" or "Plaintiffs") file this motion

5   pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)  to dismiss the First Amended

6   Counterclaim of Rimini Street, Inc. ("Rimini"), asserting claims of (1) defamation, business

7   disparagement and trade libel; (2) declaratory relief as to copyright misuse; and (3) violation of

8   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  Plaintiffs also move

9   pursuant to Rule 12(f) to strike Rimini's fourth affirmative defense of copyright misuse.

10   **I.      INTRODUCTION**

11      Rimini has asserted three counterclaims.  Oracle moved to dismiss those counterclaims,

12   and Rimini responded by filing its First Amended Counterclaim, adding new allegations in an

13   attempt to rectify the shortcomings identified in Oracle's first motion to dismiss.[1]  Despite taking

14   the opportunity to amend, Rimini has not cured the flaws in its counterclaims, and they should be

15   dismissed without leave to further amend.

16      In support of Rimini's first claim, which alleges defamation and trade libel, Rimini

17   identifies only four specific alleged defamatory statements.  One of those statements indisputably

18   was made after this lawsuit began, and indeed after Rimini filed its counterclaims.  Because that

19   statement merely reports to the press what Oracle asserts in this lawsuit, it is subject to the

20   litigation privilege and cannot be the basis for a claim.  The only other specific bases for

21   Rimini's claim are (1) an alleged statement that Rimini's "business model was presently

22   unsustainable and that Rimini would not still be in business in two years"; (2) an alleged

23   statement that "Oracle had information that, when disclosed, would put Rimini Street out of

24   business"; and (3) an alleged "insinuation" that Rimini practices are illegal.  (CC ¶¶ 46-47.)   As

25   _____

26   [1] Citations to Oracle's Amended Complaint and to the Answer to Oracle's First Amended
   Complaint and First Amended Counterclaim are in the form of (AC ¶ __) and (CC ¶ __)
27   respectively.

28

1    a matter of law, the statements Rimini alleges are merely opinion and cannot form the basis of a

2    claim.

3       Rimini's second claim seeks declaratory relief on the affirmative defense that Oracle

4    misused its copyrights.  Rimini does not allege that Oracle has prevented Rimini from

5    developing any new work or product.  Nor does Rimini allege that Oracle requires its customers

6    to agree not to do business with Rimini.  Instead, the only conduct that Rimini alleges is that

7    Oracle limits access to and use of Oracle's copyrighted works.  As a matter of law, that is not

8    copyright misuse.  Further, Rimini asserts that Oracle's exercise of its statutory rights

9    "effectively" prevents Rimini and other service providers from winning over Oracle customers.

10    Not only is such a claim contrary to settled law, but Rimini alleges no facts to support it.

11    Moreover, the facts that Rimini does allege – such as the assertion that hundreds of customers

12    have already "made the switch to Rimini" – are flatly contrary to any conclusion that Oracle's

13    terms of use "effectively" prevent customers from switching from Oracle to Rimini.  For these

14    same reasons, Rimini's affirmative defense of copyright misuse should be stricken as well.

15       Rimini's third claim, for violation of California's Unfair Competition Law, rests entirely

16    on the same allegations of supposed defamatory insinuations and of copyright "misuse."  For the

17    reasons stated above, Rimini has failed to plead any defamatory conduct and has failed to plead

18    copyright misuse, and thus the Unfair Competition Law claim also must also fail.

19    **II.     SUMMARY OF ALLEGATIONS**

20       **A.     Oracle's Complaint**

21       Oracle is the world's largest enterprise software company.  (AC ¶ 25.)  Oracle earns

22    revenue by licensing software to businesses and by providing support services, among other

23    things.  (*Id.*)  Customers purchasing Oracle support services receive access to software support

24    materials, such as software patches, bug fixes, documentation, and updates, as well as technical

25    assistance.  (*Id.* ¶ 5.)  Rimini holds itself out as a competitor to Oracle in providing support to

26    companies that license certain Oracle enterprise software applications.  (*Id.* ¶¶ 34-35.)

27       Oracle asserts in this action copyright infringement and other claims against Rimini and

28    its founder and CEO, Seth Ravin.  Rimini's business is built on systematic theft of Oracle's

1    intellectual property, including illegal downloading of Oracle's copyrighted software and support

2    materials.  (*Id.* ¶ 5.)  Rimini typically logs on to Oracle's password-protected technical support

3    websites using a customer's credentials, then downloads Oracle material in excess of the

4    customer's authorization under its license agreement; Rimini has admitted to downloading "tens

5    of thousand files for a single customer."  (*Id.* ¶¶ 39-48, 57-60; CC ¶ 26.)  Rimini also acquires

6    copies of its customers' licensed Oracle enterprise applications software, makes illegal copies of

7    this software, and uses those copies in various illegal ways to offer low-cost support and induce

8    Oracle's customers to cancel their support contracts with Oracle in favor of Rimini. (AC ¶¶ 9,

9    33-38; 75-79.)

10   Rimini is Mr. Ravin's second illegal business.  His last venture, TomorrowNow, provided

11   the same types of support services as Rimini.  TomorrowNow was purchased by one of Oracle's

12   major competitors, SAP AG ("SAP").  SAP eventually shut down TomorrowNow and admitted

13   that during Mr. Ravin's management, TomorrowNow engaged in illegal copying of Oracle's

14   intellectual property and illegally accessed Oracle's computer systems.  (*Id.* ¶¶ 10-11, 49-50.)

15   **B.      Rimini's Counterclaim**

16   Rimini's counterclaim largely makes one point:  Rimini denies the allegations of Oracle's

17   Complaint, and Rimini will "aggressively defend" against Oracle's claims.  (CC ¶ 8; *see also id.*

18   ¶¶ 2-8.)  Rimini makes its defense stridently, going so far as to accuse Oracle of asserting

19   "malicious" and "knowingly false" claims.  (*Id.* ¶¶ 1-2.)

20   Rimini follows these assertions with paragraphs that read remarkably like Rimini's

21   marketing materials – alleging that "[h]undreds of Fortune 500, mid market, small and public

22   sector organizations around the world have already made the switch to Rimini," that Rimini is

23   Oracle's "fastest-growing" and "[p]rimary competition for after-market support," that Rimini is

24   "threatening Oracle's market control and pricing power," and that Rimini supposedly is able to

25   offer better service than Oracle at half the price.  (*Id.* ¶¶ 10-19, 31-36.)

26   Oracle disputes Rimini Street's allegations that its success is the product of anything other

27   than its unlawful conduct and, at the appropriate time, will prove the allegations of its Amended

28   Complaint – that Rimini's growth and low prices have been based on its illegal copying of

ORACLE'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

1    Oracle's intellectual property and other wrongful acts.

2        Rimini further says that it has "counterclaimed herein so as to end Oracle's five year

3    campaign of illegal anticompetitive tactics," (*id.* ¶ 8), but when it comes time to back up its

4    rhetoric with substance, it fails to plead facts sufficient to state any claims.

5        Rimini alleges three causes of action.  The first is for "defamation, business

6    disparagement, and trade libel."  (*Id.* ¶¶ 43-58.)  In support of this claim, Rimini makes reference

7    to a number of supposed "defamatory statements," but does not attempt to provide particulars –

8    who made them, to whom, or the substance of what was said – with only four exceptions.

9    (CC ¶¶ 44-48.)

10       First, Rimini quotes press articles that, in turn, quote Oracle spokesperson Deborah

11    Hellinger's statements to the press.  (CC ¶ 45.)  These articles are incorporated by reference into

12    Rimini's counterclaim and are therefore properly considered on a motion to dismiss.  *See Knievel*

13    *v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  What the articles show is that Rimini proclaimed

14    the filing of its Counterclaim to the press, the press sought a response from Oracle, and Ms.

15    Hellinger responded to those media requests by providing a statement by e-mail.  As the press

16    accounts show, Ms. Hellinger responded by saying that Oracle "is committed to customer choice

17    and vigorous competition, but draws the line with any company, big or small, that steals its

18    intellectual property," and that "The massive theft that Rimini and Mr. Ravin engaged in is not

19    healthy competition.  We will prove this in court."  (Declaration of Kieran Ringgenberg Ex. A.;

20    *see also id.* Ex. B.)

21       Second, Rimini alleges that Juan Jones of Oracle told one potential Rimini customer in

22    the "Spring of 2010" that "Rimini Street's business model was presently unsustainable and that

23    Rimini Street would not still be in business in two years."  (CC ¶ 46.)

24       Third, Rimini alleges that, in the winter of 2010, unspecified "Oracle executives" met

25    with executives from the CD Group and stated that "Oracle had information that, when

26    disclosed, would put Rimini Street out of business."  (CC ¶ 47.)

27       Fourth, Rimini alleges that, "in approximately March of 2009," an unidentified "Oracle

28    representative" contacted an industry analyst and made unspecified statements "insinuating that

1    Rimini Street's business practices were illegal."  (CC ¶ 48.)

2          Rimini asserts the supposed statements were "false" (*id.* ¶¶ 49-50) and then goes on to

3    make a number of allegations aimed to show that certain of Rimini's practices were legal.  (*Id.* ¶¶

4    51-56.)  Rimini also alleges that Oracle is aware Rimini was behaving lawfully because, in

5    substance, Rimini told Oracle so, and because Rimini supposedly offered to permit a third party

6    to audit unspecified practices.  (*Id.* ¶ 57.)

7          Rimini second claim is for declaratory relief based on the affirmative defense of

8    copyright misuse.  Rimini makes no claim, however, that Oracle has attempted to extend

9    copyright protection to materials that are not subject to copyright protection.  Rimini concedes

10   that Oracle's distribution of Software and Support Materials via its websites are subject to

11   "browser-wrap" or "click-wrap" agreements, and alleges that Oracle "has attempted" to use the

12   "design of its support website" and the agreements to "interfere with a customer's ability to

13   select a support vendor other than Oracle."  (*Id.* ¶ 62.)  However, Rimini alleges only two

14   specific acts that arguably relate to its copyrights.  First, it alleges that Oracle has prohibited the

15   use of "automated tools" to download "significant volumes" of materials from Oracle's website

16   (*id.* ¶ 64); that is to say, Rimini complains that Rimini cannot copy Oracle's intellectual property

17   as easily as Rimini would like.  Second, Rimini also alleges that Oracle "prohibits access to and

18   download of support materials unless such access or download 'is in furtherance of the

19   relationship between customer and Oracle,'" (*id.*), which Rimini says represents Oracle's

20   "systemic use of anticompetitive tactics to try and maintain a stranglehold over its customers by

21   effectively requiring them to either continue purchasing after-market support only from Oracle or

22   forego critical support materials to which they are entitled and for which they have already paid."

23   (*Id.*)  Rimini alleges that the provision "gives Oracle a substantial and unfair advantage over its

24   support and maintenance competitors."  (*Id.* ¶ 66.)  Rimini does not allege any facts explaining

25   how, in light of the alleged "systematic" measures that "effectively require[]" customers to

26   purchase support only from Oracle, "[h]undreds" of customers have nonetheless "made the

27   switch" to Rimini.  (*Id.* ¶¶ 10, 64.)

28

1       Rimini's third cause of action is for violation of California's Unfair Competition Law,

2   Cal. Bus. & Prof. Code § 17200.  Rimini contends that Oracle engaged in "fraudulent business

3   practices" based on allegations that "Oracle caused false and disparaging allegations to be

4   published and republished by Oracle and its agents." (CC ¶ 71.)  But Rimini does not identify

5   what these supposed allegations were.  (*Id.*)  Although Rimini further alleges that "Oracle has

6   also employed unlawful and/or fraudulent business practices in its dealings with industry

7   analysts, reporters and Rimini Street's customers and potential customers" (*id.* ¶ 72), it does not

8   allege any facts regarding what any of those practices might be.  The most Rimini alleges is that

9   "Oracle has provided [unspecified] false and misleading information about Rimini Street to

10  customers with which Rimini Street had established a potential business relationship."  (*Id.*)

11  Nothing in Rimini's third cause of action goes substantively beyond anything in its first two

12  causes of action.

13  **III.    ARGUMENT**

14      Under Rule 8, a pleading may survive a motion to dismiss only if, taking all well-pleaded

15  factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on

16  its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v.*

17  *Twombly*, 550 U.S. 544, 570 (2007)).  The Court applies a two-step approach to determine the

18  validity of claims or counterclaims.  *Id.* at 1950.  First, the Court must identify and disregard any

19  "allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951.

20  Allegations in this category include any "legal conclusion couched as a factual allegation" and

21  threadbare, formulaic "recitals of the elements of a cause of action, supported by mere

22  conclusory statements." *Id*. at 1949-50.  Second, the Court must evaluate any well-pleaded

23  allegations – that is, those that are not disregarded under the first step of the test – and

24  "determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.

25      The Supreme Court explained the plausibility standard as follows:

26          A claim has facial plausibility when the plaintiff pleads factual
            content that allows the court to draw the reasonable inference that
27          the defendant is liable for the misconduct alleged.  The plausibility
            standard is not akin to a "probability requirement," but it asks for
28          more than a sheer possibility that a defendant has acted unlawfully.

1
2

> Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

3   *Id.* at 1949 (internal citations omitted).

4   **A.      Rimini's First Cause of Action Fails to State a Claim**

5   Rimini's first cause of action, for "defamation, business disparagement, and trade libel,"

6   should be dismissed.  Rimini conflates two distinct torts: defamation and trade libel (also known

7   as business or product "disparagement").[2]  Rimini also does not specify whether it asserts that

8   California state law or Nevada state law applies.  Regardless of which label properly applies or

9   which state's law applies,[3] Rimini must plead facts that establish the publication of a false

10   statement of fact.  *See Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir.

11   1998) (California trade libel); *Taus v. Loftus,* 40 Cal. 4th 683, 720 (2007) (California

12   defamation); *Clark County*, 213 P.3d at 504 (Nevada trade libel); *Pope v. Motel 6*, 114 P.3d 277,

13   282 (Nev. 2005) (Nevada defamation).

14   Rimini's claim fails.  First, Rimini's general allegations of unspecified "defamatory

15   statements" fail as a matter of law because Rimini must allege the substance of particular alleged

16   ──────────────────────

17   [2] Rimini's counterclaim does not reveal which cause of action it intends to assert.  To the
18   extent Rimini asserts trade libel, it fails to plead special damages, which are an element that must be pled with specificity under Rule 9(g).  *See Isuzu Motors Ltd. v. Consumers Union of U.S.,*
19   *Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).  A "bare allegation of the amount of pecuniary loss is insufficient" for pleading a trade libel claim.  *Id.*  Under California law, Rimini must
20   "identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Servs., Inc.*, 120 Cal. App. 4th 90, 109 (Cal. Ct. App. 2004); *Isuzu*
21   *Motors*, 12 F. Supp. 2d at 1047.  Under Nevada law, Rimini must allege facts showing a "general
22   business decline" that is the "result of the disparaging statements and the plaintiff must eliminate other potential causes."  *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496,
23   505 (Nev. 2009).  Here, Rimini merely alleges:  "On information and belief, Oracle's false and disparaging statements regarding Rimini Street's business have directly led to economic loss on
24   the part of Rimini Street through specific loss of sales, as well as a general decline in the growth of Rimini Street's business."  (CC ¶ 58.)  This conclusory allegation fails as a matter of law.

25
26   [3] Nevada conflict-of-laws analysis may result in different bodies of law applying to the
27   claim and various defenses.  *Dictor v. Creative Mgmt. Servs.*, *LLC*, 223 P.3d 332, 335-36 & n.5 (Nev. 2010).  This memorandum cites both California and Nevada authority and shows that
Rimini's counterclaims fail under any body of law.

28

1  statements.  Second, although Rimini attempts to allege four specific statements, none of them

2  supports a claim because each of the alleged statements is non-actionable opinion.  In addition, at

3  least one of the four statements – Oracle's repetition to the press of its position in this lawsuit –

4  is absolutely protected by the litigation privilege.

5           **1.**       **Rimini's Generalized Allegations Cannot Support a Claim**

6        To state a claim, Rimini must plead the substance of the allegedly defamatory statement.

7  Even before the Supreme Court added bite to the Rule 8 pleading standard in *Twombly* and

8  *Iqbal,* federal cases applying California law consistently held that "[t]he words constituting a

9  libel or slander must be specifically identified, if not pleaded verbatim."  *Silicon Knights, Inc. v.*

10  *Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (internal citation omitted);

11  *accord Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) ("Even under

12  liberal federal pleading standards, general allegations of the defamatory statements which do not

13  identify the substance of what was said are insufficient.") (internal citation omitted); *see also*

14  *Scott v. Solano County Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 973 (E.D. Cal. 2006).

15  The same – or higher – demands are made of California trade libel in federal court.  *First*

16  *Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 937-38 (N.D.

17  Cal. 2008).[4]  And the cases applying Nevada law are in accord.  *See Blanck v. Hager*, 360 F.

18  Supp. 2d 1137, 1160 (D. Nev. 2005) (requiring plaintiff to "allege the specific statements

19  constituting defamation").[5]

20        While Rimini's Counterclaim makes reference to unspecified "defamatory statements"

21  

22      [4] Federal pleading standards govern this case, but the state standard "is highly relevant"
23  to determining whether a false statement is adequately pled.  *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 n.2 (9th Cir. 1984).

24      [5] Moreover, following the clarification in *Twombly*, 550 U.S. at 570, and *Iqbal*, 129 S. Ct.
25  at 1949, that a complaint must plead facts showing that a claim is "plausible," it is clear that any defamation or trade libel claim in federal court must plead the substance of the allegedly
26  wrongful statement:  "Without any information whatsoever about the actual words that were allegedly used, neither the Court nor defendants can assess whether plaintiff has stated a
27  plausible claim for relief sufficient to support an inference of liability."  *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 20 (D.D.C. 2009).

28  

ORACLE'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

1   and "incendiary and unfounded allegations," these general allegations cannot support a claim

2   because they fail to identify the substance of the allegedly defamatory statements.  *See, e.g.*,

3   *Jacobson*, 357 F. Supp. 2d at 1215 ("because the plaintiff fails to identify and state the substance

4   of the allegedly defamatory statement, the defamation claim is insufficient").  In recognition of

5   this, Rimini makes a futile attempt to allege specific defamatory statements.  But its reliance on

6   these alleged statements fails as a matter of law as well.

7              **2.      The Only Specified Statements Are Non-Actionable Opinion**

8              Each of the alleged statements actually identified by Rimini suffers from a fatal flaw: it

9   reflects opinions, not facts.  Pure opinion is protected by the First Amendment and cannot form

10  the basis for a defamation or trade libel claim.  *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1,

11  18-19 (1990); *Partington v. Bugliosi*, 56 F.3d 1147, 1152-53 (9th Cir. 1995); *see also*

12  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010-11 (Cal. Ct. App. 2001) ("Since

13  mere opinions cannot by definition be false statements of fact, opinions will not support a cause

14  of action for trade libel."); *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002)

15  ("statements of opinion as opposed to statements of fact are not actionable") (citation omitted).

16             The issue is properly resolved on the pleadings because "whether an allegedly

17  defamatory statement constitutes fact or opinion is a question of law for the court to decide."

18  *Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002).  "To defeat the motion to dismiss,

19  plaintiff must show that the statement is reasonably capable of sustaining a defamatory meaning,

20  and is not comment within the ambit of the First Amendment."  *Cochran v. NYP Holdings, Inc.*,

21  58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998) (Wardlaw, J.), *aff'd*, 210 F.3d 1036 (9th Cir. 2000)

22  (adopting district court opinion).  "In determining whether a statement is actionable, 'the court

23  must ask 'whether a reasonable person would be likely to understand the remark as an expression

24  of the source's opinion or as a statement of existing fact.'"  *Flowers v. Carville*, 266 F. Supp. 2d

25  1245, 1251-52 (D. Nev. 2003) (quoting *Pegasus*, 57 P.3d at 88); *see also ZL Techns. Inc. v.*

26  *Gartner Inc.*, ___ F. Supp. 2d ___, No. CV 09-02393, 2010 WL 1801582, at *10-*11 (N.D. Cal.

27  May 3, 2010) (granting motion to dismiss because alleged defamatory statements were pure

28

1  opinion).[6]

2       As shown below, each of the alleged statements on which Rimini bases its counterclaim

3  is either (or both) (i) a prediction of the future or (ii) a legal conclusion expressed by a non-

4  lawyer.  Both types of statements are non-actionable opinions as a matter of law.

5                   **a.**      **Predictions of the Future**

6       Rimini alleges predictions of the future which are, necessarily, opinion.  For example, in

7  *Uline, Inc. v. JIT Packaging, Inc.*, 437 F. Supp. 2d 793, 803 (N.D. Ill. 2006), the court analyzed a

8  representation that defendant JIT "was in or was about to be in financial trouble," and held this

9  statement non-actionable as a matter of law.  The court reasoned that the statement was "an

10  opinion as to JIT's future financial status, and is therefore not actionable as defamation since a

11  prediction of future events can neither be true nor false." *Id.*; *accord Republic Tobacco L.P. v.

12  North Atl. Trading Co.*, No. 06-C-2738, 2007 WL 1424093, at *12 (N.D. Ill. May 10, 2007)

13  (similar); *see also Gillespie v. AST Sportswear, Inc.*, No. 97 Civ. 1911, 1998 WL 289681, at *3

14  (S.D.N.Y. June 4, 1998) ("[A]ny prediction of the outcome of their prospective relationship had

15  to have been speculative rather than factual.  There is no possibility of determining whether the

16  comment is true or false.").

17       Here, Rimini alleges that Oracle representatives asserted that "Rimini Street's business

18  model was presently unsustainable and that Rimini Street would not still be in business in two

19  years," (CC ¶ 46) and that "Oracle had information that, when disclosed, would put Rimini Street

20  out of business."  (CC ¶ 47.)  A statement that Rimini will not survive two years in the future, or

21  will go out of business on the occurrence of a future event, is a prediction of something that has

22  _____

23      [6] While objective facts implied by statements of opinion may, in some circumstances,
24  give rise to a claim, here the opinion statements alleged by Rimini do not imply any specific
objective fact.  Thus, they cannot form the basis for a claim.  *See ZL Techns.*, 2010 WL 1801582
25  at *11 (granting motion to dismiss where opinion statements "do not imply the assertion of
specific *objective* facts, they are not actionable – even though they undeniably rest upon a large
26  body of specific yet undisclosed facts") (emphasis in original).  Rimini fails to even allege any
specific, objective fact that it claims the alleged statements implied, such as particular Rimini
27  business practices that infringed Oracle's copyrights or rendered Rimini's business
unsustainable.

28

ORACLE'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

1  not yet happened, which "can neither be true nor false." *Uline*, 437 F. Supp. 2d at 803.  And a

2  statement that Rimini's business is "presently unsustainable" is likewise a prediction regarding

3  the future of Rimini's business; it cannot mean anything other than the speaker's opinion about

4  what the future holds.  Rimini alleges that the statement about sustainability "was presented . . .

5  as assertions of actual fact," (CC ¶ 46), but this bare legal conclusion does not make it so.  That

6  which has not yet occurred cannot be a fact.

7                          **b.      Legal Conclusions by Non-Lawyers**

8            Rimini also attempts to portray expressions of the law as defamatory, but such alleged

9  statements by a non-lawyer are non-actionable opinion as a matter of law.  For example, in

10  *Rodriguez*, 314 F.3d at 981-82, the plaintiff, a police officer, sued musician George Michael after

11  Michael suggested that plaintiff had entrapped him.  The court rejected that claim, holding that

12  Michael's comments "constitute his interpretation of the law. . . . [A]s a layperson, Michael's

13  allegations of entrapment cannot constitute defamation under California law." *Id.* at 986; *see*

14  *also Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) (assertion that defendant

15  "lacked trademark rights . . . cannot be considered a false statement of fact")*; Coastal Abstract*

16  *Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731-32 (9th Cir. 1999) (rejecting claim

17  based on statement that plaintiff was acting illegally by operating without a license because

18  "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction,

19  statements by laypersons that purport to interpret the meaning of a statute or regulation are

20  opinion statements, and not statements of fact.")

21            Here, Rimini's counterclaim rests on allegations that Oracle representatives have accused

22  Rimini of violating Oracle's intellectual property rights.  (*E.g.*, CC ¶¶ 45 ("'massive theft' of

23  Oracle's intellectual property"); *id.* ¶ 48 ("allegations of illegality").)  Rimini does not allege that

24  any of the statements were made by lawyers.  Just as George Michael's out-of-court allegation of

25  entrapment "constitutes his interpretation of the law" and "cannot constitute defamation,"

26  *Rodriguez,* 314 F.3d at 986, the purported allegations that Rimini infringed Oracle's intellectual

27  property likewise constitute the speakers' interpretation of the law and cannot constitute

28  defamation.

1             **3.**       **Rimini Alleges Conduct Protected by the Litigation Privilege**

2        Relatedly, Rimini alleges conduct that is also protected by the litigation privilege.  The

3 privilege is absolute, and immunizes "participants from liability for torts arising from

4 communications made during judicial proceedings." *Silberg v. Anderson*, 50 Cal. 3d 205, 214

5 (1990) (citing Cal. Civil Code § 47); *accord Clark County*, 213 P.3d at 499, 502 & n.3 (same

6 under Nevada law).  Indeed, this privilege is "the backbone to an effective and smoothly

7 operating judicial system."  *Silberg*, 50 Cal. 3d at 215 (internal citation omitted).   The privilege

8 extends to "fair and true" reports to the media about litigation.  *See Microsoft Corp. v. Yokohama*

9 *Telecom Corp.*, 993 F. Supp. 782, 784-85 (C.D. Cal. 1998) (privilege extends to "a

10 communication to" a "public journal") (quoting Cal. Civ. Code § 47(d)). "In crafting their

11 treatment of the 'fair and true' issue, the courts have recognized the importance of protecting a

12 free and vigorous press."  *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992)

13 (citation omitted).  A "fair and true" statement "need not resolve the merits of the charges or

14 even present the defendant's version of the facts."  *Microsoft,* 993 F. Supp. at 785.  The

15 statement must merely must capture the "gist or sting" of the litigation.  *Dorsey*, 973 F.2d at

16 1436 (citation omitted.)  A statement that "does not produce a different effect on the reader than

17 would reading the complaint" is a "fair and true" report.  *Microsoft,* 993 F. Supp. at 784.

18        Here, Rimini attempts to base a claim on alleged statements by Oracle spokesperson

19 Deborah Hellinger to the press.  As a matter of law, these alleged statements are fair and true

20 reports about this litigation.  (CC ¶ 45.)  The alleged quotation from Ms. Hellinger simply

21 describes Oracle's claim this matter:  "The massive theft that Rimini and Mr. Ravin engaged in

22 is not healthy competition. We will prove this in court."  (Declaration of Kieran Ringgenberg Ex.

23 A.)  Oracle's Complaint alleges that Rimini and Mr. Ravin engaged in "massive theft" of

24 Oracle's intellectual property (AC ¶ 5), which is exactly what Ms. Hellinger is reported to have

25 said.  (CC ¶ 45.)  Reading the press reports would have no different effect than reading the

26 Complaint, and Rimini's claim based on these statements is barred by the litigation privilege.

27

28

1   *E.g.*, *Microsoft*, 993 F. Supp. at 784-85.[7]

2          **B.          Rimini Fails to State a Copyright Misuse Defense**

3          Rimini's second cause of action, which seeks a declaratory judgment as to its affirmative

4   defense of copyright misuse, suffers from two dispositive weaknesses.  First, Rimini fails to

5   allege any conduct that could be copyright misuse because all Rimini alleges is that Oracle

6   restricts copying and use of Oracle's copyrighted works – precisely what the Copyright Act

7   authorizes a copyright holder to do.  Rimini does not allege that Oracle's licenses prevent Rimini

8   from developing any new work or product.  Nor does Rimini allege that Oracle requires its

9   customers to agree to deal only with Oracle.  In the absence of such allegations, the counterclaim

10  does not allege a defense of copyright misuse.  Second, even if Rimini's copyright misuse theory

11  were viable –  and it is not – Rimini alleges only conclusions, not facts, in support of its claim

12  that Oracle's practices "effectively" require customers to purchase support only from Oracle.

13  And those conclusory allegations are inconsistent with Rimini's allegations of its own success in

14  luring Oracle customers to switch to Rimini.

15          **1.          Restrictions on Access and Use of Copyrighted Materials Are Not
                          Misuse of Copyright**

16          The essence of the grant of copyright is the "exclusive right" to exploit the work,

17  including the rights to "reproduce" the work, "distribute copies," and "prepare derivative works

18  based upon the copyrighted work."  17 U.S.C. § 106.  In this way, "copyright law *celebrates* the

19  profit motive, recognizing that the incentive to profit from the exploitation of copyrights will

20  _____

21          [7] Similarly, the *Noerr-Pennington* doctrine derives from the First Amendment's

22  guarantee of the right to petition, and holds that "those who petition any department of the
    government for redress are generally immune" from liability for those acts.  *Sosa v. DIRECTV,*

23  *Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  The litigation privilege and the *Noerr-Pennington*
    doctrine also extend to communications outside of litigation but closely related to it, such as pre-

24  litigation demand letters.  *See, e.g.*, *Sosa*, 437 F.3d at 936-37 (affirming dismissal of claims
    based *Noerr-Pennington* protections for pre-litigation communications); *Aronson v. Kinsella*, 58

25  Cal. App. 4th 254, 261-68 (Cal. Ct. App. 1997) (applying California litigation privilege to
    protect pre-litigation communications); *Clark County*, 213 P.3d at 499, 502 (applying Nevada

26  litigation privilege to protect pre-litigation communications).  To the extent Rimini attempts to
    base its claim on the Complaint or such pre-litigation communications, it is also barred.  *See,*

27  *e.g.*, *Sosa*, 437 F.3d at 940-42 (affirming dismissal of claims based on conduct protected by
    *Noerr-Pennington* where claimant failed to plead any applicable exception).

28

1    redound to the public benefit by resulting in the proliferation of knowledge." *Eldred v. Ashcroft*,

2    537 U.S. 186, 212 n.18 (2003) (citation omitted) (emphasis in original).

3         The equitable defense of copyright misuse "prevents copyright holders from leveraging

4    their limited monopoly to allow them control of areas outside the monopoly." *A&M Records,*

5    *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  By contrast, it is not misuse to

6    exercise the "exclusive rights of copyright holder," including by "'refusing to license a

7    copyrighted work or by doing so only on terms that the copyright owner finds acceptable.'" *Id.*

8    at 1027 (quoting *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y.

9    2000)); *accord Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 997

10   (C.D. Cal. 2006) ("a copyright is not improperly expanded simply because the owner has

11   exercised his or her power to exclude").

12        In particular, misuse has been found where a copyright holder (1) unreasonably restricts

13   the *development* of a new, non-infringing work or a competing product, or (2) explicitly and

14   unreasonably prohibits licensees from *using* competing products or requires licensees to use non-

15   copyrighted works.[8]  *See, e.g.*, *Practice Mgmt. Info. Corp. v. American Med. Ass'n*, 121 F.3d

16   516, 521 (9th Cir. 1997) ("Conditioning the license on [licensee's] promise not to use

17   competitor's products constituted a misuse of the copyright."); *Lasercomb*, 911 F.2d at 976-79

18   (license barred licensee from developing competing products for ninety-nine years).[9]

19   ───────────────────

20        [8] Even where a license contains such a restriction, some courts will find misuse only if
     the restriction also "undermine[s] the Constitution's goal of promoting invention and creative

21   expression." *Grokster,* 454 F. Supp. 2d at 995.  This is because license restrictions are misuse
     only if they are "violative of the public policy *embodied in a grant of copyright*," *Lasercomb*

22   *America, Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990) (emphasis supplied), not simply
     because they may be violative of some general concept of "public policy."  *See Grokster*, 454 F.

23   Supp. 2d at 995 (holding that "[t]here has to be a sufficient nexus between the alleged anti-
     competitive leveraging and the policy of the copyright laws").  Rimini has not alleged that

24   Oracle's licenses impair its ability to invent or create; it simply alleges that the licenses make it
     more difficult for Rimini to provide service to Oracle customers in competition with Oracle.

25        [9] The Fourth Circuit in *Lasercomb, id.* at 978, was the first court of appeals decision to

26   recognize copyright misuse; the Ninth, Third, Fifth, and Seventh Circuits have since followed
     suit.  *Grokster*, 454 F. Supp. 2d at 994-95 (citing cases).  The Third, Fourth, Fifth and Ninth

27   Circuits follow *Lasercomb*'s approach, which asks whether the copyright holder has used the
     copyright in a manner "violative of the public policy embodied in the grant of a copyright."

28                                                          (Footnote Continued on Next Page.)

1    For example, in *In re Napster*, 191 F. Supp. 2d 1087, 1106 (N.D. Cal. 2002), several

2    record companies formed a joint venture, MusicNet, to offer digital music licenses for their

3    works.  MusicNet offered Napster a license containing a restriction which prohibited Napster

4    from obtaining music from any other sources, including through a period of outright contractual

5    exclusivity.  As the court explained, "[t]he critical issue is that MusicNet binds Napster to obtain

6    licenses from MusicNet and not its competitors." *Id.* at 1107.  The court permitted Napster to

7    proceed on a theory that, by explicitly restricting Napster's ability to acquire music from other

8    licensors, MusicNet had impermissibly extended its copyrights to control the licensing of music

9    created and copyrighted by others.

10    On the other hand, a license that does not prevent the creation of new works or products

11    and that controls only the access to or use of the copyrighted product cannot be the basis for a

12    misuse defense, even if infringers might find it easier to compete against the copyright holder in

13    the absence of those restrictions.  For example, in *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d

14    931, 933 (N.D. Cal. 2009), Apple's licenses permitted its Mac OS X software to be used only on

15    Apple computers, and prohibited use on computers sold by Psystar (which were designed and

16    sold to be used with Apple software).  Although this restriction made it more difficult for Psystar

17    to sell computers in competition with Apple, the court rejected a misuse defense:  "Apple has not

18    prohibited purchasers of Mac OS X from *using* competitor's products.  Rather, Apple has simply

19    prohibited purchasers from using Mac OS X *on* competitor's products." *Id.* at 940 (emphasis in

20    original).  This was well within Apple's statutory rights, and therefore not misuse.  *Id.*; *see also*

21    *A&M Records*, 239 F.3d at 1027 (no copyright misuse where defendants failed to show that

22    "plaintiffs seek to control areas outside of their grant of monopoly").

23    Thus, courts "have summarily rejected the copyright abuse defense where the copyright

24    ──────────────
(Footnote Continued from Previous Page.)

25    *Lasercomb*, 911 F.2d at 978.  The Seventh Circuit, by contrast, has looked to whether the
26    copyright holder has violated antitrust laws and, in dicta, has also considered adopting an abuse-
of-process standard, where an attempt to bring a copyright infringement suit to protect an
27    uncopyrightable product would be misuse.  *Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
350 F.3d 640, 647 (7th Cir. 2003).

28

1  owner did not prohibit its licensees from either using or independently developing a competing

2  product." *Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945,

3  955-56 (W.D.N.C. 2000) (granting motion to strike affirmative defense of copyright misuse); *see*

4  *also MDY Industries, LLC v. Blizzard Entm't Inc.*, No. CV-06-2555, 2008 WL 2757357, at *7

5  (D. Ariz. Jul. 14, 2008) ("while [plaintiff] has limited the license . . . there is no evidence

6  [plaintiff] has sought to bar third parties from developing competing games"); *Psystar*, 673 F.

7  Supp. 2d at 940 ("Apple has not prohibited others from independently developing and using their

8  own operating systems.  Thus, Apple did not violate the public policy underlying copyright law

9  or engage in copyright misuse."); *Microsoft Corp. v. BEC Computer Co.*, 818 F. Supp. 1313,

10  1316-17 (C.D. Cal. 1992) (striking affirmative defense of copyright misuse where the copyright

11  owner did not prohibit development or use of competing products); *compare, e.g.*, *Practice*

12  *Mgmt.*, 121 F.3d at 520-21 (finding misuse where license required customer to forgo use of all

13  competing products).

14         **2.**      **Rimini's Misuse Defense Fails Because It Alleges Only Restrictions on Access and Use of Copyrighted Works**

15  Applying this rule, the Ninth Circuit and other courts have rejected copyright misuse

16  claims closely analogous to Rimini's claim here.  In *Triad Systems Corp. v. Southeastern*

17  *Express Co.*, 64 F.3d 1330 (9th Cir. 1995), *overruled on other grounds by Cunningham v.*

18  *Hamilton County, Ohio*, 527 U.S. 198, 210 (1999), the third-party computer software and

19  hardware service provider Southeastern accused Triad of copyright misuse.  The court rejected

20  that claim because Triad "did not attempt to prohibit Southeastern or any other [third-party

21  service provider] from developing its own service software to compete with Triad," but merely

22  prevented the defendant from using Triad's software to "get[] a free ride" when servicing

23  systems sold by Triad.  *Triad*, 64 F.3d at 1337.[10]

24

25  ───────────────

26  [10] *Triad* preceded the Ninth Circuit's formal adoption of the copyright misuse defense in *Practice Management*.  However, *Practice Management* cited *Triad* approvingly on this point,

27  and *Practice Management*, *Triad*, and *BEC Computer* all apply and follow the legal standard articulated in *Lasercomb*.

28

1     Moreover, in rejecting the copyright misuse defense, the *Triad* court followed the

2 decision in *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp.

3 356 (E.D. Va. 1994). Defendant MAI made and licensed computers and software. Its license

4 agreements' restriction against making the software "available to others" effectively prohibited

5 competitive service providers from even *turning on* the computers at issue, making it entirely

6 impossible for those competitive providers to service customers' computers without violating

7 MAI's copyrights. *Id.* at 361 n.6, 366-67. Nonetheless, MAI's license agreements were not

8 copyright misuse. The licenses did not "prevent the alleged infringer from developing

9 competing software," *id.* at 367, and instead represented MAI's valid attempt "to protect the

10 rights accruing to it as the holder of valid copyrights in its software," that is, restrictions on

11 copying and use. *Id.* at 370; *see also Psystar*, 673 F. Supp. 2d at 940 (rejecting misuse claim

12 based on license that prevented software from being used on competitor's computers).

13     This line of cases – including *Triad*, *Advanced Computer*, *and Psystar* – shows why

14 Rimini's misuse claim fails as a matter of law. In each of those cases, the copyright holder had

15 in place restrictions on infringing access and use of copyrighted works which did not prohibit the

16 development of competitive works, and which did not expressly prohibit a licensee from doing

17 business with a competitor. Nonetheless, in each case, the restrictions had the *effect* of making it

18 harder – if not impossible – to compete against the copyright holder. *Triad*, 64 F.3d at 1337

19 (infringer offered competing service dependent on copied software); *Advanced Computer*, 845 F.

20 Supp. at 370 (infringer offered competing service dependent on copied software); *see also*

21 *Psystar*, 673 F. Supp. 2d at 940 (infringer offered competing hardware product dependent on

22 copied software). And, in each case, the misuse defense was rejected.

23     Rimini's copyright misuse allegations fail for the same reason. Each of the two license

24 restrictions alleged by Rimini is well within Oracle's statutory rights as a copyright holder. First,

25 the alleged limits on massive automated downloads of Oracle Software and Support Materials

26 (CC ¶ 64) falls squarely within the scope of Oracle's rights "to control reproduction and

27 distribution of . . . copyrighted works, exclusive rights of copyright holders." *A&M Records*,

28 239 F.3d at 1027 (citing 17 U.S.C. § 106). Second, the alleged limitation of downloads to those

1    in furtherance of the customer's relationship with Oracle is, as the counterclaim acknowledges,

2    merely a restriction on customers' "access to and download of support materials," (CC ¶ 64), and

3    thus falls within Oracle's rights to control distribution of its copyrighted material.

4         Rimini's assertion that these alleged restrictions "effectively" prevent customers from

5    using third-party support providers like Rimini, (*id.* ¶ 64), cannot salvage Rimini's claim.

6    Rimini has not alleged any term of an Oracle agreement that bars Rimini from developing

7    competing creative works or requires customers to agree not to do business with Rimini.  Indeed,

8    Rimini *admits* that Oracle does not prohibit the use or development of a competing product or

9    service.  (*Id.* ¶ 62.)  Thus, regardless of the supposed "effect" of Oracle's alleged restrictions on

10   Rimini's ability to provide a service to Oracle's customers, Oracle has not engaged in misuse.

11   *E.g.*, *Psystar*, 673 F. Supp. 2d at 940 ("Apple's agreement simply attempts to control the use of

12   Apple's own software – an area that is the *focus* of the copyright") (emphasis in original);

13   *Advanced Computer*, 845 F. Supp. at 370 ("MAI has not incorporated overbroad noncompetition

14   clauses in its licensing agreements. . . . MAI is simply attempting to protect the rights accruing to

15   it as the holder of valid copyrights in its software.").

16        Sound reasons support the settled rule barring a misuse defense based only on a license's

17   "effect" on a third party's ability to compete.  Rimini's theory is that it is "effectively" unable to

18   offer an attractive service in competition with Oracle without unlicensed access to Oracle's

19   copyrighted material.  Rimini wants unlicensed access to Oracle's works so that Rimini can use

20   Oracle's own works to offer a service to Oracle's customers at cut rates.  Rimini's inability to

21   compete without unfettered access to Oracle's copyrighted works simply reflects the massive

22   investment Oracle has made in its works, the resulting appeal of those works, and Rimini's

23   failure to develop and to offer an adequate substitute of its own.

24   Copyright policy does not protect those like Rimini who, unburdened by the expense of creating

25   a copyrighted work, seek to use that same work to offer a service on the cheap.  In *Advanced*

26   *Computer*, the court refused to permit low-cost providers of technical support for MAI

27   computers to use MAI's support software to provide their competing service.  Rejecting the low-

28   cost providers' misuse defense, the court held that it was not "contrary to public policy that MAI

1  charges higher servicing fees than plaintiffs" because MAI had "made an investment" in its

2  software which it may "legitimately seek to recoup."  *Id.* at 367; *see also Psystar*, 673 F. Supp.

3  2d at 930-40 (no misuse where Apple license effectively prohibited competitor from selling

4  lower-cost computers that used Apple software).

5      The "economic philosophy" of copyright "is the conviction that encouragement of

6  individual effort by personal gain is the best way to advance public welfare through the talents of

7  authors and inventors."  *Mazer v. Stein*, 347 U.S. 201, 219 (1954); *see also Eldred*, 537 U.S. at

8  212 n.18 ("[C]opyright law serves public ends by providing individuals with an incentive to

9  pursue private ones.").  It would stand that policy (and the Copyright Act itself) on its head to

10 use the very success and appeal of Oracle's copyrighted works, and Rimini's very failure to

11 develop its own alternatives, as the basis to declare that Oracle cannot enforce its copyrights.  It

12 is Rimini's theory, not Oracle's conduct, that is truly violative of the public policy embodied in a

13 grant of copyright.

14          **3.    Rimini's Conclusory Allegation that Oracle's Licenses "Effectively"
               Prevent Customers from Using Third-Party Support Fails on the**
15          **Facts Alleged by Rimini Itself and the Law**

16     Rimini's  copyright  misuse  counterclaim  also  fails  because  it  is  based  entirely  on

17 conclusory allegations, is disproved by Rimini's own allegations elsewhere in the Counterclaim,

18 and therefore fails to "plausibly suggest an entitlement to relief."  *Iqbal*, 129 S. Ct. at 1951.

19     As discussed above, Rimini does not allege that Oracle *explicitly* requires its customers to

20 forgo third-party support, but instead asserts that Oracle is "effectively requiring [customers]

21 to . . . continue purchasing after-market support only from Oracle."  (CC ¶ 64.)  But Rimini

22 alleges absolutely no facts to show that its ability to provide competing service has in fact been

23 "effectively" restrained.  On a motion to dismiss, the court need not accept a "legal conclusion

24 couched as a factual allegation" or threadbare, formulaic "recitals of the elements of a cause of

25 action, supported by mere conclusory statements."  *Iqbal*, 129 S. Ct. at 1949-50.  Lacking

26 "factual content that allows the court to draw the reasonable inference that the defendant is liable

27 for the misconduct alleged," the copyright misuse allegations fail to satisfy Rule 8 and must be

28 dismissed.  *Id.* at 1949.

1    Moreover, Rimini alleges facts that undermine its conclusory allegations.  Rimini alleges

2  that it does not infringe Oracle's copyrights, and that it need not infringe Oracle's copyrights in

3  order to offer a better service at half the price.  (CC ¶¶ 2, 8, 50.)  Rimini goes so far as to argue

4  that it would be "malicious" and "baseless" to assert that Rimini has infringed Oracle's

5  copyrights.  (CC ¶¶ 2, 8, 50.)   Rimini further claims that "[h]undreds" of customers have

6  "already made the switch to Rimini," and that it has enjoyed tremendous growth in terms of

7  revenues and customers.  (CC ¶¶ 10-11, 13-18.)

8    If, as Rimini alleges, it does not infringe Oracle's copyrights, and if, as Rimini alleges, it

9  has succeeded in convincing hundreds of customers to switch to Rimini – despite Oracle's

10  licensing practices – then Oracle's licensing practices cannot be "effectively" preventing

11  customers from switching to Rimini.  (*Id.* ¶ 64.)  Simply put, Rimini's own allegations make not

12  only implausible but impossible the claim that Oracle has "effectively" foreclosed customers

13  from switching to Rimini.  This requires dismissal of Rimini's claim.  *See Weisbuch v. County of*

14  *Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("A plaintiff may plead herself out of court.

15  If the pleadings establish facts compelling a decision one way, that is as good as if depositions

16  and other expensively obtained evidence on summary judgment establishes the identical facts.")

17  (internal citation omitted).

18         **4.      Rimini's Copyright Misuse Affirmative Defense Should Be Stricken**

19    Rimini also pleads copyright misuse as its Fourth Affirmative Defense.  Affirmative

20  defenses are governed by the same pleading standard as complaints.  *Wyshak v. City Nat'l Bank*,

21  607 F.2d 824, 827 (9th Cir. 1979).  An affirmative defense may be stricken pursuant to Rule

22  12(f) "when the defense is insufficient as a matter of law."  *Multimedia Patent Trust v. Microsoft*

23  *Corp.*, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007).

24    In asserting its misuse affirmative defense, Rimini expressly relies on the allegations of

25  the Counterclaim. (Answer at 24) ("[a]s explained by Rimini Street's Second Counterclaim").

26  As shown above, the counterclaim for declaratory judgment on the defense of misuse fails as a

27  matter of law.  For the same reasons, the Fourth Affirmative Defense should be stricken as well.

28  *See, e.g.*, *Computer Support*, 123 F. Supp. 2d at 955-56 (granting motion to strike misuse

1  defense).

2  **C.      Rimini Fails to State a Claim Under California's Unfair Competition Law**

3  Finally, Rimini brings suit under California's Unfair Competition Law ("UCL"), Cal.

4  Bus. & Prof. Code § 17200 *et seq.*  The UCL provides a cause of action for business practices

5  that are (i) unfair, (ii) fraudulent, and/or (iii) unlawful, but a claimant must "'state with

6  reasonable particularity the facts supporting the statutory elements of the violation.'"  *Saldate v.*

7  *Wilshire Credit Corp.*, ___ F.R.D. ___, No. CV-F-09-2089-LJO-SMS, 2010 WL 582069, at *14

8  (E.D. Cal. Feb. 12, 2010) (quoting *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619

9  (Cal. Ct. App. 1993); *accord Fortaleza v. PNC Fin. Servs. Group, Inc.*, 642 F. Supp. 2d 1012,

10  1019 (N.D. Cal. 2009).  Rimini makes no effort to state a claim under the "unfair" prong, and its

11  allegations are insufficient to state a claim under the "fraudulent" and "unlawful" prongs.[11]

12  First, Rimini fails to adequately allege "fraudulent" conduct.  Rimini's UCL claim asserts

13  that Oracle has made unspecified "false and misleading statements," provided unspecified "false

14  and misleading information about Rimini Street" to potential customers, and has caused

15  unspecified "false and disparaging allegations to be published and republished."  (CC ¶ 71.)

16  These allegations fall short of the specificity required to assert a claim.

17  Because Rimini's UCL claim is based on allegedly false representations, the claim must

18  satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford*

19  *Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

20  1097, 1105-06 (9th Cir. 2003).  Rule 9(b) requires the pleader to allege the "time, place, and

21  specific content of the false representations as well as the identities of the parties to the

22  misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citation

23  omitted).  No statement specifically referenced in Rimini's third cause of action is alleged with

24  ────────────────────

25  [11] The Counterclaim asserts only "unlawful and/or fraudulent," and not "unfair," conduct.
(CC ¶¶ 70, 72.)  Indeed, in competitor cases such as this one, conduct is "unfair" under the UCL
26  only if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of
one of those laws because its effects are comparable to or the same as a violation of the law, or
27  otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los*
*Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. 1999).  Rimini alleges nothing like that.

28

1    anything approaching this specificity, and thus none supports a claim. *See Kearns*, 567 F.3d at

2    1126-27 (affirming dismissal of UCL claim based on "concealment" because "general pleadings

3    do not satisfy the heightened pleading requirements of Rule 9(b)").

4         To the extent Rimini's "fraudulent" conduct claim is based on the alleged representations

5    underlying its defamation claim, such claim fails for the same reasons as the defamation claim.

6    As explained above, the alleged statements referenced in Rimini's defamation claim are non-

7    actionable opinion, *see* Section III.B.2; *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th

8    Cir. 2004) (expressions of opinion, including misrepresentations of law, are not actionable as

9    fraud), and are protected by the litigation privilege, *see* Section III.B.3.

10        Second, Rimini does not adequately allege any "unlawful" conduct. The "unlawful"

11   prong of the UCL "borrows violations of other laws and treats them as unlawful practices that

12   the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180.

13   Rimini fails to identify any specific statute or regulation that it contends has been violated. To

14   the extent Rimini attempts to base an unlawful claim on its tort or copyright misuse claims, its

15   UCL claim fails for the same reasons as the tort and copyright misuse defense (as shown above

16   in Part III.A and III.B). *See Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1168

17   (C.D. Cal. 2008) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot

18   state a UCL claim either."). Moreover, alleged copyright misuse in particular cannot be a basis

19   for a determination that conduct is "unlawful" because copyright misuse is merely an affirmative

20   defense (as to which Rimini itself seeks merely a declaration), not a basis for an independent

21   claim. *See Ticketmaster LLC v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1198 (C.D. Cal. 2008).

22        For all of these reasons, Rimini fails to state a claim under any prong of the UCL, and its

23   third cause of action should be dismissed.

24

25

26

27

28

ORACLE'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

1   IV.   **CONCLUSION**

2        For the foregoing reasons, Rimini's three counterclaims should be dismissed and its

3   Fourth Affirmative Defense stricken.

4

5   DATED:  June 10, 2010                    BOIES SCHILLER & FLEXNER LLP

6

7                                            By: /s/ Kieran P. Ringgenberg

8                                                Kieran P. Ringgenberg
                                                 Attorneys for Plaintiffs

9                                                Oracle USA, Inc., Oracle America, Inc.,
                                                 and Oracle International Corp.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on the 10th day of June, 2010, I electronically transmitted the

3   foregoing **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND**

4   **ORACLE INTERNATIONAL CORPORATION'S MOTION TO DISMISS**

5   **COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSE** to the Clerk's Office using

6   the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in

7   this matter; all counsel being registered to receive Electronic Filing.

8

9                  By:  /s/ Catherine T. Duong

                    An employee of Boies, Schiller & Flexner LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28