1  SHOOK, HARDY & BACON LLP
   B. Trent Webb, Esq. *(pro hac vice)*
2  Eric Buresh, Esq. *(pro hac vice)*
   2555 Grand Boulevard
3  Kansas City, Missouri 64108-2613
   Telephone: (816) 474-6550
4  Facsimile: (816) 421-5547
   bwebb@shb.com
5  eburesh@shb.com

6  Robert H. Reckers, Esq. *(pro hac vice)*
   600 Travis Street, Suite 1600
7  Houston, Texas  77002
   Telephone: (713) 227-8008
8  Facsimile: (731) 227-9508
   rreckers@shb.com

9

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

*Attorneys for Defendants*
*RIMINI STREET, INC. and SETH RAVIN*

10

11

12

13                    UNITED STATES DISTRICT COURT
14                       DISTRICT OF NEVADA

15

16  ORACLE USA, INC., a Colorado corporation;
    ORACLE AMERICA, INC., a Delaware
    corporation; and ORACLE INTERNATIONAL
17  CORPORATION, a California corporation,

18  Plaintiffs,

19  v.

20  RIMINI STREET, INC., a Nevada corporation;
    SETH RAVIN, an individual,

21
    Defendants.
22

Case No. 2:10-cv-0106-LRH-PAL

**DEFENDANT RIMINI STREET'S
OPPOSITION TO ORACLE'S
MOTION TO DISMISS FIRST
AMENDED COUNTERCLAIMS AND
STRIKE AFFIRMATIVE DEFENSE**

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

I.    INTRODUCTION ............................................................................................ 1

3

II.   LEGAL STANDARD....................................................................................... 4

4

III.  ARGUMENT .................................................................................................... 4

5

    A.   Rimini Street has Stated a Cause of Action for Defamation/Trade Libel.............. 4

6

        1.   Oracle's Defamatory Statements Are Factual Or, At a Minimum, Imply Provably False Facts......................................................................... 5

7

8

        2.   Oracle's Defamatory Statements Are Not Mere Predictions of the Future or Legal Conclusions by Layperson. ................................ 6

9

        3.   The Litigation Privilege Does Not Apply to Ms. Hellinger's Statements. ..................................................................................... 8

10

11

    B.   Rimini Street has Stated a Claim for Copyright Misuse....................................... 10

12

        1.   Rimini Street has Pled Facts Demonstrating a Pattern of Conduct by Oracle in Using its Copyrights to Secure a Monopoly on Uncopyrighted Support Services. .............................................. 11

13

14

        2.   Misuse Occurs When a Copyright Holder Attempts to Use its Copyrights to Gain a Monopoly Outside of Copyright. .......................... 13

15

        3.   Oracle's Challenge to the Plausibility of Rimini Street's Factual Allegations is Fatally Flawed.................................................... 18

16

17

    C.   Rimini Street has Stated a Claim for Violations of California's Unfair Competition Law. ................................................................... 20

18

IV.   CONCLUSION................................................................................................ 21

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITY</u>

**Cases**

3

*A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004 ............................................................3, 15, 17

4

*Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.,* 845 F. Supp. 356.....18, 23

5

*Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F. 3d 772 ...........................................13, 16, 17

6

*Apple, Inc. v. Psystar Corp.,* 673 F. Supp. 2d 931.........................................................16, 18, 23

7

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 ...............................................................................................4

8

*Assessment Techs. Of WI, LLC v. WIREdata, Inc.,* 350 F.3d 640 ...............................................21

9

*Balzaga v. Fox News Network, LLC,* 173 Cal. App. 4th 1325.......................................................11

10

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544............................................................................4, 5

11

*Berlenbach v. Anderson and Thompson Ski Co.,* 329 F. 2d 782 ..................................................19

12

*Campbell v. Acuff-Rose Music, Inc.,* 510 US 569........................................................................21

13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163.............................24

14

*Chamberlain Group v. Skylink Tech., Inc.,* 381 F. 3d 1178....................................................15, 20

15

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.,* 173 F.3d 725 .................................9

16

*Cochran v. NYP Holdings, Inc.,* 58 F. Supp. 2d 1113 ..................................................................6

17

*Data Gen. Corp. v. Grumman Systems Support Corp.,* 36 F. 3d 1147...................................19, 20

18

*Doe v. United States,* 58 F.3d 494 ...............................................................................................5

19

*Douglas v. Janis,* 43 Cal. App. 3d 931 ........................................................................................7

20

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451 ............................................20

21

*Eldred v. Ashcroft,* 537 U.S. 186, 123 S.Ct. 769 .......................................................................21

22

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048..............................................................5

23

*Erickson v. Pardus,* 551 U.S. 89 .................................................................................................4

24

*Freecycle Network, Inc. v. Oey,* 505 F.3d 898............................................................................9

25

*Gardner v. Martino,* 563 F.3d 981..........................................................................................6, 8

26

*Ileto v. Glock, Inc.,* 349 F.3d 1191 .............................................................................................4

27

28

*Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650 ...................................................20

*Jett v. Sicroff,* 401 F.3d 1101 .........................................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134........................................................24

*Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970.............................................................. passim

*Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945...................16

*Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F. Supp. 782...................................................11

*Moulton v. Eugene Burger Management Corp.*, 2009 WL 2004373.............................................23

*Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087........................................................... passim

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 02-C-2523, 2004 U.S. Dist.
   LEXIS 19732 ...................................................................................................19, 20, 22

*Peck*, 295 BR 353, 361 (9th Cir. 2003)...........................................................................................7

*Practice Mgmt. Info. Corp. v. American Med. Ass'n*, 121 F.3d 516 ...........................................16

*Rodriguez vs. Panayiotou*, 314 F.3d 979 ............................................................................ passim

*Rothman v. Jackson*, 49 Cal. App. 4th 1134......................................................................1, 10, 11, 12

*Sonntag v. Balaam, et al., 3:07-CV-311-RCJ(RAM).*, 2009 WL 3416504..................................23

*Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330 .........................................18, 23

*Underwager v. Channel 9 Australia*, 69 F.3d 361 .........................................................................6

*Unelko Corp. v. Rooney*, 912 F.2d 1049........................................................................................6

*United States v. Microsoft Corp.*, 253 F. 3d 34 .........................................................................13

*Video Pipeline v. Buena Vista Home Entertainment*, 342 F. 3d 191 .........................................21

*Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179.......................................................................7

**Statutes**

Cal. Civ. Code § 47...........................................................................................................................9

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200...........................................................21

**Other Authorities**

Barbara Darrow, *Oracle Fees for Maintenance and Support Under Fire*, IT Channel
    News, March 13, 2009,
    http://searchitchannel.techtarget.com/news/article/0,289142,sid96_gci1350771,00.html........11

**Rules**

Federal Rule of Civil Procedure Rule 12.....................................................................................4, 19

RIMINI STREET INC.'S OPPOSITION TO PLAINTIFFS MOTION TO DISMISS

1

**DEFENDANT RIMINI STREET'S OPPOSITION TO ORACLE'S MOTION TO DISMISS**

2        Defendant Rimini Street Inc. ("Rimini Street") files its Opposition to Plaintiffs Oracle USA,

3   Inc., Oracle America, Inc., and Oracle International Corporation (together "Oracle" or "Plaintiffs")

4   Motion to Dismiss First Amended Counterclaim and Strike Affirmative Defense.  *See* Doc No. 67.

5   **I.    INTRODUCTION**

6        Through its counterclaims, Rimini Street seeks to end Oracle's illegal efforts to forestall legal

7   competition and to damage Rimini Street's business through false statements and disparagement.

8   Specifically, Rimini Street has alleged claims for defamation and trade libel, copyright misuse, and

9   unfair competition.  While Oracle has moved to dismiss each of Rimini Street's counterclaims,

10  Oracle's motion is premised on incorrect standards of law and mischaracterizations of Rimini

11  Street's factual contentions. Oracle's motion should be denied.

12       With respect to Rimini's claim for defamation and trade libel, Rimini Street has pled four

13  specific acts of defamation.  Any one of these acts independently supports a defamation claim.  First,

14  an Oracle spokesperson, Deborah Hellinger, made a statement to the press accusing Rimini Street

15  and its CEO, Mr. Seth Ravin, of engaging in "massive theft" of Oracle's intellectual property, stating

16  that Oracle "is committed to customer choice and vigorous competition, but draws the line with any

17  company, big or small, that steals its intellectual property," and that "[t]he massive theft that Rimini

18  and Mr. Ravin engaged in is not healthy competition."  Doc. No. 67 at 10.  Though Oracle argues

19  that Ms. Hellinger's statements are protected by the litigation privilege, the Ninth Circuit has made

20  clear that "the litigation privilege did not extend to 'litigating in the press.'" *Rodriguez vs.*

21  *Panayiotou*, 314 F.3d 979, 988 (9th Cir. 2002) (quoting *Rothman v. Jackson*, 49 Cal. App. 4th 1134,

22  57 Cal. Rptr. 2d 284, 294 (Ct. App. 1996)).  Ms. Hellinger's statements were not privileged and

23  constitute defamation.

24       Second, in approximately March of 2009, an Oracle representative contacted a senior analyst,

25  Pat Phelan, for an influential analyst firm, Gartner Research, and made statements alleging that

26  Rimini Street's business practices were illegal, including its practices employed when providing

27  maintenance and support for Oracle-branded software.  Much like Ms. Hellinger's "massive theft"

28  allegations, Oracle's comments to Ms. Phelan portrayed Rimini Street as an "illegal" operation, as a

matter of fact.  Such statements are defamatory, not "legal conclusions by non-lawyers" as Oracle attempts to argue.

Third, Juan C. Jones, Oracle's Senior Vice President North America Support Services, approached a potential Rimini Street customer, National Grid, in the Spring of 2010 and made defamatory statements regarding Rimini Street, stating that Rimini Street's business model is unsustainable.  Likewise, in the Winter of 2010, Oracle executives met with various executives of the CD Group, a consulting firm.  During the meeting, Oracle executives made defamatory and false statements regarding Rimini Street, including statements that Oracle possessed information that, when disclosed, would put Rimini Street out of business.  These statements, alleging specific and damaging information in Oracle's possession, directly imply provably false assertions of actual fact. Such statements constitute defamation.

Given the four independent acts of defamation set forth by Rimini Street's pleadings, Oracle concedes that Rimini Street has alleged specific instances of defamation that meet the *Twombly* pleading standard. *See* Doc. No. 67 at 10, 15. Unable to challenge the sufficiency of Rimini Street's pleadings, Oracle contends the statements reflect pure opinion, and thus cannot provide a basis for a defamation claim, as a matter of law.  But statements such as that Rimini Street is engaged in "massive theft" and "steals" intellectual property are provably false factual assertions on their face. Moreover, it is well-settled that opinions which assume or imply false facts are defamatory. Oracle's statements, at the very least, imply false facts; Rimini Street has therefore stated a claim for defamation and trade libel.

With respect to Rimini Street's copyright misuse counterclaim and affirmative defense, Oracle advances an incorrect and narrow view of the law of misuse.  Oracle then mischaracterizes Rimini Street's factual allegations to fit this incorrect standard.  Once these flaws are corrected, it is clear that Rimini Street has properly set forth a claim for copyright misuse.

Specifically, Oracle attempts to focus the misuse inquiry upon whether the relevant licenses expressly prohibit competition or the development of competing works.  But the law of misuse is not so limited, and instead asks whether copyrights have been used in a manner violative of public policy.  This determination typically rests on whether the copyright holder has attempted to use its

copyrights to gain a monopoly outside of that provided by copyright: "The defense of copyright misuse forbids a copyright holder from 'secur[ing] an exclusive right or limited monopoly not granted by the Copyright Office.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F. 3d 1004, 1026 (9th Cir. 2001) (quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977-79 (4th Cir. 1990)). Indeed, courts have found misuse where copyright holders have attempted to use a combination of unduly restrictive license agreements and technological measures to prohibit competition, as Rimini Street has alleged here.

In addition to relying on an incorrect legal standard, Oracle's arguments are also premised on an incorrect statement of Rimini Street's claims:

> Rimini's theory is that it is "effectively" unable to offer an attractive service in competition with Oracle without unlicensed access to Oracle's copyrighted material. Rimini wants unlicensed access to Oracle's works so that Rimini can use Oracle's own works to offer a service to Oracle's customers at cut rates.

Doc. No. 67 at 24. This is incorrect. Rimini Street's misuse claims are not premised on the lack of unlicensed access to Oracle's copyrighted works. Rather, Rimini Street alleges that Oracle has attempted to use technical measures and the terms of various license agreements, including the terms of its "browser-wrap" or "click-wrap" agreements, to maintain a stranglehold over its customers by effectively requiring them to either continue purchasing after-market support only from Oracle or forego critical support materials to which they are entitled and for which they have already paid. It is this attempt to leverage its copyrights with respect to uncopyrighted after-market support services that is copyright misuse.

Oracle also contends that Rimini Street cannot possibly show that Oracle's use of its copyrights is anticompetitive given Rimini Street's success in the marketplace. Doc. No. 67 at 19-20. But this argument rings hollow. Oracle cannot on one hand argue that Rimini Street's success demonstrates the propriety of Oracle's conduct, while at the same time attributing this very success to "illegal activity." *See* Doc. No. 36 at 5 ("Oracle brings this lawsuit to end [Rimini Street's business model] once and for all, stop Rimini Street's illegal activity, and redress the harm that Rimini Street has caused by its illegal conduct."). Rimini Street has pled facts establishing that

1    Oracle has used its copyrights in a manner violative of the public policy, and Oracle's motion to

2    dismiss Rimini Street's misuse claim and affirmative defense should therefore be denied.

3         Finally, Oracle moves to dismiss Rimini Street's third and final counterclaim for violation of

4    California's Unfair Competition Law.   This claim is supported by the allegations of the two

5    preceding counterclaims.   For the reasons stated above, Rimini has sufficiently pled its claims for

6    defamation, trade libel, and copyright misuse.   Thus, Oracle's motion to dismiss Rimini Street's

7    unfair competition claim also fails.

8
## II.     LEGAL STANDARD
9

10        A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) tests the legal

11   sufficiency of the claims alleged in the complaint.   *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200

12   (9th Cir. 2003).   The allegations of the complaint need only to provide "fair notice of what . . . the

13   claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(citing

14   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   The Court takes all allegations of

15   material fact in the complaint as true.  *Erickson*, 551 U.S. at 94; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

16   1950 (2009).  So long as the complaint states "enough facts to state a claim for relief that is plausible

17   on its face," the Court should deny a motion to dismiss.  *Twombly*, 550 U.S. at 547.

18        If a court dismisses a complaint for failure to state a claim, it should grant, "with extreme

19   liberality," leave to amend "unless it determines that the pleading could not possibly be cured by the

20   allegation of other facts."  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Eminence Capital,*

21   *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-1052 (9th Cir. 2003)(internal citations omitted).

22   ## III.    ARGUMENT

23       ### A.     Rimini Street has Stated a Cause of Action for Defamation/Trade Libel.

24        Oracle's motion to dismiss Rimini Street's counterclaim for defamation, business

25   disparagement, and trade libel rests on two grounds.  First, Oracle argues that its statements about

26   Rimini Street are opinions, not facts, and thus cannot form the basis for a defamation claim.   But,

27   Oracle's statements are statements of fact.   Further, it is settled law that opinions which assume or

28   imply false facts are actionable.   Because Oracle's false statements are factual or, at a minimum,

imply false facts, these statement provide a proper basis for Rimini Street's defamation claim. Second, Oracle argues that one of its statements is shielded by the litigation privilege.  But the litigation privilege applies only to statements that are <u>functionally related</u> to a judicial proceeding, or to media reports <u>about</u> a judicial proceeding.  Because Oracle's out-of-court statements had no functional purpose to this litigation and were not media reports about a judicial proceeding, the litigation privilege does not apply.  Oracle's motion to dismiss should be denied.

### 1.    Oracle's Defamatory Statements Are Factual Or, At a Minimum, Imply Provably False Facts.

Arguing that each of its allegedly defamatory statements was pure opinion, Oracle contends these statements are non-actionable as a matter of law.  Oracle's argument is flawed both factually and legally.  First, Oracle's statements are factual.  Furthermore, while it is true that "pure" opinions cannot be defamatory, opinions that reasonably imply false facts may give raise to a defamation claim.  *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998) (citing *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 n. 2 (9th Cir.1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1586, 113 L.Ed.2d 650 (1991)).  To determine whether a statement implies a factual assertion, the totality of the circumstances must be examined.  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).  The Ninth Circuit's totality of the circumstances test considers: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates the impression; and (3) whether the statement in question is susceptible of being proved true or false.  *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009).  When the Ninth Circuit's totality of the circumstances test is applied to the four statements identified in Rimini Street's pleadings, it is clear that these statements are factual or, at a minimum, imply facts susceptible of being proved true or false.

Turning first to Ms. Hellinger's comments to the media, these statements, alleging that Rimini Street engages in "massive theft" and "steals" intellectual property, are factual on their face and provably false.  As they were presented to the media in connection with her role as an Oracle spokesperson, Ms. Hellinger's statements were unquestionably presented as and understood to be

1   assertions of fact, and Oracle does not argue to the contrary.  *See* Doc. No. 67 at 18 (characterizing

2   Ms. Hellinger's statement as a "fair and true" report).

3          With respect to Oracle's comments to Ms. Phelan alleging that Rimini Street's business

4   practices were illegal, these too portrayed Rimini Street as an "illegal" operation, as a matter of fact.

5   Here, Oracle directly accused Rimini Street of illegally stealing its intellectual property, and such an

6   allegation that Rimini Street "is guilty of a crime is libelous on its face."  *Yow v. Nat'l Enquirer,*

7   *Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008) (citations omitted); *In re Peck*, 295 BR 353, 361

8   (9th Cir. 2003) ("Damage to one's reputation is also presumed from a false charge of a crime.");

9   *Douglas v. Janis*, 43 Cal. App. 3d 931, 939 (Cal. Ct. App. 1974) (holding that accusations of theft

10  were defamatory because "[t]he words spoken were understood by the hearer in a slanderous sense,

11  and are actionable.").  Considering the totality of the circumstances in light of Ms. Phelan's role as

12  an industry analyst, Oracle's statements were clearly presented as and understood to be assertions of

13  actual fact and, thus, were defamatory.

14         Regarding Mr. Jones' statement that Rimini Street's business model is unsustainable and

15  Oracle's statements to the CD Group that it possessed information that, when disclosed, would put

16  Rimini Street out of business, these statements too go far beyond pure opinion and directly imply the

17  existence of highly damaging facts.  Because such underlying facts do not exist, Oracle's statements

18  are demonstrably false and provide a proper basis for Rimini Street's defamation claim.  *See Jett v.*

19  *Sicroff*, 401 F.3d 1101, 1105 (9th Cir. 2005) (explaining that defamation may be found when the

20  derogatory "statement is reasonably susceptible of an interpretation which implies a provably false

21  assertion of actual fact.") (citations omitted).[1]  In short, Rimini Street's pleadings identify numerous

22  statements by Oracle that are factual or, at the very least, imply false facts.  Oracle's attempt to cast

23  these statements as merely opinions fails.

                    2.      **Oracle's Defamatory Statements Are Not Mere Predictions of the Future**
24                          **or Legal Conclusions by Layperson.**
25
          Oracle further argues that "each of the alleged statements . . . is either (or both) (i) a
26

---

27  [1] As the Restatement (Second) of Torts § 566, Comment c (1977) explains, a statement that "I think
         C must be an alcoholic" is potentially libelous because a jury might find that it implies that the
28       speaker knew undisclosed facts to justify the statement.

prediction of the future or (ii) a legal conclusion expressed by a non-lawyer."  Doc. No. 67 at 16. But again, the settled rule is that "pure" opinions are protected, while opinions that imply false facts are defamatory.  *Gardner*, 563 F.3d at 986.  "A statement that may imply a false assertion of fact is actionable even if it is couched as a statement of 'opinion.'"  *Gardner*, 563 F.3d at 986.  Thus, forward-looking opinions that imply provably false facts are defamatory.  *Id.*  This sound legal rule prevents evading liability by simply couching defamatory statements as predictions of future events.

Consistent with this rule, Oracle's "predictions" are not pure opinion, but rather are provably false or imply provably false facts.  For example, Oracle's statement that it possessed information that, when disclosed, would put Rimini Street out of business is not merely a prediction, but clearly posits the existence of undisclosed damaging facts.  Therefore, even if it couches its statements as "predictions," Oracle cannot escape liability because these statements imply the existence of provably false facts.

Oracle also argues that the statements-in-question constitute "interpretation of the law" and "cannot constitute defamation."  Doc. No. 67 at 17.  Contrary to Oracle's arguments, one is not shielded from liability merely because she is a layperson and her defamatory statements could be construed as relating to a legal matter.

While pure legal interpretation may not be actionable, false facts associated with the legal interpretation certainly are.  This rule is illustrated by the *Rodriguez* case discussed in Oracle's motion.  *Rodriguez* 314 F.3d at 988.  There, George Michael told the media of a police officer's actions, and then concluded that these actions constituted entrapment.  The court noted that Michael's belief that the actions constituted entrapment could not be defamatory because it was his interpretation of the law, but also held that the underlying factual allegations <u>did</u> provide a basis for a defamation suit.  *Rodriguez*, 314 F. 3d at 986-87.  Oracle's other cited cases are in accord and address purely legal interpretations.  *See, e.g., Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 732 (9th Cir. 1999) ("statements by laypersons that <u>purport to interpret the meaning of a statute or regulation</u> are opinion statements, and not statements of fact.") (emphasis added); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) (quoting the *Coastal Abstract* passage above in finding that defendant's analysis of common law trademark rights was not

factual). For example, the court in *Coastal Abstract* rejected a defamation claim because the "only claim of falsity concerns the statement or suggestion that California's statute applied to the activities of Coastal." *Coastal Abstract*, 173 F.3d at 732. This was purely a question of legal analysis, and therefore not actionable. But the *Costal Abstract* Court took care to note that the statement would have been actionable had the claim of illegality also rested upon a false factual allegation: "Thus the statement that Coastal was operating illegally without a California license might present a triable claim if in fact Coastal had a California license." *Id.*

In contrast to purely legal interpretations, Oracle's assertions that Rimini Street was engaging in massive theft, stealing intellectual property and conducting an illegal business are factual and provably false. Rimini Street has stolen no property, let alone engaged in "massive theft." Oracle's false statements fundamentally rely on assertions of specific acts – namely, that Rimini Street and Mr. Ravin have stolen Oracle intellectual property. These statements were not accompanied by hyperbole or made in exaggerated or unserious settings which would tend to negate their factual implications. These statements are false and actionable.

### 3. The Litigation Privilege Does Not Apply to Ms. Hellinger's Statements.

Oracle also argues that Ms. Hellinger's statements are protected by the litigation privilege as a "fair and true" report to the media about litigation. Doc. No. 67 at 18. A communication is privileged if it is "made in, or in anticipation of, litigation by litigants or other authorized participants to achieve the objects of the litigation, and if the communication has some connection or logical relation to the action." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1145 (Ct. App. 1996). Notably, the logical relation necessary to invoke the litigation privilege is a *functional* relation; that is, the out-of-court communication must serve a functional purpose to the lawsuit:

> [T]he 'connection or logical relation' which a communication must bear to litigation in order for the privilege to apply, is a *functional connection*. That is to say, the communicative act — be it a document filed with the court, a letter between counsel or an oral statement — must function as a necessary or useful step in the litigation process and must serve its purposes.

*Id.* (emphasis in the original); *see Rodriguez v. Panayiotou*, 314 F. 3d 979, 988 (9th Cir. 2002)("in order to meet the 'logical relation' requirement, a communication must have a functional connection

1   to litigation").   While Oracle argues that reading Ms. Hellinger's statements "would have no

2   different effect than reading the Complaint," California courts have expressly rejected this basis for

3   applying the litigation privilege to extra-judicial statements.   Though a logical relation "certainly

4   exists between court pleadings and out-of-court statements that include identical or similar

5   allegations, <u>a 'logical relation' of this kind is not sufficient to invoke the litigation privilege</u>."

6   *Rothman v. Jackson*, 49 Cal. App. 4th at 1145 (emphasis added).   Likewise, though Oracle's

7   "pleadings and out-of-court statements . . . include identical or similar allegations," Ms. Hellinger's

8   out-of-court statements have no functional connection to the litigation and, thus, are not "sufficient

9   to invoke the litigation privilege."  *Id.*

10   A limited litigation privilege also exists for "fair and true" reports to the media about judicial

11   proceedings.   *See* Cal. Civ. Code § 47(d).   This extension of the litigation privilege is narrow and

12   does not extend to a party "litigating in the press."  *Rothman*, 49 Cal. App. 4th at 1149; *Rodriguez*,

13   314 F. 3d at 988.   While Oracle attempts to rely on *Microsoft Corp. v. Yokohama Telecom Corp.*,

14   993 F. Supp. 782 (C.D. Cal. 1998), to support its unwarranted expansion of the litigation privilege,

15   the *Microsoft* case serves only to illustrate the narrow reach of the litigation privileges with respect

16   to extrajudicial statement.   In *Microsoft*, the report-in-question was inarguably a report <u>about</u> a

17   judicial proceeding, and plainly referred to what had occurred in the lawsuit: "The following

18   companies are alleged to have distributed counterfeit Microsoft products to undercover investigators:

19   . . . Yokohama Telecom Corporation, Anaheim."  *Id.* at 784 (quoting the publication-at-issue).   The

20   publication was therefore privileged as a fair and true report about a judicial proceeding.   *See also*

21   *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1337 (Ct. App. 2009) ("an article or

22   broadcast about statements made in the context of a police investigation is privileged and cannot

23   support a defamation claim.").

24   Oracle's statements, in contrast, do not report on what has occurred in a judicial proceeding.

25   Rather, Oracle stated to the press that it "is committed to customer choice and vigorous competition,

26   but draws the line with any company, big or small, that steals its intellectual property," and that

27   "[t]he massive theft that Rimini and Mr. Ravin engaged in is not healthy competition."  Doc. No. 67

28   at 10.  Though Oracle attempts to relate its statements to this litigation for purposes of the litigation

1  privilege, it is well-settled that mere similarity between a defamatory statement and the language of a

2  complaint cannot provide a basis for immunity.  *Rodriguez*, 314 F. 3d at 988 ("'[S]imilarity, or even

3  identity, of subject matter' or content is not alone sufficient to trigger the litigation privilege.")

4  (quoting *Rothman*, 49 Cal. App. 4th at 1146).

5       Oracle attempts to bolster its privilege claim by asserting that Ms. Hellinger later stated, "We

6  will prove this in court."  Doc. No. 67 at 18.  But this assertion does not transform her statements

7  into a fair and true report about a judicial proceeding.  Rather, this statement confirms that her

8  comments are addressed solely to *possible*, <u>future</u> judicial occurrences.  Such forward-looking

9  statements are unquestionably not a report about a judicial proceeding.  As one court explained

10  addressing a similar factual situation, "The statements at issue in this case simply make assertions

11  which the defendants claim they intended in good faith to make again later, in *anticipated* litigation.

12  Obviously, the statements are not reports or communications of judicial proceedings." *Rothman*, 49

13  Cal. App. at 1144 fn. 3 (declining to apply the litigation privilege) (emphasis original).  Though the

14  comments in *Rothman* were made before any litigation had begun, the Court's logic applies equally

15  to Ms. Hellinger's comments.  Her statement that Oracle will prove its allegations in court makes

16  clear that her comments reflected "assertions which the [Plaintiffs] claim they intended in good faith

17  to make again later," and, thus, these comments are not subject to the litigation privilege.  *Id.*  Ms.

18  Hellinger's statements, along with the others identified in Rimini Street's pleadings, contain false

19  assertions of fact, not pure opinion.  Therefore, Oracle's motion to dismiss Rimini Street's

20  defamation and trade libel claim should be denied.

21  **B.**    **Rimini Street has Stated a Claim for Copyright Misuse.**

22       Oracle also moves to dismiss Rimini Street's copyright misuse counterclaim and affirmative

23  defense.  Doc. No. 67 at 19 – 26.  Oracle's motion mischaracterizes both the law of misuse and

24  Rimini Street's factual allegations and, thus, should be denied.  Oracle's misuse arguments are

25  premised on the incorrect assertion that the "only conduct [constituting misuse] that Rimini alleges .

26  . . is that Oracle limits access to and use of Oracle's copyrighted works."  *Id.* at 8.  This is incorrect.

27  As set forth in its pleadings, Rimini Street alleges that Oracle has attempted to use technical

28  measures and the terms of various license agreements, including the terms of its "browser-wrap" or

"click-wrap" agreements, to "maintain a stranglehold over its customers by effectively requiring them to either continue purchasing after-market support only from Oracle or forego critical support materials to which they are entitled and for which they have already paid."  Doc. No. 56 at para. 64. By pleading facts demonstrating that Oracle has used its copyrights to engage in a pattern of activities aimed at securing a monopoly beyond the bounds of its copyrights, Rimini Street has stated a claim for copyright misuse.

1.   **Rimini Street has Pled Facts Demonstrating a Pattern of Conduct by Oracle in Using its Copyrights to Secure a Monopoly on Uncopyrighted Support Services.**

Oracle argues that Rimini Street's copyright misuse claims fail, as a matter of law, because "all Rimini alleges is that Oracle restricts copying and use of its copyrighted works."  Doc. No. 67 at 19.  Rimini's Street's pleading, however, is not so limited.[2]  Rather, Rimini Street's factual allegations establish a pattern of conduct through which Oracle has attempted to use its copyrights to prevent third parties from offering maintenance and support services, "thereby securing for [Oracle] a limited monopoly" with respect to such uncopyrighted after-market support services. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F. 3d 772, 794 (5th Cir. 1999).

In a very lucrative aspect of its business, Oracle offers, for an annual fee, support and maintenance services for the software it licenses to customers.  "Oracle president Safra Catz has repeatedly noted [the] importance [of these annual fees], even telling analysts that customers have no choice but to pay them." Barbara Darrow, *Oracle Fees for Maintenance and Support Under Fire*, IT Channel News, March 13, 2009,  http://searchitchannel.techtarget.com/news/article/0,289142-sid96_gci1350771,00.html.

Reflecting Oracle's insistence that its licensees "have no choice but to pay" Oracle these annual fees, Oracle has attempted to make it impossible for its customers to use their software

---

[2] And even if it were, the copyright act itself is not a justification for abuse. *See United States v. Microsoft Corp.*, 253 F. 3d 34, 63 (D.C. Cir. 2001) (Microsoft "claims an absolute and unfettered right to use its intellectual property as it wishes . . .  That is no more correct than the proposition that use of one's personal property, such as a baseball bat, cannot give rise to tort liability.").

documentation and support materials absent an ongoing support agreement _with Oracle_.  As set forth by Rimini Street's counterclaim:

> Instead of simply providing its customers each of the support files they are entitled to possess under their respective licenses and unexpired Oracle annual support, Oracle requires customers to self-identify and individually download each such file from Oracle's support material web portal.  This portal contains millions of files to sort through . . .

Doc No. 56 at para. 63.  Despite these millions of files, "Oracle provides no assistance to its support customers in the identification of all Oracle Software and Support Materials such customer is entitled to possess and use."  _Id_.  In addition, "Oracle has changed its web site terms to prohibit the use of automated tools that can help an Oracle customer identify and download a significant volume of Oracle Software and Support Materials to which an Oracle licensee and support customer is entitled."  _Id_. at para. 64.  Oracle's actions were not only anticompetitive against Rimini Street, but "also constituted a breach of its license agreements with Oracle clients that have protections against reductions in service rights resulting from changes by Oracle in support terms and conditions."  _Id_. at para. 27.

Further, Oracle's "click-wrap" agreement "includes a provision that prohibits access to and download of support materials unless such access or download 'is in furtherance of the relationship between customer and Oracle.'"  _Id_. at para. 64.  This provision is designed to force Oracle customers to obtain support from Oracle if they want access to the support materials for which they already paid.  This is another example of Oracle's "systematic use of anticompetitive tactics to try and maintain a stranglehold over its customers by effectively requiring them to either continue purchasing after-market support only from Oracle or forego critical support materials to which they are entitled and for which they have already paid."  _Id_. at para. 64.

Contrary to Oracle's argument that "Rimini alleges absolutely no facts to show that its ability to provide competing service has in fact been 'effectively' restrained" (Doc. No. 67 at 25), Rimini Street has identified the specific licensing provisions and technical measures underlying its misuse allegations.  The fact that Oracle adopted most of these polices in direct response to third-party competition only heightens the inference that Oracle's tactics are aimed at leveraging its copyright privileges in a manner "violative of the public policy embodied in the grant of a copyright."

1  *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990).  Indeed, it is normally misuse

2  to leverage copyrights to attempt to obtain an after-market monopoly.  *See Chamberlain Group v.*

3  *Skylink Tech., Inc.*, 381 F. 3d 1178, 1201 (Fed. Cir. 2004)(copyright misuse normally prohibits a

4  company from "leverag[ing] its sales into after-market monopolies."); *In re Napster, Inc. Copyright*

5  *Litig.*, 191 F. Supp. 2d 1087, 1108, 1109, 1112, 1110 (N.D. Cal. 2002) (noting potential antitrust

6  violations underlying misuse claim). By pleading facts demonstrating that Oracle has effected

7  unduly restrictive license agreements and engaged technical means to attempt to create an after-

8  market monopoly with respect to uncopyrighted maintenance and support services, Rimini Street has

9  stated a claim for copyright misuse.

> **2.    Misuse Occurs When a Copyright  Holder Attempts to Use its Copyrights to Gain a Monopoly Outside of Copyright.**

12        Taking an improperly narrow view of the misuse doctrine, Oracle urges that copyright

13  misuse may only occur in two specific circumstances: "where a copyright holder (1) unreasonably

14  restricts the *development* of a new, non-infringing work or a competing product, or (2) explicitly and

15  unreasonably prohibits licensees from *using* competing products or requires licensees to use non-

16  copyrighted works."  Doc. No. 67 at 20 (emphasis in original).  But Oracle does not point to a single

17  case setting forth this supposed standard.  Indeed, Oracle's standard conflicts with a number of cases

18  finding copyright misuse and explaining the standard for such a claim.   Copyright misuse exists

19  where a copyright holder is attempting to "leverag[e] their limited monopoly to allow them control

20  of areas outside the monopoly."  *A&M Records, Inc. v. Napster, Inc.*, 239 F. 3d 1004, 1026 (9th Cir.

21  2001); *see Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir.1990) ("The misuse

22  arises from Lasercomb's attempt to use its copyright in a particular expression ... to control

23  competition in an area outside the copyright.").  The cases relied upon by Oracle are in accord.[3]

---

[3]   *See, e.g., Practice Mgmt. Info. Corp. v. American Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997) ("The terms under which the AMA agreed to license use of the CPT to HCFA gave the AMA a substantial and unfair advantage over its competitors . . . We hold that Practice Management established its misuse defense as a matter of law."); *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 939 (N.D. Cal. 2009) ("The copyright-misuse doctrine 'forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant.'"); *Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945, 955 (W.D.N.C. 2000) (stating "The defense of copyright abuse 'forbids the use of [a] copyright to secure an

1    Oracle also asserts, incorrectly, that misuse requires expressly anticompetitive licensing

2    restrictions.   Doc. No. 67 at 23 (stating that misuse defense is rejected where there is a lack of

3    expressly anticompetitive provision, even where "restrictions had *the effect* of making it harder – if

4    not impossible – to compete against the copyright holder.").   But copyright misuse exists where a

5    license agreement is <u>unduly restrictive</u>.   For instance, a license may be unduly restrictive where it

6    *effectively* prohibits competition, even if it does not contain an <u>expressly</u> anticompetitive provision.

7    *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F. 3d 772, 794 (5th Cir. 1999) ("DSC's assertion

8    that its licensing agreement does not prohibit the independent development of compatible software is

9    simply irrelevant . . . DGI was *effectively* prevented from developing its product, thereby securing

10   for DSC a limited monopoly over its uncopyrighted microprocessor cards.")(emphasis added); *In re*

11   *Napster, Inc. Copyright Litigation*, 191 F. Supp. 2d 1087, 1103 (N.D. Cal. 2002) ("the provision

12   *effectively* grants MusicNet control over which content Napster licenses")(emphasis added).   Again,

13   the dispositive fact is whether the copyright holder has attempted to leverage its copyrights to gain

14   control of an area outside of copyright, whether expressly or effectively.   *A&M Records, Inc. v.*

15   *Napster, Inc.*, 239 F.3d 1004, 1026-27 (9th Cir. 2001)("The misuse defense prevents copyright

16   holders from leveraging their limited monopoly to allow them control of areas outside the monopoly

17   . . . There is no evidence here that plaintiffs seek to control areas outside of their grant of

18   monopoly."); *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990)("The misuse

19   arises from Lasercomb's attempt to use its copyright . . . to control competition in an area outside the

20   copyright.").

21   The *Alcatel* case illustrates that a finding of misuse is not limited to whether a license

22   agreement expressly prohibits competition.   In that case, the relevant license did not prohibit the use

23   or development of other copyrighted works, but rather limited the use <u>of plaintiff's copyrighted</u>

24   <u>software</u> to the plaintiff's hardware.   *Alcatel*, 166 F. 3d at 777 (under the license agreement, "the

25   customers are authorized to use the software only in conjunction with DSC-manufactured

26

27   exclusive right or limited monopoly not granted by the Copyright Office'" in finding that the
     defendants had shown no nexus Microsoft's anticompetitive behavior and the copyrights-at-
28   issue).

equipment."). On these facts, the court had no trouble finding misuse because the license restrictions made it *technically* infeasible to compete:

> [Plaintiff] DSC's assertion that its licensing agreement does not prohibit the independent development of compatible software is simply irrelevant. Despite the presence of some evidence—the testimony of a DSC executive—that DGI could have developed its own software, there was also evidence that it was not technically feasible . . . <u>DGI was *effectively* prevented from developing its product</u>, thereby securing for DSC a limited monopoly over its uncopyrighted microprocessor cards.

*Alcatel*, 166 F. 3d at 777 (emphasis added). As illustrated by the *Alcatel* opinion, whether a license agreement expressly prohibits competition is not the question. The proper question is whether the copyright holder is attempting to use its copyrights to secure a monopoly outside of copyright.

The *Napster* case further illustrates this point. Similar to *Alcatel*, the *Napster* license agreement did not contain a provision expressly prohibiting competition. *In re Napster,* 191 F. Supp. 2d at 1103. But *the effect* of the agreement, examined in light of the practicalities of the music industry, allowed the plaintiffs to impermissibly expand their copyright monopoly:

> The MusicNet provision is non-exclusive. Napster may obtain licenses from any of the record label plaintiffs . . . Despite this theoretical non-exclusivity, <u>the provision *effectively* grants MusicNet control over which content Napster licenses</u> . . . The result is an expansion of the powers of the three MusicNet plaintiffs' copyrights to cover the catalogs of the two non-MusicNet plaintiffs.

*Id.* (emphasis added). The *Napster* Court recognized that misuse depends on whether the *effect* of a license is to impermissibly expand the copyright monopoly. *See id.*

The cases cited by Oracle are in accord. For instance, Oracle cites to *Triad*. *See* Doc. No. 67 at 22 – 23. But *Triad* did not rest on the lack of an expressly anticompetitive provision. Rather, the *Triad* holding relied on the fact that the copyright holder did not attempt to limit competition in any way through its copyright licenses. *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995)("[U]nlike the case of *Lasercomb*, Triad did not attempt to prohibit Southeastern or any other ISO from developing its own service software to compete with Triad.")(citation omitted).[4] Oracle fails to cite a single case holding that an expressly anticompetitive licensing

---

[4] Oracle's other *"Triad"* line of cases are also in accord. *See Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp. 356, 367 (E.D. Va. 1994) (denying misuse defense at summary judgment stage, noting license did not contain "restrictions *designed to prevent* the alleged infringer from developing competing software" and there were no other public policy violations)(emphasis added); *Psystar*, 673 F. Supp. 2d at 933

1   provision is required for a finding of misuse.

2       Consistent with the *Alcatel, Napster* and *Triad* holdings, the proper question is "whether the

3   copyright is being used in a manner violative of the public policy embodied in the grant of a

4   copyright." *Lasercomb*, 911 F.2d at 978; *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 939

5   (N.D. Cal. 2009).   And, as noted, this question turns on whether there has been an attempt to expand

6   the scope of the monopoly afforded by copyright beyond the areas protected by the copyright.

7   *Lasercomb*, 911 F.2d 979 ("The misuse arises from Lasercomb's attempt to use its copyright . . . to

8   control competition in an area outside the copyright."); *see also Data Gen. Corp. v. Grumman*

9   *Systems Support Corp.*, 36 F. 3d 1147, 1169-70 (1st Cir. 1994) (noting that the misuse defense might

10  apply to attempting to use copyright to monopolize a product's service market because "the

11  reasoning of Lasercomb does not turn on the particular type of anti-competitive behavior alleged.");

12  *Berlenbach v. Anderson and Thompson Ski Co.*, 329 F. 2d 782, 783 (9th Cir. 1964) (explaining that

13  tie-in agreements are "contrary to public policy for the reason that such tie-in agreements extend the

14  patent monopoly beyond the scope permitted by the Constitution and the Congress.").   Because

15  Oracle has attempted to leverage its copyrights in such a manner, it has violated the public policy

16  embodied in copyright and committed copyright misuse.

17      Finally, Oracle argues that it has done nothing more than exercise its statutory rights.   Doc.

18  No. 67 at 22.   But where the exercise of statutory rights is coupled with restrictions designed to

19  control areas outside of copyright, it becomes the very essence of copyright misuse.   As the Supreme

20  Court and other courts have often held, "power gained through some natural and legal advantage

21  such as a patent, copyright, or business acumen can give rise to [misuse] liability if 'a seller exploits

22  his dominant position in one market to expand his empire into the next.'" *Ocean Atl. Woodland*

23  *Corp. v. DRH Cambridge Homes, Inc.*, 02-C-2523, 2004 U.S. Dist. LEXIS 19732, at *23-24 (N.D.

24  Ill. Sept. 29, 2004) (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 479

25  n.29 (1992)).   Indeed, courts have found numerous instances of misuse outside of the narrow

26  circumstances Oracle has defined.

27

28      (denying Psystar's summary judgment motion for misuse, explaining that "Apple has not
    prohibited others from independently developing and using their own operating systems.").

For example, courts have noted the possibility of misuse where it was alleged that a copyright holder was improperly using its copyrights to expand its monopoly into uncopyrighted service markets, as Rimini Street has alleged here.  *See Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 659-67 (N.D. Iowa, 2006); *Ocean Atl.*, 2004 U.S. Dist. LEXIS 19732 at 24 ("Defendants argue that Plaintiff is using its ownership of the copyrights to gain an unfair advantage in the real estate market or real estate development market . . . This may very well be. However, additional facts are necessary . . ."); *see also Data Gen. Corp. v. Grumman Systems Support Corp.*, 36 F. 3d 1147, 1169 (1st Cir. 1994) (noting that the misuse defense might apply to attempting to monopolize a product's servicing).  Indeed, courts have noted that it is *generally* misuse to leverage copyrights to attempt to obtain an after-market monopoly.  *Chamberlain Group*, 381 F. 3d at 1201 (copyright misuse normally prohibits a company from "leverage[ing] its sales into after-market monopolies.").  It is also misuse to leverage copyrights to attempt price fixing or other antitrust violations.  *In re Napster*, 191 F. Supp. 2d at 1103 ("Napster has raised serious questions with respect to possible copyright misuse, based on both the MusicNet agreement and plaintiffs' possible antitrust violations in their entry into digital music delivery."); *Lasercomb*, 911 F. 2d at 978 ("[T]he attempted use of a copyright to violate antitrust law probably would give rise to a misuse of copyright defense . . .").  It is likewise misuse to attempt to use copyrights to control uncopyrightable data.  *See Assessment Techs. Of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003)(Posner, J.) (explaining that copyright misuse may occur through "an infringement suit to obtain property protection, here in data, that copyright law clearly does not confer.").  It may also be misuse to use copyrights to control fair uses of copyrighted material.  *See Video Pipeline v. Buena Vista Home Entertainment*, 342 F. 3d 191, 205 (3rd Cir. 2003) ("The fair use doctrine and the refusal to copyright facts and ideas also address applications of copyright protection that would otherwise conflict with a copyright's constitutional goal.") (citing *Eldred v. Ashcroft*, 537 U.S. 186, 123 S.Ct. 769, 789 (2003); *Campbell v. Acuff-Rose Music, Inc.*, 510 US 569, 575 & n.5 (1994)).  In short, misuse may be found in any number of actions where a copyright holder has attempted to leverage copyrights into a monopoly outside of copyright, including where a copyright holder attempts to use

its copyrights to *effectively* prohibit competition as to uncopyrighted services, as Rimini Street has alleged in its counterclaim.

As set forth by Rimini Street's pleadings, Oracle's software licensees are entitled to (and have paid for) important support materials on Oracle's websites, but the copyright restrictions and technical design of these websites makes it impossible for the licensees to identify all the materials to which they are entitled, thereby forcing the licensees to employ *Oracle's* uncopyrightable support services.   Oracle's attempt to prohibit competition is further reflected by its website terms prohibiting use of automated tools: Given the millions of support files, such automated tools represent a viable means for a licensee to receive all the support materials to which it is entitled. Oracle recognized that the ability of its customers to obtain all the support materials to which they were entitled facilitated the use of third-party support.   Accordingly, Oracle attempted to use its copyright license agreements to foreclose that option, i.e., to effectively limit the ability of its customers to utilize third-party support.   Similarly, Oracle's term of use prohibiting "access to and download of support materials unless such access or download 'is in furtherance of the relationship *between customer and Oracle*'" (Doc. No. 56 at para. 64), represents yet another clear example of Oracle's attempt to employ unduly restrictive licensing provisions to effectively prohibit its customers from selecting third-party support.   Third-party support is an area outside of Oracle's copyright protection, and Oracle's attempts to use its license agreements to foreclose competition in this area is misuse.   Oracle's motion to dismiss Rimini Street's copyright misuse claim and defense should be denied.

> **3.   Oracle's Challenge to the Plausibility of Rimini Street's Factual Allegations is Fatally Flawed.**

Though Rimini Street's pleadings demonstrate attempts by Oracle to destroy competition for after-market support services, Oracle resorts to challenging the plausibility of these factual allegations, arguing that "the facts that Rimini does allege – such as the assertion that hundreds of customers have already 'made the switch to Rimini' – are flatly contrary to any conclusion that Oracle's terms of use 'effectively' prevent customers from switching from Oracle to Rimini."   Doc. No. 67 at 8.   This argument is disingenuous.

Oracle alleges that Rimini Street and its employees are thieves carrying out a "corrupt" and "illegal business model." Alleging, *inter alia*, breach of the very contracts underlying Rimini Street's misuse claims, Oracle states that it brought the present suit to stop "once and for all" Rimini Street's illegal activities. Oracle cannot credibly argue that Rimini Street's success demonstrates the absence of misuse, while at the same time attributing this very success to "illegal" violations of its intellectual property and contract rights, which Oracle seeks to enjoin.

Indeed, as the *Napster* opinion demonstrates, in the face of Rimini Street's well-pleaded allegations of misuse, discovery must be allowed to proceed on the misuse claim:

> Napster has raised serious questions with respect to possible copyright misuse, based on both the MusicNet agreement and plaintiffs' possible antitrust violations in their entry into digital music delivery . . . For the time being, however, neither side has sufficiently developed the factual and legal bases for their arguments. The evidence presently before the court suggests that Napster needs further discovery in order to sufficiently oppose plaintiffs' motion for summary judgment.

*In re Napster*, 191 F. Supp. 2d at 1103; *see also Ocean Atl. Woodland Corp*, 2004 U.S. Dist. LEXIS 19732, at *24 ("Defendants argue that Plaintiff is using its ownership of the copyrights to gain an unfair advantage in the real estate market or real estate development market . . . This may very well be. However, additional facts are necessary regarding how Ocean Atlantic's purported conduct violates conventional antitrust principles in order to determine whether copyright misuse has occurred or is occurring.").[5] As in *Napster*, Rimini has identified specific acts by Oracle that, at a minimum, raise serious questions regarding Oracle's misuse of its copyrights. At a minimum, Rimini Street should be permitted to proceed to discovery to obtain further evidence to demonstrate Oracle's misuse.

A court may only grant a motion to dismiss under Rule 12(b)(6) "if it is certain that the [party] will not be entitled to relief under any set of facts that could be proven under the allegations

---

[5] It should also be noted that even Oracle's *Triad* line of cases each proceeded to the summary judgment stage and rested upon a lack of anticompetitive tactics. *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995)(upholding summary judgment ruling for lack of anticompetitive actions)(citation omitted); *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp. 356, 367 (E.D. Va. 1994) (denying misuse defense at summary judgment stage, finding an absence of public policy violations)(emphasis added); *Psystar*, 673 F. Supp. 2d at 933 (denying Psystar's summary judgment motion for misuse).

1   of the complaint" (*Moulton v. Eugene Burger Management Corp.*, 2009 WL 2004373 *1 (D. Nev.

2   2009)), Oracle has not and cannot meet this standard because it is far from "a certainty that [Rimini

3   Street] will not be entitled to relief under any set of facts." *Sonntag v. Balaam, et al., 3*:07-CV-311-

4   RCJ(RAM), 2009 WL 3416504, at *2. (D. Nev Oct. 23, 2009). Therefore, Oracle's motion to

5   dismiss Rimini Street's counterclaim and affirmative defense for copyright misuse should be denied.

6         **C.**      **Rimini Street has Stated a Claim for Violations of California's Unfair**

7                         **Competition Law.**

8         Finally, Oracle moves to dismiss Rimini Street's counterclaims for violation of California's

9   Unfair Competition Law ("UCL"). First, Oracle argues that Rimini Street has failed to plead any

10  "fraudulent" conduct with the specificity required under Rule 9(b). But Rimini Street has

11  specifically alleged the time, place, and specific content for each of the false and misleading

12  statements that form the bases for its defamation claims. *See* Doc. No. 56 at 45 – 48. Oracle has

13  conceded that these allegations meet the standard set forth under *Twombly*, basing its arguments for

14  dismissal solely upon legal grounds. *See* Doc. No. 67 at 4, 9. Thus, these allegations are more than

15  sufficient to put Oracle on notice, and Rimini Street's UCL claims based on fraudulent conduct

16  should proceed.

17        Second, Oracle argues, "To the extent Rimini attempts to base an unlawful claim on its tort

18  or copyright misuse claims, its UCL claim fails for the same reasons as the tort and copyright

19  misuse" counterclaims. Doc. No. 67 at 28. As discussed, Rimini Street's defamation and copyright

20  misuse claims have been sufficiently pled and are legally sound. Therefore, Oracle's motion to

21  dismiss Rimini Street's Unfair Competition Claim fails for the same reasons set forth, *supra*, with

22  respect to Rimini Street's first two counterclaims.

23        Finally, Oracle suggests that Rimini Street's copyright misuse claim cannot form a basis for

24  unfair competition because it acts as an affirmative defense. Doc. No. 67 at 28. But the "scope of

25  conduct covered by the UCL is broad," and the UCL itself "is equitable in nature." *Korea Supply Co.*

26  *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003).

27  Oracle's anticompetitive use of its copyrights is plainly not permitted by the copyright laws, and thus

28  may form the basis of a claim under the UCL. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular*

1 | *Tel. Co*., 20 Cal. 4th 163, 18 (Cal. 1999) (California's Unfair Competition Law "borrows violations
2 | of other laws and treats them as unlawful practices that the unfair competition law makes
3 | independently actionable.").   By stating a claim for both copyright misuse and defamation/trade
4 | libel, Rimini Street has stated a claim for relief under the UCL.   Therefore, Oracle's motion to
5 | dismiss must be denied with respect to Rimini Street's third counterclaim as well.

**IV.    CONCLUSION**

For the foregoing reasons, Rimini Street has sufficiently pled its claims for (1) defamation, business disparagement and trade libel; (2) copyright misuse; and (3) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.   Rimini Street has also sufficiently pled its fourth affirmative defense of copyright misuse.   Oracle's motion to dismiss should be denied in all respects.

| DATED:        JUNE 28, 2010 | SHOOK HARDY & BACON |
|---|---|
| | By:    */s/ Robert H. Reckers*_____ |
| | B. Trent Webb, Esq. *(pro hac vice)*<br>Eric Buresh, Esq. *(pro hac vice)*<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108-2613<br>Telephone: (816) 474-6550<br>Facsimile: (816) 421-5547<br>bwebb@shb.com<br>eburesh@shb.com |
| | Robert H. Reckers, Esq. *(pro hac vice)*<br>600 Travis Street, Suite 1600<br>Houston, Texas   77002<br>Telephone: (713) 227-8008<br>Facsimile: (731) 227-9508<br>rreckers@shb.com |
| | *Attorney for Defendants*<br>*Rimni Street, Inc. and Seth Ravin* |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By:     */s/ Robert H. Reckers* _____
           Robert H. Reckers

           *Attorney for Defendants*
           *Rimni Street, Inc. and Seth Ravin*

RIMINI STREET INC.'S OPPOSITION TO PLAINTIFFS MOTION TO DISMISS

2:10-CV-106