1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
6   FRED NORTON (*pro hac vice*)
    KIERAN P. RINGGENBERG (*pro hac vice*)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11  Attorneys for Oracle USA, Inc., Oracle
    America, Inc., and Oracle International
12  Corporation

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice
application to be submitted*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

13

14

UNITED STATES DISTRICT COURT

15

DISTRICT OF NEVADA

16

| | |
|---|---|
| 17  ORACLE USA., INC, a Colorado corporation, ORACLE AMERICA, INC., a Delaware 18  corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, 19                             Plaintiffs, 20                   v. 21  RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, 22                   Defendants. 23 | Case No. 2:10-cv-0106-LRH-PAL  **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSE** |

24

25

26

27

28

ORACLE'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

1

## <u>TABLE OF CONTENTS</u>

2   INTRODUCTION .................................................................................................. 1

3   ARGUMENT ........................................................................................................ 2

4       I.    Rimini's First Cause of Action Fails to State a Claim ........................... 2

5           A.    Rimini Identifies No False Statement of Fact ............................ 2

6               1.    The Alleged Statements Are Opinions, Not Facts ........................ 3

            2.    Rimini Fails to Identify Any Specific Implied Fact ...................... 4

7           B.    Deborah Hellinger's Statements Concerning this Lawsuit Are

8               Protected by the Litigation Privilege .......................................... 5

9       II.    Rimini's Copyright Misuse Counterclaim Should be Dismissed and Its

10          Affirmative Defense Stricken ............................................................... 6

11          A.    Rimini's Claim Fails Because It Only Pleads Access and Use

12              Restrictions ................................................................................. 7

        B.    Rimini Mischaracterizes the Law of Misuse .............................. 9

13              1.    *In re Napster, Inc. Copyright Litigation* ..................... 10

14              2.    The *Triad* Line of Cases ............................................. 10

15              3.    Rimini's Irrelevant Cases ............................................. 12

16              4.    *Alcatel* ........................................................................ 12

17          D.    Rimini's Request for Discovery to Identify Facts Is Meritless ............... 14

        E.    Rimini's Misuse Claim Requires the Court to Assume Nonexistent

18              or Inconsistent Facts ................................................................... 14

19  CONCLUSION ................................................................................................... 16

20

21

22

23

24

25

26

27

28

1

2

## TABLE OF AUTHORITIES

3

Cases

4

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)................................................................................ 1, 7, 14

5

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*,
    845 F. Supp. 356 (E.D. Va. 1994)......................................................................... 11, 12, 13

6

*Alcatel USA, Inc. v. DGI Techs.*,
    166 F.3d 772 (5th Cir. 1999)........................................................................................ 13

7

8

*Apple, Inc. v. Psystar Corp.*,
    673 F. Supp. 2d 931 (N.D. Cal. 2009) .......................................................................... 7

9

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................................................ 14

10

11

*Batesville Servs., Inc. v. Funeral Depot, Inc.*,
    No. 1:02-CV-01011-DFH-TA, 2004 WL 2750253 (S.D. Ind. Nov. 10, 2004) ...................... 7

12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................. 2, 14

13

14

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999)......................................................................................... 3

15

*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000)........................ 2

16

17

*Crowe v. County of San Diego*,
    ___F.3d ___, No. 05-55467, 2010 WL 2431842 (9th Cir. June 18, 2010)............................ 4

18

*Cunningham v. Hamilton County, Ohio*,
    527 U.S. 198 (1999)..................................................................................................... 1

19

20

*Data Gen. Corp. v. Grunman Sys. Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994)....................................................................................... 12

21

*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*,
    117 Cal. App. 4th 1138 (Cal. Ct. App. 2004) .......................................................... 4

22

23

*Franklin v. Dynamic Details, Inc.*,
    116 Cal. App. 4th 375 (Cal. Ct. App. 2004) ............................................................ 4

24

*In re Napster, Inc. Copyright Litig.*,
    191 F. Supp. 2d 1087 (N.D. Cal. 2002) ..................................................................... 10

25

26

*Int'l Motor Contest Ass'n Inc. v. Staley*,
    434 F. Supp. 2d 650 (N.D. Iowa 2006)..................................................................... 12

27

28

*Lasercomb America, Inc. v. Reynolds,*
   911 F.2d 970 (4th Cir. 1990) ................................................................................. 13

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ................................................................................. 15

*Martin v. Cal. Dep't of Veterans Affairs,*
   560 F.3d 1042 (9th Cir. 2009) ................................................................................. 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
   454 F. Supp. 2d 966 (C.D. Cal. 2006) ............................................................... 7, 13

*Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.,*
   123 F. Supp. 2d 945 (W.D.N.C. 2000) .................................................................. 14

*Microsoft Corp. v. Yokohama Telecom Corp.,*
   993 F. Supp. 782 (C.D. Cal. 1998) .......................................................................... 6

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,*
   No. 02-C-2523, 2004 WL 2203423 (N.D. Ill. Sept. 29, 2004) ............................. 12

*Reed v. Elseviev, Inc. v. Muchnick,*
   __ U.S. __, 130 S. Ct. 1237 (2010) ....................................................................... 12

*Rodriguez v. Panayiotou,*
   314 F.3d 979 (9th Cir. 2002) ................................................................................... 3

*Rothman v. Jackson,*
   49 Cal. App. 4th 1134 (1996) .................................................................................. 5

*Schneider v. Cal. Dep't of Corrections,*
   151 F.3d 1194 (9th Cir. 1998) ................................................................................. 8

*Triad Systems Corp. v. Southeastern Express Co.,*
   64 F.3d 1330 (9th Cir. 1995) .......................................................................... passim

*United States v. Microsoft,*
   253 F.3d 34 (D.C. Cir. 2001) ................................................................................... 7

*Video Pipeline v. Buena Vista Home Entm't,*
   342 F.3d 191 (3d Cir. 2003) .................................................................................. 12

*Vinas v. Chubb Corp.,*
   499 F. Supp. 2d 427 (S.D.N.Y. 2007) ...................................................................... 4

*Weisbuch v. County of Los Angeles,*
   119 F.3d 778 (9th Cir. 1997) ................................................................................. 15

*ZL Techs. Inc. v. Gartner, Inc.,*
   ___ F. Supp. 2d ___, 2010 WL 1801582 (N.D. Cal. May 3, 2010) ................. 3, 4, 5

Rules

Fed. R. Civ. P. 8 ................................................................................................. 14

Fed. R. Civ. P. 12(b)(6) .................................................................................... 8, 15

Statutes

17 U.S.C. § 106 .................................................................................................... 8

Cal. Bus. & Prof. Code § 17200 ........................................................................ 15

Cal. Civ. Code § 45a ............................................................................................ 4

Other Authorities

Raymond T. Nimmer & Jeff Dodd, Modern Licensing Law § 13:33 (2009) .............................. 13

Theodore Dorenkamp, Copyright Misuse or a Right to Compete?  A Critique of
  *Alcatel USA v. DGI Technologies*, 9 Tex. Intell. Prop. L.J. 269 (2001) ................................. 13

1   **INTRODUCTION**

2   Rimini's[1] opposition brief ("Opp.") cannot cure the legal defects in Rimini's

3   Counterclaim.  Each of its three claims fails.

4   First, Rimini's claim for defamation or trade libel cannot survive because Rimini fails to

5   allege any false statement of fact.  Rimini does not seriously dispute that a prediction of future

6   events cannot be a statement of fact.  The sum and substance of Rimini's remaining allegations is

7   that Oracle accused Rimini of violating some unspecified law.  Rimini asserts that such

8   accusations are statements of fact, but that argument is simply contrary to governing authority.

9   Rimini also asserts that the alleged opinions imply false facts, but Rimini fails to identify – either

10  in its Counterclaim or in its opposition brief – what those implied "facts" supposedly are.

11  Finally, Rimini's claim based on a report to the press about this lawsuit that accurately

12  summarized Oracle's position in this lawsuit is further barred by the litigation privilege.

13  Second, Rimini's claim for declaratory relief on copyright misuse fails because the

14  conduct Rimini alleges is, as a matter of law, not misuse.  Rimini strains to find support for a

15  vague and open-ended copyright misuse defense, twisting sound-bites out of context.  Try as

16  Rimini might, it cannot overcome the settled Ninth Circuit law that there is no misuse in the

17  exercise of the "exclusive rights of copyright holders," such as "reproduction and distribution of

18  their copyrighted works."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir.

19  2001).  Rimini can cite no case where misuse has been found on anything like the facts alleged in

20  the Counterclaim, and it fails to overcome controlling authority, *Triad Systems Corp. v.*

21  *Southeastern Express Co.*, 64 F.3d 1330 (9th Cir. 1995), *overruled on other grounds by*

22  *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 210 (1999), rejecting misuse on

23  indistinguishable facts.  Thus, Rimini is left with the argument that it could identify the facts

24  _____

25  [1] As with the Motion To Dismiss First Amended Counterclaim And Strike Affirmative
Defense ("Mot."), we refer to Oracle USA, Inc., Oracle America, Inc. and Oracle International
26  Corporation collectively as "Oracle" or "Plaintiffs," and to Rimini Street, Inc. as "Rimini."
Citations to Oracle's Amended Complaint and to the Answer to Oracle's First Amended
27  Complaint and First Amended Counterclaim are in the form of (AC ¶ __) and (CC ¶ __)
respectively.

28

1    necessary to state a claim if the Court granted it discovery first, a position squarely rejected by

2    *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3         Furthermore, Rimini's conclusory assertion that Oracle's alleged practices effectively

4    prevent customers from switching to Rimini are belied by Rimini's own allegations that it has

5    successfully convinced hundreds of customers to switch to Rimini, and that Rimini does not

6    infringe any Oracle intellectual property to do so.  Recognizing this defect, Rimini tries to meet

7    its pleading burden by relying on *Oracle's* allegations that Rimini's business systematically

8    infringes Oracle's copyrights, rather than its own pleading, which says the opposite.

9         Third, Rimini's claim under California's Unfair Competition Law is entirely derivative of

10    its other claims and fails for the same reasons.

11                                    **ARGUMENT**

12    **I.    Rimini's First Cause of Action Fails to State a Claim**

13         Rimini's opposition brief jettisons much of its first cause of action by offering no

14    response to Oracle's showing that Rimini's generalized allegations fail to state a claim.  (Mot. at

15    8-9) (citing, *e.g.*, unspecified "allegations of illegality" in CC ¶¶ 44, 48.)  Rimini seeks to defend

16    only its allegations that four statements made by Oracle representatives defamed Rimini.  None

17    of those four statements is defamatory.

18         **A.    Rimini Identifies No False Statements of Fact**

19         To state a claim, Rimini must allege facts sufficient to show that an alleged statement "is

20    reasonably capable of sustaining a defamatory meaning, and is not comment within the ambit of

21    the First Amendment."  *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal.

22    1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000).  Rimini fails to meet this burden for any alleged

23    statement.  As shown in Oracle's opening brief, the statements alleged by Rimini are non-

24    actionable opinion: all are either legal conclusions offered by non-lawyers or are predictions

25    about the future.  (Mot. at 9-12.)  Rimini does not dispute that legal conclusions and predictions

26    of the future are opinion, but attempts to argue that the Counterclaim alleges something else.

27    Rimini's attempt fails.

28

1      **1.      The Alleged Statements Are Opinions, Not Facts**

2            Two of the alleged statements are legal in nature.  Rimini alleges that Deborah Hellinger

3      summarized to the media Oracle's allegation in this action that Rimini has engaged in massive

4      theft of Oracle intellectual property (CC ¶ 55) (and also that Oracle "will prove this in court,"

5      Ringgenberg Decl. Ex. A).  Rimini also alleges that an undisclosed Oracle representative told Pat

6      Phelan of Gartner that Rimini's operation was "illegal."  (CC ¶ 48.)  Rimini argues that both

7      statements were "presented as and understood" as "assertions of fact" because they were

8      presented to the media and to an industry analyst.  (Opp. at 5-6.)  Rimini's argument defies both

9      logic and the law – whether a statement is opinion or fact cannot be determined by examining the

10     audience.  Indeed, individuals and companies often share opinions, not just facts, with the media

11     and industry analysts.  Analysts, in particular, trade in predictions and opinions about companies;

12     they do not limit themselves to facts.  *See, e.g.*, *ZL Techs. Inc. v. Gartner, Inc.*, ___ F. Supp. 2d

13     ___, No. CV-09-02393, 2010 WL 1801582, at *6-*7 (N.D. Cal. May 3, 2010) (rejecting claim

14     that Gartner analyst necessarily reports specific objective facts).  Rimini concedes that "legal

15     interpretation" is opinion and thus not "actionable,"[2] (Opp. at 7), and yet Rimini offers no

16     explanation why the alleged statements about theft of intellectual property and illegality are

17     anything other than legal conclusions by non-lawyers.[3]

18     _____

19            [2] Rimini suggests that only "purely legal interpretations," entirely independent of the
       facts, are opinions.  (Opp. at 7-8.)  To the contrary, when a court applies the law *to the facts* in a
20     written order, that is called an "opinion."  Or when a client seeks a lawyers' written advice on the
       application of law to a factual circumstance, it is typically called an "opinion letter."  A legal
21     conclusion is no less opinion if it comes from a non-lawyer; it is more so.  Rimini's citations do
       not support its novel view of what it means to interpret the law.  Rimini's description of
22     *Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002), acknowledges (Opp. at 7) that it was
       George Michael's application of the legal principle of entrapment to his particular facts that was
23     held to "constitute his interpretation of the law," and thus was opinion.  *Rodriguez*, 314 F.3d at
       986.  Similarly, *Coastal Abstract Service, Inc. v. First American Title Insurance Co.*, 173 F.3d
24     725 (9th Cir. 1999), rejected a defamation claim premised on a statement that "California's
       statute *applied to the activities of Coastal*."  *Id.* at 732 (emphasis added).  In both cases, the
25     speakers expressed their belief that the other party's conduct had violated the law.  That was not
       defamation in those cases, and it is not defamation when Rimini alleges it here.
26

27            [3] Rimini also claims that an accusation of a crime is a statement of fact and "libelous on

28                                                                (Footnote Continued on Next Page.)

1   The other two statements relied on by Rimini are allegations that Oracle representatives

2   said that Rimini "was presently unsustainable and that Rimini Street would not still be in

3   business in two years," (CC ¶ 46) and that "Oracle had information that, when disclosed, would

4   put Rimini Street out of business."  (CC ¶ 47.)  These statements are predictions of the future

5   which, in themselves, cannot be facts and cannot form the basis of a claim.  (Mot. at 10-11.)

6   Rimini does not seriously argue otherwise.

7      **2.  Rimini Fails to Identify Any Specific Implied Fact**

8     Instead, recognizing the flaw in its claim, Rimini argues that all four of the alleged

9   statements, even if opinion, "imply" facts and thus may form the basis for a claim.  (Opp. at 6-8.)

10  But a defamation claim that rests on unstated but implied facts must plead what those implied

11  "facts" are, why those facts were false, and how the defendant knew they were false.  *Crowe v.*

12  *County of San Diego*, ___F.3d ___, No. 05-55467, 2010 WL 2431842, at *27 (9th Cir. June 18,

13  2010) (holding that the assertion of an objective fact is a "threshold issue").  Rimini has pled

14  none of these, and the omission is fatal to its argument.

15    For example, in *ZL Techs.*, 2010 WL 1801582 (cited in Mot. at 10 n.6), the court rejected

16  a defamation claim based on opinion statements by an industry analyst about plaintiff's business.

17  Although the opinion statements "undeniably rest upon a large body of specific yet undisclosed

18  facts," the statements were "not actionable" because the plaintiff failed to show the alleged

19  statements "imply the assertion of specific *objective* facts."  *Id.* at *11 (emphasis in original); *see*

20  *also Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 436 (S.D.N.Y. 2007) (refusing to find implied

21  objective facts where "it is unclear what facts, exactly" were implied).

22  ───────────────

(Footnote Continued from Previous Page.)

23  its face."  (Opp. at 6.)  This misunderstands defamation *per se*.  Alleging a statement that is

24  "libelous on its face" – or "defamatory per se" – just excuses the plaintiff from having to plead
special damages.  *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, 117

25  Cal. App. 4th 1138, 1145 n.7 (Cal. Ct. App. 2004); Cal. Civ. Code § 45a.  It does not erode First
Amendment protections for statements of opinion.  *See, e.g., Franklin v. Dynamic Details, Inc.*,

26  116 Cal. App. 4th 375, 386 (Cal. Ct. App. 2004) (emails accusing plaintiff of stealing

27  copyrighted material would be defamatory "per se" if they were actionable, but, as statements of
opinion, they were non-actionable).

28

1    The same is true here.  Oracle's alleged representations could have been based on any

2    number of facts.  But Rimini alleges no facts showing that the alleged statements about Rimini's

3    theft of intellectual property, illegality, or future business failure "imply the assertion of specific

4    *objective* facts"; thus those alleged statements "are not actionable."  *ZL Techs*., 2010 WL

5    1801582 at *11.  Indeed, Rimini's opposition does not attempt to identify a single specific

6    objective fact it claims is implied.  To the contrary, Rimini instead merely repeats the statements

7    themselves and does not address what facts the statements allegedly imply.  Rimini argues, for

8    example, that the allegations of theft of intellectual property imply the fact that "Rimini Street

9    and Mr. Ravin have stolen Oracle intellectual property."  (Opp. at 8.)  Rimini's near-verbatim

10   repetition of the alleged statement of legal opinion begs the question of what *fact* is implied by

11   that statement.  Rimini may not summarily assert the existence of implied facts underlying

12   Oracle's opinions without ever even alleging what those facts are.

13   **B.    Deborah Hellinger's Statements Concerning this Lawsuit Are Protected by the Litigation Privilege**

14   In addition, at least one of the alleged statements on which Rimini relies – Deborah

15   Hellinger's response to press inquiries about this case (CC ¶ 45) – cannot support a claim

16   because it is protected by the litigation privilege.  Rimini concedes that reports to the media

17   about judicial proceedings are privileged, but claims that Ms. Hellinger's quotation from

18   Oracle's Complaint in this action, made after the Complaint was filed, followed by the statement

19   that "We will prove this in Court," and appearing in articles entitled "Upstart fires back at Oracle

20   in legal battle" and "Rimini Street files countersuit against Oracle" (*id.*), is not privileged

21   because it was not "about" the lawsuit.  (Opp. at 9.)

22   Rimini also invents a non-existent exception to the litigation privilege and

23   mischaracterizes Ms. Hellinger's comments to try to fit that newly fashioned rule.  Rimini first

24   misconstrues *Rothman v. Jackson*, 49 Cal. App. 4th 1134 (1996), to argue that fair and true

25   statements about ongoing litigation are not privileged if they concern future judicial occurrences.

26   (Opp. at 9-10.)  Rimini then claims that Ms. Hellinger's comments were "addressed solely to

27   *possible*, <u>future</u> judicial occurrences."  (*Id.* at 10.)  Rimini is wrong on the law and wrong on the

28

1  facts that it pled.  In *Rothman*, the court rejected the press-reporting litigation privilege in a

2  footnote because no litigation had been filed.  49 Cal. App. 4th at 1145 n.3.  Here, by contrast,

3  Ms. Hellinger accurately summarized what the Complaint said well after it was filed, and said

4  Oracle intended to prove what it alleged.  That is a fair and accurate report of an ongoing judicial

5  proceeding.  Indeed, the filing of a complaint communicates publicly that a party intends to

6  prove what is alleged.  If a party cannot accurately summarize to the press what a complaint

7  alleges and say that the litigant intends to prove it, then the litigation privilege would mean next

8  to nothing.  That is not the law.  *See, e.g.*, *Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F.

9  Supp. 782, 784-85 (C.D. Cal. 1998) (recounting allegations of complaint protected by privilege;

10  report "need not resolve the merits of the charges or even present the defendant's version of the

11  facts").

12  **II.    Rimini's Copyright Misuse Counterclaim Should be Dismissed and Its Affirmative
        Defense Stricken**

13         Rimini's attempt to stave off dismissal of its copyright misuse affirmative defense (and

14  its claim for declaratory relief as to the same) depends on (1) pretending to allege more than it

15  has; and (2) mischaracterizations of the controlling law.

16         Rimini says that it alleges a "pattern of conduct" broader than mere restrictions on access

17  and use, but there is no allegation of fact behind that assertion.  The only specific actions alleged

18  in the Counterclaim are limits on Rimini's copying and use of Oracle's copyrighted work.  As a

19  matter of law, that cannot be misuse.  Rimini can cite no case, and there is none, finding misuse

20  on anything like the facts alleged in the Counterclaim.  Instead, to attempt to salvage its claim,

21  Rimini quotes vague and out-of-context statements from inapplicable cases to suggest that

22  copyrights may be disregarded any time a competitor like Rimini finds it difficult to compete

23  with a copyright holder.  That is not the law, and Rimini fails to meaningfully confront the Ninth

24  Circuit's decision in *Triad*, 64 F.3d 1330, rejecting a misuse defense on facts showing

25  restrictions far more onerous than what Rimini alleges here.

26          Furthermore, Rimini's misuse claim would require the Court to disregard Rimini's own

27  allegations that it has convinced hundreds of customers to switch to Rimini without infringing

28

1    Oracle's intellectual property, and accept *Oracle's* allegations that Rimini has engaged in

2    massive theft – allegations Rimini's Counterclaim calls "malicious" and "baseless."  (CC ¶ 2, 8,

3    50.)  Rimini cannot at the same time assert two claims based on entirely contradictory

4    allegations.

5        **A.  Rimini's Claim Fails Because It Only Pleads Access and Use Restrictions**

6        Rimini argues that it has pled copyright misuse by alleging that Oracle's conduct

7    effectively makes it more difficult for Rimini to compete with Oracle to provide support

8    services.  However, as shown in Oracle's opening brief, and not directly addressed by Rimini, in

9    this Circuit it is not misuse to exercise the "exclusive rights of copyright holders," including

10   "refusing to license a copyrighted work or by doing so only on terms that the copyright owner

11   finds acceptable."  *A&M Records*, 239 F.3d at 1027 (citation omitted); *accord Metro-Goldwyn-*

12   *Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 996, 997 (C.D. Cal. 2006) ("Reproduction

13   and distribution of copyrighted works are 'exclusive rights of copyright holders.'  The right to

14   exclude is inherent in the grant of a copyright; a copyright is not improperly expanded simply

15   because the owner has exercised his or her power to exclude.") (quoting *A&M Records*, 239 F.3d

16   at 1027); *Batesville Servs., Inc. v. Funeral Depot, Inc.*, No. 1:02-CV-01011-DFH-TA, 2004 WL

17   2750253 (S.D. Ind. Nov. 10, 2004) ("The public policy embodied in copyright law . . . certainly

18   allows the copyright holder to prohibit copying of his own expression.") (citing *A&M Records*,

19   239 F.3d at 1027); *see also Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 940 (N.D. Cal.

20   2009) ("Apple's agreement simply attempts to control the use of Apple's own software-an area

21   that is the *focus* of the copyright.") (emphasis in original).[4]

22       If Rimini's proposed rule were adopted, the judge-made defense of copyright misuse

23   would be expanded to make copyrights unenforceable merely because a competitor has been

24   _____

25       [4] Rimini largely fails to respond to this governing law.  Its sole attempt to do so is to cite,
     in a footnote (Opp. at 11 n.2), *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).
26   *Microsoft* is a decision applying the Sherman Act and says nothing about the affirmative defense
27   of copyright misuse.

28

1    prevented from copying works that would make it easier to compete against the copyright holder.

2    Such a result would contradict the Congressional grant to a copyright holder, which is the

3    "exclusive right" to exploit the work, including the rights to "reproduce" the work and

4    "distribute copies." 17 U.S.C. § 106.  And it would also stand on its head the logic underlying

5    the Copyright Act, which is that the grant of exclusive rights provides economic incentives to

6    create new works and thereby advances public welfare.  (Mot. at 18-19.)  It would profoundly

7    discourage innovative new works to find misuse merely because a copyright holder exercised its

8    rights granted by statute to the disadvantage of a competitor.  Such an outcome would undermine

9    innovation by both (1) preventing a copyright holder from capturing the full benefits of what it

10   creates (reducing the incentive to create them) and (2) allowing competitors to take a "free ride"

11   on the work of others (reducing the competitors' impetus to create competitive works of their

12   own).  The particulars of this case provide a clear example.  Oracle has made massive

13   investments in its copyrighted software and support material.  What Rimini asks of the Court is a

14   ruling that would allow Rimini to copy and use Oracle's copyrighted works with impunity to

15   offer services to Oracle's customers at a cut-rate.  Such a result would greatly discourage, rather

16   than promote, both Oracle and Rimini from creating new software.

17         Rimini does not attempt to refute this point directly.  Instead, its primary response is to

18   argue that it has alleged more than that "Oracle restricts copying and use of its copyrighted

19   works," because Rimini has supposedly pled "factual allegations establish[ing]" a "pattern of

20   conduct."  (Opp. at 11.)  Similarly, Rimini argues that "where the exercise of statutory rights *is*

21   *coupled with* restrictions designed to control areas outside of copyright," it is misuse.  (Opp. at

22   16) (emphasis added.)  However, Rimini's Counterclaim spells out only three types of specific

23   conduct,[5] each of which is merely a restriction on copying and use:

24   ─────────────────

25         [5] Rimini seeks to puff up its allegations by citing a news article quoting Oracle president
     Safra Catz, but this material fails to identify anything Oracle has allegedly done to misuse its
26   copyright.  In any event, these additional allegations outside the pleadings may not be considered
     on a motion to dismiss.  *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th
27   Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look
     beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

28                                                      (Footnote Continued on Next Page.)

1       1.   The design of Oracle's website makes it too difficult for Rimini to copy Oracle's

2           copyrighted material (CC ¶ 63);

3       2.   Oracle made it more difficult for Rimini to copy Oracle material by prohibiting

4           use of automated tools that can download many files at a time (*id.* ¶ 64); and

5       3.   Oracle's license agreements allegedly prohibit "access to and download of"

6           Oracle's copyrighted materials unless in furtherance of the customers relationship

7           with Oracle. *(Id.)*

8 There is simply no substance to any claim that Rimini alleges any restriction other than access

9 and use of its copyrighted works.[6] Under the Ninth Circuit's controlling precedent in *A&M*

10 *Records*, 239 F.3d 1004, such restrictions are the lawful exercise of Oracle's statutory rights to

11 limit copying and use of its copyrighted material and are not copyright misuse.

12       **B.**      **Rimini Mischaracterizes the Law of Misuse**

13       Even if Oracle is alleged to have done something more than exercise its statutory rights,

14 Oracle has shown that the alleged conduct does not support a claim for copyright misuse. In

15 particular, the cases finding misuse fall into two categories: (1) unreasonable restrictions on the

16 *development* of a new, non-infringing work or a competing product, or (2) explicit and

17 unreasonable prohibitions on licensees *using* competing products or requiring licensees to use

18 non-copyrighted works. (Mot. at 14.) In opposition, Rimini attempts to articulate a vague and

19 open-ended theory of misuse in which copyrights may not be enforced if a copyright holder

20 engages in any conduct that has the effect of making it more difficult to compete against the

21 copyrighted holder for a related product or service. (Opp. at 13-18.) Rimini's argument is built

22 _____

23 (Footnote Continued from Previous Page.)

24 defendant's motion to dismiss.").

25      [6] Rimini's opposition brief also appears to argue that Oracle's licenses somehow are in breach of obligations to its customers. (Opp. at 12.) Even if Rimini were to claim that Oracle

26 breached its contract with customers, that is not a claim Rimini has standing to assert. *See Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1050 (9th Cir. 2009) ("As a general

27 rule, a third party does not [have] standing to bring a claim asserting a violation of someone else's rights.") (citation omitted).

28

1   on out-of-context sound-bites and, in several instances, outright misstatements.

2              **1.    *In re Napster, Inc. Copyright Litigation***

3         For example, the case from within the Ninth Circuit on which Rimini primarily relies is

4   *In re Napster, Inc. Copyright Litigation*, 191 F. Supp. 2d 1087 (N.D. Cal. 2002).  In attempting

5   to support its far-reaching misuse theory, Rimini argues that, "the *Napster* license agreement did

6   not contain a provision expressly prohibiting competition."  (Opp. at 15.)  This is simply

7   incorrect.  In fact, the MusicNet license agreement at issue expressly "prevent[ed] Napster from

8   entering into any licensing agreement with any individual plaintiffs [record labels] until March 1,

9   2002," which was called the "Initial Exclusivity Period."  *Napster*, 191 F. Supp. 2d at 1106.  As

10  the court explained, the "critical issue is that the agreement binds Napster to obtain licenses from

11  MusicNet and not its competitors."  *Id.* at 1107.[7]  By contrast, Rimini does not (and cannot)

12  allege any contract term that prohibits a customer from entering into any agreement with Rimini

13  (or anyone else).

14             **2.    The *Triad* Line of Cases**

15        Similarly, Rimini incorrectly attempts to distinguish the controlling case of *Triad*, 64

16  F.3d 1330.  In *Triad*, the court rejected a misuse defense by a service provider (Southeastern)

17  which needed access to copyrighted works in order to compete against a computer and software

18  developer (Triad).  Rimini argues that "the *Triad* holding relied on the fact that the copyright

19  holder did not attempt to limit competition in any way through its copyright licenses."  (Opp. at

20  _____

21        [7] *Napster* also analyzed other license restrictions applicable after this initial period.  The
    court's consideration of these additional restrictions was dicta because the Initial Exclusivity
22  Period was, itself, sufficient to find a fact issue requiring discovery.  *See id.* at 1106 ("That the
    restriction only applies . . . until March 2002 is irrelevant.").  But even if the *Napster* court had
23  held that these additional restrictions were misuse, that offers no support to Rimini.  What the
    *Napster* court found was that music labels permitted Napster to license music only if Napster
24  would agree to express contract terms that gave the labels "control over which content Napster
    licenses" from their competitors.  *Id.*  For example, the labels retained the right to terminate the
25  agreement at will if Napster entered into a license with a competitor, or to charge higher fees.  *Id.*
    By contrast, Rimini does not allege that any express contract term imposed any penalty on any
26  Oracle customer contracting with Rimini.  All that Rimini alleges is that Oracle restricted
    customers' access and use to copyrighted material, and that Rimini would be better able to
27  compete with Oracle if Rimini had easier access to its competitors' intellectual property.

28

1   15.)  To the contrary, Triad's license agreements provided that "customers may not duplicate the

2   software or allow it to be used by third parties."  *Id.* at 1333.  In order to offer support services in

3   competition with Triad, a "Southeastern technician uses the OS software and the service software

4   in the Triad customer's possession."  *Id.*  Thus, the Triad license agreements made it *impossible*

5   for Southeastern to service Triad computers in competition with Triad.  Rimini's assertion that

6   the license in Triad did not "attempt to limit competition in any way" is simply false.

7        Rimini notes (Opp. at 15) that the licenses in *Triad* did not prohibit Southeastern from

8   "*developing its own service software*."  *Triad*, 64 F.3d at 1337 (emphasis added).  But what the

9   license agreements did effectively prohibit, and what the court entered an injunction expressly

10  prohibiting, was Southeastern competing against Triad by "performing service or maintenance

11  on Triad computer systems that contain [Triad's] licensed software."  *Id.* at 1334.  If the Triad

12  license agreements restrictions can permit the Ninth Circuit to affirm an injunction *entirely*

13  *prohibiting* a competitor from providing service to Triad's customers, then it necessarily follows

14  that the restrictions on copying in this case – which are only alleged to make it more difficult for

15  Rimini to copy software – cannot be misuse.

16       Rimini's efforts to distinguish *Advanced Computer Services of Michigan, Inc. v. MAI*

17  *Systems Corp.*, 845 F. Supp. 356 (E.D. Va. 1994) – which the Ninth Circuit followed in *Triad* –

18  suffer from the same flaw.   Rimini quotes an excerpt from *Advanced Computer* explaining that

19  the restrictions in that case did not prohibit a competitor from *developing* competing software,

20  and suggests that was the only issue in the case.  (Opp. at 15-16 n.4.)  Rimini ignores, however,

21  that *Advanced Computer* rejected a misuse defense based on license restrictions that had the

22  effect of preventing competition in offering support services.  Specifically, defendant MAI (like

23  Oracle) licensed software and also provided support services to its customers.  The plaintiffs in

24  MAI (like Rimini) were service providers competing against MAI to offer support service.  The

25  plaintiffs claimed MAI engaged in misuse "by using its copyrights to prevent plaintiffs from

26  performing the normal maintenance of MAI computers."  *Advanced Computer*, 845 F. Supp. at

27  367.  In order to provide support services to MAI customers, plaintiffs had to make a copy of

28  MAI software in computer memory.  *Id.* at 363-64.  The customers' license agreements

1   prohibited this.  *Id.* at 361 n.6.  As a result, plaintiffs could not compete in offering service to

2   MAI customers without infringement, and customers were forced to pay higher prices to MAI as

3   a result.  *Id.* at 367.  Nonetheless, there was no misuse because MAI had merely restricted

4   copying of its software:  "plaintiffs' loading of MAI software constitutes copyright infringement

5   and, as a consequence, MAI is legally entitled to enforce its copyrights and prevent such

6   infringement."  *Id.* at 370.  Once again, if MAI's restrictions on copying could altogether

7   prohibit competitors from providing support services to MAI's customers, then the lesser

8   restrictions alleged by Rimini cannot be misuse as a matter of law.

9               **3.      Rimini's Irrelevant Cases**

10          In light of these cases rejecting a misuse defense on indistinguishable facts, it is no

11  surprise that Rimini can cite no case (Opp. at 10-18) finding copyright misuse on facts anything

12  like what Rimini alleges.  For example, Rimini relies on cases involving misuse defenses based

13  on violations of the antitrust laws, *e.g.*, *Int'l Motor Contest Ass'n Inc. v. Staley*, 434 F. Supp. 2d

14  650 (N.D. Iowa 2006), abuse of process claims, *Ocean Atlantic Woodland Corp. v. DRH*

15  *Cambridge Homes, Inc.*, No. 02-C-2523, 2004 WL 2203423, at *8 (N.D. Ill. Sept. 29, 2004), or

16  restrictions on statutorily protected "fair use," *e.g.*, *Video Pipeline v. Buena Vista Home*

17  *Entertainment*, 342 F.3d 191, 205 (3d Cir. 2003).  Even if Ninth Circuit law permitted a misuse

18  defense on those facts, that would be irrelevant because Rimini alleges nothing of the sort here.

19  Nor can Rimini find support in cases where no issue of copyright misuse was even decided, *e.g.*,

20  *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994)

21  (declining to reach misuse issue), *abrogated by Reed v. Elseviev, Inc. v. Muchnick*, __ U.S. __,

22  130 S. Ct. 1237 (2010).

23              **4.      *Alcatel***

24          In the end, Rimini is left to rely on a single out-of-circuit case, *Alcatel USA, Inc. v. DGI*

25  *Technologies Inc.*, 166 F.3d 772 (5th Cir. 1999), to support its theory.  *Alcatel* involved a license

26  agreement that forbade Alcatel customers from using its software in conjunction with

27  microprocessor cards that were not manufactured by Alcatel.  *Id.* at 777.  Defendant DSC sought

28  to make microprocessor cards that would be compatible with Alcatel software.  *Id.* at 778.  To do

1    so, DSC reverse engineered an Alcatel card and tested its own card with an Alcatel customer's

2    Alcatel software, which was not permitted under the customer's license agreement. *Id.* at 778-

3    79. The Fifth Circuit held that Alcatel had committed misuse because its licenses prevented

4    Alcatel's competitors from *developing* competing products. *Id.* at 793-94. Preventing the

5    development of new, competitive products was contrary to the public policy of the Copyright

6    Act. *Id.*

7           Rimini's claim is crucially different from the facts in *Alcatel*. Rimini does not and cannot

8    allege any restriction on its ability to develop new software or other products. Instead, what

9    Rimini alleges is that Oracle restricts Rimini's use of *Oracle's* copyrighted software and support

10   material to provide support services to Oracle's customers. This distinction is crucial. Misuse

11   requires a restriction that "undermine[s] the Constitution's goal of promoting invention and

12   creative expression." *Grokster*, 454 F. Supp. 2d at 995; *see also Lasercomb America, Inc. v.*

13   *Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990) (misuse requires restrictions "violative of the public

14   policy embodied in the grant of a copyright"). Indeed, in rejecting misuse, both *Triad* and

15   *Advanced Computers* expressly rely on the absence of any restriction on the *development of a*

16   *new work*, even if the restrictions in those cases did have the effect of preventing a competitor

17   from providing a service using the *copyright holder's* work. *Triad*, 64 F.3d at 1337; *Advanced*

18   *Computer*, 845 F. Supp. at 367. Thus, *Alcatel* provides no support for Rimini's claims.[8]

19   ──────────────────

20        [8] Moreover, to the extent *Alcatel* can be read to support a theory that any restriction on
     copying is misuse if it impairs a competitor's ability to compete, it has been soundly criticized.
21   Commentators have suggested instead that the outcome in *Alcatel* was driven by the fact that
     Alcatel's licenses expressly prohibited conduct that was statutorily protected "fair use," not
22   because of some eventual effect on competition. *See, e.g.*, Raymond T. Nimmer & Jeff Dodd,
     Modern Licensing Law § 13:33 (2009), *available at* Westlaw MODLICENLAW ("[C]opying
23   was involved, but it was in the pursuit of compatibility; DGI was not recreating DSC's operating
     system for its own use. A customer would still need to buy the phone switch . . . . Does this not
24   seem like fair use?"); Theodore Dorenkamp, Copyright Misuse or a Right to Compete? A
     Critique of *Alcatel USA v. DGI Technologies*, 9 Tex. Intell. Prop. L.J. 269, 300 (2001) ("The
25   court in *Alcatel* should have used a fair use analysis . . . ."). If *Alcatel* can be read to say that
     "any potential competitor has a right to access and a right to compete – a right to take advantage
26   of and profit by the copyright owner's investment," then it would clearly go too far. *Id.* at 272.
     Such a holding would be inconsistent "with the idea that a copyright holder can exercise its right
27   to exclude others from using the protected expression." *Id.* at 278. Given the Ninth Circuit's
     decision in *A&M Records* explaining that exercise of statutory rights itself cannot be misuse, *see*

28                                                              (Footnote Continued on Next Page.)

1    **D.    Rimini's Request for Discovery to Identify Facts Is Meritless**

2    Rimini also argues that the Court should defer resolution of the misuse claim until after

3    discovery.  (Opp. at 19-20.)  However, Rule 8 "does not unlock the doors of discovery for a

4    [claimant] armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct.

5    1937, 1950 (2009).  Rather, to proceed to discovery, a claimant must plead facts sufficient to

6    "state a claim to relief that is plausible on its face."  *Id.* at 1949; *accord Twombly*, 550 U.S. at

7    570.  As shown above, Rimini has failed to do so.  Accordingly, its Counterclaim should be

8    dismissed and its affirmative defense stricken.  *See also Microsoft Corp. v. Computer Support*

9    *Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945, 955-56 (W.D.N.C. 2000) (granting motion to strike

10   affirmative defense of copyright misuse because allegations failed to show misuse).

11   **E.    Rimini's Misuse Claim Requires the Court to Assume Nonexistent or**
12   **Inconsistent Facts**

13   Finally, Rimini's copyright misuse defense fails because it is unsupported by specific

14   facts and contradicted by the facts Rimini does allege – namely Rimini's alleged success in

15   winning customers, and its allegations that Rimini was able to do so without infringing Oracle's

16   copyrights.  (Mot. at 19-20.)  Rimini responds that Oracle's argument is "disingenuous" because

17   Oracle has alleged that Rimini's success is built on the infringement of Oracle's intellectual

18   property rights.  (Opp. at 18-19.)  But on a motion to dismiss, the issue is not what *Oracle* has

19   alleged in its pleading (which allegations Rimini has denied), but whether *Rimini's* pleading

20   states a claim for relief.[9]  And, here, what *Rimini* alleges is that it does not need to infringe

21   Oracle's intellectual property, and that it has been extremely successful in winning customers

22   despite Oracle's alleged restrictions.  Indeed, Rimini's defamation counterclaim alleges that any

23   statements even insinuating that Rimini infringes Oracle's copyrights are "malicious" and

24   _____
     (Footnote Continued from Previous Page.)

25   supra at II.A, any such reading of *Alcatel* is inconsistent with governing Ninth Circuit law.

26   [9] Generally, "when the legal sufficiency of a complaint's allegations is tested by a motion
27   under Rule 12(b)(6), review is limited to the complaint."  *Lee v. City of Los Angeles*, 250 F.3d
     668, 688 (9th Cir. 2001) (citation omitted).

28

1    "baseless."  (CC ¶¶ 2, 8, 50.)

2         Rimini seeks to have it both ways: alleging it does not infringe and that it is winning

3    hundreds of customers, and at the same time arguing that it cannot compete without infringing.

4    Rimini's specific allegations of business success without infringement entirely contradict its

5    conclusory allegation that Oracle's alleged restrictions "effectively" prevent Rimini from

6    winning customers.  Rimini's self-contradictory pleading fails to state a claim and it should be

7    dismissed.  *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

8    **III.  Rimini's UCL Claim Fails**

9         As shown in Oracle's opening brief, Rimini's claim under California's Unfair

10   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, is derivative of its other

11   claims and fails for the same reasons.  Rimini does not attempt any argument that the UCL claim

12   should survive if its other claims fail.  (Opp. at 20-21.)

13        In addition, Rimini's attempt to assert a claim under the UCL's "unlawful" prong based

14   on allegations of copyright misuse fails because misuse is merely an equitable affirmative

15   defense.  (Mot. at 21-22.)  Rimini argues that the equitable defense can support a UCL claim

16   because the UCL is "equitable in nature."  (Opp. at 20.)  Rimini misses the point.  Copyright

17   misuse is not a "violation of law" under any statute, regulation, or judicial decision.  Rather, the

18   only consequence of misuse is that a plaintiff committing misuse may be unable to sue for

19   copyright infringement.  Rimini cites no authority permitting a UCL claim to proceed solely on

20   the basis of an affirmative defense.

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

ORACLE'S REPLY ISO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM

1

**<u>CONCLUSION</u>**

2          For the foregoing reasons, Rimini's three counterclaims should be dismissed and its

3    Fourth Affirmative Defense stricken.  As Rimini has already taken the opportunity to amend its

4    Counterclaim to attempt to address Oracle's arguments for dismissal, it is obvious that Rimini

5    cannot plead any facts to support its claims and further leave to amend would be futile.

6

7    DATED:  July 8, 2010                    BOIES SCHILLER & FLEXNER LLP

8

9

10                                         By: <u>/s/ Kieran P. Ringgenberg</u>
                                               Kieran P. Ringgenberg
11                                             Attorneys for Plaintiffs
                                               Oracle USA, Inc., Oracle America, Inc.,
12                                             and Oracle International Corp.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on the 8th day of July, 2010, I electronically transmitted the

3  foregoing **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND**

4  **ORACLE INTERNATIONAL CORPORATION'S REPLY IN SUPPORT OF MOTION**

5  **TO DISMISS FIRST AMENDED COUNTERCLAIM AND STRIKE AFFIRMATIVE**

6  **DEFENSE** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

7  of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic

8  Filing.

9

10                               /s/ Catherine Duong

11                               An employee of Boies, Schiller & Flexner LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28