1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
6   FRED NORTON (*pro hac vice*)
    KIERAN P. RINGGENBERG (*pro hac vice*)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11
    Attorneys for Plaintiffs Oracle USA, Inc.,
12  Oracle America, Inc. and Oracle International
    Corp.
13

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice application to be submitted*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

14
15          UNITED STATES DISTRICT COURT

                  DISTRICT OF NEVADA
16

17  ORACLE USA, INC., a Colorado corporation;
    ORACLE AMERICA, INC., a Delaware
18  corporation; and ORACLE INTERNATIONAL
    CORPORATION, a California corporation,
19
                   Plaintiffs,
20          v.

21  RIMINI STREET, INC., a Nevada corporation;
    SETH RAVIN, an individual,
22
                   Defendants.
23

24

Case No  2:10-cv-0106-LRH-PAL

**PLAINTIFFS ORACLE USA, INC.,
ORACLE AMERICA, INC., AND
ORACLE INTERNATIONAL
CORPORATION'S MOTION FOR
PRESERVATION ORDER**

**DATE:        September 9, 2010
TIME:         9:30 a.m.**

**REDACTED**

25
26
27
28

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION ............................................................................................... iv

3   PLAINTIFFS' MOTION FOR PRESERVATION ORDER
    AND MEMORANDUM OF POINTS AND AUTHORITIES..................................... 1

4

5   I.    INTRODUCTION ............................................................................................ 1

6   II.   STATEMENT OF FACTS ............................................................................... 4

7         A.   In December 2008, Rimini Threatens Oracle with Litigation and Oracle
               Demands Rimini Preserve Evidence ...................................................................... 5

8         B.   ██████████████████████████████████████████ ............... 5

9         C.   In September 2009, Ravin Represented to the Court That Rimini
               Anticipated Litigation with Oracle ........................................................................ 6

10

11        D.   Rimini Refused and Delayed Efforts to Discuss Preservation Issues ................... 6

12        E.   Rimini Offers an Unprepared and Misinformed Rule 30(b)(6) Designee on
               Preservation and Collection .................................................................................... 8

13        F.   Rimini's Failure to Preserve Key Documents ...................................................... 10

14             1.   Forensic Images ........................................................................................ 10

15             2.   Instant Messages ....................................................................................... 11

16             3.   System Files and Logs .............................................................................. 13

17        G.   Rimini Refuses to Take Corrective Action .......................................................... 13

18  III.  ARGUMENT ................................................................................................ 14

19        A.   Legal Standard ...................................................................................................... 14

20        B.   Rimini Failed to Preserve Evidence When It Anticipated Litigation ................. 16

21        C.   Rimini Has Impermissibly Left Preservation to Its Employees' Discretion........ 18

22        D.   Rimini Failed to Preserve Important Categories of Information ......................... 19

23        E.   The Need For Forensic Imaging Outweighs Any Burden ................................... 21

24  IV.   CONCLUSION............................................................................................... 23

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Columbia Pictures Indus. v. Bunnell,*
    2007 WL 2080419, No. CV 06-1093 (C.D. Cal. May 29, 2007)............................. 16, 23, 24

4

*Convolve, Inc. v. Compaq Computer Corp.,*
    223 F.R.D. 162 (S.D.N.Y. 2004) ................................................................... 22

5

6

*Covad Comm'ns Co. v. Revonet, Inc.,*
    258 F.R.D. 5 (D.D.C. 2009)....................................................................... 23, 24, 25

7

*Creative Sci. Sys., Inc. v. Forex Capital Mkts LLC,*
    No. C 04-03746, 2006 WL 870973 (N.D. Cal. Apr. 4, 2006). ............................. 15

8

9

*Del Campo v. Kennedy,*
    No. C-01-21151, 2006 WL 2586633 (N.D. Cal. Sept. 8, 2006) ........................... 15

10

*Genworth Fin. Wealth Mgt., Inc. v. McMullan,*
    267 F.R.D. 443 (D. Conn. 2010)................................................................. 23, 24

11

12

*Glover v. BIC Corp.,*
    6 F.3d 1318 (9th Cir. 1993)....................................................................... 15

13

*Housing Rights Center v. Sterling,*
    No. CV 03-859, 2005 WL 3320739 (C.D. Cal. Mar. 2, 2005) ........................... 20

14

15

*In re Napster, Inc. Copyright Litig.,*
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................................................... 17, 20

16

*Kronisch v. United States,*
    150 F.3d 112 (2d Cir. 1998)....................................................................... 17

17

18

*Larson v. Bank One Corp.,*
    No. 00 C 2100, 2005 WL 4652509 (N.D. Ill. Aug. 18, 2005) ........................... 20

19

*Nat'l Ass'n of Radiation Survivors v. Turnage,*
    115 F.R.D. 543 (N.D. Cal. 1987)................................................................. 14

20

21

*Nucor Corp. v. Bell,*
    251 F.R.D. 191 (D.S.C. 2008) ................................................................... 10, 18, 23

22

*Oracle USA, Inc. et al. v. SAP AG et al,*
    No. 07-cv-01658 (N.D. Cal. filed March 22, 2007)........................................ passim

23

24

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,*
    685 F. Supp. 2d 456 (S.D.N.Y. 2010) ......................................................... 14, 15, 19

25

*Prudential Ins. Co. of America Sales Practices Litig.,*
    169 F.R.D. 598 (D.N.J. 1997) ................................................................... 19

26

27

*Pueblo of Laguna v. United States,*
    60 Fed. Cl. 133 (2004) ............................................................................. 15, 16

28

*Silvestri v. General Motors Corp.,*
    271 F.3d 583 (4th Cir. 2001) ............................................................................. 15, 17

*State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.,*
    425 F.3d 708 (9th Cir. 2005) ...................................................................................... 14

*Treppel v. Biovail Corp.,*
    233 F.R.D. 363 (S.D.N.Y. 2006) ................................................................. 16, 23, 24

*Treppel v. Biovail Corp.,*
    249 F.R.D. 111 (S.D.N.Y. 2008) ....................................................................... 20, 24

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,*
    982 F.2d 363 (9th Cir. 1992) ...................................................................................... 17

*United States v. Brand,*
    467 F.3d 179 (2d Cir. 2006) ....................................................................................... 11

*United States v. Phillip Morris,*
    327 F. Supp. 2d 21 (D.D.C. 2004) ............................................................................ 20

*World Courier v. Barone,*
    No. C 06-3072, 2007 WL 1119196 (N.D. Cal. Apr. 16, 2007) ............................. 17

*Zubulake v. UBS Warburg LLC,*
    220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................. 17, 18, 20

*Zubulake v. UBS Warburg LLC,*
    229 F.R.D. 422 (S.D.N.Y. 2004) ............................................................................... 20


Rules

Rule 30(b)(6) .................................................................................................... passim

iii

1    **NOTICE OF MOTION**

2        PLEASE TAKE NOTICE THAT, on September 9, 2010 at 9:30 p.m., in the Courtroom

3    of Magistrate Judge Peggy A. Leen, located at 333 S. Las Vegas Blvd., Las Vegas, Nevada

4    89101, Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp. will

5    move this court for an order requiring Defendants Rimini Street, Inc. ("Rimini") and its CEO,

6    Seth Ravin ("Ravin"), to preserve relevant evidence by creating forensic images of the individual

7    computers of relevant custodians.

8        The motion will be based upon this Notice; the Motion and Memorandum of Points and

9    Authorities; the Declarations of Kieran P. Ringgenberg and Richard Cheng, the Affidavit of Paul

10   J. Mattal, all other pleadings and papers filed in this action; and upon such other matters as may

11   be presented to the Court at the time of hearing.

12

13   DATED: August 24, 2010                    BOIES SCHILLER & FLEXNER LLP

14

15                                     By: /s/ Kieran P. Ringgenberg
                                           Kieran P. Ringgenberg
16                                         Attorneys for Plaintiffs
                                           Oracle USA, Inc., Oracle America, Inc.,
17                                         and Oracle International Corp.

18

19

20

21

22

23

24

25

26

27

28

iv

1

2

### PLAINTIFFS' MOTION FOR PRESERVATION ORDER
### AND MEMORANDUM OF POINTS AND AUTHORITIES

3        Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

4    (together "Oracle" or "Plaintiffs") file this motion for an order requiring Defendants Rimini

5    Street, Inc. ("Rimini") and its CEO, Seth Ravin ("Ravin"), to preserve relevant evidence by

6    creating forensic images of the individual computers of relevant custodians.

7        The parties are mindful of the Court's order on August 19, 2010 (Docket No. 79), which

8    provides for the submission of discovery disputes so that they can be decided at the Status and

9    Dispute Resolution Conference on September 9, 2010.  The parties agreed to a briefing schedule

10   for this motion so that it may be fully submitted in advance of that Conference.[1]

11   **I.    INTRODUCTION**

12       Oracle recently discovered that Rimini and Ravin have failed to take adequate measures

13   to preserve relevant evidence in this litigation.  Critical evidence has already been lost, and

14   Defendants still refuse to take the steps necessary to preserve remaining data on Rimini's

15   computers, such as preserving files that have been "deleted" but still may be restored.  In

16   particular, despite anticipating and preparing for litigation since late 2008, Defendants took no

17   steps to preserve information until after the complaint had been filed, waited some indefinite

18   amount of time to begin their preservation efforts, delegated preservation responsibility to the

19   discretion of individual employees, failed to take steps any steps to prevent deletion of critical

20   data such as system files and logs, and failed to take any steps to preserve highly relevant forms

21   of communication used at Rimini, such as instant messages.  As a result, it is certain that

22   evidence from each of these categories has been destroyed.  The full extent of the destruction,

23   and the size of the gaps in Rimini's preservation efforts remain unknown because Rimini has

24   failed to produce a competent, prepared 30(b)(6) witness who can speak to these issues.

25   _____

26   [1] Although Rimini maintains that formal briefing is not appropriate in light of the Court's August
27   19 Order, Rimini has agreed to file its opposition on August 31, and Oracle will file any reply on
     September 3.

28

1    The parties have met and conferred, and Rimini has agreed to take some belated steps to

2    preserve the data that still exists.  Even these measures are inadequate, however.  As relevant to

3    this motion, Rimini refuses to create forensic images of the computers of its relevant custodians,

4    ensuring that still more highly relevant information, including deleted files, will be lost.

5    Accordingly, Oracle respectfully requests that the Court enter an order requiring Defendants to

6    prepare forensic images of hard drives of custodians with relevant information.

7        By Defendants' own admissions, they anticipated litigation with Oracle long before this

8    case was filed, yet took no steps to preserve relevant data.

9    • In **December 2008**, Rimini and Oracle exchanged correspondence in which Rimini

10       threatened litigation against Oracle; Oracle in turn notified Rimini of the claims Oracle

11       has asserted in this case and of Rimini's obligation to preserve evidence.

12   ●  ███████████████████████████████████████████████████

13      ████████████████████████████████████████

14   • In **September 2009**, Ravin represented to this Court that he believed Oracle was planning

15       litigation against Rimini.

16   • After this lawsuit was filed on January 25, 2010, Ravin told the press that Rimini had

17       "anticipated" this litigation and had budgeted "millions and millions of dollars" to pay

18       attorney's fees.

19   Yet Rimini <u>did nothing</u> to preserve evidence until weeks after Oracle filed suit.  Evidently,

20   Defendants prepared financially and strategically for this litigation, but did nothing to preserve

21   data.

22        Since this case was filed, Defendants still have not taken necessary steps to preserve

23   relevant data.  Rimini refused to provide a complete or consistent explanation of its efforts to

24   preserve and collect documents, including producing an unprepared and misinformed Rule

25   30(b)(6) designee.  The night before Oracle filed this motion, Rimini agreed to provide a

26   declaration on personal knowledge detailing its preservation efforts.  However, even the

27   information that Rimini has provided to date shows that Rimini's efforts, once begun, have been

28   inadequate. ███████████████████████████████████████

2

1 ████████████████████████████████████████████ Such measures depend on

2 the discretion of individual, non-lawyer employees and are insufficient as a matter of law.

3         As a result, important data has likely been lost.  One example is instant messages. ████

4 ██████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ███████████████████████████████████████████

8 ██████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ███████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ██████████████████████████████████████████████

14 ██████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████

17         Rimini's failure to begin preservation efforts after anticipating litigation, its reliance on

18 employee discretion, and its failure to preserve instant messages are just examples. Undoubtedly,

19 given Defendants' demonstrated failures, additional information will show that other important

20 documents and files have also been lost.  Forensic images would preserve whatever data remains.

21 They would also permit efforts to recover files that have been "deleted" but which can be

22 restored.  If no forensic images are taken, the ability to recover these deleted files will diminish

23 over time and will eventually be lost.

24         In light of Defendants' failures to comply with their preservation obligations, Oracle

25 respectfully submits this motion for a preservation order to arrest the ongoing loss of relevant

26 evidence.  A proposed Order is attached.  Oracle reserves the right to seek other relief once it has

27 determined the extent, and the significance, of the evidence that has been lost.

28



PLAINTIFFS' MOTION FOR PRESERVATION ORDER

1    II.      **STATEMENT OF FACTS**

2          Oracle filed this action on January 25, 2010 alleging that Rimini and Ravin had built a

3    business on systematic theft of Oracle's intellectual property including illegal downloading of

4    Oracle's copyrighted software and support materials in violation of, *inter alia*, the Copyright Act

5    and CFAA.  (Complaint, Docket No. 1; First Amended Complaint, Docket No. 36 ("FAC"), ¶¶

6    1, 5-6, 14.)[2]   The complaint also alleged that Rimini has also used crawlers to download massive

7    amounts of Oracle support materials from Oracle's websites, in violation of those websites'

8    terms of use.  (FAC ¶¶ 6, 41.)  The complaint further alleged that Rimini's illegal behavior

9    mimicked that of TomorrowNow, a business that Ravin had previously managed, now part of

10   SAP AG.  (FAC ¶¶ 10, 12-13, 49.)  As Defendants were well aware, Oracle has been in litigation

11   with TomorrowNow and SAP since 2007.

12          Although Rimini portrays itself in this lawsuit as small company with limited resources,

13   Rimini publicly describes itself as the "the leading third-party maintenance and support provider

14   for enterprise software," with "Global" and "Fortune 500" customers.  (Declaration of Kieran

15   Ringgenberg in Support of Motion for Preservation Order ("Ringgenberg Decl.") Ex. A[Mar. 29,

16   2010 Rimini press release "Leading Support Provider Aims to End Oracle's Campaign of

17   Anticompetitive Tactics"].)  ████████████████████████████████████

18   ████████████████████   It alleges it has "accumulated nearly $150 million in

19   sales backlog."  (Counterclaim, Docket No. 30, ¶ 13.)

20          After Oracle filed its complaint, Rimini and Ravin began an aggressive public relations

21   and media campaign.  One *BusinessWeek/IDG* article reported an interview with Ravin,

22   including the following:

23          Rimini Street expects to spend "millions and millions of dollars" to pay its legal
             counsel in the case, [Ravin] said.  **The company anticipated the suit and**
24          **budgeted for the legal fees**, which it considers "an investment we are making to
             finally put this issue to rest."

25   Chris Kanaracus, *Rimini Street Files Countersuit Against Oracle*, BusinessWeek/IDG, March 29,

26   _____

27   [2] Oracle subsequently filed its First Amended Complaint on April 19, 2010.

28                                                  4

1    2010) (emphasis added) (Ringgenberg Decl. Ex. C.).

2    **A.    In December 2008, Rimini Threatens Oracle with Litigation and Oracle**
3    **Demands Rimini Preserve Evidence**

4    It is unsurprising that Rimini anticipated Oracle's lawsuit, as the parties had exchanged

5    written litigation warnings more than a year before Oracle's January 2010 filing.  On December

6    3, 2008, Rimini's counsel wrote Oracle and alleged that Oracle had violated the antitrust laws,

7    demanding that Oracle take steps to make it easier for Rimini to copy Oracle's intellectual

8    property.  (Ringgenberg Decl. Ex. D, Dec. 3, 2008 letter from D. Goldfine to J. Ross.)  Rimini's

9    counsel wrote again on December 19, 2008, repeating the same charges (Ringgenberg Decl. Ex.

10    E, Dec. 19, 2008 letter from D, Goldfine to D. Wall.)  The letters threaten litigation without

11    expressly saying so.  Rimini's December 3 letter says that without "corrective action," these

12    issues "could lead to a further response from Rimini Street" or "government entities with

13    jurisdiction."  (Ringgenberg Decl. Ex. D.)  Rimini's December 18 letter asserts that steps by

14    Oracle are necessary to "avoiding [Rimini] having to take any additional steps to remedy

15    Oracle's wrongful and illegal conduct."  (Ringgenberg Decl. Ex. E.)

16    On December 23, 2008, Oracle responded through counsel, making clear that Rimini's

17    allegations of antitrust violations were baseless and further explaining that Rimini's massive

18    downloading of Oracle's software and support materials was illegal.  (Ringgenberg Decl. Ex. F,

19    Dec. 23, 2008 letter from D. Wall to D. Goldfine.)  Specifically, "Rimini Street's copying and/or

20    use of [Oracle's Support Materials] infringes on Oracle's copyrights, and other intellectual

21    property rights, and is an invasion of its computer systems contrary to CAFA [Computer Abuse

22    and Fraud Act] and other relevant laws." (*Id.*)  Accordingly, Oracle demanded that Rimini "take

23    all necessary measures to preserve all documents, electronic records, and Support Materials that

24    relate or bear witness to the access to and downloading of Oracle Support Materials that has

25    occurred this far." (*Id.*).

26    **B.**    ██████████████████████████████████████

27    ████████████████████████████████████████████████

28    ████████████████████████████████████████████

5

**C.     In September 2009, Ravin Represented to the Court That Rimini Anticipated Litigation with Oracle**

As the Court is aware, Oracle is currently involved in another litigation involving similar issues. Rimini's founder and CEO, Seth Ravin, was formerly President of TomorrowNow, which – like Rimini – offered support to companies that used Oracle software. TomorrowNow was purchased by SAP AG, and Oracle brought suit alleging copyright infringement and other claims. *Oracle USA, Inc. et al. v. SAP AG et al*, No. 07-cv-01658 (N.D. Cal. filed March 22, 2007) ("*SAP TN*"). SAP has since conceded liability on Oracle's claim of copyright infringement, including infringement occurring during the time Seth Ravin managed TomorrowNow. (Ringgenberg Decl. Ex. H, *SAP TN,* Aug. 17, 2010 Order re Motions for Partial Summary Judgment.)

In the *SAP TN* case, Oracle sought discovery from Rimini and Ravin. They opposed discovery, arguing that Oracle's purpose in pursuing evidence from Rimini was not for use in the *SAP TN* case but rather for a planned litigation against Rimini. Specifically, in Ravin's September 14, 2009 opposition to Oracle's motion to compel filed in this Court, Ravin asserted that "[I]n 2008 and early 2009, Oracle began making threats against Rimini Street concerning a potential claim that Rimini Street infringes Oracle's intellectual property rights." (Ringgenberg Decl. Ex. I, Sep. 14, 2009, Ravin and Rimini's Opposition to Oracle's Motion to Compel (*Oracle USA, Inc. et al. v. SAP AG et al*, No 09-cv-01591 (D. Nev.), Docket No. 26) at 3.) Ravin argued that the "true purpose" of the subpoenas to Ravin and Rimini was as "pre-complaint discovery" and "pre-litigation discovery" aiming to obtain information for "use in a separate action against Rimini Street." (*Id.* at 3, 6, 18-19.)

**D.     Rimini Refused and Delayed Efforts to Discuss Preservation Issues**

On January 28, 2010, shortly after the lawsuit was filed, Oracle sought confirmation that Rimini had preserved relevant evidence "since receiving the December 23, 2008 letter from

6

1    Oracle's outside counsel" and requested a meet-and-confer to discuss preservation issues.

2    (Ringgenberg Decl. Ex. J, Jan. 28, 2010 letter from F. Norton to J. Jacobson and M. Levin.)

3    Rimini's response, ten days later, declined Oracle's invitation to meet and confer but confirmed

4    that "appropriate measures are in place to preserve potentially relevant materials."  (Ringgenberg

5    Decl. Ex. K, Feb. 6, 2010, letter from M. Levin to F. Norton.)  In the same letter, Rimini took a

6    broad view of preservation obligations, demanding that Oracle preserve "all materials relating to

7    Oracle's websites," including specifically "all servers pertaining to the software at issue,

8    including associates usage data" and "access logs." (*Id.*)  Rimini also noted that "Oracle's

9    obligations extend to materials…stored electronically on hard drives," and stated its expectation

10   that "Oracle has adopted appropriate safeguards to prevent any intentional or inadvertent

11   modification, alteration, or destruction of potentially relevant materials by its employees." (*Id.*)

12        Rimini then continued to rebuff Oracle's requests to meet and confer regarding

13   preservation and insisted that Rimini had adequate preservation measures in place. (Ringgenberg

14   Decl. Ex. L, Mar. 16, 2010, letter from F. Norton to M. Levin requesting meet and confer;

15   Ringgenberg Decl. Ex. M, Mar. 22, 2010, letter from F. Norton to M. Levin requesting meet and

16   confer; Ringgenberg Decl. Ex. N, Mar. 17, 2010, letter from M. Levin to F. Norton; Ringgenberg

17   Decl. Ex. O, Mar. 29, 2010, letter from R. Reckers to F. Norton.)  After Oracle articulated

18   thirteen specific categories of potentially relevant information that Rimini should preserve,

19   including "all versions of any tool used to download files from any Oracle source" and "all logs

20   reflecting downloads from any Oracle source," and "all communications among Rimini Street

21   employees concerning the downloading or copying of any Oracle software or support materials,"

22   Rimini replied that "[b]ased on the extensive preservation efforts and investigation to date,

23   Defendants Ravin and Rimini Street are preserving information consistent with each of the

24   categories you have identified."  (Ringgenberg Decl. Exs. L and M.)  Rimini also reiterated its

25   demand that Oracle preserve several categories of documents, including "logs or other records of

26   Defendants' alleged access of Plaintiffs' websites."  (Ringgenberg Decl. Ex. O.)

27

28

**E.    Rimini Offers an Unprepared and Misinformed Rule 30(b)(6) Designee on Preservation and Collection**

Although Rimini repeatedly expressed a willingness to discuss preservation matters informally, it failed to do so in any meaningful way for months, and then insisted that Oracle proceed with formal discovery.  (Docket No. 76 (Joint CMC Statement), at 4:3-7.)  Oracle issued a Rule 30(b)(6) deposition notice on Rimini's preservation and collection of relevant documents. (Ringgenberg Decl. Ex. P, Jun. 2, 2010, Notice of Deposition.)  The parties agreed on a date of June 25, 2010, but the deposition was delayed by Rimini's motion for a protective order. (Docket No. 79, Order denying protective order.)

PLAINTIFFS' MOTION FOR PRESERVATION ORDER



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR PRESERVATION ORDER

1    **F.    Rimini's Failure to Preserve Key Documents**

2    ████████████████████████████████████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████████████████

5    ████████████████████████████████████

6    **1.   Forensic Images**

7    Forensic images of a hard drive are bit-by-bit copies of the hard drive. (Affidavit of Paul

8    Mattal ("Mattal Aff.") ¶ 12.) Where a forensic image is taken, all the information on the hard

9    drive is preserved. A skilled technician can recover deleted files from a forensic image of a hard

10   drive. This is because "when a user deletes a file, that file is not actually removed from the

11   computer's hard drive. Rather the file is marked as 'unallocated space,' giving the computer

12   permission to overwrite the file with new data." *Nucor Corp. v. Bell*, 251 F.R.D. 191, 198

13   (D.S.C. 2008). But "when that file is overwritten with new data, it is permanently lost and

14   unrecoverable." *Id.* A forensic image taken now is more likely to reveal relevant deleted files

15   than one taken later because, in the intervening period, old files will be overwritten with new

16   data. (Mattal Aff. ¶¶ 5, 6, 12.)

17   ████████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████ In fact, a skilled technician can create

21   images of approximately ten hard drives a day, at a cost of a few hundred dollars per hard drive.

22   (Declaration of Richard Cheng ("Cheng Decl.") ¶ 10.) Generally, the process takes one-to-two

23   hours per computer. (*Id.* ¶ 11.) Where computers are geographically dispersed, the process can

24   be completed efficiently via a remote connection, usually performed overnight so that there is no

25   loss of use of the computer during working hours. (*Id.* ¶ 8.) A technician can conduct many of

26   these remote back-ups at the same time. (*Id.* ¶ 9.)

27   In addition to other preservation measures, Oracle has prepared approximately 200

28   forensic images of user hard drives in connection with this action. (Ringgenberg Decl. ¶ 35.)

10

1        **2. Instant Messages**

2        Instant messages ("IMs") are "real-time communications with others over the internet."

3   *United States v. Brand*, 467 F.3d 179, 183 n.2 (2d Cir. 2006).



PLAINTIFFS' MOTION FOR PRESERVATION ORDER

1   
2   
3   
4   
5   
6   
7   
8   
9   
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  ──────────────
23  
24  
25  
26  
27  
28  



PLAINTIFFS' MOTION FOR PRESERVATION ORDER

1 

2

3

4

5

6       **3. System Files and Logs**

7

8

9

10

11

12   These servers contain system files and logs that trace the history of what Rimini has done and

13   when.  (Mattal Aff. ¶ 6.)  Moreover, such files and logs are not automatically maintained by the

14   computer systems; instead, they are overwritten or deleted over time.  (Mattal Aff. ¶ 12.)

15       Oracle alleges that Rimini's downloading, copying, and use of Oracle software and

16   support materials is unlawful. (FAC ¶¶ 1, 5-6, 14.)

17

18

19

20

21   **G.       Rimini Refuses to Take Corrective Action**

22       The day after the Rule 30(b)(6) deposition, Oracle wrote Rimini and once again

23   demanded that Rimini take immediate steps to prevent the ongoing destruction of relevant data.

24   (Ringgenberg Decl. Ex. EE, Aug. 13, 2010 letter from K. Ringgenberg to R. Reckers.)  Rimini

25   responded in writing on August 18, and the parties met and conferred on Friday, August 20.  At

26   that time, Oracle also demanded that Rimini provide a declaration describing its preservation

27   efforts that would permit Oracle and the Court to further evaluate the adequacy of those efforts.

28   On Monday, August 23, Rimini said it would provide the requested declaration.  Rimini also

13

1    agreed to take a snapshot image of certain of its servers.  Rimini did not agree to take forensic

2    images of the computers of its employees who possess relevant data.  (Ringgenberg Decl. Ex.

3    FF, August 23, 2010 e-mail from R. Reckers to K. Ringgenberg.)

4    **III.  ARGUMENT**

5          **A.    Legal Standard**

6          "The common law duty to preserve evidence relevant to litigation is well recognized."

7    *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d

8    456, 466 (S.D.N.Y. 2010) ("*Pension Committee*"); *accord State of Idaho Potato Com'n v. G & T*

9    *Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005) ("ongoing duty to preserve

10   evidence").  In sum, "the courts have a right to expect that litigants and counsel will take the

11   necessary steps to ensure that relevant records are preserved when litigation is reasonably

12   anticipated, and that such records are collected, reviewed, and produced to the opposing

13   party. . . . By now, it should be abundantly clear that the duty to preserve means what it says and

14   that a failure to preserve records – paper or electronic – and to search in the right places for those

15   records, will inevitably result in the spoliation of evidence."  *Pension Committee*, 685 F. Supp.

16   2d at 462.

17         The preservation obligation extends to require the litigant "to preserve what it knows, or

18   reasonably should know, is relevant in the action, is reasonably calculated to lead to the

19   discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is

20   the subject of a pending discovery request."  *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115

21   F.R.D. 543, 556-57 (N.D. Cal. 1987) (citation omitted).  As one court in this circuit explained,

22   preservation "includes taking steps to prevent the partial or full destruction, alteration, testing,

23   deletion, shredding, incineration, erasing, wiping, relocation, migration, theft or mutation of such

24   material, as well as negligent or intentional handling that would make material incomplete or

25   inaccessible."  *Creative Sci. Sys., Inc. v. Forex Capital Mkts LLC*, No. C 04-03746, 2006 WL

26   870973 at *1 (N.D. Cal. Apr. 4, 2006).

27         The Court has the inherent power to enter an order to ensure that evidence is preserved

28   and not destroyed.  *See, e.g., Del Campo v. Kennedy*, No. C-01-21151, 2006 WL 2586633, at *2

14

---

1    (N.D. Cal. Sept. 8, 2006); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-36 (2004).

2    The failure to preserve evidence may ultimately subject a party to sanctions, including an

3    adverse inference against the party or witness responsible for the spoliation, the exclusion of the

4    spoliating party's testimony, or monetary sanctions, *e.g., Glover v. BIC Corp.,* 6 F.3d 1318, 1329

5    (9th Cir. 1993), but the purpose of a preservation order is to prevent or reduce spoliation before it

6    occurs.

7        The policy underlying the Court's power in this area is "'is the need to preserve the

8    integrity of the judicial process in order to retain confidence that the process works to uncover

9    the truth.' The courts must protect the integrity of the judicial process because, 'as soon as the

10    process falters the people are then justified in abandoning support for the system.'" *Pension*

11    *Committee*, 685 F. Supp. 2d 465-66 (internal alterations omitted) (quoting *Silvestri v. General*

12    *Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

13        In deciding a motion for a preservation order, courts have considered: 1) the level of

14    concern the court has for the continuing existence and maintenance of the integrity of the

15    evidence in question in the absence of an order directing preservation of the evidence; 2) any

16    irreparable harm likely to result to the party seeking the preservation of the evidence absent an

17    order directing preservation; and 3) the capability of an individual, entity, or party to maintain

18    the evidence sought to be preserved." *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419,

19    No. CV 06-1093, at *7 (C.D. Cal. May 29, 2007) (citation omitted) (ordering preservation of

20    server logs); *accord Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006).  It is not

21    necessary to "show that specific documents were lost," rather, it is enough to "demonstrate that

22    certain types of relevant documents existed." *Treppel*, 233 F.R.D. at 372.[5]

23    _____

24    [5] Other courts have required that a party seeking a preservation order satisfy a simpler two-prong
      balancing test, rather than the three-prong test quoted here. *Pueblo of Laguna*, 60 Fed.Cl. at 138

25    (party must demonstrate that preservation order is "necessary and not unduly burdensome").
      The *Treppel* court, however, observed that the distinction between the two tests "is more

26    apparent than real," *Treppel,* 233 F.R.D. 363 at 370. This is because demonstrating that a
      preservation order is "necessary" requires a party to show that a danger of spoliation exists, and

27    that the spoliation would involve relevant evidence and would thus cause harm, the first two
      prongs of the three-prong test. Oracle submits that the danger that spoliation of highly relevant

28                                                               (Footnote Continued on Next Page.)

                                          15

1    **B.      Rimini Failed to Preserve Evidence When It Anticipated Litigation**

2          The duty to preserve evidence attaches "'when a party should have known that the

3    evidence may be relevant to future litigation.'"  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp.

4    2d 1060, 1068 (N.D. Cal. 2006) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216

5    (S.D.N.Y. 2003) ("*Zubulake IV*")); *accord Silvestri*, 271 F.3d at 591 ("The duty to preserve

6    material evidence arises not only during litigation but also extends to that period before the

7    litigation when a party reasonably should know that the evidence may be relevant to anticipated

8    litigation."); *World Courier v. Barone*, No. C 06-3072, 2007 WL 1119196, at *1 (N.D. Cal. Apr.

9    16, 2007) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *see also*

10   *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 369 (9th Cir. 1992)

11   (failure to preserve evidence two years before initiation of litigation was sanctionable).

12         Rimini's duty to preserve relevant documents attached well before February 2010, when

13   Rimini took its first steps to preserve evidence.  In December 2008, Rimini's counsel sent two

14   letters to Oracle threatening litigation.  (Ringgenberg Decl. Exs. D and E.)  Then, on December

15   23, 2008, Oracle expressly put Rimini on notice not just of the claims asserted in this litigation,

16   but of Rimini's obligation to preserve relevant evidence, and the duty attached at that time.

17   (Ringgenberg Decl. Ex. F, December 23 Letter by Wall.)  Rimini's duty to preserve evidence

18   began at that time.  *See Napster*, 462 F. Supp. 2d at 1069 (duty to preserve evidence attached

19   when plaintiff threatened to sue defendant).  ████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████

22         Moreover, in September 2009, Rimini's CEO Ravin argued to this Court that the "true

23   purpose" of Oracle's subpoenas in the *SAP TN* case was to "pre-complaint discovery" and "pre-

24   litigation discovery" aiming to obtain information for "use in a separate action against Rimini

25   Street."  (Ringgenberg Decl. Ex. I (Sep. 14, 2009, Ravin and Rimini's Opposition to Oracle's

26   _____

(Footnote Continued from Previous Page.)

27   materials has occurred and will continue to occur satisfies either test.

28
                                            16

1    Motion to Compel (Docket No. 26).)  Defendants cannot be permitted to tell this Court, in

2    September 2009, that Oracle was planning litigation against Oracle and then, when the litigation

3    is filed, maintain that litigation was not anticipated.  And, finally, Rimini's CEO has been quoted

4    in the press saying specifically that Rimini anticipated litigation before it was filed and budgeted

5    "millions and millions" of dollars for attorney's fees.  (Ringgenberg Decl. Ex. C (Mar. 29, 2010,

6    Chris Kanaracus, *Rimini Street Files Countersuit Against Oracle*, BusinessWeek/IDG ).)

7           Based on these facts, Rimini's had a duty to preserve evidence well before this lawsuit

8    was filed.  *See Zubulake IV*, 220 F.R.D. at 216-17 (defendant's duty to preserve arose four

9    months before plaintiff filed an EEOC charge, when plaintiff's colleagues "recognized the

10   possibility that she might sue"); *see also Nucor Corp.*, 251 F.R.D. at 195-96 (duty to preserve

11   attached several months before lawsuit was filed, when company employees anticipated

12   litigation and received letter regarding possession of plaintiff's trade secrets).

13          Yet Rimini took no action at all to preserve relevant evidence until its counsel sent an e-

14   mail to employees some time in February 2010.[6]  Rimini necessarily deleted or lost relevant

15   evidence during the fourteen-month period between when it should have begun to preserve

16   evidence and when it actually instituted preservation measures.  *Pension Committee*, 685 F.

17   Supp. 2d at 462 ("a failure to preserve records...will inevitably result in the spoliation of

18   evidence"); *see also Prudential Ins. Co. of America Sales Practices Litig.*, 169 F.R.D. 598, 615

19   (D.N.J. 1997) ("haphazard and uncoordinated approach to document retention indisputably

20   denies [] party opponents potential evidence to establish facts in dispute").  As discussed below,

21   the best chance of recovering some of those deleted files is from forensic images of Rimini

22   _____

23   6 ████████████████████████████████████████████████████████

24   ████████████████  Rimini did not correct the record at the deposition, but in response to a specific

25   question from Oracle's counsel, Rimini's counsel later replied in an e-mail that the legal notice
     had in fact gone out on February 4.  Rimini has not provided a privilege log identifying the

26   communication.  Even February 4 is ten days after the complaint was filed and a week after
     Oracle specifically reminded Rimini of its obligation to preserve evidence.  (Ringgenberg Decl.

27   Ex. J (F. Norton Jan. 28, 2010 letter.)

28

1    computer systems, which images Rimini has refused to take.  As a result, more and more deleted

2    files become unrecoverable every day.  (Mattal Aff. ¶ 12.)

3         **C.    Rimini Has Impermissibly Left Preservation to Its Employees' Discretion**

4         The second fundamental flaw in Rimini's preservation efforts is that Rimini left

5    preservation to its employees' discretion. ███████████████████████████

6    ████████████████████████████████████████

7    ████████████████████████████████████

8    ████████████████████████████████████████[7]

9    Counsel later clarified that the delete function on e-mail was not, in fact, disabled.  (Ringgenberg

10   Decl. Ex. Q, Aug. 13, 2010 Reckers letter.)  These minimal efforts fail to satisfy Rimini's clear

11   obligations.

12        The "duty to preserve documents in the face of pending litigation is not a passive

13   obligation." *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509 at * 11 (N.D. Ill.

14   Aug. 18, 2005) (citations omitted).  A party must "suspend any existing policies related to

15   deleting or destroying files and preserve all relevant documents related to the litigation,"

16   *Napster*, 462 F. Supp. 2d at 1070, and "put in place a 'litigation hold' to ensure the preservation

17   of relevant documents." *Zubulake IV*, 220 F.R.D. at 218.  Counsel must then take "affirmative

18   steps" to monitor compliance with the litigation hold.  *Treppel*, 249 F.R.D. at 118 (citation

19   omitted); *see also Housing Rights Center v. Sterling*, No. CV 03-859, 2005 WL 3320739, at *5

20   (C.D. Cal. Mar. 2, 2005) ("A party's discovery obligations do not end with the implementation

21   of a 'litigation hold' – to the contrary, that's only the beginning. Counsel must oversee

22   compliance with the litigation hold, monitoring the party's efforts to retain and produce the

23   relevant documents") (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y.

24   ————————————

25   [7] After the deposition, Rimini's counsel wrote in an unsworn statement that some other vague
     measures had been taken, namely that counsel had "periodically remind[ed] employees of their
26   ongoing obligations to preserve any and all potentially relevant materials, and communicat[ed]
     directly with key employees about discovery."  Such vague assurances, particularly when in
27   conflict with the sworn testimony of a Rule 30(b)(6) designee, provide no basis to conclude that
     relevant materials have been preserved.

28

                           18

1    2004).  Simply put, "it is not sufficient to notify all employees of a litigation hold and expect that

2    the party will then retain and produce all relevant information." *Treppel*, 249 F.R.D. at 118;

3    *accord United States v. Phillip Morris*, 327 F. Supp. 2d 21 (D.D.C. 2004) (awarding $2.75

4    million in sanctions and precluding employees who failed to follow legal hold from testifying at

5    trial after Phillip Morris failed to ensure employees' compliance with the duty to preserve). ▮

6    ███████████████████████████████████████████████████████

7    ███████████████████████████████████████████████

8    ███████████████████████████████████████████████████████

9    █████████████████████████████████████████████████████

10   █████████

11        Rimini has contended that its counsel's collection of unspecified documents from 30

12   unidentified individuals is sufficient to satisfy its preservation obligations.  It is not.  Obviously,

13   that collection does nothing to preserve documents in the files of Rimini's other 170 employees

14   or on Rimini's servers.  Even as to the chosen 30, Rimini has refused to specify *what* it collected

15   from these individuals, making it impossible for Oracle to verify that relevant information has

16   been preserved.  What Rimini has revealed shows that its collection was inadequate to preserve

17   relevant evidence.  Rimini has said no "automated methods were employed" in the collection,

18   ruling out any systematic or comprehensive collection of all of a user's files.  (Ringgenberg

19   Decl. Ex. R at 5.)  Rimini also did not collect IM files, meaning they could be deleted by users,

20   intentionally or inadvertently. ████████████████████████

21   ███████████████████████████████████████████████████████

22   █████████████████████████████ And because Rimini did not

23   prepare forensic images of computer hard drives, every day results in the permanent loss of more

24   files that users have deleted.  (Mattal Aff. ¶¶6, 12)  Precisely for these reasons, Rimini should be

25   ordered to create forensic images to save what information still remains.

26       **D.**    **Rimini Failed to Preserve Important Categories of Information**

27        In addition to these other errors, Rimini has failed to take action to preserve important

28   discoverable information in the form of instant messages and system files.   While Rimini has

19

1    failed to monitor its individual employees' preservation of data on their hard drives, there are

2    other sources of data where Rimini's failures to preserve are total (or near-total).  This data

3    concerns issues central to this lawsuit; its spoliation will cause irreparable harm.

4         Before August 18, 2010, Rimini had no policy requiring preservation of instant messages,

5    relying on the discretion of individual employees, many of whom, Rimini has conceded, did not

6    save them.  (Ringgenberg Decl. Ex. R) ███████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ██████████████████As a result, many instant messages are now gone, and to the extent they can

15   be recovered at all, they can only be recovered with a forensic image of the users' hard drives.

16   (Mattal Aff. ¶¶ 6, 12)

17        In addition, Rimini has failed to take adequate steps to preserve system files and logs.

18   Rimini's Rule 30(b)(6) designee identified nothing that had been done to preserve system or log

19   files.  Yet such files are not preserved automatically, and are regularly changed, deleted, or

20   overwritten in the ordinary operation of servers.  (Mattal Aff. ¶¶ 5, 6)    Rimini has ignored that

21   "in the world of electronic data, the preservation obligation is not limited simply to avoiding

22   affirmative acts of destruction." *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 176

23   (S.D.N.Y. 2004) (if electronic data faces "automatic deletion" then "it is necessary for a party

24   facing litigation to take active steps to halt that process").

25        Rimini has previously contended that its tape back-up system was an adequate

26   preservation system.  While the back-up may be able to provide some information otherwise lost

27   due to Rimini's failure to take adequate preservation measures, it is incomplete in important

28   respects. ████████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ███████████████████████████████████████ Rimini's last-minute

3 agreement to begin preserving IMs and taking snapshot images of its servers implicitly concedes

4 that its back-ups are not an adequate substitute.  For this reason as well, the Court should order

5 Rimini to create forensic images and preserve these files.

6       **E.**      **The Need For Forensic Imaging Outweighs Any Burden**

7       As shown above, relevant evidence has already been lost due to Rimini's failure to

8 undertake adequate preservation measures because:  (1) Rimini failed to timely undertake any

9 preservation; (2) Rimini's methods for preserving evidence improperly rely on the discretion of

10 individual employees; and (3) Rimini chose to exclude from preservation several categories of

11 relevant evidence, including IMs and system and log files.  Accordingly, the facts demonstrate

12 both that evidence is likely to be lost and that the evidence is important, strongly favoring a

13 preservation order. *See Columbia Pictures*, 2007 WL 2080419 at *7 (citing criteria for issuance

14 of preservation order and ordering preservation of server logs).

15       Because forensic imaging would preserve whatever files remain, and because it is the

16 only way to recover evidence that has been deleted or overwritten as the result of these failures,

17 Rimini should create forensic images of the hard drives of custodians with relevant information

18 at its own expense.  This will ensure that any files that currently exist will not disappear.

19 Forensic imaging allows the recovery of the deleted files stored in the unallocated space of a

20 user's hard drive, and may here enable the recovery of files deleted before the image was

21 prepared, including IMs, that were not preserved and files that were deleted before users received

22 and understood their obligations under the legal hold.  (Mattal Aff. ¶ 5-6, 12, Cheng Decl. ¶ 6.)

23 *see also Nucor Corp.,* 251 F.R.D. at 198.

24       Where, as here, "there is simply no other way in which to seek this information," forensic

25 imaging is warranted.  *Covad Comm'ns Co. v. Revonet, Inc.*, 258 F.R.D. 5, 13 (D.D.C. 2009)

26 (ordering forensic inspection of database in case involving theft of electronic information).  The

27 critical importance that electronic evidence plays in this case only compounds the need for a

28 preservation order requiring forensic imaging.  *See, e.g., Genworth Fin. Wealth Mgt., Inc. v.*

1   *McMullan*, 267 F.R.D. 443, 448 (D. Conn. 2010) ("[t]here is a sufficient nexus between

2   Genworth's claims and its need to obtain a mirror image of the computer's hard drive, warranting

3   the imaging requested by the Plaintiff"); *See also Treppel*, 233 F.R.D. at 370 (observing that

4   preservation orders are "increasingly routine in cases involving electronic evidence"); *Treppel v.*

5   *Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) (ordering forensic imaging).

6           The third factor in considering such an order – Rimini's capability of preserving evidence

7   and the burden from preservation – also favors the issuance of an order requiring Rimini to

8   prepare forensic images of the computers of its employees who possess relevant data.  *See*

9   *Columbia Pictures*, 2007 WL 2080419 at *7. ██████████████████████████

10  ████████████████████████████████████████████████████████████

11  ██████████████████████████████████████ Rimini reports it has set

12  aside "millions and millions of dollars" to fund this litigation.  (Ringgenberg Decl. Ex. C.)  It is

13  certainly capable of taking each of the necessary steps to preserve data.

14          Rimini has contended that Oracle should pay for forensic imaging of Rimini's computers.

15  But the expense of forensic imaging has become essential because of Rimini's failure to

16  adequately preserve documents.  It was Rimini's decision not to take any preservation steps until

17  weeks after this lawsuit was filed.  It was Rimini's decision not to preserve instant messages

18  until this lawsuit had been pending for seven months.   It was Rimini's decision to follow up

19  with the recipients of the legal hold notice only minimally.  Files that were deleted due to those

20  errors can only be recovered, if at all, using forensic images.  Having failed to meet its duty,

21  Rimini should not shift the cost of ameliorating its error onto Oracle.  *See Genworth Fin. Wealth*

22  *Mgt.*, 267 F.R.D. at 448 ; *Treppel*, 249 F.R.D. at 124.

23          Moreover, the burden of forensically imaging the computers of a limited group of

24  relevant custodians would not be not undue.  Rimini's assertions that the cost is too great are

25  apparently no more than speculation, as Mr. Dones had made no inquiry into those costs.  In fact,

26  "[c]reating a forensic image is no more burdensome than using the server for everyday business

27  activities." *Covad*, 258 F.R.D. at 10; (Cheng Decl. ¶¶ 5-8.)  Imaging can be performed for a few

28  hundred dollars per computer and requires approximately one to two hours per machine.  (Cheng

22

1   Decl. ¶¶ 9-12.)  This is hardly a crippling financial burden for Rimini, which claims $150 million

2   in revenue backlog.  For its part, Oracle has already prepared forensic images of approximately

3   200 computers in connection with this litigation alone, in addition to an even larger number

4   prepared for the *SAP TN* case.  (Ringgenberg Decl. ¶ 35.)

5           It bears emphasis that the process of restoring and analyzing forensic images for deleted

6   files and other evidence of wrongdoing is substantially more difficult and expensive than

7   creating the image in the first place.  *Covad*, 258 F.R.D. at 9.  Oracle, at this stage, is not asking

8   the Court to rule that Rimini should pay for Oracle's work for such forensic analysis.  All Oracle

9   seeks is for Rimini to prepare forensic images so that evidence is preserved and such forensic

10  analysis may be possible.

11  **IV.  CONCLUSION**

12          The development of a fuller record will provide more information regarding the evidence

13  that has been lost and its importance.  With that fuller picture, Oracle may seek additional relief

14  from the Court regarding spoliation of evidence, including possible sanctions.  But at this point,

15  for the reasons expressed above, Oracle merely requests, respectfully, that the Court enter an

16  order requiring Defendants to preserve existing data so that the loss of evidence is minimized.

17

18  DATED: August 24, 2010                    BOIES SCHILLER & FLEXNER LLP

19

20                                          By: /s/ Kieran P. Ringgenberg
21                                              Kieran P. Ringgenberg
                                               Attorneys for Plaintiffs
22                                              Oracle USA, Inc., Oracle America, Inc.,
                                               and Oracle International Corp.
23

24

25

26

27

28

                                          23