1    BOIES, SCHILLER & FLEXNER LLP
     RICHARD J. POCKER (NV Bar No. 3568)
2    300 South Fourth Street, Suite 800
     Las Vegas, NV 89101
3    Telephone: (702) 382-7300
     Facsimile: (702) 382-2755
4    rpocker@bsfllp.com

5    BOIES, SCHILLER & FLEXNER LLP
     STEVEN C. HOLTZMAN (pro hac vice)
6    FRED NORTON (pro hac vice)
     KIERAN P. RINGGENBERG (pro hac vice)
7    1999 Harrison Street, Suite 900
     Oakland, CA 94612
8    Telephone: (510) 874-1000
     Facsimile: (510) 874-1460
9    sholtzman@bsfllp.com
     fnorton@bsfllp.com
10   kringgenberg@bsfllp.com

11   Attorneys for Plaintiffs Oracle USA, Inc.,
     Oracle America, Inc., and Oracle International
12   Corporation

13

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (pro hac vice)
THOMAS S. HIXSON (pro hac vice)
KRISTEN A. PALUMBO (pro hac vice)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (pro hac vice application
to be submitted)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

14

UNITED STATES DISTRICT COURT

15

DISTRICT OF NEVADA

16

17   ORACLE USA, INC., a Colorado corporation;
     ORACLE AMERICA, INC., a Delaware
18   corporation; and ORACLE INTERNATIONAL
     CORPORATION, a California corporation,

19            Plaintiffs,

20        v.

21   RIMINI STREET, INC., a Nevada corporation;
     SETH RAVIN, an individual,

22            Defendants.

23

Case No  2:10-cv-0106-LRH-PAL

**DECLARATION OF RICHARD
CHENG**

24

25

26

27

28

1       I, Richard Cheng, hereby declare:

2       1.     The facts stated in this declaration are based upon my personal knowledge, except

3  where stated to be on information and belief, and as to those, I believe it to be true.  If called as a

4  witness, I could and would competently testify to the matters set forth herein

5       2.     I am employed as the Senior Manager of Computer Forensics and Electronic

6  Discovery at SFL Data, an electronic discovery, computer forensics, and litigation support

7  consulting firm located in San Francisco, California. Prior to joining SFL Data, I worked as a

8  Senior Manager of Computer Forensics and Electronic Discovery at Digital Mountain, a

9  litigation support and electronic discovery firm in Foster City, California, and as a Consultant in

10  the High-Tech Investigations and Information Technology Consulting Group at Kroll Associates,

11  a security consulting, investigative and intelligence firm in San Francisco, California. I have

12  attained the professional designations of Certified Information Systems Security Professional and

13  Certified Information Systems Auditor. I hold a Masters degree in Forensic Science and a

14  professional certificate in Forensic Computer Investigation.

15      3.     I regularly perform forensic imaging and analysis of computer hard drives and

16  other electronic storage media.  In the past five years, I have conducted hundreds of different

17  computer forensics investigations and electronic discovery data collections (often involving

18  numerous computers in a single case). I have provided reports and executed affidavits and

19  declarations describing my computer forensic analysis.  Attached hereto as Exhibit 1 is my

20  professional biography which truly and accurately summarizes my education, experience and

21  credentials as a computer forensics examiner.

22      4.     I am informed and believe that it has been asserted in this litigation that forensic

23  imaging is cost prohibitive and that such imaging would cost up to $1,200 per computer.

24      5.     I can attest that forensic imaging can commonly be completed for significantly

25  less cost than this.  Such images can be acquired in the forensic laboratory environment or they

26  can be acquired onsite at the business premises of the computers' users.  They can also be

27  acquired remotely where the computer forensic examiner – located in the forensic laboratory

28

DECLARATION OF RICHARD CHENG

1   environment– takes remote control of the computers – located at the premises of the computers'

2   users.  I have performed numerous such onsite acquisitions of forensic images.

3       6.    Forensic images are typically created by removing the hard drive of the

4   evidentiary computer, attaching it to a separate examination computer via a write-blocking

5   device that prevents modification from being made to the original hard drive, and then writing

6   the image to a forensically-prepared blank hard drive. Using a forensic program such as

7   Guidance Software's EnCase or Access Data's Forensic Toolkit Imager an image of the original

8   hard drive can then be acquired. Alternatively or in addition, images can be acquired by using

9   specialized, standalone hardware "disk duplicators" which perform the same function as the

10   examination computer and write-blocking device with regards to image acquisitions.

11       7.    While different variables will impact the overall speed of the forensic imaging

12   process, it is reasonable to estimate that the images can be created at a rate of 1GB to 2GB per

13   minute.  Modern standalone hardware disk duplicators can often create forensic images at speeds

14   approaching 4GB to 5GB per minute. Moreover, a competent forensic examiner can commonly

15   acquire images of two evidentiary computers at the same time.

16       8.    In situations where the evidentiary computers are geographically distant from the

17   examiner but do have connections to the Internet, the imaging process can be performed

18   remotely.  In this scenario, an encrypted drive which contains the image acquisition program as

19   well as sufficient space to hold an image of the original hard drive is sent to a computer's user.

20   At a pre-arranged time, the examiner then sends a request to remotely control the user's

21   computer. After granting the request, the user then connects the encrypted drive to the computer.

22   Once connected and mounted, the examiner can then decrypt the encrypted drive and acquire an

23   image of the original hard drive using the forensic image acquisition program. Upon completion

24   of the image acquisition, the examiner will dismount the drive and return control of the computer

25   to the user. Finally, the user will then return the encrypted drive to the examiner.

26       9.    When we are able to create forensic images in our lab, my firm often charges a

27   flat fee of $500 per computer, plus approximately $200 for expenses to cover the price of hard

28   drives that are used to store both the working and backup copies of the forensic images. When

3

1   imaging multiple computers, expenses can be minimized by storing multiple forensic images on

2   a single hard drive.

3        10.     When acquiring forensic images onsite at the business premises of our clients or

4   other entities, my firm normally charges $250 per hour for electronic discovery data collection

5   projects. We also honor a daily price cap of $2,000 for a 10 hour day, meaning the last two hours

6   of the day are free. Most average business computers take 1 – 2 hours to image. As the examiner

7   can image two evidence computers at a time, it is reasonable to estimate that a single examiner

8   can complete approximately 10 forensic images in a single day.

9        11.     When we acquire forensic images remotely, the image acquisition process is

10  typically started at the close of business and allowed to run overnight. The total time spent by an

11  examiner to perform the collection is typically 1 – 2 hours per computer image. A single

12  examiner can typically manage 10 such collections at a time.

13       12.     So, the total cost to acquire the images of 50 computers ranges from

14  approximately $10,000 – $25,000. The exact cost would be dependent on the number of

15  computers to be imaged in the lab, the number to be imaged on-site at a business premises, and

16  the number to be collected remotely.

17       13.     I declare under penalty of perjury under the laws of the United States that the

18  foregoing is true and correct to the best of my knowledge, and that this declaration was executed

19  on August 23, 2010.

20                                    _____

21                                           Richard Cheng

22

23

24

25

26

27

28

4