UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC. a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DECLARATION OF JOSEPH DONES REGARDING DOCUMENT COLLECTION AND PRESERVATION** |

## DECLARATION OF JOSEPH DONES

Pursuant to Federal Rule of Civil Procedure 30(b)(6), I gave my deposition on behalf of Rimini Street, Inc. ("Rimini") on August 12, 2010. Since my deposition, I understand there have been questions raised as to the completeness and accuracy of certain aspects of my deposition testimony. Given these questions, I have been asked to provide this declaration to supplement, clarify and, where necessary, to correct my August 12, 2010 testimony regarding Rimini Street's document preservation and collection efforts in connection with this litigation.

I, Joseph Dones, have personal knowledge of the facts stated below and, under penalty of perjury, hereby declare:

1. I am currently employed by Rimini Street Inc. ("Rimini"), where I am manager of information technology. In this capacity, I work with the other members of the IT department to maintain the IT infrastructure for the Rimini office in Pleasanton, California, the data center in Fremont, California, and the data center in Charlotte, North Carolina. My work address is 6601 Koll Center Parkway, Suite 300, Pleasanton, California.

1

2. By way of background, Rimini utilizes personal computers and servers for its operations. Personal computers include laptops and desktops and are typically assigned or allocated to an individual employee. Servers include computers that are not allocated to an individual employee. Rimini has at least 200 personal computers and approximately 45 servers.

**Document Preservation Measures**

3. Before addressing the specific document preservation measures adopted by Rimini directly in response to the Oracle litigation, Rimini's pre-litigation document preservation policies bear mention. In particular, Rimini has never had a document destruction policy, as exist in some companies, where older documents are destroyed as a matter of course after some period of time. Rather, Rimini documents were and are maintained indefinitely unless a user made the affirmative decision to delete a particular document.

4. Likewise, there are no mail box size quotas for Rimini's email system, and there is no auto-delete agent employed on Rimini Street's emails. As with other documents, Rimini's system maintains emails not designated for deletion, including emails of departed employees (which are preserved in "disabled" state to prevent deletion or usage).

5. A number of data stores at Rimini Street have long been configured to prevent deletion or modification by employees of the stored documents and electronic materials. A number of these "read only" data stores maintain potentially relevant material, including the client archives that stores Oracle software and support material.

6. Rimini has also long employed processes for creating and preserving backups of its data for, e.g., disaster recovery. This backup process gathers data on a daily basis from a variety of data sources and generates daily, weekly and monthly tape backups. Monthly tapes are retained indefinitely in a fire-safe offsite. The data sources subject to this back-up process includes department shares, internal

4127474 v2

company database, Client Environments, SharePoint, email, user directories, FTP servers, DevTrack, dotProject, Rimini website, finance server and WebCM. Monthly backups of Rimini's Salesforce application data are also created by a third party vendor, downloaded to Rimini Street network file system, and backed up to tape.

7. Turning to actions by Rimini Street in connection with the present litigation with Oracle, Rimini has employed a variety of different measures to preserve potentially relevant materials, including utilizing technical means to prevent file deletion, making copies or "snapshots" of relevant servers, collecting documents from relevant custodians and data sources and repeatedly informing employees of their preservation obligations. I will now provide further details regarding each of these preservation means.

8. On February 4, 2010 (i.e., ten days after the Oracle's complaint was filed), a three page memorandum was sent by Rimini's in-house attorney to all Rimini employees and contractors. This memorandum stressed the requirement that all hardcopy and electronic materials potentially relevant to the Oracle litigation be maintained. The memorandum also instructed all managers confirm that all their reports - including consultants - were aware of the need to maintain potentially relevant documents.

9. The initial memorandum was re-circulated to the company on April 20, 2010 along with a reminder that all employees must continue to comply with their preservation obligations. Yet another reminder email was sent on August 20, 2010, again reminding employees to preserve potentially relevant materials. As one indication that employees are complying with their document preservation obligations, the volume of stored emails has increased nearly 50 percent over the last 6 months.

10. With respect to technical means employed by Rimini in furtherance of document preservation, the delete feature was disabled for Rimini's document repository, SharePoint. And, as previously mentioned, numerous data stores have long been

3

configured as "read only" so as to eliminate the potential for deletion or modification of the stored data. In addition, a copy or "snapshot" was made of Rimini's entire email environment on March 3, 2010 to ensure proper preservation of any emails existing at that time.

11. In April of 2010, Rimini created a copy of its then-in-use client archives and client environments. This copy is maintained in Rimini's Charlotte, North Carolina data center. The IT department is currently in the process of updating the archive and environment copies to include data for newly acquired clients.

12. Though I will provide further information regarding document collection efforts in the next section of this declaration, document collection is obviously one form of preservation, and, in connection with document collection efforts, I provided counsel access to a variety of data sources (as detailed below) so counsel could collect potentially relevant documents. These collections occurred before May 21, 2010 and resulted in a substantial number of documents being collected (and therefore preserved) from Rimini's computers across the United States.

13. In addition, I also worked with counsel to allow their collection of potentially relevant materials from "key" employees in the Spring of 2010. I was given a list of these custodians so I could allow potentially relevant documents to be collected from Rimini's file system, including those custodians email and user data. It is my understanding that these key custodians were selected by counsel as those employees most likely to have the most relevant documents. It is further my understanding that counsel interviewed each of the 30 custodians, re-iterating preservation obligations to the custodians and collecting potentially relevant materials from the custodians' laptop computers and other media.

14. Rimini Street has also implemented preservation processes with respect to laptops that are no longer in active service. With respect to the laptops of exiting employees, Rimini retains the exiting individuals' hard drives in a fire-safe at its Pleasanton office. Likewise, if a computer malfunctions or a hard drive crashes, Rimini attempts to extract as much information as possible in order to rebuild a

4

new computer. The hard drive that failed is then labeled and retained in Rimini's fire safe, and the identity of the person to whom the hard drive belonged is maintained. For example, Rimini replaced a laptop that was used by Doug Baron, and Mr. Baron's old laptop's hard drive is in the fire safe at Rimini's Pleasanton office.

15. On August 20, 2010, Rimini employees were instructed to preserve their instant messenger communications. As background, Rimini does not have its own instant messenger system, though some employees use a free Internet-based system provided by Yahoo!. Traditionally, employees who chose to use Yahoo! Messenger made his or her own decision whether to archive or not. When the litigation commenced, those who had been archiving messages were instructed by counsel to continue to archive messages and to continue to preserve such archives. Further, it is my understanding that certain employees decided to begin archiving their messages after the litigation commenced.

16. Finally, it is my understanding that counsel for Oracle has requested that copies of additional servers be taken, to the extent that such copies have not already been made. In response to this request, I understand that Rimini has agreed that it has preserved or will preserve logical copies/snapshots of servers used to directly provide service and support to its clients running Oracle software, namely Rimini's client archives, client environments, email, Devtrack, dotproject, WebCM, Rimini website, SharePoint, user home directories and department share drives. Though copies or backups of many of these systems already exist (as previously discussed), I am presently working with others in the IT department to create the additional copies requested by Oracle.

**Document Collection**

17. Though I understand that Rimini's document collection efforts remain on-going, I provided testimony during my deposition regarding collections that have occurred to date. As discussed during my deposition, Rimini's collection efforts can be

5

succinctly described: counsel selected key custodians and data stores likely to contain relevant information; counsel was granted access to these data stores and the files of the key custodians (i.e., laptops, emails and network user data); and counsel selected the files to be collected based on their own discretion based on information obtained from the custodians. I will now provide a further explanation of these efforts.

18. My understanding is that counsel for Rimini collected potentially relevant documents from 30 key custodians identified by counsel before May 21, 2010. I testified at my deposition that I was given a list of these custodians, and I have recently reviewed this list. Based on my review of the list, it is clear that counsel selected the top leadership of the company, as well as key technical employees, as the custodians to focus their initial document collection efforts.

19. As previously mentioned, I understand that counsel interviewed each of the selected custodians and performed document collection from individual laptops and removable media, attempting to collect all potentially relevant hardcopy and electronic materials in the custodians' possession.

20. In addition to collections for individual employees, myself and other members of the IT department worked with counsel to facilitate their access to a variety of additional Rimini data stores so counsel could collect information in connection with this litigation. For example, we enabled counsel's access to network file systems, SharePoint, email, department shares and user data. Department shares to which counsel were given access included PeopleSoft, JD Edwards, Siebel, Client Care and Success and Sales, Global Tax and Regulations, and Marketing. Here again, I understand that counsel, at their own discretion, selected the particular documents that were ultimately collected from these sources.

4127474 v2

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 27, 2010

Joseph Dones

4127474 v2