1  BOIES, SCHILLER & FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
2  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
3  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
4  rpocker@bsfllp.com

5  BOIES, SCHILLER & FLEXNER LLP
   STEVEN C. HOLTZMAN (*pro hac vice*)
6  FRED NORTON (*pro hac vice*)
   KIERAN P. RINGGENBERG (*pro hac vice*)
7  1999 Harrison Street, Suite 900
   Oakland, CA 94612
8  Telephone: (510) 874-1000
   Facsimile: (510) 874-1460
9  sholtzman@bsfllp.com
   fnorton@bsfllp.com
10 kringgenberg@bsfllp.com

11 BINGHAM MCCUTCHEN LLP
   GEOFFREY M. HOWARD (*pro hac vice*)
12 THOMAS S. HIXSON (*pro hac vice*)
   KRISTEN A. PALUMBO (*pro hac vice*)
13 Three Embarcadero Center
   San Francisco, CA  94111-4067
14 Telephone:  415.393.2000
   Facsimile:  415.393.2286
15 geoff.howard@bingham.com
   thomas.hixson@bingham.com
16 kristen.palumbo@bingham.com

17 DORIAN DALEY (*pro hac vice application to
   be submitted*)
18 DEBORAH K. MILLER (*pro hac vice*)
   JAMES C. MAROULIS (*pro hac vice*)
19 ORACLE CORPORATION
   500 Oracle Parkway
20 M/S 5op7
   Redwood City, CA 94070
21 Telephone:  650.506.4846
   Facsimile:  650.506.7114
22 dorian.daley@oracle.com
   deborah.miller@oracle.com
23 jim.maroulis@oracle.com

24 Attorneys for Plaintiffs Oracle USA, Inc.,
   Oracle America, Inc., and Oracle International
25 Corp.

26

27

28

SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Eric Buresh, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, Texas   77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

Attorneys for Defendants Rimini Street, Inc.,
and Seth Ravin

JOINT CASE MANAGEMENT CONF STMT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORACLE USA, Inc., a Colorado corporation;
ORACLE AMERICA, INC., a Delaware
corporation; and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

            Plaintiffs,

      v.

RIMINI STREET, INC., a Nevada corporation;
and SETH RAVIN, an individual,

            Defendants.

Case No. 2:10-cv-0106-LRH-PAL

**JOINT CASE MANAGEMENT
STATEMENT**

DATE:        September 10, 2010
TIME:        9:00 a.m.
PLACE:      Courtroom 3B
JUDGE:     Magistrate Peggy A. Leen

JOINT CASE MANAGEMENT CONF STMT

1        Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

2  (collectively, "Oracle" or "Plaintiffs") and Defendants Rimini Street, Inc. ("Rimini Street") and

3  Seth Ravin ("Ravin") (together, "Rimini" or "Defendants") jointly submit this Case Management

4  Conference Statement in advance of the September 10, 2010 Case Management Conference to

5  provide the Court with a status report of the pending matters.

6  **I.**      **PENDING MOTIONS AND DISCOVERY DISPUTES**

7        **Defendants' Motions to Dismiss the First Amended Complaint.**  On August 13, 2010,

8  the Court denied both Defendant Rimini Street's and Defendant Ravin's separate motions to

9  dismiss the First Amended Complaint, except for Plaintiffs' claim for negligent interference with

10  prospective economic advantage, for which the motions were granted.  (Dkt. 78)  As a result,

11  Plaintiffs still assert claims for copyright infringement, violation of the CFAA, violation of the

12  CDAFA, violations of Nevada Revised Stat. 205.4765, breach of contract, inducing breach of

13  contract, intentional interference with prospective economic advantage, unfair competition,

14  unjust enrichment, trespass to chattels, unfair business practices, and an accounting.

15        **Plaintiffs' Motion to Dismiss the First Amended Counterclaim.**  On May 24, 2010,

16  Rimini Street filed an Answer to First Amended Complaint and First Amended Counterclaims,

17  which included additional allegations in support of the Counterclaims.  (Dkt. 56)  On June 10,

18  2010, Oracle filed its motion to dismiss the Counterclaims.  (Dkt 67)  The motion is fully

19  briefed, but has not yet been decided.

20        **Plaintiffs' Motion for Preservation Order.**  On August 24, 2010, Plaintiffs moved for

21  an order requiring Defendants to create forensic images of hard drives of the computers in the

22  possession of relevant custodians.  (Dkt. 82) As of the date of this Joint CMC statement, that

23  motion will be fully briefed and the Parties will be prepared to argue the motion and answer any

24  questions from the Court at the September 10, 2010 case management conference.

25        **Stipulation Concerning Contact with Former Oracle Employees Now Employed By**

26  **Defendants.**  Defendants currently employ a number of Oracle's former employees.  Some of

27  these employees are in possession of privileged, confidential, or proprietary information of

28

1   Oracle's.  In at least one case, the former employee possesses privileged and work product

2   information relevant to Oracle's litigation strategy.  The Parties have met and conferred and

3   agreed on most of the terms of a proposed stipulation and order to prevent the disclosure of

4   Plaintiffs' privileged, confidential, or proprietary information to Defendants by Plaintiffs' former

5   employees.  The Parties have been unable to reach agreement on one term, however:  whether, if

6   Rimini Street becomes aware that any former Oracle employee, now employed by Rimini Street,

7   has disclosed Oracle's privileged, work product, or proprietary information to any Rimini Street

8   officer, director, agent, employee, or contractor, or counsel when Oracle counsel is not present,

9   counsel for Rimini Street is required to inform counsel for Oracle of the identities of the person

10  making the disclosure and the persons to whom the disclosure was made, the date, time, and

11  place of the disclosure, and the subject matter and content of the disclosure, to the extent known

12  by counsel for Rimini Street.  The Parties' arguments in support of their respective positions,

13  along with their respective proposed forms of the stipulation and order, are attached as Exhibit A

14  (Plaintiffs' Argument and Proposed Order) and B (Defendants' Argument)

15  **II.      STATE OF THE PLEADINGS**

16      On March 29, 2010, Rimini Street answered Plaintiffs' original complaint in part (as to

17  Plaintiffs' copyright claims), pled affirmative defenses, and moved to dismiss as to the remaining

18  twelve claims without answering.  (Dkt. 30)  Ravin moved to dismiss all claims against him

19  without answering.  (Dkt. 28).

20      Plaintiffs amended their complaint, and on May 6, 2010, Ravin filed an Answer only with

21  respect to Oracle's claims for copyright infringement and breach of contract, pled affirmative

22  defenses, and moved to dismiss all other claims.  (Dkt. 47)  On May 24, 2010, Rimini Street also

23  filed an Answer only with respect to Oracle's claims for copyright infringement and breach of

24  contract, pled affirmative defenses, and moved to dismiss all other claims.  (Dkt. 56)

25      On August 13, 2010, the Court denied both Rimini Street's and Ravin's separate motions

26  to dismiss the First Amended Complaint, except for Plaintiffs' claim for negligent interference

27  with prospective economic advantage, for which the motions were granted.  (Dkt. 78)

28

1       Accordingly, under Federal Rule of Civil Procedure 12(a)(4)(A) and Rule 6(d),

2 Defendants were required to file Answer by Monday, August 30, 2010.  Due to an inadvertent

3 docketing error, Defendants did not file an Answer on that date.  On or before September 7,

4 2010, Defendants will file an Answer and a motion, pursuant to Rule (6)(b), for leave to file an

5 Answer outside the time specified by the Federal Rules of Civil Procedure.  Plaintiffs will not

6 oppose Defendants' motion under Rule 6(b).

7 **III.    DISCOVERY CONDUCTED TO DATE**

8     **A.     Initial Disclosures.**

9     The Parties exchanged initial disclosures on May 25, 2010.

10     **B.     Discovery From and Produced By Plaintiffs.**

11     **Documents.**    Defendants have served two sets of Requests for Documents, with a total

12 of 96 separate requests.  Plaintiffs have responded to both sets.  To date Plaintiffs have produced:

13 - More than 60,000 pages of documents, including customer contracts and related
14 documents and correspondence, copyright registrations and other copyright-related
15 documents like release notes, terms of use of Oracle's technical support websites,
16 organizational charts for each individual identified on Oracle's initial disclosures, and
17 pre-litigation correspondence between Oracle and Rimini;
18 - a significant portion of the written discovery and deposition transcripts from *Oracle*
19 *USA, Inc. et al. v. SAP AG et al*, No. 07-cv-01658 (N.D. Cal. filed March 22, 2007);
20 - over 650 software CDs; and
21 - three hard drives of log files.

22 Plaintiffs continue to produce documents on a rolling basis.

23     **Interrogatories.**  Defendants have served one set of Interrogatories, consisting of twelve

24 separate interrogatories, to which Plaintiffs have responded.

25     **Depositions.**  Defendants have not noticed or taken any depositions of Plaintiffs.

26

27

28

1        **C.        Discovery Sought From and Produced By Defendants.**

2        **Documents**.   Plaintiffs have served two sets of Requests for Documents on Defendant

3   Rimini (consisting of a total of 50 separate requests) and one set of Requests for Documents on

4   Defendant Ravin (consisting of one request).  Defendants have responded to all three sets, and to

5   date have produced approximately 180,000 pages of documents, including approximately

6   136,000 produced on August 30, 2010.

7        **Interrogatories**.  Plaintiffs have served one set of Interrogatories, consisting of fourteen

8   separate interrogatories, to which Defendants have responded.

9        **Depositions**.  Plaintiffs have taken two depositions of Rimini pursuant to Rule 30(b)(6).

10  On August 12, 2010, Plaintiffs took the deposition of Rimini designee on matters related to

11  document preservation and collection, including the general configuration and operation of

12  computers, computer systems, servers, electronic storage environments, and network devices

13  identified by Rimini Street in response to various interrogatories propounded by Oracle, and

14  Rimini's disaster recovery backup systems and procedures.  That deposition consisted of 2.6

15  hours on the record.  Plaintiffs state that Rimini's designated witness was not prepared to testify

16  on all subjects identified in the notice.  Defendants state that the designated witness was indeed

17  prepared on all noticed topics and that, in an effort to address Plaintiffs' concerns, Defendants

18  provided Plaintiffs a supplemental declaration providing additional information regarding

19  Rimini's document preservation and collection efforts.  The Parties are meeting and conferring to

20  address any outstanding matters.

21        On August 24, 2010, Plaintiffs took the deposition of Rimini's designees on matters

22  related to the personnel, systems, applications, and tools used by Rimini to "onboard" new

23  customers; provide support to its customers; develop, deliver, and/or install software; and market

24  its services.  That deposition consisted of 2.4 hours on the record.

25

26        **D.        Third Party Discovery**

27        On May 13, 2010, Oracle served a subpoena on Adams Street Partners, a private equity

28

1  firm that invested in Rimini Street in or around July 2009.  To date, Adams Street Partners has

2  produced 672 pages of documents.  On September 3, 2010, Oracle served subpoenas on

3  Boathouse Communications Partners LLC and Mark Scully, third parties who invested in Rimini

4  Street.  No other third party discovery has been conducted to date.

5

6  **IV.    LIMITATIONS ON DISCOVERY**

7          The Parties set out their proposals concerning the scope and timing of discovery in the

8  Joint Case Management Statement filed on May 13, 2010 (Dkt. 51 at 1:6-8:17).  For the

9  convenience of the Court, that submission is attached as Exhibit C.  The Parties supplement that

10 filing below.

11

12          **A.    Plaintiffs' Further Statement of Reasons For Deviation From Local Rule 26-1(e).**

13          In our May 13, submission, Plaintiffs proposed 15 months of fact discovery, followed by

14 6 months of expert discovery, and asked that the Court permit up to 75 interrogatories, 100

15 requests for admission, and 200 hours of deposition per side.  The following chart illustrates the

16 differences between Oracle's actual experience in the SAP/TomorrowNow Lawsuit, the more

17 limited schedule and scope of discovery that Oracle proposes here, and the still narrower

18 schedule and scope of discovery that Rimini proposes here.

19

20
| Discovery per side | SAP/TomorrowNow Lawsuit | Oracle Proposal in this case | Rimini Proposal in this case |
|---|---|---|---|
| Deposition hours (fact witnesses) | 450 | 200 | 165 |
| Interrogatories | 127 | 75 | 50 |
| Requests for Admission | 1,285 | 100 | 100 |
| Requests for Production | 147 | No limit | No limit |
| Time for Fact Discovery | 28 months | 15 months | 12 months |
| Time for Expert Discovery | 6 months | 6 months | 3 months |

25          Plaintiffs' proposals requests are reasonable and are appropriate to the scope and

26 complexity of this case.  _First_, the Parties agree that "this case will likely be complex and will

27 require substantial fact and expert discovery" (Dkt. 51 at 1:11).

28

1     *Second*, the claims are extensive – the Court has denied Defendants' motion to dismiss,

2     leaving twelve separate causes of action in the Complaint.  To the extent that Rimini's

3     Counterclaims for copyright misuse, unfair business practices, and trade libel survive Plaintiffs'

4     pending motion to dismiss, those claims also will require discovery.

5     *Third*, the scope of Defendants' intrusions onto Oracle's computers and unlawful copying

6     are also extensive.  Defendants have admitted that at least until January 2009, they used

7     automated download tools – "crawlers" – to mass download copies of Oracle's copyrighted

8     works.[1]  As Plaintiffs have alleged, Rimini and Ravin unlawfully downloaded <u>thousands</u> of

9     copies of copyrighted works.  (First Amended Compliant, Dkt. 36, at 3:8-11; 11:25-13:3).

10    *Fourth,* the track record in this action does not suggest discovery can be completed

11    expeditiously.  As the Court is aware, due to Defendants' meritless motion for a protective order,

12    it took 71 days from the Plaintiffs' First Notice of 30(b)(6) Deposition to the completion of that

13    2.6 hour deposition.  Moreover, the designee, IT Manager Joseph Dones, was unprepared and

14    misinformed, resulting in Plaintiffs' agreement to provide a declaration to cover the topics of the

15    noticed deposition.

16    On August 27, 2010, Defendants provided a declaration from Mr. Dones.  There are a

17    number of areas where Plaintiffs believe additional information is required.  Among other things,

18    the declaration purports to be on personal knowledge, but it addresses events Mr. Dones had no

19    involvement with and about which he was unable to testify at the deposition on August 12.  As

20    another example, the declaration fails to identify what types of documents have been collected

21    by Defendants from individual custodians for preservation and production in this matter.  The

22    parties will meet and confer on these issues.

23    While Defendants are optimistic that the parties will be able to move forward without

24    _____

25    [1] Dkt. 56 at 7:1-6 (Counterclaim ¶ 26 ("Since the inception of the company, Rimini Street used
      automated download tools to help its clients identify and take delivery of the large volume of
26    Oracle Software and Support Materials they paid for and were entitled to possess and use
      (potentially tens of thousand of files for a single customer.")).
27

28

1   repeated intervention from the Court, this history dispels any suggestion of a smooth and

2   streamlined discovery process.  This makes a longer period to conduct discovery crucial.

3   　　　　*Fifth*, proof of Defendants' unauthorized access to Oracle's computers and unlawful

4   copying of software, documentation, and support materials will require the collection and

5   analysis of highly technical evidence, in addition to conventional discovery of business

6   memoranda, emails, presentation decks, contracts, and the like.  This highly technical evidence

7   includes, among other things, copies of entire servers, log files that document actions taken by

8   servers and other computers, software development tools, and of course copies of the actual

9   software and support materials that were infringed, and the infringing copies.  As Oracle has

10  learned in its litigation against SAP and Ravin's prior company, TomorrowNow, it takes

11  considerable time to identify, collect, produce, and analyze this kind of technical data.

12  　　　　*Sixth*, the already formidable challenges of document discovery in this case are

13  exacerbated by Defendants' admitted failure to preserve relevant data and documents.  Despite

14  anticipating litigation for over a year, Defendants took no steps to preserve relevant documents

15  and data until after the complaint was filed, and even then left the responsibility for much of the

16  document preservation to individual employees, failed to take steps to preserve highly relevant

17  communications, such as instant messages, failed to create forensic images of relevant

18  custodians' computers, and failed to create copies of relevant servers.  As a result, relevant

19  information has certainly been lost, and some information that may still be retrieved or

20  reconstructed will require additional time and analysis to do so.

21  　　　　*Seventh*, the Parties' initial disclosures establish that there is a very large number of

22  percipient witnesses.  In their initial disclosures, Plaintiffs listed 212 Oracle employees, of whom

23  approximately 165 are customer support representatives who likely had communications with

24  customers who later became Rimini customers; fourteen others are knowledgeable about

25  software development; fifteen more are designated exclusively on the topic of damages.  In their

26  initial disclosures, Defendants listed 31 current employees of Rimini.  Defendants also assert that

27  Rimini has over 300 customers, all or nearly all of whom were formerly Oracle support

28

JOINT CASE MANAGEMENT CONF STMT

1  customers, and thus relevant to the lost profits analysis.  Under no circumstances would all, or

2  even a significant fraction, of these several hundred potential witnesses be subject to deposition,

3  and Oracle has proposed reasonable limits on the number of relevant custodians whose

4  documents will be searched.  Nonetheless, it will take time and effort to identify which witnesses

5  are most relevant to the matters in dispute, and the remaining number of witnesses will be

6  significant.  (Below, Oracle identifies the specific witnesses that it presently expects to depose,

7  by name where possible and by role where names are not yet known).

8       *Eighth*, although Rimini is fond of depicting itself as a small company that is badly

9  overmatched, it is entirely capable of conducting discovery within the scope and the time frame

10  that Plaintiffs propose.  Rimini claims to have over $150 million in revenue backlog, as well as

11  "320+ clients including 11 S&P Global 100 and 23 Fortune 500."[2]  Shortly after Rimini filed its

12  Counterclaims, its CEO Ravin stated to the press that Rimini expects to spend "millions and

13  millions of dollars" in legal fees in this case, which the company had anticipated and budgeted

14  for.  *See* Chris Kanaracus, *Rimini Street Files Countersuit Against Oracle*, BusinessWeek/IDG,

15  March 29, 2010 (Attached as Exhibit D).  The beneficiaries of this foresight – defense counsel

16  here – are two very large, capable law firms, Greenberg Traurig, which has more than 1,800

17  lawyers, and Shook Hardy & Bacon, which has over 500 lawyers.  Both firms have large,

18  sophisticated e-discovery practice groups that pride themselves on their ability to manage large-

19  scale electronic discovery cost-effectively.[3]

20       Against this backdrop, Plaintiffs explain their specific proposals for discovery limits and

21  timing in this case.

22       **Document Requests.**  Although neither Party suggests a limit on the number of requests

23  _____

24  [2] *See*
    http://advice.cio.com/thomas_wailgum/11985/sap_vs_oracle_vs_rimini_street_the_soap_opera_

25  continues?page=0,0

26  [3] *See* http://10www.gtlaw.com/Experience/Practices/eDiscoveryeRetention (Greenberg Traurig);

27  http://www.sh11b.com/practice_areas.aspx?id=52 (Shook, Hardy & Bacon).

28

1   for production, the Parties have agreed to limit the number of custodians whose documents will

2   be searched for production.  Specifically, the Parties agree to meet and confer in an effort to

3   agree on a limit of the number of custodians whose documents must be produced, and to identify

4   the relevant custodians of the other party whose potentially responsive documents will be

5   searched using an agreed-upon set of key words.  This agreement would not affect the duty to

6   preserve evidence, and would not limit searches of non-custodial documents, and a Party may

7   seek to exceed the limit on the number of custodians by applying to the Court and making a

8   showing of good cause.

9   **Depositions.**  Plaintiffs propose that each side be limited to 200 hours (time on the

10   record) of deposition of fact (i.e., non-expert) witnesses.  Defendants propose a limit of 165

11   hours, allocated arbitrarily between parties, 30(b)(6) witnesses, and third parties.  Allocating the

12   hours into predetermined categories would prevent the parties from using deposition time in

13   most efficient manner as discovery unfolds.   Moreover, Plaintiffs' proposal of 200 hours is a

14   more reasonable and appropriate number in light of the number of percipient witnesses discussed

15   above, the highly technical nature of at least some of the testimony, the number of potentially

16   relevant customers, and the 450 hours of deposition taken by Oracle alone in the

17   SAP/TomorrowNow litigation.

18   Through the initial document and other foundational discovery conducted to date, Oracle

19   has been able to identify the witnesses it expects, at this time, to depose.  There are 26 specified

20   individuals employed by Rimini Street, as well as 4 additional categories of other prospective

21   Rimini Street deponents.  In addition to which Oracle anticipates that some third party discovery

22   will be required.  Against this backdrop, a 200-hour total fact witness deposition limit is

23   appropriate and reasonable.  Below, Oracle identifies the particular witnesses (or categories of

24   witness) that it presently expects to depose, and identifies the topics on which their testimony

25   will be necessary.  Asterisks indicate persons identified by Rimini in its Rule 26 disclosures.

26   *Senior Executives*.  Rimini's senior executives will be deposed on its business model and

27   finances (relevant to damages), Rimini's processes and procedures for using Oracle software and

28

9

1 support material, and how the supposed safeguards implemented to protect Oracle's intellectual

2 property have been implemented and overseen.  These witnesses include:

3

| Ravin, Seth* | CEO & President |
|---|---|
| Shay, Thomas* | Executive VP |
| Lyskawa, Nancy* | Senior VP, Client Care & Success |
| Slepko, Brian* | Senior VP, Global Operations |

8

9       *Sales and Marketing*.  Rimini's sales and marketing executives and representatives will

10 be deposed on how Rimini attracts clients from Oracle, a central component of damages.  Third-

11 party witnesses from customers will be included as well.  These deponents include:

| Maddock, Kevin* | Senior VP, Global Sales |
|---|---|
| Rowe, David* | Senior VP, Global Market & Alliances |
| Davidchick, Michael | VP Sales |
| Lachs, Rob | VP Sales |
| Potts, David | Enterprise Accounts |
| Various | Sales representatives |
| Various | Rimini customers |

20       *Onboarding*.  The individuals responsible for Rimini's "onboarding" process will be

21 deposed on how Rimini has and does download and otherwise receive copies of Oracle's

22 software and support material, and how that material is copied to create "archives."  These

23 include:

24

| Chiu, Dennis* | VP Onboarding & Siebel Support |
|---|---|
| Various* | Onboarding Project Specialists |

27       *Customer Environments*.  Witnesses will be deposed on the creation and management of

28

10

1  "customer environments," which are operating copies of Oracle software and support materials

2  maintained on Rimini's servers.  Individuals to be deposed on these issues include:

3

4

| Gadiraju, Raju | VP Operations |
|---|---|
| Burde, Ed | Manager Environments |
| Hosalli, Manjulla* | PeopleSoft Environments Engineer |
| Williams, Krista* | PeopleSoft Environments Engineer |

8

9    *Software Development*.  Witnesses will be deposed on Rimini's use of Oracle software

10 and support material in Rimini's development of software and support material.  These include

11 individuals doing the development work, the executives that oversee them, and the individuals

12 that create the in-house software tools that Rimini uses in the process.  Individuals to be deposed

13 on these topics include:

14

| *PeopleSoft* | |
|---|---|
| Lester, George* | Group VP, IT & PeopleSoft  Development & Doc |
| Benge, Jim* | VP PeopleSoft Development |
| Tahtaras, Susan* | Manager, PeopleSoft Development |
| Martinez, Kimberley | Senior PeopleSoft QA Engineer |
| Various | PeopleSoft Developers |
| *JD Edwards* | |
| Egger, Jim | JD Edwards Development |
| *In-House Tools* | |
| Baron, Doug* | Enterprise Senior Support Engineer (also developed Rimini's "crawler" or "scraper") |
| Wen, Kevin | Senior Applications Developer |

27

28 *Technical Support*.  Witnesses will be deposed on Rimini's use of Oracle software and

11

1  support material in Rimini's provision of technical support to its customers.  These individuals

2  include:

| PeopleSoft | |
|---|---|
| Lester, Beth* | Group VP, Services Strategy & PeopleSoft BA & QA |
| Ormond, Travis* | VP PeopleSoft Support Services |
| Berde, Melissa* | Manager, PeopleSoft Support Services |
| Holmes, Alecia | Manager, PeopleSoft Support Services |
| Support Engineers | Various |
| JD Edwards | |
| Grigsby, Ray* | VP, JD Edwards Service Delivery |
| Support Engineers | Various |
| Siebel | |
| Chiu, Dennis* (also listed above) | VP Onboarding & Siebel Support |
| Support Engineers | Various |

*Investors*.  Witnesses will be deposed on the decision to invest in Rimini, including

representations made by Rimini and analysis of Rimini's expected revenues and growth, relevant

to damages.  These individuals include:

| Murray, Robin | Adams Street Partners and Rimini Street Director |
|---|---|
| Scully, Mark | Scully Ventures |

**Interrogatories.**  Plaintiffs propose that each side be limited to 75 interrogatories.

Defendants suggest a limit of 50.  To date, Plaintiffs have served fourteen interrogatories;

1  Defendants have served twelve.  Again, Plaintiffs' proposed limit of 75 is the more reasonable

2  and appropriate number in this complex case.  *See, e.g., Safeair, Inc. v. Airtran Airways, Inc.*,

3  No. 09-5053RJB, 2009 WL 1835916, at *1-3  (W.D. Wash. June 26, 2009) (in copyright case,

4  granting leave to serve up to 100 interrogatories); *Libengood v. Fortis Health Ins. Co.*, No.

5  8:07CV444, 2009 WL 529239, at *1-2 (D. Neb. Feb. 27, 2009) (granting plaintiff leave to serve

6  up to 67 interrogatories in simple case of denied insurance coverage)' *Brewer-Wisconsin*

7  *Sawmill, Inc. v.  Fremont Indus. Inc.*, No. 07-C-016, 2007 WL 5731935, at *1 (W.D. Wis. July

8  27, 2007) (granting defendant leave to serve up to 150 interrogatories in case concerning twelve

9  causes of action, including breach of contract, fraud, negligence, negligent misrepresentation,

10  strict liability, and deceptive trade practices).

11      In this case, Plaintiffs assert twelve separate claims; Rimini asserts three claims of its

12  own, along with twelve separate affirmative defenses.  A substantial number of interrogatories

13  will be necessary, for example, to identify the Parties' contentions with respect to particular

14  claims and defenses, identify witnesses and documents relevant to those contentions, describe

15  technical data and processes, identify the infringed works and what was done with them, and

16  explain evidence and theories related to damages.  For similar reasons, Magistrate Judge Laporte,

17  in the SAP / TomorrowNow litigation, allowed Oracle to serve 127 separate interrogatories.

18  Although it is difficult to predict the subjects and number of interrogatories in advance of

19  drafting them, Oracle anticipates serving interrogatories that cover the topics identified below

20  (many topics may require multiple interrogatories).  These topics are particularly suitable for

21  interrogatories, because they call for especially detailed information that is likely beyond the

22  personal knowledge and recall of any single witness, and/or because they cover topics that range

23  across the business, such that it is unlikely any single witness would have personal knowledge of

24  the complete answer and include:

25          1.   identification of the Oracle software and support materials that Defendants

26               downloaded;

27          2.   information concerning the development process for Defendants' patches, fixes,

28

1    updates, and other software;

2    3.  identification of the patches, fixes, updates, and other software for Oracle software

3        that Defendants distributed to their customers;

4    4.  identification of the customers that received, from Defendants, copies of Oracle's

5        copyrighted works and patches, fixes, updates, and other software ostensibly

6        developed by Rimini;

7    5.  identification of the specific computers on which defendants stored copies of Oracle's

8        copyrighted works;

9    6.  information concerning any process, procedures, or policies implemented by

10       Defendants to prevent improper copying or use of Oracle's copyrighted works;

11   7.  information concerning the experience and qualifications of Defendants' customer

12       support representatives;

13   8.  information concerning Defendants' knowledge of and agreement to Oracle's Terms

14       of Use and license agreements;

15   9.  information concerning any procedures, or policies implemented by Defendants to

16       ensure that they limit any downloading or copying to the works to which Defendant's

17       specific clients are in fact licensed;

18   10. identification of all automated download tools used by Defendants;

19   11. information concerning Defendants' revenues and profits from the sale of support

20       services to Oracle licensees;

21   12. information relevant to the value of use of Oracle's copyrighted software and support

22       materials;

23   13. information relevant to the terms on which the parties would have negotiated a

24       license; had Defendants sought a license;

25   14. information concerning Ravin's contentions that he is not legally responsible for the

26       conduct of Rimini;

27   15. information concerning Defendants' first affirmative defense that one or more of the

28

JOINT CASE MANAGEMENT CONF STMT

1    infringed copyrights are not copyrightable;

2    16. information concerning Defendants' second affirmative defense that their use of

3    Oracle's copyrighted materials is permitted by license agreements held by Rimini or

4    third parties;

5    17. information concerning Defendants' third affirmative defense that Defendants

6    consented to Defendants' use of copyrighted materials by issuing Defendants'

7    employees log-in credentials;

8    18. information concerning Defendants' fourth affirmative defense of copyright misuse;

9    19. information concerning Defendants' fifth affirmative defense that statutory damages

10   are unavailable for some of Oracle's copyrighted works because the works were not

11   registered within three months of first publication;

12   20. information concerning Defendants' sixth affirmative defense of implied license;

13   21. information concerning Defendants' seventh affirmative defense that Oracle's

14   copyright claims are barred by the doctrines of merger or Scènes-á-faire.

15   22. information concerning Defendants' eighth affirmative defense of the statute of

16   limitations;

17   23. information concerning Defendants' ninth affirmative defense asserting laches,

18   waiver and estoppel;

19   24. information concerning Defendants' tenth affirmative defense of fair use;

20   25. information concerning Defendants' eleventh affirmative defense that any copy,

21   adaptation, lease, sale, or transfer of any work copyrighted by the Plaintiffs is

22   protected by 17 U.S.C. § 117l;

23   26. information concerning Defendants' claim that Oracle engages in unfair business

24   practices;

25   27. information concerning Defendants' claim that Oracle has committed trade libel or

26   defamation; and

27   28. information concerning Defendants' claims for damages for unfair business practices,

28

15

1   copyright misuse, and trade libel / defamation.

2

3       **Requests for Admissions.**  The Parties have agreed to a limit of 100 Requests for

4   Admissions.

5       **Time for Discovery.**  As noted above, Oracle proposes 15 months for fact discovery

6   followed by six months of expert discovery; Defendants propose 12 months for fact discovery

7   followed by 3 months of expert discovery.  Oracle submits that regardless of which Party's

8   proposal the Court may adopt for limits on discovery, it is prudent and indeed necessary in this

9   case to allow adequate time for the collection and analysis of complex discovery by counsel and

10  by experts.  Plaintiffs' proposal allows the minimum amount of time needed for such collection

11  and analysis.  Defendants' proposal does not.  Moreover, once the amount of discovery is fixed,

12  additional time should increase efficiency and accuracy, without increasing the cost of that

13  discovery.

14      The Parties have spent the first four months of discovery on foundational matters.  That

15  foundational discovery is largely complete, and will assist in concentrating the remaining

16  discovery efforts on the most relevant systems, data, and witnesses.  Plaintiffs anticipate that the

17  next round of Plaintiffs' discovery requests will focus on

18      •   obtaining copies of relevant servers used to download, copy, and/or store Oracle's

19          software and support materials;

20      •   obtaining log files maintained by Defendants' computers that show access to and

21          downloading from Oracle's websites;

22      •   identifying and obtaining the software and support materials that defendants downloaded

23          from Oracle's websites and obtained from Oracle's customers;

24      •   obtaining software and support materials that Defendants distributed to Rimini's

25          customers;

26      •   discovery of Rimini's "onboarding" process, including how Oracle software and support

27          material is and has been downloaded and stored, and the tools used in that process;

28

JOINT CASE MANAGEMENT CONF STMT

1      • discovery of Rimini's software development process, including how Oracle software and

2         support material is and has been used in that process; and

3      • discovery into Rimini's provision of technical support to its customers, including how

4         Oracle software and support material is used.

5         Much, though by no means all, of the discovery in this case will be highly technical and

6   is time-consuming to collect and analyze.  For example, one of Oracle's claims in this lawsuit is

7   that Defendants used the log-in credentials of Oracle customers to download software and

8   support materials that those customers had no right to have.  In connection with that claim,

9   Oracle has produced to Defendants, and will continue to produce, server logs for the product

10  lines and content at issue in the case.  These logs have millions of distinct entries, each reflecting

11  a separate instance of access to or downloading from the Oracle websites by a user.  (Rimini

12  likely has – or had – log files that reveal similar information, but they have not yet been

13  produced, much less analyzed.)  Once Defendants identify all of their IP addresses, log-in

14  credentials, and customers – Defendants have not yet done so – the Parties will be able to focus

15  on a smaller set of log entries that correspond exclusively to Defendants' conduct, but still

16  numbering in tens or even hundreds of thousands.  The Parties then must review the specific

17  software or support materials shown as downloaded in the log files, the log-in credentials

18  associated with those particular downloads, and the licensing documentation associated with

19  those customer log-in credentials, to determine whether the customer on whose behalf Rimini

20  purported to act was authorized to receive that file.  This is a slow, laborious process that

21  requires comparison across several sources of data, by experts with the assistance of counsel,

22  informed by other sources of discovery.

23        As another example, Oracle further claims that once Rimini obtained copies of Oracle's

24  copyrighted works, Defendants improperly used those works to create unlawful derivative works

25  in the form of support materials for still other customers.  This claim requires comparisons of the

26  thousands of patches, bug fixes, and updates that Rimini claims to have independently developed

27  and provided to its customers, with the thousands of patches, bug fixes, and updates that Rimini

28

1   downloaded from Oracle's websites and maintained on its servers.  Once this data has been

2   produced by Defendants, the ensuing expert work will be intensive and laborious, likely

3   requiring forensic analysis, file comparisons, and line comparisons.

4          For all of these reasons, Oracle respectfully suggests that its proposal and scheduling

5   order is the most reasonable and efficient way to proceed in this case.

6

7          **B.     Defendants' Further Statement of Reasons For Deviation From Local Rule
                    26-1(e).**

8          **1.  Discussion of Discovery Proposals**

9          While Oracle's discovery proposals reveal that discovery in this case *could* be dragged

10  out for many years, the prudent approach here is to adopt a discovery plan that forces the parties

11  to proceed in an efficient manner by placing reasonable limits on both the duration of this case

12  and the amount of discovery available to the parties.  Rimini's proffered schedule and limitations

13  provide such reasonable limits and should be adopted.

14         In particular, Rimini Street proposes a fact discovery period of twelve months, followed

15  by three months of expert discovery.  Such a timeframe for discovery is over nine months longer

16  than a typical case contemplated by the Local Rules.  Rimini Street further proposes that

17  interrogatories be limited to 50 per side.  Rimini Street's proposal doubles the typical number of

18  interrogatories that a party may propound.  Finally, Rimini Street proposes up to 165 hours of

19  deposition testimony, segmented as follows: 15 personal depositions (limited to 7 hours or as the

20  parties otherwise agree); 15 hours of Rule 30(b)(6) corporation testimony; and 45 hours of third

21  party deposition time, all excluding expert deposition time.  Here again, Rimini Street's proposal

22  far surpasses the number of depositions (10) permitted in a typical case.

23         From a business interruption and legal expense standpoint, the presentation of witnesses

24  for deposition is a significant burden-generator in litigation.  For that reason, the discussion of

25  deposition limits merits further discussion.  Oracle does a clever job of making it appear that

26  Rimini Street's proposal randomly restricts the type of depositions available to Oracle.  Oracle

27  ignores that the starting place, i.e., the Federal Rules of Civil Procedure, do not base deposition

28

1    limits on hours at all.  Instead, the Federal Rules provide for a numeric limit on the number of

2    depositions, e.g., 10 noticed depositions.  To accommodate Oracle, Rimini Street was willing to

3    deviate from requiring purely numeric limits on the number of depositions.  Instead, Rimini

4    Street was willing to consider an hours-based approach.  But, Rimini Street believes that limiting

5    how those hours are utilized is appropriate in order to prevent the Federal Rules default of 10

6    noticed depositions from spiraling into a potentially huge number of depositions.  While Oracle

7    attempts to justify its request for 200 hours by listing names and titles from a Rimini Street

8    organizational chart, such an approach ignores efficiencies that would necessarily result from

9    limiting the number of depositions, as proposed by Rimini.  As is virtually always the case, the

10    parties here must be selective in which witnesses they choose to personally depose, and the

11    number of personal depositions should be limited to a reasonable number.  Accordingly, Rimini

12    Street proposed a mixture of numeric limitations and hours-based limitations.  This is not a

13    random allocation of hours – it is a proposal designed to maximize flexibility while retaining

14    some limits on the number of depositions that may be noticed and taken in this matter.  Rimini

15    Street's proposal is flexible, sufficient, and more in keeping with the Federal Rules than Oracle's

16    hours-only approach.

17          Likewise, Rimini's proposals regarding the case schedule and interrogatory limitations

18    are more than adequate to allow full discovery into the merits of the claims in this case, while

19    still placing a reasonable degree of control on the case.  Oracle simply should not need more than

20    a year to explore its claims in this case, especially in light of the extensive foundational

21    discovery it conducted.  Rimini Street further proposes that interrogatories be limited to 50 per

22    side, twice the typical number of interrogatories that a party may propound.  Though Oracle

23    argues that the complexities of the case dictate expanding the number of interrogatories to three

24    times the typical limits, the dockets of federal court are undoubtedly full of "complex" cases, and

25    there is no reason for such a dramatic departure from the customary limits.

26          **2.      Status of Rimini Street Discovery**

27          Since the last status conference, Rimini has continued to proceed in an efficient and

28

1    expeditious manner.  For instance, Rimini has produced approximately 180 thousand Bates-

2    stamped pages to date responsive to Oracle's document requests.  In addition, Rimini has now

3    presented three Rule 30(b)(6) designees for examination by Oracle, including two of Rimini's

4    top executives.  Oracle complains that in one of those depositions, Mr. Dones did not provide all

5    the information they wanted about Rimini Street's document preservation and collection efforts.

6    Yet, Mr. Dones identified the sources for which Rimini's documents were collected and

7    described Rimini's collection efforts as follows: counsel selected key custodians and data stores

8    likely to contain relevant information; counsel was granted access to these data stores and the

9    files of the key custodians (i.e., laptops, emails and network user data); and counsel selected the

10   files to be collected based on their own discretion.  There simply is not much more to say about

11   the collection process without revealing the mental impressions of counsel in selecting the initial

12   custodians and specific items of data.  *In re New York Renu with Moistureloc Prod. Liab. Litig.*,

13   2008 U.S. Dist. LEXIS 88515, at *51 (D.S.C. May 6, 2008) ("Certainly compiling a list of those

14   with relevant documents involves trial preparation, and disclosure of that list could reveal mental

15   impressions concerning claims or defenses.").  And, Oracle should now have a firm grasp on the

16   types of documents collected by Rimini because, as previously mentioned, approximately

17   180,000 pages of Rimini documents have already been produced to Oracle.

18          **3.      Response to Oracle's Preservation Arguments**

19          Central to Rimini's discovery plan is the principle that the case should be decided on the

20   merits, as it is imperative that the case not devolve into inefficient "litigation on the litigation."

21   While Rimini will not belabor the points made in its Opposition to Oracle's Motion for a

22   Preservation Order, it bears mention that, contrary to Oracle's allegations, Rimini has fully

23   complied with its obligations to preserve relevant information.  *See Zubulake v. UBS Warburg*

24   *LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)  Rimini has acted in accordance with well settled

25   law, and there is no need or justification for diverting this litigation to the forensic "side issues

26   and satellite disputes" raised by Oracle and away from the true merits of the case.  *See* Comment

27   8.c. to the Sedona Principles.

28

1    As one example, Rimini maintains archives containing the downloaded Oracle software

2    and support materials at the core of Oracle's allegations.  Contrary to Oracle's allegations that

3    Rimini has not taken measures to preserve such relevant information, these archives have long

4    been subject to security measures to prevent deletion or modification of the stored files.  Rimini

5    has already agreed to disclose to Oracle the contents of these archives so it may determine

6    whether any files were improperly copied.  It is through such conventional discovery that this

7    case should proceed, and not on the basis of "interpretation[s] of potentially ambiguous forensic

8    evidence." *See id.*

9    As this Court noted at the first case management conference hearing, it is normally the

10   plaintiff seeking to move the case along more quickly than the defendant.  Oracle deviates from

11   this norm and proposes a discovery plan that leverages its superior size and resources.  Oracle

12   has over 100,000 employees, while Rimini Street has approximately 170 employees.  Though

13   Oracle attempts to downplay the significance of this enormous size difference, the vastly

14   different resources of the parties cannot be ignored or minimized.  Extending discovery as Oracle

15   proposes for more than a year promotes inefficiency, and reasonable limits must be placed on

16   both the duration of this case and the amount of discovery available to the parties.  Rimini

17   Street's proffered discovery plan provides such limits, while still allowing full discovery into the

18   merits of the claims in this case.  Rimini respectfully requests that the Court adopt its discovery

19   proposal.

20   Dated:  September 3, 2010

21

| SHOOK, HARDY & BACON LLP | BOIES, SCHILLER & FLEXNER LLP |
|---|---|
| By: /s/ Robert H. Reckers, Esq. | By: /s/ Fred Norton |
| Robert H. Reckers, Esq. (*pro hac vice*)<br>600 Travis Street, Suite 1600<br>Houston, Texas  77002<br>Telephone: (713) 227-8008<br>Facsimile: (731) 227-9508<br>rreckers@shb.com | Fred Norton, Esq. (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>fnorton@bsfllp.com |
| *Attorneys for Defendants* | *Attorneys for Plaintiffs* |

28

1

**EXHIBIT A**

2

**Argument In Support of Plaintiffs' Version of Stipulation Concerning Communications
With Former Employees**

3

4

The Parties have agreed on most of the terms of a stipulation governing Rimini's

communications with former Oracle employees now employed by Rimini, but are unable to

5

reach agreement on one issue:  whether Rimini must tell Oracle if Rimini's employees breach

6

Oracle's confidences.  Oracle submits that Rimini must do so, and respectfully requests that the

7

Court enter Oracle's version of the proposed Order, including Paragraph 2.  That Proposed Order

8

is attached to this memorandum.

9

**FACTS**

10

At least 85 of Rimini's approximately 200 employees were formerly employed by Oracle

11

or by companies that Oracle has acquired since 2005 (specifically, PeopleSoft, JD Edwards, and

12

Siebel Systems, collectively, "Oracle").[4]  During their employment with Oracle, these employees

13

had access to proprietary information owned by Oracle, and in some cases, privileged

14

information and attorney work product.   For example, at least one of Rimini's employees,

15

Nancy Lyskawa, was deposed as a 30(b)(6) witness in the *Oracle v. SAP* litigation and met with

16

Oracle's outside counsel.

17

Rimini agrees that Oracle has the right to maintain the confidentiality of proprietary,

18

work-product, and privileged information possessed by its former employees.  Proposed

19

Stipulation, at ¶ __.  Rimini also agrees that former Oracle employees should not share that

20

information with Rimini.  *Id.* at __.  Rimini further agrees that it and its counsel should be

21

restricted in communicating with former Oracle employees to prevent disclosures of Oracle's

22

proprietary, work-product, and privileged information.  *Id.* at __.  Finally, Rimini agrees that if,

23

notwithstanding these restrictions, there is a leak of Oracle's privileged and other protected

24

information, Rimini must take steps to prevent further disclosure.

25

26

---

27

[4] *See* Rimini Street's Responses to Plaintiffs' First Set of Interrogatories, No. 3 and Attachment C.

28

1    But there is one thing that Rimini will **not agree** to:  if Rimini's employees violate

2    Oracle's rights, by leaking Oracle's privileged and other protected information to other Rimini

3    employees or counsel, Rimini refuses to tell Oracle about the breach.

4    Rimini offers only one justification for its refusal:  it will not tell Oracle if Rimini's

5    employees breach Oracle's rights because it does not have to.  Rimini is wrong.  Courts have

6    repeatedly held that parties and counsel have an obligation to promptly disclose any disclosure of

7    another party's privileged or proprietary information, and to return all such confidential

8    information.  Rimini's position – that Oracle need not know when it confidences have been

9    breached to its litigation adversary – is neither correct as a matter of law nor sensible as a matter

10   of policy.

11                          <u>**THE DRAFT STIPULATION**</u>

12   The draft stipulation is attached.  Oracle's draft of Paragraph 2, provides as follows:

13   If Rimini Street becomes aware that any former Oracle employee discloses or has
     disclosed any privileged, work product, or proprietary Oracle information to any
14   Rimini Street officer, director, agent, employee, or contractor, or counsel when
     Oracle counsel is not present, counsel for Rimini shall immediately take steps to
15   prevent further disclosure of that proprietary Oracle information or any other.   In
     addition, if Rimini Street becomes aware that any former Oracle employee has
16   disclosed Oracle's privileged, work product, or proprietary information to any
     Rimini Street officer, director, agent, employee, or contractor, or counsel when
17   Oracle counsel is not present, counsel for Rimini Street shall inform counsel for
     Oracle of the identities of the person making the disclosure and the persons to
18   whom the disclosure was made, the date, time, and place of the disclosure, and the
     subject matter and content of the disclosure, to the extent known by counsel for
19   Rimini Street.

20   Rimini will not agree to the second sentence of Paragraph 2, in bold on the attached stipulation.

21                                  <u>**ARGUMENT**</u>

22

23   Courts have repeatedly held that parties and counsel that come into possession of

24   privileged or confidential information of another must notify the holder of the privilege, and

25   where documents are concerned, return the documents without making use of them.  There are at

26   least two sources of ultimate authority for this rule:  the ethical rules that require lawyers to

27   immediately inform an adversary and take remedial steps if the attorney obtains the adversary's

28   privileged information; and the Court's power to curtail litigation practices that undermine the

JOINT CASE MANAGEMENT CONF STMT – EXHIBIT A
PLAINTIFFS' ARGUMENT RE FORMER EMPLOYEE STIPULATION

1  adversary process, including the disclosure of proprietary information outside the confines of

2  formal discovery.

3       *First*, all attorneys have an ethical obligation to respect their adversary's attorney-client

4  privilege, and that obligation unequivocally requires Rimini to inform Oracle if its attorney-

5  client privilege has been breached.  *See, e.g., Rico v. Mitsubishi Motors Corp*., 42 Cal. 4th 807,

6  818 (2007) (citation omitted) (disqualifying counsel and expert for relying on and not disclosing

7  adversary's attorney work product); *State Comp. Ins. Fund vs. WPS, Inc.*, 70 Cal. App. 4th 644,

8  657-58 (2d Dist. 1999) (holding that attorney who receives materials that obviously appear to be

9  subject to attorney-client privilege or otherwise clearly appear to be confidential and privileged

10  "must notify the party entitled to the privilege of that fact"); ABA Model Rule 4.4 (attorneys'

11  obligation to respect the legal rights of third persons); ABA Formal Opinion 05-437 ("A lawyer

12  who receives a document from opposing parties or their lawyers and knows or reasonably should

13  know that the document was inadvertently sent should promptly notify the sender in order to

14  permit the sender to take protective measures.").[5]  These authorities make clear that Rimini's

15  counsel has an affirmative obligation to inform Oracle if they learn of any breach of Oracle's

16  attorney client privilege or work product rights by former Oracle employees.

17       *Second*, the Court has authority to prevent and to remedy "litigation practices that

18  threaten judicial integrity and the adversary processes."  *SEC v. Brady*, 238 F.R.D. 429, 445

19  (N.D. Tex. 2006).  These include the power "to exclude 'proprietary' documents obtained

20  unfairly and outside the context of formal discovery."  *Id.*; *see also Lahr v. Fulbright &*

21  *Jaworski, L.L.P.*, No. 3:94-CV-0981, 1996 WL 34393321, *2 (N.D. Tex. Oc. 16, 1996).  Thus,

22  in *In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992), plaintiffs obtained proprietary

23  documents from an employee of defendant.  In finding that plaintiffs' conduct was improper and

24  that the documents had to be returned, the court condemned plaintiffs' end run around the

25  discovery process:

26  _____

27  [5] The ABA Model Rules may be used for guidance when interpreting ethical obligations in
Nevada.  *Mainor v. Nault*, 120 Nev. 750, 767 (Nev. 2004).

28

1
2
3

> The receipt of Shell's documents was more than informal fact-gathering. The PLC has effectively circumvented the discovery process and prevented Shell from being able to argue against production. Had the PLC sought to obtain these documents through the discovery process, Shell would have had the opportunity to seek a protective order pursuant to the Federal Rules of Civil Procedure.

4
5
6

*Id.* at 108; *see also Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 WL 419433, *5 (W.D. Pa. 2010) (sanctioning counsel for failure to return adversary's proprietary documents obtained from an "anonymous" source); *Knitting Fever, Inc. v. Coats Holding Ltd.,* No. 05CV1065, 2005 WL

7
8
9

3050299, *1, *4 (E.D.N.Y. Nov.14, 2005) (where plaintiffs obtained documents from "an undisclosed ... employee" of defendants, plaintiffs' counsel had "a clear ethical responsibility to notify [defense] counsel and either follow the latter's instructions with respect to the disposition

10
11
12

of the documents or [to] refrain from using them pending ruling by the [c]ourt"); *Arnold v. Cargill Inc.*, No. 01-2086, 2004 WL 2203410, *7-*10 (D. Minn. Sept.24, 2004) (disqualifying plaintiffs' counsel for using "privileged and/or confidential" documents, obtained from

13
14

defendant's former employee).

15
16
17

The same law and logic apply here.  The number of employees at Rimini who were once Oracle employees creates a significant risk that Oracle's privileged and confidential information will be disclosed.  Rimini has recognized that risk, and its gravity, by agreeing to almost all of

18
19
20

the measures set forth in the stipulation.  Oracle's rights cannot be adequately protected, however, by these measures, implemented by its litigation adversary.  Rimini counsel cannot rely on Rimini's employees to understand the extent to which the attorney-privilege limits their

21
22
23

ability to disclose information they learned from Oracle.  *See G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533-34 (S.D.N.Y. 2001) ("it is unrealistic to expect even the best-intentioned lay person to be able to safeguard the attorney-client privilege").  For that reason,

24
25
26

Rimini concedes it should take corrective steps if an employee improperly discloses information. But those safeguards are neither foolproof nor tamperproof.  If Oracle's confidences are breached, Oracle, not just Rimini, must be informed of that breach and able to take whatever

27
28

steps are necessary to protect its rights.  *See, e.g., Cargill v. Budine*, Civ. No. F-07-349, 2007 WL 1813762, *9-*12 (E.D. Cal. Jun. 22, 2007).  The parties and the Court cannot determine

1    what remedy is appropriate unless the breach is first disclosed.

2                              **<u>CONCLUSION</u>**

3            For the reasons stated above, Oracle respectfully requests that the Court enter the

4    attached Stipulated Proposed Order in the form requested by Oracle.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT CONF STMT – EXHIBIT A
PLAINTIFFS' ARGUMENT RE FORMER EMPLOYEE STIPULATION

BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com


Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corp.

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice application
to be submitted*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, Inc., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-PAL <br><br> **JOINT STIPULATION TO PRESERVE THE CONFIDENTIALITY OF PLAINTIFFS' PROPRIETARY AND PRIVILEGED INFORMATION IN THE POSSESSION OF DEFENDANTS' EMPLOYEES** |

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

2    (collectively, "Oracle") and Defendants Rimini Street, Inc. and Seth Ravin (collectively,

3    "Rimini"), through their respective counsel of record, hereby stipulate as follows:

4    WHEREAS at least eighty-five employees of Defendants were previously employed by

5    Oracle or companies acquired by Oracle, including but not limited to PeopleSoft, Inc., J.D.

6    Edwards & Co., Siebel Systems, Inc., and their respective parent and/or subsidiary companies

7    (collectively, "former Oracle employees"); and

8    WHEREAS these former Oracle employees may possess Oracle's proprietary, attorney

9    work product, and privileged information;

10    WHEREAS the parties agree that it is important and necessary to protect Oracle's

11    proprietary, attorney work product, and privileged information from improper disclosure.  The

12    parties further agree that the following categories of information are likely to contain Oracle's

13    proprietary, attorney work product, and privileged information:

14        -   information learned or actions taken by a former Oracle employee while still employed
             by Oracle that are in any way related to either the above-captioned matter or to *Oracle*
15           *USA, Inc.  et al. v. SAP AG et al.,* No. 07 Civ. 1658 (N.D. Cal. filed Mar. 22, 2007);

16        -   communications of any kind between the former employee and in-house or outside
17           counsel for Oracle;

18        -   investigations or research of any kind  that the former employee performed while an
             Oracle employee; or
19

20        -   any other matter that may elicit Oracle's privileged, work product, or proprietary
             information.
21

22    WHEREAS Oracle is entitled to maintain the confidentiality of such information;

23    WHEREAS Oracle has not waived its attorney-client privilege with respect to any

24    privileged information possessed by former Oracle employees and currently has no intention of

25    doing so;

26    WHEREAS Rimini agrees that former Oracle employees shall not disclose or share any

27    of Oracle's proprietary, work product, or privileged information and has agreed to the measures

28    described herein to prevent the improper disclosure of Oracle's proprietary, attorney work

1

1   product, and privileged information.

2   　　　　THEREFORE, it is hereby STIPULATED AND AGREED by and between the

3   undersigned attorneys of record for parties in the above-captioned action as follows:

4   　1.　Neither Rimini Street nor its counsel, officers, directors, agents, employees, or

5   　　　contractors shall discuss, attempt to obtain, or share any documents related to any

6   　　　privileged, work product, or proprietary Oracle information possessed by former

7   　　　Oracle employees, except as permitted herein by Paragraph 4.

8   　2.　If Rimini Street becomes aware that any former Oracle employee discloses or has

9   　　　disclosed any privileged, work product, or proprietary Oracle information to any

10  　　　Rimini Street officer, director, agent, employee, or contractor, or counsel when Oracle

11  　　　counsel is not present, counsel for Rimini shall immediately take steps to prevent

12  　　　further disclosure of that proprietary Oracle information or any other.  **In addition, if**

13  　　　**Rimini Street becomes aware that any former Oracle employee has disclosed**

14  　　　**Oracle's privileged, work product, or proprietary information to any Rimini**

15  　　　**Street officer, director, agent, employee, or contractor, or counsel when Oracle**

16  　　　**counsel is not present, counsel for Rimini Street shall inform counsel for Oracle of**

17  　　　**the identities of the person making the disclosure and the persons to whom the**

18  　　　**disclosure was made, the date, time, and place of the disclosure, and the subject**

19  　　　**matter and content of the disclosure, to the extent known by counsel for Rimini**

20  　　　**Street.**

21  　3.　Should Rimini or its counsel, agents, employees or contractors anticipate that a

22  　　　discussion with a former Oracle employee may relate to or elicit any of Oracle's

23  　　　privileged, work product, or proprietary information, Rimini shall provide notice to

24  　　　Oracle's inside or outside counsel five business days in advance of such conversation.

25  　　　Such notice shall specify the date, time, and place of the anticipated conversation, as

26  　　　well as the general subjects that will be discussed.

27  　4.　Upon receiving the notice described in ¶ 3 above, Oracle inside or outside counsel may

28  　　　elect to attend the discussion with the former Oracle employee, either in person at the

JOINT CASE MANAGEMENT CONF STMT – EXHIBIT A
PLAINTIFFS' ARGUMENT RE FORMER EMPLOYEE STIPULATION

1 designated location or via telephone.   If Oracle counsel reasonably believes that any

2 topic or line of questioning raised during such a discussion may elicit privileged

3 information, Oracle counsel may remind the former Oracle employee of his or her

4 obligations and instruct the former Oracle employee not to address the question or

5 topic.  Following such an instruction, any inquiry or discussion pertaining to the

6 privileged information will cease.  If Oracle counsel believes that any answer or

7 discussion includes non-privileged but confidential information, Oracle counsel may

8 designate such information under the Protective Order as "confidential" or "highly

9 confidential." Any information designated pursuant to this paragraph will be treated as

10 set forth by the Protective Order.  Oracle agrees that the disclosure of information to

11 counsel for Rimini pursuant to this paragraph will not constitute a breach of any non-

12 disclosure agreement or obligation held by the former Oracle employee.

13   5.    Oracle shall inform Defendants of its intention to attend the conversation that is the

14 subject of the notice within three business days of receiving the notice described in ¶ 3

15 above, and will provide the identity of the person(s) attending and whether they will

16 attend in person at the designated location or via telephone.

17   6.    Rimini represents, and Oracle relies on Rimini's representation, that Rimini has

18 distributed to all employees a notice  reminding the employees that they may not

19 discuss any matter with former Oracle, PeopleSoft, Siebel, or JD Edwards employees

20 (including former employees now employed by Rimini) that may elicit disclosure of

21 Oracle's privileged, work product, or proprietary information, including privileged,

22 work product, or proprietary information regarding:  (i) actions taken by the former

23 employee, while still at Oracle, that are related to Oracle's suit against Rimini Street;

24 (ii) Oracle's lawsuit against SAP AG and TomorrowNow Inc.; (iii) communications

25 between the former employee and inside or outside counsel for Oracle; or (iv)

26 investigations or research that the former employee performed while an Oracle

27 employee.  The notice further provided that employees should not obtain or try to

28 obtain Oracle's privileged, work product, or proprietary information from anyone who

worked for Oracle or companies acquired by Oracle (i.e., PeopleSoft, Siebel, or JD Edwards).

7.   Nothing in this Stipulation shall limit or prevent Rimini from discussing or obtaining non-proprietary and non-privileged Oracle information or materials from former Oracle employees.

Dated:  September ____, 2010

| SHOOK, HARDY & BACON LLP | BOIES, SCHILLER & FLEXNER LLP |
|---|---|
| By: _____ | By: _____ |
| Eric Buresh, Esq.<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108-2613<br>Telephone: (816) 474-6550<br>Facsimile:  (816) 421-5547<br>eburesh@shb.com | Kieran P. Ringgenberg, Esq. (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>kringgenberg@bsfllp.com |
| *Attorneys for Defendants* | *Attorneys for Plaintiffs* |

IT IS SO ORDERED.

DATED: _____, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

4

**EXHIBIT B**

**Argument In Opposition to Plaintiff's Version of Stipulation Concerning Communications with Former Employees**

Rimini and Oracle have agreed to the essential terms necessary for protecting Oracle's privileged and confidential information from improper disclosure by former Oracle's employees that are now employed by Rimini.  Despite its willingness to agree to safeguards aimed at protecting Oracle's information, Rimini could not agree to a provision that would require disclosure to Oracle's counsel of the "identities of the person making the [improper] disclosure and the persons to whom the disclosure was made, the date, time, and place of the disclosure, and the subject matter and content of the disclosure."  Such a provision goes far beyond any recognized professional or legal duty and, thus, is improper.[6]

Rimini has long taken the position that, in the event of an improper disclosure of Oracle's privileged or confidential information, it will act in accordance with the duties set forth by relevant authority.  For instance, Rimini can certainly agree that, if its counsel receives a document from opposing parties or their lawyers and knows or reasonably should know that the document was inadvertently, it will "promptly notify the sender in order to permit the sender to take protective measures." ABA Formal Opinion 05-437.  Likewise, Rimini can also agree that, if its counsel receives a "document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently," that it will "promptly notify the sender."  ABA Model Rule 4.4.  Rimini, however, cannot agree with Oracle's attempt to rewrite the salient professional obligations to further its own motives in this case.  Because Oracle's legal and ethical support do not buttress the expansive reporting provisions in its version of the stipulation, Rimini requests that the Court reject Oracle's proffered language requiring that Rimini Street "inform counsel for Oracle of the identities of the person making the [improper] disclosure and the persons to whom the disclosure was made, the date, time, and

---

[6] At this point, the present arguments are academic because counsel for Rimini has no knowledge of any disclosure of Oracle confidential or privileged information by former Oracle employees.

1

1  place of the disclosure, and the subject matter and content of the disclosure, to the extent known

2  by counsel for Rimini Street."

3                              **ARGUMENT**

4          Any obligation that parties and counsel have to return privileged or confidential

5  information does not extend to identifying the information set forth in Oracle's version of the

6  proposed stipulation, and Oracle fails to provide any authority to support such an obligation.

7  Turning first to the scope of the relevant ethical obligations, Rimini agrees that all attorneys have

8  an obligation to return documents protected by their adversary's attorney-client privilege or work

9  product privilege.  For example, Nevada Rules of Professional Conduct 4.4 states that "[a]

10 lawyer who receives a document relating to the representation of the lawyer's client and knows

11 or reasonably should know that the document was inadvertently sent shall promptly notify the

12 sender." *see also Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817 (2007) (holding that a

13 lawyer who inadvertently receives "materials . . . shall refrain from examining the materials any

14 more than is essential to ascertain if the materials are privileged, and shall immediately notify the

15 sender that he or she possesses material that appears to be privileged"); ABA Formal Opinion

16 05-437 (same).  Rimini unquestionably accepts its clear obligation to notify Oracle of any

17 privileged documents that are inadvertently or improperly disclosed.  This obligation, however,

18 does not impose a duty to identify the source of any such document or the additional information

19 Oracle includes in its proposed stipulation.  As articulated above, the ethical rules provide clear

20 instructions on what a party must do when a privileged document is inadvertently or improperly

21 disclosed, and there is no justification for rewriting such ethical obligations to require disclosure

22 of the information sought by Oracle.

23         Legal authority also weighs against compelling the disclosure of personal identities

24 if/when proprietary information is disclosed.  Oracle fails to cite a single decision where a court

25 compelled identification of the source of privileged or confidential documents.[7]  While Oracle

26 ───────────────────

27 [7] In fact, the authority cited by Oracle all relate to sanctioning attorneys using improperly
    discovered documents.  *See Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 WL 419433, *5 (W.D.

28 Pa. Jan. 29, 2010) (prohibiting the use of proprietary documents); *Knitting Fever, Inc. v. Coats*

                                                              (Footnote Continued on Next Page.)

                                        1

1  relies heavily on *In re Shell Oil Refinery* for the proposition that the court has authority to

2  exclude documents obtained outside the discovery process, that court <u>denied</u> a motion to compel

3  the identification of the documents' source, explaining

4  
> In the case at bar, learning the identity of the source of these documents is not
> necessary to remedy any unfair advantage gained by the [defendant]. The Court
5  
> is not concerned with [plaintiff's] internal problems – whether a Shell employee
> has breached his confidentiality agreement, how he obtained the documents, or
6  
> why he is giving them to the [defendant]. The Court is concerned with preserving
> the integrity of this judicial proceeding. What matters is balancing the scales. . . .
7  

8  143 F.R.D. 108-109 (E.D. La. 1992). It is not disputed that this Court has inherent

9  authority to control discovery, including the power to exclude improperly obtained

10  evidence. *See Lahr v. Fulbright & Jaworski, L.L.P.*, No. 3:94-CV-0981, 1996 WL

11  34393321, *2 (N.D. Tex. Oct. 16, 1996) (excluding deceptively obtained evidence after

12  weighing the interest in promoting truth and candor against pursuit for truth through the

13  admission of all relevant evidence). However, for the same reasons articulated in *Shell*

14  *Oil*, the Court should not be concerned with retaliatory actions taken by Oracle against its

15  former employees, and Rimini should not be required to disclose the identities of

16  personnel who might have been involved in such hypothetical disclosure. There is

17  simply no legal support for requiring Rimini Street to provide the information Oracle

18  seeks to require.

19  **<u>CONCLUSION</u>**

20  Because the expansive reporting provision proffered by Oracle far exceeds any

21  recognized professional or legal obligation, Rimini respectfully requests that the Court

22  enter Rimini's version of the attached Stipulated Proposed Order.

23  

24  

25  

26  

27  (Footnote Continued from Previous Page.)

28  *Holding Ltd.,* No. 05CV1065, 2005 WL 3050299 (E.D.N.Y. Nov. 14, 2005)

1    **EXHIBIT C**

2

3    BOIES, SCHILLER & FLEXNER LLP
     RICHARD J. POCKER (NV Bar No. 3568)
     300 South Fourth Street, Suite 800
4    Las Vegas, NV 89101
     Telephone: (702) 382-7300
5    Facsimile: (702) 382-2755
     rpocker@bsfllp.com
6
     BOIES, SCHILLER & FLEXNER LLP
7    STEVEN C. HOLTZMAN (*pro hac vice*)
     FRED NORTON (*pro hac vice*)
8    KIERAN P. RINGGENBERG (*pro hac vice*)
     1999 Harrison Street, Suite 900
9    Oakland, CA 94612
     Telephone: (510) 874-1000
10   Facsimile: (510) 874-1460
     sholtzman@bsfllp.com
11   fnorton@bsfllp.com
     kringgenberg@bsfllp.com
12
     Attorneys for Plaintiffs Oracle USA, Inc.,
13   Oracle America, Inc., and Oracle International
     Corp.

SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. *(pro hac vice)*
Eric Buresh, Esq. *(pro hac vice)*
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers, Esq. *(pro hac vice)*
600 Travis Street, Suite 1600
Houston, Texas   77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

Attorneys for Defendants Rimini Street, Inc.,
and Seth Ravin

14

15

16

17                        UNITED STATES DISTRICT COURT

18                             DISTRICT OF NEVADA

19

20   ORACLE USA, Inc., a Colorado corporation;
     ORACLE AMERICA, INC., a Delaware
21   corporation; and ORACLE INTERNATIONAL
     CORPORATION, a California corporation,
22                Plaintiffs,
23        v.
24   RIMINI STREET, INC., a Nevada corporation;
     and SETH RAVIN, an individual,
25                Defendants.
26
27
28

Case No. 2:10-cv-0106-LRH-PAL

**STIPULATED DISCOVERY PLAN &
PROPOSED SCHEDULING ORDER
PURSUANT TO FED. Rs. CIV. P. 26(f) &
16(B); AND D. NEV. L.R. 26-1**

**SPECIAL SCHEDULING REVIEW
REQUESTED**

1

1    The named plaintiffs (collectively, "Oracle") and the named defendants (collectively,

2    "Rimini") (all parties collectively, "Parties," any party, "Party") have met and conferred pursuant

3    to Federal Rules of Civil Procedure 26(f) and 16(b), and D. Nev. Local Rule 26-1, and propose

4    the following discovery plan and proposed scheduling order.  All proposals are joint, except

5    where indicated.

6    **1.      Statement of Reasons Supporting Deviation From Local Rule 26-1(e)**

7    Local Rule 26-1(d) provides that the parties shall submit a statement of reasons why

8    longer or different time periods should apply to the case if proposing any deviations from Local

9    Rule 26-1(e).  The Parties' proposals, below, set a schedule that is different in some respects

10   from the provisions of Local Rule 26-1(e).  The Parties believe this proposal is appropriate

11   because this case will likely be complex and will require substantial fact and expert discovery.

12   The Parties do not, however, agree on the amount of discovery that should be permitted, or the

13   time necessary to complete discovery – in short, Oracle believes that the case will require more

14   discovery and more time than Rimini does.

15   **Plaintiffs' Statement of Reasons for Deviation From Local Rule 26-1(e)**

16   Rimini holds itself out as a competitor to Oracle in providing software support services to

17   companies that license certain Oracle enterprise software applications.  In its Amended

18   Complaint, Oracle contends that Rimini's business is built on systematic theft of Oracle's

19   intellectual property, including illegal downloading of Oracle's copyrighted software and support

20   materials, such as software applications and environments, updates, bug fixes, and

21   documentation.  Oracle contends that Rimini typically logs on to Oracle's password-protected

22   technical support websites using a customer credential, then downloads Oracle material in excess

23   of the customer's authorization under its license agreement, and Rimini has admitted to

24   downloading "tens of thousand files for a single customer."  Oracle asserts that Rimini also

25   acquires copies of Rimini's customers' licensed Oracle enterprise applications software and

26   makes illegal copies of this software.  Oracle claims that Rimini then uses those copies in various

27   illegal ways to offer artificially low-cost support services and to induce Oracle's customers to

28   cancel their support contracts with Oracle in favor of Rimini.

1    Based on those allegations, Oracle has asserted thirteen claims against Rimini:  (1)

2  copyright infringement; (2) violations of the Federal Computer Fraud & Abuse Act; (3)

3  violations of the California Computer Data Access & Fraud Act; (4) violations of Nev. Rev. St.

4  205.4765 (pled in the alternative); (5) breach of contract; (6) inducing breach of contract; (7)

5  intentional interference with prospective economic advantage; (8) negligent interference with

6  prospective economic advantage; (9) unfair competition; (10) trespass to chattels; (11) unjust

7  enrichment / restitution; (12) unfair business practices; and (13) an accounting.

8    Rimini responded to that Amended Complaint on May 6, 2010 by answering the claims

9  of copyright infringement and breach of contract and moving to dismiss Oracle's other claims.

10  Rimini has also filed three counterclaims against Oracle, for defamation, copyright misuse, and

11  violations of California's Unfair Competition Law.  Oracle filed a motion to dismiss those

12  counterclaims on May 7, 2010.  Thus, this case involves numerous claims, the pleadings are not

13  yet settled, and they may not be settled in the near future.

14    Putting aside the issue of settling the pleadings in this case, this case will require

15  extensive fact and expert discovery, including extensive discovery of complex data, software

16  code, software development, and computer processes.  Oracle's recent experience litigating

17  nearly identical claims against SAP AG and defendant Seth Ravin's prior company,

18  TomorrowNow, Inc., demonstrates that the discovery required in this case will be very

19  substantial, and cannot be accomplished within the time frame or limits contemplated by Local

20  Rule 26-1(e).  Oracle's experience is that it is time-consuming to identify, retrieve, and produce

21  the technical data concerning downloading, copying, and development of software.  It is still

22  more time consuming to take the discovery necessary for an adverse party to understand that

23  technical data and for its experts to complete their analyses of it.  These tasks cannot be

24  accomplished efficiently within the time frame proposed by Rimini nor with the number of

25  depositions and interrogatories Rimini proposes.

26    In March 2007, Oracle filed a lawsuit against SAP AG and TomorrowNow, Inc. alleging

27  that TomorrowNow, Inc. – and SAP once it acquired TomorrowNow – accessed Oracle's

28  customer support websites in violation of the terms of use and license agreements, downloaded

1   copyrighted works to which they were not entitled, and distributed illegal copies and derivative

2   works to their own support customers. *Oracle, Inc. et al. v. SAP AG, et al.*, Civil Action No. 07-

3   CV-1658 (N.D. Cal.) ("SAP/TomorrowNow Lawsuit").  Oracle's complaint against Rimini

4   Street alleges that Rimini Street and TomorrowNow exploited the same unlawful business model

5   based on comparable if not identical methods of systematic copyright violations.

6          The SAP/TomorrowNow Lawsuit is set for trial in November 2010, more than three and

7   a half years after the original filing.  The Court twice granted stipulated extensions to both the

8   discovery schedule and the amount of discovery in the SAP/TomorrowNow Lawsuit in light of

9   the scope of the claims and the complexity and volume of the underlying discovery.  Fact

10  discovery lasted from July 26, 2007 until December 4, 2009, with six months of expert discovery

11  thereafter.  In the course of that lawsuit, Oracle has produced over 382 gigabytes of documents

12  and data, corresponding to approximately 776,263 pages.  This does not include expert and

13  software productions estimated to be over a terabyte and another 400 gigabytes to a terabyte of

14  data, respectively.  Oracle's employees have appeared for over 225 hours of deposition.  Oracle

15  has responded to 127 interrogatories, 127 requests for production, and 915 requests for

16  admissions.  In addition to what Oracle itself has produced, the defendants in the

17  SAP/TomorrowNow Lawsuit have produced over a terabyte of traditional documents and data,

18  corresponding to approximately 11,256,983 pages.  The SAP/TomorrowNow defendants also

19  produced over ten terabytes (14 million files) of enterprise software environments and

20  downloads of Oracle software and support materials, consisting of the proprietary software code

21  that those defendants stole from Oracle – a time-consuming and complicated production, which

22  takes a significant amount of time to analyze.  Oracle has taken 450 hours of deposition and

23  propounded 124 interrogatories, 147 requests for production, and 1285 requests for admissions.

24  Oracle designated six testifying experts; defendants in the SAP/TomorrowNow Lawsuit

25  designated eight.

26          It bears emphasis that discovery in the SAP/TomorrowNow Lawsuit was closely

27  supervised and limited by the court.  Rimini argues that discovery in that case was "over the

28  top," and tries to find support in an order from Magistrate Judge Laporte.  In fact, however, that

4

1    order *denied* requested discovery to prevent discovery from *becoming* "onerous and prohibitively

2    expensive."  *Oracle Corp. v. SAP AG*, C-07-01658 PJH (EDL), 2008 U.S. Dist. LEXIS 88319,

3    *7 (N.D. Cal. July 3, 2008).  The extensive discovery in the SAP/TomorrowNow Lawsuit

4    described above was what the court determined to be appropriate.

5          The following chart illustrates the differences between Oracle's actual experience in the

6    SAP/TomorrowNow Lawsuit, the more limited schedule and scope of discovery that Oracle

7    proposes here, and the still narrower schedule and scope of discovery that Rimini proposes here.

8

9

| Discovery per side | SAP/TomorrowNow Lawsuit | Oracle Proposal in this case | Rimini Proposal in this case |
|---|---|---|---|
| Deposition hours (fact witnesses) | 450 | 200 | 165 |
| Interrogatories | 127 | 75 | 50 |
| Requests for Admission | 1,285 | 100 | 100 |
| Requests for Production | 147 | No limit | No limit |
| Time for Fact Discovery | 28 months | 15 months | 12 months |
| Time for Expert Discovery | 6 months | 6 months | 3 months |

14

15          Rimini apparently recognizes that the scope of discovery in this case must be as extensive

16   as that of the SAP/TomorrowNow Lawsuit, as it has asked for deposition transcripts, written

17   discovery, and expert reports in the SAP/TomorrowNow Lawsuit.[8]  Rimini has also served 95

18   other document requests on Oracle, the vast majority of which seek "all documents relating to"

19   broad subjects.[9]

20          Given the relationship between the conduct alleged in the SAP/TomorrowNow Lawsuit

21

22   _____

23   [8] Rimini's request seeks "Pleadings, deposition transcripts, hearing transcripts, orders, settlement documents, written discovery, expert reports, declarations, and any supporting papers from the litigation captioned *Oracle USA, Inc., et al. v. SAP AG., et al.*, Civil Action No. 07-CV-1658

24   (Northern District of California)."

25   [9] As one example, Rimini has requested "All documents relating to any analysis of the market for third party software maintenance and support services for Oracle's PeopleSoft, J.D. Edwards,

26   and Siebel families of software products, including, without limitation, any Oracle analysis of the market for maintenance and support services, the potential market for maintenance and support

27   services, the demand for such services, and any competitive analysis of past or existing third party support vendors from January 1, 2004 to the present."

28

5

1    and this lawsuit, as well as the close relationship between the defendants in these two lawsuits,

2    Oracle expects that some of this past discovery will be useful to the present litigation.  However,

3    much of the conduct at issue in Oracle's Amended Complaint post-dates the document

4    collections and the close of fact discovery in the SAP/TomorrowNow Lawsuit.  Moreover,

5    different downloads, products, services, and customers are at issue as well.  Among other

6    matters, in this case Oracle will need to take new discovery concerning Rimini's access to

7    Oracle's intellectual property through Oracle's website and other means, Rimini's copying of

8    Oracle's intellectual property, what safeguards Rimini has to prevent the misuse of Oracle's

9    intellectual property, Rimini's communications with customers and other third parties, Rimini's

10   development of updates, patches, fixes, and other software and support materials for Oracle

11   support customers, and Rimini's financial projections, revenues, and costs.  Further, Rimini has

12   asserted affirmative defenses and counterclaims that the defendants in the SAP/TomorrowNow

13   Lawsuit did not assert.  For all of these reasons, the discovery in the SAP/TomorrowNow

14   Lawsuit is a benchmark, not a substitute, for the discovery that will be required here.

15           Unfortunately, experience in the SAP/TomorrowNow Lawsuit belies Defendants' claims

16   that discovery in this case can be wrapped up quickly.  In the SAP/TomorrowNow Lawsuit,

17   Oracle served Rule 45 subpoenas on Mr. Ravin in February 2009 and on Rimini Street in May

18   2009.  Both resisted discovery, and Oracle filed a motion to compel in this Court.  That motion

19   to compel was granted by Magistrate Judge Foley on October 13, 2009; Mr. Ravin and Rimini

20   Street sought reconsideration, which Judge Dawson denied on November 25, 2009.  Mr. Ravin

21   and Rimini Street stipulated to a finding of contempt rather than comply with the order, and filed

22   an appeal to the United States Court of Appeals for the Ninth Circuit on January 21, 2010.  Mr.

23   Ravin and Rimini Street then voluntarily dismissed that appeal on March 25, 2010; and Mr.

24   Ravin and Rimini Street agreed that they would comply with Magistrate Judge Foley's October

25   2009 order by producing Mr. Ravin for two hours of deposition on July 21, 2010.  In short, the

26   judicial process leading to Mr. Ravin's two-hour deposition took 17 months, which is five

27   months longer than what Rimini proposes for the entirety of fact discovery in this case.

28           Accordingly, as set out in greater detail below, Oracle proposes a fact discovery period of

6

1  fifteen months, followed by six months of expert discovery.  Oracle proposes that fact

2  depositions be limited to 200 hours per side, interrogatories be limited to 75 per side, and

3  requests for admissions be limited to 100 per side.  In every respect, discovery under this

4  proposal is significantly narrower than that in the SAP/TomorrowNow Lawsuit.

5       Rimini Street's suggestion that Oracle's proposal represents a "scorched earth" tactic is

6  belied by the relatively narrow gap between the Parties' proposals.  As to the extent of discovery,

7  Oracle is only suggesting 35 more hours of deposition and 25 more interrogatories than what

8  Rimini proposes.  Those depositions and interrogatories are necessary, as described above, due to

9  the complexity of the technical issues in this case.  Moreover, Rimini's proposal to

10  compartmentalize deposition time arbitrarily into 15 individual depositions, 15 hours of 30(b)(6)

11  depositions, and 45 hours of third party depositions would deny the parties the flexibility to use

12  deposition time in whatever way would be most efficient.

13       Oracle also proposes three months more than Rimini Street to complete fact discovery,

14  which would reduce total costs by facilitating a more orderly process.  Rushing to squeeze the

15  same amount of discovery into a shorter period risks inefficiency, waste, and expense.  There is

16  nothing to be gained by haste, particularly if a short schedule leaves the parties likely back

17  before the Court requesting an extension.

18       Likewise, Oracle proposes three months more than Rimini Street to conduct expert

19  discovery.  Oracle's experience in the SAP/TomorrowNow Lawsuit teaches that expert analysis

20  of complex data such as log files, computer code, and software development processes is time-

21  intensive.  There additional months to complete that same work would not place any greater

22  burden on the parties.

23  **Defendants' Statement of Reasons for Deviation From Local Rule 26-1(e)**

24       While Oracle attempts to justify its discovery proposals by referencing the over-the-top

25  discovery in the SAP/TomorrowNow Lawsuit, that case involved two giant software companies,

26  not a start-up company such as Rimini Street.  Though Rimini Street has proposed a schedule

27  and discovery scope far beyond normal, Oracle wants even more.  Oracle's request is designed to

28  promote a scorched earth approach to this litigation -- an approach that leverages its superior size

7

1   and resources.   Indeed, Oracle has over 100,000 employees, while Rimini Street has

2   approximately 160 employees.  Given the vastly different resources of the parties, it is important

3   that this case be determined on the *merits*, not by the ability of Oracle to use the *process* to bury

4   Rimini Street.  To that end, the Court's control over this litigation at this early stage is critical.

5   Both Parties agree this case will require substantial fact and expert discovery, but

6   Oracle's discovery proposals do not provide sufficient limitations on discovery, leaving the door

7   open for discovery abuses such as those that have plagued the SAP/TomorrowNow Lawsuit.

8   Commenting on the manner in which the parties conducted discovery in that case, the

9   SAP/TomorrowNow Court warned against engaging in "exorbitantly costly litigation where the

10  process of discovery becomes so onerous and prohibitively expensive that it no longer facilitates

11  resolution on the merits as a means to an end, but dominates and derails the litigation process."

12  *Oracle Corp. v. SAP AG*, C-07-01658 PJH (EDL), 2008 U.S. Dist. LEXIS 88319, *7 (N.D. Cal.

13  July 3, 2008) (rejecting Oracle's request in the SAP/TomorrowNow litigation for "discovery of

14  165 custodians  . . . [which] would cost the staggering sum of $16.5 million – on top of other

15  discovery costs from searches of centralized repositories and targeted searches, not to mention

16  lay and expert depositions and interrogatories.").  Seeking to avoid a repeat of such "onerous and

17  prohibitively expensive" discovery in this case, Rimini Street's discovery proposals, while

18  permitting discovery that far exceeds that of a typical case, are aimed at preventing unnecessarily

19  burdensome or prolonged litigation.  While Oracle may profess every intent to manage this

20  litigation efficiently, the SAP/TomorrowNow litigation tells a different story.  A review of

21  Oracle's discovery chart (above – demonstrating 450 hours of depositions, 127 interrogatories,

22  etc.) is telling.  The Court, here, must place reasonable limits on both the duration of this case,

23  and the amount of discovery available to the parties.

24  Specifically, Rimini Street proposes a fact discovery period of twelve months, followed

25  by three months of expert discovery.  Such a timeframe for discovery is *over nine months longer*

26  than a typical case contemplated by the Local Rules.  Oracle simply should not need more than a

27  year to explore its claims in this case.  Extending discovery for more than a year at best promotes

28  inefficiency and, at worst, opens the door to a strategy of attrition.  Rimini Street further

1    proposes that interrogatories be limited to 50 per side.  Rimini Street's proposal *doubles* the

2    typical number of interrogatories that a party may propound.  Finally, Rimini Street proposes up

3    to 165 hours of deposition testimony, segmented as follows: 15 personal depositions (limited to 7

4    hours or as the parties otherwise agree); 15 hours of Rule 30(b)(6) corporation testimony; and 45

5    hours of third party deposition time, all excluding expert deposition time.  Here again, Rimini

6    Street's proposal far surpasses the number of depositions permitted in a typical case.

7    Furthermore, Rimini Street appropriately provides limitations on the number of personal

8    depositions, as well as the number of hours that may be allotted to corporation and third party

9    testimony.  For example, Oracle's unfettered approach to depositions (i.e., a bare limit of 200

10    hours) is enough to allow Oracle to depose every single Rimini Street employee for an hour and

11    still have approximately 40 hours left for third party depositions.  By comparison, Rimini

12    Street's proposal limits the number of depositions to 15 personal depositions of Rimini Street

13    employees, while still allowing for an additional 15 hours of corporate testimony under Rule

14    30(b)(6).  Rimini Street's proposal provides at least 165 hours of deposition time, while

15    implementing reasonable controls designed to prevent abuse.  In sum, Rimini Street's proffered

16    schedule and limitations are more than adequate to allow full discovery into the merits of the

17    claims in this case, while still placing a reasonable degree of control on the case.

18    **2.**      **Initial Disclosures Per FRCP 26(a)**

19         The Parties have agreed to exchange initial disclosures pursuant to Rule 26(a)(1) by

20    Tuesday, May 25.

21    **3.**      **Subjects on Which Discovery Will Be Required (FRCP 26(f)(3)(B))**

22         The Parties anticipate that fact and/or expert discovery will be required for the subject

23    matter set forth below.  Neither Oracle nor Rimini, however, waives the right to object to

24    discovery requests within these subject matters on proper bases.

25         -      Rimini's knowledge of and agreement to the terms of Oracle's license agreements

26    and terms of use

27         -      Rimini's accessing of Oracle's web sites

28         -      Rimini's use of automated tools to access Oracle's web sites

1          -          Rimini's accessing and use of Oracle's copyrighted works

2          -          Rimini's copying and use of Oracle's copyrighted works

3          -          Rimini's use of automated tools to copy Oracle's copyrighted works

4          -          Rimini's processes, procedures, and policies to assure the proper use of Oracle's

5     intellectual property and to safeguard against the improper use of those materials

6          -          Rimini's development of updates, patches, fixes, and other software and support

7     materials for Oracle support customers

8          -          Rimini's cost of providing support, including updates, patches, fixes, other

9     software and support materials, for Oracle support customers

10         -          Rimini's provisioning of updates, patches, fixes, and other software and support

11    materials to Oracle support customers

12         -          the experience and qualifications of Rimini's support personnel

13         -          Rimini's communications with prospective and actual customers

14         -          Rimini's communications with Oracle

15         -          the identity of Rimini's Oracle support customers

16         -          revenues that Rimini has obtained from Oracle support customers

17         -          damage to Oracle's computers caused by Rimini's conduct

18         -          damages, including lost revenue, to Oracle caused by Rimini's conduct

19         -          Seth Ravin's knowledge of, and participation in, Rimini Street Inc.'s conduct as

20    alleged by Oracle

21         -          public statements by Oracle employees concerning Rimini's practices and the

22    harm caused by these statements

23         -          Rimini's reputation in the relevant community for lawful or unlawful practices

24              As discussed in the proposed schedule below, the Parties agree that fact discovery should

25    be conducted and concluded first, followed by expert discovery.

26              To ensure that discovery is as efficient as possible, each Party will serve focused

27    interrogatories and requests for production concerning matters (such as corporate organization,

28    computer network systems and architecture, practices for safeguarding intellectual property, etc.)

1   that the Party believes will assist it narrowing and specifying the remainder of fact discovery.

2   These initial requests will be drafted with the understanding that, subject to any proper

3   objections, each Party commits to provide objections and substantive responses within 30 days of

4   the requests, and to produce responsive documents within 45 days of requests for production.

5   The Parties will then schedule and take Rule 30(b)(6) depositions related to these topics in the

6   thirty days following the initial responses.  The Parties also may serve additional discovery

7   requests at any time, and the timing of responses to those requests would not be covered by the

8   agreement described above.  On April 29, 2010, Oracle served its First Set of Interrogatories and

9   First Set of Requests for Production in furtherance of these goals.

10          The parties are discussing additional issues regarding preservation of documents and data

11   and, if the parties are unable to reach agreement, will present the issue to the Court for

12   resolution.

13   **4.      Issues About Disclosure or Discovery of Electronically Stored Information
14          (FRCP 26(f)(3)(C))**

15          The Parties have been discussing document preservation and production issues, and are

16   still working on resolving those issues.  In the meantime, however, the Parties have agreed that:

17          Searches for responsive documents, and productions thereof, may be prioritized by

18   particular custodians, with the party seeking production having the right to set the priority of

19   certain custodians over others.

20          Insofar as possible (or unless requested in the form produced in another legal

21   proceeding), the Parties shall produce documents in "tiff" format along with the following

22   metadata fields: (1) Beginning Bates Number, (2) Ending Bates Number (3) Beginning

23   Attachment Number, (4) Ending Attachment Number (5) Document Type, (6) Date Sent, (7)

24   Date Received (8) Date Modified, (9) Date Created, (10) Custodian, (11) Author/Sender, (12)

25   Recipient(s), (13) CC, (14) BCC, (15) Title/Subject, and (16) Filename.  Documents should be

26   represented in a Concordance load file, with page level TIFFs associated in an Opticon load file.

27   To the extent OCRed text is provided, it should be document level text.

28          Excel spreadsheets, and similar materials that require native format to be reasonably

1    usable, shall be produced in native format unless redaction issues make it infeasible to do so.

2         As noted above, Oracle contends that Defendants have unlawfully accessed Oracle's

3    websites to access and download copyrighted software and support materials, which Defendants

4    have then used to create further unauthorized copies and derivative works, some of which in turn

5    include software code that infringes Oracle's copyrighted work.  Consequently, in addition to

6    other discovery, Oracle anticipates that this case will require extensive discovery of Defendants'

7    computer systems, networks, servers, software development environments, and software

8    development processes.  The Parties, with the assistance of experts, will attempt to reach

9    agreement on appropriate measures to ensure that relevant information from Defendants'

10   computer systems are preserved and produced in a format that can be examined, tested, and

11   analyzed by the Parties' respective consulting and testifying experts.

12   **5.    Protective Order**

13        The Parties have agreed to meet and confer regarding a protective order, and to propose

14   an order to the Court by May 17, 2010, as set forth below.

15   **6.    Privilege for Trial Preparation Materials (FRCP 26(f)(3)(D))**

16        The Parties agree that for document production purposes, each producing party will have

17   45 days from the date each production is concluded to produce a privilege log.  The Parties

18   further stipulate out of the privilege-log requirements of *Burlington Northern & Santa Fe Ry. Co.*

19   *v. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) and instead agree that:

20        Privilege logs produced within 45 days of the completion of the production of documents

21   in response to a particular request are enough to preserve privilege;

22        Privilege logs shall state, to the extent that it can be ascertained, (1) an identifying

23   number or designation (2) the length of the document; (3) the date of the document, (4) the title

24   or description of the document sufficient to justify the assertion of privilege, (5) the author(s) of

25   the document, (6) all recipients of the document (including blind copied recipients), and (7) the

26   nature of the privilege asserted.  Each Party shall furnish, with the privilege log, a list of all

27   persons identified on the log who were not employees of that Party at the time of the relevant

28   communication, with a brief description of that person's relevant role (e.g., outside counsel, staff

1   of outside counsel, etc.) sufficient to justify the assertion of privilege as to that person.

2         The parties agree that communications with outside counsel need not be logged.  The

3   parties are discussing whether other categories of communications should be logged and, if

4   agreement cannot be reached, may present the issue for resolution at a later date.

5   **7.      Limitations on Discovery**

6         The Parties agree that there should be no limit on the number of requests for production

7   of documents, and that each side shall be limited to 100 requests for admission.  The Parties

8   expect to meet and confer to resolve questions concerning authenticity and admissibility of

9   documents, and do not intend to use RFAs for this purpose.  The Parties have not reached

10  agreement on limits for other areas of discovery, and their respective positions are set out below.

11  **Plaintiffs' Proposal**

12        As noted above in paragraph 1, the discovery that Oracle proposes in this case is more

13  limited than what was necessary in the SAP/TomorrowNow Lawsuit, but more extensive that

14  Rimini proposes:

15

| Discovery per side | SAP/TomorrowNow Lawsuit | Oracle Proposal in this case | Rimini Proposal in this case |
|---|---|---|---|
| Deposition hours (fact witnesses) | 450 | 200 | 165 |
| Interrogatories | 127 | 75 | 50 |
| Requests for Admission | 1,285 | 100 | 100 |
| Requests for Production | 147 | No limit | No limit |
| Time for Fact Discovery | 28 months | 15 months | 12 months |
| Time for Expert Discovery | 6 months | 6 months | 3 months |

21        Depositions

22        Each side may conduct 200 hours, maximum, of deposition questioning.  This will be

23  measured as time "on the record."  This shall include each Party's questioning of fact witnesses,

24  FRCP 30(b)(6) witnesses, and third-party witnesses, but not witnesses designated as experts.

25        Oracle anticipates that it may be necessary to depose some of Rimini's software

26  developers in their individual capacities for more than seven hours, as a result of the technical

27  nature and specialized vocabulary of the subject matter.  The parties will meet and confer to try

28

1   to reach agreement for such depositions on a case by case basis.

2        Nothing in these deposition limitations shall be construed to impede a Party's right to

3   seek a protective order on terms otherwise provided for under the FRCP.

4        Any Party has right to depose any person designated as a trial witness by another Party, if

5   that person was not deposed previously.  This provision however does not constitute a waiver of

6   any Party's right to seek to exclude a witness from trial for a failure of another Party to disclose

7   the person as required under FRCP 26(a), or in response to other discovery, or as otherwise

8   required.

9        <u>Interrogatories</u>

10        Each side may propound up to 75 interrogatories.  Interrogatories that are withdrawn by

11   the propounding party before a substantive response is served do not count against the limit of

12   75.  Nothing in this agreement shall be construed to impede a Party's right to seek a protective

13   order on terms otherwise provided for under the FRCP.

14   **Defendants' Proposal**

15        <u>Depositions</u>

16        Each side may conduct 165 hours, maximum, of deposition questioning, segmented as

17   follows:  15 personal depositions (limited to 7 hours or as the parties otherwise agree); 15 hours

18   of Rule 30(b)(6) corporation testimony; and 45 hours of third party deposition time.  The hourly

19   limitations will be measured as time "on the record."  This shall include each Party's questioning

20   of fact witnesses, FRCP 30(b)(6) witnesses, and third-party witnesses, but not witnesses

21   designated as experts.  Nothing in these deposition limitations shall be construed to impede a

22   Party's right to seek a protective order on terms otherwise provided for under the FRCP.

23        Any Party has the right to depose any person designated as a trial witness by another

24   Party, if that person was not deposed previously.  This provision however does not constitute a

25   waiver of any Party's right to seek to exclude a witness from trial for a failure of another Party to

26   disclose the person as required under FRCP 26(a), or in response to other discovery, or as

27   otherwise required.

28        <u>Interrogatories</u>

1    Each side may propound up to 50 interrogatories.  Interrogatories that are withdrawn by

2  the propounding party before a substantive response is served do not count against the limit of

3  75.  Nothing in this agreement shall be construed to impede a Party's right to seek a protective

4  order on terms otherwise provided for under the FRCP.

5  **8.      Scheduling**

6    The Parties are unable to reach agreement on the schedule for the case.  Our respective

7  positions, informed by the considerations described in paragraph 1 above, are set out below.

8  <u>**Plaintiffs' Proposal**</u>

9    As noted above, Oracle proposes 15 months for fact discovery followed by six months of

10  expert discovery.  Given the extent of the discovery in the SAP/TomorrowNow Lawsuit, the time

11  it took to collect, produce, and analyze that discovery, and the necessary scope of additional

12  discovery in this case, Oracle's proposal is a reasonable one.

13    Accordingly, Oracle proposes that the following schedule shall govern this case.

14  Deadlines for close of discovery refer to the last possible response date for a discovery request,

15  not the last day on which requests may be served.

16

| PLAINTIFFS' PROPOSED DATE | EVENT |
|---|---|
| 5/17/2010 | File joint proposed protective order and submit any disputes. |
| 5/25/2010 | Exchange Rule 26(a) disclosures, subject to protective order having been signed by the Court. |
| 6/1/2011 | Deadline to amend pleadings and add new parties – 60 days before close of fact discovery* <br> *The Parties' stipulation to this deadline shall not waive any objections to the propriety of another Party's pleading amendments |
| 6/1/2011 | File "interim status report" per LR 26-3 – 60 days before close of fact discovery |

28

| PLAINTIFFS' PROPOSED DATE | EVENT |
|---|---|
| 8/1/2011 | Close of fact discovery |
|  | The first defendant made an appearance in this case on February 1, 2010; the Parties have agreed fact discovery should last approximately fifteen months, starting in late April 2010, and expert discovery should last six months, beginning in August 2011 |
| 8/1/2011 | Identify experts on issues for which a Party has the burden of proof |
| 8/15/2011 | Last day to file motions to compel related to fact discovery |
| 9/15/2011 | Experts disclosures on issues for which a Party has the burden of proof |
| 11/1/2011 | Disclosure of experts on rebuttal |
| 12/1/2011 | File "interim status report" per LR 26-3 – 60 days before close of expert discovery |
| 2/1/2012 | Close of expert discovery |
| 2/15/2012 | Last day to file motions to compel related to expert discovery |
| 3/1/2012 | Last day to file dispositive motions – 30 days after close of expert discovery |
| 30 days before start of trial | Motions in limine due; file joint pretrial order, including all requirements of FRCP 26(a)(3) and LR 16-3(c |

**Defendants' Proposal**

As noted above, Rimini Street proposes 12 months for fact discovery followed by 3 months of expert discovery. While far exceeding the schedule of a typical case, Rimini Street's proposed schedule seeks to avoid unnecessarily prolonged litigation. Accordingly, Rimini Street proposes that the following schedule shall govern this case. Deadlines for close of discovery refer to the last possible response date for a discovery request, not the last day on which requests may be served.

16

| DEFENDANTS' PROPOSED DATE | EVENT |
|---|---|
| 5/17/2010 | File joint proposed protective order and submit any disputes. |
| 5/25/2010 | Exchange Rule 26(a) disclosures. |
| 2/28/2011 | Deadline to amend pleadings and add new parties – 60 days before close of fact discovery |
| 4/29/2011 | Close of fact discovery |
| 5/29/2011 | Disclosure of experts on issues for which a Party has the burden of proof |
| 5/29/2011 | File "interim status report" per LR 26-3 – 60 days before close of discovery |
| 6/29/2011 | Disclosure of experts on rebuttal |
| 7/29/2011 | Close of expert discovery |
| 8/29/2011 | Last day to file dispositive motions – 30 days after close of expert discovery |
| 9/29/2011 | File joint pretrial order, including all requirements of FRCP 26(a)(3) and LR 16-3(c) |
| 30 days before the start of trial | Motions in limine due. |

| SHOOK, HARDY & BACON LLP | BOIES, SCHILLER & FLEXNER LLP |
|---|---|
| By:  /s/  Eric Buresh | By:   /s/ Fred Norton |
| Eric Buresh, Esq.<br>2555 Grand Boulevard<br>Kansas City, Missouro 64108-2613<br>Telephone: (816) 474-6550<br>Facsimile:  (816) 421-5547<br>eburesh@shb.com<br><br>*Attorneys for Defendants* | Fred Norton, Esq. (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>fnorton@bsfllp.com<br><br>*Attorneys for Plaintiffs* |

17

1    [Exhibit D – Chris Kanaracus, *Rimini Street Files Countersuit Against Oracle*,
      BusinessWeek/IDG, March 29, 2010]

2

3    _____

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1



News | Reviews | How-To's | Downloads | Shop & Compare | Forums | Business Center

Sign in | Join US | Newsletters | ✉




**American Express Travel. A wealth of travel options.**
Countless savings opportunities.



**Magazine**
Subscribe & Get a Bonus CD
Customer Service

Discover *news, guides,* and *products* for your business

[ Search ]

| Software & Services | Office Hardware | Security | Servers & Storage | Cell Phones & Mobile | Operating Systems | Networking & VOIP |

SOFTWARE / SERVICES       March 29, 2010 9:00 AM

# Rimini Street Files Countersuit Against Oracle

By Chris Kanaracus, IDG News Service         Print  Digg  Twitter  Facebook  More…

Oracle on Monday was hit with a counterclaim by Rimini Street, the third-party software maintenance provider it sued in January over alleged intellectual property violations.

**PEOPLE WHO READ THIS ALSO READ:**

The iPad, Granny's Computer?

Bullzip PDF Printer
8,870 PEOPLE VIEWED THIS

Karen's Directory Printer
773 PEOPLE VIEWED THIS

5 PSP Games to Play Before its Lifecycle Ends

Top 12 Weirdest Notebooks

Avery Wizard for Microsoft Office

Recommendations by *toonia*

Oracle's suit is groundless, anticompetitive and disparaging, Rimini Street said in the response filed Monday in U.S. District Court in the District of Nevada.

Rimini Street provides support for SAP and Oracle applications, pledging that customers will save at least 50 percent off their vendor-provided support bills. While third-party support means customers don't receive product upgrades, Rimini Street caters to companies with stable legacy systems and no immediate desire for updates.

Vendors fiercely covet annual software maintenance revenues, which are charged as a percentage of a customer's license fees and provide steady income even when new business is harder to find. "Software license updates and product support" accounted for 51 percent of Oracle's total revenue in its most recent quarter, generating US$3.3 billion against just $281 million in operating expenses, for a profit margin north of 90 percent.

Oracle's suit against Rimini Street followed a similar one it filed in 2007 against SAP and its former subsidiary, TomorrowNow, which also offered third-party support for Oracle applications. TomorrowNow workers illegally downloaded software from Oracle's support systems, according to Oracle. SAP has said the employees were authorized to download the materials on behalf of TomorrowNow customers, but also that some "inappropriate downloads" had occurred.

Rimini Street CEO Seth Ravin [was a founder of TomorrowNow. Oracle has alleged Rimini Street amounts to a redux of TomorrowNow's "corrupt" business model.

Rimini Street "typically logs on to Oracle's password protected Technical Support websites using a customer credential, then downloads Software and Support Materials in excess of the customer's authorization under its license agreement," according to Oracle's suit.

The company then uses automatic crawling tools to download Oracle materials "in intentional violation of Oracle's Technical Support website Terms of Use," the complaint states. "These intrusions have damaged Oracle's support services by causing the databases which host the Software and Support Materials to freeze, disrupting their operation and impeding the availability of lawful downloads to Oracle's other customers."

Rimini Street's answer and counterclaim denies wrongdoing on its part.

"Oracle had full knowledge that Rimini Street's actions were authorized by Oracle's customers," it states. "Far from acting as 'fraudulent thieves,' Rimini Street has acted legally, openly (and often with Oracle's full cooperation)." In addition, Oracle has been unresponsive to invitations to discuss Rimini's business practices or have them independently vetted, the filing alleges.

**Is Your Data at Risk?**

 Downtime can be disastrous for a business. Learn to mitigate business risks and costs. **Read this Strategy Guide.**

Need a server that can wear multiple hats?





**Premier IT Professionals**

Investigating alternate compute models?

Explore dynamic virtual client computing — thin client advantages with rich client user experience and mobility

Find out more

**Business News Daily**

Get the latest technology news that's important to you and your business, fresh seven days a week.

Enter e-mail address   [ Subscribe ]

**Best Prices on Management Software**

MOST POPULAR   ALL CATEGORIES

 Project 2007 Standard
$358.88 and up
[ See All Prices ]

 Act! 2010 (Full Product)
$90.00 and up
[ See All Prices ]

 ACT! 2009 (Full Product)
$59.89 and up
[ See All Prices ]

Office Project Professional 2007 (Academic)

Rimini Street also takes "extraordinary efforts ... to ensure that Oracle's intellectual property rights are respected," whereas Oracle has conducted a "systematic campaign" against Rimini, including a series of "hostile" letters, the filing states.

"Over the years, Rimini Street responded to each Oracle letter, explained the appropriateness of Rimini Street's practices and procedures, and repeatedly offered to meet and discuss any questions or concerns Oracle might have about Rimini Street's processes and procedures," it states.

Rimini admitted it has used automated downloading tools, but said they were necessary "because Oracle refused to help its customers identify and take delivery of such large volumes of materials."

In June 2007, Oracle changed the terms and conditions on its Web site, disallowing the use of such tools, according to Rimini Street. This action was anticompetitive and in violation of Oracle's customers' contractual rights, the filing states.

"Oracle's efforts escalated in December 2008 when Oracle began interfering with Rimini Street's performance of an authorized download for a large client switching from Oracle to Rimini Street support by blocking Rimini Street access to the Oracle support websites," it adds. Oracle relented after appeals from Rimini and the customer, according to the filing.

As "a good-faith attempt at conflict reduction," Rimini agreed to stop using automated download tools in January 2009, telling Oracle of its decision the following month.

Rimini Street also spoke with Oracle representatives in February 2009 and offered to share internal information with the vendor "and/or to work out an agreement that would utilize an independent third party auditor reporting back to both parties to confirm Rimini Street's compliance with its standard processes and procedures," the filing states.

Oracle did not respond to Rimini Street's proposals, and subsequently filed suit, it adds.

"Oracle has had unlimited opportunities over nearly five years to dialogue and work directly with Rimini Street ... but, as the facts demonstrate, that is not Oracle's objective. Instead, Oracle's goal is to forestall after-market product support competition," the filing states.

An Oracle spokeswoman declined to comment Monday.

Privately held Rimini Street says revenue grew 270 percent year-over-year in 2009, and that it now has nearly 300 clients, 160 employees and $150 million in "sales backlog." In addition, it claims a 95 percent annual renewal rate.

In an interview, Ravin equated third-party software maintenance to independent oil change shops, saying the same rights consumers have to take their cars to places besides the original dealer apply to his own business.

Oracle's suit has put a slight damper on sales, according to Ravin.

"We continued to close business, including some of the largest deals ever," since the suit was filed, he said. "[But] I think we had a few deals that have not moved forward because of the litigation. We believe that's a good part of the intent of the suit, to slow our business down."

Rimini Street expects to spend "millions and millions of dollars" to pay its legal counsel in the case, he said. The company anticipated the suit and budgeted for the legal fees, which it considers "an investment we are making to finally put this issue to rest."

The case is "critical on so many counts," said Ray Wang, partner with analyst firm Altimeter Group.

"It's imperative that the rules of engagement for third-party maintenance be established," Wang said. "That's the big question in the room. People want it. How can you do it in a way that's respectful to Oracle's intellectual property rights and respectful to the customer's rights? Right now, the rules are just murky."

"If anything (comes) out of all this, hopefully there are some rules of engagement that are created," he added. "Right now customers are looking everywhere to cut costs."

If Rimini Street wins, the market for third-party maintenance will be a more welcome prospect to other providers, he said. But if it loses, Oracle may have "shut out or stopped people from thinking about this."

WAS THIS ARTICLE USEFUL?   Yes   0   No   0

$99.99 and up

See All Prices

See all Best Prices on Management Software
See also: Best Prices on Antivirus Software, Best Prices on Groupware, Best Prices on Security Software, Best Prices on Backup Utilities, Best Prices on Productivity Software, Best Prices on Software Suites

## Latest in Business Center Blogs


TECH AUDIT · MARCH 26, 2010 7:46 AM
**Brightcove Plugs Flash Hole in iPad**
Apple's iPad doesn't support Flash, but businesses can still deliver content with this solution from Brightcove.


BIZFEED · MARCH 26, 2010 9:00 AM
**iPad Launch Sellout Indicates Strong Business Demand**
Apple has sold out hundreds of thousands of iPads, indicating strong demand from business professionals.


TECH AUDIT · MARCH 26, 2010 3:42 PM
**Nokia Joins Battle for Mobile Web with Novarra Acquisition**
Nokia acquires browser developer Novarra to enter fray for mobile Web dominance.


TECH AUDIT · MARCH 26, 2010 10:00 AM
**Protect Your Data from the Next 'Card Hacker'**
Card hacker receives 20 year prison sentence, but others will follow. Protect your data.


TECH AUDIT · MARCH 26, 2010 9:23 AM
**Improve Your 3G Connection with an AT&T MicroCell**
AT&T is making its 3G MicroCell available nationwide to improve 3G voice and data networking.


TECH AUDIT · MARCH 25, 2010 3:31 PM
**Protecting Sensitive Business Data on the iPad**
Users want to use the iPad at work, so businesses need to protect sensitive data on the tablet device.

All Blogs »

 Does your PC come with its own "Virtual IT" department?


For a limited time, purchase an AT&T Tech Support 360® Premium subscription with select Lenovo PCs and get 24/7 remote technical support for your new computer for one year, for less than the cost of onsite technical support.¹


Learn more»

¹Comparison based on three service calls in one year from local IT service provider at pool per visit of $175, compared to AT&T service included in this bundle for a limited time promotional cost of $263/year with unlimited calls. *Other brands are the property of their respective owners.

## Featured Webcasts


**Death to PST Files**
Type: whitepaper
Company: MessageLabs - Symantec Hosted Services

Sponsored Resource: Find your perfect All-in-One printing solution from HP.

Categories: Compliance,System Management

**Free Whitepapers**

Tangled Web
Type: whitepaper
Company: MessageLabs - Symantec Hosted Services
Categories: Security

Sponsored Links

**11g DBA, ERP Consultants**
Multiple consulting companies bid instantly on your Oracle Project.
ConsultingExpress.com

More webcasts »

**Hot Stock Alert - EHSI**
Profit From Healthcare Explosion. New Millionaires Created Today.
EmergingHealthcareSolutionsInc.com

**Need a Real Psychic?**
How to avoid scams and find a real psychic you can trust. Free report.
TheConsumerAdvisor.org

**Software Maintenance**
Find Software Maintenance Here, Save Money, Live Better!
seomai.net

## Comments Readers reply with their ideas and expertise.   Add Yours

SUBSCRIBE TO THIS DISCUSSION VIA EMAIL OR RSS

## What do you think?

Sign in to post a comment. New to PCWorld Comments? Register here.

Connect with Facebook

### Software and Services Whitepapers from PCWorld

Case Study - OEM's Increased Global Network Performance

Squeezing More Value Out of Data Warehouses through the Power of Database Com...

How Your Organization Can Profit From On-Demand Learning

Magic Quadrant for E-Commerce

High Availability Doesn't have to be Expensive

The Growing Email Archiving Dilemma: 11 Considerations to Control Your Email ..

The Time Is Now for Considering Workload Automation

Achieving Compliant Manufacturing Excellence through Real-time Performance Ma...

Getting Business Requirements Right

Virtualization: Optimized Power and Cooling to Maximize Benefits

The Human Factor in Laptop Encryption

Choosing the right call center for you

**Featured Whitepapers**

mimecast  **The Growing Archiving Dilemma**

According to industry analysts, email volume in organizations is growing by more than 30% annually, and the average user receives 7MB of data per day via email, if not more. As a result of this growth, the handling of email has become a critical b...

**Whitepaper Alerts**
Get updates on white papers, case studies, and spotlights on tech products and solutions for your business.

Enter e-mail address   Subscribe

More whitepapers »

**More from the PCWorld BusinessCenter**



U.S. Wireless Carriers Take Different Routes Toward Fast 4G Service



Tech Equipment Tax Deduction Tips



DOJ, EC Clear Microsoft-Yahoo Search Deal



TRY **2** RISK-FREE ISSUES
Plus Get a FREE CD-ROM

Name                    City

Address 1               State   Zip

Address 2               E-mail (optional)

**CLICK HERE**

Canadian Residents | Foreign Residents | Gift Subscriptions
Customer Service | Privacy Policy

PCWorld.com is the Web's trusted resource for management-level buyers and users of technology products, reaching an average of more than 11 million unique visitors per month (HitBox, January - June 2009).

More About Us » FAQ »

**Resources**
Twitter
RSS
Newsletters
Contact Us
Magazine Customer Service
Advertise

**Network**
PCWorld
PCWorld Business Center
Macworld
MacUser
Mac OS X Hints
iPhone Central

© 1998-2009, PCWorld Communications, Inc.   Terms of Service Agreement   Privacy Policy   Community Standards

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on the 3rd day of September, 2010, I electronically transmitted the

3   foregoing **JOINT CASE MANAGEMENT STATEMENT** to the Clerk's Office using the

4   CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this

5   matter; all counsel being registered to receive Electronic Filing.

6

7                                    By:  /s/ Catherine Duong
                                          An employee of Boies, Schiller & Flexner LLP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28