UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS, NEVADA


ORACLE USA, INC. et al.,        )
                                )   CASE No. 2:10-CV-0106-LRH-PAL
                Plaintiffs,     )
                                )
          vs.                   )
                                )
RIMINI STREET, INC. et al.,     )
                                )
                Defendants.     )   Las Vegas, Nevada
                                )   June 1, 2010
_____)   10:26:46 a.m.
And related cases and parties)


**SCHEDULING CONFERENCE**


THE HONORABLE PEGGY A. LEEN PRESIDING
MAGISTRATE JUDGE OF THE U.S. DISTRICT COURT


Proceedings recorded by electronic sound recording, transcript produced by transcription service.

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com

1

APPEARANCES:


FOR THE PLAINTIFFS:        FRED NORTON, Esq.,
                           Boies, Schiller & Flexner, LLP
                           1999 Harrison Street
                           Oakland, California 94612
                           fnorton@bsfllp.com

                           RICHARD J. POCKER, Esq.,
                           Boies Schiller & Flexner, LLP
                           300 South Fourth Street, Suite 800
                           Las Vegas, Nevada 89101
                           rpocker@bsfllp.com

                           JAMES C. MAROULIS, Esq.,
                           Oracle Corporation
                           500 Oracle Parkway
                           Redwood City, California 94070
                           jim.maroulis@oracle.com

                           THOMAS S. HIXSON, Esq.,
                           Bingham McCutchen LLP
                           Three Embarcadero Center
                           San Francisco, California 94111
                           thomas.hixson@bingham.com


FOR THE DEFENDANTS:        ERIC A. BURESH, Esq.,
                           Shook, Hardy & Bacon LLP
                           2555 Grand Boulevard
                           Kansas City, Missouri 64108
                           eburesh@shb.com

                           ROBERT H. RECKERS, Esq.
                           Shook, Hardy & Bacon LLP
                           600 Travis
                           Houston, Texas 77002
                           rreckers@shb.com

                           MARK G. TRATOS, Esq.,
                           Greenberg Traurig LLP
                           3773 Howard Hughes Parkway,
                           Suite 400 North
                           Las Vegas, Nevada 89169
                           tratosm@gtlaw.com

```
 1  LAS VEGAS, NEVADA                    TUESDAY, JUNE 1, 2010

 2              PROCEEDINGS BEGAN AT 10:26:46 A.M.

 3         THE CLERK:  All rise.

 4         THE COURT:  Good morning.  Please be seated.

 5         THE CLERK:  Your Honor, we are now calling the

 6  scheduling conference in the matter of Oracle USA, Inc., et

 7  al. versus Rimini Street, Inc., et al.  The case number is

 8  2:10-CV-0106-LRH-PAL.

 9         Beginning with plaintiffs' counsel, counsel would

10  you please state your names for the recorded record.

11         MR. POCKER:  Yes, Your Honor.  Richard Pocker of

12  Boies Schiller & Flexner on behalf of the plaintiffs.  And

13  with me are my colleague from our Oakland office, Fred Norton;

14  and in-house counsel from the client, Jim Maroulis and Tom

15  Hixson.

16         MR. BURESH:  Your Honor, on behalf of Rimini Street,

17  Eric Buresh from Shook, Hardy & Bacon, Kansas City office.

18  With me is Rob Reckers from Shook, Hardy & Bacon's Houston

19  office, and I'll let Mr. Tratos introduce himself.

20         MR. TRATOS:  Mark Tratos, Greenberg Traurig, here

21  for Rimini Street as well, Your Honor.

22         THE COURT:  All right, counsel, I set this for

23  hearing upon receiving your discovery plan and scheduling

24  order which requests special scheduling review and

25  substantially longer than deemed reasonable by our local
```

1   rules, but not every case fits within our local rules so let

2   me hear from you.  I continued this hearing at your request.

3   Let me hear from you what progress you've made and what it is

4   that you intend to do with more specificity within the

5   discovery in this matter, and I'll hear first from counsel

6   for plaintiff.

7           Who'll be addressing the plaintiff's position?

8           MR. POCKER:  Fred Norton will be doing that.  Thank

9   you, Your Honor.

10          MR. NORTON:  Should I take the lectern?

11          THE COURT:  Wherever you're more comfortable is fine

12  with me.

13          MR. NORTON:  Okay.  Thank you.  I may do a little

14  better.

15          THE COURT:  It's even adjustable if you want to --

16          MR. NORTON:  Thank you.

17          THE COURT:  -- move it up or down.

18          MR. NORTON:  In terms of where we are, I don't

19  think there's been much change since we filed the Rule 26

20  statement.  And we've actually agreed on a fair amount.  That

21  is, we've agreed on, for starters that this is a complex case

22  and that there will be a need for substantial fact and expert

23  discovery.  And we've agreed on certain categories of

24  discovery, that there'll be unlimited requests for production

25  of documents and that there will be a hundred RFAs for each

1  side.  So on those areas we've reached agreement.

2          Where we remain in disagreement, there are three

3  areas essentially, and that is the number of depositions or

4  number of hours of deposition, the number of interrogatories,

5  and then how long it will take to actually do this discovery.

6  And with respect to those three things the -- I think the

7  proposals are set out and pretty clearly by the parties in the

8  Rule 26 statement, but to sum up quickly:

9          On depositions Oracle propose 75; the plaintiff's

10 propose 50.

11          On depositions we propose 200 hours, they propose

12 165, although they compartmentalize them in ways that we

13 don't think are efficient or will serve the interest of the

14 parties and actually getting discovery.

15          And then in terms of the time for discovery, we

16 propose 15 months for fact discovery and six for expert, and

17 they propose 12 and three.

18          Now in the papers they suggest that, although they

19 concede, they agree that it's a complex case and we need a

20 lot of discovery, that what Oracle has proposed is more than

21 is necessary.  I think the -- what we have proposed is more

22 appropriate and I would point out that we took some trouble

23 in the Rule 26 statement to layout why we think it's more

24 appropriate to go with the slightly greater discovery that we

25 propose.

1           The defendants haven't actually explained why they

2     think that's not the right amount.  They just say what they

3     propose is enough and --

4           THE COURT:  Usually it's the plaintiff that wants

5     to push faster and go to trial earlier and get things done

6     sooner and --

7           MR. NORTON:  That is true.

8           THE COURT:  -- the defendants always tell me they

9     need more time.  So this time you are asking for more time.

10          MR. NORTON:  We are.  And I think that we have the

11    benefit in this case, as we explained in the Rule 26

12    statement, of the experience of having litigated a very

13    similar case.  We are litigating a very similar case in the

14    Northern District of California against SAP and against the

15    predecessor company of one of the defendants here, Mr. Raven,

16    previously was a manager of Tomorrow Now, is one of the

17    defendants in the San Francisco lawsuit.  So it's a clear

18    relationship between the two cases and the same claims and

19    types of claims, same types of conduct.  And the benefit of

20    that experience is that it will take a lot of time to do what

21    we need to do and the amount of discovery that we're

22    proposing, and I'll get into the specifics that you asked for

23    about what we intend to do with that time, but we need that

24    in order to do this right.

25          I can't tell you it would be impossible to do what

 1   plaintiffs say but based on our experience in the SAP case,

 2   where it took twice as much time, twice as many hours of

 3   deposition, twice as many interrogatories, almost, to do what

 4   Oracle proposes here, I can't tell you that it's realistic to

 5   think that we will get done in the time that -- that the

 6   defendants propose or that we can do it without cutting

 7   corners and that's really the concern.

 8           It's the type of information that we're going to

 9   be seeking in this case is not emails and PowerPoints.  And

10   we will be seeking those obviously, but that's not the crux

11   of the case at the end of the day.  We're going to have to

12   get server logs, software, technical documents that attorneys

13   can't just sit down and read.  It will require consulting

14   experts and testifying experts to help us understand after

15   we have identified them, loaded them up in a format that

16   people can use, and done the analysis that we have to do.

17           THE COURT:  And where are you in terms of

18   initiating the discovery that's necessary in order for you to

19   get the stuff that you can turn over to your consultants and

20   experts?

21           MR. NORTON:  Both sides have served initial request

22   for documents.  Oracle has served 14 interrogatories and

23   those interrogatories are what we characterize as

24   foundational.  They're not contention interrogatories,

25   they're not directed at the substance at this stage.  Rather

1    we want to know what are your computer systems?  How are

2    your computer systems configure?  And what are the processes

3    that you use to deliver software and support materials to

4    your own customers?

5          We need to understand that framework before we can

6    begin to intelligently begin to direct our discovery at the

7    substance.  And so the parties agreed we would have some

8    tailored discovery at the outset, focused to helping us

9    understand the task at hand, and then we would proceed to

10   more detailed discovery.

11         So we've exchanged those requests, document

12   requests exclusively from the defendants and document

13   requests and a small number of interrogatories from the

14   plaintiffs, but no one has responded yet.  And so we expect

15   that document productions will begin in the course of the

16   summer.  We would like to begin depositions as we can, but at

17   this point, other than Rule 26 disclosures, neither party has

18   produced any information to the other side.

19         THE COURT:  And when are the responses due?

20         MR. NORTON:  The -- I believe the responses for

21   the first set of interrogatories are due either today or

22   tomorrow.  I apologize, but either today or tomorrow.  And

23   then the first responses to documents would start to come out

24   in about two weeks.  And again, both sides agreed to serve

25   narrower document requests that would help us understand what

1  comes and then more burdensome, for want of a better word,

2  document request that we would understand would take longer

3  to collect and produce.  So the defendant's have served 88

4  document requests as of -- yeah, eight of which are, their

5  narrow initial round and another 70 -- or 80 of which are

6  their ones that they understand will take longer for us to

7  respond to.

8          THE COURT:  And how long do you anticipate the

9  initial process of -- I'll summarize it, defining the universe

10  of what it is that you're going to need and want to discuss

11  with your expert will take?

12          MR. NORTON:  Well, that, what we call foundational

13  discovery, we are aiming to complete within two to three

14  months that will help us understand what are the next steps?

15  What are the types of documents, types of programs that their

16  developers use?  What are the types of -- the ways in which

17  they store information?  That will allow our experts to come

18  back and say, here's what you need to be asking for, here's

19  where you're going to see the evidence that will really make a

20  difference.  But that will take us through a round of 30(b)(6)

21  depositions, those initial interrogatory responses, and

22  probably some discussions between counsel.

23          So we'll have to get through that and then that

24  tees us up for the hard work, saying okay, now we know what

25  we need and we have to get some -- we'll ask for it, and

2:10-CV-106-RLH-PAL        Oracle v. Rimini Street        6/1/10    **Scheduling
Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                         9

1  there'll be some back and forth.  It's too complex for us to

2  get it right the first time.

3        So there'll be some iterations there and then at

4  some point we'll have identified what we need and they'll

5  have to pull it off their systems.  And again, it's not going

6  to be a document pull, like going to the email server, so

7  that will take more time.  And then once we get that, it's

8  our experience in the Oracle versus SAP case is it's an

9  enormous task to get that information, terabytes of

10  information, load it onto our own system, begin to understand

11  it, organize it, analyze it, figure out what you don't have

12  and come back.

13        THE COURT:  Have you reach the stage of being able

14  to discuss the format in which the materials will be

15  produced?

16        MR. NORTON:  Format of the materials -- the

17  conventional materials such as PowerPoints and emails?

18  Absolutely, and we have agreement on that.

19        The technical documents?  No.  We haven't reached

20  the point where we can discuss the format because we haven't

21  crossed that first hurdle of understanding what it is that

22  needs to be produced.  And we -- so we think some staging is

23  inevitable here, perhaps not inevitable but prudent, cause

24  without it what we would have to do is ask for everything and

25  then sort it out.  We'd rather not go down that road.  We'd

 1  rather focus it and proceed in increments.

 2          But by doing that, that slows down the process at

 3  the front end, but we think saves a lot of time and a lot of

 4  resources at the back end.  If we just open the doors then

 5  we'll spend a lot of time figuring out what it is we're doing.

 6  We don't think it makes sense to do that.

 7          THE COURT:  So you'd rather sequence the discovery

 8  is what I'm hearing you -- from doing the foundational

 9  information first, narrowing the universe, getting the

10  materials that are needed in order to decide substantively

11  what you need to do?

12          MR. NORTON:  That's correct.  We avoided a more -- a

13  formal sequencing because we think that it's better to --

14          THE COURT:  There should be some flexibility built

15  in.

16          MR. NORTON:  I beg your pardon?

17          THE COURT:  There should be some flexibility built

18  in.

19          MR. NORTON:  Absolutely, yes.  And to the extent

20  that we can quickly get up to speed and identify categories

21  of information that we know we want, they know they can

22  produce.  There's no reason to say, no, that waits until six

23  months in.  So we don't want something more formal, but we do

24  think it's going to take several stages.  And if we didn't

25  articulate it that way, it would probably happen that way.

1   It would just happen in a less efficient way because we would

2   still go through this iterative process.

3              In terms of what we need, again we've asked for

4   this foundational discovery and that would help quite a bit,

5   but it'll take a little bit of time to get what we need and

6   analyze it and then take the next step.

7              In terms of what it is that we want, well, in this

8   particular case we have -- it's a copyright case, it's also a

9   case involving claims of computer fraud and abuse, and it

10  involves claims that the defendants interfered with Oracle's

11  relationship with its customers.  There are other common law

12  claims that are similar to those, but those three categories

13  broadly capture what the case is about.

14             So with respect to the copyright issues, well, we

15  have software code that Oracle owns and that the defendant's

16  copied a created derivative works on [sic].  So we will need

17  to obtain their derivative works and experts will have to

18  analyze them and compare them to Oracle's copyrighted work.

19  They're having -- once they do that, there may be issues of

20  disputes about copyright ability.  We don't expect, excuse

21  me, those to be substantial issues but defendants may raise

22  them.

23             May I get some water?

24             THE COURT:  Of course.

25                   (Pause in the proceedings)

_____
2:10-CV-106-RLH-PAL        Oracle v. Rimini Street        6/1/10   **Scheduling
                                                                     Conference**
                  NW TRANSCRIPTS, LLC - Nevada Division
                              P.O. Box 890
                        Nampa, Idaho 83653-0890
                  (208) 908-7998 - gayle@nwranscripts.com                    12

1          THE COURT:  You're in the desert.  I don't normally

2    make people that nervous the first appearance.

3          MR. NORTON:  I apologize.  Thank you.

4          So that would be a substantial undertaking in terms

5    of the technical information.  Again, we're not talking about

6    a song and we're not talking about a small number of

7    copyrighted works.  There are approximately 100 registered

8    works at issue that we allege and they claim in their

9    counterclaim.  They have downloaded tens of thousands of

10   files on behalf of just one customer.  So the volume of

11   information, just as with a copyright claim, will be

12   enormous.

13         On the computer fraud and abuse claim the scale is

14   similar and the complexity is equal.  What involves there is

15   that they are using individuals and software programs to go

16   on Oracle's website, a password protected website, and get on

17   that website and download tens of thousands of documents that

18   they're not entitled to have.  And so what did they download,

19   when did they download it or whom were they purporting to act

20   when they downloaded it?  Those are very painful,

21   unfortunately, and fact intensive inquiries we have to go

22   through and it requires that we assimilate a large amount of

23   information and then go through it in a very painstaking

24   way.

25         Then the third -- or broad category of discovery

2:10-CV-106-RLH-PAL       Oracle v. Rimini Street      6/1/10   **Scheduling
                                                                Conference**
NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                            13

1   that has to be pursued here then is the consequences of that.

2   I mean there are very direct consequences in terms of the

3   effects of this activity on Oracle's computer systems and the

4   very obvious effect of information having been stolen.  But

5   beyond that, there's an effect on Oracle's customers having

6   been taken from Oracle and having gone to Rimini Street and

7   those have to be identified who those customers are and what

8   the financial consequences were and what the financial

9   benefit was to the defendants.  So that's a third category of

10  discovery that will require -- I don't think the same level

11  of complexity of the first two, but it's certainly a third

12  area that's not insubstantial.

13          And it -- I should add that in this case there's a

14  counterclaim and so long as the counterclaim remains in the

15  case it does -- they have a defamation claim, and unlike

16  their other two claims, which I think are essentially mirror

17  images of our claims, their defamation claim will require

18  still other categories of discovery.  Whatever their

19  reputation may be and whoever holds that reputation will be

20  an area for discovery on their defamation claim to the extent

21  that remains part of this case.  So that is yet another area

22  of discovery.

23          So those are the four broad areas and we'll be

24  seeking not just again the typical documents but the

25  developers' documents that show how they actually create

1  software, the files they create as they go along so we can

2  see what that process is, the special tools that they use in

3  order to do that. We'll be seeking most likely deleted

4  files, their files that were created along the way and not

5  retained in the normal course, but they may still exist on

6  the systems, and those will be important evidence of copying

7  and important evidence of derivative works and we'll be

8  pursuing that as well. And that will create challenges in

9  the course of discovery that you don't see in every case.

10         So without going through every reason why we think

11  this is a case where slightly more discovery than defendants

12  propose is appropriate, I think that those reasons alone are

13  sufficient. I'm happy to go through some of the others, our

14  experience in SAP, the nature of the claims here, our

15  experience with Mr. Raven. But I think that that's set out

16  in some detail in our papers.

17         THE COURT: Okay.

18         MR. NORTON: I would just -- before I sit down,

19  well, if the Court has questions obviously --

20         THE COURT: I've been asking as we've gone along,

21  so.

22         MR. NORTON: To the extent that -- both sides are

23  trying to get it right in terms of how much time we need and

24  how much efforts going to be -- on time, if -- once the Court

25  imposes limits on the amount of discovery then there's no

1   burden or prejudice to either side of taking a little more

2   time.  And given our experience in dealing with these kinds

3   of issues in the other case, a little more time makes a big

4   difference.  And it's important to Oracle that we take the

5   time, that we do the analysis, and we get it right.

6         And our fear is that if we compress things, even a

7   little bit, where you compress it you cut corners.  And we

8   think the plaintiffs proposal is one that cuts corners.  We

9   don't want to do that.  The danger -- further danger is that

10  we just end up coming back in 10 months and saying we

11  couldn't get it done, now we need three more months, four

12  more months.  Which is our experience unfortunately in the

13  SAP case.

14        THE COURT:  That's my experience, no matter what

15  amount of time the parties ask me, you always come back and

16  ask for more.

17        MR. NORTON:  I understand.  So we'd like to avoid

18  that if we can, but we understand that we're all trying to

19  make a prediction here.  But we do have the benefit of

20  experience and that -- the experience is that the proposal

21  we have is a reasonable one, we think it's a doable one, but

22  we don't think that true of the defendants' proposal.

23        THE COURT:  All right.

24        MR. NORTON:  Thank you.

25        THE COURT:  Thank you, sir.

1           And who will be addressing the defendants' position?

2           MR. BURESH:  Eric Buresh, Your Honor.

3           Well, thank you for having us in this morning.  I

4    know this is taking up your time and the parties time as well

5    so I'll be brief.  I think these issues aren't that complex.

6    It really is a judgment call on the part of the Court as to

7    what discovery period and discovery allotment you want to

8    set, so let me throw out my perspective.

9           There was a lot of talk from Mr. Norton about his

10   experiences and in my experience in these cases it --

11   discovery is much like, for lack of a better analogy, my

12   household budget.  It expands to fit whatever resources are

13   available.  And that's what we're trying to take care of at

14   this early stage is, no matter how difficult or complex the

15   case is, and I think Mr. Norton is right, that both parties

16   agree this is not the standard case.  Obviously we've

17   prevented -- presented schedules that, you know, go beyond

18   the local rules and the federal rule allotment for both time

19   frame and discovery.

20          But the question is, how can you maximize

21   efficiency?  And from our view you maximize efficiency by

22   putting a schedule in place that makes the parties go about

23   their business in a diligent fashion.  And that's the

24   schedule we proposed:  12 months for fact discovery, three

25   months for expert discovery after that for a total of 15

1    months.

2           Now, Mr. Norton talked a lot about the SAP case

3    which is another case, related facts, but a different case.

4    Different lawyers, different parties, different facts in the

5    case.  It's just a different case all together.  And as you

6    alluded to earlier on, the sides here are somewhat flipped.

7    We're asking for a faster schedule while the plaintiffs are

8    asking for a slower schedule, if you will.

9           Why is that?  One of the key differences between

10   the parties and the SAP Oracle case and this case is simply

11   the size and resources of the parties.  In the SAP case you

12   have Oracle versus SAP, which they're both gigantic

13   companies.  I mean a hundred thousand employees for Oracle.

14   And you see the results of that.  You have a discovery period

15   that lasts 28 months, six months on top of that for expert

16   discovery, nearly a thousand hours of depositions.  Just

17   hours, not -- 1285 requests for admission, 127

18   interrogatories.  I mean it got out of control and that's

19   what happens when you have massive parties with unfettered

20   resources.

21          Rimini Street has about 160 employees.  It's a

22   relatively young company.  It's getting started.  It happens

23   to be a consulting company that stands in the shoes of this

24   clients to service Oracle software and Oracle databases.  We

25   happen to be a consulting company that exists in a field

1   that's very, very profitable for Oracle and so the lawsuit is

2   -- it follows from that.  When you -- when you go into a --

3   into a area where great profits are at risk, there's going to

4   be a lot of resources on the litigation frame as well.  We

5   need to control that.  It cannot be another SAP case.  If it

6   is, Rimini Street will be out of business cause we can't

7   sustain that, it's a small company.

8          So taking into -- taking into the equation the size

9   of the companies, the complexity of the case, we weren't being

10  unreasonable.  We're not trying to pinch Oracle.  We simply

11  say, look, federal rule provides some guidelines, the local

12  rules provide some guidelines.  Work off of those.

13         If you look at our proposals, we've doubled the

14  interrogatories that were in the defaults, 25 to 50.  We've

15  doubled -- more than doubled the standard deposition time.

16  Now in the federal rules you get 10 depositions, seven hours

17  a piece, 70 hours.  Our recommendation is 165 hours for

18  depositions, but we have broken that up a little bit because

19  if you -- if you look at Oracle's proposal, 200 unfettered

20  hours.  I'm not going to stand here and say that I think Mr.

21  Norton wants to abuse 200 hours of deposition time.  But I

22  will stand here and say that it's possible that a party could

23  abuse that number of unfettered hours.  There is a reason why

24  the federal rules --

25         THE COURT:  They're wanting to avoid shortcuts, you

1    suspect, and so trying to bankrupt your client through

2    discovery.

3            MR. BURESH:  I'm trying to protect my client.  To

4    make a long story short, we don't have the resources to go

5    and defend hundreds of depositions that are two hours a piece.

6    We don't have the capability to spread ourself --

7            THE COURT:  Well, neither side is proposing that.

8            MR. BURESH:  What's that?

9            THE COURT:  They're not proposing that.

10           MR. BURESH:  Well, I agree.  And again, I would not

11   -- I would not say that they are proposing that.  My point

12   simply is the parade of horribles, if you look at 200 hours,

13   that could happen.  Not that it will, but it could.  That's

14   why I think the federal rules go to the deposition -- they

15   give you a number and they give you an hour limit on the

16   number, but you have 10 individual depositions.  It has to be

17   the starting point, not just hours but how many depositions

18   do you have.  If we have 160 employees at 200 hours available,

19   every single one of them could be deposed.

20           What we're saying is work from the federal rules.

21   It gives you 10 individual depositions.  We've increased that

22   to 15.  In addition, 15 hours for 30(b)(6) testimony.  In

23   other words, corporate testimony, 15 additional hours.  In

24   addition to that, 40 hours of third-party testimony.  That

25   provides Oracle plenty of time, plenty of depositions to

1    gather the facts that they need to gather and yet it provides,

2    by structuring it that way, protections against abuse.  That's

3    the basis for that proposal.

4            With respect to the schedule, 12 months for fact

5    discovery.  If we're using our time effectively, if we're

6    proceeding diligently, that's a doable time frame.  A full

7    year for fact discovery.  Three months on top of that for

8    expert discovery.

9            Again, I am quite confident that whatever time the

10   Court gives for discovery it will be consumed.  We want to

11   make sure that we don't -- the starting point for that

12   consumption is a controllable amount and we believe that 12

13   months plus three months accomplishes that as well.

14           So that's our positions.  If you have any questions,

15   I'd be happy to answer them.

16           THE COURT:  Do you concur that there is a need for

17   some foundational discovery that'll take approximately two to

18   three months in order to really figure out what the universe

19   is of things that you will need to exchange and the format of

20   those exchanges?

21           MR. BURESH:  I don't think -- to say it's necessary?

22   No, that's part of discovery.  That's part of discovery in

23   every --

24           THE COURT:  Is it more efficient?

25           MR. BURESH:  -- in every one of these cases.

1          It is more efficient to do that way and we have

2   informally agreed to do that.  Both sides have exchanged this

3   preliminary discovery already.  Both sides -- or at least my

4   side, Rimini Street, has agreed to make production on that

5   initial request as much as possible and I believe it'll be a

6   fulsome production within 45 days of the issuance of the

7   request.  So it's not going to be a rolling production after

8   that.  There may be a little bit that's rolling, but

9   predominantly we will complete that initial production within

10  45 days and I think that's evidence of the fact that we want

11  to move this along.  We want the discovery to move quickly.

12  We want to be done with it.

13          My clients want to get this to the merits as soon

14  as possible so that there's a clear playing field.  We know

15  what the rules are, we know what the legal framework is, and

16  we can go forward as a business.  And that's the interest of

17  my client and the quicker we can do that, the better we are.

18          So we're ready to proceed with discovery.  We're

19  proceeding in good faith now, and I believe that as the

20  parties continue to operate in that manner, 12 months for

21  fact discovery is more than enough.

22          THE COURT:  Thank you, counsel.

23          MR. BURESH:  Thank you.

24          THE COURT:  Well, I appreciate the civility and

25  collegiality with which you have presented your respective

2:10-CV-106-RLH-PAL        Oracle v. Rimini Street       6/1/10   **Scheduling
                                                                  Conference**
NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                          22

1   positions in this matter.

2          It is my desire to give you a reasonable schedule

3   and one that does not unreasonably compress the amount of

4   time that you have to do what you need to do and to see that

5   discovery is accomplished in a cost-effective manner as well

6   and I have a strong preference for applying Rule 1 to see if

7   I can accomplish the just, speedy, and inexpensive resolution

8   of every matter to the extent that's humanly possible in

9   Federal Court.

10         What I want to do is continue this for a status

11  conference in 60 days.  By then you will have made your

12  initial disclosures.  You will have had the foundational

13  discovery well underway.  You should have a better idea of

14  what your issues and concerns are, and I'll enter a plan at

15  the end of the 60 days to give you an outline and monitor

16  what it is that you each want to do to ensure that we don't

17  have any discovery abuses on either side.  And I'm not

18  suggesting that either side has that intention.  But rather

19  than set what is effectively -- a somewhat arbitrary date

20  without knowing what your problems are and what your universe

21  is of materials that you will exchange, I'll set the

22  deadlines as we go and give you leave to conduct additional

23  discovery as we go instead of across the board.

24         And I will also be happy -- I do this in cases

25  including MDL cases and routine discovery disputes, to hold

2:10-CV-106-RLH-PAL        Oracle v. Rimini Street        6/1/10     **Scheduling
                                                                             Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 890
Nampa, Idaho 83653-0890
(208) 908-7998 - gayle@nwranscripts.com                                  23

1   periodic status and dispute resolution conferences to enable

2   you to submit your disputes on joint status reports rather

3   than through the necessity of formal briefing, unless there

4   is something, of course without prejudice to formal briefing,

5   if that's the way you feel is necessary.  But many of these

6   disputes are routine and judgment calls and there's no reason

7   why we have to engage in formal motion practice if they can

8   be resolved as we go along.  So I intend to keep you moving

9   forward and to adjust and to set deadlines as we go, rather

10  than pull numbers out of our hat, which is kind of what we're

11  doing right here at this stage, given that you haven't

12  conducted the foundational discovery here.

13          So if that gives you enough guidance, I hope it

14  does.  If it doesn't, let me know, but I'll give you a status

15  check in 60 days and require you to submit a joint status

16  report that tells me what you've done, identifies whether you

17  have any disputes or issues, and what your preliminary

18  discovery suggests in terms of your proposals for completion

19  of discovery and experts.

20          Okay.  Any questions or need for clarification on

21  either side?  Okay.

22          And if you would prefer to appear telephonically

23  because it's more cost efficient for your clients, I'm more

24  than happy to do that.  Some folks like that and some people

25  prefer to appear in person, so I'm more than happy to

1   entertain these on a telephonic basis to save you the time

2   and expense of coming here from out of state.

3          Okay.  Mr. Miller, if we can give a 60-day status

4   check and then a date for the providing a joint status

5   report?  And I would ask you please to avoid springing

6   surprises on your adversaries about what you want included

7   in the status reports so that we don't have a dispute about

8   what goes in it and what doesn't.  I expect where you are,

9   what you've done, what you need to do, whether you have any

10  disputes.  If so, your respective positions with respect to

11  those disputes and alerting the Court to any impediments that

12  there are to moving this case forward is what I'm asking you

13  for in a joint status report.

14          All right.  Mr. Miller.

15          THE CLERK:  Yes, Your Honor.  This matter will be

16  set for status check on Thursday, August the 5th, 2010, at

17  9:30 a.m. in this courtroom.  We request the status report to

18  be filed no later than Monday, August 2nd, 2010.

19          THE COURT:  Okay.  Thank you for appearing here

20  today, counsel.  And again, I do appreciate the civility that

21  you've shown to one another and to the Court.

22          PROCEEDINGS CONCLUDED AT 10:55:24 A.M.

23                   *  *  *  *  *  *  *  *  *  *

24

25

## CERTIFICATION

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**P.O. BOX 890**
**NAMPA, IDAHO 83653-0890**
**(208) 908-7998**
**gayle@nwtranscripts.com**

/s/ Gayle Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kay McCrea                                              9/6/10
TRANSCRIBER                                             DATE