UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS, NEVADA


ORACLE USA, INC. et al.,        )
                                )   CASE No. 2:10-CV-0106-LRH-PAL
            Plaintiffs,         )
                                )
        vs.                     )
                                )
RIMINI STREET, INC. et al.,     )
                                )
            Defendants.         )   Las Vegas, Nevada
                                )   August 5, 2010
_____)   9:30:20 a.m.
And related cases and parties)


**HEARING ON MOTIONS**


THE HONORABLE PEGGY A. LEEN PRESIDING
MAGISTRATE JUDGE OF THE U.S. DISTRICT COURT


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

APPEARANCES:

FOR THE PLAINTIFFS:          FRED NORTON, Esq.,
                             Boies, Schiller & Flexner, LLP
                             1999 Harrison Street
                             Oakland, California 94612
                             fnorton@bsfllp.com

                             RICHARD J. POCKER, Esq.,
                             Boies Schiller & Flexner, LLP
                             300 South Fourth Street, Suite 800
                             Las Vegas, Nevada 89101
                             rpocker@bsfllp.com

(Via telephone)             JAMES C. MAROULIS, Esq.,
                             Oracle Corporation
                             500 Oracle Parkway
                             Redwood City, California 94070
                             jim.maroulis@oracle.com

(Via telephone)             THOMAS S. HIXSON, Esq.,
                             Bingham McCutchen LLP
                             Three Embarcadero Center
                             San Francisco, California 94111
                             thomas.hixson@bingham.com

FOR THE DEFENDANTS:          ERIC A. BURESH, Esq.,
                             Shook, Hardy & Bacon LLP
                             2555 Grand Boulevard
                             Kansas City, Missouri 64108
                             eburesh@shb.com

                             ROBERT H. RECKERS, Esq.
                             Shook, Hardy & Bacon LLP
                             600 Travis
                             Houston, Texas 77002
                             rreckers@shb.com

```
 1  LAS VEGAS, NEVADA                    THURSDAY, AUGUST 5, 2010

 2           PROCEEDINGS BEGAN AT 9:30:20 A.M.

 3           THE CLERK:  All rise.

 4           THE COURT:  Good morning.  Please be seated.

 5           THE CLERK:  Your Honor, we are now calling the

 6  hearing in the matter of Oracle USA, Inc., et al. versus

 7  Rimini Street, Inc., et al.  The case number is

 8  2:10-CV-0106-LRH-PAL.

 9           Counsel, I will now ask you to make your appearances

10  for the record.  Beginning with plaintiffs' counsel, we would

11  like to start with counsel in the courtroom followed by

12  counsel on the telephone, please, and then defense counsel.

13           MR. NORTON:  Fred Norton of Boies, Schiller &

14  Flexner for the plaintiffs.

15           MR. POCKER:  Your Honor, Richard Pocker also of

16  Boies Schiller & Flexner on behalf of plaintiff.

17           MR. MAROULIS:  On the phone, Your Honor, it's James

18  Maroulis from Oracle for the plaintiff.  And thank you for

19  permitting me to appear via telephone.

20           MR. HIXSON:  And also on the phone, Your Honor, is

21  Tom Hixson with Bingham McCutchen for plaintiffs.  And

22  likewise, thank you for allowing me to appear telephonically.

23           MR. BURESH:  Your Honor, on behalf of Rimini Street

24  Eric Buresh and Rob Reckers of Shook, Hardy & Bacon.

25           And Mr. Reckers will be primarily doing the speaking
```

 1   on behalf of Rimini Street today.

 2            THE COURT:  This is on for a status check on your

 3   competing proposals for discovery plan and scheduling order

 4   and limitations on discovery -- that is expanding the

 5   limitations deemed presumptively reasonable by the rules.

 6            And also in the meantime I've received Defendant

 7   Rimini Street's motion for protective order regarding the

 8   location of depositions.  I have read the moving and

 9   responsive papers, but if there's anything you want to add to

10   your papers, counsel, this is your opportunity to do so.

11            Mr. Reckers.

12            MR. RECKERS:  Thank you, Your Honor.  And I

13   understand the Court's time is valuable so be very brief.

14            There's -- we made a number of attempts to resolve

15   the issues raised by the protective order.  Really two points

16   here.  One, our client believe they have a substantial

17   interest and important issue of protecting their witnesses,

18   their employees from this unnecessary stress that happened to

19   have --

20            THE COURT:  What do you normally notice depositions

21   when you notice them, counsel?

22            MR. RECKERS:  Normally what happens is the parties'

23   reach an agreement at some point early in the process where

24   the corporate witnesses are presented at their own offices

25   and that's been my understanding of the general practice in

```
 1  Federal Courts throughout the country.  That's certainly been

 2  my practice, the practice of the members of our court team.

 3  You reach agreement, corporate witnesses a re presented at

 4  their own --

 5           THE COURT:  But your client is headquartered here in

 6  Las Vegas?

 7           MR. RECKERS:  Pardon me?

 8           THE COURT:  Your client is headquartered here in Las

 9  Vegas?

10           MR. RECKERS:  They are, but they have substantial

11  operations in the Bay area and the particular witness in this

12  case, the designee we had for the 30(b)(6) --

13           THE COURT:  You can designate anybody you want for

14  a Rule 30(b)(6) witness, but you have complete control of

15  that.  The other side gets to tell 'em the subject matter on

16  which they want deposition topics to be addressed and you can

17  educate anybody of your choice to respond.

18           MR. RECKERS:  Yes, Your Honor.

19           For these particular topics the best person was in

20  the Bay area, so we chose someone in the Bay area.  Both firms

21  for each side have counsel in the Bay area and it makes sense

22  to be in the Bay area.  I don't know that that's in dispute.

23  I think the issue here is what --

24           THE COURT:  Your office versus their office.

25           MR. RECKERS:  Exactly, Your Honor.  Exactly.
```

1          THE COURT:  Your San Francisco office versus their

2    San Francisco office, .6 miles away.

3          MR. RECKERS:  Exactly.  Exactly.

4          THE COURT:  And the process of appearing in front

5    of opposing counsel's counsel in their own law office is so

6    intimidating to this witness that you felt compelled to bring

7    this to my attention despite the plaintiffs multiple efforts

8    to compromise?

9          MR. RECKERS:  I think that is fair.  We -- but we

10   also made offers to compromise and we didn't see any reason

11   to deviate from the general practice to be best served.  Two

12   points.  One that --

13         THE COURT:  Well, your corporate designee doesn't

14   operate out of your office, does he, sir?  Or she?

15         MR. RECKERS:  No, he does not.

16         THE COURT:  So you're not asking for it to be taken

17   place at the location where the designee is?

18         MR. RECKERS:  That's correct.

19         THE COURT:  You're asking for it in your office?

20         MR. RECKERS:  We're asking for our office as perhaps

21   a proxy consisting with the general practice.  I understand

22   the rule is at the location of the work or the home that

23   furthers, you know, the general point I'm -- that I'm

24   addressing here which is the comfort of the witness.  Comfort

25   of the witness leads presumably to the best testimony, most

1  accurate testimony which is, you know, the goal of discovery

2  in the first place.

3          So we had suggested that our office in San Francisco

4  as the best place for the deposition.  We didn't see anything

5  on Oracle's side which would --

6          THE COURT:  Who has the burden of persuasion on a

7  motion for protective order?

8          MR. RECKERS:  Certainly -- certainly it is the

9  moving party.

10          THE COURT:  So the fact that they, you know, tie

11  goes to who?

12          MR. RECKERS:  I -- yeah.  To the extent we can

13  establish good cause, then we certainly do not prevail on the

14  motion.

15          THE COURT:  Okay.

16          MR. RECKERS:  So the -- the only point that I have

17  is we believe there is good cause, respect for the -- and less

18  -- the burden on the witness and to the procurement of the

19  accurate testimony.

20          I thank the Court for its time.

21          THE COURT:  Thank you, sir.

22          Counsel for plaintiff, is there anything you want to

23  add to your papers?

24          MR. NORTON:  No, Your Honor.

25          THE COURT:  Your motion for protective order is

1  denied.  I find that the defendant has not met its burden

2  under Rule 26(c) for a protective order to issue.  Broad

3  allegations of harm, unsubstantiated by specific examples of

4  articulate reasoning are insufficient to support a protective

5  order.  The fact that the witness might be, quote,

6  "uncomfortable" or might be, quote, "more comfortable

7  somewhere else" is insufficient to require a protective

8  order, for the Court to require the witnesses to appear in

9  the law offices of plaintiffs' counsel -- or excuse me,

10  defendants' counsel, a mere blocks away from the location

11  where it's noticed after considerable compromise by the

12  plaintiff.

13          I'll hear from you now concerning your respective

14  request for discovery plan and scheduling order deadlines.  I

15  glean from the fact that you are engaged in related discovery,

16  that is set for trial in November, that this has been a

17  contentious litigation, and you expect this to be equally

18  contentious.  And so you're both asking for a lot of time and

19  you're both asking for a lot more time than is deemed

20  presumptively by the local rule.  And while it is not my

21  intention to unreasonably compress the amount of time for

22  you to conduct your discovery and therefore make it more

23  expensive and onerous on everyone, my experience, frankly,

24  and I've done complex litigation as a litigation lawyer, is

25  that the more time you have the more things you figure out

1   how to do and it has a self-fulfilling prophecy.

2         So let me hear specifically what it is that

3   plaintiff is requesting and why it is that I should grant

4   your request for 15 months in which to complete fact

5   discovery, followed by six months in which to complete expert

6   discovery?

7         MR. NORTON:  Thank you, Your Honor.

8         We do understand that what we're asking for is

9   significantly longer than what is presumptively reasonable

10  under the local rules.  I think the fact that the parties

11  have agreed on something that's already substantially longer

12  than the local rules would provide in a case that -- we all

13  have assessed the case in a similar fashion, that it will

14  require substantial discovery.  It is a very complex case,

15  well outside the norm.  So the fact that our dispute is

16  actually rather narrow, I think indicates the propriety of

17  our request.

18        And then the dispute of course is the difference

19  between 12 months of fact discovery, as proposed by the

20  plaintiffs, the 15 is proposed by us, and we propose six

21  months of expert discovery as opposed to three from the

22  defendant.

23        And I think that -- I can certainly justify either

24  of those proposals, but the fact that we are so close really

25  ultimately, I think indicates that we've all recognized it's

1  going to take a lot of work to get to where we need to be.

2          THE COURT:  I'll tell you what my problem is, and I

3  tell folks this about three times a week generally speaking so

4  Mr. Pocker has probably heard this before.

5          My experience is, no matter what amount of time a

6  Court gives litigants they come back and say it can't be done

7  and they need more time.

8          MR. NORTON:  I understand that and I have certainly

9  made that request myself in cases.

10         I think here, it's a little unusual in that we do

11 have the benefit of another case and another case that

12 involves --

13         THE COURT:  Took 16 months to get one deposition

14 and 17 months to get one deposition because it went up from

15 the Magistrate Judge to the District Judge to appeal a

16 routine discovery order, and then up to the Ninth Circuit,

17 and then it came back when the party opposing stipulated the

18 dismiss.

19         MR. NORTON:  That's correct.  That was the

20 defendants in this case had opposed that discovery and it did

21 take that long.  But when I refer to the other case, certainly

22 that example is salient and we pointed that out in our May 13

23 submission, but when we focus on the discovery that under the

24 best of circumstances we would need to take and that we would

25 take as efficiently as possible, our bench mark is the SAP

1    litigation.  And although there are certainly some differences

2    between this case and that one, we have learned a great deal

3    from the work that was done in that case.  And the nature of

4    the discovery here is not the typical discovery.

5              As I think I mentioned when we were here last time,

6    the types of documents that will be produced and that will be

7    critical to the claims are technical documents.  They're not

8    the sorts of documents that you just sit down and read.

9    Although emails and instant messages and PowerPoints will be

10   part of the discovery and part of the proof at trial, there

11   will also be computer log files.  There'll be the need to

12   analyze software code and compare competing versions of

13   software code to determine whether or not there's been

14   copying.  That takes a lot of time to analyze, but before you

15   can even analyze it, it takes time to locate the process, to

16   get in the form that experts need in order to actually do

17   their jobs.  And what we learned in the other case was that

18   that is a process that you can't -- you can't skip steps and

19   you can't compress steps that -- and which is why we propose

20   the foundational discovery first here.  So let's first figure

21   out what types of information exist, where it exists, how we

22   can most efficiently get it to the other side and vice versa

23   and then we can --

24             THE COURT:  And the foundation --

25             MR. NORTON:  -- begin the analysis.

1          THE COURT:  -- and with specificity, what

2    foundational discovery do you expect?

3          MR. NORTON:  What we did here was we served I

4    believe 14 interrogatories on the defendants that were

5    focused on understanding precisely what are the computer

6    systems that you have that would have information that's

7    relevant to this case?  Where are they located and how are

8    they -- what is the architecture of that system?  We asked

9    about their development process in the sense of how do they

10   get the software code, the support materials, the updates

11   that they purport to create on their own?  How exactly do

12   they get those to their customers?  What is the delivery

13   process?  We wanted to understand what kinds of log files did

14   they maintain?  What are the computer records that will show

15   us when they accessed Oracle's websites?  How they accessed

16   Oracle's websites?  What they downloaded?  For whom they

17   downloaded it, and where they put it?  Because --

18         THE COURT:  Have you reached an agreement with

19   respect to ESI?

20         MR. NORTON:  We have not reached an agreement with

21   respect to ESI.  The -- and that is part of our, I guess,

22   discomfort with the defendants' proposal is that our goal was

23   to resolve these foundational issues early on and figure out

24   what we had to deal with.  And part of that we thought was to

25   resolve the ESI issues.

1          I should say with respect to the conventional ESI,

2   yes, we have agreement.  Emails, the conventional documents

3   that we're all accustomed to was not difficult.

4          But what we think are going to be critically

5   important in this case are server files.  And with respect to

6   server files, we don't have an agreement.  With respect to

7   preservation issues we don't have agreement.  And after an

8   extended back and forth on those issues, the defendants took

9   the position that we would need to proceed with formal

10  discovery to determine what precisely as been preserved, how

11  it's been preserved, where it all is.  And so we noticed our

12  30(b)(6) deposition and unfortunately that deposition did not

13  go forward as scheduled.  It will go forward next week now,

14  because of the defendant's motion for protective order.

15         So we've made some progress on what I would think

16  are the easier issues.  But on the big issue of the computer

17  records that would show us how they actually accessed Oracle's

18  copyrighted information and then what they did with it.  They

19  have neither identified what precisely that information is,

20  nor told us precisely where it may be, nor produced any of it.

21  And that will be --

22         THE COURT:  And when -- excuse me.  When did you

23  serve your interrogatories asking for these foundational

24  matters?

25         MR. NORTON:  The day of our Rule 26 conference,

1  which if I recall correctly was April 29th.

2          THE COURT:  And so you received responses to those?

3          MR. NORTON:  We have received responses.  I would

4  -- we're not satisfied with those responses, but we'll work

5  with the defendants to try to get the information that we

6  need.  The overarching problem that we have with those

7  responses, to make it concrete, is that the defendants appear

8  to have responded across the board with respect to what they

9  do today, what their systems are now.

10          THE COURT:  As opposed to historically?

11          MR. NORTON:  As opposed to historically.

12          THE COURT:  And is that one of the issues that

13  you'll be addressing with a Rule 30(b)(6) designee?

14          MR. NORTON:  It would be covered to some extent by

15  that 30(b)(6) deposition and we certainly -- what we hoped to

16  do is get fuller answers to the interrogatories and then

17  proceed with a 30(b)(6) deposition.  That was the -- the

18  deliberate structure was get the interrogatory answers, that

19  will help us identify the topics and how to go about the

20  deposition, and then proceed.

21          Given where we are now and the time that's passed,

22  we probably have to make some decisions about whether we wait

23  further.  But the 30(b)(6) would inform some of that, but we

24  were really focused on the preservation issues since that's

25  where we lost traction at a certain point on the meet and

1    confer.  And so once we were unable to resolve what is that

2    exactly they're preserving and how they're preserving it and

3    where it all is, and so we'll just do a 30(b)(6) for that.

4    And that is the 30(b)(6) that was before the Court this

5    morning.

6            But we certainly intend to take a 30(b)(6) to

7    understand these other foundational issues and that will,

8    again, inform how we go about the next step, but that --

9    that's a gaiting item and once we get through it there is

10   this very substantial task of analyzing a very substantial

11   amount of data.

12           I should say Oracle has produced those types of log

13   files to the defendants.  The log files that show, from

14   Oracle's side, when, as best we can tell, the defendants

15   accessed the system.  But we don't have anything comparable

16   from the defendants and we need it.

17           So that is a critical part of our thinking about

18   this particular discovery plan.  Fifteen months because we

19   need to actually figure out what there is, get it, analyze

20   it, and then question people about it.  And if we were to

21   just take depositions of technical people of the defendants

22   about what their processes are, without having the benefit of

23   having analyzed this information and seeing the similarities

24   between this computer file that they delivered to their

25   customers and the computer file that they downloaded from

1  Oracle, without the opportunity to do that, the opportunity to

2  understand their development processes, then we'll be

3  handicapped.  So it does, I think, have to be, if not a

4  formally staged process, an informally staged process to get

5  there.

6          So I am certainly sympathetic to the Court's

7  concern that no matter what you give us we will come back,

8  but we did, in coming up with a proposal that we submitted on

9  May 13, we did try to come with a proposal that would avoid

10 the need for us to come back.  Obviously we can't guarantee

11 that will happen, but I am far more confident that if we were

12 to go with defendants' proposal it will have to be that,

13 based on what we have to do, what they've given us so far,

14 and, frankly, the other discovery disputes that we've had

15 today.  It does not suggest that --

16          THE COURT:  How far along are you in resolving or

17 coming to an impasse with respect to your discovery disputes

18 today?

19          MR. NORTON:  I would say that we are at the very

20 first stages.  Both sides have taken the time to digest what

21 they've received.  We have issues with what they have given

22 to us.  Yesterday they wrote us a letter identifying issues

23 they have with what we've done.  That's part of the normal

24 process and by no means surprising, but we are now, beginning

25 to talk about what more we want from each other with respect

 1  to our initial discovery requests.  And so we have a good

 2  relationship with defendants' counsel.  We'll make a lot of

 3  progress on that I'm sure, but we're at the very beginning.

 4          And so going back to the Court's first question,

 5  why should we be given so much time?  Again, I think the --

 6  that the technical discovery is a substantial part of it and

 7  that is probably the primary reason, the need to get through

 8  that.  But there will also need to be a number of depositions,

 9  there'll need to be some third-party depositions and we'll

10  have to get those scheduled and work through those, and that

11  will be a substantial part of this as well.  So that is

12  significant.

13          I think that if we can lay out a 15-month time

14  frame to do that, we can do it a lot more efficiently.  If we

15  try to compress it, then we -- we can't count on the

16  possibility, the prospect that we would come back to Your

17  Honor and ask for more time and we'd be fine.  So if you give

18  us something less than 12 months or less than 15 months, then

19  we all have to plan accordingly and we have to -- rather than

20  do it in the -- in the phases that I had suggested, we'll

21  just have to do it in sort of a land rush fashion and that

22  will be more expensive.  It will probably lead to more

23  disputes because, frankly, we won't always know what we're

24  talking about.  And it may mean that we'll be in front of

25  Your Honor, more often because we'll have more disputes.

1          I think that here what will compress the expense

2    or put a limit on the expense is to limit the discovery to

3    what's appropriate in terms of interrogatories, depositions,

4    document requests.  And then within those limits, give us the

5    time that we need to work through that information.

6          And so with respect to the discovery limits, again,

7    we're not very far apart.  We're in agreement on request for

8    admission.  We're in agreement on document requests.  We want

9    75 interrogatories, they want 50.  Between 50 and 75.  I

10   think it makes a difference to me and how I can prepare my

11   case and get what I need, but I don't think that it is the

12   sort of -- the difference that will, in the defendants' words,

13   bury them.  It's the difference that helps us do this more

14   efficiently.

15         In terms of hours of deposition, we say 200, they

16   165.  Again, makes a difference to me.  We plotted out what

17   we thought we needed, the number of depositions, how long we

18   thought they would take, and 200 seemed like a number that we

19   could live with and not come back to the Court for more.  But

20   165 is a number that we thought was too aggressive.  And once

21   more to parcel it out into these compartments, as the

22   defendants propose, that allow us to use so many hours for

23   30(b)(6) depositions and so many hours for third parties,

24   it's just going to lead to inefficiency.  There's -- I have

25   no reason, sitting here today, to think that that's the right

1 way to divvy it up, so we should just have the flexibility to

2 do so.

3          But I think the limits that we proposed are

4 reasonable ones.  They're not that much greater than what the

5 defendants have proposed and that's really where you can

6 control the amount of expense that goes into the discovery is

7 that's really the driver.

8          So for all those reasons, we would suggest that the

9 proposal that we originally gave you back in May is the right

10 way to go on this for this case.

11          I'm happy to answer any other question.

12          THE COURT:  No, I've been asking you as we've gone

13 along.

14          MR. NORTON:  Thank you.

15          THE COURT:  Thank you, counsel.

16          And let me hear from Mr. Reckers.  Will you be

17 addressing the defendants' position?

18          MR. RECKERS:  Yes, Your Honor.

19          THE COURT:  First of all, let me just ask you, do

20 you agree that it makes sense to engage in the foundational

21 discovery and kind of phase this in some respects, although

22 not inflexibly?

23          MR. RECKERS:  Absolutely.  And since we were -- we

24 were last before you, Your Honor, we have been engaging in

25 these foundational discovery.  We responded, I think that very

1    day with our interrogatory responses.  In Rimini's position

2    they were -- they were comprehensive, they were complete.

3    Today's the first day that I've heard any dispute from

4    counsel from Oracle that there was any problem with our --

5    with our discovery responses today and -- but we're happy to

6    address them and we're happy to work forward any deficiencies

7    they may perceive.  But, again, I hadn't heard that before

8    today.

9            Rimini Street has produced -- it's a small company,

10   they've produced about 50,000 pages of Bates stamped documents

11   since we were last before you.  A substantial production, I

12   expect there will be a substantial production in about --

13   another substantial production in about two weeks as we -- as

14   we get documents through the process.

15           The real issue for Rimini Street is, this

16   litigation is causing them to lose sales every day.  We all

17   know the old axiom, justice delayed is justice denied.  That

18   really is salient here because Rimini Street, you know, is in

19   the business of supporting the Oracle software.  Customers

20   see that Oracle and Rimini Street are in this litigation and

21   they are less likely to do business with Rimini Street.

22           So our proposal -- and again, as Mr. Norton says

23   we're fairly close, but to force the parties to be efficient,

24   and that's really key for us.  Force efficiency by setting a

25   schedule with limits.  Yes, in time.  Yes, in scope.  And that

1  really is the important thing.  And I believe that Rimini

2  Street has demonstrated, through their responses to the

3  interrogatories without any extension to the first -- the

4  first, you know, 30 days after they were served or 33 days or

5  whatever it was, serving the documents and the responses in

6  our opinion, full and complete, but of course we'll work if

7  there are -- there are areas of additional inquiry.  There was

8  no other written discovery that was served.  There's no other

9  -- there was no back and forth on things that they wanted and

10  there was no responses sent.

11       So, you know, the deposition issue aside, which is

12  -- as Mr. Norton explains the preservation issues, the

13  foundation of the claims and defenses, well, they had noticed

14  any additional depositions.  There aren't other notices

15  pending.  We're happy to provide information to move this

16  case sufficiently because that's in my client's interest,

17  trying to protect ourselves to get this wrapped up and take

18  the cloud off of -- off of the business.

19       THE COURT:  So that behooves you to try to work out

20  discovery disputes so that you don't have built-in delays by

21  filing motions to compel or motions for protective order that

22  are designed to -- by necessity, they take time to brief back

23  and forth, and they take time for the Court to decide, and

24  they -- you get in the cue depending on what else I have on

25  my calendar.

1          MR. RECKERS:  I understood, Your Honor.  I

2    understand, Your Honor, and your point is well taken.

3          And as we've agreed with Oracle, that deposition

4    will go forward next week and hopefully the scheduling of

5    additional depositions can go more smoothly.

6          THE COURT:  I'm just testing, you know, you want to

7    move this case but that requires a certain amount of

8    flexibility and cooperation if that's truly your design.

9          MR. RECKERS:  Yes, Your Honor.  I understand.  And

10   let me point out, as Your Honor pointed out last time we were

11   here, it's sort of unusual for the defendant to be pushing a

12   case and the plaintiff to be requesting the longer schedule.

13   And so that flows into the dynamic I mentioned earlier about

14   the real business impact of this litigation.

15         Mr. Norton discussed -- there's an issue about

16   preservation.  There's been substantial meet and confer on

17   that.  I hope this deposition going forward will give them an

18   understanding.  It's not that we didn't let them know what we

19   were -- what we were preserving or not preserving, but these

20   are fairly complex, you know, technical operations and we

21   need to bring in an IT professional to explain how software's

22   sold -- or how software is stored and where it's stored and

23   how it's moved around.  So I don't want to leave the Court

24   with the impression that we're not working together on that.

25   We just need to have the IT professional come in and explain

1  what's going on, then they can tailor their requests for

2  things to be preserved or collected or produced in a certain

3  manner.  So --

4          THE COURT:  And are you prepared to proceed with

5  that next week?

6          MR. RECKERS:  We are.  We have agreed on a date, the

7  end of next week and --

8          THE COURT:  Excellent.

9          MR. RECKERS:  -- in San Francisco.  So that's the

10  plan at the moment.

11          So again, just going back to the -- you know, my

12  fundamental point which is efficiency, to give 200 hours of

13  unfettered deposition time leads to perhaps inefficient use

14  of those depositions.  Federal rules for general practice is

15  about 10.  We also are using a numeric limit.  We've only got

16  160 employees, 15 personal depos seems reasonable given the

17  size of our company, which is great expense if they were to

18  use 200 depositions for 40, 40 different four-hour or five-

19  hour deposition.  I mean that --

20          THE COURT:  You haven't really had discussions

21  about who they want to depose and how many nonparties, how

22  many parties or anything like that as of yet, have you?

23          MR. RECKERS:  Not yet, Your Honor, no.

24          THE COURT:  All right.  You just fear that your

25  company will be crippled because you have a small number of

1   people and that their time might be tied up?

2           MR. RECKERS:  Yes, Your Honor.  That's --

3           THE COURT:  Okay.

4           MR. RECKERS:  -- that's exactly the motivation

5   behind our deposition, the buckets.  The 15 personal depos,

6   15 hours of 30(b)(6) time, 45 hours of third-party deposition

7   time, and then unlimited time or, you know, unallotted time

8   for expert discovery.  So we're talking about a lot of hours.

9   We just want the protection of the buckets to avoid any kind

10  of excessive use of a number and of course lead to escalating

11  costs.  So really that's -- that's our position.

12          I don't think we are -- I agree with Mr. Norton,

13  that we're not that far apart.  I agree with Mr. Norton that

14  we have a good relationship, that we're working together.

15  Hopefully that this litigation will not be as contentious as

16  the SAP litigation was and we can, you know, move forward.

17          I'll note that, you know, you mentioned Mr. Raven's

18  deposition that took so long.  That was other counsel.  When

19  my counsel  -- when my firm joined we settled that dispute.

20  Mr. Raven was presented two weeks ago for two hours before

21  SAP and Oracle's counsel.  He was deposed for, like I said

22  two hours on the issues of -- that the judge ordered in that

23  case.

24          So ultimately it comes down to protecting my client

25  through requesting an efficient schedule and scope of

1  discovery.

2          THE COURT:  All right.  Thank you, counsel.

3          MR. RECKERS:  Thank you.

4          THE COURT:  I appreciate the civility with which

5  you've presented your respective positions and I guess the

6  questions that I were asking you -- or pointing out the --

7  how sometimes courts enter orders that make people at each

8  other's throats trying to give you what you want and trying

9  to get decisions for you, but giving you unrealistically

10 short deadlines that, by necessity, make everybody scramble

11 and cause problems.

12          I'm satisfied that you are working in good faith

13 with one another and that you have the same objectives and

14 rather than enter a discovery plan scheduling order that's

15 written in stone right now, what I propose to do is hold

16 monthly status conferences with you and address the issues as

17 we go along and try to address the issues without the

18 necessity of filing formal motions to compel or motions for

19 protective order and address the -- as -- so I'm going to

20 allow you to do the next 30 days of the foundational

21 discovery that you have in mind to take the Rule 30(b)(6)

22 designee, meet and confer with one another concerning the

23 adequacy of the foundational discovery that's been served and

24 responded to to date.  And then I'll hear from you concerning

25 any disputes that are impeding your ability to move forward

1  to the next level and what you think a reasonable time frame

2  is, and so I'll adjust and give you time as we go along,

3  rather than write something in stone that you can't live with.

4  Okay?

5          And I don't intend to micro manage.  I mean you're

6  excellent lawyers, I'm not going to tell you how to do it and

7  when to do it.  But what I will do is give you a forum for

8  having discussions in having the discovery progress in an

9  orderly manner and resolving your disputes as we go along

10  through a more informal process rather than the necessity of

11  formal briefing.

12          So I do that routinely in complex cases.  It's --

13  generally speaking it works out and it moves you forward and

14  discuss -- causes you to talk to you each other and discuss

15  things as you go along.  And so -- and if you don't need a

16  status conference, if you're working steadily or you don't

17  have any disputes, I'm happy to say I don't need to hear from

18  you.  But if you do need direction from the Court or you need

19  a decision on some issue in which you've genuinely met and

20  conferred and reached an impasse, then I'm here to resolve

21  those as we go.

22          So what I prefer to do is have you prepare a joint

23  status report a couple of days before the status hearing,

24  telling me what you've done, what you propose to do, whether

25  you have any disputes, and if so, your efforts to resolve

1  them.  If you reach an impasse or you haven't, and how that

2  impeding or preventing you from doing something else that

3  you need to do in the case.  So I can hear from you and,

4  frankly, it also requires you to do things between the status

5  conferences to make sure that you are progressing and

6  attempting to meet the schedule and complete the discovery

7  within a reasonable period of time.

8          So 12 months is a lot, 15 months is more.  The case

9  may very well warrant that amount of discovery.  From counsel

10  for defendants standpoint, you haven't heard the specificity,

11  what it is they want to do, and I have no -- right now just

12  entering an arbitrary, you can have 25 depos or you can have

13  X number of hours, doesn't seem to be a reasonable approach.

14  Let me see what you want to do and as each side proposes

15  discovery, if you are unable to resolve it, I'll resolve it

16  for you.

17          Okay.  So, Mr. Miller, why don't you give us a date

18  in approximately 30 days and we'll have a status conference

19  and we'll resolve as we go.

20          THE CLERK:  Your Honor, we'll set this matter for a

21  status conference on Thursday, September the 9th, 2010, at

22  9:30 a.m.

23          Counsel, please file your joint status report no

24  later than Tuesday, September 7th, 2010, by close of business,

25  which is 4:00 p.m. Pacific Time.

1          THE COURT:  And, counsel are all welcome to appear

2    telephonically if you would prefer to do that, to save the

3    cost and fees.  It's not my intention to cause you busy work

4    or to micro manage what you do, but to make sure that you are

5    making progress, that you are working, and that if you have

6    discovery disputes they are resolved, and to the extent

7    that's possible, without the necessity of formal briefing.

8    There are going to be issues that are just routine

9    discretionary calls that you need to state your respective

10   positions in a joint status report.  I'll decide them.  If

11   it's an issue that is unique or requires points and

12   authorities, of course you have the ability to file whatever

13   motions you deem appropriate and points and authorities

14   supporting your positions.  But, the routine discovery

15   disputes about what you get and what you don't and what's a

16   routine scope and so forth, are things that I'm willing to

17   decide on joint status reports and oral arguments and without

18   the necessity of formal briefing.

19          Yes, sir.

20          MR. BURESH:  Your Honor, if I may would it be

21   possible in anyway to perhaps set a back-end goal, like a --

22   not necessarily discovery closes or expert discovery closes,

23   but perhaps even just setting the concept of a summary

24   judgment type setting where the parties should be ready to

25   present summary judgment motions by a date certain.  And what

1  I'm getting at is, as we proceed under this regime -- and I

2  understand where the Court's coming from, but as we proceed

3  under this regime there is really no visibility as to when

4  this process could or should end. Nothing that Rimini Street

5  can take back and say with some certainty, this case should

6  be --

7         THE COURT: You may not get 12 months is what I'm

8  telling you. I'm going to hear from you as we go along. But

9  I appreciate that, but you haven't also told me do you intend

10 to file summary judgments and if so on damages, liability,

11 both, do you need experts or you don't need experts in order

12 to do the summary judgment?

13        MR. BURESH: Well, right. Maybe --

14        THE COURT: I can't give you that off the top of my

15 head, so --

16        MR. BURESH: Perhaps summary judgment is a bad

17 example, but perhaps even a pretrial or trial date. I know

18 the trial date would require interface with the District

19 Judge, but even setting a pretrial hearing conference or

20 something at some date certain that the parties can look to

21 to say, we know at this point that the case should be

22 reaching a termination point by some date certain. Would at

23 least provide some level of planning ability within the

24 business.

25        As it stands now, I understand it may be less than

1  12 months, I understand it may also be significantly more

2  than 12 months depending on how things progress, but there's

3  no ability to plan in the structure that we're discussing.

4         THE COURT:  After I hear from you about the

5  foundation -- this is going to be critical, frankly, from my

6  point of view, is the next status conference in 30 days

7  because by then you will have engaged in the financial -- the

8  foundational discovery that you both want that's necessary to

9  get the case off the ground.  And you're either going to have

10  a good handle on what you need to do by then or you're going

11  to have disputes which will put a bottleneck in the process.

12  And so assuming that you both make good progress and you have

13  the foundational discovery that you need in order to more

14  fully prepare this case for trial, I would prefer to enter a

15  concrete discovery plan and scheduling order at the next

16  scheduling conference.  But I'm not going to enter one

17  without knowing whether or not you have massive problems at

18  the front end of the case that make any schedule

19  unrealistic.

20         MR. BURESH:  Thank you, Your Honor.

21         THE COURT:  I'm not trying to be too general but I'm

22  also trying to give you what my goal or my objectives are

23  here, is to resolve these things that are the bottle -- that

24  are potentially the bottleneck, are you actually moving

25  forward with the case?

1          MR. BURESH:  No, it actually helps me understand

2   your thinking better to understand that we're moving towards

3   a set schedule.

4          THE COURT:  Sure.  I don't want to leave this open-

5   ended and both -- and lawyers need deadlines.

6          MR. BURESH:  Right.

7          THE COURT:  But right now I don't have a handle on

8   it and it sounds like you don't have a handle on what the

9   universe of materials that you're going to need as a

10  preliminary matter in order to go forward.  And once you know

11  that and you should know that within the next 30 days because

12  that's my charge to you, is do the best you can do as much as

13  you can to conduct and come to a conclusion with respect to

14  the foundational discovery issues, then I can give you more

15  guidance and give you a plan.

16         MR. BURESH:  Yeah.  My understanding from the

17  earlier discussion was that we were going to be rolling along

18  month by month, but your last comments explain that we're

19  moving towards a place where you'll enter a schedule.  That

20  makes perfect sense to me.

21         Thank you.

22         THE COURT:  Okay.  All right.

23         All right, Mr. Miller, we've got a status hearing

24  date and status report date and I just ask, counsel, make

25  sure you confer in advance so that you can submit a joint

```
 1   status report and neither side is sandbagged by what the

 2   other side wants included in the status report.  Okay.

 3          So, again, we'll see you back in 30 days and we'll

 4   go from there.  And you may appear telephonically and we'll

 5   give you the instructions for a central calling number if

 6   that's what you prefer to do.

 7          MR. NORTON:  Thank you, Your Honor.

 8          THE COURT:  Thank you.  Good day.

 9          MR. HIXSON:  Thank you, Your Honor.

10          THE CLERK:  All rise.

11          PROCEEDINGS CONCLUDED AT 10:07:56 A.M.

12                * * * * * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**CERTIFICATION**

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**P.O. BOX 890**
**NAMPA, IDAHO 83653-0890**
**(208) 908-7998**
**gayle@nwtranscripts.com**

/s/ Gayle Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kay McCrea                                          9/6/10
TRANSCRIBER                                         DATE