BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
BREE HANN (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corp.

SHOOK, HARDY & BACON LLP
B. Trent Webb (*pro hac vice*)
Eric Buresh (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, Texas   77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos (Nevada Bar No. 1086)
Brandon Roos (Nevada Bar No. 7888)
Leslie Godfrey (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

Attorneys for Defendants Rimini Street, Inc.,
and Seth Ravin

JOINT CASE MANAGEMENT STATEMENT

1

2

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

3
4
5

ORACLE USA, Inc., a Colorado corporation;
ORACLE AMERICA, INC., a Delaware
corporation; and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

6

Plaintiffs,

v.

7
8

RIMINI STREET, INC., a Nevada corporation;
and SETH RAVIN, an individual,

Defendants.

9

Case No. 2:10-cv-0106-LRH-PAL

**JOINT CASE MANAGEMENT
STATEMENT**

DATE:          March 29, 2011
TIME:          10:00 a.m.
PLACE:        Courtroom 3B
JUDGE:       Magistrate Peggy A. Leen

10

11    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

12 (collectively, "Oracle" or "Plaintiffs") and Defendants Rimini Street, Inc. ("Rimini Street") and

13 Seth Ravin ("Ravin") (together, "Rimini" or "Defendants") jointly submit this Case Management

14 Conference Statement in advance of the March 29, 2011 Case Management Conference

15 ("CMC") to provide the Court with a status report of the pending matters.

16    After a joint statement regarding the current status of the pleadings (Part I) and discovery

17 (Part II), the parties present in Part III their respective positions regarding Oracle's request for an

18 extension of the current discovery schedule and deposition limits, which Rimini opposes.

19 **I.       STATE OF THE PLEADINGS**

20    Both parties have answered the claims that have not been dismissed.

21    Through discovery in this case, Oracle has obtained evidence that Defendants have

22 downloaded and made copies of multiple versions of Oracle's Relational Database Management

23 System software.  As Oracle believes this evidence supports allegations of (at least) copyright

24 infringement, computer fraud, breach of contract, and inducement of breach of contract, it

25 intends to amend its Complaint to add allegations relating to this conduct.  Oracle has provided

26 the proposed Second Amended Complaint to Rimini for review prior to filing, and based on that

27 review Rimini will consider stipulating to the amendment.  The Court's current Discovery Plan

28

1

331252 v1

1  and Scheduling Order sets June 1, 2011, as the last date to amend the pleadings.  9/21/2010

2  Order, Dkt. 109, at 5.

3  **II.      DISCOVERY PROGRESS**

4       Since the last scheduled Case Management Conference of January 25, 2011, the parties

5  have made the following progress in discovery:

6       **A.      Discovery From and Produced By Plaintiffs.**

7       **Documents**.  Rimini Street has served three sets of Requests for Production, with a total

8  of 105 separate requests. Since the January 25, 2011 CMC, Rimini has served its third set of

9  Requests for Production, which includes nine separate requests.  The negotiations between the

10  Parties concerning search terms, discussed in the last Joint Case Management Statement, were

11  not completed until February 9.  Between January 25 and the submission of this statement,

12  Oracle has produced more than 22,700 pages of documents, including software development

13  documentation; Oracle partner documentation; deposition transcripts and exhibits from the

14  Oracle-SAP litigation; and, documents from 12 Oracle custodians.  Oracle continues to review

15  documents of the agreed production custodians (including server emails, laptop/desktop images,

16  and documents from network share files), as well as additional customer contracts and related

17  documents.

18       Additionally, at Rimini's request, Oracle has agreed to prioritize the production of five

19  custodians' documents.  At the time of this submission, production of two of these priority

20  custodians is complete, and Oracle expects to complete the production of the other three priority

21  custodians by April 1, 2011.  Oracle expects to make significant rolling productions of the other

22  non-priority custodial documents on an ongoing basis.

23       **Interrogatories**.  Oracle has responded to Rimini's first set of Interrogatories, numbered

24  1 through 12.  On March 4, 2011, Rimini served a second set of Interrogatories, numbered 13

25  and 14.  The parties have agreed that Oracle shall respond to the second set of Interrogatories by

26  April 15.  Oracle expects that it may further supplement its response to Interrogatory No. 3 at the

27  same time it responds to the second set of Interrogatories.

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    **Depositions**.  Rimini has noticed five depositions of Oracle witnesses, including one

2    30(b)(6) deposition, for dates in April and May.  Further depositions by Defendants must await

3    the completion of custodian productions.   Rimini has not yet taken any depositions.

4         **B.       Discovery Sought From and Produced By Defendants.**

5         **Documents**.  Oracle has served three sets of Requests for Production on Defendant

6    Rimini, with a total of 57 separate requests, and one set of Requests for Production on Defendant

7    Ravin, with a single request.  Since the January 25 CMC, Oracle has served its third set of

8    Requests for Production on Rimini Street, with a total of seven separate requests.  Oracle has not

9    served any additional Requests for Production on Defendant Ravin since January 25.

10        To date, Defendants have produced approximately 95,000 documents totaling nearly 1.5

11   million Bates-numbered pages.  In addition, Defendants have produced 2,750 files in native

12   format.  Defendants plan to make up to two additional productions in the next few weeks, which

13   will likely bring Rimini's total production to over two million pages by early April.  Documents

14   produced include client contracts, correspondence and emails between Rimini Street and its

15   clients, documents regarding policies and procedures related to Rimini Street's business

16   activities, documents related to investments in Rimini Street, documents related to maintenance

17   end dates and download authorizations, documents related to onboarding, documents related to

18   extraction tools, and documents related to customized fixes and tax and regulatory updates.

19        **Data**.  The parties continue to make progress in negotiating and obtaining the production

20   of several types of Rimini data.

21        Below is a description of the data that Rimini has produced thus far:

22        1.       Rimini Street maintains an FTP server that contains Oracle software and support

23   materials, including fixes and updates generated from Oracle software by Rimini Street.  Rimini

24   Street permits its customers to download these materials from the FTP server.  On December 23,

25   2010, Rimini Street produced a copy of its FTP server, containing 19,127 directories and 225

26   gigabytes of data.

27

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    2.    Rimini Street's <u>environments</u> consist of locally installed versions of Oracle

2  software, most of which are labeled with specific customer names.  In many cases, Rimini Street

3  modifies these environments as part of its business process.  Oracle's position is that Oracle

4  requested production of all environments in October 2010, but agreed to prioritize a subset of

5  environments for initial production.  On December 14, 2010, Oracle requested the environments

6  associated with 12 customers, and Rimini Street made its first production of environments on

7  February 11, 2011, which included 51 environments totaling 2.5 terabytes.  On February 7,

8  Oracle requested the environments associated with seven more customers.  On March 2, Rimini

9  produced the 21 environments associated with those customers, an additional 1.3 terabytes of

10  data.

11    3.    <u>DevTrack</u> is a software program with which Rimini Street manages the creation

12  of certain fixes and updates, including those that Rimini Street generates from locally maintained

13  copies of Oracle software and then delivers to its customers.  DevTrack includes records for

14  nearly 2,000 fixes and updates.  Each record contains some workflow information and often

15  includes attachments, such as functional and technical specifications, testing documents, and

16  other information.  Defendants have not produced DevTrack, instead permitting only read-only

17  access through a Virtual Private Network (VPN) that allows Oracle to view the available data

18  without modifying it.  To perform off-line analysis, Oracle must individually print every screen

19  and save every attachment of interest.  Rimini Street provided one login credential for VPN

20  access on December 10, 2010, and provided one additional login credential on March 11, 2011.

21  These two credentials can be used in the alternative to access the customer archives discussed

22  below, but only one person can use each of them at a time.  On February 25, 2011, Rimini Street

23  agreed to re-designate most attachments and some additional information contained within each

24  DevTrack record as Confidential; the remainder retains a Highly Confidential designation, which

25  means Oracle cannot share that information with the Oracle technical employees assisting with

26  the litigation.

27

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    4.    <u>WSS logs</u> track Rimini Street engineers' access to certain Oracle software and

2    support materials, including changes to environments.  Rimini Street produced data exported

3    from the WSS logs on November 19, 2010.  After Oracle's initial analysis showed that the set of

4    exported data was incomplete, Rimini Street agreed to produce the full logs in native format.

5    Rimini Street produced the native WSS logs on January 26, 2011.

6    5.    Rimini Street's <u>IT ticketing requests</u> track certain Rimini Street employees'

7    access to Oracle's password-protected customer support websites.  Rimini Street produced Excel

8    files of its IT ticketing system on November 17, 2010.

9    6.    Rimini Street's <u>archives</u> contain Oracle software and support materials as well as

10   Rimini Street-created log files and other data.  The archives comprise over 22 terabytes of data.

11   Rimini Street has provided read-only VPN access to the archives and has produced some

12   metadata associated with the archives, but has not produced any actual archives.  Rimini Street

13   provided Oracle with one login credential for VPN access on December 10, 2010 and provided

14   four additional login credentials on March 11, 2011.  Two of these credentials can be used in the

15   alternative to access DevTrack, described above.

16   7.    Rimini Street's <u>HRMS Development Share</u> is a location on Rimini Street's

17   network where Rimini Street stores updates for PeopleSoft software before distributing them to

18   customers.  Oracle first requested production of the contents of this folder on February 10, 2011.

19   Rimini Street has thus far produced the files corresponding to the six software fixes that were the

20   subject of Oracle's February 8, 2011, Third Notice of Deposition Pursuant to Fed. R. Civ. P.

21   30(b)(6).  Rimini expects to produce the remaining material Oracle has requested from the

22   HRMS Development Share in April.

23   **Interrogatories.**  Plaintiffs have served three sets of Interrogatories, consisting of 18

24   separate interrogatories, to which Defendants have responded.

25   **Depositions.**  Plaintiffs have taken two depositions of Defendants since the last

26   scheduled Case Management Conference.  On March 15, 2011, Oracle deposed Rimini Street

27   employee J.R. Corpuz, who coordinates the "onboarding" process for new Rimini Street clients

28

5

1    that use PeopleSoft.  On March 17, 2011, Oracle completed a Rule 30(b)(6) deposition of Rimini

2    Street employee Beth Lester concerning Rimini Street's development and delivery of six specific

3    PeopleSoft fixes and on the topic of certain "development environments" used by Rimini Street

4    to support various customers.  Plaintiffs have noticed three more depositions of Rimini Street

5    employees for April and early May.  Further depositions by Plaintiffs must await the completion

6    of custodian productions and the production of additional data as described above.

7        **C.**      **Third Party Discovery**

8              **1. Customers**

9        Since January 25, Oracle has served subpoenas on approximately 87 of Rimini Street's

10    customers (including subpoenas Oracle anticipates will have been served by March 25).  Oracle

11    has received approximately 62 document productions in response to these and prior-served

12    subpoenas.  Oracle's effort to process, review, and produce these productions to Rimini Street is

13    ongoing.

14        The subpoenas served since January 25 seek the same information as the customer

15    subpoenas served prior to January 25: documents concerning several subjects related to Oracle's

16    claims, such as how Rimini Street provides software and support materials to that customer,

17    whether Rimini Street uses unauthorized crawlers or scrapers to obtain Oracle software for that

18    customer, agreements between the customer and Rimini Street that Rimini Street contends in its

19    answer authorize some or all of its conduct, customer login credentials that Rimini Street used to

20    access Oracle's computer systems, and whether the customer provided Rimini Street with Oracle

21    source code or installation media.  Together with the subpoena, Oracle has served each customer

22    with a copy of the protective order in this action, in the event that the customer believes

23    responsive documents may be confidential.

24              **2. Public Entities**

25        As of January 21, Oracle had made state "sunshine act" requests of forty-five public

26    entities that may have had significant contact with Rimini Street.  Forty of these entities have

27    responded with substantive productions or statements that they had no responsive documents.

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    Since January 21, Oracle has served subpoenas on the five non-responsive entities and issued a

2    sunshine act request to one additional entity.

3         As explained in the last CMC statement, Oracle and Rimini Street have agreed that the

4    protective order will govern sunshine act productions.  The parties' review of the sunshine act

5    materials is ongoing.

6                        **3.  Rimini Street Investors**

7         Oracle continues to negotiate with Adams Street Partners concerning the objections to

8    Oracle's subpoena that Adams Street Partners served on June 25, 2010.  Since November 30, the

9    parties have met and conferred and reached general agreement on the terms of a production,

10   which is expected shortly.

11                       4.  **Other Third Parties**

12        Since January 25, Oracle has served subpoenas on Rimini Street competitors Spinnaker

13   Support, CedarCrestone, and netCustomer.  Rimini Street served subpoenas on these companies

14   soon after Oracle did.  Oracle has to date received no response from netCustomer and is

15   negotiating with Spinnaker Support and CedarCrestone with respect to their objections.

16        No other third party discovery has been conducted to date.

17   **III.    The Discovery Schedule and Limits**

18        **A.    Oracle's Position**

19        While the parties have been working diligently and cooperatively, Oracle has concluded

20   that the current schedule and deposition limits are insufficient to complete necessary discovery

21   and prepare expert reports.  For four reasons, Oracle requests an extension of the case schedule

22   and the current deposition limits:

23        - First, the parties' efforts to stage discovery – undertaken to achieve efficiency and
          reduce burdens – have largely been successful, but have slowed the process.  As a
24        result, Rimini Street has yet to produce important, voluminous categories of
          technical data and custodian documents.

25        - Second, the volume and related necessary analysis eclipse what Oracle expected.
26        Separate analysis is required for each of at least three separate aspects of Rimini
          Street's conduct:  downloading of Oracle material; creating and copying of
27        operating installations of Oracle software (called environments); and distribution
          to customers of changes to Oracle software (called fixes or updates).  Each
28        involves different voluminous data, different personnel, and different business

7

331252 v1

documents.

- Third, Oracle's experts require time to help guide this fact discovery process but also to analyze the mounting volumes of data produced by Rimini Street.

- Fourth, the additional time and depositions will not unduly prejudice Rimini but the current schedule and limits will prejudice Oracle. The scope of Rimini's infringement directly relates to Oracle's damages. On the current schedule, Rimini would depress damages and keep the full scope of its actual conduct from coming to light for no reason other than Rimini chose to make as many copies it did and to keep its records in the condition it did. (As explained below, for example, Rimini has a policy of altering certain code files to remove the automatically generated reference in them to the software used to create the file. These tactics complicate Oracle's investigation).

Below, Oracle explains these obstacles that it faces with reference to the illustrative categories of Rimini Street's conduct (the fix analysis and Rimini Street's downloading activities). Oracle then maps out the depositions that it currently expects to need, with the caveat that Rimini has produced only a fraction of its custodian documents and so these projections may change over time. Although these proposed depositions exceed the limits previously ordered by the Court, they represent a small percentage of the available percipient party-witnesses population. Even without these additional depositions, Oracle would still need the additional time it seeks just to receive and analyze the Rimini data. In support of this point, Oracle submits as **Exhibit A** a declaration from one of Oracle's experts, Christian Hicks of Elysium Digital, L.L.C.

To be clear, Oracle does not expect, or seek, discovery on every environment, every fix, or from every developer at Rimini who likely acted improperly. As explained below, however, even to develop statistical evidence of Rimini's conduct based on populations samples, Oracle needs the time and tools to investigate Rimini's downloading and fix development across multiple product lines, over multiple years, and still leave room for crucial third party and non-technical discovery.

There is no dispute that Rimini's business model is based on copying terabytes of Oracle's copyrighted intellectual property. Indeed, in its answer to the operative complaint, Rimini freely admits copying "potentially tens of thousands of files for a single customer." Answer ¶ 26. The fundamental dispute between the parties is not whether massive copying has

8

331252 v1

1  occurred, but rather, whether Rimini's admitted copying is lawful.  Rimini should not be

2  permitted to avoid an adjudication on the merits by arguing, in effect, that Rimini has taken so

3  much Oracle intellectual property that there is insufficient time to complete an analysis of the

4  propriety of Rimini's copying and use of Oracle's intellectual property.

5          **1.  Oracle's Copyrighted Software and Rimini Street's Practices**

6       To understand the complexity involved and the discussion that follows, Oracle submits

7  this summary of the underlying issues.

8       Oracle alleges that Defendants have infringed 105 of its registered copyrights.  First

9  Amended Complaint, Dkt. 36, ¶ 74.  These copyrights relate to three different product lines of

10  Oracle's enterprise software applications: PeopleSoft, J.D. Edwards and Siebel.[1]  Each product

11  line contains several different versions of multiple, separately licensed products.  For example,

12  PeopleSoft includes PeopleSoft human resources software (HRMS), financials, and other

13  products, each of which has multiple versions over time (*e.g.*, 7.0, 7.5, 8.0, etc.)  An installation

14  of any version of any of these product lines creates an "environment."

15       Enterprise software applications are complicated systems that run enterprise-level

16  business tasks.  An example of these tasks would be the human resources module for a global

17  company with tens of thousands of employees.  The payroll function alone requires the accurate

18  processing of tax withholding, family and medical leave, vacation accruals and any number of

19  other modifications and deductions in compliance with the laws and regulations of hundreds of

20  local, state, and national jurisdictions.  Each such module – human resources, financials,

21  customer relationship management, etc. – involves thousands of "objects."  These objects are

22  computer programs, files, and database tables containing code, scripts, metadata, or data that are

23  all essential for the software properly to function.

24       Rimini Street regularly reproduces, modifies, and distributes copies of Oracle's

25  copyrighted software.  For just the PeopleSoft product line, upon which Oracle's limited

26

27  [1] As discussed above, Oracle seeks to amend the complaint to add registrations for a fourth
product line, Oracle Database.

28

9

1   discovery to date has focused, Rimini Street does this in a number of ways: by downloading

2   Oracle's install media or copies of objects that Oracle created (software and support materials);

3   by modifying the objects that Oracle created and distributing files that contain the modified

4   objects to customers; and by creating files that will modify the source code, metadata, or data in

5   a PeopleSoft database, distributing those files to customers, and applying those files to the local

6   PeopleSoft environments on its servers.  Rimini Street refers to these files that contain objects

7   and modify local environments as "fixes" or "updates."

8          As a result of Rimini's extensive use of Oracle software, copies of Oracle's copyrighted

9   PeopleSoft, J.D. Edwards, and Siebel software and support materials, and of the media used to

10   install that software, are found throughout Rimini Street's computer systems.  Because Rimini

11   Street has denied that it has infringed Oracle's copyrighted software, Oracle must discover,

12   catalog, and evaluate the copies that it finds.  As Rimini Street has asserted a license defense,

13   discovery may also include analysis of whether Rimini Street's copying and use of this Oracle

14   software are covered by the licenses between Oracle and its customers on which Rimini Street

15   relies.

16          **2.  Oracle's Diligent Conduct of Discovery, Information Yet to Be Produced,**

17          **and Analysis to Be Performed**

18          As described above, the parties have worked cooperatively to facilitate the production of

19   many types of information, both custodial (*i.e.*, from the files of individual employees) and non-

20   custodial (*i.e.*, from large centralized databases and other sources), without requiring any

21   intervention from the Court.  Many of the negotiated resolutions of discovery issues have

22   reduced the burden on Rimini Street but have also lengthened the time required to produce

23   important information.  In several instances, for example, instead of producing all of a certain

24   type of data requested, Rimini Street has provided preliminary or summary information to

25   Oracle, which Oracle has analyzed and used to make more targeted discovery requests for

26   production.  As a result, Rimini Street has yet to produce important data.  By Rimini's own

27   estimation in its separate section below, it has produced over 2 million pages of documents for

28

JOINT CASE MANAGEMENT STATEMENT

1   just one completed custodian and a handful of incomplete ones.  That illustrates the coming

2   volume and also undermines the notion that Oracle could effectively analyze all of those future

3   productions, and all of the other technical data, in what would then be the three remaining

4   months of discovery (if Rimini keeps to the schedule it advertises below).  Indeed, Once Rimini

5   Street produces the data, the expert analysis – including depositions necessary for understanding

6   the data – will take substantially more discovery and time than the current schedule permits.  We

7   discuss below four examples by describing an issue, the data relevant to that issue that remains

8   for Rimini Street to produce, and the analyses that technical experts will have to perform with

9   the produced data.  We also refer the Court generally to the Hicks Declaration, attached as

10  **Exhibit A** to this Statement.

11          Rimini's attacks on Oracle's diligence in seeking information from Rimini lack merit.

12  Oracle propounded document requests at the earliest possible date – April 29, 2010, nearly 13

13  months ago – and every single document and data set that Rimini says it has yet to produce is

14  responsive to those requests.  Rimini does not contend otherwise.  Yet Rimini's argument below

15  implies that despite these requests, it need not produce any data set unless Oracle specifically

16  identifies it and asks for it.  That is wrong.  Rimini must identify and produce relevant and

17  responsive data sets without such specific requests.  As shown below, to speed discovery, Oracle

18  has asked Rimini to prioritize the production of certain data sets and documents, but has never

19  withdrawn its broader requests.  Repeatedly, as shown below, in the course of discovery Oracle

20  has identified additional, important unproduced and even unidentified data, and promptly

21  requested their prioritization as soon as Oracle learned of it.

22                  a.  **Rimini Street's Distribution of Fixes and Updates**

23          As discussed above, Rimini Street distributes software fixes and updates.  All of these

24  fixes and updates, when applied to a local environment, modify that environment in significant

25  ways, most frequently as "tax and regulatory updates," which adjust the software so that it

26  performs its functions in compliance with ever-changing tax rules and regulations from local,

27  state, and federal authorities.  The most significant portion of Rimini Street's business is its

28

11

JOINT CASE MANAGEMENT STATEMENT

1    distribution of tax and regulatory updates for Oracle's PeopleSoft-branded human resources

2    software.  All or virtually all of these fixes and updates contain copies of modified versions of

3    objects from Oracle's copyrighted software, contain files created through the use of Oracle's

4    copyrighted software, or both.  Rimini Street has created and delivered over 1,000 fixes and

5    updates to its customers, each consisting of one or more versions of between approximately 1

6    and 30 objects modified from original Oracle code or generated using Oracle software.  It is

7    reasonable to expect there may be approximately 20,000 such objects to analyze just for Rimini

8    Street's PeopleSoft updates.

9         Rimini Street has claimed that it independently develops software updates for Oracle

10   software, separately for each of its customers, without using any Oracle material obtained on

11   behalf of other customers.  As noted above, on March 17, 2011, Oracle deposed Rimini Street

12   pursuant to Fed. R. Civ. P. 30(b)(6) relating to six specified PeopleSoft tax and regulatory

13   updates distributed by Rimini Street.  That is, a seven-hour deposition covered only six of the

14   more than 1,000 updates Rimini Street has distributed, *i.e.*, less than 1% of the updates.  As

15   Rimini Street's testifying executive, Ms. Beth Lester, made clear, in actuality, Rimini Street

16   copies software from one client to another in the process of distributing Rimini Street-branded

17   software updates.  Rimini Street claims that the terms of each customer's separate license

18   agreement with Oracle permit such copying.  Rimini Street's practices and its assertion of a

19   license defense therefore require Oracle to discover and examine the actual sources of the

20   thousands of objects that Rimini Street distributes on a file-by-file basis, including which

21   customer's Oracle software was used and copied in the process of creating updates and fixes for

22   distribution.  Oracle contends that this analysis will show that Rimini Street co-mingles its

23   customers' software, engaging in "cross-use" of one customer's software to benefit another

24   customer, which is not covered by any applicable license.

25        At her deposition, Ms. Lester also made clear that Oracle will have to examine numerous

26   data sources, carefully review individual files of computer code, and perform complex technical

27   analysis because "you cannot look at a tiny piece of the puzzle.  You have to put it all together."

28

331252 v1

1  Deposition of Beth Lester Pursuant to Fed. R. Civ. P. 30(b)(6) ("Lester 30(b)(6)"), March 17,

2  2011, at 138:14-16.  As described below, Rimini Street has not yet produced many of the puzzle

3  pieces, and once they are produced, substantial time and deposition questioning will be necessary

4  to put them together and prepare evidence for trial.

5                              i.  **Data Not Yet Produced**

6          Rimini Street's HRMS Development network share contains files relating to development

7  and distribution of tax and regulatory updates, and was first called for by Oracle's April 29, 2010

8  document requests.  On February 10, 2011, after learning about the existence of the HRMS

9  Development share from review of other documents produced by Rimini, Oracle requested that

10  Rimini prioritize its production.  Rimini initially opposed producing this material, producing

11  only the material for the six fixes subject to Oracle's Rule 30(b)(6) notice.  On March 25, Rimini

12  informed Oracle that it would produce the remainder of this material in April.

13          During the March 17 Rule 30(b)(6) deposition, Ms. Lester identified two additional stores

14  of data that, she said, would need to be consulted to understand what Oracle software was used

15  to create fixes and updates, and which customers received those fixes and updates.  Oracle

16  requested priority production of these additional data sources – known as HRMS Functional and

17  HRMS Delivered – immediately after the deposition.  Rimini has not yet confirmed it will

18  produce these items.  Presumably, it will take some amount of time to do so, and then further

19  time to analyze them and depose witnesses about them.

20                              ii.  **Analysis Required After Data Is Produced**

21          Even with all the update-related data in hand, the work necessary to comprehend it and

22  prepare to prove Rimini Street's cross-use of software among customers is complex and time-

23  consuming.

24          For example, analyzing the separate data in the HRMS Delivered file share is necessary

25  to determine which customers ultimately received what files.  Lester 30(b)(6) at 150:9-152:9.  As

26  Oracle's expert explains, experts must perform multiple types of comparisons between similar

27  data systematically to detect the extent of Rimini Street's copying.  *See* Hicks Decl. ¶¶ 17-22.

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1       As another example, Rimini Street generates numerous documents in the process of

2   preparing and delivering each of its more than 1,000 fixes and updates.[2]  According to Ms.

3   Lester, these documents are spread across various sources on Rimini Street's systems, such that

4   for each update or fix, there may be multiple (technical) documents in the DevTrack system, the

5   HRMS Development file share, and the HRMS Functional file share, all of which must be

6   examined to show which Oracle software was used in the process of distributing that one file.

7   Lester 30(b)(6) at 150:9-152:9.  DevTrack alone may contain more than a dozen relevant pieces

8   of documentation per update delivered by Rimini Street to its customers.  *See, e.g.*, Lester

9   30(b)(6), Ex. 90, at ORCLRSDT000006 to ORCLRSDT000007 (DevTrack record where Notes

10   and Events areas together reflect 16 pieces of attached documentation; attached as **Exhibit B**).

11   An example of just one such document is attached as **Exhibit B** to this statement.

12       Moreover, to understand and reconcile these various data sources for even a subset of

13   objects, Oracle will need to depose some of the developers, testers, and delivery personnel who

14   helped generate those fixes because each of these activities appears to involve, in different ways,

15   the use of one customer's software to support multiple other customers.  In the event that Rimini

16   Street claims (as it has) that its development processes have changed over time, Oracle will need

17   to depose testers, developers and packagers whose experience spans those changes.  Corporate

18   testimony may not be a viable substitute: in the recent Rule 30(b)(6) deposition, Ms. Lester had

19   reviewed voluminous data regarding the six specific fixes that were the subject of the deposition,

20   but still could not fully answer questions about what Oracle software Rimini Street used to

21   generate the various objects in those six fixes and deferred to the actual individuals involved.

22   *See, e.g.*, Lester 30(b)(6) at 13:4-14:14; *id.* at 206:1-207:9.

23       Analyzing all the documents for each of tens of thousands of objects, and conducting the

24   necessary depositions on each of them, may in fact be an impossible task, even if Rimini Street's

25   record-keeping were perfect and consistent.  (Were Oracle to elect to analyze certain data for

26

---

27   [2] Further, other copies of fixes and updates may be stored on Rimini employees' computers.
   Hicks Decl. ¶ 36.

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    only a statistical sample for purposes of obtaining information about the overall population of

2    copies made and distributed by Rimini Street, this approach would ultimately be more expedient,

3    but would also take several additional months to complete.)  In fact, this object analysis will be

4    even more complex because Rimini Street's record-keeping is not consistent.  Rimini Street took

5    affirmative steps to systematically delete data that would have shown which customer's Oracle

6    software was used to create the updates that Rimini Street distributes.  Oracle has already

7    identified at least 5,000 separate files for which Rimini Street deleted evidence that would show

8    which specific Oracle software was used to create it.   Hicks Decl. ¶ 38.

9                              **b.  Rimini Street's Mass Downloading**

10          A second set of issues in this litigation involves Rimini Street's downloading of Oracle

11   software and support materials from Oracle's password-protected websites, including the use of

12   automated programs to engage in mass downloading.  Oracle contends, and the discovery to date

13   shows, that Rimini Street copied Oracle software and support materials by downloading material

14   from Oracle without permission and by using methods prohibited by the Oracle websites' terms

15   of use.  Discovery on these claims requires identification of which Oracle files Rimini

16   downloaded, how, for what purpose, and using which customer's credentials.

17                              i.  **Data Not Yet Produced**

18          Rimini Street's client archives contain Oracle software and support materials that Rimini

19   Street has copied, ostensibly on behalf of its customers.  These materials relate to Oracle's

20   claims that Rimini Street downloaded materials it had no right to have.  The archives include

21   over 22 terabytes of data, allocated among 200 Rimini customers – more than twice the entire

22   written contents of the Library of Congress.

23          These archives are responsive to document requests served on April 29, 2010, and

24   Oracle asked Rimini Street to prioritize their production on October 5, 2010.  After several

25   months of negotiations, production of related data, and review, Rimini Street has yet to produce a

26   single customer's archive.  Instead, it initially proposed to provide only restricted online access

27   to certain locations on its system using a Virtual Private Network ("VPN").  Oracle agreed, but

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1   reserved its rights to make targeted requests for production of the actual underlying data,

2   recognizing that read-only VPN access permits a very limited range of analysis.[3]  On December

3   21, 2010, Rimini made available a single VPN log-in credential that could be used by one person

4   at a time to access the archives.  (Oracle later requested eight additional VPN log-ins to allow

5   access to more than one person at a time, and Rimini agreed to provide four.)

6          After identifying a number of technical issues and limitations of VPN access, Oracle

7   requested on January 27, 2011 that Rimini Street use a standard, open-source software tool

8   (Karen's Directory Printer) to provide certain metadata about the archives, essentially

9   comprising an index of the files:  the names of all the files, sizes, how they are organized,

10  associated dates, and MD5 hash codes (which provide unique identifiers for different files and

11  identify duplicate files).  This index would enable Oracle to identify specific material and issue

12  targeted requests for production.  Rimini Street reported that it required *four weeks* of computer

13  processing time to create the index, and produced it on February 23, 2011.  Oracle is analyzing

14  the metadata index and creating requests for an initial production of client archives, expected in

15  early April.

16                              ii.  **Analysis Required After Data Is Produced**

17         After Rimini produces the necessary data from its archives, Oracle will analyze this data

18  to identify what materials Rimini copied, when, and using what customer credentials, which will

19  require depositions of knowledgeable individuals to understand the data produced, followed by

20  further expert analysis.  Among the tasks, Oracle will compare the files to Oracle's own data

21  sources, including log files with billions of entries containing legitimate access and downloading

22  activity by Oracle's customers.  Oracle will also compare the downloaded material to Oracle's

23  registered works to identify specific files downloaded.  Even with the aid of powerful computers

24  and customized scripts, the sheer size of the archives, more than 22 terabytes, means that this

25

26  _____

27  [3] For example, with read-only VPN access, Oracle's experts cannot create copies of any of the files
    within these archives that are necessary to identify similar files among different customers.
    Hicks Decl. ¶ 31.

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    analysis will take considerable time, more than is possible on the current schedule.  Hicks Decl.

2    ¶¶ 5-6.

3         Oracle also must analyze Rimini Street's automated mass downloading programs.

4    Rimini produced certain of the source code on January 26, 2011, and Oracle will need to depose

5    knowledgeable individuals to explain it, followed by expert analysis.  Oracle's preliminary

6    analysis shows that Rimini Street has used various automated tools over time, each of which will

7    require separate analysis.  Further, Oracle will likely need to take separate depositions focused

8    on different Oracle products.  For example, in his recent deposition, J.R. Corpuz, whose job

9    includes downloading Oracle software for Rimini Street's PeopleSoft clients, claimed to have

10   little knowledge of downloads performed for Siebel or J.D. Edwards clients.  Deposition of J.R.

11   Corpuz, March 15, 2011, at 22:23-23:11.

12                        c.  **Rimini Street's Local Environments**

13                            i.  **Data Not Yet Produced**

14        Rimini Street's copies of Oracle software in the form of environments present a third set

15   of issues.  As noted above, environments are installed copies of Oracle software at issue in this

16   litigation. Rimini Street maintains more than 200 complete copies of such environments, greater

17   than 10 terabytes in size.  The parties dispute whether Rimini Street may have any of these

18   environments on its systems.  Oracle also contends that Rimini Street improperly used

19   environments supposedly maintained for certain customers to provide services to other

20   customers.

21        As with the client archives, Rimini Street's client environments are responsive to

22   document requests served by Oracle 11 months ago, on April 29, 2010.  After a series of

23   negotiations, Rimini Street produced a first set of environments (51 environments associated

24   with twelve customers), totaling 2.5 terabytes, on February 11 and a second set of 21

25   environments associated with seven additional customers on March 3.[4]  In total, in just under a

26   year, Oracle has obtained environments for 19 customers, less than 10% of Rimini's customers.

27   _____

28   [4] Specifically, on October 5, 2010, Oracle specifically offered to prioritize an initial subset for
     production if it would enable Rimini Street to make a production more quickly.  Rimini Street

                                        17
     _____
                    JOINT CASE MANAGEMENT STATEMENT

331252 v1

ii.  **Analysis Required After Data Is Produced**

Oracle has begun its preliminary analysis of the produced environments, including cataloging the contents of the produced environments and analyzing how and when Rimini has created or modified each environment.  Oracle also must compare thousands of fixes and updates installed in the environments to thousands of fixes and updates developed purportedly on behalf of other customers to prove its claim that Rimini shared software among customers.  As Oracle's expert explains, analyzing files that are similar but not precisely identical requires time-consuming techniques such as mathematically calculating the degree of similarity between two files or creating visual comparisons between two files.  Hicks Decl. ¶ 21.   A third form of analysis is required for information stored in the various databases that the environments also include.  *Id.* at ¶ 22.  The size and complexity of this data means that analysis will take longer than the current discovery period permits.  *Id.* at ¶ 41.

d.  **Rimini Street's "Internal Software" Network**

Rimini Street's "internal software" directory is a location on Rimini's network where Oracle believes Rimini has stored copies of Oracle software that Rimini has not copied on behalf of any particular Rimini Street customer, but rather for its general internal use – despite Rimini Street's claim that it does not co-mingle software obtained from, or on behalf of, its different customers.  Oracle requested production of this directory on March 16, 2011, shortly after Mr. Corpuz testified about the folder during his deposition.  Based on this testimony, Oracle believes that Rimini has deleted information from this location.  Oracle anticipates conducting a forensic investigation to uncover the extent to which Rimini Street copied Oracle software and other materials to and from this location in contravention of its stated policies.  The exact nature and

---

declined to produce all environments on burden grounds, and on October 28 proposed to produce a "reasonable" subset of the environments.  Oracle agreed to this proposal on November 8, but also requested certain basic information about the environments, such as the size of each, to inform its requests for production.  On December 14, still awaiting Rimini Street's production of a *list* of environments, Oracle requested production of the environments associated with 12 Rimini Street clients.  On December 21, Rimini Street responded that five of the 12 customers had no environments associated with them and produced the list of all client environments.  Oracle then proposed five replacement customers on January 3, 2011.

1    scope of the forensic investigation remains uncertain pending production of the folder, but will

2    likely take substantial time.

3                    **3.  Oracle Has Diligently Produced Its Own Data**

4            Rimini also attacks Oracle for delaying its production.  This is a red herring for two

5    reasons, and wrong besides.

6            First, Rimini compares the size of its production to Oracle's.  As the infringer -- the party

7    with admittedly now millions of Oracle's files on its systems -- it should come as no surprise that

8    Rimini has more to produce.  Oracle is alleged to have done nothing wrong (other than allegedly

9    making a defamatory statement) and comparatively has much less to produce.

10           Second, Oracle's production has no bearing whatsoever on the question of whether the

11   current schedule permits adequate discovery from Rimini.  Notably, Rimini disclaims any

12   prejudice, admitting in footnote 10 that Oracle's production of its documents and data is fully

13   consistent with the existing schedule (and seeks no relief for the allegedly dilatory tactics).

14           Third, Rimini is just wrong.  Oracle is one of the world's largest companies, and in this

15   action is producing documents from custodians literally around the globe from a vast array of

16   technical systems.  For example, contrary to Rimini's allegation, Oracle has produced the vast

17   majority of its licenses, totaling thousands of pages.  What remains (which will be produced

18   within one week) are additional licenses for *new* customers identified recently by Rimini, and a

19   handful of license-related documentation not as readily identifiable due to name changes and

20   access to legacy systems.  In the meantime, Oracle has prioritized other aspects of its productions

21   in response to Rimini's requests, including terabytes worth of internet log files, terms of use for

22   Oracle websites, and a substantial amount of discovery (including depositions, with exhibits)

23   relevant to this case from *Oracle v. SAP*.  Oracle has further produced Oracle's copyrighted

24   software, documents relating to the ownership and authorship of that software, certificates of

25   copyright registration, deposit materials, and many voluminous Excel spreadsheets (each of

26   which counts as a single "page").

27

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1            **4.  Status and Number of Depositions**

2        The current status of depositions, and the material needed to conduct them effectively,

3 further confirms the need for an extension of the schedule.

4        As with the data issues summarized above, the production status of more traditional

5 discovery subjects – such as Rimini custodians' e-mails remains in its early stages.  The parties

6 spent several months negotiating the contours of Rimini Street's production, including

7 identifying a limited set of custodians and keywords.  These negotiations concluded on

8 January 18, 2011.  The parties agreed to keywords for Oracle's production several weeks later,

9 on February 9.  As a result, Oracle has deferred most depositions except for foundation Rule

10 30(b)(6) depositions pending production of documents and data.[5]

11        Rimini Street has confirmed that it has finished production for only one of its custodians,

12 J.R. Corpuz, whom Oracle deposed shortly after Rimini Street produced the last of his

13 documents.  Rimini Street also recently confirmed that productions for two other individuals are

14 "substantially complete."  While Rimini Street has produced a significant volume of documents

15 and data, it has yet to produce the vast majority for many key employees.  For example, Rimini

16 Street has produced just two documents from the files of Beth Lester, its vice president in charge

17 of support services for its PeopleSoft customers, whom it produced as its Rule 30(b)(6) witness

18 on March 17.  And Rimini Street has produced only four documents from the files of George

19 Lester, its vice president who oversees its IT organization and manages all software development

20 for PeopleSoft, J.D. Edwards, and Siebel.  Both Beth and George Lester were early Rimini Street

21 employees who joined the company in 2006 from TomorrowNow and who likely have thousands

22 of responsive documents.  For the Lesters, and for other employees, depositions currently await

23 the production of pertinent documents.[6]

24 _____

25 [5] Oracle has taken four depositions to date: a 30(b)(6) deposition concerning Rimini's computer system and preservation efforts; a 30(b)(6) deposition concerning a high-level overview of Rimini's business processes; the recent 30(b)(6) deposition concerning six specific PeopleSoft

26 fixes and five environments, and a deposition of Rimini Street downloader J.R. Corpuz.

27 [6] In addition, certain errors in Rimini Street's production have hindered Oracle's ability to analyze the custodial documents.  For example, Rimini Street produced documents with blank

28 spaces, which originally contained pictures of screenshots or other images.  From the context of

JOINT CASE MANAGEMENT STATEMENT

1    The challenges of the scope and complexity of discovery described above also require

2    more depositions than the twenty the current case management order allows.  As explained

3    above and in the Declaration of Christian Hicks, Oracle's experts need deposition testimony to 1)

4    interpret the complex and diverse data being produced and 2) explain its role in the context of

5    Rimini's business processes.  Oracle's deposition proposal, broken down by category, is as

6    follows:

7        **Downloaders:**  Oracle took the deposition of J.R. Corpuz, who has engaged in

8    downloading of PeopleSoft materials.  Mr. Corpuz testified that different employees conduct

9    downloading for each of Rimini Street's other service offerings, relating to Oracle's J.D.

10   Edwards and Siebel software.  Thus, Oracle requires at least two more depositions, one for each

11   product line.

12       **Support and Updates:**  Oracle will requires at least one deposition for each of the three

13   service offerings (PeopleSoft, J.D. Edwards, and Siebel) to address how Rimini Street provides

14   support and product updates.

15       **PeopleSoft Developers, Testers and Packagers:**  With respect to the PeopleSoft product

16   line only, Rimini Street has identified over 270 local environments and over 1,000 fixes,

17   compromised of potentially tens of thousands of individual code files (see generally, discussion

18   above).  Given the volume at issue, which involves potentially tens of thousands of individually

19   modified or generated computer files, Oracle proposes to depose at least ten developers, testers

20   and/or packagers regarding Rimini Street's PeopleSoft software services.[7]

21

22   the documents, Oracle determined that the missing images in many instances depicted Oracle's
systems, Rimini Street's downloading tools, and other relevant items.  Oracle first alerted Rimini
23   Street to this problem on March 2.  Rimini Street is still working with its vendor to correct this
problem across its entire production.  In the interim, Oracle has identified individual flawed
24   documents and submitted piecemeal requests for replacements – a time-consuming and
inefficient process.
25

26   [7] Because Oracle initially has focused on PeopleSoft services, Oracle has less information about
Rimini's J.D. Edwards and Siebel services.  While Oracle does not yet have good cause to ask
27   for additional depositions regarding J.D. Edwards and Siebel software, Oracle may later request
additional depositions related to these product lines as related discovery matures.  For now,
28   Oracle includes 2 depositions for each product line as a placeholder.

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1      **PeopleSoft Environment Builders:**  The developers and testers do not create the

2  environment copies – Rimini Street assigns that task to a separate department.  Ms. Lester could

3  not give reliable testimony about the sources and uses of just five environments that were the

4  subject of the Rule 30(b)(6) notice.  Oracle thus proposes to take two depositions of Rimini

5  Street's environment-building team solely as to PeopleSoft environments.

6      **Sales:**  Oracle anticipates four depositions of members of Rimini Street's sales

7  organization, who recruit customers with representations about Rimini's business model.  This is

8  important evidence on causation as well as Rimini Street's counterclaim for defamation and

9  trade libel.

10      **Other Executives:**  There are a small number of executives at Rimini Street not covered

11  within the categories above, such as Mr. Ravin himself.  We estimate at least four total

12  depositions.

13      **Rimini Street Competitors:**  Rimini Street has identified three competitors that it claims

14  would have gained these customers if Rimini Street had not, an attack on causation and damages.

15  Both Oracle and Rimini Street have issued document subpoenas to each of these companies

16  (NetCustomer, Spinnaker Support, and CedarCrestone).  Oracle anticipates at least one

17  deposition for each company.

18      **Rimini Street Investors:**  Rimini Street had detailed negotiations with at least one

19  investor, Adams Street Partners, regarding its practices with respect to Oracle's intellectual

20  property.  This investor will provide important testimony on liability issues, and its financial

21  analysis relates to damages.  Oracle proposes a single deposition.

22      **Customers:**  Customers will provide critical liability, causation, and damages testimony

23  in this case.  Unless Rimini will agree now not to argue that its customers (1) left Oracle for

24  reasons other than Rimini's service offering; and (2) would not have left had they know that

25  Rimini's service offering was illegal (assuming that is proved), then Oracle must ask the

26  customers those questions directly.  Even so, it is impossible to ask all of them, and Oracle

27  proposes nothing of the sort.  Rimini Street has had more than 300 customers for services

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

relating to Oracle products, most of which have been subpoenaed and have provided important

documents.  The parties in the recent *Oracle v. SAP* case kept these depositions short and

focused.  Rather than set a number, Oracle proposes that each side have a total of 50 hours of

customer deposition time to divide at each party's discretion.  That would allow, as an example,

for Oracle to take 20 depositions of two-and-a-half hours each.  Those 20 would represent less

than ten percent of the Rimini Street customer base.

    The table below summarizes the proposed depositions by category as compared to the

number of individuals filling the relevant role at either Rimini Street or the relevant entity.

| Category | Proposed Depositions | Number of Individuals |
|---|---|---|
| Downloaders | 3 (1 PeopleSoft, 1 J.D. Edwards, 1 Siebel) | At least 5 |
| Support and Updates | 3 (1 PeopleSoft, 1 J.D. Edwards, 1 Siebel) | More than 50 |
| PeopleSoft Developers, Testers and Packagers | 10 | At least 25 |
| PeopleSoft Environment Builders | 2 | At least 5 |
| J.D. Edwards and Siebel Developers, Testers, Packagers and/or Environment builders | 3 | At least 12 |
| Sales | 4 | At least 12 |
| Other Executives | 4 | At least 12 (senior executives) |
| Rimini Street Competitors | 3 | 3 companies with more than 2000 combined employees |
| Rimini Street Investors | 1 | At least 4 |
| Customers | 50 hours total | More than 300 past or present business customers for PeopleSoft, J.D. Edwards, and Siebel services |
| Total | 33 depositions + 50 hours of customer depositions | Approximately 180 total Rimini Street employees, 3 identified competitors, and more than 300 business customers |

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    **5. Discovery Schedule**

2    The discovery challenges in this action do not result from inefficient discovery or

3    unnecessary discovery squabbles.  To the contrary, the parties have worked well together to

4    address their respective concerns and to stage discovery in a sensible manner.  However, as

5    described above, this process has revealed that much more needs to be done, and the parties have

6    not made the progress necessary (nor could anyone reasonably expect that they could have, given

7    the volume) to meet the current schedule.

8    Given the remaining work, despite the parties' diligence in the discovery process so far,

9    an extension is warranted pursuant to Fed. R. Civ. P. 16(b)(4).  *See also* Local Rule 26-4.

10   Specifically, Oracle proposes the revised discovery schedule below.  The need for these schedule

11   modifications exists regardless of whether the Court orders additional depositions at this time,

12   for the reasons given above regarding the status of production and time needed for analysis.

13

|  | Current Schedule | Oracle Proposal |
|---|---|---|
| Last date to complete fact discovery | August 1, 2011 | February 17, 2012 |
| Last date to file motions to compel related to fact discovery | August 15, 2011 | March 9, 2012 |
| Last date to amend pleadings and add new parties | June 1, 2011 | August 1, 2011 |
| Last date to disclose experts on issues for which a party has the burden of proof, pursuant to Fed. R. Civ. P. 26(a)(2) | September 1, 2011 | April 6, 2012 |
| Last date to disclose rebuttal experts | October 15, 2011 | May 31, 2012 |
| Last date to complete expert discovery | December 1, 2011 | July 9, 2012 |
| Last date to file dispositive motions | January 15, 2012 | September 21, 2012 |
| Last date to file joint pretrial order | February 15, 2012 | November 16, 2012 |

24   **6. An Extension of the Current Schedule and Deposition Limits Will Not
     Unfairly Prejudice Rimini Street but the Absence of These Extensions
     Would Prejudice Oracle**

26   A schedule extension will not unfairly prejudice Rimini Street.  The parties' inability to

27   complete necessary discovery on the current schedule arises from the technical complexity and

28   scope of the issues in the litigation.  Further, granting an extension will permit Oracle to continue

24

331252 v1

1   to minimize Rimini Street's production burdens through phased and targeted discovery requests,

2   as Oracle has done so far.  A more abbreviated schedule likely forces Oracle to demand full and

3   immediate production of the entirety of the data it needs.

4     This is not a case where one party is hounding the other with unreasonable and

5   oppressive discovery demands.  To the contrary, the fact that the parties, without the intervention

6   of the Court, have resolved between themselves every single discovery dispute that has arisen

7   between them over the last six months illustrates the parties' effective and cooperative work to

8   minimize the burdens of the litigation while still moving forward quickly.

9     That cooperation does not change the fact that Rimini Street has copied massive amounts

10  of Oracle software and support materials.  That widespread conduct requires more time for

11  discovery and analysis.  Further, the copyright claims here involve complex software code and

12  related data, not a book or a movie.  That it takes a lot of time and work to analyze that sort of

13  information is not unfair to either party – it is simply a fact of this case.  Moreover, Rimini

14  Street's defenses, such as asserting that the circumstances for each of the more than 1,000 fixes

15  will vary enough to require a separate analysis of each, necessarily implicate extensive

16  discovery.  Oracle of course agrees that Rimini Street may assert all of the defenses that it

17  believes appropriate – but it cannot assert those defenses and then deny Oracle the discovery

18  necessary to test them.

19    For similar reasons, adhering to the current schedule and depositions limits *would*

20  prejudice Oracle.  Rimini made these copies, and then in many instances covered up crucial

21  evidence that would establish the facts showing its liability.  The massive copying at issue

22  requires more time to analyze that Oracle has available under the current schedule.  Already,

23  regardless of what the Court orders, Oracle has insufficient time comprehensively to analyze all

24  of the copies Rimini made, using all of the sources where Rimini stores them.  That unfairness

25  exists in the case and always will.  However, to mount an effective damages case that accounts

26  for what Rimini did, Oracle at least must have sufficient time and tools to investigate by product

27  line, by exemplar copy, by category of conduct, and by example customers.  That minimum

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1  discovery will allow Oracle to extrapolate to the totality of Rimini's conduct in support of

2  Oracle's damages analysis.  The alternative would allow Rimini to run out the clock on Oracle's

3  analysis, and would prevent a hearing on the merits of Oracle's claims.

4  **B.      Rimini Street's Position**

5      If Oracle exercised as much diligence in meeting the Court's scheduling order as it

6  exercises in its attempt modify that schedule, it would not need to delay the close of fact

7  discovery by over six months.  From the very beginning of the Court's careful consideration of

8  the schedule in this case, Oracle has been prophesying the need for a longer schedule.[8]  Oracle

9  has been managing its case from the beginning with an eye toward creating a self-fulfilling

10  prophecy.  But this is tantamount to flat-out ignoring the Court's carefully considered schedule.

11  Put another way, Oracle should not be allowed to predict that the Court's schedule will be

12  insufficient, exert little diligence to meet the ordered schedule, and then outline all the things it

13  knows about but has not done as a means to bring its prediction into reality.

14      This is the very reason Oracle must show "good cause" to modify the Court's schedule,

15  and Oracle has not met that standard.  "Federal Rule of Civil Procedure 16(b)(4) and LR 26-4

16  allow the Court to modify a scheduling order only upon a showing of good cause." *Amos v.*

17  *Makita U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 2729 (D. Nev. Jan. 6, 2011).  The good cause

18  standard primarily considers the diligence of the party seeking the amendment. *Johnson v.*

19  *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  If the moving party was not

20  diligent, the inquiry should end. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th

21

22  _____

23  [8] *See, e.g.,* Doc. No. 51 at 7 ("Rushing to squeeze the same amount of discovery into a shorter
       period risks inefficiency, waste, and expense. There is nothing to be gained by haste,
24       particularly if a short schedule leaves the parties likely back before the Court requesting
       an extension."); Doc. No. 98 at 18 ("Oracle submits that regardless of which Party's
25       proposal the Court may adopt for limits on discovery, it is prudent and indeed necessary
       in this case to allow adequate time for the collection and analysis of complex discovery
26       by counsel and by experts."); Doc. No.  118 at 3 ("Given the scope of the case, the
       technical nature of the disputes, and the time it has taken to make these materials
27       available for preliminary inspection, Oracle contends that it will be a challenge to
       complete the necessary discovery on the schedule set by the Court, but is committed to
28       continuing the parties' diligent and cooperative work to attempt to meet that challenge.")

26

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    Cir. 2002); *Johnson*, 975 F.2d at 609.  Here, Oracle has failed to show either that the present

2    deadlines cannot be reasonably met or that it proceeded diligently to meet those deadlines.

3           As represented at the outset of this case, Rimini Street has cooperated with Oracle's

4    demands.  What Oracle has asked for, it has received in a timely manner.  Plenty of time remains

5    in discovery for the parties to *reasonably* explore the full merits of the dispute.  Now, it is

6    certainly true that Oracle could (and has attempted to do so in its submission) describe a level of

7    analysis that would be impossible to complete in any reasonable period of time.  But, again,

8    Oracle must make diligent efforts to tailor its case to the Court's schedule, not unilaterally tailor

9    the Court's schedule to support the most complex analysis Oracle can concoct.  The Court's

10   scheduling plan is working well, and there is no reason to interfere with the parties' progress.

11   The present schedule is more than adequate to allow full discovery into the merits of the claims

12   in this case, and Oracle's request to modify the Court's discovery plan should be denied.

13          **A.  Discovery Efforts To Date**

14          Discovery commenced in this matter on April 29, 2010 following the parties' Rule 26(f)

15   conference.  During this conference, the parties conferred regarding their competing discovery

16   proposals, which were ultimately reflected in the parties' Stipulated Discovery Plan.  Doc. No.

17   51.  Of note, Oracle requested a fact discovery deadline of August 1, 2011, while Rimini

18   requested a fact discovery cutoff of April 29, 2011.  *Id.* at 15-16.  On June 1, 2010, the Court

19   conducted a case management conference during which the parties presented their competing

20   discovery proposals.  Following the conference, the Court took the competing discovery

21   proposals under advisement and ordered the parties to conduct "foundation discovery" before the

22   next status conference.  Doc. No. 62.  That next scheduling conference was held on August 5,

23   2010, where the parties again discussed their discovery proposals.  Doc. No. 77.  Following this

24   conference, the Court issued a Minute Order stating, "Court is inclined to set concrete discovery

25   deadlines, but not until after counsel have made additional progress with their foundational

26   discovery, after establishing the universe of material they need, and after determining what

27   discovery disputes, if any, counsel may have." Doc. No. 77.  After continuing with such

28

JOINT CASE MANAGEMENT STATEMENT

1  foundational discovery for over another month, a further conference was held on September 10,

2  2010.  Following this hearing, the Court entered what was obviously a carefully considered

3  scheduling order on September 21, 2010, adopting Oracle's fact discovery deadline of August 1,

4  2010 and limiting the number of depositions to 20 per side.

5         Armed with extensive foundational discovery, Oracle made a number of priority

6  discovery requests in a letter dated October 5, 2010.  Of note, this letter requested prioritization

7  of various major data sources, including Rimini's customer archives, customer environments,

8  DevTrack platform and other large log files.  During a meet-and-confer on October 25th, Rimini

9  proposed a detailed production plan for each of the data sources requested by Oracle.  While the

10 parties negotiated the technical details of these massive productions, Rimini began making its

11 productions on a rolling basis.  For instance, various log files were produced in November, and

12 Rimini produced its FTP server in December of 2010.  Rimini also provided Oracle VPN access

13 to its customer archives and DevTrack platform in December of 2010.

14        On December 14, 2010, Oracle provided Rimini with its initial list of requested customer

15 environments.  Within two months of receiving Oracle's priority list, Rimini produced over fifty

16 environments – an enormous amount of data.  Oracle requested another twenty-two

17 environments on February 3, 2011, and Rimini made responsive productions on March 2.

18        On February 10, 2011, Oracle requested the production of development files from Rimini

19 HRMS Development network share. Rimini made its initial production of this material less than

20 two weeks later. While Rimini continues to process the remaining development files, it expects

21 to make a complete production by the end of March.  Further, while Oracle has requested the

22 production of the two additional folders from the HRMS Development network share, Rimini

23 has already confirmed to Oracle that it expects to have this material ready for production in

24 April.

25        In addition to addressing promptly Oracle's numerous requests for non-custodial data,

26 Rimini has also produced nearly 1.5 million Bates-stamped pages and nearly 2,800 native files.

27 It produced over 200,000 more pages of priority custodian documents this week, and expects to

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    have produced well over 1.6 million Bates-stamped pages by the end of March. In early April,

2    Rimini expects to produce another substantial volume of priority custodial documents, which

3    will likely bring Rimini's total production to over two million pages.

4         **B.  The Court Should Not Modify Its Scheduling Order.**

5         After extensive briefing and an extended period of "foundational" discovery, the Court

6    entered its scheduling order on September 21, 2010, *inter alia*, adopting Oracle's proposed

7    August 1, 2011 deadline for the close of fact discovery.  Since that time, Rimini Street has

8    demonstrated its ability to conduct discovery quickly and efficiency.  As noted, *infra*, Rimini has

9    worked cooperatively with Oracle to address Oracle's numerous demands, and by December

10   2010 Oracle had a tremendous volume of the data relevant to its various allegations, including: a

11   list of each of Rimini's customer environments; access to Rimini's complete customer archives;

12   every software update and fix Rimini has ever created; and access to Rimini's entire

13   development platform, which contains detailed records regarding the development of Rimini's

14   software updates and fixes.  By March 2, 2011, Rimini had finished its production of the 71

15   customer environments requested by Oracle.  At present, Rimini has confirmed its intent to

16   produce the materials responsive to Oracle's pending requests for non-custodian data by the end

17   of April.[9]

18        Given Rimini's discovery efforts, Oracle cannot point to any discovery materials that

19   have not been timely produced in response to its requests.  As such, Oracle's request to extend

20   the schedule necessarily focuses on the purported complexity of Oracle's analysis.  But Oracle

21   has not demonstrated (a) that it cannot meet the present deadlines; (b) that it cannot take a more

22   streamlined approach to analysis; and (c) that it has been diligent in attempting to meet the

23   existing schedule.  Put simply, Oracle cannot satisfy its "good cause" burden.

24

25

26   _____

27   [9] As one exception, Oracle requested the contents of Rimini's "internal software" folder within
     the last week.  Rimini has not yet had sufficient time to investigate when it will be in a
     position to produce this material, to the extent it still exists.

28
                                        29
                         JOINT CASE MANAGEMENT STATEMENT

1        **1.      Oracle's Delay Arguments Are Unsupported.**

2        Attempting to support its proposed extension, Oracle points to certain data that allegedly

3 has not yet been produced by Rimini.  For instance, Oracle asserts that Rimini has not produced

4 files from its customer archives.  In fact, Oracle has had continuous access to the customer

5 archives since December but has not requested the production of a single file.  What Oracle has

6 requested, it has timely received.  Oracle points to the fact that Rimini has produced

7 environments for only ten percent of its customers.  In fact, Rimini produced each of the

8 environments Oracle has requested, and Oracle has made no requests for additional

9 environments since February 3.  What Oracle has requested, it has timely received.  Oracle

10 indicates that it still must analyze the source code from Rimini Street's automated downloading

11 programs.  Rimini produced this code in January 2011 at Oracle's request.  Here again, what

12 Oracle requested, it has timely received.  Any delay in discovery or analysis rests with Oracle,

13 not Rimini.

14        Oracle also suggests that delays in Rimini's document productions will prevent it from

15 finishing its depositions within the allotted time frame.  The record demonstrates otherwise.  As

16 previously mentioned, Rimini has produced nearly 1.5 million Bates-stamped pages and nearly

17 2,800 native files.  In producing these custodial documents, Rimini has demonstrated its ability

18 to prioritize certain custodial productions over others at Oracle's request, such that depositions

19 may be expedited as necessary.  For instance, Oracle requested that Rimini prioritize the

20 production for Mr. Corpuz in advance of his deposition.  Rimini completed its production of Mr.

21 Corpuz's documents on February 23, 2011 – barely two weeks after Oracle requested Rimini

22 prioritize this custodian's documents.  In another example, Oracle requested various documents

23 on February 10, 2011 in connection with Oracle's Third Notice of Deposition.  These files were

24 promptly produced on February 23, 2011.  These are but a few examples.  Rimini has prioritized

25 a number of other custodial productions at Oracle's request, and Rimini will continue to do so in

26 a similarly quick fashion.

27

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1          2.          **Oracle Has Not Demonstrated Diligence.**

2          Oracle is dragging its feet.  It is slow to request information as described above, and it is

3     slow to produce information when requested to do so.  Indeed, while Rimini has produced over

4     1.5 million Bates-stamped pages, Oracle has produced only about 200,000.  Even what

5     productions Oracle has made have been rife with delay.  For instance, Rimini has yet to receive

6     all of the customer contracts it requested in its initial "foundational" requests for production of

7     May 13, 2010.  Obviously, these contracts are of the utmost relevance to Oracle's contract claims

8     and Rimini's license defenses.  It is difficult to comprehend how these customer contracts could

9     take nearly a year to locate and produce.  In fact, Rimini provided Oracle with a customer list on

10    September 8, 2010 to assist in the identification of customer contracts, but Oracle has yet to

11    produce the highly relevant licenses for even the customers on that list.  This is not complicated

12    and does not require a multi-page expert declaration to explain – there is a specific list of

13    customers whose contracts are pertinent, and production was requested approaching a year ago.

14    Yet, Rimini Street waits.

15         In another example of Oracle's lack of diligence, Rimini's Interrogatory No. 3 requests

16    that Oracle identify "each instance in which Defendants' alleged acts caused an Oracle Computer

17    to 'freeze, slow down, or become temporarily non-operational'" as alleged in Oracle's First

18    Amended Complaint.  This was another "foundational" discovery request that is obviously

19    highly relevant to Oracle's claims of damage to its servers.  Rimini has repeatedly requested that

20    Oracle supplement its response to this interrogatory, indicating that such a supplementation will

21    be necessary in advance of depositions that have already been noticed by Rimini.  Though Oracle

22    agreed to supplement its response as recently as February 23, 2011, Oracle apparently does not

23    intend to provide the requested supplementation until the middle of April, almost ten months

24    after the interrogatory was originally propounded.  Again, very little complexity exists here –

25    Oracle alleged instances of computer damage, Rimini Street asked for an identification of those

26    instances.  Yet, Rimini Street waits.

27

28

331252 v1

1    Oracle's discovery has consistently lagged Rimini's in timing, quantity, promptness of

2    supplementations to written discovery, and in responsiveness to prioritization requests.  Such

3    behavior does not indicate diligence.  As the Ninth Circuit has noted, if the party seeking

4    modification of the scheduling order was not diligent, the inquiry should end.  *Zivkovic*, 302 at

5    1087.  Oracle has and continues to move slowly.  And Oracle cannot use the outcome of its

6    tactics as evidence of "good cause."

7        **3.      The Court's Schedule Is Appropriate.**

8    Rimini, for its part, has consistently expressed its desire to resolve this case on its merits

9    rather than by attrition.  Rimini has kept up its end of the bargain – its cooperative approach to

10   discovery demonstrates that compliance with the Court's schedule is realistic.  Despite Oracle's

11   doom and gloom assessment, the Court's discovery plan is working exactly as intended, at least

12   for Oracle's discovery into its claims.[10]  Four full months remains in fact discovery.  Oracle has

13   received and is receiving the documents and evidence it has requested.  Oracle is using those

14   documents to take depositions of Rimini witnesses.  If Oracle continues on current pace, it can

15   readily take the remainder of its depositions in four months.  Oracle has indicated that it has

16   turned up evidence in discovery relating to databases, and that it intends to amend its complaint.

17   The Court's schedule is working since the deadline for such amendments is June 1.

18   Now, Oracle attempts to justify abandoning the Court's schedule by arguing that its team

19   of at least eleven forensic computer experts needs another eight months to *analyze* Rimini's data.

20   In point of fact, Oracle is now focusing on the time its experts purportedly need to analyze the

21   data that Rimini has and will produce.  If Oracle's cadre of experts work diligently with the data

22   in their possession, the Court's schedule would give them five more months before expert reports

23   are due on September 1.  Oracle has five months remaining and virtually limitless resources.  It

24   should use those time and resources to meet the Court's schedule, rather than using those time

25   and resources to justify abandoning it.

26   _____

27   [10] In all candor, Oracle must pick up the pace of its responsiveness for Rimini Street to be able to
     complete its discovery.  However, Rimini Street expects Oracle to do so, and if that
     occurs, Rimini Street will do what needs to be done to meet the existing deadlines.

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    **C.    Oracle's Request to More than Double the Number of Depositions Should**

2    **Also be Rejected.**

3    Oracle also requests the Court expand the number of allotted depositions from the current

4    limit of 20 to over 50 depositions.  In Oracle's chicken-or-the-egg analysis, does its request for

5    50 depositions justify an extended schedule, or does the extended schedule permit Oracle to take

6    30 additional (and likely unnecessary) depositions?  Either way, the entire amalgamation of

7    Oracle's requests are unjustified, and, if granted, would serve only to impose unnecessary and

8    duplicative burdens on Rimini and potentially dozens of non-parties.

9    Oracle has not demonstrated "good cause" for adjusting the deposition limit.  The present

10   limit of 20 depositions set by the Court appropriately requires the parties to avoid duplication in

11   selecting the witnesses they choose to personally depose.  Oracle's new deposition proposal,

12   however, would eliminate the need for such selectivity by allowing duplicative depositions from

13   various categories of Rimini employees.  For instance, Oracle seeks 10 depositions of employees

14   working in Rimini's PeopleSoft development organization alone.  Oracle makes no effort to

15   explain what unique information it expects to learn from 10 separate individuals *working in the*

16   *same department*.  Such overly broad proposals litter Oracle's proposed deposition modification,

17   consistently seeking 3 to 4 depositions of similarly situated Rimini deponents.  Even worse,

18   Oracle requests 20 (or more) depositions of Rimini's customers.  To be clear about Oracle's

19   tactics here, Oracle has already systematically subpoenaed over 200 of Rimini's customers with

20   subpoenas requesting the exact same documents.  Oracle appears to be on a crusade to burden

21   every single one of Rimini's customers even though they all have essentially the same

22   information.  Oracle's tactics, while ostensibly discovery related, suggest a different purpose.

23   Now, Oracle wants to extend its crusade to what are sure to be duplicative depositions.  Oracle

24   should get the discovery it needs from exemplary customers, but the Court should not facilitate

25   Oracle's non-discovery goals by enabling another rampage through Rimini's customer list.

26   And such is precisely the undesirable result that stems from Oracle's hours-based

27   approach to deposition limits.  For instance, Oracle's request for an unfettered 50 deposition

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1    hours would allow Oracle to take dozens of customer depositions all over the country.  Oracle

2    itself suggests it will take 20 such depositions at two-and-a-half-hour each.  The business

3    interruption and legal expense associated with such proposed depositions simply cannot be

4    justified, and Oracle fails to explain the specific and unique information it would hope to glean

5    from these disparate customer depositions.  This Court has already considered a similar proposal

6    in rejecting Oracle's request for a bare limit of 200 deposition hours.  And even then, Oracle was

7    granted over twice the number of depositions contemplated by the Federal Rules.  Oracle has not

8    demonstrated why it needs an additional twenty or more depositions directed solely at Rimini's

9    customers, or why such depositions would not be duplicative of depositions Oracle can take

10   within the current deposition limit.

11          Oracle's request to substantially increase the number of allowed depositions is

12   unsupported by "good cause."  Oracle has taken only four depositions.  Three additional

13   depositions notices are currently pending for Rimini employees in April and May.  Even after

14   these depositions are concluded, Oracle will have 13 depositions remaining.  Oracle should, as

15   the Court's scheduling order contemplates, select 13 additional witnesses that possess exemplary

16   information.  Oracle does not need and should not be allowed to seek the same information from

17   multiple witnesses.  Such scorched-earth tactics have no legitimate place.  The Court should

18   instruct Oracle to comport with the scheduling order.

19

20   Dated:  March 25, 2011

21   BOIES, SCHILLER & FLEXNER LLP              SHOOK, HARDY & BACON LLP

22   By:  /s/ Kieran P. Ringgenberg             By:  /s/  Robert H. Reckers

23        Kieran P. Ringgenberg (*pro hac vice*)      Robert H. Reckers (*pro hac vice*)
          1999 Harrison Street, Suite 900             600 Travis Street, Suite 1600

24        Oakland, CA 94612                           Houston, Texas   77002
          Telephone: (510) 874-1000                   Telephone: (713) 227-8008

25        Facsimile: (510) 874-1460                   Facsimile: (731) 227-9508
          kringgenberg@bsfllp.com                     rreckers@shb.com

26   *Attorneys for Plaintiffs*                  *Attorneys for Defendants*

27

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1

1

## ATTESTATION OF FILER

2          The signatories to this document are myself and Robert Reckers and I have obtained Mr.

3    Reckers's concurrence to file this document on his behalf.

4

5    Dated:  March 25, 2011                          BOIES, SCHILLER & FLEXNER LLP

6                                        By:    /s/ Kieran P. Ringgenberg

7                                              Kieran P. Ringgenberg (*pro hac vice*)
                                              1999 Harrison Street, Suite 900
8                                              Oakland, CA 94612
                                              Telephone: (510) 874-1000
9                                              Facsimile: (510) 874-1460
                                              kringgenberg@bsfllp.com

10                                             *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT

331252 v1