# EXHIBIT D



www.shb.com

**Robert H. Reckers**

JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston
Texas 77002-2992
713.227.8008
713.227.9508 Fax
rreckers@shb.com

May 3, 2011

**VIA E-MAIL**

Thomas S. Hixon
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
thomas.hixon@bingham.com

Re:  *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin*
      Case No. 2:10-cv-0106-LRH-PAL (D. Nev. filed Jan. 25th, 2010)

Dear Thomas:

I write in regards to Oracle's responses to Rimini's Third Set of Requests for Production and a number of deficiencies that are apparent therein. These deficiencies are addressed in detail below.

As a preliminary matter, we note that Oracle's General Objection No. 6 asserts that Oracle will only produce documents from "identified custodians using the search terms agreed upon." This is an inappropriate approach for a number of Requests. For example, Rimini's Request No. 1 seeks documents sufficient to show the performance of Oracle computers both 24 hours before and after they allegedly suffered damage as a result of Defendants' conduct. It is highly likely that any responsive documents are computer log files, and that such log files will not be found among custodial sources using search terms, but rather in specific locations among non-custodial sources such as Oracle's website system itself. Similarly, Rimini's Request Nos. 5 and 6 seek information supplied in connection with the creation of access credentials for Oracle websites. Again, it is highly unlikely that such information would be found among custodial sources. The negotiations regarding custodial productions and search terms did not negate Oracle's responsibility to produce responsive information from non-custodial sources where appropriate, and Rimini itself has produced massive amounts of non-custodial documents in such situations.  Please confirm Oracle will produce documents from non-custodial sources where appropriate, and at least for Rimini's Request Nos. 1, 2, 3, 5, 6, 7, and 9 in this case.

**Response No. 1**

Rimini's Request No. 1 seeks documents sufficient to show "the performance of any computer you allege was damaged as a result of Defendant's conduct during both the 24 hour period before and the 24 hour period after the alleged damage occurred." Oracle's response does not agree to provide this information, but instead states that

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

333551 v1



www.shb.com

Oracle will only produce documents that "relate or refer to any damage." This does not capture the extent of what was requested, which includes documents demonstrating the functioning of the computer in periods both *before and after* any alleged damage. By agreeing to provide only documents referring or relating to the damage, Oracle deprives Rimini of the ability to investigate and analyze the extent of any such damage, whether the performance degraded, how long performance degraded, etc. Rimini is entitled to test the veracity of Oracle's damages theories, and Oracle's response is deficient in its current form.

## Response No. 2

Rimini's Request No. 2 seeks documents sufficient to show the protective measures used by Oracle to protect the computers it alleges were damaged as a result of Defendants' conduct. Oracle objects that Rimini's request is overbroad, and states that it has already produced certain log files and will produce information regarding the banning of IP addresses. This is insufficient. Rimini's request specifically seeks information regarding the measures used by Oracle to protect its computers and lists certain specific types of information that it expects to receive – such as information regarding the use of "firewalls, rate controllers, reverse proxies, router configurations, bandwidth limits," etc. Oracle has not agreed to provide any such information, though it is required to investigate and analyze Oracle's claims. For example, Oracle has accused Rimini of causing damage to its computer systems. The configuration and protections in place for Oracle's computer systems are highly relevant to Rimini's analysis of the plausibility of Oracle's damage claims. Oracle's current response is thus deficient and prompt supplementation is required.

## Response Nos. 5 and 6

Rimini's Request No. 5 seeks identifying information supplied in connection with the creation of any credential Oracle claims was used by Rimini to access Oracle computers without authorization, in excess of authorization, or without permission – such as IP addresses and date/time stamps. Rimini's Request No. 6 seeks similar information specific to the credentials allegedly used by Seth Ravin. Rimini requires such information to investigate *who* created the credentials-in-question. This information is obviously directly relevant to Oracle's claims of breach of contract and induced breach of contract. It is also highly relevant to Oracle's multiple claims of computer hacking, including whether or not access under the credentials was "in excess of authorization, without authorization, or without permission" as granted to those credentials.

Oracle refuses to supply this information. Oracle first objects, implausibly, that this information is more readily available to Rimini and/or its clients. But whatever specific information was supplied in connection with the credentials used to access

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.


www.shb.com

May 3, 2011
Page 3

Oracle websites was requested by, sent to, and (presumably) stored by Oracle on Oracle's computer systems. These are credentials used to access *Oracle's* computer systems, and Oracle must produce the requested information that it has in its possession.

Oracle also objects that such information is "unduly burdensome or impossible" to obtain. However, it is not "unduly burdensome" to perform a computerized search to locate responsive and highly relevant information. If Oracle has indeed not kept track of information indicating who actually accepted the terms and conditions of its websites, Rimini is entitled to know as much. For information that is truly "impossible" to supply (either because Oracle deleted it or failed to store it in the first place), Rimini requests confirmation that it is truly nonexistent.

### Request No. 7

Rimini's Request No. 7 seeks documents sufficient to show Oracle's policies regarding the inclusion of the right to make Test and Development copies of Oracle software in its license agreements from January of 2005 to the present. Oracle states only that it will produce relevant license agreements with Rimini customers. This is not what was requested. Rimini's request specifically seeks documents sufficient to show Oracle's *policies* regarding the addition of various terms related to this right. Oracle is apparently seeking damages relating to the creation and use of test and development copies of Oracle software, and Oracle's policies regarding what it charges for such rights and under what conditions is highly relevant to both a lost profits and a reasonable royalty analysis. Oracle's response is thus currently deficient.

### Request No. 8

Rimini's Request No. 8 seeks documents relating to the negotiation and interpretation of any license agreement between Oracle and Rimini Street clients. Oracle has responded by stating that it will produce license agreements with Rimini customers. Again, this is not what was requested. Rather, Rimini seeks documents that are related to the negotiation and interpretation of such contracts, such as contemporaneous documents directly related to the negotiations, rejected versions of contracts, evidence regarding modified terms, etc. Such information is relevant to Oracle's claims of breach of contract and induced breach of contract. Oracle's current response is thus deficient.

### Request No. 9

Rimini's Request No. 9 seeks log-in credentials for Oracle's websites for the sole purpose of defending against Oracle's claims in this litigation. Oracle objects on overbreadth grounds and because of the "security concerns" that such access could create. First, we will clarify that credentials are requested for access to the My Oracle

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.


www.shb.com

May 3, 2011
Page 4

Support website that exists today. Second, we note that Rimini has granted Oracle numerous sets of access credentials to its "live" systems, and we see no reason Oracle cannot respond in kind. Any security concerns can be adequately addressed through the protective order, and we will assure Oracle that any such credentials will be kept in strict confidence.

We look forward to Oracle's supplemental responses.

Sincerely,

*/s/Robert H. Reckers*

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

333551 v1