# EXHIBIT E

**BINGHAM**

Geoffrey M. Howard
Direct Phone: 415.393.2485
Direct Fax:    415.262.9212
geoff.howard@bingham.com

March 29, 2011

**Via Electronic Mail**

Robert H. Reckers, Esq.
Shook, Hardy & Bacon LLP
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, TX 77002

**Re:  *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin***
      **Case No. 2:10-cv-00106 (D. Nev.)**

Dear Rob:

Consistent with the guidance that the Court provided at today's Case Management
Conference that the parties "meet and confer . . . to get to a resolution on a set of
stipulated facts or on portions of the case to make this matter more manageable and cost
efficient," I write to propose that the parties hold a series of meet and confer discussions
to narrow the set of issues in dispute. *See* Minutes of Proceedings, Dkt. 133 (Mar. 29,
2011). The goal of the discussions would be to enter into one or more factual and/or
methodological stipulations. Oracle proposes that the parties meet in person every two
weeks, initially, with perhaps more frequent meetings if we make progress and as the date
for the next status conference nears. To the extent that the parties cannot coordinate
discussions with the existing deposition schedule, Oracle proposes that the location of the
discussions should alternate between San Francisco and a location of Defendants'
choosing. Should the parties make progress, Oracle anticipates that the parties may wish
to include their experts in some of these discussions.

Please let us know your availability the week of April 11-15 for an initial meeting.

Sincerely yours,

Geoff Howard / jp

Geoff Howard

cc:   Kieran Ringgenberg
      Fred Norton
      Stacey Phan
      Eric Buresh
      Rhonda Sexton
      Megan Redmond
      Tom Hixson
      Kristen Palumbo

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

# BINGHAM

Geoffrey M. Howard
Direct Phone: 415.393.2485
Direct Fax:    415.262.9212
geoff.howard@bingham.com

April 8, 2011

**Via Electronic Mail**

Robert H. Reckers, Esq.
Shook, Hardy & Bacon LLP
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, TX 77002

**Re:** *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin*
**Case No. 2:10-cv-00106 (D. Nev.)**

Dear Rob:

In preparation for the parties' meet and confer set for April 14, 2011 at your offices in
Kansas City, Oracle proposes the following agenda, including certain proposals that we
request Defendants consider. These proposals are designed to reduce the amount of data
that Defendants would have to produce, mitigate the burden on Defendants accordingly,
and to narrow the issues in dispute. We expect this proposal to serve as a starting point
for discussion, and we recognize that a fully detailed proposal might occupy many more
pages than this one does.

In addition, we anticipate a series of detailed proposals designed to limit the factual and
legal issues in dispute, and invite Rimini to provide its own proposals in that regard.
However, in the interests of time, we wanted to get the discussion started with the ideas
outlined below that we hope closely track the discussion with the Court two weeks ago.

We also reserve all rights to modify this proposal based on our ongoing discussions and
ongoing discovery. We also reserve all rights to modify this proposal based on our
ongoing discussions and ongoing discovery. As one example, Rimini Street will be
making available in approximately two weeks VPN access to an additional, apparently
significant, source of copied Oracle software, and we cannot predict how that review
might change this proposal.

**Materials in Rimini Street's possession, custody or control constituting**
**reproductions of Oracle's copyrighted software and support materials**

Rimini Street has acknowledged that it possesses:

- copies of Oracle's install media (CDs, DVDs, electronic installation materials),
  including copies that Rimini Street has created;

- downloads and other copies of other Oracle source code and object code relating
  to Oracle's PeopleSoft-branded, JD Edwards-branded, and Siebel-branded
  software, including but not limited to:

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

Robert H. Reckers, Esq.
April 8, 2011
Page 2

- o   tax and regulatory updates and other fixes for PeopleSoft software,

- o   ESUs and Code Changes for J.D. Edwards software, and

- o   patches, service packs, maintenance packs and cumulative updates for
    PeopleSoft, J.D. Edwards and Siebel software;

- local environments resulting from the installation of Oracle's PeopleSoft-
  branded, JD Edwards-branded, and Siebel-branded software onto Rimini Street's
  computer systems, including virtual machines hosted or stored on Rimini Street's
  computer systems ;

- copies of local environments, including backups of local environments and
  backups of virtual machines containing local environments;

- installations of Oracle Relational Database Management System software;

- downloads and other copies of Oracle's technical documentation, including but
  not limited to knowledge solutions, technical documentation, and documentation
  for Oracle's fixes, updates, patches, service packs, maintenance packs and
  cumulative updates; and,

- source code, object code and documentation allegedly generated by Rimini Street
  that incorporates or is derived from the Oracle materials described above,
  including but not limited to Rimini Street's tax and regulatory updates and other
  fixes for PeopleSoft-branded software.

Oracle proposes that Rimini Street agree that these copies, viewed as a whole, constitute
a reproduction of materials embodying all of Oracle's registered copyrights that are
alleged in Oracle's First Amended Complaint and that will be alleged in Oracle's Second
Amended Complaint. Oracle further proposes that Rimini Street agree that each such
copy contains a substantial amount of the protected expression from one or more of
Oracle's registered copyrights.

Should Rimini Street so agree, Oracle proposes that, save for the limited materials
described elsewhere in this letter, no production of copies of install media, Oracle
database, downloaded files, or Rimini Street-generated fixes would be required solely for
purposes of proving reproduction of Oracle's registered works, and that no additional
production of local environments would be required. The parties would then attempt to
stipulate to the number of reproductions. If no stipulation were reached, Rimini Street
would be required to produce additional metadata from execution of Karen' Directory
Printer or its equivalent and both Oracle and Rimini Street would agree to base their copy
counts on this metadata.

Subject to further discussions aimed at further narrowing the issues for trial, Rimini
Street would retain all of its pleaded defenses regarding these reproductions.

Robert H. Reckers, Esq.
April 8, 2011
Page 3

**Customer licenses, fair use and customer-attributed software and support materials**

The parties agree that Rimini Street's PeopleSoft and Siebel customers purchased nonexclusive licenses for that software. Oracle proposes that the parties choose a set of representative licenses within each product line (either through random sampling or some other means). The parties will analyze Rimini's conduct with respect to those licenses to determine, among other things, whether Rimini's license defense applies to software received from those customers by Rimini, ways in which Rimini may have used that software, downloads obtained using that customer's credentials and any service delivered to those customers, including but not limited to fixes and updates. The parties may extrapolate the results of their analysis to the entire customer population at Rimini within each product line without objection that such extrapolation is not statistically valid or representative of the entire populations.

Oracle's response to any assertion of any license defense by Rimini Street will include analysis of the downloads, environments, and Rimini Street-generated materials as to the customer implicated by that particular license. So that Oracle could perform such analysis with respect to all licenses for all Rimini Street's customers, Oracle would require that Rimini Street produce all downloads, all environments and all Rimini Street-generated materials for every customer. Focusing analysis on a specific set of licenses would help limit the production and analysis only to materials implicated by those licenses. Thus, limit production of local environments, downloads, any other Oracle-generated and Rimini Street-generated materials, Oracle further suggests that the parties agree to a limited production relating to the selected licenses.

**Rimini Street-generated materials for Oracle's PeopleSoft-branded software and fair use**

As discussed at the March 2011 Case Management Conference, a substantial portion of the additional discovery time that Oracle is requesting relates to the need for detailed and exhaustive analysis of the thousands of fixes that Rimini Street has generated for Oracle's PeopleSoft-branded software. So as to reduce the amount of additional fact and expert discovery that Oracle will require, Oracle proposes that the parties agree to select a small number of Rimini Street-generated materials for PeopleSoft to evaluate. With such an agreement, Rimini Street would only need to produce the specific Rimini Street-generated materials, downloads and environments that may relate to the development, testing and delivery of the selected fixes.

To the extent that Rimini Street intends to maintain a fair use defense relating to PeopleSoft environments or to Rimini Street-generated PeopleSoft materials, Oracle further proposes that defense rise or fall based on the analysis done with respect to specific licenses and fixes as described above, on the same extrapolated basis.

Robert H. Reckers, Esq.
April 8, 2011
Page 4

I look forward to discussing these and other proposals with you on April 14.

Sincerely yours,

Geoff Howard

cc:   Kieran Ringgenberg
       Fred Norton
       Stacey Phan
       Eric Buresh
       Rhonda Sexton
       Megan Redmond
       Tom Hixson
       Kristen Palumbo



www.shb.com

**Robert H. Reckers**

JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston
Texas 77002-2992
713.227.8008
713.227.9508 Fax
rreckers@shb.com

April 18, 2011

<u>**VIA E-MAIL**</u>

Geoffrey M. Howard
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
geoff.howard@bingham.com

Re:   *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin*
       Case No. 2:10-cv-0106-LRH-PAL (D. Nev. filed Jan. 25th, 2010)

Dear Geoff:

As a follow-up to the parties meet-and-confer on April 14, 2010, I write to memorialize the proposals set forth by Rimini, as well as Rimini's responses to Oracle's proposals.

First, Rimini proposed bifurcating the case into separate phases to address liability and damages. More specifically, Rimini proposed that the parties complete their liability discovery within the time frame set by the Court's current schedule and then proceed to expert discovery and trial on the liability issues. If liability is established, the case will proceed to damages discovery and then a damages trial. We noted that such a bifurcation would save both time and expenses related to damages discovery, expert reports, and expert discovery that potentially need not be incurred. You indicated Oracle would not agree to such a proposal. Please confirm.

Second, Rimini proposed that Oracle identify exemplary instances of the allegedly improper acts or conduct it intends to present at trial. As we discussed, such exemplary acts can reasonably be considered liability "test cases." To account for the license-based defenses at issue, such exemplary acts will need to span across a spectrum of relevant license agreements. To facilitate this exercise, Rimini will define a representative set of licenses, as further detailed below. Once Oracle has specified its exemplary acts, Rimini will identify which of the defined acts are consistent with Rimini's business practices and/or procedures and which acts represent isolated incidents such as a mistake or a deviation from the accepted practices. For conduct representing Rimini's business processes/procedures, Rimini proposed that the parties negotiate the scope of injunctive relief that would be entered if Oracle establishes liability with respect to such conduct. Such an agreement on the conduct reflecting Rimini's business practices and procedures would, of course, create efficiencies with respect to both liability and damages.

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.



www.shb.com

April 18, 2011
Page 2

Third, Rimini proposed that the parties attempt to resolve the non-copyright claims arising from Rimini's past use of automated download tools in the interest of reducing the issues in dispute and streamlining the litigation. While Rimini does not and will not admit liability on such claims, Rimini would be amenable to negotiating an agreed upon injunction and associated terms of resolution.  Given that these alleged acts are not part of Rimini's ongoing business and have not been for several years, it seems this may be a fruitful area to explore for purposes of narrowing the litigation.

With respect to the proposals Oracle offered in your letter of April 8, 2011, we confirmed that Rimini would work with Oracle to identify the number of copies of the registered Oracle works on Rimini's system.  On this issue, you requested Rimini reconsider whether it would contend that a registration for a given release includes only the incremental changes from a prior release.  While we continue to believe that the subsequent registrations only cover the incremental changes, we also appreciate the efficiencies that would gained by an agreement that a registration of one version of Oracle software covers the protected expression found in previous versions.  In light of such efficiencies, Rimini will stipulate to Oracle's proposal and would request that Oracle similarly stipulate that a license to one version of Oracle software covers the protected expression found in the previous versions. Obviously, such a stipulation implicates the same issues and efficiencies as Oracle's requested agreement regarding registrations.

Your letter also proposed that the parties agree to a representative sampling of client licenses and Rimini-generated updates and fixes.  With respect to the client licenses, Rimini will begin creating a proposed sample set, and we expect to provide Oracle this set by the next meet-and-confer.  With respect to the Rimini-generated updates and fixes, Rimini contends that the better approach is to define the exemplary acts that form the basis of Oracle's claims, as described above.

We tentatively set the next conference for April 26 in San Francisco.  However, if we can agree to move forward on these proposals, we recognize that the parties may need more time to define, for example, license samples and exemplary acts corresponding thereto.  Accordingly, we will remain flexible to scheduling of the next conference.

Sincerely,

*/s/Robert H. Reckers*

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

# BINGHAM

John A. Polito
Direct Phone:  415.393.2314
Direct Fax:     415.393.2286
john.polito@bingham.com

April 22, 2011

**Via Electronic Mail**

Robert H. Reckers, Esq.
Shook, Hardy & Bacon LLP
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, TX 77002

Re:   *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin*
       **Case No. 2:10-cv-00106 (D. Nev.)**

Dear Rob:

This letter responds to your letter of April 18 regarding the parties' ongoing efforts to
find ways to make this litigation more efficient and manageable, as suggested by the
Court's 3/29/2011 Order, Dkt. 133.

**Bifurcation and staging**

Rimini Street has proposed that "the parties complete their liability discovery within the
time frame set by the Court's current schedule and then proceed to expert discovery and
trial on the liability issues.  If liability is established, the case will proceed to damages
discovery and then a damages trial."  Rimini Street has further proposed that Oracle's
remedies arising from the first trial would be limited to "negotiate[d] injunctive relief,"
and then only as to acts or conduct that Rimini Street unilaterally designates as
"consistent with Rimini's business practices and/or procedures"

As was discussed at the parties' in-person meeting on April 14, Oracle believes that
having two trials would be inefficient because much of the same evidence that is relevant
to liability (and to equitable relief) is relevant to damages.  Such a process would extend
the overall litigation without any meaningful benefit.  It is unrealistic to expect that a
damages trial could be avoided, given that your client does not seriously contest certain
acts of copying outside the scope of any conceivable license.  The best you can say is that
they are "mistakes" that do not reflect Rimini Street's regular business practices.  While
we disagree with that characterization, in any event those "mistakes" are acts of
infringement and a damages trial would be necessary.

However, Oracle does believe that some staging of discovery would yield efficiencies.  In
particular, Oracle suggests that the parties stipulate that the disclosure of expert damages
reports be deferred until after the Court's ruling on dispositive motions.

**Identification of sample licenses; Oracle's response to Interrogatory No. 11**

Your letter proposes that Rimini Street would identify what Rimini Street characterizes as
"a representative set of licenses."  In light of this proposal, Oracle proposes at this time
that the scope of any updated response by Oracle to Rimini Street's Interrogatory No. 11

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

Robert H. Reckers, Esq.
April 22, 2011
Page 2

be a topic for the parties' ongoing meet and confer, in coordination with the parties'
discussion of a sample set of licenses.

**Resolution of non-copyright claims**

Rimini Street has proposed that "Rimini would be amenable to negotiating an agreed
upon injunction and associated terms of resolution" regarding "the non-copyright claims
arising from Rimini's past use of automated download tools." As was suggested during
the in-person meet and confer on April 14, Oracle believes that Rimini Street should
stipulate to judgment based on the undisputed evidence of improper downloading. At
this time, Oracle therefore declines Rimini Street's suggestion that Oracle drop its non-
copyright claims in return for a stipulated injunction absent an agreement to entry of
judgment.

Oracle will continue to consider whether alternative forms of relief might be sufficient to
resolve these claims, and will be prepared to discuss this matter further at our next
meeting

**Stipulation with regard to derivative works**

Oracle acknowledges Rimini Street's agreement to stipulate that "a registration of one
version of Oracle software covers the protected expression found in previous versions."
Rimini Street has requested that Oracle agreed to stipulate that "a license to one version
of Oracle software covers the protected expression found in the previous versions." In
the interest of streamlining the issues for trial, Oracle is willing to agree to stipulate, for
purposes of this litigation only, that a customer's license to a version of Oracle's
PeopleSoft-branded, J.D. Edwards-branded, or Siebel-branded software, or to Oracle
database software, includes a limited and nonexclusive license, subject to the terms and
conditions stated in the customer's license, to the copyrights embodied in that software,
which may include a license to protected expression that would have been found in
previous versions of the software. For the avoidance of doubt, the stipulation would not
alter the scope, meaning or application of the license terms as they relate to Rimini's
conduct except regarding their application to the code licensed through them to the
customer. Oracle does not concede that this is a proper interpretation of Oracle's licenses
absent such a stipulation.

**Representative instances of copying**

Rimini Street has proposed that Oracle identify a representative sample of "allegedly
improper acts or conduct" to be tested during an initial stage of litigation, as referenced
above. Geoff Howard's April 8 letter enumerated seven categories of Rimini Street's
acts and conduct that constituted reproduction, distribution and creation of derivative
works with respect to Oracle's software and support materials. During our April 14
meeting, the parties conditionally condensed those seven categories down to four: local
environments, downloading, Rimini Street's development process, and copies of Oracle
database. These categories of improper acts and conduct are discussed in turn below.

Robert H. Reckers, Esq.
April 22, 2011
Page 3

*Local environments*

As referenced above, Rimini Street has suggested that Oracle identify a representative
sample of "allegedly improper acts or conduct" to be tested during an initial stage of
litigation.  Examples of relevant acts and conduct include the following:

- creation of any given environment either from install media or a copy of another
  environment that was ultimately created from install media;

- reproduction of install media, either by burning a physical copy of install media
  or by copying install media electronically;

- modification of environments by application of service packs, maintenance
  packs, cumulative updates, tax and regulatory updates, and other patches from
  Oracle and other sources;

- reproduction of the environments by creating backups, either directly or through
  the backup of the server or virtual machine containing the environment;

- reproduction of the backups of environments;

- copying of the environments into RAM every time they were loaded for use;

- distribution of copies of environments to customers or to third parties.

Furthermore, were Rimini Street permitted to assert a customer's license as a defense, the
same license (absent cross-use) would apply to all of these behaviors:  creation from
install media, reproduction of install media, modification through application of patches,
copying of environments, loading of environments into RAM, and distribution of
environments.

Oracle will propose a representative sample of environments and proposes that the parties
litigate concerning Rimini Street's acts and conduct related to those environments.
Oracle proposes to examine all of the reproductions of, distributions of, and creations of
derivative works from a small number of environments; for simplicity's sake, the install
media used to create the chosen environments would be analyzed, as well, rather than
choosing a separate representative sample of install media.  Rimini Street would then
identify the license provisions it believed excused each of the reproductions, distributions
and creations of derivative work.  Should Rimini Street continue to assert any of its other
defenses that remain, these defenses could be tested with respect to the reproductions of,
distributions of, and creations of derivative works from each environment.

Regarding the population from which to select environments to be examined, your letter
dated December 21, 2010 enclosed a list of 271 PeopleSoft, 9 J.D. Edwards and 124
Siebel environments presently hosted on Rimini Street's computer systems.  Additional
environments continue to be disclosed as discovery progresses, such as when new clients
engage Rimini Street.

To advance the parties' meet and confer, Oracle requests that Rimini Street affirmatively
identify the version or versions of Oracle's PeopleSoft-branded, JD Edwards-branded and
Siebel-branded software that correspond to each of these environments, and that Rimini
Street also identify the latest Oracle-provided service packs, maintenance packs,

Robert H. Reckers, Esq.
April 22, 2011
Page 4

cumulative updates, tax and regulatory updates, or other patches applied to each of these environments. Oracle will then be able to identify with specificity those of Oracle's registered copyrights that have been reproduced in each environment. Oracle further proposes that the parties agree to extrapolate any analysis on the environment on this list to any environments not on this list (for example, local environments created after the generation of the environment list).

In the alternative, Oracle proposes that Rimini Street agree that the local environments on Rimini Street's computer systems, in the aggregate, constitute reproductions of all of Oracle's registered copyrights-in-suit.

*Development process -- PeopleSoft fixes*

As was discussed at the April 14 meeting, Oracle has focused its discovery on Rimini Street's support of PeopleSoft-branded Oracle software. At this time, therefore, Oracle's proposal with respect to development processes is limited to Rimini Street's generation of PeopleSoft fixes, where "generation" is a term that includes but is not limited to the development, testing, packaging, distribution, and application of fixes.

As is undisputed, fixes are developed and tested using particular environments. As cannot be reasonably disputed, the vast majority of fixes contain copies of Oracle's copyrighted software, either in the form of individual objects or in the form of portions of Oracle's PeopleSoft-specific database schema, or both.

As referenced above, Rimini Street has suggested that Oracle identify a representative sample of "allegedly improper acts or conduct" to be tested during an initial stage of litigation. Examples of relevant acts and conduct include the following:

- distribution of fixes to customers, including to customers for which no development or individual-fix testing occurred;

- distribution of fixes to third parties, including prospective customers;

- creation of fix documentation, including through copying of all or part of documentation originally created by Oracle or PeopleSoft;

- reproduction of fixes, and of objects associated with fixes, within Rimini Street's computer systems;

- application of a fix to any environment (whether a customer environment or a local environment hosted on Rimini Street's computer systems), resulting in creation of a derivative work.

Again, were Rimini Street permitted to assert a customer's license as a defense, the same license would apply to all of these behaviors: cross-use of local environments for development, cross-use of local environments for individual-fix testing, copying of Oracle's source code, copying of Oracle's database schema, copying of Oracle's documentation, internal reproduction of fixes, distribution of fixes, and creation of derivative works through application of fixes to environments.

Robert H. Reckers, Esq.
April 22, 2011
Page 5

Oracle will propose a representative sample of Rimini Street's fixes for Oracle's PeopleSoft-branded software, and proposes that the parties litigate concerning Rimini Street's acts and conduct related to those fixes. Oracle proposes to examine all of the reproductions of, distributions of, and creations of derivative works from that small number of fixes, including all related cross-use of environments that occurred during the development of those fixes. Rimini Street would then identify the license provisions it believed excused each of the reproductions, distributions and creations of derivative work. Should Rimini Street continue to assert any of its other defenses that remain, these defenses could be tested with respect to the reproductions of, distributions of, and creations of derivative works relating to each fix.

Regarding the population from which to select PeopleSoft fixes to be examined, Rimini Street has not provided a complete list of the fixes that Rimini Street has generated. The contents of DevTrack continue to change as Rimini Street generates new PeopleSoft fixes; furthermore, DevTrack contains neither fixes that predate the implementation of DevTrack in early 2008 nor certain fixes identified with prefix "PAY" generated after the implementation of DevTrack. So that we can better discuss the selection of a possible sample, Oracle requests that Rimini Street provide a complete list of the PeopleSoft fixes generated by Rimini Street through April 1, 2011, and that the parties agree to extrapolate any analysis on the listed fixes to all fixes not on the list, including any fixes generated between April 1, 2011 and trial.

To identify the registered copyrights associated with any given fix, Oracle must know the environments that were the sources of the SQR, SQC, and COBOL files modified to create to fix, and the environments that contain the database components used to generate or modify the online objects and DAT files related to the fix. Identification of the copyrights-in-suit associated with the selected fixes must therefore be delayed until Oracle has further analyzed those fixes.

*Downloads*

Oracle's understanding is that Rimini Street has downloaded all or essentially all other materials for Oracle's PeopleSoft-, J.D. Edwards-, and Siebel-branded software that are or were available through Oracle's technical websites. Oracle's position is therefore that these downloads include reproductions of all of Oracle's registered works, either directly in the form of downloads or indirectly in that aggregation of a number of downloads is a de facto reproduction of a cumulative update, maintenance pack, service pack or upgrade. Oracle thus proposes that Rimini Street stipulate to having downloaded copies of software and support materials embodying all of Oracle's registered copyrights-in-suit for PeopleSoft, J.D. Edwards and Siebel software and support materials.

In addition to any initial downloading, discovery has shown that Rimini Street has internally copied its downloads, for instance from the client archives in progress to the client archives.

Oracle proposes that it identify a representative set of client archives, and that the sole analysis to be performed with respect to Oracle's copyright claim would be to determine, if Rimini Street were permitted to assert customer licenses as a defense, whether that client's archives contained only reproductions excused by the license, and whether the

Robert H. Reckers, Esq.
April 22, 2011
Page 6

license excused any internal copying that preceded creation of the archives.  Should
Rimini Street continue to assert any of its other defenses that remain, these defenses
could be tested with respect to these reproductions.

*Oracle database*

Rimini Street's responses to Oracle's third set of interrogatories list an inventory of the
database installations and install media currently present on Rimini Street's computer
systems.  This list identifies certain installations as "presently unknown" versions, and
does not include former versions.  Nonetheless, the list as presented includes
reproductions of all of Oracle's registered copyrights for Oracle database software that
will be added to the Second Amended Complaint, and Oracle requests that Rimini Street
so stipulate.

In addition to the inventory of database installations and install media, discovery has
shown that Rimini Street regularly copies its virtual machines (for instance, by backing
up virtual machines, by restoring backups of virtual machines) and thus copies the
databases contained within those virtual machines.  Rimini Street further copies Oracle
database software into RAM every time the databases are used.

Oracle proposes that it identify a representative set of database installations and install
media, and that the sole analysis to be performed with respect to Oracle's copyright claim
would be to determine, if Rimini Street were permitted to assert either customer licenses
or the developer license as a defense, whether the database installations and copies of
install media were excused by the license, and whether the license excused any internal
copying and RAM copying of these installations and install media.  Should Rimini Street
continue to assert any of its other defenses that remain, these defenses could be tested
with respect to these reproductions of the software.

**Timing of the next meet and confer**

Oracle proposes that the parties meet as had been tentatively scheduled, at 9 a.m. PDT on
April 26 at Bingham McCutchen's San Francisco office.

**Other outstanding issues**

As stated in Geoff Howard's April 19 e-mail to you, Oracle is still waiting for Defendants
to respond to Oracle's proposal to aggregate hours towards a deposition slot for purposes
of the customer depositions we have indicated we'd like to commence or, as an interim

Robert H. Reckers, Esq.
April 22, 2011
Page 7

measure, that Defendants agree that customer deposition record time of up to 7 hours
(even if comprised of more than one witness) would count as one deposition for purposes
of the current restrictions.

Sincerely yours,

John Polito

cc:    Kieran Ringgenberg
        Fred Norton
        Stacey Phan
        Eric Buresh
        Rhonda Sexton
        Megan Redmond
        Tom Hixson
        Kristen Palumbo
        Geoff Howard



www.shb.com

**Robert H. Reckers**

May 3, 2011

JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston
Texas 77002-2992
713.227.8008
713.227.9508 Fax
rreckers@shb.com

**VIA E-MAIL**

John A. Polito
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
john.polito@bingham.com

Re:  *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin*
     Case No. 2:10-cv-0106-LRH-PAL (D. Nev. filed Jan. 25th, 2010)

Dear John:

This letter responds to your letter of April 22, 2011 and is a follow up to the parties' meet-and-confer on April 26.

**Bifurcation and Staging**:

For the reasons set forth in my letter of April 18, Rimini maintains its position that the litigation should be divided into a liability phase and a damages phase. While Rimini's bifurcation proposal seeks prompt adjudication of liability issues and Oracle's requests for injunctive relief, Oracle's proposal that expert damages discovery be deferred until after the Court's ruling on dispositive motions would serve to delay trial on all issues with, at best, a minimal reduction of discovery. As such, Rimini does not see the proposed deferral of expert damages as furthering the aims of streamlining this litigation, and Rimini is not agreeable to Oracle's proposal in this regard.

**Identification of Sample Licenses:**

Consistent with the proposal in Mr. Howard's letter of April 8, the parties seemingly are in agreement that certain efficiencies would be achieved if the parties were to agree on a set of licenses to represent the entire set of relevant customer licenses. As discussed during our conference on April 26, Rimini proposes these licenses be chosen by randomly selecting Rimini customers for each product line and then identifying the licenses for each of the selected customers. To ensure the set of licenses includes the key provisions the parties intend to litigate, we discussed looking to the parties' respective interrogatory responses, namely Oracle's response to Rimini's Interrogatory No. 11 (providing exemplary contractual terms Oracle alleges that Rimini violated) and Rimini's response to Oracle's Interrogatory No. 15 (providing exemplary contractual terms Rimini contends supports its license defense). Once the sample set of licenses is established through random sampling and through inclusion of licenses identified in interrogatory

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.



www.shb.com

responses, Rimini's license defenses relying of the customer ERP licenses would rise or fall though litigation of the terms found in the identified set.

While the parties will need time to supplement their interrogatory responses (and recognizing that additional details may need to be discussed between the parties), Rimini proposes that the parties begin the process of randomly selecting the customers to be included in the sample, as well as the identifying the licenses for these customers. We suggest including 25 PeopleSoft customers, 10 JD Edwards customers and 10 Siebel customers. Once the customers are selected, Rimini proposes that Oracle identify the licenses for the selected customers by Bates number. Once such identification is complete, the parties can evaluate the license set to determine what additional licenses should be added based on the interrogatory responses.

**Representative Instances of Copying:**

*Local Environments and Development Process:*

Your letter requests that Rimini Street identify the version(s) of Oracle ERP software corresponding to each of its local environments, as well as service/maintenance packs, updates and patches. Rimini will supplement its environment list to provide such information that can readily be obtained.

Your letter further requests a complete list of updates/fixes Rimini has generated. Rimini will agree to provide the requested list, though I note this information can be found on Rimini's FTP drive.

Your letter also requests that Rimini agree to extrapolate any analysis for the disclosed environments and updates to any undisclosed environments/updates (e.g., recently created items). While Rimini does not agree that such extrapolation is appropriate, Rimini will agree to seasonally update its environment list at least through the discovery time frame and as necessary thereafter.

In addition, your letter requests Rimini identify the sources of the SQR, SQC and COBOL files modified to create each Rimini-generated fix. As clarified during our conference, I believe you are asking for the sources for the "code before" development folders. Rimini will produce the log files from its CreateUpdateFolders utility, which reflect the requested information. Your letter also requests the database components used to generate or modify online objects and DAT files related to the fix. These database components are indicated on the DAT files within the development folders Rimini has already produced. Though certain database tags are typically removed by Rimini during packaging, the unmodified versions are still found in the development folders (as opposed to the delivered object folders).

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.



Shook,
Hardy &
Bacon L.L.P.

www.shb.com

May 3, 2011
Page 3

*Download and Databases*:

In your letter, Oracle requests that Rimini stipulate to having downloaded at least one copy of the software and support material embodying each of Oracle's registered copyrights-in-suit for PeopleSoft, J.D. Edwards and Siebel. Likewise, Oracle proposes Rimini stipulate that Rimini has at least one copy of the database software for each copyright registration that will be added to the Second Amended Complaint. Rimini will agree to the requested stipulation for the database software but presently cannot do so for the downloaded material. First, Rimini does not believe that software or support material corresponding to each of the registrations was ever made available by Oracle for download. Second, Rimini has not been able to identify software or support material in its archive corresponding to each of the Oracle registrations-in-suit. Note, it is difficult to discern the Oracle product corresponding to many of the older registrations in Oracle's complaint. Given these two issues, Rimini proposes that Oracle identify at least one downloaded item in Rimini's client archives corresponding to each of its registrations-in-suit. To the extent Rimini agrees there is indeed software and support material in its archives embodying each of Oracle's registered copyrights-in-suit for PeopleSoft, J.D. Edwards and Siebel, Rimini will make the requested stipulation.

**Customer Depositions:**

As you know, Rimini has long maintained that any hour-based deposition limits are inappropriate given the real possibility that Oracle would notice an excessive number of depositions. For this reason, Rimini cannot accept the hour-based proposals set forth in your letter of April 22. In the spirit of compromise, however, Rimini will agree that the parties may take up to six customer depositions that will not count against the Court-imposed limit of 20 depositions.

Given the already extensive party and non-party discovery regarding Rimini's customers, six additional depositions (totaling up to 42 hours) will allow Oracle to garner more than a sufficient amount of customer testimony. For instance, Oracle could depose two customers for each of the relevant ERP product lines. Any further customer depositions would be cumulative and duplicative, and, thus, Rimini remains strongly opposed to any further expansion of the Court's discovery limits beyond the six customer depositions offered herein.

Sincerely,

*/s/Robert H. Reckers*

Geneva
Houston
Kansas City
London
Miami
Orange County
San Francisco
Tampa
Washington, D.C.

333312 v1

# BINGHAM

John A. Polito
Direct Phone: 415.393.2314
Direct Fax:    415.393.2286
john.polito@bingham.com

May 4, 2011

**Via Electronic Mail**

Robert H. Reckers, Esq.
Shook, Hardy & Bacon LLP
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, TX 77002

**Re:** *Oracle USA, Inc. et al. v. Rimini Street, Inc. and Seth Ravin*
**Case No. 2:10-cv-00106 (D. Nev.)**

Dear Rob:

Oracle is in receipt of your letter dated May 3, 2011. We have several questions that we
believe would be best handled through further meet and confer; to that end, I have
separately e-mailed you to propose a conference call for either May 5 or May 6.

In advance of that proposed call, I write seeking clarification of two of Defendants'
statements in the last paragraph on page 2 of your May 3 letter. First, what are the
development folders to which you refer in your statement that "the unmodified versions
[of DAT files] are still found in the development folders"? As you are aware, the REM
Database line is not consistently present in the DAT files found on HRMS Development.
By way of example, the REM Database line was removed for DAT files in HCM100373,
HCM101391 and HCM101420, which are three of the six fixes identified in Oracle's
Third Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6). *See, e.g.*, Deposition of
Beth Lester Pursuant to Fed. R. Civ. P. 30(b)(6), 3/17/2011, at 45:19-46:6
(acknowledging that the REM Database line was not present in Depo. Ex. 65, a DAT file
for the HCM101420 found on HRMS Development). Please identify the development
folders that contain unmodified DAT files to which you are referring.

Second, you note that my April 22 letter requested that Defendants "identify the sources
of the SQR, SQC and COBOL files modified to create each Rimini-generated fix." You
then state that "I believe you are asking for the sources for the 'code before' development
folders." To clarify, Oracle is asking how to determine the sources for the "code after"
folders, which contain code that is frequently delivered to multiple customers. *See, e.g.,*
*id.* at 168:17-169:14 (explaining a portion of the content of the second page of Depo.
Ex. 78 as indicating that customers "COM, EXP, IGN, KCH, LBI, OAI, and HHG" each
received "a copy of that same [code] that would be located in the code-after folder").

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

+1.415.393.2000
+1.415.393.2286
bingham.com

Robert H. Reckers, Esq.
May 4, 2011
Page 2

Our understanding is that CreateUpdateFolders, the utility to which your letter refers, creates only the copies in the "code before" folders. *See* Deposition of Susan Tahtaras, 4/27/2011, at 224:19-225:10. Please confirm whether Rimini Street agrees to identify the source environments for the materials in the "code after" folders.

Sincerely yours,

John Polito

cc:   Kieran Ringgenberg
      Fred Norton
      Stacey Phan
      Eric Buresh
      Jeff Glidewell
      Geoff Howard
      Tom Hixson
      Kristen Palumbo

| **From:** | Reckers, Robert H. (SHB) [RRECKERS@shb.com] |
|---|---|
| **Sent:** | Friday, May 06, 2011 8:48 AM |
| **To:** | Polito, John A. |
| **Cc:** | Buresh, Eric A. (SHB); Glidewell, Jeff O. (SHB); Hixson, Thomas S.; Palumbo, Kristen A.; 'Kieran Ringgenberg'; 'Fred Norton'; 'Stacey Phan'; Howard, Geoff |

**Subject:** RE: Oracle USA Inc. at al. v. Rimini Street, Inc. and Seth Ravin:

John,

This is in response to your letter of May 4, which requests clarification on two items mentioned in my letter of May 3.

First, your letter requests further information regarding the development folders that contain the unmodified DAT files.  These development folders were produced to Oracle in archive folders organized by year.  For each update, the folder structure will have a folder corresponding to each individual Update ID contained in the update.  For update ids that contain DAT files, there should a sub-folder titled "Data" in the update id's folder structure.   The unmodified DAT files should be found in the subfolders under the "Data" folder.

Second, your letter asks "how to determine the sources for the 'code after' folders, which contain code that is frequently delivered to multiple customers." Having investigated, Rimini does not maintain source information for the "code after" folders beyond what is found in the CreateUpdate Folder logs.

Please let us know if you need further clarification on either of these points,

Rob

---

**From:** Polito, John A. [mailto:john.polito@bingham.com]
**Sent:** Wednesday, May 04, 2011 6:35 PM
**To:** Reckers, Robert H. (SHB)
**Cc:** Buresh, Eric A. (SHB); Glidewell, Jeff O. (SHB); Hixson, Thomas S.; Palumbo, Kristen A.; 'Kieran Ringgenberg'; 'Fred Norton'; 'Stacey Phan'; Howard, Geoff
**Subject:** RE: Oracle USA Inc. at al. v. Rimini Street, Inc. and Seth Ravin:

Counsel,

Please see the attached correspondence.  Also, please let me know your availability for a meet and confer call either tomorrow afternoon at 2 PM PT / 4 PM CT or Friday afternoon after 1 PM PT.
Regards,
John Polito

John A. Polito
*Associate*
**T** 415.393.2314
**F** 415.393.2286
john.polito@bingham.com

**B I N G H A M**
Bingham McCutchen LLP
Three Embarcadero Center

5/12/2011

San Francisco, CA 94111-4067

---

**From:** Reckers, Robert H. (SHB) [mailto:RRECKERS@shb.com]
**Sent:** Tuesday, May 03, 2011 8:23 PM
**To:** Polito, John A.; Hixson, Thomas S.; Palumbo, Kristen A.; 'Kieran Ringgenberg'; 'Fred Norton'; 'Stacey Phan'; Howard, Geoff
**Cc:** Buresh, Eric A. (SHB); Glidewell, Jeff O. (SHB)
**Subject:** RE: Oracle USA Inc. at al. v. Rimini Street, Inc. and Seth Ravin:

Please see the attached correspondence.

Rob Reckers
Shook, Hardy & Bacon L.L.P.
600 Travis, Suite 1600
Houston, Texas 77002-2911
(713) - 227 - 8008
rreckers@shb.com

Mail Gate made the following annotations on Tue May 03 2011 22:19:25

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

---

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

Mail Gate made the following annotations on Fri May 06 2011 10:47:39

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

5/12/2011