BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATRION, a California corporation,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual<br><br>　　　　Defendants. | Case No. 2: 10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY CEDARCRESTONE, INC. TO PRODUCE DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: August 5, 2011<br>Time: 10:00 a.m.<br>Judge: Magistrate Peggy A. Leen<br>Place: Courtroom 3B<br>Fact Discovery Cut-off: October 3, 2011 |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 5, 2011, at 10:00 a.m., in the above-listed Court, Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle") will and do hereby move to compel non-party CedarCrestone, Inc. ("CedarCrestone") to produce the documents and information described below.

This motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Chad Russell, the pleadings on file in this action, and on such other matters presented to the Court at the time of any hearing.

# RELIEF SOUGHT

Pursuant to Fed. R. Civ. Proc. 37 and 45, Oracle seeks an order compelling the production of documents by CedarCrestone[1] concerning its business model as it relates to accessing and use of Oracle software, and related support materials, and the representations made to its customers regarding the scope of the services it provides.

DATED:  June 30, 2011                    BINGHAM McCUTCHEN LLP

By:   */s/ Geoff M. Howard*
Geoff M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc. and Oracle International Corp.

---

[1] Pursuant to Fed. R. Civ. P. 37(a) and Local Rule 26-7, Oracle's counsel affirms that they have conferred with counsel for CedarCrestone in a good faith effort to reach agreement about this matter, including through the exchange of multiple letters and telephone calls.  *See* Declaration of Chad Russell in Support of Motion to Compel ("Russell Decl."), ¶¶ 2, 4-12 & Exs. B-J.

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 4

    A. The Litigation .................................................................................................... 4

    B. The Stipulated Protective Order ........................................................................ 4

    C. Oracle's Unsuccessful Attempts to Seek Discovery From CedarCrestone ........... 5

III. ARGUMENT .................................................................................................................. 8

    A. Foundational Information About CedarCrestone's Business Model Is Relevant And Does Not Impose An Undue Burden ............................................... 8

    B. CedarCrestone Has Waived Its Right To Object to Oracle's Subpoena ............... 8

    C. The Stipulated Protective Order Adequately Protects CedarCrestone's Interests, And CedarCrestone's Alternative Is Unreasonable ............................... 9

IV. CONCLUSION ............................................................................................................. 12

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*,
178 F.3d 943 (7th Cir. 1999) ................................................................................ 3, 9, 10

*Covelo Clothing Inc. v. Atlandia Imports, Inc.*,
2007 WL 4287731 (D.Colo. Dec. 4, 2007) .................................................................. 9

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ................................................................................... 10

*G.K. Las Vegas Ltd Partnership v. Simon Property Group, Inc.*
2008 WL 5083700 (D.Nev. 2008) ............................................................................... 8

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) ................................................................................. 8

*McCoy v. Southwest Airlines Co., Inc.*,
211 F.R.D. 381 (C.D. Cal. 2002) ................................................................................. 9

*Simon Design Eng. LLC v. W & W Steel LLC*,
2010 WL 2872573 (D. Nev. 2010) .............................................................................. 9

*U.S. E.E.O.C. v. Caesars Entertainment, Inc.*,
237 F.R.D. 428 (D.Nev. 2006) ..................................................................................... 8

*Van v. Wal-Mart Stores, Inc.*,
2011 WL 62499 (N.D. Cal. Jan. 7, 2011) .................................................................. 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................................ 8

Fed. R. Civ. P. 26(b) ........................................................................................................... 8

Fed. R. Civ. P. 26(b)(1) ...................................................................................................... 8

Fed. R. Civ. P. 26(c) ......................................................................................................... 10

Fed. R. Civ. P. 45 ........................................................................................................... 6, 9

Fed. R. Civ. P. 45(c) ........................................................................................................... 5

Fed. R. Civ. P. 45(c)(2)(B) ......................................................................................... passim

ii

PLAINTIFF'S MOTION TO COMPEL NON-PARTY CEDARCRESTONE, INC TO PRODUCE
DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | **I.    INTRODUCTION** |

Oracle moves to compel discovery from non-party CedarCrestone because information only in CedarCrestone's possession bears directly on liability, causation and damages issues in this case. CedarCrestone holds itself out as a support provider for customers who have licensed Oracle's PeopleSoft-brand software applications. From the beginning of this case, Defendant Rimini Street, Inc. ("Rimini") has contended that CedarCrestone's business model is highly relevant to the arguments that Rimini plans to advance at trial. Rimini contends that the existence of third-party support providers such as CedarCrestone undercuts Oracle's claimed damages for lost profits, on the theory that some of the customers Rimini took from Oracle might have been lost anyway, *i.e.*, to CedarCrestone. Rimini also contends that its own business model comports with standard industry practices, citing CedarCrestone by name as an example of these practices. Oracle maintains that Rimini's arguments are without merit for numerous reasons, including that Rimini's predictions of what customers might have done in a world without Rimini is mere speculation, that the services CedarCrestone provides are dissimilar to what Rimini provides, and that as a legal matter, to the extent CedarCrestone is also a copyright infringer, case law does not allow one infringer to break the chain of causation for lost profits damages caused by another infringer.

To make those arguments – and refute Rimini's contentions – Oracle requires evidence. Accordingly, Oracle served a subpoena on CedarCrestone for documents relating to its software support services. *See* Russell Decl., Ex. A. (the subpoena).

CedarCrestone did not serve any timely objections. Meet and confer then consumed months as Oracle attempted informally to resolve various production concerns. After CedarCrestone's latest proposal this week, Oracle has no choice but to seek judicial assistance to require the production so that Oracle can depose CedarCrestone without further prejudice to its trial preparation.

This week for the first time, as a condition to producing documents it concedes are relevant, CedarCrestone insisted that Oracle agree to a "supplemental" protective order because

1  the protective order entered by the Court is inadequate.  The "supplemental" protective order
2  would authorize CedarCrestone to designate every non-public document in its possession at *the*
3  *highest level of confidentiality (i.e., restricted to attorneys eyes only access)*; would shift the
4  burden to Oracle to prove that a document is *not* "highly confidential," rather than keeping the
5  burden on CedarCrestone to prove that it *is*; and would impose burdensome and impractical
6  restrictions on Oracle's ability to use any of these "highly confidential" documents.  *See* Russell
7  Decl., Ex. I.  (CedarCrestone's proposed supplemental protective order).  For example, under
8  CedarCrestone's proposal, Oracle would have to give 10 days' advance written notice by email
9  and overnight mail before Oracle could show a "highly confidential" CedarCrestone document to
10 a witness at a deposition.  *Id*. ¶ 3.  The notice would have to list every single "highly
11 confidential" document by Bates number (and include a copy of all such documents) that Oracle
12 would show the witness, and would have to include the witness's resume.  *Id.*  The
13 "supplemental" protective order goes on to set forth an elaborate meet and confer process and
14 briefing schedule that would force Oracle to postpone the deposition to wait for a ruling – all just
15 to use a document in a deposition.  *Id.*  The "supplemental" protective order would establish
16 similar burdensome requirements for Oracle to show "highly confidential" documents to an
17 expert, to use them in Court, or to use before the Court of Appeal.  *Id*. ¶¶ 4, 5, 6, 8.  Furthermore,
18 the "supplemental" protective order does not permit Oracle even to disclose CedarCrestone's
19 "highly confidential" documents *to Rimini or to Rimini's counsel*.  *Id.*, ¶ 2(a).  Instead,
20 CedarCrestone represents that it is negotiating a separate "supplemental" protective order with
21 Rimini.  Russell Decl., Ex. J (June 28 email).  Finally, CedarCrestone proposes largely to take
22 away this Court's power to enforce the Stipulated Protective Order, by requiring witnesses,
23 experts, consultants, and vendors, to submit to the jurisdiction of the Northern District of
24 Georgia with respect to enforcing both CedarCrestone's "supplement" *and* the Stipulated
25 Protective Order.  *Id.*, ¶¶ 2(a), 2(d), 4.
26      Every part of CedarCrestone's proposal is inappropriate, and when viewed together they
27 are worse.  Since CedarCrestone proposes to redefine "highly confidential" to include essentially
28 everything that is non-public, presumably CedarCrestone intends to designate all of its non-

1  public documents "highly confidential."  No other reason would explain redefining the term
2  "highly confidential" in that manner.  Doing so would then ensure that the inordinate burden
3  imposed by the procedures set forth in CedarCrestone's proposed "supplemental" protective
4  order would create an unmanageable quagmire for Oracle throughout discovery and trial and on
5  appeal.
6        The Court should order an immediate, full production in response to Oracle's subpoena
7  under the existing protective order.
8        *First*, CedarCrestone waived any objections to the production of documents when it
9  failed to object timely to Oracle's subpoena.  Oracle served its subpoena on February 14, 2011.
10  Under Rule 45(c)(2)(B), CedarCrestone had until February 28, fourteen days after Oracle served
11  the subpoena, to object.  CedarCrestone failed to so do.  As set forth in more detail below, it was
12  not until April 14, 2011 – approximately six weeks after CedarCrestone's deadline had run,
13  approximately one month after Oracle provided to CedarCrestone a copy of the existing
14  protective order  – that CedarCrestone served Oracle with written objections raising the issue of
15  confidentiality.
16        *Second*, CedarCrestone's proposed broad redefinition of "highly confidential"
17  information to include essentially every non-public document in its possession is improper.
18        *Third*, CedarCrestone's proposal that once it has designated a document "highly
19  confidential," the burden of establishing that the document is not entitled to that level of
20  protection should fall on Oracle contradicts Ninth Circuit case law.
21        *Fourth*, the specific procedures that CedarCrestone proposes to add to the Stipulated
22  Protective Order – specifically, the 10-day notice period to use a document in a deposition, in
23  briefing, at trial, in appellate argument or to give it to an expert, and the accompanying proposed
24  meet and confer and briefing schedules – unduly burden the parties and the Court.  The existing
25  procedures in the Stipulated Protective Order – agreed to between two competitors – fully protect
26  CedarCrestone's confidentiality concerns and have worked fine to date.
27        Accordingly, the Court should grant Oracle's motion to compel.
28

## II. FACTUAL BACKGROUND

### A. The Litigation

Oracle has sued Rimini and Defendant Seth Ravin over their large-scale theft of Oracle's intellectual property. *See, e.g.*, Second Amended Complaint ("SAC"), Dkt. 146 at ¶¶ 5, 6, 8, 9.

Rimini defends its practices by alleging, in part, that its possession of Oracle's copyrighted material is justified because it is "an industry standard for third party vendors like . . . *CedarCrestone*" to possess copies of Oracle's software and support materials. Rimini's Answer to Oracle's Second Amended Complaint and First Amended Counterclaim ("FACC"), Dkt. 153 at ¶ 5 (emphasis supplied). Rimini asserts as its Sixth Affirmative Defense that Oracle's claims are barred by an implied license created by the "custom and practice of the community." *Id.* at 26:12-18.

As part of Rimini's efforts to "aggressively defend" itself, Rimini is also pursuing two counterclaims against Oracle. *Id.* at ¶ 8. One of Rimini's counterclaims is for "defamation, business disparagement, and trade libel." *Id.* at ¶¶ 43-56. In support of this counterclaim, Rimini alleges that "it is common industry practice by other third party consulting venders such as . . . *CedarCrestone*, and virtually every other hosting service provider to possess and work with copies of their client's licensed software products." *Id.* at ¶ 54 (emphasis supplied).

Similarly, Rimini contends that the existence of third-party support providers such as CedarCrestone undercuts Oracle's claimed lost profits damages. Russell Decl., Ex. K, at 7 (December 16, 2010 letter from Rimini asserting that discovery concerning "certain third party support vendors, such as CedarCrestone" is appropriate because "the profits attributable to CedarCrestone's customers are still 'lost' to Oracle").

### B. The Stipulated Protective Order

On May 20, 2010, Oracle and Defendants submitted a Stipulated Protective Order to the Court for its consideration. Dkt. 53. The Stipulated Protective Order resulted from extensive negotiations between the parties involved in this contentious litigation.

Under the terms of the Stipulated Protective Order, non-parties like CedarCrestone can protect confidential and otherwise sensitive information sought through discovery in this action

to the same extent as the parties, by agreeing to the Order and by designating Discovery Material (as defined in the Order) as either "Confidential Information" or "Highly Confidential Information - Attorneys' Eyes Only." Stipulated Protective Order, Dkt. 55 at ¶ 2. Under the Stipulated Protective Order, "Confidential Information" includes a wide range of commercially or personally sensitive or proprietary non-public information. *Id.* at ¶ 3. The Stipulated Protective Order defines "Highly Confidential Information" to include "only extremely sensitive, highly confidential, non-public information, consisting either of trade secrets or other highly confidential documents related to current or future business plans, protocols or strategies, the disclosure of which ... would be likely to cause competitive or business injury." *Id.* at ¶ 4. Whether Discovery Material is designated "Confidential Information" or "Highly Confidential Information" impacts who can see Discovery Material, and under what circumstances.

On May 21, 2010, the Court entered the Stipulated Protective Order. The parties, as well as over 200 third parties who have already produced documents in this litigation in response to subpoenas issued by district courts across the country, have operated under the Stipulated Protective Order since that date without needing to seek additional confidentiality protection.

### C. Oracle's Unsuccessful Attempts to Seek Discovery From CedarCrestone

On February 14, 2011, Oracle served CedarCrestone with a subpoena seeking the production of foundational documents concerning CedarCrestone's business model. Russell Decl.,¶ 3, Ex. A. The full text of the subpoena is set forth as Exhibit A to the Russell Declaration, and includes the full text of Rule 45(c). The last day for CedarCrestone to serve objections to the subpoena was February 28. Fed. R. Civ. Proc. 45(c)(2)(B). Under the terms of the subpoena, production of documents was due on March 7, 2011. *Id.*

On March 7, 2011, the same day that CedarCrestone's production was due, but a week after the deadline to object had passed, Oracle received a three-sentence letter from CedarCrestone, stating, with no further explanation, that CedarCrestone "objects to the subpoena." *Id.* at ¶ 4, Ex. B. In response to this letter, Oracle contacted CedarCrestone by telephone and also provided CedarCrestone with a copy of the Stipulated Protective Order on

1  March 17.  *Id.*, ¶ 4.  On March 24, 2011 CedarCrestone produced seventeen documents in
2  response to Oracle's subpoena.  *Id.*, ¶ 5.  CedarCrestone did not request confidential treatment
3  for these documents, and did not reference or object to the Stipulated Protective Order that
4  Oracle provided the week before.  *Id.*, ¶ 5, Ex. C.  One of these documents included a list of
5  CedarCrestone customers.  *Id.*
6       On April 5, Oracle sent a letter to CedarCrestone continuing to seek compliance with the
7  subpoena and reminding CedarCrestone that it had waived any objections pursuant to Rule 45.
8  Russell Decl.,¶ 6, Ex. D.  CedarCrestone responded on April 14, asserting a host of objections in
9  an 18-page letter.  *Id.*, ¶ 7, Ex. E.  In this letter, CedarCrestone objected to certain of Oracle's
10 requests for documents as "calling for the production of trade secrets and proprietary
11 information," but made no reference to the Stipulated Protective Order Oracle had provided on
12 March 17.  *Id.*  Oracle responded by letter on May 8, 2011, stating again that CedarCrestone had
13 waived its objections, reminding CedarCrestone about the Stipulated Protective Order provided
14 over a month earlier, and stating that the Order would adequately protect CedarCrestone's
15 confidential information.  *Id.*, ¶ 8, Ex. F.  Oracle also volunteered, in an effort to work
16 cooperatively with CedarCrestone, to substantially narrow the scope of Oracle's discovery
17 requests while reserving all of its rights.  *Id.*  To that end, Oracle agreed to limit many of the
18 requests to information related to PeopleSoft-branded software and support materials, thereby
19 eliminating two of CedarCrestone's major lines of services .  *Id.*   Further, Oracle agreed to
20 clarify that for Requests No. 2, 4, 8, Oracle was only seeking documents sufficient to show
21 CedarCrestone's policies, procedures, rules, guidelines, and protocols for the topics of those
22 requests.  *Id.*
23       On May 19, 2011, CedarCrestone made a further production that it represented to be
24 responsive to two of Oracle's requests for documents.  *Id.*, ¶ 9, Ex. G.  CedarCrestone did not
25 request confidential treatment for these documents, did not dispute Oracle's statement in its May
26 8 letter that the Stipulated Protective Order was adequate, and did not reference or object to the
27 Stipulated Protective Order.  *Id.*  Instead, CedarCrestone stated that it "assume[d] that Oracle
28 [would] take responsibility for asserting claims of confidentiality."  *Id.*, Ex. G.  CedarCrestone

1  also stated that it was "working diligently to gather additional materials requested by Oracle,"
2  and that CedarCrestone would "provide such materials to Oracle as soon as possible, subject to
3  Oracle's willingness to comply with restrictions as to their use and disclosure."  *Id.*  Oracle left a
4  voicemail with CedarCrestone counsel that afternoon stating again that the Stipulated Protective
5  Order was adequate and requesting that CedarCrestone call Oracle back to discuss.  *Id.*, ¶ 9.
6  CedarCrestone did not return that call.  *Id.*
7        On June 22, 2011, Oracle sent another letter to CedarCrestone seeking compliance with
8  the subpoena, stating again that CedarCrestone had waived its objections, and stating again that
9  the Stipulated Protective Order would adequately protect CedarCrestone's confidential
10 information.  *Id.*, ¶ 10, Ex. H.  On June 24 – nearly four months after the deadline for
11 CedarCrestone to serve its objections, more than three months after Oracle provided the
12 Stipulated Protective Order, and after making two productions without reference to the
13 Stipulated Protective Order or Oracle's multiple statements that it was adequate – CedarCrestone
14 sent Oracle a copy of a proposed "supplemental" agreement between CedarCrestone and Rimini
15 Street.  *Id.*, ¶ 11, Ex. I.  CedarCrestone informed Oracle for the first time that it already had been
16 "negotiating [the agreement] with Rimini Street."  *Id.*  CedarCrestone also stated that was
17 "prepared to produce additional documents," but that Oracle would have to sign CedarCrestone's
18 agreement with Rimini, when and if an agreement was reached, "[i]n order for CedarCrestone to
19 produce the documents."  *Id.*
20        Four days later, on June 28, CedarCrestone sent Oracle an additional "supplemental"
21 agreement between CedarCrestone and Oracle.  *Id.*, ¶ 12, Ex. J.  In its cover email,
22 CedarCrestone asserted – for the first time – that its proposed "supplement" was necessary
23 because the Stipulated Protective Order "lacks adequate protections for non-parties."  *Id.*
24 CedarCrestone again confirmed that it "will be able to produce another set of responsive
25 documents if Oracle signs the attached Supplemental Stipulation of Confidentiality."  *Id.*
26
27
28

7

PLAINTIFF'S MOTION TO COMPEL NON-PARTY CEDARCRESTONE, INC TO PRODUCE
DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA

## III. ARGUMENT

### A. Foundational Information About CedarCrestone's Business Model Is Relevant And Does Not Impose An Undue Burden

Oracle is entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Proc. 26(b)(1). This standard for "relevancy under Rule 26 remains broad." *U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 431 (D.Nev. 2006); *see also G.K. Las Vegas Ltd Partnership v. Simon Property Group, Inc.* 2008 WL 5083700, *3 (D.Nev. 2008).

As set forth above, Rimini has raised CederCrestone's business model as both a defense to Oracle's claims and as "evidence" supporting Rimini's counterclaims against Oracle. FACC at 26:12-18 and ¶ 54. Because Rimini has thrust CederCrestone's business model into this litigation, the foundational discovery sought by Oracle in order to respond to Rimini's allegations easily falls within the broad bounds of relevance for purposes of discovery. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (Rule 26(b) should be "liberally construed to permit the discovery of information which ultimately may not be admissible at trial.").

Further, and while Oracle disagrees, Rimini has indicated in meet and confer communications that it intends to pursue the theory that Oracle's damages should be reduced if Rimini can show that customers would have contracted with third parties if Rimini had not been an option. Oracle is therefore required to pursue discovery aimed at refuting the multiple assumptions made by Rimini concerning the similarity and sufficiency of CedarCrestone's services, and CedarCrestone's availability as a legitimate alternative to Rimini.

CedarCrestone is also forestalled from arguing that producing the requested documents would impose an undue burden. CedarCrestone admits that it has already prepared the responsive documents for production. Russell Decl., Ex. J. Having already collected, processed and prepared responsive documents for production, any claims of undue burden on the part of CedarCrestone now ring hollow.

### B. CedarCrestone Has Waived Its Right To Object to Oracle's Subpoena

Under Federal Rule of Civil Procedure 45(c)(2)(B), an objection to a subpoena "must be

8

1  served before the earlier of the time specified for compliance or 14 days after the subpoena is

2  served." "[A] nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum

3  generally requires the court to find that any objection, including attorney-client privilege, has

4  been waived." *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).[2]

5  Oracle properly served CedarCrestone on February 14, 2011. Russell Decl., ¶ 3, Ex. A.

6  The deadline for CedarCrestone to object under Rule 45(c)(2)(B) was February 28.

7  CedarCrestone did not provide any written communication to Oracle concerning the subpoena

8  until March 7, 2011, and did not offer written details about any purported objections until April

9  14, 2011. *Id.*, ¶¶ 4-7; *see also Simon Design Eng. LLC v. W & W Steel LLC*, 2010 WL 2872573,

10 *2 (D. Nev. 2010) ("[B]oiler-plate objections [are] insufficient to meet [a party's] burden of

11 establishing that the requests in dispute are objectionable."). CedarCrestone has thus waived

12 any objections to the subpoena on the grounds of confidentiality or otherwise. It has no legal

13 basis to further delay full production of documents that it has already collected and prepared.

14     **C.**    **The Stipulated Protective Order Adequately Protects CedarCrestone's Interests, And CedarCrestone's Alternative**
15             **Is Unreasonable**

16 In light of CedarCrestone's waiver, the Court need not reach the merits of

17 CedarCrestone's proposed changes to the Stipulated Protective Order. If it does so, it should

18 reject CedarCrestone's arguments for four reasons.

19 *First*, CedarCrestone's status as a non-party to this lawsuit does not entitle it to a

20 heightened level of confidentiality protection. Courts routinely find protective orders entered in

21 underlying litigation sufficient to adequately protect non-parties' privacy and confidentiality

22 concerns. *See, e.g., Covelo Clothing Inc. v. Atlandia Imports, Inc.*, 2007 WL 4287731, *2

23 (D.Colo. Dec. 4, 2007). This approach is appropriate here because the Stipulated Protective

24 Order was negotiated by two sophisticated business competitors with strong motivations to

---

[2] At this juncture, Oracle is not seeking to pierce any attorney-client privilege that CedarCrestone may claim to documents responsive to the subpoena although Oracle reserves all rights regarding any claims of privilege made by CedarCrestone in the future.

protect their sensitive business and competitive information.  CedarCrestone's confidentiality concerns are no different in type from Rimini's – both companies compete with Oracle, and the existing Stipulated Protective Order was jointly drafted with that concern in mind.  Further, over 200 commercial entities have already produced documents in this litigation and not one has required the level of protection sought by CedarCrestone.

*Second*, CedarCrestone's demand that *every* non-public document be afforded the strictest "attorneys' eyes only" treatment is unreasonable.  A party seeking a blanket protective order must not only make a showing that good cause requires the protection requested but also that it will invoke the protection only in good faith.  *Van v. Wal-Mart Stores, Inc.*, 2011 WL 62499, *2 (N.D. Cal. Jan. 7, 2011); *see also Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d  943 (7th Cir. 1999) (disproving blanket protective orders that give parties "carte blanche to decide what portions of the record to shall be kept secret.")  Under CedarCrestone's proposal, "highly confidential" information would include:

> financial or business plans or projections, acquisition offers or expressions of interest; proposed strategic transactions or other business combinations; compensation plans; proprietary technical information and specifications; current or future business and marketing information, plans, and strategies; studies or analyses by internal or outside experts; customer information, data or lists; confidential financial data or results; tax data; confidential information regarding assets and liabilities; valuation analyses; competitive analyses; confidential personnel information; personal financial information; personal information subject to protection under any state law or regulation; or other commercially or personally sensitive or proprietary information.

Russell Decl., Ex. J at ¶ 1.  It is difficult to imagine a non-public document that would not fall within the first 15 clauses of that definition.  Even if such a document exists, the 16th clause – "other commercially *or* personally sensitive *or* proprietary information" – would surely cover it.

*Third*, CedarCrestone also attempts to shift the burden of proof to Oracle to show that a given document designated by CedarCrestone is *not* "highly confidential."  Russell Decl., Ex. J at ¶ 7. The law precludes CedarCrestone's proposed burden shifting.  Under Federal Rule of Civil Procedure 26(c) and Ninth Circuit law, once the designation of a document as confidential under a blanket protective order is challenged, the burden is on the designating party to show good cause for protection.  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir.

1   2003). And, CedarCrestone's burden under Rule 26(c) is not lessened just because a "highly
2   confidential" designation has been applied under a protective order. *Id.* No matter how "highly
3   confidential" materials are defined, the burden rests squarely with CedarCrestone to show good
4   cause for applying the "highly confidential" designation to a challenged document.
5       *Fourth*, CedarCrestone attempts to preclude any actual use by Oracle – with witnesses,
6   experts, at trial or on appeal, and even with *Defendants* – of the discovery it will produce. The
7   10-day advance written notice requirement and related specification of Bates numbers and the
8   provision of resumes for a deposition (Russell Decl., Ex. J at ¶ 3) create complex and
9   unnecessary hurdles, including because the deposition transcript and related exhibits can
10  themselves be designated as confidential or highly confidential. The 10-day advance notice
11  period and related procedures for depositions *and trial* (*id*. at ¶¶ 3, 8) is additionally unworkable
12  because it would prevent counsel from rebutting testimony or pursuing different lines of
13  questioning based on what a witness says. Counsel would have to know 10 days in advance
14  exactly which CedarCrestone documents he or she intended to use at a deposition or during a
15  particular day at trial and would not be able to make any changes without rescheduling the
16  deposition. There would not even be that remedy at trial. Likewise, the 10-day advance notice
17  period for written briefs (*id*. at ¶ 6) would make it nearly impossible to comply with for
18  opposition or reply briefs.
19      The similar restrictions on providing documents to experts (*id*. at ¶ 5), beyond the
20  protections already in place under the Stipulated Protective Order, have no justification. And
21  since the Court of Appeal will presumably be reviewing *this* Court's record, why there should be
22  another round of notice (followed by motion practice, etc.) to use documents in appellate
23  argument (*id*. at ¶ 8) is at best mysterious.
24      The procedures set forth in the existing Stipulated Protective Order are fully adequate to
25  address any legitimate confidentiality concerns that CedarCrestone may have. The lengthy
26  notice periods and related restrictions that CedarCrestone now proposes to add to the existing
27  order, after four months of indicating no such objections, are unnecessary. They would unfairly
28  prejudice Oracle by imposing significant and unwarranted limitations on Oracle's ability to use

1   potentially important evidence to prove its claims.

## IV. CONCLUSION

For the foregoing reasons, Oracle respectfully requests that the Court issue an order compelling CedarCrestone to produce documents responsive to Oracle's subpoena, pursuant to the existing Stipulated Protective Order. As described above, Oracle has narrowed the scope of its requests during its meet and confer with CedarCrestone in a good faith attempt to resolve this discovery dispute. In response, CedarCrestone has stated that it is ready to produce documents but for its new issue with the Stipulated Protective Order.

Accordingly, the specific items the Court should order CedarCrestone to produce, reflecting both the subpoena and Oracle's narrowing of the subpoena, are as follows:

1.  Documents sufficient to identify all PeopleSoft-branded software and support material maintained on any of CedarCrestone's computer systems since January 1, 2008. Russell Decl., ¶ 1, Ex. A at Request No. 1, as modified by Ex. F.

2.  Documents sufficient to show CedarCrestone's policies, procedures, rules, guidelines, and protocols for accessing, storing, maintaining, retrieving, providing, and distributing to its customers PeopleSoft-branded software and support materials since January 1, 2008. *Id.*, ¶ 1, Ex. A at Request No. 2, as modified by Ex. F.

3.  Documents sufficient to identify each of the customers that CedarCrestone has provided support in connection with any of the Software and Support Materials, including the name, address, and primary contact of the customer, dates during which CedarCrestone provided support to that customer, and the specific products for which CedarCrestone has provided support to that customer. *Id.*, ¶ 1, Ex. A at Request No. 3.

4.  Documents sufficient to identify CedarCrestone's policies, procedures, rules, guidelines, and protocols for downloading or copying Software and Support Materials from Customer Connection, MetaLink and my Oracle Support, including Documents identifying the categories of materials CedarCrestone has authorized to download by each of its customers. *Id.*, ¶ 1, Ex. A at Request No. 4, as modified by Ex. F.

5.  All logs or other electronic records, in native format, currently stored on any

1   central network drive, server, or any other computer that CedarCrestone has designated or
2   regularly used for downloading Software and Support Materials with either the PeopleSoft or JD
3   Edwards Change Assistant tools. *Id.*, ¶ 1, Ex. A at Request No. 5, as modified by Ex. F.

4   6.   Any new, tailored or customized tax or regulatory updates CedarCrestone
5   developed, delivered, provided or sent to any customer since Jan. 1, 2008 intended to interact,
6   modify or supplement any PeopleSoft-branded Software. *Id*, ¶ A, Ex. 1 at Request No. 6, as
7   modified by Ex. F.

8   7.   Documents sufficient to show CedarCrestone's policies, procedures, rules,
9   guidelines, and protocols for providing each of the following services described on its websites,
10  what Oracle Software is involved in the provision of such services, and whether any such Oracle
11  Software is stored or located on its Computer Systems. *Id.*, ¶ A, Ex. 1 at Request No. 8, as
12  modified by Ex. F.

13  8.   Representative copies of all marketing materials or other non-confidential
14  representations made by CedarCrestone to any customer or potential customer describing its
15  capabilities, qualifications, or methods of providing support for any of the PeopleSoft, J.D.
16  Edwards, and Siebel families of software products. Russell Decl., ¶ A, Ex. 1 at Request No. 10,
17  as modified by Ex. F.

18  9.   All documents (including license agreements), CedarCrestone claims provides
19  authorization for its possession and use of any Oracle Software, including any Software and
20  Support Materials. Russell Decl., ¶ A, Ex. 1 at Request No. 11, as modified by Ex. F.

DATED:  June 30, 2011                    BINGHAM McCUTCHEN LLP


By:  */s/ Geoff M. Howard*
Geoff M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc. and Oracle International Corp.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 30th day of June, 2010, I electronically transmitted the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL NON-PARTY CEDARCRESTONE, INC. TO PRODUCE DOCUMENTS IN RESPONSE TO ORACLE'S SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

                                          */s/ Marjory A. Gentry*
                                            Marjory A. Gentry