# EXHIBIT E

**PEABODY & ARNOLD LLP**
COUNSELLORS AT LAW

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE, BOSTON, MA 02210-2261
(617) 951-2100  FAX (617) 951-2125

BOSTON, MA   PROVIDENCE, RI

ROBERT T. GILL
[617] 951.4706
rgill@peabodyarnold.com

April 14, 2011

**By Electronic Mail (chad.russell@bingham.com) and Federal Express**

Chad Russell, Esq.
Bingham McCutchen LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111

Re:  *Subpoena to CedarCrestone, Inc. in Oracle/Rimini Street Litigation*

Dear Mr. Russell:

Pursuant to Fed. R. Civ. P. 45(c)(3)(B), I write to convey in further detail CedarCrestone's objections to Third-Party Subpoena to Produce Documents served on it by Oracle in Oracle USA, Inc. v. Rimini Street, Inc. CedarCrestone makes these objections while reserving its right to file a motion to quash or to object on other bases to the Subpoena and any portions of it, as well as to any other subpoenas with which it may be served, or to seek a protective order. I also write to respond to your April 5, 2011 letter.

I.  CedarCrestone's objections

As CedarCrestone reads the Subpoena and the requests therein, they are unduly burdensome, especially given that CedarCrestone is a not a party to the Rimini Street litigation.

For purposes of this letter, CedarCrestone notes that the subpoena states that it "extend[s] to all responsive materials under [CedarCrestone's] possession, custody, and/or control at any time . . ." [See Subpoena, Exhibit A, Instructions, ¶ 8] and, that, "[u]nless otherwise specified, the relevant time period for [CedarCrestone's] response to the Requests for Production shall be from January 1, 2006 to and including the date of Your Response." [See Subpoena, Exhibit A, Instructions, ¶ 9]. Given these guidelines and the nature of CedarCrestone's business as an Oracle Certified Advantage Partner (Oracle's highest partner level) which assists Oracle PeopleSoft customers with their Oracle PeopleSoft applications, the subpoena as a whole is overbroad, vague, ambiguous, calls for the production of proprietary information and trade secrets, and requires that CedarCrestone disclose information in violation of confidentiality agreements which it entered into with its past and present actual and potential clients.

**PEABODY & ARNOLD LLP**
Chad Russell, Esq.
April 14, 2011
Page 2

The subpoena also provided CedarCrestone with an extraordinarily short period of time - less than one month - to compile all of the requested documents. Compliance with the subpoena's production deadline, even if it were not otherwise objectionable on many bases, was not logistically or technologically feasible, given that it would have required CedarCrestone to collect, review, and produce hundreds of thousands of documents relating to CedarCrestone's business and work for hundreds of clients over a three to five year period within three weeks.

More importantly, however, complying with the subpoena in its current form within any period of time would be prohibitively and unnecessarily expensive for CedarCrestone. The expense of fully complying with Oracle's requests as written would include hundreds of thousands of dollars in legal fees and e-discovery consultant expenses, as well as document hosting and litigation scanning costs. Compliance with the subpoena also would require CedarCrestone personnel to spend hundreds of hours identifying the locations of potentially responsive documents instead of performing their usual functions.

CedarCrestone objects generally to the subpoena to the extent it seeks to impose any obligations greater than those set forth in the Federal Rules of Civil Procedure and to the extent it seeks information protected by any evidentiary privileges.

More specifically, CedarCrestone objects to each of the requests contained in the Subpoena for the following reasons:

**Request No. 1:**

**Documents sufficient to identify all Oracle Software, including any Software and Support Materials You have maintained on any of Your Computer Systems since January 1, 2008.**

Objections:

CedarCrestone objects to Request 1 as overbroad and unduly burdensome. It also objects on the basis of relevance.

Discussion:

Oracle's subpoena defines "Computer Systems" as "any computer, hard drive, network location, CD, DVD, thumb drive, archive, backup, and internet location maintained, operated, controlled or within the custody of CedarCrestone." The subpoena defines "Software and Support Materials" as "software applications, and environments, program updates, software updates, bug fixes, patches, custom solutions, and instructional documents for any families of software products provided by Oracle."

**PEABODY & ARNOLD LLP**
Chad Russell, Esq.
April 14, 2011
Page 3

Based on the aforementioned definitions, CedarCrestone interprets Request 1 as calling for the production of any and all documents which it has had in its possession, custody and/ or control from January 1, 2008 through the present which are sufficient to identify all Oracle Software and Software Support Materials which it has maintained on any of its Computer Systems (as defined above) from January 1, 2008 through the present.

CedarCrestone does not maintain a list of the Oracle Software and Oracle Software and Support Materials which it has maintained on its Computer Systems since January 1, 2008. As a technology services company, CedarCrestone literally has hundreds, if not thousands, of Computer Systems in its possession, custody, and control. It has also had consultants providing Oracle support to hundreds of clients at hundreds of sites, using hundreds of instances of Computer Systems. CedarCrestone also has had many Computer Systems in its possession, custody, and control over the past three years which are no longer in use or operational. Further, because CedarCrestone does not maintain Oracle Software and Software and Support Materials on its Computer Systems except as authorized by and in support of its own license as an Oracle customer or a specific licensed client, the specific Oracle Software and Software and Support Materials maintained on each CedarCrestone Computer System changes frequently and varies depending on what Computer System is used to service a particular CedarCrestone client.

Compliance with Request 1 would require CedarCrestone to review all records and electronically stored information (ESI) in its possession dated January 1, 2008 through the present in order to determine whether any of those records and/or ESI and respond to Request 1. It would require CedarCrestone's investigation of the Computer Systems of most of its 680 employees. Compliance with Request 1 also would require CedarCrestone to search for Computer Systems which it still possesses but are no longer operational and reconfigure them to be operational. Further, given the number of Computer Systems covered by Request 1, CedarCrestone potentially could have many thousands of responsive documents, many of which are stored in electronic form and/or on back up tapes. Accordingly, compliance with Request 1 would be extremely complex and require CedarCrestone to incur significant expenses, including those associated with retaining counsel to review the documents for responsiveness and privilege, potentially retaining e-discovery consultants and forensic analysts to extract the relevant data and documents and additional consultants and technicians to assist with restoring discontinued Computer Systems where necessary and scanning documents for production.

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 4

**Request No. 2:**

**Documents sufficient to show how You (or anyone acting on your behalf) accessed, stored, maintained, retrieved, provided, and distributed to your customers any Software and Support Materials since January 1, 2008.**

Objections:

CedarCrestone objects to Request 2 because it calls for the production of proprietary information and trade secrets which are protected from disclosure by Fed. R. Civ. P. 45(c)(3)(B)(i); because compliance would lead CedarCrestone to breach its confidentiality and non-disclosure agreements with its clients; and because the request is overbroad, unduly burdensome, and vague. It also objects on the basis of relevance.

Discussion:

*Objection to Production of Proprietary Information and Trade Secrets*

The methods which CedarCrestone employs to access, store, maintain, retrieve, provide, or distribute Software and Support Materials to its clients include proprietary trade secrets. Given that both Rimini Street and Oracle are CedarCrestone's competitors to varying degrees, CedarCrestone objects to Request 2 to the extent that it requires CedarCrestone to divulge its proprietary information and trade secrets to its competitors. It would be willing to discuss providing some portion of the requested information which is relevant to the ongoing litigation if there were adequate confidentiality protections in place.

*Objection to Production of Documents Which Would Lead to Confidentiality and Non-Disclosure Agreement Violations*

Because CedarCrestone accesses Oracle Software and Software and Support Materials in connection with providing to its clients support to which they are entitled pursuant to their Oracle licenses, many of the documents which are responsive to Request 2 contain the identities of and/or information about CedarCrestone's clients. CedarCrestone objects to Request 2 to the extent that it calls for CedarCrestone to violate any confidentiality and non-disclosure agreements with its clients.

*Objections as Overbroad and Unduly Burdensome*

CedarCrestone further objects to Request 2 as overbroad and unduly burdensome. CedarCrestone does not access Oracle Software and Software and Support Materials except as authorized by and in support of a specific licensed client, with respect only to Software and

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 5

Support Materials which that customer had a current right to have and use. However, this happens with great frequency in the course of providing services as a Systems Integrator. CedarCrestone's customers' project managers and technicians also frequently access Oracle Software and Software and Support Materials to assist CedarCrestone with providing services as a Systems Integrator.

For CedarCrestone to provide documents relating to how it accessed, stored, maintained, retrieved, provided, and distributed Software and Support Materials for each of its clients over the course of more than three years would be extremely burdensome. Compliance with Request 2 would require CedarCrestone to review all records and ESI in its possession dated January 1, 2008 through the present in order to determine whether any of those records and/or ESI respond to Request 2. Given the large number of customers which CedarCrestone has had since January 1, 2008, CedarCrestone potentially could have hundreds of thousands of responsive documents, many of which are stored in electronic form and/or on back up tapes. Compliance with Request 2 would be extremely complex and require CedarCrestone to incur significant expenses, including those associated with retaining counsel to review the documents for responsiveness and privilege, e-discovery consultants and forensic analysts to extract the relevant data and documents and technicians to assist with scanning documents for production.

*Objection as Vague*

CedarCrestone objects to Request 2 as vague because it is not clear what Oracle means by "sufficient to show" or "how" in this context.

*Objection as to Relevance*

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

**Request No. 3:**

**Documents sufficient to identify each of the customers for which You have provided support in connection with any of the Software and Support Materials, including the name, address, and primary contact of the customer, dates during which you have provided support to that customer, and the specific products for which You have provided support to that customer.**

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 6

Objections:

CedarCrestone objects to Request 3 because it calls for the production of proprietary information. CedarCrestone and Rimini Street are, to some extent, competitors, such that identification of CedarCrestone's customers would give Rimini Street an unfair advantage in the marketplace. CedarCrestone also objects to Request 3 because compliance with it would require CedarCrestone to breach confidentiality and non-disclosure agreements with its clients. It would be time consuming and burdensome for CedarCrestone to collect all of the requested information for the time period in question. CedarCrestone further objects to Request 3 because it does not believe such information is relevant to Oracle's claims against Rimini Street.

**Request No. 4:**

**Documents sufficient to identify all Software and Support Materials that you have downloaded or copied from Oracle-maintained customer support websites, including Customer Connection, MetaLink and My Oracle Support.**

Objections:

CedarCrestone objects to Request 4 as overbroad, unduly burdensome, and vague. CedarCrestone also objects to Request 4 to the extent that it calls for CedarCrestone to violate its confidentiality and non-disclosure agreements with its clients. CedarCrestone also agrees on the basis of relevance.

Discussion:

*Objections as Overbroad and Unduly Burdensome*

CedarCrestone does not download or copy Oracle Software and Software and Support Materials except as authorized by and in support of a specific licensed customer, with respect only to Software and Support Materials which that customer had a current right to have and use. However, within these guidelines, since 2006, CedarCrestone's consultants and technicians have downloaded and copied Oracle Software and Software and Support Materials virtually every day in the course of providing services as a Systems Integrator.

Production of all documents which are responsive to Request 4 would require CedarCrestone to review all records and ESI in its possession dated January 1, 2006 through the present in order to determine which of those records and/or ESI respond to Request 4. Given the large number of customers which CedarCrestone has had since January 1, 2006 and the frequency with which it has downloaded and copied Oracle Software and Software and Support Materials on behalf of those clients, CedarCrestone potentially could have hundreds of thousands of responsive

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 7

documents in its possession, custody, or control, many of which are stored in electronic form and/or on back up tapes. Compliance with Request 4 would be extremely complex and require CedarCrestone to incur significant expenses, including those associated with retaining counsel to review the documents for responsiveness and privilege, e-discovery consultants and forensic analysts to extract the relevant data and documents and additional technicians to assist with scanning documents for production. It would also require CedarCrestone to canvass most of its 680 employees to determine what responsive information they could provide.

*Objection to Production of Documents Which Would Lead to Confidentiality and Non-Disclosure Agreement Violations*

Given that CedarCrestone downloads Oracle Software and Software and Support Materials as authorized by and in support of specific licensed customers, compliance with Request 4 would require CedarCrestone to produce documents which identify its customers. CedarCrestone objects to Request 4 to the extent that it calls for CedarCrestone to violate any confidentiality and non-disclosure agreements which it has with its customers. CedarCrestone also objects to identification of its customers, since Rimini Street and Oracle are, to some extent, competitors of CedarCrestone.

*Objection as Vague*

CedarCrestone objects to Request 4 as vague because it is not clear what Oracle means by "sufficient to identify."

*Objection Regarding Relevance*

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

**Document Request No. 5:**

**All logs or other electronic records, in native format, showing the Software and Support Materials that You obtained using either the PeopleSoft or JD Edwards Change Assistant tools.**

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 8

Objections:

CedarCrestone objects to Request 5 as overbroad and unduly burdensome. CedarCrestone also objects to Request 5 to the extent that it calls for CedarCrestone to violate its confidentiality and non-disclosure agreements with its clients. CedarCrestone also objects on the basis of relevance.

Discussion:

*Objections as Overbroad and Unduly Burdensome*

CedarCrestone does not download or copy Software and Support Materials except as authorized by and in support of a specific licensed customer, with respect only to Software and Support Materials which that customer had a current right to have and use. However, within these guidelines, since 2006, CedarCrestone's consultants and technicians have very frequently obtained Software and Software and Support Materials in the course of providing services to CedarCrestone's clients as a Systems Integrator. To determine whether any responsive logs and electronic records exist, CedarCrestone likely would need to hire an e-discovery consultant or forensic analyst to extract them from CedarCrestone's Computer Systems, which CedarCrestone estimates would cost at least $100,000. In short, for CedarCrestone to produce logs and electronic records in native format showing each time it accessed Software and Support Materials using either the PeopleSoft or JD Edwards Change Assistant tools over the course of five years would be extremely burdensome, complex, and expensive. In addition, on many occasions, the access would have been made through a client site, which would be virtually impossible for CedarCrestone to track.

*Objection to Production of Documents Which Would Lead to Confidentiality and Non-Disclosure Agreement Violations*

Given that CedarCrestone downloads Software and Support Materials as authorized by and in support of specific licensed customers, compliance with Request 5 would require CedarCrestone to produce documents which identify its customers. CedarCrestone objects to Request 5 to the extent that it calls for CedarCrestone to violate any confidentiality and non-disclosure agreements with its customers. CedarCrestone also objects to identification of its customers, since Rimini Street and Oracle are, to some extent, competitors of CedarCrestone.

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 9


*Objection Regarding Relevance*

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

**Document Request No. 6:**

**Any new, tailored or customized Computer Code You developed, delivered, provided or sent to any customer since January 1, 2008 intended to interact, modify or supplement any Oracle Software.**

Objections:

CedarCrestone objects to Request 6 as calling for the production of trade secrets and proprietary information which are protected from disclosure of Fed. R. Civ. P. 45(c)(3)(B)(i), overbroad, and unduly burdensome. CedarCrestone also objects on the basis of relevance.

Discussion:

*Objection as Calling for the Production of Trade Secrets and Proprietary Information*

Any new, tailored, or customized Computer Code which CedarCrestone has developed, delivered, provided, or sent to any client to interact, modify, or supplement any Oracle Software is proprietary to CedarCrestone and constitutes protected trade secrets. Disclosure of this information to Rimini Street and Oracle, two of CedarCrestone's competitors to varying degrees, would substantially harm CedarCrestone's business interests. To this end, CedarCrestone objects to Request 6 because it calls for the production of trade secrets and proprietary information which are protected from disclosure by Fed. R. Civ. P. 45(c)(3)(B)(i).

*Objections as Overbroad and Unduly Burdensome*

Request 6 appears to ask, in summary, that CedarCrestone produce all documents relating to all new, tailored, or customized computer programs, applications, environments, data, program updates, software updates, bug fixes, patches, and custom solutions intended to interact, modify, or supplement any Oracle Software which CedarCrestone has developed, delivered, provided, or sent to any client since January 1, 2008. Since virtually all of CedarCrestone's clients hire CedarCrestone to provide such items to them, Oracle seems to be asking CedarCrestone to produce extensive documents related to virtually every CedarCrestone client project since

9

**PEABODY & ARNOLD LLP**
Chad Russell, Esq.
April 14, 2011
Page 10

January 1, 2008. Since CedarCrestone has had hundreds of customers since 2008, CedarCrestone objects to this request because it is overbroad and unduly burdensome. As with Requests 1-5, compliance with Request 6 would require CedarCrestone to incur extensive expenses, as CedarCrestone would be need to search all of its Computer Systems and records to locate all Computer Code which is responsive to Request 6. The expenses would include those associated with retaining counsel to review the documents for responsiveness and privilege, e-discovery consultants and forensic analysts to extract the relevant data and documents and technicians to assist with scanning documents for production.

*Objection Regarding Relevance*

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

**Document Request No. 7:**

**Documents sufficient to show the processes by which You have designed or developed the "patches and fixes" which You claim to have applied to PeopleSoft "HR, benefits, benefits administration, payroll, general ledger, accounts payable, purchasing, asset management and projects applications" on your websites at http://www.cedarcrestone.com/documents/CS-GWB.pdf.**

Objections:

CedarCrestone objects to Request 7 on the basis of relevance.

Discussion:

*Objection Regarding Relevance*

CedarCrestone objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

Without waiving its objection, CedarCrestone further responds by noting that it has not designed or developed patches and fixes referred to on the web page identified in this request nor does the web page state that CedarCrestone did so. The client at issue, George Weston Bakeries, continues to pay Oracle support and is entitled to Oracle patches and fixes for its software

10

PEABODY & ARNOLD LLP
Chad Russell, Esq.
April 14, 2011
Page 11

version as part of that support. The patches and fixes come from Oracle. Application of those patches and fixes to which George Weston Bakeries is entitled under its Oracle license is part of the service offered by CedarCrestone.

**Document Request No. 8:**

Documents sufficient to show how You provide each of the following services described on your websites, what Oracle Software is involved in the provision of such services and whether any such Oracle Software is stored or located on your Computer Systems.

a. Hosting services for PeopleSoft applications, described on your website at http://www.cedarcrestone.com/sol-ps-cms-host.php.

b. Maintenance services which You claim "offer clients a solution for providing ongoing tax and regulatory support" for PeopleSoft applications, at http://www.cedarcrestone.com/sol-ps-cms-main.php.

c. Upgrade services which You claim "provides an off-site, lab based upgrade option for completing PeopleSoft applications upgrades" at http://www.cedarcrestone.com/sol-ps-cms-ul.php.

d. Flexible development services of PeopleSoft applications described on your website at http://www.cedarcrestone.com/sol-ps-cms-dev.php.

e. PeopleSoft Technology Integration Services which You claim "offers streamlined services for assessing, installing, implementing, administering, integrating and upgrading today's PeopleSoft Internet Architecture" at http://www.cedarcrestone.com/sol-ps-tis.php.

Objections:

CedarCrestone objects to Request 8 as calling for the production of trade secrets and proprietary information which are protected from disclosure of Fed. R. Civ. P. 45(c)(3)(B)(i), overbroad, unduly burdensome, and vague. CedarCrestone also objects to Request 8 to the extent that it calls for CedarCrestone to violate its confidentiality and non-disclosure agreements with its clients. CedarCrestone further objects on the basis of relevance.

Discussion:

*Objection as Calling for the Production of Trade Secrets and Proprietary Information*

11

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 12

"How" CedarCrestone provides each of the services described on its websites to its customers is proprietary to CedarCrestone and constitutes protected trade secret information. Disclosure of this information to Rimini Street and Oracle, two of CedarCrestone's competitors to varying degrees, would substantially harm CedarCrestone's business interests. To this end, CedarCrestone objects to Request 8 because it calls for the production of trade secrets and proprietary information which are protected from disclosure by Fed. R. Civ. P. 45(c)(3)(B)(i).

*Objections as Vague, Overbroad, and Unduly Burdensome*

Request number 8 appears to request all documents relating to "how" CedarCrestone has provided many of the services which it describes on its website since January 1, 2006. CedarCrestone initially objects to Request 8 because it does not what "how" means in this context. CedarCrestone also objects to Request 8 because it appears to seek every document in CedarCrestone's possession which relates to CedarCrestone's provision of many different services to hundreds of clients over the course of the past five years. As with Requests 1-7, compliance with Request 8 would require CedarCrestone to incur extensive expenses, as CedarCrestone would be need to search all of its Computer Systems and records to locate all documents which are responsive to Request 8. The expenses would include those associated with retaining counsel to review the documents for responsiveness and privilege, e-discovery consultants and forensic analysts to extract the relevant data and documents and technicians to assist with scanning documents for production.

*Objection to Production of Documents Which Would Lead to Confidentiality and Non-Disclosure Agreement Violations*

Documents which show how CedarCrestone provides certain of its services presumably would include correspondence between CedarCrestone and its clients, which would reveal the identity of CedarCrestone's clients. Accordingly, CedarCrestone objects to Request 8 to the extent that it calls for CedarCrestone to violate its confidentiality and non-disclosure agreements with its clients.

*Objection Regarding Relevance*

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 13

**Document Request No. 9:**

**All Documents evidencing your use of automated download tools, crawlers, scrapers, or other software programs You have used to download or copy any Software and Support Materials from Oracle-maintained customer support websites, including Customer Connection, MetaLink and My Oracle Support.**

Objections:

CedarCrestone does not use any automated download tools, crawlers, scrapers, or other software programs to download or copy any Software and Support Materials. As such, CedarCrestone has no responsive documents.

**Document Request No. 10:**

**Documents sufficient to show the marketing materials and other representations made by You to any customer or potential customer describing your capabilities, qualifications, or methods of providing support for any of the PeopleSoft, J.D. Edwards, and Siebel families of software products.**

Objections:

CedarCrestone objects to Request 10 as calling, in part, for the production of trade secrets and proprietary information which are protected from disclosure of Fed. R. Civ. P. 45(c)(3)(B)(i), overbroad, unduly burdensome, and vague. CedarCrestone also objects to Request 10 to the extent that it calls for CedarCrestone to violate its confidentiality and non-disclosure agreements with its actual and potential clients. It also objects on the basis of relevance.

Discussion:

*Objection as Calling for the Production of Trade Secrets and Proprietary Information*

To the extent this request seeks information about CedarCrestone's representations to its clients, those are proprietary to CedarCrestone and constitute protected trade secret information. Disclosure of this information to Rimini Street and Oracle, two of CedarCrestone's competitors to varying degrees, would substantially harm CedarCrestone's business interests. To this end, CedarCrestone objects to Request 10 because it calls for the production of trade secrets and proprietary information which are protected from disclosure of Fed. R. Civ. P. 45(c)(3)(B)(i).

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 14

*Objections as Vague, Overbroad, and Unduly Burdensome*

Request number 10 appears to request all marketing materials which CedarCrestone has provided to and all documents regarding representations about its services which CedarCrestone has made to its actual and potential clients since January 1, 2006. As with Requests 1-9, compliance with Request 10 would require CedarCrestone to incur extensive expenses, as CedarCrestone would need to search all of its Computer Systems and records to locate all documents which are responsive to Request 10. The expenses would include those associated with retaining counsel to review the documents for responsiveness and privilege, e-discovery consultants and forensic analysts to extract the relevant data and documents, and technicians to assist with scanning documents for production. Additionally, because CedarCrestone has had so many customers and potential customers over the past five years, this request encompasses an especially large number of documents.

*Objection to Production of Documents Which Would Lead to Confidentiality and Non-Disclosure Agreement Violations*

CedarCrestone frequently provides its actual and potential clients with marketing materials, many of which are customized and reveal the identity of the clients. Additionally, CedarCrestone frequently communicates with actual and potential clients about its capabilities. CedarCrestone objects to Request 10 to the extent that it calls for CedarCrestone to violate its confidentiality and non-disclosure agreements with its actual and potential clients.

*Objection Regarding Relevance*

CedarCrestone also objects to this request on the basis of relevance. It does not see any basis on which the information requested is relevant to the claims between Oracle and Rimini Street. The information requested appears entirely unrelated to any of the claims Oracle has made against Rimini Street or Rimini Street's counterclaim.

In further answer, CedarCrestone views its website, http://CedarCrestone.com, as sufficient to show the representations it makes to its clients in the course of marketing. It also notes that it does not provide support for J.D.Edwards or Siebel.

**Document Request No. 11:**

**All Documents (including any license agreements) You claim provide authorization for your possession and use of any Oracle Software, including any Software and Support Materials.**

14

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 15

Response:

While CedarCrestone objects to this document request on the basis of relevance, it responds as follows. CedarCrestone is an Oracle customer with a license to use designated Oracle software and support materials for its internal use. While it can produce a copy of its Oracle licenses, those are clearly within Oracle's files and do not appear relevant in any fashion to Oracle's lawsuit against Rimini. Other than that, all CedarCrestone possession and use of Oracle Software, including any Software and Support Materials, would occur pursuant to a license held by a third party, CedarCrestone's client. CedarCrestone does not have copies of those client licenses, which would be in the possession of Oracle and the client.

II. CedarCrestone has not waived any objection to Oracle's subpoena.

Oracle's contention that CedarCrestone has waived its objections to the Subpoena is without merit and very surprising in light of the ongoing discussions that we have had during the past two months. Rather than propound detailed objections to the Subpoena, CedarCrestone elected to take Oracle up on its express offer to work in good faith to determine what information Oracle is really seeking from CedarCrestone. On March 7, 2011, I sent you a letter in which I stated that CedarCrestone objected to the Subpoena. I subsequently spoke with you by telephone and suggested that since Oracle and SAP had sent CedarCrestone subpoenas in the Oracle/SAP litigation dealing with the same issues, CedarCrestone was willing to produce the same documents which it produced in the apparently quite similar Oracle v. SAP litigation to determine whether that information would answer Oracle's questions. I also told you that CedarCrestone was asked to produce and did produce documents in the SAP litigation related to its consideration of a potential acquisition of TomorrowNow and that although they did not appear relevant to the current lawsuit, CedarCrestone would be willing to produce them again. I pointed out to you that CedarCrestone's prior production had been made to Oracle and to your firm. You said you could not obtain access to the prior production because the SAP litigation had been handled by other lawyers within the firm by which you are employed. At the conclusion of that conversation, you agreed that CedarCrestone would send along the documents it had previously produced, and we would discuss after you reviewed them what, if anything, Oracle sought beyond what was included in those documents.

I spoke with you a few days later by telephone and told you that CedarCrestone had received another third-party subpoena, this time from Rimini Street and Mr. Ravin. I also explained to you that counsel for CedarCrestone had retrieved the documents from the TomorrowNow case back from storage and was in the process of reviewing them to confirm that CedarCrestone could produce the material without violating any confidentiality agreements or protective orders. During our conversation, you indicated that you understood that CedarCrestone would need to take some time to determine whether it could produce the TomorrowNow-related documents

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 16

without violating any confidentiality agreements. I also asked you whether there were any impending deadlines in this case of which CedarCrestone needed to be aware. You indicated that the discovery deadline in this case is August 2011.

On March 24, 2011, CedarCrestone produced to you the promised documents: copies of a number of agreements between Oracle and CedarCrestone; a declaration of CedarCrestone's Chief Financial Officer, Brian Fees, which confirmed that the agreements which CedarCrestone produced to Oracle constituted a complete set of the agreements between CedarCrestone and Oracle relating to CedarCrestone's maintenance and support of Oracle's PeopleSoft and J.D. Edwards products; and a declaration of CedarCrestone's Executive Vice President for Shared Services, Rick Riordan, which responded to specific questions posed to CedarCrestone in the Oracle/SAP lawsuit. In my March 24, 2011 letter which accompanied CedarCrestone's production, I also indicated that CedarCrestone remained willing to produce documents related to CedarCrestone's possible acquisition of TomorrowNow which it previously produced to Oracle in response to the <u>Oracle v. SAP</u> litigation subpoena, even though they appeared irrelevant to CedarCrestone.

On April 5, 2011, you sent me an extraordinary letter in which you contended that CedarCrestone had waived its objections to Oracle's subpoena. Subsequently, we spoke by telephone and you indicated to me that regardless of the content of that letter, Oracle was not asking that CedarCrestone produce all documents in its possession which are responsive to the subpoena but only those which CedarCrestone determined were sufficient to show and/or identify the information which Oracle has requested from CedarCrestone. We also agreed that I would send you this letter by April 14, 2011 and that it then would be appropriate for us to discuss any remaining issues relating to this subpoena. You also agreed that Oracle would not file any motion to compel or take any other actions until after we discussed the contents of this letter. As I indicated, I will be out of the country from April 14, 2011 until May 2, 2011. We agreed to discuss the subpoena upon my return.

Given this series of events, CedarCrestone certainly does not agree that it has waived any right to object to any aspect of the subpoena. While it certainly could have taken a less cooperative tack in approaching its response to the subpoena, it has been cooperative in working to provide information responsive to Oracle's needs in clear anticipation that Oracle will also deal in good faith with CedarCrestone.

   III.   <u>CedarCrestone questions the timing of Oracle's subpoena.</u>

As indicated above, CedarCrestone objects to many of the requests Oracle has made on the basis of relevance, in that they do not appear to be designed to lead to the production of relevant evidence in Oracle's lawsuit against Rimini Street. In your April 5, 2011 letter, you assert that the documents Oracle seeks from CedarCrestone are relevant to Rimini Street's defense that

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 17

"Oracle's claims are barred because 'the custom and practice of the community' and 'the well-known and accepted practices of the software industry' give Rimini Street an implied license to access and use Oracle's Software and Support Materials." You also assert that "Rimini Street has indicated in meet and confer communications that Oracle's damages should be reduced if Rimini Street can show that customers would have contracted with third-parties such as CedarCrestone had Rimini Street not been an available option." Finally, you claim that the documents Oracle seeks from CedarCrestone are relevant to Rimini Street's counterclaim for defamation, business disparagement and trade libel, in light of Rimini Street's claim that "it is the common industry practice by other third party consulting vendors such as IBM, AT&T, Accenture, Navisite, WTS, CedarCrestone, and virtually every other hosting service provider to possess and work with copies of the client's licensed software products."

Frankly, these assertions, apart from possibly the damages claim, do not sound like valid claims or defenses. Were CedarCrestone to appear before a court to discuss the extremely burdensome nature of the "scorched earth" requests Oracle has served on CedarCrestone, CedarCrestone would raise the issue of relevance and argue that the information requested must be relevant to some actual legal issue before the Court, especially since Oracle could easily ask the Court to consider whether the aforementioned claims and defenses raised by Rimini Street are valid as a matter of law, before asking uninvolved third parties to spend significant amounts of time and money responding to information designed, at best, to respond to claims based on facts that, even if true, have no legal significance. Oracle presumably shares CedarCrestone's view that Oracle's decision to sue Rimini Street is unaffected by what other support providers do or do not do. Oracle's case against Rimini Street rests of whether Rimini Street has done anything illegal.

Rimini Street's claim that Oracle's damages should be reduced if it can show that customers would have contracted with third-parties such as CedarCrestone had Rimini Street not been an available option lacks merit because it is highly speculative. To the extent Rimini Street has offered any services to Oracle's customers which do not violate Oracle's intellectual property rights, those services could clearly be offered by third party support providers such as CedarCrestone. If a court determined that Rimini Street did provide some legitimate services and that the price for those services should reduce Oracle's damages, the damages presumably would be calculated be estimating the market share of Oracle vs. other third party support providers. CedarCrestone is amenable to providing information sufficient to show that market share, but suggests that what information is relevant cannot be determined until the Court narrows the scope of damages which may be recoverable.

If necessary, CedarCrestone will ask the court to protect CedarCrestone from undue burden and expense in connection with Oracle's subpoena, based in part on the issues I have just raised.

17

**PEABODY & ARNOLD** LLP
Chad Russell, Esq.
April 14, 2011
Page 18

CedarCrestone remains willing to work with Oracle to determine whether there is a mutually-agreeable way to delineate the scope of these requests in a manner that makes the requests not objectionable to CedarCrestone. As I indicated to you previously by email, I will be out of the country from April 14, 2011 until May 2, 2011. I would be happy to discuss any outstanding issues with you upon my return.

Sincerely,

Robert. T. Gill

PABOS2:RGILL:742685_1
11040-95213