# EXHIBIT F

**BINGHAM**

Chad Russell
Direct Phone:  415.393.2336
Direct Fax:     415.393.2286
chad.russell@bingham.com

May 8, 2011

**Via Email**

Robert T. Gill, Esq.
Peabody & Arnold LLP
600 Atlantic Avenue
Boston, MA 02210

**Re:   Subpoena to CedarCrestone, Inc. in Oracle USA, Inc. v. Rimini Street, Inc.**

Dear Mr. Gill:

I write in response to your letter of April 14, 2011.  Oracle responds in detail below to the arguments in your letter.  In the spirit of cooperation and to continue to attempt to resolve these issues without involving the Court, Oracle proposes modifications to several requests in Oracle's subpoena.  All such proposals are subject to Oracle's reservation of all rights, including the right to seek to compel full compliance with the subpoena as originally and properly served.

**I.        CEDARCRESTONE WAIVED THE RIGHT TO OBJECT TO ORACLE'S SUBPOENA**

As I stated in my letter of April 5, CedarCrestone waived any purported objections to the subpoena because it did not serve any by the deadline of February 28.  CedarCrestone's one-line "objection" on March 7 did not undo this waiver, and neither does CedarCrestone's letter of April 14.  Oracle's letter of April 5 cited multiple cases in support of this position.  CedarCrestone does not dispute that it missed the deadline and offers no contrary authority.

While both parties have discussed several times whether CedarCrestone would agree to comply with the subpoena, as required by the District of Nevada's local rules, that does not justify CedarCrestone's failure to serve appropriate objections in a timely manner. CedarCrestone remarks that serving detailed objections would have been "less cooperative."  To the contrary, CedarCrestone's failure to serve objections led Oracle to believe that CedarCrestone would agree to comply.  Oracle's discovery efforts may now be significantly prejudiced from the wasted time that Oracle and CedarCrestone could have used to work through timely and valid objections.  My alleged "understanding" that producing documents would "take some time," and my voluntary communication of the operative fact discovery cutoff in the case did not relieve CedarCrestone of its obligation to comply with the Federal Rules.  Furthermore, the communications you cite occurred

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

A/74251025.3

Robert T. Gill, Esq.
May 8, 2011
Page 2

after CedarCrestone had already waived its objections.  They clearly related to the timing of CedarCrestone's production, not objections.

Please also note that CedarCrestone's characterization of the record is not accurate.  For instance, I did not state that I "could not obtain access to the prior production because the SAP litigation had been handled by other lawyers within the firm by which [I am] employed."  In fact, I was a core member of the SAP litigation team.  What I said was that I was not permitted to review the prior production to the extent it was non-public and designated by CedarCrestone under the SAP protective order.  That designation prohibits any use of the designated materials for any purpose not related to the SAP case.  As another example, I never stated that CedarCrestone need not produce "all documents in its possession which are responsive to the subpoena, but only those which CedarCrestone determined were sufficient to show and/or identify the information which Oracle has requested from CedarCrestone."  Rather, I indicated to you that the subpoena is not overly broad or unduly burdensome, including because multiple requests explicitly seek only a limited set of documents "sufficient to show" certain information.  *See, e.g.* Requests Nos. 1, 2, 3, 4, and 6.  I will not take the time here to correct line-be-line the remaining inaccuracies because doing so is neither necessary nor productive, but I reserve the right to do so in the future.

**II.     ORACLE'S SUBPOENA SEEKS RELEVANT INFORMATION**

As you acknowledge in your April 14 letter, Oracle has already explained several ways in which the materials sought by the subpoena are relevant to the underlying litigation. Rimini Street has alleged an implied license based on the "well-known and accepted practices of the software industry" and the "custom and practice of the community." Similarly, Rimini has asserted a defamation and disparagement claim based on Oracle's awareness of "common industry practice."  Rimini specifically names CedarCrestone in its Counterclaims as one of a handful of providers in this "industry."  Rimini Street has also indicated that it will make damages arguments based on the similarity of CedarCrestone's services, amongst other things.  All of Oracle's requests therefore seek limited foundational information about CedarCrestone's practices.  These requests fall well within the "extremely broad" relevance standard for purposes of discovery.  *U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 431 (D. Nev. 2006); *see also Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, 2006 WL 905517, at *2 (M.D. Fla. 2006) ("[I]t is well settled that the scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.").

CedarCrestone alleges that Oracle's requests lack relevance, but offers no substantive argument or evidence beyond stating that Oracle's explanations "do not sound like valid claims or defenses."  CedarCrestone provides no authority for this point.  Valid-sounding or not, these claims and defenses have not yet been dropped from the case, and have survived one round of motions to dismiss.  There is no legal basis for CedarCrestone's argument that a party must exhaust all efforts to invalidate each of its opponents legal theories before conducting discovery.  In fact, discovery is the means by which those claims and defenses are proved or disproved.  It is also not clear what CedarCrestone

Robert T. Gill, Esq.
May 8, 2011
Page 3

means by, or on what authority it bases, the suggestion that "information requested must be relevant to some actual legal issue before the Court." In any event, that is not the standard. The information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Oracle's requests are well within these boundaries.

Furthermore, Oracle consistently argued, to no avail in the SAP litigation, that evidence related to other support providers should have no bearing on the case. Defendants were permitted to introduce such evidence despite Oracle's objections, including significant trial testimony by SAP's damages expert specifically about CedarCrestone. *See, e.g.*, Attachment A (excerpts from Oracle v. SAP trial transcript), at 1689:14-1690:3 ("[CedarCrestone] was right on the money with what TomorrowNow was doing."), 1715:17-19 ("CedarCrestone, an Oracle Platinum Partner, Oracle's most elite partner status, provides its customers with similar services to the TomorrowNow offering."), 1716:14-19 ("This commentary is to show the other side of the coin, that Oracle is very much aware of this company's activities, they know what they do, they still call them a Platinum Partner, so, clearly, there's something different about CedarCrestone and its relationship with Oracle and Oracle and TomorrowNow.").

## III.    CEDARCRESTONE'S APRIL 14 ARGUMENTS ARE SUBSTANTIVELY AND PROCEDURALLY FLAWED

Besides being untimely, the "objections" in CedarCrestone's letter of April 14 are unsupported and conclusory. CedarCrestone repeatedly characterizes Oracle's requests with vague and hypothetical phrases such as "scorched earth," "significant amounts of time and money," "overbroad, vague, ambiguous," "prohibitively and unnecessarily expensive," "extremely burdensome," "hundreds, if not thousands, of Computer Systems," and the potential for "hundreds of thousands of dollars in legal fees and e-discovery consultant expenses." CedarCrestone does not substantiate these arguments with factual support. Generalized objections such as these do not meet CedarCrestone's burden. *See, e.g.*, *Goodman v. U.S.*, 369 F.2d 166, 169 (9th Cir. 1966) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed. … All that has been offered by the government appears to be the opinions and conclusions of counsel. There is nothing to sustain the claim that the subpoenas were oppressive. … We find neither reason nor evidence to sustain the district court's quashing of the subpoenas, and we hold that ruling was clearly erroneous."); *Simon Design Engineering LLC v. W & W Steel LLC*, 2010 WL 2872573, *2 (D. Nev. 2010) ("[B]oiler-plate objections [are] insufficient to meet [a party's] burden of establishing that the requests in dispute are objectionable.").

Additionally, CedarCrestone's complaint that the subpoena provided an "extraordinarily short period of time" to comply is irrelevant and moot. The subpoena provided three weeks to respond. It has been nearly two months and Oracle has not moved to compel in deference to CedarCrestone's numerous requests for additional time. Furthermore, CedarCrestone is in no position to raise this objection when there is no indication that CedarCrestone has attempted to collect or review *any* responsive documents.

Robert T. Gill, Esq.
May 8, 2011
Page 4


## IV.    ISSUES REGARDING SPECIFIC REQUESTS

Oracle responds below request-by-request to the remainder of the issues in
CedarCrestone's April 14 letter:

Request No. 1

Your April 14 letter claims that this request demands the "investigation of the Computer
Systems of most of [CedarCrestone's] 680 employees," and a review of "all records and
electronically stored information (ESI) in [CedarCrestone's] possession dated January
1,2008 through the present." It certainly is interesting that CedarCrestone believes it may
have Oracle software on the computer of every one of its several hundred employees, but
for now that objection misses the point. As noted above and discussed on our last call,
Oracle explicit has limited the request to documents "sufficient to identify" the Oracle
Software on CedarCrestone's systems. If CedarCrestone does not maintain a list of the
Oracle intellectual property on its systems, then it can create one based on its reasonable
understanding. Your reference to "clients at hundreds of sites" is irrelevant to the extent
those copies of Oracle software reside on machines belonging to other entities. It is also
unclear how documents cataloguing CedarCrestone's copies of Oracle software could be
privileged, but in any event there is very likely no need for "significant expenses"
associated with privilege review. To the extent that reviewing responsive data would
require CedarCrestone to "restore discontinued Computer Systems," Rule 45(d) provides
that CedarCrestone need not produce from sources "not reasonably accessible because of
undue burden or cost" unless Oracle shows good cause.

CedarCrestone's untimely objections to this request raise more questions than they
answer. CedarCrestone states that it "does not maintain Oracle Software and Software
and Support Materials on its Computer Systems except as authorized by and in support of
its own license as an Oracle customer or a specific licensed client." If that is the case,
then it is surprising CedarCrestone cannot reasonably identify the Oracle materials on its
systems. In the spirit of cooperation and to continue attempting to avoid involving the
Court, Oracle will agree to limit this request only to PeopleSoft-branded software and
support materials, thus eliminating two of CedarCrestone's major lines of service (E-
Business Suite and Fusion Middleware, according to CedarCrestone's website). Subject
to this modification, Oracle requests that CedarCrestone comply fully with this request.

Request No. 2

Many of the request-specific arguments in CedarCrestone's April 14 letter repeat
conclusory language used in response to earlier requests. For instance, in response to
Request No. 2, CedarCrestone again claims that Oracle's "sufficient to show" request
would require CedarCrestone to "review all records and ESI in its possession dated
January 1, 2008 through the present." Oracle will not repeat in this letter its response to
these generic statements to the extent the response would be duplicative.

Robert T. Gill, Esq.
May 8, 2011
Page 5

CedarCrestone additionally asserts for the first time that Request No. 2 seeks proprietary trade secrets.  To the extent that is true, CedarCrestone may designate these materials "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order approved and entered by the District of Nevada in the underlying litigation.  Oracle provided CedarCrestone a copy of that Order, including by email of March 17, 2011, at CedarCrestone's request.  The Order will adequately protect CedarCrestone's confidential information, and CedarCrestone has not argued otherwise.

In the spirit of cooperation and to continue attempting to avoid involving the Court, Oracle will agree to clarify this request as follows:

> Documents sufficient to show Your policies, procedures, rules, guidelines, and protocols for accessing, storing, maintaining, retrieving, providing, and distributing to your customers Software and Support Materials since January 1, 2008.

CedarCrestone surely has policy and procedural documents explaining the ways in which its employees access and use Oracle's software.  Documents conveying in a detailed sense the regular procedures that CedarCrestone has used will suffice, and no review of supposedly "hundreds of thousands or responsive documents" is required.  Oracle will also agree to limit this request only to PeopleSoft-branded software and support materials.  Subject to this modification, Oracle requests that CedarCrestone comply fully with this request.

Request No. 3 – CedarCrestone's burden and confidentiality arguments are addressed above.

Request No. 4 –  CedarCrestone's burden and confidentiality arguments are addressed above.  CedarCrestone's untimely objections to this request again raise more questions than they answer.  CedarCrestone states that its "consultants and technicians have downloaded and copied Oracle Software and Software and Support Materials virtually every day in the course of providing services as a Systems Integrator," and that "CedarCrestone does not download or copy Oracle Software and Software and Support Materials except as authorized by and in support of a specific licensed customer, with respect only to Software and Support Materials which that customer had a current right to have and use."  If that is the case, then it is surprising CedarCrestone cannot reasonably identify the Oracle materials it has downloaded.

In the spirit of cooperation and to continue attempting to avoid involving the Court, Oracle will agree to clarify this request as follows:

> Documents sufficient to identify Your policies, procedures, rules, guidelines, and protocols for downloading or copying Software and Support Materials from Customer Connection, MetaLink and My Oracle Support, including Documents identifying the categories of materials You have authorized to download by each of Your customers.

Robert T. Gill, Esq.
May 8, 2011
Page 6

CedarCrestone surely has policy and procedural documents explaining the ways in which
its employees download Oracle support materials and verify their authorization to do so.
This modification should eliminate any purported concern about needing "to review all
records and ESI in its possession dated January 1,2006 through the present" or to produce
"hundreds of thousands of responsive documents."  Subject to this modification, Oracle
requests that CedarCrestone comply fully with this request.

Request No. 5 – In the spirit of cooperation and to continue attempting to avoid involving
the Court, Oracle will agree to clarify this request as follows:

> All logs or other electronic records, in native format, currently stored on any
> central network drive, server, or any other computer that You have designated or
> regularly used for downloading Software and Support Materials with either the
> PeopleSoft or JD Edwards Change Assistant tools.

This modification should eliminate any purported concern about needing to hire an "e-
discovery consultant or forensic analyst" to determine if logs exist, and does not require
any investigation related to downloads performed and stored on client machines.  As with
all of Oracle's requests, this discovery is relevant as evidence of Rimini Street's asserted
"custom and practice of the community" and the "well-known and accepted practices of
the software industry."  Oracle contends that Rimini has used Change Assistant to
download Oracle support materials without authorization.  Oracle needs to determine if
Rimini's downloading methods are "accepted practices," including by members of the
"community" specifically named by Rimini Street in its Counterclaims, such as
CedarCrestone.  CedarCrestone's confidentiality arguments are addressed above.  Subject
to this modification, Oracle requests that CedarCrestone comply fully with this request.

Request No. 6 – CedarCrestone's burden and confidentiality arguments are addressed
above.  In the spirit of cooperation and to continue attempting to avoid involving the
Court, Oracle will agree to modify this request as follows:

> Any new, tailored or customized tax or regulatory updates You developed,
> delivered, provided or sent to any customer since Jan. 1, 2008 intended to
> interact, modify or supplement any PeopleSoft-branded Software.

CedarCrestone's tax and regulatory updates for PeopleSoft software, to the extent it has
any, are likely stored in a centralized location.  Therefore, this modification addresses
CedarCrestone's assertion that it would "need to search all of its Computer Systems and
records."  Subject to this modification, Oracle requests that CedarCrestone comply fully
with this request.

Request No. 7 – While reserving all rights, Oracle will accept for now CedarCrestone's
representations with respect to George Weston Bakeries and will not seek further
information in response to this request.

Robert T. Gill, Esq.
May 8, 2011
Page 7


Request No. 8 – CedarCrestone's burden, confidentiality, and relevance arguments are addressed above.  In the spirit of cooperation and to continue attempting to avoid involving the Court, Oracle will agree to modify this request as follows:

>Documents sufficient to show Your policies, procedures, rules, guidelines, and protocols for providing each of the following services described on your websites, what Oracle Software is involved in the provision of such services, and whether any such Oracle Software is stored or located on your Computer Systems.  (with the subcategories referring to CedarCrestone's website remaining as drafted)

Subject to this modification, Oracle requests that CedarCrestone comply fully with this request.

Request No. 9 – Based on CedarCrestone's representation, this request appears to be resolved.  Please confirm that CedarCrestone has not used automated download tools, crawlers, scrapers, or other software programs to download or copy any Software and Support Materials since January 1, 2008, per the limited scope stated in the subpoena.

Request No. 10 – Oracle did not intend to request trade secrets with this request.  In the spirit of cooperation and to continue attempting to avoid involving the Court, Oracle will agree to modify this request as follows:

>Representative copies of all marketing materials or other non-confidential representations made by You to any customer or potential customer describing your capabilities, qualifications, or methods of providing support for any of the PeopleSoft, J.D. Edwards, and Siebel families of software products.

Subject to this modification, Oracle requests that CedarCrestone comply fully with this request.

Request No. 11 – CedarCrestone says "it can produce a copy of its Oracle licenses." Please do so to the extent they are not included in CedarCrestone's March 24 production. Such licenses are relevant to Rimini's defenses, for instance to the extent Rimini claims implied authority to do something that is in fact explicitly authorized in CedarCrestone's license.

The rest of CedarCrestone's untimely objections to this request raise more questions than they answer.  CedarCrestone states that besides its Oracle licenses, "all CedarCrestone possession and use of Oracle Software, including any Software and Support Materials, would occur pursuant to a license held by a third party, CedarCrestone's client. CedarCrestone does not have copies of those client licenses, which would be in the possession of Oracle and the client."  While reserving its rights, Oracle will accept CedarCrestone's representation that it does not possess any copies of any of its customers' licenses.  However, it is not clear how CedarCrestone can insist in response to the requests above that all of its copying and downloading is authorized pursuant to

Robert T. Gill, Esq.
May 8, 2011
Page 8


customer licenses, when CedarCrestone does not have access to any such licenses. *See, e.g.*, discussion of Requests Nos. 1 and 4, above.

**V.      ORACLE CONTINUES TO REQUEST FULL COMPLIANCE**

Please confirm in writing that CedarCrestone will fully comply with Oracle's subpoena, as modified by the proposals above.  All such proposals are subject to Oracle's reservation of all rights, including the right to seek to compel full compliance with the subpoena as originally and properly served.

Oracle remains willing to meet and confer with respect to CedarCrestone's compliance, but this invitation is in no way an admission that any objection by CedarCrestone is timely, valid, or should be entertained by the Court.  Oracle reserves its right to seek all appropriate relief from the United States District Court for the District of Nevada per Fed. R. Civ. P. 45.

Please let me know if you are available to discuss any remaining issues after you have reviewed Oracle's proposed modifications with your client.

Sincerely,

Chad Russell