# EXHIBIT F

# BOIES, SCHILLER & FLEXNER LLP

1999 HARRISON STREET • SUITE 900 • OAKLAND, CA 94612 • PH. 510.874.1000 • FAX 510.874.1460

July 26, 2011

**VIA E-MAIL**

Robert Reckers, Esq.
Shook, Hardy & Bacon, LLP
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, TX 77002
rreckers@shb.com

Re:   *Oracle USA, Inc. and Oracle International Corp. v. Rimini Street, Inc. and
       Seth Ravin*, No. 2:10-cv-00106 (D. Nev., filed Jan. 25, 2010)

Dear Rob:

I write regarding Rimini Street's responses to Interrogatories Nos. 20-25.

To begin, Rimini Street's responses were not served timely, which waived all
objections. As noted on the proof of service accompanying the Fifth Set of
Interrogatories, they were served by hand on May 25, 2011, making responses originally
due on June 24, 2011. Oracle agreed to a two-week extension of time, making responses
due July 8, 2011. Rimini Street's responses were not served until July 11, 2011. "It is
well established that a failure to object to discovery requests within the time required
constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468, 1473 (9th Cir.1992); *see also* Fed. R. Civ. P. 33(b)(4) ("Any ground not
stated in a timely objection is waived unless the court, for good cause, excuses the
failure."); *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir. 1981) ("Generally, in the
absence of an extension of time or good cause, the failure to object to interrogatories
within the time fixed by Rule 33 constitutes a waiver of any objection."); *Safeco Ins. Co.
v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) ("interrogatory objections not
included in a timely response are waived even if the objections are contained in a later
untimely response, absent a showing of good cause"); *Starlight Int'l, Inc. v. Herlihy*, 181
FRD 494, 497 (D. Kan. 1998) (holding objections waived by two-day late interrogatory
responses; counsel's calendaring error was "carelessness, inadvertence, or mistake by
counsel" which did not provide "good cause").

BOIES,   SCHILLER   &   FLEXNER   LLP

Robert Reckers, Esq.
July 26, 2011
Page 2 of 9

**Interrogatories No. 20, No. 21, No. 22, and No. 23**

    **1.    Improper objections to the breadth of Oracle's interrogatories, improper burden objections and improper objections to the term "Source"**

    Interrogatories No. 20, No. 21 and No. 22 use the term "Source," defined as:

> "the origin and name of all Installation Media, Software and Support Materials and/or existing Environment used to create an Environment (including all Sources for any predecessor iterations or versions incorporated into an Environment, if applicable), and further includes (1) the network or physical location(s) of the Source at the time it was used; (2) the customer from which or on whose behalf you claim to have obtained each Source (and, if you obtained a Source from Oracle, the website or media from which it was obtained); and (3) the identity (by name) of any other Environment used as a Source."

    Rimini Street objects to the definition of the term "Source" as "overbroad and unduly burdensome to the extent it requests substantial discrete pieces of information for 'all Installation Media, Software and Support Materials and/or existing Environments used to create an Environment (including all Sources for any predecessor iterations or versions . . . )'" Rimini Street's objections have been waived, as discussed above.

    Rimini Street's objections are also meritless, and are in fact a transparent attempt to avoid meeting its burden in bringing a license defense.  Rimini Street continues to assert "license agreements . . . held by Rimini Street's licensed customers for whom Rimini Street acts as an agent" as an affirmative defense to Oracle's allegations that Rimini Street infringed Oracle's copyrights.  To assert this defense as to the hundreds of installations of Oracle software that are the subject of Oracle's Interrogatories No. 20, No. 21, No. 22, and No. 23, Rimini Street must identify the source for every piece of Oracle code used to create and modify each of these environments.  Far from being overbroad, Oracle's request requires information necessary to test Rimini Street's license defense.  For every environment as to which Rimini Street does not identify each and every source used to create and modify that environment, Rimini Street will have waived its license defense.

    Rimini Street's objections that Oracle is requesting "substantial discrete pieces of information" and even "thousands of pieces of discrete information relating to hundreds

BOIES, SCHILLER & FLEXNER LLP

Robert Reckers, Esq.
July 26, 2011
Page 3 of 9

of separate environments" are similarly without merit.  It is Rimini Street and not Oracle that chose to create hundreds of local environments without concern for the sources of the materials used in building those environments.  Rimini Street cannot justifiably take the position that it is unduly burdensome to be forced to collect information that simply documents the scope of Rimini Street's infringement.

To the extent that it has not already been waived, Rimini Street should withdraw this objection and respond in full.

## 2.      Exhibits 1A, 1B, and 1C Are Insufficient

In its responses to Interrogatories No. 20, No. 21, No. 22,  and No. 23, Rimini Street incorporates Exhibits 1A (PeopleSoft environments), 1B (J.D. Edwards environments) and 1C (Siebel environments).  Though these exhibits contain useful information, they do not identify with specificity any download, DVD, CD, or other media containing Oracle software and support materials, and therefore do not respond to Oracle's interrogatories.

In addition, Oracle is left to guess how to interpret these Exhibits.  By way of example, in Exhibit 1A, environment F881PGSO is identified as a copy of environment F842DRCO, which in turn is a copy of F842ESDM, which in turn is a copy of F842PPSM, which in turn is a copy of F842DBIM, which in turn is a copy of F842CODM.  F842CODM is identified as a "Build" environment, and further is noted as containing "[a]ll modules fixed through 05-01-06 (MP6), Payables through Bundle 16, Asset Management bundle 15."  However, Oracle has no way of knowing, and Exhibit 1A does not state, what particular downloads, DVDs, CDs, and other media were used to install the application, to upgrade to Maintenance Pack 6, and to further upgrade the Payables and Asset Management modules.

Going one step further, F842DBIM, created as a copy of F842CODM, is noted as containing "[a]ll modules fixed through 05-01-06 (MP6) and Payables through Bundle 17. Also, Asset Management has been patched through Bundle 16."  Not only does Oracle have no way of knowing what particular downloads, DVDs, CDs, and other media were used to install the application, to upgrade to maintenance pack 6, and to further upgrade the Payables and Asset Management modules, Oracle cannot determine whether Rimini Street is taking the position that F842DBIM was copied from F842CODM before or after Maintenance Pack 6, Payables Bundle 16, and Asset Management Bundle 15 were applied.  Nor can Oracle determine whether Rimini Street is taking the position that the further patches applied to F842DBIM (Payables Bundle 17 and Asset Management

BOIES,   SCHILLER   &   FLEXNER   LLP

Robert Reckers, Esq.
July 26, 2011
Page 4 of 9

Bundle 16) came from materials allegedly earmarked for City of Des Moines ("COD") or from materials allegedly earmarked for Dave and Busters ("DBI").

As well, these exhibits lack basic information about certain environments. For example, certain environments in Exhibit 1A are identified as copies of environments H831ROSO, H890BNIM and F824PPSM, but no explanation is given as to the source of H831ROSO, H890BNIM or F824PPSM. Certain J.D. Edwards environments identified during the deposition of 30(b)(6) designee Ray Grigsby are entirely absent from Exhibit 1B. Information regarding the materials used to create and modify these environments should be added to the respective exhibits.

Last, Exhibit 1A seems inconsistent with the "Build Requests" incorporated into Rimini Street's responses pursuant to Fed. R. Civ. P. 33(d).  *See, e.g.*, RSI02972079 (stating that H831OAIO was created as a copy of H831LBIO).  It is Rimini Street and not Oracle that must resolve such inconsistencies in its responses.

Exhibits 1A, 1B, and 1C neither identify nor purport to identify "the origin and name of all Installation Media, Software and Support Materials and/or existing Environment used to create an Environment," and Rimini Street therefore has failed to answer these Interrogatories as propounded.  Rimini Street must supplement its responses.

3.    **Exhibit 2 Identifies Material That Is Either Irrelevant Or Insufficient**

In its responses to Interrogatories No. 20 and No. 21, Rimini Street states:

An environment listed in Exhibit 1A having 'Build' listed as its source in its third column, for example, indicates that the environment was built using the client's installation media. . . . The specific client media used to build an environment, along with its source, may be identified by examining Exhibit 2 and the documents referenced therein.

In its responses to Interrogatories No. 20, No. 21, and No. 22, Rimini Street references to the materials listed in Exhibit 2 pursuant to Fed. R. Civ. P. 33(d).

The vast majority of the materials identified in Exhibit 2 have no relation to Interrogatories No. 20, No. 21, and No. 22, nor indeed to environments, at all. For example, regarding H881STLM, identified as an environment for customer St. Luke's

B O I E S ,    S C H I L L E R    &    F L E X N E R    L L P

Robert Reckers, Esq.
July 26, 2011
Page 5 of 9

Cornwall Hospital, the relevant documents in Exhibit 2 would presumably be those that
include the terms "H881STLM" or "St. Luke's Cornwall Hospital" in the "File Name" or
"Source File Path" Columns of Exhibit 2. Documents identified for St. Luke's Cornwall
Hospital in Exhibit 2 under these criteria include architecture questionnaires, lists of
modules used by the customer, remote access information, a "post install checklist," and
other irrelevant materials such as a welcome letter identifying the customer's Principal
Support Engineer. None of the listed documents identify any downloads, DVDs, CDs or
other installation media at all, let alone identify installation media used to create and
patch H881STLM.

As another example, the same types of documents are identified for H890AMSM,
an environment associated with customer Aleut Management Services. In addition,
Rimini Street identifies RSI00038989, "eDelivery Downloaded Software. Aleut.xlsx,"
which is a list of zip file names, sizes and descriptions. Nowhere is there any indication
that any of these specific zip files were used to create H890AMSM. Furthermore, the
patch level identified for H890AMSM in Exhibit 1A is "All modules fixed through 05-
05-09 (mp13), Payroll through 09E, HR through Bundle #20." RSI00038989 has 13
individual zip files for HRMS 8.9 Maintenance Pack 1 through 8.9 Maintenance Pack 13.
Is Oracle to assume that all 13 of these zip files were applied sequentially, or that only a
subset were used? Also, the architecture questionnaire for HRMS identified in Exhibit 2,
RSI00047239, says that Aleut Management Services is running PeopleTools 8.47 for
their instance of HRMS, but the only PeopleTools downloads listed in RSI00038989 are
for PeopleTools 8.49 and 8.50. Oracle therefore cannot determine based on the identified
materials which PeopleTools installation media were used in building H890AMSM.

Exhibit 2 appears to be an undifferentiated set of SharePoint documents having
little if anything to do with Interrogatories No. 20 and No. 21, and No. 22. Rimini Street
must either identify the specific files used to create each local environment on Rimini
Street's computer systems, or must waive its license defense.

### 4.    Rimini Street Must Identify Responsive Material In The "HRMS Technical Documentation" And "HRMS Delivered Folders" With Specificity

In its responses to Interrogatory No. 22, Rimini Street purports to refer to "The
HRMS Technical Documentation that has been produced to Oracle" and "[t]he HRMS
Delivered folders that have been produced to Oracle" pursuant to Fed. R. Civ. P. 33(d).
This gross reference to many thousands of files is inadequate. A Rule 33(d) reference
must provide "sufficient detail to enable the interrogating party to locate and identify
them as readily as the responding party could." Fed. R. Civ. P. 33(d); *accord Rainbow
Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 904 (9th Cir. 1983)

BOIES,  SCHILLER  &  FLEXNER  LLP

Robert Reckers, Esq.
July 26, 2011
Page 6 of 9

(reference to documents inadequate where it did not "specify where in the records the answers could be found"); *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 332-33 (C.D. Cal. 2004) (collecting cases).  Rimini Street must be specific in identifying which parts of the HRMS Technical Documentation and HRMS Delivered productions contain which responsive information as to which environments.

> **5.    Rimini Street's Objections To The Phrase "Used For A Customer Other Than The Specific Customer" Are Without Merit**

In its responses to Interrogatory No. 23, Rimini Street refers to Exhibits 1A, 1B and 1C and the "Build Requests" as examples of copying of one customer's environment to create another customer's environment as responsive to Interrogatory No. 23.  Rimini Street lists no other responsive activity in its response.

To the extent that this failure to respond is based upon Rimini Street's objections that the phrase "used for a customer other than the specific customer" is "vague, ambiguous, and overly broad," Rimini Street must supplement its response.  First, these and all other objections have been waived by Rimini Street's failure to timely respond.  Second, the idea that one customer's software and support materials (including environments) should not be used for any other customer is part and parcel of Rimini Street's defense to Oracle's claims of copyright infringement.  *See, e.g.*, Rimini Street's Answer to Oracle's Second Amended Complaint, Dkt. 153, ¶ 4 ("Rimini Street does not co-mingle the independent downloads of clients.").  Far from being "vague, ambiguous and overly broad," the cross-use and improper copying of Oracle materials is at the heart of this lawsuit.  Rimini Street must supplement its responses to Interrogatory No. 23 to include all instances of improper copying and cross-use of the environments hosted on Rimini Street's computer systems and of all Oracle software and support materials therein.

> **6.    No Information About Oracle Database**

Finally, the responses to Interrogatories No. 21, No. 22, and No. 23 fail to provide any information about Oracle database software.  The definition of "Software and Support Materials" specifically include Oracle database.  Rimini Street's objection to that definition – which was waived in any event – does not offer any basis to exclude information about Oracle database software from its responses.  Rimini Street must supplement its responses to include information regarding the sources used to create and modify Oracle database installations.

BOIES, SCHILLER & FLEXNER LLP

Robert Reckers, Esq.
July 26, 2011
Page 7 of 9

**Interrogatories No. 24 and No. 25**

1.      **Refusal to Answer Regarding "Non-Customer Locations"**

Interrogatories No. 24 and No. 25 use the term "Non-Customer Location," which is defined as "any location on an Identified Rimini Computer System that is not referenced to a unique Rimini customer, is not specific to a unique Rimini customer, or is not exclusively used or designated for a unique Rimini customer." This includes but is not limited to the following Rimini network locations: \\rsi-clsvr01\client_software\PeopleSoft, \\rsi-clsvr01\internal_software\, \\rsi-data01\share\client_archives\_ftp.peoplesoft.com\, \\rsi-data01\share\software\oracle, \\rsi-data01\share\software\PeopleSoft, and \\10.12.1.5\fileshare\software\PeopleSoft."

Rimini Street objects to the definition of the term "Non-Customer Location" as "vague, ambiguous, overbroad, and unduly burdensome," and says it will respond only as to "Oracle Specified Locations" but "without conceding that Oracle's Specified Locations meet Oracle's definition of 'Non-Customer Location.'" Those objections were waived, making the limitation improper.

The objections are also meritless. The relevance of responsive information is indisputable. Rimini has alleged that "each of Rimini Street's clients has a unique data 'silo' for storing clients' Oracle Software and Support Materials," has denied that it has "'stockpile[d] a library' of Oracle's intellectual property," and has alleged that "[s]uch a 'library' has never existed." Counterclaims ¶ 34. Contrary to this allegation, Rimini Street's documents show that Rimini has possessed and stored Oracle software in support materials in various locations that Rimini Street's own employees called a "software library," which was not in any way a "unique data 'silo'" for any specific customer. *See, e.g.*, RSI02370530 (location not tied to a specific customer "served as a sort of software media library" and "it was ok to use media from here without necessarily copying the customer media around the network"). Thus, the contents and uses of software in these non-client specific locations are plainly relevant, and Rimini's overbreadth and burden objections are meritless. Rimini's vagueness and ambiguity objections are also unexplained and meritless.

Nor is it proper for Rimini to limit its response to the specific network locations Oracle listed in Interrogatories 24 and 25. These Interrogatories make clear that the set of locations provided as examples are not an exhaustive list ("This includes **but is not limited to** the following Rimini network locations..."). Rimini, not Oracle, knows the locations where Rimini has stored Oracle software and support materials. These interrogatories call for Rimini to provide responsive information regarding any additional

Robert Reckers, Esq.
July 26, 2011
Page 8 of 9

non-customer locations that are not included in the list of examples that Oracle provided. Rimini's response fails to do so.

Rimini Street must fully respond to the interrogatories as propounded.

## 2.     Refusal to Provide a Narrative Response

Rimini Street's responses to Interrogatories No. 24 and No. 25 are limited to documents referenced pursuant to Rule 33(d).  This is also improper.

First, reference to documents is only permissible if the documents actually contain a complete answer to the interrogatory.  *See* Fed. R. Civ. P. 33(d) (documents may be referenced only "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records"); *see also SEC v. Elfindepan,* 206 F.R.D. 574, 576 (M.D.N.C. 2002) (Rule 33(d) reference inadequate if "the information is not fully contained in the documents"); *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 278 (C.D. Cal.1999) ("Rather, under Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories-not to avoid answering them.")

In response to Interrogatories No. 24 and No. 25, Rimini Street has a list of more than 150 documents by Bates number.  Those documents are not the objective business records (such as financial reports or contracts) typically referenced pursuant to Rule 33(d).  Instead, they are emails among Rimini Street employees.  While the emails do contain admissions about Rimini Street's conduct, they do not, as a set, provide a complete answer to the questions propounded.

As one example, Exhibit 3 contains no reference to Plaintiffs' Exhibit 161 (RSI02684851), which contains a partial screenshot showing some of the contents of one of Rimini Street's software libraries – one specifically referenced in the definition of "Non-Customer Location" – which is shown to include at least FSCM 8.4 Service Pack 2 as well as at least 6 specific maintenance packs for the same release.  Nor do any of the other documents that are referenced in Exhibit 3 contain the same information.  As another example, none of the environment build requests (RSI02971994-2158) are included in Exhibit 3, though they clearly show that Rimini Street used Oracle software in generic (non-client specific) software libraries to create client environments, and even though Rimini Street incorporated those documents in response to other interrogatories.

The point is not that Rimini Street's response is inadequate merely because it omits documents (though that is also true).  Even if Rimini Street's response actually

BOIES, SCHILLER & FLEXNER LLP

Robert Reckers, Esq.
July 26, 2011
Page 9 of 9

contained all of the emails in its production that have responsive information, that information would not provide a complete response to the Interrogatories. Rimini Street surely cannot contend that no other data source and no Rimini employee's memory have any relevant information beyond the emails Rimini Street has produced in this litigation. Moreover, in contrast to the objective data sources more typically referenced pursuant to Rule 33(d), Oracle expects that Rimini Street may try to dispute what some of the emails referenced in Exhibit 3 mean, further confirming that the emails themselves do not contain a complete response. In fact, Rimini's employees have already taken this approach several times in depositions, disputing the meaning of documents discussing Rimini's software library, including documents listed in Exhibit 3. *See, e.g.,* Dennis Chiu Dep. Tr. 174:9-179:7; 190:16-192:23; 201:14-206:23.

 Second, even assuming the referenced documents contained complete answers to the questions posed, reference to them in lieu of a narrative response is only permissible "if the burden of deriving or ascertaining the answer [from the business records] will be substantially the same for either party." Fed. R. Civ. P. 33(d); *see also Fresenius Medical Care Holding Inc. v. Baxter Intern., Inc.*, 224 F.R.D. 644, 650 (N.D. Cal. 2004). That is not the case here.

 The emails referenced in response to Interrogatories No. 24 and 25 were written by individuals who are still largely in Rimini Street's employment. Ascertaining their meaning and determining the answers to the interrogatories posed would plainly be easier with the assistance of the individuals that wrote them.

 Please confirm Rimini Street will prepare a complete narrative answer to Interrogatories No. 24 and No. 25.

 Very truly yours,

 Kieran Ringgenberg