1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   TELEPHONE: (702) 382-7300
    FACSIMILE: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
6   FRED NORTON (*pro hac vice*)
    KIERAN P. RINGGENBERG (*pro hac vice*)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   TELEPHONE: (510) 874-1000
    FACSIMILE: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11  BINGHAM MCCUTCHEN LLP
    GEOFFREY M. HOWARD (*pro hac vice*)
12  THOMAS S. HIXSON (*pro hac vice*)
    BREE HANN (*pro hac vice*)
13  KRISTEN A. PALUMBO (*pro hac vice*)
    THREE EMBARCADERO CENTER
14  SAN FRANCISCO, CA  94111-4067
    Telephone:  415.393.2000
15  Facsimile:  415.393.2286
    geoff.howard@bingham.com
16  thomas.hixson@bingham.com
    bree.hann@bingham.com
17  kristen.palumbo@bingham.com

18  DORIAN DALEY (*pro hac vice*)
    DEBORAH K. MILLER (*pro hac vice*)
19  JAMES C. MAROULIS (*pro hac vice*)
    ORACLE CORPORATION
20  500 Oracle Parkway
    M/S 5op7
21  Redwood City, CA 94070
    Telephone:  650.506.4846
22  Facsimile:  650.506.7114
    dorian.daley@oracle.com
23  deborah.miller@oracle.com
    jim.maroulis@oracle.com
24

25  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle America, Inc., and
    Oracle International Corp.
26

27

28

SHOOK, HARDY & BACON LLP
B. Trent Webb (*pro hac vice*)
Eric Buresh (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

LEWIS AND ROCA LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
WAllen@LRLaw.com

GREENBERG TRAURIG
Mark G. Tratos (Nevada Bar No. 1086)
Brandon Roos (Nevada Bar No. 7888)
Leslie Godfrey  (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

Attorneys for Defendants Rimini Street,
Inc., and Seth Ravin

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF NEVADA

3

4    ORACLE USA, INC., a Colorado corporation;          Case No. 2:10-cv-0106-LRH-PAL
     ORACLE AMERICA, INC., A Delaware
5    corporation; and ORACLE INTERNATIONAL          **[CORRECTED] JOINT CASE**
     CORPORATION, a California corporation,         **MANAGEMENT CONFERENCE**
6                                                   **STATEMENT**
                        Plaintiffs,
7            v.                                     _____

8    RIMINI STREET, INC., a Nevada corporation;     Date:     January 10, 2012
     AND SETH RAVIN, an individual,                 Time:     10:30 a.m.
9                                                   Place:    Courtroom 3B
                        Defendants.                 Judge:    Magistrate Peggy A. Leen
10

11

12          Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

13   (collectively, "Oracle" or "Plaintiffs") and Defendants Rimini Street, Inc. ("Rimini Street") and

14   Seth Ravin ("Ravin") (together, "Rimini" or "Defendants") jointly submit this Case Management

15   Conference Statement in advance of the January 10, 2012 Case Management Conference

16   ("CMC") to provide the Court with a status report of the pending matters.

17          There have been no updates to the pleadings since the last CMC statement was filed on

18   November 4, 2011.  Below, Part I provides a status report on the party and non-party discovery

19   to date.  In Part II, the Parties set forth their positions on current discovery disputes which they

20   request that the Court resolve at this CMC.

21   **I.      DISCOVERY PROGRESS**

22          Since the last CMC statement was filed on November 4, 2011, the fact discovery deadline

23   passed on December 5 (subject to limited extensions approved by the Court through December

24   19 and a couple of trailing depositions) and the Parties completed the following discovery:

25          **A.      Discovery Sought From and Produced By Plaintiffs.**

26                  **1.      Documents**

27          On November 7, 2011 Oracle responded to Rimini's fifth set of requests for production,

28   which included 57 new requests.  There are no further outstanding requests for production served

1   on Oracle by Rimini.

2     Between November 4, 2011 and the submission of this statement, Oracle has produced

3   approximately 741 additional native files and 1,588 additional documents, totaling

4   approximately 15,370 pages, including customer contracts, customer-specific documentation,

5   customer-specific oki3 reports, and additional documents responsive to Rimini's document

6   requests.

7     Oracle has produced approximately 270,821 responsive documents, totaling

8   approximately 1,340,533 pages, including thousands of voluminous excels; hundreds of software

9   disks and customer-specific oki3 reports; several hard drives of server log files; customer

10   contracts; copyright registrations; deposit materials; technical support policies; product tables;

11   terms of use; organizational charts; financial data and damages-related documents, including

12   research and development reports, reports of support cancellation and renewal rates, and price

13   lists; Oracle partner documentation; pre-litigation correspondence between Oracle and Rimini;

14   deposition transcripts, exhibits, and written discovery from *Oracle USA, Inc. et al. v. SAP AG et*

15   *al*, No. 07-cv-01658 (N.D. Cal. filed March 22, 2007); and responsive, unprivileged documents

16   from all 55 agreed-upon Oracle custodians.  In addition, Oracle has produced hundreds of

17   gigabytes of compressed files on hard drives.

18        **a.**  **Custodial Productions**

19     Oracle completed document productions from all 55 agreed-upon Oracle production

20   custodians on September 8, 2011, consistent with Oracle's discovery responses and objections.

21        **b.**  **Non-Custodial Productions**

22     Oracle completed all non-custodial documents for production, including the production

23   of all customer contract documents that Oracle has been able to locate after a reasonable and

24   diligent search.  Oracle has also produced the Oracle RDBMS database licenses for each of

25   fifteen customers requested by Rimini as well as Oracle's standard Oracle RDBMS database

26   licenses in use from 2002-2010, as part of a compromise reached between the parties regarding

27   production of Oracle database licenses.

28

[CORRECTED] JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1             **2.**       **Interrogatories**

2        On November 21, 2011, Oracle responded to Rimini's fifth set of interrogatories.  On

3 December 15 and December 19, Oracle provided supplemental responses to Rimini's previously

4 propounded interrogatories.

5             **3.**       **Depositions**

6        On November 4, 2011, Rimini noticed the depositions of four Oracle current or former

7 employees: Safra Catz, Charles Phillips, Richard Allison and Juan Jones.  These depositions

8 have been completed.

9        Also on November 4, 2011, Rimini served its third Rule 30(b)(6) deposition notice,

10 which contained 22 topics.  Rimini's second Rule 30(b)(6) notice, served on September 28,

11 2011, contained 61 topics.  The parties have narrowed these deposition notices through meet and

12 confer, and their respective positions on outstanding topics are set out in Part II, below.

13      **B.**       **Discovery Sought From and Produced By Defendants.**

14             **1.**       **Documents**

15        On October 31, 2011, Rimini served its responses to Oracle's third request for inspection.

16 On November 2, 2011, Rimini served its responses to Oracle's seventh set of requests for

17 production and on November 7, 2011, Rimini served its responses to Oracle's eighth set of

18 requests for production.

19        Between November 4, 2011 and the submission of this statement, Rimini has produced

20 approximately 45 additional documents, totaling approximately 648 pages.  To date, Rimini has

21 produced over 898,650  documents totaling over 6,800,500 pages, as well as over 81,360 native

22 files, numerous environments and environment backups, financial information, ticketing system

23 data, data archives, source code, log files, productions relating to SalesForce exports, TUSS

24 spreadsheet, DevTrack spreadsheets, various extract and individual VMs and network shares.

25             **a.**       **Custodial Productions**

26        As of the date of the submission of this statement, Rimini has completed a good-faith

27 review and production of responsive, non-privileged documents collected from all 55 Rimini

28 custodians, consistent with Rimini's discovery responses and objections, and subject to further

1   requests or developments.

2                           b.      Non-Custodial Productions

3           Rimini completed gathering, reviewing and producing non-custodial documents,

4   including materials from various department shares and non-custodial email files.  Productions

5   from these sources included data relating to development, customer archives, financial, client

6   relationships, marketing and sales.

7                       2.      Interrogatories and Requests for Admission

8           On November 16, 2011, Rimini responded to Oracle's eighth set of interrogatories.  On

9   December 9, and December 12, 2011, Rimini provided amended responses to an exhibit

10  provided in response to Oracle's fifth set of interrogatories.  On December 19, 2011, Rimini

11  provided supplement responses to interrogatories 15 and 20-22.  On December 19, Rimini also

12  responded to Oracle's Third Set of Requests for Admissions.

13                      3.      Depositions

14          Oracle took depositions on November 11, November 17, November 18, November 22,

15  December 15, December 16, January 5, and January 6, 2011, totaling twenty-four non-customer

16  depositions (the number authorized by the Court).[1]  Oracle issued its final five non-customer

17  deposition notices on November 7, 2011 and completed them as soon as possible thereafter as

18  scheduling permitted.

19      C.      Third Party Discovery

20                      1.      Customers

21          Oracle has served a total of 275 customer subpoenas.  Oracle has received approximately

22  270 document productions in response to these subpoenas.  Oracle's efforts to secure the

23  cooperation of subpoenaed customers with outstanding or deficient productions, with the

24  exception of on-going efforts concerning QVC, discussed below, are now complete.

25          Oracle has sent all customer productions received to date to Rimini and has received 18

26  _____

27  [1] The December 16 and January 6 depositions each addressed three topics in a single 30(b)(6)
    deposition notice.

28

1  customer productions from Rimini.  Pursuant to their June 17, 2011 agreement, the Parties

2  continue to exchange copies of third-party productions as soon as reasonably practicable with all

3  documents provisionally designated as Highly Confidential – Attorneys' Eyes Only.  Re-

4  designations and de-designations occur as necessary per the terms of that agreement.

5        The Court ordered that Oracle may take up to 20 customer depositions.  Oracle noticed

6  20 customer depositions and has taken 18 of these depositions.  Of the two outstanding customer

7  depositions, one of the customers, Medtronic Inc., has filed a motion to quash Oracle's

8  deposition subpoena before the District Court of Minnesota.  This motion is scheduled to be

9  heard on January 17, 2012.  The other outstanding customer deposition involves QVC, Inc., and

10  the parties are currently meeting and conferring regarding Oracle's subpoena.  Oracle anticipates

11  that these objections will be resolved without court intervention within the next two weeks.

12              **2.    Public Entities**

13        Oracle has made state "sunshine act" requests of 50 public entities that may have had

14  significant contact with Rimini, and 45 entities have responded with a substantive production.

15  Oracle has sent all public entity productions received to date to Rimini.

16              **3.    Other Third Parties**

17        On December 1, 2011, Oracle and Rimini Street deposed CedarCrestone, a Rimini Street

18  competitor.

19        On December 9, 2011, Oracle deposed Adams Street Partners, Rimini's largest outside

20  investor, to investigate representations made by Rimini and Ravin regarding Rimini's support

21  practices.  Adams Street Partners designated Robin Murray, who is also a current member of

22  Rimini's Board of Directors, as its Rule 30(b)(6) witness.  Oracle has requested that Adams

23  Street Partners provide Oracle with two additional deposition hours because, from Oracle's

24  perspective, Adams Street Partners did not designate a sufficiently prepared or knowledgeable

25  witness on the noticed topics.  Oracle and Adams Street Partners are still in the process of

26  meeting and conferring on the issue.  If Adams Street does not accept Oracle's proposal that this

27  Court resolve the dispute,  and if Oracle and Adams Street Partners cannot agree, Oracle will

28  raise any dispute in the Northern District of California, where Oracle's deposition subpoena is

1    noticed.

2         Oracle received 22 documents, totaling 40 pages, in response to the document subpoena

3    it served on Vinnie Mirchandani on November 1, 2011.  These documents have been sent to

4    Rimini.

5    **II.      DISCOVERY DISPUTES REQUIRING JUDICIAL RESOLUTION**

6         **A.      Rimini's Motion to Compel Discovery From Oracle**

7              **1.      Oracle Has Refused to Provide Meaningful Disclosure of its Claims,
                         Requiring this Motion to Compel.**
8
9         Rimini Street has served interrogatories and noticed the deposition of Oracle pursuant to

10   Federal Rule of Civil Procedure 30(b)(6) in an attempt to discover the factual bases for the

11   claims that Oracle intends to pursue at trial.  Rather than provide such elementary disclosures,

12   Oracle has staunchly opposed Rimini Street's discovery with a series of excuses.  For example,

13   Oracle has refused to identify the barest of factual support for its claims of copyright

14   infringement (as requested in Interrogatory No. 17), breach of contract, or inducement to breach

15   contract (as requested in Rimini Street's Interrogatory No. 11) on which it intends to rely at trial,

16   objecting that to do so would be "unduly burdensome."  In an attempt to obtain this information,

17   Rimini Street served a deposition notice under Rule 30(b)(6), to which Oracle objected in its

18   entirety, complaining that"[r]egardless of how much time was spent reviewing documents or

19   preparing, no deponent could possibly be qualified to testify to such a broad topic."  *See* Hann

20   Decl. Ex. B, (Letter from Thomas S. Hixson to Robert H. Reckers, dated October 11, 2011 at 2).

21   Rimini Street has consistently communicated to Oracle that it merely seeks the disclosure of

22   information in the least burdensome and most efficient way possible, and has offered a series of

23   potential compromises aimed at resolving the disputes.  Oracle has either rejected or ignored

24   Rimini Street's offers and pleas.  It is for this reason that Rimini Street is forced to raise these

25   issues with the Court.

26         In fact, Oracle has refused to even offer a single corporate representative to testify in

27   response to any of the topics in Rimini Street's Second Notice of Deposition Pursuant to Rule

28   30(b)(6) served September 28, 2011 ("Second Notice"), and to the vast majority of topics in

1    Rimini Street's Third Notice of Deposition Pursuant to Rule 30(b)(6) served November 4, 2011

2    ("Third Notice").  *See* Hann Decl. Ex. A, (Rimini Street's Second Notice) and Hann  Decl. Ex. C

3    (Rimini Street's Third Notice).   Both the Second Notice and the Third Notice were timely

4    served well before the parties' agreed upon deadline for serving deposition notices, and at least

5    four weeks before the close of discovery.  Yet Oracle repeatedly objected to the Second Notice

6    "as a whole" based in part on its assertion that the notice was not timely served and that Rimini

7    Street "unreasonabl[y] delay[ed]" in serving 30(b)(6) notices, even though ***Oracle itself served a***

8    ***30(b)(6) notice on November 7, 2011, three days after Rimini served its Third Notice.***  Oracle

9    may not unilaterally ignore Rimini Street's timely-served 30(b)(6) notices – subject to any valid

10   legal objections, Oracle is "required to produce one or more witnesses knowledgeable about the

11   subject matter of the noticed topics."  *Great American Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*,

12   251 F.R.D. 534, 538-539 (D. Nev. 2008).  Oracle's firm refusal to designate one or more

13   corporate representative(s) to testify within the fact discovery period should not operate to the

14   prejudice of Rimini Street.

15         Since serving its interrogatories and 30(b)(6) notices, Rimini Street has repeatedly

16   offered various compromises to avoid judicial intervention.   In response to Oracle's lengthy

17   objections to Rimini Street's Second Notice, Rimini Street carefully considered its requests and

18   submitted a series of proposals in an effort to "streamline and focus the discovery process while

19   ensuring that Rimini Street obtains the discovery to which it is entitled."  *See* Hann  Decl. Ex. E,

20   (Letter from Robert H. Reckers to Thomas S. Hixson, dated December 6, 2011).  When Oracle

21   rejected Rimini Street's proposals wholesale, Rimini Street suggested a meet-and-confer, which

22   occurred on December 22, 2011.  Again Rimini Street submitted revised, streamlined proposals

23   for Oracle's consideration, as Oracle was still producing documents and discovery requests well

24   into mid-December.  In all, Rimini Street has voluntarily agreed to withdraw 38 of its pending

25   30(b)(6) topics, and for many of the remaining 30(b)(6) topics Rimini Street has indicated its

26   willingness to consider withdrawing the topic if Oracle supplements its interrogatory responses

27   to disclose the requested information or designates individual deposition testimony as 30(b)(6)

28   testimony.  Oracle did not respond to any of Rimini Street's proposals during the meet-and-

1  confer, and has not responded since the call, either.

2        In response to this Motion to Compel, Oracle has elected the path too frequently traveled

3  – sling mud and blame the other side for what amounts to a flat refusal to provide information.

4  In fact, Oracle spent pages of its response blaming Rimini Street for Oracle's refusal to respond

5  to straight-forward and foundational discovery requests.  Rimini need not respond with a lengthy

6  explanation because the proper placement of blame is both simple and apparent – it is Oracle that

7  is refusing to provide the discovery.  It is undisputed that Rimini Street timely served its requests

8  and diligently pursued its discovery through correspondence as well as multiple meet and confers

9  with Oracle.[2]  And Oracle has spurned Rimini Street's efforts, including Rimini Street's

10  compromise positions.  After sweeping away Oracle's hyperbole, what remains is the fact that

11  Oracle simply does not want to respond to straight forward discovery requests that seek the

12  factual basis for Oracle's claims. Therefore, Rimini Street moves to compel Oracle to provide

13  answers and/or testimony to Rimini Street's discovery requests.  It is of no concern how Rimini

14  receives the basic information that it has requested – either by interrogatory response or

15  corporate representative testimony – so long as Rimini receives the information.

16        **2.**     **Rimini Street Moves to Compel Oracle to Disclose the Claims On Which It Will Rely at Trial.**

17

18        Rimini Street seeks the most basic disclosure of Oracle's claims and the evidence on

19  which Oracle intends to rely at trial.  Oracle has not only refused to provide such foundational

20  disclosures, but it has communicated to Rimini Street that it would be "overly burdensome" for

21  Oracle to do so.  Instead, Oracle appears intent on proceeding to trial on its broad-sweeping

22  accusations that Rimini Street has committed "tens of thousands" of instances of copyright

23  infringement, breach of contract, and inducement to breach of contract, without identifying the

24  _____

25  [2] Oracle's assertion that the first "substantive meet and confer" ignores the correspondence as well as lengthy conference call on December 22, 2011 to address the specific issues now in dispute.  During that conference call, Rimini Street provided numerous ways to streamline the remaining discovery issues, while Oracle flatly refused to respond to any of Rimini Street's proposals during that call.  The fact that Oracle would not respond does not make the call any less of a meet and confer.

26

27

28

1    factual basis for any of the alleged instances of infringement or breach.  *See* Reckers Decl. Ex. 1,

2    (Oracle's [Corrected] Supplemental and Amended Response to Rimini Street's Interrogatory No.

3    11 at 73).  Oracle has responded to Rimini Street's discovery requests by citing to "exemplary"

4    and "illustrative" contractual provisions, and by making factually-unsupported assertions that

5    Oracle's licenses with unnamed Rimini Street customers "generally" contain certain restrictions

6    on conduct.  Oracle has taken a similar approach in responding to discovery regarding its other

7    claims against Rimini Street for various statutory violations, as well as intentional interference

8    with prospective economic advantage, unfair competition, trespass to chattels, and unjust

9    enrichment.

10   Oracle's reliance on generalizations is at odds with its fundamental burden to prove its

11   claims at trial.  In cases involving allegations of copyright infringement or breach of contract, the

12   defendant is unquestionably entitled to know the factual basis for the plaintiff's claim – what

13   specific action by the defendant allegedly infringed the plaintiff's copyrights or breached specific

14   provisions of a contract.  That is precisely the level of disclosure that Rimini Street seeks here.

15   The fact that Oracle claims that the number of "instances" of breach or infringement are in the

16   "tens of thousands" does not relieve Oracle's obligation to prove its case, nor does such a claim

17   have any credibility given that Oracle has not even attempted to quantify or disclose the specific

18   alleged "instances" at issue.

19   Oracle's refusal to disclose the factual bases for its claims ultimately will operate to its

20   own peril – Oracle cannot rely on information at trial that it has not disclosed during discovery.

21   But Oracle's failure to put Rimini Street on notice of what it is to defend at trial also has severely

22   prejudiced Rimini Street's ability to prepare its defense.  One of the key issues in this case is

23   whether Rimini Street's conduct was authorized as an agent of its customers, who were Oracle

24   licensees.  Oracle's own witnesses have consistently testified that the only way to determine

25   whether Rimini Street was authorized to support its customers would be to examine the terms of

26   the customer's agreements with Oracle, as demonstrated by the testimony of Oracle's president,

27   Safra Catz:

28             Q:      What about going to a third-party support provider?  Is it
                      permissible for a licensee to go to a third-party support provider

1  under their license?

2  A:      It would depend on what the third parties do and what their contract is, what their agreement is. . . .

3  Q:      So it's a customer – it's a license by license determination?

4  A:      It depends on whatever their license said.  But if you're asking me, is it permissible, again, it would depend on that contract to see . . . .

5

6  Q:      Okay.  So a third party could come in, and if they were standing in the shoes of the licensee and performing only the acts that the licensee was licensed for, that would be permissible?

7

8  A:      If that is permitted in his license.

9

10  *See* Reckers Decl. Ex. 2, (Deposition of Safra Catz, taken December 14, 2011 at 133:2-8,

11  134:17-21, 136:8-12).  Yet, when asked to identify any instance in which Oracle contends that

12  Rimini Street provided a copyrighted work to a customer whose license did not authorize that

13  customer to access or use the protected expression, Oracle improperly objected, stating: "Rimini

14  Street, not Oracle, has the ultimate burden of proof on whether any infringing activity for which

15  Rimini Street would be liable is excused by license."  *See* Reckers Decl. Ex.  8, (Oracle's

16  Response to Rimini Street's Interrogatory No. 18).     But this puts the cart before the horse.

17  Oracle must first disclose the acts of copyright infringement, breach of contract, and other

18  alleged violations on a customer-by-customer basis.  Only then can Rimini Street present to the

19  Court relevant license provisions demonstrating that the alleged Rimini Street action was

20  permissible.  Accordingly, Rimini Street moves to compel the following discovery requests:

21  **a.      Copyright Infringement, Breach of Contract, and Inducement to Breach Contract Requests.**

22  Rimini Street moves to compel Oracle to disclose the facts upon which it will rely at trial

23  to prove its copyright infringement and contract-related claims, as well as information that is

24  relevant to Rimini Street's affirmative defenses, including its license defense.  The relevant

25  interrogatories and/or 30(b)(6) topics are:

26  Second Notice Topics 6, 7-14, 16, 21, 22, 42-47, 57-58 and 61;

27  Third Notice Topics 5, 10-11, 13 and 19; and

28

1    Interrogatory Nos. 11, 17-18, 30, 32 and 36.

2       This information is essential for Rimini "to prosecute its claims, and to understand and to

3    evaluate the nature and details of the allegations in" Oracle's Second Amended Complaint.  *See*

4    *See Certain Underwriters at Lloyd's, London v. Nance*, No. CIV 04-937, 2007 WL 581657, at *5

5    (D.N.M. Jan. 29, 2007) (requesting party is "entitled to discover the facts that support [the

6    answering party's] allegations").

7                  i.      **Oracle Must Disclose the Factual Basis for its**
                          **Copyright Claims.**
8
        To date, the ***only*** disclosure that Oracle has provided to support its copyright
9
    infringement claim is to identify the copyrights that it holds.  At no point has Oracle identified
10
    the instances of infringement that it intends to rely on at trial, as requested by Rimini Street:
11
12          **Interrogatory No. 17:**  State the full factual basis for Your First Claim for Relief
            – Copyright Infringement, specifying each copyright that Oracle contends that it
13          owns, each instance of actual copying by Rimini Street, and each improper
            appropriation of the work by Rimini Street on which Oracle intends to rely at trial
14          to support this claim.

15              •   Oracle provided what appears to be four identical tables identifying
                    specific copyrights it owns (plus four additional unregistered copyrights),
16                  but did not identify any specific instance in which Rimini allegedly
                    infringed each copyright.

17          **Interrogatory No. 18**: For each of the copyrighted works at issue, identify any
            instance in which Oracle contends that Rimini Street provided the copyrighted
18          work to a customer whose license did not authorize that customer to access or use
            the protected expression, when the instance occurred, how Rimini provided the
19          protected expression to the customer, and whether Oracle took any action in
            connection with the alleged instance.
20
                •   Oracle objected, and incorporated its response to Interrogatory No. 17.
21
22          **Interrogatory No. 32:**  Describe each instance in which Oracle contends that
            Rimini Street provided Oracle Software and Support Materials to a customer that
23          was not entitled to access or use such Software and Support Materials.

24              •   Oracle objected, and incorporated its response to Interrogatory No. 18,
                    which in turn incorporated its response to Interrogatory No 17.
25
        Rimini Street's Second Notice Topics 7-13, 22, and 61 also relate to these issues, and
26
    Oracle has refused to provide a corporate representative to testify.  Rimini Street is entitled to
27
    discovery regarding the factual basis for Oracle's copyright claim, and has indicated that it
28
    would withdraw the corresponding Second Notice topics if Oracle will supplement its

1  interrogatory responses to identify each Rimini Street action that Oracle contends infringed its

2  copyright.  Rimini Street respectfully requests that the Court require Oracle to disclose the

3  factual bases for its copyright claim.

4              ii.      **Oracle must disclose the factual basis for its contract-related claims.**

5

6  Oracle's disclosure with respect to its contract-related claims is even more sparse than its

7  answers to the copyright discovery.  Rimini Street has requested that Oracle disclose the factual

8  bases for its contract claims:

9  **Interrogatory No. 11:**  Identify each instance in which Defendants' alleged acts
   breached or induced a breach of contract as alleged in your Fifth and Sixth Claims
10  for Relief, and for each such instance, identify the specific provisions of each
   contract you allege has been breached, the specific acts on the part of Rimini
11  Street that constituted the breach, and, in the case of alleged induced breach, the
   specific acts of a third party that constitute the breach and the specific acts of
12  Rimini Street that induced the breach.

13  Oracle objected that it would be "unduly burdensome" to identify each instance, as "the

14  number of 'instances' of breach and induced breach is in the tens of thousands."  Oracle then

15  provided illustrative examples of generic contractual provisions, and stated that "[t]hese terms

16  included the following agreements, all of which were breached by Defendants and/or by

17  customers of Oracle who were induced to breach by Defendants' conduct."  In mid-December,

18  Oracle served a chart that purports to contain customer license terms that Rimini breached,

19  induced the breach of, or acted in excess of authorization granted by specific provisions.  *See* Ex.

20  A to Interrogatory 11.  However, Richard Allison, an Oracle employee who assisted Oracle's

21  counsel in the creation of this document, testified that this chart displays *relevant* contract

22  provisions, not provisions considered breached by Oracle.  *See* Reckers Decl. Ex. 3, (Deposition

23  of Richard Allison, taken on Dec. 19, 2011, at 178:10-180:17; 181:25-182:4).   At no point does

24  Oracle identify a specific act by Rimini Street taken on behalf of a specific licensee that Oracle

25  contends constitutes a breach of a specific contractual provision.  Rimini Street's Second Notice

26  Topics 16, 42-47, 57-58, and Third Notice Topics 11 and 13 also relate to these issues, and

27  Oracle has refused to provide a corporate representative to testify.

28          Given Oracle's apparent position that a licensee's rights are governed by the terms of

1   their specific license, as confirmed by Ms. Catz, Mr. Allison, and former Oracle president

2   Charles Phillips, Oracle cannot rely on generalizations.  *See* Reckers Decl. Ex. 2, (Deposition of

3   Safra Catz at 133:9-134:24) (noting that a licensee's rights are governed by each licensee's

4   specific contract and ordering documents); Reckers Decl. Ex. 3, (Deposition of Richard Allison

5   at 95:25-97:24)(same); *See* Reckers Decl. Ex. 4, (Deposition of Charles Philips at 77:23-79:18;

6   112:1-114:18) (testifying that a customer's right to patches and/or non-development

7   environments is determined by that specific customer's license).  Until Oracle identifies the

8   specific actions allegedly performed by Rimini along with the contract provisions these actions

9   breach, Oracle's answer is not responsive to Rimini's Interrogatory No. 11.  Furthermore, until

10  Oracle identifies the contracts upon which Oracle intends to rely, Rimini will not know if

11  Oracle's production of relevant contracts is complete.  Therefore, Rimini reserves its right to

12  move to compel any deficiencies in Oracle's contract production, including access to Oracle's

13  contract database, until such Oracle complies with Interrogatory No. 11.

14              **b.     Oracle Must Substantively Respond to Discovery Relevant to**
                         **Rimini Street's Defenses.**
15
16          Rimini Street has sought discovery regarding its defenses, including but not limited to its

17  license, waiver and estoppel, industry custom, and acquiescence defenses.  Oracle has refused to

    substantively respond, and Rimini Street seeks to compel:
18

19          **Interrogatory No. 30:** Describe in detail Oracle's awareness, understanding or
            knowledge of the typical practices of its licensees, and its instructions or
20          recommendations to licensees, regarding the creation and/or use of non-
            production copies of Oracle software and support material, including test and/or
21          development, staging, back-up and/or disaster recovery copies and copies of code
            objects made to develop and implement updated code.
22
                •  Oracle responded by referring to license agreements:  "The information
23                 responsive to this Interrogatory for Rimini customers may be ascertained
                   by reviewing the licenses between Oracle and those customers . . . ."  This
24                 is not responsive to the question asked by Rimini Street.

25          **Interrogatory No. 36:**  State in detail each instance in which Oracle has
            communicated with a licensee regarding any allegedly-improper creation and/or
26          use of non-production copies of Oracle software and support material, specifically
            including (A) test and/or development copies, (B) staging copies, (C) back-up
27          and/or disaster recovery copies, (d) copies of code objects made to develop or
            implement updated code.
28

1    • Oracle objected, did not substantively respond.

2    Rimini Street also served the following 30(b)(6) Topics relevant to its defenses, for which

3    Oracle has refused to designate a corporate representative:

4    **Second Notice Topic 14**:  Oracle's first knowledge of Rimini Street's activities in
the third-party software support market, including when Oracle first became
aware of Rimini Street, who first learned of Rimini Street's activities, who at
Oracle was informed of Rimini Street's activities and any response by Oracle to
the awareness of Rimini Street's activities.

7    **Second Notice Topic 21:**  Oracle's practice of delivering Oracle software or
materials to Rimini Street as requested by Oracle licensees, including the date
Oracle first delivered software or materials to Rimini Street on behalf of an
Oracle customer, the identification of all Oracle customers that requested Oracle
deliver software or materials to Rimini Street, the identification of all Oracle
customers for whom Oracle delivered software or materials to Rimini Street, the
date when Oracle ceased delivering software or materials to Rimini Street on
behalf of Oracle customers, and the reasons Oracle chose to deliver and/or stop
delivering software or materials to Rimini Street.

**Third Notice Topic 5:**  Oracle's policies or business customs with respect to the
use of Oracle's Software and Support Materials by licensees who self-support or
who are supported by independent consultants.

**Third Notice Topic 10:**  Content on Oracle's Technical Support websites,
including the manner in which content is organized, methods for locating specific
content, the type of metadata available for identifying specific content, and any
changes or modifications to the way in which support content is made available to
licensees from 2004 to present.

**Third Notice Topic 19:**  The functionality and user interface provided by
Oracle's Metalink 3 website during the time period from October 15, 2008 to
February 15, 2009, including the search functionality provided by the Metalink 3
website, the metadata and other interface features provided to assist users in
locating content, and the impact on or changes to the functionality and user
interface of Metalink 3 associated with Oracle's migration from the Customer
Connection website to the Metalink 3 website.

Oracle cannot simply choose to provide information that it believes benefits its own case,

while disregarding information pertinent to Rimini Street's defenses.  Rimini Street requests that

the Court compel Oracle to respond to these discovery requests.

             c.    **Oracle Must Disclose the Factual Bases For Its Intentional
Interference with Prospective Economic Advantage and Unfair
Competition Claims.**

Rimini Street served Interrogatory Nos. 19 and 20 to discover the factual bases for

14

1    Oracle's claims of intentional interference with prospective economic advantage and unfair

2    competition claims.  Although Rimini Street took great care to specify each of the elements of

3    Oracle's claims, Oracle again responded with generalizations rather than specific acts on which it

4    will rely at trial to support its claims:

**Interrogatory No. 19:**  State the full factual basis for Your Seventh Claim for Relief – Intentional Interference with Prospective Economic Advantage, specifically identifying each third party with which Oracle expected to have an economic relationship but did not as a result of Rimini Street's interference; factual support on which Oracle intends to rely that Rimini Street had knowledge of the relationship between Oracle and the third party; Rimini Street's actions that Oracle contends constitute an intent to disrupt the relationship and/or failure to act with reasonable care; factual support that the relationship was actually disrupted; and factual support that Oracle was harmed as a result of the disruption.

- Oracle responded primarily by reciting actions that it contends would constitute intentional interference, but failed to disclose specific actions that it contends led to an intentional interference with specific licensees.

**Interrogatory No. 20:**  State the full factual basis for Your Eighth Claim for Relief – Unfair Competition, and further identify all acts by Rimini Street that Oracle contends threatened or harmed competition, or otherwise were an unlawful, unfair, or fraudulent business act or practice on which Oracle intends to rely to support its unfair competition and unfair practices claim; any advertising by Rimini Street that Oracle contends was unfair, deceptive, untrue, or misleading; and any conduct by Rimini Street that Oracle contends threatens a violation of antitrust laws or violates the policy or spirit of antitrust laws.

- Oracle responded: "Defendants have improperly and unlawfully taken commercial advantage of Oracle's investments in its confidential, proprietary, and copyrighted Software and Support Materials and underlying software applications as set forth in responses to Interrogatory Nos. 1, 2, 3, 11, 19, 21, 22, 23, 24, 31, and 32."

Rimini Street's Third Notice Topics 12 and 13 also seek discovery of the same

information.  Rimini Street moves to compel complete answers to these interrogatories, as they

will undoubtedly narrow the issues.  For example, Oracle did not specify "each third party with

which Oracle expected to have an economic relationship but did not as a result of Rimini Street's

interference" – a factual element required to prove interference under California law.  *Chaganti*

*v. I2 Phone International, Inc.*, 313 Fed. App'x. 54, 56 (9th Cir. 2009) (listing elements).  To

illustrate the importance of this request, Rimini provided services to Pitney Bowes for its J.D.

Edwards software only after a year-long period in which Pitney operated without support.  *See*

Reckers Decl. Ex. 5, (Deposition of Stephen Woodward, taken on Nov. 17, 2011, at 14:17-15:7).

1   Does Oracle claim that Rimini intentionally interfered with Oracle's relationship with Pitney

2   regarding Pitney's J.D. Edwards software support?  Without disclosing its claims on a customer-

3   by-customer analysis, Oracle has failed its burden to prove these claims.  Rimini Street

4   respectfully moves to compel Oracle to fully answer the interrogatories, in which case it will

5   withdraw the corresponding 30(b)(6) topics.

6           d.      **Oracle Must Disclose Information Relevant to Its Damages Claims.**

7           Oracle has failed to disclose information relevant to its damages claims, as described

8   below.

9           **Second Notice Topic 6:**  Rimini Street has requested that Oracle identify, for each

10  copyright registration in which Oracle has checked the box on the application form to indicate

11  that it is a derivative work, the original work for which it is a derivative.  This would

12  significantly narrow the issues, as "all the parts of a compilation or derivative work constitute

13  one work" for purposes of statutory damages.  17 U.S.C. § 504(c)(1).

14          **Second Notice Topic No. 16:**  Rimini Street seeks testimony regarding any customers

15  or contracts Oracle alleges it lost because of Rimini Street, and for each customer or contract,

16  Oracle's revenue derived from that customer or contract for three years prior to losing that

17  customer to Rimini Street.  Oracle has refused to provide a corporate representative to testify.

18          **Interrogatory 25/Second Notice Topics 17 and 18:**  Interrogatory 25 and Second

19  Notice Topics 17 and 18 request information regarding Oracle's well-known practice of charging

20  fees upon a customers' return to Oracle Support.  Rimini Street seeks information regarding the

21  percentage of Oracle customers who left Oracle Support only to return, the average amount of

22  fees paid by those customers, and the purpose of charging those customers additional return fees.

23  The only information provided by Oracle in response to Interrogatoy 25 was to refer to Oracle's

24  contracts with licensees, which is not responsive to the interrogatory or the general issue.

25  Further, Rule 33(d) is not applicable in this situation as "the burden of deriving or ascertaining

26  the answer" from thousands of Oracle's contracts is not substantially the same for either party.

27  *See Campagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,*

28

1    105 F.R.D. 16, 44 (S.D.N.Y. 1984) ("[Rule 33(d)] does not allow a respondent to foist a mass of

2    records on his interrogator when their deciphering is feasible only for one familiar with the

3    records."); *see also Martin v. Easton Pub. Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980) (finding that

4    Rule 33(d) did not permit a party to cite 630 pages of notebooks and 2,000 pages of deposition

5    transcripts).  As Oracle once argued in this very same case, the answering party's "greater

6    familiarity with its own business records" is a "critical factor."  *Puerto Rico Aqueduct and Sewer*

7    *Authority v. Clow Corp.*, 108 F.R.D. 304, 308 (D.P.R. 1985).  Oracle maintains superior

8    knowledge over its license documents as well as its policy of charging fees for customers who

9    return to Oracle Support.  Because Oracle has not provided a substantive response, Rimini Street

10   moves to compel.[3]

11        **Second Notice Topics 20, 24, and 25:**  Topics 20, 24 and 25 of the Second Notice relate

12   to whether Oracle grants licenses to third parties, including Rimini, whereby the third party is

13   permitted to use Oracle's intellectual property to compete for Oracle Software Support

14   customers.  In yet another attempt by Rimini to compromise, Rimini proposed that Oracle

15   stipulate it has never offered Rimini or any other third party a license whereby that third party is

16   permitted to use Oracle intellectual property to compete for Oracle's customers.  *See Hann Decl.*

17   Ex. E, (Letter from Robert H. Reckers to Thomas S. Hixson, dated Dec. 6, 2011).  Rimini Street

18   has also proposed that Oracle designate the individual testimony of Safra Catz and/or Charles

19   Phillips as 30(b)(6) testimony.  *See Hann Decl.* Ex. G, (Email from Michelle Marriott to Kieran

20   Ringgenberg and Bree Hann, dated December 23, 2011).  Oracle has not responded to Rimini's

21   proposal, and has refused to provide testimony.

22        **Second Notice Topics 26 and 30:**  Topics 26 and 30 seek deposition testimony regarding

23   specific instances in which Oracle lost the opportunity to license Oracle copyrighted software

24   and whether Oracle received full payment under the relevant contracts between Oracle and

25   customers lost to Rimini.  In a recent meet-and-confer, Rimini proposed that Oracle stipulate that

26   ───────────────

27   [3] Rimini proposed to Oracle designated excerpts from the deposition testimony of Safra Catz, 127:10-131:12, and
     the deposition of Charles Phillips, 57:25-59:15, for purposes of Topic 18 in the Second Notice.

28

[CORRECTED] JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1    Rimini's conduct has not resulted in a lost opportunity for Oracle to license Oracle software, and
2    that Oracle has received full payment under its own contracts with customers at issue.  To Rimini
3    Street's knowledge, this issue is not genuinely in dispute.  Again, Oracle has not responded to
4    Rimini's proposal.  Absent such a stipulation, therefore, Rimini Street seeks to compel
5    testimony.

6         **Second Notice Topics 32 and 33:**  These Topics seek Oracle's knowledge of alternatives
7    to Oracle Software Support, including software competitors, support competitors, self support, or
8    support by independent consultants, and whether Oracle permits each alternative.  While
9    Oracle's response to Interrogatory No. 5 discloses knowledge of third party software support
10   competitors, it does not address the other issues.  And in response to Interrogatory 35, which
11   requests similar information regarding the permissibility of support options, Oracle merely refers
12   Rimini Street to license agreements.  Again, Oracle is more familiar with its own contracts than
13   is Rimini, and Oracle may not evade its duties to answer directly interrogatories served upon it.
14   Therefore, Rimini requests that this Court compel Oracle to designate a witness with knowledge
15   or Topics 32 and 33, or in the alternative, require Oracle to supplement its answer to
16   Interrogatory No. 35.

17        **Interrogatory 27/Second Topic 39:**  Both Interrogatory No. 27 and Topic 39 request
18   information regarding Oracle's knowledge of the causes of its losses of Software Support
19   customers.  This information is relevant to damages that Oracle may claim is caused by Rimini's
20   alleged activities because it offers additional reasons why Oracle customers might leave.  In its
21   response to Interrogatory No. 27, Oracle incorporates the deposition testimony of Richard
22   Cummins, taken on July 13, 2011.  Rimini will consider both these requests fulfilled if Oracle
23   designates this testimony as 30(b)(6) testimony.  Otherwise, Rimini requests this Court compel
24   Oracle to designate a witness with knowledge of Topic 38 or provide supplemental answers to
25   Interrogatory No. 27.

26        **Interrogatory 37/Second Topic 56:**  Interrogatory 37 and Topic 56 seek information
27   regarding the price Oracle charges for Oracle's development databases, along with information
28   regarding Oracle's associated revenue received and costs.  To Rimini Street's best knowledge,

1   Oracle does not charge for its development databases, such that the answer to this interrogatory

2   should be "zero."  Oracle provided no responsive answer to Interrogatory No. 37, and has

3   refused to provide corporate representative testimony or stipulate that it does not receive any

4   revenue from its development databases.  Absent such a stipulation, Rimini requests this court

5   compel Oracle to designate a witness with knowledge regarding Topic 56, or in the alternative,

6   supplement its response to Interrogatory No. 37.

7               e.      **Rimini's Motion to Compel Production of Oracle's Approval**
                        **& Options Matrix**
8

9         Rimini moves to compel Oracle to produce copies of Oracle's Approval & Options

10   Matrix (hereinafter the "Matrix") as requested by Request Nos. 46-49 of Rimini's Second Set of

11   Requests for Production of Documents (hereinafter "Request Nos. 46-49"), Request No. 8 of

12   Rimini's Third Set of Requests for Production of Documents (hereinafter "Request No. 8"), and

13   Request No. 6 of Rimini's Fifth Set of Requests for Production of Documents (hereinafter

14   "Request No. 6"), which seek documents related to Oracle's license agreements with Rimini

15   customers.  Specifically, Request Nos. 46-49 asks for "[a]ll documents relating" provisions

16   allegedly violated by Rimini as set forth in Oracle's Second Amended Complaint.[4]  Request No.

17   8 and Request No. 6 seek all documents, including communications, relating to the negotiation

18   and interpretation of license agreements between Oracle and any Rimini customers.  Documents

19   related to these topics are necessary if Rimini is to understand how Oracle interprets the

20   agreements that are implicated in Oracle's claims for breach of contract and inducement to

21   breach of contract and Rimini Street's license defense.

22         According to the deposition testimony of Richard Allison, Oracle maintains a document

23   called the "Global Approval Matrix" that contains "standard contract options, as well as the

24   approval levels in a matrices format required for both standard, non-standard terms, as well as

25   discount[s]" that dates back "some 14 years."  *See* Reckers Decl. Ex. 3,(Deposition of Richard

26   _____

27   [4] These provisions allegedly restrict the location of and access to the software at issue in this case.  *See* Rimini
     Street's Second Set of Requests for Production to Plaintiffs, Nos. 46-49.

28

[CORRECTED] JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1    Allison at 18:1-19:6).  Oracle compiled the Matrix over the years to include "legal reviewed

2    language that can be inserted in the agreement for most of the options."  *Id.* at 29:9-12.  The

3    Matrix, in other words, helps Oracle standardize language in its licenses.  As such, the Matrix is

4    a document related to alleged provisions of Oracle's license agreement set forth in Oracle's

5    Second Amended Complaint and is therefore responsive to Request Nos. 46-49.  Despite Rimini

6    Street's express request for Oracle to produce all versions of the Global Approval Matrix from

7    2005 to present, Oracle has resolutely refused, claiming that it "reviewed Rimini's requests for

8    production that were propounded during fact discovery, and [found] the handbook and global

9    approval matrix" to be not responsive to any request.  *See* Reckers Decl. Ex. 6, ( Letter from

10   Thomas S. Hixson to Michelle Marriott dated Dec. 27, 2011).  Oracle's conclusion is even more

11   confusing, given that Oracle appears to have produced a portion (23 of 125 Pages) of one version

12   of the Matrix, a document entitled "FY09 Approval & Options Matrix."  *See* Reckers Decl. Ex.

13   7, (FY09 Approval & Options Matrix, ORCLRS0799892-914).  Yesterday, for the first time,

14   Oracle identified Matix documents for the years 2005, 2007, 2009 and 2010.  Therefore, Rimini

15   requests this Court compel Oracle to produce the Matrix documents for the years 2006, 2008 and

16   2011.

17        **B.      Oracle's Opposition to Rimini's Motion to Compel Further
18                  Discovery**

19        Rimini moves to compel on Second Notice Topics 6-14, 16-18, 20-22, 24-26, 30, 32, 33,

20   29, 42-47, 56-58, and 61, Third Notice Topics 5, 10-13, and 19, and Interrogatories 11, 17-20,

21   25, 27, 30, 32, and 35-37.  Rimini also moves to compel Oracle to produce the Global Approval

22   Matrix.  Because Rimini did not meaningfully meet and confer on the majority of the relief it

23   seeks – including nearly all of the interrogatories that are the subject of Rimini's motion to

24   compel – Oracle has only had two days to consider the various, voluminous requests in the form

25   now presented.  Further meet and confer would likely be productive, but in the interim Oracle

26   has indicated below where it would be amenable to amending certain interrogatory responses.

27   Oracle continues to oppose Rimini's 81-topic Rule 30(b)(6) notices, which are an improper

28   attempt to circumvent the fact discovery limitations and deadlines, but responds below where it

1    proposes written responses in lieu of testimony.

2        1.    **Rimini Is Attempting to Circumvent the Substantive Discovery Limits and to Give Itself a Fact Discovery Extension**

3

4        Rimini has ignored its meet and confer obligations and the case's discovery limitations

5    and deadlines, and now seeks to shunt the consequences of those decisions onto Oracle.  As set

6    forth in more detail below, as fact discovery was winding down, Rimini served a 61-topic Rule

7    30(b)(6) notice and, after Oracle objected, failed to follow up or meet and confer for months.

8    Then, shortly before the fact discovery cut-off, Rimini served a 22-topic Rule 30(b)(6) notice and

9    again, after Oracle objected, did nothing.  When finally meeting and conferring on the overbroad

10   topics, Rimini apparently realized its notices were far over the appropriate line, because its next

11   tactic was to return to interrogatory responses that it had never before suggested were

12   inadequate.  Rimini suggested for the first time (again, after the discovery cut-off) that many of

13   Oracle's responses to interrogatories required substantial additional information and that Oracle

14   could avoid providing Rule 30(b)(6) witnesses if it would instead supplement its responses.

15   Even those meet and confer discussions were anemic and lacked substantive detail about what

16   Rimini contended was missing from Oracle's responses.  It was not until this very motion to

17   compel that Rimini provided actual particulars about what additional information it seeks from

18   Oracle.  Although Oracle is willing to make certain compromises, described below, on some of

19   the topics and interrogatories, and believes further meet and confer outside the shadow of a

20   motion to compel deadline would be helpful, it otherwise continues to oppose Rimini's attempts

21   to circumvent the discovery deadlines and limitations.

22       a.    **Rimini's Systematic Delay and Failure to Meet and Confer**

23       Rimini served the interrogatories on which it now moves to compel on June 11, 2010 and

24   October 3, 2011; Oracle timely responded on July 21, 2010 and November 21, 2011,

25   respectively, with supplemental responses on December 9, 2010, December 15, 2011, and

26   December 19, 2011 (although these latter two supplements were not in response to any

27   complaint from Rimini).  Declaration of Bree Hann in Support of Oracle's Opposition to

28   Rimini's Motion to Compel ("Hann Decl."), ¶ 2.  From the time of service until December 6,

1    2011, Rimini never complained about these interrogatory responses, and never asked Oracle to

2    meet and confer.  *Id.*, ¶ 3.

3           Meanwhile, saying nothing about the interrogatory responses, Rimini served its second

4    Rule 30(b)(6) notice (the "Second Notice") on September 28, 2011.  *Id.*, ¶ 4 and Ex. A.  On

5    October 11, Oracle responded with objections and a request to meet and confer.  *Id.*, ¶ 5 and Ex.

6    B.  As part of its response, Oracle noted that the Second Notice's 61 topics were hugely

7    overbroad, and that the many required witnesses could not be prepared in time to testify before

8    the end of fact discovery.  *Id.*, Ex. B at 1.  Rimini did not respond to Oracle's objections or to its

9    meet and confer request directly, but noted in the November 4 Joint CMC Statement that it

10    planned to confer with Oracle "*regarding narrowing the noticed topics*." Dkt. No. 167 at 3:15-16

11    (emphasis supplied).  Rimini did not say that Oracle's interrogatory responses were insufficient.

12    That same day, Rimini served the Third Notice, which included 22 additional topics. Hann Decl.,

13    ¶ 6 and Ex. C.  At the November 8 CMC three days later, Rimini did not raise either Notice with

14    the Court.  Dkt. No. 194.  Oracle therefore concluded that the Third Notice was Rimini's

15    promised narrowing of the Second Notice.  On November 17, still having heard nothing further,

16    Oracle asked Rimini to confirm that conclusion at Rimini's "soonest possible convenience."

17    Hann Decl., ¶ 7 and Ex. D.

18           Rimini did not respond until December 6 – the day *after* fact discovery closed – when it

19    told Oracle that, notwithstanding what it had told Oracle and the Court in the November 4 CMC

20    statement, the Second and Third Notices are *cumulative*.  *Id.*, Ex. E at 1.  Also in that letter,

21    Rimini for the first time suggested that one of Oracle's interrogatory responses was insufficient

22    (and did not refer specifically to any of the others on which Rimini now moves to compel), and

23    that Oracle could address some of the Rule 30(b)(6) topics by updating interrogatory responses.

24    *Id.* at 2-3.  After additional correspondence on December 12 and 14, the parties held a telephonic

25    meet and confer on December 22, during which Rimini reiterated its general suggestion that

26    Oracle supplement certain interrogatory responses as a means of escaping deposition testimony.

27    *Id.*, ¶ 9.  This was the extent of Rimini's meet and confer on the interrogatories and deposition

28    topics on which it now moves to compel.

1

        **b.**    **Rimini's Delay Unfairly Burdens Oracle and Circumvents the Case Deadlines and Limitations**

2

It is bad enough that Rimini waited so long to meet and confer with Oracle about the

3

interrogatories. Worse, however, is Rimini's decision to wait until the very last minute to notice

4

sweeping deposition topics, despite the Court's admonition that the parties have "the obligation

5

to do discovery during the original discovery cutoff." *Id.*, Ex. F at 37:4-6. Rimini's tactics are

6

inappropriate and impose an unfair burden on Oracle.

7

In the eighteen months prior to the fact discovery deadline, Rimini made no attempt to

8

make efficient use of its twenty-deposition allotment, taking only eight, with four others taking

9

place after the discovery cut-off, the most recent on January 5, 2012. Hann Decl., ¶ 11. This

10

falls far short of a diligent effort to take discovery before the deadline.

11

Moreover, the number of additional depositions that – until two days ago – Rimini was

12

insisting it wanted to take, even as narrowed in meet and confer, would have dwarfed those prior

13

twelve. The remaining twenty-six topics could not have fairly been covered in time equivalent to

14

Rimini's eight remaining deposition slots, as many of the topics cover the entire case, and indeed

15

virtually all of Oracle's operations over time, as explained more fully below. It was

16

inappropriate for Rimini to attempt to circumvent the twenty-deposition limit, and the discovery

17

cut-off, through these enormously broad Rule 30(b)(6) topics.

18

Rimini should have taken its twenty depositions during the fact discovery period, as the

19

Court instructed. Instead, Rimini first waited until September 28 and November 4 to even

20

propound these broad deposition notices, by which time only a fraction of the 83 topics could

21

have been taken by the deadline. Rimini then compounded that late timing by failing to meet

22

and confer with Oracle for *two months* (or to raise its Notices with the Court), until *after* the fact

23

discovery cut-off. By waiting until after the discovery cut-off to address the overbreadth of its

24

Notices, Rimini was attempting to get the same last minute deposition relief it sought and the

25

Court denied at the last CMC, but through a different means. That was unfair, and not what the

26

parties and the Court envisioned when agreeing that, if necessary for scheduling purposes,

27

witnesses noticed for deposition four weeks prior to December 6 could testify after the fact

28

1   discovery cut-off.  Dkt. No. 160 at 7 n.2.[5]

2          Finally, it now appears that Rimini was never serious about its enormously burdensome

3   Rule 30(b)(6) deposition notices.  They were a bait and switch.  *After the close of fact discovery*

4   is when Rimini first indicated that it would forego depositions on certain topics in exchange for

5   supplemental interrogatory responses.  And on January 3, 2012 – a month after the close of fact

6   discovery – Rimini stated that it would abandon *all* of the requested depositions in place of

7   supplemental interrogatory responses, informing Oracle that "[i]t is of no concern how Rimini

8   receives the basic information that it has requested – either by interrogatory response or

9   corporate representative testimony – so long as Rimini receives the information."

10          Rimini casts this move as an effort to be reasonable, but it means that the prior meeting

11  and conferring about the scope of the Second and Third Notices was a waste of time.  The

12  Notices were just bargaining chips, not an actual description of the discovery Rimini wanted to

13  take.  Consider what happened here:  In the waning months of fact discovery, Rimini

14  propounded Rule 30(b)(6) depositions notices *for 83 topics*, then in January 2012 acknowledged

15  it would be satisfied if none of them took place provided Oracle supplemented interrogatory

16  responses, including ones that Oracle responded to in 2010, about which Rimini had never

17  complained until now.  Rimini should not be formulating its fact discovery plan after discovery

18  is over.  Why did Rimini serve Rule 30(b)(6) deposition notices in the fall of 2011 if it would

19  have been satisfied with a revised response to an interrogatory that was propounded in June of

20  the preceding year?  And why did Rimini tell Oracle this position only in January 2012?  It

21  should not be the case that Oracle does not learn until after fact discovery ends what fact

22  discovery Rimini really wants to take.

23          Oracle now addresses the substance of Rimini's deposition topics, interrogatories, and

24  ────────────

[5] It is no answer for Rimini to point out that Oracle served a Rule 30(b)(6) with six topics four weeks before the
25  discovery cutoff.  Oracle diligently completed its discovery throughout the process, and its final Rule 30(b)(6) notice
    was narrow enough to be completed in seven hours of record time (as it was) and was served early enough to
26  complete the deposition before the discovery cut-off.  Completion of that deposition after the fact discovery cut-off
    was necessitated only by scheduling conflicts of Rimini's executives – exactly the sort of situation the parties had in
27  mind when they agreed witnesses could be produced after the fact cut-off, if timely noticed.

28

1    request for production.  Although Oracle disagrees with Rimini's approach of grouping

2    interrogatories and topics together, which de-emphasizes the burden on Oracle of Rimini's

3    duplicative discovery, for the Court's convenience Oracle follows Rimini's motion's structure.

4               **2.      Oracle Will Respond in Writing to Twelve Deposition Topics, Which**
                 **Will Also Moot Three Interrogatories**

5

6               After waiting to meet and confer with Oracle on the Second and Third Notices until, quite

7    literally, beyond the last minute (see Section II.B.1.a., above), Rimini complains that Oracle has

8    not yet responded to Rimini's suggestions for how to narrow certain topics.  Oracle was unable

9    before now to obtain client approval on these issues due to the holidays (and indeed, Rimini did

10   not provide close to a substantive meet and confer position on these issues until January 3), but

11   can now confirm that it is willing to provide written information on the following twelve

12   deposition topics, which in turn will also address three interrogatories, as noted:

13      •   **Second Notice Topic 6**: as narrowed in meet and confer, "for each copyright registration
            [from the Second Amended Complaint] where the derivative box is checked, the work of

14          which it is a derivative."  Oracle will provide a written response as its corporate
            testimony on this topic.

15

16      •   **Second Notice Topic 14**: "Oracle's first knowledge of Rimini Street's activities in the
            third-party software support market, including when Oracle first became aware of Rimini

17          Street, who first learned of Rimini Street's activities, who at Oracle was informed of
            Rimini Street's activities and any response by Oracle to the awareness of Rimini Street's

18          activities."  Although this topic, as written, is overbroad and irrelevant – as one example,
            Oracle's witness would need to research each support sales employee's customer renewal

19          negotiations since that person learned about Rimini, an impossible amount of data to
            memorize – Oracle will designate individual witness testimony from extant depositions

20          as to when Oracle first learned of Rimini's existence in the third-party software support
            market.

21

22      •   **Second Notice Topic 18**:  "For support customers leaving Oracle and subsequently
            returning, the purpose of charging these customers any additional fees, including, but not

23          limited to: back fees, reinstatement fees, or penalty fees."  Oracle will designate extant
            individual witness testimony as responsive to this topic.  Because the individual

24          witnesses did not prepare for deposition as Rule 30(b)(6) witnesses, there may be some
            aspects of education that Oracle did not provide prior to their testimony.  In making this

25          and similar offers, therefore, Oracle reserves its right to introduce other evidence on such
            topics at trial.

26

27      •   **Second Notice Topic 20**: "Oracle's willingness to grant Rimini a license for its support of
            PeopleSoft, J.D. Edwards, Siebel and Oracle software, the terms and conditions of such a

28

license as well as the pricing of such a license."  This topic inappropriately calls for expert testimony and, to the extent it does seek appropriate lay testimony, Rimini could have asked witnesses Safra Catz and Charles Phillips (each of whom it deposed on this very topic), but chose not to do so.  Nonetheless, as to the fact of Oracle's willingness to grant such a license, Oracle will provide a written response as its corporate testimony on this topic and may, if appropriate, also designate individual deposition testimony.

- *Second Notice Topic 22*: "Oracle's pre-suit investigation of Rimini Street, including an identification of Oracle employees and/or third parties who conducted the pre-suit investigation on behalf of Oracle, the date on which Oracle began to investigate Rimini Street, the results of such investigation, and actions or decisions by Oracle as a result of the investigation."  This topic calls for material protected by the attorney-client and attorney work product privileges.  Oracle will provide a written statement as to non-privileged information responsive to this topic, designate individual deposition testimony as to non-privileged information as its corporate testimony, or both.

- *Second Notice Topics 24 and 25*:  "Oracle's practice of entering into license agreements with third parties whereby the third party is permitted to use Oracle's intellectual property to compete for Oracle's customers" and "Oracle's practice of entering into license agreements with third parties whereby the third party is permitted to copy Oracle software and support materials to create fixes, patches, and/or updates to Oracle software."  Oracle will provide a written statement as its corporate testimony on these topics.

- *Second Notice Topics 32 and 33 and Third Notice Topic 5*: Oracle's knowledge of alternatives to Oracle Support, whether Oracle allows those alternatives, and Oracle's policies regarding use of Oracle Software and Support Materials by licensees that self-support or use independent consultant support.  Oracle will provide a written statement as its corporate testimony on these topics.  This written statement will also address Rimini's concerns about Interrogatory 35, which asks "whether Oracle permits support by [various alternatives] and, if so, the circumstances under which Oracle contends that such support is permissible."

- *Second Notice Topic 39*: "Oracle's knowledge of the causes of its losses of Software Support customers."  This topic is duplicative of Rimini's Interrogatory 27, and Oracle's response to that interrogatory provides Rimini with adequate information.  Nonetheless, as a compromise, Oracle will provide a written statement as its corporate testimony on this topic.  This written statement should also address Rimini's concerns about Interrogatory 27, "Oracle's knowledge of the reasons Oracle Software Support customers chose not to renew their Software Support contract(s)."

- *Second Notice Topic 56*: "The price Oracle charges for Oracle's development databases as well as Oracle's projected and actual yearly revenue, fixed costs, incremental costs, and profit margins for Oracle's development databases from 2004 to present."  Oracle will identify documents in its production relating to the pricing for licenses of test or development database environments.  This document identification, to the extent such documents exist, should also provide the information Rimini is seeking with

1
2   Interrogatory 37 ("State the price Oracle charges for Oracle's development databases as
well as Oracle's projected and actual yearly revenue, fixed costs, incremental costs, and
profit margins for Oracle's development databases from 2004 to present.").

3   Second Notice Topics 6, 14, 18, 20, 22, 24, 25, 32, 33, 39, and 56, Third Notice Topic 5,

4   and Interrogatories 27, 35, and 37 are therefore mooted.

5
6           **3.      Oracle's Responses About the Claims It Will Rely on at Trial Are
Sufficient**

7       Rimini claims it is seeking merely "the most basic disclosure of Oracle's claims and the

8   evidence on which Oracle intends to rely at trial."  But that is not true, because Oracle long ago

9   provided that disclosure and evidence (and more) – and Rimini never complained until after the

10  close of fact discovery.  *See* Section II.B.1.a., above.  Rimini is instead seeking, through

11  interrogatories and duplicative Rule 30(b)(6) topics, to improperly burden Oracle with crushingly

12  overbroad requests.  Oracle first sets out the general flaws in Rimini's requests, then follows

13  Rimini's structure for addressing individual requests.

14          **a.      Rimini's Requests Improperly Seek Oracle's Legal
Conclusions in Excessive Detail**

15      Rimini included topics in its Second (7-13, 16, 21, 42-47, 57-58, and 61) and Third (10,

16  11, 13 and 19) Notices that seek Oracle's various legal contentions, in extensive detail.  In meet

17  and confer, Rimini summarized these and similar topics as seeking "(1) each Rimini Street

18  action, (2) the contractual provision and/or copyright that Oracle contends was

19  breached/infringed as a result of Rimini Street's action, and (3) whether Oracle will contend at

20  trial that the action was copyright infringement, breach of contract, inducement, or some

21  combination."  Hann Decl., ¶ 12 and Ex. G.  Rimini now matches these topics with its

22  Interrogatories 11, 17, 18, 19, 20, 30, 32, and 36.  *Id*., ¶ 13 and Ex. H.  There are many flaws

23  with these requests.

24
25          **i.      The Contention Requests Are Inappropriate or
Impossible for Rule 30(b)(6) Testimony**

26      These requests are unsuitable for Rule 30(b)(6) testimony.  For example, Rimini's

27  summarized point (3) above comes down to a request that Oracle designate a lay witness to

28  testify now about the legal contentions Oracle will advance at trial – hardly appropriate fact

1    witness testimony.  *See, e.g.*, *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361,

2    362 (S.D.N.Y. 2002) ("[D]epositions, including 30(b)(6) depositions, are designed to discover

3    facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must

4    be discovered by other means.").  Rimini's suggestion that Oracle supplement its interrogatory

5    responses in lieu of providing witnesses acts as an admission that the topics are, in fact, not

6    appropriate for lay witness testimony.

7         Moreover, and setting aside the impossibility of any corporate designee absorbing and

8    testifying about such detailed and voluminous data, Rimini has prevented Oracle from preparing

9    a witness to testify about Rimini's wrongful conduct by designating much of the incriminating

10   evidence (including details of Rimini's support model and Rimini's customer list) as Highly

11   Confidential: Attorneys' Eyes Only.  Without that material, Oracle cannot adequately educate a

12   witness about Rimini's bad acts.  Rimini cannot both designate the relevant evidence as Highly

13   Confidential and demand that Oracle prepare and present a witness to testify about Oracle's

14   contentions based on that evidence.

15              ii.    **Oracle Has Responded Sufficiently to the Contention**
                       **Interrogatories**
16

17        The interrogatories fare no better than the deposition topics.  They seek Oracle's legal

18   theories in exhaustive detail, such as Interrogatory 18's demand that Oracle "identify any

19   instance in which Oracle contends that Rimini Street provided the copyrighted work to a

20   customer whose license did not authorize that customer to access or use the protected expression,

21   when the instance occurred, how Rimini provided the protected expression to the customer, and

22   whether Oracle took any action in connection with the alleged instance."  Hann Decl., ¶ 13 and

     Ex. H.
23

24        As burdensome as these interrogatories are with their demands for information about

25   each and every Rimini bad act, Oracle already has provided extensive responses (about which,

26   again, Rimini never complained until after the fact discovery deadline), which are detailed

27   individually below.  Further, Rimini engaged in widespread patterns of misconduct over multiple

28   years, and so Oracle's interrogatory responses are sufficient if (as they do) they fully describe the

1  patterns and the evidence on which Oracle relies to demonstrate that conduct is wrongful.  *See,*

2  *e.g., SEC v. Berry*, No. C07–04431, 2011 WL 2441706 at *2, *4 (N.D. Cal. Jun. 15, 2011)

3  (plaintiff "is not obligated to put forth its entire case in response to a single interrogatory").

4  Rimini's insistence that Oracle must, for example, list every day on which Rimini used

5  automated downloads, or every day on which it delivered a fix to a customer, so that Rimini may

6  understand Oracle's claims, is misplaced; the detailed descriptions of the patterns of misconduct

7  inform Rimini of the basis of Oracle's claims.  *See id.; see also, e.g., Lucero v. Valdez*, 240

8  F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories that systematically track all of the

9  allegations in an opposing party's pleadings, and that ask for 'each and every fact' and

10  application of law to fact that supports the party's allegations, are an abuse of the discovery

11  process because they are overly broad and unduly burdensome."); *O'Connor v. Boeing N. Am.,*

12  *Inc.*, 185 F.R.D. 272, 281 (C.D. Cal. 1999) (denying motion to compel interrogatory response

13  detailing individual acts and holding that response was sufficient where it consisted of a general

14  narrative description of acts; allowing responding party to supplement as additional information

15  became known).

16      No substantial benefit would justify the burden it would take to provide the painstaking

17  details Rimini seeks.  The current responses make plain to Rimini the categories of conduct on

18  which Oracle bases its claim, and Rimini knows just as well as Oracle (indeed, better) the facts

19  and evidence of its own conduct falling into those categories.  In this circumstance, the burden of

20  what Rimini seeks is undue, making further responses are unwarranted.  *See, e.g., Lucero*, 240

21  F.R.D. at 594; *Pasternak v. Dow Kim*, No. 10 Civ. 5045, 2011 WL 4552389, *3 (S.D.N.Y. Sept.

22  28, 2011) ("Courts have stricken contention interrogatories which asked a party to describe 'all

23  facts' that supported various allegations of the complaint, finding that to elicit a detailed

24  narrative is an improper use of contention interrogatories."); *Bashkin v. San Diego County*, No.

25  08-CV-1450, 2011 WL 109229, *2 (S.D. Cal. Jan. 13, 2011) ("In the written discovery process,

26  parties are not entitled to each and every detail . . . . 'To respond would be an unduly

27  burdensome task, since it would require the Defendants to produce veritable narratives of their

28  entire case.'") (citation omitted).

1                     **b.      Rimini's Sweeping Requests Are Unduly Burdensome**

2         As explained individually below, some of Rimini's topics and interrogatories would

3 require Oracle to undertake the time-consuming and undue burden of compiling massive

4 information that it does not otherwise track, or educating a witness on vast amounts of data.

5 Rimini simply cannot justify such overbroad demands.

6         As another kind of overbreadth, several of Rimini's topics demand that the witness be

7 prepared to testify about each of Rimini's 339 customers.  For example, Second Notice Topic 10

8 is "Oracle's communications and contractual negotiations with each Rimini Street customer,"

9 and Second Notice Topic 11 asks about "[c]ommunications between Oracle and each Rimini

10 Street customer."  Hann Decl., Ex. A at 5.  Oracle has searched for and produced voluminous

11 documents responsive to these topics.  Is a witness now supposed to memorize them?  Virtually

12 all of Rimini's customers entered into their license agreements years ago and negotiated with a

13 legacy company (PeopleSoft, J.D. Edwards, or Siebel) that Oracle later acquired.  There is no

14 way for Oracle to track down sales representatives from ten or fifteen years ago for each of more

15 than 300 customer negotiations.  Without percipient witnesses, Oracle would therefore have to

16 prepare a Rule 30(b)(6) witness solely from documents, but no human being can memorize

17 thousands of emails with hundreds of customers.

18                   **c.      Rimini's Requests Seek Premature Expert Discovery**

19         Many of the topics and interrogatories prematurely call for expert conclusions and

20 analysis.  Interrogatory 17, for example, asks Oracle to describe "each instance of actual copying

21 by Rimini Street, and each improper appropriation of the work by Rimini Street."  Hann Decl.,

22 Ex. H at 19-20.  This is precisely what Oracle's experts are in the process of analyzing (from the

23 same source materials to which Rimini has access), and it is inappropriate to request that analysis

24 here, even if it were complete.  Rimini will receive Oracle's expert reports a week from the date

25 of this CMC, which is sooner than Oracle could recompile the information in these reports into

26 an interrogatory response or prepare a witness to testify anyway.

27         With that background as to the contention requests' common flaws, Oracle addresses the

28 individual requests.

1

           **d.**       **Copyright Infringement, Breach of Contract, and Inducement to Breach Contract Requests**

2

                **i.**       **Oracle Has Sufficiently Disclosed the Factual Basis for Its Copyright Claims**

3

4

     Rimini moves to compel further responses to these three interrogatories:

5

     ***Interrogatory No. 17:***  State the full factual basis for Your First Claim for Relief

6

     – Copyright Infringement, specifying each copyright that Oracle contends that it owns, each instance of actual copying by Rimini Street, and each improper appropriation of the work by Rimini Street on which Oracle intends to rely at trial to support this claim.

7

8

     ***Interrogatory No. 18****:* For each of the copyrighted works at issue, identify any instance in which Oracle contends that Rimini Street provided the copyrighted

9

     work to a customer whose license did not authorize that customer to access or use the protected expression, when the instance occurred, how Rimini provided the protected expression to the customer, and whether Oracle took any action in connection with the alleged instance.

10

11

     ***Interrogatory No. 32:***  Describe each instance in which Oracle contends that Rimini Street provided Oracle Software and Support Materials to a customer that

12

     was not entitled to access or use such Software and Support Materials.

13

     Rimini's assertion that Oracle's responses provide nothing other than its ownership of

14

copyrights is simply wrong.  Oracle's response to Interrogatory 17 identifies the types of conduct

15

at issue, with descriptions that explain to Rimini what Oracle intends to prove at trial, including

16

separate paragraphs describing the ways in which Rimini reproduced, distributed, created

17

derivative works from, and publicly displayed Oracle's copyrighted works.  Hann Decl., Ex. H at

18

20-36.  It has then incorporated the appropriate portions in response to Interrogatories 18 and 32,

19

which each seek subsets of the same information.  *Id*. at 36-38, 53-54.  That is an entirely

20

appropriate manner to provide Rimini answers of the "factual basis" for Oracle's claims.

21

     Nonetheless, after Rimini first raised concerns about these interrogatory responses during

22

the December 22 meet and confer teleconference, Oracle agrees to supplement them (1) to

23

further identify the categories of conduct, tied to Rimini's business process, giving rise to

24

Oracle's claims; and (2) to provide examples of such conduct with corresponding evidence.  As a

25

result, with the benefit of these supplementations, Rimini will have more than an adequate basis

26

to understand the proof Oracle intends to present at trial and prepare its defense.

27

     Rimini's assertion that Oracle must convert its interrogatory responses into an

28

1    encyclopedia of every specific act at issue, on a customer-by-customer basis, is entirely

2    unjustifiable.  While contention interrogatories may be helpful "in that they may narrow and

3    define the issues for trial and enable the propounding party to determine the proof required to

4    rebut the responding party's claim or defense," such interrogatories are unduly burdensome if –

5    like Rimini's – they seek "all facts" supporting a claim or defense, "such that the answering

6    party is required to provide a narrative account of its case." *Moses v. Halstead*, 236 F.R.D. 667,

7    674 (D. Kan. 2006); *see also Pasternak*, 2011 WL 4552389 at *3 ("Courts have stricken

8    contention interrogatories which asked a party to describe 'all facts' that supported various

9    allegations of the complaint, finding that to elicit a detailed narrative is an improper use of

10   contention interrogatories."); *Bashkin,* 2011 WL 109229 at *2 (demanding "veritable narratives

11   of [an opponent's] entire case" would be an "unduly burdensome task").

12        The undue burden of such interrogatories is obvious in this case.  Rimini has copied

13   terabytes of Oracle software and support material in numerous ways over a period of years.  The

14   burden of detailing each act would be extraordinary, and is entirely unnecessary to allow Rimini

15   to prepare itself for trial.  Indeed, Rimini knows the full breadth of its conduct far better than

16   Oracle.  Accordingly, identification of the types of conduct at issue along with examples, as

17   Oracle has agreed to do, entirely satisfies the legitimate purposes of the interrogatories.

18        For example, in *Berry*, defendant propounded interrogatories seeking the details of the

19   SEC's proof of a claim that defendant participated in a fraud.  *Berry*, 2011 WL 2441706 at *2.

20   The SEC responded by identifying the "types of false and misleading statements and omissions"

21   and the "types of documents" defendant "reviewed, edited, or to which she otherwise

22   contributed" in the course of the fraud.  *Id.* at *2-*3.  Defendant complained that the responses

23   were only "generalized allegations" and were insufficient.  Explaining that a plaintiff "is not

24   obligated to put forth its entire case in response to a single interrogatory," the court denied the

25   motion, holding that the "SEC has done enough."  *Id.* at *2, *4.  Likewise, Oracle's agreement to

26   supplement its interrogatories to identify the types of conduct at issue including specific

27   examples is more than enough.

28                        ii.        **Oracle Has Sufficiently Disclosed the Factual Basis for**

**Its Contract-Related Claims**

1

2       Rimini's primary complaint here is about Interrogatory 11, which asked Oracle to

3 "[i]dentify each instance in which Defendants' alleged acts breached or induced a breach of

4 contract as alleged in your Fifth and Sixth Claims for Relief, and for each such instance, identify

5 the specific provisions of each contract you allege has been breached, the specific acts on the

6 part of Rimini Street that constituted the breach, and, in the case of alleged induced breach, the

7 specific acts of a third party that constitute the breach and the specific acts of Rimini Street that

8 induced the breach." Hann Decl., Ex H at 1.

9       As with other contention-style requests, this interrogatory suffers from several flaws:

10 undue burden, overbreadth, and premature demand for expert testimony. *See* Section II.B.3.d.i.,

11 above. Nonetheless, Oracle provided a response that describes in detail Rimini's misconduct, the

12 relevant Oracle licenses and contracts, and Oracle's terms of use. Hann Decl., Ex. H at 1-17.

13 This response identifies the pattern of misconduct on which Oracle bases its claims; Rimini's

14 request for each "specific act by Rimini Street taken on behalf of a specific licensee that Oracle

15 contends constitutes a breach of a specific contractual obligation" is not only unwarranted, but is

16 "an abuse of the discovery process." *Lucero*, 240 F.R.D. at 594.

17       As Rimini correctly points out, Richard Allison assisted Oracle's counsel in the creation

18 of the spreadsheet included as Exhibit A to Oracle's Interrogatory 11 response, entitled *Fed. R.*

19 *Evid. 1006 Summary of Customer License Terms that Defendants Breached, Induced the Breach*

20 *of, or Acted in Excess of Authorization Granted By.* But Rimini falsely asserts that Oracle's

21 response to Interrogatory 11 lists only exemplar licenses, when in fact this license summary

22 contains the pertinent license language from more than 1300 actual customer licenses and related

23 contract documents. As Mr. Allison testified, he oversaw the methodology and accuracy of

24 creating Exhibit A. Hann Decl., ¶ 14 and Ex. I at 165:10-167:13. He also explained that Exhibit

25 A summarized relevant contractual provisions related to copy, use, site restrictions and other

26 provisions he could not remember off hand. *Id*. at 165:10-167:2; 167:22-168:15. Oracle's

27 response to Interrogatory 11 makes clear that Exhibit A to Interrogatory 11 captures what Oracle

28 believes Rimini breached, induced the breach of, or acted in excess of authorization granted by.

1        Oracle's response to Interrogatory 11 also identifies the terms of use that Oracle contends

2   Rimini breached, cites and quotes the provisions in the terms of use that Oracle relies on, and

3   then identifies by Bates-number every single term of use that forms the basis for Oracle's claims.

4   Hann Decl., Ex. H at 3-9.  Oracle did the same with its developer license and E-Delivery trial

5   license agreements.  *Id.* at 12-17.  There is simply nothing more to add to the response to

6   Interrogatory 11 concerning which contracts and which provisions of which contracts support

7   Oracle's claims.

8        Further, from Oracle's narrative response, Rimini is on notice of the pattern of

9   misconduct, spanning years, which Oracle contends breached these contracts.  Oracle's

10  December 19, 2011 amended response to Interrogatory 11 spans eighteen pages and describes

11  Rimini's conduct at issue (in addition to incorporating by reference Exhibit A).  *Id.* at 1-19.

12  Rimini is entitled to nothing more from this interrogatory or from the related aspects of Second

13  Notice Topics 16, 42-47, 57-58, and Third Notice Topics 11 and 13.

14       Nonetheless, after Rimini raised concerns about the response to Interrogatory 11, Oracle

15  agrees to supplement the response to identify specific examples of the categories of conduct

16  described, supported by evidence.  That is more than adequate to permit Rimini to prepare for

17  trial, and there is simply no basis for Rimini's demand for Oracle to write out "its entire case" in

18  response to the interrogatories.  *Berry*, 2011 WL 2441706, at *2, *4.

19                    **e.      Oracle Has Provided Sufficient Responses to Discovery**
                              **Related to Rimini's Defenses**
20

21       ***Interrogatory 30***.  This interrogatory asks Oracle to "[d]escribe in detail Oracle's

22  awareness, understanding or knowledge of the typical practices of its licensees, and its

23  instructions or recommendations to licensees, regarding the creation and/or use of non-

24  production copies of Oracle software and support material, including test and/or development,

25  staging, back-up and/or disaster recovery copies and copies of code objects made to develop and

26  implement updated code."  Hann Decl., Ex. H at 50-51.  As Oracle explained in its response, the

27  license agreements between Oracle and its customers set forth the conditions under which the

28  customers may use copies of Oracle's software.  *Id.* at 51-53.  The license agreements *are* what

1    Oracle instructs and recommends that its licensees comply with.  Whatever restrictions (or

2    permissions) exist in the license agreements govern the ability to create or use test or

3    development, staging, back-up and/or disaster recovery copies and copies of code objects.

4    Oracle does not have some secret set of instructions that it clandestinely gives to licensees telling

5    them they cannot exercise rights they have under their license agreements or that they can treat

6    the license agreements as optional.

7         Oracle's "awareness, understanding or knowledge" is irrelevant and, besides, would be

8    largely impossible to discern, as Rimini defined "Oracle" to include all of Oracle's current and

9    former employees.  (If Rimini truly seeks a recitation of Oracle's employees' thousands of

10   communications with licensees, involving personnel who are not even custodians, then the

11   interrogatory is overbroad and significantly burdensome.)  If all Rimini wants is a general

12   "corporate" statement about what Oracle as an entity is aware of, understands, or has knowledge

13   about concerning the typical practices of its licenses, the answer is that Oracle's general

14   understanding is that its licensees typically comply with their license agreements.  What that

15   means specifically for any given licensee with respect to back-up or disaster recovery copies, and

16   the other subjects Interrogatory 30 mentions, depends on that content of the customer's license

17   agreement.  Accordingly, the proper source for such information is the license agreements

18   themselves, which Rimini can review and analyze as readily as can Oracle, since identifying

19   license provisions relating to the "creation and/or use of non-production copies of Oracle

20   software and support material" requires no particular familiarity.  Oracle therefore referred

21   Rimini pursuant to Rule 33(d) to specific documents in its production from which Rimini can

22   discern the answers to its questions.  Hann Decl., Ex. H at 52-53.

23        The authorities cited by Rimini provide no support for its claim that Oracle's Rule 33(d)

24   response is inappropriate.  Unlike the plaintiff in *Martin v. Easton Pub. Co.*, 85 F.R.D. 312 (E.D.

25   Pa. 1980), Oracle has not merely pointed to the entirety of its document production as the source

26   of its interrogatory response.  Instead, as the court ordered in *Champagnie Francaise*

27   *d'Assurance Pour le Commerce Exterieur*, Oracle has articulated where among the thousands of

28   pages produced in this litigation, Rimini may find its answer.  *Champagnie Francaise*

1   *d'Assurance Pour le Commerce Exterieur*, 105 F.R.D. at 44.   Further, unlike the defendants in

2   *Puerto Rico Aqueduct and Sewer Authority v. Clow Corp.*, 108 F.R.D. 304, 308-09 (D.P.R.

3   1985), who claimed "not to possess the knowledge necessary to examine [the] business records,"

4   Rimini has not, nor could it, make such a complaint with respect to the license agreements

5   identified by Oracle.  Indeed, these agreements require much less of a specialized knowledge

6   then the mass of emails and instant messages provided by Rimini in response to Oracle's

7   Interrogatories 24 and 25, which this Court previously found to be adequate.  Dkt. No. 194.

8        ***Interrogatory 36***.  This interrogatory asks Oracle to "[s]tate in detail each instance in

9   which Oracle has communicated with a licensee regarding any allegedly-improper creation

10  and/or use of non-production copies of Oracle software and support material, specifically

11  including:  (A) test and/or development copies, (B) staging copies, (C) back-up and/or disaster

12  recovery copies, and (D) copies of code objects made to develop or implement updated code."

13  Hann Decl., Ex. H at 57.  Rimini correctly notes that Oracle objected and did not substantively

14  respond, but is silent on its own failure to meet and confer with Oracle about this interrogatory or

15  to narrow its scope.  Oracle can only reiterate its objections: the interrogatory is hugely

16  overbroad, as it asks for all communications on the listed subjects between "Oracle" – defined to

17  include all of its current and former employees – and any "licensee," an undefined term that

18  appears to include every single customer that has ever licensed Oracle software.  Moreover, the

19  interrogatory is unlimited in timeframe and software product line.  To even attempt to obtain the

20  information necessary to respond would require Oracle to conduct a company-wide investigation

21  of the communications its tens of thousands of employees and former employees may have had

22  with its thousands of customers over this unlimited time period.  That burden is unreasonable.

23  Further, communications between Oracle and customers that did not go to Rimini are irrelevant

24  to this case.  As to communications between Oracle and Rimini customers, the parties have

25  negotiated and agreed on a list of custodians and search terms, and Oracle has produced

26  documents that fall within these negotiated parameters that were located with reasonable

27  diligence.  Rimini can review those documents to determine if they have information responsive

28  to this interrogatory as easily as can Oracle.

1   **Second Notice Topic 21**.  Here Rimini seeks a long list of detailed information about

2   "Oracle's practice of delivering Oracle software or materials to Rimini Street as requested by

3   Oracle licensees," including the recitation of all Oracle customers making such requests.  Hann

4   Decl., Ex. A at 7.  This topic is nearly identical to Rimini's Interrogatory 26, *id.* at ¶ 15 and Ex. J

5   at 7, and since Rimini has never complained about Oracle's response to that interrogatory, and

6   has not moved to compel a further response, it would be unfair to demand that a witness

7   undertake strenuous education to provide duplicative discovery.  Oracle stands on its response to

8   Interrogatory 26.

9   **Third Notice Topic 10**.  By this topic Rimini sets Oracle the impossible task of educating

10   a witness about seven years of data about "[c]ontent on Oracle's Technical Support websites,

11   including the manner in which content is organized, methods for locating specific content, the

12   type of metadata available for identifying specific content, and any changes or modifications to

13   the way in which support content is made available to licensees from 2004 to present."  *Id.*, Ex.

14   C at 6.  This topic is incredibly burdensome.  As relevant to this case, Oracle's Technical

15   Support websites include the former Siebel SupportWeb (which ceased being accessible to

16   customers in January 2008), the former Customer Connection (active until November 2008), and

17   the various iterations of Metalink and My Oracle Support that have existed for the entire relevant

18   time frame.  Declaration of Thomas Brennan in Support of the Parties' Case Management

19   Conference Statement, ¶ 2.  These Technical Support websites were and are the method by

20   which Oracle delivered patches and updates, knowledge documents, and other software and

21   support materials to its customers.  So the "content" on these sites *is all of the Oracle support*

22   *content* for a span of seven years.  *Id.*  There have been and are numerous methods in which that

23   content has been organized, methods that are available for locating content, type of metadata

24   available, and other countless changes and modifications in how Oracle delivered this content to

25   licensees since 2004.  *Id.*  And Oracle's ability to reconstruct that type of information from years

26   ago – years before this case was filed, and years before Oracle learned of Rimini's unlawful

27   conduct – on support sites that are no longer operational is debatable at best.  *Id.*  Oracle would

28   have to conduct massive research to begin to retrieve the information sought, with a low

1   likelihood of accuracy in any event. *Id*. Rimini, which has never offered to narrow this topic or

2   even to explain why this information is necessary, cannot justify this demand.

3     ***Third Notice Topic 19***. This request seeks testimony about Metalink 3 – an Oracle

4   customer support website – that Oracle already has provided in response to Interrogatory 40,

5   which duplicates Topic 19 almost verbatim. Hann Decl., Ex. C at 7; Ex. J at 11. Rimini did not

6   complain about Oracle's response to Interrogatory 40 and has not moved to compel. Oracle

7   stands on that interrogatory response.

8        **f.  Oracle Has Sufficiently Disclosed the Factual Bases For Its**
        **Intentional Interference with Prospective Economic Advantage**

9           **and Unfair Competition Claims**

10     Interrogatories 19 and 20 seek the "full factual basis" for Oracle's claims for intentional

11   interference with prospective economic advantage and unfair competition, respectively. *Id*., Ex.

12   H at 38 and 47. These interrogatories suffer from the same flaws as the other contention-style

13   requests, detailed above in Section II.B.3.d.i. Although Rimini protests it "took great care to

14   specify each of the elements of Oracle's claims," that only reinforces Oracle's argument that

15   these requests demand undue and burdensome specificity. *See, e.g., Lucero*, 240 F.R.D. at 594;

16   *Berry*, 2011 WL 2441706 at *2-*4. Oracle's narrative responses detail numerous aspects of

17   Rimini's wide-ranging and long-lasting patterns of misconduct, and provide Rimini all the

18   information necessary to prepare its case for trial. *See, e.g., Moses*, 236 F.R.D. at 674.

19     Nonetheless, after Rimini raised concerns about the responses on December 22, Oracle

20   agrees to further supplement its responses to identify examples of such conduct supported by

21   evidence. As described in Section II.B.3.d.i., such supplementation is more than adequate to

22   serve the purposes of contention interrogatories, and Rimini's insistence that Oracle provide

23   detailed accounts of every act on a customer-by-customer basis entails burdens that vastly

24   overwhelm any legitimate benefit. *See, e.g.*, *Berry*, 2011 WL 2441706, *2, *4.

25       **4.  Oracle Has Sufficiently Provided Discovery Relevant to Its Damages**
      **Claims**

26

27     Rimini's damages-related discovery requests repeat familiar errors. The discovery that

Oracle has provided relating to its damages claims is more than sufficient.

28

1    ***Second Notice Topic 16***.  This topic seeks testimony regarding "any customers or

2    contracts Oracle alleges it lost because of Rimini Street, and for each customer or contract,

3    Oracle's revenue derived from that customer or contract for three years prior to losing that

4    customer to Rimini Street."  Hann Decl., Ex. A at 6.  Rimini and accordingly Oracle included

5    this topic in the treatment of requests relating to Oracle's contentions.  *See* Section II.B.3.d.i.,

6    above.

7    ***Interrogatory 25/Second Notice Topic 17***.  Second Notice Topic 17 seeks information

8    about "[f]or Oracle support customers lost to any third party competitor, independent consultant,

9    or self support since 2004, the percentage of customers which return to Oracle, how long on

10   average it takes for those customers to return to Oracle, the average amount of fees (including

11   any back fees, reinstatement fees, or penalty fees) that are collected when these customers

12   return."  Hann Decl., Ex. A at 6.  Interrogatory 25 is essentially identical.  *Id.*, Ex. H at 47.  But

13   Oracle does not track or compile this information, so preparing a witness on this topic or

14   responding to the interrogatory would require independent and lengthy data analysis – an

15   estimated 640 hours of work with no certainty of reaching an authoritative conclusion.

16   Declaration of Gary Miller in Support of the Parties' Case Management Conference Statement,

17   ¶ 2.  Rimini has never attempted to justify this extreme burden, nor could it.  Because Oracle

18   does not have an independent source of this data, it would have to create it from relevant

19   documents, a task that Rimini could do as effectively as could Oracle – actually more effectively,

20   since Rimini could at least start with its own customer list – while Oracle could not because of

21   the list's Highly Confidential designation.

22   ***Second Notices Topic 26 and 30***.  Second Notice Topic 26 asks for testimony about "all

23   instances in which Oracle lost the opportunity to license Oracle copyrighted software as well as

24   any lost customers, and for every lost customer the revenue for that customer for the last five

25   years."  Hann Decl., Ex. A at 7-8.  As with other topics, Oracle cannot educate a lay witness on

26   these issues because Rimini has designated its customer list as Highly Confidential, so Oracle

27   could not tell its witness which customers to analyze, even if it were possible for a witness to

28   memorize five years' worth of revenue for each of hundreds of customers.  Further, Oracle's

1   forthcoming damages expert's report will address this issue when served on January 17, making

2   Rimini's request both premature and inappropriate for a lay witness.

3          As for Second Notice Topic 30, "[f]or each Rimini Street customer, whether Oracle

4   received full payment under the relevant contracts between Oracle and the customer (for

5   example, the Software License and Services Agreement), and if not, any action taken by Oracle

6   to collect payment in full," *id*. at 8, the phrase "full payment" is undefined and unclear:  for

7   example, has Oracle received "full payment" from a customer under a software license if Oracle

8   provides that customer with a volume discount?  What about if Oracle accedes to a customer

9   request to waive a standard price increase for a support contract?  Rimini's short-circuit of the

10  meet and confer process leaves Oracle in the dark.

11         That vagueness aside, the topic is unbounded by time and overbroad.  Many, and possibly

12  most, of Rimini's identified 339 customers originally entered into license agreements with

13  legacy PeopleSoft and J.D. Edwards in the 1990s.  For Oracle to search through financial records

14  from twenty years ago, from legacy companies it acquired in 2005, to determine if those

15  companies ever received a check for less than the amount of the full bill, or if they ever pursued

16  a collection action against a particular customer, would be a herculean effort, and probably

17  impossible.  Rimini customers may have many, many agreements with Oracle or its legacy

18  companies over time, most of which are not relevant to this case, such as unrelated license

19  agreements.  Further, and again, Rimini has designated its customer list as Highly Confidential.

20  Oracle therefore cannot educate a lay witness on this topic and is barred from giving the

21  customer list to employees in its financial records department to even investigate whether this

22  potentially decades-old data could be obtained.

23             **5.     Rimini's Motion to Compel Production of Oracle's Approval &
                        Options Matrix**
24
           The Court should deny Rimini's motion to compel production of Oracle's Approval &
25
    Options Matrix.  Oracle has produced eight complete versions of the Approval & Options
26
    Matrix.  They are dated August 2004 (ORCLRS0316144 to ORCLRS0316190), August 2006
27
    (ORCLRS0688086 to ORCLRS0688161), August 2008 (ORCLRS0558751 to
28

1  ORCLRS0558871), October 2008 (ORCLRS0548712 to ORCLRS0548828), May 2009

2  (ORCLRS0314891 to ORCLRS0314992), July 2009 (ORCLRS0587685 to ORCLRS0587785),

3  November 2009 (ORCLRS1245705 to ORCLRS1245806), and January 2010 (ORCLRS0548269

4  to ORCLRS0548371).   Oracle has also agreed to produce or identify in its existing production

5  the Approval & Options Matrix for 2006, 2008, and 2011.  This resolve the only outstanding

6  versions requested by Rimini.   Rimini's motion is moot.

7       **C.      Oracle's Conditional Motion To Compel A Supplemental
                  Response To Interrogatory 23**
8

9          Oracle's Interrogatory 23 requests information regarding each copy created and each use

10  made of a local environment on Rimini's machines ostensibly associated with one customer to

11  support or benefit another customer, and for information regarding each use of environments

12  such as PSFT-848-MSSS for which Rimini is unable to identify an associated customer.

13  Rimini's initial and supplemental responses provide high-level information about cross-use that

14  occurs in the course of environment creation and fix development.  Hann Decl., ¶ 16 and Ex. K

    at 5.
15
           As noted above in Sections II.A.2.a.i and II.A.3.a., Rimini is moving to compel Oracle to
16
    identify "each Rimini Street action" that underlies each of Oracle's causes of action.  Oracle
17
    opposes this motion, and does not agree that Rimini's position is supportable or appropriate, as
18
    discussed at length above.  Nonetheless, if and only if the Court should grant Rimini's motion,
19
    Oracle requests that the Court require Rimini to similarly identify each action that Rimini has
20
    taken with each environment to benefit or support a customer with whom the environment is not
21
    ostensibly associated, including environment creation, fix development and testing, copying
22
    portions of one environment to another, and using environments for research purposes.
23

24

25

26

27

28

1    DATED:  January 6, 2012

2    BINGHAM McCUTCHEN LLP                    SHOOK, HARDY & BACON LLP

3    By: /s/ Geoffrey M. Howard               By: /s/ Robert H. Reckers

4       Geoffrey M. Howard (*pro hac vice*)        Robert H. Reckers (*pro hac vice*)
        Three Embarcadero Center                  600 Travis Street, Suite 1600
5       San Francisco, CA 94111-4067              Houston, Texas  77002
        Telephone:     415.393.2000               Telephone: (713) 227-8008
6       Facsimile:      415.393.2286              Facsimile: (731) 227-9508
        geoff.howard@bingham.com                  rreckers@shb.com
7
8       *Attorneys for Plaintiffs*                 *Attorneys for Defendants*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[CORRECTED] JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1

### <u>ATTESTATION OF FILER</u>

2          The signatories to this document are myself and Robert Reckers and I have obtained Mr.

3   Reckers' concurrence to file this document on his behalf.

4

5   DATED:  January 6, 2012                          BINGHAM McCUTCHEN LLP

6                                                    By:  /s/ Geoffrey M. Howard

7                                                        Geoffrey M. Howard (*pro hac vice*)
                                                         Three Embarcadero Center
8                                                        San Francisco, CA 94111-4067
                                                         Telephone:      415.393.2000
9                                                        Facsimile:      415.393.2286
                                                         geoff.howard@bingham.com
10

11                                                       *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[CORRECTED] JOINT CASE MANAGEMENT CONFERENCE STATEMENT