UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION


ORACLE USA, INC., ET AL.,      )  CASE NO:  2:10-CV-106-LRH-PAL
                               )
              Plaintiffs,      )            CIVIL
                               )
      vs.                      )         Las Vegas, Nevada
                               )
RIMINI STREET, INC., ET AL.,   )   Tuesday, January 10, 2012
                               )
              Defendants.      )   (10:30 a.m. to 10:49 a.m.)


DISCOVERY HEARING

BEFORE THE HONORABLE PEGGY A. LEEN,
UNITED STATES MAGISTRATE JUDGE



Appearances:             See Next Page

Court Reporter:          Recorded; FTR

Courtroom Administrator: Jeff Miller

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         361 949-2988








Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiffs:              GEOFFREY M. HOWARD, ESQ. (via telephone)
                         THOMAS S. HIXSON, ESQ.
                         Bingham McCutchen, LLP
                         Three Embarcadero Center
                         San Francisco, CA 94111


                         RICHARD J. POCKER, ESQ.
                         Boies Schiller & Flexner, LLP
                         300 South Fourth Street
                         Suite 800
                         Las Vegas, NV 89101


                         KIERAN RINGGENBERG, ESQ.
                         Boies Schiller & Flexner, LLP
                         1999 Harrison Street
                         Oakland, CA 94612

Defendants:              W. WEST ALLEN, ESQ.
                         Lewis & Roca, LLP
                         3993 Howard Hughes Pkwy.
                         Suite 600
                         Las Vegas, NV 89169


                         B. TRENT WEBB, ESQ.
                         Shook Hardy & Bacon, LLP
                         2555 Grand Blvd.
                         Kansas City, MO 64108


                         ROBERT H. RECKERS, ESQ.
                         Shook Hardy & Bacon, LLP
                         600 Travis
                         Houston, TX 77002

3

1      __Las Vegas, Nevada; Tuesday, January 10, 2012; 10:30 a.m.__

2              **(Mr. Howard Appeared Telephonically)**

3                      **(Call to Order)**

4          **THE CLERK:**  All rise.

5          **THE COURT:**  Good morning.  Please be seated.

6          **THE CLERK:**  Your Honor, we are now calling the

7   hearing in the matter of *Oracle U.S.A., Inc. versus Rimini*

8   *Street, Inc.*  The case number is 2:10-cv-0106-LRH-PAL.

9          Your Honor, for Plaintiff's Counsel, Mr. Geoffrey

10  Howard, appears telephonically for these proceedings.

11         Counsel present in the courtroom, please state your

12  names for the record.

13         **MR. RINGGENBERG:**  Kieran Ringgenberg, Boies, Schiller

14  and Flexner for the Plaintiffs, your Honor.

15         **MR. HIXSON:**  Tom Hixson with Bingham, McCutchen for

16  Plaintiffs.

17         **MR. POCKER:**  Your Honor, Richard Pocker of Boies,

18  Schiller and Flexner for the Plaintiffs.

19         **MR. RECKERS:**  Rob Reckers of Shook, Hardy and Bacon

20  for the Defendants.

21         **MR. ALLEN:**  West Allen for Lewis and Roca for the

22  Defendants.

23         **MR. WEBB:**  Trent Webb, Shook, Hardy, and Bacon for

24  the Defendants.

25         **THE COURT:**  All right.  Counsel, I have reviewed your

1   joint status report and corrected joint status report and in

2   getting to the bottom of this, Oracle has agreed to supplement

3   a number of discovery requests that are disputed in Rimini's

4   request that I compel further responses or deposition testimony

5   via a Rule 30(b)(6) deposition.

6           The initial question I have for counsel for Oracle is

7   when will you be prepared to provide the supplementation that

8   you have agreed to provide?

9           **MR. UNIDENTIFIABLE:**  Your Honor, within four weeks

10  from today.

11          **THE COURT:**  And we have a January 17th deadline for

12  disclosing experts.  Are you on target to disclose experts and

13  expert reports that comply with the rule by then?

14          **MR. UNIDENTIFIABLE:**  We are.

15          **THE COURT:**  And how voluminous do you expect the

16  supplemental responses will be that you are willing to produce

17  within four weeks?

18          **MR. UNIDENTIFIABLE:**  I think it will be -- the right

19  way to characterize that is not a great deal more voluminous

20  than the existing responses.  The additional information

21  provided would not expand their length significantly but it

22  will add more detail and there is (indiscernible) the records.

23          **THE COURT:**  Right.  You've agreed to provide some

24  additional categories of information and examples and so forth,

25  and you've also agreed to produce the global matrix for the

1  years that are missing.

2          **MR. UNIDENTIFIABLE:**  Correct.

3          **THE COURT:**  Is that going to be included within the

4  materials that you're prepared to produce and supplement within

5  four weeks?

6          **MR. UNIDENTIFIABLE:**  Yes.

7          **THE COURT:**  All right.

8          **MR. UNIDENTIFIABLE:**  And that's essentially two

9  documents which, you know, there are, I don't know, 150 pages

10 or so but that's the end of it.

11         **THE COURT:**  And where are you in terms of resolving

12 the two customer production issues, Medtronic and QBC?

13         **MR. UNIDENTIFIABLE:**  There is a hearing pending in

14 the District of Minnesota and that needs to be resolved at the

15 hearing presumably and I will have to confess, your Honor, that

16 I'm going to have to turn to my colleague, Mr. Hixson, on the

17 other.

18         **MR. HIXSON:**  We had a scope and meet and confer with

19 QBC and did come up with a firm date for that deposition to go

20 forward.  So far they have not indicated that they would not

21 provide someone for a deposition but we don't have a firm date

22 yet but we're working on that, your Honor.

23         **THE COURT:**  All right.  And then you were working

24 with the Adams partners to potentially get a couple of more

25 hours worth of deposition testimony because their Rule 30(b)(6)

1   designee wasn't prepared to addressed a couple of topics?

2           **MR. UNIDENTIFIABLE:**  That is correct, your Honor.

3   Oracle has reserved rights and if we decide to proceed with a

4   motion, we would file that in the Northern District of

5   California where they're located.

6           **THE COURT:**  But how close are you to determining --

7   what I'm trying to do is tie up loose ends so that we

8   absolutely have an end to fact discovery --

9           **MR. UNIDENTIFIABLE:**  Right.

10          **THE COURT:**  -- and that nothing that occurs is going

11  to have a significant impact on the expert disclosures.

12          **MR. UNIDENTIFIABLE:**  We expect to either fish or cut

13  bait very soon.

14          **THE COURT:**  And given those representations, counsel

15  for Rimini, obviously this was a very voluminous status report

16  with attached exhibits and they've now agreed to supplement and

17  they've clarified their position about a few things.

18          Where are you in terms of anything that needs to be

19  immediately addressed in your motion to compel given the

20  agreements to supplement that they have made?

21          **MR. UNIDENTIFIABLE:**  Your Honor, you're absolutely

22  right.  We made a lot of progress last week on the issues that

23  are presenting.  There is one issue or two related issues that

24  I think are ripe for -- to be heard today and I'd like the

25  opportunity to address those issues.

1      **THE COURT:**  That's fine and that's why I -- I know

2  this is a work in progress.  You have been making progress.

3  You have clarified your positions and so forth.  So tell me

4  what you'd like me to address here and -- wherever you're more

5  comfortable.  The podium is probably a little easier.

6      **MR. UNIDENTIFIABLE:**  In the two issues, and they're

7  related, are related to the contention interrogatories or the

8  contention discoveries for the copyright claim and the contract

9  claim.  In those, in particular, are the Interrogatories Number

10  17, 18, and 32, and then there's related topics from our second

11  notice.  And really what we're asking for here is what we

12  consider to be basic discovery as to the specific acts of

13  infringement that are alleged by Oracle against Rimini Street.

14      Right now, if you'd look at Interrogatory Number 17,

15  Oracle's response to it, and for the record, it's at Document

16  217, Exhibit H-20, and all that's listed there are the

17  statutory types of copying, a list of the hundred

18  registrations, and then some -- a laundry list of ways that

19  things could be copies; it's not specific.

20      Now they have agreed to provide some examples of

21  specific conduct as exemplary.  From Rimini's position, that's

22  not enough.  All we're asking for is a level of detail that

23  they'd have to prove at trial to make a prima facie case.

24      **THE COURT:**  We've been talking about that since

25  basically day one in the discovery process.

1        **MR. UNIDENTIFIABLE:**  Yes, your Honor.

2        **THE COURT:**  When I tried to encourage you folks to

3   perhaps agree to a representative universe of claims for which

4   you could have that kind of detail and that was not within the

5   realm of possibility for one or both sides.

6        **MR. UNIDENTIFIABLE:**  Let me say this.  It's less

7   about the sampling and proving up certain instances.  It's more

8   about defining the population.  What are the alleged acts?

9        We -- you know, sampling is something that, you know,

10  is established and even without agreement, I suspect there will

11  be some sampling in this case.  But really, it's what is the

12  universe?  What are the acts of infringement?  What are the

13  tortious acts of infringement?  What are the tortious acts that

14  Rimini is alleged to have --

15       **THE COURT:**  But your interrogatory asks for each and

16  every specific act, not the category of acts that the other

17  side alleges that constitute a breach or an infringement on

18  their intellectual property.

19       **MR. UNIDENTIFIABLE:**  Yes, and that's what I'm asking

20  for and I think they've offered some categories and hopefully

21  categories beyond, you know, the boilerplate and the laundry

22  list that we have in the current response.

23       What we are asking for, you know, what are all the

24  acts of copying?  What are -- how many instances of

25  infringement are there so we can, you know, defend against

1    those acts?

2            It's the same burden of proof you'd have at trial.

3    To prove up an act there has to be at least identification of

4    it, the act of infringement.  For each copy that they say is

5    infringing, tell us -- you contend that's an infringing copy

6    and the registration at the very least.

7            So that is what we're asking for, the listing of all

8    of their allegations.  We're not aware of any authority that

9    would allow them to go to trial just on examples.

10           **THE COURT:**  There's tens of thousands of alleged

11   infringements here.  Do you really expect that your trial judge

12   is going to let you go to trial for 10,000 days to prove up

13   10,000 or so alleged acts of infringement?

14           **MR. UNIDENTIFIABLE:**  I suspect not but where we are

15   now is we don't know of any.  There aren't any specific acts

16   that are contemplated.  Maybe there is a middle ground.  Maybe

17   they won't decide --

18           **THE COURT:**  That hasn't come out in the customer

19   depositions for example?

20           **MR. UNIDENTIFIABLE:**  I don't believe so, your Honor.

21           Maybe they won't have the time or the judge will not,

22   you know, allow them enough time to prove up each act

23   individually.  But we don't know which acts they're going to

24   choose.

25           **THE COURT:**  Well, from day one you've been telling

1   me, "Don't let the discovery be so voluminous and so onerous on

2   one or both sides that you will effectively lose by being

3   crushed in the process."

4        **MR. UNIDENTIFIABLE:**  Yes, your Honor, that's

5   certainly something that I've said many times up here.

6        But I think here all we're asking for is the most

7   basic discovery that you can have in a copyright case, the acts

8   of copying, and after two years we don't have those acts of

9   conduct, and that's my position on that and a similar position

10  on the contract claims as well.

11       We have a list of what Oracle's witnesses described

12  as the relevant provisions from thousands of the contracts.

13  Though it's clear that these aren't the provisions that are

14  actually alleged to have been breached, there's no

15  identification of specific acts.

16       For example, some of these provisions that are listed

17  in the discovery relate to copying of -- for clients that

18  Rimini has never had any copies of their software.  So why are

19  -- you know, they may be relevant -- the type of provision

20  might be relevant but there's no conduct by Rimini Street that

21  would correlate.

22       So again, we're seeking the basic allegations of what

23  claims were breached by what conduct.  It is -- if this were a

24  simple breach of contract case, certainly we'd be entitled to -

25  - for each contract identification --

1          **THE COURT:**  "When you didn't pay us on August 5th,

2    you breached paragraph blank of the contract."  That -- yes.

3          **MR. UNIDENTIFIABLE:**  Well, maybe not the date but,

4    you know, we have certain -- we have a certain number of copies

5    of the (indiscernible) system, we'll disclose them, and yes,

6    there are a large number.

7          Are each of those copies infringing?  For example, we

8    have backup copies.  We have disaster recovery copies that we

9    keep off sight.  Does Oracle allege that all of our disaster

10   recovery copies are also acts of infringement, also breach?

11         **THE COURT:**  Have you had those -- that level of

12   detailed discussions in the meet and confer process about what

13   it is that you're really trying to determine?  Because they say

14   you're on fair notice.  You know, we're not required to outline

15   our trial testimony through each witness or tell you exactly

16   how we're going to put this on.  The issue is whether you have

17   enough information in the discovery to put you on a level

18   playing field to know what their claims are so that you can

19   defend.

20         **MR. UNIDENTIFIABLE:**  And we have not.  Using my

21   backup example, we don't know whether --

22         **THE COURT:**  All right.  And that's why I ask you.

23         Have you had that level of detailed discussions in

24   the meet and confer process about what it is more specifically

25   other than "I want to know every date, every time, every

1  customer, every contract, every registration information?"

2  Have you had that level as opposed to "Just give me the entire

3  universe," and which they say "You do have the entire universe?

4  It's there somewhere, just go dig it out"?

5        **MR. UNIDENTIFIABLE:**  No, we haven't had those

6  discussions and, you know, I would say --

7        **THE COURT:**  I didn't think so because it doesn't come

8  across in the joint status report that you've had that level of

9  discussions.

10       **MR. UNIDENTIFIABLE:**  Yes, your Honor.  Thank you,

11  your Honor.

12       **MR. UNIDENTIFIABLE:**  Your Honor, I'll be brief.

13       I think it's clear to understand our point of view.

14  Let me give you an example to demonstrate.

15       So one of our -- one of the theories in this case is

16  that Rimini has made infringement copies by taking software and

17  installing it on Rimini Street systems when we contend that's

18  not authorized by the Ruble (phonetic) licenses.  The --

19       **THE COURT:**  So is your answer that every time they

20  copied it and put it on their system it's an infringement?

21       **MR. UNIDENTIFIABLE:**  That's right and their --

22       **THE COURT:**  So why can't you just answer an

23  interrogatory that tells them that?

24       **MR. UNIDENTIFIABLE:**  That is exactly what we've

25  agreed to do.  I mean, the existing interrogatories do that at

1    a certain level of detail.  I should say a certain level of

2    generality.  And what we've agreed to do is to say, "Look,

3    here's an example of the types of conduct.  You did this many

4    times.  We're not going to detail every time you did it."  But

5    that's enough to tell them what are trial story is going to be.

6              THE COURT:  But is -- but it is your contention that

7    if you -- for example, the issue that he just raised.

8              Is it your contention that if we recovered a backup

9    copy from -- that is a separate act of infringement?

10             MR. UNIDENTIFIABLE:  It is.  It is a separate act of

11   infringement it is our contention.

12             THE COURT:  Then they're entitled to know that that's

13   -- they're entitled to know that's your position and you have

14   not responded to interrogatories with that level of specificity

15   to let them know that that's where you're going.

16             MR. UNIDENTIFIABLE:  Well, I would take issue in two

17   regards.

18             First, our current interrogatory I think does put

19   them on notice that that's our view.  We don't need to tell

20   them every time they made a copy of our software because it's

21   their conduct and they know every instance.  I think what we're

22   obligated to do is to make sure that they're fairly on notice

23   of what our general trial, you know, story will be and I think

24   we've done that.

25             But we have agreed to go further after they raised

1   the issue and say, "Look, we'll tell you specific categories of

2   conduct tied to your business processes and we'll tell you that

3   -- a specific example of that tied to evidence and that will

4   allow you to know exactly what we're going to say."

5           So to follow up on the example I started with, the

6   installation of a local environment is a copy.  Every time it's

7   backed up, that's a copy.  Every time it's run on a computer

8   that generates copies inside of the RAM of the computer.  Every

9   time a file was removed and distributed to a customer, that's

10  another copy that's distributed.

11          **THE COURT:**  So have you actually done the analysis of

12  how many times that happened?

13          **MR. UNIDENTIFIABLE:**  I will say, your Honor, to the

14  extent there's a number it will be contained in our expert

15  report which they're going to get a week from today.

16          To the extent that we can say, we know it's an

17  extremely large number.  That's derived from evidence from

18  their files which they know about and will be captured within

19  the categories and examples that we propose to provide to them

20  in response to their concerns.

21          And I think if you look at what the legitimate

22  purpose of the contention interrogatory is, it's to make sure

23  that they can prepare for trial and that level of response will

24  do that.  To make it an encyclopedia, to say, "Here are each of

25  the thousands of acts," is an extraordinary burden that doesn't

1     really serve any legitimate purpose.  It just runs up the costs

2     of litigation which they've said again and again is

3     unnecessary.  And I'm not sure frankly what they would do with

4     it.  Even if we were to put the thousands of hours in and say,

5     you know, "Here's the 1.7 million copies you made of this

6     particular file," it's not going to change what they do at

7     trial.  Their defense is going to be the same whether it's --

8              **THE COURT:**  It's going to influence the potential

9     damages.

10             **MR. UNIDENTIFIABLE:**  That's a fair point, your Honor.

11             I would say, I don't think Mr. Reckers would dispute

12    that the number of copies made of Oracle software is extremely

13    high.  That's not really the issue and I think we -- that's

14    undisputed.  There's a lot of copying and their defense is --

15             **THE COURT:**  And so is your damages expert going to

16    have a model for how damages are calculated based on concrete

17    examples from the discovery and the evidence?

18             **MR. UNIDENTIFIABLE:**  Yes.

19             **THE COURT:**  And you're telling me that you think that

20    they're not going to be surprised by what your damages expert

21    says because it's all out there and you've laid it out with

22    sufficient specificity that they can figure out where you're

23    going on your -- both your claims and your damages

24    calculations?

25             **MR. UNIDENTIFIABLE:**  I think that's entirely true,

1  your Honor.  If you don't have any further questions, I don't

2  have anything more for you.  Thank you.

3        **THE COURT:**  All right.  I'm going to reserve ruling

4  on this until I see what the extent of the supplementation is

5  and whether it fairly addresses your concerns.  I'm not going

6  to have them list 10,000 examples of every time a copy -- and

7  provide you with a -- you know, that's busy work and it's a

8  waste of everybody's time and resources.  But you are entitled

9  to fair notice of what their claims are and then what they

10 based their claims on but I'm not going to compel an each and

11 every example type of response to an interrogatory and I don't

12 think your trial judge is going to let you try it that way.  I

13 wouldn't.  I mean, it can't be tried that way.  Just be

14 realistic, folks.

15        You know, there's a limit to what people can ingest

16 and so what I will do is, since you've indicated the responses

17 should be supplemented in four weeks, set this for a hearing in

18 four weeks.  By then, you should have the initial disclosure of

19 the expert reports which will also inform you about whether

20 you're surprised or you're not surprised based on what

21 counsel's representing -- the tact they're going to take and

22 how they're going to prove this case up.  And then I will rule

23 on any outstanding disputes concerning the adequacy of the

24 supplementation if there are any further requests for -- to

25 compel supplementation of the contention interrogatories either

1    by interrogatory or by 30(b)(6) deposition testimony.

2           I do appreciate Plaintiffs' observation that on many

3    of the topics for which you are seeking supplementation that

4    rely upon Rimini's documents that have been designated as

5    "confidential, attorneys' eyes only" there's a limit to what

6    you can do without being in conflict to that -- with that

7    position.  So this is not your run of the mill rear-end

8    automobile accident where the disputes are relatively simple to

9    resolve.

10          So we'll take it a step at a time.  We'll see what

11   you get in supplementation.  I'll review them very carefully

12   and listen to you concerning whether or not you think they are

13   or are not adequate to meet the Plaintiffs' discovery

14   obligations.  Okay.

15          Mr. Miller, what do we have in a little bit better

16   than four weeks out?

17          **THE CLERK:**  Yes, your Honor, currently I'm looking at

18   Tuesday, February the 14th, 2012, at 10:00 o'clock a.m.

19          **THE COURT:**  Gentlemen, do you want to be traveling

20   away from your significant others on Valentine's Day?

21          I don't want to cause any domestic problems.  Let's

22   see if we can pick another date.

23          **THE CLERK:**  Your Honor, we do have all day available

24   on Monday, the 13th.  Will that work for everybody?

25          **THE COURT:**  Is that in the ballpark, gentlemen, or do

1   you want it a little bit sooner or a little bit later?

2           **MR. UNIDENTIFIABLE:**  I would suggest that might not

3   leave enough time for the parties to get together to work out

4   what the disputes are, if any, after supplementation and before

5   the CNC so that we can present it in an orderly way.

6           **THE COURT:**  Okay.  Why don't we continue it to the

7   following week after that week, Mr. Miller.

8           **THE CLERK:**  Yes, your Honor.

9           How about Tuesday, February 21st, 2012, at 10:00

10  o'clock a.m.?

11          **THE COURT:**  Is that workable for both sides?

12          **MR. UNIDENTIFIABLE:**  I think so.

13          **THE COURT:**  Okay, excellent.  Well, thank you.  We're

14  moving along and we're making progress and let's take it to the

15  next step.  So we'll cross our fingers and see if we can't tie

16  up some loose ends and get you to your expert based discovery.

17  All right.  Thank you, Counsel.  Good day now.

18          **(Proceeding was adjourned at 10:49 a.m.)**

19

20

21

22

23

24

25

<u>**CERTIFICATION**</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                          <u>January 23, 2012</u>

        Signed                                              Dated

                *TONI HUDSON, TRANSCRIBER*