1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (pro hac vice)
6   FRED NORTON (pro hac vice)
    KIERAN P. RINGGENBERG (pro hac vice)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11

12

13  Attorneys for Plaintiffs Oracle USA, Inc.,
    Oracle America, Inc. and Oracle International
14  Corp.

BINGHAM McCUTCHEN LLP
GEOFFREY M. HOWARD (pro hac vice)
THOMAS S. HIXSON (pro hac vice)
KRISTEN A. PALUMBO (pro hac vice)
BREE HANN (pro hac vice)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com
bree.hann@bingham.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

15

16                    UNITED STATES DISTRICT COURT

17                         DISTRICT OF NEVADA

18   ORACLE USA, INC., a Colorado corporation;        Case No  2:10-cv-0106-LRH-PAL
     ORACLE AMERICA, INC., a Delaware
19   corporation; and ORACLE INTERNATIONAL           **MEMORANDUM OF POINTS AND**
     CORPORATION, a California corporation,          **AUTHORITIES IN SUPPORT OF**
20                                                   **ORACLE'S MOTION FOR PARTIAL**
                    Plaintiffs,                      **SUMMARY JUDGMENT**
21          v.

22   RIMINI STREET, INC., a Nevada corporation;      Date:        _____, 2012
     SETH RAVIN, an individual,                      Time:        _____ _.m.
23                                                   Place:       Courtroom __
                    Defendants.                      Judge:       Hon. Larry R. Hicks
24

25   _____

26

27

1

## TABLE OF CONTENTS

2

Page

3   I.    INTRODUCTION .................................................................................................. 1

4   II.   STATEMENT OF FACTS ..................................................................................... 2

5         A.    Oracle's J.D. Edwards, PeopleSoft, and Siebel Software ....................................... 2

6         B.    Unauthorized, Admitted Copying Pervades Rimini's Business ......................... 4

7         C.    Rimini Obtained Oracle Software And Support Materials Through
                Deception And Misdirection ........................................................................... 6

8         D.    Rimini Infringed Oracle's Copyrights When It Created And Copied Local
                Environments ................................................................................................... 8

9               1.    Rimini's Local Environments at Issue in This Motion ............................ 8

10              2.    Rimini Copied Oracle Software When Creating Environments ............... 9

11              3.    Rimini Created Local Environments from Non-Customer-Specific
                      Copies of Oracle Software .................................................................. 10

12              4.    Rimini Made Additional Copies of Oracle Software ............................. 11

13              5.    Rimini Used Environments Maintained for One Customer to
                      Generate Fixes and Updates for Multiple Customers ............................. 11

14  III.  LEGAL STANDARD ......................................................................................... 14

15  IV.   RIMINI INFRINGED ORACLE'S EXCLUSIVE RIGHT TO REPRODUCE
          THE EIGHT REGISTERED WORKS AT ISSUE IN THIS MOTION ...................... 14

16        A.    OIC Holds Exclusive Rights To Reproduce The Eight Relevant
17              Copyrights ..................................................................................................... 14

18        B.    Rimini Copied Protected Expression When It Created The Twelve
                Relevant Environments .................................................................................. 15

19  V.    RIMINI HAS NO EXPRESS LICENSE DEFENSE TO THESE COPIES .................. 17

20        A.    City Of Flint, Michigan.................................................................................. 17

21              1.    Rimini Cannot Prove That the Environments Were Created Using
                      City of Flint's Software...................................................................... 18

22              2.    The Environments Were Not Located at City of Flint's Facilities .......... 19

23              3.    The Environments Were Not Used Solely for City of Flint's
                      Internal Data Processing Operations.................................................... 20

24        B.    School District Of Pittsburgh ......................................................................... 21

25        C.    Giant Cement Holding, Inc., ......................................................................... 24

26        D.    Novell, Inc .................................................................................................... 25

27  VI.   RIMINI HAS NO IMPLIED LICENSE OR CONSENT DEFENSE........................... 27

    VII.  CONCLUSION ................................................................................................... 30

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001)...................................................................... 28, 30

*Bourne v. Walt Disney Co.,*
    68 F.3d 621 (2d Cir. 1995) ................................................................................ 17

*Camp Scandinavia AB v. Trulife, Inc.,*
    No. 07-14925, 2009 WL 1383301 (E.D. Mich. May 15, 2009)............................ 27

*Cosmetic Ideas, Inc. v. IAC/InteractiveCorp,*
    606 F.3d 612 (9th Cir. 2010) .............................................................................. 14

*Country Rd. Music, Inc. v. MP3.com, Inc.,*
    279 F. Supp. 2d 325 (S.D.N.Y. 2003) ................................................................ 28

*Dream Games of Arizona v. PC Onsite,*
    561 F.3d 983 (9th Cir. 2009) .............................................................................. 15

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
    307 F.3d 197 (3d Cir. 2002)........................................................................... 16, 19

*Field v. Google Inc.,*
    412 F. Supp. 2d 1106 (D. Nev. 2006) ............................................................ 28, 30

*Foad Consulting Group, Inc. v. Azzalino,*
    270 F. 3d 821 (9th Cir. 2001) ............................................................................ 30

*I.A.E., Inc. v. Shaver,*
    74 F.3d 768 (7th Cir. 1996).............................................................................. 27

*L&M Enters., Inc. v. Hartford Acc. & Indem. Co.,*
    700 F. Supp. 517 (D. Colo. 1988) ...................................................................... 27

*LGS Architects, Inc. v. Concordia Homes,*
    434 F.3d 1150 (9th Cir. 2006) ............................................................................ 17

*MAI Sys. Corp. v. Peak Computer Corp.,*
    991 F.2d 511 (9th Cir. 1993)....................................................................... 16, 17, 20

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    518 F. Supp. 2d 1197 (C.D. Cal. 2007)............................................................... 28

*Michaels v. Internet Entm't Group, Inc.,*
    5 F. Supp. 2d 823 (C.D. Cal. 1998) .................................................................... 17

ii

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*,
   533 F.3d 1287 (11th Cir. 2008)............................................................ 27

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012)....................................................... 14, 15

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*,
   425 F. Supp. 2d 756 (N.D. Tex. 2006)................................................ 28

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989)...................................................... 15, 17

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008).............................................. 27

*Stenograph L.L.C. v. Bossard Assocs., Inc.*,
   144 F.3d 96 (D.C. Cir. 1998) ............................................................ 16

*Tasini v. New York Times*,
   206 F. 3d 161 (2nd Cir. 2000)..................................................... 18, 19

*Triad Sys. Corp. v. Southeastern Express Co.*,
   64 F.3d 1330 (9th Cir. 1995), *overruled on other grounds by Gonzales v. Texaco*, 344
   Fed. App'x 304 (9th Cir. 2009) ......................................................... 16

*Viacom Int'l Inc. v. Fanzine Int'l Inc.*,
   No. 98 CIV. 7448 (KMW), 2000 WL 1854903 (S.D.N.Y. July 12, 2000)......................... 30

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000)............................................................ 17

**STATUTES**

17 U.S.C. § 106.................................................................................. 17

17 U.S.C. § 201(d)(1)........................................................................... 15

17 U.S.C. § 201(d)(2)........................................................................... 14

17 U.S.C. § 410(c).............................................................................. 14

17 U.S.C. § 501(b).............................................................................. 14

**LOCAL RULES**

Civ. L.R. 10-3 ................................................................................... 2

Civ. L.R. 56-1 ................................................................................... 2

iii

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

2    (collectively, "Oracle") submit this memorandum of points and authorities in support of their

3    motion for partial summary judgment on Oracle's first claim for relief, and on Defendant Rimini

4    Street Inc.'s ("Rimini's") second, third, and sixth affirmative defenses.

5    **I.      INTRODUCTION**

6         With fact discovery closed, the truth about Rimini's business model is clear – and

7    undisputed.  Rimini provides cut-rate support for PeopleSoft, Siebel, and J.D. Edwards software

8    by relying upon hundreds of unlicensed copies of that software and by "cross-using" it, that is,

9    using one customer's software to support other customers.  Rimini would not be able to support

10   its hundreds of customers without these infringing copies of Oracle software.  In this motion,

11   Oracle establishes that the copies of PeopleSoft, Siebel, and J.D. Edwards software that Rimini

12   purports to have created on behalf of four specific customers are infringing copies.  Rimini has

13   *admitted* in responses to interrogatories and requests for admission that it copied Oracle software

14   and that the copies embody protected expression covered by Oracle's registered copyrights.

15   Because the dispositive facts are not in dispute, Oracle seeks partial summary judgment as to

16   Rimini's liability under Oracle's first cause of action, copyright infringement, for these specific

17   copies.[1]  The undisputed evidence of copying, the governing license terms (or absence thereof),

18   and the legal issues relating to the copies at issue in this motion are substantially similar to the

19   evidence, license terms, and legal issues for hundreds of Rimini's other copies of Oracle

20   software.  Thus, a ruling will give the parties guidance that will simplify the trial.

21        Oracle also seeks partial summary judgment on Rimini's second, third, and sixth

22   affirmative defenses of express license, implied license, and consent as to the same set of copies.

23   Rimini contends that the software license agreements between Rimini's customers and Oracle

24   immunize Rimini's conduct.  On their face, these agreements do not authorize Rimini to install,

25   create and cross-use copies of Oracle's software on Rimini's computer systems.  Interpretation of

26   this plain language is a matter of law for the Court, and thus appropriate for summary judgment.

27   _____

28   [1] Oracle does not at this time seek summary judgment as to damages.

1

1  II.   **STATEMENT OF FACTS**

2        Below Oracle describes the factual background for this motion.  In addition, Oracle sets

3  forth the specific, undisputed facts that are material to the request for summary judgment,

4  together with citations to supporting evidence, in the Statement of Undisputed Facts ("SUF"),

5  submitted simultaneously pursuant to Civ. L.R. 56-1.  All exhibits cited in this motion and

6  supporting materials are contained in an appendix pursuant to Civ. L.R. 10-3(b).

7        A.   **Oracle's J.D. Edwards, PeopleSoft, and Siebel Software**

8        This motion concerns Rimini's copying of Oracle's PeopleSoft-, JD Edwards-, and

9  Siebel-branded enterprise application software.  Enterprise application software enables core

10 operational tasks, such as running payroll and managing inventory and finance.  Oracle, which

11 began offering enterprise software to its customers in 1987, has built a leading enterprise

12 software business through research and development and through acquisitions.

13       Oracle is currently the owner or exclusive licensee of PeopleSoft-, J.D. Edwards-, and

14 Siebel-branded software.  SUF 1 (Decl. of Todd E. Adler in Supp. of Oracle's Mot. for Partial

15 Summ. J. ("Adler Decl.")) ¶¶ 3-8 & Exs. 1-9 (copyright registrations TX 4-792-578

16 (PeopleTools 7.5), TX 5-266-221 (PeopleTools 8.10), TX 7-092-819 (PeopleTools 8.48), TX 4-

17 792-575 (PeopleSoft HRMS 7.5), TX 5-469-032 (PeopleSoft 8.3 HRMS), TX 5-586-247

18 (PeopleSoft 8.4 Financials and Supply Chain Management), TX 6-541-038 (Initial release of

19 JDE EnterpriseOne 8.10), and TX 6-941-993 (Siebel 7.7.1 Initial Release and Documentation);

20 and, PeopleSoft/JDE LLC OIC Asset Transfer Agreement)). The enterprise software that Oracle

21 creates and distributes under these three brands, or "product families," is highly complicated and

22 highly popular. Thousands of companies, government entities, and non-profits rely on this

23 software every day.  Oracle paid $10.6 billion in 2005 to acquire PeopleSoft and J.D. Edwards

24 and $6.1 billion in 2006 to acquire Siebel, and has invested millions of dollars in research and

25 development to improve and maintain the product lines that it acquired.

26       The PeopleSoft software applications at issue are Human Resources Management System

27 ("HRMS"), Financials and Supply Chain Management ("FSCM"), and PeopleTools.  As its

28 name suggests, HRMS facilitates key human resources functions, such as recruiting, hiring,

2

1  firing, and administering payroll and benefits.  FSCM software helps companies build and

2  maintain finance and supply-chain processes, such as managing accounts receivable and payable,

3  tracking expenses, and managing customer orders.  These applications work together with

4  PeopleTools, the "engine" for PeopleSoft software.  J.D. Edwards software helps companies

5  meet their enterprise resources planning needs, such as project management, order management,

6  customer relations management, supply chain management, and human resources management.

7  Siebel software includes some of the leading customer relationship management programs,

8  which assist organizations with functions such as sales and marketing.

9      PeopleSoft, J.D. Edwards, Siebel, and now Oracle license enterprise software to

10  customers, including the four customers discussed in this motion:  City of Flint, Michigan

11  (PeopleSoft); School District of Pittsburgh, PA (PeopleSoft); Giant Cement Holding, Inc. (J.D.

12  Edwards); and, Novell, Inc. (Siebel).  The licenses take the form of written agreements and are

13  limited in nature, authorizing only specified types of copying.  SUF 2 (Decl. of Thom O'Neill in

14  Supp. of Oracle's Mot. for Partial Summ. J. ("O'Neill Decl."), ¶¶ 2-9 & Exs. 10-17 (license

15  agreements for City of Flint, Michigan; School District of Pittsburgh, PA; City of Des Moines;

16  City of Eugene (two licenses); Dave & Buster's, Inc.; Giant Cement Holding, Inc.; and, Novell,

17  Inc.); Decl. of Bree Hann in Supp. of Oracle's Motion for Partial Summ. J. ("Hann Decl.") ¶ 3 &

18  Ex. 18 (Rimini's Suppl. Resp. to Interrog. 15) at 9-10).  The license limitations relevant to this

19  motion include limits on: (a) the computer systems where software can be installed; (b) the use

20  of one customer's software to support another customer; (c) the rights that can be granted to third

21  parties; and (d) the disclosure of Oracle's confidential information to third parties.  Conduct

22  outside those limitations is not authorized under any license.

23      PeopleSoft, J.D. Edwards, and Siebel (and then, after Oracle's acquisitions, Oracle) also

24  contracted with their customers to provide support.  Software support agreements, typically

25  renewed on an annual basis, grant customers access to software updates as well as technical

26  assistance.  For businesses that operate in multiple states and numerous foreign countries, the

27  software used to manage payroll, accounting, and other processes requires constant and

28  substantial updates to keep up with changes to international, federal, state, and municipal

3

1   regulations, tax laws, and so forth.  Revenue from providing customer support and tax and

2   regulatory updates for enterprise software accounts for a substantial fraction of Oracle's overall

3   revenue.  Here, City of Flint and the School District of Pittsburgh originally contracted for

4   support with PeopleSoft, Giant Cement with J.D. Edwards, and Novell with Siebel.

5       **B.    Unauthorized, Admitted Copying Pervades Rimini's Business**

6       Rimini was founded in September 2005 by Defendant Seth Ravin.  Rimini competes with

7   Oracle to provide support services, including tax and regulatory updates, to customers that

8   license and use Oracle enterprise software.  Rimini's Second Am. Answer, Dkt. 153, ¶¶ 9-10, 21.

9       Rimini induces customers to switch to Rimini with promises of lower-cost support,

10  typically advertising a 50% reduction from what the customer was previously paying.  *Id*, ¶ 14.

11  Through this marketing campaign, Rimini acquired the four customers discussed in this motion.

12  Rimini tells customers and prospective customers largely the same story that Rimini tells the

13  general public and that it has told this Court:  Rimini claims that it complies with the Copyright

14  Act, that it does not cross-use one customer's software for the benefit of other customers, and

15  that it has specific "silos" that keep customers' software separate, in a purported desire to comply

16  with intellectual property laws.  *Id*., ¶¶ 2-4.  When sued, Rimini claimed to be outraged by

17  Oracle's allegations of widespread copyright infringement.  *Id*.

18      But the truth has come out in discovery.  Document after document, and witness after

19  witness, show that Rimini's business relies on massive, unauthorized copying and cross-use of

20  Oracle software.  Rimini has created hundreds of unlicensed "local environments," or installed

21  copies of Oracle software ("environments") on Rimini's computer systems ("local").  For some

22  customers, Rimini has many, separate installations of the same Oracle software, each purportedly

23  maintained on that customer's behalf.  *See, e.g.*, part II.D.1, below (table showing multiple

24  environments associated with several customers).  Rimini has created yet more unlicensed copies

25  of Oracle software by "cloning," or duplicating, an existing environment to create a new one.  In

26  fact, Rimini has copied Oracle software so indiscriminately that it cannot even identify the

27  source of the software used to construct certain of its local environments.  SUF 3 (Hann Decl. ¶ 7

28  & Ex. 22 (Oracle's Interrogs. 20-25) at 4; Hann Decl. ¶ 8 & Ex. 23 (Ex. A to Oracle's Interrogs.

4

1   20-25); Hann Decl. ¶ 9 & Ex. 24 (Rimini's Third Suppl. Resps. to Interrogs. 20-22 ("Resps. To

2   Interrogs 20-22)") at 13-14, 30; Hann Decl. ¶ 10 & Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to

3   Interrogs. 20-22)).  Far from segregating or siloing customer software, Rimini has cloned

4   software across customers.  Rimini also has created local environments that it uses to support

5   multiple customers ("cross-use"), an activity that the relevant software licenses do not authorize.

6   Oracle's software is copied into random access memory ("RAM") whenever Rimini uses (or

7   cross-uses) its local environments in the course of support and development activities; these

8   "RAM copies" are also unlicensed.  *See* part II.D.4, below.

9        Rimini does all this copying because it is faster and easier than complying with the law.

10  Creating and testing updates and fixes requires developers to use – and copy – environments.

11  *See* part II.D.  The unlicensed copies maintained on Rimini's computer systems (rather than on

12  customers' systems ███████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████. Hann Decl. ¶ 44 & Ex. 59 (Tahtaras

15  Depo.) at 206:8-208:22.  Developing an update once, testing it once, packaging it once, and then

16  distributing copies of it to multiple customers saves considerable time and money compared to

17  writing a new update or fix from scratch for each customer. ████████████████████████

18  ████████████████████████████████████████████████████████████████████████████████

19  ████████████████████ Hann Decl. ¶¶ 24, 27 & Exs. 39 (Oracle Depo. Ex. 312), 42

20  (Conley Depo.) at 68:7-19; Hann Decl. ¶ 41 & Ex. 56 (Radtke Depo.) at 64:1-6, 253:7-22.   Yet,

21  Oracle's license agreements clearly do not authorize cross-use, and thus Rimini's actions

22  constitute copyright infringement.

23        The widespread cloning of local environments using software from one customer to

24  create an environment to support another customer is also substantially faster than building a

25  new environment for each customer from scratch, using the customer's own software.  Rimini's

26  own documents explain ████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████████████

28  ████████████████████ Hann Decl. ¶ 51 & Ex. 66 (Oracle Depo. Ex. 480) at

5

1    RSI02681095.  These illegal, time-saving steps are why Rimini can provide support cheaply.

2         Because Rimini's documents and witnesses exhaustively chronicle this widespread

3    copyright infringement, Rimini had no choice but to admit to much of it in formal responses to

4    Oracle's Interrogatories and Requests for Admission.  These discovery responses form the

5    principal basis for this motion.

6         **C.    Rimini Obtained Oracle Software And Support Materials
               Through Deception And Misdirection**
7

8         Rimini has admitted in its discovery responses that it maintains environments on its

9    computer systems.  SUF 4 (Hann Decl. ¶ 7 & Ex. 22 (Oracle's Interrogs. 20-25) at 4; Hann Decl.

10   ¶ 8 & Ex. 23 (Ex. A to Oracle's Interrogs. 20-25); Hann Decl. ¶ 9 & Ex. 24 (Resps. to Interrogs.

11   20-22) at 13, 30; Hann Decl. ¶ 10 & Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to Interrogs. 20-

12   22)).  Rimini could not have built these local environments without using Oracle's installation

13   media, that is, CDs or DVDs containing Oracle's enterprise software and used to install that

14   software. █████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ███████████████████████████ SUF 5 (Hann Decl. ¶ 47 & Ex. 62 (Williams Depo.) at

17   17:1-21; Hann Decl. ¶ 9 & Ex. 24 (Resps. to Interrogs. 20-22), at 13, 30; Hann Decl. ¶¶ 28, 49 &

18   Ex. 43 (Corpuz Depo.) at 176:21-177:5), Ex. 64 (Oracle Depo. Ex. 38); Hann Decl. ¶ 14 & Ex.

19   29 (Rimini's Second Suppl. Resps. to Interrogs. 24-25) at 10-12)).  When it made an electronic

20   copy of a CD or DVD, Rimini necessarily made a copy of every file that contained more than a

21   *de minimis* amount of protected expression present on that installation media.  SUF 6 (Hann

22   Decl. ¶ 15 & Ex. 30 (Oracle's First Set of RFAs) at 1 (definitions); Hann Decl. ¶ 16 & Ex. 31

23   (Rimini's Resp. to RFA 13)).

24        Rimini received the CDs or DVDs it used to build environments through various means,

25   including shipments from Oracle and from Rimini's customers. ███ SUF 7 (Hann Decl. ¶ 9 &

26   Ex. 24 (Resps. to Interrogs. 20-22), at 15, 32).[2]  To order a software shipment, Rimini (or a

27   _____

28   [2] Rimini also obtained Oracle software "████████████████████," purportedly on behalf
     of Rimini's clients.  SUF 7 (Hann Decl. ¶ 9 & Ex. 24 (Resps. to Interrogs. 20-22), at 15, 32).

1    customer acting at Rimini's direction), usually submitted an electronic request to Oracle. █████

2    ████████████ a majority of those requests asked that Oracle send one copy of the software to

3    the customer, and a second copy to the customer's "secondary off-site backup location" –

4    Rimini's address.  SUF 8 ( Hann Decl. ¶ 16 & Ex. 31 (Rimini's Resp. to RFA 26); Hann Decl. ¶¶

5    39-40 & Ex. 54 (G. Lester Depo.) at 131:7-10, 135:14-136:4), Ex. 55 (Oracle Depo. Ex. 809);

6    Hann Decl. ¶¶ 28 & Ex. 43 (Corpuz Depo.) at 163:17-23, Ex. 46 (Oracle Depo. Ex. 34)).  Rimini

7    relies upon Oracle's shipment of software to Rimini as a defense to copyright infringement

8    through implied waiver/consent.  *See* Hann Decl. ¶ 3 & Ex. 18 (Rimini's Supp. Resps. To

9    Interrogs. 28-29) at 14.

10       The shipping requests concealed Rimini's true purpose.  None of the requests disclosed to

11   Oracle that the software to be shipped to a Rimini address would be "used by Rimini Street to

12   install the software on Rimini Street's computers," or that the software would be "used by

13   Rimini to support multiple Rimini customers."  SUF 9 (Hann Decl. ¶ 16 & Ex. 31 (Rimini's Am.

14   Resps. to RFAs 30, 32)). ████████████████████████████████████

15   ██████████████ SUF 10 (Hann Decl. ¶ 28 & Ex. 43 (Corpuz Depo.) at 158:19-159:1);

16   Hann Decl. ¶¶ 39-40 & Ex. 54 (G. Lester Depo.) at 131:7, 131:22-132:1, 134:7-136:7, Ex. 55

17   (Oracle Depo. Ex. 809)).  In ████, Oracle stopped shipping the second copy of the customer's

18   software to the purported "offsite backup location."  SUF 11 (Hann Decl. ¶¶ 28, 31 & Ex. 43

19   (Corpuz Depo.) at 163:17-23, Ex. 46 (Oracle Depo. Ex. 34); Hann Decl. ¶ 29 & Ex. 44

20   (RSI00479793)).

21       The Rimini executive who prepared the shipment request form admitted that ███████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   SUF 12 (Hann Decl. ¶ 39 & Ex. 54 (G. Lester Depo.) at 131:7, 131:22-132:10, 132:24-133:9,

25   135:2-10).  But a Rimini employee who submitted many of the shipping requests admitted that

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████ SUF 13 (Hann Decl. ¶ 28 & Ex. 43

28   (Corpuz Depo.) at 158:22-160:4, 160:13-14).  Moreover, he could not testify that the requests

1   were ███████████████   SUF 14 (Hann Decl. ¶ 28 & Ex. 43 (Corpuz Depo.) at 160:5-22).

2   ### D.   Rimini Infringed Oracle's Copyrights When It Created And Copied Local Environments

3

4   Rimini disclosed or confirmed the existence of each of the environments at issue in this

5   motion (and hundreds more) in response to interrogatories that, without objection, defined each

6   environment to be "a copy of Oracle software that result[ed] from installation of that software."

7   SUF 15 (Hann Decl. ¶ 7 & Ex. 22 (Oracle's Interrogs. 20-25) at 2 (definitions); SUF 4).  Rimini

8   further admitted that each of the environments at issue in this motion (and hundreds more)

9   embodies "a substantial portion of the protected expression" of one or more of Oracle's

10  registered copyrights.  SUF 16 (Hann Decl. ¶¶ 20, 52 & Ex. 35 (Rimini's Resp. to Second Am.

11  RFA 239), Ex. 67 (Second Am. Ex. B to Second Am. RFA 239)).

12  ### 1.   Rimini's Local Environments at Issue in This Motion

13  The environments at issue in this motion are allegedly associated with four specific

14  customers.  SUF 17 (Hann Decl. ¶¶ 9-12 & Ex. 24 (Resps. to Interrogs. 20-22) at 13, 17, 30, 33,

15  Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to Interrogs. 20-22), Ex. 26 (Ex. 1B-2 to Resps. to

16  Interrogs. 20-22), Ex. 27 (Ex. 1C-3 to Resps. to Interrogs. 20-22)).  For convenience, Oracle has

17  created a chart that summarizes Rimini's key statements and admissions relating to the

18  environments at issue in this motion: the allegedly associated customer, the names of the

19  environments, the Oracle software installed into those environments, and the related copyright(s)

20  infringed by those environments.  Part IV, below, discusses these admissions and establishes that

21  each of the environments at issue in this motion resulted from Rimini's unlawful copying.

22
| Associated Customer | Environment Name(s) | Software Version(s) | Registered Copyright(s) Embodied[3] |
| --- | --- | --- | --- |
| City of Flint, Michigan | H751COFO, H751COFO, H751COF2, H751DEVO, H751AUD | ███████████ | TX 4-792-575 (PeopleSoft HRMS 7.5), TX 4-792-578 (PeopleTools 7.5) |

26

[3] To reduce the number of copyright registrations at issue, the parties have stipulated (and the Court has so ordered) that the protected expression in later releases of software includes the protected expression contained in earlier releases.  *See* Stipulation and Order Re Derivative Works, Dkt. 149 (June 2, 2011).

| Associated Customer | Environment Name(s) | Software Version(s) | Registered Copyright(s) Embodied[3] |
|---|---|---|---|
| School District of Pittsburgh, PA | H831PPSM, H831PPS2 | ███████████ | TX 5-469-032 (PeopleSoft HRMS 8.3), TX 5-266-221 (PeopleTools 8.10) |
| School District of Pittsburgh, Pennsylvania | F842PPSM, F842PPSM | ███████████ | TX 5-586-247 (PeopleSoft FSCM 8.4), TX 7-092-819 (PeopleTools 8.48) |
| Giant Cement Holdings, Inc. | JGCHE5TSA1 | ███████ | TX 6-541-038 (Initial release of JDE EnterpriseOne 8.10) |
| Novell, Inc. | NOVELL-AP01, NOVELL-CLI | ████ | TX 6-941-993 (Siebel 7.7.1 Initial Release and Documentation) |

SUF 18-31 (citing Hann Decl. ¶¶ 9-12 & Ex. 24 (Resps. to Interrogs. 20-22) at 13, 17, 30, 33, Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to Interrogs. 20-22), Ex. 26 (Ex. 1B-2 to Resps. to Interrogs. 20-22), Ex. 27 (Ex. 1C-3 to Resps. to Interrogs. 20-22); Hann Decl. ¶¶ 20, 52 & Ex. 35 (Rimini's Resp. to Second Am. RFA 239), Ex. 67 (Second Am. Ex. B to Second Am. RFA 239), and, Adler Decl. ¶ 3 & Exs. 1-8 (copyright registrations)).  With respect to the environments named H751COFO and F842PPSM, Rimini admits to the existence of two distinct environments with the same name.  SUF 32 (Hann Decl. ¶ 10 & Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to Interrogs. 20-22)).  Twelve distinct environments are thus at issue in this motion.

### 2.  Rimini Copied Oracle Software When Creating Environments

Because it creates and maintains local copies of Oracle software on Rimini's systems, Rimini has ready access to software that it uses to develop and test updates and to replicate and troubleshoot customers' software problems.  Rimini built its local environments using at least four methods: 

SUF 33 (Hann Decl. ¶ 9 & Ex. 24 (Resps. to Interrogs. 20-22) at 13-15, 30-31;

1    Hann Decl. ¶ 47 & Ex. 62 (Williams Depo.) at 22:19-23:11)).  Regardless of the method

2    employed, Rimini admits that it copied Oracle's protected expression when building an

3    environment.  SUF 34 (Hann Decl. ¶ 15 & Ex. 30 (Oracle's First Set of RFAs) at 1 (definitions);

4    Hann Decl. ¶ 16 & Ex. 31 (Rimini's Resps. to RFAs 1-3, 7, 8)).

5           Multiple Rimini witnesses testified that a clone of a software environment is " ███████

6    ████ " of " ███████████ " in the environment that was cloned.  SUF 35 (Hann Decl. ¶ 39 &

7    Ex. 54 (G. Lester Depo.) at 21:2-24; *id.* at 20:12-17; Hann Decl. ¶ 47 & Ex. 62 (Williams Depo.)

8    at 73:2-13).  Rimini's practice of cloning software environments was widespread and is

9    undisputed.  Krista Williams, the manager of Rimini's PeopleSoft environments team, and Rule

10    30(b)(6) witness on environment cloning, testified that ███████████████████████████

11    ████████████████████████████████████  SUF 36 (Hann Decl. ¶ 47 & Ex. 62

12    (Williams Depo) at 94:23-95:8, 95:11-23); Hann Decl. ¶ 48 & Ex. 63 (Tr. of Nov. 8, 2011 Joint

13    Status Conference) at 17:9-19:2) (designating portions of Ms. Williams's deposition testimony

14    pursuant to Rule 30(b)(6)).  ████████████████████████████████████████████

15    ████████████████████████████████████████████████████████████████

16    ███████  SUF 37 (Hann Decl. ¶¶ 47, 50 & Ex. 62 (Williams Depo.) at 94:23-95:8, 95:11-23,

17    137:18-25, Ex. 65 (Oracle Depo. Ex. 483)).  For certain environments, Rimini states that the

18    source of the installation media used to create the environment is "unknown."  SUF 38 (SUF 3).

19          **3.**       **Rimini Created Local Environments from Non-**

20                   **Customer-Specific Copies of Oracle Software**

21        At least some of the Oracle software and support materials that Rimini used to create

22    environments "was not stored in client-specific folders."  SUF 39 (Hann Decl. ¶ 18 & Ex. 33

23    (Rimini's Am. Resp. to RFA 110)).  Rimini admits that it continued to use non-customer-specific

24    installation media when creating environments until ██████ .  SUF 40 (Hann Decl. ¶ 9 & Ex.

25    24 (Resps. to Interrogs. 20-22) at 13-14, 30-31); Hann Decl. ¶ 13 & Ex. 28 (Ex. 5 to Resps. to

26    Interrogs. 20-22 (environments at issue in this motion are not listed in Ex. 5; Ex. 5 lists

27    environments created without use of materials from Rimini's non-customer-specific libraries)).

28

1                **4.**       **Rimini Made Additional Copies of Oracle Software**

2           In addition to copying installation media and environments as described above, Rimini

3    regularly made additional copies of Oracle software.  For example, Rimini admits that "a portion

4    of an Environment is loaded into a computer's RAM [random access memory] when that

5    Environment is loaded for use." SUF 41 (Hann Decl. ¶ 15 & Ex. 30 (Oracle's First Set of RFAs)

6    at 1 (definitions); Hann Decl. ¶ 16 & Ex. 31 (Resp. to RFA 16)).  In other words, loading a

7    computer program into RAM creates a partial copy of that program.  SUF 42 (*see* SUF 41; Hann

8    Decl. ¶ 47 & Ex. 62 (Williams Depo.) at 268:5-11); Hann Decl. ¶ 39 & Ex. 54 (G. Lester Depo.)

9    at 21:12-15).

10           Rimini loaded or "start[ed] up" the environments present on its computer systems for

11    various purposes, including to create updates for PeopleSoft software. SUF 43 (Hann Decl. ¶ 25

12    & Ex. 40 (Baron Depo.) at 17:20-18:3; Hann Decl. ¶ 41 & Ex. 56 (Radtke Depo.) at 312:11-14;

13    Hann Decl. ¶ 39 & Ex. 54 (G. Lester Depo.) at 21:12-15; Hann Decl. ¶ 27 & Ex. 42 (Conley

14    Depo.) at 199:24-200:2).  Rimini's development managers (including a corporate designee) and

15    individual developers testified that ██████████████████████████████████████

16    ████████████████████████████████████████████ SUF 44 (Hann Decl. ¶ 35 & Ex. 50

17    (B. Lester 30(b)(6) Depo.) at 14:20-15:7, 16:4-17:22; Hann Decl. ¶ 44 & Ex. 59 (Tahtaras

18    Depo.) at 115:18-116:16; Hann Decl. ¶ 27 & Ex. 42 (Conley Depo.) at 73:9-74:16; Hann Decl. ¶

19    41 & Ex. 56 (Radtke Depo.) at 63:15-64:6.  Rimini's development process required making

20    multiple copies of an environment, including RAM copies every time Rimini loaded the

21    environment on any computer. SUF 45 (SUF 41-42).

22                **5.**       **Rimini Used Environments Maintained for One**

23                          **Customer to Generate Fixes and Updates for Multiple**
                           **Customers**

24    ████████████████████████████████████████████████████████████

25    ████████████████████████████████████████████████████████████

26    ████████████████████████ SUF 46 (Hann Decl. ¶ 47 & Ex. 62 (Williams Depo.) at 9:22-10:6, 160:10-

27    161:2).  Rimini's Siebel and J.D. Edwards personnel similarly used Siebel and J.D. Edwards

28    software for customer support purposes.  *See* SUF 47 (Hann Decl. ¶ 46 & Ex. 61 (Whittenbarger

               11

1  Depo.) at 57:20-58:3; Hann Decl. ¶ 43 & Ex. 58 (Slepko Depo.) at 63:11-23; Hann Decl. ¶ 26 &

2  Ex. 41 (Chiu Depo.) at 297:1-13; Hann Decl. ¶ 32 & Ex. 47 (Grigsby Depo.) at 11:24-12:18).

3           Rimini itself has no license from Oracle for any of the enterprise software in any of these

4  local environments.  SUF 48 (Hann Decl. ¶ 3 & Ex. 18 (Rimini's Suppl. Resp. to Interrog. 15) at

5  5, 9-10)).  Rather, Rimini allegedly associates each local environment (even the development

6  environments) with a specific Rimini customer that has such a license.  Rimini contends that

7  each environment is authorized by that particular customer's license agreement with Oracle.

8  However, the evidence obtained in discovery shows that Rimini *cross-uses* the software in these

9  environments, that is, Rimini used these local environments interchangeably to support *multiple*

10  customers.  No customer's license permits that.

11

12

13                                                                  SUF 49 (Hann Decl. ¶ 44 &

14  Ex. 59 (Tahtaras Depo.) at 163:11-21, 163:23-164:22; Hann Decl. ¶ 35 & Ex. 50 (B. Lester 30

15  (b)(6) Depo.) at 98:22-100:1, 180:3-15, 181:21-182:25; Hann Decl. ¶ 21 & Ex. 36 (Allen Depo.)

16  at 40:14-41:24; Hann Decl. ¶ 34 & Ex. 49 (Lakshmanan Depo.) at 68:15-71:13; Hann Decl. ¶ 33

17  & Ex. 48 (Holmes Depo.) at 168:19-169:19; SUF 44).

18

19                      SUF 50 (Hann Decl. ¶ 34 & Ex. 49 (Lakshmanan Depo.) at 70:16-22;

20  Hann Decl. ¶ 41 & Ex. 56 (Radtke Depo.) at 63:15-64:6) (          ); SUF 51 (Hann Decl. ¶ 35 &

21  Ex. 50 (B. Lester 30(b)(6) Depo.) at 16:4-17:22; Hann Decl. ¶ 44 & Ex. 59 (Tahtaras Depo.) at

22  164:12-17)) (          ).

23

24                                                                  *Id.*

25

26                                                                  SUF 52

27  (Hann Decl. ¶ 34 & Ex. 49 (Lakshmanan Depo.) at 68:15-69:1, 70:23-71:13; Hann Decl. ¶ 35 &

28  Ex. 50 (B. Lester 30(b)(6) Depo.) at 98:22-100:1).

1    ███████████████████████████████ SUF 53 (Hann Decl. ¶ 27 & Ex. 42 (Conley

2    Depo.) at 38:17-39:10); Hann Decl. ¶ 21 & Ex. 36 (Allen Depo.) at 238:19-240:8).

3        For example, Rimini's corporate designee pursuant to Rule 30(b)(6), Beth Lester,

4    testified ████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ███████████████████████████████ SUF 54 (Hann Decl. ¶ 35 & Ex. 50 (B. Lester 30(b)(6) Depo.) at

7    200:17-201:25).

8    ████████████████████████████████████████████ *Id.* Looking

9    only at the environments at issue in this motion, Rimini ████

10    ████████████████████████████████████████████████████████

11    ████████████████████████████████████████████████████████

12    ████████████████████████████████████████████

13    ███████ SUF 55 (Hann Decl. ¶¶ 36-38 & Ex. 51 ████████████

14    ████████████████████████████, Ex. 52 ████████

15    ████████████████████████████, Ex. 53 ████████

16    ████████████████████████████; Hann Decl. ¶ 35 & Ex. 50 (B. Lester

17    30(b)(6) Depo.) at 44:11-23, 150:16-151:3 ████████

18    ████████████████████████████████████████

19    ████████████████████████████████████████

20    ████████████████████████████████████████████████ SUF 56

21    (Hann Decl. ¶ 35 & Ex. 50 (B. Lester 30(b)(6) Depo.) at 186:16-24), at certain stages of

22    development, Rimini typically used one or more environments that it designated as

23    "development environments." *See* SUF 57 (Hann Decl. ¶ 41 & Ex. 56 (Radtke Depo.) at 264:3-

24    7) (████████████████████████████████████████████████

25    ████████████████████████████████████████████████

26    ████████████). The installed copies of Oracle's enterprise software in H751COF2 and

27    H751DEVO (both of which Rimini contends are City of Flint environments, authorized by the

28    City of Flint's license), and the copies in H831PPSM and H831PPS2 (both of which Rimini

1   contends are School District of Pittsburgh environments), ██████████████

2   ███████. *See* SUF 58 (SUF 20; SUF 23; Hann Decl. ¶¶ 24, 27 & Exs. 39 (Oracle Depo. Ex.

3   312), 42 (Conley Depo.) at 68:7-19; Hann Decl. ¶ 45 & Ex. 60 (Oracle Depo. Ex. 112); Hann

4   Decl. ¶ 22 & Ex. 37 (Oracle Depo. Ex. 568) at RSI03376355; Hann Decl. ¶ 23 & Ex. 38 (Oracle

5   Depo. Ex. 570) at RSI03408951).

6   **III.   LEGAL STANDARD**

7       Summary judgment is appropriate when the evidence shows that "there is no genuine

8   issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

9   Fed. R. Civ. Proc. 56(a).  "A party may move for summary judgment" on a "claim or defense" or

10  on "part of" a "claim or defense."  *Id.*

11  **IV.   RIMINI INFRINGED ORACLE'S EXCLUSIVE RIGHT TO**
    **REPRODUCE THE EIGHT REGISTERED WORKS AT ISSUE IN**
12  **THIS MOTION**

13      To prove a *prima facie* case of copyright infringement, Oracle must show (1) ownership

14  of the relevant copyrights, and (2) copying of protected expression.  *Range Road Music, Inc. v.*

15  *East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012).  Oracle's copyright registrations

16  and transfer agreements relating to those registrations satisfy the first element.  Rimini's

17  discovery admissions satisfy the second.

18      **A.   OIC Holds Exclusive Rights To Reproduce The Eight Relevant**
          **Copyrights**
19

20      Plaintiff Oracle International Corporation ("OIC") was the owner or exclusive licensee of

21  exclusive rights in the eight registered copyrights at issue in this motion at all relevant times,

22  satisfying the first element of Oracle's *prima facie* infringement case.  17 U.S.C. §§ 501(b),

23  201(d)(2).  Where a certificate of copyright registration was obtained within five years of first

24  publication of the registered work, the copyright is presumed valid, and all statements of fact

25  within the certificate are presumed to be true.  17 U.S.C. § 410(c); *see also Cosmetic Ideas, Inc.*

26  *v. IAC/InteractiveCorp*, 606 F.3d 612, 619 (9th Cir. 2010).

27      For three of the eight registrations at issue, the statutory presumption is sufficient to

28  establish OIC's ownership or exclusive license, as the certificates of copyright registration

14

1   identify OIC as the copyright claimant.  SUF 59 (Adler Decl. ¶ 4 & Exs. 3, 7-8).  Absent

2   competent, extrinsic evidence to the contrary sufficient to rebut the statutory presumption (and

3   no such evidence has been produced in the course of discovery), the first element of Oracle's

4   *prima facie* infringement case has been satisfied as to these three registrations.  *See, e.g., S.O.S.,*

5   *Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086-88 (9th Cir. 1989) (affirming summary judgment

6   because evidence regarding derivative work and authorship status was insufficient to rebut the

7   presumption); *Dream Games of Arizona v. PC Onsite*, 561 F.3d 983, 987 & n.2 (9th Cir. 2009).

8          The remaining registrations were transferred from PeopleSoft, Inc., to OIC.  Pursuant to

9   the statutory presumption, the five remaining certificates of registration establish that PeopleSoft,

10   Inc., was the original copyright claimant as to each of the works.  SUF 60 (Adler Decl., ¶ 4 &

11   Exs. 1-2, 4-6).  PeopleSoft, Inc., transferred ownership of these five copyrights to OIC on March

12   1, 2005, before Rimini was founded.  SUF 61 (Adler Decl. ¶¶ 6-7 & Ex. 9; Hann Decl. ¶ 42 &

13   Ex. 57 (Ravin Depo.) at 47:11-13).  OIC is the current owner of these five registered works as a

14   result of this transfer.  17 U.S.C. § 201(d)(1).  The first element of OIC's *prima facie case* is thus

15   established for each of the eight registered works at issue.

16   **B.     Rimini Copied Protected Expression When It Created The**
           **Twelve Relevant Environments**
17

18          Rimini's discovery admissions establish that Rimini copied protected expression from the

19   eight registrations at issue, thus satisfying the remaining element of OIC's prima facie case.

20   *Range Road Music*, 668 F.3d at 1153.

21          As described in part II.D, Rimini admitted in responses to Interrogatories Nos. 20 and 21

22   that the twelve environments that are the subject of this motion contained installed copies of

23   Oracle's enterprise software applications for PeopleSoft HRMS 7.5 and 8.3, PeopleSoft FSCM

24   8.4, PeopleTools, J.D. Edwards EnterpriseOne 8.10, and Siebel 7.7, all of which are covered by

25   registered copyrights.  SUF 62 (citing SUF 20-21, 23-24, 26-28, 31-32).

26          As a legal matter, this evidence of installed copies of Oracle software proves the copying

27   of protected expression.  *See, e.g., Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330,

28   1335 (9th Cir. 1995) (prima facie case of copyright infringement where defendant was "copying

15

1  [plaintiff's] entire [computer] programs" in order to provide software service and maintenance to

2  plaintiff's software customers), *overruled on other grounds by Gonzales v. Texaco*, 344 Fed.

3  App'x 304, 306 (9th Cir. 2009); *MAI Sys. Corp. v. Peak Computer Corp.*, 991 F.2d 511, 517-19

4  (9th Cir. 1993) (affirming infringement summary judgment where defendant copied plaintiff's

5  software into computer memory to provide competing software maintenance services, and used

6  unlicensed copies at defendant's headquarters); *Dun & Bradstreet Software Servs., Inc. v. Grace*

7  *Consulting, Inc.*, 307 F.3d 197, 208-09 (3d Cir. 2002) (finding infringement for "copying

8  [plaintiff's] copyrighted [human resources software] source code while fixing bugs, creating tax

9  updates, [and] customizing [plaintiffs' software]" in connection with software maintenance).

10       Here, as in the cases above, if an infringer makes literal copies of huge swaths of source

11  code, "there is no doubt that protected elements of the software were copied." *Triad Sys.*, 64

12  F.3d at 1335 (protectable expression plainly copied where accused infringer's "service activities

13  involved copying entire programs"); *see Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d

14  96, 100, 102 (D.C. Cir. 1998) (in case of "wholesale copying" of source code plaintiff need not

15  show which software elements were protectable).

16       As discussed in part II.D above, Rimini has admitted in response to Request for

17  Admission No. 239 that every single one of these environments contains a substantial amount of

18  protected expression from Oracle's registered copyrights.  SUF 63 (Hann Decl. ¶ 20 & Ex. 35

19  (Rimini's Resp. to Second Am. RFA 239).  Thus, these local environments are infringing copies

20  of protected expression. *Id.*

21       Further, the use of City of Flint environments H751COF2 and H751DEVO and School

22  District of Pittsburgh environments H831PPSM and H831PPS2 to create fixes and updates also

23  created copies of the software installed in those environments.  When Rimini loaded these

24  environments to use them for development, the environments were copied into RAM.  SUF 64

25  (SUF 45); *see MAI Sys.*, 991 F.2d at 518; *see also id.* at 519 ("[T]he copy made in RAM is

26  'fixed' and qualifies as a copy under the Copyright Act"); *Triad Sys.*, 64 F.3d at 1335 (under

27  *MAI*, "[i]t is clear" that [defendant's] activities are 'copying' for purposes of the Copyright Act,"

28  where defendant's use of the software necessarily involved the creation of a RAM copy).

16

1    Accordingly, Rimini's use of H751COF2, H751DEVO, H831PPSM, and H831PPS2 created

2    copies in violation of the Copyright Act.

3    **V.    RIMINI HAS NO EXPRESS LICENSE DEFENSE TO THESE COPIES**

4         Express license is an affirmative defense. *Worldwide Church of God v. Philadelphia*

5    *Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000).  A copyright owner holds the

6    exclusive right both "to do and *to authorize*" each of the exclusive rights enumerated in the

7    Copyright Act.  17 U.S.C. § 106 (emphasis supplied).  Rimini has the initial burden to identify

8    any license provisions that it believes excuse its infringement. *See Bourne v. Walt Disney Co.*,

9    68 F.3d 621, 631 (2d Cir. 1995); *Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823,

10   831, 834 (C.D. Cal. 1998).  If Rimini identifies any license it alleges to be relevant, Oracle can

11   overcome the license defense by showing that Rimini's conduct exceeded the scope of what the

12   license authorized. *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1156 (9th Cir.

13   2006) (licensee liable for infringement where it exceeds scope of the license).  "The license must

14   be construed in accordance with the purposes of federal copyright law." *S.O.S.*, 886 F.2d at

15   1088.  "Chief among those is the protection of the author's rights," and therefore "copyright

16   licenses are assumed to prohibit any use not authorized." *Id.*  Where the "literal language" of a

17   license is "unambiguous," courts interpret it according to its plain terms. *Id.*

18        Rimini's copying described in this motion is not excused by any customer license,

19   because none of Oracle's licenses allow Rimini to create the reproductions of Oracle enterprise

20   software that are at issue in this motion.[4]

21        **A.    City Of Flint, Michigan**

22        As summarized in part II.D, above, Rimini states that it has or had five distinct

23   environments on Rimini's systems associated with customer City of Flint that contain installed

24   copies of PeopleSoft HRMS 7.5 (copyright registration TX 4-792-575) and PeopleTools 7.5

25   (copyright registration TX 4-792-578).  These environments are H751COF2, H751DEVO,

26   H751AUD, and two distinct environments named H751COFO. *See* SUF 65 (SUF 20, 32).

27   _____

28   [4] Oracle assumes for purposes of this motion only that Rimini can assert licenses between Oracle
     and Oracle's customers (to which Rimini is not a party) in support of its express license defense.

17

1  Rimini relies upon the City of Flint's license agreement as a defense to this copying.  SUF 66

2  (Hann Decl. ¶ 3 & Ex. 18 (Rimini's Suppl. Resp. to Interrog. 15) at 10; Hann Decl. ¶ 4 & Ex. 19

3  (Suppl. Ex. A to Rimini's Suppl. Resp. to Interrog. 15) (citing ORCLRS0004135).  However,

4  that license does not authorize these environments, and it does not authorize Rimini to copy

5  PeopleSoft HRMS 7.5 and PeopleTools 7.5 to create updates and fixes for other customers.

6              **1.    Rimini Cannot Prove That the Environments Were**
               **Created Using City of Flint's Software**
7

8          Rimini cannot carry its initial burden of identifying a relevant license permitting the local

9  environments allegedly associated with the City of Flint because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮.  To justify having the alleged City of Flint local environments, which contain

12 copies of Oracle's PeopleSoft software, Rimini must identify a license that authorized it to copy

13 the PeopleSoft software that Rimini actually used to create those environments. ▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  SUF 67 (Hann Decl. ¶ 10 & Ex. 25 (First Suppl. Ex. 1A-3

17 to Resps. to Interrogs. 20-22)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  SUF 68 (Hann

19 Decl. ¶ 10 & Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to Interrogs. 20-22)).  Because Rimini

20 cannot prove that City of Flint's software was actually used to create any of these environments,

21 Rimini cannot assert City of Flint's license as a defense to infringement with respect to these

22 environments.  More generally, because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Rimini cannot identify *any* license permitting the use of

24 that customer's software to create those environments.  *See Tasini v. New York Times*, 206 F. 3d

25 161, 171 (2nd Cir. 2000) ("Where the dispute turns on whether there is a license at all, the

26 burden is on the alleged infringer to prove the existence of the license.").

27          For the remaining environment alleged to be a City of Flint environment, H751COF2,

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████ SUF 69 (Hann Decl. ¶¶ 9-10, 13 & Ex. 24

3  (Resps. to Interrogs. 20-22) at 14, 30-31, Ex. 25 (First Suppl. Ex. 1A-3 to Resps. to Interrogs. 20-

4  22)), Ex. 28 (Ex. 5 to Resps. to Interrogs. 20-22)).  Rimini ████████████████████████

5  ███████████████████████████████████████ therefore cannot identify any

6  relevant license.  Rimini thus fails to carry its burden on its express license defense for these

7  copies.  *See Tasini*, 206 F. 3d at 171.

         **2.**      **The Environments Were Not Located at City of Flint's Facilities**

9       Even if Rimini had used the City of Flint's software to create these environments – ████████

10 ████████████ – the City of Flint's license does not authorize Rimini to create copies of

11 Oracle software on Rimini's systems *at all*.  The license that Rimini attempts to assert to excuse

12 these environments states that ███████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████ SUF 70 (Hann Decl. ¶ 4 & Ex. 19 (Suppl. Ex. A to Rimini's

17 Suppl. Resp. To Interrog. 15); O'Neill Decl. ¶ 3 & Ex. 10 (ORCLRS0004135) at ¶ 1.1))

18 (emphasis supplied).  This license does not authorize Rimini to have a copy of the software at

19 *Rimini's* facilities.

20      Indeed, the license strictly limits the location of the software.  Even in the situation where

21 ████████████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████████████████

23 ████████████████████████████████ SUF 71 (O'Neill Decl. ¶ 3 & Ex. 10

24 (ORCLRS0004135) at ¶ 1.2(a)) (emphasis supplied).  The license does not authorize having a

25 copy of the installed software on Rimini's facilities at all, much less *all the time* on a server

26 under *Rimini's* control.  *See, e.g., Dun & Bradstreet Software Servs.*, 307 F.3d at 212 (holding

27 that license term limiting authorized use of the software to "Customer's data center" was an

28 unambiguous "limitation of the license authorization to the customer's site" and overruling third

1    party consultant's claim that it could use the software offsite to provide maintenance to

2    customers).

3            **3.**      **The Environments Were Not Used Solely for City of**
                          **Flint's Internal Data Processing Operations**

4

5            The City of Flint's license agreement does not authorize Rimini to create copies of the

City of Flint's software for the purpose of supporting other customers.  SUF 72 (O'Neill Decl. ¶

6

7    3 & Ex. 10 (ORCLRS0004135) at ¶ 1.1).  The very first section of the City of Flint license that

Rimini relies upon states

8

9

10

    SUF 73 (SUF 72) (emphasis supplied).  This is an unambiguous statement that City of Flint had

11

12    a license to use PeopleSoft software *only* for itself.  *See MAI Sys.*, 991 F.3d at 517 & n.3 (citing a

provision that a customer could use software "solely to fulfill Customer's own internal

13

14    information processing needs" in determining that a third-party service provider was not

authorized to use or copy the software).

15            Yet Rimini used City of Flint's software

16

17    . Rimini used the purported City of Flint environments as

18    . *See, e.g.*, SUF 74

(Hann Decl. ¶ 35 & Ex. 50 (B. Lester 30(b)(6) Depo.) at 200:17-201:25; Hann Decl. ¶ 36 & Ex.

19

20    51 (

)).  And every time Rimini used the purported City of Flint environments to

21

22    , it copied the software into RAM.  SUF 75 (SUF 45).

Rimini's cross-use of these environments is consistent with Rimini's standard, unlawful practice:

23

24

    . SUF 76 (Hann Decl. ¶ 47 & Ex. 62 (Williams Depo.) at 9:22-10:6, 160:10-

25    161:2; Hann Decl. ¶ 35 & Ex. 50 (B. Lester 30(b)(6) Depo.) at 14:21-15:7, 16:4-11, 98:22-100:1;

26    180:3-15, 181:21-182:25; Hann Decl. ¶ 41 & Ex. 56 (Radtke Depo.) at 63:15-64:6).

27            When Rimini copied City of Flint's software to

28

1    █████████████████, City of Flint's license did not authorize that copying, because City of

2 Flint could not do so under its license agreement. Both the environments and the RAM copies

3 that resulted from cross-use of the City of Flint environments were therefore unlicensed.

4       Accordingly, Rimini does not have an express license defense for the copies of

5 PeopleSoft HRMS 7.5 and PeopleTools 7.5 in the alleged City of Flint environments.

6     **B.    School District Of Pittsburgh**

7       As summarized in part II.D, above, Rimini has or had copies of PeopleSoft HRMS 8.3

8 (copyright registration TX 5-469-032) and PeopleTools 8.10 (copyright registration TX 5-266-

9 221) in School District of Pittsburgh environments H831PPSM and H831PPS2. SUF 77 (citing

10 SUF 21-23). And Rimini has copies of PeopleSoft FSCM 8.4 (copyright registration TX 5-586-

11 247) and PeopleTools 8.48 (copyright registration TX 7-092-819) in two distinct School District

12 of Pittsburgh environments, both named F842PPSM. SUF 78 (citing SUF 21, 24-25, 32).

13 Rimini claims its copies for the School District of Pittsburgh were authorized by the school

14 district's license with Oracle. SUF 79 (Hann Decl. ¶¶ 3-4 & Ex. 18 (Rimini's Suppl. Resp. to

15 Interrog. 15) at 10, 19 (Suppl. Ex. A to Rimini's Suppl. Resp. To Interrog. 15)). However, the

16 undisputed facts show they were not.

17       Rimini admits that ████████████████████████████████

18 ██████████████████████████. Instead, Rimini admits that all of these

19 environments are ████████████████████████████████████████

20 ███████████.

21       Rimini admits that ████████████████████████████████

22 ████████████████████████████. SUF 80 (Hann Decl. ¶¶ 9-10 & Ex.

23 24 (Resps. To Interrog. 20-22) at 14, 31, Ex. 25 (First Suppl. Ex. 1A-3 to Resps. To Interrog. 20-

24 22)). H831COEM in turn ██████████████████████████████

25 █████████████████. SUF 81 ( Hann Decl. ¶¶ 9-10 & Ex. 24 (Resps. To

26 Interrog. 20-22) at 14, 31, Ex. 25 (First Suppl. Ex. 1A-3 to Resps. To Interrog. 20-22)). Rimini

27 states it built H831CODM with ██████████████████████████████

28 ████████████████████████. SUF 82 (Hann Decl. ¶¶ 9-10 & Ex. 24 (Resps. To

21

1   Interrog. 20-22) at 14, 30, Ex. 25 (First Suppl. Ex. 1A-3 to Resps. To Interrog. 20-22)).

2   H831PPS2, School District of Pittsburgh's other HRMS environment, ███████████

3   ███████████████████████████████████████████████

4   

5   

6   

7   

8   SUF 83 ( Hann Decl. ¶¶ 9-10 & Ex. 24 (Resps. To Interrog. 20-22) at 14, 31, Ex. 25 (First Suppl.

9   Ex. 1A-3 to Resps. To Interrog. 20-22); SUF 80-82).  Similarly, both copies of F842PPSM are

10  

11  

12  

13  

14  SUF 84 ( Hann Decl. ¶¶ 9-10 & Ex. 24 (Resps. To Interrog. 20-22) at 14, 31, Ex. 25 (First Suppl.

15  Ex. 1A-3 to Resps. To Interrog. 20-22)).  Thus, *all* of the software environments that Rimini has

16  on its systems

17  

18  

19  

20       In addition, Rimini admits that it used H831PPSM and F842PPSM – ostensibly

    maintained for the School District of Pittsburgh – to ███████████████

21  ███████, as illustrated here:

22  

23  

24  

25  

26  

27  

28



1

2

3

4     SUF 85 ( Hann Decl. ¶¶ 9-10 & Ex. 24 (Resps. To Interrog. 20-22) at 14, 31, Ex. 25 (First Suppl.

5     Ex. 1A-3 to Resps. To Interrog. 20-22)). Thus, it is undisputed that environments labeled for the

6     School District of Pittsburgh were

7

8         However, the City of Des Moines's license agreement does not authorize Rimini to have

9     the City of Des Moines's software on Rimini's systems at all, nor to support a different customer

10    through cross-use. Rather, the license contains similar limitations as the City of Flint's, stating

11    that

12

13

14                            SUF 86 (Hann Decl. ¶ 4 & Ex. 19 (Suppl. Ex. A to Rimini's

15    Suppl. Resp. To Interrog. 15); O'Neill Decl. ¶ 5 & Ex. 12 (ORCLRS0162923) at ¶ 1.1)

16    (emphasis supplied). Like the City of Flint environments, the School District of Pittsburgh

17    environments on Rimini's computer systems

18

19         Rimini does not contend that

20                                      . SUF 87 (Hann Decl. ¶ 10 & Ex.

21    25 (First Suppl. Ex. 1A-3 to Resps. To Interrog. 20-22)). Even if Rimini were to contend that

22    School District of Pittsburgh's own software license authorized the H831PPS2, H831PPSM, or

23    F842PPSM environments, that argument would fail. The School District of Pittsburgh's license

24    *also* states that

25

26

27                   SUF 88 (Hann Decl. ¶ 4 & Ex. 19 (Suppl. Ex. A to Rimini's Suppl. Resp. To

28

1    Interrog. 15); O'Neill Decl. ¶ 4 & Ex. 11 (ORCLRS0164981) at ¶ 1.1, 2.1(i), 2.2, 15).[5]  The

2    creation and cloning of the alleged School District of Pittsburgh environments on Rimini's

3    computer ███████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████    Accordingly, Rimini does not

5    have an express license defense for the copies of PeopleSoft HRMS 8.3, PeopleSoft FSCM 8.4,

6    PeopleTools 8.10, and PeopleTools 8.48 in the alleged School District of Pittsburgh

7    environments.

8         **C.    Giant Cement Holding, Inc.**

9         As summarized in part II.D, above, Rimini has or had an installed copy of J.D. Edwards

10   EnterpriseOne 8.10 (copyright registration TX 6-541-038) in environment JGCHE5TSA1 for

11   customer Giant Cement Holding, Inc.  SUF 92 (SUF 26-28).  Rimini states that this environment

12   was █████████████████████████████████████████████████████████████████████

13   ███████████████████████  SUF 93 (Hann Decl. ¶¶ 9, 11 & Ex. 24 (Resps. to Interrogs. 20-22) at

14   14, 17, 30, 33, and Ex. 26 (Ex. 1B-2 to Resps. to Interrogs. 20-22)).  Rimini contends that Giant

15   Cement's license agreement with Oracle, Bates-numbered ORCLRS0164131, provides Rimini's

16   express license defense as to this copy.  SUF 94 (Hann Decl. ¶¶ 3, 5 & Ex. 18 (Rimini's Suppl.

17   Resp. to Interrog. 15) at 10, Ex. 20 (Suppl. Ex. B to Rimini's Suppl. Resp. to Interrog. 15)).

18   However, the Giant Cement license does not authorize Rimini to create an installed copy of the

19   software on its systems because █████████████████████████████████████████████

20   ████████████████████████████████████

21   ████████  Specifically, ███████████████████████████████████████

22   ████████████████████████████████████

23   █████████████████████████████████████████████████████

24   ██████████████████████████████

25   _____

26   [5]  ████████████████████████████████████████████████████████

27   SUF 89 (Pradhan Decl. ¶ 10 & Ex. 25 (First Suppl. Ex. 1A-3 to Resps. To Interrog. 20-22)).
     ████████████████████████████████████████████████████████████████████

28   (Suppl. Ex. A to Rimini's Suppl. Resp. To Interrog. 15); O'Neill Decl. ¶¶ 6, 8 & Exs. 13, 15).   SUF 90-91 (Pradhan Decl. ¶ 4 & Ex. 19

                                          24

MEMORANDUM IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT



SUF 95 (O'Neill Decl. ¶ 9 & Ex. 16 (ORCLRS0164131) at 1, Article II, License Restrictions ¶¶ 1, 3).  The license

The license states

SUF 96 (O'Neill Decl. ¶ 9 & Ex. 16 (ORCLRS0164131) at 1, Article I; *id.* at Article II, License Restrictions ¶ 1) (emphasis supplied).  By contrast, the license

SUF 97 (O'Neill Decl. ¶ 9 & Ex. 16 (ORCLRS0164131) at 1, Article II, License Restrictions ¶ 3) (emphasis supplied).  In other words,

Thus, on its face, this license does not authorize Rimini to install a copy of J.D. Edwards software on its systems.  Accordingly, Rimini does not have an express license defense for the copy of J.D. Edwards EnterpriseOne 8.10 that is in environment JGCHE5TSA1.

**D.     Novell, Inc.**

Rimini states that it has or had copies of Siebel 7.7.1 (registration TX 6-941-993) in two environments for Novell – NOVELL-AP01 and NOVELL-CLI.  SUF 98 (SUF 29-31; Hann Decl. ¶ 9 & Ex. 24 (Resps. to Interrogs. 20-22) at 14, 17, 30, 33).  Rimini asserts

, SUF 99 (Hann Decl. ¶¶ 9, 12 & Ex. 24 (Resps. to Interrogs. 20-22) at 14, 17, 30, 33, and Ex. 27 (Ex. 1C-3 to Resps. to Interrogs. 20-22)), and Rimini contends this was authorized by the license between Novell and Oracle (Siebel), Bates-numbered ORCLRS0810822.  SUF 100 (Hann Decl. ¶¶ 3, 6 & Ex. 18

25

1   (Rimini's Suppl. Resp. to Interrog. 15) at 10, Ex. 21 (Suppl. Ex. C to Rimini's Suppl. Resp. to

2   Interrog. 15)).

3          That license also does not authorize Rimini to have an installed copy of Novell's software

4   on its systems.  Rather, the license states that

5

6

7

8                                          SUF 101 (O'Neill Decl. ¶ 10 & Ex. 17 (ORCLRS0810822) at ¶ 2.1)

9   (emphasis supplied).

10         The license further states that

11                                      SUF 102 (O'Neill Decl. ¶ 10 & Ex. 17

12  (ORCLRS0810822) at ¶ 1.5).

13

14                                      SUF 103 (O'Neill Decl: ¶ 10 & Ex. 17

15  (ORCLRS0810822) at ¶ 1.21) (emphasis supplied).  And

16                                                                          SUF

17  104 (O'Neill Decl. ¶ 10 & Ex. 17 (ORCLRS0810822) at ¶ 1.15) (emphasis supplied).  Thus,

18

19                         .  The license does not authorize Rimini to have these environments on its

20  computers.

21

22         Accordingly, Rimini does not have an express license defense for the installed copies of

23  Siebel 7.7.1 in NOVELL-AP01 and NOVELL-CLI.

24  **VI.    RIMINI HAS NO IMPLIED LICENSE OR CONSENT DEFENSE**

25         Oracle moves for summary judgment on Rimini's third and sixth affirmative defenses to

26  Oracle's copyright infringement claim, in which Rimini claims Oracle "consented" to Rimini's

27  infringement and that Oracle's claims are "barred by implied license."  Rimini's Second Am.

28

1   Answer, Dkt. 153, at 25-26. These defenses are legally duplicative[6] and they present no triable

2   issue of fact for the three independent reasons below.

3       *First*, the express terms of the governing agreements do not permit the inference of a

4   contrary term.  The terms of the license agreements between Oracle and its customers set out

5   conclusively what the customer under the license is permitted to do.  As described above in part

6   V, those license agreements make express that Rimini is not authorized to make and use the

7   Oracle software at issue in this motion.  As a result, a contrary term cannot be implied as a

8   matter of settled law.  *See Camp Scandinavia AB v. Trulife, Inc.*, No. 07-14925, 2009 WL

9   1383301, *2 (E.D. Mich. May 15, 2009) ("a license may not be implied beyond the scope of an

10   express license") (citing *Henry J. Kaiser Co. v. McLouth Steel Corp.*, 175 F. Supp. 743, 749

11   (E.D. Mich.), *aff'd*, 277 F.2d 458 (6th Cir. 1960)); *see, e.g.*, 23 Richard A. Lord, Williston on

12   Contracts § 63:21 (4th ed., 2010) ("It is elementary that one cannot imply a term or promise in a

13   contract which is inconsistent with an express term of the contract itself."); *Spiegler v. Home*

14   *Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1054 (C.D. Cal. 2008) ("Implied covenants are

15   justified only when they are not inconsistent with some express term of the contract and, in the

16   absence of such implied terms, the contract could not be effectively performed."); *L&M Enters.,*

17   *Inc. v. Hartford Acc. & Indem. Co.*, 700 F. Supp. 517, 519 (D. Colo. 1988) ("Where an express

18   contract and an asserted implied contract co-exist and relate to the same subject matter, there can

19   be no implied contract between the parties because the provisions of the express contract

20   supersede those of the implied contract.") (citing *Schuck Corp. v. Sorkowitz*, 686 P.2d 1366,

21   1368 (Colo. Ct. App. 1984)).

22       *Second*, even setting aside the express license terms, no evidence supports a finding of

23   any implied license, let alone one covering Rimini's conduct.  "Courts have found implied

24   licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request

25   ——————————————

26   [6] The consent defense cannot be based on a lesser showing than that required for implied license. *See, e.g., Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287,

27   1308-09 (11th Cir. 2008) (equating "actual consent" defense with "license" and applying legal standard for implied license*); I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775-76 (7th Cir. 1996) (holding

28   that "consent" is "equivalent to a nonexclusive license" and citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-559 (9th Cir. 1990)).

1    and handed it over, intending that [the other] copy and distribute it." *A&M Records, Inc. v.*

2    *Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (citing *Effects Assocs. v. Cohen*, 908 F.2d 55,

3    558 (9th Cir. 1990)) (alterations in original).

4          Rimini's defenses fail because it cannot come forward with admissible evidence that

5    Oracle "created" a work at Rimini's request, much less that Oracle intended Rimini to reproduce,

6    modify, and distribute it. *See Napster*, 239 F.3d at 1026 (affirming rejection of implied license

7    defense); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226

8    (C.D. Cal. 2007) (rejecting implied license defense where "[o]bviously, Plaintiffs did not create

9    their copyrighted works at StreamCast's request or for StreamCast's benefit"); *Recursion*

10   *Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 773 (N.D. Tex. 2006)

11   (rejecting defense where "Interactive points to no evidence showing that it requested Objectspace

12   to create Voyager"); *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 328

13   (S.D.N.Y. 2003) (rejecting defense because plaintiff did not "commission" the work).

14         Some district courts have applied a more lenient standard than *Effects Associates*,

15   concluding that an "implied license can be found where the copyright holder engages in conduct

16   'from which [the] other [party] may properly infer that the owner consents to his use,'" as

17   "where the copyright holder knows of the use and encourages it." *Field v. Google Inc.*, 412 F.

18   Supp. 2d 1106, 1116 (D. Nev. 2006) (citation omitted).  This standard improperly ignores the

19   first half of the *Napster* test, requiring that the rightsholder have "created [the] work at [the]

20   infringer's] request," 239 F.3d at 1026, and is inconsistent with the Ninth Circuit's directive that

21   implied license be "very narrowly construed." *Grokster*, 518 F. Supp. 2d at 1226 (citing

22   *Napster*, 239 F.3d at 1026).  Even under this standard, however, Rimini fails its affirmative

23   burden of proof because the conduct on which Rimini bases its claims does not permit the

24   inference that Oracle authorized Rimini's copying.

25         For its implied license (and consent) defense, Rimini relies on the fact that, in some cases,

26   Oracle's customer support personnel shipped install media to Rimini's mailing address when

27   requests were submitted to Oracle describing that address as a customer's "secondary offsite

28   backup location." SUF 105 (Hann Decl. ¶ 3 & Ex. 18 (Rimini's Suppl. Resps. to Interrogs. 28,

28

1    29, and 30) at 12, 15, 18); Hann Decl. ¶¶ 28, 30 & Ex. 43 (Corpuz Depo.) at 158:15-159:1), Ex.

2    45 (Oracle Depo. Ex. 33)); Hann Decl. ¶ 17 & Ex. 32 (Rimini's Am. Resps. to RFAs 26, 28)).

3    However, as detailed in part II.C, the Rimini executive who prepared the template Rimini used to

4    submit requests ████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████████

6    ████████████████████.

7    ███████████████████████████████████████████████████████████████████████

8    ███████████████████████████████. J.R. Corpuz, the Rimini employee who submitted

9    many of these requests ████████████████████████████████████. *See* part II.C;

10   SUF 106 (Hann Decl. ¶ 28 & Ex. 43 (Corpuz Depo at 158:22-160:4)).  Yet Rimini admitted that

11   ████████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████ SUF 107 (Hann Decl. ¶

15   15 & Ex. 30 (Oracle's First Set of RFAs) at 2 (definitions); Hann Decl. ¶ 16 & Ex. 31 (Rimini's

16   Resps. to RFAs 30, 32)) (emphasis supplied).

17       Indeed, ███████████████████████████████████████████████████████████████

18   ██████████████████████████, Mr. Corpuz was unable to say

19   ██████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████

25   ██████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████

      SUF 108 (SUF 14 (citing Corpuz Depo. at 160:5-22) (emphasis supplied)).

28

1       No reasonable juror could conclude from Oracle's shipments to a location described as a

2   "secondary offsite backup location" that Oracle authorized Rimini to do something entirely

3   different: to copy that software onto Rimini's systems. *See, e.g., Viacom Int'l Inc. v. Fanzine*

4   *Int'l Inc.*, No. 98 CIV. 7448 (KMW), 2000 WL 1854903, at *3 (S.D.N.Y. July 12, 2000)

5   (granting summary judgment where "no reasonable juror could conclude that the parties

6   manifested mutual assent to a licensing arrangement").

7       ***Third***, and finally, even if an implied license were found, Rimini fails to prove any

8   implied license was broad enough in scope to reach the conduct subject to this motion. *See Foad*

9   *Consulting Group, Inc. v. Azzalino*, 270 F. 3d 821, 838 (9th Cir. 2001) (Kozinski, J., concurring)

10  ("We must also ask what the scope of this license was, and whether [defendant] exceeded it.").

11  For example, Rimini cannot prove that the installation media Rimini used to build at least four of

12  the environments allegedly associated with City of Flint was shipped to Rimini by Oracle,

13  because ███████████████████████████████ SUF 109 (SUF 67-68). Nor could

14  any reasonable juror could find that, by shipping software for the benefit of a specific customer,

15  Oracle consented to Rimini's unfettered cross-use of that software for any customer (indeed, any

16  purpose) that Rimini wished. *See Napster*, 239 F.3d at 1026 (holding that, even where the

17  rightsholder created the work for the alleged infringer, the scope of an implied license is limited

18  by the rightsholder's intent); *see also Field*, 412 F. Supp. 2d at 1116 (inquiring whether the

19  alleged infringer "may properly infer that the owner consents to his use.").

20      Accordingly, Rimini's third and sixth affirmative defenses fail as a matter of law.

21  **VII.   CONCLUSION**

22      For the foregoing reasons, the Court should grant Oracle's motion for partial summary

23  judgment on its first claim for relief and Rimini's second, third, and sixth affirmative defenses.

24

25

26

27

28

MEMORANDUM IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   DATED:  March 30, 2012                BINGHAM MCCUTCHEN LLP

2

3

4                                          By:_____/s/ Geoffrey M. Howard_____

5                                                     Geoffrey M. Howard
                                           Attorneys for Plaintiffs Oracle USA, Inc., Oracle
6                                            America, Inc. and Oracle International Corp.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT