# EXHIBIT 54

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                                                            Page 1
 1            UNITED STATES DISTRICT COURT
 2                 DISTRICT OF NEVADA
 3     -------------------------------
 4     ORACLE USA, INC., a Colorado   )
 5     corporation; ORACLE AMERICA,   )
 6     INC., a Delaware        ion;   )
 7     and ORACLE INTERNATIONAL       )
 8     CORPORATION, a California      )
 9     corporation,                   )
10             Plaintiffs,            )
11         vs.                        ) Action No.
12     RIMINI STREET, INC., A NEVADA  ) 2:10-CV-00106-LRH-PAL
13     CORPORATION; SETH RAVIN, AN    )
14     INDIVIDUAL,                    )
15             Defendants.            )
16     -------------------------------
17
18        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
19
20        Videotaped Deposition of GEORGE LESTER,
21        taken at 222 East Third Street, Charlotte,
22        North Carolina, commencing at 9:07 a.m.,
23        Friday, November 11, 2011, before Nancy J.
24        Martin, CSR No. 9504.
25     PAGES 1 - 250
```

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

## Page 2

```
 1      APPEARANCES OF COUNSEL:
 2
 3      FOR THE PLAINTIFF:
 4
 5          BINGHAM MCCUTCHEN, LLP
 6          BY:  THOMAS S. HIXSON, ESQ.
 7               MANU PRADHAN, ESQ.
 8          Three Embarcadero Center
 9          San Francisco, California  94111
10          (415) 393-2312
11          thomas.hixson@bingham.com
12          manu.pradhan@binghma.com
13
14      FOR THE DEFENDANT:
15
16          SHOOK, HARDY & BACON LLP
17          BY:  ROBERT RECKERS, ESQ.
18          600 Travis Street
19          Suite 1600
20          Houston, Texas  77002
21          (713) 227-8008
22          rreckers@shb.com
23
24      ALSO PRESENT:
25          JAMES DOWNEY, VIDEOGRAPHER
```

## Page 3

```
 1   CHARLOTTE; NORTH CAROLINA; FRIDAY, NOVEMBER 11, 2011;
 2            9:07 A.M.
 3        THE VIDEOGRAPHER:  Good morning.  We are on
 4   the record at 9:07 a.m. on November 11, 2011.  This is
 5   the beginning of the videotaped deposition of George    09:07:34
 6   Lester.  My name is James Downey, here with our court
 7   reporter, Nancy Martin.  We are here from Veritext
 8   National Deposition and Litigation Services.  This
 9   deposition is being held at the Hilton Garden City
10   Center in the City of Charlotte, North Carolina.  The  09:07:48
11   caption of the case is Oracle USA, Incorporated,
12   et al., v. Rimini Street, Incorporated, et al.  Case
13   No. 2:10-CV-0106-LRH-PAL.
14        Please note that audio and video recording
15   will take place unless all parties agree to go off the  09:08:08
16   record.  Microphones are sensitive and may pick up
17   whispers, private conversations, and cellular
18   interference.
19        At this time, will counsel please identify
20   themselves for the record, after which the court       09:08:19
21   reporter will swear in the witness.
22        MR. HIXSON:  Tom Hixson for plaintiffs.
23        MR. PRADHAN:  Manu Pradhan for the
24   plaintiffs.
25        MR. RECKERS:  Rob Reckers; Shook, Hardy &         09:09:11
```

## Page 4

```
 1   Bacon for the defendants.
 2
 3            GEORGE LESTER,
 4        having been first duly sworn,
 5        was examined and testified as follows:           09:09:23
 6
 7            EXAMINATION
 8   BY MR. HIXSON:
 9        Q.  Will you please state your name for the
10   record.                                               09:09:25
11        A   George Lester.
12        Q.  And you've had your deposition taken before;
13   is that correct?
14        A   That is correct.
15        Q.  In the TomorrowNow case?                     09:09:30
16        A   That is correct.
17        Q.  And you understand that today you are under
18   an oath to tell the truth, and even though we're in a
19   conference room, it's the same obligation to tell the
20   truth that you would have as if you were testifying in  09:09:40
21   a court of law?
22        A   I do.
23        Q.  So that we have a record, I need you to give
24   audible answers using words such as "yes" or "no"
25   rather than nodding or saying, "uh-huh" or "huh-uh."   09:09:52
```

## Page 5

```
 1   Do you understand that?
 2        A   I do.
 3        Q.  From time to time, your attorney may make
 4   objections to certain of my questions, but unless he
 5   instructs you not to answer, you're still obligated to  09:10:01
 6   give your best answer.  Do you understand that?
 7        A   I do.
 8        Q.  After this deposition you will have the
 9   opportunity to make changes to the transcript, but I
10   will have the opportunity to comment on any changes    09:10:13
11   that you may make.  Do you understand that?
12        A   I do.
13        Q.  Is there any reason why you can't testify
14   accurately today?
15        A   No.                                          09:10:21
16        Q.  When did you begin working at Rimini Street?
17        A   It was either late October or early November
18   of 2006.
19        Q.  Where did you work before Rimini Street?
20        A   I worked at TomorrowNow.                     09:10:44
21        Q.  For how long?
22        A   I'm not exactly sure.  I think three years.
23        Q.  So approximately 2003 to 2006; is that right?
24        A   I'm not sure.  I'm not sure.
25        Q.  At least two years?                          09:11:22
```

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      A  At least two years
 2      Q. In general terms, what was your
 3   responsibilities at TomorrowNow?
 4      A  At TomorrowNow I was in charge of the
 5   environments, and I was in charge of the technical    09:11:34
 6   PSEs
 7        REPORTER MARTIN: "C"?
 8        THE WITNESS: PSE
 9   BY MR HIXSON:
10      Q. And where did you work before TomorrowNow?    09:11:51
11      A  I worked at PeopleSoft
12      Q. For how many years approximately?
13      A  Five years
14      Q. Did you work by Seth Ravin at TomorrowNow?
15      A  I did not                        09:12:00
16      Q. Did you know him at TomorrowNow?
17      A  No
18      Q. Are there any other people who are currently
19   at Rimini Street who you worked with when you were at
20   TomorrowNow?                          09:12:12
21      A  Say that again
22      Q. Are there any people who are currently
23   working at Rimini Street who you worked with when you
24   were at TomorrowNow?
25      A  Yes                            09:12:22
                                          Page 6
```

```
 1      Q. Who are they?
 2      A. My wife, Beth Lester.  Krista Williams.  Doug
 3   Baron.  I'm sure there's others.  I'm just not
 4   recalling who they all are.  I know Seth was there
 5   too, but I didn't really know Seth at TomorrowNow.    09:13:00
 6      Q. Did anyone recruit you to come work at Rimini
 7   Street?
 8      A. No.
 9      Q. How did you learn about Rimini Street?
10      A. Seth came and visited my wife, and I inquired    09:13:12
11   to Seth about opportunities at Rimini Street.
12      Q. And did he describe for you what your role
13   could be at Rimini Street?
14      A. He did.
15      Q. And what did he describe it to you as?    09:13:23
16      A. Vice president of IT.
17      Q. And in general terms, what did he describe
18   that as being?  Like what would your responsibilities
19   be?
20      A. The infrastructure of the company.  The    09:13:37
21   servers, the storage, the desktops and laptops that
22   the company uses.
23      Q. What is your job title now?
24      A. Vice president of IT.
25      Q. How long have you had that job title?    09:13:55
                                          Page 7
```

```
 1      A. July of 2010.
 2      Q. What was your title before then?
 3      A. It was group vice president of PeopleSoft,
 4   development documentation and IT.
 5      Q. For how long were you in that role?    09:14:34
 6      A. 11 months.
 7      Q. And prior to that role, what was your job
 8   title?
 9      A. Vice president of IT.
10      Q. And did you have that title from when you    09:14:52
11   started at Rimini Street until approximately August
12   2009?
13      A. That is -- that is correct.  Actually, it
14   was -- yes, August of 2009.  Yes.
15      Q. Did your responsibilities change when you    09:15:18
16   moved from being the VP of IT to the group VP for
17   PeopleSoft development documentation in IT?
18      A. Yes.
19      Q. And how did that change?
20      A. I was tasked with an objective of increasing    09:15:30
21   the quality of our updates.
22      Q. Are you referring to PeopleSoft tax and
23   regulatory updates?
24      A. That is correct.
25      Q. Were there any other changes in your    09:15:49
                                          Page 8
```

```
 1   responsibilities?
 2      A. After that objective was met, I was tasked
 3   with proving out a staff augmentation model using
 4   offshore resources.
 5      Q. And where are those resources located?  In    09:16:20
 6   what countries?
 7      A. India.
 8      Q. Any other changes to your job
 9   responsibilities?
10      A. No.                          09:16:29
11      Q. And when you became the group vice president
12   for IT in July of 2010, were there any changes in your
13   responsibilities at that time?
14      A. Yes.  At that time, I was just focused solely
15   on IT.                            09:16:48
16      Q. So was that a narrowing of your focus?
17      A. Correct.
18      Q. Did you recruit any former TomorrowNow
19   employees to work at Rimini Street?
20      A. No.                          09:17:04
21      Q. When you started at Rimini Street, who
22   reported to you?
23      A. Dan Slarve.  I believe it was Dan Slarve.
24   I'm not sure if Doug Baron reported to me or not at
25   that time.                        09:17:37
                                          Page 9
```

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

**Page 14**

```
 1   client archives  So our customer's intellectual
 2   property is siloed, and IT is responsible for granting
 3   and restricting access to that software
 4       Q. And do customer archives contain Oracle
 5   software updates that were downloaded for particular    09:23:49
 6   customers?
 7       A  We refer to them as "client archives," and
 8   they are specific to a customer, correct
 9       Q. With respect to whether environments are
10   being used appropriately or built appropriately, is    09:24:04
11   there a particular person who is in charge of IP
12   compliance issues related to that?
13       A  I believe that responsibility would be shared
14   by on-boarding and the product line managers
15       Q. Do you have any responsibilities with respect    09:24:44
16   to whether the environments are being built or used
17   properly?
18       A  I don't have any direct control or management
19   over that process
20       Q. Have you ever, during your time at Rimini    09:25:09
21   Street, had responsibility for seeing whether software
22   environments are being built or used properly?
23       A  Yes
24       Q. When did you have that responsibility?
25       A  The first 8 to 12 weeks when I was managing    09:25:23
```

**Page 15**

```
 1   the environments.
 2       Q. So is it your testimony that after early
 3   2007, it was no longer your responsibility to
 4   determine whether software environments were being
 5   built or used properly?    09:25:45
 6       A. I believe it was Krista Williams that was the
 7   environments manager at that point, and that
 8   responsibility would go to her.
 9       Q. And it would not go to you; correct?
10       A. Correct.    09:25:56
11       Q. And did that remain her responsibility
12   through the present time?
13       A. No.
14       Q. Whose responsibility is it now?
15       A. Now I believe it's Ed Berde.    09:26:25
16       Q. And when did the responsibilities shift from
17   Williams to -- Berde, is it?
18       A. I don't know.  It is Berde.  I don't know if
19   it was when he first came on or -- I believe after
20   John Royce left it was -- Ed Berde was given that    09:26:41
21   responsibility.
22       Q. Can you put a year on that?
23       A. I can't recall.
24       Q. Do you know if it was before or after 2010?
25       A. I can't recall.    09:26:58
```

**Page 16**

```
 1       Q. So there was a time for 8 to 12 weeks when
 2   you -- in late '06 and early '07 when you managed the
 3   environments team, and then after that, Krista
 4   Williams managed that team; is that correct?
 5       A  Correct    09:27:17
 6       Q. And so for the time period when Krista
 7   Williams was managing the environment development
 8   team, as between yourself and her, who would generally
 9   be more familiar with the details of exactly how
10   environments were being built or created or used?    09:27:37
11       A  Say that again, please
12       Q. Turning to the time period after Krista
13   Williams took over responsibility for managing the
14   environment team, as between yourself and her, who
15   would have, in general, a greater understanding of how    09:27:59
16   the environments were being built or created or used?
17       MR  RECKERS: Let me object  Calls for
18   speculation
19       You can answer
20       THE WITNESS: Yeah  I'm not sure I really --    09:28:22
21   say that again one last time
22       MR  HIXSON: Let me phrase it differently
23       Q. After Krista Williams took over managing the
24   environment development team, you continued to have
25   some knowledge and understanding about how    09:28:35
```

**Page 17**

```
 1   environments were being built; is that correct?
 2       A  I believe I did up until she reported to
 3   Dennis Chiu, which was I think somewhere in mid 2007
 4       Q. And after mid 2007, did you continue to have
 5   an understanding about how environments were being    09:29:00
 6   built or created?
 7       A  Very little  Very little involvement
 8       Q. Would you agree that after mid 2007, Krista
 9   Williams had a greater understanding than you did
10   about how environments were being built or created?    09:29:18
11       A  I would -- I would agree to that, yes
12
```

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

Page 18

1

Page 20

1

Page 19

1

09:35:22
Page 21

Pages 18 to 21

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| 1 | 1 |
|---|---|
| Page 130 | 4<br>Page 132 |
| 1 | 1 |
| Page 131 | 13:57:44<br>Page 133 |

Pages 130 to 133

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| 1 | 1 |
|---|---|
| Page 134 | Page 136 |
| 1 | 1 |
| Page 135 | Page 137 |

Pages 134 to 137

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

```
 1        I, NANCY J. MARTIN, CSR No. 9504, do hereby
 2   certify:
 3        That the foregoing deposition testimony of GEORGE
 4   LESTER was taken before me at the time and place
 5   therein set forth, at which time the witness, in
 6   accordance with CCP Section 2094, was placed under
 7   oath and was sworn by me to tell the truth, the whole
 8   truth, and nothing but the truth;
 9        That the testimony of the witness and all
10   objections made by counsel at the time of the
11   examination were recorded stenographically by me, and
12   were thereafter transcribed under my direction and
13   supervision, and that the foregoing pages contain a
14   full, true and accurate record of all proceedings and
15   testimony to the best of my skill and ability.
16        I further certify that I am neither counsel for
17   any party to said action, nor am I related to any
18   party to said action, nor am I in any way interested
19   in the outcome thereof.
20        IN WITNESS WHEREOF, I have subscribed my name
21   this 16th day of November, 2011.
22
23
24   
25
              _____
              NANCY J. MARTIN, CSR No. 9504
```

Page 245

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order