# EXHIBIT 56

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

------------------------------

ORACLE, USA, INC., a Colorado )

corporation; ORACLE AMERICA, )

INC., a Delaware corporation; )

and ORACLE INTERNATIONAL )

CORPORATION, a California )

corporation, )

       Plaintiffs, )

vs. ) No. 2:10-cv-00106

RIMINI STREET, INC., a )    -LRH-PAL

Nevada corporation; SETH )

RAVIN, an individual, )

      Defendants. )

------------------------------


   HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY


   VIDEOTAPED DEPOSITION OF DAVID RADTKE

   WEDNESDAY, SEPTEMBER 7, 2011

REPORTED BY:

JANIS JENNINGS, CSR 3942, CLR, CCRR


PAGES 1 - 325

Veritext National Deposition & Litigation Services
866 299-5127

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

Page 2

```
1
2
3
4
5
6
7        VIDEOTAPED DEPOSITION OF DAVID RADTKE,
8    taken on behalf of the Plaintiff, at BINGHAM
9    McCUTCHEN, LLP, Three Embarcadero Center,
10   28th Floor, San Francisco, California,
11   commencing at 9:04 a m., Wednesday,
12   September 7, 2011, before Janis Jennings,
13   Certified Shorthand Reporter No. 3942, CLR,
14   CCRR.
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1             SAN FRANCISCO, CALIFORNIA;
2        WEDNESDAY, SEPTEMBER 7, 2011; 9:04 A.M.
3                      --o0o--
4             THE VIDEOGRAPHER:  Good morning.  We are
5    on the record, ladies and gentlemen, at 9:04 a.m.    09:04:29
6    on September 7th, 2011.  This is the videotaped
7    deposition of David Radtke.
8             My name is Benjamin Gerald, here with
9    our court reporter Janis Jennings.  We are here from
10   Veritext National Deposition & Litigation Services    09:04:52
11   at the request of counsel for plaintiff.
12             This deposition is being held at
13   Three Embarcadero Center in City of San Francisco,
14   California.
15             The caption of this case is Oracle,    09:05:10
16   USA, Incorporated, et al., versus Rimini Street,
17   Incorporated, and Seth Ravin.  The case number is
18   2:10-cv-00106-LRH-PAL.
19             Please note that audio and video recording
20   will take place unless all parties agree to go off    09:05:48
21   the record.  Microphones are sensitive and may pick
22   up whispers, private conversations and cellular
23   interference.
24             At this time will counsel and all present
25   please identify themselves for the record.    09:05:59
```

Page 3

```
1    APPEARANCES OF COUNSEL:
2
3    FOR THE PLAINTIFFS:
4        BINGHAM MCCUTCHEN LLP
5        BY:  JOHN POLITO, ESQ.
6           GEOFFREY M. HOWARD, ESQ.
7           ZACHARY HILL, ESQ.
8        Three Embarcadero Center
9        San Francisco, California  94111-4067
10       415.393.2314
11       john.polito@bingham.com
12       geoff howard@bingham.com
13       zachary hill@bingham.com
14
15   FOR THE DEFENDANTS:
16       SHOOK, HARDY & BACON LLP
17       By:  ROBERT RECKERS, ESQ.
18       JP Morgan Chase Towers
19       600 Travis Street, Suite 1600
20       Houston, Texas  77002
21       713.227.8008
22       rreckers@shb.com
23
24   ALSO PRESENT:
25       BENJAMIN GERALD, Videographer
```

Page 5

```
1             MR. POLITO:  John Polito for Oracle.
2             MR. HILL:  Zachary Hill for Oracle.
3             MR. HOWARD:  Geoff Howard for Oracle.
4             MR. RECKERS:  Rob Reckers for the
5    defendants.                              09:06:11
6             THE WITNESS:  David Radtke for Rimini
7    Street.
8             MR. RECKERS:  Good enough.
9             THE WITNESS:  Good enough?
10            THE VIDEOGRAPHER:  Thank you.         09:06:17
11   Would the reporter swear in the witness.
12
13            DAVID RADTKE,
14   The deponent herein, was sworn and
15   testified as follows:                    09:06:18
16
17            THE VIDEOGRAPHER:  Thank you.
18   Please proceed.
19
20            EXAMINATION                       09:06:33
21   BY MR. POLITO:
22     Q.  Good morning, Mr. Radtke.
23     A.  Good morning.
24     Q.  My name is John Polito.  We met just
25   before your deposition began.  I'm here representing  09:06:38
```

Pages 2 to 5

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

| | Page 6 |
|---|---|
| 1 | Oracle. |
| 2 | Have you had your deposition taken before, |
| 3 | Mr. Radtke? |
| 4 | A.  No, I have not. |
| 5 | Q.  I'm sure you've been ably prepared by        09:06:44 |
| 6 | counsel, but I do want to remind you of a few rules. |
| 7 | Even though we're here in a lovely conference room |
| 8 | in an informal setting, the oath that you swore has |
| 9 | the same force and effect as if you were present in |
| 10 | a court of law.                          09:07:00 |
| 11 | Do you understand that? |
| 12 | A.  Yes. |
| 13 | Q.  The court reporter is taking down |
| 14 | everything that you say and everything that I say. |
| 15 | The court reporter may not be able to take down      09:07:05 |
| 16 | head gestures so please respond verbally rather than |
| 17 | with -- rather than physically.  Also please say |
| 18 | "yes" or "no" rather than "uh-huh" or "huh-huh" |
| 19 | because those are very ambiguous on the record. |
| 20 | Okay?                              09:07:17 |
| 21 | A.  Okay. |
| 22 | Q.  If I ask a question that you do not |
| 23 | understand, please ask me for clarification; |
| 24 | otherwise I will assume that you've understood |
| 25 | my question.  Is that fair?              09:07:27 |

Page 6

| | Page 7 |
|---|---|
| 1 | A.  Yes. |
| 2 | Q.  And you'll have an opportunity to |
| 3 | review and comment upon the transcript after the |
| 4 | deposition.  Do you understand that? |
| 5 | A.  Yes.                          09:07:35 |
| 6 | Q.  But any changes that you make, anyone |
| 7 | can comment on those changes at trial.  Do you |
| 8 | understand? |
| 9 | A.  Yes. |
| 10 | Q.  Is there any reason that you can't give me  09:07:41 |
| 11 | your best testimony today? |
| 12 | A.  No. |
| 13 | Q.  Do you have any physical or mental |
| 14 | conditions that would interfere with your ability |
| 15 | to testify to the best of your ability today?      09:07:53 |
| 16 | A.  No, I don't.  I have a slight head cold, |
| 17 | but that's about it so... |
| 18 | Q.  I think that should be fine. |
| 19 | What did you do to prepare for your |
| 20 | deposition today, Mr. Radtke?              09:08:02 |
| 21 | A.  I met with our attorneys yesterday. |
| 22 | Q.  And by your attorneys -- |
| 23 | A.  Rob; yes. |
| 24 | Q.  Anyone else present at that? |
| 25 | A.  No.                          09:08:13 |

Page 7

| | Page 8 |
|---|---|
| 1 | Q.  Anyone else on the phone? |
| 2 | A.  No. |
| 3 | Q.  Did you discuss what you said at that |
| 4 | meeting with anyone else? |
| 5 | A.  No, I haven't.                    09:08:21 |
| 6 | Q.  How long did you meet yesterday? |
| 7 | A.  Approximately 6 and a half, 7 hours. |
| 8 | Q.  Is that the only preparation that you did |
| 9 | for your deposition today? |
| 10 | A.  Yes, it is.                      09:08:29 |
| 11 | Q.  Did you review any documents yesterday? |
| 12 | A.  Miscellaneous documents that Rob had |
| 13 | presented me with.  Yeah. |
| 14 | Q.  You reviewed a series of documents that |
| 15 | counsel presented to you?              09:08:44 |
| 16 | A.  Uh-huh.  Uh-huh. |
| 17 | Q.  Did any of those documents remind you of |
| 18 | something that you had forgotten? |
| 19 | A.  No, they didn't. |
| 20 | Q.  Generally speaking, what kind of documents  09:08:51 |
| 21 | were they? |
| 22 | A.  Oh, things like emails and instant |
| 23 | messengers -- instant messaging logs, and then |
| 24 | that's about it. |
| 25 | Q.  Any technical materials?          09:09:02 |

Page 8

| | Page 9 |
|---|---|
| 1 | A.  No, nothing like that. |
| 2 | Q.  Okay.  Did you look at the transcripts of |
| 3 | any other depositions in this matter? |
| 4 | A.  No, I haven't.  No. |
| 5 | Q.  Did you take any notes during your prep  09:09:12 |
| 6 | with -- |
| 7 | A.  No, I did not. |
| 8 | Q.  Have you looked at any of the written |
| 9 | documents in this case; the complaint or the |
| 10 | discovery responses?                  09:09:23 |
| 11 | A.  No, I have not. |
| 12 | Q.  Did you bring anything with you today |
| 13 | relating to your deposition? |
| 14 | A.  No. |
| 15 | DEPOSITION REPORTER:  We need to go off    09:09:32 |
| 16 | the record for a moment. |
| 17 | MR. POLITO:  Sure.  Let's go off the |
| 18 | record. |
| 19 | THE VIDEOGRAPHER:  The time is 9:09 a.m. |
| 20 | and we are off the record.              09:09:38 |
| 21 | (Off the record.) |
| 22 | THE VIDEOGRAPHER:  The time is 9:12 a.m. |
| 23 | and we are back on the record. |
| 24 | BY MR. POLITO: |
| 25 | Q.  Mr. Radtke, you're currently employed by  09:12:46 |

Page 9

Pages  6  to  9

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

```
1    Rimini Street?
2      A.   Yes.
3      Q.   And your title is Senior PeopleSoft
4    Support Developer?
5      A.   Actually, I've moved to another team.      09:12:53
6      Q.   Okay.
7      A.   It used to be Senior PeopleSoft Developer.
8
```

```
1
```

Page 10

Page 12

```
1
2      Q.   Did you know C# before you joined Rimini
3    Street?
4      A.   No, I did not.
5      Q.   Are you generally facile at programming      09:14:15
6    languages, though?
7      A.   Yes, I am.
8      Q.   Such that it was easy for you to pick that
9    up?
10     A.   Yes.  Yes, it is.               09:14:27
11
```

```
1
```

Page 11

Page 13

Pages 10 to 13

Veritext National Deposition & Litigation Services
866 299-5127

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

1

1   A.  I'm not aware of that so I wouldn't -- I
2   can't recall.
3       Q.  Okay.  But in 2002?
4       A.  Yeah, I left in 2002.
5       Q.  Okay.  So what version was the current   09:20:07
6   version of financials at that time?
7       A.  I think it was 8.1 financials or 8.4
8   financials.  Maybe it was 8.4.
9       Q.  Okay.  I'm not sure that there is an 8.1
10  so...                                          09:20:19
11      A.  Okay.  I can't -- that was a long time
12  ago.  But I think it was 8.4.
13      Q.  And at that time were you programming in
14  COBOL?
15      A.  No, I was not.                          09:20:27
16      Q.  Were you programming in SQR?
17      A.  No, I was not.
18      Q.  What were you -- were you writing any code
19  at that time?
20      Your previous technical job before Rimini  09:18:34      20      A.  PeopleCode and SQL would have been the two  09:20:33
21  Street was working at PeopleSoft or Oracle; is that              21  natural code languages I was using.
22  correct?                                                        22      Q.  So "PeopleCode" meaning the code that is
23      A.  That would have been a number -- technical              23  created using Application Designer?
24  job, yes, that is correct.                                      24      A.  In App Designer, yes, yes.
25      Q.  Okay.  And in between you were the founder  09:18:45    25      Q.  And that's part of PeopleTools?      09:20:48

Page 14                                                            Page 16

1   and president of a music school?                                1       A.  Yes, it is.
2       A.  Yes, that's correct.                                    2       Q.  And then when you say "SQL," are you
3       Q.  So when did you leave PeopleSoft or                     3   talking about SQL that is used as part of a Data
4   Oracle?                                                         4   Mover script?
5       A.  It would have been PeopleSoft at that   09:18:53        5       A.  No.  I'm referring to "SQL" in a generic   09:20:58
6   time, and that was approximately May of 2002.                   6   sense that it's used by multiple databases.  It's a
7       Q.  And what was your title at that time when               7   very common database language so at that time the
8   you left?                                                       8   PeopleSoft product would run on many database
9       A.  I believe it was a Senior Software                      9   platforms.
10  Developer.                                   09:19:10           10      Q.  Were you part of the PeopleTools team?   09:21:11
11      Q.  To whom did you report?                                11      A.  No, I was not.
12      A.  The manager's name was Vivek Salgar.                    12      Q.  Isn't it true that PeopleTools actually
13      Q.  And what were your responsibilities                    13  attempts to abstract away the differences between
14  generally at PeopleSoft?                                        14  databases?
15      A.  I was working on the financials   09:19:28             15      A.  Maybe at some level, but I'm not aware of   09:21:22
16  architecture team.  We were responsible for -- and              16  what the -- how that would actually occur.
17  this was strictly on the financials product line,               17      Q.  Is it generally the case that people would
18  which is like general ledger, accounts payable,                 18  take SQL fragments or SQL-like commands and put them
19  expenses.  So the architecture team was responsible             19  in a Data Mover script when they're working with
20  for streamlining and integrating those products.  09:19:46     20  PeopleSoft applications?                   09:21:36
21      Q.  Integrating them with what?                            21      A.  Yes, people do that, yes.
22      A.  With each other so they just work more                 22
23  efficiently together.
24      Q.  Was this before the merger of financials
25  and supply chain management?             09:19:57

Page 15                                                            Page 17

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

17 Q. Have you ever spoken with your wife about
18 development tasks that you have at Rimini Street?
19 A. No, I have not.
20 Q. Has she ever spoken with you about 09:24:54
21 development tasks she has at Oracle after you
22 started working at Rimini Street?
23 A. No, she hasn't.
24 Q. Did you speak with her about your
25 deposition today? 09:25:04

         Page 20

20 Q. And you have several college degrees? 09:22:54
21 A. I have one college degree in computer
22 science and then I have several certificates that
23 I've accomplished over the years just to keep my
24 skill set up-to-date.
25 Q. And the computer science degree is from 09:23:09

         Page 18

1 A. Well, she's aware that I'm here giving
2 one, but that's about the extent of it.
3 Q. You didn't reveal the contents of your
4 deposition?
5 A. I haven't revealed the contents -- she 09:25:11
6 knows why I'm here generally, yes.
7 Q. You testified earlier that you had a
8 general aptitude for programming languages.  Is that
9 accurate?
10 A. Yes, I would say so. 09:25:35
11 Q. Can you rate your personal level of
12 expertise with SQR, which includes SQC?
13 A. I'd say I'm fairly highly proficient in
14 it.
15 Q. Is there anyone at Rimini Street whom you 09:25:47
16 would say is more proficient than you?
17 A. Currently?  Maybe Tim Conley.  He's done
18 more development in SQR than I have more recently.
19 Q. But is it fair to say you're one of the
20 most apt developers speaking about SQR and SQC? 09:26:03
21 A. I would say that fairly one of the --
22 yeah, probably one of the most, yes.
23 Q. And what about PeopleCode?  What's your
24 level of expertise with PeopleCode?
25 A. I'd say it's fairly accomplished. 09:26:23

         Page 21

1 California State University Hayward?
2 A. No.  That's my Java programming
3 certificate.
4 Q. Oh, I'm sorry.  What school is it from?
5 A. That would be from University of 09:23:18
6 Washington.
7 Q. In Washington State?
8 A. In Washington State, yes.
9 Q. Not the St. Louis one.
10 A. Oh, okay.  Yeah. 09:23:27
11 Q. And where -- do you have certificates from
12 any other schools besides CSU Hayward?
13 A. Yes.  I have two from Berkeley; Cal State
14 Berkeley --
15 Q. Uh-huh. 09:23:34
16 A. -- one in object-oriented design and
17 another one in C++ programming.
18 Q. When did you secure your most recent
19 certificate?
20 A. That would have been June of 2011, so just 09:23:42
21 a few months ago.
22 Q. And that was the object-oriented
23 programming certificate?
24 A. That would have been Java programming,
25 yeah. 09:23:54

         Page 19

Pages 18 to 21

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

1    Q.   What is PeopleCode?
2    A.   It's a programming language that's used
3 in App Designer to develop logic generally for
4 online-type transactions within the PeopleSoft
5 system. So it will perform editing functions as    09:26:37
6 an example.
7    Q.   Is it like the event code that might be
8 triggered in Visual Basic, to use a rough analogy?
9    A.   I would say it could be similar to that;
10 similar in the sense that, yes, you could have an    09:26:54
11 event that occurs and it triggers some code to
12 process, yes.
13    Q.   Is it fair that PeopleCode also does other
14 things besides event handling?
15    A.   Well, yes, in the sense that it can be    09:27:06
16 processing in terms of looping and validation.
17    Q.   Have you kept up-to-date on changes in
18 PeopleCode after you left PeopleSoft?
19    A.   No, I have not.
20    Q.   Are you able to use, for instance,    09:27:21
21 Application Engine objects?
22    A.   I would have to really go back and refresh
23 my memory on that. I haven't used Application
24 Engine in a very long time.
25    Q.   Is it fair to say that you are one of the    09:27:32

Page 22

1 most expert PeopleCode developers at Rimini Street?
2    A.   Yes, I'd say that would be a fair
3 statement.
4    Q.   If I say the phrase "online objects,"
5 would that include PeopleCode?    09:27:52
6    A.   Yes, that would.
7    Q.   What else would that include?
8    A.   It could also include pages, records --
9 record structures actually, different than records
10 that would be in a database; fields. So it would be    09:28:05
11 things like that, PeopleCode as well, yeah.
12    Q.   Is that -- are those a set of user
13 interface components?
14    A.   I'm not exactly sure. You'd have to be
15 a little more specific. "User interface" could be    09:28:23
16 different...
17    Q.   Sure. Do they show up on a page?
18    A.   Okay. Yes. Yes, they do. Yes. The
19 pages in the fields, text, yes, they'll show up
20 on a page.    09:28:35
21    Q.   And you can also hang PeopleCode off of
22 those, to use a nontechnical term?
23    A.   Yes, you can. Yes.
24    Q.   How expert are you in the use of the COBOL
25 programming language?    09:28:49

Page 23

1    A.   I'm not a very strong COBOL programmer.
2    Q.   Well, which particular -- I'm sorry.
3    Did you use COBOL while you were at
4 PeopleSoft?
5    A.   No, I did not.    09:29:01
6    Q.   Have you used it while you're at Rimini
7 Street?
8    A.   I have merely used it more as a -- to
9 assist other developers, but I haven't actually done
10 any development in COBOL..    09:29:13
11    Q.   So in the sense of code review?
12    A.   Code review, very light code reviews,
13 nothing too technical with the COBOL. But I haven't
14 actually created any COBOL statements of my own
15 since I've been at Rimini Street.    09:29:27
16    Q.   Why did you leave PeopleSoft in 2002?
17    A.   I was just looking for something else to
18 do with my career. I had a very strong interest in
19 entrepreneurialism and wanting to do something on my
20 own. And I enjoyed music very much and just decided    09:29:50
21 that I was really interested in pursuing something
22 else. So the bottom line is those would be the
23 reasons why I was leaving PeopleSoft.
24    Q.   So why did you come back to programming
25 work?    09:30:06

Page 24

1    A.   Well, it was really more of a personal
2 situation. So after running a business for six
3 years, having two children during that time, working
4 very long hours in my own business, I came to a
5 realization that I wanted to spend more time with my    09:30:22
6 family and it was just much easier and simpler to
7 work for somebody else.
8    Q.   Did you seek reemployment at Oracle when
9 you decided to go back to development work?
10    A.   No, I did not.    09:30:37
11    Q.   How did you find out about Rimini Street?
12    A.   My wife actually worked with Susan
13 Tahtaras at PeopleSoft and so we -- Susan was
14 essentially a referral -- I was a referral to Rimini
15 Street through my wife via Susan.    09:30:53
16    Q.   To make sure I understand, did
17 Ms. Tahtaras suggest to your wife that you should
18 work at Rimini Street?
19    A.   No, I don't think she did.
20    Q.   Okay.    09:31:12
21    A.   No. No. This would have been my wife
22 referring me to Susan and then Rimini Street
23 reviewing my resume, calling me in for an interview.
24    Q.   Got it.
25    A.   Okay.    09:31:25

Page 25

Pages 22 to 25

Veritext National Deposition & Litigation Services
866 299-5127

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

1

1

Page 62

Page 64

1

1

Page 63

Page 65

Pages 62 to 65

Veritext National Deposition & Litigation Services
866 299-5127

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

1

1

Page 250

Page 252

1  Q.  Okay.  Would it be the case that if there
2

1

Page 251

Page 253

Veritext National Deposition & Litigation Services
866 299-5127

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

1

1

Page 262

Page 264

1

1

Page 263

Page 265

Pages 262 to 265

Veritext National Deposition & Litigation Services
866 299-5127

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

HIGHLY CONFIDENTIAL-- ATTORNEYS' EYES ONLY

| | |
|---|---|
| 1   status meeting? | 1 |
| 2     A.   Not specifically.  It would have been most | |
| 3   likely mentioned by Jim Benge. | |
| 4     Q.   Have you been personally directed to | |
| 5   change any of your development processes as a    17:32:34 | |
| 6   result of Oracle's lawsuit against Rimini Street? | |
| 7     A.   Not that I can recall. | |
| 8     Q.   Are you aware of whether any of Rimini | |
| 9   Street's development processes have been changed as | |
| 10   a result of Oracle's lawsuit filed against Rimini    17:32:45 | |
| 11   Street? | |
| 12     A.   I'm not aware of any changes as a result | |
| 13   of the lawsuit. | |
| 14     Q.   You began working at Rimini Street shortly | |
| 15   before   or sorry   about a year after Oracle    17:32:54 | |
| 16   filed its lawsuit against TomorrowNow, a separate | |
| 17   case. | |
| 18     A.   A few months.  Not quite a year, I | |
| 19   believe. | |
| 20     Q.   You started in May    March 2008.    17:33:12 | |
| 21     A.   Yes. | |
| 22     Q.   And the lawsuit was filed in March 2007. | |
| 23     A.   Okay. | |
| 24     Q.   So | |
| 25     A.   Somewhere   okay.    17:33:17 | |
| Page 310 | Page 312 |

| | |
|---|---|
| 1     Q.   did you ever participate in discussions | 1 |
| 2   at Rimini Street about Oracle's lawsuit against | |
| 3   TomorrowNow? | |
| 4     A.   No, I did not. | |
| 5     Q.   Do you know whether any of Rimini Street's   17:33:2 | |
| 6   development activity was modified as a result of | |
| 7   Oracle's lawsuit against TomorrowNow? | |
| 8     A.   I don't know. | |
| 9       MR. POLITO:  Let's mark as Exhibit 416 an | |
| 10 | 10       MR. POLITO:  Mr. Radtke, those are all the   17:36:19 |
| | 11   questions I have at this time. |
| | 12       THE WITNESS:  Okay. |
| | 13       MR. RECKERS:  All right.  We reserve his |
| | 14   questions. |
| | 15       THE VIDEOGRAPHER:  This marks the end of   17:36:25 |
| | 16   disk No. 5 of 5 and concludes today's deposition of |
| | 17   David Radtke.  The time is 5:36 p.m. and we are off |
| | 18   the record. |
| | 19      (Whereupon, the deposition concluded.) |
| | 20        --o0o-- |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |
| Page 311 | Page 313 |

Veritext National Deposition & Litigation Services
866 299-5127

Confidential and Highly Confidential Material Redacted Pursuant to Protective Order

Highly Confidential - Attorneys' Eyes Only

CERTIFICATE OF REPORTER

1

2

3          I, JANIS L. JENNINGS, a Certified

4   Shorthand Reporter of the State of California, do

5   hereby certify:

6          That the foregoing proceedings were taken

7   before me at the time and place herein set forth;

8   that any witnesses in the foregoing proceedings,

9   prior to testifying, were placed under oath; that a

10  verbatim record of the proceedings was made by me

11  using machine shorthand which was thereafter

12  transcribed under my direction; further, that the

13  foregoing is an accurate transcription thereof.

14         I further certify that I am neither

15  financially interested in the action nor a relative

16  or employee of any attorney of any of the parties.

17         IN WITNESS WHEREOF, I have this date

18  subscribed my name.

19

20  Dated:   September 14, 2011

21

22

23         _____

24         JANIS JENNINGS
           CSR NO. 3942, CLR, CRP

25

                                        Page 315

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**

ERRATA SHEET

WITNESS NAME:  David Radtke        Date: September 07, 2011

| PAGE | LINE | CORRECTION AND REASON |
|------|------|------------------------|
|      |      | No necessary corrections made. |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |

I, David Radtke, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

Date:  10/4/2011          _____
                                             Name

**Confidential and Highly Confidential Material Redacted Pursuant to Protective Order**