1  BOIES, SCHILLER & FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
2  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
3  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
4  rpocker@bsfllp.com

5  BOIES, SCHILLER & FLEXNER LLP
   STEVEN C. HOLTZMAN (*pro hac vice*)
6  FRED NORTON (*pro hac vice*)
   KIERAN P. RINGGENBERG (*pro hac vice*)
7  1999 Harrison Street, Suite 900
   Oakland, CA 94612
8  Telephone: (510) 874-1000
   Facsimile: (510) 874-1460
9  sholtzman@bsfllp.com
   fnorton@bsfllp.com
10 kringgenberg@bsfllp.com

BINGHAM McCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
BREE HANN (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com
bree.hann@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

13 Attorneys for Plaintiffs Oracle USA, Inc.,
   Oracle America, Inc. and Oracle International
14 Corp.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ORACLE USA, INC., a Colorado corporation;
ORACLE AMERICA, INC., a Delaware
corporation; and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

                    Plaintiffs,

            v.

RIMINI STREET, INC., a Nevada corporation;
SETH RAVIN, an individual,

                    Defendants.

Case No  2:10-cv-0106-LRH-PAL

**REPLY IN SUPPORT OF ORACLE'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

Date:          _____, 2012
Time:          _____.m.
Place:         Courtroom __
Judge:         Hon. Larry R. Hicks

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................... 1

II. THE COURT SHOULD GRANT ORACLE PARTIAL SUMMARY JUDGMENT ON ITS COPYRIGHT INFRINGEMENT CLAIM ................ 3

III. ORACLE'S EXPRESS LICENSES WITH ITS CUSTOMERS DO NOT EXCUSE RIMINI'S INFRINGEMENT ................................ 3

    A. City of Flint, Michigan ................................................................ 6

        1. City of Flint's License Extends Only to Copies Created from Installation Media Received from Oracle and Does Not Permit Cross-Use ................................................................ 6

        2. Copies Made Pursuant to City of Flint's License Must Be Used at City of Flint's Facilities for City of Flint's Internal Data Processing Operations ................................................................ 8

        3. Rimini's Remaining Arguments Concerning the City of Flint Lack Merit ................................................................ 9

            (i) The Derivative Work Right Granted in Certain Licenses Does Not Convey Any Right to Reproduction ......................... 9

            (ii) Nondisclosure Provisions Do Not Convey to Rimini Any Right to Copy or Modify Oracle's Software ................................ 10

            (iii) Mr. Hilliard's Declaration Is Irrelevant to Interpretation of City of Flint's License Because It Does Not Address Any Ambiguous Term in That License ................................ 11

            (iv) Evidence Concerning Oracle's Partners and Alleged Partners Is Irrelevant ................................................................ 12

    B. School District of Pittsburgh ................................................................ 12

    C. Giant Cement Holding, Inc ................................................................ 14

    D. Novell, Inc ................................................................ 15

IV. RIMINI HAS DEMONSTRATED NO GENUINE DISPUTE OF FACT AS TO ITS IMPLIED LICENSE AND CONSENT DEFENSES ................ 16

    A. The Customers' Express License Agreements Preclude An Implied License ................................................................ 17

    B. Rimini Fails to Present Any Evidence Oracle Created the Works for Rimini ................................................................ 18

    C. Rimini Fails to Present Any Evidence Oracle Knew Rimini Was Copying Its Works onto Rimini's Systems or Engaging in Cross-Use ................ 19

    D. Rimini's Conduct Is Outside the Scope of Any Implied License ................ 22

V.  CONCLUSION ................................................................ 23

i

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.,*
   239 F.3d 1004, 1026 (9th Cir. 2001)................................................................ 18, 20

*Appling v. State Farm Mut. Auto. Ins. Co.*
   340 F.3d 769 (9th Cir. 2003)................................................................................ 5

*Avtec Systems, Inc. v. Peiffer*
   21 F.3d 568 (4th Cir. 1994)................................................................................ 22

*Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.*
   742 F. Supp. 2d 1101 (C.D. Cal. 2010)...................................................... 18, 19, 20

*Berkla v. Corel Corp.*
   302 F.3d 909 (9th Cir. 2002)............................................................................. 17

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.,*
   971 F.2d 272, 278-79 (9th Cir. 1992) ................................................................. 11

*Camp Scandinavia AB v. Trulife, Inc.*
   No. 07-14925, 2009 WL 1383301 (E.D. Mich. May 15, 2009)................................. 18

*Effects Assocs. v. Cohen*
   908 F.2d 555 (9th Cir. 1990)......................................................................... 18, 19

*F.B.T. Productions, LLC v. Aftermath Records*
   621 F.3d 958 (9th Cir. 2010)............................................................................. 12

*Field v. Google, Inc.*
   412 F. Supp. 2d 1106 (D. Nev. 2006) ........................................................ 19, 20, 22

*MAI Sys. Corp. v. Peak Computer, Inc.*
   991 F.2d 511 (9th Cir. 1993)............................................................................. 10

*MDY Indus., LLC v. Blizzard Ent'm't, Inc.*
   629 F.3d 928 (9th Cir. 2011)......................................................................... 15, 16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
   518 F. Supp. 2d 1197 (C.D. Cal. 2007)......................................................... 19, 20

*Netbula, LLC v. Chordiant Software, Inc.*
   C08-00019 JW, 2009 WL 2044693 (N.D. Cal. July 9, 2009)............................. 19, 20

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*
   563 F.3d 777 (9th Cir. 2009)............................................................................ 4, 5

ii

TABLE OF AUTHORITIES
(continued)

Page

*Range Road Music, Inc. v. East Coast Foods, Inc.*
  668 F.3d 1148 (9th Cir. 2012)............................................................ 3

*Realnetworks, Inc. v. DVD Copy Control Ass'n*
  641 F. Supp. 2d 913 (N.D. Cal. 2009) ............................................... 5

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*
  425 F. Supp. 2d 756 (N.D. Tex. 2006)................................................ 18

*Ricci v. DeStefano*
  557 U.S. 577, 129 S. Ct. 2658 (2009) ................................................ 3

*S.O.S., Inc. v. Payday, Inc.*
  886 F. 2d 1081 (9th Cir. 1989)..................................................... 4, 18

*Schwartz v. Rent A Wreck*
  No. 10–2114, 2012 WL 759367 (4th Cir. Mar. 9, 2012) .................... 17

*Stewart v. Abend*
  495 U.S. 207 (1990).......................................................................... 9

*Teter v. Glass Onion, Inc.*
  723 F. Supp. 2d 1138 (W.D. Mo. 2010) ............................................ 22

*Walton v. U.S. Marshals Serv.*
  492 F.3d 998 (9th Cir. 2007)............................................................. 11

*Weinstein Co. v. Smokewood Ent'm't Group, LLC*
  664 F.Supp.2d 332 (S.D.N.Y. 2009)................................................. 18

**CALIFORNIA CASES**

*Dore v. Arnold Worldwide, Inc.*
  139 P.3d 56 (Cal. 2005) ................................................................... 4

*Threlkeld v. Ranger Ins. Co.*
  202 Cal. Rptr. 529 (Cal. App. 1984)................................................. 9

*Wolf v. Super. Ct.*
  114 Cal. App. 4th 1343, 8 Cal. Rptr. 3d 649 (Cal. App. 2004) .......... 5, 6

**OTHER STATE CASES**

*Schuck Corp. v. Sorkowitz*
  686 P.2d 1366 (Colo. App. 1984)..................................................... 17

iii

TABLE OF AUTHORITIES
(continued)

Page

*Boyer v. Karakehian*
  915 P.2d 1295 (Colo. 1996) ........................................................................................ 5

**FEDERAL STATUTES**

17 U.S.C. § 106 ............................................................................................................ 9

**CALIFORNIA STATUTES**

Cal. Civ. Code § 1636 ................................................................................................. 4

Cal. Civ. Code § 1641 ......................................................................................... 5, 9, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c)(1) ............................................................................................... 14

Fed. R. Civ. P. 56(a) ..................................................................................................... 4

REPLY IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

2    (collectively, "Oracle") submit this Reply In Support Of Oracle's Motion for Partial Summary

3    Judgment on Oracle's first claim for relief, and on Defendant Rimini Street Inc.'s ("Rimini's")

4    second, third, and sixth affirmative defenses.

5    **I.      INTRODUCTION**

6           Oracle moved for partial summary judgment on three categories of claims and defenses:

7           ***First***, Oracle established a *prima facie* case of copyright infringement for the conduct at

8    issue in this motion.  In its moving papers, Oracle showed that the PeopleSoft, J.D. Edwards and

9    Siebel software that Rimini maintains on its systems and uses to develop fixes for other

10   customers are, and make use of, copies of Oracle's protected expression embodied in the

11   copyright registrations for this software.  Oracle explained that the Rimini's practices at issue

12   reflect Rimini's larger practices as a business, with widespread copying and cross-use of

13   Oracle's copyrighted software.

14          Rimini does not disagree.  Rimini's opposition brief devotes not a single word to

15   opposing Oracle's *prima facie* case of copyright infringement.  Rimini's own statement of facts,

16   Dkt. 269, contains pages and pages of admissions establishing the elements of Oracle's *prima*

17   *facie* case – Oracle's ownership of the copyrights and Rimini's copying of protected expression

18   covered by the copyright registrations in question.  Because the parties agree that there is no

19   legal or factual dispute regarding Oracle's *prima facie* case of copyright infringement, the Court

20   should grant partial summary judgment on this claim.

21          ***Second***, Oracle moved for partial summary judgment on Rimini's express license

22   defense, showing that no express license authorizing the copying that forms the basis of Oracle's

23   *prima facie* case of infringement.  Here, although Rimini opposes the motion, both sides agree to

24   the relevant license agreements.  All that remains is the legal determination of whether Rimini's

25   undisputed conduct was unlicensed.

26          Rimini's arguments that the license agreements authorized Rimini's copying are

27   unfounded.  Rimini asserts that customers do not license the software that is delivered to them,

28   but instead have a more general license that entitles them to ████████████████████

1

1

2          ▮▮▮. This argument is meritless because the licenses at issue only authorize

3          ▮▮▮, as well as

4     irrelevant, in that Rimini does not even argue that its position reflects the mutual intent of the

5     contracting parties:  Oracle and Oracle's customers.  Rimini knows, in fact, that customers'

6     expectations are to the contrary, and for years has been ▮▮▮

7          ▮▮▮.

8          Rimini also distorts the license agreements at issue, asserting that limitations in each

9     license apply only to the clauses where they are found, while reading provisions that grant any

10    rights (and even non-disclosure provisions) as if each were an independent grant of permission to

11    reproduce, unbounded by the constraints in any other provisions (and regardless of whether the

12    provisions say anything about making copies).  Rimini's interpretation is unreasonable.

13         Rimini's reliance on extrinsic evidence is also meritless.  As Rimini concedes, parol

14    evidence cannot "contradict the express terms" of a license.  Rimini's Memo. and Points of

15    Authority in Opp'n to Oracle's Mot. for Partial Summ. J. ("opposition" or "Opp'n") at 7:20-8:2.

16    Here, Rimini's conduct is unauthorized under the express terms of the relevant license

17    agreements.  The Court should grant Oracle's motion as to Rimini's express license defense.

18         *Third*, Oracle moved for partial summary judgment on Rimini's implied license and

19    consent defenses.  These duplicative defenses fail as a matter of law because Oracle's license

20    agreements set out expressly the scope any applicable license.  They also fail because Rimini

21    offers no evidence that Oracle created any of the relevant works for Rimini (an essential

22    requirement under governing law), or that Oracle knew about the copying and cross-use at issue

23    in this motion (an essential requirement under the legal standards urged by both parties).

24    Undisputedly, Rimini told Oracle that Rimini's shipping address was a "secondary off-site

25    backup location" where each customer's installation media would be held safely in case the

26    customer lost its primary copy.  Shipment to a storage facility provides no basis to conclude that

27    Oracle granted Rimini permission to install the software or to use it to serve other customers.

28    The Court should grant Oracle's motion as to Rimini's implied license and consent defenses.

2

## II.   THE COURT SHOULD GRANT ORACLE PARTIAL SUMMARY JUDGMENT ON ITS COPYRIGHT INFRINGEMENT CLAIM

Oracle's *prima facie* case of copyright infringement is undisputed for the copying at issue in Oracle's motion. Rimini concedes that Oracle owns the registered works at issue, and that the local environments Rimini created contain a substantial amount of protected expression from Oracle's registered copyrights. *See* Rimini's Statement of Facts in Supp. of Opp'n, Dkt. 269, at 23 (SUF 59-63 are undisputed); *see also id.* at 9 (SUF 34, "Regardless of the method employed, Rimini copied Oracle's protected expression when building an environment," is undisputed). Both elements of *prima facie* infringement are therefore undisputed. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012). Oracle has "met [its] obligation to demonstrate that there is no genuine issue as to any material fact and that [it is] entitled to judgment as a matter of law," and is entitled to entry of partial summary judgment in its favor on its copyright infringement claim. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.   ORACLE'S EXPRESS LICENSES WITH ITS CUSTOMERS DO NOT EXCUSE RIMINI'S INFRINGEMENT

Oracle is entitled to summary judgment on Rimini's express license defense in light of "the record taken as a whole," because Rimini has failed to respond with admissible evidence showing that there is a genuine issue for trial, *Ricci*, 129 S. Ct. at 2677 (citation and quotation marks omitted), and because the undisputed facts entitle Oracle to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may be granted where the relevant provisions of a contract at issue are unambiguous, meaning that they are reasonably susceptible to only one interpretation. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."[1] Cal. Civ. Code § 1636. The contracts at issue in Oracle's motion were entered into between 1997 and

---

[1] The Parties agree that the Court should apply rules of construction from state law when constructing the licenses at issue "to the extent such rules do not interfere with federal copyright law or policy." *S.O.S., Inc. v. Payday, Inc.*, 886 F. 2d 1081, 1088 (9th Cir. 1989).

1    2002 by Oracle's predecessors (PeopleSoft, J.D. Edwards, and Siebel) and the eight customers

2    discussed in Oracle's motion. *See* O'Neill Decl. ¶¶ 3-10 & Plts.' Exs. 10-17.[2] This Court is

3    charged with inferring the mutual intent of Oracle's predecessors and Oracle's customers in

4    1997-2002 "from the written provisions of the contract based on their 'ordinary and popular

5    sense,' unless a 'technical sense or special meaning is given to them by their usage.'" *Northrop*

6    *Grumman Corp. v. Factory Mut. Ins. Co.*, 563 F.3d 777, 783 (9th Cir. 2009).

7         If there is a dispute as to the meaning of a contract term, the court must decide whether

8    that term is ambiguous, meaning "reasonably susceptible" to more than one proffered

9    interpretation. *Dore v. Arnold Worldwide, Inc.*, 139 P.3d 56, 61 (Cal. 2005). "***If it is not, the***

10   ***case is over.***" *Id.* (emphasis added).  In its opposition, Rimini did not dispute Oracle's

11   explanations of the ███████████████████████████████████

12   ████████████████ limitations, arguing instead that Oracle had ignored "key additional

13   rights granted" by other provisions of the licenses, which were not discussed in Oracle's motion.

14   Opp'n at 8:7-8, 17-20.  "The case is over" as to the provisions discussed in Oracle's motion:

15   offering no other reading, Rimini has conceded that they are unambiguous.

16        Parol evidence and, to the extent relevant, industry custom, have only a limited role: "to

17   assist in contract interpretation when the text of the [license] can ***reasonably*** be understood in

18   more than one way." *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 949

19   (N.D. Cal. 2009) (citation omitted; emphasis supplied).  This Court may "provisionally receive[]

20   (without actually admitting) all ***credible evidence concerning the parties' intentions***" to

21   determine whether particular terms are ambiguous, *Wolf v. Super. Ct.*, 8 Cal. Rptr. 3d 649, 656

22   (Cal. App. 2004), *as mod'd on denial of reh'g*.  If there is an ambiguity, parol evidence may be

23   admissible "to define the terms in the contract," *Appling v. State Farm Mut. Auto. Ins. Co.*, 340

24   F.3d 769, 777 (9th Cir. 2003), but not "to add to, detract from, or vary the terms of a written

25   contract." *Id.* (quoting *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d

26

27   [2] Plaintiffs' Exhibits 1-67 were filed in support of Oracle's motion (at Dkt. 242-244 and under

28   seal).  Defendants' Exhibits 1-35 were filed in support of Rimini's opposition (at Dkt. 261-262 and under seal).  Plaintiffs' Exhibits 68-78 will be filed in support of Oracle's reply.

1    641, 645 (Cal. 1968)).[3] And it cannot be used to "artificially create ambiguity where none

2    exists." *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 563 F.3d 777, 783 (9th Cir. 2009).

3           Rimini asserts remarkable interpretations of license provisions that define "███████,"

4    permit copying and modification of Oracle's software, implement a non-disclosure regime, and

5    allow for ██████████████████. These interpretations are unreasonable; they flatly

6    contradict the language of the agreements. The testimony, purported expert declaration, and

7    Oracle documentation (post-dating the contracts at issue by up to 14 years) attached to Rimini's

8    opposition do not help, because Rimini has not proposed an interpretation of words or phrases in

9    the license. Instead, Rimini questions the relationship of the license terms: whether copies

10    created under particular license provisions are subject to the limitations identified in Oracle's

11    motion, whether provisions granting a right to modify (somehow) grant a right to copy, and

12    whether non-disclosure provisions (somehow) grant a right to copy. California law prescribes

13    that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if

14    reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

15    Rimini's reductionist argument is contrary to law; its extrinsic evidence is irrelevant, because no

16    ambiguous term has been identified and because Rimini does not even claim to present evidence

17    of the intent of Oracle's predecessors and their customers. *See Wolf,* 8 Cal. Rptr. 3d at 655-56.

18        **A.    City of Flint, Michigan**

19             **1.    City of Flint's License Extends Only To Copies Created From Installation Media Received From Oracle And**

20                    **Does Not Permit Cross-Use**

21        In its moving papers, Oracle showed that Rimini has no license defense for the four local

22    copies of PeopleSoft software on Rimini's servers that are associated with the City of Flint as to

23    which ██████████████████████████████████████ (and

24    therefore Rimini cannot identify any relevant license that authorizes those copies). Mot. at 18:8-

25    19:7. In addition, Oracle showed that Rimini has no license defense for its use of the City of

26

---

27    [3] Colorado law, which applies only to Giant Cement's contract, applies the same rule. *See Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996) ("In the absence of allegations of fraud,

28    accident, or mistake in the formation of the contract, parol evidence may not be admitted to add to, subtract from, vary, contradict, change, or modify an unambiguous integrated contract.")

1    Flint environments to ██████████████████████████. *Id.* at 20:4-21:5.  Rimini

2    does not dispute the factual assertions that it lacks knowledge of ████████

3    ████████████████████████, or that it ████████████████████████████

4    ████████████████. Instead, Rimini makes the legal contention that when the City of Flint's license

5    authorizes the City of Flint to use "████████," that refers to ██████████

6    ██████████████████████████. Rimini extends that argument to

7    ████ (and implicitly, ████████████████████████████████████

8    ████████████), arguing that ██████████████████████

9    ██████████████████████████████████ Specifically, after

10   observing that ████████████████████████████████████████████

11   ████████████████████████████████████████████████████ Rimini

12   asserts (with no legal citation) that ████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████ Opp'n at 9:17-19.

16       Even if it were accurate, Rimini's construction of the license is beside the point. First,

17   City of Flint's license and Cowlitz County's license both define ████████ as software and

18   documentation "████████████████████." *See* O'Neill Decl. ¶ 3 & Plts.' Ex. 10

19   ("City of Flint License") at ¶¶ 1.1, 16; Reckers Decl. ¶ 19 & Defs.' Ex. 18 (Cowlitz County

20   License) at ¶¶ 1.1, 16.  Software delivered by City of Flint to Cowlitz County, or vice versa,

21   ████████████████████████████████████. Second, neither City of Flint's license, which allows

22   ████████████████████████████████████████████████████████

23   ████████████████████████████ nor Cowlitz County's license, which permits

24   ████████████████████████████████████████████████

25   ████████████████████████ permits such ████████████. *See id.*

26       Third, when a customer with a license to copy and use Oracle software reproduces Oracle

27   software, the resulting copy is still subject to the terms of that specific customer's license

28   agreement with Oracle.  E.g., Oracle's licenses at issue in this motion do permit customers to

6

1     ██████████████████████████████. *See, e.g.*, City of Flint License at ¶ 1.2(b)(ii).  However,

2     any use or copying of ████████████ would be subject to the customer's license.

3     Otherwise, any customer could simply grant to itself (or third parties) a license free of

4     restrictions just by using its "████" copy for ████████████ – an absurd result.

5     *Compare* Opp'n at 10:14-12:6 *with Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F. 2d 189,

6     194 (2d Cir. 1985) ("It is axiomatic that an assignee of a copyright can take no more than his

7     assignor has to give.") (citing *Bong v. Alfred S. Campbell Art Co.*, 214 U.S. 236, 245-47 (1909)).

8         Rimini knows that the license interpretation it advances (now that Rimini's actual

9     conduct has been revealed in discovery) is wrong.  At the outset of this case, rather than argue

10    that ██████████████████████████████████████████

11    ██████ Rimini told this Court (inaccurately) that "each of Rimini Street's clients has a unique

12    data 'silo' for storing clients' Oracle Software and Support Materials" and that "clients' Oracle

13    Software and Support Materials are not physically co-mingled together."  Rimini's Answer to

14    Second Am. Compl. and Counterclaims, Dkt. 153, ¶ 34.  And Rimini told its customers that █

15    ██████████████████████████████████████.  *See, e.g.*,

16    Polito Decl., ¶¶ 2-3 & Exs. 68 (Ravin Depo.) at 500:2-505:12, 69 (Oracle Depo. Ex. 950) at BC-

17    SR00151 (Defendant Seth Ravin informed a customer that its PeopleSoft license forbade

18    "███████████████████████████████████████

19    ████████"); *id.*, ¶ 4 & Ex. 70 (Strong Depo.) at 19:10-17 ("█████

20    ███████████████████████████████████████

21    ███████████████████████████████████████

22    ███████████████████████████████████████");

23    *id.*, ¶¶ 5-6 & Ex. 71 (Chiu Depo.) at 293:19-295:21, Ex. 72 (Oracle Depo. Ex. 276) at

24    RSI01043837 ("████████████████████████████████

25    ███████████████████████████████████████

26    ███████████████████████████████████████

27    ████████████████████"); *id.*, ¶¶ 7-8 & Ex. 73 (Ward Depo.) at

28    49:15-53:4, 53:6-11, 53:13-17, Ex. 74 (Oracle Depo. Ex. 833) at WENDYS-SUB00129 ("█████

7

---

REPLY IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  ████████████████████████████████████████████████

2  ██████████████████████████████████████████ ").  Rimini's

3  statements to the Court ████████████ that Rimini did not share and commingle software were

4  lies; Rimini told these lies because it knew that ████████████████████████████

5  ████████████████████.

### 2. Copies Made Pursuant to City of Flint's License Must Be Used at City of Flint's Facilities for City of Flint's Internal Data Processing Operations

8  Next, Oracle's moving papers showed that the City of Flint environments were

9  unlicensed for an additional reason, i.e., ████████████████████████████████.

10  Mot. at 19:9-20:2.  Rimini does not dispute that ¶ 1.1 of City of Flint's license limits the use of

11  City of Flint's licensed copies PeopleSoft software to ████████████████.  Rimini argues,

12  instead, that its local copies (i.e., copies installed on Rimini's systems) are permitted by ¶

13  1.2(b)(i), which limits the license to ████████████████████████████.  Opp'n

14  at 11:7-17.  In substance, Rimini asks the Court to conclude that ████████████████ in ¶

15  1.2(b)(i) supersedes ████████████████ in ¶ 1.1.  Rimini is wrong.  The law requires that

16  contractual interpretation "give effect to every part, if reasonably practicable, each clause helping

17  to interpret the other."  Cal. Civ. Code § 1641; *see also Boghos v. Certain Underwriters at*

18  *Lloyd's of London*, 115 P.3d 68, 72 (Cal. 2005).  Here, the two provisions are entirely consistent:

19  together, they limit ████████████████████████████████████████████.

20  Moreover, the terms of the agreement make clear that ¶ 1.2(b)(i) must be understood as

21  consistent with the limits in ¶ 1.1, because ¶ 1.2(b)(i) limits ████████████████████

22  ████████████████."  City of Flint License at ¶ 1.2(b)(i).  That provision

23  expressly incorporates the other limitations in the Agreement, including those in ¶ 1.1.  *See, e.g.,*

24  *Threlkeld v. Ranger Ins. Co.*, 202 Cal. Rptr. 529, 532 (Cal. App. 1984) (interpreting the phrase

25  "in accordance with" a set of regulations as incorporating those regulations by reference).

### 3. Rimini's Remaining Arguments Concerning the City of Flint Lack Merit

#### (i) The Derivative Work Right Granted In Certain Licenses Does Not Convey Any Right To Reproduction

8

1    Paragraph 1.2(c) of City of Flint's license, which permits the licensee to "███████

2    ████████████████████████," *see* Dkt. 269, Rimini's proposed undisputed fact

3    ("Rimini Fact") 15 (quoting City of Flint License at ¶ 1.2(c)), does not excuse the reproduction

4    that is the subject of Oracle's motion. The derivative work right is legally distinct from the

5    reproduction right, distribution right, and other rights granted under the Copyright Act. *See* 17

6    U.S.C. § 106. Oracle's motion, which addresses copies made by Rimini, concerns only the

7    reproduction right. Rimini argues: "████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████." Opp'n at 11:1-5 (citing

10   City of Flint License at ¶¶ 1.2(b)(i), 1.3). Rimini is incorrect.

11   A grant of the right to modify does not convey any grant of a right to reproduce Oracle

12   software. *See Stewart v. Abend*, 495 U.S. 207, 222-24 (1990) (holding that a licensed derivative

13   work could not be reproduced or distributed absent rights to reproduce and distribute the portions

14   of the pre-existing work that were incorporated into the derivative work). Second, the provisions

15   permitting a "█████████████████████" (which Rimini seeks to tie to ████████████)

16   allow only ████████████████████████████████," City of Flint

17   License at ¶ 1.3, or

18   ████████████," *id.* at ¶ 1.2(b)(i). These provisions do not authorize

19   ████████████████████████████████████████████████████

20   ████████. For these reasons, the right to modify is irrelevant to this motion.

21   (ii)    **Nondisclosure Provisions Do Not Convey To Rimini Any Right**
22           **To Copy or Modify Oracle's Software**

23   The nondisclosure provision Rimini identifies grants no copyright rights. Paragraph 14.2

     allows City of Flint to "████████████████████████████████████████

24   ████████████████████████████████████████████████," provided

25   ████████████████████████████████████████. *See* Rimini Fact 17 (citing City of Flint License

26   at ¶ 14.2). First of all, Rimini has not satisfied the conditions of this provision, so its access is

27   not authorized by the license. Specifically, while Rimini may have ████████████████

28

9

1    ████████████████████████████████████████████, it has produced no

2    evidence that it has "███████████████████████████████," a required

3    condition of ███████████████. *See id.* 17 & 18.  Second, the

4    ████ is subject to the express limitations found in ¶ 1.1.  To hold otherwise would be to render ¶

5    1.1 without effect.  It is a "fundamental rule of contract interpretation . . . that a contract should

6    be interpreted so as to give meaning to each of its provisions . . . ."  *Brinderson-Newberg Joint*

7    *Venture v. Pac. Erectors, Inc.*, as amended, 971 F.2d 272, 278-79 (9th Cir. 1992) (citations

8    omitted); *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as

9    to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

10        Rimini proposes that this nondisclosure provision, together with the grants of the right to

11    make copies and the right to modify, should be construed as permitting Rimini to make local

12    copies.  Opp'n at 12:3-6.  But Rimini does not explain how ███████████████████

13    ██████████████████████████████ transform into ████████████████████████

14    ████ The nondisclosure provisions in City of Flint's license at most permits ████████

15    ██████████████████████████████████████████████████████████.

16    It does not permit ████████████████████████████████████████████████

17    ████████████████████████████████████. Even if Rimini were able

18    pursuant to ¶ 14.2 to ██████████████████████████████████████████████

19    ████████████████████████████████, Rimini is still bound by the

20    customer's license terms.  *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517 (9th

21    Cir. 1993) (finding a third party working at licensee's facilities to have infringed by exceeding

22    the scope of licensee's license).

23        **(iii)   Mr. Hilliard's Declaration Is Irrelevant To Interpretation of**
         **City of Flint's License Because It Does Not Address Any**
24       **Ambiguous Term in That License**

25        Rimini also offers the declaration of its expert, Mr. Hilliard, as purported evidence of

26    industry custom.  As discussed in Oracle's objections to Rimini's evidence, Mr. Hilliard's

27    declaration is inadmissible for numerous reasons, including lack of an adequate "factual basis."

28    *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007) (affirming summary

                                                    10

judgment and exclusion of expert declaration). It is also not relevant to any license provision at

issue in Oracle's motion or Rimini's opposition. Mr. Hilliard contends that the "normal and

customary way that a professional software development organization (such as a consulting

organization) modifies and updates a customer's software is to create non-production copies of

the software on the consultant's computer systems . . . ." Hilliard Decl. ¶ 12. But the phrase

"non-production copy" does not appear in any license at issue, let alone as a get-out-of-jail-free

card, as Rimini suggests. *See* Reply SUF at 35-36 (disputing Rimini Fact 7). And the only

identified provision in City of Flint's license that relates to ███████████ discusses "████

███████████████████, not ████████████████████████████████████████.

*Compare* City of Flint License at ¶ 14.2 *with* Hilliard Decl. ¶ 12. Even if Mr. Hilliard's

declaration were industry practice evidence, such evidence is inadmissible and cannot support

denial of summary judgment in light of the unambiguous contract terms.[4] *See, e.g., F.B.T.*

*Productions, LLC v. Aftermath Records*, 621 F.3d 958, 966-7 (9th Cir. 2010) ("evidence

regarding industry custom" was immaterial in light of the "unambiguous[]" contract terms, and

therefore "the district court erred in denying [plaintiff] summary judgment"). Mr. Hilliard's

declaration is of no moment.

> **(iv)** **Evidence Concerning Oracle's Partners and Alleged Partners**
> **Is Irrelevant**

Finally, Rimini points out that ████████████████████████████████████████████

████████████████████████." Opp'n at 16:22-24. Rimini's point is unclear. Is

Rimini suggesting that because one of Oracle's thousands of partners ████████████, that

means Oracle agrees ████████████████████████████████████████████████

██? Such an argument suffers from several flaws. As a legal matter, Rimini does not

provide the Court with the partner agreement between CedarCrestone and Oracle, nor with any

license agreements implicated by CedarCrestone's conduct, so Rimini's argument makes no

---

[4] The "industry" of third-party support of Oracle's software (as opposed to one-time support of installation at customer sites) began after the contracts at issue were executed; neither Oracle's predecessors nor Oracle's customers could have had the "practices" of TomorrowNow, Rimini Street, or CedarCrestone in mind when the contracts at issue were drafted.

11

1   attempt to link conduct to contract terms.  As a factual matter, the conduct of one of many

2   thousands of partners is not evidence of industry custom.  In Oracle's view, CedarCrestone is

3   committing copyright infringement.  Oracle put CedarCrestone on notice several months ago,

4   and Oracle is now seeking relief from the Protective Order in this case so that it may use the

5   information learned from CedarCrestone in discovery to enforce its intellectual property rights

6   against CedarCrestone.  *See* Dkt. 275.  CedarCrestone's actions do not exonerate Rimini.

7        **B.      School District of Pittsburgh**

8        Rimini's arguments concerning the School District of Pittsburgh's environments, and

9   Rimini's cloning of them, simply repeat Rimini's arguments about the City of Flint and fail for

10  the same reasons.  Rimini argues that School District of Pittsburgh's license allows for

11  ███████████████████████████, and that

12  ███████████████████████████.

13  *See* Opp'n at 18:1-9.  But as with City of Flint, the School District of Pittsburgh's license

14  extends by definition (in ¶ 15) only to the ████████████████████████

15  ████████"; the right to modify (¶ 1.2) does not permit any reproduction; and the nondisclosure

16  provision (at ¶ 10.2) permits School District of Pittsburgh to "████████████████

17  ███████████████████████, but does not permit

18  ████████████.  *See* O'Neill Decl. ¶ 4 & Ex. 11 ("School District of Pittsburgh License")

19  at ¶ 15 ("████

20  ██████████████████████████████████████

21  ██████.");  Rimini Fact 29 (citing School District of Pittsburgh License at ¶ 1.2);  Rimini Fact

22  30 (citing School District of Pittsburgh License at ¶ 10.2).  These license provisions simply do

23  not excuse Rimini's infringing reproductions.

24        School District of Pittsburgh's license also includes a defined term, "████████," that

25  means "████████████████████████████████████

26  ██████████████████████████████████████

27  ████████████████████████████." SUF 88 (quoting School District of

28  Pittsburgh License at ¶ 15).  The license goes on to ████████████████

                                         12



1   ███████ , including the limitations that ██████████

2   ██████████████████████████████████

3   ██████ "[5] *Id.* (emphasis supplied).  Rimini's assertion that these restrictions do not

4   apply to School District of Pittsburgh's right under ¶ 1.2 to ████████████ contradicts

5   the plain language of the Designate restriction.  "████████" is clear and unambiguous.

6        On the issue of environment cloning, Rimini does not dispute that ████████

7   ███████████████████████████████████████████

8   ███████████████████████████████████ . *See*

9   Dkt. 269 at 27-28 (SUF 83-84 are undisputed).  Rimini claims that the █████████

10  ███████████████████████████ was permitted under

11  each customer's license.  But City of Des Moines's license, like City of Flint's license,

12  ███████████████████████████████████████

13  ████████████████ *See id.* at 28 (SUF 86 is undisputed).  Rimini does not

14  argue that City of Des Moines's license allows Rimini to ██████████████

15  ████████████ .  And City of Eugene and Dave and Buster's, as every customer,

16  are licensed only to ██████████ .  See Dkt. 239, O'Neill Decl. ¶ 6 & Dkt.

17  248, Ex. 13 (City of Eugene's license) at ¶ 16 (defining "████████" in terms of software

18  ██████████████████████████████████████

19  █████████ O'Neill Decl. ¶ 8 & Dkt. 248, Ex. 15 (Dave and Buster's license) at ¶ 16

20  (defining "███████" in terms of █████████████████ ).  Rimini's

21  assertion that ██████████ is permitted under all four customers' licenses is simply untrue – it is

22  not permitted under any of the licenses.

23  **C.   Giant Cement Holding, Inc.**

24        For purposes of this motion, the parties' dispute is narrow as to issues relevant to Giant

25  Cement.  Rimini agrees that Giant Cement's license does not permit Rimini to ██████████

26  ███████████████████ *See* Dkt. 269 at 34 (SUF 97 is undisputed).

27  ──────────────

28  [5] The license for City of Eugene includes these same restrictions on Designates.  *See* O'Neill
    Decl. ¶ 6 & Dkt. 248, Ex. 13 (City of Eugene's license) at ¶ 16.

REPLY IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Rimini does not deny that it has J█████████████████████████. *See* Polito Decl., ¶ 10

2   & Ex. 76 (Rimini's Resp. to RFA 23); Hann Decl., ¶ 11 & Ex. 26 (Ex. 1B-2 to Rimini's Third

3   Suppl. Resps. to Interrogs.20-22).  Instead, Rimini shifts focus to what Rimini *does* with the

4   installation of the software on its systems, arguing that Rimini "typically" does not ████████

5   ██████████████████████████████████████.  Opp'n at 23.  Rimini relies upon

6   Mr. Hilliard, arguing that source code access is not *required* when installing or copying JD

7   Edwards software. *See id.* at 33 (citing Hilliard Decl. at ¶ 7 in disputing SUF 95).

8         But Oracle's motion contends that Rimini engaged in copyright infringement when it

9   ██████████████████████████████████, which Giant Cement's

10  license plainly did not authorize given that the license does not even permit ████████

11  ████████████.  Rimini's response, which focuses on what Rimini *does* with

12  ██████████████████████, is irrelevant and non-responsive to Oracle's

13  argument.  The claimed offense is not that █████████████████████████

14  ████████████████.  The claimed offense is that ████████████

15  ████████████████████.  This is also why Rimini's reliance on

16  *MDY Indus., LLC v. Blizzard Ent'm't, Inc.*, 629 F.3d 928 (9th Cir. 2011), is misplaced.  Oracle is

17  not contending in this motion that Rimini breached the license because it ██████████████

18  ████████████.  Instead, Oracle has shown that Rimini's ████████████████

19  ████████████████████ was unlicensed.

20        Rimini also observes that the license allows Giant Cement to make an "████" copy of

21  the software, but Rimini fails to mention that ████████████ "█

22  ████," which as described above, ████████████████████████

23  ████████████████████.  *See* Dkt. 269 at 33 (conceding in response to

24  SUF 95 that "████████████████████████████████████████

25  ████████████████████."").  Rimini also cites the non-disclosure provision,

26  which ██████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████  Rimini Fact 43.  This provision on its face governs disclosure

14

1   and says nothing about conferring a right to ███████████████████. Further, the plain

2   language of the non-disclosure provision provides that the disclosure must be consistent with

3   Giant Cement's "██████████████████," which include █████████

4   ████████████████████████. *See id.*; Dkt. 269 at 34 (SUF 97 is undisputed).

5       **D.    Novell, Inc.**

6       Again, the parties' dispute is narrow as to issues relevant to Rimini's local copy of

7   Novell's Siebel software. Rimini notes that Novell is permitted to make ████████

8   ████████████████████. *See* Rimini Fact 45. Novell also is permitted under

9   ¶ 2.1(viii) of its license agreement to ████████████

10  ████████████████████████████████████████

11  ████████████.[6] *Id.* These grants and all other grants under ¶ 2.1 must be exercised "

12  ████████████████████████." *See* Dkt. 269 at 34-35 (Rimini

13  concedes that the contract language quoted in SUF 101 is accurate).

14      Rimini asserts that, when read in conjunction with the provision allowing Novell to ███

15  ████████████████████████, that "████████████

16  ████████████████████████████████████████

17  ████████████." Opp'n at 25:25-27. Rimini is wrong. The entirety of the grants

18  in ¶ 2.1 are expressly ████████████████████████ O'Neill Decl. ¶

19  10 & Ex. 17 at ¶ 2.1. In the agreement, the term "███████(s)" is defined to mean "

20  ████████████████████████████████████████

21    *Id.* at ¶ 1.12. "██████████(s)" is defined to mean "█

22  ████████████" *Id.* at ¶ 1.14. "█████████████

23  ████████████████████." *Id.* at ¶ 1.20. As discussed in

24  Oracle's motion, the terms "████████████████████" are defined to include

25  only ████████████████████████████. Mot. at 26:10-20. All

26  of the license grants in ¶ 2.1 are subject to that limitation. Rimini's request that the Court ignore

27  _____

28  [6] Rimini offers no evidence that it is a "████████████," rendering ¶ 2.1(viii) irrelevant.

REPLY IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   clearly defined terms when interpreting Novell's contract is unsupportable.

2   **IV.**   **RIMINI HAS DEMONSTRATED NO GENUINE DISPUTE OF**
        **FACT AS TO ITS IMPLIED LICENSE AND CONSENT**
3        **DEFENSES**

4       Rimini effectively concedes, by not arguing to the contrary, that its "implied license" and

5   "consent" defenses are duplicative and governed by a single legal standard. (Compare Mot. at

6   27 & n.6 with Opp. at 26.) These defenses fail for four independent reasons.

7       **A.**     **The Customers' Express License Agreements Preclude An**
           **Implied License**
8

9       Rimini argues that, despite written agreements between Oracle and Rimini's customers

10   that grant licenses expressly limited in scope, a license of different (and greater) scope may be

11   implied unless there is an expressly "contrary" term in the written license. Opp'n at 26-27. That

12   is wrong. "Where an express contract and an asserted implied contract co-exist *and relate to the*

13   *same subject matter*, there can be no implied contract between the parties because the provisions

14   of the express contract supersede those of the implied contract." *Schuck Corp. v. Sorkowitz*, 686

15   P.2d 1366, 1368 (Colo. App. 1984) (emphasis added); *accord Berkla v. Corel Corp.*, 302 F.3d

16   909, 918 (9th Cir. 2002) ("There cannot be a valid, express contract and an implied contract,

17   each embracing the same subject matter, existing at the same time." (quoting *Wal-Noon Corp. v.*

18   *Hill,* 45 Cal. App. 3d 605, 613 (1975)). In *Schuck*, cited in Defendants' opposition, the express

19   contract was "substantially different from" the implied contract, and did not supersede it. 686

20   P.2d at 1368. In *Schwartz v. Rent A Wreck*, No. 10–2114, slip op'n, 2012 WL 759367 (4th Cir.

21   Mar. 9, 2012), the other case Rimini cites on this point, the court held that implied and express

22   agreements could co-exist where the terms of the implied contract were "not at variance with the

23   terms of any preexisting contract between the parties." *Id.* at *8.

24       Here, by contrast, the written agreements set out the scope of the licenses Oracle has

25   granted to Rimini's customers, which Rimini contends expressly authorize its conduct. *E.g.*,

26   Opp'n at 11 (asserting that agreement "████████████████████████████████

27   ███████████████████████████████████████████"). The scope of every such

28   license is expressly limited in a variety of respects, including – as shown above – to ███████

1    ███████████████████████████████████. Accordingly, any implied

2    license that granted a license with a broader scope, including an implied license that permitted

3    ██████████████████████, would be both on the same "subject matter" and

4    contrary to the express terms of the written agreements, and therefore fail as a matter of law.

5    *See, e.g., Camp Scandinavia AB v. Trulife, Inc.*, No. 07-14925, 2009 WL 1383301, *2 (E.D.

6    Mich. May 15, 2009) ("[A] license may not be implied beyond the scope of an express license");

7    *see also, e.g., S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) ("[C]opyright

8    licenses are assumed to prohibit any use not authorized").

9    **B.    Rimini Fails to Present Any Evidence Oracle Created the
                  Works for Rimini**

10   Rimini fails to present any evidence that Oracle created any of the works at issue for

11   Rimini, which is an essential requirement for an implied license defense under *Effects Assocs. v.*

12   *Cohen*, 908 F.2d 555 (9th Cir. 1990). Instead, Rimini asserts an implied license defense may

13   prevail without this showing. Opp'n at 27-28. Rimini is wrong.

14   In *A&M Records, Inc. v. Napster, Inc.*, the Ninth Circuit rejected an implied license

15   defense to a copyright claim, explaining that "Courts have found implied licenses only in

16   'narrow' circumstances where one party 'created a work at [the other's] request and handed it

17   over, intending that [the other] copy and distribute it.'" 239 F.3d 1004, 1026 (9th Cir. 2001)

18   (alterations in original) (citing *Effects Assocs.*, 908 F.2d at 558). Following *Effects Associates*

19   and *Napster*, numerous courts have rejected implied license defenses to copyright infringement

20   claims on the same basis. *See, e.g., Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.*, 742 F.

21   Supp. 2d 1101, 1113 (C.D. Cal. 2010) ("[I]mplied non-exclusive licenses exist only in narrow

22   circumstances where one party has expressly created a work at the other's request and handed it

23   over, intending for the other to copy and distribute it."); *Recursion Software, Inc. v. Interactive*

24   *Intelligence, Inc.*, 425 F. Supp. 2d 756, 773 (N.D. Tex. 2006) (similar).

25   In arguing for a different legal standard, Rimini relies on *Field v. Google, Inc.*, 412 F.

26   Supp. 2d 1106 (D. Nev. 2006) and *Netbula, LLC v. Chordiant Software, Inc.*, C08-00019 JW,

27   2009 WL 2044693 (N.D. Cal. July 9, 2009). Neither case, however, considers *Napster* and

28

17

1    neither case faithfully applies *Effects Associates*.  Federal copyright law requires that implied

2    license be recognized only in narrow circumstances, *Metro-Goldwyn-Mayer Studios, Inc. v.*

3    *Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007), because "implying non-exclusive

4    licenses beyond the bounds of *Effects* 'would undermine copyright owners' statutory rights.'"

5    *Bangkok Broadcasting*, 742 F. Supp. 2d at 1111-12.

6        Because Rimini fails to make any effort to show a genuine dispute of fact as to whether

7    Oracle created any of the works for Rimini, summary judgment should be granted.

8        **C.**    **Rimini Fails To Present Any Evidence Oracle Knew Rimini**
                **Was Copying Its Works Onto Rimini's Systems Or Engaging**

9                    **In Cross-Use**

10       Even were the Court to adopt the erroneous legal standard in *Field*, Rimini still fails to

11   show a genuine dispute of material fact.  In *Field*, the plaintiff was a lawyer who put material on

12   a website, knowing Google would copy the work, and failed to use instructions he knew would

13   have stopped Google from copying.  Drawing from out-of-circuit district court precedent, the

14   court found that "with knowledge of how Google would use the copyrighted works [plaintiff]

15   placed on [his website], and with knowledge that he could prevent such use, [plaintiff] made a

16   conscious decision to permit it."  *Field*, 412 F. Supp. 2d at 1116.

17       In this case, by contrast, the only evidence Rimini offers about Oracle's knowledge of

18   Rimini's operations is evidence that ███████████████████████████████████████

19   ███████████████████████████████████ Dkt. 269 at 49-50 (Rimini Fact 48.)  Unlike

20   *Field*, Rimini presents no evidence Oracle knew ██████████████████████████████"

21   nor that Oracle knew ████████████████████████████████████████████████████

22   *Field*, 412 F. Supp. 2d at 1116.  The uses of the software at issue in this motion are specific

23   ████████████████████████████████████████████████████████████████████████

24   ████████████████.  Rimini does not claim that Oracle knew Rimini would do either.

25   Oracle cannot have "made a conscious decision to permit" conduct of which it was unaware.[7]

26   _____

27   [7] Citing *Netbula*, 2009 WL 2044693, Rimini argues that an implied license is a question of fact
    for the jury.  Opp'n at 30.  But the *defendant*, which had the burden of proof, moved for
    summary judgment on implied license in *Netbula*.  Here, Rimini has not adduced evidence to

28       support its implied license and consent defenses.  Courts routinely grant summary judgment in

                                   18

1    Lacking any evidence that Oracle knew of Rimini's ███████████, Rimini

2  asks the Court to infer Oracle's purported knowledge and permission from the fact that Rimini

3  █████████████. That is wrong for two reasons. <u>First</u>, Rimini concedes that the

4  shipping requests submitted to Oracle characterized Rimini's mailing address as an "offsite

5  backup" location. Dkt. 269 at 3 (SUF 8-9 are undisputed) There is no evidence in the record

6  that such storage would require any copying; let alone that Oracle knew Rimini was going to do

7  something entirely different: ███████████████████. The best Rimini can do is

8  to argue that the software it received was ████████████████████████

9  ██████ Dkt. 269 at 5 (disputing SUF 14). But both the testimony Rimini cites, and Rimini's

10  communications with customers, admit that Rimini ███████████████████

11  ███████████████████████████. *Id.* There is a reason Rimini

12  cites no evidence it ever told Oracle the truth about ██████████████: it didn't.

13    <u>Second</u>, Rimini's suggestion that Oracle knew that ████████████████

14  ████████████████████ Opp'n at 28, is entirely unsupported.

15  Rimini cites Oracle documents advising that, in some circumstances, it is good practice for a

16  *customer* to make certain copies of Oracle software on *that customer's* systems, but that

17  evidence provides no basis to conclude that Oracle knew *Rimini* would ██████████

18  ███████ and ████████████████████ in contravention of the customers'

19  licenses. Likewise, evidence of █████████████████████████████

20  █████████████████ is no basis to conclude that Oracle knew what *Rimini*,

21  who has no license with Oracle, would do to serve customers. *See* Dkt. 269 at 13-14 (admitting

22  that Rimini has no express license with Oracle).

23    Mr. Hilliard asserts, with no factual support, that the "normal and customary way" for a

24  "consultant" to provide software support is to copy software "on the consultant's computer

25  system." Hilliard Decl. ¶ 12. But "in the context of a motion for summary judgment, an expert

26  _____

27  that circumstance. *See, e.g.*, *Napster*, 239 F.3d at 1026 (upholding grant of summary judgment
on implied license defense); *Grokster*, 518 F. Supp. 2d at 1225-26 (granting summary judgment

28  on implied license defense); *Bangkok Broad.*, 742 F. Supp. 2d at 1113 (same).

19

1  must back up his opinion with specific facts" to be admissible. *Guidroz-Brault v. Mo. Pac. R.*

2  *Co.*, 254 F.3d 825, 831 (9th Cir. 2001). And, contrary to Rimini's argument, Mr. Hilliard has

3  opined that ███████

4  ████████████████████████████████████████████████ Polito Decl. ¶ 11 & Ex.

5  77 (Hilliard Report) at 57-59. Mr. Hilliard's declaration provides no support to Rimini here.

6      In sum, Rimini presents no evidence that Oracle knew Rimini would ████████

7  ████████████████ or that Rimini would █████████████████████. Even

8  under *Field*, Rimini has shown no genuine dispute of material fact as to an implied license.

9      **D.    Rimini's Conduct Is Outside the Scope Of Any Implied License**

10      Rimini asserts that Oracle's conduct gives rise to an implied license to "████

11  ████████████████████████████████████████████████████

12  ████████████." Opp'n at 29. Even assuming for argument's sake that Rimini showed a

13  genuine dispute as to the existence of an implied license, Rimini's assertion about the scope of

14  any such license is wrong in at least two respects.

15      First, any implied licenses would have to be limited to the specific customers for which

16  Rimini has identified ████████████████. *See* Dkt. 269 at 5 (discussing SUF 14); Opp'n at 29

17  (referring to "████████████████████████████████"). E.g., Oracle's

18  Interrogatory Responses are the only evidence of ████████ that Rimini identified, Reckers Decl.

19  ¶ 16 & Ex. 15, and those responses do not show ████████████████. Thus,

20  there could be no implied license for the City of Flint environments at issue in this motion.

21      Second, Rimini admits that Oracle stopped shipping software to Rimini ████████

22  ████. Dkt. 269 at 3-4 (SUF 11 is undisputed) An "implied license is necessarily nonexclusive

23  and revocable absent consideration." *Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568, 574 n.12 (4th

24  Cir. 1994); *see also Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1150 (W.D. Mo. 2010).

25  Any implied license would have been revoked ████████████.

26  **V.    CONCLUSION**

27      For the foregoing reasons, the Court should grant Oracle's motion for partial summary

28  judgment on its first claim for relief and Rimini's second, third, and sixth affirmative defenses.



20

1

DATED:  May 14, 2012                    BINGHAM MCCUTCHEN LLP

2

3

4
                                        By:_____/s/ Geoffrey M. Howard_____
5                                              Geoffrey M. Howard
                                        Attorneys for Plaintiffs Oracle USA, Inc., Oracle
6                                        America, Inc. and Oracle International Corp.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT