1    BOIES, SCHILLER & FLEXNER LLP
     RICHARD J. POCKER (NV Bar No. 3568)
2    300 South Fourth Street, Suite 800
     Las Vegas, NV 89101
3    Telephone: (702) 382-7300
     Facsimile: (702) 382-2755
4    rpocker@bsfllp.com

5    BOIES, SCHILLER & FLEXNER LLP
     STEVEN C. HOLTZMAN (*pro hac vice*)
6    FRED NORTON (*pro hac vice*)
     KIERAN P. RINGGENBERG (*pro hac vice*)
7    1999 Harrison Street, Suite 900
     Oakland, CA 94612
8    Telephone: (510) 874-1000
     Facsimile: (510) 874-1460
9    sholtzman@bsfllp.com
     fnorton@bsfllp.com
10   kringgenberg@bsfllp.com

11   Attorneys for Plaintiffs Oracle USA, Inc.,
     Oracle America, Inc., and Oracle International
12   Corp.

     BINGHAM MCCUTCHEN LLP
     GEOFFREY M. HOWARD (*pro hac vice*)
     THOMAS S. HIXSON (*pro hac vice*)
     KRISTEN A. PALUMBO (*pro hac vice*)
     Three Embarcadero Center
     San Francisco, CA  94111-4067
     Telephone:  415.393.2000
     Facsimile:  415.393.2286
     geoff.howard@bingham.com
     thomas.hixson@bingham.com
     kristen.palumbo@bingham.com

     DORIAN DALEY (*pro hac vice*)
     DEBORAH K. MILLER (*pro hac vice*)
     JAMES C. MAROULIS (*pro hac vice*)
     ORACLE CORPORATION
     500 Oracle Parkway
     M/S 5op7
     Redwood City, CA 94070
     Telephone:  650.506.4846
     Facsimile:  650.506.7114
     dorian.daley@oracle.com
     deborah.miller@oracle.com
     jim.maroulis@oracle.com

13

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

16

| | |
|---|---|
| 17  ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>19       Plaintiffs,<br>20   v.<br><br>21  RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>22       Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**OBJECTIONS PURSUANT TO FED. R. CIV. P. 56(c)(2) TO  EVIDENCE SUBMITTED IN SUPPORT  OF DEFENDANTS' OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

24

25

26

27

28

1                                           **INTRODUCTION**

2         Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

3   (collectively, "Oracle") hereby submit objections to the following materials submitted with

4   Defendants' Opposition to Oracle's Motion for Partial Summary Judgment ("Opp'n"): (1)

5   Declaration of Brooks L. Hilliard in Supp. of Opp'n ("Hilliard Decl."), filed in redacted form at

6   Dkt. 264 and submitted under seal in unredacted form, and to Exhibits 31-35 to the Hilliard

7   Decl., filed at Dkt. 262; and, (2) Exhibits 1-15, 17, and 19-30 , filed publicly at Dkt. 261-262 or

8   submitted under seal, to the Declaration of Robert Reckers in Supp. of Opp'n, Dkt. 260.

9   Oracle's objections are based on the seven grounds listed below.

10   I.      **LEGAL STANDARD FOR OBJECTIONS**

11         A.      **Relevance (Including Inadmissible Parol Evidence)**

12         To defeat summary judgment, Defendants Rimini Street Inc. and Seth Ravin (together,

13   "Rimini") must show a genuine dispute as to a material issue.  Evidence that does not go to a

14   material dispute is not relevant to deciding the motion. *See Anderson v. Liberty Lobby, Inc.*, 477

15   U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under

16   the governing law will properly preclude the entry of summary judgment. Factual disputes that

17   are irrelevant or unnecessary will not be counted.")

18         The parol evidence rule is a substantive rule of law that excludes legally irrelevant

19   evidence contradicting the terms of an unambiguous written agreement.  Evidence offered to

20   prove the meaning of the license agreements subject to the motion for summary judgment are

21   inadmissible parol evidence because the text of the agreements are not reasonably susceptible to

22   the interpretation urged by Rimini. *See U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d

23   929, 939 (9th Cir. 2002) (California law); *see also Magnetic Copy Services, Inc. v. Seismic*

24   *Specialists, Inc.*, 805 P.2d 1161, 1164 (Colo.Ct.App.1990) (Colorado law).   The numerous

25   assertions of "industry practice" or "custom" in the Hilliard Decl. are inadmissible to vary the

26   unambiguous terms of the license agreements. For example, in *F.B.T. Productions, LLC v.*

27   *Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), the court interpreted contractual language with

28   respect to copyright licenses and held that "evidence regarding industry custom" was immaterial

1

1   in light of the "unambiguous[]" contract terms, and therefore "the district court erred in denying

2   [plaintiff] summary judgment." *Id.* at 967; *see also Supervalu, Inc. v. Wexford Underwriting*

3   *Managers, Inc.*, 175 Cal. App. 4th 64, 74-75 (2009) (rejecting declarations from "industry

4   insiders" which "suggest an industry definition" of a contract term "that is antithetical to the

5   contractual language"). Oracle objects to all of Rimini's evidence submitted in opposition to

6   summary judgment to the extent it is offered to vary the meaning the unambiguous terms of the

7   license agreements.

8       **B.    Lack of Personal Knowledge**

9       A declaration used to oppose summary judgment "must be made on personal knowledge,

10  set out facts that would be admissible in evidence, and show that the affiant or declarant is

11  competent to testify on the matters stated." Fed. R. Evid. 56(c)(4); *see also* Fed. R. Evid. 602

12  ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding

13  that the witness has personal knowledge of the matter. Evidence to prove personal knowledge

14  may consist of the witness's own testimony."); *Comite de Jornaleros de Redondo Beach v. City*

15  *of Redondo Beach*, 657 F.3d 936, 949 n.9 (9th Cir. 2011) (affirming exclusion because declarant

16  "failed to establish his personal knowledge of [the] fact" and explaining "Rule 56 explicitly

17  requires that summary judgment affidavits 'be made with personal knowledge'"); *Intermountain*

18  *Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 998 (9th Cir. 2011)

19  ("Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are

20  insufficient [to defeat summary judgment].") (alterations in original) (quoting *Casey v. Lewis*, 4

21  F.3d 1516, 1527 (9th Cir. 1993)).

22      **C.    Improper Expert Opinion**

23      Mr. Hilliard is offered by Rimini as an expert witness. Expert opinion is admissible only

24  if its proponent shows that "(1) the testimony is based upon sufficient facts or data, (2) the

25  testimony is the product of reliable principles and methods, and (3) the witness has applied the

26  principles and methods reliably to the facts of the case.." Fed. R. Evid. 702; *accord Samuels v.*

27  *Holland American Line-USA Inc.*, 656 F.3d 948, 952-53 (9th Cir. 2011) (affirming grant of

28  summary judgment and exclusion of expert declarations where requirements were not met).

2

1     Mr. Hilliard has submitted an expert report addressing a number of issues separate from

2 those presented in his declaration.  Oracle anticipates that it will later file a motion seeking to

3 exclude Mr. Hilliard's testimony from trial in whole or part, including for failure to meet the

4 requirements of Fed. R. Evid 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

5 (1993).   For present purposes, however, these objections focus on the issues material to Oracle's

6 pending motion for summary judgment and the absence in Mr. Hilliard's declaration to offer any

7 admissible evidence that would show a genuine dispute of material fact.[1]

8     On summary judgment, an expert declaration must identify a "factual basis" for the

9 opinion.  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007) (affirming summary

10 judgment and exclusion); *see also Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 831

11 (9th Cir. 2001) ("in the context of a motion for summary judgment, an expert must back up his

12 opinion with specific facts"); Fed. R. Civ. P. 56(c)(4).  It is not enough to provide a laundry list

13 of experience or material considered and then separately offer a list of conclusions.  If the

14 declaration "does not link" purported basis to "the conclusions he reached," then it is not

15 sufficient to defeat summary judgment.  *Gangstee v. County of Sacramento*, No. S-10-1004,

16 2012 WL 112650, at *2 n.6 (E.D. Cal. Jan. 12, 2012).  Likewise, mere "conclusory assertions"

17 ARE "insufficient to avoid summary judgment."  *Clouthier v. County of Contra Costa*, 591 F.3d

18 1232, 1252 (9th Cir.2010).

19     **D.     Hearsay**

20     Evidence may not be considered if it contains or is based on hearsay.  Fed. R. Evid. 802;

21 *see also, e.g., Pfingston v. Ronan Engineering Co.*, 284 F.3d 999 (9th Cir. 2002) (affirming grant

22 of summary judgment were evidence offered by opposing party was "inadmissible hearsay").

23 Nor is an expert permitted to relay hearsay and thereby make it admissible.  *See, e.g., Heishman*

24 *v. Ayers*, 621 F.3d 1030, 1042-43 (9th Cir. 2010) ("[Rule 703] does not convert the underlying

25 inadmissible hearsay into admissible testimony. . . . This is just common sense. If the law were

---

26     [1] In making these evidentiary objections, and given that it has not yet deposed Mr.
27 Hilliard, Oracle expressly reserves its right to exclude Mr. Hilliard's trial testimony on different
and/or additional grounds than those stated in these objections.

28

1  otherwise, a party could use an expert as a conduit for self-serving statements and totally avoid

2  cross-examination.")

3      **E.      Legal Conclusion**

4      Testimony as to the interpretation of agreements is inadmissible legal conclusion. *See,*

5  *e.g., Evangelista v. Inland Boatmen's Union of Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985)

6  (declaration stating "opinion as to the correct construction of the collective bargaining agreement

7  . . . is an inadmissible legal conclusion").

8      **F.      Not Authenticated**

9      The sponsor of an item of evidence "must produce evidence sufficient to support a

10  finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

11     **G.      Requirement Of The Original Document**

12     Absent specific exceptions, the party attempting to prove the content of a document must

13  offer the original document (or an accurate reproduction of the original document). Fed. R.

14  Evid. 1002.

15  **II.      OBJECTIONS TO HILLIARD DECL. AND EXHIBITS 31-35**

16     Set out below are pertinent paragraphs of Mr. Hilliard's declaration followed by Oracle's

17  objections to each paragraph and to the exhibits cited therein.

18     Declaration Paragraph 1:  I have been retained by counsel for the Defendants in

19  connection with this matter.  I have attached a description of my accomplishments and relevant

20  experience in my professional biography, attached as Exhibit 31.  I am over 18 years of age and

21  am mentally competent to make this declaration.

22     **Objections to Paragraph 1 & Exhibit 31:**  Paragraph 1 and all of Exhibit 31 are

23  **irrelevant** because they do not prove any fact material to the pending summary judgment

24  motion. Fed. R. Evid.  402.

25     Declaration Paragraph 2:  My educational background includes an M.B.A. from Harvard

26  Business School and a Baccalaureate degree in mechanical engineering with Deans' List

27  academic honors from the Massachusetts Institute of Technology.  In addition, I have lectured on

28  computer systems and programming for the Arizona State University School of Business and the

4

RULE 56(c)(2) OBJECTIONS TO EVIDENCE SUBMITTED IN SUPP. OF
DEFS.' OPP'N TO MOT.FOR PARTIAL SUMM. J.

1    American Management Association.  I held both line and staff positions for several major

2    computer companies where I had responsibilities in the areas of designing, developing,

3    marketing and supporting a wide variety of computer products used in both business and

4    government applications.

5         **Objections to Paragraph 2:** Paragraph 2 is **irrelevant** because it does not prove any fact

6    material to the pending summary judgment motion.  Fed. R. Evid.  402.

7         Declaration Paragraph 3:  Over the past 31 years, I have consulted to more than 200

8    companies, governmental agencies and not-for-profit organizations regarding issues related to

9    the selection, implementation and ongoing support of business computer applications (including

10   both hardware and software) to perform functions comparable to the enterprise applications

11   marketed and supported by Oracle.  In particular, I have consulted to clients that had licensed or

12   were considering the license of Oracle's PeopleSoft, J.D. Edwards, Siebel, and/or Oracle E-

13   Business Suite applications (or their predecessors).

14        **Objections to Paragraph 3:** Paragraph 3 is **irrelevant** because it does not prove any fact

15   material to the pending summary judgment motion.  Fed. R. Evid.  402.

16        Declaration Paragraph  4:  I have reviewed more than 300 business system contracts

17   (nearly all of which were either solely software licenses or included software licenses as part of a

18   package that also included related hardware purchase and/or service contracts), and acted as a

19   contract negotiator in more than 100 instances for consulting clients that were licensing business

20   software for their use.  I have also reviewed more than 100 additional software licenses in the

21   course of various expert witness engagements where the licensed software was at issue in the

22   litigation for which I was engaged.  Many of these licenses were for Oracle software, and nearly

23   all were for business software products that performed ERP or similar applications, comparable

24   to those performed by Oracle's ERP and database products.

25        **Objections to Paragraph 4:** Paragraph 4 is **irrelevant** because it does not prove any fact

26   material to the pending summary judgment motion.  Fed. R. Evid.  402.

27        Declaration Paragraph 5:  In regard to this matter, I have reviewed information from

28   Rimini Street including information regarding their technical practices and procedures; I have

1  reviewed Oracle documents including license agreements for the software-at-issue and technical

2  documents and recommendations provided by Oracle to its licensees; I have reviewed documents

3  relating to the customs and practices of software vendors, their licensees, and various third party

4  support providers in the ERP software industry.

5  **Objections to Paragraph 5:** Paragraph 5 is **irrelevant** because it does not prove any fact

6  material to the pending summary judgment motion. Fed. R. Evid. 402.

7  Declaration Paragraph 6: This case involves complex software platforms known as

8  Enterprise Resource Planning (ERP) systems. By the mid-1990s, ERP applications provided the

9  ability to computerize functions across the entire organization where they were implemented. By

10  the decade of the 2000s, the most successful developers of such enterprise software applications

11  were Oracle, PeopleSoft, J.D. Edwards, Siebel (CRM only) and SAP. Today, ERP systems are

12  used primarily by large and mid-size organizations to integrate internal and external management

13  information, with the goal of managing customer relationships, accounting, finances, supply

14  chains, and human resources within a single software platform.

15  **Objections to Paragraph 6:** Paragraph 6 is **irrelevant** because it does not prove any

16  fact material to the pending summary judgment motion. Fed. R. Evid. 402.

17  The declaration **does not demonstrate personal knowledge** of the assertions in

18  paragraph 6. Fed. R. Evid. 602.

19  The declaration **does not demonstrate any reliable factual basis for Mr. Hilliard to**

20  **offer as expert opinions** the assertions in paragraph 6. Fed. R. Evid. 702; Fed. R. Civ. P.

21  56(c)(4); *Walton*, 492 F.3d at 1008 (insufficient "factual basis"); *Gangstee*, 2012 WL 112650

22  ("does not link" basis to "the conclusions he reached"); *see also Clouthier*, 591 F.3d at 1252

23  ("conclusory assertions" were "insufficient to avoid summary judgment").

24  Declaration Paragraph 7: Due to different customer's unique business needs and because

25  of changes in business conditions and regulatory requirements (including such things as payroll

26  taxes), many users of such enterprise software products have never found it feasible to use them

27  without some level of customizations and/or periodic updates. To allow such customizations and

28  updating (among other reasons), most major ERP software developers (including Oracle)

6

1    routinely grant their customers access to some or all of the source code for the licensed

2    applications to allow for these needed customer modifications.  Nonetheless, source code access

3    of this nature is not typically required for many other common software support activities.  In

4    particular, it is not required when either (a) installing the ERP software (prior to any

5    modifications being made) or (b) copying the software in accordance with the allowed copying

6    specified in the ERP software license.

7        **Objections to Paragraph 7:**  Paragraph 7 is **irrelevant** because it does not prove any

8    fact material to the pending summary judgment motion.  Fed. R. Evid.  402.  In addition, to the

9    extent paragraph 7 is offered as evidence of the meaning of the license agreements at issue on

10   summary judgment, it is **inadmissible parol evidence**.  *See U.S. Cellular*, 281 F.3d at 939

11   (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

12   *Productions,* 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

13   regarding industry custom" in light of "unambiguous[]" contract terms).

14       The declaration **does not demonstrate personal knowledge** of the assertions in

15   paragraph 7.  Fed. R. Evid. 602.

16       The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

17   **expert opinions** the assertions in paragraph 7.  Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

18   particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

19   grounds to assert what licensing terms are "routinely granted" to Oracle's customers, or in what

20   circumstances "source code access" is "typically required."  *See Walton,* 492 F.3d at 1008

21   (insufficient "factual basis"); *Gangstee*, 2012 WL 112650 ("does not link" basis to "the

22   conclusions he reached"); *see also Clouthier*, 591 F.3d at 1252 ("conclusory assertions" were

23   "insufficient to avoid summary judgment").

24       To the extent paragraph 7 is offered as an interpretation of the meaning of the at-issue

25   license agreements or other agreements, it is **inadmissible legal conclusion**.  *See Evangelista*,

26   777 F.2d at 1398 n.3.

27       Declaration Paragraph 8:  Instead of requiring all their customers to make the changes

28   needed to comply with these necessary changes themselves, ERP software developers began

1  offering support contracts to their customers covering software updates needed to stay current

2  and also including repairs to any defects that might be uncovered.  This practice created new

3  problems for the major software developers, however, because once the customers had modified

4  the software to meet their individual requirements, the regular updates and repairs that the

5  developers produce, test and release periodically for the standard versions of the software might

6  no longer work properly with the modified versions of the software in use in their customers'

7  businesses.

8  **Objections to Paragraph 8**:  Paragraph 8 is **irrelevant** because it does not prove any

9  fact material to the pending summary judgment motion.  Fed. R. Evid.  402.  In addition, to the

10  extent paragraph 8 is offered as evidence of the meaning of the license agreements at issue on

11  summary judgment, it is **inadmissible parol evidence**.  *See U.S. Cellular*, 281 F.3d at 939

12  (California law); *Magnetic Copy Services*, 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

13  *Productions*, 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

14  regarding industry custom" in light of "unambiguous[]" contract terms).

15  The declaration **does not demonstrate personal knowledge** of the assertions in

16  paragraph 8.  Fed. R. Evid. 602.

17  The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

18  **expert opinions** the assertions in paragraph 8.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

19  particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

20  grounds to make broad generalizations about ERP software developers and their relationships

21  with customers, including the reasons for different developers to offer support services, the

22  nature of the support services provided, and purported "problems" that resulted.  *See Walton*, 492

23  F.3d at 1008 (expert declaration failed to identify "factual basis" for opinion); *Guidroz-Brault*,

24  254 F.3d at 831 ("in the context of a motion for summary judgment, an expert must back up his

25  opinion with specific facts"); *Gangstee*, 2012 WL 112650, at *2 n.6 (declaration "does not link"

26  purported basis to "the conclusions he reached"); *see also Clouthier*, 591 F.3d at 1252 (expert

27  declaration contained "conclusory assertions" that were  "insufficient to avoid summary

28  judgment").

8

1    The extent paragraph 8 is offered as an interpretation of the meaning of the at-issue

2  license agreements or other agreements, it is **inadmissible legal conclusion**. *See Evangelista*,

3  777 F.2d at 1398 n.3.

4    <u>Declaration Paragraph 9</u>:  To address the needs of their clients, all of the major software

5  developers began offering consulting and programming services so that customers that did not

6  want to use their own employees for customization and modification could contract out these

7  services.  Additionally, the major ERP software developers, including SAP, Microsoft, Oracle,

8  PeopleSoft, J.D. Edwards and Siebel, began referring existing and prospective licensees to third

9  party consultants and consulting firms to: market their enterprise applications software products;

10  install and configure the software; make custom modifications if needed; develop customized

11  add-on functionality needed to meet requirements of specific industries; and provide ongoing

12  support for such modifications when the changes rendered them ineligible for standard support

13  from the developer itself.

14    **Objections to Paragraph 9:**  Paragraph 9 is **irrelevant** because it does not prove any

15  fact material to the pending summary judgment motion. Fed. R. Evid.  402.  In addition, to the

16  extent paragraph 9 is offered as evidence of the meaning of the license agreements at issue on

17  summary judgment, it is **inadmissible parol evidence**. *See U.S. Cellular*, 281 F.3d at 939

18  (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

19  *Productions*, 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

20  regarding industry custom" in light of "unambiguous[]" contract terms).

21    The declaration **does not demonstrate personal knowledge** of the assertions in

22  paragraph 9. Fed. R. Evid. 602.

23    The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

24  **expert opinions** the assertions in paragraph 9.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

25  particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

26  grounds to make broad assertions about the nature of service offerings by various unidentified

27  consultants and consulting firms, or whether (or how or on what terms) Oracle or other ERP

28  software developers "began referring" unspecified customers to them. *See Walton*, 492 F.3d at

9

1  1008 (expert declaration failed to identify "factual basis" for opinion); *Guidroz-Brault,* 254 F.3d

2  at 831 ("in the context of a motion for summary judgment, an expert must back up his opinion

3  with specific facts"); *Gangstee,* 2012 WL 112650, at *2 n.6 (declaration "does not link"

4  purported basis to "the conclusions he reached"); *see also Clouthier,* 591 F.3d at 1252 (expert

5  declaration contained "conclusory assertions" that were "insufficient to avoid summary

6  judgment").

7          To the extent paragraph 9 is offered as an interpretation of the meaning of the at-issue

8  license agreements or other agreements, it is **inadmissible legal conclusion**. *See Evangelista*,

9  777 F.2d at 1398 n.3.

10         Declaration Paragraph 10:  By the early 1990s, a service industry emerged consisting of

11  independent consultants, programmers and consulting firms that had developed specific

12  implementation and support expertise for each of the major developers' products.  One portion of

13  this industry includes the developers' designated "business partners", and every major enterprise

14  software developer (including Oracle) set up official business partner networks.  The software

15  developers, including Oracle, rely upon these networks of business partners to implement,

16  customize and otherwise support its ERP licensees.  Licensees often engage third parties to

17  implement, customize and otherwise support the software, as they often lack the requisite in-

18  house resources.  Over the past 30 years, I have worked with dozens of clients that have

19  implemented enterprise software systems, including Oracle, PeopleSoft and J.D. Edwards, and

20  that acquired these systems through third party consultants and/or engaged such consultants for

21  the implementation and on-going services in conjunction with these systems.

22         **Objections to Paragraph 10:**  Paragraph 10 is **irrelevant** because it does not prove any

23  fact material to the pending summary judgment motion.  Fed. R. Evid.  402.  In addition, to the

24  extent paragraph 10 is offered as evidence of the meaning of the license agreements at issue on

25  summary judgment, it is **inadmissible parol evidence**. *See U.S. Cellular*, 281 F.3d at 939

26  (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

27  *Productions*, 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

28  regarding industry custom" in light of "unambiguous[]" contract terms).

10

1    The declaration **does not demonstrate personal knowledge** of the assertions in

2    paragraph 10 other than the last sentence regarding Mr. Hilliard's own work experience.  Fed. R.

3    Evid. 602.

4    The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

5    **expert opinions** the assertions in paragraph 10.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

6    particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

7    grounds to make broad assertions about Oracle's (and others') "business partner network," the

8    degree to which Oracle and others rely upon them, the degree to which licensees need or desire

9    to rely on the support services they may perform.  Mr. Hilliard merely says he has had "dozens"

10   of clients that "acquired" software "through third party consultants and/or engaged such

11   consultants" for other services, but the number of clients who acquired a software license

12   through a third-party (such as a reseller) is irrelevant to the remainder of the paragraph, which

13   concerns third-party service providers.  So far as the declaration reveals, Mr. Hilliard has had no

14   significant number of clients (or no clients at all) who used third-party service providers in

15   relation to Oracle or anyone else.  Accordingly, there is no adequate basis for the assertions in

16   paragraph 10.  *See Walton*, 492 F.3d at 1008 (expert declaration failed to identify "factual basis"

17   for opinion); *Guidroz-Brault,* 254 F.3d at 831 ("in the context of a motion for summary

18   judgment, an expert must back up his opinion with specific facts"); *Gangstee*, 2012 WL 112650,

19   at *2 n.6 (declaration "does not link" purported basis to "the conclusions he reached"); *see also*

20   *Clouthier,* 591 F.3d at 1252 (expert declaration contained "conclusory assertions" that were

21   "insufficient to avoid summary judgment").

22   To the extent paragraph 10 is offered as an interpretation of the meaning of the at-issue

23   license agreements or other agreements, it is **inadmissible legal conclusion**.  *See Evangelista*,

24   777 F.2d at 1398 n.3.

25   <u>Declaration Paragraph 11</u>:  Enterprise software support — whether done by the

26   developers of the software, licensees of the software, or consultants engaged by the licensees —

27   requires the creation of multiple non-production copies of the software applications being

28   supported.  Oracle's technical documentation relating to software copies reflects these normal

11

1   and customary industry practices and encourages its licensees to create multiple copies of its

2   software environments. ████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████   Likewise, Oracle further explains,

5   "Throughout the implementation process, your testers need to constantly test the application to

6   make sure that it performs properly.  Your team would also be constantly migrating

7   configuration changes from development to test to staging environments.  Ultimately, when you

8   are ready to go live with your PeopleSoft applications, your administrators would deploy your

9   tested configuration from staging to production environment."  Ex. 24 (ORCLRS0811822, at

10  ORCLRS0811824).  As reflected by these documents, the maintenance of non-production

11  software copies (e.g., for development, testing, archival, disaster recovery, troubleshooting and

12  other support purposes) is the normal and customary practice in the industry and, in my

13  experience of reviewing hundreds of enterprise software licenses, there are seldom (if ever) any

14  contractual limits on the number of non-production copies that licensees can maintain. ████

15  ████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████

17      **Objections to Paragraph 11:**  Paragraph 11 is **irrelevant** because it does not prove any

18  fact material to the pending summary judgment motion.  Fed. R. Evid.  402.  In particular, it

19  makes assertions about the necessity and typicality certain copying in connection with enterprise

20  software support, but makes no claims about the typicality or necessity of (1) software being

21  copied on consultants computer systems not at the licensee's facilities or (2) software being

22  cross-used, i.e., using software obtained from or on behalf of one client to support others.  Those

23  are the practices at issue in Oracle's motion for partial summary judgment.  In addition, to the

24  extent paragraph 11 (including quotation and interpretation of Exhibits 17 and 24) is offered as

25  evidence of the meaning of the license agreements at issue on summary judgment, it is

26  **inadmissible parol evidence**.  *See U.S. Cellular*, 281 F.3d at 939 (California law); *Magnetic*

27  *Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T. Productions*, 621 F.3d at 967

28  (reversing denial of summary judgment and rejecting "evidence regarding industry custom" in

12

RULE 56(c)(2) OBJECTIONS TO EVIDENCE SUBMITTED IN SUPP. OF
DEFS.' OPP'N TO MOT.FOR PARTIAL SUMM. J.

1   light of "unambiguous[]" contract terms).

2         The declaration **does not demonstrate personal knowledge** of the assertions in

3   paragraph 11 other than Mr. Hilliard's statement in the last sentence that he had reviewed

4   hundreds of enterprise software licenses.  Fed. R. Evid. 602.

5         The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

6   **expert opinions** the assertions in paragraph 11.  Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

7   particular, the declaration identifies no basis in Mr. Hilliard's experience or in the cited

8   documents, which address particular circumstances for particular versions of PeopleSoft

9   software, for broad generalizations about what is "required" or "normal and customary" across

10  the entire family applications from Oracle and others.   Likewise, the declaration offers no

11  adequate basis to offer an opinion as to what terms are "normal and customary" in license

12  agreements which Mr. Hilliard has never seen.  Indeed, although Mr. Mr. Hilliard declares that

13  licenses "seldom (if ever) any contractual limits on the number of non-production copies that

14  licensees can maintain," ███████████████████████████████████████████████████████

15  █████████████████████████████████████████████████████████████████████████████████

16  █████████   Accordingly, there is no adequate basis for the assertions in paragraph 11.  *See*

17  *Walton*, 492 F.3d at 1008 (expert declaration failed to identify "factual basis" for opinion);

18  *Guidroz-Brault*, 254 F.3d at 831 ("in the context of a motion for summary judgment, an expert

19  must back up his opinion with specific facts"); *Gangstee*, 2012 WL 112650, at *2 n.6

20  (declaration "does not link" purported basis to "the conclusions he reached"); *see also Clouthier*,

21  591 F.3d at 1252 (expert declaration contained "conclusory assertions" that were "insufficient to

22  avoid summary judgment").

23        In addition, to the extent paragraph 11 is offered as an interpretation of the meaning of

24  the at-issue license agreements or other agreements, it is **inadmissible legal conclusion**.  *See*

25  *Evangelista*, 777 F.2d at 1398 n.3.

26        <u>Declaration Paragraph 12 & nn.1-2</u>:  When engaged, consultants likewise create and rely

27  on non-production copies of the software to provide services in connection with the licensees'

28  use of the software.  For example, development of custom modifications to prior code has

13

1    historically occurred on computers maintained by the consultants with development occurring

2    both in, and outside of, the United States.  The motivation to have this work performed offsite

3    (for purposes of convenience and cost, among others) remains similar today as when it first

4    began in the early 1990s.  In particular, the normal and customary way that a professional

5    software development organization (such as a consulting organization) modifies and updates a

6    customer's software is to create non-production copies of the software on the consultant's

7    computer systems, such that the non-production versions of the software can be maintained and

8    modified as needed.  Oracle acknowledges that companies often "copy production data into

9    staging or test environments to allow in-house developers or offshore testers to perform

10   application development and application testing." Ex. 27 (ORCLRS0811866-72) at

11   ORCLRS0811870.  Oracle's website explains that it is "normal" for a single production instance

12   of Oracle ERP software "to have ten or more corresponding test or development instance copies

13   for use by several different teams of developers or departments." [FOOTNOTE 1] In fact, Oracle

14   provides its licensees tools to facilitate remote development work. [FOOTNOTE 2]

15          FOOTNOTE 1: Mask Your Secrets Using Oracle Enterprise Manager,

16   http://www.oracle.com/technetwork/articles/oem/havewala-datamasking-grid-166436.html (last

17   visited April 20, 2012) (discussing data confidentiality concerns that should addressed "before

18   providing an off-site or development copy of the database.").

19          FOOTNOTE 2: Masking Sensitive Data,

20   http://docs.oracle.com/cd/E1188201/server.112/e16540/tdm_data_masking.htm (last visited

21   April 20, 2012) (describing a data obscuration tool that allows for test data to be shared with

22   "external business partners such as offshore testing companies").

23          **Objections to Paragraph 12 & nn.1-2:**  Paragraph 12 (including footnotes 1-2) is

24   **irrelevant** because it does not prove any fact material to the pending summary judgment motion.

25   Fed. R. Evid.  402.  In addition, to the extent paragraph 12 (including its quotation and

26   interpretation of Exhibit 27) is offered as evidence of the meaning of the license agreements at

27   issue on summary judgment, it is **inadmissible parol evidence**.  *See U.S. Cellular*, 281 F.3d at

28   939 (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

14

1  *Productions*, 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

2  regarding industry custom" in light of "unambiguous[]" contract terms).

3        The declaration **does not demonstrate personal knowledge** of the assertions in

4  paragraph 12, nor of the contents of the quoted web pages cited in footnotes 1-2.  Fed. R. Evid.

5  602.

6        The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

7  **expert opinions** the assertions in paragraph 12.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).   In

8  particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

9  grounds to make assertions regarding the location where consultants created and stored copies of

10 software in connection with PeopleSoft, J.D. Edwards, or Siebel software support, let alone what

11 is "normal and customary" or the purported motivations for doing so.  None of the documents

12 cited offer any basis for such assertions.  For example, the single discovery document cited by

13 the declaration, Def. Ex. 27, discusses security issues with sharing sensitive data – such as

14 "company confidential, sensitive or personally identifiable information, access to which is

15 restricted by government regulations" – and expresses no approval of copying PeopleSoft

16 software to a location that is not permitted under a client's license.   The other two documents

17 cited by Mr. Hilliard do not even concern the PeopleSoft, J.D. Edwards, or Siebel software at

18 issue on this motion.   Moreover, Mr. Hilliard's report in this case asserts that ▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮   See Declaration of John Polito, ¶ 11 & Ex. 77 (Expert Report of Brooks L. Hilliard

22 Report) at 57-59.   Accordingly, that a few Oracle documents refer to using outside or offshore

23 consultants in some capacities simply provides no basis to assert that it is "normal and

24 customary" for outside consultants to install PeopleSoft, J.D. Edwards, or Siebel software on the

25 consultants' computer systems and the other assertions in paragraph 12.  *See Walton*, 492 F.3d

26 at 1008 (expert declaration failed to identify "factual basis" for opinion); *Guidroz-Brault,* 254

27 F.3d at 831 ("in the context of a motion for summary judgment, an expert must back up his

28 opinion with specific facts"); *Gangstee*, 2012 WL 112650, at *2 n.6 (declaration "does not link"

15

RULE 56(c)(2) OBJECTIONS TO EVIDENCE SUBMITTED IN SUPP. OF
DEFS.' OPP'N TO MOT.FOR PARTIAL SUMM. J.

1   purported basis to "the conclusions he reached"); *see also Clouthier,* 591 F.3d at 1252 (expert

2   declaration contained "conclusory assertions" that were "insufficient to avoid summary

3   judgment").

4          To the extent paragraph 12 is offered as an interpretation of the meaning of the at-issue

5   license agreements or other agreements, it is **inadmissible legal conclusion**. *See Evangelista,*

6   777 F.2d at 1398 n.3.

7          Declaration Paragraph 13 & n.3:  Further, several Oracle Partners acknowledge and

8   promote the fact that they follow this industry custom when providing services to Oracle

9   licensees.

10

11

12                                              Further, Astute Business Solutions, eVerge Group,

13  CedarCrestone, and Summit Technology, all Oracle Partners, advertise on their websites the use

14  of an "upgrade lab" on the consultant's computer systems wherein the licensee's environment is

15  replicated and used to provide services to the licensee. [FOOTNOTE 3]  As one Oracle Partner

16  explains, "Our PeopleSoft Center of Excellence hosts and manages an 'Upgrade Lab' which

17  replicates the client environment at our offshore locations.  The initial and most time consuming

18  activities are carried out in our Upgrade Lab thus benefiting the clients with immense cost

19  savings."  Ex. 32.

20          FOOTNOTE 3: See Exhibits 32 to 35, which are true and correct copies of the web pages

21  indicated below.

22          Ex. 32, Astute Business Solutions, Astute Labs

23  http://www.beastute.com/index.php?option=com_content&view=article&id=76&Itemid=191,

24  (last visited April 20, 2012) ("Our PeopleSoft Center of Excellence hosts and manages an

25  'Upgrade Lab' which replicates the client environment at our offshore locations. The initial and

26  most time consuming activities are carried out in our Upgrade Lab thus benefiting the clients

27  with immense cost savings.");

28          Ex. 33, CedarCrestone, Inc., CedarCrestone PeopleSoft Upgrades,

1 http://www.cedarcrestone.com/media/documents/PSUpgrades.pdf (last visited April 20, 2012)

2 ("CedarCrestone also offers a more stream-lined and cost-effective Upgrade Lab Solution, using

3 [CedarCrestone's] state-of-the-art data center.");

4   Ex. 34, eVerge Group, Inc., PeopleSoft ERP Upgrades,

5 http://www.evergegroup.com/software_upgrades.htm (last visited April 20, 2012) ("eVerge

6 Group technical staff will copy the client database to external media for transport to the eVerge

7 Group upgrade lab.").

8   Ex. 35, Summit Technology, Inc., PeopleSoft Upgrades,

9 http://www.summitsti.com/services/peoplesoft-upgrades (last visited April 20, 2012) ("By taking

10 advantage of an off-site [PeopleSoft] upgrade, we can manage your project in effective manner,

11 because you can concentrate your efforts on your core business, and let us handle your upgrade

12 in our state-of-the-art upgrade lab.").

13 **Objections to Paragraph 13 & n.3 & Exhibits 32-35:** Paragraph 13 and Exhibits 32 to

14 35 are **irrelevant** because it does not prove any fact material to the pending summary judgment

15 motion. Fed. R. Evid. 402. In addition, to the extent paragraph 13 (including its interpretation

16 of Exhibit 3) and Exhibits 32 to 35 are offered as evidence of the meaning of the license

17 agreements at issue on summary judgment, they are **inadmissible parol evidence**. *See U.S.*

18 *Cellular*, 281 F.3d at 939 (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado

19 law); *see also F.B.T. Productions*, 621 F.3d at 967 (reversing denial of summary judgment and

20 rejecting "evidence regarding industry custom" in light of "unambiguous[]" contract terms).

21   The declaration **does not demonstrate personal knowledge** of the assertions in

22 paragraph 13. Fed. R. Evid. 602.

23   Paragraph 13 contains and is based on inadmissible **hearsay**, and Exhibits 32 to 35

24 constitute inadmissible hearsay. Fed. R. Evid. 802. First, paragraph 13 purports to summarize

25 deposition testimony of a representative from Cedar Crestone, which is improper. "Hearsay

26 testimony cannot be considered because '[a] third party's description of [a witness'] supposed

27 testimony is not suitable grist for the summary judgment mill.'" *Gross v. Burggraf Const. Co.*,

28 53 F.3d 1531, 1541 (10th Cir. 1995) (alterations in original) (citation omitted). Second,

17

1   paragraph 13 is based on and repeats, and Exhibits 32 to 35 constitute, unauthenticated and

2   inadmissible hearsay; specifically, the purported statements of Astute Business Solutions, eVerge

3   Group, CedarCrestone, and Summit Technology on websites, offered for the truth of the matters

4   asserted therein.  What a company advertises on its website is not evidence of the services it

5   actually offers, let alone that Oracle has sanctioned all of its services. *See, e.g., Cook v. J&J*

6   *Snack Foods Corp.*, No. 09-CV-02297, 2010 WL 3910478, at *6 (E.D. Cal. Jan. 28, 2010)

7   ("Print outs of websites are not likely to demonstrate that the goods offered are similar, and to

8   the extent that they do, they are hearsay."); *Matrix Motor Corp. v. Toyota*, 290 F. Supp. 2d 1083

9   (C.D. Cal. 2003) ("MMC's Expert Reports do not raise any issues of material fact. Instead, they

10  merely recite hearsay statements, often verbatim, culled from a variety of Internet websites.

11  Devoid of any factual basis or foundation, MMC's Expert Reports are irrelevant.") (citation

12  omitted); *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1065

13  (C.D. Cal. 2002) (sustaining objection to non-authenticated documents obtained from a website).

14  Mr. Hilliard's statement that Exhibits 32 to 35 are "true and correct copies" of web pages is

15  **insufficient to authenticate** the web pages because Mr. Hilliard "is unable to show that the

16  information had been posted by the organizations to which []he attributed it." *Wady*, 216 F.

17  Supp. 2d at 1065.

18      The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

19  **expert opinions** the assertions in paragraph 13.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

20  particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

21  grounds to make assertions regarding what is "industry custom" or to suggest that Oracle had

22  approved their conduct.   For example, Mr. Hilliard repeatedly makes reference to the purported

23  status of certain companies as "Oracle partners," implying that any conduct undertaken by a

24  purported partner must also be permissible for Rimini as well.

25

26

27                                                  Accordingly, there is no reliable basis for the opinions

28  asserted in paragraph 13. *See Walton*, 492 F.3d at 1008 (expert declaration failed to identify

                                    18

1  "factual basis" for opinion); *Guidroz-Brault,* 254 F.3d at 831 ("in the context of a motion for

2  summary judgment, an expert must back up his opinion with specific facts"); *Gangstee*, 2012

3  WL 112650, at *2 n.6 (declaration "does not link" purported basis to "the conclusions he

4  reached"); *see also Clouthier,* 591 F.3d at 1252 (expert declaration contained "conclusory

5  assertions" that were "insufficient to avoid summary judgment").

6       To the extent paragraph 13 and Exhibits 32 to 35 are offered as an interpretation of the

7  meaning of the at-issue license agreements or agreements, it is **inadmissible legal conclusion**.

8  *See Evangelista*, 777 F.2d at 1398 n.3.

9       Declaration Paragraph 14:       To provide their implementation and support services in an

10  efficient and cost effective manner, third party consulting firms typically use the non-production

11  copies of the software applications on their systems to develop the fixes and enhancements that

12  they subsequently distribute to the licensed software users they support.  Further, it is fully

13  consistent with the customs and practices in the software industry for such consulting firm to

14  provide cloned portions of applications software and updates to other customers licensed for the

15  same underlying software

16

17

18                          . This practice by consultants reflects the fact that it

19  is the actual ERP software that is licensed, not the media or a particular embodiment of the

20  software.  ERP software venders customarily afford their clients non-exclusive, perpetual,

21  limited licenses to use the licensed software programs, while granting multiple clients license

22  rights to the same intellectual property.  Therefore, the industry practice of providing multiple

23  clients updates or fixes created in a single development environment permits efficient and cost

24  effective development, while reflecting the practice of the software vendors to license the same

25  software to multiple clients.

26

27

28

19

1    **Objections to Paragraph 14:**  Paragraph 14 is **irrelevant** because it does not prove any

2    fact material to the pending summary judgment motion.  Fed. R. Evid. 402.  In addition, to the

3    extent paragraph 14 (including its quotation and interpretation of Exhibit 3) is offered as

4    evidence of the meaning of the license agreements at issue on summary judgment, it is

5    **inadmissible parol evidence.**  *See U.S. Cellular*, 281 F.3d at 939 (California law); *Magnetic*

6    *Copy Services*, 805 P.2d at 1164 (Colorado law); *see also F.B.T. Productions*, 621 F.3d at 967

7    (reversing denial of summary judgment and rejecting "evidence regarding industry custom" in

8    light of "unambiguous[]" contract terms).

9        The declaration **does not demonstrate personal knowledge** of the assertions in

10    paragraph 13.  Fed. R. Evid. 602.

11        Paragraph 14 contains and is based on inadmissible **hearsay** in that it purports to

12    summarize deposition testimony of a representative from Cedar Crestone, which is improper.

13    *See Gross,* 53 F.3d at 1541.

14        The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

15    **expert opinions** the assertions in paragraph 14.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

16    particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

17    grounds to make assertions regarding what is "typically" done or what is "consistent" with

18    "customs and practice." ███████████████████████████████████████

19    ███████████████████████████████████████████ There is no reliable basis for the

20    opinions asserted in paragraph 13.  *See Walton*, 492 F.3d at 1008 (expert declaration failed to

21    identify "factual basis" for opinion); *Guidroz-Brault*, 254 F.3d at 831 ("in the context of a

22    motion for summary judgment, an expert must back up his opinion with specific facts");

23    *Gangstee*, 2012 WL 112650, at *2 n.6 (declaration "does not link" purported basis to "the

24    conclusions he reached"); *see also Clouthier,* 591 F.3d at 1252 (expert declaration contained

25    "conclusory assertions" that were  "insufficient to avoid summary judgment").

26        Paragraph 14 is **inadmissible legal conclusion** in that it attempts to offer the meaning

27    and legal import of license agreements.  *See Evangelista*, 777 F.2d at 1398 n.3; *see also Mukhtar*

28    *v. Cal. State Univ.*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002).

1    <u>Declaration Paragraph 15</u>:  I understand that Oracle has taken issue with Rimini's

2    practices of (a) maintaining local non-production copies of Oracle ERP software for its clients,

3    (b) providing cloned portions of applications software to customers licensed for that software,

4    and (c) using one copy of a development environment to create PeopleSoft updates that are

5    ultimately delivered to multiple clients.  As explained in the preceding, paragraphs, such

6    practices and procedures are similar to other leading consulting firms and follow generally

7    accepted practices in the industry.  Thus, Rimini's practices are essentially similar to those of

8    other contractors that provide software consulting services and there is no reason to distinguish it

9    from other such contractors.

10   **Objections to Paragraph 15:**  Paragraph 15 is **irrelevant** because it does not prove any

11   fact material to the pending summary judgment motion.  Fed. R. Evid.  402.  In addition, to the

12   extent paragraph 15 is offered as evidence of the meaning of the license agreements at issue on

13   summary judgment, it is **inadmissible parol evidence**.  *See U.S. Cellular*, 281 F.3d at 939

14   (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

15   *Productions*, 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

16   regarding industry custom" in light of "unambiguous[]" contract terms).

17   The declaration **does not demonstrate personal knowledge** of the assertions in

18   paragraph 15.  Fed. R. Evid. 602.

19   The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

20   **expert opinions** the assertions in paragraph 15.   Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  In

21   particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

22   grounds to assert that Rimini's practices are "essentially similar to" other "leading consulting

23   firms" and follow "generally accepted practices in the industry."  There is no reliable basis for

24   the opinions asserted in paragraph 15.  *See Walton*, 492 F.3d at 1008 (expert declaration failed to

25   identify "factual basis" for opinion); *Guidroz-Brault*, 254 F.3d at 831 ("in the context of a

26   motion for summary judgment, an expert must back up his opinion with specific facts");

27   *Gangstee*, 2012 WL 112650, at *2 n.6 (declaration "does not link" purported basis to "the

28   conclusions he reached"); *see also Clouthier,* 591 F.3d at 1252 (expert declaration contained

1   "conclusory assertions" that were "insufficient to avoid summary judgment").

2       To the extent paragraph 15 is offered as an interpretation of the meaning of the at-issue

3   license agreements or agreements, it is **inadmissible legal conclusion**. *See Evangelista*, 777

4   F.2d at 1398 n.3.

5       <u>Declaration Paragraph 16</u>: I also understand that Oracle has taken issue with Rimini's

6   creation of RAM copies of Oracle's software. As explained below, this contention is not

7   supportable because the right to make RAM copies of software and software environments is

8   implicit in any license grant directed to providing access or use of such software and its

9   supporting environments. Otherwise, the right to access and use the software would be

10   ineffective and pointless because there is no way to actually carry out such access or use (here

11   for non-production purposes) without having at least a portion of the software copied into RAM.

12   For this reason, it is widely understood in the industry (and common practice) that license rights

13   directed to the access and use of the software also implicitly include the right to make RAM

14   copies of the software.

15       **Objections to Paragraph 16:** Paragraph 16 is **irrelevant** because it does not prove any

16   fact material to the pending summary judgment motion. Fed. R. Evid. 402. In addition, to the

17   extent paragraph 16 is offered as evidence of the meaning of the license agreements at issue on

18   summary judgment, it is **inadmissible parol evidence**. *See U.S. Cellular*, 281 F.3d at 939

19   (California law); *Magnetic Copy Services,* 805 P.2d at 1164 (Colorado law); *see also F.B.T.*

20   *Productions*, 621 F.3d at 967 (reversing denial of summary judgment and rejecting "evidence

21   regarding industry custom" in light of "unambiguous[]" contract terms).

22       The declaration **does not demonstrate personal knowledge** of the assertions in

23   paragraph 16. Fed. R. Evid. 602.

24       The declaration **does not demonstrate any reliable basis for Mr. Hilliard to offer as**

25   **expert opinions** the assertions in paragraph 16. Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4). In

26   particular, the declaration identifies no reliable basis in Mr. Hilliard's experience or any specific

27   grounds to assert something is "widely understood in the industry (and common practice)" " that

28   Rimini's practices are "essentially similar to" other "leading consulting firms" and follow

22

1    "generally accepted practices in the industry."  There is no reliable basis for the opinions asserted

2    in paragraph 16.  *See Walton*, 492 F.3d at 1008 (expert declaration failed to identify "factual

3    basis" for opinion); *Guidroz-Brault,* 254 F.3d at 831 ("in the context of a motion for summary

4    judgment, an expert must back up his opinion with specific facts"); *Gangstee*, 2012 WL 112650,

5    at *2 n.6 (declaration "does not link" purported basis to "the conclusions he reached"); *see also*

6    *Clouthier,* 591 F.3d at 1252 (expert declaration contained "conclusory assertions" that were

7    "insufficient to avoid summary judgment").

8         Paragraph 16 is **inadmissible legal conclusion** in that it attempts to offer the meaning

9    and legal import of license agreements.  *See Evangelista*, 777 F.2d at 1398 n.3; *see also*

10   *Mukhtar*, 299 F.3d at 1066 n.10.

11   **III.     OBJECTIONS TO EXHIBITS 3, 4, 9, 29 AND 30 TO RECKERS DECL.**

12        **Objections to Exhibit 3**:  Exhibit 3, comprising excerpts of the deposition of Paul

13   Simmons, is **irrelevant** because it does not prove any fact material to the pending summary

14   judgment motion.  Fed. R. Evid.  402.  In addition, to the extent Mr. Simmons's testimony is

15   offered as evidence of the meaning of the license agreements at issue on summary judgment, it is

16   **inadmissible parol evidence**.  *See F.B.T. Productions*, 621 F.3d at 967.  Exhibit 3 is offered to

17   support statements about industry custom and practice.  To the extent that this testimony is

18   offered as expert opinion, *see, e.g.*, Opp'n at 12:15-19; *id.* at 17:9-13 & n.8; *id.* at 21:8-13 & n.9;

19   *id.* at 24:14-17; *id.* at 25:15-18; *id.* at 26:1-4, the cited testimony **does not demonstrate any**

20   **reliable basis for Mr. Simmons to offer an expert opinion** about industry custom and practice,

21   and certainly does not disclose any specific facts upon which he would have relied to reach any

22   such expert opinion.  Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(4).  ████████████

23   ████████████████████  ██████████████████:

24   ████████████████████████████████████████

25   ████████████████████████████████████████

26   ████████████████████████████████████████

27

28        Reckers Decl. ¶ 4 & Ex. 3 (Simmons Depo.) at 200:20-201:6.

1     **Objections to Exhibit 4**: Exhibit 4, an exhibit to the Deposition of Paul Simmons, is

2 **irrelevant** because it does not prove any fact material to the pending summary judgment motion.

3 Fed. R. Evid. 402. In addition, to the extent Mr. Simmons's testimony is offered as evidence of

4 the meaning of the license agreements at issue on summary judgment, it is **inadmissible parol**

5 **evidence**. *See F.B.T. Productions*, 621 F.3d at 967. Exhibit 4 is **unauthenticated** and is

6 **inadmissible hearsay**; specifically, it contains ███████████████████

7 ██████████████████████████████████████████, offered for

8 the truth of the matters asserted therein. Fed. R. Evid. 802. Defendants have failed to lay any

9 foundation for Exhibit 4: They include no testimony from a custodian of records, nor any other

10 testimony concerning the document and **do not claim personal knowledge** of the accuracy of its

11 content. Fed. R. Evid. 602. The statement in the Reckers Decl. that "Exhibit 4 is a true and

12 accurate copy of relevant excerpts of Rimini's Deposition Exhibit 3, which was introduced

13 during the December 1, 2011 deposition of Paul Simmons" is **insufficient to authenticate** this

14 document. Fed. R. Evid. 901(a).

15     **Objections to Exhibit 9**: Defendants characterize Exhibit 9 as "Rimini's service

16 agreement with City of Flint." Opp'n at 11:24-26. This document is **not the original**

17 **document**: it is not signed by Rimini or City of Flint, but is being offered as if it were the

18 operative agreement, in violation of Fed. R. Evid. 1002. Exhibit 9 is **not relevant for the**

19 **purpose for which it is being offered**: namely, to establish that "Rimini meets each of these

20 criteria," Opp'n at 11:24-26, listed in the nondisclosure provision in City of Flint's license with

21 Oracle, O'Neill Decl. ¶ 3 & Ex. 10, at § 14.2. An unexecuted draft of a support agreement

22 (which cannot be offered as a true and correct copy of the executed agreement) is not probative

23 of the actual behavior of the parties pursuant to the final, executed contract (if such a contract

24 exists). Fed. R. Evid. 402. In addition, to the extent Exhibit 9, a draft Rimini service contract, is

25 offered as evidence of the meaning of the Oracle license agreements at issue on summary

26 judgment, it is **inadmissible parol evidence**. *See F.B.T. Productions*, 621 F.3d at 967.

27     In fact, when offering a draft contract to prove behavior consistent with a hypothesized,

28 final, executed version of that contract, the statements within the draft contract are **inadmissible**

24

1   **hearsay**, as they are being offered (as part of an inferential chain) for the truth of their content.

2   Fed. R. Evid. 802. Defendants have failed to lay any foundation for Exhibit 9: They include no

3   testimony from a custodian of records, nor any other testimony concerning the document, and **do**

4   **not claim personal knowledge** of the accuracy of its content. Fed. R. Evid. 602. The statement

5   in the Reckers Decl. that "Exhibit 9 is a true and accurate copy of Oracle's Deposition Exhibit

6   758, which was introduced during the November 7, 2011 deposition of Thomas O'Brien." is

7   **insufficient to authenticate** this document. Fed. R. Evid. 901(a).

8       **Objections to Exhibit 29**: Defendants offer Exhibit 29, Rimini's service agreement with

9   Giant Cement Holdings, Inc., as proof that "The evidence in this case demonstrates that Rimini

10   meets these three conditions," Opp'n at 23:5-7, listed in Giant Cement's license with Oracle,

11   O'Neill Decl. ¶ 9 & Ex. 16, at Art. VI, § 4. To the extent Exhibit 29, a Rimini service contract,

12   is offered as evidence of the meaning of the Oracle license agreements at issue on summary

13   judgment, it is **inadmissible parol evidence**. *See F.B.T. Productions*, 621 F.3d at 967.

14       When offering a contract to prove behavior consistent with the statements therein, the

15   statements within the draft contract are **inadmissible hearsay**, as they are being offered (as part

16   of an inferential chain) for the truth of their content. Fed. R. Evid. 802. Defendants have failed

17   to lay any foundation for Exhibit 29: They include no testimony from a custodian of records, nor

18   any other testimony concerning the document and **do not claim personal knowledge** of the

19   accuracy of its content. Fed. R. Evid. 602. The statement in the Reckers Decl. that "Exhibit 29

20   is a true and accurate copy of a document produced by Rimini Street in this matter, Bates number

21   RSI00002747-59" is **insufficient to authenticate** this document. Fed. R. Evid. 901(a).

22       **Objections to Exhibit 30**: Defendants characterize Exhibit 30 as "Rimini's service

23   agreement with the School District [of Pittsburgh]." Opp'n at 19:5-7. This document is **not the**

24   **original document**: it is not signed by Rimini or School District of Pittsburgh, but is being

25   offered as if it were the operative agreement, in violation of Fed. R. Evid. 1002. Exhibit 30 is

26   **not relevant for the purpose for which it is being offered**: namely, to establish that "Rimini

27   meets each of these criteria," Opp'n at 19:5-7, listed in the nondisclosure provision in School

28   District of Pittsburgh's license with Oracle, O'Neill Decl. ¶ 4 & Ex. 11, at § 10.2. An

1   unexecuted draft of a support agreement (which cannot be offered as a true and correct copy of

2   the executed agreement) is not probative of the actual behavior of the parties pursuant to the

3   final, executed contract (if such a contract exists). Fed. R. Evid. 402. In addition, to the extent

4   Exhibit 30, a draft Rimini service contract, is offered as evidence of the meaning of the Oracle

5   license agreements at issue on summary judgment, it is **inadmissible parol evidence**. *See F.B.T.*

6   *Productions*, 621 F.3d at 967.

7        In fact, when offering a draft contract to prove behavior consistent with a hypothesized,

8   final, executed version of that contract, the statements within the draft contract are **inadmissible**

9   **hearsay**, as they are being offered (as part of an inferential chain) for the truth of their content.

10   Fed. R. Evid. 802. Defendants have failed to lay any foundation for Exhibit 30: They include no

11   testimony from a custodian of records, nor any other testimony concerning the document and **do**

12   **not claim personal knowledge** of the accuracy of its content. Fed. R. Evid. 602. The statement

13   in the Reckers Decl. that "Exhibit 30 is a true and accurate copy of a document produced by

14   Rimini Street in this matter, Bates number RSI03016354-66" is **insufficient to authenticate** this

15   document. Fed. R. Evid. 901(a).

16   IV.    **OBJECTIONS TO EXHIBITS 1-2, 5-8, 10-15, 17, AND 19-28 TO RECKERS**

17          **DECL.**

        To the extent that Exhibits 1-2, 5-8, 10-15, 17, and 17-28 are offered as evidence of the

18   meaning of the Oracle license agreements at issue on summary judgment, they are **inadmissible**

19   **parol evidence**. *See F.B.T. Productions*, 621 F.3d at 967.

20

21

        Respectfully submitted,

22

        DATED: May 14, 2012          BINGHAM MCCUTCHEN LLP

23

24

25                                   By:_____/s/ Geoffrey M. Howard_____

                                          Geoffrey M. Howard

26                                   Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                                     America, Inc. and Oracle International Corp.

27

28

RULE 56(c)(2) OBJECTIONS TO EVIDENCE SUBMITTED IN SUPP. OF
DEFS.' OPP'N TO MOT.FOR PARTIAL SUMM. J.