BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

Attorneys for Oracle USA, Inc., Oracle
America, Inc., and Oracle International
Corporation

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA., INC, a Colorado corporation, ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>        Plaintiffs,<br>    v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>        Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION**<br><br>**REDACTED** |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS .......................................................................................... 3

    I.    Oracle Asserts Copyright Infringement Claims and Rimini Asserts a
        License Defense ......................................................................................... 3

    II.    Rimini Street Anticipated This Lawsuit Before January 2010 ...................... 5

        A.    In December 2008, Rimini Threatened Oracle with Litigation and
               Oracle Sent a Demand Letter Expressly Demanding Rimini
               Preserve Evidence ..................................................................... 5

        B.    █████████████████████████████████ ............................................................. 6

        C.    ████████████████████████ ................................................................... 7

        D.    In September 2009, Ravin Represented to the Court That Rimini
               Anticipated Litigation with Oracle ............................................ 8

    III.    Rimini Created and Used a Central "Software Library" Through at Least
        September 2009 and Deleted It in January 2010 ......................................... 9

        A.    Rimini Street Created and Maintained a Centralized, Commingled
               Software Library ....................................................................... 9

        B.    Rimini Used the Software Library to Build Environments Without
               Regard to the Source of the Materials...................................... 11

        C.    Around September 2009, Rimini Announced a Change in Policy in
               Response to Concerns about Oracle Intellectual Property..................... 12

        D.    In January 2010, Rimini Deleted the Software Library ........................... 14

    IV.    Rimini Has Attempted to Take Advantage of the Gaps in the Record
        Created by Its Deletion of the Software Library................................................. 15

ARGUMENT ............................................................................................................. 18

    I.    Rimini Anticipated This Lawsuit Before Deleting the Software Library ........... 19

    II.    An Adverse Inference Instruction Is an Appropriate Remedy........................... 21

        A.    Rimini's Deletion Was Intentional and Willful ....................................... 21

        B.    Rimini's Deletion of the Software Library Substantially Prejudices
               Oracle ...................................................................................... 23

        C.    Lesser Sanctions Would Be Inadequate................................................ 26

CONCLUSION ........................................................................................................ 30

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

i

B O I E S , S C H I L L E R & F L E X N E R L L P
O A K L A N D , C A L I F O R N I A

1
2
3

**TABLE OF AUTHORITIES**

**Cases**

4
5

*Advantacare Healthcare Partners LP v. Access IV,*
   No. 03-04496, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ............................................. 28

6
7

*Akiona v. United States,*
   938 F.2d 158 (9th Cir. 1991).................................................................................... 23, 26

8
9

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
   69 F.3d 337 (9th Cir. 1995)......................................................................................... 23

10

*Arista Records LLC v. Usenet.com, Inc.,*
   608 F. Supp. 2d 409 (S.D.N.Y. 2009)......................................................................... 27, 28

11
12

*Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.,*
   265 F.R.D. 510 (E.D. Cal. 2010) ................................................................................... 21

13
14

*E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,*
   803 F. Supp. 2d 469 (E.D. Va. 2011)......................................................................... 25, 27

15
16

*English v. Wal-Mart Stores, Inc.,*
   No. 10–cv–00080–ECR–VPC, 2011 WL 3496092 (D. Nev. Aug. 10, 2011) ....................... 19

17
18

*Glover v. BIC Corp.,*
   6 F.3d 1318 (9th Cir. 1993).......................................................................................... 23

19
20

*Goodman v. Praxair Services, Inc.,*
   632 F. Supp. 2d 494 (D. Md. 2009) ............................................................................... 20

21

*Houlihan v. Marriott Intern., Inc.,*
   No. 00-Civ-7439, 2003 WL 22271206 (S.D.N.Y. Sept. 30, 2003) ..................................... 20

22
23

*In re Hitachi Television Optical Block Cases,*
   No. 08-CV-1746, 2011 WL 3563781 (S.D. Cal. Aug. 12, 2011) ......................................... 24

24
25

*In re Napster,*
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ..................................................................... passim

26
27

*In re Nat'l Consumer Mortg., LLC,*
   2:10-CV-00930-PMP, 2011 WL 1300540 (D. Nev. Mar. 31, 2011)..................................... 18

28

*Io Group Inc. v. GLBT Ltd.,*
   C-10-1282 MMC DMR, 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) ................... 21, 27, 28

*KCH Services, Inc. v. Vanaire, Inc.*,
No. 05-777, 2009 WL 2216601 (W.D. Ky. July 22, 2009) ............................................ 21, 24

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) ........................................................................................ 27

*Krumwiede v. Brighton Associates, L.L.C.*,
No. 05 C 3003, 2006 WL 1308629 (N.D. Ill. May 8, 2006) ...................................... 25

*LaJocies v. City of North Las Vegas*,
No. 08-00606, 2011 WL 1630331 (D. Nev. Apr. 28, 2011) ...................................... 28

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ........................................................ 21, 23, 25, 27

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311 (Fed. Cir. 2011) ............................................................... 19, 20

*Morford v. Wal-Mart Stores, Inc.*,
2:09-CV-02251-RLH, 2011 WL 635220 (D. Nev. Feb. 11, 2011) ......................... 19

*Motorola, Inc. v. Pick*,
No. CV 04-2655, 2005 WL 5918849 (C.D. Cal. May 26, 2005) ............................. 22, 24

*Pace v. National R.R. Passenger Corp.*,
291 F. Supp. 2d 93 (D. Conn. 2003) .......................................................... 20

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
685 F. Supp. 2d 456 (S.D.N.Y. 2010) ............................................................. 18

*Philips Electronics N. Am. Corp. v. BC Technical*,
773 F. Supp. 2d 1149 (D. Utah 2011) .......................................................... 25

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
264 F.R.D. 517 (N.D. Cal. 2009) ............................................................. 19

*Rogers v. T.J. Samson Cmty. Hosp.*,
276 F.3d 228 (6th Cir. 2002) ........................................................................ 28

*Romero v. Allstate Ins. Co.*,
271 F.R.D. 96 (E.D. Pa. 2010) ................................................................... 25

Silvestri v. General Motors,
271 F.3d 583 (4th Cir. 2001) .................................................................... 18

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

ORACLE'S MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

*Surowiec v. Capital Title Agency, Inc.*,
   790 F. Supp. 2d 997 (D. Ariz. 2011) .................................................................... 19, 21

*Testa v. Wal-Mart Stores, Inc.*,
   144 F.3d 173 (1st Cir. 1998) ...................................................................................... 20

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
   857 F.2d 600 (9th Cir. 1988) ...................................................................................... 23

*United States v. Kitsap Physicians Svs.*,
   314 F.3d 995 (9th Cir. 2002) ...................................................................................... 18

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999) ....................................................................................... 27

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) .......................................................................... 19, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**PLAINTIFFS' MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION AND MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation (together, "Oracle") file this motion for an order imposing evidentiary sanctions on Defendants Rimini Street, Inc. ("RSI") and its CEO, Seth Ravin (together, "Rimini") for spoliation.

**INTRODUCTION**

Well after Rimini anticipated this very litigation, Rimini destroyed important evidence that it knew was relevant to Oracle's claims and its own defenses. Specifically, in January 2010, Rimini employees affirmatively and irretrievably deleted what was known at Rimini as a "software library," containing digital copies of Oracle's copyrighted works. This destruction created gaps in the evidence available to Oracle to prove its case. Oracle asks the Court to order an adverse inference sanction preventing Rimini from exploiting the absence of evidence created by its willful misconduct.

Rimini should have anticipated, and in fact did anticipate, this lawsuit before it deleted the software library. No later than January 2009, Oracle's outside litigation counsel put Rimini on notice of this lawsuit and demanded that Rimini preserve evidence. Also in 2009, Rimini took actions that show it anticipated the claims, including ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Rimini also told this Court, in a September 2009 filing in a separate action, that Oracle had made "threats" of litigation and that the "true purpose" of Oracle's seeking third-party discovery from Rimini in that case was "pre-complaint discovery" and "pre-litigation discovery" to gather evidence for a "separate action against Rimini Street" (*i.e.*, this case). (Ex. 54 (*Oracle USA, Inc. et al. v. SAP AG et al.*, No 09-cv-01591 (D. Nev.), Sep. 14, 2009, Dkt. 26) at 3.)

While Rimini's failure to preserve evidence after anticipating this lawsuit was far-

---

[1] The cited exhibits are attached to the Appendices of Exhibits in Support of Motion for Evidentiary Sanctions for Spoliation and are cited as "Ex. __."

B O I E S , S C H I L L E R & F L E X N E R L L P
O A K L A N D , C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   reaching, this motion is limited to one narrow source of evidence relating to Rimini's use of

2   Oracle's copyrighted software and support material obtained from (or purportedly on behalf of)

3   one client in order to support another client.  We refer to such conduct as "cross-use."  As

4   detailed in Oracle's motion for summary judgment, Rimini's widespread cross-use of Oracle

5   material cuts straight through Rimini's central defense that its conduct is authorized by its

6   clients' software license agreements with Oracle, because none of those licenses permit one

7   licensee's software to be copied to serve other clients.

8        The cross-use at issue in this motion relates to Rimini's "software library" of Oracle

9   material.  Recognizing that centralized storage and use of Oracle material was indefensible,

10   Rimini claimed in its pleadings that it maintained Oracle software and support materials in

11   client-specific "data silos," that Rimini did not physically "co-mingle" such material, and that a

12   centralized "library" of such material "never existed at Rimini Street."  (RSI's Second Am.

13   Answer & First Am. Countercl. ("RSI Answer & Counterclaims"), Jun. 16, 2011, Dkt. 153 ¶ 4,

14   at 2-3.)

15        Rimini's documents show that Rimini employees knew cross-use was not allowed.  For

16   example, in June 2009, Rimini employee Krista Williams ███████████████████████

17   ████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████

19   ███████  (Ex. 27 (Jul. 14, 2009 e-mail from K. Williams).)

20        Consistent with the false statements in Rimini's pleadings and its assertions to its

21   customers, in early depositions Rimini employees denied the existence of a software library.  As

22   the documentary evidence mounted, however, employees in depositions and eventually Rimini

23   admitted the truth:  Rimini created and used for years what its own employees called a "software

24   library" of Oracle software that commingled material obtained from or for different customers

25   (or no customer at all).  And Oracle eventually learned that in January 2010, ███████████

26   ██████████████████████████████████████████

27   ████████████████████████████████████  ordered the contents of

28   the software library deleted.

1    Rimini's deletion leaves the record of wrongdoing incomplete and allows Rimini to claim

2    it lacks full knowledge of what the library contained and how Rimini took advantage of it.

3    Rimini claims that no other records exist, except a scattering of emails and the like which are, by

4    Rimini's own admission, incomplete.  Despite Rimini's efforts to cover its tracks, Oracle has

5    scoured the available evidence and can prove that Rimini created the library and gained

6    substantial efficiencies from it.

7    Rimini nevertheless continues to deny the full scope of its conduct by invoking broad

8    generalizations that its business processes prevented improper conduct.  Rimini's experts, for

9    example, opine ███████████████████████████████████████████████████

10   ████████████████████████████████████████ Yet Rimini deleted evidence

11   that would undermine that assertion, namely the complete contents of the library which would,

12   indisputably, have shown which Oracle works the library contained.  Likewise, the deletion

13   destroyed "metadata" which would have provided more detailed information about how Rimini

14   took advantage of the library.  Fairness and justice require that any uncertainty in the proof

15   created by Rimini's destruction of this material cuts against Rimini, not in its favor.  While

16   courts are empowered to enter sanctions as severe as default judgment for spoliation, here Oracle

17   respectfully requests only targeted relief to address the evidentiary gap Rimini created:  adverse

18   inference instructions that the deleted material would have supported Oracle's claims, including

19   rebuttable presumptions of specific facts about the contents and uses of the software library that

20   would have been proved by the evidence Rimini wrongfully deleted.

21                          **STATEMENT OF FACTS**

22   **I.     Oracle Asserts Copyright Infringement Claims and Rimini Asserts a License
              Defense**
23

24   In this action, Oracle asserts, among other claims, a claim for copyright infringement

25   based on Oracle's copyrighted software and related documentation for various PeopleSoft, J.D.

26   Edwards, and Siebel business applications originally launched at predecessor companies and

27   subsequently acquired by Oracle.  (Oracle's Second Am. Compl. ("Complaint"), Jun. 1, 2011,

28   Dkt. 146 ¶¶ 15, 71-83; RSI's Statement of Facts in Supp. of Opp'n, Mar. 30, 2012, Dkt. 269,

B O I E S,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D,  C A L I F O R N I A

SUF #1, at 2.)  Businesses use, for example, PeopleSoft Human Resource Management System (HRMS) to manage their human resources functions, including payroll.  Oracle licenses these applications to customers, who also typically pay for technical support, including access to Oracle's customer support websites, telephone support, and, in many cases, software updates and fixes.  (Complaint at ¶ 26; SUF #2, at 2.)  For instance, Oracle regularly releases PeopleSoft HRMS software updates to address the numerous tax and regulatory changes that impact human resources functions, such as payroll.  (Complaint at ¶ 26.)

Rimini Street touts itself as an alternative to Oracle for ongoing support for PeopleSoft, J.D. Edwards, and Siebel applications.  (RSI Answer & Counterclaims ¶¶ 10-11, at 4.)  Rimini Street offers what it says is support comparable to Oracle's, but at half the price, or less.  (*Id.* at ¶ 36, at 17.)  Rimini Street's business depends on routine and regular copying of Oracle's copyrighted material. ███████████████████████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████ (Ex. 5 (RSI's Third Supp. Resps. to Interrogs. 20-22) at 13-14, 30; Ex. 6 (RSI's First Supp. Ex. 1A-3 to Resps. to Interrogs. 20-22).)  These installations, which Rimini maintains on its computer systems, are referred to as "environments."  (SUF #5, at 2.)

Rimini's central defense in this action is that its infringement of Oracle software and support materials is authorized by the licenses between Oracle and Rimini Street's customers. (RSI Answer & Counterclaims ¶ 3, at 2.)  As Rimini's counsel has argued, "the first question . . . asked is are these consumers allowed to do, within the scope of their licenses, what they're asking Rimini to do?" (Ex. 1 (Status Conf. Tr., March 29, 2011) at 22:23-23:1.)  Rimini's counsel represented in open court that Rimini is "very meticulous about making sure that they did exactly what that consumer has a license to do." (*Id.* at 23:14-16.)

Oracle has challenged Rimini's license defense in its summary judgment motion filed on March 30, 2012.  As its motion shows, the agreements between Oracle and Rimini Street's customers do not authorize copying of the software to serve other customers.  (Oracle's Mot. Partial Summ. Judgment ("Oracle's MSJ"), Mar. 30, 2012, Dkt. 237, at 20-27.)  Oracle will

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  show that Rimini Street routinely cross-used software, which it knew it could not do, including

2  through the commingled software library at issue in this motion.

3  **II.      Rimini Street Anticipated This Lawsuit Before January 2010**

4      Before January 2010, Rimini anticipated that Oracle would bring this lawsuit. █████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████   Indeed, as shown below, Rimini took steps to prepare for litigation while at the

10  same time covering its evidentiary tracks.

11      **A.      In December 2008, Rimini Threatened Oracle with Litigation and Oracle**

12  **Sent a Demand Letter Expressly Demanding Rimini Preserve Evidence**

13      Rimini not only anticipated Oracle's lawsuit, it threatened Oracle first.  On December 3,

14  2008, Rimini's counsel wrote Oracle an eight-page letter alleging that Oracle had violated the

15  antitrust laws, and demanding that it take steps to make it easier for Rimini to copy Oracle's

16  intellectual property.  (Ex. 47 (Dec. 3, 2008 letter from D. Goldfine).)  Rimini warned that

17  without "corrective action," these issues "could lead to a further response from Rimini Street" or

18  "government entities with jurisdiction."  (*Id.* at RSI03206203.)  Rimini's counsel wrote again on

19  December 19, 2008, repeating the same charges and further threatening litigation.  (Ex. 48 (Dec.

20  19, 2008 letter from D. Goldfine).)

21      On December 23, 2008, Oracle responded through counsel, stating that Rimini's

22  allegations of antitrust violations were baseless and explaining that Rimini's massive

23  downloading of Oracle's software and support materials was illegal.  (Ex. 40 (Dec. 23, 2008

24  letter from D. Wall).)  Specifically, Oracle notified Rimini that cross-use was unlawful, writing

25  that Oracle was "deeply concerned that ***the library*** Rimini Street apparently has compiled for the

26  ostensible benefit of XO Communications, which includes material relating to an entire product

27  family not licensed to or in use by XO Communications, has been or ***will be used to support***

28  ***other customers*** in violation of Oracle's copyrights and the licenses under which each of

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    Oracle's customers operates."  (*Id.* at RSI06082602 (emphases added).)  He continued, "There is

2    no other apparent justification for this activity except that Rimini is stockpiling these materials

3    for other, illicit uses."  (*Id.*)

4         Oracle demanded that Rimini cease its automated downloading practices and any cross-

5    use of those materials.  (*Id.*)  It explained that Oracle would "need to fully understand any and all

6    instances in which Rimini Street may have used materials downloaded for one customer to

7    support another" and demanded that Rimini "provide the requisite proof" that it "never used any

8    Oracle intellectual property, whether a download or some or all of any Oracle software

9    environment, to support a different customer."  (*Id.*)

10        Oracle also demanded that Rimini "take all necessary measures to preserve all

11   documents, electronic records, and Support Materials that relate or bear witness to the access to

12   and downloading of Oracle Support Materials that has occurred thus far."  (*Id.* at RSI06082603.)

13   Oracle reiterated its demand that Rimini preserve evidence and again threatened litigation on

14   these bases in a January 16, 2009 letter, noting that if Rimini did not agree it would "presume

15   this is not a matter that can be resolved amicably."  (Ex. 46 (Jan. 16, 2009 e-mail from D. Wall)

16   at RSI03202162.)

17   █ ███████████████████

18   ██████████████████████

19   ████████████████████████████

20   ███████████████████████████

21   ███████████████████████████

22   ████████████████

23   ██████████████████████████

24   ████████████████████████

25   ████████████████████████

26   █████████████

27

28



1

2

3

4

5

**6**      **D.      In September 2009, Ravin Represented to the Court That Rimini Anticipated**

**7**             **Litigation with Oracle**

8      As the Court may be aware, Oracle is currently involved in another litigation involving

9    similar issues.  Rimini's founder and CEO, Seth Ravin, was formerly President of

10    TomorrowNow, which – like Rimini – offered support to companies that used Oracle software.

11    TomorrowNow was purchased by SAP AG, and Oracle brought suit alleging copyright

12    infringement and other claims.  *Oracle USA, Inc. et al. v. SAP AG et al.*, No. 07-cv-01658 (N.D.

13    Cal. filed Mar. 22, 2007) ("*SAP TN*").  SAP has since conceded liability on Oracle's claim of

14    copyright infringement, including infringement occurring during the time Mr. Ravin managed

15    TomorrowNow, and TomorrowNow has pled guilty to criminal copyright infringement and

16    computer fraud.  (Ex. 53 (Trial Stip. and Ord. Regarding Liability (*Oracle USA, Inc., et al. v.*

17    *SAP AG, et al.*, No. 07-cv-01658 (N.D. Cal.), Sep. 13, 2010, Dkt. 866)) at ¶ 1 (stipulating to "all

18    liability on all claims"); Ex. 35 (TomorrowNow Criminal Plea Agreement (*United States v.*

19    *TomorrowNow, Inc.*, No. 11-cr-00642 (N.D. Cal.), Sep. 14, 2011, Dkt. 13)).)

20      In the *SAP TN* case, Oracle sought third-party discovery from Rimini and Ravin.  They

21    opposed, arguing that Oracle's purpose in pursuing evidence from Rimini was not for use in the

22    *SAP TN* case but rather for planned litigation against Rimini.  Specifically, in Ravin's September

23    14, 2009 opposition to Oracle's motion to compel filed in this Court, Ravin asserted that "in

24    2008 and early 2009, Oracle began making threats against Rimini Street concerning a potential

25    claim that Rimini Street infringes Oracle's intellectual property rights."  (Ex. 54 (Ravin and

26    Rimini's Opp. to Oracle's Mot. to Compel (*Oracle USA, Inc. et al. v. SAP AG et al.*, No 09-cv-

27    01591 (D. Nev.), Sep. 14, 2009, Dkt. 26) ("Opp. to Mot. to Compel")) at 3.)  These "threats"

28    were the letters, described above, that emphasized Oracle's concerns regarding illegal cross-use

B O I E S , S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

1  and demanded that Rimini preserve evidence.  Ravin argued that the "true purpose" of the *SAP*

2  *TN* subpoenas to Ravin and Rimini was "pre-complaint discovery" and "pre-litigation discovery"

3  aiming to obtain information for "use in a separate action against Rimini Street."  (*Id.* at 3, 6, 18-

4  19.)

5  **III.   Rimini Created and Used a Central "Software Library" Through at Least**
   **September 2009 and Deleted It in January 2010**

6

7       At the same time that it was acknowledging the threat of litigation to ███████████  the

8  Court – ███████████████████████████████████████████ – Rimini was

9  taking internal steps to cover its tracks.  It announced a slow draw-down in its use of the

10  software library, which Rimini knew violated Oracle's intellectual property rights, and then

11  deleted evidence of what it had done.

12       **A.    Rimini Street Created and Maintained a Centralized, Commingled**
        **Software Library**

13       Consistent with ███████████████  when Oracle filed this suit against Rimini,

14  Rimini responded that it maintained Oracle software and support materials in client-specific

15  "data silos," that Rimini did not physically "co-mingle" such material, and that a centralized

16  "library" of such material "never existed at Rimini Street."  (RSI Answer & Counterclaims ¶ 4,

17  at 2-3.)  Ravin reiterated this position later in 2010 when he was deposed as part of the *SAP TN*

18  case.  Ravin explained that ████████████████████████████████████████

19  ██████████████████████████████████████████████████████

20  ██████████████████████████████████████████████

21  ██████████  (Ex. 13 (Ravin Dep., Jul. 21, 2010) at 321:17-322:3; 326:1-9; 329:24-330:12.)

22       That is false.  Documents later produced by Rimini and subsequent deposition testimony

23  unequivocally show that Rimini created and used a centralized network storage location

24  containing Oracle software and support material that was not in customer-specific "data silos"

25  but rather contained intermingled material obtained from (or ostensibly on behalf of) numerous

26  different customers, or for no customer at all.  These files were jumbled together with no obvious

27  way of identifying the origin of each piece of the software.  Rimini's employees routinely and

28  regularly called it what it was:  the "software library" that Rimini told the Court "never existed."

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   As Rimini employee Krista Williams explained:



11   (Ex. 16 (Williams Dep., Oct. 5, 2011) at 24:24-25:10.)

12       Numerous documents confirm it.

23       As early as mid-2006, Rimini began implementing the library

1    Over time, Rimini continued to build its library.  When Rimini encountered software that

2    was not already in the library, ██████████████████████████████████████

3    ██████████████████████████████████████████████

4    ██████████████████████████████████████████████

5    ██████████████████████████████████████████████

6    ██████████████████████████████████████████████

7    ████████████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████████████████████

10   ████████████████████████████████████████████

11   ██████████████████████████████████████████████████

12   ██████████████████████████████████████████████████

13   ██████████████████████████████████████████████████

14   ██████████████████████████    This, of course, was much more efficient and

15   required much less storage than maintaining duplicate copies of software for each customer in

16   customer-specific "data silos." ██████████████████████████████████

17   ██████████████████████████████████████████████

18   ████████████████████████████████

19   **B.    Rimini Used the Software Library to Build Environments Without
         Regard to the Source of the Materials**

20

21   The library was a source of installation software on Rimini's computer systems that

22   Rimini used to create environments.  If Rimini decided to build an environment from scratch, as

23   opposed to copying ("cloning") an existing environment, Rimini employees would commonly

24   use the software in the software library for that purpose.  In doing so, Rimini employees ██████

25   ██████████████████████████████████████████████

26   ██████████████████████████████████████████████

27   ██████████████████████████████████████████████

28   ████████████████    Further, many of these software-library-built environments were then



B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1  copied in their entirety through a process called "cloning" █████████████

2  ███████████████████████████████████████████████████████████

3  ████████████

4      Rimini employee Krista Williams, who oversaw the PeopleSoft environment team,

5  ███████████████████████████████████████████████

6      █████████████████████████████████████████

7  ██████████████████████████████████████████

8  █████████

9  ████████████

10 █████████████████████████████████████████████████

11 ██████████████████████

12 (*Id.* at 192:20-193:3.)

        C.   **Around September 2009, Rimini Announced a Change in Policy in
             Response to Concerns about Oracle Intellectual Property**

15      In early-to-mid 2009, Rimini undertook a review of its practices with regard to Oracle's

16 intellectual property. ████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 █████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 █████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████

27 █████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A



1

2

3

4

5

6

7

8

9

10

11

12

13    In September 2009, at about the same time that Ravin was arguing to this Court in the

14  *SAP TN* case that Oracle was planning to use his third-party deposition in that case to gather

15  evidence to bring this case against him and Rimini (Ex. 54 (Opp. to Mot. to Compel) at 3),

16  Rimini announced

17

18    There was no reason to announce an end to the use of the software library other than the

19  anticipation of litigation.  (*See, e.g.*, Ex. 15 (Slepko Dep., Dec. 15, 2011) at 43:7-24, 54:9-14,

20  55:12-57:4; Ex. 16 (Williams Dep., Oct. 5, 2011) at 136:18-24.)  To the contrary, Rimini

21  employees wanted to continue to use the library because it was significantly faster and more

22  efficient.

23  ───────────────

24  [2] The exact loc                                                                      007,
    mply

25                    ter, it was changed to "

26  [3] Evidence shows

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A



1

2

3

4

5   Instead, the stated policy change was plainly a result of Rimini's awareness that it was

6   going to be sued by Oracle for cross-using software.  While no witness has expressly admitted it,

7   Brian Slepko, who testified as a Rule 30(b)(6) witness on Rimini's intellectual property policies,

8   was the most forthcoming.  He explained

9

10

11   Rimini's knowledge of the illegality of its conduct, and the likelihood it would be sued, is

12   further confirmed by Rimini's efforts to hide the truth from its clients.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   **D.     In January 2010, Rimini Deleted the Software Library**

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A



## IV.   Rimini Has Attempted to Take Advantage of the Gaps in the Record Created by Its Deletion of the Software Library

Two months later, Rimini told the Court that Oracle software and support materials were stored in client-specific "data silos," were not commingled, and that a commingled software library "never existed" at Rimini.  (RSI's Answer & Counterclaims, Mar. 29, 2010, Dkt. 30 ¶¶ 4, 34, 49.)  Rimini's witnesses initially said the same.  For example, Mr. Chiu (who approved deletion of the software library) testified as follows:



1 ████████████████

2 █████████████████

3 ████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ████████████████████████

7       Eventually, as evidence of the library mounted, Rimini admitted that it held software in

8 locations that were not segregated by customer. ██████████████████████████████

9 ████████████████████████████████████████   Yet, even now, Rimini continues to

10 deny the extent of the library and its use, refusing to admit, for example, that the majority of

11 environments built in 2006, 2007, 2008 and 2009 were built using software from the software

12 library.  (Ex. 7 (RSI's Second Amd. to RFAs 65-68).)

13       Moreover, Oracle propounded interrogatories seeking the contents and uses of the

14 software library.  Rimini's responses do not contain any list of software or otherwise clearly state

15 the contents of the library, but instead merely contain a list of emails and similar documents.

16 (Ex. 4 (RSI's Second Suppl. Resps. to Interrogs. 24-25) at 3-5.)  Oracle moved to compel

17 complete responses.  (Joint CMC St., Nov. 4, 2011, Dkt. 167 at 7-13.)  In opposition, Rimini

18 stated that, "Rimini's responses are as full and detailed as Rimini could provide given the

19 information in its possession, custody, and control," and that "additional information does not

20 exist."  (*Id.* at 13.)  Accordingly, Magistrate Judge Leen granted the motion but only to the extent

21 of requiring Rimini to designate deposition testimony of Krista William as Rule 30(b)(6)

22

23 [4] Mr. Chiu also testified ████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  testimony on these issues because her testimony was "the best answer that [Rimini] can provide"

2  and because "she has what level of detail the corporation has."  (Ex. 2 (Status Conf. Tr., Nov. 8,

3  2011) at 18:9-19:18.)

4          Oracle also propounded interrogatories asking Rimini to identify what software was used

5  to create each of Rimini's environments.  (Ex. 3 (Oracle's Fifth Set of Interrogs., Nos. 20-22) at

6  4-5.)  Rimini's responses admit that Rimini built *some* environments from the commingled

7  software library, but not *which* of them.  ██████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████████

10 █████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████

12 A list of those 143 environments is attached as Schedule A.

13         Further, Rimini has taken every opportunity to undermine the limited evidence it has

14 produced.  For example, Rimini employee J.R. Corpuz was directed to "copy this peoplebooks

15 cd" and "these Maintenance Packs cds" to specified locations in Rimini Street's library ("\\rsi-

16 clsvr01\internal_software\PeopleSoft"), and Mr. Corpuz responded, "these have been uploaded

17 to your specified location."  (Ex. 19 (Mar. 6, 2009 e-mail from K. Williams).)  Yet when

18 deposed, Mr. Corpuz denied the obvious inference from the e-mail – that he had uploaded

19 Oracle's CDs to the "internal_software" folder specified in the email – and instead stated that "I

20 need more information" and that "all the communication wasn't through e-mail. It may have

21 been through some other forms, so I can't -- I don't know." (Ex. 11 (Corpuz Dep., Mar. 15, 2011)

22 at 179:4-181:13.)

23         Finally, Rimini's damages expert has argued that ███████████████████████████████

24 ████████████████████████████████████████████████████████████████████████

25 ████████████████    Specifically, Rimini's experts have opined that █████████████████

26 █████████████████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████████

28 ███████████████████████████████████████████████████████████████

B O I E S , S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1  By comparison, Rimini claimed ▮▮▮▮▮▮▮▮ in revenues just in 2010.  (Ex 28 (RSI

2  Consolidated Financial Stmts. Years Ended Dec. 31, 2010 and 2009) at RSI06339917.)  The

3  accuracy of the ▮▮▮▮▮▮ depends on, among other things, the scope of Rimini's

4  unlawful conduct, including the extent of its use of the software library – what it contained and

5  how frequently it was used.  After all, if the library was vast and Rimini's employees made

6  extensive and efficient use of it, it would take more additional labor to replace it than if the

7  library was limited and its use rare.  This would translate to a substantially different damages

8  figure, even under Rimini's experts' view.

9  **ARGUMENT**

10      "Spoliation is the destruction or significant alteration of evidence, or the failure to

11  preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

12  *In re Nat'l Consumer Mortg., LLC*, 2:10-CV-00930-PMP, 2011 WL 1300540, at *8 (D. Nev.

13  Mar. 31, 2011) (citing *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir.

14  2002)).  "District courts may impose sanctions for spoliation of evidence as part of their inherent

15  power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of

16  cases.'"  *Id* (quoting *In re Napster*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006)).  The policy

17  underlying this power is "the need to preserve the integrity of the judicial process in order to

18  retain confidence that the process works to uncover the truth. . . . The courts must protect the

19  integrity of the judicial process because, '[a]s soon as the process falters . . . the people are then

20  justified in abandoning support for the system.'"  *Pension Comm. of Univ. of Montreal Pension*

21  *Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2010) (alterations in original)

22  (quoting *Silvestri v. General Motors,* 271 F.3d 583, 589 (4th Cir. 2001)).

23      We show, first, that Rimini engaged in spoliation by deleting the contents of the software

24  library after it should have anticipated, and did anticipate, this litigation.  We show, second, that

25  an adverse inference with rebuttable presumptions is an appropriate remedy for this spoliation

26  because lesser sanctions, such as payment of fees and expenses, cannot remedy the significant

27  prejudice to Oracle from Rimini's spoliation.

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

**I.      Rimini Anticipated This Lawsuit Before Deleting the Software Library**

The duty to preserve evidence is triggered not only by actual litigation, but also "extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Morford v. Wal-Mart Stores, Inc.*, 2:09-CV-02251-RLH, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011) (citing *In re Napster,* 462 F. Supp. 2d at 1067). To be "anticipated," litigation simply must be "more than a possibility." *In re Napster*, 462 F. Supp. 2d at 1068; *accord English v. Wal-Mart Stores, Inc.*, No. 10–cv–00080–ECR–VPC, 2011 WL 3496092, at *4 (D. Nev. Aug. 10, 2011); *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 524 (N.D. Cal. 2009); *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1325 (Fed. Cir. 2011). A demand letter threatening litigation, *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005-06 (D. Ariz. 2011), or the general recognition by employees that the company might be sued by a specific plaintiff, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), is sufficient notice to trigger the duty.

Rimini's duty to preserve relevant documents attached well before January 2010, when Rimini deleted the software library. In December 2008 and January 2009, Oracle expressly put Rimini on notice not just of the claims asserted in this litigation, including cross-use of downloaded Oracle software by "stockpiling" a library, but also of Rimini's obligation to preserve relevant evidence. (Ex. 40 (Dec. 23, 2008 letter from D. Wall) (letter from outside litigation lawyer accusing Rimini of gathering a "library" of software that "has been or will be used to support other customers in violation of Oracle's copyrights" and demanding that Rimini "take all necessary measures to preserve" relevant evidence); Ex. 46 (Jan. 16, 2009 letter from D. Wall) (follow-up letter reiterating importance of "evidence preservation demand" and stating that unless Rimini immediately agreed to Oracle's demands, "Oracle will presume this is a not matter that can be resolved amicably").) Indeed, in a filing in this Court, Ravin characterized those letters as "threats" of litigation. (Ex. 54 (Opp. to Mot. to Compel) at 3.)

Thus, Rimini's duty to preserve evidence began no later than January 2009. *See Surowiec*, 790 F. Supp. 2d at 1005-06 (duty to preserve evidence relevant to claims attached when plaintiff sent demand letter); *see also, e.g.*, *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173,

B O I E S , S C H I L L E R & F L E X N E R L L P

O A K L A N D , C A L I F O R N I A

1  174, 177 (1st Cir. 1998) (affirming spoliation sanction where plaintiff "had threatened to sue";

2  "We think it is obvious that a rational jury could conclude that [defendant] was on notice of

3  [plaintiff's] claim."); *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 511 (D. Md.

4  2009) (where a "letter openly threatens litigation, then the recipient is on notice that litigation is

5  reasonably foreseeable and the duty to preserve evidence relevant to that dispute is triggered");

6  *In re Napster*, 462 F. Supp. 2d at 1069 (notice found based on threat of litigation).

7       Not only *should* Rimini have anticipated litigation, it *actually did* anticipate it:



18       •  Rimini's CEO Seth Ravin told the Court that Oracle was seeking discovery in the

19          *SAP TN* case from Ravin and Rimini for "pre-complaint discovery" and "pre-

20          litigation discovery" aiming to obtain information for "use in a separate action

21          against Rimini Street."  (Ex. 54 (Opp. to Mot. to Compel) at 3.)

22       These actions show that in 2009, Rimini knew litigation was "more than a possibility."

23  *See Micron*, 645 F.3d at 1324-25 (evidence, including actions to prepare for litigation, showed

24  duty to preserve was triggered in advance of lawsuit); *In re Napster,* 462 F. Supp. 2d at 1068-69

25  (same); *Houlihan v. Marriott Intern., Inc.*, No. 00-Civ-7439, 2003 WL 22271206, at *2

26  (S.D.N.Y. Sept. 30, 2003) ("Because Defendant made attempts to prepare for litigation itself, the

27  Court finds that it had a duty to preserve evidence in its possession for use by the opposing

28  party."); *Pace v. National R.R. Passenger Corp.*, 291 F. Supp. 2d 93, 98 (D. Conn. 2003)

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1   ("evidence of a state of mind that people were preparing for that litigation . ... supports my

2   conclusion that it was reasonably foreseeable").  Accordingly, Rimini's intentional deletion of

3   the software library in January 2010 was spoliation.

4   **II.      An Adverse Inference Instruction Is an Appropriate Remedy**

5          Where spoliation has been shown, the range of available remedies is broad, but typically

6   courts consider, in order of severity, (1) judgment for the wronged party; (2) preclusion of

7   evidence; (3) adverse inference instructions; and (4) monetary sanctions.  *See, e.g.*, *Surowiec*,

8   790 F. Supp. 2d at 1008.  To determine which sanctions are appropriate, courts consider (1) the

9   degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice

10  suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid

11  substantial unfairness to the opposing party.  *See, e.g.*, *Cont'l Cas. Co. v. St. Paul Surplus Lines*

12  *Ins. Co.*, 265 F.R.D. 510, 533 (E.D. Cal. 2010).  These factors support an adverse inference

13  sanction in this case.

14  **A.      Rimini's Deletion Was Intentional and Willful**

15         "A party's destruction of evidence qualifies as willful spoliation if the party has 'some

16  notice that the documents were *potentially* relevant to the litigation before they were destroyed.'"

17  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation omitted; emphasis in

18  original); *see also Io Group Inc. v. GLBT Ltd.*, C-10-1282 MMC DMR, 2011 WL 4974337, at *5

19  (N.D. Cal. Oct. 19, 2011) ("Litigants are under a duty to preserve 'what [they know], or should

20  know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible

21  evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending

22  discovery request.'") (quoting *Zubulake,* 220 F.R.D. at 217).

23         Rimini was on clear notice that the contents of the software library were centrally

24  relevant to the claims Oracle would assert.  It is hard to conceive of evidence more relevant to a

25  claim for copyright infringement of software than copies of that software on defendant's servers.

26  *See, e.g.*, *KCH Services, Inc. v. Vanaire, Inc.*, No. 05-777, 2009 WL 2216601, at *1 (W.D. Ky.

27  July 22, 2009) (granting sanctions where defendant deleted infringing software and left the

28  plaintiff "bereft of the very subject of the litigation"); *Motorola, Inc. v. Pick*, No. CV 04-2655,

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1   2005 WL 5918849, at *4 (C.D. Cal. May 26, 2005) (granting sanctions in software copyright

2   infringement case where defendant's spoliation made "it impossible to discover what software

3   had been on" a computer).



21          It bears emphasis that Rimini's failure here was not merely to observe while some

22   preexisting, facially-neutral process deleted evidence.  Rather, in this case,

23

24                                    took affirmative steps to have it destroyed.

25

26                                    That is an intentional, affirmative act, at a time

27   when

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

█████████████████████████████████████

It is of no moment that Rimini may offer a reason for the deletion of the evidence, that is, to save storage space.  It is an excuse that could be offered in virtually every case of deleted electronic evidence.  While Oracle respectfully submits that the Court could easily conclude in these circumstances that Rimini's proffered rationale is merely pretextual, and that the true reason for the deletion was to destroy evidence of what Rimini (and Ms. Williams and Mr. Chiu in particular) knew was wrongdoing, no such conclusion is necessary to afford Oracle the relief it seeks.  In this circuit, "a finding of 'bad faith' is not a prerequisite" to an adverse inference sanction; "simple notice of 'potential relevance to the litigation'" suffices.  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).  At the very least, Rimini was on notice that the software library was "*potentially* relevant" to anticipated litigation, and thus Rimini's intentional deletion of the software was "willful" and subject to severe sanctions.  *Leon*, 464 F.3d at 959 (affirming dismissal sanction on this basis); *see also In re Napster*, 462 F. Supp. 2d at 1066 ("A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions.").

### B.    Rimini's Deletion of the Software Library Substantially Prejudices Oracle

The prejudice inquiry "looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case."  *Leon*, 464 F.3d at 959 (alterations in original) (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)).  Prejudice occurs where spoliation requires a party to "'rely on incomplete and spotty evidence' at trial."  *Id* (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).  For instance, the Ninth Circuit has upheld a finding of prejudice where the spoliation "'threatened to distort the resolution' of the case because any number of the 2,200 files could have been relevant to [the party's] claims or defenses, although it is impossible to identify which files and how they might have been used."  *Id.* at 960 (quoting *Wiltec Guam*, 857 F.2d at 604).

"If spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation."  *In re Hitachi Television Optical Block Cases*,

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   No. 08-CV-1746, 2011 WL 3563781, at *6 (S.D. Cal. Aug. 12, 2011) (internal quotations

2   omitted).  Here, Rimini cannot meet that burden for two reasons.

3        First, deletion of the library eliminated unequivocal proof of its complete contents.  If it

4   had not been deleted, Oracle could have examined its contents and shown it held copies of

5   Oracle's copyrighted works.  With that evidence, there would be no dispute that Rimini copied

6   all of those works to that location, and that the location was not segregated into customer-

7   specific "silos."  This would establish affirmative elements of copyright infringement and cut

8   straight to the heart of Rimini's central license defense because the licenses do not authorize

9   copying to serve other clients.  (Oracle's MSJ, Mar. 30, 2012, Dkt. 237, at 20-27.)  This is, of

10  course, why Rimini told this Court and the public that Rimini's "clients' Oracle Software and

11  Support Materials are not physically co-mingled together" and that a central "library has never

12  existed at Rimini Street."  (RSI Answer & Counterclaim ¶ 34 at p. 8; *see also* Ex. 13 (Ravin

13  Dep., Jul 21, 2010) at 321:17-322:3; 326:1-9; 329:24-330:12 ██████████████████████

14  ████████████████████████████  Rimini plainly prejudiced Oracle by destroying the

15  direct, indisputable evidence that Rimini copied Oracle's software in a manner directly contrary

16  to Rimini's central defense.  *See, e.g.*, *KCH Services*, 2009 WL 2216601, at *2 (awarding

17  sanctions where defendant deleted infringing copies of software); *Motorola,* 2005 WL 5918849,

18  at *4 (same).

19        Because Rimini deleted the contents of the software library, Oracle has been forced to

20  piece together evidence of what the library contained from whatever emails and similar

21  documents have been produced, including a handful of screenshots that show *some* information

22  about *some* of the contents of the library at points in time.  By Rimini's own admission, that

23  evidence is incomplete.  (Joint CMC St., Nov. 4, 2011, Dkt. 167 at 13.)  Moreover, Rimini has

24  consistently attempted to undermine the limited evidence that does exist.  For example, as noted

25  above, one email exchange shows Ms. Williams directed employee J.R. Corpuz to copy specific

26  Oracle CDs to the "internal_software" library, to which Mr. Corpuz replied, "these have been

27  uploaded to your specified location." (Ex. 19 (Mar. 6, 2009 e-mail from K. Williams) at

28  RSI00907871-72.)  Yet at his deposition, Mr. Corpuz disputed that he actually copied software

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

1  into the library.  (Ex. 11 (Corpuz Dep., Mar. 15, 2011) at 179:4-181:13.)  This gamesmanship is

2  only possible because Rimini deleted incontrovertible proof that Rimini *did* copy those particular

3  CDs into the software library.  To require Oracle to "rely on incomplete and spotty evidence at

4  trial" is prejudicial.  *Leon*, 464 F.3d at 959.

5       Second, the contents of the software library would have likely revealed additional

6  information about the software's origins and use.  Electronically stored files regularly contain

7  metadata (or "data about data") indicating, among other things, the dates on which the file was

8  created, modified, and accessed.  *See, e.g.*, *E.I. du Pont de Nemours and Co. v. Kolon Industries,*

9  *Inc.*, 803 F. Supp. 2d 469, 487 (E.D. Va. 2011); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 107-

10  08 (E.D. Pa. 2010).  Courts have repeatedly held that destroyed or altered metadata supports a

11  finding of prejudice and the award of sanctions.  *See Philips Electronics N. Am. Corp. v. BC*

12  *Technical*, 773 F. Supp. 2d 1149, 1169 (D. Utah 2011) ("Gasparovich's deletion and overwriting

13  of the files deprives Philips of the ability to analyze metadata that the deleted and overwritten

14  files may have contained in order to assess how, when, and from whom BCT acquired those

15  files."); *see also, e.g.*, *E.I. du Pont de Nemours*, 803 F. Supp. 2d at 506 (awarding sanctions and

16  citing missing metadata from deleted files); *Krumwiede v. Brighton Associates, L.L.C.*, No. 05 C

17  3003, 2006 WL 1308629, at *10 (N.D. Ill. May 8, 2006) (awarding sanctions due to altered

18  metadata).

19       We cannot say exactly what the metadata associated with the software library would have

20  shown because Rimini deleted it.  But it is highly likely to have revealed additional information

21  about the true source of the software and when it was used.  For example, ████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████ – then such data would conclusively disprove Rimini's claim that it copied

26  only software its clients were authorized to copy.  And likewise, the dates specific software in

27  the library was accessed and the specific versions of software contained therein could be

28  correlated with dates on which environments of those specific versions were built, allowing

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
O A K L A N D ,  C A L I F O R N I A

1   Oracle to prove which environments were built from software in the library provided by a

2   different customer. ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████ These are

4   just two examples of "metadata" evidence that are now unavailable to Oracle; the full extent of

5   prejudice to Oracle will never be known due to Rimini's spoliation.

6          Thus, Rimini deleted evidence of (1) the *scope* of the software library, that is, what

7   software was *copied into the library*, and (2) the *extent* to which the library was used, that is,

8   when software was *copied out of the library* and for which customers.  The loss of this proof is

9   prejudicial not just as to liability, but also to Oracle's ability to fully challenge Rimini's experts'

10  claims about damages.  As previously noted, Rimini's experts assert that ████████████████

11  ████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████

13  ██████  The deletion of the software library undermined Oracle's ability to challenge Rimini's

14  experts' low-ball estimate ████████████████████████████████████████████████

15          **C.      Lesser Sanctions Would Be Inadequate**

16          While more severe sanctions could be justified in this case, Oracle only asks the Court to

17  impose an adverse inference sanction:  to permit the fact-finder to infer that the contents of the

18  deleted software library would have supported Oracle's claims, including rebuttable

19  presumptions of specific facts that the deleted evidence likely would have proved.  Such a

20  sanction is supported by "the common sense observation that a party who has notice that a

21  document is relevant to litigation and who proceeds to destroy the document is more likely to

22  have been threatened by the document than is a party in the same position who does not destroy

23  the document."  *Akiona*, 938 F.2d at 161.  Here, "the record shows that [Oracle] has in fact lost

24  the ability to present some relevant evidence as a result of the actions taken by [Rimini]

25  employees discussed herein. [I]t is necessary to sanction [Rimini] for partially compromising,

26  and thus limiting, [Oracle's] ability to present its case.  The most effective way to do that is by

27  way of an instruction to the jury. . .  The jury then should be allowed to infer that the

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  unrecoverable deleted information would be helpful to [Oracle] and harmful to [Rimini]." *E.I.*

2  *du Pont de Nemours*, 803 F. Supp. 2d at 509; *see also Leon*, 464 F.3d at 959.

3     All that need be shown for an adverse inference remedy is "(1) that the party having

4  control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the

5  records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was

6  relevant to the party's claim or defense such that a reasonable trier of fact could find that it

7  would support that claim or defense." *In re Napster*, 462 F. Supp. 2d at 1078.   As shown above,

8  Oracle has satisfied those requirements by proving that Rimini intentionally deleted the software

9  library after anticipating this lawsuit, and that the library was centrally relevant to the claims and

10  defenses in this litigation.

11     The only lesser sanction, monetary payment, is insufficient because it would still leave

12  Oracle to "rely on incomplete and spotty evidence at trial." *Leon*, 464 F.3d at 959.  An "adverse

13  inference should serve the function, insofar as possible, of restoring the prejudiced party to the

14  same position he would have been in absent the wrongful destruction of evidence by the

15  opposing party." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  Even if the

16  adverse inference instruction were to put Oracle in a "more advantageous position than if

17  [Rimini] had never destroyed evidence to begin with, the inference is nevertheless appropriate,

18  as it places the risk of an erroneous judgment on the party that wrongfully created the risk." *Io*

19  *Group*, 2011 WL 4974337, at *8 (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779

20  (2d Cir. 1999)).

21     Indeed, courts regularly impose adverse inference sanctions in factually similar cases,

22  where a party has deleted electronic files that would help prove the extent of copyright

23  infringement.  For instance, in *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409

24  (S.D.N.Y. 2009), the court imposed an adverse inference instruction against a file-sharing

25  website for deleting usage data and digital music files.  It explained,

26     The primary harm caused by Defendants' spoliation of evidence is the difficulty Plaintiffs
       now face in demonstrating the volume of infringement that may have occurred on
27     Defendants' system. This information is relevant to assessing the extent to which
       Defendants' service is or has been used for infringing purposes . . .
28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1  *Id.* at 443.  Accordingly, the court imposed an adverse inference sanction as to specific factual

2  contentions and prohibited the defendant from challenging statistical evidence of infringement.

3  *Id.*  Likewise, in *Io Group*, the defendants deleted digital files that likely contained plaintiffs'

4  copyrighted audiovisual works, and the court imposed an adverse inference sanction, including

5  that defendants' websites contained material that "infringed Plaintiffs' copyrights" and that

6  "Defendants did not take steps to remove Plaintiffs' infringing material."  2011 WL 4974337, at

7  *7-*8; *accord Advantacare Healthcare Partners LP v. Access IV*, No. 03-04496, 2004 WL

8  1837997, at *7-*8 (N.D. Cal. Aug. 17, 2004) (deleted evidence led to presumption that defendant

9  "copied every file" on the [plaintiff's] system"); *see also Rogers v. T.J. Samson Cmty. Hosp.*,

10  276 F.3d 228, 232 (6th Cir. 2002) ("it is proper for the trial court to create a rebuttable

11  presumption that establishes the missing elements of the plaintiff's case that could only have

12  been proved by the availability of the missing evidence") (citation omitted); *LaJocies v. City of*

13  *North Las Vegas*, No. 08-00606, 2011 WL 1630331, at *3 (D. Nev. Apr. 28, 2011) (awarding

14  adverse inference sanction instructing jury what destroyed videotape and photographs would

15  have shown).

16       For the same reasons, an adverse inference sanction is appropriate here, so that the fact-

17  finder may infer that the deleted material would have supported Oracle's claims.  In addition to

18  this general instruction, the sanction should include rebuttable presumptions of two sets of facts.

19  First, the fact-finder should presume at summary judgment and trial that Rimini copied into the

20  software library a complete copy of each of Oracle's registered works corresponding to the

21  names of the folders that Rimini deleted in January 2010.  This remedy is appropriate because it

22  is consistent with the available evidence of what Rimini deleted (Ex. 50 (screenshot of \\rsi-

23  cisvr01\client_software\PeopleSoft); Ex. 16 (Williams Dep., Oct. 5, 2011) at 33:2-33:19 (library

24  of applications "complete" to "the best of my recollection")) and because Rimini claims that it

25  lacks records of the detailed contents of the library (Joint CMC St., Nov. 4, 2011, Dkt. 167 at

26  13).  Any uncertainty about the contents of the library was created by Rimini's deletion, so it

27  should be resolved against Rimini.  *E.g., Io Group*, 2011 WL 4974337, at *8.  A list of each of

28  the registered works subject to the presumption is shown below.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

| Deleted Folder Name (Ex. 50 (RSI06276320)) | Corresponding Registered Oracle Work (Complaint ¶ 75) |
|---|---|
| CRM 8.8 | PeopleSoft Customer Relationship Management Version 8.8 |
| CRM 8.9 | PeopleSoft Customer Relationship Management Version 8.9 |
| EPM 8.8 | PeopleSoft Electronic Performance Management Version 8.8 |
| EPM 8.9 | PeopleSoft Electronic Performance Management Version 8.9 |
| FSCM 8.4 SP2 | PeopleSoft Financials and Supply Chain Management Version 8.4 Service Pack 2 |
| FSCM 8.8 SP1 | PeopleSoft Financials and Supply Chain Management Version 8.8 Service Pack 1 |
| FSCM 9 | PeopleSoft Financials and Supply Chain Management Version 9 |
| HRMS 8 SP1 | PeopleSoft Human Resources Management System Version 8 Service Pack 1 |
| HRMS 8.3 SP1 | PeopleSoft Human Resources Management System Version 8.3 Service Pack 1 |
| HRMS 8.8 SP1 | PeopleSoft Human Resources Management System Version 8.8 Service Pack 1 |
| HRMS 8.9 | PeopleSoft Human Resources Management System Version 8.9 |
| HRMS 9.0 | PeopleSoft Human Resources Management System Version 9.0 |
| PeopleBooks | Each of the separately registered versions of PeopleBooks alleged in this action[5] |
| PT 8.21 | PeopleTools Version 8.21 |
| PT 8.22 | PeopleTools Version 8.22 |
| PT 8.42 | PeopleTools Version 8.42 |
| PT 8.45 | PeopleTools Version 8.45 |
| PT 8.46 | PeopleTools Version 8.46 |
| PT 8.47 | PeopleTools Version 8.47 |

23
24
25
26
27
28

[5] That is, PeopleSoft 8 HRMS PeopleBooks; PeopleSoft 8 Financials and Supply Chain Management PeopleBooks; PeopleSoft 8 Customer Relationship Management PeopleBooks; PeopleSoft 8 Promotions Management, Collaborative Supply Management, eRFQ, Supplier Connection, and Supply Chain Portal Pack PeopleBooks; PeopleSoft 8 FIN/SCM SPI PeopleBooks; PeopleSoft 8 Student Administration Solutions PeopleBooks; PeopleSoft 8.3 HRMS PeopleBooks; PeopleSoft 8.3 Enterprise Performance Management PeopleBooks; PeopleSoft 8.1 Customer Relationship Management PeopleBooks; PeopleTools 8.4 PeopleBooks; PeopleSoft 8.4 Financials and Supply Chain Management PeopleBooks; and PeopleSoft 8.4 Customer Relationship Management PeopleBooks.  (Complaint ¶ 65.)

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

| Deleted Folder Name (Ex. 50 (RSI06276320)) | Corresponding Registered Oracle Work (Complaint ¶ 75) |
|---|---|
| PT 8.48 | PeopleTools Version 8.48 |
| PT 8.49 | PeopleTools Version 8.49 |

Second, the fact-finder should presume at summary judgment and trial that each of the 143 PeopleSoft environments (*i.e.*, installed copies of PeopleSoft software) that Rimini's interrogatory responses say were "built" were actually built using materials in the software library. This remedy is appropriate because ██████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████ Given that Rimini wrongfully deleted the best available proof on that point, fairness requires that any uncertainty on the source of the software favor Oracle, not Rimini. The environments subject to this rebuttable presumption are listed in attached Schedule A.

## CONCLUSION

For the foregoing reasons, Oracle respectfully requests the Court enter an order finding that Rimini engaged in spoliation by deleting the software library after anticipating this litigation, and awarding an adverse inference sanction.

DATED:  May 30, 2012                BOIES SCHILLER & FLEXNER LLP


By: /s/ *Kieran P. Ringgenberg*
        Kieran P. Ringgenberg
        Attorneys for Plaintiffs
        Oracle USA, Inc., Oracle America, Inc.,
        and Oracle International Corp.

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# SCHEDULE A
# FILED UNDER SEAL

BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

Attorneys for Oracle USA, Inc., Oracle
America, Inc., and Oracle International
Corporation

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC. a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-00106-LRH-PAL <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION** <br><br> **REDACTED** |

1    **[PROPOSED] ORDER**

2        Pending before this Court is Plaintiffs Oracle USA, Inc., Oracle America, Inc., and

3    Oracle International Corporation's (collectively "Oracle") Motion for Evidentiary Sanctions for

4    Spoliation against Defendants Rimini Street, Inc. and Seth Ravin (together, "Rimini") [Docket

5    No. ___].  After full consideration of the moving and opposing papers of each party, the

6    arguments of counsel, and all other matters presented to the Court, the motion is GRANTED.

7        In January 2010, ███████████████████████████████████████

8    ████████████████████████████████████████ the contents of a Rimini network

9    location known as the "software library."  The evidence shows that Rimini employees copied

10   into the software library a wide array of PeopleSoft software and support materials, and later

11   copied those same materials from the library to create installed copies of PeopleSoft software,

12   referred to as "environments."  The software library was not segregated in customer-specific

13   "data silos" but was instead organized by product and version. ████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████

16       The Court has inherent authority to impose sanctions for spoliation, including for the

17   destruction of evidence relevant to reasonably foreseeable litigation.  *In re Nat'l Consumer*

18   *Mortg., LLC*, 2:10-CV-00930-PMP, 2011 WL 1300540, at *8 (D. Nev. Mar. 31, 2011) (citing

19   *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002)).  The duty to

20   preserve evidence "extends to the period before litigation when a party should reasonably know

21   that evidence may be relevant to anticipated litigation."  *Morford v. Wal-Mart Stores, Inc.*,

22   2:09-CV-02251-RLH, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011) (citing *In re Napster*,

23   462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)).

24       Here, Rimini should have anticipated and did anticipate this litigation prior to the January

25   2010 deletion of the software library.  In December 2008 and January 2009, counsel for Oracle

26   sent letters to Rimini warning of claims of copyright infringement, including through the

27   maintenance of a centralized "library" of Oracle software used to support multiple customers,

28   and in a September 2009 filing in this Court, Rimini acknowledged that these letters were threats

1   of litigation.  Moreover, in that filing, Rimini argued that Oracle was preparing litigation against

2   Rimini. ███████████████████████████████████████████████████████

3   ██████████████████████████████ These facts demonstrate that Rimini should have, and did,

4   anticipate this litigation, and thus it was under a duty to preserve evidence.  *See Surowiec v.*

5   *Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005-06 (D. Ariz. 2011) (written threat of

6   litigation triggered duty in advance of lawsuit); *Goodman v. Praxair Services, Inc.*, 632 F. Supp.

7   2d 494, 511 (D. Md. 2009) (where a "letter openly threatens litigation, then the recipient is on

8   notice that litigation is reasonably foreseeable and the duty to preserve evidence relevant to that

9   dispute is triggered"); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)

10  (defendants' recognition of possible suit triggered duty in advance of litigation); *In re Napster*,

11  462 F. Supp. 2d at 1068-69 (evidence, including actions to prepare for litigation, showed duty to

12  preserve in advance of lawsuit); *see also Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1325

13  (Fed. Cir. 2011).  Accordingly, the January 2010 deletion of the software library was spoliation

14  in violation of Rimini's duty to preserve evidence.

15       To determine which sanctions are appropriate for Rimini's spoliation, courts consider (1)

16  the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice

17  suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid

18  substantial unfairness to the opposing party.  *See, e.g.*, *Cont'l Cas. Co. v. St. Paul Surplus Lines*

19  *Ins. Co.*, 265 F.R.D. 510, 533 (E.D. Cal. 2010).

20       First, Rimini is at fault.  Its deletion of the library was "willful" because Rimini

21  undertook an affirmative act after Rimini had "some notice that the documents were *potentially*

22  relevant to the litigation."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation

23  omitted; emphasis in original).  That is a more than adequate basis for an award of evidentiary

24  sanctions.  *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)

25       Second, the deletion prejudiced Oracle.  Oracle contends that Rimini's creation and use

26  of the software library supports its claim for copyright infringement and rebuts Rimini's license

27  defense because, Oracle asserts, the customer licenses on which Rimini depends do not authorize

28  use of software from one customer to support a different customer.  Indeed, Rimini specifically

1   pled in this case that it maintained clients' Oracle software and support materials in customer-

2   specific "data silos", that its clients' Oracle software and support materials were not "physically

3   co-mingled together," and that a centralized "library" of Oracle software and support material

4   "never existed at Rimini Street."  (Dkt. 153 at 2-3.)

5       Furthermore, in discovery, Oracle propounded a number of interrogatories directed at

6   these issues, including the contents of the software library and how it was copied, and moved to

7   compel responses to certain of the interrogatories.  Rimini claimed to be unable to respond

8   completely due to lack of available information, including (1) the contents of the software library

9   and (2) which of Rimini's local installed copies of PeopleSoft software, i.e., environments, were

10  built using the software library. ███████████████████████████████

11  ███████████████████████████████████████████████████████

12  ███████████████████████████   As a result, on these key points, Oracle will have to "rely

13  on incomplete and spotty evidence at trial," which supports an adverse inference sanction.  *Leon*,

14  464 F.3d at 959 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348

15  (9th Cir. 1995)).

16      Third, the sanction Oracle seeks – an adverse inference instruction – is the appropriate

17  remedy in these circumstances.  *See, e.g.*, *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.

18  1991); *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 803 F. Supp. 2d 469, 487

19  (E.D. Va. 2011); *Advantacare Healthcare Partners LP v. Access IV*, No. 03-04496, 2004 WL

20  1837997, at *7-*8 (N.D. Cal. Aug. 17, 2004).  Mere payment of fees and expenses would leave

21  Rimini with the advantage in this litigation created by its willful deletion of relevant evidence.

22  And even if the sanction were to put Oracle in a "more advantageous position than if [Rimini]

23  had never destroyed evidence to begin with, the inference is nevertheless appropriate, as it places

24  the risk of an erroneous judgment on the party that wrongfully created the risk."  *Io Group Inc. v.*

25  *GLBT Ltd.*, C-10-1282 MMC DMR, 2011 WL 4974337, at *8 (N.D. Cal. Oct. 19, 2011) (citing

26  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

27      Accordingly, IT IS HEREBY ORDERED THAT, an adverse inference sanction is

28  appropriate.  For summary judgment purposes, Rimini's January 2010 deletion of the software

library shall be deemed evidence that supports Oracle's claims and does not support Rimini's defenses, and each of the two sets of facts listed below shall be presumed to be true, subject to rebuttal by Rimini.  In addition, at any trial, the jury shall be instructed that it may infer from Rimini's January 2010 deletion of the software library that the contents of the software library would have supported Oracle's claims and would not have supported Rimini's defenses. Moreover, the jury shall be instructed to presume the following two sets of facts to be true, subject to rebuttal by Rimini.

1. The software library included a complete copy of each of Oracle's registered works corresponding to the names of the folders at the time of the deletion, including each of the following:

| Deleted Folder Name (Ex. 50 (RSI06276320)) | Corresponding Registered Oracle Work (Complaint ¶ 75) |
| --- | --- |
| CRM 8.8 | PeopleSoft Customer Relationship Management Version 8.8 |
| CRM 8.9 | PeopleSoft Customer Relationship Management Version 8.9 |
| EPM 8.8 | PeopleSoft Electronic Performance Management Version 8.8 |
| EPM 8.9 | PeopleSoft Electronic Performance Management Version 8.9 |
| FSCM 8.4 SP2 | PeopleSoft Financials and Supply Chain Management Version 8.4 Service Pack 2 |
| FSCM 8.8 SP1 | PeopleSoft Financials and Supply Chain Management Version 8.8 Service Pack 1 |
| FSCM 9 | PeopleSoft Financials and Supply Chain Management Version 9 |
| HRMS 8 SP1 | PeopleSoft Human Resources Management System Version 8 Service Pack 1 |
| HRMS 8.3 SP1 | PeopleSoft Human Resources Management System Version 8.3 Service Pack 1 |
| HRMS 8.8 SP1 | PeopleSoft Human Resources Management System Version 8.8 Service Pack 1 |
| HRMS 8.9 | PeopleSoft Human Resources Management System Version 8.9 |
| HRMS 9.0 | PeopleSoft Human Resources Management System Version 9.0 |
| PeopleBooks | Each of the separately registered versions of PeopleBooks alleged in this action |

4

| Deleted Folder Name (Ex. 50 (RSI06276320)) | Corresponding Registered Oracle Work (Complaint ¶ 75) |
|---|---|
| PT 8.21 | PeopleTools Version 8.21 |
| PT 8.22 | PeopleTools Version 8.22 |
| PT 8.42 | PeopleTools Version 8.42 |
| PT 8.45 | PeopleTools Version 8.45 |
| PT 8.46 | PeopleTools Version 8.46 |
| PT 8.47 | PeopleTools Version 8.47 |
| PT 8.48 | PeopleTools Version 8.48 |
| PT 8.49 | PeopleTools Version 8.49 |

2.  Each of the 143 installed copies of PeopleSoft software, *i.e.*, environments, listed below as identified in Rimini interrogatory responses, was created by copying PeopleSoft software contained in the software library, which was not obtained from or on behalf of the client associated with the environment.



Case No. 2:10-cv-00106-LRH-PAL

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



Case No. 2:10-cv-00106-LRH-PAL

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



Case No. 2:10-cv-00106-LRH-PAL

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



Case No. 2:10-cv-00106-LRH-PAL

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



11

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



Case No. 2:10-cv-00106-LRH-PAL

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



Case No. 2:10-cv-00106-LRH-PAL

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



IT IS SO ORDERED.

DATED:_____          By:_____
                                    United States District Judge

[PROPOSED] ORDER GRANTING MOTION TO FOR EVIDENTIARY SANCTIONS FOR SPOLIATION