# EXHIBIT 45
# FILED UNDER SEAL

# EXHIBIT 46

Daniel M. Wall
Direct Dial: (415) 395-8240
dan.wall@lw.com

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Munich |
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Doha | Orange County |
| Dubai | Paris |
| Frankfurt | Rome |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| London | Shanghai |
| Los Angeles | Silicon Valley |
| Madrid | Singapore |
| Milan | Tokyo |
| Moscow | Washington, D.C. |

January 16, 2009

**VIA EMAIL**

Dan W. Goldfine, Esq.
Snell & Wilmer LLP
One Arizona Center
Phoenix, AZ 85004-2202

Re:     Oracle Corporation and Rimini Street, Inc.

Dear Dan:

As you know, I wrote to you on December 23, among other things to demand that Rimini Street cease from any further automated downloading of Oracle support materials. I asked you to respond by January 5, and you subsequently sent me an email advising me that because of the holidays and a family trip your response would be briefly delayed. Then you wrote again this week to say that your response would be further delayed until January 21. I am writing today because while we were waiting for your response, Oracle has experienced additional unauthorized downloading activity from Rimini Street. We take this as the definitive answer to our cease and desist demand.

I am not going to get into all the detail on this latest downloading activity except to say that it involved someone with the email address of "jcorpuz@riministreet.com," and originated from an IP address registered to XO Communications, which we understand is a new Rimini Street customer. That should be sufficient for you to investigate this occurrence. We also want to put you on notice that the way Oracle discovered this suggests that Rimini Street simply changed its downloading tactics after my December 23 letter, accomplishing the same unlawful result in a manner designed to make detection more difficult. If that is true, then it makes the evidence preservation demand in my December 23 letter all the more important.

I cannot emphasize enough that Rimini Street must agree to the demands in my December 23 letter, and it must do so immediately. Otherwise Oracle will presume this is not a matter than can be resolved amicably.

Highly Confidential Information – Attorneys' Eyes Only                    RSI03202162

Dan W. Goldfine, Esq.
January 16, 2009
Page 2

**LATHAM&WATKINS**LLP

Very truly yours,

*Daniel M. Wall*

Daniel M. Wall
of LATHAM & WATKINS LLP

cc:  Jeff Ross

Highly Confidential Information – Attorneys' Eyes Only                    RSI03202163

# EXHIBIT 47



Snell & Wilmer
——— L.L.P. ———
LAW OFFICES

One Arizona Center
Phoenix, AZ 85004-2202
602.382.6000
602.382.6070 (Fax)
www.swlaw.com

DENVER

LAS VEGAS

ORANGE COUNTY

PHOENIX

SALT LAKE CITY

TUCSON

Dan W. Goldfine
602.382.6282
dgoldfine@swlaw.com

December 3, 2008

**VIA EMAIL**

Jeffrey S. Ross
Legal Department
Oracle USA, Inc.
10 Van de Graaf Drive
Burlington, MA  01803

Re:   **Continued Business Interference and Anti-Competitive Practices**

Dear Mr. Ross:

As you will recall, Snell & Wilmer L.L.P. represents Rimini Street, Inc. ("Rimini") as lead counsel for matters involving Oracle Corporation and its acquired entities.

In our June 28, 2007 letter, Rimini brought to Oracle's attention, amongst other issues, serious customer access and downloading impediments relating to Oracle's web portals required for use by Oracle's annual maintenance-paying PeopleSoft, JD Edwards, and Siebel licensees.

It does not appear that Oracle has taken any corrective actions to resolve the issues. In fact, Oracle has expanded the issues with its recent introduction of Oracle's new web portal http://www.metalink3.oracle.com ("MetaLink3/MyOracle Support") which denies Oracle's annual maintenance-paying clients the ability to reasonably identify, catalog, and take delivery of all available program updates, software updates, bug fixes, patches, custom solutions, and instructional documents ("Support Materials") for covered products.

Even accepting that Oracle may have an interest in protecting its intellectual property, the antitrust laws only permit a company to impose the least restrictive means to protect that property.  The new MetaLink3/MyOracle Support web portal far exceeds the least restrictive means to achieving that interest.  Even if the web portal was the least restrictive means, the antitrust laws would still bar Oracle's new web portal because Oracle's imposition of it after its customers and their agents have billions of dollars of sunk costs, if not more, into having access to the Support Materials.

Snell & Wilmer is a member of LEX MUNDI, The Leading Association of Independent Law Firms.

# Snell & Wilmer
## L.L.P.

Jeffrey S. Ross
December 3, 2008
Page 2

The antitrust laws further prohibit a company's pretextual use of intellectual property protection to bar competition. Accepting for argument sake that Oracle can otherwise engage in exclusionary conduct to protect legitimate intellectual property rights, the new web portal is facially and massively overbroad. In this light, Oracle's object of protecting intellectual property rights is not genuine and obviously pretextual. Moreover, as explained below, this object can be more simply *and more effectively* achieved without having the effect of excluding Oracle's customers from engaging in "self-support" and "self-performance" with respect to minor and major upgrades to other currently available software releases. Further, this change – after Oracle's customers have expended substantial sunk costs – is evidence of exclusionary effect and Oracle's anticompetitive intent. This evidence strongly supports antitrust claims based on either a tying or monopolization of an after-market theory.

Oracle maintenance-paying customers have collectively paid Oracle billions of dollars in annual support fees to obtain and be able to use all available "Support Materials," and Oracle has recently taken additional actions to make it potentially impossible for customers to ever obtain or be able to obtain by reasonable means all the Support Materials they have already paid for. Such actions might entitle customers to potentially substantial refunds, damages, and settlements for fraud, false and misleading advertising, or breach of contract claims. Further, Oracle may also be liable to thousands of PeopleSoft licensees for substantial claims related to the PeopleSoft Customer Assurance Program that are triggered by material reductions in support services.

We can only surmise that Oracle preventing annual maintenance-paying customers from being able to reasonably identify, catalog, and take delivery of all available Support Materials for which a customer has already paid substantial sums of money would, from Oracle's position, have a potentially negative impact on its total annual maintenance renewal rates, maintenance revenues, and consulting revenues. Oracle may view a customer's possession of all Support Materials as making it easier for customers to "self-support" their licenses and "self-perform" minor and major upgrades to other currently available software releases.

In addition to the foreclosure effect described above, Oracle's actions appear intended to intimidate Oracle customers from terminating Oracle annual maintenance services that are contractually optional and not required to be purchased by Oracle licensees as a condition of their software license; self-supporting licensed Oracle products; or pursuing the purchase of maintenance services from Rimini Street and/or other third party consultants. Thus, in addition to the antitrust claim arising from the foreclosure effect in the tied maintenance services market as well as a monopolization claim, Rimini Street and/or other third party consultants may have a common law tortious interference with contract and/or business expectancy claim.

Once again, and because of the overwhelming breadth and exclusionary effect of the new web portal, we are bringing this matter to your attention to afford Oracle another opportunity to promptly investigate and resolve the legal issues presented, mitigate potential accrued liabilities,

# Snell & Wilmer
——— L.L.P. ———

Jeffrey S. Ross
December 3, 2008
Page 3

and avoid future potential liabilities. Oracle has both the technological means and resources to assure annual maintenance-paying Oracle licensees can fully exploit their contractual rights while ensuring reasonable, adequate protection of Oracle's intellectual property.

**Impediments to Oracle Annual Support Customers Seeking to Obtain From Oracle Materials for which They Paid**

In consideration of Oracle Annual Support fees paid for listed licensed products, licensees have been and remain entitled to access to and rights to download and use all Support Materials for such licensed products from the start through the end of a pre-paid "Support Period." Oracle terms usually require pre-payment of annual support fees at time of annual contract renewal.

*Issue #1: Annual Support Paying Clients Cannot Properly Identify Each and Every One of the Support Materials They Are Entitled to Obtain and Use*

Although Oracle has full knowledge of the actual licensed products for each licensee and each annual maintenance renewal clearly indicates what licensed products are covered by the support fees, Oracle continues to choose not to utilize this information to help licensees identify all the Support Materials the maintenance-paying licensee is entitled to obtain and use under their Oracle licenses and the annual maintenance agreement.

Instead, Oracle continues to leave its entire intellectual property set available to each and every maintenance-paying licensee with a login and password, regardless of what Support Materials the maintenance-paying licensee is actually entitled to obtain and use. Oracle then claims that full license and intellectual property compliance is solely the responsibility of the maintenance-paying licensee. This is not reasonable or workable since (a) there have been many product name changes and recombination of features and products over the years that make it nearly impossible for a reasonable customer to be 100 percent sure of license compliance and match up to their license agreements; and (b) users of Oracle Support Services are the users of the software products and rarely have access to or have ever seen the legal license agreement which is usually filed away in the customer's legal department and therefore are not 100 percent sure of license compliance with their original license agreement.

Oracle has the technological means to resolve this license ambiguity issue to the benefit of all parties. As an example of one possible solution, Oracle can (a) tag each item on its web portal with metadata that clearly indicates what licensed product or product line is associated with each item, and (b) only display for viewing, selection, and download to the licensee and its representatives those Support Materials where the metadata tag matches the maintenance-paying client's licensed product list and where support fees have been paid for such licensed product.

# Snell & Wilmer
L.L.P.

Jeffrey S. Ross
December 3, 2008
Page 4

As Oracle is the world leader in manufacturing the very software products needed to implement this solution, taking steps (a) and (b) above would be reasonable steps by Oracle that would assure that its intellectual property is being protected by making sure that Oracle intellectual property is only being obtained by those maintenance-paying customers with a right to obtain particular and specific intellectual property that is licensed to them. Clients would immediately benefit by being able to search on Support Materials where the metadata indicates a link to a particular and specific licensed product where maintenance-fees have been paid.

### Issue #2:  Annual Support Paying Clients Cannot Obtain a Catalog of All Support Materials They Are Entitled to Obtain and Use

It remains impossible for a maintenance-paying client to self-identify and produce a full and complete catalog of the Support Materials a maintenance-paying licensee is entitled to obtain and use following payment of support fees, the sufficiency of which is agreed upon with Oracle's acceptance of fees. Oracle claims that it does not have the current technical capability of identifying and producing such a catalog based on each customer's own list of licensed products that are covered under a support agreement. Oracle also claims provision of the catalog is not a service they provide maintenance-paying customers on demand or at any time during their paid Support Period. Therefore, due solely as a result of intentional acts and decisions by Oracle, at this time, neither Oracle nor a maintenance-paying customer have (and never have had) the ability to determine with 100 percent accuracy the catalog of Support Materials that a maintenance-paying customer is entitled to obtain and use of a particular date and time.

Oracle's decision not to provide this catalog of Support Materials impacts (in a negative manner) the framework on which the above-mentioned legal claims are evaluated. Clearly, if Oracle elects to implement a metadata solution on all Support Material items, it could easily develop a search capability that could provide Oracle and licensees a 100 percent accurate catalog of the Support Materials a particular maintenance-paying customer is entitled to obtain and use. That is telling about the pretext that Oracle is undertaking here.

### Issue #3:  Annual Support Paying Clients Cannot Reasonably Obtain All Support Materials They Are Entitled to Obtain and Use

With Issues #1 and #2 above we have established that, due solely to Oracle's intentional acts and decisions, it is impossible today (and previously) for an Oracle maintenance-paying customer to determine with 100 percent certainty all Support Materials it is entitled to obtain and use from Oracle and for which they paid. Without the ability to determine 100 percent what Support Materials a maintenance-paying client is entitled to obtain and use and no active guidance from Oracle, Oracle leaves its maintenance-paying customers on their own to use their best reasonable efforts to identify and catalog the Support Materials each customer believes they may be entitled to obtain and use.

RSI03206206

## Snell & Wilmer
—— L.L.P ——

Jeffrey S. Ross
December 3, 2008
Page 5

A maintenance-paying customer with several products may be entitled to obtain and use tens of thousands or more Support Material items available on Oracle's web portal. Manually identifying which tens of thousands of items in a total of web portal pool of potentially millions of items would require professional labor time of potentially hundreds and thousands of hours. Such labor expenditures and timelines are so extensive and unreasonably burdensome as to assure any reasonable person would conclude that Oracle has, solely through its own intentional acts and decisions, made it virtually impossible to complete such a task manually.

Therefore, if a maintenance-paying customer wishes to attempt to use best efforts to identify, catalog, and obtain all Support Materials they are entitled to obtain and use, the only potential solutions are:

1.    Develop and use automated tools to search the Oracle web portal and make educated, reasonable guesses as to which Support Materials most likely match with the Oracle maintenance-paying customer's licensed product set and then automatically download such items.

2.    Oracle staff can search the Oracle web portal and make educated, reasonable guesses as to which Support Materials most likely match with the Oracle maintenance-paying customer's licensed product set and then deliver the entire set of Support Material electronically or on media.

However, not only does Oracle refuse or otherwise fail to deliver, upon request, all Support Materials for which its Oracle Support Services customers have contracted and paid to access, possess, and use within their license rights, but Oracle has recently attempted to ban the use of any automation tools to assist with the massive, burdensome projects. While Oracle has publicly cited "performance concerns" for their web portal as a result of the use of such tools as the reason for banning their usage, Oracle's letter of October 11, 2007 to Rimini Street clearly stated a different, more troubling explanation for the new policy that indicated the change was anticompetitive behavior.

Historically, maintenance-paying licensees and their contracted agents have had no choice but to resort to automation tools as the only feasible way to try and identify, catalog, and download such a large volume of Support Materials. Maintenance-paying clients who did not invest significant sums of money and technical time to develop such automation tools more than likely are entitled to obtain and use an incalculable number of Support Materials they paid for but have been unable to reasonably identify, obtain, and enjoy the benefits of their purchase.

Beginning in late November 2008, with the move of PeopleSoft, JD Edwards, and Siebel support to the MetaLink3/MyOracle Support web portal, Oracle has escalated its anticompetitive

# Snell & Wilmer
###### L.L.P.

Jeffrey S. Ross
December 3, 2008
Page 6

activities and has made it impossible for Oracle maintenance-paying customers to download any substantial amount of items from its new MetaLink3/MyOracle Support web site in a single login session. According to our experience and subsequently confirmed and documented by Oracle personnel, any attempt to access and download a substantial amount of Support Material items, without any regard to the verification of any actual rights of the customer to the Support Materials, will cause Oracle's network to immediately shutdown the valid login session and automatically block the initiator's valid IP address so that no additional or subsequent login requests are accepted from such IP address.

With Oracle's recent implementation of the ban on the use of automation tools designed to help with the massive, unreasonably costly, and time consuming project of identifying, cataloging, and downloading authorized Support Materials or even allowing long, manual sessions of downloading Support Materials, Oracle no longer provides any reasonable mechanism by which a licensee paying support fees to Oracle can physically obtain what it reasonably believes are all the Support Materials they have paid for and are entitled to obtain, possess, and use.

If Oracle implements and utilizes its own software products, it would be capable of matching the metadata of authorized Support Material items to the maintenance-paying customer's licensed product and supported product lists – assuring control and protection of its intellectual property.

If Oracle has chosen to use data volume measures and session timers to allegedly protect intellectual property, this is invalid. Such measures are completely useless in determining the extent of the intellectual property rights of the downloading party.

If Oracle has chosen to use data volume measures and session timers to allegedly protect its web user population from significant performance degradation, this is invalid. Oracle sells billions of dollars a year in annual maintenance with a ninety percent gross profit margin and claims to manufacture the heaviest-duty database products in the world capable of record performance under heavy loads. If Oracle's web portal performance is unreasonably slow under the heavy load of its customers trying to obtain all of their rightful Support Materials, then Oracle has the capabilities, resources and obligation to increase performance to levels that are acceptable and reasonable under all loads and user conditions.

Unfortunately, based on the information available and Oracle's past comments, it appears that Oracle is simply using such measures to effectively block maintenance-paying customers from identifying, cataloging, and obtaining all the Support Materials they have paid for and are entitled to use under their Oracle agreements.

Snell & Wilmer
——— L.L.P ———

Jeffrey S. Ross
December 3, 2008
Page 7

Until and unless Oracle agrees to indentify, catalog, and package-up on demand of the customer all Support Materials that it reasonably believes a maintenance-paying customer is entitled to obtain and use, Oracle should immediately (a) suspend its "no automation tools" rules, (b) remove session timeout and data volume cutoff thresholds, and (c) provide reasonable extended access for maintenance-paying customers to get all the Support Materials they should have been able to identify, catalog, and obtain while their Oracle maintenance contract was valid and in force.

**Issue #4:** *"Only in Furtherance..." Website Use Term Designed as a Competitive Barrier*

The revised Terms of Use on Oracle's website state that a licensee's "username and password are confidential information and may only be distributed to persons within [licensee's] organization who have a legitimate business purpose for accessing the materials contained on this server in furtherance of [licensee's] relationship with Oracle/PeopleSoft/JDEdwards." To the extent Oracle interprets this language and seeks to enforce this provision in a way that prevents Oracle licensees from enabling their third party agents to access Support Materials on the Oracle customer support websites—on the licensees' behalf and for the purpose of obtaining authorized content—such enforcement activities are clearly anticompetitive and tortious interference with contractual relationships as well as a myriad of claims belonging to the licensee. Moreover, any attempt by Oracle to redefine the terms and scope of a licensee's access to and downloads of authorized Support Materials after that licensee's decision to terminate Oracle Support Services, but during the valid, paid Support Period, would be nothing more than a scheme to deprive the licensee of the Support Materials for which it invested significant resources (to Oracle's benefit).

**Issue #5:** *Annual Support Paying Clients May Be Intimidated Away From Obtaining All Support Materials They Are Entitled to Obtain and Use Because of Support Portal Design and Oracle's Attempt to Make License Compliance 100% Client Responsibility*

Oracle's company-wide policy of attempting to make license and intellectual property compliance 100 percent the sole responsibility of its licensees and customers is not reasonable and creates ambiguity with respect to license rights.

Because Oracle maintenance-paying clients must make educated, reasonable guesses about what Support Materials might be appropriately licensed to them without 100 percent certainty, many clients may be intimidated from trying to identify, catalog, and obtain the Support Materials they have paid for and are legally entitled to use to their benefit.



Jeffrey S. Ross
December 3, 2008
Page 8

It is anticompetitive to intimidate Oracle customers from terminating Oracle annual maintenance services, self-supporting licensed Oracle products, or pursuing the purchase of maintenance services from Rimini Street and/or other third party consultants.

Oracle's failure to take timely corrective action to resolve the above issues could lead to a further response from Rimini Street, government entities with jurisdiction, and/or Oracle's customers.

Sincerely,

SNELL & WILMER L.L.P.

Dan W. Goldfine

cc:   Daniel Wall, Latham & Watkins (*via e-mail and facsimile*)
      Board of Directors, Rimini Street, Inc. (*via e-mail*)

9321342

Confidential Information                                    RSI03206210

# EXHIBIT 48

Dan W. Goldfine
602.382.6282
dgoldfine@swlaw.com

December 19, 2008

Daniel Wall, Esq.
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111

Re:   **Continued Business Interference and Anti-Competitive Practices**

Dear Dan:

This is a follow-up to Rimini Street, Inc.'s ("Rimini") December 3, 2008 letter and letters from 2007 as well as our recent discussions.  In particular, on December 10, 2008, you and I discussed Rimini's allegations that Oracle Corporation ("Oracle") is engaging in wrongful conduct and whether Oracle's intent was to effectively block Oracle's licensees and their authorized agents from obtaining all the support materials that Oracle is contractually obligated to provide its licensees who have paid significant fees to obtain and use such support materials.

You and I agreed that it might be in both parties' interests for you to confer with your client and clarify Oracle's intent.

You informed me that you anticipated that you would be able to get back to me by December 12, 2008.  That did not occur.  I attempted to reach you by phone and email during the week of December 15th, reaching you on December 17, 2008.  You indicated that your client had not responded to your inquiries and that you would follow-up immediately.  As of the date of this letter, you have not gotten back to me with Oracle's response to the allegations or my offer to try and amicably and quickly resolve the matter so all parties can return to conducting their business without disruption.

Given Rimini's continued offers of willingness to work cooperatively with Oracle for the benefit of their mutual clients, it could be reasonable to infer by the lack of response to the serious allegations that Oracle's intent is to purposely engage in the wrongful and illegal conduct identified in my December 3, 2008 letter.

The ramifications of Oracle's conduct are severe and immediate for Oracle licensees whose contract rights are being abridged, and Oracle's conduct has forced Rimini to head down a

Confidential Information                                                  RSI03206928

Daniel Wall, Esq.
December 19, 2008
Page 2

path that seems counterproductive to Oracle's overall business goals.  If Rimini or I have
misunderstood Oracle's intent in this matter, please commence remedial steps immediately and
contact me so I can, if necessary, arrange a meeting and hopefully avoid having to take any
additional steps to remedy Oracle's wrongful and illegal conduct.

                              Very truly yours,

                              Snell & Wilmer


                              Dan W. Goldfine



cc:    Jeffrey S. Ross
       Jennifer Gloss

9361864

Confidential Information                                                    RSI03206929

# EXHIBIT 49
# FILED UNDER SEAL

# EXHIBIT 50
# FILED UNDER SEAL

# EXHIBIT 51
# FILED UNDER SEAL

# EXHIBIT 52
# FILED UNDER SEAL

# EXHIBIT 53

1   BINGHAM McCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone: (415) 393-2000
    Facsimile:  (415) 393-2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   BOIES, SCHILLER & FLEXNER LLP
    DAVID BOIES (Admitted *Pro Hac Vice*)
10  333 Main Street
    Armonk, NY 10504
11  Telephone: (914) 749-8200
    Facsimile: (914) 749-8300
12  dboies@bsfllp.com
    STEVEN C. HOLTZMAN (SBN 144177)
13  1999 Harrison St., Suite 900
    Oakland, CA 94612
14  Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
15  sholtzman@bsfllp.com

16  DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
17  500 Oracle Parkway, M/S 5op7
    Redwood City, CA  94070
18  Telephone:  (650) 506-4846
    Facsimile:  (650) 506-7114
19  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
20

21  Attorneys for Plaintiffs
    Oracle USA, Inc. *et al*.

    Robert A. Mittelstaedt (SBN 060359)
    Jason McDonell (SBN 115084)
    Elaine Wallace (SBN 197882)
    JONES DAY
    555 California Street, 26th Floor
    San Francisco, CA  94104
    Telephone:    (415) 626–3939
    Facsimile:    (415) 875–5700
    ramittelstaedt@jonesday.com
    jmcdonell@jonesday.com
    ewallace@jonesday.com

    Tharan Gregory Lanier (SBN 138784)
    Jane L. Froyd (SBN 220776)
    JONES DAY
    1755 Embarcadero Road
    Palo Alto, CA  94303
    Telephone:    (650) 739–3939
    Facsimile:    (650) 739–3900
    tglanier@jonesday.com
    jfroyd@jonesday.com

    Scott W. Cowan (Admitted *Pro Hac Vice*)
    Joshua L. Fuchs (Admitted *Pro Hac Vice*)
    JONES DAY
    717 Texas, Suite 3300
    Houston, TX  77002
    Telephone:    (832) 239–3939
    Facsimile:    (832) 239–3600
    swcowan@jonesday.com
    jlfuchs@jonesday.com

    Attorneys for Defendants
    SAP AG, SAP AMERICA, INC., and
    TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*, | No. 07-CV-01658 PJH (EDL) |
| Plaintiffs, | **TRIAL STIPULATION AND [~~PROPOSED~~] ORDER NO. 1 REGARDING LIABILITY, DISMISSAL OF CLAIMS, PRESERVATION OF DEFENSES, AND OBJECTIONS TO EVIDENCE AT TRIAL** |
| v. | |
| SAP AG, *et al.*, | |
| Defendants. | |

1    Pursuant to Local Rule 7-12, Plaintiffs Oracle USA, Inc., Oracle International

2  Corporation and Siebel Systems, Inc. ("Plaintiffs" or "Oracle") and Defendants TomorrowNow,

3  Inc. ("TN"), SAP AG and SAP America, Inc. ("SAP"; and, together with TN, "Defendants";

4  and, all together with Oracle, the "Parties"), jointly submit this Trial Stipulation and [Proposed]

5  Order regarding liability, dismissal of certain claims, the preservation of certain defenses,

6  objections to evidence at trial, and the length of the Parties' evidentiary presentations and

7  arguments.

8    The Parties agree that the terms of this stipulation shall not be binding or effective

9  unless and until the Court accepts the stipulated terms in their entirety.  The Parties reserve the

10  right to withdraw agreement to any or all terms if the Court chooses not to accept any term.

11    NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE,

12  through their respective counsel of record, as follows:

13    **TRIAL STIPULATION AND PROPOSED ORDER**

14    1.    TN stipulates to all liability on all claims (preserving no defenses,

15  including any raised on summary judgment, but retaining all defenses to damages as described in

16  paragraph 5 below).  TN therefore stipulates to all liability on Oracle's claims for copyright

17  infringement, violations of the Federal Computer Fraud and Abuse Act and California's

18  Computer Data Access and Fraud Act, breach of contract, intentional interference, negligent

19  interference, unfair competition, trespass to chattels, unjust enrichment/restitution and an

20  accounting.  SAP will not contend that Oracle has failed to prove indirect liability as to SAP due

21  to a failure of proof against TN.

22    2.    SAP stipulates to vicarious liability on the copyright claims against TN in

23  their entirety (preserving no defenses, including any raised on summary judgment, but retaining

24  all defenses as to damages as described in  paragraph 5 below) and agrees to guarantee payment

25  of any judgment awarded against TN or SAP.

26    3.    Oracle dismisses with prejudice all claims against SAP except for indirect

27  copyright infringement and except as to any right to appeal any rulings made by the trial court

28  (e.g., saved development costs as a basis for unjust enrichment), which Oracle preserves for all

07-CV-01658 PJH (EDL)

1   purposes.  Oracle therefore retains claims against SAP for contributory copyright infringement,

2   to which SAP retains all pleaded defenses, including as described in  paragraph 5 below, at the

3   trial scheduled for November 1, 2010.

4            4.       The Parties envision that the jury will be instructed, and the jury verdict

5   form will reflect, that the Parties have stipulated to liability for certain claims against TN and

6   SAP as set forth in  paragraphs 1 and 2 above (which the parties may refer to at any time during

7   trial).  Subject only to the trial time limits set forth in  paragraph 8 below, the Parties may present

8   evidence at trial related to the stipulated claims as background or context for the stipulated

9   claims, and/or as relevant to damages or other claims and defenses not stipulated to or dismissed

10  by the Parties.  The Parties will not object to evidence related to the stipulated claims pursuant to

11  Federal Rules of Evidence 401-403 (including that the evidence is irrelevant, cumulative, unduly

12  time consuming or prejudicial) on grounds that the evidence relates to the stipulated claims.

13  Oracle may not argue to the Court, jury or public that SAP is in fact liable on claims that Oracle

14  agrees to dismiss under paragraph 3, or not pursue under paragraph 7, and SAP may not argue to

15  the Court, jury or public that either (i) TN in fact is not liable on claims stipulated under

16  paragraph 1, or (ii) SAP in fact is not liable on the basis of vicarious liability as stipulated under

17  paragraph 2.

18           5.       SAP and TN retain all defenses to the alleged causation, fact or amount of

19  or entitlement to disgorgement, actual or punitive damages or any other legal or equitable

20  remedy.  For example, on some claim as to which TN had elected not to contest liability, it may

21  still argue that a particular remedy is not available.

22           6.       The Parties preserve their rights to appeal any judgment against them

23  except as to issues or claims to which they have stipulated.

24           7.       Punitive damages remain in the case as to TN.  Oracle agrees not to seek

25  punitive damages against SAP in this case, provided, however, that Oracle may enforce SAP's

26  guarantee to pay any award of punitive damages against TN.

27           8.       The length of trial is shortened to 36 hours per side for presentation of

28  testimony and argument to the jury.

1    9.    Defendants agree to entry of an injunction enjoining TN from:

2    (1) infringing Oracle's copyrights in Oracle's PeopleSoft-branded enterprise application

3    software, J.D. Edwards-branded enterprise application software, Siebel-branded enterprise

4    application software, and Oracle's Relational Database Management System software, and

5    related support products; (2) accessing any password-protected Oracle website in any way not

6    compliant with the Terms of Use for that website or with the customer license associated with

7    the log-in credential being used; (3) using any automated downloading program (including Titan,

8    spiders, bots, crawlers and scrapers) on any Oracle website; and (4) interfering with Oracle's

9    customers by offering support for their Oracle products using software or downloads obtained

10   from a different customer generally directed at the stipulated conduct.

11    10.    The Parties reach this stipulation for purposes of this action only, and this

12   stipulation has no force or effect in any other proceeding or jurisdiction.

13    **IT IS SO STIPULATED.**

14   DATED:  September 9, 2010        BINGHAM McCUTCHEN LLP

15                        By:_____/s/ Geoffrey M. Howard_____

16                            Geoffrey M. Howard
                              Attorneys for Plaintiffs
17                          Oracle USA, Inc., Oracle International
                            Corporation and Siebel Systems, Inc.
18
       In accordance with General Order No. 45, Rule X, the above signatory attests that
19
     concurrence in the filing of this document has been obtained from the signatory below.
20
21   DATED:  September 9, 2010        JONES DAY

22                        By:_____/s/ Jason McDonell_____

23                            Jason McDonell
                              Attorneys for Defendants
24                          SAP AG, SAP America, Inc., and
                              TomorrowNow, Inc.

25   **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

26   Dated: _September 13_____, 2010

27                        _____

28                              Phyllis J. Ha
                              United States Di

3

# EXHIBIT 54

AARON D. FORD, Esq. NSBN 7704
aford@swlaw.com
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5265
Facsimile: (702) 784-5252

JONATHAN M. JACOBSON, Esq. (admitted *pro hac vice*)
jjacobson@wsgr.com
MICHAEL B. LEVIN, Esq. (admitted *pro hac vice*)
mlevin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Non-Parties
Seth Ravin and Rimini Street, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC, a Colorado Corporation, *et. al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SAP AG, a German corporation, *et. al.*,<br><br>Defendants. | CASE NO.: 2:09-CV-01591 KJD (GWF)<br><br>Pending in CASE NO.: 07-CV-01658 PJH (EDL) (N.D. Cal.)<br><br>**NON-PARTY SETH RAVIN'S AND NON-PARTY RIMINI STREET'S OPPOSITION TO ORACLE'S MOTION TO COMPEL SETH RAVIN TO ANSWER DEPOSITION QUESTIONS AND TO COMPEL RIMINI STREET TO PRODUCE DOCUMENTS**<br><br>Hrg. Date: October 6, 2009, 9:30am<br>Before: Hon. George W. Foley, Jr.<br>Courtroom: 3A |

3782771_3.DOC

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 4

    A.    Rimini Street Competes With Oracle and SAP as a Third Party Support Provider ......................................................................................... 4

    B.    Oracle's Successful Effort to Shut Down TomorrowNow Through Scorched Earth Litigation ........................................................................ 5

    C.    Oracle's Efforts to Obtain Irrelevant, Proprietary and Burdensome Information From Rimini Street ............................................................... 6

III.  ORACLE'S MOTION TO COMPEL SHOULD BE DENIED IN ITS ENTIRETY ........ 8

    A.    Applicable Legal Standards ..................................................................... 8

    B.    The Information Oracle Is Seeking Is Not Relevant to the Underlying Litigation ............................................................................... 9

        1.    The Parties Agree that Discovery Concerning the Details of Rimini Street's Operations Is Not Relevant .......................................... 9

            a.    Oracle Previously Successfully Argued that Rimini Street Discovery Is Irrelevant ..................................... 9

            b.    Defendant SAP Agrees With Rimini Street that the Discovery Oracle Seeks Is Irrelevant, and Disputes Oracle's Characterizations to the Contrary ................................. 11

            c.    Contrary to Oracle's Claim, the California Court Has Not Ruled on this Issue in Oracle's Favor, But Has Expressed Skepticism as to the Relevance of Third Party Discovery ........... 12

        2.    Under the Applicable Copyright Damages Case Law, the Details of Rimini Street's Operations — or Other Information Related to Whether Rimini Street Infringes Oracle's Copyrights — Are Not Relevant ............................................................................... 14

    C.    Even if Some Level of Relevance Could Be Established, the *Micro Motion* Decision Compels Rejecting Oracle's Attempt to Try Rimini Street *In Absentia* in the SAP Litigation ................................................ 16

    D.    Oracle's Requests Should Be Denied As Improper Pre-Litigation Discovery ..... 18

    E.    Oracle's Specific Requests Are Not Relevant to the Underlying Litigation, and Are Proprietary and/or Burdensome ................................................ 19

        1.    Document Request No. 1:  The Details of Rimini Street's "Business Model" Are Not Relevant, Are Incredibly Burdensome, and Involve Rimini Street's Core Trade Secrets ....................................... 20

2.     Document Request No. 2:  Rimini Street's Automated Software
Tools Are Not Relevant, And Are Potentially Proprietary And
Burdensome .............................................................................................. 22

3.     Document Request No. 3:  Rimini Street's "Checklists" Are
Irrelevant and Potentially Proprietary and Burdensome ........................... 23

4.     The Further Deposition Testimony Oracle Seeks From Ravin Is Not
Relevant to the Underlying Litigation, Is Highly Proprietary, and
Could Open the Door to Additional Burdensome Discovery ................... 24

IV.     THE PROTECTIVE ORDER IN THE UNDERLYING LITIGATION BETWEEN
ORACLE AND SAP IS NOT A SUBSTITUTE FOR ESTABLISHING
RELEVANCY FOR FURTHER NON-PARTY DISCOVERY, AND IS IN ANY
EVENT INADEQUATE ................................................................................. 26

V.     NON-PARTIES ARE ENTITLED TO REIMBURSEMENT OF COSTS AND
ATTORNEY'S FEES IN OPPOSING THIS MOTION .................................... 28

VI.     CONCLUSION ............................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Metal Prods. Co. v. Gutter Topper, Ltd.*, No. M 8-85,
  1997 WL 666291 (S.D.N.Y. Oct. 24, 1997) .....................................................................16

*Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619 (9th Cir. 1999)..............................8, 9, 16, 26

*Cram v. Elec. Data Sys. Corp.*, No. 07cv1842,
  2008 WL 115438 (S.D. Cal. Jan 25, 2008) ....................................................................29

*Epstein v. MCA, Inc.*, 54 F.3d 1422 (9th Cir. 1995) ..........................................................2

*Fort James Corp. v. Sweetheart Cup Co.*, No. 97-C-1221,
  1998 WL 709813 (S.D.N.Y. Oct. 8, 1998) ...................................................8, 16, 23, 26

*Hamil Am., Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) ..........................................................15

*Heraeus Inc. v. Solar Applied Material Tech. Corp.*, No. 06-01191,
  2006 WL 2067859 (N.D. Cal. July, 24, 2006) ...............................................................16

*In re Shubov*, 253 B.R. 540 (9th Cir. B.A.P. 2000) .........................................................29, 30

*In re Stratosphere Corp. Securities Litig.,* 182 F.R.D. 614 (D. Nev. 1998) ................................24

*Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422 (Fed. Cir. 1993) ........8, 9, 16, 23

*Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990)...............................*passim*

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992) ...............8, 23

*Pearce v. Club Med Sales, Inc.*, 172 F.R.D. 407 (N.D. Cal. 1997).......................................29, 30

*Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700 (9th Cir. 2004) .............................1, 14, 15

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312,
  2006 WL 3541933 (N.D. Ill. Dec. 5, 2006) ............................................................16, 22

*Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987).......................8

*Ultimate Timing LLC v. Simms*, No. 3:09-mc-6RLYWGH,
  2009 WL 1148056 (S.D. Ind. Apr. 28, 2009) ...............................................................19

## RULES

Fed. R. Civ. P. 26(b)(1)........................................................................................8, 16, 19, 20

Fed. R. Civ. P. 26(b)(2)(C)(iii)............................................................................................8

Fed. R. Civ. P. 32(d)(3)(A) ..............................................................................................24

Fed. R. Civ. P. 37(a)(5)(B).........................................................................................28, 30

Fed. R. Civ. P. 45(c)(3) .............................................................................................22

**MISCELLANEOUS**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02[A][1] (2009).........1, 14

1   Non-Party Seth Ravin ("Ravin") and Non-Party Rimini Street, Inc. ("Rimini Street")

2 (together, the "Non-Parties") respectfully submit this Memorandum of Points and Authorities in

3 Opposition to the Motion to Compel Ravin to Answer Deposition Questions and to Compel

4 Rimini Street to Produce Documents in Response to Oracle's Subpoena ("Motion"), filed by

5 Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

6 (collectively, "Oracle").

7 **I.  INTRODUCTION**

8   By its motion, Plaintiff Oracle is seeking to compel certain discovery (the "Discovery")

9 from its competitor, Non-Party Rimini Street, hoping to discover that Rimini Street is infringing

10 Oracle's copyrights.  Oracle attempts to justify its intrusive and burdensome third party

11 discovery requests on the grounds that whether or not Rimini Street infringes Oracle's copyrights

12 is purportedly relevant to the damages Oracle is entitled to collect against the defendants

13 TomorrowNow, Inc. ("TomorrowNow") and its parent, SAP, AG ("SAP") in the underlying

14 litigation in California (the "SAP Litigation").  But it is undisputed that lost profits damages in a

15 copyright case are measured by the "profits that the plaintiff might have accrued ***but for the***

16 ***defendant's infringement***."  4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §

17 14.02[A][1] at 14-14 (2009) (emphasis added); *see also Polar Bear Prods., Inc. v. Timex Corp.*,

18 384 F.3d 700, 709 (9th Cir. 2004).  Contrary to Oracle's assertion, copyright damages ***do not***

19 depend on whether ***third party competitors*** infringe the plaintiff's copyrights, and Oracle does

20 not cite any authority holding otherwise.  Thus, whether or not ***Rimini Street*** infringes Oracle's

21 copyrights (which Rimini Street denies) simply has no relevance to what damages, if any,

22 defendants might owe, or any other issue in the SAP Litigation.

23   Given its complete lack of relevance, it is therefore not surprising that both Oracle and

24 SAP apparently agree that discovery into the technical details of Rimini Street's operations is not

25 relevant.  In a prior discovery dispute between the parties in the underlying suit, referenced by

26 Oracle in its Motion (*see* Motion at 7), Oracle successfully resisted SAP's discovery requests

27 regarding Rimini Street on relevance grounds, telling the court that "information regarding

28 Rimini Street — or any other third-party support provider — *do not relate to any claim or*

*defense in this case*" and that "third-party support requests" cannot be justified "as damages discovery."  Declaration of Michael B. Levin ("Levin Decl."), Exhibit ("Ex.") A at p. 4 (emphasis added).

Notwithstanding the fact that Oracle served the Discovery, Oracle apparently does not believe it is relevant.  In connection with the present Motion, Oracle recently conceded that it did *not* seek the Discovery "because *Oracle* believed it was relevant."  Levin Decl., Ex. B at 3.  Rather, Oracle claims it served the Discovery because SAP supposedly believes it is relevant.  *Id.*; Motion at 7.  However, SAP has made it quite clear it *does not* believe the Discovery is relevant.  After receiving a copy of Oracle's Motion, SAP's counsel indicated that it disputes Oracle's claim that SAP believes the Discovery is relevant, and that it plans to submit a separate filing with this Court confirming this.  Levin Decl., ¶¶ 39-42.  Given the parties' apparent agreement that the Discovery is irrelevant, [1] that should end the inquiry, as lack of relevance is a sufficient ground for denying Oracle's motion to compel.  *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1424-25 (9th Cir. 1995).

In a highly analogous case, the Federal Circuit in *Micro Motion* quashed a subpoena inquiring into whether a non-party competitor infringed the plaintiff's intellectual property rights, which — as Oracle argues here — the plaintiff claimed was relevant to address a possible defense to the plaintiff's lost profits damages theory.  *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1324-25 (Fed. Cir. 1990).  There, the Court held that if merely asserting a lost profits damages theory were sufficient to justify intrusive discovery into whether a non-party infringes, a plaintiff "could, in virtually every infringement suit, obtain immediate discovery

---

[1] Oracle incorrectly asserts that the California court found the Discovery to be relevant.  *See* Motion at 8-9.  In fact, because the Oracle subpoenas issued out of the District of Nevada, the California court has never ruled upon the legitimacy of the Discovery, and has no jurisdiction to do so.  Indeed, the statements from Magistrate Judge Laporte cited by Oracle were made in the context of a discovery conference addressing the *length* of Mr. Ravin's deposition.  To the extent Judge Laporte provided preliminary thoughts on relevance, these were made without briefing on the subject, and *nearly two months before* the Discovery requests at issue here were even made by Oracle.  Thus Judge Laporte did not rule, and could not have ruled, upon their legitimacy.

1    from all possible competitors by merely filing a complaint asking for damages against one." *Id.*

2    at 1324-25.  Fortunately, that is not the law.

3            Even if Oracle could articulate some speculative theory of relevance, it is clear that

4    Oracle's true purpose for serving the Discovery is an improper attempt to take pre-complaint

5    discovery.  In late 2008 and early 2009, Oracle began making threats against Rimini Street

6    concerning a potential claim that Rimini Street infringes Oracle's intellectual property rights, and

7    began seeking from Rimini Street information concerning such allegations, hoping Rimini Street

8    would consent to a voluntary audit.  Declaration of Seth Ravin ("Ravin Decl."), ¶ 7.  The same

9    day that Oracle and Rimini Street had their last conversation on the subject, Oracle executed

10   subpoenas for three Rimini Street executives, including Ravin, which it served a week later.

11   This timing suggests Oracle's third party discovery requests are part of a fishing expedition into

12   Rimini Street's confidential business operations, presumably in the hopes of obtaining evidence

13   for a claim against Rimini Street.  Over the last several years, Oracle has successfully used the

14   litigation process to shut down one competitor, TomorrowNow.  Now, Oracle is seeking to

15   impede Rimini Street's growth and further success in the marketplace through, among other

16   things, its improper and intrusive third party discovery requests.[2]  Rimini Street respectfully

17   requests that this Court not condone such behavior.

18           Notwithstanding the lack of relevance of the Discovery, Oracle poses a classic catch-22

19   in its Motion:  According to Oracle, if Rimini Street is not infringing, it should have nothing to

20   hide; but if Rimini Street is infringing, then it should not be permitted to avoid producing such

21   evidence.  *See* Motion at 5:4-5:6.  This is pure sophistry.  Rather, Rimini Street submits that the

22   _____

23       [2] No doubt, Oracle was also mindful of the media attention it would gain from bringing this
     Motion, and the unsubstantiated accusations contained in it.  Shortly after Oracle filed its motion,
24   several media outlets reported on the motion, quoting Oracle's misleading statements suggesting
     that Rimini Street might be misappropriating Oracle's intellectual property rights.  *See* Levin
25   Decl., Ex. C.  As one commentator has noted, this is just the latest in Oracle's attempts to use the
     legal process to inhibit competition in the marketplace.  *See* Levin Decl., Ex. D ("Oracle's high-
     stakes game of 'Winning by Litigating Competitors into Submission' has been working so far.
26   So why stop now?").  Oracle currently earns approximately 84% gross margins on the fees it
     charges its customers for annual support services, and those fees now account for at least 50% of
27   Oracle's total revenues.  *See* Levin Decl., Ex. BB.

28

1  proper analysis should be:  If Oracle has sufficient evidence that Rimini Street is infringing

2  (which it does not),[3] Oracle is free to bring an infringement action against Rimini Street, where it

3  can seek damages allegedly caused by Rimini Street.  If, on the other hand, Oracle has no basis

4  to bring suit (as indeed it does not), Oracle should not be permitted to use non-party discovery

5  requests into Rimini Street's confidential and trade secret operations for the purpose of a fishing

6  expedition looking for alleged infringement purportedly for purposes of determining what

7  damages SAP owes in the SAP Litigation.

8            Given Oracle's complete failure to articulate any support for its theory of relevance,

9  given Oracle's own admissions that the discovery it is seeking is not relevant, and given Oracle's

10  mischaracterizations of SAP's positions (and the court's supposed "findings"), Rimini Street

11  respectfully requests that the Court deny the Motion, and require Oracle to pay the costs and fees

12  Rimini Street has incurred as a result of Oracle's improper and abusive discovery practices.

13  **II.    FACTUAL BACKGROUND**

14            **A.    Rimini Street Competes With Oracle and SAP as a Third Party Support
                      Provider**

15
            More than four years ago, Ravin founded Rimini Street for the purpose of providing

16
17  third-party support and maintenance services for enterprise software at a substantial discount

    compared to the prices charged by the major software vendors.  *See* Ravin Decl., ¶¶ 2-3.  Rimini
18
    Street allows customers to maximize their return on existing software investments with support
19
20  programs that provide more than 50% savings on annual support fees, eliminating forced

    upgrades, and delivering other services not available within standard vendor support.  *Id.*
21
22  Based on its proprietary processes, Rimini Street consistently provides quality tax and regulatory

23
            ────────────
24       [3] As Oracle concedes, it is not illegal to offer third party support services to Oracle's
    enterprise software customers.  *See* Motion at 3:11.  Rimini Street has been legally operating its
25  business since its founding in 2005, and neither Oracle nor any other company has sued Rimini
    Street alleging intellectual property infringement.  Oracle's motion to compel relies entirely on
26  innuendo and speculation, hoping to leave the impression that Rimini Street is a mere "carbon
    copy" of TomorrowNow, which Oracle contends is infringing its intellectual property rights.
27  While Rimini Street offers many similar services as TomorrowNow formerly offered, that does
    not make Rimini Street an infringer.
28

1    updates to its customers ahead of the date on which Oracle provides updates to its customers.

2    Ravin Decl., ¶¶ 15-16.  Today, Rimini Street is a leading third-party maintenance

3    provider, offering support for Oracle's PeopleSoft, Siebel and J.D. Edwards product lines, as

4    well as for products offered by defendant SAP.  *Id.* ¶ 4.  Not surprisingly, Rimini Street's

5    discounted service offerings have made Rimini Street a target of both the parties in the

6    underlying action, Oracle and SAP.

7          **B.**     **Oracle's Successful Effort to Shut Down TomorrowNow Through Scorched Earth Litigation**

8

9          In March 2007, two years after Ravin had left TomorrowNow to start Rimini Street,

10   Oracle filed the underlying suit in the Northern District of California, alleging, *inter alia*, that

11   third party support provider TomorrowNow had made illegal downloads of Oracle's copyrighted

12   software.  Oracle also named SAP, which had acquired TomorrowNow in early 2005.  In May

13   2007, SAP's CEO publicly stated that Oracle's purpose in bringing the lawsuit was "'to limit

14   customer choices by trying to discredit their competition.'"  Levin Decl., Ex. E.  The SAP

15   Litigation has already achieved that purpose, as TomorrowNow shut down operations last fall as

16   a result of Oracle's litigation campaign.  Levin Decl., Ex. F.

17          Oracle has been employing "scorched earth" tactics in the SAP Litigation.  Oracle has

18   taken more than 300 hours of depositions, and has served over 100 third party subpoenas.  Levin

19   Decl., Ex. G at 1.  In response to Oracle's discovery requests, defendants have produced more

20   than 7 million pages of documents, and more than 17 terabytes of electronic data.  *Id.*  The

21   parties have engaged in frequent motion practice, and there have already been more than 450

22   pleadings filed in the case.  The suit is currently scheduled to go to trial in November 2010.

23

24

25

26

27

28

Non-Parties Ravin and Rimini Street's
Opposition to Motion to Compel
Case No.: 2:09-CV-01591 KJD (GWF)    -5-    3782771_3.DOC

**C.** **Oracle's Efforts to Obtain Irrelevant, Proprietary and Burdensome Information From Rimini Street**

Beginning in 2008, Oracle began raising questions with Rimini Street about whether or not Rimini Street was potentially violating Oracle's intellectual property rights. Ravin Decl., ¶ 7. Oracle became increasingly aggressive, and in December 2008 and January 2009 demanded that Rimini Street voluntarily provide certain confidential information regarding Rimini Street's proprietary processes, including agreeing to an audit, *id.*, no doubt hoping that the results would allow Oracle to bring a copyright infringement claim against Rimini Street. The last communication between Oracle and Rimini Street on this subject occurred on February 2, 2009. Levin Decl., ¶ 29.

At that point, Oracle apparently decided to take a different tack. On the very same day as the last conversation between Oracle's counsel and Rimini Street's counsel, Oracle's counsel in the SAP Litigation executed deposition and document subpoenas with respect to three Rimini Street executives, Ravin and George and Beth Lester, who were served shortly thereafter. Levin Decl., Ex. H; Ex. I; Ex. J. Oracle thus began using the SAP Litigation to attempt to obtain the very same pre-complaint discovery regarding potential infringement allegations that it had previously been trying to pursue from Rimini Street.

Although the three subpoenas sought information relating to the witnesses' former employment at TomorrowNow, they were not limited to TomorrowNow topics. They also included requests regarding Rimini Street's operations. *See, e.g.*, *id.* at Requests Nos. 5, 8(iii), 9, 10. During the parties' meet and confer discussions, Ravin and the Lesters objected to providing any information concerning Rimini Street. Levin Decl., ¶¶ 30-31. At the time, counsel for Oracle agreed that these witnesses would not have to produce any Rimini Street documents. *Id.* ¶ 31.

Nonetheless, at Ravin's deposition, Oracle attempted to obtain confidential information relating to Rimini Street, including Rimini Street's proprietary methodologies used to develop, test, package and deliver to customers software, updates and fixes. While counsel allowed Ravin to answer some high level foundational questions so as to avoid a potentially unnecessary

1  discovery dispute, counsel objected that a number of these questions were being improperly

2  interposed as attempts to obtain pre-litigation discovery, improper inquiries into competitive

3  trade secrets, and sought information wholly irrelevant to the SAP Litigation.  *See* Levin Decl.,

4  Ex. K; Ex. L.  Counsel for the parties agreed Oracle could continue asking additional non-Rimini

5  Street questions and that Oracle would notify Rimini Street's counsel if it intended to seek a

6  motion to compel regarding the unanswered questions, which is at issue here.

7          Shortly before the Ravin deposition, Oracle served a document subpoena on Rimini

8  Street, which is also at issue here.  *See* Russell Decl., Ex. L.  As discussed in Section III.E, *infra*,

9  the subpoena requests confidential information concerning Rimini Street's proprietary business

10 and technical operations.  In response to the subpoena, Rimini Street asserted timely objections.

11 Levin Decl., Ex. M.   Rimini Street objected to the relevance of the requests relating to Rimini

12 Street's "business model."  Nonetheless, to avoid a discovery dispute, Rimini Street produced

13 what Rimini Street believes are documents "sufficient to show" Rimini Street's business model,

14 including the products Rimini Street offers, the advantages those products provide, and

15 information regarding Rimini Street's pricing.  Ravin Decl., ¶¶ 11-14.  Because it was irrelevant,

16 burdensome and intrusive pre-litigation discovery, Rimini Street did not produce the additional

17 technical information sought by the subpoena.  During the parties' meet and confer session,

18 Oracle failed to provide any legal authority supporting the relevance of the legality of a non-

19 party's products or services to the copyright damages owed by an unrelated party.  Levin Decl., ¶

20 35.

21         On August 21, 2009, Oracle filed the Motion.  Thereafter, on September 2, 2009, counsel

22 for SAP requested that Oracle and Rimini Street meet and confer, noting that SAP believed that

23 Oracle had mischaracterized SAP's position concerning relevance in the Motion.  Levin Decl.,

24 Ex. N.  During the subsequent meet and confer teleconference, counsel for SAP indicated SAP's

25 belief that the Discovery was ***not relevant***.  Levin Decl., ¶¶ 39-42.  SAP's counsel further

26 indicated that if Oracle is successful in obtaining the Discovery, SAP would potentially seek

27

28

1  additional discovery from Ravin and Rimini Street, presumably to rebut Oracle's attempts to

2  prove Rimini Street's operations are illegal. *Id.*[4]

3  **III.   ORACLE'S MOTION TO COMPEL SHOULD BE DENIED IN ITS ENTIRETY**

4        **A.     Applicable Legal Standards**

5        Rule 26 provides that discovery should not be permitted in either of two circumstances:

6  (i) where it is not relevant, or (ii) where the burden or expense of the proposed discovery

7  outweighs its likely benefit in light of the relevant factors. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

8  In the context of a motion to compel, when a subpoena to a non-party seeks confidential

9  commercial information, the burden is on the demanding party to show a substantial need for the

10 information that cannot otherwise be met without undue hardship. *See Katz v. Batavia Marine &*

11 *Sporting Supplies, Inc.*, 984 F.2d 422, 424-25 (Fed. Cir. 1993); *Nugget Hydroelectric L.P. v.*

12 *Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992); *Fort James Corp. v. Sweetheart*

13 *Cup Co.*, No. 97-C-1221, 1998 WL 709813, at *2 (S.D.N.Y. Oct. 8, 1998).[5]

14       Where the discovery sought is not relevant to any issues in the underlying litigation, a

15 motion seeking to compel such discovery will be denied. *Micro Motion*, 894 F.2d at 1325-28;

16 *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622-23 (9th Cir. 1999). While relevancy for

17 the purposes of Rule 26 is broadly construed, the potential for discovery abuse is ever-present,

18 and courts are authorized to limit discovery to that which is proper and warranted in the

19 circumstances of the case. *See* Fed. R. Civ. P. 26(b)(1); *Micro Motion,* 894 F.2d at 1325; *Katz,*

20

---

21       [4] Oracle, SAP and Rimini Street further agreed that SAP could submit a response to the
Motion on the same day Rimini Street's opposition is due, that Rimini Street could submit any
22 response to SAP's filing on September 17, 2009, with Oracle submitting any further response in
conjunction with its Reply on September 24, 2009.  Levin Decl., Ex. O.

23       [5] Oracle cites a Federal Circuit decision, *Truswal Systems Corp. v. Hydro-Air Engineering,*
*Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987), for the proposition that an ancillary court reviewing a
24 discovery dispute should be "hesitant to pass judgment on what constitutes relevant evidence" in
the main action.  Motion at 12.  In a highly analogous subsequent decision, however, the Federal
25 Circuit distinguished *Truswal*, finding the ancillary court's deference to the plaintiff's relevance
arguments in permitting discovery of a non-party competitor was an abuse of discretion.  *See*
26 *Micro Motion*, 894 F.2d at 1324-25 (declining to remand the relevancy inquiry to the trial court,
and finding that deference should not be given where the specific relevancy question has not
27 been given proper consideration in the main action).

28

984 F.2d at 424. Merely intoning that the discovery sought from a non-party is relevant to

plaintiff's damage theory is insufficient to establish relevancy for purposes of discovery. *See*

*Micro Motion*, 894 F.2d at 1325. Nor is a protective order a substitute for demonstrating

relevance. *Id.*; *Cacique,* 169 F.3d at 622-23.

Courts must exercise particular caution when determining whether to permit discovery of

commercial information from a non-party competitor, for a holding to the contrary can

potentially lead to abuse by enabling a plaintiff "in virtually every infringement suit, [to]

immediately obtain discovery from all possible competitors by merely filing a complaint asking

for damages against one." *Micro Motion*, 894 F.2d at 1324-25. Although discovery of persons

not party to the litigation is contemplated by the Rules, the fact of non-party status may be

considered by the court in weighing the burdens imposed in the circumstances. *Katz*, 984 F.2d at

424.

**B.     The Information Oracle Is Seeking Is Not Relevant to the Underlying Litigation**

> **1.     The Parties Agree that Discovery Concerning the Details of Rimini Street's Operations Is Not Relevant**

The discovery Oracle seeks is simply not relevant to any issue in the SAP Litigation. In

fact, it appears that — other than Oracle in connection with the present motion — the parties to

the SAP Litigation *agree* that information regarding the legality of, and technical details

concerning, Rimini Street's services and operations are ***not relevant***.

> **a.     Oracle Previously Successfully Argued that Rimini Street Discovery Is Irrelevant**

Oracle has repeatedly made concessions that discovery concerning the third party support

market is not relevant to any issue in the SAP Litigation, including damages. In its Motion,

Oracle cites a January 28, 2008 letter from SAP (*see* Motion at 7) regarding an earlier discovery

dispute in which SAP was seeking information from Oracle concerning third party maintenance

providers, including Rimini Street. However, Oracle's Motion makes a telling and material

omission — Oracle's February 7, 2008 ***response*** to the letter quoted in the Motion. In that letter,

1  which Oracle failed to provide to this Court (and refused to provide to Rimini Street),[6] Oracle

2  took the following positions, which are fatal to Oracle's Motion:

3      Nothing in this case relates to the 'market' for third-party support. This case is
       about Defendants' unlawful access to, and downloading from, Oracle's password-
4      protected website for their use of those downloaded materials. . . .

5      [Oracle's] *information regarding Rimini Street* — or any other third-party support
       provider — *do not relate to any claim or defense in this case*. This case is about
6      Defendants' theft and misuse of Oracle's intellectual property. . . .

7      Neither can Defendants justify their overbroad third-party support requests as
       damages discovery. . . . Oracle has never claimed, contrary to Defendants'
8      assertion, that it has only lost customers to SAP TN. But, whether another third-
       party support provider took customers from Oracle is irrelevant to the claims and
9      defenses here . . . The issue here is whether Defendants acquired customers by
       offering stolen intellectual property and support services provided through the use
10     of that stolen intellectual property. *Whether Oracle lost customers to other third-
       party support providers has nothing to do with this case. Defendants have no
11     legal support for spinning their own unlawful acts into a need for market
       research into their competitors*. There is none.

12

13 Levin Decl., Ex. A at 4-8 (emphasis added).

14      Oracle's letter apparently persuaded the court. In denying SAP the discovery it sought,

15 Judge Legge stated in his Report and Recommendation:

16     [SAP's request for discovery concerning third party support] is tangential at best. .
       . . That information does not appear to be directly or presently relevant.
17     Defendant argues that it will have something to do with damages . . . . However,
       such extensive third party discovery does not now appear to be justified by those
18     narrow potential arguments.

19 Levin Decl., Ex. R at 7.

20      While Oracle may argue that circumstances have changed since the 2008 dispute

21 regarding the discoverability of Rimini Street information, Oracle continues to assert that Oracle

22 does not believe Rimini Street discovery is relevant. As stated in recent meet and confer

23 _____

24      [6] Because Rimini Street does not have access to much of the record in the SAP Litigation,
    Rimini Street sought from Oracle's counsel other related pleadings (and unredacted portions of the
25  same pleadings) to those on which Oracle relied in its Motion, and specifically requested a copy of
    Oracle's February 7, 2008 letter to the Special Master responding to SAP's letter. Levin Decl., ¶¶
26  36-38 & Ex. P. Oracle refused to produce any of the materials Rimini Street requested, or to
    provide information as to where such materials could be found among the voluminous record.
27  Levin Decl., Ex. B (Howard 9/1/09 letter to Levin). Fortunately, however, Rimini Street was able
    to locate on PACER a partially unredacted copy of Oracle's February 7, 2008 letter as an exhibit to
28  a pleading filed in the case. *See* Levin Decl., ¶ 38 & Ex. A.

1   correspondence, Levin Decl., Ex. B at 3, Oracle claims it is not seeking this discovery "because

2   Oracle believed it was relevant to this case," but because SAP supposedly believes so.

3                           **b.      Defendant SAP Agrees With Rimini Street that the Discovery
                                     Oracle Seeks Is Irrelevant, and Disputes Oracle's
4                                    Characterizations to the Contrary**

5           Oracle's sole argument for relevance of the Discovery rests on its position that SAP has

6   made the Discovery relevant to its damages theory.  What does SAP have to say about Oracle's

7   requests?  SAP denies the relevance of the Discovery.  Levin Decl., ¶¶ 39-42.  Rimini Street is

8   informed that SAP intends to file its own submission stating that SAP ***does not*** contend that the

9   discovery Oracle is seeking is relevant.  As indicated in its counsel's prior correspondence, Levin

10  Decl., ¶¶ 39-42 & Ex. N, SAP believes Oracle has mischaracterized SAP's position.  Thus,

11  Oracle's entire motion — which is premised on Oracle's false statement that "Defendants

12  Contend That Rimini Is Relevant to Their Defense" (Motion at 7:3) — crumbles.

13          Contrary to Oracle's assertion, the SAP letter quoted by Oracle (*see* Motion at 7) does not

14  suggest otherwise.  In the 2008 discovery dispute, SAP argued (unsuccessfully) that discovery

15  concerning the existence of alternative third party support options may be relevant to damages

16  because it may show Oracle would have lost sales even if TomorrowNow had not committed the

17  allegedly infringing acts, and thus the damages were not caused by TomorrowNow's alleged

18  infringement.  But SAP was not seeking information concerning the ***legality*** of other third party

19  support providers, or the technical details of their operations.[7]

20          Because neither Oracle nor SAP believes the legality of Rimini Street's services —

21  Oracle's purported justification for the discovery it is seeking — is relevant to any issue in the

22  underlying litigation Oracle's motion should be denied.

23

    _____

24          [7] Oracle contends SAP's statements requesting discovery on "***how*** those companies were doing
    business" (Motion at 7 (emphasis added by Oracle)) supports Oracle's position.  During meet and
25  confer conversations, counsel for SAP has explained that SAP's statement was not intended to be
    an inquiry into the legality of or technical details concerning third party support providers.  Rather,
26  in referring to "how" third parties were doing business, SAP was seeking information concerning
    whether third parties offered the services required to meet the demand met by TomorrowNow,
27  such as which product lines they supported for which types of customers.  Levin Decl., ¶ 41.

28

1            **c.**     **Contrary to Oracle's Claim, the California Court Has Not Ruled on this Issue in Oracle's Favor, But Has Expressed Skepticism as to the Relevance of Third Party Discovery**

2

3         Nor is there any basis for Oracle's argument that the California court "found" that

4 discovery into the details of Rimini Street's business model, software tools, checklists, or the

5 legality of Rimini Street's business, is relevant to damages. As far as Rimini Street is aware, the

6 presiding judge, Judge Phyllis J. Hamilton, has not addressed this issue.[8] As described above,

7 the Special Master originally handling discovery disputes, Judge Charles A. Legge (retired),

8 unequivocally concluded that SAP's requests for discovery concerning Rimini Street "[do] not

9 appear to be directly or presently relevant" to the issues in the case, including to damages. *See*

10 Levin Decl., Ex. R at 7.

11         Nonetheless, Oracle asserts that Magistrate Judge Elizabeth D. Laporte, who is presently

12 overseeing discovery in the case, "found" that discovery related to Rimini Street is relevant to

13 damages following a March 31, 2009 discovery conference. Motion at 8. Oracle is mistaken.

14         First, the April 2, 2009 order does not speak to, much less make "findings" on, the

15 relevance of discovery concerning the topics at issue here. Indeed, the discovery requests at

16 issue in this Motion — Oracle's May 18, 2009 subpoena to Rimini Street and the desired further

17 answers to the questions Oracle asked Ravin at his May 21, 2009 deposition — were not

18 propounded by Oracle until ***seven weeks after*** Judge Laporte's April 2, 2009 order. *See* Motion

19 at 8-9. Accordingly, Judge Laporte could not have made any findings of relevance regarding the

20 specific requests that had not yet been propounded to Rimini Street.

21         Second, the only issue briefed by the parties was the appropriate *length* of Ravin's

22 deposition. While counsel for Ravin was invited to appear at the discovery conference to address

23 Oracle's request that the parties be given 14 hours to complete Ravin's deposition, neither Ravin

24 nor the parties briefed the appropriate ***scope*** of Ravin's testimony, as it was premature. Thus, the

25

26      [8] Rimini Street understands that SAP contests Oracle's damages theories in the SAP

27 Litigation, and has recently moved for summary judgment with respect to at least one of the theories. *See* Docket # 447 in Case No. 07-cv-01658-PJH (N.D. Cal.).

28

1    only "finding" that Judge Laporte made was that Ravin could sit for 10.5 hours of deposition.

2    *See* Levin Decl., Exs. S (3/31/09 transcript) at 18:8-14 & T (4/02/09 Order).

3          Third, as both Oracle's counsel and Judge Laporte recognized at the March 31, 2009

4    hearing, Levin Decl., Ex. S at 22:10-14, Judge Laporte did not have jurisdiction to affect the

5    scope of the Ravin subpoena, which issued out of the District of Nevada. So any "findings" by

6    the California court would, in any event, be non-binding.

7          While Judge Laporte indicated at the discovery conference that "the Rimini thing *seems*

8    to have **some** relevance" and stated in her order following the discovery conference that "**some**

9    testimony" regarding Rimini Street "*appears*" relevant, Judge Laporte **did not** indicate what, if

10   anything, was relevant concerning Rimini Street's business model or technical operations. *See*

11   Levin Decl., Ex. S at 18:18; Ex. T (emphasis added).

12         Accordingly, Oracle's suggestion that the California court has already ruled on the

13   relevance of the May 2009 Discovery at issue here is erroneous. As the Federal Circuit held in

14   *Micro Motion*, an ancillary court should not defer to the court in the main action where – as here

15   -- that court has not given "meaningful consideration" to the specific relevancy issue. *Micro*

16   *Motion*, 894 F.2d at 1324, 1325. The Federal Circuit found discovery directed to whether a non-

17   party infringed was not relevant, and that the ancillary court's failure to require a stronger

18   showing of relevance — in apparent deference to the court in the main action[9] — was an abuse

19   of discretion. *Micro Motion*, 894 F.2d at 1324, 1325.

20         While Rimini Street respectfully suggests that, as in the *Micro Motion* case, this Court

21   should make its own relevance determination, Rimini Street notes that Judge Laporte has

22   expressed general skepticism with respect to the damages theories that the parties have used to

23   justify other discovery regarding third party support providers. At a February 10, 2009 hearing,

24   Judge Laporte stated that she found the lost profits "causation argument . . . not very convincing

25   _____

26         [9] In the *Micro Motion* case, the trial court had generally authorized the reopening of damages
     discovery with respect to the non-party. *Id.* at 1325. Nonetheless, the Federal Circuit found that
27   the court deciding the motion to quash should have required a proper showing of relevance with
     respect to the specific discovery requests. *Id.* at 1324-25.

28

1    and sort of baffling." Levin Decl., Ex. U at 38.  While Judge Laporte stated she believed that

2    *where* TomorrowNow's customers went after TomorrowNow shut down in 2008 "has some

3    relevance to damages," *id.* at 48:18, she also stated "I don't think it has a whole lot of relevance,"

4    *id.* at 48:6; *see also id.* at 38.[10]

5         While Rimini Street does not concede the relevance of information concerning *where*

6    TomorrowNow customers went following TomorrowNow's shut down, Rimini Street

7    nonetheless has provided discovery on this topic.  Ravin testified at his deposition regarding the

8    number of former TomorrowNow customers who switched to Rimini Street, *see* Russell Decl.,

9    Ex. D at 256-57, thus satisfying whatever relevance there might be to this theory.

10                **2.      Under the Applicable Copyright Damages Case Law, the Details of
                           Rimini Street's Operations — or Other Information Related to**
11                         **Whether Rimini Street Infringes Oracle's Copyrights — Are Not**
                           **Relevant**
12

13        The sole basis of relevance asserted for the Discovery is in connection with Oracle's

14   prayer for lost profits damages under its copyright claim.  However, Oracle has wholly failed to

15   show how — under any cognizable lost profits damages theory — the alleged infringement of a

16   *non-party* matters.

17        Under Section 504(b) of the Copyright Act, a plaintiff is entitled to recover, among other

18   things, "the actual damages suffered by him or her as a result of the [defendant's] infringement."

19   As stated in the leading copyright treatise, "plaintiff's damages may be said to equal the profits

20   that the plaintiff might have accrued *but for the defendant's infringement.*"  4 Nimmer on

21   Copyright, § 14.02[A][1] at 14-14 (emphasis added).  Moreover, lost profits may only be

22   recovered when the plaintiff can demonstrate a "legally sufficient causal link between the

23   [defendant's] infringement and the subsequent indirect profits."  *Polar Bear*, 384 F.3d at 709.

24   _____

25        [10] Rimini Street notes that, following the February 10 hearing, in a February 11, 2009 order
     Judge Laporte permitted SAP to take certain very limited "non-burdensome" discovery of Oracle
26   regarding its partnership program, which SAP contended was relevant to Oracle's "reasonable
     royalty" theory of damages.  Levin Decl., Ex. V.  In that order, Judge Laporte made no rulings
27   regarding the relevance of the *legality* of third party support providers such as Rimini Street.

28

1    "[M]ere speculation does not suffice to link the losses to the infringement." *Polar Bear*, 384

2    F.3d at 710; *see also Hamil Am., Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999).

3           The authority cited by Oracle does not hold otherwise.  It merely states the general test

4    for lost profits damages, which, as shown above, is concerned with the damages caused by the

5    *defendant's* infringement.  Rimini Street is unaware of any copyright cases considering whether

6    *non-party competitors* infringe to be relevant to the damages owed by a defendant.  Oracle is

7    apparently not aware of any such case either; Oracle previously represented to the California

8    court:

9           Defendants cite no legal support for the argument — and Oracle is aware of none — that
            Defendants can deduct what they speculate could be "inevitable" losses from the
10          calculation of copyright damages. . . .  Defendants' speculation that customers would
            have left Oracle regardless of [Defendants'] unlawful acts is not a defense to any of the
11          claims here.

12   Levin Decl., Ex. W at 16.  Even if "inevitable" losses were a defense to a lost profits damages

13   claim, Oracle has not cited — and Rimini Street is not aware of — any copyright cases

14   precluding such a defense because the losses were to a third party who is alleged to have

15   committed its own acts of infringement.

16          Nonetheless, Oracle baldly asserts that SAP's damages theory "rests on the assumption

17   that the Rimini [Street] business model is legal and that Rimini [Street] is a legitimate alternative

18   destination for these customers."  Motion at 4.  Not so.  It appears SAP's damages theory rests

19   simply on the premise that if Oracle would have lost sales even in the absence of

20   *TomorrowNow's* alleged infringement, Oracle is unable to prove the lost profits that would

21   "have accrued *but for the **defendant's** infringement*."  There is no support for the theory that a

22   copyright owner may recover lost profits damages "but for" the existence of ***any non-party*** who

23   it may establish infringes.

24          Accordingly, Oracle is not permitted to use hypothetical damages theories in its suit

25   against SAP to see how many other possible copyright infringement cases it can establish.  To

26   the extent a plaintiff can establish that non-parties infringe its copyrights, the plaintiff has an

27   adequate remedy:  it can bring lawsuits against such entities and seek damages caused by such

28   third party infringement in those suits.  Absent that, whether a non-party infringes simply has

1  nothing to do with the damages owed by a defendant.  Thus, the legality of Rimini Street's

2  operations is not relevant here.

3                                     \*       \*       \*

4        Because discovery concerning the legality of Rimini Street's operations is wholly

5  irrelevant — as the parties agree, and as compelled by copyright case law — Oracle's motion to

6  compel should be denied.  *See Cacique*, 169 F.3d at 622-23.

7      **C.**      **Even if Some Level of Relevance Could Be Established, the *Micro Motion***
       **Decision Compels Rejecting Oracle's Attempt to Try Rimini Street *In***
8           **Absentia* in the SAP Litigation**

9        As discussed in Section III.B above, discovery into whether a non-party infringes is

10  wholly irrelevant to copyright damages.  However, even if some relevance could be shown,

11  discovery will not be permitted if the harm to the person from whom the discovery is sought

12  outweighs the need of the party seeking the discovery.  *See* Fed. R. Civ. P. 26(b)(1); *Micro*

13  *Motion*, 894 F.2d 1323.  In a number of analogous situations, courts have precluded discovery

14  seeking confidential information regarding non-party competitors.  *See id.* at 1324-28.[11]

15        The Federal Circuit's decision in *Micro Motion* is instructive.  Like Oracle here, the

16  plaintiff Micro Motion sought discovery from a non-party (K-Flow) claiming whether it

17  infringed was relevant to rebutting the defendant's defense to a lost profits damages theory.[12]

18  ────────────────

19      [11] *See also Katz*, 984 F.2d at 424-25 (citing *Micro Motion* and holding that the subpoenaed
    information from a non-party was not relevant to the pending litigation); *Am. Metal Prods. Co. v.*
20  *Gutter Topper, Ltd.*, No. M 8-85, 1997 WL 666291, at \*1-2 (S.D.N.Y. Oct. 24, 1997) (citing
    *Micro Motion* and denying a motion to compel claiming relevance based on lost profits
21  argument); *Fort James Corp.* 1998 WL 709813, at \*2 (citing *Micro Motion* for the principles
    that a damages theory for lost profits and a protective order between the main parties is not
22  sufficient to establish that the documents requested of a non-party are relevant to the pending
    litigation); *Heraeus Inc. v. Solar Applied Material Tech. Corp.*, No. 06-01191, 2006 WL
23  2067859, \*2 (N.D. Cal. July 24, 2006) (citing *Micro Motion* and holding that "the potential
    relevance on which [plaintiff] relies is too speculative, ill-defined, and tangential to support
24  discovery of critical competitive information of this nature from a non-party competitor");
    *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL 3541933, at \*1-2 (N.D. Ill.
25  Dec. 5, 2006) (same).

26      [12] Notably, the *Micro Motion* case involved a ***patent*** infringement claim, not a copyright
    claim.  Under the applicable law concerning lost profits damages in patent cases, courts have
27  recognized the potential relevance of whether there were acceptable "noninfringing" substitutes
    to the patented product.  *See Micro Motion,* 894 F.2d at 1322.  Thus, unlike the SAP Litigation,
28  which involves a ***copyright*** claim, in *Micro Motion* there was at least a plausible argument that
                                                           (continued...)

1   *See Micro Motion,* 894 F.2d at 1322-23.  Through its subpoena, Micro Motion sought

2   confidential technical information from the non-party, including information regarding the

3   "configuration and operation" of each of the non-party's competing products, as well as

4   documents relating to "comparisons of" the non-party's products to those of the plaintiff and

5   defendant, hoping to establish that the non-party infringed.  *Id.* at 1320-21, 1327.  The non-

6   party's motion to quash was denied in relevant part by the district court.  *Id.* at 1321.  On appeal,

7   the Federal Circuit reversed the denial, holding that Micro Motion had failed to establish the

8   relevance of the requested information.  In a detailed analysis, the court addressed many of the

9   same issues present in the instant case:

10          First, as further discussed in Section IV *infra*, the Federal Circuit rejected the argument

11  by Micro Motion (similar to Oracle's argument here) that the protective order entered into by the

12  plaintiff and defendant obviated the non-party's objections to discovery, holding that a

13  "protective order is not a substitute for establishing relevance or need."  *Id.* at 1325.  The Federal

14  Circuit reasoned that any confidential information supplied by the non-party to the competitor

15  parties would be at risk, especially because the non-party would have no means to control or

16  enforce the terms of the protective order.  *Id.*

17          Next, the Court held that a possible lost profits damages theory did not make relevant

18  discovery regarding the non-party.  *Id.* at 1325-27 ("Micro Motion's assertion of a claim for

19  damages or even lost profit damages in itself does not provide a mantle of relevancy with respect

20  to all of the information it sought from K-Flow.").  The court held that if the plaintiff's lost

21  profits damages theory were sufficient to justify discovery into whether a non-party infringes, a

22  plaintiff "could, in virtually every infringement suit, immediately obtain discovery from all

23  possible competitors by merely filing a complaint asking for damages against one."  *Id.* at 1324-

24  25.

25  _____

26          (...continued from previous page)
    discovery into whether a non-party competitor infringes should be allowed as part of damages

27  discovery.  Thus, any *patent* cases *permitting* discovery into whether a third party infringes are
    distinguishable, as there is at least a possible argument for relevance in such cases.

28

The Court further reasoned that if Micro Motion brought a suit directly against the non-party "on a mere suspicion of infringement," discovery would not be allowed without more. *Id.* at 1327. The Court rejected Micro Motion's argument that discovery might **uncover** a legitimate claim, holding that "discovery rules are designed to assist a party to prove a claim it reasonable believes to be viable **without discovery**, not to find out if it has any basis for a claim." *Id.* (emphasis in original). The Court noted that the mere fact that the non-party was in the same business as the plaintiff at best provided plaintiff with some suspicion of infringement, but it was insufficient to justify intrusive discovery into that subject matter. *Id.* Because the plaintiff in *Micro Motion* did not have a valid Rule 11 basis for alleging infringement, it was not entitled to use the vehicle of a non-party subpoena to obtain discovery for purposes of determining whether or not there was infringement. *Id.*

Just as the plaintiff in *Micro Motion* was not permitted to pursue discovery regarding alleged infringement by a non-party to rebut a speculative damages theory it claimed the defendant would assert, here too Oracle should not be permitted to conduct such discovery. Nor should Oracle be permitted intrusive discovery based merely on its apparent "suspicion of infringement" — consisting of such "evidence" as the fact that Rimini Street offers its services at a discount, or innocuous statements by Ravin to the effect that the general services previously offered by TomorrowNow (which have not even been found to infringe in the underlying litigation) are similar to the current offerings of Rimini Street. *See* Motion at 4, 13:15; *cf.* Ravin Decl., ¶¶ 9-10.

Because Oracle should not be permitted to "engage in merely speculative inquiries in the guise of relevant discovery," *Micro Motion*, 894 F.2d at 1328, Oracle's motion should be denied.

### D. Oracle's Requests Should Be Denied As Improper Pre-Litigation Discovery

Oracle's Motion should be denied for the additional reason that the requests are seeking improper pre-litigation discovery.

As noted in Section II.C above, Oracle executed its subpoenas for Ravin and two other Rimini Street executives **the very same day** that Oracle concluded discussions with Rimini Street aimed at obtaining information for a possible claim against Rimini Street. Given this timing, it is

apparent that Oracle served the requests in the SAP Litigation not for use in that action, but for the improper purpose of fishing for information Oracle hoped it could use in a separate action against Rimini Street. Even if Oracle were able to establish some degree of relevance (which it cannot), the Court should not allow Oracle to use the discovery rules to solicit pre-complaint discovery from the Non-Parties.

"The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion*, 894 F.2d at 1327; Fed. R. Civ. P. 26(b)(1). "[I]n a circumstance involving direct competitors, caution must be used in pre-litigation discovery devices to limit the potential that discovery directed to non-parties is used for the improper purpose of obtaining proprietary information of the competitor." *Ultimate Timing LLC v. Simms*, No. 3:09-mc-6RLYWGH, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28, 2009) (granting motion to squash a subpoena where plaintiff sought discovery from a non-party competitor in a patent matter where the plaintiff had sent the non-party "cease and desist letters" and accused the non-party of infringement).

Here, as in *Ultimate Timing*, Oracle's pre-litigation discovery should be prohibited. Oracle and Rimini Street are direct competitors. Oracle has exchanged correspondence with Rimini Street suggesting that Oracle may be interested in investigating, and possibly pursuing, a potential claim against Rimini Street. *See* Sections I, II.C, *supra*. The timing of the initial Ravin subpoena is telling evidence that Oracle is merely using the SAP Litigation as a vehicle to pursue discovery for another purpose. Given these facts, and given that Rimini Street is not adequately protected by the protective order between Oracle and SAP (as further discussed below), Oracle's attempt to obtain improper pre-litigation discovery should be denied.

### E. Oracle's Specific Requests Are Not Relevant to the Underlying Litigation, and Are Proprietary and/or Burdensome

As discussed above, the legality of Rimini Street's services — Oracle's stated line of relevance in the Motion — is not germane to any issue in the SAP Litigation as a general matter. Accordingly, to the extent that — as Oracle contends — each of Oracle's discovery requests is deemed to relate to the legality of Rimini Street's services, then the requests are all irrelevant.

1  Nonetheless, even when each of the discovery requests at issue here is analyzed on its own

2  merits (or lack thereof), it is even more apparent that the requests (a) are irrelevant, (b) are

3  unduly burdensome, and/or (c) seek proprietary and trade secret information.  As such, the

4  requests should be denied under Fed. R. Civ. P. 26(b)(1).  *See Micro Motion*, 894 F.2d at 1326-

5  27.

6                    **1.      Document Request No. 1:  The Details of Rimini Street's "Business
                              Model" Are Not Relevant, Are Incredibly Burdensome, and Involve
7                              Rimini Street's Core Trade Secrets**

8             Oracle has failed to establish the relevance of the first request for "documents sufficient

9  to show Rimini Street's business model."  Oracle's sole relevance argument is its assertion that

10 Defendants have "thrust" Rimini Street's business model into the damages question related to the

11 underlying litigation, and that SAP's damages theory fails if Rimini Street operates in the "same

12 infringing way" as TomorrowNow.  Motion at 12.  As discussed above, whether Rimini Street

13 infringes is not relevant.  Nor is it clear how discovery into Rimini Street's "business model"

14 will provide evidence relating to the alleged infringement.[13]

15           Depending on how one interprets this request, there are also additional relevance, burden,

16 and trade secret problems.[14]

17 ──────────────────

18     [13] Oracle quotes snippets from an interview in which Ravin makes general comparisons of
   the services offered by TomorrowNow and Rimini Street.  *See* Motion at 13.  Nothing in these
19 quotations — or any other evidence cited by Oracle — even begins to suggest that Rimini Street
   is engaged in any infringing activities.  *See* Ravin Decl., ¶ 5.

20     [14] Oracle does not define "business model" in the Rimini Street subpoena.  It could be
   interpreted in at least a couple of different ways:
21        • One definition of "business model," available from a leading online dictionary site,
            provides:  "[A] design of the operations of a business which focuses on how revenue
22          will be generated . . . Example: A restaurant's business model is to make money by
            cooking and serving food to hungry customers." Levin Decl., Ex. X
23        • Oracle provided a different — and likely overbroad — definition of "Business
24          Model" as part of the document requests accompanying the Ravin subpoena (which
            requests are not at issue in the Motion):
25               any framework for creating economic, social, and/or other forms of value,
                 including a broad range of informal and formal descriptions to represent core
26               aspects of a business, including purpose, offerings, strategies, infrastructure,
                 organization structures, trading practices, and operational processes and policies;
27               and the method of doing business by which a company can sustain itself and
                 generate revenue.
28                                                                          (continued...)

1    Under a narrower definition of "business model" (*see* note 14 *supra*), Rimini Street

2  submits that the materials produced by Rimini Street,[15] and the testimony provided by the Rimini

3  Street witnesses, are "sufficient to show" generally how Rimini Street provides its services and

4  "how revenue [is] generated."[16]  As such, Rimini Street has complied with this request, and there

5  is nothing to compel.

6    Under a broader definition of business model, Oracle's request is clearly overbroad and

7  unduly burdensome.  While the "sufficient to show" limitation would ordinarily circumscribe a

8  request, in the context of a subjective, non-quantifiable concept like a "business model," it is

9  unclear what would be "sufficient."  If Rimini Street is required to provide documents

10  adequately describing every single aspect of its "infrastructure," its "processes," and its

11  "policies," among other aspects of Oracle's broad definition, this would be a herculean effort.

12  Given that Rimini Street has nearly one hundred and fifty employees located around the world,

13  and provides a wide range of services to each of its more than two hundred customers, each of

14  whom receives unique deliverables, providing documents "sufficient to show" Rimini Street's

15  "infrastructure," "processes," and "policies" would also impose an enormous and undue burden

16  on Rimini Street.  Ravin Decl., ¶ 12.

17    The request is separately objectionable because it calls for Rimini Street's most

18  confidential and proprietary trade secrets.  To the extent the request requires Rimini Street to

19  _____

20    (...continued from previous page)
     Russell Decl., Ex. K at 4.  Oracle's definition appears to be taken from an entry from
     the Wikipedia web site, an on-line, user-edited encyclopedia.  *See* Levin Decl., Ex. Y

21

22    [15] Oracle asserts that by agreeing to provide documents in response to this request, Rimini
     Street "acknowledged that its business model is relevant to some extent."  *See* Motion at 13:9.
     Nonsense.  Rimini Street served written objections to the requests, which included relevance
     objections.  *See* Levin Decl., Ex. M.  Producing some discovery subject to one's objections in the
     hopes of avoiding a discovery dispute does not waive one's objections, or constitute an
     "acknowledge[ment]" as to relevance.

23

24

25    [16] *See, e.g.*, Russell Decl., Ex. F at RS-ORACLE 0012-13 (describing, among other things,
     how Rimini Street provides full 24x7x365 support on various listed product lines, including fixes
     and tax and regulatory updates, support for customizations, a more responsive level of service,
     no requirement of upgrades, all at prices that save clients at least 50% on annual support costs
     compared to Oracle Annual Support); *see also, e.g.*, Levin Decl., Ex. Z (Ravin Tr.) at 200:11-20,
     203:2-204:10 (generally describing the services Rimini Street offers to generate revenue).

26

27

28

1   define each of its "strategies," describe its entire "infrastructure," and catalogue at a detailed

2   level its many "operational processes" (among other things), this request goes to the heart of

3   Rimini Street's trade secrets.  The proprietary details of how Rimini Street generates its revenue

4   are precisely what provides Rimini Street with its competitive advantage.  Rimini Street has gone

5   to great lengths to protect these trade secrets, in which it has invested substantial money and

6   resources, and requiring Rimini Street to turn over such information to Oracle and SAP could

7   substantially harm Rimini Street.  Ravin Decl., ¶ 13.  As a competitor to both Oracle and SAP,

8   Rimini Street should not be required to produce its confidential and proprietary business and

9   technical documents, especially given the lack of relevance.  Speculation as to what defendants

10  may argue at trial regarding damages is not enough to warrant such intrusive discovery of a

11  competitor.  *See Micro Motion*, 894 F.2d at 1328; *see also Trading Techs. Int'l*, 2006 WL

12  3541933, at *2.[17]

13          **2.      Document Request No. 2:  Rimini Street's Automated Software Tools
                      Are Not Relevant, And Are Potentially Proprietary And Burdensome**

14

15          In its Motion, Oracle has provided no argument — let alone any factual or legal basis —

16  to demonstrate how documents relating to Rimini Street's "automated tools" are supposedly

17  relevant to the underlying litigation.  *See* Motion at 11-14 (lacking even a mention of "automated

18  tools").  As Oracle has failed to meet its burden under Federal Rule of Civil Procedure 45(c)(3)

19  with respect to Oracle's second document request to Rimini Street, this request should be

20

21

22

23          [17] Although unclear what this has to do with Rimini Street's "business model," the first
        document request additionally purports to seek information regarding "whether Rimini Street
24      currently relies or ever has relied on copies of customer's licensed Oracle software to provide
        software support."   Rimini Street submits that this information is irrelevant for the reasons
25      discussed in Section III. B & C, as it is propounded for the purpose of exploring whether Rimini
        Street may be infringing Oracle's copyrighted works.  Moreover, even if the legality of Rimini
26      Street's offerings were relevant (and it is not), whether or not Rimini Street relies on Oracle's
        copyrighted works to service customers — who are permitted to authorize third parties such as
27      Rimini Street to use such works — does not establish copyright infringement, and therefore the
        requested information could not be used to determine whether there is infringement.

28

1    denied.[18]  *See Katz*, 984 F.2d 422, 424-25; *Nugget Hydroelectric,* 981 F.2d at 438-39; *Fort*

2    *James Corp.*, 1998 WL 709813, at *2.

3           Were Oracle to have argued that this request is relevant to whether Rimini Street's

4    services are infringing (and it is not clear how it relates to this), as discussed above, whether

5    Rimini Street infringes is simply not relevant to the damages SAP potentially owes.  And to the

6    extent this request seeks information concerning proprietary internal software tools and

7    processes, Rimini Street maintains the confidentiality of its internal software tools and processes,

8    which are valuable trade secrets of the company.  Ravin Decl., ¶ 14.  To the extent the request

9    calls for discovery concerning every time Rimini Street has used any software tools for the

10   benefit of a customer, this request could additionally be very burdensome, as Rimini Street

11   provides customized deliverables and services to each of its hundreds of customers.  *Id.*  Sharing

12   proprietary and potentially burdensome Rimini Street trade secrets with Rimini Street's two

13   principal competitors would impose an undue burden on Rimini Street and cause potentially

14   significant loss of value in Rimini Street's proprietary know-how, Ravin Decl., ¶¶ 11-17, and

15   should not be permitted.

16           **3.      Document Request No. 3:  Rimini Street's "Checklists" Are Irrelevant
                         and Potentially Proprietary and Burdensome**

17

18           Oracle has also failed to provide a factual or legal basis to support how the requested

19   "checklists" are relevant to the underlying litigation.  Similar to its argument concerning Rimini

20   Street's business model, Oracle relies only on speculation to support its contention that the

21   checklists are relevant.  Oracle claims that the checklists "may" reveal certain information that

22   could be relevant to whether Rimini Street is infringing Oracle's copyrights.  Motion at 12.

23   Despite the fact that any alleged infringement by Rimini Street is not relevant to the underlying

24   litigation, the possibility that the checklists "may" identify some speculative occurrence is not

25

26           [18] Rimini Street notes that Oracle should not be permitted to address in its Reply Brief this
     topic — or any other topic — not addressed in Oracle's opening brief, as Rimini Street will not
27   have an opportunity to respond.

28

1  enough to support Oracle's argument that the checklists are relevant.[19]  *See Micro Motion*, 894

2  F.2d at 1326-27.

3  Additionally, Rimini Street's proprietary processes used to develop, test, package and

4  deliver its services are company trade secrets, and are critical to Rimini Street's competitive

5  advantage.  Ravin Decl., ¶ 15; Declaration of Beth Lester ("Lester Decl.") ¶¶ 9-10.  Rimini Street

6  offers a competitive advantage over Oracle and other competitors because it is able to

7  consistently release to its customers new tax and regulatory updates **before** Oracle and other

8  competitors are able to do so, and with what many clients believe is higher quality.  Ravin Decl.,

9  ¶¶ 5, 15.  It is therefore not surprising Oracle would want to obtain discovery into those

10  processes.

11  Moreover, to the extent this request calls for **all** checklists or "**other documents**" used to

12  track the development, testing, documentation, packaging, or delivery of tax updates, this would

13  encompass a massive volume of materials over a long time span, and would be burdensome to

14  collect.  Lester Decl., ¶¶ 6-7.

15  Balanced against the complete lack of relevance, Oracle's unduly burdensome request for

16  these highly proprietary documents should be denied.  *See Micro Motion*, 894 F.2d at 1325.

17  **4.  The Further Deposition Testimony Oracle Seeks From Ravin Is Not
        Relevant to the Underlying Litigation, Is Highly Proprietary, and
18      Could Open the Door to Additional Burdensome Discovery**

19  Nor should Oracle be permitted to re-open the Ravin deposition to pursue its suspicions

20  of alleged infringement against Rimini Street.  The parties already spent approximately seven

21  hours deposing Ravin on May 21, 2009.  Levin Decl., ¶ 31, Ex. S.  During that time, in addition

22  to providing testimony regarding his time at TomorrowNow, Ravin provided substantial

23  ──────────────

24  [19] Incredibly, Oracle suggests Rimini Street waived its objections to the requests for
    checklists at Beth Lester's deposition.  Motion at 13:1-4.  Not so.  Allowing Ms. Lester to
    provide generalized foundational testimony as to the likely **existence** of a class of documents is
25  not a concession the documents are relevant, or that Rimini Street has waived confidentiality
    objections regarding the documents themselves.  Indeed, failure to object to relevance at a
26  deposition does not waive the objection.  *See* Fed. R. Civ. P. 32(d)(3)(A) ("An objection to . . .
    relevance . . . is not waived by a failure to make the objection before or during the deposition,
27  unless the ground for it might have been corrected at that time."); *In re Stratosphere Corp.
    Securities Litig.*, 182 F.R.D. 614, 618 (D. Nev. 1998).

28

1    testimony concerning Rimini Street, notwithstanding its irrelevance.  For example, Ravin

2    testified as to the number of customers Rimini Street has, the number of support personnel, the

3    product lines it supports, the types of services it offers, the number of former TomorrowNow

4    customers it supports, among other things.  Levin Decl., Ex. Z.  Even if Judge Laporte's

5    statement that "some" Rimini Street testimony "may be relevant" (*see* 13 *supra*) were controlling

6    here, Ravin has already provided sufficient testimony.

7        Nonetheless, Oracle now seeks an additional two hours to further question Ravin on the

8    details of Rimini Street's business model, the technical operation of Rimini Street, Rimini

9    Street's development and testing environments, and Rimini Street's intellectual property policies,

10   as well as unspecified follow-up questions "flowing" from Ravin's answers.  Motion at 14.  As

11   demonstrated *supra* at 9-20, this information — which is being sought for the purposes of

12   exploring whether Rimini Street infringes Oracle's copyrights — is irrelevant, and constitutes

13   improper pre-litigation discovery.  As such, further testimony should not be ordered.  *See Micro*

14   *Motion*, 894 F.2d at 1328 (quashing deposition subpoena seeking information regarding non-

15   party's infringement).  Moreover, as discussed in Sections III.E.1-3 above, inquiries into Rimini

16   Street's technical operations get at Rimini Street's highly confidential technical information and

17   other trade secrets, and should therefore not be permitted.  *See Micro Motion*, 894 F.2d at 1328.

18       While two additional hours of testimony may not be burdensome on its own, to the extent

19   this court allows Oracle to conduct the Discovery, SAP has already indicated that it needs to be

20   permitted to conduct follow-up discovery.  Once this door has been opened, Rimini Street is

21   skeptical that the parties will be satisfied that the issue of alleged infringement — which has

22   been the subject of more than 300 hours of deposition testimony of TomorrowNow witnesses in

23   the SAP Litigation — can be fully explored within reasonable limits.  *See* Levin Decl. Ex. G.

24   Allowing such further discovery could result in the "quagmire" of multiple "mini-infringement

25   trials on each competing product" that the *Micro Motion* court warned against.  *See Micro*

26   *Motion*, 894 F.2d at 1324.  As the *Micro Motion* court further noted, the "doors of the discovery

27   process may not be so easily opened."  *Id.* at 1325.

28

NON-PARTIES RAVIN AND RIMINI STREET'S
OPPOSITION TO MOTION TO COMPEL
CASE NO.: 2:09-CV-01591 KJD (GWF)

-25-

3782771_3.DOC

**IV. THE PROTECTIVE ORDER IN THE UNDERLYING LITIGATION BETWEEN ORACLE AND SAP IS NOT A SUBSTITUTE FOR ESTABLISHING RELEVANCY FOR FURTHER NON-PARTY DISCOVERY, AND IS IN ANY EVENT INADEQUATE**

Oracle would have this Court believe that Rimini Street should not be concerned about producing the Discovery because there is an adequate protective order in place in the SAP Litigation. *See* Motion at 9, 13-14. That is not the case.

As a preliminary matter, as the Ninth Circuit held in the *Cacique* case, a protective order "does not absolve [plaintiff] from showing that the information sought is relevant." *Cacique,* 169 F.3d at 622-23. Rather, a protective order's purpose "'is to prevent harm by limiting disclosure of ***relevant and necessary*** information.'" *Id.* (emphasis in original) (citation omitted); *see also Micro Motion*, 894 F.2d at 1325. Accordingly, Rimini Street submits that it should not be required to produce the Discovery under ***any*** protective order, regardless of the safeguards built into it.

To the extent this Court concludes that at least some further confidential Rimini Street information should be disclosed, Rimini Street submits that, for a number of reasons, the protective order in place in the litigation between Oracle and SAP is wholly inadequate to protect Non-Party Rimini Street's interests.

First, the parties to the protective order are Oracle and SAP, Rimini Street's two principal competitors, and Rimini Street has no standing to enforce the order. As noted by the Federal Circuit in *Micro Motion*:

> It would be divorced from reality to believe that either party here would serve as the champion of its [non-party competitor] either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial. [The non-party] would, in fact, lose all control of the situation since disclosure of its information depends on the action by a court before whom it has no standing.

894 F.2d at 1325; *see also Fort James Corp.*, 1998 WL 709813, at *2. Thus, the protective order hardly provides Rimini Street with any comfort that any valuable trade secrets it might produce will be protected. Unless the protective order could be modified so that Rimini Street could be given full knowledge as to how its materials are being used, and an opportunity to oppose such usage, the protective order will not afford Rimini Street with the necessary protections.

1    Second, the current protective order does not allow a party to designate information so

2   that Oracle or SAP employees may not have access to it.  Rather, it provides that Oracle and SAP

3   may each designate two in-house attorneys who have direct access to even materials designated

4   "Highly Confidential," such as trade secrets.  *See* Russell Decl., Ex. N at 7.

5    The first Oracle employee with access to such materials is Dorian Daley, Oracle's Senior

6   Vice President, General Counsel, and Secretary.  The other individual Rimini Street understands

7   to be covered under the order was one of the attorneys involved in the discussions that took place

8   between Oracle and Rimini Street, Levin Decl., ¶ 34, and would thus likely be involved in

9   deciding whether to pursue any future potential action against Rimini Street.  Providing such

10  Oracle representatives with access to Rimini Street's highly confidential information would

11  enable Oracle to use such information for purposes other than the SAP Litigation.  In its Motion,

12  far from assuring the court that Oracle's counsel would not use materials obtained in the SAP

13  Litigation for any other purpose, Oracle's counsel instead states that it should be entitled to the

14  Discovery "regardless of where else that discovery might lead."  Motion at 5:6.[20]

15   When the parties met and conferred to discuss these discovery issues, Oracle refused to

16  preclude its in-house counsel from viewing Rimini Street's highly confidential documents.  *See*

17  Levin Decl., ¶ 34.  As such, any confidential information supplied by Rimini Street to its

18  competitors — Oracle and SAP — would be at risk, especially because Rimini Street would have

19  no means to control or enforce the terms of the protective order in a suit where it is not a party.

20   Contrary to Oracle's suggestion, *see* Motion at 9, 14, Judge Laporte has not ruled on —

21  much less "rejected" — Rimini Street's arguments concerning the adequacy of the protective

22

23

24  [20] After Ravin testified at his deposition as to the names of Rimini Street's confidential
     investors (Rimini Street is a private company that does not publicly disclose such information),
25   Ravin's counsel requested that Oracle voluntarily agree not to share with its in-house counsel
     this information, which could not possibly have any relevance even under the arguments Oracle
26   asserts in this Motion.  Levin Decl., ¶ 34 & Ex. AA.  Oracle refused.  *Id.* ¶ 35.  Rimini Street
     submits that this refusal to forego sharing with its in-house counsel even the irrelevant names of
27   Rimini Street's investors raises red flags suggesting Oracle should not be trusted to use any
     confidential Rimini Street discovery it obtains solely for purposes of the SAP Litigation.

28

1   order.[21]  When the issue of the protective order (which had not been briefed) came up at the

2   discovery conference, Judge Laporte stated:  "I haven't thought about [it] and that was just raised

3   today and I don't have any particular position on that."  Levin Decl., Ex. S at 18:21-23.  Judge

4   Laporte concurred with counsel for Ravin that any issues concerning the protective order were

5   not yet ripe for review.  *Id.* at 19:4-7.  Judge Laporte further stated that she was "not prejudging

6   the issue" at that time.  *Id.* at 20:5.  In her order following the conference, while Judge Laporte

7   speculated that issues concerning confidentiality "may" be satisfied by the existing protective

8   order, she ordered that the parties should "meet and confer" regarding Ravin's confidentiality

9   concerns, as the issue had not yet ripened.  *See* Russell Decl., Ex. M at 2.

10          Given the inadequacy of the existing protective order, Rimini Street respectfully submits

11  that any further discovery required under the subpoenas should be produced under an amended

12  protective order which would, at a minimum:  (a) prohibit in-house attorneys at Oracle or SAP

13  from having access to Highly Confidential Rimini Street materials, such as those sought by the

14  Discovery; (b) provide Rimini Street with advance notice, and an opportunity to object, to the

15  extent any party intends to use any of the Rimini Street confidential materials in any pleading or

16  at any hearing, or otherwise disclose such materials; and (c) preclude the use in open court of any

17  Rimini Street confidential materials.

18  **V.      NON-PARTIES ARE ENTITLED TO REIMBURSEMENT OF COSTS AND
            ATTORNEY'S FEES IN OPPOSING THIS MOTION**
19

20          Rimini Street requests that this Court additionally order Oracle to reimburse Rimini

21  Street for the attorney's fees and expenses it has been forced to expend in opposing Oracle's

22  abusive and intrusive non-party discovery requests, as authorized by the Federal Rules.

23          Federal Rule of Civil Procedure 37(a)(5)(B) provides:

24          If the motion [to compel] is denied, the court . . . must, after giving an opportunity
            to be heard, require the movant . . . to pay the party or deponent who opposed the
25          motion its reasonable expenses incurred in opposing the motion, including

26  _____
        [21] Indeed, as discussed above with the relevancy issue, Judge Laporte properly recognized
27  that any issues related to a Nevada subpoena (such as Ravin's deposition) would need to be
    decided by the Nevada Court, not the California Court.  *Id.* at 22:10-12.

28

1   attorney's fees.  But the court must not order this payment if the motion was
    substantially justified or other circumstances make an award of expenses unjust.
2
    A motion to compel is not "substantially justified" where "the vast bulk of legal authority
3
    [i]s against [the movant's] position, and there are no circumstances evident which would make
4
    an award of expenses unjust." *Pearce v. Club Med Sales, Inc.*, 172 F.R.D. 407, 411 (N.D. Cal.
5
    1997); *see also Cram v. Elec. Data Sys. Corp.*, No. 07cv1842, 2008 WL 115438, at *1-2 (S.D.
6
    Cal. Jan 25, 2008).  When a motion to compel is made in bad faith or is not warranted by law, an
7
    award of attorneys' fees under Rule 37(a)(5)(B) is not unjust.  *See In re Shubov*, 253 B.R. 540,
8
    549-50 (9th Cir. B.A.P. 2000).
9
    Here, an award of fees is appropriate.  As the court in *Micro Motion* recognized, the
10
    possibility that non-party discovery regarding infringement could be abused to "harass a
11
    competitor" is readily apparent.  *Micro Motion*, 894 F.2d at 1324-25.  Rimini Street respectfully
12
    submits that, in light of the facts and circumstances of this case, including the timing of the
13
    Ravin subpoena, *see* Section II.C *supra,* Oracle's requests were made for the improper purpose
14
    of intimidating a far smaller competitor with less financial resources than Oracle, attempting to
15
    learn valuable trade secret information about Rimini Street's successful business model and
16
    operations, and trolling for evidence of infringement against a competitor.
17
    Moreover, Oracle has failed to demonstrate how its requests are relevant to the
18
    underlying litigation.  Indeed, on at least two occasions, Oracle conceded that information
19
    concerning Rimini Street is not relevant to the underlying litigation (and has further attempted to
20
    preclude Rimini Street from obtaining some of these admissions), yet it now disingenuously
21
    bases its Motion on the purported relevance of this information.  *See supra* at 9-11.
22
    In addition, Oracle has mischaracterized statements made by the California court
23
    regarding the relevancy of the Discovery.  *See supra* at 12-14.  Oracle has further
24
    mischaracterized the positions taken by SAP concerning the Discovery.  *See supra* at 11-12.
25
    Finally, Oracle has not cited a single authority supporting its entitlement to the Discovery based
26
    on a theory of lost profits copyright damages.  *See* Motion at 11-14.
27

28

1      For the foregoing reasons, Non-Parties respectfully submit they are entitled to

2 reimbursement of costs and attorney's fees from Oracle. *See* Fed. R. Civ. P. 37(a)(5)(B)*;*

3 *Pearce*, 172 F.R.D. at 411; *Shubov*, 253 B.R. at 549-50.

4 **VI.    CONCLUSION**

5      Oracle's attempt to obtain pre-complaint discovery into the proprietary trade secrets of

6 Non-Party Rimini Street — fishing for hoped-for evidence of copyright infringement based on

7 nothing more than its own speculation and innuendo — should be denied because it is

8 undisputedly irrelevant and because it is highly intrusive.  For the foregoing reasons, Non-Parties

9 Rimini Street and Ravin respectfully request that the Court deny Oracle's Motion to Compel and

10 award Non-Parties their attorney's fees and costs in opposing the Motion.

11

12 Dated:  September 14, 2009        WILSON SONSINI GOODRICH & ROSATI
                           Professional Corporation

13

14                         By: /s/  Michael B. Levin
                               MICHAEL B. LEVIN

15

16                         Attorneys for Non-Parties
                         RIMINI STREET, INC. AND SETH RAVIN

17

18

19

20

21

22

23

24

25

26

27

28

AARON D. FORD, Esq. NSBN 7704
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5265
Facsimile: (702) 784-5252
Email: aford@swlaw.com

JONATHAN M. JACOBSON, Esq. (admitted *pro hac vice*)
MICHAEL B. LEVIN, Esq. (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: jjacobson@wsgr.com; mlevin@wsgr.com

Attorneys for Non-Parties
SETH RAVIN AND RIMINI STREET INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC, a Colorado Corporation, *et. al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>SAP AG, a German corporation, *et. al.*,<br><br>    Defendants. | CASE NO.: 2:09-CV-01591 KJD (GWF) |

**<u>CERTIFICATE OF SERVICE</u>**

I am an employee at Wilson Sonsini Goodrich & Rosati. I certify that I served a copy of the foregoing on the 14th day of September 2009 via electronic service through the United States District Court for the District of Nevada's ECF System upon each party in the case who is registered as an electronic case filing user with the Clerk.

/s/ Michael B. Levin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28