SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

LEWIS AND ROCA LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
WAllen@LRLaw.com

*Attorneys for Defendants*
*Rimini Street, Inc., and Seth Ravin*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

ORACLE USA, INC., a Colorado corporation;
and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC. , a Nevada corporation;
SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-0106-LRH-PAL

**DEFENDANT RIMINI STREET
INC.'S RESPONSE TO ORACLE'S
OBJECTIONS PURSUANT TO FED.
R. CIV. P. 56(c)(2) TO EVIDENCE
SUBMITTED IN SUPPORT OF
DEFENDANT'S OPPOSITION TO
ORACLE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1    Defendant Rimini Street, Inc. hereby submits responses to objections made by Plaintiffs

2    Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively,

3    "Oracle") to materials submitted with Defendant's Opposition to Oracle's Motion for Partial

4    Summary Judgment.

5    **I.    LEGAL STANDARD FOR OBJECTIONS**

6    **A.    Rule 56(c)(2)**

7    Rule 56(c)(2) of the Federal Rules of Civil Procedure allows a party to object to evidence

8    that "cannot be presented in a form that would be admissible in evidence." Therefore, "[o]n

9    summary judgment, a party need not present evidence in a form admissible at trial because at this

10   stage, courts focus on the admissibility of the evidence's contents rather than on the admissibility of

11   the form." *In re Agribiotech, Inc.*, 2005 U.S. Dist. LEXIS 6467, at *30 (D. Nev. Mar. 2, 2005)

12   (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)).

13   **B.    Parol Evidence**

14   Contrary to Oracle's assertions, California courts recognize a broad exception to the parol

15   evidence rule: "Extrinsic evidence is admissible to demonstrate that there is an ambiguity in an

16   instrument and for the purpose of construing this ambiguity."[1] *Adobe Sys. Inc. v. One Stop Micro,*

17   *Inc.*, 84 F. Supp. 2d 1086, 1090 (N.D. Cal. 2000) (internal citations omitted); *see also A. Kemp*

18   *Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 496 (9th Cir. 1988) ("The parol evidence rules

19   requires that courts consider extrinsic evidence to determine whether the contract is ambiguous.").

20   Thus, a court must consider the "circumstances surrounding the making of the agreement including

21   the object, nature and subject matter of the writing so that the court can place itself in the same

22   situation in which the parties found themselves at the time of contracting." *Sandberg v. State Farm*

23   *Mut. Auto. Ins. Co.*, 1999 U.S. App. LEXIS 9264 (9th Cir. Cal. May 13, 1999). To do so, a court

24   may consider industry customs, course of dealing, and course of performance in interpreting an

25

26   [1] Like California, Colorado no longer applies a rigid "four corners" rule, considering extrinsic
     evidence to determine whether the contract is ambiguous. *See Sola Salon Studios, LLC v.*
27   *Heller*, No. 08-cv-01565-PAB-BNB, 2012 U.S. Dist. LEXIS 36247, at *6 (D. Colo. Mar. 19,
     2012) (citations omitted).

28                                                    1

1    ambiguity and in determining whether an ambiguity exists. *Adobe Sys.*, 84 F. Supp. 2d at 1090

2    (internal citations omitted). "It is reversible error for a trial court to refuse to consider such extrinsic

3    evidence on the basis of the trial court's own conclusion that the language of the contract appears to

4    be clear and unambiguous." *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1350-51, 8 Cal. Rptr.

5    3d 649, 655 (Cal. App. 2004).

6          **C.       Lack of Personal Knowledge**

7          Because Mr. Hilliard is offered by Rimini as an expert witness, Oracle's objections under

8    Fed. R. Evid. 602 are misplaced under the plain language of that rule: "This rule does not apply to a

9    witness's expert testimony under Rule 703." Fed. R. Evid. 602.  Indeed, under Fed. R. Evid. 703,

10   "[a]n expert may base an opinion on facts or data in the case that the expert *has been made aware of*

11   *or* personally observed." Fed. R. Evid. 703 (emphasis added).  Regardless, Mr. Hilliard has personal

12   knowledge of many of the facts in his declaration, as he describes throughout his declaration

13   including in the sections regarding his background and experience.

14         **D.       Improper Expert Opinion**

15         Oracle objects under Fed. R. Evid. 702, pointing to a perceived "absence in Mr. Hilliard's

16   declaration to offer any admissible evidence that would show a genuine dispute of material fact."

17   Dkt. 286 at 3, ll. 6-7.  However, "[i]f experts in the particular field would reasonably rely on

18   [particular] kinds of facts or data in forming an opinion on the subject, *[those facts or data] need not*

19   *be admissible for the opinion to be admitted*." Fed. R. Evid. 703 (emphasis added).  Further, "Expert

20   opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give

21   an expert opinion and the factual basis for the opinion is stated in the affidavit, *even though the*

22   *underlying factual details and reasoning upon which the opinion is based are not.*" *Walton v. U.S.*

23   *Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007) (emphasis added) (internal quotation marks

24   omitted); *see also Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 831-32 (9th Cir. 2001).

25         Mr. Hilliard does not merely "provide a laundry list of experience or material considered and

26   then separately offer a list of conclusions," as Oracle suggests.  Objections at 3, ll. 12-13.  Rather,

27

28                                                          2

1   Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of licenses similar to

2   those at-issue, and he offers testimony regarding his experience in the field, the facts he relies upon,

3   and his opinions regarding industry custom and usage for certain license language. His testimony is

4   thus "relevant and admissible to expose the latent ambiguity in the contract language regarding the

5   industry's customary usage," as well as to construing ambiguous terms. *Wolf v. Superior Court*, 8

6   Cal. Rptr. 3d 649, 659 (Cal. App. 2004) (holding that an expert with experience negotiating and

7   reviewing contracts may testify regarding the industry and accepted meanings of ambiguous contract

8   language).

9        **E.**      **Hearsay**

10        As detailed herein, much of what Oracle contends is hearsay could easily be presented at trial

11   in admissible form, satisfying the requirements of Rule 56(c)(2). Further, much of what Oracle

12   objects to as hearsay is not hearsay at all, for it is not offered for the truth of the matter asserted.

13        **F.**      **Legal Conclusion**

14        Industry experts may offer testimony regarding the accepted meaning of contract language

15   within a given industry. *Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 659 (Cal. App. 2004). This is

16   precisely what the Hilliard Declaration does in the portions objected to by Oracle as improper legal

17   conclusion.

18        **G.**      **Not Authenticated**

19        Oracle's authentication objections are largely baseless, but even where they are not the

20   requirements of Rule 56(c)(2) are satisfied because Rimini anticipates authenticating the documents

21   at trial. *See* Rule 56(c)(2); *In re Agribiotech, Inc.*, 2005 U.S. Dist. LEXIS 6467, at *30 (D. Nev.

22   Mar. 2, 2005); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

23        **H.**      **Requirement Of The Original Document**

24        Oracle's objections based on originality of licenses are meritless because the contents of the

25   attached exhibits "accurately reflect the information" of the original, executed licenses. Fed. R.

26

27

28

1  Evid. 1001(d).  Regardless, Rimini anticipates offering the original documents at trial, satisfying

2  Rule 56(c)(2).

3  **II.    THE HILLIARD DECLARATION AND EXHIBITS 31-35**

4       **Declaration Paragraph 1:**

5       I have been retained by counsel for the Defendants in connection with this matter. I have

6  attached a description of my accomplishments and relevant experience in my professional

7  biography, attached as Exhibit 31. I am over 18 years of age and am mentally competent to make

8  this declaration.

9       **Oracle's Objections**:

10       Oracle objects that this paragraph and exhibit are irrelevant.

11       **Rimini's Response:**

12       Paragraph 1 and Exhibit 31 relate Mr. Hilliard's "knowledge, skill, experience, training, or

13  education," which is relevant to establishing that "the affiant is competent to give an expert opinion"

14  in this case. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007); Fed. R. Evid. 702.

15       **Declaration Paragraph 2:**

16       My educational background includes an M.B.A. from Harvard Business School and a

17  Baccalaureate degree in mechanical engineering with Deans' List academic honors from the

18  Massachusetts Institute of Technology. In addition, I have lectured on computer systems and

19  programming for the Arizona State University School of Business and the American Management

20  Association. I held both line and staff positions for several major computer companies where I had

21  responsibilities in the areas of designing, developing, marketing and supporting a wide variety of

22  computer products used in both business and government applications.

23       **Oracle's Objections**:

24       Oracle objects that this paragraph is irrelevant.

25       **Rimini's Response:**

26

27

28

4

1    Paragraph 2 relates Mr. Hilliard's "knowledge, skill, experience, training, or education,"

2  which is relevant to establishing that "the affiant is competent to give an expert opinion" in this case.

3  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007); Fed. R. Evid. 702.

4    **Declaration Paragraph 3**:

5    Over the past 31 years, I have consulted to more than 200 companies, governmental agencies

6  and not-for-profit organizations regarding issues related to the selection, implementation and

7  ongoing support of business computer applications (including both hardware and software) to

8  perform functions comparable to the enterprise applications marketed and supported by Oracle. In

9  particular, I have consulted to clients that had licensed or were considering the license of Oracle's

10 PeopleSoft, J.D. Edwards, Siebel, and/or Oracle EBusiness Suite applications (or their predecessors).

11   **Oracle's Objections**:

12   Oracle objects that this paragraph is irrelevant.

13   **Rimini's Response**:

14   Paragraph 3 relates Mr. Hilliard's "knowledge, skill, experience, training, or education,"

15 which is relevant to establishing that "the affiant is competent to give an expert opinion" in this case.

16 *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007); Fed. R. Evid. 702.

17   **Declaration Paragraph 4**:

18   I have reviewed more than 300 business system contracts (nearly all of which were either

19 solely software licenses or included software licenses as part of a package that also included related

20 hardware purchase and/or service contracts), and acted as a contract negotiator in more than 100

21 instances for consulting clients that were licensing business software for their use. I have also

22 reviewed more than 100 additional software licenses in the course of various expert witness

23 engagements where the licensed software was at issue in the litigation for which I was engaged.

24 Many of these licenses were for Oracle software, and nearly all were for business software products

25 that performed ERP or similar applications, comparable to those performed by Oracle's ERP and

26 database products.

27

28

5

**Oracle's Objections**:

Oracle objects that this paragraph is irrelevant.

**Rimini's Response:**

Paragraph 4 relates Mr. Hilliard's "knowledge, skill, experience, training, or education," which is relevant to establishing that "the affiant is competent to give an expert opinion" in this case. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007); Fed. R. Evid. 702.

**Declaration Paragraph 5**:

In regard to this matter, I have reviewed information from Rimini Street including information regarding their technical practices and procedures; I have reviewed Oracle documents including license agreements for the software-at-issue and technical documents and recommendations provided by Oracle to its licensees; I have reviewed documents relating to the customs and practices of software vendors, their licensees, and various third party support providers in the ERP software industry.

**Oracle's Objections**:

Oracle objects that this paragraph is irrelevant.

**Rimini's Response**:

Paragraph 5 describes Mr. Hilliard's "knowledge, skill, experience, training, or education," which is relevant to establishing that "the affiant is competent to give an expert opinion" in this case. *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007); Fed. R. Evid. 702.

**Declaration Paragraph 6**:

This case involves complex software platforms known as Enterprise Resource Planning (ERP) systems. By the mid-1990s, ERP applications provided the ability to computerize functions across the entire organization where they were implemented. By the decade of the 2000s, the most successful developers of such enterprise software applications were Oracle, PeopleSoft, J.D. Edwards, Siebel (CRM only) and SAP. Today, ERP systems are used primarily by large and mid-size organizations to integrate internal and external management information, with the goal of

1   managing customer relationships, accounting, finances, supply chains, and human resources within a

2   single software platform.

3   **Oracle's Objections**:

4   Oracle objects that this paragraph is irrelevant, does not demonstrate personal knowledge,

5   and does not demonstrate any reliable factual basis for Mr. Hilliard to offer as expert opinions.

6   **Rimini's Response**:

7   This paragraph is relevant to "the circumstances in which a contract was written, the

8   subsequent conduct of the parties, and the common usage of particular terms in a given industry."

9   *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006). Even if the Court determines

10  a contract unambiguous, it is reversible error not to consider extrinsic evidence of industry custom.

11  *Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 655-56 (Cal. App. 2004).

12  Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

13  paragraphs 1 through 5. Even if he did not, Rimini offers Mr. Hilliard as an expert under Fed. R.

14  Civ. P. 703, and he may thus testify to facts he has been made aware of, even if he lacks personal

15  knowledge of those facts. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the

16  case that the expert *has been made aware of* or personally observed.") (emphasis added). This

17  evidence need not be admissible at trial for Mr. Hilliard to rely upon it, *see* Fed. R. Civ. P. 703, but

18  Rimini nonetheless anticipates that it would present sworn testimony and/or authenticated

19  documents sufficient to establish the admissibility of these facts.

20  Finally, as explained by his declaration, Mr. Hilliard is an industry expert who has negotiated

21  and interpreted hundreds of licenses similar to those at-issue. His testimony is thus "relevant and

22  admissible to expose the latent ambiguity in the contract language regarding the industry's

23  customary usage," as well as to interpreting any ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659 (holding

24  that an expert with experience negotiating and reviewing contracts may testify regarding the industry

25  and accepted meanings of ambiguous contract language).

26  **Declaration Paragraph 7**:

27

28

Due to different customer's unique business needs and because of changes in business conditions and regulatory requirements (including such things as payroll taxes), many users of such enterprise software products have never found it feasible to use them without some level of customizations and/or periodic updates. To allow such customizations and updating (among other reasons), most major ERP software developers (including Oracle) routinely grant their customers access to some or all of the source code for the licensed applications to allow for these needed customer modifications. Nonetheless, source code access of this nature is not typically required for many other common software support activities. In particular, it is not required when either (a) installing the ERP software (prior to any modifications being made) or (b) copying the software in accordance with the allowed copying specified in the ERP software license.

**Oracle's Objections**:

Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to offer as expert opinions, and is inadmissible legal conclusion.

**Rimini's Response**:

This paragraph is relevant to "the circumstances in which a contract was written, the subsequent conduct of the parties, and the common usage of particular terms in a given industry." *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006). It is reversible error not to consider extrinsic evidence of industry custom. *Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 655-56 (Cal. App. 2004).

"The exception to the parol evidence rule is broad – extrinsic evidence is admissible to demonstrate that there is an ambiguity in an instrument and for the purpose of construing this ambiguity." *Adobe Sys.*, 84 F. Supp. 2d at 1090; *see also Welles v. Turner Entm't Co.*, 503 F.3d 728, 737 (9th Cir. 2007). It is error not to consider extrinsic evidence in interpreting a contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8 Cal. Rptr. 3d at 655-56 (Cal. App. 2004). This is true "even if a contract appears unambiguous on its face."

8

1    *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio Pictures,*

2    *Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

3        Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

4    paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

5    he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

6    facts. Fed. R. Evid. 703. This evidence need not be admissible at trial for Mr. Hilliard to rely upon

7    it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

8    and/or authenticated documents sufficient to establish the admissibility of these facts.

9        Further, Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of

10   licenses similar to those-at-issue, and his testimony is thus relevant and admissible to expose any

11   latent ambiguities in the contract and in interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659

12   (holding that an expert with experience negotiating and reviewing contracts within an industry may

13   testify regarding the industry and accepted meanings of ambiguous contract language). An expert's

14   opinions for accepted meanings within an industry are admissible, and do not constitute improper

15   legal conclusions. *See Wolf*, 8 Cal. Rptr. 3d at 659.

16   **Declaration Paragraph 8:**

17       Instead of requiring all their customers to make the changes needed to comply with these

18   necessary changes themselves, ERP software developers began offering support contracts to their

19   customers covering software updates needed to stay current and also including repairs to any defects

20   that might be uncovered. This practice created new problems for the major software developers,

21   however, because once the customers had modified the software to meet their individual

22   requirements, the regular updates and repairs that the developers produce, test and release

23   periodically for the standard versions of the software might no longer work properly with the

24   modified versions of the software in use in their customers' businesses.

25   **Oracle's Objections:**

26

27

28
                                              9

1     Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

2  demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to

3  offer as expert opinions, and is inadmissible legal conclusion.

4     **Rimini's Response**:

5     This paragraph is relevant to "the circumstances in which a contract was written, the

6  subsequent conduct of the parties, and the common usage of particular terms in a given industry."

7  *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

8     The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

9  503 F.3d 728, 737 (9th Cir. 2007). It is error not to consider extrinsic evidence in interpreting a

10  contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

11  Cal. Rptr. 3d at 655-56 (Cal. App. 2004). This is true "even if a contract appears unambiguous on its

12  face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio*

13  *Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

14     Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

15  paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

16  he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

17  facts. Fed. R. Evid. 703. This evidence need not be admissible at trial for Mr. Hilliard to rely upon

18  it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

19  and/or authenticated documents sufficient to establish the admissibility of these facts.

20     Further, Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of

21  licenses similar to those-at-issue, and his testimony is thus relevant and admissible to expose any

22  latent ambiguities in the contract and in interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659

23  (holding that an expert with experience negotiating and reviewing contracts within an industry may

24  testify regarding the industry and accepted meanings of ambiguous contract language). An expert's

25  opinions for accepted meanings within an industry are admissible, and do not constitute improper

26  legal conclusions. *See Wolf*, 8 Cal. Rptr. 3d at 659.

27

28                                          10

**Declaration Paragraph 9:**

To address the needs of their clients, all of the major software developers began offering consulting and programming services so that customers that did not want to use their own employees for customization and modification could contract out these services. Additionally, the major ERP software developers, including SAP, Microsoft, Oracle, PeopleSoft, J.D. Edwards and Siebel, began referring existing and prospective licensees to third party consultants and consulting firms to: market their enterprise applications software products; install and configure the software; make custom modifications if needed; develop customized add-on functionality needed to meet requirements of specific industries; and provide ongoing support for such modifications when the changes rendered them ineligible for standard support from the developer itself.

**Oracle's Objections**:

Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to offer as expert opinions, and is inadmissible legal conclusion.

**Rimini's Response**:

This paragraph is relevant to "the circumstances in which a contract was written, the subsequent conduct of the parties, and the common usage of particular terms in a given industry." *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 737 (9th Cir. 2007). It is error not to consider extrinsic evidence in interpreting a contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8 Cal. Rptr. 3d at 655-56 (Cal. App. 2004). This is true "even if a contract appears unambiguous on its face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

1    he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

2    facts.  Fed. R. Evid. 703.  This evidence need not be admissible at trial for Mr. Hilliard to rely upon

3    it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

4    and/or authenticated documents sufficient to establish the admissibility of these facts.

5         Further, Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of

6    licenses similar to those-at-issue, and his testimony is thus relevant and admissible to expose any

7    latent ambiguities in the contract and in interpreting those ambiguities.  *Wolf*, 8 Cal. Rptr. 3d at 659

8    (holding that an expert with experience negotiating and reviewing contracts within an industry may

9    testify regarding the industry and accepted meanings of ambiguous contract language).  An expert's

10   opinions for accepted meanings within an industry are admissible, and do not constitute improper

11   legal conclusions. *See Wolf*, 8 Cal. Rptr. 3d at 659.

12        **Declaration Paragraph 10:**

13        By the early 1990s, a service industry emerged consisting of independent consultants,

14   programmers and consulting firms that had developed specific implementation and support expertise

15   for each of the major developers' products. One portion of this industry includes the developers'

16   designated "business partners", and every major enterprise software developer (including Oracle) set

17   up official business partner networks. The software developers, including Oracle, rely upon these

18   networks of business partners to implement, customize and otherwise support its ERP licensees.

19   Licensees often engage third parties to implement, customize and otherwise support the software, as

20   they often lack the requisite inhouse resources. Over the past 30 years, I have worked with dozens of

21   clients that have implemented enterprise software systems, including Oracle, PeopleSoft and J.D.

22   Edwards, and that acquired these systems through third party consultants and/or engaged such

23   consultants for the implementation and on-going services in conjunction with these systems.

24        **Oracle's Objections:**

1    Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

2  demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to

3  offer as expert opinions, and is inadmissible legal conclusion.

4    **Rimini's Response**:

5    This paragraph is relevant to "the circumstances in which a contract was written, the

6  subsequent conduct of the parties, and the common usage of particular terms in a given industry."

7  *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).  It is also relevant to Mr.

8  Hilliard's "knowledge, skill, experience, training, or education," which is relevant to establishing

9  that "the affiant is competent to give an expert opinion" in this case. *Walton v. U.S. Marshals Serv.*,

10  492 F.3d 998, 1008 (9th Cir. 2007); Fed. R. Evid. 702

11    The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

12  503 F.3d 728, 737 (9th Cir. 2007).  It is error not to consider extrinsic evidence in interpreting a

13  contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

14  Cal. Rptr. 3d at 655-56 (Cal. App. 2004).  This is true "even if a contract appears unambiguous on its

15  face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio*

16  *Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

17    Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

18  paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

19  he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

20  facts. Fed. R. Evid. 703.  This evidence need not be admissible at trial for Mr. Hilliard to rely upon

21  it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

22  and/or authenticated documents sufficient to establish the admissibility of these facts.

23    Further, Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of

24  licenses similar to those-at-issue, and his testimony is thus relevant and admissible to expose any

25  latent ambiguities in the contract and in interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659

26  (holding that an expert with experience negotiating and reviewing contracts within an industry may

27

28

13

1    testify regarding the industry and accepted meanings of ambiguous contract language).  An expert's

2    opinions for accepted meanings within an industry are admissible, and do not constitute improper

3    legal conclusions. *See Wolf*, 8 Cal. Rptr. 3d at 659.

4        **Declaration Paragraph 11:**

5        Enterprise software support — whether done by the developers of the software, licensees of

6    the software, or consultants engaged by the licensees — requires the creation of multiple non-

7    production copies of the software applications being supported. Oracle's technical documentation

8    relating to software copies reflects these normal and customary industry practices and encourages its

9    licensees to create multiple copies of its software environments. ▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Likewise,

12   Oracle further explains, "Throughout the implementation process, your testers need to constantly test

13   the application to make sure that it performs properly. Your team would also be constantly migrating

14   configuration changes from development to test to staging environments. Ultimately, when you are

15   ready to go live with your PeopleSoft applications, your administrators would deploy your tested

16   configuration from staging to production environment." Ex. 24 (ORCLRS0811822, at

17   ORCLRS0811824). As reflected by these documents, the maintenance of non-production software

18   copies (e.g., for development, testing, archival, disaster recovery, troubleshooting and other support

19   purposes) is the normal and customary practice in the industry and, in my experience of reviewing

20   hundreds of enterprise software licenses, there are seldom (if ever) any contractual limits on the

21   number of non-production copies that licensees can maintain. ▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮

24        **Oracle's Objections:**

25

26

27

28                                    14

1       Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

2   demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to

3   offer as expert opinions, and is inadmissible legal conclusion.

4       **Rimini's Response:**

5       This paragraph is relevant to "the circumstances in which a contract was written, the

6   subsequent conduct of the parties, and the common usage of particular terms in a given industry."

7   *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

8       The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

9   503 F.3d 728, 737 (9th Cir. 2007).   It is error not to consider extrinsic evidence in interpreting a

10   contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

11   Cal. Rptr. 3d at 655-56 (Cal. App. 2004).  This is true "even if a contract appears unambiguous on its

12   face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio*

13   *Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

14       Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

15   paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

16   he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

17   facts.  Fed. R. Evid. 703.  This evidence need not be admissible at trial for Mr. Hilliard to rely upon

18   it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

19   and/or authenticated documents sufficient to establish the admissibility of these facts.

20       Further, Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of

21   licenses similar to those-at-issue, and his testimony is thus relevant and admissible to expose any

22   latent ambiguities in the contract and in interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659

23   (holding that an expert with experience negotiating and reviewing contracts within an industry may

24   testify regarding the industry and accepted meanings of ambiguous contract language).  An expert's

25   opinions for accepted meanings within an industry are admissible, and do not constitute improper

26   legal conclusions. *See Wolf*, 8 Cal. Rptr. 3d at 659.

27

28

        15

**Declaration Paragraph 12 & nn. 1-2:**

When engaged, consultants likewise create and rely on non-production copies of the software to provide services in connection with the licensees' use of the software. For example, development of custom modifications to prior code has historically occurred on computers maintained by the consultants with development occurring both in, and outside of, the United States. The motivation to have this work performed offsite (for purposes of convenience and cost, among others) remains similar today as when it first began in the early 1990s. In particular, the normal and customary way that a professional software development organization (such as a consulting organization) modifies and updates a customer's software is to create non-production copies of the software on the consultant's computer systems, such that the non-production versions of the software can be maintained and modified as needed. Oracle acknowledges that companies often "copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing." Ex. 27 (ORCLRS0811866-72) at ORCLRS0811870. Oracle's website explains that it is "normal" for a single production instance of Oracle ERP software "to have ten or more corresponding test or development instance copies for use by several different teams of developers or departments." [FOOTNOTE 1] In fact, Oracle provides its licensees tools to facilitate remote development work. [FOOTNOTE 2]

FOOTNOTE 1: Mask Your Secrets Using Oracle Enterprise Manager, http://www.oracle.com/technetwork/articles/oem/havewala-datamasking-grid-166436.html (last visited April 20, 2012) (discussing data confidentiality concerns that should addressed "before providing an off-site or development copy of the database.").

FOOTNOTE 2: Masking Sensitive Data, http://docs.oracle.com/cd/E1188201/server.112/e16540/tdm_data_masking.htm (last visited April 20, 2012) (describing a data obscuration tool that allows for test data to be shared with "external business partners such as offshore testing companies").

**Oracle's Objections:**

16

1       Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

2   demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to

3   offer as expert opinions, and is inadmissible legal conclusion.

4       **Rimini's Response:**

5       This paragraph is relevant to "the circumstances in which a contract was written, the

6   subsequent conduct of the parties, and the common usage of particular terms in a given industry."

7   *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

8       The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

9   503 F.3d 728, 737 (9th Cir. 2007).   It is error not to consider extrinsic evidence in interpreting a

10  contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

11  Cal. Rptr. 3d at 655-56 (Cal. App. 2004).   This is true "even if a contract appears unambiguous on its

12  face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio*

13  *Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

14      Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

15  paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

16  he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

17  facts.   Fed. R. Evid. 703.   This evidence need not be admissible at trial for Mr. Hilliard to rely upon

18  it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

19  and/or authenticated documents sufficient to establish the admissibility of these facts.

20      Further, Mr. Hilliard is an industry expert who has negotiated and interpreted hundreds of

21  licenses similar to those-at-issue, and his testimony is thus relevant and admissible to expose any

22  latent ambiguities in the contract and in interpreting those ambiguities.   *Wolf*, 8 Cal. Rptr. 3d at 659

23  (holding that an expert with experience negotiating and reviewing contracts within an industry may

24  testify regarding the industry and accepted meanings of ambiguous contract language).   An expert's

25  opinions for accepted meanings within an industry are admissible, and do not constitute improper

26  legal conclusions. *See Wolf*, 8 Cal. Rptr. 3d at 659.

27

28

**Declaration Paragraph 13 & n. 3:**

Further, several Oracle Partners acknowledge and promote the fact that they follow this industry custom when providing services to Oracle licensees. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Further, Astute Business Solutions, eVerge Group, CedarCrestone, and Summit Technology, all Oracle Partners, advertise on their websites the use of an "upgrade lab" on the consultant's computer systems wherein the licensee's environment is replicated and used to provide services to the licensee. [FOOTNOTE 3] As one Oracle Partner explains, "Our PeopleSoft Center of Excellence hosts and manages an 'Upgrade Lab' which replicates the client environment at our offshore locations. The initial and most time consuming activities are carried out in our Upgrade Lab thus benefiting the clients with immense cost savings." Ex. 32.

FOOTNOTE 3: See Exhibits 32 to 35, which are true and correct copies of the web pages indicated below.

Ex. 32, Astute Business Solutions, Astute Labs

http://www.beastute.com/index.php?option=com_content&view=article&id=76&Itemid=191 , (last visited April 20, 2012) ("Our PeopleSoft Center of Excellence hosts and manages an 'Upgrade Lab' which replicates the client environment at our offshore locations. The initial and most time consuming activities are carried out in our Upgrade Lab thus benefiting the clients with immense cost savings.");

Ex. 33, CedarCrestone, Inc., CedarCrestone PeopleSoft Upgrades,

http://www.cedarcrestone.com/media/documents/PSUpgrades.pdf (last visited April 20, 2012) ("CedarCrestone also offers a more stream-lined and cost-effective Upgrade Lab Solution, using [CedarCrestone's] state-of-the-art data center.");

Ex. 34, eVerge Group, Inc., PeopleSoft ERP Upgrades,

18

1   http://www.evergegroup.com/software_upgrades.htm (last visited April 20, 2012) ("eVerge

2   Group technical staff will copy the client database to external media for transport to the eVerge

3   Group upgrade lab.").

4   Ex. 35, Summit Technology, Inc., PeopleSoft Upgrades,

5   http://www.summitsti.com/services/peoplesoft-upgrades (last visited April 20, 2012) ("By

6   taking advantage of an off-site [PeopleSoft] upgrade, we can manage your project in effective

7   manner, because you can concentrate your efforts on your core business, and let us handle your

8   upgrade in our state-of-the-art upgrade lab.").

9   **Oracle's Objections**:

10   Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

11   demonstrate personal knowledge, is hearsay, is insufficiently authenticated, does not demonstrate

12   any reliable factual basis for Mr. Hilliard to offer as expert opinions, and is inadmissible legal

13   conclusion.

14   **Rimini's Response**:

15   This paragraph is relevant to "the circumstances in which a contract was written, the

16   subsequent conduct of the parties, and the common usage of particular terms in a given industry."

17   *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

18   The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

19   503 F.3d 728, 737 (9th Cir. 2007). It is error not to consider extrinsic evidence in interpreting a

20   contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

21   Cal. Rptr. 3d at 655-56 (Cal. App. 2004). This is true "even if a contract appears unambiguous on its

22   face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio

23   Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

24   Mr. Hilliard has personal knowledge of many of these facts. But even if he did not, Mr.

25   Hilliard is offered as an expert under Fed. R. Civ. P. 703, and he may thus testify to facts he has been

26   made aware of, even if he lacks personal knowledge of those facts. Fed. R. Evid. 703. This

27

28

19

1    evidence need not be admissible at trial for Mr. Hilliard to rely upon it, *see Fed. R. Civ. P. 703*, but

2    Rimini nonetheless anticipates that it would present sworn testimony and/or authenticated

3    documents sufficient to establish the admissibility of these facts.

4           This paragraph is not hearsay.  Mr. Simmons' deposition testimony is admissible, and even

5    so Rimini may call Mr. Simmons at trial and/or offer his deposition testimony under Fed. R. Evid.

6    804(b)(1).  Exhibits 32-35 are not hearsay either, for they are offered as evidence that Oracle

7    partners "acknowledge and promote" an industry custom, not for the truth that they actually provide

8    it in the manner stated.  Regardless, Mr. Hilliard is being offered as an expert witness and he thus

9    may rely on hearsay evidence in forming his opinions. *See* Fed. R. Evid. 703.  Finally, to the extent

10   the exhibits contain inadmissible hearsay, Rimini intends to authenticate them at trial through

11   competent testimony.

12          Regarding the admissibility of Mr. Hilliard's testimony itself, Mr. Hilliard is an industry

13   expert who has negotiated and interpreted hundreds of licenses similar to those-at-issue, and his

14   testimony is thus relevant and admissible to expose any latent ambiguities in the contract and in

15   interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659 (holding that an expert with experience

16   negotiating and reviewing contracts within an industry may testify regarding the industry and

17   accepted meanings of ambiguous contract language).  An expert's opinions for accepted meanings

18   within an industry are admissible, and do not constitute improper legal conclusions. *See Wolf*, 8 Cal.

19   Rptr. 3d at 659.

20          **Declaration Paragraph 14:**

21          To provide their implementation and support services in an efficient and cost effective

22   manner, third party consulting firms typically use the non-production copies of the software

23   applications on their systems to develop the fixes and enhancements that they subsequently

24   distribute to the licensed software users they support. Further, it is fully consistent with the customs

25   and practices in the software industry for such consulting firm to provide cloned portions of

26   applications software and updates to other customers licensed for the same underlying software.

27

28                                                      20

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4    This practice by consultants reflects the fact that it is the actual ERP software that is licensed, not the

5 media or a particular embodiment of the software. ERP software venders customarily afford their

6 clients non-exclusive, perpetual, limited licenses to use the licensed software programs, while

7 granting multiple clients license rights to the same intellectual property. Therefore, the industry

8 practice of providing multiple clients updates or fixes created in a single development environment

9 permits efficient and cost effective development, while reflecting the practice of the software

10 vendors to license the same software to multiple clients. ██████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ██████████████

14    **Oracle's Objections**:

15    Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

16 demonstrate personal knowledge, is hearsay, does not demonstrate any reliable factual basis for Mr.

17 Hilliard to offer as expert opinions, and is inadmissible legal conclusion.

18    **Rimini's Response**:

19    This paragraph is relevant to "the circumstances in which a contract was written, the

20 subsequent conduct of the parties, and the common usage of particular terms in a given industry."

21 *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

22    The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

23 503 F.3d 728, 737 (9th Cir. 2007). It is error not to consider extrinsic evidence in interpreting a

24 contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

25 Cal. Rptr. 3d at 655-56 (Cal. App. 2004). This is true "even if a contract appears unambiguous on its

26

27

28

1  face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio*

2  *Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

3  Mr. Hilliard has personal knowledge of many of these facts, as outlined in the preceding

4  paragraphs. But even if he did not Mr. Hilliard is offered as an expert under Fed. R. Civ. P. 703, and

5  he may thus testify to facts he has been made aware of, even if he lacks personal knowledge of those

6  facts. Fed. R. Evid. 703. This evidence need not be admissible at trial for Mr. Hilliard to rely upon

7  it, *see Fed. R. Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony

8  and/or authenticated documents sufficient to establish the admissibility of these facts.

9  This paragraph is not hearsay. Mr. Simmons' deposition testimony is admissible, and even

10  so Rimini may call Mr. Simmons at trial and/or offer his deposition testimony under Fed. R. Evid.

11  804(b)(1). Regardless, Mr. Hilliard is being offered as an expert witness and he thus may rely on

12  hearsay evidence in forming his opinions. *See* Fed. R. Evid. 703.

13  Regarding the admissibility of Mr. Hilliard's testimony itself, Mr. Hilliard is an industry

14  expert who has negotiated and interpreted hundreds of licenses similar to those-at-issue, and his

15  testimony is thus relevant and admissible to expose any latent ambiguities in the contract and in

16  interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659 (holding that an expert with experience

17  negotiating and reviewing contracts within an industry may testify regarding the industry and

18  accepted meanings of ambiguous contract language). An expert's opinions for accepted meanings

19  within an industry are admissible, and do not constitute improper legal conclusions. *See Wolf*, 8 Cal.

20  Rptr. 3d at 659.

21  **Declaration Paragraph 15:**

22  I understand that Oracle has taken issue with Rimini's practices of (a) maintaining local non-

23  production copies of Oracle ERP software for its clients, (b) providing cloned portions of

24  applications software to customers licensed for that software, and (c) using one copy of a

25  development environment to create PeopleSoft updates that are ultimately delivered to multiple

26  clients. As explained in the preceding, paragraphs, such practices and procedures are similar to other

27

28

22

1    leading consulting firms and follow generally accepted practices in the industry. Thus, Rimini's

2    practices are essentially similar to those of other contractors that provide software consulting

3    services and there is no reason to distinguish it from other such contractors.

4          **Oracle's Objections**:

5          Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

6    demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to

7    offer as expert opinions, and is inadmissible legal conclusion.

8          **Rimini's Response**:

9          This paragraph is relevant to "the circumstances in which a contract was written, the

10   subsequent conduct of the parties, and the common usage of particular terms in a given industry."

11   *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

12         The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

13   503 F.3d 728, 737 (9th Cir. 2007).  It is error not to consider extrinsic evidence in interpreting a

14   contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

15   Cal. Rptr. 3d at 655-56 (Cal. App. 2004).  This is true "even if a contract appears unambiguous on its

16   face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio

17   Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

18         Mr. Hilliard has personal knowledge of many of these facts. But even if he did not Mr.

19   Hilliard is offered as an expert under Fed. R. Civ. P. 703, and he may thus testify to facts that he is

20   aware of or has been made aware of, even if he lacks personal knowledge of those facts.  Fed. R.

21   Evid. 703.  This evidence need not be admissible at trial for Mr. Hilliard to rely upon it, *see Fed. R.

22   Civ. P. 703*, but Rimini nonetheless anticipates that it would present sworn testimony and/or

23   authenticated documents sufficient to establish the admissibility of these facts.

24         Regarding the admissibility of Mr. Hilliard's testimony itself, Mr. Hilliard is an industry

25   expert who has negotiated and interpreted hundreds of licenses similar to those-at-issue, and his

26   testimony is thus relevant and admissible to expose any latent ambiguities in the contract and in

27

28
                                                23

1   interpreting those ambiguities.  *Wolf*, 8 Cal. Rptr. 3d at 659 (holding that an expert with experience

2   negotiating and reviewing contracts within an industry may testify regarding the industry and

3   accepted meanings of ambiguous contract language).   An expert's opinions for accepted meanings

4   within an industry are admissible, and do not constitute improper legal conclusions. *See Wolf*, 8 Cal.

5   Rptr. 3d at 659.

6   **Declaration Paragraph 16:**

7   I also understand that Oracle has taken issue with Rimini's creation of RAM copies of

8   Oracle's software. As explained below, this contention is not supportable because the right to make

9   RAM copies of software and software environments is implicit in any license grant directed to

10   providing access or use of such software and its supporting environments. Otherwise, the right to

11   access and use the software would be ineffective and pointless because there is no way to actually

12   carry out such access or use (here for non-production purposes) without having at least a portion of

13   the software copied into RAM. For this reason, it is widely understood in the industry (and common

14   practice) that license rights directed to the access and use of the software also implicitly include the

15   right to make RAM copies of the software.

16   **Oracle's Objections:**

17   Oracle objects that this paragraph is irrelevant, is inadmissible parol evidence, does not

18   demonstrate personal knowledge, does not demonstrate any reliable factual basis for Mr. Hilliard to

19   offer as expert opinions, and is inadmissible legal conclusion.

20   **Rimini's Response:**

21   This paragraph is relevant to the existence of latent ambiguities within the licenses-at-issue.

22   *Wolf v. Superior Court*, 8 Cal. Rptr. 3d 649, 655-56 (Cal. App. 2004). It is reversible error not to

23   consider such extrinsic evidence. *Id.*

24   The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

25   503 F.3d 728, 737 (9th Cir. 2007).  It is error not to consider extrinsic evidence in interpreting a

26   contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8

27

28

24

1 Cal. Rptr. 3d at 655-56 (Cal. App. 2004). This is true "even if a contract appears unambiguous on its

2 face." *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio*

3 *Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

4   Mr. Hilliard has personal knowledge of these facts. But even if he did not Mr. Hilliard is

5 offered as an expert under Fed. R. Civ. P. 703, and he may thus testify to facts he is aware of or has

6 been made aware of, even if he lacks personal knowledge of those facts. Fed. R. Evid. 703. This

7 evidence need not be admissible at trial for Mr. Hilliard to rely upon it, *see Fed. R. Civ. P. 703*, but

8 Rimini nonetheless anticipates that it would present sworn testimony and/or authenticated

9 documents sufficient to establish the admissibility of these facts.

10   Regarding the admissibility of Mr. Hilliard's testimony itself, Mr. Hilliard is an industry

11 expert who has negotiated and interpreted hundreds of licenses similar to those-at-issue, and his

12 testimony is thus relevant and admissible to expose any latent ambiguities in the contract and in

13 interpreting those ambiguities. *Wolf*, 8 Cal. Rptr. 3d at 659 (holding that an expert with experience

14 negotiating and reviewing contracts within an industry may testify regarding the industry and

15 accepted meanings of ambiguous contract language). An expert's opinions for accepted meanings

16 within an industry are admissible, and do not constitute improper legal conclusions. *See Wolf*, 8 Cal.

17 Rptr. 3d at 659.

18

19 **III. EXHIBITS 3, 4, 9, 29 AND 30 TO THE RECKERS DECLARATION**

20   **Exhibit 3:**

21  Exhibit 3 contains excerpts from the deposition of Paul Simmons.

22   **Oracle's Objections**:

23  Oracle objects that this exhibit is irrelevant, is inadmissible parol evidence, and does not

24 demonstrate any reliable factual basis for Mr. Simmons to offer an expert opinion.

25   **Rimini's Response**:

26

27

28              25

1    This paragraph is relevant to "the circumstances in which a contract was written, the

2  subsequent conduct of the parties, and the common usage of particular terms in a given industry."

3  *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

4    The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

5  503 F.3d 728, 737 (9th Cir. 2007).  It is error not to consider extrinsic evidence in interpreting a

6  contract – *even if* the Court determines that the contract appears unambiguous on its face.  *Wolf*, 8

7  Cal. Rptr. 3d at 655-56 (Cal. App. 2004).  This is true "even if a contract appears unambiguous on its

8  face."  *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio

9  Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

10    Mr. Simmons is not being offered by Rimini as an expert; his deposition testimony is based

11  on personal knowledge and is admissible.

12  **Exhibit 4:**

13  Exhibit 4 is an exhibit to the deposition of Paul Simmons.

14  **Oracle's Objections**:

15    Oracle objects that this exhibit is irrelevant, is inadmissible parol evidence, is

16  unauthenticated, and is hearsay.

17  **Rimini's Response**:

18    This paragraph is relevant to "the circumstances in which a contract was written, the

19  subsequent conduct of the parties, and the common usage of particular terms in a given industry."

20  *Miller v. Glenn Miller Prods., Inc.*, 454 F. 3d 975, 989 (9th Cir. 2006).

21    The exception to the parol evidence rule is broad in California. *Welles v. Turner Entm't Co.*,

22  503 F.3d 728, 737 (9th Cir. 2007).  It is error not to consider extrinsic evidence in interpreting a

23  contract – *even if* the Court determines that the contract appears unambiguous on its face.  *Wolf*, 8

24  Cal. Rptr. 3d at 655-56 (Cal. App. 2004).  This is true "even if a contract appears unambiguous on its

25  face."  *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio

26  Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

27

28

26

1       This paragraph is not hearsay because it is being offered as evidence of industry custom and

2   usage, not for the truth of the content of the documents.   Regardless, Rimini anticipates

3   authenticating this document at trial.   Exhibit 4 "could be presented in an admissible form at trial,"

4   and this Court should consider the contents of Exhibit 29.   *Fraser*, 342 F.3d at 1037.

5   **Exhibit 9:**

6       Exhibit 9 is a copy of Rimini's service agreement with the City of Flint.

7   **Oracle's Objections**:

8       Oracle objects that this exhibit is not the original document, is irrelevant, is inadmissible

9   parol evidence, is hearsay, and is insufficiently authenticated.

10   **Rimini's Response**:

11       Exhibit 9 satisfies the original document requirements because its contents "accurately reflect

12   the information" of the executed contract.   Fed. R. Evid. 1001(d).   Regardless, Rimini anticipates

13   offering the original document at trial.

14       Exhibit 9 is relevant to Rimini's compliance with the licenses-at-issue.   Dkt. 269, Rimini

15   SOF 17 (filed under seal); Rimini's Opp. at 11:18-23.   Exhibit 9 is also relevant to construing the

16   City of Flint's license with Oracle.   *Adobe Sys.*, 84 F. Supp. 2d at 1090.

17       The exception to the parol evidence rule is broad in California.   *Welles v. Turner Entm't Co.*,

18   503 F.3d 728, 737 (9th Cir. 2007).   It is error not to consider extrinsic evidence in interpreting a

19   contract – *even if* the Court determines that the contract appears unambiguous on its face.   *Wolf*, 8

20   Cal. Rptr. 3d at 655-56 (Cal. App. 2004).   This is true "even if a contract appears unambiguous on its

21   face."   *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio

22   Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

23       The document is not hearsay because it is not offered to prove the statement within the

24   document, but rather as evidence that Rimini and City of Flint entered into an agreement.   Fed. R.

25   Evid. 801(c).

26

27

28

1    Rimini anticipates offering the testimony of either a representative of City of Flint or

2  Rimini's custodian of records at trial to provide additional foundation for Exhibit 9.  Rimini can also

3  offer the deposition testimony of City of Flint representative Thomas O'Brien, which contains

4  statements regarding the authenticity and accuracy of Exhibit 9.  Fed. R. Evid. 804(b)(1).  Exhibit 9

5  "could be presented in an admissible form at trial," and this Court should consider the contents of

6  Exhibit 29.  *Fraser*, 342 F.3d at 1037.

7    **Exhibit 29:**

8    Exhibit 29 is a copy of Rimini's service agreement with Giant Cement Holdings, Inc.

9    **Oracle's Objections:**

10    Oracle objects that this exhibit is inadmissible parol evidence, is hearsay, and is insufficiently

11  authenticated.

12    **Rimini's Response:**

13    The exception to the parol evidence rule is broad in California.  It is error not to consider

14  extrinsic evidence in interpreting a contract – *even if* the Court determines that the contract appears

15  unambiguous on its face.  *Wolf*, 8 Cal. Rptr. 3d at 655-56 (Cal. App. 2004).  This is true "even if a

16  contract appears unambiguous on its face."  *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal.

17  App. 1998); *Ermolieff v. R.K.O. Radio Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

18    Exhibit 29 is not hearsay because Rimini does not offer it as proof of the contents of the

19  agreement.  Rather, Rimini's offers it as evidence that Rimini and Giant Cement executed a

20  nondisclosure agreement.  Fed. R. Evid. 801(c).

21    Finally, Rimini anticipates offering testimony of Rimini's custodian of records at trial to

22  authenticate the document and attest to its accuracy.  If Rimini's custodian of records is unavailable

23  to testify, then Rimini will provide a declaration to authenticate Exhibit 29.  Exhibit 29 "could be

24  presented in an admissible form at trial," and this Court should consider the contents of Exhibit 29.

25  *Fraser*, 342 F.3d at 1037.

26    **Exhibit 30:**

27

28                                            28

1    Exhibit 30 is a copy of Rimini's service agreement with the School District of Pittsburgh.

2    **Oracle's Objections**:

3    Oracle objects that this exhibit is not the original documents, is irrelevant, is inadmissible

4    parol evidence, is hearsay, and is insufficiently authenticated.

5    **Rimini's Response**:

6    Exhibit 30 satisfies the original document requirements because its contents "accurately

7    reflect the information" of the executed contract.   Fed. R. Evid. 1001(d).   Regardless, Rimini

8    anticipates offering the original document at trial.

9    Exhibit 30 is relevant to Rimini's compliance with the licenses-at-issue.   Dkt. 269, Rimini

10   SOF 30; Rimini's Opp. at 18:26-19:4.   Exhibit 30 is also relevant to construing the licenses-at-issue.

11   *Adobe Sys.*, 84 F. Supp. 2d at 1090.

12   The exception to the parol evidence rule is broad in California.   *Welles v. Turner Entm't Co.*,

13   503 F.3d 728, 737 (9th Cir. 2007).   It is error not to consider extrinsic evidence in interpreting a

14   contract – *even if* the Court determines that the contract appears unambiguous on its face.   *Wolf*, 8

15   Cal. Rptr. 3d at 655-56 (Cal. App. 2004).   This is true "even if a contract appears unambiguous on its

16   face."   *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (Cal. App. 1998); *Ermolieff v. R.K.O. Radio

17   Pictures, Inc.*, 19 Cal.2d 543, 550, 122 P.2d 3 (Cal. 1942).

18   Exhibit 30 is not hearsay because Rimini does not offer it as proof of the contents of the

19   agreement.   Rather, Rimini's offers it as evidence that Rimini and the School District of Pittsburgh

20   executed a nondisclosure agreement.   Fed. R. Evid. 801(c).

21   Finally, Rimini anticipates offering testimony of Rimini's custodian of records at trial to

22   authenticate the document and attest to its accuracy.   If Rimini's custodian of records is unavailable

23   to testify, then Rimini will provide a declaration to authenticate Exhibit 30.   Exhibit 30 "could be

24   presented in an admissible form at trial," and this Court should consider the contents of Exhibit 30.

25   *Fraser*, 342 F.3d at 1037.

26   **IV.**    **EXHIBITS 1-2, 5-8, 10-15, 17, AND 19-28 TO THE RECKERS DECLARATION**

27

28                                                            29

**Oracle's Objections**:

Oracle objects to the extent these exhibits are inadmissible parol evidence.

**Rimini's Response**:

"The exception to the parol evidence rule is broad – extrinsic evidence is admissible to demonstrate that there is an ambiguity in an instrument and for the purpose of construing this ambiguity." *Adobe Sys.*, 84 F. Supp. 2d at 1090; *see also Welles v. Turner Entm't Co.*, 503 F.3d 728, 737 (9th Cir. 2007) (holding that extrinsic evidence should be consulted where the scope of a license is ambiguous). Exhibits 1-2, 5-8, 10-15, 17, and 19-28 each constitute extrinsic evidence demonstrating ambiguity and/or interpreting that ambiguity and are therefore admissible. It is error not to consider extrinsic evidence in interpreting a contract – *even if* the Court determines that the contract appears unambiguous on its face. *Wolf*, 8 Cal. Rptr. 3d at 655-56 (Cal. App. 2004).

1

2   DATED:     June 4, 2012           SHOOK, HARDY & BACON

3

4                          By:   /s/ Robert H. Reckers
                          B. Trent Webb, MO Bar No. 40778

5                          Robert H. Reckers, TX Bar No. 24039520
                          SHOOK, HARDY & BACON L.L.P.

6                          2555 Grand Blvd.
                          Kansas City, MO 64108-2613

7                          816-474-6550 Telephone
                          816-421-5547 Facsimile

8

9                          *Attorney for Defendants*
                          *Rimni Street, Inc. and Seth Ravin*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                31

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on the 4th day of June, 2012, I electronically filed the foregoing

3

document with the clerk of the court for the U.S. District Court, District of Nevada, using the

4

electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to

5

the attorneys of record who have consented in writing to accept this Notice as service of this

6

document by electronic means.

7

By:  /s/ Robert H. Reckers
Robert H. Reckers, Esq.

8

9

*Attorney for Defendants
Rimini Street, Inc., and Seth Ravin*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28