DOMINICA C. ANDERSON (SBN 2988)
RYAN A. LOOSVELT (SBN 8550)
**DUANE MORRIS LLP**
100 N. City Parkway, Suite 1560
Las Vegas, NV 89106
Telephone: 702.868.2600
Facsimile: 702.385.6862
Email: dcanderson@duanemorris.com
         rloosvelt@duanemorris.com

Attorneys for CedarCrestone, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. <br><br> AND ALL RELATED COUNTER CLAIMS. | Case No. 2:10-CV-0106-LRH-PAL <br><br> **NON-PARTY CEDARCRESTONE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY PROTECTIVE ORDER, AND IN THE ALTERNATIVE, COUNTERMOTION FOR STAY** |

COMES NOW, non-party CedarCrestone, Inc. ("CedarCrestone"), by and through its counsel of record, Duane Morris LLP, and hereby opposes Plaintiffs Oracle USA Inc.'s, Oracle America, Inc.'s, and Oracle International Corporation's (collectively as "Oracle" or "Plaintiffs") Motion to Modify Protective Order [Dckt No. 272], and in the alternative to denial of Oracle's Motion, hereby countermoves this Court for stay of its modification decision, as follows:

## I.   INTRODUCTION

Oracle drafted a detailed Protective Order, agreed to by the parties, adopted by the court in the Rimini lawsuit, agreed to as binding by Oracle and CedarCrestone, and supplemented by a negotiated stipulation signed by the parties and CedarCrestone. The Protective Order expressly covers discovery produced by third parties. The Protective Order states in pertinent part:

"…Discovery Material identified as Confidential Information or Highly Confidential Information – Attorney's Eyes Only shall be used … (b) solely for the purposes of preparation for trial, trial of and/or appeal from this Action and no other; and (c) shall not be used by the Receiving Party for any other purposes, including, without limitation, any business or commercial purpose." (Emphasis added.)   The purpose of such a provision is to facilitate the exchange of discovery without time-consuming and expensive motion practice and negotiation by making clear that the parties and third parties do not have to be concerned in providing discovery to which they might otherwise object that the discovery will be somehow used against them.

After drafting the Protective Order, asking the Court to adopt it as a court order, and agreeing with CedarCrestone to the application of all the provisions of the Protective Order, Oracle now seeks to lift the protections of the Protective Order so that it can do just what the Protective Order was designed to prevent:  use discovery provided under the protection of the Protective Order outside of the lawsuit, against the interests of the very third party that cooperated in providing the discovery in reliance on the Protective Order.  Oracle and CedarCrestone agreed that the terms of the Protective Order would govern CedarCrestone's provision of discovery it otherwise intended to object to and seek to quash, all under the negotiated agreement that it would not be used by Oracle outside the Rimini action.  Having obtained the benefit of the parties' bargain – evidence it thought relevant to its lawsuit against Rimini – Oracle is asking the Court to release it from the very bargain it made.  It asks the Court to defeat the negotiated provisions of the Protective Order so as to permit Oracle to use CedarCrestone's own Confidential and Highly Confidential Information for business purposes entirely outside the scope of the Rimini lawsuit:  to file a lawsuit against CedarCrestone based solely on CedarCrestone's own protected Confidential Information.  For a court to release a party from a negotiated contract when the other party has fully performed in reliance on that contract would be inequitable and inconsistent with contract principles and Ninth Circuit law.   Oracle should be required to "sleep in" the contract it made, as CedarCrestone has done.

Oracle relies on the *Foltz* case to support its motion.  One key reason *Foltz* is distinguishable from the issue before this Court is that the protective order in *Foltz* did not contain the type of specific agreed upon protection at issue here.  *Foltz* involved a general prohibition against

disclosing, disseminating, or conveying confidential information outside of the litigation.   The Oracle/CedarCrestone/Rimini agreement and Protective Order prohibits use of confidential information for any purpose other than preparation for trial, trial, or appeal of the Rimini action. *Foltz* is also inapplicable because it involved considerations which may be typical of many cases in which a party seeks to have a protective order lifted or modified, but are not present here.   In *Foltz,* (1) there was no showing of reliance on the terms of the protective order by the producing party; (2) the party who requested modification was not the party who drafted the order let alone one who enticed the producing party into providing discovery; and (3) there was actually collateral litigation pending at the time of the request for modification – and an independent basis to bring the collateral suit – for which the requesting party needed the specifically identified discovery.   None of these factors exist here.   CedarCrestone indisputably relied on the protections of the Protective Order; Oracle drafted the agreement and Protective Order it now seeks to defeat; and there is no collateral lawsuit.

CedarCrestone's wholesale reliance on the protections of the agreement and Protective Order cannot be disputed. Upon receipt of Oracle's subpoena, CedarCrestone retained counsel in Nevada to prepare a motion to quash while it attempted to negotiate the terms of any agreeable production with Oracle.   Oracle assured CedarCrestone repeatedly during the negotiations that its concerns about confidentiality were addressed by the Protective Order.   CedarCrestone reviewed the Protective Order carefully.   CedarCrestone relied on the provisions of the Protective Order and on Oracle's representation that the Protective Order would protect CedarCrestone's confidential information from misuse.   It relied on the fact that the Protective Order expressly restricts use of discovery responses to the instant lawsuit.   Although CedarCrestone is an Oracle Platinum Partner and has a long relationship, history, and partnership with Oracle, Oracle and CedarCrestone are also competitors in various aspects of their business.   Oracle, of course, is massive in size, while CedarCrestone is, by comparison, a very small company.   The areas in which the companies compete are very significant to CedarCrestone, but barely noticeable to Oracle. The protection of its competitive information is important to CedarCrestone and it took great care to protect it in responding as a third party to Oracle's discovery requests.

Oracle is also very litigious and known to spend virtually unlimited amounts of legal fees suing competitors – including SAP, TomorrowNow, Rimini Street, Google, and Oracle's own former close partner, Hewlett Packard.  With that background, even an Oracle Platinum Partner would be wary of being involved – even as a third party witness – in any legal matter involving Oracle.  CedarCrestone was, of course, wary when it received a subpoena from Oracle in the Rimini lawsuit that would have taken it months to respond to and caused it to incur huge expenses.  It engaged in extensive negotiations related to its production, all conditioned on the enforceability of the Protective Order.  The parties eventually reached agreement on CedarCrestone's production and the scope of the Protective Order as it applied to the discovery.

The confidentiality provisions of the Protective Order were of utmost importance to CedarCrestone.  It would not have agreed to provide any documents or to produce an employee for deposition without the protections of the Protective Order, and most specifically, the protection against use of CedarCrestone's confidential information for any purpose other than Oracle's litigation against Rimini.   Had the Protective Order not been in place or had it not contained that prohibition, CedarCrestone would not have produced the discovery.

Under Ninth Circuit law, the reliance of the party opposing modification of a protective order is a critical consideration.  Typically, a request to modify a protective order is considered in a situation where there is collateral litigation (based on facts other than the discovery at issue in the motion) and a party claims that it would avoid duplicative discovery to just allow the party to obtain the discovery that had already been collected in another case.  The policy of preventing duplicative discovery is intended to reduce litigation costs by not requiring litigants to start from scratch with discovery to support their already pending lawsuit when the discovery can be given the same protections in another lawsuit.   Here, the policy of avoiding duplicative discovery is irrelevant, as there is no collateral litigation in which the existing, albeit protected, discovery might be subject to production.  In the issue before this Court, the key issue is detrimental reliance and there is no countervailing concern about duplicative discovery.

In addition to CedarCrestone's complete reliance on the agreed Protective Order terms, the Court should also take into consideration the fact that Oracle drafted the Protective Order, asked

1  CedarCrestone to agree to it, and asked the Court to enter it as an order of the Court with the intent
2  that third parties such as CedarCrestone rely on it.  It would be inequitable to change the Protective
3  Order after Oracle lured a third party into agreeing not to contest clearly contestable discovery
4  requests by offering the protections of the Protective Order.   For the reasons set forth herein,
5  CedarCrestone asks that the Court deny Oracle's motion for relief from the terms of the protective
6  order.

7      Should this Court determine that modification of the Protective Order terms may be required,
8  CedarCrestone countermoves this Court to stay modification pending a resolution of the Rimini
9  action.  Oracle has stated in its motion that it is considering bringing claims against CedarCrestone
10  which are similar to those it has pursued but not proved against Rimini.  As discussed more fully
11  below, resolution of those claims prior to Oracle bringing a competing lawsuit in another court on
12  the same issues would promote judicial economy and protect CedarCrestone from undue burden and
13  expense while not prejudicing Oracle in any way.

14  **II.**    **STATEMENT OF FACTS**

15      **A.    CedarCrestone' Business and Partnership with Oracle.**

16      CedarCrestone is an Oracle Certified Advantage Partner which provides a variety of services
17  to Oracle PeopleSoft licensees.  (Declaration of Brian E. Fees ("Fees Decl."), ¶3).  CedarCrestone
18  has extensive expertise with Oracle technology and Oracle applications. (*Id.*).  Oracle itself has
19  recognized CedarCrestone's expertise at delivering enterprise solutions by designating
20  CedarCrestone one of its top-tier Platinum Partners. (*Id.*).

21      CedarCrestone is, in some aspects, a direct competitor of Oracle in that both companies
22  provide various services for Oracle's PeopleSoft products. (*Id.* at ¶4).  Although CedarCrestone and
23  Oracle work together in several ways, including by developing new products, co-marketing, and sub-
24  contracting work to each other, Oracle has a consulting division which provides PeopleSoft
25  consulting services that are similar to those provided by CedarCrestone and has a hosting division
26  which provides PeopleSoft hosting services similar to CedarCrestone's hosting services. (*Id.*).
27  Oracle and CedarCrestone frequently compete for the same consulting or hosting contracts. (*Id.*).
28  ///

**B.    CedarCrestone has a History of Amicable Resolution of Discovery Requests from Oracle, including Agreement to use Discovery only for the Instant Suit.**

In Oracle's still-pending lawsuit against SAP and TomorrowNow (the "SAP Litigation"), CedarCrestone was one of many third parties to receive a subpoena for the production of documents. (*Id.* at ¶5). In the SAP Litigation, CedarCrestone worked amicably with Oracle over the course of several months to limit the scope of Oracle's initially overbroad and unduly burdensome requests to provide responsive documents Oracle wanted in order to press its claims against SAP and TomorrowNow. (*Id.*).

CedarCrestone produced documents in the SAP Litigation pursuant to a stipulated protective order entered in that action. (*Id.* at ¶6; Exhibit 1-SAP Litigation Protective Order). The stipulated protective order in the SAP Litigation is substantially the same as the Stipulated Protective Order that Oracle crafted in the Rimini Action, including the provision that limits the discovery to use only in that particular litigation. (*Id.*). CedarCrestone would have filed a motion to quash the subpoena and sought its own protective order had it not been able to rely on the protective order that had been entered in the SAP Litigation. (*Id.* at ¶7).

**C.    CedarCrestone Relied In Good Faith On The Stipulated Protective Order In This Action In Producing Discovery Rather Than Exercising Challenges To Oracle's Requested Discovery.**

On or about February 14, 2011, Oracle served a Subpoena Duces Tecum for CedarCrestone (the "Subpoena") on CSC Services of Nevada, Inc., CedarCrestone's registered agent in Nevada. (*Id.* at ¶8; Exhibit 2-Subpoena). CedarCrestone reviewed the Subpoena and concluded it was void,[1]

---

[1] A subpoena duces tecum must be issued and served in the district where the production or inspection is to be made. Fed. R. Civ. P. 45(a)(2)(C). Designating the wrong court renders the subpoena void. *Kupritz v. Savannah College of Art and Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994). The defect is jurisdictional and not waived by failure to file a motion to quash. *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 80 (D. Del. 2009). Consequently, a court cannot order production of records in the custody and control of a non-party located in a foreign judicial district. *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 624 (5th Cir. 1973).

The requirement to maintain an agent for service of process in a particular state does not impose an obligation on an entity to produce documents in such state merely upon service of a subpoena. *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982) (relying on *Cates*). A non-party does not, through a registered agent, possess the requisite "control" in the forum over its documents located outside the forum, for the forum district court to have jurisdiction to compel their production. *Id.* at 1059-1060. However, CedarCrestone has

objectionable on many grounds, and unreasonably demanded production of hundreds of thousands of documents within three weeks of service. (Fees Decl., ¶9; Declaration of Robert T. Gill "Gill Decl."), ¶2).

CedarCrestone retained counsel to contest the subpoena. (Fees Decl., ¶9). Without waiving any objections, and foregoing immediate filing of a Motion to Quash the Subpoena, CedarCrestone again attempted to work with Oracle in good faith to tailor a reasonable, non-objectionable production in response to the Subpoena, as it had in the SAP Litigation. (Fees Decl., ¶9; Gill Decl., ¶3). CedarCrestone's General Counsel contacted corporate counsel at Oracle to discuss the production. (Fees Decl., ¶10; Gill Decl., ¶3). But when Oracle indicated that it wanted to instead proceed by subpoena, CedarCrestone then formally objected to the Subpoena in writing by letter on March 7, 2011 and also called Oracle's counsel to discuss CedarCrestone's specific objections that same day. (Fees Decl., ¶10; Gill Decl., ¶3, Exhibit 3-March 7, 2011 Letter). On March 24, 2011, without waiving its objections, CedarCrestone made an initial production of documents in response to Oracle's subpoena. (Gill Decl., ¶3, Exhibit 4-March 24, 2011 Email).

CedarCrestone continued to work with Oracle to reach agreement on a reduced scope of production and appropriate protection for the information to be disclosed. (Fees Decl., ¶11; Gill Decl., ¶4). On April 14, 2011, CedarCrestone sent Oracle a letter in which it detailed its specific objections to each of the requests contained in Oracle's subpoena. (Gill Decl., ¶4, Exhibit 5-April 14, 2011 Email). On May 8, 2011, Oracle sent a letter to CedarCrestone in which it proposed modifications to several requests in the Subpoena, implicitly acknowledging the overbroad and unduly burdensome nature of the Subpoena. (Gill Decl., ¶5; Exhibit 6-May 8, 2011 Letter).

In the May 8, 2011 letter to CedarCrestone, Oracle's counsel stated: "The Order will adequately protect CedarCrestone's confidential information". (Exhibit 6-May 8, 2011 Letter, at Page 5, ¶1). In a June 22, 2011 letter to CedarCrestone, Oracle's counsel stated:

---

no offices in Nevada; its principal place of business is in Georgia. (Fees Decl., ¶9). CedarCrestone has appointed a registered agent in Nevada, but has no physical offices or presence in Nevada. (*Id.*). To the extent that the voluminous documents and electronic information requested in the Subpoena are in any one place they are located and stored at CedarCrestone's headquarters in Alpharetta, Georgia. (*Id.*). That is where the subpoena should have been issued and served.

> As I explained in my voicemail, multiple earlier discussions, and my letter of May 8, 2011, the Stipulated Protective Order entered in the litigation provides adequate protection for any confidential materials produced by CedarCrestone.

(*Id.* at ¶6; Exhibit 7-June 22, 2011 Letter, ¶3).  Again in a June 30, 2011 email to CedarCrestone, Oracle's counsel stated: "As we have told CedarCrestone multiple times, we believe the Stipulated Protective Order is adequate." (*Id.* at ¶7; Exhibit 8-June 30, 2011 Email, ¶2).  Oracle thus repeatedly and unequivocally assured CedarCrestone that the protections set out in the Protective Order would protect CedarCrestone's confidential information.  (Fees Decl., ¶11).

CedarCrestone, in reliance on the parties' agreement regarding the limitations on use of CedarCrestone's information, produced over 2.16 gigabytes of data in response to Oracle's subpoena.  (Fees Decl., ¶12; Gill Decl., ¶8).  Between May 19 and July 12, 2011, CedarCrestone produced over 500 additional documents and an audio file in response to the Subpoena, all in reliance on the Protective Order in this action.  (Fees Decl., ¶12; Gill Decl., ¶8, Exhibit 9-May 19, 2011 Letter, Exhibit 10-July 1, 2011 Letter, Exhibit 11-July 12, 2011 Letter).

On June 24, 2011, prior to producing some of its documents, CedarCrestone sent Oracle a proposed sample Supplemental Stipulation of Confidentiality designed to supplement the Protective Order in order to provide more protections to third parties whom were not involved in crafting the Stipulated Protective Order.  (Fees Decl., ¶13; Gill Decl., ¶9, Exhibit 12-June 24, 2011 Email).  Instead of negotiating as to the scope and nature of CedarCrestone's proposal, Oracle informed CedarCrestone without explanation that its proposed restrictions were unreasonable and that it planned to move to compel.  (Fees Decl., ¶13; Gill Decl., ¶7, Exhibit 8-June 30, 2011 Email).  CedarCrestone again attempted to facilitate a dialogue concerning the Protective Order to further protect third parties' interests, but Oracle instead notified CedarCrestone that Oracle's objections were now laid out in its just-filed Motion to Compel.  (Fees Decl, ¶13).

CedarCrestone still continued to negotiate with Oracle in good faith even after Oracle filed a Motion to Compel.  (*Id.* at ¶14).  Prior to the deadline to file its opposition to Oracle's Motion to Compel, in which CedarCrestone intended to seek to quash and/or limit the Subpoena as void and objectionable, CedarCrestone and Oracle reached an agreement concerning production, and Oracle

withdrew its Motion to Compel [Dckt No. 159].   (Fees Decl., ¶14; Gill Decl., ¶10).   They also entered into a stipulation that provided additional notice to CedarCrestone as a third party to the extent the parties to the Rimini Action intended to use the CedarCrestone discovery in the Rimini Action.   (Fees Decl., ¶15; Gill Decl., ¶10, Exhibit 13-Stipulation).   The Protective Order and Supplemental Stipulation constituted both a court order and an enforceable contract between Oracle, Rimini (which had agreed to the terms), and CedarCrestone.

Several months later, Oracle also sought to depose a CedarCrestone company representative in this action, and Paul Simmons appeared on behalf of CedarCrestone for deposition on December 2, 2011, again in express reliance on the protections of the Protective Order in the Rimini Action. (Fees Decl., ¶16).   According to the Protective Order, a party has five days to designate portions of a transcript as "Confidential," Highly Confidential," or otherwise.   Oracle did not immediately send the Simmons transcript to CedarCrestone, and by the time CedarCrestone received it, Oracle had already made designations to it, including "Highly Confidential – Attorneys' Eyes Only."   (*Id.* at ¶17).   Oracle appears now to be seeking to defeat not only CedarCrestone's designations under the Protective Order, but its own designations regarding CedarCrestone's documents as well.

**D.**   █████████████████████████████████████████████

Subsequent to CedarCrestone's production of documents and provision of testimony pursuant to the Protective Order, ████████████████████████████████████████████████████████ ███████████████████████████████████ (Fees Decl., ¶18). ████████████████████████████████████████████████████████

For example, on or about April 19, 2012, ████████████████████████████████████████



*(Id.* at ¶19).

*(Id.).*  On the following day, April 20, 2012,

*(Id.).*

*(Id.).*

*(Id.).*

*(Id.* at

¶20).

*(Id.).*

*(Id.).*

On or about May 8, 2012,

*(Id.* at ¶21).

*(Id.).*

*(Id.).*

Further, on or about May 7, 2012,

*(Id.* at ¶22).

1           (*Id.*).

2     (*Id.*).

3     On May 5, 2012,

4

5       (*Id.* at ¶23).

6

7

8                               (*Id.*).

9                                (*Id.*).

10

11

12                                           (*Id.*).

13

14

15

16

17

18 **III.**    <u>**ARGUMENT**</u>

19       **A.**     **The Key Factor Federal Courts Evaluate in Determining Whether to Modify a**

20            **Protective Order is the Reliance of a Third Party.**

21       The key factor in evaluating a motion to modify a protective order is whether the party

22 against which modification is sought relied on the protections included in the protective order.  The

23 Ninth Circuit has agreed to modify the terms of a protective order on some occasions, but it has not

24 done so in any case in which a third party's detrimental reliance is the overwhelming factor that it is

25 here.

26       Most Ninth Circuit cases in this area involve a request to use discovery in one case for the

27 purposes of another independently existing case which was not based on the protected discovery.  In

28 analyzing a motion to modify a protective order in a case involving such collateral litigation, the

court is generally considering whether the effort and expense of obtaining duplicative discovery can be reduced.  In such cases, the court will initially assess the relevance of the protected discovery to any existing collateral litigation and the general discoverability of the protected discovery.  *Foltz v. State Farm Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003).  If the information is relevant to existing collateral litigation and generally discoverable in that litigation, the court will consider whether there is good cause for continued protection of the information produced in discovery.  *Foltz v. State Farm Auto. Ins. Co.*, 331 F.3d 1122, 1130-1131 (9th Cir. 2003); *Beckman Industries, Inc.*, 966 F.2d 470, 475 (9th Cir. 1992).  *See also Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Ltd.*, 529 F.Supp. 866,  890 (E.D. Pa. 1981) (protective orders can protect confidential business information).

     The issue of collateral independent litigation so common in Ninth Circuit cases considering requests to modify protective orders is irrelevant here.  There is no collateral litigation which might raise the issue of the economics of duplicative discovery.  The absence of a pending suit against the party opposing modification is relevant to the determination of modification of a protective order.  *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 43 (N.D. Fla. 1998).  The absence of pending collateral litigation makes it less likely, among other things, that modification will avoid repetitious or duplicative discovery, and more likely that modification may result in harassment or other improper uses.  *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 43 (N.D.  Fla. 1998); *H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.*, 106 F.R.D. 551, 555-556 (S.D.N.Y. 1985).  Here, there is no pending collateral litigation and thus no present risk of duplicative discovery.

     In this case, the issue before the Court is whether a party to a lawsuit can induce a third party to waive its right to quash discovery requests via use of a protective order which is both a court order and an agreement of the parties, then void the protective order so that the very discovery produced in reliance on it can be used outside the lawsuit and in a manner detrimental to the relying third party.

     Similarly, this is not a case in which the mere existence of a protective order, without more, is at issue.  Contrast *Beckman Industries, Inc.*, 966 F.2d at 475, *citing Olympic Refining Co. v. Carter*, 332 F.2d 260, 264 (9th Cir. 1964)(party failed to show more than mere existence of a protective order).  The Protective Order differs from the protective order in *Foltz*, for example, in

1   that *Foltz* included a general prohibition against disclosing confidential information outside of the

2   litigation, while the Oracle/CedarCrestone/Rimini Protective Order specifically prohibits use of

3   confidential information for any purpose other than preparation for trial, trial, or appeal of the

4   Rimini action and not "for any other purpose." *See Foltz*, 331 F.3d at 1128. The contents and

5   protections of the Protective Order at issue here were the reason for CedarCrestone's agreement to

6   provide the requested discovery and a condition of its production of that discovery. Its reliance on

7   the Protective Order as both a court order and an agreement of the parties distinguishes it from any

8   case in which the mere existence of a protective order is being evaluated. In a case in which reliance

9   is shown, reliance of the party opposing a modification is of chief importance in deciding whether a

10  particular requested modification is warranted. *Beckman Industries, Inc.*, 966 F.2d at 475; *Foltz*, 331

11  F.3d at 1133. As set out below, CedarCrestone's reliance on the Protective Order is clear and

12  undisputed. It viewed the Protective Order as both a court order and a contract between itself and

13  the litigants and expected it to be enforced on both bases.

14      In addition to a party's reliance interest, courts considering whether to modify a standing

15  Protective Order also consider such factors as the status of the entity seeking modification, the

16  purposes thereof, the needs of the entity seeking modification, and the pendency of other litigation

17  brought by the entity seeking modification. *McCarty*, 195 F.R.D. at 42; *H.L. Hayden Co. of New*

18  *York*, 106 F.R.D. at 554 (courts look at nature of protective order, status of party seeking

19  modification, and degree of reliance by party opposing modification); *CBS Interactive, Inc. v. Etlize,*

20  *Inc.*, 257 F.R.D. 195, (N.D. Cal. 2009) (Ninth Circuit precedent also looks to the needs of the parties

21  engaged in collateral litigation including reliance interests of the party opposing modification).

22  CedarCrestone submits that consideration of these factors along with its reliance requires that the

23  Protective Order to which the parties agreed and upon which they relied be maintained in its agreed

24  upon state.

25      **B.     CedarCrestone's Reliance Interests Greatly Outweigh Any Other**
                **Considerations Regarding Modification of the Protective Order.**
26

27      CedarCrestone relied on the fact that the discovery it provided would not be used outside the

28  Rimini Action. It justifiably believed it could rely on this specific provision because, among other

1  reasons, Oracle drafted the Protective Order, agreed to it, operated under the benefits of its

2  protections, and informed CedarCrestone that its production of non-party information would be

3  protected under the Protective Order, just as it had in the prior SAP Litigation.  CedarCrestone had

4  lengthy discussions with Oracle concerning the protections afforded to its discovery and third parties

5  in general.

6      Relying on, and conditional on the fact the Protective Order barred discovery from being

7  used outside of the Rimini Action, CedarCrestone worked in good faith with Oracle to produce

8  discovery rather than exercise its objections and challenges to the Subpoena and deposition request.

9  CedarCrestone did not seek to quash the void, objectionable Oracle Subpoena, but rather sought to

10 increase the protections of the Protective Order, negotiated narrowed responses to the vastly

11 overbroad and unduly burdensome Subpoena, agreed to produce a deponent for deposition to be

12 questioned on the production, and even negotiated a stipulation with Oracle and Rimini requiring

13 further disclosure requirements to CedarCrestone if the parties intended to utilize CedarCrestone's

14 discovery in the Rimini Action.  This was also consistent with CedarCrestone's prior negotiations

15 and production in Oracle's SAP Litigation, also subject to a protective order that such discovery

16 could not be used outside of the SAP Litigation.  CedarCrestone would not have provided the

17 discovery had it not been assured that the Protective Order was in place.

18     This significant reliance was not present in the *Foltz* case cited by Oracle.  The *Foltz* case

19 concerns third party interveners to an already concluded lawsuit, who were already involved in

20 collateral litigation, and claimed the information was not protectable.  The facts are completely

21 different than those before this Court.  The *Foltz* party seeking modification had not consented to the

22 protective order; here, Oracle drafted it, asked the Court to enter it as a court order, and agreed with

23 CedarCrestone that it could rely on its protections.  Also in *Foltz,* the reliance level was low and the

24 interest in avoiding duplicative discovery in pending collateral litigation was stronger.  The party

25 opposing modification did not make a reasonable showing that its reliance interests outweighed the

26 potentially duplicative discovery in the collateral litigation, and modification was therefore

27 permitted.  The situation presented to this court is completely different.

28 ///

In contrast to *Foltz*, CedarCrestone's strong and undeniable reliance on the protections of the Protective Order is the only factor this Court need consider, since there is no pre-existing collateral suit in which concerns about duplicative discovery might be a factor. Thus, an analysis conducted under the law of the Ninth Circuit compels a finding that due to CedarCrestone's reliance on the terms of the Protective Order and the damage it would suffer were the Protective Order to be defeated, Oracle's motion to defeat the Protective Order should be denied.

A more appropriate analogy can be drawn with a review of language in the *Beckman* case: "The extent to which a party can rely on a protective order should depend on the extent to which the other party induced the party to allow discovery." *Beckman Industries, Inc.*, 966 F.2d at 475. For example, as here, reliance is more significant where witnesses freely testify pursuant to a protective order without invoking rights which may prevent the testimony, particularly where such testimony is sought to be used against them in other suits through modification of the protective order. *Id.* That is exactly what happened here. CedarCrestone's negotiated participation in the discovery was induced by Oracle and the Protective Order it had implemented.

Here, Oracle was a party to the Protective Order. When a party voluntarily agrees to the execution of the protective order in order to facilitate its own discovery, this may serve as an additional ground to deny a motion for modification of a protective order. *See Zenith Radio Corp.*, 529 F.Supp. at 894 (ruling plaintiff cannot abrogate its agreement but rather waived its right to use discovery for other purposes by voluntarily entering the protective order); *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F.Supp. 393, 404 (W.D. VA 1987) (denial of request to modify protective order because party consented to, and benefitted under, the order and changing it at late stage would be unfair); *Parkway Gallery Furniture, Inc., v. Kittinger/Pa. House Group, Inc.*, 121 F.R.D. 264, 267 (M.D.N.C. 1998) (court will be hesitant to relieve party of its obligations when a party willingly accedes to entry of stipulated protective order particularly when the other party produced discovery in reliance on their agreement).

As the *Zenith* court stated, "Plaintiffs cannot now attempt to undo what they have willingly wrought; having made their bed, they must sleep in it." *Zenith Radio Corp.*, 529 F.Supp. at 894. Similarly, here, Oracle "made its bed" by willingly agreeing, as a condition to CedarCrestone's

1  production of documents and testimony, not to use the documents or testimony for any purpose other

2  than the Rimini Action.  Now, having received the benefit of its bargain, Oracle is asking the Court

3  to release it from the very bargain it made.  For a court to release a party from a negotiated contract

4  when the other party has fully performed in reliance on that contract would be inequitable and

5  inconsistent with contract principles and Ninth Circuit law.  Oracle should be required to "sleep in"

6  the contract it made, as CedarCrestone has done.

7      Unlike the litigants in *Beckman* and *Foltz*, Oracle, a party to the stipulated protective order,

8  induced CedarCrestone's reliance in producing discovery and inducing CedarCrestone to forego its

9  challenges thereto.   The cases Oracle cites are inapposite for this reason.   CedarCrestone

10 significantly relied on the Protective Order which Oracle now seeks to exploit to CedarCrestone's

11 detriment and prejudice.  Fairness and equity compels denial of Oracle's motion.

12     Public policy considerations also support denial of Oracle's motion on the basis that

13 protective orders should be enforceable once parties perform conditional on their terms.  Unless a

14 valid protective order is fully and fairly enforceable, witnesses relying on such orders will be

15 inhibited from giving essential testimony in civil litigation, thus undermining a procedural system

16 that has been successfully developed over the years for disposition of civil differences.  *Martindell v.*

17 *Int'l Telephone and Telegraph Corp.*, 594 F.2d 291, 295 (2nd Cir. 1979).  Witnesses would otherwise

18 frequently refuse to testify pursuant to protective orders if their testimony were to be made available

19 for use against them outside the case in which it is provided.  *Martindell*, 594 F.2d at 295-296 (in

20 context of government's intended use for criminal investigatory purposes).

21     The extent to which the parties have relied upon the protection afforded their discovery made

22 under a consented protective order is an important factor with respect to any proposed modification.

23 *McCarty*, 195 F.R.D. at 42-43.  The degree of reliance is an important indicator of the extent to

24 which the protective order has served the purposes of Rule 1 to secure the just, speedy and

25 inexpensive determination of civil disputes.  *H.L. Hayden Co. of New York, Inc.*, 106 F.R.D. at 555.

26 The failure to protect reliance on a consented protective order prejudices the confidentiality interests

27 of the other parties and undermines the effectiveness of protective orders facilitating discovery.

28 *McCarty*, 195 F.R.D. at 43.

1    CedarCrestone should have the benefit of the Protective Order upon which its decision to

2    comply with discovery requests was based.  CedarCrestone's interests and the concepts of fairness

3    and reliance on integrity of court orders compel the conclusion that Oracle's requested modification

4    should be denied.

### C.    In Addition to Reliance, Other Factors Compel Denial of Oracle's Motion.

#### 1.    *Oracle's Motion should also be denied because it is an attempt to exploit the Protective Order and use improper pre-litigation discovery against CedarCrestone.*

9    Modification of protective orders to exploit the otherwise protected discovery is also a

10   concern for federal courts.  Federal discovery may not be used to merely subvert limitations on

11   discovery in other proceedings.  *Foltz*, 331 F.3d at 1134 (recognizing it as a correct statement of a

12   Ninth Circuit legal principle), *citing Wilk v. Am. Medical Assoc.*, 635 F.2d 1295, 1300 (7th Cir.

13   1981).  "The discovery rules are designed to assist a party to prove a claim it reasonably believes to

14   be viable *without discovery*, not to find out if it has any basis for a claim."  *Micro Motion, Inc. v.*

15   *Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (emphasis in original).  In particular,

16   caution must be used in pre-litigation discovery devices under circumstances involving direct

17   competitors in order to limit the potential that discovery directed to non-parties is used for improper

18   purposes, such as obtaining proprietary information to bring claims against the non-party.  *Ultimate*

19   *Timing LLC v. Simms*, No. 3:09-mc-6RLY-WGH, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28,

20   2009).  That is precisely the case here.  Oracle and CedarCrestone are direct competitors.  Oracle has

21   used the discovery process in the Rimini Action to attempt to build a case against CedarCrestone, a

22   clear violation of the Protective Order and an improper use of the discovery process.

23   Absent a showing of improvidence in the grant of the stipulated protective order, a witness

24   should be entitled to rely upon the enforceability of a protective order against other parties, and

25   modification should not be granted merely to accommodate the desire to use the testimony for

26   possible liability in another case.  *See Martindell*, 594 F.2d at 296 (witnesses entitled to rely upon

27   terms of concededly valid protective order; no abuse of discretion in refusing to modify protective

28   order).

1   Here, Oracle's attempt to use the discovery produced by CedarCrestone, against

2   CedarCrestone, constitutes the misuse of "pre-litigation" discovery and should be denied.   Oracle

3   should not be permitted to do an end run around the discovery rules and principles under the guise

4   that it would not use the information outside the Rimini Action, only to turn around do exactly that.

5   Oracle's improper pre-litigation discovery, whether intentional or not, should not be permitted to

6   serve as the basis for an independent lawsuit against CedarCrestone.

7   This Court should not permit the exploitation of the discovery produced by non-party

8   CedarCrestone, whether against CedarCrestone in an independent lawsuit or for any other purpose.

9       **2.      *Modification should also be denied because*** ███████████████

10  ████████████████████████████████████████████

11

12  Modification of a protective order may also be denied where it would tangibly prejudice

13  substantial rights of the party opposing modification.   *Foltz*, 3321 F.3d at 1132.   Among other

14  things, competitive disadvantage is a type of cognizable harm that may be protected against.   *Zenith*

15  *Radio Corp.*, 529 F.Supp. at 890.

16

17

18

19

20

21

22

23

24

25                                                                    Modification of the Protective Order

26  should be denied on this ground as well

27  ///

28  ///

3. ***The failure to delineate specific documents or portions of testimony for which modification of the Protective Order is sought is also another ground to deny a requested modification.***

The wholesale request to modify a protective order to release non-specific documents creates problems when doing so would impinge on a wide variety of confidentiality information, from trade secrets to less confidential business information. *Biovail Laboratories, Inc. v. Anchen Pharms., Inc.*, 463 F.Supp.2d 1073, 1082 (C.D.Cal. 2006), *citing Smithkline Beecham Corp. v. Synthon Pharms. Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C. 2002); *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 878 F.Supp. 884, 886 (E.D. La. 1995) (distinguishing facts from *Beckman Industries*, 966 F.2d 470, and denying motion to modify protective order when plaintiff seeks modification of protective order it freely entered into without specifically identifying documents it believes do not fall within the scope of the protective order). The burden of reviewing such a wholesale request itself constitutes grounds for denying modification. *Biovail Laboratories, Inc.*, 463 F.Supp.2d at 1082.

Wholesale declassification cannot rationally be obtained without reviewing each of the countless separate documents and requires a tremendous concentration of judicial resources. *Zenith Radio Corp.*, 529 F.Supp. at 893. A party seeking wholesale declassification must first justify the investment of judicial resources demanded thereby. *Id.* at 894. It is common that, in response to a subpoena for documents or a deposition, a third party, in reliance on the umbrella confidentiality order, divulges sensitive commercial information without asserting certain rights, for example, the right to be protected by a court in their home jurisdiction. *Id.* The failure to specifically delineate the precise documents for which protections are sought to be modified is therefore "a poor, inappropriate and unfair tool not only with respect to the interests of litigants, but also with respect to the interests of third parties who are frequently drawn into the vortex" of other cases. *Id.*

Here, Oracle requests that it be permitted to use any information CedarCrestone produced in this case subject to the Protective Order in a lawsuit against CedarCrestone outside of the Rimini Action. While Oracle provides a sampling of the deposition transcript, it does not identify the specific documents and/or all portions of testimony it contends are necessary to any litigation outside the Rimini Action. This not only improperly attempts to have CedarCrestone justify protection for

its entire production document by document, but also serves as an additional ground warranting denial of the requested modification.   Indeed, Oracle takes issue with the designation of the CedarCrestone transcript as "Highly Confidential," but neglects to inform the Court that *Oracle* itself designated it as such and then failed to permit CedarCrestone adequate time to otherwise parse out portions of the transcript as "Confidential," "Highly Confidential," or otherwise.   Oracle's unfair behavior should not be rewarded.

## IV.   ALTERNATIVE COUNTERMOTION FOR STAY OF MODIFICATION PENDING RESOLUTION OF THE RIMINI ACTION

It is CedarCrestone's position that Oracle's Motion to Modify the Protective Order should be denied outright.   CedarCrestone's significant and undisputed reliance, among the other considerations evaluated by Federal Courts, vastly outweigh any other factor appropriate to the Court's consideration. To the extent this Court deems otherwise, however, the Court should stay modification of the Protective Order pending resolution of the Rimini Action.

Whether to grant a stay is within the discretion of the court.  *Munoz-Santana v. U.S. I.N.S.*, 742 F.2d 561, 562 (9th Cir. 1984).  Pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." There is good cause to stay modification of the Protective Order.

First, CedarCrestone is in the process of closing down the small portion of its business to which Oracle has objected, so Oracle would have no basis for claiming immediate or irreparable harm. (Fees Decl., ¶24).  Since its damages would be only economic in nature, Oracle would suffer no prejudice.

Second, Oracle has stated that its complaint against CedarCrestone would include many of the same allegations as are in Oracle's complaint against Rimini.  If there is ambiguity regarding whether Rimini's practices are permissible, this issue is already before the Court in the Rimini Action.  It would be wasteful of judicial resources and involve significant undue burden and expense on CedarCrestone to let Oracle commence another lawsuit over substantially the same issues in a different court without the benefit of resolution on the underlying legal disagreement. The Supreme

1  Court has stated that trial courts should resolve matters fairly but without undue cost. *Brown Shoe*

2  *Co. v. United States,* 370 U.S. 294, 306, 82 S.Ct. 1502, 8 L.Ed. 2d 510 (1962).

3      A ruling to stay decision on the motion until conclusion of the Rimini Action would be fair

4  and avoid undue cost, both judicial and otherwise.  Therefore, if it elects not to deny Oracle's motion

5  outright, to protect judicial resources and avoid undue burden and expense on CedarCrestone, the

6  Court should stay any decision on Oracle's motion for relief from the Protective Order until the

7  Rimini lawsuit has been resolved.

8  **V.      CONCLUSION**

9      For the reasons set forth herein, CedarCrestone respectfully requests that this Court deny

10 Oracle's Motion to Modify Protective Order.  In the alternative to denying Oracle's Motion,

11 CedarCrestone countermoves for a stay of the modification pending judgment in the Rimini Action.

12 DATED:  June 15, 2012

                    DUANE MORRIS LLP

13

14

15                 By:  */s/ Dominica C. Anderson*
                       Dominica C. Anderson (SBN 2988)
16                     Ryan A. Loosvelt (SBN 8550)

17                 Attorneys for CedarCrestone, Inc.

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, I served via CM/ECF a true and correct copy of the foregoing **NON-PARTY CEDARCRESTONE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER** to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.

*/s/ Jana Dailey*
Jana Dailey
An employee of DUANE MORRIS LLP