| | |
|---|---|
| SHOOK, HARDY & BACON LLP<br>B. Trent Webb, Esq. (*pro hac vice*)<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108-2613<br>Telephone: (816) 474-6550<br>Facsimile: (816) 421-5547<br>bwebb@shb.com<br><br>Robert H. Reckers, Esq. (*pro hac vice*)<br>600 Travis Street, Suite 1600<br>Houston, Texas 77002<br>Telephone: (713) 227-8008<br>Facsimile: (713) 227-9508<br>rreckers@shb.com | GREENBERG TRAURIG<br>Mark G. Tratos, Esq. (Nevada Bar No. 1086)<br>Brandon Roos, Esq. (Nevada Bar No. 7888)<br>Leslie Godfrey, Esq. (Nevada Bar No. 10229)<br>3773 Howard Hughes Parkway<br>Suite 400 North<br>Las Vegas, NV 89169<br>Telephone: (702) 792-3773<br>Facsimile: (702) 792-9002<br>tratosm@gtlaw.com<br>roosb@gtlaw.com<br>godfreyl@gtlaw.com<br><br>LEWIS AND ROCA LLP<br>W. West Allen (Nevada Bar No. 5566)<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, Nevada 89169<br>Tel: (702) 949-8200<br>Fax: (702) 949-8398<br>WAllen@LRLaw.com |

*Attorneys for Defendants*
*Rimini Street, Inc., and Seth Ravin*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS' OPPOSITION TO ORACLE'S MOTIONS FOR EVIDENTIARY SANCTIONS FOR SPOILATION [REDACTED]** |

363709 v4

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]

1    Defendants Rimini Street, Inc. and Seth Ravin (together, "Rimini") respectfully submit this Opposition to Oracle's Motion for Evidentiary Sanctions for Spoliation.

## I. INTRODUCTION

Through its motion, Oracle continues to manufacture disputes based on misrepresentations and distorted facts in an attempt to tarnish Rimini's image before this Court. Oracle's motion is replete with accusations of wrongdoing, insinuating that Rimini deleted its internal software folder only to exploit its absence during litigation. This is patently false. Oracle's attempt to vilify Rimini is improper and should not be rewarded.

Contrary to Oracle's allegations of misconduct, <u>Rimini personnel made a complete record of the files in the internal software folder before it was deleted</u>. Oracle has never disputed the accuracy of these records. Through the course of this litigation, Rimini has consistently admitted to the copies of Oracle software it maintained, and these files are no different. While Oracle's motion requests a rebuttable presumption addressing the contents of the deleted folder, Rimini will go one step further and <u>stipulate</u> that Rimini's internal software folder did indeed include a complete copy of each of Oracle's registered works corresponding to the table included in Oracle's motion. (Dkt. 307 at 29-30.) Rimini, however, does <u>not</u> agree that the remaining relief sought by Oracle is warranted. Because Rimini's stipulation as to the contents of the deleted files addresses <u>all</u> the potentially relevant data that was lost, this stipulation will cure any prejudice Oracle might have incurred from the deletion of this folder, and Oracle's requests for additional evidentiary sanctions are unjustified both factually and legally.

Specifically, Oracle's motion asks for two remedies that far exceed the scope of any harm caused by the deletion of the software folder: (1) a general adverse inference that all deleted materials contained within Rimini's internal software folder would have supported Oracle's claims of copyright infringement; and (2) a rebuttable factual presumption that Rimini built 143 listed environments using software stored in Rimini's internal software folder. Oracle's request for these remedies is premised on the notion that Rimini deleted evidence of "the *extent* to which the library was used, that is, *when software was copied out* of the library and for which customers." (Dkt. 307,

363709 v4

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]

at 26 (emphasis in original).) However, <u>no evidence of such historic usage was actually stored in the so-called software library</u>. Rather, to the extent Rimini maintained records reflecting the usage of the software in its internal folder, such records have already been produced, and Magistrate Judge Leen has already addressed the adequacy of this production. (*See* Dkt. 316, Oracle Ex. 2 (Status Conf. Tr., Nov. 8, 2011) at 18:9-19:18.)[1]

Nevertheless, Oracle now argues that the deleted files may have contained "metadata" that would allow "Oracle to prove which environments were built from software in the library provided by a different customer." (Dkt. 307 at 26.) Oracle's argument here is critically flawed as there can be no question that the metadata-at-issue did not log the factual data Oracle suggests. While the actual metadata is gone, it remains easy to determine the <u>types</u> of metadata maintained by Rimini's servers and easy to verify that such servers did not maintain a log of historical file usage as Oracle suggests. Rather, the metadata was limited to discrete items such as the date the file instance was created and the *last* date the item was modified or accessed. Such limited data, of course, does not indicate "how" the files were used or for "whom" the files were stored, accessed, or modified. In fact, a number of the 143 environments listed by Oracle were created <u>after</u> the software folder was deleted, making it impossible for those environments to have been created using the deleted files.

Given the serious nature of an adverse inference sanction, courts routinely reject the imposition of adverse inference instructions in these circumstances. As one court explained: "It is inappropriate to give an adverse inference instruction based upon speculation that the deleted [material] would have been unfavorable to [defendant's] case." *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 347 n.26 (M.D. La. 2006). The deleted metadata, limited as it was, would have lacked probative value and clearly would not have established the facts Oracle's motion suggests.

As Rimini has stated throughout this litigation, its intention is for this case to be litigated on the <u>merits</u>, not on the basis of litigation of the *litigation*. Through the inflammatory

---

[1] "Oracle Ex. __" refers to exhibits attached to Oracle's Appendices of Exhibits in Support of Motion for Evidentiary Sanctions for Spoliation. (*See* Dkt. 309-310, 316.)

1   allegations in its motion, Oracle seems to have taken a different tack. However, once Oracle's
2   sensational allegations are stripped away, what remains is the simple fact that an obsolete folder of
3   software was innocently deleted by Rimini personnel but only after the contents of that folder were
4   recorded. Rimini will stipulate as to the accuracy of these records, as set forth in the proposed
5   stipulation included with this Opposition. As the contents of the deleted folder are not in dispute, its
6   deletion does not warrant the other broad and highly prejudicial inferences Oracle seeks. Oracle's
7   motion for sanctions should be denied.

## II.   FACTUAL BACKGROUND

Rimini does not dispute that in January of 2010 it anticipated potential litigation with Oracle.[2] This fact, however, is not essential to the disposition of the instant motion because Rimini agrees that Oracle should be restored "to the same position [it] would have been in absent the" deletion of the software folder. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). While Oracle's proffered sanctions go far beyond such a position, Rimini must first address Oracle's inaccurate description of the factual record before turning to the appropriate means for addressing the deleted software folder.

### A.   Rimini's Use of the Software Stored in its Internal Software Folder is Authorized by the License Agreements Between Rimini's Customers and Oracle.

While Oracle attempts to paint the alleged "software library" as a "jumbled" collection of Oracle material to be "cross-used" regardless of a clients' scope of entitlement, the reality is that this folder contained copies of PeopleSoft installation media and was organized by software release so Rimini personnel could easily determine which clients were entitled to the stored

---

[2] While Oracle makes much of the fact that the internal software folder was deleted shortly before Oracle filed its original complaint, Rimini personnel, of course, did not know that Oracle's suit was imminent at that time. Notably, Rimini and Oracle had exchanged numerous letters for several years prior to the present suit. In response to this correspondence, Rimini preserved a substantial amount of discoverable material, including the 754,450 documents (totaling over 6,000,000 pages) and over 81,350 native files Rimini produced in this matter. (*See* Dkt. 167 at 5.) While Rimini regrets the deletion of the internal software folder, Rimini respectfully submits that the merits of this case may be squarely addressed on the basis of the evidence found in these millions of produced pages and terabytes of produced data, as well as Rimini's proposed stipulation as to the content of the internal software folder.

media. (Dkt. 316, Oracle Ex. 16 (Williams Dep., Oct. 5, 2011) at 26:9-27:10.) As set forth in Rimini's Opposition to Oracle's Motion for Partial Summary Judgment, multiple clients are licensed by Oracle to the same software, and such license rights are not tied to specific installation media. (*See e.g.*, Dkt. 266 at 2, 8-9, 14.) Numerous Rimini witnesses have explained that Rimini implemented strict procedures to ensure that clients only received the benefit of the software from the internal folder that the client had actually licensed from Oracle.[3] By following such procedures, Rimini operates within the scope of its clients' license rights, and Rimini looks forward to litigating the merits of its license defense as to its internal software folder at the proper juncture.

### B. The Documentation Surrounding the Deletion of the Software Folder Refutes Oracle's Allegations that the Folder was Deleted with the Intent to Destroy Evidence.

Unfortunately, Rimini must once again correct Oracle's allegations that Rimini "strategically deleted" this folder to somehow "cover its tracks." (Dkt. 307 at 3, 9.) Contrary to Oracle's allegations, 

---

[3]

363709 v4

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]

- 5 -

1
2

[REDACTED]

3   While Oracle argues that the software folder was "destroyed with a culpable state of mind," Rimini respectfully submits that the mentioned documentary evidence speaks for itself and demonstrates the lack of improper motivations on the part of Ms. Williams, Mr. Chiu or any other Rimini employee. The innocent nature of the folder's deletion is particularly apparent given the care that was taken to document the contents of the deleted folder. (*Id.*)

### C. Rimini has Not Attempted to "Take Advantage of Gaps in the Record."

Oracle argues that Rimini has attempted to take advantage of gaps in the record created by its deletion of the internal software folder. That argument is false, and any gaps in the factual record have nothing to do with the deletion of the internal software folder.

In making this argument, Oracle principally relies on the deposition testimony of J.R. Corpuz, a low-level Rimini employee who had no responsibilities related to maintaining the internal software folder. (Dkt. 307 at 17, 24.) Using an email, Oracle's counsel questioned Mr. Corpuz about the internal software folder during his deposition. (Dkt. 316, Oracle Ex. 11 (Corpuz Dep., Mar. 15, 2011) at 179:18-21 (emphasis added).) Mr. Corpuz did not deny the existence of the internal software folder, but insisted only that he did not remember the particular email, repeatedly stating that "I can't remember", "I don't know", or "I don't remember." (*Id.* at 179:15-181:13.) This is hardly evidence of attempting to exploit gaps in the record.

More broadly, Oracle accuses Rimini's deponents of deception, arguing that "in early depositions Rimini employees denied the existence of a software library." (Dkt. 307 at 2.) However, the fact that Mr. Corpuz and certain other Rimini deponents could not testify regarding the internal software folder does not indicate deception. [REDACTED]

[REDACTED] As Rimini later confirmed to the Court, Ms. Williams

363709 v4
RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]

is indeed the most knowledgeable Rimini employee as to the internal software folder. (Dkt. 316, Oracle Ex. 2 (Status Conf. Tr., Nov. 8, 2011) at 18:9-19:18.)[4]

      While Oracle argues there are gaps in the factual record with respect to how the stored software was used to build environments, the simple fact is that Rimini never kept records identifying which environments were built from the internal software folder. (Dkt. 316, Oracle Ex. 5 (RSI's Third Suppl. Resps. To Interrogs. 20-22) at 14, 30, 47.) <u>This lack of information is not because Rimini deleted something, but rather because Rimini never maintained such records.</u>[5] This fact is buttressed by numerous documents and testimony. ███████████████████████████████████████████████████████████████████████████████████████████ (Dkt. 316, Oracle Ex. 16 (Williams Dep., Oct. 5, 2011) at 29:20-30:7.) Oracle does not claim that this information was deleted. Rimini provided Oracle with all the information it has regarding the ultimate source of its environments, and Magistrate Leen has already ruled that this was adequate. (*See* Dkt. 194 (Minutes of November 9, 2011 Proceedings) (agreeing that deposition testimony was sufficient supplementation regarding the use of the internal software folders and denying Oracle's request in all other regards).) Further, as will be detailed *infra*, the "metadata" hyped by Oracle would not fill the gaps Oracle believes exist in the record.

---

[4] 

[5] Oracle makes much ado about Rimini "refusing to admit . . . that the majority of environments built in 2006, 2007, 2008, and 2009 were built using software from the software library." (Dkt. 307 at 16.) However, Rimini cannot admit to Oracle's request because it is not accurate. █████████████████████████████████████████████████████████████████████

363709 v4

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]

1  Finally, Oracle argues that the scope and extent of Rimini's use of the internal share
2  might impact the accuracy of the damages model of Rimini's damages expert. (Dkt. 307 at 17-18.)
3  This argument is also flawed. [REDACTED]

11  Ultimately, the deletion of the files in the internal share folder did not create any
12  "gaps in the record" Rimini is now trying to exploit. Oracle already possesses all of the evidence
13  that was ever maintained on that topic. Further, as detailed below, the only data that is truly
14  missing—the metadata—would not show what Oracle suggests and, thus, would not fill the alleged
15  "gaps" in the record.

### III. ARGUMENT

17  As stated previously, Rimini will stipulate that the internal software folder included
18  each of Oracle's listed copyrighted works. (*See* Dkt. 307-1, Proposed Order at 4-5.) In light of this
19  stipulation, and the additional evidence available to Oracle to address this issue, the two remaining
20  adverse inference instructions requested by Oracle are unnecessary and represent a far more severe
21  sanction than required to remedy any potential prejudice to Oracle. *See Anderson v. Wal-Mart*
22  *Stores, Inc.*, No. 2:10-cv-02235, 2011 U.S. Dist. LEXIS 114057, at *10 (D. Nev. Oct. 3, 2011)
23  ("Courts should choose 'the least onerous sanction corresponding to the willfulness of the
24  destructive act and the prejudice suffered by the victim.'"). Further, because there is no nexus
25  between Oracle's requested instructions and the actual information contained in the missing
26  metadata, an adverse inference sanction is improper in this case. *Consol. Aluminum Corp.*, 244
27  F.R.D. at 346 ("[B]efore an adverse inference may be drawn, there must be some showing that there

is in fact a nexus between the proposed inference and the information contained in the lost evidence.").

### A.  Legal Standards.

"An adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch*, 150 F.3d at 126. Because Oracle seeks an adverse inference instruction based on spoliation of evidence, it must "adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 n.50 (S.D.N.Y. 2003) ("*Zubulake IV*"). Relevancy, in the context of a motion for adverse inference sanctions, "means something more than sufficiently probative to satisfy Rule 401" (*Residential Funding*, 306 F.3d at 108), and the appropriate analysis of the "relevance" factor in the adverse inference context has been stated succinctly as:

> The 'relevance' factor of the adverse inference analysis is generally broken down into three subparts: (1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the non-destroying party has suffered prejudice from the destruction of the evidence."

*Consol. Aluminum Corp.*, 244 F.R.D. at 346. As to the prejudice prong of this analysis, the inquiry looks to whether the non-moving party's actions impaired the ability to go to trial, interfered with the rightful decision of the case, or forced the moving party to rely on incomplete and spotty evidence at trial. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (internal quotations omitted).

As discussed below, the missing metadata in this case does not support the inferences sought by Oracle because this metadata did not maintain the log of historical file usage that Oracle suggests. For similar reasons, Oracle has not suffered prejudice from the deletion of the metadata, making an adverse inference wholly inappropriate.

### B. The Missing Metadata Does Not Warrant the Adverse Inferences Sought by Oracle.

Beyond the software stored in the internal software folder (which Rimini will stipulate to), the only other deleted material Oracle identifies is the metadata corresponding to the software files. Oracle argues this metadata would show the "origin and use" of the deleted software, hypothesizing that the metadata would allow it to determine which environments were created using the internal software folder. (Dkt. 307 at 25-26.) "In order for the sanction of adverse inference to be imposed, plaintiffs must present some evidence corroborating plaintiffs' assumption that the missing evidence would have been favorable to their case." *Hamre v. Mizra*, No. 02Civ.9088, 2005 WL 1083978, at *3 (S.D.N.Y. May 9, 2005) (citing *Zubulake IV*, 220 F.R.D. at 221). Oracle's hypothesized uses for the metadata, however, are uncorroborated, speculative, refuted by the existing evidence, and thus, cannot support its requested inferences.

#### 1. The Metadata Would Not Show the Origin and Use of the Software.

Contrary to Oracle's claims, Oracle could not use the metadata to correlate the creation date of each environment with use of the internal software folder. The metadata touted by Oracle—date created, date modified, and date accessed—is standard Microsoft Windows® metadata that would show only the *last time* a file was used, not *every time* a file was used. (Decl. of Chris Galotze at ¶ 4.) Nor would the metadata indicate who used the software or for what purpose. (*Id.*) Specifically, the metadata associated with the missing files does not include a running list of every date that the file was accessed. (*Id.*) Instead, the metadata would only contain the date the file was last accessed or modified. (*Id.*)

Further, what little information *could* have been gleaned from the metadata in the folder would be of limited probative value because it would give no information about who was accessing the software or whether it was being used to create a particular environment. Thus, Oracle's suggestion that the missing metadata might somehow allow them to determine the source of Rimini's environments is purely speculative and does not support Oracle's overly broad adverse inference instructions. *See Anderson*, 2011 U.S. Dist. LEXIS at *16 ("While Plaintiff is entitled to an appropriate remedy for the prejudice reasonably caused by Defendant's failure to preserve the

- 10 -

[evidence], the Court will not impose a sanction based on a theory of causation which, in turn, is based on nothing more than speculation."); *Consol. Aluminum Corp.*, 244 F.R.D. at 347 ("[Plaintiff] must provide some evidence that the documents would have aided it in the manner alleged in their inferences in order for such sanction to be imposed").[6] Because Oracle cannot "'establish a reasonable possibility based on concrete evidence rather than a fertile imagination, that access to the [lost material] would have produced evidence favorable to'" its cause, Oracle is not entitled to an adverse inference. *Pandora Jewelry, LLC v. Chamilia, LLC*, No. CCB-06-3041, 2008 U.S. Dist. LEXIS 79232, at *31 (D. Md. Sept. 30, 2008) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Colo. 1996)) (alteration in original).

Oracle also speculates that other, unidentified forms of favorable metadata might have been deleted. (*See* Dkt. 307 at 25-26.) But the metadata kept by the Windows Server operating system (such as used by Rimini) is well known and, not coincidentally, already identified in Oracle's motion. (*See* Decl. of Chris Galzotze at ¶¶ 1-4; Dkt 307 at 25.) Again, the metadata would only show one component of <u>when</u> the software was used (the last time), but would not contain any information about <u>who</u> used it, <u>what</u> it was used for, <u>where</u> it was copied, <u>why</u> it was used, or <u>how</u> it may have been modified. (*See* Decl. of Chris Galzotze at ¶¶ 1-4.) Given this reality, Oracle's speculation that other metadata may have existed cannot support its requested adverse inferences. *Consol. Aluminum*, 244 F.R.D. 335 at 347 fn. 26 ("It is inappropriate to give an adverse inference instruction based upon speculation that the deleted emails would have been unfavorable to [defendant's] case."); *see also Pandora*, 2008 U.S. Dist. LEXIS 79232, at *34 (declining to impose

---

[6] 

1  an adverse inference instruction because of Plaintiff's "failure to demonstrate that the lost evidence
2  would have supported its claims").

### 2. Oracle's Requested Inferences are Demonstratively Overbroad

Oracle argues that because it cannot examine missing metadata it should be awarded an inference that 143 listed environments were created using the "software library." (Dkt. 307 at 25-26, 30.) Not only is this request unjustified legally or given the limited metadata that was actually stored (as previously explained), but it is also seeks adverse inferences regarding numerous facts that cannot possibly be true. For instance, Oracle requests an adverse inference instruction that includes numerous environments created *after* Rimini's internal share was deleted. For example, Rimini has identified all environments created after Rimini discontinued the use of its internal share folder. (*See* Dkt. 316, Oracle Ex. 5 (RSI's Third Suppl. Resps. To Interrogs. 20-22) at 14, 31, 48.) Oracle has not disputed this list. Nevertheless, Oracle seeks an adverse inference for a sizeable portion of these environments. As one example, Oracle seeks an inference that an environment named "RSI-H890BMSM"—created in January of <u>2012</u> was somehow created from the software deleted in January of <u>2010</u>. This is, of course, impossible. Oracle does not justify why it should be given an adverse inference for facts that cannot possibly be true.

### C. Oracle Has Not Suffered Prejudice From the Deletion of the Software Folder.

Oracle's adverse inference instructions are also inappropriate because Oracle could not be prejudiced by the deletion of "incomplete and spotty" metadata that would not have helped it prove its case. *See Leon*, 464 F.3d at 959. Indeed, any possible prejudice to Oracle is adequately remedied by Rimini's stipulation and the additional evidence available on this issue. With regard to the deletion of Rimini's internal share folder, Oracle claims prejudice in two distinct ways:

> Rimini deleted evidence of (1) the *scope* of the software library, that is, what software was *copied into the library*, and (2) the *extent* to which the library was used, that is, when software was *copied out of the library* and for which customers.

(Dkt. 307 at 26 (emphasis in original).)

Neither of Oracle's bases for "prejudice" is legitimate in light of Rimini's stipulation and the multitude of additional evidence available for Oracle to prove its case. For example, by

- 12 -

1  stipulating that complete copies of the identified software were included in Rimini's internal share,
2  Oracle is no longer required to prove "what software was *copied into the library*." (Dkt. 307 at 26
3  (emphasis in original).) *See AtPac, Inc. v. Aptitude Solutions, Inc.*, No. Civ. 2:10-294, 2011 U.S.
4  Dist. LEXIS 40043, at *32-33 (E.D. Cal. Apr. 12, 2011) ("By instructing the jury that it may infer
5  the truth of what plaintiff might have been able to prove, under the best case scenario, if the evidence
6  had not been destroyed, the court believes it can cure any prejudice resulting from defendants'
7  spoliation of the evidence.").[7]

8  Likewise, because Rimini has produced all available discovery regarding the use of
9  its internal share and the creation of its environments, Oracle has ample evidence to prove "when
10 software was *copied out of the library*" and is not prejudiced by the deletion of the folder at issue.
11 *See Consol. Aluminum Corp.*, 244 F.R.D. at 347 ("[E]ven assuming every email deleted during the
12 time period in question had some relevance to this lawsuit, it is doubtful that [plaintiff] will be
13 sufficiently prejudiced in its ability to put on its case to warrant an adverse inference instruction,
14 considering the overwhelming amount of documentary evidence and emails already produced by
15 [defendant] in this matter."); *see also In re Hitachi Television Optical Block Cases*, No. 08-cv-1746
16 DMS, 2011 U.S. Dist. LEXIS 90882, at *32-33 (S.D. Cal. Aug. 12, 2011) (finding that, in a case
17 where a three files could not be recovered, Defendant's voluminous production and document
18 recovery efforts adequately cured any prejudice sustained by Plaintiffs). As previously explained,
19 the limited date-based metadata Oracle attempts to rely is not reasonably probative as to the files'
20 uses in the first place.

21 Because any prejudice to Oracle has been fully and completely remedied by Rimini's
22 stipulation and production of other evidence, there is no need for additional adverse inference
23 instructions Oracle requests. Oracle has not, and cannot show, that the deletion of the metadata

---

[7] Oracle states that "Rimini claims that it lacks records of the detailed contents of the library," citing page 13 of the parties' Joint CMC Statement dated November 4, 2011. This cited statement, however, does not specifically address the software folder-at-issue, and Rimini has never denied that it indeed has records of the contents of the deleted folder. (*See* Dkt. 310, Oracle Ex. 50.)

impairs its ability to go to trial, interferes with the rightful decision of the case, or forces Oracle to rely on an otherwise incomplete and spotty evidentiary record. *See Leon*, 464 F.3d at 959; *see also Gonzalez v. Las Vegas Metro. Police Dept.*, No. 2:09-cv-0381-JCM-PAL, 2012 U.S. Dist. LEXIS 46601, at *24-25 (D. Nev. Apr. 2, 2012) (finding that a lost video was "marginal, at best", and therefore, the loss of the video did not "impair [Plaintiff's] ability to go to trial, and [did] not threaten to interfere with the rightful decision of the case"). Oracle is unable to make such a showing of prejudice and, therefore, is not entitled to an adverse inference instruction.

### D. Oracle Seeks to Gain an Unfair Advantage With the Jury Through Its Requested Instructions.

While Oracle has not been prejudiced by deletion of the software library, Rimini, on the other hand, would be greatly prejudiced by the granting of Oracle's proposed instructions. "Imposition of an adverse inference instruction has been recognized as a powerful tool in a jury trial . . . ." *Consol. Aluminum Corp.*, 244 F.R.D. at 340 n.5. An adverse inference instruction "brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 900 (8th Cir. 2004). As a result, "the adverse inference instruction is an extreme sanction and should not be given lightly." *Zubulake IV*, 220 F.R.D. at 220.[8]

There is no evidence that Rimini acted with bad faith when it deleted the obsolete internal share folder. *See, e.g., Orbit One Comms. v. Numerex Corp.*, 271 F.R.D. 429, 439 (S.D.N.Y. 2010) ("In the absence of bad faith or other sufficiently egregious conduct, 'it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him.'" (quoting *Zubulake IV*, 220 F.R.D. at 221)). Nevertheless, Oracle seeks to vilify Rimini and brand it

---

[8] To the extent the Court is inclined to issue an adverse evidence instruction to the jury, Rimini respectfully requests that any instruction be tailored to address the evidence that is actually missing, i.e., the metadata stored along with software files for which Rimini has stipulated. Rimini further respectfully requests that any instruction be crafted to minimize any undue prejudice to Rimini, such as text from which the jury may infer that Rimini is a "bad actor, guilty of destroying evidence that it should have retained for use by the jury." *Morris*, 373 F.3d at 900.

as "a bad actor, guilty of destroying evidence" with its requested references to "Rimini's January 2010 deletion of the software library." (Dkt. 307-1, Proposed Order at 3-4.) In light of Rimini's lack of bad faith, and the complete lack of prejudice to Oracle, the probative value of Oracle's requested instruction would be substantially outweighed by the danger of unfair prejudice to Rimini. *See generally Morris*, 373 F.3d at 900; Fed. R. Evid. 403.

The undue prejudice to Rimini associated with Oracle's requested sanction militates against the adoption of its adverse inference instruction. While the purpose of adverse inference instructions is to "restor[e] the prejudiced party to the same position he would have been in," *Kronisch*, 150 F.3d at 126, Oracle seeks to <u>better</u> its position by wrongfully capitalizing on this event to malign Rimini in front of the jury.[9] This is precisely the type of behavior that Judge Scheindlin warned about in *Pension Committee*:

> [T]he party seeking relief has some obligation to make a showing of relevance and eventually prejudice, lest litigation become a "gotcha" game rather than a full and fair opportunity to air the merits of a dispute. If a presumption of relevance and prejudice were awarded to every party who can show that an adversary failed to produce any document, even if such failure is completely inadvertent, the incentive to find such error and capitalize on it would be overwhelming. This would not be a good thing.

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 468 (S.D.N.Y. 2010). Oracle's attempt to convert this litigation into "a 'gotcha' game rather than a full and fair opportunity to air the merits of [this] dispute" lacks merit and should be denied *Id.*; *see also Orbit One*, 271 F.R.D. at 441.

---

[9] Oracle suggests that it may be placed in "a more advantageous position than if" Rimini had not deleted the files, citing *Io Group* and *Arista Records LLC*. (Dkt. 307 at 27-28.) In both of those cases, the deletion made it impossible to identify the copyrighted expression that was deleted. *Id.* In stark contrast to that factual situation, the contents of the deleted files in this case may be established through records made before the deletion. These records provide certainty as to the position that Oracle "would have been" absent the deletion, *Kronisch*, 150 F.3d at 126, thus reducing "the risk of an erroneous judgment" and making it unnecessary to potentially place Oracle in a more advantageous position.

- 15 -

363709 v4
RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]

## IV. CONCLUSION

Rimini did not "strategically" delete its internal share folder to "cover its tracks" or to "take advantage of gaps in the record." Because Rimini will stipulate that complete copies of the software at issue existed in its internal share, the only truly "missing" data is the metadata associated with that software. Despite Oracle's improbable description of this metadata, the plain truth is that the metadata did not contain any reliable evidence that might help Oracle prove its case. Oracle's request for an adverse inference instruction should be denied.

DATED: June 18, 2012

SHOOK, HARDY & BACON

By: /s/*Robert H. Reckers*
B. Trent Webb, MO Bar No. 40778
Robert H. Reckers, TX Bar No. 24039520
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
816-474-6550 Telephone
816-421-5547 Facsimile

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2012, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: /s/*Robert H Reckers*
Robert H. Reckers, Esq.

*Attorney for Defendants*
*Rimini Street, Inc., and Seth Ravin*

363709 v4

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR SANCTIONS [REDACTED]