BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corp.

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual<br><br>        Defendants. | Case No. 2: 10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER**<br><br>**[REDACTED]** |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE COURT SHOULD MODIFY THE PROTECTIVE ORDER | 2 |
|  | A. Because The CedarCrestone Discovery Is Relevant, The Law Supports Modification | 3 |
|  | B. CedarCrestone's Purported Reliance Interest, If It Exists, Does Not Outweigh The Efficiencies Gained By Modifying The Protective Order | 5 |
|  | C. The "Other Factors" Cited By CedarCrestone Should Not Impact Modification | 9 |
|  |   1. Oracle Is Not Seeking Modification For Improper Pre-Litigation Discovery | 9 |
|  |   2. Oracle Has Not Violated The Terms Of The Protective Order | 10 |
| III. | CEDARCRESTONE'S REQUEST FOR A STAY SHOULD BE DENIED | 13 |
| IV. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) .................................................................................... passim

*Biovail Labs., Inc. v. Anchen Pharm. Inc.*,
    463 F. Supp. 2d 1073 (C.D. Cal. 2006) ............................................................................ 12

*CBS Interactive Inc. v Etilize*,
    257 F.R.D. 195 (N.D. Cal. 2009) ................................................................................... 4, 7

*Cipollone v. Liggett Group, Inc.*,
    785 F.2d 1108 (3d Cir. 1986) ........................................................................................ 3, 6

*Doctor's Hosp. of Jefferson, Inc., v. Se. Med. Alliance, Inc.*,
    878 F. Supp. 884 (E. D. La. 1995) ..................................................................................... 12

*Foltz v. State Farm Mutual Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ....................................................................................... passim

*H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*,
    106 F.R.D. 551 (S.D.N.Y. 1985) .................................................................................... 4, 5

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,
    101 F.R.D. 34 (C.D. Cal. 1984) ............................................................................................ 8

*Largan Precision Co., Ltd. v. Fijinon Corp.*,
    No. C 10-1318, 2011 U.S. Dist. LEXIS 38132 (N.D. Cal. March 31, 2011) ............... 7, 13

*Martindell v. Int'l Tele. and Tele. Corp.*,
    594 F.2d 291 (2d Cir. 1979) ................................................................................................ 8

*McCarty v. Bankers Insurance Co., Inc.*,
    195 F.R.D. 39 (N.D. Fla. 1998) ..................................................................................... 4, 5

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ........................................................................................ 6

*Olympic Refining Co. v. Carter*,
    332 F.2d 260 (9th Cir.), *cert. denied*, 379 U.S. 900 (1964) ......................................... 2, 3, 7

*Omega Homes, Inc. v. Citicorp Acceptance Co.*,
    656 F. Supp. 393 (W.D. Va. 1987) ..................................................................................... 8

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*,
    121 F.R.D. 264 (M.D. N.C. 1988) ...................................................................................... 8

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER

*SmithKline Beecham Corp. v. Synthon Pharm. Ltd.*,
   210 F.R.D. 163 (M.D. N.C. 2002) .................................................................................... 12

*United Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424 (10th Cir. 1990) ......................................................................................... 2

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
   529 F. Supp. 866 (E.D. Penn. 1981) ................................................................................. 8

## I. INTRODUCTION

[REDACTED] CedarCrestone seeks to hide behind the Protective Order to hinder Oracle's ability to file a collateral lawsuit against CedarCrestone for infringement. The Court should allow Oracle to enforce its intellectual property rights and prevent ongoing infringement by granting Oracle's request for limited modification of the Protective Order. Although CedarCrestone raises several supposed reasons why the Court should not modify the Protective Order, most rely on inapplicable law or incorrect facts, and are simply irrelevant to the real issue.

The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mutual Auto. Ins. Co.,* 331 F.3d 1122, 1132 (9th Cir. 2003). The collateral litigant must demonstrate a "rough estimate of relevance" which "hinges on the degree of overlap in facts, parties and issues" such that "a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Id.* (citations omitted). While the court also must weigh the "countervailing reliance interest" of the party opposing modification, "reliance on a blanket protective order in granting discovery and settling a case, without more, will not justify a refusal to modify." *Id.* at 1133. The Court can satisfy any disclosure concerns by maintaining the same restrictions as the original order. *Id.*

CedarCrestone does not, and cannot, contest the clear relevance of the documents produced and testimony given by its corporate representative in this case to the issue of [REDACTED] The Protective Order explicitly states that it is subject to modification for good cause shown, and protecting Oracle's IP rights from infringement clearly is good cause. Moreover, CedarCrestone simply is wrong that a Protective Order cannot be modified to allow a party to *initiate* litigation, as published district court cases in this Circuit make clear.

CedarCrestone's claims of reliance also contradict the facts and have no legal support. CedarCrestone cannot argue that it "relied" on the fact that the Protective Order would not be modified when the order itself, which CedarCrestone acknowledges negotiating at length with experienced counsel assisting, explicitly provides for modification. Instead, CedarCrestone

1

seeks not protection under the Protective Order at all, but rather immunity from liability for conduct it does not deny was improper.

CedarCrestone's "other factors" likewise have no bearing on the modification decision, and are just wrong. Oracle learned of CedarCrestone's potential infringement from Rimini's Answer to the Complaint in this matter; thus, there is no improper attempt to secure pre-complaint discovery. Oracle did not violate the Protective Order; instead, at every step of the way, Oracle discussed its infringement concerns with CedarCrestone and sought and obtained CedarCrestone's approval to address the issue with the business personnel from both companies, outside of the Oracle/Rimini litigation context. Finally, Oracle has no obligation to address the relevance of specific documents or testimony. However, to avoid any doubt about the importance and relevance of the one deposition transcript and lone document production for which Oracle seeks this modification, Oracle has provided illustrative excerpts from the deposition for the Court.

In short, Oracle has satisfied the standards articulated by the Ninth Circuit which "strongly favor" modification and CedarCrestone has offered no reason to depart from this important policy. The Court should modify the Protective Order to allow Oracle to use CedarCrestone's produced documents and testimony in collateral litigation against CedarCrestone to prevent continued infringement of Oracle's IP rights.

## II.     THE COURT SHOULD MODIFY THE PROTECTIVE ORDER

The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation" so that parties need not reinvent the wheel. *Foltz,* 331 F.3d at 1131.[1] *See also Beckman*, 966 F.2d at 475; *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-65 (9th Cir.), *cert. denied*, 379 U.S. 900 (1964). This is true whether or not the parties have stipulated to a protective order limiting discovery. *Id.*[2]

---

[1] The Ninth Circuit has described the requirement to show "extraordinary circumstances" or "compelling need" articulated by Courts in the Second Circuit as "incompatible with our circuit's law." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992).

[2] *See also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).

The Ninth Circuit has rejected CedarCrestone's argument that modification "may slow down the initial litigation, because parties are discouraged from disclosing for fear of forced disclosure in a later action." *Beckman,* 966 F.2d at 475. Instead, "legitimate interests in privacy can be protected by [maintaining] the same restrictions as those contained in the original protective order." *Id.* Oracle has proposed exactly this approach.

Reliance interests of the party opposing the modification of a stipulated protective order also "will be less with a blanket order, because it is by nature overinclusive." *Id.* at 476. The opposing party must make a "'good cause' showing" of the need for continued protection, demonstrating "specific prejudice or harm." *Id.* "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id. (*quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Regardless of whether the opposing party actually relied on the protective order in granting discovery, such reliance "could not, without more, justify refusal to modify when there is a reasonable request for disclosure." *Foltz,* 331 F.3d at 1133; *Beckman*, 966 F.2d at 476; *Olympic*, 332 F.2d at 264.

### A. Because The CedarCrestone Discovery Is Relevant, The Law Supports Modification

Oracle has shown that "the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Foltz*, 331 F.3d at 1132. Oracle need not obtain a ruling by the court in which the collateral litigation will be brought that the discovery would be relevant to the subsequent lawsuit. *Id.* This Court need make "only a rough estimate of relevance;" the "only issue it determines is whether the protective order will bar . . . access to the discovery already conducted." *Id.* at 1132-33.

Despite its lengthy opposition, CedarCrestone never challenges Oracle's showing that the documents and testimony relate to claims that Oracle could bring against CedarCrestone ▮ ▮ Although not required to do so, Oracle submits illustrative excerpts for the Court from the CedarCrestone deposition that further emphasize the relevance of the information as to which Oracle seeks modification. Declaration of Geoffrey M. Howard In Supp. of Pls.' Reply In

3

Supp. of Mot. to Modify Protective Order ("Howard Decl.") at ¶ 2, Ex. A.

CedarCrestone also does not challenge the authority Oracle cites that supports modification in these circumstances. *See* Oracle's Mot. at 6:16-7:1.

Instead, relying on District Court decisions outside the Ninth Circuit, CedarCrestone argues that longstanding Ninth Circuit law is irrelevant because Oracle has not sued yet, so no collateral litigation exists. Opp'n at 12:11-12. Oracle has not sued ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is subject to the Oracle/Rimini Street Protective Order, yet (according to CedarCrestone) Oracle cannot modify that Protective Order because it has not sued.

Not surprisingly, and as CedarCrestone acknowledges, District Courts within the Ninth Circuit have reached the opposite conclusion to the out-of-circuit authority cited by CedarCrestone. For example, in *CBS Interactive Inc. v Etilize*, 257 F.R.D. 195, 206 (N.D. Cal. 2009), the Court agreed to modify a protective order to permit use of discovery information for the purpose of ***initiating*** collateral litigation. In so doing, the court relied on the Ninth Circuit's "strong policy" – set forth in *Foltz* – "favoring access to discovery materials to meet the needs of parties engaged in collateral litigation." *Id.* at 206; *Foltz,* 331 F.3d at 1131. The Court rejected the argument by the party opposing modification that, because no collateral litigation yet existed, it could not determine the potential relevance of the protected information. *CBS Interactive*, 257 F.R.D. at 206. The Court found that the documents "present a rather questionable use of proprietary information" by the party opposing modification, and therefore the party seeking modification had satisfied the good cause standard of Rule 26(c) to "to justify [the] motion to use such discovery material to protect itself from harm." *Id.* at 205. The Court then granted the modification to allow the use of "discovery information from this litigation for the purposes of initiating collateral litigation." *Id.*

CedarCrestone's cases also are distinguishable. Both *McCarty v. Bankers Insurance Co., Inc.*, 195 F.R.D. 39 (N.D. Fla. 1998) and *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551 (S.D.N.Y. 1985) involved the rights of government prosecutors to

4

obtain access to documents produced in related civil litigation. Both courts found that because the government has "special investigative powers," access to documents in a civil action "require a special showing of compelling need." *McCarty*, 195 F.R.D. at 43; *Hayden*, 106 F.R.D. at 556. Because the government had yet to file an action, but rather remained only in investigatory mode, the courts rejected the requests for modification. *Id.* In addition, in *Hayden*, the Court expressed concern that the party seeking modification was initiating the outreach to the government in an effort to harass the opposing party, rather than the government seeking discovery of the information. *Hayden*, 106 F.R.D. at 556. This case does not involve a government prosecutor seeking documents produced in civil litigation, and these cases are inapposite.

CedarCrestone also attempts to distinguish *Foltz* on the grounds that the protective order there did not contain an agreement to limit production to the pending action. Opp'n at 2:26-3:3; 12:28-13:4. That is wrong. The *Foltz* protective order, attached as an appendix to the Court's order in that case, ***did*** contain a specifically negotiated provision limiting disclosure to the pending case; any party that sought to use the information in another case was required to obtain specific consent of all parties or move for modification by the Court. *Foltz*, 331 F.3d at 1139-40, app. A, ¶¶ 4-6. The same is true here. After months of negotiation with assistance of counsel, and in the face of Oracle's motion to compel, CedarCrestone agreed to a Protective Order that permitted any party to seek modification (and, thus, disclosure) for good cause. CedarCrestone must have known that protecting and enforcing IP rights is good cause. Indeed, as an Oracle partner, CedarCrestone agrees to rigorous provisions related specifically to safeguarding Oracle's IP and confidential information. Howard Decl. at ¶ 12, Ex. E.; *Id.* at ¶ 13, Ex. F.

Because Oracle has demonstrated the relevance of the CedarCrestone produced materials to collateral litigation it must bring to protect its IP rights, the Court should modify the Protective Order to allow Oracle's use of the discovery produced by CedarCrestone for that purpose.

**B.  CedarCrestone's Purported Reliance Interest, If It Exists, Does Not Outweigh The Efficiencies Gained By Modifying The Protective Order**

Rather than challenge the relevance of the information, CedarCrestone argues that its

5

reliance on the Protective Order should prevent modification. Indeed, it argues that absent the Protective Order, it would not have produced the discovery at all. Opp'n at 4:11-15. Of course, this Court would not have denied Oracle's original motion to compel on the grounds that CedarCrestone did not want to reveal its infringing conduct by responding to the subpoena, so that argument makes no sense. Moreover, CedarCrestone offers no "specific examples or articulated reasoning," as the law requires it to do, addressed to any specific documents or even types of documents for which it would have fought production to Oracle.[3] *Beckman,* 966 F.2d at 476 (quoting *Cipollone,* 785 F.2d at 1121). CedarCrestone's vague statements that Oracle is a "direct competitor" do not suffice. Opp'n at 5:21-27.[4]

In hindsight, CedarCrestone knew that discovery would reveal ▇▇▇▇ and it further knew that Oracle would pursue those issues. Only when Oracle moved to compel in the face of CedarCrestone's unreasonable demands regarding modification of the Protective Order, did CedarCrestone finally agree to produce the documents which demonstrate ▇ ▇▇▇ subject only to minor modifications to the existing Protective Order that are not relevant here. Dkt. 156 (Oracle's Mot. to Compel); Howard Decl. at ¶¶ 3-6. Oracle then withdrew its motion. Dkt. 159 (Oracle's Withdrawal of Mot. To Compel); Howard Decl. at ¶ 6. CedarCrestone has long sought to keep these documents from view, all the while ▇▇▇ ▇▇▇▇▇▇▇ Its purported "reliance" on the protective order is only another means to try to obtain some form of immunity against Oracle's prosecution of legitimate

---

[3] Concerns about trade secrets or other confidentiality considerations regarding disclosure to the public are irrelevant here as those provisions will remain in effect subsequent to the proposed modification.

[4] As set forth in Oracle's original motion to compel production pursuant to the subpoena, CedarCrestone waived any objections to the subpoena by failing to timely object. *see* Howard Decl. at ¶ 3; Dkt. 156; *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D. Cal. 2005) (failure to timely serve objections waives all grounds for objection); Opp'n at 6:19-7:12. When it finally did respond to the subpoena, CedarCrestone argued that it required a "supplemental" protective order by which it could designate all of its documents at the highest levels of confidentiality (i.e., restricted to "attorneys' eyes" only access), require Oracle to prove that documents were not highly confidential (as opposed to CedarCrestone demonstrating that the documents were entitled to such protection), and impose burdensome and impractical restrictions on Oracle's ability to use the documents. Howard Decl. at ¶ 4, Ex. C; *See* Opp'n at 7:24-8:8 (conceding long negotiations over Protective Order).

6

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER

claims.

Even if this so-called "reliance" did exist, the Ninth Circuit repeatedly has rejected the same argument CedarCrestone makes here, finding that the risk of slowing down litigation "because parties are discouraged from disclosing for fear of forced disclosure in a later action" can be protected by maintaining the original confidentiality restrictions in the Protective Order. *Beckman*, 966 F.2d at 475. *See also Foltz*, 331 F.2d at 1133; *Olympic*, 332 F.2d at 264. Finding that the party opposing modification "did rely on the protective order in granting discovery and settling the case," the Ninth Circuit nonetheless held that "reliance on a protective order under these circumstances could not, without more, justify refusal to modify when there is a reasonable request for disclosure." *Beckman*, 966 F.2d at 476. *See also Foltz*, 331 F.2d at 1133; *Olympic*, 332 F.2d at 264.

CedarCrestone also argues that *Foltz* is distinguishable because there was no showing of reliance on the protective order in that matter. Opp'n at 3:5-6. However, the Ninth Circuit specifically addressed and rejected the reliance argument based on the "blanket" protective order. *Foltz*, 331 F.3d at 1133. Despite reliance, the Court agreed that modification was appropriate.

CedarCrestone also attempts to distinguish *Foltz* because the party seeking to modify the agreement had not negotiated and drafted the Protective Order. Opp'n at 15:16-16:6. Courts within the Ninth Circuit, citing *Foltz*, have rejected this reasoning. *See, e.g., Largan Precision Co., Ltd. v. Fijinon Corp.*, No. C 10-1318, 2011 U.S. Dist. LEXIS 38132, *2 (N.D. Cal. Mar. 31, 2011) (court rejected argument that defendant party to original protective order should have foreseen the need to use discovery in other actions and should be barred from utilizing documents in related proceedings between the parties); *CBS Interactive*, 257 F.R.D. at 206 (granting motion to amend protective order to allow party to related patent litigation to file trade secret misappropriation claims in collateral litigation). In any event, CedarCrestone spent months negotiating the Protective Order, and then agreed to it with the assistance of counsel rather than face Oracle's motion to compel.

CedarCrestone's out-of-district cases are also distinguishable:

- In *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866 (E.D. Penn. 1981) *disapproved by In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34 (C.D. Cal. 1984), plaintiffs who had agreed to an umbrella pretrial order which allowed large volumes of material to be deemed confidential could not declassify the documents *en masse* years later. Unlike here, where Oracle has agreed that the same confidentiality designations made by CedarCrestone will remain in place, subject to the de-designation procedures in the Protective Order itself, in *Zenith* the defendants sought to remove confidentiality protections entirely. Those confidentiality concerns thus do not arise under Oracle's proposed modification.

- *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 267-68 (M.D. N.C. 1988) supports Oracle's position. There, the court refused to enter sanctions for alleged violations of the protective order based on disclosure outside the litigation because reliance had been minimal, public policy disfavors use restrictions, and the party seeking to limit disclosure had not shown good cause for "prohibiting the utilization of such discovery in other litigation." *Id.* at 269.

- In *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 404 (W.D. Va. 1987), the court refused to modify the protective order because the parties had agreed to its limitations, but this out-of-circuit district court case cannot overcome the "strong" policy favoring disclosure in the Ninth Circuit.

- CedarCrestone's reliance on the Second Circuit's decision in *Martindell v. Int'l Tele. and Tele. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979) is misplaced because, as the Ninth Circuit recognized in *Beckman*, the "extraordinary circumstances" test utilized by the Second Circuit is "incompatible with our circuit's law." *Beckman*, 966 F.2d at 475. That case also involves the special issues associated with

8

criminal governmental investigations.

In addition, here, CedarCrestone alone understood that its documents would substantiate the infringement allegations raised by Rimini in its answer to Oracle's complaint. CedarCrestone cannot shield those documents from Oracle, which now seeks to stop that continued infringement.

### C. The "Other Factors" Cited By CedarCrestone Should Not Impact Modification

#### 1. Oracle Is Not Seeking Modification For Improper Pre-Litigation Discovery

As Oracle demonstrated in its opening brief, it initially sought discovery from CedarCrestone because first TomorrowNow (in the SAP litigation) and then Rimini asserted as a defense to Oracle's copyright infringement claims that it is "an industry standard for third party vendors like . . . CedarCrestone" to possess copies of Oracle's software and support materials. Oracle's Mot. at 3:3-4; Rimini's Answer to Oracle's Second Am. Compl. and First Am. Countercl., Dkt. 153 at ¶15.[5] Since Oracle had never authorized CedarCrestone to make or have copies of Oracle's software to provide support services for the software, Oracle subpoenaed documents and testimony from CedarCrestone to investigate its business model in light of those allegations. Oracle's Mot. at 3:10-11, 3:24-25.

In addition, CedarCrestone agreed that Oracle, including its counsel and personnel within the company, could evaluate CedarCrestone's discovery responses and testimony independent of the Rimini litigation, for the purpose of assessing and discussing the legality of CedarCrestone's business practices and addressing related concerns directly with CedarCrestone -- all of this free from the limitations posed by the Protective Order that would otherwise arguably prevent that analysis. Howard Decl. at ¶ 8, Ex. D. Oracle and CedarCrestone then engaged in a series of discussions focusing on CedarCrestone's past and current business practices. Oracle's

---

[5] CedarCrestone also claims that because Oracle is "litigious" (Opp'n at 4:1-4), that should somehow be relevant to the issue of modification. Again, CedarCrestone seems to be trying to find some type of immunity from wrongdoing, rather than focusing on the standard for modification of the Protective Order. In fact, Oracle did sue SAP and TomorrowNow to protect its IP rights, and both those companies stipulated to liability based on the same misconduct alleged against Rimini and now CedarCrestone. Oracle is the *defendant* in the HP case.

9

understanding of CedarCrestone's infringement thus is not limited to the documents and testimony produced in this case.

### 2. Oracle Has Not Violated The Terms Of The Protective Order

CedarCrestone's argument that Oracle has somehow violated the terms of the protective order (Opp'n at 9:19-23, 17:20-22) is both spurious and belied by the parties' agreements and Oracle's conduct. As illustrated by this motion, Oracle has been over-cautious in its handling of the information revealed in discovery. Oracle's outside counsel sought permission from CedarCrestone to discuss this evidence with employees at Oracle unrelated to the *Oracle v. Rimini St.* litigation for the purpose of evaluating CedarCrestone's conduct. Howard Decl. at ¶ 8, Ex. D. CedarCrestone agreed. *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶ 10-11. Oracle then brought this motion in order to protect its rights after it was unable to resolve its concerns with CedarCrestone. *Id.* Nothing in that history suggests any violation; to the contrary, Oracle has gone to great lengths to avoid such a charge. *Id.* at ¶ 8.

It is true that Oracle has pulled back from certain joint activities with CedarCrestone. The fact is that CedarCrestone has not behaved as a partner should, dating all the way back to its discovery responses in the SAP litigation. It has stonewalled, engaged in misleading and arguably outright deceptive behavior, forced Oracle to bring motions based on frivolous litigation positions – failing to cooperate or produce documents in a timely manner, insisting on wholesale "attorneys' eyes only" productions and highly unusual and unreasonable protective order terms which would over-designate every document and page of testimony as "attorneys' eyes only" without any foundation until Oracle filed a motion to compel -- and generally acted like a party with something to hide. *Id.* at ¶¶ 3-6. In short, CedarCrestone never has acted in the cooperative way required by Oracle's partner agreement with CedarCrestone. *Id.* at ¶ 12, Ex. E., ¶ I at 5. At the same time, Rimini publicly has asserted that CedarCrestone behaves just like Rimini itself with respect to Oracle's IP. Rimini's Answer to Oracle's Second Am. Compl. and

1  First Am. Countercl., Dkt. 153 at ¶ 5. Oracle knows these facts from publicly available
2  information. They justify Oracle's decision to proceed more cautiously in any joint marketing
3  activities with a partner Oracle can no longer trust.
4      The phone conversation (Opp'n at 11:3-17) that CedarCrestone alleges amounts to a
5  Protective Order violation is a perfect example of this dynamic.
6
7
8  Howard Decl. at ¶ 10.
9  *Id.*
10
11
12  *Id.*
13      CedarCrestone's wild assertion that these discussions violated the protective order is
14  disingenuous given its agreement that the discussions could proceed independent of the
15  Protective Order. Opp'n at 11:3-17; Howard Decl. at ¶ 8, Ex. D.
16      Finally, even if Oracle had altered its joint activities with CedarCrestone based on
17  CedarCrestone's unauthorized use of Oracle's IP, there would be nothing wrong with that.
18  Oracle sought and obtained CedarCrestone's agreement that Oracle's counsel could share the
19  Simmons testimony and CedarCrestone produced documents with Oracle business personnel,
20  and discuss with them the legality of CedarCrestone's business practices. Howard Decl. at ¶ 8,
21  Ex. D. Oracle determined – based on its own investigation and based on materials received from
22  CedarCrestone – ▮▮▮ *Id.* at ¶ 9. CedarCrestone says
23  that now Oracle may neither (1) alter the business relationship in any way; nor (2) obtain
24  modification of the Protective Order. Opp'n at 11:3-17. Thus, according to CedarCrestone, the
25  Protective Order actually requires Oracle, ▮▮▮
26  ▮▮▮ to continue happily presenting a unified, joint
27  marketing face to the outside world. And that reading allows CedarCrestone to ▮▮▮
28

11

1 ████████ while holding itself out to the world (and this Court) as an Oracle partner. More
2 importantly, that interpretation ignores the agreement CedarCrestone made with Oracle that
3 Oracle could share and discuss this information internally outside the context of the
4 Oracle/Rimini litigation.

### 3. Oracle Need Not Address Specific Documents Or Testimony

Finally, Oracle has no obligation to address each document and portion of testimony separately. *See Foltz*, 331 F.2d at 1132-33 (district court required to make only a "rough estimate" of relevance). CedarCrestone's cases are again distinguishable. Opp'n at 19:3-23. In *Biovail Labs., Inc. v. Anchen Pharm. Inc.*, 463 F. Supp. 2d 1073, 1084 (C.D. Cal. 2006), the party seeking modification attempted to add additional personnel to the list of persons who could review competitively sensitive trade secret documents, and the Court rejected such a broad expansion of the scope of the Order without a particularized showing. Oracle seeks no such expansion here. In *Doctor's Hosp. of Jefferson, Inc., v. Se. Med. Alliance, Inc.*, 878 F. Supp. 884, 885-86 (E. D. La. 1995), the Court rejected a motion *in limine* to remove protective order coverage entirely for large volumes of documents which had not been identified specifically. Oracle has agreed to maintain the confidentiality designations. *SmithKline Beecham Corp. v. Synthon Pharm. Ltd.*, 210 F.R.D. 163, 168 (M.D. N.C. 2002) relied on inconsistent Second Circuit law, concluding that the party seeking modification failed to show inability to obtain the information by alternative means. Here, Oracle has agreed that the same restrictions which applied to the original Protective Order remain in effect; thus, CedarCrestone's privacy is protected. *See Foltz*, 331 F.2d at 1132.[6]

---

[6] While it has no obligation to do so under *Foltz* and other Ninth Circuit law, Oracle can identify portions of the Simmons deposition (CedarCrestone's corporate representative) which give rise to ████████ *See, e.g.*, Howard Decl. at ¶ 2, Ex. A, December 1, 2011 Deposition of Paul Simmons at 26:11-26:21 (████████); 27:01-28:07 (same); 142:15-143:03 (same); 72:13-18 (████████); 149:16-20 (████████); 150:16-20 (same); 153:17-25 (same); 95:15-96:02 (████████); 154:17-155:09 (same); 101:01-09 (same); 102:10-103:18 (same).

12

### III. CEDARCRESTONE'S REQUEST FOR A STAY SHOULD BE DENIED

CedarCrestone's alternative request for a stay of the decision to modify the Protective Order until the Rimini Street litigation ends has no basis in law, and CedarCrestone has made no showing that it is entitled to such extraordinary relief. *See, e.g., Langan*, 2011 U.S. Dist. LEXIS 38132, *5-6 (request for stay of related patent infringement proceedings denied). CedarCrestone continues ▓▓▓▓▓▓▓▓▓▓ Thus, the assertion that such a stay would "not prejudice Oracle in any way" clearly is false. While CedarCrestone asserts that it is "closing down" the infringing portion of its business (Opp'n at 20:19-22), it has not done so to date and continues to generate revenue by infringing Oracle's IP rights.

### IV. CONCLUSION

For the reasons stated above, the Court should modify the existing Protective Order to allow discovery obtained from CedarCrestone to be used in anticipated litigation between Oracle and CedarCrestone.

DATED: June 25, 2012                           BINGHAM McCUTCHEN LLP

By:   /s/   Geoffrey M. Howard
            Geoffrey M. Howard
            Attorneys for Plaintiffs
            Oracle USA, Inc., Oracle America, Inc.,
            and Oracle International Corp.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER