BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
FRED NORTON (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corp.

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>            Plaintiffs,<br><br>        v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>            Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION**<br><br>**REDACTED – PUBLIC VERSION**<br><br>Hearing Date:  July 17, 2012<br>Time:  1:45 p.m.<br>Courtroom: 3B<br><br>Judge:  Magistrate Judge Peggy A. Leen |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF CONTENTS**

3

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I.    Rimini's Deletion of the Software Library Was Willful and in Bad Faith ........... 3

        A.    Rimini Has Conceded What the Ninth Circuit Requires:  Willful
            Spoliation ............................................................................................... 3

        B.    There Is Ample Evidence to Conclude Rimini's Deletion Was in
            Bad Faith ................................................................................................ 4

    II.    Oracle's Requested Relief Is Appropriate ............................................................ 8

        A.    Oracle's Only Burden Is to Prove that the Deleted Metadata Would
            Have Been Relevant to Its Claims .......................................................... 8

        B.    Like the Software in the Library, the Associated Metadata Was
            Relevant to Oracle's Claims ................................................................. 10

        C.    The Metadata Would Likely Have Been Favorable to Oracle ................ 13

    III.    Oracle Will Suffer Prejudice Without Adverse Inference Instructions, and
        Rimini Will Not Be Unfairly Prejudiced by Them ............................................. 14

CONCLUSION ................................................................................................................... 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

3  <u>CASES</u>

4  *Akiona v. United States*,
5      938 F.2d 158 (9th Cir. 1991).............................................................9, 16

   *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*,
6      No. S-00-113 LKK/JFM, 2006 WL 2308442 (E.D. Cal. Aug. 9, 2006)..................... 16

7  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
       69 F.3d 337 (9th Cir. 1995)...............................................................15
8
   *AtPac, Inc. v. Aptitude Solutions, Inc.*,
9      No. Civ. 2:10-294, 2011 U.S. Dist. LEXIS 40043 (E.D. Cal. Apr. 12, 2011)....................4

10 *Consol. Aluminum Corp. v. Alcoa, Inc.*,
       244 F.R.D. 335 (M.D. La. 2006)..........................................................15

11 *De Espana v. Am. Bureau of Shipping*,
       No. 03 CIV.3573 (LTS)RLE, 2007 WL 1686327 (S.D.N.Y. June 6, 2007) ..................... 14
12
   *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
13     No.C 06-3359 JF (RS), 2009 WL 1949124 (N.D. Cal. July 2, 2009).......................9

14 *Glover v. BIC Corp.*,
       6 F.3d 1318 (9th Cir. 1993)................................................................4

15 *Gonzalez v. Las Vegas Metro. Police Dep't.*,
       No. 2:09–cv–00381–JCM–PAL, 2012 WL 1118949 (D. Nev. Apr. 2, 2012)...............15, 16
16
   *Hamre v. Mizra*,
17     No. 02CIV.9088(PKL)(HBP), 2005 WL 1083978 (S.D.N.Y. May 9, 2005) ..................... 15

18 *In re Hitachi Television Optical Block Cases*,
       No. 08-CV-1746, 2011 WL 3563781 (S.D. Cal. Aug. 12, 2011) .......................9, 15
19
   *Io Group Inc. v. GLBT Ltd.*,
20     No. C-10-1282 MMC DMR, 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011)...................9, 16

21 *Kronisch v. United States*,
       150 F.3d 112 (2d Cir. 1998)...........................................................8, 13

22 *Leon v. IDX Sys. Corp.*,
       464 F.3d 951 (9th Cir. 2006)........................................................3, 9, 14
23
   *Melendres v. Arpaio*,
24     No. CV-07-2513-PHX-GMS, 2011 WL 6740709 (D. Ariz. Dec. 23, 2011) ..................... 4

25 *Orbit One Comms. v. Numerex Corp.*,
       271 F.R.D. 429 (S.D.N.Y. 2010) ...........................................................4

26 *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.*,
       682 F.2d 802 (9th Cir. 1982)................................................................9
27
   *West v. Goodyear Tire & Rubber Co.*,
       167 F.3d 776 (2d Cir. 1999)...............................................................16

28

ii

1

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) ........................................................................................ 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

**INTRODUCTION**

In their Opening Brief, Plaintiffs showed that Rimini maintained a centralized software library that was used to provide support to its PeopleSoft customers, that Rimini deleted this library in January 2010, and that Rimini reasonably anticipated this litigation at the time it deleted the library. In their Opposition, Defendants concede all of these points. Hoping to avoid sanctions for their admitted destruction of relevant evidence, Defendants argue that this destruction was "innocent," that the appropriate remedy for the loss of the evidence concerning the software library is a stipulation that Defendants unilaterally compiled, and that Oracle's challenging this destruction of evidence is some kind of "manufactured dispute" designed to avoid adjudicating this case on the merits. Each of these arguments is meritless.

Rimini's assertion that the software library was somehow "innocently" deleted is directly contradicted by its representations to this Court ██████████████████. Rimini *concedes* that it intentionally deleted the library with knowledge it was relevant to anticipated litigation, which establishes that Rimini's deletion was "willful" under settled Ninth Circuit law. That itself is sufficient to award sanctions. Moreover, the evidence shows Rimini acted not just willfully, but in bad faith. Rimini makes no effort to explain its representation to this Court in its March 29, 2010 Answer and Counterclaims – less than three months after the deletion – that this software library "never existed at Rimini Street." Rimini also does not explain why it repeated this falsehood in another pleading on May 6, 2010, repeated it a third time in a December 2010 pleading, and a fourth time in a June 2011 pleading, or why multiple Rimini witnesses falsely testified at early depositions that no such library had ever existed. Nor can Rimini explain how this innocent-destruction story can be reconciled with its multiple false representations to customers that Rimini used "silos" to separate customer software to prevent exactly the sort of cross-use that Rimini now admits. Rimini has entirely failed to rebut this overwhelming evidence of bad faith.

Rimini's newly proposed stipulation falls far short of completely filling the hole in the record left by Rimini's spoliation. In its motion, Oracle requests three remedies: (1) a general adverse inference that the jury may infer that deleted evidence would have supported Oracle's

1

1   claims, and specific rebuttable presumptions regarding (2) the contents of the library and (3) the

2   use of it to build a specific set of environments.  The stipulation only touches on the second of

3   the three.  It does not "address all the potentially relevant data that was lost," nor does it "cure

4   any prejudice Oracle might have incurred from the deletion of this folder," as Rimini claims.

5   (Opp'n at 2.)  To the contrary, Rimini admits that metadata associated with the files in the

6   software library have been destroyed.  Although Rimini argues that the loss of the metadata does

7   not prejudice Oracle because the metadata could not be used to show infringing activity, given

8   Rimini's conduct to date, this representation is not credible.  Rimini repeatedly and falsely

9   claimed the software library did not exist; when confronted with evidence to the contrary, Rimini

10  changed its story to say that the library did exist, but that Rimini only had spotty evidence

11  regarding what was in the library.  In the instant motion, the story changes yet again, as Rimini

12  now claims *for the first time* that "Rimini personnel made a complete record of the files" before

13  deletion.  Rimini never explains why this "complete record" of files was not produced or

14  identified in response to Oracle's discovery requests, which led to a motion to compel that this

15  Court granted.  Given this admitted record of deception, there is no reason to accept Rimini's

16  claim that the deleted metadata is not important.  To the contrary, this Court has discretion to

17  infer, and should conclude, that Rimini lied about the software library and deliberately deleted

18  this software library precisely because the destroyed evidence would support Plaintiffs' claims.

19      Even if Rimini's last version of its ever-changing story were accepted at face value, it is

20  clear that the metadata fields would have shown the dates that particular files in the software

21  library were created (i.e., when they were copied into the library) and last accessed (i.e., when

22  they were last copied out of the library).  As explained in greater detail below, that metadata

23  would provide powerful evidence regarding Rimini's use of Oracle's copyrighted software

24  because it would show whether: (a) Rimini downloaded PeopleSoft software to the library before

25  Rimini had any PeopleSoft customers; and (b) at least some, if not many or all, of specified

26  client environments were created by copying software obtained from or for other customers.

27      Rimini's final line of defense is to claim that by bringing the instant motion, Plaintiffs are

28  seeking to avoid adjudication on the merits.  Despite impugning Plaintiffs' motives, Rimini

2

1    cannot escape the fact that it did willfully destroy relevant evidence, and that Plaintiffs are

2    entitled to be placed in at least the same position they would have been had Rimini not done so.

3    Whenever a party willfully destroys evidence, there will always be some uncertainty about

4    exactly what the deleted evidence would have proved.  Rimini attempts to capitalize on that

5    uncertainty by claiming Oracle only offers "speculation" that the deleted evidence would have

6    supported Oracle's claims.  But the evidence that Rimini did not destroy indisputably shows that

7    the deleted evidence would have been relevant to resolving significant factual disputes, and that

8    is more than an adequate legal basis to award the modest relief Oracle seeks.

9                                     **ARGUMENT**

10   **I.      Rimini's Deletion of the Software Library Was Willful and in Bad Faith**

11           Under any standard, Oracle has proven that Rimini acted with the requisite culpable state

12   of mind to support Oracle's requested adverse inference instructions.

13           **A.      Rimini Has Conceded What the Ninth Circuit Requires:  Willful Spoliation**

14           In the Ninth Circuit, "willful spoliation" justifies adverse inference sanctions, and to

15   make such a showing, Oracle need only show that Rimini deleted material with knowledge it was

16   potentially relevant to anticipated litigation.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th

17   Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has

18   'some notice that the documents were *potentially* relevant to the litigation before they were

19   destroyed.'") (citation omitted; emphasis in original).  Rimini's Opposition admits that "in

20   January 2010 [Rimini] anticipated potential litigation with Oracle" (Opp'n at 4) and ██████████

21   ████████████████████████████████████████████████████████████████████████████████

22   Rimini does not contest Oracle's showing (Op. Br. at 21-22) that Rimini knew the contents of the

23   library were relevant to the anticipated claims, and Rimini concedes the point by offering to

24   stipulate to the contents of the library in seeking to avoid further remedies  (Opp'n at 2).  Thus,

25   Oracle has shown, and Rimini has conceded, "willful spoliation" under Ninth Circuit law.

26           Rimini's argument that its deletion was "innocent," Opp'n at 4, 14, changes nothing.

27   Rimini cites out-of-Circuit cases and claims that there is "no evidence that Rimini acted with bad

28   faith when it deleted" the software library (Opp'n at 14 (citing *Orbit One Comms. v. Numerex*

                                            3

*Corp.*, 271 F.R.D. 429, 439 (S.D.N.Y. 2010))).  But in this Circuit, a "finding of bad faith is not a prerequisite" to an adverse inference instruction.  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also AtPac, Inc. v. Aptitude Solutions, Inc.*, No. Civ. 2:10-294, 2011 U.S. Dist. LEXIS 40043, at *32-33 (E.D. Cal. Apr. 12, 2011) (ordering an adverse inference for file deletion and scrubbing of a server without a finding of bad faith); *Melendres v. Arpaio*, CV-07-2513-PHX-GMS, 2011 WL 6740709, at *3 (D. Ariz. Dec. 23, 2011) (rejecting innocent deletion argument and ordering adverse inference).

### B.     There Is Ample Evidence to Conclude Rimini's Deletion Was in Bad Faith

Even if the Court required Oracle to prove Rimini acted in bad faith to obtain relief, as Rimini argues (*see* Opp'n at 4, 14-15), Oracle meets this heightened burden.  Rimini's argument that it deleted the software library "innocently" to reclaim server space, and that the evidence "demonstrates the lack of improper motivations on the part of Ms. Williams, Mr. Chiu or any other Rimini employees" is demonstrably false.  (*See* Opp'n 4, 6.)

[1]   At that time, both employees (as well as many others) were fully informed about the software library, knew that its use was illegal, and understood that as long as it existed it represented evidence that would support Oracle in the litigation Rimini anticipated.

As described in Oracle's Opening Brief, after receiving preservation notices from Oracle in December 2008 and January 2009, Rimini

---

[1] Exhibits cited as "Ex. __" refer to exhibits attached to the Appendices of Exhibits in Support of Motion for Evidentiary Sanctions for Spoliation.  Those cited as "Rimini Ex. __" refer to the exhibits attached to Rimini's Opposition.  Exhibits cited as "Reply Ex. __" are attached to this Reply.

1

2

3

4

5   On the other hand, the decision to cease use of the library – as well as

6   ▮▮▮▮▮  and denial of the existence of the library in pleadings and depositions – is entirely

7   consistent with an awareness that use of the software library was improper.  (*See* Op. Br. at 14.)

8   Rimini does not address the change in policy, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮  in its Opposition.  And Rimini offers no defense of its representations to this Court in March

10  2010, May 2010, December 2010, and June 2011 that the software library "never existed at

11  Rimini Street."  (RSI's Answer & Countercl., Mar. 29, 2010, Dkt. 30 ¶ 34, at 9; RSI's First Am.

12  Answer & Countercl., May 6, 2010, Dkt. 46, ¶ 34, at 9; RSI's First Am. Answer & First Am.

13  Countercl., Dkt. 116, Dec. 22, 2010, ¶ 34, at 8; RSI's Second Am. Answer & First Am.

14  Countercl., Jun. 16, 2011, Dkt. 153 ¶ 34, at 8.)  These repeated assertions were false when made,

15  and Rimini does not contend otherwise.

16      Rimini does claim that misrepresentations about the software library during early Rimini

17  depositions were due to a lack of memory and/or familiarity with the library, not deception.

18  (Opp'n at 6-7.)  This position is untenable and, in reality, two of the individuals most intimately

19  involved with maintenance and use of the software library were the ones who had it deleted, Mr.

20  Chiu and Ms. Williams.  Though not necessary to award adverse inferences here, this provides

21  evidence of bad faith.

22      First, contrary to Rimini's implication that Dennis Chiu, Vice President of Onboarding,

23  did not know about the software library because he was not part of "Rimini's PeopleSoft

24  environment group" (Opp'n at 6-7), in fact he knew the importance as well as the illegality of the

25  software library in January 2010 when he had it deleted.

26

27

28



ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

1
2
3
4
5
6
7
8
9
10
11
12



13        Second, Ms. Williams was also well-informed about the software library.  In fact, in its

14   Opposition, Rimini claims that she is "the most knowledgeable Rimini employee as to the

15   internal software folder."  (Opp'n at 7.)  Notably, Rimini does not address Oracle's claim in its

16   Opening Brief that Williams knew the "illegality of [Rimini's] conduct"  (Op. Br. at 14),

17   probably because Rimini cannot deny it.

18
19
20
21
22
23
24
25
26
27
28   Rimini admits as

1  much.  (*See* Opp'n at 5-6.)  There can be no doubt in these circumstances that Rimini's

2  spoliation was in bad faith, and thus in this or any Circuit, Oracle's request for adverse

3  inferences is justified.

4  **II.      Oracle's Requested Relief Is Appropriate**

5          Rimini attempts to hide the impact of its deletion behind a superficially appealing

6  stipulation:  Oracle moved for sanctions for deletion of the software library, and so Rimini offers

7  up the contents of that software library.  But the stipulation addresses only one-third of Oracle's

8  requested adverse inference instructions.  (*See* Op. Br. at 28-30.)  And, interestingly, what

9  Rimini's stipulation now offers (the software in the library at one point in time) is but a portion

10  of what Oracle requested ("every copy of any software and support material that is or has at any

11  time been stored at each Non-Customer Location") over a year ago, and now Rimini admits –

12  after the close of fact discovery – it had documentary evidence of this information all along.

13  (*See* Ex. 3 (Oracle's Fifth Set of Interrogs.) at 5-6.)  The stipulation does nothing to fill holes that

14  loss of the metadata created.  In essence, Rimini's proposed stipulation of a list of software in the

15  library in January 2010 is but a two-dimensional glimpse at what an actual examination of the

16  library would have provided – information about how and when the library was created and used.

17          Rimini concedes in its brief that "Oracle should be restored 'to the same position [it]

18  would have been in absent the' deletion of the software folder."  (Opp'n at 4 (quoting *Kronisch*

19  *v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).)  However, the metadata Rimini spoliated

20  along with the software library was centrally relevant to Oracle's claims and thus even under the

21  stipulation Oracle would still suffer prejudice, which is grounds for the Court to order the full

22  remedy.

23          **A.      Oracle's Only Burden Is to Prove that the Deleted Metadata Would Have**
24                  **Been Relevant to Its Claims**

25          Rimini argues that its stipulation redresses all of the harm Oracle suffered by the

26  destruction of the software library.  It claims that the metadata would not have been relevant and

27  that to obtain an adverse inference Oracle must show that any evidence Rimini deleted would

28  have been favorable to Oracle.  (Opp'n at 9, 10.)  Rimini does not cite a single opinion from

1  within this Circuit for this proposition, and consequently Rimini is both logically and legally

2  mistaken.  In terms of Oracle's motion, there is no principled distinction between the metadata

3  and the software in the library.  Both were relevant to Oracle's claims and both were destroyed

4  by Rimini in a single willful act.  As with any evidence spoliated by Rimini, Oracle must simply

5  show that the metadata is relevant to its claim.  *See Leon*, 464 F.3d at 959 (spoliation occurs if

6  evidence was "potentially relevant"); *Io Group Inc. v. GLBT Ltd.*, C-10-1282 MMC DMR, 2011

7  WL 4974337, at *7 (N.D. Cal. Oct. 19, 2011) (treating both "files and related metadata" together

8  as relevant to infringement claim).

9        Oracle does not need to prove that the deleted data would have been favorable, as Rimini

10  argues, because "[i]n the Ninth Circuit spoliation of evidence raises a presumption that the

11  destroyed evidence . . . was adverse to the party that destroyed it." *Dong Ah Tire & Rubber Co.,*

12  *Ltd. v. Glasforms, Inc.*, C 06-3359 JF (RS), 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009)

13  (citing *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir.

14  1982)).  "The evidentiary rationale [for adverse inference sanctions] is nothing more than the

15  common sense observation that a party who has notice that a document is relevant to litigation

16  and who proceeds to destroy the document is more likely to have been threatened by the

17  document than is a party in the same position who does not destroy" it. *Akiona v. United*

18  *States*, 938 F.2d 158, 161 (9th Cir. 1991) (citation omitted).  Once Oracle has proved the missing

19  data is relevant, it has satisfied its burden.  "If spoliation is shown, the burden of proof logically

20  shifts to the guilty party to show that no prejudice resulted from the spoliation." *In re Hitachi*

21  *Television Optical Block Cases*, No. 08-CV-1746, 2011 WL 3563781, at *6 (S.D. Cal. Aug. 12,

22  2011) (internal quotations omitted).  Therefore, Oracle must simply show that the metadata, like

23  the library itself, would have been relevant and then Rimini must prove that Oracle was not

24  prejudiced by its deletion.

25

26

27

28

**B.**     **Like the Software in the Library, the Associated Metadata Was Relevant to Oracle's Claims**

    **1.**     **Rimini Concedes the Types of Useful Metadata in the Library**

Rimini argues that "the missing metadata in this case does not support the inferences sought by Oracle because this metadata did not maintain the log of historical file usage that Oracle suggests."  (Opp'n at 9.)  As an initial matter, in light of Rimini's repeated false representations to this Court, to Plaintiffs, and to their own customers regarding the very existence of the software library, there is no reason to credit Rimini's claims regarding what the deleted metadata would, or would not, have shown.

Even if the Court were inclined to consider this argument, Rimini either misrepresents or misunderstands Oracle's position.  In its brief and supporting declaration, Rimini confirms that the metadata would have included precisely the type of data that Oracle expected, in particular, "date created" and "date accessed."  (Opp'n at 10 & Decl. of Chris Galotze at ¶ 4.)  This information would have shown when software was copied into the library and when it was copied out of the library, and could easily have been matched to data compiled from other documents that shows when Rimini downloaded and received software from Oracle (or Oracle customers) and when environments were built – in exactly the way Oracle argued in its Opening Brief.  (*See* Op. Br. at 25-26.)  Oracle could have used this crucial data to resolve the disputes of (1) whether Rimini downloaded software for no particular customer and (2) which customer environments Rimini built using other customers' software.

    **2.**     **The Metadata Would Have Resolved the Dispute Over Non-Customer-Specific Downloads**

Evidence suggests that Rimini downloaded a significant amount of PeopleSoft software long before it had even a single PeopleSoft customer.



10



One fact that would resolve this dispute is the date that versions of PeopleSoft software were placed in the software library.  This is precisely what Rimini destroyed when it deleted the "date created" metadata along with the software library.  If any materials in the software library had a "date created" predating September 2006, this would be unequivocal evidence that Rimini had copied Oracle's software to the software library before it had a PeopleSoft customer, thus eliminating any possible licensing defense based on Rimini's customers' licenses.  Rimini does not and cannot deny that the "date created" metadata would have been relevant to this dispute.

       **3.**      **The Metadata Would Have Been Relevant to Oracle's Claims of Cross-Use in Creating Environments**

Another dispute in this case is which and how many of Rimini's PeopleSoft environments associated with particular customers were built (i.e., copied) from other customers' software.  Oracle propounded interrogatories requesting environments built by source.  In response, Rimini provided a list of environments, the source for many of which simply stated "build."

ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

1

2

3

4

5

6

7

8



The date software was

9  added to the library would be reflected in the "date created" metadata, and the last time it was

10  used to build an environment would be reflected in the "date accessed" metadata.  The deleted

11  metadata is relevant to show cross-use here.

12

13

14

15

16

17

18

19

20

21

22

23



24

25  _____

26  [2] HRMS 8.8 SP1 refers to PeopleSoft's Human Resources Management Systems software, Version 8.8, Service Pack 1.

27

28



**C.** **The Metadata Would Likely Have Been Favorable to Oracle**

Since the metadata is indisputably relevant, Rimini cites to cases from other jurisdictions in an attempt to increase Oracle's burden, suggesting that to prove spoliation, Oracle must show via extrinsic evidence that the spoliated documents may have been favorable to its claims.  (*See* Opp'n at 9-11.)  As shown in Part II.A, supra, that is not the law of this Circuit, which permits an adverse inference sanction on a showing of deletion of material that the spoliator knew was potentially relevant.  Moreover, even if the cases Rimini cites were good law in this Circuit, the requirement of extrinsic evidence never applies where the destruction of evidence is willful, which has been proved and conceded in this case.  *See, e.g.*, *Kronisch*, 150 F.3d at 126 ("It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) (applying same rule with regard to "willful spoliation").  Nonetheless, even if the requirement of extrinsic evidence applied, Oracle would still prevail.

---

[3] Rimini employees have been unable to verify similar emails to Mr. Baron's, in which Rimini ████████████████████████████████, *see, e.g.*, Ex. 11 (Corpuz Dep., Mar. 15, 2011) at 179:4-181:13 (discussing Ex. 19 (Mar. 6, 2009 e-mail from K. Williams), and thus  "Date Created" data would unquestionably be relevant to confirming these instances of cross-use.

ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION



1    As discussed above, ███████████████████████

2    ██████████████████████████████████████████

3    ████████████████ This demonstrates that not only would "date created" metadata have resolved

4    the dispute as to whether Rimini downloaded PeopleSoft materials well in advance of its first

5    PeopleSoft customer, ████████████████████████████████ and thus

6    helped prove Oracle's case and exposed Rimini's false testimony.

7    Similarly, the "date created" and "date accessed" fields would have likely proved cross-

8    use. █████████████████████████████████████████

9    ██████████████████████████████████████████

10   ██████████████████████████████████████████

11   ████████████████████████████████████ This type of

12   extrinsic evidence is exactly the type used in jurisdictions that require it.  *See De Espana v. Am.*

13   *Bureau of Shipping*, 03 CIV.3573 (LTS)RLE, 2007 WL 1686327, at *8 (S.D.N.Y. June 6, 2007)

14   ("Typically, the evidence used to establish relevance of missing documents is deposition

15   testimony.").  Oracle provides ample evidence that the metadata would have been more than

16   relevant – it would have been favorable.

17   **III.    Oracle Will Suffer Prejudice Without Adverse Inference Instructions, and Rimini**

18        **Will Not Be Unfairly Prejudiced by Them**

19   As described in Part II, the metadata Rimini deleted would have provided the means to

20   resolve several disputes and likely prove infringement and cross-use.[4]  Without the information,

21   Oracle will be forced to "'rely on incomplete and spotty evidence' at trial."  *Leon*, 464 F.3d at

22   959 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 354 (9th Cir.

23

24   [4] The deletion of the software library and its metadata will also prejudice Oracle as it attempts to
25   counter Rimini's damages expert's figures in estimating how much labor Rimini saved by using
     the library. ████████████████████████████
26   ██████████████████████████ But there is incomplete evidence
     about the *extent* to which Rimini used the library, and thus Oracle is prejudiced in showing that
27   Rimini's "model" does not take into account the full savings that Rimini obtained through its use
     of the centralized, non-licensed software library.

28

14

ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

1   1995)).  The contents of the library and the assorted and incomplete materials Rimini cited in its

2   responses to Oracle's interrogatories do not substitute for that metadata.

3        As a matter of fact, those materials are inadequate and Rimini mischaracterizes the

4   Court's reception of them.  (*See* Opp'n at 7.)  Rather than finding the long list of documents in

5   Rimini's interrogatory response to be "adequate," the Court simply accepted them, along with

6   Ms. Williams' testimony as "the best answer that [Rimini] can provide."  (Ex. 2 (Status Conf.

7   Tr., Nov. 8, 2011) at 18:9-19:13.)  A notable example of the inadequacy of Rimini's list is that it

8   did not include the document that Rimini now characterizes as a "complete record of the files in

9   the internal software folder."  (*See* Opp'n at 2, 6; ███████████████████████████

10  ████████████████████████████████████[5]

11       Rimini also claims that it would be prejudiced if Oracle's requested remedy is granted.

12  Rimini expresses concern that it will be branded as a bad actor, and derides Oracle's motion as

13  an "attempt to convert this litigation into a 'gotcha game.'"  (Opp'n at 15.)  This is not a game.

14  The modest remedies Oracle seeks would merely hold Rimini accountable for a clear – and now

15  conceded – violation of its legal duty to preserve relevant evidence, and the requested

16  instructions would serve the important purpose of partially remedying the prejudice Oracle

17  would otherwise suffer from that misconduct.  "There is also a deterrence rationale for

18  permitting the trier of fact to draw an adverse inference from the destruction of evidence—

19  namely, an adverse inference instruction punishes a party for wrongdoing and is intended to

---

21  [5] Rimini also argues, in essence, because of the size of its production, it should not be penalized
    for deleting a single source of data.  However, the cases it cites do not provide support for its

22  position.  In those cases, the court rejected plaintiffs' spoliation motions because plaintiffs had
    not proved that the missing data was relevant to their claims.  *See Consol. Aluminum Corp. v.*

23  *Alcoa, Inc.*, 244 F.R.D. 335, 347 (M.D. La. 2006) (emails from a marginal employee based
    solely on "temporal coincidence"); *Hamre v. Mizra*, No. 02CIV.9088(PKL)(HBP), 2005 WL

24  1083978, at *3 (S.D.N.Y. May 9, 2005) ("temporal coincidence . . . does not trigger the sanction
    of adverse inference"); *Hitachi Television*, 2011 WL 3563781, at *11 (the files were "not relevant

25  to any issue in this case" since they were "randomly overwritten by the defragmentation
    program, meaning they were not specifically targeted as files that contained critical or unique

26  information pertaining to the disputes in this litigation").  Here the metadata associated with the
    software library is clearly relevant, and in no way "marginal."  *Compare Gonzalez v. Las Vegas*

27  *Metro. Police Dep't.*, No. 2:09–cv–00381–JCM–PAL, 2012 WL 1118949, at *8 (D. Nev. Apr. 2,
    2012).

1   deter others from destroying relevant evidence." *Gonzalez*, 2012 WL 1118949, at *6 (citing

2   *Akiona*, 938 F.2d at 161).

3         It bears emphasis that the adverse inference instruction Oracle has proposed, along with

4   two sets of rebuttable presumptions about specific facts, would permit Rimini to present

5   evidence at trial to persuade the jury about Rimini's side of the story on the software library.  For

6   example, Rimini argues that certain of the environments listed in Oracle's proposed order could

7   not have been copied from the software library because they were built after Rimini claims it

8   stopped using the library.  (Opp'n at 12.)  Rimini would be free to present such evidence at trial.[6]

9   And, in any event, in instances of spoliation, one party or the other must bear the risk of

10  uncertainty about what the deleted evidence would have shown, so a rebuttable inference against

11  the spoliator is "appropriate, as it places the risk of an erroneous judgment on the party that

12  wrongfully created the risk." *Io Group*, 2011 WL 4974337, at *8 (citing *West v. Goodyear Tire*

13  *& Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

14        Rimini destroyed the software library and then repeatedly denied that the library had ever

15  existed.  The law is clear in this Circuit that where "one party wrongfully denies another the

16  evidence necessary to establish a fact in dispute, the court must draw the strongest allowable

17  inferences in favor of the aggrieved party." *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*,

18  S-00-113 LKK/JFM, 2006 WL 2308442, at *5 (E.D. Cal. Aug. 9, 2006) (citation omitted).

19  Stopping short of granting Oracle its requested remedy in full would reward Rimini for its

20  gamesmanship and leave Oracle to rely on incomplete evidence at trial.

21        //

22        //

23        //

24        //

25  _____

26  [6] Nonetheless, in light of Rimini's assertions, Oracle has modified Schedule A and its Proposed

27  Order to exclude from the specific rebuttable presumption those environments Rimini claims
    were built after September 2009.

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

1

**CONCLUSION**

2        For the reasons expressed above, Oracle respectfully requests the Court order Oracle's

3    proposed adverse inference instructions.

4

DATED:  June 28, 2012                    BOIES SCHILLER & FLEXNER LLP

5

6

7                                    By: /s/ Kieran P. Ringgenberg
                                         Kieran P. Ringgenberg
8                                        Attorneys for Plaintiffs
                                         Oracle USA, Inc., Oracle America, Inc., and
9                                        Oracle International Corp.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS FOR SPOLIATION

# REVISED SCHEDULE A FILED UNDER SEAL