```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEVADA
                        LAS VEGAS DIVISION




ORACLE USA, INC., ET AL.,      ) CASE NO: 2:10-CV-00106-LRH-PAL
                               )
               Plaintiffs,     )            CIVIL
                               )
      vs.                      )        Las Vegas, Nevada
                               )
RIMINI STREET, INC., ET AL.,   )      Tuesday, July 3, 2012
                               )
               Defendants.     )      (9:31 a.m. to 9:58 a.m.)


                          MOTION HEARING

              BEFORE THE HONORABLE PEGGY A. LEEN,
                 UNITED STATES MAGISTRATE JUDGE




Appearances:              See Next Page

Court Reporter:           Recorded; FTR

Courtroom Administrator: Jeff Miller

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988
```

**Proceedings recorded by electronic sound recording;**
**transcript produced by transcription service.**

<u>**APPEARANCES FOR:**</u>

Plaintiffs:                          GEOFFREY M. HOWARD, ESQ.
                                     Bingham McCutchen
                                     Three Embarcadero Center
                                     San Francisco, CA 94111

                                     RICHARD J. POCKER, ESQ.
                                     Boies Schiller & Flexner
                                     300 South Fourth Street
                                     Suite 800
                                     Las Vegas, NV 89101

Appearing Telephonically:            JAMES C. MAROULIS, ESQ.
                                     Oracle Corporation
                                     500 Oracle Parkway
                                     Redwood City, CA 94070

Defendants:                          W. WEST ALLEN, ESQ.
                                     Lewis & Roca
                                     3993 Howard Hughes Parkway
                                     Suite 600
                                     Las Vegas, NV 89169

Interested Party,                    DOMINICA C. ANDERSON, ESQ.
CedarCrestone, Inc.:                 RYAN LOOSVELT, ESQ.
                                     Duane Morris
                                     100 North City Parkway
                                     Suite 1560
                                     Las Vegas, NV 89106

Appearing Telephonically:            ROBERT H. RECKERS, ESQ.
                                     Shook Hardy & Bacon
                                     600 Travis
                                     Houston, TX 77002

                                     ALAN TANNENWALD, ESQ.

3

1    <u>**Las Vegas, Nevada; Tuesday, July 3, 2012; 9:31 a.m.**</u>

2                          **(Call to Order)**

3                 **(Telephonic and courtroom appearances)**

4         **THE CLERK:**  All rise.

5         **THE COURT:**  Good morning.

6         **ALL:**  Good morning.

7         **THE COURT:**  Please be seated.

8         **THE CLERK:**  Your Honor, we are now calling the motion

9    hearing in the matter of *Oracle, USA, Inc. versus Rimini*

10   *Street, Inc.*  The case number is 2:10-cv-0106-LRH-PAL.

11        Beginning with plaintiff's counsel, counsel, please

12   state your names for the record.

13        **MR. HOWARD:**  Good morning, your Honor.  Geoff Howard

14   from Bingham McCutchen on behalf of the plaintiffs, Oracle.

15        **MR. POCKER:**  Your Honor, Richard Pocker, Boies,

16   Schiller and Flexner, also on behalf of the plaintiffs, Oracle.

17        **MR. ALLEN:**  Good morning, your Honor.  West Allen

18   from Lewis and Roca on behalf of Rimini Street, and on the

19   telephone is Rob Reckers from Shook, Hardy and Bacon as well

20   for Rimini Street.

21        **MS. ANDERSON:**  Good morning, your Honor.  Dominica

22   Anderson, Duane Morris, on behalf of CedarCrestone, and

23   Mr. Ryan Loosvelt.  We also have on the phone Mr. Alan

24   Tannenwald.

25        **MR. MAROULIS:**  And good morning, your Honor.  It's

4

1  James Maroulis from Oracle for plaintiffs on the phone as well.

2      **THE COURT:**  All right, Counsel.  I have read the

3  moving and responsive papers with the exception of the things

4  that were filed late Friday afternoon during my criminal duty

5  work and I received a flood of papers, not just on this case,

6  but on the other matters I have on calendar today.  I have read

7  all of the other moving responsive papers.

8      Let me take up preliminarily this housekeeping

9  matter.  Is there any additional need to address the case

10  management issues the parties raised in the June 29th joint

11  status report?  If I understand correctly, you're asking for a

12  modification of the deadline for filing dispositive motions.

13      **MR. UNIDENTIFIED:**  That's correct, your Honor.  An

14  extension of the deadline to file its dispositive motions and a

15  suspension of the pretrial statement filing date until 30 days

16  after the dispositive motions.

17      **THE COURT:**  All right.  And the dispositive motions

18  are currently due when?

19      **MR. UNIDENTIFIED:**  They're currently due July 31st.

20      **THE COURT:**  And you're requesting a 30-day extension

21  of that deadline?

22      **MR. UNIDENTIFIED:**  Correct, your Honor.

23      **THE COURT:**  (indiscernible) and (indiscernible) local

24  rule applies, so you have 30 days from the decision of

25  dispositive motions in which to file (indiscernible).

1          **MR. UNIDENTIFIED:**  Thank you, your Honor.

2          **THE COURT:**  And let me hear now on the merits of the

3    dispute involving the motion to modify the protective order

4    with respect to CedarStone.

5          Mr. Howard?

6          **MR. HOWARD:**  Thank you, your Honor.

7          Your Honor, the issue before the Court is whether it

8    should modify the protective order to allow information that

9    Oracle has now learned in discovery -- specific, identified

10   information -- to protect and enforce its IP rights against

11   CedarCrestone.  The Court considers this issue in light of the

12   Ninth Circuit's strong policy in favor of access to collateral

13   litigants to meet their needs in collateral litigation.  And

14   there's two issues that the Court considers, two prongs of that

15   test.

16         The first is the material relevance.  There really

17   isn't any dispute about that.  I don't think you've seen any

18   contest as to whether this underlying material is relevant.  In

19   fact, the vast majority of it is Oracle's code.  It's Oracle's

20   software that was produced to Oracle, had been copied,

21   modified, and distributed by CedarCrestone to its customers.

22   So, I don't think that issue is in dispute.

23         The second is whether there is a reliance interest

24   that outweighs the strong policy favoring access for collateral

25   litigants to meet their needs in the litigation.  As to that,

1   your Honor, I don't think there is really any serious contest

2   either.   The protective order that the parties negotiated and

3   entered expressly allows for modification.   In fact, at

4   paragraph 17 of the protective order it specifically says that

5   entering into, producing or receiving confidential information,

6   Oracle is in receipt of the confidential information, shall

7   not -- paragraph 17D -- quote:

8           "Prejudice in any way the rights of a designating or

9           receiving party to seek a determination by the Court

10          whether any discovery material should be subject to

11          the terms of this protective order."

12          And, obviously, one of the terms of the protective

13   order is whether you can use the information in a litigation

14   other than this one.

15          In addition, the law requires a specific showing, a

16   specific and detailed showing, of prejudice based on that

17   reliance, and, of course, there isn't reliance presumed when

18   there is a blanket protective order like this one.   And there

19   hasn't been any showing of specific prejudice as to any

20   document; not the testimony that we put before the Court, not

21   the 625 pages of documents that were produced, not the two-

22   gigabyte disk that has our Oracle code on it.   There just

23   hasn't been any articulated specific showing of prejudice by

24   CedarCrestone other than the fact that they will be the

25   recipient of an action by Oracle to enforce and protect its IP

7

1  rights.  But that's not the kind of specific prejudice that's

2  been shown.  It's not a trade secret; it's not confidential.

3  Again, it's our code, so it's hard to see how it could be.  And

4  they've said that they're at some point in the future shutting

5  this down, so it's hard to see how that could contribute any

6  prejudice to them at all.

7          And, to the contrary, I would submit to your Honor

8  that there really isn't any better showing of good cause for a

9  litigant to modify the protective order than the circumstances

10  here, where it has now discovered that its partner has been

11  misusing, copying, infringing its IP, and it now needs to,

12  having been unable to resolve that, now needs to stop that and

13  enforce and protect its rights.

14          Those are the issues that I think are before the

15  Court, and I submit to your Honor that it is a very

16  straightforward and fairly simple application of the Ninth

17  Circuit test.

18          **THE COURT:**  Thank you, Mr. Howard.

19          Opposing counsel?

20          **MS. ANDERSON:**  Thank you, your Honor.

21          I know your Honor is familiar and has read all the

22  papers, but I think we have to step back and look at how the

23  parties ended up being where they are today.  Oracle -- and

24  CedarCrestone is a platinum partner with Oracle -- Oracle comes

25  to CedarCrestone and says, "We need some of your documents to

1   help us prosecute our case against Rimini."  CedarCrestone

2   starts in the discussions; a subpoena is issued.  At that point

3   they are looking at potentially quashing -- filing a motion to

4   quash the subpoena.  The subpoena goes out; we negotiate over

5   five months over the scope of the subpoena, the production --

6   　　　　　　THE COURT:  Instead of litigating before the Court

7   and getting a determination whether you had to turn over the

8   documents or not.

9   　　　　　　MS. ANDERSON:  That's right.  But -- but -- I mean,

10  obviously, the Court's do encourage --

11  　　　　　　THE COURT:  So, both sides relied in --

12  　　　　　　MS. ANDERSON:  That's right.

13  　　　　　　THE COURT:  -- negotiating the protective order about

14  what this Court would do --

15  　　　　　　MS. ANDERSON:  That's right.

16  　　　　　　THE COURT:  -- in terms of whether or not Oracle was

17  going to get the documents and you were going to be required to

18  produce them.

19  　　　　　　MS. ANDERSON:  Right.  That's absolutely right, and

20  the parties negotiated instead of coming to the Court, which is

21  what parties should do.  But the scope of the protective order

22  was limited to this sense that the documents could be used for

23  purposes of the prosecution of the Rimini action, clearly.

24  　　　　　　THE COURT:  All right.  But the point is both sides

25  avoided the determination of whether or not they were relevant

1  to this action and should be produced and, if so, what the

2  Court would order concerning how to protect the documents that

3  were produced in this case.

4         **MS. ANDERSON:**  That's right, your Honor.  However, we

5  did rely on the terms of the protective order --

6         **THE COURT:**  Sure.

7         **MS. ANDERSON:**  -- and stipulated to that effect.

8         After we signed the protective order and the

9  supplemental stipulation, we began to produce documents.  There

10  were approximately three gigabytes of documents produced.  Some

11  of those were marked confidential.  Only 64 documents or pages

12  were marked highly confidential.  Five pages of those are

13  client names.  Fifty-nine pages of those are proprietary

14  methodology or code.  So, it was a very selective process that

15  CedarCrestone made in analyzing each and every document and

16  marking them in a very specific way.

17         Then Oracle asked for a deposition, and again

18  CedarCrestone, trying to be helpful, provided a witness under a

19  30(b)(6).  Oracle had that transcript for approximately a

20  month.  They designated the entire transcript except for three

21  exhibits as highly confidential.  Then they sent it to

22  CedarCrestone, and CedarCrestone said that designation is fine.

23  All along CedarCrestone has been very specific on how they have

24  designated their documents.  It hasn't been a blanket

25  everything is protected.

1           Oracle then says, once we got the documents, we said,

2    "Gee, maybe we have some action against CedarCrestone as well."

3    What's really troubling is in their pleadings, in their

4    motion -- it's at page three -- they say, "Well, we actually

5    started thinking about CedarCrestone either in the TomorrowNow

6    litigation or maybe the latest, at the Rimini answer, when

7    Rimini filed their answer," which is certainly prior to the

8    negotiations on protective order, prior to our production of

9    documents, and clearly prior to the deposition testimony.  So,

10   while CedarCrestone -- while Oracle is saying, "We didn't know

11   until after; oops, we kind of stumbled into our findings,"

12   their own pleadings counter that.

13          Now, the Court's asked did we not come to the Court

14   for a ruling.  That's true.  But one can imagine, when you look

15   at the exhibits, one can imagine how the negotiations would

16   have been very different had Oracle said, "You know, we are

17   thinking that we may have some claim against you; we'd like you

18   to produce documents."  Would we have still -- if they had

19   subpoenaed us, would we still have had to produce documents?

20   Maybe.  We would have been before the Court; we would have been

21   here on a motion to quash.  We certainly would have produced a

22   different probably volume of documents, the protective order

23   would have been different, the negotiations would have been

24   different, the scope of that subpoena that we would have

25   responded to would have ultimately been different.  Would we

1   have produced a witness?  Maybe.  Maybe if there had been a

2   motion for a protective order on that, perhaps it would have

3   gone forward but on a more limited scope, but the truth is that

4   Oracle basically lulled CedarCrestone into thinking it was

5   helping its platinum sponsor -- or its sponsor, its platinum

6   partner, into prosecuting its case against Rimini.

7           So, under that, you have to say, "Was CedarCrestone

8   set up?"  It has that appearance, that we were lulled into

9   producing the documents under the guise of the Rimini action

10  and now Cedar -- and now Oracle is asking the Court to

11  wholesale lift the protective order so they can use everything

12  against CedarCrestone.

13          The Ninth Circuit cases that Oracle's counsel cited,

14  clearly that's the test.  The problem is in the Ninth Circuit

15  and in any other circuit there is no case anywhere remotely

16  like this.  Your typical case is plaintiff -- as I'm sure your

17  Honor knows -- plaintiff versus defendant; those parties are in

18  litigation, they produce documents, a third party says, "I'd

19  like to intervene into the case, obtain those documents for

20  purposes of an already existing, separate litigation."

21          Oracle relies on the *Fultz* (phonetic) case, which is

22  your Ninth Circuit case, but there the Court found there was no

23  reliance, and there the party who was seeking the documents

24  hadn't drafted the protective order, and there already was

25  collateral litigation.  We make the point, obviously, there is

1   no collateral litigation.  So, Oracle says, "Well, the *CBS* case

2   says you can lift a protective order to get documents to file a

3   separate litigation."  And that was a different situation, like

4   most cases, where CBS sued defendant, E-T-I-L-I-Z-E.  So, those

5   were two parties in litigation; they produced documents under

6   protective order; and then CBS says, "Well, we think we need to

7   sue you in a separate litigation" -- I think it was because of

8   patent rules -- but already the two parties were litigants.

9   So, they had their guard up; they knew what they were producing

10  was already part of litigation.

11          Here, obviously, we believe that Oracle lulled us

12  into producing documents to help them in their prosecution of

13  Rimini.  The reliance is significant.  We negotiated over a

14  five-month period.  We were incredibly careful about how we

15  designated documents.  There was a limitation and use provision

16  or determination in the protective order that could only be

17  used for Rimini, the Rimini litigation.  We produced over the

18  three -- the three gigabytes of documents and were very careful

19  how we marked them.

20          So, the concept that this was a blanket protective

21  order that shouldn't have as much weight as a non-blanket is

22  inappropriate, as well as what -- when I saw that in Oracle's

23  papers, I was surprised because Oracle drafted the protective

24  order.  And in the protective order on page two it says, quote:

25          "Parties acknowledge that this protective order does

1          not confer blanket protection on all disclosures."

2          So, again, the party who drafted it is telling us

3    it's not a blanket protective order, we treat it as not a

4    blanket protective order, we spend all of this time very

5    carefully out of three gigabytes just marking a very limited

6    set of documents as highly confidential, and then -- and then

7    this happens.

8          The case that is closest is a case which we found in

9    looking at the *CBS* case after they filed their reply.  And it's

10   called *Avago*, A-V-A-G-O, and I apologize; I have a copy of it

11   if the Court wants it.  The citation is 2011 Westlaw 5975243,

12   Northern District of California, November, 2011.  Avago

13   Technology sues IPtronics for patent infringement.  The parties

14   produce documents pursuant to protective order.  When they look

15   at the documents, Avago says, "Aha.  You, IPtronics, have been

16   in conspiracy with our own employees."  Therefore, they come

17   back to the Court and they ask for a motion -- they file a

18   motion to lift the protective order so that Avago could share

19   the documents with its own employees and permit it to use the

20   evidence in a potential civil litigation.  The Court said no.

21          And they distinguished CBS, and actually Avago has

22   been cited as disapproving of CBS, but they distinguish it

23   saying Avago, one, has not identified with particularity the

24   specific documents it seeks to disclose.  Same thing we have

25   here.  Two, they highlighted that Avago had not even identified

1    the specific Avago individuals to whom disclosures were sought,

2    who they would be sharing the documents with.  Same thing here.

3    Three, there is no collateral proceedings pending for which the

4    relevance of the disputed information may be evaluated.  Same

5    as here.

6            And the quote from the Court, if I might, your Honor,

7    says, quote:

8            "Avago has not even provided any specific information

9            regarding the collateral proceedings that it

10           contemplates.  All the Court has before it to weigh

11           against IPtronics' legitimate reliance in producing

12           documents are Avago's allegations regarding what it

13           might pursue that are supported by little more than

14           an attorney declaration."

15           So, the Avago case is as close as you can get on

16   point here.  Now, even in Avago you've got litigant versus

17   litigant.  And here we're a step -- several steps removed,

18   because we're a third party lulled into producing.

19           Like Avago, though, we've had -- there is ample

20   evidence of reliance by CedarCrestone in the months of

21   negotiation.  I've gone over that.  Unlike Avago, though,

22   Oracle has really created this situation, and we believe that

23   based on similar case law Oracle needs to sleep in the contract

24   that it created.

25           We believe, then, the balancing factors that the

1    Court must look at -- the strong factors of reliance, the

2    unusual factual circumstance we have here, no pending

3    litigation, Oracle created the situation, everything we've been

4    discussing -- that the Court -- the request of the Court should

5    be denied.

6            THE COURT:  Thank you.

7            Mr. Howard, this is your motion.  You get the last

8    word.

9            MR. HOWARD:  Thank you, your Honor.  I'll be brief.

10           I don't think your Honor heard anything addressed to

11   the two factors that the Court considers under the Ninth

12   Circuit law.

13           THE COURT:  No; she acknowledges that's the two --

14   that's the two-prong test.

15           MR. HOWARD:  Yeah.  And, so, it's conceivably

16   relevant, and there is no specific showing of prejudice.  So,

17   the issue is whether an infringer, somebody who has misused

18   confidential information --

19           THE COURT:  Someone you're accusing of misusing.

20           MR. HOWARD:  That's right.  We are.  But we have --

21   we have provided the specific details to the Court in the

22   testimony.  Whether there is no recourse in those circumstances

23   or whether at least the -- Oracle should be allowed to take

24   action to enforce and protect.

25           Now, a couple of important points.  The discussion

1    about the blanket designations and what was confidential and

2    highly confidential; I just don't think that's relevant to this

3    motion.  Our proposed modification preserves --

4              **THE COURT:**  Your very motion says the fact that the

5    initial protective order was a blanket protective order is a

6    factor weighing in favor of modifying it.

7              **MR. HOWARD:**  Yes.  But we have -- as the *Fultz* court

8    did, we have proposed that the designations that CedarCrestone

9    has applied to their materials will be preserved in the

10   modified protective order.

11             **THE COURT:**  Subject to a further motion to modify,

12   because that's what the protective order says.

13             **MR. HOWARD:**  That's right.  And all parties know that

14   when they designate materials pursuant to this protective order

15   one side or the other -- well, anybody can challenge the

16   confidentiality of those materials.

17             And that was the second point I was going to make,

18   was that the language that counsel read to the Court, the

19   sentence two of the protective order, that's exactly the point

20   it makes.  It says that you cannot rely on any kind of blanket

21   protection for any of these materials because the protection

22   that it affords are only -- extends only to the limited

23   information or items that are entitled under applicable legal

24   principles to treatment as confidential.  And the legal

25   principles that are applicable here don't apply to keep those

1   materials confidential within the terms of this protective

2   order.  It should be modified to allow use in collateral

3   litigation to meet the needs of the collateral litigant, here

4   Oracle.

5           Finally, this idea that the protective order was

6   fraudulently induced; those are my words, but that's my

7   paraphrase of the argument that I heard.

8           **THE COURT:**  You lulled them into producing things.

9           **MR. HOWARD:**  Yes.  We lulled them into producing --

10  no.  Two points; well, maybe three.  First, there was a

11  subpoena in the SAP litigation as well.  And they know --

12          **THE COURT:**  This protective order closely follows the

13  protective order that was entered into in SAP.

14          **MR. HOWARD:**  It's similar.

15          **THE COURT:**  Uh-huh.

16          **MR. HOWARD:**  It's similar.  By the way, Oracle

17  drafted neither of those.  It negotiated at great length both

18  of those with the other parties in the litigation.  I don't

19  think that's either here nor there.  But they knew what the

20  subject matter of the lawsuit was; they knew what the subject

21  matter of that subpoena was; and they knew what the subject

22  matter of this subpoena was.  It was specifically directed --

23  and it's been presented to the Court -- at their business

24  practices, what they did with the software because Rimini had

25  raised the issue that they were doing the same thing as Rimini

1    was.

2              So, the idea that they were lulled in under false

3    pretenses I think just can't be right, and I think, to come

4    back to the issues, this is as best a good cause as you could

5    find to allow modification.  They will have defenses perhaps;

6    they will have something to say about the confidentiality of

7    it; but here the issue is simply whether we can, as *Fultz* says,

8    meet the needs of the collateral litigant.

9              **THE COURT:**  All right.  We're not doing

10   point/counterpoint.  You did file a motion in the alternative

11   to stay this action, which I will hear briefly from you on

12   that, to stay the order on modification pending the outcome of

13   this case.

14             Ms. Anderson?

15             **MS. ANDERSON:**  Well, the allegations by Oracle are

16   that what they're alleging CedarCrestone did wrong is the same

17   thing that what Rimini did wrong.  And, so, rather than dealing

18   with the motion before your Honor today and what falls out from

19   that, including that if your order were to be inclined to grant

20   that motion, we would be asking your Honor to stay enforcement

21   of that while we file a motion for reconsideration.  Now,

22   obviously, we don't believe it should be modified at all, but

23   that's how serious, you know, obviously, we feel about this.

24   So, we thought, well, if they're prosecuting this case against

25   Rimini and they're alleging it's the same thing, then why not

1    wait until we see what comes of that?

2            And one other point, just that on the prejudice

3    point.  And I apologize; I should have said this.  But the

4    prejudice is clearly not just the lawsuit that they are

5    threatening.  Prejudice is that Oracle is a competitor with

6    CedarCrestone in some ways of the business.  Now, whether they

7    are wanting to put out of business all of their competitors I

8    don't know.  But there is definitely prejudice, the fact that

9    their employees -- and, again, without specificity of who would

10   get to see the documents for what purpose, there is prejudice

11   to CedarCrestone if those documents were produced willy-nilly

12   to anybody within Oracle, beyond the threat of this lawsuit.

13           Thank you, your Honor.

14           **THE COURT:**  The motion to modify the protective order

15   is denied.  The *Fultz* test is certainly the test in the Ninth

16   Circuit, however, key to the Court's analysis in this case is

17   that there is no pending collateral litigation.  And this is a

18   blanket protective order.  There was not a determination on a

19   document-by-document basis to determine whether or not

20   individual documents were appropriately designated as

21   discoverable in this case or subject to the protective order

22   governing confidentiality.  The Court made no such finding, and

23   it was done to facilitate the parties' discovery exchanges.

24   Both sides entered into a negotiated protective order in order

25   to avoid a judicial determination of whether or not any

 1   particular documents were protected from disclosure and the

 2   terms of any protection that the Court might deem appropriate

 3   in this case.

 4          At the end of the day, however, Counsel for

 5   Crestone -- CedarCrestone, federal discovery is about obtaining

 6   the truth.  And although there is no currently pending

 7   collateral litigation which persuades the Court that there is

 8   no need to modify the protective order at this time, the

 9   materials that are the subject matter of the motion would

10   appear to be relevant to a determination of future litigation.

11          Of course, what's involved in this entire case is

12   Rimini's determination that what it does is what everybody else

13   does who performed the same type of function; it's the industry

14   standard, and it's appropriate that it's not protected by

15   Oracle's intellectual property.  And that's what this lawsuit

16   will determine, in large part.

17          But at this time, where there is no collateral

18   litigation, I agree with counsel for the non-party that

19   allowing a modification in the absence of a pending collateral

20   litigation -- and no description of a specific intent to have a

21   specific form of collateral litigation, especially since

22   counsel for the non-party has indicated that shutting this

23   business down to avoid future problems with the potential

24   plaintiff in the case, and it makes no sense at all to modify

25   the protective order, particularly on a wholesale basis.  And I

1    also agree that there is nothing to avoid repetitious or

2    duplicative discovery that wastes either of the parties'

3    resources when there is no pending case.

4            So, for these reasons the motion for protective order

5    is denied, but counsel for the non-party should be on notice

6    that if and when there is a pending collateral litigation,

7    preliminarily it appears that there is more than good cause to

8    modify the protective order for appropriate documents that

9    demonstrate any infringing conduct.

10           And I have a 10:00 o'clock.  I'm going to call it.

11   Is there any other pending matter that needs immediate

12   resolution on behalf of the litigants in this case, *Oracle*

13   *versus Rimini*, that I haven't addressed by giving you the

14   relief on the scheduling order?

15           Mr. Howard?

16           **MR. HOWARD:**  No, your Honor.

17           **THE COURT:**  Mr. Allen?

18           **MR. ALLEN:**  No, your Honor.

19           **THE COURT:**  All right.  Thank you.

20           **MS. ANDERSON:**  Thank you, your Honor.

21        **(Proceeding was adjourned at 9:58 a.m.)**

22

23

24

25

<u>**CERTIFICATION**</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                          <u>July 17, 2012</u>

       Signed                                          Dated



*TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC