| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP | BINGHAM MCCUTCHEN LLP |
| RICHARD J. POCKER (NV Bar No. 3568) | GEOFFREY M. HOWARD (*pro hac vice*) |
| 300 South Fourth Street, Suite 800 | THOMAS S. HIXSON (*pro hac vice*) |
| Las Vegas, NV 89101 | KRISTEN A. PALUMBO (*pro hac vice*) |
| Telephone: (702) 382-7300 | BREE HANN (*pro hac vice*) |
| Facsimile: (702) 382-2755 | Three Embarcadero Center |
| rpocker@bsfllp.com | San Francisco, CA 94111-4067 |
| | Telephone: 415.393.2000 |
| BOIES, SCHILLER & FLEXNER LLP | Facsimile: 415.393.2286 |
| STEVEN C. HOLTZMAN (*pro hac vice*) | geoff.howard@bingham.com |
| FRED NORTON (*pro hac vice*) | thomas.hixson@bingham.com |
| KIERAN P. RINGGENBERG (*pro hac vice*) | kristen.palumbo@bingham.com |
| 1999 Harrison Street, Suite 900 | bree.hann@bingham.com |
| Oakland, CA 94612 | |
| Telephone: (510) 874-1000 | DORIAN DALEY (*pro hac vice*) |
| Facsimile: (510) 874-1460 | DEBORAH K. MILLER (*pro hac vice*) |
| sholtzman@bsfllp.com | JAMES C. MAROULIS (*pro hac vice*) |
| fnorton@bsfllp.com | ORACLE CORPORATION |
| kringgenberg@bsfllp.com | 500 Oracle Parkway |
| | M/S 5op7 |
| | Redwood City, CA 94070 |
| Attorneys for Plaintiffs Oracle USA, Inc., | Telephone: 650.506.4846 |
| Oracle America, Inc., and Oracle International | Facsimile: 650.506.7114 |
| Corp. | dorian.daley@oracle.com |
| | deborah.miller@oracle.com |
| | jim.maroulis@oracle.com |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATRION, a California corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual<br><br>        Defendants. | Case No. 2: 10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle") do hereby move for a modification of the Stipulated Protective Order, Dkt. 55 (the "Protective Order").

This motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Kevin M. Papay, the pleadings on file in this action, and on such other matters presented to the Court at the time of any hearing, if any.

## RELIEF SOUGHT

Pursuant to Fed. R. Civ. Proc. 26, Oracle seeks a modification of the Protective Order to allow documents and testimony obtained from CedarCrestone, Inc. ("CedarCrestone") in this action to be used, under the same terms of the Protective Order, in litigation between CedarCrestone and Oracle.

DATED: September 7, 2012   BINGHAM McCUTCHEN LLP

By: /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc. and Oracle International Corp.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Oracle submits an application to the Court for modification pursuant to paragraph 19 of the Protective Order.

## I.   INTRODUCTION

Oracle previously moved to modify the Stipulated Protective Order, Dkt. 55 (the "Protective Order") to allow Oracle to use information obtained from CedarCrestone through third-party discovery in this Action in connection with collateral litigation against CedarCrestone. Dkt. 272. Although the Court found the discovery relevant to the claims Oracle said it would bring, the Court denied Oracle's prior motion on the ground that there was no pending collateral litigation. Declaration of Kevin M. Papay ("Papay Decl."), Ex. A at 19:16-17 ("key to the Court's analysis in this case is that there is no pending collateral litigation"); *id.* at 20:6-8 ("there is no currently pending collateral litigation which persuades the Court that there is no need to modify the protective order at this time"); *id.* at 20:19-25 ("allowing a modification in the absence of a pending collateral litigation . . . makes no sense at all"). The Court's denial of Oracle's previous motion contemplated a reassessment of the motion "if and when there is a pending collateral litigation." *Id.* at 21:6-9.

The Court's concerns regarding the lack of pending collateral litigation have now been resolved. Oracle has initiated collateral litigation against CedarCrestone by filing a complaint in the Northern District of California. In that complaint, Oracle asserts claims for copyright infringement, breach of contract, and unfair competition (the "*CedarCrestone* Action"). *See* Papay Decl., Ex. B. In denying Oracle's prior motion, the Court ruled that: "[A]lthough there is no currently pending collateral litigation which persuades the Court that there is no need to modify the protective order at this time, the materials that are the subject matter of the motion would appear to be relevant to a determination of future litigation." Papay Decl., Ex. A at 20:6-10; *see also id.* at 21:6-9 ("preliminarily it appears that there is more than good cause to modify the protective order for appropriate documents that demonstrate any infringing conduct.")

The claims Oracle has brought now confirm the Court's prior analysis. Although the *CedarCrestone* Action is based entirely on non-confidential and/or publicly available

1  information, the conduct that underlies the *CedarCrestone* Action also involves CedarCrestone's
2  alleged unauthorized copying and cross-use of Oracle's PeopleSoft applications to support
3  CedarCrestone's customers, and the unauthorized distribution of Oracle tax and regulatory
4  updates, downloaded from Oracle's websites, to unlicensed customers.  The discovery obtained
5  from CedarCrestone in this Action ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
6  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
7  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
8  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  Oracle seeks limited relief from the Protective
9  Order to obtain access to use that discovery in the *CedarCrestone* Action.
10      Specifically, Oracle requests that the Court modify the Protective Order to allow Oracle
11  to use in the *CedarCrestone* Action (1) the DVD of computer files produced by CedarCrestone
12  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇;
14  and (2) the deposition of CedarCrestone's corporate representative, Mr. Paul Simmons, including
15  the exhibits used during this deposition.  Consistent with the Ninth Circuit's policy which
16  "strongly favors access to discovery materials to meet the needs of parties engaged in collateral
17  litigation," the Court should grant Oracle's request for a modification.  *Foltz v. State Farm Mut.*
18  *Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).
19  **II.    FACTUAL BACKGROUND**
20      **A.    The Protective Order**
21      As the Court is aware from Oracle's earlier motion to modify the Protective Order, on
22  May 21, 2010, the Court entered the stipulated Protective Order.  Dkt. 55.  The Protective Order
23  allows non-parties, like CedarCrestone, to designate produced information as "Confidential
24  Information" or "Highly Confidential Information – Attorneys' Eyes Only" without seeking the
25  Court's prior permission.  *Id.* ¶ 2.  The Protective Order restricts the use of these designated
26  materials to the "preparation for trial, trial of and/or appeal from this Action and no other."  *Id.* ¶
27  8.  The receiving party (here, Oracle) may only share materials designated as "Confidential
28  Information" or "Highly Confidential Information – Attorneys' Eyes Only" with individuals in

1  connection with this action. *Id.* ¶¶ 9, 10, 12.

2    **B.**  **Oracle Obtains Discovery From CedarCrestone**

3    Oracle initially sought discovery from CedarCrestone because, among other reasons,

4  Rimini asserted as a defense to Oracle's copyright infringement claims that CedarCrestone

5  supported Oracle's PeopleSoft software with local copies. Rimini Street's Answer to Oracle's

6  Second Amended Complaint and First Amended Counterclaim, Dkt. 153 ¶¶ 5, 54.

7    On February 14, 2011, Oracle subpoenaed CedarCrestone for foundational documents

8  concerning CedarCrestone's business model. Papay Decl., Ex. C. On July 19, 2011, Oracle,

9  Rimini and CedarCrestone entered into a stipulation whereby CedarCrestone agreed to the terms

10 of the Protective Order (the "CedarCrestone Stipulation"). Papay Decl., Ex. D. Pursuant to the

11 CedarCrestone Stipulation, the parties agreed that the Protective Order would govern materials

12 produced by CedarCrestone in response to discovery requests in this action. *Id.* at preamble.

13 The CedarCrestone Stipulation did not modify paragraph 19 of the Protective Order, which

14 provides that the Protective Order may be modified.

15   CedarCrestone ultimately produced approximately 625 pages of documents and a DVD

16 ████████████████████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████████  *See*

18 Russell Declaration in Support of Plaintiffs' Motion to Modify Protective Order, Dkt. 273 ¶ 6.

19 CedarCrestone designated most of these materials either "Confidential Information" or "Highly

20 Confidential Information – Attorneys Eyes Only" under the Protective Order. *Id.*

21   On December 1, 2011, Oracle deposed CedarCrestone's 30(b)(6) representative, Paul

22 Simmons. *Id.* ¶ 7; Papay Decl., Ex. E (Deposition of Paul Simmons) ("Simmons Dep."))

23 CedarCrestone has designated all of this deposition, including exhibits used at the deposition

24 which it had previously produced without any confidentiality designation, as "Highly

25 Confidential Information – Attorneys' Eyes Only." *Id.* The DVD and Simmons deposition

26 transcript and exhibits are referred to below as "the Discovery Materials."

27   **C.**  **Oracle's Motion To Modify The Protective Order**

28   On May 14, 2012, after Oracle and CedarCrestone could not informally resolve their

1  disputes, Oracle filed a motion seeking to modify the Protective Order. Dkt. 272. Through its

2  motion, Oracle sought a limited modification of the Protective Order to allow Oracle to use the

3  Discovery Materials obtained from CedarCrestone to prepare and file a complaint against

4  CedarCrestone. *Id.* Oracle did not seek to otherwise modify the restrictions contained in the

5  Protective Order, including the restrictions on public disclosure. *Id.* The motion came for

6  hearing before this Court on July 3, 2012. Dkt. 364. The Court denied Oracle's motion at the

7  hearing and as reflected in the Court's minute order dated July 5, 2012. *Id.* On July 23, 2012,

8  Oracle filed an objection to the Court's ruling with Judge Hicks. Dkt. 369. As of the filing of

9  this Motion, Judge Hicks has not yet ruled on Oracle's objection.

       **D.**    **Oracle Initiates Collateral Litigation**

11  On September 5, 2012, Oracle filed a complaint against CedarCrestone in the Northern

12  District of California, thereby initiating the *CedarCrestone* Action. Papay Decl., Ex. B. In the

13  *CedarCrestone* Action, Oracle asserts claims for copyright infringement, breach of contract, and

14  unfair competition in connection with CedarCrestone's conduct in providing tax and regulatory

15  updates for PeopleSoft software to its customers. *Id.* Oracle's allegations in the *CedarCrestone*

16  Action are based on information learned through sources that Oracle obtained independently

17  from the discovery received from CedarCrestone in this Action. The *CedarCrestone* complaint

18  includes:

- Allegations that CedarCrestone provided tax and regulatory updates downloaded from Oracle's website to customer George Weston Bakeries for over two years, when George Weston Bakeries had no right to receive these updates. Papay Decl., Ex. B ¶ 23. These allegations are based on a non-confidential letter, dated August 19, 2011, sent by CedarCrestone to Oracle. *Id.*;

- Allegations that CedarCrestone has violated customers' PeopleSoft software license agreements by creating its own copies of some customers' software and maintaining those copies on CedarCrestone's systems. Papay Decl., Ex. B ¶¶ 26-28. These allegations are based on statements made by CedarCrestone about its own business processes in a non-confidential response to a Request for Proposal submitted by CedarCrestone to a prospective customer, Tucson Unified School District. The RFP response was admitted into evidence as *Oracle Corp. et al. v. SAP AG et al.*, No. C 07-1658 PJH (N.D. Cal.), Trial Exhibit A-2046. Papay Decl., Ex. B ¶ 28;

- These allegations based on the RFP response are corroborated by the allegations made by Rimini Street in its publicly available Answer to Oracle's Second Amended Complaint and First Amended Counterclaim, in which Rimini Street

4

alleges that CedarCrestone maintains local copies of Oracle's PeopleSoft software that it uses to support its customers. Papay Decl., Ex. B ¶ 29; Dkt. 153 ¶¶ 5, 54;

- Allegations that CedarCrestone uses software from one customer, and the updates developed using that software, to support other customers. Papay Decl., Ex. B ¶¶ 28-30. These allegations are based on statements in the Tucson Unified School District RFP response. *Id.*;

- Allegations that CedarCrestone has misrepresented to prospective customers that because CedarCrestone was an Oracle partner, CedarCrestone provides all services "in a manner that is free of intellectual property infringement" and that CedarCrestone "will not install any patches or tax updates that the [customer] has not legally downloaded prior to terminating their Oracle support or take other actions that would cause the [customer] or CedarCrestone to violate the terms of the [customer]'s PeopleSoft licenses." Papay Decl., Ex. B ¶ 33. Likewise, CedarCrestone has claimed to "differentiate" itself from competitors because its "Oracle Platinum Partnership" offered the "[a]ssurance that services are delivered free of intellectual property infringement." *Id.* These allegations are based on statements in the publicly available RFP response to the Oklahoma City Municipal Facilities Authority. *Id.*

### III. THE COURT SHOULD MODIFY THE PROTECTIVE ORDER

Courts in the Ninth Circuit "strongly favor[] access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz*, 331 F.3d at 1131. This preference is supported by the well-founded policy rationale that "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interest of judicial economy by avoiding the wasteful duplication of discovery." *Id.* (citing *Bechman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992)). Therefore, requests to modify a protective order to allow the use of discovery in collateral litigation "should generally be granted." *Id.*

*Foltz* sets out a two-step test. First, the party seeking the modification "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Id.* at 1132. Second, the district court weighs "the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* Both steps are satisfied here.

#### A. The CedarCrestone Discovery Is Relevant

This Court "should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Id.* Once the district court makes "only a rough estimate of

5

1  relevance," the "only issue it determines is whether the protective order will bar . . . access to the
2  discovery already conducted." *Id.* at 1132-33.
3        The Court has already found that the Discovery Materials "appear to be relevant to a
4  determination of future litigation." Papay Decl., Ex. A at 20:6-10. The relevancy of the
5  discovery to Oracle's claims in its collateral litigation against CedarCrestone is illustrated by
6  comparing the contents of the discovery to Oracle's allegations, as set forth below:

| Allegations in *CedarCrestone* Action | Related Discovery Obtained From CedarCrestone |
|---|---|
| CedarCrestone has offered to provide, and has provided, tax and regulatory update services to customers for PeopleSoft software, such as The Oklahoma City Municipal Facilities Authority, Tucson Unified School District, and George Weston Bakeries. Papay Decl., Ex. B ¶ 23. | [REDACTED] |
| CedarCrestone has admitted to providing tax updates created by Oracle to a customer (George Weston Bakeries) for over two years, during which time CedarCrestone admits that George Weston Bakeries had no right to receive the updates. Papay Decl., Ex. B ¶ 23. | [REDACTED] |



6

| Allegations in *CedarCrestone* Action | Related Discovery Obtained From CedarCrestone |
|---|---|
| CedarCrestone has told prospective customer Tucson Unified School District that CedarCrestone's business practice is to not create a new database for each client, but instead use one customer's licensed software to create copies to support multiple other customers. Papay Decl., Ex. B ¶ 29. | [REDACTED] |
| CedarCrestone has falsely assured prospective customers, such Tucson Unified School District, that CedarCrestone's status as an Oracle Platinum Partner means that CedarCrestone can provide "all services in a manner that is free of intellectual property infringement." Papay Decl., Ex. B ¶ 33. | [REDACTED] |

7

1   The DVD of computer files produced by CedarCrestone in this Action also relates to the
collateral litigation between Oracle and CedarCrestone. As described by CedarCrestone, ███
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████ *See* Papay Decl.,
Ex. K (Dep. Ex. 1308). These files relate to Oracle's allegations in the *CedarCrestone* Action
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████ Papay Decl.,
Ex. B ¶¶ 23, 29. The files on the DVD provide information regarding: █████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████ *See, e.g.*,
Papay Decl., Ex. E (Simmons Dep.) at 87:21-119:11, 122:9-133:25, 140:5-165:19.

As before, the "rough estimate of relevance" required by *Foltz* is satisfied with respect to both the Simmons deposition and the DVD of computer files produced by CedarCrestone.[1]

**B.   CedarCrestone's Reliance Interest Does Not Outweigh The Efficiencies Gained By Modifying The Protective Order**

In the second part of the *Foltz* test, the district court weighs "the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Foltz*, 331 F.3d at 1132. CedarCrestone cannot establish that its reliance interest, if any,

---

[1] CedarCrestone has previously suggested that the Court denied Oracle's prior motion on the grounds that Oracle improperly sought to lift the protection on a wholesale basis with respect to everything CedarCrestone produced. Dkt. 377 at 2:24-3:2. While Oracle disagrees with CedarCrestone's interpretation of the Court's ruling, in an abundance of caution Oracle has specifically identified the discovery that it seeks to use in the *CedarCrestone* Action (a single deposition of CedarCrestone's corporate representative, the exhibits used at that deposition, and a DVD containing relevant computer files) and provided the Court with extensive examples that establish the relevance of the discovery to the collateral litigation. To avoid unduly burdening the Court, Oracle has only submitted the deposition exhibits here that Oracle specifically cites in this Motion. Papay Decl., Exs. F-M. If it will assist the Court in ruling on this motion, Oracle can provide the Court with copies of the remaining exhibits from Paul Simmons' deposition.

outweighs the efficiencies that would result from a modification of the Protective Order.

CedarCrestone's reliance interest in the Protective Order is diminished by the fact that it is a blanket protective order. Papay Decl., Ex. A at 19:17-18. A blanket protective order weighs *in favor* of modification, not against it as CedarCrestone has contended. See, e.g., Foltz, 331 F.3d at 1332-33; CBS Interactive, Inc. v. Etilize, Inc., 257 F.R.D. 195, 206 (N.D. Cal. 2009). A blanket protective order results in less reliance "because it is by nature overinclusive" and CedarCrestone, as the designating party, has not made a document-by-document showing prior to invoking the protections of the Protective Order. Foltz, 331 F.3d at 1332-33 (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992)); see also CBS Interactive, 257 F.R.D. at 206 ("Mere reliance on a blanket protective order does not justify a refusal to modify it when a reasonable request for disclosure has been made."); Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P., 214 F.R.D. 583, 586 (C.D. Cal. 2003). Therefore, CedarCrestone's "reliance on a blanket protective order in granting discovery . . . without more, will not justify a refusal to modify" the Protective Order. Foltz, 331 F.3d at 1332.

The fact that CedarCrestone, through its sophisticated counsel, negotiated for modifications to the Protective Order prior to agreeing to produce discovery, in lieu of responding to Oracle's motion to compel, does not change this result. The CedarCrestone Stipulation did not change the terms of the Protective Order to make it more restrictive of CedarCrestone's ability to invoke the protection of the Protective Order. See Papay Decl., Ex. D. Nor did the CedarCrestone Stipulation modify the provisions of the Protective Order that specifically allow for its modification. Id.

Finally, to the extent that CedarCrestone does have any minimal reliance interest in the secrecy of the information contained in the Discovery Materials[2], Foltz instructs that this interest

---

[2] CedarCrestone's alleged interest in the secrecy of the information contained in the Discovery Materials with respect to Oracle is suspect. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ See, e.g., Papay Decl., Ex. L (Dep. Ex. 1323) ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■; Papay Decl., Ex. M (Dep. Ex. 1324) (same). It is CedarCrestone's possession and use of these files, not the contents of the files themselves, that

(Footnote Continued on Next Page.)

PLAINTIFFS' MOTION TO MODIFY PROTECTIVE ORDER

1 can be protected by placing "the same restrictions on use and disclosure contained in the original
2 protective order" in the collateral litigation.  *Foltz*, 331 F.3d at 1133.  To this end, Oracle is
3 prepared to work cooperatively with CedarCrestone to agree upon an appropriate protective
4 order in the *CedarCrestone* Action, consistent with the procedures utilized by the Northern
5 District of California for the entry of stipulated protective orders.  *See*
6 http://www.cand.uscourts.gov/stipprotectorder.

7 **IV.   CONCLUSION**

8       For the foregoing reasons, the Court should modify the Protective Order to allow the
9 deposition of Paul Simmons (including the exhibits thereto) and the DVD of computer files
10 produced by CedarCrestone to be used in the *CedarCrestone* Action.

12 DATED:  September 7, 2012         BINGHAM McCUTCHEN LLP

14         By:      /s/ Geoffrey M. Howard
15           Geoffrey M. Howard
          Attorneys for Plaintiffs
16     Oracle USA, Inc., Oracle America, Inc., and
          Oracle International Corp.

---

26 (Footnote Continued from Previous Page.)

27 CedarCrestone seeks to shield.