# EXHIBIT B

COPY

| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP |
| | Geoffrey M. Howard (SBN 157468) |
| 2 | geoff.howard@bingham.com |
| | Marjory Gentry (SBN 240887) |
| 3 | marjory.gentry@bingham.com |
| | Chad Russell (SBN 246046) |
| 4 | chad.russell@bingham.com |
| | Three Embarcadero Center |
| 5 | San Francisco, CA 94111-4067 |
| | Telephone: 415.393.2000 |
| 6 | Facsimile: 415.393.2286 |

ORACLE CORPORATION
Jennifer Gloss (SBN 154227)
jennifer.gloss@oracle.com
Deborah K. Miller (SBN 95527)
deborah.miller@oracle.com
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114

Attorneys for Plaintiffs Oracle America, Inc.,
and Oracle International Corp.

ORIGINAL
FILED

SEP 05 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

CV 12 4626

NC

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation, | Case No. |
| Plaintiffs, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | **(1) COPYRIGHT INFRINGEMENT;** |
| CEDARCRESTONE, INC., a Delaware corporation, | **(2) BREACH OF CONTRACT; and (3) UNFAIR COMPETITION.** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

1            Plaintiffs Oracle America, Inc. ("Oracle America") and Oracle International

2    Corporation ("OIC") (together "Oracle") for their Complaint against Defendant CedarCrestone,

3    Inc. ("CedarCrestone") allege as follows based on their personal knowledge as for themselves,

4    and on information and belief as to the acts of others:

5    **I.**      **INTRODUCTION**

6           1.    CedarCrestone was an Oracle "partner."  For roughly seven years, Oracle

7    valued its relationship with CedarCrestone and attempted to work with CedarCrestone for the

8    benefit of mutual customers.  Oracle has now learned that, all the while proclaiming itself a

9    faithful Oracle partner, CedarCrestone instead misappropriated Oracle's intellectual property and

10   then used its partnership status to attract customers it could service using that same stolen

11   software.  In doing so, CedarCrestone undermined Oracle's customer relationships and unfairly

12   competed against Oracle.  Oracle must now resort to the legal process to protect its intellectual

13   property and ensure the integrity of its partnership network.  This case is about stopping

14   CedarCrestone's illegal conduct and compensating Oracle for the harm that conduct has caused.

15   **II.**     **THE PARTIES**

16          2.    Plaintiff Oracle America is a Delaware corporation duly authorized to do

17   business in the State of California, with its principal place of business in Redwood City,

18   California.  Oracle America develops and licenses certain intellectual property, including

19   copyrighted enterprise software programs, and provides related services.  Oracle America is the

20   successor, through Oracle USA, Inc., to PeopleSoft USA, Inc. ("PeopleSoft").  Oracle America

21   is a subsidiary of Oracle Corporation.

22          3.    Plaintiff OIC is a California corporation, with its principal place of

23   business in Redwood City, California.  OIC owns and licenses certain intellectual property,

24   including copyrighted enterprise software programs used around the world.  Intellectual property

25   rights formerly held by certain PeopleSoft entities were transferred to OIC as part of the

26   acquisition of PeopleSoft by Oracle Corporation.  OIC is the owner or exclusive licensee of the

27   copyrights at issue in this action.  OIC is a subsidiary of Oracle Corporation.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    4.    Defendant CedarCrestone is a Delaware corporation with its principal

2    place of business in Alpharetta, Georgia.  Until Oracle terminated the partnership, CedarCrestone

3    was a member of the Oracle PartnerNetwork ("OPN"), having renewed its membership most

4    recently in November 2011 by agreeing to the terms of the Oracle PartnerNetwork Worldwide

5    Agreement (the "OPN Agreement").

6    **III.    JURISDICTION**

7    5.    Oracle's first cause of action arises under the federal Copyright Act,

8    17 U.S.C. § 101 *et seq.*  Accordingly, this Court has subject matter jurisdiction over this action

9    pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

10    6.    Oracle's third cause of action for unfair competition is substantial and

11    related to its cause of action for copyright infringement.  Accordingly, this Court has subject

12    matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(b).

13    7.    This Court has supplemental subject matter jurisdiction over Oracle's state

14    law claims pursuant to 28 U.S.C. § 1367 because they are so related to Oracle's claims under

15    federal law that they form part of the same case or controversy and derive from a common

16    nucleus of operative facts.

17    8.    CedarCrestone is subject to personal jurisdiction in California because it

18    has committed wrongful intentional acts, expressly aimed at Oracle, which CedarCrestone knew

19    or should have known is a resident of California.  CedarCrestone also caused harm that it knew

20    or should have known Oracle would suffer in Redwood City, California.  CedarCrestone also

21    agreed to personal jurisdiction in this District in contracts with Oracle, including the OPN

22    Agreement and Full Use Distribution Agreement which Oracle alleges CedarCrestone breached.

23    **IV.    VENUE**

24    9.    Venue in this District is appropriate because CedarCrestone has agreed to

25    personal jurisdiction and venue in this District in contracts with Oracle, including the OPN

26    Agreement and Full Use Distribution Agreement which Oracle alleges CedarCrestone breached.

27    10.    Venue in this District is also appropriate because CedarCrestone

28    committed wrongful intentional acts, expressly aimed at Oracle, which CedarCrestone knew or

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   should have known is a resident of this District. CedarCrestone also caused harm that it knew or

2   should have known Oracle was likely to suffer in this District. As a result, CedarCrestone would

3   be amenable to personal jurisdiction if this District were a separate state, and therefore venue in

4   this District is appropriate pursuant to 28 U.S.C. § 1400(a).

5   **V.     INTRADISTRICT ASSIGNMENT**

6          11.     This action alleges, among other things, claims for copyright infringement.

7   It is an intellectual property action and may be assigned on a district-wide basis pursuant to Civil

8   L.R. 3-2(c).

9   **VI.    FACTUAL ALLEGATIONS**

10         **A.     Oracle's Enterprise Software Applications And Support
                    Materials**

11

12         12.     Oracle is the world's leading supplier of enterprise hardware and software

13  systems, and related technical support and consulting services for those systems. It is the first

14  enterprise software company to receive J.D. Power & Associates' global certification for

15  outstanding service and support based on measuring customer satisfaction worldwide. Oracle

16  develops, manufactures, markets, distributes, and services software designed to help its

17  customers manage and grow their business operations. Oracle's enterprise software and

18  technology offerings include database, middleware, and applications software programs.

19         13.     As is typical in the enterprise software industry, Oracle does not sell

20  ownership rights to its software or related support products to its customers. Instead, Oracle's

21  customers purchase licenses that grant them limited rights to use specific Oracle software

22  programs, with Oracle retaining all copyright and other intellectual property rights in these

23  works. In addition, licensed customers can, and typically do, purchase some set of technical

24  support services related to the purchased software licenses. Those services include limited rights

25  to use product improvements to the software programs the customers have expressly licensed

26  from Oracle and have the right to use for purposes authorized by Oracle. Product improvements

27  include tax and regulatory updates, bug fixes, and patches.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**B.      The Terms of CedarCrestone's Terminated PartnerNetwork
And Distribution Agreements**

14.     At all relevant times, CedarCrestone was a member of the Oracle
PartnerNetwork ("OPN") through its OPN Agreement with Oracle.  CedarCrestone first entered
into an OPN Agreement with Oracle in 2005.  The parties renewed that agreement from time to
time, including most recently on or about November 3, 2011.  CedarCrestone and Oracle were
also parties to a Full Use Distribution Agreement ("FUDA") beginning at least as of October 2,
2008 (when it was referred to as the Full Use Program Distribution Agreement), and continuing,
with periodic renewals, through a FUDA dated April 4, 2012.

15.     On September 4, 2012, Oracle terminated CedarCrestone's OPN
Agreement and FUDA.

16.     CedarCrestone's OPN Agreement prohibited misrepresentation of
CedarCrestone's relationship with Oracle: "You may not . . . use the Oracle property in a manner
that misrepresents your relationship with Oracle or is otherwise misleading or that reflects
negatively on Oracle."

17.     CedarCrestone's OPN Agreement and FUDA both explicitly incorporated
by reference Oracle's Partner Code of Conduct and Business Ethics ("Ethics Code").  Both
agreements also provided for immediate termination by Oracle for any violation of the Ethics
Code.  For example:

>   You agree to comply with the terms of the Oracle Partner
>   Code of Conduct and Business Ethics, which is available at
>   http://partner.oracle.com (log in, select Membership /
>   Agreements & Policies). . . . You agree that any violation
>   of this section constitutes just cause for the immediate
>   termination by Oracle of this agreement without any
>   liability incurred by Oracle to you.

18.     The Ethics Code prohibits illegal conduct by a Partner:

>   This Code is applicable to you as an Oracle Partner, your
>   resellers, and to all personnel employed by or engaged to
>   provide services to you (either "Partner" or "you")
>   throughout the world.  Oracle Corporation and its
>   subsidiaries ("Oracle") require that you comply with all
>   laws and regulations applicable to your business, wherever
>   conducted, and with this Code.

5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

19.     The Ethics Code also prohibits unfair and deceptive business practices:

> Unfair methods of competition and deceptive practices are also prohibited.  Examples of these include making false or misleading statements about your or Oracle's products or services, falsely disparaging an Oracle competitor or its products or services, [or] making product or service claims without facts to substantiate them . . . .

20.     The Ethics Code also prohibits unauthorized copying and use of Oracle's intellectual property: "You must respect the intellectual property of Oracle and not use Oracle's patented technology or reproduce copyrighted software, documentation, or other materials without written permission."

**C.     CedarCrestone Reproduces, Uses, And Distributes Copies Of Oracle's Copyrighted Software And Support Materials Without Authorization**

21.     In the world of enterprise software applications, revenue typically comes from three categories of activities:  (a) licensing of software applications; (b) consulting relating to the implementation and operation of licensed software applications; and (c) support services related to keeping the software applications updated and upgraded.

22.     CedarCrestone provides third-party support services to customers who use Oracle software, including Oracle's PeopleSoft family of applications.  CedarCrestone's support services for PeopleSoft software include what is known as tax and regulatory update support, which keeps a customer's software in compliance with evolving legislation and regulations. CedarCrestone competes with Oracle for tax and regulatory update business by providing tax and regulatory update support to customers who would typically pay Oracle for support services related to their purchased Oracle software, as described above in ¶ 13.

*CedarCrestone's Unauthorized Copying, Use, And Distribution Of Oracle's Tax And Regulatory Updates*

23.     CedarCrestone has claimed multiple times, such as in a March 16, 2010 proposal (the "OKC Proposal")[1] to prospective customer The Oklahoma City Municipal

---

[1] Available at http://www.okc.gov/agendapub/view.aspx?cabinet=published_meetings&fileid=1190382 as of September 4, 2012.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Facilities Authority (the "City") that its tax and regulatory updates "are developed independently

2   by CedarCrestone" without using Oracle's competing updates "as a starting point." This claim is

3   false regarding at least one of CedarCrestone's customers. For example, in a letter dated August

4   19, 2011 and directed to "Sir/Madam" at Oracle Corporation, CedarCrestone admitted that it

5   delivered Oracle tax updates "obtained by CedarCrestone" to customer George Weston Bakeries

6   "throughout the period from November 2008 to August 2011," during which time George

7   Weston Bakeries had no right to receive such updates. In other words, CedarCrestone did not

8   develop updates for George Weston Bakeries "independently," but instead "obtained" Oracle's

9   competing updates and sold copies of them to this customer.[2] In fact, CedarCrestone downloads

10  vast quantities of Oracle's support materials, including its tax and regulatory updates, from

11  Oracle's website using the log-in credential CedarCrestone obtained by virtue of its status as an

12  Oracle partner.

13         24.    CedarCrestone's admitted long-term and repeated unauthorized

14  reproduction and distribution of Oracle's intellectual property aided the success of

15  CedarCrestone's support services offering, as evidenced by materials on its public website. For

16  example, in January 2009, just after CedarCrestone began its admitted infringement in support of

17  George Weston Bakeries, CedarCrestone listed this customer on its website as one of its *only two*

18  "Client Successes" with respect to its "PeopleSoft Managed Services – Develop" offering. At

19  the time, CedarCrestone claimed that its "development" services offered "lower cost

20  development options . . . while providing the same level of development expertise and quality

21  guarantees."[3] In reality, CedarCrestone's "lower cost development option" apparently involved

22  providing customers with copies of illegally-obtained updates developed by Oracle. As of

23  September 4, 2012, despite its admitted infringement for years in support of this customer,

24  _____

25  [2] George Weston Bakeries is now known as Bimbo Bakeries. CedarCrestone has not explained
    how it obtained these Oracle-authored updates, including whether it used any customer login
26  credentials to download the updates from Oracle's website(s).
    [3] *See, e.g.*, Exhibit 2 to the Declaration of Jason McDonell in Support of Response in Support of
27  Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners,
    filed by SAP in *Oracle v. SAP*, 3:07-cv-1658, January 27, 2009, Dkt. No. 264-2.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  CedarCrestone *continues* publicly to advertise this customer as a "Client Success" on its website,

2  touting its "ongoing support effort" since 2005 to provide this customer "Remote Support for

3  PeopleSoft Enterprise HCM 8.3 and Financials 7.5 applications."[4]

4          *CedarCrestone's Unauthorized Copying, Use, And Distribution Of*

5          *Oracle's Software Applications*

6        25.    In addition to its unauthorized copying and distribution of Oracle-authored

7  tax and regulatory updates, CedarCrestone has used unauthorized copies of entire Oracle

8  software applications.

9        26.    Oracle's customer license agreements for its PeopleSoft family of

10  software at issue in this case all contain similar restrictions on reproducing, distributing,

11  accessing, and using the licensed software.  One such restriction in an illustrative PeopleSoft

12  license agreement states that the customer's licensed software may be used "solely for the

13  Licensee's internal data processing operations."  These licensing restrictions help Oracle to

14  protect its significant investment in research and development, which results in continuous

15  enhancement of its products for the benefit of its customers.

16        27.    CedarCrestone has intimate familiarity with these important restrictions,

17  including because *it is a PeopleSoft licensee*.  As it states in the OKC Proposal, "CedarCrestone

18  is an Oracle client with more than 20 modules in production, across the following [PeopleSoft]

19  application suites: Human Capital Management, Financial Management, Customer Relationship

20  Management, and Enterprise Portal."

21        28.    CedarCrestone documents reveal that, in spite of its familiarity with the

22  contractual limitations on permissible copying and use of PeopleSoft software, CedarCrestone

23  willfully ignores these restrictions when providing support services to customers.  For example,

24  in an October 22, 2009 proposal to prospective customer Tucson Unified School District for

25  "Regulatory update support for PeopleSoft HCM 8.8 and Financials 7.5" ("TUSD Proposal")

26  (admitted into evidence as *Oracle v. SAP*[5] Trial Exhibit A-2046), CedarCrestone explains how it

---

27  [4] Available at http://www.cedarcrestone.com/media/documents/CS-GWB.pdf.

   [5] *Oracle Corp. et al. v. SAP AG et al.*, No. C 07-1658 PJH (N.D. Cal.).

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   uses software obtained from one customer to provide support to other customers "where we have

2   more than one client whose support termination dates are identical and thus have identical demo

3   databases." CedarCrestone further explains, "[t]he batch programs, such as COBOL, SQR, and

4   Crystal Reports, are setup in the same manner as the database." These "batch programs" consist

5   of copyrighted Oracle source code.

6          29.    CedarCrestone makes unauthorized copies of Oracle's software and

7   violates customers' license agreements with Oracle in at least two ways. First, CedarCrestone

8   apparently creates its own copy of some customers' software which it maintains on its systems.

9   Indeed, its competitor, Rimini Street, alleges in public filings in a separate lawsuit that

10   CedarCrestone maintains these local copies on its systems.[6] These copies are not authorized by

11   Oracle. Second, CedarCrestone does "*not create a new database for each client*." (emphasis in

12   original) It instead copies the source code from one customer's licensed software to create other

13   copies that it uses to support multiple other customers. No license permits those copies or that

14   cross-use.

15          30.    The TUSD Proposal explains at least one way CedarCrestone benefits

16   from this unauthorized cross-use of customer software: "The first update will be delivered to the

17   client shortly after their database is ready. This update includes any recent changes that have

18   *already been delivered* to our existing Extended Tax clients but do not yet exist in our new

19   client's database." (emphasis in original) (According to the OKC Proposal, CedarCrestone

20   offers its Extended Tax service to customers who no longer pay Oracle maintenance, and

21   therefore have no right to receive Oracle tax and regulatory updates.) In other words,

22   CedarCrestone creates these updates using some existing customer's licensed Oracle software,

23   which CedarCrestone apparently has copied and maintains for its own business purposes, then

24   delivers these updates to later-acquired customers and sells that service as an incentive to sign up

25   with CedarCrestone. These updates thus consist of copied, modified, and distributed Oracle

26   ────────────────

[6] *Oracle USA, Inc. et al. v. Rimini Street, Inc. & Seth Ravin*, No. 2:10-cv-0106-LRH-PAL (D.

27   Nev.), Dkt. 153 (Rimini Street's Answers to Oracle's Second Amended Complaint and First
    Amended Counterclaim) ¶¶ 5, 54.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

software code.  The ability to promise prospects a quick – though infringing – first deliverable (previously created and/or copied from another customer's licensed software) helps get more customers.  Indeed, Tucson Unified School District purchased support services from CedarCrestone after receiving this proposal.

**D.  CedarCrestone Made False And Misleading Statements To Prospective Customers**

31.  In addition to the admitted, documented, and ongoing unauthorized copying and use of Oracle's intellectual property described above, CedarCrestone *intentionally misrepresented* its relationship with Oracle and otherwise deceived prospective customers.

32.  For example, as already discussed, CedarCrestone falsely stated in the OKC Proposal that its tax and regulatory updates "are developed independently by CedarCrestone" without using Oracle's competing updates "as a starting point."  CedarCrestone makes the same false statements in the TUSD Proposal.

33.  As another example, CedarCrestone told the City in the OKC Proposal, "As a Platinum Partner of Oracle, our relationship with Oracle is central to our current and future successes.  The City can rest assured that CedarCrestone provides all services in a manner that is free of intellectual property infringement."  CedarCrestone further stated, "As an Oracle Platinum Partner, CedarCrestone will not install any patches or tax updates that the City has not legally downloaded prior to terminating their Oracle support or take other actions that would cause the City or CedarCrestone to violate the terms of the City's PeopleSoft licenses."  In the same document, CedarCrestone claimed in a chart purportedly "differentiating" itself from competitors that its "Oracle Platinum Partnership" offered the "Value to Oklahoma City" of an "Assurance that services are delivered free of intellectual property infringement."  (see excerpt below)

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| 4) Clarify what differentiates your company from your competition. | |
| --- | --- |
| **DIFFERENTIATOR** | **VALUE TO OKLAHOMA CITY** |
| PEOPLESOFT FOCUS | Partner whose core business is PeopleSoft |
| DEPTH & BREADTH OF EXPERIENCE | "Been there, done that" partner to support City applications |
| CEDARCRESTONE SIZE | Unparalleled knowledge base for PeopleSoft support |
| COMPLETE SERVICE OFFERINGS | Lowers risk to City by eliminating the need for multiple vendors |
| ORACLE PLATINUM PARTNERSHIP | Assurance that services are delivered free of intellectual property infringement |
| PARTNERSHIP FOCUS | Enables optimization and enhancement of City's investment |

34.     Each of these statements in the OKC Proposal is false or misleading.  As CedarCrestone knows or should know, CedarCrestone's Oracle partner status did not immunize it against claims for unauthorized copying or use of Oracle software and support materials.  No agreement between Oracle and CedarCrestone authorizes CedarCrestone to make these statements to customers, or provides any basis for CedarCrestone to believe them.  In fact, Oracle gave CedarCrestone no permission at all to engage in the software support activities CedarCrestone pitched in the OKC Proposal.  To the contrary, the Ethics Code incorporated by CedarCrestone's OPN Agreement and FUDA provides that CedarCrestone must "respect the intellectual property of Oracle and not use Oracle's patented technology or reproduce copyrighted software, documentation, or other materials without written permission."  To tell customers that CedarCrestone's partner status offered any supposed "assurance" that CedarCrestone's services were infringement-free, or to imply that Oracle endorsed or blessed CedarCrestone's support services in any way, misrepresented CedarCrestone's relationship with Oracle and deceived or misled customers.  CedarCrestone knew Oracle had economic relations with these customers, with whom Oracle expected to have continuing and advantageous economic relationships with the probability of future economic benefit from support service contracts and software licenses.  Absent CedarCrestone's misrepresentations, these customers would have chosen Oracle for those same services.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    **First Claim for Relief**

2    **Copyright Infringement**

3    **(Claim By OIC)**

4    35.    OIC incorporates by reference each of the allegations in the preceding

5    paragraphs of this Complaint as though fully set forth here.

6    36.    The software and support materials that CedarCrestone copied and/or used

7    without authorization include numerous works protected by the Federal Copyright Act, 17

8    U.S.C. §§ 101 *et seq*. OIC owns a valid and enforceable copyright in, or an exclusive license to,

9    all of its software applications and support materials, which are creative works of original

10   authorship. OIC has pre-existing Certificates of Registration that cover many of the software

11   applications and support materials taken and copied by CedarCrestone.

12   37.    OIC has also obtained, through transfer agreements, all rights, title, and

13   interest in registered and unregistered copyrights formerly owned by certain PeopleSoft entities.

14   38.    OIC owned exclusive rights to each of the copyrights at issue in this case

15   at a point in time during which CedarCrestone infringed those exclusive rights.

16   39.    CedarCrestone has infringed copyrights in Oracle software applications

17   and support materials, including the applications and materials covered by the certificates

18   identified, dated, and numbered as follows, and which relate to the software versions for which

19   CedarCrestone provided support to George Weston Bakeries and Tucson Unified School District,

20   as alleged above:

| Title of Work | Registration Date | Registration No. |
|---|---|---|
| PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |
| PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| PeopleSoft HRMS 8.8 SP1 | February 10, 2010 | TX 7-065-376 |
| PeopleSoft Financials, Distribution & Manufacturing 7.5 | December 15, 1998 | TX 4-792-574 |
| PeopleSoft Financials and Supply Chain Management (FIN/SCM) 8.0 | November 20, 2000 | TX 5-291-439 |

27   40.    Through the acts alleged above, CedarCrestone has violated the exclusive

28   rights of OIC to control the reproduction of its copyrighted software applications and support

12

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  materials, including materials covered by the registrations listed above by, among other things,

2  downloading (copying) Oracle's copyrighted software and support materials in violation of 17

3  U.S.C. § 106, copying Oracle's software applications to CedarCrestone's own local systems,

4  copying Oracle's software applications for the purpose of supporting multiple customers, and

5  creating unlicensed works derived from these copies, all without authorization or license.

6      41.   CedarCrestone has also violated the exclusive rights of OIC to control the

7  distribution of, and creation of derivative works from, its copyrighted works by downloading,

8  copying, creating derivative works from, and/or distributing Oracle's software and support

9  materials and/or derivative works to CedarCrestone's customers, in violation of 17 U.S.C. § 106.

10     42.   CedarCrestone was not authorized to copy, download, reproduce, create

11 derivative works from, or distribute Oracle's copyrighted software and support materials except

12 as authorized by Oracle.

13     43.   In addition to directly infringing the exclusive rights of OIC,

14 CedarCrestone has contributorily and/or vicariously infringed the exclusive rights of OIC in the

15 software and support materials by controlling, directing, intentionally encouraging, inducing or

16 materially contributing to the copying, distribution, or creation of derivative works from Oracle's

17 copyrighted software applications and support materials.  CedarCrestone obtained a direct

18 financial benefit from the above alleged infringing activities while declining to exercise its right

19 to stop it or limit it.

20     44.   CedarCrestone knew or should have known that copying, distributing, and

21 creating derivative works of and from Oracle software and support materials, which

22 CedarCrestone copied in the name of and/or distributed to customers who had no license to copy,

23 distribute, or create derivative works from such materials, infringed the exclusive rights of OIC

24 in those materials.

25     45.   OIC is entitled to damages in an amount to be proven at trial, including

26 profits attributable to the infringement not taken into account in computing actual damages under

27 17 U.S.C. § 504(b).  OIC is entitled to statutory damages under 17 U.S.C. § 504(c) based on

28 CedarCrestone's infringements after the dates of copyright registration.

13

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1          46.     CedarCrestone's infringement of OIC's exclusive rights has also caused

2   OIC irreparable injury.  Unless restrained and enjoined, CedarCrestone will continue to commit

3   such acts.  OIC's remedies at law are not adequate to compensate Oracle for these inflicted and

4   threatened injuries, entitling Oracle to remedies including injunctive relief as provided by 17

5   U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to

6   17 U.S.C. § 503.

7                    **<u>Second Claim for Relief</u>**

8                        **Breach of Contract**

9                 **(Claim By Oracle America)**

10         47.     Oracle America incorporates by reference each of the allegations in the

11   preceding paragraphs of this Complaint as though fully set forth here.

12         48.     CedarCrestone agreed to be bound by the Oracle PartnerNetwork

13   Worldwide Agreement ("OPN Agreement") beginning at least as of February 1, 2005 and most

14   recently as of November 3, 2011.  Beginning at least as of January 19, 2010, the OPN

15   Agreement incorporates by reference Oracle's Partner Code of Conduct and Business Ethics

16   ("Ethics Code") and makes a violation of that Ethics Code grounds for immediate termination of

17   the OPN Agreement.

18         49.     CedarCrestone also agreed to be bound by the Full Use Distribution

19   Agreement ("FUDA"), beginning at least as of October 2, 2008 and most recently as of April 4,

20   2012.  At all relevant times, the operative FUDA incorporates by reference Oracle's Ethics Code

21   and makes a violation of that Ethics Code grounds for immediate termination of the FUDA.

22         50.     Oracle America has performed all conditions, covenants, and promises

23   required on its part to be performed in accordance with the terms and conditions of the OPN

24   Agreement and the FUDA, including the Ethics Code.

25         51.     CedarCrestone breached the OPN Agreement's provision prohibiting

26   CedarCrestone from misrepresenting its relationship with Oracle (see ¶ 16 above) by making

27   false and/or misleading statements to prospective customers about CedarCrestone's products

28   and/or services, including without limitation by misrepresenting the nature of CedarCrestone's

14

1   relationship with Oracle, by misleading prospective customers as to the (non-existent) benefits of

2   that relationship to CedarCrestone related to the legality of CedarCrestone's software support

3   services, and/or by making false statements about the ways CedarCrestone uses Oracle-authored

4   software and support materials to provide its services, as described above.

5          52.    CedarCrestone breached the OPN Agreement and the FUDA by violating

6   the term of the Ethics Code requiring CedarCrestone to comply with all laws and regulations

7   applicable to its business (see ¶¶ 17 & 18 above).

8          53.    CedarCrestone also breached the OPN Agreement and the FUDA by

9   violating the term of the Ethics Code prohibiting unfair methods of competition and deceptive

10  practices (see ¶¶ 17 & 19 above).  CedarCrestone breached these provisions by making false

11  and/or misleading statements to prospective customers about CedarCrestone's products and/or

12  services, including without limitation by misrepresenting the nature of CedarCrestone's

13  relationship with Oracle, by misleading prospective customers as to the (non-existent) benefits of

14  that relationship to CedarCrestone related to the legality of CedarCrestone's software support

15  services, and/or by making false statements about the ways CedarCrestone uses Oracle-authored

16  software and support materials to provide its services, as described above.  CedarCrestone also

17  breached the same provisions by reproducing, distributing, using, and/or creating unlicensed

18  works derived from Oracle software and support materials, without authorization or license, as

19  described above.

20         54.    CedarCrestone breached the OPN Agreement and the FUDA by violating

21  the term of the Ethics Code requiring CedarCrestone to respect Oracle's intellectual property

22  (see ¶¶ 17 & 20 above).  It did so by reproducing Oracle's copyrighted software and support

23  materials without permission, as described above.

24         55.    As a result of CedarCrestone's breach of the OPN Agreement and the

25  FUDA, including the Ethics Code, CedarCrestone has caused damage to Oracle America in an

26  amount to be proven at trial.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**<u>Third Claim for Relief</u>**

**Unfair Competition – Cal. Bus. & Prof. Code § 17200**

**(Claim By Oracle America)**

56.     Oracle America incorporates by reference each of the allegations in ¶¶ 1-34, 48-55 of this Complaint as though fully set forth here.

57.     CedarCrestone has engaged in unlawful, unfair, and/or fraudulent business acts or practices, including by: (a) intentionally making false and/or misleading statements to prospective customers about CedarCrestone's products and/or services, including without limitation by misrepresenting the nature of CedarCrestone's relationship with Oracle; (b) misleading prospective customers as to non-existent consequences of CedarCrestone's partnership status with respect to the legality of CedarCrestone's services; (c) making false statements about the ways CedarCrestone uses Oracle-authored software and support materials to provide its services, as described above, including without limitation in ¶¶ 31-34; (d) engaging in unfair and/or fraudulent conduct that breached CedarCrestone's OPN Agreement and FUDA, as described above, including without limitation in ¶¶ 51-54; and/or (e) intentionally interfering with Oracle's prospective economic advantage.

58.     CedarCrestone committed these unlawful, unfair, and/or fraudulent business acts or practices in an effort to gain unfair competitive advantage over Oracle in competing for the provision of support services to licensees of Oracle's PeopleSoft software.

59.     These unlawful, unfair, and/or fraudulent business acts or practices offend public policies against false or misleading statements to potential consumers regarding commercial products and services, and they are immoral, unethical, oppressive, and/or unscrupulous, including because they intentionally seek to deceive potential customers about the value, risks, and legality of CedarCrestone's offerings.  Additionally, as alleged above in ¶ 17, CedarCrestone expressly agreed – in the OPN Agreement and FUDA – to comply with the Ethics Code, which defines unfair methods of competition and deceptive practices to include the CedarCrestone conduct that Oracle alleges in this cause of action.

60.     These unlawful, unfair, and/or fraudulent business acts or practices inflict substantial injury on consumers of CedarCrestone's services, including without limitation by deceiving them into (a) making a misinformed choice to purchase support services from CedarCrestone; (b) overestimating the value of such services that actually are not backed by the Oracle endorsements and/or guarantees that CedarCrestone fabricates to extract additional consideration; and (c) taking on unknown and undue risk because of CedarCrestone's false statements about the legality of its services and its use of Oracle's intellectual property. These unlawful, unfair, and/or fraudulent business acts or practices offer no benefits to consumers or competition that outweigh these injuries, which cannot reasonably be avoided in part because of CedarCrestone's knowing deception and misrepresentation with respect to material information.

61.     CedarCrestone's acts and conduct constitute unfair competition as defined by California Business & Professions Code § 17200 *et seq*.

62.     As described above, Oracle America has suffered injury in fact and lost money or property as a result of CedarCrestone's unfair competition, including without limitation loss of revenue from customers who instead would have chosen to purchase support services from Oracle America. CedarCrestone's unfair competition also breached CedarCrestone's OPN Agreement and FUDA with Oracle America, and the Ethics Code, as described above. The OPN Agreement and FUDA identify Oracle's location as Redwood City, California and Redwood Shores, California, respectively.

63.     Oracle America has also suffered irreparable injury as a result of CedarCrestone's unfair competition and, unless CedarCrestone is enjoined from further such unfair competition, will continue to suffer irreparable injury, such that Oracle America has no adequate remedy at law.

64.     CedarCrestone should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits it may have obtained in violation of California Business & Professions Code § 17200 *et seq*., including, but not limited to, any such monies or other benefits earned from customers to whom CedarCrestone made false or

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  misleading statements, and should be enjoined from further unlawful and/or unfair business

2  practices.

3  **Prayer for Relief**

4  WHEREFORE, Oracle respectfully prays for the following:

5  A.  For a preliminary and permanent injunction restraining CedarCrestone, its

6  officers, agents, servants, employees, attorneys, and those in active concert or participation with

7  it, from the following:

8  (1)  Copying, downloading, distributing, using, or creating derivative

9  works from Oracle's software or support materials in any way, including for any business

10  purpose, except as allowed by express license from Oracle;

11  (2)  Facilitating the copying, distribution, or use of any Oracle software

12  or support materials by, for, or on behalf of, any customer or party who did not have a current,

13  valid, existing support license from Oracle entitling that customer or party to have and use the

14  software and support materials at the time they were downloaded or obtained by or on behalf of

15  the customer or party;

16  (3)  Certifying, promoting, advertising, or representing that it is an

17  Oracle Partner or that Oracle has in any way endorsed or approved its support services; and

18  (4)  Otherwise engaging in acts of unfair competition, unfair practices,

19  or copyright infringement against Oracle;

20  B.  For an Order directing CedarCrestone to file with the Court and serve on

21  Oracle, within 30 days after the service on CedarCrestone of such injunction, a report in writing,

22  under oath, setting forth in detail the manner and form in which CedarCrestone has complied

23  with the injunction;

24  C.  For an Order directing CedarCrestone to return Oracle's property,

25  including, without limitation, Oracle's confidential, proprietary, and copyrighted software and

26  support materials that CedarCrestone copied or used without authorization, as set forth in this

27  Complaint;

28  D.  For an Order impounding or destroying all infringing materials pursuant to

18

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   17 U.S.C. § 503;

2           E.      For restitution and disgorgement of all ill-gotten gains unjustly obtained

3   and retained by CedarCrestone through the acts complained of in this Complaint;

4           F.      For damages against CedarCrestone to be proven at trial;

5           G.      For statutory damages against CedarCrestone pursuant to 17 U.S.C. § 504;

6           H.      For prejudgment interest;

7           I.      For an accounting;

8           J.      For an Order awarding Oracle its attorneys' fees and costs; and

9           K.      For an Order awarding Oracle such other and further relief as the Court

10  deems just and proper.

11

12  DATED:  September 5, 2012

13

14                                  Bingham McCutchen LLP

15

16                          By: _____

17                                  Geoffrey M. Howard
                                    Attorneys for Plaintiffs
18                                  Oracle America, Inc. and Oracle International
                                    Corp.

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1        <u>DEMAND FOR JURY TRIAL</u>

2        In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle America, Inc. and

3  Oracle International Corp. demand a trial by jury on all issues triable by a jury.

4

5  DATED:  September 5, 2012

6

7                                    Bingham McCutchen LLP

8

9                            By:_____

10                                      Geoffrey M. Howard
                                       Attorneys for Plaintiffs
11                              Oracle America, Inc. and Oracle International
                                              Corp.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF