1    BINGHAM MCCUTCHEN LLP
     Geoffrey M. Howard (SBN 157468)
2    geoff.howard@bingham.com
     Thomas S. Hixson (SBN 193033)
3    thomas.hixson@bingham.com
     Kristen A. Palumbo (SBN 215857)
4    kristen.palumbo@bingham.com
     Three Embarcadero Center
5    San Francisco, California  94111-4067
     Telephone:  415.393.2000
6    Facsimile:  415.393.2286

7    BOIES, SCHILLER & FLEXNER LLP
     STEVEN C. HOLTZMAN (pro hac vice)
8    FRED NORTON (pro hac vice)
     KIERAN P. RINGGENBERG (pro hac vice)
9    1999 Harrison Street, Suite 900
     Oakland, CA 94612
10   Telephone: (510) 874-1000
     Facsimile: (510) 874-1460
11   sholtzman@bsfllp.com
     fnorton@bsfllp.com
12   kringgenberg@bsfllp.com

13   Attorneys for Plaintiffs
     Oracle USA, Inc., Oracle America, Inc. and
14   Oracle International Corp.

     BINGHAM McCUTCHEN LLP
     GEOFFREY M. HOWARD (pro hac vice)
     THOMAS S. HIXSON (pro hac vice)
     KRISTEN A. PALUMBO (pro hac vice)
     BREE HANN (pro hac vice)
     Three Embarcadero Center
     San Francisco, CA  94111-4067
     Telephone:  415.393.2000
     Facsimile:  415.393.2286
     geoff.howard@bingham.com
     thomas.hixson@bingham.com
     kristen.palumbo@bingham.com
     bree.hann@bingham.com

     DORIAN DALEY (pro hac vice)
     DEBORAH K. MILLER (pro hac vice)
     JAMES C. MAROULIS (pro hac vice)
     ORACLE CORPORATION
     500 Oracle Parkway, M/S 5op7
     Redwood City, CA 94070
     Telephone:  650.506.4846
     Facsimile:  650.506.7114
     dorian.daley@oracle.com
     deborah.miller@oracle.com
     jim.maroulis@oracle.com

15

16                    UNITED STATES DISTRICT COURT

17                        DISTRICT OF NEVADA

18

19   ORACLE USA, INC., a Colorado corporation;          No. 2:10-cv-0106-LRH-PAL
     ORACLE AMERICA, INC., a Delaware
20   corporation; and ORACLE                            **ORACLE'S SECOND MOTION FOR**
     INTERNATIONAL CORPORATION, a                       **PARTIAL SUMMARY JUDGMENT**
21   California corporation,                            **AND SUPPORTING MEMORANDUM**
                                                        **OF POINTS AND AUTHORITIES**
22              Plaintiffs,
                                                        Judge:        Hon. Larry R. Hicks
23        v.

24   RIMINI STREET, INC., a Nevada
     corporation; SETH RAVIN, an individual,
25
                Defendants.
26

27

28

1

## TABLE OF CONTENTS

2                                                                                           **Page**

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     STATEMENT OF FACTS .................................................................................. 3

5           A.      Facts Related to Rimini's Copying and Use of Oracle Database ......................... 4

            1.      Copying Pervades Rimini's Business ................................................ 4

6           2.      Oracle Owns and Licenses Oracle Database............................................ 4

7           3.      Rimini's Acquisition Of Oracle Database Copies And License
                    Contentions ..................................................................................... 5

8           4.      Rimini Copied Oracle Database When Creating Environments ............... 6

9           5.      Rimini Used Oracle Database For Commercial Purposes ....................... 6

10          B.      Facts Related To Rimini's Affirmative Defenses of Statute of Limitations
                    and Laches .......................................................................................... 7

11                  1.      Oracle Had No Notice of Rimini's Unauthorized Copying Before
                            January 25, 2007 ....................................................................... 7

12          C.      Facts Related To Rimini's Counterclaims Based On Alleged Defamation .......... 9

13  III.    LEGAL STANDARD ....................................................................................... 11

    IV.     ARGUMENT ................................................................................................... 11

14          A.      Rimini Infringed Oracle's Exclusive Right To Reproduce The Six
15                  Registered Works Of Oracle Database At Issue In This Motion ....................... 11

                    1.      OIC Holds Exclusive Rights To Reproduce Oracle Database ............... 11

16                  2.      Rimini Copied Protected Expression ........................................... 11

17          B.      Rimini Has No Express License Defense To These Copies ............................. 12

18                  1.      The Developer License Does Not Authorize Rimini's Copies ............... 13

19                          a.      Rimini Uses Oracle Database For A Commercial
                                    Purpose ........................................................................... 13

20                          b.      Rimini Does Not Use Oracle Database To Develop
                                    Its Own Applications ...................................................... 14

21                  2.      The OLSA Does Not Authorize Rimini's Copies................................... 15

22                          a.      Rimini Acquired Oracle Database Pursuant To The
                                    Developer License, Not The OLSA ................................ 15

23                          b.      Rimini Did Not Use Oracle Database Solely For Its
                                    Customers' Internal Business Operations ...................... 16

24          C.      Oracle's Copyright Claims Are Timely ....................................................... 18

25                  1.      There Is No Genuine Dispute That Oracle Lacked Notice of
                            Rimini's Infringement Prior to January 25, 2007 ................................. 19

26                  2.      Rimini's Ninth Affirmative Defense Fails for the Same Reason............. 21

27          D.      Rimini Lacks Admissible Evidence To Support Its Counterclaims.................... 23

28                  1.      As To Statements 1-3, Rimini Cannot Demonstrate Actual Malice ........ 24

i

**TABLE OF CONTENTS**
(continued)

Page

a.    Rimini Must Prove Actual Malice .................................. 24

b.    Rimini Cannot Carry Its Burden Of Proving Actual Malice By Clear And Convincing Evidence ................... 25

2.    As To Statements 1-3, The Alleged Statements Are True ...................... 26

3.    As To Statement 1, Rimini Cannot Prove That Oracle Made Any Defamatory Statement To Pat Phelan ...................................... 27

4.    As To Statement 3, The Fair Reporting Privilege Protects James McLeod's Email ................................................................. 28

5.    On Its Trade Libel Claim, Rimini Cannot Prove Special Damages ......... 28

6.    Rimini's Unfair Competition Claim Fails With Its Defamation And Trade Libel Claim .................................................................... 30

V.    CONCLUSION ................................................................................. 30

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 822 (9th Cir. 1995) ..................................................... 27

5

*Ampex Corp. v. Cargle,*
128 Cal. App. 4th 1569 (2005) ..................................................................................... 24, 25

6

7

*Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.,*
742 F. Supp. 2d 1101 (C.D. Cal. 2010) ............................................................................. 22

8

*Bean v. John Wiley & Sons, Inc.,*
CV 11-08028-PCT-FJM, 2012 WL 1078662 (D. Ariz. Mar. 30, 2012) ................................. 21

9

10

*Bigfoot Ventures, LLC v. Compania Mexicana de Aviacion, S.A. de C.V.,*
08-CV-1357 BEN (JMA), 2010 WL 2985832 (S.D. Cal. July 23, 2010) ............................. 23

11

*Bongiovi v. Sullivan,*
122 Nev. 556 (2006) ................................................................................................. 24, 26

12

13

*Bourne v. Walt Disney Co.*
68 F.3d 621 (2d Cir. 1995) ........................................................................................ 12, 15

14

15

*Bridge Publications, Inc. v. Vien,*
827 F. Supp. 629 (S.D. Cal. 1993) ..................................................................................... 20

16

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.,*
08-CV-2307-H POR, 2010 WL 3718859 (S.D. Cal. Sept. 20, 2010) ................................... 22

17

18

*C.A. Inc. v. Rocket Software, Inc.,*
579 F. Supp. 2d 355 (E.D.N.Y. 2008) ................................................................................. 20

19

20

*Carafano v. Metrosplash.com Inc.,*
207 F. Supp. 2d 1055 (C.D. Cal. 2002) ............................................................................. 24

21

*Clark County Sch. Dist. v. Virtual Educ. Software, Inc.,*
213 P.3d 496 (Nev. 2009) ....................................................................................... passim

22

23

*Comedy III Prods., Inc. v. Gary Saderup, Inc.,*
25 Cal. 4th 387 (2001) ..................................................................................................... 26

24

25

*Danjaq LLC v. Sony Corp.,*
263 F.3d 942 (9th Cir. 2001) ..................................................................................... 22, 23

26

27

*Dore v. Arnold Worldwide, Inc.,*
139 P.3d 56 (Cal. 2006) ................................................................................................... 13

28

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

1

## TABLE OF AUTHORITIES
### continued

2

3

**Page(s)**

4

5

*Dorsey v. Nat'l Enquirer, Inc.,*
  973 F.2d 1431 (9th Cir. 1992) .......................................................... 28

6

*Erlich v. Etner,*
  224 Cal. App. 2d 69 (1964) .............................................................. 28

7

8

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.,*
  12 F. Supp. 2d 1068 (C.D. Cal. 1998) .............................................. 27

9

*First Adv. Background Servs. Corp. v. Private Eyes, Inc.,*
  569 F. Supp. 2d 929 (N.D. Cal. 2008) .............................................. 27

10

11

*Garcia v. Coleman,*
  C-07-2279 EMC, 2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) ...................... 19, 20

12

13

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974) ........................................................................ 24

14

*Harte-Hanks Commc'ns v. Connaughton,*
  491 U.S. 657 (1989) ........................................................................ 25

15

16

*Jesinger v. Nevada Fed. Credit Union,*
  CV-S-90-195-HDM (LRL), 1992 WL 672236 (D. Nev. Mar. 27, 1992) ............ 24

17

18

*Keenan v. Int'l Assoc. of Machinists & Aerospace Workers,*
  632 F. Supp. 2d 63 (D. Me. 2009) .................................................... 25

19

*Khawar v. Globe Int'l,*
  19 Cal.4th 254 (1998) ...................................................................... 24

20

21

*LGS Architects, Inc. v. Concordia Homes,*
  434 F.3d 1150 (9th Cir. 2006) .......................................................... 12

22

*MAI Sys. Corp. v. Peak Computer, Inc.,*
  991 F.2d 511 (9th Cir. 1993) ...................................................... 12, 16

23

24

*Mann v. Quality Old Time Serv., Inc.,*
  120 Cal. App. 4th 90 (2004) ............................................................ 28

25

*Melaleuca, Inc. v. Clark,*
  66 Cal. App. 4th 1344 (1998) ...................................................... 24, 25

26

27

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................ 21

28

iv

# TABLE OF AUTHORITIES
### continued

**Page(s)**

*Michaels v. Internet Entm't Group, Inc.*,
   5 F. Supp. 2d 823 (C.D. Cal. 1998)................................................................. 12, 15

*Microsoft Corp. v. Yokahama Telecom Corp.*,
   993 F. Supp. 782 (C.D. Cal. 1998)........................................................................ 28

*Miller v. Glenn Miller Productions, Inc.*,
   454 F.3d 975 (9th Cir. 2006).................................................................................. 22

*Nevada Ind. Broad. Corp. v. Allen*,
   664 P.2d 337 (Nev. 1983) ...................................................................................... 25

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)................................................................................................ 25

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*,
   563 F.3d 777 (9th Cir. 2009).................................................................................. 12

*Novell, Inc. v. Unicom Sales, Inc.*,
   C-03-2785 MMC, 2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ......................... 22

*Novell, Inc. v. Weird Stuff, Inc.*, C92-20467 JW/EAI, 0094 WL 16458729, at *13 (N.D.
   Cal. Aug. 2, 1993)................................................................................................... 21

*Pegasus v. Reno Newspapers, Inc.*,
   57 P.3d 82 (Nev. 2002) .................................................................................... 25, 26

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   No. 10-55834, 2012 WL 3711706 (9th Cir. Aug. 29, 2012) ...................... 21, 22, 23

*Polar Bear Productions, Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) *opinion amended on denial of reh'g*, No. 03-35188,
   2004 WL 2376507 (9th Cir. Oct. 25, 2004)............................................... 18, 19, 20

*Polygram Records, Inc. v. Superior Court*,
   170 Cal. App. 3d 543 (1985).............................................................................. 23, 27

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012)................................................................................ 11

*Rashdan v. Geissberger*,
   C 10-00634 SBA, 2011 WL 197957 (N.D. Cal. Jan. 14, 2011) .......................... 27

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF AUTHORITIES
### continued

**Page(s)**

*Rubin v. Green*,
    4 Cal. 4th 1187 (1993) .......................................................................................... 29

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989)........................................................................ 12, 15

*Sahara Gaming Corp. v. Culinary Workers Union Local 226*,
    984 P.2d 164 (Nev. 1999) ...................................................................................... 28

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999) .................................................................................. 26

*Smith v. Santa Rosa Democrat*,
    C-11-02411-SI, 2011 WL 5006463 (N.D. Cal. Oct. 20, 2011) ............................ 28

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) .............................................................................. 24

*Triad Sys. Corp. v. Se. Exp. Co.*,
    64 F.3d 1330 (9th Cir. 1995)................................................................................. 12

*Universal Grading Serv. v. eBay, Inc.*,
    C-09-2755 RMW, 2011 WL 846060 (N.D. Cal. Mar. 8, 2011) ........................... 28

*William A. Graham Co. v. Haughey*,
    568 F.3d 425 (3d Cir. 2009)............................................................................. 19, 20

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000)............................................................................... 12

STATUTES AND RULES

17 U.S.C. § 101 ............................................................................................................ 15

17 U.S.C. § 106 ............................................................................................................ 15

Fed. R. Civ. Proc. 56(a) ............................................................................................... 11

Cal. Bus. & Prof. Code § 17200 ............................................................................. 3, 30

Code Cal. Civ. Code § 47 ....................................................................................... 28, 29

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF AUTHORITIES
**continued**

**Page(s)**

**OTHER**

Judicial Council of Cal. Civil Jury Instructions No. 1704 (2012). ................................................ 26

155 A.L.R. 1346 .................................................................................................................................. 28

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

2    (collectively, "Oracle") submit this second motion for partial summary judgment, and

3    memorandum of points and authorities, seeking judgment in Oracle's favor on Oracle's first

4    claim for relief, on Defendant Rimini Street Inc.'s ("Rimini's") second, eighth, and ninth

5    affirmative defenses, and on Rimini's first and third counterclaims.

6    **I.       INTRODUCTION**

7           Oracle's prior motion for partial summary judgment showed that Rimini's business

8    model is based on the pervasive – and undisputed – copying of Oracle's PeopleSoft, J.D.

9    Edwards, and Siebel software application programs.  Rimini provides cut-rate support for its

10   customers using those applications through hundreds of unlicensed copies of the software in the

11   form of "environments" and by engaging in "cross-use," *i.e.*, the use of one customer's licensed

12   software to support other customers.  In opposing Oracle's prior motion, Rimini did not dispute

13   the vast scope of its copying and cross-use of Oracle's PeopleSoft, J.D. Edwards and Siebel

14   software, effectively conceding that Oracle had established a *prima facie* case of copyright

15   infringement.  Instead, Rimini contended that license agreements between Oracle and its

16   customers or, alternatively, an implied license, supposedly authorized its copying.

17          With that motion pending, Oracle brings this second motion for partial summary

18   judgment to address a different software product not covered by the first motion but related to

19   the (undisputed) vast scope of copying described in it.  Oracle also moves to address Rimini's

20   affirmative defenses based on the statute of limitations and the related doctrines of laches,

21   estoppel, and waiver, and to address Rimini's remaining counterclaims.

22          ***First,*** Oracle moves for partial summary judgment on its first claim for relief – copyright

23   infringement – concerning Oracle's Relational Database Management Software ("Oracle

24   Database").  Database software, including Oracle Database, provides a foundation for

25   applications, such as the PeopleSoft, J.D. Edwards and Siebel software at issue in the first

26   summary judgment motion.  (For example, PeopleSoft's payroll application will draw on data

27   stored in a database to calculate employee salaries, withhold income tax, and so on.)  A software

28   environment – ███████████████████████████████████████████

1

1   ████████████████████████████ – has both an application and a database component

2   installed. ████████████████████████████████████████

3   ████████████████████████████████████████████

4   ████████████████████████████████████████████

5   ████████████ Accordingly, Oracle moves for partial summary judgment on its claim of

6   copyright infringement as to those admitted copies of Oracle Database.

7   Oracle also moves for partial summary judgment on Rimini's second affirmative defense

8   of express license for these copies of Oracle Database.  Rimini ████████████████

9   ████████████████████████████████████, an online agreement that

10   software developers can enter into to use Oracle Database for non-commercial purposes in

11   developing a software application. █████████████████████████████

12   ████████████████████████████████████████████

13   ████████████ In the words of Rimini's Chris Limburg –██████████████

14   ████████████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████

18   Statement of Undisputed Facts In Support of Oracle's Second Motion for Partial Summary

19   Judgment ("SUF") 37 (emphasis supplied).  Mr. Limburg was correct –████████████

20   ████████████████████████████.  The Court should dispose of Rimini's license

21   defense on summary judgment.

22   *Second,* as to the entirety of its copyright infringement claim (not just limited to Oracle

23   Database), Oracle moves for summary judgment on Rimini's eighth and ninth affirmative

24   defenses, which invoke the statute of limitations and the doctrines of laches, waiver and estoppel.

25   Rimini asserts it cannot be liable for infringement based on acts predating January 25, 2007,

26   invoking the three-year statute of limitations for copyright infringement.  However, that statute

27   of limitations begins running only when Oracle knew or should have known that Rimini was

28   engaged in copyright infringement, and Oracle had no notice of copyright infringement as of

2

1    January 25, 2007.  ██████████████████████████████████████.  And in this

2    litigation, Rimini claims Oracle had no basis to believe Rimini was engaged in illegal activity

3    even as late as March 2010.  Rimini cannot take a contrary position to avoid summary judgment

4    on its eighth and ninth affirmative defenses.

5           *Third*, Oracle moves for summary judgment on Rimini's two remaining counterclaims –

6    Count One (Defamation, Business Disparagement and Trade Libel) and Count Three (Unfair

7    Competition - Cal. Bus. & Prof. Code § 17200).[1]  Both counterclaims rely on three statements

8    that Rimini contends Oracle employees made either to the press, an industry analyst or a

9    customer.  ██████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12          Rimini conducted no discovery at all on these claims.  Now, with discovery closed, it

13   cannot carry its burden of proof at trial on either counterclaim.  First, Rimini, a limited purpose

14   public figure, has no admissible evidence to prove that Oracle made any of the alleged

15   statements with actual malice and the actual evidence is to the contrary.  Second, the statements

16   were true.  Third, Rimini has no admissible evidence to prove that Oracle made one of the three

17   alleged defamatory statements because Rimini has made no attempt to identify the alleged

18   speaker or the contents of that statement.  Fourth, the fair reporting privilege absolutely protects

19   at least one statement.  Finally, with respect to its trade libel claim, Rimini has no evidence of

20   special damages.

21   **II.    STATEMENT OF FACTS**

22          This motion concerns three distinct sets of facts:  (a) facts concerning Rimini's copying

23   and use of Oracle's database software; (b) facts relating to Rimini's affirmative defenses of

24   statute of limitations and laches; and (c) facts relating to Rimini's counterclaims based on alleged

25   defamation.  Each of these matters is discussed in turn below.

26

27   _____

28   [1] The Court previously dismissed Rimini's counterclaim for copyright misuse.  *See* Dkt. No. 111 at 8:10-11.

3

1  **A.      Facts Related to Rimini's Copying and Use of Oracle Database**

2            **1.      Copying Pervades Rimini's Business**

3      Oracle showed in its prior motion for partial summary judgment that Rimini has engaged

4  in wholesale copying of Oracle's copyrighted software and support materials.  Dkt. No. 237.

5  Rimini provides maintenance services to licensees of Oracle's enterprise software applications.

6  Rimini uses software purportedly obtained for its customers to create working copies, or

7  "environments," that it keeps on its own servers.  Dkt. No. 280 [SUF Response] at No. 4. ███

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████"  This promise has lured away

12 more than 300 Oracle customers.

13           **2.      Oracle Owns and Licenses Oracle Database**

14 ███████████████████████████████████████████████████████

15 ████████████████████.  SUF 8.  The database provides a foundation for the application,

16 which retrieves, uses and stores data in the database.  Oracle Database is an industry-leading

17 database tool – a large and very complex product comprising millions of lines of code that is the

18 result of creative efforts of thousands of developers, and billions of dollars in research and

19 development.  ████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████.  SUF 9.

22     This motion concerns six copyrighted versions of Oracle Database.  Plaintiff Oracle

23 International Corporation owns all six copyrights.  SUF 1.

24     Oracle primarily licenses Oracle Database to its customers through the Oracle License

25 and Service Agreement ("OLSA").  The OLSA permits paying customers to use Oracle Database

26 subject to certain limitations, such as that ████████████████████████████████

27

28

1    ██████████ SUF 3.[2]  In addition, Oracle makes copies of Oracle Database available from the

2    Oracle Technology Network ("OTN") website to users who agree to the terms of the Developer

3    License.  *See* Appendix of Exhibits In Support of Oracle's Second Motion For Partial Summary

4    Judgment ("Appendix"), Ex. 8 (screenshots); Declaration of Manu Pradhan In Support of Second

5    Motion for Partial Summary Judgment, ¶ 10.  Unlike the OLSA, the Developer License allows

6    application developers to use Oracle Database for free "only for the purpose of developing,

7    testing, prototyping and demonstrating your application," and it provides that the developer may

8    not use Oracle Database "for any commercial or production purpose."  SUF 4.

9                           **3.    Rimini's Acquisition Of Oracle Database Copies And License
10                                   Contentions**

11       Rimini admits ████████████████████████████████████████████

12   ████████████████████."  SUF 10.  These copies infringe five of the six copyrights for

13   Oracle Database at issue in this motion.  SUF 11.  (All six are infringed upon by the local

14   environments described in Section II.A.4, below.)  As confirmed by its witnesses' and retained

15   expert's testimony, ████████████████████████████████████████

16   ████████ SUF 13.

17       In discovery, when asked to identify what license authorized these copies, ████████

18   ████████████████████.  SUF 14.████████████████████████████

19   ████████████████████████████████████

20   ████████.  *Id.* ████████████████████████████

21   ████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████  SUF 15. ████████████████████

24   ████████████████████████████████.  SUF 16.

25   Seth Ravin, Rimini's founder and CEO, ████████████████████

26   ────────────────
     [2]  The parties have stipulated, and the Court has ordered, that the terms of the standard form
27   OLSAs for the years 2002 to 2010 are representative of the actual licenses Oracle entered into
     with its customers for Oracle Database.  Dkt. No. 236 at ¶¶ 4-6.  Neither party may object that
     any individual customer's Oracle Database license agreement is not in evidence.  *Id.*
28   Accordingly, in this motion, Oracle cites to the form OLSAs.

                                                    5



1   ███████████████████████████. SUF 17.███

2   ██████████████████████████████████████████

3   ████████████████████.” SUF 18.

**4. Rimini Copied Oracle Database When Creating Environments**

Rimini admits ████████████████████████████████

██████████████████████████████████████

SUF 19. ████████████████████████████

████████████████ SUF 20. █████████████████

██████████████████████████████. SUF 23.  As Rimini's

witnesses have explained,████████████████████████

████████████. SUF 24. ████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████. SUF 25.

**5. Rimini Used Oracle Database For Commercial Purposes**

██████████████████████████████████

████████████████████. SUF 30. ████████████████

██████████████████████████████████████

SUF 32.

██████████████████████████████████

███████████████████████. █████████████████████

██████████████████████████████

██████████████████████████ Dkt. No. 280 [SUF Response] at

No. 50.  As explained by Beth Lester, a Rimini 30(b)(6) witness, ████████████

██████████████████████████████████████

SUF 33. ██████████████████████████

██████████████████████████████████████

██████████████████████████████████████

6

1    ████████████████████████████████████████████

2    ██████████████████████████████████████ SUF 34.

3        ████████████████████████████████

4    ██████████████████████████████████████

5    ███████████████████████████████████████████

6    █████████. SUF 38. ████████████████████████████

7    ████████████████████████████. SUF 39.

8     **B.**     **Facts Related To Rimini's Affirmative Defenses of Statute of Limitations and Laches**

9

10         **1.**     **Oracle Had No Notice of Rimini's Unauthorized Copying Before January 25, 2007**

11      Oracle brought this action on January 25, 2010.  SUF 57.  Citing the three-year

12 limitations period set forth at 17 U.S.C. § 507(b), Rimini asserts that all of Oracle's copyright

13 claims are untimely "with respect to acts that occurred prior to January 25, 2007."  SUF 58.

14      Rimini launched its business in September 2005, focusing initially on offering support for

15 Siebel products, which it later expanded to include J.D. Edwards and PeopleSoft products.  SUF

16 61. ████████████████ ████████ ████████████████████████████

17 ██████████████████████████████████████ SUF 62. ████

18 ██████████████████████████████████

19 ███████████████████████████████████████

20 ████████████████████████████████████████████

21 ██████████████████████ SUF 63. ██████████████████████ Rimini's

22 central substantive defense in this litigation is that the actions it took to support its customers

23 were authorized by those customers' license agreements with Oracle.  SUF 64. ██████████████

24 ████████████████████████████████████████████

25 ███████████████████████████████████████████

26 ████████████████████████████. SUF 65.

27 As detailed in Oracle's first motion for summary judgment, Oracle contends that Rimini's

---

28 [3] Oracle acquired Siebel in 2006.  Dkt. No. 153 at ¶ 22.

1  customers' licenses do not authorize the specific conduct in which Rimini has engaged, such as

2  ████████████████████████████████████████████████████

3  ████. Dkt. No. 237 at 3-5 ████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████. SUF 66.

7         During the relevant time period, Oracle did not know the inner workings of Rimini's

8  business or that Rimini's representations were false.  Rimini primarily interacted with Siebel

9  (and later, Oracle) in two ways.  First, ████████████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████ SUF 67. ████████████████████████████████

14  ████████████████ on June 27, 2006, Rimini executive Dennis Chiu advised Rimini employee

15  John Whittenbarger to ████████████████████████████████████

16  ████████████████████████████ SUF 68. ████████████

17  ████████████ at least through January 25, 2007, ████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████ SUF 69.

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████. SUF 70.

24         Second, ████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████. SUF 71.  While

27  Oracle will show at trial that ████████████████████████, Rimini has

28  identified no evidence that Oracle was aware, prior to January 25, 2007, of ████████████



8

1　[REDACTED]

2　[REDACTED]

3　[REDACTED]. SUF 72.

4　　　　Further, until the extensive discovery in this action revealed the truth, Rimini repeatedly

5　claimed – falsely – that it did not engage in illegal practices such as cross-use of Rimini

6　software.  Rimini alleged in a pleading that as late as March 2009 and March 29, 2010, when

7　Oracle employees allegedly made defamatory statements, Oracle had "no basis to believe in . . .

8　[the] illegality of Rimini Street's business practices."  SUF 73.  [REDACTED]

9　[REDACTED]

10　[REDACTED]

11　[REDACTED]  SUF 74.  Likewise, in a pleading filed on June 16, 2011, Rimini asserted

12　that "clients' Oracle Software and Support Materials are not physically co-mingled together" and

13　that a central "'library' of Oracle's intellectual property 'to support its present and prospective

14　customers'" has "never existed at Rimini Street."  SUF 75.  Only after discovery revealed the

15　falsity of this assertion did Rimini concede that it did co-mingle different customer software

16　together and that it did use such a "library of Oracle's intellectual property" for years at Rimini

17　Street.  SUF 76.

18　　　　**C.**　　　**Facts Related To Rimini's Counterclaims Based On Alleged Defamation**

19　　　　Rimini bases its counterclaims on three alleged defamatory statements made by Oracle

20　employees between March 2009 and March 2010 regarding Rimini's illegal business practices

21　and theft of Oracle's intellectual property.

22　　　　***Statement 1:***  [REDACTED]

23　[REDACTED]

24　[REDACTED]

25　[REDACTED]."  SUF 77.  In discovery, Oracle asked

26　Rimini to identify the actual contents of the alleged statement to Ms. Phelan and to identify the

27　Oracle employee who allegedly made the statement.  Rimini's May 18, 2011 supplemental

28　response to that interrogatory, which Rimini admits contains all "the information it currently

9

1    has," identifies no speaker or statement.  SUF 79.  Rimini made no effort to obtain that

2    information in discovery.  Rimini did not depose Ms. Phelan.  SUF 80.  Rimini has propounded

3    no written discovery about this statement and has asked no witnesses about it in deposition.

4    SUF 80-82.

5        **Statement 2:**  ███████████████████████████████████

6    ████████████████████████████  SUF 83.  ███████████████████

7    ███████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11   ████████████████████████████████████████████████."  *Id.*

12   Ms. Hellinger believed her statement to be true and had no doubt as to its truthfulness.  SUF 84.

13   Rimini has no evidence to the contrary.  Rimini neither deposed Ms. Hellinger nor even

14   designated her as a custodian whose documents should be produced in this case.  SUF 85.

15   Rimini has propounded no written discovery about this statement and has asked no witnesses

16   about it in deposition.  SUF 86.

17       **Statement 3:**  ████████████████████████████████████

18   █████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████

20   ██████████"  SUF 87.  The article, in turn, quotes verbatim from Oracle's complaint in this case:

21   "'This case is about massive theft of Oracle's software and related support materials through an

22   illegal business model,' Oracle said in court papers filed Monday in federal court in Nevada."

23   *Id.*  Rimini bases its defamation claim solely on that quoted statement from Oracle's complaint.

24   SUF 88.  Mr. McLeod, whom Rimini did not depose, believed that statement accurately reported

25   the contents of Oracle's complaint and had no doubt that it did so.  SUF 90-91.  Rimini has

26   propounded no written discovery about this statement and has asked no witnesses about it in

27   deposition.  SUF 92.

28

1  III.   **LEGAL STANDARD**

2      Summary judgment is appropriate when the evidence shows that "there is no genuine

3  issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

4  Fed. R. Civ. Proc. 56(a).  "A party may move for summary judgment" on a "claim or defense" or

5  on "part of" a "claim or defense."  *Id.*

6  IV.   **ARGUMENT**

7      A.   **Rimini Infringed Oracle's Exclusive Right To Reproduce The Six Registered
8           Works Of Oracle Database At Issue In This Motion**

9      Oracle contends that the copies of Oracle Database ███████████████████████

10 ████████████████████████████████████████████████████████████████████████████████

11 ██████████████████████████████ infringe Oracle's copyrights.  To prove a *prima facie*

12 case of copyright infringement, Oracle must show (1) ownership of the relevant copyrights, and

13 (2) copying of protected expression.  *Range Rd. Music, Inc. v. E. Coast Foods, Inc*., 668 F.3d

14 1148, 1153 (9th Cir. 2012).

15          1.   **OIC Holds Exclusive Rights To Reproduce Oracle Database**

16     Rimini has stipulated that Oracle International Corporation is the owner or exclusive

17 licensee of all 100 copyrights-in-suit, including the six Oracle Database copyrights at issue in

18 this motion.  SUF 1.  Rimini has also stipulated that each of those copyrights is valid.  SUF 2.

19          2.   **Rimini Copied Protected Expression**

20 ████████████████████████████████████████████████████████████ SUF 10.

21 Creating a complete copy of installation media also creates a copy of any protected expression

22 present on that installation media.  SUF 12. ██████████████████████████████████████

23 ███████████████████████████████████████████████████████████████████

24 ████████████████████████████████. SUF 21.  An installed

25 copy of Oracle Database includes copies of substantial portions of the source code and related

26 components of the underlying Oracle Database software.  SUF 22.

27

28

1   This evidence ███████████████████████████████████████

2   proves the copying of protected expression.  *See, e.g.*, *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d

3   1330, 1335 (9th Cir. 1995) (prima facie case of copyright infringement where defendant was

4   "copying [plaintiff's] entire [computer] programs" in order to provide software service and

5   maintenance to plaintiff's software customers); *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d

6   511, 517-19 (9th Cir. 1993) (affirming summary judgment of infringement where defendant

7   copied plaintiff's software into computer memory to provide competing software maintenance

8   services, and used unlicensed copies at defendant's headquarters).

9   **B.      Rimini Has No Express License Defense To These Copies**

10   Express license is an affirmative defense.  *Worldwide Church of God v. Philadelphia*

11   *Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000).  Only the copyright owner has rights

12   "to do and to authorize" the activity enumerated in section 106 of the Copyright Act.  17 U.S.C.

13   § 106.  The infringer bears the initial burden of identifying a license that might apply.  *See*

14   *Bourne v. Walt Disney Co.* 68 F.3d 621, 631 (2d Cir. 1995); *Michaels v. Internet Entm't Group,*

15   *Inc.*, 5 F. Supp. 2d 823, 834 (C.D. Cal. 1998).  If a relevant license has been identified, the

16   copyright owner can overcome the license defense by showing the infringer's conduct exceeded

17   the scope of what the license authorized.  *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d

18   1150, 1156 (9th Cir. 2006).  "The license must be construed in accordance with the purposes of

19   federal copyright law," and "[c]hief among these purposes is the protection of the author's

20   rights."  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989).  Therefore, "copyright

21   licenses are assumed to prohibit any use not authorized."  *Id*.  To the extent consistent with

22   federal copyright policy, state law rules of contract interpretation apply.  *Id*.

23   ████████████████████████████████████████████

24   ████████████.  SUF 14.  ███████████████████████.  SUF 7.  Thus, the Court

25   should interpret the terms in those licenses "based on their ordinary and popular sense, unless a

26   technical sense or special meaning is given to them by their usage."  *Northrop Grumman Corp.*

27   *v. Factory Mut. Ins. Co.*, 563 F.3d 777, 783 (9th Cir. 2009) (internal quotation marks omitted).

28   If the meaning of a contract term is disputed, the court must decide whether that term is

12

1 ambiguous, or "reasonably susceptible" to more than one interpretation. *Dore v. Arnold*

2 *Worldwide, Inc.*, 139 P.3d 56, 61 (Cal. 2006). "If it is not, the case is over." *Id.*

3              **1.**       **The Developer License Does Not Authorize Rimini's Copies**

4                   **a.**       **Rimini Uses Oracle Database For A Commercial Purpose**

5       Oracle offers the Developer License for free to encourage developers to prototype

6 applications that will run on Oracle Database. SUF 4. Since Database is one of Oracle's major

7 software products, the scope of this free license is necessarily limited. The Developer License

8 authorizes the use of Oracle Database for specifically identified initial stages of developing an

9 application – "*only* for the purpose of *developing*, *testing*, *prototyping*, and *demonstrating* your

10 application, and not for any other purpose." *Id.* (emphasis supplied). It precludes the free use of

11 Oracle Database "for any commercial purpose" beyond that initial development. *Id.* And, in

12 recognition that software development continues even after a product is released commercially,

13 the Developer License provides that the user may not "*continue* to develop your application" on

14 Oracle Database "*after* you have used it for any . . . commercial purpose . . . without securing an

15 appropriate license from us, or an Oracle reseller." SUF 6 (emphasis supplied). In other words,

16 once the developer has used his application for a commercial purpose, he then has to pay for a

17 license for Oracle Database and can no longer operate under the free Developer License.

18       Rimini's use of Oracle Database falls outside the Developer License because Rimini uses

19 Oracle Database for commercial purposes. ████████████████████████████████

20 ████████████████████████" SUF 26. ████████████████████████████

21 ████████████████████████████████████████████████████████

22 SUF 27. ████████████████████████████ SUF 28. ██████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████. SUF 31. ██████████████████████████████████

25 ████████████████████████████████████████████████. SUF 35.

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████ SUF 36.

13

1    Rimini has commercialized its use of Oracle Database █████████████████

2    ████████████████████.  This is not what the *free* Developer License authorizes.  Instead,

3    Rimini is obligated to *pay for* an appropriate license for Oracle Database, just as regular

4    customers that use Oracle Database to run their businesses do.  And Rimini has admitted this.

5    Chris Limburg, ████████████████████████████ explained that ████████████████

6    █████████████████████████████████████:

7

8           ████████████████████████████████████████

9

10   SUF 37.

11          No jury could reasonably conclude from this evidence that Rimini does not use Oracle

12   Database for a "commercial purpose." ████████████████████████████████

13   █████████████████████████████████████████████████████████████

14   █████████  SUF 29.  Accordingly, Rimini's reliance on the Developer License for its express

15   license defense fails.

16                   **b.     Rimini Does Not Use Oracle Database To Develop Its Own
                              Applications**
17

18          As noted, the Developer License authorizes use of Oracle Database "only for the purpose

19   of developing, testing, prototyping, and demonstrating *your application*, and not for any other

20   purpose."  SUF 4 (emphasis supplied).  Rimini's use of Oracle Database is outside the scope of

21   this license grant as well.

22          Rimini contends its conduct is authorized because it ██████████████████████

23   █████████████████████████████████████████████████████████████

24   █████████████████████████████████████e."  SUF 40.  ████████

25   █████████████████████████████████████████████████

26   █████████████.  SUF 41.  Further, the Developer License authorizes the use of Oracle

27   Database "only for developing . . . *your* application."  SUF 4 (emphasis supplied).  "You" and

28   "your" is defined to mean the individual or entity that wishes to use the programs from Oracle –

14



1   in this case, Rimini.  SUF 5.  ███████████████████████████████████

2   ████████████████████████.  SUF 42.  ████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████"  SUF 43; *see also* 17 U.S.C. §§ 101, 106(2).

6       "[C]opyright licenses are assumed to prohibit any use not authorized."  *S.O.S.*, 886 F.2d

7   at 1088.  ████████████████████████████████████████████████████████

8   █████████ the Developer License prohibits ██████████████████████.  Rimini's

9   express license defense therefore fails.

10              2.      **The OLSA Does Not Authorize Rimini's Copies**

11                  a.      **Rimini Acquired Oracle Database Pursuant To The Developer**
12                          **License, Not The OLSA**

13   ██████████████████████████████████████████████████████

14   ████████████████████████████████ in its interrogatory responses Rimini posits a post-hoc

15   legal argument ████████████████████████████████████████████████████

16   ████████████████████████.  SUF 14.  ███████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████.  Appendix, Ex. 2 at Art. C.

19       As the party asserting the license defense, Rimini bears the initial burden of identifying

20   the relevant license.  *Bourne*, 68 F.3d at 631; *Michaels*, 5 F. Supp. 2d at 834.  Rimini cannot

21   sustain this burden as to the OLSA.  As explained in Section II.A.3, ████████████████

22   ████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ██████.  SUF 16-18, 25.  The OLSA is irrelevant; it has nothing to do with these copies.

28

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 █████████████████████████████████████████████

4 ███. SUF 44, 46-47. Until late in 2011, Rimini did not provide support for customers on

5 Oracle Database. SUF 45. ████████████████████████████████

6 ██████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████

9 ████████████████████████████████████████

10 █████████████████████████████████████

11 ████████ SUF 46. ████████████████████████████

12 ████████████████████████████████████████████████

13 █████████████. SUF 47. Accordingly, Rimini's may not rely on the OLSAs to defend any of

14 its █████████████████ copies.

        b.     **Rimini Did Not Use Oracle Database Solely For Its Customers' Internal Business Operations**

17     Finally, even if the OLSA did apply, it would not authorize Rimini's infringing copies of

18 Oracle Database. Similar to the licenses at issue in Oracle's prior summary judgment motion,

19 the OLSA grants the right to use Oracle Database ████████████████████████

20 ████████████████████████." SUF 3. This is an unambiguous statement that the

21 licensee may use Oracle Database software only for itself. *See MAI Sys.*, 991 F.3d at 517 & n.3.

22 However, Rimini engaged in cross-use of Oracle Database. ████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████

25 ████████████████████████████████████████

26 ██████████████████████████████████████

27 [4] As the Court knows from Oracle's first motion for partial summary judgment, Oracle maintains
that its licenses with its customers for the application software do not permit the customers to
28 provide Rimini with a copy of the software for installation on Rimini's systems.

1 ███████████████████████████████████████████████

2 ████████. SUF 48. ████████████████████████████████

3 ███████████████████████████████████. SUF 49.  Even if it acquired a

4 particular copy of Oracle Database for a specific customer – which it did not – it did not use

5 those copies solely for the customer's internal business operations.

6        For example, ████████████████████████████████████

7 ███████████████████████████████████████████████ SUF 50.

8 █████████████████████████████████████████

9 ████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 █████████████████████████████████ SUF 51-54. ██████████████

14 █████████████████████████████████████████

15 ██████. SUF 55-56.  Visually, this ██████████ is as follows:



24 SUF 50-56.

25        Likewise, ████████████████████████████████

26 ████████████████████████████████████████

27 █████████████████████████████████████████

28 ███████████████████████

17

1    Accordingly, Rimini does not have an express license defense under the OLSA ██

2    ████████████████████████████████████████████████████████████

3    ██████████████████████

4    **C.    Oracle's Copyright Claims Are Timely**

5    Rimini's eighth affirmative defense asserts the statute of limitations, and its ninth

6    affirmative defense asserts "laches, estoppel and waiver," arguing that Oracle improperly

7    delayed in bringing its claims.  Dkt. No. 153 at pp. 26-27.  Copyright claims must be

8    "commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  In this Circuit,

9    "the three-year clock begins upon discovery of the infringement."  *Polar Bear Productions, Inc.*

10   *v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) *opinion amended on denial of reh'g*, No. 03-

11   35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004).  This case was filed on January 25, 2010.

12   SUF 57.  Accordingly, Oracle's claims are timely unless Rimini proves that Oracle knew or

13   should have known of the infringement prior to January 25, 2007.[5]

14   Oracle served Rimini an interrogatory requesting that Rimini "[i]dentify all facts that

15   support" Rimini's statute of limitations defense.  SUF 59.  Rimini's response identifies no

16   specific evidence, but instead states generally that Oracle "had or should have had knowledge

17   that Rimini was in business and competing with Oracle, that it was accessing and downloading

18   materials from Oracle's systems on behalf of its clients, that it was receiving delivery of Oracle

19   software, and that it was providing software support services, including updates and patches."

20   SUF 60.  As detailed below, even if Oracle had known all of these facts before January 25, 2007

21   (which Rimini has not shown), they are still legally insufficient to put Oracle on notice of

22   Rimini's infringement, particularly in light of Rimini's false assurances that it would comply

23   with Oracle's intellectual property rights and applicable license agreements.

24

25

26

27   [5] Rimini's interrogatory response states expressly that its statute of limitations defense is raised
     only "with respect to acts that occurred prior to January 25, 2007."  SUF 58.  Accordingly, there
28   is no dispute that the defense has no application to Rimini's conduct on or after that date.

18

1. **There Is No Genuine Dispute That Oracle Lacked Notice of Rimini's Infringement Prior to January 25, 2007**

Rimini can prevail on its statute of limitations defense only by showing that Oracle had notice of Rimini's infringement more than three years before filing. Because Oracle lacked notice before January 25, 2007, Rimini's defense is barred as a matter of law.

Rimini's proof must focus on what Oracle actually knew. "It makes little sense, then, to bar damages recovery by copyright holders who have no knowledge of the infringement, particularly in a case like this one, in which much of the infringing material [was] in the control of [Rimini]." *Polar Bear*, 384 F.3d at 706-07 (holding limitations period commenced upon actual discovery, and that plaintiff could recover damages for infringements occurring more than three years before commencement of lawsuit). Rimini must show that Oracle actually knew of Rimini's infringement (which Rimini does not allege) or that, based on what it did know, Oracle unreasonably failed to discover the infringement. *See, e.g.*, *id.* at 706-07 (finding no "chargeable" knowledge of infringement before actual discovery).

Knowledge of activity that is not, on its face, unlawful – such as mere competition – does not put a plaintiff on notice. *Garcia v. Coleman*, C-07-2279 EMC, 2008 WL 4166854, at *7 n.2 (N.D. Cal. Sept. 8, 2008) (mere participation in an industry is "not enough to establish chargeable knowledge").

Here, in determining whether Oracle had the requisite knowledge, the starting point for analysis is Rimini's written assurances, ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ SUF 63. In cases such as this one, where the defendant expressly assures the plaintiff it is not violating the plaintiff's intellectual property rights, it is reasonable for the plaintiff to await actual discovery of infringement before bringing its claims. For example, in *William A. Graham Co. v. Haughey*, 568 F.3d 425, 432 (3d Cir. 2009), the plaintiff was on notice of "storm warnings" of infringement, including knowledge that the defendant was competing against plaintiff and that it was in possession of copyrighted

19

1    material.  But the court held that despite those warnings, it was reasonable for the plaintiff to

2    delay filing suit because the defendant had "repeatedly agreed to respect Graham's rights to its

3    intellectual property."  *Id.* at 439-41; *see also Polar Bear*, 384 F.3d at 704, 707 (holding it was

4    reasonable that plaintiff did not discover infringement where defendant expressly "agreed not to

5    produce the tape"); *C.A. Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 362-63 (E.D.N.Y.

6    2008) ("[E]ven if it can be said that [plaintiff's] 2001 letter showed an inkling of suspicion of

7    infringement, the defendant's actions reasonably worked to allay CA's concerns. . . .  The Court

8    finds that . . . the plaintiffs reasonably waited to file suit until they were more certain of the

9    existence of possible infringement."); *Bridge Publications, Inc. v. Vien*, 827 F. Supp. 629, 634

10   (S.D. Cal. 1993) (granting summary judgment for plaintiffs where evidence showed that

11   plaintiffs had been "assured that defendant had not distributed or disclosed [copyrighted]

12   materials").

13          Despite broad-ranging discovery from Oracle in this case, including more than a million

14   pages of documents produced from 55 Rimini-selected custodians, Rimini has failed to identify

15   any evidence that Oracle was unreasonable in failing to discover Rimini's infringement prior to

16   January 25, 2007.  Rimini's assurances that it was complying with Oracle's intellectual property

17   rights and the terms of applicable licenses eliminate any possible dispute that Oracle was

18   unreasonable.  *See William A. Graham Co.*, 568 F.3d at 439-41; *Polar Bear*, 384 F.3d at 704.

19   Even setting aside that fact, knowledge that Rimini was in the business of providing third-party

20   support is insufficient to show that Oracle should have concluded Rimini was violating the law.

21   *See, e.g.*, *Garcia*, 2008 WL 4166854, at *7 n.2.  Rimini's reference to the shipment of software

22   media to Rimini's address and Rimini's downloading of material from Oracle websites is also

23   insufficient.  Rimini has cited no evidence that Oracle was aware that Rimini was engaged in

24   such conduct prior to January 25, 2007, let alone knowledge that Rimini was acting in violation

25   of Oracle's intellectual property rights by installing software on Rimini's local computer

26   systems, using software obtained for one customer to support a different customer, or

27   downloading material to which a client was not authorized.  Accordingly, there is no evidentiary

28

1   basis for Rimini's defense.  *See, e.g.*, *Bean v. John Wiley & Sons, Inc.*, CV 11-08028-PCT-FJM,

2   2012 WL 1078662, at *3 (D. Ariz. Mar. 30, 2012).

3           To the contrary, Rimini has alleged in pleadings to this Court that Oracle did not have

4   any basis whatsoever up through March 2010 to believe that Rimini was infringing.  SUF 73.

5   ████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████  it told this

7   Court in pleadings as late as June 2011 that "clients' Oracle Software and Support Materials are

8   not physically co-mingled together" and that a central "'library' of Oracle's intellectual property

9   'to support its present and prospective customers'" has "never existed at Rimini Street."  SUF

10   74-75.  Rimini cannot maintain its position that Oracle did not have any knowledge of

11   infringement in 2010, but also argue that Oracle should have known as early as January 2007

12   that Rimini was infringing, even as Rimini continued to misrepresent its efforts to protect

13   Oracle's intellectual property to ████████████  the Court.  Indeed, it was only the thorough

14   discovery efforts in this case that fully exposed the falsity of Rimini's statements.

15           **2.        Rimini's Ninth Affirmative Defense Fails for the Same Reason**

16           In an attempted end run around the statutory period, Rimini alleges in its ninth

17   affirmative defense that Oracle's copyright claim is barred by laches, waiver, and estoppel, citing

18   the same general factual support as with its statute of limitations defense:  Oracle's failure to file

19   suit sooner.  *See* Dkt. No. 153 at pp. 26-27.  However, laches[6] should not act in this case as an

20   escape valve for a failed statute of limitations claim.  To prevail on a laches defense, Rimini

21   "must prove that (1) [Oracle] delayed in initiating the lawsuit; (2) the delay was unreasonable;

22   and (3) the delay resulted in prejudice" to Rimini.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, No.

23   10-55834, 2012 WL 3711706, at *3 (9th Cir. Aug. 29, 2012).

24   _____

25   [6] Rimini's reliance on waiver and estoppel to circumvent the statute of limitations likewise fails.
     The mere failure to bring suit cannot support a claim that Oracle "intended to relinquish its
     rights" nor provide sufficient grounds for estoppel.  *See, e.g.*, *Novell, Inc. v. Weird Stuff, Inc.*,

26   C92-20467 JW/EAI, 1993 WL 16458729, at *13 (N.D. Cal. Aug. 2, 1993) ("[plaintiff's] failure
     to act, without more, is insufficient evidence of [its] intent to waive its right to claim

27   infringement"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197,
     1225 n.23 (C.D. Cal. 2007) (rejecting argument that "estoppel can result from Plaintiff's silence

28   and inaction").

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

1    Rimini's laches defense fails because Oracle did not delay in filing this lawsuit.  If a

2   claim for copyright infringement is brought within the statute of limitations there is no delay and

3   defendant's claim of laches must fail as a matter of law unless the defendant proves sufficiently

4   "unusual" circumstances.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001); *see*

5   *also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (holding in

6   trademark case that "[i]f a plaintiff files suit within the applicable period of limitations for his

7   claim, there is a strong presumption that laches does not bar the claims"); *Novell, Inc. v. Unicom*

8   *Sales, Inc.*, C-03-2785 MMC, 2004 WL 1839117, at *5-*7 (N.D. Cal. Aug. 17, 2004) (applying

9   "strong presumption" that laches defense does not apply to copyright claim if plaintiff filed suit

10   within the limitations period).

11    Only in the most extreme cases can filing within the statutory period still be considered a

12   sufficient delay to permit a laches defense.  For example, in *Danjaq* the owner of rights to the

13   original James Bond screenplay brought a copyright infringement claim against the producers of

14   eighteen of the Bond movies, upon re-release of those movies on DVD.  263 F.3d at 948-49.

15   While the owner asserted its claim within three years of the release of the DVDs, the district

16   court granted summary judgment on the basis of laches.  *Id.* at 950.  The Ninth Circuit affirmed,

17   finding that the re-released material was identical to the original infringing work and that

18   operation of the statute would permit the lawsuit, even though as many as thirty-six years had

19   elapsed since the release of the original work.  *Id.* at 954.  It reasoned that to reject the defense in

20   such "unusual" circumstances – where the writer sat idle as Bond became "a cinematic icon and

21   a huge box office success" over decades – would "render [laches] a spineless defense."  *Id.* at

22   949, 953-54; *see also Petrella*, 2012 WL 3711706, at *2-*4 (permitting laches defense based on

23   plaintiff's eighteen-year delay in filing suit after discovering she held rights to the Oscar-winning

24   film *Raging Bull*).

25    Absent such extreme circumstances, where a plaintiff files its infringement claim within

26   the statutory period, laches must be rejected.  *See, e.g.*, *Bangkok Broad. & T.V. Co., Ltd. v. IPTV*

27   *Corp.*, 742 F. Supp. 2d 1101, 1116 (C.D. Cal. 2010) (finding no delay where plaintiff filed

28   within three years of discovery); *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 08-CV-

1   2307-H POR, 2010 WL 3718859, at *5 (S.D. Cal. Sept. 20, 2010) (rejecting laches defense for

2   "acts that took place within the three years immediately before the commencement of the

3   action"); *Bigfoot Ventures, LLC v. Compania Mexicana de Aviacion, S.A. de C.V.*, 08-CV-1357

4   BEN (JMA), 2010 WL 2985832, at *4 (S.D. Cal. July 23, 2010) (granting summary judgment

5   for plaintiff against laches defense in trademark case).

6         The facts of this case do not fit within the narrow exception to the general statute of

7   limitations rule.  Unlike *Petrella* and *Danjaq*, less than three years passed between Oracle's

8   discovery and lawsuit, and no similar extraordinary circumstances justify laches.  *See Petrella*,

9   2012 WL 3711706, at *3; *Danjaq*, 263 F.3d at 949.  Here, there was only a single statutory

10   period, which began when Oracle discovered Rimini's infringing conduct.  Since the clock

11   started for both the equitable and statutory periods at the same time and there was no

12   extraordinary delay, it would be inequitable to bar Oracle's claim brought within the statutory

13   period.  Thus, Oracle's motion for summary judgment as to Rimini's ninth affirmative defense

14   should be granted.

15        **D.**    **Rimini Lacks Admissible Evidence To Support Its Counterclaims**

16         Finally, the Court should grant summary judgment on Rimini's counterclaims for (a)

17   defamation, business disparagement and trade libel[7] and (b) unfair competition.  The undisputed

18   evidence demonstrates that Rimini cannot meet its burden of proof at trial with respect to any of

19   three alleged defamatory statements upon which it bases those claims.  First, Rimini has no

20   evidence that any of the statements were made with actual malice.  Second, even if it did, none

21   of the statements was false.  Third, Rimini has no evidence that Oracle even made the first

22   statement.  Fourth, the fair reporting privilege absolutely protects the third statement.  Fifth, with

23   respect to its trade libel claim, Rimini has no evidence of special damages.  Finally, because

24

25   _____

26   [7] Rimini conflates two distinct torts – defamation and trade libel (also known as business or
product "disparagement").  *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d

27   496, 504 (Nev. 2009); *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 549
(1985).  Rimini's counterclaim does not reveal which cause of action it intends to assert, so this

28   motion addresses both.

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

1  Rimini's unfair competition claim rests entirely on its defamation allegations, that claim falls

2  with its defamation claim.

3        **1.**    **As To Statements 1-3, Rimini Cannot Demonstrate Actual Malice**

4        Rimini is a "limited purpose public figure."  As a result, to succeed on its defamation

5  claim, Rimini must prove – ***by clear and convincing evidence*** – that Oracle made its statements

6  with actual malice (i.e., with knowledge of falsity or in reckless disregard of the truth).  *Gertz v.*

7  *Robert Welch, Inc.*, 418 U.S. 323, 334-37 (1974).  Rimini's trade libel claim also requires proof

8  of actual malice, regardless of whether Rimini is a "limited purpose public figure."  *Melaleuca,*

9  *Inc. v. Clark*, 66 Cal. App. 4th 1344, 1364-65 (1998); *Clark County*, 213 P.3d at 504.  Rimini has

10  no admissible evidence from which a jury could reasonably infer actual malice.  Therefore, its

11  defamation and trade libel claims fail as a matter of law.

12        **a.**    **Rimini Must Prove Actual Malice**

13        The Court decides, as a matter of law, whether a plaintiff in a defamation action is a

14  limited purpose public figure.  *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ("Whether

15  (and to what extent) a person is a public figure is a matter of law for the court to decide.");

16  *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1070 (C.D. Cal. 2002) (same; finding

17  on summary judgment that plaintiff was public figure); *Jesinger v. Nevada Fed. Credit Union,*

18  CV-S-90-195-HDM (LRL), 1992 WL 672236, *2 (D. Nev. Mar. 27, 1992) (finding on summary

19  judgment that plaintiffs were public figures); *see also Khawar v. Globe Int'l*, 19 Cal.4th 254, 264

20  (1998); *Bongiovi v. Sullivan*, 122 Nev. 556, 572 (2006).  Here, Rimini frequently makes public

21  comments – including statements to the press – about the legality of third-party support and its

22  own conduct.  SUF 93-101.  By those actions, Rimini voluntarily injects itself into a public

23  controversy and renders it a limited purpose public figure as to the legality of its business

24  practices.  *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005) ("The limited purpose

25  public figure is an individual who voluntarily injects him or herself or is drawn into a specific

26

27

28

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

1  public controversy, thereby becoming a public figure on a limited range of issues."); *Pegasus v.*

2  *Reno Newspapers, Inc.*, 57 P.3d 82, 91 (Nev. 2002) (same).[8]

3  **b.     Rimini Cannot Carry Its Burden Of Proving Actual Malice By**

4  **Clear And Convincing Evidence**

5       A statement is published with actual malice when made "with knowledge that it was false

6  or with reckless disregard of whether it was false or not."  *New York Times Co. v. Sullivan*, 376

7  U.S. 254, 280 (1964).  "Reckless disregard" in this context means that the defendant "entertained

8  serious doubts as to the truth of his publication" or acted with a "high degree of awareness of . . .

9  probable falsity."  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667, 688 (1989)

10  (citations omitted).  *See also Melaleuca*, 66 Cal. App. 4th at 1364-65; *Nevada Ind. Broad. Corp.*

11  *v. Allen*, 664 P.2d 337, 344 (Nev. 1983).

12       As to Statement 1, Rimini does not know who made the alleged "insinuation" to Pat

13  Phelan of Gartner and has conducted no discovery about the statement at all, including as to the

14  identity or state of mind of that person.  SUF 78-82; *see also* Section IV.D.3, below.  Thus,

15  Rimini cannot prove the unidentified speaker acted with actual malice.  *See Keenan v. Int'l*

16  *Assoc. of Machinists & Aerospace Workers*, 632 F. Supp. 2d 63, 73 (D. Me. 2009) (actual malice

17  standard "is . . . properly assessed with respect to particular statements and individual speakers").

18       As to Statements 2 and 3, Rimini cannot meet its burden of proving that Ms. Hellinger or

19  Mr. McLeod acted with actual malice – let alone meet that standard by clear and convincing

20  evidence.  Ms. Hellinger, whom Rimini did not depose, believed her statement that Rimini had

21  engaged in "massive theft" of Oracle's intellectual property to be true and had no doubt as to its

22  truthfulness.  SUF 84-86.  Mr. McLeod, whom Rimini also did not depose, believed the

23  *Information Week* article he forwarded truthfully reported the contents of Oracle's complaint in

24  this case and he had no doubts that it did so.  SUF 90-92.  Having elected not to depose either

25  ───────────────

26  [8] Rimini is a substantial third-party support provider, has a large number of customers, high revenue, analyst coverage, and strong growth.  SUF 102.  Rimini's financial and market

27  significance also render it a limited purpose public figure for purposes of discussing its business. *Ampex*, 128 Cal. App. 4th at 1577 (economically significant companies may become public

28  figures); *Pegasus*, 57 P.3d at 92 (businesses that "actively advertise and seek commercial patronage" may become public figures).

25

1  Ms. Hellinger or Mr. McLeod, or conduct *any other discovery* aimed at these statements, Rimini

2  can offer no admissible evidence, much less clear and convincing evidence, that either Ms.

3  Hellinger or Mr. McLeod acted with actual malice.[9]  SUF 85-86, 91-92.  The Court should grant

4  summary judgment based on Rimini's inability to come forward with evidence to carry its

5  burden at trial.

6  **2.  As To Statements 1-3, The Alleged Statements Are True**

7  Even if Rimini could establish actual malice (it cannot), the alleged statements are true,

8  which is a complete defense.  *Smith v. Maldonado*, 72 Cal. App. 4th 637, 646 (1999); *see also*

9  *Pegasus*, 57 P.3d at 88.  While a defendant bears the burden of establishing the truth of the

10  statement, it is sufficient to prove "true the *substance* of the charge, irrespective of slight

11  inaccuracy in the details, 'so long as the imputation is substantially true as to justify the "gist or

12  sting" of the remark.'"  *Smith*, 72 Cal. 4th at 646-47 (citations omitted) (emphasis in

13  original); *see also Pegasus*, 57 P.3d at 88 & n.17.

14  Oracle's first summary judgment motion establishes that Rimini engaged in "massive

15  theft" of Oracle's intellectual property by repeatedly making and cross-using multiple copies of

16  entire enterprise software applications in support of multiple customers over time.[10]  Thus, Ms.

17  Hellinger's statement to that effect, as well as any alleged "insinuations" to Ms. Phelan that

18  Rimini's business practices were illegal, are true.  Mr. McLeod's "statements," which consist of

19  a quote from Oracle's complaint in this case, are also true.  The portion of the forwarded article

20  upon which Rimini relies states: "'This case is about massive theft of Oracle's software and

21  related support materials through an illegal business model,' Oracle said in court papers filed

22  Monday in federal court in Nevada."  SUF 87-88.  That statement is true:  Oracle did say in its

---

23  [9] Even if Rimini is not deemed a limited purpose public figure, it still would have to prove

24  negligence.  *See Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 398 (2001);
   *Bongiovi*, 122 Nev. at 572.  For the reasons stated above, Rimini can offer no admissible

25  evidence to meet that standard either.  Having failed to conduct any discovery on the alleged
   defamatory statements, or the state of mind of the speakers, Rimini can point to no evidence that

26  would establish that the speakers failed to use reasonable care to determine the truth or falsity of
   their statements.  *See, e.g.,* Judicial Council of Cal. Civil Jury Instructions No. 1704 (2012).

27  [10] That motion did not contain all of Oracle's evidence of Rimini's theft of Oracle's intellectual
   property.  If the Court entertains any doubts about the "massiveness" of Rimini's theft, Oracle

28  could supply many hundreds of additional examples if given relief from the motion page limits.

26

1   complaint filed in this Court in January 2010 that "[t]his case is about massive theft of Oracle's

2   software and related support materials through an illegal business model."  SUF 89.

3        Because truth is a complete defense, the Court should grant summary judgment on

4   Rimini's defamation and trade libel claims.

5              **3.    As To Statement 1, Rimini Cannot Prove That Oracle Made Any**

6                   **Defamatory Statement To Pat Phelan**

7        In order to prevail on its defamation and trade libel claim, Rimini must establish Oracle

8   actually published a false statement of fact to a third party.  *See Polygram Records,* 170 Cal.

9   App. 3d at 549; *Clark County,* 213 P.3d at 503.  To do that, Rimini must at least come forward

10  with admissible evidence that specifically identifies:  (1) the alleged defamatory statements; and

11  (2) who made them.  *See, e.g., Rashdan v. Geissberger,* C 10-00634 SBA, 2011 WL 197957, at

12  *9 (N.D. Cal. Jan. 14, 2011) (dismissing defamation claim where plaintiff failed to identify any

13  particular allegedly false statement of fact); *First Adv. Background Servs. Corp. v. Private Eyes,*

14  *Inc.,* 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (dismissing plaintiff's trade libel claim for

15  failing to identify speaker or actual statement made, among other things); *Films of Distinction,*

16  *Inc. v. Allegro Film Prods., Inc.,* 12 F. Supp. 2d 1068, 1081 n.8 (C.D. Cal. 1998) ("In the Ninth

17  Circuit, a product defamation or trade libel claim must be based on specific statements, and

18  '[t]he defamatory character of the language must be apparent from the words themselves.'"

19  (quoting *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 822 (9th Cir. 1995))).

20       With respect to Statement 1, Rimini can do neither.  Rimini cannot identify any alleged

21  Oracle speaker or actual, specific statement.  Rimini never sought discovery from Ms. Phelan,

22  never asked an Oracle witness about any alleged statements to Ms. Phelan, and never served any

23  written discovery aimed at uncovering any specific statement or speaker.  SUF 80-81.  Rimini

24  has no admissible evidence to support its contention that an Oracle employee made false

25  statements of fact about Rimini to Ms. Phelan.  The Court should grant partial summary

26  judgment or judgment on the pleadings with respect to Statement 1.

27

28

ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; SUPPORTING
MEMORANDUM OF POINTS & AUTHORITIES

1

### 4.     As To Statement 3, The Fair Reporting Privilege Protects James McLeod's Email

2

3      Even if Mr. McLeod's email (Statement 3) was false (it is not), it still is not actionable

4   because the fair reporting privilege absolutely protects it.  Under Nevada law, the fair reporting

5   privilege is an absolute privilege and extends to "any person who makes a republication of a

6   judicial proceeding from material that is available to the general public." *Sahara Gaming Corp.*

7   *v. Culinary Workers Union Local 226,* 984 P.2d 164, 166-67 (Nev. 1999) (granting summary

8   judgment where defendant circulated letter that republished allegations from publicly-filed

9   complaint).  California law similarly protects a "fair and true report in, or a communication to, a

10  public journal, of (A) a judicial . . . proceeding, or (D) of anything said in the course thereof . . .

11  ." Cal. Civ. Code § 47(d); *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1434 (9th Cir. 1992);

12  *Microsoft Corp. v. Yokahama Telecom Corp.*, 993 F. Supp. 782, 784 (C.D. Cal. 1998).  The

13  decisive issue in applying the privilege is whether the publication fairly reports the judicial

14  proceeding or document; whether the facts contained in the official record are actually true is

15  irrelevant.  *See Sahara Gaming*, 984 P.2d at 168; *Smith v. Santa Rosa Democrat*, C-11-02411-SI,

16  2011 WL 5006463 at *3 (N.D. Cal. Oct. 20, 2011); *see also* 155 A.L.R. 1346 ("[T]he report of a

17  judicial proceeding must be correct; it matters not that allegations in the proceedings are false.").

18      The *Information Week* article that Mr. McLeod forwarded is a fair and accurate report of

19  Oracle's complaint because it quotes it precisely.  Thus, it is absolutely privileged under Nevada

20  and California law.  The Court should grant partial summary judgment as to Statement 3.

21

### 5.     On Its Trade Libel Claim, Rimini Cannot Prove Special Damages

22      Trade libel requires proof of special damages.  *See Erlich v. Etner*, 224 Cal. App. 2d 69,

23  73-74 (1964); *Clark County*, 213 P.3d at 504.  Rimini must therefore present evidence showing it

24  suffered some pecuniary loss.  *See id.*  In California, it "may not rely on a general decline in

25  business arising from the falsehood, and must instead identify particular customers and

26  transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv.,*

27  *Inc.*, 120 Cal. App. 4th 90, 109 (2004); *see also Universal Grading Serv. v. eBay, Inc.*, C-09-

28  2755 RMW, 2011 WL 846060, at *9 (N.D. Cal. Mar. 8, 2011).  In Nevada, "if the plaintiff

28

1   cannot show the loss of specific sales attributable to the disparaging statement, the plaintiff may

2   show evidence of a general decline of business.  Nonetheless, the general decline of business

3   must be the result of the disparaging statements and the plaintiff must eliminate other potential

4   causes." *Clark County*, 213 P.3d at 505 (citations omitted).  Rimini cannot meet the standard

5   under California or Nevada law.

6       First, the only specific customer Rimini has identified as a recipient of any alleged

7   defamatory statement is Liz Claiborne (recipient of Statement 3).  SUF 103.  However, neither

8   Statement 3 nor any other statement deprived Rimini of that customer.  ███████████████

9   ████████████████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████████████████

11  ██████████████████████████████.  SUF 104.  Therefore, Rimini's trade libel claim must

12  fail under California law.

13      Second, Rimini has no evidence of a "general decline in business" sufficient to meet its

14  burden under Nevada law.  ████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████

16  ████████████████████  SUF 105.  To the extent Rimini relies on a slowing of its sales growth

17  rate to show a "general decline in business," Rimini cannot show, as it must, that the slowing

18  was caused by any alleged defamatory statement, nor can Rimini rule out other causes.  ████

19  ████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████  SUF 106.  Rimini's trade

21  libel claim thus fails under Nevada law.  And to the extent that Rimini's defamation claim

22  merely asserts a claim that the lawsuit has harmed Rimini, the litigation privilege bars that claim

23  anyway.  *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) ("communications with 'some relation'

24  to judicial proceedings have been absolutely immune from tort liability by the [litigation]

25  privilege") (citing Cal. Civ. Code § 47(b)); *Clark County*, 213 P.3d at 502 (same).

26

27

28

**6.     Rimini's Unfair Competition Claim Fails With Its Defamation And Trade Libel Claim**

Rimini's claim for violation of California's Unfair Competition Law ("UCL") rests entirely on its defamation allegations.  SUF 107.  Accordingly, if the Court grants summary judgment as to any part of Rimini's defamation and trade libel counterclaim, it should also grant summary judgment to the same extent on Rimini's UCL claim.

**V.     CONCLUSION**

For the foregoing reasons, the Court should grant Oracle's motion for partial summary judgment on its first claim for relief, on Rimini's second, eighth, and ninth affirmative defenses, and on Rimini's first and third counterclaims.

DATED:  September 14, 2012

Bingham McCutchen LLP

By:     _____/s/ Geoffrey M. Howard_____
Geoffrey M. Howard
geoff.howard@bingham.com
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc.
and Oracle International Corp.