# EXHIBIT 7
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1          UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3    ------------------------------

4    ORACLE USA, INC., a Colorado  )

5    corporation; ORACLE AMERICA,  )

6    INC., a Delaware corporation; )

7    and ORACLE INTERNATIONAL       )

8    CORPORATION, a California      )

9    corporation,                   )

10           Plaintiffs,            )

11       vs.                        ) Action No.

12   RIMINI STREET, INC., A NEVADA ) 2:10-CV-00106-LRH-PAL

13   CORPORATION; SETH RAVIN, AN    )

14   INDIVIDUAL,                    )

15           Defendants.            )

16   ------------------------------

17

18      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

19

20      Videotaped Deposition of GEORGE LESTER,

21      taken at 222 East Third Street, Charlotte,

22      North Carolina, commencing at 9:07 a.m.,

23      Friday, November 11, 2011, before Nancy J.

24      Martin, CSR No. 9504.

25   PAGES 1 - 250

Transcript Redacted

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   APPEARANCES OF COUNSEL:
2
3   FOR THE PLAINTIFF:
4
5   BINGHAM MCCUTCHEN, LLP
6   BY:  THOMAS S. HIXSON, ESQ.
7       MANU PRADHAN, ESQ.
8   Three Embarcadero Center
9   San Francisco, California  94111
10  (415) 393-2312
11  thomas.hixson@bingham.com
12  manu.pradham@binghma.com
13
14  FOR THE DEFENDANT:
15
16  SHOOK, HARDY & BACON LLP
17  BY:  ROBERT RECKERS, ESQ.
18  600 Travis Street
19  Suite 1600
20  Houston, Texas  77002
21  (713) 227-8008
22  rreckers@shb.com
23
24  ALSO PRESENT:
25      JAMES DOWNEY, VIDEOGRAPHER

Page 2

1   CHARLOTTE; NORTH CAROLINA; FRIDAY, NOVEMBER 11, 2011;
2       9:07 A.M.
3       THE VIDEOGRAPHER:  Good morning.  We are on
4   the record at 9:07 a.m. on November 11, 2011.  This is
5   the beginning of the videotaped deposition of George   09:07:34
6   Lester.  My name is James Downey, here with our court
7   reporter, Nancy Martin.  We are here from Veritext
8   National Deposition and Litigation Services.  This
9   deposition is being held at the Hilton Garden City
10  Center in the City of Charlotte, North Carolina.  The   09:07:48
11  caption of the case is Oracle USA, Incorporated,
12  et al., v. Rimini Street, Incorporated, et al.  Case
13  No. 2:10-CV-0106-LRH-PAL.
14      Please note that audio and video recording
15  will take place unless all parties agree to go off the   09:08:08
16  record.  Microphones are sensitive and may pick up
17  whispers, private conversations, and cellular
18  interference.
19      At this time, will counsel please identify
20  themselves for the record, after which the court   09:08:19
21  reporter will swear in the witness.
22      MR. HIXSON:  Tom Hixson for plaintiffs.
23      MR. PRADHAN:  Manu Pradhan for the
24  plaintiffs.
25      MR. RECKERS:  Rob Reckers; Shook, Hardy &   09:09:11

Page 3

1   Bacon for the defendants.
2
3       GEORGE LESTER,
4   having been first duly sworn,
5   was examined and testified as follows:   09:09:23
6
7       EXAMINATION
8   BY MR. HIXSON:
9   Q.  Will you please state your name for the
10  record.   09:09:25
11  A.  George Lester.
12  Q.  And you've had your deposition taken before;
13  is that correct?
14  A.  That is correct.
15  Q.  In the TomorrowNow case?   09:09:30
16  A.  That is correct.
17  Q.  And you understand that today you are under
18  an oath to tell the truth, and even though we're in a
19  conference room, it's the same obligation to tell the
20  truth that you would have as if you were testifying in   09:09:40
21  a court of law?
22  A.  I do.
23  Q.  So that we have a record, I need you to give
24  audible answers using words such as "yes" or "no"
25  rather than nodding or saying, "uh-huh" or "huh-uh."   09:09:52

Page 4

1   Do you understand that?
2   A.  I do.
3   Q.  From time to time, your attorney may make
4   objections to certain of my questions, but unless he
5   instructs you not to answer, you're still obligated to   09:10:01
6   give your best answer.  Do you understand that?
7   A.  I do.
8   Q.  After this deposition you will have the
9   opportunity to make changes to the transcript, but I
10  will have the opportunity to comment on any changes   09:10:13
11  that you may make.  Do you understand that?
12  A.  I do.
13  Q.  Is there any reason why you can't testify
14  accurately today?
15  A.  No.   09:10:21
16  Q.  When did you begin working at Rimini Street?
17  A.  It was either late October or early November
18  of 2006.
19  Q.  Where did you work before Rimini Street?
20  A.  I worked at TomorrowNow.   09:10:44
21  Q.  For how long?
22  A.  I'm not exactly sure.  I think three years.
23  Q.  So approximately 2003 to 2006; is that right?
24  A.  I'm not sure.  I'm not sure.
25  Q.  At least two years?   09:11:22

Page 5

Pages 2 to 5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  A. At least two years.
2  Q. In general terms, what was your
3  responsibilities at TomorrowNow?
4  A. At TomorrowNow I was in charge of the
5  environments, and I was in charge of the technical   09:11:34
6  PSEs.
7  REPORTER MARTIN: "C"?
8  THE WITNESS: PSE.
9  BY MR. HIXSON:
10  Q. And where did you work before TomorrowNow?   09:11:51
11  A. I worked at PeopleSoft.
12  Q. For how many years approximately?
13  A. Five years.
14  Q. Did you work by Seth Ravin at TomorrowNow?
15  A. I did not.   09:12:00
16  Q. Did you know him at TomorrowNow?
17  A. No.
18  Q. Are there any other people who are currently
19  at Rimini Street who you worked with when you were at
20  TomorrowNow?   09:12:12
21  A. Say that again.
22  Q. Are there any people who are currently
23  working at Rimini Street who you worked with when you
24  were at TomorrowNow?
25  A. Yes.   09:12:22

Page 6

1  Q. Who are they?
2  A. My wife, Beth Lester. Krista Williams. Doug
3  Baron. I'm sure there's others. I'm just not
4  recalling who they all are. I know Seth was there
5  too, but I didn't really know Seth at TomorrowNow.   09:13:00
6  Q. Did anyone recruit you to come work at Rimini
7  Street?
8  A. No.
9  Q. How did you learn about Rimini Street?
10  A. Seth came and visited my wife, and I inquired   09:13:12
11  to Seth about opportunities at Rimini Street.
12  Q. And did he describe for you what your role
13  could be at Rimini Street?
14  A. He did.
15  Q. And what did he describe it to you as?   09:13:23
16  A. Vice president of IT.
17  Q. And in general terms, what did he describe
18  that as being?  Like what would your responsibilities
19  be?
20  A. The infrastructure of the company. The   09:13:37
21  servers, the storage, the desktops and laptops that
22  the company uses.
23  Q. What is your job title now?
24  A. Vice president of IT.
25  Q. How long have you had that job title?   09:13:55

Page 7

1  A. July of 2010.
2  Q. What was your title before then?
3  A. It was group vice president of PeopleSoft,
4  development documentation and IT.
5  Q. For how long were you in that role?   09:14:34
6  A. 11 months.
7  Q. And prior to that role, what was your job
8  title?
9  A. Vice president of IT.
10  Q. And did you have that title from when you   09:14:52
11  started at Rimini Street until approximately August
12  2009?
13  A. That is -- that is correct. Actually, it
14  was -- yes, August of 2009. Yes.
15  Q. Did your responsibilities change when you   09:15:18
16  moved from being the VP of IT to the group VP for
17  PeopleSoft development documentation in IT?
18  A. Yes.
19  Q. And how did that change?
20  A. I was tasked with an objective of increasing   09:15:30
21  the quality of our updates.
22  Q. Are you referring to PeopleSoft tax and
23  regulatory updates?
24  A. That is correct.
25  Q. Were there any other changes in your   09:15:49

Page 8

1  responsibilities?
2  A. After that objective was met, I was tasked
3  with proving out a staff augmentation model using
4  offshore resources.
5  Q. And where are those resources located?  In   09:16:20
6  what countries?
7  A. India.
8  Q. Any other changes to your job
9  responsibilities?
10  A. No.   09:16:29
11  Q. And when you became the group vice president
12  for IT in July of 2010, were there any changes in your
13  responsibilities at that time?
14  A. Yes. At that time, I was just focused solely
15  on IT.   09:16:48
16  Q. So was that a narrowing of your focus?
17  A. Correct.
18  Q. Did you recruit any former TomorrowNow
19  employees to work at Rimini Street?
20  A. No.   09:17:04
21  Q. When you started at Rimini Street, who
22  reported to you?
23  A. Dan Slarve. I believe it was Dan Slarve.
24  I'm not sure if Doug Baron reported to me or not at
25  that time.   09:17:37

Page 9

Pages 6 to 9

Veritext National Deposition & Litigation Services
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  client archives. So our customer's intellectual
2  property is siloed, and IT is responsible for granting
3  and restricting access to that software.
4      Q. And do customer archives contain Oracle
5  software updates that were downloaded for particular   09:23:49
6  customers?
7      A. We refer to them as "client archives," and
8  they are specific to a customer, correct.
9      Q. With respect to whether environments are
10 being used appropriately or built appropriately, is   09:24:04
11 there a particular person who is in charge of IP
12 compliance issues related to that?
13     A. I believe that responsibility would be shared
14 by on-boarding and the product line managers.
15     Q. Do you have any responsibilities with respect   09:24:44
16 to whether the environments are being built or used
17 properly?
18     A. I don't have any direct control or management
19 over that process.
20     Q. Have you ever, during your time at Rimini   09:25:09
21 Street, had responsibility for seeing whether software
22 environments are being built or used properly?
23     A. Yes.
24     Q. When did you have that responsibility?
25     A. The first 8 to 12 weeks when I was managing   09:25:23

Page 14

1  the environments.
2      Q. So is it your testimony that after early
3  2007, it was no longer your responsibility to
4  determine whether software environments were being
5  built or used properly?   09:25:45
6      A. I believe it was Krista Williams that was the
7  environments manager at that point, and that
8  responsibility would go to her.
9      Q. And it would not go to you; correct?
10     A. Correct.   09:25:56
11     Q. And did that remain her responsibility
12 through the present time?
13     A. No.
14     Q. Whose responsibility is it now?
15     A. Now I believe it's Ed Berde.   09:26:25
16     Q. And when did the responsibilities shift from
17 Williams to -- Berde, is it?
18     A. I don't know. It is Berde. I don't know if
19 it was when he first came on or -- I believe after
20 John Royce left it was -- Ed Berde was given that   09:26:41
21 responsibility.
22     Q. Can you put a year on that?
23     A. I can't recall.
24     Q. Do you know if it was before or after 2010?
25     A. I can't recall.   09:26:58

Page 15

1      Q. So there was a time for 8 to 12 weeks when
2  you -- in late '06 and early '07 when you managed the
3  environments team, and then after that, Krista
4  Williams managed that team; is that correct?
5      A. Correct.   09:27:17
6      Q. And so for the time period when Krista
7  Williams was managing the environment development
8  team, as between yourself and her, who would generally
9  be more familiar with the details of exactly how
10 environments were being built or created or used?   09:27:37
11     A. Say that again, please.
12     Q. Turning to the time period after Krista
13 Williams took over responsibility for managing the
14 environment team, as between yourself and her, who
15 would have, in general, a greater understanding of how   09:27:59
16 the environments were being built or created or used?
17     MR. RECKERS: Let me object. Calls for
18 speculation.
19     You can answer.
20     THE WITNESS: Yeah. I'm not sure I really --   09:28:22
21 say that again one last time.
22     MR. HIXSON: Let me phrase it differently.
23     Q. After Krista Williams took over managing the
24 environment development team, you continued to have
25 some knowledge and understanding about how   09:28:35

Page 16

1  environments were being built; is that correct?
2      A. I believe I did up until she reported to
3  Dennis Chiu, which was I think somewhere in mid 2007.
4      Q. And after mid 2007, did you continue to have
5  an understanding about how environments were being   09:29:00
6  built or created?
7      A. Very little. Very little involvement.
8      Q. Would you agree that after mid 2007, Krista
9  Williams had a greater understanding than you did
10 about how environments were being built or created?   09:29:18
11     A. I would -- I would agree to that, yes.

Redacted

Page 17

Pages 14 to 17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Veritext National Deposition & Litigation Services
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 78 to 81

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 82 to 85

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 86 to 89

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 106 to 109

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 110 to 113

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 114 to 117

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 118

Page 120

Page 119

Page 121

Pages 118 to 121

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Pages 134 to 137

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



Page 142

Page 144

Page 143

Page 145

Pages 142 to 145

Highly Confidential - Attorneys' Eyes Only

1    I, NANCY J. MARTIN, CSR No. 9504, do hereby

2  certify:

3    That the foregoing deposition testimony of GEORGE

4  LESTER was taken before me at the time and place

5  therein set forth, at which time the witness, in

6  accordance with CCP Section 2094, was placed under

7  oath and was sworn by me to tell the truth, the whole

8  truth, and nothing but the truth;

9    That the testimony of the witness and all

10  objections made by counsel at the time of the

11  examination were recorded stenographically by me, and

12  were thereafter transcribed under my direction and

13  supervision, and that the foregoing pages contain a

14  full, true and accurate record of all proceedings and

15  testimony to the best of my skill and ability.

16    I further certify that I am neither counsel for

17  any party to said action, nor am I related to any

18  party to said action, nor am I in any way interested

19  in the outcome thereof.

20    IN WITNESS WHEREOF, I have subscribed my name

21  this 16th day of November, 2011.

22

23



24

25

_____

NANCY J. MARTIN, CSR No. 9504

Page 245

Veritext National Deposition & Litigation Services
866 299-5127