# EXHIBIT 56

SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. *(pro hac vice)*
Eric Buresh, Esq. *(pro hac vice)*
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers, Esq. *(pro hac vice)*
600 Travis Street, Suite 1600
Houston, Texas   77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

LEWIS AND ROCA LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
WAllen@LRLaw.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

*Attorneys for Defendants*
*RIMINI STREET, INC. and SETH RAVIN*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC. , a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANT RIMINI STREET INC.'S OJBECTIONS  AND RESPONSE TO PLAINTIFF ORACLE USA, INC., AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S EIGHTH SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Rimini Street, Inc. ("Rimini Street") provides the following responses to Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.'s ("Oracle" or "Plaintiff") Eighth Set of Interrogatories.

## GENERAL OBJECTIONS

Rimini Street incorporates its objections to Plaintiffs' previous sets of Interrogatories.

Rimini objects to Oracle's definition of "Admitted Backup Copy" as vague, ambiguous, overbroad, and incoherent, particularly for its inclusion of numerous other definitions by reference, which often overlap, conflict, or are confusing and incoherent when read together or by themselves.

Rimini further objects to Oracle's definition of "Admitted Virtual Machine Copy" to the extent it is vague, ambiguous, and incoherent, particularly for its inclusion of numerous other definitions by reference, which often overlap, conflict, or are confusing and incoherent when read together or by themselves.

Rimini objects to Oracle's definition of "Identified Rimini Computer System(s)" as overly broad and unduly burdensome to the extent it includes Rimini devices irrelevant to this matter as well as third party devices.

Rimini objects to Oracle's definition of "Installation Media" to the extent it is vague, ambiguous and overbroad. Particularly, Rimini objects to the term "similar item" as vague, ambiguous, and overbroad.

## RESPONSES AND SPECIFIC OBJECTIONS

**INTERROGATORY NO. 32:**

For each Environment Identified in your responses to Interrogatories No. 20 and 21, Identify each admitted backup copy of the Environment that is or was present on identified Rimini computer system(s) or virtual machines.

**ANSWER:**

Rimini Street objects to this Interrogatory as overly broad and unduly burdensome as it seeks information relating to hundreds of separate environments. Rimini Street further objects to this Interrogatory to the extent it seeks information that is not maintained by Rimini in the ordinary course of its business or information that is not within the possession, custody, or control of Rimini Street. Rimini Street further objects to this interrogatory on the grounds that it would require Rimini

Street to create a compilation, abstract, or summary from documents that Rimini Street has produced or will produce to Plaintiffs. Rimini further objects to this Interrogatory to the extent "admitted backup copy" is vague, ambiguous, overbroad, and incoherent.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Rimini Street identifies Exhibits 1A-1, 1B-1, and 1C-1 to its Supplemental Responses to Oracle's Fifth Set of Interrogatories, served on September 8, 2011, which include each Environment Identified in Rimini's responses to Interrogatories No. 20 and 21. Specifically, Exhibit 1A-1 includes information related to the PeopleSoft environments, while Exhibits 1B-1 and 1C-1 include information related to the J.D. Edwards and Siebel environments, respectively. Environment copies may be identified by examining these exhibits. For instance, Exhibit 1A-1 indicates the Build Source for each listed environment in its third column. A first environment listed in Exhibit 1A-1 that has a second environment listed as its "Build Source" in its third column, for example, indicates that the first environment, at one point in time, included a copy of any environment contained on the second environment at the time first environment was built using the second environment as its build source.

Rimini further responds that, pursuant to Federal Rule of Civil Procedure 33(d), Rimini has produced and/or will produce documents from which the answer to this Interrogatory can be ascertained. Specifically, Rimini has produced its logs of environment back up and logs reflecting restoring of such environment backups. *See* RSI00910592 - RSI00910593.

Rimini further states that, after the initial creation of a virtual machine for a client, Rimini Street's policy is to create environment back-ups using vRanger software. These back-up copies are maintained at Rimini's Charlotte data center for disaster recovery purposes and are listed on the document produced as RSI06802774.

**INTERROGATORY NO. 33:**

For each Environment identified in your responses to Interrogatories No. 20 and 21, identify each admitted virtual machine copy of the Environment that is or was present on identified Rimini computer system(s) or virtual machines.

**ANSWER:**

Rimini Street objects to this Interrogatory as overly broad and unduly burdensome as it seeks information relating to hundreds of separate environments. Rimini Street further objects to this Interrogatory to the extent it seeks information that is not maintained by Rimini in the ordinary course of its business or information that is not within the possession, custody, or control of Rimini Street. Rimini Street further objects to this interrogatory on the grounds that it would require Rimini Street to create a compilation, abstract, or summary from documents that Rimini Street has produced or will produce to Plaintiffs. Rimini further objects to this Interrogatory to the extent "admitted backup copy" is vague, ambiguous, overbroad, and incoherent.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Rimini Street identifies Exhibits 1A-1, 1B-1, and 1C-1 to its Supplemental Responses to Oracle's Fifth Set of Interrogatories, served on September 8, 2011, which include each Environment Identified in Rimini's responses to Interrogatories No. 20 and 21. Specifically, Exhibit 1A-1 includes information related to the PeopleSoft environments, while Exhibits 1B-1 and 1C-1 include information related to the J.D. Edwards and Siebel environments, respectively. Environment copies may be identified by examining these exhibits. For instance, Exhibit 1A-1 indicates the Build Source for each listed environment in its third column. A first environment listed in Exhibit 1A-1 that has a second environment listed as its "Build Source" in its third column, for example, indicates that the first environment, at one point in time, included a copy of any environment contained on the second environment at the time first environment was built using the second environment as its build source.

Rimini further responds that, pursuant to Federal Rule of Civil Procedure 33(d), Rimini has produced and/or will produce documents from which the answer to this Interrogatory can be ascertained. Specifically, Rimini has produced its logs of environment back up and logs reflecting restoring of such environment backups. *See* RSI00910592 - RSI00910593.

Rimini further states that, after the initial creation of a virtual machine for a client, Rimini Street's policy is to create environment back-ups using vRanger software. These back-up copies are

maintained at Rimini's Charlotte data center for disaster recovery purposes and are listed on the document produced as RSI06802774.

**INTERROGATORY NO. 34:**

For each Environment identified in your responses to Interrogatories No. 20 and 21, identify each instance where a copy of the Environment was sent to any person who was not a Rimini Street employee at the time that the copy was sent.

**ANSWER:**

Rimini Street objects to this interrogatory to the extent it seeks information that is not maintained by Rimini in the ordinary course of its business or information that is not within the possession, custody, or control of Rimini Street.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds that, having conducted a reasonable search and investigation, Rimini is not aware of any instances where a Rimini Street employee sent a copy of an Environment to any person who was not a Rimini Street employee at the time that the copy was sent.

**INTERROGATORY NO. 35:**

Identify all actions you have taken to create backups of Environments, virtual machines, client archives, client archives in progress ("CAIP") and other software and support materials that are or were present on identified Rimini computer system(s), including the frequency with which you created backups, the locations where the backups were stored, your policies and procedures relating to backups, and your use of Backup Exec, eXspress, esxRanger, NetBackup, Veeam and vRanger.

**ANSWER:**

Rimini Street objects to this Interrogatory as overly broad and unduly burdensome in seeking the identification of "all actions" and to the extent it seeks thousands of pieces of discrete information relating to hundreds of separate environments, virtual machines, client archives, and CAIPs. Rimini also objects to the term "backups" to the extent it is vague, ambiguous and overbroad. Rimini Street further objects to this Interrogatory to the extent it seeks information that is

not maintained by Rimini in the ordinary course of its business or information that is not within the possession, custody, or control of Rimini Street. Rimini Street further objects to this interrogatory on the grounds that it would require Rimini Street to create a compilation, abstract, or summary from documents that Rimini Street has produced or will produce to Plaintiffs.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Rimini Street utilizes commercial software to create and maintain backups of its Environments, virtual machines, client archives in progress ("CAIP") and client archives. Rimini Street principally uses Symantec Backup Exec to create and maintain its backups. Rimini Street also uses vRanger, and used its predecessor esxRanger, to create backups of virtual machines, and Vision Solutions Double-Take to replicate certain material to its Charlotte server.

Rimini Street's backup infrastructure consists of two data centers located in Fremont, CA and Charlotte, NC. Rimini Street's standard backup schedule consists of nightly incremental and differential backups starting at 5:00 PM Pacific Monday through Thursday, weekly full backups starting at 5:00 PM Pacific on Friday and continues throughout the weekend, and monthly full backups starting at 5:00 PM Pacific on the first weekend of each month. The daily, weekly, and monthly backups are retained for one week, three weeks, and 30 years respectively.

The environments that reside in Fremont are, once initially created, backed-up, at least partially, using Symantec Backup Exec. In particular, the PS_home and database components are backed-up. The partial environment backups are written to tape, and consist of a daily differential, weekly full, and monthly full backup. Rimini Street's backup schedule for these environments deviates from the standard schedule to the extent that the weekly full backups are performed at 7:00 PM every weekend.

In addition, the environments are replicated to Charlotte, NC for disaster recovery purposes, as set forth in Rimini's responses to Oracle's Interrogatories Nos. 32 and 33.

The CAIPs that reside on the Fremont server are backed-up using Symantec Backup Exec. The CAIP backups are written to tape, and consist of a daily differential and weekly full backup.

The client archives that reside on the Fremont server, when initially completed, are fully backed up to tape using Symantec Backup Exec. Theses backup tapes are then shipped and restored to a server in Charlotte.

**INTERROGATORY NO. 36:**

Identify all actions you took in March 2009 and April 2009, including any use of automated download tools, to acquire software and support materials for, or on behalf of, Erdman Company or First Service Networks.

**ANSWER:**

Rimini Street objects to this Interrogatory as overly broad and unduly burdensome in seeking the identification of "all actions." Rimini also objects to the term "actions" to the extent it is vague, ambiguous and overbroad. Rimini Street further objects to this Interrogatory to the extent it seeks information that is not maintained by Rimini in the ordinary course of its business or information that is not within the possession, custody, or control of Rimini Street. Rimini Street further objects to this interrogatory on the grounds that it would require Rimini Street to create a compilation, abstract, or summary from documents that Rimini Street has produced or will produce to Plaintiffs.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Using Customer Support Identifiers supplied by Erdman Company, Rimini Street registered to receive login credentials on Oracle's support website. Between April 13 and 19, 2009, Rimini Street, using login credentials supplied to Rimini Street by Oracle, accessed Oracle maintained website for the purpose of manually downloading Oracle software and support material on behalf of Erdman Company. These downloads consisted of Siebel patches and documentation Erdman Company was entitled to receive under the terms of their maintenance service agreements with Oracle, which expired on April 30, 2009.

On April 21, 2009, on behalf of Erdman Company, Rimini Street submitted service request SR#3-886730631 to Oracle for physical copies of Erdman's licensed Oracle software and support material. The request was specifically made for CD media of, "all application software,

documentation, maintenance packs, and third party products" for Siebel 7.5.3, Siebel 7.5.3.15, Siebel 7.7, Siebel 7.7.2, Siebel 7.8.2, Siebel 8.0, and Siebel 8.1.  Between April 21 and 29, 2009, Oracle shipped to Rimini Street's address physical copies of Siebel software and support material for Siebel 7.8.2, Siebel 8.0, Siebel 8.1.1.0, Siebel 7.5.3, Siebel 7.5.3.15, Siebel 7.7, Siebel 7.7.2, and Siebel 7.5.2.

On March 12, 2009, Rimini Street requested and received Customer Support Identifiers from First Service Networks. Subsequently, on behalf of First Service Networks, Rimini Street submitted service request SR#3-886730631 to Oracle for physical copies of First Service Network's licensed Siebel software and support material.  In response to Rimini Street's request, Oracle made available via FTP at ftp://ftp.oracle.com/support/outgoing/SR-14240315 licensed Siebel software and support material that was no longer available as physical media. In addition to the software and support material made available to Rimini Street via FTP, between March 31 and April 7, 2009, Oracle shipped to Rimini Street's address physical media copies of Siebel software and support material for Siebel 7.5.2, Siebel 7.5.3, Siebel 7.8, Siebel 7.8.2, Siebel 8.0, and Siebel 8.1.1.

On or around March 18, 2009, on behalf of First Service Networks, Rimini Street submitted a service request to Oracle for copies of First Service Networks' licensed JD Edwards software and support material. Between April 1 and 17, 2009, in response to Rimini Street's request, Oracle shipped to Rimini Street's address physical copies of JD Edwards software and support material for JD Edwards EnterpriseOne 8.11, JD Edwards EnterpriseOne 8.12, JD Edwards EnterpriseOne 8.96, JD Edwards EnterpriseOne 8.97, JD Edwards EnterpriseOne 9.0, JD Edwards OneWorld B73.3.2, JD Edwards OneWorld Xe B73.3.3.

Utilizing Change Assistant, between April 7 and 22, 2009, Rimini Street, on behalf of First Service Network, downloaded JD Edwards software and support material that First Service Network was entitled to under the terms of their maintenance agreements with Oracle, which expired on April 30, 2009. During the same time period Rimini Street used manual download methods to download JD Edwards documentation that First Service Network was entitled to under the terms of their maintenance agreements with Oracle.

**INTERROGATORY NO. 37:**

Identify all facts that support the assertion in your Eighth Affirmative Defense that "Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations."

**ANSWER:**

Rimini Street objects to this Interrogatory as overly broad and unduly burdensome in seeking the identification of "all facts." Rimini Street objects to this Interrogatory as premature to the extent that it seeks expert opinion prior to the time for production of this information. Rimini Street objects to providing a verification of the response to Interrogatory No. 16 on the grounds and to the extent that the response requires legal conclusions.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Since shortly after Rimini Street's inception, Oracle has been aware of Rimini Street and its activities. Oracle has sent numerous letters over the years, and Rimini Street responded to each Oracle letter and repeatedly offered to meet and discuss any questions or concerns Oracle might have about Rimini Street's processes and procedures. Oracle has long been aware of Rimini Street's processes and procedures. Oracle is aware of Rimini Street's authorized possession and usage of customer licensed software because Oracle itself delivered the software to Rimini Street for hundreds of its customers. Rimini Street has made numerous offers to Oracle since September 2005 to openly and transparently review and discuss Rimini Street processes and procedures.

For instance, Siebel sent a letter to Rimini on September 26, 2005 indicating that it knew of Rimini's activities, and Rimini replied by letter of October 5, 2005 discussing its access to Siebel's systems, its provision of support services and updates, and its competitive status with Siebel. Similarly, in June 2007, Rimini Street wrote Oracle stating that Rimini Street believed Oracle's actions were anti-competitive and constituted a breach of its license agreements with its clients.

Rimini Street has also informed Oracle that, as a matter of process and procedure, Rimini Street's clients are only delivered the Oracle Software and Support Materials to which they are legally entitled.

Oracle itself directly mailed or made available to Rimini Street through authorized downloads, as an authorized agent of Oracle's licensees, copies of the clients' licensed Oracle software. Oracle and Rimini Street personnel worked closely together over the years in the software order-to-ship process for hundreds of clients. Oracle thus had knowledge that Rimini Street was in possession of such software and support materials.

Oracle had or should have had knowledge that Rimini was in business and competing with Oracle, that it was accessing and downloading materials from Oracle's systems on behalf of its clients, that it was receiving delivery of Oracle software, and that it was providing software support services, including updates and patches. Oracle has produced thousands of documents evidencing its knowledge of Rimini Street and its activities prior to the critical dates for the applicable statutes of limitations.

Rimini also identifies Oracle's Complaint, Dkt. 1, filed January 25, 2010, correspondence between itself and Oracle prior to January 25, 2008, correspondence between Oracle and Rimini clients prior to January 25, 2008, and documents evidencing Oracle's knowledge of acts that occurred prior to January 25, 2008, January 25, 2007, and January 25, 2006.

Rimini further responses as follows:

Oracle's First Claim for Relief is barred under 17 U.S.C. § 507(b) with respect to acts that occurred prior to January 25, 2007.

Oracle's Second Claim for Relief is barred under 18 U.S.C. § 1030(g) with respect to acts that occurred and for which damage was discovered prior to January 25, 2008.

Oracle's Third Claim for Relief is barred under Cal. Pen. Code § 502(e)(5) with respect to acts that occurred and for which damage was discovered prior to January 25, 2007.

Oracle's Fourth Claim for Relief is barred under Nevada Rev. Stat. 11.190(4)(b) with respect to acts that occurred prior to January 25, 2008, alternatively under Nevada Rev. Stat. 11.190(3)(a)

1    with respect to acts that occurred prior to January 25, 2007, and alternatively under Nevada Rev.
2    Stat. 11.220 with respect to acts that occurred prior to January 25, 2006.

3    Oracle's Fifth Claim for Relief is barred under Cal. Civ. Proc § 337(1) with respect to acts
4    that occurred prior to January 25, 2006.

5    Oracle's Sixth Claim for Relief is barred under Nevada Rev. Stat. 11.190(3)(c) with respect
6    to acts that occurred prior to January 25, 2007, under Cal. Civ. Proc § 339(1) with respect to acts that
7    occurred prior to January 25, 2008, and alternatively under Nevada Rev. Stat. 11.190(2)(c) with
8    respect to acts that occurred prior to January 25, 2006.

9    Oracle's Seventh Claim for Relief is barred under Nevada Rev. Stat. 11.190(2)(c) with
10   respect to acts that occurred prior to January 25, 2006, and under Cal. Civ. Proc § 339(1) with
11   respect to acts that occurred prior to January 25, 2008.

12   Oracle's Eighth Claim for Relief is barred under Cal. Bus. & Prof. Code § 17208 with
13   respect to acts that occurred prior to January 25, 2006.

14   Oracle's Ninth Claim for Relief is barred under Nevada Rev. Stat. 11.190(3)(c) with respect
15   to acts that occurred prior to January 25, 2007, and under Cal. Civ. Proc § 338(c)(1) with respect to
16   acts that occurred prior to January 25, 2007.

17   Oracle's Tenth Claim for Relief is barred under Nevada Rev. Stat. 11.190(2)(c) with respect
18   to acts that occurred prior to January 25, 2006, under Cal. Civ. Proc § 338(d) with respect to acts that
19   occurred prior to January 25, 2007, and alternatively under Cal. Civ. Proc § 339(1) with respect to
20   acts that occurred prior to January 25, 2008.

21   Oracle's Eleventh Claim for Relief is barred under Cal. Bus. & Prof. Code § 17208 with
22   respect to acts that occurred prior to January 25, 2006.

23   Oracle's Twelfth Claim for Relief is barred under Nevada Rev. Stat. 11.190(3)(d) with
24   respect to acts that occurred prior to January 25, 2007, and under Cal. Civ. Proc § 338(d) with
25   respect to acts that occurred prior to January 25, 2007.

26
27
28

**INTERROGATORY NO. 38:**

State all bases for your contention that Rimini's business is legal including: your assertion, in paragraph 2 on page 2 of your Answer and Counterclaim that it is "false" to assert that Rimini's business is an "illegal business model"; your assertion in paragraph 3 on page 2 of your Answer and Counterclaim that "Rimini Street's business processes and procedures are entirely legal"; and your assertion in paragraph 49 on page 11 of your Answer and Counterclaim that "Rimini Street's business practices are not illegal."

**ANSWER:**

Rimini Street objects to this Interrogatory as overly broad and unduly burdensome in seeking the identification of "all bases." Rimini Street objects to this Interrogatory as premature to the extent that it seeks expert opinion prior to the time for production of this information. Rimini Street objects to providing a verification of the response to Interrogatory No. 16 on the grounds and to the extent that the response requires legal conclusions. Rimini further objects to the terms "business model" and "business practices" as vague and ambiguous.

Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Rimini refers to its Answer to Oracle's Second Amended Complaint, including its answers to Oracle's First through Twelfth claim for relief, pp. 20-25, and its First through Eighteenth Affirmative Defenses, pp. 25-28. Rimini also refers to its previous Interrogatory Responses, including its responses to Oracle's Interrogatories Nos. 7, 15, 16, 29, 30, and 31.

**INTERROGATORY NO. 39:**

Identify each occasion on which you offered or provided discounted or free support services, or other consideration, to a Rimini customer in exchange for, at least in part, customer references, including the name of the customer, the nature of the consideration, and the date(s) on which Rimini's offer of or provision of consideration occurred.

**ANSWER:**

Rimini objects to the term "other consideration" to the extent it is vague, ambiguous and overbroad. Subject to and without waiver of the foregoing general and specific objections, Rimini Street responds as follows:

Cowlitz County, Washington's Support Services Agreement for PeopleSoft Products, dated August 19, 2008, provided an incentive wherein it received support services for three years for $100 per year in exchange for providing references for potential customers. This incentive recently expired, and Rimini has negotiated a new support renewal agreement with Cowlitz County.

While negotiations with other potential customers have occasionally involved possible discounts in exchange for providing references, such discussions rarely result in actual discounts to support services attributable to customer references. However, Weyerhaeuser received an approximately 10% discount in the Spring of 2011 in exchange for locking into a longer term agreement and for agreeing to take reference calls. In addition, City of Flint received a $500 dollar discount July of 2008 in light of several considerations, including the City's agreement to take reference calls.

**INTERROGATORY NO. 40:**

If your response to Plaintiff's Second Set of Requests for Admission, No. 19, is to deny the Request in whole or in part, state all bases for your denial as to each Environment.

**ANSWER:**

Subject to and without waiver of the general and objections and Rimini's objections to Plaintiff's Second Set of Requests for Admission, No. 19, Rimini states that it has admitted the substance of Requests for Admission No. 19 and, therefore, no further response is required.

Dated: November 16, 2011

                                          */s/ Robert H. Reckers*

SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq.
Eric Buresh, Esq.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com
eburesh@shb.com

Robert H. Reckers, Esq.
600 Travis Street, Suite 1600
Houston, Texas   77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the 16th of November, 2011 via email, as indicated below.

| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>FRED NORTON (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>fnorton@bsfllp.com<br>kringgenberg@bsfllp.com | BINGHAM MCCUTCHEN LLP<br>GEOFFREY M. HOWARD (*pro hac vice*)<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: 415.393.2000<br>Facsimile: 415.393.2286<br>geoff.howard@bingham.com<br>thomas.hixson@bingham.com<br>kristen.palumbo@bingham.com<br><br>ORACLE CORPORATION<br>JAMES C. MAROULIS (*pro hac vice*)<br>500 Oracle Parkway<br>M/S 5op7<br>Redwood City, CA 94070<br>Telephone: 650.506.4846<br>Facsimile: 650.506.7114<br>jim.maroulis@oracle.com |

By:   _/s/ Robert H. Reckers _____
        Robert H. Reckers.