DOMINICA C. ANDERSON (SBN 2988)
RYAN A. LOOSVELT (SBN 8550)
**DUANE MORRIS LLP**
100 N. City Parkway, Suite 1560
Las Vegas, NV  89106
Telephone: 702.868.2600
Facsimile:  702.385.6862
Email:  dcanderson@duanemorris.com
          rloosvelt@duanemorris.com

Attorneys for CedarCrestone, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants.<br><br>AND ALL RELATED COUNTER CLAIMS. | Case No.  2:10-CV-0106-LRH-PAL<br><br>**NON-PARTY CEDARCRESTONE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY PROTECTIVE ORDER, AND IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION** |

COMES NOW, non-party CedarCrestone, Inc. ("CedarCrestone"), by and through its counsel of record, Duane Morris LLP, and hereby opposes Plaintiffs Oracle USA Inc.'s, Oracle America, Inc.'s, and Oracle International  Corporation's (collectively as "Oracle" or "Plaintiffs") Motion to Modify Protective Order, and in the alternative, countermoves for a stay of the Court's order, in the unlikely event the Court grants modification, during the time CedarCrestone would file for reconsideration by the District Court Judge, as follows:

## I.    INTRODUCTION

Oracle's instant Motion to Modify Protective Order ("Renewed Motion") is nothing more than an attempt to do an "end run" around the Court's prior ruling that denied modification. Oracle's Renewed Motion misleadingly argues that, when initially denying modification, the Court

1  purportedly held all Oracle had to do to have the Protective Order modified was to file a collateral

2  lawsuit. Not true. Instead, this Court properly applied the Ninth Circuit balancing test and after

3  weighing all the factors and considerations, which included but was not limited to the fact that there

4  was no pending collateral litigation, ruled against lifting the Protective Order.

5      In the face of having lost its prior motion, Oracle is now using a complaint that it recently

6  filed against CedarCrestone in the Northern District of California (the "NDCA Action") – which

7  alleges breach of contract and copyright infringement relating to three very finite and specific

8  instances, some of which Oracle knew of before it renewed its partnership agreement with

9  CedarCrestone in *November 2011* – as a "bootstrap" to once again improperly seek a full, wholesale

10 lifting of the Protective Order and subvert the discovery proceedings in the NDCA Action. This use

11 of a sham complaint to justify a wholesale modification of a protective order, which this Court

12 *already denied,* and to try to obtain information that is irrelevant to and undiscoverable in pending

13 collateral litigation is abusive of the system and an act of gamesmanship which should not be

14 condoned. Indeed, as further explained herein, Ninth Circuit law mandates that modification of a

15 protective order should be denied where, as here, a party seeks to exploit the system and subvert the

16 limitations of discovery in the collateral proceeding.

17     Further, contrary to Oracle's argument that all it had to do to lift the Protective Order was to

18 file any kind of complaint against CedarCrestone, the Ninth Circuit test, which this Court properly

19 applied the first time, continues to weigh in favor of this Court denying modification of the

20 Protective Order.

21     First, Oracle needs to but cannot show that all of the materials it is seeking to obtain are

22 relevant to and discoverable in the NDCA Action in its current form. Oracle itself admits this fact

23 by telling this Court that it is seeking the materials to obtain permission to amend its NDCA

24 complaint. Indeed, the NDCA Action contains breach of contract and copyright infringement

25 allegations relating to *only three very finite instances,* herein referred to as (1) Tucson Unified

26 School District ("Tucson"), (2) The Oklahoma City Municipal Facilities Authority ("Oklahoma"),

27 and (3) George Weston Bakeries ("Weston Bakeries."). Instead of limiting its request for

28 modification to those specific allegations, Oracle is requesting access to a DVD containing 2.16

gigabytes of data produced and a full Rule 30(b)(6) deposition of CedarCrestone without limitation on relevance to the (1) Tucson, (2) Oklahoma, and, (3) Weston Bakeries allegations. Oracle's request is overbroad and can alone be denied based on lack of relevance and discoverability of the material sought. The lack of a showing of relevance is especially problematic given that CedarCrestone and Oracle are competitors to some extent and that many of the materials at issue contain CedarCrestone's trade secrets.

Second, CedarCrestone's reliance interest in first producing the materials in the *Rimini* Action pursuant to the Protective Order is and was very significant, unlike the case law examples cited by Oracle allowing modification. For example, CedarCrestone and Oracle even entered an additional, negotiated Stipulation that expressly incorporates the Protective Order's terms. CedarCrestone relied on the Protective Order, as well this Stipulation and its terms, when it produced the materials. This is not just a case of mere reliance on a blanket protective order (incidentally, drafted by Oracle); here, the Protective Order actually states it does not confer blanket protections.

Third, the risk of duplicative discovery in the collateral suit if the Protective Order is not modified is minimal and does not outweigh CedarCrestone's reliance interest in the Protective Order. As set forth *infra*, few, if any, of the materials Oracle is seeking to obtain by modifying the Protective Order are relevant to or discoverable in the NDCA action in its current form. Indeed, Oracle's motion – and purported need for the materials it is seeking in order to minimize duplicative discovery in the NDCA action – also is premature. There may not even be discovery in the NDCA Action if that Court dismisses Oracle's complaint in the initial responsive pleading phase. This argument is hardly academic, given that many of Oracle's claims against CedarCrestone potentially are time-barred.

Now even more clear than in the prior round of briefing, based on Oracle's own admissions in its current pleading, is that Oracle was independently aware of at least some of the activities for which it now complains well before moving to modify the Protective Order in the *Rimini* Action. Oracle also admits that it knew of some of the complained of activities before renewing its Partnership agreement with CedarCrestone in November 2011 and enticing CedarCrestone into

1  providing Rule 30(b)(6) deposition testimony through assurances that the testimony would only be

2  used in the *Rimini* Action and subject to the Protective Order and supplemental Stipulation.  Oracle

3  induced CedarCrestone into producing its confidential information under the guise of use in the

4  *Rimini* Action only, yet now has used and seeks to further use it against CedarCrestone for ulterior

5  purposes.

6  This Court denied Oracle's first attempt to modify the Protective Order.  Now, Oracle has

7  manufactured and filed a very narrow, limited complaint – based on alleged conduct it was aware of

8  from before renewing its Partnership agreement with CedarCrestone – as a basis to ask this court to

9  reconsider the Court's justifiable refusal to lift the Protective Order on a wholesale basis.  In its

10  Motion, Oracle argues that it seeks more limited materials than last time, but in reality, it requests

11  most of the same wholesale overbroad amount of information it cannot obtain in the NDCA Action,

12  i.e. the entire DVD produced by CedarCrestone in the *Rimini* action and the full Rule 30(b)(6)

13  deposition transcript and exhibits, without limitation on relevance to the (1) Tucson, (2) Oklahoma,

14  and, (3) Weston Bakeries allegations.  This is the ultimate litigation chicanery designed to subvert

15  the limitations on discovery in the NDCA Action.  It is improper under *Foltz*, and therefore Oracle's

16  motion should be denied.

17  **II.   STATEMENT OF FACTS**

18  CedarCrestone had a long-standing Partnership relationship with Oracle but the two

19  companies are also competitors.  [Dckt. No. 330, Declaration of Brian Fees, ¶3-4].  In February

20  2011, Oracle issued and served a subpoena duces tecum ("Subpoena") on CedarCrestone in the

21  *Rimini* Action.  [*Id.* at ¶8; Exhibit 2-Subpoena].  The Subpoena was void for being issued and

22  served in the wrong jurisdiction, was objectionable on many grounds, and unreasonably demanded

23  production of hundreds of thousands of documents within three weeks of service.  [*Id.* at ¶9; Dckt.

24  No. 331, Declaration of Robert T. Gill, ¶¶2, 5, Exhibit 5-Letter re: Detailed Objections].

25  Without waiving any objections, but foregoing filing motion challenges to the objectionable,

26  void Subpoena, CedarCrestone instead worked with Oracle in good faith to tailor a more reasonable,

27  non-objectionable production in response to the Subpoena.  [Dckt. No. 330, Fees Decl., ¶¶10-15;

28  Dckt. No. 331, Gill Decl., ¶¶3-10].

Oracle assured CedarCrestone many times that its production would not be used outside the *Rimini* Action, including, among others, the following instances:

- "The Order will adequately protect CedarCrestone's confidential information." [Dckt. No. 331, Gill Decl., Exh. 6-Oracle May 8, 2011 Letter, at p.5, ¶1].

- "As I [Oracle's counsel] explained in in my voicemail [to CedarCrestone's counsel], multiple earlier discussions, and my letter of May 8, 2011, the Stipulated Protective Order entered in this litigation provides adequate protection for any confidential materials produced by CedarCrestone." [*Id.*, Exhibit 7-June 22, 2011 Letter, ¶3].

- As we have told CedarCrestone multiple times, we believe the Stipulated Protective Order is adequate." [*Id.*, Exhibit 8-June 30, 2011 email, ¶2].

The Stipulated Protective Order itself provides that "The Parties acknowledge that this Protective Order does not confer blanket protections on all disclosures" and specifically limits use of designated discovery to purposes of the *Rimini* Action only:

"…Discovery Material identified as Confidential Information or Highly Confidential Information – Attorney's Eyes Only shall be used … (b) solely for the purposes of preparation for trial, trial of and/or appeal from this Action and <u>no other</u>; and (c) shall not be used by the Receiving Party <u>for any other purposes,</u> including, without limitation, any business or commercial purpose." [Dckt. No. 55, 1:8-9, 5:5-14] (emphasis added.)

CedarCrestone, Oracle, and the Rimini Defendants, also entered a supplemental Stipulation that provides:

"Disclosures and discovery in the matter captioned *Oracle USA, et al. v. Rimini Street, et al.,* 2:10-cv-00106-LRH-PAL – currently pending in the United States District Court of Nevada (the "Action") are likely to ***involve production of confidential, proprietary, or private information by non-party business competitors of the Plaintiffs and Defendants for which <u>special protection from public disclosure and from use for any purpose other than defending against this litigation</u> would be warranted*." [Dckt. No. 386-4, Stipulation] (emphasis added).

CedarCrestone eventually produced a DVD with 2.16 gigabytes of data and approximately 600 pages of documents all in direct reliance on the (1) Stipulated Protective Order in the Rimini Action, (2) the supplemental Stipulation agreed upon by Oracle, CedarCrestone, and the Rimini Defendants, and (3) in reliance upon Oracle's repeated and continuing assurances that the

CedarCrestone materials would not be used for any purpose outside the *Rimini* Action.  [Dckt. No. 330, Fees Decl., ¶¶12, 15; Dckt. No. 331, Gill Decl., ¶¶8-10].

Oracle also sought to depose a CedarCrestone company representative in this action, and Paul Simmons voluntarily appeared in good faith on behalf of CedarCrestone for deposition on December 2, 2011, again in direct reliance on the protections of the Protective Order in the *Rimini* Action, the parties' Stipulation, and Oracle's assurances.  [Dckt. No. 330, Fees Decl., ¶16]. According to the Protective Order, a party has five days to designate portions of a transcript as "Confidential," Highly Confidential," or otherwise.  [Dckt. No. 55].  However, Oracle did not immediately send the Simmons transcript to CedarCrestone, and by the time CedarCrestone received it, *Oracle* had already made the designations to it, including designating it "Highly Confidential – Attorneys' Eyes Only."  [Dckt. No. 330, Fees Decl., ¶17].

After obtaining the CedarCrestone protected materials under the guise it would not be used outside the *Rimini* Action, Oracle did just that.  Oracle asked CedarCrestone to agree to modify the Protective Order.  When CedarCrestone refused to do so, Oracle began to engage in sanctionable violations of the Protective Order by using the protected information outside the *Rimini* Action to harm CedarCrestone.

[Dckt. No. 330-Redacted Fees Decl./Dckt. No. 333-Unredacted Sealed Fees Decl., ¶18].

On or about April 19, 2012,

[*Id.* at ¶19].

[*Id.*].  On the following day, April



20, 2012,

[*Id.*].

[*Id.*].

[*Id.*].

[*Id.* at ¶20].

[*Id.*].

[*Id.*].

On or about May 8, 2012,

[*Id.* at ¶21].

[*Id.*].

[*Id.*].

Further, on or about May 7, 2012,

[*Id.* at ¶22].

[*Id.*].

[*Id.*].

On May 5, 2012,

[*Id.* at ¶23].

DM1\3340146.1

7

OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER, AND,
IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION

[*Id.*].

[*Id.*].

Oracle then filed its first Motion to Modify Protective Order on May 14, 2011. [Dckt. No. 272]. This Court denied Oracle's initial Motion. [Dckt. No. 364-Minute Order]. In denying the Motion, the Court stated that: (1) there was "no pending collateral litigation," (2) there was "nothing to avoid repetitious or duplicative discovery that wastes either of the parties' resources," (3) there was "no description of a specific intent to have a specific form of collateral litigation," and (4) that Oracle sought to lift protections "on a wholesale basis" as to all discovery provided by CedarCrestone without delineation. [Transcript, Dckt. No. 370-1, 20:17-21:3]. The Court therefore concluded that "for these reasons the motion for protective order is denied." [Dckt. No. 370-1, 21:4-5].

In response to the denial of its Motion to Modify Protective Order, Oracle first filed an Objection to Magistrate's Order requesting the District Judge reconsider Magistrate Leen's order. [Dckt. No. 369]. Oracle argued that Magistrate Leen's ruling was "clearly erroneous" and "contrary to law" for many reasons. Among Oracle's reasons, it misleadingly argued that Magistrate Leen erroneously "required" collateral litigation to be pending in order to modify a protective order, and argued the Magistrate's ruling was therefore contrary to Ninth Circuit precedent.

As CedarCrestone's Opposition to Oracle's Objection clarifies, however, the absence of pending collateral litigation was merely one of several proper Ninth Circuit considerations on which Magistrate Leen's based her decision. [Dckt. No. 377]. Oracle's Objection completely ignored the other reasons upon which Magistrate Leen relied when denying modification – including Oracle's failure to specifically identify its contemplated collateral litigation and its wholesale request to lift the protective order without delineation – in an attempt to create error where none otherwise existed. Oracle's Objection motion is still pending.

DM1\3340146.1

8

OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER, AND,
IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION

1    After losing on the Motion to Modify Protective Order, and filing its Objection to Magistrate

2    Leen's ruling, Oracle terminated its Partnership agreement with CedarCrestone on September 4,

3    2012 and filed the NDCA Action on September 5, 2012 in which it alleged copyright infringement

4    and breach of contract with respect to three limited instances of alleged conduct, the (1) Tucson, (2)

5    Oklahoma, and, (3) Weston Bakeries allegations. [Dckt No. 386-2, NDCA Complaint, ¶15]. Then,

6    Oracle filed its Renewed Motion on September 7, 2012 seeking to lift protections on the

7    CedarCrestone materials.

8    Oracle's Renewed Motion goes to great lengths to convince the Court that its newly filed

9    claims were only filed as a result of information independent of the protected materials

10   CedarCrestone produced in the *Rimini* Action pursuant to the Protective Order. However, Oracle

11   filed the NDCA Action merely as a reason to come back to this Court to try to lift protection of the

12   CedarCrestone materials.     Significantly, Oracle renewed its partnership agreement with

13   CedarCrestone in November 2011 **after** it had knowledge of at least some of the so-called

14   "independent" reasons for the NDCA Action, yet did not file the NDCA Action until it lost its first

15   Motion to Modify Protective Order.  [*See* Dckt. No. 385, Renewed Motion, 4:15-5:11; Dckt No.

16   386-2, NDCA Complaint, ¶14 (Oracle alleges the parties renewed their Agreement most recently on

17   or about November 3, 2011)].  In other words, Oracle renewed a contract it says it knew

18   CedarCrestone was allegedly breaching, but only brought suit thereon when it could not lift the

19   protections on the CedarCrestone materials from this action.

20   Once Oracle was denied the ability to lift the protections on the CedarCrestone materials in

21   the *Rimini* Action, Oracle terminated the partnership agreement so it could file suit, bring claims for

22   breach of contract and copyright infringement against CedarCrestone, and come back to this Court

23   with a sham collateral proceeding in a second attempt to lift the protections on the CedarCrestone's

24   materials.  The limited NDCA Action has been filed as a ruse in an attempt to undo the protections

25   which Oracle itself agreed to afford to the CedarCrestone materials.  The Ninth Circuit considers

26   such manipulative action as grounds to deny modification of a protective order as discussed below in

27   Section III(C).

28   ///

DM1\3340146.1

9

OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER, AND,
IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION

III.    **ARGUMENT**

A.    **Oracle Has Not Met Its Burden To Demonstrate Both Relevance And The Discoverability Of The Requested Materials In The Collateral Litigation.**

While collateral litigants may seek modification of a protective order, the Ninth Circuit firmly recognizes that "a court should not grant a collateral litigant's request for modification automatically." *Foltz v. State Farm Mutt's Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). "[T]he collateral litigant must demonstrate [1] the relevance of the protected discovery to the collateral proceedings and [2] its general discoverability therein." *Foltz*, 331 3d. at 1132.

Oracle has not and cannot meet these two requirements. Oracle's Renewed Motion admits it needs the protected information in order to amend its claims in the collateral litigation. This is a direct concession that Oracle cannot obtain the protected materials through discovery in the collateral suit, which confirms that its Renewed Motion merely is designed to subvert the discovery process in that action. Oracle does not even address the discoverability prong in its Renewed Motion, and it was not addressed in its original Motion either because there was no description of the anticipated collateral proceeding for which to determine the discoverability of the requested materials.

Oracle likewise cannot demonstrate that its overbroad request to lift the protections wholesale is relevant to the three very specific instances of conduct alleged in the NDCA Action. Again, Oracle's concession that it needs the protected discovery to amend its claims in the collateral suit demonstrates a lack of relevance to the collateral proceeding as it currently exists. "[A] showing of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding." *Foltz*, 331 3d. at 1132. But that is exactly what Oracle is attempting to so – subvert the discovery limitations in the NDCA action in order to expand the scope of that lawsuit by using materials it cannot obtain in the collateral litigation.

While Oracle appears to argue that the Court already found the requested discovery materials relevant to the anticipated collateral proceedings when the Court initially denied modification on Oracle's first Motion to Modify, this is simply not true. The Court could not have even made any such ruling because there was no action pending or any claims described at that time. Though the

Court may have suggested that the materials *potentially* could be relevant to a potential collateral proceeding, the Court actually ruled that Oracle did not sufficiently specify or describe its unfiled, contemplated collateral litigation at the time, and thus the Court could not have necessarily made such a relevancy determination to undescribed, non-existent claims.  In short, this Court should see Oracle's conduct for what it is and deny modification.  Oracle has not demonstrated and cannot demonstrate the relevance or discoverability of its requested materials to the NDCA Action.

### B.     CedarCrestone's Strong Reliance Interest Outweighs The Risk Of Duplicative Discovery In The Collateral Litigation.

Once the required showings of relevance and discoverability in the collateral proceeding is made, "before deciding to modify a protective order, the court that issued it must consider other factors." *Foltz*, 331 F.3d at 1133.  "In particular, it must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.*, *citing Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992).  While courts may generally allow the fruits of one litigation to facilitate other cases under the right circumstances, it only does so where it "advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* at 1131.

"The extent to which a party can rely on a protective order depends on the extent to which the order did reasonably induce the party to allow discovery." *Id.* at 1137, *citing Beckman*, 966 F.2d at 475.  "Among the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery … changing the ground rules later is to be avoided because protective orders that cannot be relied upon will not foster cooperation through discovery." *Id.*, *citing* Wright, Miller & Marcus §2044.1.

Oracle has repeatedly argued that CedarCrestone has no reliance interest simply because it contends the Protective Order in this action is a blanket protective order.  This argument is factually fallacious given that the Protective Order itself states that it is not a blanket order.  [Dckt. No. 55, Stipulated Protective Order, 2:9].  Likewise, the *Foltz* court reasoned that there is typically less reliance on a stipulated protective order in general because the parties have not made a good cause showing of need for protection on a document by document basis. *Foltz*, 331 F.3d at 1133.  Oracle

does not contend that CedarCrestone failed to make such a good cause showing.  In fact, Oracle has explicitly stated that it "does not challenge the appropriateness of CedarCrestone's designation." [Dckt. No. 272, Oracle's first Motion to Modify, 1:26].  Indeed, it was Oracle who designated the entire Simmons deposition transcript as "Highly Confidential" in the first place.  Since Oracle concedes there is good cause for the protections afforded to the CedarCrestone materials, the "less reliance" generally ascribed to movants in other situations does not undermine CedarCrestone's significant reliance interests here.

Under Oracle's rationale, there would be no need to weigh reliance whenever a stipulated protective order is concerned, but this is not the law in the Ninth Circuit.  Instead, reliance is still weighed when a stipulated protective order is involved – there just must be  "more" reliance than simply producing documents in mere reliance on a blanket protective order alone.  *Foltz*, 331 F.3d at 1133 ("reliance on a blanket protective order in granting discovery and settling a case, **without more**, will not justify a refusal to modify.") (emphasis added); *Beckman Industries, Inc.,* 966 F.2d at 475, *citing Olympic Refining Co. v. Carter*, 332 F.2d 260, 264 (9th Cir. 1964) (party failed to show more reliance than the mere existence of a protective order).

Reliance is greater where discovery is provided or witnesses testified without invoking their rights.  *Beckman*, 966 F.2d at 475.  Such is the case with CedarCrestone.  Here, Oracle's Subpoena to CedarCrestone was void because it was issued and served in the wrong jurisdiction.  Oracle's Subpoena was also highly objectionable as overbroad among many other objections.  [Dckt. No. 330, Exhibit 2-Subpoena].  CedarCrestone forewent its challenges to the Subpoena and even provided a witness for deposition, all in reliance on the Stipulated Protective Order, the parties supplemental Stipulation, and Oracle's repeated and continuous assurances that the CedarCrestone materials would not be used outside the *Rimini* Action.

CedarCrestone also was a long-standing partner with Oracle at the time, and Oracle leveraged that lucrative relationship to induce CedarCrestone to provide certain discovery materials Oracle would otherwise not have access to.

Together, these facts amount to the "more" that *Foltz* and *Beckman* contemplate – significantly more reliance than just the fact a protective order existed.  CedarCrestone has a

significant reliance interest here.   Those interests outweigh the policy of avoiding duplicative discovery when and if that need ever arises.

Indeed, there is little to no risk of avoiding duplicative discovery here at this time.   Oracle only recently filed the NDCA Action and simultaneously sought modification of the Protective Order to use materials produced by CedarCrestone in that action.   CedarCrestone, however, has not yet responded to the newly filed NDCA Action and thus discovery is not yet even available in the collateral action.   If the NDCA Action is dismissed in response to a defensive response motion, there will not even be discovery.   For example, some of Oracle's claims in the NDCA Action may be barred by the statutes of limitation.   As such, there may be no risk of duplicative discovery depending on what the case consists of after the pleading challenge stage.   This fact also renders Oracle's request for modification premature.

The judge in the collateral proceeding ultimately must decide whether litigants in that proceeding may ultimately be able to use materials produced in another action.   *Foltz*, 331 F.3d. at 1133.   As of now, there is no discovery pending in the collateral proceeding, and there may never be. Even were discovery pending in the NDCA Action, Oracle has essentially conceded the protected materials are not all discoverable because it needs to obtain them in order to *amend* its claims. Because NDCA Action currently does not encompass allegations regarding the requested protected discovery, there is thus little to no risk of duplicative discovery, and modification should be denied.

Finally, to the extent that Oracle argues some of the protected material is discoverable in the NDCA Action, which remains to be seen, the Ninth Circuit policy is to try to avoid "substantial" amounts of duplicative discovery.   "[T]he court that entered the protective order should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided."   *Foltz*, 331 F.3d at 1132, *citing Wilk v. Am. Medical Assoc.*, 635 F.2d 1295, 1300 (comparing complaints to determine if most of the protected discovery would be eventually discoverable in the collateral suit).

Here, however, Oracle's admission that it wishes to use the protected materials at issue to amend the complaint NDCA Action demonstrates that most of the materials are not yet discoverable in that case and any duplicative discovery would be minimal.   Denying modification of a protective

order where third parties' reliance interests "are significant" and "the amount of duplicative discovery avoided will not be substantial" is consistent with Ninth Circuit precedent. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 128400, Case No. 07-md-01819 CW, *44-45 (N.D. Cal. Nov. 1, 2011) (relying on *Foltz*).

### C. Oracle Has Improperly Exploited The Discovery Process Which The Ninth Circuit Holds Is Grounds To Deny Modification Of A Protective Order.

The Ninth Circuit has recognized as "correct statements of legal principles" that collateral litigants may not initiate collateral proceedings merely to obtain protected discovery:

> "A collateral litigant will not be permitted to exploit another's discovery in the sense of instituting the collateral suit simply as a device to obtain access to sealed information." *Wilk v. Am. Medical Assoc.*, 635 F.2d 1295, 1300 (7th Cir. 1981). Federal Discovery may not be used to merely subvert limitations on discovery in other proceedings. *Id.* Thus, a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual discovery in the collateral litigation."

*Foltz*, 331. F.3d at 1133-1134.

In particular, caution must be used in pre-litigation discovery devices under circumstances involving direct competitors in order to limit the potential that discovery directed to non-parties is used for improper purposes, such as obtaining proprietary information to use adversely against the non-party. *Ultimate Timing LLC v. Simms*, No. 3:09-mc-6RLY-WGH, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28, 2009); *see also County of Santa Clara v. Astra USA, Inc.*, 2011 U.S. Dist. LEXIS 79790, Case No. C 05-03740 WHA, *8 (N.D.Cal. July 20, 2011) (denying modification in part because in *Foltz*, "unlike here, the documents were not improperly in the hands of the moving party to begin with."). But that is precisely the case here.

Oracle used the third-party discovery process and Protective Order in the *Rimini* Action in order to obtain discovery, which included CedarCrestone's trade secrets, to which it otherwise was not entitled. Oracle knew about at least some of the conduct alleged in its NDCA Action before it procured a Rule 30(b)(6) deposition from CedarCrestone. Oracle also knew about at least some of the so-called alleged breaches of contract in the NDCA Action before it renewed its Partnership agreement with CedarCrestone.

DM1\3340146.1

14

OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER, AND, IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION

Having received the materials it sought, Oracle has now used the confidential discovery it obtained from CedarCrestone in the *Rimini* action to harm CedarCrestone, which in addition to being its partner, also is one of its direct competitors. As set forth herein, Oracle already has violated the Protective Order by using some of the protected discovery outside of the litigation context in an effort to harm CedarCrestone. Oracle recently filed a sham complaint in the NDCA Action that is limited in scope. It now seeks to modify the Protective Order in this case in order to subvert the discovery process in the NDCA Action and gain access to material which likely would largely be undiscoverable in that case. This is the Ninth Circuit's definition of discovery exploitation and mandates that modification of the Protective Order be denied.

**D.   Despite Oracle's Suggestion Otherwise, Oracle Is Still Seeking To Lift Protections On The CedarCrestone Materials Wholesale Without Delineation.**

The wholesale request to modify a protective order without delineating the specific information to be used in the collateral proceeding also constitutes grounds to deny modification. *Biovail Laboratories, Inc. v. Anchen Pharms., Inc.*, 463 F.Supp.2d 1073, 1082 (C.D.Cal. 2006), citing *Smithkline Beecham Corp. v. Synthon Pharms. Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C. 2002); *Avago Technologies Fiber IP (Singapore) PTE, Ltd. v. IPtronics, Inc.*, 2011 WL 5975243, *1 (N.D. Cal. 2011); *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 878 F.Supp. 884, 886 (E.D. La. 1995). The burden of reviewing such a wholesale request itself constitutes grounds for denying modification. *Biovail Laboratories, Inc.*, 463 F.Supp.2d at 1082.

In responding to subpoenas for documents or depositions, third parties, in reliance on the confidentiality order, divulge sensitive commercial information without asserting certain rights, for example, the right to be protected by a court in their home jurisdiction. *Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Ltd.*, 529 F.Supp. 866, 893 (E.D. Pa. 1981). The failure by the party seeking modification to specifically delineate the precise documents for which protections are sought to be modified is therefore "a poor, inappropriate and unfair tool not only with respect to the interests of litigants, but also with respect to the interests of third parties who are frequently drawn into the vortex" of other cases. *Zenith Radio Corp.*, 529 F.Supp. at 893.

///

Oracle's Renewed Motion purports to argue that it has now limited the documents and information it seeks, but this is misleading. Before, Oracle sought to lift protections for the entire universe of CedarCrestone protected materials which consisted of the Simmons deposition and all exhibits, the DVD containing 2.16 gigabytes of data, and approximately 600 pages of documents. Oracle contends it has now purportedly limited and delineated its request because it no longer is requesting the 600 pages – but it is still requesting the DVD, deposition, and all exhibits in full. Oracle's argument is misleading because Oracle requests the 2.16 gigabyte DVD and Simmons deposition and exhibits without delineation of the specific information or data that is pertinent to the three instances of breach of contract and copyright infringement that are the subject of the collateral suit. Thus, this is still an improper wholesale request. Not asking for 600 pages while still asking for 2.16 gigabytes of information and the full deposition does not alter that conclusion.

Oracle has failed to limit its request to specific information relevant to the (1) Tucson, (2) Oklahoma, and, (3) Weston Bakeries instances that are the subject of the NDCA Action. It has failed to do so because it wants to lift protections for protected information that is irrelevant to and undiscoverable in the collateral suit. Modification therefore should be denied, once again, as a result of Oracle's failure to delineate its wholesale request to specific information to be used in the collateral proceeding.

**E.    Modification Should Be Denied As A Result Of The Tangible Prejudice Suffered By CedarCrestone.**

Modification of a protective order may be denied where it would tangibly prejudice substantial rights of the party opposing modification. *Foltz*, 3321 F.3d at 1132. Among other things, competitive disadvantage is a type of cognizable harm that may be protected against. *Zenith Radio Corp.*, 529 F.Supp. at 890.

As set forth above, Oracle has already improperly used the information obtained from CedarCrestone outside of the *Rimini* Action contrary to the express terms of the Protective Order. Oracle has used the information outside the *Rimini* Action in several instances by

1     ████████████████████████████ [*See* Dckt. No. 330-Redacted Fees. Decl. and

2 Dckt. No. 333-Unredacted Sealed Fees Decl., ¶¶18-23].

3      · Oracle enticed CedarCrestone to produce information with repeated assurances that it would

4 not be used adversely against it but then did just that.  Oracle has caused CedarCrestone tangible

5 prejudice and Oracle's request to modify the protective order, which would be used to further

6 prejudice CedarCrestone, may and should be denied as a result.

7 **IV.  IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION BY DISTRICT COURT.**

8

9      **A.  <u>Introduction</u>.**

10      The Stipulated Protective Order drafted and agreed upon by Oracle in the *Rimini* Action

11 precluded use of documents produced by non-party CedarCrestone pursuant thereto outside of the

12 *Rimini* Action for any purpose.  In direct reliance on the Stipulated Protective Order and Oracle's

13 repeated assurances that its confidential materials would not be used against it, CedarCrestone in

14 good faith produced certain information and provided a witness to provide testimony for purposes of

15 use in the *Rimini* Action only.  Had it been otherwise, CedarCrestone would have exercised its

16 significant challenges to the highly objectionable and otherwise void subpoena issued by Oracle.

17      After repeatedly assuring CedarCrestone its information would not be used outside the

18 *Rimini* Action, Oracle moved for modification of the Stipulated Protective once it obtained

19 CedarCrestone's discovery materials to do just that.  The Magistrate Judge denied Oracle's first

20 Motion to Modify Protective Order applying the correct Ninth Circuit test, and applying the correct

21 Ninth Circuit considerations.  Oracle moved for reconsideration by the District Court Judge and

22 largely mischaracterized the Magistrate's ruling as "requiring" pending collateral litigation for

23 modification to be proper – which was not the Magistrate's ruling.  Instead, the absence of collateral

24 litigation was one of several factors the Magistrate weighed against the policy of avoiding

25 duplicative discovery when determining whether to modify the protective order, as entirely

26 consistent with Ninth Circuit precedent.  [Docket No. 370-1-Transcript].  Oracle's Motion for

27 Reconsideration is still pending.

28 ///

1   Alleging all it had to do was file a collateral proceeding to lift the protections on the

2   CedarCrestone protected materials from the *Rimini* Action, Oracle filed the limited NDCA Action,

3   for which discovery is not even available yet if it ever will be, and renewed its Motion to Modify

4   Protective Order.  The NDCA Action is limited to finite issues and the protected CedarCrestone

5   materials are not discoverable in that collateral proceeding.  Oracle is attempting to subvert the

6   limitations of discovery in the collateral proceeding which the Ninth Circuit holds warrants denial of

7   modification of the protective order.

8   Through the instant Countermotion, CedarCrestone merely requests a stay of the Court's

9   Order pending review by the District Court Judge to the extent this Court grants modification.  Were

10   a stay of enforcement not immediately granted, the matters at issue would otherwise be rendered

11   moot because Oracle would be permitted to utilize CedarCrestone's information outside of the

12   *Rimini* Action to CedarCrestone's detriment.  A stay pending reconsideration will not, however,

13   significantly prejudice Oracle.

14   **B.   Legal Standard For Stay Pending Reconsideration By District Court Judge.**

15   Whether to grant a stay is within the discretion of the court.  *Munoz-Santana v. U.S. I.N.S.*,

16   742 F.2d 561, 562 (9th Cir. 1984).   The Supreme Court established a four-factor test when

17   considering a motion to stay a Magistrate Judge's order pending review by a District Court Judge.

18   *Trs. of the N. Nev. Operating Eng'rs Health & Welfare v. Mach 4 Constr., LLC*, 2009 U.S. Dist.

19   LEXIS 62600, *7-8 (D. Nev. July 7, 2009), citing *Hilton v. Braunskill*, 481 U.S. 770, 107 S. Ct.

20   2113 (1987); *Nken v. Holder*,  556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009).  A movant must

21   show: "(1) it is likely it will succeed on the merits of the appeal, (2) it will suffer irreparable injury

22   in the absence of a stay, (3) other parties will not be substantially injured by a stay, and (4) the stay

23   will not harm public interest." *Mach 4 Constr., LLC*,  2009 U.S. Dist. LEXIS 62600 at *8.

24   When evaluating these factors, the Ninth Circuit considers two interrelated legal tests that

25   represent the outer reaches of a single continuum.  *Id.*  "At one end of the continuum, the moving

26   party is required to show both a probability of success on the merits and the possibility of irreparably

27   injury."  *Id.*  "At the other end of the continuum, the moving party must demonstrate that serious

28   legal questions are raised and that the balance of hardships tips sharply in its favor."  *Id.*  "The

relative hardship to the parties is the critical element in deciding at which point along the continuum a stay is justified. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. Cal. 1983) (internal citations and quotations omitted).

In cases analogous to this matter, which also concerned proprietary or privileged information, federal courts have applied the likelihood of irreparable harm as the main factor when weighing a request for stay pending review of Magistrate's Order, even where the court did not believe the movants would ultimately prevail upon that review. *See Republic of Ecuador v. Bjorkman*, 2012 U.S. Dist. LEXIS 6827, *5-6 (D. Colo. Jan. 20, 2012); *see also Zander v. Craig Hosp.*, 2010 U.S. Dist. LEXIS 47895, *4 (D. Colo. Apr. 20, 2010).   The disclosure of confidential information pending an order that may be reversed, whether the Magistrate Judge believes it will be reversed or not, warrants a brief stay particularly when no substantial harm to would result from it. *See, e.g., Republic of Ecuador*, 2012 U.S. Dist. LEXIS 6827 at *5-6 (D. Colo. Jan. 20, 2012); *Zander*, 2010 U.S. Dist. LEXIS 47895 at *4; *Martinelli v. Petland, Inc.*, 2010 U.S. Dist. LEXIS 123362, *3-4 (D. Kan. Nov. 3, 2010); *In re Motor Fuel Temperature Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 97883, *35-36 (D. Kan. Sept. 16, 2010)

### C.   To the Extent This Court Grants Modification, It Should Stay Enforcement Of Its Order Pending Reconsideration By The District Court Judge.

If a stay is not granted, CedarCrestone's relief – reconsideration by the District Court – may be rendered moot, and the prejudice and hardships occasioned by Oracle's use of CedarCrestone's confidential discovery materials outside the *Rimini* Action would be irreparable.  By contrast, Oracle would not be prejudiced by a brief stay because discovery is not yet even available in the NDCA Action.

CedarCrestone's business interests would be significantly adversely affected by the use of the materials outside the *Rimini* Action.   Among other things, Oracle and CedarCrestone are competitors, and use of the information outside the *Rimini* Action by a competitor is and has already been damaging to CedarCrestone's business.   Caution must be used in pre-litigation discovery devices under circumstances involving direct competitors in order to limit the potential that

///

19
OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER, AND,
IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION

discovery directed to non-parties is used for improper purposes. *Ultimate Timing LLC v. Simms*, No. 3:09-mc-6RLY-WGH, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28, 2009).

The delay of a brief stay pending reconsideration is far less prejudicial to Oracle if prejudicial at all. There is no rush to use CedarCrestone's discovery in the NDCA Action — discovery is not even available yet – but every reason to delay its enforcement. Indeed, the collateral lawsuit in which Oracle seeks to use CedarCrestone's confidential information (again, produced only for purposes of use in the *Rimini* Action) may not even be proper depending on the result of defensive motions filed in response to the NDCA Action's complaint. The balance of hardships thus favors CedarCrestone's request to stay enforcement of the Court's Order.

A stay of enforcement of modification of the Protective Order pending reconsideration also is consistent with and will protect the public interest. CedarCrestone is a non-party to the action Oracle filed against the Rimini Defendants, and CedarCrestone produced information in reliance on a Protective Order limiting use of the information to the *Rimini* Action, as well as Oracle's repeated assurances that it would comply with that Protective Order. The public's interest requires that non-parties to lawsuits be able to rely on assurances from parties inducing the non-party discovery and the terms of protective orders issued by courts.

Witnesses relying on protective orders will be inhibited from giving essential testimony in civil litigation unless a valid protective order is fully and fairly enforceable, which undermines the procedural system that has been successfully developed over the years for disposition of civil differences. *Martindell v. Int'l Telephone and Telegraph Corp.*, 594 F.2d 291, 295 (2nd Cir. 1979). The failure to protect reliance on a stipulated protective order prejudices the confidentiality interests of the other parties and non-parties and undermines the effectiveness of protective orders facilitating discovery. *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 43 (N.D. Fla. 1998). This is particularly true if a stay is not granted and the District Court's Order is later overturned.

CedarCrestone also has a likelihood of success on the merits of any review of an order granting modification, even though the Court need not believe that to be true in order to grant a stay. As demonstrated in CedarCrestone's Opposition, Oracle cannot demonstrate that all of the materials it is seeking to use are discoverable in or relevant to the NDCA Action. CedarCrestone's substantial

1 reliance interest also is significantly greater than that of parties implicated in cases in which

2 modifications have been granted.  Its reliance interest far outweighs the risk of duplicative discovery,

3 particularly since discovery is not yet available in the NDCA Action, and many of the protected

4 materials are not discoverable in or relevant to the NDCA Action.  Further, to the extent there is

5 some minimal amount of discovery that would be duplicative, it is not sufficiently substantial to

6 warrant modification.  The Ninth Circuit likewise mandates that modification be denied where, as

7 here, a party seeks modification to subvert the discovery limitations in collateral litigation.

8      For these reasons, to the extent this Court grants modification, this Court should stay

9 enforcement of its order pending reconsideration by the District Court Judge.

10 **V.     CONCLUSION**

11      For the foregoing reasons and arguments set forth herein, CedarCrestone respectfully

12 requests that this Court deny Oracle's Motion to Modify Protective Order.  Were the Court inclined

13 to grant Oracle's motion, CedarCrestone requests, in the alternative, a stay of enforcement of its

14 order pending reconsideration by the District Court.

15 DATED:  September 21, 2012

                                 DUANE MORRIS LLP

16

17

18                                 By:   _/s/ Dominica C. Anderson_____
                                      Dominica C. Anderson (SBN 2988)

19                                       Ryan A. Loosvelt (SBN 8550)

20                                Attorneys for CedarCrestone, Inc.

21

22

23

24

25

26

27

28

OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER, AND,
IN THE ALTERNATIVE, COUNTERMOTION FOR STAY PENDING RECONSIDERATION

1

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, I served via CM/ECF a true and correct copy of the foregoing **NON-PARTY CEDARCRESTONE, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER** to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.


*/s/ Jana Dailey*
Jana Dailey
An employee of DUANE MORRIS LLP