1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (pro hac vice)
6   FRED NORTON (pro hac vice)
    KIERAN P. RINGGENBERG (pro hac vice)
7   1999 Harrison Street, Suite 900
    Oakland, CA 94612
8   Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
9   sholtzman@bsfllp.com
    fnorton@bsfllp.com
10  kringgenberg@bsfllp.com

11
    Attorneys for Plaintiffs Oracle USA, Inc.,
12  Oracle America, Inc., and Oracle International
    Corp.

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (pro hac vice)
THOMAS S. HIXSON (pro hac vice)
KRISTEN A. PALUMBO (pro hac vice)
BREE HANN (pro hac vice)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com
bree.hann@bingham.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

13
14
15
16
17

UNITED STATES DISTRICT COURT

18

DISTRICT OF NEVADA

19   ORACLE USA, INC., a Colorado
     corporation; ORACLE AMERICA,
20   INC., a Delaware corporation; and
     ORACLE INTERNATIONAL
21   CORPORATION, a California
     corporation,

22           Plaintiffs,

23       v.

24
     RIMINI STREET, INC., a Nevada
25   corporation; SETH RAVIN, an
     individual
26
             Defendants.

27

28

Case No. 2: 10-cv-0106-LRH-PAL

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO MODIFY PROTECTIVE ORDER**

**[REDACTED]**

## I.  INTRODUCTION

CedarCrestone never denies that it engaged in the conduct Oracle asserts constitutes copyright infringement, breach of contract, and unfair competition in the collateral *CedarCrestone* Action.  Nevertheless, CedarCrestone asks this Court to shield it from potential liability because CedarCrestone originally produced some of the evidence of that conduct in this matter.  As this Court stated, "At the end of the day, however, Counsel for Crestone – CedarCrestone, federal discovery is about obtaining the truth."  Dkt. 370-1, Transcript at 20:4-6.

The Discovery Materials produced in this action are relevant to the collateral *CedarCrestone* Action.  Oracle had reason to suspect CedarCrestone's improper conduct after Rimini Street alleged CedarCrestone was using Oracle's software code by copying information provided for one customer and using it for CedarCrestone's other customers.  CedarCrestone's production and testimony confirmed those suspicions.  The DVD produced by CedarCrestone, confirmed by the testimony, ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████ Oracle's separate investigation outside of this matter revealed additional examples of this misconduct.  While the Complaint provides illustrative examples of this misconduct, it also alleges a pattern and practice based on CedarCrestone's own documents cited in the examples.  Thus, the Discovery Materials relate directly to the *CedarCrestone* Action.

CedarCrestone incorrectly asserts that the DVD contains CedarCrestone's trade secrets.  In fact, CedarCrestone has already produced these materials to both Oracle and Rimini Street, and in its motion Oracle seeks to preserve the existing protections against disclosure of trade secrets or other proprietary information.  Furthermore, ████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ CedarCrestone cannot avoid liability by arguing that Oracle cannot have

1

1   access to Oracle software code. The ███████ on the DVD are not trade secrets of CedarCrestone;

2   they are ██████████████████████████████████████.

3        CedarCrestone's argument that Oracle filed a "sham" complaint is meritless. After

4   Oracle sued, Rimini Street alleged that CedarCrestone copied and distributed Oracle's software

5   in ways similar to what Oracle had alleged constituted illegal conduct by Rimini Street. Based

6   on Rimini Street's allegations, Oracle began investigating, eventually discovering support for

7   these allegations in the materials produced in this litigation, which are directly relevant to the

8   Rimini Street allegations. Oracle also found support for these allegations independently, without

9   using the information provided here. Overwhelming evidence confirmed CedarCrestone's

10  wrongdoing.

11       CedarCrestone cannot shield itself from liability now simply because it produced some

12  information first here. While CedarCrestone contends that Oracle somehow "tricked" it, the fact

13  remains that CedarCrestone stipulated to a Protective Order that allows this Court to modify the

14  order for good cause. When CedarCrestone stipulated to the Protective Order, only

15  CedarCrestone knew the extent of, and specifics relating to, its infringement.

16       The Court should not order the inefficient process CedarCrestone urges. Pleadings need

17  not be fully settled in the *CedarCrestone* Action; and no stay is warranted because

18  CedarCrestone has failed to show irreparable harm or likelihood of success on the merits. The

19  Discovery Materials are not proprietary or privileged CedarCrestone material; they are

20  ██████████████████. Resolution of the dispute in the *CedarCrestone* Action should

21  involve all of the facts and all of the evidence that relate to Oracle's allegations.

22       The Court should grant Oracle's request for a limited modification of the Protective

23  Order for the purpose of enforcing its rights against CedarCrestone.

24  **II.   ARGUMENT**

25       **A.   The Discovery Oracle Seeks To Use Is Relevant And
            Discoverable Under *Foltz***
26
27       In *Foltz v. State Farm Mu. Auto Ins. Co.,* 331 F.3d 1122, 1133-34 (9th Cir. 2003), the

28  Ninth Circuit instructs that this Court should "refrain from embroiling itself in the specific

2

1   discovery disputes applicable only to the collateral suits" and instead "the courts overseeing the

2   collateral litigation can settle any disputes as to whether particular documents are discoverable in

3   the collateral litigation." This Court, therefore, need only make a "rough estimate of relevance"

4   *Foltz*, 331 F.3d at 1132.

5          **1.     The Discovery Materials Are Relevant To The**
               ***CedarCrestone* Action**
6

7          In the *CedarCrestone* Action, Oracle asserts that CedarCrestone, by providing tax and

8   regulatory updates using Oracle's software and by making misleading statements to its customers

9   about these practices, has engaged in copyright infringement, breach of contract and unfair

10  business practices. Dkt. 386-2, Complaint.  Oracle has also established that the Discovery

11  Materials produced in this matter directly relate to these allegations because CedarCrestone's

12  corporate representative has testified regarding ██████████████, and the DVD

13  produced by CedarCrestone includes ████████████████████████

    ██████████████████████. Motion at 5:25-8:16.  Oracle has thus satisfied its

14  burden of establishing a "rough estimate of relevance."  Oracle now has shown "more than good

15  cause to modify the protective order for appropriate documents that demonstrate any infringing

16  conduct." Dkt. 370-1, Transcript at 21:7-9.  The collateral litigation should only corroborate the

17  Court's prior relevance determination.

18         CedarCrestone incorrectly argues that the Discovery Materials are irrelevant to the

19  *CedarCrestone* Action because the Complaint specifically identifies only three customers.

20  CedarCrestone's Opposition to Oracle's Motion to Modify ("Opp.") at 2:27-3:4; 4:9-16; 16:12-

21  17. This argument overlooks the fact that the Complaint challenges CedarCrestone's business

22  practices generally.  Oracle alleges that CedarCrestone "uses software obtained from one

23  customer to provide support to other customers;" (Dkt. 386-2, Complaint at ¶ 28;) CedarCrestone

24  creates its own copies of customers' software or copies the source code from one customer's

25  licensed software to create other copies used to support multiple other customers, (*id.* at ¶¶ 29,

26  35-46;) and CedarCrestone has misrepresented that its "tax and regulatory updates 'are

27  developed independently by CedarCrestone' without using Oracle's competing updates 'as a

28

                                                  3

1  starting point.'"  *Id.* at ¶¶ 23, 32.  While CedarCrestone's conduct with respect to three

2  customers is provided by way of example, CedarCrestone's wrongdoing is not limited to these

3  three customers.  *Id.* at ¶¶ 23-24, 28-33.

4       The Discovery Materials relate to the same conduct.  *See* Motion at 6:7-8:14.  In the

5  deposition of Paul Simmons in this Action, CedarCrestone's 30(b)(6) witness, he testified about,

6  among other things:

7  █████████████████████████████████████████████████████

8  ████████████████

9  █████████████████████████████████████████████████

10  █████████████████████████████████████████████

11  ████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████

14  ████████████████████████████████████████████████████

15  ████████████████

16  This testimony, which comprises the vast majority of Mr. Simmons' approximately six-hour

17  deposition, involves the same conduct at issue in the *CedarCrestone* Action.

18       Similarly, the DVD produced by CedarCrestone in this Action consists of ████

19  ████████████████████████████████████████████████████

20  ████████████████████████.  Motion at 8:1-14.  CedarCrestone's own summary of the contents of

21  the DVD, produced as part of the Discovery Materials, states that the materials on the DVD

22  include:

23  █████████████████████████████████████████████████████

24  ████████

25  █████████████████████████████████████████████████

26

27  ████████████████████████████████████████████████████████

28  Dkt. 386-11; *see also* Declaration of Geoff Howard ISO Oracle's Reply ("Howard Decl."), Exs.

1    1 & 2 (screenshots and file printout from DVD).

2       Thus, the DVD contains not only



3    , but it also

4    As illustrated in the deposition of Mr. Simmons,

9    . *See, e.g.*, Dkt. 386-5, Simmons Dep. at 86:13-97:14 (

11    ), and 99:25-101:9 (

13    ). Oracle has satisfied its burden to establish the "rough estimate

14 of relevance."

      **2.**     **The *CedarCrestone* Action Is Valid Collateral Litigation That Provides A Basis For Modifying The Protective Order**

17       CedarCrestone's bald assertion that Oracle filed a "sham complaint" to "exploit the

18 system and subvert the limitations of discovery in the collateral proceeding" (Opp. at 2) is belied

19 by the evidence above. Oracle has now conducted two independent investigations. In response

20 to Rimini Street's claim that CedarCrestone had engaged in wholesale infringement of Oracle's

21 intellectual property – ironically in an attempt to shield Rimini Street's own infringement based

22 on the argument that others in the industry did the same thing – Oracle sought discovery subject

23 to the Protective Order, which allows for modification. Dkt. 153, Defendant Rimini Street Inc.'s

24 Answer to Oracle's Second Amended Complaint and First Amended Counterclaim at ¶¶ 5, 54.

25 CedarCrestone denied the infringement until it could no longer avoid production of the

26 incriminating evidence. Then, because CedarCrestone invoked the Protective Order, Oracle

27 conducted an independent investigation into additional misconduct based on information *other*

28 than what was produced here. As shown above, the allegations in the *CedarCrestone* Complaint

1   are not limited to the examples referenced, but instead reflect Oracle's allegations that

2   CedarCrestone was engaged in widespread infringement, breach of contract and unfair practices,

3   as *illustrated* by the examples in the Complaint.  There are no so-called "limitations of discovery

4   in the collateral proceeding" to allegedly circumvent.

5          CedarCrestone implies Oracle's claims in the *CedarCrestone* Action are somehow

6   diminished because Oracle renewed its partnership agreement with CedarCrestone after Oracle

7   allegedly knew of some of the conduct alleged in the Complaint.  *See, e.g.*, Opp. at 2:7-9.  The

8   effect of the renewal, if any, on the merits of the *CedarCrestone* Action is an issue that is

9   properly within the scope of the court overseeing the collateral litigation.  *Foltz,* 331 F.3d at

10  1133-34.  Further, in renewing the partnership agreement Oracle did not intend to, nor did it,

11  release any claims it may have had against CedarCrestone as the partnership agreement does not

12  contain any waiver or release of pre-existing claims.  Finally, in renewing the partnership

13  agreement Oracle acted as any commercially reasonable partner would have upon discovering

14  errors by a partner.  Oracle continued the business relationship while simultaneously

15  investigating further, and only took steps to change that relationship when it had sufficient

16  reason to do so.  Oracle's views on the relationship evolved as its investigation matured,

17  eventually leading Oracle to conclude that CedarCrestone had breached the partnership

18  agreement and had been misleading Oracle for years about its conduct.  Dkt. 342 at ¶¶ 7-10.

19          CedarCrestone's argument that Oracle cannot initiate collateral proceedings merely to

20  obtain protected, privileged discovery, is equally off point.  Opp. at 14:7-15:9.  In *Ultimate*

21  *Timing LLC v. Simms*, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28, 2009), the court refused to

22  allow discovery by a third party to obtain pre-litigation privileged information of a competitor.

23  Here, CedarCrestone is the competitor, Oracle already has the information, CedarCrestone has

24  not identified any privileged information at all, and no third party is involved.  *County of Santa*

25  *Clara v. Astra USA, Inc.*, 2011 WL 2912849, at *1-2 (N.D. Cal. July 20, 2011), does not even

26  involve competitors, but instead prohibited the use of discovery materials in contemplated

27  collateral litigation because the U.S. Supreme Court had dismissed the movant's original action,

28  determined that the movant had no standing, and concluded that the movant never should have

1   had access to the discovery materials in the first place.  These cases bear no resemblance to the

2   facts here.

3            **3.**      **Oracle Does Not Seek A "Wholesale" Modification Of**
                     **The Protective Order**

4

5           CedarCrestone's argument that Oracle improperly seeks a "wholesale" modification of

   the Protective Order is also off base.  Opp. at 15:12-16:17.  Oracle seeks only to modify the

6   Protective Order with respect to a single six-hour deposition and a single DVD consisting

7   entirely of ███████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████████.

9   Motion at 2:10-15.  Further, Oracle's modification is limited to a single expansion of the terms

10  "the Action" and "this litigation" to include the *CedarCrestone* Action with respect only to the

11  CedarCrestone Discovery Materials.

12          District courts applying *Foltz* routinely grant modifications to protective orders for much

13  broader and less defined categories of materials than the two specifically identified items that

14  comprise the Discovery Materials.  *See, e.g., CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D.

15  195, 205 (N.D. Cal. 2009) (modifying protective order to allow all discovery to be used in "any

16  actual or potential collateral litigation" despite argument this amounted to a "wholesale"

17  modification); *Stokes v. Life Ins. Co. of N.A.*, 2009 WL 8397036, at *1 (D. Idaho Aug. 31, 2009)

18  (modifying protective order with respect to "all depositions in the Stokes case, along with

19  exhibits thereto and also [] the use of all other discovery documents [defendant] produced");

20  *Largan Precision Co., Ltd. v. Fujinon Corp.*, 2011 WL 1226040, at *6 (N.D. Cal. Mar. 31, 2011)

21  (modifying protective order to allow use of "(1) Code V files, (2) manufacturing specifications,

22  (3) sales-related documents (to include revenues, costs and identification of customers), (4)

23  interrogatory responses, (5) responses to requests for admission, and (6) portions of depositions

24  (and associated exhibits)" in collateral litigation.).

25          Despite the much broader modification requests (all of which were granted), these cases

26  more closely resemble the facts here than those relied on by CedarCrestone.  For example,

27  Oracle's request here does not involve hundreds of thousands of documents produced over ten

28

7

1   years of discovery as in *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp.

2   866, 874 (E.D. Pa. 1981).  In CedarCrestone's other authorities, the party seeking the

3   modification either (1) failed to identify the documents that it was seeking, or (2) sought to lift

4   the protective order with respect to vast quantities of documents.  *See Biovail Labs., Inc. v.*

5   *Anchen Pharms., Inc.*, 463 F. Supp.2d 1073, 1081-82 (C.D. Cal. 2006) (seeking a modification to

6   allow alternatively the 9,000 confidential documents produced during the course of discovery or,

7   at a minimum, all documents attached to the parties' cross-motions for summary judgment, to be

8   shared with the FDA); *Avago Techs. Fiber IP (Singapore) PTE., Ltd. v. IPtronics, Inc.*, 2011 WL

9   5975243, at *2 (N.D. Cal. Nov. 29, 2011) ("Avago has not identified with any particularity the

10   specific documents it seeks to disclose."); *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med.*

11   *Alliance, Inc.*, 878 F. Supp. 884, 885 (1995) (seeking the de-designation of "several hundred

12   documents" consisting of all trial exhibits).  In contrast, Oracle has (1) specifically identified the

13   two items for which it seeks modification and (2) limited its request to a narrow universe of

14   materials.

15   **B.    CedarCrestone Has No Legitimate Reliance Interest And Will**
         **Suffer No Undue Prejudice**

16

17          **1.    CedarCrestone Has Not Established A Legitimate**
                   **Reliance Interest**

18          The second prong of the *Foltz* analysis requires a balancing of CedarCrestone's reliance,

19   if any, on the Protective Order with the strong policy favoring "allowing the fruits of one

20   litigation to facilitate preparation in other cases."  *Foltz*, 331 F.3d at 1131.  Each of

21   CedarCrestone's alleged forms of "reliance" is boilerplate and illusory and therefore does not

22   provide a basis for denying Oracle's requested modification.

23          **a.    The Terms Of The Protective Order Explicitly**
                   **Allow For Modification**

24
25          In seeking this modification, Oracle is not "changing the ground rules" to which the

26   parties agreed, as CedarCrestone argues.  *See* Opp. at 11:17-22.  The plain language of the

         Protective Order explicitly allows for later modifications, in at least three separate provisions.

27   The Protective Order provides that: (1) "Except as the Designating Party or its counsel may

28

8

1    otherwise agree in writing, *or as the Court may otherwise order*, all Discovery Material [shall

2    only be disclosed …]", Dkt. 55, Protective Order at ¶ 8 (emphasis supplied); (2) "[T]he taking of

3    any action pursuant to this Protective Order shall not: … d.  Prejudice in any way the rights of a

4    Designating or Receiving Party *to seek a determination by the Court whether any Discovery*

5    *Material should be subject to the terms of this Protective Order*; … .", *id.* at ¶ 17(d) (emphasis

6    supplied); and (3) "It is the present intention of the Parties that the provisions of this Protective

7    Order shall govern discovery in this Action, but *each of the Parties to this Protective Order*

8    *shall be entitled to seek modification of this Protective Order, or relief from it, by application*

9    *to the Court on notice to the other Parties here*." *id.* at ¶ 19 (emphasis supplied).

10         CedarCrestone's carefully and heavily negotiated supplemental stipulation did not alter

11    any party's right to seek modification or for the Court to order modification. *See* Opp. at 3:9-10.

12    Throughout that process, which involved CedarCrestone's sophisticated legal team,

13    CedarCrestone never took issue with any of the provisions above. *See, e.g.*, Howard Decl., Ex. 3

14    (CedarCrestone letter describing its alleged "two primary issues" with the Order – *i.e.*,

15    "confusing" definitions for "Confidential Information" and "Highly Confidential Information,"

16    and insufficient protection against disclosure for non-party documents).  CedarCrestone's

17    negotiated changes, executed by the parties on July 19, 2011, address only these definitions and

18    disclosure rules, while fully incorporating and leaving unaltered the rights to seek modification.

19    Dkt. 386-4, Stipulation.

20         Under these circumstances, where the express language of the Protective Order

21    anticipates modification, CedarCrestone could not have reasonably relied on a purported

22    assumption that the Order would never be modified. *See, e.g., Kraszewski v. State Farm Gen.*

23    *Ins. Co.*, 139 F.R.D. 156, 158-59 (N.D. Cal. 1991) (granting modification where provision in

24    protective order that it was "without prejudice to the right of any party to seek modification of it

25    from the Court with respect to any specified materials" meant that producing party "[could] not

26    now be heard to complain when class counsel takes advantage of the modification provision to

27    which both parties agreed"); *S.E.C. v. TheStreet.com*, 273 F.3d 222, 231 (2nd Cir. 2001)

28    ("[P]rotective orders that are on their face temporary or limited may not justify reliance by the

1    parties."); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308,

2    320-21 (D. Conn. 2009) (granting modification because the protective order expressly

3    acknowledged the possibility of future modification and thus "[did] not lend itself to reasonable

4    reliance that it [would] afford permanent secrecy"); *Allen v. City of N.Y.*, 420 F. Supp. 2d 295,

5    301 (S.D.N.Y.2006) (no reasonable reliance on a protective order remaining permanent where

6    the court explicitly instructed the parties they could revisit the issue of confidentiality at any

7    time).

8              **b.      The Protective Order Did Not "Induce"**
                         **CedarCrestone To Produce Discovery**
9

10            The Protective Order did not "induce" CedarCrestone to produce discovery, because

11   CedarCrestone was responding to discovery requests to which it had either waived its right to

12   object or were otherwise unobjectionable. "The extent to which a party can rely on a protective

13   order depends on the extent to which the order did reasonably induce the party to allow

14   discovery." *Foltz*, 331 F.3d at 1137, *citing Beckman*, 966 F.2d 19 at 475.

15            CedarCrestone had no valid objections even to Oracle's original unmodified document

16   subpoena because CedarCrestone failed to timely object to the subpoena and therefore waived its

17   objections. *See* Dkt. 156, Oracle's Motion to Compel CedarCrestone to Produce Documents at

18   8:28-9:13 ("Oracle properly served CedarCrestone on February 14, 2011. The deadline for

19   CedarCrestone to object under Rule 45(c)(2)(B) was February 28. CedarCrestone did not

20   provide any written communication to Oracle concerning the subpoena until March 7, 2011, and

21   did not offer written details about any purported objections until April 14, 2011.") (internal

22   citations omitted); *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998); *McCoy v.*

23   *Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002). It is not credible that

24   CedarCrestone, represented by sophisticated counsel, chose to waive its purported objections

25   because of the Protective Order. Had it wished to, CedarCrestone could have served timely

26   objections, which would have preserved its rights, and had CedarCrestone done so, it could still

27   avail itself of the additional safeguards of the Protective Order. Indeed, in the vast majority of

28   cases, litigants and third parties do exactly that. For whatever reason, CedarCrestone chose not

                                                    10

1    to serve objections, and CedarCrestone now cites this unilateral decision as a basis for holding

2    that the Protective Order should not be modified, despite the order's express provisions to the

3    contrary.  Even more troubling is that CedarCrestone's counsel requested a copy of the

4    Protective Order *after* CedarCrestone's deadline to object had passed.  *See* Dkt. 156, Oracle's

5    Motion to Compel CedarCrestone to Produce Documents, at 5:23-6:5.  CedarCrestone offers no

6    explanation of how it was induced to waive its objections based on a document that it

7    purportedly had not reviewed.

8         Indeed, if there was anything that "induced" CedarCrestone to respond to the discovery

9    requests it was not the Protective Order, but rather the desire to avoid opposing and losing on

10   Oracle's Motion to Compel.  After CedarCrestone refused to comply with Oracle's subpoena for

11   almost five months, Oracle moved the Court to compel production.  Dkt. 156.  Only after Oracle

12   filed its motion did CedarCrestone cooperate, finally agreeing to produce a limited set of

13   materials just hours before its Opposition to Oracle's Motion to Compel was due.

14        As for Oracle's deposition subpoena, CedarCrestone never objected to the subpoena, did

15   not reserve any objections to the deposition subpoena, and does not claim that Oracle or Rimini

16   Street could not have otherwise compelled the deposition (which covered a narrow and

17   foundational set of topics).  Therefore, CedarCrestone cannot reasonably contend that it relied on

18   the Protective Order in deciding to forego resisting responding to the deposition subpoenas.

19             c.    **The Blanket Nature Of The Order Diminishes**
20                   **Any Purported Reliance**

        The Protective Order that Oracle seeks to modify is a blanket order on which
21
     CedarCrestone could not have reasonably relied to prevent any further disclosure or use of its
22
     production into perpetuity.  While CedarCrestone now argues that the Protective Order is not a
23
     blanket order, *see* Opp. at 11:23-26, this argument is unsupported by either law or fact.  Indeed,
24
     because the Protective Order allows a party to determine whether an item is confidential without
25
     first establishing good cause for the designation, the Protective Order is, by definition a blanket
26
     order.  *See, e.g.*, *Verizon Cal. Inc. v. Katz Tech. Licensing L.P.*, 214 F.R.D. 583, 586 (C.D. Cal.
27
     2003) ("Here, the protective order allows a party or a non-party producing or disclosing a
28

                                           11

1    particular document to initially determine whether such item is confidential without court

2    intervention. As such, the protective order is akin to a blanket protective order, which is

3    'inherently subject to challenge and modification, as the party resisting disclosure generally has

4    not made a particularized showing of good cause with respect to any individual document.'")

5    The interpretation of the nature of the protective order in *Verizon* is consistent with this Court's

6    prior determination with respect to the Protective Order at issue here. *See* Dkt. 370-1, Transcript

7    at 19:17-20:3 ("And this is a blanket protective order. There was not a determination on a

8    document-by-document basis to determine whether or not individual documents were

9    appropriately designated as discoverable in this case or subject to the protective order governing

10    confidentiality. The Court made no such finding, and it was done to facilitate the parties'

11    discovery exchanges."). Therefore, as a matter of law, CedarCrestone's reliance interest in the

12    Protective Order is diminished due to the fact it is a blanket order. *Foltz*, 331 F.3d at 1138

13    ("[r]eliance will be less with a blanket [protective] order, because it is by nature overinclusive.")

14    (*citing Beckman*, 966 F.2d at 476.)

15
           **d.**      **CedarCrestone's Claims Of Reliance Are**
16                       **Suspect And Inadequate**

17         CedarCrestone's reliance claims should be considered suspect and inadequate for

18    establishing reliance under *Foltz*. As at least one treatise has warned, when dealing with

19    opponents to modification the "courts need to be alert to the possibility that knowledgeable

20    litigants may lard the record with routine claims of reliance." Wright, Miller & Marcus ("Wright

21    & Miller"), § 2044.1 (cited by CedarCrestone at Opp. at 11:19-22). As an example of an

22    ongoing pattern of attempting to "lard the record," CedarCrestone makes the unfounded

23    argument that it has "significant reliance interests" because "Oracle concedes there is good cause

24    for the protections afforded the CedarCrestone materials." Opp. at 12:4-7. But as

25    CedarCrestone is aware, Oracle does not concede that there is good cause for many of

26    CedarCrestone's designations, and Oracle has invoked the procedures in the Protective Order for

27    challenging many of the designations in the deposition transcript. Additionally, Oracle informed

28    CedarCrestone on or about September 12, 2012 – *i.e.*, nine days before CedarCrestone filed its

12

---

1    opposition – that Oracle takes issue with CedarCrestone's over-designation of the information

2    stored on the produced DVD.

3            Despite Oracle's on-going discussions with CedarCrestone regarding its over-designation

4    of discovery, CedarCrestone nonetheless argues that Oracle has conceded the appropriateness of

5    these designations by arguing that Oracle stated in its first motion seeking to modify the

6    Protective Order that Oracle "does not challenge the appropriateness of CedarCrestone's

7    designation." Opp. at 11:28-12:7. In fact, Oracle said, "**This motion** does not challenge the

8    appropriateness of CedarCrestone's designation nor is Oracle seeking any additional productions

9    from CedarCrestone." Dkt. No. 272, 1:25-27 (emphasis supplied). Oracle did not formally

10   challenge CedarCrestone's designations in that motion, and does not do so at this time, in part

11   because the Protective Order explicitly provides the right to do so at a later time. Dkt. 55,

12   Protective Order at ¶ 16. Regardless of which designations Oracle may choose to challenge and

13   when, Oracle absolutely contends – consistent with the Court's view – that CedarCrestone has

14   not made a good cause showing for its designations.

15           CedarCrestone also now claims it relied on alleged "assurances" from Oracle that no

16   CedarCrestone production would ever be used either outside this action or adversely against it.

17   *See, e.g.*, Opp. at 5:28-6:2 (outside the Rimini Street action), and 17:3-4 (adversely against

18   CedarCrestone); *see also* Opp. at 4:1, 5:1, 6:6, 12:22, 17:3, 17:13, 17:17, and 20:14. Oracle

19   never made such assurances. Only once, on page 5 of its Opposition, does CedarCrestone

20   purport to detail these "assurances," quoting two letters and an email from Oracle counsel, with

21   bullet-point excerpts stating in relevant part: (1) "The Order will adequately protect

22   CedarCrestone's confidential information;" (2) "[T]he Stipulated Protective Order entered in this

23   litigation provides adequate protection for any confidential materials produced by

24   CedarCrestone," and (3) "[W]e believe the Stipulated Protective Order is adequate."). Opp. at

25   5:1-9. None of these communications makes any representation that CedarCrestone's

26   productions will never be used outside of this action. Rather, Oracle reiterates each time the

27   same simple point, *i.e.*, that Oracle believes the Protective Order provides adequate protection.

28   There is no conceivable way, particularly in light of the clear language in the Protective Order

                                              13

1   itself, that CedarCrestone could have taken Oracle's statements to mean the Protective Order

2   would never be modified.  The Protective Order, which Oracle endorsed as "adequate,"

3   contemplates modification by its explicit terms.  *See* Section B.1.a., above.  Further, putting

4   aside Oracle's right to seek modification of the Order, Oracle could not possibly know whether

5   the Court, Rimini Street, or any number of countless and unknown non-parties might at some

6   point modify or seek to modify the Protective Order or how the evidence produced by

7   CedarCrestone might be used in open court during the Rimini Street trial.

8        It is clear that CedarCrestone did not rely on the statements it identifies as the

9   "assurances."  The opposite is true – CedarCrestone did not accept Oracle's contention, it

10  conducted an independent and critical review of the Protective Order, it concluded it did *not*

11  believe the Order was adequate, and it negotiated a stipulation addressing its concerns.  *See* Dkt.

12  386-4, Stipulation; Howard Decl., Ex. 3 (CedarCrestone letter describing its "most pressing

13  concerns about the Protective Order" and proposing modifications, in response to one of the

14  Oracle letters cited as an "assurance").  In other words, while CedarCrestone peppers its

15  Opposition with "routine claims of reliance," the record shows that in reality CedarCrestone so

16  vigorously disagreed with the statements it identified that it refused to produce confidential

17  information unless the Protective Order was modified (which was, and still is, contemplated by ¶

18  8, 17(d) & 19 – *see* Section B.1.a., above).

19          2.      **CedarCrestone Will Not Suffer Undue Prejudice From**
                    **The Modification Oracle Requests**
20

21       In the fifteen lines devoted to explaining the "tangible prejudice" it will allegedly suffer,

22  CedarCrestone does not attempt to describe the prejudice or how Oracle's requested modification

23  would cause it.  CedarCrestone only baldly asserts, "Oracle's request to modify the protective

24  order, which would be used to further prejudice CedarCrestone, may and should be denied as a

25  result."  Opp. at 17:5-6.  This unsupported conclusion does not identify any prejudice whatsoever

26  – much less the "tangibl[e] prejudice [to] substantial rights" required by the cases CedarCrestone

27  cites.  Opp. at 16:20-23.  The Court should ignore prejudice as a balancing factor altogether for

28  this reason alone.

14

1    Furthermore, it is not conceivable how the modification Oracle seeks could tangibly

2   prejudice CedarCrestone's substantial rights.  Confidentiality is not an issue in that Oracle (and

3   Rimini Street, and experts, and vendors) already possesses the documents it seeks to use.  Oracle

4   does not seek to modify any disclosure provisions to which CedarCrestone already agreed.

5   Indeed, Oracle seeks to preserve the protections against disclosure of trade secrets or other

6   proprietary information in an effort to negate any such concern.  Further, to the extent the

7   Discovery Materials contain truly confidential information, "[i]t is clear that the presence of

8   trade secrets is not a reason to refuse to modify a protective order." *Kraszewski*, 139 F.R.D. at

9   161 (ruling that the court overseeing the collateral litigation "is able to fashion a protective order

10   which provides as much protection for those trade secrets as does our order"); *see also United*

11   *Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) ("As the district court

12   recognized, any legitimate interest the defendants have in continued secrecy as against the public

13   at large can be accommodated by placing Intervenors under the restrictions on use and disclosure

14   contained in the original protective order."); *Jochims v. Isuzu Motors, Ltd.*, 148 F.R.D. 624, 632

15   (S.D. Iowa, 1993) ("Any prejudice to Isuzu is diminished, if not eliminated, by the fact that the

16   information will not be published and is to be used only in other similar litigation involving

17   Isuzu and will be subject to a protective order.").  For the same reason, "competitive

18   disadvantage," whether or not a "cognizable harm" as CedarCrestone alleges, is also not an

19   issue.  Oracle's requested modification will not put CedarCrestone at a competitive disadvantage

20   because the provisions of the Protective Order that will remain intact prohibit any such

21   competitive use of protected discovery material.

22    CedarCrestone thus articulates no potential legitimate prejudice, and says nothing about

23   its one and only true illegitimate motivation – *i.e.*, CedarCrestone's desire to obstruct Oracle's

24   progress and avoid liability for its actions.  The law does not take those "prejudices" into

25   account.  *United Nuclear Corp.*, 905 F.2d at 1428 ("Defendants' desire to make it more

26   burdensome for [the movants] to pursue their collateral litigation is not legitimate prejudice.");

27   *Wilk v. Am. Medical Ass'n*, 635 F.2d 1295, 1300-01 (7th Cir. 1981) ("A bona fide litigant is

28   entitled to his day in court.  That the expense of litigation deters many from exercising that right

15

1  is no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by

2  another."); *SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd.*, 210 F.R.D. 163, 167

3  (M.D.N.C. 2002) ("[W]hen the documents at issue do not likely involve highly confidential

4  information, and/or the reason opposing disclosure is mainly the desire to make litigation more

5  difficult, opposition to modification carries less weight.").

|   |   |
|---|---|
| 6 | **3. The Duplicate Discovery That Will Be Avoided Outweighs CedarCrestone's Non-Existent Reliance Interest** |
| 7 | |

8  As set forth above in Section II.A.1., the discovery Oracle seeks here would otherwise

9  need to be produced again in the collateral litigation. Therefore, "[u]nder these circumstances

10 [similar issues and discovery overlap] there is no question that the protective order should be

11 modified to allow use of the [discovery documents]. *It simply does not make sense to force class*

12 *counsel to reinvent the wheel* and to promulgate discovery requests and take depositions when

13 much of the same discovery has already taken place in this action." *Kraszewski*, 139 F.R.D. at

14 160 (granting modification for collateral litigation involving similar issues and potentially

15 duplicative discovery) (emphasis supplied); *see also Wilk*, 635 F.2d at 1299 ("[F]or in addition to

16 the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of

17 courts and litigants and speeds up what may otherwise be a lengthy process.").

18 CedarCrestone argues at length that Oracle's requested modification should be denied

19 because the "burden of reviewing" the information implicated by Oracle's alleged "wholesale

20 request" creates an independent ground for denying Oracle's motion. Opp. at 15:18-19. This

21 argument is plainly meritless for the simple reason that CedarCrestone has *already produced*

22 these documents to Oracle in this action. CedarCrestone faces no burden at all, as it will not

23 need to review any documents. Oracle already has these documents; the only question is

24 whether these documents may be used in the newly filed action.

25 Finally, Oracle does not "concede" as CedarCrestone claims, that "the protected materials

26 are not all discoverable because it needs to obtain them in order to amend its claims." Opp. at

27 13:15-16. All of the discovery that Oracle seeks is discoverable in the collateral litigation, as

28 Oracle explained in its Motion. That the discovery likely would also "support and serve as a

16

---

1   basis to amend Oracle's existing claims" does not mean the evidence is not currently

2   discoverable. Motion at 2:6-9. Parties to litigation routinely amend their claims based on

3   information learned through discovery, precisely because discovery materials can and often do

4   support multiple claims. *See, e.g., Qualcomm, Inc. v. Motorola, Inc.*, 989 F. Supp. 1048, 1052

5   (S.D. Cal. 1997) (permitting plaintiff to amend complaint based on information discovered

6   during the course of discovery); *Read v. Teton Springs Golf & Casting Club, LLC*, 2009 WL

7   2461208, at *2 (D. Idaho, Aug. 11, 2009) (same).

8          **4.     Modifying The Protective Order Is Not Premature**

9          CedarCrestone argues that because it may move to dismiss parts of the *CedarCrestone*

10   *Action*, the Court should block access to the Discovery Materials. Opp. at 13:3-7.

11   CedarCrestone's argument contravenes the Federal Rules of Civil Procedure, which do not

12   provide for a stay of discovery while motions to dismiss are pending. *See, e.g., Gray v. First*

13   *Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (denying stay of discovery while motion to

14   dismiss pending). The procedural posture and possibility that hypothetical motions will be raised

15   in collateral litigation have no bearing on this Court's determination of whether to grant Oracle's

16   motion. *Foltz*, 331 F.3d at 1131-34.

17          CedarCrestone argues that "some" of Oracle's claims "may" be barred by the statutes of

18   limitation. Opp. at 13:8-9. Oracle would defeat any such motion, but even if that were true, the

19   discovery Oracle seeks will be relevant whatever the outcome of a statute of limitations motion.

20   Even if "some" of Oracle's claims were time-barred, the statute of limitations for copyright

21   infringement is three years. 17 U.S.C. §507(b). Oracle's copyright claims relate to

22   CedarCrestone's conduct in late 2009 and throughout 2010 and 2011. Dkt. 386-2, Complaint at

23   ¶¶ 23, 24, 28, 30. This conduct all occurred less than three years before Oracle filed its

24   complaint on September 5, 2012. Thus, Oracle's copyright claims will survive the pleading

25   stage, and all of the discovery Oracle seeks here relates to those copyright claims. *See* Section

26   II.A.1 above.

27   **C.     Oracle Has Not Violated The Protective Order**

28          CedarCrestone contends that Oracle harmed it by engaging in "sanctionable violations"

17

1   of the Protective Order. Opp. at 6:14-15. This accusation, though false, has no relevance to the

2   test the Court must apply. Despite that, CedarCrestone contends these violations resulted in

3   "tangible prejudice" that should preclude access, for purposes of resolving the claims related to

4   them, to the ███████████████████████████████. If CedarCrestone has

5   suffered prejudice, it caused that prejudice itself by first breaking the rules, then trying to cover it

6   up and prevent Oracle from finding out the truth or enforcing its rights.

7       Oracle has *never* violated the Protective Order. To the contrary, to avoid just such a

8   charge, Oracle engaged with CedarCrestone's counsel for the specific purpose of negotiating a

9   Protective Order modification so that Oracle's counsel could discuss the discovery with others

10   within Oracle, for the express purpose of attempting to resolve these issues with CedarCrestone.

11   Dkt. 342 at ¶¶ 7-8. CedarCrestone agreed to that modification. *Id.* at ¶ 8. Oracle then concluded

12   that CedarCrestone had infringed, and was continuing to infringe, Oracle's intellectual property.

13   *Id.* at ¶ 9. Rather than seek relief from the Protective Order to sue immediately, Oracle instead

14   invited CedarCrestone to negotiate and try to resolve the dispute. *Id.* at ¶ 7. CedarCrestone now

15   denies it ever agreed to a Protective Order modification. However, it cannot explain why it

16   specifically requested that Oracle educate a business person about the issues raised by the Rimini

17   Street discovery and bring that person to an in-person meeting that Oracle proposed at which the

18   parties discussed these same issues. *Id.* at ¶ 8; Dkt. 342-4.

19   ███████████████████████████████████████████

20   ███████████████████████████████████████████

21   ███████ Dkt. 342 at ¶ 10. It promised to stop some, but not all, of that conduct. *Id.* at ¶ 11.

22   The Oracle attendees heard these statements. *Id.* Even as to the conduct CedarCrestone

23   promised to stop, it would not commit to stop by a date certain. *Id.* ██████████████

24   █████████████████████████████████ Howard Decl. at ¶ 4;

25   Dkt. 352, Declaration of Brian Fees at ¶¶ 3-8 (█████████████████████████

26   ██████████████████████████████████). In addition,

27   throughout the months-long process of setting up and conducting these discussions, and even

28   dating back to the subpoena itself, CedarCrestone did not act as a partner should. It refused to

1   provide basic information. Dkt. 342 at ¶¶ 4-6. It stalled. *Id.* It raised technical objections and

2   hid the important substance. *Id.* It forced an unnecessary motion to compel after untimely

3   raising eighteen single-spaced pages of objections before capitulating and agreeing to produce

4   the discovery. Dkt. 342 at ¶¶ 3-6; Howard Decl., Ex. 4 (CedarCrestone letter). It would not

5   cooperate with basic, reasonable requests. It behaved as if it had something to hide, not like a

6   trustworthy partner.

7          CedarCrestone's statements and admissions in the negotiation alone would justify

8   Oracle's lawsuit and its refusal to continue joint marketing activities with CedarCrestone. But

9   CedarCrestone's related behavior also violated its partnership agreement with Oracle and

10  confirmed Oracle's view that it could not trust CedarCrestone.

11         CedarCrestone claims now that no "dispute" existed other than the claims Oracle

12  contended arose from the Rimini Street discovery. Opp. at 16:28-17:1. Not true. All of this

13  conduct constituted a "dispute," and at least gave Oracle serious pause about its purported

14  partner. Finally, CedarCrestone's allegations, without support, ███████████████

15  ████████████████████████████████████████████████████

16  ████████████████ Dkt. 342 at ¶ 10. ████████████████

17  ████████████████████████████████████████████████████

18  ████████████████ *Id.*

19         Oracle did not violate the Protective Order. It has not engaged in "sanctionable conduct."

20  If CedarCrestone had acted like a true partner, or even complied with its partnership agreement,

21  it would have suffered none of the alleged prejudice it now claims.

22  **III.   THE COURT SHOULD DENY CEDARCRESTONE'S ALTERNATIVE**
        **MOTION FOR STAY**
23
           CedarCrestone's request to stay modification of the Protective Order pending
24
    reconsideration by the District Judge is procedurally and substantively improper. To obtain a
25
    stay of a Magistrate Judge's order pending review by a District Court Judge, the movant must
26
    show: (1) a likelihood of success on the merits of the appeal, (2) that the movant will suffer
27
    irreparable injury in the absence of a stay, (3) that other parties will not be substantially injured
28

1    by a stay, and (4) the stay will not harm the public interest.  *Vallabhapurapu v. Burger King*

2    *Corp.*, 2011 WL 5036705, at *1 (N.D. Cal. Oct. 21, 2011).  CedarCrestone has not even

3    attempted to meet these standards.  Indeed, it is difficult to imagine how CedarCrestone could

4    argue it would suffer irreparable injury in particular when Oracle already has the information it

5    seeks to use in the collateral litigation.  Instead, it will be Oracle, not CedarCrestone, which is

6    injured by CedarCrestone's continued infringement of Oracle's intellectual property.[1]  The cases

7    cited by CedarCrestone (Opp. at 19:4-15) are not applicable because they involve privilege or

8    work-product materials not at issue here.  *See, e.g., Republic of Ecuador v. Bjorkman*, 2012 U.S.

9    Dist. LEXIS 6827, at *5 (D. Colo. Jan. 20, 2012) (work product); *Zander v. Craig Hosp.*, 2010

10   WL 1571213, at *2 (D. Colo. Apr. 20, 2010) (privilege); *In re Motor Fuel Temperature Sales*

11   *Practices Litig.*, 2010 WL 3724665, at *1-2 (D. Kan. Sept. 16, 2010) (privilege).  Indeed, these

12   cases recognize "stays of magistrate judge discovery orders should be granted sparingly."

13   *Zander*, 2010 WL 1571213, at *1.  Finally, the old, out of district cases cited by CedarCrestone

14   to argue that failure to apply a stay will chill the willingness of witnesses to provide discovery

15   subject to a protective order all relate to government discovery in criminal investigations, not an

16   issue here.  *See, e.g., Martindell v. Int'l Tel. and Tel. Corp.*, 594 F.2d 291, 295-96 (C.A.N.Y.

17   1979); *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 43 (N.D. Fla. 1998).   The Court should

18   deny CedarCrestone's request for a stay.

19   **IV.    CONCLUSION**

20          For the reasons stated above, the Court should grant Oracle's motion to modify the

21   Protective Order in the form proposed by Oracle in its Proposed Order (Dkt. 387).

22

23   _____

24   [1] CedarCrestone's cases are oddly irrelevant, although Oracle does not dispute the elements of
     the test for a stay. *Munoz-Santana v. U.S. I.N.S.*, 742 F.2d 561 (9th Cir. 1984), did not even
25   mention a stay but rather involved review of unrelated discovery rulings; *Trs. of the N. Nev.*
     *Operating Eng'rs Health & Welf v. Mach 4 Constr., LLC*, 2009 U.S. Dist. LEXIS 62600 at *9
26   (July 7, 2009) determined the motion for stay was moot; *Hilton v. Braunskill*, 481 U.S. 770
     (1987) and *Nken v. Holder*, 556 U.S. 418 (2009) did not involve a Magistrate's ruling; and *Lopez*
27   *v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) denied the motion for a stay.

28

1    DATED:  October 4, 2012              BINGHAM McCUTCHEN LLP

2

3                                        By:        /s/ Geoffrey M. Howard

4                                                Geoffrey M. Howard
                                                 Attorneys for Plaintiffs
5                                        Oracle USA, Inc., Oracle America, Inc., and
                                                Oracle International Corp.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION TO MODIFY PROTECTIVE ORDER