1  SHOOK, HARDY & BACON LLP
   B. Trent Webb, Esq. *(pro hac vice)*
2  2555 Grand Boulevard
   Kansas City, Missouri 64108-2613
3  Telephone: (816) 474-6550
   Facsimile: (816) 421-5547
4  bwebb@shb.com

5  Robert H. Reckers, Esq. *(pro hac vice)*
   600 Travis Street, Suite 3400
6  Houston, Texas   77002
   Telephone: (713) 227-8008
7  Facsimile: (713) 227-9508
   rreckers@shb.com
8
9
10
11
12
13
   GREENBERG TRAURIG
   Mark G. Tratos, Esq. (Nevada Bar No. 1086)
   Brandon Roos, Esq. (Nevada Bar No. 7888)
   Leslie Godfrey, Esq. (Nevada Bar No. 10229)
   3773 Howard Hughes Parkway
   Suite 400 North
   Las Vegas, NV 89169
   Telephone:  (702) 792-3773
   Facsimile:  (702) 792-9002
   tratosm@gtlaw.com
   roosb@gtlaw.com
   godfreyl@gtlaw.com

   LEWIS AND ROCA LLP
   W. West Allen (Nevada Bar No. 5566)
   3993 Howard Hughes Parkway, Suite 600
   Las Vegas, Nevada 89169
   Tel: (702) 949-8200
   Fax: (702) 949-8398
   WAllen@LRLaw.com

   *Attorneys for Defendants*
   *RIMINI STREET, INC. and SETH RAVIN*

                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA

16  ORACLE USA, INC., a Colorado corporation;  )   Case No. 2:10-cv-0106-LRH-PAL
17  ORACLE AMERICA, INC., a Delaware           )
    corporation; and ORACLE INTERNATIONAL      )   **RIMINI STREET'S STATEMENT OF**
18  CORPORATION, a California corporation,      )   **FACTS IN SUPPORT OF ITS OPPOSITION**
                                               )   **TO ORACLE'S SECOND MOTION FOR**
19              Plaintiffs,                     )   **PARTIAL SUMMARY JUDGMENT AND**
                                               )   **RESPONSE TO ORACLE'S ALLEGED**
20         vs.                                  )   **FACTS**
                                               )   **(L.R. 56-1)**
21  RIMINI STREET, INC., a Nevada corporation;  )
    SETH RAVIN, an individual,                  )
22                                              )
                Defendants.                     )   Date:      _____, 2012
23  _____)   Time:      _____ __.m.
                                                )   Place:     Courtroom ___
24                                                  Judge:     Hon. Larry R. Hicks

25     Pursuant to Civil Local Rule 56-1, Defendant Rimini Street, Inc., ("Rimini"), submits this

26  statement responding to the alleged facts proffered by Oracle in support of its second motion for

27  partial summary judgment. This statement further sets forth each fact in support of Rimini's

28  opposition to Oracle's motion, with citations to the evidence in support of each fact.

**I.   RIMINI STREET'S RESPONSE TO FACTS RELATED TO RIMINI'S COPYING AND USE OF ORACLE DATABASE**

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 1. | Oracle International Corporation owns or is the exclusive licensee of all copyrights-in-suit, including the copyrights for the six versions of Oracle's Relational Database Management Software ("Oracle Database") at issue in Oracle's second motion for partial summary judgment. | **Undisputed.** |
| 2. | The copyrights for the six versions of Oracle Database at issue in Oracle's second motion for partial summary judgment are all valid. | **Undisputed.** |
| 3. | The Oracle License and Service Agreement ("OLSA") permits paying customers to use Oracle Database subject to certain limitations, such as that ███████████ | **Disputed in part.**<br><br>Rimini admits that certain Oracle License and Service Agreements ("OLSA") permit customers to use Oracle Database subject to certain limitations, such as that ███████<br><br>**Declaration of Robert H. Reckers in Support of Rimini Street's Opposition to Oracle's Second Motion for Partial Summary Judgment ("Reckers Decl.") ¶¶ 2-5 & Exs. 1-4 (ORCLRS1313013, ORCLRS1313047, ORCLRS1312961, and ORCLRS1312992).**<br><br>**Dkt. 236 (Stipulation and Order Concerning Claims Related to Rimini's Use** |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | **of Oracle Database).** |
| | | The Parties agreed on March 22, 2012 that "the terms of the [27] Oracle standard form Database licenses" listed in Dkt. 236 "are representative of the licenses Oracle entered into with its customers for use of Oracle database. The Parties further agree[d] that, to the extent either Party wishes to invoke the terms of an Oracle Database license, for any purpose in the litigation or at trial, the Parties will substitute the terms of Oracle's standard form Database licenses (which Oracle has produced), for the actual Database license agreements entered into between Oracle and its customers . . . ." |
| | | ORCLRS1313013, ORCLRS1313047, ORCLRS1312961, and ORCLRS1312992 are among the "Oracle Standard Licenses" listed in Dkt. 236. |
| 4. | The Developer License allows application developers to use Oracle Database for free "only for the purpose of developing, testing, prototyping and demonstrating your application, and not for any other purpose," and it provides that the developer may not use Oracle Database "for any commercial or production purpose." | **Disputed.** <br><br> The Developer License permits use of Oracle Database for "developing, testing, prototyping and demonstrating your application" and disallows use of Oracle Database for "internal data processing or for any commercial or production purposes, or use the programs for any purpose _except_ the development of your application." <br><br> **Dkt. 407, Declaration of Manu Pradhan In Support of Oracle's Second Motion for Partial Summary Judgment ("Pradhan Decl.") ¶ 7 & Dkt. 411, Plt. Ex. 5 (Developer License).** |
| 5. | "You" and "your" is defined in the Developer License to mean the individual or entity that wishes to use the programs from Oracle. | **Undisputed.** |

3

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 6. | The Developer License provides that the user may not "continue to develop your application" on Oracle Database "after you have used it for any . . . commercial purpose . . . without securing an appropriate license from us, or an Oracle reseller." | **Disputed in part**, as misleading and incomplete.<br><br>Oracle's citation to the Developer's License alters the language from the license agreement.<br><br>The Developer License provides that the user may not "continue to develop your application after you have used [the application] for any internal data processing, commercial or production purpose without securing an appropriate license from us, or an Oracle reseller."<br><br>**Dkt .407, Pradhan Decl. ¶¶ 5-7 & Dkt. 419, Plt. Ex. 3 (3/09/05 Developer License), Dkt. 411, Plt. Ex. 4 (1/24/08 Developer License), Dkt. 411, Plt. Ex. 5 (1/24/08 Developer License).** |
| 7. | The Developer License and the OLSA state that they are "governed by the substantive and procedural laws of California." | **Undisputed.** |
| 8. | ██████████████████████ | **Undisputed.** |
| 9. | ██████████████████████ | **Undisputed.** |
| 10. | Rimini admits to ███████████ ██████████████████████ | **Undisputed.** |
| 11. | The copies ████████ ████████ cover five of the six copyrights for Oracle Database at issue in Oracle's second motion for partial | **Undisputed.** |

4

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | summary judgment. | |
| 12. | Creating a complete copy of installation media also creates a copy of any protected expression present on that installation media. | **Undisputed.** |
| 13. | ████████████████████████ ████████████ | **Undisputed.** |
| 14. | In discovery, when asked to identify what license authorized its Oracle Database, ██████████████ | **Undisputed.** |
| 15. | As Rimini Vice President George Lester testified, ██████████████████ ██████████████ | **Disputed in part,** as misleading and incomplete.<br><br>Rimini admits that, at certain times ██████████████████ ██████████████████ ██████████████████<br><br>**Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 85:8–11, 14–24.**<br><br>██████████████████ ██████████████████<br><br>██████████████████ ██████████████████ |
| 16. | ██████████████████ ██████████ | **Undisputed,** that Mr. Lester testified ████ |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | ████████████ | ████████████ |
| | | **Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 83:3-10.** |
| 17. | At his deposition, Seth Ravin, Rimini's founder and CEO, recalled having discussed with Mr. ████████████ | **Disputed.** Mr. Ravin's sole recollection at his deposition was that ████████████ **Dkt. 407, Pradhan Decl. ¶ 18 & Dkt. 419, Plt. Ex. 16 (Ravin Depo.) at 446:12-447:17.** |

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
|  |  | ███████████████ |
| 18. | █████████████ | Undisputed. |
| 19. | Rimini admits ████████ | Undisputed. |
| 20. | ███████████ | Undisputed. |
| 21. | ████████████ | Undisputed. |
| 22. | An installed copy of Oracle Database includes copies of substantial portions of the source code and related components of the underlying Oracle Database software. | Undisputed. |
| 23. | ███████████ | Undisputed. |
| 24. | ███████████ | Undisputed. |



7



| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | ▮▮▮ | |
| 25. | ▮▮▮▮▮▮▮▮ | **Disputed in part,** as overly broad.<br><br>Rimini admits that, at certain times, ▮▮▮▮▮▮▮▮▮▮▮▮<br><br>**Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 85:8–11, 14–24:**<br><br>▮▮▮▮▮▮▮▮ |
| 26. | ▮▮▮▮ | **Undisputed.** |
| 27. | ▮▮▮▮ | **Undisputed.** |
| 28. | ▮▮▮ | **Undisputed.** |
| 29. | ▮▮▮▮ | **Disputed.**<br><br>▮▮▮▮ |

8

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
|  |  | <br><br>Dkt. 407, Pradhan Decl. ¶ 18 & Dkt. 419, Plt. Ex. 16 (Ravin Depo.) at 243:3–6.<br><br> |
| 30. |  | **Disputed in part.**<br><br>Rimini admits <br><br>*See, e.g.,* Dkt. 407, Pradhan Decl. ¶ 47 & Dkt. 420, Plt. Ex. 45 (Rimini Street Support Services Agreement at RSI06800798).<br><br> |
| 31. |  | **Undisputed.** |
| 32. |  | **Disputed in part**, as misleading.<br><br>Rimini admits Mr. Lester testified |

9

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | ████████████████ |
| | | **Dkt. 260, Declaration of Robert H. Reckers In Support of Defendant Rimini Street Inc.'s Opposition to Oracle's [First] Motion for Partial Summary Judgment ("Reckers First Decl.") ¶ 12 & Dkt. 267, Ex. 11 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 62:5-15.** ████████████████ |
| 33. | ████████████████ | **Disputed in part,** as misleading and incomplete. Ms. Lester testified that ████████████████ **Dkt. 407, Pradhan Decl. ¶ 14 & Dkt. 419, Ex. 12 (B. Lester Rule 30(b)(6) Depo.) at 39:2-6.** ████████████████ |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1



| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 34. |  | Undisputed. |
| 35. |  | Undisputed. |
| 36. |  | Undisputed. |
| 37. |  | **Disputed in part.** Rimini admits Mr. Limburg ▮ wrote an internal email that is accurately quoted in Oracle's alleged fact. ▮ *See, supra,* **Rimini's Responses to Oracle's Disputed Facts 4 and 6.** |
| 38. |  | Undisputed. |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 39. | ██████████████████████████████ | **Disputed in part,** as overly broad. Rimini admits ██████████████████ ██████████████████████████ **Reckers Decl. ¶ 6 & Ex. 5 (Slepko Depo., Dec. 15, 2011) at 34:5-14.** ██████████████████████ ██████████████████████ **Reckers Decl. ¶ 7 & Ex. 6 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 72:19-22.** ██████████████████████ |
| 40. | ██████████████████████████ | **Disputed.** Mr. Lester testified ██████████ ██████████████████████ **Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 114:9-13.** ██████████████████ |

12

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | ████████████████ |
| 41. | ████████████ | **Disputed,** as overly broad.<br><br>Mr. Lester did not ████████<br>████████████████<br>████████████████<br><br>**Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 114:9-13.**<br><br>████████████████ |
| 42. | ████████████ | **Disputed in part,** as overly broad.<br><br>Rimini admits that it does not own the Oracle source code underlying its updates. Rimini has not further taken a position on its ownership rights in its updates. |
| 43. | ████████████ | **Disputed in part,** as overly broad.<br><br>Rimini admits that Oracle's alleged fact accurately quotes an email from one of Rimini's employees. Rimini further admits that it does not own the Oracle source code underlying its updates. Rimini has not further taken a position on its ownership rights in its updates. |
| 44. | ████████████ | **Undisputed.** |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | ■ | |
| 45. | Until late in 2011, Rimini did not provide support for customers on Oracle Database. | ■ |
| 46. | ■ | **Disputed.**<br><br>The products supported by Rimini ■<br><br>**Dkt. 407, Pradhan Decl. ¶¶ 46-56 & Dkt.** |

14

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | 420, Plt. Exs. 44–48, Dkt. 421, Plt. Exs. 49-54 (Rimini support agreements). |
| 47. | | **Disputed.**<br><br>The products supported by Rimini <br><br>Dkt. 407, Pradhan Decl. ¶¶ 46-56 & Dkt. 420, Plt. Exs. 44–48, Dkt. 421, Plt. Exs. 49-54 (Rimini support agreements). |
| 48. | | **Disputed.**<br><br>Since 2009, Rimini<br><br>Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 85:8–11, 14–24. |

15

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
|  |  | ██████████████████ |
| 49. | ██████████████ | Undisputed. |
| 50. | ██████████████ | Undisputed. |
| 51. | ██████████████ | Undisputed. |
| 52. | ██████████████ | Undisputed. |
| 53. | ██████████████ | Undisputed. |
| 54. | ██████████████ | Undisputed. |
| 55. | ██████████████ | Undisputed. |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | ████████████████ | |
| 56. | ████████████████████ | Undisputed. |

## II. RIMINI STREET'S RESPONSE TO FACTS RELATED TO RIMINI'S AFFIRMATIVE DEFENSES OF STATUTE OF LIMITATIONS AND LACHES

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 57. | Oracle brought this action on January 25, 2010. | Undisputed. |
| 58. | Citing the three-year limitations period set forth at 17 U.S.C. § 507(b), Rimini asserts that all of Oracle's copyright claims are untimely "with respect to acts that occurred prior to January 25, 2007." | Undisputed. |
| 59. | Oracle served Rimini an interrogatory requesting that Rimini "[i]dentify all facts that support" Rimini's statute of limitations defense. | Undisputed. |
| 60. | Rimini's response to that interrogatory identifies no specific evidence, but instead states generally that "Oracle had or should have had knowledge that Rimini was in business and competing with Oracle, that it was accessing and downloading materials from Oracle's systems on behalf of its clients, that it was receiving delivery of Oracle software, and that it was software support services, including updates and patches. | **Disputed.** Rimini's response to Oracle's interrogatory identified specific evidence. For example, Rimini's response stated that, "Siebel sent a letter to Rimini on September 26, 2005 indicating that it knew of Rimini's activities, and Rimini replied by letter of October 5, 2005 discussing its access to Siebel's systems, its provision of support services and updates, and its competitive status with Siebel. Similarly, in June 2007, Rimini Street wrote Oracle stating that Rimini Street believed Oracle's actions were anti-competitive and constituted a breach of its license agreements |

17

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | with its clients." **Dkt. 407, Pradhan Decl. ¶ 58 & Dkt. 413, Plt. Ex. 56 (Rimini's Responses to Oracle's 8th Set of Interrogatories) at 9.** *See* **Dkt. 407, Pradhan Decl. ¶¶ 59-60 & Dkt. 421, Plt. Ex. 57 (Sept. 26, 2005 Letter from S. Gattey to S. Ravin), Plt. Ex. 58 (Oct. 6, 2005 Letter from P. Byrne to S. Gattey).** | |
| 61. | Rimini launched its business in September 2005, focusing initially on offering support for Siebel products, which it later expanded to include J.D. Edwards and PeopleSoft products. | **Undisputed.** |
| 62. | ███████████████████████ | **Undisputed.** |
| 63. | ███████████████████████ | **Disputed,** as misleading and incomplete. Rimini admits the quoted language appears in Rimini's letter. ██████████████ ████████████████ **Dkt. 407, Pradhan Decl. ¶ 60 & Dkt. 421, Plt. Ex. 58 (Oct. 6, 2005 Letter from P. Byrne to S. Gattey) at RSI03232064.** ████████████████ |
| 64. | Rimini contends in this litigation that the actions it took to support its customers were authorized by its customers' license | **Undisputed.** |

18



| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | agreements with Oracle. | |
| 65. | | Undisputed. |
| 66. | | Disputed in part. Rimini admits that its 2005 letter ██████████ ████████ Dkt. 407, Pradhan Decl. ¶ 60 & Dkt. 421, Plt. Ex. 58 (Oct. 6, 2005 Letter from P. Byrne to S. Gattey) at RSI03232064. *See, e.g.,* Dkt. 30 (Defendant Rimini Street Inc.'s Answer and Counterclaims) at ¶¶ 5– |

19

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | 6); Dkt. 407, Pradhan Decl. ¶ 103 & Dkt. 415, Plt. Ex. 96 (Rimini's Answer to Oracle's Second Amended Complaint and First Amended Counterclaim) at ¶¶ 5–6. |
| | | "5. With respect to Oracle's complaint about Rimini Street possessing copies of Oracle customer licensed software, Oracle customers authorize Rimini Street to possess and use such copies. Not only is possessing and using the copies legal, it is an industry standard for third party vendors like IBM, AT&T, Accenture, CedarCrestone, and countless others who work with the same Oracle customer licensed software. Oracle is well aware of Rimini Street's authorized possession and usage of customer licensed software because Oracle itself delivered the software to Rimini Street for hundreds of its customers. |
| | | 6. Oracle is fully aware of Rimini Street's processes and procedures. If Oracle had genuine concerns about Rimini Street's use of its intellectual property, Oracle could have accepted Rimini Street's numerous offers since September 2005 to openly and transparently review and discuss Rimini Street processes and procedures, or Oracle could have even accepted Rimini Street's invitation to review internal materials and Rimini Street's invitation to have a third-party independent auditor review Rimini Street's compliance with its processes and procedures." |
| | | **Dkt 270, Declaration of Brooks L. Hilliard in Support of Rimini's Opposition to Oracle's [First] Motion for Partial Summary Judgment ("Hilliard Decl.") at ¶¶ 11–12.** |
| | | "11. Enterprise software support – whether done by the developers of the software, licensees of the software, or |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | consultants engaged by the licensees requires the creation of multiple nonproduction copies of the software applications being supported. ███████████████████████ ███████████████████████ ████████████. . . . As reflected by these documents, the maintenance of non-production software copies (e.g., for development, testing, archival, disaster recovery, troubleshooting and other support purposes) is the normal and customary practice in the industry and, in my experience of reviewing hundreds of enterprise software licenses, there are seldom (if ever) any contractual limits on the number of nonproduction copies that licensees can maintain. . . . . 12. When engaged, consultants likewise create and rely on non-production copies of the software to provide services in connection with the licensees' use of the software.  For example, development of custom modifications to prior code has historically occurred on computers maintained by the consultants with development occurring both in, and outside of, the United States. The motivation to have this work performed offsite (for purposes of convenience and cost, among others) remains similar today as when it first began in the early 1990s.  In particular, the normal and customary way that a professional software development organization (such as a consulting organization) modifies and updates a customer's software is to create non-production copies of the software on the consultant's computer systems, such that the non-production versions of the software can be maintained and modified as needed. Oracle acknowledges that companies often 'copy production data into staging or test environments to allow in-house developers or |

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | offshore testers to perform application development and application testing.' Ex. 27 (ORCLRS0811866-72) at ORCLRS0811870. Oracle's website explains that it is 'normal' for a single production instance of Oracle ERP software 'to have ten or more corresponding test or development instance copies for use by several different teams of developers or departments.' In fact, Oracle provides its licensees tools to facilitate remote development work." |
| 67. |  | **Disputed in part.**<br><br>Rimini admits |
| 68. | | **Undisputed.** |
| 69. | | **Undisputed.** |
| 70. | | **Disputed in part.**<br><br>Rimini admits that |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ |
| | | Dkt. 260, Reckers First Decl. ¶ 9 & Dkt. 267, Plt. Ex. 8 (G. Lester Depo.) at 136:12-18. |
| | | ████████████████████████████ ████████████████████████████ ████████████████████████████ |
| | | Dkt. 239, Declaration of Thom O'Neill in Support of Oracle's [First] Motion for Partial Summary Judgment ("O'Neill Decl.") ¶ 3 & Dkt. 248, Plt. Ex. 10 (City of Flint License) at §§ 1.2.b, c. |
| | | ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ |
| 71. | ████████████████████ | Undisputed. |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
|  | ██████████████████████ ██████████████████████ ████████████████ ███████ |  |
| 72. | ██████████████████████ ██████████████████████ ████████████████ | **Disputed in part.**<br><br>Rimini admits ███████ ██████████████████████████ ██████████████████████████<br><br>██████████████████████████ ██████████████████████ |
| 73. | Rimini alleged in a pleading filed in this Court that as late as March 2009 and March 29, 2010, when Rimini employees allegedly made defamatory statements, Oracle had "no basis to believe in . . . [the] illegality of Rimini Street's business practices." | **Undisputed.** |
| 74. | Rimini told its customers that ██████████████████████████ ██████████████████████████ ██████████████████████ | **Disputed in part,** as overly broad.<br><br>The statement in Oracle's alleged fact is accurately quoted, but there is no evidence this statement was sent to more than one customer. |
| 75. | In a pleading filed on June 16, 2011, Rimini asserted that "'clients' Oracle Software and Support Materials are not physically co-mingled together" and that a central "'library' of Oracle's intellectual property 'to support its present and prospective customers'" has "never existed at Rimini Street." | **Disputed in part.**<br><br>Rimini admits that its pleading dated June 16, 2011 states that each of its clients "has a unique data 'silo' for storing clients' Oracle Software and Support Material" such that the materials "are not physically co-mingled together." These statements are true.<br><br>Rimini, however, disputes that it has ever claimed to have silo-ed all Oracle software ever in its possession, as Oracle's out-of- |

24

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | context quotations suggests.  In reality, the alleged "library" denial Oracle purports to quote was directed to a specific allegation in Oracle's complaint, namely that Rimini improperly accessed Oracle's website to download support materials so as "to stockpile a library to support its present and prospective customers."  Dkt. 146 at 60. Rimini truthfully denied this allegation, and the evidence indeed establishes that Rimini has not maintained the alleged central library of downloaded Oracle support material.<br><br>**Reckers Decl. ¶ 7 & Ex. 6 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 39:6-20.**<br><br>█████████████████████████████ |
| 76. | Only after discovery revealed the falsity of this assertion did Rimini concede that it did co-mingle different customer software together and that it did use such a "library of Oracle's intellectual property" for years at Rimini. | **Disputed.**<br><br>As set forth by Rimini's response to Oracle's previous alleged fact, Rimini's assertions were not false.  Further, while Rimini admits that it stored Oracle software (here, installation media) obtained on behalf of different clients in the same folder, "the reality is that this folder . . . was organized by software release so Rimini personnel could |

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | easily determine which clients were entitled to the stored media." **See Dkt. 336, Defendants' Opposition to Oracle's Motion for Evidentiary Sanctions for Spoliation [Redacted] at 4–5.** "[T]his folder . . . was organized by software release so Rimini personnel could easily determine which clients were entitled to the stored media." |

### III. RIMINI STREET'S RESPONSE TO FACTS RELATED TO RIMINI'S COUNTERCLAIMS BASED ON ALLEGED DEFAMATION

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 77. | *Alleged Defamatory Statement 1* ████████████████ | Undisputed. |
| 78. | As to Alleged Defamatory Statement 1, Rimini does not know who made the alleged "insinuation" to Pat Phelan of Gartner Research. | **Undisputed** that Rimini has not identified, by name, the individual that made Alleged Defamatory Statement 1. As noted in Rimini Street's Opposition to Oracle's Second Motion for Partial Summary Judgment, after conducting discovery, Rimini elected not to pursue its defamation claims as to Alleged Defamatory Statement 1. |
| 79. | In discovery, Oracle asked Rimini to identify the actual contents of the alleged defamatory statement to Ms. Phelan and to identify the Oracle employee who allegedly made the statement. Rimini's May 18, 2011 supplemental response to | Undisputed. |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | that interrogatory, which Rimini admits contains all "the information it currently has," identifies no speaker or statement. | |
| 80. | Rimini sought no documents, deposition testimony or any other discovery from Ms. Phelan or Gartner Research. | **Undisputed** that Rimini did not seek formal discovery from Ms. Phelan or Gartner Research. |
| 81. | Rimini neither asked any Oracle witness at deposition nor served Oracle with any written discovery about Alleged Defamatory Statement 1, including as to (a) any specific statement to Ms. Phelan about Rimini or (b) the identity or state of mind of the Oracle employee who made the alleged "insinuation" about Rimini to Ms. Phelan. | **Disputed in part.**<br><br>Rimini admits that it did not seek formal discovery specifically related to Alleged Defamatory Statement 1.<br><br>However, Rimini took formal discovery, both written and through depositions, regarding statements made by Oracle to industry analysts.<br><br>**Dkt. 407, Pradhan Decl. ¶ 81 & Dkt. 422, Plt. Ex. 73 (Jones Depo.) at 64:1-65:6, 72:12-76:1, 83:12-85:19, 106:5-19** (discussing statements made by Oracle to industry analysts).<br><br>**Reckers Decl. ¶ 8 & Ex. 7 (Defendant Rimini Street Inc.'s Second Set of Requests for Production of Documents to Plaintiffs (No. 1-88)).**<br><br>"Request No. 2:  All documents relating to any statement, communication, or correspondence made, generated, or authorized by Oracle that refers or relates to the Defendants, the Defendants' products or services, or this lawsuit, including, without limitation, any speeches, interviews, press releases, or publications made by Oracle to members of the media, analysts, an Oracle customer, a potential Oracle customer, or a Rimini Street client." |

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| 82. | Rimini contends that it "inquired into analyst conversations and . . . derogatory comments regarding Rimini" at the deposition of Oracle employee Juan Jones, citing Mr. Jones' deposition transcript at 64:1-65:6, 72:12-76:1, 83:12-85:19, 106:5-19. The testimony Rimini cites does not relate to the speaker or contents of Alleged Defamatory Statement 1 or any communication between any Oracle employee and any analyst regarding Rimini. | Undisputed. |
| 83. | *Alleged Defamatory Statement 2:* ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ | Undisputed. |
| 84. | Ms. Hellinger believed her statement that Rimini had engaged in "massive theft" of Oracle's intellectual property to be true and had no doubt as to its truthfulness. | **Disputed.** As Oracle's Senior Director of Corporate Communications (**Dkt. 409, Declaration of Deborah Hellinger In Support Of Oracle's Second Motion for Partial Summary Judgment ("Hellinger Decl.") ¶¶ 1-2**), Ms. Hellinger speaks for Oracle as an agent of the company. As set forth by the below-cited evidence, Oracle knew or should have known that its "massive theft" statements were false, |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | given: |
| | | Oracle knew that every Rimini client is licensed by Oracle to the software products supported by Rimini. *See, infra*, **Rimini's Statement of Facts Supporting Its Opposition ("SOF") 38**; |
| | | Oracle knew that it is common industry practice for third party vendors to possess and work with copies of their clients' licensed software products. *See, infra*, **SOF 10**; and |
| | | Oracle worked closely with Rimini Street personnel and knowingly sent hundreds of copies of Oracle software to Rimini over the years. *See, infra*, **SOF 22-23**. |
| 85. | Rimini neither deposed Ms. Hellinger nor designated her as an Oracle custodian whose documents should be produced in this case. | **Undisputed.** |
| 86. | Rimini did not propound any written discovery, or ask any witness at deposition, about Ms. Hellinger's statements to the press. | **Disputed in part.**<br><br>Rimini admits it did not seek discovery specifically directed to Ms. Hellinger's statements to the press.<br><br>However, Rimini propounded discovery regarding defamatory statements that Oracle representatives made to third parties, including the press.<br><br>**Reckers Decl. ¶ 8 & Ex. 7 (Defendant Rimini Street Inc.'s Second Set of Requests for Production of Documents to Plaintiffs (No. 1-88)).**<br><br>"Request No. 2:  All documents relating to any statement, communication, or correspondence made, generated, or authorized by Oracle that refers or relates to the Defendants, the Defendants' products or |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | services, or this lawsuit, including, without limitation, any speeches, interviews, press releases, or publications made by Oracle to members of the media, analysts, an Oracle customer, a potential Oracle customer, or a Rimini Street client." |
| 87. | *Alleged Defamatory Statement 3:* <br><br> ████████████████ | **Undisputed.** |
| 88. | With respect to Alleged Defamatory Statement 3, Rimini bases its defamation claim solely on the quote from Oracle's complaint that appears in the *Information Week* article that Mr. McLeod forwarded to Ms. Fogarty. | **Disputed.** <br><br> The false and defamatory statements in Mr. McLeod's email were not solely limited to quotes from Oracle's Complaint. <br><br> **Dkt. 410, Declaration of James McLeod In Support of Oracle's Second Motion For Partial Summary Judgment ("McLeod Decl.") ¶¶ 2, 4 & Dkt. 422, Plt. Ex. 74 (ORCLRS0587677-78).** <br><br> Title: "Oracle Sues Rimini Street for 'Massive Theft'" <br><br> "Rimini's heavily discounted support offerings for Siebel, JD Edwards, and PeopleSoft apps are illegal, Oracle claims in |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | court documents." |
| | | "*InformationWeek* has learned that the software maker on Monday filed a lawsuit against Ravin's Rimini Street, Inc. for allegedly swiping Oracle software and intellectual property so it can provide cut-rate, third-party support to Oracle." |
| | | "Oracle said Rimini Street is using ill-gotten materials to provide such services." |
| | | "In its suit against Rimini Street, Oracle alleges that Ravin is committing the same alleged breaches under a new shingle." |
| | | "Oracle claimed Rimini uses automated bots to scour its Web site and download the materials after obtaining passwords from Oracle customers." |
| | | "It also accused Rimini Street of possessing illegal copies of Oracle enterprise applications." |
| 89. | Oracle said in its Complaint filed in this Court on January 25, 2010 that "[t]his case is about massive theft of Oracle's software and related support materials through an illegal business model . . . ." | **Undisputed.** |
| 90. | Mr. McLeod believed the *Information Week* article he forwarded to Ms. Fogarty truthfully reported the contents of Oracle's complaint in this case and he had no doubts that it did so. | **Disputed.**<br><br>As Oracle's Regional Services Sales Manager (**Dkt. 410, McLeod Decl. ¶¶ 1-2**), Mr. McLeod speaks for Oracle as an agent of the company.  As set forth by the below-cited evidence, Oracle knew or should have known that its "massive theft" and "illegal business model" statements were false, given:<br><br>Oracle knew that every Rimini client is licensed by Oracle to the software products supported by Rimini.  *See, infra,* **SOF 38**; |

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | Oracle knew that it is common industry practice for third party vendors to possess and work with copies of their clients' licensed software products. *See, infra*, **SOF 10**; and<br><br>Oracle worked closely with Rimini Street personnel and knowingly sent hundreds of copies of Oracle software to Rimini over the years. *See, infra*, **SOF 22-23**. |
| 91. | Rimini did not depose Mr. McLeod or Ms. Fogarty in this case. | **Undisputed.** |
| 92. | Rimini did not propound any written discovery, or ask any witness at deposition, about Mr. McLeod's email to Ms. Fogarty. | **Disputed.**<br><br>Oracle produced Mr. McLeod's email in response to Rimini's written discovery requests.<br><br>**Dkt. 410, McLeod Decl. ¶¶ 2, 4 & Dkt. 422, Plt. Ex. 74 (ORCLRS0587677-78).**<br><br>**Reckers Decl. ¶ 8 & Ex. 7 (Defendant Rimini Street Inc.'s Second Set of Requests for Production of Documents to Plaintiffs (No. 1-88)).**<br><br>"Request No. 2:  All documents relating to any statement, communication, or correspondence made, generated, or authorized by Oracle that refers or relates to the Defendants, the Defendants' products or services, or this lawsuit, including, without limitation, any speeches, interviews, press releases, or publications made by Oracle to members of the media, analysts, an Oracle customer, a potential Oracle customer, or a Rimini Street client."<br><br>"Request No. 63:  All documents relating to communications to or from any former, current or prospective customer of either Oracle or Defendants that refers or relates to |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | Rimini Street's products or services." |
| 93. | Rimini frequently makes public comments – including statements to the press – about the legality of third-party support and its own conduct. | **Disputed.**<br><br>At best, Rimini makes infrequent public comments and statements to the press regarding the legality of third-party support and Rimini's own conduct.<br><br>For example, in support of this alleged fact, Oracle cites to eight (8) comments by Rimini spanning roughly seven (7) years. Further, many of the comments cited by Oracle do not touch on the legality of third-party support or Rimini's conduct.<br><br>**Dkt. 418, Statement of Alleged Facts In Support Of Oracle's Second Motion For Partial Summary Judgment (L.R. 56-1) ("Oracle SUF") at 74-75 (Oracle's Alleged Facts 93-101 & Dkt. 414, Plt. Exs. 78, 80-85, Dkt. 422, Plt. Ex. 79 cited therein).**<br><br>**Dkt. 407, Pradhan Decl. ¶¶ 85, 87-92 & Dkt. 414, Plt. Exs. 78, 80-85; Dkt. 407, Pradhan Decl. ¶ 86 & Dkt. 422, Plt. Ex. 79** (Oracle has identified five articles, one email, one press release, and one interview, between March 5, 2005 and January 11, 2011, many of which do not discuss the legality of third-party support or Rimini's conduct, as discussed *infra*). |
| 94. | A March 5, 2005 Wall Street Journal article by David Bank entitled "Oracle Will Face New Competitor For Siebel Users" attributes a statement to Seth Ravin about the legality of software modification and third-party support under the terms of Siebel license. | **Disputed in part,** as overly broad.<br><br>Rimini admits that the Wall Street Journal article contains a statement attributed to Mr. Ravin about Siebel licenses.<br><br>However, Mr. Ravin's comments do not discuss the legality of software modification and third party support. |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | **Dkt. 407, Pradhan Decl. ¶ 85 & Dkt. 414, Plt. Ex. 78 (David Bank, "Oracle Will Face New Competitor For Siebel Users," Wall Street Journal, Mar. 5, 2005).**<br><br>"Mr. Ravin's new company, Rimini Street, Inc., based in Las Vegas, will be wooing Siebel customers in a hotel suite down the street from Oracle's annual OpenWorld trade show, which opens today in San Francisco. Mr. Ravin plans to offer services early next year from offices near Siebel's headquarters in San Mateo, Calif., and is looking to hire former or current Siebel engineers to develop the products.  Mr. Ravin said Siebel's licenses give customers the right to modify their own software and to hire outside consultants to do so." |
| 95. | In May 2006, Seth Ravin corresponded at length with Vauhini Vara from the Wall Street Journal about the nature of third-party support, differences between Rimini Street's and TomorrowNow's business model, and the legal basis for Rimini Street's business model. | **Undisputed.** |
| 96. | A March 23, 2007 CRN.com article by Stacy Cowley entitled "Solution Providers: Oracle Suing Over Standard Industry Practice" includes quotations from Seth Ravin about the *Oracle v. SAP* lawsuit and the legality of the third-party support industry. | **Disputed in part,** as overly broad.<br><br>Rimini admits that the CRN.com article contains certain comments attributed to Mr. Ravin concerning the Oracle/SAP lawsuit.<br><br>However, the comments attributed to Mr. Ravin do not reference the legality of the third-party support industry generally, and specifically note that the Oracle/SAP lawsuit is not about the legality of third-party support.<br><br>**Dkt. 407, Pradhan Decl. ¶ 87 & Dkt. 414, Plt. Ex. 80 (Stacy Cowley, "Solution Providers: Oracle Suing Over Standard Industry Practice," CRN.com, Mar. 23, 2007).** |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | "'I think the most important thing to realize about this case is that this is not Oracle suing SAP TomorrowNow for being in the business of providing third-party support,' Ravin said." |
| 97. | A March 27, 2007 Enterprise System Spectator article by Frank Scavo entitled "Oracle/SAP lawsuit: view from Rimini Street" details an interview that Mr. Scavo had with Seth Ravin about the *Oracle v. SAP* lawsuit and its impact on Rimini's business. | **Undisputed.** |
| 98. | A July 12, 2007 eWeek article by Renee Boucher Ferguson entitled "Oracles Suit Against SAP Raises Customer Concerns" includes quotations from Rimini's Vice President of Global Marketing and Alliances, David Rowe, about how the *Oracle v. SAP* lawsuit impacted Rimini's interactions with its customers and led Rimini to modify its own business processes. | **Undisputed.** |
| 99. | An April 25, 2008 CIO article by Thomas Wailgum entitled "Oracle v. SAP Legal Fight Gets Messier, Raises Tough Questions About Third-Party Maintenance" includes quotations from Rimini's Vice President of Global Marketing, David Rowe, about how Rimini Street's business model differs from TomorrowNow's. | **Undisputed.** |
| 100. | A March 29, 2010 Rimini Press Release entitled "Rimini Street Sues Oracle" directly states and details why Rimini's business model is "entirely legal." | **Undisputed.** |
| 101. | During a January 11, 2011 interview with Margaret Brennan of Bloomberg News, Seth Ravin spoke at length about the legality of Rimini's support model and the differences between Rimini's business practices and those of TomorrowNow, | **Disputed in part,** as overly broad.<br><br>Rimini admits that Mr. Ravin denied that Rimini's business model is "illegal and corrupt" and generally stated that Rimini's |

35

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | which admitted to illegally downloading and copying Oracle's software. | model was "a very different model" than TomorrowNow's.<br><br>However, in the short interview cited by Oracle, Mr. Ravin did not speak "at length" about the legality of Rimini's support model, TomorrowNow's support model, or the third party support market generally.  Nor did, Mr. Ravin speak "at length" about the differences between Rimini's business practices and those of TomorrowNow.<br><br>**Dkt. 407, Pradhan Decl. ¶ 92 & Dkt. 414, Plt. Ex. 85 (Jan. 11, 2011 Bloomberg Interview with Seth Ravin)** (the interview transcript comprising approximately three page of text). |
| 102. | Rimini is a substantial third-party support provider, has a large number of customers, high revenue, analyst coverage, and strong growth. | **Disputed in part,** as overly broad and misleading.<br><br>[redacted]<br><br>**Reckers Decl. ¶ 9 & Ex. 8 (Dones Depo., Aug. 12, 2010) at 113:2-5** (Rimini has approximately 200 employees).<br><br>**Reckers Decl. ¶ 10 & Ex. 9 (Ravin Depo., Nov. 17, 2011) at 42:15-43:11, 57:6-17** (discussing the size of the market and estimated number of total potential customers for PeopleSoft, JDE, and Siebel).<br><br>**Dkt. 418, Oracle SUF at 76-78 (Oracle's Alleged Fact 102)** (citing only sporadic |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | analyst coverage). |
| 103. | The only specific customer Rimini has identified as a recipient of any alleged defamatory statements is Liz Claiborne (recipient of Alleged Defamatory Statement 3). | **Disputed in part,** as overly broad.<br><br>Ms. Hellinger's defamatory comments were published to the public and remain widely available on the Internet.<br><br>**Dkt. 407, Pradhan Decl. ¶ 100 & Dkt. 415, Plt. Ex. 96 (Rimini's Amended Answer and Counterclaim (Dkt. 153)) at ¶ 45.** |
| 104. | ██████████████ | **Undisputed.** |
| 105. | ██████████████ | **Undisputed.** |
| 106. | ██████████████ | **Disputed.**<br><br>In his testimony, Mr. Ravin ████████████<br><br>**Dkt. 407, Pradhan Decl. ¶ 18 & Dkt. 419, Plt. Ex. 16 (Ravin Depo., Nov. 17-18, 2011) at 31:11-32:4.**<br><br>████████████ |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Oracle's Statement of Alleged Facts | Rimini Street's Response |
|---|---|---|
| | | ████████████████ |
| 107. | Rimini's claim for violation of California's Unfair Competition Law rests entirely on its defamation allegations. | **Undisputed.** |

## IV.   RIMINI'S STATEMENT OF FACTS SUPPORTING ITS OPPOSITION

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| 1. | Oracle's "Developer License" is provided free of charge to software developers to facilitate development of software applications that run in connection with Oracle Database. | **Dkt. 407, Pradhan Decl. ¶ 8 & Dkt. 419, Plt. Ex. 6 (Allison Depo., Nov. 12, 2009) at 206:13-20, 209:23-210:17.**  ████████████████ |

38

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ████████████████████████ |
| 2. | The Developer License permits use of Oracle Database for "developing, testing, prototyping and demonstrating your application" but disallows use of Oracle Database for "internal data processing or for any commercial or production purposes . . . except the development of your application." | **Dkt. 407, Pradhan Decl. ¶ 7 & Dkt. 411, Plt. Ex. 5 (Developer License).**<br><br>"LICENSE RIGHTS<br>We grant you a nonexclusive, nontransferable limited license to use the programs only for the purpose of developing, testing, prototyping and demonstrating your application, and not for any other purpose.<br>…<br>You may not:<br>- use the programs for your own internal data processing or any commercial or production purposes, or use the programs for any purpose except the development of your application;" |
| 3. | The Developer License does not limit development to "initial stages" of development but rather prohibits continued development of an application after the application is used for "internal data processing, commercial or production purpose without securing" an additional license. | **Dkt. 407, Pradhan Decl. ¶ 7 & Dkt. 411, Plt. Ex. 5 (Developer License).**<br><br>"LICENSE RIGHTS<br>…<br>You may not:<br>…<br>- continue to develop your application after you have used it for any internal data processing, commercial or production purpose without securing an appropriate license from us, or an Oracle reseller;" |
| 4. | Oracle also licenses Oracle Database under the Oracle License and Service Agreement ("OLSA"). | **Dkt. 407, Pradhan Decl. ¶ 7 & Dkt. 419, Plt. Ex. 2. (OLSA).**<br><br>████████████ |

39

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ██████████████████████████<br>██████████████████████████<br>██████████████████████████<br><br>**Dkt. 236 (Stipulation and Order Concerning Claims Related to Rimini's Use of Oracle Database) at ¶¶ 4-6.**<br><br>"4.  The Parties agree that the terms of the above-listed Oracle standard form Database licenses are representative of the licenses Oracle entered into with its customers for use of Oracle Database.<br>    5.   The Parties further agree that, to the extent either Party wishes to invoke the terms of an Oracle Database license, for any purpose in the litigation or at trial, the Parties will substitute the terms of Oracle's standard form Database licenses (which Oracle has produced), for the actual Oracle Database license agreements entered into between Oracle and its customers (which, in many instances, Oracle has not undertaken the burden to produce).<br>    6.   Neither Party may object to or challenge the use of the terms of Oracle's standard form Database licenses on grounds that: 1) they are not representative of the terms under which Oracle licensed Oracle Database to its customers; or 2) any individual customer's Oracle Database license agreement is not in evidence." |
| 5. | The OLSA provides ███████████████████████ | **Dkt. 407, Pradhan Decl. ¶ 7 & Dkt. 419, Plt. Ex. 2. (OLSA).**<br>████████████████<br>████████████████<br>████████████████ |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ████████████████ |
| 6. | The terms of the standard OLSA ████████████████████ | **Dkt. 407, Pradhan Decl. ¶ 7 & Dkt. 419, Plt. Ex. 2. (OLSA) at C & D.** |
| 7. | Rimini creates ████████████████████ | ████████████████████ |



41

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | |  |

Dkt. 418, Oracle SUF at 7-8 (Oracle's Alleged Fact 9).

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| 8. | | Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 108:20-109:18. |

5314018 V1



| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| 9. | The creation of non-production environments for support purposes is a widely accepted practice in the industry and is encouraged by Oracle's own technical recommendations. | **Dkt. 260, Reckers First Decl. ¶ 20 & Dkt. 268, Ex. 19 (ORCLRS0055893) at 24.** |

43

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ███████████████<br><br>**268, Ex. 17 (ORCLRS0018170) at 115.** |
| | | ███████████████ |
| | | **Dkt. 260, Reckers First Decl. ¶ 25 & Dkt. 262, Ex. 24 (ORCLRS0811822) at 2.** |
| | | "Your team would also be constantly migrating configuration changes from development to test to staging environments. Ultimately, when you are ready to go live with your PeopleSoft applications, your administrators would deploy your tested configuration from staging to production environment." |
| | | **Dkt. 260, Reckers First Decl. ¶ 26 & Dkt. 262, Ex. 25 (ORCLRS0811845) at 9.** |
| | | "Another use of cloning is to create a development or test environment that resembles the actual production environment. In this case, cloning cannot only replicate the environment, but also filter out sensitive data that you may not want to include in the test data set." |
| | | **Dkt. 260, Reckers First Decl. ¶ 27 & Dkt. 262, Ex. 26 (ORCLRS0811859) at 4.** |
| | | Administrators "copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing." |
| | | **Dkt. 260, Reckers First Decl. ¶ 28 & Dkt. 262, Ex. 27 (ORCLRS0811866) at 4.** |
| | | Administrators "copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing." |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | **Dkt. 260, Reckers First Decl. ¶ 29 & Dkt. 262, Ex. 28 (ORCLRS0811873) at 19.**<br><br>"Too often, we only concern ourselves with the production environment and assume performance is not an issue in a test environment."<br><br>**Dkt. 270, Hilliard Decl. ¶ 11.**<br><br>"11.    Enterprise software support – whether done by the developers of the software, licensees of the software, or consultants engaged by the licensees – requires the creation of multiple non-production copies of the software applications being supported. ████████████████████ . . . As reflected by these documents, the maintenance of non-production software copies (e.g., for development, testing, archival, disaster recovery, troubleshooting and other support purposes) is the normal and customary practice in the industry and, in my experience of reviewing hundreds of enterprise software licenses, there are seldom (if ever) any contractual limits on the number of nonproduction copies that licensees can maintain. . . . ." |
| 10. | It is common in the industry for third-party support vendors to maintain a copy of a client's software environment, including an instance of the client's database, for support purposes. | **Dkt. 260, Reckers First Decl. ¶ 4 & Dkt. 267, Ex. 3 (Simmons Depo.) at 198:16-200:2.** |

45

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | █████████████████████████████ |

**262, Ex. 27 (ORCLRS0811866)** (recognizing the industry practice of development work being performed remotely, including overseas development).

Administrators "copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing."

**Dkt. 270, Hilliard Decl. ¶¶ 12-13.**

"12.   When engaged, consultants likewise create and rely on non-production copies of the software to provide services in connection with the licensees' use of the software.  For example, development of custom modifications to prior code has historically occurred on computers maintained by the consultants with development occurring both in, and outside of, the United States. The motivation to have this work performed offsite (for purposes of convenience and cost, among others) remains similar today as when it first began in the early 1990s.  In particular, the normal and customary way that a professional software development organization (such as a consulting organization) modifies and updates a customer's software is to create non-production copies of the software on the consultant's computer systems, such that the non-production versions of the software can be maintained and modified as needed. . . . .

13.   Further, several Oracle Partners acknowledge and promote the fact that they

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | follow this industry custom when providing services to Oracle licensees. ... Further, Astute Business Solutions, eVerge Group, CedarCrestone, and Summit Technology, all Oracle Partners, advertise on their websites the use of an 'upgrade lab' on the consultant's computer systems wherein the licensee's environment is replicated and used to provide services to the licensee." |
| 11. | Rimini uses ███████ ████████████████████████ ███████ | **Dkt. 407, Pradhan Decl. ¶ 9 & Dkt. 419, Plt. Ex. 7 (G. Lester Depo.) at 113:20-114:2.** |
| 12. | Updates to ERP software, like PeopleSoft, are generally issued to address tax and regulatory changes that impact, e.g. payroll calculations, and are crucial to the correct operations of ERP software. | **Reckers Decl. ¶ 12 & Ex. 11 (Expert Report of Randall Davis) at 13.** |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | |  |

**Reckers Decl. ¶ 13 & Ex. 12 (B. Lester**

**Dkt. 270, Hilliard Decl. ¶ 7.**

"7.    Due to different customer's unique business needs and because of changes in business conditions and regulatory requirements (including such things as payroll taxes), many users of such enterprise software products have never found it feasible to use them without some level of customizations and/or periodic updates. To allow such customizations and updating (among other reasons), most major ERP software developers (including Oracle) routinely grant

48

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | their customers access to some or all of the source code for the licensed applications to allow for these needed customer modifications. Nonetheless, source code access of this nature is not typically required for many other common software support activities. In particular, it is not required when either (a) installing the ERP software (prior to any modifications being made) or (b) copying the software in accordance with the allowed copying specified in the ERP software license." |
| 13. | Rimini employs a team of full-time software developers who ███████ ███████████████████ | **Reckers Decl. ¶ 14 & Ex. 13 (Tahtaras Depo.) at 24:14-25, 25:18-24, 26:11-19, & 255:5-7.** |
| | | █████████████████████████ ████████████████████ ██████ |
| | | ████████████████████████ ████████████████████████ ████████████████████████ |
| | | ████████████████████████ ████████████████████████ ██████████████████ |
| | | ████████████████████████ ████████████████████████ |
| | | ███████████████████████ ██████████████████ |
| | | **Reckers Decl. ¶ 13 & Ex. 12 (B. Lester Depo.) at 185:6-13.** |

49

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ████████████████ |
| 14. | Rimini application updates ████████ ████████████ | Reckers Decl. ¶ 14 & Ex. 13 (Tahtaras Depo.) at 251:10-18. ████████████ Reckers Decl. ¶ 7 & Ex. 6 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 36:25-37:7. ████████████ |
| 15. | ████████████████ | Reckers Decl. ¶ 7 & Ex. 6 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 36:25-37:7. ████████████ |



STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | |
| 16. |  | Dkt. 407, Pradhan Decl. ¶ 43 & Dkt. 420, Plt. Ex. 41 (Slepko 30(b)(6) Depo., Dec. 16, 2011) at 61:12-21, 69:14-25. |
| | | Reckers Decl. ¶ 6 & Ex. 5 (Slepko Depo., Dec. 15, 2011) at 34:5-14. |
| 17. | Rimini can | Dkt. 407, Pradhan Decl. ¶ 43 & Dkt. 420, |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1



| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | ▮▮▮▮▮▮▮▮▮▮ | Plt. Ex. 41 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 61:12-21, 69:14-25. ▮▮▮▮▮▮▮▮▮▮ Reckers Decl. ¶ 6 & Ex. 5 (Slepko Depo., Dec. 15, 2011) at 34:5-14. ▮▮▮▮▮▮▮▮▮▮ |
| 18. | ▮▮▮▮▮▮▮▮▮▮ | Dkt. 407, Pradhan Decl. ¶ 43 & Dkt. 420, Plt. Ex. 41 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 61:12-21. ▮▮▮▮▮▮▮▮▮▮ |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1



| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | Reckers Decl. ¶ 7 & Ex. 6 (Slepko Rule 30(b)(6) Depo., Dec. 16, 2011) at 72:19-22. |
| 19. | | Dkt. 407, Pradhan Decl. ¶ 59 & Dkt. 421, Plt. Ex. 57 (Sept. 26, 2005 Letter from S. Gattey to S. Ravin). |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1



| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | |
| 20. | Rimini responded on October 6, 2005, | |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1



| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| 21. | In a letter to Rimini dated November 16, 2005, Oracle stated | |

55

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | |  |
| 22. | In 2006, Rimini began requesting that | Dkt. 260, Reckers First Decl. ¶ 16 & Dkt. 267, Ex. 15 (Oracle's First Amended Response to Rimini's Interrogatory No. 26) at 8-9 |
| | | Dkt. 260, Reckers First Decl. ¶ 23 & Dkt. 268, Ex. 22 (ORCLRS0518901). |
| | | Dkt. 407, Pradhan Decl. ¶ 62 & Dkt. 421, Plt. Ex. 60 (Software Shipping Request to Oracle) |
| 23. | Oracle's own documents | Dkt. 260, Reckers First Decl. ¶ 16 & Dkt. 267, Ex. 15 (Oracle's First Amended Response to Rimini's Interrogatory No. 26) at 8-9 |
| | | Dkt. 260, Reckers First Decl. ¶ 23 & Dkt. 268, Ex. 22 (ORCLRS0518901). |
| | | Reckers Decl. ¶ 11 & Ex. 10 (ORCLRS0291237). |

56

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| 24. | Ms. Deborah Hellinger, in her capacity as Senior Director of Corporate Communications, sent defamatory statements to at least two separate news services. | **Dkt. 407, Pradhan Decl. ¶ 83 & Dkt. 414, Plt. Ex. 76 (John Letzing, "Upstart fires back at Oracle in legal battle," Marketwatch, Mar. 29, 2010).**<br><br>"A spokeswoman for Oracle, Deborah Hellinger, said in a statement Monday that Oracle is "committed to customer choice and vigorous competition, but draws the line with any company, big or small, that steals its intellectual property."<br><br>In reference to Rimini Street Chief Executive Seth Ravin, Hellinger added: 'The massive theft that Rimini and Mr. Ravin engaged in is not healthy competition.'"<br><br>**Dkt. 407, Pradhan Decl. ¶ 84 & Dkt. 414, Plt. Ex. 77 (Chris Kanaracus, "Rimini Street files countersuit against Oracle," Computerworld, Mar. 29, 2010).**<br><br>"Oracle 'is committed to customer choice and vigorous competition, but draws the line with any company, big or small, that steals its intellectual property,' company spokeswoman Deborah Hellinger said via e-mail. 'The massive theft that Rimini and Mr. Ravin engaged in is not healthy competition. We will prove this in court.'"<br><br>**Dkt. 409, Hellinger Decl. ¶¶ 2-4, 6.**<br><br>"2.  As Senior Director of Corporate Communications, my job responsibilities include acting as a spokesperson for Oracle and responding to press inquiries on behalf of Oracle.<br>3.   On March 29, 2010, I received emails from Chris Kanaracus of IDG News Service and John Letzing of Marketwatch requesting comment from Oracle regarding Rimini Street's answer and counterclaims filed in this action on March 29, 2010.<br>4.   On March 29, 2010, I responded by email to Mr. Kanaracus's request with the following statement: 'Oracle is committed to customer choice and vigorous competition, but draws the line with any company, big or |

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | small, that steals its intellectual property. The massive theft that Rimini and Mr. Ravin engaged in is not healthy competition. We will prove this in court.'<br><br>…<br><br>6. On March 29, 2010, I responded by email to Mr. Letzing's request with the following statement: 'Oracle is committed to customer choice and vigorous competition, but draws the line with any company, big or small, that steals its intellectual property. The massive theft that Rimini and Mr. Ravin engaged in is not healthy competition. We will prove this in court.'" |
| 25. | James McLeod, an Oracle Regional Services Sales Manager, distributed an article that stated Oracle sued Rimini Street for "massive theft," but fails to directly mention Oracle's copyright infringement claims or any of the other causes actually pled by Oracle. | Dkt. 410, McLeod Decl. ¶ 2 & Dkt. 414, Plt. Ex. 74 (Jan. 30, 2010 e-mail from J. McLeod).<br><br>"InformationWeek has learned that the software maker on Monday filed a lawsuit against Ravin's Rimini Street, Inc. for allegedly swiping Oracle software and intellectual property so it can provide cut-rate, third-party support to Oracle<br><br>The outcome of the case could impact businesses' ability to turn to unofficial support channels in order to bypass pricey enterprise software maintenance contracts that can cost millions of dollars.<br><br>Oracle said Rimini Street is using ill-gotten materials to provide such services. "This case is about massive theft of Oracle's software and related support materials through an illegal business model," Oracle said in court papers filed Monday in federal court in Nevada.<br>…<br>Ravin helped run TomorrowNow, which also offered third-party support for Oracle software, until the company was acquired by SAP in 2007. Oracle promptly sued SAP for infringing on its business model and other charges. That case is set to go to trial later this year.<br><br>'This illegal business model is not new for Ravin,' Oracle said. 'He helped create this |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | illegal scheme at his prior company, TomorrowNow,' Oracle charged. SAP shuttered TomorrowNow in October 2008, 'having concluded that it could not provide support services without infringing on Oracle's intellectual property rights,' Oracle said.<br><br>In its suit against Rimini Street, Oracle alleges that Ravin is committing the same alleged breaches under a new shingle."<br><br>**Dkt. 410, McLeod Decl. ¶¶ 2-4.**<br><br>"2.  On January 30, 2010, I sent an email to Kerry Fogarty, a Vice President of Liz Claiborne, Inc., with whom I had been communicating in a business capacity as an Oracle Regional Services Sales Manager. Attached as Exhibit 74 to the Appendix of Exhibit Cited In Support of Oracle's Second Motion for Partial Summary Judgment is a true and correct copy of my email.<br>3.  My email contained the text of a January 26, 2010 *InformationWeek* article by Paul McDougall, entitled "Oracle Sues Rimini Street For 'Massive Theft.'" Besides forwarding the *InformationWeek* article, the only content I included in my email to Ms. Fogarty was the following message: "Hi Kerry, I hope you are well.  Forwarding as an FYI here given our recent discussions. Regards. James."<br>4.  The *InformationWeek* article, which I forwarded in my email, includes the following statement: "'This case is about massive theft of Oracle's software and related support materials through an illegal business model,' Oracle said in court papers filed Monday in federal court in Nevada." |
| 26. | ████████████████████████<br>██████<br>████████████████████<br>████████████████████<br>████████████████ | **Dkt. 407, Pradhan Decl. ¶ 8 & Dkt. 419, Plt. Ex. 6 (Allison Depo., Nov. 12, 2011) at 210:9-14.**<br><br>████████████████████<br>████████████████████<br>████████████████████ |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1



| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | |
| 27. | The OLSAs | Dkt. 407, Pradhan Decl. ¶ 7 & Dkt. 419, Plt. Ex. 2 (OLSA). |
| 28. | The Rimini support agreements that Oracle includes as exhibits to its brief (Oracle Exs. 44-54) | Dkt. 407, Pradhan Decl. ¶¶ 46-56 & Dkt. 420, Plt. Exs. 44-48, Dkt. 421, Plt. Exs. 49-54 (Rimini support agreements) |
| 29. | | Dkt. 407, Pradhan Decl. ¶¶ 46-56 & Dkt. 420, Plt. Exs. 44-48, Dkt. 421, Plt. Exs. 49-54 (Rimini support agreements) |
| 30. | | Dkt. 407, Pradhan Decl. ¶ 56 & Dkt. 421, Plt. Ex. 54 at ¶ 5.D. (Rimini support agreement for Smurfit Stone Container Corporation). |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | ▓▓▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓▓▓▓ |
| 31. | The ▓▓▓ ▓▓▓ Rimini's standard agreement ▓▓▓ ▓▓▓ | Dkt. 407, Pradhan Decl. ¶ 56 & Dkt. 421, Plt. Ex. 54 at ¶ 14. (Rimini support agreement for Smurfit Stone Container Corporation). ▓▓▓▓▓▓ Dkt. 407, Pradhan Decl. ¶¶ 46-55 & Dkt. 420, Plt. Exs. 44-48, Dkt. 421, Plt. Exs. 49-53 (Rimini support agreements) at ¶ 14 (containing language similar to the above excerpt). |
| 32. | Rimini's standard support agreements ▓ ▓▓▓▓▓▓ | Dkt. 407, Pradhan Decl. ¶¶ 46-56 & Dkt. 420, Plt. Exs. 44-48, Dkt. 421, Plt. Exs. 49-54 (Rimini support agreements) ▓▓▓ |
| 33. | Rimini customers who use Oracle Database are licensed under the terms set forth by the OLSA. | Dkt. 236 (Stipulation and Order Concerning Claims Related to Rimini's Use of Oracle Database) at ¶¶ 4-6. "4. The Parties agree that the terms of the above-listed Oracle standard form Database licenses are representative of the licenses Oracle entered into with its customers for use of Oracle Database 5. The Parties further agree that, to the extent either Party wishes to invoke the terms of an Oracle Database license, for any purpose in the litigation or at trial, the Parties will substitute the terms of Oracle's standard form Database licenses (which Oracle has |

61

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|------------------------------|----------------------|
| | | produced), for the actual Oracle Database license agreements entered into between Oracle and its customers (which, in many instances, Oracle has not undertaken the burden to produce). |
| | | 6.  Neither Party may object to or challenge the use of the terms of Oracle's standard form Database licenses on grounds that: 1) they are not representative of the terms under which Oracle licensed Oracle Database to its customers;  or  2) any individual customer's Oracle Database license agreement is not in evidence." |
| 34. | ███████████████████████████ ██████████████████ | **Dkt. 407, Pradhan Decl. ¶ 18 & Dkt. 419, Plt. Ex. 16 (Ravin Depo.) at 448:6-450:3.** |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
|  |  | ████████████████████ |
| 35. | Oracle concedes that third-party support is permissible. | **Dkt. 260, Reckers First Decl. ¶ 15 & Dkt. 267, Ex. 14 (Oracle's [Corrected] Supplemental And Amended Response to Rimini's First Set of Interrogatories Nos. 1-12) at 69-70 (Oracle's Response to Interrogatory No. 9).** ████████████████████ |
| 36. | Oracle fails to identify any public comments by Rimini regarding the legality | **Dkt. 407, Pradhan Decl. ¶¶ 85, 87-92 & Dkt. 414, Plt. Exs. 78, 80-85; Dkt. 407,** |

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | of its support offerings between April 25, 2008 and March 29, 2010. | **Pradhan Decl. ¶ 86 & Dkt. 422, Plt. Ex. 79** (Oracle has identified five articles, one email, one press release, and one interview, between March 5, 2005 and January 11, 2011, many of which do not discuss the legality of third-party support or Rimini's conduct, as discussed infra).<br><br>*See* **Dkt. 418, Oracle SUF at 74-75 (Oracle's Alleged Facts 93-101) Dkt. 414, Plt. Exs. 78, 80-85, Dkt. 422, Plt. Ex. 79 cited therein).** |
| 37. | The Rimini comment published on April 25, 2008 expressly notes the lack of debate regarding the legality of third party support and promotes certain differences between Rimini and one of its former competitors, TomorrowNow. | **Dkt. 407, Pradhan Decl. ¶ 83 & Dkt. 414, Ex. 83 (Thomas Wailgum, "Oracle v. SAP Legal Fight Gets Messier, Raises Tough Questions About Third-Party Maintenance," CIO, Apr. 25, 2008).**<br><br>"David Rowe, Rimini Street's vice president of global marketing, points out via e-mail that Oracle's complaint noted 'that they don't have a legal problem with third-party support—just some of the alleged processes and procedures that TomorrowNow was using.' …<br><br>In fact, Rowe says that Oracle has acknowledged that 'third parties can get software and updates for clients,' he says. 'However, they are alleging that TomorrowNow went out of bounds and took more than the client was entitled to receive.' …<br><br>According to Rowe: 'Rimini Street, as we have commented previously, has safeguards in place to keep such issues from occurring in its operations.'" |
| 38. | Oracle identified and produced a license agreement for each and every Rimini Oracle-support client. | **Reckers Decl. ¶ 16 & Ex. 15 (Oracle's [Corrected] Supplemental and Amended Responses to Rimini's First Set of Interrogatories (No. 1-12)) at 124-125.** |

64

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | |  |
| 39. | | **Dkt. 269, First SOF at 51-52, 57, 62, 64-66, 70-73 (Fact 14, 17, 23, 30, 33-35, 40, 43 & 45)** (identifying Oracle license provisions for PeopleSoft, J.D. Edwards, and Siebel software |
| | | *See, e.g.,* **Dkt. 239, O'Neill Decl. ¶ 3 & Dkt. 248, Plt. Ex. 10 (City of Flint PeopleSoft License) at §§ 1.2.b, 14.2.** |
| | | *See, e.g.,* **Dkt. 239, O'Neill Decl. ¶ 9 & Dkt. 248, Plt. Ex. 16 (Giant Cement J.D. Edwards License) at Art. II, § 7(iii), Art. VI, §4.** |

65

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|



STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ███████████████ |
| 40. | Rimini disclosed ███████████ ███████████████████ ███████████████████ ███████████ | **Dkt. 407, Pradhan Decl. ¶ 60 & Dkt. 421, Ex. 58 (Oct. 6, 2005 Letter from P. Byrne to S. Gattey) at RSI03232064.** ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ ████████████████████ **See, e.g., Dkt 30 (Defendant Rimini Street Inc.'s Answer and Counterclaims at ¶¶ 5–6); Pradhan Decl. ¶ 103 & Ex. 96 (Rimini's Answer to Oracle's Second Amended Complaint and First Amended Counterclaim) at ¶¶ 5–6.** "5. With respect to Oracle's complaint about Rimini Street possessing copies of Oracle customer licensed software, Oracle customers authorize Rimini Street to possess and use such copies. Not only is possessing and using the copies legal, it is an industry standard for third party vendors like IBM, AT&T, Accenture, CedarCrestone, and countless others who work with the same Oracle customer licensed software. Oracle is well aware of Rimini Street's authorized possession and usage of customer licensed software because Oracle itself delivered the software to Rimini Street for hundreds of its customers. 6. Oracle is fully aware of Rimini Street's processes and procedures. If Oracle had genuine concerns about Rimini Street's use of its intellectual property, Oracle could have accepted Rimini Street's numerous offers since September 2005 to openly and transparently review and discuss Rimini Street processes and procedures, or Oracle could have even accepted Rimini Street's invitation to review internal materials and |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | Rimini Street's invitation to have a third-party independent auditor review Rimini Street's compliance with its processes and procedures." |
| 41. |  | Dkt. 407, Pradhan Decl. ¶ 60 & Dkt. 421, Plt. Ex. 58 (Oct. 6, 2005 Letter from P. Byrne to S. Gattey). |
| | | Dkt. 260, Reckers First Decl. ¶ 4 & Dkt. 267, Ex. 3 (Simmons Depo.) at 198:16-200:2. |

68

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | ███████████████████████ |
| | | ███████████████████████ |
| | | ████ ███████████████████ |
| | | ████████████████████ |
| | | ██████████████ |
| | | |
| | | ███████████████ ██ ██ |
| | | 262, Ex. 26 (ORCLRS0811859) at 4. |
| | | Administrators "copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing." |
| | | **Dkt. 260, Reckers First Decl. ¶ 28 & Dkt. 262, Ex. 27 (ORCLRS0811866) at 4.** |
| | | Administrators "copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing." |
| | | **Dkt 270, Hilliard Decl. ¶¶ 11–12.** |
| | | "11. Enterprise software support –whether done by the developers of the software, licensees of the software, or consultants engaged by the licensees requires the creation of multiple nonproduction copies of the software applications being supported. ████████████████████████ ████████████████████████ ████████████████. . . . As reflected by these documents, the maintenance of non-production software copies (e.g., for development, testing, archival, disaster recovery, troubleshooting and other support purposes) is the normal and customary practice in the industry and, in my experience of reviewing hundreds of enterprise software licenses, there are seldom (if ever) any contractual limits on the number of nonproduction copies that licensees can maintain. . . . . |

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1

| # | Rimini's Statement of Facts | Supporting Evidence |
|---|---|---|
| | | 12. When engaged, consultants likewise create and rely on non-production copies of the software to provide services in connection with the licensees' use of the software. For example, development of custom modifications to prior code has historically occurred on computers maintained by the consultants with development occurring both in, and outside of, the United States. The motivation to have this work performed offsite (for purposes of convenience and cost, among others) remains similar today as when it first began in the early 1990s. In particular, the normal and customary way that a professional software development organization (such as a consulting organization) modifies and updates a customer's software is to create non-production copies of the software on the consultant's computer systems, such that the non-production versions of the software can be maintained and modified as needed. Oracle acknowledges that companies often 'copy production data into staging or test environments to allow in-house developers or offshore testers to perform application development and application testing.' Ex. 27 (ORCLRS0811866-72) at ORCLRS0811870. Oracle's website explains that it is 'normal' for a single production instance of Oracle ERP software 'to have ten or more corresponding test or development instance copies for use by several different teams of developers or departments.' In fact, Oracle provides its licensees tools to facilitate remote development work." |

DATED: October 9, 2012

SHOOK HARDY & BACON LLP

/s/ Robert H. Reckers
Robert H. Reckers, Esq.

Attorneys for Defendants
Rimini Street Inc. and Seth Ravin

STATEMENT OF FACTS IN SUPPORT OF RIMINI'S OPPOSITION TO ORACLE'S SECOND MOTION FOR SUMMARY JUDGMENT

5314018 V1