DOMINICA C. ANDERSON (SBN 2988)
RYAN A. LOOSVELT (SBN 8550)
**DUANE MORRIS LLP**
100 N. City Parkway, Suite 1560
Las Vegas, NV 89106
Telephone: 702.868.2600
Facsimile: 702.385.6862
Email: dcanderson@duanemorris.com
       rloosvelt@duanemorris.com

Attorneys for CedarCrestone, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants.<br><br>AND ALL RELATED COUNTER CLAIMS. | Case No. 2:10-CV-0106-LRH-PAL<br><br>**NON-PARTY CEDARCRESTONE, INC.'S MOTION FOR LEAVE TO FILE SURREPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER** |

COMES NOW, Non-party CedarCrestone, Inc. ("CedarCrestone"), by and through its attorneys, Duane Morris LLP, and hereby moves this Court for leave to file the accompanying Surreply to Plaintiffs' Reply [Docket No. 430] in support of their renewed Motion to Modify Protective Order. This motion for leave is made and based on this Motion, the accompanying Surreply, Memorandum of Points and Authorities, and supporting Declaration, and the pleadings and papers on file herein, and upon oral argument as this Court deems warranted.

DATED: October 18, 2012        DUANE MORRIS LLP

                               By: */s/ Dominica C. Anderson*
                                   Dominica C. Anderson (SBN 2988)
                                   Ryan A. Loosvelt (SBN 8550)

                               Attorneys for Non-party CedarCrestone, Inc.

...

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. MOTION FOR LEAVE TO FILE SURREPLY

Plaintiffs Oracle USA, Inc.'s, Oracle America, Inc.'s, and Oracle International Corporation's (collectively "Oracle") Reply in support of its renewed Motion to Modify Protective Order [Docket No. 430] (the "Renewed Motion") raises new issues, including, but not limited to, a new declaration and new exhibits, which Non-party CedarCrestone, Inc. ("CedarCrestone") has not had an opportunity to address.

A court has discretion to decide whether or not to consider matters raised for the first time in a reply brief. *Concerned Citizens for a Safe Community v. Office of Federal Detention Trustee*, 2011 WL 5041195, Case No. CV 09-014709, *1 (D.Nev. Oct. 24, 2011); *In re Pac. Gas & Elec., Co.*, 2002 WL 32071634, Case No. C-02-1550, *4 (N.D. Cal. Nov. 14, 2002), *citing Glenn K. Jackson, Inc. v. Rose*, 273 F.3d 1192, 1202 (9th Cir. 2001). When a reply brief is filed that raises new reasons or evidence, the district court may either permit a surreply or refrain from relying on any new material contained in the reply brief. *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998), *cert. denied*, 525 U.S. 1054, 119 S.Ct. 617 (1998).

"If the court chooses to rely on materials raised for the first time in the reply brief, the opposing party must be afforded a reasonable opportunity to respond." *In re Pac. Gas & Elec., Co.*, 2002 WL 32071634 at *4, citing *Beaird*, 145 F.3d at 1164. A ruling will be overturned as an abuse of discretion where the Court relies on the new matter but denies the nonmovant an opportunity to respond. *Beaird*, 145 F.3d at 1164-1165; *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 410 (1st Cir. 1985).

For the first time, Oracle's Reply raises new arguments and evidence in support of its Renewed Motion to Modify Protective Order as set forth below in CedarCrestone's Surreply, Section II. Therefore, to the extent this Court considers the new matters raised in Plaintiffs' Reply in support of its Motion to Modify Protective Order, CedarCrestone respectfully requests this Court grant it leave to file its Surreply and consider the matters and the accompanying Declaration when ruling on Plaintiffs' Renewed Motion.

///

## II. SURREPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY

### A. INTRODUCTION

Oracle's Reply in support of its Motion to Modify Protective Order raises new issues which CedarCrestone did not have an opportunity to address in its Opposition. Interestingly, Oracle's new arguments in its Reply actually support denial of modification.

Among other things, Oracle now admits it was already investigating CedarCrestone's business practices when it subpoenaed CedarCrestone's confidential information under the guise it would only be used in the *Rimini* Action. Oracle, however, never told this important fact to CedarCrestone when it sought its documents, thereby intentionally inducing CedarCrestone's reliance, a significant reliance interest not present in the cases Oracle cites in its Renewed Motion.

Oracle's Reply also now admits that, once modification was initially denied by this Court, it then sought out instances of any conduct it could find in order to create a collateral suit and once again try to lift the protections of the materials in the *Rimini* Action so it could then amend its collateral suit with the information it learns through the currently protected documents. But the Ninth Circuit holds that this type of discovery exploitation warrants denial of modification as well.

One new significant allegation in Oracle's Reply is that CedarCrestone does not deny liability but instead seeks immunity from suit by opposing modification. Absolutely not true in multiple ways. First, Oracle's accusations are incredibly false and CedarCrestone denies all allegations (*see infra* on CedarCrestone's Answer and Counterclaim filed in the collateral litigation). Second, Oracle's suggestion about using the Protective Order as a shield is completely at odds with its argument that duplicative discovery would be avoided by modification. In other words, if modification avoids duplicative discovery, then that presupposes the protected materials are discoverable in the collateral action and no liability, if any, can be avoided. Regardless, CedarCrestone is not seeking to use the Protective Order as a shield; instead, Oracle is attempting to manipulate the system and use the Protective Order as a sword. Such behavior should not be condoned.

The *Foltz* case supports the conclusion that where a non-movant has reliance interests (more significant than mere reliance on a blanket protective order), modification may be denied. The *Foltz*

test does not require a determination of liability. Instead, it considers whether a party has abused the discovery process, and if so, modification must be denied. While Oracle argues the inquiry should end at the existence of a stipulated protective order, the *Foltz* test is not so limited, but instead ensures fairness and protects reliance of parties, and more significantly, non-parties, when producing confidential information. Here, denial of modification is even more warranted in light of the new admissions made in Oracle's Reply.

**B.   ARGUMENT**

**1.   CedarCrestone Vehemently Denies That It Engaged In Conduct That Constitutes Copyright Infringement And Denies The Allegations In The Collateral Litigation.**

Oracle's Reply argues for the first time that CedarCrestone does not deny it engaged in wrongful conduct or other conduct that constitutes copyright infringement and that CedarCrestone is therefore asking this Court to "shield" it from liability. [Dckt. No. 430-Oracle's Reply, 1:2-6]. However, nothing could be further from the truth. Indeed, CedarCrestone has adamantly denied all allegations of wrongful conduct in the collateral litigation filed in the Northern District of California (also referred to as the "NDCA Action"). (*See* Declaration of Robert T. Gill ("Gill Surreply Decl."), Exhibit 1-Answer to NDCA Action, filed herewith).

In fact, CedarCrestone's denials in its Answer and its Affirmative Defenses and Counterclaims in the NDCA action further demonstrate the impropriety of Oracle's claims and that they were filed merely in an attempt to try to lift protections of the CedarCrestone materials in the *Rimini* Action. Further, Oracle's claims are in part barred by the statute of limitations and also barred by the doctrines of waiver, laches, estoppel, and implied license to name just a few (in part because Oracle continued to do the same business with CedarCrestone for years and even renewed its partnership agreement with CedarCrestone all with prior knowledge of the same conduct it now disingenuinely sues upon in the NDCA Action).

CedarCrestone is not using the protective order in the *Rimini* Action as a "shield" from liability. In fact Oracle's argument does not even make sense if, as Oracle contends in its papers, the same information is <u>duplicative</u> of discovery it could conduct in the NDCA Action. If duplicative,

then there is no liability shield because Oracle can ask the same deposition questions and request production of the same information. Obviously, Oracle's "shield argument" belies its contentions that modification will avoid duplicative discovery.

Consequently, Oracle's "shield" argument weighs <u>against</u> modification because modification is only proper to avoid substantially[1] duplicative discovery, and even then it still may not outweigh a non-moving party's reliance interest. *Foltz v. State Farm Mutt's Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003). Oracle' arguments about trying to avoid liability are designed merely to distract this Court from the *Foltz* test which here weighs against modification.

### 2. Oracle Now Admits It Began Investigating CedarCrestone Prior To Inducing CedarCrestone's Reliance And Production Of Confidential Materials, Proving That Oracle Exploited The Discovery Process.

Oracle's Reply newly admits that as soon as Rimini filed its Answer in this action on March 29, 2010, Oracle began investigating CedarCrestone. [Dckt. No. 430, 2:5-8]. It therefore appears Oracle's intentions from the beginning were to use the CedarCrestone materials against it, which now explains why Oracle's subpoena was drawn so abusively overbroad. [*See* Dckt. No. 330, Exhibit 2-Oracle Subpoena; Dckt. No. 331, Exhibit 5-CedarCrestone Objections]. Most importantly, however, is that Oracle <u>never informed CedarCrestone</u> of this crucial fact that it was already investigating CedarCrestone when inducing CedarCrestone's reliance and good faith production of confidential information purportedly to be used only in the *Rimini* Action. (Gill Surreply Decl.).

It is important to understand Oracle's position of power and influence in the partnership relationship and that CedarCrestone was highly incentivized to help and trust Oracle's assurances that it needed CedarCrestone's assistance against Rimini – both Oracle's and CedarCrestone's competitor – and that the information would only be used in the *Rimini* Action. Oracle abused and leveraged this relationship while hiding its investigation of CedarCrestone, all to induce reliance and the production of CedarCestone's confidential documents. Had Oracle been forthright and informed

---

[1] Oracle also argues in its papers that it does not seek wholesale burdensome discovery because it only seeks one disk (containing 2.16 GB of data) and one Rule 30(b)(6) deposition. As argued in CedarCrestone's Opposition, however, this is still essentially an overbroad wholesale request without delineating relevant portions to the NDCA Action. Nevertheless, Oracle's argument belies the notion that "substantial" discovery will be avoided.

CedarCrestone it was investigating it, or that it contemplated using CedarCrestone's own confidential information against it, CedarCrestone would not have foregone its many challenges to the Subpoena. [*See, e.g.,* Dckt No. 330-Brian Fees Decl., ¶7]; (Gill Surreply Decl.).

In addition to being abusively overbroad, Oracle's Subpoena was void for being issued in the wrong jurisdiction, a jurisdictional challenge that CedarCrestone never waived contrary to Oracle's suggestions otherwise.[2] Rather than seek to quash the subpoena, which CedarCrestone was prepared to do both before and after Oracle's Motion to Compel (which was later withdrawn), CedarCrestone worked with Oracle over several months in good faith to tailor a production to be used in the *Rimini* Action only. [*See* Dckt. No. 330-Fees Decl., ¶¶9-16]; (Gill Surreply Decl.). Regardless, CedarCrestone and Oracle did end up negotiating on the scope of the documents to be produced for the *Rimini* action, although all of those negotiations were done with Oracle hiding the fact that it was investigating CedarCrestone at the same time. (Gill Surreply Decl.).

Oracle's Reply also newly argues that it never made assurances to CedarCrestone because during the months of discussions negotiating CedarCrestone's good faith production, Oracle never expressly stated in writing the words that Oracle will not use the CedarCrestone materials outside the *Rimini* Action. [Dckt. 430, 13:15-26]. Obviously, the issue is not so cut and dry as Oracle would have this Court believe. Both Oracle and CedarCrestone knew the implication of the discussions –

---

[2]   A subpoena duces tecum must be issued and served in the district where the production or inspection is to be made. Fed. R. Civ. P. 45(a)(2)(C). Designating the wrong court renders the subpoena void. *Kupritz v. Savannah College of Art and Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994). The defect is jurisdictional and not waived by failure to file a motion to quash. *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 80 (D. Del. 2009). Consequently, a court cannot order production of records in the custody and control of a non-party located in a foreign judicial district. *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 624 (5th Cir. 1973). The requirement to maintain an agent for service of process in a particular state does not impose an obligation on an entity to produce documents in such state merely upon service of a subpoena. *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982) (relying on *Cates*). A non-party does not, through a registered agent, possess the requisite "control" in the forum over its documents located outside the forum, for the forum district court to have jurisdiction to compel their production. *Id.* at 1059-1060.
  However, CedarCrestone has no offices in Nevada; its principal place of business is in Georgia. [Dckt. No. 330-Brian Fees Decl., ¶9). CedarCrestone has appointed a registered agent in Nevada, but has no physical offices or presence in Nevada. [*Id.*]. To the extent that the voluminous documents and electronic information requested in the Subpoena are in any one place they are located and stored at CedarCrestone's headquarters in Alpharetta, Georgia. [*Id.*]. That is where the subpoena should have been issued and served. Therefore the Oracle subpoena is void.

that the materials would not be used for purposes other than the *Rimini* Action. That is how Oracle induced CedarCrestone to forego quashing the void and abusively overbroad subpoena and that is largely why the Supplemental Stipulation Oracle and CedarCrestone entered expressly stated that production of information by non-party competitors needed "special protection from public disclosure and from use for any purpose other than defending against this [Rimini] litigation." [*See* Dckt. No. 386-4-Supplemental Stipulation].

CedarCrestone's reliance was in fact significant, and was a result of circumstances not present in the cases Oracle relies on in its motion. CedarCrestone's reliance was induced by Oracle, and was more than "mere reliance" on a stipulated protective order. It is the type of reliance that *Foltz* and *Beckman* expressly provide for in the weighing test for denying modification. *Foltz*, 331 F.3d at 1133; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d, 470, 475 (9th Cir. 1992). Oracle's admission that it was already investigating CedarCrestone yet intentionally never disclosed that fact weighs against modification of the protective order.

### 3. Oracle's Reply Confirms It Filed the Collateral Action In Order To Use The Protected Materials Outside The Rimini Action, Which The Ninth Circuit Holds Warrants Denial Of Modification.

Oracle's Reply essentially concedes that once this Court denied its Motion to Modify the Protective Order it began looking for business activities by CedarCrestone to use as a basis for filing collateral litigation, again to try to lift the Protective Order. Oracle's Reply newly admits that "it conducted an independent investigation into additional misconduct based on information *other* than what was produced here [in the Rimini Action]" once CedarCrestone declined to modify the protective order to allow use of its materials outside the Rimini Action. [Dckt No. 430, 5:26-28] (emphasis in original). Thus, Oracle admits that it was looking for an avenue to try again to lift the protections on the protected materials once it was denied such relief. It came up with the three limited instances of alleged misconduct described in the collateral action – conduct which it admits it knew about *before* renewing the Oracle-CedarCrestone partnership agreement over a year ago.

The Ninth Circuit clearly holds that a collateral litigant will not be permitted to exploit another's discovery in the sense of instituting a collateral suit simply as a device to obtain access to

discovery protected in another action. *Foltz*, 331 F.3d at 1134, citing *Wilk v. Am. Medical Assoc.*, 635 F.2d 1295, 1300 (7th Cir. 1981). The Ninth Circuit does not allow modification in order to subvert the limitations on discovery in collateral proceedings. *Id., citing Wilk*, 635 F.2d at 1300.

In an effort to explain away its exploitation of admittedly filing a collateral lawsuit to try again to lift the Protective Order, Oracle's Reply now, once again, switches gears. Now, Oracle's Reply contends that the three very isolated instances alleged in the NDCA Action are merely "illustrative" examples of CedarCrestone's business practices generally [*see* Dckt. No. 430, 5:28-6:3], (its Renewed Motion goes to great lengths to demonstrate the three incidents are separate and discrete from the protected discovery in the *Rimini* Action so as not to violate the protective order limiting use of the protected materials to this action).

The sequence of events is perhaps most telling of Oracle's true intentions:

- Oracle served a void Subpoena that was abusively overbroad and not remotely limited to what Oracle contended it was requesting: "foundational documents concerning CedarCrestone's business model." [Dckt. No. 385-Oracle's Renewed Motion, 3:3-6; Dckt. No., Exhibit 2-Oracle Subpoena].

- While negotiating with CedarCrestone regarding the documents they would produce for use in the *Rimini* action, Oracle kept secret that it was already investigating CedarCrestone, clearly in an effort to induce CedarCrestone's reliance and production.

- As a result, CedarCrestone forewent challenges to the Subpoena, voluntarily producing its confidential information, and voluntarily producing a witness in good faith reliance on the Protective Order, the Supplemental Stipulation and Oracle's many assurances during the parties' months of discussions.

- Oracle then turned around and asked CedarCrestone to allow use of the protected materials outside the *Rimini* Action to be used against CedarCrestone, again contrary to their agreement.

- CedarCrestone declined to stipulate to modification.

- Oracle filed its initial Motion to Modify Protective Order which the Court denied.

- Oracle began looking for other ways to get the protected documents including looking for incidents of conduct in order to file a collateral suit.

- Oracle filed a Motion for Reconsideration arguing the Magistrate Judge erred by "requiring" collateral litigation to be pending for modification (which was not the Court's actual ruling).

- Oracle *then* terminated its partnership agreement with CedarCrestone, on September 4, 2012 based on conduct it knew about before renewing that same contract with CedarCrestone (in November 2011).

- Oracle filed the NDCA Action the next day, on September 5, 2012, based on conduct admittedly it was aware of for over a year.[3]

- Oracle then renewed its Motion to Modify the Protective Order, on September 7, 2012, arguing it now has collateral litigation pending warranting modification.

This timeline demonstrates that Oracle is trying to use the Protective Order as a sword. Oracle induced reliance from its partner, CedarCrestone, to produce documents/witnesses solely for the *Rimini* action but in reality in order to obtain evidence to use *against* CedarCrestone outside the *Rimini* Action. When the Court did not permit modification, Oracle filed a collateral lawsuit in order to once again try to lift the protections. The Court need only apply *Foltz*.

First, *Foltz* holds that discovery manipulation and exploitation like Oracle has engaged in warrants denial of modification. Second, *Foltz* also provides for the denial of modification where, like here, a producing party's reliance consists of more than just the reliance on the existence of a stipulated protective order itself. Under either rationale, this Court may and should deny modification. Oracle has not pointed to a single case on point where modification was allowed with the same reliance interests as here, or with similar facts, or that involve similarly situated parties and non-parties to the Protective Order.

### 4. Oracle Argues That There Is No Prejudice To CedarCrestone Because Oracle Already Has Possession Of The Information By Virtue Of The *Rimini* Action, But This Warrants Denial Of Modification.

Oracle's Reply newly argues that there is no prejudice to CedarCrestone because "Oracle already has the information." [Dckt. No. 430, 6:23-24]. However, the Ninth Circuit has held this to be a factor in <u>denying</u> modification of a protective order. *County of Santa Clara v. Astra USA, Inc.*, 2011 WL 2912849, Case No. C 05-03740 WHA, *2 (N.D.Cal. July 20, 2011) (denying modification

---

[3]   Oracle is not without remedy if, as it represents to the Court, the same information is in fact discoverable in the collateral NDCA Action. Oracle may simply serve discovery in the NDCA Action covering the same subjects. In fact, Oracle has to serve the discovery first in order to use them in the collateral proceeding which it has not yet done. Contrary to Oracle's papers which make it clear it will immediately use the materials to amend its NDCA Complaint, *Foltz* holds as a matter of law that it is up to the judge in the collateral suit to determine whether the materials may even be used.

in part because in *Foltz*, "unlike here, the documents were not improperly in the hands of the moving party to begin with."). The Ninth Circuit factor still applies regardless whether Oracle's Reply attempts to distinguish the *County of Santa Clara* case on the ground that the parties involved were not competitors. The reasoning is the same.

Oracle is in possession of the protected materials by virtue of the *Rimini* Action only. Now with Oracle admitting it was investigating CedarCrestone before obtaining the information under the auspices of using it in the *Rimini* Action only, it is clear the protected materials were induced under false pretenses. The Ninth Circuit holds this type of conduct to be discovery exploitation. Oracle is improperly within possession of the materials. Unlike in *Foltz*, the party in *County of Santa Clara* seeking modification was not a third party intervener but was uniquely and improperly in possession of the protected materials already. The same is true of Oracle here. The circumstances here do not resemble the cases in which modification has been granted. Oracle's argument that it is already in possession of the protected materials does not weigh in favor of modification, but instead, actually weighs against it.

### C. CONCLUSION

Oracle would like this Court to believe that CedarCrestone is seeking immunity from suit because it produced confidential information in the *Rimini* Action. Not so. In fact, this hyperbole is just a smokescreen argument so the Court will not apply the factors the Ninth Circuit considers when deciding whether to modify a protective order – because they weigh against modification under the circumstances here. Here a party to a protective order should not be allowed to induce reliance and exploit the discovery process by filing a collateral suit to lift protections on confidential information from a competitor or other non-party in the other suit. The Ninth Circuit holds that behavior should not be allowed.

The new issues raised in Oracle's Reply weigh heavily against modification of the Protective Oder. Contrary to Oracle's suggestion, the *Foltz* inquiry does not end merely when a stipulated protective order is involved, or that would be the end of the test – which it is not. Instead, there are several considerations in the Ninth Circuit courts must evaluate. Here, the considerations mandate that modification be denied because, among other reasons, (1) Oracle exploited the discovery

process in order to lift the protections, or (2) due to CedarCrestone's significant reliance interests which Oracle in large part itself induced. Either reason constitutes grounds to deny modification.

For the foregoing reasons and arguments, this Court should grant CedarCrestone leave to file its Surreply and deny Oracle's Renewed Motion to Modify Protective Order.

DATED: October 18, 2012

DUANE MORRIS LLP

By: */s/ Dominica C. Anderson*
Dominica C. Anderson (SBN 2988)
Ryan A. Loosvelt (SBN 8550)

Attorneys for CedarCrestone, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2012, I served via CM/ECF a true and correct copy of the foregoing **NON-PARTY CEDARCRESTONE, INC.'S MOTION FOR LEAVE TO FILE SURREPLY** to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.

/s/ Jana Dailey
Jana Dailey
An employee of DUANE MORRIS LLP