1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
3   Las Vegas, NV 89101
    Telephone: (702) 382-7300
4   Facsimile: (702) 382-2755
    rpocker@bsfllp.com
5
    BOIES, SCHILLER & FLEXNER LLP
6   STEVEN C. HOLTZMAN (pro hac vice)
    FRED NORTON (pro hac vice)
7   KIERAN P. RINGGENBERG (pro hac vice)
    1999 Harrison Street, Suite 900
8   Oakland, CA 94612
    Telephone: (510) 874-1000
9   Facsimile: (510) 874-1460
    sholtzman@bsfllp.com
10  fnorton@bsfllp.com
    kringgenberg@bsfllp.com
11
    Attorneys for Plaintiffs Oracle USA, Inc.,
12  Oracle America, Inc. and Oracle International
    Corp.

    BINGHAM MCCUTCHEN LLP
    GEOFFREY M. HOWARD (pro hac vice)
    THOMAS S. HIXSON (pro hac vice)
    KRISTEN A. PALUMBO (pro hac vice)
    BREE HANN (pro hac vice)
    Three Embarcadero Center
    San Francisco, CA  94111-4067
    Telephone:  415.393.2000
    Facsimile:  415.393.2286
    geoff.howard@bingham.com
    thomas.hixson@bingham.com
    kristen.palumbo@bingham.com
    bree.hann@bingham.com

    DORIAN DALEY (pro hac vice)
    DEBORAH K. MILLER (pro hac vice)
    JAMES C. MAROULIS (pro hac vice)
    ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    dorian.daley@oracle.com
    deborah.miller@oracle.com
    jim.maroulis@oracle.com

13

14

15                    UNITED STATES DISTRICT COURT

16                        DISTRICT OF NEVADA

17

18  ORACLE USA, INC., a Colorado corporation;      No. 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
19  corporation; and ORACLE                        **REPLY IN SUPPORT OF ORACLE'S**
    INTERNATIONAL CORPORATION, a                   **SECOND MOTION FOR PARTIAL**
20  California corporation,                        **SUMMARY JUDGMENT**

21              Plaintiffs,

22          v.

23  RIMINI STREET, INC., a Nevada                  Judge:      Hon. Larry R. Hicks
    corporation; SETH RAVIN, an individual,
24
                Defendants.
25

26

27

28

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 2

    A.   Rimini Has Infringed Oracle's Copyrights For Oracle Database ......................... 2

    B.   Rimini's Express License Defense Fails ............................................................. 2

        1.   The Developer License Does Not Authorize Rimini's Copies ................. 3

            a.   Rimini Uses Oracle Database For Commercial Purposes ............. 3

            b.   Rimini Does Not Use Oracle Database To Develop Its Own Applications ................................................................................. 4

        2.   The OLSA Does Not Authorize Rimini's Copies ................................... 6

            a.   Rimini Acquired Oracle Database Pursuant To The Developer License, Not The OLSA ............................................. 6

            b.   Rimini Did Not Act Under Delegated Authority From Its Customers ................................................................................. 7

            c.   Rimini Did Not Use Oracle Database Solely For Its Customers' Internal Business Operations ................................. 8

    C.   Summary Judgment On Rimini's Eighth And Ninth Affirmative Defenses Should Be Granted ........................................................................................... 9

        1.   Rimini's Undisputed Assurances That It Would Respect Intellectual Property And The Terms Of License Agreements Are Dispositive ............................................................................................. 9

        2.   Rimini's October 2005 Letter Did Not Disclose That Rimini Copied Software On Its Computers Or Engaged In Cross-Use ............. 10

        3.   Oracle's Software Shipments To Rimini Did Not Put Oracle On Notice That Rimini Copied Or Cross-Used Oracle's Software .............. 12

        4.   Rimini Fails To Show The Unusual Circumstances Necessary To State Its Laches Defense ....................................................................... 13

    D.   Rimini Lacks Admissible Evidence To Support Its Counterclaims.................... 13

        1.   Rimini Must Prove Actual Malice ........................................................ 13

        2.   Rimini Cannot Prove Actual Malice Or Negligence .............................. 15

        3.   Ms. Hellinger's Statement Is True ........................................................ 17

        4.   The Statement In Mr. McLeod's Email Is True And Protected By The Fair Reporting Privilege................................................................. 18

        5.   On Its Trade Libel Claim, Rimini Cannot Prove Special Damages......... 20

        6.   Rimini's Unfair Competition Claim Falls With Its Defamation Claim ..................................................................................................... 20

III. CONCLUSION....................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ampex Corp. v. Cargle,*
128 Cal. App. 4th 1569 (2005) ................................................................ 14, 15

*Boghos v. Certain Underwriters at Lloyd's of London,*
115 P.3d 68 (Cal. 2005) ................................................................................. 4

*Bridge Publ'ns, Inc. v. Vien,*
827 F. Supp. 629 (S.D. Cal. 1993) ............................................................... 9

*Bus. Trends Anal., Inc. v. Freedonia Group, Inc.,*
887 F.2d 399 (2d Cir. 1989) ........................................................................ 18

*Cabrera v. Alam,*
197 Cal. App. 4th 1077 (2011) .................................................................... 15

*Crane v. Arizona Republic,*
972 F.2d 1511 (9th Cir. 1992) ................................................................ 19, 20

*D.C. v. R.R.,*
182 Cal. App. 4th 1190 (2010) .................................................................... 14

*Danjaq LLC v. Sony Corp.,*
263 F.3d 942 (9th Cir. 2001) ....................................................................... 13

*DePinto v. Sherwin-Williams Co.,*
776 F. Supp. 2d 796 (N.D. Ill. 2011) .......................................................... 16

*Dore v. Arnold Worldwide, Inc.,*
139 P.3d 56 (Cal. 2006) ............................................................................ 3, 4

*Easton v. Public Citizens, Inc.,*
1991 WL 280688 (S.D.N.Y. Dec. 26, 1991) .............................................. 17

*F.B.T. Prods., LLC v. Aftermath Records,*
621 F.3d 958 (9th Cir. 2010) ........................................................................ 9

*Gilberd v. Dean Witter Reynolds Inc.,*
1992 WL 880089 (N.D. Cal. Aug. 12, 1992) .............................................. 16

*Handelsman v. S.F. Chronicle,*
11 Cal. App. 3d 381 (1970) .................................................................... 19, 20

REPLY IN SUPPORT OF ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

*Harkonen v. Fleming,*
   2012 WL 3026400 (N.D. Cal. July 24, 2012).................................................. 14, 15

*Holbrook v. Harman Auto., Inc.,*
   58 F.3d 222 (6th Cir. 1995)............................................................................ 16

*McClatchy Newspapers, Inc. v. Sup. Ct.,*
   189 Cal. App. 3d 961 (1987).......................................................................... 19, 20

*Medifast, Inc. v. Minkow,*
   2011 WL 1157625 (S.D. Cal. Mar. 29, 2011) ................................................ 14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913 (2005)........................................................................................ 18

*Mosesian v. McClatchy Newspapers,*
   233 Cal. App. 3d 1685 (1991)........................................................................ 15

*Murray v. Bailey,*
   613 F. Supp. 1276 (N.D. Cal. 1985) .............................................................. 17

*N.Y. Times v. Sullivan,*
   376 U.S. 254 (1964)........................................................................................ 16

*On Davis v. The Gap, Inc.,*
   246 F.3d 152 (2d Cir. 2001)............................................................................ 18

*Orr v. Argues-Press Co.,*
   586 F.2d 1108 (6th Cir. 1978)........................................................................ 17

*Partington v. Bugliosi,*
   56 F.3d 1147 (9th Cir. 1995)........................................................................... 15

*Pegasus v. Reno Newspapers, Inc.,*
   57 P.3d 82 (Nev. 2002) .................................................................................. 17, 19

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
   2012 WL 3711706 (9th Cir. Aug. 29, 2012)................................................... 13

*Polar Bear Prods., Inc. v. Timex Corp.,*
   384 F.3d 700 (9th Cir. 2004)........................................................................... 10, 18

*Ringler Assocs. v. Maryland Cas. Co.,*
   80 Cal. App. 4th 1165 (2000) ........................................................................ 17

*Sahara Gaming Corp. v. Culinary Workers Union Local 226,*
   984 P.2d 164 (Nev. 1999) .............................................................................. 19

iii

*Simonson v. United Press Int'l, Inc.,*
   654 F.2d 478 (7th Cir. 1981) ................................................................... 17

*Smith v. Maldonado,*
   72 Cal. App. 4th 637 (1999) ............................................................ 17, 19

*Speer v. Ottaway Newspapers, Inc.,*
   828 F.2d 475 (8th Cir. 1987) ................................................................... 16

*Terra Ins. Co. v. N.Y. Life Inv. Mgmt. LLC,*
   717 F. Supp. 2d 883 (N.D. Cal. 2010) ..................................................... 16

*Warren Freedenfeld Assocs., Inc. v. McTigue,*
   531 F.3d 38 (1st Cir. 2008) ...................................................................... 10

## STATUTES

17 U.S.C. § 506 ............................................................................................ 18

18 U.S.C. § 2319 .......................................................................................... 18

Cal. Civ. Code § 1641 .................................................................................... 4

Cal. Civ. Code § 2332 .................................................................................. 16

## OTHER AUTHORITIES

1 Sack on Defamation (4d ed. 2012) § 5.5.2[E] ........................................ 16

Fed. R. Civ. P. 37(c)(2) .............................................................................. 19

iv

I.      **INTRODUCTION**

Oracle moved for partial summary judgment on three subjects:

*First*, Oracle moved to establish a *prima facie* case of copyright infringement – ██████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ – and to establish that Rimini has no express license defense.  Rimini admits the former, so it does not dispute Oracle's *prima facie* case.  On the express license defense, the Developer License expressly *precludes* commercial use or use for purposes other than development of Rimini's own applications.  Rimini therefore has no defense under the Developer License.  Rimini's attempt to invoke the Oracle License and Service Agreement ("OLSA") instead – ████████████████████████████████ ████████████████████████ – is baseless.  Rimini cannot dispute its own admission ████████████████████████████████████████████████████ ████████████████████████████████████████ ████." Even if the OLSA applies, it authorizes the use of a licensee's software██████ ██████████████████████████████" ████████████████████ ████████████████████. Rimini's express license defense fails.

*Second,* Oracle moved for summary judgment on Rimini's statute of limitations and laches defenses.  Rimini fails to show a genuine dispute as to either.  To prove notice, Rimini relies on a single piece of evidence from more than three years before Oracle filed suit – an October 2005 letter in which Rimini represented that ████████████████████████ ████████████████████████. Arguing that Oracle should have seen through these misrepresentations, Rimini relies on the letter's reference to ████████████████ ████. But that did not put Oracle on notice ████████████████████████ ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████. Rimini cites no evidence that Oracle knew or should have known that ████████ ████████████████████████████████. ████████████████████████ ████████████████████████████████████████. Thus, Rimini fails to meet its burden of

1

1     showing that Oracle was on notice of its claims prior to the statutory period.  Rimini also fails to

2     show the unusual circumstances necessary to present a laches defenses when a copyright claim is

3     asserted within the statutory period.

4          ***Third***, Oracle moved for summary judgment on Rimini's counterclaims.  With no proof

5     of special damages, Rimini essentially has abandoned its trade libel claim.  Rimini also has

6     abandoned one of the statements upon which it based its defamation claim (Dkt. 441, Rimini's

7     Opposition ("Opp.") at 7 n.2), leaving only the statements by James McLeod and Deborah

8     Hellinger.  In light of Rimini's repeated, voluntary public comments about the legality of third

9     party support, it cannot now disclaim its limited purpose public figure status to avoid having to

10    prove those statements were made with actual malice.  However, whether the Court deems

11    Rimini a public figure ultimately makes no difference.  Rimini presents no evidence from which

12    a jury could find that either individual published the statement negligently.  Rimini circumvents

13    this inconvenient failure of proof by arguing that it can charge the individual employees with

14    knowledge of facts known not to them, but rather to some other of Oracle's 100,000 employees.

15    Courts repeatedly have rejected that theory in the context of a defamation action.  Further, both

16    statements are true, and one (Mr. McLeod's) is also protected by the fair reporting privilege.

17    The Court should grant summary judgment in Oracle's favor on Rimini's counterclaims.

18    **II.**      **ARGUMENT**

19         **A.**      **Rimini Has Infringed Oracle's Copyrights For Oracle Database**

20         Oracle's motion established a *prima facie* case of copyright infringement.  Rimini does

21    not oppose.  Rimini agrees that Oracle owns the six copyrights at issue for Oracle Database, that

22    they are valid, and that in making the copies at issue, Rimini copied a substantial amount of

23    protected expression covered by these registrations.  *See* accompanying Reply Statement of

24    Undisputed Facts ("RSUF") at Oracle Facts 1-2, 10-12, 19, 22.  Only Rimini's affirmative

25    defenses remain.  The Court should grant Oracle's motion on its *prima facie* case.  Oracle should

26    not have to re-prove these undisputed elements of its claim at trial.

27         **B.**      **Rimini's Express License Defense Fails**

28         Rimini bases its express license defense on the Developer License and the OLSA.

1   However, the plain language of the Developer License forecloses Rimini's arguments.  The

2   OLSA does not apply but, in any event, its plain language refutes Rimini's arguments.

3           **1.**      **The Developer License Does Not Authorize Rimini's Copies**

4             **a.**      **Rimini Uses Oracle Database For Commercial Purposes**

5   Rimini does not dispute that it uses Oracle Database for a commercial purpose: ███

6   █████████████████████████████████████████████████████

7   ████████████████████████████████████████.  Opp. at 4-

8   5; RSUF at Oracle Facts 26-28, 30-31, 35-36, 38-39, Rimini Facts 16-18.

9   Only a legal dispute remains, *i.e.*, whether the Developer License authorizes that

10   commercial use.  Where, as here, the parties dispute the meaning of a contract term, the Court

11   must decide whether that term is "reasonably susceptible" to more than one interpretation.  *Dore*

12   *v. Arnold Worldwide, Inc.*, 139 P.3d 56, 61 (Cal. 2006).  "If it is not, the case is over."  *Id.*; *see*

13   *also* RSUF at Oracle Fact 7 (the parties agree California law applies).

14   The Developer License is not reasonably susceptible to Rimini's interpretation.  Rimini

15   argues that the prohibition on commercial use contains an exception for the development of an

16   application.  Opp. at 9.  That argument fails on its own terms.  ███████████████

17   ████████████████████████████████████████████████████.

18   Rimini does not argue or submit evidence to show that its admitted conduct falls within the

19   authorized scope of the Developer License, even under Rimini's interpretation.

20   Further, Rimini's argument that the Developer License allows commercial development

21   of software updates contradicts the plain language of the license.  Rimini focuses on the sentence

22   that says:  "You may not: - use the programs for your own internal data processing or for any

23   commercial or production purposes, or use the programs for any purpose except the development

24   of your application."  Dkt. 411, Ex. 5.[1]  Defying normal rules of grammar, Rimini reads the

25   exception language ("except the development of your application") *not* to modify the words that

26   immediately precede it (you may not "use the programs for any purpose"), but to reach back into

27   _____

28   [1] Unless otherwise indicated, "Ex." refers to an exhibit to the Appendix of Exhibits submitted
with Oracle's motion.  "Dkt." refers to the docket number of the relevant Appendix volume.

1  the middle third of the preceding clause (you may not use the programs "for any commercial"

2  purposes) and modify that instead.  That makes no sense.

3       Other provisions of the Developer License, ignored by Rimini, confirm that development

4  ceases to be authorized once commercial use is made of the application.  Cal. Civ. Code § 1641

5  (contract interpretation must "give effect to every part, if reasonably practicable, each clause

6  helping to interpret the other"); *Boghos v. Certain Underwriters at Lloyd's of London*, 115 P.3d

7  68, 72 (Cal. 2005) (same).  For example, the Developer License states that "*If you use the*

8  *application you develop* under this license for any internal data processing or *for any commercial*

9  or production *purposes*, or you want to use the programs for any purpose other than as permitted

10  under this agreement, *you must obtain* a production release version of the programs by

11  contacting us or an Oracle reseller to obtain *the appropriate license*."  Dkt. 411, Ex. 5 (emphasis

12  supplied).  It also states that "You may not: . . . *continue to develop* your application *after you*

13  *have used it for any* internal data processing, *commercial* or production *purpose without securing*

14  *an appropriate license* from us, or an Oracle reseller . . . ."  *Id*. (emphasis supplied).

15       Rimini's claim that there is "no such commercial-development prohibition in the actual

16  text of the Developer Agreement" is wrong.  Opp. at 10 n.3.  The Developer License states the

17  prohibition repeatedly, in plain English.  Therefore, "the case is over."  *Dore*, 139 P.3d at 61.

18  **b.    Rimini Does Not Use Oracle Database To Develop Its Own**
19  **Applications**

20       Oracle's motion explained that Rimini's use is also unauthorized because the Developer

21  License only authorizes use of Oracle Database to develop "your application."  Rimini asserts

22  that a software update is an application and that "your" can refer to things that do not belong to

23  Rimini.  Again, this argument fails on its own terms.  ██████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████.  Rimini makes no argument and

26  submits no evidence that these uses constitute any form of permitted development.

27       As to development, Rimini admits ████████████████████████████

28  ██████████, RSUF at Oracle Fact 31, then argues that an update is the same thing as an

4

1    application.  Rimini offers no evidence to support that argument, and it is wrong.  Rimini cites

2    Oracle's technical expert, Dr. Randall Davis, whose report states that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  Opp. at 11.  And they are:  if tax laws change,

4    but the PeopleSoft HRMS software is not updated to reflect new withholding requirements, for

5    example, then the software may not perform payroll deductions correctly.  *See* RSUF at Rimini

6    Fact 12.  For that matter, a computer and electric power are also "crucial to the correct

7    operation" of applications because without them, the software will not work at all.  Dr. Davis did

8    not state that an update *is* an application.  The proposition that one thing is crucial to the

9    operation of another does not show that the two are the same thing; it proves the opposite.[2]

10          Further, Rimini employee George Lester did not testify that Rimini was developing an

11   application.  He testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮"  Opp. at 11 (emphasis supplied), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮:

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮

18   Dkt. 419, Ex. 7 at 114:9-18 (emphasis supplied).  Whenever Rimini refers to this testimony to

19   support its definition of "application" in the Developer License, it deletes the witness's answer to

20   that very question.  *See, e.g.*, RSUF at Oracle Fact 40.

21          In its motion, Oracle also explained that Rimini did not develop "*your* application"

22   because Rimini does not own the updates.  Mot. (Dkt. 417) at 14-15.  Oracle submitted

23   conclusive evidence that the updates are not Rimini's: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Dkt. 419, Ex. 16.  Rimini *still* does not contend it

27   ─────────────────

28   [2] Even Rimini's own set of alleged undisputed facts draw the same distinction between updates
     and application software that Oracle does in its motion.  RSUF at Rimini Facts 11-12.

1  owns the updates, stating in its opposition that "Rimini has not further taken a position on its

2  ownership rights in its updates."  RSUF at Oracle Facts 42-43.  Instead, it offers irrelevant

3  assertions in response.  It says it "prides itself in the quality of its updates," it delivers updates

4  "ahead of Oracle," "Rimini's updates are developed by Rimini personnel," and that the updates

5  are "maintained in Rimini's sole possession" until they are delivered to customers.  Opp. at 11-

6  12.  Rimini argues, but submits no evidence, that these assertions show that the updates can be

7  considered Rimini's "in an ordinary or popular sense."  *Id.* at 12.  ██████████████████

8  ████████████████████████████████████████████████████████████████████

9  Rimini has failed to create a triable question of fact on whether the updates belong to it.

10        Further, Rimini's use of Oracle Database contradicts the undisputed purpose of the free

11  Developer License.  Oracle offers it for free to encourage software engineers to develop new

12  applications that work with Oracle Database, so that when these applications are

13  commercialized, they will drive additional Database sales.  *See* RSUF at Oracle Fact 4 & Rimini

14  Fact 1.  A "developer" undermines that essential purpose when it uses the license, not to create a

15  new application, but instead to create updates for *Oracle's* existing software.  That conduct fails

16  to drive any future Database license sales.  It also deprives Oracle of support revenue.  Oracle

17  never intended the Developer License for the use that Rimini claims, and thus drafted it

18  explicitly to prohibit that use.  *See* RSUF at Oracle Facts 4, 6.

19                 **2.**        **The OLSA Does Not Authorize Rimini's Copies**

20                          **a.**        **Rimini Acquired Oracle Database Pursuant To The Developer**

21                                      **License, Not The OLSA**

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████  RSUF at Oracle Facts 13, 16, 18,

24  20.  But Rimini says that software code is an idea without physical embodiment, so the source

25  should not matter.  Opp. at 13.  That does not follow.  Many copyrightable works – such as

26  literary and musical works (as distinct from a copyright in a performance of such as work) – are

27  also ideas without a physical embodiment.  Still, the source of the particular copy matters

28  because it determines the contract terms to which the licensee agreed in order to obtain the copy.

1    Here, the Developer License states, "You are bound by the Oracle Technology Network

2 ('OTN') License Agreement terms." Dkt. 411, Ex. 5. It says "[w]e are willing to license the

3 programs to you only upon the condition that you accept all of the terms contained in *this*

4 agreement." *Id.* (emphasis supplied). It says, "[i]f you are not willing to be bound by *these*

5 *terms*, select the 'Decline License Agreement' button and the registration process *will not*

6 *continue*." *Id.* (emphasis supplied); *see also id.* (defining "License" to mean "your right to use

7 the programs *under the terms of this agreement*") (emphasis supplied).

8    ███████████████████████████████ Rimini agreed it was "bound" by the

9 Developer License. ████████████████████████████████████████████

10 ██████████████████████████. RSUF at Oracle Facts 16-18, 37. Now that

11 Rimini has been caught acting outside that license's scope, its lawyers cannot just invent a story

12 that other licenses apply instead.

13               **b.     Rimini Did Not Act Under Delegated Authority From Its
                          Customers**

14    Even if the OLSA applied, that would not save Rimini, because its customers did not

15 designate it as an agent or contractor on their behalf to obtain or copy Oracle Database pursuant

16 to the OLSA. ██████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████. *See* RSUF at Oracle Fact 45.

20    The sole piece of evidence Rimini cites to show that it supposedly acted on behalf of a

21 customer when it acquired and copied Oracle Database – Rimini's support agreement with

22 customer ████████████ (Dkt. 421, Ex. 54 at p. 15) – confirms this. ████████

23 ████████████████████████████████████████████████████

24 ██████████████" *Id.* at 6. ██████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 *Id.*; *see also* RSUF at Rimini Fact 28. ███████████████████████████

28

REPLY IN SUPPORT OF ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1 ████████████████████████████████████████████████

2 █████████████████████████████████████████████

3 ██████████████████████████████.” Dkt. 421, Ex. 54 at 1, 7. ██████████████

4 ███████████████████████████████████████████████

5 █████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ███████████████████████████████████████████

8 █████████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████

11 ███████████████████████████████[3] Rimini's delegated authority

12 argument must fail.

        **c.**      **Rimini Did Not Use Oracle Database Solely For Its Customers'**
13                    **Internal Business Operations**

14      Even if the OLSA applies, it does not authorize Rimini's cross-use of Oracle Database.

15 ███████████████████████████████████████████

16 █████████████████████████████████████████████████

17 ████████████████████████████████. Opp. at 15; RSUF at Oracle Facts 49,

18 51-56. ██████████████████████████████████

19 ████████████████████████████. Opp. at 15-16.

20    ████████████████████████████████████

21 █████████████████████████████████████████████

22 ████████████████████████████████████████████

23 █████████████████. RSUF at Oracle Fact 3. ████████████

24 █████████████████████████████████████████████████

25

26 ──────────────────

[3] Rimini argues that the Independent Contractor provision in the support agreement
27 ██████████████████████████████. Opp. at 14.

28 ██████████████████████████████. RSUF at Oracle Facts 45-47.

REPLY IN SUPPORT OF ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1 ████████████████████████████████████████████████████████████

2 ████████████[4]

3      Rimini offers no explanation for how its ██████████ could comply with the terms of

4 the OLSA.  The Court is not faced with a situation where Oracle and Rimini are arguing for

5 different interpretations of the same contractual language.  Rimini's opposition brief simply

6 never mentions this licensing restriction and advances no interpretation of it.[5]

7     **C.**     **Summary Judgment On Rimini's Eighth And Ninth Affirmative Defenses**

        **Should Be Granted**

8

9         **1.**     **Rimini's Undisputed Assurances That It Would Respect Intellectual**

            **Property And The Terms Of License Agreements Are Dispositive**

10      Rimini concedes that in October 2005 its counsel wrote Siebel that ██████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████."  Dkt. 421, Ex. 58 at

14 RSI03232064; RSUF at Oracle Fact 63; Opp. at 18.  ██████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████ Ex. 58 at RSI03232067.

17      Rimini does not dispute the settled law that where a defendant assures a copyright holder

18 it is not infringing, it is reasonable for a plaintiff to await actual discovery before filing suit.  *See*

19 Mot. at 19-20; *Bridge Publ'ns, Inc. v. Vien*, 827 F. Supp. 629, 634 (S.D. Cal. 1993) (granting

20 summary judgment on statute of limitations defense because defendant had "assured" that it had

21 not "distributed or disclosed" the materials at issue).  Rimini cites no case to the contrary;

22 indeed, Rimini cites no case involving such assurances at all.

23 ----------------

[4] This prohibition on cross-use is why Rimini initially (and falsely) told the Court that it did not

24 cross-use software between customers.  *See* p. 18, below.  Rimini was trying to distinguish itself from Ravin's prior company, TomorrowNow, which engaged in similar cross-use of Oracle's

software and ended up admitting to copyright infringement in advance of trial.  *See* n.7, below.

25 [5] Rimini asserts that non-production environments are common in the industry.  Opp. at 15.  But the question is whether the OLSA disallows cross-use when it states ██████████████

26 ████████████████████  Whether non-production environments are common (as to third-parties, they are not, *see* RSUF at Rimini Fact 10) has nothing to do with

27 the provision at issue.  *See F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 966-67 (9th Cir. 2010) (reversing denial of summary judgment because "evidence regarding industry

28 custom" was immaterial in light of the "unambiguous[]" contract terms).

1    Rimini's failure to dispute these facts and the applicable law is dispositive.  *See id.*; *see*

2    *also, e.g.*, *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 42 (1st Cir. 2008) (where

3    defendant represented he would not use architect's copyrighted plans in completing building, "a

4    reasonable person standing in [plaintiff's] shoes easily could have accepted [defendant's]

5    statements at face value"); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 704, 707 (9th

6    Cir. 2004) (reasonable that plaintiff did not bring suit within three years where defendant

7    expressly "agreed not to produce the tape").

8              2.    **Rimini's October 2005 Letter Did Not Disclose That Rimini Copied**
                     **Software On Its Computers Or Engaged In Cross-Use**
9

10   Even if Rimini had not assured Oracle ████████████, Rimini's statute of

     limitations and laches defenses would still fail for a separate reason.  Rimini relies entirely on its
11
     2005 letter and ███████████████████████████████████  But
12
     neither shows Oracle should have known, prior to January 25, 2007, that Rimini was violating
13
     Oracle's intellectual property rights.
14
          Rimini's October 2005 letter nowhere says that ██████████████████
15

16   ██████████████████████████████████████████████

17   ██████████████████████████████████████

18   ████████████████████████████." Opp. at 18.  But that statement simply

19   does not disclose the true facts that Rimini later conceded: ███████████████

20   ██████████████████████████████████████████████

21   ██████████████████████████████████████████████

22   ███████████████████████████████████████

23   ████████████████████[6]██████████████████████████

24   ██████████████████████████████████████████████

25   _____

26   [6] Rimini strains at times to blur the distinction. ████████████████████████
     ████████████████████████████████████████." (Opp. at 6) (emphasis supplied),

27   ██████████████████████████████████████████████

28   ████████████████████████████████████████████

REPLY IN SUPPORT OF ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1  █████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████

6  ████████████████████████████████████████████ RSUF at

7  Rimini Fact 40. ████████████████████████████████████████████

8  ██████████████████████████████████████████████████████

9  ██████. *Id.*  It makes no sense to argue, as Rimini does, that Oracle should have disregarded

10  Rimini's assurances in the letter that it would comply with relevant licenses ████████████████

11  ████████████████████████████████████████████████████

12  ██████████████.

13       Rimini also argues that the October 2005 letter put Oracle on notice because ████████

14  ████████████████████████████████████ Opp. at 19.  Rimini's

15  evidence does not address the crucial time period before January 25, 2007, and fails to prove the

16  existence of any relevant industry practice at any time, let alone one Oracle knew about.

17       First, Rimini's reliance on testimony of Paul Simmons from CedarCrestone is misplaced.

18  So far as Oracle is aware, CederCrestone is one of two companies[7] besides Rimini to engage in

19  similar practices, and Oracle has brought suit against CedarCrestone, asserting, among other

20  things, claims of copyright infringement. ██████████████████████████████████████

21  █████████████████████████████████████████████████████

22  ████████████████. RSUF at Rimini Fact 41. ████████████████████████

23  ██████████████████████████████████. *Id.* ████████████████

24  █████████████████████████████████████████████████████

25  ████████████████████████.

26

27  ────────────────────────
[7] The other is SAP, which Oracle also sued based on the same practices at issue here.  SAP then shut down its TomorrowNow subsidiary and admitted to copyright infringement.

28  TomorrowNow pled guilty to federal criminal computer fraud and copyright charges.



1    Second, Rimini's reliance on a declaration of retained expert Brooks Hilliard and certain

2    documents he cites fares no better.  As demonstrated by objections previously filed to the

3    Hilliard declaration (Dkt. 286), he offers no competent expert or other basis for his opinions

4    about industry practice or Oracle's knowledge of it.  Moreover, none of the Oracle documents

5    upon which he or Rimini relies discuss either ████████████████████████████████████

6    ████████████████████████████████████████████.  By comparison, two of

7    Rimini's own employees who had been independent consultants during the relevant time period

8    testified that █████████████████████████████████████████████████████████

9    ████████████████████████████████.  RSUF at Rimini Fact 40 (citing

10   testimony of T. Conley (2004-2008) and A. Holmes (2005-2006)).

11          Rimini's evidence simply does not support that it was industry practice prior to January

12   25, 2007 to █████████████████████████████████████████████████

13   ██████████████████████ – let alone that Oracle knew of any such practice prior to

14   January 25, 2007, and knew that Rimini would mimic it.

                 **3.      Oracle's Software Shipments To Rimini Did Not Put Oracle On
                           Notice That Rimini Copied Or Cross-Used Oracle's Software**

16          Rimini also claims Oracle was on notice that Rimini was installing software on its

17   computers ████████████████████████████████████████████████████.  Opp.

18   at 6-7, 18. ███████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████

22   ██████████████.  RSUF at Oracle Facts 67-68; Opp. at 18. ██████████████

23   ████████████████████████████████████████████████████████████.

24   ███████████████████████████████████████████████████████

25   ███████████████████████████.  ██████████████████████████████

26   ████████████████████████████████████████████████████

27   █████████.  RSUF at Oracle Fact 70. ████████████████████████████

1     ██████████████████████████████████████████████████████████

2     █████████████████████████████████ This is but one example of ways in which Rimini

3     continued to hide its true business practices.  Rather than making clear how it intended to support

4     its customers in the 2005 letter, as Rimini implies in its brief, Rimini lied about its practices in

5     2005, and has continued to lie to Oracle and the Court, up through and until June 2011.  *See, e.g.*,

6     RSUF at Oracle Fact 66; Dkts. 30, 56, 116 & 153 (all at ¶ 4) (Rimini's Answers through 2011).

### 4. Rimini Fails To Show The Unusual Circumstances Necessary To State Its Laches Defense

In its motion, Oracle showed that where a copyright claim has been brought within the statutory period, a defendant may prevail on a laches defense[8] only in unusual circumstances. Mot. at 22-23.  Rimini fails to dispute the law on this point.  Indeed, the two laches cases Rimini cites are each addressed by Oracle in its motion, both involving the extraordinary circumstance of a plaintiff with knowledge of literally decades of infringement by famous movies before filing suit upon re-release of the movies on DVD.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 949 (9th Cir. 2001) (James Bond files); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 2012 WL 3711706 at *1 (9th Cir. Aug. 29, 2012) (*Raging Bull*).  Rimini points to no evidence of any similar unusual circumstances in this case.  Accordingly, Rimini fails to rebut the "strong presumption" that laches fails.  Mot. at 22.  The Court should grant summary judgment to Oracle on laches.

### D. Rimini Lacks Admissible Evidence To Support Its Counterclaims

#### 1. Rimini Must Prove Actual Malice

Rimini argues that it need not prove actual malice, but only negligence, to succeed on its counterclaims because there is no "public controversy" here and, even if so, Rimini is not a "public figure" in the controversy.  Opp. at 21-23.  Rimini is wrong on both counts.

First, Rimini argues that "the legality of third party support" was never a "controversy" because "Oracle concedes that third-party support is permissible."  *Id.* at 21.  As the evidence Rimini cites demonstrates, Oracle did not concede the legality of *all* methods of third party

---

[8] As pled, Rimini's ninth affirmative defense includes "waiver and estoppel."  Oracle's motion argued that the waiver and estoppel defenses failed.  Mot. at 21 n.6.  Rimini's opposition makes no response on these points, and limits its argument to "laches."  Opp. at 16.  Thus, the Court should grant Oracle's motion as to Rimini's waiver and estoppel defenses.

support.  RSUF at Rimini Fact 35.  And there are "conflicting views" (*Medifast, Inc. v. Minkow*, 2011 WL 1157625 at *5 (S.D. Cal. Mar. 29, 2011)) on what constitutes legal – as opposed to illegal – methods of that support, as evidenced by the *Oracle v. SAP* litigation and this one and in the press coverage of both.  *See, e.g.,* Dkt. 414, Exs. 80, 82, 83 (noting "tough questions" about third party support raised by *Oracle v. SAP* lawsuit, including "rules of engagement" and what is "legally appropriate"); *see also* Declaration of Kevin Papay In Support Of Oracle's Second Motion for Partial Summary Judgment ("Papay Decl."), Ex. C; RSUF at Oracle Fact 96, Rimini Fact 37.  That press coverage did not end, as Rimini suggests, in July 2007 or April 2008, but continued through late 2007, 2008, and 2009.  *See* Dkt. 414, Ex. 83; Papay Decl., Exs. D-I.[9] Seth Ravin's January 2011 interview with Bloomberg (Dkt. 414, Ex. 85) illustrates that the debate about the legality of third party support continues.

Contrary to Rimini's suggestion, the controversy is a "public," not "private," one because it "could affect large numbers of people beyond the direct participants."  *D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1226 (2010); *Harkonen v. Fleming*, 2012 WL 3026400, *6 (N.D. Cal. July 24, 2012); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).  That includes not only all third party support providers but the thousands of Oracle and other enterprise software customers to whom such providers seek to sell their support services.[10]

Second, as to whether Rimini is a "public figure" in the controversy, Oracle need only prove that Rimini undertook "some voluntary act through which [it] sought to influence resolution of the public issue.  In this regard, it suffices that [Rimini] attempt[ed] to thrust [itself] into the public eye."  *Ampex*, 128 Cal. App. 4th at 1577.  Rimini willingly inserted itself into the public's eye, starting in 2005 (RSUF at Oracle Fact 94) and in the succeeding years before this lawsuit.  It did so by repeatedly talking to the press about the *Oracle v. SAP* lawsuit and the legal

---

[9] The articles Oracle submitted on summary judgment were only examples.  In response to arguments in Rimini's opposition, Oracle submits additional examples. Papay Decl., Exs. A-I.

[10] *See, e.g.,* Dkt. 414, Ex. 82 (discussing "customer concerns" raised by *Oracle v. SAP* lawsuit and quoting third party provider's concern that "due to the lawsuit, the third-party support market is 'under scrutiny and there's a lot of interest lately'"); Papay Decl., Ex. C (noting questions raised by customers), Ex. D (noting that "uncertainty raised by the *Oracle v. SAP* lawsuit could weigh heavily on customers' decision to migrate to third party support providers").

1    issues it raised about third party support.  *See* Dkt. 414, Exs. 79-83; Papay Decl., Exs. A-D, F-G.

2    As the articles reflect, Rimini did more than "advertise" its services.  It expressed a broader view

3    about what third party support providers may legally do, and also about the proper outcome of

4    the *Oracle v. SAP* litigation.

5          While Rimini claims it commented too "infrequently" to qualify as a public figure, Opp.

6    at 22, courts have found public figure status with far less commentary than the evidence shows

7    here.  *See Harkonen*, 2012 WL 3026400, at *7 (plaintiff issued one press release); *Cabrera v.*

8    *Alam*, 197 Cal. App. 4th 1077, 1092-93 (2011) (plaintiff prepared flyer and campaigned on

9    candidate's behalf at meeting); *Ampex*, 128 Cal. App. 4th at 1578 (plaintiffs issued press release

10   and annual letters on website).  Here, after its public comments in September 2005, Rimini gave

11   press interviews to broadcast its views in four different publications in March 2007, then again in

12   June 2007, July 2007, December 2007, April 2008, August 2008, and twice in September 2009.

13   *See* Dkt. 414, Exs. 80-83; Papay Decl., Exs. A-C, F-I.

14         Finally, to the extent Rimini points to the passage of time between its public comments

15   and the alleged defamatory statements, "every court of appeals that has specifically decided this

16   question has concluded that the passage of time does not alter an individual's status as a limited

17   purpose public figure."  *Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th Cir. 1995) (citing

18   cases); *see also Mosesian v. McClatchy Newspapers,* 233 Cal. App. 3d 1685, 1703 (1991).

19         For these reasons, Rimini is a limited purpose public figure and must (but cannot) prove

20   actual malice.  Even if the Court deems Rimini is not a limited purpose public figure, it should

21   still grant summary judgment because Rimini submits no evidence from which a jury could find

22   Ms. Hellinger or Mr. McLeod negligently published their alleged defamatory statements.

23              **2.      Rimini Cannot Prove Actual Malice Or Negligence**

24         Having taken no discovery, Rimini now attempts to prove Ms. Hellinger's and Mr.

25   McLeod's states of mind with "facts" known not by them, but by some other of Oracle's 100,000

26   employees.  Opp. at 24-25.  Rimini's argument fails for several reasons.

27         First, only the speaking employee's state of mind matters.  Here, Rimini entirely fails to

28   discuss either Ms. Hellinger's or Mr. McLeod's state of mind.  In fact, Rimini cannot discuss it

1    because Rimini failed to depose them or even designate Ms. Hellinger as a document production

2    custodian.  Mot. at 10.  After having essentially abandoned its defamation claim during fact

3    discovery, Rimini now improperly attempts to argue that Ms. Hellinger and Mr. McLeod acted

4    with malice (or negligently) when making their statements because Oracle's employees

5    collectively should have known that the statements were false.  The law offers no support for this

6    "corporate imputation" argument.  *See DePinto v. Sherwin-Williams Co.*, 776 F. Supp. 2d 796,

7    805 (N.D. Ill. 2011) (plaintiff may not "pool[ ] all of the information arguably within the

8    knowledge of various employees and imput[e] all of that knowledge to the corporate defendant

9    to establish . . . actual malice," but must "present evidence of malice that is specific to the

10   employee who made the defamatory statement"); *Holbrook v. Harman Auto., Inc.*, 58 F.3d 222,

11   225-26 (6th Cir. 1995) (where "defendant is an institution rather than an individual, the question

12   is whether the individual responsible for the statement's publication acted with the requisite

13   culpable state of mind"); *Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 478 (8th Cir. 1987)

14   (corporation liable only where plaintiff proves employees responsible for publication published

15   with actual malice; knowledge of employees with no such responsibility is irrelevant).[11]

16          The California statute and one unpublished case upon which Rimini relies do not compel

17   a different result.  Neither deals with defamation.  California Civil Code § 2332 generally

18   provides that "[a]s against a principal, both principal and agent are deemed to have notice of

19   whatever either has notice of, *and ought, in good faith and the exercise of ordinary care and*

20   *diligence, to communicate to the other.*"  (emphasis supplied)  Rimini omits the italicized

21   language in the statute and presents no evidence or argument to satisfy its requirements.  *Gilberd*

22   *v. Dean Witter Reynolds Inc.*, 1992 WL 880089 at *5 (N.D. Cal. Aug. 12, 1992), involved

23   information that was "intentionally kept secret" from the agent, and has been criticized as

24   unsupported by California law.  *See Terra Ins. Co. v. N.Y. Life Inv. Mgmt. LLC*, 717 F. Supp. 2d

25   _____

26   [11] *See also N.Y. Times v. Sullivan*, 376 U.S. 254, 287 (1964) (culpable state of mind must be
     "brought home to the persons in the [publishing] organization having responsibility for the
27   publication"); 1 Sack on Defamation (4d ed. 2012) § 5.5.2[E], at 5-109 ("Publication of a
     statement by one employee while another knows that the statement is untrue does not constitute
28   'actual malice,' for no person had an 'actual malice' state of mind that may be attributable to his
     or her employer.").

1   883, 893 n.3 (N.D. Cal. 2010).  Rimini cites no other case in which the knowledge of any

2   employer – let alone one with 100,000 employees – was imputed to each of its employees.

3     Even if imputation applied, and assuming Rimini's "facts" are true, the Court should

4   grant summary judgment for a separate reason for each statement.  As to Mr. McLeod, Rimini's

5   "facts" – *i.e.*, that Rimini's customers have licenses, that Oracle partners "possess and work with

6   copies of their client's licensed software products" and that Oracle sent Rimini "copies of Oracle

7   software" – have nothing to do with whether the *Information Week* article Mr. McLeod

8   forwarded accurately reported Oracle's allegations in this lawsuit.  Thus, they are irrelevant to

9   Mr. McLeod's belief that the article did so and to whether he used reasonable care to determine

10   that was the case.

11     As for Ms. Hellinger's statement about Rimini's "massive theft," even if imputation

12   applied, Rimini still presents no evidence from which a jury could find actual malice or

13   negligence.  Rimini does not identify anything Ms. Hellinger or anyone else at Oracle should

14   have done, but did not do, before Ms. Hellinger made her statement, other than to accept

15   Rimini's legal position that the "facts" to which it points establish the legality of its conduct—a

16   legal position that Oracle clearly disputes, as evidenced by its Complaint and summary judgment

17   motions in this case.  The Court should grant summary judgment in favor of Oracle.

18       **3.  Ms. Hellinger's Statement Is True**

19     Oracle's first summary judgment and this one demonstrate Rimini's "massive theft."

20   That alone warrants summary judgment on the claim based on Ms. Hellinger's statement to that

21   effect.  Rimini argues that, even if Oracle wins its first summary judgment motion, "at most,

22   Oracle can prove Rimini engaged in copyright infringement," and "copyright infringement is not

23   theft." Opp. at 25-26.  This semantic distinction does not warrant sending these claims to a jury.

24     The truth defense requires only that the statement be "substantially true."  *Smith v.*

25   *Maldonado*, 72 Cal. App. 4th 637, 646-47 (1999); *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d

26   82, 88 & n.17 (Nev. 2002).  It is not the "literal truth" of "each word or detail used in a statement

27   which determines whether or not it is defamatory; rather, the determinative question is whether

28   the 'gist or sting' of the statement is true or false."  *Ringler Assocs. v. Maryland Cas. Co.*, 80

1   Cal. App. 4th 1165, 1180-82 (2000).  Applying these principles, courts consistently hold that the

2   imprecise use of legal terminology does not qualify as defamation.  *See Orr v. Argues-Press Co.*,

3   586 F.2d 1108, 1112-13, 1115 (6th Cir. 1978); *Simonson v. United Press Int'l, Inc.*, 654 F.2d

4   478, 481-82 (7th Cir. 1981); *Murray v. Bailey*, 613 F. Supp. 1276, 1284 (N.D. Cal. 1985);

5   *Easton v. Public Citizens, Inc.,* 1991 WL 280688, *6 (S.D.N.Y. Dec. 26, 1991).

6          Here, no meaningful distinction exists between "theft" and "copyright infringement."

7   The leading Ninth Circuit copyright infringement case discussing actual damages refers to a

8   copyright infringement defendant as an "ordinary thief."  *Polar Bear*, 384 F.3d at 709.  *See also*

9   *Bus. Trends Anal., Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 405 (2d Cir. 1989) (comparing

10  copyright infringer to a "purse-snatcher").  The Supreme Court has stated that "deliberate

11  unlawful copying is no less an unlawful taking of property than garden-variety theft."  *Metro-*

12  *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 961 (2005).  *See also On Davis v.*

13  *The Gap, Inc.*, 246 F.3d 152, 163-66 (2d Cir. 2001) (referring to copyright infringer as "illegal

14  taker" with "larcenous intent" seeking "to surreptitiously steal material").  Further, the Copyright

15  Act imposes criminal penalties, just as with theft.  *See* 17 U.S.C. § 506; 18 U.S.C. § 2319.

16  Indeed, Ravin's former company, TomorrowNow, whose business model Ravin designed, pled

17  guilty to such charges after SAP bought it.  *See* FBI Press Release, *TomorrowNow, Inc.,*

18  *Sentenced on Computer Intrusion and Copyright Infringement Charges* (Sept. 14, 2011).[12]

19  Rimini initially claimed to the Court (███████████) that Rimini uses a different business

20  model than TomorrowNow, one that does not cross-use software between customers.  It since

21  has admitted that was not true.  *See* Dkt. 284 (Oracle SJ Reply) at 6-8.

22         Thus, whether a copyright infringer like Rimini meets the strict legal definition of a

23  "thief" makes no difference.  Because the "gist or sting" of both terms is the same, it is still

24  substantially true that Rimini engaged in "massive theft" of Oracle's intellectual property.

25             **4.     The Statement In Mr. McLeod's Email Is True And Protected By The
                         Fair Reporting Privilege**

26

27         As Oracle demonstrated in its motion, the relevant statement in the *Information Week*

---

28  [12] Available at http://www.fbi.gov/sanfrancisco/press-releases/2011/tomorrownow-inc.-
    sentenced-on-computer-intrusion-and-copyright-infringement-charges.

1    article that Mr. McLeod forwarded is true.  The article said, in relevant part:  "'This case is about

2    massive theft of Oracle's software and related support materials through an illegal business

3    model,' Oracle said in court papers filed Monday in federal court in Nevada."  RSUF at Oracle

4    Facts 87-88.  Rimini does not dispute that the article accurately quoted Oracle's complaint.  *Id.* at

5    Oracle Fact 89.  Rimini cannot, therefore, dispute the truth of the statement.  It also cannot

6    challenge the applicability of the fair reporting privilege.  *See McClatchy Newspapers, Inc. v.*

7    *Sup. Ct.*, 189 Cal. App. 3d 961, 977 (1987) ("A verbatim use of the alleged defamatory material

8    reported in its proper context . . . epitomizes the meaning of 'fair and true report.'"); *Sahara*

9    *Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 164-166, 168 (Nev. 1999)

10   (letter that "accurately quote[s] a portion of a complaint" is absolutely privileged).  All of

11   Rimini's efforts to avoid the consequences of the truth must fail.

12         First, Rimini argues that Oracle cannot rely on the "truthfulness" of McLeod's email just

13   because someone else (the *Information Week* reporter) initially made the statements.  Opp. at 26-

14   27.  Rimini misses the point.  A party only incurs liability for republishing a defamatory

15   statement if the statement is false in the first place.  Here, Rimini does not dispute that the

16   statement in the *Information Week* article upon which Rimini relies is true.  RSUF at Oracle

17   Facts 87, 89.  That ends the inquiry for purposes of Oracle's truth defense.

18         Second, after three extensions of the fact discovery cut off (*see* Dkt. 142, 161, 212),

19   Rimini now tries to expand its defamation claim beyond what it disclosed in discovery.  RSUF at

20   Oracle Fact 88.  Federal Rule of Civil Procedure 37(c)(2) precludes Rimini from offering new

21   discovery responses now.  Accordingly, the Court should not consider any statement in Mr.

22   McLeod's email other than the one identified in Rimini's interrogatory response.[13]  *See*

23   Objections to Evidence Submitted in Support of Defendants' Opposition to Oracle's Second

24   Motion for Partial Summary Judgment.

25         Third, Rimini argues that the *Information Week* article was not a "fair, accurate and

---

26   [13] Even if the Court considers the newly-identified statements, each accurately paraphrases the
     allegations in Oracle's complaint.  Thus, each is substantially true and protected by the fair
27   reporting privilege.  *See Smith*, 72 Cal. App. 4th at 646-47; *Pegasus*, 57 P.3d at 88 & n.17;
     *Crane v. Arizona Republic*, 972 F.2d 1511, 1519-20 (9th Cir. 1992).  Rimini does not attempt to
28   demonstrate otherwise.  *See* RSUF at Oracle Fact 88.

1   impartial report" of Oracle's allegations because it did not identify the causes of action Oracle

2   pled (including "copyright infringement").  Opp. at 27.  But Rimini cites no authority, and

3   Oracle has found none, for the proposition that the article must identify a complaint's causes of

4   action to fall within the fair reporting privilege.  Rather, reporters have a "certain degree of

5   flexibility/literary license" and need not "track verbatim the underlying proceeding."  *Crane*, 972

6   F.2d at 1519; *see also Handelsman v. S.F. Chronicle*, 11 Cal. App. 3d 381, 387 (1970) (noting

7   lack of authority for contention that article "must indicate every possible interpretation of every

8   word used in a complaint").  The article need only capture the "substance, the gist, the sting of

9   the libelous charge."  *Crane*, 972 F.2d at 1519.  Here, Rimini concedes that the phrase about

10  which it complains – "this case is about massive theft" – simply "regurgitates" Oracle's

11  allegations.  Opp. at 27.  Thus, the privilege must remain intact.  *McClatchy*, 189 Cal. App. 3d at

12  977; *Crane*, 972 F.2d at 1519.

13       Finally, because the article quotes directly from the complaint, even if there was a

14  "difference between copyright infringement and theft," Opp. at 27-28, it would not matter.  The

15  decisive issue in applying the privilege is whether the publication fairly reports the complaint;

16  whether the facts contained in the official record are actually true is irrelevant.  *See* Mot. at 28.

17       **5.    On Its Trade Libel Claim, Rimini Cannot Prove Special Damages**

18       Rimini alleges a claim for both defamation and trade libel.  Rimini does not dispute that

19  trade libel requires proof of special damages, but offers no such proof.  Opp. at 28.  With no

20  evidence of damages, and Rimini effectively having abandoned its trade libel claim, the Court

21  should grant summary judgment on that claim.

22       **6.    Rimini's Unfair Competition Claim Falls With Its Defamation Claim**

23       Rimini does not dispute that its claim for violation of California's Unfair Competition

24  Law ("UCL") rests entirely on its defamation allegations.  RSUF at Oracle Fact 107.

25  Accordingly, the Court should grant summary judgment to Oracle on Rimini's UCL claim to the

26  same extent that it grants summary judgment as to Rimini's defamation and trade libel claims.

27  **III.    CONCLUSION**

28       The Court should grant Oracle's motion for partial summary judgment.

1

DATED:  October 26, 2012                    Respectfully submitted,

2

3                                           BINGHAM MCCUTCHEN LLP

4

5                                           By:  _____/s/ Geoffrey M. Howard_____

6                                                       Geoffrey M. Howard
                                                       Attorneys for Plaintiffs
7                                            Oracle USA, Inc., Oracle America, Inc.
                                                 and Oracle International Corp.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF ORACLE'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT