**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ORACLE USA, INC., *et al.*,

                Plaintiffs,

vs.

RIMINI STREET, INC., *et al.*,

                Defendants.

Case No. 2:10-cv-00106-LRH-PAL

**ORDER**

(Mot Mod Prot Ord - Dkt. #385, 388)
(Countermot Stay - Dkt. #428)
(Mot Seal - Dkt. #434)
(Mot Leave file Surreply - Dkt. #445)

Before the court is Plaintiffs' Notice of Motion and Motion to Modify Protective Order; Memorandum of Points and Authorities (Dkt. ##385, 388). The court has considered the Motion, Declaration of Kevin Papay and Support of Motion (Dkt. #386), Non-Party CedarCrestone, Inc.'s Opposition(Dkt. #425, 426), and in the Alternative, Countermotion for Stay (Dkt. #428), Plaintiffs' Reply (Dkt. ##430, 432), the Declaration of Geoffrey M. Howard in Support of Plaintiffs' Reply (Dkt. ##431, 433), Plaintiffs' Motion to Seal Plaintiffs' Reply (Dkt. #434), Non-Party CedarCrestone, Inc.'s Reply in Support of Countermotion (Dkt. #444), Non-Party CedarCrestone, Inc.'s Motion for Leave to File Surreply (Dkt. ##445, 447), Declaration of Robert T. Gill in Support of CedarCrestone, Inc.'s Surreply (Dkt. 448), and Plaintiffs' Objection to CedarCrestone, Inc.'s Motion for Leave to File Surreply (Dkt. #449).

**BACKGROUND**

**I.    The Complaint.**

The Complaint (Dkt. #1) in this action was filed January 25, 2010. An Amended Complaint (Dkt. #36) was filed April 19, 2010. The Amended Complaint seeks damages and injunctive asserting (1) claims for copyright infringement; (2) violation of the Federal Computer Fraud and Abuse Act; (3) violations of the Computer Data Access and Fraud Act; (4) violations of NRS 205.4765; (5) breach of

1 contract; (6) inducing breach of contract; (7) intentional interference with prospective economic
2 advantage; (8) negligent interference with prospective economic advantage; (9) unfair competition; (10)
3 trespass to chattels; (11) unjust enrichment/restitution; (12) unfair practices; and (13) accounting.
4 Oracle alleges that Rimini infringed its intellectual property by copying Oracle's PeopleSoft, J.D.
5 Edwards and Siebel Software application programs. Rimini is alleged to provide cut rate support for its
6 customers using these applications through unlicensed copies of the software in the form of
7 environments and by cross-use–that is, using one of the customer's licensed software to support other
8 customers. Oracle argues that Rimini's use of its software applications infringes its copyrights. Oracle
9 also claims that Rimini has infringed its Oracle Database which provides a foundation for applications.

## II.     The Dispute.

The parties recognized at the beginning of the case that disclosure and discovery would likely involve production of confidential, proprietary or private information for which special protection from public disclosure and use was required. The parties therefore submitted a Stipulated Protective Order (Dkt. #55) on May 2, 2010, which the court approved and entered as an order. In the current motion, Oracle seeks to modify the Stipulated Protective Order (Dkt. #55) to allow it to use information obtained from non-party CedarCrestone, Inc., ("CedarCrestone") in discovery proceedings in this case in an action filed in the Northern District of California. Oracle previously moved to modify the Stipulated Protective Order to use the same discovery CedarCrestone produced in this case. However, the court denied the motion because there was no pending collateral litigation against CedarCrestone which required modification of the parties' protective order at that time.

### A.     Oracle's Motion to Modify.

Oracle has now filed a complaint against CedarCrestone in the Northern District of California for copyright infringement, breach of contract and unfair competition, and seeks an order modifying the Protective Order to allow Oracle to use the discovery CedarCrestone produced in this action in the Northern District of California case. Counsel for Oracle represents that the Northern District of California CedarCrestone action was filed based entirely on its investigation and discovery of non-confidential and/or publicly available information. The complaint alleges that CedarCrestone also engaged in unauthorized copying and cross-use of Oracle's PeopleSoft applications to support

CedarCrestone's customers, and engaged in the unauthorized distribution of Oracle's tax and regulatory updates, downloaded from Oracle's website, to unlicensed customers. Discovery obtained from CedarCrestone in this action involves the same type of conduct alleged in the Northern District of California action. Oracle therefore seeks limited relief from the protective order entered in this case to allow it to use the discovery CedarCrestone produced in this case in the Northern District of California case. Specifically, Oracle requests that the court modify the stipulated protective order to allow Oracle to use (1) the DVD of computer files produced by CedarCrestone, and (2) the deposition of CedarCrestone's corporate representative, Mr. Paul Simmons, as well as the exhibits used during his deposition.

Oracle argues that the Ninth Circuit has a strong policy of favoring access to discovery materials in collateral litigation. The rationale for this policy is that facilitating preparation in other cases advances the interests of judicial economy by avoiding wasteful duplication of discovery. Citing *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1131 (9th Cir. 2003), Oracle argues the Ninth Circuit has held that requests to modify a protective order to allow use of discovery in collateral litigation "should generally be granted." In *Foltz*, the Ninth Circuit established a two-prong test to determine whether a protective order should be modified. First, the party seeking the modification "must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Id*. at 1132. Second, the court weighs "the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id*.

Oracle contends that both tests are established here. The CedarCrestone discovery obtained in this action is clearly relevant to claims Oracle has made in the collateral litigation pending in the Northern District of California against CedarCrestone. The files on the DVD CedarCrestone produced in this case have information regarding: (1) what tax and regulatory updates CedarCrestone obtained from Oracle and provided to customers; (2) which customers received which updates; (3) whether different customers received identical copies of the same updates; (4) the extent to which CedarCrestone modified the updates before distributing them to customers; and (5) the software environments used to generate the updates. The DVD files and testimony of CedarCrestone's Rule 30(b)(6) designee are relevant to Oracle's claim in the CedarCrestone Northern District of California

action that CedarCrestone has offered to provide and has provided tax and regulatory update services to customers for PeopleSoft software. It is also relevant to Oracle's claims that CedarCrestone has told prospective customer, Tucson Unified School District, that CedarCrestone's business practice is not to create a new database for each client, but to use one of the customer's licensed software to create copies to support multiple other customers. Finally, the discovery is relevant to Oracle's allegations that CedarCrestone falsely assured prospective customers, such as Tucson Unified School District, that CedarCrestone's status as an Oracle Platinum Partner allows it to provide "all services in a manner that is free of intellectual property infringement."

Oracle maintains that CedarCrestone cannot establish that its reliance interests, if any, in the protective order outweigh the efficiencies that would result from a modification of the protective order. This is especially true because the protective order is a blanket protective order. Oracle relies on a line of cases in the Ninth Circuit finding that a blanket protective order results in less reliance because the party designating materials confidential or highly confidential has not made a document-by-document showing that it was entitled to a protective order. Oracle argues that CedarCrestone employed sophisticated counsel who negotiated for modifications to the protective order in this case before agreeing to produce discovery in lieu of responding to Oracle's Motion to Compel. The stipulation Oracle, CedarCrestone and Rimini executed to obtain the discovery did not change the terms of this court's stipulated protective order or make it more restrictive. Paragraph 19 of this Court's Stipulated Protective Order specifically allows for its modification. Finally, even if CedarCrestone has some reliance interest in the secrecy of information it produced in discovery in this case, *Foltz* permits the court to place the same restrictions on use and disclosure contained in this court's Stipulated Protective Order in the collateral litigation. Oracle represents that it is prepared to work cooperatively with CedarCrestone to agree upon an appropriate protective order in the collateral Northern District of California action consistent with the procedures used in that district for entry of stipulated protective orders.

**B.   CedarCrestone's Opposition**.

CedarCrestone filed an opposition to Plaintiff's motion to modify protective order which seeks, in the alternative, a countermotion to stay enforcement of any order modifying the protective order

pending reconsideration by the district judge.  CedarCrestone claims that Oracle's renewed motion is an attempt to do an "end around" the court's prior ruling denying modification.  CedarCrestone maintains that when this court denied Oracle's initial motion to modify the protective order, it properly applied the Ninth Circuit balancing test and weighed CedarCrestone's reliance interest, which included, but was not limited to, the fact that there was no pending collateral litigation in which the discovery was relevant.  CedarCrestone claims that Oracle is using the complaint it recently filed in the Northern District of California which alleges breach of contract and copyright infringement relating to three "very finite and specific instances" as a "bootstrap" to improperly seek wholesale lifting of this court's protective order.  CedarCrestone contends that the Ninth Circuit has held that modification of a protective order should be denied where a party seeks to exploit the system and subvert the limitations of discovery in collateral proceedings, which it claims is what Oracle is doing here.

CedarCrestone disputes that the discovery it produced in this action is relevant to the collateral action.  It argues that Oracle itself concedes this by telling the court that it is seeking the materials to obtain leave to amend its Northern District of California complaint.  That action relates to breach of contract and copyright infringement allegations involving three customers.  However, Oracle is requesting access to a DVD containing 2.16 gigabytes of data produced and a full Rule 30(b)(6) deposition of CedarCrestone without showing the discovery is relevant to Oracle's two claims involving three of CedarCrestone's customers in the collateral action.  Thus, Oracle's request is overbroad.  Oracle's failure to establish relevancy is particularly problematic because CedarCrestone and Oracle are competitors to some extent and many of the materials at issue contain CedarCrestone's trade secrets.  CedarCrestone also argues that the court should deny the motion to modify the protective order because its reliance interest in agreeing to produce the materials in this action was "very significant".  CedarCrestone and Oracle entered into an additional negotiated stipulation that incorporates this court's Stipulated Protective Order.  CedarCrestone disputes that this is a case involving reliance on a blanket protective order.  Rather, the protective order in this case actually states it does not confer blanket protections.

CedarCrestone also claims that Oracle violated this court's Stipulated Protective Order after obtaining protected materials it produced in this case by using the protected information outside this

case to harm it. Specifically, CedarCrestone asserts that Oracle's general counsel began declining to comply with pre-arranged business obligations to CedarCrestone claiming that CedarCrestone's protected confidential information created a dispute between Oracle and CedarCrestone. In April 2012, Oracle suddenly indicated that it would no longer partner with CedarCrestone in marketing activities, including co-marketing activities that had been planned for months and were in the process of occurring. Oracle informed CedarCrestone that it would no longer provide support for the co-branded Fusion Fast 5 webinar series and would not provide resources for CedarCrestone's demonstration which had been scheduled for many weeks and expected to draw 400 participants. CedarCrestone claims that these actions had a negative impact on CedarCrestone's business operations and development efforts. Several other examples of Oracle actions are cited in the opposition and countermotion to support CedarCrestone's claim that Oracle violated this court's Stipulated Protective Order by using information it produced in discovery in this case to CedarCrestone's detriment.

CedarCrestone argues that the risk of duplicative discovery in the collateral suit is minimal and does not outweigh its own reliance interests in the protective order. Finally, CedarCrestone claims that the motion to modify the protective order is premature because there may not be any discovery in the Northern District of California action if the court dismisses the complaint on CedarCrestone's motion. CedarCrestone has not yet responded to the complaint, but anticipates raising statue of limitation arguments which may result in dismissal of the action.

### C.     Cedarcrestone's Countermotion to Stay Enforcement.

If the court is not inclined to deny Oracle's motion to modify the protective order, CedarCrestone requests a stay of enforcement of the order modifying the protective order until after the district judge reconsiders the order. CedarCrestone argues that it is likely to succeed on the merits of any appeal, that it will suffer irreparable injury in the absence of a stay, that other parties will not be substantially injured by a stay, and that a stay will not harm any public interests. This is especially true, where, as here, Oracle and CedarCrestone are competitors, and the discovery produced in this action involves trade secrets.

/ / /

/ / /

**D.     Oracle's Reply**.

Oracle replies that CedarCrestone has not denied it engaged in the conduct Oracle asserts constitutes copyright infringement, breach of contract and unfair competition in the collateral Northern District of California action. Nevertheless, CedarCrestone asks that the court deny the motion for protective order. Oracle filed a redacted reply and an unredacted reply under seal to meet its burden of showing why the discovery CedarCrestone produced in this case is relevant to the Northern District of California action. Oracle argues that its complaint in the collateral action provides illustrative examples of CedarCrestone's misconduct and alleges a pattern and practice of misconduct. Oracle disputes that the DVD CedarCrestone produced in discovery in this case contains CedarCrestone's trade secrets. Rather, The DVD contains Oracle's own software code. ("CedarCrestone cannot avoid liability by arguing that Oracle cannot have access to Oracle's software code.") Redacted Reply, Dkt. #430, 1:28 through 2:1. The discovery on the DVD and deposition testimony are relevant to the Northern District of California action because in that case Oracle alleges that CedarCrestone improperly used Oracle's software and made misleading statements to its customers about its practices which constitute copyright infringement, breach of contract, and unfair business practices. Information on the DVD and CedarCrestone's Rule 30(b)(6) deposition testimony support these allegations. The Northern District of California complaint against CedarCrestone outlines conduct with respect to three customers by way of example, but CedarCrestone's wrongdoing is not limited to these three customers. The discovery produced in this case relates to the same type of conduct.

Oracle disputes that its complaint against CedarCrestone is a "sham" complaint to exploit the system and subvert discovery limitations in the collateral proceeding. Oracle initially sought this discovery from CedarCrestone because Rimini defended its own similar conduct by claiming that others in the industry, including CedarCrestone, did the same thing. Oracle disputes that it is seeking wholesale modification of this court's Stipulated Protective Order. Rather, Oracle seeks to modify the protective order with respect to a single six-hour deposition and a single DVD CedarCrestone produced in this case. Oracle reiterates that district courts applying the Ninth Circuit's *Foltz* decision routinely grant modifications to protective orders for much broader and less-defined categories of materials than the two specifically identified items it seeks in this case.

7

Oracle also argues that CedarCrestone has no legitimate reliance interests and will not be prejudiced if the court grants the modification sought. The plain language of the stipulated protective order allows for later modification and specifically provides that a designating or receiving party may seek a determination of the court whether any discovery material should be subject to the terms of this protective order. Counsel for CedarCrestone negotiated a supplemental stipulation which did not alter any party's right to seek modification of the court's Stipulated Protective Order. Where, as here, the express language of the Stipulated Protective Order anticipates a modification, CedarCrestone could not reasonably have relied on a purported assumption that the order would never be modified.

Oracle also contends that CedarCrestone was not "induced" to produce discovery pursuant to the Stipulated Protective Order. Oracle claims that CedarCrestone had no valid objections to Oracle's document subpoena. CedarCrestone did not timely object to the subpoena as required by Rule 45(c)(2)(B). For whatever reason, CedarCrestone chose not to serve objections and negotiated with Oracle after the deadline for serving objections to the subpoena had passed. Oracle suggests that CedarCrestone negotiated a resolution of its discovery dispute with Oracle to avoid opposing and losing Oracle's motion to compel. Oracle disputes that it ever made assurances to CedarCrestone that it would never seek to use the discovery for any purpose other than the Rimini litigation. Rather, Oracle negotiated a resolution of its discovery dispute with CedarCrestone by pointing out that the Stipulated Protective Order in place in this case provided CedarCrestone with adequate protection.

Oracle finds it inconceivable that modification of the protective order that Oracle seeks could tangibly prejudice CedarCrestone's substantial rights. Oracle is not seeking to modify any disclosure provisions to which CedarCrestone has already agreed and itself seeks to preserve the protections against disclosure of trade secrets or other proprietary information. Oracle's requested modification will not put CedarCrestone at a competitive disadvantage because the Stipulated Protective Order prohibits any competitive use of protected discovery material.

Oracle also reiterates arguments that the discovery it seeks would otherwise need to be produced in the collateral litigation. It makes no sense to do so where CedarCrestone has already reviewed materials responsive to Oracle's subpoena and produced documents in this case. The fact that the discovery may also form a basis to amend Oracle's existing claims does not mean the evidence is not

1  currently discoverable.  Parties routinely amend their complaints based on information learned through
2  discovery, precisely because discovery can and does support multiple claims.  Oracle also disputes that
3  modifying the protective order is premature at this time.  Oracle believes that it will defeat any motion
4  asserting a statute of limitations defense.  However, even if some of Oracle's claims are held time
5  barred, the statute of limitation for copyright infringement is three years and the discovery Oracle seeks
6  is relevant to its infringement claim.

7  Oracle affirmatively represents that it has not violated the court's Stipulated Protective Order.
8  Oracle claims that when it concluded that CedarCrestone had infringed, and was continuing to infringe
9  its intellectual property Oracle sought to negotiate a resolution of the dispute with CedarCrestone.
10 Oracle claims that CedarCrestone's statements and admissions in negotiating a resolution to the
11 subpoena and motion to compel would alone justify Oracle's lawsuit and its refusal to continue joint
12 marketing activities with CedarCrestone.  CedarCrestone's own conduct caused Oracle to conclude that
13 CedarCrestone was not acting like a true partner and had not complied with its partnership agreement.

14 **E.     Oracle's Opposition to Countermotion**.

15 Finally, Oracle asks that the court deny CedarCrestone's alternative motion for stay.
16 CedarCrestone has not shown likelihood of success on the merits on appeal, or that it would suffer
17 irreparable injury in the absence of the stay, or that the parties will not be substantially injured by the
18 stay, or that the stay will not harm the public interests.  Oracle cites a number of cases for the
19 proposition that stays of magistrate judge discovery orders should be granted sparingly.

20 **F.     CedarCrestone's Motion for Leave to File Surreply**.

21 CedarCrestone asks for leave to file a surreply asserting that Oracle raised two arguments in its
22 reply brief for the first time.  Therefore, the court should either disregard new material contained in
23 Oracle's reply brief or allow CedarCrestone a reasonable opportunity to respond by surreply.
24 Cedarcrestone maintains that Oracle's reply now admits it was already investigating CedarCrestone's
25 business practices when it subpoenaed CedarCrestone's confidential information in this case.  Oracle
26 did not disclose this to CedarCrestone when it sought the documents and therefore intentionally induced
27 CedarCrestone's reliance.  Second, CedarCrestone claims that Oracle's reply now admits that when the
28 court initially denied Oracle's request to modify the protective order Oracle sought out any conduct it

9

could find to create a collateral suit. CedarCrestone argues that this is the type of discovery exploitation that warrants denial of a motion to modify the protective order. Additionally, CedarCrestone vehemently denies it engaged in any conduct that constitutes copyright infringement or that it is attempting to use the protective order as a shield from liability. Rather, Oracle is trying to use the protective order as a sword after inducing CedarCrestone, its partner, to produce documents and witnesses solely for the Rimini action which Oracle intended to use against it elsewhere. Finally, CedarCrestone argues that Oracle's arguments in its reply brief that there is no prejudice to CedarCrestone because Oracle already has the information it seeks is a reason to deny modification of the protective order.

       **G.**     **Oracle's Objection to CedarCrestone's Motion for Leave to File Surreply**.

Succinctly put, Oracle disputes that its reply raised any new issues that warrant a surreply. However, if the court grants leave to file the surreply, Oracle has more to say.

## DISCUSSION

**I.**     **Oracle's Motion to Modify Protective Order**

The parties in this action filed a proposed Stipulated Protective Order Governing Confidentiality of Documents (Dkt. #53) on May 20, 2010, which the court approved and entered as a Stipulated Protective Order (Dkt. #55) on May 21, 2010. The stipulation between Oracle and Rimini acknowledged that discovery in this action was likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and use for any purpose other than prosecuting this action would be warranted. They stipulated to a protective order acknowledging that it would not confer blanket protection on all disclosures or responses to discovery and that the protection it afforded would extend only to limited information or items entitled to be treated as confidential under applicable legal principles.

The protective order the court approved in this case allows a disclosing party to designate discovery as "Confidential Information", or "Highly Confidential-Attorneys' Eyes Only". Protective Order (Dkt. #55) ¶1. It also provides an opportunity for any non-party to designate material as "Confidential Information" or "Highly Confidential-Attorneys' Eyes Only" pursuant to the terms of this protective order, upon execution of a declaration of compliance in substantially the same form as that

attached as Exhibit "A" to the protective order. *Id*. ¶2. Any party designating discovery material as "Confidential Information" or "Highly Confidential Information" represents that an attorney for the designating party reasonably believes there is a valid basis for the designation. *Id*. "Confidential Information" is defined in paragraph 3, and "Highly Confidential Information" is defined in paragraph 4. The protective order prevents disclosure of any confidential or highly confidential information from being disclosed except as permitted by the order. *Id*. ¶5.

This court's protective order precludes a receiving party from disclosing confidential or highly confidential information to persons other than those identified in the protective order. *Id*. ¶8. It also prohibits a receiving party from using confidential or highly confidential discovery materials for any purpose other than preparation for trial and/or appeal of this case, and for any business or commercial purpose. *Id*.

The stipulated protective order contains a provision that a receiving party does not waive its right to challenge a confidentiality designation by not promptly challenging a designation unless a prompt challenge is necessary to avoid foreseeable substantial unfairness, unnecessary economic burdens, or a later significant disruption or delay of the litigation. *Id*. ¶16. It contains a detailed procedural mechanism for challenges to a confidentiality designation requiring, inter alia, that the designating party bear the burden of proof in any challenge to a designation. *Id*. The protective order specifically provides that entering into the protective order shall not constitute an admission by any designating or receiving party that any particular document, material, testimony, or thing does or does not constitute a trade secret or other confidential or highly confidential information. *Id*. ¶17. The protective order allows either party to seek modification, or relief from it by applying to the court with notice to other parties. *Id*. ¶19.

The court approved the parties' blanket protective order to facilitate the parties' discovery exchanges. The parties did not show, and the court did not find, that any specific documents were secret, confidential, proprietary, or otherwise entitled to protection from public disclosure under any applicable state or federal legal principles. The parties did not provide specific facts supported by affidavits or concrete examples to establish that a protective order was required to protect any trade secret or other confidential information pursuant to Rule 26(c) or that the disclosure would cause an

identifiable and significant harm. The stipulated protective order merely allows a party or non-party producing or disclosing documents to designate discovery materials as confidential or highly confidential without court intervention. The stipulated protective order is a blanket protective order in this sense.

CedarCrestone argues that the court's stipulated protective order in this case specifically states it does not confer blanket protection. This is true. The parties did not seek, and the court did not allow, the parties to confer blanket protection on *all* discovery materials produced in this case. Rather, the stipulated protective order allows the parties and non-parties producing discovery in this case to designate materials as confidential or highly confidential only if counsel for the designating party reasonably believes there is a valid basis for doing so. The protective order defines "Confidential Information" to include non-public information or matter related to: financial or business plans or projections; acquisition offers or expressions of interest; proposed strategic transactions or other business combinations; compensation plans; proprietary technical information and specifications; current or future business and marketing information, plans and strategies; studies or analyses by internal or outside experts; customer information, data or lists; confidential financial data or results; tax data; confidential information regarding assets and liabilities; valuation analyses; competitive analyses; confidential personnel information; personal financial information; personal information subject to protection under California or Nevada law; or other commercially or personally sensitive or proprietary information. Protective Order (Dkt. #55) ¶3. Confidential information does not include information or documents produced or disclosed that are a matter of public record or publicly available by law or otherwise. *Id*.

"Highly Confidential Information" is defined as only extremely sensitive, highly-confidential, non-public information, consisting either of trade secrets or other highly confidential documents related to current or future business plans, protocols, or strategies, the disclosure of which would likely cause competitive or business injury to the designating party. *Id*. ¶4. The protective order allows highly confidential information to be designated for attorneys' eyes only. *Id*.

In short, the stipulated protective order did not allow counsel to maintain the confidentiality of all documents and materials produced in discovery which are presumptively public in the Ninth Circuit.

1  Rather, it allowed counsel to designate specifically described categories of documents as confidential or
2  highly confidential without making the required showing that a Rule 26(c) motion for protective order
3  mandates.  These types of stipulated protective orders are now routine in federal discovery practice and
4  facilitate the parties' exchanges without expensive and time consuming motion practice.

5  In the Ninth Circuit it is well established that under the Federal Rules of Civil Procedure, in the
6  absence of a court order to the contrary, materials produced in discovery are presumptively public. *San*
7  *Jose Mercury News, Inc. v. United States District Court-Northern District*, 187 F.3d 1096, 1103 (9th Cir.
8  1999); *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).  Rule 26(c) gives the court
9  authority to override the presumption of public access for good cause shown on a motion for protective
10  order. *San Jose Mercury News, Inc.*, 187 F.3d at 1103.  A court issuing a protective order has the authority
11  to modify or lift protective orders that it has entered. *Empire Blue Cross & Blue Shield v. Janet Greeson's*
12  *A Place For Us, Inc.,* 62 F.3d 1217, 1219, (9th Cir. 1995).

13  When a party or non-party producing or disclosing materials in discovery has not met its burden
14  under Rule 26(c) that the discovery materials are entitled to protection from disclosure, a stipulated
15  protective order is inherently subject to challenge and modification. *San Jose Mercury News, Inc.*, 187 F.3d
16  at 1103; *Beckman Indus., Inc.,* 966 F.2d at 476.  In the Ninth Circuit it is well established that a party or
17  non-party who has never made a showing of good cause justifying entry of a protective order under Rule
18  26(c) may not rely solely on a stipulated protective order to "justify refusal when there is a reasonable
19  request for disclosure." *Beckman Indus., Inc.,* 966 F.2d at 476; *Olympic Refining Co. v. Carter*, 332 F.2d,
20  260, 264-66 (9th Cir.) (*cert denied*) 379, U.S. 900, 85 S. Ct. 186, 13 L. Ed. 2d 175 (1964).

21  Here, Oracle seeks to modify the stipulated protective order entered by this court to use discovery
22  materials it obtained from non-party CedarCrestone in this case in collateral litigation in the Northern
23  District of California. In *Foltz v. State Farm Mut. Auto Insurance Co.,* 331 F.3d 1122 (9th Cir. 2003), the
24  Ninth Circuit addressed the standards district courts must apply in deciding a request by a collateral litigant
25  to modify a protective order permitting access to materials produced subject to a protective order. *Foltz*
26  began by citing *Beckman* for the proposition that the Ninth Circuit strongly favors access to discovery
27  materials to meet the needs of parties engaged in collateral litigation. *Foltz*, 331 F.3d at 1131.  Allowing
28  use of discovery materials in "one litigation to facilitate preparation in other cases advances the interests

of judicial economy by avoiding the wasteful duplication of discovery." *Id*. The Ninth Circuit held that a court issuing a protective order should generally grant a request to modify a protective order to allow collateral litigants to obtain relevant material, provided reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interest in privacy. *Id*. at 1132.

However, a collateral litigant's request for modification of a protective order should not be automatically granted. *Id*. A collateral litigant must demonstrate the relevance and general discoverability of the protected discovery to the collateral proceedings. *Id*. Requiring this showing prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding. *Id*. A determination of relevance depends on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceeding. *Id*. (internal citations and quotations omitted.)

The court issuing the protective order should satisfy itself that the protected discovery is significantly relevant to the collateral litigation such that a substantial amount of duplicative discovery will be avoided by modifying the protective order. *Id*. However, the court issuing the protective order must leave the specific questions of the discoverability in the collateral litigation to the court in the collateral litigation. *Id*. The collateral litigant is not required to obtain a relevance determination from the court overseeing the collateral litigation prior to requesting modification of a protective order from the court that issued it. *Id*. This is because the court that issued the protective order is in the best position to make the relevance assessment as it is presumably familiar with the contents of the protected discovery. *Id*.

However, the court issuing the protective order makes only a rough estimate of relevance in determining whether the protective order should be modified to allow its use in collateral litigation. The court modifying a protective order "does not decide whether the collateral litigants will ultimately obtain the discovery materials." *Id*. at 1133. Rather, the court modifying a protective order that it has issued "must refrain from embroiling itself in the specific discovery disputes applicable only to the collateral suit." *Id*. The court responsible for issuing the protective order decides whether modifying the protective order will eliminate the potential for duplicative discovery. *Id*. If the protective order is modified, the collateral court controls the discovery process and decides disputes over the ultimate discoverability of the specific materials covered by the protective order. *Id*.

Before deciding to modify a protective order, the court that issued it must also weigh the countervailing reliance interests of the party opposing modification against the policy of avoiding duplicative discovery. *Id.* A blanket protective order is, by its nature, overinclusive. *Id.* Reliance on a blanket protective order will not justify a refusal to modify. *Id.* A legitimate interest in preventing public disclosure of materials produced in discovery pursuant to a protective order can be accommodated by placing the collateral litigant under the same restrictions on use and disclosure contained in the original protective order. *Id.*

Applying these principles, the court finds that Oracle has met its burden of showing that the discovery produced by CedarCrestone in this case pursuant to this court's protective order is relevant and generally discoverable in the collateral Northern District of California case. In this case, Oracle alleges that Rimini provides cut-rate support for its customers using Oracle software applications through unlicensed copies of the software and by using licensed customers' software to support other customers. Oracle alleges that Rimini's use of its software applications infringes its copyrights and asserts various other claims arising out of these allegations. Oracle sought and ultimately obtained discovery from CedarCrestone in this case because Rimini has defended this action claiming that others in the industry, including CedarCrestone, do exactly the same thing that Rimini does in supporting its customers using Oracle's software applications.

Oracle has now sued CedarCrestone in the Northern District of California action claiming that CedarCrestone has engaged in unauthorized copying and cross use of Oracle's proprietary and copyright protected software applications to support CedarCrestone's customers. Oracle also alleges CedarCrestone engaged in unauthorized distribution of its tax and regulatory software updates to support unlicensed customers. Additionally, Oracle alleges that CedarCrestone has made false and misleading statements to prospective customers, such as Tucson Unified School District, that what CedarCrestone does does not infringe Oracle's intellectual property because of CedarCrestone's status as an Oracle Platinum Partner. In this case. Oracle also alleges that Rimini has made false and misleading statements to its customers that its use of Oracle's software applications does not infringe Oracle's intellectual property.

The discovery CedarCrestone produced in this case involves what CedarCrestone does with Oracle's software. It is relevant in the Northern District of California case for the same reason that it is relevant and discoverable within the meaning of Rule 26(b)(1) in this case. The merits of what Rimini and

15

CedarCrestone actually do with Oracle's software and whether what they do infringes or constitutes any other actionable claim is, of course, not for this court to determine in the context of a discovery dispute.

The court also finds that modifying the protective order issued in this case will advance the interests of judicial economy by avoiding wasteful duplication of discovery in the Northern District of California action. Significant time and resources were devoted to reviewing the discovery for production, reviewing the discovery after production, and preparing for and taking deposition testimony of CedarCrestone's Rule 30(b)(6) designee. The discovery was conducted to establish what CedarCrestone does with Oracle's software applications and what representations it makes about what it does to its customers. This court does not presume to decide whether the assigned judge in the Northern District of California should ultimately allow Oracle to use the discovery CedarCrestone produced in this case in the Northern District of California action. It is for the court in the Northern District of California to determine the relevance and discoverability of the discovery CedarCrestone produced in this case to the case pending before it.

Finally, the court must weigh CedarCrestone's reliance interests against the policy of avoiding duplicative discovery. The protective order that was issued in this case does not confer blanket protection over all discovery materials produced in discovery in this case. It is, however, a blanket protective order in that a party or non-party designating materials as confidential or highly confidential was not required to make the good-cause showing required by Rule 26(c) with respect to any particular document. Additionally, the stipulated protective order issued in this case plainly and clearly allows a receiving party to challenge a designation. It also allows any party or non-party to seek modification of the protective order. Thus, the court finds that CedarCrestone's reliance interest on a blanket protective order allowing designation of documents as confidential and highly confidential without a required good-cause showing does not justify denying the motion to modify.

The court will therefore grant Oracle's motion to modify the protective order for the limited purpose of allowing the DVD produced in discovery and the deposition testimony of CedarCrestone's Rule 30(b)(6) designee to be used in the Northern District of California action. These discovery materials shall remain subject to the court's stipulated protective order for all other purposes. Specifically, as this court's protective order provides, these discovery materials may not be used for any business or commercial purpose. Additionally, the court will direct that Oracle meet and confer with counsel for CedarCrestone

in a good-faith effort to agree upon an appropriate protective order in the Northern District of California action consistent with the procedures used in that district for entry of a stipulated protective order.

## II.     CedarCrestone's Countermotion for Stay.

CedarCrestone's countermotion asks that this court stay enforcement of any order modifying the protective order until after the district judge reconsiders the order. The countermotion is denied. Magistrate judges in this district are authorized to exercise all powers and duties conferred or imposed upon magistrate judges by 28 U.S.C. § 636(a). LR IB 1-1(a). Magistrate judges in this district exercise general supervision of civil calendars and are automatically referred all matters involving routine case management and discovery disputes. Review and appeal of a pretrial discovery order is governed by 28 U.S.C. § 636(b)(1)(A) and LR IB 3-1 and requires a showing that the magistrate judge's ruling is clearly erroneous or contrary to law. The decision to modify a protective order this court entered is a discretionary decision. CedarCrestone is unlikely to succeed on the merits given the discretionary nature of the decision and the clearly erroneous and contrary to law standard of review. Additionally, CedarCrestone has not established that it will suffer irreparable injury in the absence of a stay because the court has ordered that the discovery materials at issue shall remain subject to the court's stipulated protective order for all other purposes and specifically, that these discovery materials shall not be used for any business or commercial purposes.

## III.    CedarCrestone's Motion for Leave to File Surreply.

The court is not satisfied that a surreply was required because of any new matters Oracle raised for the first time in its reply brief. It triggered another Oracle response and caused further delayed consideration of the motion and countermotion. However, the court took the time and effort to carefully review it. To avoid any potential dispute about whether Oracle's reply raised new matters that deprived CedarCrestone of an opportunity to respond, the motion will be granted.

For the reasons stated,

**IT IS ORDERED** that:

1. Oracle's Motion to Modify the Protective Order (Dkt. ##385, 388) is **GRANTED.**
2. CedarCrestone's Countermotion to Stay (Dkt. #428) is **DENIED**.

/ / /

/ / /

3. Oracle's Motion to Seal Reply (Dkt. #434) is **GRANTED.**

4. CedarCrestone's Motion for Leave to File Surreply (Dkt. #445) is **GRANTED**.

Dated this 6th day of December, 2012.

_____
Peggy A. Leen
United States Magistrate Judge