1
2
3
4                   **UNITED STATES DISTRICT COURT**
5                          **DISTRICT OF NEVADA**
6

7    ORACLE USA, INC., et al.,                    )
8                              Plaintiffs,         )        Case No. 2:10-cv-00106-LRH-PAL
                                                   )
9    vs.                                           )            **SEALED ORDER**
                                                   )
10   RIMINI STREET, INC., et al.,                  )        (Mot Evidentiary Sanctions - Dkt. ##302, 307)
                                                   )
11                             Defendants.         )
                                                   )
12   ─────────────────────────────────────────────

13         Before the court is Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International

14   Corporation's Motion for Evidentiary Sanctions (Dkt. ##302, 307).  The court has considered the

15   Motion; the Declaration of Kieran P. Ringgenberg in Support of Plaintiffs' Motion (Dkt. #303);

16   Oracle's Appendix of Exhibits (Dkt. ##304, 308); Oracle's Appendix of Exhibits (Dkt. ##305, 309);

17   Oracle's Appendix of Exhibits (Dkt. ##306, 310); Defendants' Opposition (Dkt. ##336, 338);

18   Defendants' Opposition to Oracle's Motion for Evidentiary Sanctions for Spoliation (Dkt. ##336, 338);

19   Plaintiffs' Reply (Dkt. ##355, 356); Declaration of Kieran Ringgenberg in Support of Reply (Dkt.

20   ##357, 358)[1]; and the arguments of counsel at a hearing conducted July 17, 2012.  Richard Pocker,

21   Kieran Ringgenberg, James Maroulis and Darien Meyer appeared on behalf of the Plaintiffs.  West

22   Allen, Trent Webb, and Robert Reckers appeared on behalf of the Defendants.

23   / / /

24   / / /

25   / / /

26   ────────────────────

27         [1]Two versions of each of these moving and responsive papers were filed; one under seal to
     protect confidential, proprietary information, and a second version redacted of confidential, proprietary
28   information which is available on the court's docket to the public.

**BACKGROUND**

**I.     The Complaint.**

The Complaint (Dkt. #1) in this action was filed January 25, 2010.  An Amended Complaint (Dkt. #36) was filed April 19, 2010.  The Amended Complaint seeks damages and injunctive relief asserting claims for: (1) copyright infringement; (2) violations of the Federal Computer Fraud and Abuse Act ("FCFAA"); (3) violations of the Computer Data Access and Fraud Act ("CDAFA"); (4) violations of NRS 205.4765; (5) breach of contract; (6) inducing breach of contract; (7) intentional interference with prospective economic advantage; (8) negligent interference with prospective economic advantage; (9) unfair competition; (10) trespass to chattels; (11) unjust enrichment/restitution; (12) unfair practices; and (13) accounting.  Oracle alleges that Rimini infringed its intellectual property by copying Oracle's PeopleSoft, J.D. Edwards and Siebel Software application programs.  Rimini is alleged to provide cut-rate support for its customers using these applications through unlicensed copies of the software in the form of environments, and by cross-use, that is, using one of the customer's licensed software to support other customers.  Oracle argues that Rimini's use of Oracle's software applications infringes its copyrights.  Oracle also claims that Rimini has infringed its Oracle Database which provides a foundation for applications.

**II.     Rimini's Answer and Counterclaim**.

Rimini filed an Answer and Counterclaim (Dkt. #30) March 29, 2010, and an Answer to Oracle's First Amended Complaint and Counterclaim (Dkt. #46) May 6, 2010.  The answer and counterclaim aver that Rimini is authorized by every one of its clients to perform work on their behalf and has delivered Oracle software and support materials only to clients who are entitled to them, and only within the scope of that client's entitlement.  The answer and counterclaim allege that Rimini is authorized to possess copies of Oracle customer-licensed software by Oracle's customers.  Rimini also claims that possessing and using copies of Oracle customer-licensed software is legal and an industry standard for third-party vendors like IBM, AT&T, Accenture, CedarCrestone, and others in the industry who work with the same Oracle customer-licensed software.  Rimini maintains that Oracle initiated this litigation as an anti-competitive tactic to interfere with Rimini's after-market support services for enterprise software applications, including software applications licensed by Oracle.  The counterclaim

accuses Oracle of engaging in anti-competitive tactics to maintain after-market support business by effectively requiring Oracle customers to either continue purchasing after-market support from Oracle, or give up critical support materials the customer has paid for and is entitled to receive. The counterclaim asserts claims for: (1) defamation, business disparagement and trade libel; (2) declaratory judgment of unenforceability of copyright misuse; and (3) unfair competition under Cal. Bus. & Prof. Code § 17200.

**III.     The Dispute**.

        **A.     Oracle's Motion for Evidentiary Sanctions.**

In the current motion, Oracle seeks an order imposing evidentiary sanctions against Defendant Rimini and its CEO Seth Ravin for spoliation for deleting a "software library" containing digital copies of Oracle's copyrighted works. Oracle claims that in January 2010, Rimini employees affirmatively and irretrievably deleted the software library well after Rimini anticipated this lawsuit. As a result, Oracle asks that the court order an adverse inference sanction. Specifically. Oracle seeks an adverse inference instruction to permit the fact-finder to infer that the contents of the deleted software library would have supported Oracle's claims, including a rebuttable presumption of specific facts that the deleted evidence likely would have proved. In addition to a general adverse inference instruction, Oracle seeks the sanction of a rebuttable presumption of two sets of facts. First, Oracle asks that the fact-finder should presume at summary judgment and trial that Rimini copied into the software library a complete copy of each of Oracle's registered works corresponding to the name of the folders that Rimini deleted in January 2010. A list of each of the registered works for which Rimini is seeking a rebuttable presumption is included in the motion at pages 29 through 30. Second, Oracle seeks an order that the fact-finder should presume at summary judgment and trial that each of the 143 PeopleSoft environments (i.e. installed copies of PeopleSoft Software) that Rimini's interrogatory responses claim were "built" were actually built using materials in the software library, and that Rimini lacks records to identify what software was used to build them.

Oracle's motion argues that Rimini anticipated this lawsuit well before the software library was deleted in January 2010. In December 2008, Rimini threatened Oracle with litigation claiming that Oracle had violated the antitrust laws and demanded that Oracle take steps to make it easier for Rimini

to copy Oracle's intellectual property.  Appendix of Exhibits (Dkt. #306), Exhibit 47, December 3, 2008, letter from counsel for Rimini, D. Goldfine to Jeffrey Ross, counsel for Oracle.  Rimini's counsel sent a follow-up letter December 19, 2008.  *Id.*, Exhibit 48, December 19, 2008, letter from Goldfine to Daniel Wall, counsel for Oracle.

Oracle's counsel responded December 23, 2008, stating Rimini's allegations of antitrust violations were baseless, and claiming that Rimini's massive downloading of Oracle's software and support materials was illegal.  Appendix of Exhibits (Dkt. #305), Exhibit 40, December 23, 2008 letter from counsel for Oracle, Daniel Wall, to counsel for Rimini. Dan Goldfine.  The letter demanded that Rimini "immediately take all necessary measures to preserve all documents, electronic records, and Support Materials that relate or bear witness to the access to and downloading of Oracle Support Materials that has occurred thus far." *Id.*  The letter also expressed concern about the library it believed Rimini had compiled for the benefit of XO Communications which included material to a product family not licensed to or in use by XO Communications. *Id.*  Oracle was concerned that Rimini was using this material to support other customers in violation of Oracle's copyrights and licenses. *Id.*

At the deposition of Douglas Zorn, Rimini's Chief Financial Officer ("CFO") who was designated as a Rule 30(b)(6) witness, Oracle learned that Rimini had set aside funds in 2009, in anticipation of this lawsuit.  Appendix of Exhibits (Dkt. #304), Exhibit 18, Excerpts of Zorn Deposition.  Oracle's motion also argues that in June 2009, Rimini disclosed to investors that Oracle had threatened litigation.  Additionally, in September 2009, Oracle claims that Rimini's CEO, Seth Ravin, resisted discovery in an action filed in the Northern District of California against SAP TN representing to the court that Oracle's true purpose in requesting the discovery from Ravin was "pre-complaint discovery" and "pre-litigation discovery" to obtain information for "use in a separate action against Rimini."  Appendix of Exhibits (Dkt. #306), Exhibit 54, non-party Seth Ravin's and non-party Rimini Street's Opposition to Oracle's Motion to Compel in Case No. 2:09-cv-1591-KJD-GWF, related to Case No. 07-cv-01658-PJH(EDL) filed in the Northern District of California.

Oracle argues that Rimini has consistently and falsely claimed that: (1) Rimini maintains Oracle software and support materials in client-specific "data silos"; (2) Rimini did not "co-mingle" such material; and (3) a centralized library of materials never existed.  Rimini made these claims in its

answer and counterclaim and Ravin reiterated these claims when he was deposed in the SAP TN case filed in the Northern District of California. Oracle maintains that discovery conducted in this case proves that these claims are false. Documents and deposition testimony establish that Rimini created and used a centralized network storage location containing Oracle software and support material that was not in customer-specific "data silos" but intermingled with material obtained from or on behalf of numerous different customers or no customer at all. Oracle claims these files were jumbled together with no obvious way of identifying the origin of each piece of software, and that Rimini employees routinely referred to it as the "software library."

Oracle obtained discovery in this case indicating that as early as mid-2006, Rimini began implementing the library by attempting to download the entire contents of PeopleSoft's Customer Connection website. Appendix (Dkt. #305), Exhibit 37. Mr. Chiu acknowledged at his June 24, 2011, deposition that this material could not possibly have been client-specific because Rimini did not have a single PeopleSoft customer at the time. Appendix of Exhibits (Dkt. 304), Exhibit 10, Excerpts of June 24, 2011, Chiu deposition; Exhibit 23, September 13, 2006, instant message between D. Chiu and S. Tahtaras. Oracle claims that discovery in this case has established that Rimini maintained a software library organized by product line rather than in client-specific "data silos." Although this was more efficient and required less storage than maintaining separate copies of software for each customer, it left Rimini with no clear record to identify the original source of the materials stored in the library. Oracle also claims that the software library was used to create environments to support customers, and that Rimini made no effort to identify the source of the original software when it built numerous environments by copying software provided by or on behalf of different clients.

In early to mid-2009, Rimini reviewed its practices concerning Oracle's intellectual property after receiving Oracle's demand letters. Appendix of Exhibits (Dkt. #305), Exhibit 32, March 22, 2009, email from B. Slepko to K. Williams regarding Environment Builds forwarded to Chiu July 17, 2009. This email inquired how much more time it would take for Rimini to build each environment directly from the client's delivered software. In June 2009, Rimini announced it was going to "lock down the internal software directory." *Id.*, Exhibit 30, June 15, 2009, email from K. Williams to the Rimini Environments Team. In September 2009, Rimini announced that the software library was not going to

be used any longer.  Appendix of Exhibits (Dkt. #304), Exhibit 16, excerpts of October 5, 2011, Krista Williams deposition.  Oracle claims that at least one Rimini employee complained about the change because it was significantly faster and more efficient to use the software library instead of using the customer's client-specific software files.  Oracle argues that the only possible reason for this policy change was because Rimini was aware it was going to be sued by Oracle for cross-using software.

Oracle claims that Rimini continues to deny the extent of the software library and how it was used.  Rimini also refuses to admit that the majority of environments built in 2006 through 2009, were built using software from the software library.  *See* Appendix of Exhibits (Dkt. #304), Exhibit 7, Rimini's Second Amended Responses to Requests for Admissions Nos. 65 - 68.  Oracle served Rimini with interrogatories seeking the contents and use of the software library, and claims that Rimini's responses do not contain any list of software or otherwise clearly state the contents of the library. Oracle moved to compel complete responses, and Rimini claimed in opposition to the motion to compel that its responses were as full and detailed as Rimini could provide.  *See* (Dkt. #167) Parties' November 4, 2011, Joint Case Management Conference Statement at 7-13.  The undersigned granted Oracle's motion to compel to the extent of requiring Rimini to designate the deposition testimony of Krista Williams as Rimini's Rule 30(b)(6) testimony on these issues accepting Rimini's representation that this was the best answer that Rimini could provide, and that she had the level of detail that Rimini had. *See* Appendix of Exhibits (Dkt. #304), excerpts of November 8, 2011, status conference.

Rimini also responded to interrogatories asking that it identify what software was used to create each of Rimini's environments.  In its Third Supplemental Responses to Interrogatories No. 20 - 22, Rimini admitted that it built some environments from the co-mingled software library, but could not identify which of them.  Rather, Rimini's answers to interrogatories list 143 separate environments, relating to more than 100 customers indicating they were built using either the client's installation media or using stored installation media.  *Id*., Exhibit 5, Rimini's Answers to Interrogatories 20 - 22. Rimini also responded that it did not have records to identify all of the environments built from the software library.  *Id*.

/ / /

Rimini's damage expert opined that the measure of Oracle's damages is the value of labor saved

by Rimini's challenged practices.  Rimini's experts offered opinions that an increase in portions of Rimini's staff would have permitted Rimini to avoid all of the challenged conduct, and the total cost of all additional labor since 2006, would be approximately 7 million dollars.  Rimini reported more than 25 million dollars in revenues in 2010.  Oracle claims that the accuracy of Rimini's 7 million dollar estimate of Oracle's damages depends, among other things, on the scope of Rimini's unlawful conduct, including the extent to which it used the software library, what the library contained, and how frequently it was used.

Oracle asserts Rimini engaged in spoliation by deleting the contents of the software library after it anticipated litigation in this case.  Rimini clearly had a duty to preserve evidence relevant to Oracle's claims no later than January 2009, when it knew that litigation was more than a possibility.  Because Rimini spoliated evidence by deleting the software library, spoliation remedies are appropriate.  Oracle maintains that Rimini's deletion of the software library was intentional and willful because Rimini was on clear notice that the content of the software library was potentially relevant to this litigation before the software library was deleted.  Oracle also argues that Rimini announced its change in policy regarding the use of the software library precisely because it predicted this lawsuit and understood that Oracle was going to sue Rimini for cross-use.  Under these circumstances, the decision to delete the software library was an intentional affirmative act directed by Ms. Williams when she knew that in order to respect Oracle's intellectual property and licensing with former customers, Oracle was required not to share software between customers.  In the Ninth Circuit, a finding of bad faith is not a prerequisite to an adverse inference sanction and simple notice of potential relevance of the destroyed materials to the litigation is sufficient.  Thus, it is no defense that Rimini deleted the software library to save storage space.

Oracle also contends that it has been substantially prejudiced by the deletion of the software library for several reasons.  First, deletion of the library eliminated unequivocal proof of its complete contents.  If the software library had not been deleted, Oracle could have examined its contents and shown that Rimini held copies of Oracle's copyrighted works.  With that evidence, there would be no dispute that Rimini copied all of those works in the library, and that the library was not segregated into customer-specific "silos."  Rimini admits that evidence of what the library contains is incomplete.

1   Oracle has been forced to piece together evidence of what the library contained from emails and other

2   documents produced in discovery.  Additionally, Rimini's deponents have consistently attempted to

3   undermine the limited evidence proving what was in the library by disputing that certain Oracle

4   software was copied into the library.

5          Second, Oracle claims it was prejudiced by the deletion because the software library would

6   likely have revealed additional information about the software's origin and use.  The deleted

7   electronically stored files should also contain metadata indicating, among other things, the dates on

8   which the files were created, modified, and accessed.  Oracle cannot establish exactly what metadata

9   associated with the software library would have shown because it was deleted.  However, Oracle

10  believes it is highly likely the metadata would have revealed additional information about the true

11  source of the software and when it was created.  Other courts have held that destroyed or altered

12  metadata supports a finding of prejudice and the award of sanctions.  The deletion of the software

13  library deleted evidence of the scope of the software library–that is, what was copied into the library,

14  and the extent to which the library was used.  Oracle is prejudiced by this deleted evidence in its

15  attempt to prove liability, and to challenge Rimini's experts' claims about damages.

16         Finally, Oracle argues that lesser sanctions would be inadequate to remedy the spoliation.

17  Oracle believes more severe sanctions could be justified, and argues that it only asks the court to

18  impose an adverse inference sanction to permit the fact finder to infer that the contents of the deleted

19  software library would have supported Oracle's claims.  The court should draft a rebuttable

20  presumption instruction that the jury be allowed to infer that the deleted information would be helpful

21  to Oracle and harmful to Rimini.  The sanctions should include rebuttable presumptions that the fact

22  finder should presume at summary judgment and trial that Rimini copied into the software library a

23  complete copy of each of Oracle's registered works corresponding to the names of the folders that

24  Rimini deleted in January 2010.  It should also contain a rebuttable presumption that the fact finder

25  should presume at summary judgment and at trial that each of the 143 PeopleSoft environments that

26  Rimini's interrogatory responses say were built were actually built using materials in the software

27  library, and that Rimini lacks records to identify what software was used to build them.

28         **B.      Rimini's Opposition**.

Rimini opposes the motion accusing Oracle of manufacturing disputes based on misrepresentations and distorted facts.  Rimini disputes that it deleted its internal software folder to exploit its absence during litigation.  Rather, Rimini personnel made a complete record of the files in the internal software folder before it was deleted.  Rimini offers to stipulate that Rimini's internal software folder did indeed include a complete copy of each of Oracle's registered works corresponding to the table included in Oracle's motion at pages 29 through 30.  This stipulation will cure any prejudice Oracle might have suffered, and any additional evidentiary sanctions are unjustified both factually and legally.

Rimini maintains that no evidence of historic usage of the software library was stored in it.  Rimini represents that it is easy to determine the types of metadata maintained by Rimini's servers and easy to verify that the servers did not maintain a log of historical file usage for the deleted software library as Oracle suggests.  Rather, the metadata contained in the deleted files was limited to discreet items such as the date the file was created, and the last date the item was modified or accessed.  This would not indicate how the files were used or for whom the files were stored, accessed, or modified.  Rimini maintains that a number of the 143 environments listed in Oracle's motion were created **after** the software folder was deleted, making it impossible for those environments to have been created using the deleted files.

Under these circumstances, it is inappropriate to give an adverse inference instruction based on speculation about what the deleted materials would have established.  Rimini argues that it merely deleted an obsolete folder of software after the contents of the folder were recorded.  Rimini offers to stipulate to the accuracy of these records.  As the contents of the deleted folder are not in dispute, the folder's deletion does not warrant the broad and highly prejudicial inferences Oracle seeks.

Rimini concedes that it anticipated potential litigation with Oracle in January 2010.  Rimini agrees that Oracle should be restored to the same position it would have been in absent the deletion of the software folder.  However, the sanctions Oracle suggests go far beyond putting Oracle in the same position it would have been in but for the deletion of the folder.

/ / /

Rimini also disputes that the software library was a jumbled collection of Oracle materials

cross-used regardless of the clients' scope of entitlement.  Rather, Rimini maintains that the software folder contained copies of PeopleSoft installation media and was organized by software releases so that Rimini personnel could easily determine which clients were entitled to the stored media.  Multiple clients are licensed by Oracle to the same software, and license rights are not tied to specific installation media.  Rimini cites testimony of numerous witnesses that have explained that Rimini implemented strict procedures to ensure that clients only receive the benefit of the software from the internal folder that the client had actually licensed from Oracle.  By following these procedures, Rimini operates within the scope of the clients' license rights.

Rimini also claims that Ms. Williams inquired whether the internal software folder should be deleted to reclaim disk space for other folders because "this repository shouldn't be needed or even used." (Dkt. #309), Oracle Exhibit 25.  Ms. Williams requested authorization from Mr. Chiu, her supervisor, who authorized the deletion.  Ms. Williams then documented the materials that were to be deleted, and submitted the request to the IT Department.  This evidence speaks for itself and demonstrates the lack of any improper motive on the part of Ms. Williams, Mr. Chiu, or any other Rimini employee.

Rimini also disputes that it has attempted to take advantage of gaps in the record created by its deletion of the software folder.  Rimini acknowledges that a former employee, Mr. Corpuz, and other Rimini deponents could not testify regarding the internal software folder.  Mr. Corpuz repeatedly stated that he could not recall, didn't know, or didn't remember the email that was shown to him at his deposition.  However, Rimini claims Mr. Corpuz did not deny the existence of the internal software folder.  Additionally, the fact that certain other Rimini deponents could not testify regarding the internal software folder does not indicate Rimini engaged in deception.  The internal software folder was principally used by Rimini's PeopleSoft environment group, and the first witness Oracle deposed from that group, Ms. Williams, testified extensively on this topic.  Rimini represented to the court during the November 8, 2011, hearing, that Ms. Williams is the most knowledgeable Rimini employee concerning the internal software folder.

/ / /

Rimini also claims that it has never kept records identifying which environments were built

10

from the internal software folder.  This lack of information is not because Rimini deleted the software library, but because Rimini never maintained such records.  Ms. Williams testified at her deposition that if she wanted to determine how an environment was built, she would look at "e-mail traffic" or other Rimini documentation.  Rimini argues that it has provided Oracle with all the information it has regarding the ultimate source of its environments, and that the undersigned ruled this was adequate in deciding Oracle's motion to compel.

Rimini also contends that Oracle's argument that the scope and extent of Rimini's use of the software library might impact the accuracy of the damages model of Rimini's damages expert is flawed.  This is because Rimini's damages model already assumes that Rimini conducted operations without an internal share folder.  Rimini has operated without such a folder for the last several years, so it was easy for Rimini's experts to understand the costs associated with environment builds made without an internal software folder.

Rimini asserts that Oracle is not prejudiced by the missing metadata from the deleted software library because the metadata did not maintain a log of historical file usage that Oracle claims.  To support a sanction for an adverse inference, the movant must present some evidence corroborating a claim that the missing evidence would have been favorable to the movant's case.  In this case, "Oracle's hypothesized uses for the metadata, however, are uncorroborated, speculative, refuted by the existing evidence, and thus, cannot support its requested inferences."  Opposition 10:9-11.

Rimini supports its arguments that the metadata would not show the origin and use of the software with the declaration of Chris Galotze.  Galotze avers that the metadata maintained for the deleted files was standard Microsoft Windows® metadata that would show only the last time a file was used, not every time a file was used.  *See* Galotze Declaration (Dkt. #307), Exhibit 25, ¶4.  The metadata would not indicate who used the software or for what purpose.  *Id*.  The metadata associated with the missing files does not include a running list of every date that the file was accessed.  *Id*.  Rather, the metadata would only contain the date the file was last accessed or modified.  *Id*.

The information that could have been gleaned from the metadata from the deleted folder would be of limited probative value, Rimini argues, because it would give no information about who was accessing the software or whether it was being used to create a particular environment.  Thus, Oracle's

11

1  arguments that the missing metadata might allow them to determine the source of Rimini's

2  environments is speculative and does not support Oracle's overly-broad adverse inference instructions.

3  The metadata kept by the Windows® Server operating system is well known.  Galotze Declaration at

4  ¶1-4.  Rimini also argues that Oracle seeks adverse inferences regarding numerous facts that cannot be

5  possibly be true.  For example, Oracle requests an adverse inference instruction that includes numerous

6  environments created after Rimini's internal share folder was deleted.  Rimini has identified all

7  environments created after Rimini discontinued use of the internal share folder, and Oracle has not

8  disputed the accuracy of this list.  Nevertheless, Oracle seeks an adverse inference instruction about the

9  numerous environments created after January 2010, when the folder was deleted which is impossible.

10  Oracle should not be given an adverse inference instruction for facts that cannot possibly be true.

11      Oracle also contends that any prejudice Oracle suffered by the deletion of the software folder

12  will be remedied by its stipulation that complete copies of the identified software were included in the

13  deleted files.  With this stipulation, Oracle is no longer required to prove what software was copied into

14  the library.  Additionally, because Rimini has produced all available discovery regarding the use of its

15  software library and the creation of its environments, Oracle has ample evidence to prove when

16  software was copied out of the library and is not prejudiced by the deletion of the folder.

17      Because any prejudice to Oracle will be fully and completely remedied by Rimini's stipulation

18  and production of other evidence, there is no need for additional adverse inference instructions.

19  Adverse inference instructions are powerful tools in a jury trial and brand a party as a bad actor.  There

20  is no evidence that Rimini acted in bad faith when it deleted the obsolete folder, and given the complete

21  lack of prejudice to Oracle and the lack of bad faith on Rimini's part, the probative value of Oracle's

22  requested instruction would be substantially outweighed by the danger of unfair prejudice to Rimini.

23  The purpose of an adverse inference instruction is to restore the prejudiced party to the same position it

24  would have been in, and Oracle's requests for adverse inference instructions seek to put it in a better

25  position by wrongfully capitalizing on the deletion to malign Rimini in front of the jury.  For all of

26  these reasons, Oracle's request for an adverse inference instruction should be denied.

27  / / /

28      **C.     Oracle's Reply**.

Oracle replies that Rimini has conceded that it maintained a centralized software library used to provide support to its PeopleSoft customers, deleted this library in January 2010, and that it reasonably anticipated this litigation at the time the library was deleted.  Oracle argues that Rimini's assertion that the software library was innocently deleted is contradicted by its representations to this court and Rimini's customers.  Because Rimini concedes that it intentionally deleted the library which knowledge it was relevant to anticipated litigation, the deletion was willful under settled Ninth Circuit law.  Moreover, Rimini has consistently misrepresented that the library never existed.  Under these circumstances, Rimini has failed to rebut overwhelming evidence of bad faith and adverse inference instructions are appropriate.

Oracle also argues that Rimini's proposed stipulation falls far short of filling the hole in the record left by Rimini's spoliation.  The proposed stipulation only touches on one of the three remedies Oracle requested concerning a rebuttable presumption regarding the contents of the library.  It does not address all the potentially relevant data that was lost, or cure any prejudice Oracle may have incurred from deletion of the folder.  Oracle claims that Rimini repeatedly and falsely claimed that the software library did not exist, and when confronted with evidence to the contrary, changed its story.  Rimini now claims, for the first time, that its personnel made a complete record of the files before deletion.  However, Rimini's response to Oracle's motion does not explain why this complete record of files was not produced or identified in response to Oracle's discovery requests which generated the motion to compel the court previously granted.  Under these circumstances, Oracle argues there is no reason to accept Rimini's claim that the deleted metadata is not important.  At a minimum, the metadata fields would have shown the dates that particular files in the software library were created, *i.e.*, copied into the library, and the last date accessed, *i.e.*, last copied out of the library.  This would be powerful evidence regarding Rimini's use of Oracle's copyrighted software because it would show whether (1) Rimini downloaded PeopleSoft software to the library before Rimini had any PeopleSoft customers, and (2) some if not many or all of specified client environments were created by copying software obtained from or for other customers.

/ / /

Oracle acknowledges that whenever a party wilfully destroys evidence, there will always be

13

some uncertainty about what the deleted evidence would have proved.  However, Rimini should not be able to capitalize on that uncertainty by claiming Oracle is only speculating that the deleted evidence would have supported Oracle's claims.  The evidence that Rimini did not destroy shows the deleted evidence would have been relevant to resolving significant factual issues, which is more than an adequate legal basis to award what Oracle characterizes as "modest relief."

Oracle emphasizes that in the Ninth Circuit, a finding of bad faith is not a prerequisite to an adverse inference instruction.  However, it argues that there is ample evidence in the record to conclude that Rimini's deletion was in bad faith because Mr. Chiu and Ms. Williams decided to delete the library when time they were fully informed about the software library, knew that its use was illegal, and understood that as long as it existed, it represented evidence that would support Oracle's anticipated litigation against Rimini.  Evidence in the record concerning Rimini's decision to cease use of the library, Rimini's statements to its customers, and Rimini's denial of the existence of the library in pleadings and depositions in this case is consistent with an awareness that the use of the software library was improper.

## DISCUSSION

## I.    Spoliation Sanctions.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending, or reasonably foreseeable litigation.  *United States v. Kitsap Physicians Sys.*, 314 F.3d 995, 101 (9th Cir. 2002) (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).  A party engages in spoliation as a matter of law only if it had some notice that the evidence was potentially relevant to the litigation before it was destroyed.  *Id.*  A party has a duty to preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence.  *Id.*; *see also In re: Napster*, 462 F.Supp.2d 1060, 1067 (N.D.Cal. 2006).  When a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.  *Id.* (citing *National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556-57 (N.D. Cal. 1987)).

/ / /

A trial court has broad discretion in determining a proper sanction for spoliation, including

1    outright dismissal of the lawsuit.  *See Chambers v. NASCO, Inc.,* 501 U.S. 32 45 (1991).  Additionally,

2    "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in

3    response to the destruction or spoliation of relevant evidence."  *Glover v. BIC Corp.,* 6 F.3d 1318, 1329

4    (9th Cir. 1993).  The court has the discretion to sanction a responsible party by instructing the jury that

5    it may infer the spoliated evidence would have been unfavorable to the responsible party.  *Id.*  A finding

6    of "bad faith" is not a prerequisite to an adverse inference instruction.  *Id.* (citing *Unigard Sec. Ins. Co.*

7    *v. Lakewood Engineering & Manufacturing Corp.,* 982 F.2d 363, 368-70 & n.2).  An adverse inference

8    instruction may be given upon a finding that the evidence was destroyed after a party was on notice of

9    the potential relevance of the evidence to the litigation.  *Id.*  The Ninth Circuit has held that a trial

10   court's "adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its

11   misconduct yet not interfere with that party's right to produce other relevant evidence."  *In re: Oracle*

12   *Corp. Securities Litigation*, 627 F.3d 376, 386 (9th Cir. 2010).  The Ninth Circuit reviews a district

13   court's exercise of its discretionary power to impose spoliation sanctions for an abuse of discretion.

14   *Id.* at 386.

15        In examining a spoliation claim, the court determines whether destruction or failure to preserve

16   evidence results in prejudice to the opposing party.  *Leon v. IDX Systems Corp.,* 464 F.3d 951, 959 (9th

17   Cir. 2006).  In determining whether a party has been prejudiced by spoliation, the court inquires

18   whether the spoliating party's destruction of evidence impairs the non-spoliating party's ability to go to

19   trial or threatens to interfere with the rightful decision of the case.  To be actionable, the spoliation of

20   evidence must damage the right of a party to bring an action.  *Ingram v. United States*, 167 F.3d 1240,

21   1246 (9th Cir. 1999) (citing *Unigard,* 982 F.2d at 371).  In *Anheuser-Busch*, the Ninth Circuit found

22   prejudice when a party's refusal to provide certain documents "forced Anheuser to rely on incomplete

23   and spotty evidence" at trial.  69 F.3d at 354.

24        In *Akiona v. United States*, the Ninth Circuit explained the twin rationales for permitting the

25   trier of fact to draw an adverse inference from the destruction of evidence relevant to a case.  The

26   evidentiary rationale for an adverse inference is based on "the common sense observation" that a party

27   who has notice that evidence is relevant to litigation and destroys the evidence is more likely to have

28   been threatened by the evidence than is a party in the same position who does not destroy evidence.

*Akiona,* 938 F.2d at 161.  There is also a deterrence rationale for permitting the trier of fact to draw an adverse inference from the destruction of evidence because an adverse inference instruction punishes a party for wrongdoing and is intended to deter others from destroying relevant evidence.  *Id.*

**II.   Analysis.**

Rimini concedes that it anticipated litigation with Oracle in January 2010, well before the internal software library was deleted.  Rimini does not dispute that the library contained information potentially relevant to this litigation.  Rather, Rimini argues that destruction of the software library is not prejudicial to Oracle because Rimini will stipulate that Rimini's internal software folder included a complete copy of each of Oracle's registered works corresponding to the table included in Oracle's motion at pages twenty-nine through thirty.  Rimini also argues that Oracle is not prejudiced by the deletion of the software library because metadata maintained for the deleted files was standard Microsoft Windows metadata that would only show the date the file was created and the last date the file was modified or accessed.  The metadata did not show historic usage of the software library such as how the files were used or for whom the files were stored, accessed, or modified.  Additionally, Rimini contends that Oracle is not prejudiced by deletion of the software library because Rimini never maintained records identifying which environments were built using the internal software folder.  Rimini cites Ms. Williams' deposition testimony that she would look at email traffic or other Rimini documentation to determine how an environment was built and represents that Rimini provided Oracle with all the information it has regarding the ultimate source of its environments.  Finally, Rimini argues Oracle is not prejudiced in its ability to analyze Rimini's damages model because Rimini has operated without the internal software library since it was deleted in January 2010.  Thus, it was easy for Rimini's experts to understand the costs associated with environment builds made without an internal software folder.

The court finds that Rimini spoliated evidence when it deleted the software library in January 2010.  The deletion was authorized by the Vice President of OnBoarding, Mr. Chiu, who is responsible for client transition to Rimini support.  On January 12, 2010, Rimini employee Krista Williams emailed Mr. Chiu that she had come across the "repository of software" that had "served as a sort of software media library."  Appendix of Exhibits (Dkt. #305) at Exhibit 25.  Ms. Williams asked Mr. Chiu if she

should "ask IT to clear it out" citing a desire to free storage space.  *Id*.  Mr. Chiu agreed, responding "that was our original network share location before we had the customer drives.  Would you mind submitting the IT request to have that deleted?"  *Id*.  On January 13, 2010, Ms. Williams sent IT specific instructions for deletion of the library.  *Id*. at Exhibit 34.  Ms. Williams' January 13, 2010, email to IT directed the deletion of directories on rsi-cisvrO.  *Id*.  The email attached an image of the folders to be deleted.  At least thirty-three folders were deleted including folders named for numerous versions of various PeopleSoft applications and related software and documentation.  *Id*.

Two months after these folders were deleted, Rimini filed an Answer and Counterclaim (Dkt. #30) on March 29, 2010.  In its counterclaim, Rimini alleged that Oracle's software and support materials were stored in client-specific "data silos," were not co-mingled, and that a co-mingled software library "never existed" at Rimini.  *See* Answer and Counterclaim (Dkt. #30) ¶¶ 4, 19, 33, 34, 48 and 40.  Rimini's answer and counterclaim specifically denied that it stockpiled a library of Oracle's intellectual property to support its present and prospective customers and claimed that such a library never existed at Rimini.  *Id*. at ¶34.

The court finds that Rimini's deletion of the software library was willful, in the sense that it was intentionally deleted well after Rimini was on notice of potential litigation with Oracle regarding Rimini's use of Oracle's copyrighted software.  Further, it was deleted when Rimini knew or reasonably should have known that evidence from the software library was potentially relevant to this litigation.  Additionally, the court finds that Oracle has been prejudiced by the deletion of the software library.  However, the court also finds that Rimini's offer to stipulate that the deleted software library included a complete copy of Oracle's copyrighted software in dispute in this litigation will remedy any prejudice stemming from a lack of proof of what copies of Oracle's copyrighted works were maintained in the library.  Rimini's offer to stipulate provides Oracle with a greater remedy than the rebuttable presumption sanction that Oracle requested in the motion.

The court also finds that deletion of the software library is prejudicial to Oracle because it has been denied evidence about the use of the library and the creation of client environments in dispute in this litigation.  Rimini's opposition to the motion represents that metadata from the deleted software library did not contain a log of historical usage, only the date created and the last date the file was

accessed or modified.  Given Rimini's initial denial that it ever maintained a software library, the court

understands Oracle's reservations about the veracity of these representations.  However, accepting them

as true does not mean that the information that did exist would not be relevant or helpful in proving

Oracle's claims.  Oracle alleges that Rimini downloaded and used Oracle's PeopleSoft software without

authorization and stored PeopleSoft software in a centralized software library to build environments for

Rimini's customers.  Oracle also claims that Rimini used installation media/software obtained for some

of Rimini's customers to build environments for other customers.  Oracle refers to this as "cross-use."

Oracle maintains that cross-use of its software violated license agreements with its customers because

each client's license rights were tied to a specific installation media.  The court agrees with Oracle that

at a minimum, the metadata from the deleted software library would have shown the dates that

particular files in the software library were created or copied into the library and the last date they were

accessed or copied out of the library.  The court is also persuaded by Oracle's arguments that this would

provide evidence of Rimini's use of Oracle's copyrighted software because it would show whether (1)

Rimini downloaded PeopleSoft software to the library before Rimini had any PeopleSoft customers,

and (2) whether at least some of specified client environments were created by copying software

obtained from or for other customers.

The court will therefore grant Oracle's motion for spoliation sanctions and order that the jury be

instructed that Rimini had a complete copy of each of Oracle's registered works identified on pages

twenty-nine through thirty of Oracle's motion in its software library.  The court will also grant Oracle's

request for an adverse inference instruction to the jury that Rimini breached its duty to preserve relevant

evidence when it deleted the software library in January 2010, knowing that Oracle was likely to file a

lawsuit against it for alleged illegal activity in copying and using Oracle's software, and knowing the

software library contained evidence potentially relevant to this lawsuit.

However, Oracle overreaches when it requests spoliation sanctions in the form of a rebuttable

presumption that each of the 143 PeopleSoft environments that Rimini's interrogatory responses claim

were built were actually built using materials in the software library and that Rimini lacks records to

identify what software was used to build them.  It is undisputed that many of these environments were

built after the 2010 deletion of the software library.  It is also undisputed that Rimini has produced

18

some records which identify what software was used to build some of the environments.  The records are "spotty and incomplete", but it is simply not true that Rimini has no records.

For the reasons stated,

**IT IS ORDERED** that:

1. Oracle's Motion for Evidentiary Sanctions (Dkt. ##302, 307) is **GRANTED in part** and **DENIED in part**.

2. The motion is **GRANTED** to the extent that Oracle shall not be required to prove, and it shall be conclusively established, that Rimini had a complete copy of Oracle's registered works in its deleted software library folder.  Specifically, the jury shall be instructed that Rimini had a complete copy of each of the following Oracle Registered Works in its software library:

   a. PeopleSoft Customer Relationship Management Version 8.8;

   b. PeopleSoft Customer Relationship Management Version 8.9;

   c. PeopleSoft Electronic Performance Management Version 8.8;

   d. PeopleSoft Electronic Performance Management Version 8.9;

   e. PeopleSoft Financials and Supply Chain Management Version 8.4 Service Pack 2;

   f. PeopleSoft Financials and Supply Chain Management Version 8.8 Service Pack 1;

   g. PeopleSoft Financials and Supply Chain Management Version 9;

   h. PeopleSoft Human Resources Management System Version 8 Service Pack 1;

   i. PeopleSoft Human Resources Management System Version 8.3 Service Pack 1;

   j. PeopleSoft Human Resources Management System Version 8.8 Service Pack 1;

   k. PeopleSoft Human Resources Management System Version 8.9;

   l. PeopleSoft Human Resources Management System Version 9.0;

   m. Each of the separately registered versions of PeopleBooks alleged in this action;

   n. People Tools Version 8.21;

   o. People Tools Version 8.22;

p.  People Tools Version 8.42;

q.  People Tools Version 8.45;

r.  People Tools Version 8.46;

s.  People Tools Version 8.47;

t.  People Tools Version 8.48; and

u.  People Tools Version 8.49.

3.  The motion is also **GRANTED** to the extent that the jury should be instructed that Rimini breached its duty to preserve relevant evidence when it deleted the software library in January 2010, knowing that Oracle was likely to file a lawsuit against it based on claims that Rimini was impermissively using Oracle's registered copyright software and knowing that the software library contained evidence potentially relevant to Oracle's anticipated lawsuit.  The jury shall be instructed that it may, but is not required, to infer that the software library contained evidence that was favorable to Oracle's claims and unfavorable to Rimini's claims and defenses in this case.

4.  The motion is **DENIED** in all other respects.

Dated this 29th day of March, 2013.

_____
Peggy A. Leen
United States Magistrate Judge

20