BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc. and Oracle International
Corp.

BINGHAM McCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>　　　　Defendants. | Case No  2:10-cv-0106-LRH-PAL<br><br>**ORACLE'S OPPOSITION TO RIMINI STREET'S MOTION FOR CLARIFICATION OF AUGUST 13, 2014 ORDER**<br><br>*PUBLIC REDACTED VERSION* |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. RIMINI'S MOTION FOR CLARIFICATION IS PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE ........................................................................................ 2

    A. Rimini's Motion Is a Meritless Motion For Reconsideration ............................... 2

    B. Ample Evidence Supports the Court's Ruling That Rimini Engaged in Massive Theft ........................................................................................................ 4

    C. The Court's Ruling That Rimini Engaged in "Massive Theft" Is Legally Correct .................................................................................................................. 6

    D. Rimini Cannot Show the Court's Order Was Clearly Erroneous or Manifestly Unjust ................................................................................................. 8

    E. Rimini Seeks a Double Standard ........................................................................... 9

III. CONCLUSION ................................................................................................................... 10

TABLE OF AUTHORITIES

Page

**Cases**

*Am. States Ins. Co. v. Dastar Corp.*,
    318 F.3d 881 (9th Cir. 2003) ...................................................................................................2

*Anderson v. Deere & Co.*,
    852 F.2d 1244 (10th Cir. 1988) ...............................................................................................2

*Brown v. Kinross Gold, U.S.A.*,
    378 F. Supp. 2d 1280 (D. Nev. 2005) ......................................................................................3

*Carroll v. Nakatani*,
    342 F.3d 934 (9th Cir. 2003) ...................................................................................................3

*Crowley v. U.S. Bankr. Court, Dist. of Nevada*,
    3:12-CV-647-RCJ-VPC, 2012 WL 6513149 (D. Nev. Dec. 12, 2012) (Hicks,
    J.)..............................................................................................................................................3

*Dowling v. United States*,
    473 U.S. 207 (1985)..................................................................................................................7

*Frasure v. United States*,
    256 F.Supp.2d 1180 (D. Nev. 2003).........................................................................................3

*Lake v. McDaniel*,
    03:03 CV 00550 LRH V, 2006 WL 980823 (D. Nev. Apr. 10, 2006) (Hicks,
    J.)..............................................................................................................................................2

*McCreary v. Aetna Life Ins. Co.*,
    3:08CV-00654-LRH-RAM, 2009 WL 3464814 (D. Nev. Oct. 27, 2009)
    (Hicks, J.).................................................................................................................................2

*Nevada Dep't of Corr. v. Cohen*,
    0307CV-00266LRH-RAM, 2009 WL 395786 (D. Nev. Feb. 17, 2009) (Hicks,
    J.)..............................................................................................................................................2

*Sch. Dist. No. 1J v. Acands, Inc.*,
    5 F.3d 1255 (9th Cir.1993) ......................................................................................................3

*Sw. Circle Grp., Inc. v. Perini Bldg. Co.*,
    2:10-CV-00481-RLH, 2010 WL 4606999 (D. Nev. Nov. 5, 2010)..........................................1

**Other Authorities**

Fed. R. Civ. P. Rule 59 ....................................................................................................................2

Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (together, "Plaintiff" or "Oracle") submit this Opposition to Rimini Street, Inc.'s ("Rimini") Motion for Clarification of August 13, 2014 Order ("Motion").

## I. INTRODUCTION

Despite its title, Rimini's Motion does not actually seek clarification of anything. Rimini does not identify anything that is ambiguous or confusing in the Court's August 13 order on Oracle's second motion for partial summary judgment ("Order") which, among other things, dismissed Rimini's defamation counterclaim. The Order is plain on its face, holding that "statements . . . that Rimini engaged in 'massive theft' of Oracle's intellectual property are true" and that "it is true that Rimini has engaged in theft of Oracle's intellectual property." Order at 29-30. Rimini's fundamental assertion is that the Court got it *wrong* in reaching these conclusions. This makes Rimini's motion one for *reconsideration*, not clarification. Yet, Rimini fails to state the standard for a reconsideration motion (or a motion for clarification), much less attempt to meet it. "Motions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Sw. Circle Grp., Inc. v. Perini Bldg. Co.*, 2:10-CV-00481-RLH, 2010 WL 4606999 (D. Nev. Nov. 5, 2010) (internal quotation marks and citations omitted). This motion is nothing but a rehash of old arguments and impermissible attempts to sway one additional time. Rimini offers no newly discovered evidence or intervening change in controlling law, and identifies no clear error or manifest injustice in the initial decision.

Rimini's complaints that Oracle did not plead a formal theft claim are irrelevant because the issue is what *Rimini* pled. Rimini alleged (and then issued press releases repeating) that Oracle defamed it by stating Rimini had engaged in "massive theft," and in so doing, Rimini asked this Court to adjudicate whether that statement was true. Oracle proved it was. The Court thoroughly considered the evidence and then rejected Rimini's legal arguments, which are the same ones it makes now. Accordingly the Court should deny this procedurally improper and substantively redundant motion.

## II. RIMINI'S MOTION FOR CLARIFICATION IS PROCEDURALLY AND SUBSTANTIVELY DEFECTIVE.

To the extent Rimini contends that it is seeking "clarification" of this Court's judgment under Rule 59(e), as opposed to reconsideration of the Court's Order, the motion is substantively and procedurally defective. Rule 59 expressly applies to *judgments of the Court*, not Court orders. Here, Rimini seeks to invoke this rule to alter an Order granting partial summary judgment to Oracle. Rule 59, however, only applies to final judgments, *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988). Absent the application of a separate rule or statute, an order granting a motion for partial summary judgment that does not dispose of all parties and claims is not a final judgment. *Id.*; *see also, e.g.*, *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 884 (9th Cir. 2003). Rimini's reliance on Rule 59(e) is therefore misplaced. Further, the portion of the Order that directs the clerk to enter judgment does not contain the "massive theft" language that Rimini purportedly seeks to clarify.[1]

When this Court has granted motions for clarification, it consistently has done so only to clarify some procedural misunderstanding or confusion in an order. *See Nevada Dep't of Corr. v. Cohen*, 0307CV-00266LRH-RAM, 2009 WL 395786, at *1 (D. Nev. Feb. 17, 2009) (Hicks, J.) (clarifying pro se movants' "confusion as to the status of the case"); *McCreary v. Aetna Life Ins. Co.*, 3:08CV-00654-LRH-RAM, 2009 WL 3464814, at *1 (D. Nev. Oct. 27, 2009) (Hicks, J.) (clarifying that order allowed *both* parties to pursue discovery, not just one party); *Lake v. McDaniel*, 03:03 CV 00550 LRH V, 2006 WL 980823, at *1 (D. Nev. Apr. 10, 2006) (Hicks, J.) (clarifying clerical error in court order that conflicted with separate order).

### A. Rimini's Motion Is a Meritless Motion For Reconsideration

Rimini's motion to "clarify" what this Court meant when it used the term "massive theft" actually is a procedurally and substantively defective motion to *reconsider* (and

---

[1] Adding to the procedural deficiencies in this motion, Rimini never cites the standard for a motion to clarify either an Order or a Judgment, and the only Federal Rule Rimini does cite is Rule 59(e), which simply addresses the *timing* for motions to clarify.

2

change) the analysis in the Court's August 13 Order.  Regarding the procedural defects, Rimini neither sets forth the standard for a motion for reconsideration, nor does Rimini make any effort to satisfy that standard.

Reconsideration may be appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993)."  A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).  It is not "an avenue to re-litigate the same issues and arguments upon which the court has already ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).  Rather, a motion for reconsideration "must set forth 'some valid reason why the court should reconsider its prior decision' and set 'forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision.' *Frasure v. United States*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003)." *Crowley v. U.S. Bankr. Court, Dist. of Nevada*, 3:12-CV-647-RCJ-VPC, 2012 WL 6513149, at *1 (D. Nev. Dec. 12, 2012) (Hicks, J.).

Here, Rimini presents no newly discovered evidence showing that Oracle's statements were false.  Nor does Rimini argue that an intervening change in controlling law has occurred.  Further, Rimini has failed to show that the Court's ruling on Oracle's truth defense was "manifestly unjust" or that the Court committed "clear error" in making it. *See id.*  The Court held that Oracle's statements, that Rimini engaged in "massive theft" of Oracle's intellectual property, were not defamatory as a matter of law because they were true.  Order at 29.  While Rimini does not explicitly state that the Court's holding was clearly erroneous or manifestly unjust, that is the gravamen of its Motion. *See, e.g.*, Mot. at 4 ("the Court's supposed finding of 'theft' of intellectual property"), 5 ("Any representation by Oracle that the Court had made a finding of intentional theft, therefore, is not supported by the evidence and misconstrues the Court's August 13 Order.").  But, the Court carefully considered significant evidence of Rimini's intent and conduct, as well as the parties' arguments about the legal and factual

3

significance of that evidence. It then concluded that Oracle truthfully stated that "Rimini engaged in 'massive theft' of Oracle's intellectual property." Order at 29. Rimini provides no reason why, after engaging in the thorough analysis that it did, the Court should reverse course now and deem its ruling clearly erroneous or manifestly unjust. Below, Oracle briefly describes that evidence, the parties' arguments, and the Court's ruling, and explains why Rimini fails the reconsideration standard.

        **B.**    **Ample Evidence Supports the Court's Ruling That Rimini Engaged in Massive Theft.**

The record evidence in Oracle's two motions for summary judgment supports this Court's holding that Rimini engaged in "massive theft" of Oracle's intellectual property. Although Rimini's Motion directly concerns the Order on Oracle's second motion, that Order relies, in part, on the Court's ruling on Oracle's *first* motion for partial summary judgment. *See* Order at 29 ("Rimini engaged in theft of Oracle's intellectual property by repeatedly making multiple copies of Oracle's copyrighted Enterprise Software programs to support its software support service clients beginning in 2005."). In that first motion, Oracle set out in detail how Rimini intentionally designed its business to rely on massive, unauthorized copying and cross-use of Oracle enterprise software. *See* Dkt. 237 ("First MSJ"). For example:

- Rimini uses its local, unlicensed copies of Oracle's software because local copies allow Rimini to provide faster and cheaper customer support – which in turn makes Rimini's services more appealing to customers. First MSJ at 5-6. Rimini intentionally set up its business model to rely on these cost-savings, which are only possible through theft of Oracle's intellectual property. *Id.*

- Rimini instructed its customers to ask Oracle to ship copies of software on the customer's behalf to Rimini's address, and to tell Oracle that Rimini's address was the customer's "backup location." *Id*. at 6-7. This orchestrated deception, which Rimini designed to obtain copies of Oracle software to then copy *further*, was a standard step in Rimini's business practices. *Id.*

- For ease of presentation and analysis, the First MSJ focused on a subset of Rimini's unlawful copies – twelve environments (full copies of Oracle's copyrighted software), which Rimini admitted it had made, and which it could not have created unintentionally or accidentally. *Id.* at 15. Oracle also included evidence of how Rimini used four of those environments to create fixes and updates, which meant that Rimini also made additional copies of those environments as part of the development

4

1  process. *Id*. at 16.  Rimini provided those fixes and updates to many different customers, conduct which exemplifies the "cross-use" that allows Rimini to provide cheap support for its customers. *Id.*

The twelve environments were associated with four Rimini customers.  Oracle also moved on Rimini's express license defense as to those copies, as well as implied license and right to use.  The Court held that Oracle had established a *prima facie* case of copyright infringement as to all four customers.  The Court granted summary judgment against Rimini on its express and implied license and right to use defenses as to two of the four customers.  Dkt. 474 at 27-28.

Oracle's second motion for partial summary judgment addressed Rimini's infringement of Oracle Database software, its express license defense as to that software, its statute of limitations and laches defenses as to all claims, and its counterclaims for defamation and unfair competition.  *See* Dkt. 405 ("Second MSJ").  As part of that motion, Oracle set out in detail evidence showing how Rimini intentionally copied and used Oracle Database to support its customers, despite knowing it had no license to do so.  For example:

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Second MSJ at 13-15.

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- Although Rimini claimed in this action that Oracle's free Developer License permitted Rimini to make copies of and use Oracle Database to support Rimini customers, it knew better. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5

1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Second MSJ at 14-15.

2 The Court carefully reviewed this evidence in its Order. It concluded that Oracle made out a *prima facie* case of copyright infringement regarding Rimini's copying of Oracle Database, Order at 6, and that Rimini's express license defense had no basis. Order at 15-16.

Rimini wrongly claims this Court did not consider and rule upon the willfulness of Rimini's conduct. As set out in detail in Oracle's summary judgment motions and statements of undisputed facts, Rimini consciously based its business on systematically exploiting Oracle's intellectual property, including by making hundreds of copies of Oracle's software and using those copies to support Rimini's customers. *See, e.g.*, summary of evidence at pp. 4-6, above; *see also, e.g.*, Dkt. 280, 451. This was no accident: Rimini's entire enterprise relies on free-riding off Oracle's intellectual property. As the Court noted, one Rimini employee wrote that Rimini was "making a crap load of money" from Oracle's software, all the while knowing full well it had no right to use that software. Dkt. 476 at 12. The fact that Rimini lied about its conduct in its Answer and other pleadings further shows that Rimini knew full well it broke the rules. In its Answer, it denied that it maintained a library of Oracle's software. Dkt. 153 at 2:21-3:3. Prior to the Second MSJ Order, the Court also found Rimini's assertion false in an Order sanctioning Rimini for the intentional destruction of that same library, two months before it filed its Answer denying its existence. Dkt. 466 at 16:24-18:16 (finding that Rimini maintained a "software library" containing co-mingled customer software).

All of this evidence establishes that Rimini misappropriated vast quantities of Oracle's intellectual property, and this misappropriation ultimately led Oracle to state that Rimini had engaged in "massive theft." When Rimini chose to bring a defamation counterclaim against Oracle, Rimini asked this Court to decide whether it was fair for Oracle to say that Rimini had engaged in "massive theft." On August 13, this Court decided that very issue, and Rimini simply does not like the conclusion the Court reached.

### C. The Court's Ruling That Rimini Engaged in "Massive Theft" Is Legally Correct.

While essentially conceding that there is ample record evidence showing that it

6

misappropriated Oracle's intellectual property, Rimini raises once again the legal argument that it is defamatory to describe its large-scale misappropriation of intellectual property as "massive theft." In support of this motion for clarification (or more properly, reconsideration), Rimini cites *the same case that it cited in the summary judgment briefing, – Dowling v. United States*, 473 U.S. 207, 217 (1985). *Compare* Dkt. 436 (Rimini's Opposition to Oracle's Second Motion for Partial Summary Judgment) at 26 *with* Mot. at 6-7. At summary judgment, Rimini argued, just as it does now, that Oracle's statements could not be true because Oracle did not bring a theft action. *Compare* Second MSJ Opp. at 26 ("Oracle cannot prove that Rimini engaged in 'massive theft' because Oracle did not bring against Rimini an action for, *e.g.*, conversion or misappropriation") *with* Mot. at 3 ("Theft has not been pled by Oracle"), 5 ("Oracle has not even pled a cause of action for theft"). Rimini offers nothing new, just a retread of the same arguments the Court already properly rejected.

The arguments Rimini now offers are the same ones Oracle rebutted in its summary judgment reply. Oracle countered Rimini's "semantic distinction" argument by showing that the truth defense "requires only that the statement be 'substantially true'" and noting that "imprecise use of legal terminology does not qualify as defamation." Dkt. 450 (Oracle's Reply Brief in Support of Its Motion for Partial Summary Judgment) at 17-18 (internal citations omitted). Oracle wrote, "[W]hether a copyright infringer like Rimini meets the strict legal definition of a 'thief' makes no difference. Because the 'gist or sting' of both terms is the same, it is still substantially true that Rimini engaged in "massive theft" of Oracle's intellectual property." *Id*. at 18.

In its Order, the Court first reasoned that because it had already held that Oracle had proved Rimini's copyright infringement, Oracle's statements that Rimini had engaged in "massive theft" were true. Order at 29. The Court then squarely considered -- and rejected, based on Supreme Court and Ninth Circuit authority -- Rimini's argument that copyright infringement and theft are legally distinct and not equivalent:

> Although Rimini argues in its opposition that theft and copyright
>    infringement are different, the court finds that the semantic

7

> distinction between copyright infringement and theft does not matter in this instance . . . courts consistently hold that the imprecise use of legal terminology does not qualify as defamation when the terminology provides the gist of the actual claims. [T]here is no meaningful distinction between 'theft' and 'copyright infringement.' One of the leading Ninth Circuit copyright infringement cases refers to the copyright infringement defendant as an "ordinary thief." *Polar Bear*, 384 F.3d at 709. Further, the Supreme Court has stated that "deliberate unlawful copying is no less an unlawful taking of property than garden variety theft." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Inc.*, 545 U.S. 913, 961 (2005). Therefore, because the court has found that Rimini has engaged in copyright infringement, it is true that Rimini has engaged in theft of Oracle's intellectual property. Therefore, the court shall grant Oracle's motion as to Rimini's defamation counterclaim.

Order at 29-30.  Thus, the Court explicitly addressed, and rejected as unconvincing, Rimini's argument about the distinctions between copyright infringement and theft.  *Id.* Rimini cannot, on a motion for reconsideration, raise the same argument again.

### D. Rimini Cannot Show the Court's Order Was Clearly Erroneous or Manifestly Unjust

In the face of this evidence and the Court's careful application of the facts to the law, Rimini cannot show that the Order's ruling that "it is true that Rimini has engaged in theft of Oracle's intellectual property" requires reconsideration as clearly erroneous or manifestly unjust.  Rimini argues that its customers may react negatively to the finding that Oracle's statements about Rimini's "massive theft" were true.  But such an effect is not unjust, much less manifestly so.  The entire basis for Rimini's defamation counterclaim was its assertion that a purportedly false statement that it had engaged in "massive theft" *had damaged* its reputation with customers.  Rimini sought to improve its reputation with customers by bringing that counterclaim and repeatedly stating publicly that the "massive theft" statement was false.  Rimini hoped to obtain a ruling from this Court that Oracle's statement was false, which Rimini could then use to bolster its reputation further, which is why Rimini asked this Court to decide whether or not it was defamatory to say that it had engaged in "massive theft."  The reputational damage about which Rimini now complains is not the result of some slip of the pen in the Court's decision; rather, it plainly is the result of the fact that its customers are justifiably concerned

about doing business with a company that engaged in "massive theft" of intellectual property.

### E. Rimini Seeks a Double Standard

Finally, it is worth pointing out the irony in Rimini's complaints that Oracle is attempting to smear Rimini by commenting on the Court's ruling. *Rimini* repeatedly has attempted to litigate this case in the press. For example, when Rimini first filed its defamation counterclaim against Oracle, it issued a press release in which it "vehemently denie[d] Oracle's accusations" and described its business processes in this way:

- "Rimini Street only delivers Oracle software and support materials to each client who is entitled to receive such materials";
- "Rimini Street uses separate data "silos" for each client and has policies against co-mingling data"; and
- "Rimini Street is authorized by its clients to possess and use copies of their Oracle licensed products to provide services to them, just like IBM, AT&T, Accenture, CedarCrestone and virtually every other hosting service provider working with copies of their client's licensed products."

Declaration of Zachary Hill in Support of Oracle's Opposition to Rimini's Motion for Clarification, Ex. A (March 29, 2010 Rimini Press Release, available at http://www.riministreet.com/news/press-releases/03292010). The Court has now held, on the basis of undisputed evidence, that these statements are untrue, by ruling that Rimini cross-uses customers' Oracle software inappropriately to support other customers. Dkt. 474 at 13:7-10; 476 at 14:18-26. It is also false that Rimini uses separate data silos and does not co-mingle customer data. Dkt. 466 at 16:24-18:16. Finally, the Court has held that Oracle's facilities restrictions in at least some customers' licenses prevent Rimini from possessing and using copies of customers' Oracle software. Dkt. 474 at 12:12-13:6.

This press release is but one example of how Rimini uses this litigation to attack Oracle in the press–in this instance, by way of statements now proven false. Rimini has acquired hundreds of customers from Oracle on the basis of these false statements. And yet Rimini complains in its Motion that Oracle now misleadingly discusses the litigation by quoting the Court's Order holding that Oracle did not defame Rimini. This would be, to put it mildly, a

9

1  double standard that the Court should not indulge.

2  **III.   CONCLUSION**

3        Rimini's Motion seeks reconsideration under the guise of clarification, but neither

4  is warranted.  The Court should deny the Motion.

5

6  DATED:   September 5, 2014

                                    BINGHAM MCCUTCHEN LLP

                                    By:       /s/ Geoffrey M. Howard

                                              Geoffrey M. Howard
                             Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                             America, Inc. and Oracle International Corp.

ORACLE'S OPPOSITION TO RIMINI STREET'S MOTION FOR CLARIFICATION OF AUGUST 13, 2014 ORDER