1  BOIES, SCHILLER & FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
2  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
3  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
4  rpocker@bsfllp.com

5  BOIES, SCHILLER & FLEXNER LLP
   STEVEN C. HOLTZMAN (*pro hac vice*)
6  KIERAN P. RINGGENBERG (*pro hac vice*)
   1999 Harrison Street, Suite 900
7  Oakland, CA 94612
   Telephone: (510) 874-1000
8  Facsimile: (510) 874-1460
   sholtzman@bsfllp.com
9  kringgenberg@bsfllp.com

10
   Attorneys for Plaintiffs
11 Oracle USA, Inc., Oracle America, Inc., and
   Oracle International Corp.

   MORGAN, LEWIS & BOCKIUS LLP
   THOMAS S. HIXSON (*pro hac vice*)
   KRISTEN A. PALUMBO (*pro hac vice*)
   One Market, Spear Street Tower
   San Francisco, CA  94105
   Telephone:  415.442.1000
   Facsimile:  415.442.1001
   thomas.hixson@morganlewis.com
   kristen.palumbo@morganlewis.com

   DORIAN DALEY (*pro hac vice*)
   DEBORAH K. MILLER (*pro hac vice*)
   JAMES C. MAROULIS (*pro hac vice*)
   ORACLE CORPORATION
   500 Oracle Parkway, M/S 5op7
   Redwood City, CA 94070
   Telephone:  650.506.4846
   Facsimile:  650.506.7114
   dorian.daley@oracle.com
   deborah.miller@oracle.com
   jim.maroulis@oracle.com

12

13                     UNITED STATES DISTRICT COURT

14                         DISTRICT OF NEVADA

15

16  ORACLE USA, INC., a Colorado corporation;      Case No. 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
17  corporation; and ORACLE INTERNATIONAL          **ORACLE'S OPPOSITION TO**
    CORPORATION, a California corporation,         **DEFENDANTS' MOTION TO**
18                                                 **MODIFY THE PROTECTIVE**
                    Plaintiffs,                    **ORDER**
19
         v.                                        Public Redacted Version
20
    RIMINI STREET, INC., a Nevada corporation;
21  AND SETH RAVIN, an individual,

22                  Defendants.

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    INTRODUCTION ................................................................................. 1

4    II.    FACTUAL BACKGROUND ................................................................. 3

           A.    Mr. Ravin's History of Infringement and Competitive Harm to Oracle ............... 3

5          B.    Mr. Ravin's and Rimini's History of Deceit, Evasion, and Concealment ........... 4

6          C.    The Stipulated Protective Order in This Case ........................................ 5

           D.    Oracle's Exhibit List ................................................................... 5

7
     III.   LEGAL STANDARD ........................................................................... 7

8    IV.    THE COURT SHOULD DENY RIMINI'S REQUEST TO MODIFY THE
            PROTECTIVE ORDER .................................................................... 8

9
           A.    Rimini and Mr. Ravin Will Suffer No Prejudice From Proceeding Under
10                The Existing Protective Order .......................................................... 9

11         B.    Modifying the Protective Order Would Improperly Cause Oracle To
                 Suffer Competitive Harm ............................................................ 11

12         C.    There Is No Change In Circumstance That Justifies Modifying The
                 Protective Order ...................................................................... 12

13         D.    Rimini's Alternative Request Should Also Be Denied ....................... 15

14   V.     CONCLUSION ................................................................................ 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acer Am. Corp. v. Tech. Properties*,
No. C08-00877, 2009 WL 1363551, (N.D. Cal. May 14, 2009) .................................. 8, 11, 12

*American Telephone & Telegraph Co. v. Grady*,
594 F.2d 594 (7th Cir. 1978) ............................................................................................. 7

*Bailey v. Dart Container Corp.*,
980 F. Supp. 560 (D. Mass. 1997) .................................................................................... 8

*Bayer AG & Miles, Inc. v. Barr Labs., Inc.*,
162 F.R.D. 456 (S.D.N.Y. 1995) ................................................................................ 10, 11

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) ............................................................................ 1, 7, 8, 12

*CytoSport, Inc. v. Vital Pharm., Inc.*,
No. 08-2632, 2010 WL 1904840 (E.D. Cal. May 10, 2010) ......................................... 1, 7, 12

*Gaymar Indus., Inc. v. Cloud Nine, LLC*,
No. 1:06 CV 62, 2007 WL 582948 (D. Utah Feb. 20, 2007) ............................................ 7, 12

*Glasson Aerospace Science, Inc. v. RCO Engineering, Inc.*,
2009 WL 1384179 (E.D. Mich. 2009) ............................................................................. 12

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
593 F.Supp.2d 298 (D. Mass. 2009) ................................................................................. 9

*Intel Corp. v. VIA Techs., Inc.*,
198 F.R.D. 525 (N.D. Cal. 2000) ...................................................................................... 7

*Jochims v. Isuzu Motors, Ltd.*,
145 F.R.D. 499 (S.D. Iowa 1992) ............................................................................. 7, 8, 13

*Longman v. Food Lion, Inc.*,
186 F.R.D. 331 (M.D.N.C. 1999) .................................................................................... 13

*Medtronic Sofamor Danek, Inc. v. Michelson*,
No. 01-2373-GV, 2002 WL 33003691 (W.D. Tenn. Jan. 30, 2002) ...................................... 8

*MGP Ingredients, Inc. v. Mars, Inc.*,
245 F.R.D. 497 (D. Kan. 2007) ........................................................................................ 8

*Oracle USA, Inc., et al. v. SAP AG, et al.*,
No. 07-cv-01658 (N.D. Cal. Sept. 13, 2010) ..................................................................... 3

ii

*Oracle USA, Inc. v. Rimini St., Inc.*,
    6 F.Supp.3d 1086, 1108 (D. Nev. 2014) ........................................................... 3, 4, 5

*Oracle USA, Inc. v. Rimini St., Inc.*,
    6 F.Supp.3d 1086, 1132 (D. Nev. 2014) ..................................................................... 4

*Oracle USA, Inc. v. SAP AG*,
    No. 2:09-CV-01591-KJD-GWF (D. Nev. Jan. 12, 2010) ........................................... 4

*Peoples v. Aldine Indep. Sch. Dist.*,
    No. 06-2818, 2008 WL 2571900 (S.D. Tex. June 19, 2008) ................................... 13

*Petrovic v. City of Chicago*,
    No. 06–CV–6111, 2007 WL 2410336 (N.D. Ill. Aug. 21, 2007) .............................. 9

*Pintos v. Pac. Creditors Ass'n*,
    565 F.3d 1106, 1115 n.4 (9th Cir. 2009) ............................................................... 14

*Phillip M. Adams & Assocs. v. Dell, Inc.*,
    No. 05-CV-64 TS, 2006 U.S. Dist. LEXIS 39173 (D. Utah June 12, 2006) ............ 9

*Public Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988) ................................................................................. 14

*Romary Assoc., Inc. v. Kibbi, LLC*,
    2012 WL 32969 (N.D. Ill. Jan. 6, 2012) ........................................................... 13, 14

*RPA Int'l Pty Ltd. v. Compact Int'l, Inc.*,
    No. CIV. 06CV1147WQHAJB, 2007 WL 4105725 (S.D. Cal. Nov. 16, 2007) ................... 12

*Schlafly v. Public Key Partners, et al.*,
    No. C-94 20512 SW (PVT) (N.D. Cal. July 18, 1995) (attached as Hill Ex. C) .................. 12

*Selling Source, LLC v. Red River Ventures, LLC*,
    2:09-CV-01491-JCM, 2011 WL 1630338 (D. Nev. Apr. 29, 2011) ......................... 14

*Shared Memory Graphics, LLC v. Apple, Inc.*,
    2010 U.S. Dist. LEXIS 125184 (N.D. Cal. Nov. 12, 2010) ................................... 12

*United States v. Lawson*,
    No. 08-21-KSF, 2009 WL 2136818 (E.D. Ky. July 16, 2009) ................................. 9

*United States v. TomorrowNow, Inc.*,
    No. 11-cr-00642 (N.D. Cal. Sept. 16, 2012) ........................................................... 3

*Viskase Corp. v. W.R. Grace & Co.*,
    No. 90 C 7515, 1992 WL 13679 (N.D. Ill. Jan. 24, 1992)........................................ 7

*Zenith v. Matsushita*,
    529 F.Supp. 866 (E.D. Pa. 1981) ......................................................................... 13

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

1   **I.      INTRODUCTION**

2          Defendants Rimini Street and Seth Ravin (collectively "Rimini") present no grounds,

3   much less the required good cause, to justify a one-sided modification to the stipulated protective

4   order so that Mr. Ravin – Rimini's CEO – can view Oracle's "Highly Confidential – Attorneys'

5   Eyes Only" documents.  They have no good cause because they are not "actually prejudiced" by

6   the current protective order.  *CytoSport, Inc. v. Vital Pharm., Inc.*, No. 08-2632, 2010 WL

7   1904840, at *2 (E.D. Cal. May 10, 2010) (citing *Brown Bag Software v. Symantec Corp.*, 960

8   F.2d 1465, 1470 (9th Cir. 1992)).  Rimini and Mr. Ravin have in-house counsel, a stable of

9   outside counsel, and multiple outside experts who can view *all* materials Oracle and third parties

10  have produced in discovery and who are advocating for Rimini and Mr. Ravin.  Indeed, the

11  protective order was negotiated and stipulated to by Oracle and Defendants at the beginning of

12  the case when Mr. Ravin was already CEO of Rimini, and Rimini and Mr. Ravin have litigated

13  with that protective order in place through years of discovery, two motions for summary

14  judgment, and months of pretrial preparations without issue.

15         Rimini's motion does not point to any specific document that Mr. Ravin must

16  supposedly review to help with the defense.  Small wonder.  The solid majority of documents

17  on Oracle's trial exhibit list are either internal Rimini documents or documents that are not

18  designated "Highly Confidential – Attorneys' Eyes Only," all of which Mr. Ravin is free to see.

19  The documents that have been designated "Highly Confidential – Attorneys' Eyes Only"

20  largely include license agreements between Oracle (or predecessors) and particular customers

21  that contain non-disclosure provisions, highly confidential internal Oracle financial data, and

22  other extremely sensitive internal Oracle information.  Rimini provides no explanation why Mr.

23  Ravin needs to see these materials, which he would not have seen in the normal course of his

24  business, to prepare for trial.  He certainly has what he needs to defend against allegations of his

25  personal wrongdoing:  the evidence of his involvement comes from Mr. Ravin and Rimini's

26  own files, not Oracle's.  Proceeding under the current protective order will thus not prejudice

27  his or Rimini's ability to present a defense at trial.

28         Further, Mr. Ravin's desire to see  "Highly Confidential – Attorneys' Eyes Only"

1  information from Oracle and third parties does not outweigh the overwhelming interest of the

2  producing parties in protecting themselves from the risk of serious competitive harm that would

3  result if Mr. Ravin were allowed to view the documents at issue.  Mr. Ravin is the self-

4  described founder and inventor of the business model of two companies that have infringed

5  Oracle's copyrights and illegally accessed its information, resulting in hundreds of millions of

6  dollars in damage to Oracle.  Mr. Ravin's first company, TomorrowNow, pled guilty to

7  criminal copyright infringement and computer fraud from its illegal acquisition and use of

8  Oracle intellectual property to steal Oracle's customers.  This Court has already entered

9  summary judgment – twice – against Mr. Ravin's second company, Rimini Street, for copyright

10  infringement in this case.  And throughout both litigations, Mr. Ravin has shown a complete

11  disrespect for the legal process and a lack of trustworthiness.  He has been held in contempt of

12  court for attempting to evade discovery; he has made false statements to the Court; and his

13  company has been sanctioned for destroying potentially damaging evidence.  The Court has

14  even noted that it understands why Oracle might have "reservations about the veracity" of

15  Rimini's representations in this litigation.  Dkt. 466 at 18:2.  The documents that Oracle has

16  designated Highly Confidential include licensing agreements, customer lists, pricing

17  information, and intellectual property—a treasure trove of information Mr. Ravin could use to

18  cause even more competitive harm to Oracle.  They must be protected from Mr. Ravin.

19        The current protective order was fair when Rimini voluntarily entered into and it

20  remains fair now.  It recognizes the parties' relationship as direct competitors, allows both

21  parties' employees to review materials that were designated by the other party as

22  "Confidential," allows both parties' in-house counsel, outside counsel, and experts to review all

23  materials, and prevents both parties' CEOs and other employees from viewing materials

24  designated by the opposing party or third parties as "Highly Confidential – Attorneys' Eyes

25  Only."  Both parties must proceed to trial under these terms, and there is no good cause now to

26  give Mr. Ravin a special exception at Oracle's expense.

27

28

## II.     FACTUAL BACKGROUND

### A.     Mr. Ravin's History of Infringement and Competitive Harm to Oracle

Rimini's founder and CEO, Seth Ravin, was formerly President of TomorrowNow, which – like Rimini – competed directly against Oracle by offering support to companies that licensed Oracle software. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ Ex. A (Ravin Dep.) at 64:20-65:2.  Oracle sued TomorrowNow and its parent company SAP, and both have since conceded liability on Oracle's claim of copyright infringement, including infringement occurring during the time Mr. Ravin managed TomorrowNow.  Trial Stip. and Order Regarding Liability, *Oracle USA, Inc., et al. v. SAP AG, et al.*, No. 07-cv-01658 (N.D. Cal. Sept. 13, 2010), Dkt. 866, at ¶ 1 (stipulating to "all liability on all claims").  In addition, TomorrowNow pled guilty to criminal copyright infringement and computer fraud.  Judgment, *United States v. TomorrowNow, Inc.*, No. 11-cr-00642 (N.D. Cal. Sept. 16, 2012), Dkts. 1, 14.  TomorrowNow's theft of Oracle's intellectual property caused Oracle hundreds of millions of dollars in damage.  Amended Judgment, *Oracle USA, Inc., et al. v. SAP AG, et al.*, No. 07-cv-01658 (N.D. Cal. Nov. 14, 2014), Dkt. 1251.

████████████████████████████████████████████████████

██████████████████████████ Hill Decl., Ex. A (Ravin Dep.) at 13:4-20. █████████

████████████████████████████████████████████████████

███████████████████ Dkt. 523 (Pretrial Order) at Undis. Facts ¶¶ 9-12; *see also* Hill Decl., Ex. A (Ravin Dep.) at 208:13-16 (Ravin acknowledging the same). ███████████████████

█████████████████████████████████████████████████ Hill Decl., Ex. A (Ravin Dep.) at 13:4-20. ████████████████████████████████

███████████████████████████████████████████ Hill Decl., Exs. A (Ravin Dep.) at 255:16-256:4 ██████████████████████████, 468:6-468:19 █████████████

██████████████████████████████████ ; B ████████████████████████████

████████████████ .  On February 13, 2014, and again on August 13, 2014, this Court entered summary judgment against Rimini Street for copyright infringement.  *Oracle USA, Inc. v.*

1    *Rimini St., Inc.*, 6 F.Supp.3d 1086, 1108 (D. Nev. 2014); *Oracle USA, Inc. v. Rimini St., Inc.*, 6

2    F.Supp.3d 1108, 1132 (D. Nev. 2014).

3         **B.     Mr. Ravin's and Rimini's History of Deceit, Evasion, and Concealment**

4         Oracle first dealt with Mr. Ravin and Rimini during Oracle's lawsuit against Mr.

5    Ravin's former company, TomorrowNow.  Oracle subpoenaed Mr. Ravin and Rimini as third

6    parties during discovery in that earlier lawsuit, but they refused to comply, presumably so they

7    could avoid or delay discovery of their theft of Oracle's intellectual property for as long as

8    possible.  *Oracle USA, Inc. v. SAP AG*, No. 2:09-CV-01591-KJD-GWF (D. Nev. Jan. 12,

9    2010), Dkt. 49.  Only after this Court held Mr. Ravin and Rimini in contempt of court for this

10   attempt to evade discovery and conceal evidence of their conduct did Mr. Ravin agree to give

11   testimony.  *Id.* at 2.

12        Rimini nonetheless continued to conceal the nature of its business.  In its June 16, 2011

13   answer to Oracle's complaint filed with the Court, Rimini Street claimed that "each client is

14   assigned a separate data 'silo' where Oracle Software and Support Materials for only that client

15   are maintained."  Dkt. 153, ¶ 4.  Rimini knew this was false.  In its February 13, 2014 ruling

16   holding that Rimini Street had infringed Oracle's copyrights, the Court exposed this deceit,

17   finding that one customer's "development environments were used to develop and test software

18   updates for the City of Flint and other Rimini customers with similar software licenses."

19   6 F.Supp.3d at 1096.  And, in a prior ruling in March of 2013, the Court found that Rimini

20   admitted to maintaining a co-mingled software library.  Dkt. 466 at 6:20-22.  The Court also

21   found that Rimini intentionally deleted this software library well after Rimini was on notice of

22   potential litigation and aware that the co-mingled software library was potentially relevant

23   evidence.  *Id.* at 17:15-17.  The Court sanctioned Rimini for destroying this evidence.  *Id.* at

24   18:17-23.  Given Rimini's prior false statements, the Court stated it "understands Oracle's

25   reservations about the veracity" of Rimini's representations.  *Id.* at 18:2.  When the Court later

26   granted Oracle's second motion for summary judgment, the Court further held that "Rimini

27   intentionally concealed its identity" in software requests from Oracle in order "to allow Rimini

28   to create development environments to service Rimini's customers without Oracle's

4

1  knowledge." 6 F.Supp.3d at 1126.  Given Mr. Ravin's and Rimini's attempts at deceit, evasion,

2  and concealment outlined above, Oracle is understandably unwilling to allow Mr. Ravin to view

3  any of its "Highly Confidential Information - Attorneys' Eyes Only" information.

4        **C.**     **The Stipulated Protective Order in This Case**

5        Oracle initiated this lawsuit on January 25, 2010.  Oracle and Rimini filed the stipulated

6  protective order on May 20, 2010, Dkt. 53, and Judge Leen signed the order the next day, Dkt.

7  55.  The protective order allows each party to designate information produced in discovery as

8  "Confidential Information" or as "Highly Confidential Information - Attorneys' Eyes Only"

9  where there is a valid basis for such designation.  Dkt. 55, ¶ 2.  Highly Confidential Information

10          include[s] only extremely sensitive, highly confidential, non-public
        information, consisting either of trade secrets or other highly

11          confidential documents related to current or future business plans,
        protocols or strategies, the disclosure of which to the Receiving

12          Parties or non-parties (other than the Designating Party) would be
        likely to cause competitive or business injury to the Designating

13          Party (other than injury to the Designating Party's position in this
        Action).

14

15  *Id.*, ¶ 4.  It also allows third parties producing material in response to subpoenas to make the

16  same designation.  *Id.*, ¶ 2.  With some limited exceptions, Highly Confidential Information can

17  only be disclosed to outside counsel, three designated in-house counsel, and designated experts.

18  *Id.*, ¶ 10.  By contrast, Confidential Information can be disclosed to a much broader group,

19  including the parties and the parties' employees assisting counsel in the litigation.  *Id.*, ¶ 9.

20        **D.**     **Oracle's Exhibit List**

21        On November 21, 2014, the parties filed their preliminary exhibit lists along with their

22  joint proposed pretrial order.  Dkt. 523, App'x A (Oracle's Ex. List).  Oracle's exhibit list

23  included approximately 2,000 documents that Oracle designated "Highly Confidential –

24  Attorneys' Eyes Only."  Hill Decl., ¶ 2.  They fall into several categories.[1]

25  _____

26  [1] Because Rimini asks for a blanket exception from the protective order for Mr. Ravin to see
almost 2,000 documents, Oracle describes them categorically here.  Should Rimini ever identify

27  or discuss a specific document they want him to see, Oracle reserves the right to respond to that
specific request.

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

➢ Approximately 1,850 of the 2,000 documents are license agreements and other contracts between Oracle and its customers, and associated documents. Many of these documents have a non-disclosure clause, and they contain highly sensitive customer lists, customer relationship analysis, pricing information, and negotiated terms. *Id*, ¶ 3.

➢ The next largest group of documents includes extremely sensitive, non-public, internal Oracle financial data regarding Oracle business practices. *Id.*, ¶ 4.

➢ The remaining documents include Oracle's intellectual property, competitive risk analyses related to business strategies, and documents revealing business protocols related to Oracle's investigation into Rimini's illegal downloads of millions of files of Oracle software and support materials. *Id.*, ¶ 5.

➢ Oracle's exhibit list includes documents produced by third parties that contain analyses of whether to contract with Rimini for various strategic reasons and business protocols regarding contract approval and consideration of client references. *Id.*, ¶ 6. They designated these documents as "Highly Confidential – Attorneys' Eyes Only" presumably because they believed this information to be highly sensitive for their businesses.[2]

14

15

16

17

18

19

20

21

22

23

24

25

There is no dispute that these documents are competitively sensitive and warrant "Highly Confidential – Attorneys' Eyes Only" protection. During the course of discovery in this case, Oracle produced millions of documents, and it made narrowly-tailored, well-considered confidentiality designations of a subset of those documents. In the five years the parties have litigated this case, Rimini has never challenged a confidentiality designation or requested that Oracle re-designate "Highly Confidential – Attorneys' Eyes Only" as "Confidential Information." The Court also recognized their sensitivity by finding "compelling reasons" to seal many of them. Dkts. 468, 518. And, in over four years between the date the court entered the protective order and Rimini's initial request in September 2014, Rimini never requested to modify the protective order to give Mr. Ravin access to "Highly Confidential – Attorneys' Eyes Only" information produced by Oracle or third parties, nor has Rimini ever complained that it or

26

27

28

---

[2] Oracle is not aware of Rimini asking third parties for permission to show their Highly Confidential Information to Mr. Ravin. Oracle is also not aware of Rimini notifying those third parties of the instant motion so that they could have the opportunity to provide the Court with their position on their documents.

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

1   Mr. Ravin lacked the ability to adequately defendant themselves against Oracle's claims.

2   Instead, Rimini (like Oracle) has relied on their outside lawyers, in-house counsel, and experts to

3   litigate this case.

4       III.   LEGAL STANDARD

5       As the moving party, Rimini bears the burden of showing "good cause" to modify the

6   existing protective order.  *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000).

7   To establish good cause, Rimini must demonstrate how the existing protective order will

8   "actually prejudice" its case, "not merely increase the difficulty of managing the litigation. *Id.*;

9   *CytoSport*, 2010 WL 1904840 at *2 (citing *Brown Bag*, 960 F.2d at 1470).  Courts are reluctant

10  to find prejudice where the moving party cannot show that its ability to litigate through outside

11  counsel is impaired by the existing protective order.  *Intel*, 198 F.R.D. at 528; *see also Gaymar*

12  *Indus., Inc. v. Cloud Nine, LLC*, No. 1:06 CV 62, 2007 WL 582948, at *3 (D. Utah Feb. 20,

13  2007) ("Plaintiff claims that its principals need access to the technical and financial information

14  because they have expertise in the field—but as is typical in cases between competitors and

15  alleged infringers, retained experts who are obligated to maintain confidences will have to

16  provide this assistance.").

17      The burden of showing prejudice is even greater when, as here, the protective order was

18  stipulated to by the parties.  *See Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501 (S.D. Iowa

19  1992) ("[T]here is general unanimity among the courts that where a party to stipulated

20  protective order seeks to modify that protective order, that party must demonstrate particular

21  good cause in order to gain relief from the agreed to protective order."); *see also American*

22  *Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978) ("where a protective

23  order is agreed to by the parties . . . there is a higher burden on the movant to justify the

24  modification"); *Viskase Corp. v. W.R. Grace & Co.*, No. 90 C 7515, 1992 WL 13679, at *5

25  (N.D. Ill. Jan. 24, 1992) (movant "must make a substantial showing of good cause").  The

26  presumption is based on the principle that "a party which in good faith negotiates a stipulated

27  protective order and then proceeds to produce documents pursuant to that protective order is

28  entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective

1  order." *Jochims*, 145 F.R.D. at 501-02.

2  Even where the moving party can show prejudice, the Court must then apply a balancing

3  test for determining whether a party has made the requisite good cause showing. *Brown Bag*,

4  960 F.2d at 1470. "[T]he court 'must balance the risk to [one party] of inadvertent disclosure of

5  trade secrets to competitors against the risk to [the other party] that protection of . . . these trade

6  secrets' will impair the parties' ability to proceed effectively with the lawsuit." *Medtronic*

7  *Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *3 (W.D. Tenn.

8  Jan. 30, 2002) (citing *Brown Bag*, 960 F.2d at 1470).

9  *Brown Bag* addressed the disclosure of highly confidential materials to in-house counsel

10  for the receiving party, but the same competing interests govern whether to grant access to a

11  party employee. *See, e.g.*, *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan.

12  2007); *Bailey v. Dart Container Corp.*, 980 F. Supp. 560, 583 (D. Mass. 1997). And where, as

13  here, the parties are competitors, courts are "skeptical about allowing even the most trustworthy

14  of defendants' employees to view such sensitive information," will "reject "motion[s] that deal

15  [only] with generalities," and will only consider "a *specific* request to show a *particular*

16  document to an employee for a *very good reason*." *Acer Am. Corp. v. Tech. Properties*, No.

17  C08-00877 JFHRL, 2009 WL 1363551, at *4 (N.D. Cal. May 14, 2009) (emphasis supplied).

18  **IV.    THE COURT SHOULD DENY RIMINI'S REQUEST TO MODIFY THE**
19  **PROTECTIVE ORDER**

20  Good cause does not support providing Mr. Ravin with a special exception from the

21  stipulated protective order to review extremely sensitive documents from Oracle and third

22  parties. The current protective order does not prejudice Rimini or Mr. Ravin because their in-

23  house counsel, outside counsel, and experts adequately represent their interests. Oracle's

24  competitively sensitive information should also remain protected from Mr. Ravin because he

25  remains the same threat to Oracle as he was when the protective order was adopted. There is no

26  change in circumstance that warrants a new arrangement. The protective order was fair then

27  and it is fair now, and Rimini's request should be denied.

28

**A.      Rimini and Mr. Ravin Will Suffer No Prejudice from Proceeding Under the Existing Protective Order**

Rimini's request is not supported by good cause because Rimini cannot identify any prejudice from proceeding to trial under the current protective order.  Rimini states that it needs Mr. Ravin to have access to Oracle's highly sensitive information so he can "defend against the claims Plaintiffs have made against him as a named defendant."  Mot. at 2.  Rimini also wants "Mr. Ravin as Chief Executive Officer to assist Rimini Street's preparation for trial and defense against claims Plaintiffs have made against the company."  Mot. at 2.  But Rimini does not identify any specific document or documents Mr. Ravin somehow needs to see, or offer any explanation for why he needs to see them other than those very generic and conclusory assertions.  Neither assertion reflects any prejudice.

*First*, Mr. Ravin does not need to see highly competitive information from Oracle and third parties to defend against claims made against *him*.  Oracle's claims against Mr. Ravin center around his contributions to Rimini's wrongdoing.  Evidence about Mr. Ravin's actions comes from Rimini and Mr. Ravin's files, not elsewhere.  It is thus no surprise that Rimini has never identified a single document they claim they need him to see, much less why he needs to see it, or why the ability of Rimini and Ravin's in-house counsel, outside counsel, and experts to review the materials at issue is insufficient to represent Rimini and Mr. Ravin's interests.[3]

---

[3] Rimini claims that Mr. Ravin should be granted access to the relevant materials because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," quoting *Petrovic v. City of Chicago*, No. 06–CV–6111, 2007 WL 2410336, at *4 (N.D. Ill. Aug. 21, 2007).  Mot. at 5.  But the access provided to the counsel and experts acting on Mr. Ravin's behalf ensures there is "mutual knowledge" in this case.  By contrast, *Petrovic* addressed whether relevant information should be produced to the other party in the first place, not whether individuals in the company should be able to view highly confidential information.  *Haemonetics Corp. v. Baxter Healthcare Corp.*, 593 F.Supp.2d 298, 302 (D. Mass. 2009) is similarly inapposite.  Mot. at 5.  In that case, a protective order was modified to provide access to in-house counsel and experts, who already have access in this case.  For the same reason, Rimini's citations to *Phillip M. Adams & Assocs. v. Dell, Inc.*, No. 05-CV-64 TS, 2006 U.S. Dist. LEXIS 39173, *24-25 (D. Utah June 12, 2006) and *United States v. Lawson*, No. 08-21-KSF, 2009 WL 2136818, *2 (E.D. Ky. July 16, 2009) for the suggestion that due process concerns might be implicated because Mr. Ravin has a right to a defense are misplaced.  Mot. at 5.  Mr. Ravin has access to most of the evidence in this case, he has a team of people who have access to the rest, and he has not explained any particularity why he thinks his defense team is inadequate.  *Compare Phillip*, 2006 U.S. Dist. LEXIS, at *24, 29 (party requesting access to documents at issue was expert designated for trial); *Lawson*, 2009 WL 2136818, at *2 (criminal defendants did not complain that documents were "attorneys-eyes only," but sought modification

(Footnote Continued on Next Page.)

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

1    It is also irrelevant that Mr. Ravin is an individual, not a company.  He, like Rimini, is

2    in a position to competitively harm Oracle.  *See* Section II.A, above.  He has a decade-long

3    history of doing so with two different companies he founded, including through illegal means.

4    *See id.*  Thus, Oracle has a legitimate interest in protection from him, and he, like the other

5    parties, must rely on his attorneys and outside experts to review the other party's most sensitive

6    business information.  *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 467

7    (S.D.N.Y. 1995) ("Litigants and their counsel must know that they can rely on protective orders

8    to protect sensitive commercial information from disclosure to competitors.").  Further, with

9    respect to the ability to access confidential information, Ravin is in the same position as Rimini

10   itself, and for that matter, Oracle.  All of the parties must rely on their attorneys and outside

11   experts to review the other side's Highly Confidential information.

12   *Second*, there is no justification to provide Ravin with access to Oracle's most sensitive

13   information so that he can assist with his company's defense.  This would be a one-sided and

14   unfair modification of the fundamental basis for the protective order.  Rimini and Oracle

15   stipulated to the protective order with the understanding that they were competitors and had

16   competitively sensitive information.  For the price of protecting that information from each

17   other, the people who run both companies gave up the right to fully participate in the litigation.

18   Just as Mr. Ravin cannot review certain of Oracle's documents, Oracle's Co-CEO, Safra Catz,

19   who is listed as a trial witness, cannot review certain of Rimini's documents.  The same is true

20   of all other Oracle employees other than three specified in-house counsel not involved in

21   competitive decisionmaking (as to whom Rimini had an opportunity to object), and Rimini had

22   the same right to designate in-house counsel.  It would be unprecedented to change that for one

23   party solely because that party's CEO wants to "assist" with "preparation for trial."  Mot. at 2.

24   If Rimini claims Mr. Ravin needs to see specific documents from Oracle's exhibit list,

25

─────────────────

26   (Footnote Continued from Previous Page.)

27   because protective order prevented *use* of the documents at trial).

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

1   they should make a "specific request" to show him "a particular document" and provide a "very

2   good reason." *Acer*, 2009 WL 1363551, at *4. Their inability to do so warrants denying

3   Rimini's request.

4        **B.**     **Modifying the Protective Order Would Improperly Cause Oracle to Suffer**

5                 **Competitive Harm**

6          Even if Rimini or Mr. Ravin might suffer some prejudice from proceeding under the

7   current protective order (they will not), their request for modification should still be denied due

8   to the extreme risk of competitive harm that would result to Oracle. Protective orders exist for

9   cases just like this one where competitors must produce competitively sensitive information.

10   *Bayer AG & Miles*, 162 F.R.D. at 467; *see* Section II.D, above. They also exist for someone

11   like Mr. Ravin. He has personally been held in contempt *by this Court*; his company has made

12   false statements *to this Court*; it has been sanctioned *by this Court* for destroying potentially

13   damaging evidence; and it has continually made attempts to conceal its activities. *See* Section

14   II.B, above. Courts are "skeptical about . . . even the most trustworthy of defendants'

15   employees," *Acer*, 2009 WL 1363551, at *4, and given Mr. Ravin and Rimini's disregard for

16   the legal process, an extra level of skepticism is warranted here.

17          Protective orders also exist to protect exactly the sorts of documents Rimini wants Mr.

18   Ravin to see. Mr. Ravin can use customer lists, customer relationship analyses, and pricing

19   information to strengthen his efforts to take Oracle customers. He can use Oracle's internal

20   financial data, and information about Oracle's intellectual property and Oracle's support

21   websites, to unfairly change Rimini's support practices and develop new methods for evading

22   detection when downloading from Oracle's websites. *See* Dkt. 523 (Joint Pretrial Order) at 34

23   ¶¶ 132-135 (describing prior Rimini and Ravin efforts to avoid detection). As one court

24   explained, where parties are "in direct competition through the sale of almost identical products

25   in the same manner to a similar audience," as they are here, the consequences of disclosure

26   "would be grave," "significant," and "cannot be ignored," because the information at issue

27   "could be used . . . to copy [the disclosing party's] highly successful products, compete for

28   customers, or otherwise interfere with [that party's] business plan and thereby, allow

1   competitors to gain an advantage in the marketplace." *CytoSport*, 2010 WL 1904840, at *2.

2   Accordingly, courts regularly protect the interests Oracle seeks continued protection of here.

3   *Brown Bag*, 960 F.2d at 1470 (upholding refusal to allow disclosure of competitively sensitive

4   documents to even company's in house counsel because he was "involved in the kind of

5   'competitive decisionmaking' that counsels against disclosure"); *Shared Memory Graphics,*

6   *LLC v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 125184, *6-8 (N.D. Cal. Nov. 12, 2010) ("where the

7   party asserting infringement is in the business of acquiring intellectual property and enforcing it

8   against other entities using the allegedly infringing technology, '[t]here is little doubt' that the

9   alleged infringer's confidential information could be of value."); *Glasson Aerospace Science,*

10  *Inc. v. RCO Engineering, Inc.*, 2009 WL 1384179, at *1 (E.D. Mich. 2009) (disallowing

11  disclosure of materials deemed "Confidential–Attorneys Eyes Only" to key witnesses because a

12  "more-restrictive [] protective order is most appropriate in a trade secrets case, in which

13  divulging a trade secret could potentially result in great cost to one or the other parties"); *Acer*,

14  2009 WL 1363551, at *4; *Gaymar*, 2007 WL 582948, at *3.

15      Courts do not alter this analysis when the competitor is an individually named party,

16  even if that party is acting *pro se*.  *RPA Int'l Pty Ltd. v. Compact Int'l, Inc.*, No. CIV.

17  06CV1147WQHAJB, 2007 WL 4105725, at *2-3 (S.D. Cal. Nov. 16, 2007) (denying *pro se*

18  competitor's request to personally access "Attorney's Eyes Only" materials where actual

19  prejudice was not shown, holding that "the logical relief for [the defendant] is to have the expert

20  review the information under the terms of the Protective Order"); *Schlafly v. zenit Key Partners,*

21  *et al.*, No. C-94 20512 SW (PVT) (N.D. Cal. July 18, 1995) (advising pro se litigant who was a

22  direct competitor of adversary to retain counsel or an expert as the only way to use "Attorney's

23  Eyes Only" materials) (attached as Hill Ex. C).

24      **C.      There Is No Change in Circumstance that Justifies Modifying the Protective**
        **Order**
25

26      Rimini's request to modify the protective order should also be denied because it was fair

27  when the parties agreed to it and no circumstance has changed since then.  "Courts have found

28  it presumptively unfair ... to modify protective orders which assure confidentiality and upon

which the parties have reasonably relied." *Peoples v. Aldine Indep. Sch. Dist.*, No. 06-2818, 2008 WL 2571900, at *2 (S.D. Tex. June 19, 2008) (internal citations omitted).  Moreover, requests for modification should be rejected when the circumstances justifying those requests were foreseeable at the time the protective order was entered. *Jochims*, 145 F.R.D. at 502 ("a party's oversight in not negotiating a provision in a protective order concerning a matter which should have been reasonably foreseeable at the time of the agreement" is not "good cause for relief from [a] protective order"); *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 334 (M.D.N.C. 1999) ("When a motion is brought by a party who is represented by counsel who agreed to the terms of a protective order, that party is estopped from raising access arguments that they bargained away."); *Zenith v. Matsushita*, 529 F.Supp. 866, 894 (E.D. Pa. 1981) ("All parties have relied on these provisions in producing documents, and wholesale declassification would undermine their justified expectations.  Plaintiffs cannot now attempt to undo what they have willingly wrought; having made their bed, they must sleep in it.").

No changed circumstances justify Rimini's request.  Mr. Ravin was an individual defendant in this case from day one, and as a party, he specifically stipulated to the protective order.  Rimini and Mr. Ravin knew what they were giving up, and they received a specific benefit for that:  preventing Oracle management from seeing Rimini's sensitive information.  Further, Rimini and Mr. Ravin not only could have anticipated that this case would go to trial when they entered into the current protective order, they foresaw the result.  Hill Decl., Ex. D (article entitled "To beat Oracle, find jurors who care about Leisure Suit Larry not Larry Ellison"[4]).  That they failed to negotiate a different protective order then is not good cause for changing it now, five years after Oracle and third parties have relied on those provisions proceeding with this litigation. *Jochims*, 145 F.R.D. at 502 (party who produces documents in reliance of stipulated protective order is entitled to benefit of the existing agreement); *Romary*

---

[4] *Available at*
http://www.theregister.co.uk/2015/02/27/to_beat_oracle_in_court_or_commerce_start_outside_california/

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

1   *Assoc., Inc. v. Kibbi, LLC*, 2012 WL 32969, at *3-4 (N.D. Ill. Jan. 6, 2012) (denying request to

2   modify stipulated protective order where party had already "produced thousands of pages of

3   documents in discovery, including correspondence with customers, contracts, financial

4   documents, [and] design and manufacture documents," had "relied upon the stipulated

5   protective order as written," and requested change was "reasonably foreseeable at the time of

6   the [initial] agreement").[5]

7          It also does not matter that some of the documents on Oracle's exhibit list may become

8   public at trial. There are still six months before trial, and Oracle believes it is likely that the

9   case will narrow substantially before then, making disclosure of many of Oracle's "Highly

10  Confidential Documents – Attorney's Eyes Only" unnecessary.[6] The parties are still meeting

11  and conferring over trial stipulations, and Oracle expects to propose additional fact stipulations

12  to Rimini to avoid overburdening the Court and jury with unnecessary documents from Oracle's

13  exhibits when relevant facts are undisputed. For example, the parties are finalizing a stipulation

14  on PeopleSoft license construction and are hopeful that this may allow Oracle to remove many

15  hundreds of Highly Confidential PeopleSoft license documents from its exhibit list. There is

16  thus no need to hand all of Oracle's documents over to Mr. Ravin now. The reasons for

17  protecting Oracle's competitively sensitive information remain as valid as ever. *See* Section

18  II.D, above.

19

20  ───────────────────

21  [5] *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988), cited by Rimini for the
    "good cause" standard, confirms that only changed circumstances should justify protective order
    modifications. Mot. at 4. Although *Public Citizen* addressed a third party request to modify a
22  protective order, and the material at issue did not "contain trade secrets or other specially
    confidential material," the court upheld the district court's modification of a protective order
23  because "the reasons underlying the initial promulgation of the order in respect to the particular
    document sought no longer exist." 858 F.2d at 791-92.

24

    [6] At trial, Oracle will have to decide whether to publicly admit documents from its exhibit list or
25  request that they be sealed. Oracle will have to weigh the costs of disclosure with the benefit its
    documents provide, and Oracle is mindful of the high standard for sealing evidence at trial. *See*
26  *Selling Source, LLC v. Red River Ventures, LLC*, 2:09-CV-01491-JCM, 2011 WL 1630338, at *4
    (D. Nev. Apr. 29, 2011) (citing *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1115 n.4 (9th Cir.
27  2009)).

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER

### D.     Rimini's Alternative Request Should Also Be Denied

As an alternative to Rimini's request that Mr. Ravin be given access to all of the documents on Oracle's exhibit list, Rimini asks that the Court re-designate all of them as "Confidential Information." Mot. at 2. But this alternative exponentially compounds the problems caused by Rimini's primary request. Re-designation would not only allow Mr. Ravin to see and use sensitive confidential information produced by Oracle and third parties to harm Oracle, it would allow *every Rimini employee* to see and use that information to harm Oracle. For the same reasons Rimini's primary proposal should be rejected, Rimini's alternative proposal should be rejected as well.

Although Rimini is seeking an order to re-designate Highly Confidential materials, the parties have already agreed on a process to challenge confidentiality designations and specified it in the protective order. Dkt. 55, ¶ 16. A party challenging a confidentiality designation "must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party." *Id.* The challenger "must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material . . . [and] to explain the basis for the chosen designation." *Id.* The challenger "may proceed to the next stage of the challenge process [filing a motion] only if it first has engaged in this meet and confer process." *Id.* By asking the court directly to re-designate Highly Confidential materials en masse, Rimini has not followed the process to alter confidentiality designations that it agreed to years ago. Rimini has not explained the basis for its belief that particular confidentiality designations were not proper as required, and it has not certified to the court that it complied with the meet and confer requirements with respect to Oracle or any third party designations it seeks to alter. Because Rimini seeks to circumvent the designation challenge process it consented to, Rimini's alternative proposal should be rejected.

### V.     CONCLUSION

For the reasons stated above, Rimini's request that the Court modify the protective order should be denied.

1

2     DATED:  March 30, 2015

3                                              MORGAN, LEWIS & BOCKIUS LLP

4                                              By: _____/s/ Thomas S. Hixson_____
                                                          Thomas S. Hixson
5                                                   Attorneys for Plaintiffs
                                                       Oracle USA, Inc.,
6                                                Oracle America, Inc. and
                                              Oracle International Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANTS' MOTION
TO MODIFY THE PROTECTIVE ORDER