# EXHIBIT F

1   BINGHAM McCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA  94111-4067
5   Telephone:  (415) 393-2000
    Facsimile:  (415) 393-2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   BOIES, SCHILLER & FLEXNER LLP
    DAVID BOIES (Admitted *Pro Hac Vice*)
10  333 Main Street
    Armonk, NY 10504
11  Telephone: (914) 749-8200
    dboies@bsfllp.com
12  STEVEN C. HOLTZMAN (SBN 144177)
    1999 Harrison St., Suite 900
13  Oakland, CA 94612
    Telephone: (510) 874-1000
14  sholtzman@bsfllp.com

15  DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
16  500 Oracle Parkway, M/S 5op7
    Redwood City, CA  94070
17  Telephone:  650.506.4846
    Facsimile:  650.506.7114
18  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
19
    Attorneys for Plaintiffs
20  Oracle USA, Inc., *et al.*

21              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
22                  OAKLAND DIVISION

23  ORACLE USA, INC., *et al.*,          No. 07-CV-01658 PJH (EDL)

24          Plaintiffs,                   **PLAINTIFFS' MOTIONS *IN LIMINE***
                                          **REDACTED VERSION**
        v.

25  SAP AG, *et al.*,                     Date:    September 30, 2010
                                          Time:    2:30 pm
26          Defendants.                   Place:   Courtroom 3, 3rd Floor
                                          Judge:   Hon. Phyllis J. Hamilton
27

28

# TABLE OF CONTENTS

Page

I.   MOTION NO. 1:  IMPLIED BUT UNPLED ADVICE OF COUNSEL DEFENSE........ 3

    A.   Legal Standard ..................................................... 4

    B.   The Court Should Exclude Advice of Counsel Evidence Because It Is
       Irrelevant and Barred by the Sword-and-Shield Rule ............................ 5

II.  MOTION NO. 2:  SELECTIVE ATTORNEY/CLIENT COMMUNICATIONS............. 9

    A.   Background:  The Alleged "Directive".............................. 10

    B.   The Court Should Exclude Faye's Testimony and Related Evidence ................. 11

III. MOTION NO. 3:  CUSTOMER STATEMENTS IN AT RISK REPORTS.................. 13

    A.   The At Risk Reports................................................. 14

    B.   The Court Should Exclude the Hearsay Customer Comments ........................... 16

IV.  MOTION NO. 4:  EVIDENCE OF SETTLEMENT DISCUSSIONS ........................... 17

V.   MOTION NO. 5:  EVIDENCE NOT IN INTERROGATORY RESPONSES .............. 18

    A.   Defendants Do Not Identify Specific Agreements Relating to Actual
       Copies.......................................................... 19

    B.   The Court Should Exclude Evidence Not in the Interrogatory Responses .......... 20

VI.  MOTION NO. 6:  HEARSAY CONCERNING LOCKHEED MARTIN ..................... 21

VII. MOTION NO. 7:  EVIDENCE OF OTHER LITIGATION............................ 23

VIII. MOTION NO. 8:  UNTIMELY DEPOSITION DESIGNATIONS ................................ 24

i

**CASES**

*Affiliated Manufs., Inc. v. Aluminum Co. of Am.*,
  56 F.3d 521 (3rd Cir. 1995) ................................................................................... 18

*Alexander v. CIT Tech. Financing Servs., Inc.*,
  217 F. Supp. 2d 867 (N.D. Ill. 2002) ..................................................................... 16

*Bittaker v. Woodford*,
  331 F.3d 715 (9th Cir. 2003)................................................................................... 4

*Bourne v. Walt Disney Co.*,
  68 F.3d 621 (2d Cir. 1995)...................................................................................... 18

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
  227 F.R.D. 313 (C.D. Cal. 2004) ........................................................................... 20

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992).................................................................................. 4

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
  259 F.3d 1186 (9th Cir. 2001)........................................................................... 4, 8, 9

*Cox v. Adm'r U.S. Steel & Carnegie*,
  17 F.3d 1386 (11th Cir. 1994).................................................................................. 9

*Giese v. Pierce Chem. Co.*,
  43 F. Supp. 2d 98 (D. Mass. 1999) .......................................................................... 4

*In re Oracle Corp. Secs. Litig.*,
  No. C 01-00988, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009) ........... 22

*Knauff v. Dorel Juvenile Grp.*,
  No. SA:08-CV-336XR, 2010 U.S. Dist. LEXIS 1041 (W.D. Tex. Jan. 6, 2010).................. 16

*Lemos v. Alderwoods Grp., Inc.*,
  No. 1:06-cv-01152, 2007 WL 2254363 (E.D. Cal. Aug. 3, 2007).......................... 22

*Licciardi v. TIG Ins. Grp.*,
  140 F.3d 357 (1st Cir. 1998) ................................................................................... 21

*Michaels v. Internet Entm't Grp., Inc.*,
  5 F. Supp. 2d 823 (C.D. Cal. 1998)......................................................................... 18

*Richards v. City of Topeka*,
  173 F.3d 1247 (10th Cir. 1999)............................................................................... 18

ii

*Rowland v. Am. Gen. Fin.*,
  340 F.3d 187 (4th Cir. 2003) ................................................................. 17

*United States v. Arteaga*,
  117 F.3d 388 (9th Cir. 1997) ................................................................. 16

*United States v. Pazsint*,
  703 F.2d 420 (9th Cir. 1983) ................................................................. 16

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ............................................................... 20

**RULES**

Fed. R. Civ. P. 26 .............................................................................. 20

Fed. R. Civ. P. 30 .............................................................................. 11

Fed. R. Civ. P. 37 ...................................................................... 2, 18, 20, 21

Fed. R. Evid. 402 ............................................................................ 2, 24

Fed. R. Evid. 403 ................................................................... 2, 21, 23, 24

Fed. R. Evid. 404 ............................................................................ 2, 24

Fed. R. Evid. 408 ..................................................................... 2, 17, 18

Fed. R. Evid. 801 ..................................................................... 2, 14, 22

Fed. R. Evid. 802 ............................................................................ 1, 2

Fed. R. Evid. 803 .............................................................................. 16

Fed. R. Evid. 805 .............................................................................. 16

iii

# NOTICE OF MOTIONS AND MOTIONS

PLEASE TAKE NOTICE THAT on September 30, 2010 at 2:30 pm, or as soon thereafter as the matter maybe heard, in the United States District Court, Northern District of California, located at 1301 Clay St., Oakland, CA, Courtroom 3, 3rd Floor, before the Hon. Phyllis J. Hamilton, Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Limited, and Siebel Systems, Inc. (collectively, "Oracle" or "Plaintiffs") will move *in limine* to exclude from trial the items listed below and described more fully in the attached memorandum of points and authorities. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the accompanying declaration of Thomas S. Hixson ("Hixson Decl."), and such other matters as may be presented to the Court at the time of the hearing.

# RELIEF SOUGHT

1.      Oracle moves to exclude statements by Defendants that their attorneys analyzed SAP TN's business model or determined it was legal. Specific documents with such statements are listed in part I, below. Oracle also moves to exclude similar testimony by witnesses at trial. This evidence is inadmissible because Defendants have not pled an advice of counsel defense and have used the attorney-client privilege as both a sword and a shield.

2.      Oracle moves to exclude testimony by SAP in-house attorneys characterizing a claimed SAP executive board directive to remove Oracle software from SAP TN's computers as "urgent" and "mandatory" or contending that SAP believed SAP TN was making progress toward complying with the directive. The specific pages and lines of testimony to be excluded are listed in part II, below. Oracle also moves to exclude similar testimony by other witnesses at trial and in related documents. This testimony is inadmissible because Defendants have used the attorney-client privilege as a sword and a shield.

3.      Oracle maintained extensive spreadsheets of customers who were "At Risk" of discontinuing support with Oracle for their Oracle software products. These spreadsheets contained customer statements about why they were considering or did leave Oracle. Pursuant to Fed. R. Evid. 802, Oracle moves to exclude these hearsay customer

1  statements in Oracle's At Risk reports, described in part III, below.

2       4.      Pursuant to Fed. R. Evid. 408, Oracle moves to exclude evidence of

3  settlement discussions initiated by Defendants, described in part IV, below.

4       5.      Defendants have pled, but have equivocated on whether they will assert at

5  trial, a license defense for any of SAP TN's conduct.  In any event, Defendants have failed to

6  provide discovery as to any license defense.  In their interrogatory responses, Defendants refused

7  to identify any specific license that allowed any particular copy.  Pursuant to Fed. R. Civ. P.

8  37(c)(1), Oracle moves to exclude evidence of licenses that supposedly authorized any of SAP

9  TN's infringing conduct, as well as evidence tying specific downloads by SAP TN to one or

10  more of Oracle's licensed products.  *See* part V, below.

11      6.      Pursuant to Fed. R. Evid. 403, 801 and 802, Oracle moves to exclude three

12  statements by former SAP TN executives concerning statements purportedly made by former

13  PeopleSoft employees, listed in part VI, below.

14      7.      Pursuant to Fed. R. Evid. 402, 403 and 404, Oracle moves to exclude

15  allegations against Oracle made in two other lawsuits:

16          a.      Oracle has sued another third party support provider, Rimini

17  Street, which was founded by a former SAP TN executive.  Rimini Street has alleged

18  counterclaims that Oracle acted maliciously and anti-competitively toward it.  Oracle moves to

19  exclude references to Rimini Street's allegations in its counterclaims because they are irrelevant

20  to this case, in which Defendants assert no counterclaims, and are also prejudicial and confusing.

21          b.      Oracle also moves to exclude references to a federal False Claims

22  Act lawsuit against Oracle now pending in Virginia, in which the United States government

23  recently intervened.  There is no connection at all between that case and this one.

24      8.      Oracle moves to exclude 229 deposition transcript designations for 68

25  witnesses that Defendants improperly served after the deadlines agreed to by the parties to

26  designate and counter-designate deposition testimony for use at trial.  In the alternative, Oracle

27  moves for leave to submit supplemental counter-designations for more than 2,000 designations

28  by Defendants which Oracle did not "counter-counter" per the parties' agreement.

2

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.     MOTION NO. 1:  IMPLIED BUT UNPLED ADVICE OF COUNSEL DEFENSE**

Defendants have selectively waived the attorney-client privilege in two ways – through documents and testimony that imply favorable legal advice – that will result in a fundamental unfairness at trial.  These selective waivers have allowed Defendants to take advantage of certain alleged statements and actions of their attorneys, or impute favorable conclusions to their attorneys, without allowing Oracle to explore those statements through discovery.  Motions 1 and 2 seek to remedy this unfairness by holding Defendants to the defenses they have pled.

A critical issue in this case is the SAP AG board of directors' choice to buy SAP TN even though the board knew that SAP TN's operations were improper and "very likely to be challenged by Oracle" and "may be a serious liability."  Plfs' Depo. Ex. 513 at SAP-OR-00186998 (Hixson Decl., Ex. A).  The board decided to acquire SAP TN at a January 7, 2005 meeting.  The "business case" presented to the board at that meeting called out SAP TN's "likely" illegality, outlined ways to create a "liability shield" to protect the parent company, and identified "legal due diligence" as a future task.  *Id.* at SAP-OR0018698-99.

Whether the board actually sought legal advice regarding the identified illegalities in SAP TN's operations remains unknown, because Defendants have blocked substantially all inquiry by asserting the attorney-client privilege.  However, in both documents and testimony, Defendants state or imply that SAP's attorneys somehow *did* approve SAP TN's business model and that such approval was imperative.  Defendants allow a few admittedly "legal" conversations between in-house counsel and business people to tell this story.  At the same time, by asserting the privilege on the basis that they have plead no advice of counsel defense, Defendants have blocked Oracle from testing those same statements.  The result is a one-sided story in Defendants' favor and untested by cross-examination.  The Court should remedy that unfairness by granting Motions 1 and 2.  Magistrate Laporte has already suggested a similar remedy in connection with prior discovery motion practice related to a different document.

### A. Legal Standard

"Generally speaking, failure to plead an affirmative defense results in a waiver of the defense *and the exclusion of all evidence relevant to it*." *Giese v. Pierce Chem. Co.*, 43 F. Supp. 2d 98, 113 (D. Mass. 1999) (citation omitted, emphasis supplied by court). Defendants have not pled an advice of counsel defense. *See* Defendants' Answer and Affirmative Defenses to Fourth Amended Complaint, Dkt. No. 448 (Aug. 27, 2009). Moreover, if a party does not assert an advice of counsel defense, and blocks discovery into attorney advice, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("the fairness principle . . . is often expressed in terms of preventing a party from using the privilege as both a shield and a sword.") (citations omitted). Here, Defendants' invocation of the attorney-client privilege in discovery means that the Court should exclude any testimony or documents where Defendants invoked the privilege to bar Oracle from testing the veracity of the testimony or document through cross-examination. *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1996 (9th Cir. 2001) (affirming exclusion of evidence related to advice of counsel defense because party invoked the attorney-client privilege during the discovery on the subject at issue).

Magistrate Judge Laporte followed this sword-and-shield rule previously in this case. Oracle moved to compel production of certain documents related to the "Rules of Engagement" (or "Rules"). The Rules purport to be a board-approved policy directed at, among other things, keeping SAP TN's infringing copies of Oracle software confined to SAP TN's systems. The Rules were drafted in part and distributed by Christopher Faye, a senior SAP in-house intellectual property attorney.

Defendants asserted attorney-client privilege over documents related to the Rules. Oracle contended that Defendants had engaged in a selective waiver of the attorney-client privilege as to the Rules by producing some documents and allowing witnesses to testify on some legal issues when doing so was helpful to them, but then invoking the privilege when it was not. *See* Plaintiffs' Motion to Compel Production of Clawed Back Documents, Dkt. No. 136

4

1 (Aug. 1, 2008) at 8-11.  Defendants denied that, but represented that "Defendants have not and
2 will not use as a defense in this case the fact or substance of their lawyers' contemporaneous
3 legal analysis or legal advice relating to the creation, content, implementation, or application of
4 the ROE."  Defendants' Opposition to Plaintiffs' Motion to Compel Production of Clawed Back
5 Documents, Dkt. No. 151 (Aug. 13, 2008) at pg. 2, lines 8-10 (Hixson Decl., Ex. B); *see also id*.
6 at pg. 9, lines 12-14.

7            Relying in part on Defendants' representation, Judge Laporte denied portions of
8 Oracle's motion to compel and agreed that a motion *in limine* may be appropriate "[l]ike if they
9 say . . . 'well, but we adopted it [the Rules] in good faith because our lawyers told us it would
10 work,' you can't say that.  You're not going to be able to say anything like that."  Aug. 28, 2008
11 Disc. Conf. Tr. at 72:4-9 (Hixson Decl., Ex. C); *id*. at 71:22-23; *see also* Order Granting in Part
12 Plaintiffs' Motion to Compel Production of Clawed Back Documents, Dkt. No. 170 (Aug. 29,
13 2008) at pg. 2, lines 19-23 ("[T]his ruling is premised on Defendants' assurances that they will
14 not use the Rules and attorney advice about them as both a sword and a shield in the future, e.g.,
15 by arguing that even if the Rules turned out not to be effective in preventing intellectual property
16 violations, they relied in good faith on the advice of counsel that the Rules would do so.").

17     **B.      The Court Should Exclude Advice of Counsel Evidence Because It Is
18              Irrelevant and Barred by the Sword-and-Shield Rule**

19            The Court should preclude Defendants from presenting any evidence that SAP
20 attorneys believed SAP TN's conduct was legal or that implies they did.  This motion does not
21 seek to exclude statements by non-attorneys identifying the need to consult with attorneys or to
22 obtain guidance about potential legal risk.[1]  Rather, it is limited to statements that say or imply
23 _____

24 [1] For example, the January 7, 2005 business case presented to the SAP AG board of directors
25 predicts legal risk and potential litigation by Oracle.  Oracle believes this document reflects the
   board's understanding and acceptance of SAP TN's illegal conduct at the time they decided to
26 acquire the company.  But while the business case lists legal due diligence as a future task (with
   twelve days before the deal closed), no witness has asserted (or could assert) that it reflects the
27 lawyers' conclusions about the legality of SAP TN's business model.  Plfs' Depo. Ex. 513
   (Hixson Decl., Ex. A).
28

1    what conclusion the attorneys may have reached.

2         For example, Oracle moves to exclude statements from an SAP risk assessment

3    document that was created approximately one month after SAP acquired SAP TN.  The risk

4    assessment analyzed, among other things, the risk of "[l]itigation by Oracle."  Plfs' Depo. Ex.

5    430 at SAP-OR00002184 (Hixson Decl., Ex. D).  It contained an assertion by SAP's Arlen

6    Shenkman, then-director of corporate finance, stating:  "SAP has carefully analyzed

7    TomorrowNow's support model and is convinced that *it does not interfere[] with third party*

8    *intellectual property rights* and thus the likelihood of a successful claim is considered remote at

9    this time."  *Id*. (emphasis supplied).  The risk assessment went on to state that "SAP has

10    carefully evaluated TomorrowNow's support model *as part of the Due Diligence process.*

11    Adherence to appropriate support practices ensuring that TomorrowNow *is continuing to honor*

12    *all applicable third party intellectual property rights* will need to be monitored also going

13    forward."  *Id*. at SAP-OR00002185 (emphasis supplied).

14         These statements, if admitted in evidence, imply that Defendants acted on the

15    advice of counsel.  They create the impression that lawyers approved TN's operations.  At the

16    same time, Defendants have blocked all related inquiry into that implied conclusion by invoking

17    the attorney-client privilege.  For instance, when Oracle's counsel asked SAP's CFO:  "Could

18    you explain to me what was the careful analysis that [Mr. Shenkman] references?" (Brandt

19    11/13/08 Depo. at 232:7-9 (Hixson Decl., Ex. E)), SAP's counsel then instructed the witness:

20    "Mr. Brandt, I just caution you, Ms. House's question asks for the analysis of Mr. Shenkman or

21    the analysis he referenced.  You may disclose that, *but don't disclose the analysis of the*

22    *lawyers*."  *Id*. at 232:10-15 (emphasis supplied).  Brandt did not answer further.  *Id.*

23         Oracle deposed Shenkman himself about his assertion in the risk assessment:

24    "*Did* SAP determine in connection with the acquisition whether TomorrowNow was using

25    software outside the contractual use rights?"  Shenkman 6/4/08 Depo. at 56:13-15 (emphasis

26    supplied) (Hixson Decl., Ex. F).  In response, Defendants invoked the privilege and, as

27    instructed, Mr. Shenkman did not respond.  *Id*. at 56:16-17.

28         Oracle also deposed SAP's CEO Henning Kagermann, asking him if SAP

1    obtained legal advice about whether SAP TN's access to Oracle's software was legal, in

2    connection with making the decision to acquire SAP TN. Defendants gave multiple instructions

3    for him not to answer, blocking this line of questioning. Kagermann 9/26/08 Depo. at 263:19-

4    265:6 (Hixson Decl., Ex. G). Defendants did the same for multiple other witnesses, broadly

5    instructing them not to testify about any legal advice SAP obtained in connection with acquiring

6    SAP TN concerning whether SAP TN's business model was legal. Agassi 1/5/09 Depo. at

7    255:6-19 (Hixson Decl., Ex. H); Crean 2/19/09 Depo. at 106:20-108:24 (Hixson Decl., Ex. I);

8    Faye 10/22/08 Depo. at 103:13-104:3 (Hixson Decl., Ex. J); Ziemen 9/30/08 Depo. at 171:19-

9    178:14 (Hixson Decl., Ex. K). SAP cannot have it both ways. Because it does not rely on an

10    advice of counsel defense but has blocked examination directed at any legal advice SAP received

11    or gave, related to SAP TN's business model and due diligence results, it impermissibly has used

12    the privilege as both a sword and shield.

13         Other documents and testimony create the same one-sided unfairness that results

14    from selective waiver. An email from SAP TN Senior Account Executive Spencer Phillips on

15    October 17, 2005 to Raytheon, an SAP TN customer, told Raytheon that Defendants' lawyers

16    had concluded that SAP TN's conduct was legal:

17
18
19
20
21

> ***SAP AG attorneys (some of the best Intellectual Property legal minds in the software industry) concluded that TomorrowNow's operating procedures***, which include the use of client software for the purposes of supporting these specific clients, ***is not in violation of the Software License Agreements*** written on PeopleSoft or Oracle paper. ***Had they determined otherwise, they would not have put their $12 billion company at risk by acquiring TomorrowNow.***

22    Depo. Ex. 1177 at TN-OR01778422 (emphasis supplied) (Hixson Decl., Ex. L). At his

23    deposition, Phillips reiterated that he told customers that Defendants' attorneys had approved

24    SAP TN's business model. Phillips 7/22/09 Depo. at 125:14-127:3 (Hixson Decl., Ex. M). SAP

25    TN salesman Eric Osterloh similarly told customers that SAP TN's business model was "fully

26    vetted by SAP attorneys." Plfs' Depo. Ex. 1876 (Hixson Decl., Ex. N). A January 26, 2005

27    article posted on www.eweek.com quotes a consultant saying, "the TomorrowNow guys said

28    that, technically, because they[']re working as independent contractors and lack a formal

1  relationship with PeopleSoft or JDE, they said they can go in and make these fixes on behalf of

2  the customer, who has the right to do these modifications. *They said their lawyers checked it out*

3  *and it[']s in the license agreement and it[']s above-board*." Plfs' Depo. Ex. 1315 at pg. 2

4  (emphasis supplied) (Hixson Decl., Ex. O). *See also* Plfs' Depo. Ex. 429 at SAP-OR00187201

5  (January 17, 2005 email claiming that "TN is confident of its previous analysis and the legality

6  of the services performed") (Hixson Decl., Ex. P).

7  When Oracle deposed Defendants' in-house attorneys on the advice they provided

8  concerning the legality of SAP TN's business practices – repeated and/or implied in all of these

9  documents and testimony – Defendants invoked the privilege. For example, Oracle asked SAP's

10  in-house counsel Christopher Faye if he gave an SAP TN executive "advice about whether a true

11  downloading practice was legal or not." Faye 10/22/08 Depo. at 149:5-7 (Hixson Decl., Ex. J).

12  Defendants objected and instructed him not to answer. *Id*. at 149:8-9. Defendants also

13  instructed Faye not to answer when asked if SAP TN complied with his advice on operating

14  procedures. *Id*. at 138:7-13. Thus, unless precluded, Defendants will have the benefit of the

15  imprimatur these statements confer (that SAP TN operated legally and that SAP tested that and

16  administered legal advice), but Oracle will have had no opportunity to examine that legal

17  conclusion or present contrary evidence at trial.

18  The Ninth Circuit's decision in *Columbia Pictures Television, Inc.* demonstrates

19  the fundamental unfairness of Defendants' selective waiver. In that case, Columbia pictures

20  sued Defendant C. Elvin Feltner Jr. and his company, Krypton International, for copyright

21  infringement due to Krypton's broadcasting several Columbia television shows after the

22  Defendants' licensing agreements had been terminated due to nonpayment. 259 F.3d at 1189-90.

23  During his deposition, "Feltner refused to answer questions regarding his interactions with

24  counsel." *Id*. at 1196. At trial, however, "Feltner sought to rely on advice of counsel to

25  demonstrate that his infringement was not willful." *Id*. The district court granted the plaintiff's

26  motion *in limine* to bar Feltner from invoking his advice of counsel defense, and the Ninth

27  Circuit unanimously affirmed. *Id*. at 1196. The Court of Appeals held "the district court was

28  within its discretion in precluding Feltner from relying on advice of counsel in this case" because

8

1  he had sought to use the privilege as a sword and shield. *Id*. (citing William A. Schwarzer, et al.,

2  Federal Civil Procedure Before Trial, ¶ 11:37 at 11-29 (2000) ("where the party claiming

3  privilege during discovery wants to testify at the time of trial, the court may ban that party from

4  testifying on the matters claimed to be privileged")). Here, too, Defendants invoked the

5  attorney-client privilege to block discovery concerning the advice of counsel and therefore the

6  sword-and-shield doctrine should bar them from relying on such a defense at trial.

7  　　　　Statements stating or implying that Defendants *believed* in the legality of SAP

8  TN's conduct also triggers the sword-and-shield problem. In *Cox v. Adm'r U.S. Steel &*

9  *Carnegie*, 17 F.3d 1386 (11th Cir. 1994), Defendant USX was sued for a change in its pension

10  fund policy. USX "denied any intent to assert a defense of advice of counsel." *Id*. at 1418.

11  Nonetheless, "[i]n the proceedings before the district court, USX ha[d] consistently taken the

12  position that '[a]t the time the revised leave-of-absence policy was implemented in October,

13  1984 . . . *USX believed the policy to be lawful*.'" *Id*. at 1418 (emphasis supplied). The district

14  court and the Court of Appeals held that was an implicit assertion of the advice of counsel

15  defense. *Id*. at 1418-19. "USX could have denied criminal intent without affirmatively asserting

16  that it believed that its change in pension fund policy was legal." *Id*. at 1419. "Having gone

17  beyond mere denial, *affirmatively to assert good faith*, USX injected the issue of its knowledge

18  of the law into the case . . . ." *Id*. (emphasis supplied).

19  　　　　The consequence for USX was that the Court of Appeals found a waiver of the

20  attorney-client privilege. *Id*. Here, where Defendants successfully have blocked Oracle from

21  testing the statements about what the lawyers concluded, the Court should exclude those

22  statements. *See Columbia Pictures Television*, 259 F.3d at 1196.

23  **II.　MOTION NO. 2:　SELECTIVE ATTORNEY/CLIENT COMMUNICATIONS**

24  　　　　For the same reasons, Oracle moves *in limine* to exclude certain testimony of

25  SAP's in-house intellectual property counsel, Christopher Faye and Tim Crean. Their testimony,

26  which admittedly reveals attorney-client communications, characterizes an SAP board directive

27  as "urgent" and "mandatory" and contends that SAP believed SAP TN was making progress

28  toward complying with the board directive. When Oracle attempted to cross-examine Faye and

9

1  Crean on these subjects beyond their self-serving disclosures, Defendants instructed them not to

2  answer based on the attorney-client privilege. Accordingly, the Court should exclude their

3  testimony under the sword-shield rule.

4        **A.**    **Background: The Alleged "Directive"**

5        Defendants assert by interrogatory response that either before or after SAP

6  acquired SAP TN, "[b]y March 2005, the SAP AG executive board issued a directive to

7  TomorrowNow's management to remove customer local environments from TomorrowNow

8  computers." Defendant TomorrowNow, Inc.'s First Amended Responses to Plaintiff Oracle

9  Corp.'s Third Set of Interrogatories and SAP America, Inc.'s, and SAP AG's First Amended

10  Responses to Plaintiff Oracle Corp.'s Second Set of Interrogatories, dated Oct. 7, 2008, at 17

11  (Hixson Decl., Ex. Q). Some SAP AG board members corroborate this response (although

12  others contradict it). All witnesses agree no one ever implemented the supposed directive. The

13  directive was supposedly recommunicated to SAP TN periodically, including in June and August

14  2007, after Oracle filed this lawsuit. Faye 3/18/09 Depo. at 167:13-168:6, 175:10-16 (Hixson

15  Decl., Ex. R). SAP TN only achieved compliance with the directive more than three years after

16  it was allegedly issued – on October 31, 2008, when SAP TN shut down all business operations.

17  *Id*. at 198:13-21.

18        SAP claims that SAP's in-house attorney Faye communicated the directive to

19  SAP TN. Faye claims he conveyed it to SAP TN's CEO, Andrew Nelson, at some point within

20  two months after the board allegedly "issued" it. *Id*. at 33:9-17, 72:7-12; *see also* Faye 10/22/08

21  Depo. at 18:20-20:4 (Faye testifying that he was SAP's in-house counsel) (Hixson Decl., Ex. J).

22  Faye testified that there was "only one" reason the board issued the directive: "Legal." Faye

23  10/22/08 Depo. at 95:18-24 (Hixson Decl., Ex. J); *see also* Faye 3/18/09 Depo. at 113:18-114:16

24  (Hixson Decl., Ex. R). Indeed, according to Faye, all of his communications with SAP TN

25  executives concerning the directive were legal, in his capacity as counsel. *Id*. at 227:3-15; *see*

26  *also* Faye 10/22/08 Depo. at 52:2-7 (Hixson Decl., Ex. J). But SAP blocked any discovery

27  beyond the assertions themselves based on attorney-client privilege.

28

## B.    The Court Should Exclude Faye's Testimony and Related Evidence

In this motion *in limine*, Oracle does not seek to exclude SAP's contention that the board issued the directive.  However, Oracle does move to exclude Faye's testimony, and related evidence, that the directive was urgent and mandatory or that at any time SAP believed SAP TN was making progress toward complying with it.[2]

During discovery, Defendants engaged in a classic sword-and-shield use of the privilege on those issues.  They designated Faye as their Rule 30(b)(6) witness on the directive.  Faye 3/18/09 Depo. at 5:20-6:6 (Hixson Decl., Ex. R).  Defendants selectively allowed Faye to testify about the allegedly mandatory and urgent nature of the directive, and SAP's alleged belief that SAP TN was complying with  it.  But they then invoked Faye's status as an attorney to block questioning about why nobody at SAP did anything to enforce the directive and why SAP TN took more than three years to comply (by going out of business).  Similar questions to Crean met with the same instruction not to answer.

**The Sword.**  Faye testified that "it was a Board directive," "they had to comply with it," "it was urgent," and "Greg Nelson and Andrew and I certainly had conversations about the urgency of the Board directive."  Faye 3/18/09 Depo. at 49:14-22 (Hixson Decl., Ex. R).  He testified that "I was . . . making sure that he [Andrew Nelson] understood the directive and his urgency -- its urgency, rather."  *Id*. at 92:19-93:1; *see also id*. at 85:24-86:6.  Faye claimed that compliance was "mandatory."  *Id*. at 55:5-10; 112:16-18, 124:10-23.  He testified that "SAP's Board insisted on compliance with its January 2005 directive."  *Id*. at 33:5-8.

---

[2] Specifically, Oracle moves to exclude pages/lines 28:25-29:2 from Faye's October 22, 2008 deposition (Hixson Decl., Ex. J); pages/lines 42:20-43:1, 48:20-23; 49:5-11, 49:14-50:13, 51:12-14; 51:20-25, 112:23-113:9, 119:23-24, 120:1-5, 120:22-121:5, 124:10-11; 124:19-125:3, 128:7-10, 128:13-25, 129:3-4, 129:9-131:9, 132:5-14, 132:15-21; 132:24-133:11, and 134:13-135:8 from his March 18, 2009 deposition (Hixson Decl., Ex. R); pages/lines 114:4-7, 116:11-119:3 from Crean's February 19, 2009 deposition (Hixson Decl., Ex. I); pages/lines 343:5-344:5 from Nelson's April 29, 2009 deposition (Hixson Decl., Ex. S); and page 10, lines 12-26 from Defendant SAP AG and SAP America, Inc.'s Written Response in Lieu of Siebel Rule 30(b)(6) Testimony in Response to Topics 1-4 and 9 of Plaintiff's August 14, 2009 Notice of Deposition, Topic 2 of Plaintiff's April 16, 2008 Notice of Deposition, and August 21, 2009 E-mail Questions from B. Hann (Hixson Decl., Ex. T).

1        Faye claims that before this lawsuit was filed, SAP thought SAP TN *was* trying to

2    comply with the directive. "From our perspective, *from what they told us*, we felt that there

3    actually was some compliance. That although it certainly wasn't complete, that steps were being

4    made . . . ." *Id*. at 51:20-23 (emphasis supplied); *see also id*. at 129:23-130:18; *see also id*. at

5    134:13-135:8 (disclaiming knowledge of SAP TN's noncompliance with the directive as to

6    Oracle's Siebel-brand software).

7        **The Shield.** Defendants allowed the conclusory testimony from their attorney to

8    support their contributory copyright liability defense, but then repeatedly invoked the attorney-

9    client privilege to bar Oracle's cross-examination. They blocked such questions as:

10       •     "[W]hy was it the corporation decided not to put any incentives in place to

11   comply with the Board's directives?" *Id*. at 23:5-8 & 23:22-24 ("I don't know of any reason

12   other than possible privilege reasons . . .").

13       •     Why did SAP not "ask for any written reports about progress" in

14   complying with the directive? *Id*. at 225:21-226:7.

15       •     "Why did it take TomorrowNow over 3 years to comply with the Board's

16   directive?" *Id*. at 26:21-27:8 ("[O]ther than privileged information . . . I don't have any

17   information beyond that.").

18       •     "[E]ach time you checked" about compliance with the directive, "you

19   learned that it had not happened. Correct?" Faye 10/22/08 Depo. at 87:17-24 (Hixson Decl., Ex.

20   J).

21       •     "Why weren't Board members informed of the failure to comply with

22   their directive until 2007?" Faye 3/18/09 Depo. at 19:2-20:15 (Hixson Decl., Ex. R).

23       •     "What prompted Mr. Nelson to send" a restatement of the Board's

24   directive in June 2007 for new SAP TN customers? *Id*. at 168:7-16.

25       •     "Why is this [June 2007 restatement of the directive] limited to *new*

26   customers, contrary to the terms of the directive?" *Id*. at 169:11-23 (emphasis supplied).

27       •     "What prompted the recommunication of the directive in August 2007?"

28   *Id*. at 173:7-16.

1 • "What do you know about the discussions, analyses documents or

2 communications leading up to the decision to issue the August 2007 Board directive?" *Id*. at

3 174:24-175:9.

4 Efforts to test the truth of this testimony with Faye's direct supervisor, Crean, met

5 with similar results. Crean testified that Faye's only role in continuing to discuss the directive

6 with SAP TN was to provide "legal advice," and refused to answer questions such as whether

7 SAP ever concluded SAP TN could comply with the directive. Crean 2/19/2009 Depo. at 125:8-

8 20, 128:10-14 (Hixson Decl., Ex. I); *see id*. at 123:1-7 (invoking the privilege in response to the

9 question "So you don't have any recollection of whether TomorrowNow had complied with the

10 directive by the time the litigation started?").

11 The Court should exclude Faye's and Crean's testimony that the directive was

12 urgent and mandatory or that SAP thought SAP TN was complying with it. As Magistrate Judge

13 Laporte stated with respect to the Rules of Engagement, a motion *in limine* is proper to exclude

14 this attorney testimony, and Defendants have conceded they may not rely on an advice of

15 counsel defense at trial. See part I.A., above. With the Rules, SAP attempted to create an

16 imaginary "firewall" between it and SAP TN in order to claim ignorance about SAP TN's

17 operations. With the directive, SAP attempts to shift the blame to SAP TN for failing to remove

18 the software from its systems, absolving itself of contributory liability in the process. SAP uses

19 its attorneys' testimony to create the impression that SAP *intended* for the directive to be

20 mandatory and urgent, and that although its wholly owned subsidiary failed to comply with it for

21 more than three years, SAP at least *believed* its subsidiary was trying to comply. But, at the

22 same time, Defendants have invoked the attorney-client privilege to bar meaningful cross-

23 examination into basic facts that could undermine the attorney testimony that the directive was

24 urgent and mandatory or that SAP believed SAP TN was complying with it.

25 Defendants' use of the attorney-client privilege as both a sword and a shield is

26 improper. Accordingly, the Court should grant motion *in limine* No. 2.

27 **III. MOTION NO. 3: CUSTOMER STATEMENTS IN AT RISK REPORTS**

28 Oracle moves *in limine* to exclude customer statements referred to in its At Risk

13

**1** reports on the ground that they are out of court statements from third parties and thus

**2** inadmissible hearsay. Fed. R. Evid. 801, 802.

**3**     **A.**    **The At Risk Reports**

**4**             From May 2005 to January 2008, Oracle maintained At Risk reports containing

**5** information about customers who told Oracle they were considering dropping Oracle support in

**6** favor of support from a third party, such as SAP TN. Cummins 9/16/08 30(b)(6) Depo. at 89:7-

**7** 11, 90:1-4, 205:8-10, 207:12-17, 211:8-13 (Hixson Decl., Ex. U); Cummins 9/23/08 30(b)(6)

**8** Depo. at 320:23-321:17 (Hixson Decl., Ex. U); Shippy 3/5/09 Depo. at 49:6-11 (Hixson Decl.,

**9** Ex. V). Oracle began keeping the At Risk reports because "we were seeing losses to

**10** TomorrowNow, and so we wanted to make sure that we tracked those losses very specifically."

**11** Cummins 9/16/08 30(b)(6) Depo. at 90:8-10 (Hixson Decl., Ex. U). Oracle's Richard Cummins

**12** designed the report and managed the team that created and maintained it. *Id*. at 89:1-6, 205:24-

**13** 25. The report was in the form of a spreadsheet that was updated and modified over time, *id*. at

**14** 206:16-207:4, 215:16-19, and distributed internally within Oracle. *Id*. at 204:13-15; Cummins

**15** 9/23/08 30(b)(6) Depo. at 317:2-3, 320:10-16 (Hixson Decl., Ex. U).

**16**             Oracle did not affirmatively seek out and systematically identify potentially at

**17** risk customers. Cummins 9/16/08 30(b)(6) Depo. at 190:21-191:1, 216:16-23 (Hixson Decl., Ex.

**18** U); Cummins 9/23/08 30(b)(6) Depo. at 303:24-304:3, 304:17-22 (Hixson Decl., Ex. U). Rather,

**19** "[t]he At Risk report is only listing customers *who tell us* they are evaluating other 3rd party

**20** support providers." ORCL00132444 (internal Oracle email from Elizabeth Shippy) (emphasis

**21** supplied) (Hixson Decl., Ex. W).

**22**             There are several categories of information in the reports, such as the number of

**23** customers at risk, the contract revenue amounts, and win/loss statistics. This motion *in limine* is

**24** directed only to the customer comments in the reports. These are contained in the "notes" fields,

**25** which recite the reasons the customer gave for possibly dropping Oracle support. Using

**26** Defendants' Deposition Exhibit 55 as an example, the notes field for Hitachi Global Storage

**27** Technologies states: ██████████████████████████████████████████████

**28** ████████████████████████████████████████████████████████████████████

14

1 ███████████████████████████████ Hixson Decl., Ex. X at pg. 4; *see also* Hixson

2 Decl., ¶ 28 (explaining the layout of the At Risk reports and the excerpts presented with this

3 motion). Similarly, the notes field for CompuCom in that exhibit states: ████████████

4 ██████████████████████████████████████████████████████████████████

5 Hixson Decl., Ex. X at pg. 5.

6        The process for recording customer comments in the At Risk reports was not

7 mandatory nor were there any strict protocol or audits; rather, if a customer told the Oracle

8 support sales representative any reasons for dropping or considering dropping support, the rep

9 was supposed to paraphrase and email that information to Elizabeth Shippy, who then pasted the

10 explanation into the notes column in the report. Cummins 9/16/08 30(b)(6) Depo. at 216:16-23

11 (Hixson Decl., Ex. U); Cummins 4/21/09 Depo. at 235:18-25 (Hixson Decl., Ex. Y); Cummins

12 9/23/08 30(b)(6) Depo. at 269:5-10, 269:16-18 ("The information came in, Beth told me that she

13 cut and pasted it directly from the e-mail into the database.") (Hixson Decl., Ex. U); Shippy

14 3/5/09 Depo. at 49:3-5, 54:19-22, 56:2-11 (Hixson Decl., Ex. V).

15        The customer comments in the notes field were simply a record of what the rep

16 indicated that the customer said. Oracle did not verify whether the comments were accurate, and

17 they were not particularly or uniformly reliable. "[T]he information came from customers as

18 best we could get it. Customers were not, you know, customers give you what they want -- want

19 you to have. So there's certainly limitations with that." Cummins 9/23/08 30(b)(6) Depo. at

20 269:22-25 (Hixson Decl., Ex. U). The "[s]ales reps reported this as part of their overall job," *id.*

21 at 270:1-2, but the "information was only as good as what they" – the customers – "gave her."

22 *Id.* at 270:7-8; *see also id.* at 270:11-15; Shippy 3/5/09 Depo. at 92:15-17 ("[T]his report was as

23 good as the information that we received from the rep, which then received the information

24 directly from the customer.") (Hixson Decl., Ex. V). Sometimes customers gave inaccurate

25 information to Oracle concerning their at risk status. *E.g.*, ORCL00127354 (internal Oracle

26 email from Robert Lachs to Rick Cummins stating, "It turns out [customer] was purposefully

27 dishonest (or 'vague' as they elect to phrase it) keeping us at bay while a) not telling us the

28 renewal was at risk . . .") (Hixson Decl., Ex. Z).

15

**B.**  **The Court Should Exclude the Hearsay Customer Comments**

The Court should grant Oracle's motion *in limine* to exclude the customer comments in the At Risk reports from evidence because they are inadmissible hearsay. *See, e.g., Knauff v. Dorel Juvenile Grp.*, No. SA:08-CV-336XR, 2010 U.S. Dist. LEXIS 1041, at *12-15 (W.D. Tex. Jan. 6, 2010) (granting motion *in limine* to exclude incident reports summarizing claims or complaints from consumers because they were inadmissible second level hearsay).

Assuming for the purposes of this motion only that the At Risk reports themselves come within the business records exception to the hearsay rule in Fed. R. Evid. 803(6), the customer comments contained within the reports are an inadmissible second level of hearsay: "The problem of customer-supplied information can be analyzed as 'hearsay within hearsay.' In such 'double hearsay' situations, each statement must qualify under some exemption or exception to the hearsay rule." *United States v. Arteaga*, 117 F.3d 388, 396 n.12 (9th Cir. 1997); Fed. R. Evid. 805. Thus, "[c]ourts that have applied this principle to [business] records have generally held that customer-supplied information on [the recorded forms], which is not verified, should be excluded . . . ." *Arteaga*, 117 F.3d at 395.

Here, the customer-supplied information in the At Risk reports does not come within any exception to the hearsay rule. The customer comments are not business records because "[t]hat exception applies only if the person furnishing the information to be recorded is 'acting routinely, under a duty of accuracy, with employer reliance on the result, or in short in the regular course of business.'" *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (holding that witness statements in a police report were inadmissible hearsay) (internal citation omitted). "The fact that statements made by strangers to the business become part of its records, such as the complaints which were placed in the  . . . files, does not make them business records unless they are verified by the business and thus adopted and become the business's own statements." *Alexander v. CIT Tech. Financing Servs., Inc.*, 217 F. Supp. 2d 867, 880 (N.D. Ill. 2002) (citation omitted).

Here, Oracle did not verify the accuracy of the customers' comments but simply pasted them into the notes field of the At Risk reports. As Oracle recognized, the customer's

16

1  comments might or might not be truthful.  The comments are hearsay and thus inadmissible to

2  prove the truth of the matter asserted, i.e., that the customers really did cancel support or

3  consider canceling support for the stated reasons.[3]  *See Rowland v. Am. Gen. Fin.*, 340 F.3d 187,

4  194-95 (4th Cir. 2003) (customer complaint inadmissible as double hearsay, even when

5  contained within official records that came within a hearsay exception).

6  **IV.      MOTION NO. 4:  EVIDENCE OF SETTLEMENT DISCUSSIONS**

7          Pursuant to Fed. R. Evid. 408, Oracle moves *in limine* to exclude any evidence of

8  settlement discussions between the parties.

9          In November 2007, Defendants requested a meeting that included Oracle's

10  General Counsel, Dorian Daley, SAP AG's General Counsel, Michael Junge, and outside

11  counsel.  During that meeting, Junge and SAP's attorneys initiated settlement discussions.  The

12  meeting ended with no settlement and no agreement to continue the discussions.  Declaration of

13  Dorian Daley In Support of Defendants' Administrative Motion to Seal, Dkt. No. 457 (Aug. 31,

14  2009) at ¶2.  The parties did agree, however, that the discussions were confidential settlement

15  discussions governed by Federal Rule of Evidence 408, *id.* ¶ 3, and the parties have so stipulated

16  to this Court.  Stipulation Regarding Defendants' Administrative Motion to Seal, Dkt. No. 439

17  (Aug. 26, 2009), pg. 2.  Accordingly, evidence of these settlement discussions should be

18  excluded.

19          Despite the protected nature of these discussions, Defendants used them to

20  support an allegation in their Answer to the Fourth Amended Complaint.  The argument appears

21  to be that when Oracle rejected Defendants' proposal to buy or take back customers from

22  Defendants, Oracle failed to mitigate its damages.  If that were true, then all rejected settlement

23  _____

24  [3] In the voluminous Oracle production, there are several versions of the At Risk report, numerous
25  emails with portions of the At Risk Report excerpted or which likewise forward customer
    hearsay, and other spreadsheets similar to the At Risk Report to track potentially returning
26  customers which also contain a comparably inadmissible customer comments field.  Hixson
    Decl., ¶ 31; *e.g.*, ORCL00485843 (Losses_with_back_maintenance_-_Master.xls spreadsheet).
27  For the reasons set forth in the text above, Oracle moves to exclude these other occurrences of
    customer comments being recorded in internal Oracle documents.

28

17

1   proposals would come into evidence for the same reason. Oracle believes the language in the

2   Answer is improper because it violates Rule 408, and is inadmissible for the same reason. At

3   Oracle's insistence, Defendants filed a motion to seal that portion of the Answer and the Court

4   granted that motion. Order Granting Defendants' Administrative Motion to Seal, Dkt. No. 529

5   (Nov. 2, 2009).

6          The Court should likewise grant this motion *in limine* No. 4 to exclude evidence

7   of settlement discussions between the parties. Rule 408 bars the admission of evidence of

8   compromise negotiations if offered to prove liability for, invalidity of, or amount of a claim that

9   was disputed as to validity or amount, or to impeach through a prior inconsistent statement or

10  contradiction. Fed. R. Evid. 408(a)(1)-(2). The Rule applies here, the parties have agreed it

11  applies, and the Court has previously so held. Accordingly, this motion *in limine* should be

12  granted. *See, e.g., Richards v. City of Topeka*, 173 F.3d 1247, 1253 (10th Cir. 1999); *Affiliated*

13  *Manufs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526-30 (3rd Cir. 1995).

14  **V.     MOTION NO. 5:  EVIDENCE NOT IN INTERROGATORY RESPONSES**

15         The next issue involves Defendants' undefined license defense to the more than

16  5,000 copies of Oracle's software applications on SAP TN's computers, and the more than 9

17  million downloads of support materials SAP TN took from Oracle's website and stored on its

18  systems (millions more were destroyed). Defendants made each copy from software licensed by

19  Oracle to a particular customer, or downloaded the support materials using the credentials of a

20  particular customer. Defendants admit they made and kept these copies. They also assert a

21  "license" defense to these copies. License is an affirmative defense. That means Defendants

22  have the burden to identify a specific license allegedly applicable to each copy they made. *See*

23  *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995); *Michaels v. Internet Entm't Grp.,*

24  *Inc.*, 5 F. Supp. 2d 823, 831, 834 (C.D. Cal. 1998). Defendants refused to provide this

25  information in their discovery responses (and again in pre-trial meet and confer discussions).

26  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Oracle now moves to exclude from trial (1)

27  any defense evidence of agreements, whether express or implied, that supposedly authorized

28  some or all of SAP TN's conduct (this includes the "exemplars" listed in their Interrogatory

18

1  response because Defendants never link those to any specific copies); and (2) any defense

2  evidence that purports to tie specific downloads by SAP TN to particular license agreements.

3      **A.**    **Defendants Do Not Identify Specific Agreements Relating to Actual Copies**

4      In their Answer, Defendants pled that their *use* of Oracle's copyrighted material

5  was lawful or consented to under "agreements between Plaintiffs and their customers and/or

6  former customers." Defendants' Answer and Affirmative Defenses to Fourth Amended

7  Complaint, Dkt. No. 448 (Aug. 27, 2009) at pg. 24 (second and third affirmative defenses).

8  Oracle propounded Interrogatory No. 4, asking Defendants to "[i]dentify all 'agreements

9  between Plaintiffs and their customers and/or former customers' on which you base the

10  contentions made in Your Answer's Affirmative Defenses, including but not limited to

11  Identifying which terms of those agreements form the basis of Your contentions." Defendant

12  TomorrowNow, Inc.'s Third Amended and Supplemental Response to Plaintiff Oracle USA,

13  Inc.'s First Set of Interrogatories, April 15, 2009 at 7 (Hixson Decl., Ex. AA).

14      Defendants refused to identify specific licenses or specific copies in their

15  response. Instead, they identified four "illustrative agreements" and "do[] not address each and

16  every customer contract, of which there are many." *Id*. at 8. Defendants' response then

17  enumerated "exemplar agreements" on which they "currently" based their contentions – at least

18  as of April 2009, when they last supplemented their response. *Id*. They did not link these

19  exemplars to any specific copy of Oracle software made and kept on Defendants computers.

20      In the pretrial meet and confer process, Oracle again asked Defendants to identify

21  what license agreements they relied on for their second and third affirmative defenses, and

22  identified the specific copies for which it sought that information. Defendants responded in only

23  general terms that "Plaintiffs have publicly acknowledged that third party support can be

24  conducted consistent with Plaintiffs' and predecessors' customer licenses. Defendants have

25  consistently stated that they will rely on those licenses (see, e.g., Defendants' opposition to

26  Plaintiffs' motion for summary judgment)." Hixson Decl., ¶ 33. But which licenses? Relating

27  to what copies? Defendants never say, even now on the eve of trial.

28      One reason that Defendants have not yet identified a single license authorizing

1   any of their more than 9 millions downloads is that they have consistently contended they cannot

2   technically do so.  For instance, SAP TN's Vice President of Global Support Services Shelly

3   Nelson testified that "there is no way to actually verify [which] credential was used to download

4   those particular items."  Shelly Nelson 9/3/09 Depo. at 569:13-571:2 (Hixson Decl., Ex. BB); *see*

5   *also* Defendants' Opposition to Plaintiffs' Motion to Compel, July 14, 2009, Dkt. 334, p. 7 n.9

6   ("Defendants have always acknowledged that there is no known technical way to specifically tie

7   a downloaded item on TN's systems to a Customer Connection ID and password.") (Hixson

8   Decl., Ex. CC).  Thus, Defendants have not only abandoned their multiple opportunities to

9   identify licenses relevant to their defenses, they have affirmatively asserted they cannot do so.

10          **B.      The Court Should Exclude Evidence Not in the Interrogatory Responses**

11                  Based on these discovery failures, the Court should exclude any evidence in

12  support of Defendants' license defenses. Fed. R. Civ. P. 26(e)(1)(A) states in relevant part: "A

13  party who . . . has responded to an interrogatory . . . must supplement or correct its disclosure or

14  response . . . in a timely manner if the party learns that in some material respect the disclosure or

15  response is incomplete or incorrect, and if the additional or corrective information has not

16  otherwise been made known to the other parties during the discovery process or in writing."

17  Fed. R. Civ. P. 37(c)(1) states in turn that "[i]f a party fails to provide information or identify a

18  witness as required by Rule 26(a) or 26(e), *the party is not allowed to use that information or*

19  *witness to supply evidence . . . at a trial*, unless the failure was substantially justified or is

20  harmless."  (emphasis supplied).  Rule 37(c)(1) is "a 'self-executing,' 'automatic' sanction to

21  'provide[] a strong inducement for disclosure of material . . . .'"  *Yeti by Molly Ltd. v. Deckers*

22  *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Advisory Committee notes).

23  Courts exclude evidence from trial under Rule 37(c) where a party did not timely disclose it in

24  response to an interrogatory.  *See e.g., Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D.

25  313, 323-24 (C.D. Cal. 2004).

26                  If Defendants attempt to introduce any agreements in support of their affirmative

27  license defense (or consent defense), or attempt to introduce evidence that ties specific

28  downloads to particular license agreements, their failure to provide that information during

                                                  20

1  discovery was not substantially justified or harmless.  Defendants downloaded millions of files

2  from Oracle's websites.  Indeed, they have conceded liability on Oracle's computer fraud claims

3  for that conduct.  They also made thousands of copies of Oracle software (though only have

4  admitted copyright infringement liability for 295 of these copies).  Defendants have the written

5  license agreements between Oracle and its customers in their possession because Oracle

6  produced them.  Indeed, Oracle produced literally thousands of license agreements and related

7  contract documents for the hundreds of customers at issue.  None of those agreements authorized

8  SAP TN's conduct.  But Oracle should not be forced to guess which sentences in which

9  agreements and for which customers, Defendants might attempt to rely on for a license defense.

10  That was the purpose of the interrogatories Oracle served.  Further, Defendants' Interrogatory

11  response makes no mention at all of any implied agreements, which would clearly have

12  necessitated follow up discovery had Defendants made such a contention.  Allowing Defendants

13  to introduce evidence at trial that they failed to identify in discovery violates Rule 37(c)(1) and

14  undermines the Rule's purpose to assure fairness at trial and "eliminate[] surprise." *Licciardi v.*

15  *TIG Ins. Grp.*, 140 F.3d 357, 363 (1st Cir. 1998) (internal citation omitted).

16  **VI.    MOTION NO. 6:  HEARSAY CONCERNING LOCKHEED MARTIN**

17      Oracle moves *in limine* under Rules 403, 801, and 802 to exclude three statements

18  of SAP TN executives concerning statements allegedly made by two former PeopleSoft

19  employees about Lockheed Martin, an SAP TN customer:

20      •    An email from SAP TN Vice President Seth Ravin in which he stated that

21  Lockheed Martin sought permission from PeopleSoft to deliver a CD of PeopleSoft software to

22  SAP TN and then wrote:  "PeopleSoft's Greg Stevenson then wrote me and asked me if they

23  need to provide authorization.  Greg Stevenson at PeopleSoft followed up a few minutes later by

24  phone and he said he was going to let Lockheed Martin know that there was no issue with them

25  sending us the CD's [*sic*]."  TN-OR00616959 (Hixson Decl., Ex. DD).[4]

26  _____

27  [4] The substance of this email was repeated by one of SAP TN's witnesses during her deposition.
   *See* Shelly Nelson 4/18/08 Depo. at 352:5-353:1 (Hixson Decl., Ex. BB).  That merely adds

28                                              (Footnote Continued on Next Page.)

1    •    Deposition testimony by Ravin in which he was presented with the email

2    identified above and repeated his claim that Mr. Stevenson told him that he would tell Lockheed

3    Martin there was no issue with Lockheed Martin sending certain CDs to SAP TN.  Ravin 5/21/09

4    Depo. at 239:4-7, 240:8-19 (Hixson Decl., Ex. EE).

5    •    An email from SAP TN President and CEO Andrew Nelson in which he

6    wrote:  "a senior PeopleSoft representative recommended Lockheed Martin consider

7    TomorrowNow Extended Support as a solution!  Backed with internal staff recommendations -

8    and PeopleSoft's direct referral - Lockheed Martin executives, Lockheed Martin Purchasing, and

9    Seth moved into serious discussions."  TN-OR00497647 (Hixson Decl., Ex. FF).

10    This evidence is inadmissible for four reasons.  *First*, the two emails are hearsay

11    by SAP TN employees, Ravin and Nelson, and fall within no exception to the hearsay rule.

12    Irrespective of whether the underlying statements purportedly made by the two PeopleSoft

13    employees would be admissible, the emails are not.  *See In re Oracle Corp. Secs. Litig.*, No. C

14    01-00988, 2009 U.S. Dist. LEXIS 50995, at *27-28 (N.D. Cal. June 16, 2009) (reports by third

15    parties of statements purportedly made by Oracle officials were inadmissible hearsay).

16    *Second*, Ravin's testimony and the two emails should be excluded because there

17    is no basis to construe the statements attributable to Stevenson and the unidentified PeopleSoft

18    employees as admissions under Fed. R. Evid. 801(d)(2).  There is no evidence that Stevenson

19    was authorized to make any statement regarding PeopleSoft's license terms and what Lockheed

20    Martin could do with the CDs.  There is no evidence as to whether the unidentified PeopleSoft

21    had authorization to make the statement that Nelson attributes to him or her.  *See, e.g.*, *Lemos v.*

22    *Alderwoods Grp., Inc.*, No. 1:06-cv-01152, 2007 WL 2254363, at *7-8 (E.D. Cal. Aug. 3, 2007)

23    (proponent "bears the burden of establishing a foundation from which to conclude that the

24    statement was within a hearsay exclusion") (internal citation omitted).

25    *Third*, excluding these statements is necessary because evidence produced by

26    ─────────────────────
(Footnote Continued from Previous Page.)

27    another level of hearsay, and Oracle moves to exclude this excerpt of Nelson's testimony as well.

28

22

1 Defendants long after the close of discovery now indicates that SAP TN intentionally sought to

2 create false and self-serving emails, which further highlights why statements such as these

3 should not be admitted. *See* TN-IM-20684 (TN employee wrote: "Please do not put in e-mail

4 that you copied code or program from one environment to another . . . pull the file from [another

5 source] and send me a note that you got the file from one of these two sources") (emphasis

6 added) (Hixson Decl., Ex. GG). SAP TN also failed to preserve Ravin's emails, so there is no

7 way for Oracle to determine whether there are similar statements that would prove the falsity of

8 the statements in his email and at his deposition about what Stevenson said. Hixson Decl., ¶ 40.

9 Given these facts, the hearsay rule should apply with even greater force.

10         *Fourth*, all three statements should be excluded under Rule 403 because admitting

11 them would be confusing for the jury and unfairly prejudicial to Oracle. Oracle's copyrights and

12 licenses govern whether PeopleSoft customers were permitted to ship CDs containing

13 copyrighted materials to SAP TN, not the purported statement by Stevenson with regard to a

14 single customer, Lockheed Martin. Defendants' purpose in attempting to introduce this evidence

15 is plain: they are seeking to rely on Ravin's and Nelson's self-serving statements regarding one

16 customer to justify SAP TN's downloading, copying, and use of millions of copies of Oracle's

17 copyrighted materials. If this evidence comes in, the jury would be misled into believing that

18 PeopleSoft somehow authorized the conduct at issue in this case, which is false. Oracle

19 therefore asks that this evidence be excluded.

20 **VII.    MOTION NO. 7:  EVIDENCE OF OTHER LITIGATION**

21         Oracle moves *in limine* to exclude references to allegations made against it in two

22 other lawsuits – *Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*, No. 2:10-cv-0106 (D. Nev.

23 filed Jan. 25, 2010) and *United States ex rel. Frascella v. Oracle Corp., et al.*, No. 1:07cv:529

24 (E.D. Va. filed May 29, 2007).

25         In the *Rimini Street* action, Oracle sued Rimini Street and its founder (and former

26 SAP TN employee) Seth Ravin for copyright infringement and related claims. Hixson Decl., Ex.

27 HH (Oracle USA, Inc's First Amended Complaint). Rimini Street has counterclaimed for libel,

28 declaratory relief and unfair competition. Hixson Decl., Ex. II (Rimini Street Inc.'s Answer to

1 Oracle's First Amended Complaint and Counterclaim). The case is at the pleading stage, and the
2 district court in Nevada has not made any factual findings or, as of this writing, any legal rulings
3 on the parties' respective motions to dismiss.

4 This Court should exclude references to Rimini Street's counterclaims against
5 Oracle, e.g., Defs.' Depo. Ex. 947 (Rimini Street press release about its counterclaims against
6 Oracle) (Hixson Decl., Ex. JJ), deposition testimony by Seth Ravin repeating Rimini Street's
7 allegations of unfair conduct by Oracle, *see* Ravin 7/21/10 Depo. at 346:25-347:15, 348:3-
8 355:14, 355:20-357:12, 361:19-363:25 (Hixson Decl., Ex. EE), and communications between
9 Oracle and Rimini Street relating to Rimini Street's allegations in its counterclaims. Rimini
10 Street's allegations are not relevant to any determination of liability in this action and are
11 therefore inadmissible for that purpose under Fed. R. Evid. 402. Further, admitting those
12 pleadings or communications that reference them would be highly likely to confuse the jury and
13 be unfairly prejudicial. Defendants in this case allege no counterclaims, and because Ravin was
14 previously employed by SAP TN, it could be difficult for the jurors to separate the two lawsuits
15 in their minds. Accordingly, this evidence is also inadmissible under Fed. R. Evid. 403 and 404.

16 The *United States v. Oracle* action is a False Claims Act case that was filed in the
17 Eastern District of Virginia in which the United States recently intervened. July 29, 2010 U.S.
18 Department of Justice Press Release (Hixson Decl., Ex. KK). The United States' allegations
19 concerning Oracle's disclosures during negotiations for a contract with the government are
20 wholly unrelated to the present lawsuit. Any references to the allegations in that case are
21 irrelevant and inadmissible under Fed. R. Evid. 402 and unduly prejudicial and improper
22 character evidence under Fed. R. Evid. 403 and 404.

23 **VIII. MOTION NO. 8: UNTIMELY DEPOSITION DESIGNATIONS**

24 Finally, Oracle moves *in limine* to exclude 229 "counter-counter" deposition
25 transcript designations for 68 witnesses that Defendants served after the deadline agreed to by
26 the parties. Alternatively, Oracle moves for leave to submit its own supplemental "counter-
27 counter" designations analogous to those that Defendants unilaterally added in violation of the
28 parties' agreement.

24

1    In the pretrial meet and confer process, Defendants proposed exchanging

2    deposition "designations on July 16 and counter-designations on August 2." Hixson Decl., ¶ 45

3    (quoting May 11, 2010 3:26 p.m. email from Greg Lanier, Defendants' counsel). Oracle

4    accepted Defendants' proposal. *Id.*, ¶ 46 (June 7, 2010 10:58 a.m. email from Plaintiffs' counsel,

5    Geoff Howard, stating "we accept your proposed . . . depo designation and counter-designation

6    dates of July 16 and August 2, respectively). The parties then served deposition designations on

7    July 16 and counter-designations on August 2, as agreed. *Id.* ¶ 47. The clear purpose of this

8    agreement was to have a process by which each side could respond – once – to the affirmative

9    designations of the other side, and to be able to do so in time for each party to meet the August 5

10   filing deadline.

11   However, in contravention of both the letter and spirit of the parties' agreement,

12   on August 5 at 4:39 a.m., Defendants emailed 229 additional designations for 68 witnesses,

13   which they characterized as "additional counter and completeness designations" to Oracle's

14   "counter/completeness designations." Hixson Decl., ¶ 48. That was contrary to the parties'

15   agreement. It prejudiced Oracle because August 5 – today – is the deadline to file deposition

16   designations with the Court, and Oracle cannot scramble to assemble its own set of new counter-

17   counter designations, particularly since today is also the deadline for these motions *in limine*, the

18   trial brief, the joint pre-trial statement, jury instructions, jury questionnaires, verdict forms,

19   witness lists, exhibit lists, and proposed findings of fact and law. Defendants' counter-counters

20   bloat what is already an unmanageable amount of deposition testimony. Oracle thus requests

21   that the Court exclude Defendants' untimely and prejudicial designations. If it does not, as a

22   matter of equity, Oracle asks that the Court grant Oracle leave to submit analogous counter-

23   counter designations to those Defendants provided Oracle on August 2.

24   DATED:  August 5, 2010                          Bingham McCutchen LLP

25

26                                        By:_____ /s/ Geoffrey M. Howard _____
                                                     Geoffrey M. Howard
27                                         Attorneys for Plaintiffs Oracle USA, Inc.,
                                          Oracle International Corporation, Oracle EMEA
28                                            Limited, and Siebel Systems, Inc.

                                        25

1   BINGHAM McCUTCHEN LLP
    DONN P. PICKETT (SBN 72257)
2   GEOFFREY M. HOWARD (SBN 157468)
    HOLLY A. HOUSE (SBN 136045)
3   ZACHARY J. ALINDER (SBN 209009)
    BREE HANN (SBN 215695)
4   Three Embarcadero Center
    San Francisco, CA 94111-4067
5   Telephone: (415) 393-2000
    Facsimile: (415) 393-2286
6   donn.pickett@bingham.com
    geoff.howard@bingham.com
7   holly.house@bingham.com
    zachary.alinder@bingham.com
8   bree.hann@bingham.com

9   BOIES, SCHILLER & FLEXNER LLP
    DAVID BOIES (Admitted *Pro Hac Vice*)
10  333 Main Street
    Armonk, NY 10504
11  Telephone: (914) 749-8200
    dboies@bsfllp.com
12  STEVEN C. HOLTZMAN (SBN 144177)
    1999 Harrison St., Suite 900
13  Oakland, CA 94612
    Telephone: (510) 874-1000
14  sholtzman@bsfllp.com

15  DORIAN DALEY (SBN 129049)
    JENNIFER GLOSS (SBN 154227)
16  500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
17  Telephone: 650.506.4846
    Facsimile: 650.506.7114
18  dorian.daley@oracle.com
    jennifer.gloss@oracle.com
19
    Attorneys for Plaintiffs
20  Oracle USA, Inc., *et al.*

21              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
22                  OAKLAND DIVISION

23  ORACLE USA, INC., *et al.*,          | No. 07-CV-01658 PJH (EDL)

24              Plaintiffs,              | **[PROPOSED] ORDER GRANTING
                                         | PLAINTIFFS' MOTIONS *IN LIMINE***
        v.
25                                       | Date:    September 30, 2010
    SAP AG, *et al.*,                    | Time:    2:30 pm
26                                       | Place:   Courtroom 3, 3rd Floor
              Defendants.                | Judge:   Hon. Phyllis J. Hamilton
27

28

---

On September 30, 2010, the Court held a hearing on Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle EMEA Ltd., and Siebel Systems Inc.'s (collectively, "Oracle" or "Plaintiffs") motions *in limine*.

Having reviewed the parties' papers and carefully considered their arguments, evidence and relevant legal authority, and good cause appearing, the Court hereby GRANTS Plaintiffs' motions as follows:

## I.    PLAINTIFFS' MOTION *IN LIMINE* NO. 1:  IMPLIED BUT UNPLED ADVICE OF COUNSEL DEFENSE

1.    Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. ("SAP TN") (collectively "Defendants") have not asserted an advice of counsel defense.  They have also invoked the attorney-client privilege to prevent Oracle from taking discovery into the legal advice that Defendants received from their attorneys concerning the legality of SAP TN's business model.

2.    Accordingly, Plaintiffs' Motion *in Limine* No. 1 is GRANTED. Defendants are precluded from introducing or eliciting any testimony, documents or other evidence that says or implies that Defendants' attorneys analyzed SAP TN's business model or determined it was legal.  *See Giese v. Pierce Chem. Co.*, 43 F. Supp. 2d 98, 113 (D. Mass. 1999) ("Generally speaking, failure to plead an affirmative defense results in a waiver of the defense *and the exclusion of all evidence relevant to it.*") (citation omitted, emphasis supplied by court); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1996 (9th Cir. 2001) (affirming exclusion of evidence related to advice of counsel defense because party invoked the attorney-client privilege during the discovery on the subject at issue).

3.    Specific instances of this evidence that are precluded from being admitted at trial include the statements quoted in Plaintiffs' motions *in limine* from:  Plaintiffs' Deposition Ex. 430 at SAP-OR00002184-185; Plaintiffs' Deposition Ex. 1177 at TN-OR01778422; Plaintiffs' Deposition Ex. 1315 at p.2; Plaintiffs' Deposition Ex. 429 at SAP-OR00187201; Plaintiffs' Deposition Ex. 1876 at TN-OR01778633; and pages 125:14-127:3 of the 7/22/09 deposition of Spencer Phillips.  Defendants are also precluded from introducing similar

documents or testimony at trial.

## II. PLAINTIFFS' MOTION *IN LIMINE* NO. 2: SELECTIVE ATTORNEY/CLIENT COMMUNICATIONS

4. For similar reasons, Plaintiffs' Motion *in Limine* No. 2 is GRANTED. Defendants are precluded from introducing or eliciting any testimony, documents or other evidence describing an alleged SAP executive board directive to remove Oracle software from SAP TN's computers as "urgent" or "mandatory" or stating or implying that SAP believed SAP TN was making progress toward complying with the alleged directive.

5. Specific instances of this evidence, which are precluded from being admitted at trial, include: pages 28:25-29:2 from the 10/22/08 deposition of Christopher Faye; pages 42:20-43:1, 48:20-23; 49:5-11, 49:14-50:13, 51:12-14; 51:20-25, 112:23-113:9, 119:23-24, 120:1-5, 120:22-121:5, 124:10-11; 124:19-125:3, 128:7-10, 128:13-25, 129:3-4, 129:9-131:9, 132:5-14, 132:15-21; 132:24-133:11 from the 3/18/09 deposition Christopher Faye; pages 114:4-7, 116:11-119:3 from the 2/19/09 deposition of Tim Crean; pages 343:5-344:5 from the 4/29/09 deposition of Andrew Nelson; and page 10, lines 12-26 from Defendant SAP AG and SAP America, Inc.'s Written Response in Lieu of Siebel Rule 30(b)(6) Testimony in Response to Topics 1-4 and 9 of Plaintiff's August 14, 2009 Notice of Deposition, Topic 2 of Plaintiff's April 16, 2008 Notice of Deposition, and August 21, 2009 E-mail Questions from B. Hann. Defendants are also precluded from introducing similar documents or testimony at trial.

## III. PLAINTIFFS' MOTION *IN LIMINE* NO. 3: CUSTOMER STATEMENTS IN AT RISK REPORTS

6. The customer comments contained in Oracle's At Risk reports are inadmissible hearsay. Fed. R. Evid. 801, 802, 805; *see United States v. Arteaga*, 117 F.3d 388, 395 (9th Cir. 1997). There is also no relevant nonhearsay purpose for their admission. *See United States v. Marguet-Pillado*, 560 F.3d 1078, 1086 (9th Cir. 2009). Accordingly, Plaintiffs' Motion *in Limine* No. 3 is GRANTED. Defendants are precluded from introducing customer statements recorded in Oracle's At Risk reports at trial. Defendants are also precluded from introducing the customer comments contained in emails that excerpt portions of the At Risk Reports or other documents, as well customer comments in spreadsheets similar to the At Risk

2

reports.

## IV. PLAINTIFFS' MOTION *IN LIMINE* NO. 4: EVIDENCE OF SETTLEMENT DISCUSSIONS

7. Plaintiffs' Motion *in Limine* No. 4 is GRANTED. Pursuant to Fed. R. Evid. 408, any testimony, documents or other evidence related to settlement discussions between the parties are precluded from being introduced at trial. *See, e.g., Richards v. City of Topeka*, 173 F.3d 1247, 1253 (10th Cir. 1999).

## V. MOTION NO. 5: EVIDENCE NOT IN INTERROGATORY RESPONSES

8. Despite pleading license and consent defenses related to Oracle's copyright claim, Defendants have failed to identify specific licenses that they contend support their affirmative defenses. Defendants' interrogatory responses violate the supplementation requirement in Fed. R. Civ. Proc. 26(e)(1)(A). Fed. R. Civ. Proc. 37(c)(1) thus bars Defendants from introducing or eliciting any licenses agreements, or any testimony, documents or evidence about license agreements, whether express or implied, that supposedly authorized some or all of SAP TN's conduct. Defendants' failure to previously disclose such information was not substantially justified or harmless. *See Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Plaintiffs' Motion *in Limine* No. 5 is therefore GRANTED.

## VI. PLAINTIFFS' MOTION *IN LIMINE* NO. 6: HEARSAY CONCERNING LOCKHEED MARTIN

9. The following statements are inadmissible hearsay, *see* Fed. R. Evid. 801, and Defendants have not established that they fall within any exception to the hearsay rule *Lemos v. Alderwoods Grp., Inc.*, No. 1:06-cv-01152, 2007 WL 2254363, at *7-8 (E.D. Cal. Aug. 3, 2007) (proponent "bears the burden of establishing a foundation from which to conclude that the statement was within a hearsay exclusion"):

a. "PeopleSoft's Greg Stevenson then wrote me and asked me if they need to provide authorization. Greg Stevenson at PeopleSoft followed up a few minutes later by phone and he said he was going to let Lockheed Martin know that there was no issue with them sending us the CD's [*sic*]." – contained in email from SAP TN Vice President Seth Ravin in TN-OR00614959 .

3

1            b.      The repetition of the above quotation at pages/lines 352:5-353:1 of

2 Shelly Nelson's 4/18/2008 deposition.

3            c.      Deposition testimony by Ravin in which he was presented with the

4 email identified above and repeated his claim that Mr. Stevenson told him that he would tell

5 Lockheed Martin there was no issue with Lockheed Martin sending certain CDs to SAP TN.

6 Ravin 5/21/09 Depo. at 239:4-7, 240:8-19 (Hixson Decl., Ex. __).

7            d.      "[A] senior PeopleSoft representative recommended Lockheed

8 Martin consider TomorrowNow Extended Support as a solution!  Backed with internal staff

9 recommendations - and PeopleSoft's direct referral - Lockheed Martin executives, Lockheed

10 Martin Purchasing, and Seth moved into serious discussions." – contained in an email from SAP

11 TN President and CEO Andrew Nelson at TN-OR00497647.

12        10.      Accordingly, Plaintiffs' Motion *in Limine* No. 6 is GRANTED.

13 Defendants may not introduce the above statements at trial.

14 **VII.     PLAINTIFFS' MOTION *IN LIMINE* NO. 7:  EVIDENCE OF**
**OTHER LITIGATION**

15

16        11.      Plaintiffs' Motion *in Limine* No. 7 is GRANTED.  Defendants are

precluded from introducing or eliciting any testimony, documents or other evidence concerning

17 the allegations made against Oracle in *Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*, No.

18 2:10-cv-0106 (D. Nev.) or *United States ex rel. Frascella v. Oracle Corp., et al.*, No. 1:07cv:529

19 (E.D. Va.), including testimony or documents repeating those allegations.  *See* Defendants'

20 Depo. Ex. 947; pages 346:25-347:15, 348:3-355:14, 355:20-357:12, 361:19-363:25 of the

21 7/21/10 deposition of Seth Ravin.  Those allegations are not relevant to the claims or defenses in

22 this action and would be unduly prejudicial and confusing to the jury.  Fed. R. Evid. 402, 403,

23 404.

24 **VIII.    PLAINTIFFS' MOTION *IN LIMINE* NO. 8:  UNTIMELY**
**DEPOSITION DESIGNATIONS**

25

26        12.      Plaintiffs' Motion *in Limine* No. 8 is GRANTED.  Defendants' untimely

27 August 5 "counter-counter" deposition designations were submitted after the deadlines agreed to

28 by the parties.  Moreover, serving these additional designations at 4:39 a.m. on August 5 – the

4

1  day deposition designations were due to be filed with the Court – unfairly prejudiced Oracle.

2        13.     Accordingly, it is ORDERED that:

3            [Either]

4                a.     Defendants' August 5, 2010 deposition designations are stricken

5  and shall not be admitted at trial.

6            [or]

7                b.     Oracle is granted leave to submit analogous designations in

8  response to Defendants' August 2 counter designations.

9

10       IT IS SO ORDERED.

11

12  Dated: _____, 2010

13                                      _____
                                         Honorable Phyllis J. Hamilton

14                                           United States District Court Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28