SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand Esq. (*pro hac vice*)
Ryan D. Dykal Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 227-8008
Facsimile: (731) 227-9508
rreckers@shb.com

DANIEL B. WINSLOW (*pro hac vice*)
RIMINI STREET, INC.
6601 Koll Center Parkway Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
Fax: (702) 949-8398
WAllen@LRRLaw.com

*Attorneys for Defendants*
*Rimini Street, Inc., and Seth Ravin*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC. , a Nevada corporation; SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-PAL <br><br> **DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN** <br><br> **[SUPPORTING DECLARATION FILED CONCURRENTLY]** <br><br> **[REDACTED VERSION]** <br><br> *ORAL ARGUMENT REQUESTED* |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. INTRODUCTION AND BACKGROUND ........................................................................... 1

II. LEGAL STANDARD ......................................................................................................... 3

III. ARGUMENT ..................................................................................................................... 5

    A.    Ms. Dean Does Not Rely on the Ordinary Benchmarks for a Hypothetical License ...................................................................................................................... 5

    B.    Ms. Dean's Use of the Income Approach as a Starting Point for the Hypothetical Negotiations Is Unduly Speculative and Unreliable ......................... 8

        1.    Application of the Income Approach Here Is Improper ............................. 8

        2.    Ms. Dean's Income Approach Analysis Is Flawed Because She Fails to Apportion Non-Infringing and Infringing Revenue............................. 10

        3.    Ms. Dean's Income Approach Analysis Is Flawed Because It Calculates the Value of the Intellectual Property as a Whole.................. 11

    C.    Ms. Dean's Hypothetical-License Analysis Relies on Unreasonable Assumptions................................................................................................... 13

    D.    Ms. Dean Ignores Non-Infringing Alternatives Available to Rimini ................... 14

    E.    There Is No Causal Link Between the Alleged Infringement and the Calculation of Either Lost Profits in Ms. Dean's Report....................................... 15

IV. CONCLUSION................................................................................................................. 19

CERTIFICATE OF SERVICE ................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bourjaily v. United States*,
483 U.S. 171 (1987).........................................................................................................4

*Claar v. Burlington N. R.R.*,
29 F.3d 499 (9th Cir. 1994) ..........................................................................................3, 4

*Dash v. Mayweather*,
731 F.3d 303 (4th Cir. 2013) ...................................................................10, 14, 15, 16, 17

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)................................................................................................1, 4, 17

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................3

*Jarvis v. K2, Inc.*,
486 F.3d 526 (9th Cir. 2007) ..................................................................................6, 7, 11

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ..........................................................................................3, 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .........................................................................................10

*Leland v. Med. Ctrs., Inc. v. Weiss*,
2007 WL 2900599 (E.D. Tex. Sept. 28, 2007)..................................................2, 3, 8, 9, 11

*Lucent Tech., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .......................................................................................9

*Oracle Corp. v. SAP AG*,
765 F.3d 1081 (9th Cir. 2014) .................................................................1, 2, 5, 6, 8, 10, 15

*Oracle USA, Inc. v. SAP AG*,
2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) ........................................................5, 6, 12

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) .................................................................................1, 3, 7, 18

*Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*,
289 U.S. 689 (1933)........................................................................................................2, 9

*Wakefield v. Olenicoff*,
2015 WL 1460152 (C.D. Cal. Mar. 30, 2015)..............................................................6, 13, 15

*Wall Data, Inc. v. Los Angeles County Sheriff's Department*,
447 F.3d 769 (9th Cir. 2006) ..........................................................................................7, 8, 9

*WesternGeco LLC v. ION Geophysical Corp.*,
2012 WL 2911968 (S.D. Tex July 16, 2012)................................................................3, 15

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

17 U.S.C. § 504(a) ................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 702 ........................................................................................... 3, 4, 5, 8, 17, 19

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

Defendants respectfully move to exclude the lost profits and fair market value opinions of Oracle's damages expert, Elizabeth A. Dean, because her opinions are neither reliable nor relevant and should be excluded based on the operative legal standard set forth in *Daubert v. Merrell Dow Pharms*, 43 F.3d 1311, 1320-22 (9th Cir. 1995), *remanded from* 509 U.S. 579 (1993). Ms. Dean's opinions on Oracle's lost profits and her alternative model based on the fair market value of Rimini's infringing use of Oracle's copyrighted works are highly speculative and rely on unrealistic and speculative damage approaches that have been rejected by other courts.

Ms. Dean ███████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████   To reach this inflated number, Ms. Dean relies on facts and speculation that are disconnected from reality, and bases her calculation on unsupported legal theories that the Ninth Circuit recently rejected as "excessively speculative" in another copyright case that Oracle brought against a competitor. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014).

Ms. Dean also opines ██████████████████████████████ Rimini's infringement yet completely fails to demonstrate any causal link between Rimini's conduct and the lost profit damages Oracle claims.

The hypothetical-license approach to copyright infringement damages calculates the amount the alleged infringer (Rimini Street) *would have* paid a willing seller (Oracle) if, instead of infringing, the parties had negotiated a "fair market value" for the license in 2006, the time of the alleged infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004). The price of this "hypothetical license" is determined by looking to evidence of (i) a history of granting similar licenses by the seller (Oracle), or (ii) a benchmark license in the industry. *See Oracle*, 765 F.3d at 1093. In fact, the Ninth Circuit has never affirmed a damages award based on a hypothetical license absent evidence of such a comparable transaction.

1

But Ms. Dean *admits* that no such evidence exists here. █████████████

2
████████████████████████████████████████████

3
████████████████████████ Where, as here, such evidence does not exist, the Ninth

4 Circuit recently instructed that it will be "difficult for a plaintiff to establish the amount of such

5 damages without undue speculation." *Oracle*, 765 F.3d at 1093.  And Ms. Dean's analysis is no

6 exception—because she cannot draw upon the usual benchmarks, she simply makes one up,

7 complete with elaborate, one-sided terms conjured up by Oracle executives with no reliable factual

8 basis.

9
Specifically, as the "starting point to the hypothetical negotiation," Ms. Dean utilizes the

10 "income approach," which is a forward-looking methodology that measures the market value of a

11 license based on the future economic benefits it is expected to generate.  As a threshold matter, the

12 income approach is not appropriate here because there is ample evidence to show what *actual*

13 damages, if any, resulted from Rimini Street's alleged use of Oracle's copyrighted software and

14 support materials.   Ms. Dean disregards this evidence of actual use in favor of unsupported

15 speculation and conjecture, █████████████████████████████████████████

16 ████████████████████████████████████████████, notwithstanding authority

17 recognizing that post-infringement factual developments *are* relevant to the damages calculation.

18 *See Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) (observing in a

19 patent case that "a different situation is presented if years have gone by before the evidence is

20 offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that

21 courts may not neglect").

22
Assuming the forward-looking income approach could properly be applied here, Ms. Dean's

23 analysis is unreliable and irrelevant (and therefore inadmissible) because it erroneously calculates

24 damages based on conduct that is not even at issue in this case.  █████████████████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27 Because Ms. Dean fails to differentiate between infringing and non-infringing revenues, her

28

6977180 v1

speculative income approach in this instance is inherently unreliable. *See Leland v. Med. Ctrs., Inc. v. Weiss*, 2007 WL 2900599, at *4–6 (E.D. Tex. Sept. 28, 2007) (excluding expert testimony under Rule 702 where, using the "income approach," the expert attributed "all revenue no matter how generated" to the alleged copyright infringement, rendering the testimony "speculative, conjectural, and his methodology [] flawed throughout").

Even assuming the income approach was properly applied here (and it was not), Ms. Dean's analysis is unreliable and irrelevant because she fails to assume, as she must, that Rimini Street would have acted "reasonably" in the hypothetical negotiations. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970) ("The primary inquiry … is what the parties would have agreed upon, if both were reasonably trying to reach an agreement").

Because Ms. Dean's analysis necessarily assumes that Rimini Street would have acted *unreasonably*—indeed, irrationally—in the hypothetical negotiation, her report is unreliable and should be excluded. *See WesternGeco LLC v. ION Geophysical Corp.*, 2012 WL 2911968, at *2 (S.D. Tex. July 16, 2012) (excluding expert testimony under Rule 702 where expert assumed an "unreasonable negotiating approach" that assumed a "financially catastrophic" negotiating position).

Finally, in rendering her opinion on lost profits, Ms. Dean fails to establish any "causal link between the infringement and monetary remedy sought," *Polar Bear Prods.*, 384 F.3d at 708, rendering her analysis "nothing more than [a] 'pie in the sky' damage model," *Leland Med. Ctrs.*, 2007 WL 2900599, at *1.

## II. LEGAL STANDARD

An expert's testimony must be reliable at each and every step or else it is inadmissible. Fed. R. Civ. P. 702; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia"); *Claar v.*

1    *Burlington N. R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (holding that the court must determine that an

2    expert "arrived at [her] conclusions using scientific methods and procedures, and that those

3    conclusions were not mere subjective beliefs or unsupported speculation").  The proponent of the

4    expert bears the burden of establishing by a preponderance of the evidence that the testimony is

5    admissible.  Committee Notes to 2000 Amendment of Fed. R. Evid. 702 (*citing Bourjaily v. United

6    States*, 483 U.S. 171 (1987)).

7         Federal Rule of Civil Procedure 702 provides that a qualified expert may testify in order to

8    assist the trier of fact to understand the evidence or to determine a fact in issue if (i) the testimony is

9    based on sufficient facts or data, (ii) the testimony is the product of reliable principles and methods,

10   and (iii) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R.

11   Civ. Proc. 702.  When evaluating the admissibility of expert testimony, the overarching concern is

12   whether or not it is relevant and reliable.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597

13   (1993); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or

14   the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected

15   to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too

16   great an analytical gap between the data and the opinion proffered.").

17        In order for expert testimony to be relevant, it must be anchored in a correct interpretation of

18   the governing substantive legal standard.  *Daubert*, 509 U.S. at 589, 591 (expert testimony must be

19   "'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute'");

20   *Stilwell v. Smith & Nephew, Inc*., 482 F.3d 1187, 1191-1192 (9th Cir. 2007). As a result, where

21   expert testimony is premised on a misapprehension of the law, that testimony is not relevant and is

22   therefore inadmissible.  *See*, *e.g*., *Daubert v. Merrell Dow Pharms*, 43 F.3d 1311, 1320-22 (9th Cir.

23   1995) (*Daubert II*) (expert opinions inadmissible because they did not meet the substantive legal

24   standard for proving causation); *Schudel v. General Elec. Co*., 120 F.3d 991, 997 (9th Cir. 1997)

25   (same), *overruled on other grounds Weisgram v. Marley Co*., 120 S. Ct. 1011 (2000); *In re High-

26   Tech Employee Antitrust Litig*., 2014 WL 1351040, at \*17 (N.D. Cal. Apr. 4, 2014) ("issues raised at

27   the *Daubert* stage no doubt implicate substantive antitrust law, as the entire issue is whether an

28

4

expert's testimony will be 'relevant' to the jury's consideration at trial of the facts as applied to substantive … law"); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1398 (D. Or. 1996) ("Under this substantive standard, if an expert cannot state the causal connection in terms of probability or certainty, the expert's testimony must be excluded under the second prong of Rule 702").

### III. ARGUMENT

The Copyright Act provides for (i) statutory damages, *or* (ii) actual damages. 17 U.S.C. § 504(a). Actual damages can be awarded in the form of lost profits *or* the fair market value of the copyrighted work at the time of infringement using a hypothetical license. *Oracle v. SAP*, 765 F.3d at 1087 ("Although 'actual damages' can be awarded in the form of lost profits, hypothetical-license damages also constitute an acceptable form of 'actual damages' recoverable under Section 504(b)."). Here, Ms. Dean calculated both lost profits and a hypothetical license. Reckers Decl., Ex. A, Dean Rpt. pp. 25–27 (Table 5: Summary of Oracle's Damages). Ms. Dean's calculations of both lost profits and a hypothetical license are flawed.

Ms. Dean concluded ██████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████ Reckers Decl., Ex. A, Dean Rpt. ¶¶ 121, 168. Because her use of the "income approach" to calculate a "starting point" for these figures was flawed and improper, and because her hypothetical negotiation relies on inherently unreasonable assumptions, her methodology is unreliable and irrelevant, and her testimony should be excluded. Similarly, because she failed to establish any causal link between the alleged infringement and the lost profits Oracle seeks, her methodology is also unreliable and irrelevant, and her testimony should be excluded.

### A.   Ms. Dean Does Not Rely on the Ordinary Benchmarks for a Hypothetical License

The Ninth Circuit recently analyzed the substantive law governing hypothetical-license awards for copyright infringement in *Oracle v. SAP*. There, Oracle sued its competitor SAP for copyright infringement, and the jury returned a verdict against SAP for $1.3 billion. SAP

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1

1    subsequently sought a remittitur of the jury's award to the amount of lost profits, arguing that the

2    evidence in support of the hypothetical license was unduly speculative.  *Oracle USA, Inc. v. SAP*

3    *AG*, 2011 WL 3862074, at *11 (N.D. Cal. Sept. 1, 2011).

4         In granting the remittitur, the court held that "[r]ather than providing evidence of SAP's

5    actual use of the copyrighted works, and objectively verifiable number of customers lost as a result,

6    Oracle presented evidence of the purported value of the [license] as a whole, and elicited self-serving

7    testimony from its executives regarding the price they claim they would have demanded in an

8    admittedly fictional negotiation, and proffered the speculative opinion of its damages expert, which

9    was based on little more than guesses about the parties' expectations."  *Id*.  The court also noted that

10   the Ninth Circuit had never affirmed a hypothetical license award where there was no comparable

11   transaction with which to compare the hypothetical license between the parties.  *Id.* at *8 n.2.  Nor

12   has the Ninth Circuit affirmed a hypothetical-license award in a lawsuit between two competitors.

13   *Id.*  The district court therefore reduced the award to the amount of Oracle's lost profits.  *Id.* at *12.

14        The Ninth Circuit affirmed the district court's reduction of the award amount, noting that

15   although Oracle was not required to prove that it "*would have* ever granted a license" in reality

16   because "hypothetical-license damages assume rather than require the existence of a willing seller

17   and buyer," the actual evidence in support of Oracle's hypothetical license figure was "excessively

18   speculative" and unreliable.  *Oracle v. SAP*, 765 F.3d at 1088–89.  To determine the price of a

19   hypothetical license, the court recognized that typically a plaintiff would need to rely on a "history

20   of granting similar licenses," or "evidence of 'benchmark' licenses in the industry."  *Id* at 1093; *see*

21   *also Oracle v. SAP*, 2011 WL 3862074, at *7 ("An objective, non-speculative license price is

22   established through objective evidence of benchmark transactions, such as licenses previously

23   negotiated for comparable uses of the infringed work, and benchmark licenses for comparable uses

24   of comparable works."); *Wakefield v. Olenicoff*, 2015 WL 1460152, at *7 (C.D. Cal. Mar. 30, 2015)

25   (rejecting hypothetical-license calculation where "Plaintiff presented no evidence of benchmark

26   transactions, nor any other evidence that would allow the finder of fact to determine what license fee

27   a willing buyer and willing seller would have negotiated").

28

1     For example, in *Jarvis v. K2, Inc.*, 486 F.3d 526 (9th Cir. 2007), the court upheld a

2  hypothetical-license award supported by evidence of a professional photographer's (Jarvis) *previous*

3  licensing agreements with and history of selling photographs to K2, a maker of outdoor sporting

4  goods, which was used to gauge a "reasonable range" for the hypothetical market value of the

5  infringed images K2 later used without a license. *Id.* at 534.  Similarly, in *Polar Bear Products*, the

6  court upheld a hypothetical-license award that was supported by evidence of the parties' previous

7  negotiations, quotes made by one party to the other (although rejected), and language in the parties'

8  previous licensing agreement.  384 F.3d at 704.  Finally, in *Wall Data, Inc. v. Los Angeles County*

9  *Sheriff's Department*, 447 F.3d 769 (9th Cir. 2006), the Los Angeles County Sheriff's Department

10  purchased 3,633 licenses to Wall Data's computer software, but installed the software on 6,007

11  computers.   *Id.* at 773.   The court affirmed the jury's hypothetical-license damages award of

12  somewhere between $53 and $90 per infringed copy as non-speculative where (1) "the average price

13  Wall Data charged the vendor that sold software to the Sheriff's Department was $189," (2)

14  "government entities were charged $113 per copy," and (3) "the Sheriff's Department had originally

15  paid $85 per copy."  *Id.* at 786–87.  In all three of these cases—in contrast to *Oracle v. SAP* and

16  here—the hypothetical-license award was based on a history of similar negotiations between the

17  parties or industry benchmarks.

18     Ms. Dean admits that no such evidence exists here. Reckers Decl.,  Ex. A, Dean Rpt. ████

19  

20  

21  

22  

23  

24  

25  

26  

27  

28
DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1

1

2

In the absence of any evidence of any license similar to the one assumed by Ms. Dean, "it may be difficult for a plaintiff to establish the amount of such damages without undue speculation." *Oracle v. SAP*, 765 F.3d at 1093.  As shown below, "undue speculation" is precisely the basis for Ms. Dean's expert opinion, which warrants its exclusion under Rule 702.

**B.**   **Ms. Dean's Use of the Income Approach as a Starting Point for the Hypothetical Negotiations Is Unduly Speculative and Unreliable**

With no evidence of the ordinary benchmarks for calculating a hypothetical license, Ms. Dean uses the forward-looking "income approach" as the "starting point to the hypothetical negotiation." Reckers Decl., Ex. A, Dean Report p. 175.  The income approach is used to determine the value of an intellectual property asset based on the value of the future economic benefits that are expected to be generated by the intellectual property.  *E.g.*, Reckers Decl., Ex. A, Dean Rpt. at ¶ 135

).  Because Ms. Dean's income approach analysis is improper here and therefore irrelevant, and because it in any event relies on erroneous and unreliable assumptions, her testimony should be excluded.

**1.**   **Application of the Income Approach Here Is Improper**

Here, there is no need to calculate *projected* future benefits because the *actual* figures are available, and Ms. Dean's insistence on basing her opinion on projected future benefits renders her analysis unreliable and irrelevant.  Ms. Dean is not measuring actual "loss in the fair market value," but rather, she is attempting to quantify losses that simply did not occur.  *See Polar Bear Prods.*, 384 F.2d at 708; *Leland Med. Ctrs., Inc.*, 2007 WL 2900599, at *5 (rejecting income approach as a measure of actual damages in a copyright case for being "speculative, conjectural," and in terms of methodology, "flawed throughout").  This forward-looking approach—

—is inappropriate in this case.  *See Wall Data,*

8

1 │ *Inc.*, 447 F.3d at 786 (noting that a license fee should be based on the infringer's actual use of the
2 │ copyrighted materials); *Leland Med. Ctrs. Inc. v. Weiss*, 2007 WL 2900599 (a party's expectations
3 │ or goals are insufficient to establish the fair market value of a hypothetical license).

4 │    Specifically, Rimini Street's actual performance is known, and there is ample evidence to
5 │ show what damages, if any, resulted from Rimini Street's alleged use of Oracle's copyrighted
6 │ software and support materials.  But rather than citing evidence of Rimini Street's actual use, Ms.
7 │ Dean's entire value of use calculations rely upon revenue *projections and expectations*.  *See* Reckers
8 │ Decl., Ex. A, Dean Rpt. at ¶¶ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

9 │    Ms. Dean admits that her analysis does not take into account Rimini Street's actual use of the
10 │ Software  and  Support  Material,  t▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 │ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"  Reckers Decl., Ex. B, Dean Depo. at 268:18–19.  But
12 │ this is simply wrong as a matter of law.  In *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289
13 │ U.S. 689 (1933), the Supreme Court recognized that factual developments occurring after the date of
14 │ the hypothetical negotiation should inform the damages calculation.  *Id.* at 698.  In fact, a proper
15 │ hypothetical negotiation analysis "often *requires*" consideration of post-negotiation events.  *See*
16 │ *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333–34 (Fed. Cir. 2009) ("our case law affirms
17 │ the availability of post-infringement evidence as probative in certain circumstances ... the
18 │ hypothetical negotiation analysis 'permits and often requires a court to look to events and facts that
19 │ occurred thereafter and that could not have been known to or predicted by the hypothesized
20 │ negotiators'").

21 │    In any event, Ms. Dean fails to apply her reasoning consistently, as she nevertheless relies on
22 │ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮s in her analysis of a hypothetical-
23 │ negotiation in 2006 to show Rimini Street's forecast of 2008 and 2009.  ▮▮▮▮▮▮▮▮▮▮
24 │ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 │ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 │ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 │ As such, her testimony should be excluded.

28 │

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.     Ms. Dean's Income Approach Analysis Is Flawed Because She Fails to Apportion Non-Infringing and Infringing Revenue**

Even assuming the forward-looking income approach could properly be applied here notwithstanding available evidence of actual performance, Ms. Dean's analysis is unreliable and irrelevant because it erroneously calculates damages based on conduct that is not even at issue in this case.

The law is clear that a plaintiff cannot claim as its damages revenues from non-infringing activity. *Dash v. Mayweather*, 731 F.3d 303, 326 (4th Cir. 2013) (affirming summary judgment for defendants in a copyright case where the plaintiff could not prove increased revenues *as a result of* infringement); *see LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67–70 (Fed. Cir. 2012) (patent case requiring that damages calculation value the infringing component, not the entire product). Rather, "when 'the infringement occurs as a small part of a much larger work, the fact finder properly focuses not on the profit of the work overall, but only on the profit that the infringement contributes.'" *Dash*, 731 F.3d at 326. The relevant revenues under § 504(b) therefore are revenues "reasonably related to the infringement, not unrelated revenues." *Id.* at 327. Otherwise, the plaintiff circumvents the causation element, which is clearly impermissible under the authority of *Oracle Corp. v. SAP*. 765 F.3d at 1093 (rejecting Oracle's "much more speculative basis for calculating hypothetical-license damages," which "failed to provide sufficient objective evidence of the market value of the hypothetical license").

As explained in the expert report from Mr. Hampton, Rimini Street's revenue ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Such revenues should not be included in Ms. Dean's damages calculation as a matter of law.

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN

6977180 v1

1  Ms. Dean nonetheless treats Rimini Street's ███████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████ In essence, Dean's purported value of Rimini Street's actual

5  use of Oracle's software and support materials ignores reality.  Because Dean fails to differentiate

6  between infringing and non-infringing revenues, her speculative income approach in this instance is

7  inherently unreliable.  *See Jarvis*, 486 F.3d at 534 ("Excessively speculative claims of damages are

8  to be rejected.").  Her analysis should be excluded on this basis alone.  *See Leland*, 2007 WL

9  2900599, at *4–6 (excluding expert testimony where, using the "income approach," the expert

10  attributed "all revenue no matter how generated" to the alleged copyright infringement, rendering the

11  testimony "speculative, conjectural, and his methodology [] flawed throughout").

### 3.    Ms. Dean's Income Approach Analysis Is Flawed Because It Calculates the Value of the Intellectual Property as a Whole

Ms. Dean's income approach analysis also fails because, in order to conjure up the forward-looking value of the licenses at issue, Ms. Dean manufactures a fair market value of the Software and Support Materials by ████████████████████████████████████████████ ███████████████████████.

Ms. Dean ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *Id.*  Using these valuations, Dean calculated ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████

Rather than considering the "comparable use of the infringed works" or "comparable uses of comparable works" as the law requires (*Oracle v. SAP*, 2011 WL 3862074, at *7), Ms. Dean is

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1

1    comparing apples to oranges.  Ms. Dean concludes ██████████████████████████████

2    ████████████████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████████████████ █ ███████

7    ███████████████

8         Ms. Dean's reasoning completely ignores the concepts of "benchmark" licenses and

9    objective evidence of value in the context of a hypothetical negotiation.  ███████████████

10   ████████████████████████████ in their entireties are in no way comparable to the price of a

11   hypothetical license between Oracle and Rimini Street.  Reckers Decl., Ex.B, ██████████

12   ████████████████████████████████████████████████████████████████████████████████

13   ██████████████████████████  Ms. Dean's reliance upon the ██████████████████████

14   ██████████████████████ includes "the value of nonprotectable elements of the infringed works, the

15   price to acquire whole companies, and the cost to develop unrelated products."  *Oracle v. SAP*, 2011

16   WL 3862074, at *11.

17        For example, ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████  Yet, Ms. Dean's

20   hypothetical license ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████  Accordingly, Ms.

22   Dean's calculations, ████████████████████████████████████████████

23   ██████████████████ unreliable, they also run afoul of the Ninth Circuit's instruction that value of use

24   damages be based upon the defendant's actual use.  *See Leegin Creative Leather Prods., Inc. v. Belts

25   By Nadim, Inc.*, 316 F. App'x 573, 575 (9th Cir. 2009) ("Nadim used Leegin's belt designs, not its

26   belts, without compensating Leegin; Leegin can therefore claim only the lost value of use of the belt

27   design"); *see also Wakefield*, 2015 WL 1460152, at *7 (rejecting hypothetical-license damages

28

1    award based on the "value of the *finished* sculpture," rather than the value of the "*license* for the

2    *design*" itself because "[k]nowing the market value of a good and the market value of some of its

3    component costs … does not give the fact finder sufficient basis to determine the value of some

4    other component") (emphasis added).

5         Allowing Ms. Dean to value a hypothetical license based upon ▮▮▮▮▮▮▮▮▮▮▮▮▮

6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ destroys this distinction and improperly inflates Dean's

7    damages calculation, further rendering her use of the income approach as unreliable and irrelevant.

8    **C.    Ms. Dean's Hypothetical-License Analysis Relies on Unreasonable Assumptions**

9         Using the flawed income approach as her starting point, Ms. Dean conjures up an unrealistic

10   and unreliable hypothetical negotiation, complete with extensive, unsound hypothetical terms.  *E.g.*,

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The

12   basis for these terms is largely the subjective and self-serving testimony of Oracle executives (*see*

13   Reckers Decl., Ex. A, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), and assumed economic behavior by

14   Rimini Street that would have been totally unreasonable.   This too requires exclusion of her

15   testimony. *WesternGeco L.L.C.*, 2012 WL 2911968, at *2 ("Any unreasonable negotiating approach

16   must be rejected").

17        Ms. Dean assumes that Oracle would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But, there is no basis

20   beyond pure *ipse dixit*, to assume that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  As a result, her hypothetical-license approach makes a

22   number of unrealistic and speculative assumptions, and is divorced from the operative legal

23   standard.

24        Among the problems in Ms. Dean's analysis is the assumption that ▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1

But there is no evidence that Rimini Street would

Doing so would be completely unreasonable business behavior. *See e.g.* Reckers Decl., Ex. C, Hampton Report at ¶ 210-214. The same is true of Ms. Dean's assumption that

These unfounded assumptions illustrate the manner in which Dean's impermissibly speculative license is untethered to the facts of this case, and demonstrates precisely why the Ninth Circuit and other courts have rejected such comparisons when they are not grounded in reality. *See Dash*, 731 F.3d at 319 (calling reliance on licenses that do not involve "comparable uses of comparable works" "inapposite" and "too speculative").

**D.    Ms. Dean Ignores Non-Infringing Alternatives Available to Rimini**

Finally, despite acknowledging that

Indeed, Ms. Dean assumes that Rimini Street

Ms. Dean *admits* that an Oracle competitor such as Rimini Street could provide

Oracle, too, admitted that its competitor

14

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN

6977180 v1

1    Economic reality and common sense dictate that a prospective licensee ████████████

2    ████████████████████████████████████████████████████████████████████████████

3    Several courts have noted this axiom and its impact on the hypothetical-license calculation.  *See,*

4    *e.g.*, *Oracle v. SAP*, 765 F.3d at 1089 (stating that "the buyer will not ordinarily pay more for a

5    license than its anticipated benefit"); *cf. Wakefield*, 2015 WL 1460152, at *7 (rejecting hypothetical-

6    license damages award that was "not supported by logic or basic economic principles" such as costs,

7    risk, opportunity cost, and supply and demand).  Ms. Dean never confronts ██████████████

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10    ████████████████████████████████████    This, too, renders Ms. Dean's hypothetical-license

11    method unreliable.  *See WesternGeco LLC*, 2012 WL 2911968, at *2 (excluding expert testimony

12    where expert assumed an "unreasonable negotiating approach" that assumed a "financially

13    catastrophic" negotiating position).

14    **E.    There Is No Causal Link Between the Alleged Infringement and the Calculation of Lost
        Profits in Ms. Dean's Report**

15

16         Ms. Dean's report is also unreliable and irrelevant because she fails to "establish [a] causal

17    connection between the [alleged] infringement and the monetary remedy sought."  *Oracle Corp. v.*

18    *SAP AG*, 765 F.3d at 1094.  This total disconnect in her analysis renders her opinion inadmissible.

19    *See Daubert II*, 43 F.3d 1320-22; *supra* p. 5.

20         "Regardless of the measure or combination of measures used to establish actual damages, a

21    copyright holder asserting such damages 'must prove the existence of a causal connection between

22    the alleged infringement and some loss of anticipated revenue.'"  *Dash*, 731 F.3d at 313 (*quoting*

23    *Thoroughbred Software Int'l v. Dice Corp.*, 488 F.3d 352, 358 (6th Cir. 2007)).

24         To limit the damages calculation to injuries caused by the alleged infringement, a true lost

25    profits calculation must satisfy a "but for" test.  *E.g.*, *Dash*, 731 F.3d at 309 (affirming summary

26    judgment where a copyright plaintiff "failed to present evidence demonstrating a causal link between

27    the alleged infringement and the enhancement of any revenue stream claimed by [the plaintiff]").

28

1  Ms. Dean acknowledges this concept.  Reckers Decl., Ex. A, Dean Rpt. at ¶ ███████████

2  ████████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  █████████████████████████████████████████████

5         The correct approach, therefore, would have been for Ms. Dean to ██████████

6  ████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████

9  ███████████████████████.

10        For example, Ms. Dean assumes, contrary to the evidence, ███████████████████

11 ████████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████ █ ████████████

14 ████   Neither of these assumptions is supported by the evidence.

15        The reality is that customers leave Oracle all the time, and for various reasons having nothing

16 to do with infringement.[1]  This is dramatically illustrated by Oracle's historic revenue attrition rate,

17 ███████████████████████████████████████████████████████████  In 2006,

18 Oracle's attrition rate f███████████████████████.████████████████████████████

19 ████████████        In 2007—the year Rimini made its first sale—Oracle's attrition rate for ██████████

20

21 _____

22 [1] Internal Oracle documents show, for example, t████████████████████████████

23 ████████████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████████████████

25 ███████████████████████████████████████████

26 [2] ████████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████

28                                              16
         DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
   6977180 v1

1  ██████████████████████████████████████████████████████████████████████████.

2  In 2008, Oracle's PeopleSoft attrition rate ██████████████████████████████████.  In fact,

3  since 2007 when Rimini entered the market, Oracle's PeopleSoft attrition rates ████████████

4  █████████████████████████████████████████████████████████.

5       Moreover, Oracle's total revenue attrition of █████████████████████████████

6  █████████████████████████████████████████████████████████████████████████████

7  At most, Rimini's presence in the market explains only a fraction of Oracle's attrition revenue,

8  demonstrating that the majority of Oracle's non-renewing customers left for reasons entirely

9  unrelated to Rimini.  Ms. Dean makes no attempt to account for this in her causation analysis.  She

10 instead offers an █████████████████████████████████████████████████  ███

11 █████████████████████████████████  But Ms. Dean's █████████████████████

12 █████████████████████████████████████████████████████████████████████████████

13 █████████████████████████  Correlation simply does not prove causation.

14       Therefore, like the plaintiff in *Dash* whose expert testimony failed to present evidence of

15 "the existence of actual damages" as a matter of law, Ms. Dean includes in her calculations damages

16 that are wholly unrelated to the alleged infringement.  731 F.3d at 309 (citing *Daubert*, 509 U.S. at

17 579; Fed. R. Civ. P. 702).  This failure to "establish a causal connection" is deliberate—Ms. Dean

18 acknowledges ████████████████████████████████████████████████████████████████

19 ██████████████████.  Reckers Decl., Ex. A, Dean Rpt. at ¶ 44 ████████████████████

20 █████████████████████████████████████████████████████████████████████████████

21 ───────────────────────

22 [3] ██████████████████████████████████████████████████████████████████████████

23    ████████████████████

24 [4] █████████████████████████████████████████████████████████████████████████

25    █████████████████████████████████████████████████████████████████████████

26    █████████████████████████████████████████████

27 [5] ██████████████████████████████████████████████████████████████████████████

28    ████████████████████

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN

1 ████████████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████████. But the

3 solution to an absence of causal evidence is not to simply *ignore* causation and assume *all* lost

4 revenues as damages. Quite the opposite: where, as here, the plaintiff cannot show that the loss of a

5 particular customer is attributable to infringement, it "cannot recover damages related to [that]

6 customer[]." *Polar Bear Prods.*, 384 F.3d at 708.

7   Ms. Dean's assumptions are also contrary to Oracle's, and her own, admissions. Her

8 inclusion of ██████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████

12 ██████████████████████████████████████. And Ms. Dean concedes ████████████

13 ████████████████████████████████████████████████████████████████

14 ██████████████████████████████████

15   Ms. Dean's assumptions are also flatly contradicted by the evidence. ████████████

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████████.

24 ████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ██████████████████████████████████

27

28

1    These examples illustrate that Ms. Dean's fundamental underlying assumption concerning

2    causation—██████████████████████████████████—is flawed.  By failing to account

3    for these and other customers that left Oracle for reasons unrelated to Rimini Street's alleged

4    infringement, Ms. Dean fails to tie her opinion to the facts of this case as required by Rule 702.

5                                    **IV. CONCLUSION**

6    Defendants respectfully move to exclude Ms. Dean's opinions on Oracle's lost profits and

7    her alternative model based on the fair market value of Rimini's infringing use of Oracle's

8    copyrighted works.

9

10   DATED:        May 20, 2015              SHOOK, HARDY & BACON

11

12                                  By:    */s/ Robert H. Reckers*
                                           Robert H. Reckers, Esq.
13                                         Attorney for Defendants
                                           Rimini Street, Inc. and Seth Ravin
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that, on May 20, 2015, the foregoing DEFENDANTS' MOTION TO

4    EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN was filed with the Court's

5    CM/ECF system which notified the following attorneys via email:

6    | BOIES, SCHILLER & FLEXNER LLP | MORGAN, LEWIS & BOCKIUS LLP |
|---|---|
7    

| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>kringgenberg@bsfllp.com | MORGAN, LEWIS & BOCKIUS LLP<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>NITIN JINDAL (*pro hac vice*)<br>JOHN A. POLITO (*pro hac vice*)<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: 415.442.1000<br>Facsimile: 415.442.1001<br>thomas.hixson@morganlewis.com<br>kristen.palumbo@morganlewis.com<br>Nitin.jindal@morganlewis.com<br>John.polito@morganlewis.com<br><br><br>ORACLE CORPORATION<br>JAMES C. MAROULIS (*pro hac vice*)<br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH MILLER (*pro hac vice*)<br>500 Oracle Parkway<br>M/S 5op7<br>Redwood City, CA 94070<br>Telephone: 650.506.4846<br>Facsimile: 650.506.7114<br>jim.maroulis@oracle.com<br>dorian.daley@oracle.com<br>deborah.miller@oracle.com |

24                      By: */s/ Robert H. Reckers*

25                        Robert H. Reckers, Esq.

26                        *Attorney for Defendants*

27                        *Rimini Street, Inc. and Seth Ravin*

28

DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF ELIZABETH A. DEAN
6977180 v1