BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice pending*)
KAREN DUNN (*pro hac vice pending*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs*
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>   Plaintiffs,<br><br>   v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>   Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**MOTION TO DETERMINE DISPUTED JURY INSTRUCTIONS** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................4

    I.    Finalizing License Jury Instructions Further in Advance of Trial Will Benefit the Court, the Jury, and the Parties. ............................................................4

    II.    The Proposed Instructions on PeopleSoft Are Necessary to Address Rimini's License Defense and Damages Claims. .....................................................5

    III.    The Narrow Proposed Instruction as to Oracle Database Is Accurate and Helpful. ........................................................................................................................6

    IV.    The Proposed J.D. Edwards and Siebel Jury Instructions Are Fair and Accurate and Any Dispute as to Variations in the Licenses Only Confirms the Need to Decide These Issues in Advance of Trial. ...........................................7

CONCLUSION .......................................................................................................................7

APPENDIX .............................................................................................................................1

Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp. (collectively, "Oracle") move the Court to determine in advance of trial two important disputed jury instructions relating to the Court's summary judgment rulings and the construction of Oracle's license agreements, either by the Court or Magistrate Judge Leen.

## INTRODUCTION

Oracle asserts copyright infringement claims, and Defendants Rimini Street, Inc. and Seth Ravin ("Rimini") have asserted a defense of express license based on license agreements between Oracle and Oracle's customers. Rimini disclosed 382 different customers during fact discovery in this case.

Given the large number of license agreements potentially at issue, Judge Leen early on credited the idea of a *Markman*-style process for interpreting them, that is, "[k]ind of a claim construction for license agreement[s]," to resolve them in an efficient manner. (Status Conference Tr. May 17, 2011 at 7:21-8:7; *see also* Status Conference Tr. Mar. 29, 2011 at 24:21-25:9, 43:10-44:16) With the benefit of the Court's summary judgment orders, the Court and the parties are now well situated to finalize jury instructions concerning the relevant licenses.

In the Joint Pretrial Order, Rimini told the Court the parties would meet and confer on "an appropriate mechanism and process by which to efficiently inform the jury of the meaning and application of the provisions" and that the parties "may propose a pre-trial hearing to gain the Court's ruling on the license interpretation issues[.]" (Joint Pretrial Order, Dkt. 523 at 21) While Oracle attempted to engage Rimini in resolving these jury instructions, Rimini has entirely refused to do so other than to provide boilerplate objections without any alternative proposed instructions. As discussed below, those boilerplate objections are without merit and otherwise confirm the importance of addressing and resolving the license construction issues sooner rather than later.

With this motion, Oracle submits two proposed jury instructions concerning the license agreements. Oracle's first proposed instruction explains the role of the license defense in the determination of the copyright infringement claim and that Rimini relies on agreements between Oracle and its customers. Oracle's second proposed instruction explains the key license terms to

the jury, focusing on the interpretation provided by the Court in its summary judgment orders.

Absent resolution of the applicable jury instructions on the meaning of the relevant license terms, the parties would need to prepare on and summarize to the jury hundreds of complex license agreements. The Court's Pretrial Order requires the parties to submit proposed jury instructions ten days before trial. Oracle is submitting these two proposed instructions now both to allow the Court more time to decide them – particularly if Rimini contends that individual analysis of numerous license agreements is required – and because finalizing these key instructions in advance will streamline preparation for trial as well as the trial itself.[1]

## BACKGROUND

Oracle licenses software to its customers pursuant to written license agreements, and separately offers maintenance services to its licensees. Rimini offers itself as an alternative to Oracle in the provision of maintenance with regard, as is relevant to this motion, to three product lines: PeopleSoft, J.D. Edwards, and Siebel. Oracle alleges that Rimini engaged in copyright infringement with respect to each of those product lines. Oracle also alleges that Rimini has committed copyright infringement of Oracle's Database software. Oracle also asserts claims that Rimini tortiously induced Oracle's customers to breach their license agreements.

Rimini has identified express license as their central defense, citing the license agreements between Oracle and its customers. In the period at issue in this lawsuit, Rimini provided maintenance to 382 business and public sector Oracle licensees, each of which has separate (and, typically, several) license agreements with Oracle.

In an effort to focus the case, Oracle filed its first motion for summary judgment on the issues of copyright infringement and the express license defense on a subset of customer licenses which could serve as models. That motion concerned specified conduct alleged by Oracle and specific licenses between Oracle and four Rimini customers: two license agreements relating to

---

[1] Oracle does not anticipate seeking early resolution of any other jury instructions.

1  PeopleSoft software, one license agreement relating to Siebel software, and one license
2  agreement relating to J.D. Edwards software.
3      The Court construed the four licenses and held that, as to PeopleSoft, Rimini's
4  undisputed conduct constituted copyright infringement and was not authorized by the licenses.
5  (Dkt. 474 at 12-20)  As to the Siebel and J.D. Edwards software, the Court held that Rimini's
6  conduct constituted *prima facie* copyright infringement but that there was a triable issue of fact
7  as to whether the conduct was of the sort authorized by the license agreements.  (Dkt. 474 at 22-
8  23, 24)
9      On Oracle's second motion for summary judgment, the Court considered evidence
10 relating to Oracle Database software and held that Rimini's conduct constituted copyright
11 infringement not authorized by any applicable license across the board.  (Dkt. 476 at 6-15)  The
12 Court also granted summary judgment in favor of Oracle on Rimini's statute of limitations and
13 laches defenses.  (Dkt. 476 at 16-24)
14     Oracle has attempted to negotiate with Rimini on the impact of the Court's summary
15 judgment rulings on the trial, including the implications of those rulings on other license
16 agreements between Oracle and other Rimini customers.  Rimini agreed by stipulation to
17 withdraw its license defense as to all copying of PeopleSoft software (Dkt. 550), but, as detailed
18 below, that leaves a number of license-related disputes unaddressed.
19     Oracle then proposed to Rimini that the parties stipulate to a process and briefing
20 schedule to decide the remaining license issues.  (Declaration of Kieran Ringgenberg in Support
21 of Motion to Determine Jury Instructions ("Ringgenberg Decl.") Ex. A)  Rimini declined to
22 agree to any process but asked to see the proposed jury instructions.  (*Id.* Ex. B)  Oracle provided
23 them and requested any objections and alternative proposals no later than two weeks later, by
24 May 22.  (*Id.* Ex. C)  On the last day, Rimini responded by stating that portions of the
25 instructions were unnecessary and, as to the rest, providing boilerplate objections with no
26 proposed alternative instructions.  (*Id.* Ex. D)
27
28

**ARGUMENT**

Rimini has not disputed that addressing the two jury instructions proposed by Oracle now, rather than ten days before trial, will benefit the Court and the parties. Oracle submits that these instructions are important, accurate, and warranted, and that any Rimini objection is meritless.

### I. Finalizing License Jury Instructions Further in Advance of Trial Will Benefit the Court, the Jury, and the Parties.

As this Court has explained, "[c]onstruing the scope of a license is principally a matter of contract interpretation." *Oracle U.S.A. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1086, 1090 (D. Nev. 2014); Dkt. 474 at 7. Where unambiguous terms of the license agreements are at issue, the Court must instruct the jury on their meaning. *See Parsons v. Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965) ("It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence."); *see also*, *e.g.*, *Rio Properties, Inc. v. Stewart Annoyances, Ltd.*, No. CV-S-01-0459-LRH-PAL (D. Nev.), Jury Instructions at Instruction No. 23 (Sept. 8, 2005) (instruction explaining unambiguous contract terms to the jury). In this case, with more than 200 licenses potentially at issue, instructing the jury on the meaning of key terms would avoid the extremely time-consuming and confusing exercise of putting before the jury the complete contents of all those agreements.

The Pretrial Order provides for submission of proposed jury instructions on September 4, 2014, ten days before trial is to begin. This schedule would require the Court to decide important issues relating to the summary judgment orders and other license construction issues in a narrow and busy window shortly before or during trial. This would also leave these issues unresolved until then, which would not allow the parties to tailor their trial preparation – and therefore trial presentation – to the rulings provided by the Court.

If these license construction issues are not resolved through jury instructions, then the parties would need to prepare and present to the jury materials from a large number of license agreements – more than 200 are at issue – noting their similarities and any differences. Judge Leen recognized this issue early on, and pushed the parties to agree on a "small enough universe

of licenses" to clarify the disputes between them and resolve them efficiently. (Status Conference Tr. March 29, 2011 at 24:21-25:9) Oracle did so by moving for summary judgment on exemplary license agreements and by crafting jury instructions addressing key licensing terms.

Oracle's first proposed instruction states the role of the license defense in the determination of the copyright infringement claim and the allocation of burden on the issue, based on the Court's summary judgment orders. It also clarifies that Rimini's license defense is based on agreements between Oracle and its customers, rather than agreements to which Rimini is a party, which is not in dispute.

Oracle's second proposed instruction explains the key license terms to the jury, using the interpretation provided by the Court in the summary judgment order for each of PeopleSoft, J.D. Edwards, and Siebel. It also clarifies that no license authorized copying of Oracle Database software, as the Court found.

Oracle submits these proposed jury instructions now because early presentation and resolution of these legal issues will allow greater focus at trial on the key factual issues as framed by the rulings, promoting efficiency and allowing the parties to complete the trial sooner than otherwise possible.

## II. The Proposed Instructions on PeopleSoft Are Necessary to Address Rimini's License Defense and Damages Claims.

A jury instruction on the meaning of the PeopleSoft licenses is necessary because, while Rimini has withdrawn its license defense as to copying PeopleSoft software, the meaning of the licenses is still at issue with regard to other sorts of infringement and on damages.

Rimini's withdrawal of its license defense excludes two categories of conduct which, so far as Rimini has claimed, are still subject to a license defense. <u>First</u>, Rimini has to date refused to withdraw its license defense as to preparation of derivative works from Oracle's copyrighted works and distribution of Oracle's copyrighted works.[2] (Ringgenberg Decl. Ex. E; Dkt. 550)

---

[2] Rimini has refused to withdraw its license defense as to this conduct even though the Court has already determined that the relevant licenses did not allow PeopleSoft software to be "used to

(Footnote Continued on Next Page.)

Each of those acts can independently give rise to liability and damages.  *See* 17 U.S.C. § 106.  Second, Rimini has refused to withdraw its license defense as to copying copyrighted PeopleSoft materials other than software, including PeopleSoft documentation.  Judge Leen ordered it "conclusively established" that Rimini had a complete copy of "Each of the separately registered versions of PeopleBooks [documentation] alleged in this action" in Rimini's software library and found that Rimini then "deleted the software library in January 2010" with knowledge it "contained evidence potentially relevant to Oracle's anticipated lawsuit."  (Dkt. 466 at 16-20)  Rimini has not withdrawn its license defense as to such copying of documentation.  (Dkt. 550)  Thus, the jury will need to be instructed as to what the PeopleSoft licenses permitted and what they did not.

In addition, Rimini and its expert have asserted that damages are appropriately measured by reference to the incremental costs saved by providing its support services in an infringing manner as opposed to a manner that would have been covered by a license.  Understanding what the licenses permitted is also relevant to rebut Rimini's claims that Rimini's infringement "provided little, if any value, to Rimini."  (Dkt. 523 at 6)  While Oracle disputes that Rimini's approach to damages is appropriate, if it is to be presented to the jury, the jury must be instructed on what the license agreements permitted and what they did not.

**III.   The Narrow Proposed Instruction as to Oracle Database Is Accurate and Helpful.**

The Court rejected Rimini's license defense as to Oracle Database on summary judgment. (Dkt. 476 at 6-16)  Because Rimini still asserts a license defense as to other software, the propose instructions clarify that no license authorized Rimini's copying of Oracle Database software.  That is true, as the Court found, and explaining this succinctly to the jury avoids confusion about whether Rimini's claimed license defense extends to Oracle Database.

---

(Footnote Continued from Previous Page.)

develop and test software updates for . . . other Rimini customers." (Dkt. 474 at 12–13)

### IV. The Proposed J.D. Edwards and Siebel Jury Instructions Are Fair and Accurate and Any Dispute as to Variations in the Licenses Only Confirms the Need to Decide These Issues in Advance of Trial.

As to J.D. Edwards and PeopleSoft, the proposed instructions address the license terms that the Court, on summary judgment, decided might provide Rimini a defense at trial. The instructions explain those terms to the jury as the Court already interpreted them. Rimini complains that the licenses do not provide a definition of the term "archival, back-up, or disaster recovery copy of the software." (Ringgenberg Decl. Ex. D) But the definition used in the jury instructions was explicitly stated by the Court in its summary judgment order interpreting nearly identical provisions in PeopleSoft licenses. The Court held that "a development environment - which is a modifiable (or already modified) copy of the software . . . is in complete contrast to an archival or backup copy of the software -- which is inherently an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost." (Dkt. No. 474 at 11) Rimini has identified no other specific term that the license instructions supposedly omit or incorrectly explain.

Rimini has claimed some of the licenses vary in their terms, but has failed to identify a single specific term that varies among licenses in a manner that would be material to Rimini's license defense. Rimini instead referred to the Siebel license agreement for Keynote Systems, a Rimini client for which Rimini claims to never have copied software onto Rimini's systems. (Dkt. 523 at 18 ¶ 22, Ex. E) Even if Rimini could identify a materially different term in a relevant customer's license agreement, it would only demonstrate the need to resolve disputes over license terms now, rather than submit any such disputes a mere 10 days before trial, to give the parties and Court time to decide the dispute and to give the parties a chance to prepare their trial presentations based on the Court's rulings.

### CONCLUSION

For the foregoing reasons, Oracle respectfully requests that the Court adopt the two appended jury instructions.

| | | |
|---|---|---|
| 1 | DATED:  May 28, 2015 | BOIES, SCHILLER & FLEXNER LLP |
| 2 | | |
| 3 | | By: /s/ Kieran Ringgenberg<br>Kieran Ringgenberg, Esq. (*pro hac vice*) |
| 4 | | 1999 Harrison Street, Suite 900<br>Oakland, CA 94612 |
| 5 | | Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460 |
| 6 | | kringgenberg@bsfllp.com |
| 7 | | *Attorneys for Plaintiffs*<br>Oracle USA, Inc., Oracle America, Inc., and |
| 8 | | Oracle International Corp. |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX

**PROPOSED INSTRUCTION 1: COPYRIGHT DEFENSES—LICENSE**

Where Defendants assert a license defense to copyright infringement, it is the Defendants' burden to prove by a preponderance of the evidence the existence of a specific license provision that authorized each individual copy or other infringing work that Rimini Street made. If Defendants satisfy this burden, then it becomes Oracle's burden to prove by a preponderance of the evidence that Rimini Street's copying or other infringement was not authorized by the express license.

Rimini Street did not have any licenses of its own with Oracle relevant to the issues you are deciding. Oracle enters into written license agreements with its customers that allow the customers to use copyrighted Oracle software, and have access to support materials for that Oracle software. Defendants claim that these customer license agreements authorized certain of the conduct that Oracle alleges constituted copyright infringement.

Authority: *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (a defendant accused of copyright infringement bears the burden of producing evidence of a license); *Michaels v. Internet Ent. Group, Inc.*, 5 F. Supp. 2d 823, 831 (C.D. Cal. 1998) (same); Order at 6, Feb. 13, 2014, Dkt. No. 474 ("As the party alleging the affirmative defense, Rimini has the initial burden to identify any license provision(s) that it believes excuses its infringement."); Order at 6, Aug. 12, 2014, Dkt. No. 476 (same).

**PROPOSED INSTRUCTION 2:  TERMS OF ORACLE'S LICENSE AGREEMENTS**

I will now instruct you regarding the terms of the license agreements in this case.  It is my duty as the judge to instruct you as to what the license agreements permitted and what they prohibited.  You must follow my instructions regarding the meaning of the license agreements.  You may not determine that the license agreements have some other meaning based on any evidence or argument that you have heard during the trial.

Oracle's license agreements allowed Oracle's customers – referred to as "licensees" – to copy the licensed software for use in connection with their own internal business operations, subject to certain limitations.  Oracle's license agreements also allowed Oracle's customers to hire third parties to provide maintenance and support in connection with the licensed software, again subject to certain prohibitions.  Any copying, preparation of derivative works, or distribution outside the scope of those limitations was prohibited by the license agreements.

I will now instruct you regarding the meaning of the license agreements for the three categories of software and support materials as to which Defendants assert a license defense in this case: PeopleSoft, Siebel, and J.D. Edwards.

With respect to PeopleSoft software and support materials:

The licenses prohibited third parties like Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's own computer systems.  This means that the licenses prohibited Rimini Street from, among other things, copying, preparing derivative works from, or distributing PeopleSoft software or support materials on Rimini Street's computer systems.  It also means the licenses prohibited Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft software or support materials in developing or testing software updates for other Rimini Street customers.

With respect to Siebel software and support materials:

1   For Rimini Street's Siebel customers, the meaning of the Siebel license agreements is as
2 follows:
3   • First, the licenses prohibited third parties like Rimini Street from copying Siebel software
4       or support materials other than to support the specific licensee's own internal data
5       processing operations on the licensee's computer systems.  This means that the licenses
6       prohibited Rimini Street from, among other things, copying Siebel software or support
7       materials to support another Rimini Street customer.
8   • Second, the licenses permitted third parties like Rimini Street to make a reasonable
9       number of copies of the Siebel software and support materials on Rimini Street's
10      computer systems exclusively for archival, emergency back-up, or disaster recovery
11      purposes.  This means that the licenses prohibited Rimini Street, among other things,
12      from modifying the software or copying Siebel software and support materials on Rimini
13      Street's computer systems for any non-archival, -backup, or -disaster recovery purposes.
14      An archival, back-up, or disaster recovery copy of the software is an unmodified copy of
15      the software for use in the event that the production copy of the software (the copy used
16      on a customer's systems) is corrupted or lost.
17
18  With respect to J.D. Edwards software and support materials:
19      For Rimini's J.D. Edwards customers, the meaning of the J.D. Edwards license
20 agreements is as follows:
21  • First, the licenses prohibited third parties like Rimini Street from copying J.D. Edwards
22      software or support materials other than to support the specific licensee's own internal
23      data processing operations on the licensee's computer systems.  This means that the
24      licenses prohibited Rimini Street, among other things, from copying J.D. Edwards
25      software or support materials to support other Rimini Street customers.
26  • Second, the licenses permitted Rimini Street to copy J.D. Edwards software and support
27      materials on Rimini Street's computer systems to the extent necessary for the licensee's
28

archival needs. This means that the licenses prohibited Rimini Street, among other things, from modifying the software or copying J.D. Edwards software and support materials on Rimini Street's computer systems for any non-archival purposes. An archival copy of the software is an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost.

- Third, the licenses prohibited Rimini Street from accessing the J.D. Edwards source code.

With respect to Oracle Database software:

No license permitted Rimini Street's copying of Oracle Database software.

Authority: Stipulation Regarding PeopleSoft License Agreements & Express License Defense; Order at 11, Feb. 13, 2014, Dkt. No. 474 ("[A]n archival or back-up copy of the software . . . is inherently an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost."); *id.* at 7 ("Construing the scope of a license is principally a matter of contract interpretation" (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989)); Order at 7, Aug. 12, 2014, Dkt. No. 476 (same); *id.* at 15–16 ("neither of Rimini's asserted licenses (the Developer License or its clients' OLSAs) expressly authorize its copying of Oracle's copyrighted Oracle Database software as a matter of law"); *Parsons v. Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965) ("It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence."); Cal. Civ. Code § 1639 (providing that when a contract is reduced to writing, the parties' intention is ascertained from the writing alone, if possible); *Freeman Investments, L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 n.4 (9th Cir. 2013) ("In California, interpretation of contract terms is a question of law for the court 'unless the interpretation turns upon the credibility of extrinsic evidence[.]'") (quoting *Parsons*, 402 P.2d at 842).