# EXHIBIT C

# BOIES, SCHILLER & FLEXNER LLP

1999 HARRISON STREET • SUITE 900 • OAKLAND, CA 94612 • PH. 510.874.1000 • FAX 510.874.1460

May 8, 2015

**VIA E-MAIL**

Robert Reckers, Esq.
Shook, Hardy & Bacon, LLP
JP Morgan Chase Tower
600 Travis Street, Suite 1600
Houston, TX 77002
rreckers@shb.com

    Re:    *Oracle USA, Inc. and Oracle International Corp. v. Rimini Street, Inc. and Seth Ravin*, No. 2:10-cv-00106 (D. Nev., filed Jan. 25, 2010)

Dear Rob:

    Enclosed please find two proposed jury instructions on Defendants' license defense and the meaning of the relevant license agreements, focusing on the key terms construed by the Court in its summary judgment rulings.

    As previously discussed, we believe it is in the interest of all parties to determine in advance of trial how the jury will be instructed on these issues, so that the parties can tailor their trial presentations to the instructions. Accordingly, we intend to submit proposed instructions to the Court well in advance of trial.

    If Defendants have any objections to the content of the instructions, or any alternative instructions on these issues, we would be happy to consider them in advance of a submission to the Court. We ask that you provide any such objections or alternative instructions by May 22.

                Very truly yours,

                /s/

                Kieran Ringgenberg

Encl.

**COPYRIGHT DEFENSES—LICENSE**

Where Defendants assert a license defense to copyright infringement, it is the Defendants' burden to prove by a preponderance of the evidence the existence of a specific license provision that authorized each individual copy or other infringing work that Rimini Street made. If Defendants satisfy this burden, then it becomes Oracle's burden to prove by a preponderance of the evidence that Rimini Street's copying or other infringement was not authorized by the express license.

Rimini Street did not have any licenses of its own with Oracle relevant to the issues you are deciding. Oracle enters into written license agreements with its customers that allow the customers to use copyrighted Oracle software, and have access to support materials for that Oracle software. Defendants claim that these customer license agreements authorized certain of the conduct that Oracle alleges constituted copyright infringement.

Authority: *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (a defendant accused of copyright infringement bears the burden of producing evidence of a license); *Michaels v. Internet Ent. Group, Inc.*, 5 F. Supp. 2d 823, 831 (C.D. Cal. 1998) (same); Order at 6, Feb. 13, 2014, Dkt. No. 474 ("As the party alleging the affirmative defense, Rimini has the initial burden to identify any license provision(s) that it believes excuses its infringement."); Order at 6, Aug. 12, 2014, Dkt. No. 476 (same).

### TERMS OF ORACLE'S LICENSE AGREEMENTS

I will now instruct you regarding the terms of the license agreements in this case. It is my duty as the judge to instruct you as to what the license agreements permitted and what they prohibited. You must follow my instructions regarding the meaning of the license agreements. You may not determine that the license agreements have some other meaning based on any evidence or argument that you have heard during the trial.

Oracle's license agreements allowed Oracle's customers – referred to as "licensees" – to copy the licensed software for use in connection with their own internal business operations, subject to certain limitations. Oracle's license agreements also allowed Oracle's customers to hire third parties to provide maintenance and support in connection with the licensed software, again subject to certain prohibitions. Any copying, preparation of derivative works, or distribution outside the scope of those limitations was prohibited by the license agreements.

I will now instruct you regarding the meaning of the license agreements for the three categories of software and support materials as to which Defendants assert a license defense in this case: PeopleSoft, Siebel, and J.D. Edwards.

With respect to PeopleSoft software and support materials:

The licenses prohibited third parties like Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's own computer systems. This means that the licenses prohibited Rimini Street from, among other things, copying, preparing derivative works from, or distributing PeopleSoft software or support materials on Rimini Street's computer systems. It also means the licenses prohibited Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft software or support materials in developing or testing software updates for other Rimini Street customers.

With respect to Siebel software and support materials:

For Rimini Street's Siebel customers, the meaning of the Siebel license agreements is as follows:

- First, the licenses prohibited third parties like Rimini Street from copying Siebel software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's computer systems. This means that the licenses prohibited Rimini Street from, among other things, copying Siebel software or support materials to support another Rimini Street customer.

- Second, the licenses permitted third parties like Rimini Street to make a reasonable number of copies of the Siebel software and support materials on Rimini Street's computer systems exclusively for archival, emergency back-up, or disaster recovery

2

purposes. This means that the licenses prohibited Rimini Street, among other things, from modifying the software or copying Siebel software and support materials on Rimini Street's computer systems for any non-archival, -backup, or -disaster recovery purposes. An archival, back-up, or disaster recovery copy of the software is an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost.

With respect to J.D. Edwards software and support materials:

For Rimini's J.D. Edwards customers, the meaning of the J.D. Edwards license agreements is as follows:

- First, the licenses prohibited third parties like Rimini Street from copying J.D. Edwards software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's computer systems. This means that the licenses prohibited Rimini Street, among other things, from copying J.D. Edwards software or support materials to support other Rimini Street customers.

- Second, the licenses permitted Rimini Street to copy J.D. Edwards software and support materials on Rimini Street's computer systems to the extent necessary for the licensee's archival needs. This means that the licenses prohibited Rimini Street, among other things, from modifying the software or copying J.D. Edwards software and support materials on Rimini Street's computer systems for any non-archival purposes. An archival copy of the software is an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost.

- Third, the licenses prohibited Rimini Street from accessing the J.D. Edwards source code.

With respect to Oracle Database software:

No license permitted Rimini Street's copying of Oracle Database software.

Authority: Stipulation Regarding PeopleSoft License Agreements & Express License Defense; Order at 11, Feb. 13, 2014, Dkt. No. 474 ("[A]n archival or back-up copy of the software . . . is inherently an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost."); *id.* at 7 ("Construing the scope of a license is principally a matter of contract interpretation" (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989)); Order at 7, Aug. 12, 2014, Dkt. No. 476 (same); *id.* at 15–16 ("neither of Rimini's asserted licenses (the Developer License or its clients' OLSAs) expressly authorize its copying of Oracle's copyrighted Oracle Database software as a matter of law"); *Parsons v. Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965) ("It is therefore

solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence."); Cal. Civ. Code § 1639 (providing that when a contract is reduced to writing, the parties' intention is ascertained from the writing alone, if possible); *Freeman Investments, L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 n.4 (9th Cir. 2013) ("In California, interpretation of contract terms is a question of law for the court 'unless the interpretation turns upon the credibility of extrinsic evidence[.]'") (quoting *Parsons*, 402 P.2d at 842).