1          UNITED STATES DISTRICT COURT
               DISTRICT OF NEVADA
2      BEFORE THE HONORABLE LARRY R. HICKS, DISTRICT JUDGE

3

4    ORACLE USA, INC., a Colorado      :
     corporation; ORACLE AMERICA,      :
5    INC., a Delaware corporation;     :
     and ORACLE INTERNATIONAL          :No. 2:10-cv-0106-LRH-PAL
6    CORPORATION, a California         :
     corporation,                      :
7                                      :
            Plaintiffs,                :
8                                      :
         vs.                           :
9                                      :
     RIMINI STREET, INC., a Nevada     :
10   corporation; and SETH RAVIN,      :
     an individual,                    :
11                                     :
            Defendants.                :
12   ───────────────────────────────── :

13

14              TRANSCRIPT OF STATUS CONFERENCE

15

16                    May 27, 2015

17                    Reno, Nevada

18

19

20

21

22

23
     Court Reporter:        Donna Davidson, RDR, CRR, CCR 318
24                          Certified Realtime Reporter
                            400 South Virginia Street
25                          Reno, Nevada  89501
                            (775) 329-0132

2

1                    A P P E A R A N C E S

2

     FOR THE PLAINTIFFS:
3
     KIERAN RINGGENBERG
4    Boies, Schiller & Flexner LLP
     1999 Harrison Street
5    Oakland, California 94612
     (510) 874-1000
6    Fax: (510) 874-1460
     kringgenberg@bsfllp.com
7
     RICHARD J. POCKER
8    Boies, Schiller & Flexner LLP
     300 South Fourth Street
9    Suite 800
     Las Vegas, Nevada 89101
10   (702) 382-7300
     Fax: (702) 382-2755
11   rpocker@bsfllp.com

12   WILLIAM A. ISAACSON
     KAREN L. DUNN
13   Boies, Schiller & Flexner LLP
     5301 Wisconsin Avenue NW
14   Washington, DC  20015
     (202) 237-2727
15
     THOMAS S. HIXSON
16   NITIN JINDAL
     Morgan Lewis & Bockius LLP
17   One Market Spear Street Tower
     San Francisco, California 94105
18   (415) 442-1000
     thomas.hixson@morganlewis.com
19   nitin.jindal@morganlewis.com

20   JAMES C. MAROULIS (By telephone)
     Oracle Corporation
21   500 Oracle Parkway
     Redwood City, California 94070
22   (650) 506-4846
     jim.maroulis@oracle.com
23

24

25

3

1

                    A P P E A R A N C E S (Continued)
2

     FOR THE DEFENDANTS:
3

     PETER STRAND (By telephone)
4    B. TRENT WEBB
     Shook, Hardy & Bacon L.L.P.
5    2555 Grand Boulevard
     Kansas City, Missouri 64108
6    (816) 474-6550
     Fax: (816) 421-5547
7    pstrand@shb.com
     bwebb@shb.com
8

     ROBERT H. RECKERS (By telephone)
9    Shook, Hardy & Bacon LLP
     600 Travis Street
10   Suite 3400
     Houston, Texas 77002
11   (713) 227-8008
     Fax: (713) 227-9508
12   rreckers@shb.com

13

     W. WEST ALLEN
14   Lewis Roca Rothgerber LLP
     3993 Howard Hughes Parkway
15   Suite 600
     Las Vegas, Nevada 89169
16   (702) 949-8230
     Fax: (702) 949-8364
17   wallen@lrrlaw.com

18

19

20

21

22

23

24

25

4

```
 1              RENO, NEVADA, MAY 27, 2015, 1:30 P.M.

 2                          --oOo--

 3                  P R O C E E D I N G S

 4

 5          THE COURT:  Good afternoon.  Have a seat,

 6   please.

 7          COURTROOM ADMINISTRATOR:  Today is the date and

 8   time for status conference in civil case

 9   2:10-cv-106-LRH-PAL, Oracle USA, Inc., and others, versus

10   Rimini Street, Inc., and others.

11          Counsel in the courtroom, can you please state

12   your appearances for the record.

13          MR. ISSACSON:  Bill Issacson, Your Honor, Boies,

14   Schiller & Flexner, for the Oracle plaintiffs.

15          THE COURT:  All right.  You can remain at

16   counsel table.  You don't have to make the trek up to the

17   podium.

18          MS. DUNN:  Karen Dunn, of Boies, Schiller &

19   Flexner, also for the plaintiffs.

20          MR. HIXSON:  Your Honor, Tom Hixson, with

21   Morgan, Lewis, also for plaintiffs.

22          MR. RINGGENBERG:  Kiernan Ringgenberg, Boies,

23   Schiller, for the plaintiffs.

24          MR. POCKER:  Your Honor, Richard Pocker, also

25   with Boies, Schiller, for the plaintiffs.
```

5

1                    THE COURT:  And welcome to all of you.

2                    MR. WEBB:  Good afternoon, Judge.  Trent Webb,

3      with Shook, Hardy & Bacon, for the defendants.

4                    MR. ALLEN:  And West Allen, with Lewis Roca

5      Rothgerber, for defendants.

6                    THE COURT:  All right.  Well, I welcome you to

7      the courtroom as well.  This is our first court hearing on

8      this case for as much as it's been -- oh, let's cover the

9      telephonic before we deal with the in-persons.

10                    MR. MAROULIS:  Good afternoon, Your Honor.  This

11     is James Maroulis, from Oracle, for plaintiffs.

12                    MR. JADAL:  Good afternoon.  This is Nitin

13     Jadal, from Morgan Lewis & Bockius, for plaintiffs.

14                    MR. STRAND:  Good afternoon, Your Honor.  My

15     name is Peter Strand.  I'm with Shook, Hardy & Bacon.  I'm

16     representing the defendants.

17                    MR. RECKERS:  Good afternoon, Your Honor.  This

18     is Robert Reckers, Shook, Hardy & Bacon, also for the

19     defendants.

20                    THE COURT:  Anyone else by telephone?

21                    All right.  Apparently not.

22                    Well, getting back to where I was, this is our

23     first hearing on this case, in spite of the fact that I

24     have no idea how many hours have been spent on this case,

25     certainly by those attending in the courtroom, an

6

```
1    incredible amount of hours in chambers as well with us.
2    But I know you spent time with Judge Leen.  And I've been
3    in touch with her.
4              But in any event, as you know, I issued an order
5    a week and a half ago outlining our trial schedule, as I
6    saw it, coming up in Las Vegas and also raising the thought
7    that the trial would probably move along much more quickly,
8    or significantly more quickly, were it moved up to Reno,
9    allowing more trial time.
10             So I -- that's why we're here.  So let's address
11   that first.  Let me hear from Oracle with regard to their
12   thoughts.
13             MR. ISSACSON:  Your Honor, Bill Issacson.  And
14   technically my -- along with Karen Dunn, my pro hac vice
15   motion is still pending.
16             But we think of this as primarily an issue
17   between -- with the Court and the defendants.  We're happy
18   to come to trial here.  And we are particularly happy to
19   have a trial that moves along more expeditiously and a
20   place where there's more time for trial.  But so we have no
21   reservations about having a trial here.
22             THE COURT:  Okay.  Thank you.
23             On behalf of defendant?
24             MR. WEBB:  Good afternoon, Your Honor.  This is
25   Trent Webb.  I'm with Shook, Hardy & Bacon.
```

7

1              As modified, the Las Vegas schedule for the

2    defendants works great.  Starting at noon on Monday, to

3    allow the Court and the court staff a more convenient way

4    to get to Las Vegas, works for us.  And as a matter of

5    fact, if there are other modifications to the schedule, as

6    currently outlined, in Las Vegas that makes sense for the

7    Court and the court staff, we'd be more than happy to

8    entertain that.

9              But for the following reasons, we really believe

10   that this trial should take place in Las Vegas.  And chief

11   among those reasons, Your Honor, is the named defendant,

12   Seth Ravin.

13             Mr. Ravin, as Your Honor is aware, has some

14   serious health issues, and they're fairly complicated, the

15   details of which I can't really get into in open court, but

16   we would be happy to provide additional details for Your

17   Honor if you believe that's to be necessary.  But for this

18   afternoon, suffice it to say they're complicated and

19   serious.

20             The problem is that not all healthcare

21   facilities are created equal, and not all doctors are

22   created equal.  Mr. Ravin has a long history of treatment

23   and a voluminous medical record.  He's very comfortable

24   with his existing physicians.  Going to a new place with

25   strange facilities and unknown doctors creates issues for

1     him and frankly for anyone in his position.

2              And couple that with being a named defendant in

3     a trial where the plaintiffs are seeking hundreds of

4     millions of dollars, and the very existence of his company

5     hanging in the balance, the combined effect of him going to

6     a strange and unknown treatment facility to take care of

7     his very serious issues at the same time he's spending

8     every day in court, I'm afraid creates a very stressful

9     environment, the results of which could be fairly serious.

10             So for that reason alone, even though certainly

11    we are cognizant of the convenience issues for the Court --

12    and going all the way to Vegas to try this case I'm sure is

13    not easy for you, your staff.  And we wish there was a

14    solution that worked for everyone.

15             But, unfortunately, just given Mr. Ravin's

16    unique medical situation and his prominent role in this

17    trial and the future of which really depends on his

18    existence in the company and personal wealth, I think that

19    militates strongly in favor of keeping it in Vegas.

20             In addition to that -- again, we think that is

21    probably the most important and probably significant reason

22    to keep it in Vegas.  In addition, Rimini's already made

23    some investment in preparing a trial site for the trial

24    team in the building that they currently have it for their

25    business.  What they've done is they've built out a

1      significant part of an entire floor to house the trial team

2      during this long trial.

3              If we were to move and have trial here, that

4      investment would be wasted, at least until such time as

5      they put employees there.  They would also have to make a

6      duplicate investment somewhere here to find trial space for

7      the team for this long trial.  And for that reason, that

8      double expense makes it a hardship on a company the size of

9      Rimini Street.

10             A third reason, Your Honor, witness travel.  The

11     flights to and out of Reno are certainly less frequent than

12     Las Vegas.  And there are no nonstops between the cities

13     where counsel and our witnesses are located and Reno.  And

14     that becomes somewhat of a problem.

15             For example, even today, Mr. Reckers was

16     planning to attend in person.  Due to the floods in Houston

17     he missed his flight and there were no other options to get

18     here.  Similarly, one of my clients, Jack Reilly, also had

19     problems getting here.

20             And, again, that is not dispositive.  I mean,

21     there are places that are tough to get to.  But weighing

22     the differences between Las Vegas and Reno, we certainly

23     think that's at least something that's relevant.

24             In particular, some of our staff had planned to

25     go home on the weekends, or at least one weekend, to see

 1    their family.  From Vegas there's a convenient flight to

 2    get them home at 7:00 on Friday night.  That's not

 3    available here.  So that may or may not allow that to

 4    happen.

 5              And, again, in the broad spectrum of things,

 6    Your Honor, that's not a big deal.  But when you have staff

 7    with little kids at home, that is a fairly big deal to

 8    them.  So that's another reason why we would like to keep

 9    it in Vegas.

10              And I could go on, Your Honor, if you would

11    like, or answer your questions.  I have additional reasons.

12    But I don't know if I need to cover all of those.

13              THE COURT:  No.  Obviously I anticipated that

14    that might be your response.  And I -- I don't have a

15    problem with that.

16              It also occurred to me in issuing that order

17    that it could be that everyone would be of the mind that

18    moving the trial along more quickly was paramount.  But I

19    respect that if you don't.  And I'll leave it in Las Vegas.

20              MR. WEBB:  Thank you, Your Honor.

21              THE COURT:  But I -- and you don't have any

22    problem with that modified schedule that we included in the

23    order; is that right?

24              MR. WEBB:  Absolutely not, Your Honor.

25              THE COURT:  All right.  Does Oracle have any

1   problem at all with the schedule that's been outlined for

2   Las Vegas?

3           MR. ISSACSON:  No, Your Honor.

4           THE COURT:  All right.  Well, it did occur to

5   me -- and what prompted all of this was that I had a lot of

6   trial time in Las Vegas in the last several months, and I

7   just realized that with a two- or three-day trial we can

8   accommodate coming in on a Sunday evening and leaving at

9   the end of the week.  But with a lengthy trial like this,

10  obviously we can't.

11          But it did occur to me as I looked at the

12  daytime schedules -- I had hoped not to end promptly at

13  2:00 in the afternoon, but I also know in dealing with the

14  jury that that's a lot of trial time for jurors.  So we may

15  see some tweaking to accommodate jurors more than anything

16  else.  But right now we'll stick with the plan.

17          MR. WEBB:  Thank you, Your Honor.

18          THE COURT:  Okay.  Are there any other issues

19  that -- well, let me ask counsel on the phone.

20          Counsel, those of you who are attending by

21  phone, is there anything that you would wish to add or

22  raise further with regard to this accomodation question?

23          MR. MAROULIS:  This is James Maroulis for

24  Oracle.  No, Your Honor.

25          THE COURT:  All right.  All right.  Well, that

1    will be the plan.  I'll confirm the trial in Las Vegas on

2    the schedule that's been posted in my order in document

3    number 552.  There may be some minor tweaking to that

4    schedule, depending on how we move along.  But essentially

5    that's what -- that's what will be the plan.

6           Are there any other matters that you would -- I

7    feel a little guilty seeing that everyone's traveled up

8    here just for this hearing.  Maybe it's a little bit of

9    payback.  But there may be something that someone would

10   like to raise.

11           MR. ISSACSON:  I can -- no issues for you to --

12   certainly to decide today.  We can bring you up to date on

13   a few things.

14           One question we did have in terms of the

15   mid-week schedule from 8:00 to 2:00 or later.  What would

16   be the Court's -- is there a pattern you have for breaks

17   during that 8:00 to 2:00 --

18           THE COURT:  Well, actually my normal trial

19   schedule is 8:30 in the morning until 5:30 or 5:15 in the

20   evening.  But because of the medical issue concerning

21   Mr. Ravin, I thought I'd use the concentrated approach that

22   some of my fellow judges use, which is basically an 8:00 to

23   2:00 schedule without a lunch break.  And what it is is a

24   snack break midway through the day.  And that's probably

25   what we will be doing.

1             MR. ISSACSON:  Okay.  That's what -- that's the

2     way we were reading it.  But I just wanted to make sure.

3             THE COURT:  All right.

4             MR. ISSACSON:  The -- in terms of the business

5     that the parties have been doing, defendant says he will

6     have seen and filed two motions in limine.  We've initiated

7     a process of meeting and conferring with the defendants on

8     a global list of motions in limine from both sides and with

9     the hopes of perhaps some of these can be resolved,

10    unlikely many of them can't, and then to agree on a

11    briefing schedule so that many of these motions which are

12    worth resolving earlier than the ordinary schedule of 10

13    days before trial --

14            THE COURT:  30.

15            MR. ISSACSON:  Right.

16            THE COURT:  30.  But I recognize that you may --

17    and I encourage if you know you have a limine, if you know

18    you can't resolve it between you and it needs to be filed

19    and briefed and heard by the Court, I encourage you -- and

20    there's no reply on limines, as you know.  There'll be

21    points and authorities opening it up and an appropriate

22    response, and we'll get to it.

23            But I strongly encourage moving those along.

24    I'm sure there's going to be a number.  And we need time

25    for them too.

1           MR. ISSACSON:  Right.  So we're going to meet

2    and confer with the other side and we're going to talk

3    about page limits.  And then I believe we're talking about

4    a briefing schedule that might end by late July or early

5    August, something like that.  And we'll work it out with

6    the other side and present it to you.

7           And then the other issue before trial would be

8    the issue of jury instructions, and specifically the issue

9    of the licenses.  Your Honor will recall that your summary

10   judgment rulings dealt with certain licenses and that there

11   are other licenses in the case.  And so -- and Your Honor

12   will recall that you've been informed we would meet and

13   confer about possibly how to streamline the trial with

14   respect to those license issues, potentially through jury

15   instructions.

16          And we have met and conferred and been unable to

17   resolve differences on this.  So Oracle will be filing a

18   motion asking the Court to consider those issues before

19   trial -- in advance of trial, in advance of when you would

20   ordinarily decide most of the jury instruction issues.  And

21   we'll be filing that I think as early as today and

22   suggesting to the Court that -- and we'll confer with them

23   about a briefing schedule for that, but suggesting to

24   the -- it will assist in the preparation for the trial and

25   moving the trial along if we can know where we stand on

1    various legal issues as to the interpretation of the

2    licenses.

3            THE COURT:  I appreciate your doing that,

4    obviously.  And your commenting on it reminded me I should

5    have reviewed the entirety of the pretrial order before I

6    came in because I don't recall what I said with regard to

7    timing on proposed jury instructions.

8            But the instructions are so sensitive in a case

9    like this, the earlier you can get them in and -- well,

10   first of all, let me say this.  I really hope that you can

11   agree upon the large bulk of instructions.  I recognize

12   there's going to be some where there will be disagreement.

13   But I certainly encourage, recognizing all the -- all the

14   issues that are present in this case, that counsel are

15   working on those instructions early or attempting to

16   resolve them to every possible extent that you can.

17           And if you can't resolve them, I need to see why

18   they're not being resolved.  I need the authorities in

19   support of each party's position; I need each party's

20   proposed instruction, if there's not agreement on a certain

21   issue; and I need those probably earlier than what my

22   pretrial order says.

23           MR. ISSACSON:  All right.  We will talk to the

24   other side also about the global -- all the pretrial

25   instructions -- all the jury instructions and certainly

1     will endeavor to agree on, you know, the most common ones
2     that the Court would give.
3           And then I did have a question then about jury
4     selection if you've got any -- anything that you would say
5     to the lawyers beforehand about how you typically handle
6     jury selection?
7           THE COURT:  Yeah.  My jury selection process is
8     essentially all voir dire is framed by the Court.  So I
9     will take requested voir dire questions.  I usually find
10    that they're broader and in more detail than is necessary.
11    And I'll attempt to work through everything that I feel
12    that's been raised as an issue in the proposed questions.
13          I'll use the questions themselves when -- I
14    encourage you to frame broader questions rather than
15    narrower ones because my experience is that when you have
16    jurors in the box they have had so little exposure,
17    particularly to patent-related cases, copyright-related
18    cases, IT cases that just general subject matters that
19    would catch the juror's attention and likely give them
20    something to respond on is the more effective way of moving
21    through the voir dire than trying to go through the
22    specific detailed questions that I sometimes receive from
23    either side.
24          But I will ask the questions.  I will attempt to
25    cover every subject matter that I feel is appropriate

1    that's been raised in the requested questions.  I'll use

2    some of those questions -- I like the ones that are broader

3    rather than narrower.

4            I do not like to ask jurors about what are your

5    feelings about this concept or that concept because that

6    invites having to go through it with every juror and tends

7    to make jurors uncomfortable.  And the first jurors you

8    direct those kinds of questions to usually feel like

9    they've been put on the spot somehow.

10           So it's not a comfortable process.  And I don't

11   like to use those kind of questions.  I like to use tighter

12   questions, "Have you ever worked in an IT department?

13   Raise your hand."  Or worked on -- how many of you are

14   involved with anything that has to do with da, da, da, da.

15   And I'll go through each one, see what they have to say.  I

16   find that works very well in jury selection.

17           And I will also confer with counsel at sidebar

18   or when the jury's excused, either during the breaks --

19   we'll have to establish that break schedule because, as

20   I've said, that's not my normal trial schedule.

21           But in any event, I will meet with counsel --

22   I'll meet at sidebar if -- probably in most cases.  And if

23   you have further questions that you'd like to have asked

24   individual jurors or to the jury in general, I'll consider

25   those.

1           And it seems like I've had, from my view, good

2    success doing it that way.  I haven't had a problem, even

3    on the more technical cases.

4           And, of course, I will allow counsel to make a

5    record on anything they're not happy with.  I take no

6    insult at that.  I just don't want to waste time doing it.

7           MR. ISSACSON:  All right.  Thank you, Your

8    Honor.

9           THE COURT:  Yes, Mr. Webb?

10          MR. WEBB:  Just one last thing.  Just for

11   clarity, Judge.  Our understanding, I believe it's Oracle's

12   understanding, as well, that if we have an evidentiary

13   issue or an important dispute that we need resolution on

14   early, we should go ahead and file those, alert Your Honor

15   to the fact that these are important and need to be ruled

16   upon before we do our typical motions in limine that,

17   hopefully we can agree on them but in the unlikely event we

18   can't, we'll file those at a later time.

19          And by filing them early, we're not tolling the

20   decision, we're highlighting the importance so Your Honor

21   can make a decision relatively early.  Is that the --

22          THE COURT:  Well, I approve of that.  I approve

23   of every bit of heads-up that you can give the Court.  And

24   I can tell you that we will be working on that from the

25   get-go.  I approve of that without question.

 1              Coming back to trial and trial process, I do not

 2     like to break up jury time for legal arguments.  I am very

 3     juror oriented.  My view is you -- a trial judge's

 4     principal role is to streamline the evidence for the jury.

 5     Not that that's the Court's role, but I'm talking about the

 6     trial process.

 7              MR. WEBB:  Sure.

 8              THE COURT:  So I'm loathe to excuse the jury for

 9     a legal argument that could be raised in the morning before

10     we get started, in the evening after we've shut down, or

11     during some break during the case, particularly if it's not

12     going to unnecessarily extend the break.

13              So I am not a judge who wants an objection

14     raised with an expectation that I'm going to excuse the

15     jury while it be argued.  I don't like to do that.  I don't

16     like legal arguments being presented in front of the jury

17     either.

18              So my approach to that is to encourage any

19     dispute or conflict that's coming up over an issue to be

20     identified to me ahead of time, particularly during trial,

21     and we'll set a time to address it without wasting juror

22     time.

23              MR. WEBB:  Understood, Your Honor.  Thank you.

24              THE COURT:  Okay.

25              MR. ISSACSON:  I guess one last question, Your

1    Honor.  And perhaps it can't be answered today.  The

2    parties have obviously expressed different opinions about

3    the length of the trial.  And maybe your rulings before

4    trial will have some effect on that.  But I don't know if

5    there's going to become a point where you'll be accessing

6    the case and set any time limits on the trial.

7              We've obviously taken the view that this trial

8    should be done in three weeks or less, and we think the

9    plaintiffs can put on a case that's consistent with that.

10             But I don't know what the Court's -- if the

11   Court has a view as to how it's going to approach these

12   issues as we move forward.

13             THE COURT:  I haven't found that it was

14   necessary to put time caps or time period caps on either

15   trials or portions of a case, for example, opening or

16   closing statements or anything else.

17             But I would consider doing it.  Because I'm --

18   obviously with a case like this, where we have some -- such

19   a volume as we have, it could be that this would be the

20   case where I would feel that's appropriate.  So I'm just

21   going to leave it open.  I would obviously let anyone know

22   when we're headed that way.

23             Essentially Oracle's estimated three weeks;

24   Rimini's five to seven.  I have a hard time imagining how

25   this case should go seven weeks, I'll tell you that right

1    now.  It looks to me like it's somewhere between three to

2    four weeks, and just my rough assessment based on what I

3    know about the case.

4            But another point I would make relative to trial

5    is that when the issue of evidence is not authenticity, in

6    other words, the record, the issue, the testimony, whatever

7    it is, is undeniably authentic, the question usually just

8    becomes a ruling on the law of evidence or a ruling on

9    relevancy or, in some cases, 403 rulings where you're just

10   dealing with cumulative evidence or evidence that is not

11   essential to the case.

12           I like to see counsel to be able to stipulate to

13   authenticity, and then I'll hear the legal arguments and

14   I'll hear those as we move through the case, usually at

15   times outside the presence of the jury, before they've

16   started or after they've gone home.  And I'll certainly

17   attempt -- it's clear to me we need -- we will be having

18   some hearings on this case between now and trial time,

19   depending on when these motions and so forth are presented.

20   But that's how I view it.

21           MR. ISSACSON:  All right.  Thank you.  And

22   obviously the lawsuit involves two businesses, so hopefully

23   we'll have discussions about stipulations about business

24   records as well as authenticity.

25           THE COURT:  Yeah.  You know, and I would say too

1   I appreciate the quality of counsel that I've seen in this

2   case on both sides.  But I think you know, and it's

3   certainly my observation from the bench, that the finer

4   points of evidentiary objections and foundational questions

5   for admission of records and everything else, when

6   authenticity is not at issue, can frustrate a jury faster

7   than anything I've seen in litigation practice.  It's

8   damaging to whichever party is identified as being

9   responsible for that when it becomes excessive.

10         And, you know, I think I'm a fair judge.  I try

11  and give everyone their fair presentation of the evidence.

12  But it's hard to hold back on that frustration when you see

13  someone who is stretching a case out more than it needs to

14  be stretched out.

15         But -- and if anyone feels that I am showing my

16  frustration at an inappropriate time, I take no offense at

17  being reminded either.  But my view is we get these trials

18  in, we have certain issues that are obviously tantamount to

19  the parties.  Those need to be presented.  The evidence

20  needs to go to them.  The jury needs to be tracking with

21  all of that without anyone getting sidetracked.  And that's

22  what I hope I can say has happened at the end of a trial.

23         MR. ISSACSON:  Thank you, Your Honor.  That's

24  helpful.

25         THE COURT:  All right.  Yes?

1              MR. WEBB:  Nothing further from the defendants,

2     Your Honor.  Thank you.

3              THE COURT:  All right.  Is there anything

4     further from any of our counsel appearing by telephone?

5              MR. MAROULIS:  This is James Maroulis, Your

6     Honor, for the plaintiffs.  No.

7              THE COURT:  All right.

8              MR. STRAND:  Peter Strand for the defendants.

9     Nothing from this side either, Your Honor.

10             THE COURT:  All right.  Well, I appreciate

11    everyone's attention.  I -- you do have a settlement

12    conference coming up on this sometime soon, don't you?

13             MR. WEBB:  Next week, Your Honor.

14             THE COURT:  I'm going to wish you luck on that.

15    Judge Leen reminded me that was coming up.  But, again, you

16    know, from what I've seen of these cases, they are better

17    settled than litigated.  Look how long this case has taken

18    already and how much longer it's likely to go if you go to

19    trial and someone gets burned one way or the other.  We're

20    looking at appeals that go on ad nauseam.  So I strongly

21    urge very serious attempt at settlement.

22             But all of that stated, I'll bid you ado.  Have

23    pleasant flights back to wherever you're flying back to.  I

24    hope you are able to make connections.  And we'll try this

25    case in Las Vegas.

24

1          Court is adjourned.

2          COURTROOM ADMINISTRATOR:  Please rise.

3     (The proceedings concluded at 2:00 p.m.)

4                    *   *   *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

1                              -o0o-

2          I certify that the foregoing is a correct

3      transcript from the record of proceedings

4      in the above-entitled matter.

5

6                                                    6/8/15

7      Donna Davidson, RDR, CRR, CCR #318        Date
       Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25