# EXHIBIT V

```
                UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

      BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

ORACLE CORPORATION, ET AL.  )      JURY TRIAL
                            )
        PLAINTIFFS,          )      NO. C 07-01658 PJH
                            )
  VS.                        )      VOLUME 6
                            )
SAP AG, ET AL.,             )      PAGES 947 - 1187
                            )
        DEFENDANTS.          )      OAKLAND, CALIFORNIA
_____)      TUESDAY, NOVEMBER 9, 2010
```

**CERTIFIED COPY**

### TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
FOR PLAINTIFFS:         BINGHAM MUCCUTCHEN LLP
                        THREE EMBARCADERO CENTER
                        SAN FRANCISCO, CALIFORNIA  94111-4607
                 BY:    ZACHARY J. ALINDER,
                        HOLLY A. HOUSE,
                        GEOFFREY M. HOWARD,
                        DONN P. PICKETT, ATTORNEYS AT LAW

                        BOIES, SCHILLER & FLEXNER LLP
                        1999 HARRISON STREET, SUITE 900
                        OAKLAND, CALIFORNIA  94612
                 BY:    DAVID BOIES,
                        STEVEN C. HOLTZMAN, ATTORNEYS AT LAW




            (APPEARANCES CONTINUED NEXT PAGE)




REPORTED BY:            RAYNEE H. MERCADO, CSR NO. 8258
                        DIANE E. SKILLMAN, CSR NO. 4909
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530*

ORACLE USA, INC., et al. v. SAP AG, et al. - Jury Trial - Volume 6 - November 9, 2010

SHEET 14

---

**1051**

MEYER - CROSS / MITTELSTAEDT

1  THEN SINCE I BEEN IN A NEW FIRM, THOSE FEES HAVE PROBABLY BEEN
2  ABOUT 1.5 MILLION.
3  Q. OVER WHAT TIME PERIOD?
4  A. GOING BACK TO, I THINK, SUMMER OF 2007.
5  Q. OKAY.
6       MOST OF YOUR TESTIMONY WITH ORACLE'S COUNSEL WAS
7  ABOUT THE HYPOTHETICAL NEGOTIATION AND THE ROYALTY THAT YOU SAY
8  WOULD BE PAID AS A RESULT OF THE HYPOTHETICAL NEGOTIATION; IS
9  THAT CORRECT?
10 A. I WOULD SAY MOST OF THE TESTIMONY WAS ABOUT THE FAIR MARKET
11 VALUE OF THAT LICENSE; THAT'S CORRECT.
12 Q. THE FAIR MARKET VALUE THAT YOU ARRIVE AT BY CONDUCTING A
13 HYPOTHETICAL NEGOTIATION, CORRECT?
14 A. I AGREE WITH THAT, YES.
15 Q. IN OTHER COPYRIGHT CASES, YOU HAVE USED ANOTHER METHOD, THE
16 METHOD OF LOST PROFITS AND INFRINGERS' PROFITS; IS THAT CORRECT?
17 A. I BELIEVE IN THE PAST IN THOSE CIRCUMSTANCES, OTHER
18 CIRCUMSTANCES, I HAVE USED THOSE METHODS.
19 Q. AND, INDEED, IN THIS CASE, WHEN YOU DID YOUR REPORT, YOU
20 INCLUDED CALCULATIONS ABOUT THOSE TYPES OF PROFITS, PROFITS
21 BASED ON ACTUAL LOSSES, CORRECT?
22 A. I INCLUDED THOSE CALCULATIONS AND TOOK THE POSITION IN MY
23 REPORT THAT THOSE WERE NOT THE APPROPRIATE CALCULATIONS, BUT I
24 DID INCLUDE THOSE CALCULATIONS.
25 Q. ACTUALLY, YOU SAID THAT THOSE CALCULATIONS COULD BE DONE IN

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

**1052**

MEYER - CROSS / MITTELSTAEDT

1  BOTH WAYS, BASED ON ACTUAL SALES AND BASED ON THE HYPOTHETICAL
2  NEGOTIATION, AND IT WOULD BE FOR THE COURT TO CONSIDER BOTH
3  WAYS.
4       ISN'T THAT WHAT YOU SAID?
5  A. THAT'S NOT CORRECT. THERE'S TWO -- TWO RESPONSES. FIRST
6  OFF, MY REPORT -- I THINK IT'S PARAGRAPH 358, BUT WE CAN LOOK
7  THAT -- CLEARLY SAYS THAT IN THESE CIRCUMSTANCES, THE PROPER
8  METHOD IS THE FAIR MARKET VALUE OF THE LICENSE. IT'S IN MY
9  REPORT THAT I FILED IN THE CASE. AND THEN IN MY DEPOSITION, I
10 GAVE LOTS OF TESTIMONY OVER, I THINK, A THOUSAND PAGES OF
11 TRANSCRIPT, THREE DAYS, AND I SAID CLEARLY THAT THE APPROPRIATE
12 METHOD IN THIS CASE WAS FAIR MARKET VALUE OF THE LICENSE.
13 Q. OKAY. BUT DIDN'T YOU ALSO SAY THAT YOU'VE DONE THE
14 CALCULATIONS FOR THE COURT TO CONSIDER BOTH WAYS AND THAT YOU'VE
15 MADE YOUR RECOMMENDATION?
16 A. I BELIEVE I SAID I DID THE CALCULATIONS FOR THE COURT, AND I
17 WOULD LEAVE IT UP TO THE COURT AND THE JURY TO DECIDE.
18 Q. OKAY. THAT YOU HAD DONE THE CALCULATIONS BOTH WAYS,
19 CORRECT?
20 A. I'LL BE CLEAR. I DID A FAIR MARKET VALUE OF THE LICENSE, I
21 DID THE LOST-PROFIT CALCULATION. IN MY REPORT, I TOOK A CLEAR
22 POSITION WHAT WAS APPROPRIATE -- AND I SAID THE SAME THING IN
23 DEPOSITION. I MENTIONED IN DEPOSITION THAT THE COURT WOULD
24 OBVIOUSLY HEAR ABOUT THE LOST-PROFIT CALCULATIONS, AND THE COURT
25 COULD DECIDE.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

**1053**

MEYER - CROSS / MITTELSTAEDT

1  Q. MY QUESTION IS ONLY YOU SAID THAT YOU'VE DONE THE
2  CALCULATIONS FOR THE COURT TO CONSIDER BOTH WAYS, CORRECT?
3  A. I DON'T -- I DON'T WANT TO QUIBBLE WITH YOU, BUT I CLEARLY
4  SAID WHAT WAS PREFERRED AND -- AND IN MY DEPOSITION, I BELIEVE I
5  SAID THAT I WOULD BRING TO THE COURT BOTH POSITIONS, AND THE
6  COURT CAN DECIDE.
7  Q. YOU FILED YOUR REPORT BEFORE SAP'S EXPERT, CORRECT?
8  A. THAT'S CORRECT.
9  Q. AND IT WAS IN THAT REPORT THAT YOU INCLUDED CALCULATIONS ON
10 LOST PROFITS AND INFRINGERS' PROFITS BASED ON ACTUAL SALES,
11 CORRECT?
12 A. THOSE WERE INCLUDED IN THE REPORT WITH THE SAME COMMENT I
13 MADE A MOMENT AGO, ALONG WITH A CLEAR POSITION THAT THE
14 PREFERRED METHOD WAS THE FAIR MARKET VALUE OF THE LICENSE.
15 Q. OKAY. LET'S JUST REVIEW, IF WE CAN --
16       MAY I APPROACH THE EASEL?
17       THE COURT: CERTAINLY.
18 BY MR. MITTELSTAEDT:
19 Q. LET'S JUST SEE IF WE CAN SUMMARIZE, AND I WILL PUT -- CAN
20 YOU SEE THIS, SIR? SHOULD I PUT IT BACK A LITTLE BIT?
21    (SOTTO VOCE DISCUSSION BETWEEN THE WITNESS AND COUNSEL.)
22       THE COURT: ALL RIGHT. CAN THE JURY SEE THAT AS
23 WELL?
24 BY MR. MITTELSTAEDT:
25 Q. OKAY. SO THE TWO ASPECTS OF THE FIRST METHOD ARE ORACLE'S

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

**1054**

MEYER - CROSS / MITTELSTAEDT

1  LOST SUPPORT PROFITS, RIGHT?
2  A. ON LOST PROFITS.
3  Q. YES.
4  A. YEAH, THAT WAS ONE PIECE.
5  Q. WE'RE IN THE REAL WORLD, NOT IN THE HYPOTHETICAL WORLD YET.
6  WE'LL COME TO THE HYPOTHETICAL WORLD.
7       MR. PICKETT: OBJECTION, YOUR HONOR. HIS
8  CHARACTERIZING THE MEASURES -- ALTERNATIVE MEASURES OF DAMAGES
9  AS "REAL WORLD" AND, I THINK, "HYPOTHETICAL WORLD" IS NOT
10 APPROPRIATE. UNDER THE LAW, AS YOUR HONOR HAS PREVIOUSLY RULED
11 IN THIS CASE, THESE ARE -- BOTH METHODS ARE ACCEPTABLE FOR
12 ACTUAL DAMAGES.
13       THE COURT: COUNSEL, I WILL INSTRUCT THE JURY AS TO
14 THE LAW.
15       OBJECTION OVERRULED.
16 BY MR. MITTELSTAEDT:
17 Q. OKAY. SO ONE ASPECT OF IT IS ORACLE'S LOST SUPPORT PROFITS,
18 RIGHT?
19 A. THAT'S ONE CALCULATION.
20 Q. AND THOSE ARE THE ORACLE CUSTOMERS WHO LEFT ORACLE BECAUSE
21 OF TOMORROWNOW AND OBTAINED MAINTENANCE OR SUPPORT SERVICES FROM
22 TOMORROWNOW?
23 A. THAT'S CORRECT.
24 Q. AND THE OTHER PART OF THIS CALCULATION ARE THE PROFITS THAT
25 SAP GAINED FROM CUSTOMERS WHO LEFT ORACLE AND BOUGHT SOFTWARE

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

ORACLE USA, INC., et al. v. SAP AG, et al. - Jury Trial - Volume 6 - November 9, 2010

---

1055

MEYER - CROSS / MITTELSTAEDT

1  FROM SAP AS A RESULT OF TOMORROWNOW'S INFRINGEMENT, CORRECT?
2  A. THAT'S CORRECT.
3  Q. AND WE CALL THOSE -- LET'S JUST CALL THOSE SOFTWARE PROFITS
4  OF SAP. AND THEN I'LL PUT "MEYER," "M," AND "CLARKE,"
5  MR. CLARKE BEING SAP'S EXPERT. AND LET'S FOCUS ON THE --
6  YOU'D --
7      YOU CALCULATED SUPPORT PROFITS FOR TWO TIME PERIODS,
8  THE TOMORROWNOW TIME PERIOD AND THEN A LONGER TIME OUT TO 2015;
9  IS THAT CORRECT?
10 A. RIGHT, TO REFLECT THE ONGOING IMPACT.
11 Q. AND THE -- LET'S TAKE YOUR NUMBER FOR THE TOMORROWNOW
12 PERIOD. THAT NUMBER WAS WHAT, IF YOU RECALL?
13 A. I BELIEVE FOR THE PLAINTIFF IN THE ACTION RIGHT NOW,
14 $36 MILLION.
15 Q. YOUR NUMBER?
16 A. RIGHT. 36 MILLION THROUGH TOMORROWNOW PERIOD, RIGHT?
17 Q. OKAY. WASN'T IT ACTUALLY ABOUT 82 MILLION?
18 A. NO. I THINK ALL WE'RE TALKING ABOUT NOW IS OIC IS THE ONLY
19 PLAINTIFF LEFT IN THE CASE, SO IT'S 36.
20 Q. AND MR. CLARKE CAME UP WITH ABOUT THE SAME NUMBER, RIGHT?
21 A. I DON'T THINK THAT'S CORRECT. I THINK HIS COMPARABLE
22 NUMBER -- I HAVE MY WORK PAPERS -- IS, LIKE, 19 MILLION.
23 Q. OKAY. OKAY. YOU SAY 19 MILLION, I'M GOING TO PUT ABOUT
24 32 MILLION.
25 A. THAT WOULD NOT BE CORRECT, THOUGH.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

1056

MEYER - CROSS / MITTELSTAEDT

1  Q. OKAY.
2  A. SO HIS NUMBER -- IF WE'RE TALKING ABOUT THE PLAINTIFF, AS I
3  UNDERSTAND IT THAT'S STILL IN THE LAWSUIT, HIS NUMBER IS 19
4  MILLION, AND MY NUMBER'S 36 MILLION THROUGH OCTOBER 2008 AND
5  121 MILLION THROUGH 2015.
6  Q. OKAY. AND WHAT PIECE OF PAPER ARE YOU REFERRING TO?
7  A. I'M JUST LOOKING AT SOME OF MY NOTES FROM DOING MY WORK IN
8  THE CASE. AND I'VE GONE BACK AND LOOKED AT THE PLAINTIFF. THIS
9  IS, OIC IS THE PLAINTIFF, AND I GUESS THE PLAINTIFF IN THE
10 LAWSUIT ON THESE CLAIMS.
11 Q. OKAY. WHAT DO YOU HAVE IN FRONT OF YOU, SIR?
12 A. I HAVE A LITTLE BINDER. IT'S CALLED "LOST PROFITS AND
13 INFRINGERS' PROFITS."
14 Q. AND THAT INCLUDES YOUR NOTES USED FOR TODAY'S TESTIMONY?
15 A. RIGHT. I WAS TRYING TO RECONCILE TO THE CURRENT PLAINTIFFS
16 BECAUSE, AS YOU KNOW, THEY'RE DIFFERENT THAN IN MY REPORT
17 BECAUSE OF SOME OF THE RULINGS BY THE COURT.
18     MR. MITTELSTAEDT: MAY WE HAVE A COPY OF THAT, YOUR
19 HONOR?
20     THE COURT: YOU SHOULD HAVE ALREADY BEEN PRODUCED --
21 HAS IT -- WAS IT NOT PRODUCED PREVIOUSLY?
22     MR. PICKETT: NEVER REQUESTED, YOUR HONOR.
23     THE COURT: ALL RIGHT. YES, YOU CAN CERTAINLY LOOK
24 AT IT, BUT I'D LIKE YOU TO CONTINUE WITH YOUR EXAMINATION.
25     MR. MITTELSTAEDT: OH. YES.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

1057

MEYER - CROSS / MITTELSTAEDT

1  Q. OKAY. SO YOU SAY IT'S 36 FOR THE SHORTER TIME PERIOD, 120
2  FOR THE LONGER TIME PERIOD?
3  A. 121.
4  Q. 121. AND THESE ARE ALL IN MILLIONS.
5      OKAY. LET'S COME DOWN TO THE SOFTWARE PROFITS OF SAP
6  AS A RESULT OF THE INFRINGEMENT. WHAT -- WHAT NUMBER DO YOU
7  COME UP WITH THERE?
8  A. I MENTIONED TWO NUMBERS TODAY. I BELIEVE I MENTIONED
9  288 MILLION. AND I MENTIONED, I THINK, 236.
10 Q. OKAY. AND WHAT NUMBER DOES MR. CLARKE COME UP?
11 A. I BELIEVE HIS NUMBER -- AND YOU GAVE IT TO US IN THE
12 OPENINGS -- I THINK HE'S DOWN TO TWO CUSTOMERS. AND I THINK
13 IT -- I THINK I HAVE IT IN HERE.
14     ONE MOMENT. (REVIEWING DOCUMENTS.)
15     BELIEVE RIGHT NOW, IT'S TWO CUSTOMERS. WITH
16 INTEREST, $2.3 MILLION.
17     (CONTINUED NEXT PAGE; NOTHING OMITTED.)
18
19
20
21
22
23
24
25

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 451-7530

---

1058

MEYER - CROSS / MR. MITTELSTAEDT

1  BY MR. MITTELSTAEDT:
2  Q. OKAY.
3      SO YOUR TOTAL, YOUR TOTAL FOR THOSE TWO CATEGORIES
4  RANGES FROM WHAT, A LOW OF ABOUT IT 272 TO A HIGH OF ABOUT
5  400 MILLION; IS THAT RIGHT?
6  A. IT WAS 400 OR 408, BUT WHATEVER. IT'S CLOSE ENOUGH.
7  Q. OKAY. AND MR. CLARKE'S, AS YOU SAY, IS ABOUT 21,
8  22 MILLION?
9  A. 21, THAT'S FINE.
10 Q. OKAY.
11     MR. MITTELSTAEDT: CAN WE GIVE THIS A NUMBER JUST
12 FOR THE RECORD?
13     THE COURT: ALL RIGHT. WE WILL CALL IT NEXT IN
14 ORDER.
15     DO WE HAVE A NEXT IN ORDER?
16     THE CLERK: THEIR LIST IS LIKE THIS BIG
17 (INDICATING).
18     MR. MITTELSTAEDT: WE WILL DO IT AT THE BREAK.
19     THE COURT: LET'S JUST GIVE IT A LETTER. HOW ABOUT
20 DEFENDANTS' B FOR NOW.
21     (DEFENDANTS' EXHIBIT B MARKED FOR
22     IDENTIFICATION)
23 BY MR. MITTELSTAEDT:
24 Q. OKAY.
25     AND, SIR, YOUR CALCULATIONS THAT WE HAVE JUST GONE

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

ORACLE USA, INC., et al. v. SAP AG, et al. - Jury Trial - Volume 6 - November 9, 2010

SHEET 15

---

**1059**

MEYER - CROSS / MR. MITTELSTAEDT

1  OVER VERY BRIEFLY ARE BASED ON THE NUMBER OF ACTUAL CUSTOMERS
2  THAT -- IN THE FIRST CATEGORY, THE ACTUAL CUSTOMERS WHO WENT
3  FROM ORACLE SUPPORT TO TOMORROWNOW SUPPORT AS A RESULT OF
4  TOMORROWNOW, CORRECT?
5  A.  THAT'S CORRECT.
6  Q.  AND THE SECOND CATEGORY ARE THE COMPANIES THAT WENT FROM
7  ORACLE TO SAP TO BUY SOFTWARE AS A RESULT OF TOMORROWNOW,
8  CORRECT?
9  A.  IT WOULD BE THE -- WHATEVER IS REPORTED BY SAP.  BUT IT'S
10 ADDITIONAL REVENUES AND PROFITS THAT WERE GAINED BY WORKING IN
11 CONJUNCTION WITH THE TOMORROWNOW OFFERING.  SO IT'S THAT
12 COMBINED OFFERING.
13 Q.  OKAY.
14     AND TO COME UP WITH THOSE FIGURES, YOU LOOKED AT
15 SOME OF THE CUSTOMERS AND YOU DECIDED, AS BEST YOU COULD BASED
16 ON THE AVAILABLE EVIDENCE, WHY A CUSTOMER LEFT ORACLE FOR
17 TOMORROWNOW AND WHY A CUSTOMER LEFT ORACLE FOR SAP, RIGHT?
18 A.  IN A GENERAL SENSE, THAT'S CORRECT.
19 Q.  OKAY.
20     LET ME ADD TO THAT CHART THE NUMBER OF CUSTOMERS
21 THAT, BASED ON YOUR WORK, ARE IN THE FIRST CATEGORY.  THE ONES
22 THAT LEFT ORACLE FOR SUPPORT BY TOMORROWNOW AS A RESULT OF
23 TOMORROWNOW.
24     WHAT NUMBER DID YOU COME UP WITH, NUMBER OF
25 CUSTOMERS?

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

**1060**

MEYER - CROSS / MR. MITTELSTAEDT

1  A.  THAT HAVE LEFT.  SO IF WE ARE JUST TALKING NOW ABOUT THE
2  REMAINING PLAINTIFF, IN MY LOST PROFIT NUMBER OF 36, I HAVE 253
3  CUSTOMERS.
4  Q.  253 CUSTOMERS.
5     AND MR. CLARKE HAS A SOMEWHAT LOWER NUMBER?
6  A.  I BELIEVE IT'S AROUND 170.  SOME OF THE CUSTOMERS HAVE --
7  THERE'S COMBINATIONS, WHATNOT, BUT SAY 170.
8  Q.  THE DIFFERENCE BETWEEN YOU AND MR. CLARKE IS OVER, WHAT IS
9  THAT, 70, 80 CUSTOMERS, AND THE DIFFERENCE BETWEEN THE TWO OF
10 YOU ON THOSE CUSTOMERS IS THEIR MOTIVATION FOR LEAVING ORACLE;
11 WAS IT BECAUSE OF TOMORROWNOW OR WERE THEY GOING TO LEAVE
12 ORACLE ANYWAY, RIGHT?
13 A.  IF I FOLLOW THAT, MR. CLARKE EXCLUDES ANOTHER WHATEVER, 80
14 CUSTOMERS, BELIEVING THAT THEY WOULD HAVE LEFT ORACLE FOR A
15 VARIETY OF REASONS THAT HE'S COME UP WITH THAT I DO NOT ACCEPT.
16     I HAVE LOOKED AT HIS EXCLUSIONS, I DON'T THINK THEY
17 ARE SUPPORTED, BUT HE WOULD SAY THAT HE HAS RATIONALE FOR WHY
18 THEY LEFT.
19 Q.  LET'S TAKE ONE EXAMPLE.  THERE'S A COMPANY THAT LEFT
20 ORACLE AND WENT TO ANOTHER THIRD PARTY PROVIDER CALLED
21 VERITECH.
22     ARE YOU FAMILIAR WITH THAT THIRD PARTY PROVIDER?
23 A.  MAYBE NOT SPECIFICALLY, BUT YOU CAN GO.
24 Q.  OKAY.  AND THAT CUSTOMER WAS GONE FOR TWO YEARS FROM
25 ORACLE TO VERITECH.  AND THEN AFTER TWO YEARS STOPPED VERITECH

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

**1061**

MEYER - CROSS / MR. MITTELSTAEDT

1  AND WENT OVER TO TOMORROWNOW.
2     IN YOUR CALCULATION, YOU WOULD INCLUDE THAT CUSTOMER
3  AS AN ACTUAL DAMAGE CUSTOMER, CORRECT?
4  A.  NOT -- WE WOULD HAVE TO GO BACK AND LOOK AT THAT EXACTLY
5  ONE.  THAT'S CALLED A GAP.  IF THERE'S A GAP IN SERVICE FROM
6  THE TIME THAT A CUSTOMER LEAVES ORACLE AND GOES TO TOMORROWNOW,
7  IF THE GAP IS LARGE, FROM MY PERSPECTIVE, I WOULD SAY, FINE,
8  THERE'S A BROKEN SERVICE GAP SO IT SHOULD NOT BE PART OF THE
9  LOST PROFITS.
10     MR. CLARKE'S GAP, I THINK, IS SIX MONTHS.  IT'S MORE
11 NARROW THAN MINE.  BUT IT'S NOT A BIG DIFFERENCE IN TERMS OF
12 OUR RESULTS.
13 Q.  I AM JUST USING THIS AS AN ILLUSTRATION.
14     WHAT WAS YOUR SERVICE GAP THAT YOU USED?
15 A.  I THINK THAT BASICALLY 85 PERCENT OF MINE OCCURRED IN THE
16 FIRST YEAR.
17     SO IF THE GAP WAS A YEAR OR LESS, I PUT THEM IN LOST
18 PROFITS.  I THINK 15 PERCENT WERE GREATER, BUT THE MAJORITY
19 WERE THE GAP WAS A YEAR OR LESS.
20 Q.  ARE YOU SAYING THAT IF A CUSTOMER WAS GONE FROM ORACLE TO
21 ANOTHER THIRD PARTY PROVIDER OR TO SELF-SUPPORT FOR A YEAR
22 BEFORE THEY WENT TO TOMORROWNOW, YOU INCLUDED THEM IN THIS
23 DAMAGE --
24 A.  A YEAR OR LESS.  I THINK THAT MOST OF THOSE WERE ON THE
25 EVEN SHORTER SIDE.  IT WAS THREE MONTHS, FOUR MONTHS, SIX

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

**1062**

MEYER - CROSS / MR. MITTELSTAEDT

1  MONTHS, BUT THE MAJORITY OF MINE IT WAS A YEAR OR LESS.
2  Q.  SO ARE YOU SAYING THAT IN THE EXAMPLE I GAVE YOU OF A
3  CUSTOMER WHO LEFT ORACLE FOR ANOTHER THIRD PARTY PROVIDER FOR
4  TWO YEARS AND THEN WENT TO TOMORROWNOW AFTER THOSE TWO YEARS,
5  WOULD YOU INCLUDE OR EXCLUDE THEM?
6  A.  WELL, IT DEPENDS.  WE HAVE TO LOOK AT THAT EXACT ONE.
7     FIRST OFF, TOMORROWNOW IS AN ILLEGAL OFFERING.  SO
8  IN THIS BUT FOR ANALYSIS, WE HAVE TO SAY TOMORROWNOW DOES NOT
9  EXIST.
10     SO, I HAVE TO GO BACK AND SAY, OKAY, IF THEY ARE
11 GONE FOR 18 MONTHS AND NOW THEY COME TO TOMORROWNOW, BUT IN --
12 THEY ARE ILLEGAL, THEY COULDN'T GO TO TOMORROWNOW, YOU GET INTO
13 THESE JUDGMENT CALLS ON WHAT TO DO.
14     SO, I THINK FOR THE JURY TO KNOW IS THAT BASICALLY
15 85 PERCENT OF MINE WERE A YEAR LESS GAP AND FROM MY PERSPECTIVE
16 THEY SHOULD STAY IN THE LOST PROFITS.
17 Q.  DECORATIVE CONCEPT, DO YOU REMEMBER THE NAME OF THAT
18 CUSTOMER?
19 A.  DECORATIVE CONCEPT?
20 Q.  YES.
21 A.  YOU CAN REFRESH MY MEMORY.
22 Q.  OKAY, SIR.  MY QUESTION BEFORE WAS, WHAT SERVICE GAP DID
23 YOU USE?
24 A.  RIGHT.  I HAVE GIVEN TESTIMONY ABOUT THAT.
25 Q.  NO, IN YEARS.  IF A CUSTOMER WAS WITH --

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

---

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR  &  Diane E. Skillman, CSR, RPR, FCRR

## 1103
MEYER - CROSS / MR. MITTELSTAEDT

1  NUMBERS I AM USING ARE BASED ON SAP'S PROJECTIONS.
2  Q.  SIR, I UNDERSTAND THAT.
3      BUT MY QUESTION IS, YOU WERE TRYING TO FIGURE OUT
4  WHAT ORACLE WOULD HAVE HAD IN MIND AT THE TIME OF THE
5  NEGOTIATION, CORRECT?
6  A.  RIGHT.  BUT IN THAT PROCESS -- LET ME FINISH.
7      I AM GOING DOING THE NEGOTIATION.  IT'S NOT LIKE I
8  HAVE TO GO TO ORACLE AND TAKE A NUMBER FROM THEIR MANAGEMENT.
9  I AM COMING UP WITH THAT WITH THE BEST INFORMATION AVAILABLE AT
10 THE TIME FROM ALL THE SOURCES AT THE TIME.
11 Q.  BUT WHEN WE ARE TALKING ON THIS SLIDE ABOUT ORACLE'S
12 EXPECTED FINANCIAL IMPACT, THEN YOU SAY AT LEAST 3,000 EXPECTED
13 MAINTENANCE CUSTOMERS -- CUSTOMER LOSSES, RIGHT?
14     THAT WAS -- WHAT YOU WERE TRYING TO CONVEY THERE WAS
15 WHAT ORACLE WAS BRINGING TO THAT NEGOTIATION, ORACLE?
16 A.  IT IS NOT CORRECT.  ORACLE FROM THE PERSPECTIVE OF ME
17 DOING THE NEGOTIATION.  THAT'S NOT THE NUMBER FROM MS. CATZ OR
18 MR. ELLISON.
19     THAT'S THE NUMBER THAT I FELT WOULD MAKE SENSE AT
20 THE TIME FOR A FAIR MARKET VALUE OF THE LICENSE.  AND WE HAD
21 PROJECTIONS FROM SAP.  DIDN'T HAVE THAT FROM ORACLE FOR ALL THE
22 REASONS WE KNOW ABOUT, AND SO I HAD TO MAKE THAT DETERMINATION.
23     THAT'S NOT AN ORACLE MANAGEMENT NUMBER.  THAT'S THE
24 SAP NUMBER.
25 Q.  SO, IF YOU HAD TALKED WITH MR. ELLISON AND MR. PHILLIPS

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

## 1104
MEYER - CROSS / MR. MITTELSTAEDT

1  AND MS. CATZ, AND THEY SAID, YOU KNOW WHAT, MR. MEYER?  WE
2  DIDN'T CONSIDER TOMORROWNOW A THREAT AT ALL.  WE THOUGHT WE
3  WOULD HAVE ABOUT THE SAME ATTRITION RATE WE HAD ALWAYS HAD.
4  AND SO OUR NUMBER REALLY WAS -- WE GO INTO THAT NEGOTIATION
5  THINKING, BECAUSE WE ARE PRETTY GOOD PROJECTORS -- PREDICTERS,
6  WE THINK WE ARE ONLY GOING TO LOSE 358 CUSTOMERS.
7      IF THEY TOLD YOU THAT'S WHAT THEY HAD IN MIND BACK
8  IN 2005, WHAT NUMBER WOULD YOU USE THERE; 3,000 OR 358?
9  A.  I DON'T UNDERSTAND YOUR QUESTION.
10     YOU ARE SAYING -- AND THEY KNOW ABOUT THE ACTUAL
11 SCOPE OF THE LICENSE AND WHAT WAS TAKEN?
12 Q.  YEAH.
13 A.  SO YOU ARE SAYING THAT THEY KNOW ABOUT THE MILLIONS OF
14 DOWNLOADS, ALL THE COPIES, AND ALL THE PLANS TO COMPETE WITH
15 SAFE PASSAGE ON JANUARY 19, 2005, AND THEIR OPINION IT'S 358?
16 Q.  YES.
17 A.  AND NOW THEY ARE GIVING THAT OPINION TO ME NOW OR BACK AT
18 THE TIME?  IS IT IN A DOCUMENT BACK AT THE TIME?
19     WE NEED TO BREAK -- THIS IS A VERY IMPORTANT ISSUE.
20 AND SEE --
21 Q.  I'LL ANSWER YOUR QUESTION --
22 A.  LET ME FINISH --
23     THE COURT:  WAIT, WAIT, WAIT.  MR. MEYER,
24 MR. MITTELSTAEDT GETS TO ASK THE QUESTIONS, NOT YOU.
25     OKAY.  SO LET HIM REPHRASE IT AND THEN YOU CAN GIVE

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

## 1105
MEYER - CROSS / MR. MITTELSTAEDT

1  HIM AN ANSWER.
2      MR. PICKETT:  HE WAS IN MID-ANSWER, YOUR HONOR.
3      THE COURT:  START ALL OVER AGAIN.
4  BY MR. MITTELSTAEDT:
5  Q.  OKAY.  LET'S SEE WHERE WE ARE.
6      AS PART OF THIS PROCESS, YOU ARE TRYING TO
7  UNDERSTAND WHAT THE TWO PARTIES ARE THINKING WHEN THEY COME TO
8  THIS HYPOTHETICAL NEGOTIATION, CORRECT?
9  A.  THE TWO PARTIES IN A HYPOTHETICAL IN A REASONABLE FASHION,
10 THAT'S RIGHT.
11 Q.  OKAY.  YOU ARE TRYING TO MAKE ORACLE HAVE REASONABLE
12 EXPECTATIONS AND YOU ARE TRYING TO MAKE SAP HAVE REASONABLE
13 EXPECTATIONS, RIGHT?
14 A.  I WOULD AGREE WITH THAT.
15 Q.  THANK YOU.
16     ONE OF THE WAYS YOU TRIED TO FIGURE OUT WHAT ORACLE
17 WOULD HAVE BROUGHT TO THIS PARTY WAS TO GO DOWN OR HAVE THIS
18 TELEPHONE CALL WITH THE TOP THREE PEOPLE AT ORACLE.  THAT WAS
19 ONE THING YOU DID FOR THAT PURPOSE, RIGHT?
20 A.  THAT WAS ONE THING, ONE PART OF MY WORK PLAN WAS TO TALK
21 TO THE EXECUTIVES.
22 Q.  OKAY.
23     IF MR. ELLISON HAD TOLD YOU, GIVEN WHAT THEY KNEW --
24 ASSUME MR. ELLISON HAD TOLD YOU THIS:  ASSUMING THE SCOPE OF
25 THE LICENSE THAT YOU DESCRIBE AND THAT HE KNEW TOMORROWNOW WAS

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

## 1106
MEYER - CROSS / MR. MITTELSTAEDT

1  OWNED BY SAP, AND TOMORROWNOW WAS PROVIDING SUPPORT SERVICES AT
2  HALF PRICE, AND TOMORROWNOW WAS DOWNLOADING MORE MATERIALS THAN
3  THEY SHOULD HAVE, AND THAT TOMORROWNOW WAS USING MATERIALS
4  DOWNLOADED FOR ONE CUSTOMER TO ANOTHER CUSTOMER, AND ALL THE
5  OTHER THINGS IN THE LICENSE; ASSUME MR. ELLISON HAD TOLD YOU AT
6  THAT POINT, I WOULD HAVE THOUGHT THAT WE WOULD LOSE SAY 350
7  CUSTOMERS.
8      AND THEN ASSUME MS. CATZ WOULD SAY, I AGREE WITH MY
9  BOSS.  AND SAY MR. PHILLIPS WOULD SAY THE SAME THING.
10     SO THE NUMBER THAT THEY TELL YOU THEY WOULD HAVE
11 EXPECTED IN THIS HYPOTHETICAL WORLD WAS 358.
12     ON THAT CHART WHERE YOU SAY WHAT ORACLE'S BRINGING
13 INTO THIS NEGOTIATION, YOU WOULD HAVE 358 INSTEAD OF 3,000,
14 WOULDN'T YOU?
15 A.  IT'S NOT CORRECT.  I WOULD NEED TO KNOW MORE ABOUT YOUR
16 QUESTION, WHICH IS A HYPOTHETICAL.  I WOULD NEED TO KNOW --
17 THEY NEED TO SEE THE BUSINESS PLANS OF SAP AT THE TIME.
18 REMEMBER, IT'S OPEN INFORMATION.  THEY NEED TO HAVE THAT.  THEY
19 NEED TO BE ABLE TO CONTEMPLATE DO THEY HAVE TO SPEND BILLIONS
20 OF DOLLARS OR MORE TO COMPETE GOING FORWARD, DO THEY HAVE TO
21 HIRE MORE SALESPEOPLE.
22     SO WE HAVE TO FILL OUT YOUR HYPOTHETICAL.  AND IF
23 THEY HAD THE BUSINESS PLANS OF MR. AGASSI AND MR. APOTHEKER AND
24 MR. KAGERMANN TO GO OUT AND THEY HAVE SAFE PASSAGE ON THEIR
25 DESK, AND THEY'RE LOOKING AT THEIR IT BUDGET AND ALL THEIR

DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC (510) 451-2930

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR  &  Diane E. Skillman, CSR, RPR, FCRR

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4          WE, RAYNEE H. MERCADO AND DIANE E. SKILLMAN, OFFICIAL
 5   REPORTERS FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF
 6   CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN
 7   C07-01658PJH, ORACLE USA, INC., ET AL. V. SAP AG, ET AL., WERE
 8   REPORTED BY US ON, TUESDAY, NOVEMBER 9, 2010, CERTIFIED
 9   SHORTHAND REPORTERS, AND WERE THEREAFTER TRANSCRIBED UNDER OUR
10   DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL,
11   COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY US AT
12   THE TIME OF FILING.
13          THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID
14   TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE
15   COURT FILE.
16
17          _____
18               RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR
19
20          _____/s/_____
21               DIANE E. SKILLMAN, CSR, RPR, FCRR
22
23                  WEDNESDAY, NOVEMBER 10, 2010
24
25
```