BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
fnorton@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, | Case No. 2:10-cv-0106-LRH-PAL |
| Plaintiffs, | **ORACLE'S MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE AT TRIAL** |
| v. | |
| RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual, | **REDACTED PUBLIC VERSION** |
| Defendants. | |

1

## TABLE OF CONTENTS

2

**Page**

3   I.   MOTION NO. 1:  EVIDENCE AND ARGUMENT RELATING TO RIMINI'S
4        2014 SUPPORT MODEL ............................................................................. 1

5        A.   Magistrate Leen Limited Discovery In This Case To Rimini's 2006-2011
             Support Process. ................................................................................ 2

6        B.   The Court Should Exclude Evidence of Rimini's Activities In 2014 And
7             Later ................................................................................................... 4

8             1.   Evidence Of Rimini's Alleged New Process Should Be Excluded
                   Because It Was Not The Subject Of Fact Or Expert Discovery. ............... 4

9             2.   Evidence Of Rimini's Activities In 2014 And Later Should Be
10                 Excluded Because It Is Not Relevant To Any Issue To Be Tried............. 5

11            3.   Evidence Of Rimini's Activities After 2014 Should Be Excluded
                   Under Rule 403. ......................................................................... 6

12  II.  MOTION NO. 2:  RIMINI'S FINANCIAL CONDITION OR CONTENTIONS
13       THAT RIMINI CANNOT AFFORD A DAMAGE AWARD. ........................................ 7

     III. MOTION NO. 3:  ORACLE'S OVERALL WEALTH AND ASSETS........................... 8
14
     IV.  MOTION NO. 4:  ARGUMENT ABOUT LICENSE PROVISIONS NOT
15        DISCLOSED IN RESPONSE TO ORACLE'S INTERROGATORY............................ 9

16   V.   MOTION NO. 5:  PAROL EVIDENCE TO VARY THE UNAMBIGUOUS
17        TERMS OF AGREEMENTS ........................................................................ 11

     VI.  MOTION NO. 6:  CUSTOMER STATEMENTS IN AT RISK REPORTS ................. 12
18
         A.   Oracle's At-Risk Report Contains Unreliable Third Party Statements................ 13
19
         B.   The Court Should Exclude the Hearsay Customer Comments. .......................... 14
20
     VII. MOTION NO. 7:  ANTITRUST AND COMPETITION RHETORIC AND
21        EVIDENCE, OR UNRELATED EVIDENCE CONCERNING ORACLE................... 16

22   VIII. MOTION NO. 8:  SETTLEMENT DISCUSSIONS ........................................... 17

23       A.   Evidence Related To Court-Ordered Settlement Conference ........................... 17

24       B.   Pre-Suit Communications Proposing Resolution Of Identified Claims.............. 17

25   IX.  MOTION NO. 9:  RIMINI LIVE WITNESSES WHO ARE NOT MADE
         AVAILABLE FOR ORACLE'S CASE IN CHIEF ............................................... 19
26
     X.   MOTION NO. 10:  AVOIDED LABOR COST EVIDENCE...................................... 21
27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)..................................................................................... 8

*ADT Sec. Servs. v. Sec. One Int'l, Inc.*,
  No. 11-CV-5149 YGR, 2013 WL 4766401 (N.D. Cal. Sept. 5, 2013)................................ 15

*Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*,
  301 F.R.D. 31 (S.D.N.Y. 2014) .................................................................................... 5

*Alzuraqi v. Grp. 1 Auto., Inc.*,
  921 F. Supp. 2d 648 (N.D. Tex. 2013).......................................................................... 15

*Amboy Bancorporation v. Jenkens & Gilchrist*,
  No. CIV A 02-CV-5410 DMC, 2008 WL 3833582 (D.N.J. Aug. 13, 2008) *order aff'd
  in part, vacated in part sub nom. Amboy Bancorporation v. Bank Advisory Grp., Inc.*,
  432 F. App'x 102 (3d Cir. 2011) .................................................................................. 9

*Andazola v. Logan's Roadhouse, Inc.*,
  No. CV-10-S-316-NW, 2013 WL 1834308 (N.D. Ala. Apr. 29, 2013) ............................... 16

*Bell v. Salazar*,
  No. 2:12-CV-01414-TLN, 2013 WL 2665208 (E.D. Cal. June 12, 2013) ............................ 2

*Bhatti v. Ulahannan*,
  414 F. App'x 988 (9th Cir. 2011) ................................................................................. 7

*Buchwald v. Renco Group, Inc.*,
  No. 13-cv-7948 (AJN), 2014 WL 4207113 (S.D.N.Y. Aug. 22, 2014)................................ 20

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
  227 F.R.D. 313 (C.D. Cal. 2004) ................................................................................. 11

*Computer Associates Int'l, Inc. v. Am. Fundware, Inc.*,
  831 F. Supp. 1516 (D. Colo. 1993) .............................................................................. 9

*Engman v. City of Ontario*,
  No. EDCV 10-284 CAS PLAX, 2011 WL 2463178 (C.D. Cal. June 20, 2011) ..................... 8

*Evans v. Alliedbarton Sec. Servs., LLP*,
  No. C 08-4993 MMC, 2009 WL 5218010 (N.D. Cal. Dec. 31, 2009), *aff'd*, 447 F.
  App'x 838 (9th Cir. 2011)........................................................................................... 2

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
  No. 3:12-cv-04967, --- F. Supp. 3d ----, 2015 WL 925892 (N.D. Cal. Mar. 2, 2015)........... 19

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Geddes v. United Fin. Grp.*,
   559 F.2d 557 (9th Cir. 1977)..................................................................8

*Gordon v. Wal-Mart Supercenter*,
   No. CIV. A. 08-00527-CG, 2009 WL 3850288 (S.D. Ala. Nov. 12, 2009) ............................9

*Hernandez v. UPS Supply Chain Solutions, Inc.*,
   496 F. Supp. 2d 778 (W.D. Tex. 2007)...................................................19

*Holt v. State Farm Mut. Auto. Ins. Co.*,
   507 So. 2d 388 (Ala. 1986) ..................................................................9

*In re Gulf Oil/Cities Service Tender Offer Litig.*,
   776 F.Supp. 838 (S.D.N.Y.1991)...........................................................20

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   No. 05CV633, 2009 WL 3415689 (S.D. Cal. Oct. 21, 2009)................................20

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992)..................................................................4

*Knauff v. Dorel Juvenile Grp.*,
   No. CIV. SA:08-CV-336-XR, 2010 WL 114014 (W.D. Tex. Jan. 6, 2010) ...................15, 16

*Licciardi v. TIG Ins. Grp.*,
   140 F.3d 357 (1st Cir. 1998)................................................................11

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002)..................................................................8

*Maran Coal Corp. v. Societe Generale De Surveillance S.A.*,
   No. 92 CIV. 8728 (DLC), 1996 WL 11230 (S.D.N.Y. Jan. 10, 1996) .......................20

*Niebur v. Town of Cicero*,
   212 F. Supp. 2d 790 (N.D. Ill. 2002) .....................................................20

*Oracle America, Inc. v. Google Inc.*,
   847 F. Supp. 2d 1178 (N.D. Cal. 2012) ..................................................8

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014)................................................................8

*Pinkham v. Sara Lee Corp.*,
   983 F.2d 824 (8th Cir. 1992)................................................................8

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*,

4

945 F.2d 269 (9th Cir. 1991)................................................................. 20

5

*Rimini Street, Inc. v. Oracle Int'l Corp.*,
Case No. 2:14-cv-01699-LRH-PAL (filed Oct. 15, 2014), Dkt. 21 ........................................ 4

6

*Rimini Street, Inc. v. Oracle International Corporation*

7

("*Rimini II*"), Case No. 2:14-cv-01699 (D. Nev.)............................................................. 1, 3

8

*Rowland v. Am. Gen. Fin.*,
340 F.3d 187 (4th Cir. 2003)................................................................. 14

9

10

*Royalty Petroleum Co. v. Arkla, Inc.*,
129 F.R.D. 674 (W.D. Okla. 1990) ........................................................... 5

11

*SCD RMA, LLC v. Farsighted Enterprises, Inc.*,

12

591 F. Supp. 2d 1131 (D. Haw. 2008) ..................................................... 17

13

*Shimozono v. May Dep't Stores Co.*,
No. 00-04261 WJR AJWX, 2002 WL 34373490 (C.D. Cal. Nov. 20, 2002) ........................ 15

14

15

*United States v. Charles George Trucking, Inc.*,
34 F.3d 1081 (1st Cir.1994) .................................................................... 8

16

*United States v. Mitchell*,

17

49 F.3d 769 (D.C.Cir. 1995) ................................................................... 15

18

*United States v. Arteaga*,

19

117 F.3d 388 (9th Cir. 1997)............................................................... 14, 15

20

*United States v. Pazsint*,
703 F.2d 420 (9th Cir. 1983).................................................................. 15

21

*Vasbinder v. Ambach*,

22

926 F.2d 1333 (2nd Cir.1991)................................................................... 8

23

*Wall Data Ins. v. L.A. Cnty. Sheriff's Dep't*,
447 F.3d 769 (9th Cir. 2006).................................................................... 8

24

25

*Wiley v. Burgess*,
No. C05-1948RSM, 2007 WL 2897893 (W.D. Wash. Oct. 1, 2007)......................... 8

26

*Wolf v. Walt Disney Pictures & Television*,

27

162 Cal. App. 4th 1107 (2008), *as modified on denial of reh'g* (June 4, 2008)...................... 12

28

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ................................................................. 11

**STATUTES**

Cal. Civ. Proc. Code § 1856 ............................................................... 11, 12

17 U.S.C. § 504(c) ................................................................................ 6

Nev. Rev. Stat. § 42.005(4) ................................................................. 7

**OTHER AUTHORITIES**

Fed. R. Civ. P.
  16 ............................................................................................... 4, 5
  26 ........................................................................................ 4, 10, 14
  32 .................................................................................................. 14
  37 ................................................................................. 4, 5, 9, 10, 11
  72 ................................................................................................ 1, 2

Fed. R. Evid.
  401 ............................................................................................... 8, 9
  402 ...................................................... 7, 8, 9, 11, 12, 16, 17, 21
  403 ................................................................. 6, 7, 8, 9, 17, 21
  408 ........................................................................................ 17, 19
  611 ........................................................................................ 19, 20
  801 ................................................................................................ 13
  802 ................................................................................................ 13
  805 ................................................................................................ 14

Local Rule § IB 3-1 .............................................................................. 2

Robert E. Jones et al., Fed. Civ. Trials & Ev., Ch. 8G-E, § 8:2691 (The Rutter Group
  2014) ............................................................................................ 15

ORACLE'S MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE AT TRIAL

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

2    (collectively, "Oracle") submit the following motions *in limine* to prevent Defendants Rimini

3    Street, Inc. and Seth Ravin ("Rimini" or "Defendants") from admitting certain evidence and

4    argument at trial.

5    **I.    MOTION NO. 1:  EVIDENCE AND ARGUMENT RELATING TO**
      **RIMINI'S 2014 SUPPORT MODEL**
6
7        Oracle moves *in limine* to exclude evidence and argument relating to Rimini's alleged

8    new support model introduced in 2014.  Specifically, Oracle moves to exclude (1) Defense Trial

9    Exhibits ("DTX") 411 to 440, which are documents dated 2014 describing the alleged new

     support model,[1] (2) oral testimony[2] or argument concerning the same, and (3) references to
10
11   *Rimini Street, Inc. v. Oracle International Corporation* ("*Rimini II*"), Case No. 2:14-cv-01699

12   (D. Nev.), where the legality of that purported model will be determined.

13       Rimini already asked this Court to make its alleged new support model a part of this case,

14   when it asked this Court to reopen discovery into the issue.  Rimini explained that it believed the

15   issue was relevant to its damages case.  This Court referred the issue to Magistrate Judge Leen,

16   who denied the motion, refused to reopen discovery, and held that "the case will remain as it was

17   put in at the close of discovery, not thereafter."  Dkt. 515 at 3.  Rimini did not appeal Magistrate

18   Judge Leen's order, but instead filed the *Rimini II* case, in which Rimini seeks a declaratory

19   judgment that its new, 2014 support process is non-infringing.  Magistrate Judge Leen's order is

20   not subject to further review.  Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the

21   order within 14 days after being served with a copy.  A party may not assign as error a defect in

22   ------
     [1] *See* Declaration of Thomas Hixson in Support of Oracle's Motions *in Limine* ("Hixson Decl."),
     Exs. 27 and 28.  For example, ███████████████████████████████████████████
23   ███████████████████████████████████████████████████████████████████████████
24   ███████████████████████████████████████████████████████████████████████████
25   ███████████████████████████████████████████   Hixson Decl., ¶ 28.

26   [2] Because there was no discovery concerning the alleged new process, there is no deposition
     testimony about it, and no deposition designations to move to exclude.  Accordingly, Oracle is
27   forced to move generally to exclude oral testimony about this subject (as opposed to identifying
     specific lines of testimony to exclude).
28

                                                  1

1   the order not timely objected to."); Local Rule § IB 3-1; *see Bell v. Salazar*, No. 2:12-CV-01414-

2   TLN, 2013 WL 2665208, at *1 (E.D. Cal. June 12, 2013) (party waived its right to challenge the

3   Magistrate Judge's order when objections were untimely under Rule 72(a)); *Evans v.*

4   *Alliedbarton Sec. Servs., LLP*, No. C 08-4993 MMC, 2009 WL 5218010, at *4 (N.D. Cal. Dec.

5   31, 2009), *aff'd*, 447 F. App'x 838 (9th Cir. 2011) (same).

6        In the present case, Rimini is now trying to circumvent Judge Leen's order by seeking to

7   admit evidence that it changed its support process in 2014, allegedly ceasing conduct that this

8   Court determined is infringing – a disputed claim for which there has been neither fact nor expert

9   discovery.  Rimini's attempt should be denied, and evidence and argument regarding Rimini's

10  alleged new support model should be excluded.

11       **A.    Magistrate Leen Limited Discovery In This Case To Rimini's**
              **2006-2011 Support Process.**

12

13       Throughout this case, Magistrate Judge Leen has emphasized that "the objective of the

     Court is to get [] a manageable case to trial in a manageable period of time."  Hixson Decl., Ex. 6
14
     (May 17, 2011 Tr.) at 14:11–13.  "[T]he parties may have future disputes, but there's got to be
15
     some time in which the pleadings in this case close so that this case can be presented to the trier
16
     of fact and a reasonable resolution reached."  *Id.* at 14:13–17.  Magistrate Judge Leen made these
17
     comments in the context of denying Oracle's attempt to bring new claims in 2011.[3]  She did so
18
     again when she denied Rimini's attempt to insert evidence of its 2014 support process into this
19
     case.
20
         **MSJ Orders.**  Following the discovery cutoff in December 2011, Oracle filed two partial
21
     summary judgment motions in 2012.  Dkts. 237, 405.  In February and August 2014, the Court
22
     granted the first motion in part and the second entirely.  Dkt. 474 at 12:2–4, 13:7–12; Dkt. 476 at
23
     18–25.  The Court found that Rimini infringed Oracle's PeopleSoft and Database product lines,
24
     and that Oracle's claim for infringement of its Siebel and J.D. Edwards software should proceed
25
     to trial.  *Id.*
26

27  ───────────────
     [3] After Magistrate Judge Leen's ruling, the parties stipulated that "claims relating to Defendants'
     use of Oracle's E-Business software and their support of customers on Oracle Database are
28   outside the scope of this action."  Dkt. 230.

**ORACLE'S MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE AT TRIAL**

1        ***Rimini Claims to Have Adopted a New Support Process.***  In response to the Court's

2    February summary judgment order, Rimini proclaims that it has reformed its infringing business

3    model and implemented a different, "remote only" non-infringing support process.  Dkt. 488 at

4    13.  After the Court's February 2014 summary judgment order, Rimini produced a handful of

5    documents generally describing how its new support process supposedly works.  Then, in

6    September 2014, almost three years after the discovery cutoff, Rimini dumped over 100,000

7    documents on Oracle concerning the alleged new support process.  However, in order to reopen

8    discovery long past the cutoff, Rimini required leave of court.  Dkt. 515 at 3.

9        ***Rimini Was Denied Leave to Reopen Discovery.***  Rimini moved to reopen discovery,

10   and this Court referred the matter to Magistrate Judge Leen, who had a full hearing and denied

11   Rimini's motion.  Rimini argued to the Court that evidence of its new and supposedly non-

12   infringing 2014 support process was relevant to the copyright damages that would be decided at

13   the upcoming trial.  Dkt. 490 at 15-16.  Magistrate Judge Leen disagreed.  In an order that Rimini

14   has not appealed, Magistrate Judge Leen held that "[w]hile the District Court will decide the

15   admissibility of Rimini's expert's opinion on the proposed method of calculating damages, *the*

16   *full discovery on that theory has been conducted*."  Dkt. 515 at 3 (emphasis added).  The Court's

17   summary judgment order was "not a basis to reopen discovery."  *Id.*  Magistrate Judge Leen

18   further held that "fact and expert discovery ha[d] been completed" and that "the case will remain

19   as it was put in at the close of discovery, not thereafter."  Dkt. 515 at 3.

20       During the hearing, Oracle offered not to seek damages in this lawsuit for the time period

21   when Rimini claims to have adopted the new support model, and Magistrate Judge Leen held

22   "Oracle to that offer," and accordingly, Oracle does not intend to put on evidence of its damages

23   flowing from Rimini's new model at the September trial.  Dkt. 515 at 3.  Because the Court

24   (correctly) declined to reopen discovery at this late stage, Oracle has not tested Rimini's

25   assertions about this supposedly new model – including, critically, whether it infringes – making

26   introduction of this evidence unfair.

27       ***Rimini files Rimini II.***  Issues relating to Rimini's 2014 (and later) conduct will get a full

28   hearing in a different case.  Less than a week after the parties' hearing before Magistrate Judge

3

1    Leen, Rimini filed a new lawsuit seeking a declaration that its 2014 support model does not

2    infringe.  Dkt. 534 (notice of related case).  Oracle counterclaimed, asserting that it does.[4]

3    *Rimini Street, Inc. v. Oracle Int'l Corp.*, Case No. 2:14-cv-01699-LRH-PAL (filed Oct. 15,

4    2014), Dkt. 21.

5    **B.    The Court Should Exclude Evidence of Rimini's Activities In
           2014 And Later**

6

7    **1.    Evidence Of Rimini's Alleged New Process Should Be
              Excluded Because It Was Not The Subject Of Fact Or
              Expert Discovery.**

8

9         Orderly trial management and the orders of Magistrate Judge Leen organizing these cases

10   dictate that the issue of Rimini's 2014 remote support model is excluded from this case. It would

11   be an end run around Magistrate Judge Leen's order to allow Rimini to introduce ***the very***

12   evidence at trial on which this Court refused to reopen discovery.  In light of the clear division

13   between this case (on conduct dating through 2011) and the next (on conduct after that date), the

14   Court should exclude all reference to and evidence about Rimini's 2014 "switch" in its business

15   model in the upcoming trial.

16        Magistrate Judge Leen's order also requires exclusion of evidence regarding Rimini's

17   2014 remote support model because Oracle has been denied discovery concerning that issue.

18   Disclosure of new evidence is not permitted after the Court's imposition of a discovery cutoff

19   without "good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *cf. Johnson v.*

20   *Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (explaining Fed. R. Civ. P. 16's

21   good cause requirement).  Rimini required leave of Court, and a demonstration of good cause, to

22   reopen discovery in order to permit further fact and expert discovery into its new, 2014

23   development process, and requested that leave.  Dkt. 490, p. 20; October 9, 2011 Tr. at 25:13–15

24   ("the parties require leave of court to engage in any discovery other than supplementation").

25   Magistrate Judge Leen correctly denied that request, Dkt. 515 at 3, and Rimini did not appeal

26   that order to the District Court.

27   _____

[4] Oracle's counterclaims also seek damages for time periods before Rimini implemented its
alleged new process, i.e., the years 2012 and 2013.  The Court's ruling on Rimini's Motion to
Preclude Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 26(e) and
37(c), Dkt. 554, will decide the exact scope of damages in each case.

28

4

1    The Court is authorized to enter an exclusionary order regarding material produced after

2  the close of discovery, and thus in contravention of its scheduling order, pursuant to Fed. R. Civ.

3  P. 16(f) and the Court's inherent powers.  Fed. R. Civ. P. 37(b)(2)(A)(ii); *see also Royalty*

4  *Petroleum Co. v. Arkla, Inc.*, 129 F.R.D. 674, 680-81 (W.D. Okla. 1990) (discussing inherent

5  powers and consequences for production after discovery cutoff date); *Advanced Analytics, Inc. v.*

6  *Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 35 (S.D.N.Y. 2014) ("pursuant to Rule 16, a

7  party's failure to comply with a scheduling or pretrial order may result in preclusion") (citing

8  cases).  Here, the Court has already decided that production after the cutoff should be disallowed,

9  and the proper conclusion is that this evidence should be excluded from trial.

10    Exclusion of evidence on which discovery has been denied is also important to protect

11  against prejudice to Oracle.  Oracle would not, in the ordinary course, have to take Rimini at its

12  word that the 2014 process is in fact non-infringing, was acceptable to its customers, or was

13  available during the crucial time period for damages – all predicates to the evidence's relevance.

14          **2.    Evidence Of Rimini's Activities In 2014 And Later**
                  **Should Be Excluded Because It Is Not Relevant To Any**
15                **Issue To Be Tried.**

16    Rimini's alleged 2014 new model is not relevant to any issue to be tried.  Rimini has

17  advanced the argument that the new process presents a non-infringing alternative to its old,

18  infringing process.  Dkt. 490, p. 13–17.  That argument is speculative and unproven because

19  Oracle has not been able to test Rimini's contentions through discovery, but even if it were true,

20  the 2014 support model would still be irrelevant.

21    Evidence about Rimini's 2014 support model is not relevant to Rimini's liability in the

22  current case.  Rimini claims its actions in 2014 *differ* from its actions from 2006 to 2011, the

23  time period relevant to this lawsuit.  Rimini effectively acknowledges its actions in 2014 are

24  irrelevant to its prior conduct by stating that it implemented the new model "[i]n response to the

25  Court's ruling."  Dkt. 490, p. 13.  The legality of the new 2014 model will be the subject of

26  Rimini's new lawsuit.  In short, Rimini's liability related to its 2014 support model is not at issue

27  in this trial, and therefore any evidence related to the 2014 support model is irrelevant to any

28  liability issue at trial.

1    Evidence about Rimini's 2014 support model is also not relevant to Oracle's damages in

2    the current case.  When Rimini asked Magistrate Judge Leen to allow discovery on its 2014

3    support process, Rimini claimed that evidence of its 2014 support model was relevant to "the

4    costs associated with implementing a non-infringing alternative, a well-recognized objective

5    measure of damages in intellectual property cases." Dkt. 490 at 13:18-19.  Rimini's theory is

6    that Oracle's copyright damages should be limited to the labor costs Rimini avoided incurring by

7    committing copyright infringement instead of operating legally.  In 2012, Rimini's expert Scott

8    Hampton disclosed a damages opinion based on the costs of a purportedly non-infringing

9    alternative that Rimini could have adopted from 2006-2011.  As explained in Oracle's

10   contemporaneously filed *Daubert* motion, Mr. Hampton's damages opinion should be excluded

11   from evidence entirely because avoided costs are not a legally appropriate measure of Oracle's

12   damages as they reflect neither the copyright holder's lost profits nor the infringer's profits.

13   Regardless, Magistrate Judge Leen recognized that "the District Court will decide the

14   admissibility of Rimini's expert's opinion on the proposed method of calculating damages," but

15   she also decided that *either way*, "the full discovery on that theory has been conducted." Dkt.

16   515 at 3.  Thus, in full recognition that Mr. Hampton had a discovery record from which to draw

17   his opinions about alternative support practices, Magistrate Judge Leen determined that no

18   evidence about Rimini's 2014 support process would be relevant in this case.  Rimini declined to

19   appeal that order to the District Court, and it is therefore not subject to review.

20   Finally, evidence about Rimini's 2014 support model is not relevant to whether Rimini is

21   a "willful" infringer for purposes of determining whether Oracle is entitled enhanced statutory

22   damages under the Copyright Act, 17 U.S.C. § 504(c).  Whether Rimini purportedly changed its

23   support practices *in 2014* is not relevant at all to whether Rimini willfully engaged in those

24   infringing practices *from 2006-2011*, which is the relevant time period for liability evidence in

25   this case.

26          **3.      Evidence Of Rimini's Activities After 2014 Should Be
                      Excluded Under Rule 403.**

27   Even if the Court were to determine that the evidence of Rimini's 2014 conduct is

28

6

1  marginally relevant, the Court should nonetheless exclude it under Federal Rule of Evidence

2  ("Rule") 403.  Introduction of this evidence would require a sideshow into the nature of the new

3  process, whether or not it is lawful, and whether or not it was possible to implement years earlier.

4       If the Court were to allow Rimini to present evidence that its current practice does not

5  infringe and was feasible to implement as far back as 2006, then Oracle would be entitled to

6  rebut those showings (to the extent it can do so without discovery).  This would result in a "mini-

7  trial" on the issue of the infringement of Rimini's current practices – a sideshow that would

8  complicate the proof required at trial and extend the time the jury would be required on an issue

9  that is not at all relevant to Rimini's liability for practices it employed from 2006 to 2011.  *See*

10  Fed. R. Evid. 403; *Bhatti v. Ulahannan*, 414 F. App'x 988, 989 (9th Cir. 2011) (no abuse of

11  discretion where the court excluded evidence under Rule 403 because, *inter alia*, it would require

12  "a mini-trial within a trial").

13  **II.     MOTION NO. 2:  RIMINI'S FINANCIAL CONDITION OR CONTENTIONS**
            **THAT RIMINI CANNOT AFFORD A DAMAGE AWARD.**

14

15       Pursuant to Nev. Rev. Stat. § 42.005(4), Rule 402, and Rule 403, Oracle moves *in limine*

16  to exclude evidence of Rimini's financial condition from the liability and compensatory damages

17  phase of the trial or arguments that its financial condition would mean that it could not afford the

18  damages requested by Oracle.

19       While evidence of Rimini's financial condition or ability to pay a judgment may be

20  relevant to determining the amount of punitive damages Oracle should be awarded, it is

21  irrelevant to and should be excluded from the liability and compensatory damages phase of the

22  trial.  In a trial where the punitive damages amount is bifurcated, Nevada law explicitly excludes

23  evidence of the defendant's financial condition from the liability and compensatory damages

24  phase of the trial:

25           Evidence of the financial condition of the defendant is not
            admissible for the purpose of determining the amount of punitive
            damages to be assessed until the commencement of the subsequent

26           proceeding to determine the amount of exemplary or punitive
            damages to be assessed.

27  Nev. Rev. Stat. § 42.005(4).

28

7

1    In addition, and independent of the statutory exclusion, evidence of Rimini's financial

2    condition or ability to pay the damages sought by Oracle is irrelevant under Rule 402 to all

3    issues in this case *except* the punitive damages that Oracle seeks in relation to its tort claims.[5] "It

4    is well established that a 'liable party's ability to pay should not influence the amount of the

5    assessment.'" *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1087 (1st

6    Cir.1994); *see also Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2nd Cir.1991) (finding that a

7    defendant's ability to pay is normally a class of evidence that is not admissible during the

8    liability and compensatory damages phase of a case)." *Wiley v. Burgess*, No. C05-1948RSM,

9    2007 WL 2897893, at *1 (W.D. Wash. Oct. 1, 2007); *see also Engman v. City of Ontario*, No.

10   EDCV 10-284 CAS PLAX, 2011 WL 2463178, at *7 (C.D. Cal. June 20, 2011).[6]

11   Finally, evidence of Rimini's financial condition would be prejudicial to Oracle.  As the

12   Ninth Circuit has warned, "the ability of a defendant to pay the necessary damages injects into

13   the damage determination a foreign, diverting, and distracting issue which may effectuate a

14   prejudicial result."  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

15   **III.    MOTION NO. 3:  ORACLE'S OVERALL WEALTH AND ASSETS**

16   Oracle moves *in limine* under Rules 401, 402 and 403 to exclude any evidence regarding

17   Oracle's overall wealth, including but not limited to Oracle's total assets, total revenues, total

18   market capitalization, or any other financial metric that is not limited to the product lines

---

19   [5] During meet and confer, Rimini suggested that its financial condition might be relevant to
     Oracle's hypothetical license damages for Oracle Database infringement.  Rimini's current
20   financial condition and its ability to pay a judgment are irrelevant to any hypothetical license fee
     that Rimini would have negotiated for Oracle Database, because the hypothetical negotiation
21   occurs when the infringement started, i.e., in 2006.  *See Oracle Corp. v. SAP AG*, 765 F.3d 1081,
     1087 (9th Cir. 2014); *Wall Data Ins. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir.
22   2006); *Oracle America, Inc. v. Google Inc.*, 847 F. Supp. 2d 1178, 1182 (N.D. Cal. 2012);
     *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002).
23

24   [6] Unlike evidence of Rimini's financial condition, evidence of Seth Ravin's financial interest in
     Rimini, including his stock ownership in Rimini and the financial interest he has in that stock, is
25   directly relevant to Oracle's claim for vicarious liability against him as a Defendant.  *A&M
     Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (explaining "[i]n the context
26   of copyright law, vicarious liability extends beyond an employer/employee relationship to cases
     in which a defendant has the right and ability to supervise the infringing activity and also has a
27   direct financial interest in such activities.") (internal quotation marks omitted); *see also Pinkham
     v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992) (affirming finding of vicarious liability for
28   corporate officer because evidence showed he had the ability to supervise the infringing activity
     and had an "obvious and direct" financial interest in that activity).

1  (PeopleSoft, Siebel and J.D. Edwards) at issue in this case as irrelevant.  Oracle also moves to

2  exclude evidence regarding the compensation, personal wealth, net worth, or stock holdings of

3  any Oracle officer or employee.

4       *First*, any reference to Oracle's wealth or to an Oracle officer's or employee's wealth is

5  irrelevant and inadmissible under Rules 401 and 402 as it has no bearing on any issue or defense

6  in this case.  *See Amboy Bancorporation v. Jenkens & Gilchrist*, No. CIV A 02-CV-5410 DMC,

7  2008 WL 3833582, at *5 (D.N.J. Aug. 13, 2008) *order aff'd in part, vacated in part sub nom.*

8  *Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 F. App'x 102 (3d Cir. 2011) (excluding

9  evidence regarding the personal wealth of plaintiffs' officers, directors and shareholders pursuant

10  to Rule 402).  There also is and can be no suggestion that this action is material to the value of

11  the stock owned by any Oracle witness; it is not.

12       *Second*, such evidence should be excluded under Rule 403 because admitting it would be

13  confusing for the jury and unfairly prejudicial to Oracle.  Defendants' purpose in attempting to

14  introduce this evidence is plain:  they are seeking to suggest to the jury that Oracle and its

15  officers are wealthy or are pursuing more money than they need – all points that are irrelevant to

16  the issues before the Court and prejudicial.  *See Gordon v. Wal-Mart Supercenter*, No. CIV. A.

17  08-00527-CG, 2009 WL 3850288, at *9 (S.D. Ala. Nov. 12, 2009) (granting Wal-Mart's motion

18  *in limine* to exclude evidence of wealth); *see also Holt v. State Farm Mut. Auto. Ins. Co*., 507 So.

19  2d 388, 391 (Ala. 1986) ("a reference by counsel for either party to the wealth or economic

20  condition of either party is improper and prejudicial"); *Computer Associates Int'l, Inc. v. Am.*

21  *Fundware, Inc.*, 831 F. Supp. 1516, 1526-28 (D. Colo. 1993) (granting plaintiff's request for the

22  preclusion of evidence of either party's financial condition pursuant to Rule 403).

23  **IV.**    **MOTION NO. 4:  ARGUMENT ABOUT LICENSE PROVISIONS**
24         **NOT DISCLOSED IN RESPONSE TO ORACLE'S**
       **INTERROGATORY**

25       Pursuant to Federal Rule of Civil Procedure 37(c)(1), Oracle moves *in limine* to exclude

26  Rimini from asserting any license provision in support of its express license defense that it did

27  not assert in response to Oracle's Interrogatory asking for the same.

28       Rimini has asserted an express license defense to Oracle's claim of copyright

9

1   infringement.  Dkt. 116 (Defendants' First Amended Answer) at 25:22-25.  Rimini claims that its

2   actions were authorized by the terms of software license agreements between the customer and

3   Oracle.  *Id.*  To understand this claim, on January 27, 2011, Oracle propounded an interrogatory

4   asking Rimini to "IDENTIFY each specific license agreement and terms of each license

5   agreement" that Rimini alleged "authorized" Rimini's use "use of ORACLE's copyrighted

6   SOFTWARE AND SUPPORT MATERIALS for each and every of YOUR customers."  Hixson

7   Decl., Ex. 7 (Oracle Interrogatory, No. 15).  On March 1, 2011, Rimini provided its initial

8   response to Oracle's interrogatory and listed ███████ license provisions that Rimini claimed

9   authorized its actions.  Hixson Decl., Ex. 8 (Rimini Response to Oracle Interrogatory, No. 15).

10  Because this was insufficient, on December 19, 2011, Rimini provided a supplemental response

11  to Oracle's Interrogatory in which it provided a chart that ██████████████████████

12  █████████████████  Rimini's express license defense for each of Rimini's customers.

13  Hixson Decl., Ex. 9 (Supp. Resp. Interrogatory, No. 15, Exs. A-C).  On January 12, 2012, Rimini

14  served supplemental versions of these charts.  Hixson Decl., Ex. 10 (Supp. Exs. A-C).

15      The Court has already found that customer license terms did not authorize Rimini's

16  infringing use of Oracle's PeopleSoft software.  Dkt. 474.  The Court's finding was based on its

17  review of relevant customer license terms. *Id.*  Additional infringement will also turn on relevant

18  license terms.

19      At trial, Rimini should be held to the response it provided to Oracle's Interrogatory

20  Number 15, and the Court should exclude any attempt by Rimini to assert its actions were

21  authorized by other provisions of relevant licenses.  Fed. R. Civ. P. 26(e)(1)(A) states in relevant

22  part:  "A party who . . . has responded to an interrogatory . . . must supplement or correct its

23  disclosure or response . . . in a timely manner if the party learns that in some material respect the

24  disclosure or response is incomplete or incorrect, and if the additional or corrective information

25  has not otherwise been made known to the other parties during the discovery process or in

26  writing."  Fed. R. Civ. P. 37(c)(1) states in turn that "[i]f a party fails to provide information or

27  identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that*

28  *information or witness to supply evidence . . . at a trial*, unless the failure was substantially

1    justified or is harmless."  (emphasis supplied).  Rule 37(c)(1) is "a 'self-executing,' 'automatic'

2    sanction to 'provide[] a strong inducement for disclosure of material . . . .'"  *Yeti by Molly Ltd. v.*

3    *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Advisory Committee

4    notes).  Courts exclude evidence from trial under Rule 37(c) when a party did not timely disclose

5    it in response to an interrogatory.  *See e.g.*, *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227

6    F.R.D. 313, 323-24 (C.D. Cal. 2004).

7         At this late stage, Oracle should not be forced to guess on which sentences in which

8    agreements and for which customers Defendants might attempt to rely on for a license

9    defense.  That was the purpose of the Interrogatory Number 15.  Allowing Defendants to

10    introduce evidence at trial that they failed to identify in discovery violates Rule 37(c)(1) and

11    undermines the Rule's purpose to assure fairness at trial and "eliminate[] surprise."  *Licciardi v.*

12    *TIG Ins. Grp.*, 140 F.3d 357, 363 (1st Cir. 1998) (internal citation omitted).

13    **V.    MOTION NO. 5:  PAROL EVIDENCE TO VARY THE**
       **UNAMBIGUOUS TERMS OF AGREEMENTS**
14

15         Pursuant to Rule 402 and California Civil Procedure Code Section 1856, Oracle moves *in*

16    *limine* to exclude parol evidence, including evidence of industry practice, to vary the

       unambiguous terms of the agreements at issue in this case.
17

18         Rimini has asserted an express license defense as an affirmative defense to Oracle's

19    copyright claims.  Dkt. 116 (Defendants' First Amended Answer) at 25:22-25.  Also at issue in

20    several of Oracle's claims against Rimini are the terms of use ("TOU") for Oracle's support

21    websites, which Oracle claims Rimini violated in downloading files from Oracle's websites.  As

22    explained in Oracle's companion *Daubert* motion, Rimini's experts Brooks Hilliard and David

23    Klausner seek to offer expert testimony concerning the interpretation of the licenses and TOU.

       Seth Ravin gave similar testimony in his deposition.  The Court should exclude that testimony.[7]
24

25         The terms of these licenses and TOU are unambiguous.  In its February 13, 2014 ruling

26    on Oracle's first motion for summary judgment, the Court evaluated exemplary licenses and

27    _____

      [7] For the convenience of the Court, together with its *Daubert* motion, Oracle is submitting copies
28    of the expert reports with its objections noted to the relevant sections.

1  found that the relevant terms are unambiguous.  Dkt. 474 at 11:6-11, 14:12-14, 14:25-26, 18:4-8,

2  19:13-15, 20:1-2.  Rimini also agrees that the terms of the licenses are unambiguous.  Dkt. 620 at

3  5:11-12 ("the meanings of the licenses are clear, nontechnical, and unambiguous.").  As to the

4  TOUs, Rimini has failed to point to any ambiguous term up to this point in the litigation.

5  　　　　Under California law,[8] parol evidence is inadmissible to vary or contradict the clear and

6  unambiguous terms of a written agreement.  Cal. Civ. Proc. Code § 1856; *Wolf v. Walt Disney*

7  *Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008), *as modified on denial of reh'g* (June

8  4, 2008).

9  　　　　The Court should exclude this evidence related to license interpretation, to the extent it

10  would serve as parol evidence to vary or contradict the unambiguous terms of the agreements at

11  issue.  Rimini has attempted to argue through its technical expert, Mr. Hilliard, as part of its

12  express license defense that "[f]ar from Oracle's allegations of massive theft, Rimini's practices

13  are legal and supported by industry-leading practices."  Dkt. 266 at 6:21-24; *see also id.* at

14  12:15-13:10, 24:14-20.  Seth Ravin has similarly argued that █████████████████████

15  ████████████████████████████████████████████████████████████████████

16  █████████████████████████████  Hixson Decl., Ex. 4 (Ravin 11/18/11 Dep.) 463:14-

17  464:1.  Ravin also testified in deposition regarding ███████████████████████████

18  ███████████████████████████████████████████████

19  ████████████████████████  *See, e.g.*, Hixson Decl., Ex. 4 (Ravin 11/18/11 Dep.) 334:8-11

20  ███████████████████████████████████████████████████

21  █████████████████████████████████████████████████  Such

22  arguments and related evidence should be excluded as irrelevant and inadmissible pursuant to

23  Rule 402 and Cal. Civ. Proc. Code § 1856.

24  **VI.**　　**MOTION NO. 6:  CUSTOMER STATEMENTS IN AT RISK REPORTS**

25  　　　　Oracle moves *in limine* to exclude customer statements referred to in its at risk reports,

26  cancellation reports and related documents (collectively, "at risk reports") on the ground that

27  _____

28  [8] Most of the licenses at issue in this case, as well as the TOUs, contain a choice of law provision selecting California law.  Hixson Decl., ¶ 11.

1    they are third parties' out of court statements offered to prove why customers left Oracle, and

2    thus inadmissible hearsay.  Fed. R. Evid. 801, 802.[9]

3        A.    **Oracle's At-Risk Report Contains Unreliable Third Party**
              **Statements.**
4
5        Starting in May 2005, Oracle maintained at risk reports containing information about

6    customers who told Oracle they were considering dropping Oracle support.  Hixson Decl., Ex. 5

     (Cummins 30(b)(6) Dep.) 89:7-11, 205:8-10, 207:12-17.[10]  The reports contain several categories
7
     of information, such as the annual support amounts, the customer status, the contract type, and
8
     the revenue impact amount.  *See*, *e.g.*, Hixson Decl., Ex. 17 (DTX 293).  This motion is directed
9
     only to the customer comments contained in the "notes" or "issues" or fields, which recite the
10
     reasons the customer gave for possibly dropping Oracle support. [11]
11
         Oracle did not affirmatively seek out or systematically identify at risk customers.  Hixson
12
     Decl., Ex. 5 (Cummins 30(b)(6) Dep.) 190:17-191:1, 216:16-23.  Rather, it only learned
13
     information about their status if they happened to provide it, particularly if they were considering
14
     leaving Oracle.  Hixson Decl., Ex. 1 (Ransom Dep.) 71:4-17.  Oracle also did not try to verify
15
     the customer statements' accuracy.  If a customer told its Oracle support sales representative any
16
     reasons for dropping or considering dropping support, the rep would simply paraphrase and
17
     email that information to Elizabeth Shippy, who pasted it into the notes column in the report.
18
     Hixson Decl., Ex. 5 (Cummins 30(b)(6) Dep.) 216:16-23, 269:11-18.  The "information was only
19
     as good as what [the customers, via the reps] gave her."  *Id.* at 270:7-15.  "[C]ustomers give you
20
     what they want . . . you to have.  So there's certainly limitations with that."  *Id.* at 269:19-25.
21
     _____

22   [9] In the voluminous Oracle production, there are several versions of the at risk reports,
     presentations containing portions of it and other spreadsheets similar to the at risk reports that
23   track customer comments or issues containing similar inadmissible customer hearsay.  Hixson
     Decl., Exs. 14-17 (DTX 154, 290, 292, 293) to the Hixson Declaration includes examples of or
24   excerpts of DTXs which fall in this category.  For the reasons set forth herein, Oracle moves to
     exclude these occurrences of customer comments being recorded in internal Oracle documents.

25   [10] The cited depositions from *Oracle v. SAP* were reproduced in this case.

26   [11] Prior to January 2008, the information was centralized in one "at risk" report that Oracle kept
     because "we were seeing losses to [third party competitor] TomorrowNow, and so we wanted to
27   make sure that we tracked those losses very specifically."  Hixson Decl., Ex. 5 (Cummins
     30(b)(6) Depo.) 90:1-10, 211:2-13.  After January 2008, the customers' comments were kept in
28   Oracle's OKS database and sometimes included in other reports.  *Id.* at 284:20-285:1, 286:19-22.

13

1    "[T]ypically, during the renewal process, customers will communicate and negotiate and

2    either claim, truthfully or not, that they are working with a third-party vendor."  Hixson Decl.,

3    Ex. 1 (Ransom Dep.) at 69:6-15.  The comments in the at risk reports are thus "very subjective,"

4    because "if a customer is negotiating . . . one of the things they could indicate is that the level of

5    support is not what they're expecting."  Hixson Decl., Ex. 2 (Cummins 7/13/11 Dep.) 94:9-

6    96:6.[12]  Customers would not provide accurate or complete explanations when cancelling support

7    from Oracle or Rimini.  *See*, *e.g.*, Hixson Decl., Ex. 11 (ORCLRS0260575) (internal Oracle

8    email from Robert Lachs to Rick Cummins stating, "It turns out [customer] was purposefully

9    dishonest (or 'vague' as they elect to phrase it) keeping us at bay while a) not telling us the

10   renewal was at risk . . ."); *see also* Ex. 12 (PTX 551) (letter from █████████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████), Ex. 3 (████████████ Dep.) 47:1- 49:4 (discussing PTX 551 and

13   explaining █████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   █████████████████████████).

16   **B.    The Court Should Exclude the Hearsay Customer**
     **Comments.[13]**

17

18          Assuming for this motion only that the at risk reports themselves are Oracle's business

19   records, the customer comments contained in them are inadmissible second-level hearsay.  *See*

20   Fed. R. Evid. 805; *United States v. Arteaga*, 117 F.3d 388, 396 n.12 (9th Cir. 1997); *Rowland v.*

21   *Am. Gen. Fin.*, 340 F.3d 187, 194-95 (4th Cir. 2003) (customer complaint inadmissible as double

22   hearsay, even when contained within official records that came within a hearsay exception).

23   Rimini's only purpose in admitting the statements is to argue that *they are true reasons* the

24   customer left Oracle for Rimini.

25          The second-hand customer comments do not fit any hearsay exception and have no

26   ─────────────
     [12] Using DTX 290 as an example, the notes field for █████████████████████████

27   ███████████████████████████████████████  Hixson Decl., Ex. 15.
     Eighteen customers were deposed in this case, both parties attended all of their depositions,

28   and both parties designated testimony from those depositions.  Thus, reliable customer evidence
     is available to be admitted at trial.  Fed. R. Civ. P. 32(a).

14

1    indicia of reliability.  If business records "contain information obtained from a customer, thus

2    constituting hearsay within hearsay, the records will come within the business records exception

3    only 'if it is shown that the business's standard practice was to verify the information provided.'"

4    *Shimozono v. May Dep't Stores Co.*, No. 00-04261 WJR AJWX, 2002 WL 34373490, at *13

5    (C.D. Cal. Nov. 20, 2002) (quoting *United States v. Mitchell*, 49 F.3d 769, 778 (D.C. Cir. 1995));

6    *see also* Robert E. Jones et al., Fed. Civ. Trials & Ev., Ch. 8G-E, § 8:2691 (The Rutter Group

7    2014) (customer statements cannot form part of a business record unless "the business' standard

8    practice was to *verify* the information provided by the outsider").  Oracle did not verify the

9    accuracy of the customers' comments but simply pasted them into the notes field of the at risk

10    reports.

11          The customer comments also are not business records because "[t]hat exception applies

12    only if the person furnishing the information to be recorded is acting routinely, under a duty of

13    accuracy, with employer reliance on the result, or in short in the regular course of business."

14    *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (holding that witness statements in a

15    police report were inadmissible hearsay) (internal quotation marks omitted).  The "ultimate issue

16    is whether the customers themselves were acting under some business duty to provide accurate

17    information" to the employees.  *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, No. 11-CV-5149 YGR,

18    2013 WL 4766401, at *3 (N.D. Cal. Sept. 5, 2013).  Oracle's customers were under no such

19    duty.  To the contrary, customers in active negotiations with Oracle had every incentive to be, at

20    best, vague, and to tell Oracle only "what they want" it to know, "truthfully or not."  *See* § VI.A,

21    above.  "The problem," in short, "is that the customer is under no duty to report accurately."

22    *Shimozono*, 2002 WL 34373490, at *13.

23          Second-hand, out-of-court statements by third parties with an economic incentive not to

24    be truthful are the paradigm of inadmissible hearsay.  The customer comments "should be

25    excluded."  *Arteaga*, 117 F.3d at 395; *see also Alzuraqi v. Grp. 1 Auto., Inc.*, 921 F. Supp. 2d

26    648, 671-72 (N.D. Tex. 2013) (excluding customer complaints and surveys in company's files

27    because they were double hearsay); *Knauff v. Dorel Juvenile Grp.*, No. CIV. SA:08-CV-336-XR,

28    2010 WL 114014, at *4-5 (W.D. Tex. Jan. 6, 2010) (granting motion *in limine* to exclude

1    incident reports summarizing claims or complaints from consumers because they were second-

2    level hearsay).

3    **VII.    MOTION NO. 7:  ANTITRUST AND COMPETITION RHETORIC AND
          EVIDENCE, OR UNRELATED EVIDENCE CONCERNING ORACLE**

4

5         Oracle moves *in limine* to exclude any evidence or argument referring to Oracle as a

     "monopolist," Oracle's practices as "anticompetitive," or any claim that any Oracle practice is

6    unlawful, including previously dismissed counterclaims brought by Defendants.

7         Since Rimini's inception, Rimini and Seth Ravin have ███████████████████████

8    █████████████████████, and their trial exhibit list contains documents repeating those

9    assertions.  *E.g.*, Hixson Decl. Exs. 13, 18, 19, 22 (DTX 129, 378 and 379) (letters from

10   Defendants' counsel describing Oracle's practices as anticompetitive).  Ravin at deposition also

11   showed that he would, although not responsive to the question, ██████████████████████

12   ████████████████████████████████████████████.  For example, in response to

13   questions about TomorrowNow's criminal guilty plea, Ravin said ███████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████     Hixson Decl. Ex. 4 (Ravin 11/17/11 Dep.) 284:22-285:6.

16        Despite such statements, Defendants have never actually alleged any antitrust claims

17   against Oracle.  They filed three counterclaims against Oracle alleging defamation, copyright

18   misuse and unfair competition.  Dkt. 116.  But even those claims were baseless.  The Court

19   dismissed the copyright misuse and unfair competition counterclaims on October 29, 2010.  Dkt.

20   111.  And the Court granted Oracle's motion for summary judgment on Rimini's defamation

21   claim on August 14, 2014.  Dkt. 476.

22        Evidence and argument relating to counterclaims that were never filed, or that were filed

23   and have been dismissed, are not relevant to the determination of liability in this action and are

24   therefore inadmissible under Rule 402.  *See Andazola v. Logan's Roadhouse, Inc.*, No. CV-10-S-

25   316-NW, 2013 WL 1834308, at *8 (N.D. Ala. Apr. 29, 2013) (granting motion *in limine* to

26   exclude evidence that is relevant only to plaintiff's dismissed claims).

27        Permitting Rimini to use baseless and accusatory rhetoric against Oracle could cause

28

1  jurors to wrongly believe that Oracle's practices might be unlawful, when there are no

2  counterclaims against Oracle for the jury to consider, or that evidence relating to copyright

3  misuse and unfair competition are somehow relevant to the claims in the case, when the Court

4  has already dismissed those claims on summary judgment.  Such irrelevant rhetoric would also

5  require Oracle to use critical time to try and undo that prejudice by explaining to the jury that no

6  Court has ever found any Oracle practice relevant in this case to be unlawful.  Admitting such

7  evidence and references should thus be excluded under Rules 402 and 403.

8  **VIII.   MOTION NO. 8:  SETTLEMENT DISCUSSIONS**

9       Oracle moves *in limine* to exclude communications made during the party's June 3, 2015

10  Court-ordered settlement conference and to exclude nine pre-suit offers of compromise.  This

11  evidence should not be admitted at trial to "to prove or disprove the validity or amount of a

12  disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid.

13  408(a).

14       **A.     Evidence Related To Court-Ordered Settlement Conference**

15       On June 3, 2015, the Parties participated in a Court-ordered settlement conference.  *See*

16  Order, Dkt. 533 (setting settlement conference).  The Court ordered the Parties to exchange

17  certain information in writing after the settlement conference.  *See* Minutes, Dkt. 588; Minutes,

18  Dkt. 613.  Both the Parties' statements and conduct during the settlement conference and the

19  information exchanged pursuant to the Court's Orders after the settlement conference are subject

20  to exclusion pursuant to Rule 408(a).  *See SCD RMA, LLC v. Farsighted Enterprises, Inc.*, 591 F.

21  Supp. 2d 1131, 1139 n.3 (D. Haw. 2008) ("Generally, offers of settlement are not admissible

22  under Federal Rules of Evidence 408(a) when used to prove liability.").

23       **B.     Pre-Suit Communications Proposing Resolution Of Identified
24            Claims**

25       Rimini's exhibit list contains nine pre-suit letters between Rimini and Oracle that are

25  excludable pursuant to Fed. R. Evid. 408(a):  DTXs 129, 378, 379, 383, 384, 385, 388, 397, and

26  398.  Hixson Decl., Exs. 13, 18-22, 24-26. ███████████████████████████

27  ████████████████████████████████████████████████████████

28

1  ██████████████████████

2  In the first three of these exhibits, Rimini's counsel ████████████████████████

3  ████████████████████████████████████████████████████████

4  █████████████████████████████████████████████

5  ███████████████████████████████████████ Hixson Decl., Ex. 21 (DTX

6  384) (Oct. 6, 2005 letter alleging ███████████████████████████

7  █████████████████████████████████████████████████████████

8  ███████████████████████████████████████████████

9  █████████████████████████████████████████████

10 ███████████████████████████████████████████

11 ███████████████████████████████████

12 ███████████████████); Ex. 13 (DTX 129) (June 28, 2007 letter alleging "anti-competitive"

13 conduct and "tortious[] interfer[ence] with Rimini Street contracts and . . .expected economic

14 advantages," offering that "senior Rimini Street representatives will make themselves available .

15 . . to collaborate and cooperate with Oracle" and "work together," and threatening to "meet any

16 continued attempts to interfere with Rimini Street's lawful business with an appropriate response

17 . . . . from Rimini Street [or] government entities with jurisdiction"); Ex. 19 (DTX 379)

18 (duplicate of DTX 129).

19 In the fourth exhibit, Rimini offered as further consideration that █████████████████

20 █████████████████████████████████████████████ (Hixson Decl.,

21 Exs. 13 and 19 (DTX 129/DTX 379)).  *See id.*, Ex. 26 (DTX 398) (███████████████

22 ████████████████████████████████████████████████

23 ██████████████████████████████████████████

24 ███████████████████████████████████████████████

25 ███████████████████████████████████████████████

26 ████████████████████████████████████████████████████).

27 The fifth through ninth exhibits are similar in scope and tone.  These exhibits ████████

28 ████████████████████████████████████████████████████

ORACLE'S MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE AT TRIAL

1    ███████.  Hixson Decl., Ex. 20 (DTX 383) (response to Hixson Decl., Exs. 13 (DTX 129/DTX

2    379)); Ex. 24 (DTX 388) (response to Hixson Decl., Ex. 20 (DTX 383)); Ex. 22 (DTX 385)

3    (response to Hixson Decl., Ex. 24 (DTX 388)); Ex. 23 (DTX 387) (response to Hixson Decl., Ex.

4    26 (DTX 398)); Ex. 25 (DTX 397) (response to Hixson Decl., Ex. 23 (DTX 387)).

5            Because each of these exhibits ████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████, each

7    should be subject to the strictures of Rule 408.  *See Hernandez v. UPS Supply Chain Solutions,*

8    *Inc.*, 496 F. Supp. 2d 778, 783 (W.D. Tex. 2007) (communications characterized as offers of

9    compromise are subject to Rule 408); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No.

10   3:12-cv-04967, --- F. Supp. 3d ----, 2015 WL 925892 at *12, *15 (N.D. Cal. Mar. 2, 2015)

11   (affirming exclusion of "pre-suit correspondence" because "the substance of the discussions,

12   including proposed terms and the parties' respective positions," was subject to exclusion

13   pursuant to Fed. R. Evid. 408), *appeal filed*, (9th Cir. Apr. 28, 2015).  The Court should not

14   admit DTX 129, 379, 383, 384, 385, 378, 388, 397, or 398 to establish or defend against liability,

15   to set or evaluate a proposed damages amount, or to impeach.  Fed. R. Evid. 408(a).

16           Further, Rimini's accusatory language in some of these letters concerning potential

17   antitrust claims or copyright misuse are properly excluded for the further reason that there are no

18   such claims in the upcoming trial, either because Rimini never asserted them or because

19   summary judgment was granted on them.  *See* MIL No. 7, above.

20   IX.    **MOTION NO. 9:  RIMINI LIVE WITNESSES WHO ARE NOT**
          **MADE AVAILABLE FOR ORACLE'S CASE IN CHIEF**
21

22           Oracle moves *in limine* to preclude Rimini from calling live witnesses whom it fails to

23   make available for Oracle to call during its case-in-chief.  Rule 611 requires Courts to "exercise

     reasonable control over the mode and order of examining witnesses and presenting evidence so
24
     as to [] make those procedures effective for determining the truth . . . ."
25
             Pursuant to its authority under Rule 611, and to avoid the undue prejudice that would
26
     result, courts have repeatedly required defendants to make employee defense witnesses available
27
     to testify during a plaintiff's case-in-chief.  *See, e.g.*, *R.B. Matthews, Inc. v. Transamerica*
28

1   *Transp. Servs., Inc.*, 945 F.2d 269, 272-73 (9th Cir. 1991) (condemning defendants'

2   "gamesmanship" in refusing to produce live witnesses for the plaintiffs' case-in-chief and

3   affirming trial court's exclusion of live testimony during defendants' case); *Buchwald v. Renco*

4   *Group, Inc.,* No. 13-cv-7948 (AJN), 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 22, 2014) ("Given

5   that the five witnesses will already be bearing the burden and expense of traveling to New York

6   for trial (to testify in Defendants' case), the evident purpose of Defendants' motion is to prevent

7   the Trustee from making his case as effectively as possible.  Courts have properly denounced this

8   strategy as 'gamesmanship.'"); *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633, 2009 WL

9   3415689, at *6 (S.D. Cal. Oct. 21, 2009) (holding that defendant would be precluded from

10  presenting live testimony from witnesses where defendant refused to produce those same

11  witnesses during the plaintiffs' case-in-chief); *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790,

12  806 (N.D. Ill. 2002) (holding that under Rule 611, exclusion of employee witness's live

13  testimony for the defense where the same witness refused to appear and testify during the

14  plaintiffs' case-in-chief is proper); *Maran Coal Corp. v. Societe Generale De Surveillance S.A.*,

15  No. 92 CIV. 8728 (DLC), 1996 WL 11230, at *2 (S.D.N.Y. Jan. 10, 1996) (citing *In re Gulf*

16  *Oil/Cities Service Tender Offer Litig.*, 776 F.Supp. 838 (S.D.N.Y. 1991) (holding that under the

17  court's authority pursuant to Rule 611, defendants must produce witnesses for plaintiff's case or

18  be precluded from calling them as live witnesses in their own case)).

19      The prejudice to Oracle in this case from not making witnesses available for trial is

20  particularly acute in this case.  This case is about Rimini's conduct, Rimini's copying, and

21  Rimini's lies, all issues within the knowledge and control of Rimini witnesses.  Plaintiff Oracle

22  is therefore entitled to summon live witnesses on these issues as part of its case-in-chief.

23      By contrast, Rimini faces no prejudice from making its witnesses available.  Rimini's

24  CEO Seth Ravin has stated that he will attend the trial so Oracle may call him without this

25  motion.  Even for other witnesses, Rimini is headquartered in Las Vegas and so any of its

26  witnesses who would travel here for the defense case or at any other time would face no

27  prejudice from traveling to the corporate headquarters at an earlier point in the trial.  Finally, the

28  witness only need appear once at trial.  Once the witness is called by Oracle for an adverse

ORACLE'S MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE AT TRIAL

1 | direct, Oracle will not object that Rimini's cross examination of the witness (i.e., Rimini's direct
2 | of its witness) exceeds the scope of the questions Oracle asked.

3 **X.       MOTION NO. 10:  AVOIDED LABOR COST EVIDENCE**

4 |      Oracle moves *in limine* to preclude Defendants from admitting any evidence or argument
5 | about the labor costs Rimini saved from infringing Oracle's software.  As described in Oracle's
6 | companion *Daubert* motion, a damage measure based on avoided labor costs is not relevant to
7 | any damages claim in this case.  Thus, any evidence about avoided labor costs should be
8 | excluded as irrelevant under Rule 402 and because it would be confusing and prejudicial under
9 | Rule 403.

12 | DATED:  July 22, 2015

14 | Morgan, Lewis & Bockius LLP

16 | By:_____/s/ Thomas Hixson_____
17 | Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc.
and Oracle International Corp.