SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS AND ROCA LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 780
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC. , a Nevada corporation and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-PAL <br><br> **DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S MOTIONS *IN LIMINE* NOS. 1-12** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL STANDARD ......................................................................................... 3

III.    ARGUMENT ...................................................................................................... 3

        1.      MIL No. 1:  To Exclude Improper Derogatory Characterization Of Or
                References To Rimini Street. ................................................................... 3

        2.      MIL No. 2:  To Exclude All Evidence Or Argument Regarding Rulings
                Made By The Court In The Case. ............................................................. 5

        3.      MIL No. 3:  To Exclude Evidence Or Argument Regarding Rimini Street
                Executives' And Mr. Ravin's Potential Net Worth And Certain Financial
                Metrics. ................................................................................................... 7

        4.      MIL No. 4:  To Limit The Use Of Videotaped Deposition Testimony. ................. 8

        5.      MIL No. 5:  To Exclude Evidence Or Argument Regarding Additional
                Infringement Theories. ............................................................................. 9

        6.      MIL No. 6:  To Exclude Evidence Or Argument Regarding The Purchase
                Price Or Total Amount Spent Developing The Software At Issue. ...................... 11

        7.      MIL No. 7:  To Exclude Evidence Or Argument That Rimini Street Made
                And Sold "Pirated" Copies Of Oracle Software To Unlicensed Customers. ....... 12

        8.      MIL No. 8:  To Exclude Evidence Or Argument Regarding Any Alleged
                Misappropriation Of Confidential Or Trade Secret Information. ......................... 13

        9.      MIL No. 9:  To Exclude Any Mention Of Rimini Street's Deletion Of Its
                Software "Library," Including The Spoliation Order And The Adverse
                Inference Jury Instruction. ...................................................................... 15

        10.     MIL No. 10:  To Exclude Evidence Of Copyright Damages Allegedly
                Incurred More Than Three Years Prior To The Date The Complaint Was
                Filed.   18

        11.     MIL No. 11:  To Exclude Evidence Previously Offered Solely To Support
                Withdrawn Damages Theories. ................................................................ 19

        12.     MIL No. 12:  To Exclude Oracle's Trial Exhibit 65, Bates-Stamped
                RSI04026526. ........................................................................................ 20

IV.     CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
  2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009)....................... 4

*Asyst Techs., Inc. v. Empak, Inc.*,
  2007 WL 120845 (N.D. Cal. Jan. 11, 2007) ........................................ 13

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ........................................................................ 7

*Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*,
  770 F.3d 610 (7th Cir. 2014) ...................................................... 18, 19

*City of Long Beach v. Standard Oil Co. of Cal.*,
  46 F.3d 929 (9th Cir. 1995) .............................................................. 3

*Clark v. Thomas*,
  2014 U.S. Dist. LEXIS 78063 (D. Nev. June 6, 2014) ...................... 14, 15

*Cole v. Salt Creek, Inc.*,
  2014 WL 1671500 (D. Utah Apr. 28, 2014) ...................................... 11

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
  2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) .............................. 5, 6, 12

*Durham v. Cnty. of Maui*,
  804 F. Supp. 2d 1068 (D. Haw. 2011) .............................................. 3

*Geddes v. United Financial Grp.*,
  559 F.2d 557 (9th Cir. 1977) ........................................................... 7

*Greycas, Inc. v. Proud*,
  826 F.2d 1560 (7th Cir. 1987) ......................................................... 6

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
  2001 WL 36166855 (S.D. Cal. June 11, 2001) .................................... 6

*Luce v. United States*,
  469 U.S. 38 (1984).......................................................................... 3

*M2 Software, Inc. v. Madacy Entm't*,
  421 F.3d 1073 (9th Cir. 2005) ....................................................... 13

*Meredith v. Weilburg*,
  2015 U.S. Dist. LEXIS 69155 (D. Nev. May 28, 2015) ...................... 14

*Mobile Hi-Tech Wheels v. CIA Wheel Grp.*,
  514 F. Supp. 2d 1172 (C.D. Cal. 2007) .......................................... 10

*Obrey v. England*,
  215 F. App'x 621, 2006 WL 3825350 (9th Cir. Dec. 26, 2006)............... 8

*Old Chief v. United States,*
    519 U.S. 172 (1997) ................................................................................. 4

*Oracle Corp. v. SAP AG,*
    765 F.3d 1081 (9th Cir. 2014) ............................................................... 19

*Oracle Int'l Corp. v. SAP AG,*
    2012 U.S. Dist. LEXIS 74157 (N.D. Cal. May 29, 2012) ........................ 4

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
    134 S. Ct. 1962 (2014) ........................................................................... 18

*Roley v. New World Pictures,*
    19 F.3d 479 (9th Cir. 1994) ................................................................... 18

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ................................................................................. 7

*TXO Production Corp. v. Alliance Resources Corp.,*
    509 U.S. 443 (1993) ................................................................................. 7

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011) ............................................................. 12

*United States v. Cabrera,*
    222 F.3d 590 (9th Cir. 2000) ................................................................... 4

*United States v. Curtin,*
    489 F.3d 935 (9th Cir. 2007) ................................................................... 3

*United States v. Hill,*
    953 F.2d 452 (9th Cir. 1991) ................................................................... 4

*United States v. Yida,*
    498 F.3d 945 (9th Cir. 2007) ................................................................... 8

*Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n,*
    2011 WL 6300796 (D. Nev. Dec. 15, 2011) ......................................... 13

*William Hablinski Architecture v. Amir Constr. Inc.,*
    2005 WL 4658149 (C.D. Cal. Feb. 27, 2005) ........................................ 6

*Wilson v. Hartford Ins. Co. of the Midwest,*
    2011 WL 2670199 (W.D. Wash. July 7, 2011) ...................................... 6

*Young & Assocs. Public Relations, LLC v. Delta Air Lines, Inc.,*
    216 F.R.D. 521 (D. Utah 2003) ............................................................... 8

## Statutes

17 U.S.C. § 507(b) ............................................................................................ 18

Cal. Civ. Code § 3294(b) ................................................................................. 21

457839 v1

**Rules**

Fed. R. Civ. P. 32 ................................................................................................ 8

Fed. R. Civ. P. 32(a) ........................................................................................... 8

Fed. R. Civ. P. 32(a)(4) ...................................................................................... 8

Fed. R. Civ. P. 45 ................................................................................................ 8

Fed. R. Evid. 404(b) .......................................................................................... 10

Fed. R. Evid. 401 ....................................................... 3, 5, 7, 10, 13, 14, 15, 16, 19, 20, 21

Fed. R. Evid. 403 ................................................ 3, 4, 5, 7, 10, 13, 14, 15, 17, 19, 20, 22

Fed. R. Evid. 404 .............................................................................................. 4, 10

Fed. R. Evid. 804 ................................................................................................ 8

**Other Authorities**

Kenneth S. Broun, et al., *McCormick on Evidence* (7th ed. 2013) § 253 ............................................ 8

457839 v1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Motions *in limine* are critical to establishing the parameters for a fair trial and enabling the parties to finalize their trial strategy.  Establishing those parameters is particularly important in a sprawling case like this one, which involves nearly a dozen causes of action and implicates thousands of identified trial exhibits and dozens of potential trial witnesses.  The parties met and conferred extensively regarding the parameters for trial, but were unable to resolve all of their disputes.  To ensure a fair trial directed at the *actual issues in dispute*, Defendants Rimini Street and Seth Ravin (collectively "Rimini" or "Rimini Street") therefore move *in limine* to exclude the following categories of evidence and argument:

1. Any characterization of or references to Mr. Ravin, Rimini Street, or Rimini Street's employees as "criminals," "thieves," or other similarly derogatory terms based on criminal law or with criminal connotations, including statements that Defendants "stole" or "ripped off" Oracle's software.  Such rhetoric is inaccurate, needlessly inflammatory, and constitutes improper character evidence.

2. Any evidence or argument regarding rulings made by the Court in the case beyond what is reflected in the Court's jury instructions.  To the extent such rulings are not ultimately reflected in the jury instructions, they should be excluded because they are not probative of any facts still at issue in the case, and the jury may either be confused by them or assign them excessive weight.

3. Any evidence or argument regarding Rimini Street's revenue from non-accused products, its "contractual backlog" measure of potential future revenue, and Rimini Street executives' and Mr. Ravin's potential net worth in Rimini Street stock.  Such evidence or argument is irrelevant and unfairly prejudicial.

4. As dictated by the Federal Rules of Evidence, videotaped deposition testimony, unless a witness is unavailable or to impeach a witness on the stand.

5. Any evidence or argument directed to additional infringement theories for copies of software already adjudicated to be infringing by virtue of the Court's previous orders.  Liability for

infringement is already established for these copies, and any additional infringement theories would be irrelevant, cumulative, and could only serve to unfairly prejudice the jury against Rimini Street.

6. Any evidence or argument regarding the purchase price of the companies acquired by Oracle or total amount spent developing the software at issue, because it is not relevant to Oracle's damages theories and would skew any damages awarded by the jury.

7. Any description of Rimini Street as having made and sold "pirated" copies of Oracle software to unlicensed customers (as opposed to having used such software in an unauthorized way). Such an argument is not supported by the evidence, is irrelevant to Oracle's allegations, and would greatly prejudice Rimini Street.

8. Any evidence or argument regarding any alleged misappropriation of confidential or trade secret information. Oracle has not pleaded any theory of misappropriation or trade secret theft, and such evidence would be needlessly inflammatory and unfairly prejudicial to Rimini Street.

9. Any argument or mention of Rimini Street's deletion of its software "library," including the spoliation order and the adverse inference jury instruction. These highly prejudicial arguments are now irrelevant because liability for infringement is now established given the Court's summary judgment holdings.

10. Any evidence of copyright damages allegedly incurred more than three years before the date the complaint was filed, because infringements are only actionable within three years of their occurrence.

11. Any evidence or argument previously offered solely to support Oracle's abandoned hypothetical license theory.

12. Oracle's trial exhibit 65, Bates-stamped RSI04026526, because it was authored by, and sent to, individuals who were either not authorized to speak on behalf of Rimini Street or who lacked any discretion over corporate policy. In addition, the language in the exhibit is likely to confuse the jury and distract it from the issues before it.

## II.    LEGAL STANDARD

A party may use a motion *in limine* "to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401; *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007).  Even if the evidence is relevant, a court may exclude it "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The party seeking to introduce the evidence bears the burden of establishing the evidence is admissible.  *See City of Long Beach v. Standard Oil Co. of Cal.*, 46 F.3d 929, 937 (9th Cir. 1995); *see also Durham v. Cnty. of Maui*, 804 F. Supp. 2d 1068, 1069 (D. Haw. 2011) (granting motion *in limine* where the defendants had "not carried their burden of establishing the admissibility" of certain evidence).

## III.    ARGUMENT

1.    **MIL No. 1:  To Exclude Improper Derogatory Characterization Of Or References To Rimini Street.**

The Court should preclude Oracle and its witnesses from using inflammatory or other derogatory rhetoric to refer to Rimini Street, including, but not limited to, referring to Defendants as "thieves" or arguing that they "stole" or "ripped off" Oracle's copyrighted works, or any derivation of those terms using references to criminal law or similar hyperbole.

*Background*: Beginning with its original complaint and continuing thereafter, particularly in its sections of the Joint Pretrial Order, Oracle has laced its accusations against Rimini Street with inflammatory rhetoric regarding "massive theft" and criminal activity, including describing Rimini Street as "buil[ding] a business on the back of their massive theft" and engaging in "*criminal* copyright infringement."  ECF 527 at 2, 4; *id.* at 23.  Such inflammatory characterizations should be prohibited for the following reasons:

*Irrelevant*:  Inflammatory rhetoric has no place in any trial and has no tendency to prove any fact of consequence.  Fed. R. Evid. 401.  Characterizing copyright infringement as theft is not

accurate:   copyright infringement is copying, not stealing.   Indeed, the Northern District of California granted a nearly identical motion *in limine* to preclude Oracle from using such inflammatory language in its copyright infringement action against SAP.  *See Oracle Int'l Corp. v. SAP AG*, 2012 U.S. Dist. LEXIS 74157, at *11-12 (N.D. Cal. May 29, 2012) (granting defendants' motion *in limine* to preclude reference to "theft" or "stealing" of software because such words "would be inflammatory" and "could potentially confuse the jury" because such words are "associated with criminal conduct"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 2009 U.S. Dist. LEXIS 89183, at *19-20 (S.D.N.Y. Sept. 28, 2009) (prohibiting "the use of pejorative terms when such categorizations [are] inflammatory and unnecessary to prove a claim"). Inflammatory and inaccurate characterizations of Rimini Street's conduct as theft lack any probative value at all to resolving the issues to be tried.

**Prejudicial**: Particularly because inflammatory rhetoric has no probative value, real dangers of unfair prejudice, confusion, and misleading the jury tip the balance sharply in favor of its exclusion.  Fed. R. Evid. 403; *see Oracle Int'l Corp.*, 2012 U.S. Dist. LEXIS 74157, at *11-12. Inflammatory rhetoric is the classic example of "suggest[ing] decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, 1972 Adv. Comm. Note. Inappropriate epithets (such as "thief") or accusations (such as "ripped off") are by their nature inflammatory, and their only purpose is to smear Rimini Street, prejudge its civil liability on grounds other than the merits of the case, and inflame the jury to punish Rimini Street with a larger damages award.  *See*, *e.g.*, *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (unfair prejudice occurs when evidence "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged"); *United States v. Cabrera*, 222 F.3d 590, 595-96 (9th Cir. 2000) (use of inflammatory rhetoric prejudiced defendant).

**Bad Character**:  Any suggestion along the lines that Rimini Street and Ravin are "thieves" or have a habit of engaging in criminal copyright infringement is improper character evidence.  Fed. R. Evid. 404.   Inflammatory aspersions regarding Rimini Street's and Ravin's characters are not admissible to prove that on this particular occasion Rimini Street and Ravin acted in accordance with that character.  *See*, *e.g.*, *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991) (Fed. R. Evid. Rule

- 4 -

404 "is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged ... because it is convinced that the defendant is a bad man deserving of punishment").

2. **MIL No. 2:  To Exclude All Evidence Or Argument Regarding Rulings Made By The Court In The Case.**

With the exception of jury instructions, the terms of which will be negotiated and decided upon separately, the Court should preclude Oracle and its witnesses from introducing any evidence, argument, or references relating to any dispositive, evidentiary, procedural, or other rulings, or statements or findings embedded within those rulings, made by the Court in this matter, including rulings on, or narrowing of, affirmative defenses and counterclaims that are no longer in the case. Such statements should be prohibited as they are not probative of any facts at issue in the case, and to the extent they would be confusing and misleading to the jury and would prejudice Rimini Street. Fed. R. Evid. 401, 403.

*Background*:  Oracle refers to a number of these rulings in its portion of the Joint Pretrial Order, including arguing that "[t]he Court's summary judgment rulings established that Rimini infringed Oracle's copyrights based on Rimini's copying and use of Oracle's Database software and Oracle's PeopleSoft software for certain customers" (ECF 527 at 2); that the Court "ruled that Rimini infringed Oracle's J.D. Edwards and Siebel copyrights, but left open the question of whether Rimini's use of this software was limited to archival and backup copies" (*id*. at 3); that the Court found that Rimini Street's statements about its "data silos" were false (*id*.); that the Court "sanctioned Rimini for deleting a co-mingled library of Oracle's software in anticipation of that library being discovered in litigation" (*id*.); that the 321 local PeopleSoft environments on Rimini Street's system were "prima facie copyright infringement" (*id*. at 59); and referring to the "impact of the Court's license ruling" (*id*.).

*Irrelevant*:  Any mention of these rulings should be excluded to the extent they involve statements beyond the Court's actual jury instructions.  Likewise, Oracle should not be permitted to discuss "claims that are no longer in the case" as such claims are irrelevant.  *See Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, 2014 WL 4090550, at *13 (N.D. Cal. Aug. 19, 2014) (excluding rulings on all dispositive, evidentiary, or procedural motions in patent infringement case as irrelevant

- 5 -

and prejudicial under Rules 401 and 403); *William Hablinski Architecture v. Amir Constr. Inc.*, 2005 WL 4658149, at *9 (C.D. Cal. Feb. 27, 2005) (directing parties to refrain from referring to prior rulings or offering evidence relevant solely to issues disposed of by those rulings).

*Prejudicial*:  In addition, the rulings should be excluded because the jury is likely to give any statements in those rulings excessive weight and to accept them as absolutely true without doing any of its own fact-finding.  *See Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) (explaining judicial policy of preventing juries from hearing statements made by courts because they might assign such statements undue weight).  The jury also could erroneously rely on the improper assumption that because the Court rejected some of Rimini Street's affirmative defenses, Rimini Street's other defenses are somehow suspect.  Relatedly, the jury also could improperly rely on the rulings to find infringement as to software packages that the Court did not rule upon, such as J.D. Edwards and Siebel, under the misguided belief that such inferences have already been approved by this Court.  The same logic might lead the jury to erroneously assume willfulness without going through the actual analysis that a finding of willfulness would require.  *See*, *e.g.*, *Digital Reg*, 2014 WL 4090550, at *13; *Wilson v. Hartford Ins. Co. of the Midwest*, 2011 WL 2670199, at *4 (W.D. Wash. July 7, 2011) (excluding evidence or mention of court's summary judgment rulings at trial).

Moreover, the rulings should be excluded because the jury might be confused about the difference between the legal burden applicable to the Court's pre-trial rulings and the burden for the jury to apply at trial.  For example, if the Court were to explain the high standard for summary judgment, the jury might erroneously believe that the Court's grant of summary judgment to Oracle means that its claims for infringement (and, by implication, damages) are irrefutable, even though the Court did not grant summary judgment as to some of Oracle's claims and even though the issue of damages remains hotly disputed.  *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 2001 WL 36166855, at *4 (S.D. Cal. June 11, 2001) (excluding references to any statement, finding or ruling in summary judgment orders in patent infringement case); *see also* Mem. of Points & Authorities, *Hewlett-Packard Co. v. Mustek Sys.*, *Inc.*, 2001 WL 36151796 (S.D. Cal. May 25, 2001).

3.    **MIL No. 3:  To Exclude Evidence Or Argument Regarding Rimini Street Executives' And Mr. Ravin's Potential Net Worth And Certain Financial Metrics.**

The Court should preclude Oracle and its witnesses from introducing any evidence, argument, or references relating to Rimini Street's revenue from non-accused products, its "contractual backlog" measure of potential future revenue (*see* ECF 564-1 (under seal) ¶ 234), and Rimini Street executives' and Mr. Ravin's potential net worth in Rimini Street stock.  Such evidence or argument is not relevant to any of the issues at trial and would only improperly influence the jury's verdict.  Fed. R. Evid. 104, 401, 403, 602.  Indeed, the Supreme Court has cautioned repeatedly against the use of such financial evidence in cases involving potential punitive damages, emphasizing the dangers of prejudice and bias that can arise.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).

*Irrelevant*: Oracle may try to introduce evidence or argument before the jury of Rimini Street executives' or Mr. Ravin's potential net worth in Rimini Street stock.  It is well established in the Ninth Circuit, however, that references to a defendant's financial standing are irrelevant to a determination of whether damages should be awarded, and if so, how much.  *See*, *e.g.*, *Geddes v. United Financial Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("It has been widely held by the courts that have considered the problem that the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded") (collecting cases); Fed. R. Evid. 401.  And the revenue from non-related products or the potential net worth of Rimini Street executives who are not even parties to this action is plainly irrelevant.  Fed. R. Evid. 401.

*Prejudicial*:  Even if such evidence were relevant (it is not), the probative value of any evidence relating to the potential net worth of Rimini Street executives or Mr. Ravin in Rimini Street stock is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  Fed. R. Evid. 403.  Moreover, if such evidence is used to punish Rimini Street, its executives, or Mr. Ravin in any way, it would violate their due process rights.  *See State Farm*, 538 U.S. at 427; *TXO Production Corp. v. Alliance Resources Corp*., 509 U.S. 443, 464 (1993).

4.      **MIL No. 4:  To Limit The Use Of Videotaped Deposition Testimony.**

The Court should preclude Oracle and its witnesses from introducing any and all videotaped deposition testimony except (1) if the witness is unavailable or otherwise outside the Court's subpoena power, or (2) to impeach the witness while the witness is on the stand testifying.  Fed. R. Civ. P. 32, 45; Fed. R. Evid. 804.

"Underlying both the constitutional principles [of the Sixth Amendment] and the rules of evidence is a preference for live testimony."  *United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) (describing at length the longstanding preference for live testimony before the jury); *see also Obrey v. England*, 215 F. App'x 621, 2006 WL 3825350, at *1 (9th Cir. Dec. 26, 2006) (there is a "strong preference for oral testimony in open court").

As a result of these important Sixth Amendment principles, both the Federal Rules of Civil Procedure and the Federal Rules of Evidence permit the substitution of deposition testimony for live testimony in only limited situations.   Federal Rule of Civil Procedure 32(a)(4) stresses "the importance of live testimony in open court" and provides that the court should first determine that the witness is unavailable before allowing use of deposition testimony.  *See also* Kenneth S. Broun, et al., *McCormick on Evidence* (7th ed. 2013) § 253 ("The right to use a deposition at the trial in place of the personal appearance of the deponent is usually conditioned upon unavailability") (citing Rule 32(a)).  Rule 804 of the Federal Rules of Evidence also permits the use of deposition testimony only when a witness is unavailable to testify live at trial.  Like Rule 32(a)(4), Rule 804 requires a party seeking to use a deposition transcript to show "an inability to procure declarant's attendance (a) by process or (b) by other reasonable means."  *Id.*

If a witness is able to testify live during trial, that witness is not "unavailable" within the meaning of either Federal Rule of Civil Procedure 32 or Federal Rule of Evidence 804.  *See*, *e.g.*, *Young & Assocs. Public Relations, LLC v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 524 (D. Utah 2003) (referencing the "universal preference for live testimony" and prohibiting use of videotaped deposition of defendant's employees where defendant agreed to make deponents available live at trial).  Allowing use of recorded deposition testimony in lieu of live testimony for witnesses who are

1   appearing live would subvert the well-established preference for live testimony and all of the
2   reasoning underlying that preference.

3       Accordingly, the Court should limit the use of deposition testimony only (1) to unavailable
4   witnesses, and (2) for impeachment for available witnesses scheduled to appear at trial while the
5   witness is on the stand.  Finally, even for witnesses whose deposition testimony the Court may allow
6   to be played notwithstanding that the witnesses are available, the usual rules of the Court's discretion
7   to avoid cumulative testimony and otherwise control the flow of the trial continue to apply.

8   5.    **MIL No. 5:  To Exclude Evidence Or Argument Regarding Additional Infringement**
9         **Theories.**

10      This Court should preclude Oracle and its witnesses from introducing any evidence,
11  argument, or references relating to acts of copying already adjudicated to be infringing and should
12  not permit Oracle to introduce evidence about the *additional*, overlapping ways in which Oracle
13  argues that Rimini Street infringed Oracle's copyrights.

14      ***Background***:   In the Joint Pretrial Order, Oracle alleges Rimini Street infringed its
15  copyrights in numerous ways by, for example, making copies of Oracle's "Enterprise Software
16  programs to support their software support service clients" (ECF 527 at 23); "maintain[ing] copies of
17  software and support materials from Oracle websites on individual developers' machines" (*id*. at 24);
18  copying "installation media" (*id*.); copying "physical media" (*id*.); "creating and copying
19  installations of Oracle software … on Defendants computer systems" (*id*. at 25); "buil[ding]
20  development, or non-production, environments for a number of Defendants' customers" (*id*.);
21  "backing up and restoring environments to or from Rimini's computer systems" (*id*. at 26); "us[ing]
22  … environments located on Defendants' systems" (*id*. at 27); "load[ing] … more than a *de minimis*
23  portion … of copyrighted Oracle software … into RAM" (*id*.); "copying individual files that
24  embodied more than a *de minimis* portion of an Oracle copyrighted work" (*id*. at 28); creating
25  "restored backups" (*id*.);  "display[ing]" and "open[ing]" Oracle files on Rimini's computers (*id*.);
26  creating "fixes and updates" (*id*. at 28-29); "distributing updates to Oracle's enterprise software" (*id*.
27  at 30); and "publicly displaying Oracle's enterprise software" (*id*.).

28

Because liability for infringement as to the PeopleSoft software has now been established under this Court's summary judgment rulings, evidence or argument regarding the additional ways in which Oracle alleges that Rimini Street infringed the PeopleSoft software would be cumulative, irrelevant, and prejudicial, would confuse or mislead the jury, and would unnecessarily prolong trial. It should therefore be excluded. Fed. R. Evid. 401, 403, 404.

*Irrelevant*: Such evidence would be irrelevant in light of the Court's ruling granting Oracle's motion for summary judgment as to the PeopleSoft express license defense (ECF 474 at 15) and Rimini Street's subsequent stipulation not to reassert that defense at trial (ECF 550). The question of *how* Rimini Street infringed the PeopleSoft software is relevant only to liability, and liability is no longer at issue with respect to the PeopleSoft software in light of Rimini Street's stipulation. *See*, *e.g.*, *William Hablinksi Architecture*, 2005 WL 4658149, at *9  (excluding evidence relating to issues disposed of by court's prior rulings).  Nor does it have any relevance to the alleged infringement of other software products. *See*, *e.g.*, *Mobile Hi-Tech Wheels v. CIA Wheel Grp.*, 514 F. Supp. 2d 1172, 1177 (C.D. Cal. 2007) (excluding evidence relating to alleged infringement of unrelated patent).  Finally, the additional ways Rimini Street arguably infringed PeopleSoft software in the past is not relevant to Rimini's proposed non-infringing alternative support model because the viability of this alternative model, of course, does not turn on the nature of Rimini's past conduct.

*Cumulative*: For similar reasons, such evidence would be cumulative.  Given this Court's summary judgment rulings and Rimini Street's stipulation, there is no need to burden this Court or the jury with additional evidence regarding infringing acts which are no longer at issue (such as the copying of the PeopleSoft software onto Rimini Street's own servers), or with evidence regarding additional, overlapping ways infringement was or might have been found. Fed. R. Evid. 403.

*Prejudicial*: Such evidence could confuse or mislead the jury into erroneously believing that Rimini Street either committed more acts of infringement than it did, thereby unduly influencing any damages it might award to Oracle, or that Rimini Street's infringement is especially blameworthy. Further, it could erroneously suggest to the jury that because Rimini Street was found to have infringed before, it must have infringed at other times, too, or must still be infringing now.  Such propensity evidence is inadmissible under Federal Rule of Evidence 404(b).

457839 v1

6.    **MIL No. 6:  To Exclude Evidence Or Argument Regarding The Purchase Price Or Total Amount Spent Developing The Software At Issue.**

The Court should preclude Oracle and its witnesses from introducing any evidence, argument, or references relating to the purchase price of the companies acquired by Oracle or total amount Oracle claims to have spent on the software packages at issue here, including PeopleSoft, J.D. Edwards, and Siebel.

*Background*:  Oracle repeatedly refers to these amounts in the Joint Pretrial Order, noting that it spent $6.1 billion to purchase Siebel (ECF 527 at 19, 44) and $11.1 billion to purchase PeopleSoft and J.D. Edwards (*id.* at 46).  Oracle also alleges that it spends "several billions of dollars each year in overall research and development, a significant portion of which is dedicated to the products at issue in this case."  *Id.* at 22.  The total amount Oracle spent to acquire these businesses is not relevant to its claim for damages based on lost profits, statutory damages, or punitive damages, and would likely confuse the jury if discussed at trial, because these amounts are based on the entire value of those businesses, not just the potential to develop or provide support services.  It should therefore be excluded under Federal Rules of Evidence 401 and 403.

*Irrelevant*:  Any evidence or argument about how much Oracle spent in total to acquire these businesses or to develop software generally has no bearing on the question of their damages.  By Oracle's own admission, its theory of damages is based on lost profits from the support services (*see, e.g.*, ECF 600 at 1), as well as any other statutory or punitive damages that may be available.  While the profits Oracle derived, or believes it would have derived, from providing support services for those product lines may be relevant, the total price it paid in order to earn those profits is not.  *See, e.g.*, *Cole v. Salt Creek, Inc.*, 2014 WL 1671500, at *2 (D. Utah Apr. 28, 2014) (excluding evidence of total purchase price of business where it had no bearing on subsequent breach of contract and ERISA claims).  Oracle's case for introducing evidence or argument about how much it spends to develop software is even more tenuous, given the vagueness of the reference in the Joint Pretrial Order to "several billions" of dollars, an unspecified "portion of which" is dedicated to the products at issue.

- 11 -

**Prejudicial**: In addition to its limited probative value, presenting evidence or argument regarding the total purchase price for these product lines or the amount spent developing software generally would confuse and mislead the jury and would prejudice Rimini Street. The purchase prices Oracle cites did not pertain to support services alone, as it admits (ECF 527 at 44 (Siebel); 46 (PeopleSoft, J.D. Edwards)), and without further context, a jury could erroneously make that assumption and either explicitly or implicitly factor those figures into its damages award. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (affirming decision to order new trial on damages due to admission of evidence of defendant's total revenues as part of a license calculation where the "$19 billion cat was never put back into the bag" and unfairly influenced the jury's damage award in a patent infringement case); *Digital Reg*, 2014 WL 4090550, at *6 (granting motion to exclude evidence of total revenues, company valuation or overall financial success where it would "skew the damages horizon for the jury").

The high figures would also improperly allow Oracle to convey the impression that Oracle deserves compensation because it already invested significant sums into developing this area of its business, whereas (Oracle might argue) Rimini Street merely piggybacked off of Oracle's financial outlays. But the fact that Oracle has had to compete with Rimini Street in the support services market does not give Oracle license to trumpet the size of its investments in software packages generally.

7.    **MIL No. 7:  To Exclude Evidence Or Argument That Rimini Street Made And Sold "Pirated" Copies Of Oracle Software To Unlicensed Customers.**

Oracle's claim in this case is not that Rimini Street copied and sold Oracle's copyrighted software, but rather that Rimini Street *used* Oracle's software to compete with Oracle in the secondary software support market. Given the nature of this claim, the Court should preclude Oracle and its witnesses from characterizing Rimini Street having made and/or sold "pirated" copies of Oracle software to unlicensed customers.[1] Statements to this effect, untethered from Oracle's actual theory of copyright infringement, should be prohibited because such statements are inaccurate and

---

[1] Oracle has stipulated and agreed not to use the term "knock offs" to describe the allegedly unauthorized copies but has not otherwise agreed to exclude similar references.

1  contrary to the evidence, are not probative of any facts at issue, would confuse and mislead the jury,

2  and would prejudice Rimini Street.  Fed. R. Evid. 401, 403.

3    **_Irrelevant_**:  References or suggestions that Rimini Street made and/or sold "pirated" copies

4  of Oracle's software directly to unlicensed customers—as opposed to having used the software to

5  compete with Oracle—are factually inaccurate and not even alleged in the Complaint.  Oracle has

6  never claimed that it was harmed by any alleged "pirating" of its software (because no such

7  "pirating" has occurred), but rather has consistently claimed that it was harmed by Rimini Street's

8  _use_ of Oracle's software to provide "vendor replacement-level support at significant discounts"

9  through the creation of updates, patches, fixes, and other support services.  ECF 527 at 41; _see also_

10  _id_. at 36.

11    **_Prejudicial_**:  Given Oracle's theory of the case, any suggestion or insinuation that Rimini

12  Street made and/or sold "pirated" copies of any Oracle software, as opposed having used the

13  software to generate support materials or services for that software, would not be probative of any

14  material fact relevant to Oracle's claims, and the introduction of that argument would unfairly

15  prejudice Rimini Street and would confuse and mislead the jury.  _See Wells Fargo Bank, N.A. v._

16  _LaSalle Bank Nat'l Ass'n_, 2011 WL 6300796, at *1 (D. Nev. Dec. 15, 2011) (citing _M2 Software,_

17  _Inc. v. Madacy Entm't_, 421 F.3d 1073, 1087-88 (9th Cir. 2005)) ("Courts in the Ninth Circuit

18  routinely grant motions _in limine_ seeking to exclude evidence that is irrelevant to the claims and

19  defenses at issue"); _Asyst Techs., Inc. v. Empak, Inc._, 2007 WL 120845, at *1-2 (N.D. Cal. Jan. 11,

20  2007) (granting motion to exclude evidence of copying where not required to prove elements of

21  plaintiff's claim).

22  8.  **MIL No. 8:  To Exclude Evidence Or Argument Regarding Any Alleged**
    **Misappropriation Of Confidential Or Trade Secret Information.**

23

24    The Court should preclude Oracle and its witnesses from introducing any evidence,

25  argument, or reference relating to any alleged misappropriation of confidential or trade secret

26  information by Rimini Street employees from their former employers, including Ray Grigsby's

27  possession of material he retained from his former employers.  Any such evidence and argument is

28  irrelevant and prejudicial.  Fed. R. Evid. 401, 403.

**Background**:  Ray Grigsby, the Vice President of Rimini Street's J.D. Edwards practice, testified during deposition that he was a former employee of J.D. Edwards and that he took with him a backup hard drive containing various materials, some of which he used on occasion in subsequent jobs including at Rimini Street.  These materials included a PowerPoint sales presentation about J.D. Edwards software.   Mr. Grigsby further testified that he used the J.D. Edwards PowerPoint presentation to create content for Rimini Street, admitting that he violated confidentiality agreements with his previous employer.

**Irrelevant**:  As an initial matter, Mr. Grigsby is not a defendant in this case, and the substance of the material from his former employer, as well as his possession or use of that material, is not at issue in this lawsuit.  Any reference to that testimony is therefore totally irrelevant.  Fed. R. Evid. 401.   Specifically, exclusion is warranted because Oracle has not articulated a case for copyright infringement that is predicated on Mr. Grigsby's actions and also has not pleaded any theory of misappropriation or trade secret theft based on Mr. Grigsby's conduct or the conduct of any other Rimini Street employee.  Any allegations of such behavior, whether through evidence or argument, therefore are patently irrelevant to the claims in this case and have no tendency to prove any facts of consequence for the actual causes of action upon which Oracle seeks to recover.  Fed. R. Evid. 401.  Courts routinely exclude evidence related to claims that have not been pleaded.  *See*, *e.g.*, *Meredith v. Weilburg*, 2015 U.S. Dist. LEXIS 69155, at *4 (D. Nev. May 28, 2015) (granting motion *in limine* when "there [was] no retaliation claim alleged in the Complaint such that evidence of retaliation would be relevant at trial"); *Clark v. Thomas*, 2014 U.S. Dist. LEXIS 78063, at *14-15 (D. Nev. June 6, 2014) (granting motion *in limine* to exclude references to conduct that had not been alleged and was not an issue to be tried).

**Prejudicial**: Any probative value of such evidence, including Mr. Grigsby's testimony, is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  Fed. R. Evid. 403.  Oracle may seek to make inflammatory assertions suggesting trade secret theft in order to bias the jury.  Not only will such information needlessly prejudice Rimini Street, it will also tend to confuse and mislead the jury into finding liability or increasing damages for conduct that is irrelevant.  *See*, *e.g.*, *Clark*, 2014 U.S. Dist.

1  LEXIS 78063, at *15 (excluding references to "a cover up or false charges" when such conduct had

2  not been alleged, noting "[t]he mere mention of a cover up or false charges would also be highly

3  prejudicial" and would confuse and mislead the jury).

4  9.     **MIL No. 9:  To Exclude Any Mention Of Rimini Street's Deletion Of Its Software

5          "Library," Including The Spoliation Order And The Adverse Inference Jury
         Instruction.**

6          The Court should preclude Oracle and its witnesses from making any reference to or mention

7  of Rimini Street's deletion of its software "library," including the Court's spoliation order and any

8  adverse inference jury instruction, because, in light of intervening rulings and stipulations, all such

9  evidence is now irrelevant and prejudicial.  Fed. R. Evid. 401, 403.  Rimini Street expects that no

10 such jury instruction will be warranted, and discussion of this issue has no bearing on the issues

11 presented at trial and should therefore be excluded.

12         *Background*:  Before the filing of this suit, Rimini Street deleted an obsolete internal

13 software folder after taking a computer snapshot of the contents of that folder.  Years later, Oracle

14 moved for spoliation sanctions, contending that that software folder was deleted after Rimini Street

15 was on notice of litigation and that it contained relevant evidence.  ECF 302, 307.  Rimini Street

16 opposed, explaining that it was a routine deletion, that it was willing to stipulate that the internal

17 software folder included a complete copy of each of the relevant works registered by Oracle, and

18 that in any event the metadata of the deleted files would not have proven what Oracle claimed it

19 would.  ECF 336, 338.  On March 29, 2013, the Court granted Oracle's motion, and ordered "that

20 the jury be instructed that Rimini had a complete copy of each of Oracle's registered works ... in its

21 software library."  ECF 466 at 18.  The Court further ordered that:

22         [T]he jury should be instructed that Rimini breached its duty to preserve relevant
          evidence when it deleted the software library in January 2010, knowing that Oracle
23         was likely to file a lawsuit against it based on claims that Rimini was impermissively
          using Oracle's registered copyright software and knowing that the software library
24         contained evidence potentially relevant to Oracle's anticipated lawsuit.  The jury shall
          be instructed that it may, but is not required, to infer that the software library
25         contained evidence that was favorable to Oracle's claims and unfavorable to Rimini's
          claims and defenses in this case.
26

27 *Id.* at 20.

28

1   Oracle subsequently argued in a motion for summary judgment that Rimini Street was not

2   entitled to the affirmative defense of express license because it could not establish which licensee's

3   installation media it used to build the development environments.   ECF 246 at 18.   The Court

4   rejected that argument, holding that "the rights contained in the [licensee's] license apply equally to

5   the copies of the copyrighted software maintained on Rimini's systems regardless of whether Rimini

6   used the specific installation media provided by Oracle to make those copies."   ECF 474 at 9-10

7   (emphasis added).   As a result of that ruling, it is legally irrelevant whether the deleted software

8   library could have established that one licensee's installation media was used to build another

9   licensee's development environment.   Therefore, it should not be introduced at trial.

10       ***Irrelevant***:   The Court's findings and adverse inference instructions regarding Rimini

11   Street's spoliation of evidence—issued over two years ago—are no longer relevant to the issues

12   remaining at trial, in light of this Court's intervening summary judgment order.   Fed. R. Evid. 401.

13   Yet Oracle continues to refer to that conduct, including throughout the Joint Pretrial Order, purely in

14   order to paint Rimini Street in a bad light.   *See* ECF 527 at 3, 25, 49.   The Court should exclude any

15   such references to spoliation or the spoliation order at trial on relevance grounds.

16       The Court's previous decision to provide the jury with an adverse inference instruction was

17   based on two reasons, neither of which continues to apply.   The Court determined that the deleted

18   evidence could have established "whether (1) Rimini downloaded PeopleSoft software to the library

19   before Rimini had any PeopleSoft customers, and (2) whether at least some of specified client

20   environments were created by copying software obtained from or for other customers."   ECF 466 at

21   18.   Because these reasons no longer apply, the instruction is no longer warranted, and the evidence

22   is irrelevant and inadmissible.

23       The first reason is no longer applicable because Rimini Street has stipulated that it

24   reproduced copyrighted works by copying or installing the specific environments on its local

25   systems.   ECF 527 at 17-18.   Thus, the jury need not be instructed that there may have been evidence

26   on the deleted software library that established copyright infringement—Rimini Street has stipulated

27   that those copies existed.

28

The second reason for offering an adverse inference instruction is no longer supported because this Court has subsequently determined that Oracle's argument on this point is legally irrelevant. Oracle argued that the deleted software library would provide "powerful evidence" regarding whether Rimini Street infringed copyrights by using software installation files associated with one licensee to create local development environments for another licensee. ECF 466 at 13. But the Court rejected that argument as "flawed," ruling that "the rights contained in the [licensee's] license apply equally to the copies of the copyrighted software maintained on Rimini's systems *regardless of whether Rimini used the specific installation media* provided by Oracle to make those copies." ECF 474 at 9-10 (emphasis added).

In short, there is no longer any reason to provide the jury with an adverse inference instruction over something that is not in dispute, and the evidence regarding spoliation and the Court's spoliation order are irrelevant and inadmissible.

*Prejudicial*: Additionally, the potential prejudicial effect of such evidence substantially outweighs any relevance it could conceivably have. Fed. R. Evid. 403. For example, there is a significant possibility that the jury would be misled and confused. *Id.* Inviting the jury to draw adverse inferences about evidentiary issues that are not in dispute would essentially encourage it to engage in speculation that would serve no purpose beyond needlessly prejudicing Rimini Street. Also, Oracle's discussion of spoliation in the Joint Pretrial Order illustrates how Oracle is likely to describe the destruction of evidence in an inflammatory manner designed to appeal to the jury's emotions and to distract it from the fact issues actually to be adjudicated at trial. *See, e.g.*, ECF 527 at 2-4 (Oracle accusing Rimini Street of being "criminal," committing "theft," and engaging in a "scheme" to "indiscriminate[ly] infringe[]" and "hide what it has been doing" to "avoid paying for the full extent of the harm it caused Oracle if it was ever caught"). Because, as described above, that information has no probative value, the only effect of such argument or evidence would be to substantially prejudice Rimini Street.

457839 v1

10.  **MIL No. 10:  To Exclude Evidence Of Copyright Damages Allegedly Incurred More Than Three Years Prior To The Date The Complaint Was Filed.**

The Court should preclude Oracle and its witnesses from introducing any evidence, argument, or reference relating to copyright infringement and damages allegedly incurred before January 25, 2007, which is three years before January 25, 2010, when Oracle filed its initial complaint.  ECF 1.  Oracle indicated in the pretrial order that it will present evidence and seek damages relating to infringement that allegedly occurred in 2006.  *See*, *e.g.*, ECF 527 at 31-33.

The Copyright Act provides that claims must be "commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  In granting Oracle's motion for summary judgment on Rimini Street's statute of limitations defense, this Court previously applied the "discovery rule," holding that "a claim for copyright infringement accrues on the date that a reasonable investigation would have put the rights holder on notice that potentially infringing conduct has occurred," and therefore "Rimini must establish that Oracle knew or should have known of Rimini's underlying acts or conduct which constitute Oracle's copyright infringement claims prior to January 25, 2007."  ECF 476 at 16 (citing *Roley v. New World Pictures*, 19 F.3d 479, 481 (9th Cir. 1994)).

Since the parties briefed that motion for summary judgment, the United States Supreme Court and the Seventh Circuit Court of Appeals have suggested that the proper measure is the "injury rule," which limits a plaintiff to violations that occurred within the three-year period before the complaint was filed.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014); *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610 (7th Cir. 2014).  In *Petrella*, the Supreme Court stated that a copyright claim accrues "when an infringing act *occurs*" and "an infringement is actionable within three years, *and only three years*, of its *occurrence*."  134 S. Ct. at 1969 (emphases added); *id.* at 1970 ("[Section] 507(b)'s limitations period … allows plaintiffs … to gain retrospective relief running only three years back from the date the complaint was filed").  The Court declined, however, to endorse (or reject) the discovery rule, stating that it has "not passed on the question" whether the discovery rule is a viable "alternative to the incident of injury rule."  *Id.* at 1969 n.4.  In *Chicago Building Design*, the Seventh Circuit endorsed revisiting the discovery rule in light of *Petrella*, stating that "the right question to ask in copyright cases" is whether the plaintiffs'

- 18 -

1    claims "occurred within the three-year look-back period from the date on which the suit was filed."

2    770 F.3d at 618 (instructing the parties on remand to address "whether *Petrella* abrogates the

3    discovery rule in copyright cases").

4         In light of the Supreme Court's decision arguably abrogating the discovery rule, Rimini

5    Street respectfully requests that the Court exclude evidence of copyright infringement and damages

6    allegedly incurred before January 25, 2007, pursuant to Federal Rules of Evidence 401 and 403.

7    11.   **MIL No. 11:  To Exclude Evidence Previously Offered Solely To Support Withdrawn Damages Theories.**

8

9         This Court should preclude Oracle and its witnesses from introducing any evidence,

10   argument, or reference previously offered solely to support Oracle's abandoned hypothetical license

11   theory.

12        Oracle's expert, Elizabeth Dean, offered two alternate opinions regarding actual copyright

13   infringement damages:  (i) hypothetical license, and (ii) lost profits.  Rimini Street filed a motion to

14   exclude, *inter alia*, Ms. Dean's testimony regarding hypothetical license damages (including the

15   income approach analysis upon which it was based) because her testimony was unreliable and based

16   on unsupported legal theories that the Ninth Circuit has rejected as "excessively speculative."  ECF

17   563 at 1 (quoting *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014)).  In response,

18   Oracle abandoned its hypothetical license theory for the PeopleSoft, J.D. Edwards, and Siebel

19   software products, and this Court recognized that Oracle is no longer pursuing "hypothetical license

20   damages as it relates to Oracle's allegations of copyright infringement for [these] software

21   materials."  ECF 636 at 5.  Thus, evidence and argument previously offered solely to support

22   Oracle's abandoned hypothetical license theory should be excluded.  Such evidence and argument

23   include "the value Oracle Senior Executives would place" on a license to Rimini Street (ECF 564-1

24   (under seal) ¶ 150), "the value of customers Oracle would expect to lose if it licensed [software] to

25   Rimini Street" (*id.* ¶ 153), or valuations "performed contemporaneously with the date of the

26   [hypothetical] license" on "assumptions regarding the operating results Oracle expected to achieve"

27   (*id.* ¶ 154).

28

Although Oracle halfheartedly contended that it did *not* abandon the hypothetical license with respect to the Oracle Database (ECF 600 at 18-19), the Court should nonetheless exclude reference to any such evidence or argument.  Rimini Street challenged the entire hypothetical license damages calculation, including the Oracle Database, which cannot stand for the same reasons as the PeopleSoft, J.D. Edwards, and Siebel-branded software hypothetical licenses (*see* ECF 627-1 at 3; ECF 563 at 1, 9), such as the fact that the Oracle Database "benchmark" license is also speculative and irrelevant.  *See* ECF 564-1 (under seal) ¶¶ 362-363 (admitting that "the rights to customers under the [benchmark] are ***not*** equivalent to the actual use Rimini Street has made of Oracle Database") (emphasis added).  Indeed, this Court did not state in its order on Rimini Street's motion to exclude the Dean Report that any portion of Ms. Dean's hypothetical license analysis remained. *See* ECF 636 at 5-6.

The Court should preclude Oracle from introducing any evidence or argument on its abandoned hypothetical license theory.

12. **MIL No. 12:  To Exclude Oracle's Trial Exhibit 65, Bates-Stamped RSI04026526.**

The Court should preclude Oracle and its witnesses from introducing any evidence, argument, or references relating to the irrelevant and highly prejudicial email from a single Rimini Street engineer, which Oracle has included on its pretrial exhibit list and which is Bates-stamped RSI04026526.  That email contains the speculations of a single engineer who was not authorized to speak on behalf of Rimini Street and should be excluded as irrelevant and prejudicial.  Fed. R. Evid. 401, 403.[2]

***Background***: Exhibit 65 on Oracle's pretrial exhibit list is an email dated March 9, 2010, sent from an engineer named Chris Limburg to a mid-level manager named John Royse, in which Mr. Limburg makes a request related to building a database.  In the same email, he then states: "[W]e are using development [O]racle software that I don't think is licensed.  Just don't want that to

---

[2]  Because Oracle has not (and could never) establish foundational relevance under Federal Rules of Evidence 401 and 403, the document should not be admitted at trial.  To the extent Rimini Street's objection is deemed an amendment to its objections to Oracle's pretrial exhibit list (ECF 523-8 at 5), Rimini Street respectfully requests permission to amend that objection, noting that the parties reserved their rights regarding their initial objections to the pretrial exhibit list (ECF 527 at 59).

fall back on us if we get audited.  Cause you can download [O]racle software from there [sic] site but not to make money and were [sic] making a crap load of money from there [sic] free stuff :).”  ECF 412 (under seal) Ex. 38.  Neither Mr. Limburg nor Mr. Royse is a high-level manager, executive, director, or attorney, and Mr. Limburg was not making the statement in any specific corporate capacity.

**Irrelevant**:  The document is irrelevant for several reasons.  Fed. R. Evid. 401.  It contains a statement made by a low-level employee who had no authority to speak on behalf of the company to a mid-level manager who lacked substantial discretion over setting corporate policy.  Because Mr. Limburg is not a managing agent, and neither liability nor punitive damages can be assessed against a company for a single low-level employee’s offhand remarks, Mr. Limburg’s statement should not be attributed to or used as evidence against Rimini Street to support a finding of willfulness, malicious conduct, or any other basis for imposing liability against Rimini Street.  *See*, *e.g.*, Cal. Civ. Code § 3294(b) (“An employer shall not be liable for [punitive] damages … based upon acts of an employee, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice”).  It therefore has no tendency to prove any facts of consequence specific to the knowledge or conduct of Rimini Street in this case.  Yet Oracle will likely seek to use this document to inflame the jury (as it previewed in its summary judgment motion, ECF 417 at 2, 14), even though Mr. Limburg is not a defendant in this action.

Mr. Limburg’s statement about “using development [O]racle software” is also irrelevant because it was not made on behalf of the company and because the Court already has ruled that Rimini Street infringed the Oracle Database copyright.  ECF 476 at 15-16.  Mr. Limburg also stated that they were “making a crap load of money from there [sic] free stuff.”  While Oracle may argue that such a statement relates to the amount of damages to be awarded, the term “crap load” clearly has no probative value with respect to the amount of monetary damages Oracle may have suffered.  *See* ECF 523-8.

***Prejudicial***: The extremely limited (if any) probative value of one lone engineer's offhanded remarks in an email is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 403.  Oracle relied on that email in both the introduction and argument of its motion for summary judgment in an attempt to add some emotional appeal to its legal argument.  ECF 417 at 2, 14.  It will likely seek to do the same at trial and use this single individual's non-sanctioned remarks to tar Rimini Street.  But any such attempt—particularly any reliance on the phrase "crap load of money"—would confuse and distract the jury from deciding the actual complicated issues before it, and instead encourage the jury to resort impermissibly to making decisions based on its emotions.  *See* Fed. R. Evid. 403, 1972 Adv. Comm. Note (evidence that may induce improper decision on a purely emotional basis must be excluded under Rule 403).

### IV.     CONCLUSION

For the reasons set forth above, Rimini Street respectfully requests that the Court grant these motions *in limine*.

DATED:          July 22, 2015                          SHOOK, HARDY & BACON


By:   /s/ *Robert H. Reckers*
Robert H. Reckers

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>FRED NORTON (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>fnorton@bsfllp.com<br>kringgenberg@bsfllp.com | BINGHAM MCCUTCHEN LLP<br>GEOFFREY M. HOWARD (*pro hac vice*)<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: (415) 393-2000<br>Facsimile: (415) 393-2286<br>geoff.howard@bingham.com<br>thomas.hixson@bingham.com<br>kristen.palumbo@bingham.com<br><br><br>ORACLE CORPORATION<br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>500 Oracle Parkway<br>M/S 5op7<br>Redwood City, CA 94070<br>Telephone: (650) 506-4846<br>Facsimile: (650) 506-7114<br>jim.maroulis@oracle.com |

By: __/s/ *Robert H. Reckers*_____
Robert H. Reckers

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

- 23 -

457839 v1