1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    WILLIAM ISAACSON (pro hac vice)
6   KAREN DUNN (pro hac vice)
    5301 Wisconsin Ave, NW
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (pro hac vice)
11  KIERAN P. RINGGENBERG (pro hac vice)
    1999 Harrison Street, Suite 900
12  Oakland, CA 94612
    Telephone: (510) 874-1000
13  Facsimile: (510) 874-1460
    sholtzman@bsfllp.com
14  kringgenberg@bsfllp.com

15  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle America, Inc., and
16  Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (pro hac vice)
KRISTEN A. PALUMBO (pro hac vice)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

17

18                      UNITED STATES DISTRICT COURT

19                          DISTRICT OF NEVADA

20

21  ORACLE USA, INC., a Colorado corporation;        Case No. 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
    corporation; and ORACLE INTERNATIONAL           **ORACLE'S MOTION TO EXCLUDE
22  CORPORATION, a California corporation,           TESTIMONY OF DEFENDANTS'
                                                     EXPERTS SCOTT HAMPTON,
23                  Plaintiffs,                      BROOKS HILLIARD,  DAVID
            v.                                       KLAUSNER, AND JAMES BENGE**
24
    RIMINI STREET, INC., a Nevada corporation;       **[REDACTED]**
25  AND SETH RAVIN, an individual,

26                  Defendants.                      Judge:     Hon. Larry R. Hicks

27

28

1

**TABLE OF CONTENTS**

2

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.      SCOTT HAMPTON'S DAMAGES OPINIONS ARE INADMISSIBLE. ........... 2

          A.     Hampton's Calculation of Avoided Costs Is Inadmissible. ...................... 2

                1.     Avoided Costs Is Not a Valid Measure of Copyright
                           Damages. ......................................................................................... 4

                         a.     The Copyright Act Provides for Recovery of
                                  Damages Different from Avoided Costs. .......................... 4

                         b.     Avoided Costs Are Not a Valid Measure of
                                  Damages on Any Other of Oracle's Claims. ..................... 7

                2.     Hampton's Calculation of Avoided Costs Lacks an
                           Adequate Basis. .............................................................................. 8

          B.     Hampton's Lost Profits Opinions Lack Proper Support and Use an
                Incorrect Legal Formula. ....................................................................... 9

          C.     Hampton's Legal Opinions Should Be Excluded. ................................. 10

    II.     JAMES BENGE'S OPINIONS ON AVOIDED COSTS ARE ALSO
          INADMISSIBLE. ............................................................................................ 11

    III.    BROOKS HILLIARD'S OPINIONS ARE NOT RELIABLE. ........................... 14

          A.     Hilliard's Opinions on "Custom and Practice" in the Industry Lack
                Any Reliable Basis. ............................................................................... 14

                1.     Hilliard's Opinions on Custom and Practices and License
                           Interpretation Are Legally Irrelevant. .......................................... 15

                  2.     Hilliard's Experience Provides No Basis to Opine on What
                           Is Common in Providing Third-Party Support for Oracle
                           Products. ........................................................................................ 16

                  3.     Hilliard Relied on Untested Claims on Websites. ....................... 17

          B.     Hilliard's Opinions Vouching for Rimini's Employees' Post-
                Lawsuit Assessments Are Unreliable. ................................................... 18

    IV.    DAVID KLAUSER'S OPINIONS ARE INADMISSIBLE. .............................. 19

          A.     Klausner's Assertions Regarding "Industry Custom" Are
                Unreliable and Not Relevant to the Task at Hand. ................................. 19

          B.     Klausner's "Opinions" Regarding Out-of-Support Downloads are
                 Hearsay and Do Not Provide Expert Analysis. ..................................... 21

CONCLUSION ............................................................................................................. 22

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Acad. of Motion Picture Arts & Sciences v. Olsen,*
No. B159508, 2004 WL 292134 (Cal. Ct. App. Feb. 17, 2004) ................................................. 7

*Ahlberg v. Chrysler Corp.,*
481 F.3d 630 (8th Cir. 2007) ................................................................................................... 10, 14

*Arista Records LLC v. Usenet.com,*
608 F. Supp. 2d 409 (S.D.N.Y. 2009) ................................................................................. 9, 19, 22

*Avila v. Willits Envtl. Remediation Trust,*
633 F.3d 828 (9th Cir. 2011) ......................................................................................................... 16

*Cabrera v. Cordis Corp.,*
134 F.3d 1418 (9th Cir. 1998) ....................................................................................................... 17

*Castaic Lake Water Agency v. Whittaker Corp.,*
No. CV 00-12613 AHM (Rzx), 2002 WL 34700741 (C.D. Cal. Oct. 25, 2002) ................... 17

*Champagne Metals, LLC v. Ken-Mac Metals, Inc.,*
No. CIV-02-0528-HE, 2008 WL 5205204 (W.D. Okla. Dec. 11, 2008) .............................. 9

*Claar v. Burlington R.R.,*
29 F.3d 499 (9th Cir. 1994) ..................................................................................................... 2, 14

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,*
532 U.S. 424 (2001) ........................................................................................................................ 7

*Crow Tribe of Indians v. Racicot,*
87 F.3d 1039 (9th Cir. 1996) ........................................................................................................ 10

*Daubert v. Merrell Dow Pharm. Inc.,*
509 U.S. 579 (1993) ......................................................................................................... 2, 13, 17

*Daubert v. Merrell Dow Pharm., Inc.,*
43 F.3d 1311 (9th Cir. 1995) ................................................................................................. 10, 14

*Deltak, Inc. v. Advanced Systems Inc.,*
767 F.2d 357 (7th Cir. 1985) .................................................................................................... 5, 6

*Diviero v. Uniroyal Goodrich Tire Co.,*
919 F. Supp. 1353 (D. Ariz. 1996) ............................................................................................... 16

*DSU Med. Corp. v. JMS Co.,*
296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) ............................................................................ 3

*General Elec. Co. v. Joiner,*
522 U.S. 136 (1997) ....................................................................................................................... 14

*Goldman v. Healthcare Management Systems,*
559 F. Supp. 2d 853, 869 (W.D. Mich. 2008) ....................................................................... 5, 6

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
471 U.S. 539 (1985) ....................................................................................................................... 11

*J.J. Indus., LLC v. Bennett,*
71 P.3d 1264 (Nev. 2003) ............................................................................................................... 7

*Jamgotchian v. Slender,*
170 Cal. App. 4th 1384 (Cal. Ct. App. 2009) ............................................................................. 7

*Johnson Indus. Sales Inc. v. Strema Sales Corp.*,
SACV 03-0573-JVS(JTLX), 2004 WL 5486651 (C.D. Cal. Jan. 12, 2004) ........................ 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
63 P.3d 937 (Cal. 2003) ................................................................................................. 8

*Levinson v. Westport Nat'l Bank*,
3:09-CV-00269 (VLB), 2012 WL 4489260 (D. Conn. Sept. 28, 2012) ............................... 15

*Marx & Co., Inc. v. Diners' Club Inc.*,
550 F.2d 505 (2d Cir. 1977) ............................................................................................. 15

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
290 F. Supp. 2d 1083 (C.D. Cal. 2003) ........................................................................ 18

*Morford v. Wal-Mart Stores, Inc.*,
2:09-CV-02251-RLH-PAL, 2011 WL 2313648 (D. Nev. June 9, 2011) ....................... 14, 17

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
2006 WL 5242377 (D. Nev. Mar. 6, 2006) ................................................................... 3, 10

*Oracle Am., Inc. v. Google Inc.*,
No. C 10-03561 WHA, 2011 WL 5914033 (N.D. Cal. Nov. 28, 2011) ............................... 5

*Oracle Corp. v. SAP AG*,
765 F.3d 1081 (9th Cir. 2014) ..................................................................................... 4, 6

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (Cal. App. 2008) ...................................................................... 8

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ....................................................................................... 4, 5

*Polaroid Corp. v. Eastman Kodak Co.*,
1990 WL 324105 (D. Mass. Oct. 12, 1990) .................................................................. 10

*Rd. & Highway Builders v. N. Nev. Rebar*,
284 P.3d 377 (Nev. 2012) ............................................................................................. 7

*S.E.C. v. Pasternak*,
CIV A No. 05-3905(JAP), 2008 WL 2281627 (D.N.J. May 29, 2008) ............................ 16

*Sercu v. Lab. Corp. of America*,
No. 3:09-cv-0619-LRH-RAM, 2011 WL 181402 (D. Nev. Jan. 18, 2011) ....................... 16

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ...................................................................................................... 5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
No. C 04–02123, 2008 WL 2323856 (N.D. Cal. May 22, 2008) ................................. 9, 18

*Topaz Mut. Co. v. Marsh*,
839 P.2d 606 (Nev. 1992) ............................................................................................. 8

*Trident Seafoods Corp. v. Commonwealth Ins. Co.*,
850 F. Supp. 2d 1189 (W.D. Wash. 2012) ................................................................... 15

*United States v. Redlightning*,
624 F.3d 1090 (9th Cir. 2010) ...................................................................................... 17

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
447 F.3d 769 (9th Cir. 2006) ...................................................................................... 6, 7

*Wechsberg v. United States*,
54 Fed. Cl. 158 (2002) .................................................................................................. 5

*Westfield Ins. Co. v. Sheehan Const. Co., Inc.*,

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

564 F.3d 817 (7th Cir. 2009) .................................................................................. 15

*Williams v. Illinois*,
   132 S. Ct. 2221 (2012) ......................................................................................... 9

**Statutes & Rules**

17 U.S.C. § 504(b) .......................................................................................... 3, 4, 11

18 U.S.C. § 1030(g) .................................................................................................. 7

Cal. Pen. Code § 502(e)(1) ....................................................................................... 7

Fed. R. Evid. 702 ............................................................................................. passim

Nev. Rev. Stat.§ 205.511 .......................................................................................... 7

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.

2  (collectively, "Oracle") submit this motion to exclude, in whole or in part, expert opinion

3  testimony of Scott Hampton, James Benge, Brooks Hilliard, and David Klausner on behalf of

4  Defendants Rimini Street, Inc. and Seth Ravin (collectively, "Rimini").[1]

5                              **INTRODUCTION**

6    **Scott Hampton and James Benge.**  Mr. Hampton attempts to rebut Oracle's damages

7  expert, Elizabeth Dean.  Among other things, Mr. Hampton opines on Oracle's "actual damages"

8  by estimating how much it would have cost Rimini to avoid infringement, a nonsensical method

9  contradicting the measure of damages under the Copyright Act and tort law.  Mr. Benge is a

10  Rimini employee who spoon-fed Mr. Hampton the basis for Mr. Hampton's opinion,

11  hypothesizing an alternative non-infringing Rimini business model and estimating the additional

12  costs.  Aside from not being a valid measure of Oracle's "actual damages," Messrs. Hampton and

13  Benge's testimony have no reliable basis or any testable methods.

14    **Brooks Hilliard.**  Mr. Hilliard attempts to rebut the expert opinions of Professor Randall

15  Davis of MIT's Computer Science department, who concluded that Rimini made tens of thousands

16  of copies of Oracle software and support materials.  Mr. Hilliard largely does not dispute Professor

17  Davis' factual conclusions.  Instead—in an apparent effort to convince the jury that such copying

18  was acceptable—he opines such copying was consistent with "industry practice."  This testimony

19  is inadmissible because it conflicts with the Copyright Act, state law, and the parol evidence rule

20  and because Mr. Hilliard has no reliable basis or methodology.

21    **David Klausner.**  Mr. Klausner attempts to rebut the expert opinions of Christian Hicks,

22  who analyzed Rimini's automated downloading.  Mr. Klausner also gives opinions on "industry

23

24  ---

[1] For the convenience of the Court, attached to the Appendix of Exhibits in Support of Plaintiffs
25  Oracle's Motion to Exclude Testimony of Defendants' Experts Scott Hampton, Brooks Hilliard,
David Klausner, and James Benge ("Appendix") as Exs. 10A, 11A, and 12A are copies of the
26  expert reports of Messrs. Hampton, Hilliard, and Klausner marked to show the portions of their
disclosed opinions subject to this motion.  Mr. Benge did not provide a report, and Oracle objects
27  to his opinions in their entirety.  Oracle reserves the right to object at trial to any testimony from
these individuals on additional grounds.

28

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

1    practice" in an attempt to testify on the law and alter the unambiguous Terms of Use of Oracle's

2    websites.  His opinions are barred as improper legal testimony and by the parol evidence rule.

3    Further, his opinions on out-of-support downloads are nothing but repackaged hearsay.

4                                            **ARGUMENT**

5         Federal Rule of Evidence 702 requires exclusion of expert testimony unless (1) the

6    testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

7    principles and methods, and (3) the witness has applied the principles and method reliably to the

8    facts of the case.  Fed. R. Evid. 702.  The Court is "authorized and obligated to scrutinize carefully

9    the reasoning and methodology underlying" expert testimony.  *Claar v. Burlington R.R.*, 29 F.3d

10   499, 501 (9th Cir. 1994).  The party proffering an expert opinion must show it meets the Rule 702

11   admissibility standards by a "preponderance of proof."  *Daubert v. Merrell Dow Pharm. Inc.*, 509

12   U.S. 579, 592 n.10 (1993) ("*Daubert*").

13   **I.       SCOTT HAMPTON'S DAMAGES OPINIONS ARE INADMISSIBLE.**

14        Oracle's damages expert, Elizabeth Dean, has estimated Oracle's damages relating to

15   PeopleSoft, J.D. Edwards, and Siebel software using two methods:  the lost profits Oracle would

16   have earned providing support services to certain of Rimini's customers, and Rimini's infringer's

17   profits from providing support on those same products.  (Ex. 8,[2] Dean Report at 28-64, 71-73, 182-

18   185)  Ms. Dean has also estimated the license value of the Oracle Database Software that Rimini

19   Street copied.[3]  (*Id.* at 65-71, 169-181)  Rimini's expert Scott Hampton responds to Ms. Dean.

20        **A.    Hampton's Calculation of Avoided Costs Is Inadmissible.**

21        Mr. Hampton initially asserts that, for an additional ███████ in personnel and other

22   costs to provide remote support, Rimini could have avoided all infringement relating to

23   _____

24   [2] The cited exhibits are attached to the Appendix of Exhibits in Support of Oracle's Motion to
     Exclude Testimony of Defendants' Experts Scott Hampton, Brooks Hilliard, David Klausner, and
25   James Benge and are cited as "Ex. __."

26   [3] Ms. Dean also calculated a hypothetical license damages measure for PeopleSoft, J.D. Edwards,
     and Siebel software, but to streamline the trial, Oracle will not present that damages measure at
27   trial.

28

PeopleSoft, J.D. Edwards and Siebel software, and that this "Rimini's avoided costs" figure, not

Oracle's losses, is the correct measure of Oracle's damages on those claims.  (Ex. 12, Hampton

Report ¶ 10; see also id. ¶¶ 163-165, 169-171; Ex. 14, Hampton 5/25/12 Dep. Tr. 38:19-39:5,

41:5-7)  Mr. Hampton stated in deposition:

> What I will explain to the jury is that there are certain methods to valuing
> copyright infringement, beginning with an understanding of what a copyright
> does, and then capturing the effect of the copyright. I expect to explain that to the
> jury and help the jury to understand that had Rimini Street incurred the additional
> cost to work and operate in a remote manner .... they could have operated in this
> non-[in]fringing manner ....

(Ex. 14, Hampton 5/25/12 Dep. Tr. 45:2-12)  Rimini also offers Rimini employee, James Benge,

as an expert and he gives the same opinion.  (Ex. 17, Benge 6/21/12 Dep. Tr. 10:4-11:20)

In addition, Mr. Hampton asserts that Rimini could have avoided infringing Oracle

Database by purchasing two licenses for two instances of Database running on one single-core

processor to support all of its customers for as little as ███████  (Ex. 12, Hampton Report ¶¶ 228-

232), even though in practice Rimini often used separate copies of Database on computers with

two four-core processors to support each customer, which would have cost ███████████  (Ex. 8,

Dean Report at 67-71)  Mr. Hampton states in his report:

███████████████████████████████████████████████

(Ex. 12, Hampton Report ¶ 230 (footnotes omitted))

"[I]f the grounds used by that expert to calculate damages" are not "legally acceptable" or

the expert does not apply "the appropriate legal formula to determine damages in a particular

case," the expert's methodology must be excluded.  *Nationwide Transp. Fin. v. Cass Info. Sys.,*

*Inc.*, 2006 WL 5242377, at *3 (D. Nev. Mar. 6, 2006), *aff'd* 523 F.3d 1051 (9th Cir. 2008); s*ee*

*also DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1148, 1156 (N.D. Cal. 2003) ("Reliable

methodology requires that the legal grounds used by an expert to calculate damages be legally

acceptable").

1    The plain language of the Copyright Act and principles of compensatory damages reject an

2  "avoided cost" measure of damages for copyright infringement and Oracle's other causes of

3  action.  The opinions of Messrs. Hampton and Benge will accordingly not "help the trier of fact to

4  understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

5          **1.      Avoided Costs Is Not a Valid Measure of Copyright Damages.**

6                  **a.      The Copyright Act Provides for Recovery of Damages Different
                          from Avoided Costs.**

7    The Copyright Act, 17 U.S.C. § 504(b), provides two forms of recovery to a copyright

8  plaintiff:  (1) "actual damages suffered by him or her as a result of the infringement" and (2) "any

9  profits of the infringer that are attributable to the infringement and are not taken into account in

10  computing the actual damages."  "Actual damages" under the Copyright Act "can be awarded in

11  the form of [the copyright owner's] lost profits" or "hypothetical-license damages."  *Oracle Corp.*

12  *v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014); *accord Polar Bear Prods., Inc. v. Timex Corp*.,

13  384 F.3d 700, 708-09 (9th Cir. 2004).

14    The plain language of § 504(b) shows that the costs Rimini allegedly avoided by

15  infringement – that is, the incremental cost of a supposedly non-infringing work-around – does not

16  measure Oracle's copyright damages.  Rimini's avoided costs are neither Oracle's "actual

17  damages" nor Rimini's profits from infringement.  Mr. Hampton does not dispute that his avoided

18  costs calculation does not measure Oracle's lost profits.  Nor could he.  Avoided costs have

19  nothing to do with profits Oracle lost as a result of Rimini's copyright infringement, and Rimini

20  has never claimed otherwise.

21    Nor are Rimini's supposed avoided costs a measure of Rimini's profits attributable to the

22  infringement.  17 U.S.C. § 504(b).  The defendant may not avoid disgorgement by arguing that it

23  would have been able to earn those same profits without infringing.  Permitting such a result

24  would undermine the statute's goal:  "[t]o take away incentives for would-be infringers and to

25  prevent the infringer from unfairly benefitting from a wrongful act."  *Polar Bear Prods*, 384 F.3d

26  at 708 (internal quotations omitted).  It is "[n]ot acceptable" to allow "the existence of non-

27  infringing alternatives to reduce recovery of wrongful profits. . . . Non-infringing alternatives have

28  nothing to do with this."  *Oracle Am., Inc. v. Google Inc*., No. C 10-03561 WHA, 2011 WL

1   5914033, at *4 (N.D. Cal. Nov. 28, 2011).

2       To avoid the plain language of the Copyright Act, Rimini relies on cases interpreting the

3   Patent Act, not the Copyright Act.  The Copyright Act determines damages by measuring the

4   copyright holder's *actual* losses as a result of the infringement.  Rimini accordingly cannot limit

5   copyright damages by arguing after it infringed that it could have chosen not to infringe instead.

6   *Cf. Polar Bear Prods.*, 384 F.3d at 709 (an infringing defendant "is in no better position to haggle

7   over the license fee than an ordinary thief").

8       The Seventh Circuit rejected a similar theory in *Deltak, Inc. v. Advanced Systems Inc.*, 767

9   F.2d 357 (7th Cir. 1985).  Discussing saved costs as a measure of damages, the court held that

10  copyright damages could not be reduced by arguing that the infringed items could have been

11  borrowed:  "the fact that [defendant] could have acted . . . in ways other than the way it did act

12  illegally should not be used by it as a reason to defeat recovery of damages caused by the illegal

13  way in which it did act."  *Id.* at 363 n.4.

14      One court has considered whether the presence of a "remedial" work-around to

15  infringement of software is relevant to actual damages in the copyright context, and determined

16  that it is not.  In *Goldman v. Healthcare Management Systems*, after the plaintiff filed suit for

17  copyright infringement, the defendant attempted to rewrite its computer program to remove

18  infringing source code.  559 F. Supp. 2d 853, 869, 873 (W.D. Mich. 2008).  That defendant then

19  used the cost of the remedial work-around to calculate damages.  *Id.*  The plaintiff moved to

20  exclude evidence of this "rewrite," and the court agreed that it was not relevant to "actual

21  damages" under the Copyright Act, notwithstanding patent case law.  *Id.* at 875-76.

22      The court in *Goldman* noted that it was "reluctant to borrow the remedial scheme from

23  patent law without a greater justification for doing so."  *Id.* at 875 (citing *Sony Corp. of America v.

24  Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) and *Wechsberg v. United States*, 54

25  Fed. Cl. 158, 162 (2002)).  The court distinguished a patent's broad protection of *ideas* and

26  copyright's narrower protection of *expression*:

27      The ability to achieve the same or similar result using an alternative means may
        implicate the novelty of an idea and hence is relevant to the final assessment of
28      damages in a patent suit, [but] the same cannot be said in a copyright suit. Patents

5

1
2
3
4
5

encourage innovation. Copyrights encourage originality in expression. Copyrights give the holder the exclusive right to reproduce an original or derivative work. If the work is infringed by copying without authorization, the copyright holder is entitled to damages for that infringement. ***The ability to avoid damages by rewriting a computer program, or a song, or reproducing a painting, should not be considered because it would not implicate the*** originality *of the expression being protected.* Those concerns are considered in patent cases precisely because the alternatives question the *novelty* of the patent; if there are alternatives, or could be alternatives in the marketplace, the idea is not novel.

6   *Id.* at 875-76 (first emphases added).  The court granted the motion *in limine*, holding that the

7   "rewrite costs are not relevant to the calculation of actual damages resulting from Defendants'

8   copyright infringement."  *Id.* at 876.

9          Attempting to find some linkage to the Copyright Act, Mr. Hampton says his avoided cost

10   figure calculates the "value of use" by Rimini.  (Ex. 12, Hampton Report ¶¶ 205-06)  "Value of

11   use" under the Copyright Act means a hypothetical license value,[4] that is, "'the amount a willing

12   buyer would have been reasonably required to pay a willing seller at the time of the infringement

13   for the actual use made by [the infringer] of the plaintiff's work.'"  *Oracle v. SAP*, 765 F.3d at

14   1087 (quoting *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006))

15   (alteration in *Oracle v. SAP*).  "Value of use" as argued by Mr. Hampton is very different from

16   value of use as that concept is used under the Copyright Act.  Mr. Hampton even disavowed that

17   Rimini's avoided costs represents "what a willing buyer and a willing seller would have agreed" to

18   in a "hypothetical negotiation" relating to PeopleSoft, J.D. Edwards, and Siebel software.  (Ex. 14,

19   Hampton 5/25/12 Dep. Tr. 55:8-14; *see also* Ex. 12, Hampton Report ¶¶ 205-06 (distinguishing

20   his avoided cost approach from "hypothetical license" model used by Ms. Dean))  And for good

21   reason:  Mr. Hampton's opinion considers only Rimini's side of the hypothetical negotiations,

22   ignoring Oracle's viewpoint entirely, and fails to identify any comparable transactions.  On these

23   _____

24   [4] Under the rubric of the "value of use," a minority of cases in the Seventh Circuit have allowed
25   the recovery of "saved *acquisition* costs" only when no other damage remedy was available.
     *Deltak*, 767 F.2d at 362 (emphasis added).  Even "saved acquisition costs" differ significantly
26   from the avoided labor costs that Hampton describes.  "Saved acquisition costs" contemplate the
     payment the infringer avoided making *to the copyright holder to acquire the work that it infringed.*
27   *Id.*

28

1  facts, Mr. Hampton's avoided costs opinion would not support a valid hypothetical license value

2  opinion.  (*Cf.* Defs.' Mot. to Exclude Expert Test. of Elizabeth A. Dean, Dkt. 563 at 7 (arguing for

3  exclusion of Ms. Dean's hypothetical license opinions))[5]

4

          **b.      Avoided Costs Are Not a Valid Measure of Damages on Any
5                    Other of Oracle's Claims.**

6          Avoided costs are also not a valid measure of damages for any of Oracle's non-copyright

7  claims.  The majority of those claims provide for compensatory damages,[6] which are "intended to

8  redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful

9  conduct."  *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001).

10  Mr. Hampton's avoided costs calculation focuses exclusively on Rimini's point of view, with no

11  consideration of any harm to Oracle.  Avoided costs do not measure compensatory damages, at all,

12  on any of Oracle's claims.  If avoided costs were accepted as a measure of compensatory damages,

13  the owner of a car with brakes that could have been repaired for $500 would incur liability for only

14  that $500, no matter how much damage and injury the car caused.  Damages following the BP oil

15  spill similarly would be limited to the cost of a blowout preventer.

16          Oracle's two remaining damage claims – violation of California's Unfair Competition Law

17  (UCL) and unjust enrichment – provide for restitution.  Because Rimini's avoided labor costs do

18  not represent monies taken from Oracle or benefits in which Oracle has an ownership interest, they

19  [5] Rimini has cited *Wall Data*, 447 F.3d at 789 for the proposition that "it is well settled that an
20  accused infringer would not pay more for a hypothetical license than the cost to instead produce a
    non-infringing alternative."  (Dkt. 490 at 15, 12-17)  Nothing in *Wall Data* stands for this
21  proposition.  And in any event, Oracle is not presenting a hypothetical license damages measure.

22  [6] *See, e.g.*, 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a violation
    of this section may maintain a civil action against the violator to obtain compensatory damages");
23  Cal. Pen. Code § 502(e)(1) ("the owner or lessee of the computer . . . who suffers damage . . . may
    bring a civil action against the violator for compensatory damages"); Nev. Rev. Stat.  § 205.511
24  ("Any victim of a crime described in NRS 205.473 to 205.513, inclusive, may bring a civil action
    to recover . . . [d]amages for any response costs, loss or injury suffered as a result of the crime");
25  *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) ("It is well established
    that in contracts cases, compensatory damages are awarded to make the aggrieved party whole")
26  (internal quotation marks omitted); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003)
    (damage is an element of intentional interference); *Jamgotchian v. Slender*, 170 Cal. App. 4th
27  1384, 1401 (Cal. Ct. App. 2009) (property owner entitled to actual damages for trespass to
    chattels); *Acad. of Motion Picture Arts & Sciences v. Olsen*, No. B159508, 2004 WL 292134, at *8
28  (Cal. Ct. App. Feb. 17, 2004).

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

1    are not relevant to restitution.  *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947 (Cal.

2    2003) ("Any award that plaintiff would recover from defendants would not be restitutionary as it

3    would not replace any money or property that defendants took directly from plaintiff."); *Peterson*

4    *v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593-95 (Cal. App. 2008); *see also Topaz Mut. Co. v.*

5    *Marsh*, 839 P.2d 606, 613 (Nev. 1992) ("the essential elements of unjust enrichment are a benefit

6    conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and

7    acceptance and retention by the defendant of such benefit") (internal quotation marks omitted).

8              2.         **Hampton's Calculation of Avoided Costs Lacks an Adequate Basis.**

9              Mr. Hampton's opinion is also inadmissible because it is unrelated to his expertise.

10   Mr. Hampton opines that Rimini could have operated without any infringement of PeopleSoft, J.D.

11   Edwards and Siebel software by paying ▮▮▮▮▮▮▮▮ to hire additional employees (and rent office

12   space), primarily in India.  He bases his opinion as to what it would take to avoid infringement

13   entirely, without adjustment or filter, on what Rimini told him and on an assertion by Rimini's

14   "industry expert" Brooks Hilliard.  (Ex. 12, Hampton Report ¶¶ 73, 167, 172; Ex. 14, Hampton

15   5/25/12 Dep. Tr. 47:9-20, 48:14-18)  To arrive at his ▮▮▮▮▮▮▮ opinion, Mr. Hampton simply

16   took the list of additional employees Rimini gave him and multiplied it by the salaries he found on

17   the website payscale.com for salary information in India. (Ex. 14, Hampton 5/25/12 Dep. Tr.

18   153:18-22; Ex. 12, Hampton Report ¶ 177, Exs. G3, L)  Similarly, to arrive at his ▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮ opinion on infringement of Oracle's Database copyrights, Mr. Hampton simply took

20   the opinion of Rimini's technical expert, Mr. Hilliard, regarding how Rimini *could* have used

21   fewer copies of Oracle Database and multiplied those low numbers by the price per copy.

22             Mr. Hampton's opinion is not actually an opinion at all:  in a guise of expertise (that he

23   admittedly does not have), Mr. Hampton repeats verbatim what Rimini witnesses told him,

24   conducting no independent verification or analysis of the relevant facts.  At his deposition,

25   Mr. Hampton even backed away from his "opinions" and instead called them "assumptions."

26   (Ex. 14, Hampton 5/25/12 Dep. Tr. 50:10-14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), 133:24-25 (that Rimini would retain ▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮))  Repackaged assumptions based

1  entirely on hearsay are not expertise.  "An expert who simply regurgitates what a party has told

2  him provides no assistance to the trier of fact through the application of specialized knowledge."

3  *Arista Records LLC v. Usenet.com*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009).  "One of the worst

4  abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated

5  'facts' to a hired expert who then 'relies' on the information to express an opinion. . . . [N]o

6  professional should reasonably rely on such a rigged and biased source of information for any

7  materially important fact to his or her opinion, at least certainly not in the circumstances of the

8  present case."  *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04–02123, 2008 WL 2323856,

9  at *1-*2 (N.D. Cal. May 22, 2008).  Courts should "screen out experts who would act as mere

10  conduits for hearsay by strictly enforcing the requirement that experts display some genuine

11  'scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand

12  the evidence or determine a fact at issue.'"  *Williams v. Illinois*, 132 S. Ct. 2221, 2241 (2012)

13  (quoting Fed. R. Evid. 702(a)).

14

15     **B.   Hampton's Lost Profits Opinions Lack Proper Support and Use an Incorrect Legal Formula.**

16      Mr. Hampton also opines that Oracle suffered no lost profits because *all* of Rimini's

17  customers would have left Oracle even if Rimini engaged in no wrongdoing.  (Ex. 12, Hampton

18  Report ¶¶ 70, 110; Ex. 14, Hampton 5/25/12 Dep. Tr. 130:22-133:15)  According to Mr. Hampton,

19  in the "but-for" world, all Rimini customers would have gone to a non-infringing Rimini for

20  support, or, if Rimini did not exist, they would have opted for other support alternatives, including

21  self-support, consultants, and other third-party providers like the proven criminal and defunct

22  infringer TomorrowNow.  (*Id.*; *id.* at 207:19-24)

23      Mr. Hampton's methodology for arriving at his lost profits opinions is not just unreliable; it

24  is nonexistent.  He employed no "discernible, identifiable theory or technique," *Champagne*

25  *Metals, LLC v. Ken-Mac Metals, Inc.*, No. CIV-02-0528-HE, 2008 WL 5205204, at *11 (W.D.

26  Okla. Dec. 11, 2008), other than a review of selected evidence to support his conclusion.  (Ex. 12,

27

28

1   Hampton Report ¶¶ 94-145)[7]  *E.g.*, *Champagne Metals*, 2008 WL 5205204 at *11 (rejecting lost

2   profits opinion that was "simply [the expert's] subjective judgment about how various factors fit

3   together" rather than the result of analysis that could be tested in an "objective sense"); *Daubert v.*

4   *Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1319 n.11 (9th Cir. 1995) (expert must

5   "demonstrate in some objectively verifiable way that the expert has both chosen a reliable . . .

6   method and followed it faithfully"); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635-36 (8th Cir.

7   2007) (affirming exclusion of expert opinion because expert "employed no methodology

8   whatsoever – reliable or otherwise").

9           Finally, Mr. Hampton does not apply the appropriate legal standard in reaching his opinion.

10   When determining whether, in the absence of Rimini's infringement, a customer would have

11   purchased support from Oracle, only non-infringing alternatives can break the chain of causation.

12   *Polaroid Corp. v. Eastman Kodak Co.*, 1990 WL 324105, at *13 (D. Mass. Oct. 12, 1990).

13   Mr. Hampton's opinion is not consistent with that rule.  He does not address the fact that his but-

14   for market that would purportedly absorb Rimini's hundreds of customers includes known

15   infringers (*e.g.*, TomorrowNow).  Therefore, Mr. Hampton's opinion is that at least some of

16   Rimini's customers would have purchased support from those known infringers.  (Ex. 14,

17   Hampton 5/25/12 Dep. Tr. 207:19-210:14)

18           **C.   Hampton's Legal Opinions Should Be Excluded.**

19           "Experts interpret and analyze factual evidence.  They do not testify about the law." *Crow*

20   *Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (internal quotations omitted).

21   "[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court."

22   *Nationwide Transp. Fin.*, 523 F.3d at 1058.

23           Mr. Hampton riddles his report with erroneous opinions about the parties' burden of proof.

24   (Ex. 12, Hampton Report ¶¶ 111, 116, 120-122, 159, 233-34, 238, 240)  For example, he wrongly

25   _____

26   [7] Mr. Hampton also made no investigation into facts that are material to his opinion.  For example, Mr. Hampton did not investigate whether certain third party support providers could even absorb a large number of Rimini's customers.  (Ex. 14, Hampton 5/25/12 Dep. Tr. 194:5-16, 217:2-15,

27   218:16-219:3, 219:15-22)  Nor did he attempt to quantify how many customers would elect self-support.  (*Id.* at 225:9-14, 227:10-14)

28

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

1  opines that in order to claim lost profits, "[i]t is Oracle's burden to prove that other third-party

2  support providers would not have captured some of Rimini Street's customers had Rimini Street

3  not been in the market." (Ex. 12, Hampton Report ¶ 121; *see also id.* ¶¶ 111, 116, 120, 122) The

4  Supreme Court disagrees: "[O]nce a copyright holder establishes with reasonable probability the

5  existence of a causal connection between the infringement and a loss of revenue, the ***burden***

6  ***properly shifts to the infringer*** to show that this damage would have occurred had there been no

7  [infringement]." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985)

8  (emphasis added).

9      Mr. Hampton also opines that Ms. Dean "incorrectly assumes that Rimini Street bears the

10  burden of identifying profits attributable to non-accused activities." (Ex. 12, Hampton Report

11  ¶ 234; *see also id.* ¶ 240 (stating that Oracle has to prove "but for" causation regarding infringer's

12  profits)) Hampton again contradicts the plain text of the Copyright Act, which states that "the

13  copyright owner is required to present proof only of the infringer's gross revenue, and the infringer

14  is required to prove . . . the elements of profit attributable to factors other than the copyrighted

15  work." 17 U.S.C. § 504(b).

16      Mr. Hampton also purports to instruct the jury by opining that "[c]are should be given by

17  the trier-of-fact not to over-extend property rights granted by the copyrights." (Ex. 12, Hampton

18  Report ¶ 227) Even worse, he tries to replace the jury and the Court by opining as to whether

19  Oracle has met its burden of proof. (Ex. 12, Hampton Report ¶¶ 10 (blt. 6), 120, 237, 238, 241,

20  248 n.441, p.116 (Heading 12), 118 (Heading 12.3))

21

22  **II.    JAMES BENGE'S OPINIONS ON AVOIDED COSTS ARE ALSO
         INADMISSIBLE.**

23      Rimini employee James Benge asserts that with an additional number of employees,

24  Rimini could have attracted and served every single one of its customers using an "all-remote"

25  system without any software on Rimini's computers and without infringement. (Ex. 17, Benge

26  6/21/12 Dep. Tr. 11:2-7, 30:15-31:24, 35:19-36:1, 77:14-23, 81:4-16, 107:3-108:4) ████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████

1                                            (*Id.* 10:4-11:7, 13:4-9; Ex. 12, Hampton Report

2 ¶ 73, 78)  Mr. Benge's opinions should be excluded, as should Mr. Hampton's damage calculation

3 based on it.

4          As detailed above in addressing Mr. Hampton, the costs Rimini avoided through

5 infringement are not a valid legal measure of damages.  This reason alone requires the exclusion of

6 Mr. Benge's opinion.

7          Mr. Benge's opinion should also be excluded for the additional reason that his estimates

8 lack a reliable basis and methodology.  Mr. Benge explained that his assertions regarding the

9 number of employees needed to serve *all* customers were based exclusively on

10

11                                        (Ex. 17, Benge 6/21/12 Dep. Tr. 71:23-72:5)

12

13                                              (Ex. 2,

14 PTX 18 at 1; Ex. 6, PTX 52

15

16                            (Ex. 7, PTX 60)

17          Benge extrapolated from these                                    to all other customers without

18 any methodology for doing so.  The law does not permit Benge to use the title of expert to wave a

19 wand and make this extrapolation.  A qualified expert extrapolating that remote access was

20 feasible for all customers would require a methodology to show that the experience of limited

21 remote Rimini customers could be extrapolated to work for other customers.

22          For example,

23

24                            (Ex. 1, PTX 2152 at 2

25

26

27                 Mr. Benge admitted this.  (Ex. 17, Benge 6/21/12 Dep. Tr. 107:3-15)

28

1  By contrast, under a truly all-remote system, █████████████████████

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████

4  ███████████████████████████████████ (*Id.* 107:7-10; 108:1-4) ███

5  ████████████████████████████████████████████████████████

6  █████████████████████████ (*Id.* at 107:3-108:4)

7  ██████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████ (Ex. 2,

10  PTX 18 ██████████████████████████████████████████████████████

11  ███████████████████  ████████████████████████████████████ (Ex.

12  5, PTX 51 at 2 (████████████████████████████ ; Ex. 4, PTX 50 at 3 ███████

13  ████████████████ ); Ex. 20, PTX 48 at 2 ████████████████████████

14  ██████

15  Mr. Benge was asked how he accounted for ███████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████ (Ex. 17, Benge

19  6/21/12 Dep. Tr. 107:16-108:4)  He did nothing specifically to account for the fact that ██████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  █████████████████ (*Id.* at 116:4-117:24)  He only repeated that he relied on his "experience" and

23  "made a conservative estimate" and admitted that he did not do any calculations that anyone could

24  check.  (*Id.*)

25  While Mr. Benge is experienced in PeopleSoft development and knowledgeable about

26  many of Rimini Street's support processes, his experience does not transform an educated guess

27  into an "expert opinion."  His "trust me, I got it right" opinion is not admissible.  "[N]othing in

28  either *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] or the Federal Rules

1   of Evidence requires a district court to admit opinion evidence that is connected to existing data

2   only by the *ipse dixit* of the expert."  *Morford v. Wal-Mart Stores, Inc.*, 2:09-CV-02251-RLH-

3   PAL, 2011 WL 2313648, at \*7 (D. Nev. June 9, 2011) (quoting *General Elec. Co. v. Joiner*, 522

4   U.S. 136, 146 (1997)).  "[T]he expert's bald assurance of validity is not enough.  Rather, the party

5   presenting the expert must show that the expert's findings are based on sound science, and this

6   will require some objective, independent validation of the expert's methodology."  *Daubert II*, 43

7   F.3d at 1316; *see id.* at 1319 & n.11 (expert must "explain precisely how they went about reaching

8   their conclusions" and "demonstrate in some objectively verifiable way that the expert has both

9   chosen a reliable . . . method and followed it faithfully").  The Court should exclude opinion

10   testimony, like Mr. Benge's, with no articulable reasoning and methods.  *Claar*, 29 F.3d at 502;

11   *see also Ahlberg*, 481 F.3d at 635-36 (affirming exclusion of expert opinion because expert

12   "employed no methodology whatsoever – reliable or otherwise").

13   **III.    BROOKS HILLIARD'S OPINIONS ARE NOT RELIABLE.**

14        Mr. Hilliard's opinions, labeled in his report as Opinions 1-4 and 7-9, as well as his

15   opinions on which Mr. Hampton relies, lack both a reliable factual basis and method, and should

16   be excluded.

17

18        **A.    Hilliard's Opinions on "Custom and Practice" in the Industry Lack Any Reliable Basis.**

19        The Court should exclude Opinions 1-4 in which Mr. Hilliard opines that Rimini's

20   practices of local copying and cross use are justified by industry custom and Opinion 8 in which

21   Mr. Hilliard interprets licenses.  The Court should also exclude the opinions he provided to

22   Rimini's damages expert Scott Hampton about other options purportedly available to Rimini's

23   customers.[8]

24

25

26   _____

27   [8] Oracle is separately moving *in limine* to exclude as parol evidence all evidence offered by Rimini to vary the unambiguous terms of integrated written agreements.  Mr. Hilliard's opinions are excludable for this reason as well.

28

1

### 1.   Hilliard's Opinions on Custom and Practices and License Interpretation Are Legally Irrelevant.

2   Mr. Hilliard opines on various available support options and whether particular practices

3   are "normal" customs or practices in the industry.  (Ex. 10, Hilliard Report 15, 19, 22, 24)  But the

4   Court granted summary judgment in favor of Oracle on Rimini's third and sixth affirmative

5   defenses for implied license and consent.  (Dkt. 474 at 25:1-27:23)  Custom and use are not a

6   separate defense to this copyright infringement or to Oracle's other causes of action, nor are they

7   relevant to Rimini's remaining affirmative defenses.  Therefore this testimony is irrelevant.

8   Relatedly, Mr. Hilliard's Opinion 8 on custom and practice offered for the purpose of

9   interpreting the licenses should be excluded.  Although Mr. Hilliard claimed repeatedly at his

10   deposition not to offer legal conclusions (Ex. 15, Hilliard 6/5/12 Dep. Tr. 29:1-3, 95:13-16,

11   101:22-25), his disclosed opinions clearly do.  For example, his opinion tracks language from the

12   standard Oracle license and he writes, ███████████████████████████████

13   █████████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████

15   ████████████████████████████████   (Ex. 10, Hilliard Report 59-60)

16   The Court should exclude this testimony.  This is contract interpretation, and experts may

17   not testify about the law.  "[A]n expert may not interpret a contract for the jury."  *Levinson v.*

18   *Westport Nat'l Bank*, 3:09-CV-00269 (VLB), 2012 WL 4489260, at *4 (D. Conn. Sept. 28, 2012)

19   (citing *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977)); *see also*

20   *Trident Seafoods Corp. v. Commonwealth Ins. Co.*, 850 F. Supp. 2d 1189, 1196-97 (W.D. Wash.

21   2012) (excluding expert's "interpretation of the meaning of the policy language").  "Contracts

22   mean what they say when read in light of legal principles; what strangers to the parties' bargain

23   would do is neither here nor there."  *Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 564 F.3d 817,

24   819 n.† (7th Cir. 2009) (striking expert affidavit opining on the meaning of a contract); *see also*

25   *Johnson Indus. Sales Inc. v. Strema Sales Corp.*, SACV 03-0573-JVS(JTLX), 2004 WL 5486651,

26   at *1 (C.D. Cal. Jan. 12, 2004) (the "experts will also be precluded from interpreting the terms of

27   [plaintiff's] contracts or the law").  This Court has held that copying Oracle's copyright protected

28   software without a defense found in a customer license is a violation of the Copyright Act.  (Dkt.

1    474 at 6-7, 15)  On this basis, the Court awarded summary judgment to Oracle with respect to the

2    PeopleSoft and Oracle Database licenses.  (*Id.* at 28-29)  With respect to the Siebel and J.D.

3    Edwards licenses, the Court found that there was a disputed issue of fact as to whether Rimini

4    made copies "for archival purposes."  (*Id.* at 21-24)  That disputed issue of fact does not permit

5    evidence of custom or use concerning copying that is not for archival purposes.  The only issue is

6    whether the copying was for archival or backup purposes, an issue which Mr. Hilliard does not

7    discuss.  Mr. Hilliard's opinion on custom and practice and his interpretation of the license are

8    irrelevant to Oracle's claims and Rimini's defenses, including its license defense, and the Court

9    should exclude them.

10          **2.      Hilliard's Experience Provides No Basis to Opine on What Is Common
                      in Providing Third-Party Support for Oracle Products.**

11          To reliably give his opinions, Mr. Hilliard must have some "experience and resultant

12   specialized knowledge" that is "sufficiently related" to Rimini's practices and the field in which it

13   operates.  *Sercu v. Lab. Corp. of America*, No. 3:09-cv-0619-LRH-RAM, 2011 WL 181402, at *1

14   (D. Nev. Jan. 18, 2011).  He has none.  (Ex. 15, Hilliard 6/5/12 Dep. Tr. 12:19-15:10)

15          Mr. Hilliard consults with businesses regarding what computer software and hardware to

16   buy.  (*Id.* 9:23-10:4; *see also* Ex. 18 (http://www.bizauto.com))  He has a general background in

17   computer science and a Harvard business degree, and he has had a relatively long career working

18   in various capacities with computers.  He has offered expert testimony in software contract

19   disputes.  (Ex. 10, Hilliard Report Ex. 3)

20          With this background, Mr. Hilliard seeks to tell the jury about the availability, customer

21   perception, and popularity of consultants, self-support, and third-party support providers as well as

22   what is common for third-party support providers for Oracle's software, all without any

23   "specialized knowledge" of these issues.  His opinions regarding what is common industry

24   practice must be excluded.  *See Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th

25   Cir. 2011) (affirming exclusion of expert opinion where expertise was not sufficiently related);

26   *S.E.C. v. Pasternak*, CIV A No. 05-3905(JAP), 2008 WL 2281627, at *3 (D.N.J. May 29, 2008)

27   (expert had "expertise in the general field of securities" but rejecting testimony on "industry

28   standards or customs" because purported expert "lack[ed] any experience in the particular industry

1    in which the disputed events of this case occur"); *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F.

2    Supp. 1353, 1355 (D. Ariz. 1996) ("court may exclude an expert who does not have the

3    appropriate experience, education or training to offer a helpful opinion with regard to controverted

4    issues"), *aff'd*, 114 F.3d 851 (9th Cir. 1997); *see also Castaic Lake Water Agency v. Whittaker

5    Corp.*, No. CV 00-12613 AHM (Rzx), 2002 WL 34700741, at *5-*6 (C.D. Cal. Oct. 25, 2002)

6    (excluding expert testimony of an environmental engineer who lacked training or experience in

7    chemical engineering).

8         Mr. Hilliard's report and deposition testimony also do not disclose any objectively

9    verifiable method for determining the available support options in the industry, how customers

10   viewed them, or what is industry "custom and practice."  During his deposition, when asked to

11   describe his method and bases for his opinions, Mr. Hilliard repeatedly reverted to the stock phrase

12   that he relied on his "experience."  (Ex. 15, Hilliard 6/5/12 Dep. Tr. 16:17-18 ("certainly I relied

13   on my experience in the industry"), 52:6-8 ("at least in my experience, that's what I've been told

14   by consultants and consulting firms is their practice"))  Mr. Hilliard admitted he had done no

15   analysis and had no method:  "█████████████████████████████████████████████████

16   ████████████████████████████████████████████████  (*Id.* 65:3-66:12)

17   When an expert fails to explain the reasoning and methods underlying a conclusion, the court

18   should refuse to admit the opinion into evidence.  *Supra* at 9-10.

19                    **3.  Hilliard Relied on Untested Claims on Websites.**

20        Rather than looking to Rimini's own practices to determine industry custom, Mr. Hilliard

21   relied on a handful of unverified websites, such as marketing pages by consultants Astute Labs and

22   Summit Technology to conclude that copying is common for support.  "As the Ninth Circuit has

23   observed, an opinion based on unsubstantiated and undocumented information 'is the antithesis of

24   the scientifically reliable expert opinion admissible under *Daubert* and Rule 702.'"  *Morford*, 2011

25   WL 2313648, at *6 (quoting *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998)).  If an

26   expert does not "reasonably point to any evidence in the record or other factors or data reasonably

27   relied on by experts in his field," his opinions cannot "provide any relevant testimony to assist the

28   jury" and should be excluded.  *United States v. Redlightning*, 624 F.3d 1090, 1112 (9th Cir. 2010).

1    Mr. Hilliard testified multiple times that he relied on trade documentation in forming his

2    opinions.  (Ex. 15, Hilliard 6/5/12 Dep. Tr. 46:7-47:6, 76:10-14)  In his report, he does not refer to

3    a single trade journal.  Instead he relies on websites to support his claims that local copying is

4    common industry practice.  (Ex. 10, Hilliard Report 9 n.9, 10 n.11)  The fact that a claim is made

5    on the internet is not, by itself, a reliable basis to conclude that it is true; experts may not rely on

6    such material without some type of independent verification, which Mr. Hilliard chose not to do.

7    *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1086 (C.D. Cal.

8    2003) (expert reports "irrelevant" where they "merely recite hearsay statements, often verbatim,

9    culled from a variety of Internet websites").

10

11    **B.    Hilliard's Opinions Vouching for Rimini's Employees' Post-Lawsuit Assessments Are Unreliable.**

12    Mr. Hilliard's Opinions 7 and 9 should be excluded because they rely entirely on the say-so

13    of Rimini employees without any reliable, independent analysis.  As shown above, an expert who

14    merely reiterates what a client says does not offer a reliable method or admissible opinion.

15    In Opinion 7, Mr. Hilliard offers the opinion that ███████████████████████████

16    ████████████████████████████████████████████████████████████████████

17    ████████████████  (Ex. 10, Hilliard Report 57; *see id.* at 57-59)  Mr. Hilliard lifts this conclusion in

18    its entirety from a "discussion" he had with Rimini employee Mr. Benge.  (*Id.* at 58)  At his

19    deposition, Mr. Hilliard reiterated that he did not perform any calculation, stating, ██████

20    ████████████████████████  (Ex. 15, Hillard 6/5/12 Dep. Tr. 164:17-18)

21    Similarly, in Opinion 9, Mr. Hilliard opines that "Ms. Dean's calculations of those

22    [Database license and support fees] are highly inflated."  (Ex. 10, Hilliard Report 61; *see id.* at 61-

23    62)  The basis for this conclusion is a conversation with Rimini employee Mr. Baron, in which

24    Mr. Baron explains that if Rimini could not use its clients' Database software, he ██████████

25    ████████████████████████████████████████████████████████████████

26    ████████████████  *Id.* at 62)  Mr. Hilliard again is being "spoon-f[ed] . . . client-prepared and

27    lawyer-orchestrated 'facts,'" with little support or calculation, which is unreliable and

28    inadmissible.  *Therasense*, 2008 WL 2323856, at *1-*2.

1    Repeating the error described above, Mr. Hilliard also did not apply any reliable method to

2    verify that Mr. Benge and Mr. Baron arrived at the correct calculations.  Mr. Hilliard's report

3    states in Opinion 7, without elaboration, that based on Mr. Hilliard's "experience" Mr. Benge's

4    number falls "within the normal range."  (Ex. 10, Hilliard Report 58)  Mr. Hilliard admitted that he

5    did not consider any number of variables such as loss of customers (Ex. 15, Hillard 6/5/12 Dep.

6    Tr. 165:25-166:17), and loss of the ability to cross-use customer software. (*Id.* at 170:15-171:1,

7    172:6-13)  Mr. Hilliard does not provide any analysis that could be checked to verify Rimini's

8    numbers and "provides no assistance to the trier of fact through the application of specialized

9    knowledge."  *Arista Records*, 608 F. Supp. 2d 409 at 424.

10   **IV.    DAVID KLAUSER'S OPINIONS ARE INADMISSIBLE.**

11   Oracle's expert Christian Hicks analyzed (among other things) Rimini's downloading of

12   material from Oracle's websites.  In response, David Klausner says that Rimini's conduct was

13   consistent with industry custom and also reiterates an array of hearsay from Rimini's employees.

14   These opinions should be excluded.

15   **A.    Klausner's Assertions Regarding "Industry Custom" Are Unreliable and Not**
16   **Relevant to the Task at Hand.**

17   Mr. Klausner attempts to offer an expert opinion interpreting Oracle's Terms of Use.

18   Oracle's Terms of Use prohibit users of My Oracle Support from accessing the website with

19   automated tools and from impairing or overburdening the site.  (Ex. 19, PTX 19 ("You agree that

20   you will not access or use Customer Connection in any manner that could damage, disable,

21   overburden, impair, or otherwise result in unauthorized access to or interfere with, the proper

22   functioning of any Oracle accounts, systems, or networks.  For example, you may not use any

23   software routines commonly known as robots, spiders, scrapers, or any other automated means, to

24   access Customer Connection or any other Oracle accounts, systems, or networks."))

25   In concluding that Rimini's various automated tools do not violate the Terms of Use,

26   Mr. Klausner contends that Rimini's tools were not "damaging" or "malicious," because there was

27   supposedly no impairment to Oracle's systems, and because Rimini's tools supposedly work better

28   than Oracle's.  (Ex. 11, Klausner Report 3-4, 14)  Mr. Klausner further claims that Rimini's tools

1    are not "crawlers" within the meaning of industry custom, and that the industry does not view

2    tools like Rimini's to be "damaging or malicious routines."  (*Id.* at 3-4)

3        The purpose and effect of Mr. Klausner's opinions about Oracle's Terms of Use are to

4    interpret that contract in light of (what he claims is) industry custom.  However, as explained

5    above, an expert is not allowed to opine on the meaning of a contract.  Further, as shown in the

6    motion *in limine* filed herewith, such parol evidence is inadmissible to vary the terms of the

7    unambiguous and integrated Terms of Use.

8        Mr. Klausner also did not apply a reliable methodology to conclude that his vaguely-

9    defined "industry custom that provides for downloads to be done" does not consider tools like

10   Rimini's to be "crawlers" or "spiders," or that those tools are harmless.  Mr. Klausner did not

11   review other companies' automated downloading policies, did not research the issue in industry or

12   scientific literature, and did not survey other internet users.

13       At his deposition, Mr. Klausner also admitted that he examined only one automated

14   downloading tool:  wGet.



25   (Ex. 16, Klausner 6/15/12 Dep. Tr. 140:22-141:10, 142:16-24)  In contrast to this single

26   automation tool, Oracle's expert Christian Hicks detailed several automated tools used by Rimini:

27   the Automated Solutions Tool, Continuing Documentation Tool, Updates and Fixes Tool, Update

28   Center Tool, Client Cases Tool, Knowledge Base Scan, Offline Explorer Tool, and a Change

ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS

1  Assistant Tool.  (Ex. 9, Hicks Report ¶¶ 3.4.1-3)  At deposition, Mr. Klausner admitted that

2  Rimini's downloading tools are *not analogous* to the wGet tool.  (Ex. 16, Klausner 6/15/12 Dep.

3  Tr. 143:8-14 ███████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6          Mr. Klausner also claims Oracle recommends the use of download managers on OTN,

7  another Oracle website.  (Ex. 11, Klausner Report ¶ III.C, Ex. C; Ex. 16, Klausner 6/15/12 Dep.

8  Tr. 164:5-8, 200:4-201:13)  As he conceded in deposition, he has no evidence, and conducted no

9  expert analysis showing, that the download managers for OTN are analogous to Rimini's tools.

10  (Ex. 16, Klausner 6/15/12 Dep. Tr. 205:17-206:13 (didn't know how many of the download

11  managers he noted ███████████████████████████████████████████████████

12  █████████████████████████████

13      **B.   Klausner's "Opinions" Regarding Out-of-Support Downloads are Hearsay and**
            **Do Not Provide Expert Analysis.**
14
15          Oracle expert witness Christian Hicks identified tens of thousands of downloads by Rimini

16  that were not authorized by any active support agreement ("out-of-support downloads").  (Ex. 9,

17  Hicks Report 4.3.1.2.2.6, 4.4.1.2.2.4; Ex. 13, Hicks Rebuttal Report 2.2.3.1, 2.3.3.3)  In response,

18  Mr. Klausner opines that "Mr. Hicks is wrong to conclude that the downloads at issue were

19  improper or outside the scope of the clients' rights."  (Ex. 11, Klausner Report ¶ V.BB, at 46)

20  Mr. Klausner's justifications for this conclusion appear to be (1) his opinions about how Rimini

21  used its automated tools to download Oracle materials; (2) his opinions about how Oracle's sites

22  and tools functioned; and (3) his opinions about how Rimini used Oracle's sites and tools.  The

23  support for these opinions, like other expert opinions above, consists almost entirely of rote

24  repetitions of hearsay from Rimini employees.

25          Because Mr. Klausner did not analyze the logs of the materials that Rimini *actually*

26  downloaded, the only support for his opinions about how Rimini used its and Oracle's tools is

27  private conversations with Rimini personnel.  Likewise, Mr. Klausner did not himself use Oracle's

28  tools or sites or perform any direct analysis of the tools or how Rimini used them to download

1    Oracle materials.  (Ex. 16, Klausner 6/15/12 Dep. Tr. 210:11-211:3 (admitting he does not know

2    whether Rimini limits its J.D. Edwards downloads), 213:14-214:11 (█████████████████████

3    ████████████████████████████████████████████████████████████████████████████████

4    ████████████████████████    "An expert who simply regurgitates what a party has told him

5    provides no assistance to the trier of fact through the application of specialized knowledge."

6    *Arista Records*, 608 F. Supp. 2d at 424.

7                                  **CONCLUSION**

8           For the above reasons, the Court should exclude Rimini's inadmissible expert opinions

9    from Mr. Hampton, Mr. Benge, Mr. Hilliard, and Mr. Klausner.

10   DATED:  July 22, 2015                        BOIES, SCHILLER & FLEXNER LLP

11

12                                      By: /s/ Kieran P. Ringgenberg
                                            Kieran P. Ringgenberg
13                                          *Attorneys for Plaintiffs*
                                            Oracle USA, Inc., Oracle America, Inc., and
14                                          Oracle International Corp.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on the 22nd day of July, 2015, I electronically transmitted the

3  foregoing **ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS'**

4  **EXPERTS SCOTT HAMPTON, BROOKS HILLIARD,  DAVID KLAUSNER, AND**

5  **JAMES BENGE [REDACTED]** to the Clerk's Office using the CM/ECF System for filing and

6  transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered

7  to receive Electronic Filing.

8

9                                                      /s/ Catherine Duong

10                                  An employee of Boies, Schiller & Flexner LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28