| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>WILLIAM ISAACSON (*pro hac vice*)<br>KAREN DUNN (*pro hac vice*)<br>5301 Wisconsin Ave, NW<br>Washington, DC 20015<br>Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131<br>wisaacson@bsfllp.com<br>kdunn@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>kringgenberg@bsfllp.com | MORGAN, LEWIS & BOCKIUS, LLP<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: 415.393.2000<br>Facsimile: 415.393.2286<br>thomas.hixson@bingham.com<br>kristen.palumbo@bingham.com<br><br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>ORACLE CORPORATION<br>500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070<br>Telephone: 650.506.4846<br>Facsimile: 650.506.7114<br>dorian.daley@oracle.com<br>deborah.miller@oracle.com<br>jim.maroulis@oracle.com |

*Attorneys for Plaintiffs*
Oracle USA, Inc., Oracle America, Inc. and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | No. 2:10-cv-0106-LRH-PAL<br><br>**REPLY IN SUPPORT OF ORACLE'S MOTION TO DETERMINE DISPUTED JURY INSTRUCTIONS**<br><br>**[REDACTED]**<br><br>Judge:   Hon. Larry R. Hicks |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    ORACLE'S FIRST PROPOSED INSTRUCTION ACCURATELY AND FAIRLY STATES THE LAW. ..............................................................................2

        A.    Oracle's Proposed Instruction Accurately Explains Rimini's Burden of Proof and Rimini's Does Not. .................................................3

        B.    Oracle's Proposed Instruction Correctly Informs the Jury That Rimini Has No License of Its Own. ........................................................4

    II.    INSTRUCTING THE JURY REGARDING THE MEANING OF THE ORACLE LICENSES IS APPROPRIATE AND WILL HELP THE JURY. .........................................................................................................................4

        A.    PeopleSoft ..............................................................................................4

        B.    Database ..................................................................................................5

        C.    Siebel and J.D. Edwards ........................................................................6

            1.    Disputes as to Contract Meaning Are for the Court, Not the Jury. ...................................................................................6

            2.    An Instruction on License Meaning Will Make the Trial More Efficient and Fair. .........................................................8

    III.    ORACLE'S SECOND PROPOSED INSTRUCTION ACCURATELY AND FAIRLY SUMMARIZES THE LICENSE TERMS. ..................................9

        A.    PeopleSoft ..............................................................................................9

        B.    Siebel ....................................................................................................10

        C.    J.D. Edwards .......................................................................................11

    IV.    THE COMBINED EFFECT OF THE PROPOSED INSTRUCTIONS SHOWS THAT ORACLE'S ARE NECESSARY AND APPROPRIATE. ........12

CONCLUSION .............................................................................................................................14

**TABLE OF AUTHORITIES**

Cases

*Copper Mountain, Inc. v. Indus. Sys., Inc.*,
  208 P.3d 692 (Colo. 2009) .................................................................................................. 6

*Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*,
  274 Cal. Rptr. 206 (Cal. Ct. App. 1990) ............................................................................... 7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ............................................................................................ 8

*Oracle Am., Inc. v. Terix Computer Co.*,
  No. 5:13–cv–03385–PSG, 2015 WL 2090191 (N.D. Cal. May 5, 2015) ...................... 1, 6, 7

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  6 F. Supp. 3d 1086 (D. Nev. 2014) ...................................................................................... 3

*Parsons v. Bristol Dev. Co.*,
  402 P.2d 839 (Cal. 1965) .................................................................................................. 1, 6

*Patsy's Italian Rest., Inc. v. Banas*,
  658 F.3d 254 (2d Cir. 2011) ................................................................................................. 8

*Rio Properties, Inc. v. Stewart Annoyances, Ltd.*,
  No. CV-S-01-0459-LRH-PAL (D. Nev. Sept. 8, 2005) .................................................... 1, 6

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) .............................................................................................. 7

*Sulzer Textil A.G. v. Picanol N.V.*,
  358 F.3d 1356 (Fed. Cir. 2004) ............................................................................................ 7

*United States v. Laurent*,
  607 F.3d 895 (1st Cir. 2010) ................................................................................................ 9

*United States v. Morris*,
  928 F.2d 504 (2d Cir. 1991) ................................................................................................. 8

*W. Colo. Power Co. v. Gibson Lumber & Coal Co.*,
  176 P. 318 (Colo. 1918) ....................................................................................................... 7

**INTRODUCTION**

Rimini does not dispute the most important basis for this motion: "[C]ontract interpretation is a question of law for the court" and "should only be left to a jury if 'the interpretation turns upon the credibility of extrinsic evidence.'" *Oracle Am., Inc. v. Terix Computer Co.*, No. 5:13–cv–03385–PSG, 2015 WL 2090191, at *4 (N.D. Cal. May 5, 2015) (quoting *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (Cal. 1965). The law is clear that absent ambiguity requiring consideration of such extrinsic evidence, the Court should instruct the jury as to the meaning of contract terms. *Rio Properties, Inc. v. Stewart Annoyances, Ltd.*, No. CV-S-01-0459-LRH-PAL (D. Nev.), Jury Instructions at Instruction No. 23–24 (Sept. 8, 2005). Thus, while Rimini weakly contends that Oracle's proposed jury instructions "would improperly intrude on the province of the jury" and "would usurp the role of the jury" (Opp. at 1), Rimini never identifies any supposed ambiguity, let alone an ambiguity hinging on the *credibility* of extrinsic evidence – the only type that would go to a jury. As the case law establishes, it is *not* the province of the jury to read through hundreds of license agreements to determine what they mean. The Court should instruct the jury on the licenses' meaning, and then the jury can determine if Rimini's conduct complied with them or not.

As to the content of Oracle's proposed jury instructions, they accurately reflect the parties' burdens at trial and fairly summarize the key terms of the Oracle licenses. Rimini's proposed revisions do not. The Court should enter Oracle's proposed jury instructions.

Rimini concedes that Oracle's first instruction, concerning Rimini's license defense, is necessary. Yet the changes Rimini suggests are unnecessary and misleading. Rimini for example requests that the Court instruct the jury – wrongly – that Rimini has met its burden of proof on its license defense without having identified for the jury a single relevant license provision.

Oracle's second proposed instruction summarizes the key terms in the Oracle licenses, as suggested by Magistrate Judge Leen, to simplify trial. (Declaration of Kieran P. Ringgenberg in Support of Plaintiffs Oracle's Reply in Support of Oracle's Motion to Determine Disputed Jury Instructions ("Ringgenberg Reply Decl.") Ex. F, Status Conference Tr. May 17, 2011 at 7:21–

8:9; Ex. G, Status Conference Tr. Mar. 29, 2011 at 24:14–25:9)  Rimini says that no instruction on key terms is necessary because the agreements are easy for the jury to understand.  As the Court is well aware after reviewing dozens of pages of summary judgment briefing on just <u>five</u> agreements, the licenses are legal documents with which the jury will need and appreciate assistance and which it is the Court's province to interpret.  The license agreements for the more than <u>three hundred</u> customers at issue amount to <u>thousands</u> of pages of legal terms.  (Dkt. 523-9 at 22–130 (listing DTX 445–2999))  Rimini's suggestion that the jury can easily and expeditiously sort through all of the agreements beggars belief.  Even if the jury could slog through the agreements, the jury will be assisted if the Court instead instructs the jury on the legal principles established by those agreements.  A fair and efficient trial requires that the Court instruct the jury on the meaning of those legal agreements.

Rimini also says that the licenses are ambiguous and require jury consideration of extrinsic evidence.  But Rimini's opposition does not identify a single specific term it claims requires extrinsic evidence to interpret, and certainly none whose credibility requires a jury determination.  Absent such terms, as the summary judgment orders recognize, the Court can and should decide the meaning of the Oracle licenses.

Last, Rimini complains that Oracle's proposed instruction regarding key terms incorrectly suggests that the licenses "are identical" and fails to account for "how varied the license agreements are." (Opp. at 6–7)  In its opposition, Rimini fails to identify any *material* difference in license agreements.  Oracle's proposed key terms instruction will fairly and efficiently simplify the trial.

**ARGUMENT**

**I. ORACLE'S FIRST PROPOSED INSTRUCTION ACCURATELY AND FAIRLY STATES THE LAW.**

The parties agree that the Court should instruct the jury on Rimini's license defense, and the parties' proposed instructions are similar in many respects.  To the extent they are different, Oracle's proposed instruction accurately and fairly instructs consistent with the Court's prior orders and applicable law and Rimini's proposed instruction does not.

### A. Oracle's Proposed Instruction Accurately Explains Rimini's Burden of Proof and Rimini's Does Not.

Oracle proposes that the Court instruct the jury that Rimini must first prove "the existence of a specific license provision that authorized each individual copy." (Mot. App'x at 1) That is consistent with the Court's prior order, stating that Rimini must identify "those license provisions, if any, that expressly authorize its copying." *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1086, 1096 (D. Nev. 2014) ("MSJ 1"). Rimini's proposed instruction similarly states that Rimini must "identify any license provision(s) they believe excuses the infringement." (Opp. at 10) But Rimini's instruction goes on to say that "Defendants are permitted under the law to assert those [customer] license agreements as a defense, and so have satisfied their initial burden." (*Id.* (emphasis added)) Rimini's proposed instruction is wrong in two respects and should be rejected.

First, the existence of customer licenses does not satisfy Rimini's burden of proof. Rimini's obligation is to identify a "relevant license provision," not merely a license agreement. MSJ 1, 6 F. Supp. 3d at 1093 (D. Nev. 2014); *accord Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1108, 1116 (D. Nev. 2014) ("MSJ 2"). Oracle's instruction follows the Court's rulings by requiring that a license provision be identified. Rimini's instruction conflicts with the Court's ruling by stating that Rimini may satisfy its burden by pointing to a license agreement generally without identifying a specific provision.

Second, Rimini's assertion that it is "permitted under the law to assert those [customer] license agreements as a defense, and so ha[s] satisfied [its] initial burden" is contrary to the Court's ruling. (Opp. at 10) The Court did say that "Rimini may assert [its client's] software license as a defense to Oracle's claim of copyright infringement," MSJ 1, 6 F. Supp. 3d at 1096, but the Court went on to explain that Rimini does not have the same status under the agreements as the customers who licensed the software. As the Court found on summary judgment, the licenses are more restrictive as to third parties than as to the licensees. *E.g.*, MSJ 1, 6 F. Supp. 3d at 1101 ("Section 1.1 [of the Pittsburgh Public School PeopleSoft license] further precludes the right of third-parties to copy the software."); *id.* at 1098–99 (summarizing limitations on third

3

parties under City of Flint PeopleSoft license); *id.* at 1102–05 (denying summary judgment as to Siebel and J.D. Edwards customer licenses only where such licenses authorized third party copying).

### B. Oracle's Proposed Instruction Correctly Informs the Jury That Rimini Has No License of Its Own.

Oracle's proposed instruction correctly explains that Rimini did not have any "licenses of its own with Oracle," and Rimini instead relies on licenses between Oracle and Rimini's customers.[1] Rimini argues that the instruction is "unduly argumentative because it presupposes that Rimini Street in fact has no license defense." (Opp. at 3) Rimini is wrong. The proposed instruction clearly explains that Rimini asserts a license defense, and correctly instructs the jury how to decide that defense. In doing so, it accurately explains that the defense is not based on Rimini's "own license" but rather those of its customers. The Court used the same language in its summary judgment order, finding that "it is undisputed that Rimini does not have its own software license from Oracle for any of the identified Enterprise Software programs copied on its systems." MSJ 1, 6 F. Supp. 3d at 1094.

## II. INSTRUCTING THE JURY REGARDING THE MEANING OF THE ORACLE LICENSES IS APPROPRIATE AND WILL HELP THE JURY.

Rimini argues that Oracle's second instruction is "unnecessary" because Rimini has stipulated that it will "not present a license defense" as to PeopleSoft and Database "programs" and because the Siebel and J.D. Edwards licenses are "clear, nontechnical, and unambiguous" and do not "merit any special explanation by the Court." (Opp. at 4–6) These arguments fail.

### A. PeopleSoft

Oracle's proposed PeopleSoft instruction instructs the jury as to Rimini's copying,

---

[1] "Rimini Street did not have any licenses of its own with Oracle relevant to the issues you are deciding. Oracle enters into written license agreements with its customers that allow the customers to use copyrighted Oracle software, and have access to support materials for that Oracle software. Defendants claim that these customer license agreements authorized certain of the conduct that Oracle alleges constituted copyright infringement." (Mot. App'x at 1)

1  creation of derivative works, and distribution of PeopleSoft software and support materials.  This
2  instruction is necessary because Rimini has refused to withdraw its license defense as to creation
3  of derivative works and distribution, and expressly carved out documentation from the parties'
4  stipulation regarding PeopleSoft licenses.  (*See* Ringgenberg Decl., Dkt. 576, Ex. E (refusing to
5  include language regarding "distribution" or "preparation of derivative works" in PeopleSoft
6  license stipulation); Stipulation and Order Regarding PeopleSoft License Agreements & Express
7  License Defense, Dkt. 599 ¶ 6 (excluding documentation from PeopleSoft license stipulation))
8  Rimini argues that Oracle's PeopleSoft instruction is overbroad because it is not limited to
9  documentation and is unnecessary because Rimini will not present a license defense "as to
10 [PeopleSoft] programs" (Opp. at 4), but Rimini neither addresses nor concedes preparation of
11 derivative works or distribution of software and support materials *based upon* PeopleSoft
12 software.  Oracle's proposed instruction is therefore warranted.
13     Further, Rimini fails to address that evidence of what the PeopleSoft license means is
14 necessary in light of Defendants' claim that the infringement "provided little, if any value, to
15 Rimini" and their desire to introduce evidence that Rimini could have created a noninfringing
16 alternative.  (Dkt. 523 at 6)  Oracle has filed a motion *in limine* to exclude such evidence
17 (Dkt. 646 at 21), but if Rimini's approach to damages is accepted, the jury must be instructed on
18 what the license agreements permitted and what they did not in order to determine what is
19 noninfringing.
20     **B. Database**
21     Oracle proposes only the following sentence as to Oracle Database software:  "No license
22 permitted Rimini Street's copying of Oracle Database software." (Mot. App'x at 4)  The Court
23 held this and the instruction clarifies for the jury which license issues they are asked to decide
24 (and which they are not).  Absent such an instruction, the jury may be confused about whether a
25 license defense is at issue for Database and how they are to decide it.  Rimini argues that the jury
26 might "rule for Oracle merely because Rimini Street's conduct was deemed infringing as to some
27 software" (Opp. at 5), but the instruction is specific and it relates to an issue on which the jury *is*
28 *required* to rule for Oracle.  Rimini will suffer no prejudice from the instruction because to

5

determine damages for copying of Oracle Database, the jury must learn about Rimini's infringement of Database software.

### C. Siebel and J.D. Edwards

Rimini argues that instructions about Siebel and J.D. Edwards are unnecessary because the meaning of these licenses is for the jury to decide and the jury can easily understand them. As the Court's summary judgment orders demonstrate, Rimini is wrong on both counts.

#### 1. Disputes as to Contract Meaning Are for the Court, Not the Jury.

This Court has held that "[c]onstruing the scope of a license is principally a matter of contract interpretation." MSJ 1, 6 F. Supp. 3d at 1093; MSJ 2, 6 F. Supp. 3d at 1116; *see also Terix Computer Co.*, 2015 WL 2090191, at *4 ("contract interpretation is a question of law for the court" and "should only be left to a jury if 'the interpretation turns upon the credibility of extrinsic evidence.'"). It is a longstanding rule under both California and Colorado law that contract interpretation is a question for the court.[2] *Parsons v. Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965) ("It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence."); *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009) ("Contract interpretation is a question of law for the court to decide.").

Absent ambiguity requiring consideration of extrinsic evidence, the Court should instruct the jury as to the meaning of contract terms. *Rio Properties, Inc. v. Stewart Annoyances, Ltd.*, No. CV-S-01-0459-LRH-PAL (D. Nev.), Jury Instructions at Instruction No. 23–24 (Sept. 8, 2005); *see also, e.g.*, *Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*, 274 Cal. Rptr. 206,

---

[2] By their express terms, the Siebel and J.D. Edwards license agreements that Rimini identifies in its opposition, like the license agreements that this Court considered on Oracle's motion for summary judgment, "are to be construed in accordance with the laws of the State of California" and "the State of Colorado," respectively. MSJ 1, 6 F. Supp. 3d at 1093 n.5 (applying California and Colorado contract law to Rimini's license defense). (Opp. Ex. D at 4, § 9.2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. Ex. E at 10, § 9.2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. Ex. B at 5, § 14(D) (▇▇▇▇▇▇▇ Opp. Ex. C at 2, § O▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇)

6

1  211 (Cal. Ct. App. 1990) ("The instructions . . . incorporated the trial court's construction of the
2  contract; the jury was not required to interpret the policy language."); *W. Colo. Power Co. v.*
3  *Gibson Lumber & Coal Co.*, 176 P. 318, 319 (Colo. 1918) ("where a contract is clear and
4  unambiguous," "the jury should have been so instructed" on its meaning).  Even a decision
5  Rimini cites, *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356 (Fed. Cir. 2004) (Opp. at 4),
6  found legal error where the district court failed to instruct "the jury on its claim construction
7  rulings[, a question of law,] and on the jury's obligation to apply the district court's claim
8  constructions to the facts."  *Id.* at 1366–67.
9       Rimini makes no effort to show any specific ambiguity in the relevant agreements, which
10  would require Rimini to demonstrate that a specific term is "reasonably susceptible" to more
11  than one interpretation.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015–18 (9th Cir.
12  2012).  The Court already rejected such claims on summary judgment, holding the dispositive
13  language "unambiguous."  MSJ 1, 6 F. Supp. 3d at 1096, 1098–99, 1101–02; MSJ 2, 6 F. Supp.
14  3d at 1117, 1121; *see also Terix Computer Co.*, 2015 WL 2090191, at *4–*6 (construing Oracle
15  licenses).
16       There is also no merit to Rimini's argument that this Court's summary judgment order
17  left outstanding "factual disputes" as to the "scope of the J.D. Edwards and Siebel licenses."
18  (Opp. at 6)  To the contrary, the Court conclusively decided the legal meaning of both Giant
19  Cement's J.D. Edwards and Novell's Siebel licenses and determined what copying they did and
20  did not authorize.  MSJ 1, 6 F. Supp. 3d at 1103–05.  The Court found that "having a copy of the
21  software on Rimini's systems for archival purposes does not violate this [Giant Cement] license
22  restriction so long as Rimini does not access the software's source code" and that "Novell's
23  license allows for archival and/or back-up copies of the software on a third-party system."  *Id.*
24  The Court held that the *factual dispute* for the jury to resolve was "whether Rimini's use of the
25  development environment associated with Giant Cement was for archival purposes or whether
26  Rimini accessed the software's source code" and whether "the development environments
27  associated with Novell are used exclusively for archival and back-up purposes, and related
28  testing."  *Id.* at 1104–05 & n.20.  The only issues for the jury to resolve thus are factual issues as

to whether the Rimini environments were for archival or backup purposes, not the interpretation of relevant license terms.

### 2. An Instruction on License Meaning Will Make the Trial More Efficient and Fair.

Rimini's suggestion that an instruction is unnecessary because the licenses are easily understood is also wrong. The Court, undoubtedly with no small investment of time, reviewed and construed Oracle's licenses on summary judgment. The trial will be fairer and more efficient if the jury receives the benefit of that work.

Rimini rests its argument on inapplicable, out-of-circuit authority.[3] The *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 269 (2d Cir. 2011) decision centrally relied upon by Rimini (Opp. at 5) held that there was no manifest injustice requiring a new trial where the jury instructions did not define "pizzeria services" distinctly from "general restaurant services" because the term is "neither technical nor ambiguous." That decision offers Rimini no support in this case, where, as the Court's experience at summary judgment confirms, the contracts are far more complicated than the difference between a pizzeria and a general restaurant.

The contrast between the circumstances of *Patsy's* and those here demonstrates the unworkability of Rimini's proposal. To give the jury a stack of licensing documents with the only instruction being that they should simply be afforded their "ordinary" or "common meanings" (Opp. at 5) would invite unnecessary delay and confusion even for a small number of licenses. Considering the scope of this case and the number of licenses potentially at issue,

---

[3] In *United States v. Morris*, 928 F.2d 504, 511 (2d Cir. 1991) (Opp. at 5), the Second Circuit held that it was unnecessary to define the "specific statutory terms" "authorization" and "exceeding authorized access" as used in 18 U.S.C. § 1030(a)(5) (1988) (the Computer Fraud and Abuse Act of 1986) for the jury. Oracle's motion does not concern statutory terms or the Computer Fraud and Abuse Act cause of action. Rimini also cites *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008), which concerned instructions on patent claims for which claim construction had not been necessary. (Opp. at 5) Neither of these decisions addressed contract or licensing issues or anything like the complexity of the licenses at issue here.

asking the jury to resolve all of their meanings with no guidance risks turning the trial into a quagmire.

### III. ORACLE'S SECOND PROPOSED INSTRUCTION ACCURATELY AND FAIRLY SUMMARIZES THE LICENSE TERMS.

Oracle's second proposed instruction summarizes the key terms in the Oracle licenses, as Judge Leen has suggested. (Ringgenberg Reply Decl. Ex. F, Status Conference Tr. May 17, 2011 at 7:21–8:9; Ex. G, Status Conference Tr. Mar. 29, 2011 at 24:14–25:9) Rimini opposes the instruction on the grounds that the licenses vary, despite having failed to identify any material differences among the licenses in its opposition (or during efforts to meet and confer). (Opp. at 6) Oracle's proposed instruction summarize the licenses with a construction *less restrictive* than any license identified by Rimini, and thus would streamline and simplify the trial in a manner entirely fair to Rimini.[4] Rimini's proposed instructions, by contrast, are inaccurate and misleading.

#### A. PeopleSoft

Oracle's proposed instruction regarding the PeopleSoft license agreements is fair and appropriate, for the reasons discussed above. Rimini's proposed instruction (Opp. at 11) would only confuse the jury. The first two sentences are unnecessary, and Rimini's lengthy recitation of all the things that the PeopleSoft licenses "permit" simply rehashes arguments Rimini made on summary judgment and that this Court already rejected. The Court entered judgment for Oracle, MSJ 1, 6 F. Supp. 3d at 1107–08, and Rimini has now stipulated that it has no license defense for any PeopleSoft software copies (Dkt. 599). Rimini's proposed instruction thus reflects rejected constructions that should not be presented to the jury.

---

[4] Rimini cites *United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010) for the proposition that Oracle bears a burden to show that "the licenses are identical." (Opp. at 6) The language Rimini cites in *Laurent* concerns the narrow issue of a spoliation jury instruction allowing an adverse inference, *id.* at 902–03, which logically require a specific evidentiary basis (as was before Judge Leen when she ordered a spoliation instruction in this case). Oracle's instant motion concerns only the meaning of unambiguous license agreements; the Court's summary judgment order, and the record underlying it, is more than an adequate evidentiary foundation for the requested instruction.

**B. Siebel**

Oracle's proposed instruction regarding the Siebel license agreements fairly describes the Court's interpretation of relevant license terms in connection with Rimini's "archival copy" defense. The instruction informs the jury that the Siebel license agreements do not permit copying to support multiple customers or copying to Rimini's computers unless for archival purposes. Rimini's proposed instruction would only inform the jury that archival copies are permitted, without informing the jury that non-archival copies on Rimini's computers are unlicensed.

The Court has already determined the meaning of the Novell license agreement, MSJ 1, 6 F. Supp. 3d at 1104–05, and there is no basis for Rimini's claim (Opp. at 8) that the jury should construe the license anew. The Novell license agreement does not allow—as Rimini argues— reproduction of a "reasonable number of copies" without qualification. (*Id.*) The Court held that Section 2.1(iv) of the Novell license agreement only authorized copying "[w]hen read in conjunction" with Section 2.1(viii). MSJ 1, 6 F. Supp. 3d at 1105. Read together, those provisions only "authorize[] Novell to allow Rimini to make a reasonable number of copies . . . for archival and back-up purposes." *Id.*

Rimini points to Section 2.1(vii) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Instructing the jury that Novell's license allowed Rimini to copy under the rights granted to Novell in Section 2.1(vii) would misstate the Court's legal rulings.

Rimini's discussion of the Keynote Systems license (Opp. at 7 & Ex. D) also does not warrant adoption of Rimini's proposed instruction. The Keynote Systems' license agreement identified by Rimini ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ It provides that the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Opp.

1  Ex. D, Section 1.17) ███████████████████████████████████

2  ███████████████████

### C. J.D. Edwards

Oracle's proposed instruction regarding the J.D. Edwards license agreements is based on the Court's summary judgment order and allows Rimini to argue to the jury its theory at summary judgment, that "Rimini's maintenance of environments on behalf of its J.D. Edwards customers is for *archival purposes.*" (Dkt. 259 at 22 (emphasis added))  Rimini's proposed instruction is both unhelpful and contrary to the Court's prior rulings.

Rimini proposes that the Court instruct the jury that the J.D. Edwards license agreements allow Rimini to copy J.D. Edwards software and support materials "to support the licensee's users," citing Section 7(iii) of Giant Cement's license agreement. (Opp. at 12)  The Court has already determined what Giant Cement's license agreement does and does not allow, and Rimini unsuccessfully argued that Section 7(iii) of the license authorized such copying. (Dkt. 259 at 22)  The Court considered Giant Cement's license, including Section 7(iii), and found that Section 7(iii) allows a "development environment . . . used solely for archival purposes." MSJ 1, 6 F. Supp. 3d at 1103–04.  Rimini's instruction attempts to insert an interpretation of Giant Cement's license that the Court considered and rejected.

The license agreements cited by Rimini (Opp. at 7 & Exs. B, C) with Dana Corporation and Baxter Sales Corporation, Inc. do not support Rimini's proposed instruction for several reasons.  First, the license agreements for Dana Corporation and Baxter Sales Corporation appear nowhere on the exhibit lists filed by the parties. (Dkt. 523-8, Dkt. 523-9)  Second, ██████

██████████████████████████████████████████████████████████

---

[5] Ringgenberg Reply Decl. Ex. H, Rimini Press Release 7/7/15 ("Oracle's media statement today regarding the nearly decade long competition . . . between Oracle and Rimini"); Ex. I, Rimini S-1 at 18 ("We face intense competition from enterprise software vendors such as Oracle and SAP"); Ex. J, Ravin 7/21/10 Dep. Tr. 335:5–10 (Oracle and Rimini are "competitors in the support services products, yes").

1   ███████████████ (Dkt. 523)  Third, ███████████
2   ██████████████████████████████████████████ Fourth,
3   ██████████████████████████████████████████
4   ██████████████████████████████████████
5   (Ringgenberg Reply Decl. Ex. K, Rimini's Supplemental Objections and Responses to Plaintiffs'
6   Interrogatories, No. 15, Exs. A, B, and C)
7       Like the other agreements proffered by Rimini, both J.D. Edwards license agreements
8   that Rimini identifies ██████████████████████████ Dana
9   Corporation's license ██████████████████████████████
10  ██████████████████████████████████████████
11  ██████████████████████████████████████████
12  ███████████████████ (Opp. Ex. B at Article II, Section 2)  The attendant
13  attachment, not included as an exhibit to Rimini's opposition, ████████████
14  ████████████████████████ (Ringgenberg Reply Decl. Ex. L,
15  Attachment O to Dana Corp.'s J.D. Edwards license agreement)  The license further ██████
16  ██████████████████████████████████████████
17  ████████████ (Opp. Ex. B)  The J.D. Edwards license agreement for Baxter
18  Sales Corporation similarly ████████████████████████
19  ██████████████████████████████████████ (Opp.
20  Ex. C, Section B)
21      Oracle's proposed license instructions do not instruct the jury ████████████
22  ██████████████████████████████████████████
23  ████████████████████ although the licenses Rimini cites contain those restrictions.
24  Instead, Oracle proposed reasonable and fair instructions explaining the material terms of the
25  J.D. Edwards license agreements consistent with the Court's summary judgment rulings.
26  **IV.    THE COMBINED EFFECT OF THE PROPOSED INSTRUCTIONS SHOWS THAT ORACLE'S ARE NECESSARY AND APPROPRIATE.**
27
28      The practical effects at trial of the competing instructions, particularly when considered

12

as a whole, demonstrate that Oracle's proposed instructions are appropriate and Rimini's are a recipe for delay and confusion.

First, if the jury receives Rimini's proposed instruction that Rimini's burden-of-proof on the license defense is satisfied, and the jury receives no other instruction on J.D. Edwards and Siebel license terms (as Rimini requests), then it could be necessary for Oracle to go line by line though each license to summarize and disprove Rimini's vague claim that its activities were licensed. Such a process would be profoundly inefficient. By contrast, under Oracle's proposed instructions, the Court would instruct the jury on the meaning of the license terms, including a lowest-common-denominator summary that is *more permissive* than any of the specific terms Rimini has identified after summary judgment. Rimini would then assert a license defense based on those terms and the jury would decide, based on the evidence of Rimini's conduct, whether its conduct was within the scope of the license terms as the Court explained them.

Second, as to PeopleSoft, under Rimini's proposed instruction, the jury would not be informed whether the licenses do or do not permit preparation of derivative works from PeopleSoft software or copying of PeopleSoft, and thus, the jury would need to sort through the licenses to decide whether Rimini's conduct in this regard was licensed. By contrast, under Oracle's proposed instructions, the jury will be informed of the governing legal terms and can decide based on the evidence whether Rimini's conduct was authorized under the licenses.

Third, as to Database, although the Court has entered summary judgment against Rimini, finding that Rimini had no authorization to copy Oracle Database software, Rimini hopes to hide this fact from the jury. If Rimini were to succeed in (what is effectively) negating that portion of the Court's August 2014 summary judgment order, then Oracle will need to elicit testimony about the *adjudicated fact* that Rimini had no such license. This would serve no purpose other than delay and misdirection. By contrast, Oracle's proposed instruction will clearly and fairly focus the jury on the issue they need to decide.

Rimini's tactics are clear. Having lost on PeopleSoft and Database, Rimini now is hoping to bog the trial down in weeks of unproductive and unnecessary testimony about issues that either have already been decided (e.g., Database liability), could be addressed far more

1  efficiently (e.g., debating the meaning of specific license provisions), or are irrelevant (e.g.,

2  discussion of more restrictive Siebel and JDE license terms that Oracle is willing not to rely

3  upon).  A manageable trial requires that the jury receives reasonable guidance from the Court,

4  and the jury instructions Oracle proposes provide that guidance.

## CONCLUSION

For all the reasons described above, the Court should grant Oracle's motion and adopt the jury instructions proposed by Oracle.

DATED:  July 24, 2015                                BOIES SCHILLER & FLEXNER LLP


By:  /s/ *Kieran P. Ringgenberg*
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc.
and Oracle International Corp.

REPLY IN SUPPORT OF ORACLE'S MOTION TO DETERMINE DISPUTED JURY INSTRUCTIONS

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |

I hereby certify that on the 24th day of July, 2015, I electronically transmitted the foregoing **REPLY IN SUPPORT OF ORACLE'S MOTION TO DETERMINE DISPUTED JURY INSTRUCTIONS [REDACTED]** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

                                    /s/ Catherine Duong
                                    An employee of Boies, Schiller & Flexner LLP