SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand Esq. (*pro hac vice*)
Ryan D. Dykal Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, Texas   77002
Telephone: (713) 227-8008
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone:  (702) 792-3773
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

LEWIS AND ROCA LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
WAllen@LRRLaw.com

GIBSON DUNN & CRUTCHER LLP
Lauren Blas
Blaine H. Evanson
333 S. Grand Ave., 47th Floor
Los Angeles, California 90071
Telephone: 213-229-7000
bevanson@gibsondunn.com

GIBSON DUNN & CRUTCHER LLP
Joseph A. Gorman
555 Mission Street
San Francisco, California  94105
Telephone: 415-393-8296
jgorman@gibsondunn.com

GIBSON DUNN & CRUCTHER LLP
Mark A. Perry
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306

RIMINI STREET, INC.
Daniel B. Winslow
6601 Koll Center Parkway, Suite 300
Pleasanton, California  94566
Telephone: 925-264-7736
DWinslow@riministreet.com

*Attorneys for Defendants*
*Rimini Street, Inc., and Seth Ravin*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA   [REDACTED]

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10**<br><br>Trial Date:  September 14, 2015 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

   1.   Opposition To MIL No. 1:  Evidence And Argument Relating To Rimini's
        2014 Support Model ........................................................................................ 2

   2.   Opposition To MIL No. 2:  Rimini's Financial Condition Or Contentions
        That Rimini Cannot Afford A Damage Award........................................... 6

   3.   Opposition To MIL No. 3:  Oracle's Overall Wealth And Assets............................... 7

   4.   Opposition To MIL No. 4:  Argument About License Provisions Not
        Disclosed In Response To Oracle's Interrogatory ..................................... 9

   5.   Opposition To MIL No. 5:  Parol Evidence To Vary The Unambiguous
        Terms Of Agreements.................................................................................. 11

   6.   Opposition To MIL No. 6:  Customer Statements In "At Risk Reports" ................. 15

   7.   Opposition To MIL No. 7:  Antitrust And Competition Rhetoric And
        Evidence, Or Unrelated Evidence Concerning Oracle ........................................ 20

   8.   Opposition To MIL No. 8:  Settlement Discussions................................................. 22

   9.   Qualified Non-Opposition To MIL No. 9:  Rimini Live Witnesses Who Are
        Not Made Available For Oracle's Case-In-Chief ................................. 24

   10.  Opposition To MIL No. 10:  Avoided Labor Cost Evidence ................................. 26

III.  CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Actuate Corp. v. Aon Corp.,*
2012 U.S. Dist. LEXIS 87185 (N.D. Cal. June 18, 2012) .................................................. 12, 13

*ADT Sec. Servs. v. Sec. One Int'l, Inc.,*
2013 WL 4766401 (N.D. Cal. Sept. 5, 2013) ........................................................................ 17

*Atlantic-Pacific Const. Co., Inc. v. NLRB,*
52 F.3d 260 (9th Cir. 1995) ............................................................................................... 17, 18

*Bourne v. Walt Disney Co.,*
68 F.3d 621 (2d Cir. 1995) ..................................................................................................... 10

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.,*
227 F.R.D. 313 (C.D. Cal. 2004) ............................................................................................ 10

*Campbell v. Bd. of Trustees of Leland Stanford Jr. Univ.,*
817 F.2d 499 (9th Cir. 1987) .................................................................................................. 22

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
20 Cal.4th 163 (1999) ............................................................................................................. 21

*Chamberlain Group v. Skylink Tech., Inc.,*
381 F.3d 1178 (Fed. Cir. 2004) ............................................................................................... 21

*Dannenbring v. Wynn Las Vegas, LLC,*
907 F. Supp. 2d 1214 (D. Nev. 2013) ..................................................................................... 24

*FCC v. Fox Television Stations, Inc.,*
132 S. Ct. 2307 (2012) ............................................................................................................ 14

*FTC v. Figgie Intern., Inc.,*
994 F.2d 595 (9th Cir. 1993) .................................................................................................. 19

*Galindo v. Stoody Co.,*
793 F.2d 1502 (9th Cir. 1986) ................................................................................................ 21

*Geddes v. United Fin. Grp.,*
559 F.2d 557 (9th Cir. 1977) .................................................................................................... 7

*Grain Processing Corp. v. American Maize-Products Co.,*
185 F.3d 1341 (Fed. Cir. 1999) ................................................................................................. 4

*Haddad v. Lockheed Cal. Corp.,*
720 F.2d 1454 (9th Cir. 1983) ................................................................................................ 18

*Henein v. Saudi Arabian Parsons Limited,*
818 F.2d 1508 (9th Cir. 1987) ........................................................................................... 17, 18

*In re Amerco Derivative Litig.,*
252 P.3d 681 (Nev. 2011) ....................................................................................................... 20

*January v. Dr. Pepper Snapple Grp.*,
  594 F. App'x 907 (9th Cir. 2014) ............................................................................... 4

*JJ Indus., LLC v. Bennett*,
  71 P.3d 1264 (Nev. 2003) ........................................................................................ 20

*Josephs v. Pac. Bell*,
  443 F.3d 1050 (9th Cir. 2006) ................................................................................. 22

*Kesey, LLC v. Francis*,
  2009 U.S. Dist. LEXIS 28078 (D. Or. Apr. 3, 2009) .............................................. 23

*Knauff v. Dorel Juvenile Grp.*,
  2010 WL 114014 (W.D. Tex. Jan. 6, 2010) ............................................................ 17

*Knecht v. Fidelity Nat'l Title Ins. Co.*,
  2015 WL 1514911 (W.D. Wash. Feb. 27, 2015) ....................................................... 9

*Land Serv., Inc. v. Lozen Intern., LLC*,
  285 F.3d 808 (9th Cir. 2002) ................................................................................... 19

*Licciardi v. TIG Ins. Grp.*,
  140 F.3d 357 (1st Cir. 1998) .................................................................................... 10

*Mallinckrodt, Inc. v. Medipart, Inc.*,
  976 F.2d 700 (Fed. Cir. 1992) ................................................................................. 21

*Marvin Johnson, P.C. v. Shoen*,
  888 F. Supp. 1009 (D. Ariz. 1995) ............................................................................ 8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  454 F. Supp. 2d 966 (C.D. Cal. 2006) ............................................................... 17, 18

*Montoya v. Orange Cnty. Sheriff's Dept.*,
  987 F. Supp. 2d 981 (C.D. Cal. 2013) ....................................................................... 4

*Obrey v. Johnson*,
  400 F.3d 691 (9th Cir. 2005) ..................................................................................... 4

*Oracle U.S.A. v. SAP AG*,
  2012 U.S. Dist. LEXIS 107147 (N.D. Cal. July 31, 2012)................................. 15, 16, 18, 20

*Oracle v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014) ................................................................................... 4

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
  121 F.3d 516 (9th Cir. 1997),
  *amended by* 133 F.3d 1140 (9th Cir. 1998) ............................................................ 21

*Quinn v. Fresno Cnty. Sheriff*,
  2012 WL 2995477 (E.D. Cal. July 23, 2012) ............................................................ 9

*Ramirez v. Plough*,
  6 Cal. 4th 539 (1993) ............................................................................................... 14

- iii -

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

*Rano v. Sipa Press, Inc.*,
   987 F.2d 580 (9th Cir. 1993) ................................................................................. 10

*Raybestos Prods. Co. v. Younger*,
   54 F.3d 1234 (7th Cir. 1995) ................................................................................. 23

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
   641 F. Supp. 2d 913 (N.D. Cal. 2009) ................................................................... 11

*Renfrew v. Hartford Accident & Indem. Co.*,
   2009 U.S. Dist. LEXIS 89267 (N.D. Cal. Sept. 10, 2009) ..................................... 12

*Rhoades v. Avon Prods.*,
   504 F.3d 1151 (9th Cir. 2007) ......................................................................... 22, 23

*Rondor Music Int'l, Inc. v. TVT Records LLC*,
   2006 U.S. Dist. LEXIS 97118 (C.D. Cal. Aug. 21, 2006) .................................. 8, 13

*Rowland v. Am. Gen. Fin. Inc.*,
   340 F.3d 187 (4th Cir. 2003) ................................................................................. 16

*Safeco Ins. Co. of Am. v. Burr*,
   127 S. Ct. 2201 (2007) ........................................................................................... 14

*Schoning v. State Farm Fire & Cas. Co.*,
   2012 U.S. Dist. LEXIS 31371 (D. Or. Mar. 8, 2012) ............................................... 8

*Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977),
   *superseded in part on other grounds by* 17 U.S.C. § 504(b) ..................................... 4

*United States v. Arteaga*,
   117 F.3d 388 (9th Cir. 1997) ................................................................................. 16

*United States v. Mitchell*,
   49 F.3d 769 (D.C. Cir. 1995) ................................................................................. 17

*United States v. Pazsint*,
   703 F.2d 420 (9th Cir. 1983) ........................................................................... 17, 19

*United States v. Thoms*,
   684 F.3d 893 (9th Cir. 2012) ................................................................................. 24

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ................................................................................. 23

*Welle v. Provident Life & Accident Ins. Co.*,
   2013 U.S. Dist. LEXIS 155902 (N.D. Cal. Oct. 30, 2013) ....................................... 8

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ............................................................................... 10

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

**Statutes**

Cal. Civ. Code § 1645 ............................................................................................. 12

Nev. Rev. Stat. 42.005(4) ......................................................................................... 7

**Rules**

Fed. R. Civ. P. 37(c)(1) ............................................................................................ 9

Fed. R. Civ. P. 45(c)(1) ........................................................................................... 24

Fed. R. Evid. 403 ..................................................................................................... 25

Fed. R. Evid. 408 ......................................................................................... 22, 23, 24

Fed. R. Evid. 408(b) ................................................................................................ 24

Fed. R. Evid. 801(c)(2) ............................................................................................ 17

Fed. R. Evid. 801(d) ..................................................................................... 15, 16, 20

Fed. R. Evid. 801(d)(2)(D) ...................................................................................... 16

Fed. R. Evid. 803(1) ................................................................................................ 18

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

## I.     INTRODUCTION

Defendants Rimini Street, Inc. and Seth Ravin (collectively "Rimini Street" or "Defendants") oppose Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.'s (collectively, "Oracle" or "Plaintiffs") motions *in limine* (Dkt. 648) for the following reasons:

1.  The Court should not exclude evidence or argument relating to the fact that Rimini Street has changed its support model.  While Rimini Street will not refer to the case captioned *Rimini Street, Inc. v. Oracle International Corp.* ("*Rimini II*") at trial, this case (*Rimini I*) concerns a specific type of conduct during a specific time period, and Rimini Street should be permitted to explain to the jury that it is no longer engaging in that conduct.  Excluding this evidence as Oracle requests would mislead the jury and would be manifestly unfair to Rimini Street because the absence of this evidence incorrectly suggests that Rimini disregarded this Court's pre-trial rulings on the infringement issues, thereby improperly bolstering Oracle's willfulness allegations.

2.  The Court should not exclude all evidence or argument relating to Rimini Street's financial condition because this evidence is relevant to Rimini Street's rebuttal of Oracle's claim that it is entitled to infringer's profits and to proof of the fair market value of its use of Oracle's software.

3.  The Court should not exclude reference to Oracle's wealth.  In the Joint Pretrial Order, Oracle emphasized that its size and overall annual research investment were material facts to all of its causes of action (Dkt. 527 at 22), yet now seeks to prevent Rimini Street from referring to or exploring those very assertions.  Oracle simply cannot have it both ways.

4.  Oracle asks the Court to exclude any license provision in support of Rimini Street's express license defense that was not asserted in response to Oracle's contention interrogatory.  But Oracle has not identified *any* deficiency in Rimini's extensive responses to Oracle's contention interrogatories, let alone a deficiency that would trigger a sanction under Rule 37.  Oracle is fully on notice of Rimini's license contentions.

5.  Rimini Street's expert testimony on industry practice should not be excluded because this evidence is not improper "parol evidence" intended to vary the terms of Oracle's licenses. Rather, this evidence provides appropriate contextual background from an industry perspective,

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

rebutting Oracle's damages claims and Oracle's allegation that Rimini's entire business model is built on willful copyright infringement.

6. Oracle's own corporate documents containing observations by its sales representatives regarding unsatisfied customers should not be excluded. These statements are not hearsay, but rather are statements by Oracle's employees made in the ordinary course of Oracle's business. To the extent the documents contain statements by customers, those statements are also not hearsay when not offered to prove the truth of the customer's specific complaints about Oracle, and otherwise qualify for hearsay exceptions.

7. Evidence and argument characterizing, or claiming, that Oracle's practices are anti-competitive should not be excluded. Oracle's license agreements give licensees the express right to employ third-party vendors, yet Oracle now claims Rimini cannot provide services as a third-party vendor without infringing. Oracle's motive and conduct are relevant to rebutting Oracle's state law claims for interference with prospective economic advantage, inducing breach of contract, and unfair competition, as well as Rimini Street's copyright misuse defense.

8. Oracle asks the Court to preclude evidence of purported "settlement discussions," but even a cursory review of those documents shows that they are not settlement documents, but rather threats from Oracle designed to intimidate a much smaller competitor.

9. Rimini Street does not oppose Oracle's request to seek testimony from live witnesses who are not made available for Oracle's case-in-chief provided Rimini Street can still conduct a full examination of witnesses at the time and can rebut arguments made by Oracle after Rimini Street's own examination, and provided any videotaped deposition testimony of those witnesses is used only for impeachment.

10. Evidence of avoided labor costs should not be excluded because it is relevant to Rimini Street's non-infringing alternatives and fair market value of use defenses.

## II.   ARGUMENT

1. **Opposition To MIL No. 1:   Evidence And Argument Relating To Rimini's 2014 Support Model**

The issue presented is a simple one: Can Rimini Street refer to the acts that Oracle accuses

2

1  as infringing in the past tense, because it ceased those acts years ago, or must Rimini Street, as

2  Oracle demands, incorrectly and untruthfully refer to those acts, none of which it has engaged in for

3  more than a year, in the present tense?

4       Rimini Street does not oppose Oracle's motion to exclude references to *Rimini II* given

5  Magistrate Judge Leen's ruling that "the case will remain as it was put in at the close of discovery."

6  Dkt. 515 at 3.  But Rimini Street maintains that testimony and evidence explaining that Rimini Street

7  has ceased certain past practices should not be excluded because this evidence is required in order to

8  rebut Oracle's statements—which it has made repeatedly to the Court and will no doubt attempt to

9  make to the jury—that Rimini Street is currently infringing or has continued to infringe Oracle's

10 copyrights beyond the period at issue in this lawsuit.  The evidence is also relevant to rebutting

11 Oracle's arguments about its alleged damages as well as Oracle's willfulness allegations.

12      ***Relevant.***  The evidence Oracle seeks to exclude is relevant to "establishing the end of both

13 the infringing conduct and Oracle's damages" at issue in this trial.  Dkt. 488 at 15.  Moreover,

14 Rimini Street's ability to cease the conduct Oracle alleges is infringing in the case and the existence

15 and implementation of a non-infringing alternative has always been an integral part of the damage

16 analysis in the expert reports filed before the close of discovery.  Oracle had ample opportunity to

17 (and has attempted to) challenge those allegations.  Dkt. 488 at 12-13; *see* Dkt. 656-8 at 29 (Dean).

18      Oracle continually misrepresents and/or implies that Rimini Street continues to commit

19 allegedly unlawful acts even though Oracle agreed to limit its damages claims to the period ending

20 in February 13, 2014.  *See, e.g.*, Dkt. 527 at 4 ("From day one, Ravin and Rimini's scheme has been

21 to build a business through indiscriminate infringement and unauthorized downloads, hide what it

22 has been doing, and avoid paying for the full extent of the harm it caused Oracle if it was ever

23 caught"); 48 ("unless Defendants are enjoined, [Oracle] will continue to suffer irreparable injury");

24 48-49 ("Defendants continued to make and use illegal copies of Oracle software even after the start

25 of this litigation").  These statements are simply false and suggest to the jury that Rimini Street still

26 engages in the challenged conduct when it does not.  The jury is "entitled to know why Oracle's

27 damages terminated in addition to when."  Dkt. 488 at 15.

28

3

7127756

1    Especially given Oracle's willfulness and punitive damages claims, it would be highly unfair

2    to permit Oracle to misrepresent to the jury that Rimini Street is continuing to infringe and cause

3    Oracle harm.  Rimini Street could and did stop the conduct at issue, and changed the support model

4    that Oracle alleges infringes, and it did so in a manner that specifically incorporates the concerns

5    raised in the Court's summary judgment order.  *See, e.g.*, *January v. Dr. Pepper Snapple Grp.*, 594

6    F. App'x 907, 910 (9th Cir. 2014) (unpublished) (citing *Obrey v. Johnson*, 400 F.3d 691, 701-702

7    (9th Cir. 2005)) (reversing decision to exclude evidence where the evidence defendants were

8    allowed to present to rebut plaintiffs' claims "was not comparable in strength to the excluded

9    evidence"); *see also Montoya v. Orange Cnty. Sheriff's Dept*., 987 F. Supp. 2d 981, 995 (C.D. Cal.

10   2013) (defendant "must be allowed" to offer certain evidence to rebut plaintiff's evidence where

11   relevant to a dispute plaintiff put at issue).  Simply put, Oracle accused Rimini Street of specific acts

12   of infringement, and Rimini Street could and did discontinue those acts.

13       This evidence is also relevant to allow the jury to evaluate Rimini Street's non-infringing

14   alternative rebuttal to Oracle's damages claims.  One of Rimini Street's arguments is that Oracle's

15   damages should be limited to the labor costs Rimini Street could have avoided by using an allegedly

16   infringing rather than non-infringing model, which was available during the damages period.  Dkt.

17   488 at 15.  Indeed, for most if not all of the conduct Oracle challenges here as infringing (local

18   hosting, automated downloads, use of Oracle's Development Database, archiving downloads for

19   common use, cross-use, and cloning), a non-infringing model was available *during the discovery*

20   *period*.  *See*, *e.g.*, Dkt. 490 at 12-13.  "Without the infringing product, a rational would-be infringer

21   is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent

22   owner rather than leave the market altogether."  *Grain Processing Corp. v. American Maize-*

23   *Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999); *see also Oracle v. SAP AG*, 765 F.3d 1081,

24   1089 (9th Cir. 2014) ("the seller will not ordinarily charge less for a license than its anticipated cost,

25   and the buyer will not ordinarily pay more for a license than its anticipated benefit"); *Sid & Marty*

26   *Krofft Tel. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 n.20 (9th Cir. 1977), *superseded*

27   *in part on other grounds by* 17 U.S.C. § 504(b) ("An author might license the use of his copyright

28

1  either for a lump sum based on the reasonable value of the work or for a royalty derived from the

2  licensee's profits …. This same distinction is recognized in patent cases.").  These concepts are

3  discussed more fully in Rimini Street's concurrently filed opposition to Oracle's *Daubert* motion.

4       This is not a liability argument as Oracle suggests (Mot. 11), and Oracle's arguments as to

5  why the model is irrelevant to damages rest on an overly narrow view of Judge Leen's discovery

6  order.  Rimini Street adduced significant evidence during discovery relating to non-infringing

7  alternatives—as summarized in Scott Hampton's expert opinion—*before the discovery cut-off*,

8  which Judge Leen's order does not purport to bar.  *See*, *e.g.*, Dkt. 665, Ex. 13 at 88 (Hampton

9  Report) (noting that in his opinion, "Rimini Street was financially capable of operating in a non-

10  infringing remote-only manner without infringing Oracle's copyrighted works").  Oracle deposed

11  Mr. Hampton and otherwise tested Rimini Street's non-infringing alternative arguments in

12  discovery.  *See id*. at 16-17; *see also* Rimini Opp. to Oracle's *Daubert* Mot.  As such, Rimini Street

13  is entitled to introduce this evidence at trial.

14       ***Not Prejudicial.***  Oracle will not be prejudiced by Rimini Street clarifying to the jury that it

15  has changed its process.  Rimini Street will not ask the jury to decide whether Rimini Street's new

16  process is lawful or not; that issue is being litigated by the parties in *Rimini II*.  But Rimini Street is

17  entitled to tell the jury that its processes have been changed, and that it could have implemented, and

18  in many respects did implement, the type of remote-services model—even at the time of the alleged

19  infringing conduct—that its experts opined about well before the close of discovery.  It would be

20  prejudicial and manifestly unfair to Rimini Street if Oracle is allowed to state, suggest, or imply that

21  Rimini continues to engage in infringing conduct through the time of trial, without Rimini being

22  allowed to refer to new/changed processes.

23       This evidence is not offered in an effort to "circumvent" Magistrate Judge Leen's ruling (as

24  Oracle claims), because she did not exclude evidence regarding Rimini Street's cessation of the

25  conduct Oracle accuses in this case.  Dkt. 647-6 at 3.  Moreover, because Rimini Street is not

26  seeking to have the jury decide the lawfulness of its post-2014 model, Oracle's protests that it "has

27  not tested Rimini's assertions about this supposedly new model" (Dkt. 648 at 9) ring hollow.

28

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

***Overbroad and Premature.*** At a minimum, whether or not Rimini Street may introduce the fact that its process has changed, and/or other evidence relating to its post-2014 support process, should be decided on a case-by-case basis. Accordingly, Rimini Street respectfully asks this Court to deny Oracle's motion.

2.      **Opposition To MIL No. 2:  Rimini's Financial Condition Or Contentions That Rimini Cannot Afford A Damage Award**

Rimini Street does not oppose Oracle's motion *in limine* to the extent it seeks to exclude the evidence that is the subject of Rimini Street's Motion *in Limine* No. 3. Dkt. 652 at 6. Evidence relating to Rimini Street's revenue from non-accused products, its "contractual backlog" measure of potential future revenue, or Rimini Street executives' and Mr. Ravin's potential net worth in Rimini Street stock should all be excluded. *See id.*

However, some evidence related to Rimini Street's financial condition is relevant and necessary to rebutting Oracle's claim that it is entitled to infringer's profits and to proof of the fair market value of its use of Oracle's software. For example, to the extent Oracle claims it is entitled to profits that Rimini Street allegedly reaped from alleged infringement, Rimini Street is entitled to present financial evidence to demonstrate that it did not in fact realize any profit. And to the extent Oracle claims "the fair market value of a license for Rimini's use of Oracle's PeopleSoft, J.D. Edwards, and Siebel would have been a combined $210.0 million" (Dkt. 527 at 4), Rimini Street is entitled to present evidence that it could have operated without infringement for an additional $7.6 million—a far cry from the exaggerated $210 million Oracle claims. *See* Rimini Opp. to Oracle's *Daubert* Mot. at 4 (detailing basis for Mr. Hampton's expert opinions regarding the fair market value of a license). Presenting that evidence requires an explanation of Rimini Street's economic reality to explain how Rimini Street could have afforded to make that change. *See, e.g.*, *Oracle Corp. v. SAP AG*, 765 F.3d at 1088 ("The question, therefore, is not what the owner would have charged, but rather what is the fair market value") (internal citations and quotations omitted).

Oracle seeks to have it both ways by attempting to exclude all evidence of defendants' financial condition, yet claiming that "evidence of Seth Ravin's financial interest in Rimini, including his stock ownership in Rimini and the financial interest he has in that stock, is directly

6

7127756

relevant to Oracle's claim for vicarious liability against him as a Defendant." Dkt. 648 at 8.  To the extent Oracle seeks to introduce evidence of Mr. Ravin's financial condition, including his potential net worth in Rimini Street stock, Oracle contradicts its own position and the authorities cited by both parties.   For example, in Oracle's words, "Nevada law explicitly excludes evidence of the defendant's financial condition from the liability and compensatory damages phase of the trial." Dkt. 648 at 7; *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (cited by Oracle (Dkt. 648 at 8), and by Rimini Street (Dkt. 652 at 7), for the proposition that the financial standing of the defendant is inadmissible and prejudicial); *see also* Nev. Rev. Stat. 42.005(4) ("Evidence of the financial condition of the defendant is not admissible for the purpose of determining the amount of punitive damages to be assessed until the commencement of the subsequent proceeding to determine the amount of exemplary or punitive damages to be assessed").

Oracle should not be permitted to introduce evidence of Mr. Ravin's financial condition (including his stock ownership in the company) because such evidence would violate state law, the Federal Rules of Evidence, and Mr. Ravin's due process rights.  But the nature of Oracle's damages model requires submission of some evidence regarding Rimini Street's financial condition, and that evidence should not be excluded.

3.    **Opposition To MIL No. 3:  Oracle's Overall Wealth And Assets**

Oracle seeks to exclude "any evidence" and "any reference to Oracle's wealth" or that of its employees or officers on the theory that such evidence is not relevant and is prejudicial.  Dkt. 648 at 8-9.  The Court should deny Oracle's motion because Oracle's wealth and assets are plainly relevant to this case—indeed, Oracle has made them relevant.

***Relevant*.**  Oracle has put its wealth and financial condition directly at issue:  Oracle's first two statements of disputed facts in the Joint Pretrial Order are that (1) "Oracle spends several billions of dollars each year in overall research and development, a significant portion of which is dedicated to the products at issue in this case," and (2) "Oracle's intellectual property development has enabled it to become one of the largest software companies in the world, with over 100,000 employees."  Dkt. 527 at 22.  According to Oracle, those "*facts are material to its thirteen causes of*

7127756

1    *action*." *Id.* (emphasis added).

2         In other words, Oracle intends to tell the jury that it is one of the largest software companies

3    in the world, and that it "spends several billions of dollars each year in overall research." Such

4    statements clearly open the door for Rimini to make reference to and question witnesses about

5    Oracle's overall size and wealth. *See Marvin Johnson, P.C. v. Shoen*, 888 F. Supp. 1009, 1014 (D.

6    Ariz. 1995) (a party "cannot rely on their asserted financial condition as support for their [position]

7    but prevent the [other side] from presenting any evidence to rebut those assertions").

8         The evidence is also independently relevant to the damages Oracle seeks. "By alleging

9    damages that include the 'loss of benefits ...,' Plaintiffs have placed their financial condition at

10    issue." *Valdez v. Travelers Indem. Co.*, 2013 U.S. Dist. LEXIS 109154, at *11 (N.D. Cal. Aug. 2,

11    2013); *see also, e.g.*, *Welle v. Provident Life & Accident Ins. Co.*, 2013 U.S. Dist. LEXIS 155902, at

12    *7 (N.D. Cal. Oct. 30, 2013) (plaintiff's financial condition was "directly relevant to whether

13    Plaintiff has, in fact, suffered any economic loss").

14         Such evidence is also relevant to Oracle's motives and credibility. Rimini is entitled to

15    question witnesses about Oracle's overall wealth and size to establish that Oracle has the financial

16    motivation to prevent Rimini from competing with it. *See, e.g.*, *Schoning v. State Farm Fire & Cas.*

17    *Co.*, 2012 U.S. Dist. LEXIS 31371, at *15 (D. Or. Mar. 8, 2012) (plaintiff's financial condition

18    relevant to motive); *Rondor Music Int'l, Inc. v. TVT Records LLC*, 2006 U.S. Dist. LEXIS 97118, at

19    *37 (C.D. Cal. Aug. 21, 2006) (allowing defendant to refer "to the relative size and influence of

20    plaintiff ... in questioning the motives and credibility of plaintiff"). The four out-of-circuit cases that

21    Oracle cites (Mot. 9) do not support Oracle's position. Two depend on Alabama state law, and all

22    four turn on the specific nature of the claims in the case.

23         ***Not Prejudicial.*** Evidence of Oracle's size and wealth is not prejudicial. Indeed, Oracle

24    intends to present the *same evidence* to the jury in an effort to suggest that it is an upright corporate

25    citizen investing billions of dollars annually in research while employing over 100,000 people

26    worldwide. Dkt. 527 at 22. Rimini Street is entitled to explore and challenge that presentation.

27         ***Overbroad.*** Finally, even if the Court disagrees with Rimini Street, it should nonetheless

28

7127756

deny Oracle's motion as overbroad.  Oracle's request to exclude "any reference to Oracle's wealth" would encompass the plainly relevant information related to Oracle's claims for lost profits, prevent Rimini from rebutting Oracle's own presentation of its company, and exclude in a vacuum other potentially admissible and relevant uses of that evidence (such as to demonstrate motive and credibility).  *E.g.*, Joint Pretrial Order at 4, Dkt. 527 (Oracle claiming lost profits).

4.     **Opposition To MIL No. 4:  Argument About License Provisions Not Disclosed In Response To Oracle's Interrogatory**

Oracle's fourth motion *in limine* asks this Court to apply the sanction in Fed. R. Civ. P. 37(c)(1) to anticipatorily exclude "any license provision in support of [Rimini Street's] express license defense that it did not assert in response to Oracle's Interrogatory asking for the same." Dkt. 648 at 9.  To be clear, Rimini Street does not intend to rely, and has given Oracle no reason to think it will rely, on provisions not disclosed during discovery.  But the fourth motion *in limine* is improper, overbroad, and premature, especially given that Oracle has not identified any evidence that Rimini Street failed to disclose or otherwise improperly disclosed during discovery.

***Overbroad and Premature.***    Rule 37(c)(1) provides that "if a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence … at a trial, unless the failure was substantially justified or is harmless."  The Rule's conditional phrasing indicates that it cannot be applied against any party until that party actually tries to *introduce* evidence that it had previously not disclosed, *and* it cannot show that the failure to disclose was justified or was harmless.

Oracle has failed to identify a single provision that Rimini Street intends to advance at trial and has not properly disclosed, and Rimini Street has given Oracle no indication that it intends to rely on such a provision.  It is therefore inappropriate and premature to apply Rule 37(c)(1) here. *See Knecht v. Fidelity Nat'l Title Ins. Co*., 2015 WL 1514911, at *3 (W.D. Wash. Feb. 27, 2015) (denying motion *in limine* to exclude evidence under Rule 37(c)(1) where plaintiff did "not identify what Defendants failed to disclose"); *Quinn v. Fresno Cnty. Sheriff*, 2012 WL 2995477, at *2 (E.D. Cal. July 23, 2012) (denying motion *in limine* "to preclude any 'evidence and/or testimony of any witnesses which were not disclosed in discovery or provided as supplemental discovery in a timely

9

fashion'" as "impermissibly vague" where the moving party did "not identify any particular evidence or witnesses that would be subject to exclusion under this ruling," and noting that the court was "unable to make [the] determination" Rule 37(c)(1) requires where "no specific failure to disclose is identified and no particular evidence is contested").

None of the cases Oracle cites permit Rule 37(c)(1) to be used in a motion *in limine* before undisclosed evidence is introduced. Each case applied the Rule only *after* the party attempted to present the evidence. *See Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (defendant failed to timely produce expert report); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323-24 (C.D. Cal. 2004) (plaintiff omitted facts in witness declaration from its interrogatories); *Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 363 (1st Cir. 1998) (expert changed testimony at trial without having supplemented prior discovery responses).

Oracle's contention that it "should not be forced to guess on which sentences in which agreements and for which customers Defendants might attempt to rely on for a license defense" (Dkt. 648 at 17) is baseless. First, Oracle has all the relevant licenses in its possession (they are *Oracle*'s licenses). There is accordingly no risk of unfair "surprise." Second, as Rimini Street has previously noted, only two of the four original categories of licenses—J.D. Edwards and Siebel—are still at issue in this case, which limits the universe of possible license provisions still further.

Rimini Street's disclosures during discovery were more than adequate. Rimini Street identified specific license agreement examples by software type, licensee, and Bates range, and also identified specific provisions, by paragraph number and subdivision, for each of the licenses. Dkt. 647-8 to -10. Each of those paragraphs was no more than a few sentences. Dkt. 647-8 at 4-7 (under seal). In its Supplemental Responses, Rimini then identified more than 120 J.D. Edwards and Siebel licenses by licensee, Bates number, and specific article and paragraph number. Dkt. 679-9 at 11-16 (under seal). Rimini Street supplemented its disclosures in January 2012, again listing dozens of licenses and specific articles and paragraphs. Dkt. 647-10 at 10-11 (J.D. Edwards, Siebel). Oracle is plainly on notice of the evidence and license provisions upon which Rimini Street seeks to rely.

Moreover, requiring Rimini Street to identify a specific license provision or a specific

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

sentence that authorizes each instance of allegedly infringing conduct does not comport with the parties' respective burdens of proof.   A valid copyright license is an affirmative defense to infringement.  *See* Dkt. 474 at 10 (permitting Rimini to assert customer's licenses as a defense to infringement); *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 585 (9th Cir. 1993); *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).  Once Rimini Street identifies a relevant license, it is *Oracle's* burden to prove that the copying was unauthorized, not Rimini Street's burden to show that the copying was authorized by the identified agreement or provision.  *See Bourne*, 68 F.3d at 631; *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 945 (N.D. Cal. 2009).

If, for unanticipated reasons, Rimini Street needs to introduce such a license provision at trial, the Court can address that situation at trial, rather than issuing a blanket ruling before Oracle has even identified the evidence to which it objects.  *See* Dkt. 636 at 4 (order denying TomorrowNow motion *in limine* without prejudice and permitting Rimini Street to raise "specific concerns or objections" with respect to particular pieces of evidence at trial).

### 5.   Opposition To MIL No. 5:  Parol Evidence To Vary The Unambiguous Terms Of Agreements

Oracle's fifth motion *in limine* to "exclude parol evidence, including evidence of industry practice, to vary the unambiguous terms of the agreements at issue in this case" ignores the issues in the case and is predicated on a mischaracterization of Rimini Street's industry practice evidence.

There is no dispute that Oracle's licensees allowed Rimini Street to make copies of the licensed software.  The issue for trial is whether copies of the licensed software made by Rimini Street were maintained in the proper physical location and used in the manner provided for by the terms of the licenses.  Rimini Street seeks to introduce evidence to provide industry context for Rimini Street's activity, demonstrating that its conduct did not constitute willful infringement and did not cause damage to Oracle.  Rimini Street does not seek to introduce the testimony of Brooks Hilliard, David Klausner, or the testimony of Seth Ravin that Oracle refers to in this motion *in limine* (Dkt. 648 at 11) in order to "*interpret*[] … the license and TOU [terms of use]" in the sense of trying to assign a different meaning to terms in the contracts.  The expert reports make clear that this is not the witnesses' intent.  *See*, *e.g.*, Hilliard Rep. at 59; Klausner Rep. ¶ III.B.  Rather, Rimini Street

11

seeks to introduce this evidence in order to resolve the factual questions this Court set forth in its February 13, 2014 summary judgment order with respect to Rimini Street's express license defense.

Moreover, Oracle ignores the fact that it is alleging that Rimini Street's infringement was *willful*, and that Rimini Street's conduct was so malicious and unreasonable that it warrants punishment through an award of *punitive damages*.  Evidence concerning the custom and practice in the industry is plainly relevant—indeed, critical—to Rimini Street's defense to willful infringement and punitive damages, and Oracle would not be prejudiced by its introduction.

**Relevant.**  Mr. Hilliard's testimony that "Rimini Street's practices are legal and supported by industry leading practices" (Dkt. 266 at 6:21-24), and Mr. Ravin's testimony that "it's industry standard for other third parties … [to] have copies of the software because they host it on their machines" (Dkt. 647-4 at 463:14-464:1), do not represent an effort to "vary or contradict the unambiguous terms of the agreements."  Dkt. 648 at 12.  The licenses do not state that Rimini Street's (or any other third party's) practices are illegal:  To the contrary, in its February 13, 2014 summary judgment order, the Court held that there were genuine issues of material fact as to whether the J.D. Edwards license for Giant Cement (Dkt. 474 at 22) and the Siebel license for Novell (*id*. at 24) authorized Rimini Street's conduct.  Oracle's attempt to exclude evidence regarding the very factual disputes precluding summary judgment is wholly inappropriate.

Mr. Hilliard explained during his deposition that he is "not a lawyer" and "was not offering a legal opinion in this case about what the licenses mean."  Dkt. 660-4 at 94:4-6.  Rather, Mr. Hilliard was using his industry knowledge to provide industry context for Rimini Street's practices, without guaranteeing that those practices conform to any of the licenses involved here.  *See* Dkt. 657-2 at 5 ("the copies Rimini made of Oracle software and/or programs were necessary and ordinary, and consistent with the normal customs and practices of the industry for licensees of business applications software, including contractors, [and] the licensees engage to provide software-related support services"); Hilliard Rpt. at 59 ("contract interpretation is customarily a legal, rather than a technical or business, issue" and it is "not my purpose here to present an opinion on whether Oracle's contracts should or should not be interpreted to allow such use by Rimini").

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

Testimony as to "industry custom and usage with respect to particular contractual terms," particularly where they are not defined and where the Court noted that questions of fact surrounded their implementation, is relevant to this case and a proper subject of expert testimony. *Renfrew v. Hartford Accident & Indem. Co.*, 2009 U.S. Dist. LEXIS 89267, at *88 (N.D. Cal. Sept. 10, 2009); *see also* Cal. Civ. Code § 1645 ("Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense"); *Actuate Corp. v. Aon Corp.*, 2012 U.S. Dist. LEXIS 87185, at *3-4 (N.D. Cal. June 18, 2012) ("Subject to Rule 403, it is usually proper for an expert to explain custom and practice to a jury .... This is proper expert testimony on industry custom to aid in the interpretation of an ambiguous term in the contract.").  For example, as noted in Rimini Street's *Daubert* opposition, Mr. Hilliard's perspective on the number of copies that are normal and necessary in the industry may assist with determining the meaning of "reasonable" as related to the license provisions allowing for a "reasonable" number of copies.  That "perspective" is not contractual interpretation; rather, it is a legitimate and necessary explanation on how companies frequently allow third-party support services to operate within the scope of their license agreements.  *See, e.g.*, *Actuate Corp.*, 2012 U.S. Dist. LEXIS 87185, at *3-4; *Renfrew*, 2009 U.S. Dist. LEXIS 89267, at *88.

Mr. Ravin also did not offer any opinion to contradict the terms of the license agreements; instead, he testified as to his belief that it was "acceptable for Rimini Street to have copies of its customers' licenses to Oracle software" because it was "industry standard" for hosting companies and others to have such copies.  Dkt. 647-4 at 463:14-19.  Mr. Ravin's state of mind is central to the willfulness allegations leveled against him, and Oracle's attempt to obtain a punitive damages award against him personally.

The Court wrestled with exactly these types of factual questions in its February summary judgment order, including what specific provisions authorized and whether what Rimini Street had done would apply.  With respect to the Giant Cement license, the Court specifically focused on whether the provisions governing archival copies authorized Rimini Street's conduct.  Dkt. 474 at 22-23 ("Based on this record, the court finds that there are disputed issues of material fact as to

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

1    whether Rimini's use of the development environment associated with Giant Cement was for

2    archival purposes").  With respect to the Novell license, the Court stated that "Novell's license

3    allows for [a 'reasonable number' of] archival and/or back-up copies of the software on a third-party

4    system," and denied Oracle's motion for summary judgment on this claim as well.  *Id.* at 24.  These

5    issues of fact—and the many others in the other J.D. Edwards and Siebel licenses—are entirely the

6    jury's to resolve (*see* Dkt. 617 at 10), and Mr. Hilliard's and Mr. Ravin's testimony is plainly

7    relevant to that determination by the jury.

8           Mr. Ravin's statement that Rimini Street downloaded materials that Oracle customers "were

9    entitled to" also does not contradict or vary the terms of the license agreements.  Dkt. 648 at 12.

10   There is no dispute that Oracle's customers were entitled to download materials from Oracle.  The

11   issue is ███████████████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17   ██████████████████████████████

18          Finally, testimony by Messrs. Klausner, Hilliard, and Ravin regarding the custom and

19   practice in the industry is unquestionably relevant to Rimini Street's defense against Oracle's

20   allegation of willful infringement and attempt to impose punitive damages on Rimini Street and Mr.

21   Ravin.  If defendants acted consistently with industry practice and custom, then their conduct was

22   objectively reasonable, and they lacked the malicious intent necessary for punitive damages.  *See*,

23   *e.g.*, *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2215-16 (2007); *Ramirez v. Plough*, 6 Cal. 4th

24   539, 552-55 (1993).  Indeed, imposing punishment on Rimini Street for conduct that was objectively

25   reasonable would be unconstitutional, because Rimini Street lacked fair notice that it could be

26   subjected to punishment for such conduct.  *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307,

27   2317 (2012).

28

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

***Overbroad and Premature.***  Oracle does not even identify any specific or even general areas of testimony it believes to be irrelevant with respect to David Klausner, making it impossible to make any determination at this time as to whether his testimony is relevant or not.  *See*, *e.g.*, Dkt. 636 at 3 (noting that the Court is "loath[] to make such a broad and general exclusion of evidence when the evidence has not been presented in context and covers information for which the court is not yet familiar").  The Court should deny Oracle's motion for this reason as well.

6.    **Opposition To MIL No. 6:  Customer Statements In "At Risk Reports"**

Rimini Street did not cause Oracle to lose clients; Oracle lost clients because they were dissatisfied with Oracle's service.  ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

In short, the at risk reports are directly relevant to Rimini Street's defense, and at the very least are admissible to impeach Oracle's own baseless causation evidence.

Oracle does not contest the relevance of these reports, but instead seeks to obscure their contents in the shadow of hearsay.  Oracle argues they are hearsay by calling them "customer comments" (Dkt. 647 at 13), but that is false; these reports are Oracle's *own employees'* comments, which Rule 801 explains "are not hearsay."  Fed. R. Evid. 801(d).  And to the extent the reports contain direct quoted customer comments (an isolated occurrence at most), those comments are not hearsay if not offered to prove that a customer's specific complaint about Oracle's service is true, and there are multiple exceptions to the hearsay rule that apply.

Judge Hamilton applied this same and correct analysis in the *Oracle v. SAP AG* case:

At this point, the only generalized ruling that the court can provide is (a) that *direct*

15

7127756

*quoted statements from customers* that are *being used to prove the truth of the matter being asserted*—e.g., Customer A states that it is leaving Oracle and going to SAP for a particular reason—are inadmissible hearsay; (b) that statements by Oracle employees that constitute analysis of a particular Oracle-Customer relationship, which may or may not be based on information that an Oracle employee obtained from the customer's representative, are not inadmissible hearsay, because they constitute employee party admissions or present-sense impressions; and (c) that statements that fall into the gray area in between—e.g., that a particular customer "has communicated to us their intent to have TomorrowNow support them in the interim as they migrate ... to SAP"—will have to be decided on a statement-by-statement basis.

*Oracle U.S.A. v. SAP AG*, 2012 U.S. Dist. LEXIS 107147, at *4-5 (N.D. Cal. July 31, 2012) (emphasis added).

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████.
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████

**Not Hearsay.**  The statements contained within Oracle's at risk reports are not hearsay.

First, the statements in the reports are party admissions.  They were made by Oracle's employees within the scope of their employment relationship.  A statement made by an opposing

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

1   party's "employee on a matter within the scope of that [employment] relationship" "is not hearsay."

2   Fed. R. Evid. 801(d), 801(d)(2)(D). ████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████ ████

6   are statements *made by the Oracle sales representative* within the course of his employment as a

7   sales representative.  They are not statements made by the customer.  Under the plain language of

8   Rule 801, they are not hearsay.  *See Oracle U.S.A.*, 2012 U.S. Dist. LEXIS 107147, at *10, *15-16.

9       The cases upon which Oracle relies involve actual customer statements, not a party

10  employee's statements about a customer.  *See Rowland v. Am. Gen. Fin. Inc.*, 340 F.3d 187, 194-95

11  (4th Cir. 2003) (letter written by customer); *United States v. Arteaga*, 117 F.3d 388, 396 n.12 (9th

12  Cir. 1997) (information written on forms by customer); *United States v. Mitchell*, 49 F.3d 769, 778

13  (D.C. Cir. 1995) (same); *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (tape-recorded

14  statements of witnesses).  Only two cases cited by Oracle involve employees' statements, but those

15  cases are inapposite.  *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, 2013 WL 4766401, at *3 (N.D. Cal.

16  Sept. 5, 2013) (notes of customer conversation offered for the truth of the matter asserted, and also

17  prepared in anticipation of litigation, which demonstrated a lack of reliability); *Knauff v. Dorel

18  Juvenile Grp.*, 2010 WL 114014, at *4-5 (W.D. Tex. Jan. 6, 2010) (customer service recitations of

19  customer complaints offered for the truth of the customer's assertion).

20      Second, an out-of-court statement becomes hearsay only when it is relied upon "to prove the

21  truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  There is no hearsay issue if

22  Rimini Street does not rely on the customer's assertions for the truth of the matter asserted.

23  ████████ ████████████████████████████████████████████████

24  ████ ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28

17

7127756

1   ██████████████████████████████████████████████ *Id.*; *see, e.g.*, *Atlantic-Pacific*

2   *Const. Co., Inc. v. NLRB*, 52 F.3d 260, 263 (9th Cir. 1995) (testimony of conversations with third

3   parties was "not hearsay" when it "was not offered for the truth" of those conversations, but instead

4   "to show the context within which the parties were acting, to permit the factfinder to learn the

5   circumstances surrounding the matter"); *Henein v. Saudi Arabian Parsons Limited*, 818 F.2d 1508,

6   1512 (9th Cir. 1987) ("The *reason* given by [a third party] … may be inadmissible hearsay if offered

7   to prove [the truth of the reason], but the fact that [the communication occurred] is certainly not

8   hearsay—it is direct testimony") (emphasis in original); *Metro-Goldwyn-Mayer Studios, Inc. v.*

9   *Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (customer emails not hearsay when not

10   offered for the truth of the matter asserted, but instead to establish the company's "knowledge and

11   state of mind as to the activities of" its customers).

12       Nor are statements hearsay when offered for the fact that such communications existed—for

13   example, that Oracle was tracking the rapid loss of dissatisfied customers. *See Henein*, 818 F.2d at

14   1512 ("The hearsay rule does not operate to render inadmissible every statement repeated by a

15   witness as made to another person.  It does not exclude evidence offered to prove the fact that a

16   statement was made, rather than the truth of the statement.") (quotation and alteration omitted);

17   *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1456 (9th Cir. 1983) (testimony by "management

18   regarding third parties' complaints … was not hearsay" when "not offered to prove the truth of the

19   complaints" but instead "to show that [the party's] management had received complaints").

20       ***Exceptions to Hearsay***.  Even if the Court determines that certain comments within the at

21   risk reports are direct quoted customer statements being offered for the truth of the matter asserted,

22   there are multiple exceptions that make the statements admissible.

23       *State of Mind*:  Under Federal Rule of Evidence 803(3), "[a]n out of court statement may be

24   admitted as circumstantial evidence of the [party's] state of mind." *Atlantic-Pacific Const. Co.*, 52

25   F.3d at 263. ████████████████████████████████████████████

26   ██████████████████████████████████████████████████████████

27   ███████████████████████████████████████ *See Oracle U.S.A.*,

28

2012 U.S. Dist. LEXIS 107147, at *22-23 ("The Oracle statements are not hearsay, and reflect that Oracle was aware that [the customer] was considering leaving Oracle, and that Oracle was evaluating various solutions for this problem.  So long as the [customer] email is not being admitted to show that [the customer] in fact cancelled its contract with Oracle for a particular reason, it is admissible under the state-of-mind exception."); *see also Grokster*, 454 F. Supp. 2d at 974.

*Present Sense Impression*:  Hearsay is admissible if the statement "describ[es] or explain[s] an event or condition … while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████, are present sense impressions from the sales representatives as they contemporaneously reported on customer renewal negotiations.  *See Oracle U.S.A.*, 2012 U.S. Dist. LEXIS 107147, at *4-5 ("statements by Oracle employees that constitute analysis of a particular Oracle-Customer … are not inadmissible hearsay, because they constitute employee party admissions or present-sense impressions").

*Business Records*:  "Rule 803(6) allows the admission of business records when two foundational facts are proved:  (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity."  *Sea-Land Serv., Inc. v. Lozen Intern., LLC*, 285 F.3d 808, 819 (9th Cir. 2002).  Oracle recognizes that the at risk reports are themselves business records, but contends that the customers' comments embedded within the reports do not fall under the business record exception.  Dkt. 647 at 14.  Oracle is wrong.

First, Oracle's position does not extend to Oracle's own employees' statements describing their observations about customers, which are still admissible under the business records exception.  *See United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) (applying the business records exception to admit evidence of a police officer's observations about third parties, noting "[i]t is well established that entries in a police report which result from the officer's own observations and

7127756

knowledge may be admitted"). ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████   In other words,

Oracle had every reason to ensure the accuracy of the information in the at risk reports.

*Residual Hearsay Exception*:  Because Oracle ensured the accuracy of the contents of the at risk reports, that information is separately admissible under Rule 803(24).  It is relevant, probative evidence with sufficient indicia of trustworthiness.  *See FTC v. Figgie Intern., Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) (admitting complaint letters written by consumers under Rule 803(24)).

***Overbroad and Premature*.**  At minimum, even if the Court were to agree that the at risk reports contain customer hearsay for which no exception applies, it should nonetheless deny Oracle's motion *in limine* and handle this issue on a case-by-case basis at trial.  Oracle currently seeks overbroad relief by requesting this Court "to exclude customer statements *referred to* in its at risk reports."  Dkt. 647 at 12 (emphasis added).  But, as set forth above, under many circumstances, such statements are not actually hearsay.  Fed. R. Evid. 801(d).  And in nearly all or all other circumstances, a hearsay exception applies.  The applicability of the hearsay rule depends on the intended use of each comment and should not be determined in a vacuum.  *See Oracle U.S.A.*, 2012 U.S. Dist. LEXIS 107147, at *4-5 (the "statements that fall into the gray area … will have to be decided on a statement-by-statement basis").

7. **Opposition To MIL No. 7:  Antitrust And Competition Rhetoric And Evidence, Or Unrelated Evidence Concerning Oracle**

Oracle asks the Court to "exclude any evidence or argument referring to Oracle as a 'monopolist,' its practices as 'anticompetitive,' or any claim that any Oracle practice is unlawful, including previously dismissed counterclaims."  Dkt. 648 at 16.  While Rimini Street has no desire to engage in name-calling (and seeks to preclude Oracle from referring to Rimini Street using derogatory terms like "thieves" (*see* Dkt. 652 at 3-4)), Oracle's anti-competitive conduct and attempt

20

1  to prevent Rimini Street from competing in the software support services market is relevant to

2  Oracle's state-law claims of inducing breach of contract, interference with prospective economic

3  advantage, and unfair competition.  Moreover, evidence of Oracle's plainly anti-competitive conduct

4  bears directly on Oracle's misuse of its copyrights.

5      ***Relevant To State Law Claims.***  To prove a claim for inducing breach of contract, Oracle

6  must prove, among other elements, that Rimini Street's conduct was a substantial factor in causing

7  Oracle's harm.  *See* CACI 2200; *JJ Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

8  Evidence that Oracle was harmed by its own arrogance, anti-competitive practices of restricting

9  customers' access to other vendors, or by providing sub-par service at an exorbitant cost therefore

10  would be entirely relevant to establishing a defense to liability.  That same evidence would also be

11  relevant to defending against Oracle's interference with prospective economic advantage claim,

12  which requires, among other elements, a showing that Rimini Street "prevent[ed] [a] relationship"

13  between a prospective customer and Oracle, and that harm resulted to Oracle "as a result of [Rimini

14  Street's] conduct."  *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011).  It would also

15  bear on Oracle's claim of unfair competition, which requires Oracle to show that it was injured by

16  Rimini Street's conduct and "lost money" as a result.  *Cel-Tech Communications, Inc. v. Los*

17  *Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187 (1999).  Accordingly, this evidence should not

18  be categorically excluded as Oracle requests.

19      ***Copyright Misuse.***  Oracle is seeking through aggressive and unsupported interpretation of

20  its licenses to use its copyright on its software to obtain a patent-like monopoly in the support

21  services market.  That is a misuse of Oracle copyright and a complete defense to liability.  *See, e.g.*,

22  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) (describing copyright misuse

23  as a "defense to copyright infringement" that forbids "enforcement of the copyright during the

24  period of misuse"); *Chamberlain Group v. Skylink Tech., Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004)

25  (copyright misuse to "leverage … sales into after-market monopolies" or to "gain the right to restrict

26  [a] consumer's rights to use [a plaintiff's] products in conjunction with competing products");

27  *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520-521 (9th Cir. 1997), *amended by*

28

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

1   133 F.3d 1140 (9th Cir. 1998) (finding copyright misuse where licensing agreement limited

2   customer's rights to decide whether to use other forms of coding systems in addition to the copyright

3   holder's); *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F. 3d 772, 793 (5th Cir. 1999) (copyright

4   misuse applies to a plaintiff's "us[e of] its copyrights to indirectly gain commercial control over

5   products [it] does not have copyrighted"); *see also Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d

6   700, 704 (Fed. Cir. 1992) (under patent misuse doctrine, while the practices at issue might "not in

7   themselves violate any law," if they draw "anticompetitive strength from the [protected] right," they

8   are "deemed to be contrary to public policy").   Evidence regarding Oracle's anti-competitive

9   behavior is directly relevant to this defense.

10          Rimini Street acknowledges that the Court granted Oracle's motion to strike Rimini Street's

11   copyright misuse defense (Dkt. 111), but Rimini Street anticipates that the evidence at trial will

12   show that copyright misuse is a viable defense to Oracle's claims based on evidence developed and

13   positions Oracle has taken after that ruling.   *See Galindo v. Stoody Co*., 793 F.2d 1502, 1512 (9th

14   Cir. 1986) (Rule 15(b) states that a court shall "freely permit an amendment," and "reflects the

15   liberal policy favoring amendments of the pleadings at any time"); *id.* at 1513 (amendment is

16   "proper" if record "indicate[s] that the parties understood that the evidence was aimed at the

17   unpleaded issue"); *see also Campbell v. Bd. of Trustees of Leland Stanford Jr. Univ*., 817 F.2d 499,

18   506 (9th Cir. 1987).   Since the Court's order striking the defense on the pleadings, Rimini Street has

19   adduced expert evidence creating a triable issue of fact as to whether Oracle is seeking to obtain

20   patent-like market exclusivity over the entire market for support services based solely on its

21   copyrights in its software.   Put differently, while Oracle's licenses ostensibly allow customers to use

22   third-party consultants to provide software support (*see*, *e.g.*, Dkt. 474 at 10), Oracle's interpretation

23   of its licenses, if accepted by the Court, would effectively preclude customers from using any

24   business other than Oracle to provide support.   This and several other types of evidence Rimini

25   Street may introduce at trial will be sufficient to satisfy Rimini Street's burden of establishing

26   copyright misuse as an affirmative defense.

27   8.      **Opposition To MIL No. 8:  Settlement Discussions**

28
7127756

The documents that Oracle seeks to exclude as "settlement discussions" (Dkt. 648 at 17) are not remotely aimed at "settlement"; rather, they include letters sent by Oracle threatening Rimini Street as an upstart competitor.  Oracle's attempt to exclude this highly relevant and probative evidence from the trial is simply an attempt to hide the truth.  These letters are not settlement discussions under Rule 408, and even if they were, exclusion would be premature because such evidence may be admitted for various purposes.  Fed. R. Evid. 408.

***Not Compromise Offers or Negotiations*.**  None of the nine pre-suit letters Oracle seeks to exclude (Dkt. 647-13, -18-22, -24-26) contain a whiff of a settlement discussion.  They are pre-suit letters in which the parties variously accuse each other of violating each other's legal rights and request the other side to desist from the offending conduct.  The letters are nothing more than one-sided demands that arose before the lawsuit or any attempt to settle a concrete dispute; thus, they are not protected under Rule 408.  *See Rhoades v. Avon Prods.*, 504 F.3d 1151, 1161 (9th Cir. 2007) (Rule 408, "by its own terms, is [a rule] of limited applicability"); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1064 (9th Cir. 2006) ("Because the purpose of Rule 408 is to encourage the compromise and settlement of *existing disputes*, and the grievance proceeding did not concern Josephs' *not-yet-filed* discrimination claim, the district court did not abuse its discretion when it admitted the statements made by PacBell employees") (emphases added); *Kesey, LLC v. Francis*, 2009 U.S. Dist. LEXIS 28078, at *33 (D. Or. Apr. 3, 2009) ("The Ninth Circuit follows those courts that draw a clear distinction between communications in furtherance of business interests and settlement negotiations arising from actual disputes, and it imposes the requirement that settlement discussions must have first 'crystallized' before Rule 408's bar will apply") (citing cases); *see also Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995) ("The letter was dated approximately eight months before Raybestos filed suit against Younger and TransGo.  Therefore, even assuming Younger intended that the letter would avoid potential litigation, the timing as well as the contents of the letter strongly suggest that settlement 'discussions,' in any reasonable sense of the word, had not begun.").  Notably, although drafted by lawyers, not one letter is labeled as a Rule 408 settlement communication, contains any kind of confidentiality designation, or offers any kind of settlement.

RIMINI STREET'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10

7127756

1   Indeed, the last thing Oracle wants to do is settle with Rimini Street.

2           Oracle makes the implausible claim that these letters could constitute settlement

3   communications because they "propose[] valuable consideration."  Dkt. 648 at 17.  It cites as

4   examples of consideration offers "to forge a strong, mutually-respectful, working relationship," to

5   "work together," and to "mitigate [Oracle's] existing liability and avoid future liability."  *Id.* at 18-

6   19.  These perfunctory phrases drawn from the end of the letters do not come close to constituting

7   "valuable consideration" under Rule 408.  *See*, *e.g.*, *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447

8   F.3d 769, 784 (9th Cir. 2006) (document properly admitted over Rule 408 objection when it "was

9   written before settlement discussions began" and "did not contain evidence 'furnishing or offering or

10  promising to furnish … valuable consideration in compromising or attempting to compromise a

11  claim'") (quoting Fed. R. Evid. 408); *Kesey, LLC*, 2009 U.S. Dist. LEXIS 28078, at *42 (letter not

12  protected under Rule 408 when "it lack[ed] any language that reasonably can be interpreted as

13  furnishing, offering to furnish, or promising to accept consideration or any other thing of value to

14  settle or compromise the parties' dispute" and "[i]n fact, … convey[ed] the opposite message: that

15  Plaintiff will initiate legal action against Defendants if Defendants do not 'cease and desist'").

16          ***Admissible for Other Purposes***.  Additionally, "[t]he text of the rule is clear," *Rhoades*, 504

17  F.3d at 1161, that Rule 408 does not bar evidence of compromise offers for purposes other than "to

18  prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent

19  statement or a contradiction."  Fed. R. Evid. 408(a); *see Dannenbring v. Wynn Las Vegas, LLC*, 907

20  F. Supp. 2d 1214, 1219 (D. Nev. 2013) ("evidence of compromise is admissible if offered for

21  purposes not prohibited by subdivision (a)").  Any wholesale exclusion of these letters would be

22  improper given that Rule 408 expressly provides "[t]he court may admit this evidence for another

23  purpose."  Fed. R. Evid. 408(b).

24  9.      **Qualified Non-Opposition To MIL No. 9:  Rimini Live Witnesses Who Are Not Made**
        **Available For Oracle's Case-In-Chief**

25          Rimini Street is willing to make its witnesses available live in Oracle's case-in-chief if the

26  witness is otherwise available and not outside the Court's subpoena power (*see* Fed. R. Civ. P.

27  45(c)(1)) so long as (1) Rimini Street is allowed to conduct a full examination of the witnesses at

28                                                      24

that time, and (2) the video deposition testimony of those live witnesses is used only for impeachment.

The parties agree on the first condition.  Oracle states that "[o]nce the witness is called by Oracle for an adverse direct, Oracle will not object that Rimini Street's cross examination of the witness (i.e., Rimini's direct of its witness) exceeds the scope of the questions Oracle asked."  Dkt. 648 at 20-21.  Rimini Street agrees with that proposal, which will streamline trial, be more convenient for witnesses, and avoid juror confusion.

The second condition is the subject of Rimini Street's Motion *in Limine* No. 4 to Limit the Use of Videotaped Deposition Testimony, in which Rimini Street seeks a ruling precluding Oracle from using videotaped deposition testimony unless the witness is unavailable or otherwise outside the Court's subpoena power, or to impeach the witness while the witness is on the stand testifying. Dkt. 652 at 8.  If Rimini Street makes witnesses available, Oracle should not be allowed also to play videotaped deposition testimony of those witnesses except for impeachment purposes.  In essence, Oracle proposes to call the witness twice—once live and once by video.  The proposed condition furthers the "longstanding" and "bedrock" preference for live testimony, consistent with the Federal Rules of Evidence and Civil Procedure, as well as the Fifth and Sixth Amendments.  *E.g.*, *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012) ("The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes.  Rather, live testimony is the bedrock of the search for truth in our judicial system.").  There is no prejudice to Oracle because any topics covered at the deposition could be covered during the live testimony.  And playing video deposition testimony in addition to having the witness testify live would be unduly cumulative.[1]

Rimini Street expressly reserves the right to call for its own case witnesses made available

---

[1] Rule 32(a)(3) does not abrogate the Court's authority to regulate the mode and order of interrogating witnesses under Rule 611(a) of the Federal Rules of Evidence.  Pursuant to Rule 611(a), courts have wide discretion over the mode and order of presenting evidence, including the presentation of videotaped deposition testimony.  Rule 32(a)(3) also does not abrogate the Court's authority to exclude evidence where its probative value is outweighed by, among other things, its needlessly cumulative nature.  *See* Fed. R. Evid. 403.

7127756

for Oracle's case-in-chief to the extent Rimini Street seeks to use those witnesses for rebuttal.  For example, if Oracle calls Defendant Seth Ravin as one of its first witnesses and then Rimini Street has an opportunity to conduct its direct examination of Mr. Ravin immediately thereafter, Oracle may subsequently introduce evidence in its case for which Rimini Street will need to re-call Mr. Ravin. Rimini Street would be severely prejudiced if it were precluded from calling Mr. Ravin to address subsequent evidence simply because it had the opportunity to conduct its direct examination early in Oracle's case-in-chief.  Rimini Street therefore requests that to the extent the Court grants Oracle's Motion *in Limine* No. 9, the Court preserve Rimini Street's ability to re-call witnesses in this rebuttal posture who testified during Oracle's case-in-chief.

10.    **Opposition To MIL No. 10:  Avoided Labor Cost Evidence**

In its final motion *in limine*, Oracle asks this Court to preclude Rimini Street from "admitting any evidence or argument about the labor costs Rimini saved from infringing Oracle's software" on the grounds that it is irrelevant to damages and will cause confusion and prejudice.  Dkt. 648 at 27. For reasons described more fully in Rimini Street's concurrently filed opposition to Oracle's *Daubert* Motion, this evidence is plainly relevant to Rimini Street's non-infringing alternatives defense and should not be excluded on that basis.

### III.    CONCLUSION

For the reasons set forth above, Rimini Street respectfully requests that the Court deny Oracle's motions *in limine*.

DATED:        August 14, 2015                    SHOOK, HARDY & BACON


By:    /s/ *Robert H. Reckers*
Robert H. Reckers

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

7127756

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN'S OPPOSITIONS TO ORACLE'S MOTIONS *IN LIMINE* NOS. 1-10 was filed, on August 14, 2015, with the Court's CM/ECF system which will send notice, via email, to all attorneys registered with the CM/ECF system.

By:   __/s/ *Robert H. Reckers*_____
Robert H. Reckers

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

27

7127756