SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand Esq. (*pro hac vice*)
Ryan D. Dykal Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: (816) 474-6550
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, Texas   77002
Telephone: (713) 227-8008
rreckers@shb.com

GREENBERG TRAURIG
Mark G. Tratos, Esq. (Nevada Bar No. 1086)
Brandon Roos, Esq. (Nevada Bar No. 7888)
Leslie Godfrey, Esq. (Nevada Bar No. 10229)
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, NV 89169
Telephone:  (702) 792-3773
tratosm@gtlaw.com
roosb@gtlaw.com
godfreyl@gtlaw.com

LEWIS AND ROCA LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
WAllen@LRRLaw.com

GIBSON DUNN & CRUTCHER LLP
Lauren Blas
Blaine H. Evanson
333 S. Grand Ave., 47th Floor
Los Angeles, California 90071
Telephone: 213-229-7000
bevanson@gibsondunn.com

GIBSON DUNN & CRUTCHER LLP
Joseph A. Gorman
555 Mission Street
San Francisco, California  94105
Telephone: 415-393-8296
jgorman@gibsondunn.com

GIBSON DUNN & CRUCTHER LLP
Mark A. Perry
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5306

RIMINI STREET, INC.
Daniel B. Winslow
6601 Koll Center Parkway, Suite 300
Pleasanton, California  94566
Telephone: 925-264-7736
DWinslow@riministreet.com

*Attorneys for Defendants*
*Rimini Street, Inc., and Seth Ravin*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-0106-LRH-PAL

**DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN'S OPPOSITION TO ORACLE'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS**

Trial Date:  September 14, 2015

[REDACTED]

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A.    Scott Hampton's Opinions Are Reliable and Admissible ...................................... 3

        1.    Hampton's Calculation of the Fair Market Value of Use Is Admissible .... 4

        2.    Hampton's Lost Profits Opinion Is Legally Proper and Adequately Supported ........................................................................................... 11

        3.    Hampton Is Not Being Offered to Testify on Legal Conclusions............. 14

    B.    James Benge's Opinions Are Reliable and Admissible ........................................ 16

    C.    Brooks Hilliard's Opinions Are Reliable and Admissible ................................... 18

        1.    Mr. Hilliard's Opinions on "Custom and Practice" in the Industry Are Reliable and Admissible .......................................................................... 19

        2.    Hilliard's Independent Assessments Regarding the Viability Opinions on "Post-Lawsuit Assessments" Are Relevant ....................................... 23

    D.    David Klausner's Opinions Are Reliable and Admissible.................................... 24

        1.    Oracle's Criticisms of Mr. Klausner's Report Mischaracterize His Analysis and Go to Weight, Not Admissibility ....................................... 25

        2.    Oracle's Hearsay Objection Is a Red Herring............................................. 27

III. CONCLUSION ............................................................................................................ 28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### Cases

4

*Actuate Corp. v. Aon Corp.*,
2012 U.S. Dist. LEXIS 87185 (N.D. Cal. June 18, 2012) .................................. 17, 20, 21

5

*Ahlberg v. Chrysler Corp.*,
481 F.3d 630 (8th Cir. 2007)........................................................................................... 13

6

*Apple, Inc. v. Samsung Elecs. Co.*,
2013 WL 6001902 (N.D. Cal. Nov. 12, 2013)................................................................. 11

7

8

*Blue Nile, Inc. v. Ice.com, Inc.*,
478 F. Supp. 2d 1240 (W.D. Wash. 2007)...................................................................... 11

9

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........................................................................................................ 21

10

*Brincko v. Rio Props.*,
2013 U.S. Dist. LEXIS 5986 (D. Nev. Jan. 14, 2013) .................................................... 22

11

12

*Champagne Metals v. Ken-Mac Metals, Inc.*,
2008 WL 5205204 (W.D. Okla. Dec. 11, 2008) ............................................................. 13

13

*Crowley v. Chait*,
322 F. Supp. 2d 530 (D.N.J. 2004) ................................................................................. 20

14

*Crunchyroll, Inc. v. Pledge*,
2014 WL 1347492 (N.D. Cal. Mar. 31, 2014)................................................................. 13

15

*Dataquill Ltd. v. High Tech Computer Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. 2011) ............................................................................... 9

16

17

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).................................................................................................... 2, 18

18

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995)............................................................................................. 2

19

*Deltak, Inc. v. Advanced Sys., Inc.*,
767 F.2d 357 (7th Cir. 1985)............................................................................................. 7

20

*Donell v. Fid. Nat'l Title Agency of Nevada*,
2012 U.S. Dist. LEXIS 6590 (D. Nev. Jan. 20, 2012) .................................................... 20

21

22

*Evenflow Plumbing Co. v. Pac. Bell Directory*,
2005 WL 1353822 (N.D. Cal. June 7, 2005) .................................................................. 15

23

*FCC v. Fox Television Stations, Inc.*,
132 S. Ct. 2307 (2012) .................................................................................................... 21

24

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010)................................................................................... 18, 22

25

*Goldman v. Healthcare Management Systems*,
559 F. Supp. 2d 853 (W.D. Mich. 2008) .......................................................................... 6

26

*Grain Processing Corp. v. Am. Maize-Products Co.*,
185 F.3d 1341 (Fed. Cir. 1999).......................................................................................... 6

27

*Hamil Am., Inc. v. GFI*,
193 F.3d 92 (2d Cir. 1999)............................................................................................... 12

28

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004)............................................................................ 3, 22

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) .......................................................................................... 15

*Interwoven, Inc. v. Vertical Computer Sys.*,
2013 WL 3786633 (N.D. Cal. July 18, 2013)................................................... 9

*Kan. City Fire & Marine Ins. Co. v. Long Island Power Auth.*,
2007 WL 7034284 (E.D.N.Y. Nov. 23, 2007).................................................. 18

*KDME, Inc. v. Bucci*,
2007 U.S. Dist. LEXIS 102146 (S.D. Cal. July 11, 2007)............................... 23

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ................................................................................ 2, 17, 26

*Leegin Creative Leather Prods., Inc. v. Belts by Nadim, Inc.*,
316 F. App'x 573 (9th Cir. 2009) ..................................................................... 16

*McDevitt v. Guenther*,
522 F. Supp. 2d 1272 (D. Haw. 2004) .............................................................. 28

*MediaTek inc. v. Freescale Semiconductor, Inc.*,
2014 WL 971765 (N.D. Cal. Mar. 5, 2014)................................................... 9, 10

*Munchkin, Inc. v. Playtex Prods., LLC*,
2015 U.S. App. LEXIS 13424 (9th Cir. July 31, 2015)................................... 11

*Oracle America, Inc. v. Google Inc.*,
2011 WL 5914033 (N.D. Cal. Nov. 28, 2011)................... 2, 5, 7, 16, 17, 27, 28

*Oracle Corp. v. SAP AG*,
765 F.3d 1081 (9th Cir. 2014).................................................... 2, 5, 6, 10, 16, 23

*Pakootas v. Teck Cominco Metals, Ltd.*,
2012 U.S. Dist. LEXIS 72137 (E.D. Wash. Apr. 4, 2012) .............................. 20

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004)............................................................. 3, 5, 8, 9, 12

*Polaroid Corp. v. Eastman Kodak Co.*,
1990 WL 324105 (D. Mass. Oct. 12, 1990)................................................... 7, 14

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010)......................................................................... 2, 26

*Ramirez v. Plough*,
6 Cal. 4th 539 (1993) ........................................................................................ 21

*Renfrew v. Hartford Accident & Indem. Co.*,
2009 U.S. Dist. LEXIS 89267 (N.D. Cal. Sept. 10, 2009) ......................... 20, 21

*Roby v. McKesson Corp.*,
47 Cal. 4th 686 (2010) ...................................................................................... 21

*Safeco Ins. Co. of Am. v. Burr*,
127 S. Ct. 2201 (2007)....................................................................................... 21

*Semerdjian v. McDougal Littell*,
641 F. Supp. 2d 233 (S.D.N.Y. 2009) ................................................................ 9

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977) ................................................................. 6

*Silvers v. Sony Pictures Ent'mt, Inc.*,
   402 F.3d 881 (9th Cir. 2005) ................................................................... 6

*Siring v. Or. State Bd. of Higher Educ.*,
   927 F. Supp. 2d 1069 (D. Or. 2013) ...................................................... 22

*Sphere Drake Ins., PLC v. Trisko*,
   226 F.3d 951 (8th Cir. 2000) ................................................................. 24

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   2008 WL 2323856 (N.D. Cal. May 22, 2008) .......................................... 7

*Two Moms and a Toy, LLC v. Int'l Playthings, LLC*,
   2012 U.S. Dist. LEXIS 152835 (D. Colo. Oct. 24, 2012) ...................... 17

*United States v. 1,014.16 Acres of Land, More or Less, Situate in Vernon Cnty.,
   State of Mo.*,
   558 F. Supp. 1238 (W.D. Mo. 1983) ........................................................ 9

*United States v. Figueroa-Lopez*,
   125 F.3d 1241 (9th Cir. 1997) ............................................................... 18

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) .................................................... 17, 22, 24

*United States v. Plunk*,
   153 F.3d 1011 (9th Cir. 1998) .................................................... 17, 22, 26

**Statutes**

17 U.S.C. § 301(a) ..................................................................................... 11

17 U.S.C. § 504(b) .............................................................................. 5, 7, 15

Cal. Civ. Code § 1645 ............................................................................... 20

Cal. Civ. Code § 3294 ............................................................................... 21

**Other Authorities**

Nimmer on Copyright § 14.02[A] (1996) ................................................. 12

*Oracle Corp. v. SAP AG*,
   2012 WL 6590253 (Oracle Ninth Cir. Br., Dec. 10, 2012) ...................... 1

**Rules**

Fed. R. Civ. P. 26(a)(2)(D)(ii) .................................................................. 20

Fed. R. Civ. P. 37(c)(1) ............................................................................ 11

Fed. R. Evid. 403 ...................................................................................... 11

Fed. R. Evid. 701 ...................................................................................... 18

Fed. R. Evid. 702 ................................................................................... 2, 22

Fed. R. Evid. 702(a) ................................................................................. 17

Fed. R. Evid. 703 ...................................................................................... 28

iv

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Fed. R. Evid. 704(a) ............................................................................................................. 14

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

# I. INTRODUCTION

Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp. (collectively, "Oracle") moved to exclude four witnesses from testifying in support of Rimini Street, Inc. and Seth Ravin (collectively, "Rimini Street"). Oracle's motion should be denied because each of the four witnesses offers reliable opinions supported by the facts, consistent with the law, and on which each is qualified to testify:

- ***Scott Hampton*** calculates Oracle's actual copyright damages in rebuttal to Oracle's damages expert Elizabeth Dean based on recognized damages theories and based on his expertise.

- ***James Benge*** is a Rimini Street *employee*, who has not offered an expert report, whom Oracle describes as "experienced in PeopleSoft development and knowledgeable," and whose opinions—based on years of experience and first-hand knowledge—Rimini Street's experts consider in reaching their expert opinions.

- ***Brooks Hilliard*** is an industry expert who rebuts various flawed assumptions made by Oracle's experts Randall Davis, Edward Yourdon, and Elizabeth Dean, and provides, among other things, industry background valuable to understanding Rimini Street's business and Oracle's accusations.

- ***David Klausner*** is a technical expert who responds to Oracle's expert Christian Hicks and describes the functionality and impact of Rimini Street's tools and download utilities.

Oracle's attacks on these witnesses rest on misstatements of law and snippets of testimony taken out of context, from which it requests this Court to order the widespread exclusion of relevant, admissible testimony. But Oracle's quibbles, at most, go to the weight of the evidence, not its admissibility. The Court should therefore deny the relief Oracle requests.

Indeed, Oracle's motion is full of the same arguments it has churned out in various copyright infringement lawsuits against its competitors, which courts in this circuit have consistently rejected. For example, citing the same inapposite cases it relies on here, in *Oracle Corp. v. SAP AG*, Oracle sought to exclude the testimony of SAP's expert Stephen Clarke on customer behavior, non-infringing alternatives, lost profits, and infringer's profits on the grounds that he was "unqualified" and did not apply a "discernible, testable methodology." *See Oracle Corp. v. SAP AG*, 2012 WL

1

7127808

6590253, at *55–59 (Oracle Ninth Cir. Br., Dec. 10, 2012).   The district court denied Oracle's motion, and the Ninth Circuit affirmed, concluding that Oracle "misstate[d] Clarke's qualifications," that Oracle "fail[ed] to explain why" Clarke's methodology was flawed, and "Oracle had ample opportunity to cross-examine Clarke" at trial.   *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1095 (9th Cir. 2014).   Similarly, in *Oracle America, Inc. v. Google Inc.*, 2011 WL 5914033 (N.D. Cal. Nov. 28, 2011), Oracle sought to exclude Google's experts' opinions on damages and non-infringing alternatives on the grounds that the experts were unqualified, were improperly "spoon-fed" testimony by Google employees, and that their opinions were "at odds with documents produced in discovery." *Id.* at *2.   The court rejected these arguments as well, holding that "if Oracle is worried about" the evidence on which the experts relied, "then it should make its arguments on cross-examination." *Id.* at *2, 4.

This Court should reject Oracle's attempt to keep relevant and important evidence from the jury and deny Oracle's motion.

## II. ARGUMENT

Rule 702 permits experts qualified by "knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.   The court serves as the "gatekeeper" in excluding expert testimony that fails to clear the threshold hurdles of relevance and reliability.   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).   The expert may base his testimony on "professional studies or personal experience" so long as he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The test under *Daubert* "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). And when an expert meets this threshold, he "may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the

1    burden of proof, not exclusion"); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d

2    998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the

3    testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the

4    opinion in cross-examination").

5    **A.      Scott Hampton's Opinions Are Reliable and Admissible**

6            Scott Hampton is a public accountant with nearly thirty years of experience.  Hampton Rpt.

7    ¶¶ 3, 5.  He is certified in California, Washington, and Utah, and is accredited by the American

8    Institute of Certified Public Accountants in business valuation and theory.  *Id.* ¶¶ 3–4.  He has

9    calculated damages in more than 45 copyright litigations.  *Id.* ¶ 4.  Here, Mr. Hampton's report rebuts

10   the assertions of Oracle's expert, Elizabeth Dean, regarding the appropriate measure of copyright

11   damages in this case.  Ms. Dean and Mr. Hampton agree that copyright damages are calculated by

12   either (i) fair market "value of the use of the copyrighted work to the infringer," or (ii) lost profits

13   (plus non-overlapping infringer's profits).  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708

14   (9th Cir. 2004).  Both experts offer competing calculations of each type of damages.

15           ***Value of Use.***  Central to Ms. Dean's calculation is her assumption that Rimini Street would

16   not have been able to operate or remain in business without infringing.  Dean Rpt. p. 35.  Ms. Dean

17   therefore calculated the fair market value of use at over $200 million based on her opinion that in a

18   hypothetical negotiation between Oracle and Rimini Street, Rimini Street would have no other option

19   but to pay this staggering price.  *Id.* p. 26.  In response, Mr. Hampton calculated the fair market value

20   of use at $7.6 million, which is the amount it would have cost Rimini Street to operate without

21   infringing Oracle's copyrights.  Hampton Rpt. p. 10.  Tellingly, Oracle has now abandoned Ms.

22   Dean's hypothetical license calculation in response to Rimini Street's motion in which it argued, *inter*

23   *alia*, that Ms. Dean failed to take into account the non-infringing alternative business models

24   available to Rimini Street.  Dkt. 636.

25           ***Lost Profits.***  Ms. Dean also calculated lost profits at approximately $200 million based on

26   ██████████████████████████████████████████████████████████

27   ████████████████████████       Dean Rpt. p. 26.  Unlike Ms. Dean, and consistent with binding

28   Ninth Circuit authority, Mr. Hampton considered evidence showing that Oracle's customers had

several options available to suit their software-servicing needs aside from Oracle and Rimini Street (i.e., non-infringing alternatives).  *E.g.*, Hampton Rpt. pp. 49, 62, 70, 80.  Because these customers could have (and in many cases, testified that they *would have*) left Oracle regardless of whether Rimini Street existed, Mr. Hampton's opinion is relevant to whether Oracle can establish causation in support of its lost profits theory.

Oracle argues Mr. Hampton's opinions on both types of damages are inadmissible, but, as set forth below, Oracle is wrong and its motion should be denied.

### 1.      Hampton's Calculation of the Fair Market Value of Use Is Admissible

Mr. Hampton calculates the fair market value of use at $7.6 million, which is the amount that it would have cost Rimini Street to operate without infringing Oracle's copyrights.  Hampton Rpt. p. 10.  This figure includes the cost of hiring additional engineers and renting office space.  *Id.* pp. 91–95.  These expenses would allow Rimini Street to operate without hosting accused computer environments on its own servers, by not using "crawlers" to download Oracle files, and by not sharing fixes, patches, and tax and regulatory updates among its clients.  *Id.* ¶ 44.  As described in his report, Mr. Hampton's opinions are based on his (i) examination of Rimini Street's financial records, (ii) discovery provided by both parties in this litigation, (iii) conversations with Rimini Street executives and employees, and (iv) conversations with Rimini Street's technical experts, which led him to make the ultimate conclusion that Rimini Street was financially capable of providing support services to its clients without infringing Oracle's copyrighted works.  *E.g.*, *id.* pp. 44, 120.  The activities that Oracle alleges are infringing allowed Rimini Street to avoid these costs.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████  Rimini Street is entitled to show that it could have done the same, and the extra costs of doing so are probative of the actual value of the infringement.  In fact, Rimini Street *has* modified its business practice, to use a remote-only model exclusively, following certain rulings

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY
7127808

1  by this Court (these modified practices are the subject of *Rimini Street, Inc. v. Oracle International*
2  *Corp.*, No. 2:14-cv-01699 ("*Rimini II*")).

3  Nevertheless, Oracle argues that Mr. Hampton's fair market value of use opinion is
4  inadmissible because (a) "avoided costs" is not a valid measure of calculating copyright damages,
5  and (b) Mr. Hampton is not qualified to testify on fair market value of use. Oracle is wrong on both
6  counts because (a) it is well established that the value of use to the infringer is a valid measure of
7  actual damages, and (b) Mr. Hampton is an experienced expert qualified to testify on copyright
8  damages. Oracle also contends that Mr. Hampton improperly presents a legal opinion, but that, too,
9  is false.

10  **a. Avoided Costs Is a Valid Measure of Copyright Damages.** The Copyright Act provides
11  that a "copyright owner is entitled to recover the *actual damages* suffered … as a result of the
12  infringement." 17 U.S.C. § 504(b) (emphasis added). And the Ninth Circuit has defined actual
13  damages as "the loss in the fair market value of the copyright, measured by the profits lost due to the
14  infringement *or by the value of the use of the copyrighted work to the infringer*." *Polar Bear*, 384
15  F.3d at 708 (emphasis added). The value of use to the infringer can, but need not, manifest in a
16  hypothetical negotiation between the copyright holder (Oracle) and the alleged infringer (Rimini
17  Street). *See Oracle Corp. v. SAP AG*, 765 F.3d at 1088 ("The touchstone for hypothetical license
18  damages is 'the range of [the license's] reasonable market value'").

19  Economic reality and common sense dictate that a prospective licensee like Rimini Street
20  would not pay Oracle a sum for a license that far exceeded the cost of accomplishing the same thing
21  without a license. *Id.* at 1089 ("the buyer will not ordinarily pay more for a license than its
22  anticipated benefit"). Thus, here, the value of the infringing use to Rimini Street is the amount that it
23  would have cost Rimini Street to implement a non-infringing alternative. Hampton Rpt. ¶¶ 164, 165,
24  179.

25  Oracle is free to challenge Mr. Hampton's conclusions at trial, for instance by arguing that it
26  would have cost Rimini Street more than $7.6 million to create a non-infringing alternative, or that
27  Rimini Street could not have created a non-infringing alternative at all. But there is no valid basis to
28  exclude Rimini Street from presenting this evidence to the jury. *See Oracle Am., Inc. v. Google, Inc.*,

2011 WL 5914033, at *4 (rejecting Oracle's motion to exclude expert report on "the existence of 'multiple acceptable and effective' non-infringing alternatives 'at little or no additional cost,'" which would have "greatly reduce[d] the lost license fees").

In its motion, Oracle mischaracterizes Mr. Hampton's report, claiming his "opinion considers only Rimini's side of the hypothetical negotiations." Mot. 6. To the contrary, Mr. Hampton's analysis assumes a favorable outcome for Oracle; under his analysis, Oracle would obtain the highest possible amount for the hypothetical license before it became economically irrational for Rimini Street to pay more because the license would exceed the cost of implementing the non-infringing alternative. Hampton Rpt. ¶¶ 216–217. In other words, the report assumes Rimini Street's bargaining power is limited to the price at which it could lawfully compete against Oracle without the licenses. That does not "ignor[e] Oracle's viewpoint entirely," as Oracle claims (Mot. 6); rather, it reflects economic reality. *See, e.g., Oracle Corp. v. SAP AG*, 765 F.3d at 1088 ("The question, therefore, is not what the owner would have charged, but rather what is the fair market value") (internal citations and quotations omitted).

These principles are well accepted in the related context of determining a royalty in patent cases. *See, e.g., Sid & Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 n.20 (9th Cir. 1977), *superseded in part on other grounds by* 17 U.S.C. § 504(b) ("An author might license the use of his copyright either for a lump sum based on the reasonable value of the work or for a royalty derived from the licensee's profits …. This same distinction is recognized in patent cases."). Courts have recognized that "[w]ithout the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999).

Oracle argues that patent law is irrelevant here (Mot. 5–6), but the Ninth Circuit has "long noted the *strong connection between copyright and patent law*." *Silvers v. Sony Pictures Ent'mt, Inc.*, 402 F.3d 881, 887 (9th Cir. 2005) (emphasis added). Indeed, "[w]here precedent in copyright cases is lacking, ***it is appropriate to look for guidance to patent law*** because of the historic kinship between patent law and copyright law." *Id.* (emphasis added). Oracle's reliance on *Goldman v.*

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1   *Healthcare Management Systems*, 559 F. Supp. 2d 853 (W.D. Mich. 2008) (cited Mot. 5-6) is

2   therefore misplaced.  Indeed, Oracle cites patent cases throughout its motion without acknowledging

3   the conflict in its positions.  *See*, *e.g.*, Mot. 9, 18 (citing *Therasense, Inc. v. Becton, Dickinson & Co.*,

4   2008 WL 2323856 (N.D. Cal. May 22, 2008)), 10 (citing *Polaroid Corp. v. Eastman Kodak Co.*,

5   1990 WL 324105 (D. Mass. Oct. 12, 1990)).

6        In any event, the cases Oracle cites—none of them binding—all relate to *infringer's profits*, a

7   distinct inquiry from actual damages.  Mot. 4–5; *see Oracle Am., Inc. v. Google Inc.*, 2011 WL

8   5914033, at *4 (holding that avoided costs *are* relevant to actual damages, but not infringer's profits).

9   Oracle's straw-man argument on pages 4 and 5 of its motion should therefore be rejected.  Oracle

10  does not identify any portion of Mr. Hampton's report that it seeks to exclude on this basis because

11  Rimini Street does not argue, and Mr. Hampton did not opine, that non-infringing alternatives are

12  relevant to the disgorgement of infringer's profits.  ████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████ 17 U.S.C. § 504(b).[1]

15        Oracle also takes completely out of context a snippet from Mr. Hampton's deposition where

16  he testified that the $7.6 million figure is not the number "a willing buyer and a willing seller would

17  have agreed on as a license fee in **the** hypothetical negotiation."  Reckers Decl., Ex. A, at 55:8–14

18  (Hampton Dep. Tr.) (emphasis added).  When read in context, Mr. Hampton is clearly referring to

19  "the hypothetical license negotiation [Ms. Dean] proposes" because her "hypothetical is extremely

20  unreasonable."  *Id.* at 54:12–55:7.  Indeed, as he explained in his report, because Oracle has *never*

21  licensed support materials to a competitor, "[t]he Oracle/Rimini Street [l]icense Ms. Dean

22  [c]alculates [i]s [n]ot [c]redible."  Hampton Rpt. ¶ 210.  In Mr. Hampton's hypothetical, by contrast,

23  "the availability of non-infringing alternatives open to Rimini Street's and Oracle's customers

24  negatively impacts Oracle's negotiating position in the hypothetical license negotiation" because

25  "Rimini Street's alternative business method was far less expensive than the least amount Ms. Dean

---

26  [1]   Some of the cases Oracle cites do not even stand for the proposition for which they are cited.  *See*
27        *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 363 n.4 (7th Cir. 1985) (holding it was
        irrelevant whether defendant could have *infringed* in other ways, and not addressing relevance of
28        non-infringing alternatives).

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1    suggests Oracle would have required for use of the copyrighted works." *Id.* ¶ 218.  Oracle also

2    ignores Mr. Hampton's simultaneous testimony that his calculation is "the value of the use of the

3    copyrighted works" (Reckers Decl., Ex. A, at 55:8–14 (Hampton Dep. Tr.)), which the Ninth Circuit

4    has specifically classified as an appropriate measure of actual copyright damages.  *See Polar Bear*,

5    384 F.3d at 708.

6         In short, the value of use to Rimini Street had a ceiling—the cost of a non-infringing

7    alternative.  Oracle is free to argue that this is the incorrect ceiling or that the ceiling does not in fact

8    exist, but it fails to provide any basis for excluding Mr. Hampton's opinions on this well-accepted

9    damages principle.

10        ***b. Mr. Hampton Is Qualified to Testify on Fair Market Value of Use.***  In a conclusory and

11   unsupported attack on Mr. Hampton's qualifications, Oracle argues that "Mr. Hampton's opinion is

12   … inadmissible because it is unrelated to his expertise."  Mot. 8–9.  The only apparent basis for this

13   attack is that in reaching his conclusions, Mr. Hampton considered conversations with Rimini Street's

14   industry expert (Mr. Brooks Hilliard), conversations with Rimini Street employees, conversations

15   with Oracle and Rimini Street customers, and research relating to salary and real estate information in

16   India.  *Id.*  Oracle's arguments conveniently ignore the fact that Oracle's *own* damages expert, Ms.

17   Dean, extensively relied on similar evidence throughout her report—evidence that Oracle relies upon

18   to defend the admissibility of its own expert's report.  *See*, *e.g.*, Dean Rpt. ¶ 46 ("I understand that

19   one of Oracle's technical experts, Professor Randall Davis, has concluded …"); Dkt. 600 (Oracle

20   Opp. to Rimini Street's Mot. to Exclude Expert Testimony of Elizabeth Dean) at 12 ("Dean similarly

21   relies on Oracle's technical and industry experts' analysis, plus Rimini documents and testimony").

22        Mr. Hampton is a copyright damages expert who has calculated damages in more than 45

23   copyright litigations.  *See* Hampton Rpt. ¶ 4.  His opinion that fair market value of use based on cost

24   savings is the best measure of Oracle's damages under the Copyright Act is based on his expertise as

25   a copyright damages expert.  And his opinion is corroborated by Oracle's own expert, █████████

26   ████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ It is also supported by deposition testimony from Rimini Street employees and experts.  *See*, *e.g.*, Reckers Decl., Ex. B, at 140:20–141:5 (Hilliard Dep. Tr.); Reckers Decl., Ex. C, at 12:11–13:15 (Williams Dep. Tr.).

Mr. Hampton, like every expert, is allowed to rely on background data gathered from others. *Polar Bear*, 384 F.3d at 709 ("Common sense dictates that an expert may confer with the copyright holder and that the background data may be factored into calculations of actual damages").  Indeed, it is "routine and proper for a damages expert in a technical … case to rely on a technical expert for background." *Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1026 (S.D. Cal. 2011); *MediaTek inc. v. Freescale Semiconductor, Inc.*, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) (experts "need not be experts in all fields" or "have personal knowledge of the factual background in the case"); *United States v. 1,014.16 Acres of Land, More or Less, Situate in Vernon Cnty., State of Mo.*, 558 F. Supp. 1238, 1242 (W.D. Mo. 1983) ("An expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion"); *Interwoven, Inc. v. Vertical Computer Sys.*, 2013 WL 3786633, at *7 (N.D. Cal. July 18, 2013) ("Experts are, however, permitted to rely on hearsay evidence in coming to their conclusions, so long as an expert in the field would reasonably rely on that information").

Here, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The dispute between the experts—whether Rimini Street would have needed two licenses for Oracle Database software (*id.* ¶ 229), or separate licenses for every client (Dean Rpt. p. 178)—is an issue for the jury to decide.

Likewise, courts hold that experts may rely upon vendor websites, along with other sources, to support their analysis. *See Semerdjian v. McDougal Littell*, 641 F. Supp. 2d 233, 243 (S.D.N.Y. 2009) ("Dr. Putnam indicates that he garnered the information that forms the basis for his analysis from various sources, including a review of textbook publisher Houghton-Mifflin Harcourt Publishing Company's licenses for copyrighted images in two other textbooks (also the subject of litigation), conversations with the Director of Rights and Permissions at textbook publisher Holt

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

McDougal, and visits to websites of distributors of copyrighted images. These bases for his opinion are sufficient under Federal Rule of Evidence 703."); *see* Reckers Decl., Ex. A, at 155:11–156:21 (Hampton Dep. Tr.) (testifying that the websites on which he relied have been used by experts "on a number of occasions over the last ten or 15 years"). Indeed, the Ninth Circuit rejected Oracle's recent attempt to exclude an expert report because it relied on "website articles." *Oracle Corp. v. SAP AG*, 765 F.3d at 1095 ("Oracle fails to explain why the Internet is an inappropriate resource for conducting market research").

At trial, Oracle will have the opportunity to cross-examine Mr. Hampton on the factual bases and assumptions for his opinion. It will also have the opportunity to cross-examine Rimini Street's other experts, including Mr. Hilliard. If the factual bases or assumptions for their opinions "are found to be inaccurate or ill-founded, then the jury may afford the opinion less weight, if any." *MediaTek*, 2014 WL 971765, at *2. But there is no valid basis to exclude the testimony altogether, as Oracle elsewhere recognizes. *See* Dkt. 600 (Oracle Opp. to Rimini Street's Mot. to Exclude Expert Testimony of Elizabeth Dean) at 12 ("Oracle will present substantial evidence at trial to support these bases of Dean's opinion").

> ***c. Oracle Failed to Offer Damages Theories on Its Remaining Claims.*** Oracle makes the specious argument that "[a]voided costs are also not a valid measure of damages for any of Oracle's non-copyright claims." Mot. 7–8. But in this section of its brief Oracle *does not even cite* any evidence, let alone a specific portion of Mr. Hampton's report, that it seeks to exclude. That alone is reason to reject Oracle's argument. *See*, *e.g.*, Dkt. 636 at 3 (noting that the Court is "loath[] to make such a broad and general exclusion of evidence when the evidence has not been presented in context").

The reality is that Oracle neglected to offer *any* damages theory for its non-copyright claims because this case is, and has always been, about copyright infringement. Indeed, the only time Oracle's damages expert even mentioned the non-copyright claims was to point out that they "economically overlap" with the copyright claim or otherwise to compare their relationship to the copyright claim. Dean Rpt. p. 26.

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1   And although Ms. Dean claims that the copyright and non-copyright claims are "not

2   coextensive" (*id.*), she does not provide any independent analysis of damages resulting from the non-

3   copyright claims. ███████████████████████████████████████████████

4   ███████████████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████

9   ██████████   Such duplication renders these state-law claims preempted by the Federal Copyright Act

10   (17 U.S.C. § 301(a); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1251 (W.D. Wash. 2007)

11   (claim for unjust enrichment "based on rights equivalent to those protected by copyright" was

12   preempted as the claims "underlying nature … is part and parcel of a copyright claim")), and Oracle's

13   failure to disclose a damages theory for the non-copyright claims precludes Oracle from seeking

14   damages based on those claims at trial.  *See, e.g.*, *Munchkin, Inc. v. Playtex Prods., LLC*, 2015 U.S.

15   App. LEXIS 13424, at *3 (9th Cir. July 31, 2015) (affirming exclusion of previously undisclosed

16   damages theories, observing that "[s]upplementation under the Rules means correcting inaccuracies,

17   or filling interstices.  Munchkin's extensive new damages evidence and theories were not a mere

18   supplementation within the meaning of the Rules") (quotations and citations omitted); *Apple, Inc. v.

19   Samsung Elecs. Co.*, 2013 WL 6001902, at *2 (N.D. Cal. Nov. 12, 2013) ("To admit a brand new

20   damages theory on the literal eve of trial would be grossly prejudicial to Samsung, which has never

21   had the opportunity to take discovery on or prepare to rebut any lost profits theory other than the one

22   presented in Davis's Report. …  Apple's failure to timely disclose its new damages theory is reason

23   enough to exclude this theory now."); Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1).

24   **2.   Hampton's Lost Profits Opinion Is Legally Proper and Adequately Supported**

25   In addition to its flawed attack on Mr. Hampton's value of use analysis, Oracle tacks on a

26   conclusory one-page critique of Mr. Hampton's lost profits opinion.  But Oracle's argument

27   misconstrues Mr. Hampton's testimony, misstates Oracle's burden, and relies on inapposite cases.  It

28   should be rejected.

1
2
3
4
5
6
7
8
9
10
11

12   Mr. Hampton's report, in contrast, takes into account the various non-infringing alternatives

13 available to these customers—*ignored* by Ms. Dean—which Oracle admits "can break the chain of

14 causation."  Mot. 10.  For example, Mr. Hampton explained that customers could have engaged in

15 self-support or hired independent consultants without running afoul of Oracle's licensing agreement

16 and terms of use.  *E.g.*, Hampton Rpt. p. 63.  Oracle does not challenge these conclusions, which it

17 has admitted are possible.  *Id.* ¶ 180 n.371 (quoting Oracle's Response to Interrogatories).

18   Oracle's assertion that Mr. Hampton reviewed only "selected evidence to support his

19 conclusion" (Mot. 9) is both irrelevant and false.  It is *Oracle's* burden—not Rimini Street's—to

20 demonstrate that Oracle would have earned the allegedly lost profits but for the infringing activity.

21 *Polar Bear*, 384 F.3d at 710; *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999) ("'[I]n the

22 absence of convincing evidence as to the volume of sales that plaintiff would have obtained but for

23 the infringement, the measure of lost profits may be rejected as too speculative'") (quoting Nimmer

24 on Copyright § 14.02[A], at 14–11 (1996)).  Indeed, when a plaintiff cannot show that the loss of (or

25 failure to gain) a particular customer is attributable to infringement, it "cannot recover damages

26 related to [that customer]."  *Polar Bear*, 384 F.3d at 708.  The fact that Oracle ignored these non-

27 infringing alternatives is something for the jury to consider in determining whether Oracle has met its

28 burden of demonstrating a "causal link between the infringement" and "lost profits."  *Id.*; *see also*

12

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

1    *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *3 (N.D. Cal. Mar. 31, 2014) ("It is entirely

2    speculative" to assume that customers of infringer "would [have] automatically" become customers

3    of copyright holder absent infringement given customer preferences unrelated to infringement).[2]

4    Here, the only evidence Oracle identifies that Mr. Hampton purportedly did not consider is

5    "whether certain third party support providers could even absorb a large number of Rimini's

6    customers" or "how many customers would elect self-support." Mot. 10 n.7.  Notably, Ms. Dean did

7    not investigate these facts either, and so Oracle's argument that the failure to consider them renders

8    an expert opinion unreliable, if accepted, would render her report inadmissible as well.  But in any

9    event, this argument is a red herring.



17    Oracle also mischaracterizes Mr. Hampton's testimony, claiming that "his but-for market …

18    includes known infringers (e.g., TomorrowNow)."  Mot. 10.  The actual testimony Oracle cites for

19    this assertion is Mr. Hampton's unremarkable statement that "during the period of time they

20    [TomorrowNow] were in operation, they were an option" to Oracle customers, which is of course

21    true.  Reckers Decl., Ex. A, at 207:19–24 (Hampton Dep. Tr.).  Mr. Hampton did not opine that

22    TomorrowNow satisfies the legal requirements in the "but-for" analysis—indeed, when asked

---

[2]   Oracle selectively quotes, without discussion, from two inapposite non-copyright cases in which the court excluded a *plaintiff's* expert.  *See Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 636–37 (8th Cir. 2007) (affirming order excluding plaintiff's expert who sought to testify as an engineer on whether Dodge Ram truck was "unreasonably dangerous" even though he had no degree in engineering, his only relevant experience was in managing engineers, and his testimony was cumulative of other experts); *Champagne Metals v. Ken-Mac Metals, Inc.*, 2008 WL 5205204, at *12 (W.D. Okla. Dec. 11, 2008) (excluding plaintiff's expert in antitrust case because he calculated lost sales of *aluminum* based on lost sales of *steel* and because his damages figure was not based on any identifiable theory).  These cases are both inapplicable and inapposite.

whether TomorrowNow "breaks the chain of causation," as a legal matter, Mr. Hampton responded he could not answer that question because it is "a legal determination." *Id.* at 209:24–210:14.  In fact, it is *Oracle* that is attempting to inject TomorrowNow into this lawsuit, not Rimini Street, which moved to exclude any such evidence.

In any event, the only case Oracle cites to support its argument that *only* non-infringing alternatives can break the chain of causation is a patent case (*Polaroid Corp.*, 1990 WL 324105), which contains no such holding and supports the opposite conclusion.  There, the court held that while conventional photography and instant photography are *not* "substitute[s]" for each other, they nevertheless "affect the price that consumers were willing to pay" for each respective product, and "the law requires a careful assessment of all market influences when determining lost profit," *even* substitutes that are not alternatives.  *Id.* at *14.  This is yet another reason why Mr. Hampton's analysis of non-infringing alternatives is relevant and admissible in this case.

### 3. Hampton Is Not Being Offered to Testify on Legal Conclusions

Oracle argues that Mr. Hampton's report should be excluded because it contains statements regarding the parties' burdens of proof in connection with Mr. Hampton's rebuttal of Ms. Dean's analysis, including several purportedly objectionable "headings" in Mr. Hampton's report.  Mot. 10–11.  Oracle ignores the fact that Ms. Dean's report contains similar statements.  *E.g.*, Dean Rpt. pp. 27, 183.  And Oracle fails to cite a single case excluding an expert report for placing the analysis in a legal framework, which is all that Mr. Hampton does in his report.[3]  In fact, none of the cases Oracle cites in this section of its brief relate to motions to exclude expert reports at all.

Oracle's statement of the legal standard in this section of its brief is flatly incorrect.  Ms. Dean effectively admitted (Dean Rpt. ¶ 44) that Oracle cannot meet its burden of demonstrating that but for

---

[3]  Oracle string-cites sixteen paragraphs or headings (Mot. 10–11), none of which offers impermissible legal conclusions.  Rather, these paragraphs largely point to evidence that Ms. Dean failed to consider and provide context on why Mr. Hampton understands that failure to be relevant—i.e., because it is Oracle's burden to prove damages.  *See, e.g.*, Hampton Rpt. ¶ 111 (stating that Ms. Dean's testimony does not conform to the evidence because it ignores the "viability of self-support as an alternative to Oracle support or third-party support"); *id.* ¶ 116 (stating that Ms. Dean did not analyze whether "Rimini Street's customers would have chosen self-support or another third-party rather than choose Oracle").  Even if this testimony "embraces an ultimate issue to be decided by the trier of fact," it is not "objectionable" on those grounds. Fed. R. Evid. 704(a).

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

1    Rimini Street's infringement, Oracle would have retained its customers, and as a result, Oracle is

2    desperately attempting to shift that burden to Rimini Street.  But there is no question that Oracle

3    bears this burden.  17 U.S.C. § 504(b); *Evenflow Plumbing Co. v. Pac. Bell Directory*, 2005 WL

4    1353822, at *1 (N.D. Cal. June 7, 2005) ("Of course, the copyright holder bears the burden of

5    showing that the infringement was the cause of the loss of profits").

6         The *only* authority Oracle cites is *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471

7    U.S. 539 (1985), and Oracle mischaracterizes that decision.  There, Time Magazine contracted with a

8    copyright holder to publish an excerpt from President Ford's as-yet unpublished memoirs for $25,000

9    ($12,500 in advance, and $12,500 at publication).  *Id.* at 542–43.  Shortly before Time Magazine

10   could publish the excerpt, its competitor, The Nation magazine, published a similar excerpt, which it

11   had obtained from an unauthorized source, in an effort to "scoop" Time Magazine's story.  *Id.*  As a

12   result, Time canceled its article and refused to pay the remaining $12,500 to the copyright holder.  *Id.*

13   The copyright holder successfully sued The Nation for infringement, and the district court found that

14   Time Magazine's refusal to pay the $12,500 was "the direct effect of the infringement."  *Id.* at 567.

15        *Harper & Row* did *not* turn on whether the copyright holder *would have* received the $12,500

16   but for the infringement.  Rather, the case turned on a different issue altogether—whether The

17   Nation's publication was a "fair use" of the copyrighted work.  The lone sentence Oracle quotes was

18   *not* found in a section on actual damages or lost profits, but rather in the Court's analysis of the fourth

19   statutory fair use factor, "the effect on the potential market for or value of the copyrighted work."  *Id.*

20   at 561, 566.  In holding that under that factor there was a *potential* effect on the market from The

21   Nation's article, the Court noted that there was *also* an *actual* effect on the market.  *Id.* at 567.

22   Indeed, the Court noted that "[r]arely will a case of copyright infringement present such clear-cut

23   evidence of actual damage."  *Id.*

24        The Court in *Harper & Row* did not suggest, as Oracle does, that an alleged infringer like

25   Rimini Street bears the burden of *disproving* Oracle's lost profits allegations, because it had no

26   occasion to address this issue.  *Harper & Row* has never been cited for that proposition.  Rather, the

27   cases are consistently in line with Rimini Street's theory of causation—"[a] plaintiff in a § 504(b)

28   action must establish [a] causal connection" "between the infringement and the monetary remedy

---

15

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

sought." *Oracle Corp. v. SAP AG*, 765 F.3d at 1094; *see also Leegin Creative Leather Prods., Inc. v. Belts by Nadim, Inc.*, 316 F. App'x 573, 575 (9th Cir. 2009) ("Although Leegin presented evidence that Nadim sold infringing products, no testimony or other evidence supported Leegin's argument that a purchaser of such infringing products *would have* bought Leegin's products had the infringing versions not been available") (emphasis added).[4]

### B.   James Benge's Opinions Are Reliable and Admissible

James Benge is a Rimini Street employee who, in Oracle's own words, "is experienced in PeopleSoft development and knowledgeable about many of Rimini Street's support processes." Mot. 13. Based on his over twenty years of extensive experience working with PeopleSoft and working "very closely" with the engineers "on a day-to-day basis," Mr. Benge testified that, with additional resources, Rimini Street could have implemented a purely remote system, similar to the system used by Spinnaker. Reckers Decl., Ex. D, at 33:9–35:23 (Benge Dep. Tr.). Mr. Benge also testified regarding his "very conservative estimate" for the amount of additional resources required to transition to a purely remote system. *Id.* 34:17–35:1.

Oracle's initial argument is a repeat of the reasons it seeks to exclude Mr. Hampton's testimony; i.e., because avoided costs is "not a valid legal measure of damages." Mot. 12. As an initial matter, and for the same reasons outlined above, that argument fails. *See, e.g.*, *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 5914033, at *4 (rejecting similar argument). And in any event, Mr. Benge is not calculating the avoided costs; he is simply explaining how Rimini Street could offer a non-infringing alternative, which is relevant for all of the additional reasons outlined above.

Oracle also argues that Mr. Benge's testimony should be excluded because the evidence demonstrates that Rimini Street *could not* have developed a non-infringing remote support model at the time and cites emails that Oracle argues suggest remote support was not possible. Mot. 12. But this is not a proper basis for excluding Mr. Benge's testimony; rather, this is a classic fact question

---

[4]   In any event, the parties' dispute over the proper standard of causation—for lost profits, infringer's profits, or any other cause of action—does not render Mr. Hampton's opinions and testimony inadmissible; the dispute will be resolved in jury instructions and at trial.

for the jury.  In rejecting Oracle's nearly identical argument in its case against Google, Judge Alsup wrote:

> This argument overstates the record evidence favoring Oracle.  While Oracle can point to discovery documents that support its contentions, Google can similarly rely on its own witnesses to rebut those contentions.  Who is to say at this stage which is more accurate?  Documents produced in discovery are not judicial admissions.  They are only data points.  Company witnesses can try to explain away and even contradict those data points.  Subject to the rules of evidence, Oracle will have its chance during trial to make the contrary case with Google's own documents.

*Oracle Am., Inc. v. Google, Inc.*, 2011 WL 5914033, at *2.  Oracle offers no justification to depart from this reasoning here.

In any event, all of Rimini Street's clients are, in fact, now exclusively served remotely, and Rimini Street has served some clients remotely since day one.  *E.g.*, Dkt. 490 at 12–13.  As such, Mr. Benge's testimony that Rimini Street could have serviced *more* clients remotely with additional resources is based on his own extensive experience.  And it is widely accepted that an expert may base his conclusions on his experience.  *E.g.*, *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000), *cert. denied*, 530 U.S. 1268 (2000) ("The *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it"); *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998) (upholding the admission of expert testimony from law enforcement officer regarding jargon of narcotics trade on basis of expert's training, experience, and personal knowledge); *Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, 2012 U.S. Dist. LEXIS 152835, at *15 (D. Colo. Oct. 24, 2012) ("When an expert's testimony is based on knowledge and experience, the proponent need only show that the testimony has a reliable basis in the relevant discipline and must fit the facts of the case") (citing *Kumho*, 526 U.S. at 149–50 (1999)); *Actuate Corp. v. Aon Corp.*, 2012 U.S. Dist. LEXIS 87185, at *3–4 (N.D. Cal. June 18, 2012) (allowing an expert to testify regarding industry custom and practice).

This is particularly true when expert testimony may assist the jury in understanding an industry or technology that, like here, may not be easily understood or well known.  *See* Fed. R. Evid. 702(a) (expert's "specialized knowledge" admissible to "help the trier of fact to understand the

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

evidence or to determine a fact in issue"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) (observing that "[m]ore important" than the expert's experience was the fact that his "testimony will assist the trier of fact") (quotations and modifications omitted); *Kan. City Fire & Marine Ins. Co. v. Long Island Power Auth.*, 2007 WL 7034284, at *3 (E.D.N.Y. Nov. 23, 2007) ("Freely admitted is expert testimony that is likely to substantially assist the average person in understanding the case—even if it simply explains facts and evidence already in the record").

Moreover, Mr. Benge's testimony is also admissible under Federal Rule of Evidence 701, and Oracle does not argue otherwise.  Mr. Benge's opinions are predicated on his extensive first-hand experience with Rimini Street's support model, including his experience using remote access to support clients.  *See* Fed R. Evid. 701, advisory committee notes (2000 amends.) (individual can testify under Rule 701 based on "particularized knowledge that the witness has by virtue of his or her position in the business"); *id.* ("it is possible for the same witness to provide both lay and expert testimony in a single case") (citing *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997)).  *Daubert* does not apply to Rule 701 (*see Daubert*, 509 U.S. at 592 (differentiating Rule 702 from Rule 701)), and Oracle has not sought to exclude Mr. Benge under that rule.  As a result, Mr. Benge's testimony cannot be excluded.

## C.     Brooks Hilliard's Opinions Are Reliable and Admissible

Brooks Hilliard is a Harvard M.B.A. who has consulted in the area of business computer applications (including both hardware and software) for the past 31 years.  Hilliard Rpt. p. 2.  He is one of fewer than 15 professionals in the world to be both a Certified Management Consultant and a Certified Computing Professional, and he has acted as an expert witness in more than 120 legal disputes most commonly related to implementation, performance, and support of computer systems and software applications.  *Id.*  Based on a close review of the documents and products in this case, discussions with key Rimini Street personnel, and his significant industry experience and expertise, Mr. Hilliard reached nine opinions in his expert report.  Those opinions, detailed in a careful 68-page expert report, both rebut specific assertions made by Oracle's experts and provide relevant industry

context useful for considering Rimini Street's conduct, especially in the face of Oracle's sensational allegations that Rimini Street's entire business model is built on willful copyright infringement.

Oracle seeks to exclude wholesale Mr. Hilliard's opinions 1–4 and 7–9 by pretending Mr. Hilliard is not an industry expert and by mounting a series of line-item attacks drawn out of context. But, as set forth below, Mr. Hilliard provides admissible, relevant expert opinions. The Court should deny Oracle's motion.

### 1. Mr. Hilliard's Opinions on "Custom and Practice" in the Industry Are Relevant, Reliable, and Admissible

Oracle contends that Mr. Hilliard's opinions regarding industry custom and practice are legally irrelevant, lack expert knowledge, and are derived from unverified websites. Mot. 15–18. As set forth below, none of these arguments has merit.

*a. Mr. Hilliard's Opinions Are Legally Relevant*. Oracle claims that testimony about custom and use is irrelevant. Mot. 15. This argument fails because, in addition to providing necessary context for Oracle's infringement allegations, Mr. Hilliard provides admissible expert testimony to rebut the opinions of Oracle's experts, and because his opinions are legally relevant to Oracle's willfulness allegations, the calculation of economic damages, whether Rimini Street adhered to the license terms, and Oracle's alleged entitlement to punitive damages.

For example, Oracle's expert, Dr. Davis, states that "[t]he scope of copying in this case ... is larger than I have encountered in any previous case" (Davis Rpt., Section II)—a hyperbolic suggestion that the jury would understand to mean that Rimini engaged in unprecedented pervasive illegal behavior. But Mr. Hilliard, responding directly to this hyperbole, explains in his Opinion 1 that the number of copies Rimini made was "fully consistent with the normal customs and practices of the industry for licensees of business applications software and their contractors." Hilliard Rpt. p. 15. He then explains in depth how and why these copies were made at both an individual and industry level. Here and throughout Mr. Hilliard's report, he thoroughly refutes Oracle's experts' testimony by explaining the custom and practice in the industry, demonstrates that Rimini's practices did not cause the economic damages Oracle alleges, and explains that Rimini's copying did not

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1  deviate from the industry norms, thereby rebutting Oracle's claim for punitive and willfulness

2  damages.

3      Mr. Hilliard's opinions are relevant and directly responsive to the case Oracle seeks to

4  present, and thus constitute proper and relevant rebuttal expert testimony.  *See* Fed. R. Civ. P.

5  26(a)(2)(D)(ii) (rebuttal expert testimony proper when it "is intended solely to contradict or rebut

6  evidence on the same subject matter identified by another party"); *Pakootas v. Teck Cominco Metals,*

7  *Ltd.*, 2012 U.S. Dist. LEXIS 72137, at *5 (E.D. Wash. Apr. 4, 2012) ("Rebuttal evidence is

8  appropriate to 'explain, repel, counteract or disprove the evidence of the adverse party'") (quoting

9  *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)); *Donell v. Fid. Nat'l Title Agency of*

10  *Nevada*, 2012 U.S. Dist. LEXIS 6590, at *12 (D. Nev. Jan. 20, 2012) ("the proper function of rebuttal

11  evidence is to contradict, impeach or diffuse the impact of evidence offered by an adverse party")

12  (citations omitted).

13      Mr. Hilliard's opinions about industry practice are separately admissible and relevant to

14  understand the terms in the licenses.  An expert "may testify to industry custom and usage with

15  respect to particular contractual terms."  *Renfrew v. Hartford Accident & Indem. Co.*, 2009 U.S. Dist.

16  LEXIS 89267, at *88 (N.D. Cal. Sept. 10, 2009); *see also* Cal. Civ. Code § 1645 ("Technical words

17  are to be interpreted as usually understood by persons in the profession or business to which they

18  relate, unless clearly used in a different sense"); *Actuate Corp. v. Aon Corp.*, 2012 U.S. Dist. LEXIS

19  87185, at *3–4 (N.D. Cal. June 18, 2012) ("Subject to Rule 403, it is usually proper for an expert to

20  explain custom and practice to a jury").

21      For example, Mr. Hilliard's expert opinion on the number of copies that are normal and

22  necessary in the industry may assist with determining the meaning of "reasonable" as related to the

23  license provisions allowing for a "reasonable" number of copies.  As one court stated in allowing Mr.

24  Hilliard to provide similar testimony in a software case, "Mr. Hilliard employed his experience as a

25  computer industry professional to explain a technically-worded [document], which the jury will not

26  necessarily understand without assistance."  Reckers Decl., Ex. E, at 20 (Order, *Summit Elec. Supply*

27  *Co. vs. Int'l Bus. Mach. Corp.*, No. CIV 07-431 MCA/DJS (D.N.M. Sept. 30, 2010)) (citing cases

28  observing that courts allow testimony from experts to discuss the ordinary practices and usages in the

industry).  Likewise in this case, Mr. Hilliard provides admissible analysis of the ordinary practices in the industry, so the jury can properly understand the liability and damages evidence from an industry perspective.

Oracle contends that Opinion 8 constitutes inadmissible legal contract interpretation (Mot. 15), but Oracle misstates Mr. Hilliard's opinion, which acknowledges that "contract interpretation is customarily a legal, rather than a technical or business, issue" and states that it is "*not* [his] purpose here to present an opinion on whether Oracle's contracts should or should not be interpreted to allow such use by Rimini." Hilliard Rpt. p. 59 (emphasis added).  The purpose of Opinion 8 is to provide the Court with "some perspective on the normal customs and practices of the industry." *Id.* pp. 59–60.  That "perspective" is not contractual interpretation, but instead an explanation from an industry consulting expert on how companies frequently and permissibly use third-party support services within the scope of their license agreements.  It is proper, relevant, non-legal expert testimony. *E.g.*, *Actuate Corp.*, 2012 U.S. Dist. LEXIS 87185, at *3–4; *Renfrew*, 2009 U.S. Dist. LEXIS 89267, at *88.

Mr. Hilliard's opinions regarding industry custom are also relevant to Oracle's stated desire to seek punitive damages, as well as a finding of willful infringement.  Because Rimini Street's conduct was in line with industry custom and practice, Rimini Street's conduct was not as a matter of law willful, malicious, or despicable, and Rimini Street did not have fair notice that its conduct could subject it to punishment. *See, e.g.*, Cal. Civ. Code § 3294; *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2215–16 (2007); *Ramirez v. Plough*, 6 Cal. 4th 539, 552–55 (1993); *see also FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 712 (2010).

**b. Mr. Hilliard Has Extensive Relevant Experience**.  Oracle claims that Mr. Hilliard lacks specialized knowledge about third-party support providers. Mot. 16.  But Mr. Hilliard has over *three decades* of experience—or, as Oracle grudgingly terms it, "a relatively long career" (*id.*)—consulting in the area of "selection, implementation and *ongoing support* of business computer applications." Hilliard Rpt. p. 1 (emphasis added).  He has consulted with clients specifically on the software applications at issue in this case and has served as an expert in over one hundred cases generally

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

related to computer systems and software applications.  *Id.* pp. 1-2.  Oracle does not dispute *any* of these qualifications, and Mr. Hilliard plainly is qualified based on this undisputed experience.  *See* Fed. R. Evid. 702 advisory committee notes (2000 amends.) ("the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.  In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."); *Fortune Dynamic*, 618 F.3d at 1043 ("Fueroghne has forty years of experience in the marketing and advertising industry, strongly suggesting that he is familiar with what companies within the industry do when placing words on a product.  Fueroghne's expertise, then, is one based on experience."); *Hangarter*, 373 F.3d at 1016 (concluding that an expert's significant knowledge of and experience within the insurance industry provided the minimal foundation required to give expert testimony on the practice and norms of insurance companies in the context of a bad faith claim).

Oracle criticizes Mr. Hilliard for failing to demonstrate hyper-specialized knowledge of "the availability, customer perception, and popularity of consultants, self-support, and third-party support providers as well as what is common for third-party support providers for Oracle's software."  Mot. 16.  But courts routinely reject this type of expertise nitpicking.  *See, e.g.*, *Hankey*, 203 F.3d at 1168 ("in considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally"); *Plunk*, 153 F.3d at 1017 (rejecting claim that expert lacked specific expertise in drug-culture code when he had significant experience working with drug trafficking organizations); *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1080 (D. Or. 2013) (holding that expert's general knowledge of and experience with the university system was sufficient to provide an opinion about tenure review policies); *Brincko v. Rio Props.*, 2013 U.S. Dist. LEXIS 5986, at *16-17 (D. Nev. Jan. 14, 2013) (rejecting argument that proposed expert lacked expertise in specific areas of accounting, law, and structuring when expert had significant general experience throughout his career).  Further, as discussed above, it is widely accepted that an expert may base his conclusions on his experience, especially where, as here, the testimony may assist the jury in understanding a complex industry.  *See supra* Section II.B.

*c. Mr. Hilliard Based His Conclusions on Sufficient Facts and Data*.  Oracle contends that Mr. Hilliard impermissibly relied on unverified websites "to support his claims that local copying is

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

common industry practice," "[r]ather than looking to Rimini's own practices." Mot. 17–18. But Mr. Hilliard *did* look at Rimini Street's own practices, as well as the discovery in this case regarding the practices of other third-party support providers. Hilliard Rpt. pp. 4-5. Indeed, his Opinion 1 provides a lengthy discussion of Rimini Street's practices as related to local copying, and Oracle does not contest the factual foundation for this opinion (just whether it is relevant and within Mr. Hilliard's specialized knowledge). "Rule 702's requirement that the expert base the conclusion on sufficient facts and data does not disqualify the expert from reviewing sources that might end up having no relevant facts." *KDME, Inc. v. Bucci*, 2007 U.S. Dist. LEXIS 102146, at *11 (S.D. Cal. July 11, 2007) (overruling objections to expert report based on review of websites when expert had reviewed other relevant materials in preparing expert report); *see Oracle Corp.*, 765 F.3d at 1095 (rejecting similar assertions made by Oracle).[5]

### 2. Hilliard's Independent "Post-Lawsuit Assessments" Are Relevant And Admissible

Oracle contends that Mr. Hilliard's Opinions 7 and 9 should be excluded "because they rely entirely on the say-so of Rimini employees." Mot. 18. Setting aside the fact that just two paragraphs earlier Oracle inconsistently complains that Mr. Hilliard did not "look[] to Rimini's own practices" (Mot. 17), Oracle's argument is unsupported.

In Opinion 7, Mr. Hilliard counters Ms. Dean's assumption that Rimini Street could not have remained in business without infringing. Hilliard Rpt. p. 57. He examines the business operations of Rimini Street and how it could make relevant modifications without affecting its ability to offer its services at a competitive price. He based his conclusions on his discussion with Mr. Benge, *in addition to* his significant knowledge of Rimini Street, his "experience consulting with enterprise software users," and his own analysis. *Id*. pp. 58–59. Mr. Hilliard further explained at deposition

---

[5] Additionally, the only portions of the expert report that Oracle contends should be struck are "Hilliard Report 9 n.9, 10 n.11." Mot. 18. Footnote 9 provides support for the assertion that "[d]evelopment of these custom modifications occur both in, and outside of, the United States," and Footnote 11 supports the assertion that "[d]epending on the location of the production environment and the developers doing the software modification, these environments would normally and customarily be located in more than one location." Hilliard Rpt. pp. 9 n.9, 10 n.11. Both of these sentences are in the preliminary "Industry Background" section of the report, and, while neither provides key information for any of Mr. Hilliard's opinions, these footnotes provide permissible background information regarding the relevant industry.

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY
7127808

that he "relied on [his] experience as a developer and [his] experience as an executive in computer systems companies and [his] experience as a consultant dealing and negotiating on behalf of clients that were acquiring software that required some development effort, and [he] put those all together. [He] heard … descriptions of the differences in the amount of effort that would have to be applied to change from the existing model to the proposed change model, and [he] made [his] assessment based on those factors." Reckers Decl., Ex. B, at 165:5–14 (Hilliard Dep. Tr.).

As a result, Oracle's assertion that Mr. Hilliard "rel[ied] entirely" on Mr. Benge (Mot. 18) is demonstrably false; Mr. Hilliard applied his specialized expert knowledge to *independently* assess the reasonableness and validity of Mr. Benge's testimony that Rimini could continue to offer a competitive PeopleSoft service price, and concluded that Mr. Benge's position was supported. This is classic expert testimony. *E.g.*, *Hankey*, 203 F.3d at 1168 (holding expert's beliefs were admissible when based on years of experience). And, because the conclusion flows from Mr. Hilliard's independent verification of Mr. Benge's position, there are none of the issues of "spoon-f[ed]" multiple levels of hearsay about which Oracle protests. Mot. 18.

Similarly, in Opinion 9, Mr. Hilliard reviewed Rimini Street employee Mr. Baron's explanation that Rimini Street could have configured a single installation of the Oracle Database and concluded independently based on his consulting experience and industry practice that Mr. Baron's proposal was "both practical and consistent with normal database implementation practices." Hilliard Rpt. p. 62. Oracle simply disregards Mr. Hilliard's own independent analysis based on his specialized experience in consulting regarding software support to conclude that Mr. Baron's proposal was reasonable.

At bottom, Oracle raises only minor and unfounded complaints with Mr. Hilliard's 68-page report, yet seeks to lever those issues to exclude nearly the entire report. This Court should decline to order such drastic relief. *E.g.*, *Sphere Drake Ins., PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) (attacks on foundation of expert's opinion go to weight rather than admissibility).

**D.     David Klausner's Opinions Are Reliable and Admissible**

David Klausner is an electrical engineer with over 44 years of development and consulting experience in the computer and software industry. Klausner Rpt. ¶ II.A. He has extensive experience

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

designing, developing, and managing computer hardware and software programs, including for Intel Corp., Hewlett-Packard, and IBM.  *Id.*  He has managed teams responsible for creating fixes and updates for software programs for hundreds of thousands of customers.  *Id.* ¶¶ II.A, II.B.  In light of his experience in the challenges and problems of providing software support to customers, he has testified as an expert on computer software and hardware in state and federal courts.  *Id.* ¶ II.B.

Here, Mr. Klausner rebuts the report of Oracle's technical expert, Christian Hicks, relating to the functionality and impact of Rimini Street's tools and download utilities.  In forming his opinions, Mr. Klausner considered extensive amounts of source code, competitor tools, conversations with Rimini Street employees, sixteen deposition transcripts, and his extensive experience in the industry. Klausner Rpt. ¶ II.C; *id*. Ex. B.

Oracle argues that this Court should exclude Mr. Klausner's entire 61-page report because (i) Mr. Klausner's opinions on industry custom are unreliable and irrelevant, and (ii) Mr. Klausner's opinions regarding out-of-support downloads are based on hearsay.  Oracle's arguments once again fall short.

### 1.    Oracle's Criticisms of Mr. Klausner's Report Mischaracterize His Analysis and Go to Weight, Not Admissibility

Oracle argues, without citing a single case, that Mr. Klausner's "assertions regarding industry custom" to "interpret" the terms of use in Oracle's contracts are unreliable and irrelevant.  Mot. 19. Oracle's argument is based on at least two false premises.

First, contrary to Oracle's suggestions, Mr. Klausner does not offer opinions on Oracle's terms of use; rather, his testimony is directed to (among other things) the use of download tools in the industry.  *See*, *e.g.*, Klausner Rpt. ¶ III.C ("the search engines used by millions of Internet users everyday all rely on robots and crawlers to gather the information provided to Internet users as search results").  In rebutting Oracle's expert, Mr. Klausner compares the Rimini Street download tools to those in the industry, including those tools that Oracle provides.  *E.g.*, *id.* ¶¶ III.C, IV.I (Microsoft, Apple iOS, Mac Developer Programs, Google's Android Developers), IV.L, IV.M.  Put simply, whether Rimini Street's tools are similar to those in the industry provides context for Oracle's claim that Rimini Street willfully infringed, and bears directly on whether these tools are unduly

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

1    burdensome or caused the alleged impairment of Oracle's servers.  Based on his extensive experience

2    in the industry and his detailed analysis of Rimini Street's tools (including its filtering features, use of

3    AutoIT3 scripting language, the Solutions Tool, and the Continuing Documentation Tool, none of

4    which are mentioned by Oracle), Mr. Klausner rebuts Mr. Hicks's opinions regarding Rimini's

5    downloading.

6         Second, Oracle is also wrong in claiming that Mr. Klausner attempted to interpret Oracle's

7    contracts.  *Id.* ¶ III.B. ("I do not purport to provide any legal opinions on the meaning of the terms of

8    Oracle's terms of use").  Oracle's expert, Mr. Hicks, opined that Rimini Street would "crawl,"

9    "recursively crawl," and "scrape" Oracle's web sites.  Hicks Rpt. pp. 20, 28, 59.  Mr. Klausner

10   simply uses the same words to rebut Mr. Hicks's opinion.  The fact that these words are also used in

11   Oracle's "terms of use" does not mean Mr. Klausner is opining on the legal meaning of these

12   agreements.

13        Oracle argues that, "as shown in the motion *in limine*," Mr. Klausner's "'parol evidence' is

14   inadmissible to vary the terms of the unambiguous and integrated Terms of Use."  Mot. 20.  But

15   Oracle does not identify in either its *Daubert* motion or its motion *in limine* any specific or even

16   general areas of testimony it believes to be irrelevant with respect to Mr. Klausner.  And in any event,

17   as discussed in Rimini Street's concurrently filed opposition to Oracle's motions in *limine*, Rimini

18   Street does not seek to introduce Mr. Klausner's testimony as parol evidence.  Mr. Klausner is not

19   conducting a legal interpretation of the contracts; rather, he is explaining the concepts contained

20   therein and directly rebutting Oracle's expert (who uses the same terms in his report), which is

21   relevant to a whole host of issues in the case, including remaining liability issues, willful

22   infringement, and punitive damages.  That is permissible expert testimony.  *Kumho*, 526 U.S. at 149

23   (experts permitted to testify based on "knowledge and experience"); *Plunk*, 153 F.3d at 1017.

24        Oracle also argues that because Mr. Klausner analyzed only one automated downloading tool

25   (wGet), and Oracle's expert, Mr. Hicks, analyzed "several" automated tools, that Mr. Hicks's

26   testimony is reliable and Mr. Klausner's is not.  Mot. 20–21.  This, however, is a classic fact issue for

27   the jury, and it is not a basis to exclude Mr. Klausner's testimony entirely.  *Primiano*, 598 F.3d at

28

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1   564–65; *see also Oracle Am., Inc. v. Google, Inc.*, 2011 WL 5914033, at *2 ("Who is to say at this

2   stage which is more accurate?").

3          Similarly, Oracle notes that Mr. Klausner testified that Oracle *recommends* the use of

4   downloading managers on the Oracle Technical Network ("OTN"), which is relevant because Oracle

5   argues that the use of such tools by Rimini Street violates its Terms of Use.  Mot. 20.  But Mr.

6   Klausner did not, as Oracle falsely claims, "concede[] in deposition" that "he has no evidence, and

7   conducted no expert analysis showing, that the download managers for OTN are analogous to

8   Rimini's tools."  Mot. 21.  Rather, he stated that he did not know the answer to Oracle's compound

9   question whether a particular list of download managers "take a single ID and increment it hundreds

10  of thousands or a million times to scan for possible documents on a website."  Reckers Decl., Ex. F,

11  at 205:17–206:13 (Klausner Dep. Tr.).  That testimony does not support Oracle's sweeping attack on

12  Mr. Klausner's report, which considered various Oracle and Rimini Street tools and source code to

13  conclude that "the filtering performed by Rimini's tool was more effective at limiting the downloads

14  than the filtering provided by Oracle."  Klausner Rpt. IV.T.

15          **2.      Oracle's Hearsay Objection Is a Red Herring**

16         Finally, Oracle argues that Mr. Klausner's reliance on "repetition of hearsay from Rimini

17  Street employees" renders his testimony inadmissible.  Oracle fails to identify any actual testimony

18  that it contends is based on hearsay evidence.  The only paragraph with which Oracle takes issue

19  (Klausner Rpt. ¶ V.BB), cites Mr. Hick's expert report and documents *produced by Oracle* to

20  conclude that "Mr. Hicks fails to consider Oracle's dissemination practices for Oracle's updates" and

21  that "Oracle does not have any in-house mechanism to associate licensing information to JDE

22  updates."  Oracle does not explain how these conclusions are based on inadmissible hearsay.

23          Similarly, Oracle cites a few lines of Mr. Klausner's deposition testimony out of context to

24  argue that he "regurgitates" what Rimini Street employees told him.  Mot. 21–22.  But the cited

25  testimony merely states that Mr. Klausner's understanding regarding "the particular products" that

26  "the onboarding team" downloads when a "new PeopleSoft customer comes to Rimini" comes from

27  Mr. Klausner's conversations with Rimini Street personnel.  Reckers Decl., Ex. F, at 213:14–214:11

28  (Klausner Dep. Tr.).  This is entirely appropriate, and typical of what an expert in the industry would

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1  reasonably rely on in forming his opinions.  Oracle offers nothing beyond conclusory platitudes to the

2  contrary.

3        As discussed above, an expert is entitled to rely on conversations with employees to lay the

4  foundation for his opinions, even if those facts are not otherwise admissible.  Fed. R. Evid. 703; *see*

5  *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 5914033, at *1 (rejecting motion to exclude experts on the

6  grounds that they "relied on … interviews with Google's employees"); *McDevitt v. Guenther*, 522 F.

7  Supp. 2d 1272, 1294 (D. Haw. 2004) ("Applying Rule 703 to Kleintop's expert report, it is

8  permissible for Kleintop to base his opinion on facts that are otherwise admissible, such as

9  information about conversations that would be barred as inadmissible hearsay").  Oracle is free to

10  cross-examine Mr. Klausner on these issues at trial, but it has provided no basis to exclude his

11  testimony entirely.

12  ### III. CONCLUSION

13        Rimini Street respectfully requests that this Court deny Oracle's motion.

14

15  DATED:  August 14, 2015         SHOOK, HARDY & BACON

16                       By:   */s/ Robert H. Reckers*

17                           Robert H. Reckers, Esq.

18                           Attorney for Defendants

19                           Rimini Street, Inc. and Seth Ravin

20

21

22

23

24

25

26

27

28

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>FRED NORTON (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>fnorton@bsfllp.com<br>kringgenberg@bsfllp.com | BINGHAM MCCUTCHEN LLP<br>GEOFFREY M. HOWARD (*pro hac vice*)<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: (415) 393-2000<br>Facsimile: (415) 393-2286<br>geoff.howard@bingham.com<br>thomas.hixson@bingham.com<br>kristen.palumbo@bingham.com<br><br><br>ORACLE CORPORATION<br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>500 Oracle Parkway<br>M/S 5op7<br>Redwood City, CA 94070<br>Telephone: (650) 506-4846<br>Facsimile: (650) 506-7114<br>jim.maroulis@oracle.com |

By: __/s/ *Robert H. Reckers*
Robert H. Reckers

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

29

RIMINI STREET'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY

7127808