
| | |
|---|---|
| SHOOK, HARDY & BACON LLP<br>B. Trent Webb, Esq. (*pro hac vice*)<br>Peter Strand, Esq. (*pro hac vice*)<br>Ryan D. Dykal, Esq. (*pro hac vice*)<br>2555 Grand Boulevard<br>Kansas City, MO 64108-2613<br>Telephone: (816) 474-6550<br>Facsimile: (816) 421-5547<br>bwebb@shb.com<br><br>Robert H. Reckers, Esq. (*pro hac vice*)<br>600 Travis Street, Suite 3400<br>Houston, TX 77002<br>Telephone: (713) 227-8008<br>Facsimile: (713) 227-9508<br>rreckers@shb.com<br><br>GIBSON, DUNN & CRUTCHER LLP<br>Mark A. Perry (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: (202) 955-8500<br>mperry@gibsondunn.com<br><br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7228<br>bevanson@gibsondunn.com | LEWIS ROCA ROTHGERBER LLP<br>W. West Allen (Nevada Bar No. 5566)<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, NV 89169<br>Telephone: (702) 949-8200<br>wallen@lrrlaw.com<br><br>RIMINI STREET, INC.<br>Daniel B. Winslow (*pro hac vice*)<br>6601 Koll Center Parkway, Suite 300<br>Pleasanton, CA 94566<br>Telephone: (925) 264-7736<br>dwinslow@riministreet.com<br><br>John P. Reilly (*pro hac vice*)<br>3993 Howard Hughes Parkway, Suite 780<br>Las Vegas, NV 89169<br>Telephone: (336) 908-6961<br>jreilly@riministreet.com |

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S OPPOSITION TO ORACLE'S MOTION TO RE-DESIGNATE RIMINI SREET'S CUSTOMER LIST** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A.    Rimini's Highly Confidential Client List ............................................................... 2

    B.    Prior Briefing And Order Regarding Access To Highly Confidential Materials ................................................................................................................ 3

III. ARGUMENT ..................................................................................................................... 4

    A.    Judicial Estoppel Prevents Oracle From Claiming Competitor Lists Should Be Designated As Confidential ............................................................................. 4

    B.    The Court's Previous Order Applies With Even More Force To Oracle's Motion ..................................................................................................................... 6

    C.    Rimini's Client List Is Highly Confidential, And Must Remain So Because ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ................................................... 8

    D.    Oracle's Motion Is Untimely. .............................................................................. 11

    E.    At Minimum, The Court Should Allow Rimini's Clients The Opportunity To Protect Their Interests ..................................................................................... 11

IV. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Pages**

### Cases

*Bayer AG & Miles, Inc. v. Barr Labs., Inc.*,
  162 F.R.D. 456 (S.D.N.Y. 1995) ................................................................................................ 10

*CytoSport, Inc. v. Vital Pharm., Inc.*,
  2010 WL 1904840 (E.D. Cal. May 10, 2010) ............................................................................ 9

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) .................................................................................................................. 6

*J.J. Indus., LLC v. Bennett*,
  119 Nev. 269 (2003) ................................................................................................................. 7

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ................................................................................................................. 4

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) ................................................................................................... 4

## I. INTRODUCTION

In a reversal of its earlier position to this Court, Oracle requests that its "potential" trial witnesses be granted access to Defendant Rimini Street's ("Rimini") highly sensitive client list. Dkt. 703 at 4 ("Mot."). Oracle opposed Defendants Seth Ravin and Rimini's request for this same relief in March. Having prevailed in preventing Mr. Ravin from seeing evidence Oracle will introduce against him at trial, Oracle should not now be allowed to reverse course and obtain access to Rimini's equally sensitive client lists. In addition, Rimini has a contractual duty to keep third-party client lists confidential. This Court should honor the requests of these third parties.

The Court should deny Oracle's motion on judicial estoppel grounds alone. Oracle previously argued that providing one side with access to highly sensitive materials (explicitly including customer lists) would be "one-sided and unfair," stating: "Just as Mr. Ravin cannot review certain of Oracle's documents, Oracle's Co-CEO, Safra Catz, who is listed as a trial witness, cannot review certain of Rimini's documents. The same is true of all other Oracle employees." Dkt. 544 at 10. Oracle prevailed in opposing Defendants' motion, and should be judicially estopped from obtaining for itself what it successfully denied Defendants.

Previously, this Court denied Defendant Seth Ravin's request for access to evidence that Oracle designated as Highly Confidential and which it intends to raise against Mr. Ravin at trial. Dkt. 592. The Court found that Mr. Ravin—a defendant in the case—would suffer no prejudice from being denied access to certain trial exhibits because he had lawyers and experts who would review this information. *Id.* at 3 ("The current protective order does not prejudice defendant Ravin's defense because his in-house counsel, outside counsel, and retained experts have access to such designated material and have been retained to adequately represent his interests"). Oracle likewise is represented by in-house and outside counsel, as well as experts. Oracle's complaint now is that its "trial witness are presently unable to adequately prepare for trial." Mot. at 3. This Court rejected that explanation as not constituting good cause. *See* Dkt. 539 at 2 (Mr. Ravin stating it was "necessary ... to prepare for trial"); Dkt. 592 at 2-3 (Court finding that good cause did not exist to justify changing Oracle's confidentiality designation).

DEFENDANTS' OPPOSITION TO ORACLE'S MOTION TO RE-DESIGNATE RIMINI STREET'S CUSTOMER LIST

Separate from Oracle's inconsistent positions and this Court's prior order, good cause exists to maintain Rimini's client lists as Highly Confidential. Most significantly, Oracle has already demonstrated its willingness ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████ In fact, this Court expressly has stated just the opposite to Oracle's allegations, confirming that its "order was quite clear" and "at no point … did the court make a specific holding or finding that Rimini committed any act of intentional theft." Dkt. 507 at 2-3. In light of ███████████████████████ ██████████████████████████████, it is vital that Rimini keep its client list designated as Highly Confidential.

Finally, Oracle's eleventh-hour motion is not timely under the terms of the protective order. Oracle vigorously fought Mr. Ravin's similar request in March and protested that Mr. Ravin had litigated for years without raising any complaints concerning the protective order. Now Oracle is choosing to seek the same relief at an even later date, contrary to the protective order and to the prejudice of Defendants.

Oracle's motion should be denied.

## II.   BACKGROUND

### A.   Rimini's Highly Confidential Client List

The client list in paragraph 18 of the Joint Pre-Trial Order details all of the clients with whom Rimini contracted for the support of PeopleSoft, J.D. Edwards, or Siebel software since Rimini's inception (2006) through November 2011. Dkt. 527 ¶ 18. It lists over three hundred different clients. *Id.*

That information is not public, and is highly sensitive. Rimini and its clients sign a Support Services Agreement that contains strict confidentiality provisions. Decl. of Robert Lachs in Supp. of Defs.' Mot. ("Lachs Decl.") ¶ 3. Among other things, ██████████████████

- 2 -
DEFENDANTS' OPPOSITION TO ORACLE'S MOTION TO RE-DESIGNATE RIMINI STREET'S CUSTOMER LIST

1  ████████████████████████████████████████████████████
2  ████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████
12 ██████████████████████████████
13      ████████████████████████████████████████████████
14 ████████████████████████████  The exhibits Oracle relies upon demonstrate this point: Oracle's Exhibit 1, a print-out of Rimini's "Clients" webpage, lists 112 client names alongside the statement that Rimini has "[o]ver 1,080 clients." Dkt. 705-1. In contrast to Oracle's patently unsupported assertion that "[t]here is no sensitive information in the list that has not largely been disclosed publicly already" (Mot. at 7), that website list comprises only approximately 10% of Rimini's clientele.

Additionally, Rimini's client list from 2006 to 2011 is not outdated or stale. ████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████  Thus, even contracts from 2006 may remain effective today.

**B.  Prior Briefing And Order Regarding Access To Highly Confidential Materials**

On March 12, 2015, Defendants moved to grant Mr. Ravin access to documents designated Highly Confidential on Oracle's pretrial exhibit list, explaining that it was necessary for Mr. Ravin as a named defendant to have access to documents to be used against him in order to properly

- 3 -

prepare for trial. Dkt. 539. Oracle opposed Mr. Ravin's request to view, among other things, Oracle's "highly sensitive customer lists." Dkt. 544 at 6. As Oracle explained then:

> Ravin's desire to see "Highly Confidential – Attorneys' Eyes Only" information from Oracle and third parties does not outweigh the overwhelming interest of the producing parties in protecting themselves from the risk of serious competitive harm that would result if Mr. Ravin were allowed to view the documents at issue. … The current protective order was fair when Rimini voluntarily entered into and it remains fair now. It recognizes the parties' relationship as direct competitors, allows both parties' employees to review materials that were designated by the other party as "Confidential," allows both parties' in-house counsel, outside counsel, and experts to review all materials, and prevents both parties' CEOs and other employees from viewing materials designated by the opposing party or third parties as "Highly Confidential – Attorneys' Eyes Only." Both parties must proceed to trial under these terms.

*Id.* at 1-2.

On June 12, 2015, the Court denied Defendants' motion. Dkt. 592. It adopted the points Oracle made in opposition and found that Defendants had not established good cause because Mr. Ravin was adequately represented by counsel with access to the materials, the request was not specific enough, and there was no justification for a one-sided modification to Highly Confidential materials. *Id.* at 3.

### III.   ARGUMENT

#### A.   Judicial Estoppel Prevents Oracle From Claiming Competitor Lists Should Be Designated As Confidential.

Having successfully opposed Defendants' attempt to re-designate the confidentiality of Oracle's trial exhibits in order to allow Seth Ravin—a named defendant facing potential punitive damages—to access those documents in order to prepare for trial, Oracle is judicially estopped from taking the opposite position now and obtaining the very relief it opposed.

The equitable doctrine of judicial estoppel prevents a party from asserting a new position when: "1) the party's current position is 'clearly inconsistent' with its earlier position, 2) the party was successful in persuading a court to accept its earlier position, and 3) the party would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). All three factors undeniably are met here.

1   First, Oracle's positions are clearly inconsistent. Oracle previously defended its own designation of "highly sensitive customer lists" as Highly Confidential, explaining to this Court: "Protective orders also exist to protect exactly the sorts of documents Rimini wants Mr. Ravin to see. Mr. Ravin can use customer lists ... to strengthen his efforts to take Oracle customers." Dkt. 544 at 6, 11. Yet Oracle now claims that the designation of a highly sensitive client list as Highly Confidential "is a straightforward violation of the protective order." Mot. at 3. Similarly, Oracle previously claimed that "[a]ll of the parties must rely on their attorneys and outside experts to review the other side's Highly Confidential information," and that employees on both sides "cannot review certain ... documents." Dkt. 544 at 10. Yet it now claims that its "potential trial witnesses," which includes "Oracle employees" (Mot. at 1), must have access to this highly confidential material. *Id.* at 4.

Second, the Court ruled in favor of Oracle. Dkt. 592.

Third, Oracle would derive an unfair advantage from the change in its position to the unfair detriment of Rimini. Oracle used the protective order as a shield to defend its own customer lists. Yet it now seeks to use the same protective order as a sword to gain access to Rimini's client lists. In Oracle's own words, disclosure of this information in one direction only would be "one-sided and unfair." Dkt. 544 at 10. Such disclosure would impose a concrete and significant detriment to Rimini. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The information is highly sensitive business information, the disclosure of which is likely to cause Rimini competitive and business harm. *Id.* ¶ 7. The protective order in this case exists to allow the parties to litigate the case while keeping highly sensitive business information out of the hands of the direct competitor on the other side. Oracle has relied upon and benefitted from the protective order's Highly Confidential designation to prevent disclosure of its client lists to Mr. Ravin. Rimini is entitled to the same result.

Accordingly, the Court should deny Oracle's motion on judicial estoppel grounds.

**B.     The Court's Previous Order Applies With Even More Force To Oracle's Motion.**

The Court already has ruled on this issue, and its holding applies with even more force to Oracle's current motion than it did to Defendants' motion.

First, under this Court's prior ruling, Oracle has not demonstrated good cause. Oracle claims that if its witnesses cannot see a client list, its "counsel [will be] unable to identify for them which customers are at issue in the case" and is therefore "being left to prepare with one hand tied behind its back." Mot. at 4. Mr. Ravin made a similar argument, contending it was "necessary to allow [him] to prepare for trial and to defend against the claims Plaintiffs have made against him" and that "[d]epriving him of the opportunity to review the evidence in advance of the trial does nothing more than put him at an unfair disadvantage." Dkt. 539 at 2, 6. This Court rejected Mr. Ravin's argument, ruling that Mr. Ravin lacked good cause "to review sensitive Oracle documents prior to trial … because his in-house counsel, outside counsel, and retained experts have access to such designated material and have been retained to adequately represent his interests." Dkt. 592 at 3.

Oracle similarly has in-house counsel, outside counsel, and experts, all of whom have access to the designated material and have been retained to adequately represent Oracle's interests. As Oracle explained when opposing Mr. Ravin's motion: "Rimini (*like Oracle*) has relied on their outside lawyers, in-house counsel, and experts to litigate this case." Dkt. 544 at 7 (emphasis added); *id.* at 10 ("*All of the parties* must rely on their attorneys and outside experts to review the other side's Highly Confidential information") (emphasis added). Oracle further stated that allowing one side access to competitively sensitive information would be "one-sided and unfair," explaining: "Just as Mr. Ravin cannot review certain of Oracle's documents, ***Oracle's Co-CEO, Safra Catz, who is listed as a trial witness, cannot review certain of Rimini's documents. The same is true of all other Oracle employees.***" *Id.* at 10 (emphasis added).

Second, the Court previously denied Mr. Ravin's motion because he did "not point to any specific trial exhibit." Dkt. 592 at 3. Mr. Ravin's request was necessarily broad because he is a personally named defendant facing over a dozen causes of action with a due process right to notice and a meaningful opportunity to be heard. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 269-70 (1970).

Oracle's motion suffers from a similar defect: Oracle has not disclosed to this Court with whom the information would actually be shared. It claims vaguely that it needs to share the information with "potential trial witnesses." Mot. at 4. Neither Rimini nor the Court has the necessary information to evaluate this ambiguous assertion. Indeed, Oracle's witness list includes 14 Oracle employees and 19 third parties (which include Rimini clients). Rimini's client list is competitively sensitive information for all of those individuals. Rimini has a contractual duty to keep many of its clients' names confidential. As Oracle protested before: "Re-designation would not only allow Mr. Ravin to see and use sensitive confidential information produced by Oracle and third parties to harm Oracle, it would allow *every Rimini employee* to see and use that information to harm Oracle." Dkt. 544 at 15 (emphasis in original). Those same concerns are present here, and Oracle's broad request is not sufficiently targeted.

Relevance alone does not constitute good cause. Oracle's customer lists were and are relevant to Mr. Ravin's defense. For example, Oracle seeks compensatory and punitive damages against Mr. Ravin for inducing breach of contract. Dkt. 146 at 32-33. That claim requires Oracle to prove that an existing Oracle client breached its contract with Oracle as a direct result of specific, intentional, and unjustifiable inducement by Mr. Ravin. *E.g., J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003). Having access to Oracle's customer list would allow Mr. Ravin the opportunity to personally prepare his defense against that claim. The Court nonetheless found that "proceeding under the current protective order will not prejudice [Mr. Ravin] or Rimini's ability to present a defense at trial." Dkt. 592 at 3. It is therefore not enough for Oracle to claim that Rimini's client list is relevant to its case at trial.

Third, "there is no justification for [Oracle's] proposed one-sided modification." *Id.* Oracle's proposal would give its employees access to Rimini's client list even though Oracle successfully fought against giving Mr. Ravin access to its own customer lists. This is exactly the type of one-way street Oracle strenuously opposed—reasoning the Court found persuasive in its prior order. The rationale applies equally here.

1     Finally, in denying Mr. Ravin the opportunity to personally review Oracle's customer lists, the Court overruled Mr. Ravin's position that he had due process rights as a defendant to have access to the documents to be used against him. *See* Dkt. 551 at 2. Oracle has a weaker interest in its "potential trial witnesses" gaining access to similar documents than the interest Mr. Ravin had as an actual defendant. Oracle's only complaint is that it has "one hand tied behind its back" in preparing for trial (Mot. at 4)—a far less significant concern than Mr. Ravin's position premised on "the most basic principles of due process and fundamental fairness" (Dkt. 551 at 2).

    Accordingly, the Court's prior order preordains the result, and Oracle's motion should be denied. Any other result would be inconsistent and fundamentally unfair.

**C.    Rimini's Client List Is Highly Confidential, And Must Remain So Because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

    Independent of Oracle's judicially estopped position and the direct application of this Court's prior order, Rimini's designation of its client list as Highly Confidential is necessary to prevent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    Rimini designated its client list as Highly Confidential pursuant to paragraph 4 of the operative protective order because it is highly sensitive, non-public information that likely would cause competitive or business injury if disclosed. Dkt. 55 ¶ 4. While the protective order lists categories of information that are presumptively Confidential, it does not limit a party from designating otherwise Confidential material as Highly Confidential if the higher standard is met. Thus, while "customer information, data or lists" are presumptively Confidential, either party may still designate them as Highly Confidential if it "reasonably believes there is a valid basis for such designation." *Id.* ¶ 2. Oracle's claim that Rimini violated the protective order in designating its client lists as Highly Confidential therefore is patently incorrect.

    In fact, both sides in this case have designated their client lists (as well as many other types of information listed in paragraph 3) as Highly Confidential throughout the litigation. For example, Oracle designated as Highly Confidential "customer lists, customer relationship analysis, pricing information, and negotiated terms" (Dkt. 554 at 6), which is comparable to the presumptively

1  Confidential "customer information, data or lists" in the protective order (Dkt. 55 ¶ 3). As another
2  example, Oracle labeled as Highly Confidential documents containing "Oracle financial data" (Dkt.
3  554 at 6), even though the protective order describes as Confidential "confidential financial data"
4  (Dkt. 55 ¶ 3). Thus, Oracle's assertion that Rimini violated the protective order by labeling its
5  highly sensitive client list as Highly Confidential is meritless and belied by Oracle's own application
6  of the protective order in this case.

7  Rimini's client list is designated properly as Highly Confidential. As this Court is aware,
8  Rimini and Oracle are direct competitors. In Oracle's words, the consequences of disclosure of
9  sensitive information "where parties are 'in direct competition through the sale of almost identical
10 products in the same manner to a similar audience,' as they are here ... 'would be grave,'
11 'significant,' and 'cannot be ignored,' because the information at issue 'could be used ... [to]
12 compete for customers, or otherwise interfere with [that party's] business plan and thereby, allow
13 competitors to gain an advantage in the marketplace.'" Dkt. 544 at 11-12 (quoting *CytoSport, Inc. v.*
14 *Vital Pharm., Inc.*, 2010 WL 1904840, at *2 (E.D. Cal. May 10, 2010)).

15 The threat of Oracle using Rimini's client data in an anticompetitive manner is not
16 hypothetical. ███████████████████████████████
17 ███████████████████████████████████████████
18 ███████████████████████████████████████████
19 ███████████████ The "massive theft" statement was a misrepresentation that was apparently
20 calculated to cause interference with Rimini's current and prospective business because Oracle
21 selectively quoted the Court out of context—in fact, the Court was analyzing Rimini's defamation
22 counterclaim and held that defamation was not available because Oracle's "imprecise" assertion
23 "provide[d] the gist of the actual claims." Dkt. 476 at 30. ████████████
24 ███████████████████████████████████████████
25 ███████████████████████████████████████████
26 ███████████████████████████████████████████
27
28

1  ████████████████████████████████████████████████████████
2  ████████████████████████████████

3  As a result of Oracle's manifestly inappropriate conduct, Rimini sought clarification that the Court had not made any explicit findings related to theft. The Court observed that its "order was quite clear" that "[t]he only factual findings made by the court ... related to Oracle's claims of copyright infringement"; that "[t]he court's ruling concerning Oracle's statements of theft was solely within the context of Rimini's defamation allegations"; and that "at no point in the August order did the court make a specific holding or finding that Rimini committed any act of intentional theft." Dkt. 507 at 3. ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

Oracle's ████████████████████████████████ do not stop there. Just last week, Oracle's Senior Vice President and General Manager of J.D. Edwards, Lyle Ekdahl, tweeted to the business community "riministreet trolls are ... #liars." Ex. C. Such unprofessional action directed towards prospective clients is precisely why Oracle must not be permitted to gain access to Rimini's actual clients.

In light of ████████████████████████████████, there is an actual and demonstrated risk of competitive business injury if Oracle personnel are given access to Rimini's full customer list. To use Oracle's words: "[Rimini] has a legitimate interest in protection from [Oracle], and [it], like the other parties, must rely on [its] attorneys and outside experts to review the other party's most sensitive business information." Dkt. 544 at 10 (quoting *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 467 (S.D.N.Y. 1995) for the proposition that "[l]itigants and their counsel must know that they can rely on protective orders to protect sensitive commercial information from disclosure to competitors").

### D. Oracle's Motion Is Untimely.

Rimini has designated its client list as Highly Confidential since *2010*. The protective order requires a party to challenge a designation at a time "necessary to avoid foreseeable substantial unfairness, unnecessary economic burdens, or a later significant disruption or delay of the litigation." Dkt. 55 ¶ 16. Although Oracle had *five years* to challenge the designation, it waited until just weeks before trial. Oracle's last-minute about-face is substantially unfair. Oracle should have at the very least raised this position at the same time Rimini sought similar relief, rather than vehemently opposing Rimini's motion and then turning around to seek the same relief for itself months later. Indeed, when Rimini moved for similar relief *five months earlier*, Oracle claimed that Rimini's motion lacked good cause in part because it had "litigated with that protective order in place through years of discovery, two motions for summary judgment, and months of pretrial preparations without issue." Dkt. 544 at 1. Oracle's unjustifiable delay in raising this issue is another independent reason to deny the motion.

### E. At Minimum, The Court Should Allow Rimini's Clients The Opportunity To Protect Their Interests.

Finally, should the Court be inclined to grant Oracle's motion notwithstanding the foregoing reasons to deny it, Rimini respectfully requests that the Court put in place a notice procedure to protect the interests of third-party clients that rely upon Rimini and the Court to protect their identities. Specifically, Rimini requests time to notify its clients of any such order to comply with Rimini's contractual rights and to give its clients the opportunity to intervene to protect their interests. Rimini proposes the following procedure: First, Rimini should be given five days to provide notice to its clients. Second, its clients should be given ten days to submit *in camera* requests to the Court to request that their identities not be disclosed. If a client does *not* submit such a request, then that client's name could be disclosed, subject to the Confidential designation under the protective order. If the client does submit such a request, however, the Court should not modify the Highly Confidential designation as related to that client's identity.

DEFENDANTS' OPPOSITION TO ORACLE'S MOTION TO RE-DESIGNATE RIMINI STREET'S CUSTOMER LIST

## IV. CONCLUSION

For the foregoing reasons, and in the interests of fundamental fairness, the Court should deny Oracle's motion.

DATED: August 24, 2015         LEWIS ROCA ROTHGERBER LLP


By: ___W. West Allen___
W. West Allen

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>FRED NORTON (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>fnorton@bsfllp.com<br>kringgenberg@bsfllp.com | BINGHAM MCCUTCHEN LLP<br>GEOFFREY M. HOWARD (*pro hac vice*)<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>Three Embarcadero Center<br>San Francisco, CA 94111-4067<br>Telephone: (415) 393-2000<br>Facsimile: (415) 393-2286<br>geoff.howard@bingham.com<br>thomas.hixson@bingham.com<br>kristen.palumbo@bingham.com<br><br>ORACLE CORPORATION<br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>500 Oracle Parkway<br>M/S 5op7<br>Redwood City, CA 94070<br>Telephone: (650) 506-4846<br>Facsimile: (650) 506-7114<br>jim.maroulis@oracle.com |

By: __/s/ Judy Estrada__

DEFENDANTS' OPPOSITION TO ORACLE'S MOTION TO RE-DESIGNATE RIMINI STREET'S CUSTOMER LIST