UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ORACLE USA, INC.; *et al.*, ) | |
| ) | |
| Plaintiffs, ) | 2:10-CV-00106-LRH-PAL |
| ) | |
| v. ) | |
| ) | ORDER |
| RIMINI STREET, INC., a Nevada ) | |
| corporation; SETH RAVIN, an individual; ) | |
| ) | |
| Defendants. ) | |

Before the court is plaintiffs Oracle USA, Inc.; Oracle America, Inc.; and Oracle International Corporation's (collectively "Oracle") motion to determine disputed jury instructions. Doc. #575.[1] Defendants Rimini Street, Inc. ("Rimini") and Seth Ravin ("Ravin") (collectively "defendants") filed an opposition to the motion (Doc. #617) to which Oracle replied (Doc. #670).

**I.  Facts and Procedural History**

This action has an extensive factual and procedural history. In brief, plaintiff Oracle develops, manufacturers, and licenses computer software. Oracle also provides support services to customers who license its software. Defendant Rimini is a company that provides similar software support services to customers licensing Oracle's software and competes directly with Oracle to provide these services. Defendant Ravin is the owner and CEO of defendant Rimini.

---

[1] Refers to the court's docket number.

On January 25, 2010, Oracle filed a complaint for copyright infringement against defendants alleging that Rimini copied several of Oracle's copyright-protected software programs onto its own computer systems in order to provide software support services to customers. This action is currently set for trial in September 2015. To expedite certain issues for trial, Oracle filed the present motion to determine disputed jury instructions. Doc. #575.

## II. Discussion

In the motion, Oracle asks the court to settle, in advance of trial, two disputed jury instructions concerning Oracle's software license agreements. The court shall address each proposed instruction below.

### A. Proposed Instruction #1

Oracle's first proposed instruction[2] is an express license instruction. Oracle contends that an express license instruction is necessary in this action as defendants have raised the express license defense to several of Oracle's claims for copyright infringement. Oracle further argues that its proposed instruction is appropriate because it includes language identifying the parties' respective evidentiary burdens as well as specifically clarifying that defendants' express license defense is based solely on agreements between Oracle and defendants' customers rather than on any agreements between Oracle and Rimini itself.

Defendants agree with Oracle that an express license instruction is appropriate in this action. But, defendants contend that Oracle's proposed instruction misstates the applicable law and mischaracterizes the parties' evidentiary burden. Further, defendants argue that there is no reason to include language in the instruction that defendants do not have their own software licenses as the

---

[2] Where Defendants assert a license defense to copyright infringement, it is the Defendants' burden to prove by a preponderance of the evidence the existence of a specific license provision that authorized each individual copy or other infringing work that Rimini Street made. If Defendants satisfy this burden, then it becomes Oracle's burden to prove by a preponderance of the evidence that Rimini Street's copying or other infringement was not authorized by the express license.
  Rimini Street did not have any licenses of its own with Oracle relevant to the issues you are deciding. Oracle enters into written license agreements with its customers that allow the customers to use copyrighted Oracle software, and have access to support materials for that Oracle software. Defendants claim that these customer license agreements authorized certain of the conduct that Oracle alleges constituted copyright infringement.

2

1  court has already ruled at summary judgment that defendants may use their customers' software
2  licenses as part of their express license defense. As such, defendants have proposed their own
3  counter instruction.[3]
4        The court has reviewed the documents filed on this issue and agrees with the parties that an
5  express license instruction is appropriate in this action. However, the court finds it premature to
6  settle the exact language of the instruction until the court has heard all the arguments and evidence
7  in this case. That being said, the court shall provide some guidance to the parties on this issue to
8  help the parties prepare for trial.
9        First, the court notes that Oracle's proposed instruction, or language similar to that proposed
10 by Oracle, fairly and accurately sets forth the parties' evidentiary burdens. Under an express license
11 defense, the defendant has the initial burden to identify any license provision(s) that it believes
12 excuses its alleged infringement. *Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823, 831
13 (C.D. Cal. 1998). At trial, this burden can be met under the preponderance of the evidence
14 standard. If met, the burden then shifts to the plaintiff to show by a preponderance of the evidence
15 that the identified license provision(s) does not actually authorize the defendant's alleged activities.
16 *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1156 (9th Cir. 2006). Oracle's proposed
17 instruction properly identifies these burdens. Defendants' instruction, in contrast, includes
18 language stating that they have already met their burden to identify any applicable license.
19 However, this is a factual determination which rests solely within the province of the jury. As such,
20 defendants' proposed language is improper.
21
22     [3] Where Defendants assert a license defense to copyright infringement, the Defendants have the initial burden to
23 identify any license provision(s) they believe excuses the infringement. If Defendants satisfy this burden, then it becomes Oracle's burden to prove by a preponderance of the evidence that Rimini Street's copying or other infringement was not authorized by the express license.
24     Oracle enters into a written license agreements with its customers that allow the customers to use copyrighted Oracle software and have access to support materials for that Oracle software. Defendants are permitted under the law to
25 assert those license agreements as a defense, and so have satisfied their initial burden. Defendants claim that these customer license agreements authorized certain of the conduct that Oracle alleges constituted copyright infringement, and it is
26 Oracle's burden to show that the copying it alleges was not authorized by the agreements.

3

Second, as to the inclusion of specific language that Rimini may assert its customers' licenses or that Rimini did not have its own software licenses with Oracle, the court cannot determine at this time whether jury instructions on these issues are necessary. Although it is undisputed that defendants do not have their own software licenses with Oracle for any of the copyrighted software programs at issue in this action, the court has previously found as a matter of law that defendants may assert their customers' software licenses in support of their infringement defense. The court presumes that this issue will be well covered by evidence at trial and will instruct as necessary after having considered the evidence presented.

## B. Proposed Instruction #2

Oracle's second proposed instruction[4] is an instruction interpreting several key terms from

---

[4] I will now instruct you regarding the terms of the license agreements in this case. It is my duty as the judge to instruct you as to what the license agreements permitted and what they prohibited. You must follow my instructions regarding the meaning of the license agreements. You may not determine that the license agreements have some other meaning based on any evidence or argument that you have heard during the trial.

Oracle's license agreements allowed Oracle's customers - referred to as "licensees" - to copy the licensed software for use in connection with their own internal business operations, subject to certain limitations. Oracle's license agreements also allowed Oracle's customers to hire third parties to provide maintenance and support in connection with the licensed software, again subject to certain prohibitions. Any copying, preparation of derivative works, or distribution outside the scope of those limitations was prohibited by the license agreements.

I will now instruct you regarding the meaning of the license agreements for the three categories of software and support materials as to which Defendants assert a license defense in this case: PeopleSoft, Siebel, and J.D. Edwards.

With respect to PeopleSoft software and support materials:
    The licenses prohibited third parties like Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's own computer systems. This means that the licenses prohibited Rimini Street from, among other things, copying, preparing derivative works from, or distributing PeopleSoft software or support materials in developing or testing software updates for other Rimini Street customers.

With respect to Siebel software and support materials:
    For Rimini Street's Siebel customers, the meaning of the Siebel license agreements is as follows:
    • First, the licenses prohibited third parties like Rimini Street from copying Siebel software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's computer systems. This means that the licenses prohibited Rimini Street from, among other things, copying Siebel software or support materials to support another Rimini Street customer.
    • Second, the licenses permitted third parties like Rimini Street to make a reasonable number of copies of the Siebel software and support materials on Rimini Street's computer systems exclusively for archival, emergency back-up, or disaster recovery purposes. This means that the licenses prohibited Rimini Street, among other things, from modifying the software or copying Siebel software and support materials on Rimini Street's computer systems for any non-archival, -backup, or -disaster recovery purposes. An

4

Oracle's PeopleSoft, J.D. Edwards, and Siebel software licenses. Oracle argues that an instruction interpreting and defining the software licenses is necessary to prevent juror confusion and to maintain the same legal interpretations of the licenses as found by the court during summary judgment thereby preventing defendants from seeking new interpretations of the licenses from the jury.

In opposition, defendants argue that a jury instruction explaining the unambiguous terms of the various licenses is unnecessary because it would usurp the role of the jury in determining what the different licenses mean and whether defendants' conduct violated those licenses. Further, defendants argue that Oracle's instruction improperly establishes blanket interpretations of the licenses even though the different licenses for the same copyrighted software programs vary widely in their terms. However, defendants' argue that if the court is nevertheless inclined to give an instruction interpreting the licenses, the court should use defendants separately proposed

---

archival, back-up, or disaster recovery copy of the software is an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost.

<u>With respect to J.D. Edwards software and support materials:</u>
For Rimini's J.D. Edwards customers, the meaning of the J.D. Edwards license agreements is as follows:
- First, the licenses prohibited third parties like Rimini Street from copying J.D. Edwards software or support materials other than to support the specific licensee's own internal data processing operations on the licensee's computer systems. This means that the licenses prohibited Rimini Street, among other things, from copying J.D. Edwards software or support materials to support other Rimini Street customers.
- Second, the licenses permitted Rimini Street to copy J.D. Edwards software and support materials on Rimini Street's computer systems to the extent necessary for the licensee's archival needs. This means that the licenses prohibited Rimini Street, among other things, from modifying the software or copying J.D. Edwards software and support materials on Rimini Street's computer systems from any non-archival purposes. An archival copy of the software is an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost.
- Third, the licenses prohibited Rimini Street from accessing the J.D. Edwards source code.

<u>With respect to Oracle Database software:</u>
No license permitted Rimini Street's copying of Oracle Database software.

5

instruction.[5]

The court has reviewed the parties' briefs on this issue and finds that an instruction interpreting the various Oracle software licenses is appropriate and will help clarify the issues for the jury. In particular, the court notes that construing the scope of a license is principally a matter of contract interpretation. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989). In fact, absent an ambiguity in the license terms, the court should instruct the jury as to the meaning of the license terms. *See Rio Properties, Inc. v. Stewart Annoyances, Ltd.*, No. CV-S-01-0459-LRH-PAL. Here, it is undisputed by the parties that the terms sought to be interpreted are unambiguous. *See* Doc. ##575, 617. As such, the court finds it necessary and appropriate to give the jury an instruction interpreting the various software license terms.

---

[5] I will now instruct you regarding the terms of the license agreements in this case.
Oracle's license agreements allowed Oracle's customers - referred to as "licensees" - to copy the licensed software, subject to certain limitations. Oracle's license agreements also allowed Oracle's customers to hire third parties such as Rimini Street to provide support services in connection with the licensed software, again subject to certain prohibitions.
I will now instruct you regarding the meaning of the license agreements for PeopleSoft, Siebel, and J.D. Edwards.

With respect to PeopleSoft software and support materials:
The rights granted by the PeopleSoft licenses to the licensee are not limited or restricted to any specific physical embodiment of the software, such as Oracle's provided software installation media. Rather, the license rights extend to and apply equally to the copies of the copyrighted software regardless of the specific installation media used to make those copies.
The PeopleSoft licenses permit the licensee to make a reasonable number of copies of the software for: (I) the licensee's internal data processing operations; (ii) archive and emergency backup purposes; and/or (ii) disaster recovery testing purposes. The PeopleSoft licenses further permit the licensee to modify or merge the software with other software. The PeopleSoft licenses further permit the licensee to make a reasonable number of copies of the PeopleSoft documentation.
In addition, the PeopleSoft licenses permit disclosure of the software to the licensee's employees and to third-party consultants, like Rimini Street. The PeopleSoft licenses further permit third parties, like Rimini Street, to access and use PeopleSoft software and support materials to provide services to the licensee concerning licensee's use of the software. The Court, however, has held the PeopleSoft licenses did not contain express provisions allowing Rimini Street to copy PeopleSoft software or support materials on or from Rimini Street's own computer systems.

With respect to Siebel software and support materials:
The Siebel licenses permit third parties, like Rimini Street, to copy a licensee's Siebel software and support material onto the third party's own computer systems for archival, emergency backup, and/or disaster recovery purposes, as well as related testing.

With respect to J.D. Edwards software and support materials:
The J.D. Edwards licenses permit third parties like Rimini Street, who were engaged by a licensee to provide support or other services, to copy J.D. Edwards software and support materials onto their computer systems when necessary for the licensee's archival needs and to support the licensee's users.

6

1    Once again, however, the court finds it premature to settle the exact language of the jury
2 instruction until the court has heard all the arguments and considered all the evidence in this action.
3 For example, the parties dispute whether the PeopleSoft and Oracle Database licenses are still an
4 issue in this action even though the court has already found that defendants' engaged in copyright
5 infringement of these products. Thus, until the court has heard the evidence at trial, the court
6 cannot determine whether it will be necessary to instruct the jury on these licenses.

7    Similarly, the court recognizes the need to construe the J.D. Edwards and Siebel licenses for
8 the jury. But, as defendants contend that some of the licenses vary in their terms, the court needs to
9 hear the evidence relevant to these licenses in order to determine whether alleged differences are
10 material to the license terms the court needs to define and interpret for the jury. Thus, the court
11 finds that it cannot settle this instruction at this time. However, the court shall allow the parties to
12 re-submit proposed jury instructions on these issues when final instructions are considered by the
13 court.

15    IT IS THEREFORE ORDERED that plaintiffs' motion to determine disputed jury
16 instructions (Doc. #575) is GRANTED in-part and DENIED in-part in accordance with this order.
17 The parties may re-submit proposed jury instructions on these issues when final instructions are
18 considered by the court.

19    IT IS SO ORDERED.
20    DATED this 26th day of August, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE