1

2

3

4

5

6                            UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

9    ORACLE USA, INC.; *et al.*,                )
                                                )
10                       Plaintiffs,            )        2:10-CV-00106-LRH-PAL
                                                )
11   v.                                         )
                                                )        <u>ORDER</u>
12   RIMINI STREET, INC., a Nevada              )
     corporation; SETH RAVIN, an individual;    )
13                                              )
                          Defendants.           )
14   _____)

15          Before the court is plaintiffs Oracle USA, Inc.; Oracle America, Inc.; and Oracle

16   International Corporation's (collectively "Oracle") motion in limine to exclude expert testimony.

17   Doc. #653.[1] Defendants Rimini Street, Inc. ("Rimini") and Seth Ravin ("Ravin") (collectively

18   "defendants") filed an opposition to the motion. Doc. #694.

19   **I.      Facts and Procedural History**

20          This action has an extensive factual and procedural history. In brief, plaintiff Oracle

21   develops, manufactures, and licenses computer software. Oracle also provides support services to

22   customers who license its software. Defendant Rimini is a company that provides similar software

23   support services to customers licensing Oracle's software and competes directly with Oracle to

24   provide these services. Defendant Ravin is the owner and CEO of defendant Rimini.

25

26          _____

             [1] Refers to the court's docket number.

On January 25, 2010, Oracle filed a complaint for copyright infringement against defendants alleging that Rimini copied several of Oracle's copyright-protected software programs onto its own computer systems in order to provide software support services to customers. This action is currently set for trial in September 2015. Oracle filed the present motion in limine to allow the court to address certain evidentiary issues before trial. *See* Doc. #653.

**II.   Legal Standard**

**A.  Motion in Limine**

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2012). The decision on a motion in limine is consigned to the district court's discretion - including the decision of whether to rule before trial at all. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless "the evidence [is] inadmissible on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on these motions are not binding on the court, and the court may change such rulings in response to developments at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984).

Generally, all relevant evidence is admissible. FED. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008).  However, the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. Further, evidence may be excluded when there is a significant danger that the jury might base its decision on emotion, or

2

when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

## B. Expert Testimony

The admission or exclusion of expert testimony is within the broad discretion of the trial court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 123, 152 (1999). Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, an expert witness can testify about his or her opinion on a matter if "(a) the expert's . . .  specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. Evid. 702. As gatekeeper, a district court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

> Although "[m]any factors will bear on the inquiry," some of the considerations considered relevant by the Supreme Court to such an assessment include: (a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific community.

*Boyd v. City and Cnty. of S.F.*, 576 F.3d 938, 945 (9th Cir. 2009) (citing *Daubert*, 509 U.S. at 593-94). A trial court "is not required to rigidly apply the specific factors relating to expert scientific evidence to cases involving expert specialized knowledge evidence." *Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-cv-0294, 2006 WL 3248394, at *2 (D. Nev. Nov. 7, 2006) (citing *United States v. Hankey*, 203 F.3d 1160, 1168-69 (9th Cir. 2000)). Further, "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method" and "[p]roposed

1    testimony must be supported by appropriate validation." *Daubert*, 509 U.S. at 590. Of course, the

2    focus must be solely on the principles and methodology and not on the conclusions that the expert

3    generates. *Id*. at 595. When an expert meets this threshold, the expert may testify and it is up to the

4    jury to determine how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-

5    65 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary

6    evidence, and attention to the burden of proof, not exclusion").

7    **III.    Discussion**

8         In its motion in limine to exclude expert testimony, Oracle seeks to exclude - in whole or in

9    part - the expert opinion and testimony of defendants' experts Scott Hampton, James Benge,

10   Brooks Hilliard, and David Klausner. The court shall address each expert below.

11        **A.  Scott Hampton**

12        Scott Hampton ("Hampton") is defendant's rebuttal expert to Oracle's damages expert

13   Elizabeth Dean ("Dean"). As part of his opinion, Hampton rebuts Dean's "actual damages" figures

14   by estimating how much it would have cost Rimini to build a support system that would have

15   avoided infringement of Oracle's copyrights. As part of his expert testimony and opinion, Hampton

16   opines that for an outlay of $7.6 million in capital for personnel and development costs, Rimini

17   could have built a remote service support model that would not have infringed Oracle's software

18   copyrights. Hampton terms this as Rimini's "avoided costs" damages figure and opines that it is

19   the appropriate measure of damages for Rimini's infringement rather than Dean's "lost profits"

20   figure.

21        In its motion to exclude, Oracle raises several reasons to exclude Hampton's "avoided

22   costs" opinion which are addressed more thoroughly below.

23        **i.   "Avoided Costs" Opinion**

24        Oracle initially challenges Hampton's "avoided costs" opinion on the basis that it is an

25   improper measure of damages for copyright infringement. Under the Copyright Act, a plaintiff is

26   entitled to recover (1) "actual damages suffered by him or her as a result of the infringement" and

4

(2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. §504(b). "Actual damages" under the Copyright Act can be awarded in the form of either "lost profits" or the cost of a "hypothetical license" for the copyrights. *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014).

In its motion, Oracle argues that, the "avoided costs" damages measure is not a measure of damages under either the "lost profits" theory or the "hypothetical license" theory of the Copyright Act. Thus, Oracle argues that Hampton's opinion will not help the jury determine the issue of damages and should thereby be excluded under Rule 702. *See* Fed. R. Evid. 702 (stating that expert testimony should be excluded if it will not "help the trier of fact to understand the evidence or to determine a fact in issue.").

The court has reviewed Oracle's motion and finds that Hampton's "avoided costs" opinion is relevant to the issue of damages under the Copyright Act, and therefore, the court shall not exclude Hampton's testimony and expert opinion on this issue. In his expert report, Hampton states that his "avoided costs" figure calculates the value of use of Oracle's licenses to Rimini. Value of use under the Copyright Act is directly related to the measure of a hypothetical license which is "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work." *Oracle*, 765 F.3d at 1087. Hampton opines that because the calculated cost to have built an allegedly non-infringing alternative is $7.6 million dollars, this is the maximum amount that defendants would have been willing to pay to license the software licenses in a hypothetical negotiation because a prospective licensee like Rimini would not pay Oracle a sum for a license that far exceeded the cost of accomplishing the same conduct without a license. Thus, the value of a hypothetical license to Rimini is the amount that it would have cost Rimini to implement a non-infringing alternative.

At trial, Oracle is free to challenge Hampton's ultimate conclusions, for instance by arguing that it would have cost Rimini more than $7.6 million to create a non-infringing alternative, or that Rimini would not have considered a non-infringing alternative at all. But Oracle's challenge is not

1  a valid basis to exclude defendants' from presenting this "avoided costs" evidence to the jury.

2  Therefore, the court shall deny Oracle's motion as to this challenge.

3       **ii.  Lack of Adequate Basis**

4       Oracle also argues that Hampton's "avoided cost" opinion should be excluded because it

5  lacks an adequate basis to be reliable. In his expert report, Hampton opines that Rimini could have

6  operated without infringing Oracle's copyrights by paying $7.6 million to hire additional

7  employees, primarily in India. Hampton bases his opinion on labor and development costs given to

8  him by Rimini employee Brooks Hilliard ("Hilliard"), and multiplying the list of additional

9  necessary employees supplied by Hilliard by the salaries Hampton found on the internet for salary

10  information in India.

11       Oracle argues that Hampton's opinion is not reliable because he simply repeats information

12  provided to him by Rimini employees and failed to conduct any independent verification of the

13  employee numbers necessary to build a non-infringement alternative.

14       However, the court finds that Oracle's challenge goes to the weight that the jury should

15  give Hampton's opinion at trial, and not its admissibility. Oracle is in essence challenging

16  Hampton's ultimate conclusions and a court should not strike expert testimony under *Daubert*

17  simply because the parties dispute the expert's ultimate conclusions. *See Daubert*, 509 U.S. at 594-

18  595. At trial, Oracle will have the opportunity to cross-examine Hampton on the factual bases and

19  assumptions used to form his opinion and the jury may afford Hampton's opinion less weight, if

20  any. Further, Oracle will also have the opportunity to cross-examine Rimini's other experts,

21  including Hilliard. Therefore, the court shall deny Oracle's motion as to this issue.

22       **iii. Hampton's Legal Opinions**

23       Oracle's final challenge to Hampton's testimony and expert opinion is that it contains

24  various legal conclusions and improper legal statements that are not based on the applicable law.

25  Initially, the court notes that no expert shall be allowed to make legal conclusions in this action,

26  particularly if those conclusions are inaccurate or based on improper law. However, the court finds

1   that this challenge is best addressed at trial when the court can consider specific objections by

2   Oracle to specific testimony by Hampton. Therefore, the court shall deny this challenge without

3   prejudice.

4        **B.  James Benge**

5        James Benge ("Benge") is a current employee of defendant Rimini. Benge has offered

6   expert testimony concerning the availability of a non-infringing business model for Rimini and

7   estimating the costs for such a business model. In particular, Benge opines that with an additional

8   number of employees, Rimini could have serviced all its customers using an "all-remote" system

9   without the need for any software to be housed or kept on Rimini's servers. Such a remote system

10  would supposedly allow Rimini to service customers without installing any software onto Rimini's

11  systems, instead accessing Oracle's software on Rimini's clients' system through remote

12  connections over the internet. In its motion to exclude, Oracle argues that Benge's opinions should

13  be excluded because there is not a reliable basis or methodology for his opinions. The court

14  disagrees.

15       Although Oracle challenges Benge's assertions regarding the number of employees needed

16  to service all of Rimini's customers and argues that it is based exclusively on Rimini's experience

17  servicing clients at a time when using remote access technology was only a last resort when no

18  other servicing options were available. Benge extrapolated from Rimini's past experience in

19  remote access that it would have been possible for Rimini to create and use remote access for all

20  its clients. Oracle argues that while Benge is experienced in PeopleSoft development and

21  knowledgeable about many of Rimini support processes, his experience does not transform his

22  educated guesses about the availability of a remote access system into a reliable opinion.

23       However, Oracle's claim that Rimini could not have developed a non-infringing remote

24  support model at the time is not a proper basis for excluding Benge's testimony. Rather, this is a

25  fact question to be determined by the jury. Further, Oracle's challenges go to the weight of the

26  evidence and Benge's ultimate conclusions. Thus, the court shall deny Oracle's motion as to this

7

issue at this time. Any specific concerns or objections Oracle has to Benge's testimony may be raised at trial.

### C.  Brooks Hilliard

Brooks Hilliard ("Hilliard") is defendants' rebuttal expert to Oracle's expert Professor Randall Davis. Hilliard is a certified management consultant and a certified computing professional. His opinions, detailed in a 68-page expert report, both rebut specific assertions made by Oracle's expert and provides relevant industry context. In particular, Hilliard opines on various available support options and whether particular practices Rimini engaged in are normal customs or practices in the industry.

In its motion, Oracle argues that this testimony is inadmissible because it is improper parol evidence offered solely to interpret the software licenses at issue in this action. Further, Oracle argues that because the court has already granted summary judgment in favor of Oracle on Rimini's third and sixth affirmative defenses for implied license and consent, evidence and testimony about industry custom and practice is no longer relevant to any remaining claims.

Initially, the court notes that it has already addressed the issue of parol evidence in a separate order. Further, Oracle's present motion is impermissibly vague. Oracle argues generally that Hilliard's expert report contains improper parol evidence, but Oracle does not identify any specific statements or opinions in Hilliard's expert report that relate directly or indirectly to interpreting the software licenses. Defendants state that they are not proffering Hilliard's expert testimony to interpret the software licenses agreements. Therefore, the court shall deny Oracle's challenge on this issue at this time.

Additionally, the court finds that Hilliard's testimony about industry standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful infringement. In his expert report, Hilliard provides testimony and analysis of the ordinary practices in the industry. The court finds that such testimony will assist the jury in determining whether defendants' actions were willful. Therefore, the court shall deny Oracle's motion to exclude the testimony of Hilliard. Any

specific objections Oracle has to Hilliard's testimony or expert report may be raised at trial.

**D. David Klausner**

David Klausner ("Klausner") is an electrical engineer with development and consulting experience in the computer and software industry. Klausner is defendants' rebuttal expert to Oracle's technical expert, Christian Hicks. Klausner opines on the functionality and impact of Rimini's downloading tools and utilities. Further, Klausner opines on the industry practice about downloading tools. In its motion to exclude, Oracle argues that similar to the opinion of expert Hilliard, Klausner's opinion contains improper parol evidence and is irrelevant to the remaining claims at issue in this action.

As addressed above with expert Hilliard, Oracle's motion is impermissibly vague. *See Supra*, Section C. Further, Klausner's testimony and opinion on industry standards, custom, and practice is relevant to defendants' wilfulness in infringing Oracle's copyrights. The court finds that such testimony will assist the jury in determining whether defendants' actions were willful. Therefore, the court shall deny Oracle's motion to exclude the testimony of Klausner. Any specific objections Oracle has to Klausner's testimony or expert report may be raised at trial.

IT IS THEREFORE ORDERED that plaintiff's motion in limine to exclude expert testimony (Doc. #653) is DENIED in accordance with this order.

IT IS SO ORDERED.

DATED this 3rd day of September, 2015.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

9