1

2   UNITED STATES DISTRICT COURT

3   DISTRICT OF NEVADA

4

5   ORACLE USA, INC., a Colorado corporation;
    ORACLE AMERICA, INC., a Delaware
6   corporation; and ORACLE INTERNATIONAL
    CORPORATION, a California corporation,
7
               Plaintiffs,
8
        v.
9   RIMINI STREET, INC., a Nevada corporation;
    AND SETH RAVIN, an individual,
10
               Defendants.

11

Case No. 2:10-cv-0106-LRH-PAL

**RIMINI STREET INC.'S AND SETH
RAVIN'S [PROPOSED]
JURY INSTRUCTIONS**

12

13

14   DATED: _____

15

_____
Hon. Larry R. Hicks
United States District Court Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

1.   **PRELIMINARY INSTRUCTION ON ORACLE**

There are three separate Oracle plaintiffs in this case:  Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation.  Not all plaintiffs assert all claims.  Oracle USA, Inc. does not assert any claims.  When I refer to "Oracle," I am referring to both "Oracle America" and "Oracle International Corporation."  If I refer to a plaintiff by its specific name, it is because only that plaintiff asserts that claim.  You must keep the different plaintiffs straight when answering the questions asked on the verdict form.  For example, only Oracle International Corporation asserts copyright infringement.  Therefore, when asked whether Oracle International Corporation has established copyright infringement, you must make sure that plaintiff Oracle International Corporation has presented specific evidence establishing its claim; evidence related to Oracle America is not necessarily relevant to Oracle International Corporation's copyright infringement claim.

.

1

JURY INSTRUCTIONS

2.  **BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  If the evidence submitted by both sides is balanced, then the party with the burden of proof has not demonstrated a preponderance of the evidence.  For example, if you find that Oracle's claim is equally likely as unlikely, then there is no preponderance of the evidence, and you must find for Rimini Street.

You should base your decision on all of the evidence, regardless of which party presented it.

Authority:  Ninth Circuit Manual of Model Jury Instructions, Instruction 1.3 [referring to Civil and 2007 instructions throughout] (first and last sentence verbatim, with additional explanation pursuant to the authority that follows); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) ("Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against.").

3.    **COPYRIGHT—DEFINED**

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

1)    authorize, or make additional copies, or otherwise reproduce the copyrighted work in copies;

2)    recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work; and

3)    distribute copies of the copyrighted work to the public by sale or other transfer of ownership or by rental or lease or lending.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes the author of the work, an assignee, or an exclusive licensee. In general, copyright law protects against distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.  Even though one may acquire a copy of, or a license to use, the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work.

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.1  (verbatim).

JURY INSTRUCTIONS

1    4.    **COPYRIGHT—SUBJECT MATTER—GENERALLY**

2    The works involved in this trial include:

3    1)    literary works, in which words, numbers, or other verbal or numerical symbols or

4    indicia are expressed in such material objects like books or manuscripts; and

5    2)    computer programs, that is, a literary work composed of a set of statements or

6    instructions to be used directly or indirectly in a computer to bring about a certain

7    result.

8    You are instructed that a copyright may be obtained in a list of printed materials and

9    computer programs, which is reproduced in your juror handbook.

10   [Dkt. No. 527.]

11

12   These works can be protected by the copyright laws.   Only that part of the works

13   comprised of original works of authorship fixed in any tangible medium of expression from

14   which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid

15   of a machine or device, is protected by the Copyright Act.

16   Copyright protection for an original work of authorship does not extend to any idea,

17   procedure, process, system, method of operation, concept, principle, or discovery, regardless of

18   the form in which it is described, explained, illustrated, or embodied.

19   Under federal law, software installation media is not protected under federal copyrights.

20   This is because software copyrights are separate and distinct from the physical objects on which

21   they may be embodied.

22   Thus, the rights granted by certain software licensing agreements are not limited or

23   restricted to any specific physical embodiment of the software, like Oracle's software installation

24   media.  The license rights contained in certain customer licenses apply equally to the copies of

25   the copyrighted software maintained on Rimini Street's systems regardless of whether Rimini

26   Street used the specific installation media provided by Oracle to make those copies.

27

28   Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.2  (modified to fit facts of
case); Summary Judgment Order, Feb. 13, 2013, Dkt. No. 474 at 10; *Harris v. Emus Records
Corp.*, 734 F.2d 1329, 1336 (9th Cir. 1984) ("The ownership of the copyright is separate and

1   independent from ownership of the material object in which it is embodied."); *see also Microsoft*

2   *Corp. v. AT&T Corp.*, 550 U.S. 437, 449 (2007) (holding that copyrighted software "is an idea without physical embodiment"); Dkt. No. 527.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

1    5.    **COPYRIGHT INFRINGEMENT—ORIGINALITY**

2        An original work may include or incorporate elements taken from prior works, works

3    from the public domain, or works owned by others, with the owner's permission.

4        The original parts of the plaintiff's work are the parts created:

5        1)    independently by the work's author, that is, the author did not copy it from

6            another work; and

7        2)    by use of at least some minimal creativity.

8    In copyright law, the "original element" of a work need not be new or novel.

9

10    Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.12  (verbatim).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    6.    **COPYRIGHT INTERESTS—DERIVATIVE WORK**

2        A copyright owner is entitled to exclude others from creating derivative works based

3    upon the owner's copyrighted work.  The term derivative work refers to a work based on one or

4    more pre-existing works, such as any other form in which the pre-existing work is recast,

5    transformed, or adapted.  Accordingly, the owner of a copyrighted work is entitled to exclude

6    others from recasting, transforming or adapting the copyrighted work without the owner's

7    permission.

8        If the copyright owner exercises the right to allow others to create a derivative work

9    based upon the copyrighted work, this derivative work may also be copyrighted.  Only what was

10   newly created, such as the editorial revisions, annotations, elaborations, or other modifications to

11   the pre-existing work, is considered to be the derivative work.

12       Copyright protection of a derivative work covers only the contribution made by the

13   author of the derivative work.  If the derivative work incorporates pre-existing work by others,

14   the derivative author's protection is limited to elements added by the derivative author to the pre-

15   existing work of others.

16       The owner of a derivative work may enforce the right to exclude others in an action for

17   copyright infringement.

18

19   Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.13 (verbatim).

20

21

22

23

24

25

26

27

28

7                                    Case No. 2:10-cv-0106-LRH-PAL

1    7.    **COPYRIGHT INFRINGEMENT**

2        Oracle International Corporation claims ownership of certain copyrights and seeks

3    damages against Rimini Street and Seth Ravin for copyright infringement.  Rimini Street and

4    Seth Ravin deny infringing the copyright and assert an affirmative license defense to some of the

5    conduct at issue.  To help you understand the evidence in this case, I will explain some of the

6    legal terms you will hear during this trial.

7

8    Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.0 (modified to reflect facts
     of case and serve as transition to elements).

JURY INSTRUCTIONS

1    8.    **COPYRIGHT—DIRECT INFRINGEMENT**

2        To prevail on its direct infringement claim in the circumstances of this case, Oracle

3    International Corporation must prove the following by a preponderance of the evidence:

4        1)    Oracle International Corporation is the owner or exclusive licensee of a valid

5            copyright in an original work;

6        2)    Rimini Street copied original elements from, created derivative works from, or

7            distributed the original work; and

8        3)    Rimini Street did not have permission to copy the original elements of the

9            copyrighted work.

10        The parties have agreed that Oracle International Corporation owns or is the exclusive

11    licensee of certain registered copyrighted works at issue in this case, which means that Oracle

12    International Corporation has proven the first element for those specific registered works only.

13        If you find that Oracle International Corporation has proven all of these elements for each

14    and every copyrighted work on which it seeks damages, your verdict should be for Oracle

15    International Corporation.  If, on the other hand, Oracle International Corporation has failed to

16    prove a single one of these elements, your verdict should be for Rimini Street.  Rimini Street

17    claims that its clients' licenses granted it permission to make the copies it did.  If you agree that

18    the licenses allowed Rimini Street to make the copies it did, then you must find that Rimini

19    Street did not infringe Oracle International Corporation's copyrights.

20

21    Authority:  Amended Stipulation Re Copyright Registrations and Copies and Order Thereon,
Dkt. No. 401 (Sept. 12, 2012) (reflecting stipulation as to first element); Ninth Circuit Manual of

22    Model Jury Instructions, Nos. 17.4, 17.5 (modified to reflect facts and stipulation in this case;
expanded element 1 to incorporate validity instruction because it is stipulated); *see also Swirsky*

23    *v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, ---
F.3d ---, 2015 U.S. App. LEXIS 13197 (9th Cir. July 29, 2015).

24

25

26

27

28

1    9.    **COPYRIGHT—ACCESS AND SUBSTANTIAL SIMILARITY**

2    Instruction 8 states that Oracle International Corporation has the burden of proving that

3    Rimini Street copied original elements from Oracle International Corporation's copyrighted

4    work.   Oracle International Corporation may show Rimini Street copied from the work by

5    showing by a preponderance of the evidence that Rimini Street had access to Oracle International

6    Corporation's copyrighted work and that there are substantial similarities between Rimini

7    Street's work and original elements of Oracle International Corporation's work.

8

9    <u>Authority</u>:   Ninth Circuit Manual of Model Jury Instructions, No. 17.15 (modified to identify
party names).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

10.   **COPYRIGHT—CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.  If you find that Rimini Street infringed Oracle International Corporation's copyright in a particular work, you may proceed to consider Oracle International Corporation's claim that Seth Ravin contributorily infringed that copyright. To prove copyright infringement, the plaintiff must prove both of the following elements by a preponderance of the evidence:

1)    Seth Ravin knew or had reason to know of Rimini Street's infringing activity; and

2)    Seth Ravin intentionally induced or materially contributed to Rimini Street's infringing activity.

If you find that Oracle International Corporation proved both of these elements, you should find for Oracle and against Seth Ravin on the copyright infringement claim as to contributory infringement.  If, on the other hand, Oracle International Corporation has failed to prove either of these elements, you should find for Seth Ravin and against Oracle International Corporation on the copyright infringement claim as to contributory infringement.

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.21 (modified for clarity).

1    11.    **COPYRIGHT—VICARIOUS INFRINGEMENT**

2        If you find that Rimini Street infringed Oracle International Corporation's copyright in a

3    particular work, you may consider Oracle International Corporation's claim that Seth Ravin

4    vicariously infringed that copyright.  Oracle International Corporation has the burden of proving

5    each of the following by a preponderance of the evidence:

6        1)    Seth Ravin profited directly from Rimini Street's infringing activity;

7        2)    Seth Ravin had the right and ability to supervise or control Rimini Street's

8              infringing activity;  and

9        3)    Seth Ravin failed to exercise that right and ability.

10       If you find that Oracle International Corporation proved each of these elements, you

11   should find for Oracle International Corporation and against Seth Ravin on the copyright

12   infringement claim as to vicarious infringement.  If, on the other hand, Oracle International

13   Corporation has failed to prove any of these elements, you should find for Seth Ravin and

14   against Oracle on the copyright infringement claim as to vicarious infringement.

15

16   Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 17.20 (modified for clarity).

17

18

19

20

21

22

23

24

25

26

27

28

1    12.    **COPYRIGHT MISUSE DEFINED**

2    Copyright misuse is an affirmative defense to copyright infringement.  Its purpose is to

3    prevent a holder of a copyright from leveraging its limited monopoly on the copyrighted work in

4    order to restrict competition in a market for a product or service in which it does not have a

5    copyright.

6

7    Authority:  *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699 (9th Cir. 2015) (Wardlaw,
     J., concurring) (describing copyright misuse as an "affirmative defense to copyright
8    infringement"); *id*. at 701 (describing copyright misuse as "an obvious leveraging of a copyright
     to control an area outside its limited monopoly"); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d
9    516, 521 (9th Cir. 1997), *amended by* 133 F.3d 1140 (9th Cir. 1998); *Alcatel USA, Inc. v. DGI
     Technologies, Inc.*, 166 F.3d 772, 793 (5th Cir. 1999).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:10-cv-0106-LRH-PAL

JURY INSTRUCTIONS

1    13.    **COPYRIGHT MISUSE—ELEMENTS**

2        To prove the affirmative defense of copyright misuse, Rimini Street must prove, by a

3    preponderance of the evidence, that Oracle International Corporation violated the public policies

4    underlying the copyright laws.  The public policies behind the copyright laws are to promote the

5    progress of science and the useful arts.  Rimini Street need not prove that Oracle International

6    Corporation violated the antitrust laws in order to prevail on Rimini Street's copyright misuse

7    defense.

8        If you find from the facts that Oracle International Corporation has used its copyrights to

9    indirectly gain commercial control over products it does not have copyrighted, then you will find

10   for Rimini Street.  In considering the facts of this case, you may consider the following to be a

11   misuse of the copyright protection:  Whether Oracle International Corporation used a license

12   agreement to limit a customer's rights to decide whether to use other forms of coding systems in

13   addition to the copyright holder's; or whether Oracle International Corporation used a license

14   agreement to prevent the development of similar support service products.

15

16   Authority:  *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015) (Wardlaw,
     J., concurring) (defendant can prove copyright misuse by showing "that the copyright owner
17   violated the public policies underlying the copyright laws") (citations omitted); *id.* (defendant
     "need not prove an antitrust violation to prevail on a copyright misuse claim") (citations
18   omitted); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 521 (9th Cir. 1997), *amended by*
     133 F.3d 1140 (9th Cir. 1998) (finding copyright misuse where plaintiff required others to use its
19   software code and prohibited them from using any others); *Alcatel USA, Inc. v. DGI
     Technologies, Inc.*, 166 F.3d 772, 793 (5th Cir. 1999) (noting that the goal of copyright
20   protection is "to promote the Progress of Science and useful arts" and also affirming district
     court's instruction that "[i]f the [the plaintiff] has used its copyrights to indirectly gain
21   commercial control over products plaintiff] does not have copyrighted, then copyright misuse
     may be present"); *id.* (finding copyright misuse where plaintiff used its licensing agreement to
22   restrict development of market for uncopyrighted microprocessor cards) *see also* 1-10 Jury
     Instructions in Commercial Litigation § 10.10 (Misuse of Copyright).
23

24

25

26

27

28

1    14.    **TOMORROWNOW EVIDENCE**

2        You have heard evidence and argument regarding a company called "TomorrowNow."

3    You may not use this evidence to assume that because Seth Ravin was at one time associated

4    with TomorrowNow, and TomorrowNow stipulated and ultimately pleaded guilty to infringing

5    Oracle's copyrights, Rimini Street infringed, or was more likely to have infringed, Oracle's

6    copyrights.   You also cannot use this evidence as proof of whether Seth Ravin's or Rimini

7    Street's conduct was willful, wanton, or unjustifiable.

8

9    Authority:   *Barnett v. Gamboa*, 2013 WL 178132, at *7 (E.D. Cal. Jan. 16, 2013) (excluding
     evidence of criminal charges as irrelevant and prejudicial to civil case); *JIPC Mgmt., Inc. v.*

10   *Incredible Pizza Co.*, 2009 WL 8591607, at *29 (C.D. Cal. July 14, 2009) (rejecting evidence of
     scheme between parent and subsidiary as irrelevant to question whether parent retained adequate

11   control over other unrelated subsidiaries); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957 (9th
     Cir. 2001) (describing considerations relevant to willfulness).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

15. **COPYRIGHT DAMAGES—GENERALLY**

If you find that Rimini Street is liable for infringing Oracle International Corporation's copyrights, you must determine Oracle International Corporation's damages. Oracle International Corporation must prove its damages by a preponderance of the evidence. That is, Oracle International Corporation must establish with evidence that it is more likely than not that it was damaged as a result of the infringement. If you find that it is equally likely that Oracle International Corporation was not damaged, then you must find that it has not proven that it suffered damages. Additionally, if you find that it is only a hypothetical possibility that the infringement caused damages, then you must find that Oracle International Corporation has not proven that it suffered damages.

There are two alternate types of damages available to Oracle International Corporation:

1)      Actual damages suffered as a result of the infringement; or

2)      Statutory damages established by Congress in the Copyright Act.

Oracle International Corporation may not recover both types of damages.

If Oracle International Corporation demonstrates injury, but it cannot prove, without undue speculation, either causation or the value of its actual damages suffered as a result of the infringement, then you must award Oracle International Corporation statutory damages.

"Undue speculation" means that Oracle International Corporation cannot establish an objective non-speculative damages amount. For example, if the evidence presented by Oracle International Corporation does not allow you to establish an objective, non-speculative damages amount, then actual damages would be speculative and you must award statutory damages. If you have to guess the amount of actual damages, then you are speculating and should not award actual damages, and you should instead award statutory damages.

Authority: 17 U.S.C. § 504(a); Ninth Circuit Manual of Model Jury Instructions 17.22, 17.23, 17.23 cmt. (modified to reflect the facts of this case and for clarity because the instructions do not address "the danger of double recovery if both measures [of actual damages] are presented to the jury," as here); *see also id.* Instruction 17.22, cmt. ("When injury is shown, but neither profits nor damages can be proved, statutory damages are mandatory"); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) ("excessively speculative claims of damages are to be rejected") (internal quotation omitted); *id.* at 1094 ("A plaintiff in a § 504(b) action must establish a causal connection between the infringement and the monetary remedy sought") (brackets and

1
2
3
4

quotations omitted); *Russell v. Price*, 612 F.2d 1123, 1129–1130 (9th Cir. 1979) ("when injury is proved but neither the infringer's profits nor the copyright holder's actual damages can be proved, statutory damages are mandatory"); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708–09 (9th Cir. 2004) ("It is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation'") (citation omitted).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17

JURY INSTRUCTIONS

1    16.    **COPYRIGHT DAMAGES—ACTUAL DAMAGES**

2    As a measure of its actual damages, Oracle International Corporation may recover either:

3    (i) the fair market value of use; or (ii) Oracle International Corporation's lost profits plus any

4    profits Rimini Street obtained from its infringement.  The fair market value of use is the license

5    that the parties would have negotiated if Rimini Street had obtained a license for the rights you

6    have found that Rimini Street infringed.  The value of a license to Rimini Street is the amount

7    that it would have cost Rimini Street to implement a non-infringing alternative.

8    You are required to select the best measure of actual damages.  You should determine

9    actual damages separately for each Defendant that you find liable for copyright infringement.

10    I will now explain these methods to you.

11

12    Authority:  17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions 17.23, 17.23
cmt. (modified for clarity, to reflect facts of this case, and to address disjunctive nature of the

13    measures of actual damages awards because the model instructions do not address "the danger of
double recovery if both measures [of actual damages] are presented to the jury," as here); *Oracle*

14    *Corp. v. SAP AG*, 765 F.2d 1081, 1095 (9th Cir. 2014) (noting that district court rejected
Oracle's jury instruction that would have permitted Oracle to obtain both hypothetical-license

15    damages and infringer's profits); *id.* at 1087 (holding the fair market value is "the amount a
willing buyer would have been reasonably required to pay a willing seller at the time of the

16    infringement for the actual use made by [the infringer] of the plaintiff's work") (citation

17    omitted); *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (including projected sale of
photographs in hypothetical license award); *Wall Data v. Los Angeles Cnty. Sheriff's Dept.*, 447

18    F.3d 769, 787 (9th Cir. 2006) (including price Wall Data charged vendor in hypothetical damage
award); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708–09 (9th Cir. 2004) ("Actual

19    damages are usually determined by the loss in the fair market value of the copyright, measured

20    by the profits lost due to the infringement or by the value of use of the copyrighted work to the
infringer") (citations omitted); Dkt. No. 724 at 4–6 ("the value of the hypothetical license to

21    Rimini is the amount that it would have cost Rimini to implement a non-infringing alternative").

22

23

24

25

26

27

28

JURY INSTRUCTIONS

17.     **COPYRIGHT DAMAGES—FAIR MARKET VALUE OF USE—GENERALLY**

The first type of actual damages is the fair market value of use.  In order to decide on the value of the license that Rimini Street and Oracle International Corporation would have agreed to, you should assume that the parties did negotiate a license just before the infringement began.  You should assume that in this negotiation, Rimini Street was a willing buyer of the license, and that Oracle International Corporation was a willing seller of the license.  You must determine what would have been the result of this negotiation in order to determine the fair market value of the license.  You should assume that the license the parties negotiated was for the actual, real-world use made by Rimini Street of Oracle International Corporation's copyrighted works.  You should assume that both parties would have acted reasonably and economically rational in the hypothetical negotiations.

To determine the amount of the license that Rimini Street and Oracle International Corporation would have negotiated, you must rely on objective evidence.  You may not guess or rely on speculative testimony, guesswork, or conjectural evidence.   Oracle International Corporation bears the burden of proving the value of the hypothetical license based on objective evidence by a preponderance of the evidence.  You may consider evidence and facts that happened after the date of the hypothetical negotiation to the extent that those events and facts provide insight into the expectations of the parties at the time the infringement first began, or insight into the amount a willing buyer would have paid a willing seller at the time of the infringement.

Authority:  17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions 17.23, 17.23 cmt. (modified to clarify Ninth Circuit law, reflect facts of case, and because the model instructions do not address "the danger of double recovery if both measures [of actual damages] are presented to the jury," as here); *Oracle Corp. v. SAP AG*, 765 F.2d 1081, 1095 (9th Cir. 2014) (noting that district court rejected Oracle's jury instruction that would have permitted Oracle to obtain both hypothetical-license damages and infringer's profits); *id.* at 1087 (holding the fair market value is "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work"); *id.* at 1088 ("the touchstone for hypothetical license damages is the range of [the license's] reasonable market value"); *id.* at 1089 ("the buyer will not ordinarily pay more for a license than its anticipated benefit"); *Grain Processing Corp. v. Am. Maize-Products Co.*, 185

1   F.3d 1341, 1351 (Fed. Cir. 1999) ("Without the infringing product, a rational would-be infringer

2   is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent
    owner rather than leave the market altogether"); *Wall Data v. Los Angeles Cnty. Sheriff's Dept.*,

3   447 F.3d 769, 787 (9th Cir. 2006) (including price Wall Data charged vendor in hypothetical
    damage award); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708–09 (9th Cir. 2004);

4   Dkt. No. 724 at 4–6 ("the value of the hypothetical license to Rimini is the amount that it would
    have cost Rimini to implement a non-infringing alternative").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18. **COPYRIGHT DAMAGES—FAIR MARKET VALUE OF USE— ALTERNATIVES**

You should assume that the value of the hypothetical license is the amount that it would have cost Rimini Street to implement a non-infringing alternative.  In other words, if Rimini Street could have ordered its business in a way that did not infringe, then the cost to implement that non-infringing alternative is the value of the hypothetical license, because Rimini Street would not have paid Oracle International Corporation more for the license than it would have cost Rimini Street to implement the non-infringing model.

Authority:  17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions 17.23, 17.23 cmt. (modified to clarify Ninth Circuit law, reflect facts of case, and because the model instructions do not address "the danger of double recovery if both measures [of actual damages] are presented to the jury," as here); *Oracle Corp. v. SAP AG*, 765 F.2d 1081, 1095 (9th Cir. 2014) (noting that district court rejected Oracle's jury instruction that would have permitted Oracle to obtain both hypothetical-license damages and infringer's profits); *id.* at 1087 (holding the fair market value is "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work"); *id.* at 1088 ("The touchstone for hypothetical license damages is the range of [the license's] reasonable market value"); *id.* at 1089 ("the buyer will not ordinarily pay more for a license than its anticipated cost"); *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether"); *Wall Data v. Los Angeles Cnty. Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006) (including price Wall Data charged vendor in hypothetical damage award); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708–09 (9th Cir. 2004); Dkt. No. 724 at 4–6 ("the value of the hypothetical license to Rimini is the amount that it would have cost Rimini to implement a non-infringing alternative").

21

19.     **COPYRIGHT DAMAGES—ORACLE'S LOST PROFITS—GENERALLY**

The second type of actual damages is lost profits.  To calculate Oracle International Corporation's lost profits, you must determine what profits Oracle International Corporation proved that it would have made without the infringement by Rimini Street, minus any expenses Oracle International Corporation would have incurred in making those profits.  To recover lost profits, Oracle International Corporation must prove by a preponderance of the evidence that:

1)     Rimini Street caused such damages (see Instruction 20); and

2)     The amount.  You may not guess the amount or rely on speculative evidence to calculate lost profits.

Authority:  17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions 17.23, 17.23 cmt. (modified to reflect facts of this case, Ninth Circuit law, and to clarify nature of lost profits measure of damages because the model instructions do not address "the danger of double recovery if both measures [of actual damages] are presented to the jury," as here); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) ("A plaintiff in a § 504(b) action must establish [a] causal connection" "between the infringement and the monetary remedy sought"); *id.* (holding that where a plaintiff cannot show that the loss of (or failure to gain) a particular client is attributable to infringement, it "cannot recover damages related to [that client]"); *Evenflow Plumbing Co., Inc. v. Pac. Bell Directory*, 2005 WL 1353822, at *1 (N.D. Cal. June 7, 2005) ("Of course, the copyright holder bears the burden of showing that the infringement was the cause of the loss of profits"); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *3 (N.D. Cal. Mar. 31, 2014) ("It is entirely speculative" to assume that clients of infringer "would [have] automatically" become clients of copyright holder absent infringement given client preferences unrelated to infringement); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("we remand the actual damages award … because the lost profits portion is speculative"); *id.* at 710 ("there must be a legally sufficient causal link between the infringement and subsequent indirect profits") (citation and quotation omitted).

1    20.    **COPYRIGHT DAMAGES—ORACLE'S LOST PROFITS—CAUSATION**

2    Oracle International Corporation must prove a causal relationship between Oracle's

3    losses and Rimini Street's infringement.  Oracle International Corporation must demonstrate that

4    but for Rimini Street's infringement, Oracle International Corporation would not have lost each

5    of the clients for which Oracle International Corporation seeks damages.  That means that if a

6    client left Oracle International Corporation for reasons unrelated to Rimini Street's infringement,

7    there is no causal relationship and therefore no lost profit damages as to that client.  For example,

8    if a client left Oracle International Corporation in whole or in part because it was unhappy with

9    Oracle International Corporation's customer service, then Oracle International Corporation may

10   not obtain damages from Rimini Street for the loss of that client.  Or if a client signed up with

11   Rimini Street for reasons partially unrelated to the infringement, such as Rimini Street's superior

12   customer service, then there is no causal relationship and therefore no lost profit damages.

13   Oracle International Corporation must prove causation by a preponderance of the

14   evidence for every single client for which it is claiming copyright damages.

15

16   Authority:  17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions 17.23, 17.23
     cmt. (modified to clarify nature of lost profits measure of damages because the model
17   instructions do not address "the danger of double recovery if both measures [of actual damages]
     are presented to the jury," as here); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir.
18   2014) ("A plaintiff in a § 504(b) action must establish [a] causal connection" "between the
     infringement and the monetary remedy sought"); *id.* (holding that where a plaintiff cannot show
19   that the loss of (or failure to gain) a particular client is attributable to infringement, it "cannot
     recover damages related to [that client]"); *Evenflow Plumbing Co., Inc. v. Pac. Bell Directory*,
20   2005 WL 1353822, at *1 (N.D. Cal. June 7, 2005) ("Of course, the copyright holder bears the
     burden of showing that the infringement was the cause of the loss of profits"); *Crunchyroll, Inc.*
21   *v. Pledge*, 2014 WL 1347492, at *3 (N.D. Cal. Mar. 31, 2014) ("It is entirely speculative" to
     assume that clients of infringer "would [have] automatically" become clients of copyright holder
22   absent infringement given client preferences unrelated to infringement); *Polar Bear Prods., Inc.*
     *v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("we remand the actual damages award …
23   because the lost profits portion is speculative"); *id.* at 710 ("there must be a legally sufficient
     causal link between the infringement and subsequent indirect profits") (citation and quotation
24   omitted).

25

26

27

28

21.     **COPYRIGHT DAMAGES—DEFENDANTS' PROFITS**

If you conclude that lost profits are the better measure of actual damages, then Oracle International Corporation is also entitled to Rimini Street's profits that are directly attributable to the infringement and were not taken into account in computing lost profits.

Double recovery is not allowed.  You may not include in this award of Rimini Street's profits any amount that you already took into account in determining Oracle International Corporation's lost profits.  Thus, if Rimini Street's profits are the same as Oracle International Corporation's lost profits, then you may not include them in this award.

You may award Rimini Street's profits only if you find that Oracle International Corporation showed a causal relationship between the infringement and the profits generated directly or indirectly from Rimini Street's infringement.  The causal relationship may not be established by guessing or speculative evidence.

Rimini Street's profits are determined by subtracting all of Rimini Street's expenses from Rimini Street's gross revenue.  If Rimini Street's expenses exceed its gross revenue, then there are no profits for you to award Oracle International Corporation.

Gross revenue includes only those receipts associated with Rimini Street's infringement of Oracle International Corporation's copyrighted works.  Gross revenue does not include Rimini Street's overall gross sales resulting from all streams of revenue.   Oracle International Corporation has the burden of proving Rimini Street's gross revenue by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, and production costs incurred in producing Rimini Street's gross revenue.  Rimini Street bears the burden of proving its expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the use of the copyrighted works is attributable to factors other than use of the copyrighted works, all of the profit is to be attributed to the infringement.  Rimini Street has the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted works.  Here, Rimini Street does not

JURY INSTRUCTIONS

need to prove that amount with certainty, but instead it need only provide a reasonable approximation of the amount that is not attributable to infringement.

You must also determine whether Rimini Street added intrinsic value to the services it provided.  In other words, if Rimini Street provided additional value beyond the value of infringement, such as superior support services (e.g., faster response time or more effective technical support), then you should deduct any of that value from the profits that may be awarded to Oracle International Corporation

You should determine infringer's profits separately for each Defendant that you find liable for copyright infringement.

Authority:  17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions 17.24 (modified generally to reflect facts of case and Ninth Circuit law, and to clarify:  first paragraph modified to reflect that infringer's profits are only available where lost profits are the better measure of actual damages; second paragraph modified to ameliorate danger of double recovery not addressed by model jury instructions; third paragraph verbatim except final sentence added to emphasize speculative evidence cannot support infringer's profits award; fourth paragraph verbatim except final sentence added to emphasize that no infringer's profits are available if Rimini Street's expenses exceed its revenue; fifth paragraph modified to clarify definition of gross revenue; sixth paragraph modified to clarify definition of expenses; seventh paragraph verbatim except final sentence added to clarify Rimini Street's burden; eighth and ninth paragraph added to clarify that the jury must deduct the value added to Rimini Street's infringing services and demonstrate infringer's profits for each defendant); *id.* at Instruction 17.24 cmt. ("Where the defendant's profits are derived from both infringing and non-infringing activities, not all of the defendant's profits can be attributed to the infringement"); *id.* ("Precision is not required, as long as a reasonable and just apportionment is reached"); *Oracle Corp. v. SAP AG*, 765 F.2d 1081, 1095 (9th Cir. 2014) (noting that district court rejected Oracle's jury instruction that would have permitted Oracle to obtain both hypothetical-license damages and infringer's profits); *id.* at 1094 ("Because of its expert's equivocation as to whether the loss of these three customers was attributable to TomorrowNow's infringement, Oracle has failed to establish this requisite causal connection and therefore cannot recover damages related to those three customers"); *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007); *Wall Data v. Los Angeles Cnty. Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708–09 (9th Cir. 2004) ("When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner") (citations omitted); *id.* at 711 (setting forth "two-step framework for recovery" of infringer's profits); *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002).

1   22.   **COPYRIGHT DAMAGES—STATUTORY DAMAGES**

2   If you find that Rimini Street is liable for infringing Oracle International Corporation's

3   copyrights, Oracle International Corporation is alternatively entitled to statutory damages

4   established by Congress in the Copyright Act for each work infringed if: (i) Oracle International

5   Corporation elects statutory damages in lieu of actual damages; or (ii) if Oracle International

6   Corporation cannot prove without undue speculation either causation or the amount of actual

7   damages suffered as a result of the infringement.

8   The purpose of statutory damages is to penalize the infringer and deter future violations

9   of copyright law.

10   The amount you may award as statutory damages is not less than $750, and not more than

11   $30,000 for each work that you conclude was infringed.

12   However, if you find that the infringement was innocent, you may award as little as $200

13   for each work innocently infringed.

14   If you find that infringement was willful, you may award as much as $150,000 for each

15   work willfully infringed.

16   Instructions XX and XX will tell you what constitutes innocent infringement and what

17   constitutes willful infringement.

18

19   Authority: 17 U.S.C. § 504(c); Ninth Circuit Manual of Model Jury Instructions 17.25 (verbatim
except first paragraph modified to clarify that statutory damages are mandatory if plaintiff does

20   not establish causation or damages, or elects statutory damages); *id.* at Instruction 17.22 cmt.
("When injury is shown, but neither profits nor damages can be proved, statutory damages are

21   mandatory"); *id.* at Instruction 17.25 cmt. ("When an injury can be shown, but neither profits nor
damages can be proven, statutory damages are mandatory"); *id.* ("If the plaintiff is unable to

22   meet its burden of proving actual damages, it may still seek statutory damages"); *Russell v.
Price*, 612 F.2d 1123, 1129–1130 (9th Cir. 1979) ("when injury is proved but neither the

23   infringer's profits nor the copyright holder's actual damages can be proved, statutory damages

24   are mandatory").

25   Note:  Internal reference to additional instructions is to willful infringement and innocent

26   infringement, included in the parties' joint instructions.

27

28

1    23.    **INDUCING BREACH OF CONTRACT**

2         In addition to its other claims, Oracle America contends that Rimini Street and Seth

3    Ravin induced customers to breach their contracts with Oracle America.  Specifically, Oracle

4    America contends that the terms of use on its website and its software license agreements are

5    contracts with its customers.  Oracle America contends that Rimini Street and Seth Ravin

6    intentionally caused Oracle America customers to breach their contracts with Oracle America.

7         To prevail on this claim in the circumstances of this case, Oracle America must prove

8    each of the following for each such contract by a preponderance of the evidence:

9         1)    A valid contract existed between Oracle America and a customer;

10        2)    Rimini Street and/or Seth Ravin knew the contract existed;

11        3)    Rimini Street and/or Seth Ravin intended to cause Oracle America's customer to

12              breach its contract with Oracle America;

13        4)    Rimini Street and/or Seth Ravin engaged in conduct that was wanton, malicious,

14              and unjustifiable;

15        5)    Rimini Street and/or Seth Ravin's conduct caused the customer to breach the

16              contract;

17        6)    Oracle America was directly harmed; and

18        7)    Rimini Street and/or Seth Ravin's improper conduct was a substantial factor in

19              causing Oracle America harm.

20        If you find that the customer would have breached its contract with Oracle America

21   regardless of whether Rimini Street and/or Seth Ravin engaged in the above conduct, then you

22   must find that Rimini Street and/or Seth Ravin is not liable for inducing breach of contract.

23        Mere knowledge of the contract is insufficient to establish that Rimini Street and/or Seth

24   Ravin intended or designed to disrupt Oracle America's contractual relationship; instead, Oracle

25   America must demonstrate that Rimini Street and/or Seth Ravin specifically intended to induce

26   the other party to breach the contract with Oracle America.

27        If you find that Oracle America suffered only nominal damages or speculative harm, then

28   you must find that Rimini Street and/or Seth Ravin is not liable for inducing breach of contract.

Oracle America must prove all of the above elements for every single customer for which it is claiming that Rimini Street and Seth Ravin induced a breach of contract.  In considering these instructions, you must keep in mind that Oracle America has the burden to prove any damages for each specific client or prospective relationship.  For example, if Oracle America proves damages as to one client, you may not extrapolate those damages to multiple clients, but instead must award only damages for the one client for which Oracle America has proven such damages.

If you find that Oracle America proved each of these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle America and against Rimini Street and/or Seth Ravin on the claim for inducing breach of contract.  If, on the other hand, Oracle America has failed to prove any of these elements as to Rimini Street and/or Seth Ravin, you should find for Rimini Street and/or Seth Ravin and against Oracle America on the claim for inducing breach of contract.

<u>Authority</u>:  Nevada Jury Instructions (Civil) No. 15CT.25 (2011) (modified to reflect parties and circumstances of the case, to change "disrupt" to "breach" which is consistent with the Nevada Supreme Court and the CACI instruction, and to make clear that conduct must be improper); CACI 2200 (2015) (modified to reflect parties and circumstances of the case and to make clear that conduct must be improper); *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199 (1979) (conduct by a competitor that is "wanton, malicious, and unjustifiable" is not "fair and reasonable" is not privileged or justified); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (competitor's conduct that violates law satisfies conduct element); Restatement Second of Torts § 766A ("One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability."); *Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242, 261 (1995) ("It is not enough that the actor intended to perform the acts which caused the result—*he or she must have intended to cause the result itself*") (emphasis in original); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (due process requires opportunity to prevent individual defenses); *Lindsey v. Normet*, 405 U.S. 56 (1972) (same); *Duran v. U.S. Bank National Ass'n*, 59 Cal. 4th 1 (2014) (same); *JJ Indus., LLC v. Bennett*, 119 Nev. 269, 275 (2003) ("the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party"); *id.* at 276 ("the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff"); *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971) (when damages is an element of a tort claim, "[t]he mere breach of a … duty, causing only nominal damages, speculative harm, or the threat of future harm - not yet realized - does not suffice to create a cause of action"); CACI 430 (substantial factor test requires but for causation).

24.    **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Oracle America and Oracle International Corporation seek to recover damages based upon a claim of intentional interference with prospective economic advantage.

In order for you to find for Oracle America and/or Oracle International Corporation, you must find by a preponderance of the evidence that:

1)    Oracle America and/or Oracle International Corporation had an expectancy in a prospective contractual relationship with the customer;

2)    Rimini Street and/or Seth Ravin knew of the existence of the relationship;

3)    Rimini Street and/or Seth Ravin engaged in unlawful and improper conduct;

4)    By engaging in this conduct, Rimini Street and/or Seth Ravin intended to disrupt the relationship;

5)    Rimini Street and/or Seth Ravin's conduct was not privileged or justified;

6)    The relationship was disrupted;

7)    Oracle America and/or Oracle International Corporation was harmed; and

8)    Rimini Street and/or Seth Ravin's unlawful and improper conduct was a substantial factor in causing Oracle America and/or Oracle International Corporation harm.

To find causation, you must find that but for Defendant's conduct, Oracle America and/or Oracle International Corporation's harm would not have occurred.  For example, if you find that Oracle America and/or Oracle International Corporation would not have realized an economic benefit regardless of Rimini Street and/or Seth Ravin's conduct, then you must find that Rimini Street and/or Seth Ravin is not liable for intentional interference with prospective economic advantage.

If Oracle America and/or Oracle International Corporation's contractual relations are merely contemplated or potential, it is in the interest of the public that any competitor (here, Rimini Street and Seth Ravin) should be free to divert the relationship to itself by all fair and reasonable means.  Therefore, if Oracle America and/or Oracle International Corporation fails to establish that Rimini Street and/or Seth Ravin engaged in unlawful or improper means for each

29

specific prospective relationship, then you must find that Rimini Street and/or Seth Ravin did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage for that relationship.

"Unlawful or improper means" does not include breach of contract or copyright infringement.  The only unlawful or improper means that Oracle America and Oracle International Corporation claim are related to alleged misrepresentations made by Rimini Street. Additionally, if the alleged misrepresentation is only an expression of opinion or statement of a future act, then Oracle America and/or Oracle International Corporation cannot rely upon it to establish unlawful or improper means.  You must decide whether Oracle America and/or Oracle International Corporation has established any actionable misrepresentations and, if so, whether it is more likely than not that those misrepresentations were the specific cause of harm.

If you find that Oracle America and/or Oracle International Corporation suffered only nominal damages or speculative harm, then you must find that Rimini Street and Seth Ravin are not liable for intentional interference with prospective economic advantage.

Oracle America and/or Oracle International Corporation must prove all of the above elements for every single economic relationship for which it is claiming international interference with prospective economic advantage.  In considering these instructions, you must keep in mind that Oracle has the burden to prove any damages for each specific client or prospective relationship.  For example, if Oracle proves damages as to one client, you may not extrapolate those damages to multiple clients, but instead must award only damages for the one client for which Oracle has proven such damages.

If you find that Oracle America and/or Oracle International Corporation proved each of these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle America and/or Oracle International Corporation and against Rimini Street and/or Seth Ravin on the claim for intentional interference with prospective economic advantage.  If, on the other hand, Oracle America and/or Oracle International Corporation has failed to prove any of these elements as to Rimini Street and/or Seth Ravin, you should find for Rimini Street and/or Seth Ravin and against

JURY INSTRUCTIONS

Oracle America and/or Oracle International Corporation on the claim for intentional interference with prospective economic advantage.

Authority:  Nevada Jury Instructions (Civil) No. 15CT.26 (2011) (modified to reflect parties and circumstances of the case); CACI 2202 (2015) (modified to reflect parties and circumstances of the case, to include Nevada element that conduct must not be privileged or justified, and to make clear that conduct must be improper and unlawful); *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199 (1979) (conduct by a competitor that is "wanton, malicious, and unjustifiable" or that is not "fair and reasonable" is not privileged or justified); *id.* ("Perhaps the most significant privilege or justification for interference with a prospective business advantage is free competition. Ours is a competitive economy in which business entities vie for economic advantage."); *id.* ("the gravamen of such a cause of action is conditioned upon the wanton, malicious and unjustifiable acts of others, and that where a loss occurs by reason of lawful competition however sharp, the loss is one for which the law affords no redress"); *id.* (there must be "unlawful or improper means"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (competitor's conduct that violates law satisfies conduct element); ; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (due process requires opportunity to prevent individual defenses); *Lindsey v. Normet*, 405 U.S. 56 (1972) (same); *Duran v. U.S. Bank National Ass'n*, 59 Cal. 4th 1 (2014) (same); *Jessen Elec. & Svc. Co. v. Gen. Tele. Co. of Cal.*, 106 F.3d 407 (9th Cir. 1997); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001) (wrongful conduct must be independent of copyright infringement); *In re Amerco Derivative Litigation*, 252 P.3d 681, 702 (Nev. 2011) ("absence of privilege or justification by the defendant" and "actual harm" are elements of claim); *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88 (1987) ("absence of privilege or justification by the defendant" and "actual harm" are elements of claim); *Fagin v. Doby George, LLC*, No. 08-00314-ECR-RAM, 2011 WL 3425632, at *5 (D. Nev. Aug. 3, 2011); *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971) (when damages is an element of a tort claim, "[t]he mere breach of a … duty, causing only nominal damages, speculative harm, or the threat of future harm - not yet realized - does not suffice to create a cause of action"); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 478 (1996) (wrongful conduct is "limited to means that are independently tortious or a restraint of trade"); *San Francisco Design Ctr. Associates v. Portman Cos.*, 41 Cal. App. 4th 29, 40 (1995) ("It is also settled that an affirmative defense to the tort of interference with prospective economic advantage is the privilege of competition."); *id.* at 723 ("the defendant's conduct must be unlawful or illegitimate"); *id.* ("The defendant's conduct must be independently actionable."); *id.* at 724 ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."); CACI 430 ("'substantial factor' subsumes the 'but for' test of causation, that is, 'but for' the defendant's conduct, the plaintiff's harm would not have occurred.").

25. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE—FREE COMPETITION**

A party does not intentionally interfere with prospective economic advantage when the party engages in free competition.  In other words, a party is free to divert business to itself by all fair and reasonable means because it is in the interest of the public that companies compete against each other.  Therefore, if you find the following elements, then you must find that Rimini Street and Seth Ravin did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage:

1) The relation concerns a matter involved in the competition between Rimini Street and/or Seth Ravin and Oracle America and/or Oracle International Corporation;

2) Rimini Street and/or Seth Ravin did not employ wrongful means;

3) Rimini Street and/or Seth Ravin's action did not create or continue an unlawful restraint of trade; and

4) Rimini Street and/or Seth Ravin's purpose was at least in part to advance its interest in competing with Oracle America and/or Oracle International Corporation.

In other words, so long as Rimini Street and/or Seth Ravin's motivation was at least partially to compete with Oracle America and/or Oracle International Corporation, and Rimini Street and/or Seth Ravin did not employ wrongful means to compete with Oracle America and/or Oracle International Corporation, then you must find that Rimini Street and/or Seth Ravin acted in the interests of free competition and did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage.

Authority:  Restatement (Second) Torts § 768 (elements 1-4 verbatim, modified to reflect the parties and to change present tense to past tense); *L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1431 (9th Cir. 1993); *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 198 (1979) ("Perhaps the most significant privilege or justification for interference with a prospective business advantage is free competition.  Ours is a competitive economy in which business entities vie for economic advantage."); *id.* at 199 ("the gravamen of such a cause of action is conditioned upon the wanton, malicious and unjustifiable acts of others, and that where a loss occurs by reason of lawful competition however sharp, the loss is one for which the law affords no redress"); *id.* at 200 (there must be "unlawful or improper means"); *San Francisco Design Ctr. Associates v. Portman Cos.*, 41 Cal. App. 4th 29, 40 (1995) ("It is also settled that an affirmative defense to the tort of interference with prospective economic advantage is the privilege of competition.");

1    *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003)
2    ("a competitor is privileged to divert business to itself by all fair and reasonable means"); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990) ("Low prices benefit
3    consumers regardless of how those prices are set, and so long as they are above predatory levels,
     they do not threaten competition."); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 115
4    (1986) ("[C]ompetition for increased market share, is not activity forbidden by the antitrust laws.
     It is simply, as petitioners claim, vigorous competition.").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

26. **INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—KNOWLEDGE**

For Oracle America to prevail on its claim for inducing breach of contract or for Oracle America or Oracle International Corporation to prevail on its claim for intentional interference with prospective economic advantage, you must also find that the Rimini Street and/or Seth Ravin knew of the existence of the contract or prospective relationship. To have knowledge means that Rimini Street and/or Seth Ravin has information concerning the contract or prospective relationship, which was discovered by Rimini Street and/or Seth Ravin or was brought to Rimini Street and/or Seth Ravin's attention by others.

<u>Authority</u>: ABA Model Jury Instruction 2.4.1 (Business Torts) (2005) (modified introductory phrase for clarity and consistency in form and format with other instructions; otherwise verbatim except replaced "contract" with "business relationship," inserted defendants' names, and omitted unnecessary language).

27.     **INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—INTENT**

For Oracle America to prevail on its claim for inducing breach of contract or for Oracle America or Oracle International Corporation to prevail on its claim for intentional interference with prospective economic advantage, you must find intentional conduct by a Defendant.  For purposes of these two claims, conduct is intentional if done with the specific desire to cause Oracle America's client to breach its contract or to improperly and unlawfully interfere with the prospective relationship between Oracle America or Oracle International Corporation and a third party.

Intent ordinarily may not be proved directly, because there is no way of scrutinizing the operations of the human mind.  You may infer a person's intent from conduct substantially certain to cause disruption or interference, but you are not required to infer it and should consider all of the circumstances.  You may consider any statements made or acts done or omitted by a party whose intent is an issue, and all of the facts and circumstances that indicate the party's state of mind.

Authority:  ABA Model Jury Instructions 2.6.1-6.2 (Business Torts) (2005) (citing Ninth Circuit authority) (last paragraph verbatim).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28.    **INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—CAUSATION**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Put another way, the "substantial factor" test means that "but for" the defendant's conduct, the plaintiff's harm would not have occurred.

Authority:  CACI 430 (2015) (first two paragraphs verbatim); CACI 430 Directions For Use ("As phrased, this definition of 'substantial factor' subsumes the 'but for' test of causation, that is, 'but for' the defendant's conduct, the plaintiff's harm would not have occurred."); *Holcomb v. Georgia Pacific, LLC*, 289 P.3d 188, 196 (Nev. 2012) (Nevada uses "substantial factor" causation).

Case No. 2:10-cv-0106-LRH-PAL

JURY INSTRUCTIONS

29.     **INDUCING BREACH OF CONTRACT AND INTENTIONAL**
        **INTERFERENCE—COMPENSATORY DAMAGES**

If you find for Oracle America on its inducing breach of contract claim or for Oracle America or Oracle International on its intentional interference with prospective economic advantage claim, you must determine compensatory damages.  Compensatory damages consist of the amount of money that will reasonably and fairly compensate Oracle America or Oracle International Corporation for any damage due to the conduct that created liability on the claim. Oracle America and Oracle International Corporation have the burden to prove compensatory damages by a preponderance of the evidence

In considering these instructions, you must keep in mind that Oracle America or Oracle International Corporation has the burden to prove any damages for each specific client or prospective relationship.  For example, if Oracle America or Oracle International Corporation proves damages as to one client, you may not extrapolate those damages to multiple clients, but instead must award only damages for the one client for which Oracle America or Oracle International Corporation has proven such damages.

In determining compensatory damages on these claims, you may consider whether Oracle America or Oracle International Corporation suffered any measurable loss of profits as a result of Rimini Street and/or Seth Ravin's conduct.   In this case, Oracle America and Oracle International Corporation contend that their business was affected because of loss of profits they might have earned but for Rimini Street and/or Seth Ravin's conduct.  Oracle America and Oracle International Corporation must prove any such loss of profits with reasonable certainty and individually as to each specific client or prospective relationship.

Damages, if any, should be restricted to such losses, if any, as are proved by facts from which their existence is logically and legally inferable.  The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the wrong are recoverable, and not those that are contingent and uncertain or mere speculation.

Although a qualified person may make estimates concerning probable profits or losses of a going business, you should, in weighing all such evidence, take into consideration, among other things, the truth or falsity of the basis of such estimates; the knowledge or lack of

knowledge of the witnesses of all of the conditions on which the estimate is based; whether the facts assumed as a basis for an estimate rest upon actual accounts and records kept in the ordinary course of business rather than in uncertain recollections; and knowledge of the witness in the particular line of business about which the witness testifies.  From all of the evidence in this case bearing on the subject, you should determine for yourselves the probability or improbability, and the amount, of profits anticipated by Oracle America or Oracle International Corporation.

The difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery, and you, the jury, should use your best judgment in determining the amount of such damages, if any, based upon the evidence.  However, damages may not be based on speculation or guesswork.

That the defendant did not actually anticipate or contemplate that these losses would occur is not a relevant factor for you to consider.

Authority:  ABA Model Jury Instruction 2.10.2 (Business Torts) (2005) (modified introductory phrase for clarity and consistency in form and format with other instructions; specified parties and omitted unnecessary instructions; added language to make clear Oracle's burden of proving damages for each specific client/relationship; added that damages may not be based on speculation or guesswork; otherwise verbatim).

1    30.    **FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTRODUCTION**

2        Oracle America and Oracle International Corporation contend that Rimini Street and Seth

3    Ravin violated five sections of the Federal Computer Fraud and Abuse Act ("CFAA").

4        The CFAA is an anti-hacking statute that should be applied narrowly and is intended to

5    prohibit only computer hacking, not the general unauthorized use of information obtained from a

6    computer.

7        In this case, Oracle America and Oracle International Corporation claim that Defendants

8    violated the Computer Fraud and Abuse Act because, according to Oracle America and Oracle

9    International Corporation, Rimini Street and Seth Ravin caused damage to Oracle America and

10   Oracle International Corporation's computer systems by transmitting a program, information,

11   code, or command that damaged Oracle America and Oracle International Corporation

12   computers.

13       I will now instruct you on various sections of the CFAA, and the damages you may

14   award if you find any CFAA violation.

15

16   <u>Authority</u>:  18 U.S.C. § 1030; *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc)
     (computer hacking statute must be construed as narrowly as possible to avoid constitutional
17   problems); U.S. Const. art. V (due process clause); *id.* art. VI (jury right for criminal
     accusations).

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

31. **FEDERAL COMPUTER FRAUD AND ABUSE ACT—OBTAINING INFORMATION FROM A PROTECTED COMPUTER**

*First*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin unlawfully obtained information from a protected computer in violation of the CFAA, Section 1030(a)(2)(C). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1) Rimini Street and/or Seth Ravin intentionally accessed a computer without authorization, or exceeded authorized access;

2) Through such access, Rimini Street and/or Seth Ravin obtained information from a protected computer; and,

3) Such access caused loss to Oracle America and Oracle International Corporation totaling at least $5,000 in value during any one-year period.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

Authority:  Ninth Circuit Manual of Model Jury Instructions, No. 8.97 (Criminal) (modified for clarity and adapted to civil context, including by adding 18 U.S.C. § 1030(g) requirement); 18 U.S.C. § 1030; *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness); *see also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).

32.  **FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTENTIONAL DAMAGE TO A PROTECTED COMPUTER**

*Second*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin committed damage to a protected computer in violation of the CFAA, Section 1030(a)(5)(A).   To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1)   Rimini Street and/or Seth Ravin knowingly caused the transmission of a program, information, code, or command to a computer;

2)   As a result of such transmission, Rimini Street and/or Seth Ravin intentionally caused damage to a protected computer without authorization; and

3)   Such transmission caused loss to Oracle America and Oracle International Corporation during any one-year period aggregating at least $5,000 in value.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

Authority:   Ninth Circuit Manual of Model Jury Instructions, No. 8.100 (Criminal) (2010) (modified for clarity and adapted to civil context, including by adding 18 U.S.C. § 1030(g) requirement); 18 U.S.C. § 1030; *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

33.   **FEDERAL COMPUTER FRAUD AND ABUSE ACT—RECKLESS DAMAGE TO A PROTECTED COMPUTER**

*Third*, Oracle America and Oracle International Corporation contends that that Rimini Street and Seth Ravin recklessly damaged a protected computer in violation of the CFAA, Section 1030(a)(5)(B).  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1)   Rimini Street and/or Seth Ravin intentionally accessed a protected computer without authorization;

2)   As a result of such conduct, Rimini Street and/or Seth Ravin recklessly caused damage; and,

3)   Such access caused loss to Oracle America and/or Oracle International Corporation during any one-year period aggregating at least $5,000 in value.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

Authority:   Ninth Circuit Manual of Model Jury Instructions, No. 8.101 (Criminal) (2010) (modified for clarity and adapted to civil context, including by adding 18 U.S.C. § 1030(g) requirement); 18 U.S.C. § 1030; *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

34.   **FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES**

If you find that Rimini Street and/or Seth Ravin violated any of the CFAA sections described above, you may award Oracle America and/or Oracle International Corporation damages under the CFAA from that Rimini Street and/or Seth Ravin caused.  These damages may include:

1)   costs of responding to the violation;

2)   costs of conducting a damage assessment;

3)   costs of restoring the system and data to its prior condition;

4)   lost revenues or costs due to interruption of service; and

5)   costs of investigating the violation;

Any such damages must be tied directly to the specific violation.  In other words, it is Oracle's burden to prove that any such unauthorized access caused actual damages.  For example, if Oracle claims it lost revenue as a result of unauthorized access to its computer systems, it must prove how the unauthorized access directly caused it to lose revenue.

It is Oracle's burden to prove its damages by a preponderance of the evidence.  Damages may not be based on speculation or guesswork.

You should determine damages separately for each Defendant, if any, that you find violated the CFAA.

Authority:   18 U.S.C. § 1030(e)(11) (items 1-5; paraphrased); *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935-36 & n.19 (9th Cir. 2004) (items 3-4; paraphrased); *see also SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975 at 980-81 (N.D. Cal. 2008).

JURY INSTRUCTIONS

35.    **CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—
         CONTINUED**

*First*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the CDAFA, Section 502(c)(2).  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1)    Rimini Street and/or Seth Ravin knowingly accessed and without permission took or made use of any data, computer, computer system, or computer network, or took any supporting documentation; and

2)    Thereby caused Oracle America and Oracle International Corporation to suffer damage or loss.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

Authority:  Cal. Penal Code § 502(c)(2) (tense changed and broken into elements); Cal. Penal Code § 502(e) ("suffer[] damage or loss"); *see United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

36.    **CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—
       CONTINUED**

*Second*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the CDAFA, Section 502(c)(3).  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

    1)    Rimini Street and/or Seth Ravin knowingly accessed and without permission used or caused to be used computer services; and

    2)    Thereby caused Oracle America and Oracle International Corporation to suffer damage or loss.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

Authority:  Cal. Penal Code § 502(c)(3) (tense changed and broken into elements); Cal. Penal Code § 502(e) ("suffer[] damage or loss"); *see United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

37.     **NEVADA COMPUTER CRIMES LAW—CONTINUED**

*First*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 1.  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

> 1)     Rimini Street and/or Seth Ravin modified, damaged, disclosed, used, transferred, concealed, retained possession of, obtained or attempted to obtain access to, permitted access to or caused to be accessed, or entered any of the following: data, a program or any supporting documents which exist inside or outside a computer, system or network;

> 2)     Rimini Street and/or Seth Ravin did so knowingly, willfully, and without authorization; and

> 3)     Oracle America and/or Oracle International Corporation was the victim of the Defendant's conduct.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the NCLL.

Authority:  Nev. Rev. Stat. § 205.4765(1) (broke into elements; changed verb tense; omitted conduct not at issue in this claim); Nev. Rev. Stat. § 205.511 ("victim of a crime" may bring civil action); *see United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

38.    **NEVADA COMPUTER CRIMES LAW—CONTINUED**

*Second*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 3.  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

    1)    Rimini Street and/or Seth Ravin damaged, altered, transferred, disclosed, concealed, used, retained possession of, or obtained or attempted to obtain access to, permitted access to or caused to be accessed any of the following: a computer, system or network;

    2)    Rimini Street and/or Seth Ravin did so knowingly, willfully, and without authorization; and

    3)    Oracle America and/or Oracle International Corporation was the victim of the Defendant's conduct.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the NCLL.

Authority:   Nev. Rev. Stat. § 205.4765(3) (broke into elements; changed verb tense; omitted conduct not at issue in this claim); Nev. Rev. Stat. § 205.511 ("victim of a crime" may bring civil action); *see United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (computer hacking statute must be construed as narrowly as possible to avoid constitutional problems); *United States v. Liu*, 731 F.3d 982, 990 (9th Cir. 2013) (criminal intentional conduct requires "voluntary, intentional violation of a known legal duty"); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

39.   **BREACH OF CONTRACT**

Oracle America contends that Rimini Street and Seth Ravin breach contracts with Oracle America.  Specifically, Oracle America contends that in order to gain access to Oracle America's customer support websites, each user must agree to abide by terms of use for those websites, creating a contract between Oracle America and the user.  Oracle America contends that Defendants agreed to these terms of use, but then violated that contract by engaging in conduct that the contract prohibited.  Oracle America contends that Defendants' breach of contract caused harm for which Defendants should pay.

To prevail on its claim for breach of contract, Oracle America must prove by a preponderance of the evidence all of the following:

1)   Oracle America and a Defendant entered into a contract;

[Insert specific contracts Oracle introduces at trial]

2)   Oracle America did all, or substantially all, of the significant things that the contract required it to do;

[Insert specific performance Oracle establishes at trial]

3)   All conditions required by the contract for Oracle America's performance had occurred;

4)   Rimini Street failed to do something that the contract required, or did something that the contract prohibited; and

[Insert specific allegations of breach Oracle establishes at trial]

5)   Oracle America was harmed by that failure.

Authority:  CACI 303 (2015) (elements only; modified to conform to style and format of other instructions; added language regarding specific contracts, performance, and allegations of breach).

1    40.   **NOMINAL DAMAGES—BREACH OF CONTRACT**

2         If you decide that Rimini Street breached the contract but also that Oracle America was

3   not harmed by the breach, you may still award Oracle America nominal damages such as one

4   dollar.

5

6   Authority:   CACI 360 (verbatim; added parties' names); Cal. Civ. Code § 3360; *Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1089 (1972).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

1    41.    **TRESPASS TO CHATTELS—CAUSATION**

2          A substantial factor in causing harm is a factor that a reasonable person would consider to

3    have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to

4    be the only cause of harm.

5          Conduct is not a substantial factor in causing harm if the same harm would have occurred

6    without that conduct.

7          Put another way, the "substantial factor" test means that "but for" the defendant's

8    conduct, the plaintiff's harm would not have occurred.

9

10   <u>Authority</u>:   CACI 430 (2015) (verbatim); CACI 430 Guidance ("'substantial factor' subsumes
     the 'but for' test of causation, that is, 'but for' the defendant's conduct, the plaintiff's harm

11   would not have occurred."). *Holcomb v. Georgia Pacific, LLC*, 289 P.3d 188, 196 (Nev. 2012)
     (Nevada uses "substantial factor" causation).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    42.    **PUNITIVE DAMAGES—PURPOSE [PHASE 1]**

2        Punitive damages are aimed at deterrence and punishment, and pose an acute danger of

3    arbitrary deprivation of property.  In deciding whether to impose punitive damages, you must

4    keep in mind that society views the imposition of punishment, including punitive damages, as a

5    very serious task that should be done only after careful and thoughtful deliberation.  Punitive

6    damages are disfavored in the law and should be imposed only with caution and within narrow

7    limits.  In deciding whether to impose any punitive damages, and in fixing the amount, if any,

8    you must act with calm reason and sound discretion and take care to ensure that bias, passion, or

9    prejudice do not enter into your decision in any way.  The decision whether to impose punitive

10    damages is discretionary, which means that you do not have to award them even if you find that

11    the evidence would support them.  The fact that the Court is instructing you on the law of

12    punitive damages is not meant in any way to influence your decision whether to impose them.

13        You must not award punitive damages to send a message to Rimini Street and/or Seth

14    Ravin or to prevent Rimini Street and/or Seth Ravin from lawfully competing with Oracle

15    America or Oracle International Corporation.

16

17    Authority:    *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416-17 (2003).

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

1   43.   **DAMAGES—PUNITIVE DAMAGES—LIABILITY [PHASE 1]**

2   If you find that Oracle America and/or Oracle International Corporation is entitled to

3   compensatory damages for actual harm or loss on any of the following claims, then you may, but

4   are not required to, award punitive damages to Oracle America and/or Oracle International

5   Corporation:

6   1)   California Computer Data Access and Fraud Act (CDAFA);

7   2)   Nevada Computer Crime Law (NCCL); or

8   3)   Intentional interference with prospective economic advantage.

9   You may not award punitive damages with respect to any other claim by any of the

10   plaintiffs.

11   If you find that Oracle America and/or Oracle International Corporation are entitled to

12   compensatory damages for actual harm or loss caused under one or more of those claims, then

13   you may consider whether you should award punitive damages against that Defendant.   The

14   question whether to award punitive damages against a particular Defendant must be considered

15   separately with respect to each Defendant.

16   You may award punitive damages against a Defendant only if Oracle America and/or

17   Oracle International Corporation proves by clear and convincing evidence that the wrongful

18   conduct upon which you base your finding of liability for compensatory damages was engaged in

19   with fraud, oppression or malice on the part of that Defendant.

20   To award punitive damages against Rimini Street, you must also find that the conduct

21   constituting malice, oppression, or fraud was committed by one or more officers, directors, or

22   managing agents of Rimini Street who acted on behalf of Rimini Street or an officer, director, or

23   managing agent authorized the conduct or knew the conduct occurred and approved it after it

24   occurred.

25   You cannot punish the Defendant for conduct that is lawful, or which did not cause actual

26   harm or loss to Oracle America and/or Oracle International Corporation.   For the purposes of

27   your consideration of punitive damages only:

28

"Fraud" means an intentional misrepresentation, deception or concealment of a material fact known to a defendant with the intent to deprive Oracle America and/or Oracle International Corporation of rights or property or to otherwise injure Oracle America and/or Oracle International Corporation.

"Oppression" means despicable conduct that subjects Oracle America and/or Oracle International Corporation to cruel and unjust hardship with a conscious disregard of the rights of the Oracle America and/or Oracle International Corporation.

"Malice" means conduct which is intended to injure the Oracle America and/or Oracle International Corporation or despicable conduct which is engaged in with a conscious disregard of the rights or safety of Oracle America and/or Oracle International Corporation.

"Despicable conduct" means conduct that is so vile, base or contemptible that it would be looked down upon and despised by ordinary, decent people.

"Conscious disregard" means knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to avoid these consequences.

The purposes of punitive damages are to punish a wrongdoer that acts with fraud, oppression and/or malice in harming a plaintiff and deter similar conduct in the future, not to make the plaintiff whole for its injuries.  Consequently, a plaintiff is never entitled to punitive damages as a matter of right and whether to award punitive damages against a Defendant is entirely within your discretion.

You are only asked to decide whether punitive damages would be proper and justified in this case.  You are not asked to determine an amount of punitive damages.

Authority:  Nevada Jury Instructions (Civil) No. 12PD.1 (2011) (citing Nevada and California authorities) (added introductory paragraph and limitation to specific claim; omitted unnecessary optional language; conformed to party names; simplified final paragraph); Nev. Rev. Stat. § 205.511(1) (punitive damages available for NCCL); Cal. Penal Code § 502(e)(4) (punitive damages available for CDAFA); Cal. Civ. Code § 3294 (California punitive damages); Nev. Rev. Stat. § 42.01 (Nevada punitive damages); *see also see also* ABA Model Jury Instruction No. 20.1.3 (Business Torts) (2005).

44.     **PUNITIVE DAMAGES—SPECIFIC HARM TO PLAINTIFF [PHASE 1]**

Punitive damages may not be used to punish Rimini Street and/or Seth Ravin for conduct or harm that was not proven at trial or based on harm to persons other than Oracle.  Rather, punitive damages must be limited to the specific harm suffered by Oracle America and/or Oracle International Corporation and that Oracle America and/or Oracle International Corporation proved at trial.  Accordingly, you must limit any punitive damages you award to the specific harm from losing the specific clients for which Oracle America and/or Oracle International Corporation has proven that Rimini Street and/or Seth Ravin induced a breach of contract or intentionally interfered with Oracle America and/or Oracle International Corporation's prospective economic advantage.  You may award punitive damages only related to the conduct for those specific clients.

Authority:  *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation"); *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis"); *id.* at 422 ("conduct must have a nexus to the specific harm suffered by the plaintiff"); *Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907 (2008).

45.    **PUNITIVE DAMAGES—OBJECTIVELY REASONABLE CONDUCT [PHASE 1]**

Even if you find that punitive damages might be available, if you decide that Rimini Street and/or Seth Ravin acted based on an objectively reasonable belief that its conduct was not unlawful, such as its interpretation of what the licenses allowed, then you must not award any punitive damages.

Authority:  Order at 8, Dkt. No. 724 ("[T]he court finds that Hilliard's testimony about industry standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful infringement.  In his expert report, Hilliard provides testimony and analysis of the ordinary practices in the industry. The court finds that such testimony will assist the jury in determining whether defendants' actions were willful."); *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2215-16 (2007) ("disagree[ing]" with defendant's analysis of its legal obligations, but holding that because defendant's interpretation, "albeit erroneous, was not objectively unreasonable," defendant could not be said to have acted "willfully" or with "reckless disregard"); *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 184-185 (1994) ("Neither punishment nor deterrence is ordinarily called for if the defendant's actions proceeded from an honest mistake or a sincere and reasonable difference of factual evaluation. …   [C]ourts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions"); *Lusardi Construction Co. v. Aubry*, 1 Cal. 4th 976, 996-97 (1992) ("courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions"); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 (1994) (although defendant's conduct was "negligent," "overzealous," "legally erroneous," and "callous," it could not support a punitive damage award as a matter of law); *Chateau Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 348, 351 n.10 (2001) (punitive damages inappropriate where there is a "genuine dispute" over legal and factual issues); *Kendall Yacht Corp. v. United Cal. Bank*, 50 Cal. App. 3d 949, 958-59 (1975) (rejecting claim for punitive damages because it "remains purely speculative as to whether the Bank acted with such malice rather than out of a bona fide disagreement over how far the Bank was required to go in helping the Kendalls with their financial problems").

JURY INSTRUCTIONS

1  46.   **PUNITIVE DAMAGES—INDUSTRY STANDARDS [PHASE 1]**

2       Even if you find that punitive damages might be available, if you decide that Rimini

3  Street and/or Seth Ravin acted consistent with industry standards or custom, then you must not

4  award any punitive damages.

5

6  Authority:  Order at 8, Dkt. No. 724 ("[T]he court finds that Hilliard's testimony about industry
   standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful

7  infringement.  In his expert report, Hilliard provides testimony and analysis of the ordinary
   practices in the industry. The court finds that such testimony will assist the jury in determining

8  whether defendants' actions were willful."); *Ramirez v. Plough*, 6 Cal.4th 539, 552-555 (1993);
   *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 420-421 & n.1 (1978) (summarizing evidence of

9  industry standards and custom when describing "the facts material to the design defect issue");
   *Soule v. General Motors Corp.*, 8 Cal. 4th 548, 558 (1994); *Hansen v. Sunnyside Products, Inc.*,

10 55 Cal. App. 4th 1497, 1520 (1997) (noting defense testimony that warning label complied with
   industry customs and federal standards creates question whether product was defective,

11 precluding JNOV for plaintiff); *Hernandez v. Badger Construction Equipment Co.*, 28 Cal. App.

12 4th 1791, 1828 (1994) ("[T]he jury heard evidence when Badger sold the crane in 1981 industry
   standards did not require ATBD's as standard equipment.  Thus, the jury could properly

13 conclude the crane was not defective in 1981"); *Mason v. Mercury Casualty Co.*, 64 Cal. App.
   3d 471, 475 (1976) (citing defendant's compliance with industry custom in rejecting punitive

14 damages as a matter of law); *see also Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2216 n.20

15 (2007) ("Where . . . agency guidance" permits or authorizes a defendant's conduct, "it would
   defy history and current thinking to treat [that] defendant . . . as a knowing or reckless violator").

16

17

18

19

20

21

22

23

24

25

26

27

28

1    47.    **PUNITIVE DAMAGES—FAIR NOTICE [PHASE 1]**

2           Even if you find that punitive damages might be available, if you decide that at the time

3    of the challenged conduct Rimini Street and/or Seth Ravin was not on reasonable and fair notice

4    that its conduct was unlawful, then you must not award any punitive damages.

5

6    Authority:  Order at 8, Dkt. No. 724 ("[T]he court finds that Hilliard's testimony about industry
     standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful

7    infringement.  In his expert report, Hilliard provides testimony and analysis of the ordinary
     practices in the industry.  The court finds that such testimony will assist the jury in determining

8    whether defendants' actions were willful."); *FCC v. Fox Television Stations, Inc.*, 132 S. Ct.
     2307, 2317 (2012) (potential for liability must be clearly established at the time of the challenged

9    conduct); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) (same); *State Farm
     Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[E]lementary notions of fairness

10   enshrined in our constitutional jurisprudence dictate that a person receive fair notice . . . of the
     conduct that will subject him to punishment."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574

11   (1996); *United States v. Lanier*, 520 U.S. 259, 266 (1997) (same); *Landgraf v. USI Film

12   Products*, 511 U.S. 244, 266 (1994) (because punitive damages "share key characteristics of
     criminal sanctions" the "[r]etroactive imposition of punitive damages would raise a serious

13   constitutional question"); *Giaccio v. State of Pennsylvania*, 382 U.S. 399 (1966); Cal. Const., art.
     I, § 7(a).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JURY INSTRUCTIONS

48.   **DAMAGES—PUNITIVE DAMAGES—NO RIGHT TO PUNITIVE DAMAGES [PHASE TWO]**

You must now decide the amount, if any, that you should award Oracle America and/or Oracle International Corporation in punitive damages.  There is no right to punitive damages.  Accordingly, you need not award punitive damages even if you have found that the standard for imposing punitive damages has been satisfied.

The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.  There is no fixed formula for determining the amount of punitive damages and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors separately in determining the amount:

(a)   How reprehensible was that defendant's conduct? In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:

1)   Whether the conduct caused physical harm;

2)   Whether the defendant disregarded the health or safety of others;

3)   Whether Oracle America and/or Oracle International Corporation was financially weak or vulnerable and the Defendant knew Oracle America and/or Oracle International Corporation was financially weak or vulnerable and took advantage of it;

4)   Whether Defendant's conduct involved a pattern or practice; and

5)   Whether Defendant acted with trickery or deceit.

(b)   Is there a reasonable relationship between the amount of punitive damages and Oracle America and/or Oracle International Corporation harm that Rimini Street and/or Seth Ravin knew was likely to occur because of its conduct?

(c)   In view of Defendant's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.  Any award you impose may not exceed Rimini Street and/or Seth Ravin's ability to pay.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Authority</u>:   CACI 3949 (modified only to conform party names; omitted unnecessary optional language); Cal. Civ. Code § 3294 (California punitive damages); Nev. Rev. Stat. § 42.010 (Nevada punitive damages); *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Chavez v. Keat*, 34 Cal. App. 4th 1406, 1415 (1995); *Bongiovi v. Sullivan*, 122 Nev. 556 (2006); *see also* ABA Model Jury Instruction No. 20.1.3 (Business Torts) (2005).

JURY INSTRUCTIONS

49.     **PUNITIVE DAMAGES—SPECIFIC HARM TO PLAINTIFF [PHASE TWO]**

Punitive damages may not be used to punish Rimini Street and/or Seth Ravin for conduct or harm that was not proven at trial or based on harm to persons other than Oracle America and/or Oracle International Corporation.  Rather, punitive damages must be limited to the specific harm suffered by Oracle America and/or Oracle International Corporation and that Oracle America and/or Oracle International Corporation proved at trial.  Accordingly, you must limit any punitive damages you award to the specific harm from losing the specific clients for which Oracle America and/or Oracle International Corporation has proven that Rimini Street and/or Seth Ravin induced a breach of contract or intentionally interfered with Oracle America and/or Oracle International Corporation's prospective economic advantage.  You may award punitive damages only related to the conduct for those specific clients.

Authority:  *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation"); *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis"); *id.* at 422 ("conduct must have a nexus to the specific harm suffered by the plaintiff"); *Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907 (2008).

50. **PUNITIVE DAMAGES—RELATIONSHIP TO COMPENSATORY DAMAGES [PHASE TWO]**

The purpose of compensatory damages is to compensate the plaintiff and to make him whole.  However, a substantial award of compensatory damages also has the effect of punishing and deterring misconduct.  Therefore, in determining the amount of punitive damages, if any, to award, you must consider the punitive and deterrent effect associated with your award of compensatory damages alone.

The size of the punitive damage award must bear a reasonable relationship to the amount of harm caused to the plaintiffs by the defendant's punishable misconduct.  If the compensatory damages awarded are substantial, then a punitive damage award equal to the compensatory award can reach the outermost limit permitted by law, although a lesser amount may be appropriate.

Authority:  *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003) ("courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered"); *Simon v. San Paolo U.S. Holding Co., Inc.*, 35 Cal. 4th 1159, 1181-1182 (2005) ("While the high court had in *BMW* and earlier decisions already demanded that punitive damages bear a 'reasonable relationship' to compensatory damages . . . the decision in *State Farm* addressed this guidepost with markedly greater emphasis and more constraining language"); *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 962 (Nev. 1998) ("Punitive damages are legally excessive when the amount of damages awarded is *clearly* disproportionate to the degree of blameworthiness and harmfulness inherent in the oppressive, fraudulent or malicious misconduct of the tortfeasor under the circumstances of a given case.  If the awarding jury or judge assesses more in punitive damages than is reasonably necessary and fairly deserved in order to punish the offender and deter others from similar conduct, then the award must be set aside as excessive.").

1   51.   **PUNITIVE DAMAGES—FINANCIAL CONDITION [PHASE TWO]**

2        The purpose of punitive damages is not served by financially destroying a defendant.

3   Therefore, any award of punitive damages should reflect the amount you believe is appropriate

4   to punish and deter, but you should not award an amount of punitive damages that is a significant

5   percentage of a Rimini Street and/or Seth Ravin's net worth, that would prevent Rimini Street

6   from continuing to operate, or that would threaten bankruptcy because such a punitive damages

7   award would be excessive under the law.

8

9   Authority:  *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *Adams v. Murakami*, 54 Cal.3d 105, 112 (1991) ("[T]he purpose of punitive damages is not served by financially destroying a defendant.  The purpose is to deter, not to destroy."); *id.* (approving of cases holding that punitive damages award was excessive when it was a significant percentage of defendant's net worth); *id.* at 113 (punitive damages award should not "financially annihilate the defendant") *id.* at 114 (financial condition evidence necessary to ensure punitive damages award does not "bankrupt the defendant"); Nev. Rev. Stat. § 42.005(4); *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 962 (Nev. 1998) ("In determining whether a punitive damages award is excessive pursuant to this standard, we will consider a variety of factors including "'the financial position of the defendant…'"); *Guaranty Nat'l Ins. Co. v. Potter*, 112 Nev. 199, 208 (1996) (same); Magna Carta (1215) ch. 20 (cited by *Adams v. Murakami*).

52.   **DUPLICATIVE DAMAGES**

Oracle seeks an award of damages under multiple claims or legal theories.  Oracle is not entitled to recover twice for the same injury.  For example, if you conclude that Rimini Street is liable for causing Oracle to lose a customer under multiple claims or theories, you must award damages to Oracle for that customer only once.

After each claim or legal theory on your verdict form, there is a space for the amount of damages – if any – that you intend to award to Oracle under that claim or legal theory.  The amount you enter into these spaces should not include damages that are duplicative of other damages you have awarded for other claims or theories.

Authority:  *Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP*, 313 F. Supp. 2d 247, 250-251 (S.D.N.Y. 2004) (holding plaintiff was not entitled to double recovery for "the same lost sales that form the basis for the copyright damages").

JURY INSTRUCTIONS

1

## I.  CONCLUSION

2

3      Rimini Street, Inc. and Seth Ravin respectfully request that the Court adopt the foregoing

instructions.

4

5      DATED:        September 9, 2015                LEWIS ROCA ROTHGERBER

6                                                     By:___/s/ W. West Allen_____

7                                                     W. West Allen

8                                                     *Attorneys for Defendants*

9                                                     *Rimini Street, Inc. and Seth Ravin*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28