SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 780
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S TRIAL BRIEF** |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................5

    A.    The J.D. Edwards, Siebel, and PeopleSoft Documentation and Licenses
        Expressly Authorized Rimini's Conduct and Defeat Oracle's Copyright
        Infringement Claim. ...................................................................................5

    B.    Oracle's Damages Theories Are Defective.................................................8

        1.    Actual Damages: The Fair Market Value of Use Is the Correct
                Measure of Copyright Damages ....................................................10

        2.    Infringer's Profits: Oracle Is Not Entitled to Infringer's Profits
                Beyond the Duplicative $9.3 Million.............................................12

        3.    Non-Copyright Claims: Oracle Failed to Offer Damages Theories
                on Its Remaining Claims................................................................14

    C.    The Law and the Evidence Rimini Anticipates Offering at Trial Support
        Rimini's Copyright Misuse Defense..........................................................15

    D.    Oracle Must Prove Its Intentional Tort Claims as to Each Specific Client and
        Prospective Relationship...........................................................................18

    E.    Oracle Cannot Establish Liability Under Its Unavailable, Unsupported, and
        Unconstitutional Criminal Computer Hacking Claims................................21

    F.    Oracle's Trespass to Chattels and Breach of Contract Claims Are Worthless. ........24

    G.    Any Punitive Damages Award Would Be Erroneous and Unconstitutional. ...........26

    H.    The Court Should Exclude Evidence Regarding TomorrowNow. ...........................27

III.  CONCLUSION.................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ajuba Int'l L.L.C. v. Saharia,*
    871 F. Supp. 2d 671 (E.D. Mich. 2012) ................................................................ 23

*Alcatel USA, Inc. v. DGI Technologies, Inc.,*
    166 F.3d 772 (5th Cir. 1999) .............................................................................. 16

*Allen v. Int'l Business Machines Corp.,*
    2002 WL 31898317 (Cal. Ct. App. Dec. 31, 2002) ............................................ 20

*Altera Corp. v. Clear Logic, Inc.,*
    424 F.3d 1079 (9th Cir. 2005) ....................................................................... 3, 15

*Am. Surety Co. v. Baldwin,*
    287 U.S. 156 (1932) .......................................................................................... 21

*Apple, Inc. v. Samsung Elecs. Co.,*
    2013 WL 6001902 (N.D. Cal. Nov. 12, 2013) ................................................... 15

*Baisden v. I'm Ready Prods.,*
    693 F.3d 491 (5th Cir. 2012) ............................................................................... 5

*Blue Nile, Inc. v. Ice.com, Inc.,*
    478 F. Supp. 2d 1240 (W.D. Wash. 2007) ......................................................... 15

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996) .......................................................................................... 26

*Branch v. Ogilvy & Mather, Inc.,*
    772 F. Supp. 1359 (S.D.N.Y. 1991) .................................................................. 13

*Chamberlain Group, Inc. v. Skylink Tech., Inc.,*
    381 F.3d 1178 (Fed. Cir. 2004) ................................................................... 16, 17

*Cheek v. United States,*
    498 U.S. 192 (1991) .......................................................................................... 22

*Crunchyroll, Inc. v. Pledge,*
    2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) ................................................... 11

*Della Penna v. Toyota Motor Sales,*
    11 Cal. 4th 376 (1995) ...................................................................................... 20

*Duran v. U.S. Bank Nat'l Assoc.,*
    59 Cal. 4th 1 (2014) .......................................................................................... 21

*Evenflow Plumbing Co. v. Pac. Bell Directory,*
    2005 WL 1353822 (N.D. Cal. June 7, 2005) ..................................................... 11

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc.,*
    2013 WL 3872950 (E.D. Cal. July 25, 2013) ..................................................... 23

*FCC v. Fox Television Stations, Inc.*,
    132 S. Ct. 2307 (2012) ........................................................................................... 26

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ............................................................................... 13

*Gonzales v. Carhart*,
    550 U.S. 124 (2007) ............................................................................................. 23

*Instant Technology, LLC v. DeFazio*,
    40 F. Supp. 3d 989 (N.D. Ill. 2014) .................................................................... 23

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) ....................................................................................... 25

*J.J. Indus., LLC v. Bennett*,
    119 Nev. 269 (2003) ...................................................................................... 19, 20

*Lasercomb Am., Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) ............................................................................... 15

*Lindsey v. Normet*,
    405 U.S. 56 (1972) ............................................................................................... 21

*Mackie v. Rieser*,
    296 F.3d 909 (9th Cir. 2002) ............................................................................... 10

*Mallinckrodt, Inc. v. Medipart, Inc.*,
    976 F.2d 700 (Fed. Cir. 1992) ............................................................................. 16

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) ......................................................................................... 20

*Munchkin, Inc. v. Playtex Prods., LLC*,
    2015 U.S. App. LEXIS 13424 (9th Cir. July 31, 2015) .................................. 15, 25

*Omega S.A. v. Costco Wholesale Corp.*,
    776 F.3d 692 (9th Cir. 2015) ........................................................................... 15, 18

*Oracle Corp. v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014) ................................................................... 11, 12, 13

*Oracle USA, Inc. v. SAP AG*,
    2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) ..................................................... 14

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) .................................................................................... 3, 20

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007) ........................................................................................ 21, 27

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ..................................................... 10, 11, 12, 13

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
    121 F.3d 516 (9th Cir. 1997) ............................................................ 16, 17

*Ramirez v. Plough,*
    6 Cal. 4th 539 (1993) ....................................................................... 26

*Roby v. McKesson Corp.,*
    47 Cal. 4th 686 (2010) ..................................................................... 26

*Safeco Ins. Co. of Am. v. Burr,*
    127 S. Ct. 2201 (2007) ..................................................................... 26

*Siechert & Synn v. Apple Inc.,*
    2015 WL 513645 (Cal. Ct. App. Feb. 6, 2015) ................................ 20

*Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP,*
    313 F. Supp. 2d 247 (S.D.N.Y. 2004) .............................................. 14

*Sprint Solutions Inc. v. Pacific Cellupage Inc.,*
    2014 WL 3715122 (C.D. Cal. July 21, 2014) ................................... 23

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ......................................................................... 27

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ......................................................................... 20

*United States v. Drew,*
    259 F.R.D. 449 (C.D. Cal. 2009) ..................................................... 24

*United States v. Nosal,*
    676 F.3d 854 (9th Cir. 2012) .................................................. 22, 23, 24

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ..................................................................... 21

**Statutes**

17 U.S.C. § 301 ........................................................................................ 15

17 U.S.C. § 504 ................................................................................ 10, 12, 13

18 U.S.C. § 1030 ............................................................................... 2, 21, 22

Cal. Bus. & Prof. Code § 17200 ............................................................... 2

Cal. Civ. Code § 3294 ............................................................................... 26

Cal. Penal Code § 502 ......................................................................... 2, 22

Nevada Revised Statute § 205.4765 ................................................... 2, 22

# I.   INTRODUCTION

In this case, Oracle USA, Inc. ("Oracle USA"), Oracle America, Inc. ("OA"), and Oracle International Corporation ("OIC") (collectively, "Oracle") seek to use a limited set of technical breaches of licenses as the basis for claims of infringement of OIC's copyrights by Rimini Street, Inc. ("Rimini").  Oracle thus aims to drive Rimini out of business so that OA can strengthen its grip on the software support services market—where it does not assert a copyright, patent, or any other right to exclude Rimini.  OIC owns the rights to the PeopleSoft, J.D. Edwards, Siebel, and Database software products at issue in the litigation.  But OIC, the copyright owner, has no business operations and merely licenses OA to sublicense the right to use those products to OA's customers.  OA, while owning none of the copyrights at issue in this case, is engaged in operations in competition with Rimini.  The license agreements between OA and its customers expressly permit OA's clients to use third-party support providers, such as Rimini, in order to obtain technical assistance with the software as implemented on the customers' systems.

In this lawsuit, OA and OIC assert a kaleidoscope of claims against Rimini, including copyright infringement, tortious interference with business relations, trespass to chattels, breach of contract, and criminal computer hacking.  There are serious problems with these claims that should preclude either OA or OIC from litigating them at trial, much less submitting them to the jury.  To assist the Court in wading through this morass, this brief identifies some of the key issues with Oracle's copyright, computer hacking, tort, breach of contract, and trespass claims.  This brief does not address Oracle's derivative claims (such as its California Unfair Competition Law claims, Unfair Practices claim, restitution, or accounting claim) because Oracle is not proposing jury instructions for these claims, and they are in any event preempted.  As set forth below and as will be demonstrated at trial, Oracle's principal claims fail because they are either unsupported by the evidence or law, or result in nothing more than minimal damages.  For the Court's convenience, the following table sets forth the claims asserted by OIC and OA:[1]

---

[1] Oracle thus far simply has ignored that there are multiple plaintiffs in this case, not just one.  Not all plaintiffs assert the same claims.  Although the parties have referred generally to "Oracle" as a useful shorthand term (including in this brief), each individual plaintiff must prove its own claims, its own standing, and its own damages, allegedly caused by each accused defendant on each claim.

| Count | Cause of Action | Plaintiff |
|---|---|---|
| 1 | Copyright Infringement (PeopleSoft, J.D. Edwards, Siebel, Database) | OIC |
| 2 | Federal Computer Fraud and Abuse Act – 18 U.S.C. §§ 1030(a)(2)(C), (a)(4) and (a)(5) | OA, OIC |
| 3 | Computer Data Access and Fraud Act – Cal. Penal Code § 502 | OA, OIC |
| 4 | Nevada Revised Statute § 205.4765 | OA, OIC |
| 5 | Breach of Contract | OA |
| 6 | Inducing Breach of Contract (PeopleSoft, J.D. Edwards, Siebel) | OA |
| 7 | Intentional Interference With Prospective Economic Advantage (PeopleSoft, J.D. Edwards, Siebel) | OA, OIC |
| 8 | Unfair Competition – Cal. Bus. & Prof. Code § 17200 *et seq.* (PeopleSoft, J.D. Edwards, Siebel) | OA, OIC |
| 9 | Trespass to Chattels | OA |
| 10 | Unjust Enrichment/Restitution (PeopleSoft, J.D. Edwards, Siebel) | OA, OIC |
| 11 | Unfair Practices – Cal. Bus. & Prof. Code §§ 17000, *et seq.* (PeopleSoft, J.D. Edwards, Siebel) | OA, OIC |
| 12 | Accounting | OA, OIC |

With respect to the infringement issues, the key question for purposes of assessing liability is whether a few discrete Rimini processes exceeded the scope of Oracle's license agreements and thus constituted copyright infringement. For the Court's convenience, the following table sets forth the conduct that Oracle accuses in this case:

| Label | Accused Conduct |
|---|---|
| Local Hosting of ERP software | Rimini maintained client software and support material on Rimini servers rather than client servers. Dkt. No. 146 ¶ 28; 527 at 23. |
| Automated Downloads | Rimini used automated tools to assist clients in making downloads from the Oracle website prior to the end of the customer's Oracle maintenance agreement. Dkt. No. 146 ¶ 31. |
| "Cross-Using," One Copy of the Software to Support Multiple Clients Licensed to that Software | Rimini used one copy of Oracle software to support multiples clients that were licensed to that software. For example, using a customer-licensed copy of Oracle's PeopleSoft software to create updates for other Rimini clients licensed to the same version of the software. Dkt. No. 146 ¶¶ 40, 44, 60; 527 at 24, 26. |
| Oracle Database | Rimini copied and used Oracle database software on Rimini servers rather than client servers. Dkt. No. 527 at 25. |

While this Court already found that some activities violated the terms of some of Oracle's licenses (*e.g.*, local hosting of PeopleSoft and Oracle Database software), other claimed improper activities have not been adjudicated to be infringing as to other licenses (*e.g.*, local hosting of Siebel and J.D. Edwards software) and remain to be decided by the jury.

For acts found to constitute copyright infringement, the jury must determine whether Oracle has suffered any damages as a result of that infringement, and if so, the proper amount. Notwithstanding Oracle's wildly exaggerated damages claims of nearly a quarter billion dollars, the best measure of damages in this case is the fair market value of Rimini's use of Oracle's licenses, which cannot exceed $9.3 million. Oracle is not entitled to lost profits, because it has no evidence that each customer would have stayed with Oracle had Rimini not engaged in the accused acts. And there are no infringer's profits to disgorge because Rimini's expenses far exceed its revenue. Further, Oracle has failed to set forth any independent damages theories for its non-copyright claims, because this case is and always has been a copyright case.

Oracle's purpose in bringing this lawsuit is not compensation for any harm from copyright infringement due to conduct exceeding the scope of the OA license agreements; rather, Oracle wants to prevent Rimini from lawfully and legitimately competing with OA in the software support market.[2]

In addition to OIC's copyright infringement claims, OIC and OA seek to "pile on" with intentional tort claims that the California Supreme Court has described as inconsistent with "our interest in a freely competitive economy" because of "the dangers inherent in imposing tort liability for competitive business practices." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1136-37 (1990). These fallback claims will fail at trial because, among other reasons, OIC

---

[2] Rimini respectfully submits that Oracle's actions constitute misuse of Oracle's copyrights. While OIC has copyrights in the software for the various programs at issue in this lawsuit, OA does not. Neither OIC nor OA has a copyright, patent, or any other right to leverage OIC's copyrights in order to create or strengthen a monopoly by OA over the market for support services for OIC's copyrighted programs. OIC's interpretations of its license agreements, if accepted by the jury and by this Court, effectively would do exactly that, and this constitutes a misuse of OIC's copyright that should preclude any finding of liability against Rimini. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005).

and OA must, but cannot, prove their expansive allegations *individually* as to *each* particular customer or prospective relationship for which they contend Rimini had the specific motive to injure and in fact did so.   Neither OA nor OIC has alleged any specific damages for these claims, and neither can prove tort claims for any more than a few customers that OA claims it lost as a result of Rimini's alleged infringement.   Thus, OA and OIC may seek to avoid that burden by attempting to prove a few claims and then asking the jury to extrapolate to a larger pool of third parties.   But neither tort law nor due process gives Oracle a free pass on its burden of proof.

Oracle's computer hacking claims are yet another example of Oracle's extreme overreach. These claims raise constitutional vagueness issues and are unsupported by the facts of this case. First, there is no evidence that OIC operates a server, much less that Rimini interfered with that server.   Second, these claims assert the exact same conduct as OA's breach of contract claim premised on Rimini's alleged breach of OA's website terms of use, but fail for the additional reasons that Rimini never hacked Oracle's computers (and Oracle does not claim otherwise), and Rimini had Oracle's licensees' authorization to access Oracle's computers (which Oracle does not dispute).   In addition to these fundamental problems with its *prima facie* case, the total potentially recoverable damages Oracle details as a result of these claims is less than $27,000 of "investigation costs."

OA's breach of contract and trespass to chattels claims arise from the same conduct as Oracle's computer hacking claims, and Oracle claims the same amount of less than $27,000 in total damages from these claims.   But Oracle will not be able to prove either claim because Oracle does not even seek nominal damages—likely because Oracle has not provided *any* quantifiable damages to its computer systems, an essential element of these claims.

Rimini also anticipates that Oracle will attempt to introduce irrelevant evidence intended to tar Rimini and Seth Ravin with TomorrowNow's past stipulation to civil copyright infringement and guilty plea to criminal copyright infringement, all for the purpose of creating the factually incorrect inference in the jury's mind that the two companies are one and the same.   But TomorrowNow has no relation to Rimini, and the infringing conduct for which TomorrowNow stipulated to liability and pleaded guilty occurred well after Seth Ravin left the company.   This evidence must be excluded as

early as possible at trial so as to avoid infecting the entire proceeding with prejudice and to avoid unnecessarily delaying and prolonging trial.

At bottom, Oracle's $250 million claims, while full of sound and fury, are unsupported by evidence and law.  Rimini expects that much of the case will be resolved through a Rule 50 judgment as a matter of law, and that the jury will see Oracle's overreaching for what it is:  a transparent attempt to destroy a smaller competitor.

## II.    ARGUMENT

**A.    The J.D. Edwards, Siebel, and PeopleSoft Documentation and Licenses Expressly Authorized Rimini's Conduct and Defeat Oracle's Copyright Infringement Claim.**

This case is not about "knock off" copies of Oracle's software, but instead addresses allegations of Rimini's use of copyrighted software on behalf of its properly licensed clients, allegedly outside of the scope of an OA license.  The Court has already determined that Rimini may rely on the terms of its clients' licenses with OA.  Dkt. No. 474 at 21 n.18, 23 n.19.[3]  To succeed on an express license defense, a defendant must first "identify any license provision(s) that it believes excuses its infringement" (Dkt. No. 474 at 6) and then the burden shifts to the plaintiff to show that the copying exceeded the scope of the license (*see Baisden v. I'm Ready Prods*., 693 F.3d 491, 507 (5th Cir. 2012)).  In its discovery responses, Rimini identified a number of specific provisions within each of the dozens of license agreements that Rimini believes excuses its infringement.  *See* Dkt. No. 649, Exs. 8-10.  Accordingly, the question for trial is whether Oracle can prove that any copying Rimini engaged in went beyond the scope of the cited provisions in the license agreements.

The Court's summary judgment orders identify at least two disputed factual issues for trial: (1) "whether Rimini's use of the development environment associated with Giant Cement [a J.D. Edwards licensee] was for archival purposes or whether Rimini accessed the software's source code"; and (2) whether Rimini made a "reasonable number" of copies of the Siebel software, and if so, whether it used them for "archival and/or back-up" purposes.  Dkt. No. 474 at 22-23, 24.  The

---

[3] The Court granted summary judgment to Oracle as to the Database software (Dkt. No. 476) and Rimini Street no longer advances a license defense as to PeopleSoft software (Dkt. No. 550). Accordingly, the express license defense is not at issue for those particular programs.

1   evidence shows that Oracle cannot meet its burden of proving that Rimini's copying exceeded the

2   scope of the relevant licenses.

3        ***J.D. Edwards***.  The crux of the dispute with respect to the J.D. Edwards program is whether

4   the "non-production environments" (or copies) that Rimini maintained on its systems were for

5   "archival purposes" (as opposed to some other purportedly impermissible purpose), and whether

6   Oracle can prove that Rimini improperly accessed the J.D. Edwards source code.  Section 7 of

7   Article II of the Giant Cement J.D. Edwards license (Dkt. No. 248, Ex. 16), which is similar but not

8   identical to other J.D. Edwards licenses (*see* Dkt. No. 620 at 6), expressly permits copying of the

9   software ███████████████████████████████████████████████████

10       Rimini anticipates that its trial evidence will show that Rimini's maintenance of non-

11  production environments on behalf of its J.D. Edwards clients was for archival purposes only.  To

12  date, Oracle has not offered any evidence to the contrary.  Oracle also has not adduced any evidence

13  that Rimini improperly accessed the J.D. Edwards source code, as opposed to merely viewing that

14  source code on a computer screen.  In fact, the expert and other testimony Rimini offered at

15  summary judgment, and which it anticipates offering, in conjunction with other testimony, at trial,

16  shows that Rimini's access to the J.D. Edwards source code did not extend beyond "screen access."

17  *See* Dkt. No. 266 at 23 (citing testimony of Slepko, Grigsby, and declaration of Hilliard).

18       ***Siebel***.  The question for the jury on the Siebel license is whether the number of non-

19  production environments Rimini maintained on its systems for its clients was "reasonable" and

20  whether the purposes for which those non-production environments were used were fairly

21  characterized as ████████████████████████████ of Novell's Siebel license, which

22  is similar, though not identical to, other Siebel licenses (*see* Dkt. No. 620 at 6) is the provision that

23  permits a ████████████████████████████████████████████████

24  █████████████████████████████████████████████████████████

25  ██████████████████████████████████████████   *See* Dkt.

26  No. 248, Ex. 17.

27

28

1    Again, it is Oracle's burden to prove that ███████████████████████████

2 ████████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████ that those

6 actions were common and well-established in the industry.  *See id.* at 26 (citing declaration of

7 Hilliard and testimony of Simmons).

8        ***PeopleSoft Documentation***.  Rimini no longer asserts a license defense as to the PeopleSoft

9 software based on the Court's February 2014 summary judgment order (Dkt. No. 550), but Rimini

10 did not withdraw this defense as to the PeopleSoft documentation.[4]  Rimini can and will, however,

11 present evidence regarding its understanding of the relevant license terms and the state of the art

12 within the industry in opposition to Oracle's willfulness claims.  Dkt. No. 724 at 8. ████████████

13 ████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████

18 █████████████████████████████████████████████████████████

19        This argument is not foreclosed by the Court's order granting summary judgment to Oracle

20 as to the PeopleSoft software infringement claim because the grounds for the Court's decision—that

21 the license did not permit a third party to make copies of the licensed software; that the development

22 environments Rimini created were not for archival, emergency back-up, and/or disaster recovery

23 purposes, but rather to develop and test software updates; and that the copies were kept on Rimini

24 servers outside the control of the licensees (*see* Dkt. No. 474 at 11-13)—do not apply to the

---

[4] "Documentation" is defined as "technical publications relating to the use of the Software, such as reference, user, installation, systems administrator and technical guides."  Dkt. No. 248, Ex. 10, section 16.

1    documentation.  Accordingly, there continue to be live issues of fact for the jury to resolve as to the

2    PeopleSoft documentation.

3         ***J.D. Edwards and Siebel Documentation.***  Rimini also has maintained that it had an express

4    license to copy the documentation associated with the J.D. Edwards and Siebel programs.  The right

5    to copy the documentation generally derives from the fact that the licenses grant authority to copy

6    the documentation ███████████████████████████████████████████████

7    █████████████████████████████████████████████████████████████████

8    █████████████████████████████████████████████████████████████████

9    █████████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████████████

12   (permitting third parties to "install, integrate, and otherwise implement the Programs and Ancillary

13   Programs").  As Rimini was lawfully supporting users or installing/integrating the J.D. Edwards and

14   Siebel programs, it was also permitted to make a reasonable number of copies of the documentation

15   in order to achieve those ends.

16   **B.     Oracle's Damages Theories Are Defective.**

17        A principal focus of this case will be the dispute over the nature and amount of OIC's and

18   OA's alleged damages.   These issues are presented in the parties' competing proposed jury

19   instructions, and many of the parties' disputes are also described in detail in the parties' prior

20   briefing (*see* Dkt. Nos. 653, 694, 724), and summarized here.

21        At trial, each side will present damages testimony through a primary damages expert as well

22   as through industry and technical experts.   Oracle's damages expert, Elizabeth Dean, set forth

23   damages calculations in her report for (1) actual damages for Oracle's copyright infringement,

24   (2) infringer's profits for the copyright infringement, and (3) duplicative damages calculations for

25   Oracle's computer access claim and state-law claims.   Oracle's theory as to each of these three

26   categories of damages is fatally flawed:

27

28

- ***Actual Damages***.  The parties agree that actual copyright damages are measured by either (i) lost profits *or* (ii) the fair market value of use of the copyrighted works.  Although Oracle has at the eleventh hour attempted to turn this into a lost profits case, both Rimini's expert and Oracle's *own expert* agree that the loss in the fair market value of Oracle's licenses—and not lost profits—is the appropriate measure of damages in this case.  Indeed, Oracle has not even attempted to demonstrate a causal connection between purportedly lost customers and Rimini's alleged infringement, as it must to prove lost profits.  Rather, Oracle has improperly attempted to shift that causation burden to Rimini, notwithstanding that the statute and controlling Ninth Circuit law confirm that demonstrating causation is Oracle's burden.  At trial, Rimini will demonstrate that the value of use, which cannot exceed $9.3 million in this case, is the proper measure of damages, and that Oracle's vastly exaggerated damages figures are not supported by law or evidence.  *See* Dkt. No. 724.

- ***Infringer's Profits***.  The parties also agree that a copyright holder is entitled to infringer's profits "attributable to the infringement," but only where (i) there are, in fact, profits to disgorge, and (ii) those profits are not duplicative of the actual damages.  Here, there are no infringer's profits because Rimini's expenses far exceed its revenue.  Further, even if there were infringer's profits, they would be limited to the costs Rimini saved and correlative profits Rimini gained from operational efficiencies it enjoyed by practicing the accused acts set forth above, which are not greater than $9.3 million and are duplicative of actual damages in any event.

- ***Non-Copyright Claims***.  Aside from $27,000 in investigation costs, Oracle's damages calculations for its non-copyright infringement claims, if they are recoverable at all, are completely duplicative of its copyright damages calculations, and therefore fail for the same reasons as the copyright damages claims and are also preempted.

1     **1.      *Actual Damages: The Fair Market Value of Use Is the Correct Measure of Copyright Damages***

2          Under the Copyright Act, a "copyright owner is entitled to recover the actual damages

3     suffered by him or her as a result of the infringement."  17 U.S.C. § 504(b).  And the Ninth Circuit

4     has defined actual damages as either (i) lost profits or (ii) the "value of the use of the copyrighted

5     work to the infringer."  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004);

6     *see also Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002).

7          The parties agreed for most of the pendency of this case that "value of use" is the better

8     measure of copyright damages here because, *inter alia*, it would be impossible for Oracle to

9     demonstrate that but for Rimini's infringement, Oracle would not have lost each customer, as is

10    required to prove lost profits.  ███████████████████████████████████████

11    ████████████████████████████████████████████████████████████

12    ████████████████████████████████████████████████████████████

13    ████████████████████████████████████████████████████████████

14    ████████████████████████████████████████████████████████████

15    ████████████████████  Ms. Dean therefore calculated the value of use as a $200 million hypothetical

16    license based on her flawed assumption that but for Rimini's infringement, it could not operate its

17    business.  However, due to intractable problems in Ms. Dean's analysis, Oracle has largely

18    abandoned Ms. Dean's value of use calculation in response to Rimini's *Daubert* motion.[5]  Dkt.

19    No. 636.  Accordingly, although Oracle's expert acknowledged that the fair market value of use is

20    the best measure of damages in this case, Oracles *does not have* a properly disclosed and legally

21    viable value of use damages model.

22          As a result, to prove actual damages, Oracle has at the last minute indicated that it will rely at

23    trial on Ms. Dean's admittedly problematic and entirely speculative lost profits damages model,

24    ████████████████████████████████████████████████████████████

25    ████████████████████████████████████████████████  But Ms. Dean's

26

27    _____

[5] OIC contends that it continues to seek the fair market value of use only as to its claims of infringement of the Oracle Database program.  Dkt. No. 600 at 2.

28                                                    - 10 -

1   analysis simply ignored that many Rimini clients (

2 ████████████████████████████████████ ████████████████ ████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8   Oracle conducted fact discovery as to each of Rimini's over 300 clients, but Ms. Dean ignored and

9 did not analyze that evidence.  Rather than try to determine which customers left Oracle because of

10 Rimini's alleged infringement, and which customers left for other reasons, Ms. Dean simply

11 subtracted a tiny percentage (5%) in an attempt to make her report seem reasonable.

12        Ms. Dean's lost profits damages model completely ignores Oracle's burden to demonstrate

13 that Oracle would have earned the allegedly lost profits ***but for*** the infringing activity.  *Oracle Corp.*

14 *v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) ("A plaintiff in a § 504(b) action must establish [a]

15 causal connection" "between the infringement and the monetary remedy sought"); *Evenflow*

16 *Plumbing Co. v. Pac. Bell Directory*, 2005 WL 1353822, at *1 (N.D. Cal. June 7, 2005) ("Of course,

17 the copyright holder bears the burden of showing that the infringement was the cause of the loss of

18 profits").  Indeed, the Ninth Circuit has made clear that where a plaintiff cannot show that the loss of

19 (or failure to gain) a particular client is attributable to infringement, it "cannot recover damages

20 related to [that client]."  *Oracle v. SAP*, 765 F.3d at 1094; *see also Crunchyroll, Inc. v. Pledge*, 2014

21 WL 1347492, at *3 (N.D. Cal. Mar. 31, 2014) ("It is entirely speculative" to assume that clients of

22 infringer "would [have] automatically" become clients of copyright holder absent infringement

23 given client preferences unrelated to infringement); *see also* Dkt. No. 694.

24        Rimini will therefore request that the Court reject Oracle's lost profits legal theory in ruling

25 on the parties' disputed jury instructions.  And because Oracle will not be able to put forth evidence

26 to meet its burden of proving causation, Rimini intends to seek a directed verdict under Rule 50 of

27 the Federal Rules of Civil Procedure after Oracle's case-in-chief.  *See Polar Bear*, 384 F.3d at 708

28

(reversing verdict where "the profits portion" of the "actual damages award" was unduly "speculative").

Because Oracle cannot demonstrate, as it must, that Rimini *caused* Oracle to lose profits from each particular client, the fair market "value of use to the infringer" is the best measure of Oracle's actual damages under the Copyright Act in this case. *Polar Bear*, 384 F.3d at 708. Both economic reality and common sense dictate that a prospective licensee like Rimini would not pay Oracle a sum for a license that far exceeded the cost of accomplishing the same thing *without* a license (*Oracle v. SAP AG*, 765 F.3d at 1089 ("the buyer will not ordinarily pay more for a license than its anticipated benefit")), and Oracle's arguments to the contrary are incorrect for the reasons stated in Rimini's opposition to Oracle's *Daubert* motion (*see* Dkt. No. 694). As this Court recognized in denying Oracle's *Daubert* motion, "the value of a hypothetical license to Rimini is the amount that it would have cost Rimini to implement a non-infringing alternative." Dkt. No. 724 at 5. Rimini will demonstrate that, during the relevant period, it had alternatives to each of the acts OA and OIC accuse. Thus, the jury will need to determine what the cost of implementing those alternative acts would have been and what the correlative amount of profits Rimini earned by using the more efficient, but allegedly impermissible, processes. Rimini's expert has calculated this amount as not exceeding $9.3 million.

### 2.   *Infringer's Profits: Oracle Is Not Entitled to Infringer's Profits Beyond the Duplicative $9.3 Million*

The Copyright Act also provides that a copyright owner is entitled to disgorge the infringer's profits that are caused by the infringement, but only where those profits are not duplicative of the actual copyright damages. 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover … any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages"). The Copyright Act "creates a two-step framework for recovery of [infringer's] profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the

burden of apportioning profits that were not the result of infringement." *Polar Bear*, 384 F.3d at 711.

Here, Oracle will not be able to offer evidence to meet its initial burden of demonstrating a causal nexus between infringement and gross revenue. Indeed, Oracle "must do more than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement. The result is that a plaintiff seeking to recover indirect profits must formulate the initial evidence of gross revenue duly apportioned to relate to the infringement." *Id.* But Oracle's expert simply failed to differentiate which of Rimini's profits "are attributable" to the infringement, and which profits are unrelated to the infringement. 17 U.S.C. § 504(b). As the Ninth Circuit made clear in *Oracle v. SAP*, where an "expert was unsure" "as to whether the loss of ... three customers was attributable to" infringement, any award of infringer's profits is "unduly speculative," and Oracle "cannot recover damages related to those" customers. *Oracle v. SAP*, 765 F.3d at 1095. Rimini therefore will move for a directed verdict on the issue of infringer's profits after Oracle's case-in-chief.

Further, even if Oracle could meet its burden of demonstrating which of Rimini's revenues are attributable to infringement, there are no profits to disgorge because Rimini's costs exceed its revenue, as Rimini will demonstrate at trial. *See* Hampton Rpt. ¶¶ 247-260 ("Rimini Street has never earned a positive operating income"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985); *see also Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1363 (S.D.N.Y. 1991) (affirming jury's award of $1 in nominal damages where copyright infringer's costs exceeded its revenue).

Finally, any infringer's profits here would be duplicative of an actual damages award, because the "value of use" to the infringer necessarily includes the infringer's profits. And because a copyright holder is only entitled to disgorge profits that "are not taken into account in computing the actual damages" (17 U.S.C. § 504), allowing Oracle to both collect actual damages and duplicative infringer's profits would amount to double recovery not permitted by the Copyright Act. Thus, the district court in *Oracle v. SAP* instructed the jury that, unlike a lost profits award, an award

for the value of use of Oracle's copyrighted works (in the form of a hypothetical license) necessarily included infringer's profits. *Oracle USA, Inc. v. SAP AG*, 2011 WL 3862074, at *13 (N.D. Cal. Sept. 1, 2011).

Thus, infringer's profits are not truly at issue in this case, and even if they were, the $9.3 million Rimini saved by using the more efficient accused processes is duplicative of the fair market value of use and Oracle may not recover those damages twice. Oracle's arguments to the contrary are meant solely to distract the jury from the relevant issues.

### 3. *Non-Copyright Claims: Oracle Failed to Offer Damages Theories on Its Remaining Claims*

Aside from the minimal $27,000 in investigation costs, Oracle has neglected to offer any damages theories for its non-copyright claims because this case is, and has always been, about copyright infringement. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████. Of course, Oracle is not entitled to "double recovery" for its copyright infringement claim and non-copyright claims. *See Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP*, 313 F. Supp. 2d 247, 250-51 (S.D.N.Y. 2004) (holding plaintiff was not entitled to double recovery for "the same lost sales that form the basis for the copyright damages").

- 14 -

Rimini will demonstrate at trial that the duplicative nature of Oracle's state-law and copyright infringement claims renders the state-law claims preempted by the Copyright Act. 17 U.S.C. § 301(a); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1251 (W.D. Wash. 2007) (state-law claim "based on rights equivalent to those protected by copyright" was preempted as the claim's "underlying nature ... is part and parcel of a copyright claim") (citation omitted). And Oracle's failure to disclose a damages theory on the non-copyright claims precludes Oracle from seeking damages based on those claims at trial. *See, e.g.*, *Munchkin, Inc. v. Playtex Prods., LLC*, 2015 U.S. App. LEXIS 13424, at *3 (9th Cir. July 31, 2015) (affirming exclusion of previously undisclosed damages theories, observing that "[s]upplementation under the Rules means correcting inaccuracies, or filling interstices. Munchkin's extensive new damages evidence and theories were not a mere supplementation within the meaning of the Rules") (quotations and citations omitted); *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 6001902, at *2 (N.D. Cal. Nov. 12, 2013) ("To admit a brand new damages theory on the literal eve of trial would be grossly prejudicial to Samsung, which has never had the opportunity to take discovery on or prepare or rebut any lost profits theory other than the one presented in Davis's Report ... Apple's failure to timely disclose its new damages theory is reason enough to exclude this theory now").

**C.     The Law and the Evidence Rimini Anticipates Offering at Trial Support Rimini's Copyright Misuse Defense.**

Copyright misuse is an affirmative defense to copyright infringement that prevents a holder of a copyright, such as OIC, from leveraging its limited interest in a copyrighted work in order to "restrict[] competition in a market that is beyond the scope of [its] copyright." *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699 (9th Cir. 2015) (Wardlaw, J., concurring).

To succeed in asserting a copyright misuse defense, Rimini must prove, by a preponderance of the evidence, that OIC violated the public policies—specifically, to promote the progress of "science" and "useful arts"—underlying the copyright laws. *Altera Corp.*, 424 F.3d at 1090; *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990). Proving a violation of public policy is a low threshold—Rimini "need not prove an antitrust violation." *See Practice Mgmt. Info.*

- 15 -

1   *Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997), *amended by* 133 F.3d 1140 (9th Cir.

2   1998).  A party can violate the public policies underlying the copyright laws and commit copyright

3   misuse, among other ways, by ***attempting to "leverage ... sales into after-market monopolies"***

4   (*Chamberlain Group, Inc. v. Skylink Tech., Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004) (rejecting

5   construction of Digital Millennium Copyright Act that would permit copyright holders to "gain the

6   right to restrict [a] consumer's rights to use [a plaintiff's] products in conjunction with competing

7   products")), by effectively ***limiting the types of related services its clients can seek*** (*Practice Mgmt.*,

8   121 F.3d at 520-21) (finding copyright misuse where licensing agreement limited customer's rights

9   to decide whether to use other forms of coding systems in addition to the copyright holder's)), or by

10  merely ***"us[ing] its copyrights to indirectly gain commercial control over products [it] does not***

11  ***have copyrighted."***  *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 793 (5th Cir. 1999)

12  (stating that "copyright misuse may be present" under such circumstances) (all emphases added); *see*

13  *also Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992) (discussing the similar

14  doctrine of patent misuse and stating that while the practices at issue might "not in themselves

15  violate any law," if they draw "anticompetitive strength from the [protected] right," they are

16  "deemed to be contrary to public policy").

17      Although this Court granted Oracle's motion to strike Rimini's copyright misuse defense five

18  years ago (Dkt. No. 111 at 6), Rimini anticipates that the evidence it will adduce at trial will enable it

19  to prove successfully that OIC has improperly used its copyrights in a way that undermines the

20  Copyright Act's goal of promoting more technological progress ("science") and creative innovation

21  ("useful arts").  *See Omega*, 776 F.3d at 699 ("the ultimate aim [of copyright protection] is ... to

22  stimulate artistic creativity for the general public good" and to "motivate the creative activity of

23  authors and inventors for the sake of the public's benefit").  This is especially true since the entity

24  benefitting from the assertion of the copyright, OA, does not even own the right.

25      As Rimini expert Scott Hampton opined, copyright holders like OIC, while entitled to

26  limited, exclusive use of their copyrighted software, do not have the right to exclude others from the

27  *market* for the copyrighted work—or, in this case, the after-market services provided by a related

28

company, OA, in connection with the work—"because [copyright holders] can only enforce a monopoly over the expression of the underlying idea" of the work, not in the work itself.  Dkt. No. 659-1, ¶ 71.

Although the OA license agreements ostensibly permit licensees to use third-party consultants to provide software support (*see*, *e.g.*, section II.A, *supra*), Oracle's interpretation of those provisions—which permit a "reasonable" number of copies to be made and stored on a third-party consultant's servers for "archival," "back-up," and "disaster recovery" purposes—effectively preclude customers from using any support service other than Oracle's.  Through Scott Hampton's and other industry experts' testimony (*see*, *e.g.*, Hampton Rpt., ¶¶ 71, 75), letters from Oracle to Rimini clients trying to persuade them to leave Rimini based on the instant litigation (*see*, *e.g.*, Dkt. No. 714), ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ and other evidence that may be introduced at trial, Rimini intends to show that by construing these license provisions so as to prohibit licensees from doing anything other than making one or two copies of the software on their own systems, OIC is plainly attempting to leverage its copyrights into "aftermarket monopolies" for OA for its uncopyrightable support services (*Chamberlain*, 381 F.3d at 1201), is harming its licensees by "limiting the types of related services its customers can seek" (*Practice Mgmt.*, 121 F.3d at 520-21) and, in the opinion of some of its customers, is providing sub-standard services instead (*see* Dkt. No. 649, Exs. 14-15 [customer complaint documents]).  Whether or not that conduct affirmatively violates the antitrust laws is not the relevant question; this evidence plainly represents an attempt by OIC to use its software copyrights to gain commercial control over another lucrative market for services offered by OA in which it undeniably holds no copyrights.  This conduct amounts to copyright misuse, and the jury should be instructed on this affirmative defense.

In this way, Oracle's conduct is not at all unlike that of Omega, a manufacturer of luxury watches, in the Ninth Circuit case *Omega S.A. v. Costco Wholesale Corp.* decided earlier this year.

There, Omega imprinted a certain copyrighted design on some of its watches. While it held a valid copyright in the design and could properly prohibit others from using the design, the Ninth Circuit held it could not use the copyrighted design to attempt to control the market for the watches themselves by suing third-party sellers of the watches, such as Costco, for copyright infringement. *See* 776 F.3d at 695. While the majority reached this result by invoking the first-sale doctrine, Judge Wardlaw's concurrence relied on the doctrine of copyright misuse, and would have held that Omega committed such misuse by "attempt[ing] to use the copyrighted ... [d]esign to decrease competition in the U.S. importation and distribution of its watches by it and its authorized dealers." *Id*. at 701. In other words, Omega improperly attempted to transform a copyright in its design into a copyright in the watch itself.

Here, OIC, like Omega, has a copyright in an underlying part of a product (i.e., the source code for the software for which Rimini was providing support services) and can properly prohibit others from copying the software, for example, to sell knock-off copies or to make derivative works from the source code itself. What OIC cannot do, however, is seek to quash competition for its sister company, OA, in the support services market under the guise of vindicating its copyright in the source code itself. Attempting to transform a copyright in software into a copyright in support services connected to that software is precisely the kind of conduct disapproved of by Judge Wardlaw's concurrence, and should therefore excuse any technical infringement by Rimini during the period at issue in this lawsuit.

**D.    Oracle Must Prove Its Intentional Tort Claims as to Each Specific Client and Prospective Relationship**

OA claims that Rimini induced its clients to breach their contracts, and both OA and OIC claim that Rimini intentionally interfered with their prospective economic relationships. These are fallback theories wrapped into Oracle's copyright infringement claims—indeed, Oracle has offered no separate damages theories beyond its copyright infringement damages. It therefore appears that Oracle will attempt to prove its damages *en masse* for these tort claims by lumping them into its copyright damages theories. *See* Dean Rpt., p. 28 n.101 (including both tort claims under a copyright lost profits damages analysis); *see also* Joint Pretrial Order at 31, Dkt. No. 527 (Oracle

describing inducing breach of contract harm as "in addition, or in the alternative" to copyright infringement harm).   As Oracle's damages expert, Ms. Dean, *admitted*, Oracle *cannot* prove individual tort damages:  "Due to the difficulty (or inability) in determining every instance where Rimini's actions have caused customers to not license products or buy support or other services from Oracle, or have otherwise caused Oracle harm, the 'Value of Use' measurement provides a more complete remedy for Oracle in this case."  Dean Rpt., ¶ 44.  Oracle has now abandoned the "Value of Use" theory of damages, and its fallback "lost profits" theory of damages suffers from the fatal flaw Ms. Dean acknowledged.

More to the point, whether or not the "value of use" measurement is available for copyright infringement, that theory of group damages does not work for Oracle's tort claims.  Under basic tort law and constitutional due process protections, Oracle must prove *all* elements of its tort claims for *each* specific client and *each* specific prospective economic relationship.  Oracle may not, for example, present evidence of the inducement of breach of contract as to some third-party clients and then ask the jury to extrapolate its findings to a larger group of third parties.

For OA to prove its claim of inducing breach of contract (known in Nevada as intentional interference with contractual relations), OA must prove for each client that there was a valid and enforceable contract of which Rimini was aware, that Rimini had the specific motive to intentionally and unjustifiably induce OA's client to breach the contract, that the client breached the contract and the only reason was because of Rimini's intentional and unjustifiable inducement, and that OA was directly harmed as a result.  *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003).  By their very nature, those elements cannot be proven *en masse* for a group of clients, but instead must be proven individually for *each* client.  The same is true of Oracle's claim for intentional interference with prospective economic advantage.

Additionally, these fallback tort claims are theories that courts view with skepticism and caution because they are prone to misuse and to prevent free competition:

> The torts of inducing breach of contract and interference with prospective advantage have been criticized as protecting the secure enjoyment of contractual and economic relations

- 19 -

at the expense of our interest in a freely competitive economy.  We have been cautious in defining the interference torts, to avoid promoting speculative claims.

*Pacific Gas & Elec. Co.*, 50 Cal. 3d at 1136-37 (citation omitted); *see*, *e.g.*, *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 392 (1995)  ("Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties"); *J.J. Indus.*, 119 Nev. at 275-76 (requiring "a specific motive or purpose to injure" so as "to limit liability accordingly").  Given courts' explicit wariness of a competitor asserting these specific tort claims against another competitor, it is particularly important that Oracle be required to prove these claims on an individual third-party basis.  Rimini cannot be held liable or penalized for proper competition; instead, Oracle must prove *wrongful* conduct, with the *specific intent* to cause a breach or to interfere, and *actual causation* as to *each individual* third party.

Notably, Oracle plans to satisfy the "wrongful act" element of its inducing breach and intentional interference claims based on Rimini's alleged fraud.  But, to prove fraud, Oracle must present individual proof of reliance.  Oracle's theory of "group proof" looks suspiciously like an unpled class action theory, which Oracle seeks to press without the constitutional protections afforded by the certification of a class.  *See Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (due process requirements "are implemented by the procedural safeguards contained in [Rule] 23").  But, the California Supreme Court has rejected a fraud-on-the-market theory of deceit, and is reluctant to allow a class-wide presumption of reliance in fraud and deceit cases.  *See Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993).  An inference of reliance arises under California law only where there is proof that the "same misrepresentations have actually been communicated to each member of a class." *Id.* at 1095.  Under *Mirkin*, California courts require an individualized showing of actual reliance, unless uniform misrepresentations have been made to the entire class.  *See id.* at 1092; *Siechert & Synn v. Apple Inc.*, 2015 WL 513645, at *10-14 (Cal. Ct. App. Feb. 6, 2015) (class-wide fraud claims required "individualized evidence" of actual reliance, the nature of that reliance, and any ensuing damages); *Allen v. Int'l Business Machines Corp.*, 2002 WL 31898317, at *7 (Cal. Ct. App. Dec. 31, 2002) ("Additionally, in order for a court to presume reliance, the misrepresentation must be

material, which is manifestly a matter of individual proof") (citations omitted).  Because Oracle cannot establish that Rimini communicated the allegedly fraudulent misrepresentations to the entire group for which Oracle seeks damages, Oracle must present individualized proof of reliance to submit its inducing breach and intentional interference claims to the jury.

Additionally, there is a constitutional dimension:  "Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932)).  Defendants have a due process right to present their defenses as to *each* specific contract or prospective relationship.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (party is "entitled to litigate its ... defenses to individual claims"); *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 34 (2014) (describing "a party's substantive rights" to litigate "relevant affirmative defenses, even when these defenses turn on individual questions").

Accordingly, Rimini will propose jury instructions that will instruct the jury that Oracle must prove these intentional tort claims individually as to each client or relationship.  Rimini further intends to object at trial to the extent Oracle seeks to have its witnesses extrapolate any alleged causation, reliance, or harm from an individual situation to a broader group.  Rimini also believes that the verdict form provided to the jury must require the jury to make the required individualized findings.

**E.    Oracle Cannot Establish Liability Under Its Unavailable, Unsupported, and Unconstitutional Criminal Computer Hacking Claims**

Rimini obtained permission from Oracle's licensees to log in to Oracle's website using the licensees' log-in credentials and download support materials in order to support those licensees.  Oracle claims that this conduct violated its website terms of use, which is the subject of Oracle's breach of contract claim.  But Oracle also makes the dramatic and unsupported claim that this same conduct constitutes computer hacking under the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030), California Penal Code § 502, and Nevada Revised Statute § 205.4765.  Oracle does not actually contend that Rimini hacked its computer systems—because Rimini obviously did not—but instead seeks to bend the language of these anti-hacking statutes to the facts of this case.

Oracle's attempt to apply criminal computer hacking claims to this case is unsupported as a matter of law and raises fundamental constitutional problems.  For the reasons set forth below, Rimini believes the Court should dismiss these claims before trial (if Oracle does not elect to drop them), and Rimini anticipates that they will otherwise be the subject of a Rule 50 motion at the appropriate time because they fail as a matter of law.

*First*, there is no evidence whatsoever that the copyright owner, OIC, even had a computer system, much less one that Rimini accessed.  For this reason alone, OIC's claims are frivolous.

*Second*, Rimini did not hack into OA's computer systems.   The anti-hacking statutes generally prohibit computer-related conduct taken "knowingly … without authorization or exceeding authorized access" (*e.g.*, 18 U.S.C. § 1030(a)(1)), "knowingly and without permission" (*e.g.*, Cal. Penal Code § 502(c)(3)), and "knowingly, willfully and without authorization" (*e.g.*, Nev. Rev. Stat. § 205.4765).  They do not apply here because Rimini *had authorization* to access Oracle's websites: Oracle's licensees specifically authorized Rimini to do so using their log-in credentials.  *See* Dkt. No. 649, Exs. 8-10.

Oracle does not dispute the licensees authorized Rimini to access OA's computer systems, but instead claims that Rimini's actions violated the website terms of use, either because Rimini exceeded the licensees' permissions or used automated downloads.  But website terms of use do not provide a basis upon which to premise a hacking claim and cannot establish the "without authorization" or "exceeding authorized access" elements (or their state-law analogues).  *See United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc).  Additionally, because Rimini acted with the permission of the licensees, it did not "knowingly" or "intentionally" act without authorization or in excess of that authorization; i.e., it had no specific intent to violate the law.  *See*, *e.g.*, *Cheek v. United States*, 498 U.S. 192, 201 (1991) (good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness).

*Third*, OA's damages for these claims are nonexistent.  Oracle may recover only for "impairment of or damage to the computer system," as well as direct "costs associated with assessing a hacked system for damage." *Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, 2013

1   WL 3872950, at *21 (E.D. Cal. July 25, 2013) (collecting cases).  OA claims $19.2 million and OIC

2   claims $12.8 million in "lost Siebel support customers" based on these statutes.  Dean Rpt., p. 27

3   (Table 5).  But those unsupported damages claims are not even cognizable under the anti-hacking

4   statutes.  *See Farmers Ins. Exchange*, 2013 WL 3872960, at *21 ("costs not related to computer

5   impairment or computer damages are not compensable under the CFAA") (collecting cases); *see*

6   *also Instant Technology, LLC v. DeFazio*, 40 F. Supp. 3d 989 (N.D. Ill. 2014) (same); *Sprint*

7   *Solutions Inc. v. Pacific Cellupage Inc.*, 2014 WL 3715122, at *6 (C.D. Cal. July 21, 2014) ("costs

8   that are only distantly related to intrusions into a computer network are not losses under the CFAA")

9   (collecting cases).  ███████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████   And, because each of the anti-hacking statutes premises

13  liability on actual harm, Oracle will not be able to establish at trial actual harm to its computer

14  systems giving rise to liability.

15      ***Fourth***, Oracle's proposed application of these criminal statutes to Rimini raises

16  constitutional problems that cannot be ignored.  Courts have recognized that these statutes raise

17  constitutional vagueness problems and have grappled with how to properly interpret and apply them.

18  *See*, *e.g.*, *Nosal*, 676 F.3d at 863; *Ajuba Int'l L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 685-87 (E.D.

19  Mich. 2012) (detailing the current circuit split of authority regarding whether the CFAA applies in

20  employer-employee situations).

21      Here, these statutes, facially and as applied to Rimini, are unconstitutionally vague and

22  purport to criminalize such a wide range of conduct that Rimini had no fair notice of what conduct

23  was prohibited under the law.  *See*, *e.g.*, *Nosal*, 676 F.3d at 863; *see generally Gonzales v. Carhart*,

24  550 U.S. 124, 148-49 (2007) ("the void-for-vagueness doctrine requires that a penal statute define

25  the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

26  prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement")

27  (citation omitted).  Oracle's interpretation of the statutes also impermissibly puts enforcement of

28                                                - 23 -

1    criminal law into the selective and biased hands of private parties.  *See Nosal*, 676 F.3d at 863; *see*

2    *also United States v. Drew*, 259 F.R.D. 449, 462-67 (C.D. Cal. 2009) ("basing a CFAA

3    misdemeanor violation … upon the conscious violation of a website's terms of service runs afoul of

4    the void-for-vagueness doctrine").  Expanding these anti-hacking statutes to the claims in this case

5    would create an unlimited minefield of criminal liability for any person or company that uses a

6    computer, provide no fair notice to Defendants, demolish the rule of lenity, and open the floodgates

7    for private litigants to arbitrarily wield their own website terms of use under criminal law (in

8    addition to a breach of contract claim for the same alleged conduct) in an effort to recover money.

9    **F.    Oracle's Trespass to Chattels and Breach of Contract Claims Are Worthless.**

10    Oracle's breach of contract (OIC and OA) and trespass to chattels (OA) claims are limited

11    claims for which Oracle will not be able to recover.

12    Both claims are based on the same underlying alleged conduct as Oracle's criminal computer

13    hacking claims.  Oracle alleges that when Rimini accessed Oracle's website (notwithstanding that

14    OIC does not own such a system), Rimini breached the website terms of use because it was not

15    authorized, it used "robots" and "crawlers," and used the materials for reasons other than

16    informational and non-commercial purposes.  Dkt. No. 146 ¶ 114.  Oracle's trespass to chattels

17    claim is narrower, and is premised on the allegation that when Rimini accessed Oracle's website, it

18    intentionally interfered without authorization and caused damage to Oracle's computer systems.

19    Dkt. No. 146 ¶¶ 146-151.

20    ██████████████████████████████████████████████████████

21    ███████████    But the damages are further duplicative of and subject to the same defects as

22    Oracle's computer hacking claims.  ████████████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████████

25    █████████████████████████    Yet, as demonstrated by Oracle's proposed jury

26    instructions and recently confirmed by its counsel, Oracle does not intend to seek *any* damages for

27    its breach of contract claim.  If there are no damages for breach of contract, there are no damages for

28

trespass, because the claims are based on the same underlying conduct.  These literally worthless claims are a distracting misuse of the Court's and the jury's time.

*Trespass to Chattels*.  OA's trespass to chattels claim fails because OA has not provided any damages theories or evidence giving rise to an actionable claim.

"[S]ome actual injury must have occurred in order for a trespass to chattels to be actionable." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1351 (2003).  In the electronic context, the actual injury must be specific to the computer systems:  "[T]he tort does not encompass, and should not be extended to encompass, an electronic [act] that neither damages the recipient computer system nor impairs its functioning."  *Id.* at 1347.  The injury must be "so substantial that it is possible to estimate the loss."  *Id.* at 1357.

Here, Oracle has not claimed or disclosed *any* injury to its computer systems.  The only damages claims Oracle has put forth for its trespass to chattels claim are for the "personnel expense related to the investigation of and response to Rimini Street's alleged activity."  Dean Rpt., ¶ 394. But the California Supreme Court has made clear that such consequential damages are not actionable under the tort of trespass to chattels:  "The consequential economic damage [defendant] claims to have suffered, i.e., ... company efforts to block the messages, is not an injury to the company's interest in its computers."  *Hamidi*, 30 Cal. 4th at 1347; *id.* at 1359 ("it is circular to premise the damage element of a tort solely upon the steps taken to prevent the damage.  Injury can only be established by the completed tort's consequences").  And Oracle is precluded from introducing new damages evidence or theories this close to trial.  *See, e.g.*, *Munchkin, Inc.*, 2015 U.S. App. LEXIS 13424, at *3.  Without actual injury to its computer systems, Oracle's trespass to chattels claim fails as a matter of law.  *See Hamidi*, 30 Cal. 4th at 1357 (granting summary judgment on trespass to chattels claim because "Intel must, but does not, demonstrate some measurable loss from the use of its computer system").

*Breach of Contract*.  The same rationale applies to OA's breach of contract claim.  In fact, Oracle expressly has made clear that it does not seek *any* damages (not even nominal damages) for its breach of contract claim.  It intends to ask the jury to find that the contracts were breached and

1    nothing more.  An advisory ruling of this kind is a waste of all parties' time, including the Court's,

2    and is a particularly waste in this already cumbersome trial.

3         Accordingly, to the extent Oracle continues to assert these claims at trial, Rimini anticipates

4    bringing a Rule 50 motion at the proper time.

5    **G.    Any Punitive Damages Award Would Be Erroneous and Unconstitutional.**

6         Punitive damages are potentially available only for Oracle's computer hacking claims,

7    inducing breach of contract claim, and intentional interference with prospective economic advantage

8    claim.  As detailed above, the computer hacking claims are deficient as a matter of law.  And Rimini

9    does not expect that Oracle will prove liability or causation on its inducing breach or intentional

10   interference claims.  To the extent the jury renders an adverse verdict on those claims, however, and,

11   in the even less likely event that it finds by clear and convincing evidence that punitive damages are

12   warranted, Rimini includes this section to highlight for the Court the significant due process

13   problems that would be raised by any award of punitive damages in this case.

14        As the evidence at trial will demonstrate, Rimini acted with the good-faith belief that its

15   actions were authorized by the licenses.  That belief was subjectively and objectively reasonable

16   based on the terms of the licenses themselves.  In addition, evidence at trial will demonstrate that

17   Rimini's conduct was in line with industry standards.  Dkt. No. 724 at 8 ("the court finds that

18   Hilliard's testimony about industry standards, customs, and practice is relevant to Oracle's claim for

19   punitive damages").  Under these circumstances, any award of punitive damages would be

20   manifestly erroneous and unconstitutional because Rimini did not act with the requisite oppression,

21   malice, or despicable conduct, and lacked fair notice that its conduct could subject it to punitive

22   damages.  *See, e.g.*, Cal. Civ. Code § 3294; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-70

23   (2007); *Ramirez v. Plough*, 6 Cal. 4th 539, 552-55 (1993); *see also FCC v. Fox Television Stations,*

24   *Inc.*, 132 S. Ct. 2307, 2317 (2012); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *Roby v.*

25   *McKesson Corp.*, 47 Cal. 4th 686, 712 (2009).

26        Additionally, any punitive damages that are awarded (and none should be) must be limited to

27   the specific harm that Oracle proves, and cannot be based on extrapolation beyond the third parties

28                                          - 26 -

1   for which evidence is submitted at trial.  *See Williams*, 549 U.S. at 353-54; *State Farm Mut. Auto.*

2   *Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003).   Rimini will also propose a set of jury

3   instructions that is vital to protecting against the risk that the jury inflicts punitive damages in a way

4   that is unlawful or unconstitutional.  *See, e.g.*, *Williams*, 549 U.S. at 357 ("where the risk" of the jury

5   imposing punitive damages improperly "is a significant one … a court, upon request, **must protect**

6   **against that risk**") (emphasis added).

7   **H.     The Court Should Exclude Evidence Regarding TomorrowNow.**

8         In its July 9 order denying without prejudice Rimini's motion *in limine* to exclude any and all

9   evidence relating to TomorrowNow, this Court acknowledged that "certain pieces or aspects of this

10   evidence may not be relevant or may be at the time too confusing for the jury or unduly prejudicial,"

11   but elected to "address these evidentiary issues at trial" in order to "fully understand the nature of the

12   evidence, the manner for which it will be used, and the manner [in which] it is being presented."

13   Dkt. No. 636 at 3-4.  While Rimini understands this Court's desire to take a case-by-case approach,

14   Rimini respectfully believes that this evidence should be analyzed and excluded as early as possible

15   in the trial.  The prejudicial nature of the TomorrowNow evidence—and in particular, the evidence

16   that it stipulated to liability for civil and criminal infringement—cannot be overstated and will infect

17   the entire proceeding if it is introduced.

18         Although it disclaims any such intent, Oracle's motions have made clear that the principal

19   reason it seeks to introduce this evidence is to link TomorrowNow, Seth Ravin, and Rimini in the

20   jury's mind so as to implicitly equate TomorrowNow's conduct to Rimini's.  *See, e.g.*, Dkt. No. 605

21   at 11-14 (suggesting that Seth Ravin must have known about Rimini's allegedly infringing conduct

22   because of TomorrowNow's stipulation to liability, and that Rimini's business model cannot be

23   lawful because TomorrowNow had a similar model).  Any marginal relevance this evidence might

24   have to Oracle's claims for tortious interference and unfair competition is heavily outweighed by the

25   prejudicial impact this evidence will have, even with a limiting jury instruction, and by the

26

27

28

likelihood that it will confuse the jury and prolong trial.[6]  If Oracle introduces this evidence, Rimini must have a chance to offer a fulsome rebuttal, which will be difficult and time-consuming, not least because TomorrowNow is a third party to which Rimini does not have ready access.  *See* Dkt. No. 630-1 at 5.   It would be far more equitable to simply exclude the evidence relating to TomorrowNow's civil and criminal liability at the outset, and, if necessary to address the remaining evidence on a case-by-case basis.

### III.    CONCLUSION

In sum, Oracle will not be able to succeed on most of its claims, and to the extent it does succeed, its damages will be negligible.  Its criminal hacking claims are not viable at all as a matter of law, and to the extent Oracle's tort claims are not preempted, they must be proven on a client-by-client basis, rather than through impermissible extrapolation.  The breach of contract and trespass to chattels claims also fail as a matter of law.   Finally, to ensure a fair and impartial trial, the TomorrowNow civil and criminal liability evidence should be excluded as early as possible in the trial.

DATED:        September 9, 2015                       LEWIS ROCA ROTHGERBER LLP

                                                     By:   /s/ *W. West Allen*
                                                            W. West Allen

                                                     *Attorneys for Defendants*
                                                     *Rimini Street, Inc. and Seth Ravin*

---

[6] Rimini maintains, as it did in its motion *in limine*, that Oracle has no need to use this evidence to rebut any arguments Rimini might make about industry practice and lack of lost profits.  As explained in Rimini's opposition to Oracle's *Daubert* motion (Dkt. No. 693 at 13-14), none of Rimini's industry practice experts rely on TomorrowNow for their opinions.  Nor does Rimini intend to rely on TomorrowNow as a non-infringing alternative.

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on September 9, 2015, I electronically filed the foregoing document with

3   the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing

4   system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of

5   record who have consented in writing to accept this Notice as service of this document by electronic

6   means.

7

8   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)

9   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101

10  Telephone: (702) 382-7300
    Facsimile: (702) 382-2755

11  rpocker@bsfllp.com

12  BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)

13  FRED NORTON (*pro hac vice*)
    KIERAN P. RINGGENBERG (*pro hac vice*)

14  1999 Harrison Street, Suite 900
    Oakland, CA 94612

15  Telephone: (510) 874-1000
    Facsimile: (510) 874-1460

16  sholtzman@bsfllp.com
    fnorton@bsfllp.com

17  kringgenberg@bsfllp.com

18

BINGHAM MCCUTCHEN LLP
GEOFFREY M. HOWARD (*pro hac vice*)
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
geoff.howard@bingham.com
thomas.hixson@bingham.com
kristen.palumbo@bingham.com

ORACLE CORPORATION
DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
jim.maroulis@oracle.com

19

20

21

22

23                    By:   /s/ *W. West Allen*

24                          W. West Allen

25

26                    *Attorney for Defendants*
                      *Rimini Street, Inc. and Seth Ravin*

27

28                              - 29 -