1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    WILLIAM A. ISAACSON (*pro hac vice*)
6   KAREN L. DUNN (*pro hac vice*)
    5301 Wisconsin Ave, NW
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
11  KIERAN P. RINGGENBERG (*pro hac vice*)
    1999 Harrison Street, Suite 900
12  Oakland, CA 94612
    Telephone: (510) 874-1000
13  Facsimile: (510) 874-1460
    sholtzman@bsfllp.com
14  kringgenberg@bsfllp.com

15  *Attorneys for Plaintiffs*
    Oracle USA, Inc., Oracle America, Inc. and
16  Oracle International Corp.

    MORGAN, LEWIS & BOCKIUS, LLP
    THOMAS S. HIXSON (*pro hac vice*)
    KRISTEN A. PALUMBO (*pro hac vice*)
    One Market, Spear Street Tower
    San Francisco, CA  94105
    Telephone:  415.442-1000
    Facsimile:  415.442.1001
    thomas.hixson@morganlewis.com
    kristen.palumbo@morganlewis.com

    DORIAN DALEY (*pro hac vice*)
    DEBORAH K. MILLER (*pro hac vice*)
    JAMES C. MAROULIS (*pro hac vice*)
    ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    dorian.daley@oracle.com
    deborah.miller@oracle.com
    jim.maroulis@oracle.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| 19  ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual, <br><br> Defendants. | No. 2:10-cv-0106-LRH-PAL <br><br> **ORACLE'S TRIAL BRIEF** <br><br> **[REDACTED]** <br><br> Judge:      Hon. Larry R. Hicks |

1

# TABLE OF CONTENTS

2

3    I.      INTRODUCTION ............................................................................. 1
4    II.     BACKGROUND ............................................................................... 3
     III.    LIABILITY ....................................................................................... 7
5            A.      Copyright Infringement........................................................... 7
6            B.      Unauthorized Access And Unauthorized Downloading Claims.............. 11
             C.      Intentional Interference ........................................................... 12
7            D.      Other Claims ......................................................................... 16
8    IV.     DAMAGES ..................................................................................... 17
9            A.      Copyright Infringement Damages............................................ 17
             B.      Unauthorized Access And Unauthorized Downloading Damages .......... 22
10           C.      Intentional Interference Damages ........................................... 23
11           D.      Punitive Damages .................................................................. 24
12   V.      ISSUES TO BE DECIDED BY THE COURT ................................... 25
             A.      Injunctive Relief.................................................................... 25
13           B.      Restitution ............................................................................ 28
14           C.      Prejudgment Interest ............................................................. 29
15           D.      Attorneys' Fees ..................................................................... 29
     VI.     CONCLUSION ............................................................................... 30
16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3

4      **Cases**

5      *AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
          260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................. 16, 17
6
       *Albios v. Horizon Communities, Inc.*,
7          132 P.3d 1022 (Nev. 2006) ......................................................................................... 29

8      *Altera Corp. v. Clear Logic, Inc.*,
          424 F.3d 1079 (9th Cir. 2005) .................................................................................... 15
9
       *Andrews v. Raphaelson*,
10         478 F. App'x 372 (9th Cir. 2012) .............................................................................. 25

11     *Apple Inc. v. Psystar Corp.*,
          658 F.3d 1150 (9th Cir. 2011) .................................................................................... 26
12
       *Apple Inc. v. Psystar Corp.*,
13         673 F. Supp. 2d 943 (N.D. Cal. 2009) ...................................................................... 27

14     *Arsenal, Inc. v. Neal*,
          No. 2:11-CV-01628-KJD, 2013 WL 2405289 (D. Nev. May 31, 2013) ................... 13
15
       *Bean v. McDougal Littell*,
16         538 F. Supp. 2d 1196 (D. Ariz. 2008) ....................................................................... 15

17     *Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.*,
          No. 06-cv-2440-LAB (LSP), 2007 WL 1110736 (S.D. Cal. Apr. 5, 2007).............. 15
18
       *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
19         28 F. Supp. 3d 1006 (C.D. Cal. 2013) ....................................................................... 16

20     *Bongiovi v. Sullivan*,
          138 P.3d 433 (Nev. 2006) ......................................................................................... 25
21
       *Broad. Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*,
22         899 F. Supp. 474 (D. Nev. 1995) ....................................................................... 11, 28

23     *Broad. Music, Inc. v. McDade & Sons, Inc.*,
          928 F. Supp. 2d 1120 (D. Ariz. 2013) ....................................................................... 11
24
       *Broad. Music, Inc. v. Paden*,
25         No. 5:11-02199-EJD, 2011 WL 6217414 (N.D. Cal. Dec. 14, 2011) ...................... 26

26     *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Tel. Co.*,
          20 Cal. 4th 163 (Cal. 1992).................................................................................... 16
27
       *Consol. Generator-Nevada v. Cummins Engine Co.*,
28         114 Nev. 1304 (Nev. 1998)........................................................................................ 13

ii

*Countrywide Home Loans, Inc. v. Thitchener*,
    192 P.3d 243 (Nev. 2008) ............................................................................ 24

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................... 12

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
    479 F.3d 1099 (9th Cir. 2007) .................................................................... 16

*Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*,
    254 F. Supp. 2d 1173 (D. Nev. 2003) ........................................................ 13

*Data General Corp. v. Grumman Sys. Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994) ...................................................................... 18

*Deltak, Inc. v. Advanced Systems Inc.*,
    767 F.2d 357 (7th Cir. 1985) ...................................................................... 20

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................... 26

*eBay, Inc. v. Bidder's Edge Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...................................................... 12

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) .................................................................... 10

*EMI Apr. Music, Inc. v. Keshmiri*,
    No. 2:10-CV-00381-KJD, 2012 WL 5986423 (D. Nev. Nov. 28, 2012) ...... 27

*Firoozye v. Earthlink Network*,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) ...................................................... 15

*Fladeboe v. Am. Isuzu Motors Inc.*,
    58 Cal. Rptr. 3d 225 (Cal. Dist. Ct. App. 2007) ........................................ 28

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ................................................................ 19, 29

*Gaylord v. U.S.*,
    678 F.3d 1339 (Fed. Cir. 2012) .................................................................. 21

*Goldman v. Healthcare Management System*,
    559 F. Supp. 2d 853 (W.D. Mich. 2008); ................................................... 20

*Grosso v. Miramax Film Corp.*,
    383 F.3d 965 (9th Cir. 2004) ................................................................ 14, 16

*Gutierrez v. Wells Fargo Bank, NA*,
    704 F.3d 712 (9th Cir. 2012) ...................................................................... 28

*Historical Research v. Cabral*,
    80 F.3d 377 (9th Cir. 1996) ........................................................................ 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Irwin v. Mascott*,
    112 F. Supp. 2d 937 (N.D. Cal. 2000) ................................................................. 29

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
    752 F.2d 1326 (9th Cir. 1984) ............................................................................ 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003) ............................................................................. 13

*Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*,
    124 Nev. 272 (Nev. 2008) ................................................................................. 16

*Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*,
    106 Nev. 283 (Nev. 1990) ........................................................................... 23, 29

*Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v.
    Stern*,
    98 Nev. 409 (Nev. 1982) ................................................................................... 24

*Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*,
    373 F. App'x 752 (9th Cir. 2010) ...................................................................... 19

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ............................................................................. 26

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F. 3d 1359 (Fed. Cir. 2008) ........................................................................ 21

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ............................................................................. 15

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ......................................................... 19, 27

*Murphy v. City of Elko*,
    976 F. Supp. 1359 (D. Nev. 1997) .................................................................... 29

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) ............................................................................. 15

*Oracle Corp. v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014) ...................................................................... 18, 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ........................................................................... 10

*Polar Bear Productions, Inc. v. Timex Corp.*,
    384 F. 3d 700 (9th Cir. 2004) ...................................................................... 18, 29

*Polaroid Corp. v. Eastman Kodak Co.*,
    No. 76-1634-MA, 1990 WL 324105 (D. Mass. Oct. 12, 1990) ............................ 21

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
    177 Cal. App. 3d 1120 (Cal. Ct. App. 1986) ...................................................... 24

ORACLE'S TRIAL BRIEF

*Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*,
   2015 Copr. L. Dec. P 30707, 2014 WL 7336082 (D. Nev. Dec. 19, 2014) ............................ 30

*Rimini St., Inc. v. Oracle Int'l Corp.*,
   No. 2:14-CV-01699-LRH, 2015 WL 4139051 (D. Nev. July 9, 2015) .................................. 8

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) .......................................................................................... 21

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ............................................................................................ 8

*Saunders v. Superior Court*,
   27 Cal. App. 4th 832 (Cal. Ct. App. 1994) ...................................................................... 16

*SMSW Enterprises, LLC v. Halberd Corp.*,
   No. CV 13-01412 BRO SPX, 2015 WL 1457605 (C.D. Cal. Mar. 30, 2015) ...................... 24

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ........................................................................................................ 25

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989) ........................................................................................ 22

*SuccessFactors, Inc. v. Softscape, Inc.*,
   544 F. Supp. 2d 975 (N.D. Cal. 2008) .............................................................................. 23

*Symantec Corp. v. CD Micro, Inc.*,
   286 F. Supp. 2d 1265 (D. Or. 2003) ................................................................................ 11

*Teller v. Dogge*,
   No. 2:12-CV-591 JCM (GWF), 2014 WL 4929413 (D. Nev. Sept. 30, 2014) ........... 26, 27, 30

*Teselle v. McLoughlin*,
   173 Cal. App. 4th 156 (Cal. Ct. App. 2009) ................................................................ 16, 17

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ............................................................................................ 19

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) .......................................................................................... 11

*Trendtex Fabrics, Ltd. v. Chad Jung Kim*,
   No. CV13 00480 DKW-KSC, 2014 WL 1326546 (D. Haw. Mar. 10, 2014) ...................... 25

*Unionamerica Mortg. & Equity Trust v. McDonald*,
   97 Nev. 210 (Nev. 1981) ............................................................................................ 17, 29

*United States v. TomorrowNow, Inc.*,
   No. 11-cr-00642 (N.D. Cal.), Sep. 14, 2011 ...................................................................... 21

*Valente-Kritzer Video v. Pinckney*,
   881 F.2d 772 (9th Cir. 1989) ............................................................................................ 15

*Videotronics, Inc. v. Bend Electronics*,
   586 F. Supp. 478 (D. Nev. 1984) ........................................................................ 25

**Statutes**

17 U.S.C. § 502(a) ....................................................................................................... 25

17 U.S.C. § 503 ............................................................................................................ 25

17 U.S.C. § 504(b) .................................................................................................. 17, 19

17 U.S.C. § 504(c) ....................................................................................................... 18

17 U.S.C. § 505 ............................................................................................................ 30

18 U.S.C. § 1030(a) .................................................................................................. 7, 11

18 U.S.C. § 1030(b) ..................................................................................................... 12

18 U.S.C. § 1030(e)(11) ............................................................................................... 22

18 U.S.C. § 1030(g) ..................................................................................................... 23

Cal. Bus. & Prof. Code § 17200 ................................................................... 13, 16, 17, 28

Cal. Bus. & Prof. Code § 17203 .................................................................................. 28

Cal. Civ. Code § 3294(a) ............................................................................................. 24

Cal. Penal Code § 502 .......................................................................................... passim

Nev. Rev. Stat. § 17.130 .............................................................................................. 29

Nev. Rev. Stat. § 42.005 .............................................................................................. 24

Nev. Rev. Stat. § 205.4765 ............................................................................. 7, 11, 12, 15

Nev. Rev. Stat. § 205.511(1)(a) ................................................................................... 22

Nev. Rev. Stat. § 205.511(1)(b) ................................................................................... 24

**Other Authorities**

1 Nimmer on Copyright § 1.01[B][1][e] ...................................................................... 15

1 Nimmer on Copyright § 1.01[B][1][j] ....................................................................... 15

9th Cir. Model Civ. Jury Instr. 17.27 (2007) ............................................................... 19

1    **I.       INTRODUCTION**

2            Seth Ravin and Rimini Street built a business through pervasive, undisputed, and

3    unauthorized downloading and copying of Oracle's software and support materials, and then

4    lying about their illegal conduct.  Rimini provided support by making hundreds of unlicensed

5    copies of Oracle's software in the form of local software "environments" on Rimini's systems

6    and by engaging in "cross-use," *i.e.*, the copying and use of one customer's licensed software

7    and derivative works to support other customers in violation of the customer's license.  Rimini

8    lured customers away from Oracle by (1) offering cut-rate prices, since Rimini did not have to

9    incur software development and engineering costs that Oracle incurred, and (2) by lying to

10   customers and concealing Rimini's unlawful conduct.

11           Rimini's copyright infringement cannot be disputed.  The Court's summary judgment

12   rulings established that Rimini infringed Oracle's copyrights every time it copied Oracle

13   Database software, and for certain copies of Oracle's PeopleSoft software, ostensibly made for

14   certain customers.  Rimini has no license defense as to these copies.  The Court also found that

15   Oracle proved *prima facie* infringement as to copies of JD Edwards and Siebel software that

16   Rimini admits it made on its servers.

17           Rimini has stipulated that it will not assert any license defense for any customer in

18   connection with its copying of PeopleSoft software.  The large majority of the customers at issue

19   were PeopleSoft customers.  For Oracle's PeopleSoft copyright infringement claim, the jury will

20   determine only the extent of that infringement and the amount of damages Ravin and Rimini owe

21   Oracle for that infringement.  For Oracle Database software, the jury need only assess damages.

22   For JD Edwards and Siebel software, Oracle will prove that Rimini's copying was not limited to

23   archival and emergency backup purposes, the only use permitted under Rimini's license defense

24   as determined by the Court on summary judgment.

25           Ravin and Rimini are also liable for massive unauthorized access to and downloading

26   from Oracle's computer systems and unlawful interference with Oracle's customer relationships.

27   Oracle's expert will explain how Rimini downloaded hundreds of thousands of files from

28   Oracle's password-protected websites using unauthorized automated tools, much of this at

1

1    Ravin's direction.  Rimini's "brute force" downloading was at times so extensive that it dwarfed

2    all other traffic from all users worldwide, slowed Oracle's powerful servers, and created

3    "deadlocks" that interrupted service for Oracle's customers.

4        To lure customers away from Oracle, Ravin and Rimini repeatedly lied about their

5    unlawful and unauthorized conduct.  Rimini also falsely asserted that Oracle's software and

6    support materials were stored in client-specific "data silos" and that a co-mingled software

7    library "never existed" at Rimini.  Those statements were false, and Judge Leen entered an order

8    sanctioning Rimini for deleting its co-mingled library of Oracle's software, which Rimini and

9    Ravin knew would be relevant to this lawsuit.

10       Seth Ravin is personally liable.  As Rimini's founder and CEO, Ravin designed and

11    controlled the company's policies and operations.  Ravin himself engaged in the unlawful

12    conduct, directed others to do so, and directly profited from years of Rimini's infringement,

13    unauthorized downloading, and lies.  With Rimini, like his prior business TomorrowNow, Ravin

14    set out to build a business through indiscriminate infringement, unauthorized downloads, and

15    deception.  He and Rimini sought to conceal that unlawful conduct, and Ravin now seeks to

16    avoid paying for the substantial harm he caused Oracle.

17       Ravin and Rimini knowingly broke the law as part of a calculated plan to take Oracle's

18    customers and unlawfully profit from Oracle's research and development efforts.  Rimini's

19    customers ███████████████████████████████████████

20    ████████████████████ (PTX 15, PTX 16, PTX 23, PTX 31), but Ravin and Rimini

21    persisted.  Ravin and Rimini ███████████████████████████

22    ████████████████████████████████████████

23    PTX 20, PTX 22, PTX 27.  When Oracle discovered Rimini's unauthorized downloading, ███

24    ████████████████████████████████████

25    ██████████████████████████████ PTX 42. ██

26    ████████████████████████████████████

27    █████████████████████████████████████

28    ████████████████████████████████████

1   ██████████████████ █ [1]   Rimini never paid Oracle for a license, instead undercutting

2   Oracle in the marketplace and luring customers away from Oracle to switch to Rimini.

3        Oracle is entitled to at least $245.9 million in damages.  This case concerns ██

4   customers Rimini took from Oracle through September 28, 2011, with a damages period through

5   February 2014.  Oracle's damages expert evaluated each customer and calculated the damages

6   on Oracle's claims, with certain appropriate reductions.  Using Oracle's global price list, she also

7   calculated the profits, or license fee, Oracle lost from Rimini's use of Oracle's Database software

8   without ever paying for a license.  $245.9 million is a reliable, conservative calculation of

9   Oracle's damages, not including punitive damages, prejudgment interest, or attorneys' fees.

10        Oracle also seeks critical injunctive relief.  Unlike TomorrowNow, which shut down

11   before trial, Rimini has continued its operations in an unabashed fashion, hoping to launch an

12   IPO.  Among other necessary relief, Oracle will seek the impoundment and destruction of all

13   infringing copies created by Rimini and an order directed at both Rimini and Ravin prohibiting

14   further infringement.  It is already established that Rimini's PeopleSoft and Oracle Database

15   software copies were unlicensed and infringing, and that Rimini improperly used one customer's

16   software environment to develop updates for other customers in further infringement.  The threat

17   of continuing violations is clear given Ravin's history and Rimini's continuing operations.

18   **II.**     **BACKGROUND**

19        ***Oracle***.  Founded in 1977, Oracle develops and licenses database, middleware, and

20   application software for "the enterprise," and more recently, sells hardware and licenses related

21   systems software.  Businesses, government entities, and other organizations license and use this

22   enterprise software to run essential functions, such as finances, human resources, insurance,

23   payroll, sales and marketing.  To keep its products operational, secure and current, Oracle offers

24   support services and materials, including software updates, enhancements, and fixes.  As is

25   _____

26

27   [1] ███████████████████████████████████ Rimini took the software without paying Oracle for any license.

28

1   typical in the enterprise software industry, Oracle's customers do not own the software or

2   support materials Oracle provides.  Instead, they license limited rights to use Oracle's software

3   and support materials, subject to certain conditions and restrictions.  Oracle retains all copyrights

4   and other intellectual property rights in those works.  Oracle earns revenue by licensing software

5   to its business customers and by selling support and maintenance services to those licensees,

6   including providing copyrighted software and related documentation, on an annual fee basis.

7   ***Rimini's Unlawful Business***.  Rimini is the second company founded by Ravin that,

8   through unlawful means, offered to replace Oracle support at an extraordinary 50% off (or less)

9   of Oracle's price.  As will be shown at trial, Rimini's business model at all relevant times relied

10   on extensive infringement of Oracle's copyrights and other unlawful conduct.  Rimini's pricing

11   strategy to lure customers away from Oracle was necessarily predicated on its unlawful copying

12   and downloading.

13         Discovery exposed the massive scope of Rimini's unlawful business.  With their very

14   first customer, ███████████████████████████████████████████████████████

15   ███████████████████████████.  PTX 10.  Rimini created its library by making unlicensed

16   copies, in violation of Oracle's copyrights.  That unlicensed Rimini library eventually contained

17   thousands of copies of Oracle's copyrighted software and support materials.  Knowing Oracle

18   would sue, and that it would be forced to produce those materials in litigation, Rimini deleted

19   some of the material in that library just days before Oracle's Complaint was filed.

20         Rimini reproduced, distributed, and modified Oracle's copyrighted software and related

21   support materials in numerous improper ways.  Rimini's business relied on making local

22   "environments":  full working copies of Oracle's copyrighted application software on Rimini's

23   own systems.  To create those environments, Rimini made yet more copies of the software in its

24   software library.  Rimini also "cloned" environments:  Rimini copied entire environments (*i.e.*,

25   installed versions of Oracle software) that it had previously created (ostensibly) for one customer

26   to create new environments for use with other Rimini customers.  Rimini then relied upon these

27   copies of Oracle software to provide support to multiple customers, including to develop and test

28   fixes and updates to Oracle software – which were all derivative works based upon Oracle

1   software – that it distributed to many different customers in further acts of infringement.

2        The scope of Rimini's unlicensed copying was staggering.  Rimini created and stored

3   hundreds of copies of Oracle's enterprise software applications as local environments on its

4   servers.  Rimini's admissions indicate that it made, conservatively calculated, █████████

5   ███████ copies of such environments.  Some of the environments Rimini made were so-called

6   "development environments" dedicated to developing fixes for multiple customers, in violation

7   of the licenses' clear requirement that each customer's software may be used only for that

8   customer's internal business purposes.  Oracle's computer science expert Dr. Randall Davis has

9   determined, from analyzing a statistically significant sample, that ███████ of the "fixes"

10  Rimini delivered were created in an environment built using another customer's software.

11  Delivery and application of these derivative works infringed Oracle's copyrights and breached

12  the terms Rimini agreed to when it accessed Oracle's websites.

13       Oracle's computer forensics expert, Christian Hicks, will testify that Rimini pervasively

14  used unauthorized tools and false pretenses to access Oracle's support websites.  For example,

15  Rimini regularly accessed and downloaded materials from Oracle's systems ████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████ PTX 37, PTX 38.  As another

18  example, ████████████████████████████████

19  ████████████████████████████ PTX 7, PTX 34.  Mr. Hicks found

20  that Rimini downloaded hundreds of thousands of files from Oracle's servers during the relevant

21  period, largely using automated tools prohibited by Oracle's Terms of Use.  Those downloads

22  included valuable software and support materials for which Rimini never obtained any license.

23       ***Rimini's Deception***.  Rimini's unlawful business depended on unauthorized copying of

24  Oracle software along with widespread deception and lies to customers.  Rimini was able to

25  obtain and retain customers only by deceiving them about how it was providing support.  That

26  deception continued even after Oracle sued in January 2010.  Rimini subsequently issued a press

27  release accusing Oracle of asserting "baseless" claims, stating that Rimini's "business processes

28  and procedures are entirely legal," and asserted counterclaims against Oracle, including

1   defamation.  PTX 2380.  The Court has since rejected all of Rimini's counterclaims, including

2   because Oracle's statements about Rimini's conduct were true.  Dkt. 111; Dkt. 476.  Rimini also

3   falsely asserted that Oracle's software and support materials were stored in client-specific "data

4   silos" and that a co-mingled software library "never existed" at Rimini.  Those statements were

5   knowing, deliberate lies, and Judge Leen properly sanctioned Rimini for deleting a co-mingled

6   library of Oracle's software in anticipation of litigation.  It is only through years of discovery –

7   despite Rimini's efforts to prevent Oracle from learning about its extensive, unlicensed software

8   library – that Oracle was able to learn the full scope of Defendants' unlawful conduct.

9        ***Rimini's Willful Misconduct***.  Oracle will prove at trial that Ravin and Rimini knew that

10   their conduct was unlawful.  ████████████████████████████████████

11   ██████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████

17   ██████████████████████████████████████████████████

18   PTX 22, PTX 27.  Ravin and Rimini decided to knowingly break the law because they needed

19   the local copies and automated downloads to offer cut-rate support services for Oracle software,

20   they thought they might get away with it, and because ████████████████████████

21   ██████████████████████   (PTX 65).

22        ***Rimini's Established Infringement***.  The Court granted summary judgment in favor of

23   Oracle on certain claims, and the Court's orders have significantly narrowed the issues that

24   remain for trial.  On February 13, 2014, the Court construed certain PeopleSoft, JD Edwards, and

25   Siebel licenses and granted summary judgment for Oracle with respect to the PeopleSoft

26   software copies at issue in that motion.  Dkt. 474.  On August 13, 2014, the Court granted

27   summary judgment as to infringement of Oracle Database software and rejected Rimini's license

28   defense.  Dkt. 476.  Based on the Court's rulings, Defendants have stipulated that they are not

1    asserting any license defense for PeopleSoft software.  Dkt. 599.  For PeopleSoft software, the

2    jury need only consider the extent of Rimini's infringement and decide the amount of damages,

3    and for Oracle Database software only damages.

4        ***_The Second Rimini Lawsuit_***.  The present action pertains to customers that Rimini

5    obtained through September 28, 2011, with damages for those customers calculated through

6    February 2014.  Dkt. 669.  There is a second action currently pending between the parties that

7    concerns customers Rimini obtained after September 28, 2011, and Rimini's more recent

8    practices.  Oracle has asserted claims in that second action against Rimini and Ravin for some of

9    the same illegal conduct and those claims will be decided separately.

10   **III.    LIABILITY**

11       Oracle asserts the following claims against Ravin and Rimini:  copyright infringement;

12   violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C), (a)(4), &

13   (a)(5) (the "CFAA"); violation of the California Computer Data Access and Fraud Act, Cal.

14   Penal Code § 502; violation of Nev. Rev. Stat. § 205.4765; breach of contract; inducing breach

15   of contract; intentional interference with prospective economic advantage; trespass to chattels;

16   unfair business practices; unjust enrichment; and an accounting.  Oracle will prove that Ravin

17   and Rimini are liable for each of these claims.

18       **A.    Copyright Infringement**

19       Rimini is liable for direct copyright infringement, and Ravin is liable for contributory and

20   vicarious copyright infringement.  In light of the Court's summary judgment rulings and

21   Defendants' stipulation, as acknowledged by Rimini, "only two of the four original categories of

22   licenses—J.D. Edwards and Siebel—are still at issue in this case …."  Dkt. 690 at 10.  "[T]he

23   court has already found that defendants engaged in copyright infringement as a matter of law."

24   Dkt. 717 at 3.  For JD Edwards and Siebel software, the jury must determine whether Rimini's

25   admitted copying was permitted by any license, and if not, the amount of damages Ravin and

26   Rimini must pay.  For PeopleSoft and Oracle Database software, liability is established.  The

27   jury will decide the scope of the infringement for PeopleSoft software and the amount of

28   damages that Ravin and Rimini must pay to Oracle for that infringement for PeopleSoft and

1    Oracle Database software.

2               **1.**        **Rimini's Direct Infringement**

3           Rimini has stipulated that it reproduced copyrighted PeopleSoft, Siebel, JD Edwards, and

4    Oracle Database software, and that Oracle is the copyright owner for that software.  Dkt. 523 at

5    17–19 and Ex. A.  As recognized by the Court in its summary judgment orders, "it is undisputed,

6    and Rimini concedes in its opposition, that it copied Oracle's copyright protected software[.]"

7    Dkt. 474 at 6.  The key issues for trial are the extent of Rimini's copying and whether that

8    copying was authorized by specific license provisions Rimini identified in discovery.  *See S.O.S.,*

9    *Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) (license is "assumed to prohibit any use

10   not authorized").  As will be shown at trial, consistent with the Court's orders, Rimini's copying

11   was unlicensed and infringing.[2]

12          ***PeopleSoft and Oracle Database Software and Support Materials***.  Rimini's copyright

13   infringement liability for copying PeopleSoft and Oracle Database software is established.

14   Defendants stipulated that Rimini reproduced copyrighted PeopleSoft and Oracle Database

15   software by creating at least       PeopleSoft software environments and by installing at least 191

16   copies of Oracle Database software on Rimini's computer systems.  Dkt. 523 at 17-18

17   (Stipulated Facts # 21 & 26) & Exs. A, C.  The Court granted Oracle's motion for summary

18   judgment concerning Oracle Database software and certain PeopleSoft software copies

19   (Dkt. 474, 476), and Defendants have now stipulated that their additional copying of PeopleSoft

20   software was unlicensed.  Dkt. 599 at 2.  Rimini's infringement included widespread cross-use of

21   that software, including through Rimini's creation, copying, and distribution of tax and

22   regulatory updates.  As stated by the Court, "the undisputed evidence establishes that these [City

23   _____

24   [2] Rimini asserted a copyright misuse defense, and the Court granted Oracle's motion to strike
     that defense and also recently granted Oracle's motion to exclude evidence relating to that
25   meritless defense.  Dkt. 111 at 6-8; Dkt. 723 at 6-7; *see also Rimini St., Inc. v. Oracle Int'l Corp.*,
     No. 2:14-CV-01699-LRH, 2015 WL 4139051, at *3 (D. Nev. July 9, 2015) ("The fact that there
26   may not be any manner by which a competing company like Rimini can engage in its services
     without engaging in copyright infringement does not constitute copyright misuse.").
27

28

1  of Flint] development environments [which were built from clones of unknown origin] were

2  used to develop and test software updates for the City of Flint and other Rimini customers with

3  similar software licenses." Dkt. 474 at 11. This was Rimini's standard process, ███

4  ████████████████████████████████████████████████████████████████████████

5  PTX 53, PTX 40, PTX 41. Rimini similarly copied Oracle's software to a central software

6  library on Rimini's computers undifferentiated by customer. PTX 13, PTX 63, PTX 64.

7  Rimini's unlicensed copying included PeopleTools, PeopleBooks, and other PeopleSoft support

8  materials.

9       ***JD Edwards Software and Support Materials***. Rimini is also liable for copyright

10  infringement based on Rimini's creation of unlicensed copies of JD Edwards software and

11  support materials. Defendants have stipulated that Rimini reproduced copyrighted JD Edwards

12  software by creating at least ███ JD Edwards software environments on Rimini's computer

13  systems. Dkt. 523 at 18 (Stipulated Fact # 23) & Ex. D. Consistent with the Court's prior

14  order, the key factual issue for the jury to decide is whether these were licensed archival or

15  emergency backup copies. Oracle will prove that Rimini created these copies to troubleshoot

16  and recreate customer problems as part of its support offering, not for archival or emergency

17  backup purposes. ███████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████

23       ***Siebel Software and Support Materials***. Rimini is also liable for copyright

24  infringement based on Rimini's creation of unlicensed copies of Siebel software and support

25  materials. Defendants have stipulated that Rimini reproduced copyrighted Siebel software by

26  creating at least ██ Siebel software environments on Rimini's computer systems. Dkt. 523 at

27  18 (Stipulated Fact # 22) & Ex. E. The issue for trial is whether those copies were "solely for

28  archive or emergency back-up purposes or disaster recovery," and they were not. ████████

9

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮   Rimini started its business offering only Siebel software support, and Oracle will

4 show that Rimini's copyright infringement began with some of Rimini's first customers and

5 then enabled Rimini to grow its Siebel customer base and eventually expand to acquire

6 PeopleSoft and JD Edwards customers. ▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮

8    **2.**   **Ravin Liability**

9   ***Contributory Infringement***.  Oracle will prove that Ravin is liable for contributory

10 infringement because he (i) knew of or had reason to know of Rimini's infringing activity, and

11 (ii) intentionally induced or materially contributed to the infringing activity.  *Perfect 10, Inc. v.*

12 *Amazon.com, Inc.*, 508 F.3d 1146, 1170-73 (9th Cir. 2007).  From the very beginning, Ravin

13 knew of and directed Rimini's massive copyright infringement. ▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮   Ravin was at all times aware of, and even personally directed, Rimini's

21 infringement.

22   ***Vicarious Liability***.  Oracle will prove that Ravin is vicariously liable for Rimini's

23 copyright infringement because he (i) received a direct financial benefit from Rimini's infringing

24 activity, and (ii) had the right and ability to supervise or control the infringing activity.  *Perfect*

25 *10*, 508 F.3d at 1173-74; *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("A

26 defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit

27 from *another's* infringing activity and 'has the right and ability to supervise' the infringing

28 activity") (citation omitted).  Ravin, as Rimini's CEO and largest shareholder, both benefited

1   from and had the right and ability to stop the infringement.  Ravin earned millions during the

2   relevant period from his ownership interest and compensation as an employee.  Rather than stop

3   the infringing activity, Ravin directed it.  Ravin did that because Rimini – and therefore Ravin –

4   ████████████████████ from the unlicensed copying of Oracle's software.  PTX 65.

5   Ravin is vicariously liable for Rimini's infringement.  *See Symantec Corp. v. CD Micro, Inc.*,

6   286 F. Supp. 2d 1265, 1275 (D. Or. 2003) (CEO held vicariously liable on summary judgment

7   for company's copyright infringement where "[i]n addition to his salary, [the CEO] is also the

8   majority shareholder and would thus have a direct financial benefit if the infringing sales raise

9   the value of the company's stock").[3]

10   **B.   Unauthorized Access And Unauthorized Downloading Claims**

11   Oracle will prove that Ravin and Rimini accessed Oracle's computers without

12   authorization and engaged in massive unauthorized downloading from Oracle's computers and

13   are therefore liable for violating the Federal Computer Fraud and Abuse Act, 18 U.S.C.

14   §§ 1030(a)(2)(C), (a)(4), & (a)(5) (the "CFAA"), violating the California Computer Data Access

15   and Fraud Act, Cal. Penal Code § 502 (the "CDAFA"), violating Nev. Rev. Stat. § 205.4765,

16   breach of contract, inducing breach of contract, and trespass to chattels.

17   The state and federal statutes prohibit intentional, unauthorized access to computer

18   systems and also provide for direct liability for someone who "assists" in, "conspires to commit,"

19   or "causes" a violation.  Cal. Penal Code § 502(c)(6); 18 U.S.C. § 1030(b); Nev. Rev. Stat. §

20   _____

21   [3] *Broad. Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*, 899 F. Supp. 474, 480 (D. Nev.
1995) (director and shareholder of corporation "jointly [and severally] liable with his corporation

22   for the copyright infringement" where he "had the power to control the conduct of the 'primary'
copyright infringers"); *Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1133–

23   34 (D. Ariz. 2013) (corporate officer jointly liable with company for copyright infringement
where officer had "the ability to control its operations" and "the business operated by virtue of

24   trained staff who merely performed their job duties in the manner in which they regularly did")
(internal quotation marks omitted); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d

25   1001, 1021 (9th Cir. 1985) ("A corporate officer or director is, in general, personally liable for

26   all torts which he authorizes or directs or in which he participates, notwithstanding that he acted
as an agent of the corporation and not on his own behalf.") (internal citation and quotation marks

27   omitted).

28

1  205.4765(1)(k).  The contract and trespass to chattels claims also establish liability for

2  unauthorized access and downloading.  *eBay, Inc. v. Bidder's Edge Inc.*, 100 F. Supp. 2d 1058,

3  1069-70 (N.D. Cal. 2000) (ordering preliminary injunction where plaintiff was likely to succeed

4  on "claim for trespass based on accessing a computer system"); *Craigslist, Inc. v. Naturemarket,*

5  *Inc.*, 694 F. Supp. 2d 1039, 1059 (N.D. Cal. 2010) (plaintiff adequately stated breach of contract

6  based on defendant clicking "accept" to terms of use for website).

7       Oracle's claims are based in part on Defendants' knowing, prohibited use of automated

8  tools to download materials from Oracle's password-protected websites.  ██████████████

9  ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ██████████████████████████████████████████████

12  ██████████████████  Oracle expert Christian Hicks will testify as to how Rimini's

13  unauthorized access burdened Oracle's systems and slowed their performance, and how Rimini

14  downloaded broad ranges of materials which customers themselves were not licensed to take. ██

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  █████████████████████████

18       Ravin and Rimini have no defense against these claims.  Oracle's Terms of Use were

19  clear, ██████████████████████████████████  Any argument that Oracle

20  authorized automated tools (contrary to the express terms of Oracle's Terms of Use) is merely a

21  baseless *post-hoc* theory concocted for litigation.  Through expert testimony and

22  contemporaneous documentation, Oracle will prove that Rimini's "brute force" attacks harmed

23  Oracle's computers.

24       **C.    Intentional Interference**

25       Oracle will also prove at trial that Ravin and Rimini are liable for intentional interference

26  with Oracle's prospective economic advantage.  To establish this claim, Oracle will prove that:

27  (i) Oracle had economic relationships with current and prospective customers that would have

28  resulted in a future benefit to Oracle; (ii) Ravin and Rimini knew or should have known of those

1   relationships; (iii) Ravin and Rimini engaged in wrongful conduct with the intent to interfere

2   with or disrupt those relationships; and (iv) Defendants' conduct disrupted Oracle's relationships

3   and caused harm to Oracle. *Consol. Generator-Nevada v. Cummins Engine Co.*, 114 Nev. 1304,

4   1311 (Nev. 1998) (elements for interference with prospective business advantage); *Korea Supply*

5   *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1164-66 (Cal. 2003) (same).

6       "Wrongful conduct" means conduct that violated a statute, regulation or common law

7   duty, such as a violation of the CFAA, the CDAFA, or Cal. Bus. & Prof. Code § 17200, or

8   trespass to chattels. *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173,

9   1181 (D. Nev. 2003) (breach of non-disclosure agreement sufficient to support intentional

10   interference claim); *Arsenal, Inc. v. Neal*, No. 2:11-CV-01628-KJD, 2013 WL 2405289, at *5

11   (D. Nev. May 31, 2013) ("by establishing the elements of [Nevada tort] business

12   disparagement," primarily based on false statements, plaintiff demonstrated the "means used to

13   deter the prospective economic advantage were unlawful"); *Korea Supply Co.*, 29 Cal. 4th at

14   1158-59 (act is "wrongful" where it "is unlawful, that is, if it is proscribed by some

15   constitutional, statutory, regulatory, common law, or other determinable legal standard").

16       Oracle will prove all of the elements of its intentional interference claim.  Rimini was a

17   direct competitor of Oracle, and Ravin and Rimini were well aware of Oracle's relationships

18   with Oracle software licensees.  Ravin and Rimini also knew that they were disrupting those

19   relationships, ██████████████████████████████████████████

20   ████████████████████████████████████████  Rimini's wrongful

21   conduct included not only the unauthorized downloading described above but also repeatedly

22   lying to customers.  Rimini obtained customers and convinced them to serve as references by

23   lying to them about Rimini's unlawful practices, which in turn harmed Oracle by causing those

24   customers to stop paying Oracle for support.  Those lies are sufficient to establish wrongful

25   conduct for purposes of this claim. *Arsenal*, 2013 WL 2405289, at *5.

26       Rimini's lies to its customers included, among others, lies about Rimini's use of Oracle's

27   copyrighted software. █████████████████████████████████

28   ████████████████████████████████████████

1  ████████████████████████████████████████████████████████████

2  ███████████████████████  None of these statements was true.  Rimini also lied about its

3  extensive cross-use, ██████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████.

9        Ravin and Rimini knew these statements were false.  Rimini's employees admitted they

10  lied to customers, and Ravin also lied to customers.  As will be shown at trial, ████████████

11  ██████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████████████

14  █████████████████████████████████████████████████

15        Unable to dispute this wrongful conduct, Defendants contend that Oracle's claim is

16  preempted by the Copyright Act.  That contention is meritless.  "Claims under state law are

17  preempted where: (1) the work at issue comes within the subject matter of copyright, and (2) the

18  state law rights are equivalent to any of the exclusive rights within the general scope of

19  copyright."  *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (internal citation

20  and quotation marks omitted).  "To survive preemption, the state cause of action must protect

21  rights that are qualitatively different from the rights protected by copyright: the complaint must

22  allege an 'extra element' that changes the nature of the action."  *Id.* at 968 (citation omitted).

23        None of Oracle's state-law claims is preempted.  Defendants never raised any preemption

24  argument on any motion to dismiss or for summary judgment, and this is because courts

25  routinely reject such arguments.  In *Grosso*, for instance, the Ninth Circuit rejected a preemption

26  argument for a breach-of-implied-contract claim because "the implied promise to pay . . . [is] an

27  'extra element' for preemption purposes."  *Id.*  In this case, all of Oracle's state-law claims

28  involve "extra elements" not equivalent to Oracle's copyright claim.  None of Oracle's state-law

1  claims incorporates or relies on any of the copyright allegations, and there is no preemption.

2          Oracle's intentional interference claim is not preempted because it requires Oracle to

3  prove elements beyond a copyright infringement claim, including (1) intent and (2) wrongful

4  conduct other than copying – which Oracle will prove with evidence of Ravin and Rimini's lies

5  and deception.  *See Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989) ("the

6  element of misrepresentation . . . distinguishes this claim from one based on copyright");[4] *MDY*

7  *Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010) ("tortious interference

8  with contract" claim is not preempted; "because contractual rights are not equivalent to the

9  exclusive rights of copyright, the Copyright Act's preemption clause usually does not affect

10  private contracts"); *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005)

11  (holding that interference claims based upon violations of use restrictions in software licenses

12  were not preempted); *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984) ("if violation of the state

13  right is predicated upon an act incorporating elements beyond mere reproduction or the like,

14  there is no preemption") (internal citation and quotation marks omitted).[5]

15  _____

16  [4] *See also Bean v. McDougal Littell*, 538 F. Supp. 2d 1196, 1199 (D. Ariz. 2008) ("proof of
17  misrepresentation" is "an element absent from a copyright infringement claim") (internal citation
   and quotation marks omitted); *Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.*, No.
18  06-cv-2440-LAB (LSP), 2007 WL 1110736, at *3 (S.D. Cal. Apr. 5, 2007) ("misrepresentation
   allegations . . . are adequate to avoid preemption"); *Firoozye v. Earthlink Network*, 153 F. Supp.
19  2d 1115, 1128 (N.D. Cal. 2001) ("element of misrepresentation or deception is no part of a cause
   of action for copyright infringement and is therefore not preempted.") (internal citation and
20  quotation marks omitted); 1 Nimmer on Copyright § 1.01[B][1][e], at 1-36 (2014) ("a general
21  allegation of fraud should escape pre-emption").

22  [5] Oracle's other state law claims also allege extra elements.  Oracle's contract breach and
   inducement claims are based on contracts and are not equivalent to the rights of copyright.  *MDY*
23  *Indus.*, 629 F.3d at 957 ("tortious interference with contract" claim is not preempted; "because
   contractual rights are not equivalent to the exclusive rights of copyright, the Copyright Act's
24  preemption clause usually does not affect private contracts").  Similarly, there are extra elements
   relating to computer access in Oracle's claims based on the CDAFA, Cal. Penal Code § 502,
25  Nev. Rev. Stat. § 205.4765 (3), and trespass to chattels, *see* 1 Nimmer on Copyright
26  § 1.01[B][1][j], at 1-62 ("the tort of trespass . . . . should be immune from pre-emption," as
   where "the harm of this tort lies in the use of a physical computer system without
27  authorization").  Oracle's unfair competition claim survives because, like the tortious
   interference claim, it requires showing of unlawful conduct – here, met by Oracle's non-

28                                                              (Footnote Continued on Next Page.)

ORACLE'S TRIAL BRIEF

1  **D.      Other Claims**

2  ***Unfair Competition***.  Defendants are liable for violating California Business &

3  Professions Code § 17200, which prohibits unlawful, fraudulent, and unfair business practices.

4  *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1992).  The

5  "unlawful" practices prohibited by Section 17200 are "any practices forbidden by law, be it civil

6  or criminal, federal, state, or municipal, statutory, regulatory, or court-made."  *Saunders v.*

7  *Superior Court*, 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994).  The "unlawful" practices

8  include Defendants' violations of, for example, the CFAA and CDAFA.  *See CRST Van*

9  *Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) ("The UCL

10  . . . embraces anything that can properly be called a business practice and that at the same time is

11  forbidden by law") (internal citation and quotation marks omitted).  This also includes

12  Defendants' tortious interference.  *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp.

13  3d 1006, 1017 (C.D. Cal. 2013).  Defendants recruited Oracle customers and acquired support

14  fees from those customers through unlawful, unfair, and fraudulent business practices, and they

15  are therefore liable under Section 17200.  Oracle seeks an injunction and restitution, and the

16  Section 17200 claim is therefore an equitable claim decided by the Court.

17  ***Unjust Enrichment***.  Unjust enrichment is an equitable claim to be decided by the

18  Court.  *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 124 Nev. 272,

19  274-75 (Nev. 2008) ("claim for unjust enrichment" is an "equitable claim" addressed by "the

20  court" and not the jury).  There are two elements to the claim:  (i) defendants received a benefit;

21  ─────────────────────

(Footnote Continued from Previous Page.)

22

23  copyright allegations, including Rimini's violation of the CFAA and CDAFA and its tortious
   interference.  Oracle's unfair competition claim "protect[s] rights that are qualitatively different
   from the rights protected by copyright."  *Grosso*, 383 F.3d at 968.  Oracle's unjust enrichment

24  survives because it requires proof of a benefit that has been retained by Rimini, not just proof of
   damages to Oracle.  *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958

25  (N.D. Cal. 2003) .  Oracle's accounting claim survives because it is "a means of discovery" that
   is "predicated upon the plaintiff's legal inability to determine how much money, if any, is due."

26  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179-80 (Cal. Ct. App. 2009) (internal citation and
   quotation marks omitted).

27

28

1   and (ii) defendants unjustly retained the benefit at Oracle's expense.  *AccuImage Diagnostics*

2   *Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003).  Defendants recruited

3   Oracle customers and acquired support fees from those customers through their unlawful

4   conduct, and Defendants have therefore been unjustly enriched.  *See Unionamerica Mortg. &*

5   *Equity Trust v. McDonald*, 97 Nev. 210, 212 (Nev. 1981) ("Unjust enrichment occurs whenever

6   a person has and retains a benefit which in equity and good conscience belongs to another.").

7       ***Accounting***.  Oracle seeks an accounting of the income and gross profits defendants

8   obtained through their wrongful conduct.  This claim must be decided by the Court.  Dkt. 523 at

9   22.  To obtain an accounting, Oracle must prove that Defendants (i) misappropriated property to

10   create a financial benefit; and (ii) money due to Oracle cannot be ascertained without an

11   accounting.  *See, e.g.*, *Teselle*, 173 Cal. App. 4th at 179-80 (relationship necessary to claim for

12   accounting may be formed where defendant possesses money or property it is obliged to

13   surrender to plaintiff).  As with the Section 17200 and unjust enrichment claims, an accounting is

14   another claim that permits recovery of Rimini's ill-gotten gains.  On all of these claims, Oracle

15   will seek only non-duplicative recovery and relief.

16   **IV.   DAMAGES**

17       Oracle seeks at least $245.9 million in damages, not including punitive damages,

18   prejudgment interest, or attorneys' fees.  The evidence presented at trial will show that this is a

19   conservative calculation, and this amount does not fully compensate Oracle for the harm done by

20   Ravin and Rimini during the relevant period.  As discussed below, Oracle will seek injunctive

21   relief in part because the full amount of damages cannot be quantified.

22       **A.   Copyright Infringement Damages**

23       Oracle's damages expert, Elizabeth Dean, calculated Oracle's actual damages and

24   Rimini's revenues for purposes of calculating infringer's profits.  These are well-established

25   damages measures in a copyright infringement case.  17 U.S.C. § 504(b) ("copyright owner is

26   entitled to recover the actual damages suffered by him or her as a result of the infringement, and

27   any profits of the infringer that are attributable to the infringement and are not taken into account

28   in computing the actual damages"); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F. 3d 700,

17

1   708 (9th Cir. 2004) ("These remedies are two sides of the damages coin—the copyright holder's

2   losses and the infringer's gains.").  Oracle may also elect to recover an award of statutory

3   damages, which would require a separate calculation.  17 U.S.C. § 504(c).

4       Ms. Dean will testify that Oracle International Corporation (the holder of the copyrights

5   at issue) should be awarded (i) at least $95.7 million in actual damages plus (ii) some portion of

6   $32.6 million based on Rimini's infringer's profits for customers not included in the actual

7   damages calculation.  (An additional $117.6 million in lost profits to Oracle America are

8   discussed below in connection with Oracle's other claims.)  To calculate Oracle International's

9   actual damages, Ms. Dean analyzed each of the ██ customers that signed up with Rimini

10  through September 28, 2011.  Ms. Dean employed an exhaustive causation analysis, and the

11  $95.7 million calculation includes lost support profits through February 12, 2014, associated

12  with some, but not all, of those ██ customers and lost license fees based on Rimini's copies. [6]

13  Ms. Dean's lost profits calculations are well supported and proper.  Dkt. 636 at 6; *Oracle Corp.*

14  *v. SAP AG*, 765 F.3d 1081 (9th Cir. 2014) (lost profits based on customers lost to

15  TomorrowNow); *Data General Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir.

16  1994) (lost profits calculated based on lost customers).

17      For infringer's profits, Ms. Dean calculated Rimini's revenues from all PeopleSoft, JD

18  Edwards, and Siebel customers during the relevant period ███████ and then calculated

19  the amount associated with customers excluded from the lost profits calculation ████████

20  The ██████ revenues is not duplicative of Oracle's lost profits, and Oracle is entitled to

21  recover (in addition to at least $95.7 million) the portion of that ██████ that reflects

22  infringer's profits.  It is Defendants' burden to deduct costs and apportion revenues.  17 U.S.C.

23  § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof

24  _____

25  [6] Ms. Dean based her Oracle Database software calculation on the price for a standard Oracle
    license on Oracle's global price list.  Rimini used infringing Oracle Database software copies to

26  support 72 customers, which would have required Rimini to purchase ██ separate licenses.  After
    she added fees for Oracle support and deducted 5% for the costs Oracle would incur to sell

27  Rimini the licenses, Ms. Dean determined that Rimini should have paid Oracle $19.2 million.

28

18

ORACLE'S TRIAL BRIEF

1  only of the infringer's gross revenue, and the infringer is required to prove his or her deductible

2  expenses and the elements of profit attributable to factors other than the copyrighted work.");

3  *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 F. App'x 752, 758 (9th Cir. 2010)

4  ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff")

5  (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)).

6  Oracle will prove that Defendants' infringement was willful, which is relevant to assessing

7  deductions.  Comment to 9th Cir. Model Civ. Jury Instr. 17.27 (2007) ("deductions of

8  defendant's expenses are denied where the defendant's infringement is willful or deliberate")

9  (citing *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331–32 (9th Cir. 1984); *Three*

10  *Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000)).[7]

11        Ms. Dean's damages calculations are conservative, and they do not capture the full harm

12  to Oracle.  Ms. Dean excluded ███ of Rimini's ███ customers from her lost profits calculation,

13  including customers who left Rimini and returned to Oracle.  Then, each year, for the remaining

14  ███ customers, Ms. Dean used Oracle's historical attrition rates to reduce the revenues Oracle

15  would have earned to exclude a portion of those revenues that Oracle might otherwise have lost

16  due to ordinary customer attrition.  Ms. Dean's lost profits calculations only include lost support

17  revenues, and those calculations do not account for any of the other harm caused by Rimini,

18  including the substantial harm to Oracle's goodwill and reputation.  This, among other reasons,

19  is why injunctive relief is necessary in this case.

20        Defendants' damages calculations are nonsensical and unsupported.  Relying on their

21  damages expert, Scott Hampton, Defendants contend that Oracle should recover no more than

22  ██████████ on Oracle's copyright claim.  Based on information fed to him by Rimini

23  _____

24  [7] For purposes of calculating infringer's profits and statutory damages, the willfulness evidence

25  is overwhelming.  Ravin was one of the founders of TomorrowNow, which later pled guilty to
   criminal copyright infringement. ███████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ███████████████  PTX 30.  When the scope of TomorrowNow's infringement was made clear,
   Ravin did nothing to change the same infringing aspects of Rimini's business model.

28

1   employees, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[8]  Mr. Hampton's avoided labor costs damages model is

4   wishful thinking and in any event irrelevant. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Mr. Hampton's claim that Rimini

9   could have avoided the infringement by adding personnel conflicts with this evidence, and

10  Rimini's continuing infringement even after Oracle sued.

11       The presence of a "remedial" work-around alternative to infringement is irrelevant to

12  actual damages in the copyright context.  *Goldman v. Healthcare Management System*, 559 F.

13  Supp. 2d 853, 875–76 (W.D. Mich. 2008); *Deltak, Inc. v. Advanced Systems Inc.*, 767 F.2d 357,

14  363 n.4 (7th Cir. 1985).  What matters is the harm Rimini and Ravin caused to Oracle, not

15  whether they "could have" done something differently to avoid that harm.  Mr. Hampton's

16  damages theory is like saying that if you crash into and total someone else's car, you shouldn't

17  pay the $10,000 in damages you caused but instead only the $800 you could have spent to fix

18  your brakes so as not to cause the collision in the first place.

19       There is also no merit to Rimini's argument that Mr. Hampton's "avoided labors costs"

20  calculation can be thought of as a hypothetical license measure of damages and reflects a

21  "ceiling" on the amount that Rimini would have been willing to pay Oracle.  Dkt. 694 at 8.  The

22  Court ruled that this calculation is "related" to the hypothetical license measure of damages (Dkt.

23  724 at 5), but Mr. Hampton himself previously disavowed that this calculation represented the

24  result of a hypothetical negotiation.  This was just Rimini's last-ditch effort to save this

25  _____

26  [8] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

28

1  testimony from exclusion.  As Rimini stated previously, when seeking to exclude Ms. Dean's

2  testimony, the "hypothetical-license approach to copyright infringement damages calculates the

3  amount the alleged infringer (Rimini Street) *would have* paid a willing seller (Oracle) if, instead

4  of infringing, the parties had negotiated a 'fair market value' for the license in 2006, the time of

5  the alleged infringement."  Dkt. 563 at 5 (citation omitted); *Oracle v. SAP*, 765 F.3d at 1087.

6  There is no basis for the jury to adopt Mr. Hampton's "avoided labor costs" – which focused

7  only on Rimini, and completely ignores with "willing seller" part of the assessment – as a

8  measure of damages.[9]

9      Mr. Hampton also opines that Rimini's customers would have left Oracle for some other

10  support option, but that opinion is based on consideration of two *infringing* alternatives,

11  TomorrowNow, Inc. and CedarCrestone.[10]  Only *non-infringing* alternatives can be considered as

12  valid alternative options that could reduce claimed lost profits damages.  *Polaroid Corp. v.*

13  *Eastman Kodak Co.*, No. 76-1634-MA, 1990 WL 324105, at *13 (D. Mass. Oct. 12, 1990)

14  *amended*, No. CIV.A. 76-1634-MA, 1991 WL 4087 (D. Mass. Jan. 11, 1991) (when calculating

15  lost profits, "[t]he inquiry [into substitutes] is quite narrow; acceptable substitutes are those

16  products which offer the key advantages of the patented device but do not infringe"); *State*

17  *Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989) (if other suppliers

---

18

19  [9] Rimini "is wrong as a matter of law to claim that reasonable royalty damages are capped at the
   cost of implementing the cheapest available, acceptable, non-infringing alternative." *Mars, Inc.*
20  *v. Coin Acceptors, Inc.*, 527 F. 3d 1359, 1373 (Fed. Cir. 2008), *recalled on other grounds*, 557
   F.3d 1377 (Fed. Cir. 2009); *Gaylord v. U.S.*, 678 F.3d 1339, 1343 (Fed. Cir. 2012) (holding that
21  it is "incorrect in a hypothetical negotiation inquiry . . . to limit [the] analysis to only one side of
   the negotiating table" and rejecting damage award based solely on the infringer's perspective);
22  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) ("What an infringer would
   prefer to pay is not the test for damages."); *Oracle*, 2014 WL 4251570, at *5 ("Fair market value
23  in a voluntary licensing transaction between arms-length parties ordinarily lies somewhere
   between the two poles of cost to the seller and the benefit to the buyer.").
24

25  [10] TomorrowNow pled guilty to criminal charges of copyright infringement and unauthorized
   computer access with respect to Oracle's software.  TomorrowNow Criminal Plea Agreement,
26  *United States v. TomorrowNow, Inc.*, No. 11-cr-00642 (N.D. Cal.), Sep. 14, 2011, Dkt. 13
   (PTX 383).  CedarCrestone's 30(b)(6) designee ███████████████

27  ████████████████████████████████████████████████████████████████

28

1   "were likely infringers," patent holder entitled to their shares of the market in determining

2   damages based on lost sales); Dkt 636 at 4 n.3.

3          Defendants also include numerous post-close of discovery website printouts on their

4   exhibit list from companies that Rimini now claims provided competing services and that Rimini

5   claims customers would have chosen over Oracle.  Seeking to show that certain customers were

6   "dissatisfied" with Oracle (Dkt. 523 at 6), Defendants have also listed various internet articles

7   and Oracle reports containing hearsay statements attributed to certain customers.  None of that

8   evidence is reliable or of consequence. ███████████████████████████

9   ████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  *E.g.*, PTX 4896.  Any notion that Rimini's infringement was insignificant cannot be reconciled

12  with the contemporaneous documents and other evidence that will be presented at trial.  Rimini's

13  customers testified, under oath, that they would not have gone to Rimini had they known of

14  Defendants' infringement.  Further, Ms. Dean fully accounted for this issue in her lost profits

15  calculation, evaluating the evidence and applying certain reductions.

16      **B.      Unauthorized Access And Unauthorized Downloading Damages**

17          Oracle's damages based on Rimini's unauthorized access and downloading overlap to

18  some extent with Oracle's other claims, and Oracle will not seek duplicative damages.  One non-

19  duplicative measure of damages is Ms. Dean's calculation of the out-of-pocket expenses incurred

20  by Oracle in dealing with Rimini's "brute force" attack on Oracle's computers.  Such amounts

21  are recoverable under the federal and state computer fraud statutes.  18 U.S.C. § 1030(e)(11)

22  ("the term 'loss' means any reasonable cost to any victim, including the cost of responding to an

23  offense, conducting a damage assessment, and restoring the data, program, system, or

24  information to its condition prior to the offense"); Cal. Penal Code 502(e)(1) ("Compensatory

25  damages shall include any expenditure reasonably and necessarily incurred by the owner or

26  lessee to verify that a computer system, computer network, computer program, or data was or

27  was not altered, damaged, or deleted by the access."); Nev. Rev. Stat. § 205.511(1)(a) (victim

28  may bring civil action to recover "[d]amages for any response costs").  Focusing on the

1   November 2008 through January 2009 time period, Ms. Dean calculated the Oracle personnel

2   time and expense related to investigating and responding to Rimini's unauthorized searching and

3   downloading activity.  Ms. Dean will testify that, based only on that time period, Oracle incurred

4   at least $26,689 in personnel expense.  Oracle is entitled to recover this amount in addition to the

5   amounts recoverable on Oracle's other claims.  18 U.S.C. § 1030(g) ("person who suffers

6   damage or loss by reason of a violation of this section may maintain a civil action against the

7   violator to obtain compensatory damages and injunctive relief or other equitable relief");

8   *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008) ("cost of

9   discovering the identity of the offender or the method by which the offender accessed the

10   protected information . . . [is] part of the loss for purposes of the CFAA").

11          **C.      Intentional Interference Damages**

12          Based on Defendants' intentional interference, Oracle is entitled to an award of at least

13   $194.2 million in lost profits.  Ms. Dean quantified this amount by evaluating each of Rimini's

14   ▇▇ customers and excluding ▇▇▇▇▇▇ customers.  Applying certain additional

15   reductions, Ms. Dean then calculated lost profits for both Oracle International Corporation

16   (where these damages are duplicative of the copyright infringement damages) and Oracle

17   America (for which there are no copyright infringement damages).  Ms. Dean calculated that

18   Oracle International is entitled to at least $76.5 million in lost profits and Oracle America is

19   entitled to at least $117.6 million.  As in the case of the copyright infringement damages, these

20   calculations are based only on lost support profits and do not account for the other ways in which

21   Rimini's conduct harmed Oracle.  These amounts reflect the correct amount of damages because,

22   as Oracle will show at trial, it was reasonably probable that Oracle International OIC and Oracle

23   America would have earned these amounts but for Defendants' unlawful interference.  *See Las*

24   *Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 106 Nev. 283, 283-87 (Nev.

25   1990) (damages award for interference with prospective economic advantage partially upheld

26   where evidence showed that competitor offered prohibited commissions to take a customer, it

27   was shown that "promising and paying illegal commissions was improper and was the reason for

28   the switch of [the customer's] business to LTR in October 1984," and "[t]he court found that

23

1    Gray Line lost $217,529 because of the diversion of [the customer's] business by LTR in 1985");

2    *Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 98 Nev.

3    409, 411 (Nev. 1982) ("[p]urely economic loss is recoverable in actions for tortious interference

4    with contractual relations or prospective economic advantage").  Mr. Hampton's "avoided costs"

5    method has no application, as interference damages are meant to compensate Oracle for the harm

6    caused by Defendants' lies, and other unlawful conduct caused the harm.

7        **D.**     **Punitive Damages**

8        Oracle will seek an award of punitive damages.  Punitive damages are available in

9    connection with Oracle's intentional interference, trespass to chattels, CDAFA claim, and

10    Nevada Computer Crime Law claims.  The jury will decide punitive damages on the intentional

11    interference, trespass to chattels, and Nevada Computer Crime Law claims, and the Court will

12    decide punitive damages on the CDAFA claim.  Nev. Rev. Stat. § 42.005; *SMSW Enterprises,*

13    *LLC v. Halberd Corp.*, No. CV 13-01412 BRO SPX, 2015 WL 1457605, at *14 (C.D. Cal. Mar.

14    30, 2015) ("Under Nevada law, a plaintiff may seek recovery for tortious interference with

15    prospective economic advantage. . . . Such recovery may include . . . punitive damages[.]"); Cal.

16    Civ. Code § 3294(a); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d

17    1120, 1141 (Cal. Ct. App. 1986), *as modified on denial of reh'g* (Mar. 5, 1986) (punitive

18    damages available for intentional interference); *Countrywide Home Loans, Inc. v. Thitchener*,

19    192 P.3d 243, 259 (Nev. 2008) (affirming punitive damages award on trespass and conversion

20    claims); Nev. Rev. Stat. § 205.511(1)(b) (civil plaintiff may recover punitive damages); Cal.

21    Penal Code § 502(e)(2) (permitting court to award "punitive or exemplary damages").

22        Defendants' sustained and intentionally unlawful acts warrant a substantial award of

23    punitive damages.  This was not the first time that Ravin engaged in this conduct, and he

24    persisted in this unlawful conduct even after Oracle sued TomorrowNow and after

25    TomorrowNow shut down.  Ravin and Rimini repeatedly lied to Oracle's customers and sought

26    to conceal their misconduct. ████████████████████████████████████

27    ████████████████████████████████████ These were not mistakes.  Ravin

28    and Rimini knew their actions were unlawful, and Defendants persisted ██████████

ORACLE'S TRIAL BRIEF

1   ████████████████████████████  PTX 65.  Defendants' blatant

2   disregard for the law provides ample grounds for a substantial award of punitive damages.  *E.g.*,

3   *Andrews v. Raphaelson*, 478 F. App'x 372, 374 (9th Cir. 2012) (punitive damages not excessive

4   under Nevada law where defendant repeatedly "engaged in a pattern of deliberate misconduct"

5   and damages assessed compared reasonably to other penalties that could have been imposed

6   because "no criminal charges were ever brought," although they hypothetically could have been,

7   and "'being criminally charged, convicted, and/or incarcerated far outweighs any monetary

8   penalty'") (quoting *Bongiovi v. Sullivan*, 138 P.3d 433, 452 n.86 (Nev. 2006)).

9   **V.       ISSUES TO BE DECIDED BY THE COURT**

10          In the Joint Pretrial Order, the parties identified certain legal issues for the Court to

11  decide.  Dkt. 523 at 21-22.  Oracle addresses some of those legal issues below.  This includes

12  issues that the Court will decide only after the jury reaches a verdict, and Oracle requests the

13  opportunity to more fully brief these issues at that time.

14         **A.       Injunctive Relief**

15          Oracle's entitlement to injunctive relief and the scope of such relief is a legal issue for the

16  Court.  Dkt. 523 at 21.[11]  The Copyright Act provides that courts may grant injunctive relief on

17  "terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C.

18  § 502(a).  "As a general rule, a permanent injunction will be granted when liability has been

19  established and there is a threat of continuing violations."  *MAI Sys. Corp. v. Peak Computer,*

20  _____

21  [11] A related issue to be determined by the Court is whether to enter an order impounding or
    requiring destruction of all infringing materials pursuant to 17 U.S.C. § 503.  Dkt. 523 at 21.
22  "The Copyright Act provides the owner of a copyright with a potent arsenal of remedies against
    an infringer of his work, including … the impoundment and destruction of all reproductions of
23  his work made in violation of his rights[.]" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464
    U.S. 417, 433-34 (1984); *see also Trendtex Fabrics, Ltd. v. Chad Jung Kim*, No. CV13 00480
24  DKW-KSC, 2014 WL 1326546, at *5 (D. Haw. Mar. 10, 2014) *report and recommendation
    adopted,* No. CV 13-00480 DKW-KSC, 2014 WL 1326552 (D. Haw. Mar. 31, 2014) ("Plaintiff
25  also seeks an order requiring Defendant to deliver to the Court for impoundment all materials in
    his possession or control that are alleged to infringe on the Copyrighted Design, or which may be
26  used to infringe…The Copyright Act provides for such relief."); *Videotronics, Inc. v. Bend
    Electronics*, 586 F. Supp. 478, 487-88 (D. Nev. 1984) (impounding all infringing copies).
27

28

1   *Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (upholding a permanent injunction where "the threat of a

2   violation is clear"); *see also Teller v. Dogge*, No. 2:12-CV-591 JCM (GWF), 2014 WL 4929413,

3   at *5 (D. Nev. Sept. 30, 2014) ("permanent injunction is warranted when there is no reason to

4   believe the infringing party will cease the infringement without an injunction"); *Broad. Music,*

5   *Inc. v. Paden*, No. 5:11-02199-EJD, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011)

6   (plaintiff entitled to injunctive relief where defendants "have shown a disregard for the

7   requirement of a licensing agreement by continuing to publicly perform BMI music without a

8   license" despite "Plaintiffs' repeated notices to Defendants").

9        The Supreme Court has articulated a four-part test to determine whether a permanent

10   injunction is necessary: "(1) that [the plaintiff] has suffered an irreparable injury; (2) that

11   remedies available at law, such as monetary damages, are inadequate to compensate for that

12   injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

13   remedy in equity is warranted; and (4) that the public interest would not be disserved by a

14   permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  That

15   four-factor test is applied in copyright cases.  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1152

16   (9th Cir. 2011) (in copyright case, holding "district court properly applied the Supreme Court's

17   four *eBay* factors" and affirming permanent injunction).

18        Injunctive relief is warranted, as Oracle will meet all four *eBay* factors.  First, Oracle will

19   prove irreparable harm to its goodwill and reputation based on, among other things, Rimini's

20   false promise of comparable support at 50 percent or less than Oracle's price.  *See Apple*, 658

21   F.3d at 1154 (irreparable harm shown where infringement was "causing Apple a loss of business

22   reputation" and "'goodwill'") (internal citation omitted); *Teller*, 2014 WL 4929413, at *5

23   (entering permanent injunction because copyright infringement "likely to have a negative effect

24   on plaintiff's reputation and goodwill").  Oracle seeks damages based on a conservative

25   calculation of lost support revenues, which does not and cannot fully address the harm caused by

26   Ravin and Rimini, including the irreparable harm to Oracle's reputation and goodwill.

27        Second, Oracle has already succeeded on the merits.  There is no dispute that Rimini

28   engaged in unlicensed copying for PeopleSoft and Oracle Database software, and the Court's

1    summary judgment rulings and Rimini's stipulation together establish a basis for injunctive

2    relief. *Teller*, 2014 WL 4929413, at *5 ("Plaintiff has achieved success on the merits for his

3    copyright infringement claim through this court's prior order of summary judgment"); *EMI Apr.*

4    *Music, Inc. v. Keshmiri*, No. 2:10-CV-00381-KJD, 2012 WL 5986423, at *7 (D. Nev. Nov. 28,

5    2012) ("Plaintiffs have already succeeded on the merits against two of the three Defendants.

6    Plaintiffs have shown that Defendants have failed to take action that would stop or limit the

7    performance of Plaintiffs' copyrighted works, even during the course of this litigation").  Oracle

8    will also prove liability on its other claims, which will further warrant injunctive relief.

9         Third, Oracle will show that the balance of hardships favors Oracle.  Oracle has

10   "expended a substantial amount of time and money in building" its software portfolio, which is

11   "recognizable and respected worldwide." *Teller*, 2014 WL 4929413, at *5.  On the other hand,

12   there is no justification for any continuing unlawful conduct by Rimini, or for any continuing use

13   of software materials obtained or created unlawfully.  Whatever amount of "harm to defendant in

14   forcing him to comply with the requirements of the law is outweighed by plaintiff's efforts to

15   protect his copyrighted" property. *Id.*  Granting an injunction may also limit further litigation

16   among the parties. *See EMI Apr. Music*, 2012 WL 5986423, at *7 ("Granting an injunction will

17   help avoid future litigation between the parties and will not unduly burden Defendants").  There

18   is no undue hardship in an injunction that "will simply require Defendants to obey" the law. *Id.*

19        Finally, Oracle will show that a permanent injunction will advance the public interest.

20   "[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated."

21   *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009) *aff'd*, 658 F.3d 1150 (9th

22   Cir. 2011); *see also EMI Apr. Music*, 2012 WL 5986423, at *7 ("an injunction is in the public

23   interest because it helps uphold copyright law."). *Metro-Goldwyn-Mayer Studios, Inc. v.*

24   *Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) ("the public interest will be served

25   with a permanent injunction, since it will protect Plaintiffs' copyrights against increased

26   infringement").  With its request for an injunction, Oracle seeks to vindicate its rights as a

27   copyright holder and prevent further infringement, which is in the public interest.  The fact that

28   the Department of Justice pursued criminal charges against Ravin's former company,

1   TomorrowNow, for similar conduct and obtained a plea agreement that put TomorrowNow on

2   organizational probation (PTX 383) confirms that injunctive relief is in the public interest.

3          Injunctive relief is especially important given Ravin's long history of unlawful conduct,

4   which does not "inspire confidence" that he and Rimini pose "no threat of future infringements."

5   *Broad. Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*, 899 F. Supp. 474, 483 (D. Nev.

6   1995).  Ravin's first company, TomorrowNow, was forced to shut down.  Ravin nonetheless

7   persisted with Rimini.  Ravin did so despite the fact that, as stipulated, a major portion of

8   Rimini's business was based on unlicensed copying.  Even in the midst of this litigation, Ravin

9   has shown a willful disregard for Oracle's efforts to protect its copyright interests, accusing

10  Oracle of asserting "baseless" claims.  Rimini is expanding, hiring new employees, and there is a

11  very real risk of continuing unlawful conduct by Ravin and Rimini.

12         **B.     Restitution**

13         Whether Oracle is entitled to restitution under California Business & Professions Code

14  § 17200, and the amount of any such restitution, is another issue for the Court to decide.

15  Dkt. 523 at 21.  California's unfair competition law permits "injunctive relief and restitution as

16  remedies against a person or entity engaging in unfair competition, including fraudulent business

17  practices."  *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 725 (9th Cir. 2012).  As such, "the

18  court may make an order or judgment 'as may be necessary to restore to any person in interest

19  any money or property, real or personal, which may have been acquired by means of such unfair

20  competition.'"  *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 245 (Cal. Ct. App.

21  2007), *as modified* (Apr. 24, 2007) (quoting Cal. Bus. & Prof. Code § 17203) ("The trial court

22  correctly, and wisely, ordered [the counterclaim defendant] to return the money it obtained from

23  [counterclaim plaintiff] through that unfair business practice.").  Restitution involves the

24  disgorgement of "illegally-obtained profits" and money which "may have been acquired by

25  means of any illegal practice."  *Irwin v. Mascott*, 112 F. Supp. 2d 937, 955 (N.D. Cal. 2000).[12]

26  _____

27  [12] "Prejudgment interest is also due on money paid as restitution."  *Irwin*, 112 F. Supp. 2d at 956.

28

1    The amount of such restitution will depend in part on the damages awarded by the jury.  *See id.*

2    n.21 ("Plaintiffs do not seek a double recovery for those who may be entitled to both restitution

3    under state law and damages under federal law.").  The same relief is available to Oracle based

4    on its unjust enrichment claim.  *Unionamerica*, 97 Nev. at 212 ("Unjust enrichment occurs

5    whenever a person has and retains a benefit which in equity and good conscience belongs to

6    another.").

7    **C.    Prejudgment Interest**

8        Whether Oracle is entitled to prejudgment interest is another legal issue for the Court to

9    decide.  Dkt. 523 at 21; *Polar Bear*, 384 F.3d at 716 ("[w]hether prejudgment interest is

10   available is a question of law").  Copyright infringement cases are ones where "prejudgment

11   interest should be awarded as a matter of course."  *Murphy v. City of Elko*, 976 F. Supp. 1359,

12   1362 (D. Nev. 1997) (citing *Frank Music Corp.,* 886 F.2d at 1551–52).  This is especially true in

13   cases of undisputed copyright infringement.  *Polar Bear*, 384 F.3d at 718 ("It is not difficult to

14   imagine a case involving undisputed copyright infringement—as is the case here—in which

15   prejudgment interest may be necessary to discourage needless delay and compensate the

16   copyright holder for the time it is deprived of lost profits or license fees").  Following the jury's

17   damages award, including based on Rimini's undisputed copyright infringement for PeopleSoft

18   and Oracle Database software, Oracle will seek prejudgment interest.[13]

19   **D.    Attorneys' Fees**

20       Oracle's entitlement to attorneys' fees and the amount of fees is another issue for the

21   Court.  Dkt. 523 at 22; 17 U.S.C. § 505 (in copyright infringement action, the Court may allow

22

23   _____

24   [13] Oracle will also seek prejudgment interest in connection with the state-law claims.  Nev. Rev.
     Stat. § 17.130 ("judgment draws interest from the time of service of the summons and complaint
25   until satisfied"); *Las Vegas-Tonopah-Reno Stage Line, Inc.*, 792 P.2d at 390 (upholding an award
     of prejudgment interest in connection with a claim of intentional inference with a prospective
26   economic advantage); *Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1035 (Nev. 2006)
     (upholding determination that "prejudgment interest on the entire verdict is allowed" and striking
27   denial of prejudgment interest on costs and attorneys' fees).

28

ORACLE'S TRIAL BRIEF

1   "recovery of full costs" and "also award a reasonable attorney's fee to the prevailing party as part

2   of the costs").  "The Copyright Act allows for recovery of full costs, which includes attorneys'

3   fees, by the prevailing party." *Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*, No. 2:12-CV-

4   01051-GMN-VC, 2014 WL 7336082, at *13 (D. Nev. Dec. 19, 2014) (plaintiff entitled to

5   attorneys' fees where defendant's copyright infringement was willful); *see also* Cal. Penal Code

6   § 502(e)(2) (in action under CDAFA, "court may award reasonable attorney's fees").

7          The Court's prior orders and Defendants' stipulation alone provide a basis for an award

8   of attorneys' fees. *See Teller*, 2014 WL 4929413, at *7 ("Because the court granted summary

9   judgment in favor of plaintiff's copyright infringement claims, plaintiff is a prevailing party.

10  Therefore, the court may award reasonable attorneys' fees and full costs.").  Oracle anticipates

11  that the jury's determinations concerning the full scope of Defendants' copyright infringement –

12  and the willful infringement of Oracle's copyrights – will further justify an award of attorneys'

13  fees. *Historical Research v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996) ("willful infringement is

14  an important factor favoring an award of fees"); *Reno-Tahoe Specialty*, 2014 WL 7336082, at

15  *13 (awarding fees based on willful copyright infringement).

16  **VI.    CONCLUSION**

17         Based on the evidence and arguments that Oracle will present at trial, Oracle will seek

18  judgment against Ravin and Rimini and damages in excess of $245.9 million, punitive damages,

19  attorneys' fees, prejudgment interest, and injunctive and equitable relief.

20

21

    DATED:  September 9, 2015

22

23                                             By:   */s/ Kieran P. Ringgenberg*_____
                                                     Kieran P. Ringgenberg
24                                                   Attorneys for Plaintiffs
                                                     Oracle USA, Inc., Oracle America, Inc. and
25                                                   Oracle International Corp.

26

27

28

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on the 9th day of September, 2015, I electronically transmitted the

3 foregoing **ORACLE'S TRIAL BRIEF [REDACTED]** to the Clerk's Office using the CM/ECF

4 System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all

5 counsel being registered to receive Electronic Filing.

6

7                                                By:  /s/ Kieran Ringgenberg
                                                        An employee of Boies, Schiller & Flexner LLP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28