| | |
|---|---|
| 1 | BOIES, SCHILLER & FLEXNER LLP |
| | RICHARD J. POCKER (NV Bar No. 3568) |
| 2 | 300 South Fourth Street, Suite 800 |
| | Las Vegas, NV 89101 |
| 3 | Telephone: (702) 382-7300 |
| | Facsimile: (702) 382-2755 |
| 4 | rpocker@bsfllp.com |

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com
Blaine H. Evanson (pro hac vice)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 780
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

JOINT REQUEST FOR THE COURT TO RULE ON OBJECTIONS
TO CUSTOMER DEPOSITION TESTIMONY; [PROPOSED] ORDER

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**JOINT REQUEST FOR THE COURT TO RULE ON OBJECTIONS TO CUSTOMER DEPOSITION TESTIMONY; [PROPOSED] ORDER**<br><br>*PUBLIC REDACTED VERSION* |

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation
2 (collectively, "Oracle") and Defendants Rimini Street and Seth Ravin (collectively, "Rimini")
3 submit this joint request for the Court to rule on a recurring objection by Rimini to the admission
4 of certain deposition testimony given by Rimini customers in this case.
5    In several depositions, Rule 30(b)(6) witnesses for the customers were asked questions in
6 the form "if you had known" about unlawful conduct that Oracle alleges Rimini committed,
7 would the customer have contracted with Rimini for service.  The questions vary in their precise
8 language, and below the parties cite two examples.  Because Oracle seeks to admit this testimony
9 from several customer depositions, and Rimini objects to it for every deposition, the parties have
10 agreed to submit these two examples to the Court for a ruling, with the expectation that the
11 Court's guidance will help resolve this objection to similar testimony in the remaining customer
12 depositions.

13   **I.   THE DISPUTED TESTIMONY**
14    The parties have agreed to narrow their discussion of the customer deposition testimony
15 to examples from two representative customer depositions.  The disputed testimony is as follows:

**Testimony from Barbara Shepard of Blue Cross and Blue Shield of Kansas City ("BCBSKS"):**

Q (By Ms. Loeb) Would you have allowed Rimini to install software on its computers if you knew it was not proper under your Oracle license?
A I don't think we would have knowingly violated our agreement.
Q (By Ms. Loeb) Right. Is it important to BlueCross BlueShield to comply with its contracts and to comply with the law?
A Uh-huh, yes.
Q And in fact, do you have a code of conduct at BlueCross BlueShield requiring you to comply with the lawsuit?
A Yes.
(Hixson Decl., Ex. 1 at 35:22-24, 36:1-10.)

Q (By Ms. Loeb) If you had known that Rimini Street would use your software to create software for other customers, would you have thought twice about working with them?
A Yeah, yes
(*Id.* at 51:18-22)

**Testimony from James Ward of Wendy's:**

> Q. Would Wendy's have switched to Rimini Street for support if Wendy's believed that Rimini Street provided support in any way that broke the law?
> THE WITNESS: No.
> Q. Would Wendy's have switched to Rimini Street for support if Wendy's believed that Rimini Street provided support in a way that went beyond the scope of their PeopleSoft license agreement?
> THE WITNESS: No.
> (Hixson Decl., Ex. 2 at 46:1-4, 46:6-13)
>
> Q. If Wendy's believed that Rimini Street had a business model that involved the improper use of intellectual property, would Wendy's have contracted with Rimini Street for support?
> THE WITNESS: No.
> (*Id.* at 75:1-5, 75:8)

## II. ORACLE'S STATEMENT

### A. The Testimony Is Relevant and Not Unduly Prejudicial.

Oracle contends that, "[a]s part of its efforts to lure customers away from Oracle, Rimini also concealed and made false statements regarding its improper and unauthorized conduct." Dkt. 523 at 3:6-7. Rimini's actions caused Oracle to lose many customers, resulting in $213.3 million in lost profits. Dkt. 747 (Oracle's Trial Brief) at 18:4-16. By contrast, Rimini claims that Oracle will not be able to "prove liability or causation on its inducing breach or intentional interference claims." Dkt. 739 (Rimini's Trial Brief) at 26:8-10.

Because Rimini disputes causation, Oracle intends to introduce evidence to show that, but for Rimini's lies to customers covering up its infringing conduct, its customers would not have contracted for support with Rimini. To that end, Oracle seeks to introduce testimony by former Oracle customers, including the two examples quoted above, as relevant evidence to show that Rimini's deception was material to the customers' decision to contract for support with Rimini. Oracle deposed corporate representatives from seventeen customers and asked them questions about how their decisions with respect to contracting with Rimini would have changed had they known various facts about Rimini Street's support practices. Customers responded that, had they known these facts about Rimini's support practices, they would not have contracted with Rimini. This straightforward testimony establishes that, but for Rimini's deception and concealment, no customers would have switched to Rimini.

1    This customer testimony is relevant, because causation is a key issue in this case – as
2    noted, Rimini specifically disputes that Oracle can "prove liability or *causation* on its . . .
3    intentional interference claims." Dkt. 739 (Rimini's Trial Brief) at 26:8-10 (emphasis added).
4    Testimony by customers that they would not have contracted with Rimini if they had known
5    about Rimini's infringing conduct tends to show that Rimini's conduct caused Oracle's losses.
6    Fed. R. Evid. 401.  Indeed, in the multiple iterations of deposition designations that the parties
7    have exchanged, Rimini has never objected to the testimony at issue based on Rule 402 or 403
8    until now.  *See* Dkt. 523-10 (App'x C-1 to Joint Pretrial Order); Hixson Decl., Ex. 3 (Email
9    attaching Rimini's objections to Oracle's proposed pre-admitted deposition designations).  And
10   even now, Rimini makes no attempt to explain its baseless Rule 403 objection.

### B. Rimini's 602 and 701 Objections Have No Merit.

12   Rimini also seeks to exclude this relevant evidence based on Federal Rules of Evidence
13   602 (foundation) and 701 (lay opinion testimony).  Those objections do not have merit either.

#### 1. Legal Standard

15   Under Rule 602, a witness may testify to a matter if evidence is introduced sufficient to
16   support a finding that the witness has personal knowledge of the matter.  Rule 701, in turn,
17   applies to opinion testimony.  Rule 701 does not apply where the inference a witness is "asked to
18   make in answering the hypothetical questions was limited by the factual foundation laid in earlier
19   admitted testimony and exhibits, the factual nature of the hypotheticals, and the witnesses'
20   reasoning," because these limitations leave "little room for the witnesses to engage in speculation
21   and ensure[] that their testimony [falls] near the fact end of the fact-opinion spectrum." *United*
22   *States v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 402, 190 L. Ed. 2d 289
23   (2014), and *cert. denied sub nom. Tennant v. United States*, 135 S. Ct. 402 (2014), and *cert.*
24   *denied*, 135 S. Ct. 402, 190 L. Ed. 2d 289 (2014), and *cert. denied sub nom. Tennant v. United*
25   *States*, 135 S. Ct. 402 (2014).  Even where Rule 701 does apply, "a witness may testify to the
26   fact of what he did not know and how, if he had known that independently established fact, it
27   would have affected his conduct or behavior." *Id.* at 459.  "When the issue for the fact-finder's
28   determination is reduced to impact—whether a witness would have acted differently if he had

been aware of additional information—the witness so testifying is engaged in 'a process of reasoning familiar in everyday life.'" *Id.* at 460 (quoting Fed. R. Evid. 701 advisory committee's note, 2000 amend.). Such testimony is admissible under Rules 602 and 701. *Id.*

### 2. The Customer Testimony Satisfies These Standards.

The customer testimony at issue here was based entirely on the deponents' personal knowledge (Rule 602), and it falls directly within the lay testimony rule (Rule 701) as elaborated by *Cuti*, because the customers are testifying about what they did not know about Rimini's support practices and how that knowledge would have affected their decisions.

Oracle intends to show, through the undisputed testimony of Rimini's own witnesses, that Rimini had a general practice of lying and failing to disclose to customers material information about its infringing business. For example, Rimini's Senior Vice President and Rule 30(b)(6) witness Kevin Maddock testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Hixson Decl., Ex. 4 (Maddock 30(b)(6) Dep.) at 81:24-82:13 (emphasis added).[1]

Oracle's questions concerning what the customers would have done if they had known the truth about Rimini's infringing business model were not improper hypotheticals and did not assume facts not in evidence. Turning to the two examples here (BCBSKC and Wendy's), both witnesses were personally knowledgeable about the representations that Rimini made to their respective companies about Rimini's support practices as part of Rimini's sales pitch to the customers. Both Mr. Ward, the Wendy's representative deponent, and Ms. Shepard, the BCBSKC representative deponent, were involved in the decision to contract with Rimini rather than Oracle. Ms. Shepard was a member of the "PeopleSoft Executive Steering Committee" that gave the "final approval" of the decision to switch to Rimini. Hixson Decl., Ex. 1 (BCBSKC Dep.) at 11:10-12:2. Mr. Ward was the "primary individual" responsible for the initial decision whether to go to Rimini. *Id.*, Ex. 2 (Wendy's Dep.) at 32:14-19.

---

[1] Oracle has moved to compel Mr. Maddock's attendance at trial, Dkt. 725, and this customer testimony underscores the relevance of his testimony as well.

1    With respect to BCBSKC, the evidence shows that it relied on Rimini's
2    misrepresentations about its support model and on Rimini's explanation that its conduct was
3    lawful. *Id.*, Ex. 1 (BCBSKC Dep.) at 24:13-25:4. In fact, Rimini's conduct was not lawful. Its
4    support practices infringed Oracle's PeopleSoft and Database copyrights. Dkt. 474 (Order
5    granting Oracle's first motion for summary judgment on PeopleSoft infringement) at 15:16-20,
6    20:14-18; Dkt. 476 (Order granting Oracle's second motion for summary judgment on Oracle
7    Database infringement) at 15:24-16:3. Rimini specifically installed a copy of a PeopleSoft
8    environment associated with BCBSKC on Rimini's local servers. Dkt. 523-3 (Ex. C to Joint
9    Pretrial Order) at 1 (showing two PeopleSoft environments for BCBSKC on Rimini's servers).
10   This was a violation of the BCBSKC PeopleSoft software license, and constitutes copyright
11   infringement. Dkt. 474 (Order granting Oracle's motion for summary judgment) at 15:16-20,
12   20:14-18; Dkt. 599 (Stipulation) at 1-2 (stipulating that the terms of the PeopleSoft licenses at
13   issue in the Court's order granting Oracle's motion for summary judgment are identical for all
14   PeopleSoft licenses at issue in this case, and waiving Rimini's express license defense as to
15   PeopleSoft software).
16   　　In addition to Rimini's standard sales messaging, in response to BCBSKC's concerns in
17   April of 2010 about the lawsuit Oracle had filed against Rimini in January, Seth Ravin provided
18   BCBSKC with a press release and a copy of Rimini's answer to Oracle's complaint in this case.
19   Hixson Decl., Ex. 1 (BCBSKC Dep.) at 22:19-24:12; *id.*, Ex. 5 (PTX 405) at BCBSKC-
20   SUB19209, BCBSKC-SUB19233. This email was forwarded directly to Ms. Shepard the next
21   day. *Id.* (PTX 405) at BCBSKC-SUB19209. As Oracle has shown and will continue to show
22   with abundant evidence at trial, Rimini's answer to Oracle's complaint (and the press release
23   based on the answer) is riddled with Rimini's knowing misrepresentations about its support
24   practices. Rimini claimed it kept Oracle software in a "separate data 'silo'" for each customer.
25   *Id.* at BCBSKC-SUB19235 & 1926254. This was a lie, and Rimini knew it was a lie. *See* Dkt.
26   307 (Oracle's Spoliation Mot.) at 9-11.
27   　　Rimini also lied to Wendy's. In addition to its standard messaging, in 2008, a year after
28   Oracle had sued TomorrowNow, Mr. Ward told Michael Davichick, Rimini's Vice President of

Sales and a former TomorrowNow salesman, that he needed "to understand what sets RiminiStreet [sic] apart from TomorrowNow." Hixson Decl., Ex. 6 (PTX 463); *id.*, Ex. 2 (Wendy's Dep.) at 41:12-42:5. Rimini represented in response that TomorrowNow's support model was different from Rimini's support model, which was lawful. *Id.*, Ex. 2 (Wendy's Dep.) at 42:20-43:7, 43:11-43:21. Oracle will establish at trial that Rimini held key infringing support practices in common with TomorrowNow, and Rimini was aware of that fact when it made representations like this one to Wendy's. Dkt. 607 (Oracle's opposition to Rimini's motion *in limine* to exclude TomorrowNow evidence) at 2-6. The practices included creating fixes for one customer and delivering them to other customers, including Wendy's. Hixson Decl., Ex. 7 (Davis Report excerpt, pp. 43-48, describing Rimini's cross-use of Oracle software to develop fixes); *id.*, Ex. 8 (tabs "customer lists (HRMS Dlvrd)" and "customer lists (TUSS)" from Davis exhibit CustomerByFix (listing Wendy's as a recipient of Rimini fixes developed through cross-use)). Rimini also falsely represented to its customer base that "Rimini Street does not use the same procedures as . . . TomorrowNow" and instead "uses detailed log files and security precautions to assure that such activities are carefully monitored, detailed, controlled and audited for accuracy," Hixson Decl., Ex. 9 (PTX 396) – statements which are belied by Rimini's software library that it used to create environments. Mr. Ward testified that Wendy's relied on Rimini's representations in deciding to cancel Oracle support and switch to Rimini. *Id.*, Ex. 2 (Wendy's Dep.) at 43:22-44:10.

Beyond these two specific customers, similar foundation exists and will be shown at trial concerning the other customer depositions establishing that the facts assumed in the hypotheticals posed to those witnesses are true. In addition to customer-specific evidence, as noted above, Rimini's witnesses have admitted to a general policy of misrepresenting the company's infringing services, and Rimini's liability for infringement as to PeopleSoft and Oracle Database software has been established across the board by summary judgment orders and pretrial stipulations. "If you had known Rimini was a copyright infringer" does not ask the witness to assume facts not in evidence.

### 3. Conclusion

The customer testimony from Wendy's and BCBSKC is based directly on the personal knowledge of the deponents, in compliance with Rule 602. The witnesses were the decision-makers, and they had percipient knowledge of the relevant documents and representations from Rimini. Further, the testimony relates to facts for which Oracle will lay a thorough foundation at trial, and the hypothetical questions at issue are factual in nature. These limitations put the testimony "near the fact end of the fact-opinion spectrum." *Cuti*, 720 F.3d at 458. The proposed witnesses have testified to a simple fact based on their job responsibilities and personal knowledge: they would not have knowingly done business with Rimini if they had known about Rimini's copyright violations.

Even if Rule 701 applies, their testimony is about how, if they "had known that independently established fact [i.e., the truth about Rimini's support practices], it would have affected [their] conduct or behavior." *Cuti*, 720 F.3d at 459. The witnesses are testifying about the impact of additional information on their decision, "a process of reasoning familiar in everyday life." *Id.* at 460; Fed. R. Evid. 701, advisory committee notes. The hypotheticals Oracle asked are complete, and the only fact they assume is knowledge of the truth about Rimini's infringement, which has already been established (e.g., Rimini's infringement), or will be established in full detail by Oracle's evidence at trial. Thus, the customer testimony at issue is either fact testimony, or it is squarely within the bounds of allowable lay witness opinion testimony under Rule 701.

## III. RIMINI'S STATEMENT

Oracle seeks to introduce deposition testimony from at least 11 of Rimini Street's clients in an effort to show that Rimini's allegedly misleading statements and copyright infringement caused those clients to leave Oracle and go to Rimini. While not actually relevant, this testimony is designed to cause confusion among and mislead the jury for seeming probative. The testimony should therefore be excluded under Fed. R. Civ. P. 402 and 403. The questions are also based on improper trick hypotheticals which assumed facts not in evidence, ignored relevant facts that were in evidence, and should be excluded under Fed. R. Civ. P. 602 and 701.

**Oracle's customer testimony should be excluded under Fed. R. Civ. P. 402 and 403**

In depositions, counsel for Oracle asked Rimini customers whether they would knowingly violate their license agreements, and whether it is "important" to the customer for its vendors to comply with the law. The answers, unsurprisingly, were "no," they would not knowingly violate their license agreements, and "yes," compliance with the law is important. Respectfully, asking a corporate witness under oath whether they would knowingly violate the law is not probative of whether Rimini's infringement caused that customer to leave Oracle. Indeed, such a question will, by design, elicit only one possible answer. The fact that witnesses will predictably testify that they try not to break the law is simply not probative of whether Oracle lost customers due to Rimini's infringement. The testimony is highly prejudicial, though, in that it is intended to mislead the jury because it seems probative. For instance, a jury may believe (and Oracle seems to argue) that since customers testified that they try not to break the law, and since Rimini broke the law (i.e., infringed), then those customers would have stayed with Oracle if Rimini had not broken the law. While superficially appealing, all this really proves is that customers will consistently testify that they try not to break the law.

Certainly, there are questions that might bear on the critical question of causation. But, Oracle instead asked loaded questions and now seeks to flaunt their utterly predictable answers in the hopes that the jury will afford it undue weight. Oracle argues that the testimony is relevant to causation. It is true that Oracle needs causation evidence, but answers to trick questions and could have no other answer but the most obvious that any corporate witness would have to say, is not probative of causation. Oracle could have asked much more appropriate questions of the corporate witnesses, questions that could have yielded substantive probative testimony. That Oracle chose to play games with its questions is no one's fault but Oracle's. There are many questions which Oracle asked of these same witnesses, and other customer witnesses, to which Rimini did not object. But for these questions, the testimony has no bearing on whether Rimini's specific acts caused Oracle's losses, and, thus, this testimony should be excluded under Fed. R. Civ. P. 402 and 403.

**Oracle's customer testimony should be excluded under Fed. R. Civ. P. 602 and 701**

1  Moreover, this testimony should also be excluded under Fed. R. Civ. P. 602 and 701. All
2  of this testimony was elicited through the use of improper hypothetical questions which involved
3  legal concepts beyond the training of a lay witness, assumed facts not in evidence, or were based
4  on an incomplete statement of the relevant facts. Specifically, the following series questions was
5  posed to every witness. "Would the client have switched to Rimini:

- If it knew Rimini was breaking the law,
- If it knew Rimini was doing something unauthorized,
- If it knew Rimini was doing something outside of the client's license,
- If it knew Rimini was violating the client's license,
- If it knew Rimini was a copyright infringer,
- If it knew Rimini was improperly using intellectual property, and
- If it knew Rimini's business model was illegal."

These hypothetical questions, and any responses thereto, should be excluded under Federal Rules of Evidence 602 and 701. Rule 602 requires personal knowledge from a lay witness:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Rule 701 dictates the proper scope of a lay witness's opinion testimony, and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Oracle's hypotheticals are not based on facts of record and are incomplete in that they leave out critically relevant facts that are in the record. Such hypotheticals are impermissible. *Williams v. Thomas Jefferson Univ.*, 54 F.R.D. 615, 617 (E.D. Pa. 1972); *Miller v. Village of Pinckney*, 2008 WL 4190619, at *1 (E.D. Mich. Sept. 9, 2008) (excluding responses to

hypothetical questions where the questions were based on facts not present in the record). "While counsel may pose hypothetical questions to a lay witness, said questions must be based on facts of record, e.g., the testimony of a prior witness who has been subjected to cross-examination." *Howard v. Rustin*, 2008 WL 1925102, at *3 (W.D. Pa. Apr. 30, 2008).

Contrary to Rule 602, and contrary to Oracle's blanket but unsupported argument that the hypotheticals did not assume facts not in evidence, the foregoing litany of questions assumes at least the following facts that were not of record:

- That Rimini actually performed each of the accused acts (local hosting, cross use, cloning and automated downloads) for each of the 11 clients;
- That Rimini made statements to each of the 11 clients knowing they were untrue; and
- That each of the 11 clients relied on those statements in their decision to leave Oracle.

In fact, Oracle's argument concedes this, by arguing that "Oracle will establish at trial…" and by citing to expert reports which were prepared after the depositions. A hypothetical to a lay witness must be based on evidence of record – which Oracle admits was not evidence of record at the time of the questioning.[2] *Howard*, 2008 WL 1925102 at *3 ("hypothetical questions to a lay witness [] must be based on facts of record").

A specific example involving one client, Wendy's, highlights the problem with the remaining 10 clients. Oracle asked Wendy's corporate representative: "Would Wendy's have switched to Rimini Street for support if Wendy's believed that Rimini Street provided support in a way that went beyond the scope of their PeopleSoft license agreement?" That question was not based on evidence in the record nor on a complete statement of all relevant facts. Specifically:

- It ignored the evidence of record showing that Rimini believed in good faith that its support was within the scope of the PeopleSoft license

---

[2] Ms. Shephard's deposition was taken on November 1, 2011. Mr. Ward's deposition was on December 15, 2011. Oracle's expert report from Mr. Davis, which Oracle cites in its motion, was not prepared until May 2012, and of course trial has not yet begun.

- It ignored the evidence of record showing that Rimini had communications with Oracle regarding, for example, how to work through obtaining Oracle documents to which customers were legally entitled; and
- It assumed facts that have never been in the record, such as assuming Rimini made statements to Wendy's that Rimini believed were false (which Rimini did not), or assuming Rimini actually made every alleged act (such as local hosting, cross use, cloning, or automated downloads) for Wendy's in particular (which Oracle has not attempted to prove).

Because this hypothetical question was incomplete and not based on evidence of record, it is improper and it, along with other similar questions and responses, should be excluded.

Oracle goes so far as to argue that the witnesses had personal knowledge of the representations that Rimini made to that customer – but that is nothing more than a straw man for Oracle to knock down. The disputed questions and responses do not ask "What did Rimini tell you?" or "What do you recall Rimini saying about its processes?" They ask about things that the witness presumably did not have personal knowledge about – such as improper use of intellectual property or breaching a contract. Again, where Oracle asked proper questions about topics on which the witness did have personal knowledge, and which were not "would you break the law" questions, Rimini did not object.

Oracle's similar question to Blue Cross Blue Shield Kansas City, about alleged cross use, was also improper for similar reasons: It ignored the facts of record that Rimini Street did not give clients software to which they were not entitled, and that Rimini Street had procedures in place to verify that two customers were using the same version of Oracle software before making a common update for multiple clients on that same version.

Thus, like the textbook trick question, "When did you stop beating your wife?," by effectively asking "Would you condone an illegal act?," Oracle impermissibly attempted to trap these witnesses into a damaging but inadvertent admission. Ultimately, allowing this improper testimony would waste the Court's and the jury's time and unfairly prejudice Rimini.

Finally, hypothetical questions that involve legal concepts that are beyond the knowledge or training of a lay witness, or which use legal terms, are impermissible. *Williams*, 54 F.R.D. at 617. In *Williams*, for example, the court found the following question was ambiguous and involved "legal concepts beyond the training" of that witness:

> Does that mean, sir, that under the practice of the hospital, you are in charge of and responsible for the treatment of these patients?

*Id.* The court also found that this question was "improper because of its use of the legal term, 'negligence'":

> Would you say that these conditions are something which might occur in the absence of negligence on the part of the physician?

*Id.*

Oracle's questions to Wendy's (and similar questions to other Rimini clients) are similarly improper under Rule 701. Oracle asked hypothetical questions of a lay witness which were infused with legal concepts and legal terms. For example, Oracle asked about "support in a way that went beyond the scope of [Wendy's] PeopleSoft license agreement" without laying any foundation that the witness could properly construe the scope of Wendy's PeopleSoft agreement. Oracle also asked a lay witness a hypothetical about "improper use of intellectual property" without laying any foundation that the witness was qualified to provide testimony on the legal term "intellectual property." Hypotheticals of this nature to a lay witness with no legal training, or where a proper foundation has not been laid to show the legal knowledge by that lay witness, are improper. *Williams*, 54 F.R.D. at 617. Oracle's similar questions to the corporate witness for Blue Cross Blue Shield Kansas City – i.e., asking about what would have been proper under its Oracle license, and questions about complying with contracts – were also improper. Oracle contends that its questions were appropriate for these witnesses, but ignores that these witnesses were not shown to have any legal training at all, yet the disputed testimony is replete with legal concepts and terms. Indeed, Oracle even claims that the answers were based solely on the witness's personal knowledge, which Oracle must to overcome the Rule 602 objection, but there

1  is no testimony to say that any of these witnesses has personal knowledge of what constitutes or

2  would be the implication of "improper use of intellectual property."

3  **Conclusion**

4  In summary, if Oracle wants to properly introduce the documents it cites in support of the

5  argument it makes in its portion of this brief, and if they are properly admitted through the trial

6  process, or even use the testimony in response to the legitimate questions that it did ask these

7  customers and to which Rimini did not object, that is one thing.  But instead, Oracle wants to use

8  its bag of trick hypothetical questions to lay people who were under oath and who were certainly

9  not going to say "Yes, I would break the law," and its questions filled with legal terms and legal

10  concepts to lay witnesses who were not shown to have any legal training whatsoever.  The Court

11  should not allow Oracle to do so.

12  Dated:  September 11, 2015

13  SHOOK, HARDY & BACON LLP                    MORGAN, LEWIS & BOCKIUS LLP

14  By:        /s/  Robert H. Reckers                     By:          /s/ Thomas S. Hixson
15  Robert H. Reckers                                         Thomas S. Hixson
    Attorneys for Defendants                              Attorneys for Plaintiffs
16  Rimini Street, Inc. and                                  Oracle USA, Inc.,
    Seth Ravin                                                    Oracle America, Inc. and
17                                                                    Oracle International Corporation

18
    **[PROPOSED] ORDER**
19
20  Good cause appearing, the customer testimony quoted in Section I above is:

21  ___ ADMITTED  or  ___ EXCLUDED

22  IT IS SO ORDERED.

23  DATED: September ___, 2015

24

25
                                                                    _____
26                                                                  Hon. Larry R. Hicks
                                                                    United States District Judge
27

28

| | |
|---|---|
| 1 | **ATTESTATION OF FILER** |
| 2 | The signatories to this document are Robert Reckers and me, and I have obtained Mr. |
| 3 | Reckers's concurrence to file this document on his behalf. |
| 4 | |
| 5 | Dated:  September 11, 2015 |
| 6 | By:       /s/ Thomas Hixson |