# EXHIBIT 2
# REDACTED VERSION
# OF DOCUMENT FILED
# UNDER SEAL

Page 1

1                 UNITED STATES DISTRICT COURT

2                     DISTRICT OF NEVADA

3     _____

4     ORACLE USA, INC., a Colorado

5     corporation; ORACLE AMERICA,

6     INC., a Delaware corporation;

7     and ORACLE INTERNATIONAL

8     CORPORATION, a California          Case No.

9     corporation,                       2:10-cv-00106-LRH-PAL

10               Plaintiffs,

11          vs.

12     RIMINI STREET, INC., A

13     Nevada corporation; SETH RAVIN,

14     an individual,

15               Defendants.

16     _____

17               Videotaped Deposition of

18                    JAMES WARD

19                 NOVEMBER 15, 2011

20                  10:00 a.m.

21                  Taken at:

22          Vorys, Sater, Seymour and Pease, LLP

23               52 East Gay Street

24                  Columbus, Ohio

25          Kimberly A. Kaz, RPR, Notary Public

1  he was at Tomorrow Now?
2    A.  Yes.
3    Q.   Did Mr. Ravin ever discuss Rimini
4  Street with you before Wendy's decided to
5  switch to Rimini Street?
6    A.  No.
7    Q.   You just mentioned that you had
8  heard some other parties' names, but you can't
9  recall them.  Did Wendy's consider going to any
10 other third-party support providers other than
11 Rimini Street at this time?
12   A.   Well, we -- we looked at Oracle, as
13 going back to a support model as well as Rimini
14 Street.  And, again, there was -- there was a
15 couple more on the list, and I can't recall
16 what they are, so we looked at them briefly.
17   Q.   You looked at them briefly, but to
18 the best of your recollection, was Wendy's
19 primarily considering only Rimini Street or
20 going back to Oracle?
21     MR. TONG:  Objection to form.
22     MR. PAPAY:  You can answer.
23     MR. LONG:  I'm sorry.  What was the
24 objection?
25     MR. TONG:  To form.

Page 30

1    Q.   Does that mean that Wendy's did not
2  have the capacity to do self-support?
3    A.  That's true.
4    Q.   Did Wendy's view self-support as
5  risky because they were unable to have --
6    A.  Not so much.
7    Q.   -- the capacity?
8    A.  No.
9    Q.   Who was involved in the decision
10 whether to return to Oracle for support or to
11 switch to Rimini Street?
12   A.   It was -- final decision was by
13 senior management.
14   Q.   Were multiple individuals involved
15 in the decision initially whether to go to
16 Oracle or to go to Rimini Street?
17   A.  Yes.  I was primary.
18   Q.   You were the primary individual?
19   A.  Uh-huh.
20   Q.   Do you remember who else was
21 involved?
22   A.  Not at this time.

Page 32

1      MR. LONG:  I didn't --
2      MR. PAPAY:  Form.
3      MR. LONG:  Oh, okay.
4      MR. TONG:  Sorry.
5      MR. LONG:  I'm sorry.  I didn't
6  understand what you said.
7      MR. TONG:  Need some water.
8    Q.   Do you need me to repeat question?
9    A.  Yes, please.
10   Q.   Was Wendy's primarily considering
11 whether to go back to Rimini Street or Oracle?
12   A.   Those were the prime candidates.
13   Q.   Did Wendy's consider, at this time
14 that Tomorrow Now was shutting down, going to
15 self-support?
16   A.   We looked at that option, yes.
17   Q.   Did Wendy's decide whether or not
18 to do self-support?
19   A.   We decided not to do it.
20   Q.   Why did Wendy's choose not to do
21 self-support?
22   A.   Because we were in a re- -- a cost
23 containment, reducing resources in our
24 corporate office, and we couldn't bring on
25 additional people.

Page 31

Page 33

**Veritext National Deposition & Litigation Services**
**866 299-5127**



Page 38

Page 40

Pages 38 to 41



Page 42                                                                Page 44

Pages 42 to 45



Page 47                                                          Page 49

Pages 46 to 49



```
 1   Suites from?
 2        A.   Oracle.
 3             MR. PAPAY:  That's all I have.
 4   Thank you.
 5             EXAMINATION OF JAMES WARD
 6   BY MR. TONG:
 7        Q.   Good morning, Mr. Ward.  My Name is
 8   Jared Tong, and I represent Rimini Street and
 9   Seth Ravin.  I just have a few questions to
10   follow up with.
11             First of all, I believe you
12   mentioned cost being a factor when you were
13   determining whether to stay or leave Oracle
14   support; is that correct?
15        A.   Yes.
16        Q.   Now, was that the only factor that
17   Wendy's considered when making this decision to
18   leave?
19        A.   Support model was very important to
20   us.  I mean, we have to support the business.
21   We were supporting multiple business entities
22   at the time, and it was very critical --
23   mission critical for us to have a support model
24   in place.
25        Q.   Okay.  Now, did you have -- strike
```

Page 76

```
 1   that.  Sorry.
 2             When you were determining whether
 3   to leave, did Wendy's -- did Wendy's have any
 4   experience with poor support with Oracle, any
 5   poor experiences or lack of responsiveness?
 6        A.   You say before we were to leave.
 7   Would you explain yourself there?
 8        Q.   When you were receiving support
 9   from Oracle support --
10        A.   Yes.
11        Q.   -- did -- do you remember any
12   instances of, I guess, poor support or lack of
13   responsiveness to Wendy's needs?
14             MR. PAPAY:  Objection.  Vague.
15             THE WITNESS:  No.
16        Q.   Okay.  We're going to move on
17   to -- actually, before leaving Oracle, did
18   Wendy's attempt to negotiate price?
19        A.   Yes.  With -- with Oracle.
20        Q.   Did -- was it successful?
21        A.   No.
22        Q.   Okay.  We're going to move over to
23   alternative support options.
24             Now, you mentioned you kind of
25   briefly looked at other third-party options as
```

Page 77

Pages 74 to 77

Page 85

1                    REPORTER'S CERTIFICATE

2

3     The State of Ohio,      )

4                                    SS:

5     County of Fairfield. )

6

7                I, Kimberly A. Kaz, RPR, a Notary

8     Public within and for the State of Ohio, duly

9     commissioned and qualified, do hereby certify

10    that the within named witness, JAMES WARD, was

11    by me first duly sworn to testify the truth,

12    the whole truth and nothing but the truth in

13    the cause aforesaid; that the testimony then

14    given by the above-referenced witness was by me

15    reduced to stenotypy in the presence of said

16    witness; afterwards transcribed, and that the

17    foregoing is a true and correct transcription

18    of the testimony so given by the

19    above-referenced witness.

20                I do further certify that this

21    videotaped deposition was taken at the time and

22    place in the foregoing caption specified and

23    was completed without adjournment.

24

25

Page 86

1          I do further certify that I am not

2     a relative, counsel or attorney for either

3     party, or otherwise interested in the event of

4     this action.

5          IN WITNESS WHEREOF, I have hereunto

6     set my hand and affixed my seal of office at

7     Cleveland, Ohio, on this _*22nd*_ day of

8     __*November*____, 2011.

9

10

11

12

13     _____*Kimberly Q. Kaz*_____

14          Kimberly A. Kaz, RPR, Notary Public

15          within and for the State of Ohio

16

17     My commission expires March 31, 2013.

18

19

20

21

22

23

24

25