1   SHOOK, HARDY & BACON LLP
    B. Trent Webb, Esq. (*pro hac vice*)
2   Peter Strand, Esq. (*pro hac vice*)
    Ryan D. Dykal, Esq. (*pro hac vice*)
3   2555 Grand Boulevard
    Kansas City, MO 64108-2613
4   Telephone: (816) 474-6550
    Facsimile: (816) 421-5547
5   bwebb@shb.com

6   Robert H. Reckers, Esq. (*pro hac vice*)
    600 Travis Street, Suite 1600
7   Houston, TX 77002
    Telephone: (713) 227-8008
8   Facsimile: (713) 227-9508
    rreckers@shb.com
9
    GIBSON, DUNN & CRUTCHER LLP
10  Mark A. Perry (*pro hac vice*)
    1050 Connecticut Avenue, N.W.
11  Washington, DC 20036-5306
    Telephone: (202) 955-8500
12  mperry@gibsondunn.com

13  Blaine H. Evanson (*pro hac vice*)
    333 South Grand Avenue
    Los Angeles, CA 90071
14  Telephone: (213) 229-7228
    bevanson@gibsondunn.com
15

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 780
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

16              *Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

17              **UNITED STATES DISTRICT COURT**
                **DISTRICT OF NEVADA**

18  ORACLE USA, INC., a Colorado corporation;
    and ORACLE INTERNATIONAL
19  CORPORATION, a California corporation,

20  Plaintiffs,

21  v.

22  RIMINI STREET, INC. , a Nevada
    corporation and SETH RAVIN, an individual,
23
    Defendants.
24

Case No. 2:10-cv-0106-LRH-PAL

**DEFENDANTS RIMINI STREET,
INC.'S AND SETH RAVIN'S
OBJECTIONS TO ORACLE'S
ADDITIONAL PROPOSED
INSTRUCTIONS**

25

26

27

28

1

## TABLE OF CONTENTS

2

3    I.    OBJECTIONS TO ORACLE'S PROPOSED JURY INSTRUCTIONS ......................... 1

P-1.  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE.................... 2

4    P-2.  TOMORROWNOW EVIDENCE.................................................................... 4

5    P-3.  ORACLE ENTITIES AND CLAIMS .......................................................... 5

6    P-4.  COPYRIGHT—INTRODUCTION AND DEFINITIONS ............................ 7

P-5.  LICENSE INTERPRETATION—PAROL EVIDENCE.................................. 10

7    P-6.  SPOLIATION OF EVIDENCE ................................................................... 11

8    P-7.  CORPORATE PARTIES ........................................................................... 12

9    P-8.  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE.................. 13

P-9.  ORACLE ENTITIES AND CLAIMS .......................................................... 14

10   P-10.  TOMORROWNOW EVIDENCE ............................................................... 15

11   P-11.  COPYRIGHT—INTRODUCTION AND DEFINITIONS ........................... 18

12   P-12.  COPYRIGHT INFRINGEMENT ............................................................. 19

P-13.  COPYRIGHT—DIRECT INFRINGEMENT............................................... 21

13   P-14.  COPYRIGHT—ACCESS AND SUBSTANTIAL SIMILARITY ................... 23

14   P-15.  LICENSE INTERPRETATION—PAROL EVIDENCE................................ 25

15   P-16.  COPYRIGHT—CONTRIBUTORY INFRINGEMENT ................................ 26

P-17.  COPYRIGHT—VICARIOUS INFRINGEMENT ...................................... 28

16   P-18.  COPYRIGHT DAMAGES—CAUSATION .............................................. 29

17   P-19.  COPYRIGHT—DAMAGES—ACTUAL DAMAGES INTRODUCTION ....... 31

18   P-20.  COPYRIGHT—ACTUAL DAMAGES—LOST PROFITS ............................ 34

P-21.  COPYRIGHT—ACTUAL DAMAGES—FAIR MARKET VALUE................. 36

19   P-22.  COPYRIGHT—DAMAGES—INFRINGER'S PROFITS.............................. 39

20   P-23.  STATUTORY DAMAGES........................................................................ 42

21   P-24.  INDUCING BREACH OF CONTRACT ................................................... 44

P-25.  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC

22            ADVANTAGE ...................................................................................... 47

23   P-26.  INDUCING BREACH OF CONTRACT AND INTENTIONAL
         INTERFERENCE—KNOWLEDGE ....................................................... 50

24   P-27.  INDUCING BREACH OF CONTRACT AND INTENTIONAL
         INTERFERENCE—INTENT .................................................................. 52

25   P-28.  INDUCING BREACH OF CONTRACT AND INTENTIONAL

26            INTERFERENCE—CAUSATION .......................................................... 54

P-29.  INTENTIONAL INTERFERENCE AND INDUCING BREACH OF

27            CONTRACT —COMPENSATORY DAMAGES............................................. 55

28

i

P-30. FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTRODUCTION .................................................................... 59

P-31. FEDERAL COMPUTER FRAUD AND ABUSE ACT—OBTAINING INFORMATION FROM A PROTECTED COMPUTER.................... 62

P-32. FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTENTIONAL DAMAGE TO A PROTECTED COMPUTER ..................... 63

P-33. FEDERAL COMPUTER FRAUD AND ABUSE ACT—RECKLESS DAMAGE TO A PROTECTED COMPUTER ....................... 64

P-34. FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES .............. 65

P-35. CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED ................................................................. 66

P-36. CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED ................................................................. 67

P-37. CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—ASSISTING, OR AIDING AND ABETTING ....................... 68

P-38. CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—DAMAGES ..................................................................... 70

P-39. NEVADA COMPUTER CRIMES LAW ........................................ 71

P-40. NEVADA COMPUTER CRIMES LAW—CONTINUED ..................... 72

P-41. NEVADA COMPUTER CRIMES LAW—CONTINUED ..................... 73

P-42. NEVADA COMPUTER CRIMES LAW—DEFINITIONS.................... 74

P-43. NEVADA COMPUTER CRIMES LAW—DAMAGES......................... 76

P-44. TRESPASS TO CHATTELS—CAUSATION ................................... 77

P-45. BREACH OF CONTRACT ........................................................ 78

P-46. DAMAGES—PUNITIVE DAMAGES—LIABILITY ....................... 80

P-47. DAMAGES—PUNITIVE DAMAGES—AMOUNT [FOR SECOND PHASE]................................................................................ 83

P-48. VERDICT FORM—DUPLICATIVE DAMAGES ............................ 87

II.    CONCLUSION...................................................................... 89

ii

1    **I.    OBJECTIONS TO ORACLE'S PROPOSED JURY INSTRUCTIONS**

2        Pursuant to this Court's Order Regarding Trial (Dkt. 688 at 3-4), Rimini Street, Inc. and

3    Seth Ravin (unless otherwise noted, together referred to as "Rimini") hereby object to the jury

4    instructions proposed by Oracle USA, Inc. and Oracle International Corporation (unless

5    otherwise noted, together referred to as "Oracle").  Rimini will submit "[o]n the day of trial" an

6    argument in support of Rimini's proposed jury instructions filed on September 9 to which Oracle

7    objects.  *Id.* at 4.[1]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22    _____

23    [1]  Rimini also reserves its right to propose further or different instructions after Oracle's case-in-

24    chief based on the evidence that is actually introduced and admitted.  *See* Fed. R. Civ. P.
51(a)(2)(A) ("After the close of the evidence, a party may … file requests for instructions on

25    issues that could not reasonably have been anticipated by an earlier time"); *id.* advisory comm.
notes (2003) ("The risk in directing a pretrial request deadline is that trial evidence may raise

26    new issues or reshape issues the parties thought they had understood"); *cf. Harrington v.
Scribner*, 785 F.3d 1299, 1303 (9th Cir. 2015) ("After the close of evidence, the court reviewed

27    the proposed jury instructions [and] … asked whether [they] had any 'corrections, additions,
deletions, modifications or objections").

28

1

1    **P-1.  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

2          This is a civil case.  The plaintiff has the burden of proving its case by what is called the

3    preponderance of the evidence.  That means the plaintiff has to produce evidence which,

4    considered in the light of all the facts, leads you to believe that what the plaintiff claims is more

5    likely true than not.  To put it differently, if you were to put the plaintiff's and the defendant's

6    evidence on opposite sides of the scales, the plaintiff would have to make the scales tip

7    somewhat on its side.  If the plaintiff fails to meet this burden, the verdict must be for the

8    defendant.

9          Those of you who have sat on criminal cases will have heard of proof beyond a

10   reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it

11   out of your mind.

12   **RIMINI'S OBJECTION TO ORACLE'S PROPOSED INSTRUCTION P-1:**

13         Rimini agrees that it is appropriate to instruct the jury on the preponderance of the

14   evidence standard before trial begins, but objects to Oracle's proposed instruction on several

15   grounds.

16         First, Oracle offers no authority for deviating from Ninth Circuit Model Instruction 1.3,

17   which states that "[w]hen a party has the burden of proof on any claim or affirmative defense by

18   a preponderance of the evidence, it means you must be persuaded by the evidence that the claim

19   or affirmative defense is more probably true than not true."  Oracle's alternative formulation of

20   that standard misstates the law and the facts, as it fails to include affirmative defenses, even

21   though Rimini's express license defense is one of the central issues in the case.

22         Second, Oracle fails to capture the central question under the preponderance of the

23   evidence standard, which is the jury's duty when faced with evenly balanced evidence.  Under

24   *Ibarra v. Manheim Investments Inc*., 775 F.3d 1193, 1199 (9th Cir. 2015), "if the evidence

25   submitted by both sides is balanced, in equipoise, the scales tip against" the plaintiff.  Although

26   this language is not specifically included in Model Instruction 1.3, because Rimini's proposed

27   language is "supported by law and has foundation in the evidence," Rimini is "entitled to an

28   instruction about [its] theory of the case."  *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009);

1  *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) (court must instruct jury beyond model

2  instructions when requested so that "the substance of the applicable law [is] fairly and correctly

3  covered").

4  Accordingly, the Court should give Rimini's proposed instruction D-2.  Alternatively,

5  Oracle's instruction should be modified as follows (additions underlined):

6  This is a civil case.  The plaintiff has the burden of proving its <u>claims</u>, and <u>the defendant</u>

7  <u>has the burden of proving any affirmative defenses</u>, by what is called the preponderance of the

8  evidence.  That means the plaintiff has to produce evidence <u>on its claims</u>, <u>or the defendant has to</u>

9  <u>produce evidence on its affirmative defenses</u>, which, considered in the light of all the facts, leads

10  you to believe that what the plaintiff claims is more likely true than not.  To put it differently, if

11  you were to put the plaintiff's and the defendant's evidence on opposite sides of the scales, the

12  plaintiff would have to make the scales tip somewhat on its side.  <u>If the evidence submitted by</u>

13  <u>both sides is balanced, then the party with the burden of proof has not demonstrated a</u>

14  <u>preponderance of the evidence</u>.  If the plaintiff fails to meet this burden, the verdict must be for

15  the defendant.

16  Those of you who have sat on criminal cases will have heard of proof beyond a

17  reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it

18  out of your mind.

19

20

21

22

23

24

25

26

27

28

3

1    **P-2. TOMORROWNOW EVIDENCE**

2        You may hear evidence concerning TomorrowNow.  You may consider TomorrowNow

3    evidence for its bearing, if any, on the following questions:

4        1)    Whether a Defendant had the state of mind or intent necessary for Oracle to

5              prevail on a claim;

6        2)    Whether a Defendant committed the acts at issue by accident or mistake;

7        3)    Whether a Defendant made misrepresentations concerning Rimini Street's

8              business model or to lure customers from Oracle; and

9        4)    Whether Oracle lost profits because customers who chose Rimini Street would or

10             could have gone to another provider such as TomorrowNow.

11       You may not use TomorrowNow evidence to infer that, because of his or her character,

12   Seth Ravin or any individual employed by Rimini Street did the things that Oracle contends.

13   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-2:**

14       Rimini objects to this instruction on the ground that it is unnecessary and improper,

15   particularly as a preliminary instruction.  Rimini moved to exclude the TomorrowNow evidence

16   altogether because it is not relevant to the issues in dispute, and would be deeply prejudicial—

17   particularly any mention of TomorrowNow's civil liability and criminal responsibility for

18   copyright infringement in the SAP litigation.  This Court chose to reserve judgment on the

19   admissibility of the TomorrowNow evidence until it sees how Oracle intends to present the

20   evidence at trial.  Dkt. 636 at 3.

21       Rimini maintains that no mention of TomorrowNow is warranted at trial.  And given that

22   Oracle has not explained how it intends to use this evidence, and given that this Court has not

23   affirmatively ruled that any TomorrowNow evidence is admissible, it would be wholly

24   inappropriate and prejudicial, particularly in light of Rimini's ongoing objection to the

25   introduction of this evidence, to issue a preliminary instruction on this issue.  Accordingly, the

26   Court should not give any instruction on the TomorrowNow evidence at the beginning of trial,

27   and should wait until it determines the admissibility of the evidence that Oracle attempts to

28   submit.

1   **P-3.  ORACLE ENTITIES AND CLAIMS**

2       You will see references to several "Oracle" entities.  Oracle America, Inc. develops and

3   licenses certain intellectual property and software, and provides software support services.

4   Oracle America, Inc. is the successor to Oracle USA, Inc., as well as certain companies that were

5   formerly part of PeopleSoft, JD Edwards, and Siebel Systems.  Oracle International Corporation

6   is the owner or exclusive licensee of the copyrights at issue in this case.  In these instructions, I

7   refer to these entities as "Oracle."

8   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-3:**

9       Rimini objects to this instruction and the use of "Oracle" throughout the jury instructions

10  on the ground that there is more than one plaintiff in this case, and each plaintiff must present

11  sufficient evidence to meet its burden on each element of each of its claims as to each of the

12  defendants, and must prove that each plaintiff was damaged by each defendant's actions on each

13  claim.  *Cf. Heather v. Medtronic Inc.*, 2014 WL 2736093, at *1 (C.D. Cal. June 9, 2014)

14  ("separate evidence [is] needed from each plaintiff on issues of causation and reliance");

15  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (holding that although "Plaintiffs'

16  claims arise under the same general law" "each Plaintiff's claim is discrete, and involves

17  different legal issues, standards, and procedures" deserving "individualized attention").

18  Plaintiffs "are not prejudiced by having to prove defendant's liability to each plaintiff." *Grayson

19  v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994).  Thus, each plaintiff should be referred

20  to by its proper name.

21      For example, Oracle International Corporation alleges a copyright infringement claim,

22  but Oracle America, Inc. does not (indeed, Oracle America does not own copyrights).  Oracle

23  America, Inc. alleges torts that Oracle International Corporation does not.  And the various

24  entities are advancing different and in some instances inconsistent liability and damages theories.

25  The jury should understand the differences between the various Oracle plaintiffs in this case, so

26  they properly assess liability and damages as to the proper entities.  Plaintiffs would effectively

27  be relieved of their individual burdens of proof if the jury were given Oracle's proposed

28  instructions.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976 (2014) ("a

1  copyright plaintiff bears the burden of proving infringement") (citing 3 W. Patry, Copyright §

2  9.4, p. 9-18 (2013) ("As in other civil litigation, a copyright owner bears the burden of

3  establishing a prima facie case")).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-4.  COPYRIGHT—INTRODUCTION AND DEFINITIONS**

Some of the issues in this case involve copyright.  Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

    1)    reproduce the copyrighted work;

    2)    prepare derivative works based upon the copyrighted work by adapting or transforming it; and

    3)    distribute copies of either the copyrighted work or derivative work.

The owner or exclusive licensee of a copyright holds these exclusive rights.  "Owner" refers to the author of the work, or one who has been assigned the ownership of exclusive rights in the work.  In general, copyright law protects against the reproduction, adaptation, or distribution of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

Even though one may acquire a copy of the copyrighted work, the copyright owner retains certain rights and control of that copy, including uses that may result in additional copies or alterations of the work.

The term "derivative work" refers to a work based on one or more pre-existing works, where the pre-existing work is recast, transformed, or adapted.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

An "original work" or "original element" is one that has been created independently by the author (that is, the author did not copy it) using at least minimal creativity.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-4:**

Rimini agrees that it is appropriate to give a general copyright instruction as part of the preliminary instructions, but objects to Oracle's instruction on the ground that it misstates the law in several respects.

First, the instruction fails to mention that copyright owners can authorize others to copy their work—a point that the Ninth Circuit's model instructions include.  *See* Ninth Cir. Model Jury Instr. No. 17.1 (stating that the "right to copy includes the exclusive rights to … authorize

7

1   … the copyrighted work in copies"); 17 U.S.C. § 117(a) ("it is not an infringement for the owner

2   of a copy of a computer program to make or authorize the making of another copy" under certain

3   circumstances).  Whether Oracle, through its licenses, expressly authorized the making of copies

4   of certain of its copyrighted works for certain purposes is a central issue in this lawsuit about

5   which the jury must be instructed.  *See*, *e.g.*, *Gulliford v. Pierce Cnty.*, 136 F.3d 1345, 1348 (9th

6   Cir. 1998) ("Jury instructions must be formulated so that they fairly and adequately cover the

7   issues presented").

8       Second, the instruction fails to explain that copyright owners may "distribute copies of

9   the copyrighted work *to the public* by sale or other transfer of ownership or by rental or lease or

10  lending" (Ninth Circuit Model Jury Instr. No. 17.1, emphasis added; *see also* 17 U.S.C.

11  § 106(3)), which is, again, germane to the central issue of whether Rimini was in some way

12  authorized to make copies of certain Oracle software and technical documentation.

13      Third, Oracle's description of the protections afforded to copyright owners omits the fact

14  that copyright law protects against only "distribution of substantially similar copies" of the

15  owner's work, and does not create an absolute bar to all copying.  *Id*.  Permitting Oracle's

16  instruction to be given as written would create the erroneous impression that Oracle has greater

17  control over its copyrights than it in fact does.

18      Rimini submits that the remainder of Oracle's instruction is unnecessary, as the

19  originality of Oracle's copyrighted works, or whether any copies made by Rimini constitute

20  derivative works, is not at issue in the case.  But, if this Court is inclined to give instructions on

21  this issue, Rimini respectfully asks the Court to give its proposed instructions D-3, D-5, and D-6,

22  which are verbatim copies of the Ninth Circuit's model instructions.  Rimini objects to Oracle's

23  instruction on "derivative works" insofar as its description of derivative works fails to describe—

24  as the Ninth Circuit model instructions do—what is *not* a derivative work, or what the limitations

25  on copyright protection for derivative works are.  *See* Ninth Cir. Model Jury Instr. No. 17.13; 17

26  U.S.C. § 103(b) ("The copyright in a … derivative work extends only to the material contributed

27  by the author of such work, as distinguished from the preexisting material employed in the work,

28  and does not imply any exclusive right in the preexisting material.").  That omission misstates

1    the law.  To the extent Oracle seeks to inject these concepts into the case, they must be cabined

2    appropriately.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

**P-5.  LICENSE INTERPRETATION—PAROL EVIDENCE**

The license agreements between Oracle and its customers are complete contracts.  The Court will explain the meaning of those agreements to you.  You may not consider other evidence, such as evidence of industry practice, to add to or change the meaning of those agreements.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-5:**

Rimini objects to the entirety of this instruction on the grounds that it is unnecessary and could mislead the jury into improperly discounting or declining to consider Rimini's evidence regarding industry custom and practice.  Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra* Objection to P-3.  Rimini has already contended that it does not intend to proffer expert evidence to interpret the software license agreements (Dkt. 724 at 8), and this Court has already ruled there are genuine issues of material fact to which this evidence might be relevant.  *See* Dkt. 724 at 8 ("testimony about industry standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful infringement"); Dkt. 474 at 22-23 ("the court finds that there are disputed issues of material fact as to whether Rimini's use of the development environment associated with Giant Cement was for archival purposes or whether Rimini accessed the software's source code"); *id*. at 24 (finding that the Novell license permitted Rimini to make "a reasonable number of copies of the licensed Siebel software on Rimini's system for archival and back-up purposes").  As a result, no instruction on parol evidence is necessary or warranted.

1    **P-6.  SPOLIATION OF EVIDENCE**

2         Rimini Street had a location on its computer systems that some employees referred to as

3    the "software library."

4         This location contained a complete copy of at least 31 of Oracle's registered, copyrighted

5    works.  A list of the 31 works is in your juror notebook.  Rimini Street breached its duty to

6    preserve relevant evidence when it deleted certain material in the software library in January

7    2010.

8         You may, but are not required, to infer that the deleted material included evidence that

9    was favorable to Oracle's claims and unfavorable to Rimini Street's defenses in this case.

10   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-6:**

11        Rimini objects to Oracle's proposed preliminary instruction P-6 as premature.  The jury

12   will have no context to understand the spoliation issue or the impact of those issues on the jury's

13   ultimate decision.  Without such context, the instruction is unfairly prejudicial to Rimini, and this

14   instruction should be given only after the close of evidence.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **P-7.  CORPORATE PARTIES**

2       Both Oracle and Rimini Street are corporations.  Corporations are entitled to the same

3  fair and impartial treatment that you would give to an individual.  You must decide this case with

4  the same fairness that you would use if you were deciding the case between individuals.

5  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-7:**

6       Rimini objects to this instruction because it conflates the Oracle entities.  *See supra*

7  Objection to P-3.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-8.  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

2          This is a civil case.  The plaintiff has the burden of proving its case by what is called the

3    preponderance of the evidence.  That means the plaintiff has to produce evidence which,

4    considered in the light of all the facts, leads you to believe that what the plaintiff claims is more

5    likely true than not.  To put it differently, if you were to put the plaintiff's and the defendant's

6    evidence on opposite sides of the scales, the plaintiff would have to make the scales tip

7    somewhat on its side.  If the plaintiff fails to meet this burden, the verdict must be for the

8    defendant.

9          Those of you who have sat on criminal cases will have heard of proof beyond a

10   reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it

11   out of your mind.

12   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-8:**

13         Because this instruction is identical to Oracle's proposed instruction P-1, Rimini

14   incorporates its objection to that instruction by reference.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-9.  ORACLE ENTITIES AND CLAIMS**

You have seen references to several "Oracle" entities.  Oracle America, Inc. develops and licenses certain intellectual property and software, and provides software support services.  Oracle America, Inc. is the successor to Oracle USA, Inc., as well as certain companies that were formerly part of PeopleSoft, JD Edwards, and Siebel Systems.  Oracle International Corporation is the owner or exclusive licensee of the copyrights at issue in this case.  In these instructions, I refer to these entities as "Oracle" or "plaintiff(s)."

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-9:**

Because this instruction is identical to Oracle's Proposed Instruction P-3, Rimini incorporates its objection to that instruction by reference.

1 **P-10.  TOMORROWNOW EVIDENCE**

2       You may hear evidence concerning TomorrowNow.  You may consider TomorrowNow

3 evidence for its bearing, if any, on the following questions:

4       1)  Whether a Defendant had the state of mind or intent necessary for Oracle to prevail

5          on a claim;

6       2)     Whether a Defendant committed the acts at issue by accident or mistake;

7       3)     Whether a Defendant made misrepresentations concerning Rimini Street's

8          business model or to lure customers from Oracle; and

9       4)     Whether Oracle lost profits because customers who chose Rimini Street would or

10          could have gone to another provider such as TomorrowNow.

11       You may not use TomorrowNow evidence to infer that, because of his or her character,

12 Seth Ravin or any individual employed by Rimini Street did the things that Oracle contends.

13 **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-10:**

14       Rimini objects to the entirety of this instruction as unnecessary and improper.

15       As explained in its motion *in limine* (Dkt. 559) and its trial brief (Dkt. 746), the

16 TomorrowNow evidence has no place in this trial, as it is irrelevant, prejudicial, and likely to

17 confuse or mislead the jury about which entities are on trial and what conduct is at issue.

18 Moreover, the specific propositions about which Oracle seeks to instruct the jury improperly

19 cross the line from willfulness evidence into character or prior bad acts evidence, even though

20 Oracle previously agreed that it would not use the TomorrowNow evidence for this purpose

21 (Dkt. 605 at 15 ("Oracle has no intention" of using "the Tomorrow Now evidence as evidence of

22 Rimini or Mr. Ravin's 'prior bad acts'")), and even though the evidence of one party's "prior bad

23 acts" cannot be used to suggest that another, unrelated party acted in conformity with those acts

24 (Dkt. 559 at 13).  Because the TomorrowNow evidence has no place in this trial, it should be

25 excluded and no instruction should be given.

26       In the event this Court does decide to admit any evidence relating to or involving

27 TomorrowNow, the Court should give Rimini's proposed instruction D-14 as an admonition in

28

1   an effort to reduce the prejudicial nature of this evidence and to guard against its use for an

2   improper purpose.[2]  It should do this for several reasons:

3         First, the Court did not rule that the TomorrowNow evidence was relevant to Rimini or

4   Seth Ravin's state of mind nor did it rule on whether Rimini or Ravin committed the alleged acts

5   of infringement "by accident or mistake."   This Court's ruling merely stated that the

6   TomorrowNow evidence "is relevant to whether Rimini's statements about its business model

7   were false," to whether TomorrowNow "can constitute a valid alternative for Oracle's damages

8   computation," and to "whether Oracle would have regained those customers lost to Rimini if

9   Rimini had not engaged in copyright infringement."   Dkt. 636 at 4.   The Court further

10   acknowledged that "certain pieces or aspects of this evidence may not be relevant or may be at

11   the time too confusing for the jury or unduly prejudicial as Rimini contends."  *Id*. at 3.  This

12   Court should not adopt an instruction giving the jury blanket permission to consider the

13   TomorrowNow evidence for categories that it did not hold were relevant, or that, even if

14   relevant, may be too prejudicial to be admissible.  *See Kramas v. Security Gas & Oil Inc.*, 672

15   F.2d 766, 772 (9th Cir. 1982) (affirming exclusion of consent decree entered against defendants

16   in unrelated proceeding where, among other things, its probative value "was limited," as it

17   "related to different transactions and alleged misrepresentations…." and its "prejudicial impact

18   … was obviously substantial"); *Mariscal v. McIntosh*, 2006 WL 6627090, at *10 (C.D. Cal. Dec.

19   19, 2006) (granting motion to exclude nolo contendere plea for resisting arrest in a civil action

20   because it would allow the jury to draw "unacceptable and erroneous negative inferences from

21   the plea").

22         Oracle's supposed concession that the jury "may not use TomorrowNow evidence to

23   infer that, because of his or her character, Seth Ravin or any individual employed by Rimini

24   Street did the things that Oracle contends," does not address the crux of the prejudice posed by

---

26  
27  [2]     To be clear, Rimini's position is that the introduction of any TomorrowNow evidence will cause incurable prejudice.  Rimini proposes an admonition only to the extent the Court overrules its objections, but even then maintains that an admonition will be insufficient to cure the prejudice.

1    the TomorrowNow evidence, which is that the jury may improperly infer that because Seth

2    Ravin was at one time associated with TomorrowNow, and TomorrowNow stipulated and

3    ultimately pleaded guilty to infringing Oracle's copyrights in the SAP litigation, Rimini

4    infringed, or was more likely to infringe, Oracle's copyrights in this unrelated case.   Oracle

5    essentially wants the jury to punish Rimini and Ravin for TomorrowNow's conduct.   It is plainly

6    improper to use evidence relating to "a different cause of action, different parties and a different

7    burden of proof" to try to establish willfulness, lost profits, or false statements here.   *See Barnett*

8    *v. Gamboa*, 2013 WL 178132, at \*7 (E.D. Cal. Jan. 16, 2013); *United States v. Nguyen*, 465 F.3d

9    1128, 1133 (9th Cir. 2006) (prior convictions not admissible to prove defendant committed crime

10   in a later case).   Rimini's instruction D-14 more effectively protects against that inference, and

11   should therefore be given in place of Oracle's instructions if the TomorrowNow evidence is

12   admitted at trial.   *See supra* n.2.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-11.  COPYRIGHT—INTRODUCTION AND DEFINITIONS**

Some of the issues in this case involve copyright.  Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

      1)     reproduce the copyrighted work;

      2)     prepare derivative works based upon the copyrighted work by adapting or transforming it; and

      3)     distribute copies of either the copyrighted work or derivative work.

The owner or exclusive licensee of a copyright holds these exclusive rights.  "Owner" refers to the author of the work, or one who has been assigned the ownership of exclusive rights in the work.  In general, copyright law protects against the reproduction, adaptation, or distribution of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

Even though one may acquire a copy of the copyrighted work, the copyright owner retains certain rights and control of that copy, including uses that may result in additional copies or alterations of the work.

The term "derivative work" refers to a work based on one or more pre-existing works, where the pre-existing work is recast, transformed, or adapted.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

An "original work" or "original element" is one that has been created independently by the author (that is, the author did not copy it) using at least minimal creativity.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-11:**

Because this instruction is identical to Oracle's proposed instruction P-4, Rimini incorporates its objection to that instruction by reference.

1    **P-12.  COPYRIGHT INFRINGEMENT**

2    Oracle contends that Rimini Street is liable for direct copyright infringement of Oracle's

3    PeopleSoft, J.D. Edwards, Siebel software and support material and Oracle Database software,

4    and that Ravin is liable for contributory and vicarious copyright infringement.  Rimini Street

5    denies infringing Oracle's copyrights and asserts an affirmative license defense as to some, but

6    not all, of the conduct at issue, which I will explain in more detail.

7    **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-12:**

8    Rimini objects to Oracle's infringement instruction on several grounds.

9    First, its statement that "Rimini Street is liable for direct copyright infringement of

10   Oracle's PeopleSoft, J.D. Edwards, Siebel software and support material" is an inaccurate

11   statement of the facts because it fails to capture that Rimini stipulated to liability as to the

12   PeopleSoft software and only the issue of the documentation remains to be litigated as to that

13   product line.  Dkt. 550.  Oracle is not entitled to instructions on claims that are not at issue (*see*

14   Dkt. 617 at 4 (citing *United States v. Rodrigues*, 159 F.3d 439, 446 (9th Cir. 1998) (not error not

15   to give an instruction on an issue that was not disputed)), and as currently written, the jury might

16   be confused as to whether the PeopleSoft software copyrights are still at issue.

17   Second, the statement that "Rimini Street denies infringing Oracle's copyrights and

18   asserts an affirmative license defense as to some, but not all, of the conduct at issue, which I will

19   explain in more detail" is confusing insofar as it purports to tell the jury that the Court will

20   explain more about Rimini's affirmative license defense, when in reality, the Court's role is to

21   explain certain legal terms to the jury, not to explain the facts or to give a view on the merits of

22   the defenses.  *See*, *e.g.*, *United States v. Little*, 753 F.2d 1420, 1433 n.3 (9th Cir. 1984) (court

23   should not approve instructions that represent "inappropriate attempts to influence the jury" or to

24   conclusively establish "matters within the province of the jury").  Rimini also objects to the

25   extent this instruction conflates the Oracle entities.  *See supra* Objection to P-3.

26   Rimini's proposed instruction D-7 tracks the Ninth Circuit Model Jury Instruction 17

27   (preliminary instruction) almost verbatim, with the limited exception of adding the party names,

28   does not improperly suggest that works are being infringed that are no longer at issue, and

1    clearly sets forth what the Court will explain in subsequent instructions.  Because Oracle has

2    offered no authority to justify its deviation from the Model Instructions, and because Rimini's

3    instruction both follows the Model Instruction and more accurately reflects the facts of the case,

4    Rimini's proposed instruction D-7 should be given instead of Oracle's instruction.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-13.  COPYRIGHT—DIRECT INFRINGEMENT**

2         To prevail on its direct infringement claim in the circumstances of this case, Oracle must

3    prove the following by a preponderance of the evidence:

4         1)      Oracle is the owner or exclusive licensee of a valid copyright in an original

5                 work; and

6         2)      Rimini Street copied original elements from, created derivative works from, or

7                 distributed the original work.

8         The parties have agreed that Oracle owns or is the exclusive licensee of the copyrights at

9    issue in this case, which means that Oracle has proven the first element.  If you find that Oracle

10   proved the second element, you should find for Oracle and against Rimini Street on the copyright

11   infringement claim.  If, on the other hand, Oracle has failed to prove the second element, you

12   should find for Rimini Street and against Oracle on the copyright infringement claim.

13   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-13:**

14        Rimini objects to Oracle's instruction on several grounds.

15        First, according to this Court's February 2014 summary judgment order, it is no longer

16   disputed that Rimini may assert its clients' licenses as a defense to infringement, and so the

17   entire question for the jury as to the copyright issues is whether Rimini exceeded the scope of

18   those licenses or not.  *See* Dkt. 474 at 22, 24.  Referring to generic copying in the abstract thus

19   has nothing to do with the case and will only mislead the jury.  Instructions regarding

20   infringement must mention and relate to the licenses at issue (*see, e.g.*, *United States v. Little*,

21   753 F.2d 1420, 1433 (9th Cir. 1984) (finding no error in district court's instruction where it

22   "accommodated [the defendants'] defense theory"), which this instruction does not.  Rimini also

23   objects to the extent this instruction conflates the Oracle entities.  *See supra* Objection to P-3.

24        Second, Rimini objects to Oracle's statement of the elements of infringement, because it

25   misleadingly states what is required to prevail on a claim for direct infringement in this particular

26   case.  In addition to showing that Oracle International Corporation owned the copyrights at issue

27   (to which the parties have stipulated), and showing that Rimini copied original elements from,

28   created derivative works from, or distributed the copyrighted work, here, Oracle must also

21

1    overcome Rimini's affirmative defense and show that any license provisions Rimini identifies—

2    and several have already been identified with respect to the J.D. Edwards and Siebel licenses—

3    did not authorize any copying Rimini did.  *See* Dkt. 474 at 21; *see also Baisden v. I'm Ready*

4    *Prods., Inc.*, 693 F.3d 491, 507 (5th Cir. 2012) (court "correctly instructed" the jury that if

5    defendants "*prove the existence of a license by a preponderance of the evidence …* [plaintiff]

6    must prove by a preponderance of the evidence that [d]efendant's copying was not authorized by

7    the license").  *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004) does not stand for the

8    proposition that a claim for copyright infringement may be limited to just the first two elements,

9    as no affirmative defenses were at issue in that case.

10       Third, Rimini objects to the extent Oracle's instruction fails to explain to the jury that

11    infringement must be proven as to each and every copyrighted work for which it seeks damages,

12    and cannot be proven en masse or extrapolated based upon individual testimony or evidence.

13    *See*, *e.g.*, *Hard Drive Prods., Inc. v. Does 1-90*, 2012 WL 1094653, at *5 (N.D. Cal. Mar. 30,

14    2012) ("To prevail on a claim of copyright infringement, plaintiff must prove (1) that it owns a

15    valid copyright, and (2) that each defendant copied *a work* covered by the copyright") (emphasis

16    added); *DFSB Kollective Co. Ltd. v. Bing Yang*, 2013 WL 1294641, at *14 (N.D. Cal. Mar. 28,

17    2013) ("The Copyright Act authorizes statutory damages for infringement of *each work*.")

18    (emphasis added).

19       Rimini's proposed instruction D-8, which both includes and explains how the aspect of

20    permission fits into a direct infringement claim, and which properly states Oracle's burden of

21    proof with respect to infringement—i.e., that it must prove the three infringement elements "for

22    each and every copyrighted work on which it seeks damages"—more accurately reflects the

23    central issue in the case, and aligns with the Copyright Act's focus on individual works.  *See*,

24    *e.g.*, *Video Aided Instruction, Inc. v. Y&S Express, Inc.*, 1996 WL 711513, at *4 (E.D.N.Y. Oct.

25    29, 1996) ("A court must calculate statutory damages under the Copyright Act according to the

26    number of works infringed, and not the number of infringements").  Accordingly, it should be

27    given instead of Oracle's instruction.

28

1    **P-14.  COPYRIGHT—ACCESS AND SUBSTANTIAL SIMILARITY**

2        Oracle need not offer direct evidence of copying.  Oracle may prove copying by showing

3    each of the following:

4        1)      Rimini Street had access to Oracle's work

5        2)      Rimini Street had reasonable opportunity to copy Oracle's work; and

6        3)      Oracle's work and Rimini Street's work are substantially similar such that

7                copying is more likely than not.

8    **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-14:**

9        Rimini objects to this instruction on several grounds.

10       First, Rimini objects insofar as the instruction purports to alter Oracle's burden of proof

11   with respect to infringement.  It is Oracle's burden to prove that infringement occurred (*see*

12   *Overman v. Loesser*, 205 F.2d 521, 523 (9th Cir. 1953) (explaining that "[i]n a suit for copyright

13   infringement, the plaintiff must prove that his copyrighted composition has been copied by the

14   defendant" but may "create an inference of copying by establishing access to the allegedly

15   infringed work by the defendant")), but Oracle's suggestion that it "need not offer direct

16   evidence" of copying improperly shifts the burden of proof to Rimini.

17       Second, Oracle's formulation is vague and will mislead the jury, insofar as it is not clear,

18   either from Oracle's preceding instructions or in this instruction itself, what "direct evidence" of

19   copying is.  Oracle has offered no authority to justify its deviation from Model Instruction 17.15.

20   The only authority Oracle does cite, *Swirsky v. Carey*, 376 F.3d 841, 844-845 (9th Cir. 2004),

21   does not state that a plaintiff "need not" prove copying with direct evidence; instead, it states that

22   "the element of copying is rarely the subject of direct evidence," and proceeds to identify the

23   tradeoff between access and substantial similarity, namely, where there is a high degree of one,

24   courts may permit a lower degree of the other.

25       Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

26   Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

27       Rimini's instruction, by contrast, is a nearly verbatim version of Model Instruction 17.15

28   (with the addition of the party names), does not improperly suggest that no "direct evidence" of

23

1    copying is required, and simply explains that Oracle may show that Rimini "copied from the

2    work by showing by a preponderance of the evidence that [Rimini Street] had access to [Oracle

3    International Corporation's] copyrighted work and that there are substantial similarities between

4    [Rimini Street's] work and original elements of [Oracle International Corporation's] work."

5    Because Rimini's instruction properly states the law, this Court should adopt its proposed

6    instruction D-9 instead of Oracle's instruction.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-15.  LICENSE INTERPRETATION—PAROL EVIDENCE**

2        The license agreements between Oracle and its customers are complete contracts.  The

3    Court has explained the meaning of those agreements to you.  You may not consider other

4    evidence, such as evidence of industry practice, to add to or change the meaning of those

5    agreements.

6    **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-15:**

7        Because this instruction is identical to Oracle's proposed instruction P-5, Rimini

8    incorporates its objection to that instruction by reference.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-16. COPYRIGHT—CONTRIBUTORY INFRINGEMENT**

2    A defendant may be liable for copyright infringement engaged in by another.  Oracle

3    contends that Seth Ravin is liable for Rimini Street's copyright infringement under the doctrine

4    of "contributory infringement."  Therefore, you must also consider whether Seth Ravin is liable

5    for contributory infringement.

6    To prevail on contributory infringement against Seth Ravin, Oracle must prove both of

7    the following elements by a preponderance of the evidence:

8        1)    Seth Ravin knew or had reason to know of Rimini Street's infringing activity; and

9        2)    Seth Ravin intentionally induced or materially contributed to that infringing

10           activity.

11   If you find that Oracle proved both of these elements, you should find for Oracle and

12   against Seth Ravin on the copyright infringement claim as to contributory infringement.  If, on

13   the other hand, Oracle has failed to prove either of these elements, you should find for Seth

14   Ravin and against Oracle on the copyright infringement claim as to contributory infringement.

15   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-16:**

16   Rimini objects to Oracle's instruction on several grounds.

17   This proposed instruction deviates from Model Instruction 17.21 without any basis and

18   without citing any authority for doing so.  Specifically, Oracle's instruction fails to instruct the

19   jury, as required by Ninth Circuit Model Jury Instruction 17.21, that Oracle may recover for

20   contributory infringement only "[i]f [the jury] find[s] that [Rimini] infringed [Oracle

21   International Corporation's] copyright."  One can be liable for contributory infringement only if

22   there exists "infringing conduct *of another*" (*Elliot v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.

23   2004); *see also Limelight Networks v. Akamai Techs., Inc*., 134 S. Ct. 2111, 2118 (2014)

24   (holding that defendant could not be liable for "inducing [patent] infringement that never came to

25   pass")), and therefore, the "if" clause must be included in the instruction in order for it to be

26   accurate and not misleading to the jury.

27   Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

28   Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

1    Because Rimini's instruction includes this element but Oracle's does not, this Court

2  should adopt its proposed instruction D-10, which tracks Ninth Circuit Model Jury Instruction

3  17.21 nearly verbatim, instead of Oracle's proposed instruction.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

**P-17.  COPYRIGHT—VICARIOUS INFRINGEMENT**

In addition to contributory liability, a defendant may also be liable for copyright infringement committed by another defendant based on "vicarious liability."

To prevail on vicarious infringement against Seth Ravin, Oracle must prove each of the following elements by a preponderance of the evidence:

    1)    Seth Ravin profited directly from Rimini Street's infringing activity;

    2)    Seth Ravin had the right and ability to supervise or control Rimini Street's infringing activity;  and

    3)    Seth Ravin failed to exercise that right and ability.

If you find that Oracle proved each of these elements, you should find for Oracle and against Seth Ravin on the copyright infringement claim as to vicarious infringement.  If, on the other hand, Oracle has failed to prove any of these elements, you should find for Seth Ravin and against Oracle on the copyright infringement claim as to vicarious infringement.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-17:**

Rimini objects to Oracle's instruction on several grounds.

This proposed instruction deviates from Model Instruction 17.20 without citing any authority for doing so.  Specifically, Oracle's instruction fails to instruct the jury, as required by Ninth Circuit Model Jury Instruction 17.20, that Oracle may recover for vicarious infringement only "[i]f [the jury] find[s] that [Rimini] infringed [Oracle International Corporation's] copyright."  One can be liable for vicarious infringement only where he "enjoys a direct financial benefit from another's infringing activity" (*Elliot v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)) and as such, the "if" clause must be included in the instruction in order for it to be accurate and not misleading to the jury.

Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra* Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

Because Rimini's instruction includes this element but Oracle's does not, this Court should adopt its proposed instruction D-11, which tracks Ninth Circuit Model Jury Instruction 17.20 nearly verbatim, instead of Oracle's proposed instruction.

1    **P-18.  COPYRIGHT DAMAGES—CAUSATION**

2    For Oracle to recover actual copyright damages, it must prove that the infringement

3    caused its damages.  Infringement caused damages if it the infringement was a "substantial

4    factor" in causing the damages.

5    A substantial factor is a factor that a reasonable person would consider to have

6    contributed.  It must be more than a remote or trivial factor.  It does not have to be the only cause

7    of harm.

8    Conduct is not a substantial factor in causing harm if the same harm would have occurred

9    without that conduct.

10   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-18:**

11   Oracle's proposed instruction P-18 sets forth a flawed uniform causation standard for all

12   measures of "actual damages."  Rimini objects to this misstatement of the law.

13   Actual damages are measured either by (i) lost profits, or (ii) the fair market value of use.

14   *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708–09 (9th Cir. 2004) ("Actual damages

15   are usually determined by the loss in the fair market value of the copyright, measured by the

16   profits lost due to the infringement or by the value of the use of the copyrighted work to the

17   infringer").

18   The causation standard for lost profits is provided by the Copyright Act.  17 U.S.C. §

19   504(b) ("as a result of the infringement").  Oracle does not cite the statute or use the language

20   contained therein.  Further, the statute has been consistently interpreted as a "but for" standard of

21   causation, as Oracle acknowledges in instruction P-20 below (defective for other reasons).

22   Oracle's P-18 and P-20 are therefore in direct conflict.  The Court should adopt Rimini's

23   proposed instruction D-20, which provides the correct lost profits causation standard.

24   As for the other measure of actual damages—the fair market value of use—Oracle's

25   instruction makes no sense.  The inquiry under that standard is what the result of the negotiation

26   would have been or and what the cost to not infringe was.  *See* Dkt. 724 at 4–6.  Oracle does not

27   cite a single case holding otherwise.

28   The only case Oracle cites, *Mackie v. Rieser*, 296 F.3d 909, 914-916 (9th Cir. 2002),

29

1  analyzes the causation standard for ***infringer's profits, not actual damages***.  And the causation

2  standard for infringer's profits is correctly set forth in Rimini's proposed instruction D-22, which

3  cites the most recent and applicable authority on the issue, including *Oracle Corp. v. SAP AG*,

4  765 F.2d 1081, 1095 (9th Cir. 2014).  *Mackie*, Oracle's only authority cited in support of P-18, is

5  therefore inapplicable.

6       Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

7  Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **P-19.  COPYRIGHT—DAMAGES—ACTUAL DAMAGES INTRODUCTION**

2  You must determine Oracle's damages due to copyright infringement.  Oracle is entitled

3  to recover the actual damages suffered as a result of the infringement.  The term "actual

4  damages" means the amount of money adequate to compensate the copyright owner for the

5  reduction of the market value of the copyrighted work caused by the infringement.  Damages

6  must be proven by a preponderance of the evidence.

7  Methods for determining actual damages due to copyright infringement include:

8  •  Profits that Oracle proves it would have made without the infringement.  This is

9  the "lost-profits" method.

10  •  What a willing buyer would have been reasonably required to pay to a willing

11  seller at the time of infringement for the use made of Oracle's work.  This is the

12  "fair-market-value" method.

13  Oracle must prove actual damages by a preponderance of the evidence.  You should

14  determine actual damages separately for each Defendant that you find liable for copyright

15  infringement

16  I will now explain these methods to you.

17  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-19:**

18  Rimini objects to Oracle's instruction P-19 as legally erroneous and incomplete.  Oracle

19  acknowledges that the Ninth Circuit model jury instructions on actual damages do not address

20  the situation presented here—where multiple measures of actual damages are presented to the

21  jury.  Under these circumstances, there is a heightened risk that Rimini will be held liable for a

22  double damages award.  *See* Ninth Circuit Model Jury Instruction 17.23 cmt. (referring to "the

23  danger of double recovery if both measures [of actual damages] are presented to the jury").

24  Oracle compounds this danger by proposing this legally erroneous instruction.  Oracle's

25  proposed instructions improperly tell the jury *which* measure of damages they must award.  This

26  is error, as evidenced in *Oracle v. SAP*, where the court instructed the jury that they were to

27  "decide the best measure of Oracle's actual damages," and the jury selected the "fair market

28  value," rather than lost profits.  *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, ECF No. 1005

1    at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010); *see also Oracle USA, Inc. v. SAP AG*, 2011

2    WL 3862074, at *11 (N.D. Cal. Sept. 1, 2011) ("it decided that a fair market value license

3    measured Oracle's damages better than lost profits"); *see also Oracle USA, Inc. v. SAP AG*, No.

4    C 07-1658 PJH, ECF No. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010) ("If you

5    award Oracle actual damages based on fair market value of a license for the rights infringed, that

6    award takes into account Defendants' profits attributable to their infringement and Oracle is not

7    entitled to any additional award").  Oracle's proposed instruction omits this information, creating

8    the risk of double recovery specifically cautioned against in the Ninth Circuit model jury

9    instructions.

10    Further, Oracle cites no authority for its use of confusing and erroneous phrases in the

11    instruction, such as its statement regarding causation that Oracle is entitled to damages "*due to*"

12    copyright infringement.  This is one of several conflicting versions of the causation standard

13    applicable in Oracle's actual damages instructions.  *See* P-18, P-19, P-20.  In contrast, Rimini's

14    instructions set forth the correct and appropriate causation standard.

15    The Seventh Circuit model jury instruction cited by Oracle actually supports Rimini's

16    instruction, not Oracle's, because in describing lost profits, it explains that the plaintiff must

17    prove each sale it lost.  *See* Seventh Circuit Pattern Civil Jury Instructions, No. 12.8.2 (2007)

18    (stating plaintiff may only recover for "sales he would have made without the infringement");

19    *see also* Seventh Circuit Pattern Civil Jury Instructions, No. 12.8.2 (2007), committee comment

20    ("To recover lost profits, the copyright owner must prove the quantity of sales he would have

21    made absent the infringement, as well as the profits *he would have earned on those sales*")

22    (emphasis added).  Oracle has consistently tried to remove the individual proof element out of

23    the lost profits analysis because, as its expert *admitted in her report*, it cannot meet that burden.

24    Oracle's description of the "fair-market-value" method of calculating actual damages is

25    too narrow, and attempts to restrict it to a hypothetical license even though, as the Seventh

26    Circuit model jury instructions cited by Oracle recognize, "fair-market-value" of use can be

27    proven in other ways—such as by demonstrating a non-infringing alternative, the reduction in

28    the value of the license, or the costs avoided.

1    Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

2  Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1 **P-20. COPYRIGHT—ACTUAL DAMAGES—LOST PROFITS**

2      For the PeopleSoft, J.D. Edwards, and Siebel software and support materials, you heard

3 evidence concerning the "lost-profits" method for actual damages. Actual damages for "lost

4 profits" means the amount of money adequate to compensate Oracle for the profits it would have

5 made but for any infringement you found. You must apply the lost profits method, and not the

6 fair-market-value method, to determine the appropriate damages for infringement of PeopleSoft,

7 J.D. Edwards, and Siebel software and support materials.

8 **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-20:**

9      This instruction is erroneous because it *requires* the jury to use lost profits to calculate

10 actual damages, rather than letting the jury determine the best method of measuring actual

11 damages. The two cases Oracle cites do not support this instruction.

12      As noted above, in *Oracle v. SAP*, the court instructed the jury that they were to "decide

13 the best measure of Oracle's actual damages," and the jury selected the "fair market value,"

14 rather than lost profits. *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, ECF No. 1005 at Jury

15 Instruction No. 9 (N.D. Cal. Nov. 23, 2010); *see also Oracle USA, Inc. v. SAP AG*, 2011 WL

16 3862074, at *11 (N.D. Cal. Sept. 1, 2011) ("it decided that a fair market value license measured

17 Oracle's damages better than lost profits"); *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH,

18 ECF No. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010) ("If you award Oracle actual

19 damages based on fair market value of a license for the rights infringed, that award takes into

20 account Defendants' profits attributable to their infringement and Oracle is not entitled to any

21 additional award"). Oracle's proposed instruction omits this information, creating the risk of

22 double recovery the Ninth Circuit model jury instructions warn about.

23      Likewise, in *Polar Bear Products, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the

24 jury was not instructed on what method of calculating damages it must apply; in fact, "the jury

25 did not specify the components of the actual damages award" of $315,000, which the court

26 ultimately reversed because it was speculative. *Id.* at 705 n.3. Oracle fails to cite this portion of

27 the decision.

28      Oracle also fails to cite any authority where the jury was instructed on what measure of

1    actual damages it was required to apply to different copyrighted works.  The Ninth Circuit model

2    jury instructions and the Seventh Circuit model jury instructions do not take this approach.

3    Rather, courts take the approach set forth in Rimini's instructions—juries are instructed on the

4    appropriate ways to calculate damages and told to select the better method.

5         It is remarkable that Oracle would have the Court instruct the jury that they *must* decide

6    Oracle's actual damages using lost profits, when Oracle's own expert agreed that fair market

7    value of use is the better method.  *See* Dkt. 739 at 10.

8         Moreover, Oracle's copyright damages instructions generally neglect to explain the role

9    of statutory damages.  If Oracle does not prove actual damages, the jury is required to award

10   statutory damages; yet, this erroneous instruction states without exception that the jury "must

11   apply the lost profits method" "to determine the appropriate damages for infringement."  *See*

12   *also* Ninth Circuit Manual of Model Jury Instruction 17.22 cmt. ("When injury is shown, but

13   neither profits nor damages can be proved, statutory damages are mandatory"); *id.* at Instruction

14   17.25 cmt. ("When an injury can be shown, but neither profits nor damages can be proven,

15   statutory damages are mandatory"); *Russel v. Price*, 612 F.2d 1123, 1129–1130 (9th Cir. 1979)

16   ("when injury is proved but neither the infringer's profits nor the copyright holder's actual

17   damages can be proved, statutory damages are mandatory").

18        Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

19   Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1  **P-21.  COPYRIGHT—ACTUAL DAMAGES—FAIR MARKET VALUE**

2      For the Oracle Database software, you heard evidence concerning both the "fair-market-

3  value" method and the "lost-profits" method for actual damages.  Actual damages for "fair-

4  market-value" means the amount of money adequate to compensate Oracle for the reduction of

5  the fair market value of the copyrighted work caused by any infringement you found.  You may

6  apply either the fair-market-value method or the lost-profits method, but not both, to determine

7  the appropriate damages for infringement of Oracle Database software.

8      The reduction of the fair market value of the copyrighted work is the amount a willing

9  buyer would have been reasonably required to pay a willing seller at the time of the infringement

10  for the actual use made by Defendants of Oracle's registered copyrighted works.  You must

11  determine what would have been the result of this negotiation in order to establish the fair market

12  value, calculated at the time the infringement commenced.  The value of a hypothetical license is

13  not necessarily the amount the Defendants in this case would have agreed to pay.

14  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-21:**

15      Rimini objects to this legally erroneous and misleading proposed instruction.  Oracle

16  acknowledges that patent law is instructive in determining the fair market value of use of a

17  copyright, citing *Grain Processing Corp. v. American Maize-Products*, 185 F.3d 1341 (Fed. Cir.

18  1999).  Oracle neglects to include, however, the relevance of non-infringing alternatives in

19  determining the fair market value of Oracle's copyrights.  This Court recently rejected Oracle's

20  similar arguments on this issue, concluding that "the value of a hypothetical license to Rimini is

21  the amount that it would have cost Rimini to implement a non-infringing alternative."  Dkt. 724

22  at 4–6; *see also* Dkt. 739 at 12; Dkt. 690 at 3-11.  Rimini's proposed instructions D-17 and D-18,

23  by contrast, include the correct statement of law.

24      Oracle's proposed instruction also ignores that, in determining the value of a hypothetical

25  license, *it is not the seller's price that controls*.  In *Oracle v. SAP*, the court instructed the jury

26  that "[t]he value of the hypothetical license is not necessarily the amount the Defendants in this

27  case would have agreed to pay, *or that Oracle would have actually agreed to accept*." *See*

28  *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, ECF No. 1005 at Jury Instruction No. 9.

36

1    Here, Oracle quoted that sentence verbatim but conveniently deleted the emphasized language.

2    *See also Oracle Corp. v. SAP AG*, 765 F.2d 1081, 1089 (9th Cir. 2014) ("the buyer will not

3    ordinarily pay more for a license than its anticipated benefit").   Further, Oracle's instruction

4    suggests that the defendant's willingness to pay is irrelevant, when it is an important component

5    of the hypothetical negotiation.  *See* Dkt. 739 at 12; Dkt. 690 at 3-11

6            Moreover, as discussed above, Oracle's proposed instruction again neglects to explain the

7    role of statutory damages.  If Oracle does not prove actual damages, the jury is required to award

8    statutory damages; yet, this erroneous instruction states without exception that the jury use

9    "either the fair-market-value method or the lost-profits method," but provides no explanation

10   regarding the role of statutory damages.  Ninth Circuit Manual of Model Jury Instruction 17.22

11   cmt. ("When injury is shown, but neither profits nor damages can be proved, statutory damages

12   are mandatory"); *id.* at Instruction 17.25 cmt. ("When an injury can be shown, but neither profits

13   nor damages can be proven, statutory damages are mandatory"); *Russel v. Price*, 612 F.2d 1123,

14   1129–1130 (9th Cir. 1979) ("when injury is proved but neither the infringer's profits nor the

15   copyright holder's actual damages can be proved, statutory damages are mandatory").

16           Oracle is of course free to elect actual damages, so that statutory damages are not at issue

17   in this case.  But Oracle has thus far refused to do so, most likely because it wishes to present

18   prejudicial evidence of willful infringement to the jury.  Oracle cannot have it both ways.  The

19   Court should either (i) bar Oracle from introducing evidence of willful infringement, or (ii)

20   include language in the jury instructions explaining the relationship between statutory damages

21   and actual damages, including that the jury *must* award statutory damages if Oracle fails to prove

22   liability, causation, or damages with objective, non-speculative evidence.  *Oracle v. SAP*, 765

23   F.3d at 1093 ("excessively speculative claims of damages are to be rejected").

24           Oracle also fails to cite any authority where the jury was instructed on what measure of

25   actual damages it was required to apply to different copyrighted works.  The Ninth Circuit model

26   jury instructions and the Seventh Circuit model jury instructions do not take this approach.

27   Rather, courts take the approach set forth in Rimini's instructions—juries are instructed on the

28   appropriate ways to calculate damages and told to select the better method.

37

1    Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

2    Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

**1**    **P-22.  COPYRIGHT—DAMAGES—INFRINGER'S PROFITS**

**2**    In addition to actual damages**,** the copyright owner is entitled to any profits of the

**3**    defendant attributable to the infringement.  You may not include in an award of profits any

**4**    amount that you took into account in determining actual damages.

**5**    You may make an award of Defendants' profits only if you find that Oracle showed a

**6**    causal relationship between the infringement and the profits generated directly or indirectly from

**7**    Defendants' infringement.

**8**    The Defendant's profit is determined by subtracting all expenses from the Defendant's

**9**    gross revenue.  The Defendant's gross revenue is all of the defendant's receipts from the use or

**10**   sale of a product containing or using the copyrighted work associated with the infringement.

**11**   Oracle has the burden of proving the defendant's gross revenue by a preponderance of the

**12**   evidence.

**13**   Expenses are all operating costs and overhead costs incurred in producing the

**14**   Defendant's gross revenue.  The Defendant has the burden of proving expenses by a

**15**   preponderance of the evidence.

**16**   If you find that a Defendant's infringement was not willful, then Defendant's profits are

**17**   determined by subtracting expenses that Defendants incurred to generate Defendant's gross

**18**   revenue due to the infringement.

**19**   If you find that the infringement was willful, then you may not deduct the Defendant's

**20**   overhead costs, and the profits are equal to the gross revenue due to infringement minus any

**21**   operating costs incurred to generate Defendant's gross revenue due to the infringement.

**22**   I will explain separately what constitutes willful infringement.

**23**   Unless you find that a portion of the profit from the use of the copyrighted works is

**24**   attributable to factors other than use of the copyrighted works, all of the profit is to be attributed

**25**   to the infringement.  Defendants have the burden of proving the portion of the profit, if any,

**26**   attributable to factors other than infringing the copyrighted works.

**27**   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-22:**

**28**   Rimini objects to this legally erroneous and misleading instruction.

1    First, Oracle is incorrect in arguing that Rimini may not deduct expenses from the

2    infringer's profits award if it concludes that Rimini's infringement was willful.  The section of

3    the statute on infringer's profits says *nothing* about willful infringement.  17 U.S.C. § 504(b).

4    Rather, the statute clearly states that the infringer may present evidence of deductible expenses.

5    *Id.*  Nor is there any case law to support Oracle's instruction.  Indeed, the Ninth Circuit has not

6    "adopted such a rule."  *ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1169 (W.D. Wash. 1999)

7    ("neither the language of the statute, its legislative intent, nor the relevant case law requires or

8    justifies prohibiting defendant from putting on evidence regarding its overhead costs").  The only

9    Ninth Circuit authority cited by Oracle is *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772

10   F.2d 505, 515 (9th Cir. 1985).  But the Ninth Circuit recently addressed this same tactic—*by*

11   *Oracle*—concluding that the language on which Oracle relies is dicta. 765 F.3d at 1096 ("Oracle

12   relies heavily on dicta in *Frank Music Corp.*").  The district court in *Oracle v. SAP* also correctly

13   rejected this approach.  *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, ECF No. 1005 at Jury

14   Instruction No. 11 (N.D. Cal. Nov. 23, 2010).  Oracle fails to cite this directly on-point

15   authority.  Notably, the comment in the Ninth Circuit model jury instruction also cites the dicta

16   in *Frank Music*, as the instructions were drafted 7 years before the *Oracle v. SAP* decision, and

17   so they are outdated on this point.  And neither the Ninth Circuit model jury instruction nor the

18   Seventh Circuit instructions cited by Oracle provide a model instruction that states an infringer

19   may not deduct expenses where the infringement was willful.

20   Rimini also objects to Oracle's definitions to the extent they limit the definition for

21   expenses and expand the definition of revenue.  For example, the Ninth Circuit model jury

22   instructions include "production costs" in the definition of expenses, but Oracle has removed that

23   term from its proposed instruction.  The Court should instead adopt Rimini's more accurate and

24   complete proposed instruction D-21.  Oracle's proposed instruction also neglects to include

25   language (found in Rimini's proposed instruction) that "[i]f Rimini Street's expenses exceed its

26   gross revenue, then there are no profits for you to award Oracle," and therefore the jury will be

27   misled into thinking it *must* award infringer's profits.

28   Rimini also objects to the causation standard set forth in Oracle's instruction which does

1    not include the "two-step framework for recovery" articulated in *Polar Bear Products, Inc. v.*

2    *Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004), as accurately described in Rimini's proposed

3    instruction D-21.  *See also Oracle v. SAP*, 765 F.2d at 1065 ("Because of its experts'

4    equivocation as to whether the loss of these three customers was attributable to TomorrowNow's

5    infringement, Oracle has failed to establish this requisite causal connection and therefore cannot

6    recover damages related to those three customers").

7         Rimini further objects to this proposed instruction to the extent it permits an award of

8    infringer's profits in addition to a fair market value of use damages award.  Infringer's profits are

9    available only if the jury concludes that lost profits are the better measure of actual damages,

10   because the value to the infringer is necessarily included in the hypothetical negotiation, costs

11   avoided, or cost to create a non-infringing alternative, and so to permit an infringer's profits

12   award in addition to a fair market value of use award necessarily leads to double recovery.  For

13   that reason, the court in *Oracle v. SAP* rejected the approach Oracle proposes and instead

14   adopted the approach found in Rimini's proposed instruction D-21.  *Oracle v. SAP*, 765 F.2d at

15   1095 (noting that district court rejected Oracle's jury instruction that would have permitted

16   Oracle to obtain both hypothetical license damages and infringer's profits); *Oracle USA, Inc. v.*

17   *SAP AG*, No. C 07-1658 PJH, ECF No. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010)

18   ("If you award Oracle actual damages based on the fair market value of a license for the rights

19   infringed, that award takes into account Defendants' profits attributable to their infringement and

20   Oracle is not entitled to any additional award"); *id.* ECF No. at 1004 (verdict form stating "If you

21   assigned actual damages in the form of a fair market value license for the rights infringed, please

22   proceed to the end of the form (*i.e. Do not answer question 2*).  If you assigned actual damages

23   in the form of lost profits, please proceed to the following question [regarding infringer's

24   profits]").

25        Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

26   Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

**1**  **P-23.  STATUTORY DAMAGES**

**2**  You must also calculate a statutory damages award.  Congress established statutory

**3**  damages to penalize infringers and deter future violations of the copyright laws.

**4**  The amount you may award as statutory damages is not less than $750, nor more than

**5**  $30,000 for each work you conclude was infringed.

**6**  However, if you find the infringement was innocent, you may award not less than $200

**7**  for each work innocently infringed.

**8**  However, if you find the infringement was willful, you may award as much as

**9**  $150,000 for each work willfully infringed.

**10**  The instructions that follow will tell you what constitutes innocent infringement and what

**11**  constitutes willful infringement.

**12**  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-23:**

**13**  Rimini objects to this instruction and requests that the Court instead adopt an instruction

**14**  defining "work" in connection with this instruction.  Statutory damages are available only per

**15**  infringed "work" as Oracle acknowledges (*see also* 17 U.S.C. § 504(c)), but the jury will not

**16**  understand what constitutes a work versus a copy, and may erroneously award statutory damages

**17**  for more than the infringed works due to this incomplete and confusing instruction.  Rimini

**18**  therefore proposes adding the following additional language (additions underlined) to the

**19**  instruction, if it is adopted by the Court:

**20**  "The amount you may award as statutory damages is not less than $750, nor more than

**21**  $30,000 for each work you conclude was infringed.  The list of works is listed in your juror

**22**  notebook.  To reach the statutory damages number, you should multiply the number of works

**23**  you conclude were infringed by the statutory damages number you choose."

**24**  Although this language is not specifically included in the Ninth Circuit model jury

**25**  instructions, because Rimini's proposed language is "supported by law and has foundation in the

**26**  evidence," Rimini is "entitled to an instruction about [its] theory of the case."  *Clem v. Lomeli*,

**27**  566 F.3d 1177, 1181 (9th Cir. 2009); *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) (court

**28**

42

1    must instruct jury beyond model instructions when requested so that "the substance of the
2    applicable law [is] fairly and correctly covered").

3        Further, the one authority cited by Oracle in support of this proposed instruction contains
4    an error in its explanation, stating that from "purpose" to the "end" of the proposed instruction is
5    verbatim, but the word purpose is not in the proposed instruction.

6        Critically, this proposed instruction should be rejected because it does not refer to the
7    relationship between statutory damages and actual damages.  Rimini's instructions, by contrast,
8    properly inform the jury that statutory damages must be awarded if Oracle does not prove
9    causation or the amount of actual damages suffered as a result of the infringement.  Ninth Circuit
10   Manual of Model Jury Instruction 17.22 cmt. ("When injury is shown, but neither profits nor
11   damages can be proved, statutory damages are mandatory"); *id.* at Instruction 17.25 cmt. ("When
12   an injury can be shown, but neither profits nor damages can be proven, statutory damages are
13   mandatory"); *Russel v. Price*, 612 F.2d 1123, 1129–1130 (9th Cir. 1979) ("when injury is proved
14   but neither the infringer's profits nor the copyright holder's actual damages can be proved,
15   statutory damages are mandatory").

16       Oracle is of course free to elect actual damages, so that statutory damages are not at issue
17   in this case.  But Oracle has thus far refused to do so, most likely because it wishes to present
18   prejudicial evidence of willful infringement to the jury.  Oracle cannot have it both ways.  The
19   Court should either (i) bar Oracle from introducing evidence of willful infringement, or (ii)
20   include language in the jury instructions explaining the relationship between statutory damages
21   and actual damages.

22       Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*
23   Objection to P-3.  Only Oracle International Corporation asserts a copyright infringement claim.

24

25

26

27

28

43

1   **P-24.  INDUCING BREACH OF CONTRACT**

2   In addition to its other claims, Oracle contends that Rimini Street induced customers to

3   breach their contracts with Oracle.  Specifically, Oracle contends that the terms of use on its

4   website and its software license agreements are contracts with its customers.  Oracle contends

5   that Rimini Street intentionally caused Oracle customers to breach their contracts with Oracle.

6   To prevail on this claim in the circumstances of this case, Oracle must prove each of the

7   following for each such contract by a preponderance of the evidence:

8       1)    A valid contract existed between Oracle and a customer;

9       2)    Rimini Street knew the contract existed;

10       3)    Rimini Street intentionally engaged in conduct designed to disrupt the contract by

11       means of one or more of the following:  (a) fraud, that is, a deceit which, whether

12       perpetrated by words, conduct, or silence, is intentionally designed to cause a

13       reasonable person to rely upon it, and which does cause reliance; (b) by

14       committing trespass to chattels, or (c) by violating the computer-related statutes I

15       will explain in a moment (that is, the CFAA, NCCL, or CDAFA);

16       4)    Rimini Street did so with the intent to disrupt the contract;

17       5)    Such conduct did in fact disrupt the contract; and

18       6)    Such conduct was a substantial factor in causing Oracle harm.

19   If you find that Oracle proved each of these elements, you should find for Oracle and

20   against Rimini Street on the claim for inducing breach of contract.  If, on the other hand, Oracle

21   has failed to prove any of these elements, you should find for Rimini Street and against Oracle

22   on the claim for inducing breach of contract.

23   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-24:**

24   Rimini objects to Oracle's use of "disrupt" in its third, fourth, and fifth elements.  The

25   term is incorrect and misleading.  While some courts loosely use the language "disrupt"

26   alongside "breach," their discussion makes clear that there must be the specific intent to cause

27   the third party to *breach* the contract.  *See, e.g.*, *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 275

28   (2003) ("the plaintiff must establish that the defendant had a motive to induce *breach* of the

44

1   contract with the third party") (emphasis added); Restatement (Second) of Torts § 766A ("One

2   who intentionally and improperly interferes with the performance of a contract … between

3   another and a third person, by *preventing the other from performing the contract …*") (emphasis

4   added).  "Disrupt" is ambiguous and could allow the jury to find liability without any *breach*,

5   which is an essential element of Oracle's claim.  The Court should use the model language

6   Rimini proposed from the CACI instruction, which requires the jury to find "breach" not

7   "disrupt[ion]," of the contract.  Dkt. 738 (Instruction No. D-23) (citing CACI 2200).

8        Rimini objects to the entire third element.  Oracle must prove that Rimini's conduct was

9   "wanton, malicious, and unjustifiable," as the case it cites explains.  *Crockett v. Sahara Realty*

10  *Corp.*, 95 Nev. 197, 199 (1979); *see also DeVoto v. Pac. Fidelity Life Ins. Co.*, 618 F.2d 1340,

11  1348 (9th Cir. 1980); *Bennett*, 119 Nev. at 275; *Nat'l Right to Life Pol. Action Comm. v. Friends*

12  *of Bryan*, 741 F. Supp. 807, 814 (D. Nev. 1990).  Oracle recognizes as much in its trial brief,

13  stating that it must prove that "Ravin and Rimini engaged in wrongful conduct."  Dkt. 746 at 13.

14       But Oracle's proposed language incorrectly and misleadingly allows the jury to ignore

15  that requirement.  Oracle requests the jury to find that Rimini engaged in fraud, trespass, or

16  computer hacking and then to use that conduct as predicate wrongful conduct for this claim.

17  That approach encourages the jury to overlook the specific causal intent and connection required:

18  Oracle must prove that Rimini engaged in wrongful conduct with the intent to cause an Oracle

19  customer to breach its contract with Oracle.  *E.g.*, *Bennett*, 119 Nev. at 275.  This is particularly

20  notable for the trespass and computer hacking claims that Oracle seeks to bootstrap into this

21  claim.

22       Additionally, Oracle condenses and thereby misstates the five separate elements of

23  proving fraud.  *See Conroy v. Regents University of California*, 45 Cal. 4th 1244, 1255 (2009).

24  Oracle must also prove *actual reliance*.  *Id.* at 1256.  Oracle must also present *individualized*

25  proof of reliance and damages.  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993).  In addition,

26  "[i]t is hornbook law that an actionable misrepresentation must be made about past or existing

27  facts; statements regarding future events are merely deemed opinions."  *S.F. Design Ctr. Assocs.*

28  *v. Portman Cos.*, 41 Cal. App. 4th 29, 40 (1995).  Oracle's proposed fraud instruction would

1     allow the jury to breeze through these individual elements and to impermissibly make "class-

2     wide" inferences without the constitutional protections of Rule 23 and class certification, and

3     without actual evidence that, inter alia, each third party heard and actually relied on the alleged

4     misrepresentation.

5        Thus, the Court should instruct the jury as proposed by Rimini:  Oracle must establish

6     that Rimini "engaged in conduct that was wanton, malicious, and unjustifiable."   Dkt. 738

7     (Instruction No. D-23, element 4).  That instruction is much simpler and does not allow Oracle to

8     cross-pollinate its claims in a manner that will confuse the jury and lessen Oracle's burden.

9        Oracle's instruction also improperly omits the plain language explanations in Rimini's

10    proposed instruction D-23.  That language includes explanations of the causation standard, the

11    necessary intent, the fact that actual harm (and not nominal or speculative damages) is an

12    element of the claim, and the necessity of Oracle America proving its claims as to individual

13    clients.   Oracle's instruction also fails to include the element that it directly suffered harm.

14    Rimini's proposed language is "supported by law and has foundation in the evidence," such that

15    Rimini is "entitled to an instruction about [its] theory of the case."  *Clem*, 566 F.3d at1181; *see*

16    *Dang*, 422 F.3d at 804 (court must instruct jury beyond model instructions when requested so

17    that "the substance of the applicable law [is] fairly and correctly covered").

18        Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

19    Objection to P-3.  Only Oracle America asserts a claim for inducing breach of contract.

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1  **P-25.    INTENTIONAL   INTERFERENCE   WITH   PROSPECTIVE   ECONOMIC**
2  **ADVANTAGE**

3       In addition to its other claims, Oracle contends that Rimini Street and Seth Ravin
4  intentionally interfered with economic relationships between Oracle and customers that probably
5  would have resulted in an economic benefit to Oracle.

6       To prevail on this claim in the circumstances of this case, Oracle must prove each of the
7  following for each such customer by a preponderance of the evidence:

8       1)    Oracle had an expectancy in a prospective contractual relationship with the
9             customer;

10      2)    A Defendant knew of the existence of the relationship;

11      3)    The Defendant interfered with the relationship by one or more of the following
12            means:  (a) fraud, that is, a deceit which, whether perpetrated by words, conduct,
13            or silence, is intentionally designed to cause a reasonable person to rely upon it,
14            and which does cause reliance; (b) by committing trespass to chattels, or (c) by
15            violating the computer-related statutes I will explain in a moment (that is, the
16            CFAA, NCCL, or CDAFA);

17      4)    The Defendant did so with the intent to interfere with or disrupt the relationship;
18            and

19      5)    Such conduct was a substantial factor in causing Oracle harm.

20      If you find that Oracle proved each of these elements as to a Defendant, you should find
21  for Oracle and against the Defendant on the claim for intentional interference with prospective
22  economic advantage.  If, on the other hand, Oracle has failed to prove any of these elements as to
23  a Defendant, you should find for the Defendant and against Oracle on the claim for intentional
24  interference with prospective economic advantage.

25  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-25:**

26      Rimini objects to third element of Oracle's proposed instruction, as well as the significant
27  omission of elements and affirmative defenses included in Rimini's proposed instruction.

28      Oracle's third element is essentially the same as the third element Oracle proposes for its

47

1   inducing breach of contract claim.  Rimini's objections to the third element of Oracle's proposed

2   instruction P-24 apply with even more force to the third element of Oracle's proposed instruction

3   here.  Courts are particularly skeptical of claims for intentional interference with prospective

4   economic advantage because of the possibility of competitors using this claim to stifle

5   competition.  *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1136-37 (1990)

6   (describing "the dangers inherent in imposing tort liability for competitive business practices").

7         Rimini explicitly incorporates its objections to P-24 by reference, including its arguments

8   that Oracle seeks to lessen its burden of proof, have the jury skip over the necessary intent and

9   causation, impermissibly bootstraps in trespass and hacking claims that have nothing to do with

10   the claim, and misstates the requirements for fraud.  Additionally, it is settled that "[t]he

11   defendant's conduct must be independently actionable" (*S.F. Design Ctr.*, 41 Cal. App. 4th at

12   40), and this tort requires that Oracle prove Rimini engaged in wrongful conduct that is

13   "independently tortious" (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App.

14   4th 464, 478 (1996)).  Rimini's proposed instruction on this element—"Rimini Street and/or Seth

15   Ravin engaged in unlawful and improper conduct" Dkt. 738 (Instruction No. D-24)—is a much

16   simpler explanation of this requirement, which prevents Oracle from reducing its burden of proof

17   for all of the reasons set forth in Rimini's preceding objection.

18         Rimini also objects to Oracle's instruction to the extent it does not contain the additional

19   language proposed by Rimini.  Rimini proposed key elements and affirmative defenses in its

20   instruction, including the black-letter limitation that it cannot be held liable when its conduct was

21   privileged, such as engaging in proper competition, and two essential elements that the

22   prospective relationship was in fact disrupted and Oracle suffered harm.  *See* Dkt. 738

23   (Instruction No. D-24).  Rimini also proposed further explanations of the relevant legal

24   standards, including the causation standard, the privilege of competition, the unlawful means

25   requirement, the requirement for actual harm, and the necessity of proving the claim as to each

26   individual prospective relationship.  All of that proposed language is "supported by law and has

27   foundation in the evidence," such that Rimini is "entitled to an instruction about [its] theory of

28   the case."  *Clem*, 566 F.3d at1181; *see Dang*, 422 F.3d at 804 (court must instruct jury beyond

1    model instructions when requested so that "the substance of the applicable law [is] fairly and

2    correctly covered").

3          Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

4    Objection to P-3.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1  **P-26.  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—**
2  **KNOWLEDGE**

3      For Oracle to prevail on its claims for inducing breach of contract or intentional

4  interference with prospective economic advantage, you must also find that the Defendant knew

5  of the existence of the contract or prospective relationship.  To have knowledge means that the

6  Defendant has information concerning the contract or prospective Defendant, which was

7  discovered by the Defendant or was brought to Defendant's attention by others.

8      In this regard, knowledge may be found to exist if, from the facts and circumstances of

9  which the Defendant had knowledge, the Defendants should have known of the contract or

10  prospective relationship.

11  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-26:**

12      Rimini proposed substantially identical language as the first paragraph of Oracle's

13  proposed instruction.  Dkt. 738 (Instruction No. D-26).

14      Rimini objects to the second paragraph in Oracle's proposed instruction P-26.  Both torts

15  require *actual* knowledge, not "should have known" knowledge.  *See Bennett*, 119 Nev. at 274

16  ("Because interference with contractual relations is an intentional tort, the plaintiff must

17  demonstrate that the defendant knew of the existing contract"); Restatement (Second) of Torts

18  § 766 cmt. i ("the  actor must have knowledge of the contract with which he is interfering and of

19  the fact that he is interfering with the performance of the contract").  Surrounding circumstances

20  may support an inference that the defendant knew of the contract.  *See Bennet*, 119 Nev. at 274

21  ("the plaintiff must … at the very least, establish facts from which the existence of the contract

22  can reasonably be inferred") (citation omitted).  But the cases do not support the inference Oracle

23  seeks to have the jury draw—that Rimini "should have known."  *See DeVoto*, 618 F.3d at 1347

24  ("The fact of a general intent to interfere, under a definition that includes *imputed knowledge* of

25  consequences, does not alone suffice to impose liability") (emphasis added).  Rimini therefore

26  requests that the Court give the instruction proposed by Rimini, which does not allow the jury to

27  make an improper "should have known" finding.

28      Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

50

1   Objection to P-3.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1   **P-27.  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—**
2   **INTENT**

3   For Oracle to prevail on its claims for inducing breach of contract or intentional

4   interference with prospective economic advantage, you must find intentional conduct by a

5   Defendant.  For purposes of these two claims, conduct is intentional if done with the desire to

6   disrupt the contract or interfere with the relationship; or if it is done with the belief that

7   disruption or interference is substantially certain to result.

8   Intent ordinarily may not be proved directly, because there is no way of scrutinizing the

9   operations of the human mind.  You may infer a person's intent from conduct substantially

10  certain to cause disruption or interference, but you are not required to infer it and should consider

11  all of the circumstances.  You may consider any statements made or acts done or omitted by a

12  party whose intent is an issue, and all of the facts and circumstances that indicate the party's state

13  of mind.

14  Furthermore, in determining the intention, the law assumes that every person intends the

15  natural consequences of one's knowingly done acts.  Thus, if you find that the conduct of one or

16  more of the Defendants was knowingly done, you may draw the inference and find, unless the

17  contrary appears from the evidence, that the Defendant intended all of the natural and probable

18  consequences of that conduct.

19  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-27:**

20  Rimini proposed a somewhat similar instruction.  *See* Dkt. 738 (Instruction No. D-27).

21  Rimini objects to the additional language Oracle has included, which is the clause in the end of

22  the first paragraph "or if it is done with the belief that disruption or interference is substantially

23  certain to result," and the entire third paragraph.

24  The Ninth Circuit has rejected the very position Oracle takes, explaining:

25  Tort law ordinarily imputes to an actor the intention to cause the natural and probable
    consequences of his conduct.  … Tortious interference requires a state of mind and a
26  purpose more culpable than "intent" under the Restatement definition, however.  The fact
    of a general intent to interfere, under a definition that includes imputed knowledge of
27  consequences, does not alone suffice to impose liability.  Inquiry into the motive or
    purpose of the actor is necessary.  The inducement of a breach, therefore, does not always
28  vest third or incidental persons with a tort action against the one who interfered.

52

1   *DeVoto*, 618 F.3d at 1347; *accord Bennett*, 119 Nev. at 275 (plaintiff must demonstrate

2   "intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations")

3   (emphasis removed).  Accordingly, the additional language proposed by Oracle does not apply to

4   this specific tort.  The Court should not so instruct the jury.

5          Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

6   Objection to P-3.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **P-28.  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—**
2   **CAUSATION**

3       A substantial factor in causing harm is a factor that a reasonable person would consider to

4   have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to

5   be the only cause of harm.

6       Conduct is not a substantial factor in causing harm if the same harm would have occurred

7   without that conduct.

8   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-28:**

9       Rimini objects to this instruction to the extent it does not include the additional sentence

10  proposed by Rimini in D-28 clarifying the correct state of the law on the causation standard.  *See*

11  Dkt. 738 (Instruction No. D-28) (including the final sentence:  "Put another way, the 'substantial

12  factor' test means that 'but for' the defendant's conduct, the plaintiff's harm would not have

13  occurred").   Rimini's  additional  explanation  is  warranted  under  the  law  and  clarifies  the

14  causation requirement.  *E.g.*, *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052-53 (1991) (explaining

15  that  the  "substantial  factor  test  subsumes  the  'but  for'  test"  and  "produces  the  same  legal

16  conclusion as the but-for test" and further explaining that the substantial cause form instruction

17  can be confusing and should be clarified by "proper argument by counsel and instruction by the

18  court" to make clear that it includes "but for" causation); *see Clem*, 566 F.3d at1181; *Dang*, 422

19  F.3d at 804 (court must instruct jury beyond model instructions when requested so that "the

20  substance of the applicable law [is] fairly and correctly covered").

21

22

23

24

25

26

27

28

1  **P-29.   INTENTIONAL INTERFERENCE AND INDUCING BREACH OF CONTRACT**
2  **—COMPENSATORY DAMAGES**

3  If you find for Oracle on one or more of these two claims (intentional interference with

4  prospective economic advantage and inducing breach of contract), you must determine

5  compensatory damages.   Compensatory damages consist of the amount of money that will

6  reasonably and fairly compensate Oracle for any damage due to the conduct that created liability

7  on the claim.   Oracle has the burden to prove compensatory damages by a preponderance of the

8  evidence.

9  In determining compensatory damages on these claims, you may consider whether Oracle

10  suffered any measurable loss of profits as a result of a Defendant's conduct.   In this case, Oracle

11  contends that its business was affected because of loss of profits plaintiff might have earned but

12  for the Defendants' conduct.

13  For lost profits to be recovered there must be a reasonable basis for computing them.

14  Profits are determined by deducting all expenses from gross revenue.   Ordinarily, it is sufficient

15  for this purpose to show actual past profits and losses.   Although they cannot be taken as an

16  exact measure of future or anticipated profits, you, the jury, should consider those past profits

17  and losses together with the uncertainties and contingencies by which they probably would have

18  been affected.   Losses and profits that are mere guesses, speculative, remote, or uncertain should

19  not be considered.

20  Damages, if any, should be restricted to such losses, if any, as are proved by facts from

21  which their existence is logically and legally inferable.   The general rule on the subject of

22  damages is that all damages resulting necessarily, immediately, and directly from the wrong are

23  recoverable, and not those that are contingent and uncertain or mere speculation.

24  Although a qualified person may make estimates concerning probable profits or losses of

25  a going business, you should, in weighing all such evidence, take into consideration, among

26  other things, the truth or falsity of the basis of such estimates; the knowledge or lack of

27  knowledge of the witnesses of all of the conditions on which the estimate is based; whether the

28  facts assumed as a basis for an estimate rest upon actual accounts and records kept in the

1   ordinary course of business rather than in uncertain recollections; and knowledge of the witness

2   in the particular line of business about which the witness testifies.  From all of the evidence in

3   this case bearing on the subject, you should determine for yourselves the probability or

4   improbability, and the amount, of profits anticipated by Oracle.

5        The difficulty or uncertainty in ascertaining or measuring the precise amount of any

6   damages does not preclude recovery, and you, the jury, should use your best judgment in

7   determining the amount of such damages, if any, based upon the evidence.

8   That the defendant did not actually anticipate or contemplate that these losses would occur is not

9   a relevant factor for you to consider.

10       If you find that the plaintiff is entitled to a verdict in accordance with these instructions,

11   but you do not find that the evidence before you is sufficient to show that Oracle has sustained

12   any substantial damages, then you may return a verdict for the plaintiff on one or more of these

13   claims (inducing breach of contract and intentional interference with prospective economic

14   advantage) and fix the amount of the compensatory damages in a nominal sum such as one

15   dollar.  Such a verdict would determine the rights of the parties, and the court can then issue

16   orders directing their future conduct.

17   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-29:**

18       Rimini proposed a similar instruction.  Dkt. 738 (Instruction No. D-29).  The differences

19   are that (1) Oracle does not separate the plaintiffs asserting the specific claims, (2) Oracle did not

20   include Rimini's proposed second paragraph about proving damages as to each specific client or

21   prospective relationship, (3) Oracle's paragraphs three ("For lost profits to be recovered …") and

22   seven ("If you find that the plaintiff …") are not in Rimini's proposed instruction, and (4) Oracle

23   did not include the statement "However, damages may not be based on speculation or

24   guesswork."  Rimini objects to all these differences in Oracle's proposed instruction P-29.

25       The third paragraph, which is drawn from a generic and inapposite "Compensatory

26   Damages" model instruction, is misleading and confusing in the context of these claims.  It

27   improperly suggests that the jury can award lost profit damages by looking only to Oracle's

28   gross revenue and expenses.  But, as described in Rimini's trial brief (Dkt. 739 at 18-21), Oracle

1    must prove all elements of these intentional tort claims as to *each* specific client and prospective

2    relationship.  This instruction suggests to the jury that it can determine damages by looking only

3    to Oracle's books without requiring the jury to examine the actual harm proven by a

4    preponderance of the evidence as to each specific third party.

5          The seventh paragraph, similarly drawn from a generic and inapposite "Compensatory

6    Damages" model instruction, incorrectly allows the jury to award nominal damages.  But it is

7    hornbook law that nominal damages are not available for intentional tort claims when, like here,

8    actual damages is an essential element of the claim.  *See Budd v. Nixen*, 6 Cal. 3d 195, 200

9    (1971) (when damages is an element of a tort claim, "[t]he mere breach of a … duty, causing

10   only nominal damages, speculative harm, or the threat of future harm - not yet realized - does not

11   suffice to create a cause of action"); Restatement (Second) of Torts § 907, cmt. b (nominal

12   damages are available for tort claims when "harm is not requisite to a cause of action").  Without

13   actual damages, there is no liability.  (Indeed, Oracle recognizes elsewhere in its proposed

14   instructions that harm is an element of both causes of action.)  The jury should not be allowed to

15   award nominal damages; instead, if it finds only nominal damages, then the jury must return a

16   finding of no liability.

17         Rimini also objects to the extent Oracle's instruction does not include language that

18   Rimini proposed in its instruction.

19         The difference identified in (2) is necessary to clarify for the jury that it cannot

20   extrapolate compensatory damages from one third party to other entities for which Oracle does

21   not individually prove liability and damages.  Oracle seems to acknowledge this concept in its

22   proposed instructions P-24 and P-25, which state that "Oracle must prove each of the following

23   for each such contract" and "for each such customer."

24         The difference identified in (4) is a simple statement of law that damages may not be

25   based on guesswork.  That statement is necessary in light of Oracle's proposed language in this

26   instruction that "[t]he difficulty or uncertainty in ascertaining or measuring the precise amount of

27   any damages does not preclude recovery"—it clarifies for the jury basic law regarding awarding

28   damages.  Rimini's additional proposed language is "supported by law and has foundation in the

1   evidence," such that Rimini is "entitled to an instruction about [its] theory of the case."  *Clem*,

2   566 F.3d at1181; *see Dang*, 422 F.3d at 804 (court must instruct jury beyond model instructions

3   when requested so that "the substance of the applicable law [is] fairly and correctly covered").

4          Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

5   Objection to P-3.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1   **P-30.  FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTRODUCTION**

2          In addition to its other claims, Oracle contends that Rimini Street and Seth Ravin violated

3   five sections of the Federal Computer Fraud and Abuse Act ("CFAA").  I will now instruct you

4   on various sections of the CFAA, and the damages you may award if you find any CFAA

5   violation.  If you find that a Defendant violated at least one of the CFAA sections that follow,

6   you should find for Oracle and against that Defendant on the CFAA claim.

7   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-30:**

8          Rimini objects to *all* of the computer hacking instructions in their entirety as unsupported

9   and unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the

10  jury with nothing more than the bare language of the statute divorced from the heightened

11  standards the Ninth Circuit has applied to these very statutes.

12         First, Rimini objects to *all* of Oracle's proposed computer hacking instructions because

13  Oracle's attempted application of these statutes to this case is unsupported by the evidence and

14  unconstitutional.  As prefaced in its trial brief, Rimini intends to move for judgment as a matter

15  of law on all of these claims.  Dkt. 739 at 21-24.  It therefore does not believe any of these

16  instructions should or will end up before the jury.  Put simply, Rimini did not hack any

17  computers, and even if the language of the statute could potentially cover Rimini's conduct, it

18  would be unconstitutional to apply the statute to Rimini.

19         The Ninth Circuit's en banc decision in *United States v. Nosal*, 676 F.3d 854 (9th Cir.

20  2012) (en banc), provides helpful explanation for why Oracle's theories and instructions are

21  improper.  The Court explained at length the constitutional problems raised by seeking to create

22  liability under the Computer Fraud and Abuse Act ("CFAA") based on violations of website

23  terms of use—which is precisely Oracle's theory in this case.  *See* Dkt. 746 at 12 (Oracle Trial

24  Br.) ("Ravin and Rimini have no defense against these claims.  Oracle's Terms of Use were

25  clear.").  Among other things, the CFAA is designed to address "computer hacking," and should

26  be interpreted narrowly so as not to "turn[] it into a sweeping Internet-policing mandate."  *Id.* at

27  858; *id.* at 862-63 ("we must construe ambiguous criminal statutes narrowly so as to avoid

28  'making criminal law in Congress's stead'") (quoting *United States v. Santos*, 553 U.S. 507, 514

59

1   (2008)).  Premising liability on violations of website terms of use "would expand [the CFAA's]

2   scope far beyond computer hacking to criminalize any unauthorized use of information obtained

3   from a computer," which "would make criminals of large groups of people who would have little

4   reason to suspect they are committing a federal crime."  *Id.* at 859.  In rejecting the kind of

5   application Oracle proposes here, the Ninth Circuit explained:  "the government's proposed

6   interpretation of the CFAA allows private parties to manipulate their computer-use and personnel

7   policies so as to turn these relationships into ones policed by the criminal law.  Significant notice

8   problems arise if we allow criminal liability to turn on the vagaries of private polices that are

9   lengthy, opaque, subject to change and seldom read."  *Id.* at 860.  Consequently, "[i]f there is any

10  doubt about whether Congress intended [the CFAA] to prohibit the conduct in which [defendant]

11  engaged, then we must choose the interpretation least likely to impose penalties unintended by

12  Congress."  *Id.* at 863 (citation omitted).  The same rationales apply with equal force to the state

13  law hacking claims.

14        Second, in the unlikely event these claims do go to the jury, Rimini has proposed

15  additional language to the jury instructions in an effort to potentially mitigate some of the

16  constitutional problems raised by these statutes.  The language Rimini has proposed is necessary

17  (though not sufficient)[3] to mitigating some of the vagueness problems with the statutes, including

18  clarifying the specific intent necessary under these criminal statutes.  *See Clem*, 566 F.3d at 1181

19  (party is entitled to instruction supported by law with foundation in evidence); *Dang*, 422 F.3d at

20  804 (court must instruct jury so that "the substance of the applicable law [is] fairly and correctly

21  covered").

22        Oracle's instructions as proposed, without any of the additional language proposed by

23  Rimini, would allow for absurd and unconstitutional results.  For example, Oracle's proposed

24  instruction P-36 could allow a jury to find Rimini liable if it "knowingly accessed and without

25  permission used or caused to be used computer services" and "[t]hereby caused Oracle to suffer

26  ─────────────────

27  [3]        To be clear, Rimini does not believe that even its proposed additional language render
these statutes constitutional, but only that the language mitigates some of the problems with the
28  instructions as proposed by Oracle.

1    damage or loss."   In conjunction with the broad definitions under the statute, read literally,

2    liability is undefined and limitless.   For example, if one Rimini employee used a coworker's

3    computer without permission to do business with a former Oracle customer, Oracle could argue

4    that Rimini had violated the statute by knowingly and without permission using a computer

5    service to Oracle's detriment.   But there would be nothing illegal about that activity, and

6    instructing the jury based solely on the language of the statute would be unconstitutional.   *See*

7    *Nosal*, 676 F.3d at 859 ("While ignorance of the law is no excuse, we can properly be skeptical

8    as to whether Congress, in 1984, meant to criminalize conduct beyond that which is inherently

9    wrongful, such as breaking into a computer").   Rimini's additional language, in comparison,

10   explains the specific intent necessary to find liability, which at least mitigates to some extent

11   these overbreadth and vagueness problems.

12         Rimini also objects to the extent this instruction conflates the Oracle entities.   *See supra*

13   Objection to P-3.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

61

**P-31. FEDERAL COMPUTER FRAUD AND ABUSE ACT—OBTAINING INFORMATION FROM A PROTECTED COMPUTER**

*First*, Oracle contends that Rimini Street and Seth Ravin unlawfully obtained information from a protected computer in violation of the CFAA, Section 1030(a)(2)(C).  To prevail under this provision, Oracle must prove each of the following elements by a preponderance of the evidence:

1)   A Defendant intentionally accessed a computer without authorization, or exceeded authorized access;

2)   Through such access, the Defendant obtained information from a protected computer; and,

3)   Such access caused loss to Oracle totaling at least $5,000 in value during any one-year period.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-31:**

For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini objects to *all* of the computer hacking instructions in their entirety as unsupported and unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury with nothing more than the bare language of the statute divorced from the heightened standards cases have made clear apply.  Rimini explicitly incorporates by reference its objections to Oracle's proposed instruction P-30.

**P-32.  FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTENTIONAL DAMAGE TO A PROTECTED COMPUTER**

*Second*, Oracle contends that Rimini Street and Seth Ravin committed damage to a protected computer in violation of the CFAA, Section 1030(a)(5)(A).  To prevail under this provision, Oracle must prove each of the following elements by a preponderance of the evidence:

1)   A Defendant knowingly caused the transmission of a program, information, code, or command to a computer;

2)   As a result of such transmission, the Defendant intentionally caused damage to a protected computer without authorization; and

3)   Such transmission caused loss to Oracle during any one-year period aggregating at least $5,000 in value.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-32:**

For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini objects to *all* of the computer hacking instructions in their entirety as unsupported and unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury with nothing more than the bare language of the statute divorced from the heightened standards cases have made clear apply.  Rimini explicitly incorporates by reference its objections to Oracle's proposed instruction P-30.

**P-33.  FEDERAL COMPUTER FRAUD AND ABUSE ACT—RECKLESS DAMAGE TO A PROTECTED COMPUTER**

*Third*, Oracle contends that that Rimini Street and Seth Ravin recklessly damaged a protected computer in violation of the CFAA, Section 1030(a)(5)(B).  To prevail under this provision, Oracle must prove each of the following elements by a preponderance of the evidence:

1)  A Defendant intentionally accessed a protected computer without authorization;

2)  As a result of such conduct, the Defendant recklessly caused damage; and,

3)  Such access caused loss to Oracle during any one-year period

aggregating at least $5,000 in value.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-33:**

For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini objects to *all* of the computer hacking instructions in their entirety as unsupported and unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury with nothing more than the bare language of the statute divorced from the heightened standards cases have made clear apply.  Rimini explicitly incorporates by reference its objections to Oracle's proposed instruction P-30.

64

1   **P-34.  FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES**

2         If you find that a Defendant violated any of the CFAA sections described above, you may

3   award Oracle damages under the CFAA from that the Defendant caused.  These damages may

4   include:

5             1)   costs of responding to the violation;

6             2)   costs of conducting a damage assessment;

7             3)   costs of restoring the system and data to its prior condition;

8             4)   lost revenues or costs due to interruption of service;

9             5)   costs of investigating the violation;  and

10            6)   the value of any business that Oracle lost as a result of the violation of the CFAA.

11        It is Oracle's burden to prove its damages by a preponderance of the evidence.  You

12  should determine damages separately for each Defendant, if any, that you find violated the

13  CFAA.

14  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-34:**

15        For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

16  objects to *all* of the computer hacking instructions in their entirety as unsupported and

17  unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

18  with nothing more than the bare language of the statute divorced from the heightened standards

19  cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

20  Oracle's proposed instruction P-30.

21

22

23

24

25

26

27

28

1 **P-35.  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED**

2 *First*, Oracle contends that Rimini Street and Seth Ravin violated the CDAFA, Section

3 502(c)(2).   To prevail under this provision, Oracle must prove each of the following by a

4 preponderance of the evidence:

5       1)      A Defendant knowingly accessed and without permission took or made use of any

6                   data, computer, computer system, or computer network, or took any supporting

7                   documentation; and

8       2)      Thereby caused Oracle to suffer damage or loss.

9 **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-35:**

10 For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

11 objects to *all* of the computer hacking instructions in their entirety as unsupported and

12 unconstitutional.   To the extent they are given to the jury, Rimini objects to presenting the jury

13 with nothing more than the bare language of the statute divorced from the heightened standards

14 cases have made clear apply.   Rimini explicitly incorporates by reference its objections to

15 Oracle's proposed instruction P-30.

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-36.  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED**

2        *Second*, Oracle contends that Rimini Street and Seth Ravin violated the CDAFA, Section

3    502(c)(3).   To prevail under this provision, Oracle must prove each of the following by a

4    preponderance of the evidence:

5        1)    A Defendant knowingly accessed and without permission used or caused to be

6              used computer services; and

7        2)    Thereby caused Oracle to suffer damage or loss.

8    **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-36:**

9        For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

10   objects to *all* of the computer hacking instructions in their entirety as unsupported and

11   unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

12   with nothing more than the bare language of the statute divorced from the heightened standards

13   cases have made clear apply.   Rimini explicitly incorporates by reference its objections to

14   Oracle's proposed instruction P-30.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-37.  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—ASSISTING, OR AIDING AND ABETTING**

In addition to contending that Seth Ravin personally violated the CDAFA, Oracle also contends that Seth Ravin assisted or aided and abetted Rimini Street or its employees in violating the CDAFA.  If you have not found that Seth Ravin personally committed one of the CDAFA violations above, then you must consider whether Seth Ravin is responsible for CDAFA violations committed by Rimini Street or its employees.

To prevail on this theory Oracle must prove each of the following by a preponderance of the evidence:

1)   Seth Ravin knowingly and without permission provided or assisted in providing another person a means of accessing a computer, computer system, or computer network in violating the CDAFA;

2)   Seth Ravin's conduct was of substantial assistance in the other person's CDAFA violation;

3)   Seth Ravin knew the other person intended conduct that would violate the CDAFA; and

4)   Seth Ravin's assistance was a substantial factor in causing harm to Oracle.

If you find that Seth Ravin assisted or aided and abetted another person's CDAFA violation, you should find for Oracle and against Seth Ravin on the CDAFA claim.

**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-37:**

For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini objects to *all* of the computer hacking instructions in their entirety as unsupported and unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury with nothing more than the bare language of the statute divorced from the heightened standards cases have made clear apply.  Rimini explicitly incorporates by reference its objections to Oracle's proposed instruction P-30.

Rimini further objects to this instruction on the basis that it is unsupported by the law. Oracle seeks to leverage a single word in one subsection of the statute to create a theory of aiding

1    and abetting liability that does not exist.   Oracle relies only on subsection 502(c)(6), which

2    states:   "Knowingly and without permission provides or *assists in providing* a means of

3    accessing a computer, computer system, or computer network in violation of this section."   Cal.

4    Penal Code § 502(c)(6) (emphasis added).   That subsection creates liability for an individual who

5    violates subsection (c)(6).   But Oracle has not even proposed jury instructions for any theory of

6    liability under subsection (c)(6).   Oracle is therefore attempting to impermissibly use one

7    subsection of the statute to create expansive vicarious liability under the entire statute.   And it is

8    attempting to do so in a specific area where courts are extremely wary of the already overbroad

9    reach of the statute.   *See Nosal*, 676 F.3d 854.   This Court should reject Oracle's novel and

10    unsupported attempt to expand this unconstitutionally overbroad statute even further.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1   **P-38.  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—DAMAGES**

2        If you find that a Defendant violated the CDAFA, you may award damages to Oracle.

3   These damages shall include amounts sufficient to compensate Oracle for the harm it suffered as

4   a result of any violations, including any expenditure reasonably and necessarily incurred to

5   verify that their computers, computer systems, computer networks, and/or data was or was not

6   altered, damaged, or deleted by the access.

7        In addition, if, you find by clear and convincing evidence that a Defendant willfully

8   violated the CDAFA with oppression, fraud, or malice, you may additionally award punitive

9   damages from that Defendant, as set forth in the instructions on punitive damages I will give you

10  later.

11       You should determine actual damages separately for each Defendant, if any, that you find

12  liable for violating the CDAFA.

13  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-38:**

14       For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

15  objects to *all* of the computer hacking instructions in their entirety as unsupported and

16  unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

17  with nothing more than the bare language of the statute divorced from the heightened standards

18  cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

19  Oracle's proposed instruction P-30.

20

21

22

23

24

25

26

27

28

1    **P-39.  NEVADA COMPUTER CRIMES LAW**

2          In addition to its other claims, Oracle contends that Rimini Street and Seth Ravin violated

3    two provisions of the Nevada computer crimes law ("NCCL"), Nevada Revised Statute

4    § 205.4765.  I will now instruct you on the law regarding the applicable provisions of the NCCL

5    and the damages you may award if you find a violation of the NCCL.  If you find that a

6    Defendant violated at least one of the NCCL's provisions that follow, you should find for Oracle

7    and against that Defendant on the NCCL claim.

8    **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-39:**

9          For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

10   objects to *all* of the computer hacking instructions in their entirety as unsupported and

11   unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

12   with nothing more than the bare language of the statute divorced from the heightened standards

13   cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

14   Oracle's proposed instruction P-30.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **P-40.  NEVADA COMPUTER CRIMES LAW—CONTINUED**

2   *First*, Oracle contends that Rimini Street and Seth Ravin violated the NCCL, Section 1.

3   To prevail under this provision, Oracle must prove each of the following by a preponderance of

4   the evidence:

5        1)     A Defendant modified, damaged, disclosed, used, transferred, concealed, retained

6             possession of, obtained or attempted to obtain access to, permitted access to or

7             caused to be accessed, or entered any of the following: data, a program or any

8             supporting documents which exist inside or outside a computer, system or

9             network;

10        2)     The Defendant did so knowingly, willfully, and without authorization; and

11        3)     Oracle was the victim of the Defendant's conduct.

12   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-40:**

13   For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

14   objects to *all* of the computer hacking instructions in their entirety as unsupported and

15   unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

16   with nothing more than the bare language of the statute divorced from the heightened standards

17   cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

18   Oracle's proposed instruction P-30.

19

20

21

22

23

24

25

26

27

28

1   **P-41.  NEVADA COMPUTER CRIMES LAW—CONTINUED**

2   *Second*, Oracle contends that Rimini Street and Seth Ravin violated the NCCL, Section 3.

3   To prevail under this provision, Oracle must prove each of the following by a preponderance of

4   the evidence:

5            1)  A Defendant damaged, altered, transferred, disclosed, concealed, used,

6                   retained possession of, or obtained or attempted to obtain access to,

7                   permitted access to or caused to be accessed any of the following: a

8                   computer, system or network;

9            2)  The Defendant did so knowingly, willfully, and without authorization; and

10           3)  Oracle was the victim of the Defendant's conduct.

11  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-41:**

12  For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

13  objects to *all* of the computer hacking instructions in their entirety as unsupported and

14  unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

15  with nothing more than the bare language of the statute divorced from the heightened standards

16  cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

17  Oracle's proposed instruction P-30.

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-42.  NEVADA COMPUTER CRIMES LAW—DEFINITIONS**

2          For the purposes of assessing Oracle's NCCL claim, the following terms have the

3    following meanings:

4          1)      "Access" means to intercept, instruct, communicate with, store data in, retrieve

5                  from or otherwise make use of any resources of a computer, network or data.

6          2)       "Data" means a representation in any form of information, knowledge, facts,

7                  concepts or instructions which is being prepared or has been formally prepared

8                  and is intended to be processed, is being processed or has been processed in a

9                  system or network.

10         3)      "Network" means a set of related, remotely connected devices and facilities,

11                 including more than one system, with the capability to transmit data among any of

12                 the devices and facilities.  The term includes, without limitation, a local, regional

13                 or global computer network.

14         4)      "Program" means an ordered set of data representing coded instructions or

15                 statements which can be executed by a computer and cause the computer to

16                 perform one or more tasks.

17         5)      "Response costs" means any reasonable costs caused by an NCCL violation,

18                 including any reasonable costs to:

19             •      Investigate the facts surrounding the violation;

20             •      Ascertain or calculate any past or future loss, injury or other damage;

21             •      Remedy, mitigate or prevent any past or future loss, injury or other

22                    damage; or

23             •      Test, examine, restore or verify the integrity of or the normal operation or

24                    use of any Internet or network site, electronic mail address, computer,

25                    system, network, component, device, equipment, data, information, image,

26                    program, signal or sound.

27         6)      "System" means a set of related equipment, whether or not connected, which is

28                 used with or for a computer.

74

1  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-42:**

2       For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

3  objects to *all* of the computer hacking instructions in their entirety as unsupported and

4  unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

5  with nothing more than the bare language of the statute divorced from the heightened standards

6  cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

7  Oracle's proposed instruction P-30.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1    **P-43.  NEVADA COMPUTER CRIMES LAW—DAMAGES**

2          If you find that a Defendant violated any of the above NCCL provisions, you may award

3    compensatory damages to Oracle.  These damages may compensate Oracle for any response

4    costs, loss, or injury that Oracle suffered as a result of the violation.

5          In addition, if, you find by clear and convincing evidence that a Defendant willfully

6    violated the NCCL with oppression, fraud, or malice, you may additionally award punitive

7    damages from that Defendant, as set forth in the instructions on punitive damages I will give you

8    later.

9          You should determine damages separately for each Defendant, if any, that you find liable

10   for violating the NCCL.

11   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-43:**

12         For the reasons set forth in its objections to Oracle's proposed instruction P-30, Rimini

13   objects to *all* of the computer hacking instructions in their entirety as unsupported and

14   unconstitutional.  To the extent they are given to the jury, Rimini objects to presenting the jury

15   with nothing more than the bare language of the statute divorced from the heightened standards

16   cases have made clear apply.  Rimini explicitly incorporates by reference its objections to

17   Oracle's proposed instruction P-30.

18

19

20

21

22

23

24

25

26

27

28

1  **P-44.  TRESPASS TO CHATTELS—CAUSATION**

2  For purposes of the assessing Oracle's trespass to chattels claim, an interference causes

3  harm if it is a substantial factor in causing harm.

4  A substantial factor is one that a reasonable person would consider to have contributed to

5  the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of

6  harm.

7  Conduct is not a substantial factor in causing harm if the same harm would have occurred

8  without that conduct.

9  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-44:**

10  Rimini agrees with the second and third paragraphs Oracle has proposed, which are

11  identical to language proposed by Rimini, but Rimini objects to this instruction to the extent it

12  does not include the additional sentence proposed by Rimini, which clarifies the correct state of

13  the law on the causation standard.  *See* Dkt. 738 (Instruction No. D-41) (including the final

14  sentence:  "Put another way, the 'substantial factor' test means that 'but for' the defendant's

15  conduct, the plaintiff's harm would not have occurred").  Rimini's additional explanation is

16  warranted under the law and clarifies the causation requirement.  *E.g.*, *Mitchell v. Gonzales*, 54

17  Cal. 3d 1041, 1052-53 (1991) (explaining that the "substantial factor test subsumes the 'but for'

18  test" and "produces the same legal conclusion as the but-for test" and further explaining that the

19  substantial cause form instruction can be confusing and should be clarified by "proper argument

20  by counsel and instruction by the court" to make clear that it includes "but for" causation); *see*

21  *Clem*, 566 F.3d at 1181; *Dang*, 422 F.3d at 804 (court must instruct jury beyond model

22  instructions when requested so that "the substance of the applicable law [is] fairly and correctly

23  covered").

24  Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

25  Objection to P-3.  Only Oracle America asserts a breach of contract claim.

26

27

28

**1**   **P-45.  BREACH OF CONTRACT**

**2**   In addition to its other claims, Oracle contends that Rimini Street breached contracts with

**3**   Oracle.  Specifically, Oracle contends that in order to gain access to Oracle's customer support

**4**   websites, each user must agree to abide by terms of use for those websites, creating a contract

**5**   between Oracle and the user.  Oracle contends that Rimini Street agreed to these terms of use,

**6**   but then violated that contract by engaging in conduct that the contract prohibited.  Oracle

**7**   contends that Defendants' breach of contract caused harm for which Defendants should pay.

**8**   To prevail on its claim for breach of contract, Oracle must prove by a preponderance of

**9**   the evidence all of the following:

**10**   1)   Oracle and Rimini Street entered into a contract;

**11**   2)   Oracle did all, or substantially all, of the significant things that the contract required

**12**   it to do;

**13**   3)   All conditions required by the contract for Oracle's performance had occurred;

**14**   4)   Rimini Street failed to do something that the contract required, or did something that

**15**   the contract prohibited; and

**16**   5)   Oracle was harmed by that failure.

**17**

**18**   **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-45:**

**19**   Rimini has proposed an instruction that contains essentially the same language as the one

**20**   Oracle proposed.  Dkt. 738 (Instruction No. D-39).  Rimini also proposed that the breach of

**21**   contract instruction include specific contracts, performance, and allegations of breach based on

**22**   the evidence at trial, which is necessary to clarify the issues for the jury and encourage it to focus

**23**   on the specific findings required in this expansive case.  Rimini therefore objects to this

**24**   instruction to the extent it does not include that additional language.  Rimini's additional

**25**   proposed language is "supported by law and has foundation in the evidence," such that Rimini is

**26**   "entitled to an instruction about [its] theory of the case."  *Clem*, 566 F.3d at1181; *see Dang*, 422

**27**   F.3d at 804.

**28**   Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*

78

1   Objection to P-3.  Only Oracle America asserts a breach of contract claim.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-46.  DAMAGES—PUNITIVE DAMAGES—LIABILITY**

If you find that Oracle is entitled to compensatory damages for actual harm or loss on any of the following claims, then you may, but are not required to, award punitive damages to Oracle:

1)      California Computer Data Access and Fraud Act (CDAFA);

2)      Nevada Computer Crime Law (NCCL);

3)      Trespass to chattels; or

4)      Intentional interference with prospective economic advantage.

You may not award punitive damages with respect to any other claim by any of the plaintiffs.

If you find that Oracle entitled to compensatory damages for actual harm or loss caused under one or more of those claims, then you may consider whether you should award punitive damages against that Defendant.  The question whether to award punitive damages against a particular Defendant must be considered separately with respect to each Defendant.

You may award punitive damages against a Defendant only if Oracle proves by clear and convincing evidence that the wrongful conduct upon which you base your finding of liability for compensatory damages was engaged in with fraud, oppression or malice on the part of that Defendant.  You cannot punish the Defendant for conduct that is lawful, or which did not cause actual harm or loss to Oracle.  For the purposes of your consideration of punitive damages only:

"Fraud" means an intentional misrepresentation, deception or concealment of a material fact known to a defendant with the intent to deprive Oracle of rights or property or to otherwise injure Oracle.

"Oppression" means despicable conduct that subjects Oracle to cruel and unjust hardship with a conscious disregard of the rights of the Oracle.

"Malice" means conduct which is intended to injure the Oracle or despicable conduct which is engaged in with a conscious disregard of the rights or safety of Oracle.

"Despicable conduct" means conduct that is so vile, base or contemptible that it would be looked down upon and despised by ordinary, decent people.

80

1   "Conscious disregard" means knowledge of the probable harmful consequences of a
2   wrongful act and a willful and deliberate failure to avoid these consequences.

3   The purposes of punitive damages are to punish a wrongdoer that acts with fraud,
4   oppression and/or malice in harming a plaintiff and deter similar conduct in the future, not to
5   make the plaintiff whole for its injuries.  Consequently, a plaintiff is never entitled to punitive
6   damages as a matter of right and whether to award punitive damages against a Defendant is
7   entirely within your discretion.

8   You are only asked to decide whether punitive damages would be proper and justified in
9   this case.  You are not asked to determine an amount of punitive damages.

10  **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-46:**

11  Rimini has proposed an instruction that is nearly identical.  Dkt. 738 (Instruction No. D-
12  43).  The only differences are:  (1) identifying the correct Oracle plaintiffs, (2) Oracle's inclusion
13  of trespass to chattels as a predicate for punitive damages, and (3) Oracle's omission of the
14  managing agent paragraph included in Rimini's instruction.

15  Because the parties agreed to a separate managing agent instruction (J-40), Rimini does
16  not object to the omission of the managing agent language in this instruction.

17  Rimini objects to the inclusion of trespass to chattels as allowing for punitive damages.
18  Oracle never alleged that it was seeking punitive damages for trespass to chattels.  *See* Dkt. 146
19  ¶¶ 146-151.  Instead, Oracle claimed that it sought to recover only the damages "it sustained as a
20  result of such trespass" along with injunctive relief.  *Id.*  The parties have also agreed on trespass
21  instructions that make no reference to punitive damages.  Oracle's last-second attempt to obtain
22  punitive damages for a cause of action for which it has never claimed punitive damages comes to
23  the unfair surprise of Rimini and should be denied.

24  Rimini also objects to the extent this instruction conflates the Oracle entities.  *See supra*
25  Objection to P-3.

26  Rimini also notes that it has proposed additional punitive damages instructions that are
27  supported by the law and applicable to the evidence in this case.  *See*, *e.g.*, *Philip Morris USA v.*
28  *Williams*, 549 U.S. 346, 357 (2007) ("where the risk" of the jury imposing punitive damages

81

1   improperly "is a significant one … *a court, upon request, **must** protect against that risk*") (emphasis

2   added); *Dang*, 422 F.3d at 806 (error to not provide punitive damages instructions that "fairly and

3   correctly covered" "the substance of the applicable law" even when proposed instructions were not

4   model instructions).  Those instructions, which are non-argumentative and fully supported by law,

5   are necessary to protect against the risk of the jury improperly imposing punitive damages and to

6   fully and correctly cover the substance of the applicable law.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OBJECTIONS TO ORACLE'S ADDITIONAL PROPOSED JURY INSTRUCTIONS

1  **P-47.  DAMAGES—PUNITIVE DAMAGES—AMOUNT [FOR SECOND PHASE]**

2       There are no fixed standards for determining the amount of a punitive damage award; the

3  amount, if any, is left to your sound discretion, to be exercised without passion or prejudice and

4  in accordance with the following governing principles.

5       The amount of a punitive damage award is not to compensate the Oracle for harm

6  suffered but what is reasonably necessary (in light of the Defendant's financial condition) and

7  fairly deserved (in light of the blameworthiness and harmfulness inherent in the Defendant's

8  conduct) to punish and deter the Defendant and others from engaging in conduct such as that

9  warranting punitive damages in this case.  Your award cannot be more than otherwise warranted

10  by the evidence in this case merely because of the wealth of the Defendant.  Your award cannot

11  either punish the defendant for conduct injuring others who are not parties to this litigation or

12  financially annihilate or destroy the Defendant in light of the Defendant's financial condition.

13       In determining the amount(s) of your punitive damage award(s), you should consider the

14  following guideposts separately for each defendant:

15      1)    The degree of reprehensibility of the Defendant's conduct, in light of (a) the

16            culpability and blameworthiness of the Defendant's fraudulent, oppressive and/or

17            malicious misconduct under the circumstances of this case; (b) whether the

18            conduct injuring Oracle that warrants punitive damages in this case was part of a

19            pattern of similar conduct by the defendant; and (c) any mitigating conduct by the

20            Defendant, including any efforts to settle the dispute.

21      2)    The ratio of your punitive damage award to the actual harm inflicted on Oracle by

22            the conduct warranting punitive damages in this case, since the measure of

23            punishment must be both reasonable and proportionate to the amount of harm to

24            Oracle and to the compensatory damages recovered by Oracle in this case.

25      3)    How your punitive damages award compares to other civil or criminal penalties

26            that could be imposed for comparable misconduct, since punitive damages are to

27            provide a means by which the community can express its outrage or distaste for

28

1         the misconduct of a fraudulent, oppressive or malicious defendant and deter and

2         warn others that such conduct will not be tolerated.

3 **RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-47:**

4       This instruction is similar in content to the one proposed by Rimini as Instruction 48.

5 Dkt. 738 (Instruction No. D-48).  Oracle relied on the Nevada model instruction (12PD.2),

6 whereas Rimini relied on the California model instruction (CACI 3949).

7       Rimini believes that the CACI 3949 instruction is a more accessible instruction for the

8 jury, which sets forth in a more plain language style the relevant requirements, and therefore

9 requests that the Court give that instruction.

10       However, Rimini agrees with the inclusion of the third factor in the Nevada instruction

11 related to comparable civil penalties, which describes one of the relevant factors set forth in *State*

12 *Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003).  Rimini therefore proposes

13 that the Court give the CACI 3949 instruction as proposed by Rimini, but add as a new

14 subsection (c) the language from the Nevada instruction on comparable civil penalties, as set

15 forth below (additions underlined).

16       Rimini objects to the extent this instruction conflates the Oracle entities.  *See supra*

17 Objection to P-3.

18       Rimini also notes that it has proposed additional punitive damages instructions that are

19 supported by the law and applicable to the evidence in this case.  *See*, *e.g.*, *Philip Morris USA v.*

20 *Williams*, 549 U.S. 346, 357 (2007) ("where the risk" of the jury imposing punitive damages

21 improperly "is a significant one … *a court, upon request,* **must** *protect against that risk*") (emphasis

22 added); *Dang*, 422 F.3d at 806 (error to not provide punitive damages instructions that "fairly and

23 correctly covered" "the substance of the applicable law" even when proposed instructions were not

24 model instructions).  Those instructions, which are non-argumentative and fully supported by law,

25 are necessary to protect against the risk of the jury improperly imposing punitive damages and to

26 fully and correctly cover the substance of the applicable law.

27       *****

28

1   [Proposed Revised Instruction No. D-48:]

2   You must now decide the amount, if any, that you should award Oracle America and/or

3   Oracle International Corporation in punitive damages.  There is no right to punitive damages.

4   Accordingly, you need not award punitive damages even if you have found that the standard for

5   imposing punitive damages has been satisfied.

6   The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed

7   the plaintiff and to discourage similar conduct in the future.  There is no fixed formula for

8   determining the amount of punitive damages and you are not required to award any punitive

9   damages.  If you decide to award punitive damages, you should consider all of the following

10   factors separately in determining the amount:

11   (a)   How reprehensible was that defendant's conduct? In deciding how reprehensible a

12   defendant's conduct was, you may consider, among other factors:

13   1)   Whether the conduct caused physical harm;

14   2)   Whether the defendant disregarded the health or safety of others;

15   3)   Whether Oracle America and/or Oracle International Corporation was financially

16   weak or vulnerable and the Defendant knew Oracle America and/or Oracle

17   International Corporation was financially weak or vulnerable and took advantage

18   of it;

19   4)   Whether Defendant's conduct involved a pattern or practice; and

20   5)   Whether Defendant acted with trickery or deceit.

21   (b)   Is there a reasonable relationship between the amount of punitive damages and

22   Oracle America and/or Oracle International Corporation harm that Rimini Street and/or Seth

23   Ravin knew was likely to occur because of its conduct?

24   (c)   How your punitive damages award compares to other civil or criminal penalties

25   that could be imposed for comparable misconduct, since punitive damages are to provide a

26   means by which the community can express its outrage or distaste for the misconduct of a

27   fraudulent, oppressive or malicious defendant and deter and warn others that such conduct will

28   not be tolerated.

85

1          (d)      In view of Defendant's financial condition, what amount is necessary to punish it

2   and discourage future wrongful conduct?  You may not increase the punitive award above an

3   amount that is otherwise appropriate merely because a defendant has substantial financial

4   resources.  Any award you impose may not exceed Rimini Street and/or Seth Ravin's ability to

5   pay.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1    P-48.  VERDICT FORM—DUPLICATIVE DAMAGES**

2         Oracle seeks an award of damages under multiple claims or legal theories.

3         After each claim or legal theory on your verdict form, there is a space for the amount of

4    damages, if any, that you intend to award Oracle under that claim or legal theory.  The amount

5    you enter into these spaces should include all the damages that you conclude Oracle may recover

6    on that claim or legal theory, regardless whether the same damages are duplicated under another

7    claim or legal theory.

8         However, Oracle can only recover once for each harm or item of damage.  Therefore, at

9    the end of the form there are spaces for the "total non-duplicative damages" against each

10   Defendant.

11        You are instructed to write the total amount of damages you intend to award to Oracle for

12   all the harm caused by all the violations for which you found that Defendant liable, without

13   counting damages for the same harm twice as to that Defendant.  When determining this total

14   amount you must exclude copyright statutory damages.

15        For example, if you find for Oracle on more than one claim, and conclude that Oracle

16   suffered the same harm and is entitled to the same damages on more than one claim, only include

17   those damages once in the "total non-duplicative damages."  Likewise, if you conclude that

18   Oracle suffered different and distinct harm on different claims, resulting in different damages on

19   those claims, you should add the different damages figures resulting from those claims together

20   for the "total non-duplicative damages" number.

**21   RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED INSTRUCTION P-48:**

22        Oracle sets forth *no authority* for instruction P-48, which is premature, could mislead or

23   confuse the jury, and is legally erroneous.  The Court should reject this instruction and either (i)

24   adopt Rimini's proposed instruction D-52 instead, or (ii) defer ruling on this instruction until

25   after the Court determines the structure and content of the verdict form.

26        This instruction describes in detail the steps the jury is required to take in filling out the

27   verdict form, and it can therefore be understood only in reference to the verdict form.  Rimini

28   submits that, in the interest of efficiency and fairness, the structure and content of the verdict

1  form should not be determined until after Oracle's case-in-chief.  By that time Oracle could, for

2  example, elect statutory or actual damages, which is commonly done in copyright infringement

3  actions before the case is submitted to the jury.  Or Oracle could elect to abandon claims or

4  theories, as it continues to do in its recent filings.

5       If, however, the Court elects to determine the proper verdict form before the close of

6  Oracle's case-in-chief, Rimini respectfully reserves the right to propose revisions to it based on

7  the arguments made and evidence that is actually introduced and admitted.  *See* Fed. R. Civ. P.

8  51(a)(2) ("After the close of evidence, a party may … file requests for instructions on issues that

9  could not reasonably have been anticipated by an earlier time"); *id.* advisory cmt. notes (2003)

10  ("The risk in directing a pretrial request deadline is that trial evidence may raise new issues or

11  reshape issues the parties thought they had understood"); *cf. Harrington v. Scribner*, 785 F.3d

12  1299, 1303 (9th Cir. 2015) ("After the close of evidence the court reviewed the proposed jury

13  instructions and … asked whether [they] had any 'corrections, additions, deletions, modifications

14  or objections").

15       Oracle's proposed instruction P-48 form should be rejected because it will confuse and

16  mislead the jury.  Although it purports to describe how the jury should avoid awarding

17  duplicative damages, the process described in the instruction is so convoluted that it will likely

18  result in an impermissible double damages award or a calculation error.  For example, it states

19  that the jury should award Oracle will all the damages Oracle "may recover," without reference

20  to burdens of proof or prior instructions.  It also states, without explanation, that "[w]hen

21  determining this total amount you must exclude copyright statutory damages."  This is the first

22  mention in Oracle's proposed instructions of the relationship between statutory damages and

23  actual damages, and it is buried at the end of the fourth paragraph of an instruction not about

24  copyright damages.

25       Oracle also uses undefined terms that are not supported by any cited authority, such as

26  "item of damage."  The instruction also states that Oracle is entitled to "all the damages" under

27  any "claim or legal theory," but it does not define legal theory for the jury.

28       Rimini therefore requests that the Court defer ruling on this jury instruction or,

1   alternatively, reject Oracle's instruction and adopt Rimini's proposed instruction 52.

2                           **II.      CONCLUSION**

3       For these reasons, Rimini respectfully requests that this Court reject Oracle's proposed

4   instructions.

5
    DATED:        September 11, 2015              SHOOK, HARDY & BACON LLP
6

7                                                By: ___/s/ *Robert H. Reckers*_____
8                                                Robert H. Reckers

9                                                *Attorneys for Defendants*
                                                 *Rimini Street, Inc. and Seth Ravin*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **<u>CERTIFICATE OF SERVICE</u>**

2   I hereby certify that on September 11, 2015, I electronically filed the foregoing document

3  with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic

4  case filing system.  The electronic case filing system sent a "Notice of Electronic Filing" to the

5  attorneys of record who have consented in writing to accept this Notice as service of this

6  document by electronic means.

7

8         By: __/s/ *Robert H. Reckers*_____

9          Robert H. Reckers

10

11         *Attorney for Defendants*
       *Rimini Street, Inc. and Seth Ravin*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28