1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    WILLIAM ISAACSON (pro hac vice)
6   KAREN DUNN (pro hac vice)
    5301 Wisconsin Ave, NW
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES, SCHILLER & FLEXNER LLP
11  STEVEN C. HOLTZMAN (pro hac vice)
    KIERAN P. RINGGENBERG (pro hac vice)
12  1999 Harrison Street, Suite 900
    Oakland, CA 94612
13  Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
14  sholtzman@bsfllp.com
    kringgenberg@bsfllp.com
15  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle America, Inc., and
16  Oracle International Corp.

    MORGAN, LEWIS & BOCKIUS LLP
    THOMAS S. HIXSON (pro hac vice)
    KRISTEN A. PALUMBO (pro hac vice)
    One Market Street
    Spear Street Tower
    San Francisco, CA 94105-1596
    Telephone: (415) 442-1000
    Facsimile: (415) 442-1001
    thomas.hixson@morganlewis.com
    kristen.palumbo@morganlewis.com

    DORIAN DALEY (pro hac vice)
    DEBORAH K. MILLER (pro hac vice)
    JAMES C. MAROULIS (pro hac vice)
    ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    dorian.daley@oracle.com
    deborah.miller@oracle.com
    jim.maroulis@oracle.com

17

18                **UNITED STATES DISTRICT COURT**

19                    **DISTRICT OF NEVADA**

20

21  ORACLE USA, INC., a Colorado corporation;     CASE NO. 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
22  corporation; and ORACLE INTERNATIONAL         **PLAINTIFFS ORACLE USA, INC.,**
    CORPORATION, a California corporation,        **ORACLE AMERICA, INC., AND**
23                                                **ORACLE INTERNATIONAL**
                                                  **CORPORATION'S OBJECTIONS TO**
24              Plaintiffs,                       **DEFENDANTS RIMINI STREET INC.'S**
         v.                                       **AND SETH RAVIN'S [PROPOSED]**
25                                                **JURY INSTRUCTIONS**
    RIMINI STREET, INC., a Nevada corporation;
26  SETH RAVIN, an individual,                    **[REDACTED]**

27              Defendants.

28

────────────────────────────────────────────────────
      ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1

**TABLE OF CONTENTS**

2

3   RIMINI'S PROPOSED JURY INSTRUCTION NO. 1:  PRELIMINARY
4       INSTRUCTION ON ORACLE ...................................................................... 5

5       ORACLE'S OBJECTION TO RIMINI'S JURY INSTRUCTION NO. 1 ....................... 5

6   RIMINI'S PROPOSED JURY INSTRUCTION NO. 2:  BURDEN OF PROOF—
        PREPONDERANCE OF THE EVIDENCE .................................................... 7
7
8       ORACLE'S OBJECTION TO RIMINI'S JURY INSTRUCTION NO. 2 ...................... 7

9   RIMINI'S PROPOSED JURY INSTRUCTION NO. 3:  COPYRIGHT—DEFINED ................ 8

10      ORACLE'S OBJECTION TO RIMINI'S JURY INSTRUCTION NO. 3 ...................... 8

11  RIMINI'S PROPOSED JURY INSTRUCTION NO. 4: COPYRIGHT—SUBJECT
        MATTER—GENERALLY ..................................................................... 10
12
13      ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
14          NO. 4 ................................................................................................ 11

15  RIMINI'S PROPOSED JURY INSTRUCTION NO. 5:  COPYRIGHT
        INFRINGEMENT—ORIGINALITY ........................................................ 13
16
17      ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
            NO. 5 ................................................................................................ 13

18  RIMINI'S PROPOSED JURY INSTRUCTION NO. 6:  COPYRIGHT INTERESTS—
        DERIVATIVE WORK ......................................................................... 14
19
20      ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
            NO. 6 ................................................................................................ 14

21  RIMINI'S PROPOSED JURY INSTRUCTION NO. 7:  COPYRIGHT
        INFRINGEMENT ............................................................................... 15
22
23      ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
24          NO. 7 ................................................................................................ 15

25  RIMINI'S PROPOSED JURY INSTRUCTION NO. 8:  COPYRIGHT—DIRECT
        INFRINGEMENT ............................................................................... 16
26      ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
27          NO. 8 ................................................................................................ 16

28  RIMINI'S PROPOSED JURY INSTRUCTION NO. 9:  COPYRIGHT—ACCESS AND
        SUBSTANTIAL SIMILARITY ............................................................... 18

i

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 9 ................................................................................................................... 18

RIMINI'S PROPOSED JURY INSTRUCTION NO. 10:  COPYRIGHT—
CONTRIBUTORY INFRINGEMENT ......................................................................... 19

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 10 ................................................................................................................. 19

RIMINI'S PROPOSED JURY INSTRUCTION NO. 11:  COPYRIGHT—VICARIOUS
INFRINGEMENT ................................................................................................... 21

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 11 ................................................................................................................. 21

RIMINI'S PROPOSED JURY INSTRUCTION NO. 12:  COPYRIGHT MISUSE
DEFINED ............................................................................................................. 23

RIMINI'S PROPOSED JURY INSTRUCTION NO. 13:  COPYRIGHT MISUSE—
ELEMENTS ........................................................................................................... 23

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NOS. 12 and 13 ................................................................................................... 23

RIMINI'S PROPOSED JURY INSTRUCTION NO. 14:   TOMORROWNOW
EVIDENCE ........................................................................................................... 26

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 14 ................................................................................................................. 26

RIMINI'S PROPOSED JURY INSTRUCTION NO. 15:  COPYRIGHT DAMAGES—
GENERALLY ........................................................................................................ 28

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 15 ................................................................................................................. 29

ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY
INSTRUCTION NO. 15 ........................................................................ 31

P-52.   ORACLE'S PROPOSED ADDITIONAL INSTRUCTION
ON BURDEN OF PROOF ON DAMAGES ............................... 31

RIMINI'S PROPOSED JURY INSTRUCTION NO. 16:  COPYRIGHT DAMAGES—
ACTUAL DAMAGES .............................................................................................. 32

RIMINI'S PROPOSED JURY INSTRUCTION NO. 17:  COPYRIGHT DAMAGES—
FAIR MARKET VALUE OF USE—GENERALLY ...................................................... 32

RIMINI'S PROPOSED JURY INSTRUCTION NO. 18:  COPYRIGHT DAMAGES—
FAIR MARKET VALUE OF USE—ALTERNATIVES ................................................. 33

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 16, 17 AND 18 ........................................................................................ 33

ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY INSTRUCTION NO. 16 .......................................................................... 38

    P-49.   COPYRIGHT—DAMAGES—ACTUAL DAMAGES INTRODUCTION .......................................................... 38

ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY INSTRUCTION NO. 17 .......................................................................... 39

    P-50.   COPYRIGHT—ACTUAL DAMAGES—FAIR MARKET VALUE .................................................................. 39

RIMINI'S PROPOSED JURY INSTRUCTION NO. 19:  COPYRIGHT DAMAGES— ORACLE'S LOST PROFITS—GENERALLY ............................................... 41

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 19 .................................................................................... 41

RIMINI'S PROPOSED JURY INSTRUCTION NO. 20:  COPYRIGHT DAMAGES— ORACLE'S LOST PROFITS—CAUSATION .............................................. 42

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 20 .................................................................................... 42

RIMINI'S PROPOSED JURY INSTRUCTION NO. 21:  COPYRIGHT DAMAGES— DEFENDANTS' PROFITS .......................................................... 45

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 21 .................................................................................... 46

RIMINI'S PROPOSED JURY INSTRUCTION NO. 22:  COPYRIGHT DAMAGES— STATUTORY DAMAGES .......................................................... 48

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 22 .................................................................................... 48

RIMINI'S PROPOSED JURY INSTRUCTION NO. 23:  INDUCING BREACH OF CONTRACT ........................................................................ 50

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 23 .................................................................................... 51

RIMINI'S PROPOSED JURY INSTRUCTION NO. 24:  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .................... 53

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 24 .................................................................................... 55

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY
INSTRUCTION NO. 24 .......................................................................... 57

P-51.   ORACLE'S PROPOSED JURY INSTRUCTION ..................... 57

RIMINI'S PROPOSED JURY INSTRUCTION NO. 25:  ADVANTAGE—FREE
COMPETITION.......................................................................................... 59

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 25 ..................................................................................................... 60

RIMINI'S PROPOSED JURY INSTRUCTION NO. 26:  INDUCING BREACH OF
CONTRACT AND INTENTIONAL INTERFERENCE—KNOWLEDGE ................. 61

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 26 ..................................................................................................... 61

RIMINI'S PROPOSED JURY INSTRUCTION NO. 27:  INDUCING BREACH OF
CONTRACT AND INTENTIONAL INTERFERENCE—INTENT.............................. 62

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 27 ..................................................................................................... 62

RIMINI'S PROPOSED JURY INSTRUCTION NO. 28:  INDUCING BREACH OF
CONTRACT AND INTENTIONAL INTERFERENCE—CAUSATION ..................... 64

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 28 ..................................................................................................... 64

RIMINI'S PROPOSED JURY INSTRUCTION NO. 29:  INDUCING BREACH OF
CONTRACT AND INTENTIONAL INTERFERENCE—COMPENSATORY
DAMAGES ............................................................................................... 65

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 29 ..................................................................................................... 66

RIMINI'S PROPOSED JURY INSTRUCTION NO. 30:  FEDERAL COMPUTER
FRAUD AND ABUSE ACT—INTRODUCTION .......................................... 67

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
NO. 30 ..................................................................................................... 67

RIMINI'S PROPOSED JURY INSTRUCTION NO. 31:  FEDERAL COMPUTER
FRAUD AND ABUSE ACT—OBTAINING INFORMATION FROM A
PROTECTED COMPUTER ........................................................................... 69

RIMINI'S PROPOSED JURY INSTRUCTION NO. 32:  FEDERAL COMPUTER
FRAUD AND ABUSE ACT—INTENTIONAL DAMAGE TO A PROTECTED
COMPUTER ............................................................................................... 69

RIMINI'S PROPOSED JURY INSTRUCTION NO. 33:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—RECKLESS DAMAGE TO A PROTECTED COMPUTER ................................................................................................ 70

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOs. 31, 32 and 33 ..................................................................................... 71

RIMINI'S PROPOSED JURY INSTRUCTION NO. 34:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES ..................................... 74

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 34 .......................................................................................................... 74

RIMINI'S PROPOSED JURY INSTRUCTION NO. 35:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED .................................... 76

RIMINI'S PROPOSED JURY INSTRUCTION NO. 36:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED .................................... 76

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 35 AND 36 ................................................................................... 77

RIMINI'S PROPOSED JURY INSTRUCTION NO. 37:  NEVADA COMPUTER CRIMES LAW—CONTINUED ...................................................... 79

RIMINI'S PROPOSED JURY INSTRUCTION NO. 38:  NEVADA COMPUTER CRIMES LAW—CONTINUED ...................................................... 79

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 37 AND 38 ................................................................................... 80

RIMINI'S PROPOSED JURY INSTRUCTION NO. 39:  BREACH OF CONTRACT ............ 82

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 39 .......................................................................................................... 82

RIMINI'S PROPOSED JURY INSTRUCTION NO. 40:  NOMINAL DAMAGES— BREACH OF CONTRACT ............................................................................ 84

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 40 .......................................................................................................... 84

RIMINI'S PROPOSED JURY INSTRUCTION NO. 41:  TRESPASS TO CHATTELS— CAUSATION ................................................................................................. 85

ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 41 .......................................................................................................... 85

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RIMINI'S PROPOSED JURY INSTRUCTION NO. 42:  PUNITIVE DAMAGES—
          PURPOSE [PHASE 1]...................................................................................... 86

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NO. 42 ............................................................................................. 86

RIMINI'S PROPOSED JURY INSTRUCTION NO. 43:  DAMAGES—PUNITIVE
          DAMAGES—LIABILITY [PHASE 1]............................................................. 88

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NO. 43 ............................................................................................. 89

RIMINI'S PROPOSED JURY INSTRUCTION NO. 44:  PUNITIVE DAMAGES—
          SPECIFIC HARM TO PLAINTIFF [PHASE 1] .............................................. 91

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NO. 44 ............................................................................................. 91

RIMINI'S PROPOSED JURY INSTRUCTION NO. 45:  PUNITIVE DAMAGES—
          OBJECTIVELY REASONABLE CONDUCT [PHASE 1]............................... 93

RIMINI'S PROPOSED JURY INSTRUCTION NO. 46:  PUNITIVE DAMAGES—
          INDUSTRY STANDARDS [PHASE 1] ......................................................... 93

RIMINI'S PROPOSED JURY INSTRUCTION NO. 47:  PUNITIVE DAMAGES—
          FAIR NOTICE [PHASE 1]............................................................................. 93

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NOS. 45, 46 AND 47 ....................................................................... 93

RIMINI'S PROPOSED JURY INSTRUCTION NO. 48:  DAMAGES—PUNITIVE
          DAMAGES—NO RIGHT TO PUNITIVE DAMAGES [PHASE TWO]..................... 95

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NO. 48 ............................................................................................. 96

RIMINI'S PROPOSED JURY INSTRUCTION NO. 49:  PUNITIVE DAMAGES—
          SPECIFIC HARM TO PLAINTIFF [PHASE TWO]...................................... 97

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NO. 49 ............................................................................................. 97

RIMINI'S PROPOSED JURY INSTRUCTION NO. 50:  PUNITIVE DAMAGES—
          RELATIONSHIP TO COMPENSATORY DAMAGES [PHASE TWO]..................... 98

          ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
                    NO. 50 ............................................................................................. 98

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RIMINI'S PROPOSED JURY INSTRUCTION NO. 51:  PUNITIVE DAMAGES—
       FINANCIAL CONDITION [PHASE TWO] ................................................................. 100

       ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
              NO. 51 ....................................................................................................... 100

RIMINI'S PROPOSED JURY INSTRUCTION NO. 52:  DUPLICATIVE DAMAGES ........ 101

       ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION
              NO. 52 ....................................................................................................... 101

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CORRESPONDENCE CHART**

The following chart identifies the Oracle proposed instructions (from Dkt. No. 752 and prefaced with "P-") that correspond to the Defendants' proposed instructions (from Dkt. 738 and prefaced with "D-").  The page number column identifies the page where the referenced instruction begins in each side's original proposed instruction set:

| DEFS' J.I. NO. | TITLE | PAGE NO. | PLTFS' J.I. NO. | TITLE | PAGE NO. |
|---|---|---|---|---|---|
| **D-1** | Preliminary Instruction on Oracle | 1 | **P-3** | Oracle Entities and Claims | 5 |
| **D-2** | Burden of Proof – Preponderance of the Evidence | 2 | **P-1** | Burden of Proof – Preponderance of the Evidence | 1 |
| **D-3** | Copyright – Defined | 3 | **P-4** | Copyright – Introduction and Definitions | 7 |
| **D-4** | Copyright – Subject Matter – Generally | 4 | **n/a** | | |
| **D-5** | Copyright Infringement - Originality | 6 | **P-4** | Copyright – Introduction and Definitions *[last paragraph]* | 7 |
| **D-6** | Copyright Interests – Derivative Work | 7 | **P-4** | Copyright – Introduction and Definitions *[penultimate paragraph]* | |
| **D-7** | Copyright Infringement | 8 | **n/a** | | 7 |
| **D-8** | Copyright – Direct Infringement | 9 | **P-13** | Copyright – Direct Infringement | 25 |
| **D-9** | Copyright – Access and Substantial Similarity | 10 | **P-14** | Copyright – Access and Substantial Similarity | 27 |
| **D-10** | Copyright – Contributory Infringement | 11 | **P-16** | Copyright – Contributory Infringement | 31 |
| **D-11** | Copyright – Vicarious Infringement | 12 | **P-17** | Copyright – Vicarious Infringement | 33 |
| **D-12** | Copyright Misuse Defined | 13 | **n/a** | | |
| **D-13** | Copyright Misuse – Elements | 14 | **n/a** | | |
| **D-14** | TomorrowNow Evidence | 15 | **P-2** | TomorrowNow Evidence | 3 |
| **D-15** | Copyright Damages - Generally | 16 | **P-19** | Copyright – Damages – Actual Damages Introduction | 37 |

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

| DEFS' J.I. NO. | TITLE | PAGE NO. | PLTFS' J.I. NO. | TITLE | PAGE NO. |
|---|---|---|---|---|---|
| **D-16** | Copyright Damages – Actual Damages | 18 | **P-18** | Copyright Damages – Causation | 35 |
| | | | **P-19** | Copyright – Damages – Actual Damages Introduction | 37 |
| **D-17** | Copyright Damages – Fair Market Value of Use – Generally | 19 | **P-20** | Copyright – Actual Damages – Lost Profits | 39 |
| **D-18** | Copyright Damages – Fair Market Value of Use – Alternatives | 21 | **P-49** | Copyright – Damages – Actual Damages Introduction | |
| | | | **P-50** | Copyright – Actual Damages – Fair Market Value | |
| **D-19** | Copyright Damages – Oracle's Lost Profits - Generally | 22 | **P-20** | Copyright – Actual Damages – Lost Profits | 39 |
| **D-20** | Copyright Damages – Oracle's Lost Profits - Causation | 23 | **P-21** | Copyright – Actual Damages – Fair Market Value | 41 |
| **D-21** | Copyright Damages – Defendants' Profits | 24 | **P-22** | Copyright – Damages – Infringer's Profits | 43 |
| **D-22** | Copyright Damages – Statutory Damages | 26 | **P-23** | Statutory Damages | 46 |
| **D-23** | Inducing Breach of Contract | 27 | **P-24** | Inducing Breach of Contract | 48 |
| **D-24** | Intentional Interference with Prospective Economic Advantage | 29 | **P-25** | Intentional Interference with Prospective Economic Advantage | 51 |
| **D-25** | Intentional Interference with Prospective Economic Advantage – Free Competition | 32 | **n/a** | | |
| **D-26** | Inducing Breach of Contract and Intentional Interference - Knowledge | 34 | **P-26** | Inducing Breach of Contract and Intentional Interference - Knowledge | 54 |
| **D-27** | Inducing Breach of Contract and Intentional Interference – Intent | 35 | **P-27** | Inducing Breach of Contract and Intentional Interference – Intent | 56 |
| **D-28** | Inducing Breach of Contract and Intentional Interference - Causation | 36 | **P-28** | Inducing Breach of Contract and Intentional Interference – Causation | 58 |
| **D-29** | Inducing Breach of Contract and Intentional Interference – Compensatory Damages | 37 | **P-29** | Intentional Interference and Inducing Breach of Contract – Compensatory Damages | 60 |
| **D-30** | Federal Computer Fraud and Abuse Act - Introduction | 39 | **P-30** | Federal Computer Fraud and Abuse Act – Introduction | 64 |

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

| DEFS' J.I. NO. | TITLE | PAGE NO. | PLTFS' J.I. NO. | TITLE | PAGE NO. |
|---|---|---|---|---|---|
| D-31 | Federal Computer Fraud and Abuse Act – Obtaining Information from a Protected Computer | 40 | P-31 | Federal Computer Fraud and Abuse Act – Obtaining Information from a Protected Computer | 66 |
| D-32 | Federal Computer Fraud and Abuse Act – Intentional Damage to A Protected Computer | 41 | P-32 | Federal Computer Fraud and Abuse Act – Intentional Damage to a Protected Computer | 68 |
| D-33 | Federal Computer Fraud and Abuse Act – Reckless Damage to a Protected Computer | 42 | P-33 | Federal Computer Fraud and Abuse Act – Reckless Damage to a Protected Computer | 69 |
| D-34 | Federal Computer Fraud and Abuse Act - Damages | 43 | P-34 | Federal Computer Fraud and Abuse Act – Damages | 72 |
| D-35 | California Computer Data Access and Fraud Act – Continued | 44 | P-35 | California Computer Data Access and Fraud Act – Continued | 74 |
| D-36 | California Computer Data Access and Fraud Act – Continued | 45 | P-36 | California Computer Data Access and Fraud Act - Continued | 76 |
| D-37 | Nevada Computer Crimes Law – Continued | 46 | P-40 | Nevada Computer Crimes Law – Continued | 84 |
| D-38 | Nevada Computer Crimes Law - Continued | 47 | P-41 | Nevada Computer Crimes Law – Continued | 86 |
| D-39 | Breach of Contract | 48 | P-45 | Breach of Contract | 95 |
| D-40 | Nominal Damages – Breach of Contract | 49 | [none] | | |
| D-41 | Trespass to Chattels - Causation | 50 | P-44 | Trespass to Chattels - Causation | 93 |
| D-42 | Punitive Damages – Purpose [Phase 1] | 51 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-43 | Damages – Punitive Damages – Liability [Phase 1] | 52 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-44 | Punitive Damages – Specific Harm to Plaintiff [Phase 1] | 54 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-45 | Punitive Damages – Objectively Reasonable Conduct [Phase 1] | 55 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-46 | Punitive Damages – Industry Standards [Phase 1] | 56 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-47 | Punitive Damages – Fair Notice [Phase 1] | 57 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-48 | Damages – Punitive Damages – No Right | 58 | P-46 | Damages – Punitive Damages – Liability | 97 |

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

| DEFS' J.I. NO. | TITLE | PAGE NO. | PLTFS' J.I. NO. | TITLE | PAGE NO. |
|---|---|---|---|---|---|
| | Punitive Damages [Phase Two] | | | | |
| D-49 | Punitive Damages – Specific Harm to Plaintiff [Phase Two] | 60 | P-46 | Damages – Punitive Damages – Liability | 97 |
| D-50 | Punitive Damages – Relationship to Compensatory Damages [Phase Two] | 61 | P-47 | Damages – Punitive Damages – Amount [For Second Phase] | 101 |
| D-51 | Punitive Damages – Financial Condition [Phase Two] | 62 | P-47 | Damages – Punitive Damages – Amount [For Second Phase] | 101 |
| D-52 | Duplicative Damages | 63 | P-48 | Verdict Form – Duplicative Damages | 105 |

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    In accordance with the Court's Order Regarding Trial ("Order re Trial"), Dkt. 688,

2    Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

3    (collectively, "Oracle" or "Plaintiffs") submits these objections to Defendants Rimini Street

4    Inc.'s and Seth Ravin's (together, "Rimini") Proposed Jury Instructions, Dkt. 738.

5                                      **INTRODUCTION**

6    Oracle regrets that the parties have not been able to agree on a larger portion of the jury

7    instructions.  The reason for this disagreement is Rimini's refusal to follow the Court's clear

8    guidance that jury instructions "should be short, concise, understandable and neutral statements

9    of law.  Argumentative or formula instructions are improper, will not be given, and should not be

10   submitted."  Order re Trial at 3.  Instead, as detailed below, Rimini has insisted on instructions

11   that deviate from model instructions in substantial measure to add or repeat unnecessary,

12   argumentative material, as well as instructions made up from whole cloth which that misstate the

13   law.  A number of issues recur throughout.

14   First, through its proposed instructions, Rimini seeks to rewrite the law on causation and

15   impose an unjustified burden on Oracle for purposes of proving lost profits.  Rimini asserts that

16   Oracle must prove "but for" losses, D-20,[1] and then states repeatedly damages must not be based

17   on "speculation" or "guessing" – with more than 20 references to these concepts in its various

18   instructions.  *E.g.*, D-15, D-17, D-19, D-21, D-22, D-23, D-24, D-29, D-34.  In contrast, for

19   purposes of calculating expenses for purposes of assessing *Rimini's* expenses (which should

20   governed by the same legal standard), Rimini proposes to instruct the jury that Rimini "need only

21   provide a reasonable approximation."  D-21.  This is a textbook example of why "[j]ury

22   instructions should provide the relevant rules of law generally and avoid singling out or stressing

23   particular evidentiary items or legal theories; otherwise, the court's emphasis of certain facts or

24   issues may cause a juror to attach undue importance or credibility to the selected matters."

25   _____

26   [1] Oracle refers to Rimini's proposed jury instructions from Dkt. 738 by number as "D-" and
     refers to Oracle's proposed jury instructions from Dkt. 752 by number as "P-." Additionally,
     plaintiffs will cite The Parties' Agreed & Jointly Proposed Jury Instructions, Dkt. 750, by a "J-"
27   followed by the related instruction number.

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   Rutter Group Prac. Guide Fed. Civ. Trials & Evid. Ch. 15-B, 15:80; *see also United States v.*

2   *Hill*, 252 F.3d 919, 923 (7th Cir. 2001) ("It is best to keep the instructions concise, which is

3   achieved by omitting nostrums and leaving inferences to arguments of counsel. Unless it is

4   necessary to give an instruction, it is necessary not to give it, so that the important instructions

5   stand out and are remembered.") (citation omitted).

6          Second, Rimini improperly seeks to have the Court instruct the jury that they should

7   decide certain issues only "if" they find that Rimini infringed Oracle's copyrights.  D-8, D-10,

8   D-11, D-15, D-22.  The Court already found copyright infringement for Database software

9   copies and certain PeopleSoft software copies, and Rimini has since stipulated that it is not

10  asserting *any* license defense for PeopleSoft software copies.  The jury must decide the extent of

11  Rimini's infringement, and the amount of damages, and it is incorrect to suggest that there is a

12  scenario under which the jury need not assess damages or decide other issues, such as whether

13  Seth Ravin is personally liable for Rimini's established copyright infringement.[2]

14         Third, Rimini proposes certain unfounded and improper damages instructions, including

15  on the "hypothetical license" damages measure.  Rimini previously argued that there was *no*

16  basis to opine on a hypothetical license damages due to the lack of "benchmark" or

17  "comparable" licenses.  Defendants' Motion to Exclude Expert Testimony of Elizabeth Dean

18  ("Dean Motion"), Dkt. 563 at 1-2, 7-8.  Oracle stated that it would not seek hypothetical license

19  damages based on Rimini's copying of PeopleSoft, JD Edwards, and Siebel software and support

20  materials.  Faced with the possible exclusion of their damages expert's opinion, Rimini did an

21  about-face, and it now seeks to instruct the jury that they *should* consider and calculate

22  hypothetical license damages, but that the assessment should *only* consider certain costs to

23  Rimini calculated by their expert (and not any benchmark transaction).  D-16, D-17, D-18.  And

24

25  _____

26  [2]      Lacking any defense to Oracle's copyright infringement claim, Rimini seeks to resurrect
    a copyright misuse defense.  D-12, 13.  The Court already dismissed that defense and excluded
27  evidence on that legally insupportable defense.  Order, Dkt. 111 at 6-8; Order, Dkt. 723 at 6-7.

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   yet Rimini seeks to tell the jury that Oracle "bears the burden of proving the value of the

2   hypothetical license based on objective evidence by a preponderance of the evidence."  D-17.

3   Rimini should not be allowed to invite the jury to calculate damages based on the

4   hypothetical license.  Rimini argued that "the Ninth Circuit has never affirmed a damages award

5   based on a hypothetical license absent evidence of such a comparable transaction," Dean Motion

6   at 1, and that "no such evidence exists here," *id.* at 7.  Rimini's expert's supposed calculation of

7   the cost of a non-infringing alternative, while relevant to hypothetical license, is not sufficient to

8   support a verdict on that basis. By Rimini's own argument, any calculation of hypothetical

9   license damages by the jury without a benchmark transaction would be reversed by the Ninth

10  Circuit as undue speculation.  Dean Motion at 1, 8 (citing *Oracle Corp. v. SAP AG*, 765 F.3d

11  1081, 1093 (9th Cir. 2014)).

12  Mr. Hampton's opinion also only addresses one side of the hypothetical negotiation –

13  Rimini's – and fails to address what Oracle had to lose by agreeing to license Rimini.  It

14  therefore cannot provide a sufficient answer to the crucial question: "'what a willing buyer

15  would have been reasonably required to pay to a willing seller for plaintiffs' work.'"  *Jarvis v.*

16  *K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (quoting *Frank Music Corp. v. Metro-Goldwyn-*

17  *Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985)); *see also SAP AG*, 765 F.3d at 1089 ("Fair

18  market value in a voluntary licensing transaction between arms-length parties ordinarily lies

19  somewhere between the two poles of cost to the seller and benefit to the buyer."); *Mars, Inc. v.*

20  *Coin Acceptors, Inc.,* 527 F. 3d 1359, 1373 (Fed. Cir. 2008) ("[It] is wrong as a matter of law to

21  claim that reasonable royalty damages are capped at the cost of implementing the cheapest

22  available, acceptable, non-infringing alternative."), *mandate recalled on other grounds*, 557 F.3d

23  1377 (Fed. Cir. 2009).

24  The evidence Rimini has disclosed does not permit a jury verdict on hypothetical license,

25  and therefore the jury should not invited to calculate damages by that method.  Instead, the jury

26  should be instructed on the copyright actual damages measure that Oracle will present – lost

27  profits – and which Rimini will have every opportunity to rebut at trial.

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1         For most of Rimini's objectionable instructions, Oracle has already proposed instructions

2    which fairly address the issues.  In order to narrow the issues, Oracle has agreed in this filing to a

3    number of other of Rimini's proposals, and proposed a few additional instructions to address the

4    issues Rimini has raised.  The Correspondence Chart above identifies, for the Court's

5    convenience, the overlap between the disputed jury instructions proposed by Rimini and Oracle.

6    Where appropriate, Oracle explains in its objections how Oracle's proposed instructions

7    correctly address the disputed issue.

10                            *             *             *

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 1:  PRELIMINARY INSTRUCTION ON ORACLE**

There are three separate Oracle plaintiffs in this case:  Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation.  Not all plaintiffs assert all claims.  Oracle USA, Inc. does not assert any claims.  When I refer to "Oracle," I am referring to both "Oracle America" and "Oracle International Corporation."  If I refer to a plaintiff by its specific name, it is because only that plaintiff asserts that claim.  You must keep the different plaintiffs straight when answering the questions asked on the verdict form.  For example, only Oracle International Corporation asserts copyright infringement.  Therefore, when asked whether Oracle International Corporation has established copyright infringement, you must make sure that plaintiff Oracle International Corporation has presented specific evidence establishing its claim; evidence related to Oracle America is not necessarily relevant to Oracle International Corporation's copyright infringement claim.

**ORACLE'S OBJECTION TO RIMINI'S JURY INSTRUCTION NO. 1**

First, Rimini's instruction misstates the Oracle entities in this case by including "Oracle USA, Inc."  There is no dispute, and the parties already stipulated, that Oracle USA, Inc. was subsumed in a merger that post-dated the original complaint in this action.  Jt. Pre-Trial Order ("Joint Pretrial Order"), Dkt. No. 523, Uncontested Facts ¶ 1 at 7.  Oracle America, Inc. is its successor-in-interest.  *Id.* ¶ 4 at 7.  Oracle USA, Inc. appears on the captions because this case was filed before the merger.  *See id.*

Second, Rimini's instruction is impractical, confusing, and vague.  Rimini would instruct the jury that it must "make sure that" one Oracle entity or another "has presented specific evidence."  Rimini adds the "example" that "evidence related to Oracle America is not necessarily relevant to Oracle International Corporation's infringement claim."  But the Oracle entities are represented by the same lawyers and will make a single trial presentation.  There is no reason for the lawyers to identify which legal entity asks questions or admits an exhibit; nor is

5

1    there any reason to confuse the jury by asking them to "make sure" they engage in that

2    metaphysical exercise.  Evidence is evidence regardless of which party introduces an exhibit or

3    asks a witness a question.  If Rimini has legitimate relevance concerns it failed to address during

4    motions in limine then it may object at trial or seek specific limiting instructions.

5         Third, Rimini's instruction is unnecessary.  The Oracle entity with standing to assert

6    each claim is a legal issue for the Court, and the relevant facts about the Oracle entities and their

7    relationship are undisputed.  Joint Pretrial Order, Uncontested Facts ¶ 30 at 18 ("Oracle America

8    received support fees"); *id.* ¶¶ 2, 6 at 7; ¶ 32 at 18; ¶ 40 at 19 (Oracle International owns or is

9    exclusive licensee of copyrights and received sublicense fee of 39% of Oracle America's support

10   revenue).  There is nothing for the jury to decide.[3]

11        Fourth, Rimini's proposed "specific evidence" language is unnecessary and inappropriate

12   in an instruction about parties to the case.  Separate instructions explain the relevant evidentiary

13   standards (preponderance and clear-and-convincing evidence).  Rimini's "specific" qualifier

14   appears calculated to suggest a higher burden.

15        By contrast, Oracle's proposed instruction on the same issue, P-3, identifies the various

16   entities the jurors will see referenced in evidence, in accordance with the undisputed facts, and

17   goes no further.  Oracle's Additional Proposed Jury Instructions, Dkt. 752 at 5-6.

18

19

20

21

22

23

24   _____

25   [3]      Relatedly, Rimini's proposed instructions throughout belabor whether "Oracle America,
26   Inc." or "Oracle International Corporation"—or both—assert each claim.  The parties' agreed
     proposed jury instructions reserve the issue as well.  The Parties' Agreed & Jointly Proposed
27   Jury Instructions, Dkt. 750, at 57 n.1.  For the same reasons discussed above, there is no reason
     for the instructions to do otherwise than define the term "Oracle" and use it throughout.

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 2:  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  If the evidence submitted by both sides is balanced, then the party with the burden of proof has not demonstrated a preponderance of the evidence.  For example, if you find that Oracle's claim is equally likely as unlikely, then there is no preponderance of the evidence, and you must find for Rimini Street.

You should base your decision on all of the evidence, regardless of which party presented it.


**ORACLE'S OBJECTION TO RIMINI'S JURY INSTRUCTION NO. 2**

Rimini added to the Ninth Circuit Model Jury Instruction 1.3 an "example" about Oracle not meeting the standard.[4]  Since Rimini has the burden of proof on several issues, the "example" can be explained only as an attempt to suggest judicial skepticism about Oracle's claims.

Oracle would not object to the Ninth Circuit Model Jury Instruction.  However, Oracle's proposal, P-1,  requests a model from Federal Judicial Center (FJC)'s 2013 Benchbook for U.S. District Court Judges (6th ed.).  The FJC's plain-English instruction ensures that jurors distinguish the preponderance standard from the beyond-a-reasonable-doubt standard they may be familiar with from criminal cases.

---

[4]    References to the Ninth Circuit Model Instruction stand for the Ninth Circuit Manual of Model Jury Instructions (Civil) (2007).

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## RIMINI'S PROPOSED JURY INSTRUCTION NO. 3:  COPYRIGHT—DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

    1)    authorize, or make additional copies, or otherwise reproduce the copyrighted work in copies;

    2)    recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work; and

    3)    distribute copies of the copyrighted work to the public by sale or other transfer of ownership or by rental or lease or lending.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes the author of the work, an assignee, or an exclusive licensee.  In general, copyright law protects against distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.  Even though one may acquire a copy of, or a license to use, the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work.

## ORACLE'S OBJECTION TO RIMINI'S JURY INSTRUCTION NO. 3

Rimini's proposed instruction D-3 is not, as Rimini claims, a "verbatim" version of Ninth Circuit Model Jury Instruction 17.1, and it is poorly tailored to the facts of this case.  Including all possible variations of language permitted under Ninth Circuit Model Jury Instruction 17.1, plus additional language, D-3 is both untethered to any disputed issue in this case and designed to favor Rimini.  Oracle objects to D-3, and requests that the Court reject D-3 and enter Oracle's proposed P-4 instead.

Rimini's numbered entries 1-3, concerning Oracle's reproduction, derivative work, and distribution rights under 17 U.S.C. § 106, are confusingly overbroad.  Ninth Circuit Model Jury Instruction 17.1 presents litigants with a number of *options* so that the parties may draft jury instructions that relate to the matters in dispute:

8

1

      (1) [[authorize, or make additional copies, or otherwise] reproduce the copyrighted work in [copies] [phonorecords]];

2

      (2) [[recast, transform, adapt the work, that is] prepare derivative works based upon the copyrighted work];

3

      (3) [distribute [copies] [sound recordings] of the copyrighted work to the public by

4

      [sale or other transfer of ownership] [or by [rental or lease or lending]];

5    Rimini has included every piece of optional language in D-3, other than terminology relevant

6    only to musical works.  Much of this language is irrelevant.  For example, Oracle does not claim

7    that Rimini authorized third parties to copy Oracle's copyrighted works, or that Rimini rented

8    out copies of Oracle's software and support materials to others.  Oracle's numbered entries 1-3 in

9    P-4 omit such irrelevant language from Ninth Circuit Model Jury Instruction 17.1.

10        In the final paragraph of D-3, Rimini also omits key language from the Ninth Circuit

11    Model Jury Instruction 17.1 and incorrectly adds "or a license to use" to that instruction (despite

12    stating that the proposed instruction is "verbatim").  Rimini's instruction inaccurately suggests

13    that copyright law only protects against unauthorized "distribution" while Oracle's proposed

14    instruction correctly states, consistent with the Ninth Circuit Model Jury Instruction 17.1, that

15    copyright law protects against unauthorized "reproduction, adaptation, or distribution" of the

16    copyrighted work.

17        The issue is important.  Rimini engaged in massive unlicensed copying ("reproduction"),

18    adaptation, and distribution, and also the creation of unlicensed derivative works, and Rimini's

19    instruction incorrectly suggests that copyright law only protects against "distribution."  The issue

20    of what was licensed is addressed separately, and there is no reason to add "or a license to use"

21    to this instruction.  Including that language is confusing in part because "it is undisputed that

22    Rimini does not have its own software license from Oracle . . . ."  Order, Dkt. 474 at 8 ("MSJ I").

23    Because it will hinder rather than help the jury's understanding of copyright rights, the Court

24    should reject instruction D-3 and adopt P-4.

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 4: COPYRIGHT—SUBJECT MATTER—GENERALLY**

The works involved in this trial include:

1) literary works, in which words, numbers, or other verbal or numerical symbols or indicia are expressed in such material objects like books or manuscripts; and

2) computer programs, that is, a literary work composed of a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result.

You are instructed that a copyright may be obtained in a list of printed materials and computer programs, which is reproduced in your juror handbook.

[Dkt. No. 527.]

These works can be protected by the copyright laws.  Only that part of the works comprised of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device, is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.

Under federal law, software installation media is not protected under federal copyrights. This is because software copyrights are separate and distinct from the physical objects on which they may be embodied.

Thus, the rights granted by certain software licensing agreements are not limited or restricted to any specific physical embodiment of the software, like Oracle's software installation media.  The license rights contained in certain customer licenses apply equally to the copies of the copyrighted software maintained on Rimini Street's systems regardless of whether Rimini Street used the specific installation media provided by Oracle to make those copies.

10

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**1**  <u>**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 4**</u>

**2**        D-4 is unnecessary, misleading, and contrary to the Parties' existing stipulations.  D-4

**3**  concerns issues that have already been resolved and would confuse the jury concerning the

**4**  copyright protections afforded to Oracle.  Oracle objects to D-4, and requests that the Court

**5**  reject it in its entirety.

**6**        Rimini stipulated that Oracle's copyrights in suit are valid.  Joint Pretrial Order,

**7**  Uncontested Facts ¶ 41 at 19; Amended Stipulation re Copyright Registrations and Copies, Dkt.

**8**  401 ¶ 7 ("Amended Stipulation re Copyright Registrations and Copies").  Rimini has also

**9**  conceded that 463 PeopleSoft, J.D. Edwards, and Siebel environments each "embod[y] a

**10**  substantial portion of the protected expression of" one or more of Oracle's copyright

**11**  registrations-in-suit.  Joint Pretrial Order, Uncontested Fact ¶ 24 at 18.

**12**        D-4 also ignores Rimini's concessions and contains language designed to confuse the

**13**  jury.  For example, Rimini proposes that the Court instruct the jury that copyright protection

**14**  "does not extend to any idea, procedure, process, system, method of operation, concept,

**15**  principle, or discovery."  But Rimini waived its First Affirmative Defense, which challenged

**16**  Oracle's copyright claims on grounds that "no copyright protection is afforded to 'any idea,

**17**  procedure, process, system, method of operation, concept, principle, or discovery, regardless of

**18**  the form in which it is described, explained, illustrated, or embodied.'"  Amended Stipulation re

**19**  Copyright Registrations and Copies ¶¶ 11-12.  There is no mention of any such defense or issue

**20**  in Rimini's trial brief; and this language would only confuse the jury regarding the rights

**21**  afforded to Oracle and to raise issues that are not in dispute.

**22**        The last two paragraphs of D-4 are based on the Court's summary judgment order

**23**  regarding "installation media."  Consistent with the Court's prior order, Oracle is not asserting

**24**  any claim based solely on Rimini's use of installation media for one customer for another

**25**  customer, and these paragraphs are therefore unnecessary.  Those portions of D-4 appear to be an

**26**  effort to trick the jury into inferring, contrary to law, that Oracle software is not subject to

**27**  copyright protection if it happens to be on a DVD.

**28**

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    Finally, Rimini's request to instruct the jury that there is no relationship between "the

2    rights granted by certain software licensing agreements" and the manner in which Rimini

3    obtained the installation media is wrong and contrary to the Court's prior ruling.  The Court held

4    that Rimini could not assert its clients' licenses as a defense to copyright infringement when

5    Rimini obtained copies of software from Oracle's password-protected websites rather than from

6    Rimini's clients.  Order, Dkt. 476 at 12 ("MSJ II").  For this reason and the reasons stated above,

7    D-4 should be rejected in its entirety.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 5:  COPYRIGHT INFRINGEMENT—ORIGINALITY**

An original work may include or incorporate elements taken from prior works, works from the public domain, or works owned by others, with the owner's permission.

The original parts of the plaintiff's work are the parts created:

1)      independently by the work's author, that is, the author did not copy it from another work; and

2)      by use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 5**

D-5 is not relevant to any disputed issue at trial and should be rejected.  Rimini has stipulated that Oracle's copyright registrations-in-suit are valid.  Joint Pretrial Order, Uncontested Fact ¶ 41 at 19; Amended Stipulation re Copyright Registrations and Copies, ¶ 7. Rimini has also agreed not to argue that Oracle's copyright registrations do not cover protected expression also contained in Oracle's prior works.  Stipulation re Derivative Works, Dkt. 149, ¶ 2 at 2.  On the basis of this agreement, Oracle reduced the number of registrations-in-suit to narrow the issues to be presented at trial.  *Id.* at 1 (preamble).  Rimini may not now change its position, at the eleventh hour, by asking the jury to assess originality.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 6:  COPYRIGHT INTERESTS—DERIVATIVE WORK**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term derivative work refers to a work based on one or more pre-existing works, such as any other form in which the pre-existing work is recast, transformed, or adapted.   Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

If the copyright owner exercises the right to allow others to create a derivative work based upon the copyrighted work, this derivative work may also be copyrighted. Only what was newly created, such as the editorial revisions, annotations, elaborations, or other modifications to the pre-existing work, is considered to be the derivative work.

Copyright protection of a derivative work covers only the contribution made by the author of the derivative work.  If the derivative work incorporates pre-existing work by others, the derivative author's protection is limited to elements added by the derivative author to the pre-existing work of others.

The owner of a derivative work may enforce the right to exclude others in an action for copyright infringement.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 6**

Oracle does not object to Rimini's proposed Jury Instruction No. 6.

14

1

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 7:  COPYRIGHT INFRINGEMENT**

2   Oracle International Corporation claims ownership of certain copyrights and

3   seeks damages against Rimini Street and Seth Ravin for copyright infringement.  Rimini

4   Street and Seth Ravin deny infringing the copyright and assert an affirmative license

5   defense to some of the conduct at issue.  To help you understand the evidence in this

6   case, I will explain some of the legal terms you will hear during this trial.

7

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 7**

8

9   Rimini's proposed instruction states that Oracle "claims ownership of certain copyrights"

10   but that ownership is undisputed.  Rimini has stipulated that "OIC is the owner or exclusive

11   license for each of the 100 registered works listed in Exhibit A" and that those copyright

12   registrations are valid.  Pretrial Order, Dkt. 523, Uncontested Facts ¶¶ 40-41 at 19; Amended

13   Stipulation re Copyright Registrations and Copies, Dkt. 401 ¶ 7.  Oracle objects to D-7, and

14   requests that the Court instead adopt Oracle's P-12.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 8:  COPYRIGHT—DIRECT INFRINGEMENT**

To prevail on its direct infringement claim in the circumstances of this case, Oracle International Corporation must prove the following by a preponderance of the evidence:

1)   Oracle International Corporation is the owner or exclusive licensee of a valid copyright in an original work;

2)   Rimini Street copied original elements from, created derivative works from, or distributed the original work; and

3)   Rimini Street did not have permission to copy the original elements of the copyrighted work.

The parties have agreed that Oracle International Corporation owns or is the exclusive licensee of certain registered copyrighted works at issue in this case, which means that Oracle International Corporation has proven the first element for those specific registered works only.

If you find that Oracle International Corporation has proven all of these elements for each and every copyrighted work on which it seeks damages, your verdict should be for Oracle International Corporation.  If, on the other hand, Oracle International Corporation has failed to prove a single one of these elements, your verdict should be for Rimini Street.  Rimini Street claims that its clients' licenses granted it permission to make the copies it did.  If you agree that the licenses allowed Rimini Street to make the copies it did, then you must find that Rimini Street did not infringe Oracle International Corporation's copyrights.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 8**

Oracle objects to Rimini's proposed D-8 because it does not sufficiently reflect the Parties' stipulations and the Court's orders nor accurately present the issues concerning any

16

1   remaining license defense.  Oracle urges the Court to reject instruction D-8, and instead to enter

2   Oracle's proposed P-13.

3         D-8 is contrary to the Ninth Circuit Model Jury Instruction, which states that a copyright

4   plaintiff must prove two elements, not three:  "1. the plaintiff is the owner of a valid copyright;

5   and, 2. the defendant copied original elements from the copyrighted work."  Ninth Circuit Model

6   Instruction 17.4.  The Parties essentially agree on the language introducing these two elements,

7   but Rimini improperly seeks to add a third element that would shift the burden on its express

8   license defense to Oracle.  Consistent with the Court's prior rejection of such burden-shifting,

9   Order re Disputed Jury Instructions, Dkt. 719 at 3, this new proposed element should not be

10  added.

11        Rimini's proposed instruction is also contrary to the Parties' stipulations.  By stipulation,

12  Oracle is the owner or exclusive licensee of the registrations-in-suit, and those registrations are

13  valid. Pretrial Order, Dkt. 523, Uncontested Facts 40-41; Amended Stipulation re Copyright

14  Registrations and Copies, Dkt. 401 ¶¶ 7-8.  The Parties have also stipulated to extensive copying

15  by Rimini, and that 463 PeopleSoft, J.D. Edwards, and Siebel environments each "embod[y] a

16  substantial portion of the protected expression of" one or more of Oracle's copyright

17  registrations-in-suit.  Pretrial Order, Dkt. 523, Uncontested Fact 24.

18        Rimini's instruction improperly suggests that Oracle must at trial prove "all of these

19  elements" and that Oracle's claim fails if Oracle fails "to prove a single one of these elements."

20  In fact, the Parties have already stipulated to facts establishing both elements of Oracle's

21  copyright infringement claim.  At trial, Oracle will prove the extent of that infringement and the

22  amount of damages to be awarded.  Rimini's instruction D-8 incorrectly suggests that all three

23  elements are in dispute.

24        Finally, instruction D-8 seeks to improperly inject language about Rimini's remaining

25  license defense – which Rimini no longer even asserts for PeopleSoft and Database software

26  copies – into the direct infringement instruction.  Such mixing of issues is counterproductive and

27  contrary to the Ninth Circuit Model Jury Instruction, and should be rejected.

28

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 9:  COPYRIGHT—ACCESS AND SUBSTANTIAL SIMILARITY**

Instruction __ states that Oracle International Corporation has the burden of proving that Rimini Street copied original elements from Oracle International Corporation's copyrighted work.  Oracle International Corporation may show Rimini Street copied from the work by showing by a preponderance of the evidence that Rimini Street had access to Oracle International Corporation's copyrighted work and that there are substantial similarities between Rimini Street's work and original elements of Oracle International Corporation's work.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 9**

Rimini's proposed D-9 largely tracks Ninth Circuit Model Instruction 17.15.  Oracle agrees to entry of a version of instruction D-9, modified to say "Oracle" rather than "Oracle International Corporation."

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 10:  COPYRIGHT—CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.  If you find that Rimini Street infringed Oracle International Corporation's copyright in a particular work, you may proceed to consider Oracle International Corporation's claim that Seth Ravin contributorily infringed that copyright. To prove copyright infringement, the plaintiff must prove both of the following elements by a preponderance of the evidence:

  1) Seth Ravin knew or had reason to know of Rimini Street's infringing activity; and

  2) Seth Ravin intentionally induced or materially contributed to Rimini Street's infringing activity.

If you find that Oracle International Corporation proved both of these elements, you should find for Oracle and against Seth Ravin on the copyright infringement claim as to contributory infringement.  If, on the other hand, Oracle International Corporation has failed to prove either of these elements, you should find for Seth Ravin and against Oracle International Corporation on the copyright infringement claim as to contributory infringement.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 10**

Oracle objects to D-10 because it fails to account for the Court's prior findings of direct infringement.  Oracle urges the Court to reject D-10, and instead to enter Oracle's P-16.

The Parties substantially agree in their presentation of the elements of contributory infringement.  However, Rimini's D-10 states that the jury only needs to consider the issue of contributory infringement "[i]f" they find that Rimini committed direct infringement.  But the Court has already determined that Rimini committed direct infringement. *See* Order re First Motion for Partial Summary Judgment, Dkt. 474; Order re Second Motion for Partial Summary

1    Judgment, Dkt. 476.  Therefore, that portion of instruction D-10 is inappropriate and misleading.

2    Because the jury will necessarily consider contributory infringement in this matter, Oracle's

3    instruction P-16 employs mandatory rather than conditional language.  Instruction P-16

4    appropriately streamlines the jury's deliberations by reducing the number of elements at issue.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 11:  COPYRIGHT—VICARIOUS INFRINGEMENT**

If you find that Rimini Street infringed Oracle International Corporation's copyright in a particular work, you may consider Oracle International Corporation's claim that Seth Ravin vicariously infringed that copyright.   Oracle International Corporation has the burden of proving each of the following by a preponderance of the evidence:

1)   Seth Ravin profited directly from Rimini Street's infringing activity;

2)   Seth Ravin had the right and ability to supervise or control Rimini Street's infringing activity;  and

3)   Seth Ravin failed to exercise that right and ability.

If you find that Oracle International Corporation proved each of these elements, you should find for Oracle International Corporation and against Seth Ravin on the copyright infringement claim as to vicarious infringement.  If, on the other hand, Oracle International Corporation has failed to prove any of these elements, you should find for Seth Ravin and against Oracle on the copyright infringement claim as to vicarious infringement.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 11**

Oracle objects to Rimini's proposed D-11 because it fails to account for the Court's prior findings of direct infringement.  Oracle urges the Court to reject D-11, and instead to enter Oracle's P-17.

The Parties substantially agree in their presentation of the elements of vicarious liability.  However, Rimini's instruction D-11 presents consideration of vicarious liability as a possibility rather than a certainty, beginning "If you find that Rimini Street infringed . . . ."  It is established that Rimini committed direct infringement.  *See* Order re First Motion for Partial Summary Judgment, Dkt. 474; Order re Second Motion for Partial Summary Judgment, Dkt. 476.  The jury

1   must decide the issue of vicarious liability.  Oracle's instruction P-17 properly reflects this

2   certainty, and Rimini's D-11 does not.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    **RIMINI'S PROPOSED JURY INSTRUCTION NO. 12:  COPYRIGHT MISUSE**
2    **DEFINED**

3            Copyright misuse is an affirmative defense to copyright infringement.  Its purpose

4    is to prevent a holder of a copyright from leveraging its limited monopoly on the

5    copyrighted work in order to restrict competition in a market for a product or service in

6    which it does not have a copyright.

7    **RIMINI'S PROPOSED JURY INSTRUCTION NO. 13:  COPYRIGHT MISUSE—**
8    **ELEMENTS**

9            To prove the affirmative defense of copyright misuse, Rimini Street must prove,

10   by a preponderance of the evidence, that Oracle International Corporation violated the

11   public policies underlying the copyright laws.  The public policies behind the copyright

12   laws are to promote the progress of science and the useful arts.  Rimini Street need not

13   prove that Oracle International Corporation violated the antitrust laws in order to prevail

14   on Rimini Street's copyright misuse defense.

15           If you find from the facts that Oracle International Corporation has used its

16   copyrights to indirectly gain commercial control over products it does not have

17   copyrighted, then you will find for Rimini Street.  In considering the facts of this case,

18   you may consider the following to be a misuse of the copyright protection:  Whether

19   Oracle International Corporation used a license agreement to limit a customer's rights to

20   decide whether to use other forms of coding systems in addition to the copyright holder's;

21   or whether Oracle International Corporation used a license agreement to prevent the

22   development of similar support service products.

23   **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 12**
     **AND 13**

24           This Court has definitively injected Rimini's copyright misuse defense—twice.  Rimini

25   asserted an affirmative copyright misuse defense, and the Court struck it from the case and

26   dismissed Rimini's counterclaim for copyright misuse.  Order, Dkt. 111 at 6–8 ("the licensing

27   restrictions alleged by Rimini Street are well within Oracle's statutory rights as a copyright

28

23

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    holder and therefore do not constitute copyright misuse").  Rimini did not seek reconsideration

2    of that order, nor has Rimini sought to amend its answer or counterclaims since the Court struck

3    the defense.  The Court also excluded from trial "any evidence or argument . . . that Oracle's

4    practices are 'anti-competitive' or 'unlawful' including any reference to defendants' previously

5    dismissed counterclaims and affirmative defenses" because "any evidence and argument relating

6    to counterclaims that . . . have been dismissed, are not relevant to this action."  Order, Dkt. 723 at

7    7.  The jury should not be instructed on a defense that has been stricken from the case, especially

8    given this Court's order excluding evidence relating to copyright misuse from trial.

9        Even if the Court had not stricken Rimini's copyright misuse defense from the case,

10   copyright misuse is an *equitable* defense.  Order, Dkt. 111 at 6 (dismissing "[t]he equitable

11   defense of copyright misuse"); *see also MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928,

12   941 (9th Cir. 2010); *Assoc. of Am. Med. Colleges v. Princeton Review*, 332 F. Supp. 2d 11, 17,

13   19-20 (D.D.C. 2004).  Equitable defenses, including misuse, are for the Court to consider and not

14   the jury.  *Japan Cash Mach. Co. v. MEI, Inc.*, No. 2:05-CV-01433RCJRJJ, 2008 WL 5051245,

15   at *10 (D. Nev. Nov. 20, 2008) (in the patent misuse context: "There is no need to burden the

16   jury with evidence of equitable misconduct that is to be decided by the Court.  MEI's inequitable

17   conduct defense is an equitable defense; the Court, not the jury, is obligated to decide this

18   issue."); *see also Freescale Semiconductor, Inc. v. ChipMOS Technologies*, No. 5:09-CV-03689-

19   EJD, 2013 WL 308919, at *5 (N.D. Cal. Jan. 25, 2013) ("Defendant is not entitled to a jury trial

20   on its patent misuse counterclaim.").

21       Even if it was proper to put Rimini's copyright misuse affirmative defense before the jury

22   – it is not – Rimini's proposed instruction incorrectly states the law, including the law of this

23   case.  This Court ruled that a restriction which "is only a limitation on third-party business

24   models and is not a restriction on Oracle customers . . . does not constitute copyright misuse."

25   Order, Dkt. 111 at 8; *accord Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-01699-LRH,

26   2015 WL 4139051, at *3 (D. Nev. July 9, 2015) ("So long as the license does not require the

27   customer to promise not to use a competitor's products or prohibit development of competing

28   products, there is no misuse even if the license restrictions give the copyright holder an

24

1   advantage over a competitor on non-copyrighted products or services.").  Rimini flatly misstates

2   the law by proposing to instruct the jury that misuse can be found if Oracle "has used its

3   copyrights to indirectly gain commercial control over products it does not have copyrighted" or

4   "used a license agreement to prevent the development of similar support service products."

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 14:   TOMORROWNOW EVIDENCE**

You have heard evidence and argument regarding a company called "TomorrowNow."   You may not use this evidence to assume that because Seth Ravin was at one time associated with TomorrowNow, and TomorrowNow stipulated and ultimately pleaded guilty to infringing Oracle's copyrights, Rimini Street infringed, or was more likely to have infringed, Oracle's copyrights.   You also cannot use this evidence as proof of whether Seth Ravin's or Rimini Street's conduct was willful, wanton, or unjustifiable.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 14**

Oracle objects to Rimini's proposed instruction for two reasons.

First, the instruction fails to tell the jury how it may consider and use the TomorrowNow evidence, or even that any use at all is permissible.  Oracle's proposed instructions on TomorrowNow, P-2 and P-10, appropriately inform the jury it may not use TomorrowNow evidence as character evidence, but may use that evidence for appropriate purposes.  That includes the specific purposes identified by the Court in its order denying Rimini's motion in limine.  Order, Dkt. 636 at 3-4, 4 nn.2-3.  None of Rimini's cited authority provides any basis to revisit the Court's previous ruling.[5]

Second, P-10 wrongly tells the jury that the TomorrowNow evidence cannot be used "as proof of whether Seth Ravin's or Rimini Street's conduct was willful, wanton, or unjustifiable."   That is simply incorrect.  Oracle intends to prove at trial that Seth Ravin and

---

[5]   In *Barnett v. Gamboa*, the evidence of a past criminal conviction was proffered solely "for purposes of credibility." 2013 WL 178132, at *3 (E.D. Cal. Jan. 16, 2013).  Moreover, because the conviction was over ten years old, the *Barnett* court "appl[ied] the more stringent test of Rule 609(b)." *Id.* at *4.  In *JIPC Management, Inc. v. Incredible Pizza Co.*, the court found the evidence at issue not relevant to the question in the case. 2009 WL 8591607, at *29 (C.D. Cal. July 14, 2009).  Here, of course, this Court has already squarely ruled that TomorrowNow evidence is relevant to the issues in this case.  Finally, in *Danjaq LLC v. Sony Corp.*, the court discussed willfulness in the context of the *exception to laches*. 263 F.3d 942, 957 (9th Cir. 2001).

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   Rimini lied about their business practices in relation to TomorrowNow, [6] and the Court expressly

2   authorized such use:  "evidence about the TomorrowNow litigation and TomorrowNow's

3   infringement is relevant to whether Rimini's statements about its business model were false."

4   Order, Dkt. 636 at 3-4, 4 nn.2 & 3.  Intentionally false statements indisputably can be used by the

5   jury to support a conclusion that a Defendant's "conduct was willful, wanton, or unjustifiable."

6   *See, e.g.*, *Singer Mfg. Co. v. Redlich*, 109 F. Supp. 623, 627 (S.D. Cal. 1952) ("The defendants'

7   conduct in the instant case was fraudulent, deliberate, willful and wanton in the extreme.  Their

8   widespread sales of foreign machines were effected by deliberate falsehoods and the grossest

9   kind of deception.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   [6] In its Trial Brief, Oracle identified evidence that shows Rimini employees and Seth Ravin
     knowingly lied about their business model to Oracle customers.  Oracle's Trial Brief, Dkt. 747 at

27   13-14 (citing PTX 4937 (the ██████████████████████████████████████████████

28   ████████████████████████ and PTX 29 ██████████████████████████████████

27

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 15:  COPYRIGHT DAMAGES—GENERALLY**

If you find that Rimini Street is liable for infringing Oracle International Corporation's copyrights, you must determine Oracle International Corporation's damages.  Oracle International Corporation must prove its damages by a preponderance of the evidence.  That is, Oracle International Corporation must establish with evidence that it is more likely than not that it was damaged as a result of the infringement.  If you find that it is equally likely that Oracle International Corporation was not damaged, then you must find that it has not proven that it suffered damages.  Additionally, if you find that it is only a hypothetical possibility that the infringement caused damages, then you must find that Oracle International Corporation has not proven that it suffered damages.

There are two alternate types of damages available to Oracle International Corporation:

1)  Actual damages suffered as a result of the infringement; or

2)  Statutory damages established by Congress in the Copyright Act.

Oracle International Corporation may not recover both types of damages.

If Oracle International Corporation demonstrates injury, but it cannot prove, without undue speculation, either causation or the value of its actual damages suffered as a result of the infringement, then you must award Oracle International Corporation statutory damages.

"Undue speculation" means that Oracle International Corporation cannot establish an objective non-speculative damages amount.  For example, if the evidence presented by Oracle International Corporation does not allow you to establish an objective, non-speculative damages amount, then actual damages would be speculative and you must award statutory damages.  If you have to guess the amount of actual damages, then you are speculating and should not award actual damages, and you should instead award statutory damages.

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 15**

Oracle objects to Rimini's proposed instruction number 15 in its entirety because it is misleading and also an unnecessary, argumentative departure from any applicable model instruction.  Order re Trial (requiring instructions to be "neutral statements of law" and stating that "argumentative" instructions "should not be submitted").

First, by starting with "[i]f you find that Rimini Street is liable for infringing Oracle International Corporation's copyrights, you must determine . . .  damages," Rimini's proposed instruction ignores that infringement has already been established for Oracle's Database software and many copies of Oracle's PeopleSoft software.  Dkt. 721 at 4 ("[D]efendants' request would seem to exclude relevant evidence about established facts and legal findings that have been made by the court including defendants' infringement of Oracle's PeopleSoft copyrights. These rulings are still relevant to Oracle's damages claims and the compensatory damages to be awarded by the jury for this infringement."); *see also* Dkts. 474, 476.  The issue for trial is not "if" Rimini is liable but rather the extent of that liability.

Second, the remainder of the first paragraph, and the final two paragraphs, is merely an argumentative duplication of the proposed instructions on the "preponderance" standard, P-8 and D-2.  The additional language in Rimini's proposed instruction is incorrect, unnecessary and unfair.  It departs from any applicable model instruction and provides two examples of situations that purportedly result in no damages (with no examples showing when the preponderance standard would be met).  Such imbalanced instructions are improper.

Rimini's proposed instruction improperly suggest that damages are subject to a higher standard of proof by stating no fewer than *seven* times that a damages calculation might involve "speculation" or "guessing."   D-15 ("undue speculation," "Undue speculation," "non-speculative," "non-speculative," "speculative," "have to guess," "speculating").  No cases or model jury instruction cited by Rimini approves such argument in a jury instruction.  To the contrary, it is the law on copyright damages that "what is required is not mathematical exactness but only a reasonable approximation."  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940); *accord Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982) ("damages need not be

29

1  proved to a mathematical certainty" so long as "sufficient facts" are "introduced so that a court

2  can arrive at an intelligent estimate without speculation or conjecture"); Nimmer § 14.02[A], at

3  14-12 ("[U]ncertainty will not preclude a recovery of actual damages if the uncertainty is as to

4  amount, but not as to the fact that actual damages are attributable to the infringement."); *see also*

5  *On Davis v. The Gap Inc.*, 246 F.3d 152, 164 (2d Cir. 2001) ("Courts and commentators agree

6  [that the term 'actual damages'] should be broadly construed to favor victims of infringement.")

7  (collecting authorities).

8        Oracle's proposed instruction, P-19, by contrast, is a simple and neutral statement of the

9  law based on model instructions.  It articulates the standard of proof in exactly the same manner

10  as the Ninth Circuit model:   *Compare* P-19 ("Oracle must prove actual damages by a

11  preponderance of the evidence.") *with* Ninth Circuit Manual of Model Instructions 17.22 ("The

12  plaintiff must prove damages by a preponderance of the evidence.") There is no need for

13  anything more.  Should the Court determine that it is necessary to instruct the jury with more

14  detail about the burden of proof, Oracle proposes below a short, neutral, and non-argumentative

15  instruction based on instructions given in the *Oracle Corp. v. SAP AG* case.

16        Third, Rimini's instruction in the second paragraph inappropriately offers statutory

17  damages as an alternative to "actual damages" for the jury, and invites the jury to choose

18  between them.  That is error.  It is Oracle, not the jury, that makes the election between actual

19  damages and statutory damages, and Oracle may do so "at any time before final judgment is

20  rendered." 17 U.S.C. § 504(c)(1); *accord Feltner v. Columbia Pictures Television, Inc.*, 523 U.S.

21  340, 347 n.5 (1998) ("election may occur even after a jury has returned a verdict on liability and

22  an award of actual damages"); *News Serv. v. Reuters Telvision Int'l, Ltd.*, 149 F.3d 987, 995 n.8

23  (9th Cir. 1998) (plaintiff allowed to elect statutory damages after appeal on actual damages).  No

24  model cited by Rimini sets actual damages and statutory damages as alternatives to each other,

25  and the Ninth Circuit models expressly requires the jury to calculate each of them separately.

26  *See* Manual of Model Instructions 17.22 (actual damages), id. 17.25 (statutory damages).

27        Fourth, Rimini's proposed instruction will be confusing for the jury.  Rimini's proposal

28  that the Court instruct the jury that "if you find that it is only a hypothetical possibility that the

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   infringement caused damages, then you must find that Oracle . . . has not proven that it suffered

2   damages" is likely to confuse the jury and prejudice Oracle, as one of the damages methods in

3   this case is a "hypothetical license."  The Ninth Circuit Model Instructions nowhere include this

4   "hypothetical possibility" standard, and there is no reason to adopt it here.

5        Rimini's proposed instruction should be rejected.

6

7   **ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY INSTRUCTION NO. 15**

8   **P-52.   ORACLE'S PROPOSED ADDITIONAL INSTRUCTION ON BURDEN OF PROOF ON DAMAGES**

9        While there is no precise formula for determining actual damages, your award must be

10  based on evidence, not on speculation, guesswork, or conjecture.  Determining actual damages

11  may involve some uncertainty, and Oracle is not required to establish its actual damages with

12  precision.

13

14  <u>Authority</u>:  *Oracle Corp. v. SAP AG*, No. Case 4:07-cv-01658-PJH, Final Jury Instructions, Dkt.

15  1005 at 8 ("While there is no precise formula for determining actual damages, your award must

16  be based on evidence, not on speculation, guesswork, or conjecture. Determining the fair market

17  value of the rights infringed may involve some uncertainty, and Oracle is not required to

18  establish its actual damages with precision."); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309

19  U.S. 390, 408 (1940) ("what is required is not mathematical exactness but only a reasonable

20  approximation"); *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982); Nimmer § 14.02[A], at

21  14-12.

22

23

24

25

26

27

28

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 16:  COPYRIGHT DAMAGES—ACTUAL DAMAGES**

As a measure of its actual damages, Oracle International Corporation may recover either:  (i) the fair market value of use; or (ii) Oracle International Corporation's lost profits plus any profits Rimini Street obtained from its infringement.  The fair market value of use is the license that the parties would have negotiated if Rimini Street had obtained a license for the rights you have found that Rimini Street infringed.  The value of a license to Rimini Street is the amount that it would have cost Rimini Street to implement a non-infringing alternative.

You are required to select the best measure of actual damages.  You should determine actual damages separately for each Defendant that you find liable for copyright infringement.

I will now explain these methods to you.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 17:  COPYRIGHT DAMAGES—FAIR MARKET VALUE OF USE—GENERALLY**

The first type of actual damages is the fair market value of use.  In order to decide on the value of the license that Rimini Street and Oracle International Corporation would have agreed to, you should assume that the parties did negotiate a license just before the infringement began.  You should assume that in this negotiation, Rimini Street was a willing buyer of the license, and that Oracle International Corporation was a willing seller of the license.  You must determine what would have been the result of this negotiation in order to determine the fair market value of the license.  You should assume that the license the parties negotiated was for the actual, real-world use made by Rimini Street of Oracle International Corporation's copyrighted works.  You should assume that both parties would have acted reasonably and economically rational in the hypothetical negotiations.

To determine the amount of the license that Rimini Street and Oracle International Corporation would have negotiated, you must rely on objective evidence.  You may not

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1  guess or rely on speculative testimony, guesswork, or conjectural evidence.   Oracle

2  International Corporation bears the burden of proving the value of the hypothetical

3  license based on objective evidence by a preponderance of the evidence.   You may

4  consider evidence and facts that happened after the date of the hypothetical negotiation to

5  the extent that those events and facts provide insight into the expectations of the parties at

6  the time the infringement first began, or insight into the amount a willing buyer would

7  have paid a willing seller at the time of the infringement.

8  **RIMINI'S PROPOSED JURY INSTRUCTION NO. 18:   COPYRIGHT DAMAGES—
FAIR MARKET VALUE OF USE—ALTERNATIVES**

9

10  You should assume that the value of the hypothetical license is the amount that it

11  would have cost Rimini Street to implement a non-infringing alternative.   In other words,

12  if Rimini Street could have ordered its business in a way that did not infringe, then the

13  cost to implement that non-infringing alternative is the value of the hypothetical license,

14  because Rimini Street would not have paid Oracle International Corporation more for the

15  license than it would have cost Rimini Street to implement the non-infringing model.

16  **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 16, 17
AND 18**

17

18  A hypothetical license instruction on PeopleSoft, J.D. Edwards, and Siebel software and

19  support material is inappropriate because the jury will not have a non-speculative basis to

20  calculate and award any hypothetical license amount.   No evidence disclosed by Rimini provides

21  an adequate basis for the jury to apply the hypothetical license measure of damages for

22  infringement of Oracle's PeopleSoft, J.D. Edwards, and Siebel software and support materials.

23  Thus, the jury should not be instructed on it.   *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.

24  2002) (to "be entitled to an instruction about his or her theory of the case," the party's theory

25  must have "foundation in the evidence"); *id.* at 939 (Silverman, J., concurring) (the plaintiff's

26  proposed instruction "was properly refused only because it was not justified by the evidence").

27  First, Rimini has identified no "benchmark license" or other comparable transaction for

28  purposes of calculating a hypothetical license damages award, and Rimini has affirmatively

33

1    asserted that no such license or comparable transaction exists.  Seeking to exclude Elizabeth

2    Dean's hypothetical license opinion for PeopleSoft, J.D. Edwards, and Siebel software and

3    support materials,[7] Rimini argued that without a "history of granting similar licenses by the seller

4    (Oracle), or (ii) a benchmark license in the industry," Ms. Dean's opinion relied on a "one-sided

5    terms conjured up by Oracle executives with no reliable factual basis."  Dean Motion at 1-2

6    (citation omitted).  Rimini argued (1) that "the Ninth Circuit has never affirmed a damages award

7    based on a hypothetical license absent evidence of such a comparable transaction," *id.* at 1; (2)

8    "no such evidence exists here," *id.* at 7; and (3) absent a "comparable transaction," there would

9    be no adequate basis for a jury verdict other than "undue speculation," *id.* at 8. Rimini asks the

10    Court to now invite the jury to reach a verdict by calculating a hypothetical license amount

11    without the evidence that Rimini told the Court was necessary to avoid speculation in such a

12    calculation.

13        The Court's recent *in limine* rulings in no way justify Rimini's request to include these

14    instructions.  The Court held that the opinion of Rimini's damages expert, Scott Hampton, on

15    "avoided cost" is *admissible* because "the value of a hypothetical license *to Rimini* is the amount

16    that it would have cost Rimini to implement a non-infringing alternative."  Order, Dkt. 724 at 5

17    (emphasis added).  The Court held that Mr. Hampton's opinion is "relevant" to a hypothetical

18    license, *id.*, but that does not make Mr. Hampton's opinion *sufficient* to support a jury verdict

19    calculating a hypothetical license.  The value of such a license *to Rimini* is, at most, a single

20    component of the license calculation.  By Rimini's own argument, any calculation of

21    hypothetical license damages by the jury without a benchmark transaction would be doomed to

22    reversal by the Ninth Circuit because it depends on undue speculation.  Dean Motion at 1, 8

23    (citing *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014)).

24        Second, Rimini's proposed instructions would be error because Mr. Hampton's opinion

25

26    [7] As to Oracle Database software, Ms. Dean used Oracle's standard licensing list prices, which

27    provides a benchmark.  Rimini did not move to exclude her testimony on this point.  Dean
      Motion at 5 (addressing Siebel, PeopleSoft, and J.D. Edwards damages only).

28

1   also wholly ignores Oracle's role in the negotiation.  The inquiry for the jury must involve both

2   sides of the negotiating table: "'what a willing buyer would have been reasonably required to pay

3   to a willing seller for plaintiffs' work.'"  *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007)

4   (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985));

5   Dean Motion at 5 (correctly identifying the "willing seller" component of hypothetical license).

6   In this case, granting Rimini a license to use Oracle's intellectual property in the way that Rimini

7   did – to undermine Oracle's profitable support customers and take customers from Oracle –

8   would obviously come at substantial cost to Oracle.  But Mr. Hampton offers no opinion about

9   what Oracle as a "willing seller" might have agreed to, and there is no evidence that Oracle

10  would ever agree to accept a few million dollars of license fees-and thereby put at risk hundreds

11  of millions of dollars (if not more) of support profits.

12      Controlling law holds that hypothetical license damages must take into account those

13  kinds of costs to the seller.  As recently reiterated by the Ninth Circuit, and ignored by Rimini:

14  "Fair market value in a voluntary licensing transaction between arms-length parties *ordinarily*

15  *lies somewhere between the two poles of cost to the seller and benefit to the buyer.*"  *SAP AG*,

16  765 F.3d at 1089 (emphasis added).   Copyright law on this point echoes settled law in the patent

17  context on reasonable royalty.  "[It] is wrong as a matter of law to claim that reasonable royalty

18  damages are capped at the cost of implementing the cheapest available, acceptable, non-

19  infringing alternative."  *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F. 3d 1359, 1373 (Fed. Cir.

20  2008), recalled on other grounds, 557 F.3d 1377 (Fed. Cir. 2009); *accord Gaylord v. U.S.*, 678

21  F.3d 1339, 1343 (Fed. Cir. 2012) (holding that it is "incorrect in a hypothetical negotiation

22  inquiry . . . to limit [the] analysis to only one side of the negotiating table" and rejecting damage

23  award based solely on the infringer's perspective); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538,

24  1555 (Fed. Cir. 1995) ("What an infringer would prefer to pay is not the test for damages.").

25  Rimini's proposed instructions are contrary to established law.

26      Third, Rimini's proposed instructions are improper because Mr. Hampton does not offer

27  any opinion on the form of any negotiated license or its terms, and Rimini has identified no other

28  evidentiary basis upon which the jury might make those determinations.  For example, Rimini

1    argued that Ms. Dean's opinion on hypothetical license lacked an adequate basis to conclude

2    whether any license would have been a "lump-sum" rather than a "running royalty," leaving the

3    jury with only an "impermissibly speculative license" that would be "untethered to the facts"

4    which "demonstrates precisely why the Ninth Circuit and other courts have rejected such

5    comparisons when not grounded in reality."  Dean Motion at 14.  Those same critiques apply to

6    Mr. Hampton.  Mr. Hampton offers no basis for the jury to conclude what the form of the

7    hypothetical license would be, and thus the jury would have no option but to speculate.

8          Oracle's instructions on copyright damages, P-19, P-20, and P-22, appropriately limit the

9    jury's consideration of any hypothetical license damages to Oracle Database software, for which

10   the parties do not dispute that there is a "benchmark."  Ms. Dean and Mr. Hampton both consider

11   the same benchmark, namely Oracle's standard list prices, and differ in opinion about how the

12   licenses would have been negotiated.  *See* Hampton Report, Dkt. 664-1 at 115-116.   Given the

13   narrow nature of that dispute as to Oracle Database damages, the short and neutral instruction on

14   hypothetical license negotiation for Database software is appropriate.

15         However, if the Court instructs the jury as to hypothetical license on PeopleSoft, J.D.

16   Edwards, and Siebel, Rimini's proposed instruction is improper.  Oracle respectfully submits the

17   proposed instructions below (P-49 and P-50) to remedy additional errors in Rimini's proposed

18   instructions.

19         First, Rimini's instructions rest on the false premise that the hypothetical license

20   calculation is based *solely* on the value of the license *to Rimini*.  D-18 states this expressly.

21   ("You should assume that the value of the hypothetical license is the amount that it would have

22   cost Rimini Street to implement a non-infringing alternative . . . . [T]he cost to implement that

23   non-infringing alternative is the value of the hypothetical license, because Rimini Street would

24   not have paid Oracle International Corporation more for the license than it would have cost

25   Rimini Street to implement the non-infringing model").  D-16 also misleadingly suggests this by

26   instructing the jury about the value to Rimini and ignoring Oracle's viewpoint entirely.  ("The

27   value of a license to Rimini Street is the amount that it would have cost Rimini Street to

28   implement a non-infringing alternative.").

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    These instructions would be clear and reversible error.  As detailed above, the jury must

2    consider both sides of the negotiation, not just the buyer.  *See SAP AG*, 765 F.3d at 1089; *Jarvis*,

3    486 F.3d at 533; *Frank Music*, 772 F.2d at 512; *see also Gaylord*, 678 F.3d at 1343.  The

4    instructions proposed by Rimini are contrary to established law concerning the award of

5    hypothetical license damages.  Oracle's proposed instructions accurately instruct the jury to

6    consider both sides of the negotiating table in a neutral fashion.

7    Second, Rimini's instructions fail to instruct the jury of all the necessary requirements of

8    an "alternative" for purposes of calculating hypothetical license damages.  To be considered as

9    part of the hypothetical license calculation, the alternative must be (i) non-infringing; (ii)

10   available at the time; and (iii) acceptable to Rimini's customers.  *See Grain Processing Corp. v.*

11   *American Maize-Products*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).  By omitting those

12   requirements, Rimini invites the jury to calculate damages based on a supposed alternative that,

13   as Oracle will prove at trial, Rimini could not have actually used.  Numerous documents

14   produced by Rimini show that both Rimini and its customers believed that the remote support"

15   model that Rimini claims is non-infringing alternative was unacceptable.  Rimini employees

16   discussed that model and concluded that it was ▇▇▇▇ and '▇▇▇▇▇▇▇▇▇▇▇▇ (PTX

17   60) and that it ▇▇▇▇▇▇▇▇▇▇ (PTX 11) and ▇▇▇▇▇▇ (PTX 2152).  The Court

18   has already held that "Oracle is free to challenge" that "Rimini would not have considered a non-

19   infringing alternative at all[,]" Order, Dkt. 724 at 5, and Rimini's proposed instructions ignore

20   that ruling.

21   Third, Rimini's proposed instructions are confusing and invite error insomuch as Rimini

22   asks the Court in D-16 to instruct the jury that they must "select the best measure of actual

23   damages."  None of the authority cited supports such an instruction.  Rimini also offers the jury

24   no basis to identify what method is "best," nor is any apparent.  For clarity, the jury should

25   simply be instructed it may use either method (if the Court disagrees with Oracle that the

26   hypothetical license measure is unsupported by the evidence).

27   Fourth, Rimini's instruction turns to unnecessary argument when it instructs the jury in

28   D-17 that the parties would have "acted . . . economically rational" in the negotiations.  No

37

1    model includes this unnecessary and duplicative instruction, which simply parrots Rimini's

2    theory of the case that it would have "walked away" from the negotiations if Oracle asked for too

3    much (while ignoring what Oracle would have done if Rimini offered too little).  *Compare* Dean

4    Motion at 3 (arguing that "Ms. Dean's analysis necessarily assumes that Rimini Street would

5    have acted unreasonably—indeed, irrationally—in the hypothetical negotiation").

6

7    **ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY INSTRUCTION NO. 16**

8    **P-49.   COPYRIGHT—DAMAGES—ACTUAL DAMAGES INTRODUCTION**

9            You must determine Oracle's damages due to copyright infringement.  Oracle is entitled

10   to recover the actual damages suffered as a result of the infringement.  The term "actual

11   damages" means the amount of money adequate to compensate the copyright owner for the

12   reduction of the market value of the copyrighted work caused by the infringement.  Damages

13   must be proven by a preponderance of the evidence.

14           Methods for determining actual damages due to copyright infringement include:

15           •   Profits that Oracle proves it would have made without the infringement.   This is

16                the "lost-profits" method.

17           •   What a willing buyer would have been reasonably required to pay to a willing

18                seller at the time of infringement for the use made of Oracle's work.  This is the

19                "fair-market-value" method.

20           While there is no precise formula for determining damages, your award must be based on

21   evidence, not on speculation, guesswork, or conjecture.  Determining actual damages may

22   involve some uncertainty, and Oracle is not required to establish its actual damages with

23   precision.  You should determine actual damages separately for each Defendant that you find

24   liable for copyright infringement

25           You may use either the lost-profits or the fair-market-value method to calculate actual

26   damages.  I will now explain these methods to you.

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Authority:  Federal Jury Practice & Instructions, No. 160:90 (West 2015) (used as baseline because comment to the relevant Ninth Circuit model instruction [No. 17.23] notes that the Ninth Circuit model does not address situations where multiple methods are presented; modified for clarity, to reflect facts of this case, and to reflect Ninth Circuit law regarding lost profits); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087, 1094-95 (9th Cir. 2014); 17 U.S.C. § 504(b).

## ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY INSTRUCTION NO. 17

### P-50.   COPYRIGHT—ACTUAL DAMAGES—FAIR MARKET VALUE

Actual damages for "fair-market-value" means the amount of money adequate to compensate Oracle for the reduction of the fair market value of the copyrighted work caused by any infringement you found.

The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by Defendants of Oracle's registered copyrighted works.  You must determine what would have been the result of this negotiation in order to establish the fair market value, calculated at the time the infringement commenced.

The value of a hypothetical license is not necessarily the amount the Defendants in this case would have agreed to pay, or that Oracle would have actually agreed to accept.

You may consider evidence and facts that happened after the date of the hypothetical negotiation only to the extent they provide insight into the expectations of the parties at the time the infringement first began, or insight into the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement.

If there was an alternative to infringement that was (1) available to Defendants, (2) non-infringing, and (3) acceptable to customers, then the cost of such an alternative is the value of a hypothetical license to Defendants.  The cost of such an alternative is not a cap or ceiling on what the hypothetical negotiations would have concluded, but is a factor to consider along with the cost of the hypothetical license to Oracle.  If Defendants would not have considered such an

39

1    alternative, then it is not relevant to the hypothetical negotiations.

2

3    Authority:  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004)

4    (paraphrased); Order, Dkt. 724 at 5; *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F. 3d 1359, 1373

5    (Fed. Cir. 2008), *recalled on other grounds*, 557 F.3d 1377 (Fed. Cir. 2009) ("[It] is wrong as a

6    matter of law to claim that reasonable royalty damages are capped at the cost of implementing

7    the cheapest available, acceptable, non-infringing alternative."); *Grain Processing Corp. v.*

8    *American Maize-Products*, 185 F. 3d 1341, 1350-51 (Fed. Cir. 1999); *see also Oracle Corp. v.*

9    *SAP AG*, 765 F.3d 1081, 1087, 1094-95 (9th Cir. 2014).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   **RIMINI'S PROPOSED JURY INSTRUCTION NO. 19:  COPYRIGHT DAMAGES—
    ORACLE'S LOST PROFITS—GENERALLY**

2

3          The second type of actual damages is lost profits.  To calculate Oracle

4   International Corporation's lost profits, you must determine what profits Oracle

5   International Corporation proved that it would have made without the infringement by

6   Rimini Street, minus any expenses Oracle International Corporation would have incurred

7   in making those profits.  To recover lost profits, Oracle International Corporation must

8   prove by a preponderance of the evidence that:

9          1)  Rimini Street caused such damages (see Instruction __); and

10         2)  The amount.  You may not guess the amount or rely on speculative evidence

11             to calculate lost profits.

12

13  **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 19**

     Oracle objects to Rimini's proposed instruction number 19 because it errs in explaining

14  "profits," has no support in the law, and it unnecessarily complicates the model instruction.

15      First, Rimini's proposed instruction tells the jury to deduct expenses from profits, which

16  is wrong.  Profits are net of applicable expenses by definition.   Oracle's proposed instruction P-

17  39, by contrast, simply uses the "lost profits" language of *Polar Bear Prods., Inc. v. Timex*

18  *Corp.*, 384 F.3d 700 (9th Cir. 2004), which is quoted in the comment to the Ninth Circuit  Model

19  Jury Instruction 17.23.

20      Second, the proposed instruction attempts to split the determination of lost profits into

21  two elements:  proving causation, and proving the amount.  Rimini's cases do not support such a

22  presentation, and it is not required.  Oracle has proposed a separate causation instruction based

23  on a model, P-18, as Rimini has proposed a separate instruction on causation as well, D-20.

24  Repeating the requirement here would only confuse the jury, especially given Rimini's incorrect

25  characterization of the standard.

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 20:  COPYRIGHT DAMAGES—
ORACLE'S LOST PROFITS—CAUSATION**

Oracle International Corporation must prove a causal relationship between Oracle's losses and Rimini Street's infringement.  Oracle International Corporation must demonstrate that but for Rimini Street's infringement, Oracle International Corporation would not have lost each of the clients for which Oracle International Corporation seeks damages.  That means that if a client left Oracle International Corporation for reasons unrelated to Rimini Street's infringement, there is no causal relationship and therefore no lost profit damages as to that client.  For example, if a client left Oracle International Corporation in whole or in part because it was unhappy with Oracle International Corporation's customer service, then Oracle International Corporation may not obtain damages from Rimini Street for the loss of that client.  Or if a client signed up with Rimini Street for reasons partially unrelated to the infringement, such as Rimini Street's superior customer service, then there is no causal relationship and therefore no lost profit damages.

Oracle International Corporation must prove causation by a preponderance of the evidence for every single client for which it is claiming copyright damages.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 20**

Oracle objects to D-20 in its entirety.  Although Rimini cites the Ninth Circuit Model Jury Instruction 17.23 as support for Rimini's proposal, almost all of the proposed instruction is made up, has no support in the law, and is biased and argumentative in Rimini's favor.

First, Rimini's instruction incorrectly states that Oracle can only claim damages if Rimini's infringement was the sole "but for" reason that customers signed with Rimini, including by instructing that causation is not shown where customers left Oracle for reasons "in part" or "partially" unrelated to infringement.  This is not the law.  Oracle must only prove "with reasonable probability the existence of [a] causal connection between the infringement and a loss of revenue."  *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985). The burden then "properly shifts to the infringer to show that this damage would have occurred had

42

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1  there been no taking of copyrighted expression." *Id.*; *see also Stevens Linen Assocs., Inc. v.*
2  *Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir. 1981) (where plaintiff lost sales to infringer, "once
3  [plaintiff] established that it had been damaged, and that its customers purchased both the
4  infringed and infringing products, the burden shifted to the infringer . . . to prove that the
5  customers . . . to whom it sold would not have acquired from [plaintiff] alone [the products at
6  issue] had there been no infringement"); Order, Dkt. 636 at 6 ("[E]xtrinsic evidence establishes
7  that Rimini's infringement caused Oracle to suffer the lost profits that Dean describes in her
8  report. . . .  Rimini may challenge that there is no causal relationship between its infringement
9  and Oracle's lost profits because certain customers would not have used Oracle's services even if
10  Rimini was not engaged in business, but such a challenge only goes to the weight the jury should
11  give Dean's opinion and not its admissibility.").

12      Second, Rimini's proposed instruction unfairly and unnecessarily argues when it
13  provides two examples of when the causation standard is (supposedly) not shown and no
14  examples where it is.  Such imbalanced instructions are improper.

15      Third, Rimini's proposed instruction also argues Rimini's theory of the case by
16  repeatedly referring to proof about "each" specific customer.  Where, as here, a plaintiff offers
17  proof that an infringer's business model at all relevant times relied on extensive infringement, it
18  is a question of fact for the jury to decide whether all or any subset of the claimed copyright
19  damages are attributable to that infringement.  The Ninth Circuit endorsed that approach when it
20  permitted Oracle's recovery of lost profits and infringers' profits in *Oracle Corp. v. SAP AG*
21  without requiring Oracle to present evidence of – or requiring the jury to calculate – copyright
22  damages for each customer affected by TomorrowNow's infringement on a customer-by-
23  customer basis.  Jury Verdict, *SAP AG*, 4:07-cv-01658 (PJH), at Dkt. No. 1004 (Nov. 23, 2010);
24  *SAP AG*, 765 F.3d 1081, 1098-95 (9th Cir. 2014).

25      This approach is well established, and Rimini's proposed instruction is unsupported.  In
26  *Data General Corp. v. Grumman System Support Corp.*, 36 F.3d 1147, 1172 (1st Cir. 1994),
27  *overruled on other grounds by Reed Elsevier, Inc. v. Muchnic*, 130 S. Ct. 1237 (2010), the First
28  Circuit similarly affirmed the plaintiff's recovery of copyright damages where the plaintiff

43

1    presented proof that, among other things:  the infringed software was critical to the defendant's

2    ability to service relevant products and attract customers; customers prefer to have a single

3    service vendor; and market-share data reflected how much business it would have retained in the

4    absence of infringement.  *See also Data General Corp. v. Grumman Sys. Support Corp.*, 825 F.

5    Supp. 340, 350 (D. Mass. 1993) (finding no error in the jury's reliance on plaintiff's market-

6    share evidence to support its damages determination).   These examples, among others,

7    demonstrate that a plaintiff can meet its burden of proof using general – as opposed to customer-

8    by-customer – causation evidence.  *E.g.*, *Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656

9    F.2d 11, 14-16 (2d Cir. 1981) (where plaintiff lost sales to infringer, "once [plaintiff] established

10   that it had been damaged, and that its customers purchased both the infringed and infringing

11   products, the burden shifted to the infringer . . . to prove that the customers . . . to whom it sold

12   would not have acquired from [plaintiff] alone [the products at issue] had there been no

13   infringement"); *see also* Order, Dkt. 636 at 6 ("[E]xtrinsic evidence establishes that Rimini's

14   infringement caused Oracle to suffer the lost profits that Dean describes in her report.").

15        Oracle's proposed instruction on causation, P-18, is based on a neutral, judicially

16   approved model (California's CACI) applying the state-law tort causation principles that the

17   Ninth Circuit law has expressly adopted in the copyright context.  *See Mackie v. Rieser*, 296 F.3d

18   909, 915 & n.6 (9th Cir. 2002).  It is appropriate, and Rimini's is not.

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   **RIMINI'S PROPOSED JURY INSTRUCTION NO. 21:  COPYRIGHT DAMAGES—**
     **DEFENDANTS' PROFITS**
2

3         If you conclude that lost profits are the better measure of actual damages, then

4  Oracle International Corporation is also entitled to Rimini Street's profits that are directly

  attributable to the infringement and were not taken into account in computing lost profits.
5

6         Double recovery is not allowed.  You may not include in this award of Rimini

7  Street's profits any amount that you already took into account in determining Oracle

  International Corporation's lost profits.  Thus, if Rimini Street's profits are the same as
8

9  Oracle International Corporation's lost profits, then you may not include them in this

10  award.

11         You may award Rimini Street's profits only if you find that Oracle International

12  Corporation showed a causal relationship between the infringement and the profits

  generated directly or indirectly from Rimini Street's infringement.   The causal
13

14  relationship may not be established by guessing or speculative evidence.

15         Rimini Street's profits are determined by subtracting all of Rimini Street's

16  expenses from Rimini Street's gross revenue.  If Rimini Street's expenses exceed its

  gross revenue, then there are no profits for you to award Oracle International
17

18  Corporation.

19         Gross revenue includes only those receipts associated with Rimini Street's

20  infringement of Oracle International Corporation's copyrighted works.  Gross revenue

  does not include Rimini Street's overall gross sales resulting from all streams of revenue.
21

22  Oracle International Corporation has the burden of proving Rimini Street's gross revenue

  by a preponderance of the evidence.
23

24         Expenses are all operating costs, overhead costs, and production costs incurred in

25  producing Rimini Street's gross revenue.  Rimini Street bears the burden of proving its

  expenses by a preponderance of the evidence.
26

27         Unless you find that a portion of the profit from the use of the copyrighted works

28  is attributable to factors other than use of the copyrighted works, all of the profit is to be

1    attributed to the infringement.  Rimini Street has the burden of proving the portion of the
2    profit, if any, attributable to factors other than infringing the copyrighted works.  Here,
3    Rimini Street does not need to prove that amount with certainty, but instead it need only
4    provide a reasonable approximation of the amount that is not attributable to infringement.

5        You must also determine whether Rimini Street added intrinsic value to the
6    services it provided.  In other words, if Rimini Street provided additional value beyond
7    the value of infringement, such as superior support services (e.g., faster response time or
8    more effective technical support), then you should deduct any of that value from the
9    profits that may be awarded to Oracle International Corporation

10       You should determine infringer's profits separately for each Defendant that you
11   find liable for copyright infringement.

12

13   **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 21**

14   Oracle objects to D-21 because it departs from the Ninth Circuit Model Instruction by
15   adding unnecessary and argumentative language that is contrary to law.

16       First, the entire second paragraph is redundant of the last part of the first paragraph, and
17   is included only to argue Rimini's version of the case.  It is also unclear and confusing.

18       Second, Rimini adds to the model a sentence ("The causal relationship may not be
19   established by guessing or speculative evidence") suggesting that a causal relationship may
20   require "speculative evidence" or "guesswork," is unnecessary, argumentative, and unsupported
21   by authority.  That is particularly inappropriate in contrast to Rimini's self-serving language
22   suggesting it has a lower burden of proof on allocation of expenses.  ("Rimini Street does not
23   need to prove that amount with certainty, but instead it need only provide a reasonable
24   approximation").  Both additions to the model should be rejected.

25       Third, Rimini's instruction wrongly limits the conclusions the jury may reach from the
26   evidence by stating, "Gross revenue does not include Rimini Street's overall gross sales resulting
27   from all streams of revenue."  The jury should be instructed on the law and reach its own

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   conclusions about how much of Rimini's revenues meet the relevant standard based on the

2   evidence.

3       <u>Fourth</u>, Rimini's instruction wrongly prohibits the jury from considering willfulness in

4   deciding which expenses to deduct.  If Rimini is found to be a willful infringer, Rimini is not

5   entitled to deduct overhead costs from its infringing revenues.  Ninth Circuit Model Jury

6   Instruction Comment to No. 17.24 ("Generally, deductions of defendant's expenses are denied

7   where the defendant's infringement is willful or deliberate." (citing *Kamar Int'l, Inc. v. Russ*

8   *Berrie & Co.*, 752 F.2d 1326, 1331-32 (9th Cir.1984))); *Polar Bear Prods., Inc. v. Timex Corp.*,

9   384 F.3d 700, 709 (9th Cir. 2004); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d

10  505, 515 (9th Cir. 1985); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("[o]verhead may

11  not be deducted from gross revenues to arrive at profits when an infringement was deliberate or

12  willful"); *Williams v. Bridgeport Music, Inc.*, No. LA CV-13-06004 JAK (AGRx), ECF No. 322

13  at Jury Instruction No. 38 (C.D. Cal. Mar. 10, 2015) ("Overhead costs may not be deducted

14  where a party's infringement is willful."); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294-95

15  (D.N.J. 1993) ("it is a question of fact whether these defendants did in fact act willfully[;]" "if a

16  defendant's conduct is willful, overhead may not be deducted"); *Mfrs. Techs., Inc. v. Cams, Inc.*,

17  728 F. Supp. 75, 84 (D. Conn. 1989) (defendant's "taxes" and "overhead or 'allocated

18  expenses'" not deductible because infringement was willful).

19      Oracle's proposed instruction P-22 tracks the Model Instruction, is fair, neutral, and

20  accurately states the law.  It should be adopted.

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 22:  COPYRIGHT DAMAGES—STATUTORY DAMAGES**

If you find that Rimini Street is liable for infringing Oracle International Corporation's copyrights, Oracle International Corporation is alternatively entitled to statutory damages established by Congress in the Copyright Act for each work infringed if:  (i) Oracle International Corporation elects statutory damages in lieu of actual damages; or (ii) if Oracle International Corporation cannot prove without undue speculation either causation or the amount of actual damages suffered as a result of the infringement.

The purpose of statutory damages is to penalize the infringer and deter future violations of copyright law.

The amount you may award as statutory damages is not less than $750, and not more than $30,000 for each work that you conclude was infringed.

However, if you find that the infringement was innocent, you may award as little as $200 for each work innocently infringed.

If you find that infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Instructions __ and __ will tell you what constitutes innocent infringement and what constitutes willful infringement.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 22**

Oracle objects to Rimini's gratuitous and confusing changes to the Ninth Circuit's model jury instructions. While Oracle's proposal on statutory damages (P-23) tracks closely the Ninth Circuit model instructions, Rimini's instruction muddles the clear language of the model instruction with legal error, argument, and confusion.

First, reference in the instruction to *election* of statutory damages is entirely inappropriate.  The model instruction contains no such language for the simple reason that Oracle is entitled to make that election "at any time before final judgment is rendered," 17

48

1   U.S.C. § 504, "even after a jury has returned a verdict on liability and an award of actual

2   damages." *Feltner,* 523 U.S. at 347 n.5.  As discussed in response to Rimini's proposed D-15,

3   presenting actual damages and statutory damages to the jury as alternatives is simply wrong as a

4   matter of law.  Moreover, such references serve only to confuse the jury, which has no need to

5   consider this information.

6        Second, Rimini's gratuitous repetition of its actual damages and causation themes has no

7   place in this instruction ("or (ii) if Oracle . . . cannot prove without undue speculation either

8   causation or the actual amount of damages . . .").  Those issues have nothing to do with the jury's

9   calculation of statutory damages, and adding them to the model offers the jury only confusion

10  and argument.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 23:  INDUCING BREACH OF CONTRACT**

In addition to its other claims, Oracle America contends that Rimini Street and Seth Ravin induced customers to breach their contracts with Oracle America. Specifically, Oracle America contends that the terms of use on its website and its software license agreements are contracts with its customers.  Oracle America contends that Rimini Street and Seth Ravin intentionally caused Oracle America customers to breach their contracts with Oracle America.

To prevail on this claim in the circumstances of this case, Oracle America must prove each of the following for each such contract by a preponderance of the evidence:

1) A valid contract existed between Oracle America and a customer;

2) Rimini Street and/or Seth Ravin knew the contract existed;

3) Rimini Street and/or Seth Ravin intended to cause Oracle America's customer to breach its contract with Oracle America;

4) Rimini Street and/or Seth Ravin engaged in conduct that was wanton, malicious, and unjustifiable;

5) Rimini Street and/or Seth Ravin's conduct caused the customer to breach the contract;

6) Oracle America was directly harmed; and

7) Rimini Street and/or Seth Ravin's improper conduct was a substantial factor in causing Oracle America harm.

If you find that the customer would have breached its contract with Oracle America regardless of whether Rimini Street and/or Seth Ravin engaged in the above conduct, then you must find that Rimini Street and/or Seth Ravin is not liable for inducing breach of contract.

Mere knowledge of the contract is insufficient to establish that Rimini Street and/or Seth Ravin intended or designed to disrupt Oracle America's contractual relationship; instead, Oracle America must demonstrate that Rimini Street and/or Seth

1    Ravin specifically intended to induce the other party to breach the contract with Oracle

2    America.

3        If you find that Oracle America suffered only nominal damages or speculative

4    harm, then you must find that Rimini Street and/or Seth Ravin is not liable for inducing

5    breach of contract.

6        Oracle America must prove all of the above elements for every single customer

7    for which it is claiming that Rimini Street and Seth Ravin induced a breach of contract.

8    In considering these instructions, you must keep in mind that Oracle America has the

9    burden to prove any damages for each specific client or prospective relationship.  For

10   example, if Oracle America proves damages as to one client, you may not extrapolate

11   those damages to multiple clients, but instead must award only damages for the one client

12   for which Oracle America has proven such damages.

13       If you find that Oracle America proved each of these elements as to Rimini Street

14   and/or Seth Ravin, you should find for Oracle America and against Rimini Street and/or

15   Seth Ravin on the claim for inducing breach of contract.  If, on the other hand, Oracle

16   America has failed to prove any of these elements as to Rimini Street and/or Seth Ravin,

17   you should find for Rimini Street and/or Seth Ravin and against Oracle America on the

18   claim for inducing breach of contract.

19

20   **<u>ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 23</u>**

21   Rimini's proposed instruction is repetitive, confusing, and argumentative.   Oracle's

22   proposal, P-24, follows Nevada and California model forms (which are very similar), except that

23   Oracle specified the conduct that is basis for its claims:  fraud or a violation of law other than

24   copyright or breach of contract.

25   <u>First</u>, Rimini rehashes several elements multiple times.  There is no explanation other

26   than to suggest judicial skepticism or confuse the jury by saying the same thing multiple ways.

27   Rimini duplicates causation four times—twice in the elements (5 and 7), again in the first

28   paragraph following the elements, and a fourth time in D-28.  Similarly, the second paragraph

1    following the elements ("Mere knowledge . . .") is another gloss on knowledge and intent.

2    Rimini reformulates those same elements again at its proposed instructions D-26 and D-27.

3        <u>Second</u>, Rimini's instructions are argumentative.  Rimini modified or added to the model

4    instructions so that they require "direct[]" harm, "specific[] intent," and to admonish the jury that

5    it "must keep in mind" Oracle's burden or "each specific client or prospective relationship" and

6    "every single customer."

7        <u>Third</u>, the second-to-last paragraph appears to tell the jury that it cannot make reasonable

8    inferences or rely on ordinary principles of proximate causation.  "For example," it says, the jury

9    "may not extrapolate" damages.  At a minimum, that conflicts with the Parties' agreed

10   instructions on circumstantial evidence.  J-18.  Rimini's choice of the damages example is

11   particularly weak; it is black-letter law that wrongdoers cannot escape liability merely because

12   there is some uncertainty as to the "measure or extent" of damages.  *General Elect. Supply Co. v.*

13   *Mt. Wheeler Pwr.*, 94 Nev. 766, 768 (1978) (quoting *Fireman's Fund Ins. Co. v. Shawcross*, 84

14   Nev. 446, 453 (1968)); *Meister v. Mensinger*, 230 Cal. App. 4th 301, 396 (6th Dist. 2014); *see*

15   *also Palmer v. Conn. Railway & Lighting Co.*, 311 U.S. 544 (1941) ("The ways compensatory

16   damages may be proven are many.  The injured party is not to be barred from a fair recovery by

17   impossible requirements.  The wrongdoer should not be mulcted, neither should he be permitted

18   to escape under a cover of a demand for nonexistent certainty.").

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 24:  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Oracle America and Oracle International Corporation seek to recover damages based upon a claim of intentional interference with prospective economic advantage.

In order for you to find for Oracle America and/or Oracle International Corporation, you must find by a preponderance of the evidence that:

1)   Oracle America and/or Oracle International Corporation had an expectancy in a prospective contractual relationship with the customer;

2)   Rimini Street and/or Seth Ravin knew of the existence of the relationship;

3)   Rimini Street and/or Seth Ravin engaged in unlawful and improper conduct;

4)   By engaging in this conduct, Rimini Street and/or Seth Ravin intended to disrupt the relationship;

5)   Rimini Street and/or Seth Ravin's conduct was not privileged or justified;

6)   The relationship was disrupted;

7)   Oracle America and/or Oracle International Corporation was harmed; and

8)   Rimini Street and/or Seth Ravin's unlawful and improper conduct was a substantial factor in causing Oracle America and/or Oracle International Corporation harm.

To find causation, you must find that but for Defendant's conduct, Oracle America and/or Oracle International Corporation's harm would not have occurred.  For example, if you find that Oracle America and/or Oracle International Corporation would not have realized an economic benefit regardless of Rimini Street and/or Seth Ravin's conduct, then you must find that Rimini Street and/or Seth Ravin is not liable for intentional interference with prospective economic advantage.

If Oracle America and/or Oracle International Corporation's contractual relations are merely contemplated or potential, it is in the interest of the public that any competitor (here, Rimini Street and Seth Ravin) should be free to divert the relationship to itself by

53

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    all fair and reasonable means.  Therefore, if Oracle America and/or Oracle International

2    Corporation fails to establish that Rimini Street and/or Seth Ravin engaged in unlawful or

3    improper means for each specific prospective relationship, then you must find that Rimini

4    Street and/or Seth Ravin did not intentionally interfere with Oracle America and/or

5    Oracle International Corporation's prospective economic advantage for that relationship.

6         "Unlawful or improper means" does not include breach of contract or copyright

7    infringement.  The only unlawful or improper means that Oracle America and Oracle

8    International Corporation claim are related to alleged misrepresentations made by Rimini

9    Street.  Additionally, if the alleged misrepresentation is only an expression of opinion or

10   statement of a future act, then Oracle America and/or Oracle International Corporation

11   cannot rely upon it to establish unlawful or improper means.  You must decide whether

12   Oracle America and/or Oracle International Corporation has established any actionable

13   misrepresentations and, if so, whether it is more likely than not that those

14   misrepresentations were the specific cause of harm.

15        If you find that Oracle America and/or Oracle International Corporation suffered

16   only nominal damages or speculative harm, then you must find that Rimini Street and

17   Seth Ravin are not liable for intentional interference with prospective economic

18   advantage.

19        Oracle America and/or Oracle International Corporation must prove all of the

20   above elements for every single economic relationship for which it is claiming intentional

21   interference with prospective economic advantage.  In considering these instructions, you

22   must keep in mind that Oracle has the burden to prove any damages for each specific

23   client or prospective relationship.  For example, if Oracle proves damages as to one

24   client, you may not extrapolate those damages to multiple clients, but instead must award

25   only damages for the one client for which Oracle has proven such damages.

26        If you find that Oracle America and/or Oracle International Corporation proved

27   each of these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle

28   America and/or Oracle International Corporation and against Rimini Street and/or Seth

54

1        Ravin on the claim for intentional interference with prospective economic advantage.  If,

2        on the other hand, Oracle America and/or Oracle International Corporation has failed to

3        prove any of these elements as to Rimini Street and/or Seth Ravin, you should find for

4        Rimini Street and/or Seth Ravin and against Oracle America and/or Oracle International

5        Corporation on the claim for intentional interference with prospective economic

6        advantage.

7 **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 24**

8        Oracle's proposed liability instruction for intentional interference, P-25, follows Nevada

9 and California model forms (which are very similar), except that Oracle specified the conduct is

10 basis for its claims:  fraud or a violation of law other than copyright or breach of contract.

11 Rimini's instruction is confusing, repetitive, and argumentative.

12       <u>First</u>, Rimini's proposal is confusing and unnecessarily complex because it requires the

13 jury to analyze Rimini's conduct three slightly ways:  in element 3, to determine whether

14 Rimini's conduct was "unlawful or improper conduct";  in element 5 to determine whether the

15 conduct was "privileged or justified"; and again in a paragraph about the so-called "competitor's

16 privilege," which explains that there is a general "interest of the public" in free competition ("If

17 Oracle America . . . .").[8]

18       All this is superfluous.  As Oracle's proposed instruction P-25 explains, Oracle's

19 interference claim is predicated on specific types of conduct:  fraud or a violation of law other

20 than copyright or breach of contract.  That specificity eliminates any need for instruction on

21 privilege or justification.  Fraud cannot be privileged or justified.  Restatement (Second) Torts,

22 § 768 & cmt. (d) (competitor's fraud cannot be privileged or justified).  A competitor's conduct

23 is also wrongful when it violates the law.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

24 4th 1134, 1159 (2003).

25 _____

26 [8]     The paragraph also contains an improper formula instruction with loaded language:  "if
Oracle America and/or Oracle International Corporation <u>fails</u> to establish that Rimini Street

27 and/or Seth Ravin engaged in unlawful or improper means for each specific prospective
relationship, then you must . . . ." (emphasis added).

28

1       Second, Rimini rehashes causation three times—once in element 8, again in the first

2    paragraph following the elements, and again in its proposed instruction D-28.  There is no

3    explanation other than to suggest judicial skepticism about causation or to confuse the jury by

4    saying the same thing multiple ways.

5       Third, Rimini's third paragraph after the elements ("'Unlawful or improper means . . .'")

6    misstates the actionable conduct Oracle asserts by improperly limiting it to "alleged

7    misrepresentations."  As noted above, Rimini's other legal violations law are actionable conduct.

8       Fourth, the second-to-last paragraph contains the same "may not extrapolate" language

9    (and related language), as well as the same confusing and improper instruction about permissible

10    inferences, that are addressed in Oracle's objections to D-23.  Oracle incorporates by reference

11    that objection.

12       Fifth, Rimini seeks to instruct the jury incorrectly—and unnecessarily—on whether a

13    "misrepresentation" is an "opinion or statement of future act."  Oracle's proposed instruction (P-

14    25) eliminates any need for an instruction along these lines by limiting the actionable

15    misrepresentations to fraudulent misrepresentation.

16       At any rate, Rimini's "opinion" or "future act" instruction is an incorrect and incomplete

17    statement of the law.  The general rule is that "predictions as to future events are ordinarily non-

18    actionable expressions of opinion under basic principles of the tort of fraudulent

19    misrepresentation." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366

20    F.3d 692, 698 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (June 2, 2004)

21    (internal quotations omitted) (emphases added).  Such events include "future action by some

22    third party." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158-59 (6th Dist.

23    1991) (emphasis added; quoting authority).

24       Rimini's proposed instruction changes "events" or actions "by some third party" rule to

25    include "acts" without qualification.  If Rimini means that no statement about its own future acts

26    (*e.g.*, "we will never use your software for another customer") cannot be actionable as a matter

27    of law, that is wrong.  Such statements are actionable when they are fraudulent. *Id.*

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

And Rimini's statement is incomplete.  The general rule does not apply in several circumstances, including:

> When a statement, although in the form of an opinion, is not a casual expression of belief but a deliberate affirmation of the matters stated, it may be regarded as a positive assertion of fact.  [ . . .]

> [or] when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact.

*California Pub. Employees' Ret. Sys. v. Moody's Investors Serv., Inc.*, 226 Cal. App. 4th 643, 662, (2014), *rev. denied* (Sept. 10, 2014).

If the Court is inclined to provide an instruction on opinion, Oracle proposes below an instruction based on CACI 1904 (2015).  That neutral model addresses both "opinion" and "future events."

## ORACLE'S PROPOSED ALTERNATE TO RIMINI'S JURY INSTRUCTION NO. 24

### P-51.   ORACLE'S PROPOSED JURY INSTRUCTION

Ordinarily, an opinion is not considered a representation of fact.  An opinion is a person's belief that a fact exists, a statement regarding a future event, or a judgment about quality, value, authenticity, or similar matters.  However, a Defendant's opinion is considered a representation of fact if Oracle proves any of the following by a preponderance of the evidence:

- The Defendant claimed to have special knowledge about the subject matter that the person to whom it made the representation did not have;

- the Defendant made a representation, not as a casual expression of belief, but in a way that declared the matter to be true;

- the Defendant had a relationship of trust and confidence with the person to whom it made the representation; or

- the Defendant had some other special reason to expect that the person to whom it made the representation would rely on his or her opinion.

1       <u>Authority</u>:  CACI 1904 (2015) (modified to conform to style and format of the parties'

2    proposed instructions, including by adding the preponderance of the evidence requirement and

3    party names; adapted to reflect that misrepresentations were made to third parties).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 25:  ADVANTAGE—FREE COMPETITION**

A party does not intentionally interfere with prospective economic advantage when the party engages in free competition.  In other words, a party is free to divert business to itself by all fair and reasonable means because it is in the interest of the public that companies compete against each other.   Therefore, if you find the following elements, then you must find that Rimini Street and Seth Ravin did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage:

1) The relation concerns a matter involved in the competition between Rimini Street and/or Seth Ravin and Oracle America and/or Oracle International Corporation;

2) Rimini Street and/or Seth Ravin did not employ wrongful means;

3) Rimini Street and/or Seth Ravin's action did not create or continue an unlawful restraint of trade; and

4) Rimini Street and/or Seth Ravin's purpose was at least in part to advance its interest in competing with Oracle America and/or Oracle International Corporation.

In other words, so long as Rimini Street and/or Seth Ravin's motivation was at least partially to compete with Oracle America and/or Oracle International Corporation, and Rimini Street and/or Seth Ravin did not employ wrongful means to compete with Oracle America and/or Oracle International Corporation, then you must find that Rimini Street and/or Seth Ravin acted in the interests of free competition and did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage.

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 25**

2          D-25 is unnecessary and redundant.  As the instruction itself notes, if a Defendant

3    employed "wrongful means to compete" then conduct is not privileged.  Oracle proposed

4    instructions on inducing breach of contract and intentional interference, P-24 and P-25, permit

5    the jury to find in its favor only on conduct that is inherently wrongful because, as explained

6    above, it limits the actionable conduct to fraud or legal violations.  Restatement (Second) Torts, §

7    768 & cmt. (d) (competitor's fraud cannot be privileged or justified);  *Korea Supply*, 29 Cal. 4th

8    at 1159 (competitor's conduct is wrongful when it violates the law).

9          In addition, Rimini's proposal is incorrect and confusing by referring to the undefined

10   term "restraint of trade."  That phrase is a term of art from antitrust law.  It is unnecessary and

11   will be foreign to the jury.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 26:  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—KNOWLEDGE**

For Oracle America to prevail on its claim for inducing breach of contract or for Oracle America or Oracle International Corporation to prevail on its claim for intentional interference with prospective economic advantage, you must also find that the Rimini Street and/or Seth Ravin knew of the existence of the contract or prospective relationship.  To have knowledge means that Rimini Street and/or Seth Ravin has information concerning the contract or prospective relationship, which was discovered by Rimini Street and/or Seth Ravin or was brought to Rimini Street and/or Seth Ravin's attention by others.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 26**

Oracle objects to Rimini's omission of an important point of law present in Oracle's proposed jury instruction P-26 and in ABA Model Jury Instruction 2.4.1, upon which both Parties' instructions are based.  Both Oracle's proposed instruction and the ABA Model Instruction explain that the jury may find that defendants have knowledge if "the Defendants should have known of the contract or prospective relationship" based on "the facts and circumstances of which the Defendant had knowledge."  That legal principle – constructive knowledge – is consistently applied in interference cases.  *See, e.g.*, *A.H.D.C. v. City of Fresno, Cal.*, No. CV-F-97-5498 OWW SMS, 2000 WL 35810723, at *23 (E.D. Cal. Aug. 31, 2000) ("Plaintiffs' evidence is sufficient to establish that all signatory Defendants had at least constructive knowledge of the purchase contract and Defendants' conduct could be interpreted as interference with the contract by thwarting the multi-family housing development objective. Defendants' motion for summary judgment fails.").  Rimini's instruction misstates the applicable legal standard that the jury must apply to the facts of this case.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 27:  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—INTENT**

For Oracle America to prevail on its claim for inducing breach of contract or for Oracle America or Oracle International Corporation to prevail on its claim for intentional interference with prospective economic advantage, you must find intentional conduct by a Defendant.  For purposes of these two claims, conduct is intentional if done with the specific desire to cause Oracle America's client to breach its contract or to improperly and unlawfully interfere with the prospective relationship between Oracle America or Oracle International Corporation and a third party.

Intent ordinarily may not be proved directly, because there is no way of scrutinizing the operations of the human mind.  You may infer a person's intent from conduct substantially certain to cause disruption or interference, but you are not required to infer it and should consider all of the circumstances.  You may consider any statements made or acts done or omitted by a party whose intent is an issue, and all of the facts and circumstances that indicate the party's state of mind.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 27**

Oracle objects to Rimini's incorrect statement of the law in its proposed jury instruction.  Both parties' proposed instructions are also based on ABA Model Jury Instructions 2.6.1 and 2.6.2, but unlike Oracle's version, P-27, Rimini's version adds unnecessary and inaccurate language to the model instructions and removed a necessary point of law upon which the jury must be instructed.

First, Rimini's instruction states that conduct is intentional if done with the "specific" desire to cause breach or "improperly and unlawfully" interfere with the relationship between Oracle and a third party.  The addition of the word "specific" is likely to confuse the jury, as it suggests a particularly heightened intent requirement.  The inclusion of both "improperly" *and* "unlawfully" is also likely to confuse the jury, as the language suggests these are independent requirements.  Rimini may not add qualifiers simply because it does not favor the law's actual requirements.

1    Second, Rimini excised from its proposed instruction a foundational principle of law

2    contained in Oracle's proposed instruction and in the ABA model instruction – the principle that

3    persons are expected to intend the natural consequences of their knowingly done acts.  "In our

4    legal system, every person is presumed to intend the natural consequences of his acts."  *In re*

5    *Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660, 667 (7th Cir. 2013) (internal quotation marks omitted).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 28:  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—CAUSATION**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Put another way, the "substantial factor" test means that "but for" the defendant's conduct, the plaintiff's harm would not have occurred.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 28**

Oracle objects to the last sentence as confusing and unnecessary.  Rimini added to the CACI model a final sentence about "but for" causation, which is unnecessary and offered solely to argue and emphasize Rimini's causation theme.  At the same time, Rimini's citation recognizes that the CACI instruction renders separate but-for causation instruction unnecessary because the CACI model's language already "subsumes the 'but for' test of causation."   D-28 at 36 (quoting Directions for Use, CACI 430 (2015)).

Oracle proposed the same CACI model without the unnecessary and argumentative duplicative language in P-28.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 29:  INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE—COMPENSATORY DAMAGES**

If you find for Oracle America on its inducing breach of contract claim or for Oracle America or Oracle International on its intentional interference with prospective economic advantage claim, you must determine compensatory damages.  Compensatory damages consist of the amount of money that will reasonably and fairly compensate Oracle America or Oracle International Corporation for any damage due to the conduct that created liability on the claim.  Oracle America and Oracle International Corporation have the burden to prove compensatory damages by a preponderance of the evidence

In considering these instructions, you must keep in mind that Oracle America or Oracle International Corporation has the burden to prove any damages for each specific client or prospective relationship.  For example, if Oracle America or Oracle International Corporation proves damages as to one client, you may not extrapolate those damages to multiple clients, but instead must award only damages for the one client for which Oracle America or Oracle International Corporation has proven such damages.

In determining compensatory damages on these claims, you may consider whether Oracle America or Oracle International Corporation suffered any measurable loss of profits as a result of Rimini Street and/or Seth Ravin's conduct.  In this case, Oracle America and Oracle International Corporation contend that their business was affected because of loss of profits they might have earned but for Rimini Street and/or Seth Ravin's conduct.  Oracle America and Oracle International Corporation must prove any such loss of profits with reasonable certainty and individually as to each specific client or prospective relationship.

Damages, if any, should be restricted to such losses, if any, as are proved by facts from which their existence is logically and legally inferable.  The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the wrong are recoverable, and not those that are contingent and uncertain or mere speculation.

65

1    Although a qualified person may make estimates concerning probable profits or

2    losses of a going business, you should, in weighing all such evidence, take into

3    consideration, among other things, the truth or falsity of the basis of such estimates; the

4    knowledge or lack of knowledge of the witnesses of all of the conditions on which the

5    estimate is based; whether the facts assumed as a basis for an estimate rest upon actual

6    accounts and records kept in the ordinary course of business rather than in uncertain

7    recollections; and knowledge of the witness in the particular line of business about which

8    the witness testifies.  From all of the evidence in this case bearing on the subject, you

9    should determine for yourselves the probability or improbability, and the amount, of

10    profits anticipated by Oracle America or Oracle International Corporation.

11    The difficulty or uncertainty in ascertaining or measuring the precise amount of

12    any damages does not preclude recovery, and you, the jury, should use your best

13    judgment in determining the amount of such damages, if any, based upon the evidence.

14    However, damages may not be based on speculation or guesswork.

15    That the defendant did not actually anticipate or contemplate that these losses

16    would occur is not a relevant factor for you to consider.

17    **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 29**

18    Oracle objects to Rimini's proposed instruction, the second paragraph of which contains

19    the same language that Oracle objects to in D-23.  In the last sentence in its third paragraph,

20    Rimini has added further objectionable language to reiterate the same flawed point.

21    In addition, Rimini has removed an important teaching point for the jury, contained in P-

22    29 and in ABA Model Jury Instruction 2.10.2.  The third paragraph in Oracle's proposed

23    instruction explains to the jury that there must be a reasonable basis to compute lost profits and

24    explains how such profits are to be calculated.  Rimini chooses to ignore that fundamental

25    instruction, instead proposing an instruction that offers far less helpful guidance to the jury.

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 30:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTRODUCTION**

Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated five sections of the Federal Computer Fraud and Abuse Act ("CFAA").

The CFAA is an anti-hacking statute that should be applied narrowly and is intended to prohibit only computer hacking, not the general unauthorized use of information obtained from a computer.

In this case, Oracle America and Oracle International Corporation claim that Defendants violated the Computer Fraud and Abuse Act because, according to Oracle America and Oracle International Corporation, Rimini Street and Seth Ravin caused damage to Oracle America and Oracle International Corporation's computer systems by transmitting a program, information, code, or command that damaged Oracle America and Oracle International Corporation computers.

I will now instruct you on various sections of the CFAA, and the damages you may award if you find any CFAA violation.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 30**

Rimini's proposed introductory instruction to Oracle's CFAA claims improperly assigns legal interpretation to the jury by telling them to apply it "narrowly."  Further, Rimini has violated the Court's directive that they propose only "neutral statements of law."  Order re Trial at 3 (emphasis in original).  Contrary to the Court's direction, Rimini asks the Court to instruct the jury to apply the federal statute "narrowly . . . to prohibit only computer hacking"—a word that appears nowhere in the statute.  *See generally* 18 U.S.C. § 1030.  Directing the jury to apply the statute "narrowly" is irrelevant to the jury's determination, designed to favor Rimini, and not a neutral statement of the law.

First, Rimini's suggestion that the CFAA "should be applied narrowly" would improperly assign to the jury the legal question of *the categories of conduct* for which Rimini can be held liable for under the CFAA.  It is the judge's function to decide what conduct the CFAA does and

67

1  does not prohibit.  *E.g.*, Ninth Circuit Model Jury Instructions No. 1.1A.  The jury's function is

2  to determine the facts from the evidence, not decide what conduct the statute actually prohibits.

3  *Id.*  Rimini's proposed instruction to apply the statute "narrowly" either incorrectly vests in the

4  jury the power to decide what conduct the CFAA prohibits or confusingly suggests that Oracle's

5  burden of proof under the CFAA is more demanding than its burden under other claims; either

6  would be improper.  The same is true of Rimini's statement regarding the "intent" of the statute.

7  <u>Second</u>, Rimini's instruction that the CFAA "is intended to prohibit only computer

8  hacking" is not an "understandable, and <u>neutral</u>" statement of the law.  Order re Trial at 3

9  (emphasis in original).  Rimini proposes to instruct the jury that the statute prohibits "only

10 computer hacking" but does not define term (nor does the statute).  "Computer hacking" is not

11 alone an understandable term in this context, and instructing the jury that the CFAA prohibits

12 only "computer hacking," and not other conduct, is legally incorrect, is unclear, and will confuse

13 the jury as to what conduct is actually prohibited by the statute.

14 <u>Third</u>, Rimini confuses matters by describing Oracle's claim is based on "damage[]" to

15 "computers."  That concept is unnecessary in this instruction; Oracle's CFAA damages are

16 correctly addressed in P-34.

17 By contrast, Oracle's instruction P-30 is a concise transitional instruction that introduces

18 the CFAA to the jury in a neutral manner.

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 31:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—OBTAINING INFORMATION FROM A PROTECTED COMPUTER**

*First*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin unlawfully obtained information from a protected computer in violation of the CFAA, Section 1030(a)(2)(C).  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

    1)    Rimini Street and/or Seth Ravin intentionally accessed a computer without authorization, or exceeded authorized access;

    2)    Through such access, Rimini Street and/or Seth Ravin obtained information from a protected computer; and,

    3)    Such access caused loss to Oracle America and Oracle International Corporation totaling at least $5,000 in value during any one-year period.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 32:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—INTENTIONAL DAMAGE TO A PROTECTED COMPUTER**

*Second*, Oracle America and Oracle International Corporation contend that Rimini

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    Street and Seth Ravin committed damage to a protected computer in violation of the

2    CFAA, Section 1030(a)(5)(A).   To prevail under this provision, Oracle America and

3    Oracle International Corporation must prove each of the following elements by a

4    preponderance of the evidence:

5              1)    Rimini Street and/or Seth Ravin knowingly caused the transmission of a

6                    program, information, code, or command to a computer;

7              2)    As a result of such transmission, Rimini Street and/or Seth Ravin

8                    intentionally    caused    damage    to    a    protected    computer    without

9                    authorization; and

10             3)    Such transmission caused loss to Oracle America and Oracle International

11                   Corporation during any one-year period aggregating at least $5,000 in

12                   value.

13       If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin

14   to access Oracle America and/or Oracle International Corporation's computer, then you

15   must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and

16   Abuse Act.

17       If you find that Rimini Street and/or Seth Ravin believed it had authorization to

18   access Oracle America and/or Oracle International Corporation's computer, then you

19   must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and

20   Abuse Act.

21       If you find that Rimini Street and/or Seth Ravin believed its actions were not

22   illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the

23   Computer Fraud and Abuse Act.

24   **RIMINI'S PROPOSED JURY INSTRUCTION NO. 33:  FEDERAL COMPUTER**
25   **FRAUD AND ABUSE ACT—RECKLESS DAMAGE TO A PROTECTED COMPUTER**

26       *Third*, Oracle America and Oracle International Corporation contends that that

27   Rimini Street and Seth Ravin recklessly damaged a protected computer in violation of the

28   CFAA, Section 1030(a)(5)(B).   To prevail under this provision, Oracle America and

70

1    Oracle International Corporation must prove each of the following elements by a
2    preponderance of the evidence:

3         1) Rimini Street and/or Seth Ravin intentionally accessed a protected computer
4            without authorization;

5         2) As a result of such conduct, Rimini Street and/or Seth Ravin recklessly caused
6            damage; and,

7         3) Such access caused loss to Oracle America and/or Oracle International
8            Corporation during any one-year period aggregating at least $5,000 in value.

9    If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin
10   to access Oracle America and/or Oracle International Corporation's computer, then you
11   must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and
12   Abuse Act.

13   If you find that Rimini Street and/or Seth Ravin believed it had authorization to
14   access Oracle America and/or Oracle International Corporation's computer, then you
15   must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and
16   Abuse Act.

17   If you find that Rimini Street and/or Seth Ravin believed its actions were not
18   illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the
19   Computer Fraud and Abuse Act.

20   **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 31, 32 AND 33**

21   Rimini's instructions 31, 32, and 33 each propose the same inaccurate and misleading
22   statements of law.  Rimini proposes instructing the jury that it cannot find liability under the
23   CFAA if "a customer or licensee authorized Rimini . . . to access Oracle['s] computer"; "Rimini
24   . . . believed it had authorization to access Oracle['s] computer"; or "Rimini . . . believed its
25   actions were not illegal."  Each of these statements is wrong as a matter of law.

26   First, Rimini's proposal to instruct the jury that it cannot find a CFAA violation if "a
27   customer or licensee authorized Rimini" to access Oracle's computer is dead wrong.  Rimini's

28

71

1   customers might authorize Rimini to access *those customers'* computer systems, but Rimini cites

2   nothing showing Rimini's customers had the power to authorize Rimini to access *Oracle's*

3   computer system in ways not authorized by Oracle's Terms of Use.  What matters is whether and

4   to what extent *Oracle* authorized Rimini's access to Oracle's systems.

5       Second, neither of Rimini's "belief" instructions is necessary or helpful because the

6   explanation of the elements already includes the necessary mental state.  Therefore, the

7   additional instructions on belief are argumentative and unnecessary.  Oracle further objects

8   because Rimini's proposal permits even unreasonable beliefs to defeat the mental state.  That is

9   wrong.  *Clinton Plumbing and Heating of Trenton, Inc. v. Ciaccio*, 2010 WL 4224473, at *5

10   (E.D. Penn. Oct. 22, 2010) (unreasonable beliefs do not negate the required mental state for

11   CFAA claims); *see also Nosal*, 676 F3d at 86 (emphasizing the importance of notice before

12   imposing liability; nowhere requiring subjective belief).

13       Third, Rimini's proposed instruction would inaccurately and misleadingly instruct the

14   jury that Rimini cannot be liable under the CFAA if Rimini "believed it had authorization to

15   access" Oracle's computers.  As explained in Oracle's objection to Rimini's proposed instruction

16   30, this fails to distinguish between the independent concepts in the CFAA of unauthorized

17   access and exceeding authorized access.  The proposed language would confusingly and

18   inaccurately communicate to the jury that Rimini's access – even if knowingly exceeding the

19   scope if its authorization or conducted through a knowingly prohibited method of access such as

20   Rimini's automated toolset – could not constitute a violation of the CFAA so long as Rimini

21   believed it had *any* authorization to access an Oracle computer.

22       Fourth, Rimini's proposed instruction would improperly absolve Rimini of liability if

23   Rimini "believed its actions were not illegal."  The CFAA requires intent to access a computer,

24   not the violator's subjective belief that his conduct was "illegal."  Rimini cites *United States v.*

25   *Liu*, 731 F.3d 982, 990 (9th Cir. 2013), for the proposition that the CFAA requires "intentional

26   violation of a known legal duty."  That holding concerned the word "willfully" "as used in 17

27   U.S.C. § 506(a)" for criminal copyright liability, and the case does not concern civil liability

28   under the CFAA.  *Id.*  Defendants also cite *Cheek v. United States*, 498 U.S. 192, 201 (1991), a

1    criminal tax case that rules on the meaning of "willfulness" as an exception to the "general rule"

2    as used in criminal tax statutes.  *Id.* at 199 ("The general rule that ignorance of the law or a

3    mistake of law is no defense to criminal prosecution is deeply rooted in the American legal

4    system.").  The word "willful" appears in the CFAA only in § 1030(a)(1), a provision not at issue

5    in this case.  Rimini cites no case interpreting the meaning of the word "intentionally," much less

6    a case interpreting the word as used in the CFAA.  Rimini therefore has not shown authority

7    supporting its proposed modification from the structure of the Ninth Circuit model instructions.

8         By contrast, Oracle's proposed instructions generally track the Ninth Circuit model,

9    modified for clarity and adapted to the civil context.  P-31, P-32, P-33.  They are similar to

10    Rimini's proposed instructions with the exception of the three objectionable provisions

11    addressed above.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 34:  FEDERAL COMPUTER FRAUD AND ABUSE ACT—DAMAGES**

If you find that Rimini Street and/or Seth Ravin violated any of the CFAA sections described above, you may award Oracle America and/or Oracle International Corporation damages under the CFAA from that Rimini Street and/or Seth Ravin caused. These damages may include:

    1)      costs of responding to the violation;

    2)      costs of conducting a damage assessment;

    3)      costs of restoring the system and data to its prior condition;

    4)      lost revenues or costs due to interruption of service; and

    5)      costs of investigating the violation;

Any such damages must be tied directly to the specific violation.  In other words, it is Oracle's burden to prove that any such unauthorized access caused actual damages. For example, if Oracle claims it lost revenue as a result of unauthorized access to its computer systems, it must prove how the unauthorized access directly caused it to lose revenue.

It is Oracle's burden to prove its damages by a preponderance of the evidence. Damages may not be based on speculation or guesswork.

You should determine damages separately for each Defendant, if any, that you find violated the CFAA.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 34**

The parties' competing proposed instructions cite identical authority and share five of the six categories of damages Oracle is eligible to recover under its CFAA claim. P-34; D-34. Rimini's proposal is objectionable in two ways.

First, Rimini misstates the sixth category of damages. Oracle proposes the jury be instructed that its damages award may include "the value of any business that Oracle lost as a result of the violation of the CFAA."  P-34.  Oracle's proposal follows controlling Ninth Circuit

1   law.  *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004) ("Getloaded

2   objects to paying damages for loss of business and business goodwill. The objection is without

3   force because those are economic damages."); *see also* 18 U.S.C. 1030(g) ("Any person who

4   suffers damage or loss by reason of a violation of this section may maintain a civil action against

5   the violator to obtain compensatory damages and injunctive relief or other equitable relief. . . .

6   Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are

7   limited to economic damages.").

8        Second, Rimini wrongly proposes the following additional language:  "Any such

9   damages must be tied directly to the specific violation.  In other words, it is Oracle's burden to

10   prove that any such unauthorized access caused actual damages.  For example, if Oracle claims it

11   lost revenue as a result of unauthorized access to its computer systems, it must prove how the

12   unauthorized access directly caused it to lose revenue."  This proposal is argumentative and

13   unnecessary.  Neither the statute nor the case law impose a heighted "tied directly" standard, and

14   the example of what Oracle "must prove" simply argues Rimini's case.  Oracle's proposed jury

15   instruction required causation, and explains the preponderance burden of proof, and that is all

16   that is needed.

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 35:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED**

*First*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the CDAFA, Section 502(c)(2).  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

    1)    Rimini Street and/or Seth Ravin knowingly accessed and without permission took or made use of any data, computer, computer system, or computer network, or took any supporting documentation; and

    2)    Thereby caused Oracle America and Oracle International Corporation to suffer damage or loss.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 36:  CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT—CONTINUED**

*Second*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the CDAFA, Section 502(c)(3).  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

    1)    Rimini Street and/or Seth Ravin knowingly accessed and without permission used or caused to be used computer services; and

1         2)     Thereby caused Oracle America and Oracle International Corporation to

2               suffer damage or loss.

3        If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin

4 to access Oracle America and/or Oracle International Corporation's computer, then you

5 must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

6        If you find that Rimini Street and/or Seth Ravin believed it had authorization to

7 access Oracle America and/or Oracle International Corporation's computer, then you

8 must find that Rimini Street and/or Seth Ravin did not violate the CDAFA.

9        If you find that Rimini Street and/or Seth Ravin believed its actions were not

10 illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the

11 CDAFA.

### ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 35 AND 36

Rimini's instructions 35 and 36 propose the same inaccurate and misleading statements of law.  Rimini proposes instructing the jury that it cannot find liability under the CDAFA if "a customer or licensee authorized Rimini . . . to access Oracle['s] computer"; "Rimini . . . believed it had authorization to access Oracle['s] computer"; or "Rimini . . . believed its actions were not illegal."  Each of these statements is an argumentative and inaccurate statement of law.

First, Rimini's proposed instruction that it cannot be held liable under the CDAFA if a customer authorized Rimini to access any Oracle computer is dead wrong.  As described with respect to the CFAA in response to Rimini's proposed instructions D-31 to D-33, there is no basis to argue, let alone instruct the jury, that Rimini's customers were empowered to authorize Rimini to access Oracle's computer systems in ways not authorized by Oracle's Terms of Use.

Second, the paragraph immediately following the elements attempts to import into the (California) CDAFA the (Federal) CFAA requirement of "unauthorized access" from *Nosal*, 676 F.3d 854.  Even if Rimini were right under the CFAA, it would be wrong under the CDAFA. The Ninth Circuit last month rejected an attempt to import the CFAA's definition of "unauthorized access" into the CDAFA.  *United States v. Christensen*, --- F.3d ----, 2015 WL

1   5010591, at *14 (9th Cir. 2015) ("Defendants argue that we should interpret the state statute

2   consistent with the federal statute as interpreted by *Nosal*, but we disagree.  The statutes are

3   different.  In contrast to the CFAA, the California statute does not require *unauthorized* access.

4   It merely requires *knowing* access."  (emphases in original)).

5        <u>Third</u>, neither of Rimini's "belief" instructions is necessary or helpful because the

6   explanation of the elements already includes the necessary mental state.  Therefore, the

7   additional instructions on belief are argumentative and unnecessary.  Oracle further objects

8   because Rimini's proposal permits even <u>unreasonable</u> beliefs to defeat the mental state.  That is

9   wrong.

10        <u>Fourth</u>, Rimini's proposed instruction would inaccurately and misleadingly instruct the

11   jury that Rimini cannot be liable under the CDAFA if Rimini "believed it had authorization to

12   access" Oracle's computers.  The proposed language would confusingly and inaccurately tell the

13   jury that Rimini's access – even if done knowing Rimini lacked permission or conducted through

14   a knowingly prohibited method of access such as Rimini's automated toolset – could not

15   constitute a violation of the CDAFA so long as Rimini believed it had *any* authorization to

16   access an Oracle computer.

17        <u>Fifth</u>, Rimini's proposed instruction would improperly absolve Rimini of liability if

18   Rimini "believed its actions were not illegal."  The CDAFA "merely requires knowing access,"

19   not the violator's subjective belief that his conduct was "illegal."  *Christensen*, --- F.3d ----, 2015

20   WL 5010591, at *14 (9th Cir. 2015).  Rimini's citations to the *Liu* and *Cheek* cases are inapt for

21   the reasons explained above in Oracle's objections to Oracle's objections to Rimini's proposed

22   instructions 31-33.

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 37:  NEVADA COMPUTER CRIMES LAW—CONTINUED**

*First*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 1.  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1) Rimini Street and/or Seth Ravin modified, damaged, disclosed, used, transferred, concealed, retained possession of, obtained or attempted to obtain access to, permitted access to or caused to be accessed, or entered any of the following: data, a program or any supporting documents which exist inside or outside a computer, system or network;

2) Rimini Street and/or Seth Ravin did so knowingly, willfully, and without authorization; and

3) Oracle America and/or Oracle International Corporation was the victim of the Defendant's conduct.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the NCLL.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 38:  NEVADA COMPUTER CRIMES LAW—CONTINUED**

*Second*, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 3.  To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

by a preponderance of the evidence:

    1)    Rimini Street and/or Seth Ravin damaged, altered, transferred, disclosed, concealed, used, retained possession of, or obtained or attempted to obtain access to, permitted access to or caused to be accessed any of the following: a computer, system or network;

    2)    Rimini Street and/or Seth Ravin did so knowingly, willfully, and without authorization; and

    3)    Oracle America and/or Oracle International Corporation was the victim of the Defendant's conduct.

If you find that a customer or licensee authorized Rimini Street and/or Seth Ravin to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCCL.

If you find that Rimini Street and/or Seth Ravin believed its actions were not illegal, then you must find that Rimini Street and/or Seth Ravin did not violate the NCLL.

## ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 37 AND 38

Rimini's instructions 37 and 38 propose the same inaccurate and misleading statements of law. Rimini proposes instructing the jury that it cannot find liability under the NCCL if "a customer or licensee authorized Rimini . . . to access Oracle['s] computer"; "Rimini . . . believed it had authorization to access Oracle['s] computer"; or "Rimini . . . believed its actions were not illegal." Each of these statements is an argumentative and inaccurate statement of law.

First, Rimini's proposed instruction that it cannot be held liable under the NCCL if a customer authorized Rimini to access any Oracle computer is an argumentative and improper attempt to limit Oracle's proof of Rimini's NCCL violation for the same reasons stated under Oracle's objections to Rimini's proposed instructions D-31 to D-33 (concerning the CFAA) and

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   D-35 to D-36 (concerning the CDAFA)— Rimini's customers did not have the power to

2   authorize Rimini to access *Oracle's* computer system in ways not authorized by Oracle's Terms

3   of Use.

4          Second, the paragraph immediately following the elements attempts to import the CFAA

5   requirement of "unauthorized access" from *Nosal*, 676 F.3d 854.  Even if Rimini were right

6   under the CFAA, it would be wrong under the NCCL, which prohibits a variety of conduct other

7   than access and does not use the CFAA's term of art.

8          Third, neither of Rimini's "belief" instructions is necessary or helpful because the

9   explanation of the elements already includes the necessary mental state.  Therefore, the

10  additional instructions on belief are argumentative and unnecessary.  Oracle further objects

11  because Rimini's proposal permits even <u>unreasonable</u> beliefs to defeat the mental state.

12         Fourth, Rimini's proposed instruction would improperly absolve Rimini of liability if

13  Rimini "believed its actions were not illegal."  Rimini's citations to the *Liu* and *Cheek* cases are

14  inapt for the reasons explained above in Oracle's objections to Rimini's proposed instructions D-

15  31 and D-33 (concerning the CFAA).[9]

16         Fifth, Rimini's proposed instruction would inaccurately and misleadingly instruct the jury

17  that Rimini cannot be liable under the NCCL if Rimini "believed it had authorization to access"

18  Oracle's computers.  The proposed language would confusingly and inaccurately communicate

19  to the jury that Rimini's access – even if done knowing Rimini lacked permission or conducted

20  through a knowingly prohibited method of access such as Rimini's automated toolset – could not

21  constitute a violation of the CDAFA so long as Rimini believed it had *any* authorization to

22  access an Oracle computer.

23  ───────────────────

24         [9] Though the NCCL requires "willful[]" conduct, Rimini's own cited cases recognize that
    the "general rule" is "that ignorance of the law or a mistake of law is no defense."  *Cheek*, 498

25  U.S. at 199.  Rimini points to two particular federal criminal statutes that require knowing
    violations of the law:  certain tax and copyright statutes.  *Id.* at 200 ("the statutory term

26  'willfully' as used in the federal criminal tax statutes [is recognized] as carving out an exception
    to the traditional rule"); *Liu*, 731 F.3d at 988.  Rimini does not cite any Nevada authority, much

27  less authority interpreting the NCCL, a Nevada statute.

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## RIMINI'S PROPOSED JURY INSTRUCTION NO. 39:  BREACH OF CONTRACT

Oracle America contends that Rimini Street and Seth Ravin breach contracts with Oracle America.  Specifically, Oracle America contends that in order to gain access to Oracle America's customer support websites, each user must agree to abide by terms of use for those websites, creating a contract between Oracle America and the user.  Oracle America contends that Defendants agreed to these terms of use, but then violated that contract by engaging in conduct that the contract prohibited.  Oracle America contends that Defendants' breach of contract caused harm for which Defendants should pay.

To prevail on its claim for breach of contract, Oracle America must prove by a preponderance of the evidence all of the following:

1) Oracle America and a Defendant entered into a contract;

[Insert specific contracts Oracle introduces at trial]

2) Oracle America did all, or substantially all, of the significant things that the contract required it to do;

[Insert specific performance Oracle establishes at trial]

3) All conditions required by the contract for Oracle America's performance had occurred;

4) Rimini Street failed to do something that the contract required, or did something that the contract prohibited; and

5) [Insert specific allegations of breach Oracle establishes at trial] Oracle America was harmed by that failure.


## ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 39

Oracle objects to Defendants' placeholders for "specific contracts Oracle introduces at trial" and the specific contract performance and breaches.  Both Rimini's proposed instruction and Oracle's version, P-45, specify that the relevant contracts are acceptance of the "terms of use" for certain websites when they are used.  It is impractical and unnecessary to detail in the

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1     jury instructions the various acceptances of the terms of use by Rimini over a several year

2     period.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1  **RIMINI'S PROPOSED JURY INSTRUCTION NO. 40:  NOMINAL DAMAGES—**
**BREACH OF CONTRACT**

2

3            If you decide that Rimini Street breached the contract but also that Oracle

America was not harmed by the breach, you may still award Oracle America nominal

4

damages such as one dollar.

5

6  **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 40**

7         This instruction is unnecessary because Oracle will not seek damages on its contract

8  claim, only a finding of liability.  Instructing the jury on nominal damages in these circumstances

9  is confusing and unnecessary.  The jury will simply answer the question whether Oracle prove

10  liability on its contract claim with "yes" or "no."

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 41:  TRESPASS TO CHATTELS— CAUSATION**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Put another way, the "substantial factor" test means that "but for" the defendant's conduct, the plaintiff's harm would not have occurred.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 41**

As in its response to D-28, Oracle objects to the last sentence as confusing and unnecessary.  Rimini added to the CACI model a final sentence about "but for" causation, which is unnecessary and offered solely to argue and emphasize Rimini's causation theme.  At the same time, Rimini's citation recognizes that the CACI instruction renders separate but-for causation instruction unnecessary because the CACI model's language already "subsumes the 'but for' test of causation."  D-28 at 36 (quoting Directions for Use, CACI 430 (2015)).

In P-44, Oracle proposed the same CACI model without the unnecessary and argumentative duplicative language.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 42:  PUNITIVE DAMAGES— PURPOSE [PHASE 1]**

Punitive damages are aimed at deterrence and punishment, and pose an acute danger of arbitrary deprivation of property.  In deciding whether to impose punitive damages, you must keep in mind that society views the imposition of punishment, including punitive damages, as a very serious task that should be done only after careful and thoughtful deliberation.  Punitive damages are disfavored in the law and should be imposed only with caution and within narrow limits.  In deciding whether to impose any punitive damages, and in fixing the amount, if any, you must act with calm reason and sound discretion and take care to ensure that bias, passion, or prejudice do not enter into your decision in any way.  The decision whether to impose punitive damages is discretionary, which means that you do not have to award them even if you find that the evidence would support them.  The fact that the Court is instructing you on the law of punitive damages is not meant in any way to influence your decision whether to impose them.

You must not award punitive damages to send a message to Rimini Street and/or Seth Ravin or to prevent Rimini Street and/or Seth Ravin from lawfully competing with Oracle America or Oracle International Corporation.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 42**

Oracle objects to Rimini's proposed instruction number 42 because it is duplicative and unnecessarily complicates the model instruction.

First, this proposed jury instruction on the purpose of punitive damages is duplicative of the Model Nevada Jury Instruction 12PD.1, incorporated in D-43 and P-46.  The Model Jury Instruction clearly states:  "The purposes of punitive damages are to punish a wrongdoer that acts with fraud, oppression and/or malice in harming a plaintiff and deter similar conduct in the future, not to make the plaintiff whole for its injuries.  Consequently, a plaintiff is never entitled to punitive damages as a matter of right and whether to award punitive damages against a

1   Defendant is entirely within your discretion."  There is no need for duplicative instructions. *City*
2   *of Los Angeles v. Retlaw Enters., Inc.*, 16 Cal. 3d 473, 490 (1976) ("The court's refusal so to
3   instruct the jury was proper since the requested instruction would have essentially duplicated
4   other instructions which the court did give to the jury.").

5       Second, this instruction improperly tells the jury to interpret the law ("disfavored in the
6   law").

7       Third, Model Jury Instruction 12PD.1, which Oracle proposes almost verbatim in P-46,
8   includes a more concise statement of the law that already accounts for and cites the authority
9   Defendants reference (*State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416-
10  17 (2003); *Philip Morris USA v. Williams*, 549 U.S. 346, 352-53 (2007) (relying on *State Farm*'s
11  standards for punitive damages)).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 43:  DAMAGES—PUNITIVE DAMAGES—LIABILITY [PHASE 1]**

If you find that Oracle America and/or Oracle International Corporation is entitled to compensatory damages for actual harm or loss on any of the following claims, then you may, but are not required to, award punitive damages to Oracle America and/or Oracle International Corporation:

1)      California Computer Data Access and Fraud Act (CDAFA);

2)      Nevada Computer Crime Law (NCCL); or

3)      Intentional interference with prospective economic advantage.

You may not award punitive damages with respect to any other claim by any of the plaintiffs.

If you find that Oracle America and/or Oracle International Corporation are entitled to compensatory damages for actual harm or loss caused under one or more of those claims, then you may consider whether you should award punitive damages against that Defendant.  The question whether to award punitive damages against a particular Defendant must be considered separately with respect to each Defendant.

You may award punitive damages against a Defendant only if Oracle America and/or Oracle International Corporation proves by clear and convincing evidence that the wrongful conduct upon which you base your finding of liability for compensatory damages was engaged in with fraud, oppression or malice on the part of that Defendant.

To award punitive damages against Rimini Street, you must also find that the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Rimini Street who acted on behalf of Rimini Street or an officer, director, or managing agent authorized the conduct or knew the conduct occurred and approved it after it occurred.

You cannot punish the Defendant for conduct that is lawful, or which did not cause actual harm or loss to Oracle America and/or Oracle International Corporation.  For the purposes of your consideration of punitive damages only:

1    "Fraud" means an intentional misrepresentation, deception or concealment of a

2    material fact known to a defendant with the intent to deprive Oracle America and/or

3    Oracle International Corporation of rights or property or to otherwise injure Oracle

4    America and/or Oracle International Corporation.

5    "Oppression" means despicable conduct that subjects Oracle America and/or

6    Oracle International Corporation to cruel and unjust hardship with a conscious disregard

7    of the rights of the Oracle America and/or Oracle International Corporation.

8    "Malice" means conduct which is intended to injure the Oracle America and/or

9    Oracle International Corporation or despicable conduct which is engaged in with a

10   conscious disregard of the rights or safety of Oracle America and/or Oracle International

11   Corporation.

12   "Despicable conduct" means conduct that is so vile, base or contemptible that it

13   would be looked down upon and despised by ordinary, decent people.

14   "Conscious disregard" means knowledge of the probable harmful consequences

15   of a wrongful act and a willful and deliberate failure to avoid these consequences.

16   The purposes of punitive damages are to punish a wrongdoer that acts with fraud,

17   oppression and/or malice in harming a plaintiff and deter similar conduct in the future,

18   not to make the plaintiff whole for its injuries.  Consequently, a plaintiff is never entitled

19   to punitive damages as a matter of right and whether to award punitive damages against a

20   Defendant is entirely within your discretion.

21   You are only asked to decide whether punitive damages would be proper and

22   justified in this case.  You are not asked to determine an amount of punitive damages.

23

24   **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 43**

25   Oracle proposed as P-46 a similar instruction consistent with Model Nevada Jury

26   Instruction 12PD.1.  However, Oracle objects to D-43 fourth paragraph ("To award punitive

27   damages . . . .") as unnecessarily duplicative of the parties' agreed proposed instruction J-40

28   (concerning officer, director, or managing agent issues in punitive damages).  Oracle also objects

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    to the instruction's omission of trespass to chattels as a basis for punitive damages.

2         First, Oracle objects to the inclusion of the fourth paragraph after the elements ("To

3    award punitive damages . . . .") because it adds additional verbiage to the Model Nevada Jury

4    Instructions that is unnecessary and duplicative of the Parties' proposed instruction J-40.

5    Rimini's reference to conduct relating to "officers, directors, or managing agents" of Rimini

6    Street is based on Cal. Civ. Code § 3294 and includes verbatim language from CACI 3942 (not

7    cited by Rimini) that it already accounted for.  P-46 follows almost verbatim the Model Nevada

8    Jury Instructions and there is no need to vary the form by duplicating an instruction addressed

9    elsewhere.

10        Second, Rimini's omission of trespass to chattels as a basis for punitive damages is

11   improper.  Oracle has a right to seek punitive damages for trespass to chattels.  Nevada Revised

12   Statute 42.005 provides that "in an action for the breach of an obligation not arising from

13   contract, where it is proven by clear and convincing evidence that the defendant has been guilty

14   of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory

15   damages, may recover . . . punitive damages."  The Court's August 25, 2015 Order specified that

16   punitive damages would be awarded in accordance with Nevada law.  Order, Dkt. 717 at 3.

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 44:  PUNITIVE DAMAGES—SPECIFIC HARM TO PLAINTIFF [PHASE 1]**

Punitive damages may not be used to punish Rimini Street and/or Seth Ravin for conduct or harm that was not proven at trial or based on harm to persons other than Oracle.  Rather, punitive damages must be limited to the specific harm suffered by Oracle America and/or Oracle International Corporation and that Oracle America and/or Oracle International Corporation proved at trial.  Accordingly, you must limit any punitive damages you award to the specific harm from losing the specific clients for which Oracle America and/or Oracle International Corporation has proven that Rimini Street and/or Seth Ravin induced a breach of contract or intentionally interfered with Oracle America and/or Oracle International Corporation's prospective economic advantage.  You may award punitive damages only related to the conduct for those specific clients.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 44**

Oracle objects to D-44 because it is duplicative, repetitive, unnecessarily complicates the model instruction and wrongfully limits the discussion of punitive damages to breach of contract and intentional interference.

First, this proposed jury instruction on the specific harm requirement is duplicative of the Model Nevada Jury Instruction 12PD.1 (incorporated in D-43 and proposed in P-46).  The model instruction clearly states:  "You cannot punish the Defendant for conduct that is lawful, *or which did not cause actual harm or loss to Oracle*." (emphasis added.)

Second, Model Nevada Model Instruction 12PD.1, proposed almost verbatim in P-46, includes a more concise statement of the law that already accounts for the authority cited by Defendants.  (Defendants' rely on *State Farm*, 538 U.S. at 416-17 and *Philip Morris,* 549 U.S. at 353 (relying on *State Farm's* standards for punitive damages).  The model instruction addresses the *State Farm* decision.

Third, by focusing on punitive damages based on breach of contract and intentional interference the proposed instruction ignores the other grounds available for punitive damages,

1    including Oracle's CDAFA, NCCL and trespass to chattel claims and wrongfully limits the

2    availability of punitive damages.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 45:  PUNITIVE DAMAGES—OBJECTIVELY REASONABLE CONDUCT [PHASE 1]**

Even if you find that punitive damages might be available, if you decide that Rimini Street and/or Seth Ravin acted based on an objectively reasonable belief that its conduct was not unlawful, such as its interpretation of what the licenses allowed, then you must not award any punitive damages.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 46:  PUNITIVE DAMAGES—INDUSTRY STANDARDS [PHASE 1]**

Even if you find that punitive damages might be available, if you decide that Rimini Street and/or Seth Ravin acted consistent with industry standards or custom, then you must not award any punitive damages.

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 47:  PUNITIVE DAMAGES—FAIR NOTICE [PHASE 1]**

Even if you find that punitive damages might be available, if you decide that at the time of the challenged conduct Rimini Street and/or Seth Ravin was not on reasonable and fair notice that its conduct was unlawful, then you must not award any punitive damages.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NOS. 45, 46 AND 47**

Oracle objects to D-45 to D-47 because they are duplicative, repetitive, unnecessarily complicate the model instruction and may confuse to the jury.  Further, each instruction mischaracterizes the law.

First, the proposed jury instructions are duplicative of the Model Nevada Jury Instruction 12PD.1.  P-47 is almost verbatim of the Model Nevada Jury Instruction and defines the requisite level of intent necessary to award punitive damages.  Rimini's proposed instructions go to Rimini's intent and single out particular situations that would create a less than requisite level of culpability.  Model Nevada Jury Instruction 12PD.1 (incorporated in D-43 and proposed in P-46) already accounts for this when it specifies in detail the need to establish fraud, oppression or malice as a basis for punitive damages.  Each term is defined.  There is no need for additional,

93

1   repetitive instructions addressing the issue again.

2       <u>Second</u>, D-45 to D-47 mischaracterize the cited authority.  Rimini quotes the Court's

3   order which stated, "the court finds that Hilliard's testimony about industry standards, customs,

4   and practice is relevant to Oracle's claims for punitive damages and willful infringement. In his

5   expert report, Hilliard provides testimony and analysis of the ordinary practices in the industry.

6   The court finds that such testimony will assist the jury in determining whether defendants'

7   actions were willful." Dkt. No. 724, at 8.  The Court's order simply suggests that evidence will

8   assist the jury when considering if the prerequisite elements for punitive damages have been

9   established.  Nothing in the order suggests that "[e]ven if you find that punitive damages might

10  be available" a separate and distinct defense exists.  Each of the cases Rimini cites for D-46

11  supports the proposition that acting consistently with industry standard might be evidence of

12  reasonableness; they do not say that acting within industry standards is a defense to a finding of

13  punitive damages.

14      <u>Third</u>, D-47 is baseless.  Rimini cannot argue that there was a substantial change in the

15  laws such that application of punitive would be unjust.   Here, there is no basis to claim

16  retroactive application of the law.  Allowing this instruction will mislead and confuse the jury.

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 48:  DAMAGES—PUNITIVE DAMAGES—NO RIGHT TO PUNITIVE DAMAGES [PHASE TWO]**

You must now decide the amount, if any, that you should award Oracle America and/or Oracle International Corporation in punitive damages.  There is no right to punitive damages.  Accordingly, you need not award punitive damages even if you have found that the standard for imposing punitive damages has been satisfied.

The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.  There is no fixed formula for determining the amount of punitive damages and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors separately in determining the amount:

(a)	How reprehensible was that defendant's conduct? In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:

1)	Whether the conduct caused physical harm;

2)	Whether the defendant disregarded the health or safety of others;

3)	Whether Oracle America and/or Oracle International Corporation was financially weak or vulnerable and the Defendant knew Oracle America and/or Oracle International Corporation was financially weak or vulnerable and took advantage of it;

4)	Whether Defendant's conduct involved a pattern or practice; and

5)	Whether Defendant acted with trickery or deceit.

(b)	Is there a reasonable relationship between the amount of punitive damages and Oracle America and/or Oracle International Corporation harm that Rimini Street and/or Seth Ravin knew was likely to occur because of its conduct?

(c)	In view of Defendant's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.  Any award you impose may not exceed Rimini Street

95

1    and/or Seth Ravin's ability to pay.

2

3    **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 48**

4         Oracle objects to this instruction because Rimini's proposed jury instruction fails to

5    comply with the Court's Order on August 25, 2015.  Order, Dkt. 717.  The Court ordered that the

6    amount of punitive damages "be awarded in accordance with Nevada law."  Rimini's proposed

7    instruction is based on California Civil Jury Instruction.  In contrast, P-47 reflects Model Nevada

8    Jury Instruction 12PD.2.  Since there exists a relevant Nevada model instruction there is no basis

9    to adopt the California model instruction addressing the same issues.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 49:  PUNITIVE DAMAGES—SPECIFIC HARM TO PLAINTIFF [PHASE TWO]**

Punitive damages may not be used to punish Rimini Street and/or Seth Ravin for conduct or harm that was not proven at trial or based on harm to persons other than Oracle America and/or Oracle International Corporation.  Rather, punitive damages must be limited to the specific harm suffered by Oracle America and/or Oracle International Corporation and that Oracle America and/or Oracle International Corporation proved at trial.  Accordingly, you must limit any punitive damages you award to the specific harm from losing the specific clients for which Oracle America and/or Oracle International Corporation has proven that Rimini Street and/or Seth Ravin induced a breach of contract or intentionally interfered with Oracle America and/or Oracle International Corporation's prospective economic advantage.  You may award punitive damages only related to the conduct for those specific clients.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 49**

Oracle objects to this instruction because it is duplicative, unnecessarily complicates the model instruction, and is potentially confusing to the jury.

The proposed jury instruction is duplicative of the Model Nevada Jury Instruction 12PD.2.  Oracle's proposed jury instruction P-47 is almost verbatim from the Nevada Jury Instruction and states, "Your award cannot either punish the defendant for conduct injuring others who are not parties to this litigation . . . ."  There is no need for duplicative instructions.

97

1  **RIMINI'S PROPOSED JURY INSTRUCTION NO. 50:  PUNITIVE DAMAGES—**

2  **RELATIONSHIP TO COMPENSATORY DAMAGES [PHASE TWO]**

3    The purpose of compensatory damages is to compensate the plaintiff and to make

4  him whole.  However, a substantial award of compensatory damages also has the effect

5  of punishing and deterring misconduct.  Therefore, in determining the amount of punitive

6  damages, if any, to award, you must consider the punitive and deterrent effect associated

7  with your award of compensatory damages alone.

8    The size of the punitive damage award must bear a reasonable relationship to the

9  amount of harm caused to the plaintiffs by the defendant's punishable misconduct.  If the

10  compensatory damages awarded are substantial, then a punitive damage award equal to

11  the compensatory award can reach the outermost limit permitted by law, although a lesser

12  amount may be appropriate.

13

14  **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 50**

15    Oracle objects to D-50 because Rimini cites no authority to support its proposition that

16  the jury must consider the punitive and deterrent effect associated with the award of

17  compensatory damages alone.  Rimini cites *State Farm Mutual Automobile Ins. Co. v. Campbell*

18  538 U.S. 408 (2003) to presumably support its assertion that a jury must consider the punitive

19  and deterrent effect associated the compensatory award, but State Farm offers no support in this

20  case.  *State Farm* held that compensatory damages contain a punitive element "in cases in which

21  compensatory damages include an amount for emotional distress, such as humiliation or

22  indignation aroused by the defendant's act." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538

23  U.S. 408, 426 (2003) (citing Restatement (Second) of Torts § 908 (1979)), which is plainly not

24  this case.

25    Oracle also objects to this instruction as duplicative, unnecessarily complicating, and

26  confusing.  It duplicates Model Nevada Jury Instruction 12PD.2, as reflected in P-47, which

27  states, "The ratio of your punitive damage award to the actual harm inflicted on Oracle by the

28  conduct warranting punitive damages in this case, since the measure of punishment must be both

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1  reasonable and proportionate to the amount of harm to Oracle and to the compensatory damages

2  recovered by Oracle in this case."  It is unnecessary and argumentative to tell the jury the same

3  thing twice.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**RIMINI'S PROPOSED JURY INSTRUCTION NO. 51:  PUNITIVE DAMAGES—FINANCIAL CONDITION [PHASE TWO]**

The purpose of punitive damages is not served by financially destroying a defendant.  Therefore, any award of punitive damages should reflect the amount you believe is appropriate to punish and deter, but you should not award an amount of punitive damages that is a significant percentage of a Rimini Street and/or Seth Ravin's net worth, that would prevent Rimini Street from continuing to operate, or that would threaten bankruptcy because such a punitive damages award would be excessive under the law.

**ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 51**

Oracle objects to this instruction as duplicative, unnecessarily complicating, and confusing.

The proposed jury instruction is duplicative of the Model Nevada Jury Instruction 12PD.2, reflected in P-47, which states "Your award cannot…financially annihilate or destroy the Defendant in light of the Defendant's financial condition."   Once again, Rimini's duplication is unnecessary and argumentative.

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   **RIMINI'S PROPOSED JURY INSTRUCTION NO. 52:  DUPLICATIVE DAMAGES**

2          Oracle seeks an award of damages under multiple claims or legal theories.  Oracle

3   is not entitled to recover twice for the same injury.  For example, if you conclude that

4   Rimini Street is liable for causing Oracle to lose a customer under multiple claims or

5   theories, you must award damages to Oracle for that customer only once.

6          After each claim or legal theory on your verdict form, there is a space for the

7   amount of damages – if any – that you intend to award to Oracle under that claim or legal

8   theory.  The amount you enter into these spaces should not include damages that are

9   duplicative of other damages you have awarded for other claims or theories.

10  **ORACLE'S OBJECTION TO RIMINI'S PROPOSED JURY INSTRUCTION NO. 52**

11         Oracle objects to Rimini's instruction, which would confuse the jury.  Where damages

12  are available on more than one claim, Rimini's proposed instruction does not tell the jury under

13  *which* claim to award the damages.  Not only does that leave the jury to decide without among

14  the claims without any guidance about how to do so, it risks an unnecessary retrial if some

15  claims (but not others) are addressed by post-trial motions or on appeal.

16         Oracle's proposal, P-48, addresses duplication in a clearer and more practical manner.  It

17  asks the jury to award the full damages on each claim and then tally a non-duplicative total.  It

18  avoids unnecessary choice among the claims by the jury, and provides a clearer record for post-

19  trial motions and on appeal.

20

21

22  DATED:  September 11, 2015                BOIES SCHILLER & FLEXNER LLP

23

24                                            By: /s/ *Kieran P. Ringgenberg*
25                                            Kieran P. Ringgenberg
                                              Attorneys for Plaintiffs
26                                            Oracle USA, Inc., Oracle America, Inc., and
                                              Oracle International Corp.

27

28

ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS