1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    WILLIAM ISAACSON (*pro hac vice*)
6   KAREN DUNN (*pro hac vice*)
    5301 Wisconsin Ave, NW
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
11  KIERAN P. RINGGENBERG (*pro hac vice*)
    1999 Harrison Street, Suite 900
12  Oakland, CA 94612
    Telephone: (510) 874-1000
13  Facsimile: (510) 874-1460
    sholtzman@bsfllp.com
14  kringgenberg@bsfllp.com
    *Attorneys for Plaintiffs*
15  Oracle USA, Inc., Oracle America, Inc., and
    Oracle International Corp.

    MORGAN, LEWIS & BOCKIUS LLP
    THOMAS S. HIXSON (*pro hac vice*)
    KRISTEN A. PALUMBO (*pro hac vice*)
    One Market Street
    Spear Street Tower
    San Francisco, CA 94105-1596
    Telephone: (415) 442-1000
    Facsimile: (415) 442-1001
    thomas.hixson@morganlewis.com
    kristen.palumbo@morganlewis.com

    DORIAN DALEY (*pro hac vice*)
    DEBORAH K. MILLER (*pro hac vice*)
    JAMES C. MAROULIS (*pro hac vice*)
    ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    dorian.daley@oracle.com
    deborah.miller@oracle.com
    jim.maroulis@oracle.com

16

17

18                    **UNITED STATES DISTRICT COURT**

19                         **DISTRICT OF NEVADA**

20

21  ORACLE USA, INC., a Colorado corporation;        CASE NO. 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
22  corporation; and ORACLE INTERNATIONAL            **PLAINTIFFS ORACLE USA, INC.,**
    CORPORATION, a California corporation,           **ORACLE AMERICA, INC., AND**
23                                                   **ORACLE INTERNATIONAL**
                                                     **CORPORATION'S OPPOSITION TO**
24                  Plaintiffs,                      **DEFENDANT'S OBJECTIONS  TO**
                v.                                   **PLAINTIFF'S PROPOSED JURY**
25                                                   **INSTRUCTIONS**
    RIMINI STREET, INC., a Nevada corporation;
26  SETH RAVIN, an individual,

27                  Defendants.

28

1

**TABLE OF CONTENTS**

2

3   INTRODUCTION ........................................................................................ 1

4   ARGUMENTS .............................................................................................. 1

5      I.    Preliminary Instructions Concerning The Parties And Evidence ........................ 1

6

7         A.   Oracle Entities (P-3; D-1) ......................................................... 1

8         B.   Permissible Inferences (*passim*)................................................. 3

9         C.   Spoliation (P-6; J-28) ................................................................ 5

10     II.   Copyright ........................................................................................ 6

11        A.   Copyright Liability (P-4, P-11 to P-17; D-3 to D-11)................................ 6

12        B.   Parol Evidence (P-5; P-15) ....................................................... 7

13

14        C.   Copyright Causation (P-18 and D-20) ....................................... 8

15        D.   Copyright Damages (P-19 to P-23 and D-20 to 22)................................ 9

16     III.  Interference Torts ........................................................................... 12

17        A.   Inducing Breach Of Contract (P-24; D-23)................................ 12

18        B.   Issues Common To Inducing Breach Of Contract And Intentional Interference With Prospective Economic Relations (P-24 to P-29; D-24 to D-29)................................................................ 12

19

20     IV.  Computer Law Violations (P-30 to P-41; D-30 to D-38) ................................ 14

21     V.   Punitive Damages (P-46 to P-47; D-42 to D-51) ........................................ 16

22   CONCLUSION.......................................................................................... 17

23

24

25

26

27

28

1

<strong>TABLE OF AUTHORITIES</strong>

2

3 **Cases**

4

5 *Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................. 4

6 *Coughlin v. Rogers*,
    130 F.3d 1348 (9th Cir. 1997) ............................................................................ 2

7

8 *Craigslist Inc. v. 3Taps Inc.*,
    964 F. Supp. 2d 1178 (N.D. Cal. 2013) ....................................................... 14, 15

9

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ............................................................................ 17

10

11 *Data Gen. Corp. v. Grumman Systems Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994) .............................................................................. 8

12

13 *Davis v. Nadrich*,
    174 Cal. App. 4th 1 (2d Dist. 2009) ................................................................. 12

14

*DeVoto v. Pacific Fidelity Life Insurance Co.*,
    618 F.2d 1340 (9th Cir. 1980) .......................................................................... 14

15

16 *Dream Games of Ariz., Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) ............................................................................ 11

17

18 *Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998) .......................................................................................... 11

19

20 *Fiorini v. City Brewing Company, LLC*,
    231 Cal. App. 4th 306 (5th Dist. 2014) ............................................................ 16

21 *Forro Precision, Inc. v. IBM Corp.*,
    673 F.2d 1045, 1052 (9th Cir. 1982) ................................................................. 5

22

23 *Frantz v. Johnson*,
    116 Nev. 455 (2000) .......................................................................................... 5

24

25 *Hasham v. California State Bd. of Equalization*,
    200 F.3d 1035 (7th Cir. 2000) ........................................................................... 3

26 *Heather v. Medtronic Inc.*,
    No. 2:14-cv-01595-SVW-FFM, 2014 WL 2736093 (C.D. Cal. June 9, 2014) ...................... 2

27

28

*Homoki v. Conversion Svcs., Inc.,*
    717 F.3d 388 (5th Cir. 2013)............................................................................ 5

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .............................................................................. 14

*Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nevada,*
    106 Nev. 283 (1990) ...................................................................... 1, 12, 14

*Mackie v. Rieser,*
    296 F.3d 909 (9th Cir. 2002)........................................................................ 8

*Metropolitan Paving Co. v. International Union of Operating Engineers,*
    439 F.2d 300 (10th Cir. 1971)...................................................................... 2

*Mid - America Tablewares, Inc v. Mogi Trading Co.,*
    100 F.3d 1353 (7th Cir. 1996)...................................................................... 4

*Mitchell v. Gonzales,*
    54 Cal. 3d 1041 (1991) ................................................................................ 8

*Nebula Glass Int'l, Inc. v. Reichhold, Inc.,*
    454 F.3d 1203 (11th Cir. 2006).................................................................... 5

*News Serv. v. Reuters Telvision Int'l, Ltd.,*
    149 F.3d 987 (9th Cir. 1998)...................................................................... 11

*On Davis v. The Gap Inc.,*
    246 F.3d 152 (2d Cir. 2001)................................................................. 10, 12

*Oracle Corp. v. SAP AG,*
    765 F.3d 1081 (9th Cir. 2014)................................................................. 9, 10

*Oracle v. SAP AG,*
    C 07-1658 PJH, 2011 WL 3862074 (N.D. Cal. Sept. 1, 2011).............................. 9

*Pac. Shores Properties, LLC v. City of Newport Beach,*
    730 F.3d 1142 (9th Cir. 2013) *cert. denied sub nom. City of Newport Beach,*
    *Cal. v. Pac. Shores Properties, LLC*, 135 S. Ct. 436, (2014) ................................ 4

*Palmer v. Conn. Railway & Lighting Co.,*
    311 U.S. 544 (1941) ................................................................................ 4, 13

*People v. Garcia,*
    21 Cal. 4th 1 (1999) ................................................................................... 16

*People v. Hawkins,*
    98 Cal. App. 4th 1428 (6th Dist. 2002)...................................................... 15

iii

*Polar Bear Prods., Inc. v. Timex Corp.*,
    374 F.3d 700 (9th Cir. 2004)...................................................................................... 8, 9, 10

*Propet USA, Inc. v. Shugart*,
    2007 WL 2899627 (W.D. Wash. Sept. 27, 2007) ................................................ 11

*Raynor Bros. v. Am. Cynamid Co.*,
    695 F.2d 382 (9th Cir. 1982)........................................................................................ 2

*Red Rock Commc'ns, Inc. v. Am. Telecasting, Inc.*,
    No. CV-S01-0611-PMP(LRL), 2006 WL 2432628 (D. Nev. Aug. 21, 2006)...................... 16

*S. Pac. Co. v. Heavingham*,
    236 F.2d 406 (9th Cir. 1956)........................................................................................ 4

*Sebastian Int'l v. Russlillo*,
    162 F. Supp. 2d 1198 (C.D. Cal. 2001) .................................................................... 14

*Stevens Linen Associates, Inc. v. Mastercraft Corp.*,
    656 F.2d 11 (2d Cir. 1981)...................................................................................... 5, 10

*Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*,
    257 F.3d 449 (5th Cir. 2001)........................................................................................ 5

*Tennant v. Peoria & P. U. Ry. Co.*,
    321 U.S. 29 (1944) ...................................................................................................... 4

*United States v. Christensen*,
    No. 08-50531, 2015 WL 5010591, 2015 WL 5010591 (9th Cir. 2015) ............................... 15

*United States v. Hill*,
    252 F.3d 919 (7th Cir. 2001)................................................................................... 3, 17

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012)............................................................................ 14, 15, 16

*Williams v. Bridgeport Music, Inc.*,
    2015 WL 1036137 (C.D. Cal. Mar. 10, 2015) ...................................................... 11

**Statutes**

17 U.S.C. § 117(a) ................................................................................................... 6

17 U.S.C. § 504(b) ....................................................................................... 8, 10, 11

17 U.S.C. § 504(c)(1) ............................................................................................ 7, 11

CDAFA, § 502(c)(6) ............................................................................................... 16

ORACLE'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY
INSTRUCTIONS

1     **Other Authorities**

2

3     7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1614 at 225 (2d ed. 1986)..................................................................................... 8

4     Ninth Circuit Model Jury Instruction 17.1 ..................................................................... 6

5     Ninth Circuit Model Jury Instructions 1.4 ..................................................................... 2

6     Restatement (Second) of Torts at § 767 ...................................................................... 13

7     Robert L. Dunn, *Recovery of Damages for Lost Profits* § 1.3 ....................................... 4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

1   In accordance with the Court's Order Regarding Trial, Dkt. 688, Plaintiffs Oracle USA,

2   Inc., Oracle America, Inc., and Oracle International Corporation (collectively, "Oracle" or

3   "Plaintiffs") submit these arguments in support of Oracle's Additional Proposed Jury

4   Instructions (Amended), Dkt. 752, to which Defendants Rimini Street, Inc. and Seth Ravin

5   (collectively, "Rimini" or "Defendants") objected.  Defendants' Objections to Oracle's Proposed

6   Additional Jury Instructions, Dkt. 766 ("Rimini Obj.").[1]

7   **INTRODUCTION**

8   Oracle addressed many of Rimini's arguments in Oracle's objections to Rimini's

9   proposed instructions, Plaintiff's Objections to Defendants Rimini Street Inc.'s and Seth Ravin's

10  [Proposed] Jury Instructions, Dkt. 768 ("Oracle Obj.").  Oracle incorporates those points by

11  reference and addresses herein only arguments that have not otherwise been fully briefed.  As set

12  out below, Oracle does not object to certain modifications proposed by Rimini, but Rimini's

13  objections otherwise lack merit and Rimini's proposed changes are unnecessary and improper.

14  **ARGUMENTS**

15  **I.  Preliminary Instructions Concerning The Parties And Evidence**

16  **A.      Oracle Entities (P-3; D-1)**

17  Rimini's objection to the use of "Oracle" to refer to the plaintiffs is unfounded, and

18  Oracle's proposed instruction is appropriate.  Rimini objects to Oracle's instruction on the Oracle

19  entities, P-3, and repeats the objection for other instructions.  P-5, P-7, P-12–P-14, P-16- P-27, P-

20  29, P-44–P-47.  Rimini says that Oracle will somehow be "relieved" of its burden of proof if the

21  jury does not receive Rimini's confusing instructions.  Rimini Obj. at 5.

22  Rimini seeks to confuse the jury by demanding they "make sure that" one Oracle entity

23  or another "has presented specific evidence."  D-1.  That is contrary to the basic rule that the jury

24  "should base [its] decision on all of the evidence, regardless of which party presented it."  Ninth

25  _____

26  [1]      Oracle refers to Rimini's proposed jury instructions from Dkt. 738 by number as "D-"
    and refers to Oracle's proposed jury instructions from Dkt. 752 by number as "P-." Oracle cites

27  the Parties' Agreed & Jointly Proposed Jury Instructions, Dkt. 750, with "J-" followed by the
    related instruction number.

28

ORACLE'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY
INSTRUCTIONS

1    Circuit Model Jury Instructions 1.4 (agreed by both parties as J-2).[2]  Rimini also attempts to

2    focus the jury on the corporate form rather than the evidentiary substance.[3]

3           This case is about *Defendants' single course of conduct* that harmed Oracle.  Rimini

4    attempts to avoid that fact by analogizing to mass tort and non-class civil rights cases where the

5    "transaction[s] or occurrence[s]" at issue were too different for consolidated treatment.  *Coughlin*

6    *v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (cited at Rimini Obj. at 5).  The notion seems to

7    be that the case is "too hard" because it involves two corporate-affiliate plaintiffs and addresses

8    years of misconduct.  This case may have some complexity, but it is not analogous to

9    agglomerating cases about separate wrongs against dissimilarly situated plaintiffs.  *Cf. id.* at

10   1350 (severing permissive joinder of claims under FRCP 20 for improper immigration-

11   processing delays where each plaintiff filed separate immigration applications and the plaintiffs

12   "*do not allege a pattern or policy* of delay in dealing with all applications and/or petitions by the

13   INS") (emphasis added); *Heather v. Medtronic Inc.*, No. 2:14-cv-01595-SVW-FFM, 2014 WL

14   2736093, at *1 (C.D. Cal. June 9, 2014) (mass tort case cited by Rimini; severing permissive

15   joinder medical-implant product liability cases brought by 31 different plaintiffs from 22

16   different states).

17          If there is any issue as to the two Oracle entities, it is for the Court to decide because it is

18   either purely legal or controlled by stipulated facts.  To take Rimini's copyright example (Rimini

19   Obj. at 5), only Oracle International Corporation (OIC) asserts that claim.  The jury's damages

20   determination on that claim will be for OIC.  Rimini already stipulated that OIC owns (or is the

21

22   _____

23   [2]      References to the Ninth Circuit Model Instruction stand for the Ninth Circuit Manual of
     Model Jury Instructions (Civil) (2007).

24
25   [3]      Indeed, courts permit corporate entity plaintiffs to be substituted during trial.  Thus, a
     plaintiff joint venture may be replaced with corporate entities making up the venture in the
     middle of trial without prejudicing a defendant's ability to present its case.  *Metropolitan Paving*
26   *Co. v. International Union of Operating Engineers*, 439 F.2d 300, 306 (10th Cir. 1971), *cert.*
27   *denied*, 404 U.S. 829 (1971), *cited with approval at Raynor Bros. v. Am. Cynamid Co.*, 695 F.2d
     382, 385 n.4 (9th Cir. 1982).

28

1   exclusive licensee) of the copyrights in suit.  Joint Pretrial Order, Uncontested Facts ¶ 41 at 19.

2   Rimini also stipulated as to the other dispositive factual issues on the relationship between OIC

3   and Oracle America, Inc.  Joint Pretrial Order, Uncontested Facts ¶ 30 at 18 ("Oracle America

4   received the fees that customers paid Oracle for support"); *id.* ¶¶ 2, 6 at 7; ¶ 32 at 18; ¶ 40 at 19.[4]

5        Furthermore, Rimini's approach would actually increase the risk of duplicative damages.

6   For example, both Oracle entities assert intentional interference.  Rimini already stipulated as to

7   the facts that dispose of allocation between the entities.  *Id.*  Inviting the jury to calculate

8   damages separately for each entity only increases the risk of confusion and duplicative damages.

9        Oracle's proposed instruction simply states the relationship among the Oracle entities the

10  jury will hear about and allows the jury to focus on the actual disputes.  P-9.

11       **B.   Permissible Inferences (*passim*)**

12       Rimini seeks throughout its objections and instructions to limit the jury's well established

13  discretion to make reasonable inferences and conclusions from the evidence.  Most important,

14  Rimini wants to tell the jury that it cannot "extrapolate" or draw reasonable inferences from the

15  evidence.  *See, e.g.*, Rimini Obj. at 22, 57.  Rimini's attempts to dictate the jury's reasoning

16  violate fundamental principles of jury instruction and trial presentation:

17   •   Instead of "describing each possible inference of the evidence, the judge may and

18       usually should leave the interpretation of the evidence to the argument of

19       counsel." *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1051

20       (7th Cir. 2000);

21   •   "It is best to keep the instructions concise, which is achieved by omitting

22       nostrums and leaving inferences to arguments of counsel." *United States v. Hill*,

23       252 F.3d 919, 923 (7th Cir. 2001);

24   •   "It is the jury, not the court, which is the factfinding body. It weighs the

25       contradictory evidence and inferences, judges the credibility of witnesses,

26  _____

27  [4]   Rimini asserts without explanation that the Oracle entities present "in some instances inconsistent liability and damages theories."  Rimini Obj. at 5.  There are no inconsistencies.

28

3

1    receives expert instructions, and draws the ultimate conclusion as to the facts. The

2    very essence of its function is to select from among conflicting inferences and

3    conclusions that which it considers most reasonable." *S. Pac. Co. v. Heavingham*,

4    236 F.2d 406, 409 (9th Cir. 1956) (quoting *Tennant v. Peoria & P. U. Ry. Co.*,

5    321 U.S. 29, 35 (1944));

6    •    "Credibility determinations, the weighing of the evidence, and the drawing of

7    legitimate inferences from the facts are jury functions, not those of a judge . . . ."

8    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

9    Rimini is particularly focused on minimizing the size of the damages verdict since, as it

10   finally admits, it has "stipulated to liability" on at least PeopleSoft software.  Rimini Obj. at 19.

11   To do so, Rimini's objections are particularly focused on demanding unreasonable specificity,

12   especially concerning damages.  That, too, is wrong.

13   As a general matter, plaintiffs are not "obligated to prove their losses with precision."

14   *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1170-71 (9th Cir. 2013)

15   *cert. denied sub nom. City of Newport Beach, Cal. v. Pac. Shores Properties, LLC*, 135 S. Ct.

16   436, (2014).  Once a plaintiff establishes "the *fact* of damages, less certainty (perhaps none at all)

17   is required in proof of the *amount* of damages.  While the proof of the *fact* of damages must be

18   certain, proof of the *amount* can be an estimate, uncertain or inexact."  *Mid - America*

19   *Tablewares, Inc v. Mogi Trading Co.*, 100 F.3d 1353, 1367 (7th Cir. 1996) (quoting Robert L.

20   Dunn, *Recovery of Damages for Lost Profits* § 1.3 at 11) (emphasis in original)).  A jury is

21   "entitled to determine the precise quantum of damages by drawing 'just and reasonable'

22   inferences from the evidence[.]"  *Pac. Shores Properties*, 730 F.3d at 1170-71; *see also Palmer*

23   *v. Conn. Railway & Lighting Co.*, 311 U.S. 544, 560 (1941) ("The ways compensatory damages

24   may be proven are many. The injured party is not to be barred from a fair recovery by impossible

25   requirements. The wrongdoer should not be mulcted, neither should he be permitted to escape

26   under a cover of a demand for nonexistent certainty.").

27   Rimini suggests that the jury cannot conclude that Oracle lost profits without smoking-

28   gun evidence that is different for each client.  *E.g.,* Rimini Obj. at 22 (damages "cannot be

4

1   proven en masse or extrapolated based upon individual testimony or evidence").

2          No law supports such a conclusion.  Of course a jury may make reasonable inferences

3   from pattern-and-practice and other evidence.  Lost-profits damages evidence far less rigorous

4   than what Oracle will present are regularly upheld.  For instance, it is permissible under Nevada

5   law for an expert to calculate "lost profits for a five-year period . . . by applying the percentage

6   of profit that [the plaintiff] had made from past sales to a reasonable approximation of future

7   sales."  *Frantz v. Johnson*, 116 Nev. 455, 469-70 (2000) (upholding intentional interference jury

8   verdict).  The same is true under California law as applied by the Ninth Circuit, which has

9   upheld lost-profits verdicts based on future growth projections.  *Forro Precision, Inc. v. IBM*

10  *Corp.*, 673 F.2d 1045, 1052 (9th Cir. 1982) (upholding intentional interference jury verdict;

11  applying California law); *see also Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203,

12  1218 n.3 (11th Cir. 2006) (explaining that "lost profits are not limited to customers who

13  personally experienced" problems with the defendant's defective product and that the defendant

14  was "simply wrong in its unsupported assertion that lost profits must be attributable to the loss of

15  specific customers"); *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449,

16  458 (5th Cir. 2001) ("In other words, the record must support the conclusion that, but for the

17  alleged interference, more hospitals/doctors would have bought Carbomedics's heart valves  . . .

18  However, Carbomedics need not have introduced specific evidence from actual or potential

19  customers that they would have bought Carbomedics's heart valve . . . ."); *see also Stevens Linen*

20  *Associates, Inc. v. Mastercraft Corp.*, 656 F.2d 11, 14 (2d Cir. 1981) (copyright case; "In

21  establishing lost sales due to sales of an infringing product, courts must necessarily engage in

22  some degree of speculation.").[5]

23          **C.     Spoliation (P-6; J-28)**

24          Rimini objects to P-6 (concerning spoliation of the evidence) *solely* because Rimini

25  _____

26  [5]    As for "extrapolation," the Fifth Circuit recently explained, "Extrapolating future profits
27  from past profits is an accepted method of proving lost profits."  *Homoki v. Conversion Svcs.,*
    *Inc.*, 717 F.3d 388, 389 (5th Cir. 2013) (intentional interference under Texas law).

28

1   believes it would be "premature" to mention the software library in preliminary instructions.

2   Rimini Obj. at 11.  Rimini already agreed, and jointly with Oracle proposed, the *same* language

3   in a post-trial instruction.  J-28.  There is no prejudice in advising the jury at the beginning about

4   the software library and its spoliation, and there is no reason to not give this instruction.  The

5   jury will hear about the software library in opening argument and throughout trial.  The jury

6   should have the benefit of the Court's ruling to understand that evidence and what inferences

7   may be drawn from it.

8   **II. Copyright**

9       **A.      Copyright Liability (P-4, P-11 to P-17; D-3 to D-11)**

10      Oracle does not object to adding "to the public" or "of substantially similar copies of" to

11   the proposed instruction.  Rimini Obj. at 8.  Rimini's objections otherwise lack merit, and

12   Rimini's other proposed edits are unwarranted.

13      <u>First</u>, Rimini requests that authorization under 17 U.S.C. § 117(a) be included in the

14   explanation of a copyright holder's rights proposed at P-4 and P-11.  Rimini Obj. 7-8.  Rimini

15   forgets that it *already waived* any defense under that statute.  Amended Stipulation re Copyright

16   Registrations and Copies, Dkt. 401 ¶¶ 13-14.  If Rimini intends a more general point about

17   authorization, then it has overlooked that P-4 already includes the Ninth Circuit Model's

18   statement that "copyright law protects against [conduct] without the owner's permission."  Ninth

19   Circuit Model Jury Instruction 17.1.  To the extent Rimini wants instruction on its purported

20   license defense incorporated into P-4, that is improper because license is an affirmative defense

21   where Rimini bears the burden of proof and which can and should be addressed with a separate

22   instruction.  Order, Dkt. 476 at 6 ("As the party alleging the affirmative defense, Rimini has the

23   initial burden to identify any license provision(s) that it believes excuses its infringement.").

24      <u>Second</u>, Rimini wants to omit reference to PeopleSoft software from the copyright

25   infringement overview because Rimini has "stipulated to liability as to the PeopleSoft software."

26   Rimini Obj. at 19.  Rimini overlooks that P-12 already accounts for this by stating that Rimini

27   Street "asserts an affirmative license defense as to some, but not all, of the conduct at issue,

28   which I will explain more detail."  Further, omitting PeopleSoft from this instruction, particularly

1   in combination with Rimini's unsupported demands for "specificity" on each piece of evidence

2   would only introduce confusion.  The jury must calculate damages for Rimini's infringement of

3   PeopleSoft software, and it makes no sense to suggest that Oracle does not assert PeopleSoft

4   infringement claims.

5       Third, Rimini seeks to rewrite the instruction on direct infringement to make its license

6   defense part of Oracle's affirmative claim instead of a defense.  Rimini Obj. at 21.  This is

7   improper for the reasons stated in Oracle's objections.  Oracle Obj. at 17.  Rimini's license

8   defense – which Rimini no longer even asserts for PeopleSoft and Database software copies –

9   does not belong in this instruction.

10      Fourth, the "per work" requirement applies to statutory damages—exactly where it

11  belongs under the per work limitation of the statutory damages provision, 17 U.S.C. § 504(c)(1),

12  and where it appears in the Ninth Circuit's Model Jury Instructions 17.25.  It is inappropriate in

13  this instruction.

14      **B.**      **Parol Evidence (P-5; P-15)**

15      Oracle's proposed parol evidence instruction is necessary to ensure that the jury does not

16  misconstrue any license agreements based on evidence concerning industry practices.  Oracle

17  raised this issue in its motions in limine, and the Court confirmed that "any interpretation of the

18  software licenses is an issue of law for the court" but also recognized that "certain aspects of the

19  industry standards and practice evidence may be relevant to the myriad issues in this action."

20  Dkt. 723 at 5.  Oracle's instruction ensures that jurors understand that they may not use any such

21  evidence, if admitted as relevant to other issues, to in any way "interpret the licenses[.]"  *Id.*

22      Oracle's proposed instruction will not in any way mislead the jury.  Rimini's claim that

23  this could "mislead the jury into improperly discounting or declining to consider Rimini's

24  evidence regarding industry custom and practice" (Rimini Obj. at 10) is unfounded.  This is a

25  standard instruction, which clarifies how evidence may be used by the jury.  Rimini's unlawful

26  practices were never consistent with industry standards, but Rimini seeks to present evidence of

27  industry standards to try to justify those unlawful practices.  Rimini Trial Brief, Dkt. 741 at 26.

28  As a result, there is a much greater risk of confusion without the instruction.  Oracle's proposed

7

1   instructions (P-3 and P-15) plainly and neutrally state a legal principal that Rimini does not and

2   cannot dispute, and there is no reason to not instruct the jury.

3       **C.      Copyright Causation (P-18 and D-20)**

4       Rimini argues that Oracle's P-18, which explains the causation requirements using the

5   CACI model instruction for ordinary tort causation (substantial-factor causation) verbatim, is

6   error because it does not use the words in the Copyright Act ("as a result of the infringement").

7   Obj. at 29 (quoting 17 U.S.C. § 504(b)).   But P-18 explains that Oracle must "prove that the

8   infringement caused its damages," which means the same thing.[6]

9       *Mackie v. Rieser*, 296 F.3d 909, 915 & n.6 (9th Cir. 2002), explains that tort causation

10   principles apply to copyright actual damages.   Rimini claims *Mackie* only applies to infringer's

11   profits, but overlooks that *Mackie* collects and cites with approval authority from, as *Mackie* puts

12   it, the "actual damages context" confirming that ordinary tort principles apply to "actual

13   damages" under the Copyright Act.  *Id.* (citing *Data Gen. Corp. v. Grumman Systems Support*

14   *Corp.,* 36 F.3d 1147, 1170 (1st Cir. 1994) and 7 Charles Alan Wright, Arthur R. Miller & Mary

15   Kay Kane, *Federal Practice and Procedure* § 1614 at 225 (2d ed. 1986)); *see also Data Gen.*, 36

16   F.3d at 1170-71 ("The plaintiff bears the burden of proving that the infringement was the cause

17   of its loss of revenue.   In defining that burden, it is useful to borrow familiar tort law principles

18   of causation and damages.") (collecting authorities).

19       Rimini also suggests that *Polar Bear Prods., Inc. v. Timex Corp.,* 374 F.3d 700, 708 (9th

20   Cir. 2004) holds to the contrary.   Rimini ignores that *Polar Bear* "reaffirm[ed] the principle that

21   a plaintiff in a § 504(b) action must establish this causal connection, and that this requirement is

22   akin to tort principles of causation and damages," citing *Mackie,* and applying those tort

23   _____

24   [6]      Rimini objects to the same language in tort instructions (P-28 and P-44) on an
25   additional—and frivolous—ground.  Rimini says this language from the CACI 2015 form is
     error because a 1991 California case disapproved then-existing *BAJI* (not CACI) form.  Obj. at
26   54, 77.  The case did so because the BAJI form used the confusing term "proximate cause,"
     which nowhere appears in the CACI instruction.  *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1049-52
27   & n.2 (1991).  In fact, *Mitchell* approved the "substantial factor" used in today's CACI.  *Id.* at
     1052-53.

28

1  principles to actual damages.  374 F.3d at 708-09.  The only other case cited by Rimini, *Oracle*

2  *v. SAP AG*, follows *Polar Bear* on causation.  765 F.3d at 1904).

3      **D.**    **Copyright Damages (P-19 to P-23 and D-20 to 22)**

4      <u>First</u>, Rimini argues that Oracle's instructions err in failing to allow the jury to select a

5  hypothetical license damages method for PeopleSoft, J.D. Edwards, and Siebel software and

6  support material.  Oracle's Objections explain in detail that Rimini itself has already argued that

7  the evidence in this case cannot support a non-speculative hypothetical license verdict because,

8  as Rimini argued "the Ninth Circuit has never affirmed a damages award based on a hypothetical

9  license absent evidence of such a comparable transaction" and "no such evidence exists here."

10  Oracle Obj. at 3.  Rimini apparently believes that it can convince the jury that the hypothetical

11  license measure is the "best" measure, but award zero damages under that measure, while

12  ignoring Oracle's actual damages in the form of substantial lost profits due to Rimini's

13  infringement.

14      The only authority cited by Rimini is *SAP AG*, and those decisions hold squarely to the

15  contrary.   The *SAP AG* jury awarded Oracle actual damages based on hypothetical license

16  evidence instead of lost profits:

17      <u>**Actual Damages for Copyright Infringement**</u>

18      1.    What is the dollar amount that Oracle is entitled to from Defendants to compensate
    Oracle for its actual damages under its copyright infringement claim, in the form of
19      EITHER a fair market value license for the copyright infringement OR lost profits?

20      FAIR MARKET VALUE LICENSE: $___*1.3 billion*_____,

21      OR,

22      LOST PROFITS: $_____.

23   *SAP AG*, Dkt. 1004 (jury verdict).

24      Judge Hamilton then granted a Rule 50 motion as to hypothetical license and, in the very

25  same opinion cited by Rimini, held that, "having failed to establish entitlement to an award of

26  hypothetical license damages, Oracle must be allowed to recover actual damages in the form of

27  lost profits/infringer's profits.  A contrary result would be unjust and would constitute a

28  miscarriage of justice."  *Oracle USA, Inc. v. SAP AG*, No.

1  C 07-1658 PJH, 2011 WL 3862074, at *12 (N.D. Cal. Sept. 1, 2011).  Thus, the court issued a

2  remitter for $272 million.  And, on appeal, instead of gutting Oracle's damages to zero because

3  the jury found hypothetical licenses to be the "best" measure, the Ninth Circuit *increased* the

4  amount of the remitter to $356.7 million.  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1095 (9th

5  Cir. 2014.  Rimini's argument—that these opinions support its position that the jury should be

6  instructed should the hypothetical license damages method Rimini told the Court were too

7  speculative to support a verdict so that the jury may ignore Oracle's actual lost profits

8  damages—is baffling.

9        Rimini's argument is also contrary to settled law that copyright damages "should be

10  broadly construed to favor victims of infringement."  *On Davis v. The Gap Inc.*, 246 F.3d 152,

11  164 (2d Cir. 2001), *block quoted and cited three times with approval at SAP AG*, 765 F.3d at

12  1088; *see also Polar Bear*, 384 F.3d at 709 (an infringer "is in no better position to haggle [ . . . ]

13  than an ordinary thief"); *Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d

14  Cir. 1981) (directing the District Court to enter damages according "whatever sum proves to be

15  greater" under either of two approaches).

16        Second, Rimini says that Oracle's proposed instructions invite duplicative damages.

17  Rimini Obj. at 31, 34, 41.  Wrong.  Oracle's proposed instructions state expressly that only one

18  damages method can be used.  P-20 ("For the PeopleSoft, J.D. Edwards, and Siebel software and

19  support materials, you heard evidence concerning the 'lost profits' method . . . .  You must apply

20  the lost profits method, and not the fair-market-value method, to determine the appropriate

21  damages" for those materials); P-21 ("For the Oracle Database software, you heard evidence

22  concerning both [methods]  . . . .  *You may apply either . . . but not both . . . .*" (emphases

23  added)).

24        Third, Rimini argues that infringer's "profits are available only if the jury concludes that

25  lost profits are the better measure of actual damages."  Rimini Obj. at 41.  The statute is clear

26  that a plaintiff is entitled to infringer's profits *whenever actual damages are proven*.  17 U.S.C. §

27  504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as

28  a result of the infringement, and any profits of the infringer that are attributable to the

1   infringement and are not taken into account in computing the actual damages."). On some facts,

2   a hypothetical license measure might account for the infringer's profits, but Oracle's proposed P-

3   22 instruction avoids any improper overlap by explaining that, "You may not include in an award

4   of profits any amount that you took to account in determining actual damages." This tracks the

5   statute, 17 U.S.C. § 504(b), and the Ninth Circuit Model No. 17.24.

6   Fourth, Rimini complains that Oracle's proposed instructions "fail to explain the role of

7   statutory damages" in calculating lost profits. Rimini Obj. at 35, 37. But statutory damages have

8   no such role. Under settled law and established practice, the jury should compute both actual

9   and statutory damages, separately and independently, and Oracle may elect statutory damages at

10   its option "at any time before final judgment is rendered." 18 U.S.C. § 504(c)(1); *see Feltner v.*

11   *Columbia Pictures Television, Inc.*, 523 U.S. 340, 347 n.5 (1998) ("election may occur even after

12   a jury has returned a verdict on liability and an award of actual damages"); *see also News Serv. v.*

13   *Reuters Telvision Int'l, Ltd.*, 149 F.3d 987, 995 n.8 (9th Cir. 1998) (plaintiff allowed to elect

14   statutory damages after appeal on actual damages). Thus, copyright juries regularly determine

15   both actual and statutory damages on the same verdict form. Verdict Form, *Williams v.*

16   *Bridgeport Music, Inc.*, 2015 WL 1036137 (C.D. Cal. Mar. 10, 2015) ("Please state the amount

17   of actual damages, if any, that you find by a preponderance of the evidence that the Gaye Parties

18   suffered as a result of the Thicke Parties' infringement of 'Got to Give It Up'. . . . Please state the

19   amount of statutory damages, if any, that you award to the Gaye Parties for the Thicke Parties'

20   infringement of the copyright in the musical composition 'Got to Give It Up'"); Verdict Form,

21   *Propet USA, Inc. v. Shugart*, 2007 WL 2899627 (W.D. Wash. Sept. 27, 2007) (similar).

22   Fifth, Rimini's proposed addition to Oracle's statutory damages instruction is

23   unnecessary and contrary to law. "If statutory damages are elected, [t]he [jury] has wide

24   discretion in determining the amount of statutory damages to be awarded, constrained only by

25   the specified maxima and minima." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992

26   (9th Cir. 2009) (alterations in original). The jury may select different multipliers for different

27   works. Rimini's proposed formula restricts the jury from doing so, requiring the jury to

28   determine a single multiplier and then multiply the number of works by that single number.

1    <u>Finally</u>, no modification of P-23 is needed to explain the difference between copies and

2    works.  The Ninth Circuit Model Jury Instruction 17.25 for statutory damages does not contain a

3    definition of works.  Both parties distinguish between copyrighted works and copies of the works

4    in other proposed instructions.  *See, e.g.*, P-4 (discussing copying of a copyrighted work); D-3

5    (same).  Rimini's proposed addition here is both unnecessary and confusing.

6    **III. Interference Torts**

7         **A.     Inducing Breach Of Contract (P-24; D-23)**

8    Rimini objects to using the word "disrupt" rather than "breach," but Nevada's Model Jury

9    Instructions use the word "disrupt."  *E.g.*, Nevada Model Jury Instructions (Civil) No. 15CT.25

10   ("[Name of defendant]'s acts or conduct did in fact disrupt the contract").  "Disrupt" is

11   appropriate, but the difference is immaterial.  Rimini's other objections are addressed below.

12   **B.     Issues Common To Inducing Breach Of Contract And Intentional
        Interference With Prospective Economic Relations (P-24 to P-29; D-24 to D-**
13   **29)**

14        <u>First</u>, Rimini argues that both interference torts require "specific intent."  Rimini Obj. at

15   44, 48.  The Nevada Supreme Court disagrees.  *Las Vegas-Tonopah-Reno Stage Line, Inc. v.*

16   *Gray Line Tours of S. Nevada*, 106 Nev. 283, 288 (1990) ("We [ . . . ] reject LTR's contention

17   that this tort requires a specific intent to harm akin to proof required in a criminal offense."

18   (emphasis added) (addressing intentional interference with prospective economic advantage).  So

19   does California.  *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10 (2d Dist. 2009) ("While this is an

20   intentional tort, it does not require that the defendant act with specific intent to interfere."

21   (addressing inducing breach of contract)).

22        <u>Second</u>, Rimini wants Blackstonian language about "wanton, malicious, and unjustifiable

23   conduct."  Rimini Obj. at 45.  Rimini's only purpose is to confuse the jury because the torts do

24   not require "actual malice or intent to harm."  *Las Vegas*, 106 Nev. at 287.  At any rate, Oracle's

25   proposed conduct element sets an even more rigorous standard by specifically limiting the

26

27

28

1  actionable conduct—without formulaic jargon.[7]

2       Third, Rimini makes incomprehensible statements about "class-wide inferences," "Rule

3  23 and class certification."  Rimini Obj. at 45.  This is not a class case.  There are no absent class

4  members asserting claims against Rimini; there are no absent class members whose rights to

5  protect.  The parties to the case will be directly represented in Court where they will confront one

6  another from the witness stand.  Rimini can put on any legally permissible defense it thinks it

7  has.  If Rimini's "class" statements mean to express frustration that Defendants may finally be

8  held to account for years of massive infringement that interfered with hundreds of Oracle's

9  business relationships, that is simply a reformulated plea for "impossible requirements" on

10  damages.  *Palmer*, 311 U.S. at 560.

11       Fourth, Rimini objects to language Oracle proposed from the ABA Model Business Torts

12  Instruction on knowledge (P-26).  That model explains that knowledge "may" be inferred from

13  circumstances, including circumstances from which the defendant "should have known" of the

14  contract.  Rimini protests that this is somehow incompatible with its views that these torts have

15  an unattainable knowledge-and-intent requirement, and that instructions should limit the jury's

16  reasonable circumstantial inferences.  *See* Rimini Obj. at 50.

17

18  _____

19  [7]     One benefit of Oracle's proposed conduct element is that it avoids any actual conflict of law between California and Nevada.  Rimini prefers to cite California cases on the conduct

20  element because California law requires that conduct be "wrongful by some legal measure other than the fact of interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th

21  376, 393 (1995).  But Nevada has indicated that it "favor[s]" the traditional Restatement approach that uses a multifactor test to determine whether conduct is improper.  *Las Vegas-*

22  *Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nevada*, 106 Nev. 283, 287 n.1 (1990) (citing Restatement (Second) of Torts at § 767, cmt. b).  Oracle's proposed conduct element

23  avoids any actual conflict by requiring a predicate action that is independently illegal.  *Accord*

24  *Evanston Ins. Co. v. W. Comm'ty Ins. Co.*, No. 2:13-CV-01268-GMN, 2014 WL 4798536, at *4-5 (D. Nev. Sept. 26, 2014) (no need to address choice of law in the absence of actual conflict);

25  *see also Soffer v. Five Mile Capital Partners, LLC*, No. 2:12-CV-1407 JCM GWF, 2013 WL 2460408, at *4-5 (D. Nev. June 6, 2013) (rejecting a defendant's attempt to gin up an actual

26  conflict between Nevada and New York law where interference was premised on "fraud and misrepresentation" because both states hold that fraud or misrepresentation satisfies the conduct

27  element).

28

1      <u>Fifth</u>, Rimini likewise objects to the ABA Model on intent (P-27).  That model correctly

2      states both Nevada and California law.  Rimini argues for an incorrect standard, citing *DeVoto v.*

3      *Pacific Fidelity Life Insurance Co.*, 618 F.2d 1340 (9th Cir. 1980).  Rimini Obj. at 52-53.  But

4      the California Supreme Court in 2003 held that "an additional showing of specific intent is not

5      necessary" and *expressly disapproved* the *DeVoto* panel's incorrect interpretation of California

6      law:

7               "We additionally reject Lockheed Martin's reliance on *DeVoto v. Pacific Fidelity*
                *Life Insurance Co.* (9th Cir.1980) 618 F.2d 1340 (*DeVoto*).  In that case, the

8               Ninth Circuit Court of Appeals attempted to anticipate whether California courts
                would require a plaintiff to plead that the defendant acted with a specific purpose

9               or motive to interfere with the plaintiff's prospective economic advantage. (*Id.* at
                p. 1347.) *DeVoto* was decided prior to our opinions in [two other cases], and, as

10              the Ninth Circuit noted, there was 'a scarcity of pertinent authority on this issue.'

11              (*DeVoto*, at p. 1347.)."

12     *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1161-62 (2003); *see also*

13     *Sebastian Int'l v. Russlillo*, 162 F. Supp. 2d 1198, 1205 (C.D. Cal. 2001) (recognizing that

14     *DeVoto* improperly stated California law in light of subsequent developments even before *Korea*

15     *Supply*; concluding that a plaintiff must show "at least 'substantial certainty' that a 'necessary

16     consequence' of their actions" without be disruption).  As for Nevada, an interference "is

17     intentional if the actor desires to bring it about or if he knows that the interference is certain or

18     substantially certain to occur as a result of his action."  *Las Vegas*, 106 Nev. at 288.

19     **IV.    Computer Law Violations (P-30 to P-41; D-30 to D-38)**

20             <u>First</u>, having never moved to dismiss and or for summary judgment on any of these

21     claims, Rimini now says Congress and the States of California and Nevada have all adopted

22     "unconstitutional" laws.  Rimini Obj. at 59-76.  This is nonsense, and the jury should be

23     instructed on these claims consistent with established law.

24             There are "no serious constitutional doubts" about the CFAA.  *Craigslist Inc. v. 3Taps*

25     *Inc.,* 964 F. Supp. 2d 1178, 1184 (N.D. Cal. 2013) (no threat "to criminalize large swaths of

26     ordinary behavior [because] . . . the average person does not use 'anonymous proxies' to bypass

27     an IP block set up to enforce a banning communicated via personally-addressed cease-and-desist

28     letter."); *see also United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (*en banc*) (interpreting an

1  ambiguous term in the CFAA; quoting precedent, "We would not uphold an unconstitutional

2  statute merely because the Government promised to use it responsibly.").

3       As for the CDAFA, Ninth Circuit applied it three weeks ago in a criminal case without

4  constitutional hesitation. *See United States v. Christensen*, No. 08-50531, 2015 WL 5010591,

5  2015 WL 5010591, at *14 (9th Cir. 2015).  In so doing, the Circuit noted that the CDAFA poses

6  even fewer liability hurdles than the CFAA.  *Id.*  And a California Court of Appeal has squarely

7  rejected the argument that the CDAFA is unconstitutionally vague after comprehensively

8  examining the statute.  *People v. Hawkins*, 98 Cal. App. 4th 1428, 1439-43 (6th Dist. 2002), *as*

9  *modified on denial of reh'g* (July 2, 2002), *rev. denied* (Aug. 28, 2008), *cert. denied*, 123 S. Ct.

10  1256 (2003).

11       Courts since *Nosal* have consistently found CFAA violations when defendants knew they

12  lacked permission to *access* a computer.  *See, e.g.*, *Craigslist Inc.,* 964 F. Supp. at 1178, 1184;

13  *NetApp, Inc. v. Nimble Storage*, *Inc.*, 41 F. Supp. 3d 816, 833 (N.D. Cal. 2014) (terminated

14  employee liable under CFAA for accessing former employer's computers because "he knows he

15  may not return").

16       Nor has Rimini any basis to suggest it lacked "notice" that its access and downloading

17  were unauthorized.  The contemporaneous evidence shows, and Oracle will prove, that Rimini's

18  senior executives, including CEO Seth Ravin, reviewed and considered Oracle's prohibition of

19  automated downloading tools and decided to continue using them.  Rimini continued even after

20  Oracle discovered Rimini's conduct, told Rimini of the impact to Oracle's servers, and took

21  active measures to block the attack – which Rimini attempted to circumvent.  The evidence is

22  summarized in Oracle's Trial Brief, Dkt. 747 at 12.

23       Second, Rimini also emphasizes the Ninth Circuit's use of the concept of "hacking" when

24  interpreting the CFAA's "authorization"-related requirements.  Rimini Obj. 59-60.  But legal

25  interpretation is not the jury's job.  At any rate, the Ninth Circuit defined the terms "hacker" and

26  "hacking" to mean exactly what Rimini did:  A hacker is "someone who's authorized to access

27

28

1  only certain data or files but accesses unauthorized data or files—what is colloquially known as

2  'hacking.'"  *Nosal*, 676 F.3d at 856-57.[8]

3        <u>Third</u>, Rimini misreads § 502(c)(6) of the CDAFA.  Section 502(c)(6) creates liability for

4  a person who "provides or assists in providing a means . . . in violation of this *section*."

5  (emphasis added).  It is true there is no primary violation of § 502(c)(6)—but that is because

6  § 502(c)(6) prohibits only "provid[ing] or assist[ing]" in CDAFA violation.[9]  It is also peculiar

7  that Rimini faults Oracle for taking a conservative approach to § 502(c)(6) by <u>augmenting</u> the

8  statutory requirements with the traditional aiding-and-abetting elements.  *See also* SAC, Dkt. No.

9  146 at ¶¶ 64-70 (asserting aiding and abetting theory).

10  **V.**     **Punitive Damages (P-46 to P-47; D-42 to D-51)**

11        <u>First</u>, Rimini seeks to exclude Oracle's claim for punitive damages on trespass to chattels

12  on grounds that Oracle did not specifically assert punitive damages under the court for trespass

13  to chattel in its complaint.  Oracle alleged willful, malicious, and oppressive conduct (SAC, Dkt.

14  No. 146 ¶¶ 70, 100, 121, 131, 146) and prayed for all available relief.  Under FRCP 54(c),

15  nothing more is required for punitive damages.  FRCP 54(c) (providing that the Court "should

16  grant the relief to which each party is entitled, even if the party has not demanded such relief in

17  his pleadings"); *Red Rock Commc'ns, Inc. v. Am. Telecasting, Inc.*, No. CV-S01-0611-

18  PMP(LRL), 2006 WL 2432628, at *5 (D. Nev. Aug. 21, 2006) (explaining that Rule 54(c) means

19  a plaintiff need not specifically claim punitive damages in the complaint so long as the complaint

20  _____

21

22  [8]     It is surprising that Rimini wants to instruct the jury about "hacking."  P-30; Rimini Obj.
at  59.  Rimini briefed motions *in limine* objecting to "derogatory terms" and words "with

23  criminal connotations."  Defendants Rimini Street, Inc.'s and Seth Ravin's Motions *In Limine*
Nos. 1-12, Dkt No. 652 at 3-4.  Rimini's computer statute arguments seek to open the door to

24  such language.

25  [9]     Oracle's interpretation is confirmed by the use of "*this* section" in § 502(c).  Rimini
argues about the (c)(6) *subdivision*.  California statutes are divided into sections and

26  "subdivisions."  They say "section" when they mean the entire section; and "subdivision" when

27  they mean a sub-part of the section.  *See, e.g., Fiorini v. City Brewing Company, LLC*, 231 Cal.
App. 4th 306, 316-317 (5th Dist. 2014); *see also People v. Garcia*, 21 Cal. 4th 1, 5-6 (1999).

28

1    alleges conduct that would support a claim for punitive damages, and the evidence at trial

2    supports sending the issue to the trier of fact).

3         Second, Rimini tries to justify its *eight* "additional punitive damages instructions"

4    because, it believes, the Court would commit error if it does not tell the jury what Rimini wants.

5    Rimini cites the *Dang* case for this nonexistent limitation on the Court's authority.  *Dang v.*

6    *Cross*, 422 F.3d 800 (9th Cir. 2005).  In *Dang*, the court found that the district court erred in

7    using a model instruction that completely omitted oppressive conduct as a predicate for punitive

8    damages.  *Dang*, 422 F.3d at 804-06.

9         Here, Rimini has not identified *any* issue that the comprehensive Nevada Jury

10   Instructions 12PD.1 and 12PD.2's (P-46 and P-47) omit.  The only risk of prejudice would come

11   from Rimini's duplicative and argumentative proposed instructions on punitive damages:

12        "It is best to keep the instructions concise, which is achieved by omitting nostrums and
          leaving inferences to arguments of counsel. Unless it is necessary to give an instruction, it
13        is necessary not to give it, so that the important instructions stand out and are
          remembered."
14
15   *Hill*, 252 F.3d at 923.

16

17                                   **CONCLUSION**

18        For the foregoing reasons, Oracle respectfully requests the Court instruct the jury using

19   Oracle's proposed instructions.

20   DATED:  September 14, 2015                BOIES SCHILLER & FLEXNER LLP

21                                            By:  /s/  Kieran Ringgenberg
22                                                 Kieran Ringgenberg
                                                   Attorneys for Plaintiffs
23                                                 Oracle USA, Inc., Oracle America, Inc., and
                                                   Oracle International Corp.
24

25

26

27

28