SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S ARGUMENT IN RESPONSE TO ORACLE'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................................1

II.  ARGUMENT .....................................................................................................................2

A.  Copyright Liability (Oracle Instructions P-4, P-13 to P-16; Rimini Instructions D-3, D-8, D-10 to D-13) ...............................................................2

    1.  The Jury Instructions On Infringement Must Be Grounded In The Licenses (Oracle Instruction P-13; Rimini Instruction D-8).........................3

    2.  The Jury Must Find Direct Infringement Before It Can Find Secondary Infringement (Oracle Instructions P-16 & P-17; Rimini Instructions D-10 & D-11)......................................................................4

    3.  The Jury Must Be Instructed On The Subject Matter Of Copyright (Rimini Instruction D-4). ..........................................................................4

    4.  The Jury May Be Instructed On Copyright Misuse (Rimini Instructions D-12 & D-13)..........................................................................5

B.  Copyright Damages (Oracle Instructions P-19 to P-23; Rimini Instructions D-15 to D-22) ...............................................................................................6

    1.  Actual Damages – The Jury Must Decide the Best Measure of Actual Damages (Oracle Instructions P-18 to P-21; Rimini Instructions D-15 to D-20)................................................................7

    2.  Actual Copyright Infringement Damages – Lost Profits Causation (Oracle Instruction P-21; Rimini Instruction D-20).................................10

    3.  Infringer's Profits – Reduction of Expenses (Oracle Instruction P-22, Rimini Instruction D-21)...................................................................12

C.  Intentional Tort Claims (Oracle Instructions P-24 to P-29; Rimini Instructions D-23 to D-29)...........................................................................12

    1.  Inducing Breach of Contract (Oracle Instruction P-24; Rimini Instruction D-23)......................................................................................12

    2.  Intentional Interference with Prospective Economic Advantage (Oracle Instruction P-25; Rimini Instructions D-24 & D-25)......................13

    3.  Intentional Torts – Knowledge, Intent, Causation, & Damages (Oracle Instructions P-26 to P-29; Rimini Instructions D-26 to D-29). ..................................................................................................14

D.  Computer Hacking Claims (Oracle Instructions P-30 to P-43; Rimini Instructions D-30 to D-38)...........................................................................16

E.  Breach of Contract (Oracle Instruction P-45; Rimini Instructions D-39 and D-40) ................................................................................................................... 19

F.  Punitive Damages (Oracle Instructions P-46 & P-47; Rimini Instructions D-41 to D-51) ............................................................................................................... 19

G.  TomorrowNow (Oracle Instructions P-2 & P-10; Rimini Instruction D-14) .......... 22

III.  **CONCLUSION** .............................................................................................................. **23**

457839 v1
468223 v1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

A.H.D.C. v. City of Fresno,
   2000 WL 35810723 (E.D. Cal. Aug. 31, 2000) ......................................... 14

Alcatel USA, Inc. v. DGI Technologies, Inc.,
   166 F.3d 772 (5th Cir. 1999) ..................................................................... 4, 5

Baisden v. I'm Ready Prods., Inc.,
   693 F.3d 491 (5th Cir. 2012) ......................................................................... 3

Bily v. Arthur Young & Co.,
   3 Cal. 4th 370 (1992) ................................................................................... 14

BMW of N. Am., Inc. v. Gore,
   517 U.S. 559 (1996) ..................................................................................... 21

Cheek v. United States,
   498 U.S. 192 (1991) ..................................................................................... 17

Chrisman v. City of Los Angeles,
   155 Cal. App. 4th 29 (2007) ........................................................................ 16

City of Chicago v. Morales,
   527 U.S. 41 (1999) ....................................................................................... 18

Crockett v. Sahara Realty Corp.,
   95 Nev. 197 (1979) ...................................................................................... 13

Crunchyroll, Inc. v. Pledge,
   2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) ............................................ 10

Dang v. Cross,
   422 F.3d 800 (9th Cir. 2005) .................................................................... 1, 20

Della Penna v. Toyota Motor Sales, U.S.A., Inc.,
   11 Cal. 4th 376 (1995) ................................................................................. 15

DeVoto v. Pac. Fidelity Life Ins. Co.,
   618 F.2d 1340 (9th Cir. 1980) ..................................................................... 14

Giaccio v. Pennsylvania,
   382 U.S. 399 (1966) ..................................................................................... 18

Grain Processing Corp. v. Am. Maize-Products Co.,
   185 F.3d 1341 (Fed. Cir. 1999) ................................................................. 8, 9

Harper & Row, Publishers, Inc. v. Nation Enterprises,
   471 U.S. 539 (1985) ....................................................................................... 9

Holdgrafer v. Unocal Corp.,
   160 Cal. App. 4th 907 (2008) ...................................................................... 19

*J.J. Industries v. Bennett*,
    119 Nev. 269 (2003) ................................................................................ 14

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
    559 U.S. 573 (2010) ................................................................................ 17

*Leegin Creative Leather Prods., Inc. v. Belts by Nadim, Inc.*,
    316 F. App'x 573 (9th Cir. 2009) ............................................................ 10

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ........................................................... 16, 17

*Massock v. Keller Indus., Inc.*,
    147 F. Appx. 651 (9th Cir. 2005)............................................................... 5

*MDY Industries, LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..................................................................... 4

*Mitchell v. Gonzales*,
    54 Cal. 3d 1041 (1991) ............................................................................ 15

*Netbula, LLC v. BindView Dev. Corp.*,
    516 F. Supp. 2d 1137 (N.D. Cal. 2007) .................................................... 3

*Oracle Corp. v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014) ................................................. 1, 8, 11, 12

*Oracle USA, Inc. v. SAP AG*,
    2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) ............................................ 7

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ............................................................................ 12

*People v. Grant*,
    45 Cal. 3d 829 (1998) .............................................................................. 16

*People v. Hawkins*,
    98 Cal. App. 4th 1428 (2002) .................................................................. 18

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007)..................................................................... 19, 20, 21

*Polar Bear Products, Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) .............................................................. 8, 10

*Roby v. McKesson Corp.*,
    47 Cal. 4th 686 (2010) ............................................................................. 21

*S.F. Design Ctr. Assocs. v. Portman Cos.*,
    41 Cal. App. 4th 29 (1995) ...................................................................... 13

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).......................................................................... 20, 21

*Static Control Components, Inc. v. Lexmark Int'l, Inc.,*
 749 F. Supp. 2d 542 (E.D. Ky. 2010) ........................................................ 5

*United States v. Christensen,*
 --- F.3d ----, 2015 WL 5010591 (9th Cir. 2015) ............................... 16, 18

*United States v. Fair,*
 699 F.3d 508 (D.C. Cir. 2012) ................................................................. 10

*United States v. Hudson,*
 483 F.3d 707 (10th Cir. 2007) .................................................................. 10

*United States v. Johnson,*
 459 F.3d 990 (9th Cir. 2006) .................................................................... 17

*United States v. Liu,*
 731 F.3d 982 (9th Cir. 2013) .................................................................... 17

*United States v. Nosal,*
 676 F.3d 854 (9th Cir. 2012) .............................................................. 16, 17

*United States v. Pena-Ozuna,*
 511 F.2d 1106 (9th Cir. 1975) .................................................................. 20

*USA, Inc. v. DGI Technologies, Inc.,*
 166 F.3d 772 (5th Cir. 1999) ...................................................................... 5

*Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.,*
 103 F.3d 1571 (Fed. Cir. 1997) .................................................................. 5

*ZZ Top v. Chrysler Corp.,*
 70 F. Supp. 2d 1167 (W.D. Wash. 1999) ................................................. 11

**Statutes**

17 U.S.C. § 504(b) .............................................................................. 11, 12

18 U.S.C. § 1030(a)(2)(C) ........................................................................ 17

**Rules**

Fed. R. Civ. P. 39(c) .................................................................................... 5

**Other Authorities**

Federal Jury Practice and Instructions Civil § 160:90 (6th ed. Aug. 2015) ....................... 11

Restatement (Second) of Torts § 766 cmt. i ................................................ 14

Ronald W. Eades, Jury Instructions in Commercial Litigation, § 10.10 (Matthew Bender) ................ 5

U.S. Const., amends. V, XIV ...................................................................... 17

# I.   INTRODUCTION

Oracle's objections to Rimini Street's proposed instructions are full of Oracle's usual bluster and hyperbole, but they are absolutely wrong on the law.  Oracle's case is a dramatic overreach that stretches the law on copyright, torts, computer hacking, and damages beyond the breaking point, and would invite the jury to impose a damages award that is excessive, improper, and unconstitutional. By contrast, Rimini's proposed instructions are correct on the law and warranted given the case that Rimini expects Oracle to present to the jury.  The Court should reject Oracle's proposed instructions and give Rimini's.

Importantly, the parties agree that on some issues the Ninth Circuit model jury instructions (drafted 8 years ago) do not adequately cover the claims and defenses in this lawsuit.  *See, e.g.*, P-19 (Oracle noting "that the Ninth Circuit model does not address situations where multiple methods [of copyright damages] are presented"); *see generally Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) (error not to provide punitive damages instructions that "fairly and correctly covered" "the substance of the applicable law" even when proposed instructions were not model instructions).[1]  In the 8 years that have passed since the model instructions were promulgated, the Ninth Circuit has issued important decisions clarifying the issues critical to the case, including in *Oracle Corp. v. SAP AG*, 765 F.3d 1081 (9th Cir. 2014), involving the same plaintiff and similar claims.  Rimini's revisions to the model jury instructions reflect this authority.  By contrast, many of Oracle's revisions to the model instructions and objections to Rimini's proposed instructions are designed to keep the jury from hearing Rimini's proof so that the jury does not know how it can find for Rimini, only how it can find for Oracle.

Additionally, throughout its objections, Oracle disregards binding authority (including the text of the Copyright Act) in favor of inapposite, often unpublished, case law from any court or jurisdiction where it can use a snippet to support its arguments.  For example, Oracle argues it is entitled to all of Rimini's *revenue* under the infringer's profits analysis, even though the text of the statute (ignored by Oracle) entitles Oracle to *profits*, which Oracle admits are revenue minus

---

[1] Rimini refers to Oracle's proposed instructions as P-X, Rimini's proposed instructions as D-X, and the parties' jointly proposed instructions as J-X, with X denoting the number of the instruction.

expenses.  And in its objections to the computer hacking instructions, Oracle relies on a single unpublished motion to dismiss order from the Eastern District of Pennsylvania (Dkt. 767 at 72) (inapposite in any event), but disregards decisions from the United States Supreme Court and Ninth Circuit cited by Rimini.

This Court has before it Rimini's and Oracle's proposed instructions and the parties' respective objections (Dkts. 738, 752, 766, 767), as well as full briefing on the majority of the issues in the trial briefs (Dkts. 741, 747) and in connection with *Daubert* briefing (*e.g.*, Dkt. 694), all of which Rimini incorporates by reference.  This brief contains a concise argument on why Rimini's interpretation of the law is correct.  *See* Dkt. 688 at 3:9–10 (Order Regarding Trial).

## II.   ARGUMENT

**A.   Copyright Liability (Oracle Instructions P-4, P-13 to P-16; Rimini Instructions D-3, D-8, D-10 to D-13)**

Oracle's objections, like its instructions, ignore the license agreements, which are the central issue for the jury's role in determining whether Rimini infringed Oracle's copyrights.  The Court already held that Rimini could assert its clients' licenses as defenses to Oracle's claims of infringement (Dkt. 474), and the question for the jury is not whether Rimini infringed Oracle's copyrights in the abstract, but ***whether any copying by Rimini exceeded the scope of those licenses***, which will involve, among other things, construction of the licenses themselves and evidence of industry practice.  Rimini's proposed copyright instructions reflect this fact; Oracle's ignore it.

Rimini's copyright instructions, which track the Ninth Circuit model jury instructions, more accurately reflect the law and the facts of this case, and are the more appropriate instructions for the reasons outlined in Rimini's objections.[2]  *See* Dkt. 766 at 7-9, 18-24, 26-28.

---

[2]   Rimini regrets the inadvertent omission of an annotation regarding "or license to use" in instruction D-3, but submits that this language is supported by this Court's summary judgment order permitting Rimini to assert its clients' licenses as defenses to certain infringement claims. *See*, *e.g.*, Dkt. 474 at 21 n.18, 23 n.19.

1.      ***The Jury Instructions On Infringement Must Be Grounded In The Licenses*** (Oracle Instruction P-13; Rimini Instruction D-8).

Although Oracle did not directly license Rimini to make copies of its software, the Court already held that Rimini could assert its clients' licenses as a defense to infringement as to the J.D. Edwards and Siebel product lines.  *See* Dkt. 474 at 21 n.18, 23 n.19.  Accordingly, the key question Oracle must answer in order to establish liability against Rimini for infringement is whether any copying Rimini engaged in exceeded the scope of its clients' licenses.  There is nothing "confusing" (Dkt. 767 at 9) about including that clear holding from the Court in the jury instructions and helping the jury to focus on the key question it must decide.

Due to the centrality of the licenses in this case, this Court should include Rimini's proposal that Oracle must prove "by a preponderance of the evidence" that "Rimini Street did not have permission to copy the original elements of the copyrighted work."  That statement does not improperly shift the burden to Oracle.  Since Rimini identified the licenses at issue, Oracle now *has the burden* under the law of proving that the copying exceeded the license.  Dkt. 719 at 3 ("the defendant has the initial burden to identify any license provision(s) that it believes excuses its alleged infringement ….  If met, the burden then shifts to the plaintiff to show by a preponderance of the evidence that the identified license provision(s) does not actually authorize the defendant's alleged activities"); *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007) ("[when] the existence of a license is not in dispute, … the copyright owner bears the burden of proving that the defendant's copying was unauthorized").  Rimini's proposed instruction is therefore proper.  *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 507 (5th Cir. 2012) (court "correctly instructed" the jury that if defendants "prove the existence of a license by a preponderance of the evidence … [plaintiff] must prove by a preponderance of the evidence that [d]efendants' copying was not authorized by the license").

Nor can Oracle seek to lighten its burden of proving infringement by asking the jury to assume that infringement has already been established by the parties' stipulations and the Court's rulings.  Infringement has been established only as to the PeopleSoft software and Oracle Database software, and the jury will be instructed on those points.  *See* instructions J-29, J-30.  For all the

other claims, no infringement has been found, and the jury may award damages only "if" it finds infringement.

**2.**    ***The Jury Must Find Direct Infringement Before It Can Find Secondary Infringement*** **(Oracle Instructions P-16 & P-17; Rimini Instructions D-10 & D-11).**

"Secondary copyright infringement … requires the existence of direct copyright infringement." *MDY Industries, LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 941 (9th Cir. 2010).  As a result, model instruction 17.20 requires the Court to instruct the jury that "[i]f you find that [name of direct infringer] infringed the plaintiff's copyright in [allegedly infringed work], you may proceed to consider the plaintiff's claim that the defendant contributorily infringed" that copyright.  *See also id*. at 17.21 (using same language for vicarious infringement).  There is no reason to deviate from those model instructions here.

Oracle's proffered reason for excluding this "if" language—"that the Court has already determined that Rimini committed direct infringement" (Dkt. 767 at 19, 21)—applies only to the PeopleSoft and Database software.  Copyright damages are not appropriate for the remaining software lines unless and until the jury finds infringement.  Oracle may not absolve itself of this necessary burden in proving its case by omitting important language from the model instructions.

**3.**    ***The Jury Must Be Instructed On The Subject Matter Of Copyright*** **(Rimini Instruction D-4).**

Oracle should not be permitted to suggest to the jury that its discrete copyrights in certain software and documentation extend to other items, such as support services, which are not themselves copyrightable—indeed, that is the quintessential example of copyright misuse.  *See Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 792 (5th Cir. 1999).

Rimini's instruction also clarifies that Rimini may rely on certain license provisions as a defense to infringement, even if Rimini did not use Oracle's installation media (i.e., the "installation disc provided by Oracle for the licensed software," Dkt. 474 at 8) to make any copies.  In its August 2014 summary judgment ruling, the Court held that Rimini could not rely on the Database license only "because it did not obtain its copies of Oracle Database from clients who had a [license] for

Oracle Database" (Dkt. 476 at 12-1), but did not make any ruling as to the other software lines. Because Rimini's instruction D-4 is relevant to issues resolved in the Court's summary judgment orders, would provide helpful clarification for the jury on nuanced issues of copyright law, and is supported by the law and the facts, this Court should give Rimini's instruction D-4.

### 4. *The Jury May Be Instructed On Copyright Misuse* (Rimini Instructions D-12 & D-13).

This Court has broad discretion to reconsider its prior rulings based on the evidence admitted at trial and instruct the jury on copyright misuse. *Massock v. Keller Indus., Inc.*, 147 F. Appx. 651, 656 (9th Cir. 2005). Rimini anticipates that the evidence at trial will support such a defense, and will ask the Court for judgment on this ground or at least an instruction to the jury.

Oracle's objections to the merits of these instructions also fail. The Fifth Circuit expressly approved a copyright misuse instruction in *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 792 (5th Cir. 1999), and at least one treatise includes a similar jury instruction on copyright misuse (*see* 1-10 Ronald W. Eades, Jury Instructions in Commercial Litigation, § 10.10 (Matthew Bender)). Because the evidence of copyright misuse is directly tied to the way in which Oracle interprets is licenses and thus will overlap considerably with the claims and defenses relating to infringement, this defense is appropriate to submit to a jury for an advisory verdict. *See* Fed. R. Civ. P. 39(c); *Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1576 (Fed. Cir. 1997) (jury rendered advisory verdict on patent misuse); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 749 F. Supp. 2d 542, 554 (E.D. Ky. 2010) (finding no error in submitting equitable defenses, including patent misuse, to an advisory jury and rejecting argument that doing so could "invite the jury to make decisions relating to [the defendant's] conduct based on improper 'equitable considerations'").

**B.      Copyright Damages (Oracle Instructions P-19 to P-23; Rimini Instructions D-15 to D-22)**

Only Oracle International Corporation is entitled to seek infringement damages.[3]   And because Oracle International Corporation's proposed instructions and objections to Rimini's instructions are premised on clear legal error, the Court should reject them and give Rimini's instructions.  As a preliminary matter, the parties *agree* on the following principles:

- Damages for copyright infringement may be awarded either as (i) actual damages, *or* (ii) statutory damages, but not both.

- Actual damages may be measured by either (i) Oracle's lost profits, *or* (ii) the reduction in the fair market value of Oracle's copyrighted works caused by Rimini's infringement.

- In addition to lost profits, the jury may award Oracle with Rimini's profits that are attributable to the infringement.  Oracle does not appear to object to Rimini's argument that the jury may not award these infringer's profits if it concludes that fair market value of use is the better measure of actual damages.[4]

The parties disagree on the following points:

- Who decides the better measure of actual damages, specifically, whether Oracle may tell the jury the measure of actual damages they *must* apply, or whether the jury may decide the better measure of actual damages.[5]

---

[3]   Oracle does not dispute this fact.  Rather, Oracle mischaracterizes Rimini's objection to the instructions regarding the Oracle entities as concerning the mixing of evidence—Rimini does not dispute that the jury may consider all properly admitted evidence.  But that is not Rimini's objection—these are two different entities, only one of which owns copyrights, and only one of which has any claim for harm from interference.  The instructions should inform the jury of this fact.

[4]   *See Oracle USA, Inc. v. SAP AG*, No. 07-1658 PJH, ECF No. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010) ("If you award Oracle actual damages based on fair market value of a license for the rights infringed, that award takes into account Defendants' profits attributable to their infringement and Oracle is not entitled to any additional award"); *id.* at ECF No. 1000 at 4:15–17 ("THE COURT: I agree with Defendants.  I think that hypothetical license does include the infringer's profits regardless of what number the jury comes back with.  So that settles that part of it.").

[5]   Oracle contends that Rimini's instruction offers statutory damages as an alternative to actual damages.  Dkt. 767 at 30.  That is false.  Rimini's instructions require the jury to determine both actual damages and statutory damages, and also instruct the jury that Oracle is entitled to statutory damages (i) if Oracle elects statutory damages, or (ii) if Oracle has not proven actual damages.

- 6 -

- The standard of causation for lost profits analysis, specifically, whether Oracle must prove that Rimini's infringement caused Oracle to lose each customer it lost during the time period at issue, or whether Oracle can extrapolate proof across all of the customers Oracle lost.

- Whether the jury should subtract Rimini's expenses from its gross revenue to determine Rimini's profits, even if it concludes that Rimini's infringement was willful.

**1.    *Actual Damages – The Jury Must Decide the Best Measure of Actual Damages* (Oracle Instructions P-18 to P-21; Rimini Instructions D-15 to D-20).**

As described in the parties' trial briefs, Rimini's position is that copyright infringement damages in this case equal the cost to implement a non-infringing alternative and the price to which the parties would have agreed in a hypothetical negotiation.  Oracle's position is that Rimini must compensate Oracle for every customer Oracle lost (minus an arbitrary small percentage), regardless of whether that customer left Oracle because of any infringement.  At trial, the jury should hear evidence on both measures of damages, and then issue the award they deem appropriate.

Oracle's proposed instructions improperly tell the jury that they *must* apply Oracle's lost profits analysis in reaching the actual damages award for PeopleSoft, J.D. Edwards, and Siebel.  This is error, as is clear from *Oracle v. SAP*, where the court instructed the *jury* that they were to "decide the best measure of Oracle's actual damages," and the jury selected the "fair market value," rather than lost profits.  *Oracle USA, Inc. v. SAP AG*, No. C 07-1658, ECF No. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010); *see also Oracle USA, Inc. v. SAP AG*, 2011 WL 3862074, at *11 (N.D. Cal. Sept. 1, 2011) ("it decided that a fair market value license measured Oracle's damages better than lost profits").

The Court already resolved this issue in denying Oracle's *Daubert* motion, holding that the jury may hear evidence of both measures of actual damages.  Dkt. 724 at 4–6 ("Oracle's challenge is not a valid basis to exclude defendants' from presenting this … evidence to the jury").  The Court also held that Rimini's expert's (Scott Hampton) fair market value analysis was admissible, relevant, and helpful to the jury.  Dkt. 724 at 4–6 ("the value of a hypothetical license to Rimini is the amount

---

Oracle's instructions, by contrast, do not explain the relationship between statutory damages and actual damages.  Nor does Oracle dispute that this is a correct statement of the law.

- 7 -

1  that it would have cost Rimini to implement a non-infringing alternative"); *id.* (finding that

2  "Hampton's 'avoided costs' opinion is relevant to the issue of damages under the Copyright Act").

3  Oracle persists in arguing that the jury may not consider this evidence in determining their actual

4  damages award, but it is wrong. "Oracle is free to challenge Hampton's ultimate conclusions" at

5  trial, but Oracle's arguments are "not a valid basis to exclude defendants' from presenting this

6  'avoided costs' evidence to the jury." *Id.* And of course the jury must be instructed on the import of

7  Mr. Hampton's analysis once it is admitted.

8       Oracle argues that the problems with Ms. Dean's report are somehow applicable to Mr.

9  Hampton's analysis as well and that Rimini's arguments seeking to exclude Ms. Dean are somehow

10  inconsistent with Mr. Hampton's analysis, but that is completely false. The two experts' approaches

11  to the fair market value of use are fundamentally different. Oracle *acknowledged* the flaws in Ms.

12  Dean's report by withdrawing it in response to Rimini's *Daubert* motion, but Rimini's expert

13  survived Oracle's *Daubert* challenge.

14       Ms. Dean's hypothetical license analysis was directly foreclosed by *Oracle v. SAP* because

15  Oracle has never agreed to the license she posited, but this flaw does not apply to Mr. Hampton's

16  measure of damages, which is not based on what Oracle agreed to in previous license negotiations or

17  benchmarks. Rather, Mr. Hampton's analysis is based on the cost to implement a non-infringing

18  alternative, which courts—including this Court—have recognized as a proper measure of actual

19  damages. *Polar Bear Products, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) ("the loss in

20  the fair market value of the copyright, measured by … ***the value of the use of the copyrighted work***

21  ***to the infringer***") (emphasis added); *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d

22  1341, 1351 (Fed. Cir. 1999).[6]

23

24

---

25  [6] Further, the cost of a non-infringing alternative is a method for the ***defendant*** in a copyright

26  infringement case to prove the value of damages, and the cases Oracle cites analyze only what a ***plaintiff*** must demonstrate. *Oracle Corp. v. SAP AG*, 765 F.3d at 1093 ("Although a copyright

27  plaintiff need not demonstrate that it would have reached a licensing agreement with the infringer or present evidence of 'benchmark' agreements in order to recover hypothetical-license damages, it may be difficult for a plaintiff to establish the amount of damages without undue speculation in the absence of such evidence").

28

Oracle is also incorrect in arguing that Mr. Hampton does not consider the value of the hypothetical license to Oracle.   In a hypothetical negotiation where there is a non-infringing alternative available to the infringer, the seller (Oracle) receives the *most* it possibly could receive for the license before becoming an economically irrational negotiator.   In basic economic terms—if Rimini could either develop a non-infringing alternative or purchase a license from Oracle, it would choose the less expensive option.   And if Oracle could sell a license to Rimini instead of allowing Rimini to proceed using the non-infringing alternative, thereby achieving the same results with no benefit to Oracle, then Oracle would choose to sell the license to Rimini.   *Grain Processing*, 185 F.3d at 1351 ("Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether").   Rimini's proffered figure—several million dollars—is not what Rimini would "prefer to pay," as Oracle argues (Dkt. 767 at 35), but rather is the maximum that Rimini *would* pay, and what Oracle would accept, if the parties acted rationally in the face of the several-million-dollar non-infringing alternative.

In short, as this Court held, "Oracle is free to challenge Hampton's ultimate conclusions, for instance by arguing that it would have cost Rimini more than $7.6 million to create a non-infringing alternative, or that Rimini would not have considered a non-infringing alternative at all. But Oracle's challenge is not a valid basis to exclude defendants' from presenting this 'avoided costs' evidence to the jury."   For the same reasons, the jury must be instructed on the avoided costs measure of damages.[7]

---

[7] Oracle argues the instructions are confusing because they do not explain how the jury is to determine the "best" method of damages.   Rimini used the language approved by the Court in *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, ECF No. 1005 (N.D. Cal. Nov. 23, 2010.   But Rimini has no objection to adding the following language to the proposed instructions for purposes of clarity:   "<u>The best measure of Oracle's actual damages means the measure that you conclude most accurately compensates Oracle for its injury.   It does not necessarily mean the highest measure of damages</u>."

- 9 -

1

2.      ***Actual Copyright Infringement Damages – Lost Profits Causation*** (Oracle
        **Instruction P-21; Rimini Instruction D-20).**

2

3

4

5

6

Oracle argues that it is not required to prove lost profits as to each customer that it purportedly lost as result of Rimini's infringement.  Dkt. 767 at 43.  Oracle cites to inapposite cases extensively discussed in Rimini's prior briefing, which do not relate to a lost profits analysis at all.  *See* Dkt. 693 at 14–17 (discussing, *inter alia*, *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985)).  Oracle ignores and does not address Rimini's arguments in response.[8]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Oracle's statement of the law is plainly incorrect, because a plaintiff ***must*** prove that an infringer caused it to lose profits in order to obtain damages under this theory.  The law in the Ninth Circuit is clear on this point.  *Polar Bear*, 384 F.3d at 710 ("Polar Bear's financial losses were not of Timex's making, and mere speculation does not suffice to link the losses to the infringement"); *Leegin Creative Leather Prods., Inc. v. Belts by Nadim, Inc.*, 316 F. App'x 573, 575 (9th Cir. 2009) ("Although Leegin presented evidence that Nadim sold infringing products, no testimony or other evidence supported Leegin's argument that a purchaser of such infringing products *would have* bought Leegin's products had the infringing versions not been available") (emphasis added); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *3 (N.D. Cal. Mar. 31, 2014) ("It is entirely speculative" to assume that clients of infringer "would [have] automatically" become clients of copyright holder absent infringement given client preferences unrelated to infringement); *see also United States v. Fair*, 699 F.3d 508, 514 (D.C. Cir. 2012) (vacating restitution order because defendants' gross sales were not equivalent to the plaintiffs' actual losses, which required a showing of profit-per-sale and proof that but for the activities of the defendant, Adobe would have made those sales); *id.* ("the gross proceeds that the defendant collects from infringing sales are similarly an inappropriate gauge of the victim's lost profits"); *id.* at 515 ("There was thus no evidentiary basis on which the district court could find that had Fair's customers not purchased pirated Adobe software

24

25

26

27

28

---

[8] Oracle contends that D-19 is not clear with respect to the distinction between profit and revenue.  For clarity, Rimini agrees to the following revision (underlined) to the first two sentences of D-19: "The second type of actual damages is lost profits.  To calculate Oracle International Corporation's lost profits, you must determine what <u>revenue</u> Oracle International Corporation proved that it would have made without the infringement by Rimini Street, minus any expenses Oracle International Corporation would have incurred in making those profits."

from him at a greatly reduced price, all or any portion of them would have purchased full-priced versions from Adobe Systems"); *United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007) ("we are very skeptical of the implicit suggestion that" customers' purchase of a certain number of copies of low-priced counterfeit software "provides that [those customers] would have agreed to purchase the same number of copies from [the legitimate seller]").

Indeed, the Ninth Circuit held this in *Oracle v. SAP*:  Where "Oracle's expert was unsure about" "whether the loss of" "***three customers was attributable to TomorrowNow's infringement,*** Oracle[]" "***failed to establish this requisite causal connection*** and therefore ***cannot recover damages related to those three customers*.**"  *Oracle Corp. v. SAP AG*, 765 F.3d at 1094 (emphases added).

The model jury instructions on this point are either consistent with this statement of the law (Ninth Circuit), or they directly support it (Seventh Circuit).  *See* Federal Jury Practice and Instructions Civil § 160:90 (6th ed. Aug. 2015) ("Examples of actual losses from copyright infringement include: … Profits that ***Plaintiff proves he would have made*** without the infringement. Profits are the revenue Plaintiff ***would have made on sales he would have made*** without the infringement") (citing Seventh Circuit model jury instruction 12.8.2) (emphases added).

Oracle's argument conflates Oracle's lost profits with Rimini's infringer's profits.  To obtain lost profits, Oracle must prove that it would have made the sale.  To obtain infringer's profits, Oracle need only prove that Rimini's infringement caused *Rimini* to make the sale.  Were the Court to adopt Oracle's instruction on lost profits, Rimini would be subject to double liability that the plain text of the statute prohibits.  17 U.S.C. § 504(b) (stating that infringer's profits are only available where they were "not taken into account in computing" the lost profits award).

Oracle will not be able to make this causation showing at trial (as its expert essentially admitted), so it is attempting to bend the law in the jury instructions in order to relieve itself of its burden under the law.  *See* Dkt. 741 at 10.  The Court should reject Oracle's instruction and give Rimini's.

### 3.     *Infringer's Profits – Reduction of Expenses* (Oracle Instruction P-22, Rimini Instruction D-21).

The key legal error in Oracle's instructions and objections is its argument that if it proves Rimini's infringement was willful, the jury may not deduct Rimini's expenses from Rimini's gross revenue in calculating infringer's profits.  The Ninth Circuit has not "adopted such a rule." *ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1169 (W.D. Wash. 1999) ("neither the language of the statute, its legislative intent, nor the relevant case law requires or justifies prohibiting defendant from putting on evidence regarding its overhead costs").  Rather, the Ninth Circuit has referred to this exact attempt by Oracle to rewrite the statute as reliant on "dicta." *Oracle v. SAP*, 765 F.3d at 1096. And that dicta is plainly inconsistent with the text of the statute, which states that Oracle is entitled to ***profits***, not ***revenue***.  17 U.S.C. § 504(b).  Oracle admits that "[p]rofits are net of applicable expenses by definition." Dkt. 767 at 41.

## C.     Intentional Tort Claims (Oracle Instructions P-24 to P-29; Rimini Instructions D-23 to D-29)

Rimini's proposed instructions for Oracle's two intentional tort claims are legally supported, non-argumentative augmentations of the model instructions, which are necessary to fully and correctly cover the substance of the applicable law.  Oracle's objections are meritless, and are improperly designed to avoid instructing the jury on the valid defenses that Rimini has against Oracle's claims.

### 1.     *Inducing Breach of Contract* (Oracle Instruction P-24; Rimini Instruction D-23).

Oracle claims that Rimini's instruction "rehashes several elements multiple times," is "argumentative," and improperly tells the jury it cannot extrapolate damages.  Dkt. 767 at 51-52. These objections are meritless, and Oracle ignores the specific requirements of this tort.

Rimini's proposed instruction D-23 is based on Nevada model instruction 15CT.25 and CACI 2200 and adds fully supported language regarding the nature of conduct required (*see* Dkt. 766 at 44-46) and the fact that the third party must actually have breached the contract (*e.g.*, *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1129 (1990) ("the tort of inducing breach of contract requires proof of a breach")), as well as some simple explanations regarding the nature of

- 12 -

1  the elements.  Oracle does not even dispute those legal propositions raised by Rimini, except for

2  damages.

3       To the extent Oracle claims that it is allowed to extrapolate damages from one client to many

4  (Dkt. 767 at 52), that is wrong under tort law and unconstitutional, for reasons Rimini already

5  explained in its trial brief (Dkt. 741 at 18-21).  This is a substantive issue, not evidentiary one (as

6  Oracle claims), which prevents Oracle from recovering damages for individual third parties when it

7  has not proven the elements of its claims as to each individual third party.[9]

8       **2.      *Intentional Interference with Prospective Economic Advantage* (Oracle
          Instruction P-25; Rimini Instructions D-24 & D-25).**

9       Oracle's principal objections are that (1) the jury should not be instructed on privilege or

10  justification because Oracle proposes instructing the jury only regarding conduct that is never

11  privileged, and (2) Rimini incorrectly describes when a statement of future opinion is not an

12  actionable misrepresentation.  Oracle is wrong on both counts.

13       First, Rimini is entitled to have the jury instructed on the affirmative defense of privileged

14  conduct.  *See Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 198 (1979) ("Perhaps the most

15  significant privilege or justification for interference with a prospective business advantage is free

16  competition.   Ours is a competitive economy in which business entities vie for economic

17  advantage."); *S.F. Design Ctr. Assocs. v. Portman Cos.*, 41 Cal. App. 4th 29, 40 (1995) ("It is also

18  settled that an affirmative defense to the tort of interference with prospective economic advantage is

19  the privilege of competition"); *see also* Nevada Model Instruction No. 15CT.26 ("[Name of

20  defendant]'s conduct was not privileged or justified").  Oracle's attempt to dodge this significant

21  element in D-24 by simply listing other claims for which it contends conduct is never privileged is

22  unwarranted and improper, as explained in Rimini's objections.  Dkt. 766 at 45, 48.  Rimini is also

23  entitled to its separate instruction on the competition privilege (D-25).   Oracle should not be

24

25  _____

26  [9]    Oracle's fallback position that the jury should be allowed to extrapolate damages because the
27  parties agreed to a generic model instruction on circumstantial evidence (Dkt. 767 at 52) is a
    nonstarter:  circumstantial evidence allows a factfinder to draw inferences, but, again, it does not
    relieve Oracle of its burden to prove individual damages as to each specific third party.

28

permitted to prevent the jury from hearing the single most established defense to an intentional interference claim by claiming it is "superfluous" (Dkt. 767 at 55).

Second, Rimini's instruction about nonactionable future expressions of opinion is "hornbook law." *S.F. Design Ctr.*, 41 Cal. App. 4th at 43–44 ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."). The narrow exceptions to this rule for which Oracle proposes to have the jury instructed are not applicable to this case: Rimini did not have a fiduciary duty to its clients, it was not providing a professional opinion, and it was not misleading a particularly vulnerable individual. *E.g.*, *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 408 (1992). Thus, if the Court were to give Oracle's proposed additional instruction, it should provide only the first two sentences of the CACI 1904 instruction, and not the extra bullet points Oracle proposes, which will mislead the jury. *See* CACI 1904 ("Directions for Use") ("Alternative bracketed options that do not apply to the facts of the case may be deleted").

### 3. *Intentional Torts – Knowledge, Intent, Causation, & Damages* (Oracle Instructions P-26 to P-29; Rimini Instructions D-26 to D-29).

Oracle improperly seeks to lighten its burden of proof by relying on generic propositions that are not applicable to these specific tort claims. Rimini's proposed instructions reflect the correct law for these torts and Oracle's objections should be overruled.

***Knowledge (P-26/D-26)***. Oracle is simply incorrect that constructive knowledge of a contract is sufficient to establish the actual knowledge element for the interference torts. Dkt. 767 at 61. In contrast to the binding Nevada Supreme Court and Ninth Circuit case law Rimini cited in its objections, which establish the *actual* knowledge required for the interference torts (Dkt. 766 at 50 (citing *J.J. Industries v. Bennett*, 119 Nev. 269, 274 (2003); *DeVoto v. Pac. Fidelity Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980); Restatement (Second) of Torts § 766 cmt. i)), Oracle relies on a single unpublished order with no substantive discussion of the proposition for which Oracle cites it (and, in any event, which relates to the different claim of intentional interference with contractual relations). *See A.H.D.C. v. City of Fresno*, 2000 WL 35810723, at *23 (E.D. Cal. Aug. 31, 2000).

*Intent (P-27/D-27)*.  Oracle's position that "persons are expected to intend the natural consequences of their knowingly done acts" has been rejected by the Ninth Circuit in the specific context of these intentional torts, in a case that remains good law in Nevada.  *See* Dkt. 766 at 52-53 (citing *DeVoto*, 618 F.3d at 1347); *accord Bennett*, 119 Nev. at 275, 275 n.6 (relying on *DeVoto*). And Rimini's use of the language "specific" and "improperly and unlawfully"—to which Oracle objects—is supported directly by case law.  *See Bennett*, 119 Nev. at 276 ("the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff"); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995) ("a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant … engaged in conduct that was wrongful by some legal measure other than the fact of interference itself").

*Causation (P-28/D-28 and P-44/D-41)*.  Oracle disagrees with the sentence:  "Put another way, the 'substantial factor' test means that 'but for' the defendant's conduct, the plaintiff's harm would not have occurred."  That helpful, plain-language explanatory sentence is included in the CACI 430 instructions "Directions for Use" and is consistent with California Supreme Court precedent.  *See Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1053 (1991) ("in cases in which a defendant's conduct is clearly a 'but for' cause of plaintiff's harm, and defense counsel contends that defendant's conduct made such an insubstantial contribution to the outcome that liability should not be imposed") (internal citations and quotations omitted).

*Compensatory Damages (P-29/D-29)*.  Oracle's objections to the compensatory damages instruction are the same arguments to which Rimini has already responded:  certain language from Oracle's generic compensatory damages model instruction (about lost profits and nominal damages) is misleading and confusing in the context of these claims, and Rimini's two additions (about proving damages for each third party and not basing damages on guesswork) are necessary to clarify the model instruction in the specific context of Oracle's claims.  *See* Dkt. 766 at 56-58.

- 15 -

**D.     Computer Hacking Claims (Oracle Instructions P-30 to P-43; Rimini Instructions D-30 to D-38)**

All of Oracle's computer hacking claims are unavailable as a matter of law and unconstitutional as applied.  *See* Dkt. 766 at 59-60; Dkt. 741 at 21-22; Dkt. 48 at 2-7 (moving to dismiss Oracle's computer hacking claims).  The Court should not give the jury *any* instructions on these improper claims.

Even if the claims *could* be applied in this case, simply instructing the jury with the bare elements of the statutes, as Oracle proposes, would permit the jury to apply them unconstitutionally.  The *en banc* Ninth Circuit has been highly critical of such statutes and has demanded that they be applied narrowly.  *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (*en banc*).  Oracle's objections ignore this guidance and should be rejected.

***The statutes must be construed narrowly***.  Oracle claims that informing the jury that the statute should be applied narrowly is argumentative and unsupported.  Dkt. 767 at 67-68.  Not true.  As the *en banc* Ninth Circuit explained, the CFAA was passed to address "computer hacking" and its prohibitions should be read "as applying to hackers"—"This is a perfectly plausible construction of the statutory language that maintains the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate."  *Nosal*, 676 F.3d at 858.  The state law claims also applies to "hacking."  *E.g.*, *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34–37 (2007) ("Section 502 [of the CDAFA] defines 'access' in terms redolent of 'hacking' or breaking into a computer").  The Ninth Circuit also has explained several times that the CFAA, which is ambiguous, must be construed "narrowly."  *Nosal*, 676 F.3d at 862-63 ("we must construe ambiguous criminal statutes narrowly"); *see also United States v. Christensen*, --- F.3d ----, 2015 WL 5010591, at *12 (9th Cir. 2015) ("a broader definition of the term 'access' would allow criminal liability to turn on the vagaries of private policies") (citing *Nosal* at 860); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009).  And, as the California Supreme Court has explained, it is appropriate to instruct the jury regarding the scope of a statute when, like here, "the unadorned statutory language might mislead the jury as to [its] scope."  *People v. Grant*, 45 Cal. 3d 829, 856 (1998).

***A CFAA violation may not be based on website terms of use***.  The Ninth Circuit has rejected Oracle's position that "[w]hat matters" is whether "Oracle authorized Rimini's access to Oracle's systems" based on "Oracle's Terms of Use."  Dkt. 767 at 71-72.  A CFAA violation may not be based on website terms of use because such an interpretation "makes every violation of a private computer use policy a federal crime."  *Nosal*, 676 F.3d at 859-60; *see id.* at 861 ("Facebook makes it a violation of the terms of service to let anyone log into your account. … Yet it's very common for people to let close friends and relatives check their email or access their online accounts.  Some may be aware that, if discovered, they may suffer a rebuke from the ISP or a loss of access, but few imagine they might be marched off to federal prison for doing so.").

***Rimini's good-faith mistake of law is a complete defense***.  Oracle is flatly incorrect in arguing that Rimini's belief does not provide a defense.  Dkt. 767 at 72-73.  The CFAA "is primarily a criminal statute" and "[a]lthough this case arises in a civil context" the statute must be interpreted "in the criminal context."  *Brekka*, 581 F.3d at 1134.  In the criminal context, the term "willful" requires the "specific intent to violate the law" (*United States v. Liu*, 731 F.3d 982, 989 (9th Cir. 2013)), which requires proving "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."  *Cheek v. United States*, 498 U.S. 192, 201 (1991).  The CFAA contains a specific intent *mens rea* requirement.  *E.g.*, 18 U.S.C. § 1030(a)(2)(C) (defendant must act "intentionally").  And a good-faith mistake as to the requirements of the law is a complete defense.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 613-14 (2010) (Kennedy, J., dissenting) ("Federal statutes that link the term 'violation' with a *mens rea* requirement have been interpreted to excuse good-faith legal mistakes") (citation omitted).  That belief need not be objectively reasonable, just sincerely held.  *Cheek*, 498 U.S. at 203.[10]

---

[10]  Oracle's proposed distinction between "intentional" and "willful" (Dkt. 767 at 13) is meaningless in this context.  In criminal law, "willful" and "intentional" both connote a specific intent *mens rea*, which is higher than just knowledge.  *E.g.*, *United States v. Johnson*, 459 F.3d 990, 996 (9th Cir. 2006) (explaining that the "'willfully' *mens rea* invites inquiry into whether the defendant had bad motive or *intent*") (emphasis added).

1   Under these applicable and binding precedents, as well as the rule of lenity (see *Nosal*, 676

2   F.3d at 863), Oracle must prove that Rimini acted with the specific intent to violate the law.  Oracle

3   dug up an unpublished Eastern District of Pennsylvania motion to dismiss order (Dkt. 767 at 72), but

4   that plainly does not trump the en banc Ninth Circuit or Supreme Court.

5      ***The state statutes require the same guidance to the jury***.  Oracle argues that the California

6   CDAFA is different from the federal CFAA (Dkt. 767 at 77-78), but that is wrong.  The problems

7   with the CFAA are matters of *federal constitutional law*, which apply to the CDAFA no less than the

8   CFAA.  U.S. Const., amends. V, XIV.  If the CDAFA requires *less* than the CFAA to criminalize

9   behavior (as Oracle claims), and the CFAA is already rife with constitutional vagueness and notice

10   issues (as the Ninth Circuit has held), then, at the very minimum, the CDAFA must be construed

11   similarly to the CFAA to withstand *any* constitutional scrutiny.

12      Indeed, the CDAFA provisions Oracle seeks to apply are facially unconstitutional.

13   Subsection (c)(3) criminalizes "Knowingly and without permission uses or causes to be used

14   computer services."  Cal. Penal Code § 502(c)(3).  The other provision Oracle invokes—subsection

15   (c)(2)—is slightly longer but no clearer.  That law "is so vague and standardless that it leaves the

16   public uncertain as to the conduct it prohibits."  *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03

17   (1966); *see City of Chicago v. Morales*, 527 U.S. 41, 55 (1999); *cf. People v. Hawkins*, 98 Cal. App.

18   4th 1428, 1439, 1441 (2002) (rejecting vagueness challenge to "the statute's description of an

19   exception or exemption from prosecution," but recognizing that the federal and California

20   Constitutions require a statute "to provide adequate notice of the conduct proscribed").

21      The case upon which Oracle relies (*Christensen*, 2015 WL 5010591) draws a distinction that

22   is irrelevant to this case and in no way undercuts the en banc court's binding decision.  The court

23   interpreted CDAFA as prohibiting the *use* of information rather than the *access* of that information.

24   *Christensen*, 2015 WL 5010591, at *14-15.  But Oracle's claims here are based on unauthorized

25   access, not use, such as in the form of automated downloading.  *E.g.*, Dkt. 746 at 11-12 (Oracle's

26   Trial Br.).  Further, that case *supports* Rimini's position that specific intent is a necessary component

27

28

1    of CDAFA.  *Christensen*, 2015 WL 5010591, at *15 (error was harmless because "facts …

2    supported a finding of criminal intent").

3        Rimini's arguments and authorities also apply with equal force to the Nevada law.  Indeed,

4    Oracle recognizes, as it must, that the Nevada law requires "willful[]" conduct.  Dkt. 767 at 81 n.9.

5    Oracle argues that "Rimini does not cite any Nevada authority, much less authority interpreting the

6    NCCL" (Dkt. 767 at 81 n.9), but that is simply because the statute has never really been applied,

7    which highlights the severe constitutional problems with it being used so expansively in this case.

8    Indeed, there have been only eight orders or opinions to ever mention the statute, *four* of which are

9    from *this case*.  The other four contain no substantive discussion.  Oracle's attempt to use a broad

10   and vague statute to criminalize accessing its website in a way that the en banc Ninth Circuit has

11   held to be flatly unconstitutionally should be rejected.

12   **E.    Breach of Contract (Oracle Instruction P-45; Rimini Instructions D-39 and D-40)**

13       Oracle admits that its breach of contract claim is worthless (Dkt. 767 at 84), as Rimini has

14   contended all along.  Dkt. 741 at 24-26.  Likewise, Oracle's trespass claim, based on the same

15   conduct, is worth nothing.  *Id.*  Oracle's pursuit of these admittedly valueless claims is a waste of the

16   jury and Court's time.

17       Rimini's proposed instructions are appropriate.  Oracle does not claim that instruction D-39

18   is argumentative or legally unsupported, but only that it is "impractical and unnecessary."  Dkt. 767

19   at 82-83.  But Rimini's request that the jury be instructed with the specific contracts, required

20   performance, and breaches for which Oracle claims breach of contract is reasonable, particularly

21   given the scope of Oracle's claims in the case.  It helps focus the jury on Oracle's specific

22   allegations as connected to legal elements that Oracle does not dispute.  And D-40 is a verbatim

23   model instruction.  To the extent Oracle maintains its breach of contract claim, Rimini requests that

24   the jury assess the actual harm Oracle has proven.

25   **F.    Punitive Damages (Oracle Instructions P-46 & P-47; Rimini Instructions D-41 to D-51)**

26       Oracle's arguments that the two punitive damages model jury instructions will suffice is

27   incorrect.  In *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), the Supreme Court reversed a

28                                                                  - 19 -

punitive damages award when the trial court rejected a proposed jury instruction that was necessary to protect against the risk of an erroneous or excessive punitive damages award.  The Court stated that "*a court, upon request, **must** protect against th[e] risk*" of the incorrect imposition of punitive damages.  *Id.* at 357 (emphasis added).  Oracle is simply incorrect that the jury can be instructed only generally on punitive damages.  Rimini's proposed punitive damages instructions are specific, non-argumentative statements designed to protect against the risk of the incorrect or excessive imposition of punitive damages, and they are required by *Philip Morris v. Williams*.  *See also Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907, 933 (2008) ("In cases such as this where there is a significant risk that the jury will be confused on th[e] issue [of punitive damages], the court must protect against that risk by giving a limiting instruction when requested by the defendant").

With two exceptions (discussed below), Oracle does not dispute the law supporting Rimini's proposed instructions.  They are therefore necessary in addition to any model instructions.  *See*, *e.g.*, *Williams*, 549 U.S. at 357; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (punitive damages "[j]ury instructions typically leave the jury with wide discretion," which "creates the potential that juries will use their verdicts to express biases"); *Dang*, 422 F.3d at 804 (error to not provide punitive damages instructions that "fairly and correctly covered" "the substance of the applicable law" even when proposed instructions were not model instructions); *United States v. Pena-Ozuna*, 511 F.2d 1106, 1108 (9th Cir. 1975) ("We do not require trial judges to use standard jury instructions or specific language approved in prior cases.  Indeed, we have indicated that standard jury instructions might not always pass muster.").

***Specific Harm***.  For example, Rimini's proposed instruction D-44 explains to the jury the requirement that the jury may only impose punitive damages for "specific harm" Oracle proves at trial it suffered.  That language comes directly from *State Farm v. Campbell*.  538 U.S. at 422 ("conduct must have a nexus to the specific harm suffered by the plaintiff").

Oracle contends the model instruction covers this point of law because it states:  "You cannot punish the Defendant for conduct that … did not cause actual harm or loss to Oracle."  Dkt. 767 at 91.  But Oracle clearly seeks to have the jury award punitive damages based on whatever vague,

expansive accusations Oracle can get in front of it.  *See* Dkt. 747 at 24 (Oracle Trial Br.) (arguing "substantial" punitive damages are warranted for "sustained and intentionally unlawful acts," "unlawful conduct even after Oracle sued TomorrowNow," and "repeatedly l[ying] to Oracle's customers").  Oracle's broad "send a message" accusations will unconstitutionally encourage the jury to award punitive damages for third-party or unrelated harm that is not proven at trial.  *See Williams*, 549 U.S. at 353; *State Farm*, 538 U.S. at 422.  The single clause "did not cause actual harm or loss to Oracle" does not properly inform the jury of the limitations regarding the type of specific harm for which punitive damages may be awarded.  Because Rimini's proposed instructions are "supported by law and ha[ve] foundation in the evidence," Rimini is "entitled to" have the jury so instructed (*Clem*, 566 F.3d at 1181)—particularly in the context of punitive damages.  *See Williams*, 549 U.S. at 357; *State Farm*, 538 U.S. at 417 ("punitive damages pose an acute danger of arbitrary deprivation of property") (citation omitted).

**Fair Notice**.  Oracle claims that the jury should not be instructed about fair notice (D-47) because "there is no basis to claim retroactive application of the law." Dkt. 767 at 94.  That misses the point.  A change of law is not the only situation in which notice issues arise.  For example, Oracle seeks the imposition of punitive damages for its state law computer hacking claims.  But, as set forth above, those statutes are unconstitutionally vague, and Rimini had no fair notice either that its conduct was allegedly illegal (as Oracle claims) or that such conduct could lead to an award of punitive damages.  Under such circumstances, an award of punitive damages would violate Rimini's due process rights.  *See*, *e.g.*, *State Farm*, 538 U.S. at 417 ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose") (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996)).

**Deterrence from Compensatory Damages**.  Oracle takes issue with instruction D-50 on the basis that there is no authority for the proposition "that the jury must consider the punitive and deterrent effect associated with the award of compensatory damages alone." Dkt. 767 at 98.  But there is both state and federal Supreme Court authority that explicitly supports this proposition.  *E.g.*,

1   *Gore*, 517 U.S. at 582 ("low awards of compensatory damages may properly support a higher ratio

2   than high compensatory awards"); *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 718 (2010) ("When

3   compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory

4   damages, can reach the outermost limit of the due process guarantee") (quoting *State Farm*, 538 U.S.

5   at 425).   That instruction is necessary, particularly in light of the enormous compensatory damages

6   Oracle seeks.[11]

7   **G.   TomorrowNow (Oracle Instructions P-2 & P-10; Rimini Instruction D-14)**

8          The parties have already submitted considerable briefing on the TomorrowNow issue.  *See*

9   Dkts. 561, 605, 741, 746.  Rimini maintains that it is not appropriate to give a preliminary instruction

10  on an issue about which the Court has expressed skepticism and has yet to issue any ruling.  *See* Dkt.

11  766 at 4.  Contrary to Oracle's assertions, the Court has not "squarely ruled that TomorrowNow

12  evidence is relevant to the issues in this case" (Dkt. 767 at 26 n.5):  While the Court agreed it might

13  be relevant to some issues, it did not, for example, grant Oracle permission to use this evidence as

14  evidence of willfulness, either directly or indirectly through proof of false statements.  The Court

15  should decline to give an instruction on the TomorrowNow evidence unless and until it has been

16  affirmatively introduced at trial.  If the Court decides the evidence is admissible (which it should

17  not), it should, at that point, issue the admonition Rimini suggests.  Dkt. 766 at 15-16.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

---

25  [11]   Oracle's only other non-duplicative objection is that it "has a right to seek punitive damages
26  for trespass to chattels," which is not included in Rimini's instructions.  Dkt. 767 at 90.  But, as
    briefed in Rimini's objections, Oracle has never alleged punitive damages for this claim (for which
27  it seeks less than $30,000 in damages) and cannot do so on the eve of trial to the unfair surprise of
    Rimini.  Dkt. 766 at 81.

28                                                    - 22 -

### III.    CONCLUSION

For the reasons listed herein and in Rimini's objections to Oracle's proposed instructions, this Court should resolve the disputed issues listed above in Rimini's favor and adopt its proposed instructions on these disputed issues.

DATED:        September 14, 2015                LEWIS ROCA ROTHGERBER LLP

                                                By:   /s/ *W. West Allen*
                                                       W. West Allen

                                                *Attorneys for Defendants*
                                                *Rimini Street, Inc. and Seth Ravin*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By:   /s/ *W. West Allen*
        W. West Allen

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*