
BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market Street
Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs*
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S MOTION TO EXCLUDE DEPOSITION TESTIMONY OF PAUL SIMMONS AND THE TESTIMONY, IN PART, OF BROOKS HILLIARD**<br><br>**[REDACTED]** |

**TABLE OF CONTENTS**

I.   THE COURT SHOULD EXCLUDE THE SIMMONS DEPOSITION ............................ 1

    A.   The Simmons Deposition Is Irrelevant to Rimini's Good Faith ............................ 2

    B.   The Simmons Deposition Is Prejudicial and Confusing on Causation and Damages ............................................................................................................ 3

    C.   Admission of the Simmons Deposition Would Be Unfair in Light of Exclusion of TomorrowNow Evidence .................................................................. 4

II.  BROOKS HILLIARD'S EXPERT TESTIMONY REGARDING "INDUSTRY CUSTOM" CAN ONLY BE RELEVANT TO THE EXTENT RIMINI KNEW AND RELIED UPON SPECIFIC PRACTICES ............................................................. 6

CONCLUSION .................................................................................................................. 9

1   Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation
2   ("Oracle") move the Court to exclude the deposition of Paul Simmons.  It is irrelevant,
3   prejudicial, and confusing.  It would also be fundamentally unfair to admit that evidence in light
4   of the exclusion of evidence relating to TomorrowNow.
5   Oracle also moves, for similar reasons, to exclude testimony of Brooks Hilliard as to
6   supposed industry custom and practice about which Defendants Rimini Street, Inc. and Seth
7   Ravin ("Rimini") have not proved knowledge and reliance.

## I.    THE COURT SHOULD EXCLUDE THE SIMMONS DEPOSITION.

CedarCrestone is a consulting firm that, for a time, provided maintenance services for PeopleSoft software.  In December 2011, Oracle and Rimini took the deposition of Paul Simmons, a Rule 30(b)(6) designee of CedarCrestone.  Rimini seeks to play that deposition at trial.  Mr. Simmons testified

Declaration of Kieran P. Ringgenberg filed in support of the Motion ("Ringgenberg Decl."), **Ex. A**, Simmons 30(b)(6) Dep. Tr. at 21:8-22:6.)  Mr. Simmons also testified that

(*Id.* at 24:23-26:21.)

Mr. Simmons also testified to

(*Id.* at 53:17-54:18.)

(Ringgenberg Decl., **Ex. B**, Declaration of Brian E. Fees on Behalf of CedarCrestone, Inc., PTX 5365 at 4 ¶ 14.)  In addition, Brian Fees, CedarCrestone's Chief Financial Officer, declared under penalty of perjury that:

- 

(*Id.* at 3.)

1

1 • 

2 (*Id.* at 4.)

3 •

4 (*Id.*)

5

6

7   A.   **The Simmons Deposition Is Irrelevant to Rimini's Good Faith.**

8   Rimini claims evidence of CedarCrestone's conduct and assertions in Mr. Simmons'

9 deposition is "relevant as industry custom and practice supporting Rimini's punitive damages

10 defense that Rimini acted consistent with industry custom and practice and was therefore not a

11 reckless actor." (Dkt. 816 at 6.) Mr. Ravin has already testified at length about his personal

12 beliefs and the reasons for them. Rimini's knowledge and beliefs, not the unknown conduct of

13 third parties, determine Rimini's willfulness and good faith. Mr. Simmons did not testify that he

14 told Mr. Ravin (or anyone else at Rimini Street) about CedarCrestone's practices, nor has there

15 been any testimony that anyone at Rimini knew what CedarCrestone was doing. Indeed, the

16 facts about CedarCrestone's conduct revealed in Mr. Simmons' deposition on December 1, 2011

17 were designated by CedarCrestone as Highly Confidential under the Protective Order.

18 Ringgenberg Decl., **Ex. C** (Jan. 13, 2012 email from CedarCrestone). Thus, an Order from this

19 Court barred anyone at Rimini from learning those facts from the deposition, other than

20 designated in-house lawyers involved in the litigation. (Dkt. 55 at 6.)

21   Rimini does not assert it had knowledge of what CedarCrestone was doing or its

22 contentions about licenses. Instead, Rimini says that Mr. Simmons' deposition is relevant to

23 "what the industry thought was proper and legal." (Dkt. 816 at 5.) But reliance on the

24 "thoughts" of the "industry" is beside the point: "Willfulness is personal. It relates to the

25 defendant's state of mind. It does not exist in the abstract. Unless there is a connection between

26 the external facts and the defendant's state of mind, the evidence of the external facts is not

27 relevant." *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986); *see also United States v.*

28

2

ORACLE'S MOTION TO EXCLUDE DEPOSITION TESTIMONY OF PAUL SIMMONS
AND THE TESTIMONY, IN PART, OF BROOKS HILLIARD

1  *Zayyad*, 741 F.3d 452, 460 (4th Cir. 2014) (same); *United States v. Amundsen*, 967 F.2d 592 (9th

2  Cir. 1992) ("Hill never claims to have sought or become aware of Hoffman's opinions during the

3  period in question.  Absent any such connection, her testimony can have no bearing on his state

4  of mind.").  None of Rimini's authorities suggest a defendant can show good faith based on

5  something the defendant did not know.  *See, e.g.*, *Ramirez v. Plough*, 6 Cal. 4th 539, 552-555

6  (Cal. 1993) (considering uniform practice of public advertising and marketing in determining

7  there was no duty to provide foreign-language warnings).

8        **B.**    **The Simmons Deposition Is Prejudicial and Confusing on Causation and
9  Damages.**

10        Even if the Simmons deposition had some marginal value as to Rimini's state of mind, it

11  is far outweighed by the confusion and prejudice it would cause if viewed by the jury.

12        Rimini has told the Court that "Rimini will not introduce evidence that TomorrowNow

13  and CedarCrestone were infringing or non-infringing alternatives."  (Dkt. 816 at 2.)  Rimini will

14  not do so – and cannot do so – because it is settled law that an infringer cannot escape

15  responsibility for losses it caused by arguing that, but for its infringement, someone else would

16  have infringed instead.  *See Polaroid Corp. v. Eastman Kodak Co.*, No. 76-1634-MA, 1990 WL

17  324105, at *13 (D. Mass. Oct. 12, 1990), *amended at* No. CIV.A. 76-1634-MA, 1991 WL 4087

18  (D. Mass. Jan. 11, 1991) (when calculating lost profits, "[t]he inquiry [into substitutes] is quite

19  narrow; acceptable substitutes are those products which offer the key advantages of the patented

20  device but do not infringe"); *see also State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573,

21  1578 (Fed. Cir. 1989) (discounting "other competitors" if the court was correct that they "were

22  likely infringers").

23        But despite its assertions, Rimini has repeatedly questioned witnesses about Oracle's

24  losses to unnamed third party competitors at trial.  (*E.g.*, Ringgenberg Decl., **Ex. G**, Trial Tr. at

25  1335:17-22, 1339:5-6.)  This evidence is, no doubt, aimed to trigger the question in the jury that

26  Rimini's counsel expressly asked in opening: "Only about 12 percent end up going with Rimini.

27  You'll have to ask the question to yourselves in this case, **'where are the others going?'"**

28  (Ringgenberg Decl., **Ex. G**, Trial Tr. at 128:19-21 (emphasis added).)

1  In truth, other than Rimini, the largest third-party support competitor – by wide measure
2  – was TomorrowNow; it provided support by infringing Oracle's copyrights (and pled guilty to
3  criminal copyright infringement for local environments of Oracle software, as discussed below).
4  The Simmons deposition would confuse the jury into believing that CedarCrestone, if not others,
5  were providing third-party, vendor-level support for Oracle products as an alternative to Rimini
6  that might have lawfully caused some of Oracle's losses.  But that is exactly what Rimini has
7  told the Court it will not claim (Dkt. 816 at 2), and the Court should not allow Rimini to do so
8  now.  Excluding the evidence under Rule 403 would avoid confusion and unfair prejudice.

   C. **Admission of the Simmons Deposition Would Be Unfair in Light of Exclusion of TomorrowNow Evidence.**

11  Finally, the Court should exclude the Simmons deposition because its admission would
12  be unfair in light of the exclusion of TomorrowNow's guilty plea.  In addition, should the
13  Simmons deposition be admitted, the Court should allow use of CedarCrestone's declaration
14  with Rimini's experts.
15  <u>First</u>, if Rimini's theory for admission of the Simmons deposition is that there was a
16  "general" custom and practice of which everyone in the industry was aware, that theory is
17  fundamentally inconsistent with Rimini's arguments in favor of excluding evidence of the
18  TomorrowNow guilty plea and conviction.  Oracle understands and respects the Court's ruling
19  on this evidence of the criminal charges and conviction, <u>and does not seek admission of those</u>
20  <u>facts at trial</u>.  However, it would be fundamentally unfair for Rimini to exclude on the basis of
21  prejudice the fact that TomorrowNow pled guilty to criminal copyright charges based on creating
22  local environments of Oracle software <u>while at the same time</u>

1
2
3
4
5
6
7
8
9    Rimini claims that there is no admissible[1] evidence that Rimini's conduct paralleled
10   TomorrowNow's.  But the guilty plea, PTX 1487, recounts as the basis for criminal copyright
11   infringement that TomorrowNow created numerous "environments" of PeopleSoft, J.D.
12   Edwards, and Siebel software on its systems and that "Each of these copies constituted an
13   infringement of numerous copyrighted works."  (Ringgenberg Decl., **Ex. D** at 5.)  Likewise, the
14   allocution leading to the Court's acceptance of the plea expressly incorporates the trial record in
15   the TomorrowNow civil case.  *United States v. TomorrowNow, Inc.*, Case No. 4:11-c-00642,
16   Dkt. 16 (N.D. Cal. Jan. 4, 2014) at 24:15-25:1 ("The Court is prepared to accept the plea
17

---

[1] Again, Oracle does not seek admission of the criminal plea or conviction.  However, Rimini is wrong to suggest that there is no evidentiary basis to claim that Rimini's practices parallel those at TomorrowNow.  In addition to the detailed stipulation of liability, the guilty plea and allocution are admissions against interest and therefore not inadmissible hearsay.  *See, e.g.*, *State Farm Fire & Cas. Co. v. Bomke*, 849 F.2d 1218, 1220 (9th Cir. 1988) (guilty plea admissible to prove truth against third party); *see also United States v. Winley*, 638 F.2d 560, 562 (2d Cir. 1981) (admitting guilty plea of co-defendant; "It is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court[.]"); *United States v. Lombardozzi*, No. S1 02 CR. 273(PKL), 2003 WL 1907965, at *7 (S.D.N.Y. Apr. 17, 2003) (former defendant's plea allocution admissible under Rule 804(b)(3) with the limiting instruction that "You have heard that Frank Isoldi pled guilty to a conspiracy charge and, in connection with that plea, made statements about his participation in certain crimes charged in the Indictment.  You may consider Mr. Isoldi's plea statements as evidence of his own activities, which are relevant to this case.").  TomorrowNow's plea could also be admitted Rule 803(22).  *See United States v. 47 mm Cannon*, 95 F. Supp. 2d 545, 548 (E.D. Va. 2000) (Rule 803(22) allows a "guilty plea and the statements made therein to apply to" cases against other parties as evidence of the pleading party's violation).

5

1  agreement in the case based on the information currently before the Court from this case and the

2  civil case and is at this time prepared to enter judgment . . . . The Court is familiar with the case

3  from having sat through the trial. I think that the factual basis here is detailed and goes into the

4  actions that were taken by TomorrowNow employees."). The Court thus incorporated

5  TomorrowNow's stipulations of facts establishing its criminal liability, which likewise recount

6  TomorrowNow's local environments as the basis for civil liability. (Ringgenberg Decl., **Ex. E**,

7  PTX 1483; Ringgenberg Decl., **Ex. F**, PTX 1489 at 3.) And the stipulation itself independently

8  shows that TomorrowNow created local environments of PeopleSoft, J.D. Edwards, and Siebel

9  software on its systems. (Ringgenberg Decl., **Ex. F**, PTX 1489 at 3.)

10          Second, if the Simmons deposition is admitted or relied upon by Rimini's experts, Oracle

11  should be allowed to cross-examine Rimini's witnesses testifying to this issue with

12

13

14

15

16  **II.    BROOKS HILLIARD'S EXPERT TESTIMONY REGARDING
        "INDUSTRY CUSTOM" CAN ONLY BE RELEVANT TO THE EXTENT
17      RIMINI KNEW AND RELIED UPON SPECIFIC PRACTICES**

18          Oracle moved to exclude testimony of Rimini's expert Brooks Hilliard on the ground that

19  his testimony was inadmissible parol evidence aimed to vary the terms of the license agreements

20  between Oracle and its licensees. The Court denied that motion, explaining that Oracle "does

21  not identify any specific statements or opinions" of Mr. Hilliard that "relate directly or indirectly

22  to interpreting the software licenses." (Dkt. 724 at 8.) The Court also held that Mr. Hilliard

23  "provides testimony and analysis of the ordinary practices in the industry," which "will assist the

24  jury in determining whether defendants' actions were willful." (*Id.*)

25          The testimony at trial has sharpened the issue, showing which parts of Mr. Hilliard's

26  opinions may be admissible and which are not. Mr. Ravin testified at trial about the exact basis

27  for his belief that Rimini's conduct was permitted, and he said he relied on the terms of the

28

1   license agreements.  (Ringgenberg Decl., **Ex. G**, Trial Tr. at 633:18-634:3 ("Q. Did you have an
2   understanding as to how the industry handled maintenance by third parties? A. Yes. Q. And how
3   did that, if at all, inform you about the propriety of this new business? A. Well, again, coming
4   back to the license agreements, third parties had the rights, from all my experience, and actually
5   telling customers this for years in my role at PeopleSoft, that customers can stand in the shoes of
6   the licensee to do the things that they're licensed to do; nothing more, but within the license
7   agreement.").)  No other Rimini witness has testified on this issue.
8          The Court has already held that the relevant provisions are unambiguous and no extrinsic
9   evidence can be received on license interpretation.  (Order re MSJ (First), Dkt. 474, at 11, 14,
10  18-20 (Feb. 13, 2014); Order re Rimini's Fifth Motion *in Limine*, Dkt. 723, at 5 (Sept. 3, 2015)
11  ("any evidence that attempts to interpret the licenses shall be excluded").)  And Rimini already
12  stated that it was "not proffering Hilliard's expert testimony to interpret the software license
13  agreements."  (Order re Oracle's Motion to Excl. Expert Testimony, Dkt. 724, at 5 (Sept. 4,
14  2015).)  Therefore, nothing Mr. Hilliard could say can change the plain meaning of the terms that
15  Mr. Ravin testified he relied upon.
16         Apart from the license terms, the only specific facts about industry practice that Mr.
17  Ravin testified that he knew about and relied upon was in the following testimony:
18         Q. Mr. Ravin, why is it that you believed that you could actually provide maintenance
19         service to these customers?
20         A. Well, again, based on my understanding of the years in the industry and having
21         worked with software, enterprise software licenses for so many years, I was sure knowing
22         that Siebel has third-party companies that do provide and offer service for Siebel
23         products. Siebel offered training to independent consultants to get certified and to attend
24         and learn how to service these systems so that they could go out and work for customers,
25         and we are just an independent provider of service, so I saw no reason we would be
26         different.
27  (Trial Tr. 685:19-686:6.)
28         If Mr. Hilliard can corroborate those specific facts (that Siebel had "third-party

7

ORACLE'S MOTION TO EXCLUDE DEPOSITION TESTIMONY OF PAUL SIMMONS
AND THE TESTIMONY, IN PART, OF BROOKS HILLIARD

1  companies that do provide and offer service for Siebel products. Siebel offered training to
2  independent consultants to get certified and to attend and learn how to service these systems so
3  that they could go out and work for customers") Oracle will not object at trial, in accord with the
4  Court's prior ruling.  However, any testimony from Mr. Hilliard about *other* practices or customs
5  – which no Rimini witness has claimed to know about or rely upon – is irrelevant to Rimini's
6  good faith for the same reasons the Simmons deposition is irrelevant.  *See* above at 2-3, *citing,*
7  *e.g., Curtis*, 782 F.3d 593 at 599 ("Willfulness is personal.  It relates to the defendant's state of
8  mind.  It does not exist in the abstract.  Unless there is a connection between the external facts
9  and the defendant's state of mind, the evidence of the external facts is not relevant.").
10       In addition, any testimony from Mr. Hilliard as to third-party support competitors like
11  CedarCrestone is prejudicial and confusing on the issues of causation and damages for the same
12  reasons as the Simmons deposition.  The jury may be confused into believing, contrary to
13  Rimini's assertions, that
14       *See* above at 3.
15       Finally, if Rimini's theory of admissibility for Mr. Hilliard's testimony regarding
16  industry standards and practices is not to support what *Rimini* knew or believed, but rather to
17  show "what the *industry* thought was proper and legal" (Dkt. 816 at 5 (emphasis added)), then it
18  too – like the Simmons deposition – would be fundamentally unfair in light of the exclusion of
19  the evidence regarding TomorrowNow.  Once again, Rimini should not be allowed to claim to
20  the jury that the "industry" believed conduct of the sort Rimini was engaged in was "proper and
21  legal" while withholding from the jury evidence that TomorrowNow pled guilty to criminal
22  charges for creating PeopleSoft, J.D. Edwards, and Siebel software environments on its computer
23  systems.
24
25                    *          *          *
26
27
28

8

## CONCLUSION

For the foregoing reasons, Oracle respectfully requests the Court exclude the Simmons deposition and the testimony of Brooks Hilliard to the extent he testifies about industry custom and practice that Rimini has not shown it knew about or relied upon.

DATED:  September 27, 2015                       BOIES SCHILLER & FLEXNER LLP


By: /s/ Kieran P. Ringgenberg
Kieran P. Ringgenberg
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2015, I electronically transmitted the foregoing **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S MOTION TO EXCLUDE DEPOSITION TESTIMONY OF PAUL SIMMONS AND THE TESTIMONY, IN PART, OF BROOKS HILLIARD** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

*/s/ Kieran P. Ringgenberg*
Kieran P. Ringgenberg

# ATTACHMENT 1
# FILED UNDER SEAL