BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**ORACLE'S MOTION TO EXCLUDE UNTIMELY EXPERT OPINIONS OF SCOTT D. HAMPTON**<br><br>*PUBLIC REDACTED VERSION* |

Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively, "Oracle") move to exclude untimely expert opinions offered by Defendants Rimini Street's and Seth Ravin's (together, "Rimini's") damages expert, Scott D. Hampton. Specifically, Oracle moves to exclude paragraphs 8 and 9, table 1 and schedules M1.SU, M2.SU, M3.1.SU, M3.2.SU and M3.3.SU from Mr. Hampton's September 2, 2015 supplemental expert report, as well as any testimony or argument concerning those new opinions.

Mr. Hampton is likely to be called as a witness by Wednesday, September 30.

I. INTRODUCTION

Two weeks before trial, Rimini's damages expert, Scott Hampton, disclosed brand new opinions concerning customers that left Oracle from 2006-2011. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

There are some obvious methodological and logical problems with Mr. Hampton's new opinions. However, for purposes of this motion, the relevant point is that every input into Mr. Hampton's analysis was available to him well before his 2012 expert report was due, and there is no reason why he could not have completed this analysis three years ago. The late disclosure requires that the Court exclude these new expert opinions.

In addition, Mr. Hampton's new opinions are based on the assumption that TomorrowNow and CedarCrestone were available as non-infringing alternatives that Rimini's customers could have gone to instead of remaining with Oracle for support. These opinions directly contradict Rimini's statements to the Court on the record that it will not offer either company as a non-infringing alternative. The Court should exclude Mr. Hampton's new opinions for this reason as well.

## II. BACKGROUND

### A. The Parties' 2012 Damages Reports

On January 17, 2012, Oracle disclosed the expert opinion of its damages expert, Elizabeth Dean. Declaration of Thomas S. Hixson ("Hixson Decl."), Ex. A (2012 Dean report). On March 30, 2012, Rimini disclosed the rebuttal report of its damages expert, Mr. Hampton. *Id*. Ex. B (2012 Hampton report). Both experts addressed Oracle's damages claims for the customers gained from 2006 through September 2011, and calculated damages for them through the then-anticipated date of trial, in 2012.

As part of her lost profits opinions, Ms. Dean reduced her calculation of Oracle's lost support revenues by applying Oracle's historical revenue attrition rates. *Id*. Ex. A (2012 Dean Report) ¶¶ 91-93, Tbls. 6, 7. She used Oracle's actual renewal revenue data for the PeopleSoft, J.D. Edwards, and Siebel products. *Id*. Ex. E (Trial Tr.) at 1803:1-1805:18 (Dean testimony). The underlying data was produced to Rimini in 2011 during discovery. Hixson Decl. ¶ 7.

In 2012, Mr. Hampton took a different approach to the relevancy of Oracle attrition rates. He criticized Ms. Dean for including "customers who never left Oracle support in the population of her attrition rate calculation." *Id*. Ex. B (2012 Hampton Report) ¶ 104. He opined that the "proper population and associated rate should only include customers who actually left Oracle. The percentage of Oracle's 'available to renew' <u>revenue</u> dollars *says nothing about the percentage of Oracle's 'lost customers' who Oracle would be able to retain but for Rimini Street's alleged wrongful acts*." *Id*. ¶ 105 (emphasis added).

### B. Rimini's 2015 Attempt To Prevent Updated Damages Analysis

In 2015, Rimini filed a Motion to Preclude Certain Damages Evidence Pursuant to Federal Rules of Civil Procedure 26(E) and 37(C). Dkt. 554. Rimini argued that Oracle should not be permitted to extend its damages calculations from 2012 through February 2014 for all 364 customers Rimini disclosed during discovery. Rimini argued that "any damages claims that extend beyond the damages theories set forth in Oracle's expert damage report should be excluded at trial in *Rimini I*." Dkt. 554 at 11:6-8. Rimini further argued that Oracle could not "remedy its failure to supplement by amending its expert disclosures now because the prejudice

1  to Rimini from any eleventh-hour amendment is readily apparent.  Trial is scheduled to begin
2  within five months, and allowing Oracle to amend its damages report to include additional
3  damages arising before February 13, 2014, will significantly expand Oracle's damages claim."
4  Dkt. 554 at 10:16-20.

5        The Court denied Rimini's motion, finding that Oracle was entitled to supplement its
6  2012 damages report to account for the passage of time.  Dkt. 669 at 4.  The Court set a deadline
7  for that disclosure, provided Rimini with the opportunity to depose Oracle's expert, and allowed
8  Rimini to "prepare and serve any supplement to their own expert report *on the issue of the*
9  *supplemental damages*."  Dkt. 669 at 5:1-5 (emphasis supplied).

10        **C.**    **2015 Supplemental Expert Reports**
11        On July 30, 2015, Oracle served Dean's supplemental expert report.  Hixson Decl. Ex. C
12  (2015 supplemental Dean report).  As allowed by the Court's order, Ms. Dean extended her lost
13  profits calculations through February 2014.  As part of her update, she "[u]pdated the attrition
14  rates and profit margins used in [her] calculations of Oracle's lost profits . . . to reflect Oracle's
15  historical results." *Id.* Ex. C ¶ 1.  She used the exact same methodology as in her 2012 report.
16        On September 3, 2015, Rimini served a supplemental expert report from Mr. Hampton.
17  Hixson Decl. Ex. D (2015 supplemental Hampton report).  In that report, Mr. Hampton did an
18  about face and determined that Oracle's renewal rate data *is relevant* to damages in this case.
19  His supplement included brand new opinions that Hampton now claims are relevant to lost
20  profits.  *Id.* Ex. D ¶¶ 8-9, Table 1, & Exhibits M1.SU through M3.3.SU.
21        In his new opinions, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
22  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
23  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
24  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
25  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *Id*. Table 1. ■■■■■■■■■■■■■■
26  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
27  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
28  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

1 ███████████████████████████. *Id*. n.7. To determine the median, he used the
2 support fees Rimini's customers used to pay Oracle, as determined by Ms. Dean *in her 2012*
3 report. *Id.* Exhibit M3.1.SU (sourcing his analysis to Dean Schedule 16, which was disclosed in
4 2012). The analysis is comprised of 11 pages of new calculations. Every input for his 2006-
5 2011 analysis was available to him *in 2012*. Mr. Hampton then used this analysis to conclude
6 that "Rimini Street was not the cause of Oracle's attrition or lost profit" because, according to
7 him, so many customers left Oracle in those years anyway. *Id.* ¶ 9.

**III.    MR. HAMPTON'S NEW OPINIONS SHOULD BE EXCLUDED.**

    **A.    Mr. Hampton's New Opinions Are Untimely And Not Permitted Under The Court's Order Regarding Supplementation.**

11     Mr. Hampton's new renewal rate opinions should be excluded because they were not
12 disclosed by the expert disclosure deadline. Expert disclosures shall be made "at the times and
13 in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Here, the deadline to
14 complete expert discovery was May 18, 2012. Dkt 232. A party who fails to disclose an expert
15 opinion by the deadline is subject to sanctions and exclusion pursuant to Rule 37(c). Under Rule
16 37(c), "If a party fails to provide information or identify a witness as required by Rule 26(a) or
17 (e), the party is not allowed to use that information or witness to supply evidence on a motion, at
18 a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P.
19 37(c).
20     Rimini's failure to disclose Mr. Hampton's new analysis is not substantially justified or
21 harmless. Every input to his analysis was available to him before he disclosed his *2012* report.
22 Moreover, his entire analysis is designed to support his opinion for the 2006-2011 period, when
23 all of the relevant customers signed with Rimini. Hixson Decl. Ex. D (2015 Hampton
24 Supplement, Table 1). There was no justification for waiting until two weeks before trial to
25 disclose these new opinions.
26     Mr. Hampton's analysis must also be excluded because it ignores the Court's order
27 limiting the scope of the supplemental reports to "the issue of the supplemental damages." Dkt.
28 669 at 5:1-5. Mr. Hampton's new analysis does not respond to the new material in Ms. Dean's

2015 supplemental report, but rather regresses to a discussion of material included initially in her 2012 report.  Tellingly, Mr. Hampton's new analysis relates to the time period 2006-2011 while Dean's supplement extends calculations from 2012-2014.

Oracle has been prejudiced by Mr. Hampton's late disclosure just two weeks before trial.  Oracle did not have the opportunity to depose Mr. Hampton on his dubious new opinions.  Thus, Oracle has had no opportunity to examine the reliability of the analysis (every indication is that it is *not reliable*).  For example, Oracle does not know why Mr. Hampton used the methodology he chose, including why he ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████, as well as other matters.  These are not questions that Oracle should be forced to ask Mr. Hampton for the first time while on the stand at trial.  With no opportunity to develop a record to challenge the admissibility of these new opinions on the merits, Oracle is severely prejudiced, and Mr. Hampton's analysis should be excluded.

### B.  Hampton's New Opinions Are Contrary To Rimini's Assurances To The Court Regarding TomorrowNow And CedarCrestone.

Mr. Hampton's late disclosed opinions are directly contrary to Rimini's promise to the Court that Rimini will not argue that TomorrowNow or CedarCrestone were available, non-infringing alternatives to Oracle support.  Rimini told the Court: "We have no intention whatsoever of referencing TomorrowNow or CedarCrestone as noninfringing alternatives.  That's not going to happen."  Hixson Decl, Ex. E (Trial Tr.) at 1615:22-24; *see also id* at 1606:12-15 (Rimini Counsel: "I said that we didn't intend to argue that TomorrowNow was a noninfringing alternative"); Dkt. 816 at 2 ("Rimini will not introduce evidence that TomorrowNow and CedarCrestone were infringing or non-infringing alternatives.").

In his new opinions, Mr. Hampton states that "████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████" Hixson Decl. Ex. D (2015 supplemental Hampton report) ¶ 9 (emphasis supplied). Rimini and Hampton argue that because so many customers purportedly left Oracle each year for options that were not Rimini, the customers who did leave for Rimini would have left Oracle regardless of Rimini's infringement. For example, during Rimini's opening argument, Rimini displayed the following demonstrative and argued to the jury that:

**Most Customers Leaving Oracle Choose Other Options**

Of those customers leaving Oracle:

88% Choose other options | 12% Go to Rimini Street

> Five percent of their customers leave every year. It's called churn. Every year five percent of these customers leave for one of these options. Only about 12 percent end up going with Rimini. You'll have to ask the question to yourselves in this case, where are the others going? How can Oracle prove that Rimini Street would have gone back to Oracle rather than to deal with what these 88 percent of these other folks did?

Hixson Decl. Ex. E (Trial Tr.) at 128:15-23 (Rimini opening).

Counsel's argument was based on Mr. Hampton's analysis, and both are flawed because the "88%" who "[c]hoose other options" *include customers who left Oracle for TomorrowNow and CedarCrestone*. TomorrowNow alone had 358 customers on the PeopleSoft, J.D. Edwards, and Siebel product lines – almost as many as Rimini. *Oracle USA, Inc. vs. SAP AG*, No. 07-CV-01658, (N.D. Cal.), Dkt. 1141, Undisputed Fact 68. No adjustment has been made to Mr.

Hampton's analysis for these customers. Thus, Mr. Hampton's new opinions contending that a large percentage of customers leave Oracle every year for options that are not Rimini – and including in that denominator *all* cancellations where the customer did not go to Rimini – necessarily includes Oracle's losses to TomorrowNow and CedarCrestone, implicitly using them as available non-infringing alternatives. This is exactly the argument that Rimini told the Court it would not make. The Court should hold Rimini to its promise and exclude Mr. Hampton's new opinions that implicitly assume the availability of TomorrowNow and CedarCrestone as non-infringing alternatives.

### IV. CONCLUSION

For the foregoing reasons, the Court should exclude Mr. Hampton's new opinions.

Dated: September 27, 2015

                          MORGAN, LEWIS & BOCKIUS LLP

                          By:     /s/ Thomas S. Hixson
                                   Thomas S. Hixson
                               Attorneys for Plaintiffs
                                 Oracle USA, Inc.,
                             Oracle America, Inc. and
                           Oracle International Corporation