# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORACLE USA, INC., ET AL.

(Plaintiffs)

v.

RIMINI STREET, INC. & SETH RAVIN

(Defendants)

Case No. 2:10-cv-0106-LRH-PAL

EXPERT REPORT
of
SCOTT D. HAMPTON

March 30, 2012

SUBJECT TO A PROTECTIVE ORDER

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*  *Subject to a Protective Order*
*Expert Report of Scott D. Hampton*  *Highly Confidential-Attorneys' Eyes Only*
*March 30, 2012*

without the alleged infringement of Oracle's copyrights and other wrongful acts. Ms. Dean failed to support her assumption that Rimini Street would not have been in the market without infringing Oracle's copyrighted works, which renders her damage opinions critically flawed and wholly unreliable.

102.   Ms. Dean's lost profit calculation with regard to lost support customers is based on this erroneous assumption. Ms. Dean fails to consider that at least a portion of Rimini Street's customers would have remained Rimini Street customers but for Rimini Street's alleged infringement. Ms. Dean's failure to consider that Rimini Street would have competed without infringing Oracle's copyrighted works is a central and fatal flaw to her lost support customer lost profit calculation.

### 9.1.2.   Ms. Dean Incorrectly Applies Oracle's Attrition Rate.

103.   As part of her lost profit calculation, Ms. Dean adjusts her "lost customers" calculation using Oracle's attrition rate for the same period. Oracle's attrition rate is not the proper measure to make such an adjustment. Ms. Dean's use of Oracle's attrition rate incorrectly relies upon the false assumption that Oracle's "282 lost customers" are as likely to remain Oracle customers as the thousands of customers who never left Oracle support.

104.   Each of the customers for whom Ms. Dean calculates lost profits left Oracle support at some point for a variety of reasons. As shown by deposition testimony, many of the customers cited cost as the central reason for cancelling support with Oracle.[225] The **282** customers Ms. Dean has included in her lost profit calculation showed a willingness to leave Oracle. The thousands of customers who stayed at Oracle have shown a willingness to pay Oracle's high maintenance fees. Ms. Dean's inclusion of customers who never left Oracle support in the population of her attrition rate calculation is a critical flaw to her analysis.

---

[225] Deposition transcript of Cort Swanson, November 28, 2011, pp. 18, 20, 21. Deposition transcript of Brian Baggett, November 10, 2011, p. 13,18. Deposition transcript of Barbara Shepard, November 1, 2011, pp. 12-14.



*Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*          *Subject to a Protective Order*
*Expert Report of Scott D. Hampton*          *Highly Confidential-Attorneys' Eyes Only*
*March 30, 2012*

105. Ms. Dean calculated Oracle's attrition rate based on a population of revenue dollars in a category called "available to renew." [226] The proper population and associated rate should only include customers who actually left Oracle. The percentage of Oracle's "available to renew" revenue dollars says nothing about the percentage of Oracle's "lost customers" who Oracle would be able to retain but for Rimini Street's alleged wrongful acts.

106. While the attrition rate she calculates is inapplicable with regard to Oracle's "lost customers," Ms. Dean's schedules 21.1, 21.2, and 21.3 clearly show that millions of dollars of support revenue that is available to renew each year cancels support with Oracle. Another fatal flaw in Ms. Dean's lost profit calculation is that she failed to show that those customers who cancelled Oracle support would not have cancelled but for Rimini Street's alleged infringement. As shown by Ms. Dean, between 2006 and 2011, Oracle lost between **3%** and **9%** of its support revenue dollars annually.[227] Ms. Dean has failed to show that the customers she included in her lost profit calculation left Oracle because of the alleged copyright infringement.

107. According to Richard Cummins, Oracle's Vice President of Support Sales for North America Strategic Accounts, when PeopleSoft was first acquired by Oracle, he tracked cancellations manually in an Excel spreadsheet to better understand why customers canceled PeopleSoft support.[228] I have included a portion of his Excel spreadsheet as *Figure 1*.

---

[226] Expert Report of Elizabeth Dean, January 17, 2012, Schedules 21.1, 21.2, and 21.3.

[227] Ibid., p. 57.

[228] Deposition transcript of Richard Cummins, July 13, 2011, p. 114.

*Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*   *Subject to a Protective Order*
*Expert Report of Scott D. Hampton*   *Highly Confidential-Attorneys' Eyes Only*
*March 30, 2012*

email sent by an Oracle attorney involved in the instant litigation.[457]  Ms. Dean does not give the date of the email, which might have been three years after the events took place.  Moreover, Ms. Dean has not provided evidence that the alleged investigations were unusual or uncommon, or that the employees who did the alleged investigations were performing tasks beyond their normal routine.  Ms. Dean has not provided sufficient evidence to establish that Oracle's response caused it to be damaged.  Neither has she based her estimate on contemporaneous records that can be tested or verified.

Respectfully submitted, March 30, 2012

_____

Scott Hampton, CPA, ABV

---

[457] Deposition of David Renshaw, May 26, 2011, p. 86.



Page 131 of 131