# EXHIBIT E

```
                                                                    41

 1                   UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2        BEFORE THE HONORABLE LARRY R. HICKS, DISTRICT JUDGE

 3

 4   ORACLE USA, INC., a Colorado      :
     corporation; ORACLE AMERICA,      :
 5   INC., a Delaware corporation;     :
     and ORACLE INTERNATIONAL          : No. 2:10-cv-0106-LRH-PAL
 6   CORPORATION, a California         :
     corporation,                      :
 7                                     :
           Plaintiffs,                 :
 8                                     :
        vs.                            :
 9                                     :
     RIMINI STREET, INC., a Nevada     :
10   corporation; and SETH RAVIN,     :
     an individual,                    :
11                                     :
           Defendants.                 :
12   _____:

13

14
                 TRANSCRIPT OF JURY TRIAL - DAY 2
15                  (Pages 41 through 263)

16

17                      September 15, 2015

18
                         Las Vegas, Nevada
19

20

21

22
     Court Reporter:        Donna Davidson, RDR, CRR, CCR 318
23                          Certified Realtime Reporter
                            400 South Virginia Street
24                          Reno, Nevada  89501
                            (775) 329-0132
25
```

1       Oracle's lawyer, "The price was no -- no --
2  no effect whatsoever?"
3       His answer, "No."
4       "Question: So if it had been the same
5  price, you still would have contracted with
6  Rimini?"
7       His answer: "That's what I would have
8  recommended."
9       "As you sit here today, does Birdville have
10 any plans to go back to Oracle support?
11      "I wouldn't recommend it.
12      "And why not?
13      "Because of the support we get from Rimini."
14      Customer churn. This may be the most
15 inconvenient fact for Oracle in this case. Five percent of
16 their customers leave every year. It's called churn.
17 Every year five percent of these customers leave for one of
18 these options.
19      Only about 12 percent end up going with Rimini.
20 You'll have to ask the question to yourselves in this case,
21 where are the others going? How can Oracle prove that
22 Rimini Street would have gone back to Oracle rather than to
23 deal with what these 88 percent of these other folks did?
24      The evidence will be this, our customers were on
25 their way out of the door. We just gave them a place to

                                                                262

1                            -oOo-

2        I certify that the foregoing is a correct

3        transcript from the record of proceedings

4        in the above-entitled matter.

5

6        *Donna Davidson* [signature]                   9/16/15

7        Donna Davidson, RDR, CRR, CCR #318         Date
         Official Reporter

```
 1                UNITED STATES DISTRICT COURT
                       DISTRICT OF NEVADA
 2       BEFORE THE HONORABLE LARRY R. HICKS, DISTRICT JUDGE

 3

 4   ORACLE USA, INC., a Colorado       :
     corporation; ORACLE AMERICA,       :
 5   INC., a Delaware corporation;      :
     and ORACLE INTERNATIONAL           :No. 2:10-cv-0106-LRH-PAL
 6   CORPORATION, a California          :
     corporation,                       :
 7                                      :
              Plaintiffs,               :
 8                                      :
         vs.                            :
 9                                      :
     RIMINI STREET, INC., a Nevada      :
10   corporation; and SETH RAVIN,       :
     an individual,                     :
11                                      :
              Defendants.               :
12   _____:

13

14
                TRANSCRIPT OF JURY TRIAL - DAY 8
15                 (Pages 1354 through 1638)

16

17                    September 23, 2015

18
                        Las Vegas, Nevada
19

20

21

22
     Court Reporter:       Donna Davidson, RDR, CRR, CCR 318
23                         Certified Realtime Reporter
                           400 South Virginia Street
24                         Reno, Nevada  89501
                           (775) 329-0132
25
```

1   then Ms. Dean, to talk about this, we wanted to raise this
2   issue with the Court to figure out, you know, what was
3   going to be permissible and to discuss in advance what is
4   going to be objected to or not objected to.
5           So our position is that it would be, frankly,
6   impossible for them to explain this piece of the damages
7   case without being able to say that TomorrowNow and
8   CedarCrestone are infringing alternatives.
9           THE COURT:  All right.
10          Mr. Webb?
11          MR. WEBB:  Your Honor, I believe the record is
12  very clear.  I said that we didn't intend to argue that
13  TomorrowNow was a noninfringing alternative.  That's a far
14  cry from having an expert saying the reason they excluded
15  them is because they're infringers.
16          This is exactly where we were going back when
17  TomorrowNow came into the case.  It has gradually gotten
18  bigger and bigger and bigger.  Now it's in all the videos
19  that we've seen.  It's going to be coming from every expert
20  that we hear from.
21          And now they're finally going to get that final
22  step which is "and in fact they are infringing," not just
23  with TomorrowNow, but also with CedarCrestone, and there's
24  no proof of either being infringing alternatives, Your
25  Honor.  There's no proof.

1615

1  Elizabeth Dean, Your Honor, although she would talk about
2  some other issues with CedarCrestone.
3           But the -- you know, since the law says that you
4  have to have a noninfringing alternative, we have to -- as
5  Ms. Dunn said, we need guidance as to how to present it for
6  those two companies.
7           And Ms. Dunn has the declaration and can read
8  you the paragraphs that were made under oath.
9           MR. WEBB:  One thing, Judge --
10          THE COURT:  Excuse me.  Let me stay on that
11 subject for a minute.
12          And, Ms. Dunn, your reference there?
13          MS. DUNN:  I'm sorry.  I couldn't hear you.
14          THE COURT:  The declaration?
15          MS. DUNN:  Yes.  So I have it in front of me,
16 and I can either read you the part or I can pass it up,
17 Your Honor.
18          And it's Exhibit 5365 for anyone who might be
19 looking for it.
20          THE COURT:  All right.
21          Mr. Webb?
22          MR. WEBB:  We have no intention whatsoever of
23 referencing TomorrowNow or CedarCrestone as noninfringing
24 alternatives.  That's not going to happen.
25          The moment they say they're infringing, the jury

1637

1   -oOo-

2   I certify that the foregoing is a correct

3   transcript from the record of proceedings

4   in the above-entitled matter.

5

6   _____   9/24/15

7   Donna Davidson, RDR, CRR, CCR #318         Date
    Official Reporter

1639

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
BEFORE THE HONORABLE LARRY R. HICKS, DISTRICT JUDGE

ORACLE USA, INC., a Colorado              :
corporation; ORACLE AMERICA,              :
INC., a Delaware corporation;             :
and ORACLE INTERNATIONAL                  : No. 2:10-cv-0106-LRH-PAL
CORPORATION, a California                 :
corporation,                              :
                                          :
        Plaintiffs,                       :
                                          :
   vs.                                    :
                                          :
RIMINI STREET, INC., a Nevada             :
corporation; and SETH RAVIN,              :
an individual,                            :
                                          :
        Defendants.                       :
_____:

TRANSCRIPT OF JURY TRIAL - DAY 9
(Pages 1639 through 1904)

September 24, 2015

Las Vegas, Nevada

Court Reporter:     Donna Davidson, RDR, CRR, CCR 318
                    Certified Realtime Reporter
                    400 South Virginia Street
                    Reno, Nevada  89501
                    (775) 329-0132

1803

1  Q.   All right.  Well, let's look on -- so then how you
2  do the calculation in slide 27.  Can you explain the
3  calculation on this slide?
4  A.   So, remember I mentioned earlier that Oracle America
5  provides support.  They do so through their access to
6  Oracle International Corporation's copyrights in this case.
7       So I start with Oracle America's lost support
8  revenue.  I apply the specific attrition for these
9  customers.  When they stopped using Rimini's support, I
10 assume they would have stopped using Oracle's support, and
11 then I further adjust that for the general attrition rate
12 that we've talked about.
13 Q.   Okay.  So let's stop with that first box.  Oracle
14 America lost support revenue, you have an asterisk there,
15 and it says Less Specific Attrition.
16      Okay.  What -- would you explain that to the
17 jury.
18 A.   So, we know something about these customers.  When
19 they stopped and cancelled their Oracle support, they did
20 not stop using their product.  We know exactly how long
21 they used the product because they were paying Rimini to
22 support the product.  So we know that they were using it.
23      But not all of these customers use the products
24 through February of 2014.  Many of them have shorter
25 periods of time.  They stopped using the Oracle product,

1    they stopped getting support from Rimini, and if they had
2    the RP needs they must have changed vendors at that point.
3    Q.   All right.  So you removed customers who
4    specifically changed vendors; is that right?
5    A.   Yes.  I mean, I suppose there's some bankruptcies
6    and other things in there, but for the most part, these
7    were circumstances where we know the customer was using the
8    product up until they finally stopped paying Rimini, and
9    then they are no longer using the product.
10   Q.   All right.  So that specific attrition, what was the
11   effect of that.  Over the damages period, how much did that
12   reduce Oracle's lost revenues that you had been estimating?
13   A.   So if I had taken all of these same 228 customers
14   and priced out their lost support revenues to Oracle for
15   the whole period until February 14th for all of them, my
16   number would have been 25 percent higher than it actually
17   is by stopping them when they stopped their Rimini support.
18   Q.   All right.  So you've reduced the revenue base by
19   about 25 percent here, and now you're going to apply a
20   general retention rate.
21          Is that going to further reduce the revenue that
22   you're estimating Oracle lost?
23   A.   That's right.
24   Q.   Okay.  And what's the general retention rate?
25   A.   So, we know historically, we've talked about this

1    number a lot, I've seen the numbers up on the screen.  It's
2    generally around 95 percent for these products.
3            So when customers decide to stop using the
4    product, they obviously stop their support, and that's what
5    that 5 percent is, the amount of time they stop using the
6    product.
7    Q.   All right.  That takes us to the blue box, Oracle
8    America Adjusted Lost Support Revenue.  You've reduced it
9    by specific attrition and by general attrition.  Explain
10   the blue box.
11   A.   So what's left is the amount of Oracle America
12   revenues that would have been generated through the damages
13   period.
14   Q.   All right.  And then I see that you moved that down
15   to the lower row.  Could you explain what you're doing on
16   the bottom half of this chart?
17   A.   So for the copyright infringement claim, I can only
18   calculate damages for the copyright holder.
19           So I have to look at the relationship between
20   Oracle America and Oracle International Corp who holds the
21   copyright, and they have a revenue sharing arrangement
22   between the two companies.
23           So it's 39 percent of Oracle America's revenue
24   is remitted to Oracle International Corp to pay for the
25   license to have the rights to offer services to its

1903

-o0o-

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____     9/25/15
Donna Davidson, RDR, CRR, CCR #318     Date
Official Reporter