SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC.; and ORACLE INTERNATIONAL CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC.; and SETH RAVIN,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S OPPOSITION TO ORACLE'S MOTION TO EXCLUDE DEPOSITION TESTIMONY OF PAUL SIMMONS AND THE TESTIMONY, IN PART, OF BROOKS HILLIARD** |

## I. INTRODUCTION

Oracle's motion to exclude the testimony of Paul Simmons and Brooks Hilliard essentially seeks reconsideration of this Court's prior rulings regarding the admissibility of evidence establishing the custom and practice in the industry during the period of the alleged infringement. Oracle mischaracterizes Rimini's positions and takes positions directly opposite to its prior arguments. The motion should be denied.

## II. ARGUMENT

**A.  Rimini's Custom and Practice Evidence Is Highly Relevant to Willfulness and Should Be Admitted.**

Mr. Simmons' sworn testimony regarding his belief that, ███████ ███████████████████████████████████████████████████████ ███████████████████████████████████ (*see* Simmons Dep. 198:22-200:2), ████ ██████████████████████████████████████████████ (*see id*. at 53:17-54:18), ████████████████████████ (*id*. at 119:19-120:25), ████████████████████████ (*id*. at 121:11-122:5), is plainly relevant to Rimini's liability and good-faith defense to punitive damages and willful infringement. *See* Dkt. 816 at 5. The same is true of Mr. Hilliard's testimony, and the exhibits upon which that testimony is based, which establish, among other things, that making copies of software applications and environments is encouraged among software consultants. *See*, *e.g.*, Hilliard Decl. ¶¶ 7-11.

This Court *already ruled on this issue* in its order denying Oracle's motion to exclude Mr. Hilliard's and others' testimony, that "testimony about industry standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful infringement," and that "testimony and analysis of the ordinary practices in the industry" "will assist the jury in determining whether defendants' actions were willful." Dkt. 724 at 8; *see also* Dkt. 723 at 5. That ruling is correct, and there is no reason to reconsider it.

The question for the jury when deciding whether to impose punitive damages liability is whether Rimini's practices are so outside the norm as compared to others in the industry that Rimini deserves to be subject to the quasi-criminal punishment. Rimini need not establish that everyone in

the industry was correct; rather the question is whether Rimini's practices were aligned with the custom and practice in the industry. Indeed, *even if* the industry misjudged whether certain practices were infringing, Rimini would still not be subject to punitive damages merely for making the same mistake as others.

Rimini has cited *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007), repeatedly on this issue and Oracle continues to ignore it. In *Safeco*, the Supreme Court "disagree[d]" with defendant's analysis of its legal obligations, but held that because defendant's interpretation, "albeit erroneous, was not objectively unreasonable" based in part on the conduct of others in the industry, the defendant could not be said to have acted "willfully" or with "reckless disregard." *Id.* at 69; *see also Ramirez v. Plough*, 6 Cal. 4th 539, 552-55 (1993); *Mason v. Mercury Cas. Co.*, 64 Cal. App. 3d 471, 476 (1976). The imposition of punitive damages requires "evil intent"—not an innocent, or even negligent, miscalculation or misunderstanding. *See Taylor v. Superior Court*, 24 Cal. 3d 890, 894-95 (1979); Nev. Rev. Stat. § 42.001(3) (malice equates to "despicable conduct"); *Wyeth v Rowatt*, 244 P.3d 765, 783 (Nev. 2010) (defendant's conduct must have exceeded "mere recklessness or gross negligence").

Oracle's entire theory for why the Simmons and Hilliard testimony should be excluded rests on its contention that Rimini was not aware of CedarCrestone's practices (Dkt. 823 at 2-3), but that theory is unsupported by both the facts and the law. CedarCrestone was one of Rimini's primary competitors during the discovery period, and Rimini thus had an obvious motive to learn about CedarCrestone's business model using informal networks, to observe how CedarCrestone marketed itself, and to read about what they disclosed in publicly available documents. And even if Rimini was not aware of specific practices by CedarCrestone, the fact that CedarCrestone was engaging in those practices would still be highly relevant in establishing the industry custom and practice.

For instance, Mr. Rowe will testify during Rimini's case that Rimini tracked CedarCrestone's practices closely and was aware of publicly available documents explaining the processes CedarCrestone used to support Oracle software.[1] These documents include, for example, a public

---

[1] *See, generally*, DTX 22 at p. 52 (CedarCrestone's response to an Oklahoma City Request for Proposals relating to support of PeopleSoft software).

- 2 -

457839 v1

contract for a remote access client revealing that CedarCrestone offered "managed hosting environment[s]" that would, among other things, "eliminate[] the additional expense associated with periodic onsite support services."[2] Moreover, Mr. Ravin testified multiple times at trial that he believed what he was doing was consistent with his understanding of industry custom and practice. *See*, *e.g.*, 9/16 Tr. 415:1-7 (thought local hosting was fine based on his "knowledge of the industry"); *id.* at 437:3-15 (belief that local hosting was acceptable rested on his "experience in the industry of 30 years" as well as "licenses that customers had presented or we'd seen online for publicly available documents"); *id.* at 464:4-7 (noting statement to Brazoria County that it was Rimini's "opinion based on experience and industry knowledge that Rimini Street's services do not violate the intent of the collective service provisions of Sections 2.1, 4.2, and 14.2" of the PeopleSoft license); 9/17 Tr. 633:18-634:3 (testifying as to his "understanding as to how the industry handled maintenance by third parties"); *id.* at 685:19-686:7 (discussing industry practice as one reason for belief that he could provide maintenance to Siebel licensees); *id.* at 730:20-22 (noting that it was common practice to make backup tapes); *id.* at 775:19-22 (noting that, based on industry experience, one could not make modifications to software while it was running).

This is more than sufficient to establish a connection between the industry practice evidence Rimini seeks to introduce and Rimini's state of mind. Rimini need not show that it specifically knew about or relied on particular industry practices or customs. The Court's ruling allowing this testimony was not predicated on Rimini's knowledge of specific practices by others in the industry. Other courts are in agreement. *See*, *e.g.*, *Rondor Music Int'l Inc. v. TVT Records LLC*, 2006 WL 5105272, at *7 (C.D. Cal. Aug. 21, 2006) (noting generally that "evidence of 'custom and practice' is relevant to the issue of willful infringement"); *Hutcherson v. Progressive Corp.*, 984 F.2d 1152,

---

[2]  *See*, *e.g.*, Contract Between the Board of Trustees of Community College District No. 508, County of Cook and State of Illinois with CedarCrestone (May 2, 2013), *available at* http://apps.ccc.edu/brpublic/2013/may/31848.pdf; see also Press Release, ASU Signs Five Year PeopleSoft Hosting Renewal Contract with CedarCrestone (Oct. 4, 2011), http://www.educause.edu/about/corporate-participation/member-press-releases/asu-signs-five-year-peoplesoft-hosting-renewal-contract-cedarcrestone (contract for "hosting infrastructure, application, operations, and a service desk").

- 3 -

457839 v1

1155 (11th Cir. 1993) (evidence of defendant's compliance with "industry custom" relevant to claim alleging willful conduct).

Oracle's cases are not to the contrary. *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986), involved the question whether a defendant convicted for income tax evasion should have been able to offer expert testimony asserting that the law was complex and uncertain in order to negate the willfulness element of the offense. But because he admitted that he had not been "confused" by the supposedly uncertain law nor "relied" on it, the Sixth Circuit ruled he could not assert the law's complexity and uncertainty as a defense. *United States v. Zayyad*, 741 F.3d 452 (4th Cir. 2014), is even less relevant, as the defendant there (an alleged prescription-drug counterfeiter) did not even assert a state of mind defense: instead, he tried to assert that some of the drugs he sold might be "genuine" based on the existence of a purported "gray market." *Id*. at 458. Finding that the defendant had never asserted he believed he was selling gray market drugs, the Fourth Circuit rejected his argument. *United States v. Amundsen*, 1992 WL 138168 (9th Cir. June 19, 1992)—aside from having no precedential value (Ninth Cir. Rule 36-3) rejected an "uncertainty in the law" defense because the law in question was in fact settled, and then, in dicta, stated that in any event, the defendant could not claim legal uncertainty as a defense to willfulness where he never knew about that uncertainty. *Id*. at *4.

In other words, Oracle's cases stand for the proposition that a defendant must put the good faith defense at issue in order to rely on the industry custom and practice. Defendants here have unquestionably relied on their good faith belief that what they were doing was consistent with industry practice directly at issue. No more specific showing is required, and the Simmons and Hilliard testimony should be admitted.

**B.    The Simmons and Hilliard Testimony Would Not Unduly Prejudice Oracle**

Oracle also argues that the Simmons deposition would unduly prejudice Oracle because it would "trigger the question in the jury" regarding whether CedarCrestone is a non-infringing alternative, and that Mr. Hilliard's testimony would prejudice Oracle "for the same reasons as the Simmons deposition," namely that "[t]he jury may be confused into believing … that CedarCrestone was a lawful alternative that may have caused some of Oracle's losses." Dkt. 823 at 3, 8.

- 4 -

457839 v1

But Rimini is not offering this testimony for the question whether CedarCrestone is an infringing or non-infringing alternative. The CedarCrestone evidence shows what another company in the market was doing during the relevant time period, which (as discussed above) shows a lack of willfulness, good faith, and precludes an award of punitive damages. Rimini will not introduce testimony on whether CedarCrestone infringed; indeed, it has no information or evidence from which to make that argument.

Rimini was specifically denied any discovery into CedarCrestone's settlement with Oracle. Oracle disclosed a document relating to that settlement *in 2013*, and Rimini immediately sought discovery, which was opposed by Oracle, and denied by Magistrate Judge Leen. Therefore, the reason that CedarCrestone settled with Oracle is totally unknown to Rimini, and Rimini has no basis from which to conclude that CedarCrestone did or did not infringe Oracle's copyrights.

It is surprising, to say the least, that Oracle would argue after its experts were permitted to tell the jury that CedarCrestone was infringing (*e.g.*, 9/24 Tr. at 1793 ("Because of the infringement, [CedarCrestone] was unacceptable"); *cf. id.* at 1871 ("some customers went to Rimini, some customers might have gone to TomorrowNow or CedarCrestone that are not acceptable alternatives")) that Rimini should be barred from introducing critical evidence to its defense of punitive damages liability because it might "trigger the question in the jury" that Oracle's experts' baseless and foundationless statements might not be accurate. Dkt. 823 at 3.

Oracle also suggests that Rimini plans to argue that if Rimini had not infringed, "someone else would have infringed instead." *Id.* at 3. Rimini has never made this argument and does not intend to do so. And the cases Oracle cites to support this mischaracterization of Rimini's argument actually *support* Rimini's case. Oracle relies on *Polaroid Corp. v. Eastman Kodak Co.*, 1990 WL 324105 (D. Mass. Oct. 12, 1990), where the court held that "[i]n order to recover lost profits the patent owner must show a reasonable probability that but for the infringement ***it would have made the sales that were made by the infringer***." *Id.* at \*13 (emphasis added). Oracle has not even attempted to prove that it "would have made the sales" at issue here, because there is no evidence to support that conclusion.

- 5 -

457839 v1

**C.    The Court Should Not Admit Even More TomorrowNow Evidence or the Fees Declaration**

Rimini's anticipated introduction of the Simmons and Hilliard testimony does not grant Oracle permission to introduce irrelevant the prejudicial evidence in response.

*First*, Oracle is wrong to assume that Rimini's "theory for admission" of Mr. Simmons' and Mr. Hilliard's testimony is that there was a "general" custom and practice of which "everyone in the industry was aware." Dkt. 823 at 4. Rimini intends to offer Mr. Simmons and Mr. Hilliard's testimony as proof that specific practices—e.g., local hosting—were done by Rimini's competitors and others in the industry, that Rimini was aware that others were engaged in those practices, and that it was therefore reasonable for Rimini to hold an objective, good faith belief that its practices were lawful.

*Second*, Oracle has offered no legitimate reason to introduce the TomorrowNow evidence—and the criminal plea in particular—to rebut Rimini's good-faith arguments. There is nothing inconsistent or unfair about prohibiting Oracle from mentioning TomorrowNow's criminal plea agreement based on conduct post-dating Mr. Ravin's involvement and permitting Rimini's experts to testify that Rimini's practices were consistent with industry custom and practice.

The fact that TomorrowNow pleaded guilty to infringement in September 2011, near the end of the discovery period in this case, for unknown reasons, based on conduct occurring after Mr. Ravin's departure, is not probative of any fact at issue in this lawsuit. At best, it suggests that Rimini may have been mistaken about the legality of certain practices (though it is far from conclusive evidence of that), but it does not suggest that Rimini's good faith belief in the legality of those practices between 2006 and 2011 was unreasonable. Similarly, the fact that the TomorrowNow plea occurred around the same time as Mr. Simmons' deposition for CedarCrestone and that the customer licenses at issue were "of the same vintage" (Dkt. 823 at 5) shows only that both companies were involved in servicing Oracle's software during the relevant time period; it is not evidence of bad faith, and it is therefore not relevant.

The cases Oracle cites do not stand for the proposition that a defendant who used to be associated with a company that later pleaded guilty to infringement for unknown reasons and

- 6 -

457839 v1

1  motivations should be somehow held accountable for that company's plea. That is particularly true
2  where there is no evidence *in the record* establishing that TomorrowNow (after Mr. Ravin left) and
3  Rimini Street used similar practices. Oracle cannot now seek to inject that evidence into the case
4  through the guilty plea or the factual predicates underlying it. This Court has already ruled that even
5  if the plea is relevant or admissible in theory, the plea should be excluded as unfairly prejudicial
6  under Rule 403. Oracle's attempt to subtly seek reconsideration of that ruling is improper and
7  should be rejected.

8  *Third* and finally, the Fees declaration is irrelevant and inadmissible. The declaration
9  establishes, at most, that Mr. Simmons withdrew his deposition testimony in 2013—it does not
10 explain why. And, as discussed, even if Mr. Simmons ultimately decided, as part of a settlement
11 with Oracle, that he had been mistaken, that would have no bearing on whether Rimini had a good
12 faith belief that its practices were lawful during the time period at issue.

13 Moreover, this declaration was created after discovery closed in this case and Rimini was
14 denied an opportunity to take discovery as to the reasons why Mr. Simmons decided to withdraw his
15 testimony. The untimely submission of this declaration is reason enough to exclude it. *See United*
16 *States v. Little*, 2007 WL 869679, *6 (E.D. Cal. Mar. 21, 2007) (evidence was "not admissible
17 discovery material as it [was] presented outside the scope of discovery and after discovery had been
18 closed"); *cf. James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 WL
19 655314, at *9 n.3 (C.D. Cal. Feb. 21, 2013) ("[t]he Court will not consider the portions of the
20 [untimely] Declaration that contradict timely-produced discovery documents" (internal citation
21 omitted)); Fed. R. Civ. P. 26(a).

22                          **III.   CONCLUSION**

23 This Court should permit Rimini to introduce Mr. Simmons' and Mr. Hilliard's testimony,
24 and should not permit Oracle to introduce the TomorrowNow plea or the Fees declaration in
25 response.

- 7 -

457839 v1

| | | |
|---|---|---|
| 1 | DATED:   September 28, 2015 | SHOOK, HARDY & BACON |
| 2 | | |
| 3 | | By: ___/s/ Robert H. Reckers_____ |
| 4 | | Robert H. Reckers |
| 5 | | *Attorneys for Defendants*<br>*Rimini Street, Inc. and Seth Ravin* |

- 8 -

457839 v1

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: */s/ Robert H. Reckers*
  Robert H. Reckers

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

- 9 -

457839 v1