SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge:       Hon. Larry R. Hicks |

Gibson, Dunn & Crutcher LLP

Defendants Rimini Street, Inc. and Seth Ravin (unless otherwise noted, referred to collectively as "Rimini") will and hereby do move for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure on all of Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle America's (unless otherwise noted referred to collectively as "Oracle") claims, including:

(1)  Oracle International Corporation's claim for copyright infringement, as there is no legal or evidentiary basis on which the jury could find liability or damages on this claim;

(2)  Oracle America and Oracle International Corporation's claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims;

(3)  Oracle America and Oracle International Corporation's claims under the California Computer Data Access and Fraud Act, California Penal Code § 502, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims;

(4)  Oracle America and Oracle International Corporation's claims under Nevada Revised Statute § 205.4765, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims;

(5)  Oracle America's claim for breach of contract, as there is no legal or evidentiary basis on which the jury could find liability or damages on this claim;

(6)  Oracle America's claim for inducing breach of contract, as there is no legal or evidentiary basis on which the jury could find liability or damages on this claim;

(7)  Oracle America and Oracle International Corporation's claims for intentional interference with prospective economic advantage, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims;

(8)  Oracle America and Oracle International Corporation's claims for unfair competition, California Business & Professions Code § 17200, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims;

(9)  Oracle America's claim for trespass to chattels, as there is no legal or evidentiary basis on which the jury could find liability or damages on this claim;

(10) Oracle America and Oracle International Corporation's claims for unjust enrichment and restitution, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims;

(11) Oracle America and Oracle International Corporation's claims for unfair practices, California Business & Professions Code § 17000, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims; and

(12) Oracle America and Oracle International Corporation's claims for an accounting, as there is no legal or evidentiary basis on which the jury could find liability or damages on these claims.

This motion is based upon this notice, the attached memorandum of points and authorities, all pleadings, files and records in this action, all testimony and evidence admitted at trial, and on such further argument and evidence as the Court may consider.  Rimini reserves the right to supplement its motion up to and until the case is submitted to the jury.  *See* Fed. R. Civ. P. 50(a) (motion "may be made at any time before the case is submitted to the jury").

DATED:         September 28, 2015         GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Blaine H. Evanson*
        Blaine H. Evanson

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  LEGAL STANDARD ..........................................................................................2

III.  ARGUMENT........................................................................................................3

    A.  Oracle's Causation Theory Is Legally Flawed and Unsupported by the Evidence, and Requires Judgment on Lost Profits Damages and Oracle's Tort Claims .............................................................................................3

    B.  Judgment Should Be Entered on Oracle's Non-Copyright Claims............................7

        1.  Inducing Breach of Contract ....................................................................7

        2.  Intentional Interference with Prospective Economic Advantage.................10

        3.  Computer Hacking, Trespass, and Breach of Contract Claims....................13

        4.  The Equitable Claims Are Unavailable and Unsupported ...........................18

    C.  Punitive Damages Are Impermissible and Would Be Unconstitutional if Imposed ............................................................................................19

    D.  Oracle's Copyright Infringement Theories Are Flawed ............................22

        1.  Rimini Did Not Exceed the Scope of the Software Licenses........................22

        2.  Oracle Did Not Prove that Rimini Willfully Infringed. ...............................23

        3.  The Court Should Order Judgment on Oracle's Alternative Copyright Theories.................................................................................23

        4.  Oracle Is Misusing Its Copyrights ..........................................................24

    E.  Oracle's Copyright Infringement Damages Theories Are Flawed ............................26

        1.  Oracle International May Not Recover Oracle America's Lost Profits........26

        2.  Oracle Failed to Establish Causation. .....................................................26

        3.  A Non-Infringing Alternative Is a Complete Defense to Oracle's Lost Profits Case .........................................................................27

        4.  Oracle Failed to Prove Infringer's Profits Attributable to Rimini's Infringement.......................................................................27

        5.  Oracle's Database Damages Theory Is Based on Speculation....................29

    F.  Oracle Is Not Entitled to an Injunction or Prejudgment Interest. .............................29

    G.  The Evidentiary Rulings on Rimini's State of Mind Warrant a New Trial. .............29

IV.  CONCLUSION....................................................................................................30

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ..................................................................... 24

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
  166 F.3d 772 (5th Cir. 1999) ....................................................................... 25

*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,
  96 Cal. App. 4th 1017 (2002) ...................................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ....................................................................................... 3

*Andrews v. Shalala*,
  53 F.3d 1035 (9th Cir. 1995) ......................................................................... 7

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011) ..................................................................... 25

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ............................................................................. 14, 19

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
  47 Cal. App. 4th 464 (1996) ............................................................. 11, 14, 17

*Barrett v. Virginian Ry. Co.*,
  250 U.S. 473 (1919) ....................................................................................... 3

*Batt v. City & Cnty. of S.F.*,
  155 Cal. App. 4th 65 (2007) ........................................................................ 19

*Branch v. Ogilvy & Mather, Inc.*,
  772 F. Supp. 1359 (S.D.N.Y. 1991) ............................................................ 28

*Carranza v. Universal Music Grp., Inc.*,
  536 F. App'x 734 (9th Cir. 2013) ................................................................ 19

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................................. 18

*Chamberlain Grp., Inc. v. Skylink Tech., Inc.*,
  381 F.3d 1178 (Fed. Cir. 2004) ................................................................... 24

*Cheek v. United States*,
  498 U.S. 192 (1991) ..................................................................................... 15

*China Cent. Television v. Create New Technology (HK) Ltd.*,
  2015 WL 3649187 (C.D. Cal. June 11, 2015) ............................................. 24

*Chrisman v. City of Los Angeles*,
  155 Cal. App. 4th 29 (2007) ........................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012) ................................................................................................. 21

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ...................................................................................................... 17

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011) ......................................................................... 16

*Cohen v. United States*,
   100 Fed. Cl. 461 (2011) ................................................................................................. 4

*Collins v. eMachs., Inc.*,
   202 Cal. App. 4th 249 (2011) ...................................................................................... 18

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015) ................................................................................................. 24

*Crockett v. Sahara Realty Corp.*,
   95 Nev. 197 (1979) ................................................................................................. 11, 12

*Crunchyroll, Inc. v. Pledge*,
   2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) ............................................................... 4

*Dairy Queen v. Wood*,
   369 U.S. 469 (1962) ............................................................................................... 18, 19

*De Voto v. Pac. Fidelity Life Ins. Co.*,
   618 F.2d 1340 (9th Cir. 1980) ....................................................................................... 8

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) .................................................................................. 18, 19

*Design Art v. NFL Props., Inc.*,
   2000 U.S. Dist. LEXIS 20172 (S.D. Cal. Nov. 7, 2000) .............................................. 10

*Disenos Artisticos E. Industriales, S.A. v. Costco Wholesale Corp.*,
   97 F.3d 377 (9th Cir. 1996) ......................................................................................... 26

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ..................................................................................... 24

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
   25 F. Supp. 2d 395 (S.D.N.Y. 1998) ............................................................................. 4

*Enki Corp. v. Freedman*,
   2014 U.S. Dist. LEXIS 9169 (N.D. Cal. Jan. 23, 2014) ......................................... 14, 15

*Evenflow Plumbing Co. v. Pac. Bell Directory*,
   2005 WL 1353822 (N.D. Cal. June 7, 2005) ............................................................... 27

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*,
   2013 WL 3872950 (E.D. Cal. July 25, 2013) .............................................................. 15

Gibson, Dunn & Crutcher LLP

1

## TABLE OF AUTHORITIES

2

Page(s)

3  *FCC v. Fox Television Stations, Inc.,*
       132 S. Ct. 2307 (2012) ........................................................................................ 21
4

5  *Fonovisa, Inc. v. Cherry Auction, Inc.,*
       76 F.3d 259 (9th Cir. 1996) ................................................................................. 23

6  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
       772 F.2d 505 (9th Cir. 1985) ................................................................................. 7
7

8  *Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. County of Clark,*
       122 Nev. 466 (2006) ............................................................................................. 8

9  *Gibson v. Credit Suisse AG,*
       2013 WL 5375597 (D. Idaho Sept. 24, 2013) ...................................................... 9
10

11  *Hitek Software LLC v. Timios, Inc.,*
       2012 WL 2366368 (C.D. Cal. June 18, 2012) .................................................... 24

12  *Idema v. Dreamworks, Inc.,*
       162 F. Supp. 2d 1129 (C.D. Cal. 2001) .......................................................... 7, 11
13

14  *IGT v. Alliance Gaming Corp.,*
       2008 WL 7071468 (D. Nev. Oct. 21, 2008) ....................................................... 27

15  *In re Amerco Derivative Litig.,*
       252 P.3d 681 (Nev. 2011) .................................................................................. 11
16

17  *In re Sony PS3 "Other OS" Litig.,*
       551 F. App'x 916 (9th Cir. 2014) ....................................................................... 18

18  *Instant Tech., LLC v. DeFazio,*
       40 F. Supp. 3d 989 (N.D. Ill. 2014) ................................................................... 15
19

20  *Intel Corp. v. Hamidi,*
       30 Cal. 4th 1342 (2003) ..................................................................................... 17

21  *J.J. Indus., LLC v. Bennett,*
       119 Nev. 269 (2003) ................................................................................. 8, 9, 10
22

23  *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.,*
       115 Cal. App. 4th 168 (2004) ........................................................ 11, 13, 14, 17, 19

24  *Kabehie v. Zoland,*
       102 Cal. App. 4th 513 (2002) ............................................................................ 19
25

26  *Kwan v. Mercedes-Benz of N. Am., Inc.,*
       23 Cal. App. 4th 174 (1994) .............................................................................. 20

27  *Lanard Toys Ltd v. Novelty Inc.,*
       511 F. Supp. 2d 1020 (C.D. Cal. 2007) .............................................................. 26
28

   *Landgraf v. USI Film Products,*
       511 U.S. 244 (1994) ........................................................................................... 21

**TABLE OF AUTHORITIES**

Page(s)

*Lusardi Constr. Co. v. Aubry,*
  1 Cal. 4th 976 (1992) (same) ..................................................................... 20

*LVRC Holdings LLC v. Brekka,*
  581 F.3d 1127 (9th Cir. 2009) ............................................................... 15, 16

*Mahone v. Lehman,*
  347 F.3d 1170 (9th Cir. 2003) ..................................................................... 30

*Mason v. Mercury Cas. Co.,*
  64 Cal. App. 3d 471 (1976) .......................................................................... 21

*MDY Indus., LLC v. Blizzard Entm't, Inc.,*
  629 F.3d 928 (9th Cir. 2010) ....................................................................... 10

*Melchior v. New Line Prods., Inc.,*
  106 Cal. App. 4th 779 (2003) ................................................................. 18, 19

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005) ...................................................................................... 24

*Mirkin v. Wasserman,*
  5 Cal. 4th 1082 (1993) ................................................................................. 12

*Moore v. Apple Inc.,*
  2015 WL 4638293 (N.D. Cal. Aug. 4, 2015) ............................................ 9, 10

*Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.,*
  467 F. Supp. 841 (N.D. Cal. 1979) ................................................................ 3

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
  523 F.3d 1051 (9th Cir. 2008) ....................................................................... 9

*Nat'l Right to Life Political Action Comm. v. Friends of Bryan,*
  741 F. Supp. 807 (D. Nev. 1990) ................................................................... 9

*Nungary v. Rowe,*
  2011 WL 3862093 (N.D. Cal. Aug. 30, 2011) .............................................. 6

*Oakley, Inc. v. Nike, Inc.,*
  988 F. Supp. 2d 1130 (C.D. Cal. 2013) ......................................................... 9

*Oracle Am. Inc. v. Google, Inc.,*
  750 F.3d 1339 (Fed. Cir. 2014) ................................................................... 25

*Oracle Corp. v. SAP AG,*
  765 F.3d 1081 (9th Cir. 2014) .......................................... 2, 3, 26, 27, 28, 29

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
  50 Cal. 3d 1118 (1990) ................................................................................. 11

*Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,*
  575 F.2d 1152 (6th Cir. 1978) ..................................................................... 27

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
96 F.3d 1151 (9th Cir. 1996) ...................................................................... 19

*Philip Morris USA v. Williams,*
549 U.S. 346 (2007).......................................................................................... 5

*Polar Bear Productions, Inc. v. Timex Corp.,*
384 F.3d 700 (9th Cir. 2004) ...................................................... 2, 3, 27, 28

*Poly-America, L.P. v. GSE Lining Tech., Inc.,*
383 F.3d 1303 (Fed. Cir. 2004) ................................................................. 26

*Practice Mgmt. Info Corp. v. Am. Medical Ass'n,*
121 F.3d 516 (9th Cir. 1997) ...................................................................... 24

*Ramirez v. Plough,*
6 Cal. 4th 539 (1993) .................................................................................. 21

*Ritchie v. United States,*
451 F.3d 1019 (9th Cir. 2006) ..................................................................... 3

*Rondberg v. McCoy,*
2009 WL 5184053 (S.D. Cal. Dec. 21, 2009) ........................................ 19

*Safeco Ins. Co. of Am. v. Burr,*
551 U.S. 47 (2007).................................................................................. 20, 21

*Sega Enters. Ltd. v. Accolade, Inc.,*
977 F.2d 1510 (9th Cir. 1992) .................................................................... 25

*Societe Civile Succession Guino v. Renoir,*
305 F. App'x 334 (9th Cir. 2008) .............................................................. 29

*Sprint Solutions, Inc. v. Pac. Cellupage Inc.,*
2014 WL 3715122 (C.D. Cal. July 21, 2014)........................................... 16

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003).............................................................................. 21, 29

*Stewart v. Wachowski,*
574 F. Supp. 2d 1074 (C.D. Cal. 2005) ................................................... 27

*Taylor v. Superior Court,*
24 Cal. 3d 890 (1979) ........................................................................... 19, 21

*Tennison v. Circus Circus Enters. Inc.,*
244 F.3d 684 (9th Cir. 2001) ...................................................................... 30

*Tomaselli v. Transamerica Ins. Co.,*
25 Cal. App. 4th 1269 (1994) .................................................................... 20

*Troyk v. Farmers Group, Inc.,*
171 Cal. App. 4th 1305 (2009) .................................................................. 17

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*United States v. Drew,*
259 F.R.D. 449 (C.D. Cal. 2009) ....................................................................... 14, 17

*United States v. Hodges,*
770 F.2d 1475 (9th Cir. 1985) ................................................................................ 30

*United States v. Liu,*
731 F.3d 982 (9th Cir. 2013) .................................................................................. 15

*United States v. Nosal,*
676 F.3d 854 (9th Cir. 2012) (en banc) ........................................ 13, 14, 16, 17

*Warth v. Seldin,*
422 U.S. 490 (1975) ................................................................................................ 26

*Westside Ctr. Associates v. Safeway Stores 23, Inc.,*
42 Cal. App. 4th 507 (1996) ............................................................................... 4, 11

*Wise v. Wells Fargo Bank, N.A.,*
850 F. Supp. 2d 1047 (C.D. Cal. 2012) ................................................................ 19

*Witt v. Chesapeake Exploration, L.L.C.,*
276 F.R.D. 458 (E.D. Tex. 2011) ............................................................................ 9

*Wyeth v. Rowatt,*
244 P.3d 765 (Nev. 2010) ....................................................................................... 21

*Younan v. Rolls-Royce Corp.,*
2013 WL 1899919 (S.D. Cal. May 7, 2013) ......................................................... 30

*ZZ Top v. Chrysler Corp.,*
70 F. Supp. 2d 1167 (W.D. Wash. 1999) .............................................................. 28

**Statutes**

17 U.S.C. § 301(a) ...................................................................................... 13, 18, 19

17 U.S.C. § 504(b) ............................................................................................ 27, 28

18 U.S.C. § 1030 ...................................................................................................... 13

18 U.S.C. § 1030(a)(2)(C) ...................................................................................... 14

18 U.S.C. § 1030(a)(5)(A) ...................................................................................... 14

18 U.S.C. § 1030(a)(5)(B) ...................................................................................... 14

Cal. Bus. & Prof. Code § 17200 ............................................................................ 18

Cal. Penal Code § 502 ............................................................................................ 13

Cal. Penal Code § 502(c)(2) ................................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3   Cal. Penal Code § 502(c)(3)...........................................................................16, 17

4   Cal. Penal Code § 502(c)(6)................................................................................16

5   Nev. Rev. Stat. § 205.4765 .................................................................................13

6   Nev. Rev. Stat. § 205.4765(1) .............................................................................16

7   Nev. Rev. Stat. § 205.4765(3) .............................................................................16

8   Nev. Rev. Stat. § 205.511 ...................................................................................16

9   Nev. Rev. Stat. § 42.005 .....................................................................................19

10  **Other Authorities**

11  3 Nimmer on Copyright § 14.02[A] ......................................................................4

12  *Oracle USA, Inc. v. SAP AG*,
        No. 07-1658 PJH, Dkt. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010).......................28

13
    *Sarhank Group v. Oracle Corp.*, Brief for Respondent-Appellant,
14      404 F.3d 657 (2d Cir. 2005) (No. 92-9383).................................................26

15  **Rules**

16  Fed. R. Civ. P. 50(a)(1) ........................................................................................3

17  **Constitutional Provisions**

18  U.S. Const., art. V .............................................................................................14

19  U.S. Const., art. XIV ..........................................................................................14

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# I.    INTRODUCTION

This case is about (i) whether Rimini's process for servicing Oracle's software customers exceeded the scope of Oracle's licenses and therefore amounted to copyright infringement, and (ii) the actual or statutory damages to which Oracle is entitled as a result of that infringement.  But Oracle has dramatically overreached and pleaded a host of additional tort, contract, equitable, and even criminal claims, all of which have gaping holes in the proof required for Oracle to send these claims to a jury.

This Court should grant judgment on these claims under Federal Rule of Civil Procedure 50(a), because Oracle's claims are premised on legal error and an absence of proof.  And there are real risks of confusion by the jury, an inconsistent verdict, and duplicative damages due to the number of defective claims and their overlapping and convoluted nature.  Oracle's twelve overlapping claims based on an alleged breach of numerous different licenses and the supposed interference with the economic opportunity of hundreds of Oracle customers have taken an already complicated case about technical copyright infringement and made it incomprehensible.

Most glaring is the fundamental problem with Oracle's novel and legally baseless causation theory.  Oracle alleges three categories of wrongful conduct—infringement, false statements, and unauthorized computer access—and claims that this conduct caused every Rimini Street customer to leave Oracle.  But there is no evidence tying Rimini's actual conduct to any harm or resulting damages.  Judgment for Rimini on Oracle's causation theory would preclude any lost profits or infringer's profits award on Oracle's copyright claims, and require judgment for Rimini on Oracle's tort and computer access claims.

Oracle's causation theory rests on the entirely speculative testimony of Edward Yourdon, who concluded that every single Oracle customer "would have" renewed its contract with Oracle but for Rimini's conduct.  Mr. Yourdon's testimony ignores Oracle's legal burden, the lack of evidence to support his conclusion, and the actual evidence on the record showing that some customers left Oracle *before* they ever communicated with Rimini; that others testified under oath that the reason they left Oracle had nothing to do with Rimini, let alone Rimini's purported unlawful acts; and that regardless of Rimini's conduct or even its existence, many of the customers were not returning to

1    Oracle.  Indeed, it is undisputed that out of the 17 customers (cherry-picked by Oracle's counsel) that

2    Mr. Yourdon reviewed, almost none returned to Oracle.  Oracle's damages expert, Elizabeth Dean,

3    relied completely on Mr. Yourdon's conclusions, and admitted that she did not even "consider"

4    evidence relating to the actual reasons individual customers left Oracle, including evidence of

5    customers who left Oracle to "look at third-party vendors" because they "don't intend to update" their

6    software "in the near future."  9/24 Tr. 1900:6-24.  This testimony is insufficient to meet Oracle's

7    burden of proving (i) that but for Rimini's wrongful conduct, Oracle would have made the sale as to

8    each particular customer, let alone (ii) that there is a *sufficiently specific and non-speculative causal*

9    *nexus* between the actual infringing conduct, actual false statements, and unauthorized computer

10   access and any resulting damages.  *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir.

11   2014); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004).

12          Oracle has not even tried to prove causation under the traditional analysis set forth in

13   controlling Ninth Circuit law, and has not even argued that there is an actual causal nexus between

14   the customers Oracle claims it lost (Oracle's basis for damages) and Rimini's conduct.  It does not

15   point to specific acts of infringement, false statements, or unauthorized access of Oracle's computers,

16   and then show how those allegedly unlawful acts caused Oracle harm and the resulting damages.

17   Instead, Oracle claims generally that Rimini's conduct as it was launching its business was unlawful,

18   and that everything that resulted—Rimini's entire business—*would not have existed in the market* but

19   for its infringement, false statements, and unauthorized computer access.  Indeed, according to

20   Oracle, *no viable business* would have existed in the market, and in this hypothetical world Oracle

21   would have been the *only* company able to offer support on its software.

22          Oracle's claim that Rimini would not have existed but for the allegedly unlawful conduct is

23   not supported by the evidence.  But even if Oracle were correct, there is no authority for the theory of

24   causation upon which Oracle's entire case is premised.  Oracle is wrong as a matter of law, and

25   because all of its non-copyright claims and its lost and infringer's profits copyright damages models

26   depend on this causation theory, those claims and damages theories should not go to the jury.

27                              **II.      LEGAL STANDARD**

28          "It is now a settled rule … that whenever, in the trial of a civil case, it is clear that the state of

the evidence is such as not to warrant a verdict for a party …, it is the right and duty of the judge to direct the jury to find according to the views of the court….   It saves time and expense.   It gives scientific certainty to the law in its application to the facts and promotes the ends of justice." *Barrett v. Virginian Ry. Co.*, 250 U.S. 473, 476 (1919).

Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).   Where there "can be but one reasonable conclusion as to the verdict," the court should direct a verdict for the moving party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Ritchie v. United States*, 451 F.3d 1019, 1022-23 (9th Cir. 2006).   Judgment as a matter of law is also appropriate where, as here, a damages award would necessarily be based on speculation, and not evidence.   *See Oracle Corp. v. SAP*, 765 F.3d at 1094 (infringer's profits); *Polar Bear*, 384 F.3d at 708-09 (lost profits); *see Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.*, 467 F. Supp. 841, 856-57 (N.D. Cal. 1979) (granting judgment as a matter of law where "only damage evidence offered" by plaintiff "rest[ed] on a number of assumptions, none of which [was] supported by facts in the record," such that the jury's damages figure was "picked out of the air").

## III.   ARGUMENT

### A.   Oracle's Causation Theory Is Legally Flawed and Unsupported by the Evidence, and Requires Judgment on Lost Profits Damages and Oracle's Tort Claims

The mere existence of a wrongful act and the occurrence of an injury are insufficient to impose liability or damages.   There remains to be proved the vitally important link of causation, and the plaintiff has the burden of proving this link.   Thus, here, it is not enough to show that (i) Rimini infringed Oracle's copyrights, and (ii) Rimini operates a successful business that competes with Oracle, or even (iii) Oracle is losing customers to Rimini.   There must be a sufficient causal nexus between the specific unlawful act and the resulting damages.   That nexus must be based on actual evidence, not speculation.   *Polar Bear*, 384 F.3d at 710 ("mere speculation does not suffice to link the losses to the infringement").   And that evidence must establish the requisite causal connection for *each* lost customer and *each* lost sale.   *Oracle Corp. v. SAP AG*, 765 F.3d at 1094 ("Oracle has failed to establish this requisite causal connection" as to customers its expert was "unsure about" why they "convert[ed]" to Oracle's competitor); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *3 (N.D.

Cal. Mar. 31, 2014) ("It is entirely speculative" that clients of infringer "would [have] automatically" become clients of copyright holder absent infringement). This rule applies in both the copyright and tort context. *See*, *e.g.*, *Westside Ctr. Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 528, 530 (1996) (rejecting "interference with the market" theory of liability and concluding that plaintiff's two experts' testimony that plaintiff would have made sale was based on "conclusory assertions lack[ing] any factual basis in the record").

Courts recognize that, for this reason, proving each individual lost sale may be difficult. *E.g.*, *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 25 F. Supp. 2d 395, 401 (S.D.N.Y. 1998) ("[T]he burden rests squarely with plaintiff to demonstrate that it would have made the sales … but for the infringing activity.  The Court recognizes that such proof may be difficult.") (quotations omitted); *see also* 3 Nimmer on Copyright § 14.02[A] ("In the absence of convincing evidence as to the volume of sales that plaintiff would have obtained but for the infringement, the measure of lost profits may be rejected as too speculative.").  Indeed, Oracle's expert, Ms. Dean, acknowledged "the difficulty (or inability) [in] determining" each lost sale, "***as is required to prove lost profits***."  Dean Rpt. ¶ 44 (emphasis added); *Cohen v. United States*, 100 Fed. Cl. 461, 479 n.13 (2011) ("defendant correctly argues that plaintiff failed to present any evidence that any of the other [customers] turned away from, or declined to purchase, plaintiff's work because of the availability of [defendant's] materials"); *see* Dkt. 773 at 7-12 (citing additional authority).

As a result of this difficulty, Oracle until recently did not treat this as a lost profits case, and has never presented expert testimony evaluating lost profits for each customer under the proper legal standard.  Rather, Oracle treated this as a fair market value of use case because, as Ms. Dean explained, "the 'Value of Use' measurement provides ***a more complete remedy*** for Oracle in this case." *Id.* (emphasis added).  Ms. Dean's fair market value of use analysis had intractable problems, and Oracle largely abandoned her value of use calculation as a result.  Oracle then attempted to cobble together a lost profits case, but this theory is fundamentally flawed as a legal, factual, and evidentiary matter, and it should not be submitted to the jury.

The causation theory that Oracle has developed to support its lost profits theory (as well as its intentional torts and computer access claims) is wrong as a matter of law.  Rimini has shown how

Oracle's authority for this theory is inapposite (Dkts. 739, 766, 773), but Oracle has not responded to those arguments, instead continuing to quote out of context the same few sentences from cases dealing with unrelated issues.  Oracle's attempt to prove its claims by applying pieces of evidence from 17 customers to 211 others would violate tort law and Rimini's due process rights to present individual defenses as to each claim.  *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007); *Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 34 (2014).

Oracle's causation theory also fails because it directly contradicts the evidence.  Mr. Yourdon drew broad conclusions regarding what clients would and would not have done.  He did not purport to conduct a mathematical or statistical analysis.  9/24 Tr. 1712:16-20.  Instead, he simply looked at 17 customer depositions cherry-picked by Oracle's counsel and applied his interpretation of those depositions across all 228 Rimini clients.  *Id.* 1709:18-1711:10.

Mr. Yourdon made assumptions unsupported by the record and contradicted by the evidence, including that, without Rimini, every customer would have stayed with Oracle because customers made their decision based on Rimini's lower price and the lack of available alternatives.  9/24 Tr. 1702:6-1703:22, 1707:23-1708:2, 1714:3-25.  But the record shows even now, at the beginning of Rimini's case, that the hundreds of Rimini customers for which Oracle seeks damages left Oracle "for a variety of reasons," including "dissatisfaction" with Oracle's support, not "lik[ing] doing business with Oracle," or not "lik[ing] the way that they've been treated" at Oracle.  9/23 Tr. 1518:1-11.  As Ms. Ransom agreed:  "[E]ach customer that leaves Oracle leaves for a different reason."  9/22 Tr. 1339:18-21; *see also id.* 1317:15-17, 1302:5-22 (describing different reasons customers leave); 1335:17-1336:2 (same).  Indeed, an internal Oracle analysis indicated that only nine percent of Oracle's lost customers left to switch to a support competitor.  *Id.* 1338:23-1339:10.

Mr. Yourdon also testified that none of the customers that left Oracle would have gone to one of the several smaller competitors in the market or self-supported because (he determined) these were not viable non-infringing alternatives.  9/24 Tr. 1790:8-1795:22.  But the evidence is that Oracle customers *in fact* went to third-party "competitors" in the industry (9/23 Tr. 1506:18-21), such as TomorrowNow (9/16 Tr. 413:3-6, 415:18-22), CedarCrestone (9/23 Tr. 1456:16-20), Versytec (*id.* 1483:9-15), and Spinnaker (*id.* 1456:1-4 ("a major competitor")), as well as to self-support (*id.*

1507:6-7). For example, Wendy's considered other third-party support providers and self-support in addition to Rimini and Oracle (*id.* 1532:5-1535:14), Pitney Bowes engaged in self-support before joining Rimini (9/24 Tr. 1715:11-23), and Bausch & Lomb left Oracle for reasons having nothing to do with Rimini (*id.* 1887:2-1888:12). Mr. Yourdon testified that these other competitors were not as good as Oracle and therefore could not be considered proper alternatives (9/24 Tr. 1689:4-25, 1693:5-10), but that is not evidence for the fact that none of Oracle's customers would use them— that a Timex watch is no Rolex does not mean that everyone will buy the Rolex. Indeed, one of the main reasons customers cancelled with Oracle was because they could not afford its enormous support fees. *See* DTX 164; 9/17 Tr. 706:15-21.

Furthermore, not only is Mr. Yourdon's statement that TomorrowNow and CedarCrestone were *infringing* totally improper and unduly prejudicial (Dkt. 816), it is also not evidence for that fact (*Nungary v. Rowe*, 2011 WL 3862093, at *4 (N.D. Cal. Aug. 30, 2011)). There is no evidence on the record that CedarCrestone ever infringed, no court has ever ruled that CedarCrestone infringed, and Rimini was denied discovery by Magistrate Judge Leen regarding whether CedarCrestone infringed. Dkt. 816. It was impermissible for Oracle's experts to testify that CedarCrestone infringed (an unsupported legal theory without foundation), but, in any case, the fact of infringement is not in evidence, because the experts' opinions are not evidence of that fact.

Likewise, it is not true that Rimini would not have existed but for the infringement. Rimini would have done things differently, but that does not mean that it would not have been in the market. 9/17 Tr. 578:14-580:14. Oracle has paraded a few emails in front of the jury showing that Rimini engineers preferred methods that have since been found to infringe (9/17 Tr. 529:24-530:10, 531:9-23, 533:3-17, 533:23-534:1), but it has submitted no evidence whatsoever for the proposition that Rimini could not have operated in a non-infringing manner or that Rimini would not have existed, and Mr. Benge testified that Rimini could have supported its clients without doing any of the acts that Oracle alleges infringed its copyrights.

Nor does Mr. Yourdon's testimony demonstrate that customers joined Rimini because of any *actual* wrongful conduct—an infringement of one of Oracle's copyrights, an actual false statement, or an automatic download that violated Oracle's terms of use. Oracle has pointed to a handful of

Gibson, Dunn & Crutcher LLP

infringing acts, a few statements it claims were false, customer responses to improper and prejudicial hypothetical questions,[1] and Rimini's breach of their website's terms of service, and then asks for damages based on every customer Oracle lost to Rimini. But the "causal nexus" required to establish the damages Oracle seeks must exist between actual conduct and actual damages. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 n.8 (9th Cir. 1985) (holding that copyright law does not stated that a "copyright owner is relieved from or aided in proving actual damages by some presumption"). Oracle must show that a specific customer left Oracle because of an infringing act, a false statement, or unauthorized access. Oracle's experts did not establish this necessary element of their damages theory, and in fact disavowed any such analysis. 9/24 Tr. 1861:2-22.

Indeed, Oracle's multiple theories of causation are fatally inconsistent. On the one hand, Oracle claims that Rimini's infringement was the "but for" cause of its lost profits. But because copyright infringement cannot serve as predicate wrongful conduct for a tortious interference claim (*e.g.*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1192-93 (C.D. Cal. 2001)), Oracle claims on the other hand that in fact it was Rimini's fraud or unauthorized computer access that was the "but for" cause of customers leaving Oracle. Oracle has not proved either "but for" cause, and this irreconcilable inconsistency further demonstrates the flaws in Oracle's case.

In sum, Oracle's faulty causation theory is the foundation of Oracle's entire case, and if this Court rejects the theory, it should grant judgment as a matter of law on Oracle's lost profits damages, intentional tort claims, and computer access claims.

**B.      Judgment Should Be Entered on Oracle's Non-Copyright Claims**

Oracle has failed to prove liability or damages on its non-copyright claims as a matter of law.

**1.      Inducing Breach of Contract**

***First***, Oracle was required to prove that Rimini specifically "intended to induce the other

---

[1] Those questions, in which a customer was asked if it would have contracted with Rimini if "Rimini['s] business model involved improper use of intellectual property" (9/23 Tr. 1528:10-1529:2), are improper hypotheticals, based on facts not in existence at the time of the deposition or the conduct at issue, and do not constitute evidence or establish whether a customer would have stayed with Oracle between 2007 and 2011. *E.g.*, *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) ("the assumptions in the hypothetical must be supported by the record"). Indeed, one of the depositions that Oracle played is not even a company for which Oracle seeks lost profits. 9/23 Tr. 1389; 9/25 Tr. 1932:17-21.

party to breach the contract with" Oracle.  *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 276 (2003); *see De Voto v. Pac. Fidelity Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980).[2]  But there was no testimony that Rimini had such intent, and the evidence does not support any such inference.

Rimini "told customers [that it] had a zero tolerance policy for inappropriate conduct related to intellectual propert[y]." 9/16 Tr. 454:17-21.  And Rimini included indemnification provisions in its clients' agreements in the event they were sued for copyright infringement, which refutes any inference that Rimini intended to induce those customers to breach the agreements, thereby triggering liability *for Rimini*. 9/16 Tr. 464:23-465:3.  Rimini also believed its conduct was authorized under the licenses. *E.g.*, *id.* 380:13-20; 9/17 Tr. 584:13-585:23, 598:1-6; 9/23 Tr. 1379:15-1380:16.

Moreover, Rimini could not have intended for its clients to breach their license agreements because Rimini did not even have the agreements.  9/16 Tr. 385:16-23.  Those contracts had confidentiality provisions that prevented the customer from disclosing their terms with Rimini.  9/21 Tr. 1026:4-21; *see J.J. Indus.*, 119 Nev. at 276 (finding no intent to interfere with contractual relations when defendant never saw the contract and relied on the third party's representations).  As Oracle's CEO explained:  "It's the customer's responsibility regarding their actions."  9/21 Tr. 971:24-972:3.  Those clients had their own legal departments in charge of monitoring their compliance with their contracts with Oracle.  9/16 Tr. 381:21-25, 388:8-17; 9/23 Tr. 1515:1-9.

The undisputed testimony established that Rimini relied on its clients to comply with their contracts with Oracle.  *E.g.*, 9/16 Tr. 381:21-382:13, 383:3-6, 383:14-17, 386:8-23; 9/23 Tr. 1410:8-22, 1510:8-21.  And Rimini's clients made the final decision about the nature and scope of Rimini's work.  They decided whether Rimini "would have a local copy or whether they would provide … remote access."  9/17 Tr. 572:3-7, 651:5-11.  If a client "said that they didn't believe their contract had the right" for certain actions, then Rimini would "work with [that client] the way [its] contract says it should be worked with."  9/16 Tr. 432:24-433:7, 434:22-435:6.  Because Oracle customers told Rimini that the license agreements permitted Rimini's conduct, Rimini cannot be held liable for

---

[2] Nevada law applies to Oracle's common law claims, as this Court and Oracle have recognized. Order at 3, Dkt. 717 (punitive damages, to the extent established, "to be awarded in accordance with Nevada law"); Dkt. 767 at 90 (Oracle Jury Instruction Br.) (same); *see generally Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. County of Clark*, 122 Nev. 466 (2006).

1   inducing breach of contract.  *See, e.g., J.J. Indus.*, 119 Nev. at 276; *Oakley, Inc. v. Nike, Inc.*, 988 F.

2   Supp. 2d 1130, 1136 (C.D. Cal. 2013) ("a party accused of intentional interference is entitled to have

3   relied on factual representations from a person in a position to know those facts").

4       ***Second***, Oracle failed to prove Rimini engaged in wrongful conduct specifically designed to

5   cause Oracle's customers to breach.  *See, e.g., Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523

6   F.3d 1051, 1055 n.2 (9th Cir. 2008); *id.* at 1070 (Noonan, J., dissenting) (impropriety is a "crucial

7   element"); *Nat'l Right to Life Political Action Comm. v. Friends of Bryan*, 741 F. Supp. 807, 817 (D.

8   Nev. 1990).  As set forth below, Oracle failed to prove Rimini engaged in the wrongful predicate acts

9   for its induced breach claim, namely computer hacking, trespass to chattels, or fraud.  It further failed

10  to prove such conduct as to each individual customer.  *See Witt v. Chesapeake Exploration, L.L.C.*,

11  276 F.R.D. 458, 465 (E.D. Tex. 2011) ("the evidence presented by Plaintiffs does not demonstrate

12  that [defendant] made one, unilateral decision to breach the [contracts] of every [third party]").

13      ***Third***, there was *no evidence* that *any* Oracle customers *actually breached* any of their

14  contracts with Oracle—a necessary element of the claim.  *J.J. Indus.*, 119 Nev. at 274.  When Rimini

15  asked Oracle's CEO whether she had informed any of its customers that "you're breaching your

16  contract," the Court sustained an objection.  9/21 Tr. 975:3-9.  And when asked whether the "364

17  Oracle customers that left to go to Rimini … breached," Mr. Allison, Oracle's Senior Vice President

18  of Global Practices, answered:  "I can't say that they breached."  *Id.* 1029:1-6.  When pressed further,

19  he refused to agree that *even one* Oracle customer had breached, and instead stated "[w]e were

20  actually focusing on Rimini's action, not the customers."  *Id.* 1029:7-1030:7.  Oracle failed to prove

21  which, if any, customers breached their agreements.  *See, e.g., Moore v. Apple Inc.*, 2015 WL

22  4638293, at *12 (N.D. Cal. Aug. 4, 2015) ("Tortious interference with contract requires, among other

23  things, proof of actual breach or actual interference" on an individualized basis).

24      ***Fourth***, Oracle has not demonstrated how Rimini ***caused*** *each customer* to breach or tied the

25  loss of a single customer directly to the conduct of Rimini.  *See, e.g., Moore, Inc.*, 2015 WL 4638293,

26  at *11 ("the Court would need to examine … whether Defendant's alleged wrongful conduct had any

27  causal relationship" to "an individual's contract"); *Gibson v. Credit Suisse AG*, 2013 WL 5375597, at

28  *6 (D. Idaho Sept. 24, 2013) (tortious interference with contract "require[s] a showing of causation as

to the underlying fact of injury" on an individual basis); *see* pp. 3-7, *supra*.

Instead, the evidence demonstrated that Oracle loses several hundred customers every year. Some customers leave Oracle to "use their own resources," some "will decide to hire a third party such as Rimini Street or another consulting group to service that product," and some "will just decide to change to a different software product." 9/17 Tr. 615:11-24; 9/23 Tr. 1526:7-11. Some simply could not afford Oracle's high fees. 9/17 Tr. 705:22-706:21. And some were transitioning to companies other than Oracle and wanted to "save money" in the meantime "to help pay for some of the conversion." 9/18 Tr. 764:18-765:6. These customers did not leave Oracle because of Rimini. When Oracle's CEO was asked what "concrete evidence" she had that Oracle's lost customers "were not going to leave anyhow," she had no response, and the Court sustained an objection to the question. 9/21 Tr. 984:16-19. Such unsupported accusations have no evidentiary value.

**Fifth**, Oracle failed to prove harm, another essential element of the claim. *J.J. Indus.*, 119 Nev. at 274 ("plaintiff must establish … resulting damage"); *Moore, Inc.*, 2015 WL 4638293, at *12 ("the Court would then need to determine whether the individual … suffered any injury caused by Defendant"). There is no evidence in the record that Oracle's customers' supposed breach of their contracts with Oracle caused any damage to Oracle. Many had already decided to migrate off of Oracle support or stop using Oracle software before they made the decision to go to Rimini Street, and they had other options for support, including self-support and other third-party support providers.

**Sixth**, Oracle's claim is preempted: It is based on alleged misrepresentations related to copyright and damages that are duplicative of the copyright claims and which are equivalent to Oracle's rights of copyright. *E.g.*, *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010); *Design Art v. NFL Props., Inc.*, 2000 U.S. Dist. LEXIS 20172, at *7 (S.D. Cal. Nov. 7, 2000).

### 2.     Intentional Interference with Prospective Economic Advantage

"The tort[] of … interference with prospective economic advantage [has] been criticized as protecting the secure enjoyment of contractual and economic relations at the expense of our interest in a freely competitive economy" and as such, courts have "been cautious in defining the interference torts, to avoid promoting speculative claims." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.

3d 1118, 1136-37 (1990).  These concerns are heightened in this case, where Oracle's unabashed aim is to exclude its purported last remaining competitor in the market for support of its software.

**First**, Oracle has again failed to demonstrate the prospective economic relationships it claims were disrupted—necessary elements of its claim.  *See In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011); *see* pp. 3-7, *supra*; *e.g.*, 186:1-11.  Oracle's general "interference with the market" theory is insufficient.  *Westside Ctr.*, 42 Cal. App. 4th at 527 (rejecting "an expansive view of the tort which protects [plaintiff's] economic relationship with the entire market of all possible but as yet unidentified [third parties]").  And Oracle International Corporation has *no* such relationships.  9/24 Tr. 1846:18-23.

**Second**, Oracle failed to present evidence that Rimini engaged in the required wrongful conduct.  *See Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199 (1979) ("the gravamen of such a cause of action is conditioned upon the wanton, malicious and unjustifiable acts of others").  Copyright infringement is not a valid predicate wrongful act.  *See*, *e.g.*, *Idema*, 162 F. Supp. 2d at 1193.  Nor is breach of contract.  *See*, *e.g.*, *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183 (2004); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 479 (1996).  As set forth below, Oracle failed to prove trespass or computer hacking conduct that could support this claim, and, in any event, those claims related to a handful of customers over a three-month period (9/22 Tr. 1194:7-15), which could not possibly support an interference claim for *all* of the customers Oracle lost.

Oracle's scattered theories of fraud (not pleaded as a cause of action) do not give rise to an actionable claim.  Oracle claimed that Rimini falsely told customers that it kept their materials in "separate silos" (9/16 Tr. 318:23-319:3), that it used a false reference from LCG Growth to obtain customers (*id.* 357:1-12), and that it did not inform clients that it reused fixes and updates for different customers (9/23 Tr. 1522:4-9), had general testing and development environments (*id.* 1523:13-20), or cloned customers' materials for other customers (9/16 Tr. 372:4-11).  But these statements were not clearly false or intended to be false.  *See*, *e.g.*, 9/17 Tr. 584:13-585:23, 598:1-6.  For example, clients knew that their materials would be hosted locally because they sent the media to Rimini (9/17 Tr. 563:4-17)—they were therefore not tricked into violating the terms of the license as

interpreted by this Court many years later.  And Oracle failed to prove which, if any, customers (1) heard which statements, (2) relied on the statements, and (3) were damaged by that reliance.  *E.g.*, 9/23 Tr. 1382:23-1383:2 ("unusual for a customer" to ask whether software was shared to build support environments).  For example, customers could not have reasonably relied on Rimini when their own legal departments reviewed the contracts and determined what was authorized by the licenses.  *E.g.*, 9/23 Tr. 1515:1-9.  It was Oracle's burden to prove actual reliance and damages for *each* third party, and it failed to do so.  *See* pp. 3-7, *supra*; *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1096 (1993) (plaintiff must present *individualized* proof that "misrepresentations have actually been communicated," of actual reliance, and damages).

*Third*, in the absence of wrongful conduct, Rimini is entitled to judgment as a matter of law under the privilege of "free competition," which is "the most significant privilege or justification for interference with a prospective business advantage."  *Crockett*, 95 Nev. at 198 (citation omitted).  As Oracle's CEO recognized, Oracle customers are allowed to use third-party support providers for Oracle software.  *E.g.*, 9/21 Tr. 961:2-25, 993:20-24.  Oracle also acknowledged that Rimini charged 50% less than Oracle.  *E.g.*, *id.* 934:19-935:10.  And additional evidence demonstrated that Oracle pocketed an incredible 94% of its customers' maintenance fees as pure profit (9/21 Tr. 963:6-10), and that some of Oracle's customers were unhappy with Oracle's high prices and unwillingness to negotiate maintenance fees or simply could not afford Oracle's prices.  *E.g.*, 9/22 Tr. 1338:23-1339:10.  Under these circumstances, to the extent customers left Oracle and joined Rimini, it was the result of free competition, not independent wrongdoing.  *See, e.g.*, 9/17 Tr. 545:4-7 ("Q. [N]ow, part of your business model is separating Oracle from its licensees and denying Oracle ongoing revenue, correct? A. Fancy way of saying we compete, yes."); *id.* 708:14-17 ("Q. So you would go to the customer and say what did Oracle charge, all right, we'll charge you half of that.… A. Yes.").

*Fourth*, Oracle did not present evidence that Rimini employed wrongful means with the specific *intent* to *improperly* interfere with prospective economic relations.  Rimini's intent, reiterated throughout trial, was to *lawfully* compete.  *See* pp. 7-9, *supra*.

*Fifth*, again, Oracle failed to prove that any conduct by Rimini actually *caused* Oracle to lose any *specific* customer that would have otherwise stayed at Oracle and continued paying for

maintenance and support.  *See* pp. 3-7, *supra*.

**Sixth**, Oracle failed to prove any harm or damages.  In light of all the failures of proof above, including existence and disruption of prospective relationships and causation, it would be pure speculation to allow the jury to attempt to award damages for this claim.

**Seventh**, this claim is also preempted because Oracle seeks to enforce rights that are equivalent to its exclusive rights of copyright, and to recover damages that are duplicative of its copyright infringement claims.  17 U.S.C. § 301(a); p. 10, *supra*.

### 3.   Computer Hacking, Trespass, and Breach of Contract Claims

Oracle contends that Rimini's access of its computer systems violated Oracle's website terms of use.  That is a breach of contract claim, for which Oracle "will not seek damages."  Dkt. 767 at 84.  Oracle's attempt to transform this contractual claim into criminal hacking is a dramatic overreach that courts have rejected, citing "the dangers implicit in such a radical departure from well-established limits to commercial recovery."  *JRS Prods.*, 115 Cal. App. 4th at 182 (citing cases); *see United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (en banc) (rejecting "construction of [CFAA that] would expand its scope far beyond computer hacking").[3]

### a.   Computer Hacking

Oracle seeks to hold Rimini liable under the federal Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030), the California Computer Data Access and Fraud Act ("CDAFA") (Cal. Penal Code § 502), and Nevada Computer Crimes law ("NCCL") (Nev. Rev. Stat. § 205.4765), based on Rimini's automated downloading, which Oracle claims violated its website terms of use.  *See* Dkt. 746 at 12 ("Ravin and Rimini have no defense against these claims.  Oracle's Terms of Use were clear"); Dkt. 59 at 10 ("website terms of use can determine what access is unauthorized or in excess of authorization"); 9/18 Tr. 863:19-865:12.  These claims, which relate only to a handful of customers for a three-month period, fail as a matter of law.

**First**, these are simply breach-of-contract claims dressed up as computer hacking.  The underlying conduct is Oracle's claim that Rimini breached the website terms of use, which cannot be

---

[3] Additionally, Oracle International Corporation failed to prove it even had computer systems.

expanded into duplicative statutory or tortious liability. *See JRS Prods.*, 115 Cal. App. 4th at 182; *Arntz*, 47 Cal. App. 4th at 479 ("A contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business"); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("a party to a contract … cannot be bootstrapped into tort liability by the pejorative plea of conspiracy").

**Second**, violations of these three statutes cannot be established based on website terms of use. According to the *en banc* Ninth Circuit: "Significant notice problems arise if we allow criminal liability to turn on the vagaries of private polices that are lengthy, opaque, subject to change and seldom read." *Nosal*, 676 F.3d at 860; *id.* (rejecting the "interpretation of the CFAA [that] allows private parties to manipulate their computer-use and personnel policies so as to turn these relationships into ones policed by the criminal law"); *see United States v. Drew*, 259 F.R.D. 449, 464 (C.D. Cal. 2009) ("basing a CFAA misdemeanor violation … upon the conscious violation of a website's terms of service runs afoul of the void-for-vagueness doctrine"). The narrow construction of the statute adopted by the Ninth Circuit in *Nosal* is required by the Due Process Clause of the Constitution, which applies equally to the state law claims. U.S. Const., arts. V, XIV; *see Enki Corp. v. Freedman*, 2014 U.S. Dist. LEXIS 9169, at *9 (N.D. Cal. Jan. 23, 2014) (rejecting claim that "a violation of the established terms of use is sufficient to create liability under CDAFA"). Oracle's theory of computer hacking liability based on violation of website terms of use highlights the Ninth Circuit's precise concerns: After encouraging use of automated downloads (9/17 Tr. 226:17-23), Oracle unilaterally changed its terms of use (9/18 Tr. 768:21-769:3), and now seeks to hold Rimini liable under criminal laws for that internal policy change. Oracle's reliance on its website terms of use does not establish Rimini acted "without authorization" or "exceed[ed] authorized access" under the CFAA, "without permission" under the CDAFA, or "without authorization" under the NCLL.

**Third**, Oracle failed to prove the elements of the CFAA violations for which it claims liability. *See* 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(A), (a)(5)(B).

The evidence at trial demonstrated that Rimini *had authorization* from licensed customers to access Oracle's database. 16 Tr. 430:9-18 ("Every download, we took precautions with the log-in id

that was authorized and making sure it was turned off after and keeping a log of all the files downloaded"); 9/17 Tr. 555:25-556:10 (explaining that downloads were files "client [was] entitled to"); *id.* 562:21-25 (same); *id.* 567:15-21.   And Oracle acknowledged that it was proper for "customers [to] have consultants access the [Oracle] website on their behalf."   9/18 Tr. 866:9-12 (Allison); *see* 9/22 Tr. 1107:15-19 (same); *id.* 1201:10-13 (Renshaw) (same); *see Enki*, 2014 U.S. Dist. LEXIS 9169, at *8-9 (no CFAA violation when defendant had authorization to access website).

Oracle also failed to prove that Rimini engaged in the "intentional" behavior required by all three subdivisions of the criminal statute.   *See Cheek v. United States*, 498 U.S. 192, 201 (1991); *United States v. Liu*, 731 F.3d 982, 989 (9th Cir. 2013) (must prove "specific intent to violate the law"); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (CFAA must be interpreted as criminal statute).   To the contrary, the evidence demonstrated that Rimini "believ[ed] that [it] stood in the customer's shoes" and "ha[d] the right to carry out … tasks on behalf of the customer."   9/17 Tr. 585:8-23.   And, based on that belief, Rimini was careful to download only materials that the client was authorized to download.   *See* 9/16 Tr. 279:2-8, 281:14-20, 284:5-8, 483:6-15; 9/17 Tr. 598:1-6, 728:20-2.   In fact, Rimini sent a letter to Oracle explaining that its "***intent [was] not to create undue burden on your servers***, but to provide Oracle customers with a simpler mechanism to obtain all the online content they are entitled to for their licensed products."   9/18 Tr. 768:3-12 (emphasis added).   Indeed, harming Oracle's servers would have provided "no benefit" because Rimini was "trying to get information from" them.   9/18 Tr. 771:19-772:7.   Rimini continued to use automated downloading tools for a period of time after Oracle unilaterally changed its terms of use, but only to obtain materials the clients lawfully were entitled to under their contracts.   9/17 Tr. 726:20-24.   That is not a specific intent to violate the CFAA; instead, it demonstrates a good-faith belief that the conduct was not unlawful.   *See Cheek*, 498 U.S. at 201.

Oracle suffered no harm to its computers and has not proven damages for this claim.   And it cannot recover lost profits as a matter of law.   *See Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013) ("costs not related to computer impairment or computer damages are not compensable under the CFAA") (collecting cases); *see also Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1019 (N.D. Ill. 2014) (same); *Sprint Solutions, Inc. v. Pac.*

*Cellupage Inc.*, 2014 WL 3715122, at *6 (C.D. Cal. July 21, 2014) (same).  And, even if such damages were available, Oracle did not present evidence of one customer who joined Rimini because of the few months Rimini used automated downloading.

***Fourth***, Oracle failed to prove the elements of or damages for the CDAFA subsections upon which it claims liability.  *See* Cal. Penal Code § 502(c)(2); *id.* (c)(3).  For example, as set forth above, Rimini *had permission*, from its clients, to access Oracle's website.  *See Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 35 (2007) (no liability under CDAFA when "[o]ne cannot reasonably describe appellant's improper computer inquiries … as hacking").

And Oracle failed to prove its impermissible aiding and abetting theory under Penal Code section 502(c)(6), because it failed to establish a predicate violation of the CDAFA.  Cal. Penal Code § 502(c)(6) (requiring a "violation of this section").  In addition, Mr. Ravin believed he acted with his clients' permission (*e.g.*, 9/16 Tr. 281:23-282:6), and Oracle therefore did not prove that Mr. Ravin "[k]nowingly and without permission provide[d] or assist[ed]" in any CDAFA violations.  Cal. Penal Code § 502(c)(6); *see also Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011) (section 502(c)(6) "as a penal statute, is to be strictly construed" to "impose liability against individuals or entities who … have actually participated in unauthorized 'hacking'").

***Fifth***, Oracle failed to prove the elements of the NCLL.  *See* Nev. Rev. Stat. § 205.4765(1); *id.* § 205.4765(3).  As set forth above, Oracle failed to prove (i) conduct taken "without authorization," or (ii) "willful" conduct.  Oracle also failed to prove that it is a "victim of a crime." Nev. Rev. Stat. § 205.511.  At most, it established a breach of contract.  Oracle also failed to prove damages "for any response costs, loss or injury suffered as a result" of either claim.  *Id.*

***Sixth***, under the rule of lenity, any ambiguities in these statutes must be construed as narrowly as possible and in Rimini's favor.  *Nosal*, 676 F.3d at 862-63; *LVRC*, 581 F.3d at 1134.  These are "anti-hacking" statutes (*Nosal*, 676 F.3d at 857), and Oracle has never claimed that Rimini hacked Oracle's computers.  Mr. Screven explained that hackers "break into systems" (9/23 Tr. 1552:8-9, 1548:13-1549:19), "penetrate through firewalls" (*id.* 1557:15-1558:6), and send "poison email messages that set up relay stations that let them get into your networks" (*id.*).  Rimini did none of these things; instead it logged in using customer's IDs on behalf of customers to obtain materials to

1   which the individual customers were entitled (9/17 Tr. 555:25-556:10).

2       **Seventh**, Oracle's proposed application of these statutes to Rimini violates Rimini's due

3   process rights because, under Oracle's proposed interpretation, the statutes are void for vagueness,

4   both facially and as applied.  *See Nosal*, 676 F.3d at 860; *Drew*, 259 F.R.D. at 462-67.  The jury

5   should not be left to speculate whether, for example, Rimini "[k]nowingly and without permission

6   use[d] or cause[d] to be used computer services."  Cal. Penal Code § 502(c)(3).  Such a law provides

7   no standard upon which to base conduct, provides no fair notice of what is prohibited, and allows for

8   arbitrary enforcement.  *See generally City of Chicago v. Morales*, 527 U.S. 41, 55 (1999).  Rimini

9   also lacked any fair notice that such conduct could constitute criminal computer hacking.  These

10  constitutional problems further demonstrate why criminal computer hacking statutes cannot be

11  applied to this fundamentally contractual claim.

12              **b.      Trespass to Chattels**

13      Oracle's trespass claim is also unavailable as a breach of contract claim improperly converted

14  into a tort claim that Oracle seeks to leverage into intentional interference and punitive damages.  *See*

15  *JRS Prods.*, 115 Cal. App. 4th at 182; *Arntz*, 47 Cal. App. 4th at 479.

16      Oracle failed to prove Rimini had the intent to interfere with its computer systems (9/18 Tr.

17  768:3-12) or that Oracle suffered sufficient harm from the automatic downloading.  "[S]ome actual

18  injury must have occurred in order for a trespass to chattels to be actionable."  *Intel Corp. v. Hamidi*,

19  30 Cal. 4th 1342, 1351 (2003) (citing Restatement (Second) of Torts).  Nominal harm is insufficient:

20  It was Oracle's burden to "demonstrate some ***measurable*** loss from the use of its computer system."

21  *Id.* at 1357 (emphasis added).  The injury must have "deprived [Oracle] of the use of the chattel for a

22  substantial time"—"so substantial that it is possible to estimate the loss caused thereby."  *Id*.  Oracle

23  did not establish any such damages at trial.  *E.g.*, 9/22 Tr. 1194:20-23.

24              **c.      Breach of Contract**

25      Oracle's breach of contract claim also fails.  Oracle failed to introduce all contracts into

26  evidence, did not prove that it did all things required by the contract, and failed to establish any harm

27  from Oracle's violation of the website terms of use—all essential elements.  *E.g.*, *Troyk v. Farmers*

28  *Group, Inc.*, 171 Cal. App. 4th 1305, 1353 (2009).  Indeed, Oracle does not even seek damages for

Gibson, Dunn &
Crutcher LLP

17

1    this claim.  Dkt. 767 at 84.

2              **4.      The Equitable Claims Are Unavailable and Unsupported**

3         Oracle also asserts three equitable claims to be "decided by the Court" after the jury verdict.

4    Dkt. 747 at 16.  Rimini will oppose Oracle's motions for relief at that point, but judgment as a matter

5    of law is also warranted for all three claims:  Oracle has an adequate remedy at law, Oracle failed to

6    present evidence to support any of these claims, and all three claims are preempted.

7         *Unfair Competition*:  Oracle cannot maintain a claim under the "unfair" practices prong of

8    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  "[T]he word

9    'unfair' … means conduct that threatens an incipient violation of an antitrust law, or violates the

10   policy or spirit of one of those laws because its effects are comparable to or the same as a violation of

11   the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Comms., Inc. v. L.A.*

12   *Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Oracle did not prove (and never even alleged) that

13   Rimini (the purported last competitor that Oracle seeks to eliminate) threatened or harmed

14   competition in a manner similar to that prohibited under the antitrust law.  Rimini's presence in the

15   market is unquestionably pro-competitive.  The "fraudulent" and "unlawful" prongs of Oracle's UCL

16   claim are based on duplicative conduct underlying Oracle's other claims, and fail for the reasons set

17   forth above.  The UCL claim is further unavailable because Oracle seeks only equitable relief for it

18   (Dkt. 747 at 16), but Oracle has an adequate remedy at law, as demonstrated by its multiple claims

19   based on the same underlying conduct.  *Dairy Queen v. Wood*, 369 U.S. 469, 478 (1962).  Oracle's

20   UCL claim is also preempted by the Copyright Act.  17 U.S.C. § 301(a); *Del Madera Props. v.*

21   *Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987).

22        *Restitution*:  Unjust enrichment "is synonymous with restitution."  *Melchior v. New Line*

23   *Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).  "The phrase 'Unjust Enrichment' does not describe

24   a theory of recovery, but an effect: the result of a failure to make restitution under circumstances

25   where it is equitable to do so."  *Id.*  Restitution is not available "when the plaintiff's remedies at law

26   are adequate."  *Collins v. eMachs., Inc.*, 202 Cal. App. 4th 249, 260 (2011).  Here, Oracle has

27   adequate remedies at law under the Copyright Act.  *See, e.g.*, *In re Sony PS3 "Other OS" Litig.*, 551

28   F. App'x 916, 923 (9th Cir. 2014); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151,

1   1167 (9th Cir. 1996).  Oracle's restitution claim is also preempted by the Copyright Act.  17 U.S.C.

2   § 301(a); *see*, *e.g.*, *Del Madera*, 820 F.2d at 977; *Melchior*, 106 Cal. App. 4th at 793.

3     ***Accounting***:  "Accounting is not an independent cause of action but merely a type of remedy

4   and an equitable remedy at that." *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D.

5   Cal. 2012) (quotation omitted).  "The necessary prerequisite to the right to maintain a suit for an

6   equitable accounting, like all other equitable remedies, is … the absence of an adequate remedy at

7   law." *Dairy Queen*, 369 U.S. at 478.  Oracle has adequate remedies at law under its Copyright Act

8   claims.  *See Batt v. City & Cnty. of S.F.*, 155 Cal. App. 4th 65, 82 (2007).  Additionally, there is no

9   legally significant relationship between the parties or reason an accounting is required.  *E.g.*,

10   *Rondberg v. McCoy*, 2009 WL 5184053, at *4 (S.D. Cal. Dec. 21, 2009).  And the accounting claim

11   similarly is preempted.  17 U.S.C. § 301(a); *Kabehie v. Zoland*, 102 Cal. App. 4th 513, 530 (2002).

12   **C.**  **Punitive Damages Are Impermissible and Would Be Unconstitutional if Imposed**

13     Punitive damages can be imposed only "where it is proven by clear and convincing evidence

14   that the defendant has been guilty of oppression, fraud[,] or malice."  Nev. Rev. Stat. § 42.005(1).

15   "Malice" and "oppression" both require "despicable conduct," or, phrased differently, evidence of an

16   "evil motive." *Taylor v. Superior Court*, 24 Cal. 3d 890, 894-95 (1979).[4]

17     ***First***, Oracle cannot recover punitive damages for conduct related to accessing its website in

18   violation of the terms of use, which includes Oracle's trespass and computer hacking claims.

19   "[P]unitive or exemplary damages … are available only in actions for breach of an obligation *not*

20   arising from contract." *Applied Equip. Corp.*, 7 Cal. 4th at 516 (citation omitted, emphasis in

21   original); *see JRS Prods.*, 115 Cal. App. 4th at 182 ("motive, regardless of how malevolent, remains

22   irrelevant to a breach of contract claim and does not convert a contract action into a tort claim

23   exposing the breaching party to liability for punitive damages").

24     ***Second***, punitive damages are unavailable for copyright infringement.  *E.g.*, *Carranza v.

25   *Universal Music Grp., Inc.*, 536 F. App'x 734, 735 (9th Cir. 2013).

26     ***Third***, the evidence demonstrated that defendants acted with a reasonable good-faith belief

27

28   _____

[4] Evidence regarding punitive damages and willful infringement also should have been excluded from phase one of the trial.  Dkt. 616.

that their conduct was not illegal, and accordingly, that any statements they made to customers about Rimini's business model were not fraudulent, malicious, or oppressive.   Mr. Ravin testified repeatedly and consistently that he thought Rimini was operating lawfully.   9/17 Tr. 688:12-19 (would never have started Rimini Street if he "thought it could not operate lawfully"; *id*. 633:12-17). He never "personally intentionally tr[ied] to violate any of Oracle's rights."   *Id*. 584:13-15.   Rimini took great pains to ensure that customers received only the software to which they were entitled. *E.g.*, *id*. 598:1-6; 636:19-637:23; *id*. 701:23-702:11; 9/16 Tr. 377:22-24.   In fact, Mr. Ravin told clients that "the entire contents of [the installation] media are the intellectual and copyrighted property of Oracle corporation" because he "wanted to make sure that Oracle's intellectual property copyright was carried [sic]."   9/16 Tr. 337:12-17; 9/17 Tr. 584:13-23.

Importantly, Oracle recognizes (as it must) that third-party support is an option for customers so long as the support provider complies with the licenses.   *E.g.*, 9/21 Tr. 961:2-25, 993:20-24.   That fact alone precludes a finding of punitive damages against Rimini as a matter of law because it is absolutely clear that Rimini's general business model is lawful and permitted, and the only disputes concern technical questions regarding the interpretation of license agreements that Rimini was normally not permitted to see, about which there are many grounds for reasonable disagreement, and for which Rimini relied on its customers to ensure compliance.   9/16 Tr. 381:21-382:13, 383:3-4, 383:14-17, 385:20-23, 386:15-18; 9/21 Tr. 971:24-972:3.

Under these circumstances, punitive damages are unavailable as a matter of law even if it is ultimately true that Rimini's conduct infringed Oracle's copyright, and even if Rimini's statements to its customers turned out to be incorrect.   *See, e.g.*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ("disagree[ing]" with defendant's analysis of its legal obligations, but holding that because defendant's interpretation, "albeit erroneous, was not objectively unreasonable," defendant could not be said to have acted "willfully" or with "reckless disregard"); *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 185 (1994) ("courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions") (quotations omitted); *Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 996-97 (1992) (same); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 (1994) (although conduct was "negligent,"

1  "legally erroneous," and "callous," it could not support a punitive damage award as a matter of law).

2  **Fourth**, even granting all legitimate inferences to Oracle, the evidence demonstrated at most

3  that Rimini acted negligently.  *E.g.*, 9/16 Tr. 385:13-15 ("we certainly wanted to make sure that we

4  were following the license agreement and doing the right thing"); *id.* 414:10-13 ("Q. And you didn't

5  consider this a big red flag that maybe you shouldn't be going down this road…. A. Not at all.").

6  That is not enough to sustain a punitive damages award.  *See Wyeth v. Rowatt*, 244 P.3d 765, 783

7  (Nev. 2010) ("to justify punitive damages, the defendant's conduct must have exceeded mere

8  recklessness or gross negligence") (quotation omitted); *Taylor*, 24 Cal. 3d at 895; *Am. Airlines, Inc. v.*

9  *Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1051 (2002).

10  **Fifth**, Rimini acted consistently with industry practice and custom.  9/16 Tr. 415:6-7 (based

11  on "knowledge of the industry," Ravin "felt it was perfectly fine"); *id.* 437:9-11 (Ravin's

12  understanding of Rimini's conduct was "based on [his] experience in the industry of 30 years"); 9/21

13  Tr. 989:20-25 ("analysts will recommend that customers look at a third party support").  As Mr.

14  Ravin explained, Rimini was "just one of many, many companies that needed to have access to the

15  software," because there were many "third parties" that needed "to be able to work with software at

16  the customer's request."   9/17 Tr. 591:19-592:9, 633:18-634:3 (industry practice allowed

17  maintenance by third parties).   That is yet another reason that a punitive damages award is

18  unavailable as a matter of law.  *See, e.g., Ramirez v. Plough*, 6 Cal. 4th 539, 552-55 (1993); *Mason v.*

19  *Mercury Cas. Co.*, 64 Cal. App. 3d 471, 475 (1976); *see also Safeco*, 551 U.S. at 70 n.20.

20  **Sixth**, subjecting Rimini to punitive damages for conduct that was in line with industry

21  custom and about which reasonable minds at the time could (and did) disagree regarding its legality,

22  and where Rimini did not even have access to the license agreements it is accused of violating, would

23  render any punitive damages award unconstitutional for lack of fair notice.  *FCC v. Fox Television*

24  *Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct.

25  2156, 2168 (2012); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *Landgraf*

26  *v. USI Film Products*, 511 U.S. 244, 281 (1994) (punitive damages "share key characteristics of

27  criminal sanctions").

28  **Seventh**, the TomorrowNow evidence introduced at trial does not establish the kind of "evil

Gibson, Dunn &
Crutcher LLP

21

motive" that merits punitive damages.  The evidence in the case about TomorrowNow suggests at most that Mr. Ravin was one of the founders, the president, and a 50-percent shareholder of TomorrowNow (9/16 Tr. 351:2-7, 409:2-3), that he was generally aware of the decisions SAP was making with respect to TomorrowNow (*id*. 413:20-414:9, 416:9-18), that he was aware of "unacceptable issues" at TomorrowNow while it was being run by SAP (*id*. 421:2-8), and that TomorrowNow ultimately was shut down by SAP (9/21 Tr. 947:1-4).  But there is no basis in the record for concluding that TomorrowNow was in fact infringing, much less that Mr. Ravin or Rimini knew or even should have known of any infringement by TomorrowNow or that Rimini Street was infringing.  To the contrary, Mr. Ravin had "no role in actually executing the way they do business at TomorrowNow" "even in the time [he] was there" (9/17 Tr. 629:10-16); he left TomorrowNow years before the lawsuit was filed (*id*. 603:8-24); and he did not stop local hosting at Rimini after SAP's decision to shut down TomorrowNow because based on his "knowledge of the industry," he "felt [local hosting] was perfectly fine" (9/16 Tr. 415:1-7).

**D.    Oracle's Copyright Infringement Theories Are Flawed**

Oracle has failed to prove essential element of each claim for copyright infringement.

**1.    Rimini Did Not Exceed the Scope of the Software Licenses.**

Oracle has offered insufficient evidence to show that Rimini's copying exceeded the scope of the PeopleSoft, JD Edwards, Siebel, or Database licenses.[5]  As Rimini argued in its opposition to Oracle's first and second motions for summary judgment (arguments incorporated by reference here), those licenses all contain provisions permitting licensees to make a "reasonable number of copies" for archival use, backup use, or to support the users.  *See*, *e.g.*, Dkt. 266 at 8-20 (sections 1.2b, 1.2c, 1.3, and 14.2 of the City of Flint PeopleSoft license, and sections 1.1, 1.2, and 10.2 of the Pittsburgh Public Schools PeopleSoft license permit Rimini to make off-site non-production copies); *id*. at 21-24 (Art. I, Art. II, § 7, and Art. IV, § 4 of the J.D. Edwards license permit Rimini to make a "reasonable number" of copies for archival use or to "support the users" of the software); *id*. at 24-26 (sections

---

[5] Although Rimini agreed not to pursue an express license defense with respect to the PeopleSoft software for trial, that stipulation was based on the Court's summary judgment rulings, which Rimini respectfully maintains were erroneous.

1   2.1(iv), (vii), and (viii) of the Siebel license permit Rimini to make a "reasonable number" of copies

2   for "archive or emergency back-up purposes or disaster recovery and relating testing"); Dkt. 441 at 9-

3   15 (Developer license and Oracle's License and Service Agreements permit Rimini to make a

4   "sufficient number of copies" of the Database, and to use the software for the benefit of the

5   licensees).  Mr. Allison also confirmed that the licenses permit remote support and that a customer's

6   "facilities" could include off-site space leased by the licensee.  9/21 Tr. 1033:2-20; 1064:5-6.  Oracle

7   did not prove that Rimini exceeded those permissions, which warrants judgment as a matter of law.

8           **2.      Oracle Did Not Prove that Rimini Willfully Infringed.**

9           Mr. Ravin testified repeatedly that he "had every belie[f] everything we were doing from the

10  business itself to the way we were structuring operations to the way that we were using software …

11  was completely within the license agreements."  9/17 Tr. 633:12-17; *see* 9/15 Tr. 250:5-8 ("my belief

12  was that we had every right to have the software on our system"); 9/16 Tr. 279:7-8 ("My

13  understanding is the customers were fully licensed for the software" being downloaded from Oracle's

14  website); *id*. 376:21-377:3 (explaining that he thought it "was okay to clone" because the clients "had

15  the same license" and they "did not use anything particular to that client for another client that wasn't

16  licensed for the same software"); *id*. 378:21-23 ("Q. You believed your actions for JDE clients were

17  authorized by JDE customer licenses; is that right? A. Yes."); *id*. 415:23 ("we believed it was

18  perfectly fine"); 9/17 Tr. 688:12-19 (would never have started Rimini Street if he "thought it could

19  not operate lawfully").  Rimini took great pains to ensure that customers received only the software to

20  which they were entitled.  *E.g.*, *id*. 598:1-6 ("we would never give customers a piece of software

21  they're not entitled to"); *id*. 636:19-637:23, 701:23-702:11.  The Court should rule as a matter of law

22  that Oracle is not entitled to the statutory damages enhancement.

23          **3.      The Court Should Order Judgment on Oracle's Alternative Copyright Theories**

24          This Court should grant judgment on Oracle's claims that Mr. Ravin is liable for contributory

25  and vicarious infringement because Oracle has not proven essential elements of those claims.

26          ***Contributory Infringement***.    Liability for contributory infringement may be found only

27  "where a defendant knowingly contributes to the infringing conduct of another."  *Fonovisa, Inc. v.*

28  *Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d

Gibson, Dunn &
Crutcher LLP

23

1004, 1021 (9th Cir. 2001) ("knowingly" means knowledge of "specific" infringing acts); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) ("contributes" means "active steps" to "encourage direct infringement").

Oracle has not proven either element as to any of the product lines.  Mr. Ravin specifically disclaimed knowledge of any specific infringing acts, which Oracle has not rebutted.  *See, e.g.*, 9/16 Tr. 282:15-17; *id*. 380:21-381:1.  At best, Oracle adduced evidence suggesting that Mr. Ravin "should have known" about the infringing acts (*see* p. 21, *supra*), but that is a negligence standard, and it is insufficient.  *Cf. Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015); *see also Hitek Software LLC v. Timios, Inc.*, 2012 WL 2366368, at *4 (C.D. Cal. June 18, 2012).  Nor is there any evidence that Mr. Ravin took "active steps" to encourage infringement.  Passive statements acquiescing in conduct (*e.g.*, PTX-1, -4), or ordering more disk space (PTX-5) are legally insufficient to establish a "material contribution" to infringement.  *E.g.*, *A&M Records*, 239 F.3d at 1021.

*Vicarious infringement*.  To establish vicarious infringement, Oracle must prove that Mr. Ravin "profits from direct infringement while declining to exercise a right to stop or limit it."  *China Cent. Television v. Create New Technology (HK) Ltd.*, 2015 WL 3649187, at *11 (C.D. Cal. June 11, 2015) (quotations omitted); *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (plaintiff must prove infringing activity constitutes "a draw for [customers], not just an added benefit").

Oracle has not proven either element.  Mr. Ravin was "focused on building the business and had engineering people to focus on" the technical aspect of the business (9/16 Tr. 284:17-18), and did not have any ability to supervise the engineers, as they were scattered far and wide at the company's inception (9/17 Tr. 692:8-15).  And, as explained more fully above in section III.A, Oracle has not established that a single customer went to Rimini *because of* its allegedly infringing conduct.

**4.      Oracle Is Misusing Its Copyrights**

Copyright misuse exists where a copyright owner attempts to "leverage ... sales into after-market monopolies" (*Chamberlain Grp., Inc. v. Skylink Tech., Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004)), limit the types of related services its clients can seek (*Practice Mgmt. Info Corp. v. Am. Medical Ass'n*, 121 F.3d 516, 520-21 (9th Cir. 1997)), or merely "uses its copyrights to indirectly gain commercial control over products [it] does not have copyrighted."  *Alcatel USA, Inc. v. DGI*

1   *Techs., Inc.*, 166 F.3d 772, 793 (5th Cir. 1999) (quotations omitted).

2          Oracle may impose "***reasonable*** restrict[ions on] the use of the software" (*Apple Inc. v.*

3   *Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) (emphasis added)), but those restrictions cannot

4   "prevent the development of competing products" (*id.*), particularly where there are only a limited

5   number of ways to express software patches and fixes, and where the evidence shows that Rimini

6   copied software "solely in order to discover the function requirements for compatibility," which

7   constitutes fair use. *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524-25 (9th Cir. 1992);

8   *Oracle Am. Inc. v. Google, Inc.*, 750 F.3d 1339, 1362 (Fed. Cir. 2014).

9          Oracle's position at trial is that there is no other viable competitor to Oracle in this market

10  besides Rimini Street—largely because Oracle sued its prior competitors, TomorrowNow and

11  CedarCrestone, for copyright infringement—and that it is not possible to compete with Oracle due to

12  the restrictions it places on its licenses.  *See*, *e.g.*, 9/18 Tr. 842:11-13 (Q: "Does this mean the

13  software actually has to be at the City of Flint"? A: "It does."); *id.* 845:7-10 (licenses do not include a

14  "right to distribute the software" to third parties); 9/22 Tr. 1307:25-1308:1 ("There's no way for a

15  [third party] to deliver a critical fix on a solution that doesn't have a source code."); 9/23 Tr. 1560:1-

16  3, 1561:12-14 (support providers who "do not provide security fixes" "cannot possibly claim to be

17  providing support," yet there is no way for third parties to provide security fixes because they do not

18  "have the source code for important parts of the application"); 9/18 Tr. 881:4-6, 882:5-6 (Rimini

19  would have had to "acquire a license [from Oracle] for each customer," but Oracle would have been

20  unlikely to have "provide[d]" Rimini a license).  This is misuse of a copyright in software to obtain a

21  monopoly in the software support market, where Oracle has no copyright, patent, or any other right to

22  exclude competition.  9/21 Tr. 1018:23-1019:6; 9/22 Tr. 1311:25-1312:5.  Permitting customers to

23  use third-party support only if the customer continues to pay Oracle for support is not competition.

24         This Court struck Rimini's copyright misuse defense before the full extent of Oracle's

25  conduct became apparent, and Rimini was denied discovery on this issue and precluded by the

26  Court's motion *in limine* order from eliciting misuse testimony at trial.  As a result, if the Court is

27  unwilling to grant judgment for Rimini on this ground, it should order a new trial and allow Rimini to

28  take relevant discovery on this potentially dispositive affirmative defense.

1  **E.    Oracle's Copyright Infringement Damages Theories Are Flawed**

2      Actual damages under the Copyright Act "are the extent to which the market value of a

3  copyrighted work has been injured or destroyed by an infringement."  *Oracle v. SAP AG*, 765 F.3d

4  1081, 1087 (9th Cir. 2014).  Oracle's damages model has *nothing to do* with the value of its copyright

5  in its software.  The damages Oracle seeks relate to competition it has faced in the separate market

6  for software support.  Using a novel, legally flawed, and factually baseless lost profits and infringer's

7  profits theory that has never been approved by the Ninth Circuit, Oracle is attempting to wipe out its

8  competitor despite the absence of any causally related harm.  The only proper methods of calculating

9  copyright infringement damages in this case are the fair market value of use or statutory damages.[6]

10      **1.    Oracle International May Not Recover Oracle America's Lost Profits**

11      Only Oracle International Corporation ("OIC") owns the copyrights at issue.  Yet, the

12  damages that OIC seeks were incurred entirely by Oracle America ("OA") and *then* transferred to

13  OIC.  Because a corporate plaintiff may recover only its own lost profits, and may not assert the

14  rights of other entities, there are no lost profits for OIC to recover.  *See, e.g.*, *Warth v. Seldin*, 422

15  U.S. 490, 499 (1975); *Disenos Artisticos E. Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d

16  377, 380 (9th Cir. 1996); *Lanard Toys Ltd v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal.

17  2007); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).

18      Oracle is a large conglomerate consisting of a parent corporation (Oracle Corporation) and

19  hundreds of subsidiary corporations.  This corporate structure results in considerable cost and tax

20  savings and other benefits to Oracle.  9/24 Tr. 1772:18-1773:3; *see also, e.g.*, Brief for Respondent-

21  Appellant at 7, 9, 35, *Sarhank Group v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005) (No. 92-9383).

22  Oracle established separate "corporate identities and functions to suit its own goals and purposes, but

23  it must take the benefits with the burdens."  *Poly-America*, 383 F.3d at 1311.

24      **2.    Oracle Failed to Establish Causation.**

25

26  [6] Oracle should not be permitted to seek damages from 2011-2014 since the Court excluded any
    evidence of post-2011 conduct, and therefore barred Rimini from even telling the jury that it no
27  longer engages in the challenged conduct.  9/18 Tr. 580:15-18; *id.* 582:6-19, 18-21.  Moreover,
    Oracle is not entitled to damages incurred more than three years before the date it filed the complaint
28  in this action.  Dkt. 554.

Oracle has not met its burden of demonstrating that the lost customers would have reverted to Oracle for support had Rimini not engaged in the acts for which Oracle accuses, for all of the reasons stated above. *See* pp. 3-7, *supra*. *See Oracle v. SAP AG*, 765 F.3d at 1087 ("A plaintiff in a § 504(b) action must establish [a] causal connection" "between the infringement and the monetary remedy sought") (quotations omitted); *Evenflow Plumbing Co. v. Pac. Bell Directory*, 2005 WL 1353822, at *1 (N.D. Cal. June 7, 2005) ("the copyright holder bears the burden of showing that the infringement was the cause of the loss of profits"). Indeed, the Ninth Circuit has made clear that where a plaintiff cannot show that the loss (or failure to gain) a particular client is attributable to infringement, it "cannot recover damages related to [that client]." *Oracle v. SAP AG*, 765 F.3d at 1094.

### 3.    A Non-Infringing Alternative Is a Complete Defense to Oracle's Lost Profits Case

It is Oracle's burden to prove that no non-infringing alternatives existed during the time period at issue in this lawsuit. *IGT v. Alliance Gaming Corp.*, 2008 WL 7071468, at *6 (D. Nev. Oct. 21, 2008) (patent holder must prove an absence of "acceptable non-infringing substitutes" to obtain lost profits); *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) (same). Oracle has failed to meet that burden. Its experts' conclusory testimony that the principal options that existed at the time, including TomorrowNow and CedarCrestone, infringed is insufficient to establish an element of the claim (*cf. Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1106 n.130 (C.D. Cal. 2005)), most clearly because there was no evidence admitted that those companies infringed—Oracle's experts simply (and inappropriately) said so. 9/24 Tr. 1693:5-10, 1790:17-1791:3. The reason CedarCrestone settled its lawsuit (on August 13, 2013) with Oracle is unknown to Rimini because Oracle opposed Rimini's request to obtain discovery, and Magistrate Judge Leen denied Rimini's request. Dkt. 816. There is *no evidence* that CedarCrestone infringed.

### 4.    Oracle Failed to Prove Infringer's Profits Attributable to Rimini's Infringement.

Oracle may only obtain infringer's profits that are "attributable to the infringement." 17 U.S.C. § 504(b). This "causation element" "obviates a good deal of mischief in claiming profits beyond what might be attributable to the infringement." *Polar Bear*, 384 F.3d at 711 (quotations omitted). Otherwise, the plaintiff in a copyright action could "do nothing more than offer an overall gross revenue number—like $11.5 billion—and sit back." *Id.* Thus, where the plaintiff fails to prove

Gibson, Dunn & Crutcher LLP

that the loss of particular customers was "attributable to" infringement—and not myriad other reasons, such as customer service, cost, or good old-fashioned American competition—the plaintiff "cannot recover damages related to those … customers." *Oracle v. SAP AG*, 765 F.3d at 1094 (affirming entry of judgment as a matter of law in favor of defendant on lost profits damages). Based on the evidence presented in this case, there is no possible way for the jury to determine which damages were attributable to infringement, and which were not.

Further, Rimini has *had no profits* to disgorge. *See Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1363 (S.D.N.Y. 1991) (no infringer's profits where costs exceed revenue); 9/17 Tr. 643:13-14 ("We've never made money"). Oracle alleges that Rimini willfully infringed Oracle's copyrights. That is wrong, as discussed above, but even if Rimini willfully infringed, the statute awards infringer's *profits*, not infringer's *revenues*, as Oracle claims. 17 U.S.C. § 504(b). Oracle has also admitted that "[p]rofits are net of applicable expenses by definition." Dkt. 767 at 41; *see also ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1169 (W.D. Wash. 1999).

And even *if* Rimini earned a profit, Oracle's figures are entirely duplicative of Rimini's actual damages award, whether measured as the fair market value of use or Oracle's lost profits, and there is thus no basis to award infringer's profits. *See* 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover … any profits of the infringer that are attributable to the infringement ***and are not taken into account in computing the actual damages***") (emphasis added); *see also Oracle USA, Inc. v. SAP AG*, No. 07-1658 PJH, Dkt. 1005 at Jury Instruction No. 6 (N.D. Cal. Nov. 23, 2010) ("If you award Oracle actual damages based on fair market value of a license for the rights infringed, that award takes into account Defendants' profits attributable to their infringement and Oracle is not entitled to any additional award"); *id.* at Dkt. 1000 at 4:15-17 ("THE COURT: … I think that hypothetical license does include the infringer's profits regardless of what number the jury comes back with."). And for the reasons stated above, Oracle has failed to put forth any evidence of a causal nexus between Rimini's infringement and Rimini's revenue. *Polar Bear*, 384 F.3d at 711 ("the copyright claimant must first show a causal nexus between the infringement and the gross revenue"); *id.* ("a plaintiff seeking to recover indirect profits must formulate the initial evidence of gross revenue duly apportioned to relate to the infringement") (quotations omitted). At trial, Oracle

failed to differentiate between which of Rimini's profits are "attributable" to the infringement, and which are unrelated to the infringement.  9/24 Tr. 1859:9-10 ("I don't have specific evidence on the other 200 [customers]"); *id.* 1861:21-22 ("If you're asking about each individual customer, that evidence has not been provided in this case").  As the Ninth Circuit made clear in *Oracle v. SAP AG*, where an expert was "unsure" "as to whether the loss of … three customers was attributable to" infringement, any award of infringer's profits is "unduly speculative," and Oracle "cannot recover damages related to those" customers.  765 F.3d at 1094.

     **5.**     **Oracle's Database Damages Theory Is Based on Speculation.**

Ms. Dean's hypothetical license model completely disregarded non-infringing alternatives available to Rimini (9/25 Tr. 1947:8-18) and therefore fails as a matter of law.  *Oracle Corp. v. SAP AG*, 765 F.3d at 1093 (affirming grant of JMOL on hypothetical license award); *see* pp. 27-28, *supra*.

**F.**     **Oracle Is Not Entitled to an Injunction or Prejudgment Interest.**

Judgment in Rimini's favor is warranted on Oracle's request for an injunction because Rimini already ceased engaging in the conduct complained of.  There is therefore no threat of continued irreparable harm, no equities in Oracle's favor, and no public interest implicated.  Oracle is not entitled to prejudgment interest due to the reasonable dispute throughout the relevant period regarding whether Rimini was infringing.  *See, e.g., Societe Civile Succession Guino v. Renoir*, 305 F. App'x 334, 338-39 (9th Cir. 2008).  Rimini will oppose Oracle's motions for this relief.

**G.**     **The Evidentiary Rulings on Rimini's State of Mind Warrant a New Trial.**

The Court has permitted Oracle to tell the jury about Mr. Ravin's history with TomorrowNow, that TomorrowNow is no longer operating because it stipulated to infringement of Oracle's copyrights, that SAP admitted unspecified "wrongdoing" by TomorrowNow, that Oracle sued Rimini at least in part because of its concerns about TomorrowNow, that CedarCrestone was an "infringing alternative," and that one of Rimini's employees took protected material from Oracle, even though *none* of this evidence is relevant to this trial.

Introduction of *any* of this testimony was improper because Oracle has offered *no evidence* that TomorrowNow, under SAP's control, was in fact similar to Rimini Street.  *See, e.g., State Farm*, 538 U.S. at 422-23 ("A defendants dissimilar acts, independent from the acts upon which liability

1   was premised, may not serve as the basis for punitive damages"); *see also Younan v. Rolls-Royce*

2   *Corp.*, 2013 WL 1899919, at *9 (S.D. Cal. May 7, 2013) (where "[e]vidence [of other incidents] [is]

3   proffered to illustrate the existence" of an "ultimate issue to be decided by the jury," introducing

4   party must show a "high degree of similarity" between that incident and the one at issue) (quotations

5   omitted).  There has been *no evidence* as to *why* TomorrowNow stipulated to liability or any other

6   clear and convincing evidence of infringement, and the Court has forbidden defendants from

7   introducing any state of mind testimony from that time period (9/21 Tr. 898:11-20, 902:5-12) that

8   could rebut Oracle's efforts to confuse the jury with speculative, concededly prejudicial testimony

9   that assumes facts not in evidence and attempts to paint Mr. Ravin as a serial infringer.

10   This Court initially recognized how prejudicial this evidence would be to defendants (*e.g.*,

11   9/16 Tr. 402:24-403:12), but it has allowed the undue prejudice to grow with every passing day.

12   What was first just the camel's nose in the tent to escape the sandstorm is now the entire camel,

13   which is undoubtedly the primary focus of the jury.  At the same time, Rimini has been precluded

14   from introducing highly probative evidence of its *good* faith.  Rimini has not even been able to tell

15   the jury that it stopped all the conduct Oracle alleges against it in this case (9/17 Tr. 580:15-17), or

16   that Mr. Ravin's state of mind was evidenced by a series of attorney letters exchanged between his

17   lawyers and Oracle's lawyers that specifically discussed TomorrowNow and the allegedly infringing

18   activity and the reasons why Rimini felt there was no infringement (*e.g.*, DTX-0384, -0379, -0385).

19   That one-sided presentation of the evidence—which could potentially expose defendants to

20   treble statutory damages and punitive damages—has incurably infected the jury, violated defendants'

21   due process rights, and requires a new trial.  *See*, *e.g.*, *United States v. Hodges*, 770 F.2d 1475, 1481

22   (9th Cir. 1985); *Mahone v. Lehman*, 347 F.3d 1170, 1174 (9th Cir. 2003); *Tennison v. Circus Circus*

23   *Enters. Inc.*, 244 F.3d 684, 688 (9th Cir. 2001).

## IV.   CONCLUSION

24

25   The Court should order judgment for Rimini on all of Oracle's claims.

26   DATED:        September 28, 2015        GIBSON, DUNN & CRUTCHER LLP

27                                                    By:   */s/ Blaine H. Evanson*
                                                              Blaine H. Evanson
28                                                    *Attorneys for Defendants*

Gibson, Dunn &
Crutcher LLP

30

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on September 28, 2015, I caused to be electronically filed the foregoing

3  document with the clerk of the court for the U.S. District Court, District of Nevada, using the

4  electronic case filing system.  The electronic case filing system sent a "Notice of Electronic Filing" to

5  the attorneys of record who have consented in writing to accept this Notice as service of this

6  document by electronic means.

7

8                             By: __/s/ *Blaine H. Evanson*_____

9                                 Blaine H. Evanson

10                            *Attorney for Defendants*
                                   *Rimini Street, Inc. and Seth Ravin*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

31