BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (pro hac vice)
KAREN DUNN (pro hac vice)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (pro hac vice)
KIERAN P. RINGGENBERG (pro hac vice)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (pro hac vice)
KRISTEN A. PALUMBO (pro hac vice)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>    Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW** |

# CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  SUMMARY OF EVIDENCE ................................................................................ 1

III. LEGAL STANDARD ........................................................................................... 5

IV.  ARGUMENT ........................................................................................................ 6

    A.   Defendants Are Liable For All Copyright Infringement Claims .......................... 6

        1.   No License Excuses Defendants' Copying ................................................. 6

        2.   Defendants' Infringement Was Willful ...................................................... 7

        3.   Ravin Is Liable for Contributory and Vicarious Infringement.................. 8

    B.   Defendants Are Liable For All Non-Copyright Claims......................................... 9

        1.   Defendants Intentionally Interfered with Oracle's Prospective Economic Advantage ............................................................................... 9

        2.   Defendants Breached and Induced Customers to Breach Oracle's Terms of Use .......................................................................................... 11

        3.   Defendants' Access to and Downloading from Oracle's Support Websites Was Unauthorized ................................................................... 12

    C.   Defendants' Causation Argument Is Contrary To Law And To The Trial Record ............................................................................................................... 14

        1.   Oracle's Lost Profits Showing Meets All Applicable Legal Standards ................................................................................................ 14

        2.   Oracle Showed That Defendants Caused Oracle's Harms....................... 15

        3.   There Were No Viable Non-Infringing Alternatives ............................... 18

        4.   Defendants' Remaining "Causation" Arguments Are Irrelevant............ 19

    D.   Oracle Is Entitled To Copyright Damages ......................................................... 20

        1.   Rimini's Entire Business Model Depended upon Infringement .............. 20

        2.   Oracle's Damages Model Is Appropriate................................................. 20

    E.   Oracle Is Entitled To Equitable Relief .............................................................. 23

    F.   Oracle Is Entitled To Punitive Damages ........................................................... 24

    G.   Defendants Are Not Entitled to Judgment Regarding Injunctive Relief Or Prejudgment Interest ......................................................................................... 26

    H.   There Is No Basis To Order A New Trial .......................................................... 26

i

1

V.      CONCLUSION ............................................................................................................. 27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1
2
## TABLE OF AUTHORITIES
3
Page(s)
4
CASES

5
*Agence France Presse v. Morel*,
6    2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) ....................................................................... 18

7
*Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*,
   85 F. Supp. 3d 768 (D. Del. 2015) ........................................................................................ 27

8
*Broad. Music, Inc. v. Blueberry Hill Family Restaurants, Inc.*,
9    899 F. Supp. 474 (D. Nev. 1995) .......................................................................................... 26

10
*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1992) ........................................................................................................... 23
11

12
*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012) ........................................................................................................... 25
13

14
*Cohen v. U.S.*,
   100 Fed. Cl. 461 (2011) ......................................................................................................... 19

15
*Comm. on Children's Television v. Gen. Foods Corp.*,
16    35 Cal. 3d 197 (1983) ............................................................................................................ 23

17
*Computer Management Assistance Co. v. Robert F. DeCastro, Inc.*,
   220 F.3d 396 (5th Cir. 2000)...................................................................................... 10, 23

18
*Cortez v. Purolator Air Filtration Prods. Co.*,
19    23 Cal. 4th 163 (2000) ........................................................................................................... 23

20
*Craigslist Inc. v. 3Taps Inc.*,
   964 F. Supp. 2d 1178 (N.D. Cal. 2013) ................................................................................ 13
21

22
*Craigslist, Inc. v. Autoposterpro, Inc.*,
   2009 WL 890896 (N.D. Cal. Mar. 31, 2009) ....................................................................... 14
23

24
*Creative Computing v. Getloaded.com LLC*,
   386 F.3d 930 (9th Cir. 2004)................................................................................................. 13

25
*Crunchyroll, Inc. v. Pledge*,
   2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) ..................................................................... 19
26

27
*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001).................................................................................................. 8

28

*DeVoto v. Pacific Fidelity Life Insurance Co.,*
   618 F.2d 1340 (9th Cir. 1980) ............................................................ 10

*Duran v. U.S. Bank Nat'l Assoc.,*
   59 Cal. 4th 1 (2014) ............................................................................ 20

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) .............................................................. 8

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.,*
   25 F. Supp. 2d 395 (S.D.N.Y. 1999) ................................................... 19

*FCC v. Fox Television Stations, Inc.,*
   132 S. Ct. 2307 (2012) ....................................................................... 25

*Fletcher v. Security Pac. Nat'l Bank,*
   23 Cal. 3d 442 (1979) ........................................................................ 23

*Forro Precision, Inc. v. IBM Corp.,*
   673 F.2d 1045 (9th Cir. 1982) ............................................................ 18

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
   772 F.2d 505 (9th Cir. 1985) ................................................ 19, 24, 26

*Frantz v. Johnson,*
   116 Nev. 455 (2000) .......................................................................... 18

*Grosso v. Miramax Film Corp.,*
   383 F.3d 965 (9th Cir. 2004) .............................................................. 10

*Haggarty v. Wells Fargo Bank, N.A.,*
   2011 WL 445183 (N.D. Cal. Feb. 2, 2011) ....................................... 23

*Harper & Row Pubs., Inc. v. Nation Enters.,*
   471 U.S. 539 (1985) ........................................................................... 18

*Harris Market Research v. Marshall Marketing and Communications, Inc.,*
   948 F.2d 1518 (10th Cir. 1991) .......................................................... 21

*Holcomb v. Georgia Pacific, LLC,*
   289 P.3d 188 (Nev. 2012) .................................................................. 12

*Homoki v. Conversion Svcs., Inc.,*
   717 F.3d 388 (5th Cir. 2013) .............................................................. 18

*In re Napster, Inc. Copy. Litig.,*
   377 F. Supp. 2d 796 (N.D. Cal. 2005) ................................................. 8

*Key West Hand Print Fabrics, Inc. v. Serbin, Inc.,*
   269 F. Supp. 605 (S.D. Fla.1966) ...................................................... 18

iv

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ................................................................... 10

*Krechman v. Cnty. of Riverside*,
   723 F.3d 1104 (9th Cir. 2013) ............................................................ 5

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ....................................................................... 25

*Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nevada*,
   106 Nev. 283 (1990) ...................................................................... 10

*Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*,
   373 F. App'x 752 (9th Cir. 2010) ....................................................... 22

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ............................................................ 15

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ............................................................ 10

*Mid-America Tablewares, Inc v. Mogi Trading Co.*,
   100 F.3d 1353 (7th Cir. 1996) .......................................................... 14

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) .................................................................... 20

*Montgomery v. Noga*,
   168 F.3d 1282 (11th Cir. 1999) ......................................................... 21

*Murphy v. City of Elko*,
   976 F. Supp. 1359 (D. Nev. 1997) ..................................................... 26

*NovelPoster v. Javitch Canfield Grp.*,
   2014 WL 3845148 (N.D. Cal. Aug. 4, 2014) ........................................ 12

*On Davis v. The Gap Inc.*,
   246 F.3d 152 (2d Cir. 2001) ............................................................. 15

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ............................................... 15, 21, 23

*Oracle USA, Inc. v. SAP AG*,
   2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) ....................................... 21

*Pac. Shores Properties, LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) ..................................................... 14, 15

*Palmer v. Conn. Railway & Lighting Co.*,
   311 U.S. 544 (1941) ....................................................................... 14

v

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)............................................................................... 8

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007) ............................................................................................ 20

*Polar Bear Prods, Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004)................................................................. 15, 20, 26

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
   177 Cal. App. 3d 1120 (Cal. Ct. App. 1986) ..................................................... 24

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) .............................................................................................. 5

*Rimini St., Inc. v. Oracle Int'l Corp.*,
   2015 WL 4139051 (D. Nev. July 9, 2015) ..................................................... 9, 26

*RSO Records, Inc. v. Peri*,
   596 F. Supp. 849 (S.D.N.Y. 1984) ..................................................................... 18

*SMSW Enters., LLC v. Halberd Corp.*,
   2015 WL 1457605 (C.D. Cal. Mar. 30, 2015) ................................................... 24

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................ 25

*Stevens Linen Assocs., Inc. v. Mastercraft Corp.*,
   656 F.2d 11 (2d Cir. 1981).................................................................................. 18

*UMG Recordings, Inc. v. Bertelsmann AG*,
   222 F.R.D. 408 (N.D. Cal. 2004) .......................................................................... 8

*United States v. Christensen*,
   2015 WL 5010591 (9th Cir. Aug. 25, 2015) ...................................................... 13

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) (en banc).............................................................. 13

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006) .............................................................................................. 5

*Valente-Kritzer Video v. Pinckney*,
   881 F.2d 772 (9th Cir. 1989)............................................................................... 10

*Wessinger v. Westinghouse Elec. Co.*,
   2008 WL 2077786 (D.S.C. May 8, 2008)........................................................... 27

*Westside Center Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (Cal. Ct. App. 1996) ..................................................... 9, 17

vi

1

**STATUTES**

2

17 U.S.C. § 504(b) ........................................................................................... 22

3

18 U.S.C. § 1030 .............................................................................................. 12

4

Cal. Bus. & Prof. Code § 17200 ....................................................................... 23

5

Cal. Civ. Code § 3294(a) .................................................................................. 24

6

Cal. Penal Code § 502 ...................................................................... 12, 13, 24, 25

7

Nev. Rev. Stat. § 205.511(1) ............................................................. 13, 24, 25

8

Nev. Rev. Stat. § 205.4765 ............................................................................... 12

9

Nev. Rev. Stat. § 42.005 ................................................................................... 24

10

11

**RULES OF PROCEDURE**

12

Fed. R. Civ. P. 50 .............................................................................................. 5

13

Fed. R. Civ. P. 61 .............................................................................................. 27

14

**OTHER AUTHORITIES**

15

Robert L. Dunn, Recovery of Damages for Lost Profits ..................................... 14

16

Modern Scientific Evidence (West 2015) .......................................................... 18

17

Restatement (Second) Torts, § 768 & cmt. (d) .................................................. 9

18

Wright & Miller, Federal Practice & Procedure (3d ed. 2015)........................... 5

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   **I.     INTRODUCTION**

2          The evidence at trial establishes, publicly and for the first time, the full scope of Ravin

3   and Rimini's unlawful acts.  They built a business through pervasive, undisputed, and

4   unauthorized downloading and copying of Oracle's software and support materials, and by lying

5   about their illegal conduct.  Defenses and deposition testimony have been shown to be a cover-

6   up ordered by Seth Ravin.  The evidence of intentional unlawful acts by Ravin and Rimini is

7   overwhelming, and Oracle's claims are all well-supported.

8          Defendants' Rule 50 motion is meritless.  Defendants seek judgment only by ignoring the

9   evidence presented at trial and the Court's prior orders.  Despite the Court's summary judgment

10  orders, and Rimini's stipulated copyright infringement liability, Defendants even request

11  judgment, in full, on Oracle's copyright infringement claims.  As explained below, Oracle's

12  claims are supported by the evidence at trial, and there is no basis to grant any aspect of

13  Defendants' Rule 50 motion.  The jury is entitled to rule on Oracle's claims and award damages.

14  **II.    SUMMARY OF EVIDENCE**

15          **Unlicensed Copying.**  Rimini copied "massive amounts" of Oracle software and support

16  materials, without ever obtaining any license from Oracle.  Trial Transcript ("Tr.") 165:12-16

17  (Davis); 302:3-4 (Ravin).  Rimini had "thousands and thousands" of copies of Oracle software

18  on Rimini servers.  Tr. 551:10-18 (Ravin).[1]  These copies were not, as Rimini claimed before

19  trial, "backups."  Rimini created and used full working copies of the PeopleSoft, JD Edwards,

20  and Siebel software as "environments" on Rimini's servers.  Tr. 303:1-5, 320:13-321:2, 758:23-

21  759:4, 760:8-15 (Ravin); 1146:5-17 (Chiu); 1757:14-1758:11 (Whittenbarger).  Backups are

22  stored on tapes or other storage, unmodified.  Tr. 730:4-11 (Ravin); Tr. 180:5-181:17, 182:16-24

23  (Davis).  Copies used for troubleshooting, support, testing, or development are not backups.  Tr.

24  180:5-181:17, 182:16-24 (Davis).  No license permitted those copies.  PTX 1458, 5328

25  (stipulations).

26

---

27  [1] Defendants stipulated that Rimini reproduced copyrighted PeopleSoft, Siebel, JD Edwards, and
    Oracle Database software, and that Oracle is the copyright owner for that software.  Dkt. 528 at
28  17–19 and Ex. A.

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   Rimini's unlicensed copying included widespread "cross-use" of Oracle software and

2   support materials.  After years of false denials and perjury by Ravin and others,[2] Ravin finally

3   admitted to this cross-use and that it occurred "all the time."  Tr. 799:6-12 (Ravin).  Rimini's

4   cross-use included unlicensed "cloning" of Oracle software (copying an environment created

5   ostensibly for one customer for another customer) and using unlicensed "development"

6   environments to create updates and fixes for multiple customers.  Tr. 320:2-7, 371:5-9, 374:12-

7   15, 551:23-25, 552:1-5, 777:22-24 (Ravin); 1365:23-1366:14, 1380:18-1381:8 (Williams);

8   192:22-193:7, 197:21-24, 198:24-199:11, 205:6-10 (Davis).  Ravin knew this "from the very

9   beginning" (Tr. 809:19-810:6 (Ravin)), and this was not limited to PeopleSoft.  Tr. 1659:16-

10   1661:4 (Grigsby). Ravin denied there was a library, then testified there was a library with

11   installation media only, and installation media only for PeopleSoft.  Tr. 242:14-20, 247:17-25

12   (Ravin).  All of this was false.

13   Rimini's "software library"—that Ravin and Rimini falsely stated never existed—was

14   massive.  PTX 10; Tr. 166:9-20 (Davis); 242:1-3, 242:14-20 (Ravin).  Ravin approved copying

15   to that library (PTX 4, 5), which included software and documentation for all of the products at

16   issues:  PeopleSoft, JD Edwards, Siebel, and Database.  Tr. 167:5-10 (Davis).  Rimini did not

17   keep track of how that library was used or audit the library, and Rimini deleted that library

18   shortly before Oracle filed this lawsuit.  Tr. 170:24-171:10 (Davis); 421:18-20, 422:21-423:4

19   (Ravin).  The "extracts" that Rimini gave its customers were also unlicensed copies.  Rimini told

20   customers that it was creating separate extracts for each customer, but Rimini was using log-ins

21   to copy all materials from Oracle's websites and then copying disks that Rimini then gave out to

22   multiple customers.  Tr. 333:9-334:3, 335:12-16 (Ravin); 1160:15-1161:10 (Hicks).

23   None of this unlicensed copying was mistaken or in "good faith."  Rimini's very first

24   customer sent Rimini a copy of its software license (PTX 540), and many other customers sent

25   copies of their license agreements and told Rimini that it was not permitted to copy the

26   software.  PTX 15, 16, 18, 23, 31; Tr. 432:9-13 (Ravin).  Ravin knew about the restrictions on

27   _____

[2] Ravin lied about this during his 2010 deposition, denying the existence of any cross use.  Tr.
28   804:20-805:5 (Ravin).

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1  copying, which were clear and unambiguous.  Tr. 635:10-12 (Ravin); 836:14-16, 838:4-10

2  (Allison).  On the other hand, Ravin and Rimini sometimes claimed the opposite, that they had

3  no access to licenses, meaning that they were deliberately building a business on copying

4  without knowledge of any license.

5       After Oracle sued TomorrowNow, and after TomorrowNow stopped using local

6  environments of Oracle's software and SAP admitted wrongdoing, Ravin "did not change

7  [Rimini's] business model" and told customers that TomorrowNow's policies were

8  "ridiculous."  Tr. 819:5-18 (Ravin); PTX 30.  Rimini's willfulness is further demonstrated by its

9  efforts to conceal its unauthorized copying, both by deleting the library and deleting records of

10  its cross-use.  PTX 136; Tr. 211:5-24 (Davis); Dkt. 466 at 17 ("Rimini's deletion of the software

11  library was willful . . . .").

12       **Unauthorized Downloading**.  Rimini also engaged in widespread misuse of customer

13  log-ins and unauthorized downloading from Oracle's websites.  Rimini used customer log-ins to

14  download massive amounts of materials, for multiple clients, including materials customers were

15  not authorized to download.  Tr. 1751:4-16 (Whittenbarger); PTX 7.  Rimini downloaded

16  PeopleSoft and JD Edwards materials before Rimini even had any clients for those

17  products.  PTX 4, 5, 6; 289:5-10 (Ravin).  Rimini used "automated" downloading tools that

18  Ravin and Rimini knew were not authorized and which harmed Oracle's systems.  Tr. 479:3-11,

19  769:9-10, 769:22-25 (Ravin); 1140:17-20 (Chiu).  Rimini violated the license terms posted on

20  Oracle's website because it wanted to "help [it]self" to the so-called "buffet" of Oracle software

21  for its own use.  PTX 1, 2.

22       Ravin directed Rimini's unauthorized downloading.  After TomorrowNow – Ravin's

23  former company – used "scrapers" on Oracle's website, Oracle prohibited access using

24  automated tools.  Tr. 867:16-869:15 (Allison); 480:24-481:5 (Ravin).  Ravin and others at

25  Rimini read and knew about those restrictions.  PTX 20; Tr. 480:10-14 (Ravin).  Ravin then

26  made the decision to use those automated tools "despite those changes."  Tr. 482:11-19, 726:20-

27  24 (Ravin); PTX 21, 22, 27.  Rimini was trying to stay under "the radar" (PTX 621), but Oracle

28  eventually discovered the downloading due to Rimini's "massive download volumes" (PTX

3

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    42).  Rimini employees worried that Oracle was "onto us" (PTX 42).  And even after Oracle

2    provided specific notice that conduct was harming Oracle's systems, and even after Rimini's

3    customer told it bluntly, "Apparently this is illegal,"  PTX 43, Rimini persisted with that

4    unlawful downloading.

5         Rimini's unauthorized access harmed Oracle's systems, causing slowdowns, errors, and

6    deadlocks, and eventually crashing Oracle's server.  Tr. 1172:9-15, 1174:5-1175:1, 1179:9-23

7    (Hicks); 1210:22-1211:10 (Renshaw).  Rimini used the IDs for multiple customers to "crawl"

8    Oracle's website, causing more than 184,000 deadlocks.  Tr. 1180:19-1181:4 (Hicks).  Rimini's

9    "crawls" led to errors and eventually "crashed" Oracle's systems.  Tr. 1201:14-1202:11; 1210:5-

10   1211:10 (Renshaw); PTX 665, 669.  Rimini proceeded with the unauthorized downloading even

11   after Oracle sought to block certain IP addresses.  Tr. 769:4-770:9 (Ravin); 1171:7-1172:8,

12   1175:17-1176:3 (Hicks).

13        **Unlawful Interference**.  To obtain customers, and in addition to the unauthorized

14   downloading, Ravin and Rimini repeatedly lied to the entire customer base about Rimini's

15   processes.  Rimini used "standard messaging" materials, including FAQs, that Rimini's sales and

16   marketing teams used with customers.  Both Mr. Maddock and Mr. Rowe testified that the

17   purpose of these materials was to ensure consistent messaging to customers.  Tr. 1396:5-14,

18   1398:2-13 (Maddock).  Those materials made false representations, including that Rimini did not

19   share software between customers, that Rimini developed updates "for each client

20   independently," and that environments would be "used exclusively to support that

21   customer."  Tr. 1398:20-1399:7, 1400:17-20, 1423:5-20, 1431:20-1432:8 (Maddock).  Ravin also

22   admitted that Rimini represented, among other things, that there was no software library, that

23   Rimini instead used "silos" for customers, that the issues at TomorrowNow "can't happen" at

24   Rimini, and that security updates "weren't necessary."  Tr. 242:21-23, 245:3-6, 248:1-4, 318:23-

25   319:9, 421:2-17, 427:19-25, 430:9-24, 446:1-9 (Ravin).  These standard messages were all

26   false.  Rimini's head of sales acknowledged that his 30(b)(6) testimony to the contrary was false.

27   Tr. 1409:21-1410:1, 1431:20-1432:8 (Maddock).  Yesterday, Rowe, the head of marketing, did

28   the same.  Other Rimini employees made similar confessions.  *E.g.*, Tr. 1382:17-21, 1383:4-14

4

1    (Williams). Furthermore, Ravin was the originating source of these false statements, which sales

2    and marketing then disseminated directly to customers.

3        **Harm To Oracle**.  The evidence establishes that Rimini caused Oracle's losses, totaling

4    $245.9 million, not including punitive damages, prejudgment interest, or attorney's fees.  As

5    stated in Rimini's documents and agreed to by Ravin, "Rimini Street separates Oracle from its

6    acquired licensees – denying Oracle recurring revenue . . . ."  PTX 3; Tr. 546:8-13

7    (Ravin).  Rimini documents and testimony by Rimini employees and customers confirm that,

8    apart from TomorrowNow, Rimini had "no competition" other than Oracle itself.  PTX 5350; Tr.

9    1527:17-1528:2 (Carter).  Customers were "typically evaluating between moving to alternative

10   support with Rimini Street or staying with the software vendor."  PTX 241.  Customers testified,

11   repeatedly, that they would not have left Oracle for Rimini if they had known of Rimini's

12   unlawful conduct.  *E.g.*, Tr. 1389:7-1390:1 (Higa); 1528:19-1529:2 (Carter); 1533:19-25,

13   1534:15-21 (Ward).  Oracle's damages calculations are well-established and conservative, and in

14   the end less than the $300 million Rimini told customers and investors it was taking from

15   Oracle.  Tr. 1833:20-1835:6, 1837:1-9 (Dean); 548:12-549:11 (Ravin); PTX 5469.

16   **III.    LEGAL STANDARD**

17       Rule 50(a) permits judgment on an issue only if a reasonable jury would have *no* "legally

18   sufficient evidentiary basis to find for the [non-moving] party on that issue."  Fed. R. Civ. P.

19   50(a); *see Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013) (same).  Rule

20   50(a) is discretionary; the Court "is not required" to grant it.  9B Wright & Miller, Federal

21   Practice & Procedure, § 2533 (3d ed. 2015); *see Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,

22   546 U.S. 394, 399-400 (2006) (Rule 50(a) motions are decided "at the court's discretion").

23       In deciding a Rule 50 motion, the Court "may not substitute its view of the evidence for

24   that of the jury."  *Krechman*, 723 F.3d at 1110.  The Court, therefore, must "draw all reasonable

25   inferences in favor of the nonmoving party, and it may not make credibility determinations or

26   weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

27   Moreover, the Court "must disregard all evidence favorable to the moving party that the jury is

28   not required to believe."  *Id.* at 151.

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   **IV.**   **ARGUMENT**

2       We address the liability issues for each cause of action below, and then address the

3 overlapping damages issues, equitable relief, punitive damages, and finally Defendants' motion

4 for a new trial.

5       **A.**    ***Defendants Are Liable For All Copyright Infringement Claims***

6       Defendants do not dispute that Rimini committed prima facie copyright infringement.

7 Nor can they, given the undisputed (and largely stipulated) evidence of infringement and the

8 adverse inference instruction that the Court has granted Oracle in light of Rimini's spoliation of

9 the software library. Dkt. 466 at 20.

10       **1.**     **No License Excuses Defendants' Copying**

11       Defendants have no license defense as to PeopleSoft and Oracle Database. Defendants

12 have "stipulated to liability as to the PeopleSoft software," rendering their license defense

13 irrelevant. Dkt. 766 at 19; *see also* Dkt. 474 at 8-20; Dkt. 599 at 1-2. The Court has rejected

14 Defendants' express license defense for Oracle Database. Dkt. 476 at 15-16. Defendants'

15 motion must be denied as to these product lines.[3]

16       As to the JD Edwards and Siebel product lines, this Court already found that the JD

17 Edwards license for Giant Cement (PTX 704) and the Siebel license for Novell (PTX 705)

18 permit copies for "archival" and "backup" purposes only. Dkt. 474 at 22, 24. Mr. Allison's

19 testimony at trial established that those licenses were representative of the JD Edwards and

20 Siebel licenses generally, as both companies "used form license agreements." Tr. 1117:25-

21 1118:5, 1118:15-19 (Allison). Defendants have not introduced into the record any JD Edwards

22

23 ───────────────

24 [3] Documentation is subject to the same license construction that the Court provided on summary judgment. *E.g.*, PTX 698, at 5 (defined term "Software" includes "Documentation"), id. at 1,

25 Section 1.1 (license grant for "Software" limited to "solely for Licensee's internal data processing operations at its facilities"); *see also* Dkt. 474 at 12 ("Oracle asserts, and the court

26 agrees, that Section 1.2(b)(i), which authorizes a reasonable number of copies for 'use in accordance with the terms set forth herein' is subject to the licensing restrictions outlined in

27 Section 1.1 of the City of Flint's license [PTX 698]. A 'use in accordance with the terms set forth herein' necessarily means that use of the licensed software under this provision is subject to all

28 other licensing restrictions identified in the same main section, in this case Section 1 of the City of Flint's license."). No license to the contrary has been admitted.

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    or Siebel licenses with contrary terms.  Rimini argued at trial that some licenses could not be

2    found, but in the absence of a customer license, Rimini has no license defense.

3         Rimini's copies of software and support materials were not solely for archive or back-up

4    purposes.  Oracle's expert and Ravin himself defined an "archive" or "backup" as a "copy . . .

5    put on a physically different place," on a "separate disk" or otherwise "put aside."  Tr. 180:5-

6    181:17, 182:16-24 (Davis); *see also* Tr. 362:21-363:23 (Ravin) (discussing archives shipped to

7    customers on DVDs or USB drives and backups on tape drives).  Further, as explained by Dr.

8    Davis, an environment used for development, testing, troubleshooting, or for any purpose other

9    than disaster recovery is not an archive or backup.  Tr. 182:16-24 (Davis).

10        The jury may properly determine from the evidence adduced at trial that Rimini's JD

11   Edwards and Siebel environments were not "backup" or "archival" copies because they were

12   "general development test environments" or otherwise used for testing, development, support,

13   and troubleshooting.  Tr. 320:8-321:6, 366:9-369:6 (Ravin) (Rimini's practice for Siebel

14   environments was to "use a generic environment for a particular release of the product" to

15   support "other multiple customers."), 758:22-759:4,760:8-15 (JD Edwards software on Rimini's

16   systems were "used for diagnostics and support."); 180:9-22, 182:16-183:4 (Davis); 1146:5-25

17   (Chiu) ("explaining that Rimini's internal Siebel environments were "used to provide support for

18   those clients that provided us their software."); 1754:8-15 (Whittenbarger) (Siebel environment

19   used for internal training); 1757:14-1758:5 (Whittenbarger) (Rimini "set[s] up environments to

20   troubleshoot issues"); PTX 181 (June 2009 installation of JD Edwards was "to be used for any

21   configuration, testing and development required"), 190 (JD Edwards environments associated

22   with specific customers continued to be created through February 2010), 310.

23                  **2.      Defendants' Infringement Was Willful**

24        Oracle presented substantial evidence of willful infringement, and there is no basis to

25   enter judgment for Defendants on this issue.  Defendants had notice of Oracle's copyrights.  Tr.

26   1546:5-20 (Screven); 1667:16-19 (Grigsby) & PTX 200;  286.  Customers also provided

27   Defendants with copies of the licenses and identified the unambiguous terms prohibiting

28   Rimini's local copies and cross use.  *E.g.*, PTX 15, 16, 18, 23, 31.  The jury may disregard the

1    self-serving testimony by Ravin and others regarding their purported beliefs, especially given the

2    many warnings by customers and Defendants' knowledge of the TomorrowNow lawsuit and

3    shutdown.  *E.g.*, Tr. 412:1-414:13 (Ravin); PTX 23, 30, 31, 465, 604. Rather than good faith, the

4    evidence shows lies and concealment internally at Rimini, as well as externally to customers and

5    the Court.  In light of this evidence, Defendants cannot possibly obtain judgment on this issue.

6    *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001).

7              **3.        Ravin Is Liable for Contributory and Vicarious Infringement**

8              Because Oracle has shown that Ravin knew of or had reason to know of Rimini's

9    infringing activity, and that he intentionally induced or materially contributed to the infringing

10   activity, the jury may find him liable for contributory infringement.  *Perfect 10, Inc. v.*

11   *Amazon.com, Inc.*, 508 F.3d 1146, 1170-73 (9th Cir. 2007).  Ravin knew that Rimini had local

12   environments on its systems that contained Oracle software, and that Rimini cross-used Oracle

13   software "all the time."  Tr. 250:1-8, 803:3-12 (Ravin). As Rowe testified yesterday, Ravin

14   directed virtually all of the lies. As discussed above, he set the stage for or personally directed

15   several acts of infringement by Rimini.  Ravin has "policy and operational control" over Rimini.

16   Tr. 240:21-23 (Ravin).  Because Ravin had "full operational control" over Rimini, and because

17   he specifically directed infringing actions, a jury may find him liable for contributory

18   infringement.  *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 413 (N.D. Cal. 2004);

19   *In re Napster, Inc. Copy. Litig.*, 377 F. Supp. 2d 796, 799 (N.D. Cal. 2005).

20             Ravin is vicariously liable for copyright infringement because he received a direct

21   financial benefit from Rimini's infringing activity, and had the right and ability to supervise or

22   control that infringing activity.  *Perfect 10*, 508 F.3d at 1173-74; *Ellison v. Robertson*, 357 F.3d

23   1072, 1076 (9th Cir. 2004).  Ravin is the single largest shareholder of Rimini, and has been since

24   its inception.  Tr. 240:24-241:3.  Ravin had supervision and control over all aspects of Rimini's

25   infringement, from the creation of local development environments at Rimini to the downloading

26   of massive amounts of Oracle software and support materials, to the generating of sales

27   messages misrepresenting Rimini's business practices (as Mr. Rowe testified).  Tr. 415:8-416:5

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   (Ravin); Tr. 1588:10-14 (G. Lester); PTX 14;  Tr. 240:21-23 (Ravin) (Ravin had "policy and

2   operational control" over Rimini).  Copyright Misuse Is Not an Available Defense

3        The Court struck Defendants' copyright misuse defense from the case and dismissed

4   Rimini's counterclaim for copyright misuse.  Dkt. 111 at 6–8.  In so doing, the Court properly

5   ruled that a restriction which "is only a limitation on third-party business models and is not a

6   restriction on Oracle customers . . . does not constitute copyright misuse."  Dkt. 111 at 8; *accord*

7   *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-CV-01699-LRH, 2015 WL 4139051, at *3 (D.

8   Nev. July 9, 2015).  Rimini did not seek reconsideration of that order, nor has Rimini sought to

9   amend its answer or counterclaims since the Court struck the defense.

10       **B.    *Defendants Are Liable For All Non-Copyright Claims***

11            **1.    Defendants Intentionally Interfered with Oracle's Prospective**

12                **Economic Advantage**

13       *First*, Oracle identified each customer at issue and showed that it had a business

14   relationship and future expectancy with each. Tr. 1778:20-1781:17, 1781:22-1790:7, 1837:5-17,

15   1843:14-1844:8, 1844:18-1845:17 (Dean); PTX 5469, 5470.  Rimini ignores that, asserting

16   instead that Oracle's interference theory is analogous to one where the plaintiff tried to avoid an

17   interference element (identifying the prospective customers) by asserting a theory of generalized

18   harm that the plaintiff called "interference with the market."  *Westside Center Assocs. v. Safeway*

19   *Stores 23, Inc.*, 42 Cal. App. 4th 507, 523 (Cal. Ct. App. 1996); Defendants Rimini Street, Inc.'s

20   and Seth Ravin's Rule 50(a) Motion for Judgment As A Matter Of Law ("Mot.") 4, 11.  Rimini

21   is wrong.

22       *Second*, Rimini misapprehends the predicate wrongful conduct for Oracle's interference

23   claim.  Mot. 7, 13.  The predicate wrongful conduct is (1) fraud or intentional misrepresentation

24   concerning Rimini's operations and (2) Rimini's wrongful downloading conduct.  *E.g.*, Dkt. 747

25   at 12-13.

26       *Third*, Rimini argues about the so-called "competitor's privilege," but such a privilege

27   cannot apply to Oracle's interference claims because of the narrow predicates.  A competitor's

28   fraud can never be privileged or justified.  Restatement (Second) Torts, § 768 & cmt. (d).  Nor

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   can statutory violations. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159-61

2   (2003).  Were the law otherwise, Rimini's conduct is so beyond the pale the jury will have no

3   trouble concluding it could not be privileged or justified.

4       *Fourth*, Rimini ignores binding authority to argue a "specific intent" requirement.  Mot.

5   7-8, 12.  The Nevada Supreme Court squarely rejected that contention.  *Las Vegas-Tonopah-*

6   *Reno Stage Line, Inc. v. Gray Line Tours of S. Nevada*, 106 Nev. 283, 288 (1990) ("We [ . . . ]

7   reject LTR's contention that this tort requires a specific intent to harm akin to proof required in a

8   criminal offense." (emphasis supplied) (addressing intentional interference with prospective

9   economic advantage).  So did the California Supreme Court in *Korea Supply Co. v. Lockheed*

10  *Martin Corp.,* 29 Cal. 4th 1134, 1161-62 (2003)—but Rimini again cites *DeVoto v. Pacific*

11  *Fidelity Life Insurance Co.*, 618 F.2d 1340 (9th Cir. 1980), which *Korea Supply* expressly

12  rejected as incorrectly interpreting California law.

13      *Finally*, Rimini offers a misplaced preemption argument.  "Claims under state law are

14  preempted where: (1) the work at issue comes within the subject matter of copyright, and (2) the

15  state law rights are equivalent to any of the exclusive rights within the general scope of

16  copyright."  *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (internal citation

17  and quotation marks omitted).   Intentional interference has an "extra element" that is

18  qualitatively different from copyright.  Oracle's theory requires proof of misrepresentation or

19  statutorily prohibited conduct involving a computer.  *Valente-Kritzer Video v. Pinckney*, 881

20  F.2d 772, 776 (9th Cir. 1989) ("the element of misrepresentation . . . distinguishes [a claim for

21  fraud] from one based on copyright"); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928,

22  957 (9th Cir. 2010) ("tortious interference with contract" claim is not preempted; "because

23  contractual rights are not equivalent to the exclusive rights of copyright, the Copyright Act's

24  preemption clause usually does not affect private contracts"); *Computer Management Assistance*

25  *Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404–05 (5th Cir. 2000) ("Because a cause of

26  action under the Louisiana Unfair Trade Practices Act requires proof of fraud, misrepresentation

27  or other unethical conduct, we find that the relief it provides is not 'equivalent' to that provided

28  in the Copyright Act and, thus, it is not preempted").

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1

2       **2.      Defendants Breached and Induced Customers to Breach Oracle's**

3       **Terms of Use**

4       Oracle's inducing breach of contract claim concerns Oracle's terms of use, not software

5   licenses.  Dkt. 146, ¶¶ 116-121.  Each Oracle support site user must agree to abide by terms of

6   use, creating a valid contract between Oracle and the user when Oracle provides software access

7   in consideration.  Tr. 862:12-871:16 (Allison); Tr. 931:17-932:10 (Catz).

8       Using customer credentials, Rimini agreed to these terms of use, but then violated that

9   contract by engaging in automated downloading conduct that the contract specifically prohibited.

10  Tr. 481:8-483:5 (Ravin); 867:6-868:17 (Allison); PTX 19.  There is no dispute that Oracle

11  performed its obligations under its terms of use as Rimini accessed and downloaded material

12  from Oracle's support sites.  Tr. 1157:21-1158:9 (Hicks); 1753:15-21 (Whittenbarger).  Rimini

13  induced breach of that contract when it improperly accessed support sites on behalf of its

14  customers.  Tr. 1119:22-1120:25 (Allison); PTX 1569 ("the Materials may be . . . accessed by

15  third parties who are your agents or contractors acting on your behalf solely for your internal

16  business operation and you are responsible for their compliance with these Metalink Terms of

17  Use.")  Such breach is the predicate to Oracle's inducement of breach of contract claim.

18      *First*, the terms of use are a valid contract between Oracle and Rimini's customers.  Tr.

19  861:7-16; 862:23-863:9; 862:3-7; 863:15-864:8; 865:21-866:16 (Allison).  *Second*, Rimini knew

20  Oracle's terms of use existed.  The evidence establishes that Ravin and other Rimini employees

21  reviewed, discussed, and evaluated the Oracle Terms of Use that appeared on the Oracle

22  websites, and they recognized that the terms of use prohibited automated downloads.  PTX 19

23  and 20; Tr at 481:6-482:19 (Ravin); Tr.  824:25-825:10, 869:11-15 (Allison).  *Third*, Rimini

24  intentionally engaged in conduct intended to disrupt the contract.  Ravin instructed Rimini

25  employees to use the unauthorized automated tools regardless. PTX 22, 27; Tr. 481:8-483:5;

26  485:23-486:19 (Ravin); 1140:17-1141:8 (Chiu); 1165:8-1166:11 (Hicks); PTX 1256.  *Fourth*, as

27  testified by Oracle expert Christian Hicks, Rimini's unauthorized access burdened Oracle's

28  systems and slowed their performance, and Rimini used automated tools to download broad

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   ranges of materials that were not for any particular customer.  Tr. 1150:2-14; 1160:8-14 (Hicks).

2   In particular, from late 2008 through January 2009, Rimini downloaded software and support

3   materials, knowing that its "massive download volumes" were harming Oracle's systems.  PTX

4   38; 42; Tr. 1175:17 (Hicks).

5       *Fifth*, Rimini's conduct was a substantial factor in causing Oracle harm. Tr. 1171:7-

6   1174:4, 1175:2-16-1176:18 (Hicks); Tr. 1212:8-1213:2 (Renshaw); PTX 5372; 206 (describing

7   cause of harm); 482 (same).  *Holcomb v. Georgia Pacific, LLC*, 289 P.3d 188, 196 (Nev. 2012)

8   (Nevada uses "substantial factor" causation).

9           **3.       Defendants' Access to and Downloading from Oracle's Support**

10                     **Websites Was Unauthorized**

11      The jury may find Defendants liable under the federal Computer Fraud and Abuse Act

12  (CFAA), the California Computer Data Access and Fraud Act (CDAFA), and Nevada's

13  computer crime law (NCCL) given the evidence adduced at trial.  18 U.S.C. § 1030; Cal. Penal

14  Code § 502; Nev. Rev. Stat. § 205.4765.

15      *First*, Rimini argues that Oracle's computer-related claims are "simply breach-of-contract

16  claims dressed up" as statutory violations.  Mot. 13.  Oracle's terms of service did establish the

17  scope of authorization and notified Rimini of those limits.  But the fact that Oracle established

18  access restrictions in a binding contract that Rimini breached does not change the fact that Oracle

19  met the elements for each such claim.  *E.g.*, *NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-

20  05186-WHO, 2014 WL 3845148, at *7 (N.D. Cal. Aug. 4, 2014).

21      *Second*, Rimini argues that Defendants lacked notice and intent.  Mot. 14-15.  That is

22  incredible:  Ravin admitted he and others actually knew about the Terms of Use, read them,

23  understood them—and made a calculated decision to violate them anyway. Tr. 481:24-483:15;

24  824:25-825:16 (Ravin); PTX 20-23.  Oracle caught Rimini, attempted to block its IP addresses,

25  and sent notices about the illegal downloading.  Rimini persisted—intentionally evading Oracle's

26  IP blocking and engaging multiple virtual machines. Tr. 769:4-770:9 (Ravin); 1171:7-1172:8,

27  1175:23-1176:3 (Hicks); Tr. 1232:8-1233:14 (Baron); 1589:25-1592:2 (G. Lester).

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    As for Rimini's attempts to invent a constitutional problem (Mot. 14, 16), there are "no

2    serious constitutional doubts" about computer crime statutes when applied to facts such as this

3    case. *Craigslist Inc. v. 3Taps Inc*., 964 F. Supp. 2d 1178, 1184 (N.D. Cal. 2013). The "average

4    person" will not unwittingly violate the law because he does not innocently "bypass an IP block

5    set up to enforce a banning communicated via personally-addressed cease-and-desist letter." *Id*.

6    at 1184; *see also Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 934 (9th Cir. 2004)

7    (CFAA verdict upheld where defendant signed up fake "customers" for the plaintiff's website

8    and used actual customers' login credentials to access information to which it was not entitled);

9    *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) (en banc) (interpreting an ambiguous

10   term in the CFAA; quoting precedent, "We would not uphold an unconstitutional statute merely

11   because the Government promised to use it responsibly").

12   *Third*, Rimini offers meritless arguments for heightened mental states. The Ninth Circuit

13   disagrees, holding that computer crime statutes mean what they say. Foror example, "[i]n

14   contrast to the CFAA, the California statute [CDAFA] does not require unauthorized access. It

15   merely requires knowing access." *United States v. Christensen*, No. 08-50531, 2015 WL

16   5010591, at *14 (9th Cir. Aug. 25, 2015).

17   *Fourth*, Rimini tries to limit Oracle's computer statute damages in contravention of the

18   Ninth Circuit and the statutes' plain text. The CFAA permits "economic damages," which

19   permits "damages for loss of business" as well as the costs of "restor[ing] or maintain[ing] some

20   aspect of a business affected by a violation." *Creative Computing*, 386 F.3d at 935. Similarly,

21   the CDAFA permits "compensatory damages" and the NCCL provides damages "for any

22   response costs, loss or injury suffered" as a result of a violation. Cal. Penal Code § 502(e)(1);

23   Nev. Rev. Stat. § 205.511(1)(a). Oracle spent $27,000 on labor investigating "why the computer

24   systems were stalling or deadlocking" from December 2008 through January 2009. Tr. 1831:2-

25   21 (Dean). Oracle presented evidence explaining which customers Defendants were on-boarding

26   when they damaged Oracle's computers with massive unauthorized crawls (Tr. 1180:19-1181:1

27   (Hicks)), and Oracle's damages expert explained that those customers accounted for $14.4

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    million of Oracle's lost profits.  Oracle has admitted evidence showing the value of these extracts

2    to attracting customers.  *E.g.*, PTX 206; 482.

3         *Fifth*, Rimini's denial that Oracle's systems suffered harm is contrary to the evidence.

4    Rimini's unauthorized access harmed Oracle's systems, causing slowdowns, errors, and

5    deadlocks, and eventually crashing Oracle's server.  Tr. 1172:9-15, 1174:5-1175:1, 1179:9-15

6    (Hicks); Tr. 1210:22-1211:10 (Renshaw).  Rimini used the IDs for multiple customers to crawl

7    Oracle's website, causing more than 184,000 deadlocks.  Tr. 1180:19-1181:4 (Hicks).  Rimini's

8    crawls led to errors and eventually crashed Oracle's systems.  Tr. 1201:14-1202:11; 1210:22-

9    1211:10 (Renshaw); PTX 665, 669.

10        *Finally*, the state computer law claims contain extra elements (requiring computer

11   misconduct) and protect qualitatively different rights (e.g., the right to be free from unauthorized

12   computer intrusions).  They are not preempted.  *Craigslist, Inc. v. Autoposterpro, Inc*., No. CV

13   08 05069 SBA, 2009 WL 890896, at *2-3 (N.D. Cal. Mar. 31, 2009) (analyzing and rejecting

14   copyright preemption over the CDAFA).

15   **C.    Defendants' Causation Argument Is Contrary To Law And To The Trial Record**

16            **1.    Oracle's Lost Profits Showing Meets All Applicable Legal Standards**

17        Facing judgment for years of wrongdoing and free-riding on Oracle's intellectual

18   property, Rimini seeks an impossible standard to avoid compensatory damages for its

19   wrongdoing.  *Palmer v. Conn. Railway & Lighting Co*., 311 U.S. 544, 560-61 (1941).

20        Oracle's rigorous damages showing meets any applicable standard.  As a general matter,

21   plaintiffs are not "obligated to prove their losses with precision."  *Pac. Shores Properties, LLC v.*

22   *City of Newport Beach*, 730 F.3d 1142, 1170-71 (9th Cir. 2013), *cert. denied sub nom. City of*

23   *Newport Beach, Cal. v. Pac. Shores Properties, LLC*, 135 S. Ct. 436 (2014).  Once a plaintiff

24   establishes "the *fact* of damages, less certainty (perhaps none at all) is required in proof of the

25   *amount* of damages.  While the proof of the *fact* of damages must be certain, proof of the *amount*

26   can be an estimate, uncertain or inexact."  *Mid-America Tablewares, Inc v. Mogi Trading Co.*,

27   100 F.3d 1353, 1367 (7th Cir. 1996) (quoting Robert L. Dunn, *Recovery of Damages for Lost*

28   *Profits* § 1.3 at 11) (emphasis in original).  A jury is "entitled to determine the precise quantum

1    of damages by drawing 'just and reasonable' inferences from the evidence[.]"  *Pac. Shores*

2    *Properties*, 730 F.3d at 1171.

3          Rimini attempts to sidestep this settled law by claiming that "causation" requires proof

4    for "*each* customer" and "*each* lost sale."  Mot. 3 (citing *Oracle Corp. v. SAP AG*, 765 F.3d 1081

5    (9th Cir. 2014) ("*SAP AG*") and *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir.

6    2004)).  Rimini is incorrect as discussed below.

7          *Polar Bear* "reaffirm[ed] the principle" that the requirements for copyright lost profits are

8    "akin to tort principles of causation and damages" discussed above.  *Polar Bear Prods,* 384 F.3d

9    at 708-09 (citing *Mackie v. Rieser*, 296 F.3d 909, 915 & n.6 (9th Cir. 2002)).  If anything,

10   copyright damages "should be broadly construed to favor victims of infringement."  *On Davis v.*

11   *The Gap Inc.*, 246 F.3d 152, 164 (2d Cir. 2001), *block quoted and cited three times with*

12   *approval at SAP AG*, 765 F.3d at 1088; *see also Polar Bear*, 384 F.3d at 709 (an infringer "is in

13   no better position to haggle [ . . . ] than an ordinary thief").

14         And in *SAP AG,* the Ninth Circuit's holding reversed the district court and *increased*

15   Oracle's lost profits damages to $356.7 million *based on substantially the same methodology* as

16   Oracle presented to the jury here.  765 F.3d at 1094-1095.

17              **2.      Oracle Showed That Defendants Caused Oracle's Harms**

18         Rimini's entire business model was infringement. Oracle proved—through admissions

19   from Ravin and others, from Rimini documents, and through expert and documentary

20   evidence—that Rimini's massive infringement enabled it to obtain early customers and grow

21   with minimal investment.   Without its short-cuts Rimini could *never* have grown beyond what

22   Rimini's own documents recognize as the small world of unstable and minimally relevant niche

23   players in third-party support.  *E.g.*, Tr. 1453:22-1476:6 (Maddock).  Rimini obtained its first

24   customers who became references through infringing means.  Tr. 1920:10-1921:5 (Dean)

25   ("Rimini's entire business model was based on the allegations of wrongdoing from the very first

26   minute").  Rimini simply could not have afforded the investment required.  Tr. 443:4-445:6,

27   524:23-525:12, 526:16-527:3, 531:24-534:1 (Ravin).  The evidence shows that this illegality

28   gained Rimini its first customers and references and its most important customers and most

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    common references, and was then necessary to Rimini's later growth.  PTX 2155; Tr. 381:10-

2    381:25, 443:4-20 (Ravin); 1938:17-1941:3 (Dean);  Tr. 214:16-216:19, 233:15-233:24 (Davis).

3         Oracle likewise proved a pattern and practice of lying to customers about what Rimini

4    did and how Rimini operated.  Rimini *admits* that it could never have won any accounts if

5    customers did not believe the lies.  Tr. 312:2-15 (Ravin).  Rimini did so through "standard

6    messaging"—consistent, repeated lies to customers and prospective customers.  *E.g.,* Tr. 319:10-

7    14, 453:20- 454:10, 471:24-472:4, 547:23-548:1 (Ravin); 1396:10-14 & 1398:2-5, 1398:20-

8    1399:7, 1406:10-1407:13, 1434:21-24  (Maddock); PTX 241; 5352; *see also* Tr. 1412:6-10 &

9    1414:9-12 (Maddock) (admitting that Rimini had no legitimate basis for its falsehoods).

10   Customers relied on that deception for reasons that are common to all customers: "Was as it

11   important to you to hear from Rimini Street in making your decision to sign with Rimini Street

12   that they would use your software to you and you only? A. Oh, yes.   Q. Why was that

13   important? A. Because we have the contract with Oracle or PeopleSoft, and that would violate

14   that contract."  Tr. 2061:25-2062:8 (Strong); Tr. 1703:23-1075:20 (Yourdon): *see also, e.g.,* Tr.

15   1389:14-1390:1 (Higa); 1528:19-1529:2 (Carter); Tr. 1533:19-25, 1534:15-21 (Ward); 1705:11-

16   1706:3 (Yourdon).[4]  As Ravin wrote, it "would not matter" if Rimini had the best "resources in

17   the world," because a client "first and foremost must believe they had the right to be with us and

18   use their software . . . or the rest is just noise!"  PTX 554 (ellipses in original); Tr. 1920:10-

19   1921:5 (Dean) (if questions about compliance with Oracle's license are "not answered properly,

20   then [customers] think that they can go to Rimini, and they continue to tell other customers this

21   is okay to do when it's not").

22        To the extent that Rimini did not turn over evidence confirming that it overtly

23   misrepresented its offerings to any particular client, Oracle has established (1) a pattern and

24   practice of misrepresentations providing an ample basis for the jury's verdict, *e.g.* Tr. 1398:20-

25   _____

26   [4] As Rimini's own counsel put it, it is simply "common sense" that no customer would have
     contracted with Rimini if Rimini had told the truth about its operation and systematic illegal
27   conduct.  Tr. 20:8-20.  It is curious that Rimini now argues the jury cannot infer from the
     customer depositions played at trial—and from expert testimony and Rimini's own admissions—
28   that Rimini's other customers would likewise have not gone to Rimini if its lies, deception, and
     computer violations had been disclosed.

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1399:7, 1400:17-20, 1423:1-20, 1431:20-1432:8 (Maddock); (2) a chain of references leading back to foundational clients and references that were misled, Tr. 373:8-375:1, 450:5-453:15, 536:25-539:5, 694:15-695:3 (Ravin), 1706:4-1707:3 (Yourdon); or (3) showed that Rimini intentionally misled or failed to disclose that its entire operation was shot-through with wrongdoing.  Tr. 1400:8-1401:1, 1404:2-10 & 1421:20-1422:3 (Maddock) (lies about cross use); *see also* 1407:1-5 (lies about cloning).

Ignoring this, Rimini falsely asserts that Oracle's lost profits damages are premised on an assumption of causation that "every Rimini Street customer" left because of Rimini's misconduct (Mot. 1) or that "none of the Customers that left Oracle" would have gone elsewhere.  Mot. 5. This overlooks the extensive record of pattern-and-practice evidence discussed above, ignores voluminous evidence "specific" to particular customers,[5] and mischaracterizes Oracle's expert testimony.  This is not "interference with the market."  *Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523 (Cal. Ct. App. 1996).  Oracle identified each customer at issue and showed that it had a business relationship and future expectancy with each.

In fact, Oracle's expert Ms. Dean looked at the evidence on a per-customer basis and Ms. Dean excluded certain customers.  For example, Rimini's citations neglect the pages where Ms. Dean explains that she did not assume the entire Rimini customer base, and explains how and why she proceeded on a "per customer basis" to exclude various customers.  Tr. 1778:20-1781:17, 1781:22-1790:7, 1837:5-17, 1843:14-1844:8, 1844:18-1845:17 (Dean); PTX 5469, 5470.  Rimini also overlooks that Ms. Dean applied general and specific attrition rates to discount Oracle's lost profits figure.  That methodology accounted for attrition unrelated to the infringement.  Tr. 1801:17-25, 1804:10-1805:6, 1808:2-6, 1856:19-1857:4 (Dean).

Furthermore, Rimini's admissions corroborate Ms. Dean's opinions and show that they are, if anything, generous to Rimini.  Tr. 548:11-549:11(Ravin) (Ravin confirming that $300m in Oracle lost profits was a reasonable estimate Rimini repeated to numerous third parties); *see also* PTX 3 (investor solicitation) & Tr. 545:21-546:13 (Ravin).

---

[5] *See also, e.g.*, Tr. 375:25 – 376:7 (Ravin) & PTX 29; Tr. 377:4-13 (Ravin); PTX 310; 619; 35; 17; 5459; 23-24; 604; 15; 56, 59; 205.

1    Oracle's approach is more rigorous than the lost profits damages methodologies routinely

2    upheld for both copyright[6] and interference torts[7]—where courts routinely uphold verdicts when

3    experts perform *only* the last step of Ms. Dean's methodology.

4            **3.     There Were No Viable Non-Infringing Alternatives**

5    Defendants misstate the law regarding causation and non-infringing alternatives in

6    copyright cases.  In a copyright infringement action, "once a copyright holder establishes with

7    reasonable probability the existence of a causal connection between the infringement and a loss

8    of revenue, the burden properly shifts to the infringer to show that this damage would have

9    occurred had there been no taking of copyrighted expression."  *Harper & Row Pubs., Inc. v.*

10   *Nation Enters.*, 471 U.S. 539, 567 (1985).  This includes the burden to show the existence of

11   non-infringing alternatives.  5 Modern Scientific Evidence § 45:17 (West 2015) ("Whether any

12   of these harmful effects [of copyright infringement] occurred will depend on whether non-

13   infringing alternatives were available to defendant or other competitors"); *see also Stevens Linen*

14   *Assocs., Inc. v. Mastercraft Corp.,* 656 F.2d 11, 15 (2d Cir. 1981) (remanding copyright case for

15   calculation of damages on grounds that it was defendant's burden to show that its infringement

16   did not cause every one of plaintiff's regular customers to switch to defendant).  Defendants'

17   citations to the burden of proof in patent cases, Mot. 27, are inapposite, and Defendants cite no

18   copyright cases in support of their position on burden-shifting.

19

---

20   [6] *Stevens Linen*, 656 F.2d at 14 ("In establishing lost sales due to sales of an infringing product,
     courts must necessarily engage in some degree of speculation"); *Agence France Presse v. Morel*,
21   No. 10-CV-2730 AJN, 2014 WL 3963124, at *12-13, 15 (S.D.N.Y. Aug. 13, 2014) (reasonable
     for jury to conclude that plaintiffs would have made the number of sales that were made by the
22   infringer); *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.,* 269 F. Supp. 605, 613 (S.D.
     Fla.1966) (awarding lost profits when customer testified she cancelled large order because
23   defendant flooded market with cheap counterfeit), *aff'd* 381 F.2d 735 (5th Cir. 1967) (*per
     curiam*); *see also RSO Records, Inc. v. Peri,* 596 F. Supp. 849, 860 (S.D.N.Y. 1984).
24   [7] *Forro Precision, Inc. v. IBM Corp.*, 673 F.2d 1045, 1052 (9th Cir. 1982) (upholding intentional
     interference jury verdict using future growth projections; applying California law); *Frantz v.*
25   *Johnson*, 116 Nev. 455, 469-70 (2000)  (upholding intentional interference jury verdict;
     explaining that expert permissibly calculated "lost profits for a five-year period . . . by applying
26   the percentage of profit that [the plaintiff] had made from past sales to a reasonable
     approximation of future sales"); *Homoki v. Conversion Svcs., Inc.*, 717 F.3d 388, 399 (5th Cir.
27   2013) ("Extrapolating future profits from past profits is an accepted method of proving lost
     profits" (intentional interference)).
28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    Defendants have introduced little to no evidence regarding the existence of any viable

2    non-infringing alternatives, and the jury is free to disregard any such evidence.[8] Rimini's

3    marketing head, Rowe, testified to one non-infringing alternative (Spinnaker) he considered

4    significant and that was only for JD Edwards; all others combined took only two customers from

5    Rimini. Oracle has introduced more than sufficient evidence to show that no viable, non-

6    infringing alternatives to Rimini existed during the relevant time period. Tr. 1475:19-1476:1

7    (Maddock) (agreeing that Oracle is Rimini's most frequent competitor since TomorrowNow

8    closed), 1477:6-20 (no other third-party support company supported multiple product lines),

9    1488:20-1489:12 (self-support is too risky); 1688:17-1689:25 (Yourdon) (no viable alternatives),

10   1693:5-1396:11 (same); 1790:8-1796:13 (Dean) (same), 1909:1-1912:18 (same); PTX 5350 ("I

11   REALLY hate discounting anything particularly when [we] have no competition") (emphasis in

12   original).  Even if Oracle were to have the burden of proof as Defendants suggest, Oracle has

13   more than met that burden.

14               **4.       Defendants' Remaining "Causation" Arguments Are Irrelevant**

15   Rimini's remaining copyright damages cases are simply inapt.  One rejects a presumption

16   of damages not relevant here. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505,

17   514 n.8 (9th Cir. 1985).  Two discuss a near-total lack of evidence. *Crunchyroll, Inc. v. Pledge*,

18   No. C 11-2334 SBA, 2014 WL 1347492 at *3-4 (N.D. Cal. Mar. 31, 2014) (plaintiff offered "*no*

19   *evidence*" other than some internet posts showing it had some devoted fans); *Cohen v. U.S.*, 100

20   Fed. Cl. 461, 480-81 & n.13 (2011) (summary judgment denied because there was only evidence

21   of a single lost sale).  The other noted that the plaintiff bears the burden—then denied summary

22   judgment to the defendant. *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 25 F.

23   Supp. 2d 395, 401-2 (S.D.N.Y. 1999).

24   Rimini also uses its "causation" conceit to invent theories Oracle never asserted.  Each of

25   these nonexistent theories requires pretending that this is not a trial of Oracle's direct claim

26   against Rimini, but a trial where Oracle attempts to recover on behalf of absent plaintiffs. *E.g.*,

27   [8] Defendants have also represented repeatedly that they will not introduce evidence about
whether TomorrowNow or CedarCrestone was an infringer. *See* Tr. 1615:22-24 (sidebar); Defs'

28   Opp'n to Mot. to Exclude Simmons and Hilliard, Dkt. 835 at 5.

1    Mot. 5 (referencing "due process rights to present individual defenses as to each *claim*").

2    (emphasis supplied)  The Oracle entities are the only plaintiffs, and they assert claims on their

3    own behalf.  There are no absent class members to protect and Rimini is here at trial, free to

4    present any admissible evidence in its defense of its legal rights.  It happens that Oracle suffered

5    through lost customers, as in many  business disputes.  That does not turn this into a

6    representative action, and Rimini's arguments from such cases[9] are irrelevant.

7         **D.**     ***Oracle Is Entitled To Copyright Damages***

8         **1.**     **Rimini's Entire Business Model Depended upon Infringement**

9         Defendants competed with Oracle to provide support for PeopleSoft, JD Edwards, and

10   Siebel software during the time period relevant to this case.  Dkt. 528, 8:7-15 (Undisputed Facts

11   11-15).  As discussed above, Rimini reproduced, distributed, and created derivative works from

12   Oracle's copyrighted support materials in the course of providing their competing support

13   offering.  Defendants nonetheless claim that OIC, the copyright holder, may not recover its lost

14   profits because OIC's lost license fees have "*nothing to do* with the value of its copyright in its

15   software."  Mot. 26.  Not so.

16        Oracle has established that Rimini's support depended upon infringement.  Tr. 164:4-

17   165:6, 217:6-218:5, 219:3-21 (Davis); Tr. 1271:12-1272:4 (Ransom); PTX 6001.  The jury may

18   find that the support that Rimini provided has everything to do with Oracle's copyrighted works.

19        **2.**     **Oracle's Damages Model Is Appropriate**

20        a)     OIC's Sublicense Fees Are Lost Profits

21        A copyright claimant must establish "a causal link between the infringement and the

22   monetary remedy sought."  *Polar Bear*, 384 F.3d at 708.  Before trial began, the Parties

23   stipulated that OIC would have received 39% of any support revenue that Oracle America would

24   have received from sales of support renewals.  Dkt. 528, 18:20-24 (Undisputed Facts 30-32).

25   Oracle seeks the profits that OIC lost as a result of Rimini's infringing support.  *Polar Bear*, 384

26   —————————————————

27   [9] *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (punitives only against direct parties); *Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 33-34 (2014) (no wage-and-hour class premised on invalid statistics); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1108 (1993) (no importing fraud-

28   on-the-market theory from federal securities law under state law).

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    F.3d at 708.  Here, lost profits are properly measured as the sublicense fee that OIC would have

2    received from Oracle America had the relevant customers signed support agreements with Oracle

3    rather than with Rimini.

4           On near-identical facts, the Ninth Circuit has previously held that OIC's share of Oracle

5    America's lost support profits was an appropriate measure of OIC's lost profits.  *See SAP AG*,

6    765 F.3d at 1094-95 (revising remittitur to include $120.7 million lost profits component of

7    Oracle's copyright damages), *affirming in part and vacating and remanding in part Oracle USA,*

8    *Inc. v. SAP AG*, 2011 WL 3862074 at *12 (N.D. Cal. Sept. 1, 2011) (describing the $120.7

9    million as a measure of "Oracle's actual lost support profits").  The Tenth and Eleventh Circuits

10   likewise allow software sublicense fees as measures of actual damages.  *Montgomery v. Noga*,

11   168 F.3d 1282, 1287, 1295 (11th Cir. 1999) (holding that actual damages for distribution of CD-

12   ROMs containing infringing copies of software were properly calculated as a "per copy of the

13   product shipped" sublicense royalty); *Harris Market Research v. Marshall Marketing and*

14   *Communications, Inc.*, 948 F.2d 1518, 1521, 1525 (10th Cir. 1991) (holding that "projected

15   licensing and processing fees" under a software sublicense agreement were "properly admissible

16   under an actual damages claim for copyright infringement").

17                          b)      Oracle's Database Damages Calculations Are Reasonable

18          Rimini's half-hearted attack on Oracle's database damages claim (Mot. 29) ignores

19   Dean's well-reasoned analysis and should be rejected.  Dean analyzed Oracle's database

20   damages under both a lost profit and hypothetical license analysis, using Oracle's public Oracle

21   Database license price list.  Tr. 1812:8-1821:4 (Dean); *SAP AG*, 765 F.3d at 1093 (indicating

22   damages based on benchmarks licenses are reliable).[10]  Dean correctly rejected Rimini's asserted

23   "alternatives" because they did not reflect the actual use Rimini made of the Database software

24   and, in any event, Rimini needed to build environments using Oracle Database to mirror the

25   customers' environments.  Tr. 1947:8-1948:20 (Dean).

26   _____

27   [10] The evidence will show that Rimini's damages expert also measures Oracle's database
     damages using Oracle's public list price as a benchmark.  Dkt. 603, Ex. E (Rimini Damages
     Expert Report) ¶¶ 153-54.  This was Oracle's standard database pricing.  Tr. 881:10-20, 883:9-
28   884:3 (Allison).

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1      c)      Oracle Is Entitled to Infringer's Profits

2      On infringer's profits, Oracle need only "present proof only of the infringer's gross

3   revenue, and the infringer is required to prove his or her deductible expenses and the elements of

4   profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see also*

5   *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 F. App'x 752, 758 (9th Cir. 2010)

6   ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff")

7   (*quoting Frank Music Corp., Inc.*, 772 F.2d at 514).

8      Oracle far surpassed its burden.  Ms. Dean analyzed and provided evidence of the

9   revenues Rimini earned up to February 2014 from its infringing service for each individual

10   customer at issue.  PTX 5470.  The evidence was overwhelming that Rimini's entire business

11   model was based on infringement, and that the support revenues Rimini earned were the result of

12   that infringement.  *See* Section II, above (describing business model based on infringement);

13   PTX 65 ("making a crap load of money from [Oracle's] free stuff."); PTX 554 ("must believe

14   they had the right to be with us and use their software . . . or the rest is just noise!").  Dean was

15   not "unsure" about what portion of Rimini's PeopleSoft, JD Edwards, and Siebel revenues were

16   related to Rimini's infringement; she was very clear that the evidence showed that they all were.

17   Tr. 1920:13-15 (Dean) ("my opinion is that Rimini's entire business model was based on the

18   allegations of wrongdoing from the very first minute").  Nonetheless, her customer-specific

19   analysis allows the jury to apportion damages however it sees fit.  Contrary to Rimini's assertion,

20   that is more than sufficient for "the jury to determine which damages were attributable to

21   infringement." Mot. 28:4-6.

22      Given Rimini's burden to prove apportionment and deductible costs, Rimini's argument

23   that it has no profits to disgorge is for the jury.  Ravin also testified that its profit margin was 50

24   percent. Tr. 708:18-709:3.  And, as explained in Oracle's objections to Rimini's proposed jury

25   instructions, the jury may find Rimini a willful infringer and decline to deduct Rimini's overhead

26   expenses. Dkt. 768 at 47:3-18; *see* Section II and IV(2), above (willfulness evidence).

27      Rimini misstates the evidence when it claims that Oracle's "figures are entirely

28   duplicative of Rimini's actual damages award." Mot. 28:14-16.  Dean explicitly limited her

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    opinion on infringer's revenues that should be awarded to customers who were not included in

2    her lost profits calculations, ensuring no economic overlap.  PTX 5470 (identifying non-

3    duplicative customers); Tr. 1844:18-1845:17 (Dean) (explaining to the jury how to avoid

4    awarding duplicative damages).[11]

5    **E.       *Oracle Is Entitled To Equitable Relief***

6           Rimini says that California statutory Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

7    Code § 17200, is an "equitable claim" that is available only if the remedy at law is inadequate.

8    Mot. 18.  Rimini is wrong.  Relief under the UCL is statutory (§ 17203) and provides the Court

9    broad "cleansing power" not available under traditional legal theories.  *Cortez v. Purolator Air*

10   *Filtration Prods. Co.,* 23 Cal. 4th 163, 179 (2000); *Fletcher v. Security Pac. Nat'l Bank,* 23 Cal.

11   3d 442, 449 (1979).

12          On the merits, the UCL addresses a variety of misconduct through its three separate

13   prongs--"unfair", "unlawful", or "fraudulent"--each of which uses a different test.  *Cel-Tech*

14   *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 & n.11 (1992).  Rimini dedicates

15   most of its argument to a prong Oracle does not press (the "unfairness" prong). Mot. 18.  Oracle

16   has established the "unlawful" prong because the UCL "borrows" violations of nearly any state

17   or federal law as predicate conduct.  *Cel-Tech,*  20 Cal. 4th at 180.  Thus, once Oracle has

18   satisfied the elements of *any* claim asserted (other than copyright infringement) it is eligible for

19   relief under the UCL.  And by showing that Rimini's acts or practices confused or deceived its

20   customers or the public, Oracle has established a UCL claim under the "fraudulent" prong.

21   *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

22          As for preemption, Oracle's UCL theories are premised on fraud and computer

23   violations, which invoke qualitatively different rights and involve extra elements.  *See Computer*

24   *Management,* 220 F.3d at 404-5; *Haggarty v. Wells Fargo Bank, N.A.*, No. C 10-02416 CRB,

25   2011 WL 445183, at *5 (N.D. Cal. Feb. 2, 2011) (UCL claim not preempted when premised on a

26   claim that is not preempted).

27   [11] Finally, *SAP AG,* 765 F. 3d at 1089-1091, has no application here, as in that case, the court
     found that as a factual matter, the hypothetical license accounted for the infringer's profits.

28   There is no such hypothetical license here.

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1   Oracle's separately pled theories of equitable relief (unjust enrichment and an

2   accounting) are properly addressed after the jury's verdict.

3          **F.**       ***Oracle Is Entitled To Punitive Damages***

4   As stated in Oracle's trial brief, Oracle seeks punitive damages in connection with

5   Oracle's intentional interference, California's Computer Data Access and Fraud Act

6   ("CDAFA"), and Nevada Computer Crime Law ("NCCL") claims.  Nev. Rev. Stat. § 42.005;

7   *SMSW Enters., LLC v. Halberd Corp.*, No. CV 13-01412 BRO SPX, 2015 WL 1457605, at *14

8   (C.D. Cal. Mar. 30, 2015) ("Under Nevada law, a plaintiff may seek recovery for tortious

9   interference with prospective economic advantage. . . . Such recovery may include . . . punitive

10   damages[.]"); Cal. Civ. Code § 3294(a); *Ramona Manor Convalescent Hosp. v. Care Enters.*,

11   177 Cal. App. 3d 1120, 1141 (Cal. Ct. App. 1986) (punitive damages available for intentional

12   interference); Nev. Rev. Stat. § 205.511(1)(b) (civil plaintiff may recover punitive damages for

13   NCCL claims); Cal. Penal Code § 502(e)(4) (permitting court to award "punitive or exemplary

14   damages" in CDAFA claims).

15   The evidence establishes a strong basis to award punitive damages on these claims.  As

16   explained above, Defendants intentionally engaged in unauthorized downloading and unlawful

17   interference.  These were not mistakes:  Defendants intentionally accessed Oracle's systems

18   using unauthorized means, causing harm to Oracle's systems, and they intentionally lied to and

19   deceived customers.  They continued to engage in this conduct even after they were told the

20   conduct was "illegal" and after they knew of the TomorrowNow lawsuit.[12]  The evidence

21   warrants a substantial award of punitive damages.  Dkt. 746 at 31-32.

22   Rimini's arguments are mostly premised on the claim that it "acted with a reasonable

23   good-faith belief that [its] conduct was not illegal" by means of self-serving citations to Ravin's

24   testimony.  Mot. 19-20.  Rimini's good-faith arguments, to the extent that they are at all

25   persuasive, only go towards Rimini's infringing copyright conduct.  Oracle does not seek

26   

---

27   [12] Oracle does not rely on Ravin's previous employment with TomorrowNow and the subsequent lawsuit brought against TomorrowNow for Oracle's argument that the Defendants acted with malice and conscious disregard.  As explained above, the Defendants' actions on their own sustain claims for punitive damages.

28   

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    punitive damages in connection with the copyright claim, and these arguments are all meritless.

2    None of its arguments show that Rimini could lie to customers or illegally access Oracle's

3    systems in good faith.  Rimini references industry standards, but there is no evidence of any

4    industry standard of lying to customers and committing computer crimes.

5         For the unauthorized computer access claims, Rimini makes a fruitless attempt to argue

6    that Oracle cannot recover punitive damages by framing them as contract claims.  Mot. at 19.

7    These are not contract claims, and the statutes expressly permit an award of punitive damages.

8    Nev. Rev. Stat. § 205.511(1)(b); Cal. Penal Code § 502(e)(4).  Rimini acted with conscious

9    disregard of the law and persisted in its unlawful downloading even after its customer told it,

10   bluntly: "Apparently this is illegal."  PTX 43.  Ravin even testified that although he was aware

11   that the downloading was not authorized, he decided to continue the automated downloads.  Tr.

12   481:24-483:5 (Ravin).  Defendants' blatant disregard for the law provides ample grounds for a

13   substantial award of punitive damages on these claims.

14        There is also no unconstitutional "lack of fair notice" with these claims.  Mot. 21.  The

15   Constitution prohibits punishment if rendered under a statute or regulation that "fails to provide a

16   person of ordinary intelligence fair notice of what is prohibited."  *FCC v. Fox Television*

17   *Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) (quotations omitted).  Ravin testified that he *knew* at

18   the time that the computer access was unauthorized.  Tr. 482:18-19 ("Yes, I made the decision to

19   continue to use the automated [tools] despite those changes"), 726:20-23 ("Q: But you knew they

20   had changed the rules?  A: Yes.  Q: But you didn't stop using automated tools?  A: No [....]").)

21   As a result, Rimini's cited authorities are completely inapposite.  *See Fox Television*, 132 S. Ct.

22   at 2317-18 (fleeting expletives); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156,

23   1267 (2012) (agency regulation of pharmaceutical sales representatives under the Fair Labor

24   Standards Act); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422, 423 (2003)

25   (defendant should not be penalized for harm done to non-parties); *Landgraf v. USI Film Prods.*,

26   511 U.S. 244, 247 (1994) (punitive-damages provision does not apply to case "that was pending

27   on appeal when the statute was enacted").

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1    *G.      Defendants Are Not Entitled to Judgment Regarding Injunctive Relief Or*

2    *Prejudgment Interest*

3         After the jury reaches a verdict, Oracle plans to ask the Court to issue a permanent

4    injunction and also award prejudgment interest.  There is no basis for granting Defendants

5    judgment on that relief, at this stage or based on the evidence.

6         Injunctive relief is necessary and appropriate.  Rimini's claim that it "ceased" its

7    unlawful conduct is false.  As detailed in Oracle's complaint in the second action (*Rimini St., Inc.*

8    *v. Oracle Int'l Corp.*), Ravin and Rimini are continuing to infringe Oracle's copyrights.  The trial

9    evidence shows willful infringement by Ravin and Rimini, continuing even after TomorrowNow

10   shut down and after Oracle sued Rimini, which warrants injunctive relief.  *E.g.*, *Broad. Music,*

11   *Inc. v. Blueberry Hill Family Restaurants, Inc.*, 899 F. Supp. 474, 483 (D. Nev. 1995) (issuing

12   permanent injunction where defendant's history of unlawful conduct did not "inspire

13   confidence" that there was "no threat of future infringements"); Dkt. 746 at 24-25 (explaining

14   basis for seeking permanent injunctive against Rimini and Ravin after jury renders verdict).

15        Prejudgment interest is also warranted.  Copyright infringement cases are ones where

16   "prejudgment interest should be awarded as a matter of course."  *Murphy v. City of Elko*, 976 F.

17   Supp. 1359, 1362 (D. Nev. 1997) (citing *Frank Music Corp.*, 886 F.2d at 1551–52).  This is

18   especially true in cases such as this, involving undisputed copyright infringement.  *Polar Bear*,

19   384 F.3d at 718 ("It is not difficult to imagine a case involving undisputed copyright

20   infringement—as is the case here—in which prejudgment interest may be necessary to

21   discourage needless delay and compensate the copyright holder for the time it is deprived of lost

22   profits or license fees").  There was never any "reasonable dispute" as to whether Rimini was

23   infringing, and an award of prejudgment interest is appropriate.  *See* Dkt. 746 at 29.

24   *H.      There Is No Basis To Order A New Trial*

25        With their Rule 50 motion, Defendants include and unfounded request for a new trial

26   based on the introduction of certain evidence concerning TomorrowNow and the exclusion of

27   certain "attorney letters."  Mot. at 29-30.  The parties previously briefed and argued these issues

28   (*e.g.*, Dkt. 797, 799), and the Court's evidentiary rulings are well-founded——in fact

26

1  conservative about what may be admitted.  Defendants' claims of due process violations and

2  prejudice (Mot. at 30) are baseless, and there are no grounds for a new trial.  Fed. R. Civ. P. 61

3  ("Unless justice requires otherwise, no error in admitting or excluding evidence [...] is ground for

4  granting a new trial [....]").  The Court correctly admitted limited evidence concerning

5  TomorrowNow only after Defendants opened the door to that evidence.  Tr. 737:12-25 (Court:

6  "Mr. Ravin has clearly opened the door"); Tr. 752:14-754:24.  The Court provided limiting

7  instructions to the jury (Tr. 944:19-945:17), and the Court will provide additional instructions

8  before the jury renders any verdict.[13]  The Court also ordered redactions to evidence to eliminate

9  any undue prejudice.  Tr. 496:25-497:19, 501:22-502:5.  Given that Defendants chose to open

10  the door, and the extraordinary steps taken by Oracle's counsel and the Court to avoid any undue

11  prejudice based on this evidence, there is no basis for any new trial.  *E.g.*, *Ateliers de la Haute-*

12  *Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 780-81 (D. Del. 2015) (denying

13  motion for new trial where defendant opened door to evidence regarding decision in other

14  action); *Wessinger v. Westinghouse Elec. Co.*, No. 3:06-1346, 2008 WL 2077786, at *3-*4

15  (D.S.C. May 8, 2008) (no undue prejudice where party opened the door).

16  **V.     CONCLUSION**

17         For the reasons stated above, Defendants' Rule 50(a) Motion For Judgment As A Matter

18  Of Law should be denied.

19

20  Dated:  September 30, 2015

21                                                     MORGAN, LEWIS & BOCKIUS LLP

22                                                     By:        /s/ Thomas S. Hixson
                                                                Thomas S. Hixson
23                                                          Attorneys for Plaintiffs
                                                              Oracle USA, Inc.,
24                                                       Oracle America, Inc. and
                                                       Oracle International Corporation
25

26

---

27  [13] Defendants' claim of undue prejudice is particularly unfounded given that Oracle proposed a
     preliminary instruction on TomorrowNow (Dkt. 752 at 3) and Defendants argued against any
28  such instruction (Dkt. 766 at 4).

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW

1  **CERTIFICATE OF SERVICE**

2  I hereby certify that on the 30th day of September, 2015, I electronically transmitted the

3  foregoing ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S

4  RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW to the Clerk's Office using

5  the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in

6  this matter; all counsel being registered to receive Electronic Filing.

7

8                                                    /s/ Thomas S. Hixson
                                                     _____
9                                                    Thomas S. Hixson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S AND SETH RAVIN'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW