| | |
|---|---|
| SHOOK, HARDY & BACON LLP<br>B. Trent Webb, Esq. (*pro hac vice*)<br>Peter Strand, Esq. (*pro hac vice*)<br>Ryan D. Dykal, Esq. (*pro hac vice*)<br>2555 Grand Boulevard<br>Kansas City, MO 64108-2613<br>Telephone: (816) 474-6550<br>Facsimile: (816) 421-5547<br>bwebb@shb.com<br><br>Robert H. Reckers, Esq. (*pro hac vice*)<br>600 Travis Street, Suite 1600<br>Houston, TX 77002<br>Telephone: (713) 227-8008<br>Facsimile: (713) 227-9508<br>rreckers@shb.com<br><br>GIBSON, DUNN & CRUTCHER LLP<br>Mark A. Perry (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: (202) 955-8500<br>mperry@gibsondunn.com<br><br>Blaine H. Evanson (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: (213) 229-7228<br>bevanson@gibsondunn.com | LEWIS ROCA ROTHGERBER LLP<br>W. West Allen (Nevada Bar No. 5566)<br>3993 Howard Hughes Parkway, Suite 600<br>Las Vegas, NV 89169<br>Telephone: (702) 949-8200<br>wallen@lrrlaw.com<br><br>RIMINI STREET, INC.<br>Daniel B. Winslow (*pro hac vice*)<br>6601 Koll Center Parkway, Suite 300<br>Pleasanton, CA 94566<br>Telephone: (925) 264-7736<br>dwinslow@riministreet.com<br><br>John P. Reilly (*pro hac vice*)<br>3993 Howard Hughes Parkway, Suite 500<br>Las Vegas, NV 89169<br>Telephone: (336) 908-6961<br>jreilly@riministreet.com |

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC. and ORACLE INTERNATIONAL CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC. and SETH RAVIN,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S MOTION FOR RECONSIDERATION ON THE ADMISSIBILITY OF THEIR POST-2011 CONDUCT** |

This Court ruled that Rimini Street witnesses are not permitted to testify to any conduct occurring after December 31, 2011, even precluding Rimini from telling the jury that it has implemented an all-remote model. However, Oracle's cross-examination of Mr. Benge on Monday, September 28, 2015, opened the door to admission of this testimony, because it suggested that 1) Rimini did not alter its practices even after it received the Court's 2014 summary judgment ruling, and 2) Rimini cannot operate with solely remote environments (which it has done since August 2014). Both facts are demonstrably untrue, yet the Court's order barring post-2011 evidence prevents Rimini from defending itself against Oracle's allegations in at least two ways:

*First*, Oracle's cross-examination suggested to the jury that Rimini did not halt the accused conduct even after the Court's 2014 summary judgment ruling. At one point, counsel explicitly asked:

> Q. Okay. So it's fair to say that you *now know* that the Court has found these violations.
> A. Yes.
> …
> Q. And that you knew that when counsel asked you that series of questions beginning 'if you had known that.'
> A. Yes.

9/28 Tr. 2160:2-9 (emphasis added). Oracle's cross-examination was full of similar questions. *See*, *e.g.*, 9/28 Tr. 2152:16-20 ("Q. So to be very clear, this calculation that you made, that your attorney referred to as your opinion, you made for the purpose of litigation, not because Rimini had actually adopted a full remote-only support process, between the dates of 2006 to 2011"); 2158:10-12 ("Q. Has Mr. Ravin ever told you that this Court has already found that Rimini Street violated PeopleSoft's -- Oracle's PeopleSoft copyrights?"); 2159:14-16 ("Q. How about this, did he tell the company that the Court has already found that Rimini violated Oracle's database copyrights?"); 2164:12-20 ("Q. So you assume that Rimini Street would retain all its customers even though customers would have to build their own environments, they would have to administer the environments, Rimini Street may not be building any environments, and they'd have to create their own backups. Is that right? / A. Yes. / Q. And you made this assumption without consulting a single customer; right?").

This line of questioning served no purpose other than to suggest to the jury that Rimini still engages in infringing conduct notwithstanding this Court's rulings, which is highly relevant to Oracle's claims for punitive damages. Under the circumstances, it plainly opens the door to a rebuttal from Rimini, explaining to the jury that, in response to the court's February 13 summary judgment ruling, it now uses an all-remote model and has done so since August 2014. *See*, *e.g.*, *Lyons v. Sinclair*, 2014 WL 3055354, at *14 (W.D. Wash. July 7, 2014) (noting that state trial court had excluded certain evidence because it did not want the defendant to "take advantage of the exclusion" ruling in its favor "to convey a false impression to the jury"); *Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1208 (11th Cir. 1995) (affirming district court's finding that party opened door to evidence of subsequent remedial measures where it "took unfair advantage of the court's in limine ruling").

***Second***, although Oracle stated at the outset of its cross-examination that it was asking Mr. Benge only about his role in events before his deposition in June 2012 (9/28 Tr. 2150:19-23), its questions were not so limited, and were clearly designed to mislead the jury into believing that remote support is not feasible and that Rimini could not survive even now without its allegedly infringing practices. For example, Oracle suggested that Rimini's business would suffer if it used an all-remote model because:

– Clients would have to build and host their own environments at greater cost and inconvenience to themselves (9/28 Tr. 2161:24-2163:12);

– Rimini would have to "build[] environments and updates individually from scratch," which would cost at least twice as much money and take twice as long (*id.* 2173:8-11);

– Rimini would be deprived of use of its archives (*id.* 2176:24-2177:1);

– Rimini would have had to double the number of its employees to do an all-remote model (*id.* 2173:16-20), but could not have done so because of the "competitive" international IT market (*id.* 2195:12-15) and "gaps in qualified candidates" (*id.* 2196:21-15);

– Rimini would have had to "rely on the client to start and stop the servers" which might make it difficult to attend even to simple tasks like "extending the table space" (*id.* 2209:15-20);

1  – Rimini would have had to deal with "security headache[s]" (*id*. 2209:24) and "challenges
2  with automation" (*id*. 2210:4).

3  In fact, Rimini has overcome all of these supposed hurdles. It operates today through
4  complete remote hosting. Yet under the Court's order, Rimini cannot tell the jury this highly
5  relevant fact.

6  On Tuesday, September 29, 2015, Oracle sought to compound the prejudice to Rimini by
7  introducing evidence that CedarCrestone had admitted to infringement for unknown reasons. 9/29
8  Rough Tr. 177:16-17, 19-21 (arguing that it is "directly relevant to show that [CedarCrestone]
9  admitted copyright infringement" because it "goes to the issue of who are the non-infringing or the
10 infringing alternative who may be considered"); 181:11-17 (court ruling that Oracle can cross-
11 examine about CedarCrestone's infringement admissions); *see also id.* 188:10-14 (admitting
12 questioning from Oracle's counsel that CedarCrestone is "afraid that if Oracle finds out [about its
13 "implementation and upgrade" business] they will "cut [it] off"). Permitting Oracle to introduce that
14 evidence will only further implant in the jury's mind the myth that it is not possible to provide
15 support for the relevant Oracle products without infringing.

16 By working to cement the misimpression that Rimini could not operate a remote-only model,
17 Oracle has opened the door to a rebuttal from Rimini in order to counter the patently false inferences
18 Oracle has created. *See*, *e.g.*, *Nguyen v. Sw. Leasing & Rental, Inc*., 282 F.3d 1061, 1067-68 (9th
19 Cir. 2002) ("the introduction of inadmissible evidence by one party allows an opponent, in the
20 court's discretion, to introduce evidence on the same issue to rebut any false impression that might
21 have resulted from the earlier admission") (quotations omitted); *United States v. Wales*, 977 F.2d
22 1323, 1326 (9th Cir. 1992) (finding that party "opened the door" to rebuttal evidence about falsity of
23 certain documents where party's counsel argued that such documents were "all legitimate"). *Cf.*
24 *Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (finding denial of due process where prosecutor elicited
25 evidence that "gave the jury [a] false impression" even though the prosecutor knew the truth).

26 The Court should therefore permit testimony on the limited fact that Rimini has used an all-
27 remote model since August 2014 following the Court's February 2014 summary judgment ruling.

28

- 3 -

457839 v1

| | | |
|---|---|---|
| DATED: | September 30, 2015 | SHOOK, HARDY & BACON |

By: /s/ Robert H. Reckers
Robert H. Reckers

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

- 4 -

457839 v1

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: */s/ Robert H. Reckers*
Robert H. Reckers

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

- 5 -

457839 v1