| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>WILLIAM ISAACSON (*pro hac vice*)<br>KAREN DUNN (*pro hac vice*)<br>5301 Wisconsin Ave, NW<br>Washington, DC 20015<br>Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131<br>wisaacson@bsfllp.com<br>kdunn@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>kringgenberg@bsfllp.com<br><br>*Attorneys for Plaintiffs*<br>Oracle USA, Inc., Oracle America, Inc., and<br>Oracle International Corp. | MORGAN, LEWIS & BOCKIUS LLP<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>One Market Street<br>Spear Street Tower<br>San Francisco, CA 94105-1596<br>Telephone: (415) 442-1000<br>Facsimile: (415) 442-1001<br>thomas.hixson@morganlewis.com<br>kristen.palumbo@morganlewis.com<br><br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>ORACLE CORPORATION<br>500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070<br>Telephone: (650) 506.4846<br>Facsimile: (650) 506.7114<br>dorian.daley@oracle.com<br>deborah.miller@oracle.com<br>jim.maroulis@oracle.com |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>          Plaintiffs,<br>     v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>          Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S OPPOSITION TO DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S MOTION FOR RECONSIDERATION ON THE ADMISSIBILITY OF THEIR POST- FEBRUARY 2014 CONDUCT**<br><br>**[REDACTED]** |

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

I.    RIMINI INJECTED THE COURT'S RULINGS INTO THIS TRIAL FROM THE VERY BEGINNING. ............................................................................................ 5

II.   ORACLE'S EVIDENCE AT TRIAL IS ENTIRELY WITHIN THE BOUNDS THAT THE COURT SET. ................................................................................................ 7

    A.   The Orders Excluding Post-February 2014 Evidence Specifically Contemplated That the Parties Would Try the Issue Of What The Parties Would Have Expected in 2006 Based on the Discovery Record in this Case. ........................................................................................................................ 7

    B.   Oracle's Questioning of Mr. Benge Did Not Open the Door ................................ 8

    C.   Reversing the Court's Prior Rulings Would Be Unfair, Confusing, and Ignore Rimini's Past False Testimony. ................................................................. 10

    D.   Testimony Regarding CedarCrestone Did Not Open the Door ........................... 11

CONCLUSION ..................................................................................................................... 12

Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation (together, "Oracle") have steadfastly adhered to the Court's orders regarding testimony on Rimini's post-February 2014 practices. Rimini's Motion for Reconsideration ("Mot.") claims Oracle opened the door to Rimini's claimed non-infringing practices after 2014 by:

(1) asking Rimini witness Jim Benge for his assumptions and understandings at the time he provided Rimini's damages expert, in 2012, with crucial input to Rimini's damages calculations, despite expressly cautioning the witness repeatedly that the questions were only regarding the time period of discovery and through his deposition in June of 2012; and

(2) cross-examining David Rowe by asking about his beliefs concerning CedarCrestone in 2008.

Rimini argues Oracle's examinations "suggest to the jury that Rimini still engages in infringing conduct." (Mot. At 1). But that is simply wrong. Oracle has not questioned any witnesses about what they did in 2014 or after, what they did or did not do in response to the Court's orders, or anything else that is over the line the Court has drawn.

There have been references at trial to the Court's summary judgment orders, but Rimini cannot point the finger at Oracle for putting that before the jury. Rimini asked the Court to tell the jury about those orders in voir dire, and the Court accommodated Rimini's request. And Rimini witnesses have repeatedly referred to those orders, unsolicited, in their testimony. Rimini cannot claim that Oracle opened the door by referring to something the jury had already learned.

Rimini has tried and failed no fewer than four times to convince Judge Leen and this Court to allow it to tell the jury it has supposedly stopped infringing in 2014 -- an assertion that Oracle will test during the *Rimini II* case but has not yet been able to test with adequate discovery. Nothing of substance has changed since the last time the Court rejected those Rimini's efforts to introduce post-February 2014 evidence in this case, and the result should be the same: denied.

///

///

1

**BACKGROUND**

Fact discovery in this case closed at the end of 2011.  Order Regarding Case Management Conference ("Order Re CMC"), Dkt. 515 at 2.  The necessary fact and expert discovery was extensive, to say the least, in no small part because many of the claims and assertions of Rimini and its witnesses turned out to be false.  Among other things, Rimini witnesses claimed they had never heard of a "software library."  Tr. 1225:13-17 (Baron Dep.) ("Q. Do you -- are you familiar with a location on Rimini Street's network that's referred to as the -- the software library? A. I haven't heard the term 'software library'"); Motion for Evidentiary Sanctions for Spoliation, Dkt. 316 at Ex. 10 (citing Chiu deposition: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆).  But after poring through emails and technical documents, Oracle was able to establish that a software library existed and Rimini had destroyed it, in large part, on the eve of and anticipating litigation. Sealed Order, Dkt. 466 at 16 ("The court finds that Rimini spoliated evidence when it deleted the software library in January 2010.").

Likewise, Rimini witnesses claimed that Rimini independently created software updates for each customer.  Tr. 804:20-805:6 (Ravin deposition)("Q. Does Rimini Street ever use software that was originally obtained from one customer to assist in supporting a different customer? A. No. Q. Has it ever occurred that one customer's software environment has been used to develop a fix or update that was ultimately delivered to a different customer?...A. No."); Declaration of Kieran P. Ringgenberg in Support of Plaintiffs Oracle's Opposition to Defendants' Motion for Reconsideration on the Admissibility of their Post-2014 Conduct ("Ringgenberg Decl.") Ex. 1 (Rimini's Brian Slepko testifying as a 30(b)(6) witness) at 76:4-12 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *see also id*. at 77:7-16; 82:9-18; 95:2-96:9; 97:9-20.  But after years of painstaking work in discovery and with

experts, Rimini was finally forced to admit the truth at trial: "...We reused it all the time. Yes. Q. So you admit all that stuff? A. Yes." Tr. 552:5-:7 (Ravin).

In 2014, the Court granted, in part, Oracle's motions for summary judgment. Rimini has asserted that it changed its practices to conform to the Court's orders. Oracle filed a motion to either (1) bar Rimini from introducing evidence of this post-2014 evidence at trial or (2) reopen discovery to permit Oracle to test Rimini's assertions. At the hearing on that motion, Oracle's counsel explained that, "We had extensive discovery about what they actually did in 2006, 2007, 2008, 2009, 2010, 2011. That is more than an adequate basis for them to say what would have been possible in 2006," which is the relevant date for the hypothetical license negotiation that Defendants (sometimes) advance in this case. Ringgenberg Decl. Ex. 2 (Motion Hearing Tr., Oct. 9, 2014) at 24:16:19.

Rimini's counsel Mr. Strand argued to Judge Leen that the additional discovery necessary to examine Rimini's supposed new processes was minimal and should be allowed. "We put this whole new process into place after the Court's order, taking from what we'd done before, putting it into place. They've already discovered on what we did before. So they know what's going on, so that this threat of never-ending discovery is really a hollow threat." Ringgenberg Decl. Ex. 2 at 21:8-21:14. Judge Leen rejected that out of hand: "You haven't lived through this case for the last five years like I have." *Id.* at 21:15-16. Judge Leen ultimately rejected reopening discovery, stating, "The district judge's [summary judgment] order was not a basis to reopen the entire case and start all over with what Rimini is doing now." *Id.* at 25:16-18. Judge Leen held "[d]iscovery will remain closed, and the case will remain as it was put in at the close of discovery, not thereafter." *Id.* at 3.

In 2015, Oracle later asserted a counterclaim of copyright infringement against Rimini alleging, in relevant part, that Rimini's "whole new process" is infringing. In fact, Oracle contends, Rimini has copied its infringing local environments from Rimini's computer systems to facilities controlled by Rimini or third-party hosting facilities (not customer facilities as required by licenses' plain text and the Court's order) and Rimini still uses some customers' environments to create tax and regulatory updates for other customers (the same cross-use that

3

1   Rimini initially denied and later admitted at trial).  Oracle's Counterclaims, *Rimini Street, Inc. v.*
2   *Oracle Int'l Corp.*, No. 2:14-cv-01699-LRH-PAL (D. Nev.) ("*Rimini II*"), Dkt. 21 at 12-14.
3   Exercising its authority under the Rule 42 and its inherent authority to manage complex cases,
4   the Court denied Rimini's motion to consolidate that case with this one.  Dkt. No. 669, 4-6 (July
5   23, 2015); *see also* FJC, Manual for Complex Litigation (4th ed.), at § 10.1.  That case is still in
6   its early stages and there has been little discovery to date.  *See* Scheduling Order, *Rimini II*, Dkt.
7   103.

8   As trial approached in this case, Oracle filed a motion in limine to exclude evidence
9   relating to Rimini's claimed, post-February 2014 conduct.  Oracle's Motions *In Limine* to
10  Exclude Evidence at Trial, Dkt. 646 at 7-13.  The Court ruled "that Rimini's new service support
11  model is not relevant to any claim or issue in this action."  Order, Dkt. 723 at 3.  The Court held
12  that "defendants' claim that the new support model is non-infringing is speculative" and further
13  stated that "all claims, issues, and evidence related to the new support model are being addressed
14  solely in that separate action."  *Id.*  The Court therefore granted Oracle's motion and excluded
15  evidence concerning "Rimini's new service model" as inappropriate in this case.  *Id.*

16  At trial, the Court has held the line at these rulings.  Mr. Ravin testified that Rimini no
17  longer used local hosting, Tr. 580:15-17, and the Court struck that testimony, explaining "in light
18  of that and those two cases being separate, I don't think that anything after that date generally
19  speaking is properly before this jury. . . . That's the Court's ruling. We need to stay within the
20  timeframe of this lawsuit, and so I -- I think that's irrelevant, and I will enter an order striking it,"
21  and then the Court instructed the jury, "Ladies and gentlemen, I would tell you that the matter of
22  concern raised before the Court concerns the timeframe of this lawsuit and the period of time that
23  it covers. And essentially what this lawsuit concerns is actions, conduct, activities as may be
24  reflected by the evidence basically through the end of the year 2011. So I've sustained the
25  objection that was raised, and we'll strike the testimony with regard to matters that may have
26  occurred after December of 2011." Tr. 580:18-582:25.

27  And the next day, Rimini again asked the Court to revisit its decision.  The Court rejected
28  that, explaining:

4

> with regard to the timing issue, the Court's instructions will clearly cover that this case does not extend past 2011. And, frankly, I'm unimpressed that he changes his business practice after the Court has ruled that he's committed copyright infringement in various ways, that he's following the order of the Court, essentially, at the time he does that. That[] doesn't belong in front of this jury, and particularly in light of the fact that it comes some three, almost three and a half years later, after the time period in question which is present here. So that essentially is going to be the Court's ruling on those issues. I'm going to sustain my rulings as of yesterday.

Tr. 754:6 - 20.

## ARGUMENT

Rimini's motion suggests that it is Oracle that has put the Court's summary judgment ruling at issue in this case. That is dead wrong. Rimini put that issue in front of the jury pool even before the jurors were selected and referred to it several times after.

Rimini's remaining argument is based on mischaracterizations of two sorts of evidence and questioning presented at trial. They are each addressed below. Neither provides a basis to turn this trial into a trial on whether Rimini's post-February 2014 conduct is infringing, which is what would be required if Rimini's witnesses are allowed to testify about its supposed non-infringement.

**I.     Rimini Injected the Court's Rulings into This Trial from the Very Beginning.**

*Rimini*'s counsel exposed every juror to the Court's rulings in *voir dire* by proposing the following question, which the Court propounded in substantially the same words: "Defendants already have been found by the Court to have infringed certain Oracle copyrights, but other claims of copyright infringement remain unresolved in the case and will require determination by you the jury. [ . . . ]"). Rimini's Proposed Jury Questionnaire, Dkt 735 at 5; Tr. 75:1-9 ("The defendants in this case have been found by the Court to have infringed certain Oracle copyrights [ . . . .]").

Rimini against exposed the jury to the Court's ruling in its opening statement: "We'll show you in this trial, while we believed what we were doing was perfectly legitimate, perfectly within the scope of those licenses, there are others issues that you have to decide for yourself the judge hasn't already decided…" Tr. at 118:12 - :17.

5

1     *Rimini*'s counsel once again injected the Court's ruling in the testimony of Mr. Ravin, to
2  which Oracle objected:

> *Q. Mr. Ravin, the Court has made some decisions prior*
> *to trial in this case. Do you understand that?*
> *A. Yes.*
> *Q. And the Court has found that in certain instances*
> *Rimini Street has exceeded the scope of the licenses that*
> *it operated under with its clients.*
> MR. ISAACSON: Your Honor, I don't think it's
> counsel's role to give instructions on the law. I think
> that's the Court's role.
> THE COURT: Sustained. The subject matter is
> obviously a matter which is present before the Court and
> the jury in this matter for that -- as to where one ends
> and the other begins.
> You shouldn't be characterizing your questions
> in terms of a legal perspective, a legal conclusion. I
> just state that as a caveat, not necessarily as a ruling on
> an objection.
> MR. WEBB: Understood, Your Honor.

Tr. 577:20 - 578:12 (emphasis added).

   Additionally, *Rimini* witnesses referenced the Court's decisions when they testified—unsolicited—about the license agreements and Rimini's infringement. *E.g.*, Tr. 386:19-387:1 (Ravin) ("Q. And you actually told me, though, it was the customer's legal liability from your perspective that was at issue for copyright infringement; right? A. To the extent of, again, of what Your Honor has ruled relating to infringement on our side -- Q. I'm not talking about -- I'm not talking about the Court's ruling, sir. I'm talking about what you were thinking about…"); Tr. at 546:14-547:1 (Ravin) ("And he says in the middle, 'Also, something to be aware of that we are using development Oracle software that I don't think is licensed.' He was correct; right? A. [By Ravin] No, it was licensed.  We -- but according to the judge's ruling, we were outside the scope of the license, yes."); Tr. 547:8-10 ("A. This was relating specifically to the development database that, again, the Court has already ruled on, that we were outside the scope of our license on.") (Ravin); Tr. 1404:24-1405:3 (Maddock) ("Q. And isn't it a fact that Rimini downloaded

Oracle materials for different customers into one software library for Rimini to use for customers generally? A. I was made aware of that after the Court ruled in February 2014").

## II. Oracle's Evidence at Trial Is Entirely Within the Bounds that the Court Set.

Oracle has remained entirely within the boundaries articulated by this Court, and has tailored its line of questioning for each witness to elicit only testimony relevant to the dates in question.

### A. The Orders Excluding Post-February 2014 Evidence Specifically Contemplated That the Parties Would Try the Issue Of What The Parties Would Have Expected in 2006 Based on the Discovery Record in this Case.

The only purported relevance of Rimini's claims that a remote-only, from-scratch development model is possible is as to damages. Specifically, Rimini has claimed that this evidence supports a hypothetical license value of damages based on a negotiation that would have occurred in 2006. The Court ruled that the testimony of Rimini's damages expert, Mr. Hampton, about costs of implementing a remote-only, from-scratch model was admissible as evidence of "the maximum amount that defendants would have been willing to pay to license the software licenses in a hypothetical negotiation." Order, Dkt. 724, at 5. It is settled law that that hypothetical negotiation would have been conducted in 2006, at the start of infringement. *See Oracle Corp. v SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) (the "hypothetical-license theory" is based on parties' expectations "*at the time of the infringement*") (emphasis added and internal quotation marks omitted); *see also LaserDynamics, Inc. v. Quanta Computer Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) (reversing damages award based on the wrong hypothetical negotiation date and remanding for use of the correct date; "In general, the date of the hypothetical negotiation is the date that the infringement began. We have consistently adhered to this principle")

In litigating the issue in front of Judge Leen, Oracle explained that the discovery record in the case was more than adequate to try the parties' expectations as of 2006: "We had extensive discovery about what they actually did in 2006, 2007, 2008, 2009, 2010, 2011. That is more than an adequate basis for them to say what would have been possible in 2006." Ringgenberg Decl. Ex. 2 at 24:16-:19. And this Court, in denying Oracle's motion to bar Mr. Hampton's testimony,

1  expressly authorized Oracle to try the issue of whether Rimini would have adopted that model
2  based on the evidence in the discovery period: "At trial, Oracle is free to challenge Hampton's
3  ultimate conclusions, for instance by arguing that it would have cost Rimini more than $7.6
4  million to create a non-infringing alternative, or that Rimini would not have considered a non-
5  infringing alternative at all." Order, Dkt. 724 at 5.

### B. Oracle's Questioning of Mr. Benge Did Not Open the Door

The trial evidence Rimini cites as "door-opening" is exactly what the Court held Oracle could present to challenge Mr. Hampton's conclusions: how Rimini's actual experiences *in the discovery period* bear on whether Rimini could have, or would have, adopted a remote-only, from-scratch model and, if it had, what would it have expected that cost of that model to be in 2006. Rimini's own brief makes this plain by emphasizing the evidence at trial that (1) "clients would have to build and host their own environments at greater cost and inconvenience to themselves"; (2) "Rimini would have to 'build[] environments and updates individually from scratch,' which would cost at least twice as much money and take twice as long," "Rimini would be deprived of use of its archives," "Rimini would have had to double the number of its employees to do an all-remote model," "but could not have done so because of the 'competitive' international IT market" and "gaps in qualified candidates," and "Rimini would have had to 'rely on the client to start and stop the servers' which might make it difficult to attend even to simple tasks like 'extending the table space.'" Mot. at 2-3 (citations to trial transcripts omitted).

The testimony relied on by Rimini does not state or suggest that Rimini has failed to change its conduct. Questions as to current knowledge or past misrepresentations and conduct do not bear on current conduct. Further, repeated questions asking Rimini about its conduct through 2012 suggests that Rimini has changed its conduct.

Rimini also argues that questions have misled the jury into believing remote support "is not feasible." The issue at hand is not whether remote support is feasible in 2014, but whether Rimini would have expected it to be feasible in 2006. Oracle's questions and documents have related to the period of fact discovery, which is far closer to 2006 than evidence about 2014. Oracle has argued repeatedly from documents in that period from 2006 to 2011 that a pure

1  remote development module was not feasible, but instead was "rediculous" [sic] (PTX 30) and
2  "insane" (PTX 60).
3        This questioning of Mr. Benge was relevant and proper.  According to his testimony, Mr.
4  Benge, in March 2012, provided the basis for Rimini's damages expert's calculation, and was
5  deposed about that in June of 2012.  Tr. 2150:19-2152:14.  Oracle expressly limited Mr. Benge's
6  examination about the all-remote, from-scratch assumption he provided to Mr. Hampton based
7  on the facts during the discovery period and Mr. Benge's assumptions and beliefs at the time the
8  estimate was provided in March 2012:

> Q. Okay. Before we begin, though, I want to make sure that we understand the time period **I'm asking you about when I ask these questions. So when I ask you about the facts of this case, what I'm talking about is the time period between 2005 and 2011**. Do you understand that?
> A. Yes, I do
> Q. And you previously provided deposition testimony in this case on June 21, 2013?  Do you remember that?
> A. Yes, I do.
> Q. Okay.  In March 2012 you provided an opinion to Rimini's experts; right?
> A. Yes.
> Q. Okay. So if I ask you questions about your role in the litigation, **you can talk about the time period up until the date of deposition, June 21st of 2012, but I'm not asking you about anything after that.** Do you understand?
> A. Understood.  (Tr. 2150:5-23).

19  Rimini's contention -- that it was inappropriate to probe the basis and assumptions of Mr. Benge
20  <u>at the time he provided Rimini's damages expert</u> an estimate that serves as the basis for that
21  expert's testimony -- simply beggars belief.
22        Oracle <u>has not</u> asked Mr. Benge (or any other witness) what Rimini did in 2014 or in
23  response to learning about that Court's order.[1]  In fact, as explained above, Oracle's counsel

---

[1] Rimini asked Mr. Benge a series of questions about what Mr. Benge would have done "if you had known that the Rimini-hosted environments infringed?" E.g., Tr. 2147:20-23.  In cross-examination, Oracle asked, simply, "Q. So now you know; right?" and the witness answered, "A. Yes, I do."  Tr. 2160:10-11.  The Court expressly ruled as to that exact question, "I don't consider this beyond the scope of the timeframe that was opened by the direct examination." Tr. 2159:22-25.    Nothing about that question and answer put Rimini's conduct after February 2014

(Footnote Continued on Next Page.)

ORACLE'S OPPOSITION TO MOTION FOR RECONSIDERATION

1  repeatedly made sure Mr. Benge understood her questions relating to the facts of the case to be
2  limited to the 2005 to 2011 time period.  *See also* Tr. 2206:13-:17.  The door remains as firmly
3  shut as it was when Judge Leen ruled, and when the Court ruled -- in limine, and at least twice
4  during trial -- that Rimini Street may not admit testimony about its post-2012 support processes.

### C. Reversing the Court's Prior Rulings Would Be Unfair, Confusing, and Ignore Rimini's Past False Testimony.

Rimini says that it "has overcome all of these supposed hurdles" to remote support, that it "operates today through complete remote hosting," and that "Rimini cannot tell the jury this highly relevant fact."  Mot. at 3.  But, Oracle contends, the way that Rimini has "overcome all of these supposed hurdles" is by not actually complying with the Court's order.  Oracle contends that Rimini is not complying in that Rimini use standardized environments on third-party hosting services instead of environments at the customers' facilities, which, as the evidence at trial shows, require addressing unique and diverse security systems.  Oracle's Counterclaims, Rimini II at 12-14.  And Oracle contends that Rimini still engages in cross-use by doing development work in one customer's environment for the benefit of other customers.  *Id.*

Oracle hotly contests Rimini's claims of non-infringement and needs substantial discovery to test the truth of them, which is precisely why Judge Leen rejected Rimini's position that the trial should include these issues.  "The district judge's [summary judgment] order was not a basis to reopen the entire case and start all over with what Rimini is doing now."  Ringgenberg Decl. Ex. 2 at 25:16-18; *id.* at 21:15-16 ("You haven't lived through this case for the last five years like I have").  Rimini never appealed that ruling.  And the Court affirmed the substance of that ruling in granting Oracle's motion in limine, explaining that "defendants' claim that the new support model is non-infringing is speculative."  Order, Dkt. 723 at 3.

There are many reasons to doubt the truthfulness of any testimony oy Ravin and Rimini concerning Rimini's current practices.  Rimini witnesses, including Mr. Ravin and Senior Vice

---

(Footnote Continued from Previous Page.)

at issue.

1 President Brian Slepko acting as a Rule 30(b)(6) designee, testified unequivocally and falsely in
2 depositions that Rimini did not use one customer's software to develop software for other
3 customers. Tr. 804:13-805:5 (Ravin deposition)("Q. Does Rimini Street ever use software that
4 was originally obtained from one customer to assist in supporting a different customer? A. No.
5 Q. Has it ever occurred that one customer's software environment has been used to develop a fix
6 or update that was ultimately delivered to a different customer?...A. [By Ravin] No.);
7 Ringgenberg Decl. Ex. 2 at 76:4-12 (Rimini's Brian Slepko testifying as a 30(b)(6) witness) ("Q.
8 So I take it from your statement that all the development is done for a particular customer in that
9 customer's environment using that customer's files? A. That's correct. Q. And then is that work
10 repeated for each customer for whom that work is applicable?...A. Yes.").  After the truth was
11 out, Ravin admitted at trial that Rimini did it "all the time." Tr. 552:1-5 (Ravin).   Likewise,
12 Rimini falsely told the Court in its pleadings that there was no "software library." As Judge Leen
13 explained, "Given Rimini's initial denial that it ever maintained a software library, the court
14 understands Oracle's reservations about the veracity of these representations."  Sealed Order at
15 18.
16     Oracle is confident that discovery in *Rimini II* will show that Rimini's "whole new"
17 process still involves intentional and systematic misuse of Oracle software.  But discovery will
18 be necessary to get to the truth.  Allowing Rimini to tell the jury it has changed its ways, without
19 the opportunity to cross-examine those statements with discovery about the facts, would be
20 fundamentally unfair and turn the rest of the trial into a sideshow.
21     **D.     Testimony Regarding CedarCrestone Did Not Open the Door**
22     Rimini also claims that Oracle opened the door to post-February 2014 conduct with
23 references to regarding CedarCrestone.  Mot. at 3.  The only actual evidence cited, however, is
24 testimony of Mr. Rowe about PTX 803, admitting that Mr. Rowe's belief was that
25 CedarCrestone was "afraid that if Oracle finds out [about its "implementation and upgrade"
26 business] they will "cut [it] off." Tr. at 2473:2-20.
27
28

1  That testimony was expressly about Mr. Rowe's views in August 2008,[2] at the time of the
2  document.  PTX803; Tr. 2470:13-21 (August 2008 date), *id.* at 2473:21-22 (" Q. And that was
3  your understanding, wasn't it? A. **At the time of this email, yes"**) (emphasis added)**.**  Asking a
4  witness about his beliefs in 2008 is entirely consistent with the Court's orders and opened no
5  door to testimony about acts six years later.

## CONCLUSION

For the reasons state above, Defendants' Motion for Reconsideration on the Admissibility of their Post-2014 Conduct should be denied.

DATED:  September 30, 2015                BOIES SCHILLER & FLEXNER LLP

By: /s/ *Kieran P. Ringgenberg*
Kieran P. Ringgenberg
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

---

[2] Rimini also claims that Oracle attempted to "compound the prejudice" by arguing to the Court the relevance of the Brian Fees Declaration.  Oracle only raised the argument in response to Rimini's repeated attempts to confuse the jury by playing a deposition containing recanted legal contentions.  Furthermore, this subject has zero relevance to Rimini's current motion because none of that evidence has been admitted.