# EXHIBIT 2

1

```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2          BEFORE THE HONORABLE PEGGY A. LEEN, MAGISTRATE JUDGE

 3

 4   ORACLE USA, INC., a Colorado      :
     corporation; ORACLE AMERICA,      :
 5   INC., a Delaware corporation;     :
     and ORACLE INTERNATIONAL          :No. 2:10-cv-0106-LRH-PAL
 6   CORPORATION, a California         :
     corporation,                      :
 7                                     :
             Plaintiffs,               :
 8                                     :
         vs.                           :
 9                                     :
     RIMINI STREET, INC., a Nevada     :
10   corporation; and SETH RAVIN, an   :
     individual,                       :
11                                     :
             Defendants.               :
12   _____:
```

13

14                      TRANSCRIPT OF MOTION HEARING

15

16                           October 9, 2014

17                          Las Vegas, Nevada

18

19

      FTR No. 3B/201401009 @ 9:31 a.m.
20

21

22   Transcribed by:        Donna Davidson, CCR, RDR, CRR
                             (775) 329-0132
23                           dodavidson@att.net

24

25   (Proceedings recorded by electronic sound recording,
     transcript produced by mechanical stenography and computer.)

                        DONNA DAVIDSON   (775) 329-0132

2

1                        A P P E A R A N C E S

2

    FOR THE PLAINTIFFS:
3
    KIERAN RINGGENBERG
4   Boies, Schiller & Flexner, LLP
    1999 Harrison Street
5   Oakland, California 94612
    (510) 874-1000
6   Fax: (510) 874-1460
    kringgenberg@bsfllp.com
7
    RICHARD J. POCKER
8   Boies Schiller & Flexner, LLP
    300 South Fourth Street
9   Suite 800
    Las Vegas, Nevada 89101
10  (702) 382-7300
    Fax: (702) 382-2755
11  rpocker@bsfllp.com

12  THOMAS S. HIXSON
    Bingham McCutchen LLP
13  Three Embarcadero Center
    San Francisco, California 94111
14  (415) 393-2000
    Fax: (415) 393-2286
15  thomas.hixson@bingham.com

16  JAMES C. MAROULIS
    Oracle Corporation
17  500 Oracle Parkway
    Redwood City, California 94070
18  (650) 506-4846
    jim.maroulis@oracle.com

19

20  FOR THE DEFENDANTS:

21  PETER STRAND
    B. TRENT WEBB
22  Shook, Hardy & Bacon L.L.P.
    2555 Grand Boulevard
23  Kansas City, Missouri 64108
    (816) 474-6550
24  Fax: (816) 421-5547
    pstrand@shb.com
25  bwebb@shb.com

```
 1              A P P E A R A N C E S  (Continued)

 2   FOR THE DEFENDANTS:

 3   ROBERT H. RECKERS
     Shook, Hardy & Bacon LLP
 4   600 Travis Street
     Suite 3400
 5   Houston, Texas 77002
     (713) 227-8008
 6   Fax: (713) 227-9508
     rreckers@shb.com
 7

 8   W. WEST ALLEN
     Lewis Roca Rothgerber LLP
 9   3993 Howard Hughes Parkway
     Suite 600
10   Las Vegas, Nevada 89169
     (702) 949-8230
11   Fax: (702) 949-8364
     wallen@lrrlaw.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
 1                LAS VEGAS, NEVADA, OCTOBER 9, 2014, 9:31 A.M.

 2                              --oOo--

 3                       P R O C E E D I N G S

 4

 5                COURTROOM ADMINISTRATOR:  Your Honor, we are now

 6      calling the motion hearing in the matter of Oracle, USA,

 7      Inc., versus Rimini Street, Inc.  The case number is

 8      2:10-CV-0106-LRH-PAL.

 9                Beginning with plaintiffs' counsel, Counsel,

10      please state your names for the record.

11                MR. RINGGENBERG:  Kieran Ringgenberg, Boies,

12      Schiller & Flexner, for the plaintiffs.

13                MR. POCKER:  Richard Pocker, Boies, Schiller &

14      Flexner, for the plaintiffs.

15                MR. STRAND:  Good morning, Your Honor.  My name

16      is Peter Strand.  I'm with Shook, Hardy & Bacon.  I'm

17      admitted pro hac, and I'm here for the defendants.

18                MR. HIXSON:  Good morning, Your Honor.  This is

19      Tom Hixson on the phone, with Bingham McCutchen, for

20      Plaintiff Oracle.

21                MR. MAROULIS:  And, good morning, Your Honor.

22      It's James Maroulis from Oracle on the phone as well.

23                MR. RECKERS:  Rob Reckers, Shook, Hardy & Bacon,

24      for the defendants.

25                MR. ALLEN:  West Allen, Lewis Roca Rothgerber,
```

1    for Rimini Street.

2         MR. WEBB:  Trent Webb, Shook, Hardy & Bacon, for

3    the defendants.

4         THE COURT:  All right.  The parties requested a

5    joint case management conference.  And your joint unopposed

6    motion has been granted.  The district judge referred this

7    matter to me.  I have read your moving and responsive

8    papers and the voluminous supporting exhibits.

9         As an initial matter, you've also both filed a

10   request to seal exhibits.  I don't -- I have another

11   hearing at 10:00.  So I don't have the time to afford you

12   an opportunity to make an oral record to supplement what

13   you put in your papers, which is basically, We both agree

14   that we designated these documents as confidential or

15   highly confidential and therefore they should be permitted

16   to be sealed.

17         That does not comply with the *Kamakana* standard

18   in the Ninth Circuit.  So I will require counsel to

19   supplement your filing to, you know, provide a

20   substantive -- we've already gone through this before.

21         If you'll recall, Rimini asked for relief from

22   the protective order.  And I did a long order articulating

23   what the standards are and the fact that a blanket

24   protective order, meaning allowing you to designate

25   documents as confidential or highly confidential, doesn't

1    mean that you've met the standard under Rule 26(c).

2              So just submit a supplemental paper for me.  And

3    they'll remain under seal until further order of the Court.

4              But so that we're in compliance with the

5    relevant Ninth Circuit standard -- and I know you've cited

6    a Central District of California case, but I don't think

7    that's apposite to the situation.  So we'll take care of

8    that brief housekeeping matter first.

9              And then I have read all of your materials.  I

10   understand that you want the Court's guidance because

11   you've been ordered to prepare a joint pretrial order and

12   file it with the Court by October the 14th.

13             And after Judge Hicks' ruling on the motion for

14   summary judgment on February 13th, 2014, Rimini indicated

15   that it has engaged in a new and improved development model

16   that it believes is noninfringing and consistent with Judge

17   Hicks' opinions.

18             And the question is what impact does that have

19   on the trial that is going to be set as soon as you've

20   lodged your joint pretrial order and whether any additional

21   discovery should be permitted by virtue of the way the

22   district judge has now tailored the case from his two

23   orders granting partial summary judgment in part.

24             So let me hear from, first, counsel for Oracle

25   about what it is specifically that you are asking me to do.

1    What would the order look like if I grant the request for

2    relief that you are requesting?  Because I understand you

3    want to limit the scope of the trial to the issues of the

4    development processes that were in effect at the time that

5    Judge Hicks entered his February 2014 motion for summary

6    judgment.

7                On the other hand, it is apparent that after

8    that order Oracle itself asked for supplemental discovery

9    from Rimini and asked for a Rule 30(b)(6) deposition.

10               So it seems that you did contemplate some

11   supplemental discovery, at least when you asked for it.

12               And you may adjust the lectern, if it's more

13   comfortable for you, up or down on your -- the little

14   button on the --

15               MR. RINGGENBERG:  Oh, I see.  Oh, there we go.

16               Thank you.  The order we request would hold that

17   the trial should be limited to the conduct covered by the

18   fact discovery period that we had.

19               THE COURT:  Does that mean your damages are

20   going to be cut off as of December 2011?

21               MR. RINGGENBERG:  We -- our proposal is -- what

22   we have said is we would limit our -- we would not seek

23   damages after Rimini claims it switched to the new model,

24   which is -- the date they say, is February 13th of 2014.

25               THE COURT:  I understand that.  Therein lies the

1    rub, okay, because fact discovery closed December 2011.

2    The new model that Rimini claims it has enacted that is not

3    infringing went into effect shortly after the district

4    judge entered his summary judgment motion February 2014.

5    But presumably you do have damages between the close of

6    fact discovery and that date.

7                MR. RINGGENBERG:  That's correct, Your Honor.  I

8    think the resolution of that question is -- let me make two

9    points.

10               The first is if we're -- what would be required

11   to fairly try this new support model would be a very

12   significant undertaking.  It would dramatically expand the

13   case.  This wasn't easy to get through discovery the first

14   time.  And if we're going to do it again, it's going to

15   take a lot of work and a lot of time.  And so Oracle's

16   point of view is that we should take those issues and put

17   them in another case.

18               If we're going to have -- and let me make three

19   points.  The first is that new -- the new process isn't

20   relevant.  Second is Rimini shouldn't be allowed to make

21   claims about it that are untested by discovery.  And the

22   third is if discovery is allowed, it's going to take a long

23   time and a lot of work from everyone.  So the best

24   solution, in our view, is to exclude it altogether.

25               Now, I think the focus on the area between 2012

1    and 2014, I think there's two things.

2           First, it's not clear that what they're doing

3    after 2014 is really all that relevant to what they're

4    doing in the transition period between the judge's court

5    ruling and when they say they completed and moved into the

6    new model.  Our -- maybe it's more relevant than it would

7    have been to what happened in 2005.  But marginal at best.

8           And the second is that it would be -- there's --

9    if that is the reason, if those two years, which is really

10   the tail on the dog of what would be a seven-year damages

11   period, you know, and then we would have two more, I guess,

12   if you would go -- from 2006 to 2012 would be six years,

13   and we have this two-year period at the end, if that's

14   what's really driving this, like if Oracle were to ask, You

15   can either go to trial now or we can have another extensive

16   period of discovery and delay your trial, I think it might

17   choose just to push 2012 off into the next case too.

18           Our interest is in trying to get this thing

19   through.  You know, the Court supervised a very extensive

20   discovery process.  It was extensive on everyone.  So the

21   idea of going through that again and pushing the trial off

22   is a serious -- is a serious concern to us.  We're trying

23   to get done with this.  And I believe Rimini probably is

24   too.  They want to get through with this also.

25           And if after that process, you know, if we have

1       to have another case, we'll have another case, and we can

2       deal with Rimini version 3 at that time.

3                I think -- let's talk a little bit about

4       whether what's happening between 2012 and 2014 is really

5       relevant.  And we would say it isn't.  And here's why.

6                The first reason is is that Rimini concedes and

7       does not dispute that for damages purpose the -- the

8       relevant period of negotiations would have been on first

9       infringement 2006.  That's the law.  So Rimini's theory is,

10      You should let us tell the jury we don't infringe anymore,

11      and it's easy to do because we would have never paid Oracle

12      more than it would have cost us to switch to this

13      alternative model --

14                THE COURT:  That's --

15                MR. RINGGENBERG:  -- in a negotiation.

16                THE COURT:  -- the 7.6 million plus the 90,000

17      to almost 3 million that it would have cost Rimini to

18      acquire the licenses?

19                MR. RINGGENBERG:  That's exactly right.

20                THE COURT:  That's the expert testimony from

21      Mr. Hampton, which is what it would have cost --

22                MR. RINGGENBERG:  Mr. Hampton testified about a

23      hypothetical model they hadn't ever implemented.  And we

24      took discovery on that.  And there's a good record about

25      that.

1          But now they want to do something different.

2     They want to stand in front of the jury and say, "It's not

3     hypothetical.  We've done it and it works," without giving

4     us a chance to really get under the hood.  And we think

5     that's not really fair.

6          But the point being, there's no question as a

7     matter of law --

8               THE COURT:  Well, what --

9               MR. RINGGENBERG:  -- if you look --

10              THE COURT:  -- were the hundred thousand

11    documents that they gave you?  Because that's what their

12    claim is, that they -- you asked for it, you got it.

13              MR. RINGGENBERG:  That's right.  Well, and let

14    me make one quick point, and then I'll return to that, if

15    it's okay with Your Honor.

16          The negotiation period is in 2006 as a matter of

17    law.  If you have a reasonable royalty damages theory, you

18    conduct a hypothetical negotiation at the beginning of

19    infringement.  That's 2006.

20          What we're talking about is stuff that didn't

21    happen until 2014.  That's eight years later.  That's a

22    lifetime in the computer software field.  The number of

23    technological changes are dramatic.

24          Rimini has filed a patent application on its new

25    process in 2014.  If it's novel enough in 2014 to warrant

1    patent protection, it could not have been available in

2    2006.  It relies on virtualization and web technologies

3    that didn't exist, or at least weren't in commercial use in

4    this way in 2006.

5              So it's not relevant to the question that the

6    jury would be asking, which is if Oracle and Rimini had sat

7    down in 2006 and negotiated what would they have agreed to?

8    And so there's no reason to muddy the water.

9              So let me get back to your -- I understand Your

10   Honor's concern that we asked for this discovery.

11             You know, we had a long period between the first

12   and second summary judgment order.  And we didn't know how

13   long it was going to take.  And they were making public

14   statements about what they were doing.  And we wanted to

15   make use of the time.

16             It's relevant to injunctive relief if nothing

17   else.  And when we file the second case, it will be

18   relevant to that too.  And that's why we were asking.

19             But we get the second summary judgment order.

20   Judge Hicks tells us to file a pretrial order.  We got to

21   get ready to go.

22             And so we're trying to make this trial

23   practical, manageable, and happen sometime this century.

24             You know, this case is pretty long in the tooth

25   already.  We've been going at this since 2010.  And we'd

1    like to get done with it.  I'm sure the Court would too.

2    So I think that's the key point.

3            Let me make one other important legal point,

4    which is the theory -- Rimini's theory that damages are

5    capped at the cost of a noninfringing alternative is

6    incorrect in the copyright context.  There is no copyright

7    case that says that.  The most --

8            THE COURT:  I know you have a dispute about

9    that.  And I don't intend to resolve that.  That's a matter

10   that's going to be reserved for the district judge through

11   the motion in limine process or other mechanism for you to

12   decide whether that expert testimony, whether that's a

13   reasonable damages model or not.

14           What I'm here to decide for the district judge

15   is what the joint pretrial order is supposed to consist of,

16   and whether it's appropriate to engage in any additional

17   discovery that is closed in this case.

18           MR. RINGGENBERG:  Okay.  So let me make -- I

19   know you're pressed for time, Your Honor, so let me make

20   one additional point, which is to talk about --

21           THE COURT:  I'm not trying to hurry you.  I'm

22   just letting you know.

23           MR. RINGGENBERG:  I appreciate it.

24           What -- if Rimini's allowed to do this, what

25   would it take for it to be a fair process?

1          At the beginning of this case Rimini made public

2    statements, Rimini made statements in its pleadings, and

3    Rimini's witnesses swore under penalty of perjury a number

4    of facts about its development process that turned out to

5    be inaccurate.

6          They said, We silo software, we never use

7    software from one customer to create (indiscernible) for

8    others, to support other customers.  We proved that that

9    was wrong, okay?  And Judge Hicks acknowledged that on

10   summary judgment.

11         It wasn't easy.  It took document productions

12   from 55 individuals.  It took 22 depositions of Rimini

13   employees.  It took us going through e-mails, instant

14   message chats, and finding fingerprints in technical files

15   to show that what they were saying was not accurate.

16         It took thousands of hours of expert analysis by

17   computer scientists to get to the bottom of what really

18   happened.

19         So Rimini's entitled to claim what it wants

20   within the limits the Court sets.  But we need to have a

21   chance to test that if they're going to be allowed to talk

22   about it.

23         And if we do that, it's going to take a lot of

24   work.  What we talked about is having a foundational

25   30(b)(6) witness who can give us a high-level overview of

1    what the new process is.  It's going to take time to do

2    that because there's a lot of information to process.

3            Then we're going to need to talk about, okay,

4    who are the engineers?  What do they do?  What documents

5    need to be produced?  They need to be reviewed.  We need to

6    take some depositions.  The number and scope, I think,

7    would depend on what we find out.  But it's going to be

8    extensive.

9            And maybe most important, we're going to have an

10   entirely new expert report that analyzes the liability

11   case.  You know, Dr. Davis from MIT, who did the first

12   major liability report in this case, it's, you know, 300

13   pages long, thousands of hours underlying it, and they want

14   to say all of that is irrelevant and now we need something

15   totally different.

16           So from a Rule 403 point of view -- and I

17   understand that you're not sitting as a trial judge, but we

18   think about do we want to have a massive new round of

19   discovery?  Okay.  What's the end of it?  How important is

20   it?  Is it necessary?

21           THE COURT:  Well, you don't get to decide that.

22           MR. RINGGENBERG:  I'm trying to explain to the

23   Court our view about why this -- why this issue is a --

24           THE COURT:  If it's --

25           MR. RINGGENBERG:  -- sideshow.

1        THE COURT:  -- going to go to the jury, you want

2   to reopen discovery of necessity.  But you don't want it to

3   go to the jury, you want me to limit the scope of what's

4   going to be tried by defining what should be in the

5   pretrial order?

6        MR. RINGGENBERG:  That's correct, Your Honor.

7   And that's what we asked Judge Hicks.  And he sent us here.

8   And so I'm trying to do my best to explain why that's

9   appropriate.

10       And if the Court has any further questions, I'm

11  happy to answer them.  But I would like, maybe, a little

12  chance to address whatever Rimini Street says.  Thank you.

13       THE COURT:  Who will be addressing Rimini's

14  position?

15       MR. STRAND:  Your Honor, I will.

16       THE COURT:  And for the benefit of the recorder?

17       MR. STRAND:  My name is Peter Strand, Your

18  Honor.  And if you'd like, I can give you --

19       THE COURT:  That's quite all right.

20       MR. STRAND:  I'm new to the case.  But thank you

21  for having me.  May it please the Court.

22       The order that we seek, Your Honor, is one

23  saying that the Court will not try to remove from the case

24  an issue which is already in it.

25       From the day this case was filed, all the way

1    through discovery in 2011 and up to today, inextricably

2    intertwined in this case is the notion of a noninfringing

3    alternative, the new model that we're talking about today.

4              So what Oracle wants to do is extricate from the

5    case --

6              THE COURT:  The one your senior technical

7    advisor called insane?

8              MR. STRAND:  Well, he called it insane, Your

9    Honor.  And you know what, we've now done it.  And Oracle

10   called it insane.  And --

11             THE COURT:  Did he --

12             MR. STRAND:  -- I'm sure we'll hear about that

13   at trial.  But it has been done.  It is in place.

14             So what -- here's the --

15             THE COURT:  As of -- and do we have a dispute

16   about when it was in place?

17             It -- you seem to say in your portion of the

18   joint submission that you concede that it was done to

19   address Judge Hicks' December -- or, excuse me, February

20   13th, 2014, order.

21             MR. STRAND:  It was fully implemented, Your

22   Honor.  There were noninfringing remote models in place

23   when the litigation started, when Oracle -- when Rimini

24   started.

25             THE COURT:  Right.  And I don't think Oracle is

1    seeking to preclude you from talking about things that --

2    for which there's been discovery and for which you were

3    making claims during the discovery period in this case,

4    only what you did in reaction to Judge Hicks' order.

5              MR. STRAND:  But what happened, Your Honor, was

6    when our expert raised the possibility of an alternative

7    noninfringing model and did his damages opinion, as you've

8    referred to, Oracle said, "That cannot be done.  That

9    cannot be done."  That was their defense to that back in

10   discovery.

11             We have now done it.  It is simply inappropriate

12   to go forward to trial with that model out there and not

13   tell the jury.  It simply misleads the jury on a

14   fundamental fact in the lawsuit what's going on.  And for

15   the principal reason of the jury's going to look at this

16   and say, "You guys are infringers."  And we're going to

17   say, "But not anymore."

18             That's extremely important evidence.  It's

19   extremely germane to the case.  It's extremely germane to

20   damages, willfulness, causation, the whole panoply of

21   issues before the jury.

22             And to exclude that, sure, and put it in another

23   trial, we all know what we're about here.  It is a trial

24   of attrition.

25             THE COURT:  So address Oracle's comment that

1   what is to prevent you from on the eve of the -- if I

2   reopen discovery and allow you to supplement and get this

3   case trial ready again on your new and improved model, what

4   would prevent you from the day before the extended

5   discovery or reopen discovery cutoff addressing another

6   model because Oracle points out the flaw in -- or where

7   they think your new and improved model is still infringing?

8           MR. STRAND:  I've been doing this a long time.

9   And I'm not coming back to you with that kind of a

10  position.  Because you would throw something, on your

11  bench, at me.

12          Simple fact is that would be idiotic.  And we

13  wouldn't do it.  We've done what we think is right.  We --

14          THE COURT:  I try to avoid committing batteries

15  on lawyers --

16          MR. STRAND:  I know.  But -- and I've dodged a

17  few gavels in my time, Your Honor, so I've learned my

18  lesson.  But --

19          THE COURT:  You notice I don't even have one.

20          MR. STRAND:  Well, I know, because you threw it

21  at the people here before us.

22          The bottom line is, Your Honor, that simply --

23  it's a theoretical possibility.  But I don't think that's

24  going to happen.

25          We have a long history in this case.  Every time

1    we stand up here they raise how we're bad guys and we've

2    been caught out.

3              We're sitting here saying we think we have a

4    noninfringing alternative.  We think we've put it in place.

5    They don't.  That's fine.

6              Now, let's turn to what we're really talking

7    about.  What Oracle's saying, We'll have to do hours and --

8    hundreds of hours in discovery, big time, big deal, that's

9    in their interest to drag it out so they can exclude it

10   from the trial.

11             In fact, we produced all the documents,

12   everything they asked -- they demanded it in March.  They

13   demanded the discovery.  Under Rule 26, under Rule 11, they

14   asked us for that stuff that they thought was relevant to

15   this lawsuit.

16             Now they've seen it, the hundred thousand pages,

17   and suddenly it's not relevant.  So what's it going to be?

18   We want to try the lawsuit on what the facts are relevant

19   to this case.  And we want to have a fighting chance to

20   survive.

21             They want to exclude the noninfringing

22   alternative precisely because it makes it more likely that

23   they'll be able to crush us.  That's what this is all

24   about.

25             So what do we want to do?  We want to bring that

1    evidence in.  We want to have two or three depositions.

2            There's only a few people at Rimini that were

3    involved in the new process.  We've already offered them

4    Mr. Bench, who they deposed at length on the prior remote

5    process.  They'll just take another deposition.  They know

6    him.  They know -- they know already from the documents

7    what he did.

8            We put this whole new process into place after

9    the Court's order, taking from what we'd done before,

10   putting it into place.  They've already discovered on what

11   we did before.  So they know what's going on, so that this

12   threat of never-ending discovery is really a hollow threat.

13           If they wanted to -- if you set this thing for

14   next week --

15           THE COURT:  You haven't lived through this case

16   for the last five years like I have.

17           MR. STRAND:  I've been here a year and a half,

18   Your Honor.  But, yes, Your Honor.

19           But if you set this case for next week and they

20   had to try it -- the new model, we produce the people and

21   we go try the case next week.

22           So this boogie man of massive discovery is

23   exactly what it is, a boogie man in an attempt to mislead

24   the Court and saying, Oh, we've got to do all this work,

25   all this stuff.  Already in the expert deposition -- in the

1    expert reports are arguments about whether or not it can be

2    done.  We've now done it.

3            If, in fact, it's infringing, then let's try it

4    and find out.  Let's not wait for the next lawsuit.

5            So what we want to do is simple, short, sweet

6    discovery, get it done, go on to trial, try the lawsuit on

7    all the facts.

8            Because what the jury is entitled to know, Your

9    Honor, is did we infringe?  What's the damage?  And it's

10   critical for them to know, did we stop infringing, what are

11   the damages?

12           You can't cut it off in 2011.  You can't

13   arbitrarily cut it off in 2014.  We have to tell the jury

14   what the story is.

15           There really isn't a realistic argument here

16   that this is not relevant, Your Honor.

17           It was relevant enough during initial discovery

18   for their expert to talk about it, for our expert to talk

19   about it, for no motion on it.  So it was relevant enough.

20   It's in the case.  It ought to stay in the case, and it

21   ought to go to the jury.

22           When I walked in, I read Justice Renquist's

23   quote, The trial is about tell your story to the jury, let

24   them deliberate.  That's all we want.  We want to tell our

25   story to the jury and let them deliberate.  If we're wrong,

1    we're wrong.  If we're right, then the jury has the right

2    to hear that, and we have the right to present that

3    evidence.

4              Any other questions, I'd be happy to answer

5    them.

6              THE COURT:  No, sir.

7              MR. STRAND:  Thank you.

8              THE COURT:  I'll give Oracle a very brief

9    rebuttal.

10             MR. RINGGENBERG:  I think there's one

11   dispositive point, Your Honor.  The relevant time that the

12   jury's supposed to consider is 2006 because that's when

13   they started infringing.

14             The question is what would have been possible --

15             THE COURT:  I understood --

16             MR. RINGGENBERG:  -- in 2006 --

17             THE COURT:  -- that argument the first time.

18   Sure.

19             MR. RINGGENBERG:  I understand.

20             The argument that we've done it now and so you

21   should believe us when we say it's possible does not --

22   is --

23             THE COURT:  Well, they said that was a

24   counter --

25             MR. RINGGENBERG:  -- two steps removed --

1          THE COURT:  That's a counter to your defense or

2     your position countering their -- no, it's impossible to be

3     done.

4          The expert comes if and gives an opinion, he

5     says it's 7.6 million, which is the cost that Rimini would

6     have incurred or could have incurred if they'd done it in a

7     noninfringing way plus the cost of the license, and they

8     say in rebuttal -- you said no, that's impossible, Rimini

9     couldn't have done it.

10          And so now they have done it, so they're

11     rebutting a defense or an issue that you raised and put in

12     issue.

13          MR. RINGGENBERG:  The question's not whether

14     it's possible now.  It's whether it would have been

15     possible then.

16          We had extensive discovery about what they

17     actually did in 2006, 2007, 2008, 2009, 2010, 2011.  That

18     is more than an adequate basis for them to say what would

19     have been possible in 2006.

20          What they want to do is sidestep all of that and

21     have a separate trial about what's possible in 2014,

22     whether it's legal, and whether those same practices would

23     have been possible under available technology earlier.

24          When we talk about 403, we often talk about a

25     mini trial.  We don't want to have a mini trial.  Let's

25

1    keep focused on real issues.  That wouldn't be a mini

2    trial.  That is another gigantic case.  And it's not

3    necessary to be fair because we had extensive discovery on

4    what they actually did far closer to the relevant period.

5            We -- and that's led to the document that the

6    Court cited.  So the -- there is no other theory of

7    relevance that's been explained.  The idea they want to

8    stand in front of the jury and say we've been reformed has

9    no bearing if we're not seeking damages for the date of the

10   trial.

11           So we think that solves the issue.

12           THE COURT:  I am not going to reopen discovery

13   in this case.  And the parties require leave of Court to

14   engage in any discovery other than supplementation that's

15   required by Rule 26(e).

16           The district judge's order was not a basis to

17   reopen the entire case and start all over with what Rimini

18   is doing now.

19           And I will hold Oracle to its offer to stipulate

20   that it will not be seeking damages for any period on or

21   after the date of the district judge's February 13th, 2014,

22   order.

23           Of course, if you open the door, that's another

24   issue altogether.  But at this point the case is going to

25   be the case that was -- that was discovered and closed

1    after the expert disclosure deadlines and the pretrial

2    order.

3            And, of course, Rimini may preserve its

4    objection to my adverse ruling by stating, Given the

5    opportunity you would have inserted these additional

6    issues.  But I am not going to reopen discovery in this

7    case that's nearly five years old.

8            You're not going to get a trial date until you

9    lodge the joint pretrial order with the Court.  It's --

10   it's due on October 14th.

11           I take it both sides would probably want some

12   relief from that request.  So given the Court's ruling --

13   and, as I said, I, of course, reserve to the district judge

14   the decision about the admissibility of the value -- the

15   value-added model or whether it's admissible or not or

16   whether it is a legitimate model for damages that will or

17   will not be admitted is, of course, reserved for the

18   district judge.  I make no comment on that.  But you

19   connected the full discovery on that theory.  And you have

20   your respective positions on that.

21           But discovery in this case will remain closed.

22   And this case is a case that it was put in at the close of

23   discovery, not thereafter.

24           So I'll ask Oracle to submit a proposed order

25   and -- to me because I'm without a law clerk for the next

1    week or so, and I'm not going to be able to get this out in

2    a timely fashion.  But you both need to see what it says to

3    address where you go from there.

4            How long will it take Oracle to be in a position

5    to get the joint pretrial order on file with the Court's

6    ruling?

7            MR. RINGGENBERG:  I would propose to the Court

8    that we extend the current deadline by about two weeks.  I

9    think we can get it done in that timeframe.

10            THE COURT:  Mr. Strand, knowing you don't agree

11   with that -- with my order, and I don't expect you to --

12            MR. STRAND:  Well, with respect, Your Honor,

13   sometimes we don't.  But we'll live to fight another day.

14            A two-week delay to the 28th, is that what

15   you're thinking?

16            THE COURT:  That's what he's proposing, yes.

17            MR. STRAND:  That's acceptable.

18            THE COURT:  All right.  I'll give you an

19   extension until October the 28th to lodge the joint

20   pretrial order with the Court.

21            MR. RINGGENBERG:  Thank you, Your Honor.

22            THE COURT:  Thank you, Counsel.  As always, I

23   appreciate your vigorous advocacy and the fact that you're

24   civil to one another, at least in front of me.  Thank you.

25            (The proceedings concluded at 9:57 a.m.)

28

1                            -o0o-

2        I certify that the foregoing is a correct

3        transcript from the electronic sound recording

4        of the proceedings in the above-entitled matter.

5

6        _____        10/15/14

7        Donna Davidson                          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25