1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    WILLIAM ISAACSON (*pro hac vice*)
6   KAREN DUNN (*pro hac vice*)
    5301 Wisconsin Ave, NW
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
11  KIERAN P. RINGGENBERG (*pro hac vice*)
    1999 Harrison Street, Suite 900
12  Oakland, CA 94612
    Telephone: (510) 874-1000
13  Facsimile: (510) 874-1460
    sholtzman@bsfllp.com
14  kringgenberg@bsfllp.com

15  *Attorneys for Plaintiffs*
    Oracle USA, Inc., Oracle America, Inc., and
16  Oracle International Corp.

    MORGAN, LEWIS & BOCKIUS LLP
    THOMAS S. HIXSON (*pro hac vice*)
    KRISTEN A. PALUMBO (*pro hac vice*)
    One Market Street
    Spear Street Tower
    San Francisco, CA 94105-1596
    Telephone: (415) 442-1000
    Facsimile: (415) 442-1001
    thomas.hixson@morganlewis.com
    kristen.palumbo@morganlewis.com

    DORIAN DALEY (*pro hac vice*)
    DEBORAH K. MILLER (*pro hac vice*)
    JAMES C. MAROULIS (*pro hac vice*)
    ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    dorian.daley@oracle.com
    deborah.miller@oracle.com
    jim.maroulis@oracle.com

17

18                    **UNITED STATES DISTRICT COURT**

19                         **DISTRICT OF NEVADA**

20

21  ORACLE USA, INC., a Colorado corporation;        CASE NO. 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
22  corporation; and ORACLE INTERNATIONAL            **PLAINTIFFS ORACLE USA, INC.,**
    CORPORATION, a California corporation,           **ORACLE AMERICA, INC. AND**
23                                                   **ORACLE INTERNATIONAL'S**
                    Plaintiffs,                      **PROPOSED ADDITIONAL OR**
24           v.                                      **MODIFIED JURY INSTRUCTIONS**

25  RIMINI STREET, INC., a Nevada corporation;
    SETH RAVIN, an individual,
26
                    Defendants.
27

28

1    Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

2    ("Oracle") respectfully submit the attached additional or modified proposed post-trial jury

3    instructions, and withdraws certain previous proposed jury instructions.

4                                              **DISCUSSION**

5    The parties jointly presented agreed post-trial jury instructions (numbered **J-12** to **J-45**).

6    Dkt. No. 750.  Oracle also submitted proposed post-trial instructions that Rimini disputes

7    (numbered **P-7** to **P-48**).  Dkt. No. 752.  In the course of initial jury instruction briefing, Oracle

8    submitted additional proposed instructions (numbered **P-50** to **P-52**) as alternatives to certain of

9    Rimini's proposed instructions.  Dkt. No. 768 at 31, 38-39, 57.

10   In light of developments at trial, Oracle proposes the following additional or modified

11   proposed post-trial jury instructions, and withdraws certain previous proposed jury instructions.

12   *First*, in light of the Court's careful attention to TomorrowNow issues and limiting of the

13   evidence concerning TomorrowNow, Oracle proposes a modified TomorrowNow instruction that

14   does nothing more than state the prohibited Rule 404(a) propensity inference.  Oracle's new

15   proposal is **P-10B**, a replacement for the original P-10.

16   *Second*, in order to streamline presentation to the jury, Oracle will not submit to the jury

17   its claim for trespass to chattels or its claim for Defendants' direct breaches of contract.  For that

18   reason, the following instructions are no longer relevant:  **J-38** and **J-39**, **P-44** and **P-45** (and

19   Rimini's corresponding proposals **D-39** to **D-41**, Dkt. No. 738-1 at 48-50).

20   *Third*, that decision also requires updating Oracle's proposed instructions on the

21   interference torts instructions (*i.e.*, inducing breach of contract and intentional interference with

22   prospective economic advantage) because Oracle will not proceed with trespass to chattels as a

23   predicate wrongful act.  Oracle provides updated instructions **P-24B** and **P-25B** to replace

24   Oracle's original proposed P-24 and P-25.

25   *Fourth*, Oracle proposes a new jury instruction, **P-53**, to prevent any jury confusion

26   concerning the marketing survey discussed in Mr. Rowe's testimony.  Tr. 2399:3-2401:18; *see*

27   *also* 2378:17-2381:12 (sustaining related objection).

28

---

1    *Finally*, Oracle presents **P-54** to **P-56**, which are license instructions in light of the

2    parties' trial contentions and presentations.  In a pre-trial ruling, the Court held that "an

3    instruction interpreting the various Oracle software licenses is appropriate and will help clarify

4    the issues for the jury," that "construing the scope of a license is principally a matter of contract

5    interpretation," and that "it is undisputed by the parties that the terms sought to be interpreted are

6    unambiguous."  Dkt. 719 at 6.  However, the Court explained that it was "premature to settle the

7    exact language of the jury instructions until the Court has heard all the arguments and considered

8    all the evidence."  Dkt. 719 at 7.  At trial, Richard Allison of Oracle testified about the key

9    contract terms for PeopleSoft, J.D. Edwards, and Siebel licenses and was cross-examined about

10   them.  In addition, Seth Ravin testified about his knowledge and understanding of the license

11   agreements.  No further testimony or evidence as to the content of the license terms is expected.

12   Accordingly, the determination of the disputed jury instructions is now ripe.

13

14

15   DATED:  September 30, 2015              BOIES SCHILLER & FLEXNER LLP

16

17                                          By: /s/  *Kieran P. Ringgenberg*
                                               Kieran P. Ringgenberg
18                                             Attorneys for Plaintiffs
                                               Oracle USA, Inc., Oracle America, Inc., and
19                                             Oracle International Corp.

20

21

22

23

24

25

26

27

28

---

ORACLE'S PROPOSED ADDITIONAL OR MODIFIED JURY INSTRUCTIONS

1

# **TABLE OF CONTENTS**

2

P-10B.   TOMORROWNOW EVIDENCE ................................................................. 1

P-24B.   INDUCING BREACH OF CONTRACT ..................................................... 3

P-25B.   INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
          ADVANTAGE ................................................................................................ 6

P-53.   CUSTOMER SURVEYS. ............................................................................. 9

P-54.   COPYRIGHT DEFENSE—LICENSE. ....................................................... 11

P-55.   PEOPLESOFT AND ORACLE DATABASE INFRINGEMENT. ............... 13

P-56.   MEANING OF LICENSE AGREEMENTS. ................................................ 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **P-10B.  TOMORROWNOW EVIDENCE**

2         You may not use evidence concerning TomorrowNow to infer that, because of his or her

3   character, Seth Ravin or any individual employed by Rimini Street did the things that Oracle

4   contends.

5

6   Authority:  FRE 404(b).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S PROPOSED ADDITIONAL OR MODIFIED JURY INSTRUCTIONS

1    You may not use evidence concerning TomorrowNow to infer that, because of his or her

2   character, Seth Ravin or any individual employed by Rimini Street did the things that Oracle

3   contends.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   JURY INSTRUCTION NO. _____

1    **P-24B.  INDUCING BREACH OF CONTRACT**

2         In addition to its other claims, Oracle contends that Rimini Street induced customers to

3    breach their contracts with Oracle.  Specifically, Oracle contends that the terms of use on its

4    website are contracts with its customers.  Oracle contends that Rimini Street intentionally caused

5    Oracle customers to breach their contracts with Oracle.

6         To prevail on this claim in the circumstances of this case, Oracle must prove each of the

7    following for each such contract by a preponderance of the evidence:

8         1)    A valid contract existed between Oracle and a customer;

9         2)    Rimini Street knew the contract existed;

10        3)    Rimini Street intentionally engaged in conduct designed to disrupt the contract by

11              means of one or more of the following:  (a) fraud, that is, a deceit which, whether

12              perpetrated by words, conduct, or silence, is intentionally designed to cause a

13              reasonable person to rely upon it, and which does cause reliance; or (b) by

14              violating the computer-related statutes I will explain in a moment (that is, the

15              CFAA, NCCL, or CDAFA);

16        4)    Rimini Street did so with the intent to disrupt the contract;

17        5)    Such conduct did in fact disrupt the contract; and

18        6)    Such conduct was a substantial factor in causing Oracle harm.

19        If you find that Oracle proved each of these elements, you should find for Oracle and

20   against Rimini Street on the claim for inducing breach of contract.  If, on the other hand, Oracle

21   has failed to prove any of these elements, you should find for Rimini Street and against Oracle

22   on the claim for inducing breach of contract.

23

24   Authority:  Nevada Jury Instructions (Civil) No. 15CT.25 (2011) (modified to reflect parties and

25   circumstances of the case; for clarity and specifically to limit the conduct the jury may consider

26   so as to reduce juror confusion and make additional instructions re wrongfulness, privilege, or

27   justification unnecessary); CACI 2200 (2015) (modified to reflect parties and circumstances of

28

1    the case; for clarity and specifically to limit the conduct the jury may consider so as to reduce

2    juror confusion and make additional instructions re wrongfulness, privilege, or justification

3    unnecessary); Restatement (Second) Torts, § 768 & cmt. (d) (competitor's fraud cannot be

4    privileged or justified); *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199 (1979) (conduct by a

5    competitor that is "wanton, malicious, and unjustifiable" or that is not "fair and reasonable" is

6    not privileged or justified); (modified); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

7    1134, 1159 (2003) (competitor's conduct that violates law satisfies conduct element); Federal

8    Jury Practice and Instructions § 16:08 (Criminal) (West 2015) (definition of fraud; added

9    elements expressing requiring reliance and causation from fraud).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S PROPOSED ADDITIONAL OR MODIFIED JURY INSTRUCTIONS

1    In addition to its other claims, Oracle contends that Rimini Street induced customers to

2  breach their contracts with Oracle.  Specifically, Oracle contends that the terms of use on its

3  website are contracts with its customers.  Oracle contends that Rimini Street intentionally caused

4  Oracle customers to breach their contracts with Oracle.

5    To prevail on this claim in the circumstances of this case, Oracle must prove each of the

6  following for each such contract by a preponderance of the evidence:

7         1)    A valid contract existed between Oracle and a customer;

8         2)    Rimini Street knew the contract existed;

9         3)    Rimini Street intentionally engaged in conduct designed to disrupt the contract by

10              means of one or more of the following:  (a) fraud, that is, a deceit which, whether

11              perpetrated by words, conduct, or silence, is intentionally designed to cause a

12              reasonable person to rely upon it, and which does cause reliance; or (b) by

13              violating the computer-related statutes I will explain in a moment (that is, the

14              CFAA, NCCL, or CDAFA);

15        4)    Rimini Street did so with the intent to disrupt the contract;

16        5)    Such conduct did in fact disrupt the contract; and

17        6)    Such conduct was a substantial factor in causing Oracle harm.

18    If you find that Oracle proved each of these elements, you should find for Oracle and

19  against Rimini Street on the claim for inducing breach of contract.  If, on the other hand, Oracle

20  has failed to prove any of these elements, you should find for Rimini Street and against Oracle

21  on the claim for inducing breach of contract.

22

23

24

25

26

27

28  JURY INSTRUCTION NO. _____

1   **P-25B.  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**

2   **ADVANTAGE**

3         In addition to its other claims, Oracle contends that Rimini Street and Seth Ravin

4   intentionally interfered with economic relationships between Oracle and customers that probably

5   would have resulted in an economic benefit to Oracle.

6         To prevail on this claim in the circumstances of this case, Oracle must prove each of the

7   following for each such customer by a preponderance of the evidence:

8         1)      Oracle had an expectancy in a prospective contractual relationship with the

9                 customer;

10        2)      A Defendant knew of the existence of the relationship;

11        3)      The Defendant interfered with the relationship by one or more of the following

12                means:  (a) fraud, that is, a deceit which, whether perpetrated by words, conduct,

13                or silence, is intentionally designed to cause a reasonable person to rely upon it,

14                and which does cause reliance; or (b) by violating the computer-related statutes I

15                will explain in a moment (that is, the CFAA, NCCL, or CDAFA);

16        4)      The Defendant did so with the intent to interfere with or disrupt the relationship;

17                and

18        5)      Such conduct was a substantial factor in causing Oracle harm.

19        If you find that Oracle proved each of these elements as to a Defendant, you should find

20   for Oracle and against the Defendant on the claim for intentional interference with prospective

21   economic advantage.  If, on the other hand, Oracle has failed to prove any of these elements as to

22   a Defendant, you should find for the Defendant and against Oracle on the claim for intentional

23   interference with prospective economic advantage.

24

25   Authority:  Nevada Jury Instructions (Civil) No. 15CT.26 (2011) (modified to reflect parties and

26   circumstances of the case; for clarity and specifically to limit the conduct the jury may consider

27   so as to reduce juror confusion and make additional instructions re wrongfulness, privilege, or

28   justification unnecessary); Restatement (Second) Torts, § 768 & cmt. (d) (competitor's fraud

1   cannot be privileged or justified); CACI 2202 (2015) (modified); *Crockett v. Sahara Realty*

2   *Corp.*, 95 Nev. 197, 199 (1979) (conduct by a competitor that is "wanton, malicious, and

3   unjustifiable" or that is not "fair and reasonable" is not privileged or justified); *Korea Supply Co.*

4   *v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) (competitor's conduct that violates law

5   satisfies conduct element); CACI 2202 (2015) (modified to reflect parties and circumstances of

6   the case; for clarity and specifically to limit the conduct the jury may consider so as to reduce

7   juror confusion and make additional instructions re wrongfulness, privilege, or justification

8   unnecessary); *Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 199 (1979) (conduct by a

9   competitor that is "wanton, malicious, and unjustifiable" or that is not "fair and reasonable" is

10   not privileged or justified); (modified); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

11   1134, 1159 (2003) (competitor's conduct that violates law satisfies conduct element); Federal

12   Jury Practice and Instructions § 16:08 (Criminal) (West 2015) (definition of fraud; added

13   elements expressing requiring reliance and causation from fraud).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    In addition to its other claims, Oracle contends that Rimini Street and Seth Ravin

2    intentionally interfered with economic relationships between Oracle and customers that probably

3    would have resulted in an economic benefit to Oracle.

4    To prevail on this claim in the circumstances of this case, Oracle must prove each of the

5    following for each such customer by a preponderance of the evidence:

6    1)    Oracle had an expectancy in a prospective contractual relationship with the

7           customer;

8    2)    A Defendant knew of the existence of the relationship;

9    3)    The Defendant interfered with the relationship by one or more of the following

10          means:  (a) fraud, that is, a deceit which, whether perpetrated by words, conduct,

11          or silence, is intentionally designed to cause a reasonable person to rely upon it,

12          and which does cause reliance; or (b) by violating the computer-related statutes I

13          will explain in a moment (that is, the CFAA, NCCL, or CDAFA);

14   4)    The Defendant did so with the intent to interfere with or disrupt the relationship;

15          and

16   5)    Such conduct was a substantial factor in causing Oracle harm.

17   If you find that Oracle proved each of these elements as to a Defendant, you should find

18   for Oracle and against the Defendant on the claim for intentional interference with prospective

19   economic advantage.  If, on the other hand, Oracle has failed to prove any of these elements as to

20   a Defendant, you should find for the Defendant and against Oracle on the claim for intentional

21   interference with prospective economic advantage.

22

23

24

25

26

27

28   JURY INSTRUCTION NO. _____

1   **P-53.  CUSTOMER SURVEYS.**

2         You heard witnesses testify about customer satisfaction surveys.  You may not consider a

3   survey as evidence that the survey results are true.  You may only consider the testimony

4   regarding the witnesses' impressions of the surveys and actions taken as a result of the survey.

5

6

7   Authority:   FRE 702, 802; Tr. 2378:19-2381:10, 2401:5-18; *see also M2 Software, Inc. v.*

8   *Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005) (upholding exclusion of survey where

9   creator "did not qualify as an expert on designing or analyzing consumer surveys"); Manual for

10  Complex Litigation § 11.493 (4th ed. 2004) (survey evidence admission requires foundation in

11  "expert testimony" and "disclosure of the underlying data and documentation"); *United States v.*

12  *Arteaga*, 117 F.3d 388, 396 (9th Cir. 1997) ("customer-supplied information" is "hearsay within

13  hearsay").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S PROPOSED ADDITIONAL OR MODIFIED JURY INSTRUCTIONS

1    You heard Defendants' witness Mr. Rowe testify about his understanding of a customer

2  satisfaction survey kept by Rimini Street.  You may not consider that survey or the results of that

3  survey as evidence that the survey results are true.  You may only consider Mr. Rowe's

4  testimony regarding his impressions of the survey and actions he took as a result of the survey.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  JURY INSTRUCTION NO. _____

1   **P-54. COPYRIGHT DEFENSE—LICENSE.**

2   Where Defendants assert a license defense to copyright infringement, it is the

3   Defendants' burden to prove by a preponderance of the evidence the existence of a specific

4   license provision that authorized each individual copy or other infringing work that Rimini Street

5   made. If Defendants satisfy this burden, then it becomes Oracle's burden to prove by a

6   preponderance of the evidence that Rimini Street's copying or other infringement was not

7   authorized by the express license.

8   Rimini Street does not assert any licenses of its own with Oracle relevant to the issues

9   you are deciding.  As you heard at trial, Oracle enters into written license agreements with its

10   customers that allow the customers to use copyrighted Oracle software, and have access to

11   support materials for that Oracle software.  Defendants claim that the customer license

12   agreements authorized Defendants' copying of J.D. Edwards and Siebel software and

13   documentation.

14   As I will explain in further detail, there is no license defense as to PeopleSoft software

15   and documentation and Oracle Database software.

16   In addition, if no customer license existed at the time of copying, then there is no license

17   defense as to that copying.

18

19

20   Authority:  Order at 3, Dkt. 719 ("First, the court notes that Oracle's proposed instruction, or

21   language similar to that proposed by Oracle, fairly and accurately sets forth the parties'

22   evidentiary burdens."); *see also Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (a

23   defendant accused of copyright infringement bears the burden of producing evidence of a

24   license); *Michaels v. Internet Ent. Group, Inc*., 5 F. Supp. 2d 823, 831 (C.D. Cal. 1998) (same);

25   Order at 6, Feb. 13, 2014, Dkt. 474 ("As the party alleging the affirmative defense, Rimini has

26   the initial burden to identify any license provision(s) that it believes excuses its infringement.");

27   Order at 6, Aug. 12, 2014, Dkt. 476 (same).

28

1    Where Defendants assert a license defense to copyright infringement, it is the

2    Defendants' burden to prove by a preponderance of the evidence the existence of a specific

3    license provision that authorized each individual copy or other infringing work that Rimini Street

4    made. If Defendants satisfy this burden, then it becomes Oracle's burden to prove by a

5    preponderance of the evidence that Rimini Street's copying or other infringement was not

6    authorized by the express license.

7    Rimini Street does not assert any licenses of its own with Oracle relevant to the issues

8    you are deciding.  As you heard at trial, Oracle enters into written license agreements with its

9    customers that allow the customers to use copyrighted Oracle software, and have access to

10   support materials for that Oracle software.  Defendants claim that the customer license

11   agreements authorized Defendants' copying of J.D. Edwards and Siebel software and

12   documentation.  As I will explain in further detail, there is no license defense as to PeopleSoft

13   software and documentation and Oracle Database software.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   JURY INSTRUCTION NO. _____

1   **P-55.  PEOPLESOFT AND ORACLE DATABASE INFRINGEMENT.**

2         This Court has previously ruled that Rimini Street has infringed Oracle's PeopleSoft and

3   Oracle Database copyrights.  You are instructed that Rimini Street is liable for copyright

4   infringement of PeopleSoft software and documentation and Oracle Database software as to all

5   copies Rimini Street made on its computers systems and all copies Rimini made not solely for a

6   particular licensee.  Your sole responsibility with respect to Oracle's copyright infringement

7   claim against Rimini Street as to copying PeopleSoft software and documentation and Oracle

8   Database software is to determine whether that infringement was willful and the amount of

9   damages Rimini Street owes.

10

11

12   Authority:  As to Oracle Database, the Court has expressly held as a matter of law that Oracle

13   has prevailed on its claim of copyright infringement.  *See* Dkt. 476, at 15 ("[N]either of Rimini's

14   asserted licenses (the Developer License or its clients' OLSAs) expressly authorize its copying

15   of Oracle's copyrighted Oracle Database software as a matter of law.  Therefore, the court finds

16   that Oracle is entitled to summary judgment on both its claim of copyright infringement as it

17   relates to Oracle Database and Rimini's second affirmative defense for express license as it

18   relates to Oracle Database."). As to PeopleSoft, Oracle's proposed instruction follows from the

19   Court's February 13, 2014 summary judgment order and Rimini's stipulation that it will not

20   assert an express-license defense for PeopleSoft, and that all PeopleSoft licenses at issue in this

21   case are "identical or similar" to the licenses construed in that summary judgment order.[1]  Dkt.

22   599 at 1-2.  The Court ruled that the PeopleSoft licenses for the City of Flint and Pittsburgh

23   Public Schools did not "expressly authorize Rimini's copying of Oracle's copyrighted

24   PeopleSoft-branded software as a matter of law."  Dkt. 474, at 15, 20.

25         It is appropriate to explain the Court's ruling because *Rimini*'s counsel exposed every

26   _____

27   [1] The PeopleSoft licenses construed by the Court have been admitted into evidence.  *See* PTXs
698 (City of Flint), 699 (Pittsburgh Public Schools).

28

1   juror to the Court's ruling in voir dire by proposing the following question, which the Court

2   propounded in substantially the same words:  "Defendants already have been found by the Court

3   to have infringed certain Oracle copyrights, but other claims of copyright infringement remain

4   unresolved in the case and will require determination by you the jury. [ . . . ]").  Dkt 735 at 5; *see*

5   *also* Tr. 75:1-9 ("The defendants in this case have been found by the Court to have infringed

6   certain Oracle copyrights [ . . . .]").  Moreover, *Rimini* witnesses referenced the Court's decisions

7   —unsolicited—when they testified about the license agreements and Rimini's infringement.

8   *E.g.*, Ravin Tr. at 546:14-547:1 ("And he says in the middle, 'Also, something to be aware of

9   that we are using development Oracle software that I don't think is licensed.' He was correct;

10  right? A.  [By Ravin] No, it was licensed.  We -- but according to the judge's ruling, we were

11  outside the scope of the license, yes.");  Maddock Trial Tr. 1399:17-25 & 1404:19-1405:3

12  (testifying twice about "the Court rul[ing] in February 2014").

13      The proposed instruction explains that Rimini has infringed Oracle's copyrights as to

14  PeopleSoft documentation.  It is undisputed that Rimini has copied PeopleSoft documentation,

15  and Rimini Street has not and cannot show at trial that it has any more right to copy that

16  documentation than it did the PeopleSoft software.  Documentation is thus subject to the same

17  license construction that the Court provided on summary judgment. *See, e.g.*, PTX 698, at 5

18  (defined term "Software" includes "Documentation"), *id.* at 1, Section 1.1 (license grant for

19  "Software" limited to "solely for Licensee's internal data processing operations at its facilities");

20  *see also* Order, Dkt. 474 at 12 ("Oracle asserts, and the court agrees, that Section 1.2(b)(i), which

21  authorizes a reasonable number of copies for 'use in accordance with the terms set forth herein'

22  is subject to the licensing restrictions outlined in Section 1.1 of the City of Flint's license

23  [PTX 698]. A 'use in accordance with the terms set forth herein' necessarily means that use of

24  the licensed software under this provision is subject to all other licensing restrictions identified in

25  the same main section, in this case Section 1 of the City of Flint's license.").  Together with

26  Rimini Street's stipulation as to the uniformity or similarity of PeopleSoft licenses, the Court's

27  prior ruling establishes Rimini's liability for copyright infringement as to Oracle's PeopleSoft

28  documentation, and the jury should be instructed accordingly.  PTX5328.

14

1    This Court has previously ruled that Rimini Street has infringed Oracle's PeopleSoft and

2    Oracle Database copyrights.  You are instructed that Rimini Street is liable for copyright

3    infringement of PeopleSoft software and documentation and Oracle Database software as to all

4    copies Rimini Street made on its computers systems and all copies Rimini made not solely for a

5    particular licensee.  Your sole responsibility with respect to Oracle's copyright infringement

6    claim against Rimini Street as to copying PeopleSoft software and documentation and Oracle

7    Database software is to determine whether that infringement was willful and the amount of

8    damages Rimini Street owes.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   JURY INSTRUCTION NO. _____

1   **P-56.  MEANING OF LICENSE AGREEMENTS.**

2        I will now instruct you regarding the terms of the license agreements in this case.  It is

3   my duty as the judge to instruct you as to what the license agreements did and did not allow.

4   You must follow my instructions regarding the meaning of the license agreements.

5        You may not determine that the license agreements have some other meaning based on

6   any evidence or argument that you have heard during the trial.

7        As to PeopleSoft software and documentation, I instruct you that the licenses prohibited

8   Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft

9   software or support materials other than to support the specific licensee's own internal data

10  processing operations on the licensee's own computer systems.  Any copying, preparation of

11  derivative works, or distribution outside the scope of those limitations was prohibited by the

12  license agreements.  This means that the licenses prohibited Rimini Street from, among other

13  things, copying, preparing derivative works from, or distributing PeopleSoft software or support

14  materials on Rimini Street's computer systems.  It also means the licenses prohibited Rimini

15  Street from copying, preparing derivative works from, or distributing PeopleSoft software or

16  support materials in developing or testing software updates for other Rimini Street customers.

17       As to Siebel and J.D. Edwards software and documentation, I instruct you on two points.

18       First, the licenses prohibited Rimini Street from copying Siebel and J.D. Edwards

19  software or support materials other than to support the specific licensee's own internal data

20  processing operations on the licensee's computer systems.  This means that the licenses

21  prohibited Rimini Street from, among other things, copying Siebel and J.D. Edwards software or

22  support materials to support another Rimini Street customer.

23       Second, some of the licenses permitted Rimini Street to make a reasonable number of

24  copies of the Siebel and J.D. Edwards software and documentation on Rimini Street's computer

25  systems exclusively for archival, emergency back-up, or disaster recovery purposes of the

26  licensee.  An archival, back-up, or disaster recovery copy of the software is an unmodified copy

27  of the software for use in the event that the production copy of the software (the copy used on a

28  customer's systems) is corrupted or lost.  This means that the licenses that allowed archival,

16

1    back-up, or disaster recovery copies prohibited Rimini Street from, among other things,

2    modifying the software and documentation or copying the software and support materials on

3    Rimini Street's computer systems for any non-archival, -backup, or -disaster recovery purposes.

4

5

6    <u>Authority</u>:  Oracle's second proposed instruction explains to the jury the contours of the licenses

7    as the Court interpreted them on summary judgment.  *See* Dkt. 723, at 5 ("any interpretation of

8    the software licenses is an issue of law for the court to determine").

9         The instruction addresses the PeopleSoft license terms.  This is necessary to clarify their

10   meaning for the jury in light of the testimony by Mr. Ravin about his claimed understanding of

11   the PeopleSoft license terms, *e.g.*, Tr. 632:24-633:9 (Ravin), and the cross-examination of

12   Richard Allison suggesting to the jury that the terms mean something other than they say, *e.g.*,

13   Tr. 1075:14-1079:1 (questioning Allison about PTX 3657, a Bausch and Lomb license

14   agreement).

15        In addition, the instruction explains the scope of the Siebel and J.D. Edwards licenses,[2]

16   which is necessary in order for the jury to determine whether Rimini's copying was permitted.

17   The proper legal interpretation of those licenses is supplied by the Court at summary judgment.

18   The Court construed the Siebel license before it to permit Rimini to make a reasonable number

19   of copies for "archival, emergency backup, or disaster-recovery testing" purposes.  Dkt. 474, at

20   24.  The Court provided a clear explanation of those terms, which would be helpful to the jury.

21   Dkt. 474, at 11 ("an archival or backup copy of the software - which is inherently an unmodified

22   copy of the software for use in the event that the production copy of the software (the copy used

23   on a customer's systems) is corrupted or lost").  The other Siebel licenses at issue in this case

24   contain terms that carry the same limitations (or are even more restrictive).  *See* PTX 5466, at 1.

25   _____

26   [2] The Siebel and J.D. Edwards licenses construed by the Court have been admitted into evidence.
     PTX 704 (Giant Cement), PTX 705 (Novell).  Richard Allison testified as to the similarity of the
27   licenses for other customers at to the key terms.  Tr. at 848:17-860:3; PTX 5466 (Siebel license
     terms); PTX 5467 (J.D. Edwards license terms).

28

1    As to J.D. Edwards, the Court interpreted the license before it to allow Rimini to make copies for

2    the licensee's "archival purposes."  Dkt. 474, at 22.  However, because many of the J.D.

3    Edwards licenses at issue in this case allow for disaster-recovery and emergency back-up

4    purposes, *see* PTX 5466, at 2, Oracle's proposed instruction – to ensure a fair and neutral

5    instruction on the law – adopts the Court's more permissive Siebel-license interpretation.  Dkt.

6    474, at 24 (copies allowed if made for "archival, emergency backup, or disaster-recovery

7    testing").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S PROPOSED ADDITIONAL OR MODIFIED JURY INSTRUCTIONS

1    I will now instruct you regarding the terms of the license agreements in this case.  It is

2    my duty as the judge to instruct you as to what the license agreements did and did not allow.

3    You must follow my instructions regarding the meaning of the license agreements.

4    You may not determine that the license agreements have some other meaning based on

5    any evidence or argument that you have heard during the trial.

6    As to PeopleSoft software and documentation, I instruct you that the licenses prohibited

7    Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft

8    software or support materials other than to support the specific licensee's own internal data

9    processing operations on the licensee's own computer systems. Any copying, preparation of

10   derivative works, or distribution outside the scope of those limitations was prohibited by the

11   license agreements.  This means that the licenses prohibited Rimini Street from, among other

12   things, copying, preparing derivative works from, or distributing PeopleSoft software or support

13   materials on Rimini Street's computer systems. It also means the licenses prohibited Rimini

14   Street from copying, preparing derivative works from, or distributing PeopleSoft software or

15   support materials in developing or testing software updates for other Rimini Street customers.

16   As to Siebel and J.D. Edwards software and documentation, I instruct you on two points.

17   First, the licenses prohibited Rimini Street from copying Siebel and J.D. Edwards

18   software or support materials other than to support the specific licensee's own internal data

19   processing operations on the licensee's computer systems. This means that the licenses

20   prohibited Rimini Street from, among other things, copying Siebel and J.D. Edwards software or

21   support materials to support another Rimini Street customer.

22   Second, some of the licenses permitted Rimini Street to make a reasonable number of

23   copies of the Siebel and J.D. Edwards software and documentation on Rimini Street's computer

24   systems exclusively for archival, emergency back-up, or disaster recovery purposes of the

25   licensee. An archival, back-up, or disaster recovery copy of the software is an unmodified copy

26   of the software for use in the event that the production copy of the software (the copy used on a

27   customer's systems) is corrupted or lost.  This means that the licenses that allowed archival,

28   back-up, or disaster recovery copies prohibited Rimini Street from, among other things,

ORACLE'S PROPOSED ADDITIONAL OR MODIFIED JURY INSTRUCTIONS

1    modifying the software and documentation or copying the software and support materials on

2    Rimini Street's computer systems for any non-archival, -backup, or -disaster recovery purposes.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    JURY INSTRUCTION NO. _____