SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S REPLY IN SUPPORT OF ITS RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge:      Hon. Larry R. Hicks |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD .....................................................................................................1

III. ARGUMENT ..................................................................................................................1

    A. Oracle's Causation Theory Is Fundamentally Flawed as a Matter of Law...................1

    B. Oracle Failed To Prove Essential Elements Of Its Computer Access Claims. ............6

    C. Rimini's Undisputed Good Faith Belief Precludes An Award Of Punitive Damages. ........................................................................................................................7

IV. CONCLUSION ...............................................................................................................8

## I. INTRODUCTION

Oracle does not cite a single case in which a court has held that causation may be established as to every single customer a plaintiff loses by showing that a defendant engaged in an alleged "pattern and practice" of infringement. Controlling Ninth Circuit case law refutes Oracle's theory, and Oracle's suggestion that the Ninth Circuit authorized its approach in *Oracle v. SAP* is patently false. This total lack of support for Oracle's causation theory requires judgment for Rimini on Oracle's non-copyright claims and its lost profits damages for infringement. In addition, all of Oracle's computer access claims fail for basic reasons of law, some of which Oracle does not even dispute. And Rimini's undisputed good faith belief in the legality of its actions precludes an award of punitive damages. For these and all the reasons Rimini set forth in its Rule 50(a) motion, Rimini respectfully requests that the Court grant judgment as a matter of law on all of Oracle's claims, and in particular that the Court at least trim this case down to what it is—alleged copyright infringement for which the jury should award either the fair market value of use of the copyrights or statutory damages.

## II. LEGAL STANDARD

Contrary to Oracle's suggestion that "Rule 50(a) is discretionary" (Dkt. 843 at 5), the trial court "***must*** direct a verdict" for the moving party "if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis added). In other words, the Court has the "*duty* to grant defendants' motion for judgment as a matter of law where the facts and inferences from the evidence point so strongly and overwhelmingly in favor of defendants." *Ortega, M.D. v. O'Connor*, 1993 WL 87804, at *1 (N.D. Cal. Mar. 23, 1993), *aff'd in part & rev'd in part*, *Ortega v. O'Connor*, 50 F.3d 778 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 251) (emphasis added); *see also Microsoft Corp. v. Motorola, Inc.*, 2013 WL 5373179, at *3 (W.D. Wash. Sept. 24, 2013) (same).

## III. ARGUMENT

**A.     Oracle's Causation Theory Is Fundamentally Flawed as a Matter of Law.**

No legal authority absolves Oracle of its responsibility to demonstrate a "causal nexus" between Rimini's alleged infringement or interference and Oracle's losses. *Polar Bear Prods., Inc. v.*

*Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).  Thus, as a matter of law, "Oracle has failed to establish th[e] requisite causal connection and therefore cannot recover damages related to those [lost] customers."  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014); *see also* 5-14 Nimmer on Copyrights § 14.02 ("In the absence of convincing evidence as to the volume of sales that plaintiff would have obtained but for infringement, the measure of lost profits may be rejected as too speculative"); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 528, 530 (1996) (rejecting "interference with the market" as an invalid intentional interference theory).

Oracle *ignores* the Ninth Circuit's controlling holding in *Oracle v. SAP*, that where Oracle's expert could not identify the role of the infringement in the loss of a customer, there was no causal connection as a matter of law, yet Oracle claims that the lost profits analysis here is "substantially the same" as in *Oracle v. SAP*.  Dkt. 843 at 15.  That is demonstrably false.  In fact, the parties in *Oracle v. SAP* performed a customer-by-customer analysis, evaluating the characteristics of *each particular* customer and the role (or absence of the role) of the infringement in their decision to leave Oracle.

SAP's expert (Mr. Clarke) calculated Oracle's lost profits based on an analysis of each of "the 358 TomorrowNow customers and the 86 SAP customers."  *Oracle v. SAP*, 4:07-cv-01658-PJH, ECF No. 1236 at 1536 (N.D. Cal.).  Mr. Clarke described his analysis:

> So it's what happened as a result of the infringement that's what matters.  And the only way to do that is to look at one customer at a time.  You have to try to determine what they did….  If they went to TomorrowNow or went to SAP for reasons completely unrelated to the infringement, then there would be no damages, and each customer is unique.  So **the only way to do that is to gather the information one customer at a time** and try to understand that information to let us know why they did what they did.  So it's a behavioral issue, why they did what they did.

*Id.* at 1536-37 (emphasis added).  Mr. Clarke analyzed the specific characteristics of each customer, placed them in "buckets or pools," and formed an opinion for each specific customer on whether they left Oracle because of SAP's infringement or for some other reason.  *Id.* at 1614.  For example:

- ➢ **Honeywell**.  "On 3/03, that is, March of 2003, Honeywell bought something from SAP.  On March of '05, they bought some more at SAP.  So that's after the TomorrowNow transaction.  But this company didn't go to TN support until December of '06.  So, TomorrowNow could not possibly be the cause of those sales at SAP."  *Id.* at 1625.

- ➢ **Sara Lee**.  "Sara Lee acquired Earth Grains and Sara Lee had been with SAP for a number of

years and had decided to move to SAP in 2005 and 2006, never planned to upgrade, never heard of Safe Passage, had a stable and customized PeopleSoft installation." *Id.* at 1626.

- **Lexmark**. "Mr. O'Donnell at Lexmark [testified] that Lexmark chose SAP over Oracle because SAP scored higher on a 300-point test and that TomorrowNow was not even a data point." *Id.*

- **BASF**. "BASF bought a company called Englehard and BASF has been with SAP for the longest time. It is a huge international company. It's a very large company with lots of subsidiaries, and they all run SAP. So, when SAP bought Englehard, they said you now have to go to SAP. And so TomorrowNow, the infringement couldn't possibly be the cause of Englehard becoming a SAP customer." *Id.* at 1627.

This analysis was "very time-consuming" and "very expensive" for SAP; in fact, Mr. Clarke testified that he had a team of "121 different people" working on his analysis of all the customers at issue and whether their leaving Oracle was a result of SAP's infringement. *Id.* at 1536-37. This analysis is not "impossible" as Oracle argues in this case.

Indeed, Oracle's expert *agreed* that a proper lost profits analysis would require examining "exactly" each customer. *Oracle v. SAP*, ECF No. 1233 at 1061 ("If there's a gap in service … it should not be part of the lost profits"); *id.* at 1062 ("it depends. We have to look at that exact one"); *id.* ("you get into these judgment calls on what to do"). In fact, because it required so many "judgment calls," Oracle argued that *even* Mr. Clarke's detailed analysis was insufficient, and therefore the jury should award a fair market value of use award. *See Oracle v. SAP*, ECF No. 1057 ("proving lost profits is often impractical because it is difficult to prove them with specificity"). In arguing that the jury should select fair market value of use as the better measure of copyright damages, Oracle's counsel (David Boies) argued that SAP's detailed and specific model was unduly speculative:

> A royalty … based on … profits allegedly gained or lost as a result of the intellectual property being taken ***is impossibly difficult to administer. This is very important.***
>
> They want – they propose a running royalty that would … require you to figure out why a particular customer left and why a particular customer bought a particular piece of software.

You got to go into the customer's mind, figure all that out. Now, no one, neither any expert witness nor any fact witness, could identify a single license whose royalty, like the royalty defendants propose here, depended on determining why a particular customer purchased a particular product or service or left a particular supplier like Oracle.

*Oracle v. SAP*, ECF No. 1239 at 2087-88. Here, Ms. Dean's expert report says substantially the same thing—that fair market value of use is the better measure of copyright damages due to the "difficulty (or inability) in determining every instance where Rimini's actions have caused customers to not license products or buy support or other services from Oracle." Dean Rpt. ¶ 44.

The other authorities Oracle relies on similarly do not absolve a copyright plaintiff of establishing an actual "causal nexus" between the alleged infringement or misconduct and the harm complained of. For example, in *Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11 (2d Cir. 1981), relied upon by Oracle, sales of a copyrighted fabric went from a 215% annual *increase* to a 68% annual *decrease* upon the market entry of an infringing fabric, and the court found that these and other statistics provided evidence of a causal nexus. *Id.* at 13-14. However, the court held that an expert's testimony on projected sales "completely devoid of" evidentiary support was properly excluded. *Id.* at 15. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985), as Rimini has pointed out repeatedly (Dkts. 733, 739, 766) with no response from Oracle, is totally inapposite. *Harper* dealt with the fourth statutory factor for the fair use defense to infringement, namely, "the effect on the potential market for or value of the copyrighted work." *Id.* at 561, 566. The Supreme Court did not hold anything with respect to causation, damages, or anything else relevant to this case.

It was Oracle's burden to establish the causal nexus between the wrongdoing it alleged and the lost profits it claims it suffered (*Polar Bear*, 384 F.3d at 711), but it has not attempted to show this in any way that approximates the expert analyses in *Oracle v. SAP* or any of the cases Oracle relies on here. Oracle did not provide any evidence regarding the reasons its customers left Oracle. It did not call a single customer, and its experts (Mr. Yourdon and Ms. Dean) both admitted that they did not consider the circumstances of individual customers in their analysis. *E.g.*, 9/24 Tr. 1712-1713, 1723, 1900.

Rather, the evidence admitted by Rimini demonstrates that Oracle's customers left for reasons having nothing to do with Rimini's infringement or interference. *See*, *e.g.*, 9/23 Tr. 1532:5-1535:14 (Wendy's considered other third parties and self-support); 9/24 Tr. 1715:11-23 (Pitney Bowes engaged in self-support); *id.* 1887:2-1888:2 (Bausch & Lomb dissatisfied with Oracle customer service). Further, Oracle's attrition rate *improved* after Rimini entered the market, and Oracle's causation expert admitted that he conducted *no statistical or mathematical analysis*. *Id.* 1712:16-20. Thus, there is literally no evidence—only speculation that is contradicted by the evidence—of a causal nexus between Rimini's infringement and interference and Oracle's loss of customers.

Ms. Dean did not "look[] at the evidence on a per-customer basis," as Oracle claims. Dkt. 843 at 17. Ms. Dean was asked repeatedly on cross-examination for information about the customers on her list that she claimed Oracle lost as a result of Rimini's infringement. She could not say in response to any of the questions what actually caused the customer to leave Oracle and go to Rimini. Her response at every single point was a variation of "I'd say that my opinion is that Rimini's entire business model was based on the actions that are alleged to be misrepresentations and copyright infringement. So whether or not they had a direct communication with one customer isn't relevant because the entire business is operating in this fashion." 9/25 Tr. 1920. She responded to dozens of questions in this way—when asked about what caused a specific customer of group of customers to leave Oracle and go to Rimini, she had no information or opinion and based her opinion as to the measure of damages on Mr. Yourdon's testimony that Rimini could not have existed without infringing and that without Rimini, every customer would have no choice but to go to Oracle. *E.g.*, *id.* at 1920-1921 ("whether or not [Rimini] had a direct communication with one customer isn't relevant"); *id.* at 1922 (testifying she did not review evidence relating to each customer); *id.* at 1923 (testifying that she did not consider the alternatives available to each customer); *id.* at 1925-1926 (testifying that she is unaware if Rimini customers' environments were locally hosted or remotely hosted).

This causation-by-assumption approach—that Rimini would not have existed (despite uncontradicted evidence to the contrary, *see* 9/28 Tr. 2122-2130) and that every customer would have gone to Oracle because the other alternatives available were not viable (despite uncontradicted

Gibson, Dunn & Crutcher LLP

5

evidence to the contrary, *see*, *e.g.*, 9/23 Tr. 1532-1535; 9/29 Tr. 2414-2431)—is invalid as a matter of law, and should not be sent to the jury.

**B.    Oracle Failed To Prove Essential Elements Of Its Computer Access Claims.**

On each of Oracle's claims involving improper access to Oracle's computers (breach of contract, trespass, hacking, and induced breach of the website terms of use), Oracle either does not oppose Rimini's motion or fails to respond on required elements of the causes of action.

***First***, Oracle acknowledges that it has no claim for trespass to chattels or breach of contract. For example, Oracle did not prove "actual injury" to its "computer system." Dkt. 838 at 17 (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1351 (2003)); *see* 9/22 Tr. 1194:21-23 (Hicks) ("Q. I'd like to make one thing clear. You are not -- you don't have the opinion that Rimini caused physical harm to Oracle's servers; is that right? A. I don't."). And Oracle expressly withdrew these claims in its additional proposed jury instructions. Dkt. 852 at 2 ("Oracle will not submit to the jury its claim for trespass to chattels or its claim for Defendants' direct breaches of contract").

***Second***, Oracle does not dispute that Rimini acted with its clients' authorization and permission to access Oracle's website. *See* Dkt. 838 at 14 ("The evidence at trial demonstrated that Rimini *had authorization* from licensed customers to access Oracle's database") (citing record). At no point in its opposition brief does Oracle dispute this assertion or this evidence. Nor could it. Oracle acknowledged that it was proper for "customers [to] have consultants access the [Oracle] website on their behalf." 9/18 Tr. 866:9-12 (Allison); *see* 9/22 Tr. 1107:15-19 (same); *id.* 1201:10-13 (Renshaw) (same). For this basic and undisputed reason, all of Oracle's computer hacking claims fail as a matter of law. *See United States v. Nosal*, 676 F.3d 854, 864 (9th Cir. 2012) (*en banc*) ("Because Nosal's accomplices had permission to access the company database and obtain the information contained within, the government's charges fail to meet the element of 'without authorization, or exceeds authorized access'"); *see also* 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(A), (a)(5)(B) (requiring conduct "without authorization" or "exceed[ing] authorized access"); Cal. Penal Code § 502(c)(2), (c)(3) (requiring conduct "without permission"); Nev. Rev. Stat. § 205.4765(1), 205.4765(3) (requiring conduct "without authorization").

***Third***, Oracle explains that its "inducing breach of contract claim concerns Oracle's terms of use, not software licenses." Dkt. 843 at 11. If that is true, then Oracle does not have an induced breach claim, because its customers did not breach the website terms of use. *Rimini* accessed Oracle's website (thereby supposedly entering into a contract), not the customers, and "the tort cause of action for interference with contract does not lie against a party to the contract." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994); *see also Hiraide v. Vast Sys. Tech. Corp.*, 2009 U.S. Dist. LEXIS 71383, at *17 (N.D. Cal. Aug. 3, 2009) ("MDV is itself a party to the contract and therefore cannot be sued for the tort of inducing the breach of a contract to which it is a party"). Because the customers did not agree to the terms of use, they did not breach the agreement. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) ("Typically, only a party to a contract can breach it"). And without a breach, there can be no induced breach. Any theory of agency—Rimini acting as an agent on behalf of a customer—also fails as a matter of law. *E.g.*, *Summerfield v. Hines*, 45 Nev. 60, 69 (1921) ("It is clear … the action which appellants seeks to maintain is an action for damages for the breach of a contract" based on actions taken by "respondent's agent"); *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 963-64 (2013) (rejecting application of contractual interference tort to "an agent of a party to the contract").

### C. Rimini's Undisputed Good Faith Belief Precludes An Award Of Punitive Damages.

Rimini held a reasonable and good faith belief at the time that it was permitted to offer third-party support to its clients, and that the processes it used in doing so were authorized by the license agreements. *E.g.*, 9/16 Tr. 279:7-8, 376:21-377:3, 377:22-24; 9/17 Tr. 598:1-6, 591:19-592:9, 633:12-634:3, 636:19-637:23, 701:23-702:11. Oracle has never claimed that Rimini gave a single client some version of software that was outside the scope of that client's license. And there has been no evidence introduced at trial evincing the malicious and evil intent necessary to impose punitive damages on Rimini for its statements to its customers that it respected Oracle's intellectual property by ensuring that Rimini's clients did not receive any Oracle software that they did not purchase and were not otherwise entitled to. This consistent and undisputed evidence establishes as a matter of law that Rimini did not act with the required level of malice. *E.g.*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007); *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 185 (1994).

Oracle now claims that it "does not rely on Ravin's previous employment with TomorrowNow and the subsequent lawsuit brought against TomorrowNow for Oracle's argument that the Defendants acted with malice and conscious disregard." Dkt. 843 at 24 n.12. But Oracle told the Court before trial that punitive damages were warranted because "[t]his was not the first time that Ravin engaged in this conduct, and he persisted in this unlawful conduct even after Oracle sued TomorrowNow and after TomorrowNow shut down." Dkt. 747 at 24. And throughout the trial, Oracle has used Rimini's state of mind as a lever to pry TomorrowNow into the case. *E.g.*, 9/16 Tr. 392:4-5 ("It's obviously become clear that the good faith beliefs of Mr. Ravin have been put at issue in this case" and seeking to introduce PTX-30 to show that Mr. Ravin did not stop local hosting even though TomorrowNow did); 9/17 Tr. 496:5-497:16 (attempting to introduce PTX-2140, which included the admission of "wrongdoing" by SAP's CEO); 9/21 Tr. 939:24-940:2 (trying to connect TomorrowNow acts to previous "wrongdoing" admission). Its attempt to now distance itself from TomorrowNow as a basis for punitive damages is baffling.

In short, there was no indication between 2006 and 2011 that Rimini's interpretation of the lawfulness of its conduct was objectively unreasonable, and therefore Rimini's statements to its customers that it believed it was acting lawfully were not malicious or evil. *Safeco*, 551 U.S. at 69. Punitive damages are unavailable here as a matter of law, and the Court should grant judgment for Rimini and avoid the potential of burdening the Court, the parties, and the jury with a legally improper punitive damages phase of trial.

### IV.  CONCLUSION

The Court should order judgment for Rimini on all of Oracle's claims, and at the very least order judgment on all of Oracle's non-copyright claims and on the lost profits and infringer's profits measure of copyright damages.

DATED:  October 1, 2015          GIBSON, DUNN & CRUTCHER LLP

By: *Blaine H. Evanson*
    Blaine H. Evanson

*Attorneys for Defendants
Rimini Street, Inc. and Seth Ravin*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2015, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: *Blaine H. Evanson*
　　　Blaine H. Evanson

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*