| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com | MORGAN, LEWIS & BOCKIUS LLP<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: 415.442.1000<br>Facsimile: 415.442.1001<br>thomas.hixson@morganlewis.com<br>kristen.palumbo@morganlewis.com |
| BOIES, SCHILLER & FLEXNER LLP<br>WILLIAM ISAACSON (*pro hac vice*)<br>KAREN DUNN (*pro hac vice*)<br>5301 Wisconsin Ave, NW<br>Washington, DC 20015<br>Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131<br>wisaacson@bsfllp.com<br>kdunn@bsfllp.com | DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>ORACLE CORPORATION<br>500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070<br>Telephone: 650.506.4846<br>Facsimile: 650.506.7114<br>dorian.daley@oracle.com<br>deborah.miller@oracle.com<br>jim.maroulis@oracle.com |
| BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br>kringgenberg@bsfllp.com | |

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**ORACLE'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW ON DEFENDANTS' LICENSE DEFENSE AND ON DEFENDANTS' AVOIDED COSTS DAMAGES THEORY** |

Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle") will and hereby do move for judgment as a matter of law under Rule 50(a) on Defendants Rimini Street's and Seth Ravin's (together, "Rimini's") express license defense and avoided costs damages theory.

## ARGUMENT

After "a party has been fully heard on an issue during a jury trial," a court may grant "judgment as a matter of law against the party" if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The function of Rule 50 is to "remove . . . issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 447-48 (2000) (internal quotation marks omitted); *see Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007) (Rule 50(a) "allows a court to remove 'issue[s]' – claims, defenses, or entire cases – from the jury where there is no 'legally sufficient evidentiary basis' to support a particular outcome"). The "standard for granting a motion for summary judgment is identical to that for granting a judgment as a matter of law." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1020 (9th Cir. 2005).

### I.    RIMINI HAS NO LICENSE DEFENSE AS A MATTER OF LAW.

Rimini's only remaining defense for copying Oracle software and support materials is an express license defense. Dkt. 528 (Pretrial Order) at 54-55; Dkt. 741 (Rimini Trial Br.) at 5 ("The J.D. Edwards, Siebel, and PeopleSoft Documentation and Licenses Expressly Authorized Rimini's Conduct and Defeat Oracle's Copyright Infringement Claim."). Rimini bears the burden of identifying a license term authorizing its copies. Dkt. 719 (Order Re Jury Instructions) at 3.

There is no "legally sufficient evidentiary basis" in this case to support *any* license defense for Rimini's copying of Oracle's copyrighted software and documentation. *See Summers*, 508 F.3d at 926. Consequently, Oracle is entitled to judgment as a matter of law that Rimini has no license defense for any copy in this case.

### A. PeopleSoft and Oracle Database

Rimini's inability to assert a license defense for its copies of PeopleSoft and Oracle Database software is plain. Rimini "stipulated to liability [for copyright infringement] as to the PeopleSoft software," and the Court granted summary judgment to Oracle on its copyright infringement claim as to Oracle Database. Dkt. 766 at 19:9-13; Dkt. 476 at 15-16. Even before trial, Rimini's license defense for PeopleSoft and Oracle Database software was already gone for all copies.

Rimini reserved the right to assert a license defense for its copying of PeopleSoft support *documentation*, but it cannot maintain that defense. The parties stipulated that the City of Flint and Pittsburgh Public Schools licenses are representative of "the PeopleSoft license agreements for all of Rimini's PeopleSoft customers," Dkt. 599, and both forbid Rimini to have PeopleSoft documentation on its systems. PTX 698 at 5, § 16 (defined term "Software" includes documentation); *id.* at 1 § 1.1 ("Software" must be at customer's facilities); PTX 699 at 6 § 15 (defined term "Licensed Rights" includes both software and documentation); *id*. at 1 § 2.1(d) (customer may not "[d]istribute . . . to any third party any portion of the Licensed Rights"). The Court's construction of these two licenses therefore forecloses Rimini's express license defense as to PeopleSoft documentation. Dkt. 474 at 15, 20  Rimini has offered no evidence to the contrary, and Oracle is therefore entitled to judgment.

### B. Siebel and J.D. Edwards

Rimini's Siebel and JD Edwards copies were unauthorized. This Court already found that the JD Edwards license for Giant Cement (PTX 704) and the Siebel license for Novell (PTX 705) permit copies for "archival" and "backup" purposes only. Dkt. 474 at 22, 24. Mr. Allison's testimony established that those licenses were representative of the JD Edwards and Siebel licenses generally, as both companies "used form license agreements." Tr. 1117:25-1118:5, 1118:15-19 (Allison). Defendants have not introduced into the record any JD Edwards or Siebel

1  licenses with contrary terms.[1]  Rimini argued at trial that some licenses could not be found, but
2  in the absence of a customer license, Rimini has no license defense.
3        Oracle's expert, in undisputed testimony supported by Ravin himself, defined an
4  "archive" or "backup" as a "copy . . . put on a physically different place," on a "separate disk" or
5  otherwise "put aside." Tr. 180:5-181:17, 182:16-24 (Davis); *see also* Tr. 362:21-363:23 (Ravin)
6  (discussing archives shipped to customers on DVDs or USB drives and backups on tape drives).
7  Further, a copy used for development, testing, troubleshooting, or for any purpose other than
8  disaster recovery is not an archive or backup. Tr. 182:16-24 (Davis). This testimony accords
9  with the Court's explanation that these licenses gave the customer the right "[t]o reproduce,
10 exactly as provided by [Oracle], a reasonable number of copies of the [software] solely for
11 archive or emergency back-up purposes or disaster recovery and related testing." Dkt. 474
12 (2/13/14 MSJ Order) at 23 (quoting PTX 705, § 2.1(iv)). That provision can only be satisfied if
13 Rimini's copies for "us[e] *exclusively* for archival and back-up purposes, and related testing, as
14 directly contemplated by Section 2.1(iv)." *Id.* at 24 n.20 (emphasis added). But copies *only* fit
15 that definition when they are created as "inherently an unmodified copy of the software for use in
16 the event that the production copy of the software (the copy used on a *customer*'s systems) is

---

[1] Thirty-three out of the 36 available licenses for Siebel customers allow for "one" or a "reasonable number" of copies for the purposes identified in the summary-judgment opinion. PTX 5466, at 1. Three licenses lack such a provision, and all 36 licenses prohibit use of the software for purposes other than the customer's "own business operations" or "internal business operations" or "own business activities." *Id.*

      Out of the 69 available J.D. Edwards licenses, 61 permit copies for the "archival needs" purpose identified in the summary-judgment opinion (or for substantially similar purposes, including "disaster recovery" and "backup"). *Id.* at 2. Six additional licenses expressly prohibit *any* off-site copies, and two of the 69 licenses do not contain an archive/backup provision. All 69 J.D. Edwards licenses prohibit use of the software for any purposes other than the customer's business operations, and 66 licenses expressly limit the software to the customer's physical facilities or system. *Id.*

      With respect to those licenses that do not contain the provisions the Court identified as allowing Rimini a limited right to possess local copies of software, Oracle is entitled to judgment as a matter of law that Rimini has no license-authorization defense because Rimini undisputedly copied the software. On Siebel, *see* PTX 5466, at 1 & n.3 (three Siebel licenses had no provision for backup copies: Deutsche Post, Industrial Scientific, and Wells Real Estate Funds); PTX 3507, at 32 (Industrial Scientific had four assigned environments). On J.D. Edwards, *see* PTX 5466, at 2 & n.7 ("No offsite copies allowed": AGCO Corporation, Argent Management, Hoover Materials Handling Group, Inc., Jones Lang LaSalle Americas, Inc., M.Z. Berger, Wellman, Inc.); PTX 3507 at 30 (Wellman had an assigned J.D. Edwards environment).

1  corrupted or lost." Dkt. 474 at 11 (emphasis supplied). In "complete contrast" to that permitted
2  backup copy, a software copy made for *other* purposes wherein the copy is "modifiable (or
3  already modified)" is disallowed by the scope of the license. *Id.*
4        Rimini witnesses' testimony is also that Siebel and J.D. Edwards software and
5  documentation were copied for *non*-backup purposes. Rimini "used all of the software,"
6  including all its "Siebel software" and "JDE software" in its "work for customers." Tr. 303:1-5
7  (Ravin). Environments on Rimini's systems were "used in order to support customers"— that
8  was their "full design and purpose." Tr. 364:3-6 (Ravin). Rimini's Siebel environments were
9  designed at the outset for, among other uses, "testing and development" and "troubleshooting."
10 Tr. 318:19-22, 364:7-9 (Ravin); Tr. 1146:5-25 (Chiu) (Siebel copies "used to provide support");
11 Tr. 758:23-759:4 (Ravin) (same); Tr. 1754:8-15 (Whittenbarger) (Siebel copies used for
12 training). Rimini would "use a generic environment for a particular release of the product" to
13 support "other multiple customers." Tr. (Ravin) at 367:2-8. Ravin likewise confirmed that J.D.
14 Edwards environments were for "testing and development" and for "diagnostics and support."
15 Tr. 321:1-6, 760:8-15 (Ravin). Ravin explained Rimini's troubleshooting process: "you're
16 taking the software, you're playing with it to see if you can figure out what's going wrong, what
17 the customer had called in and reported." Tr. 364:24-365:1 (Ravin). Rimini's copies of Oracle
18 software were "general development test environments" or "generic environment[s]" otherwise
19 used for testing, development, support, and troubleshooting. Tr. 320:8-18, Tr. 367:2-8 (Ravin);
20 Tr. 367:18-23 (Ravin) (Rimini would use Customer A's software to troubleshoot for
21 Customer B); 1146:5-25 (Chiu) (explaining that Rimini's internal Siebel environments were
22 "used to provide support for those clients that provided us their software."); Tr. 1754:8-15
23 (Whittenbarger) (Siebel environment used for internal training); Tr. 1757:14-1758:5
24 (Whittenbarger) (Rimini "set[s] up environments to troubleshoot issues"); PTX 181 (June 2009
25 installation of JD Edwards was "to be used for any configuration, testing and development
26 required"), 190 (JD Edwards environments associated with specific customers continued to be
27 created through February 2010), 310 (Siebel environments used for troubleshooting). An
28

ORACLE'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

environment used for testing, development, or troubleshooting is not a backup because you "don't touch" a backup. Tr. 180:9-22, 182:16-183:4 (Davis).

No Rimini copy was a permitted customer backup. Rimini created *its own* backups of environments for *its own* use, not for any customer's internal business use, and stored the backup tapes separately from the "functioning local environments" that remained on Rimini's servers. Tr. 362:25-364:2 (Ravin) (Rimini "did not provide backups to the customers"). At summary judgment, to argue that certain copies were archives, Rimini cited the 2010 deposition testimony of Rimini Senior Vice President Brian Slepko. Dkt. 474 at 24 n.20. The Court relied on the cited testimony in denying summary judgment and permitting Rimini to have a trial on the question of whether those copies were in fact backups. *Id.* at 24. Mr. Slepko did not testify live at trial, and the specific deposition testimony cited by Rimini and relied on by the Court—which was false—was never played to the jury. The admissions by Ravin and others show, conclusively, that these copies were not permissible backups.

With no evidentiary basis to conclude Rimini's copies were authorized by the license terms as construed by the Court, judgment should be granted as a matter of law. *See Washington v. Lambert*, 98 F.3d 1181, 1184, 1194 (9th Cir. 1996) (affirming grant of plaintiffs' Rule 50 based upon "undisputed facts"); *Wharf v. Burlington N. R. Co.*, 60 F.3d 631, 633, 635 (9th Cir. 1995) (affirming grant of Rule 50 motion to plaintiff on affirmative defense of contributory negligence unsupported by evidence).

## II.  RIMINI'S VALUE OF USE THEORY IS LEGALLY DEFICIENT AND CANNOT SUPPORT A JURY VERDICT.

Rimini's expert Scott Hampton at trial offered an opinion and calculation of labor costs he claims Rimini saved through infringement of Oracle's PeopleSoft, J.D. Edwards, and Siebel software – "avoided labor costs." The Court previously held that this opinion was admissible because it was related to the measure of a copyright hypothetical license. Dkt. 724 at 5. At trial, however, Mr. Hampton disavowed that he had offered a hypothetical license opinion. His opinion is insufficient to support a copyright damages award, or an award under any of Oracle's non-copyright claims, as a matter of law.

### A. Mr. Hampton's Avoided Cost Opinion Should Be Stricken Because Mr. Hampton Disavowed the Court's Basis for Admitting His Testimony

Rimini persuaded the Court to admit Mr. Hampton's opinion by claiming his testimony would support a hypothetical license negotiation measure of damages. Dkt. 693 at 6-7 (Rimini arguing that Hampton's opinion is directly related to the measure of a hypothetical license which is "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work"); Dkt. 724 at 5 (holding that Mr. Hampton's testimony was admissible as evidence of "the maximum amount that defendants would have been willing to pay to license the software licenses in a hypothetical negotiation"). But at trial, neither Rimini nor Hampton lived up to that representation. Tr. 2845:8-12 (Hampton) (Q. "[Y]our value of use measure of damages is not a hypothetical license assessment for PeopleSoft, Siebel, or J.D. Edwards; correct? A. No, it is a – the benefit derived or the profit that Rimini gained through its wrongful actions."); *compare* Tr. 2774:10-25 (Hampton) ("this is the first time" Hampton used an "avoided cost [measure] for the value-of-use calculation" in over 180 intellectual property cases) *with* Tr. 2844:17-23 (Hampton) (Hampton has valued a hypothetical negotiation measure of damages more than 80 times). The Court should therefore strike Mr. Hampton's avoided cost opinions and grant judgment as a matter of law on this issue. *See Summers*, 508 F.3d at 926 (Rule 50(a) allows a court to remove "'issue[s]' – claims, defenses, or entire cases – from the jury where there is no 'legally sufficient evidentiary basis' to support a particular outcome").

### B. The Evidence at Trial Does Not Support Any Request By Rimini To Have The Jury Award Hypothetical License Damages

Even setting aside Mr. Hampton's disavowal, the jury has no adequate evidentiary basis as a matter of law to render a verdict on the basis of a hypothetical-license measure. *First*, Mr. Hampton admitted that he had not referred the jury to any "comparable licenses" to use as a benchmark. Tr. 2847:8-19; *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) ("it may be difficult for a plaintiff to establish the amount of such damages without undue speculation in the absence of [a comparable benchmark]"). Nor has Rimini introduced any other transaction.

*Second*, Mr. Hampton's opinion also only addresses one side of the hypothetical negotiation – Rimini's – and fails to address what Oracle had to lose by agreeing to license Rimini.  Tr. 2760:2-2770:1 (Hampton); *Gaylord v. U.S.*, 678 F.3d 1339, 1343 (Fed. Cir. 2012) (holding that it is "incorrect in a hypothetical negotiation inquiry . . . to limit [the] analysis to only one side of the negotiating table" and rejecting damage award based solely on the infringer's perspective); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) ("[t]he award of the owner's actual damages looks at the facts from the point of view of the copyright owner," not the infringer, and "undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal acts"); *Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("[It] is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, non-infringing alternative."), *mandate recalled on other grounds*, 557 F.3d 1377 (Fed. Cir. 2009).

*Third*, Mr. Hampton's opinion is a post-hoc analysis that does not address the expectations of the parties in 2006, and Rimini has not (and cannot) offer evidence to show expectations in 2006.  Tr. 2199:13-2201:21 (Benge), 2823:4-14 (Hampton); *Jarvis v. K2, Inc.*, 486 F.3d 526, 535 n.9 (9th Cir. 2007) (finding emphasis on "post-infringement damages rather than the pre-infringement fair market value" to be "legally defective").

### C. Value Of Use Is Not a Legally Valid Standalone Measure of Damages.

The Court should not allow the jury to consider Mr. Hampton's avoided labor costs as a separate measure of damages, apart from hypothetical negotiations.  The Copyright Act, 17 U.S.C. § 504(b), provides two forms of recovery to a copyright plaintiff:  (1) "actual damages suffered by him or her as a result of the infringement" and (2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  "Actual damages" under the Copyright Act "can be awarded in the form of [the copyright owner's] lost profits" or "hypothetical-license damages."  *SAP AG*, 765 F.3d at 1087.

The plain language of § 504(b) shows that the costs Rimini allegedly avoided by infringement – that is, the incremental cost of a supposedly non-infringing work-around – do not measure Oracle's copyright actual damages.  Indeed, copyright cases reject measuring damages

based on actions defendants did not take. *Deltak, Inc. v. Advanced Systems Inc.*, 767 F.2d 357, 363 n.4 (7th Cir. 1985) ("the fact that [defendant] could have acted . . . in ways other than the way it did act illegally should not be used by it as a reason to defeat recovery of damages caused by the illegal way in which it did act"); *Goldman v. Healthcare Mgmt. Sys.*, 559 F. Supp. 2d 853, 873-76 (W.D. Mich. 2008) (excluding evidence of costs of rewriting infringing software code as irrelevant to copyright damages). Hampton's avoided labor cost opinion is not a legally valid measure of copyright actual damages.

The presence of an alleged non-infringing alternative is also irrelevant to infringer's profits. A prevailing plaintiff in a copyright case is entitled to recover the infringer's profits attributable to the infringement. 17 U.S.C. § 504(b). The defendant may not avoid disgorgement by arguing that it would have been able to earn those same profits without infringing. To allow such a result would contradict the statute's purpose, which is to take away "incentives for would-be infringers and to prevent the infringer from unfairly benefitting from a wrongful act." *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (citations and quotations omitted). Thus, it is "[n]ot acceptable" to allow "the existence of non-infringing alternatives to reduce recovery of wrongful profits. . . . Non-infringing alternatives have nothing to do with [disgorgement]." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5914033, at *4 (N.D. Cal. Nov. 28, 2011).

### D. Avoided Costs Are Not Relevant to Non-Copyright Damages

Mr. Hampton also testified that his avoided cost calculation was a measure of interference damages. Tr. 2829:18-2830:11. This makes no sense.

Oracle's interference claim is based on misrepresentations and computer crimes and involves *compensatory damages*. Rimini has never cited any case holding that cost of a non-infringing workaround is a proper measure of tort damages. To the contrary, "[i]t is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage." *Jordan v. Atchison, Topeka & Santa Fe Ry. Co.*, 934 F.2d 225, 229 (9th Cir. 1991); *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001) (compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered

by reason of the defendant's wrongful conduct"); *accord* Restatement (Second) of Torts § 774A ("One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of . . . the prospective relation; [and] (b) consequential losses for which the interference is a legal cause . . . ."). Avoided costs do not measure compensatory damages, at all, on any of Oracle's non-copyright claims.

## CONCLUSION

Judgment as a matter of law should be granted on Rimini's license defense and avoided costs damages theory.

DATED: October 2, 2015

MORGAN, LEWIS & BOCKIUS

By:  /s/ Thomas Hixson
Thomas S. Hixson
Attorneys for Plaintiffs
Oracle USA, Inc.,
Oracle America, Inc.,
and Oracle International Corp.