1  BOIES, SCHILLER & FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
2  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
3  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
4  rpocker@bsfllp.com

5  BOIES, SCHILLER & FLEXNER LLP
   WILLIAM A. ISAACSON (*pro hac vice*)
6  KAREN L. DUNN (*pro hac vice*)
   5301 Wisconsin Ave, NW
7  Washington, DC 20015
   Telephone: (202) 237-2727
8  Facsimile: (202) 237-6131
   wisaacson@bsfllp.com
9  kdunn@bsfllp.com

10 BOIES, SCHILLER & FLEXNER LLP
   STEVEN C. HOLTZMAN (*pro hac vice*)
11 KIERAN P. RINGGENBERG (*pro hac vice*)
   1999 Harrison Street, Suite 900
12 Oakland, CA 94612
   Telephone: (510) 874-1000
13 Facsimile: (510) 874-1460
   sholtzman@bsfllp.com
14 kringgenberg@bsfllp.com
15 *Attorneys for Plaintiffs*
   Oracle USA, Inc., Oracle America, Inc., and
16 Oracle International Corp.

   MORGAN, LEWIS & BOCKIUS LLP
   THOMAS S. HIXSON (*pro hac vice*)
   KRISTEN A. PALUMBO (*pro hac vice*)
   One Market Street
   Spear Street Tower
   San Francisco, CA 94105-1596
   Telephone: (415) 442-1000
   Facsimile: (415) 442-1001
   thomas.hixson@morganlewis.com
   kristen.palumbo@morganlewis.com

   DORIAN DALEY (*pro hac vice*)
   DEBORAH K. MILLER (*pro hac vice*)
   JAMES C. MAROULIS (*pro hac vice*)
   ORACLE CORPORATION
   500 Oracle Parkway, M/S 5op7
   Redwood City, CA 94070
   Telephone:  650.506.4846
   Facsimile:  650.506.7114
   dorian.daley@oracle.com
   deborah.miller@oracle.com
   jim.maroulis@oracle.com

17

18                    **UNITED STATES DISTRICT COURT**

19                        **DISTRICT OF NEVADA**

20

21 ORACLE USA, INC., a Colorado corporation;       CASE NO. 2:10-cv-0106-LRH-PAL
   ORACLE AMERICA, INC., a Delaware
22 corporation; and ORACLE INTERNATIONAL       **PLAINTIFFS ORACLE USA, INC.,**
   CORPORATION, a California corporation,       **ORACLE AMERICA, INC., AND**
23                                               **ORACLE INTERNATIONAL**
                        Plaintiffs,              **CORPORATION'S OBJECTIONS TO**
24          v.                                   **THE COURT'S PROPOSED JURY**
                                                 **INSTRUCTIONS**
25 RIMINI STREET, INC., a Nevada corporation;
   SETH RAVIN, an individual,
26
                        Defendants.
27

28

1

2

## TABLE OF CONTENTS

3

COURT'S PROPOSED INSTRUCTION:  D-8: COPYRIGHT - DIRECT
        INFRINGEMENT (W/ MODS)................................................................................ 3

4

5

ORACLE'S OBJECTIONS TO COURT'S PROPOSED INSTRUCTION:  D-8:
        COPYRIGHT - DIRECT INFRINGEMENT (W/ MODS) ................................ 4

6

7

COURT'S PROPOSED INSTRUCTION:  COPYRIGHT - EXPRESS LICENSE
        (COURT INSTRUCTION)......................................................................... 6

8

ORACLE'S OBJECTIONS TO COURT'S PROPOSED INSTRUCTION:
        COPYRIGHT - EXPRESS LICENSE (COURT INSTRUCTION) .................. 9

9

10

COURT'S PROPOSED  INSTRUCTION:  COPYRIGHT DAMAGES -
        INTRODUCTION (COURT INSTRUCTION)............................................. 13

11

12

ORACLE'S OBJECTIONS TO INSTRUCTION:  COPYRIGHT DAMAGES -
        INTRODUCTION (COURT INSTRUCTION)............................................. 14

13

ORACLE'S OBJECTION TO COURT'S PROPOSED INSTRUCTION:  COPYRIGHT
        DAMAGES - LOST PROFITS (COURT INSTRUCTION)........................... 16

14

15

COURT'S PROPOSED INSTRUCTION: D-20: COPYRIGHT DAMAGES -
        ORACLE'S LOST PROFITS - CAUSATION (W/ MODS)........................... 17

16

17

ORACLE'S OBJECTIONS TO INSTRUCTION: D-20: COPYRIGHT DAMAGES -
        ORACLE'S LOST PROFITS - CAUSATION (W/ MODS)........................... 17

18

COURT'S PROPOSED INSTRUCTION:  COPYRIGHT DAMAGES - DEFENDANTS'
        PROFITS (COURT INSTRUCTION)......................................................... 20

19

20

ORACLE'S OBJECTIONS TO INSTRUCTION:  COPYRIGHT DAMAGES -
        DEFENDANTS' PROFITS (COURT INSTRUCTION) ................................ 21

21

COURT'S PROPOSED INSTRUCTION D-23:  INDUCING BREACH OF
        CONTRACTS (W/ MODS)...................................................................... 23

22

23

ORACLE'S OBJECTION TO COURT'S PROPOSED NSTRUCTION D-23:
        INDUCING BREACH OF CONTRACTS (W/ MODS)................................ 24

24

25

COURT'S PROPOSED INSTRUCTION D-24:  INTENTIONAL INTERFERENCE
        WITH PROSPECTIVE ECONOMIC ADVANTAGE ................................... 25

26

27

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED INSTRUCTION D-24:
        INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
        ADVANTAGE (W/ MODS) ..................................................................... 26

28

1

1

ORACLE'S REQUEST FOR ADDITIONAL INSTRUCTION: TOMORROWNOW
AND CEDARCRESTONE ............................................................................... 29

2

ORACLE'S PROPOSED ADDITIONAL INSTRUCTION:  TOMORROWNOW AND
CEDARCRESTONE ........................................................................................ 30

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    In accordance with the Court's direction, Tr. 3919:16-17 ("I would like to have all

2    objections to those instructions filed by 5:00 tomorrow"), Plaintiffs Oracle USA, Inc., Oracle

3    America, Inc., and Oracle International Corporation (collectively, "Oracle" or "Plaintiffs") herby

4    submits these objections to the proposed Jury Instructions provided by the Court on Friday,

5    October 2, 2015 and renew their request for an instruction concerning TomorrowNow and Cedar

6    Crestone as non-infringing alternatives.

7

8    **Court's Proposed Instruction:  D-8: Copyright - Direct Infringement (w/ mods)**

9            To prevail on its claim for direct copyright infringement as to the J.D. Edwards

10   and Siebel software applications and related documentation and PeopleSoft

11   documentation, Oracle International Corporation must prove the following by a

12   preponderance of the evidence:

13           1.  Oracle International Corporation is the owner or exclusive licensee of a

14               valid copyright in an original work;

15           2.  Rimini Street copied original elements from, created derivative works

16               from, or distributed the original work; and

17           3.  Rimini Street did not have permission to copy the original elements of the

18               copyrighted work.

19           The parties have agreed that Oracle International Corporation owns or is the

20   exclusive licensee of certain registered copyrighted works related to the J.D. Edwards and

21   Siebel software applications and related documentation and PeopleSoft documentation at

22   issue in this action, which means that Oracle International Corporation has proven the

23   first element for these registered works.

24           The parties have also agreed, as stated in your juror notebook, that defendant

25   Rimini Street copied the J.D. Edwards and Siebel software applications and related

26   documentation as well as the PeopleSoft documentation at issue in this action. This

27   means that Oracle International Corporation has also proven the second element for these

28   copyrighted works.

3

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1            I inform you that Oracle International Corporation's claim for direct copyright

2    infringement related to the PeopleSoft documentation is separate from, and not to be

3    confused with, the PeopleSoft copyrighted software application which the court has

4    previously ruled was infringed by Rimini Street as a matter of law.

5            It is up to you to determine whether defendant Rimini Street had an express

6    license to copy these copyrighted works. I will explain this issue in more detail in another

7    instruction.

8    ///

9    ///

10          If you find that Rimini Street had an express license to make the copies that it did,

11   then you must find in favor of Rimini Street and against Oracle International Corporation

12   on Oracle International Corporation's claim for direct copyright infringement. If,

13   however, you find that Rimini Street did not have an express license to make the copies

14   that it did, you must find in favor of Oracle International Corporation and against Rimini

15   Street on Oracle International Corporation's claim of direct copyright infringement.

16

17   **Oracle's Objections to Court's Proposed Instruction:  D-8: Copyright - Direct**

18   **Infringement (w/ mods)**

19          Oracle objects to this instruction because the last two paragraphs are unclear.  The overall

20   purpose of this instruction is to explain to the jury the elements of Oracle's claim for direct

21   copyright infringement as to J.D. Edwards and Siebel software and documentation and

22   PeopleSoft documentation – as opposed to PeopleSoft and Database software, as to which the

23   Court has already found infringement.  However, the last two paragraphs of this instruction omit

24   these qualifiers, instead referring to "these copyrighted works" and "to make the copies that it

25   did," which are broad and vague references.  Oracle proposes the following edits to the last two

26   paragraphs so that the instruction better tracks the Court's intent:

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1   It is up to you to determine whether defendant Rimini Street had an express license to

2   copy these copyrighted works **of J.D. Edwards and Siebel software applications and**

3   **related documentation and PeopleSoft documentation**. I will explain this issue in

4   more detail in another instruction.

5   / / /

6   / / /

7   If you find that Rimini Street had an express license to make the copies that it did **of J.D.**

8   **Edwards and Siebel software applications and related documentation and**

9   **PeopleSoft documentation**, then you must find in favor of Rimini Street and against

10   Oracle International Corporation on Oracle International Corporation's claim for direct

11   copyright infringement. If, however, you find that Rimini Street did not have an express

12   license to make the copies that it did **of J.D. Edwards and Siebel software applications**

13   **and related documentation and PeopleSoft documentation**, you must find in favor of

14   Oracle International Corporation and against Rimini Street on Oracle International

15   Corporation's claim of direct copyright infringement.

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **Court's Proposed Instruction:  Copyright - Express License (Court instruction)**

2    Defendant Rimini Street asserts an express license defense to Oracle International

3    Corporation's claim of direct copyright infringement.

4    Where a defendant asserts an express license defense to copyright infringement,

5    the defendant has the initial burden to identify any license provision or provisions that it

6    believes excuses the infringement. If a defendant satisfies this burden, then it becomes

7    the plaintiff's burden to prove by a preponderance of the evidence that defendant's

8    copying or other infringement was not authorized by the license provision or provisions.

9    In this action, Oracle enters into written software license agreements with its

10   customers that allow the customers to use Oracle International Corporation's copyrighted

11   software and have access to support materials for that software. It is undisputed that

12   defendant Rimini Street did not have its own license with Oracle relevant to any of the

13   issues that you are to decide. Instead, defendant Rimini Street asserts that its own client's

14   software license agreements with Oracle authorized any copying Rimini Street engaged

15   in as it relates to Oracle International Corporation's J.D. Edwards and Siebel software

16   applications and related documentation and PeopleSoft documentation at issue in this

17   action. Under the law defendant Rimini Street is permitted to assert those software

18   license agreements as a defense.

19   It is up to you to determine whether defendant Rimini Street's copying of Oracle

20   International Corporation's J.D. Edwards and Siebel software applications and related

21   documentation and PeopleSoft documentation was authorized by its client's software

22   license agreements with Oracle. To help you in your deliberations, the court has

23   previously interpreted the relevant licenses as a matter of law.

24

25   J.D. Edwards Software License Agreements

26   As to the J.D. Edwards software license agreements you are informed that the

27   court has previously ruled as a matter of law that the J.D. Edwards software license

28   agreements authorized a third party like Rimini Street to copy the J.D. Edwards software

6

1    application and related documentation to the extent necessary for the customer's archival

2    needs. An archival copy of the software application and documentation is an unmodified

3    copy of the original software application and documentation for use in the event that

4    production copy of the software - the copy used on a customer's systems - is corrupted or

5    lost. This provision does not mean that a third party like Rimini Street is authorized to

6    make copies of the J.D. Edwards software application and documentation to, among other

7    things, access the software's source code to carry out development and testing of

8    software updates, to make modifications to the software, or to use the customer's

9    software or support materials to support other customers.

10          If you find that the copies of the J.D. Edwards software application and

11   documentation housed on Rimini Street's servers were used solely for the customer's

12   archival needs then that use is authorized by the J.D. Edwards software license agreement

13   and you should find in favor of defendant Rimini Street and against Oracle International

14   Corporation on Oracle International Corporation's claim for direct copyright

15   infringement as it relates to the J.D. Edwards copyrighted works.

16          If, on the other hand, you find that the copies of the J.D. Edwards software

17   application and documentation housed on Rimini Street's servers were used for purposes

18   other than the customer's archival needs then that use is outside the scope of the J.D.

19   Edwards software license agreement and you should find in favor of Oracle International

20   Corporation and against defendant Rimini Street on Oracle International Corporation's

21   claim for direct copyright infringement as it relates to the J.D. Edwards copyrighted

22   works.

23

24          Siebel Software License Agreements

25          As to the Siebel software license agreements you are informed that the court has

26   ruled as a matter of law that the Siebel software license agreements authorized a third

27   party like Rimini Street to make a reasonable number of copies of the Siebel software

28   application and related documentation solely for the customer's archive or emergency

7

1    back-up purposes or disaster recovery and related testing. As stated previously, an

2    archival copy of the software and documentation is an unmodified copy of the original

3    software and documentation for use in the event that production copy of the software -

4    the copy used on a customer's systems - is corrupted or lost. This provision does not

5    mean that a third party like Rimini Street is authorized to make copies of the Siebel

6    software and documentation to, among other things, access the software's source code to

7    carry out modification, development and testing of the software not related to archive,

8    emergency back-up, or disaster recovery purposes, or to use the customer's software or

9    support materials to support other customers.

10        If you find that the copies of the Siebel software application and related

11   documentation housed on Rimini Street's servers were used solely for archive or

12   emergency back-up purposes or disaster recovery and related testing then that use is

13   authorized by the Siebel software license agreement and you should find in favor of

14   defendant Rimini Street and against Oracle International Corporation on Oracle

15   International Corporation's claim for direct copyright infringement as it relates to the

16   Siebel copyrighted works.

17        If, on the other hand, you find that the copies of the Siebel software application

18   and related documentation housed on Rimini Street's servers were used for purposes

19   other than archive or emergency back-up purposes or disaster recovery and related testing

20   then that use is outside the scope of the Siebel software license agreement and you should

21   find in favor of Oracle International Corporation and against defendant Rimini Street on

22   Oracle International Corporation's claim for direct copyright infringement as it relates to

23   the Siebel copyrighted works.

24

25        PeopleSoft Software License Agreements

26        You have already been informed that the court has ruled as a matter of law the

27   defendant Rimini Street engaged in copyright infringement of certain of Oracle

28   International Corporation's PeopleSoft software applications. However, the court has not

8

1    ruled on the issue of copyright infringement as it relates to Oracle International

2    Corporation's PeopleSoft documentation at issue in this action.

3            As to the PeopleSoft software license agreements you are informed that the court

4    rules as a matter of law that the PeopleSoft software license agreements authorized a third

5    party like Rimini Street to make a reasonable number of copies of the PeopleSoft

6    documentation solely for the customer's internal use. This provision does not authorize a

7    third party like Rimini Street to copy, distribute, or use the PeopleSoft documentation to

8    develop or test software updates for other customers.

9            If you find that the copies of the PeopleSoft documentation were used solely for

10    the customer's internal use then that use is authorized by the PeopleSoft software license

11    agreement and you should find in favor of defendant Rimini Street and against Oracle

12    International Corporation on Oracle International Corporation's claim for direct

13    copyright infringement as it relates to the PeopleSoft documentation and support

14    materials.

15            If, on the other hand, you find that the copies of the PeopleSoft

16    documentation were used for purposes other than solely for the customer's internal use

17    then that use is outside the scope of the PeopleSoft software license agreement and you

18    should find in favor of Oracle International Corporation and against defendant Rimini

19    Street on Oracle International Corporation's claim for direct copyright infringement as it

20    relates to the PeopleSoft documentation and support materials.

21

22    **Oracle's Objections to Court's Proposed Instruction:  Copyright - Express License**

23    **(Court instruction)**

24    Oracle has two objections to this license instruction.

25    *First*, it omits an interpretation of the PeopleSoft licenses.  Given the extensive testimony

26    about Mr. Ravin's understanding of the licenses, and the extensive cross-examination of the

27    licenses, the jury should be instructed on their meaning to avoid confusion.  Moreover, their

28    meaning is also relevant to Rimini's avoided costs damages theory, in which Rimini contends

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    that it could have supported its customers in a non-infringing manner by incurring only $9.3

2    million in additional expenses.  Rimini and its damages expert Scott Hampton call this a

3    "remote-only" support model, Tr. 2803:8-2804:5, in which Rimini would not commit any of the

4    infringing conduct.  Tr. 2763:17-2769:23.  However, the Court's interpretation of the PeopleSoft

5    licenses is that there are *two* reasons that constituted infringement as to PeopleSoft.  One was

6    having copies of the software on Rimini's servers.  Dkt 474 at 12, 18.  The other was cross-use,

7    i.e., using a copy of PeopleSoft software licensed to one customer for the benefit of other

8    customers.  *Id.* at 13, 18.  In the wake of the Court's summary judgment order, Rimini has

9    stipulated that both local copies and cross-use are unlicensed practices.  Dkt 599 ¶ 3.  The Court

10   should therefore explain to the jury that Rimini's avoided costs damages theory requires not only

11   remote support, but also that Rimini would not cross-use the PeopleSoft software, before it can

12   be considered a non-infringing alternative.  If, for example, the jury finds that remote support

13   was possible but also that the evidence shows Rimini relied on cross-use in developing tax and

14   regulatory updates and had no feasible alternative in 2006-2011, then the jury should reject

15   Rimini's avoided costs damages model for lack of evidence.  The jury instructions should make

16   that clear.   Accordingly, Oracle proposes the following addition to this instruction:

17

18                You are informed that the Court has previously ruled as a matter of law that

19         defendant Rimini Street engaged in copyright infringement of Oracle International

20         Corporation's PeopleSoft software applications.  The PeopleSoft software licenses

21         prohibited Rimini Street from copying, preparing derivative works from, or distributing

22         PeopleSoft software other than to support the specific licensee's own internal data

23         processing operations on the licensee's own computer systems. Any copying, preparation

24         of derivative works, or distribution outside the scope of those limitations was prohibited

25         by the license agreements. This means that the licenses prohibited Rimini Street from,

26         among other things, copying, preparing derivative works from, or distributing PeopleSoft

27         software on Rimini Street's computer systems. It also means the licenses prohibited

28         Rimini Street from copying, preparing derivative works from, or distributing PeopleSoft

1     software in developing or testing software updates for other Rimini Street customers.

2     *Second*, Oracle objects to the Court's proposed PeopleSoft license instruction as to

3     PeopleSoft documentation.  Again, there were two reasons why the Court found that Rimini

4     infringed the PeopleSoft software:  first, the presence of the software on Rimini's servers

5     violated the license restriction that the software must be at the customer's facilities and cannot be

6     distributed to a third party.  Dkt 474 at 12, 18.  Second, the software can be used only for the

7     customer's internal use.  *Id.* at 13, 18.  The same PeopleSoft licenses apply to the documentation

8     as to the software.  The parties stipulated that the City of Flint and Pittsburgh Public Schools

9     licenses are representative of "the PeopleSoft license agreements for all of Rimini's PeopleSoft

10    customers," Dkt. 599, and both forbid Rimini to have PeopleSoft documentation on its systems.

11    PTX 698 at 5, § 16 (defined term "Software" includes documentation); *id.* at 1 § 1.1 ("Software"

12    must be at customer's facilities); PTX 699 at 6 § 15 (defined term "Licensed Rights" includes

13    both software and documentation); *id.* at 1 § 2.1(d) (customer may not "[d]istribute . . . to any

14    third party any portion of the Licensed Rights").  Accordingly, the Court's construction of these

15    two licenses applies to the PeopleSoft documentation as well.  However, the Court's instruction

16    contains only the internal use restriction and not the facilities restriction.  Therefore, Oracle

17    proposes the below modification so that the instruction captures both requirements of a

18    PeopleSoft license:

19

20    <u>PeopleSoft Software License Agreements</u>

21        You have already been informed that the court has ruled as a matter of law the

22    defendant Rimini Street engaged in copyright infringement of certain of Oracle

23    International Corporation's PeopleSoft software applications. However, the court has not

24    ruled on the issue of copyright infringement as it relates to Oracle International

25    Corporation's PeopleSoft documentation at issue in this action.

26        As to the PeopleSoft software license agreements you are informed that the court

27    rules as a matter of law that the PeopleSoft software license agreements authorized a third

28    party like Rimini Street to make a reasonable number of copies of the PeopleSoft

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1   documentation solely for the customer's internal use **and at the customer's facilities**.

2   This provision does not authorize a third party like Rimini Street to copy, distribute, or

3   use the PeopleSoft documentation **at its facilities or** to develop or test software updates

4   for other customers.

5       If you find that the copies of the PeopleSoft documentation were **solely at the**

6   **customer's facilities and were** used solely for the customer's internal use then that use is

7   authorized by the PeopleSoft software license agreement and you should find in favor of

8   defendant Rimini Street and against Oracle International Corporation on Oracle

9   International Corporation's claim for direct copyright infringement as it relates to the

10   PeopleSoft documentation and support materials.

11      If, on the other hand, you find that the copies of the PeopleSoft documentation

12   were **either at Rimini's facilities or were** used for purposes other than solely for the

13   customer's internal use then that use is outside the scope of the PeopleSoft software

14   license agreement and you should find in favor of Oracle International Corporation and

15   against defendant Rimini Street on Oracle International Corporation's claim for direct

16   copyright infringement as it relates to the PeopleSoft documentation and support

17   materials.

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **Court's Proposed  Instruction:  Copyright Damages - Introduction (Court instruction)**

2            You must determine Oracle International Corporation's damages resulting from

3    defendant Rimini Street's copyright infringement. Oracle International Corporation is

4    entitled to recover either the actual damages suffered as a result of the infringement or

5    statutory damages established by the Copyright Act. You will be asked to determine both

6    Oracle International Corporation's actual damages as well as statutory damages under the

7    Copyright Act. Oracle International Corporation must prove damages by a preponderance

8    of the evidence.

9            As the measure of its actual damages, Oracle International Corporation, as the

10   plaintiff, has the right to seek to recover either the fair market value of a license for the

11   rights infringed or its lost profits, not both. You must make the determination of which

12   type of damages to award to Oracle International Corporation.

13           If you award Oracle International Corporation actual damages based on its lost

14   profits, then Oracle International Corporation is also entitled to recover any profits that

15   defendant Rimini Street made that is attributable to that infringement.

16           If you award Oracle International Corporation actual damages based on the fair

17   market value of a license for the rights infringed, that award takes into account defendant

18   Rimini Street's profits attributable to its infringement and Oracle International

19   Corporation is not entitled to any additional award.

20           Regardless of which type of actual damages you choose to award Oracle

21   International Corporation, you must also make a determination of the amount of statutory

22   damages Oracle International Corporation is entitled to under the Copyright Act. When

23   you consider Oracle International Corporation's statutory damages you must not consider

24   the amount awarded as actual damages. They are separate and distinct damages and do

25   not relate to each other.  All of these damages will now be explained to you.

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **Oracle's Objections to Instruction:  Copyright Damages - Introduction (Court**
2  **instruction)**

3      Oracle has two objections to this proposed instruction.  First, Oracle objects to this

4  instruction because the jury lacks an adequate factual basis to determine a fair market value of a

5  license for Rimini's infringement of PeopleSoft, J.D. Edwards, and Siebel software and

6  documentation.  As Oracle showed in its Rule 50 motion, Dkt. 865 at 5-8, although the Court

7  allowed Rimini to admit Mr. Hampton's testimony on the assumption he would provide a

8  hypothetical license opinion, Dkt.  724 at 5, at trial Mr. Hampton disavowed that he was offering

9  a hypothetical license opinion.  Tr. 2845:8-12.   And Mr. Hampton's opinion cannot support a

10 hypothetical license opinion because (1) it does not reference a comparable benchmark; (2) it

11 does not even consider Oracle's side of the negotiation; and (3) it is based on facts and

12 circumstances in 2011 and 2012, long after when the 2006 hypothetical negotiation would have

13 occurred.  Dkt. 865 at 6-7; *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) ("it

14 may be difficult for a plaintiff to establish the amount of such damages without undue

15 speculation in the absence of [a comparable benchmark]"); *id.* at 1089 ("Fair market value in a

16 voluntary licensing transaction between arms-length parties ordinarily lies somewhere between

17 the two poles of cost to the seller and benefit to the buyer."); *Gaylord v. United States*, 678 F.3d

18 1339, 1343 (Fed. Cir. 2012) (holding that it is "incorrect in a hypothetical negotiation inquiry . . .

19 to limit [the] analysis to only one side of the negotiating table" and rejecting damage award

20 based solely on the infringer's perspective); *Jarvis v. K2, Inc.*, 486 F.3d 526, 535 n.9 (9th Cir.

21 2007) (finding emphasis on "post-infringement damages rather than the pre-infringement fair

22 market value" to be "legally defective"); *see also* Tr. 2199:13-2201:21 (Benge) ("I was thinking

23 about the current situation").

24      By itself, Mr. Hampton's analysis of the cost of a non-infringing alternative is not a

25 measure of copyright damages or even patent damages.  *Deltak, Inc. v. Advanced Sys. Inc.*, 767

26 F.2d 357, 363 n.4  (7th Cir. 1985) (copyright) ("the fact that [defendant] could have acted

27 illegally in ways other than the way it did act illegally should not be used by it as a reason to

28 defeat recovery of damages caused by the illegal way in which it did act."); *Goldman v.*

14

1  *Healthcare Mgmt. Sys.,* 559 F. Supp. 2d 853, 869, 873-75 (W.D. Mich. 2008) (rejecting

2  workaround costs as damages in in copyright software case); *see also Mars, Inc. v. Coin*

3  *Acceptors, Inc.,* 527 F. 3d 1359, 1373 (Fed. Cir. 2008) (patent) ("[It] is wrong as a matter of law

4  to claim that reasonable royalty damages are capped at the cost of implementing the cheapest

5  available, acceptable, non-infringing alternative."), *mandate recalled on other grounds*, 557 F.3d

6  1377 (Fed. Cir. 2009).

7         Oracle respectfully submits that its proposed instructions P-19, and P-20 which instruct

8  the jury that as to PeopleSoft, J.D. Edwards, and Siebel, the jury must use the lost profits

9  measure, would accurately instruct the jury given the evidence before them.

10        For the same reason, Oracle also objects to the Court's proposed instructions "Copyright

11 Damages - Lost Profits (Court instruction)" and "Copyright Damages - Fair Market Value

12 License (Court instruction)" insofar as they allow the jury to consider fair market

13 value/hypothetical license damages as to PeopleSoft, J.D. Edwards, and Siebel software and

14 documentation.

15        Second, Oracle proposes a minor edit to the lost profits paragraph to clarify that Oracle

16 may not recover duplicative damages:

17

18        If you award Oracle International Corporation actual damages based on its lost profits,

19        then Oracle International Corporation is also entitled to recover any profits that defendant

20        Rimini Street made that is attributable to that infringement **and that is not duplicative of**

21        **any lost profits that you award to Oracle International Corporation.  In other**

22        **words, for any particular customer, Oracle may recover either its lost profits or**

23        **Rimini Street's infringer's profits, but not both, for that customer.**

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **Court's Proposed Instruction:  Copyright Damages - Lost Profits (Court instruction)**

2        If you decide that the best measure of Oracle International Corporation's actual

3  damages is lost profits, your must determine what profits Oracle International

4  Corporation proved that it would have made without the infringement by Rimini Street.

5  Lost profits are the revenue Oracle International Corporation would have made without

6  the infringement, less any additional expenses Oracle International Corporation would

7  have incurred in making those profits.

8        To recover lost profits, Oracle International Corporation must prove by a

9  preponderance of the evidence that:

10  1.     Rimini Street caused such damages; and

11  2.     The amount. You may not guess the amount or rely on speculative evidence to

12  calculate lost profits.

13

14  **Oracle's Objection to Court's Proposed Instruction:  Copyright Damages - Lost**

15  **Profits (Court instruction)**

16        Oracle objects that the last sentence is unnecessary, duplicative, and prejudicial to Oracle

17  by focusing on Rimini's themes in a one-sided way.  The instruction, "Copyright Infringement -

18  Actual Damages (modified Oracle v. SAP instruction)" already tells the jury that they may not

19  engage in "speculation, guesswork, or conjecture" in calculating damages.  That same instruction

20  also says, "Oracle is not required to establish its actual damages with precision."  To repeat half

21  of that instruction again, without repeating the other half, would suggest to the jury that one half

22  is more important than the other.

23        Accordingly, Oracle respectfully requests the Court either exclude the duplicative last

24  sentence ("You may not guess . . . .") or add an additional sentence that makes the duplication

25  complete:  "Oracle is not required to establish its actual damages with precision."

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **Court's Proposed Instruction: D-20: Copyright Damages - Oracle's Lost Profits -**
2  **Causation (w/ mods)**

3

4          Oracle International Corporation must prove a causal relationship between
5  Oracle's losses and Rimini Street's infringement. Oracle International Corporation must
6  demonstrate that but for Rimini Street's infringement, Oracle International Corporation
7  would not have lost the client for which Oracle International Corporation seeks damages.
8  That means that if a client left Oracle International Corporation for reasons unrelated to
9  Rimini Street's infringement, there is no causal relationship and therefore no lost profit
10  damages as to that client.

11
12          Oracle International Corporation must prove causation by a preponderance of the
13  evidence for every single client for which it is claiming copyright damages.

14

15  **Oracle's Objections to Instruction: D-20: Copyright Damages - Oracle's Lost**
16  **Profits - Causation (w/ mods)**

17

18          Oracle objects to this instruction because it unfairly focuses on Rimini's theory in an
19  unbalanced way, thereby prejudicing Oracle.  The immediately prior two instructions each
20  already explain that Oracle must prove causation to obtain damages.  Instruction P-18 Copyright
21  Damages- Causation ("For Oracle International Corporation to recover actual damages, it must
22  prove that the infringement caused damages.  Infringement caused damages if the infringement
23  was a 'substantial factor' in causing the damages."); Copyright Damages – Lost Profits (Court
24  instruction) ("To recover lost profits, Oracle International Corporation must prove by a
25  preponderance of the evidence that: 1.  Rimini Street caused such damages").

26          Adding a third instruction on the same requirement would be confusing and unfairly draw
27  the jury's attention to Rimini's theory of the case. "[J]ury instructions should provide the
28  relevant rules of law *generally* and avoid *singling out* or stressing particular evidentiary items or

17

1   legal theories; otherwise, the court's emphasis of certain facts or issues may cause a juror to

2   attach undue importance or credibility to the selected matters."  Rutter Group Prac. Guide Fed.

3   Civ. Trials & Evid. Ch. 14-B, 14:56; *see also United States v. Hill*, 252 F.3d 919, 923 (7th Cir.

4   2001) ("It is best to keep the instructions concise, which is achieved by omitting nostrums and

5   leaving inferences to arguments of counsel.  Unless it is necessary to give an instruction, it is

6   necessary not to give it, so that the important instructions stand out and are remembered.")

7   (citation omitted).

8           This is particularly so with respect to the last sentence of the instruction, which wrongly

9   suggests that Oracle must have evidence that is specifically about "every single client" at issue

10   when, as a matter of law, Oracle may rely on evidence that is common to all customers and allow

11   the jury to reach reasonable inferences.  Indeed, verdicts based on loss of sales calculated from

12   historical sales and future growth projections are routinely upheld.  *See, e.g.*, *Forro Precision,*

13   *Inc. v. IBM Corp.*, 673 F.3d 1045, 1052 (9th Cir. 1982) ("IBM's arguments are directed

14   principally to the certainty of amount, not the fact of injury.  We find the jury could reasonably

15   have inferred from the evidence presented that Forro lost business as a result of damage to its

16   customer goodwill. Forro introduced evidence of the post-search publicity that implicated Forro

17   in the traffic in stolen trade secrets, as well as *testimony of some of its customers* that the search

18   was a factor in their decisions not to buy from Forro.  This was sufficient evidence from which

19   the jury could have inferred the existence of an injury.  On the matter of the amount of damages,

20   we find that the evidence was sufficient to support the jury's award.") (emphasis added)*; see also*

21   *Nebula Glass Int'l v. Reichhold, Inc.,* 454 F.3d 1203, 1218 n.3 (11th Cir. 2006) (explaining that

22   "lost profits are not limited to customers who personally experienced" problems with defendant's

23   defective product and that the defendant was "simply wrong in the unsupported assertion that

24   lost profits must be attributable to the loss of specific customers").  This issue is more fully

25   addressed in Oracle's Opposition to Defendants' Objections to Plaintiff's Proposed Jury

26   Instructions, Dkt. 771, at 3-5, which Oracle hereby incorporates by reference.

27           No doubt, Rimini would attempt to use this instruction in argument to the jury to claim

28   that the law does not permit use of common proof among customers and instead required

18

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    separate, specific proof as to "every single client."  That is not the law.  Indeed, in business cases

2    in which customers are at issue, such a standard would require extensive discovery about every

3    customer, and trial would devolve into a series of separate mini-trials about "every single client."

4    That is simply unworkable, and this case – with more than 300 customers at issue – is a good

5    example  why.  Instead, where the jury has before it evidence that is common to all customers,

6    supplemented with exemplary evidence about specific customers, the jury may appropriately

7    consider all  that evidence and draw reasonable conclusions about causation and the amount of

8    damages.  And in this case, Oracle has shown a more than adequate basis for the jury to do so, as

9    explained more fully in Oracle's Rule 50 opposition, Dkt. 843, at 14-20, which Oracle

10   incorporates by reference.

11          Indeed, in this very case, Rimini opposed more than a tiny number of depositions of

12   customers, arguing that "It is hard to imagine what Oracle hopes to gain from deposing dozens of

13   Rimini clients rather than the six offered by Rimini (other than burdening a competitors'

14   customers)," and that "Oracle does not need and should not be allowed to seek the same

15   information from multiple witnesses."  Dkt. 136 at 14-15.  Yet Rimini now asks the Court to

16   hold, and for the jury to conclude, that Oracle failed to meet its burden of proof because Oracle

17   was forced to rely the smaller number of depositions that Judge Leen allowed based on Rimini's

18   objection – despite Rimini's own admission to Judge Leen that evidence from some customers

19   could be proof as to the others.

20          In *Oracle v. SAP*, the Ninth Circuit upheld a copyright damages lost profits and

21   infringer's award on a damages model that was strikingly similar to the one used in this case,

22   where causation was proved generally based on common evidence.  *SAP AG*, 765 F.3d 1081 (9th

23   Cir. 2014).  Contrary to Rimini's assertions in its Reply in Support of its Motion for Judgment as

24   a Matter of Law, that award was not based on separate causation proof as to every single

25   customer.  Dkt. 855 at 2.  Rimini wrongly claims that both parties in that case "performed a

26   customer-by-customer" analysis, *id.*, and then goes on to only describe SAP Tomorrow's expert

27   analysis.  Oracle's expert proved analyzed causation only in "a general sense."  Declaration of

28   Kieran Ringgenberg ("Ringgenberg Decl."), Ex. 1, SAP Trial Tr. at 1059:13-18.  Similar to the

19

1   analysis by Elizabeth Dean in this case, he included 253 of SAP TomorrowNow's 358 customers

2   in his lost profits analysis.  *Id.* at 1059:19-1060:3.  He went from 358 to 253 by excluding groups

3   of customers who fit the same criteria Ms. Dean applied.  *Id.*  at 1059:19-1060:3, 1276:19-25.

4   When asked if he applied a customer-specific causation analysis, he explained:  "On the lost

5   profits, that really wasn't part of the methodology.  On lost profits, *because TomorrowNow had*

6   *provided service and it provided a service that it should not have been providing but for taking*

7   *software, it was really different. It was mostly focusing on the specifics of who left Oracle, the*

8   *timing, who went back.*"  *Id.* at 1277:17-1278:4 (emphasis supplied); *see also id.* at 1059:13-18

9   (Oracle expert analyzed causation in a "general sense").  The Ninth Circuit's award was not

10  based on SAP's damages expert's customer-specific analysis that yielded a $28 million damages

11  measurement, it was based on Oracle's damages expert's opinion, based on common evidence,

12  that $356.7 million was appropriate.  *SAP AG*, 765 F.3d at 1096.

13

14  **Court's Proposed Instruction:  Copyright Damages - Defendants' Profits (Court**

15  **instruction)**

16

17        If you determine that lost profits are the best measure of Oracle International

    Corporation's actual damages, then you must also determine the amount of profits made by

18  defendant Rimini Street that are directly attributable to the infringement and were not taken into

19  account in computing lost profits.

20        You may make an award of defendant Rimini Street's profits only if you find that

21  Oracle International Corporation showed a causal relationship between the infringement

22  and the profits generated directly or indirectly from the infringement.

23        Rimini Street's profits are determined by subtracting all of Rimini Street's

24  expenses from Rimini Street's gross revenue.

25        For purposes of determining Rimini Street's profits, gross revenue is all of Rimini

26  Street's receipts from the use and sale of a product or service associated with the

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    infringement. Oracle International Corporation has the burden of proving Rimini Street's

2    gross revenue by infringement by a preponderance of the evidence.

3              Rimini Street's expenses are all operating costs, overhead costs, and production

4    costs incurred in producing Rimini Street's gross revenue. Rimini Street bears the burden

5    of proving its expenses by a preponderance of the evidence.

6              Unless you find that a portion of the profit from the use of the copyrighted works

7    is attributable to factors other than use of the copyrighted works, all of the profit is to be

8    attributed to the infringement. Rimini Street has the burden of proving the portion of the

9    profit, if any, attributable to factors other than infringing the copyrighted works.

10

11   **Oracle's Objections to Instruction:  Copyright Damages - Defendants' Profits**

12   **(Court instruction)**

13

14   Oracle objects to this instruction because it requires the jury to deduct all of Rimini's

15   expenses even if Rimini is found to be a willful infringer.  If Rimini is found to be a willful

16   infringer, then the jury may choose to not deduct overhead costs.  Ninth Circuit Model Jury

17   Instruction Comment to No. 17.27 ("Generally, deductions of defendant's expenses are denied

18   where the defendant's infringement is willful or deliberate." (citing *Kamar Int'l, Inc. v. Russ*

19   *Berrie & Co.*, 752 F.2d 1326, 1331-32 (9th Cir.1984))); *Polar Bear Prods., Inc. v. Timex Corp.*,

20   384 F.3d 700, 709 (9th Cir. 2004); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d

21   505, 515 (9th Cir. 1985); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) ("[o]verhead may

22   not be deducted from gross revenues to arrive at profits when an infringement was deliberate or

23   willful"); *Williams v. Bridgeport Music, Inc.*, No. 13-CV-06004 JAK (AGRx), ECF No. 322 at

24   Jury Instruction at 141, No. 38 (C.D. Cal. Mar. 10, 2015) ("Overhead costs may not be deducted

25   where a party's infringement is willful."); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294-95

26   (D.N.J. 1993) ("it is a question of fact whether these defendants did in fact act willfully[;]" "if

27   defendant's conduct is willful, overhead may not be deducted"); *Mfrs. Techs., Inc. v. Cams, Inc.*,

28

1   728 F. Supp. 75, 84 (D. Conn. 1989) (defendant's "taxes" and "overhead or 'allocated

2   expenses'" not deductible because infringement was willful).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **Court's Proposed Instruction D-23:  Inducing Breach of Contracts (w/ mods)**

2        In addition to its other claims, Oracle America contends that Rimini Street and

3  Seth Ravin induced customers to breach their contracts with Oracle America.

4  Specifically, Oracle America contends that the terms of use on its website and its

5  software license agreements are contracts with its customers. Oracle America contends

6  that Rimini Street and Seth Ravin intentionally caused Oracle America customers to

7  breach their contracts with Oracle America.

8        To prevail on this claim in the circumstances of this case, Oracle America must

9  prove each of the following for each such contract by a preponderance of the evidence:

10      1.  A valid contract existed between Oracle America and a customer;

11      2.  Rimini Street and/or Seth Ravin knew the contract existed;

12      3.  Rimini Street and/or Seth Ravin intended to cause Oracle's America's

13           customer to breach its contract with Oracle America;

14      4.  Rimini Street and/or Seth Ravin engaged in conduct that was wanton,

15           malicious, and unjustifiable;

16      5.  Rimini Street and/or Seth Ravin's conduct caused the customer to breach the

17           contract;

18      6.  Oracle America was directly harmed; and

19      7.  Rimini Street and/or Seth Ravin's improper conduct was a substantial factor in

20           causing Oracle America harm.

21      If you find that Oracle America proved each of these elements as to Rimini Street

22  and/or Seth Ravin, you should find for Oracle America and against Rimini Street and/or

23  Seth Ravin on the claim for inducing breach of contract. If, on the other hand, Oracle

24  America has failed to prove any of these elements as to Rimini Street and/or Seth Ravin,

25  you should find for Rimini Street and/or Seth Ravin and against Oracle America on the

26  claim for inducing breach of contract.

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **Oracle's Objection to Court's Proposed Instruction D-23:  Inducing Breach of**
2    **Contracts (w/ mods)**

3        Oracle requests the Court strike the language "and its software license agreements."

4    Oracle's inducing-breach-of-contract claim is based on breach of the terms of use.   SAC, Dkt.

5    No. 146, at ¶ 119.

6        For the sake of clarity, Oracle further requests that "their contracts" be replaced with

7    "such contracts."  That phrase (1) would make clearer that contracts at issue are the antecedent

8    terms-of-use-based contracts; and (2) would conform to the language used later in the

9    instruction.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**Court's Proposed Instruction D-24:  Intentional Interference With Prospective Economic Advantage**

Oracle America and Oracle International Corporation seeks to recover damages based upon a claim of intentional interference with prospective economic advantage.

In order for you to find for Oracle America and/or Oracle International Corporation, you must find by a preponderance of the evidence that:

1.  Oracle America and/or Oracle International Corporation had an expectancy in a prospective contractual relationship with the customer;

2.  Rimini Street and/or Seth Ravin knew of the existence of the relationship;

3.  Rimini Street and/or Seth Ravin engaged in unlawful and improper conduct;

4.  By engaging in this conduct, Rimini Street and/or Seth Ravin intended to disrupt the relationship;

5.  Rimini Street and/or Seth Ravin's conduct was not privileged or justified;

6.  The relationship was disrupted;

7.  Oracle America and/or Oracle International Corporation was harmed; and

8.  Rimini Street and/or Seth Ravin's unlawful and improper conduct was a substantial factor in causing Oracle America and/or Oracle International Corporation harm.

"Unlawful or improper means" does not include breach of contract or copyright infringement. The only unlawful or improper means that Oracle America and Oracle International Corporation claim are related to alleged misrepresentations made by Rimini Street. You must decide whether Oracle America and/or Oracle International Corporation has established any actionable misrepresentations and, if so, whether it is more likely than not that those misrepresentations were the specific cause of harm.

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    If you find that Oracle America and/or Oracle International Corporation proved

2    each of these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle

3    America and/or Oracle International Corporation and against Rimini Street and/or Seth

4    Ravin on the claim for intentional interference with prospective economic advantage. If,

5    on the other hand, Oracle America and/or Oracle International Corporation has failed to

6    prove any of these elements as to Rimini Street and/or Seth Ravin, you should find for

7    Rimini Street and/or Seth Ravin and against Oracle America and/or Oracle International

8    Corporation on the claim for intentional interference with prospective economic

9    advantage.

10   **Oracle's Objections to the Court's Proposed Instruction D-24:  Intentional**

11   **Interference With Prospective Economic Advantage (w/ mods)**

12   For clarity, Oracle notes that "seeks" in the first sentence should be revised to "seek."

13   As a matter of substance, all of Oracle's objections to the Court's proposed instruction D-

14   24 concern the first paragraph after the elements.

15   <u>First</u>, it is inaccurate to limit the intentional interference tort to "misrepresentations."

16   Rimini's violations of computer-crime statutes interfered with Oracle's relationships, and those

17   violations too are actionable predicate conduct. *Korea Supply Co. v. Lockheed Martin Corp.*, 29

18   Cal.4th 1134, 1159 (2003) (a predicate act for intentional interference is one that "is proscribed

19   by some constitutional, statutory, regulatory, common law, or other determinable legal

20   standard"); Dobbs' Law of Torts § 627 (West 2015) ("Interference by committing a crime is also

21   easily improper and facially actionable as an interference with contract or prospects");

22   Restatement (Second) of Torts § 767 cmt. c (1979); *see also* ABA Model Jury Instructions:

23   Business Tort Litig., comment to No. 37 ("The tort of inducing breach of contract, as well as that

24   of interference with prospective economic advantage, has been consistently applied when the

25   means employed by the defendant are independently unlawful." (collecting authority)).[1]

26   _____

27   [1] Rimini's Rule 50 motion took a different approach than its jury instruction objections on this
     point.  The motion cited cases about the line between tort and contract actions. Dkt. No. 14.

28   (Footnote Continued on Next Page.)

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1         <u>Second</u>, Oracle also objects to the reference to "any actionable misrepresentation"

2    because the phrase "actionable misrepresentation" is not clearly defined by this or any other

3    instruction.

4         <u>Third</u>, it is inaccurate to limit the instruction to conduct "by Rimini Street."  As elements

5    2-5 and 8 properly recognize, Seth Ravin himself is directly and personally liable for his tortious

6    conduct.  Indeed, even if Mr. Ravin were construed as Rimini Street's agent, he would still be

7    directly liable.  *Transp. Finance v. Case Info. Sys., Inc.*, 523 F.3d 1051, 1061 (9th Cir. 2008)

8    (tortious acts) (citing Restatement (Third) of Agency, § 7.01)); Restatement (Third) of Agency,

9    § 7.01, at cmt. c. (statutory violations).

10        <u>Finally</u>, Oracle objects to the language "specific cause of harm" because it does not

11   reflect the substantial-factor causation standard that the Court has properly included as element

12   8.  *Holcomb v. Georgia Pacific, LLC*, 289 P.3d 188, 196 (Nev. 2012) (Nevada uses "substantial

13   factor" causation from Restatement (Second) of Torts § 431)); *Bank of New York v. Fremont*

14   *Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008) ("California employs the 'substantial factor' test

15   for determining causation in intentional torts cases" (applying substantial-factor test to

16   intentional interference with contractual relations under California law)); *Cedars-Sinai Med. Ctr.*

17   *v. Global Excel Mgmt.*, 2009 WL 4730882, at *6-7 (C.D. Cal. Dec. 4, 2009) (same under

18   intentional interference with prospective economic relations).

19

20   ────────────────────

21   (Footnote Continued from Previous Page.)

22   Rimini cannot avoid long-established tort law that intentional conduct violating statutes,
     especially criminal statutes, satisfies the tort's conduct element.  It is also wrong because the law

23   prevents tort liability for breaching a solely contractual *duty*.  *Davis v. Beling*, 278 P.3d 501, 514
     (Nev. 2012).  The relevant duty is a *tort* duty not to improperly interfere with prospective

24   advantage, and separate criminal *statutes* confirm that Rimini's conduct was independently
     unlawful such that it breaches the tort duty.  *Davis*, 278 P.3d at 515 (parties had a contract on the

25   subject matter [real estate] but economic-loss rule did not apply because the duty was the duty
     "not to violate *the statutory provisions* governing real estate licensees" (emphasis added)).

26   Rimini's focus on the coincident contract breach is misdirection.  *See also Robinson Helicopter*
     *Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990-92 (suits in tort available when contract-related

27   conduct involves "deceit," breach of independent tort duty, or breach of a "social policy that
     merits the imposition of tort remedies").

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    In order to resolve the foregoing objections, Oracle requests the paragraph immediately

2  following the elements be revised to say:

3        "Unlawful or improper means' does not include breach of contract or copyright

4    infringement.  The unlawful or improper means that Oracle America and/or Oracle

5    International Corporation claim are (a) misrepresentations and (b) violations of the

6    CFAA, NCCL, or CDAFA by Rimini Street and Seth Ravin.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**1**    <u>**Oracle's Request for Additional Instruction: TomorrowNow and CedarCrestone**</u>

**2**    Oracle requests that the Court add a proposed instruction addressing TomorrowNow and

**3**    CedarCrestone.  Oracle requested such instruction in its Proposed Jury Instruction To Address

**4**    TomorrowNow and CedarCrestone filed on September 23, 2015, (Dkt. 810), after Defendants

**5**    made clear in Court that:  "[w]e have no intention whatsoever of referencing TomorrowNow or

**6**    CedarCrestone as noninfringing alternatives.  That's not going to happen."    Trial Tr. at

**7**    1615:22-24; *see also id.* at 1606:12-15 (Rimini Counsel:  "I said that we didn't intend to argue

**8**    that TomorrowNow was a noninfringing alternative."); Dkt. 816 at 2 ("Rimini will not introduce

**9**    evidence that TomorrowNow and CedarCrestone were infringing or non-infringing

**10**    alternatives.").

**11**    In light of the multiple representations made by Defendants, Oracle believes such an

**12**    instruction is necessary both factually and legally in order to avoid any potential confusion by

**13**    the jury.

**14**    *First*, the law is clear that the jury must consider only *non-infringing* alternatives as valid

**15**    alternative options for Rimini's support services that could reduce Oracle's claimed lost profit

**16**    damages.  *IGT v. Alliance Gaming Corp.*, 2008 WL 7084605, at *6 (D. Nev. Oct. 21, 2008)

**17**    (only "acceptable noninfringing substitutes" considered in patent lost-profits calculations)

**18**    (emphasis added); *VNUS Med. Techs., Inc. v. Diomed Holdings, Inc*., 2007 WL 3096586, at *1

**19**    (N.D. Cal. Oct. 22, 2007) (same); *Polaroid Corp. v. Eastman Kodak Co*., No. 76-1634-MA,

**20**    1990 WL 324105, at *13 (D. Mass. Oct. 12, 1990) amended, No. CIV.A. 76-1634-MA, 1991

**21**    WL 4087 (D. Mass. Jan. 11, 1991) (when calculating lost profits, "[t]he inquiry [into substitutes]

**22**    is quite narrow; acceptable substitutes are those products which offer the key advantages of the

**23**    patented device but do not infringe"); *see also State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d

**24**    1573, 1578 (Fed. Cir. 1989) (discounting "other competitors" if the court was correct that they

**25**    "were likely infringers").

**26**    *Second*, the evidence before this Court establishes that both TomorrowNow and

**27**    CedarCrestone infringed Oracle's copyrights and therefore, are *infringing* alternatives.  Dkt. 823

**28**    and 825, Ringgenberg Decl., Exs. E and F (PTX 1483 and PTX 1489 (TomorrowNow Trial

29

1    Stipulations and Orders)); *id.*, Ex. D (PTX 1487 (TomorrowNow Criminal Plea Agreement)); *id.*,

2    Ex. B (PTX 5365 (Declaration of Brian E. Fees on Behalf of CedarCrestone, Inc. confirming that

3    "CedarCrestone concluded that the manner in which it provided Maintain Services to certain

4    clients with license agreements containing restrictions similar to CedarCrestone's PeopleSoft,

5    Inc. License Agreement was not permitted by those license agreements.)); Trial Tr. 1610:2-

6    1616:17 (discussing Fees' Declaration with the Court).

7                    Accordingly, Oracle proposes the below instruction, which is slightly modified

8    from its September 23 proposal:

9            **Oracle's Proposed Additional Instruction:  TomorrowNow and CedarCrestone**

10                   Oracle contends that its damages should include "lost profits" Oracle

11   International Corporation suffered as a result of Rimini Street's infringement.

12   Specifically, Oracle contends that Oracle International Corporation is entitled to recover

13   lost profits based on the lost support revenue it would have received from customers who

14   purchased support services from Rimini Street.

15                   Defendants contend that these customers would not have purchased

16   support from Oracle for reasons other than Rimini Street's infringement. Among other

17   things, Defendants claim that, if Rimini Street did not commit those acts, Oracle's

18   customers would have chosen other third party support providers instead of purchasing

19   support from Oracle. You have heard evidence regarding TomorrowNow and

20   CedarCrestone.  In considering Oracle International Corporation's claims of lost profits,

21   you *must not* consider TomorrowNow and CedarCrestone as available third-party support

22   providers that customers might have chosen instead of Rimini Street or Oracle.

23

24

25

26

27

28

ORACLE'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    DATED:  October 3, 2015                    BOIES SCHILLER & FLEXNER LLP

2

3
                                        By: */s/ Kieran P. Ringgenberg*
4                                           Kieran P. Ringgenberg
                                            Attorneys for Plaintiffs
5                                           Oracle USA, Inc., Oracle America, Inc., and
                                            Oracle International Corp.
6

7

8

9

10

11                          <u>**CERTIFICATE OF SERVICE**</u>

12          I hereby certify that on the 3rd day of October, 2015, I electronically transmitted the

13    foregoing **PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND**

14    **ORACLE INTERNATIONAL CORPORATION'S OBJECTIONS TO THE COURT'S**

15    **PROPOSED JURY INSTRUCTIONS** to the Clerk's Office using the CM/ECF System for

16    filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel

17    being registered to receive Electronic Filing.

18
                                            */s/ Kieran P. Ringgenberg*
19                                          Kieran P. Ringgenberg

20

21

22

23

24

25

26

27

28
                                        31