SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 780
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S CORRECTED RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS** |

# TABLE OF CONTENTS

J-12: DUTY OF THE JURY ............................................................................................... 2

P-9.  ORACLE ENTITIES AND CLAIMS ....................................................................... 3

P-7: CORPORATE PARTIES (W/MODS) ........................................................................ 4

J-14: WHAT IS EVIDENCE ............................................................................................. 5

J-16: WHAT IS NOT EVIDENCE .................................................................................... 1

J-18: DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................ 2

DEPOSITION IN LIEU OF LIVE TESTIMONY (MODEL INSTRUCTION W/
   MODS) ............................................................................................................................ 3

J-15: EVIDENCE FOR A LIMITED PURPOSE ............................................................. 4

J-17: RULING ON OBJECTIONS .................................................................................... 5

J-24: CREDIBILITY OF WITNESSES ............................................................................ 6

J-25: EXPERT OPINION .................................................................................................. 7

J-27: STIPULATIONS OF FACT ..................................................................................... 9

J-19: CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE .................... 10

J-20: CHARTS AND SUMMARIES IN EVIDENCE .................................................... 11

J-21: USE OF INTERROGATORIES OF A PARTY .................................................... 12

J-23: REDACTED DOCUMENTS .................................................................................. 13

BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE (COURT
   INSTRUCTION) ........................................................................................................... 14

J 13: BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE ................. 15

J-28: SPOLIATION OF EVIDENCE .............................................................................. 16

P-10B: TOMORROWNOW EVIDENCE (W/ MODS) ................................................. 17

P-53: CUSTOMER SURVEYS ....................................................................................... 19

P-11: COPYRIGHT - INTRODUCTION AND DEFINITIONS .................................. 21

COPYRIGHT INFRINGEMENT - OVERVIEW (COURT INSTRUCTION) ........... 24

D-8: COPYRIGHT - DIRECT INFRINGEMENT (W/ MODS) ................................... 27

COPYRIGHT - EXPRESS LICENSE (COURT INSTRUCTION) .............................. 29

P-15: LICENSE INTERPRETATION - PAROL EVIDENCE (W/ MODS) ................ 37

P-16: COPYRIGHT - CONTRIBUTORY INFRINGEMENT (W/ MODS) ................ 38

P-17: COPYRIGHT - VICARIOUS INFRINGEMENT (W/ MODS) .......................... 40

COPYRIGHT DAMAGES - INTRODUCTION (COURT INSTRUCTION) ............. 42

COPYRIGHT INFRINGEMENT - ACTUAL DAMAGES (MODIFIED ORACLE V.
   SAP INSTRUCTION) .................................................................................................. 46

P-18: COPYRIGHT DAMAGES - CAUSATION ......................................................... 47

COPYRIGHT DAMAGES - LOST PROFITS (COURT INSTRUCTION) ................ 48

D-20: COPYRIGHT DAMAGES - ORACLE'S LOST PROFITS - CAUSATION (W/
   MODS) .......................................................................................................................... 50

i

1   COPYRIGHT DAMAGES - DEFENDANTS' PROFITS (COURT INSTRUCTION) ............ 51

2   COPYRIGHT DAMAGES - FAIR MARKET VALUE LICENSE (COURT
    INSTRUCTION) .............................................................................................................. 54

3   D-22: COPYRIGHT DAMAGES - STATUTORY DAMAGES (W/ MODS) .......................... 57

4   J-32: COPYRIGHT - DAMAGES - INNOCENT INFRINGEMENT ...................................... 60

    J-33: COPYRIGHT - DAMAGES - WILLFUL INFRINGEMENT ........................................ 61

5   D-23: INDUCING BREACH OF CONTRACT (W/ MODS) ...................................................... 62

6   D-24: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
    ADVANTAGE (W/ MODS) ............................................................................................ 66

7   J-34: INTENTIONAL INTERFERENCE - EXISTENCE OF RELATIONSHIP .................... 72

8   P-26: INDUCING BREACH OF CONTRACT AND INTENTIONAL
    INTERFERENCE - KNOWLEDGE (W/ MOD) ............................................................ 74

9   P-27: INDUCING BREACH OF CONTRACT AND INTENTIONAL
    INTERFERENCE - INTENT (W/ MODS) ..................................................................... 76
10

11  P-28: INDUCING BREACH OF CONTRACT AND INTENTIONAL
    INTERFERENCE - CAUSATION ................................................................................ 78

12  D-25: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
    ADVANTAGE - COMPETITION ................................................................................ 79

13  P-29: INDUCING BREACH OF CONTRACT AND INTENTIONAL
    INTERFERENCE - DAMAGES (W/ MODS) ............................................................... 80

14  P-30: FEDERAL COMPUTER FRAUD AND ABUSE ACT - INTRODUCTION (W/
    MODS) ........................................................................................................................... 85
15

    J-35: FEDERAL COMPUTER FRAUD AND ABUSE ACT - DEFINITIONS ...................... 87
16
    P-31: FEDERAL COMPUTER FRAUD AND ABUSE ACT - OBTAINING
17  INFORMATION (W/ MODS) ....................................................................................... 90

    P-32: FEDERAL COMPUTER FRAUD AND ABUSE ACT - INTENTIONAL
18  DAMAGE TO COMPUTER ........................................................................................ 92

19  P-33: FEDERAL COMPUTER FRAUD AND ABUSE ACT - RECKLESS DAMAGE
    TO COMPUTER ............................................................................................................ 93

20  P-34: FEDERAL COMPUTER FRAUD AND ABUSE ACT - DAMAGES (W/ MODS) ........ 94

21  J-36: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT ............................... 96

    J-37: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT -
22  DEFINITIONS ............................................................................................................... 97

23  P-35: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - SECTION 2 ........ 98

    P-36: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - SECTION 3 ...... 100
24
    P-37: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT -
25  ASSISTING, AIDING & ABETTING ........................................................................ 101

    P-38: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - DAMAGES ...... 103
26
    P-39: NEVADA COMPUTER CRIMES LAW ...................................................................... 104
27
    P-42: NEVADA COMPUTER CRIMES LAW - DEFINITIONS ......................................... 105

28  P-40: NEVADA COMPUTER CRIMES LAW - SECTION 1 .............................................. 108

1

P-41: NEVADA COMPUTER CRIMES LAW - SECTION 3 ................................................ 110

2

P-43: NEVADA COMPUTER CRIMES LAW - DAMAGES (W/ MODS) ........................... 111

P-46: DAMAGES - PUNITIVE DAMAGES - LIABILITY ............................................. 112

3

RIMINI'S ARGUMENT IN SUPPORT OF ADDITIONAL PUNITIVE DAMAGES
    INSTRUCTIONS: ................................................................................................... 116

4

J-40: PUNITIVE DAMAGES - OFFICER, DIRECTOR, OR MANAGING AGENT ............ 117

5

J-45: RETURN OF VERDICT ......................................................................................... 118

6

P-48: VERDICT FORM - DUPLICATIVE DAMAGES (WITH MODIFICATIONS) ........... 119

7

J-44: COMMUNICATION WITH COURT (W/ MODS) .......................................................... 120

DUTY TO DELIBERATE (COURT CREATED) ................................................................ 121

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    For the reasons set forth in Rimini's pending motion for judgment as a matter of law

2  pursuant to Federal Rule of Civil Procedure 50(a), none of Oracle's claims should go to the jury.

3  To the extent the Court does not grant judgment as a matter of law or defers ruling on Rimini's

4  motion until after the jury reaches a verdict, Rimini submits the following responses to the

5  Court's proposed jury instructions.

6    In addition to the proposals and objections set forth below, Rimini maintains the

7  objections and arguments filed previously with respect to the parties' proposed instructions.

8  Dkts. 738, 766, 773.  Responses below are therefore in addition to Rimini's prior objections, all

9  of which Rimini maintains.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**J-12: DUTY OF THE JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you will receive a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

1    **P-9.  ORACLE ENTITIES AND CLAIMS**

2         You have seen references to several "Oracle" entities.  Oracle America, Inc. develops and

3    licenses certain intellectual property and software, and provides software support services.

4    Oracle America, Inc. is the successor to Oracle USA, Inc., as well as certain companies that were

5    formerly part of PeopleSoft, JD Edwards, and Siebel Systems.  Oracle International Corporation

6    is the owner or exclusive licensee of the copyrights at issue in this case.  In these instructions, I

7    refer to these entities as "Oracle" or "plaintiff(s)."

8         However, as part of your deliberations, I inform you that you must find for each plaintiff

9    separately as to those claims that a plaintiff alleges. For example, only some claims are alleged

10   by Oracle International Corporation while other claims are alleged by Oracle America, Inc.

11   When necessary in these instructions, I will refer to the specific plaintiff or plaintiffs alleging a

12   particular claim.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **P-7: CORPORATE PARTIES (W/MODS)**

2       Plaintiff Oracle America, Inc., plaintiff Oracle International Corporation, and defendant

3   Rimini Street are corporations. Corporations are entitled to the same fair and impartial treatment

4   that you would give to an individual. You must decide this case with the same fairness that you

5   would use if you were deciding the case between individuals.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **J-14: WHAT IS EVIDENCE**

2         The evidence you are to consider in deciding what the facts are consists of:

3         1.      the sworn testimony of any witness;

4         2.      the exhibits which are received into evidence; and

5         3.      any facts to which the lawyers have agreed.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**J-16: WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times, is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  But you should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.      Anything you have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

5.      Any notes taken by you or other jurors are not evidence.

1   **J-18: DIRECT AND CIRCUMSTANTIAL EVIDENCE**

2        Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such

3   as testimony by a witness about what that witness personally saw or heard or did. Circumstantial

4   evidence is proof of one or more facts from which you could find another fact. You should

5   consider both kinds of evidence.

6        The law makes no distinction between the weight to be given to either direct or

7   circumstantial evidence. It is for you to decide how much weight to give to any evidence.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rimini's Response to the Court's Proposed Jury Instructions

1    **DEPOSITION IN LIEU OF LIVE TESTIMONY (MODEL INSTRUCTION W/ MODS)**

2    The weight of the evidence as to a fact does not necessarily depend on the number of

3    witnesses who testify.

4    During the course of the trial, testimony was read to your from depositions and played for

5    you from videotapes of depositions. A deposition is the sworn testimony of a witness taken

6    before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask

7    questions. The questions and answers are preserved in writing, or in some cases on videotape.

8    You should consider deposition testimony, presented to you in court either in writing or

9    played on videotape in the same way as if the witness had been present to testify.

10

11   **RIMINI'S PROPOSED MODIFICATIONS:**

12   The weight of the evidence as to a fact does not necessarily depend on the number of

13   witnesses who testify.

14   During the course of the trial, testimony was read to you~r~ from depositions and played for

15   you from videotapes of depositions. A deposition is the sworn testimony of a witness taken

16   before trial. The witness is placed under oath to tell the truth, and lawyers for each party may ask

17   questions. The questions and answers are preserved in writing, or in some cases on videotape.

18   You should consider deposition testimony, presented to you in court either in writing or

19   played on videotape in the same way as if the witness had been present to testify.

20

21   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

22   The first modification (change "your" to "you") is correction of a typographical error.

23   The second modification (addition of a comma) is for clarification only.

24

25

26

27

28

1    **J-15: EVIDENCE FOR A LIMITED PURPOSE**

2         Some evidence may be admitted for a limited purpose only. When I instruct that an item

3    of evidence has been admitted for a limited purpose, you must consider it only for that limited

4    purpose and for no other.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**J-17: RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question may be answered or the exhibit received. If I sustained the objection, the question cannot be answered, and the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

1   **J-24: CREDIBILITY OF WITNESSES**

2       In deciding the facts in this case, you may have to decide which testimony to believe and

3   which testimony not to believe. You may believe everything a witness says, or part of it, or none

4   of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

5       In considering the testimony of any witness, you may take into account:

6       1.      the opportunity and ability of the witness to see or hear or know the things

7   testified to;

8       2.      the witness's memory;

9       3.      the witness's manner while testifying;

10      4.      the witness's interest in the outcome of the case and any bias or prejudice;

11      5.      whether other evidence contradicted the witness's testimony;

12      6.      the reasonableness of the witness's testimony in light of all the evidence; and

13      7.      any other factors that bear on believability.

14      The weight of the evidence as to a fact does not necessarily depend on the number of

15  witnesses who testify about it.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **J-25: EXPERT OPINION**

2         Some witnesses, because of education or experience, are permitted to state opinions and

3    the reasons for those opinions.

4         Opinion testimony should be judged just like any other testimony. You may accept it or

5    reject it, and give it as much weight as you think it deserves, considering the witness's education

6    and experience, the reasons given for the opinion, and all the other evidence in the case.

7

8    **RIMINI'S PROPOSED MODIFICATIONS:**

9         Some witnesses, referred to as experts during trial, ~~because of education or experience,~~

10   are permitted to state opinions and the reasons for those opinions because of their education or

11   experience.

12        ~~Opinion~~ This testimony should be judged just like any other testimony. You may accept

13   it or reject it, and give it as much weight as you think it deserves, considering the witness's

14   education and experience, the reasons given for the opinion, and all the other evidence in the

15   case. An expert's testimony on a fact that is not based on evidence is not evidence of that fact.

16

17   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

18        The first revision restructures the sentence and includes a reference to "experts" because

19   that is how they were referred to at trial.  The paragraph is substantively the same.

20        The second revision (changing "Opinion" to "This") is for clarity only and does not

21   change the substance of the sentence.

22        The third revision (adding "An expert's testimony on a fact that is not based on evidence

23   is not evidence of that fact") is a correct statement of the law.  *Nungary v. Rowe*, 2011 WL

24   3862093, at *4 (N.D. Cal. Aug. 30, 2011).  And that instruction is necessary here because

25   Oracle's experts testified that TomorrowNow and CedarCrestone infringed Oracle's copyrights.

26   *E.g.*, 9/24 Tr. 1790-1791, 1793, 1871.  It would be highly prejudicial to Rimini Street and Mr.

27   Ravin if the jury concluded, based on Ms. Dean's and Mr. Yourdon's testimony, that these third

28   parties infringed Oracle's copyrights, because no evidence about those companies' practices, the

1   copyrights or licenses agreements at issue, or whether those companies were infringing was

2   admitted at trial.   This is especially true with respect to CedarCrestone because there is no

3   evidence on the record that CedarCrestone infringed, no court has ever ruled that CedarCrestone

4   infringed, and Rimini Street was denied discovery by Magistrate Judge Leen regarding whether

5   CedarCrestone infringed.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **J-27: STIPULATIONS OF FACT**

2        The parties have agreed to certain facts. This agreement is known as a "stipulation." You

3  should treat all these facts as already proved. Your juror notebook identifies these facts.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **J-19: CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

2        Certain charts, summaries, and slides not received in evidence have been shown to you in

3   order to help explain the contents of books, records, documents, or other evidence in the case.

4   They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts

5   or figures shown by the evidence in the case, you should disregard these charts and summaries

6   and determine the facts from the underlying evidence.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **J-20: CHARTS AND SUMMARIES IN EVIDENCE**

2      Certain charts and summaries have been received into evidence to illustrate information

3  brought out in the trial. Charts and summaries are only as good as the underlying evidence that

4  supports them. You should, therefore, give them only such weight as you think the underlying

5  evidence deserves.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **J-21: USE OF INTERROGATORIES OF A PARTY**

2          Evidence has been presented to you in the form of an answer of one of the parties to a

3   written interrogatory submitted by the other side. These answers were given in writing and under

4   oath, before the actual trial, in response to a question that was submitted in writing under

5   established court procedures. You should consider the answer, insofar as possible, in the same

6   way as if it was made from the witness stand.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **J-23: REDACTED DOCUMENTS**

2         Certain documents received in evidence may have portions blacked out or otherwise

3    redacted. Do not speculate or consider what would have been included in the document absent

4    those redactions. You should not consider the redactions during your deliberations.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE (COURT
2  INSTRUCTION)**

3       When a party has the burden of proof on any claim or affirmative defense by a
   preponderance of the evidence, it means you must be persuaded by the evidence that the claim or
4  affirmative defense is more probably true than not true.

5
6       You should base your decision on all of the evidence, regardless of which party presented
   it.
7

8
9  **RIMINI'S PROPOSED MODIFICATIONS:**

10       When a party has the burden of proof on any claim or affirmative defense by a
    preponderance of the evidence, it means you must be persuaded by the evidence that the claim or
11  affirmative defense is more probably true than not true. If the evidence submitted by both sides
12  is balanced, then the party with the burden of proof has not demonstrated a preponderance of the
13  evidence.

14       You should base your decision on all of the evidence, regardless of which party presented
15  it.
16

17
18  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

19       Rimini's proposed addition is a plain-language explanation of the preponderance standard
    that the jury will appreciate. It is indisputably correct: Oracle, as the plaintiff, bears the burden
20  of proving its case and is not entitled to a favorable verdict if the evidence is balanced. The
21  Ninth Circuit stated in *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir.
22  2015), that "[u]nder the preponderance of the evidence standard, if the evidence submitted by
23  both sides is balanced, in equipoise, the scales tip against" the party with the burden of proof.
24
25
26
27
28

1    **J 13: BURDEN OF PROOF - CLEAR AND CONVINCING EVIDENCE**

2         When a party has the burden of proving any claim or defense by clear and convincing

3    evidence, it means you must be persuaded by the evidence that the claim or defense is highly

4    probable. This is a higher standard of proof than proof by a preponderance of the evidence. You

5    should base your decision on all of the evidence, regardless of which party presented it.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **J-28: SPOLIATION OF EVIDENCE**

2       Rimini Street had a location on its computer systems that some employees referred to as

3  the "software library."

4       This location contained a complete copy of at least 31 of Oracle's registered, copyrighted

5  works. A list of the 31 works is in your juror notebook.   Rimini breached its duty to preserve

6  relevant evidence when it deleted certain material in the software library in January 2010.

7       You may, but are not required, to infer that the deleted material included evidence that

8  was favorable to Oracle's claims and unfavorable to Rimini Street's defenses in this case.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **P-10B: TOMORROWNOW EVIDENCE (W/ MODS)**

2      You have heard evidence and argument concerning a company called TomorrowNow.

3      You may not use evidence concerning TomorrowNow to infer that, because Seth Ravin

4  was at one time associated with TomorrowNow, he or any individual employed by Rimini Street

5  did, or was more likely to have done, the things that Oracle contends.

6

7  **RIMINI'S PROPOSED MODIFICATIONS:**

8      You have heard evidence and argument concerning a company called TomorrowNow.

9      You may not use evidence concerning TomorrowNow to infer that, because Seth Ravin

10  was at one time associated with TomorrowNow, he, Rimini Street, or any individual employed

11  by Rimini Street did, or was more likely to have done, the things that Oracle contends.

12      You also cannot use this evidence as proof of whether Seth Ravin's or Rimini Street's

13  conduct was willful, malicious, or unjustifiable.  Nor can you use this evidence in deciding

14  whether to award punitive damages.

15

16  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

17      Oracle has used TomorrowNow with virtually every witness in this trial; it has been a

18  daily, pervasive topic; and it is important for the jury to be told specifically what it cannot use

19  that TomorrowNow evidence for.  Rimini therefore submits that two modifications are necessary

20  to prevent undue prejudice to Rimini Street.  The modification should not prejudice Oracle, as it

21  has said it does "not rely on Ravin's previous employment with TomorrowNow and the

22  subsequent lawsuit brought against TomorrowNow for Oracle's argument that the Defendants

23  acted with malice and conscious disregard."  Dkt. 843 at 24 n.12.

24      First, the second sentence should include "Rimini Street" to guard against the possibility

25  that the jury will be misled or confused.  Not only does Mr. Ravin's prior association with

26  TomorrowNow have no bearing on his own liability in this case, it has no bearing on Rimini's

27  liability, either.

28

1    Second, the jury must be instructed that this evidence cannot be used as evidence
2  supporting a finding of willfulness or punitive damages.  The conduct of an unrelated third party,
3  or of its parent company, has no bearing on an individual defendant's state of mind, and
4  imposing punitive damages based on the third party's conduct would be unconstitutional.  *See*
5  Dkt. 559 at 6-8.  No one knows why SAP "admitted wrongdoing" by TomorrowNow or
6  ultimately decided to shut it down; that evidence certainly was not submitted at trial.  Nor has
7  there been any clear and convincing evidence of infringement or even any showing of substantial
8  similarity between the two companies.  It would be plainly improper to allow the jury to
9  speculate about why TomorrowNow and SAP did what they did, and to assume that Mr. Ravin
10  had knowledge or an understanding of those actions.  Accordingly, Rimini the Court should give
11  the instruction with the modifications Rimini proposes.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1  **P-53: CUSTOMER SURVEYS**

2       You have heard witnesses testify about customer satisfaction surveys. You may not

3  consider a survey as evidence that the survey results are true. You may only consider the

4  testimony regarding the witnesses' impressions of the surveys and actions taken as a result of the

5  survey.

6  **RIMINI'S PROPOSED MODIFICATIONS:**

7  ~~You have heard witnesses testify about customer satisfaction surveys. You may not~~

8  ~~consider a survey as evidence that the survey results are true. You may only consider the~~

9  ~~testimony regarding the witnesses' impressions of the surveys and actions taken as a result of the~~

10  ~~survey.~~

11  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

12       This instruction is confusing and unnecessary.  The surveys themselves were not

13  admitted into evidence, and the testimony *about* the surveys was entirely proper.  The jury has

14  already been instructed on this issue and told that the survey is not evidence of the underlying

15  customers' motivations.  Specifically, the Court admonished the jury:

16         Ladies and gentlemen, I might comment.  The Court has issued several rulings
17         here concerning the testimony, and Mr. Rowe's entitled to testify concerning what
       he does in the company and the reasons for that.  But he's not qualified -- he hasn't
18         been qualified to testify to why customers do one thing or customers do another,
       and that's why the Court has entered those rulings that I've entered, and you
19         should disregard his testimony concerning -- along those lines.

20  9/29 Tr. 2376:15-24.  In light of the Court's admonishment, this instruction is duplicative and

21  has the improper effect of suggesting to the jury that it should discredit testimony about the

22  surveys presented during Rimini's case.

23       Moreover, this instruction would tell the jury that the survey results are not *true*; but the

24  Court's concern during trial was that survey results are not evidence of "why customers do one

25  thing or customers do another."  There is no authority for telling the jury it should take as true

26  the testimony about the results offered by a witness testifying as to his own personal knowledge

27  about surveys conducted in the regular course of business within the scope of his employment.

28  The Court recognized as much in the following exchange with Oracle's counsel:

1

2      MR. ISAACSON: Your Honor --
       THE COURT: He's a qualified witness to testify to their findings on customer
3      satisfaction within Rimini.
       MR. ISAACSON: But the survey itself is inadmissible because there are separate
4      requirements for a survey separate from --
       THE COURT: That's true. But he can testify as to his understanding of the
5      customer survey.

6

7      9/29 Tr. 2401:6-13.

8              The cases Oracle has cited (Dkt. 852 at 9) relate to the admissibility of *actual surveys*,

9      which is not at issue here, because Rimini did not move for their admission.

10             In short, the instruction undermines this Court's correct conclusion and prior

11     admonishment of the jury, and is unnecessary and confusing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-11: COPYRIGHT - INTRODUCTION AND DEFINITIONS**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

1.      reproduce the copyrighted work;

2.      prepare derivative works based upon the copyrighted work by adapting or transforming it; and

3.      distribute copies of either the copyrighted work or derivative work.

The owner or exclusive licensee of a copyright holds these exclusive rights. "Owner" refers to the author of the work, or one who has been assigned the ownership of exclusive rights in the work. In general, copyright law protects against the reproduction, adaptation, or distribution of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

Even though one may acquire a copy of the copyrighted work, the copyright owner retains certain rights and control of that copy, including uses that may result in additional copies or alterations of the work.

The term "derivative work" refers to a work based on one or more pre existing works, where the pre existing work is recast, transformed, or adapted. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

An "original work" or "original element" is one that has been created independently by the author (that is, the author did not copy it) using at least minimal creativity.


**RIMINI'S PROPOSED MODIFICATIONS:**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

1.      authorize, or make additional copies, or otherwise reproduce the copyrighted work in copies;

2.      prepare derivative works based upon the copyrighted work by adapting or

21

1    transforming it; and

2            3.        distribute copies of either the copyrighted work or derivative work.

3            The owner or exclusive licensee of a copyright holds these exclusive rights. "Owner"

4    refers to the author of the work, or one who has been assigned the ownership of exclusive rights

5    in the work. In general, copyright law protects against the reproduction, adaptation, or

6    distribution of the owner's copyrighted work without the owner's permission. An owner may

7    enforce these rights to exclude others in an action for copyright infringement.

8            Even though one may acquire a copy of the copyrighted work, the copyright owner

9    retains certain rights and control of that copy, including uses that may result in additional copies

10   or alterations of the work.

11   ~~The term "derivative work" refers to a work based on one or more pre-existing works,~~

12   ~~where the pre-existing work is recast, transformed, or adapted. Accordingly, the owner of a~~

13   ~~copyrighted work is entitled to exclude others from recasting, transforming or adapting the~~

14   ~~copyrighted work without the owner's permission.~~  [If the derivative works portion of the

15   instruction is not deleted in its entirety, add: "Copyright protection of a derivative work covers

16   only the contribution made by the author of the derivative work. If the derivative work

17   incorporates pre-existing work by others, the derivative author's protection is limited to elements

18   added by the derivative author to the preexisting work of others."]

19   ~~An "original work" or "original element" is one that has been created independently by~~

20   ~~the author (that is, the author did not copy it) using at least minimal creativity.~~

21

22   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

23           The instruction fails to mention that copyright owners can authorize others to copy their

24   work—a point that the Ninth Circuit's model instructions include.  *See* Ninth Cir. Model Jury

25   Instr. No. 17.1 (stating that the "right to copy includes the exclusive rights to … authorize …

26   [reproduction of] the copyrighted work in copies"); 17 U.S.C. § 117(a) ("it is not an infringement

27   for the owner of a copy of a computer program to make or authorize the making of another copy"

28   under certain circumstances).  Whether Oracle, through its licenses, expressly authorized the

1   making of certain of its copyrighted works for certain purposes is a central issue in this lawsuit

2   about which the jury must be instructed.  *See Gulliford v. Pierce Cnty.*, 136 F.3d 1345, 1348 (9th

3   Cir. 1998) ("Jury instructions must be formulated so that they fairly and adequately cover the

4   issues presented.").

5       The remainder of the instruction (dealing with originality and derivative works) is

6   unnecessary and will confuse the jury, as the originality of Oracle's copyrighted works, or

7   whether any copies made by Rimini constitute derivative works, is not at issue in this case, and

8   could confuse the jury into thinking there are allegations of infringement through the creation of

9   derivative works.  If the Court is nevertheless inclined to instruct on derivative works, Rimini

10   objects to Oracle's instruction on the basis that its description fails to describe—as the Ninth

11   Circuit model instructions do—what is *not* a derivative work, or what the limitations on

12   copyright protection for derivative works are.  *See* Ninth Cir. Model Jury Instr. No. 17.13; *see*

13   *also* 17 U.S.C. § 103(b) ("The copyright in a … derivative work extends only to the material

14   contributed by the author of such work, as distinguished from the pre-existing material employed

15   in the work, and does not imply any exclusive right in the preexisting material.").  An instruction

16   on derivative works that omits that phrase misstates the law and should not be given.

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **COPYRIGHT INFRINGEMENT - OVERVIEW (COURT INSTRUCTION)**

2    In this action, Oracle International Corporation contends that defendant Rimini Street is

3    liable for direct copyright infringement of Oracle International Corporation's PeopleSoft, Oracle

4    Database, J.D. Edwards, and Siebel software and support material. Oracle International

5    Corporation also contends that defendant Seth Ravin is liable for contributory and/or vicarious

6    copyright infringement.

7    Defendant Rimini Street denies infringing Oracle's copyrights and asserts an affirmative

8    license defense as to the conduct at issue, which I will explain in more detail.

9    You are informed that the Court has previously ruled as a matter of law that defendant

10    Rimini Street engaged in copyright infringement of Oracle International Corporation's Oracle

11    Database and PeopleSoft software applications. However, the court has not ruled on whether

12    defendant Rimini Street engaged in copyright infringement of Oracle International Corporation's

13    J.D. Edwards and Siebel software and related documents or Oracle International Corporation's

14    PeopleSoft documentation. PeopleSoft documentation is different from the PeopleSoft software

15    applications. The PeopleSoft software applications are the actual computer programs installed on

16    a customer's computer system. In contrast, the PeopleSoft documentation are related support

17    materials - in the form of technical manuals, installation guides, and other copyrighted

18    documents - that help a customer utilize and install the PeopleSoft software application.

19    It will be up to you, the jury, to determine whether defendant Rimini Street is liable for

20    copyright infringement of Oracle International Corporation's J.D. Edwards and Siebel software

21    applications and related documentation as well as Oracle International Corporation's PeopleSoft

22    documentation.

23    It will also be up to you to determine whether defendant Seth Ravin is liable for

24    contributory and/or vicarious copyright infringement for all copyright infringement engaged in

25    by defendant Rimini Street.

26    Finally, it will be up to you to determine the amount of damages to award Oracle

27    International Corporation for all copyright infringement engaged in by defendant Rimini Street. I

28    will now instruct you on the law on these issues to help you in your deliberations.

**RIMINI'S PROPOSED MODIFICATIONS:**

In this action, Oracle International Corporation contends that defendant Rimini Street is liable for direct copyright infringement of Oracle International Corporation's PeopleSoft, Oracle Database, J.D. Edwards, and Siebel software and support material. Oracle International Corporation also contends that defendant Seth Ravin is liable for contributory and/or vicarious copyright infringement.

Defendant Rimini Street denies infringing Oracle's copyrights and asserts an affirmative license defense as to the conduct at issue, which I will explain in more detail.

You are informed that the Court has previously ruled as a matter of law that defendant Rimini Street engaged in copyright infringement of Oracle International Corporation's Oracle Database and PeopleSoft software applications. However, the court has not ruled on whether defendant Rimini Street engaged in copyright infringement of Oracle International Corporation's J.D. Edwards and Siebel software and related documents or Oracle International Corporation's PeopleSoft documentation. PeopleSoft documentation is different from the PeopleSoft software applications. The PeopleSoft software applications are the actual computer programs installed on a customer's computer system. In contrast, the PeopleSoft documentation are related support materials - in the form of technical manuals, installation guides, and other copyrighted documents - that help a customer utilize and install the PeopleSoft software application.

It is Oracle's burden to show that the copying Oracle alleges exceeded the scope of~~was not authorized by~~ the license agreements.  It will be up to you, the jury, to determine whether defendant Rimini Street is liable for copyright infringement of Oracle International Corporation's J.D. Edwards and Siebel software applications and related documentation as well as Oracle International Corporation's PeopleSoft documentation~~-~~.  There are no more than 100 works for which infringement has been alleged in this case.  You will have to decide how many of the works you believe Rimini infringed.

It will also be up to you to determine whether defendant Seth Ravin is liable for contributory and/or vicarious copyright infringement ~~for all if you find any~~for any copyright

1    infringement ~~was~~ engaged in by defendant Rimini Street.

2           Finally, it will be up to you to determine the amount of damages to award Oracle

3    International Corporation for ~~all~~ any copyright infringement engaged in by defendant Rimini

4    Street. I will now instruct you on the law on these issues to help you in your deliberations.

5

6    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

7           The modifications noted above are necessary to ensure that the instruction accurately

8    states Oracle's burden of proof on infringement and to prevent the jury from assuming that direct

9    infringement, and well as indirect infringement, are foregone conclusions for every work.  The

10   jury may not consider whether Mr. Ravin is liable for indirect infringement unless it finds some

11   directly infringing conduct by Rimini.  *See Elliot v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.

12   2004).  The language also reflects the parties' agreement, per the pre-trial order (Dkt. 527 at 19),

13   that there are no more than 100 copyrighted works at issue in this action.  This information will

14   assist the jury, particularly if it needs to decide whether to award statutory damages on a per

15   work basis.

16

17

18

19

20

21

22

23

24

25

26

27

28

**D-8: COPYRIGHT - DIRECT INFRINGEMENT (W/ MODS)**

To prevail on its claim for direct copyright infringement as to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation, Oracle International Corporation must prove the following by a preponderance of the evidence:

1.      Oracle International Corporation is the owner or exclusive licensee of a valid copyright in an original work;

2.      Rimini Street copied original elements from, created derivative works from, or distributed the original work; and

3.      Rimini Street did not have permission to copy the original elements of the copyrighted work.

The parties have agreed that Oracle International Corporation owns or is the exclusive licensee of certain registered copyrighted works related to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation at issue in this action, which means that Oracle International Corporation has proven the first element for these registered works.

The parties have also agreed, as stated in your juror notebook, that defendant Rimini Street copied the J.D. Edwards and Siebel software applications and related documentation as well as the PeopleSoft documentation at issue in this action. This means that Oracle International Corporation has also proven the second element for these copyrighted works.

I inform you that Oracle International Corporation's claim for direct copyright infringement related to the PeopleSoft documentation is separate from, and not to be confused with, the PeopleSoft copyrighted software application which the court has previously ruled was infringed by Rimini Street as a matter of law.

It is up to you to determine whether defendant Rimini Street had an express license to copy these copyrighted works. I will explain this issue in more detail in another instruction.

If you find that Rimini Street had an express license to make the copies that it did, then you must find in favor of Rimini Street and against Oracle International Corporation on Oracle International Corporation's claim for direct copyright infringement. If, however, you find that

27

1  Rimini Street did not have an express license to make the copies that it did, you must find in

2  favor of Oracle International Corporation and against Rimini Street on Oracle International

3  Corporation's claim of direct copyright infringement.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **COPYRIGHT - EXPRESS LICENSE (COURT INSTRUCTION)**

2        Defendant Rimini Street asserts an express license defense to Oracle International

3    Corporation's claim of direct copyright infringement.

4        Where a defendant asserts an express license defense to copyright infringement, the

5    defendant has the initial burden to identify any license provision or provisions that it believes

6    excuses the infringement. If a defendant satisfies this burden, then it becomes the plaintiff's

7    burden to prove by a preponderance of the evidence that defendant's copying or other

8    infringement was not authorized by the license provision or provisions.

9        In this action, Oracle enters into written software license agreements with its customers

10   that allow the customers to use Oracle International Corporation's copyrighted software and have

11   access to support materials for that software. It is undisputed that defendant Rimini Street did not

12   have its own license with Oracle relevant to any of the issues that you are to decide. Instead,

13   defendant Rimini Street asserts that its own client's software license agreements with Oracle

14   authorized any copying Rimini Street engaged in as it relates to Oracle International

15   Corporation's J.D. Edwards and Siebel software applications and related documentation and

16   PeopleSoft documentation at issue in this action. Under the law defendant Rimini Street is

17   permitted to assert those software license agreements as a defense.

18       It is up to you to determine whether defendant Rimini Street's copying of Oracle

19   International Corporation's J.D. Edwards and Siebel software applications and related

20   documentation and PeopleSoft documentation was authorized by its client's software license

21   agreements with Oracle. To help you in your deliberations, the court has previously interpreted

22   the relevant licenses as a matter of law.

23       J.D. Edwards Software License Agreements

24       As to the J.D. Edwards software license agreements you are informed that the court has

25   previously ruled as a matter of law that the J.D. Edwards software license agreements authorized

26   a third party like Rimini Street to copy the J.D. Edwards software application and related

27   documentation to the extent necessary for the customer's archival needs. An archival copy of the

28   software application and documentation is an unmodified copy of the original software

1    application and documentation for use in the event that production copy of the software - the

2    copy used on a customer's systems - is corrupted or lost. This provision does not mean that a

3    third party like Rimini Street is authorized to make copies of the J.D. Edwards software

4    application and documentation to, among other things, access the software's source code to carry

5    out development and testing of software updates, to make modifications to the software, or to use

6    the customer's software or support materials to support other customers.

7          If you find that the copies of the J.D. Edwards software application and documentation

8    housed on Rimini Street's servers were used solely for the customer's archival needs then that

9    use is authorized by the J.D. Edwards software license agreement and you should find in favor of

10   defendant Rimini Street and against Oracle International Corporation on Oracle International

11   Corporation's claim for direct copyright infringement as it relates to the J.D. Edwards

12   copyrighted works.

13         If, on the other hand, you find that the copies of the J.D. Edwards software application

14   and documentation housed on Rimini Street's servers were used for purposes other than the

15   customer's archival needs then that use is outside the scope of the J.D. Edwards software license

16   agreement and you should find in favor of Oracle International Corporation and against

17   defendant Rimini Street on Oracle International Corporation's claim for direct copyright

18   infringement as it relates to the J.D. Edwards copyrighted works.

19         Siebel Software License Agreements

20         As to the Siebel software license agreements you are informed that the court has ruled as

21   a matter of law that the Siebel software license agreements authorized a third party like Rimini

22   Street to make a reasonable number of copies of the Siebel software application and related

23   documentation solely for the customer's archive or emergency back-up purposes or disaster

24   recovery and related testing. As stated previously, an archival copy of the software and

25   documentation is an unmodified copy of the original software and documentation for use in the

26   event that production copy of the software - the copy used on a customer's systems - is corrupted

27   or lost. This provision does not mean that a third party like Rimini Street is authorized to make

28   copies of the Siebel software and documentation to, among other things, access the software's

1   source code to carry out modification, development and testing of the software not related to

2   archive, emergency back-up, or disaster recovery purposes, or to use the customer's software or

3   support materials to support other customers.

4        If you find that the copies of the Siebel software application and related documentation

5   housed on Rimini Street's servers were used solely for archive or emergency back-up purposes

6   or disaster recovery and related testing then that use is authorized by the Siebel software license

7   agreement and you should find in favor of defendant Rimini Street and against Oracle

8   International Corporation on Oracle International Corporation's claim for direct copyright

9   infringement as it relates to the Siebel copyrighted works.

10       If, on the other hand, you find that the copies of the Siebel software application and

11   related documentation housed on Rimini Street's servers were used for purposes other than

12   archive or emergency back-up purposes or disaster recovery and related testing then that use is

13   outside the scope of the Siebel software license agreement and you should find in favor of Oracle

14   International Corporation and against defendant Rimini Street on Oracle International

15   Corporation's claim for direct copyright infringement as it relates to the Siebel copyrighted

16   works.

17       PeopleSoft Software License Agreements

18       You have already been informed that the court has ruled as a matter of law the defendant

19   Rimini Street engaged in copyright infringement of certain of Oracle International Corporation's

20   PeopleSoft software applications. However, the court has not ruled on the issue of copyright

21   infringement as it relates to Oracle International Corporation's PeopleSoft documentation at

22   issue in this action.

23       As to the PeopleSoft software license agreements you are informed that the court rules as

24   a matter of law that the PeopleSoft software license agreements authorized a third party like

25   Rimini Street to make a reasonable number of copies of the PeopleSoft documentation solely for

26   the customer's internal use. This provision does not authorize a third party like Rimini Street to

27   copy, distribute, or use the PeopleSoft documentation to develop or test software updates for

28   other customers.

1    If you find that the copies of the PeopleSoft documentation were used solely for the

2    customer's internal use then that use is authorized by the PeopleSoft software license agreement

3    and you should find in favor of defendant Rimini Street and against Oracle International

4    Corporation on Oracle International Corporation's claim for direct copyright infringement as it

5    relates to the PeopleSoft documentation and support materials.

6    If, on the other hand, you find that the copies of the PeopleSoft documentation were used

7    for purposes other than solely for the customer's internal use then that use is outside the scope of

8    the PeopleSoft software license agreement and you should find in favor of Oracle International

9    Corporation and against defendant Rimini Street on Oracle International Corporation's claim for

10   direct copyright infringement as it relates to the PeopleSoft documentation and support materials.

11   **RIMINI'S PROPOSED MODIFICATIONS:**

12   Defendant Rimini Street asserts an express license defense to Oracle International

13   Corporation's claim of direct copyright infringement.

14   Where a defendant asserts an express license defense to copyright infringement, the

15   defendant has the initial burden to identify any license provision or provisions that it believes

16   excuses the infringement. If a defendant satisfies this burden, then it becomes the plaintiff's

17   burden to prove by a preponderance of the evidence that defendant's copying or other

18   infringement was not authorized by the license provision or provisions.

19   In this action, Oracle enters into written software license agreements with its customers

20   that allow the customers to use Oracle International Corporation's copyrighted software and have

21   access to support materials for that software. It is undisputed that defendant Rimini Street did not

22   have its own license with Oracle relevant to any of the issues that you are to decide. Instead,

23   defendant Rimini Street asserts that its own client's software license agreements with Oracle

24   authorized any copying Rimini Street engaged in as it relates to Oracle International

25   Corporation's J.D. Edwards and Siebel software applications and related documentation and

26   PeopleSoft documentation at issue in this action. Under the law defendant Rimini Street is

27   permitted to assert those software license agreements as a defense.

28   It is up to you to determine whether defendant Rimini Street's copying of Oracle

1    International Corporation's J.D. Edwards and Siebel software applications and related

2    documentation and PeopleSoft documentation was authorized by its client's software license

3    agreements with Oracle. To help you in your deliberations, the court has previously interpreted

4    the relevant licenses as a matter of law.

5         J.D. Edwards Software License Agreements

6         As to the J.D. Edwards software license agreements you are informed that the court has

7    previously ruled as a matter of law that the J.D. Edwards software license agreements authorized

8    a third party like Rimini Street—who was engaged by a licensee to provide support or other

9    services—to copy the J.D. Edwards software application and related documentation onto its

10   computer systems to the extent necessary for the customer's archival needs and to support the

11   licensee's users. An archival copy of the software application and documentation is an

12   unmodified copy of the original software application and documentation for use in the event that

13   production copy of the software – the copy used on a customer's systems – is corrupted or lost.

14   This provision does not mean that a third party like Rimini Street is authorized to make copies of

15   the J.D. Edwards software application and documentation to, among other things, access the

16   software's source code to carry out development and testing of software updates, to make

17   modifications to the software, or to use the customer's software or support materials to support

18   other customers.

19        If you find that the copies of the J.D. Edwards software application and documentation

20   housed on Rimini Street's servers were used solely for the customer's archival needs and to

21   support the licensee's users, then that use is authorized by the J.D. Edwards software license

22   agreement and you should find in favor of defendant Rimini Street and against Oracle

23   International Corporation on Oracle International Corporation's claim for direct copyright

24   infringement as it relates to the J.D. Edwards copyrighted works.

25        If, on the other hand, you find that the copies of the J.D. Edwards software application

26   and documentation housed on Rimini Street's servers were used for purposes other than the

27   customer's archival needs or to support the licensee's users then that use is outside the scope of

28   the J.D. Edwards software license agreement and you should find in favor of Oracle International

33

1    Corporation and against defendant Rimini Street on Oracle International Corporation's claim for

2    direct copyright infringement as it relates to the J.D. Edwards copyrighted works.

3        <u>Siebel Software License Agreements</u>

4        As to the Siebel software license agreements you are informed that the court has ruled as

5    a matter of law that the Siebel software license agreements authorized a third party like Rimini

6    Street to make a reasonable number of copies of the Siebel software application and related

7    documentation <u>onto the third party's own computer systems</u> solely for the customer's archive or

8    emergency back-up purposes or disaster recovery and related testing. ~~As stated previously, an~~

9    ~~archival copy of the software and documentation is an unmodified copy of the original software~~

10    ~~and documentation for use in the event that production copy of the software – the copy used on a~~

11    ~~customer's systems – is corrupted or lost.~~ This provision does not mean that a third party like

12    Rimini Street is authorized to make copies of the Siebel software and documentation to, among

13    other things, access the software's source code to carry out modification, development and

14    testing of the software not related to archive, emergency back-up, or disaster recovery purposes,

15    or to use the customer's software or support materials to support other customers.

16        If you find that the copies of the Siebel software application and related documentation

17    housed on Rimini Street's servers were used solely for archive or emergency back-up purposes

18    or disaster recovery and related testing then that use is authorized by the Siebel software license

19    agreement and you should find in favor of defendant Rimini Street and against Oracle

20    International Corporation on Oracle International Corporation's claim for direct copyright

21    infringement as it relates to the Siebel copyrighted works.

22        If, on the other hand, you find that the copies of the Siebel software application and

23    related documentation housed on Rimini Street's servers were used for purposes other than

24    archive or emergency back-up purposes or disaster recovery and related testing then that use is

25    outside the scope of the Siebel software license agreement and you should find in favor of Oracle

26    International Corporation and against defendant Rimini Street on Oracle International

27    Corporation's claim for direct copyright infringement as it relates to the Siebel copyrighted

28    works.

1       PeopleSoft Software License Agreements

2       You have already been informed that the court has ruled as a matter of law the defendant

3 Rimini Street engaged in copyright infringement of certain of Oracle International Corporation's

4 PeopleSoft software applications. However, the court has not ruled on the issue of copyright

5 infringement as it relates to Oracle International Corporation's PeopleSoft documentation at

6 issue in this action.

7       As to the PeopleSoft software license agreements you are informed that the court rules as

8 a matter of law that the PeopleSoft software license agreements authorized a third party like

9 Rimini Street to make a reasonable number of copies of the PeopleSoft documentation solely for

10 the customer's internal use. This provision does not authorize a third party like Rimini Street to

11 copy, distribute, or use the PeopleSoft documentation to develop or test software updates for

12 other customers.

13       If you find that the copies of the PeopleSoft documentation were used solely for the

14 customer's internal use then that use is authorized by the PeopleSoft software license agreement

15 and you should find in favor of defendant Rimini Street and against Oracle International

16 Corporation on Oracle International Corporation's claim for direct copyright infringement as it

17 relates to the PeopleSoft documentation and support materials.

18       If, on the other hand, you find that the copies of the PeopleSoft documentation were used

19 for purposes other than solely for the customer's internal use then that use is outside the scope of

20 the PeopleSoft software license agreement and you should find in favor of Oracle International

21 Corporation and against defendant Rimini Street on Oracle International Corporation's claim for

22 direct copyright infringement as it relates to the PeopleSoft documentation and support materials.

23

24 **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

25       These modifications are necessary to accurately capture the terms of the licenses and the

26 interpretation set forth in the Court's February 2014 summary judgment ruling.  In particular, the

27 Court ruled that "having a copy of the software on Rimini's systems for archival purposes does

28 not violate [the J.D. Edwards] license."  Dkt. 474 at 22; *see also* PTX 5466 at 2; PTX 704,

1   Section 7(iii).   The Court also ruled that the Siebel license allowed Rimini to "install the

2   software for archival, emergency back-up or disaster recovery purposes," or, put another way,

3   allowed Rimini to "make a reasonable number of copies of the licensed Siebel software on

4   Rimini's systems for archival and back-up purposes."  Dkt. 474 at 24.  Given how important the

5   local hosting allegations are to this case, it is imperative that the license instruction specify that

6   the licenses not only permitted copying for certain purposes, but also permitted the copies to

7   reside on Rimini's systems.  Further, it is not necessary to instruct the jury on the definition of an

8   "archival" copy, as no such definition appears in the licenses themselves.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**P-15: LICENSE INTERPRETATION - PAROL EVIDENCE (W/ MODS)**

The license agreements between Oracle and its customers are complete contracts. The Court has explained the meaning of those agreements to you. You may not consider other evidence to add to or change the meaning of those agreements.

**RIMINI'S PROPOSED MODIFICATIONS:**

~~The license agreements between Oracle and its customers are complete contracts. The Court has explained the meaning of those agreements to you. You may not consider other evidence to add to or change the meaning of those agreements.~~

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

This instruction is unnecessary given that Rimini's industry custom and practice evidence was excluded at trial. That evidence was Oracle's entire basis for proposing this instruction.

37

**P-16: COPYRIGHT - CONTRIBUTORY INFRINGEMENT (W/ MODS)**

A defendant may be liable for copyright infringement engaged in by another. Oracle International Corporation contends that Seth Ravin is liable for Rimini Street's copyright infringement under the doctrine of "contributory infringement." Therefore, you must also consider whether Seth Ravin is liable for contributory infringement.

To prevail on contributory infringement against Seth Ravin, each of the following elements must be proved by a preponderance of the evidence:

1.  Seth Ravin knew or had reason to know of Rimini Street's infringing activity; and

2.  Seth Ravin intentionally induced or materially contributed to that infringing activity.

If you find that these two elements have been proved by a preponderance of the evidence, you should find for Oracle International Corporation and against Seth Ravin on the copyright infringement claim as to contributory infringement. If, on the other hand, if either of these elements have failed to have been proved, you should find for Seth Ravin and against Oracle International Corporation on the copyright infringement claim as to contributory infringement.

**RIMINI'S PROPOSED MODIFICATIONS:**

A defendant may be liable for copyright infringement engaged in by another. Oracle International Corporation contends that Mr. Ravin is liable for Rimini Street's copyright infringement under the doctrine of "contributory infringement." Therefore, if you find a particular method used by Rimini Street infringed Oracle International Corporation's copyright, you must also consider whether Seth Ravin is liable for contributory infringement.

To prevail on contributory infringement against Seth Ravin, each of the following elements must be proved by a preponderance of the evidence:

1.  Seth Ravin knew or had reason to know of Rimini Street's infringing activity; and

2.  Seth Ravin intentionally induced or materially contributed to that infringing activity.

If you find that these two elements have been proved by a preponderance of the evidence,

38

1   you should find for Oracle International Corporation and against Seth Ravin on the copyright

2   infringement claim as to contributory infringement. If, on the other hand, if either of these

3   elements have failed to have been proved, you should find for Seth Ravin and against Oracle

4   International Corporation on the copyright infringement claim as to contributory infringement.

5

6   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

7          The jury may not consider whether Mr. Ravin is liable for indirect infringement unless it

8   finds some directly infringing conduct by Rimini.  *See Elliot v. Robertson*, 357 F.3d 1072, 1076

9   (9th Cir. 2004).  Accordingly, consistent with Ninth Circuit Model Instruction 17.21, the jury

10  should be instructed that a finding of infringement by Rimini Street is necessary before liability

11  for indirect infringement may be analyzed.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **P-17: COPYRIGHT - VICARIOUS INFRINGEMENT (W/ MODS)**

2        In addition to contributory liability, a defendant may also be liable for copyright
3    infringement committed by another defendant based on "vicarious liability."

4        To prevail on vicarious infringement against Seth Ravin, each of the following elements
5    must be proved by a preponderance of the evidence:

6        1.    Seth Ravin profited directly from Rimini Street's infringing activity;

7        2.    Seth Ravin had the right and ability to supervise or control Rimini Street's
8    infringing activity; and

9        3.    Seth Ravin failed to exercise that right and ability.

10       If you find that each of these elements has been proved by a preponderance of the
11   evidence, you should find for Oracle International Corporation and against Seth Ravin on the
12   copyright infringement claim as to vicarious infringement. On the other hand, if any of these
13   elements have not been proved, you should find for Seth Ravin and against Oracle International
14   Corporation on the copyright infringement claim as to vicarious infringement.

15

16   **RIMINI'S PROPOSED MODIFICATIONS:**

17       In addition to contributory liability, a defendant may also be liable for copyright
18   infringement committed by another defendant based on "vicarious liability."  Therefore, if you
19   find that a particular method used by Rimini Street infringed Oracle International Corporation's
20   copyright, you must also consider whether Mr. Ravin is liable for vicarious infringement.

21       To prevail on vicarious infringement against Seth Ravin, each of the following elements
22   must be proved by a preponderance of the evidence:

23       1.    Seth Ravin profited directly from Rimini Street's infringing activity;

24       2.    Seth Ravin had the right and ability to supervise or control Rimini Street's
25   infringing activity; and

26       3.    Seth Ravin failed to exercise that right and ability.

27       If you find that each of these elements has been proved by a preponderance of the
28   evidence, you should find for Oracle International Corporation and against Seth Ravin on the

1    copyright infringement claim as to vicarious infringement. On the other hand, if any of these

2    elements have not been proved, you should find for Seth Ravin and against Oracle International

3    Corporation on the copyright infringement claim as to vicarious infringement.

4

5    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

6          The jury may not consider whether Mr. Ravin is liable for indirect infringement unless it

7    finds some directly infringing conduct by Rimini.  *See Elliot v. Robertson*, 357 F.3d 1072, 1076

8    (9th Cir. 2004).  Accordingly, consistent with Ninth Circuit Model Instruction 17.21, the jury

9    should be instructed that a finding of infringement by Rimini Street is necessary before liability

10   for indirect infringement may be analyzed.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1

2   **COPYRIGHT DAMAGES - INTRODUCTION (COURT INSTRUCTION)**

3   You must determine Oracle International Corporation's damages resulting from

4   defendant Rimini Street's copyright infringement. Oracle International Corporation is entitled to

5   recover either the actual damages suffered as a result of the methods by Rimini Street that you

6   found to be infringing or statutory damages established by the Copyright Act. You will be asked

7   to determine both Oracle International Corporation's actual damages as well as statutory

8   damages under the Copyright Act. Oracle International Corporation must prove damages by a

9   preponderance of the evidence.

10   As the measure of its actual damages, Oracle International Corporation, as the plaintiff,

11   has the right to seek to recover either the fair market value of a license for the rights infringed or

12   its lost profits, not both. You must make the determination of which type of damages to award to

13   Oracle International Corporation.

14   If you award Oracle International Corporation actual damages based on its lost profits,

15   then Oracle International Corporation is also entitled to recover any profits that defendant Rimini

16   Street made that is attributable to that infringement.

17   If you award Oracle International Corporation actual damages based on the fair market

18   value of a license for the rights infringed, that award takes into account defendant Rimini Street's

19   profits attributable to its infringement and Oracle International Corporation is not entitled to any

20   additional award.

21   Regardless of which type of actual damages you choose to award Oracle International

22   Corporation, you must also make a determination of the amount of statutory damages Oracle

23   International Corporation is entitled to under the Copyright Act. When you consider Oracle

24   International Corporation's statutory damages you must not consider the amount awarded as

25   actual damages. They are separate and distinct damages and do not relate to each other.  All of

26   these damages will now be explained to you.

27

28

**RIMINI'S PROPOSED MODIFICATIONS:**

You must determine Oracle International Corporation's damages resulting from defendant Rimini Street's copyright infringement.  Oracle International Corporation is entitled to recover either the actual damages suffered as a result of the methods by Rimini Street that you found to be infringing infringement or statutory damages established by the Copyright Act. You will be asked to determine both Oracle International Corporation's actual damages as well as statutory damages under the Copyright Act. Oracle International Corporation must prove damages by a preponderance of the evidence.

As the measure of its actual damages, Oracle International Corporation, as the plaintiff, has the right to seek to recover either the fair market value of a license use for the rights infringed or its lost profits, not both. You must make the determination of which type of damages to award to Oracle International Corporation if you determine those damages are proved by a preponderance of the evidence.

If you award Oracle International Corporation actual damages based on its lost profits, then Oracle International Corporation is also entitled to recover any non-duplicative profits that defendant Rimini Street made that is attributable to that infringement.

If you award Oracle International Corporation actual damages based on the fair market value of a license use for the rights infringed, that award takes into account defendant Rimini Street's profits attributable to its infringement and Oracle International Corporation is not entitled to any additional award.

Regardless of which type of actual damages you choose to award Oracle International Corporation, and even if you determine that no measure of actual damages has been proven, you must also make a determination of the amount of statutory damages Oracle International Corporation is entitled to under the Copyright Act. When you consider Oracle International Corporation's statutory damages you must not consider the amount awarded as actual damages. They are separate and distinct damages and do not relate to each other.  All of these damages will now be explained to you.

1    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

2        The first modification makes clear that the jury must find the actual methods by Rimini

3    Street to have infringed.

4        The second and fifth modifications change "license" to "use" because, as is explained in

5    later instructions, hypothetical license is just one way to prove the actual fair market value of

6    use. *Polar Bear Productions, Inc. v. Timex Corporation*, 384 F.3d 700, 708 (9th Cir. 2004)

7    ("Actual damages are usually determined by the loss in the fair market value of the copyright,

8    measure by the profits lost due to the infringement or by the value of use of the use copyrighted

9    work to the infringer") (quotation omitted); *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th

10   Cir. 2014) ("hypothetical-license damages also constitute an acceptable form of 'actual damages'

11   recoverable under Section 504(b)"); *Dash v. Mayweather*, 731 F.3d 303, 312 (4th Cir. 2013)

12   ("Injury to a copyrighted work's market value can be measured in a variety of ways"); *Sid &*

13   *Marty Krofft Tel. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 n.20 (9th Cir. 1977),

14   *superseded on other grounds by* 17 U.S.C. § 504(b) ("An author might license the use of his

15   copyright either for a lump sum based on the reasonable value of the work or for a royalty

16   derived from the licensee's profits … This same distinction is recognized in patent cases").

17       The third modification ("if you determine those damages are proved by a preponderance

18   of the evidence") makes clear that the jury need only award damages if they are proven.  As

19   written, this instruction suggests that the jury *must* award some actual damages, even if there is

20   insufficient evidence to support that finding.

21       The fourth modification ("non-duplicative") is added to ensure that the jury does not

22   award damages *twice* for lost profits and infringer's profits.  *See* 17 U.S.C. § 504(b) ("the

23   copyright owner is entitled to recover the actual damages suffered by him or her as a result of the

24   infringement, and any profits of the infringer that are attributable to the infringement and are ***not***

25   ***taken into account in computing the actual damages***") (emphasis added).

26       The sixth modification informs the jury that statutory damages must be award if actual

27   damages have not been proven by a preponderance of the evidence.  *See* Ninth Cir. Model Jury

28   Instr. No. 17.22 cmt. ("When injury is shown, but neither profits nor damages can be proved,

1    statutory damages are mandatory"); *id.* at Instruction 17.25 cmt. ("When an injury can be shown,

2    but neither profits nor damages can be proven, statutory damages are mandatory"); *Russel v.*

3    *Price*, 612 F.2d 1123, 1129-1130 (9th Cir. 1979) ("when injury is proved but neither the

4    infringer's profits nor the copyright holder's actual damages can be proved, statutory damages

5    are mandatory").  As written the instruction implies that statutory damages are only available if

6    the jury concludes that actual damages have been proven, and therefore implies that the jury

7    must list an actual damages award, even if it believes that no actual damages award is supported

8    by a preponderance of the evidence.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1

**COPYRIGHT INFRINGEMENT - ACTUAL DAMAGES (MODIFIED ORACLE V. SAP INSTRUCTION)**

2

3
While there is no precise formula for determining actual damages, your award must be based on evidence, not on speculation, guesswork, or conjecture.

4

5
Determining Oracle International Corporation's actual damages may involve some uncertainty, and Oracle is not required to establish its actual damages with precision.

6

7
**RIMINI'S PROPOSED MODIFICATIONS:**

8

9
While there is no precise formula for determining actual damages, your award must be based on evidence, not on speculation, guesswork, or conjecture.

10

11
Determining the amount of Oracle International Corporation's actual damages may involve some uncertainty, and Oracle is not required to establish the amount of its actual damages with precision.

12

13

14
**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

15

16
These two additions of "the amount of" make clear that the inherent uncertainty in computing damages relates only to the *amount* of damages, and not to the fact of daamges with respect to any specific customer.

17

18

19

20

21

22

23

24

25

26

27

28

1   **P-18: COPYRIGHT DAMAGES - CAUSATION**

2          For Oracle International Corporation to recover actual damages, it must prove that the

3   methods by Rimini Street that you found to be infringing caused damages. Infringement caused

4   damages if the infringement was a "substantial factor" in causing the damages.

5          A substantial factor is a factor that a reasonable person would consider to have

6   contributed.  It must be more than a remote or trivial factor. It does not have to be the only cause

7   of harm.

8          Conduct is not a substantial factor in causing harm if the same harm would have occurred

9   without that conduct.

10

11  **RIMINI'S PROPOSED MODIFICATIONS:**

12         ~~For Oracle International Corporation to recover actual damages, it must prove that the~~

13  ~~infringement caused damages.  Infringement caused damages if the infringement was a~~

14  ~~"substantial factor" in causing the damages.~~

15         ~~A substantial factor is a factor that a reasonable person would consider to have~~

16  ~~contributed.  It must be more than a remote or trivial factor. It does not have to be the only cause~~

17  ~~of harm.~~

18         ~~Conduct is not a substantial factor in causing harm if the same harm would have occurred~~

19  ~~without that conduct.~~

20

21  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

22         This instruction is unnecessary and will confuse the jury.  The causation standards are

23  listed in the particular instructions for measuring damages, and this general instruction could be

24  viewed as superseding the more helpful and more specific instructions.

25

26

27

28

**COPYRIGHT DAMAGES - LOST PROFITS (COURT INSTRUCTION)**

If you decide that the best measure of Oracle International Corporation's actual damages is lost profits, your must determine what profits Oracle International Corporation proved that it would have made without the infringement by Rimini Street. Lost profits are the revenue Oracle International Corporation would have made without the infringement, less any additional expenses Oracle International Corporation would have incurred in making those profits.

To recover lost profits, Oracle International Corporation must prove by a preponderance of the evidence that:

1. Rimini Street caused such damages; and

2. The amount. You may not guess the amount or rely on speculative evidence to calculate lost profits.

**RIMINI'S PROPOSED MODIFICATIONS:**

If you decide that the best measure of Oracle International Corporation's actual damages is lost profits, your must determine what profits Oracle International Corporation proved that it would have made without the infringement by Rimini Street. Lost profits are the revenue Oracle International Corporation would have made without the infringement, less any additional expenses Oracle International Corporation would have incurred in making those profits.

To recover lost profits, Oracle International Corporation must prove by a preponderance of the evidence that:

1. Rimini Street caused such damages (see instruction ___, below); and

2. The amount. You may not guess the amount or rely on speculative evidence to calculate lost profits.

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

The first modification is correction of a typographical error ("your" to "you").

48

1    The second modification will help the jury by linking this instruction to the following

2    instruction so that the jury knows that there is further elaboration on the issue of causation.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1

**D-20: COPYRIGHT DAMAGES - ORACLE'S LOST PROFITS - CAUSATION (W/ MODS)**

2

      Oracle International Corporation must prove a causal relationship between Oracle's

3

losses and Rimini Street's infringement. Oracle International Corporation must demonstrate that

4

but for Rimini Street's infringement, Oracle International Corporation would not have lost the

5

client for which Oracle International Corporation seeks damages. That means that if a client left

6

Oracle International Corporation for reasons unrelated to Rimini Street's infringement, there is

7

no causal relationship and therefore no lost profit damages as to that client.

8

      Oracle International Corporation must prove causation by a preponderance of the

9

evidence for every single client for which it is claiming copyright damages.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **COPYRIGHT DAMAGES - DEFENDANTS' PROFITS (COURT INSTRUCTION)**

2    If you determine that lost profits are the best measure of Oracle International

3    Corporation's actual damages, then you must also determine the amount of profits made by

4    defendant Rimini Street that are directly attributable to the infringement and were not taken into

5    account in computing lost profits.

6    You may make an award of defendant Rimini Street's profits only if you find that Oracle

7    International Corporation showed a causal relationship between the infringement and the profits

8    generated directly or indirectly from the infringement.

9    Rimini Street's profits are determined by subtracting all of Rimini Street's expenses from

10   Rimini Street's gross revenue.

11   For purposes of determining Rimini Street's profits, gross revenue is all of Rimini

12   Street's receipts from the use and sale of a product or service associated with the infringement.

13   Oracle International Corporation has the burden of proving Rimini Street's gross revenue by

14   infringement by a preponderance of the evidence.

15   Rimini Street's expenses are all operating costs, overhead costs, and production costs

16   incurred in producing Rimini Street's gross revenue. Rimini Street bears the burden of proving

17   its expenses by a preponderance of the evidence.

18   Unless you find that a portion of the profit from the use of the copyrighted works is

19   attributable to factors other than use of the copyrighted works, all of the profit is to be attributed

20   to the infringement. Rimini Street has the burden of proving the portion of the profit, if any,

21   attributable to factors other than infringing the copyrighted works.

22

23   **RIMINI'S PROPOSED MODIFICATIONS:**

24   If you determine that lost profits are the best measure of Oracle International

25   Corporation's actual damages, then you must also determine the amount of profits, if any, made

26   by defendant Rimini Street that are directly attributable to the infringement and were not taken

27   into account in computing lost profits.

28   You may make an award of defendant Rimini Street's profits only if you find that Oracle

1    International Corporation showed a causal relationship between the infringement and the profits

2    generated directly or indirectly from the infringement.

3          Rimini Street's profits are determined by subtracting all of Rimini Street's expenses from

4    Rimini Street's gross revenue. If Rimini Street's expenses exceed its gross revenue, then there

5    are no profits for you to award Oracle International Corporation.

6          For purposes of determining Rimini Street's profits, gross revenue is all of Rimini

7    Street's receipts from the use and sale of a product or service associated with the infringement.

8    Oracle International Corporation has the burden of proving Rimini Street's gross revenue by

9    infringement by a preponderance of the evidence.

10         Rimini Street's expenses are all operating costs, overhead costs, and production costs

11    incurred in producing Rimini Street's gross revenue. Rimini Street bears the burden of proving

12    its expenses by a preponderance of the evidence.

13         Unless If you find that a portion of the profit from the use of the copyrighted works is

14    attributable to factors other than use of the copyrighted works, that portion should not be

15    included in the amount of lost profits.  all of the profit is to be attributed to the infringement.

16    Rimini Street has the burden of proving the portion of the profit, if any, attributable to factors

17    other than infringing the copyrighted works.

18

19    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

20         The first ("if any") and second ("If Rimini Street's expenses exceed its gross revenue,

21    then there are no profits for you to award Oracle International Corporation") modifications make

22    clear that there are not necessarily infringer's profits to be awarded if Rimini Street's expenses

23    exceed its revenue.  As written, the instruction suggests that the jury must find some amount of

24    infringer's profits.   These revisions are especially appropriate here because Rimini Street's

25    expenses *do* exceed its revenue, and Oracle did not seriously challenge that fact at trial.

26         The third modification changes the structure of the sentence from "unless you find" to "if

27    you find" to make clear that there is no presumption that all of the profits are attributable to

28    infringement.   As the instruction correctly states in the second paragraph, Oracle must first

1   establish a causal relationship between the profits and infringement.   And the final sentence

2   makes clear that it is Rimini's burden to apportion those profits.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **COPYRIGHT DAMAGES - FAIR MARKET VALUE LICENSE (COURT**
2  **INSTRUCTION)**

3      If you determine that the best measure of Oracle International Corporation's actual

4  damages is a fair market value license, you must determine the amount of a fair market value

5  license between Oracle International Corporation and Rimini Street. The fair market value

6  license is the amount a willing buyer would have been reasonably required to pay a willing seller

7  at the time of the infringement for the actual use made by Rimini Street of Oracle International

8  Corporation's copyrighted works.

9      In determining a fair market value license, you must consider the entire scope of the

10  infringement. Further, you should consider all of the information known to and all of the

11  expectations of the parties on the dates of the hypothetical negotiations, which are the dates on

12  which infringement began.

13      You must determine what would have been the result of this negotiation in order to

14  establish the fair market value. The fair market value is an objective measure of Oracle

15  International Corporation's damages that is meant to approximate the fair market value of a

16  license for all of the copyrights Rimini Street infringed, calculated at the time the infringement,

17  which is the period from 2006 through 2011.

18      The value of a hypothetical license is not necessarily the amount that Rimini Street would

19  have agreed to pay, or that Oracle International Corporation would have actually agreed to

20  accept.

21      You may consider evidence of events and facts that happened after the date of the

22  hypothetical negotiation only to the extent that it provides insight into the expectations of the

23  parties at the time the infringement first began, or insight into the amount a willing buyer would

24  have been reasonably required to pay a willing seller at the time of the infringement

25  **RIMINI'S PROPOSED MODIFICATIONS:**

26

27      If you determine that the best measure of Oracle International Corporation's actual

28  damages is a fair market value ~~license~~of use, you must determine the amount of ~~a~~ the fair market

1    value of use.

2          One way of determining the fair market value of use is to calculate a hypothetical license

3    between Oracle International Corporation and Rimini Street. ~~The fair market value license of~~

4    ~~use~~A hypothetical license is the amount a willing buyer would have been reasonably required to

5    pay a willing seller at the time of the infringement for the actual use made by Rimini Street of

6    Oracle International Corporation's copyrighted works.

7          In determining a ~~fair market value~~hypothetical license, you must consider the entire

8    scope of the infringement. Further, you should consider all of the information known to and all

9    of the expectations of the parties on the dates of the hypothetical negotiations, which are the

10   dates on which infringement began.

11         You must determine what would have been the result of this negotiation in order to

12   establish the fair market value. The ~~fair market value of use~~hypothetical license is an objective

13   measure of Oracle International Corporation's damages that is meant to approximate the fair

14   market value of a ~~license~~use for all of the copyrights Rimini Street infringed, calculated at the

15   time the infringement, which is the period from 2006 through 2011.

16         The value of a hypothetical license is not necessarily the amount that Rimini Street would

17   have agreed to pay, or that Oracle International Corporation would have actually agreed to

18   accept.

19         You may consider evidence of events and facts that happened after the date of the

20   hypothetical negotiation only to the extent that it provides insight into the expectations of the

21   parties at the time the infringement first began, or insight into the amount a willing buyer would

22   have been reasonably required to pay a willing seller at the time of the infringement.

23

24   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

25         As written, this instruction implied that the only way to measure fair market value of use

26   is by a hypothetical negotiation, but no court has held that.  These modifications make clear,

27   consistent with the above Instruction (Copyright Infringement - Actual Damages (modified

28   Oracle v. SAP instruction)), that while there is no precise formula for determining actual

1    damages, hypothetical license is one recognized method of measuring the fair market value of

2    use.  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014) ("hypothetical-license

3    damages also constitute an acceptable form of 'actual damages' recoverable under Section

4    504(b)"); *Dash v. Mayweather*, 731 F.3d 303, 312 (4th Cir. 2013) ("Injury to a copyrighted

5    work's market value can be measured in a variety of ways").  Indeed, both sides presented a

6    hypothetical license negotiation to measure the Oracle Database fair market value of use.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **D-22: COPYRIGHT DAMAGES - STATUTORY DAMAGES (W/ MODS)**

2          Regardless of the amount of actual damages awarded to Oracle International Corporation

3    for defendant Rimini Street's copyright infringement and regardless of whether you chose to

4    award Oracle International Corporation lost profits or a fair market value license, you must also

5    determine the amount of statutory damages as established by Congress in the Copyright Act for

6    each work infringed. As stated previously, you must not consider the amount awarded to Oracle

7    International Corporation for actual damages in determining statutory damages.

8          The purpose of statutory damages is to penalize the infringer and deter future violations

9    of copyright law.

10         The amount you may award as statutory damages is not less than $750, and not more than

11   $30,000 for each work that you conclude was infringed.

12         However, if you find that the infringement was innocent, you may award as little as $200

13   for each work innocently infringed.

14         Similarly, if you find that infringement was willful, you may award as much as $150,000

15   for each work willfully infringed.

16         I will now explain to you what constitutes innocent infringement and what constitutes

17   willful infringement.

18

19   **RIMINI'S PROPOSED MODIFICATIONS:**

20         Regardless of the amount of actual damages awarded to Oracle International Corporation

21   for defendant Rimini Street's copyright infringement and regardless of whether you chose to

22   award Oracle International Corporation lost profits or a fair market value ~~license~~of use, and even

23   if you decide that neither measure of damages has been proven, you must also determine the

24   amount of statutory damages as established by Congress in the Copyright Act for each work

25   infringed. There are 100 registrations listed in your juror notebook, and you should select which

26   of these are works, and which of those works were infringed.  For each work that you determine

27   Oracle proved by a preponderance of the evidence that Rimini Street and/or Seth Ravin

28   infringed, you must calculate a statutory damages award.

1    As stated previously, you must not consider the amount awarded to Oracle International

2    Corporation for actual damages in determining statutory damages.   The purpose of statutory

3    damages is to penalize the infringer and deter future violations of copyright law.

4    The amount you may award as statutory damages is not less than $750, and not more than

5    $30,000 for each work that you conclude was infringed.

6    However, if you find that the infringement was innocent, you may award as little as $200

7    for each work innocently infringed.

8    Similarly, if you find that infringement was willful, you may award as much as $150,000

9    for each work willfully infringed.

10    I will now explain to you what constitutes innocent infringement and what constitutes

11    willful infringement.

12

13    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

14    The first revision informs the jury that statutory damages must be awarded if actual

15    damages have not been proven by a preponderance of the evidence.   *See* Ninth Cir. Model Jury

16    Instr. No. 17.22 cmt. ("When injury is shown, but neither profits nor damages can be proved,

17    statutory damages are mandatory"); *id.* at Instruction 17.25 cmt. ("When an injury can be shown,

18    but neither profits nor damages can be proven, statutory damages are mandatory"); *Russel v.*

19    *Price*, 612 F.2d 1123, 1129-1130 (9th Cir. 1979) ("when injury is proved but neither the

20    infringer's profits nor the copyright holder's actual damages can be proved, statutory damages

21    are mandatory").   As written the instruction implies that statutory damages are available only if

22    the jury concludes that actual damages have been proven, and therefore implies that the jury

23    must list an actual damages award, even if it believes that no actual damages award is supported

24    by a preponderance of the evidence.

25    The second revision advises the jury where it can find the list of works at issue in this

26    case.   The parties jointly submitted a jury binder to the Court on October 2, 2015.   That binder

27    includes a list of the 100 registrations, which the parties copied from the pretrial order.

28

1    The sentence beginning with "As stated previously" was moved down to the next

2    paragraph discussing the purpose of statutory damages because it is discussing a new subject (the

3    amount of damages).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**J-32: COPYRIGHT - DAMAGES - INNOCENT INFRINGEMENT**

An infringement is considered innocent when the Defendant has proved both of the following elements by a preponderance of the evidence:

1.     the Defendant was not aware that its acts constituted infringement of the copyright; and

2.     the Defendant had no reason to believe that its acts constituted an infringement of the copyright.

1    **J-33: COPYRIGHT - DAMAGES - WILLFUL INFRINGEMENT**

2          An infringement is considered willful when the plaintiff has proved both of the following

3    elements by a preponderance of the evidence:

4          1.      the Defendant engaged in acts that infringed the copyright; and

5          2.      the Defendant knew that those acts infringed the copyright.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **D-23: INDUCING BREACH OF CONTRACT (W/ MODS)**

2    In addition to its other claims, Oracle America contends that Rimini Street and Seth

3    Ravin induced customers to breach their contracts with Oracle America. Specifically, Oracle

4    America contends that the terms of use on its website and its software license agreements are

5    contracts with its customers. Oracle America contends that Rimini Street and Seth Ravin

6    intentionally caused Oracle America customers to breach their contracts with Oracle America.

7    To prevail on this claim in the circumstances of this case, Oracle America must prove

8    each of the following for each such contract by a preponderance of the evidence:

9    1.    A valid contract existed between Oracle America and a customer;

10    2.    Rimini Street and/or Seth Ravin knew the contract existed;

11    3.    Rimini Street and/or Seth Ravin intended to cause Oracle's America's customer

12    to breach its contract with Oracle America;

13    4.    Rimini Street and/or Seth Ravin engaged in conduct that was wanton, malicious,

14    and unjustifiable;

15    5.    Rimini Street and/or Seth Ravin's conduct caused the customer to breach the

16    contract;

17    6.    Oracle America was directly harmed; and

18    7.    Rimini Street and/or Seth Ravin's improper conduct was a substantial factor in

19    causing Oracle America harm.

20    If you find that Oracle America proved each of these elements as to Rimini Street and/or

21    Seth Ravin, you should find for Oracle America and against Rimini Street and/or Seth Ravin on

22    the claim for inducing breach of contract.  If, on the other hand, Oracle America has failed to

23    prove any of these elements as to Rimini Street and/or Seth Ravin, you should find for Rimini

24    Street and/or Seth Ravin and against Oracle America on the claim for inducing breach of

25    contract.

26    **RIMINI'S PROPOSED MODIFICATIONS:**

27    In addition to its other claims, Oracle America contends that Rimini Street and Seth

28    Ravin induced customers to breach their contracts with Oracle America. Specifically, Oracle

America contends that the terms of use on its website ~~and its software license agreements~~ are contracts with its customers.  Oracle America does not claim that Rimini Street or Seth Ravin caused customers to breach their license agreements with Oracle America.  Oracle America contends that Rimini Street and Seth Ravin intentionally caused Oracle America customers to breach their contracts with Oracle America.

To prevail on this claim in the circumstances of this case, Oracle America must prove by a preponderance of the evidence each of the following for each such contract with every single client for which it is seeking to impose liability ~~by a preponderance of the evidence~~:

1.      A valid contract existed between Oracle America and a customer;

2.      Rimini Street and/or Seth Ravin knew the contract existed;

3.      Rimini Street and/or Seth Ravin intended to cause Oracle's America's customer to breach its contract with Oracle America;

4.      Rimini Street and/or Seth Ravin engaged in conduct that was wanton, malicious, and unjustifiable;

5.      Rimini Street and/or Seth Ravin's conduct caused the customer to breach the contract;

6.      Oracle America was directly harmed; and

7.      Rimini Street and/or Seth Ravin's improper conduct was a substantial factor in causing Oracle America harm.

The "unjustifiable" conduct required for this claim cannot include breach of contract or copyright infringement.  The unjustifiable conduct that Oracle America alleges is related to alleged misrepresentations made by Rimini Street.  To satisfy this element, a misrepresentation must be communicated to the customer, it must be a false representation at the time it was made, it must be made with knowledge or belief that it was false, Rimini must intended to induce the third party to rely on that statement, and the third party must have suffered damage resulting from the reliance.

If you find that Oracle America proved each of these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle America and against Rimini Street and/or Seth Ravin on

1    the claim for inducing breach of contract.  If, on the other hand, Oracle America has failed to

2    prove any of these elements as to Rimini Street and/or Seth Ravin, you should find for Rimini

3    Street and/or Seth Ravin and against Oracle America on the claim for inducing breach of

4    contract.

5    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

6         It is important that the instructions state clearly the requirement that Oracle prove

7    inducement of breach with actual, individual customer contracts.  And the instructions should

8    clarify that point the same way in the copyright lost profits damages, induced breach, and

9    intentional interference claims, lest the jury be confused that this principle applies to some

10   claims but not others, when in fact it is common across all three of these claims.  *See, e.g.,*

11   *Moore v. Apple Inc.*, 2015 WL 4638293, at *11 (N.D. Cal. Aug. 4, 2015) ("the Court would need

12   to examine … whether Defendant's alleged wrongful conduct had any causal relationship" to "an

13   individual's contract"); *Gibson v. Credit Suisse AG*, 2013 WL 5375597, at *6 (D. Idaho Sept. 24,

14   2013) (tortious interference with contract "require[s] a showing of causation as to the underlying

15   fact of injury" on an individual basis); *Witt v. Chesapeake Exploration, L.L.C.*, 276 F.R.D. 458,

16   469 (E.D. Tex. 2011) (defendant has "right to examine the circumstances surrounding the

17   negotiation, execution, and delivery of each [contract] as well as the reasons that" each contract

18   was allegedly breached); *Midwest Motorsports P'ship v. Hardcore Racing Engines, Inc.*, 735

19   N.W.2d 202 (Iowa Ct. App. 2007) ("We are not convinced [plaintiff] established as a matter of

20   law that it had contracts with third-parties").  Rimini's proposed paragraph is consistent with this

21   established legal principle and with the language in the Court's proposed D-20.

22        Rimini proposes defining an unjustifiable misrepresentation because that is a necessary

23   predicate to finding liability.  *See Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 200 (1979).

24   The definition offered by Rimini is verbatim from the Nevada Supreme Court, except to modify

25   tense and make it applicable to the parties in this case.  *See Collins v. Burns*, 103 Nev. 394, 397

26   (1987) ("The elements of intentional misrepresentation are a false representation made with

27   knowledge or belief that it is false or without a sufficient basis of information, intent to induce

28   reliance, and damage resulting from the reliance").  Indeed, Oracle recognized that actual

1  reliance is a necessary predicate of its theory. *See* Dkt. 766 (P-24) (proposed instruction that

2  fraud must "cause reliance").

3       In addition, Oracle's position at trial is that it does not claim its customers breached their

4  software license agreements, and it proposed a modification of this instruction to that affect.

5  Dkt. 852 (Oracle modified instructions) (proposing modified P-24B that states: "Specifically,

6  Oracle contends that the terms of use on its website are contracts with its customers"); Dkt. 843

7  at 11 (Oracle JMOL Opp.) ("Oracle's inducing breach of contract claim concerns Oracle's terms

8  of use, not software licenses").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D-24: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (W/ MODS)**

Oracle America and Oracle International Corporation seeks to recover damages based upon a claim of intentional interference with prospective economic advantage.

In order for you to find for Oracle America and/or Oracle International Corporation, you must find by a preponderance of the evidence that:

1.     Oracle America and/or Oracle International Corporation had an expectancy in a prospective contractual relationship with the customer;

2.     Rimini Street and/or Seth Ravin knew of the existence of the relationship;

3.     Rimini Street and/or Seth Ravin engaged in unlawful and improper conduct;

4.     By engaging in this conduct, Rimini Street and/or Seth Ravin intended to disrupt the relationship;

5.     Rimini Street and/or Seth Ravin's conduct was not privileged or justified;

6.     The relationship was disrupted;

7.     Oracle America and/or Oracle International Corporation was harmed; and

8.     Rimini Street and/or Seth Ravin's unlawful and improper conduct was a substantial factor in causing Oracle America and/or Oracle International Corporation harm.

"Unlawful or improper means" does not include breach of contract or copyright infringement.  The only unlawful or improper means that Oracle America and Oracle International Corporation claim are related to alleged misrepresentations made by Rimini Street. You must decide whether Oracle America and/or Oracle International Corporation has established any actionable misrepresentations and, if so, whether it is more likely than not that those misrepresentations were the specific cause of harm.

If you find that Oracle America and/or Oracle International Corporation proved each of these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle America and/or Oracle International Corporation and against Rimini Street and/or Seth Ravin on the claim for intentional interference with prospective economic advantage. If, on the other hand, Oracle America and/or Oracle International Corporation has failed to prove any of these elements as to

66

1    Rimini Street and/or Seth Ravin, you should find for Rimini Street and/or Seth Ravin and against

2    Oracle America and/or Oracle International Corporation on the claim for intentional interference

3    with prospective economic advantage.

4    **RIMINI'S PROPOSED MODIFICATIONS:**

5          Oracle America and Oracle International Corporation seeks to recover damages based

6    upon a claim of intentional interference with prospective economic advantage.

7          In order for you to find for Oracle America and/or Oracle International Corporation, you

8    must find by a preponderance of the evidence for every single prospective relationship for which

9    Oracle is seeking to impose liability that:

10         1.    Oracle America and/or Oracle International Corporation had an expectancy in a

11   sufficiently definite, specific prospective contractual relationship with the customer;

12         2.    Rimini Street and/or Seth Ravin knew of the existence of the relationship;

13         3.    Rimini Street and/or Seth Ravin engaged in unlawful and improper conduct;

14         4.    By engaging in this conduct, Rimini Street and/or Seth Ravin intended to disrupt

15   the relationship;

16         5.    Rimini Street and/or Seth Ravin's conduct was not privileged or justified;

17         6.    The relationship was disrupted as a result of such conduct;

18         7.    Oracle America and/or Oracle International Corporation was harmed; and

19         8.    Rimini Street and/or Seth Ravin's unlawful and improper conduct was a

20   substantial factor in causing Oracle America and/or Oracle International Corporation harm.

21         "Unlawful or and improper meansmisconduct" does not include breach of contract or

22   copyright infringement.  The only unlawful or and improper means conduct that Oracle America

23   and Oracle International Corporation claims is are related to alleged misrepresentations made by

24   Rimini Street. To satisfy this element, a misrepresentation must be communicated to the

25   customer, it must be a false representation at the time it was made, it must be made with

26   knowledge or belief that it was false, Rimini must intended to induce the third party to rely on

27   that statement, and the third party must have suffered damage resulting from the reliance. You

28   must decide whether Oracle America and/or Oracle International Corporation has established

1   ~~any actionable misrepresentations and, if so, whether it is more likely than not that those~~
2   ~~misrepresentations were the specific cause of harm.~~

3        If you find that Oracle America and/or Oracle International Corporation proved each of
4   these elements as to Rimini Street and/or Seth Ravin, you should find for Oracle America and/or
5   Oracle International Corporation and against Rimini Street and/or Seth Ravin on the claim for
6   intentional interference with prospective economic advantage. If, on the other hand, Oracle
7   America and/or Oracle International Corporation has failed to prove any of these elements as to
8   Rimini Street and/or Seth Ravin, you should find for Rimini Street and/or Seth Ravin and against
9   Oracle America and/or Oracle International Corporation on the claim for intentional interference
10   with prospective economic advantage.

11   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

12        It is important that the instructions state clearly the requirement that Oracle prove
13   interference with actual, individual customer relationships.  And the instructions should clarify
14   that point the same way in the copyright lost profits damages, induced breach, and intentional
15   interference claims, lest the jury be confused that this principle applies to some claims but not
16   others.  Rimini's proposed language is borrowed from the proposed instruction on lost profits
17   damages.

18        There can be no doubt that the tort of intentional interference with economic relationship
19   requires interference with a particular, individualized relationship.  "Interference with the
20   market" is not a cognizable theory of liability.  *Westside Ctr. Associates v. Safeway Stores 23,*
21   *Inc.*, 42 Cal. App. 4th 507, 528, 530 (1996) (rejecting "interference with the market" theory of
22   liability); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994) ("no
23   cause of action exists for tortious interference with a business's relationship to the community at
24   large").

25        The jury must therefore be told to find that particular wrongful acts caused actual
26   interference with actual, individual relationships.  *See*, *e.g.*, *Wichinsky v. Mosa*, 109 Nev. 84, 88
27   (1993) ("the evidence does not support the inference that [the third party's] reduced offer was
28   due to [defendant's alleged interference]" when evidence demonstrated "the reduced offer *may*

1  *have been* attributable to" other factors) (emphasis added); *M & R Inv. Co. v. Goldsberry*, 101

2  Nev. 620, 623 (1985) ("Goldsberry's failure to present any evidence that appellant had somehow

3  communicated the reason for his termination to others precludes a finding that appellant intended

4  to interfere with Goldsberry's prospective contractual relations."); *Youst v. Longo*, 43 Cal. 3d 64,

5  71 (1987) ("As a matter of law, a threshold causation requirement exists…. Although varying

6  language has been used to express this threshold requirement, the cases generally agree it must

7  be reasonably probable that the prospective economic advantage would have been realized but

8  for defendant's interference"); *Oregon Nerve Ctr., LLC v. Lawlor Winston, LLP*, 2013 WL

9  504324, at *11-12 (D. Or. Feb. 7, 2013) (must be "a causal nexus between the interference and

10  the damage to the relationship" but "Plaintiffs' theory would require a jury to speculate that

11  because the record shows that some people viewed the video or PowerPoint in 2011, and

12  plaintiffs' business revenue declined during that time, the two events must be related. Mere

13  speculation in the absence of evidence regarding causation is insufficient to survive summary

14  judgment"); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994) ("As a

15  general rule, an action for tortious interference with a business relationship requires a business

16  relationship evidenced by an actual and identifiable understanding or agreement which in all

17  probability would have been completed if the defendant had not interfered"); *Franklin v.*

18  *Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 394 (2004) ("[I]t is a false generalization to infer

19  that because [plaintiff] lost [third party's] business after [defendant's] e-mails, the loss of

20  business necessarily was an effect of the e-mails. Put another way, a trier of fact could not draw

21  a reasonable inference that [defendant's] e-mails to [third party] were a substantial factor in

22  bringing about [plaintiff's] lost business merely because the e-mails preceded the loss.");

23  *Douglas Med. Ctr., LLC v. Mercy Med. Ctr.*, 125 P.3d 1281, 1289-90 (Or. App. 2006) ("That

24  relationship between 'improper means' and the alleged interference is too attenuated to constitute

25  actionable tortious interference. As noted, a plaintiff claiming intentional interference with

26  economic relations must prove intentional interference with a business relationship with a third

27  party that is 'accomplished through improper means[.]' The words 'accomplished through'

28  indicate the necessity of a direct connection between the 'interference' and the 'improper

1    means'") (citation omitted); *Meehan v. Amax Oil & Gas, Inc.*, 796 F. Supp. 461, 467 (D. Colo.

2    1992) ("as with all tort claims, plaintiff must prove causation—that is, plaintiff must show that

3    Parks' conduct caused or induced a specific, prospective employer not to hire him"); *Gibson v.*

4    *Credit Suisse AG*, 2013 WL 5375648, at *15 (D. Idaho Aug. 16, 2013) *report and*

5    *recommendation adopted*, 2013 WL 5375597 (D. Idaho Sept. 24, 2013) (interference tort

6    "damages, if any, involve individualized factual issues pertaining to their specific cause"); *Prop.*

7    *Rights Law Grp., P.C. v. Lynch*, 2014 WL 2452803, at *17 (D. Haw. May 30, 2014) (must be

8    "legal causation between the act of interference and the impairment of the relationship").

9      Rimini proposes adding "sufficiently definite, specific" to describe the prospective

10   relationship because courts have consistently required such a prospective relationship in order to

11   avoid promoting speculative anti-competitive interference tort claims. *See, e.g.*, *Crockett v.*

12   *Sahara Realty Corp.*, 95 Nev. 197, 200 (1979) (competition encouraged when "contractual

13   relations are merely contemplated or potential"); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50

14   Cal. 3d 1118, 1136-37 (1990) (describing "the dangers inherent in imposing tort liability for

15   competitive business practices"); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113

16   Haw. 251, 267 n.18 (2007) (must be "the existence of a valid business relationship or a

17   prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in

18   the sense that there is a reasonable probability of it maturing into a future economic benefit to the

19   plaintiff"); *Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353, at *20 (D. Haw. Dec. 24,

20   2008) (must be "the existence of a valid business relationship or a prospective advantage or

21   expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a

22   reasonable probability of it maturing into a future economic benefit to the plaintiff").

23      Rimini proposes defining an unlawful misrepresentation because that is a necessary

24   predicate to finding liability. *See Crockett v. Sahara Realty Corp.*, 95 Nev. 197, 200 (1979).

25   The definition offered by Rimini is verbatim from the Nevada Supreme Court, except to modify

26   tense and make it applicable to the parties in this case. *See Collins v. Burns*, 103 Nev. 394, 397

27   (1987) ("The elements of intentional misrepresentation are a false representation made with

28   knowledge or belief that it is false or without a sufficient basis of information, intent to induce

1   reliance, and damage resulting from the reliance").   Indeed, Oracle recognized that actual

2   reliance is a necessary predicate of its theory.   *See* Dkt. 766 (P-25) (proposed instruction that

3   fraud must "cause reliance").   Rimini also proposes clarifying what "improper" means, as

4   explained by the Nevada Supreme Court.   *Crockett*, 95 Nev. at 200 ("the gravamen of such a

5   cause of action is conditioned upon the wanton, malicious and unjustifiable acts of others").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **J-34: INTENTIONAL INTERFERENCE - EXISTENCE OF RELATIONSHIP**

2    For Oracle America and/or Oracle International Corporation to prevail on its claim for

3    intentional interference with prospective economic advantage, you must find that Oracle

4    America and/or Oracle International Corporation had expectancies in prospective contractual

5    relationships with its customers at the time of the Defendants' conduct.

6    An expectancy need not be evidenced by a contract. It is sufficient if you find from the

7    evidence that there were either prior dealings or a prior course of conduct between Oracle

8    America and/or Oracle International Corporation and purchasers of Oracle America and/or

9    Oracle International Corporation's support services and software from which there would be a

10   reasonable expectation of future economic benefit. Oracle America and/or Oracle International

11   Corporation must show this expected benefit with some degree of specificity, such that it is a

12   realistic expectation, but it need not be shown with certainty, because prospective things in

13   nature are necessarily uncertain. The law requires more than a mere hope or optimism; what is

14   required is a reasonable likelihood or probability.

15   **RIMINI'S PROPOSED MODIFICATIONS:**

16   For Oracle America and/or Oracle International Corporation to prevail on its claim for

17   intentional interference with prospective economic advantage, you must find that Oracle

18   America and/or Oracle International Corporation had ~~an~~ sufficiently definite and specific

19   expectanc~~ies~~y in each individual prospective contractual relationship~~s~~ with ~~its customers~~ every

20   single client for which it seeks to impose liability~~recover damages~~ at the time of the Defendants'

21   conduct.

22   An expectancy need not be evidenced by a contract. It is sufficient if you find from the

23   evidence that there were either prior dealings or a prior course of conduct between Oracle

24   America and/or Oracle International Corporation and purchasers of Oracle America and/or

25   Oracle International Corporation's support services and software from which there would be a

26   reasonable expectation of future economic benefit. Oracle America and/or Oracle International

27   Corporation must show this expected benefit with some degree of specificity, such that it is a

28   realistic expectation, but it need not be shown with certainty, because prospective things in

1    nature are necessarily uncertain. The law requires more than a mere hope or optimism; what is

2    required is a reasonable likelihood or probability.

3    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

4          For the same reasons briefed in support of D-24, Oracle's burden is to establish the

5    existence of each individual prospective relationship.   Otherwise, it is in effect pursuing an

6    impermissible interference with the market theory of causation and damages.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**P-26: INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE - KNOWLEDGE (W/ MOD)**

For Oracle America to prevail on its claim for inducing breach of contract and for Oracle America and/or Oracle International Corporation to prevail on their claims for intentional interference with prospective economic advantage, you must also find that the Defendant knew of the existence of the contract or prospective relationship. To have knowledge means that the Defendant has information concerning the contract or prospective Defendant, which was discovered by the Defendant or was brought to Defendant's attention by others.

In this regard, knowledge may be found to exist if, from the facts and circumstances of which the Defendant had knowledge, the Defendants should have known of the contract or prospective relationship.

**RIMINI'S PROPOSED MODIFICATIONS:**

For Oracle America to prevail on its claim for inducing breach of contract and for Oracle America and/or Oracle International Corporation to prevail on their claims for intentional interference with prospective economic advantage, you must also find that Rimini Street~~the Defendant~~ knew of the existence of ~~the~~ each individual contract or prospective relationship for which Oracle seeks to impose liability. To have knowledge means that Rimini Street~~the Defendant~~ has information concerning the specific contract or prospective relationship~~Defendant~~, which was discovered by Rimini Street~~the Defendant~~ or was brought to Rimini Street~~Defendant~~'s attention by others.

~~In this regard, knowledge may be found to exist if, from the facts and circumstances of which the Defendant had knowledge, the Defendants should have known of the contract or prospective relationship.~~

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

Constructive knowledge of a contract is insufficient to establish the actual knowledge element for the interference torts. Both torts require actual knowledge, not "should have known" knowledge, as the Nevada Supreme Court and Ninth Circuit have held. *J.J. Industries v. Bennett*, 119 Nev. 269, 274 (2003) ("Because interference with contractual relations is an

1    intentional tort, the plaintiff must demonstrate that the defendant knew of the existing contract");

2    *DeVoto v. Pac. Fidelity Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980) ("The fact of a general

3    intent to interfere, under a definition that includes *imputed knowledge* of consequences, does not

4    alone suffice to impose liability") (emphasis added); Restatement (Second) of Torts § 766 cmt. i

5    ("the  actor must have knowledge of the contract with which he is interfering and of the fact that

6    he is interfering with the performance of the contract").   While Oracle continues to state that

7    *DeVoto* has been rejected by the California Supreme Court, the parties and Court have

8    recognized that Nevada law applies to Oracle's common law claims, and the Nevada Supreme

9    Court continues to apply the reasoning in *DeVoto*.  *See J.J. Industries*, 119 Nev. at 275 n.8;

10    *accord Lopez v. Corral*, 2010 Nev. LEXIS 69, at *15 (Nev. 2010) (unpublished); *see also Soffer*

11    *v. Five Mile Capital Partners, LLC*, 2013 U.S. Dist. LEXIS 80369, at *16 (D. Nev. June 6, 2013)

12    ("no need for the court to look at California cases to resolve" issue related to intentional

13    interference tort when law "is clear under" Nevada law).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**P-27: INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE - INTENT (W/ MODS)**

For Oracle America to prevail on its claim for inducing breach of contract and for Oracle America and/or Oracle International Corporation to prevail on their claims for intentional interference with prospective economic advantage, you must find intentional conduct by a Defendant. For purposes of these two claims, conduct is intentional if done with the desire to disrupt the contract or interfere with the relationship; or if it is done with the belief that disruption or interference is substantially certain to result.

Intent ordinarily may not be proved directly, because there is no way of scrutinizing the operations of the human mind. You may infer a person's intent from conduct substantially certain to cause disruption or interference, but you are not required to infer it and should consider all of the circumstances. You may consider any statements made or acts done or omitted by a party whose intent is an issue, and all of the facts and circumstances that indicate the party's state of mind.

Furthermore, in determining the intention, the law assumes that every person intends the natural consequences of one's knowingly done acts. Thus, if you find that the conduct of one or more of the Defendants was knowingly done, you may draw the inference and find, unless the contrary appears from the evidence, that the Defendant intended all of the natural and probable consequences of that conduct.

**RIMINI'S PROPOSED MODIFICATIONS:**

For Oracle America to prevail on its claim for inducing breach of contract and for Oracle America and/or Oracle International Corporation to prevail on their claims for intentional interference with prospective economic advantage, you must find intentional conduct by a Defendant. For purposes of these two claims, conduct is intentional if done with the desire to ~~disrupt~~ induce breach of the specific contract or interfere with the specific prospective relationship for which Oracle seeks to impose liability; or if it is done with the belief that disruption or interference is substantially certain to result.

Intent ordinarily may not be proved directly, because there is no way of scrutinizing the

1  operations of the human mind. You may infer a person's intent from conduct substantially

2  certain to cause disruption or interference, but you are not required to infer it and should consider

3  all of the circumstances. You may consider any statements made or acts done or omitted by a

4  party whose intent is an issue, and all of the facts and circumstances that indicate the party's state

5  of mind.

6  ~~Furthermore, in determining the intention, the law assumes that every person intends the~~

7  ~~natural consequences of one's knowingly done acts. Thus, if you find that the conduct of one or~~

8  ~~more of the Defendants was knowingly done, you may draw the inference and find, unless the~~

9  ~~contrary appears from the evidence, that the Defendant intended all of the natural and probable~~

10  ~~consequences of that conduct.~~

11  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

12  The Ninth Circuit has rejected this final paragraph in a case that remains good law in

13  Nevada:

14  Tort law ordinarily imputes to an actor the intention to cause the natural and probable
   consequences of his conduct. … Tortious interference requires a state of mind and a

15  purpose more culpable than "intent" under the Restatement definition, however. The fact
   of a general intent to interfere, under a definition that includes imputed knowledge of

16  consequences, does not alone suffice to impose liability. Inquiry into the motive or
   purpose of the actor is necessary. The inducement of a breach, therefore, does not always

17  vest third or incidental persons with a tort action against the one who interfered.

18  *DeVoto*, 618 F.3d at 1347; *accord J.J. Indus.*, 119 Nev. at 275 n.8 (citing *DeVoto*). This is

19  necessary, because, as the Nevada Supreme Court has explained, "At the heart of [an intentional

20  interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or

21  designed to disrupt Plaintiff's contractual relations" *Id.* at 275 (brackets and emphasis in

22  original, quotation removed).

23

24

25

26

27

28

1

**P-28: INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE -
CAUSATION**

2

A substantial factor in causing harm is a factor that a reasonable person would consider to
have contributed to the harm. It must be more than a remote or trivial factor. It does not have to
be the only cause of harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred
without that conduct.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D-25: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE - COMPETITION**

A party does not intentionally interfere with prospective economic advantage when the party engages in free competition. In other words, a party is free to divert business to itself by all fair and reasonable means because it is in the interest of the public that companies compete against each other. Therefore, if you find the following elements, then you must find that Rimini Street and Seth Ravin did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage:

1.     The relation concerns a matter involved in the competition between Rimini Street and/or Seth Ravin and Oracle America and/or Oracle International Corporation;

2.     Rimini Street and/or Seth Ravin did not employ wrongful means;

3.     Rimini Street and/or Seth Ravin's action did not create or continue an unlawful restraint of trade; and

4.     Rimini Street and/or Seth Ravin's purpose was at least in part to advance its interest in competing with Oracle America and/or Oracle International Corporation.

In other words, so long as Rimini Street and/or Seth Ravin's motivation was at least partially to compete with Oracle America and/or Oracle International Corporation, and Rimini Street and/or Seth Ravin did not employ wrongful means to compete with Oracle America and/or Oracle International Corporation, then you must find that Rimini Street and/or Seth Ravin acted in the interests of free competition and did not intentionally interfere with Oracle America and/or Oracle International Corporation's prospective economic advantage.

**P-29: INDUCING BREACH OF CONTRACT AND INTENTIONAL INTERFERENCE - DAMAGES (W/ MODS)**

If you find for Oracle America on one or more of these two claims (intentional interference with prospective economic advantage and inducing breach of contract) and/or you find for Oracle International Corporation on the intentional interference with prospective economic advantage claim, you must determine compensatory damages. Compensatory damages consist of the amount of money that will reasonably and fairly compensate Oracle America and/or Oracle International Corporation for any damage due to the conduct that created liability on the claim. Oracle America and Oracle International Corporation have the burden to prove compensatory damages by a preponderance of the evidence.

In determining compensatory damages on these claims, you may consider whether Oracle America and/or Oracle International Corporation suffered any measurable loss of profits as a result of a Defendant's conduct. In this case, Oracle America and Oracle International Corporation contend that their business was affected because of loss of profits they might have earned but for the Defendants' conduct.

For lost profits to be recovered there must be a reasonable basis for computing them. Profits are determined by deducting all expenses from gross revenue. Ordinarily, it is sufficient for this purpose to show actual past profits and losses. Although they cannot be taken as an exact measure of future or anticipated profits, you, the jury, should consider those past profits and losses together with the uncertainties and contingencies by which they probably would have been affected.  Losses and profits that are mere guesses, speculative, remote, or uncertain should not be considered.

Damages, if any, should be restricted to such losses, if any, as are proved by facts from which their existence is logically and legally inferable. The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the wrong are recoverable, and not those that are contingent and uncertain or mere speculation.

Although a qualified person may make estimates concerning probable profits or losses of a going business, you should, in weighing all such evidence, take into consideration, among

80

1    other things, the truth or falsity of the basis of such estimates; the knowledge or lack of

2    knowledge of the witnesses of all of the conditions on which the estimate is based; whether the

3    facts assumed as a basis for an estimate rest upon actual accounts and records kept in the

4    ordinary course of business rather than in uncertain recollections; and knowledge of the witness

5    in the particular line of business about which the witness testifies. From all of the evidence in

6    this case bearing on the subject, you should determine for yourselves the probability or

7    improbability, and the amount, of profits anticipated by Oracle America and/or Oracle

8    International Corporation.

9        The difficulty or uncertainty in ascertaining or measuring the precise amount of any

10   damages does not preclude recovery, and you, the jury, should use your best judgment in

11   determining the amount of such damages, if any, based upon the evidence.

12       That the defendant did not actually anticipate or contemplate that these losses would

13   occur is not a relevant factor for you to consider.

14       If you find that the plaintiff is entitled to a verdict in accordance with these instructions,

15   but you do not find that the evidence before you is sufficient to show that Oracle America and/or

16   Oracle International Corporation has sustained any substantial damages, then you may return a

17   verdict for Oracle America on one or more of these claims (inducing breach of contract and

18   intentional interference with prospective economic advantage) and/or Oracle International

19   Corporation on the intentional interference with prospective economic advantage and fix the

20   amount of the compensatory damages in a nominal sum such as one dollar.

21   **RIMINI'S PROPOSED MODIFICATIONS:**

22       If you find for Oracle America on one or more of these two claims (intentional

23   interference with prospective economic advantage and inducing breach of contract) and/or you

24   find for Oracle International Corporation on the intentional interference with prospective

25   economic advantage claim, you must determine compensatory damages. Compensatory damages

26   consist of the amount of money that will reasonably and fairly compensate Oracle America

27   and/or Oracle International Corporation for any damage due to the conduct that created liability

28   on the claim. Oracle America and Oracle International Corporation have the burden to prove

1   compensatory damages by a preponderance of the evidence, and must prove any such loss

2   individually as to the specific breached contracts or disrupted relationships that created liability.

3   In determining compensatory damages on these claims, you may consider whether Oracle

4   America and/or Oracle International Corporation suffered any measurable loss of profits as a

5   result of a ~~Defendant's~~ Rimini Street or Seth Ravin's conduct. In this case, Oracle America and

6   Oracle International Corporation contend that they lost~~their business was affected because of loss~~

7   ~~of~~ profits from former customers as a result of Rimini Street's~~they might have earned but for the~~

8   ~~Defendants'~~ conduct.

9   For lost profits to be recovered there must be a reasonable basis for computing them.  The

10  start of your analysis is to first determine for which specific customers Oracle has proven

11  liability and causation.  ~~P~~Lost profits from those customers are determined by deducting all

12  expenses from gross revenue. Ordinarily, it is sufficient for this purpose to show actual past

13  profits and losses. Although they cannot be taken as an exact measure of future or anticipated

14  profits, you, the jury, should consider those past profits and losses together with the uncertainties

15  and contingencies by which they probably would have been affected.  Losses and profits that are

16  mere guesses, speculative, remote, or uncertain should not be considered.

17  Damages, if any, should be restricted to such losses, if any, as are proved by facts from

18  which their existence is logically and legally inferable. The general rule on the subject of

19  damages is that all damages resulting necessarily, immediately, and directly from the wrong are

20  recoverable, and not those that are contingent and uncertain or mere speculation.

21  Although a qualified person may make estimates concerning probable profits or losses of

22  a going business, you should, in weighing all such evidence, take into consideration, among

23  other things, the truth or falsity of the basis of such estimates; the knowledge or lack of

24  knowledge of the witnesses of all of the conditions on which the estimate is based; whether the

25  facts assumed as a basis for an estimate rest upon actual accounts and records kept in the

26  ordinary course of business rather than in uncertain recollections; and knowledge of the witness

27  in the particular line of business about which the witness testifies. From all of the evidence in

28  this case bearing on the subject, you should determine for yourselves the probability or

1  improbability, and the amount, of profits anticipated by Oracle America and/or Oracle

2  International Corporation.

3        The difficulty or uncertainty in ascertaining or measuring the precise amount of any

4  damages does not preclude recovery, and you, the jury, should use your best judgment in

5  determining the amount of such damages, if any, based upon the evidence.  However, damages

6  may not be based on speculation or guesswork.

7        That the defendant Rimini Street or Seth Ravin did not actually anticipate or contemplate

8  that these losses would occur is not a relevant factor for you to consider.

9  If you find that the plaintiff is entitled to a verdict in accordance with these instructions,

10  but you do not find that the evidence before you is sufficient to show that Oracle America and/or

11  Oracle International Corporation has sustained any substantial damages, then you may return a

12  verdict for Oracle America on one or more of these claims (inducing breach of contract and

13  intentional interference with prospective economic advantage) and/or Oracle International

14  Corporation on the intentional interference with prospective economic advantage and fix the

15  amount of the compensatory damages in a nominal sum such as one dollar.

16  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

17        The additional proposed language is necessary to clarify for the jury that it must analyze

18  damages based on the actual induced breach and intentional interference claims that it found to

19  establish liability.

20        The "lost profits" paragraph, which is drawn from a generic "Compensatory Damages"

21  model instruction, is misleading and confusing in the context of these claims.  It improperly

22  suggests that the jury can award lost profit damages by looking only to Oracle's gross revenue

23  and expenses.  But, as described in Rimini's trial brief (Dkt. 739 at 18-21), Oracle must prove all

24  elements of these intentional tort claims as to *each* specific client and prospective relationship.

25  This instruction suggests to the jury that it can determine damages by looking only to Oracle's

26  books without requiring the jury to examine the actual harm proven by a preponderance of the

27  evidence as to each specific third party.  Rimini therefore has proposed certain modifications to

28  make this clear.

1    The simple statement of law that damages may not be based on guesswork is necessary in

2   light of the language that "[t]he difficulty or uncertainty in ascertaining or measuring the precise

3   amount of any damages does not preclude recovery"—it clarifies for the jury basic law regarding

4   awarding damages.

5    The final paragraph, similarly drawn from a generic "Compensatory Damages" model

6   instruction, incorrectly allows the jury to award nominal damages.  But it is hornbook law that

7   nominal damages are not available for *intentional* tort claims when, like here, actual damages is

8   an essential element of the claim.  *See Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971) (when damages

9   is an element of a tort claim, "[t]he mere breach of a … duty, causing only nominal damages,

10   speculative harm, or the threat of future harm - not yet realized - does not suffice to create a

11   cause of action"); Restatement (Second) of Torts § 907, cmt. b (nominal damages are available

12   for tort claims when "harm is not requisite to a cause of action").  Without actual damages, there

13   is no liability.  The jury should not be allowed to award nominal damages; instead, if it finds

14   only nominal damages, then the jury must return a finding of no liability.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**P-30: FEDERAL COMPUTER FRAUD AND ABUSE ACT - INTRODUCTION (W/ MODS)**

In addition to its other claims, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated five sections of the Federal Computer Fraud and Abuse Act ("CFAA"). I will now instruct you on various sections of the CFAA, and the damages you may award if you find any CFAA violation. If you find that a Defendant violated at least one of the CFAA sections that follow, you should find for Oracle America and Oracle International Corporation and against that Defendant on the CFAA claim.

**RIMINI'S PROPOSED MODIFICATIONS:**

In addition to its other claims, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated ~~five~~ three sections of the Federal Computer Fraud and Abuse Act ("CFAA"). The CFAA is an anti-hacking statute that should be applied narrowly and is intended to prohibit only computer hacking, not the general unauthorized use of information obtained from a computer. I will now instruct you on various sections of the CFAA, and the damages you may award if you find any CFAA violation. If you find that a Defendant violated at least one of the CFAA sections that follow, you should find for Oracle America and Oracle International Corporation and against that Defendant on the CFAA claim.

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

Courts have applied this statute with caution, in light of its broad and ambiguous language. "Although this case arises in a civil context," the CFAA "is primarily a criminal statute" and all "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009). It is therefore necessary to explain to the jury what the en banc Ninth Circuit has made clear: "Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking"; the "statutory language" should be construed to "maintain[] the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate"; and "This narrower interpretation is also a more sensible reading of the text and legislative history of a statute whose general purpose is to punish hacking—the circumvention of technological access barriers—not misappropriation

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    of trade secrets" or "use" of materials obtained.  *United States v. Nosal*, 676 F.3d 854, 858, 863

2    (9th Cir. 2012) (en banc).

3            Additionally, Oracle has reduced the number of CFAA violations it seeks to submit to the

4    jury from five to three.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **J-35: FEDERAL COMPUTER FRAUD AND ABUSE ACT - DEFINITIONS**

2    For the purposes of assessing Oracle America and Oracle International Corporation's

3    claims under the CFAA, the following terms have the following meanings:

4    1.    A person who "exceeds authorized access" has permission to access the computer,

5    but accesses information on the computer that the person is not entitled to access.

6    2.    A person who accesses a computer "without authorization" accesses a computer

7    without any permission at all.

8    3.    "Protected computer" means a computer used in or affecting interstate or foreign

9    commerce or communication, including a computer located outside the United States that is used

10   in a manner that affects interstate or foreign commerce or communication of the United States.

11   4.    "Loss" means any reasonable cost to any victim, including the cost of responding

12   to an offense, conducting a damage assessment, and restoring the data, program, system, or

13   information to its condition prior to the offense, and any revenue lost, cost incurred, or other

14   consequential damages incurred because of interruption in service.

15   5.    "Damage" means any impairment to the integrity or availability of data, a

16   program, a system, or information.

17   6.    "Person" includes any individual, firm, corporation, or other entity.

18   **RIMINI'S PROPOSED MODIFICATIONS:**

19   For the purposes of assessing Oracle America and Oracle International Corporation's

20   claims under the CFAA, the following terms have the following meanings:

21   1.    A person who "exceeds authorized access" access a computer with authorization

22   and uses such access to obtain or alter information in the computer that the accesser is not

23   entitled so to obtain or alter~~has permission to access the computer, but accesses information on~~

24   ~~the computer that the person is not entitled to access~~.

25   2.    A person who accesses a computer "without authorization" accesses a computer

26   without having received~~any~~ permission ~~at all~~ to use the computer for any purpose, such as when

27   a hacker accesses someone's computer without any permission.   A person who accesses a

28   computer using the authorization of another does not access the computer "without

87

1    authorization."

2        3.      "Protected computer" means a computer used in or affecting interstate or foreign

3    commerce or communication, including a computer located outside the United States that is used

4    in a manner that affects interstate or foreign commerce or communication of the United States.

5        4.      "Loss" means any reasonable cost to any victim, including the cost of responding

6    to an offense, conducting a damage assessment, and restoring the data, program, system, or

7    information to its condition prior to the offense, and any revenue lost, cost incurred, or other

8    consequential damages incurred because of interruption in service.

9        5.      "Damage" means any impairment to the integrity or availability of data, a

10   program, a system, or information.

11       6.      "Person" includes any individual, firm, corporation, or other entity.

12   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

13       The modification to "exceeds authorized access" tracks the statutory language.  18 U.S.C.

14   § 1030(e)(6) (defining "exceeds authorized access" as "to access a computer with authorization

15   and to use such access to obtain or alter information in the computer that the accesser is not

16   entitled so to obtain or alter").

17       The modification to "without authorization" tracks the Ninth Circuit's exact definition:

18   "we hold that a person uses a computer 'without authorization' under §§ 1030(a)(2) and (4)

19   when the person has not received permission to use the computer for any purpose (such as when

20   a hacker accesses someone's computer without any permission)."  *LVRC Holdings LLC v.*

21   *Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009); *see United States v. Nosal*, 676 F.3d 854, 858 (9th

22   Cir. 2012) (*en banc*) ("The government agrees that the CFAA was concerned with hacking,

23   which is why it also prohibits accessing a computer 'without authorization.' … '[W]ithout

24   authorization' would apply to *outside* hackers (individuals who have no authorized access to the

25   computer at all)") (emphasis in original).  It also adds the important limitation that an individual

26   does not act "without authorization" when he receives authorization from a third party.  *See*

27   *Nosal*, 676 F.3d at 864 ("Because Nosal's accomplices had permission to access the company

28

1  database and obtain the information contained within, the government's charges fail to meet the

2  element of "without authorization, or exceeds authorized access'").

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**P-31: FEDERAL COMPUTER FRAUD AND ABUSE ACT - OBTAINING INFORMATION (W/ MODS)**

First, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin unlawfully obtained information from a protected computer in violation of the CFAA, Section 1030(a)(2)(C). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1.      Rimini Street and/or Seth Ravin intentionally accessed a computer without authorization, or exceeded authorized access;

2.      Through such access, Rimini Street and/or Seth Ravin obtained information from a protected computer; and,

3.      Such access caused loss to Oracle America and Oracle International Corporation totaling at least $5,000 in value during any one year period.

**RIMINI'S PROPOSED MODIFICATIONS:**

First, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin unlawfully obtained information from a protected computer in violation of the CFAA, Section 1030(a)(2)(C). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1.      Rimini Street and/or Seth Ravin intentionally accessed a computer without authorization, or exceeded authorized access;

2.      Through such access, Rimini Street and/or Seth Ravin obtained information from a protected computer; and,

3.      Such access caused loss to Oracle America and Oracle International Corporation totaling at least $5,000 in value during any one year period.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

90

1

2    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

3            Rimini is entitled to a good faith belief defense.   The CFAA "is primarily a criminal

4    statute" and "[a]lthough this case arises in a civil context" the statute must be interpreted "in the

5    criminal context." *Brekka*, 581 F.3d at 1134.  In the criminal context, the term "willful" requires

6    the "specific intent to violate the law" (*United States v. Liu*, 731 F.3d 982, 989 (9th Cir. 2013)),

7    which requires proving "that the law imposed a duty on the defendant, that the defendant knew

8    of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*,

9    498 U.S. 192, 201 (1991).  The CFAA contains a specific intent *mens rea* requirement.  *E.g.*, 18

10   U.S.C. § 1030(a)(2)(C) (defendant must act "intentionally").   And a good-faith mistake as to the

11   requirements of the law is a complete defense.  *See Jerman v. Carlisle, McNellie, Rini, Kramer*

12   *& Ulrich, L.P.A.*, 559 U.S. 573, 613-14 (2010) (Kennedy, J., dissenting) ("Federal statutes that

13   link the term 'violation' with a *mens rea* requirement have been interpreted to excuse good-faith

14   legal mistakes") (citation omitted).  That belief need not be objectively reasonable, just sincerely

15   held. *Cheek*, 498 U.S. at 203.

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-32: FEDERAL COMPUTER FRAUD AND ABUSE ACT - INTENTIONAL DAMAGE TO COMPUTER**

Second, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin committed damage to a protected computer in violation of the CFAA, Section 1030(a)(5)(A). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1.      Rimini Street and/or Seth Ravin knowingly caused the transmission of a program, information, code, or command to a computer;

2.      As a result of such transmission, Rimini Street and/or Seth Ravin intentionally caused damage to a protected computer without authorization; and

3.      Such transmission caused loss to Oracle America and Oracle International Corporation during any one year period aggregating at least $5,000 in value.

**RIMINI'S PROPOSED MODIFICATIONS:**

Second, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin committed damage to a protected computer in violation of the CFAA, Section 1030(a)(5)(A). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1.      Rimini Street and/or Seth Ravin knowingly caused the transmission of a program, information, code, or command to a computer;

2.      As a result of such transmission, Rimini Street and/or Seth Ravin intentionally caused damage to a protected computer without authorization; and

3.      Such transmission caused loss to Oracle America and Oracle International Corporation during any one year period aggregating at least $5,000 in value.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

*See* response to P-31.

**P-33: FEDERAL COMPUTER FRAUD AND ABUSE ACT - RECKLESS DAMAGE TO COMPUTER**

Third, Oracle America and Oracle International Corporation contends that that Rimini Street and Seth Ravin recklessly damaged a protected computer in violation of the CFAA, Section 1030(a)(5)(B). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1.      Rimini Street and/or Seth Ravin intentionally accessed a protected computer without authorization;

2.      As a result of such conduct, Rimini Street and/or Seth Ravin recklessly caused damage; and,

3.      Such access caused loss to Oracle America and/or Oracle International Corporation during any one year period aggregating at least $5,000 in value.

**RIMINI'S PROPOSED MODIFICATIONS:**

Third, Oracle America and Oracle International Corporation contends that that Rimini Street and Seth Ravin recklessly damaged a protected computer in violation of the CFAA, Section 1030(a)(5)(B). To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following elements by a preponderance of the evidence:

1.      Rimini Street and/or Seth Ravin intentionally accessed a protected computer without authorization;

2.      As a result of such conduct, Rimini Street and/or Seth Ravin recklessly caused damage; and,

3.      Such access caused loss to Oracle America and/or Oracle International Corporation during any one year period aggregating at least $5,000 in value.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the Computer Fraud and Abuse Act.

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

*See* response to P-31.

1    **P-34: FEDERAL COMPUTER FRAUD AND ABUSE ACT - DAMAGES (W/ MODS)**

2    If you find that a Defendant violated any of the CFAA sections described in these

3    instructions, you may award Oracle America and Oracle International Corporation damages from

4    that the Defendant caused to that plaintiff. These damages may include:

5        1.    costs of responding to the violation;

6        2.    costs of conducting a damage assessment;

7        3.    costs of restoring the system and data to its prior condition;

8        4.    lost revenues or costs due to interruption of service;

9        5.    costs of investigating the violation;  and

10       6.    the value of any business that Oracle lost as a result of the violation of the CFAA.

11   It is Oracle America and Oracle International Corporation's burden to prove its damages

12   by a preponderance of the evidence. You should determine damages separately for each

13   Defendant, if any, that you find violated the CFAA.

14   **RIMINI'S PROPOSED MODIFICATIONS:**

15   If you find that a Defendant violated any of the CFAA sections described in these

16   instructions, you may award Oracle America and Oracle International Corporation damages from

17   that the Defendant caused to that plaintiff. These damages may include:

18       1.    costs of responding to the violation;

19       2.    costs of conducting a damage assessment;

20       3.    costs of restoring the system and data to its prior condition;

21       4.    lost revenues or costs due to interruption of service; and/or

22       5.    costs of investigating the violation.; and

23       6.    the value of any business that Oracle lost as a result of the violation of the CFAA.

24   It is Oracle America and Oracle International Corporation's burden to prove its damages

25   by a preponderance of the evidence. You should determine damages separately for each

26   Defendant, if any, that you find violated the CFAA.

27

28

1   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

2          Lost profits are not available under the CFAA.  *See Farmers Ins. Exchange v. Steele Ins.*

3   *Agency, Inc.*, 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013) ("costs not related to computer

4   impairment or computer damages are not compensable under the CFAA") (collecting cases); *see*

5   *also Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1019 (N.D. Ill. 2014) (same); *Sprint*

6   *Solutions, Inc. v. Pac. Cellupage Inc.*, 2014 WL 3715122, at *6 (C.D. Cal. July 21, 2014) (same).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **J-36: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT**

2           Oracle America and Oracle International Corporation contend that Rimini Street and Seth

3    Ravin violated three provisions of California Penal Code Section 502, known as the California

4    Computer Data Access and Fraud Act ("CDAFA"). I will now instruct you on the law regarding

5    the applicable provisions of the CDAFA, and the damages you may award if you find a CDAFA

6    violation. If you find that a Defendant violated at least one of the CDAFA provisions that follow,

7    you should find for Oracle America and Oracle International Corporation and against that

8    Defendant on the CDAFA claim.

9    **RIMINI'S PROPOSED MODIFICATIONS:**

10          Oracle America and Oracle International Corporation contend that Rimini Street and Seth

11   Ravin violated ~~three~~ two provisions of California Penal Code Section 502, known as the

12   California Computer Data Access and Fraud Act ("CDAFA"). I will now instruct you on the law

13   regarding the applicable provisions of the CDAFA, and the damages you may award if you find

14   a CDAFA violation. If you find that a Defendant violated at least one of the CDAFA provisions

15   that follow, you should find for Oracle America and Oracle International Corporation and against

16   that Defendant on the CDAFA claim.

17   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

18          Oracle now asserts only two violations of the CDAFA.

19

20

21

22

23

24

25

26

27

28

1    **J-37: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - DEFINITIONS**

2    For the purposes of assessing Oracle America and Oracle International Corporation's

3    CDAFA claim, the following terms have the following meanings:

4    1.     "Access" means to gain entry to, instruct, or communicate with the logical,

5    arithmetical, or memory function resources of a computer, computer system, or computer

6    network.

7    2.     "Computer program or software" means a set of instructions or statements, and

8    related data, that when executed in actual or modified form, cause a computer, computer system,

9    or computer network to perform specified functions.

10   3.     "Computer network" means any system that provides communications between

11   one or more computer systems and input/output devices.

12   4.     "Computer services" includes, but is not limited to, computer time, data

13   processing, or storage functions, or other uses of a computer, computer system, or computer

14   network.

15   5.     "Data" means a representation of information, knowledge, facts, concepts,

16   computer software, computer programs or instructions. Data may be in any form, in storage

17   media, or as stored in the memory of the computer or in transit or presented on a display device.

18   6.     "Supporting documentation" includes, but is not limited to, all information, in any

19   form, pertaining to the design, construction, classification, implementation, use, or modification

20   of a computer, computer system, computer network, computer program, or computer software,

21   which information is not generally available to the public and is necessary for the operation of a

22   computer, computer system, computer network, computer program, or computer software.

23

24

25

26

27

28

1  **P-35: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - SECTION 2**

2  First, Oracle America and Oracle International Corporation contend that Rimini Street

3  and Seth Ravin violated the CDAFA, Section 502(c)(2). To prevail under this provision, Oracle

4  America and Oracle International Corporation must prove each of the following by a

5  preponderance of the evidence:

6  1.  A Defendant knowingly accessed and without permission took or made use of any

7  data, computer, computer system, or computer network, or took any supporting documentation;

8  and

9  2.  Thereby caused Oracle America and/or Oracle International Corporation to suffer

10  damage or loss.

11  **RIMINI'S PROPOSED MODIFICATIONS:**

12  First, Oracle America and Oracle International Corporation contend that Rimini Street

13  and Seth Ravin violated the CDAFA, Section 502(c)(2). To prevail under this provision, Oracle

14  America and Oracle International Corporation must prove each of the following by a

15  preponderance of the evidence:

16  1.  A Defendant knowingly accessed and without permission took or made use of any

17  data, computer, computer system, or computer network, or took any supporting documentation.

18  An individual does not act "without permission"  if he uses a third party's credentials to access a

19  website that the third party has authorization to access to obtain material authorized by the third

20  party.; and

21  2.  Thereby caused Oracle America and/or Oracle International Corporation to suffer

22  damage or loss.

23  If you find that Rimini Street and/or Seth Ravin believed it had authorization to access

24  Oracle America and/or Oracle International Corporation's computer, then you must find that

25  Rimini Street and/or Seth Ravin did not violate the CDAFA.

26  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

27  The same constitutional concerns underlying the Ninth Circuit's opinions in *Nosal* and

28  *LVRC* apply to the CDAFA.  U.S. Const., arts. V, XIV; *see Enki Corp. v. Freedman*, 2014 U.S.

1    Dist. LEXIS 9169, at \*9 (N.D. Cal. Jan. 23, 2014) (rejecting claim that "a violation of the

2    established terms of use is sufficient to create liability under CDAFA"); *Chrisman v. City of Los*

3    *Angeles*, 155 Cal. App. 4th 29, 35 (2007) (no liability under CDAFA when "[o]ne cannot

4    reasonably describe appellant's improper computer inquiries … as hacking").   Accordingly,

5    Rimini is entitled to an instruction that explains the scope of the statute to the jury and prevents it

6    from applying this vague and overbroad statute in a constitutionally impermissible way.   *See*

7    responses to J-35 and P-31.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **P-36: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - SECTION 3**

2    Second, Oracle America and Oracle International Corporation contends that Rimini

3    Street and Seth Ravin violated the CDAFA, Section 502(c)(3). To prevail under this provision,

4    Oracle America and Oracle International Corporation must prove each of the following by a

5    preponderance of the evidence:

6    1.    A Defendant knowingly accessed and without permission used or caused to be

7    used computer services; and

8    2.    Thereby caused Oracle America and/or Oracle International Corporation to suffer

9    damage or loss.

10    **RIMINI'S PROPOSED MODIFICATIONS:**

11    Second, Oracle America and Oracle International Corporation contends that Rimini

12    Street and Seth Ravin violated the CDAFA, Section 502(c)(3). To prevail under this provision,

13    Oracle America and Oracle International Corporation must prove each of the following by a

14    preponderance of the evidence:

15    1.    A Defendant knowingly accessed and without permission used or caused to be

16    used computer services; . An individual does not act "without permission"  if he uses a third

17    party's credentials to access a website that the third party has authorization to access to obtain

18    material authorized by the third party.  and

19    2.    Thereby caused Oracle America and/or Oracle International Corporation to suffer

20    damage or loss.

21    If you find that Rimini Street and/or Seth Ravin believed it had authorization to access

22    Oracle America and/or Oracle International Corporation's computer, then you must find that

23    Rimini Street and/or Seth Ravin did not violate the CDAFA.

24    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

25    *See* response to P-35.

26

27

28

**P-37: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - ASSISTING, AIDING & ABETTING**

In addition to contending that Seth Ravin personally violated the CDAFA, Oracle America and Oracle International Corporation also contend that Seth Ravin assisted or aided and abetted Rimini Street or its employees in violating the CDAFA. If you have not found that Seth Ravin personally committed one of the CDAFA violations above, then you must consider whether Seth Ravin is responsible for CDAFA violations committed by Rimini Street or its employees.

To prevail on this theory Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1.      Seth Ravin knowingly and without permission provided or assisted in providing another person a means of accessing a computer, computer system, or computer network in violating the CDAFA;

2.      Seth Ravin's conduct was of substantial assistance in the other person's CDAFA violation;

3.      Seth Ravin knew the other person intended conduct that would violate the CDAFA; and

4.      Seth Ravin's assistance was a substantial factor in causing harm to Oracle America and/or Oracle International Corporation.

If you find that Seth Ravin assisted or aided and abetted another person's CDAFA violation, you should find for Oracle America and Oracle International Corporation and against Seth Ravin on the CDAFA claim.

**RIMINI'S PROPOSED MODIFICATIONS:**

In addition to contending that Seth Ravin personally violated the CDAFA, Oracle America and Oracle International Corporation also contend that Seth Ravin assisted or aided and abetted Rimini Street or its employees in violating the CDAFA. If you have not found that Seth Ravin personally committed one of the CDAFA violations above, then you must consider whether Seth Ravin is responsible for CDAFA violations committed by Rimini Street or its

1   employees.

2       To prevail on this theory Oracle America and Oracle International Corporation must

3   prove each of the following by a preponderance of the evidence:

4       1.    Seth Ravin knowingly and without permission provided or assisted in providing

5   another person a means of accessing a computer, computer system, or computer network in

6   violating the CDAFA.  An individual does not act "without permission"  if he uses a third party's

7   credentials to access a website that the third party has authorization to access to obtain material

8   authorized by the third party.;

9       2.    Seth Ravin's conduct was of substantial assistance in the other person's CDAFA

10  violation.;

11      3.    Seth Ravin knew the other person intended conduct that would violate the

12  CDAFA.; and

13      4.    Seth Ravin's assistance was a substantial factor in causing harm to Oracle

14  America and/or Oracle International Corporation.

15      If you find that Seth Ravin assisted or aided and abetted another person's CDAFA

16  violation, you should find for Oracle America and Oracle International Corporation and against

17  Seth Ravin on the CDAFA claim.

18      If you find that Seth Ravin believed he had authorization to access Oracle America and/or

19  Oracle International Corporation's computer, then you must find that he did not violate the

20  CDAFA.

21  **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

22      *See* response to P-35.

23

24

25

26

27

28

**P-38: CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT - DAMAGES**

If you find that a Defendant violated the CDAFA, you may award damages to Oracle America and/or Oracle International Corporation. These damages shall include amounts sufficient to compensate Oracle America and/or Oracle International Corporation for the harm it suffered as a result of any violations, including any expenditure reasonably and necessarily incurred to verify that their computers, computer systems, computer networks, and/or data was or was not altered, damaged, or deleted by the access.

In addition, if, you find by clear and convincing evidence that a Defendant willfully violated the CDAFA with oppression, fraud, or malice, you may additionally award punitive damages from that Defendant, as set forth in the instructions on punitive damages I will give you later.

You should determine actual damages separately for each Defendant, if any, that you find liable for violating the CDAFA.

1  **P-39: NEVADA COMPUTER CRIMES LAW**

2       In addition to its other claims, Oracle America and Oracle International Corporation

3  contend that Rimini Street and Seth Ravin violated two provisions of the Nevada computer

4  crimes law ("NCCL"), Nevada Revised Statute § 205.4765. I will now instruct you on the law

5  regarding the applicable provisions of the NCCL and the damages you may award if you find a

6  violation of the NCCL. If you find that a Defendant violated at least one of the NCCL's

7  provisions that follow, you should find for Oracle America and/or Oracle International

8  Corporation and against that Defendant on the NCCL claim.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **P-42: NEVADA COMPUTER CRIMES LAW - DEFINITIONS**

2    For the purposes of assessing Oracle America and Oracle International Corporation's

3    NCCL claim, the following terms have the following meanings:

4    1.    "Access" means to intercept, instruct, communicate with, store data in, retrieve

5    from or otherwise make use of any resources of a computer, network or data.

6    2.    "Data" means a representation in any form of information, knowledge, facts,

7    concepts or instructions which is being prepared or has been formally prepared and is intended to

8    be processed, is being processed or has been processed in a system or network.

9    3.    "Network" means a set of related, remotely connected devices and facilities,

10   including more than one system, with the capability to transmit data among any of the devices

11   and facilities. The term includes, without limitation, a local, regional or global computer

12   network.

13   4.    "Program" means an ordered set of data representing coded instructions or

14   statements which can be executed by a computer and cause the computer to perform one or more

15   tasks.

16   5.    "Response costs" means any reasonable costs caused by an NCCL violation,

17   including any reasonable costs to:

18   A.    Investigate the facts surrounding the violation;

19   B.    Ascertain or calculate any past or future loss, injury or other damage;

20   C.    Remedy, mitigate or prevent any past or future loss, injury or other damage; or

21   D.    Test, examine, restore or verify the integrity of or the normal operation or use of

22   any Internet or network site, electronic mail address, computer, system, network,

23   component, device, equipment, data, information, image, program, signal or

24   sound.

25   6.    "System" means a set of related equipment, whether or not connected, which is

26   used with or for a computer.

27   **RIMINI'S PROPOSED MODIFICATIONS:**

28   For the purposes of assessing Oracle America and Oracle International Corporation's

1    NCCL claim, the following terms have the following meanings:

2         1.    "Access" means to intercept, instruct, communicate with, store data in, retrieve

3    from or otherwise make use of any resources of a computer, network or data.

4         2.    A person who accesses a computer "without authorization" accesses a computer

5    without having received permission to use the computer for any purpose, such as when a hacker

6    accesses someone's computer without any permission.  A person who accesses a computer using

7    the authorization of another does not access the computer "without authorization."

8         3.    "Data" means a representation in any form of information, knowledge, facts,

9    concepts or instructions which is being prepared or has been formally prepared and is intended to

10   be processed, is being processed or has been processed in a system or network.

11        34.   "Network" means a set of related, remotely connected devices and facilities,

12   including more than one system, with the capability to transmit data among any of the devices

13   and facilities. The term includes, without limitation, a local, regional or global computer

14   network.

15        45.   "Program" means an ordered set of data representing coded instructions or

16   statements which can be executed by a computer and cause the computer to perform one or more

17   tasks.

18        56.   "Response costs" means any reasonable costs caused by an NCCL violation,

19   including any reasonable costs to:

20        A.    Investigate the facts surrounding the violation;

21        B.    Ascertain or calculate any past or future loss, injury or other damage;

22        C.    Remedy, mitigate or prevent any past or future loss, injury or other damage; or

23        D.    Test, examine, restore or verify the integrity of or the normal operation or use of

24             any Internet or network site, electronic mail address, computer, system, network,

25             component, device, equipment, data, information, image, program, signal or

26             sound.

27        6.    "System" means a set of related equipment, whether or not connected, which is

28   used with or for a computer.

1    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

2          The modification to "without authorization" tracks the Ninth Circuit's exact definition for

3    the same phrase in the federal CFAA and is appropriate to limit the potentially unconstitutional

4    vagueness of the statute.  *See* response to J-35.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**P-40: NEVADA COMPUTER CRIMES LAW - SECTION 1**

First, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 1. To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1.      A Defendant modified, damaged, disclosed, used, transferred, concealed, retained possession of, obtained or attempted to obtain access to, permitted access to or caused to be accessed, or entered any of the following: data, a program or any supporting documents which exist inside or outside a computer, system or network;

2.      The Defendant did so knowingly, willfully, and without authorization; and

3.      Oracle America and Oracle International Corporation was the victim of the Defendant's conduct.

**RIMINI'S PROPOSED MODIFICATIONS:**

First, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 1. To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1.      A Defendant modified, damaged, disclosed, used, transferred, concealed, retained possession of, obtained or attempted to obtain access to, permitted access to or caused to be accessed, or entered any of the following: data, a program or any supporting documents which exist inside or outside a computer, system or network;

2.      The Defendant did so knowingly, willfully, and without authorization; and

3.      Oracle America and Oracle International Corporation was the victim of the Defendant's conduct.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCLL.

1    **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

2          The same constitutional concerns underlying the Ninth Circuit's opinions in *Nosal* and

3    *LVRC* apply to the NCLL.  U.S. Const., arts. V, XIV.  Accordingly, Rimini is entitled to an

4    instruction that explains the scope of the statute to the jury and prevents it from applying this

5    vague and overbroad statute in a constitutionally impermissible way.  See response to P-31.  In

6    addition, this vague statutory language requires additional guidance for the jury.  Sending this

7    bare statutory language to the jury provides it with no legitimate guidance regarding the proper

8    scope of this statute or Rimini's available good-faith belief affirmative defense.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**P-41: NEVADA COMPUTER CRIMES LAW - SECTION 3**

Second, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 3. To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1.      A Defendant damaged, altered, transferred, disclosed, concealed, used, retained possession of, or obtained or attempted to obtain access to, permitted access to or caused to be accessed any of the following: a computer, system or network;

2.      The Defendant did so knowingly, willfully, and without authorization; and

3.      Oracle America and Oracle International Corporation was the victim of the Defendant's conduct.

**RIMINI'S PROPOSED MODIFICATIONS:**

Second, Oracle America and Oracle International Corporation contend that Rimini Street and Seth Ravin violated the NCCL, Section 3. To prevail under this provision, Oracle America and Oracle International Corporation must prove each of the following by a preponderance of the evidence:

1.      A Defendant damaged, altered, transferred, disclosed, concealed, used, retained possession of, or obtained or attempted to obtain access to, permitted access to or caused to be accessed any of the following: a computer, system or network;

2.      The Defendant did so knowingly, willfully, and without authorization; and

3.      Oracle America and Oracle International Corporation was the victim of the Defendant's conduct.

If you find that Rimini Street and/or Seth Ravin believed it had authorization to access Oracle America and/or Oracle International Corporation's computer, then you must find that Rimini Street and/or Seth Ravin did not violate the NCLL.

**RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

*See* response to P-40.

1   **P-43: NEVADA COMPUTER CRIMES LAW - DAMAGES (W/ MODS)**

2      If you find that a Defendant violated any of the above NCCL provisions, you may award

3   compensatory damages to Oracle America and/or Oracle International Corporation. These

4   damages may compensate Oracle America and/or Oracle International Corporation for any

5   response costs, loss, or injury that Oracle America and/or Oracle International Corporation

6   suffered as a result of the violation.

7      In addition, if, you find by clear and convincing evidence that a Defendant willfully

8   violated the NCCL with oppression, fraud, or malice, you may additionally award punitive

9   damages against that Defendant, as set forth in the instructions on punitive damages I will give

10  you later.

11     You should determine damages separately for each Defendant, if any, that you find liable

12  for violating the NCCL.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **P-46: DAMAGES - PUNITIVE DAMAGES - LIABILITY**

2       If you find that Oracle America and/or Oracle International Corporation is entitled to

3   compensatory damages for actual harm or loss on any of the following claims, then you may, but

4   are not required to, award punitive damages to Oracle America and/or Oracle International

5   Corporation:

6       1.     California Computer Data Access and Fraud Act (CDAFA);

7       2.     Nevada Computer Crime Law (NCCL); or

8       3.     Intentional interference with prospective economic advantage.

9       You may not award punitive damages with respect to any other claim by any of the

10   plaintiffs.

11       If you find that Oracle America and/or Oracle International Corporation is entitled to

12   compensatory damages for actual harm or loss caused under one or more of those claims, then

13   you may consider whether you should award punitive damages against that Defendant. The

14   question whether to award punitive damages against a particular Defendant must be considered

15   separately with respect to each Defendant.

16       You may award punitive damages against a Defendant only if Oracle America and/or

17   Oracle International Corporation proves by clear and convincing evidence that the wrongful

18   conduct upon which you base your finding of liability for compensatory damages was engaged in

19   with fraud, oppression or malice on the part of that Defendant. You cannot punish the Defendant

20   for conduct that is lawful, or which did not cause actual harm or loss to Oracle. For the purposes

21   of your consideration of punitive damages only:

22       "Fraud" means an intentional misrepresentation, deception or concealment of a material

23   fact known to a defendant with the intent to deprive Oracle America and/or Oracle International

24   Corporation of rights or property or to otherwise injure Oracle America and/or Oracle

25   International Corporation.

26       "Oppression" means despicable conduct that subjects Oracle America and/or Oracle

27   International Corporation to cruel and unjust hardship with a conscious disregard of the rights of

28   the Oracle America and/or Oracle International Corporation.

1    "Malice" means conduct which is intended to injure the Oracle America and/or Oracle

2    International Corporation or despicable conduct which is engaged in with a conscious disregard

3    of the rights or safety of Oracle America and/or Oracle International Corporation.

4    "Despicable conduct" means conduct that is so vile, base or contemptible that it would be

5    looked down upon and despised by ordinary, decent people.

6    "Conscious disregard" means knowledge of the probable harmful consequences of a

7    wrongful act and a willful and deliberate failure to avoid these consequences.

8    The purposes of punitive damages are to punish a wrongdoer that acts with fraud,

9    oppression and/or malice in harming a plaintiff and deter similar conduct in the future, not to

10   make the plaintiff whole for its injuries. Consequently, a plaintiff is never entitled to punitive

11   damages as a matter of right and whether to award punitive damages against a Defendant is

12   entirely within your discretion.

13   You are only asked to decide whether punitive damages would be proper and justified in

14   this case. You are not asked at this time to determine an amount of punitive damages. If you

15   decide that punitive damages should be awarded against a Defendant, a limited hearing will

16   follow the return of your verdict in which the parties may present relevant evidence bearing upon

17   the amount of punitive damages.

18   **RIMINI'S PROPOSED MODIFICATIONS:**

19   If you find that Oracle America and/or Oracle International Corporation is entitled to

20   compensatory damages for actual harm or loss on any of the following claims, then you may, but

21   are not required to, award punitive damages to Oracle America and/or Oracle International

22   Corporation:

23   1.    California Computer Data Access and Fraud Act (CDAFA);

24   2.    Nevada Computer Crime Law (NCCL); or

25   3.    Intentional interference with prospective economic advantage.

26   You may not award punitive damages with respect to any other claim by any of the

27   plaintiffs.  Punitive damages are not available for a copyright infringement claim.

28   If you find that Oracle America and/or Oracle International Corporation is entitled to

113

1    compensatory damages for actual harm or loss caused under one or more of those claims, then

2    you may consider whether you should award punitive damages against that Defendant. The

3    question whether to award punitive damages against a particular Defendant must be considered

4    separately with respect to each Defendant.

5        You may award punitive damages against a Defendant only if Oracle America and/or

6    Oracle International Corporation proves by clear and convincing evidence that the wrongful

7    conduct upon which you base your finding of liability for compensatory damages was engaged in

8    with fraud, oppression or malice on the part of that Defendant. You cannot punish the Defendant

9    for conduct that is lawful, or which did not cause actual harm or loss to Oracle. For the purposes

10   of your consideration of punitive damages only:

11       "Fraud" means an intentional misrepresentation, deception or concealment of a material

12   fact known to a defendant with the intent to deprive Oracle America and/or Oracle International

13   Corporation of rights or property or to otherwise injure Oracle America and/or Oracle

14   International Corporation.

15       "Oppression" means despicable conduct that subjects Oracle America and/or Oracle

16   International Corporation to cruel and unjust hardship with a conscious disregard of the rights of

17   the Oracle America and/or Oracle International Corporation.

18       "Malice" means conduct which is intended to injure the Oracle America and/or Oracle

19   International Corporation or despicable conduct which is engaged in with a conscious disregard

20   of the rights or safety of Oracle America and/or Oracle International Corporation.

21       "Despicable conduct" means conduct that is so vile, base or contemptible that it would be

22   looked down upon and despised by ordinary, decent people.

23       "Conscious disregard" means knowledge of the probable harmful consequences of a

24   wrongful act and a willful and deliberate failure to avoid these consequences.

25       The purposes of punitive damages are to punish a wrongdoer that acts with fraud,

26   oppression and/or malice in harming a plaintiff and deter similar conduct in the future, not to

27   make the plaintiff whole for its injuries. Consequently, a plaintiff is never entitled to punitive

28   damages as a matter of right and whether to award punitive damages against a Defendant is

1   entirely within your discretion.

2        You are only asked to decide whether punitive damages would be proper and justified in

3   this case. You are not asked at this time to determine an amount of punitive damages. If you

4   decide that punitive damages should be awarded against a Defendant, a limited hearing will

5   follow the return of your verdict in which the parties may present relevant evidence bearing upon

6   the amount of punitive damages.

7   **RIMINI'S ARGUMENT IN SUPPORT OF MODIFICATIONS:**

8        The revision makes clear that punitive damages are not available for a copyright

9   infringement claim. *Reinicke v. Creative Empire, LLC*, 2013 WL 275900, at *4 (S.D. Cal. Jan.

10  24, 2013) ("Punitive damages are not available under the Copyright Act.  [citation]  Numerous

11  district court cases in the Ninth Circuit has followed this holding.") (collecting authority").

12  Because this is primarily a copyright infringement case, this addition provides clarity on an issue

13  that the jury will no doubt (and should) wonder – whether it can award punitive damages for the

14  principle allegation against Defendants.  It does not prejudice Oracle to have the jury so

15  instructed on this critical issue, but there is a substantial risk of prejudice to Rimini Street from

16  potential confusion as to whether punitive damages are available for copyright infringement

17  claims absent this instruction.

18

19

20

21

22

23

24

25

26

27

28

**RIMINI'S ARGUMENT IN SUPPORT OF ADDITIONAL PUNITIVE DAMAGES INSTRUCTIONS:**

Rimini is entitled to its additional punitive damages instructions D-42 ("Purpose"), D-44 ("Specific Harm to Plaintiff"), D-45 ("Objectively Reasonable Conduct"), D-46 ("Industry Standards"), and D-47 ("Fair Notice"). In *Philip Morris USA v. Williams*, 549 U.S. 346 (2007), the Supreme Court reversed a punitive damages award when the trial court rejected a proposed jury instruction that was necessary to protect against the risk of an erroneous or excessive punitive damages award. The Court stated that "*a court, upon request, **must** protect against th[e] risk*" of the incorrect imposition of punitive damages. *Id.* at 357 (emphasis added). Rimini's proposed punitive damages instructions are specific, non-argumentative statements designed to protect against the risk of the incorrect or excessive imposition of punitive damages, and they are required by *Philip Morris v. Williams*. And these instructions cannot first be given in the punitive damages phase of the trial—since the jury will be deciding the availability of punitive damages in this first phase, the jury must receive all the punitive damages instructions necessary to protect against the risk of arbitrary and unconstitutional punishment. *See also Holdgrafer v. Unocal Corp.*, 160 Cal. App. 4th 907, 933 (2008) (stating, "[i]n cases such as this where there is a significant risk that the jury will be confused on th[e] issue [of punitive damages], the court ***must*** protect against that risk by giving a limiting instruction when requested by the defendant" and reversing lower court for failing to offer an instruction requested by defendant that was consistent with *State Farm* and would have instructed the jury to not consider harm to third parties) (emphasis added). Rimini maintains that the instructions it has proposed are required in order to protect against that risk.

Oracle did not dispute the propositions of law in those instructions. Those instructions are non-argumentative and fully supported by law, and are necessary to protect against the risk of the jury improperly imposing punitive damages and to fully and correctly cover the substance of the applicable law. They "must" be given to the jury. *Williams*, 549 U.S. at 357.

1   **J-40: PUNITIVE DAMAGES - OFFICER, DIRECTOR, OR MANAGING AGENT**

2       Because Rimini Street is a corporation, Oracle America and/or Oracle International

3   Corporation must prove at least one of the following by clear and convincing evidence in order

4   for punitive damages to be available:

5       1.      That the malice, oppression, or fraud was conduct of one or more officers,

6   directors, or managing agents of Rimini Street, who acted on behalf of Rimini Street;

7       2.      That the conduct constituting malice, oppression, or fraud was authorized by one

8   or more officers, directors, or managing agents of Rimini Street;

9       3.      That one or more officers, directors, or managing agents of Rimini Street knew of

10   the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after

11   it occurred.

12       An employee is a "managing agent" if he or she exercises substantial independent

13   authority and judgment in his or her corporate decision making such that his or her decisions

14   ultimately determine corporate policy.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **J-45: RETURN OF VERDICT**

2          A verdict form has been prepared for you. After you have reached unanimous agreement

3    on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it,

4    and advise the court that you are ready to return to the courtroom.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

1    **P-48: VERDICT FORM - DUPLICATIVE DAMAGES (WITH MODIFICATIONS)**

2    Oracle America and Oracle International Corporation seek an award of damages under

3    multiple claims or legal theories.

4    After each claim or legal theory on your verdict form, there is a space for the amount of

5    damages, if any, that you intend to award Oracle America and/or Oracle International

6    Corporation under that claim or legal theory. The amount you enter into these spaces should

7    include all the damages that you conclude Oracle America and/or Oracle International

8    Corporation may recover on that claim or legal theory, regardless whether the same damages are

9    duplicated under another claim or legal theory.

10   However, Oracle America and Oracle International Corporation can only recover once

11   for each harm or item of damage. Therefore, at the end of the form there are spaces for the "total

12   non-duplicative damages" against each Defendant.

13   You are instructed to write the total amount of damages you intend to award to Oracle

14   America and/or Oracle International Corporation for all the harm caused by all the violations for

15   which you found that Defendant liable, without counting damages for the same harm twice as to

16   that Defendant. When determining this total amount you must exclude the amount you found as

17   statutory damages under the Copyright Act.

18   For example, if you find for Oracle America and/or Oracle International Corporation on

19   more than one claim, and conclude that Oracle America and/or Oracle International Corporation

20   suffered the same harm and is entitled to the same damages on more than one claim, only include

21   those damages once in the "total non-duplicative damages." Likewise, if you conclude that

22   Oracle America and/or Oracle International Corporation suffered different and distinct harm on

23   different claims, resulting in different damages on those claims, you should add the different

24   damages figures resulting from those claims together for the "total non-duplicative damages"

25   number.

26

27

28

1    **J-44: COMMUNICATION WITH COURT (W/ MODS)**

2            If it becomes necessary during your deliberations to communicate with me, you may send

3    a note through the marshal, signed by your presiding juror or by one or more members of the

4    jury.  No member of the jury should ever attempt to communicate with me except by a signed

5    writing; I will communicate with any member of the jury on anything concerning the case only

6    in writing, or here in open court. If you send out a question, I will consult with the parties before

7    answering it, which will likely take some time. You may continue your deliberations while

8    waiting for the answer to any question.  Remember that you are not to tell anyone including me

9    how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict

10   or have been discharged. Do not disclose any vote count in any note to the court.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DUTY TO DELIBERATE (COURT CREATED)**

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions. However, nothing that I have said or done is intended to suggest what your verdict should be   that is entirely for you to decide.

The arguments and statements of the attorneys are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember.

After you have reached unanimous agreement on a verdict, your foreperson will complete the verdict form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

1     DATED:     October 3, 2015     GIBSON, DUNN & CRUTCHER LLP

2

3                                        By:___/s/ Blaine H. Evanson_____

4                                        Blaine H. Evanson

5                                        *Attorneys for Defendants*
                                           *Rimini Street, Inc. and Seth Ravin*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By:   */s/ Blaine H. Evanson*
Blaine H. Evanson

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*

RIMINI'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS