SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nevada Bar No. 5566)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>      Plaintiffs,<br><br> v.<br><br>RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual,<br><br>      Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S RENEWED RULE 50(A) MOTION AND TRIAL BRIEF RE PUNITIVE DAMAGES PHASE**<br><br>Judge:  Hon. Larry R. Hicks |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD ..........................................................................................2

III.   ARGUMENT .......................................................................................................3

       A.    Any Punitive Damages Award Cannot Stand as a Matter of Law. ............................3

       B.    Heightened Protections Govern the Evidence and Argument in a Punitive
             Damages Phase. ................................................................................................5

             1.    The Court Should Allow Certain Evidence of Rimini's Financial
                   Condition. .................................................................................................6

             2.    The Court Should Allow Evidence of Rimini's Mitigating Conduct. ...........9

             3.    The Court Should Allow Evidence that Rimini's Conduct Was
                   Objectively Reasonable. ...........................................................................11

             4.    Rimini's Desire to Compete and Oracle's Attempts to Suppress
                   Competition Are Both Highly Relevant to Punitive Damages. ...................12

             5.    The Court Should Prevent the Jury from Considering Any Harm
                   Caused to Non-Parties. ............................................................................13

             6.    TomorrowNow Evidence Is Irrelevant and Unduly Prejudicial, and
                   Should Be Totally Absent from a Punitive Damages Phase. ........................14

IV.    CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Murakami*,
   813 P.2d 1348 (Cal. 1991) ............................................................................................. 6

*Albert H. Wohlers & Co. v. Bartgis*,
   969 P.2d 949 (Nev. 1998) ......................................................................................... 6, 8

*Am. Airlines, Inc. v. Sheppard*,
   96 Cal. App. 4th 1017 (2002) ...................................................................................... 3

*Baxter v. Peterson*,
   150 Cal. App. 4th 673 (2007) ...................................................................................... 7

*BMW of N. Am. v. Gore*,
   517 U.S. 559 (1996) ............................................................................................. 10, 13

*Bongiovi v. Sullivan*,
   138 P.3d 433 (Nev. 2006) ............................................................................................ 2

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981) ..................................................................................................... 6

*Clark v. Lubritz*,
   113 Nev. 1089 (1997) .................................................................................................. 3

*College Hospital, Inc. v. Superior Court*,
   8 Cal. 4th 704 (1994) ............................................................................................. 1, 3

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*,
   532 U.S. 424 (2001) ................................................................................................... 10

*Crockett v. Sahara Realty Corp.*,
   591 P.2d 1135 (Nev. 1979) ........................................................................................ 12

*Dillard Dept. Stores, Inc. v. Beckwith*,
   989 P.2d 882 (Nev. 1999) ............................................................................................ 6

*Evans v. Dean Witter Reynolds, Inc.*,
   5 P.3d 1043 (Nev. 2000) ......................................................................................... 2, 6

*Ford v. GACS, Inc.*,
   265 F.3d 670 (8th Cir. 2001) .................................................................................... 10

*Hale v. Riverboat Casino, Inc.*,
   682 P.2d 190 (Nev. 1984) ............................................................................................ 6

*Kelly v. Haag*,
   145 Cal. App. 4th 910 (2006) .................................................................................. 7, 9

*Kenly v. Ukegawa*,
   16 Cal. App. 4th 49 (1993) ......................................................................................... 8

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kwan v. Mercedes-Benz of N. Am., Inc.,*
23 Cal. App. 4th 174 (1994) ................................................................................ 12

*Lara v. Cadag,*
13 Cal. App. 4th 1061 (1993) ................................................................................ 8

*Marriott v. Williams,*
152 Cal. 705 (1908) ................................................................................ 9

*Mike Davidov Co. v. Issod,*
78 Cal. App. 4th 597 (2000) ................................................................................ 7

*Nortica v. State Compensation Ins. Fund,*
70 Cal. App. 4th 911 (1999) ................................................................................ 7

*Pac. Mut. Life Ins. Co. v. Haslip,*
499 U.S. 1 (1991) ................................................................................ 1

*Philip Morris USA v. Williams,*
594 U.S. 346 (2007) ................................................................................ 1, 10, 13, 14

*Robert L. Cloud & Assocs., Inc. v. Mikesell,*
69 Cal. App. 4th 1141 (1999) ................................................................................ 8

*Safeco Ins. Co. of Am. v. Burr,*
127 S. Ct. 2201 (2007) ................................................................................ 12

*Scott v. Phoenix Sch., Inc.,*
175 Cal. App. 4th 702 (2009) ................................................................................ 3

*Soto v. BorgWarner Morse TEC Inc.,*
239 Cal. App. 4th 165 (2015) ................................................................................ 8, 9

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003) ................................................................................ 1, 13, 14

*Swinton v. Potomac Corp.,*
270 F.3d 794 (9th Cir. 2001) ................................................................................ 2, 10, 11

*Taylor v. Superior Court,*
24 Cal. 3d 890 (1979) ................................................................................ 3

*TXO Prod. Corp. v. Alliance Res. Corp.,*
509 U.S. 443 (1993) ................................................................................ 6

*White v. Ford Motor Co.,*
500 F.3d 963 (9th Cir. 2007) ................................................................................ 7

*Wilson v. Pacific Maxon,*
686 P.2d 235 (Nev. 1984) ................................................................................ 9

*Zhadan v. Downtown L.A. Motor Distributors, Inc.,*
100 Cal. App. 3d 821 (1979) ................................................................................ 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

Nev. Rev. Stat. § 42.001 ..................................................................................................... 3

Nev. Rev. Stat. § 42.001(2) ................................................................................................. 4

Nev. Rev. Stat. § 42.005(1) ................................................................................................. 6

# I.    INTRODUCTION

"[P]unitive damages pose an acute danger of arbitrary deprivation of property." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).  They are "quasi-criminal" in nature and "concerns of reasonableness and adequate guidance from the court … enter into the constitutional calculus" "when the case is tried to a jury." *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991); *see also Philip Morris USA v. Williams*, 594 U.S. 346, 353 (2007) ("Given the risks of unfairness [in a punitive damages award] … , it is constitutionally important for a court to provide assurance that the jury will ask the right question, not the wrong one").

Any finding by the jury that punitive damages are available cannot stand as a matter of law.  Punitive damages are legally unavailable for the reasons previously briefed by defendants Rimini Street, Inc. and Seth Ravin (collectively, "Rimini"), including that the computer hacking claims are unavailable and do not support punitive damages as a matter of law, copyright infringement does not give rise to punitive damages, and several other reasons.  *See* Dkt. 838 at 19-22.  Oracle's closing argument identified no cognizable basis for imposing punitive damages, arguing only that Rimini's conduct was intentional, focusing on copyright infringement, and relying heavily on TomorrowNow after informing this Court it would not (and after the Court expressly stated there was no evidence that TomorrowNow infringed).  But it is well-established that intentional conduct alone does not give rise to punitive damages.  *E.g.*, *College Hospital, Inc. v. Superior Court*, 8 Cal. 4th 704, 725 (1994) (despicable conduct must be "more than a 'willful and conscious' disregard of the plaintiffs' interests").  And Oracle's impermissible use of TomorrowNow in closing and throughout trial cannot sustain a punitive damages award.  In short, if the jury finds Rimini liable for punitive damages, that finding must be vacated as a matter of law, and there should not be a punitive damages phase.

In the event the case nonetheless proceeds to a punitive damages phase, Rimini seeks certain evidentiary rulings from this Court to protect Rimini's due process rights surrounding the imposition of punitive damages.  The twin purposes of punitive damages are "deterrence and retribution." *State Farm*, 538 U.S. at 416.  In light of those goals and the heightened constitutional concerns surrounding punitive damages, evidentiary considerations change during the punitive damages phase of trial.  As the Ninth Circuit has explained:  "Given the fact of different standards for the imposition

of liability and the award of punitive damages, it is not unreasonable to conclude that evidence that may be irrelevant to proving the former is nevertheless relevant to demonstrating the appropriateness of the latter." *Swinton v. Potomac Corp.*, 270 F.3d 794, 812 (9th Cir. 2001).   Thus, while maintaining its objections that punitive damages are unwarranted as a matter of law, Rimini seeks *in limine* rulings by the Court to permit it to introduce certain evidence and make certain arguments and to limit certain evidence and arguments by Oracle if the case proceeds to a punitive damages phase.

## II.      LEGAL STANDARD

"A plaintiff is never entitled to punitive damages as a matter of right."  *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1052 (Nev. 2000) (citations and internal quotation marks omitted); *see Bongiovi v. Sullivan*, 138 P.3d 433, 581 (Nev. 2006).[1]   Rimini will separately propose jury instructions that are necessary in addition to the Nevada model jury instructions, but Nevada Model Jury Instruction 12PD.2 identifies the general inquiry that the jury must analyze when determining the amount, if any, of punitive damages:

1.      The degree of reprehensibility of the defendant's conduct, in light of (a) the culpability and blameworthiness of the defendant's fraudulent, oppressive and/or malicious misconduct under the circumstances of this case; (b) whether the conduct injuring plaintiff[s] that warrants punitive damages in this case was part of a pattern of similar conduct by the defendant; and (c) any mitigating conduct by the defendant, including any efforts to settle the dispute.

2.      The ratio of your punitive damage award to the actual harm inflicted on the plaintiff[s] by the conduct warranting punitive damages in this case, since the measure of punishment must be both reasonable and proportionate to the amount of harm to the plaintiff[s] and to the compensatory damages recovered by the plaintiff[s] in this case.

3.      How your punitive damages award compares to other civil or criminal penalties

---

[1]   As this Court previously recognized, Nevada law controls the determination of punitive damages in this case.   Dkt. 717 at 3 ("If the jury finds that punitive damages are warranted in this action, the court shall then hold a second phase of the trial with the same jury to determine the amount of punitive damages to be awarded in accordance with Nevada law").

that could be imposed for comparable misconduct, since punitive damages are to provide a means by which the community can express its outrage or distaste for the misconduct of a fraudulent, oppressive or malicious defendant and deter and warn others that such conduct will not be tolerated.

Nevada Model Jury Instruction 12PD.2.

### III.   ARGUMENT

**A.   Any Punitive Damages Award Cannot Stand as a Matter of Law.**

There is no legal basis upon which a finding of punitive damages liability can be sustained, and Rimini renews its Rule 50(a) motion for judgment as a matter of law on punitive damages.  *See* Dkt. 838 at 19.

Oracle's closing argument did not identify any permissible basis for awarding punitive damages.  Oracle's counsel argued a selective and incomplete piece of the proper legal standard to the jury, telling the jury that Rimini was liable for punitive damages based on fraud and conscious disregard, and then summarizing as follows:  "So the questions are did they know; and was it intentional?"  10/6 Tr. 3464:22-3465:5.  That is not a sufficient basis for punitive damages as a matter of law.  If the jury finds punitive damages liability, that finding should be vacated, and the Court should not hold a second phase of trial.

Intentional conduct alone is *not sufficient* to sustain an award of punitive damages.  Instead, there must be a level of *despicable* conduct in addition to intentional conduct.  *See* Nev. Rev. Stat. § 42.001.  "Despicable" refers to conduct "that is ... 'so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people,'" or, put another way, to actions having "the character of outrage frequently associated with crime."  *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (quoting *Am. Airlines, Inc. v. Sheppard*, 96 Cal. App. 4th 1017, 1051 (2002)); *see College Hospital*, 8 Cal. 4th at 725 (despicable conduct must be "more than a 'willful and conscious' disregard of the plaintiffs' interests") (citation omitted); *Taylor v. Superior Court*, 24 Cal. 3d 890, 895 (1979) (there must be evidence of an "evil motive").[2]

---

[2]  California cases on punitive damages provide authority in Nevada.  *See Clark v. Lubritz*, 113 Nev. 1089, 1096 n.6 (1997).

Oracle's closing argument did not identify *any* despicable, malicious, or wanton misconduct that could give rise to a punitive damages award.

Oracle argued that punitive damages should be awarded by relying on conduct that was legally irrelevant to a potential punitive damages award.  For example:

| __Oracle's Statement__ | __Legally Irrelevant__ |
|---|---|
| "First of all, customers warned Rimini that what they were doing was illegal.  Here's a list of customers saying that what Rimini would do would violate Oracle's copyright agreements." (10/6 Tr. 3465:8-9) | Relates only to copyright infringement. |
| "Mr. Ravin knew he was lying to customers about what he was telling them.  He told them that that provision in the license agreement only applied to systems used in production, not other environments."  (10/6 Tr. 3466:19-22) | Relates only to copyright infringement. |
| "Seth Ravin's legal advice was wrong, and he knew that.  He knows that when he tells a customer that Texas means California, that that's misleading people."   (10/6 Tr. 3467:18-20) | Relates only to copyright infringement. |
| "[T]here's a whole collection of documents in this case where there are things you just don't say if you're innocent." (10/6 Tr. 3468:17-19) | Examples provided by Oracle's counsel relate to copyright infringement. |
| "[T]his all leads back to Seth Ravin.  He was focused on building a business, a business that we now know never would have existed if they weren't violating Oracle's copyrights." (10/6 Tr. 3473:4-7) | Relates only to copyright infringement. |

These arguments do not establish copyright infringement or actionable misstatements, let alone misrepresentations made "with the intent to deprive another person of his or her rights or property or to otherwise injure another person."  Nev. Rev. Stat. § 42.001(2).

Oracle also relied heavily on TomorrowNow as a basis for punitive damages, over Rimini's objection (10/6 Tr. 3359:16-25), in direct contravention of Oracle's representation to this Court that "Oracle does not rely on Ravin's previous employment with TomorrowNow and the subsequent lawsuit brought against TomorrowNow for Oracle's argument that the Defendants acted with malice and conscious disregard" (Dkt. 843 at 24 n.12), and even though the Court said expressly before closing arguments began that "it would be improper for Oracle to be arguing that TomorrowNow and/or CedarCrestone were, in fact, infringing alternatives" (10/6 Tr. 3345:14-16; *see also id.* 3343:6-

9, 3344:13-18 (no evidence in record of whether TomorrowNow infringed)).  When discussing why punitive damages should be awarded, Oracle's counsel put up a slide "show[ing] when the conduct at issue in the TomorrowNow lawsuit started, and that is after Seth Ravin gets there and before he leaves" (10/6 Tr. 3470:14-16), and told the jury that "Seth Ravin was paying attention to his former company, TomorrowNow" (*id.* 3470:8-9); "in 2007, in July, right in the middle of the time period at issue in this case, SAP, the parent company of TomorrowNow, admitted wrongdoing and demoted the CEO" (*id.* 3470:19-22); "TomorrowNow discontinued local environments on its systems.  That's the same practice that Rimini Street continued, knowing that TomorrowNow stopped it" (*id.* 3470:23-25); and specifically because of TomorrowNow, punitive damages should be awarded based on Oracle's explanation of the legal standard:  "So did they know that they were doing this, ladies and gentlemen?  Was it intentional?  Of course, it was." *Id.* 3471:7-9.  That was impermissible argument and contrary to Oracle's own representations and the Court's instruction.  In light of the Court's admonition as well as the express instruction on TomorrowNow, there can be no finding of willfulness or punitive damages based on TomorrowNow as a matter of law.

Accordingly, the Court should grant judgment as a matter of law in favor of Rimini on punitive damages, and there should not be a second phase of trial.

**B.**    **Heightened Protections Govern the Evidence and Argument in a Punitive Damages Phase.**

If the jury finds punitive liability and the Court proceeds with a punitive damages phase of trial, there are heightened protections available to Rimini that the Court must consider in admitting evidence and excluding arguments from Oracle.  If there is a punitive damages phase, Rimini seeks to present four general categories of evidence:  (1) evidence of Rimini's current financial condition, (2) Rimini's efforts to remedy its conduct, (3) evidence of industry custom, and (4) evidence related to competition.  Rimini further seeks to (5) preclude evidence related to harm to third parties and to argue that Oracle seeks to punish Rimini for harm caused to non-parties, *i.e.*, customers, and (6) preclude any reference to TomorrowNow.  For the reasons set forth below, these requests are fully supported under the law and are essential to permit Rimini the full and fair opportunity to present its defense.

**1.     The Court Should Allow Certain Evidence of Rimini's Financial Condition.**

It is a "simple principle … well understood by the bench" and "axiomatic to the bar" that punitive damages cannot be awarded absent "meaningful evidence of the defendant's financial condition." *Adams v. Murakami*, 813 P.2d 1348, 1349, 1351 (Cal. 1991).  This is because punitive damages are not designed to compensate the plaintiff, but are awarded instead "for the sake of example and by way of punishing the defendant."  Nev. Rev. Stat. § 42.005(1); *see Evans*, 5 P.3d at 1052.  The proper amount to punish and deter "cannot be answered in the abstract."  *Adams*, 813 P.2d at 1350.

It is therefore "well-settled" that evidence of the defendant's financial condition is relevant to the assessment of punitive damages.  *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages"); *see, e.g., City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882 (Nev. 1999) ("The wealth of a defendant is directly relevant to the size of [a punitive damages] award, which is meant to deter the defendant from repeating his misconduct as well as punish him for his past behavior") (quotation omitted); *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 962 (Nev. 1998) (punitive damages that were twenty-one percent of company's net worth, based on evidence presented during punitive damages phase, were excessive); *Adams*, 813 P.2d at 1350-51 ("Because the quintessence of punitive damages is to deter future misconduct by the defendant," there must be "evidence of the defendant's financial condition").

Under Nevada law, a punitive damages award cannot "financially annihilate or destroy the defendant in light of the defendant's financial condition."  Nevada Model Jury Instruction 12.PD.2; *see Beckwith*, 989 P.2d at 888 (award cannot "financially destroy or annihilate" defendant); *Hale v. Riverboat Casino, Inc.*, 682 P.2d 190, 194 (Nev. 1984) (same); *see also Adams*, 813 P.2d at 1352 ("the purpose of punitive damages is not served by financially destroying a defendant.  The purpose is to deter, not to destroy").

Because Rimini's financial condition is a key factor in determining punitive damages, Rimini seeks an order allowing it to introduce into evidence and make arguments regarding the following:

1.  Rimini's net worth;

2.  Rimini's profits and losses;

3.  Mr. Ravin's net worth (with and without his Rimini stock);

4.  Additional amounts that may be added to Oracle's judgment, including prejudgment interest, costs, and attorneys' fees; and

5.  The likelihood of bankruptcy arising from an award of punitive damages and the effect of bankruptcy on Rimini's employees and customers.

All of this evidence is necessary to present a full and fair picture of Rimini's current financial condition.  *See White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007) ("Determining what amount of punitive damages will 'sting' the defendant requires consideration of its *total* wealth, not merely wealth derived from wrongdoing") (applying Nevada law) (emphasis in original).  It is also necessary evidence for the jury to fully understand the amount of punitive damages that may be awarded to achieve deterrence and retribution without annihilating Rimini in light of Rimini's current financial condition, as well as the potential effects of a large punitive damages award.  *See*, *e.g.*, *Nortica v. State Compensation Ins. Fund*, 70 Cal. App. 4th 911, 952 (1999) ("The goal is to award an amount of punitive damages that is sufficient to deter the conduct but is not excessive…. The record demonstrates that the jury most likely did not fully appreciate the effect an award of punitive damages would have on other [third parties]").

Oracle may seek to encourage the jury to award punitive damages based on Rimini's revenue alone.[3]  Any such argument would be improper under well-established law.  *See*, *e.g.*, *Baxter v. Peterson*, 150 Cal. App. 4th 673 (2007) (evidence of assets insufficient without evidence of liabilities); *Kelly v. Haag*, 145 Cal. App. 4th 910 (2006) (same); *Mike Davidov Co. v. Issod*, 78 Cal. App. 4th 597, 607 (2000) ("the defendant's annual income, standing alone, is not 'meaningful

---

[3]  Oracle has indicated it seeks to admit PTX 6011, 6012, and 6013 for a potential punitive damages phase.  Those documents are Rimini press releases that describe revenue, not the company's overall financial condition.

evidence'"); *Robert L. Cloud & Assocs., Inc. v. Mikesell*, 69 Cal. App. 4th 1141, 1152 (1999) (same); *Kenly v. Ukegawa*, 16 Cal. App. 4th 49, 57 (1993) (same); *Lara v. Cadag*, 13 Cal. App. 4th 1061, 1065 (1993) (same).  Just a few months ago, the California Court of Appeal struck a punitive damages award as a matter of law when the plaintiff relied on the defendant's revenue to establish its financial condition.  *See Soto v. BorgWarner Morse TEC Inc.*, 239 Cal. App. 4th 165 (2015).  The court explained that "the 'net' concept of the net worth metric remains critical" and "evidence of earnings or profit alone are not sufficient 'without examining the liabilities side of the balance sheet.'"  *Id.* at 194 (citing cases).  It would therefore be improper for Oracle to put up large revenue numbers in front of the jury without also presenting expenses and liabilities because that would be an improper attempt to inflate the punitive damages award, which would not survive appeal under well-established law.  *See Bartgis*, 969 P.2d at 962 (examining net worth of defendant); *Soto*, 239 Cal. App. 4th at 194-95 (striking punitive damages award as matter of law because "revenue alone provides little information about a defendant's ability to pay punitive damages"); *Mikesell*, 69 Cal. App. 4th at 1152 ("only one side of the financial picture" insufficient to sustain punitive damages award).

Oracle may even seek to go one step further and encourage the jury to award punitive damages based on Rimini's hypothetical and speculative market value.  Oracle seeks to admit in a punitive damages stage PTX-12, an email from 2007 in which Seth Ravin explains that he thinks the company should be valued at "4x revenue."  That document is plainly irrelevant and should not be admitted.  Under no circumstances would it be proper to allow Oracle to argue to the jury that the jury should multiply Rimini's revenue by four, based on a theory of potential market value, and then award punitive damages based on that number.  That number has no bearing on Rimini's ability to pay a punitive damages award.  And encouraging the jury to award punitive damages based on *four times the defendant's revenue* would be a blatant and legally improper attempt to encourage financial annihilation of the defendant, in violation of the Due Process Clause and case law from the highest courts of Nevada, California, and the United States.

Additionally, evidence related to Rimini's financial condition must describe Rimini's financial condition at the time of trial.  *See Zhadan v. Downtown L.A. Motor Distributors, Inc.*, 100

Cal. App. 3d 821, 839 (1979) ("the jury should make its determination of the punitive damages based on defendant's net worth *at the time of trial*") (emphasis added) (citing *Marriott v. Williams*, 152 Cal. 705, 710 (1908)); *accord Soto*, 239 Cal. App. 4th at 195; *Kelly*, 145 Cal. App. 4th at 915.  It would be improper for Oracle to present stale financial condition evidence or numbers not related to Rimini's financial condition as of 2015 (or 2014 at the earliest).  This is another reason that PTX-12 should not be admitted:  it is from 2007 and is therefore irrelevant to Rimini's financial condition in 2015.  *E.g.*, *Soto*, 239 Cal. App. 4th at 196 ("historical net revenue" "did not provide any of the requisite *current* information about [defendant's] overall financial condition") (emphasis added).

Finally, Oracle should be precluded from presenting evidence of Rimini's contractual "backlog" numbers.  PTX-6013, which Oracle seeks to admit, describes a "[t]otal bookings backlog" of "$1.6 billion."   That is a misleading number that will confuse the jury and unduly prejudice Rimini's due process rights.  As Mr. Ravin explained at trial, backlogs are "like aircraft orders that the customer can cancel, they're not really committed, but they give you an idea of the future."  9/16 Tr. 445:10-12.  They are a "future" "uncommitted amount" designed to estimate the total that "all of our customers together" "could potentially buy," but it is not an amount that Rimini has "in the bank."  9/17 Tr. 641:12-20.   Thus, they "do[n't] mean anything on itself" because "[i]t's not guaranteed money or anything."  *Id.* 641:24-25.  This number does not represent Rimini's current financial condition and is therefore meaningless to demonstrating Rimini's actual ability to pay, but it will have the impermissible effect of confusing the jury by suggesting a number many factors north of Rimini's actual financial condition.[4]

### 2.    The Court Should Allow Evidence of Rimini's Mitigating Conduct.

When analyzing the reprehensibility of the defendant's conduct, the jury should consider "any mitigating conduct by the defendant."  Nevada Model Jury Instruction 12PD.2; *see Wilson v. Pacific Maxon*, 686 P.2d 235, 237 (Nev. 1984) ("We hold that the trier of fact, in assessing punitive

---

[4]  Rimini recognizes that the Court previously denied its motion *in limine* on this topic based on the reasoning that Rimini used the number to gain new customers.  Dkt. 721 at 4-5.  In the punitive damages phase, however, that rationale does not apply because Oracle would seek to introduce this evidence in order to establish Rimini's financial condition.  Because the backlog data would be misleading and would serve only to confuse the jury and encourage a punitive damages award far in excess of what can constitutionally be sustained, this evidence should be excluded.

1   damages, may consider all the circumstances attending the particular transaction involved, including

2   any mitigating circumstances") (citation omitted).

3        Evidence of Rimini's efforts to take curative action is admissible in the punitive damages

4   phase of trial because it is directly relevant to the analysis of the reprehensibility of Rimini's conduct

5   and whether punitive damages are necessary to deter ongoing conduct.  *See*, *e.g.*, *Swinton*, 270 F.3d

6   794; *Ford v. GACS, Inc.*, 265 F.3d 670 (8th Cir. 2001).

7        In 2009, Rimini discontinued automated downloading, which was the predicate conduct upon

8   which Oracle asserted its Nevada and California computer hacking claims.  It was also conduct upon

9   which Oracle based its interference claim.  Additionally, shortly after the Court's February 13, 2014

10  summary judgment order, Rimini took remedial action by implementing a fully remotely hosted

11  model.  Rimini's 2014 conduct is highly relevant to the question of punishment and deterrence.

12  While copyright infringement does not give rise to punitive damages, Oracle's claimed

13  misrepresentations and intentional interference relate to the same underlying conduct as the copyright

14  infringement.[5]

15       Rimini therefore seeks an order allowing it to introduce into evidence and make arguments

16  regarding the dates and nature of curative action that Rimini engaged in to mitigate any harm it may

17  have caused through its accused acts.  *See Williams*, 594 U.S. at 357 ("we believe that where the risk

18  of that misunderstanding is a significant one—because, for instance, of the sort of evidence that was

19  introduced at trial or the kinds of argument the plaintiff made to the jury—a court, upon request, must

20  protect against that risk"); *BMW of N. Am. v. Gore*, 517 U.S. 559, 579 (1996) ("It is also significant

21  that there is no evidence that BMW persisted in a course of conduct after it had been adjudged

22  unlawful on even one occasion, let alone repeated occasions"); *Cooper Indus., Inc. v. Leatherman*

23  *Tool Group, Inc.*, 532 U.S. 424, 428 (2001) (describing in punitive damages context the remedial

24  actions taken by defendant after entry of a preliminary injunction); *Swinton*, 270 F.3d at (allowing

25  "evidence of remedial conduct undertaken in response to [defendant's] discovery of [unlawful

26  conduct] as a means to mitigate punitive damages").

27

28  _____

[5]  For this reason, the intentional interference claim is preempted.  *See* Dkt. 838 at 13.

In *Swinton*, the Ninth Circuit explained that if an employee filed a discrimination suit a week after he quit and the company responded promptly to address the alleged conduct, the company "would be *entitled* to present this evidence as tending to demonstrate that it was capable of mending its ways without being hit over the head with the club of a significant punitive damages award." *Swinton*, 270 F.3d at 815 n.7 (emphasis added).   That describes the facts here:   While Rimini reasonably disputed the interpretation of the customer licenses, once the Court entered its summary judgment order, Rimini "immediately undertook swift and decisive action to remedy the situation" by changing its processes and therefore is "entitled to present this evidence" to avoid "being hit over the head with the club of a significant punitive damages award." *Id.*

Such evidence is for the jury to weigh:   It could "cast a skeptical eye on such evidence of after-the-fact good works" or it might "find that such remedial acts were indeed bona fide efforts to repent and to prevent the reoccurrence of similar [unlawful conduct] in the future, thus lessening the need for additional deterrence in the form of punitive damages." *Id.* at 815.

### 3.   The Court Should Allow Evidence that Rimini's Conduct Was Objectively Reasonable.

During trial Rimini sought to present the videotaped deposition of Paul Simmons, the corporate designee of CedarCrestone, who was deposed in the case in 2011.   That deposition testimony would have shown it was "typical" in the industry for support providers to maintain local non-production environments on their servers if they had the client's permission to do so (*see* 9/29 Tr. 2560:1-2561:2), that third party agents are permitted to assist Oracle's licensees in using their software (*id*. at 2543:11-2544:16), that cloning was an "industry practice" (*id*. at 2546:13-2547:25), and that cross-use was permissible based on the customer's license agreement (*id*. at 2548:2-21).   The Court excluded that evidence on the basis that "there has been no foundation laid that Defendant Seth Ravin or Rimini were aware of or relied upon the essence of the testimony provided by Mr. Simmons in his Rule 30(b)(6) video deposition."  9/29 Tr. 2587:7-11.

Rimini respectfully disagrees with that ruling, but even if it were correct during the first phase of trial, Rimini *must* be permitted to introduce this evidence in defending against punitive damages. *See Swinton*, 270 F.3d at 812 (evidentiary considerations change with punitive damages phase).

Punitive damages should not be awarded when a defendant's actions were *objectively* reasonable—industry custom provides precisely this type of evidence, as this Court has recognized consistent with the U.S. Supreme Court.  *See* Phase 1 Instruction No. 58 ("Even if you find that punitive damages might be available, if you decided that Rimini Street and/or Seth Ravin acted based on an objectively reasonable belief that Rimini Street's and/or Seth Ravin's conduct was not unlawful, such as its interpretation of what the licenses allowed throughout the period from 2006 through 2011, then you must not award any punitive damages"); Order at 8, Dkt. 724 ("testimony about industry standards, customs, and practice is relevant to Oracle's claims for punitive damages").  The question whether conduct is *objectively* reasonable does not depend on whether the defendant heard or relied on the evidence regarding the industry's custom and practice; rather, the relevant point is that others in the industry were operating in the same way, and therefore the defendant's conduct, even if unlawful, was not so clearly outside the bounds that it warrants punishment through a punitive damages award.  *See, e.g.*, *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2215-16 (2007); *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 184-85 (1994).  Rimini should therefore be permitted to present the previously excluded video deposition testimony of Mr. Simmons.

### 4. Rimini's Desire to Compete and Oracle's Attempts to Suppress Competition Are Both Highly Relevant to Punitive Damages.

Rimini's intent, reiterated throughout trial, was to *lawfully* compete with Oracle.  *E.g.*, 9/16 Tr. 337:12-17; 9/17 Tr. 584:13-15, 633:12-17, 688:12-19.  Oracle acknowledged that third-party support is an option for customers so long as the support provider complies with the licenses.  *E.g.*, 9/21 Tr. 961:2-25, 993:20-24.  Rimini's desire and efforts to compete with Oracle in the software support market is laudable and vital to our economy, and should not be the basis for imposing punitive damages.

Rimini therefore should be permitted to introduce evidence and make argument that its intent was to lawfully compete with Oracle.  *See Crockett v. Sahara Realty Corp.*, 591 P.2d 1135, 1136 (Nev. 1979) ("the most significant privilege or justification for interference with a prospective business advantage is free competition").  Such an intent is directly relevant to the question of the reprehensibility of Rimini's conduct because it tends to demonstrate that Rimini's conduct was not

reprehensible.  *See State Farm*, 538 U.S. at 419 (one factor of the reprehensibility analysis is whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident"); *Gore*, 517 U.S. at 580 ("the omission of a material fact may be less reprehensible than a deliberate false statement, particularly when there is a good-faith basis for believing that no duty to disclose exists").

Additionally, Rimini should be permitted to argue, based on the evidence already presented at trial, that Oracle is seeking to prevent Rimini from competing.  The U.S. Supreme Court has explained that one of the factors guiding the reprehensibility inquiry is whether "the target of the conduct had financial vulnerability" (*State Farm*, 538 U.S. at 419; *see Gore*, 517 U.S. at 576 (same))—here, the opposite is true.  Part and parcel of Rimini's lawful attempts to compete are Oracle's demonstrated attempts to shut Rimini down.[6]  And evidence regarding Oracle's attempts to exclude all of its competitors in the software support market through aggressive litigation is necessary to provide the full context surrounding Oracle's claims and whether Rimini's conduct was sufficiently reprehensible to warrant punitive damages.  *See Williams*, 549 U.S. at 357 (when "the sort of evidence that was introduced at trial" and "the kinds of argument the plaintiff made to the jury" create risk of improper imposition of punitive damages, the court "must protect against that risk"); *Gore*, 517 U.S. at 576 ("not … all acts that cause economic harm … are sufficiently reprehensible to justify a significant sanction in addition to compensatory damages"); *see also* Nevada Model Jury Instruction 12PD.2 (must analyze reprehensibility "under the circumstances of this case").

## 5.    The Court Should Prevent the Jury from Considering Any Harm Caused to Non-Parties.

The "Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties … *i.e.,* injury that it inflicts upon those who are,

---

[6]  *See*, *e.g.*, 9/18 Tr. 842:11-13 (Q: "Does this mean the software actually has to be at the City of Flint"? A: "It does."); *id.* 845:7-10 (licenses do not include a "right to distribute the software" to third parties); *id.* 881:4-6, 882:5-6 (Rimini would have had to "acquire a license [from Oracle] for each customer," but Oracle would have been unlikely to have "provide[d]" Rimini a license); 9/22 Tr. 1307:25-1308:1 ("There's no way for a [third party] to deliver a critical fix on a solution that doesn't have a source code."); 9/29 Tr. 2492:1-3 (Oracle prices were "higher than they've ever been"); 10/2 Tr. 3111:19-24 (Oracle doesn't "negotiate the price"); *id.* 3103:12-18, 3105:15-20; *id.* 3128:24-3129:5 (Oracle has "the intellectual property to service" the software).

essentially, strangers to the litigation." *Williams*, 594 U.S. at 353; *see State Farm*, 538 U.S. at 423 ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis").  For example, during trial, Oracle presented evidence that defendants' third-party support and maintenance allegedly presents safety and security issues to Rimini's customers.  While Rimini categorically disagrees with this assertion, any evidence in a punitive damages phase concerning safety or security of Rimini's services is irrelevant and would have the impermissible effect of encouraging the jury to punish Rimini for injury inflicted upon nonparties, *i.e.*, Rimini's customers. Such evidence or argument would be improper and inadmissible.  *See*, *e.g.*, *State Farm*, 538 U.S. at 422 ("conduct must have a nexus to the specific harm suffered by the plaintiff").

Similarly, Oracle must be limited to presenting evidence that is directly related to the specific harm it claims it suffered.  *Id.*  Such evidence would include the *specific* harm caused by the automated downloading and the *specific* individual relationships with which the jury found Rimini intentionally interfered.  Anything broader would impermissibly encourage the jury to award punitive damages for hypothetical third-party claims or conduct without a nexus to the specific harm suffered by Oracle.

The flipside of the same coin is that Rimini must be able to inform the jury that the jury cannot punish Rimini for alleged harm to third parties.  *See Williams*, 594 U.S. at 355 ("the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers").  Rimini therefore requests that the Court allow it to introduce evidence and make argument that Oracle's requested relief for punitive damages is an attempt to punish Rimini for harm caused to non-parties (Rimini's customers) and that the actual harm suffered by Oracle is minimal.

### 6.     TomorrowNow Evidence Is Irrelevant and Unduly Prejudicial, and Should Be Totally Absent from a Punitive Damages Phase.

Any evidence related to TomorrowNow is irrelevant to Oracle's claim for punitive damages.  After wedging evidence of TomorrowNow into the liability phase in an effort to unduly prejudice Rimini's defense, Oracle subsequently claimed that it "does not rely on Ravin's previous

employment with TomorrowNow and the subsequent lawsuit brought against TomorrowNow" to seek punitive damages.  Dkt. 842 at 24 n.12.  Oracle then focused on TomorrowNow during the punitive damages portion of its closing argument (10/6 Tr. 3470-71), which was totally inappropriate.  During any punitive damages phase of trial, Rimini requests that the Court prohibit any evidence or argument related to TomorrowNow.

This request is consistent with the Court's own observations that "the evidence in front of the jury does not show that TomorrowNow or CedarCrestone was either infringing or noninfringing" (10/6 Tr. 3343:6-9); "the Court still doesn't have evidence in front of the Court, even considering everything and without regard to what the jury has heard, that the Court could make a legal conclusion that TomorrowNow and CedarCrestone were infringing alternatives" (*id.* 3344:14-18); and "I do not believe that either party should be arguing in closing arguments that TomorrowNow or CedarCrestone were either infringing or noninfringing" (*id.* 3344:25-3345:2).  The Court's observations were absolutely correct, and because there is no evidence that TomorrowNow was infringing, Rimini cannot be punished for continuing its operations after TomorrowNow shut down.

## IV.    CONCLUSION

For the foregoing reasons, Rimini renews its request for judgment as a matter of law in favor of Rimini on punitive damages.  To the extent a punitive damages phase is held, and without waiving its objections to the unavailability of punitive damages, Rimini alternatively requests that the Court allow Rimini to present evidence and argument related to Rimini's current financial condition, Rimini's mitigating conduct, evidence of industry custom, Rimini's attempts to lawfully compete, and Oracle's attempts to recover punitive damages on behalf of third parties, and that the Court prohibit Oracle from presenting evidence or argument related to incomplete or irrelevant financial information, third-party harm, or TomorrowNow.

DATED:        October 9, 2015              SHOOK, HARDY & BACON LLP

                                           By:   *Robert H. Reckers*
                                                 Robert H. Reckers

                                           *Attorneys for Defendants*
                                           *Rimini Street, Inc. and Seth Ravin*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2015, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.


By:   *Robert H. Reckers*
Robert H. Reckers

*Attorney for Defendants*
*Rimini Street, Inc. and Seth Ravin*