3907

1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
2          BEFORE THE HONORABLE LARRY R. HICKS, DISTRICT JUDGE

3

4   ORACLE USA, INC., a Colorado      :
    corporation; Oracle America,      :
5   Inc., a Delaware corporation;     :
    and Oracle International          :No. 2:10-cv-0106-LRH-PAL
6   Corporation, a California         :
    corporation,                      :
7                                     :
            Plaintiffs,               :
8                                     :
        vs.                           :
9                                     :
    RIMINI STREET, INC., a Nevada     :
10  corporation; and SETH RAVIN,      :
    an individual,                    :
11                                    :
            Defendants.               :
12  _____  :

13

14

                    TRANSCRIPT OF JURY TRIAL - DAY 21
15                   (Pages 3907 through 3961)

16

17                        October 13, 2015

18

                          Las Vegas, Nevada
19

20

21

22

    Court Reporter:        Donna Davidson, RDR, CRR, CCR 318
23                         Certified Realtime Reporter
                           400 South Virginia Street
24                         Reno, Nevada  89501
                           (775) 329-0132
25

3908

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3    BOIES, SCHILLER & FLEXNER LLP
      KIERAN P. RINGGENBERG
 4    1999 Harrison Street, Suite 900
      Oakland, California 94612
 5    (510) 874-1000
      Fax: (510) 874-1460
 6    kringgenberg@bsfllp.com

 7    BOIES, SCHILLER & FLEXNER LLP
      RICHARD J. POCKER
 8    300 South Fourth Street, Suite 800
      Las Vegas, Nevada 89101
 9    (702) 382-7300
      Fax: (702) 382-2755
10    rpocker@bsfllp.com

11    BOIES, SCHILLER & FLEXNER LLP
      WILLIAM A. ISAACSON
12    KAREN L. DUNN
      5301 Wisconsin Avenue, NW
13    Washington, DC  20015
      (202) 237-2727
14    Fax:  (202) 237-6131
      wisaacson@bsfllp.com
15    kdunn@bsfllp.com

16    MORGAN LEWIS & BOCKIUS LLP
      THOMAS S. HIXSON
17    NITIN JINDAL
      JOHN A. POLITO
18    One Market, Spear Street Tower
      San Francisco, California 94105
19    (415) 442-1000
      Fax:  (415) 442-1001
20    thomas.hixson@morganlewis.com
      nitin.jindal@morganlewis.com
21    john.polito@morganlewis.com

22    JAMES C. MAROULIS
      DORIAN E. DALEY
23    Oracle Corporation
      500 Oracle Parkway
24    Redwood City, California 94070
      (650) 506-4846
25    jim.maroulis@oracle.com
      dorian.daley@oracle.com
```

```
                                                              3909
 1                A P P E A R A N C E S  (Continued)

 2    FOR THE DEFENDANTS:

 3    SHOOK, HARDY & BACON LLP
      PETER E. STRAND
 4    B. TRENT WEBB
      RYAN D. DYKAL
 5    2555 Grand Boulevard
      Kansas City, Missouri 64108
 6    (816) 474-6550
      Fax: (816) 421-5547
 7    pstrand@shb.com
      bwebb@shb.com
 8    rdykal@shb.com

 9
      SHOOK, HARDY & BACON LLP
10    ROBERT H. RECKERS
      MICHAEL W. GRAY
11    600 Travis Street, Suite 3400
      Houston, Texas 77002
12    (713) 227-8008
      Fax: (713) 227-9508
13    rreckers@shb.com
      mgray@shb.com
14

15    SHOOK, HARDY & BACON LLP
      ANNIE Y.S. CHUANG
16    One Montgomery Tower, Suite 2700
      San Francisco, California 94104-4505
17    (415) 544-1900
      achuang@shb.com
18

19    LEWIS ROCA ROTHGERBER LLP
      W. WEST ALLEN
20    3993 Howard Hughes Parkway, Suite 600
      Las Vegas, Nevada 89169
21    (702) 949-8230
      Fax: (702) 949-8364
22    wallen@lrrlaw.com

23    GIBSON, DUNN & CRUTCHER LLP
      BLAINE H. EVANSON
24    333 South Grand Avenue
      Los Angeles, California 90071-3197
25    (213) 229-7000
      bevanson@gibsondunn.com
```

3910

LAS VEGAS, NEVADA, OCTOBER 13,2015, 10:30 A.M.

--oOo--

P R O C E E D I N G S

(Outside the presence of the jury.)

THE COURT:  Good morning.  Decision time.

Have a seat, please.

The record will show that we're in open court.
The jury is not yet present.  However, approximately half
an hour ago, which would have been about 10:00 a.m., give
or take 10 minutes, we received a note from the jury that
they had reached a verdict.

So at this time, let's bring the jury in,
please.

COURTROOM ADMINISTRATOR:  Yes, Your Honor.

They'll be in in just a minute.

THE COURT:  Okay.  The marshal will bring them
in?

COURTROOM ADMINISTRATOR:  Yes.

(Jurors enter courtroom at 10:32 a.m.)

THE COURT:  Good morning.  Have a seat, please.

The record will show that we're in open court.
The parties and counsel are present.  The jury is all
present.  And we received a note that the jury's reached a
verdict.

3911

1              And, \\\\\\\, I see you have the verdict

2     envelope.

3              Madam Clerk, would you please obtain the verdict

4     form.

5              COURTROOM ADMINISTRATOR:  Yes, Your Honor.

6              THE COURT:  I'm sure, ladies and gentlemen, that

7     you were stricken with how long the verdict form was too

8     and how many questions.  And it's -- one of my duties now,

9     before we take our next step of announcing the verdict, is

10    to review the form and ensure that it appears to follow

11    everything that was involved here.

12             All right.  Ladies and gentlemen, I've reviewed

13    the verdict form, and it appears to the Court to be

14    consistent.

15             Madam Clerk, would you please publish the jury's

16    verdict.

17             COURTROOM ADMINISTRATOR:  Yes, Your Honor.

18             In the case of Oracle USA, Inc., a Colorado

19    corporation; Oracle America, Inc., a Delaware corporation;

20    and Oracle International Corporation, a California

21    corporation, Plaintiffs, versus Rimini Street, Inc., a

22    Nevada corporation; and Seth Ravin, an individual,

23    Defendants.

24             In civil case 2:10-cv-0106-LRH-PAL.

25             We the jury, in the above-entitled case,

3912

1    unanimously find --

2                THE COURT:  Now, excuse me, Dionna.

3                Ladies and gentlemen, let me caution you.

4    Because of the length of the verdict, it's important that

5    you listen to how it's read from beginning to end because

6    at the end of that, I will ask you whether that verdict

7    truly and accurately reflects the verdict that all of you

8    reached in this case.

9                And so it's important that you be listening to

10   this.  Your work is not quite yet done.  So please listen.

11   And I'm sorry for interrupting.  I just wanted to make that

12   clear before we got into the actual reading of the awards.

13               Go ahead, please.

14               COURTROOM ADMINISTRATOR:  Yes, Your Honor.  We

15   the jury, in the above-entitled case, unanimously find as

16   follows:

17               Infringement.

18               Question 1:  PeopleSoft Documentation.

19               Has Oracle International Corporation proven by a

20   preponderance of the evidence that Rimini Street engaged in

21   copyright infringement by copying copyrighted PeopleSoft

22   documentation in a manner not authorized by the terms of

23   the PeopleSoft software license agreements that the Court

24   has explained to you?

25               Yes.

1          Question 2:  JD Edwards Software and

2   Documentation.

3          Has Oracle International Corporation proven by a

4   preponderance of the evidence that Rimini Street engaged in

5   copyright infringement by copying copyrighted JD Edwards

6   software and documentation in a manner not authorized by

7   the terms of the JD Edwards software license agreements

8   that the Court has explained to you?

9          Yes.

10          Question 3:  Siebel Software and Documentation.

11          Has Oracle International Corporation proven by a

12   preponderance of the evidence that Rimini Street engaged in

13   copyright infringement by copying copyrighted Siebel

14   software and documentation in a manner not authorized by

15   the terms of the Siebel software license agreements that

16   the Court has explained to you?

17          Yes.

18          Question 4:  Contributory Infringement.

19          Has Oracle International Corporation proven by a

20   preponderance of the evidence that defendant Seth Ravin

21   engaged in contributory copyright infringement of the

22   following Oracle International Corporation copyrighted

23   works?

24          PeopleSoft Software.  No.

25          PeopleSoft Documentation.  No.

1             JD Edwards Software and Documentation.   No.

2             Siebel Software and Documentation.   No.

3             Oracle Database.   No.

4             Question 5:   Vicarious Infringement.

5             Has Oracle International Corporation proven by a

6     preponderance of the evidence that defendant Seth Ravin

7     engaged in vicarious copyright infringement of the

8     following Oracle International Corporation copyrighted

9     works?

10            PeopleSoft Software.   No.

11            PeopleSoft Documentation.   No.

12            JD Edwards Software and Documentation.   No.

13            Siebel Software and Documentation.   No.

14            Oracle Database.   No.

15            Copyright Infringement Damages.

16            Question 6:   Actual Damages.

17            What do you find is the best measure of Oracle

18    International Corporation's actual damages for all acts of

19    copyright infringement engaged in by defendant Rimini

20    Street?

21            Fair Market Value License.

22            Regardless of whether you find that Lost Profits

23    or a Fair Market Value License is the best measure of

24    actual damages in this action, please answer all three of

25    the following questions concerning damages:   Questions 6a,

1    6b and 6c.  Your answer to the damages question that you

2    find is not the best measure of actual damages, either Lost

3    Profits or a Fair Market Value License, is advisory to the

4    Court only.

5              Question 6a.  Lost Profits.

6              What amount of Lost Profits, if any, has Oracle

7    International Corporation proven by a preponderance of the

8    evidence for all acts of copyright infringement engaged in

9    by defendant Rimini Street?  If you found in Questions 1

10   through 3 that defendant Rimini Street did not engage in

11   copyright infringement as to a particular copyrighted work,

12   please do not consider that copyrighted work in your

13   damages amount.

14             Total Lost Profits is zero.

15             Question 6b.  Defendant's Profits.

16             What amount of Rimini Street's Profits, if any,

17   has Oracle International Corporation proven by a

18   preponderance of the evidence for all acts of copyright

19   infringement engaged in by defendant Rimini Street?  If you

20   found in Questions 1 through 3 that defendant Rimini Street

21   did not engage in copyright infringement as to a particular

22   copyrighted work, please do not consider that copyrighted

23   work in your damages amount.

24             Total Amount of Defendant's Profits.  Zero.

25             Question 6c.  Fair Market Value License.

1          What amount do you find that Oracle

2   International Corporation has proven by a preponderance of

3   the evidence is the Fair Market Value License for all of

4   the infringed copyrighted works?  If you found in Questions

5   1 through 3 that defendant Rimini Street did not engage in

6   copyright infringement as to a particular copyrighted work,

7   please do not consider that copyrighted work in your

8   damages amount.

9          Total value of a Fair Market Value License is

10  $35,600,000

11          Question 7:  Contributory Infringement Damages.

12          If you found that defendant Seth Ravin engaged

13  in a contributory copyright infringement, which portion of

14  the actual damages award that you awarded against Rimini

15  Street do you find that defendant Seth Ravin is

16  contributorily liable for?  The actual damages award that

17  you should use for this question is whichever damages

18  theory -- either Lost Profits or a Fair Market Value

19  License -- that you determined is the best measure of

20  actual damages.

21          Contributory Damages Amount is zero.

22          Question 8:  Vicarious Infringement Damages.

23          If you found that defendant Seth Ravin engaged

24  in vicarious copyright infringement, which portion of the

25  actual damages award that you awarded against Rimini Street

1    do you find that defendant Seth Ravin is vicariously liable

2    for?  The actual damages award that you should use for this

3    question is whichever damages theory -- either Lost Profits

4    or a Fair Market Value License -- that you determined is

5    the best measure of actual damages.

6              Vicarious Damages Amount is zero.

7              Statutory Damages.

8              Regardless of your verdict under the section

9    Copyright Infringement Damages above, you must determine

10   the amount of statutory damages under the Copyright Act.

11   To determine the amount of statutory damages under the

12   Copyright Act, please answer the following questions.

13   Please note that in response to Questions 9 and 10,

14   copyright infringement need not be innocent or willful, but

15   can simply be infringement.  Questions 9 and 10 reflect

16   your finding as to special considerations for determining

17   statutory damages under the Copyright Act.  After

18   deliberating, it may be that your answers to both Questions

19   9 and 10 are no.  Such an answer is acceptable and

20   contemplated under the Copyright Act.

21             Question 9:  Innocent Infringement.

22             Do you find that defendant Rimini Street has

23   proven by a preponderance of the evidence that its

24   infringement, if any, of the following copyrighted works

25   was innocent as explained in the jury instruction entitled

1    Copyright Infringement - Damages - Innocent Infringement?

2              PeopleSoft Software.  Yes.

3              PeopleSoft Documentation.  Yes.

4              JD Edwards Software and Documentation.  Yes.

5              Siebel Software and Documentation.  Yes.

6              Oracle Database.  Yes.

7              If you found that defendant Rimini Street

8    engaged in innocent infringement as to all of the copyright

9    infringement that it engaged in, skip Question 10.

10   However, if you found that defendant Rimini Street did not

11   engage in innocent infringement as to all of the copyright

12   infringement that it engaged in, or that it engaged in

13   innocent infringement as to only some of the copyright

14   infringement that it was engaged in, answer Question 10.

15             Question 10:  Willful Infringement.

16             Do you find that plaintiff Oracle International

17   Corporation has proven by a preponderance of the evidence

18   that defendant Rimini Street's infringement, if any, of the

19   following copyrighted works was willful as explained in the

20   jury instruction titled Copyright Infringement Damages -

21   Willful Infringement?

22             PeopleSoft Software.  No.

23             PeopleSoft Documentation.  No.

24             JD Edwards Software and Documentation.  No.

25             Siebel Software and Documentation.  No.

1              Oracle Database.  No.

2              Question 11:  Statutory Damages.

3              You must now determine the amount of statutory

4      damages to award Oracle International Corporation under the

5      Copyright Act.  There are 100 copyright registrations

6      listed in your juror book.  The parties have agreed that no

7      more than 93 copyrighted works are eligible for statutory

8      damages.

9              You may award any amount between $200 and

10     $150,000 for each copyrighted work infringed, depending

11     upon your findings regarding intent in the above questions.

12     If you found that the infringement as to a particular

13     copyrighted work was innocent in Question 9, then you may

14     award between $200 and $30,000 for each copyrighted work.

15     However, if you found that the infringement as to a

16     particular copyrighted work was willful in Question 10,

17     then you may award between $750 and $150,000 for each such

18     copyrighted work.

19             The total number of copyrighted works for which

20     statutory damages is awarded is 93.

21             The total amount to be awarded for statutory

22     damages is $2,790,000.

23             Question 12:  Contributory Infringement.

24             If you found that defendant Seth Ravin engaged

25     in contributory copyright infringement, what portion of the

1    statutory damages award that you awarded against Rimini

2    Street do you find that defendant Seth Ravin is

3    contributorily liable for?

4              Contributory Statutory Damages Amount is zero.

5              Question 13:  Vicarious Infringement.

6              If you found that defendant Seth Ravin engaged

7    in vicarious copyright infringement, what portion of the

8    statutory damages award that you awarded against Rimini

9    Street do you find that defendant Seth Ravin is vicariously

10   liable for?

11             Vicarious Statutory Damages Amount is zero.

12             Inducing Breach of Contract/Intentional

13   Interference.

14             Question 14:  Inducing Breach of Contract.

15             Do you find that plaintiff Oracle America, Inc.,

16   has proven by a preponderance of the evidence that

17   defendant Rimini Street and/or Seth Ravin induced customers

18   of Oracle America, Inc., to breach their contracts with

19   Oracle America, Inc.?

20             Rimini Street.  No.

21             Seth Raven.  No.

22             If you answered yes to either defendant, what

23   amount of damages did the breach of contract cause to

24   Oracle America, Inc.?  If you did not answer yes to the

25   above question as to a particular defendant, please write

1    N/A in the appropriate space provided.

2            Rimini Street is zero.

3            Seth Ravin is zero.

4            Question 15:  Intentional Interference - Oracle

5    America, Inc.

6            Do you find that plaintiff Oracle America has

7    proven by a preponderance of the evidence that defendant

8    Rimini Street and/or Seth Ravin intentionally interfered

9    with economic relationships between Oracle America, Inc.,

10   and customers that probably would have resulted in an

11   economic benefit to Oracle America, Inc.?

12           Rimini Street.  No.

13           Seth Ravin.  No.

14           If you answered yes to either defendant, what

15   amount of damages did that intentional interference cause

16   to Oracle America, Inc.?  If you did not answer yes to the

17   above question as to a particular defendant, please write

18   N/A in the appropriate space provided.

19           Rimini Street, zero.

20           Seth Ravin, zero.

21           Question 16:  Intentional Interference - Oracle

22   International Corporation.

23           Do you find that plaintiff Oracle International

24   Corporation has proven by a preponderance of the evidence

25   that defendant Rimini Street and/or Seth Ravin

3922

1    intentionally interfered with economic relationships

2    between Oracle International Corporation and customers that

3    probably would have resulted in an economic benefit to

4    Oracle International Corporation?

5               Rimini Street.  No.

6               Seth Ravin.  No.

7               If you answered yes to either defendant, what

8    amount of damages did that intentional interference cause

9    to Oracle International Corporation?  If you did not answer

10   yes to the above question as to a particular defendant,

11   please write N/A in the appropriate space provided.

12              Rimini Street.  Zero.

13              Seth Ravin.  Zero.

14              Computer Access Claims.

15              Question 17:  California Computer Data Access

16   and Fraud Act - Oracle America, Inc.

17              Do you find that Oracle America, Inc., has

18   proven by a preponderance of the evidence that defendant

19   Rimini Street and/or Seth Ravin violated the California

20   Computer Data Access and Fraud Act as explained in the jury

21   instructions?

22              Rimini Street.  Yes.

23              Seth Ravin.  Yes.

24              If you answered yes to either defendant, what

25   amount of damages did that violation of the California

1   Computer Data Access and Fraud Act cause to Oracle America,

2   Inc.?  If you did not answer yes to the above question as

3   to a particular defendant, please write N/A in the

4   appropriate space provided.

5           Rimini Street.  $8,827,000.

6           Seth Ravin.  $8,827,000.

7           Question 18:  California Computer Data Access

8   and Fraud Act - Oracle International Corporation.

9           Do you find that plaintiff Oracle International

10  Corporation has proven by a preponderance of the evidence

11  that defendant Rimini Street and/or Seth Ravin violated the

12  California Computer Data Access and Fraud Act as explained

13  in the jury instructions?

14          Rimini Street.  Yes.

15          Seth Ravin.  Yes.

16          If you answered yes to either defendant, what

17  amount of damages did that violation of the California

18  Computer Data Access and Fraud Act cause to Oracle

19  International Corporation?  If you did not answer yes to

20  the above question as to the particular defendant, please

21  write N/A in the appropriate space provided.

22          Rimini Street.  $5,600,000.

23          Seth Ravin.  $5,600,000.

24          Question 19:  Nevada Computer Crimes Law -

25  Oracle America, Inc.

1              Do you find that Oracle America, Inc., has

2    proven by a preponderance of the evidence that defendant

3    Rimini Street and/or Seth Ravin violated the Nevada

4    Computer Crimes Law as explained in the jury instructions?

5              Rimini Street.  Yes.

6              Seth Ravin.  Yes.

7              If you answered yes to either defendant, what

8    amount of damages did that violation of the Nevada Computer

9    Crimes Law cause to Oracle America, Inc.?  If you did not

10   answer yes to the above question as to a particular

11   defendant, please write N/A in the appropriate space

12   provided.

13             Rimini Street.  $8,827,000.

14             Seth Ravin.  $8,827,000.

15             Question 20:  Nevada Computer Crimes Law -

16   Oracle International Corporation.

17             Do you find that plaintiff Oracle International

18   Corporation has proven by a preponderance of the evidence

19   that defendant Rimini Street and/or Seth Ravin violated the

20   Nevada Computer Crimes Law as explained in the jury

21   instructions?

22             Rimini Street.  Yes.

23             Seth Ravin.  Yes.

24             If you answered yes to either defendant, what

25   amount of damages did that violation of the Nevada Computer

1    Crimes Law cause to Oracle International Corporation?  If

2    you did not answer yes to the above question as to a

3    particular defendant, please write N/A in the appropriate

4    space provided.

5              Rimini Street.  $5,600,000.

6              Seth Ravin.  $5,600,000.

7              Non-Duplicative Damages.

8              Question 21:  Non-Duplicative Damages - Oracle

9    America, Inc.

10             If you found that Oracle America, Inc., suffered

11   damages as a result of defendant Rimini Street and/or Seth

12   Ravin's conduct, you must now determine the total amount of

13   damages that is not duplicative of any other damages award

14   in your verdict as explained in the jury instruction titled

15   Verdict Form - Duplicative Damages.  In determining this

16   amount, you should exclude the amount awarded for statutory

17   damages as well as the amount awarded, if any, for

18   whichever damages theory you determined was not the best

19   measure of actual damages for copyright infringement,

20   either Lost Profits or a Fair Market Value License.  The

21   total amount of non-duplicative damages to be awarded to

22   Oracle America, Inc., against each defendant is as follows:

23             Rimini Street, $8,827,000.

24             Seth Ravin.  $8,827,000.

25             Question 22.  Non-Duplicative Damages - Oracle

1    International Corporation.

2              If you found that Oracle International

3    Corporation suffered damages as a result of defendant

4    Rimini Street and/or Seth Ravin's conduct, you must now

5    determine the total amount of damages that is not

6    duplicative of any other damages award in your verdict as

7    explained in the jury instruction titled Verdict Form -

8    Duplicative Damages.  In determining this amount, you

9    should exclude the amount awarded for statutory damages as

10   well as the amount awarded, if any, for whichever damages

11   theory you determined was not the best measure of actual

12   damages for copyright infringement, either Lost Profits or

13   a Fair Market Value License.  The total amount of

14   non-duplicative damages to be awarded to Oracle

15   International Corporation against each defendant is as

16   follows:

17             Rimini Street.  $41,200,000.

18             Seth Ravin.  $41,200,000.

19             Punitive Damages.

20             If you found that Oracle America, Inc., and/or

21   Oracle International Corporation has proven by a

22   preponderance of the evidence that defendant Rimini Street

23   is liable for intentional interference with prospective

24   economic advantage, Questions 15 and 16, violating the

25   California Computer Data Access and Fraud Act, Questions 17

3927

1    and 18, or violating Nevada Computer Crimes Law, Questions

2    19 and 20, please answer the following question.

3              Question 25:  Punitive Damages - Rimini Street.

4              Has Oracle America, Inc., and/or Oracle

5    International Corporation proven by clear and convincing

6    evidence that defendant Rimini Street engaged in malice,

7    oppression, or fraud such that punitive damages against

8    this defendant is warranted?

9              No.

10             If you found that Oracle America, Inc., and/or

11   Oracle International Corporation has proven by a

12   preponderance of the evidence that defendant Seth Ravin is

13   liable for intentional interference with prospective

14   economic advantage, Questions 15 and 16, violating the

15   California Computer Data Access and Fraud Act, Questions 17

16   and 18, or violating the Nevada Computer Crimes Law,

17   Questions 19 and 20, please answer the following question.

18             Question 26:  Punitive Damages, Seth Ravin.

19             Has Oracle America, Inc., and/or Oracle

20   International Corporation proven by clear and convincing

21   evidence that the defendant Seth Ravin engaged in malice,

22   oppression, or fraud such that punitive damages against

23   this defendant is warranted?

24             No.

25             You have now completed the Verdict Form.  Have

1    your foreperson date and sign the form below.  Then inform

2    the court security officer that you have reached a

3    unanimous verdict.  Do not give the envelope to the

4    bailiff.  Your foreperson should retain possession of the

5    Verdict Form until it is requested by the judge when the

6    court reconvenes.

7              Dated this 13th day of October, 2015, by the

8    jury foreperson.

9              THE COURT:  All right.  Ladies and gentlemen,

10   actually because this verdict form covers so much ground,

11   before I'm going to ask you whether this truly and

12   accurately reflects your verdict, I want to give both sides

13   an opportunity to raise any questions they have with me

14   that I feel should be relayed to you.

15             As I've indicated, I've conducted a preliminary

16   review, but it was preliminary, and I owe it to both sides

17   to check with them.  So I hope you understand.  We'll ask

18   you to please step back into the jury room.  I'll make this

19   as quickly as I can.  My guess is that we're probably

20   looking at a break that will be about a half an hour.

21             So at this time, ladies and gentlemen, I'll

22   excuse you, and then when you return I'll either raise any

23   questions that I think are appropriate or I'll ask you if

24   that properly reflects your verdict.

25             You may step down.  Thank you.

1              COURTROOM ADMINISTRATOR:  Please rise.

2          (Jurors exit courtroom at 11:06 a.m.)

3              THE COURT:  All right.  Have a seat, please.

4              Obviously this is a diverse jury verdict with

5     findings in favor of both sides in different respects.  And

6     I felt that I owed it to both sides to digest what the

7     verdict is and request any -- identify to me any

8     inconsistencies that they feel may exist in the verdict

9     form -- or, excuse me, the verdict returned.

10              I owe it to you, an opportunity to confer among

11    yourselves.  And so we'll take a short break, not to exceed

12    10 to 15 minutes, and I'll hear from you with regard to

13    whether either side feels there are any clear mistakes or

14    inconsistencies that might be resolved or best addressed

15    with the jury before they're finally excused.

16              So we'll take that brief recess and reconvene in

17    approximately 10 to 15 minutes.

18              COURTROOM ADMINISTRATOR:  Please rise.

19          (Recess from 11:07 a.m. until 11:40 a.m.)

20          (Outside the presence of the jury.)

21              COURTROOM ADMINISTRATOR:  Please rise.

22              THE COURT:  All right.  Have a seat, please.

23              The record will show that we are in open court

24    with parties and counsel present.  The jury is not present.

25              Counsel, has there been a proposed resolution of

1      what appears to be a conflict in the verdict form?

2                  MR. WEBB:  Well, Your Honor, I think the parties

3      agree that Question 22, as it pertains to the verdict

4      against Mr. Ravin, that there is an inconsistency.

5                  It is the position of Rimini Street and

6      Mr. Ravin that the mistake is apparent from the verdict

7      form where they answered the questions on contributory

8      vicarious liability "no" for Mr. Ravin, therefore the

9      maximum amount that should be awarded against him for OIC

10     is $5.6 million.

11                 MR. ISAACSON:  And we agree that there's an

12     inconsistency.  And if the jury holds to their answers on

13     Questions 4 and 5 and the related Questions 7 and 8, that

14     the 5.6 million would be the correct number for the

15     non-duplicative damages in that category.

16                 However, if there's an inconsistency, the jury

17     may have made an error in 4 or 5, and so we should just

18     make sure that they're doing what they intend to do.

19                 MR. WEBB:  And our position, Judge, is the

20     mistake is apparent from the verdict form and we don't need

21     to go back to the jury.

22                 THE COURT:  All right.

23                 MR. ISAACSON:  I think the jury does need to

24     understand that when they found direct liability on

25     copyright infringement they found it only for Rimini Street

1    as opposed to Mr. Ravin.  And to the extent that they

2    thought they were finding it for Mr. Ravin and then

3    reaching that result, they need to understand that and make

4    sure that they are comfortable with their verdict on

5    contributory and vicarious.

6              THE COURT:  And the Oracle position -- well --

7              MR. ISAACSON:  Oracle's position, therefore,

8    would be that the jury could be told that Mr. Ravin is not

9    liable under Questions 1, 2, and 3 for direct copyright

10   infringement, and if the jury is -- has not made a mistake

11   on contributory infringement and vicarious infringement,

12   then the correct number would be 5.6 million.

13             However, if they made a mistake on vicarious or

14   contributory infringement, they should correct that mistake

15   both with respect to Questions 4 and 5 or -- and then the

16   related Questions 7 and 8.

17             THE COURT:  I'm more comfortable in giving it as

18   a written instruction to the jury so that they not go back

19   in and be recalling different things.

20             So let me work on something quickly.  I'll bring

21   it out to you as soon as it's ready.

22             Dionna, would you -- assuming there's no

23   objection from either side, would you advise the jury that

24   the Court's going to give them a limited question to

25   clarify their verdict.

```
 1                 COURTROOM ADMINISTRATOR:  Yes, Your Honor.
 2                 THE COURT:  And we're working that question out.
 3       It will probably be another 20 minutes.
 4                 COURTROOM ADMINISTRATOR:  Okay.
 5                 THE COURT:  All right.  Is there any objection
 6       to that?
 7                 MR. WEBB:  No, Your Honor.
 8                 MR. ISAACSON:  No, Your Honor.
 9                 THE COURT:  All right.  That's what we'll do.
10                 COURTROOM ADMINISTRATOR:  Please rise.
11             (Recess from 11:44 a.m. until 12:19 p.m.)
12             (Outside the presence of the jury.)
13                 THE COURT:  Have a seat, please.  The record
14       will show we're in open court with the parties and counsel
15       present.  The jury is not present.
16                 I've distributed to you a proposed draft of a
17       response to the question that's been addressed here with
18       regard to the jury's verdict.
19                 And let me ask you first if there's any
20       objections to the proposed response that I gave -- that I
21       have given?  Mr. Webb?
22                 MR. WEBB:  Your Honor, defendants object to this
23       additional instruction in its entirety, for the reasons I
24       stated earlier.  The mistake is a mathematical mistake
25       that's apparent from the face of the verdict form.  We are
```

3933

1    concerned this is inviting them to renegotiate a verdict

2    which we believe is improper.  And as written it

3    suggests -- at least can suggest, that the Questions 4, 5,

4    7, and 8 are incorrect, rather than the damages number,

5    inviting the jury to change some answers rather than

6    others.

7             And so we feel that the correct approach would

8    be to poll the jury in general as to whether or not this is

9    their true and accurate verdict and leave it at that

10    without any additional instruction, Your Honor.

11             THE COURT:  All right.

12             Mr. Isaacson?

13             MR. ISAACSON:  We would have two suggestions for

14    the proposed instruction.  In paragraph 1, we would suggest

15    that it begin with, "Question 6c concerns damages awarded

16    against Rimini Street only not defendant Seth Ravin,"

17    period.

18             And then we think the rest of the paragraph

19    appropriately asks them to reconcile the inconsistency.

20    And I understand that counsel would like it just to be

21    reconciled in their favor, but I think that's a jury issue.

22             Then with regards to the second paragraph, which

23    is one sentence, just for clarification you would say at

24    the end -- proposed at the end, "It may also aid you to

25    review your responses to Questions 18 and 20 as to the

3934

1     amount of damages against Seth Ravin."

2             So that they're not confused as to look at other

3     issues raised there and they're just looking at the

4     $5.6 million there.

5             MR. WEBB:  And, Your Honor, we would object to

6     both of those additional edits on grounds they are

7     unnecessary and prejudicial.

8             To the extent Your Honor believes additional

9     instructions need to be provided to the jury at this time,

10    we would simply direct the jury to the answer to Question

11    No. 22 and refer them to their answers to Questions 4, 5,

12    7, and 8 only.

13            MR. ISAACSON:  Which is what I think you're

14    doing, Your Honor.

15            THE COURT:  Well, I -- I'm of the view that I

16    would like to take advantage of the jury while they're

17    present and while they're best -- in the best position to

18    correct what's obviously an obvious inconsistency in their

19    verdict.

20            It could well be that the questions will

21    ultimately have to be presented to the Court concerning

22    this.  But at least at this time, I would like to take

23    advantage of the jury.  And I'd also like to provide them

24    with the opportunity to be dismissed.

25            I'm not going to add anything further with

1    regard to 6c, and I'm inclined to stick with what I have

2    provided to counsel with some modification.  And the

3    modification would be this.

4              I added the words on your verdict after 6, 7,

5    and 8.  And I believe the words should be added after

6    Questions in 18 and 20, it should be as to the amount of

7    damages awarded against defendant Seth Ravin.  I agree with

8    that suggestion.

9              So unless I hear additional objection to what's

10   already been raised, what I propose to give is the

11   following instruction:

12             "As to defendant Seth Ravin, your answers to

13   Questions 4, 5, 7, and 8 on your verdict are inconsistent

14   with the total of non-duplicative damages you awarded

15   Oracle International Corporation against defendant Seth

16   Ravin in your answer to Question 22.

17             "Please review your responses to these questions

18   and determine whether you have made a mistake in your

19   responses to any of these questions.

20             "It may also aid you to review your responses to

21   Questions 18 and 20 as to the amount of damages awarded

22   against defendant Seth Ravin.

23             "I am returning your verdict to you.  If you

24   unanimously agree on a change or changes to any of your

25   responses, please make it/them accordingly."

3936

1           "If" -- there should be an added sentence here.

2   "If you do not agree that there is an inconsistency in your

3   answers, please advise the Court."

4           MR. WEBB:  I have my same objections, Your

5   Honor.  In addition, under Rule 606(b) it is improper to

6   inquire what jurors intended by their verdict.

7           The other piece, Judge, just to be clear, the

8   way the question currently is set, it suggests that if

9   there's inconsistency, the problem lies in their answers to

10  Questions 4, 5, 7, and 8.

11          And so just to be clear, that's an additional

12  objection that we have.

13          MR. ISAACSON:  I don't know why that would be

14  the case.

15          MR. WEBB:  It says your answers to Questions 4,

16  5, 7, 8 are inconsistent with the total --

17          MR. ISAACSON:  I've got no objection if you say

18  the sentence, "Your answer to Question 22 is inconsistent

19  with your answers to Question 4, 5 -- 4, 5, 7 --

20          THE COURT:  Let me take a look at 606(b).  I

21  haven't looked at that one for a while.

22          MR. ISAACSON:  I don't think it really matters

23  which one you say first.

24          MR. WEBB:  I'm sorry.  The case, Judge, is *Karl*

25  *v. Burlington Northern Railroad*, 880 F.2d 68.

1            THE COURT:  What's the rule again?

2            MR. WEBB:  606(b), Your Honor.  And the case is

3    *Karl v. Burlington Northern Railroad Company*, 880 F.2d 68.

4    And that's an Eighth Circuit decision from 1989.

5            THE COURT:  I'm not finding Rule 606(b).  Just a

6    minute.

7            MR. WEBB:  I'm sorry, Your Honor, that's --

8            THE COURT:  That's it.  Just a minute.

9            MR. WEBB:  I don't believe that's the right

10   rule, Your Honor.

11           MR. ISAACSON:  I think it's Rule 49(b)(4) which

12   says when the answers, referring to a verdict, are

13   inconsistent with each other and one or more is also

14   inconsistent with the general verdict, judgment must not be

15   entered, instead the court must direct the jury to further

16   consider its answers and verdict --

17           THE COURT:  Just a --

18           MR. ISAACSON:  -- or must order a new trial--

19           THE COURT:  -- minute.  I've got it.  Let me

20   take a look at it.

21           MR. ISAACSON:  It's 49(b)(4), Your Honor.

22           THE COURT:  That is the correct rule.  Again, I

23   haven't looked at that in a long time.

24           Okay.  Here's my proposed instruction to the

25   jury.  Relying upon everything that's been stated so far.

1          "As to defendant Seth Ravin, your answers to

2    Questions 4, 5, 7, and 8 on your verdict are inconsistent

3    with the total of non-duplicative damages you awarded

4    Oracle International Corporation against defendant Seth

5    Ravin in your answer to Question 22.

6          "Please review your responses to these questions

7    and determine whether you have made a mistake in your

8    responses to any of" -- I'm going to say "any of them."

9          "It may also aid you to review your responses to

10   Question 18 and 20.

11         "I am returning your verdict to you and am

12   directing you to further consider your answers and verdict.

13         "If you unanimously agree on a change or changes

14   to any of your responses, please make it/them accordingly."

15         And I'm going to leave it at that.

16         MR. ISAACSON:  Your Honor, in the second

17   paragraph you didn't include in what you just read out loud

18   the language you were going to add.

19         THE COURT:  Oh, that's correct.  I'm sorry.

20         So it would read -- the second paragraph would

21   read, "It may also aid you to review your responses to

22   Question 18 and 20 as to the amount of damages awarded

23   against defendant Seth Ravin."

24         MR. WEBB:  And Mr. Isaacson suggested that he'd

25   be willing to flip the question so that "As to defendant

1    Seth Ravin, your answer to Question 22 is inconsistent with

2    your answers to Questions 4, 5, 7, and 8."

3              THE COURT:  Okay.

4              MR. ISAACSON:  You would have to say --

5              MR. WEBB:  Again --

6              MR. ISAACSON:  -- as to the total

7    non-duplicative --

8              MR. WEBB:  Exactly.  But flipping the questions.

9    As opposed to Questions 4, 5, 7, and 8 being first, we

10   would have Question 22 be first.

11             THE COURT:  Okay.

12             So let me -- read that first line as you would

13   have it there, Mr. Webb.

14             MR. WEBB:  "As to defendant Seth Ravin, your

15   answer to Question 22 as to total non-duplicative damages

16   you awarded Oracle International Corporation against

17   defendant Seth Ravin is inconsistent to your answers to

18   Questions 4, 5, 7, and 8 on your verdict form."

19             Do you want me to try that again, Judge?

20             THE COURT:  I think I've got it.

21             Are you in agreement with that, Mr. Isaacson?

22             MR. ISAACSON:  Yes, that's fine.

23             THE COURT:  Here's the way I have it.

24             "As to defendant Seth Ravin, your answers to

25   Questions 22 as to total" --

3940

1          MR. ISAACSON:  I think it's question, singular.

2          THE COURT:  "Your answer to Question 22 as to

3    the total of non-duplicative damages you awarded Oracle

4    International Corporation against defendant Seth Ravin is

5    inconsistent with your answers to Questions 4, 5, 7, and 8

6    on your verdict.

7          "Please review your responses to these questions

8    and determine whether you have made a mistake in your

9    responses to any of them.

10          "It may also aid you to review your responses to

11   Questions 18 and 20 as to the amount of damages awarded

12   against defendant Seth Ravin.

13          "I am returning your verdict to you and am

14   directing you to further consider your answers and verdict.

15          "If you unanimously agree on a change or changes

16   to any of your responses, please make it/them accordingly."

17          MR WEBB:  Subject to our objections, Your Honor.

18          MR ISAACSON:  We agree, Your Honor.

19          THE COURT:  All right.  The Rimini objections

20   are reserved, and Mr. Ravin's.

21          And I'll modify this and distribute it to the

22   jury with a copy to each juror.  Thank you.

23          COURTROOM ADMINISTRATOR:  Please rise.

24       (Recess from 12:33 p.m. until 12:49 p.m.)

25       (Outside the presence of the jury.)

1              THE COURT:  We're reconvened outside the

2      presence of the jury.

3              Please have a seat.

4              I distributed a copy of the proposed written

5      instruction I intended to provide the jury.

6              Is there any new objection to this that we

7      haven't discussed so far?

8              MR. WEBB:  Your Honor, just with respect to the

9      first paragraph, we would make a change in the second line

10     after corporation to insert "appears to be inconsistent

11     with" and we would strike the --

12             THE COURT:  Just a minute.

13             MR. WEBB:  And strike the word "and" and then

14     put a period.

15             THE COURT:  I'm sorry.  Give it to me again.

16             MR. WEBB:  Sure.  The second line after "Oracle

17     International Corporation" we would insert the phrase

18     "appears to be inconsistent with" --

19             MR. ISAACSON:  I don't understand the basis of

20     that since their previous position was that they were

21     inconsistent.

22             THE COURT:  Okay.  Well, let me hear -- is that

23     it?

24             MR. WEBB:  Put a period after the number 8 on

25     the second line or the third line, Judge.  On your verdict

1    form.

2              THE COURT:  Okay.

3              MR. WEBB:  And then as it pertains to the last

4    paragraph, we would object to returning the verdict to the

5    jury.  Instead we would change that to "If after

6    considering this issue you believe a change to your verdict

7    is necessary, please indicate the required change."

8              Otherwise, we believe it would invite

9    reconsidering the verdict, which we believe is improper.

10             And as to Mr. Isaacson's objection to "appears,"

11   would be fine to say "is consistent with."

12             MR. ISAACSON:  "Inconsistent."

13             MR. WEBB:  "Is inconsistent with."

14             THE COURT:  Okay.  First paragraph "On your

15   verdict as to defendant Seth Ravin your answer to Question

16   22 as to the total of non-duplicative damages you awarded

17   Oracle International Corporation" --

18             MR. WEBB:  Is consistent -- is inconsistent.

19             THE COURT:  -- "is inconsistent with your

20   answers to Questions 4, 5, 7, and 8.

21             "Please review your responses to these questions

22   and determine whether you have made a mistake in your

23   responses to any of them.

24             "It may also aid you to review your responses to

25   Questions 18 and 20 as to the amount of damages awarded

1    against defendant Seth Raven."

2              Now, your last paragraph would read how?

3              MR. WEBB:  "If, after considering this

4    issue," --

5              THE COURT:  Wait a minute.

6              MR. WEBB:  In place of the third paragraph,

7    Judge, I would add an entirely new paragraph.

8              THE COURT:  And would it read?

9              MR. WEBB:  "If, after considering this issue,

10   you believe a change to the verdict form is required,

11   please indicate the specific change on this form."

12             MR. ISAACSON:  I think that's an open-ended

13   question, lends to confusion, and it's best if they stick

14   with the verdict form.

15             THE COURT:  I'm not -- I'm going to stick with

16   what I have there.  I'm sorry.  The objection of defendants

17   will be noted for the record.

18             MR. WEBB:  Thank you, Judge.

19             THE COURT:  I'm going to add,

20             "I'm returning your verdict to you and am

21   directing you to further consider your verdict accordingly.

22             "If you unanimously agree on a change or changes

23   to any of your responses, please make it/them accordingly."

24             MR. WEBB:  Again, Judge, I've made this

25   objection already, but just to be clear on the record, we

1   believe that asking them to reconsider their verdict is

2   improper.

3           THE COURT:  Right.  I agree with you there.  But

4   I'm trying to think of a way to limit this.

5           "If you unanimously agree on a change or" --

6           MR. WEBB:  Maybe the above responses, directing

7   them to the --

8           THE COURT:  -- "as to the above responses,

9   please make it/them accordingly."

10          I'll go for that.  I don't have a problem with

11  that.  "Change or changes to the above responses, please

12  make it/them accordingly."

13          That's going to be it.

14          MR. WEBB:  Okay.  Thank you, Judge.

15          THE COURT:  All right.  And I'll distribute the

16  signed copy of the instruction as we've identified it here

17  to the jury.

18          Madam Clerk, return the verdict form too.

19          COURTROOM ADMINISTRATOR:  Yes, Your Honor.

20          Please rise.

21      (Recess from 12:54 p.m. until 1:14 p.m.)

22      (Outside the presence of the jury.)

23          THE COURT:  Let's bring the jury in, please.

24          COURTROOM ADMINISTRATOR:  Yes, Your Honor.

25      (Jurors enter courtroom at 1:14 p.m.)

1          THE COURT:  All right.  Have a seat, please.

2          The record will show we're in open court.  The

3   jury is present.  Counsel and parties are present.

4          And, ladies and gentlemen, you're well aware

5   that I sent you back a note concerning something that

6   appeared to be a mistake in your verdict form.  And you've

7   responded that you've corrected what you felt was

8   appropriate.

9          And I see, ＼＼＼＼, that you have the verdict

10   form.  So you may hand that up, please.

11          All right.  I've reviewed the verdict form.  It

12   appears to only have one change to it.  And that is to

13   Question 22.  And the amount that was there, which was

14   $41,200,000, has a line drawn through it, and the amount

15   entered below it of $5,600,000, that appears to be the only

16   change to the verdict form.

17          Is that correct, ＼＼＼＼?

18          FOREPERSON:  Yes, it is.

19          THE COURT:  All right.  Ladies and gentlemen,

20   let me ask you, does the verdict form now, as it has just

21   been returned to me, fully and accurately reflect the

22   verdict of each one of you?

23          (Jurors responded affirmatively.)

24          THE COURT:  All right.  It appears to me that

25   everyone is in agreement with that.

```
 1              Does either side wish to have the jury polled as
 2    to this verdict?
 3              MR. WEBB:  We do not, Your Honor.  Thank you.
 4              MR. ISAACSON:  We do not, Your Honor.
 5              THE COURT:  All right.  Ladies and gentlemen,
 6    that means your work as jurors is done here.
 7              I have a number of comments before I release
 8    you.  One, this has been a very, very complex case.  I can
 9    tell you in all my years -- I hate to admit how long I've
10    been practicing law and how long I've been on the court,
11    but it's over 45 years, I can tell you that -- I've never
12    seen a case this complex that involved this many issues
13    before a jury as what you've seen here and before the
14    Court.
15              As you can tell, this lawsuit has been pending
16    now for over five and a half years.  And it is certainly
17    what you call a mega trial and a mega lawsuit under any
18    view.
19              And as you can see, it -- going through this
20    verdict, I mean, we have 26 questions here on 14 pages of
21    verdict form.  This is virtually unheard of in our civil
22    trials and our criminal trials.  But what it reflects is in
23    your case all the work you had to do on this.
24              It's one thing to sit and hear the witnesses and
25    the evidence and everything that occurs here in the
```

1    courtroom and then, as you found, it's another thing to go

2    into that jury room and try and weave through what all of

3    this calls for and to call upon you to do the work that is

4    so important that you do.

5            I have to say, I start this trial off and I

6    start off just about every trial I have with commenting on

7    why you're here.  It's because of our Constitution, a

8    constitution that's proven to protect every single one of

9    us and every single party we know in the United States

10   under our laws.

11           It's not perfect.  It's a document that's

12   created by man and, because of that, it suffers from its

13   human weaknesses and frailties.  But it is the strongest

14   constitution in the world.

15           And it protects each one of you individually, it

16   protects each one of these parties individually.  And when

17   it comes to a jury trial and disputed issues of law and

18   fact, it comes down to you people who probably two months

19   ago didn't even know this case existed, or one like it was

20   coming up, and over the last month that you've sat through

21   every day.

22           And I have to say, I have watched you and

23   enjoyed watching you because I've seen that every one of

24   you have been so intent on doing your job and doing it

25   properly, listening to the witnesses, listening to the

3948

```
 1   evidence, tolerating very well the frustrations that go

 2   with the stop and start that occurs in every jury trial and

 3   the issues that arise and that are imposing on your

 4   schedules as you sit through these trials.  I'm very

 5   mindful of that.  And I try and keep it to a minimum.  But

 6   the fact is it still occurs.

 7            And yet even down to the very end, when this

 8   awesome responsibility is placed on you of deciding all

 9   these questions and sifting through all of that evidence

10   from all of these -- I think it was 35 witnesses or

11   something thereabouts who appeared and all the attorneys

12   who have been involved in this case, and you couldn't have

13   approached your job more diligently and with more

14   responsibility.

15            And I fall back on why you're here.  You're here

16   as representatives of your community.  You're chosen

17   randomly, and you provide the public service that makes

18   this constitutional issue of our jury trials work.

19            And I can tell you, and I speak on behalf of

20   every judge in this courthouse, I know, that you have just

21   been outstanding examples of the people of our community

22   who are asked to come in and decide these cases.

23            It is so important what you do.  And I want to

24   thank you so much for your diligence and your attention in

25   what you've done here.
```

1              You're going to be excused as jurors.  And I

2      wanted to comment on a couple of other things.  First of

3      all, you -- I have to compliment the attorneys across the

4      board in this case.  You have seen professionalism at the

5      top of the ladder.  These attorneys have been prepared,

6      they've done their jobs, they've worked with their

7      witnesses, they've worked with all the exhibits, they've

8      worked with all the video demonstrations.  They were always

9      prepared.

10              They're representing their clients.  Their

11      interests are bound to diverge.  There's bound to be

12      professional disagreements.  But across the board these

13      attorneys, in my view, have been as professional, as

14      polished, and as effective as any attorneys I have seen.

15              I want to compliment too the technical people

16      who have been involved in this case.  When we started this

17      trial and we were just coming into the last weeks and

18      months of trial, there was something like 60 to 80,000

19      pages of exhibits.

20              These attorneys were able to get together and

21      agree upon what would be admissible, what they would want

22      to raise a challenge to in front of the Court, and what

23      they could do without.  Their technical people -- and I

24      would tell you, out of all those years experience that I've

25      had, and I've tried many cases when I was a trial lawyer,

1    I've presided over hundreds of trials while I've been a

2    trial judge, I've never seen technical presentation as well

3    done as it was in this case.

4           When a witness was testifying, what you saw put

5    on the video screen for demonstrative purposes was as

6    effective as any I've ever seen.  It's something you

7    just -- we don't see in our jury trials or in our major

8    trials before the Court.

9           The technical people on both sides were able to

10   immediately bring up the video depositions, immediately

11   bring up the displays for demonstrative purposes,

12   immediately serve the attorneys on each side with what they

13   needed and what those attorneys needed to do the best they

14   could for you in this trial.

15          You have been -- I mean, you talk about

16   attending the performance with a free ticket.  I mean, in

17   many ways you've been able to do that during this trial,

18   because this performance, from a professional standpoint,

19   is one that's just totally praiseworthy by the Court.

20          And the outstanding lawyering and professional

21   work and cooperation that was done, I can only tell you

22   that I think someone like me really appreciates what it

23   could have been if we didn't have those things, because it

24   could have been that we would have been here for two or

25   three months at one time.  That easily could have happened.

1      And it did not.  And it did not happen because we had some

2      outstanding lawyers and outstanding technical support.  And

3      admittedly the resources on both sides can afford that

4      because I'm certain that this was a very expensive trial

5      and litigation on both sides in this case.

6                One final point I like to make with you, of

7      course, you know that I drilled in your heads incessantly

8      that you can't discuss the case and keep your minds open

9      and all of that.  And then the question arises, well, now

10     that you leave the courthouse, can you talk about the case.

11               Well, if you recall how we started, I talked

12     about our constitution.  And one of those constitutional

13     rights is freedom of speech.

14               And what that means is that now that this trial

15     has concluded you, ladies and gentlemen, are free to

16     discuss this case with anyone in any way that you desire.

17     I say two things to that.

18               First of all, remember how solemn it is to

19     discuss and deliberate the case in the jury room.  Every

20     juror views something just a little differently than the

21     other.  Every juror expresses things a little bit

22     differently than the other.  But at the end of the day, the

23     jury reaches a result and obviously performs a

24     responsibility that you've performed here and reach a

25     consensus, an agreement, a unanimous verdict, and you have

3952

1    done that in this case.

2           I would suggest that if you're ever asked in any

3    way to speak about something that occurred in that jury

4    room, that the first thing you think about is that's

5    confidential.  That's -- that should be sanctified.  No

6    person should speak ill of another person who has served on

7    jury duty.

8           That's my personal view.  I'm not telling you

9    this as a matter of law, I'm just telling you this because

10   that's the way I view it.

11          Another thing I'd like to say is with that

12   constitutional right to speak you also have a

13   constitutional right not to speak.  And it could well be,

14   and I -- this happens commonly in cases where attorneys or

15   paralegals or investigators will want to go back and talk

16   to jurors about what happened in the case, what occurred,

17   what was strong, what was weak, et cetera.  That's common.

18   You could well be contacted after you leave this jury room.

19          And I would tell you, you have no obligation to

20   speak whatsoever.  That is completely up to you.  And I've

21   seen nothing but professionalism here on both sides, and I

22   would expect that that would continue, and everyone would

23   know if you say "I'm sorry, I just would rather not talk

24   about it" that's the end of it.

25          If for any reason you ever felt that you were

3953

1    being bothered by someone who wanted you to discuss and

2    disclose anything about this case, even though you didn't

3    want to do that, you get back in touch with me, because

4    I -- that's one power that I do have.

5            But I don't think that's going to happen here.

6    But you're certainly free to discuss this case in any way

7    with the people you want to discuss it with, the way you

8    want to discuss it.

9            So I want to thank you so much for your service

10   in this case.

11           We actually -- we started with nine of you,

12   because I've had lengthy jury trials before.  And I know

13   that many things happen, sometimes you have an illness in

14   the family, sometimes a job change, sometimes just

15   something happens that was completely unforeseen and a

16   juror needs to be excused.

17           We seated nine of you here, even though we only

18   need, under the law, six of you.  And all nine of you are

19   here today.  You endured this trial from the beginning to

20   the end.  You were diligent throughout.  I couldn't -- I

21   mean, the fact you're all still here today speaks to what a

22   good job you did in undertaking your responsibilities in

23   this case.  And I just want you to know how much I

24   appreciate that and speak on behalf of all of our judges in

25   the courthouse in thanking you in that regard.

3954

1          So at this time, ladies and gentlemen, and

2     attorneys, counsel, parties, I'm going to thank you for all

3     of your service.  I'm going to have your verdict entered as

4     a matter of judgment in this case.

5          And one other thing I meant to tell you.  On

6     many trials I'm able to go back to the jury room and talk

7     to the jurors about their thoughts and feelings that they

8     had concerning the case.  But I can't do that in this case.

9     And the reason I can't do it is because I have matters that

10    are still pending before me that will be pending for some

11    time to come, I'm sure.

12          It's been a complete case, it remains a complex

13    case.  And as a result of that I'm not free to comment

14    under our judicial rules about anything that may be pending

15    in front of me.  So, I mean, the first question I know

16    people would love to ask "What did you think of our

17    verdict?" is something I can't answer.

18          So I want you to understand that it's not

19    because of a lack of interest because I personally bond

20    with you as I watch you come into this courtroom every day,

21    and I appreciate what you do, and I'd love to just sit down

22    and chat over a sandwich or a glass of wine or anything

23    else what you think about this case.  But I can't do that.

24          So I'm going to excuse you at this time.  You

25    may go ahead and step down.  And I thank you so much for

1    your service.

2            (Jurors exit courtroom at 1:32 p.m.)

3              THE COURT:  All right.   Have a seat, please.

4              Is there anything either counsel would like to

5    raise at this time?

6              MR. WEBB:  Your Honor, I think Mr. Evanson would

7    like to talk about our briefing schedule for post-trial

8    motions.

9              THE COURT:  Yes.

10             MR. EVANSON:  Yeah.  Your comments to the jury

11   captured it well.  Given the complexity of the case and all

12   the issues in the case, I think both parties have stated

13   their intention to file Rule 50 motions, and I know Oracle

14   has said that it's seeking further relief as well, so we

15   just wanted to propose some sort of a briefing schedule for

16   the parties to both file their motions and then oppositions

17   and then set a hearing date -- we are happy to come to

18   Reno, so you all don't have to come here.  And I don't know

19   that we need to -- we were thinking 45 days for motions, 45

20   days for oppositions, and then the final judgment to follow

21   after the hearing.

22             But I think we can -- we can probably talk about

23   that offline and propose something to the Court.  I don't

24   know that we need to settle on exact dates right now.

25             THE COURT:  Mr. Isaacson?

1              MR. ISAACSON:  Yeah, we should meet and confer

2       on that.  I don't know that we will be making a Rule 50

3       motion.  I think it's, to a great extent, been mooted by

4       the findings of copyright liability.

5              What we -- however, before you enter final

6       judgment, the injunction issue needs to be resolved, and so

7       we'll very promptly move for an appropriate injunction

8       based on the copyright infringement that's been found.

9              And so we can -- and then as to the post-trial

10      Rule 50 and 59 motions, we'll meet and confer with counsel

11      about a briefing schedule.

12             THE COURT:  All right.  And what are you

13      comfortable with with regard to your injunctive motion?

14             MR. ISAACSON:  A week from tomorrow.

15             THE COURT:  That's acceptable to me.

16             And a week to respond?

17             MR. EVANSON:  We'll respond whenever the Court

18      asks us to.  We would propose that the parties file sort of

19      competing motions, so that they're on the same timetable

20      and we can deal with them all at once.  We would file our

21      Rule 50 motions and they would file their injunction motion

22      and then deal with those issues and attorney's fees and

23      whatever else needs to be dealt with all in one hearing

24      rather than dealing with them piecemeal.  That would be our

25      proposal.

1              THE COURT:  Okay.

2              MR. ISAACSON:  I think it would be appropriate

3    for the Rule 50 and 59 motions to be dealt with once we

4    have a final judgment.  And for that final judgment we need

5    to resolve the injunction issue, which we think -- and the

6    Court is obviously the trier of fact and law for the

7    injunction issue.  And so in order to actually complete

8    this trial, we think we need to resolve the injunction

9    issue.

10             THE COURT:  All right.  Well --

11             MR. EVANSON:  Could I respond to that last

12   point, Your Honor?

13             THE COURT:  Go ahead.

14             MR. EVANSON:  Rather than entering -- dealing

15   with the injunction, entering final judgment, then doing

16   post-trial motions, then potentially altering the judgment,

17   then doing attorney's fees, and then potentially altering

18   the judgment again, we would propose again dealing with

19   these on, you know, cross-motions, dealing with it all at

20   once, and then the Court can enter one final judgment that

21   incorporates all of the parties' post-trial requested

22   relief, which can then be bonded and appealed depending on

23   where we are at that point, rather than, again, dealing

24   with it piecemeal and having three different final

25   judgments entered before the parties go up on appeal.

1           MR. ISAACSON:  From Oracle's point of view, this

2    is not just a matter of reconciling briefing schedules for

3    the lawyers.  The issue of the injunction is a serious one

4    when there's been a finding of substantial copyright

5    infringement.  Oracle requires that protection.  We don't

6    want to wait for a 45-day briefing schedule in order to

7    have the final judgment with the injunction entered.

8           And so it's not a matter of just working out

9    lawyer schedules on that sort of thing or paralleling it

10   with Rule 50 and 59 motions.  It's a serious substantive

11   issue, and we would like for it to be resolved sooner

12   rather than later.

13          MR. EVANSON:  And given the complexity and the

14   seriousness of the issues, it's obviously serious for

15   defendants as well.  You know, turning around these briefs

16   in a matter of a couple weeks, we think is unnecessarily

17   rushed.

18          So we would -- I mean, maybe it's not 45 days,

19   maybe it's 30.  But, you know, we would request more time

20   for both the motions and the oppositions.

21          MR. ISAACSON:  We don't think --

22          THE COURT:  Well, let me tell you where I am.

23          The -- I understand the concern about the

24   injunctive relief, and so I will set a timeframe for that.

25   You've indicated you could have it on file within a week.

1     I would give defendants a 10-day period to respond and the

2     usual 5-day period to reply on behalf of Oracle.

3                 But with regard to everything else, I have no

4     problem with your 90-day proposal, Mr. Evanson, 45 and 45,

5     and a short reply time afterwards.

6                 I'll just leave it to you, Counsel, to see what

7     you can agree on.  And to the extent there may be any

8     overlap between the injunctive issues and the other issues,

9     I'm sure those are going to be identified in the briefing

10    that's filed.

11                I have no problem with the timetables that have

12    been mentioned here.  But I appreciate the injunctive

13    concern on behalf of Oracle.

14                MR. ISAACSON:  Thank you, Your Honor.

15                THE COURT:  So that will be the order.

16                Is there anything else?

17                MR. ISAACSON:  Nothing further, Your Honor.

18                THE COURT:  All right.  Well, once again,

19    Counsel, I reiterate my comments here.  These trials are

20    ordeals to everyone, including staff and the Court, and I

21    know to the parties and to counsel, but I compliment

22    everyone in this courtroom on the job that's been done on

23    this case.  It's been just a very professional and

24    fulfilling and interesting experience for me.  I've enjoyed

25    it.

3960

1          So I thank you very much.

2          The Court will be in recess, I'm happy to say.

3      (The proceedings concluded at 1:38 p.m.)

4                          *   *   *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3961

1                              -o0o-

2        I certify that the foregoing is a correct

3        transcript from the record of proceedings

4        in the above-entitled matter.

5

6        _____     10/14/15

7        Donna Davidson, RDR, CRR, CCR #318      Date
         Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25