1    BOIES, SCHILLER & FLEXNER LLP
     RICHARD J. POCKER (NV Bar No. 3568)
2    300 South Fourth Street, Suite 800
     Las Vegas, NV 89101
3    Telephone: (702) 382-7300
     Facsimile: (702) 382-2755
4    rpocker@bsfllp.com

5    BOIES, SCHILLER & FLEXNER LLP
     WILLIAM ISAACSON (*pro hac vice*)
6    KAREN DUNN (*pro hac vice*)
     5301 Wisconsin Ave, NW
7    Washington, DC 20015
     Telephone: (202) 237-2727
8    Facsimile: (202) 237-6131
     wisaacson@bsfllp.com
9    kdunn@bsfllp.com

10   BOIES, SCHILLER & FLEXNER LLP
     STEVEN C. HOLTZMAN (*pro hac vice*)
11   KIERAN P. RINGGENBERG (*pro hac vice*)
     1999 Harrison Street, Suite 900
12   Oakland, CA 94612
     Telephone: (510) 874-1000
13   Facsimile: (510) 874-1460
     sholtzman@bsfllp.com
14   kringgenberg@bsfllp.com

15
     Attorneys for Plaintiffs
16   Oracle USA, Inc., Oracle America, Inc., and
     Oracle International Corp.

     MORGAN, LEWIS & BOCKIUS LLP
     THOMAS S. HIXSON (*pro hac vice*)
     KRISTEN A. PALUMBO (*pro hac vice*)
     One Market, Spear Street Tower
     San Francisco, CA  94105
     Telephone:  415.442.1000
     Facsimile:  415.442.1001
     thomas.hixson@morganlewis.com
     kristen.palumbo@morganlewis.com

     DORIAN DALEY (*pro hac vice*)
     DEBORAH K. MILLER (*pro hac vice*)
     JAMES C. MAROULIS (*pro hac vice*)
     ORACLE CORPORATION
     500 Oracle Parkway, M/S 5op7
     Redwood City, CA 94070
     Telephone:  650.506.4846
     Facsimile:  650.506.7114
     dorian.daley@oracle.com
     deborah.miller@oracle.com
     jim.maroulis@oracle.com

17
18                   UNITED STATES DISTRICT COURT
19                       DISTRICT OF NEVADA

| | |
|---|---|
| 20   ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, | Case No. 2:10-cv-0106-LRH-PAL |
| 21 | **MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN, FOR DISPOSITION OF INFRINGING COPIES, AND FOR JUDGMENT ON ORACLE'S UNFAIR COMPETITION CLAIM** |
| 22 | |
| 23   Plaintiffs, | |
| 24   v. | |
| 25   RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, | |
| 26   Defendants. | |

27
28

1

**TABLE OF CONTENTS**

2

**Page**

3

I.  INTRODUCTION .................................................................................................. 1

4

II. PROPOSED FINDINGS OF FACT ....................................................................... 2

5

A.  Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle
International Corporation ............................................................................. 2

6

B.  Defendants Rimini Street And Seth Ravin ................................................. 3

7

C.  Copies of Oracle Software And Support Materials on Rimini's Servers ............ 4

8

D.  Rimini's Copying of PeopleSoft Software And Support Materials ..................... 5

9

E.  Rimini's Copying of Oracle Database ......................................................... 5

10

F.  Copying of Siebel and JD Edwards Software And Support Materials ................ 5

11

G.  RAM Copies ................................................................................................. 7

12

H.  Cross-use And Distribution Of Oracle Software And Support Material .............. 8

13

I.  Software Library ......................................................................................... 9

14

J.  Automated Downloading ............................................................................ 9

15

K.  Improper Use of Credentials .................................................................... 11

16

L.  Rimini's Illegal Actions Have Harmed Oracle's Reputation and
Goodwill .................................................................................................... 11

17

M.  Rimini Has Been Evasive And Dishonest Throughout This Litigation ............ 12

18

N.  Rimini Has Failed To Cooperate In Discovery In Rimini II ........................... 13

19

III. LEGAL STANDARDS ........................................................................................ 13

20

IV. ARGUMENT ...................................................................................................... 14

21

A.  The Court Should Enter A Permanent Injunction ..................................... 14

22

1.  Rimini's Infringement Has Caused and Will Cause Irreparable
Injury to Oracle's Goodwill and Reputation, for Which
Remedies at Law Are Insufficient ................................................. 15

23

24

2.  The Balance of Hardships Tips Strongly in Favor of Oracle
Because the Enjoined Acts Have No Legitimate Business
Purpose ........................................................................................ 18

25

26

27

i                    Case No. 2:10-cv-0106-LRH-PAL

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1

**TABLE OF CONTENTS**
(continued)

2                                                                                          **Page**

3          3.      Public Policy Favors Entry of an Injunction Against Infringers
4                  and Those That Have Committed Computer Access Violations ............ 19

5          4.      Rimini's Expected Claims That It Has Ceased Its Improper
                   Behavior Should Not Be Credited and Do Not Bar Injunctive
6                  Relief ................................................................................................ 19

7    B.    Oracle's Proposed Injunctive Relief Is Appropriately Tailored ........................ 22

8    C.    Oracle's Proposed Disposition Order Is Reasonable ........................................... 24

9    D.    Oracle Is Entitled to Judgment on Its UCL Claim ............................................... 25

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1

**TABLE OF AUTHORITIES**

2
                                                                                    **Page(s)**

3    CASES

4    *Alcatel USA, Inc. v. DGI Technologies, Inc.*,
5         166 F.3d 772 (5th Cir. 1999)...................................................... 24

6    *Am. Broadcasting Cos. v. Aereo, Inc.*,
          874 F. Supp. 2d 373 (S.D.N.Y. 2012)........................................ 15
7
     *Apple Computer v. Franklin Computer Corp.*,
8         714 F.2d 1240 (3d Cir. 1983)..................................................... 19

9    *Apple Inc. v. Psystar Corp.*,
          658 F.3d 1150 (9th Cir. 2011)..................................................... 15
10
     *Apple Inc. v. Psystar Corp.*,
11        673 F. Supp. 2d 943 (N.D. Cal. 2009) ................................. 17, 19

12   *Broad. Music, Inc. v. McDade & Sons, Inc.*,
13        928 F. Supp. 2d 1120 (D. Ariz. 2013)...................................... 20

14   *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Tel. Co.*,
          20 Cal. 4th 163 (Cal. 1992)................................................... 14, 25
15
     *City of Carlsbad v. Shah*,
16        850 F. Supp. 2d 1087 (S.D. Cal. 2012) ................................... 24

17   *Cortez v. Purolator Air Filtration Prods. Co.*,
18        23 Cal. 4th 163 (2000) .............................................................. 14

19   *CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
          479 F.3d 1099 (9th Cir. 2007)................................................... 25
20
     *Curtis v. Illumination Arts, Inc.*,
21        33 F. Supp. 3d 1200, 1214 (W.D. Wash. 2014)....................... 24

22   *Douglas Dynamics, LLC v. Buyers Prods. Co.*,
23        717 F.3d 1336 (Fed. Cir. 2013)................................................ 17

24   *eBay, Inc. v. Bidder's Edge, Inc.*,
          100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................... 17
25
     *eBay Inc. v. MercExchange, LLC*,
26        547 U.S. 388 (2006)................................................................. 13

27
                                        iii                    Case No. 2:10-cv-0106-LRH-PAL

28   MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ........................................................................ 19

4

*Facebook, Inc. v. Grunin*,
  77 F. Supp. 3d 965 (N.D. Cal. 2015) ............................................... 18

5

6

*Fletcher v. Security Pac. Nat'l Bank*,
  23 Cal. 3d 442 (1979) ..................................................................... 14

7

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
  654 F.3d 989 (9th Cir. 2011) ........................................................... 13

8

9

*Getty Images (US), Inc. v. Virtual Clinics*,
  2014 WL 1116775 (W.D. Wash. March 20, 2014) .......................... 24

10

11

*Golden State Bottling Co., v. N.L.R.B.*,
  414 U.S. 168 (1973) ........................................................................ 23

12

13

*Herr v. Nestle U.S.A., Inc.*,
  109 Cal. App. 4th 779 (2003) .......................................................... 14

14

*Hodge v. Super. Ct.*,
  145 Cal. App. 4th 278 (2006) .......................................................... 14

15

16

*Inst. of Cetacean Res. v. Sea Shepherd Conservation Soc'y*,
  774 F.3d 935 (9th Cir. 2014) ........................................................... 23

17

*Irwin v. Mascott*,
  370 F.3d 924 (9th Cir. 2004) ........................................................... 23

18

19

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal 2007). ................................... 19, 21

20

21

*MySpace, Inc. v. Wallace*,
  498 F. Supp. 2d 1293 (C.D. Cal. 2007) .......................................... 15

22

23

*Mytee Products, Inc. v. Harris Research, Inc.*,
  439 Fed. Appx. 882 (Fed. Cir. 2011) .............................................. 17

24

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) ........................................................... 15

25

26

*Rimini Street, Inc. v. Oracle International Corp.*,
  Case No 2:14-cv-01699 LRH PAL (D. Nev.) ........................ 2, 13, 20, 25

27

iv

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) ............................................................................ 14, 24

*Saunders v. Super. Ct.*,
  27 Cal. App. 4th 832 (Cal. Ct. App. 1994) ...................................................... 25

*SEC v. Koracorp Indus., Inc.*,
  575 F.2d 692 (9th Cir. 1978) ............................................................................ 21

*Software Freedom Conservancy, Inc. v. Westinghouse Digital Electronics, LLC*,
  812 F. Supp. 2d 483 (S.D.N.Y. 2011) .............................................................. 24

*Teller v. Dogge*,
  2014 WL 4929413 (D. Nev. Sept. 30, 2014) ............................................. 16, 18

*TracFone Wireless, Inc. v. Adams*,
  2015 WL 1611310 (S.D. Fla. Apr. 9, 2015) ..................................................... 19

*United States v. Parke, Davis & Co.*,
  362 U.S. 29 (1960) ............................................................................................ 21

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ......................................................................... 21

STATUTES

17 U.S.C.
  § 502 ........................................................................................................ 13, 23, 24
  § 503 ........................................................................................................ 13, 14, 24, 25
  § 504 .................................................................................................................. 24

Cal. Penal Code § 502 .......................................................................... 14, 19, 25

Cal. Prof. & Bus. Code
  § 17200 ............................................................................................................. 25
  § 17203 ............................................................................................................. 14

Nev. Rev. Stat.
  § 205.513 .................................................................................................... 14, 15

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1

## TABLE OF AUTHORITIES
(continued)

2                                                                                    **Page(s)**

3       **OTHER AUTHORITIES**

4       Fed. R. Civ. P.

5           65.................................................................................................................. 23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28      MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1  **NOTICE OF MOTION AND MOTION**

2  Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

3  will and hereby do move for a permanent injunction against Defendants Rimini Street, Inc.

4  ("Rimini Street") and Seth Ravin (together, "Rimini" or "Defendants"), for disposition of

5  infringing copies under the Copyright Act, and for judgment in favor of Oracle America, Inc. and

6  Oracle International Corporation ("Oracle") on their unfair competition claim.

7  I.  **INTRODUCTION**

8  Rimini built a business through pervasive, undisputed, and unauthorized downloading

9  and copying of Oracle's software and support materials.  The jury has found, and the Court

10  previously held, that Rimini provided support by making hundreds of unlicensed copies of

11  Oracle's software in the form of local software "environments" on Rimini's systems and by

12  engaging in "cross-use," i.e., the copying and use of one customer's licensed software and

13  derivative works to support other customers in violation of the customer's license.

14  Rimini Street infringed Oracle's copyrights in software and support materials for

15  Oracle's PeopleSoft-, JD Edwards-, and Siebel-branded application software, and in Oracle

16  Database software.  Dkt. 474 (PeopleSoft software); Dkt. 476 (Oracle Database software); Dkt.

17  896 (PeopleSoft documentation, JD Edwards software and documentation, and Siebel software

18  and documentation).  Both Defendants have violated California and Nevada computer access

19  statutes.  Dkt. 896.  Violation of the California statute is a predicate unlawful act under

20  California's Unfair Competition Law ("UCL"), Cal Bus & Prof. Code § 17200 *et seq.*

21  Oracle moves for a permanent injunction to restrain Rimini from continued infringement

22  and computer access violations.  In addition, Oracle moves pursuant to the impoundment

23  provisions of the Copyright Act that Rimini be required to turn over all infringing copies to a

24  neutral third party to be approved by the Court, to prevent Rimini from continuing to leverage

25  the benefits of its illegal actions.  Last, Oracle moves for judgment in its favor on its UCL claim.

26  Such self-serving assertions and empty promises that Rimini has voluntarily ceased its

27  improper actions are insufficient to prevent an injunction.  Under well-established case law,

28  Rimini's history of infringement, its obstreperous conduct over five years of litigation, its refusal

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1   to advance discovery in *Rimini Street, Inc. v. Oracle International Corp.*, Case No 2:14-cv-

2   01699 LRH PAL (D. Nev.) ("*Rimini II*"), its business imperatives, the harm caused by its

3   infringement to Oracle's goodwill, and the fact that there has been a final verdict in favor of

4   Oracle on its claims all support Oracle's request for injunctive relief.  If Rimini is, once again,

5   lying about its business practices, an injunction is essential to ensure that Rimini ceases its

6   infringing conduct.  By contrast, if Rimini's claims about its purported "new process" turn out to

7   be true, then the injunction would impose no burden on Rimini, and would benefit Oracle by

8   preventing Rimini from reverting to its old infringing ways.

9   **II.**    **PROPOSED FINDINGS OF FACT**

10        The below proposed facts were all proved at trial, and in most cases were undisputed.

11      **A.**    **Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International**
12              **Corporation**

13      1.    On February 15, 2010, Plaintiff Oracle USA, Inc., a Colorado corporation,

14   merged with and into Sun Microsystems, Inc. Sun Microsystems, Inc., the surviving corporation,

15   was then renamed "Oracle America, Inc." ("Oracle America").  Dkt. 528, Undisputed Fact

16   ("UF") 1.

17      2.    Plaintiff Oracle America is a Delaware corporation, with its principal place of

18   business in Redwood City, California.  Dkt. 528, UF 2.

19      3.    Oracle America develops and licenses certain intellectual property, including

20   copyrighted enterprise software programs, and provides related services.  Dkt. 528, UF 3.

21      4.    Oracle America is the successor in interest to Oracle USA, and through Oracle

22   USA is the successor to PeopleSoft USA, Inc. and a successor in interest to certain PeopleSoft,

23   JD Edwards, and Siebel entities.  Hereinafter, Oracle USA, Inc. and Oracle America, Inc. are

24   referred to collectively as "Oracle America."  Dkt. 528, UF 4.

25      5.    Plaintiff Oracle International Company ("OIC," and together with Oracle America,

26   "Oracle") is a California corporation, with its principal place of business in Redwood City,

27   California.  OIC owns and licenses certain intellectual property, including copyrighted enterprise

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    software programs used around the world.  Dkt. 528, UF 5.

2        6.      In December 2004, Oracle acquired PeopleSoft, including the PeopleSoft

3    copyrighted materials in suit related to PeopleSoft Enterprise, JD Edwards Enterprise One and

4    JD Edwards World, for $11.1 billion.  Trial Transcript ("Tr.")  957:15-22 (Catz).

5        7.      In January 2006, Oracle acquired Siebel, including the Siebel copyrighted

6    materials in suit, for $6.1 billion.  Dkt. 528, UF 39.

7        8.      OIC is the owner or exclusive licensee for each of the copyright registrations-in-

8    suit at issue in this case, and each of those registrations is valid.  Dkt. 528, UF 40-41.

9        9.      Intellectual property rights formerly held by certain PeopleSoft, JD Edwards, and

10   Siebel entities were transferred to OIC as part of the acquisitions of PeopleSoft and Siebel by

11   Oracle.  Dkt. 528, UF 6.

12       10.     As is typical in the enterprise software industry, Oracle does not sell ownership

13   rights to this software or the related support products Oracle provides to its paying customers.

14   Dkt. 528, UF 7.

15       11.     Instead, Oracle's customers purchase licenses that grant them limited rights to use

16   specific Oracle software programs.  Dkt. 528, UF 8.

17       12.     Separate from the license to the underlying software, Oracle also enters into

18   support contracts with its customers, which entitled them to receive, for an annual maintenance

19   fee, software upgrades and software support, including fixes, patches and updates typically made

20   available for download from Oracle's password-protected websites.  Dkt. 528, UF 9.

21       13.     Oracle's predecessors also sold both software licenses and support contracts for

22   PeopleSoft, JD Edwards, and Siebel enterprise software.  Dkt. 528, UF 10.

23   **B.    Defendants Rimini Street And Seth Ravin**

24       14.     Defendant Rimini Street, Inc. is a company that provides similar software support

25   services to licensees of Oracle's PeopleSoft, JD Edwards and/or Siebel software.  Dkt. 528, UF

26   11.

27       15.     Rimini competes directly with Oracle to provide these services.  Dkt. 528, UF 12.

28       16.     Defendant Seth Ravin is the founder, president and CEO of Rimini, as well as the

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1  former President of TomorrowNow, Inc., a subsidiary of SAP AG ("TomorrowNow").  Tr.

2  240:9:15, 351:2-7 (Ravin).

3        17.      Rimini launched its operations in September 2005, offering support services for

4  Oracle's Siebel software.  Rimini conducted a pilot launch of its Siebel support in January 2006

5  and acquired its first Siebel customer in February 2006.  Dkt. 528, UF 13.

6        18.      Rimini expanded its support offering to Oracle's PeopleSoft products in April

7  2006 and to Oracle's JD Edwards products in September 2006.  Dkt. 528, UF 14.

8        19.      Rimini contracted with 364 customers to provide support for PeopleSoft, JD

9  Edwards, and/or Siebel enterprise software between 2006 and November 2011.  Dkt. 528, UF 15.

10        20.      Each of Rimini's PeopleSoft, JD Edwards, and/or Siebel customers licensed

11  PeopleSoft, JD Edwards and/or Siebel enterprise software from Oracle.  Dkt. 528, UF 16.

12        **C.**      **Copies of Oracle Software And Support Materials on Rimini's Servers**

13        21.      Rimini copied "massive amounts" of Oracle software and support materials,

14  without ever obtaining any license from Oracle.  Tr. 165:12-16 (Davis); 302:3-4 (Ravin).

15        22.      Rimini had "thousands and thousands" of copies of Oracle software on Rimini

16  servers.  Tr. 551:10-18 (Ravin).

17        23.      Rimini created and used full working copies of the PeopleSoft, JD Edwards, and

18  Siebel software as "environments" on Rimini's servers.  Tr. 303:1-5, 320:13-321:2, 758:23-

19  759:4, 760:8-15 (Ravin); 1146:5-17 (Chiu); 1757:14-1758:11 (Whittenbarger).

20        24.      Rimini had at least 478 PeopleSoft, JD Edwards, and Siebel environments on its

21  own computer systems.  Dkt. 528, 19, 24, Exs. B & F (undisputed); Tr. 174:8-20 (Davis).

22        25.      Rimini has at least 216 environments on its servers that contain installed copies of

23  Oracle Database.  Dkt. 528, UF 25.

24        26.      Each environment on Rimini's local systems constitutes a reproduction of one or

25  more of the copyright registrations-in-suit.  Dkt. 528, UF 24.

26        27.      Many of Rimini's fixes for PeopleSoft software involved files that contained

27  modified versions of Oracle's source code.  Dkt. 528, UF 42.

28        28.      All of the copies of and derivative works prepared from Oracle software and

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    support materials that Rimini created and distributed to provide support were infringing.  PTX

2    1458 (Dkt. 401), 5328 (Dkt. 5328) (stipulations); Jury Instruction 24, Dkt. 880 (final jury

3    instructions); Dkt. 896 (verdict).

4    **D.      Rimini's Copying of PeopleSoft Software And Support Materials**

5    29.      Rimini's PeopleSoft copies were unauthorized.  Dkt. 474 (Order re Oracle's First

6    Mot. for Part. Summ. J.) at 27-28; Dkt. 896 (verdict).

7    30.      Rimini "stipulated to liability [for copyright infringement] as to the PeopleSoft

8    software."  Dkt. 766 at 19.

9    31.      The City of Flint and Pittsburgh Public Schools licenses are representative of "the

10   PeopleSoft license agreements for all of Rimini's PeopleSoft customers."  Dkt. 599 at 1.

11   32.      The PeopleSoft license expressly limits "copying the licensed software to only the

12   [customer's] facilities" and "solely" for the customer's "internal data processing."  Dkt. 474 at

13   11-13; 17-18.

14   33.      Both licenses forbid Rimini to have PeopleSoft software or documentation on its

15   systems.  PTX 698 at 5, § 16 (defined term "Software" includes documentation); *id.* at 1 § 1.1

16   ("Software" must be at customer's facilities); PTX 699 at 6 § 15 (defined term "Licensed

17   Rights" includes both software and documentation); *id.* at 1 § 2.1(d) (customer may not

18   "[d]istribute . . . to any third party any portion of the Licenses Rights").

19   **E.      Rimini's Copying of Oracle Database**

20   34.      The Court granted summary judgment to Oracle on its copyright infringement

21   claim as to Oracle Database.  Dkt 476 at 15-16.

22   **F.      Copying of Siebel and JD Edwards Software And Support Materials**

23   35.      Rimini's Siebel and JD Edwards copies were unauthorized.  Dkt. 896 (verdict).

24   36.      This Court already found that the JD Edwards license for Giant Cement (PTX

25   704) and the Siebel license for Novell (PTX 705) permit copies for "archival" and "backup"

26   purposes only.  Dkt. 474 at 22, 24.

27   37.      Mr. Allison's testimony established that those licenses were representative of the

28   JD Edwards and Siebel licenses generally, as both companies "used form license agreements."

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1  Tr. 1117:25-1118:5, 1118:15-19 (Allison).

2  38.  Licenses gave the customer the right "[t]o reproduce, exactly as provided by

3  [Oracle], a reasonable number of copies of the [software] solely for archive or emergency back-

4  up purposes or disaster recovery and related testing."  Dkt. 474 at 23 (quoting PTX 705, §

5  2.1(iv)).

6  39.  That provision can only be satisfied if Rimini's copies for "us[e] exclusively for

7  archival and back-up purposes, and related testing, as directly contemplated by Section 2.1(iv)."

8  Dkt. 474 at 24 n.20.

9  40.  Copies only fit that definition when they are created as "inherently an unmodified

10  copy of the software for use in the event that the production copy of the software (the copy used

11  on a customer's systems) is corrupted or lost."  Dkt. 474 at 11 (emphasis supplied).  In "complete

12  contrast" to that permitted backup copy, a software copy that is "modifiable (or already

13  modified)" is outside the scope of the license.  *Id.*

14  41.  Rimini "used all of the software," including all its "Siebel software" and "JDE

15  software" in its "work for customers."  Tr.  303:1-5 (Ravin); Tr. 364:3-8 (Ravin) (all

16  environments on Rimini's systems were "used in order to support customers" and for

17  "troubleshooting").

18  42.  Rimini's Siebel environments were "designed" at the outset for, among other

19  uses, "testing and development."  Tr. 318:19-22 (Ravin); Tr. 1146:5-25 (Chiu) (Siebel copies

20  "used to provide support"); Tr. 758:23-759:4 (Ravin) (same); Tr. 1754:8-15 (Whittenbarger)

21  (Siebel copies used for training); PTX 1461 (Chiu discussing customer Caterpillar (Siebel) "we

22  reclarified how our support model is based on building up an in-house lab environment with a

23  vanilla [not customized] fix-master [environment to test fixes and patches] and a customized

24  replica of their dev/test environment would enable us to maximize our responsiveness to them").

25  43.  Ravin likewise confirmed that JD Edwards environments were for "testing and

26  development" and for "diagnostics and support."  Tr. 321:1-6, 760:8-15 (Ravin).

27  44.  Ravin explained Rimini's troubleshooting process:  "you're taking the software,

28  you're playing with it to see if you can figure out what's going wrong, what the customer had

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    called in and reported."  Tr. 364:24-365:1 (Ravin).

2        45.    Rimini's copies of Oracle software were "general development test

3    environments" or "generic environment[s]" otherwise used for testing, development, support,

4    and troubleshooting.  Tr. 320:8-18, Tr. 367:2-8 (Ravin); Tr. 367:18-23 (Ravin) (Rimini would

5    use Customer A's software to troubleshoot for Customer B); Tr. 1146:5-25 (Chiu) ("explaining

6    that Rimini's internal Siebel environments were "used to provide support for those clients that

7    provided us their software"); Tr. 3186:13-3187:4 (Slepko) (Siebel local environments were used

8    to assist clients with their problems); Tr. 1754:8-15 (Whittenbarger) (Siebel environment used

9    for internal training); Tr. 1757:14-1758:5 (Whittenbarger) (Rimini "set up environments to

10    troubleshoot issues"); Tr. 2043:22-2044:21 (Blackmarr) (use of Customer A's software to

11    support Customer B); PTX 181 at 2 (June 2009 installation of JD Edwards was "to be used for

12    any configuration, testing and development required");  PTX 186 at 2 (Chiu explaining "I am

13    planning a JDE install for Medtronic's Support system"); PTX 190 (JD Edwards environments

14    associated with specific customers continued to be created through February 2010); PTX 33

15    ("Rimini would build out a[] [JD Edwards] environment to support them [customer]"); PTX 310

16    (Siebel environments used for troubleshooting); PTX 744 (same).

17        46.    An environment used for testing, development, or troubleshooting is not a backup

18    because you "don't touch" a backup.  Tr. 180:9-22, 182:16-183:4 (Davis).

19        47.    An "archive" or "backup":  a "copy . . . put on a physically different place," on a

20    "separate disk" or otherwise "put aside."  Tr. 180:5-181:17, 182:16-24 (Davis); *see also* Tr.

21    362:21-363:23 (Ravin) (discussing archives shipped to customers on DVDs or USB drives and

22    backups on tape drives).

23        48.    Backups are stored on tapes or other storage, unmodified.  Tr. 730:4-11 (Ravin);

24    Tr. 180:5-181:17, 182:16-24 (Davis).

25        49.    Copies used for troubleshooting, support, testing, or development are not backups.

26    Tr. 180:5-181:17, 182:16-24 (Davis).

27    **G.    RAM Copies**

28        50.    Rimini created additional in-memory copies, called RAM copies, every time it

1   started up or ran Oracle software.  Tr. 184:3-185:4 (Davis).

2        **H.**    **Cross-use And Distribution Of Oracle Software And Support Material**

3       51.    Rimini's unlicensed copying included widespread cross-use of Oracle

4   software.  Tr. 799:6-16 (Ravin).

5       52.    After previously denying cross-use, Ravin admitted at trial cross-use occurred "all

6   the time."  Tr. 552:1-13 (Ravin).

7       **Cross-use to Create Environments: Cloning**

8       53.    Rimini's cross-use included unlicensed "cloning" of Oracle software (copying an

9   environment created ostensibly for one customer for another customer).  Tr. 371:5-9, 374:12-15,

10   777:22-24 (Ravin); 1365:23-1366:14, 1381:188 (Williams); 192:22-193:7, 196:25-197:24,

11   198:25-199:11 (Davis); PTX 439; PTX 1491A; PTX 3507 at 31.

12       **Cross-use of Environments:  Developing Fixes and Updates**

13       54.    On many occasions, Rimini used one customer's environment to support other

14   customers.  Tr. 2232:2-2233:23 (Benge).

15       55.    Rimini used unlicensed "development" environments to create updates and fixes

16   for multiple customers.  Tr. 320:2-7 (Ravin); 202:18-203:3, 204:2-205:10 (Davis); PTX 5429.

17       56.    Rimini "reused [] all the time" by taking an update or fix that Rimini created for

18   one customer and using it for and distributing it to another customer, including using Oracle's

19   copyrighted code, changing it and distributing it to multiple Rimini customers.  Tr. 552:1-552:5,

20   809:19-810:13 (Ravin); 2232:2-2233:23 (Benge).

21       **Cross-use of Environments: Troubleshooting**

22       57.    On many occasions, Rimini used one customer's software to troubleshoot issues

23   other customers were having.  Tr. 367:18-23 (Ravin); 2043:22-2044:21 (Blackmarr).

24       **Cross-use of Support Material**

25       58.    Rimini used the code in one customer environment to write a detailed design

26   document to be used with other clients.  Tr. 1656:20-1661:4 (Grigsby).

27       59.    Rimini also used Oracle copyrighted support material as part of a sales

28   presentation to customers.  Tr. 1662:16-1668:7 (Grigsby).

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

60.     Rimini stored Oracle support materials in non-client-specific folders.  Tr. 1155:18-21 (Hicks).

61.     Rimini used support documentation downloaded on behalf of one customer to rephrase the information and distribute it to other Rimini clients whose Oracle support was expired.  PTX 236; Tr. 188:8-189:15 (Davis).  Rimini created "extracts" that Rimini gave its customers so that unlicensed copies that were shared amongst customers.  Rimini told customers that it was creating separate extracts for each customer, but Rimini was using one customer's log-in, starting with a faux customer, Leads Customers Growth, to copy all materials from Oracle's websites and then copying disks that Rimini distributed to multiple customers.  Tr. 333:9-334:3, 335:12-16 (Ravin); 1160:15-1161:10 (Hicks); PTX 7.

**I.     Software Library**

62.     Rimini's "software library" was massive.  PTX 10; Tr. 166:9-20 (Davis); 242:1-3, 242:14-20 (Ravin).

63.     Ravin approved copying to that library (PTX 4 at 3-4; PTX 5), which included software and documentation for all of the products at issues:  PeopleSoft, JD Edwards, Siebel, and Database.  Tr. 167:5-10 (Davis); Tr. 1756:6-1757:8 (Whittenbarger); PTX 8; PTX 9; PTX 10; PTX 223.

64.     Rimini downloaded PeopleSoft and JD Edwards materials into the library before Rimini even had any clients licensed for those products.  Tr. 289:5-10 (Ravin); PTX 4; PTX 5; PTX 6.

65.     Rimini did not keep track of how that library was used or audit the library, and Rimini deleted that library shortly before Oracle filed this lawsuit.  Tr. 170:24-171:10 (Davis); Tr. 421:18-20, 422:21-423:4 (Ravin).

**J.     Automated Downloading**

66.     Rimini also used customer log-ins to download massive amounts of materials, for multiple clients, including materials customers were not authorized to download.  Tr. 1751:4-16 (Whittenbarger); PTX 7.

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

67.     Oracle's Terms of Use prohibited access using automated tools since at latest February 19, 2007.  PTX 19; Tr. 864:9-865:5, 867:16-869:15 (Allison); 480:24-481:5 (Ravin).

68.     Ravin and others at Rimini read and knew about those restrictions and understood that they precluded automated downloading.  PTX 20; Tr. 480:10-14, 824:25-825:16 (Ravin).

69.     Ravin then made the decision to use those automated tools "despite those changes."  Tr. 482:11-19, 726:20-24 (Ravin); PTX 21, PTX 22, PTX 27.

70.     Rimini used "automated" downloading tools that Ravin and Rimini knew were not authorized.  Tr. 479:3-15, 769:9-10, 769:22-25 (Ravin); 1140:17-20 (Chiu).

71.     Rimini was trying to stay under "the radar" (PTX 621), but Oracle eventually discovered the downloading due to Rimini's "massive download volumes" (PTX 42).

72.     Rimini's automated downloading tools caused Rimini at times to make more requests to Oracle's Knowledge Base system than all other worldwide users of that system combined, including for periods of November 2008.  Tr. 1167:8-1168:2 (Hicks).

73.     In periods from November 2008 through January 2009, Rimini accessed Oracle's systems and used automated downloading tools from up to twelve virtual machines concurrently.  Tr. 1169:17-1170:2 (Hicks).

74.     In November 2008, Rimini downloaded from Oracle's systems at times from ten virtual machines concurrently "pretty much around the clock" to obtain materials for XO Communications.  Tr. 1170:19-1171:6; PTX 46 at 2.

75.     Rimini received written notice that its automated downloading was not permitted and was harming Oracle's systems and Rimini employees worried that Oracle was "onto us from massive download volumes."  PTX 42 at 1.

76.     Rimini wrote to Oracle in response to the notice:  "I understand our current methodology creates issues with CPU utilization on Oracle's servers."  PTX 482 at 3.

77.     Oracle blocked Rimini IP addresses in response to Rimini's downloading, and Rimini "obtained some additional fixed IP addresses" to circumvent Oracle's IP blocks and continue downloading.  Tr. 771:19-772:7 (Ravin); Tr. 1175:17-1176:3 (Hicks); Tr. 1232:8-20 (Baron).

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

78.     Rimini employees also used their home, residential IP addresses to attempt to evade Oracle's detection and avoid Oracle's IP blocking.  PTX 46 at 4 ("Started downloading the attachments. . . . (from my house and not using the download VMs) but got blocked after about 2,000 attachments"); Tr. 1232:21-1233:14 (Baron).

79.     Rimini used the IDs for multiple customers to "crawl" Oracle's website, causing more than 184,000 deadlocks.  Tr. 1180:19-1181:4 (Hicks).

80.     Rimini's unauthorized access using automated tools from November 2008 through January 2009 harmed Oracle's systems, causing slowdowns, errors, and deadlocks, and crashed Oracle's server.  Tr. 1172:9-15, 1174:5-1175:1, 1179:9-23 (Hicks); 1201:14-1202:11; 1210:5-1211:10 (Renshaw); PTX 665; PTX 669.

81.     Rimini's unauthorized access using automated tools rendered Oracle's Knowledge Management system completely unavailable for four and a half hours in January 2009.  Tr. 1211:8-10 (Renshaw); PTX 669.

82.     Rimini's use of automated tools to access Oracle's systems "harmed Oracle significantly."  Tr. 1168:23-1169:2 (Hicks).

**K.     Improper Use of Credentials**

83.     Oracle's Terms of Use forbid using any entity's credentials for the benefit of any entity other than the entity to which the credentials were issued.  PTX 19.

84.     Rimini did not abide by this restriction on the use of credentials.  PTX 8; Tr. 289:22-291:19, 333:9-334:3, 335:12-16 (Ravin); Tr. 1601:10-1602:24 (Leake); Tr. 1738:2-18 (Holmes); Tr. 2011:15-2013:5 (Blackmarr); 1160:15-1161:10 (Hicks); PTX 7; PTX 236; Tr. 188:8-189:15 (Davis).

**L.     Rimini's Illegal Actions Have Harmed Oracle's Reputation and Goodwill**

85.     Rimini's copyright infringement and computer access violations allowed it to charge substantially less than Oracle charged for support: often 50% or less of what Oracle charged.  Tr. 207:10-16 (Davis); Tr. 1940:6-1942:6, 1950:16-1951:12 (Dean).

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

86.     Rimini's copyright infringement and computer access violations allowed it to gain scale quickly, with minimal effort and investment.  Tr. 443:4-445:6 (Ravin); Tr. 1702:18-1703:22 (Yourdon); Tr. 1453:22-1476:6 (Maddock).

87.     By purporting to offer vendor-level support at half the price or less of Oracle support and creating the impression that Oracle was overcharging for support, Rimini eroded "the bonds and the trust that [Oracle] ha[d] with [its] customers."  "For the customers [Oracle] lost, it totally broke the relationship."  By breaking these relationships, customers were also less likely to purchase other Oracle products.  Tr. 948:17-949:8, 934:14-936:11 (Catz); DTX 146.

88.     A customer who moves to Rimini for support may later find that its systems are out of date.  Tr. 935:18-936:3 (Catz); Tr. 1571:11-1573:6 (Screven).

89.     By creating uncertainty and distrust in the marketplace, Rimini's copyright infringement and computer access violations caused Oracle to "hav[e] to work extra hard to keep the customers [Oracle] ha[d]" due to the injury to Oracle's goodwill and reputation.  Tr. 948:17-949:12 (Catz).  As well, customers who left Oracle support for Rimini support were less likely to license additional software of any type from Oracle.  *Id.*

**M.     Rimini Has Been Evasive And Dishonest Throughout This Litigation**

90.     Rimini continued its infringing activities through at least February 2014.  Tr. 751:7-15 (admission by counsel for Rimini).  Rimini claims to have changed certain of its infringing behaviors after the Court granted partial summary judgment to Oracle on its copyright claims.  Tr. 754:9-13 (colloquy with the Court).

91.     Rimini created local environments and prepared and distributed derivative works from those environments for years after SAP and TomorrowNow conceded liability for copyright infringement and after TomorrowNow pled guilty to criminal copyright infringement.  *See* Dkt. 823-6 (civil stipulation discussing local environments on TomorrowNow's computer systems); Dkt. 823-5 (guilty plea discussing local environments on TomorrowNow's computer systems).

92.     Before trial, Rimini claimed that a software library never existed at Rimini Street. PTX 5332  (March 29, 2010 Answer) at  ¶ 34 (denying existence of software library);  PTX 1482 (June 16, 2011 Answer) at ¶ 34 (same).

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    93.    At trial, Ravin claimed that Rimini's software library was not really a library, Tr.

2    247:7-12,  that it was only "installation media," Tr. 255:6-9, 565:9-11, and that it was only

3    PeopleSoft, Tr. 247:14-20.

4    94.    Before trial, Rimini's 30(b)(6) designee, Senior Vice President Brian Slepko, and

5    Ravin each flatly denied in depositions ever using one customer's environment to develop or test

6    updates for other customers.  Tr. 804:25-805:5 (Ravin); 3173:1-3174:3 (Slepko).

7    95.    At trial, Ravin admitted that Rimini used one customer environment to develop or

8    test updates for other customers "all the time."  Tr. 552:1-5 (Ravin).

9    **N.    Rimini Has Failed To Cooperate In Discovery In *Rimini II***

10    96.    Rimini filed its declaratory action regarding its allegedly new business model on

11    October 15, 2014.  Decl. of John A. Polito in Supp. of Mot. ("Polito Decl.") ¶ 3 & Ex. A.  Oracle

12    filed its Counterclaims on February 17, 2015, alleging copyright infringement and additional

13    claims.  *Id.* ¶ 4 & Ex. B.

14    97.    To date, Rimini has failed to produce a complete list of its customers, a complete

15    list of environments that it has created or used, a complete list of the fixes and updates that it has

16    distributed, and a complete list of its downloads, despite Oracle's discovery requests.   Polito

17    Decl. ¶¶ 5-8 & Ex. C.

18    98.    To date, Rimini has declined to provide any information regarding its "migration"

19    from its infringing business model to its allegedly new business model.  Polito Decl. ¶ 5-6, 8 &

20    Ex. C.

21    **III.    LEGAL STANDARDS**

22    The Copyright Act provides that this Court may enter a permanent injunction "on such

23    terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.

24    §502(a).  As discussed below, the Ninth Circuit applies the traditional, four-factor test set forth in

25    *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), to a request for an injunction in a

26    copyright case.  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999 (9th Cir.

27    2011).

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    The Copyright Act further provides that, "[a]s part of a final judgment or decree, the

2    court may order the destruction or other reasonable disposition of all copies or phonorecords

3    found to have been made or used in violation of the copyright owner's exclusive rights."  17

4    U.S.C. § 503(b).  A disposition order is "an equitable remedy issued under the broad powers

5    vested in a trial judge under 17 U.S.C. § 503(b)."  *Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir.

6    1992).

7    Both the California Computer Data Access and Fraud Act ("CDAFA") and the Nevada

8    Computer Crimes Law ("NCCL") provide for injunctive relief by statute.  *See* Cal. Penal Code §

9    502(e); Nev. Rev. Stat. § 205.513.  An injunction may issue under the NCCL without proof of

10   irreparable harm.  Nev. Rev. Stat. § 205.513(2) ("An injunction . . . [m]ay be issued without

11   proof of actual damage sustained by any person.").

12   Oracle also seeks judgment in its favor under the UCL, which prohibits unlawful,

13   fraudulent, and unfair business practices.  *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Tel.*

14   *Co.*, 20 Cal. 4th 163, 180 (Cal. 1992).  The UCL "borrows" violations of nearly any state or

15   federal law as predicate conduct.  *Id.* There is no right to a jury trial under the UCL, even where

16   the predicate violation is triable by jury.  *Hodge v. Super. Ct.*, 145 Cal. App. 4th 278, 284 (2006).

17   Because violation of a predicate law such as the CDAFA is an automatic violation of the UCL,

18   *Cel-Tech*, 20 Cal. 4th at 180, Oracle is entitled to judgment in its favor on that claim.

19   Oracle should also be provided injunctive relief under the UCL.  Such relief "is an

20   appropriate remedy where a business has engaged in an unlawful practice."  *Herr v. Nestle*

21   *U.S.A., Inc.*, 109 Cal. App. 4th 779, 789 (2003).  Injunctive relief under the UCL is statutory

22   (§17203) and provides the Court broad "cleansing power" that may not available under

23   traditional legal theories.  *Fletcher v. Security Pac. Nat'l Bank*, 23 Cal. 3d 442, 449 (1979);

24   *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000).

25   **IV.    ARGUMENT**

26   Oracle seeks a permanent injunction, impoundment or appropriate disposition of

27   infringing means and materials, and entry of judgment as to its unfair competition claim.  In light

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    of the trial record and other evidence before the Court, Oracle is clearly entitled to each of these

2    remedies.

3        **A.    The Court Should Enter A Permanent Injunction**

4        To obtain an injunction on it copyright, CDAFA, and UCL claims, Oracle must show that

5    "1) [it] suffered an irreparable injury; 2) remedies available at law are inadequate to compensate

6    for that injury; 3) considering the balance of hardships between [Oracle] and [Rimini Street], a

7    remedy in equity is warranted; and 4) the public interest would not be disserved by a permanent

8    injunction." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1152-53 (9th Cir. 2011) ("*Apple II*").

9    For Oracle's NCCL claim, the standard is similar, but an injunction may issue without proof of

10   irreparable harm.   Nev. Rev. Stat. § 205.513(2).

11       The record in this case shows why harm from continued or future infringement will be

12   irreparable.  Rimini's unlawful actions irreparably injured Oracle's business reputation and

13   harmed its goodwill.  Rimini's infringing and illegal short-cuts enabled it to rapidly gain scale

14   and offer cut-rate support for Oracle software.  Through that misconduct, Rimini gained an

15   improper advantage that, to this day, it uses to harm Oracle's goodwill by telling customers that

16   Oracle's services are overpriced and could be provided at Rimini's rates.  Because Oracle seeks

17   only to enjoin illegal actions or copying that this Court has found to be outside the scope of any

18   license, and because Rimini claims that it no longer infringes or performs automated

19   downloading and that it no longer uses the unlawfully obtained copies, the balance of hardships

20   tips entirely in favor of Oracle.  Finally, public policy favors entry of injunctions against

21   unlawful behavior.

22       1.    **Rimini's Infringement Has Caused and Will Cause Irreparable
              Injury to Oracle's Goodwill and Reputation, for Which Remedies at
23            Law Are Insufficient**

24       First, injury to business reputation and to goodwill is irreparable.  *See Apple II*, 658

25   F.3d at 1154 (irreparable harm shown where infringement was "causing Apple a loss of business

26   reputation" and "'goodwill'") (internal citation omitted); *see also Rent-A-Center, Inc. v. Canyon

27   Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries,

28   such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm.");

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1  *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business

2  goodwill and reputation is unquantifiable and considered irreparable . . . ."); *Am. Broadcasting*

3  *Cos. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 399 (S.D.N.Y. 2012) (finding likelihood of irreparable

4  harm where alternative content-delivery company was expanding rapidly and the company's

5  CEO had testified that "part of the idea . . . was to allow consumers to bypass" traditional

6  content-delivery channels), *aff'd sub nom. WNET v. Aereo, Inc.*, 712 F.3d 676, 696 (2d. Cir.

7  2013), *rev'd on diff. grounds sub nom. Am. Broadcasting Cos. v. Aereo, Inc.*, 134 S.Ct. 2498

8  (2014); *Teller v. Dogge*, No. 2:12-CV-591, 2014 WL 4929413 at *5 (D. Nev. Sept. 30, 2014)

9  (entering permanent injunction because copyright infringement "likely to have a negative effect

10  on plaintiff's reputation and goodwill").

11       Rimini's copyright infringement enabled Rimini to gain scale quickly with minimal

12  effort, and this infringement is the reason why Rimini can offer its cut-rate support today.  Tr.

13  443:4-445:6 (Ravin) (Rimini's plan was to avoid writing its own software, thereby enabling it to

14  get high valuation multiples without significant investment); *see also* Tr. 1702:18-1703:22

15  (Yourdon); Tr. 1453:22-1476:6 (Maddock) (non-infringing alternatives lack scale).  Rimini

16  copied Oracle software, built a business (PTX 2155 at 4), and did so that, in Rimini's words,

17  Rimini Street would "separate Oracle from its acquired licensees -- denying Oracle recurring

18  revenue."  PTX 3.  Rimini copied Oracle software, targeted Oracle customers and disrupted the

19  goodwill in those relationships, as well as the opportunity to repair any damaged relationships.

20  Ravin acknowledged terminating Oracle's relationships with $300 million of Oracle contracting

21  customers.  Tr. 548:11-19, 549:6-11 (Ravin).  Rimini talked about Oracle customers as a billion

22  dollar opportunity.  Tr. 1441:25-1442:5 (Maddock); Tr. 2691:21-24 (Zorn).  Rimini's infringing

23  and unlawful actions continue to damage Oracle's reputation among its customers and continue

24  to harm Oracle's goodwill.  These harms will only be amplified by continued or future

25  infringement.

26       Similarly, Rimini's infringing offerings undermine trust in Oracle and Oracle's offerings.

27  Infringement enables Rimini to offer maintenance services at half-off of Oracle's price (or less).

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    By so doing, Rimini undermines Oracle's customer relationships and harms Oracle's goodwill

2    with its customers.  As Oracle's CEO, Ms. Catz, explained:

3                Q. And what does a promise like this mean for Oracle?

4                A. Well, when they come to our customers, our customers wonder

5                all of a sudden whether we are overcharging them. It really breaks

6                the bonds and the trust that we have with our customers. We've

7                negotiated a price with them. All of a sudden, they're wondering

8                whether we've treated them fairly.

9    Tr. 935:11-17.  Similarly, a customer who believes Rimini's promises may later find their

10   systems out of date and "fr[ozen] in time," then incorrectly blame Oracle for a bad experience.

11   Tr. 935:18-936:3 (Catz); *see also* 1571:11-1573:6 (Screven).

12        Rimini is also causing Oracle irreparable harm because its competing offering is built

13   upon infringement and unlawful behavior.  *See Douglas Dynamics, LLC v. Buyers Prods. Co.*,

14   717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one

15   another, the patentee suffers the harm—often irreparable—of being forced to compete against

16   products that incorporate and infringe its own patented inventions.").

17        Second, the nature of the irreparable harm suffered by Oracle supports a finding that no

18   adequate remedy at law exists to compensate Oracle.  Courts find irreparable harm even where

19   lost profits or lost future sales may be difficult to prove.  *See Mytee Products, Inc. v. Harris*

20   *Research, Inc.*, 439 Fed. Appx. 882, 887 (Fed. Cir. 2011) ("We have never held, however, that in

21   order to establish irreparable harm a patentee must demonstrate that it is entitled to lost profits . .

22   . .").  Any finding by the jury that the amount of Oracle's lost profits had not been adequately

23   proven is therefore no bar to entry of Oracle's requested injunction and rather supports the need

24   for injunctive relief.  Oracle's harms to goodwill and market reputation are unquantifiable, and

25   thus cannot be compensated solely by remedies at law.  "Harm resulting from lost profits and

26   lost customer goodwill is irreparable *because* it is neither easily calculable, nor easily

27   compensable and is therefore an appropriate basis for injunctive relief."  *eBay, Inc. v. Bidder's*

28   *Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (emphasis supplied); *accord Apple Inc.*

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    *v. Psystar Corp.*, 673 F. Supp. 2d 943, 949-50 (N.D. Cal. 2009) ("*Apple I*") ("the same evidence

2    and rationale put forth by Apple to show irreparable harm support the conclusion that an award

3    of damages would be inadequate, simply because the harm caused to Apple's reputation,

4    goodwill, and brand is difficult, if not impossible, to quantify."), *aff'd, Apple II*, 658 F.3d at

5    1162.  In sum, the harm Rimini has caused to Oracle's goodwill and market reputation are not

6    adequately compensated by money damages.

7                2.    **The Balance of Hardships Tips Strongly in Favor of Oracle Because**

8                       **the Enjoined Acts Have No Legitimate Business Purpose**

9         Because Oracle seeks only to enjoin acts that have already been determined to be

10   unlawful, the balance of hardships tips in Oracle's favor.  With respect to copyright

11   infringement, the balance of hardships tips undisputedly in favor of a rights holder seeking to

12   protect its copyrighted works where the party to be enjoined does not have a "separate legitimate

13   business purpose" for continuation of the infringing acts.  *Metro-Goldwyn-Mayer Studios v.*

14   *Grokster, Ltd.,* 518 F. Supp. 2d 1197, 1220 (C.D. Cal 2007); *Teller,* 2014 WL 4929413 at *5

15   ("Any harm to defendant in forcing him to comply with the requirements of the law is

16   outweighed by plaintiff's efforts to protect his copyrighted performances . . . from consumer

17   confusion."); *cf. Rimini II*, Order re Mot. to Strike, Dkt. 90 at 6 (declining to give weight to

18   "[t]he fact that there may not be any manner by which a competing company like Rimini can

19   engage in its services without engaging in copyright infringement").

20        With respect to computer access violations, Oracle's burden in continuing to block

21   Rimini's IP addresses and send cease-and-desist communications outweighs any burden Rimini

22   would face in ceasing its unlawful downloading.  *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965,

23   973 (N.D. Cal. 2015) (granting an injunction where a defendant guilty of computer fraud

24   "continued to fraudulently obtain Facebook accounts and to access Facebook's services" after

25   Facebook sent multiple cease-and-desist letters and terminated multiple accounts).

26        If, as Rimini claims, it has ceased all infringing conduct and further has ceased its

27   unlawful computer access, then an injunction would create no burden whatsoever on Rimini, as

28   Rimini only would be barred from doing things that it purportedly is no longer doing.  However,

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    if, as Oracle believes, Rimini misconduct is continuing, then the balance of hardship tips

2    decisively in Oracle's favor as Rimini is a recidivist, with no legitimate business purpose for its

3    actions, that can only be stopped through an appropriate injunction.

4           3.      **Public Policy Favors Entry of an Injunction Against Infringers and
                    Those That Have Committed Computer Access Violations**
5

6           An injunction against future copyright infringement and violations of the computer

7    access statutes are in the public interest.  As to the former, a "reasonably tailored" injunction that

8    vindicates copyright rights "would not harm the interests of the public; rather, [it would be]

9    consistent with the policies underlying copyright protection . . . ."  *Apple I*, 673 F. Supp. 2d at

10   950; *see also Apple Computer v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983)

11   ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright

12   protections and, correspondingly, preventing the misappropriation of the skills, creative energies,

13   and resources which are invested in the protected work.").  Those policies are to encourage

14   creating new, original works and discourage infringers who free ride on the works of others.

15   *Compare Eldred v. Ashcroft*, 537 U.S. 186, 225-26 (2003), with Tr. 443:4-445:6 (Ravin)

16   (Rimini's plan was to get the high-multiples valuation of a software company while avoiding the

17   investment required to write original software).

18          As to the latter, both the CDAFA and the NCCL are criminal statutes; entering an

19   injunction requiring Rimini to obey the law is undisputedly an injunction that advances public

20   policy.  *TracFone Wireless, Inc. v. Adams*, 14-cv-24680, --- F. Supp. 3d ----, 2015 WL 1611310,

21   at *8 (S.D. Fla. Apr. 9, 2015) (holding in granting injunction that "the public interest is advanced

22   by enforcing faithful compliance with the laws of the United States").  Oracle's proposed

23   injunction would advance relevant public policy interests.

24          4.      **Rimini's Expected Claims That It Has Ceased Its Improper Behavior
                    Should Not Be Credited and Do Not Bar Injunctive Relief**
25

26          Rimini's expected argument that it no longer performs the actions adjudged to infringe or

27   violate computer access statutes is no basis to oppose entry of an injunction.  "A private party's

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    discontinuation of unlawful conduct does not make the dispute moot, however.  An injunction

2    remains appropriate to ensure that the misconduct does not recur as soon as the case ends."

3    *Grokster*, 518 F. Supp. 2d at 1222 (quoting *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir.

4    2005)); *see also Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1136 (D.

5    Ariz. 2013) ("Because Defendants received numerous calls, letters, and cease and desist notices

6    from BMI but did not cease infringement, a permanent injunction is warranted to prevent future

7    copyright violations.").

8         Oracle has thus far been unable to test Rimini's self-serving claims that its behavior has

9    changed.  Though more than a year has passed since Rimini filed a declaratory action seeking

10   absolution for its "new" business model, Rimini has thus far failed to produce a list of its

11   customers, a list of environments that it has created or used, a list of the fixes and updates that it

12   has distributed, and a list of its downloads.  Polito Decl. ¶¶ 3-8 & Ex. C.  Rimini has also

13   declined to provide any information regarding its "migration" from its infringing business model

14   to its allegedly new business model.  *Id.* ¶¶ 5-6, 8 & Ex. C.  And with Rimini refusing to provide

15   discovery on Rimini's "new" business models, Oracle cannot test whether Rimini is creating and

16   distributing derivative works.  Polito Decl. ¶¶ 5-9.  Rimini's protests of changed behavior are

17   entitled to little weight.[1]

18        Rimini's purported changes to its practices largely occurred only after the Court ruled

19   against it on summary judgment.  Rimini continued creating and using local environments on its

20   computer systems for years after the lawsuit was filed, after SAP conceded civil liability, and

21   after TomorrowNow pleaded guilty to criminal charges for having local environments of Oracle

22   software on its computer systems.  Dkt. 823-6 (civil stipulation); Dkt. 823-5 (guilty plea); *see*

23   *also* Dkt. 823 at 5-6 (detailing how guilty plea to criminal copyright infringement and civil

24   stipulation detailed local environments on TomorrowNow's systems).  And, as was admitted at

25   _____

26   [1] To be clear, Oracle is not seeking in this motion to have the Court rule on the merits of the
     issues in dispute in *Rimini II*.  Instead, Oracle asks the Court for a permanent injunction
     restraining Rimini from continuing to commit the infringement that this Court and the jury have
27   already determined to constitute copyright infringement.  The pendency of the second case is
     significant simply to illustrate that the threat of continued violations is high because there is an
28   existing dispute about whether Rimini's current, ongoing conduct is infringement.

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1   trial, Rimini still created, copied, and relied upon local environments until at least February

2   2014.  Tr. 751:7-15 (admission by counsel).  Rimini claimed it stopped these practices in light of

3   the Court's summary judgment order, but as the Court commented at trial, "frankly, I'm

4   unimpressed that he changes his business practice after the Court has ruled that he's committed

5   copyright infringement in various ways, that he's following the order of the Court, essentially, at

6   the time he does that."  Tr. 754:9-13.

7           Rimini's supposed change in practice only after a finding of infringement supports the

8   inference that Rimini will continue to infringe in the absence of a permanent injunction.

9   *Grokster*, 518 F. Supp. 2d at 1221 ("such an inference is warranted based upon various

10  undisputed facts, including . . . [cessation] admittedly did not commence until after this Court's

11  September 27, 2006 Order granting Plaintiffs' motion for summary judgment."); *accord SEC v.*

12  *Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) (noting that promises of reform are

13  unpersuasive "especially if no evidence of remorse surfaces until the violator is caught"); *Walt*

14  *Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (upholding trial court's permanent

15  injunction where the defendant "simply took the action that best suited him at the time [by

16  voluntarily ceasing infringement]; he was caught red-handed . . . [and defendant] suddenly

17  reformed"); *see also United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960) (observing that

18  voluntary cessation of activities prompted by a government investigation and subsequent suit is

19  not reason "to deny relief altogether by lightly inferring an abandonment of the unlawful

20  activities from a cessation which seems timed to anticipate suit").

21          Defendants' protestations of reform should not be accepted especially given their history

22  of lying to the Court.  Rimini falsely claimed that a software library never existed at Rimini

23  Street.  PTX 5332  (March 29, 2010 Answer) at  ¶ 34 (denying existence of software library);

24  PTX 1482 (June 16, 2011 Answer) ¶ 34 (same).  Rimini and Ravin denied at trial the full truth

25  about the software library, falsely claiming it was not really a library, Tr. 247:7-12, that it was

26  only "installation media," Tr. 255:6-9, 565:9-11, and that it was only PeopleSoft.  Tr. 247:14-16.

27  In fact, Rimini's employees called the library a library, and the library contained copies of

28  software and documentation for all the products at issue in the case.  PTX 6 (3 terabytes of

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1   Siebel part of "full local library"); PTX 8 ("major download from Cust Conn [PeopleSoft

2   documentation] . . .  all of this in house and at our disposal"); PTX 9 ("20 GB of content . . . so

3   far" for "PSFT Customer Connection Extract"); PTX 10 ("complete library of all the content that

4   is available from Customer Connection . . . proactively download all the available content");

5   PTX 223 ("now setup to download contents of the Oracle eDelivery website on a weekly basis"

6   including Siebel, PeopleSoft, and J.D. Edwards; "Thanks for adding this to the library"), Tr.

7   1756:6-1757:8 (Whittenbarger) (confirming PeopleSoft, Oracle Database, Siebel, and J.D.

8   Edwards were all present and "used in connection with [Rimini's] work for customers"); 167:5-

9   10  (Davis) (library had all products).

10         Similarly, Rimini continued to deny cross-use all the way until trial.  Rimini's 30(b)(6)

11   designee, Senior Vice President Brian Slepko, and Ravin each flatly denied in depositions ever

12   using one customer's environment to develop or test updates for other customers.  Tr. 804:25-

13   805:5 (Ravin); 3173:1-3174:3 (Slepko).   Then at trial, Ravin said Rimini did it "all the time."

14   Tr. 552:1-5 (Ravin).  Rimini's demonstrated refusal to take responsibility for its infringing

15   conduct, before and even through trial, confirms the necessity of an injunction to prevent

16   continued infringement.

17         Finally, as noted above, even if Rimini actually were being forthright (for once) about its

18   "new" non-infringing business model, then Rimini would face no hardship if an injunction issued

19   as the injunction would only bar conduct that Rimini purportedly has ceased, while ensuring that

20   Rimini does not return to its old, infringing ways.

21         **B.    Oracle's Proposed Injunctive Relief Is Appropriately Tailored**

22         Oracle's requested relief is appropriately tailored to prevent future occurrences of the

23   conduct adjudged to constitute copyright infringement or computer access violations in this case.

24   As to its copyright claims, this Court has determined as a matter of law that:

25         •    PeopleSoft licenses "prohibit[] Rimini Street from copying or preparing

26              derivative works . . . other than to support the specific licensee's own internal data

27              processing operations on the licensee's own computer systems" (Jury Instruction

28              24, Dkt. 880);

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1        • JD Edwards licenses prohibit Rimini Street from "mak[ing] copies . . . [to] access
2           the software's source code to carry out development and testing of software
3           updates, to make modifications to the software, or to use the customer's software
4           or support materials to support other customers" (Jury Instruction 24, Dkt. 880);
5        • Siebel licenses prohibit Rimini Street from "mak[ing] copies . . . [to] access the
6           software's source code to carry out modification, development and testing of the
7           software not related to archive, emergency back-up, or disaster recovery purposes,
8           or to use the customer's software or support materials to support other customers"
9           (Jury Instruction 24, Dkt. 880); and,
10       • clients' licenses to Oracle Database do not permit Rimini to make any copies, and
11          do not permit Rimini Street to use any client copies of Oracle Database to
12          "develop and test updates for its clients" or to "support multiple customers" (Dkt.
13          476 at 14-15).
14  Oracle's proposed injunction pursuant to 17 U.S.C. § 502 seeks to enforce precisely these license
15  restrictions.
16      With respect to unauthorized downloading, the jury has determined that Defendants'
17  actions in violation of Oracle's Terms of Use were knowing, willful, and without authorization.
18  Jury Instructions 47, 48, 53, 54, Dkt. 880 (final jury instructions); Dkt. 896 (verdict).  Oracle's
19  proposed injunction seeks to enforce the restrictions in Oracle's Terms of Use, and thus is
20  appropriately tailored.
21      Oracle's injunction appropriately reaches not only to Rimini, but also to its subsidiaries,
22  affiliates, employees, directors, officers, principals, and agents involved in the relevant behavior.
23  The Court has the power "to enforce orders against 'a person who is not a party . . . as if a
24  party.'" *Irwin v. Mascott*, 370 F.3d 924, 931-32 (9th Cir. 2004) (citing Fed. R. Civ. P. 71
25  (2004)).  Any injunction entered by the Court will bind not only Rimini, but also its "officers,
26  agents, servants, employees, and attorneys" and "other persons who are in active concert or
27  participation with" them.  Fed. R. Civ. P. 65(d)(2)(B)-(C).  The phrase "active concert or
28  participation" includes both aiders and abettors of, and privies of, an enjoined party.  *See Golden*

1   *State Bottling Co., v. N.L.R.B.*, 414 U.S. 168, 179-80 (1973).  Oracle's proposed injunction is

2   fully consistent with the scope of this Court's equitable power.  *See Inst. of Cetacean Res. v. Sea*

3   *Shepherd Conservation Soc'y*, 774 F.3d 935, 949-50 (9th Cir. 2014) (discussing parties' and

4   non-parties' duties and obligations under an injunction).

5           **C.    Oracle's Proposed Disposition Order Is Reasonable**

6           Impoundment and disposition of infringing articles is an independent remedy provided by

7   statute under the Copyright Act, separate from both injunctive and monetary relief.  *See* 17

8   U.S.C. §§ 502 (injunctive relief), 503 (impoundment and disposition), 504 (damages).  The trial

9   court has "broad powers" to enter a reasonable disposition order as part of final judgment.

10  *Rogers*, 960 F.2d at 313.  Courts in the Ninth Circuit have extended disposition orders to cover

11  "electronic materials used to infringe copyrights," as well as the infringing articles themselves.

12  *Getty Images (US), Inc. v. Virtual Clinics*, No. No. C13–0626 JLR, 2014 WL 1116775 at *9

13  (W.D. Wash. Mar. 20, 2014) (collecting cases); *see also* 17 U.S.C. § 503(b) (providing for

14  disposition of "all plates, molds, matrices, masters, tapes, film negatives, or other *articles by*

15  *means of which such copies or phonorecords may be reproduced*") (emphasis supplied).  With

16  respect to computer software in particular, any continued use of infringing copies would result in

17  RAM copies, and thus in additional acts of infringement.  *See Alcatel USA, Inc. v. DGI*

18  *Technologies, Inc.*, 166 F.3d 772, 791 (5th Cir. 1999); Tr. 184:3-185:4 (Davis).

19          With respect to Oracle's proposed disposition order pursuant to 17 U.S.C. § 503, Oracle

20  is entitled to request that all infringing copies and all means used to produce them be destroyed

21  or returned directly to Oracle.  *See Rogers*, 960 F.2d at 313 (return of copy to plaintiff); *Curtis v.*

22  *Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1214 (W.D. Wash. 2014) (ordering that the

23  defendant "return . . . all of the [infringing] books in issue and the means of producing them");

24  *Getty Images (US), Inc. v. Virtual Clinics*, No. C13–0626 JLR, 2014 WL 1116775 at *9 (W.D.

25  Wash. Mar. 20, 2014) (destruction of articles and means); *City of Carlsbad v. Shah*, 850 F. Supp.

26  2d 1087, 1115-16 (S.D. Cal. 2012) (destruction); *Software Freedom Conservancy, Inc. v.*

27  *Westinghouse Digital Electronics, LLC*, 812 F. Supp. 2d 483, 491 & n.57 (S.D.N.Y. 2011)

28  (return of copies to plaintiff).

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    Instead of taking direct possession of the copies or asking for their destruction, Oracle

2    moves, instead, for an order that all computers and storage media containing infringing copies be

3    provided to a neutral third party of Oracle's choice.  This will allow both Parties to have

4    appropriate access to the materials during litigation, and will avoid the risk that data or metadata

5    will be altered or destroyed.  This is a "reasonable disposition," 17 U.S.C. § 503(b), in light of

6    the Parties' ongoing litigation in *Rimini II*.

7    **D.      Oracle Is Entitled to Judgment on Its UCL Claim**

8    Oracle also seeks judgment (as well as the injunction described above, as to unauthorized

9    downloading) under the UCL, which prohibits unlawful, fraudulent, and unfair business

10   practices.  *Cel-Tech*, 20 Cal. 4th at 180.  The "unlawful" practices prohibited by the UCL are

11   "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

12   regulatory, or court-made."  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App.

13   1994).  The "unlawful" practices at issue in this case include Defendants' violations of the

14   CDAFA.  *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir.

15   2007) ("The UCL . . . embraces anything that can properly be called a business practice and that

16   at the same time is forbidden by law") (internal citation and quotation marks omitted).  "By

17   proscribing any unlawful business practice, section 17200 borrows violations of other laws and

18   treats them as unlawful practices that the unfair competition law makes independently

19   actionable."  *Cel-Tech*, 20 Cal. 4th at 180.  Therefore, a violation of a predicate law, such as the

20   CDAFA, is an automatic violation of the UCL.  On the basis of the jury verdict against

21   Defendants, Oracle is entitled to judgment in its favor on this claim.  Dkt. 896.  Oracle

22   respectfully requests entry of such judgment when final judgment is entered in this matter.

23   Dated:  October 21, 2015                    Morgan, Lewis & Bockius LLP

24

25                                              By:  _____/s/ *Thomas Hixson*_____
                                                         Thomas Hixson

26                                              Attorneys for Plaintiffs
                                                Oracle USA, Inc.,
27                                              Oracle America, Inc. and
                                                Oracle International Corporation

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the 21st day of October, 2015, I electronically transmitted the

3  foregoing MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS RIMINI

4  STREET, INC. AND SETH RAVIN, FOR DISPOSITION OF INFRINGING COPIES, AND

5  FOR JUDGMENT ON ORACLE'S UNFAIR COMPETITION CLAIM to the Clerk's Office

6  using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all

7  counsel in this matter; all counsel being registered to receive Electronic Filing.

8  Dated:  October 21, 2015                Morgan, Lewis & Bockius LLP

9

10                                         By:  _____ /s/ *Thomas Hixson* _____
                                                         Thomas Hixson
11
                                           Attorneys for Plaintiffs
12                                         Oracle USA, Inc.,
                                           Oracle America, Inc. and
13                                         Oracle International Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT