| | | |
|---|---|---|
| 1 | BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568) | MORGAN, LEWIS & BOCKIUS LLP<br>THOMAS S. HIXSON (*pro hac vice*) |
| 2 | 300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101 | KRISTEN A. PALUMBO (*pro hac vice*)<br>One Market, Spear Street Tower |
| 3 | Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755 | San Francisco, CA  94105<br>Telephone:  415.442.1000 |
| 4 | rpocker@bsfllp.com | Facsimile:  415.442.1001<br>thomas.hixson@morganlewis.com |
| 5 | BOIES, SCHILLER & FLEXNER LLP<br>WILLIAM ISAACSON (*pro hac vice*) | kristen.palumbo@morganlewis.com |
| 6 | KAREN DUNN (*pro hac vice*)<br>5301 Wisconsin Ave, NW | DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*) |
| 7 | Washington, DC 20015<br>Telephone: (202) 237-2727 | JAMES C. MAROULIS (*pro hac vice*)<br>ORACLE CORPORATION |
| 8 | Facsimile: (202) 237-6131<br>wisaacson@bsfllp.com | 500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070 |
| 9 | kdunn@bsfllp.com | Telephone:  650.506.4846<br>Facsimile:  650.506.7114 |
| 10 | BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*) | dorian.daley@oracle.com<br>deborah.miller@oracle.com |
| 11 | KIERAN P. RINGGENBERG (*pro hac vice*)<br>1999 Harrison Street, Suite 900 | jim.maroulis@oracle.com |
| 12 | Oakland, CA 94612<br>Telephone: (510) 874-1000 | |
| 13 | Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com | |
| 14 | kringgenberg@bsfllp.com | |
| 15 | Attorneys for Plaintiffs | |
| 16 | Oracle USA, Inc., Oracle America, Inc., and<br>Oracle International Corp. | |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**[PROPOSED] ORDER GRANTING ORACLE'S MOTION FOR PERMANENT INJUNCTION AGAINST DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN, FOR DISPOSITION OF INFRINGING COPIES, AND FOR JUDGMENT ON ORACLE'S UNFAIR COMPETITION CLAIM** |

On Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation's (collectively, "Oracle's") Motion for Permanent Injunction, Disposition of Infringing Copies, and Judgment on Oracle's Unfair Competition Claim, having considered the papers and the evidence introduced at trial, the Court makes the following findings of fact:

## I.  FINDINGS OF FACT

### A.  Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

1. On February 15, 2010, Plaintiff Oracle USA, Inc., a Colorado corporation, merged with and into Sun Microsystems, Inc. Sun Microsystems, Inc., the surviving corporation, was then renamed "Oracle America, Inc." ("Oracle America"). Dkt. 528, Undisputed Fact ("UF") 1.

2. Plaintiff Oracle America is a Delaware corporation, with its principal place of business in Redwood City, California. Dkt. 528, UF 2.

3. Oracle America develops and licenses certain intellectual property, including copyrighted enterprise software programs, and provides related services. Dkt. 528, UF 3.

4. Oracle America is the successor in interest to Oracle USA, and through Oracle USA is the successor to PeopleSoft USA, Inc. and a successor in interest to certain PeopleSoft, JD Edwards, and Siebel entities. Hereinafter, Oracle USA, Inc. and Oracle America, Inc. are referred to collectively as "Oracle America." Dkt. 528, UF 4.

5. Plaintiff Oracle International Company ("OIC," and together with Oracle America, "Oracle") is a California corporation, with its principal place of business in Redwood City, California. OIC owns and licenses certain intellectual property, including copyrighted enterprise software programs used around the world. Dkt. 528, UF 5.

6. In December 2004, Oracle acquired PeopleSoft, including the PeopleSoft copyrighted materials in suit related to PeopleSoft Enterprise, JD Edwards Enterprise One and JD Edwards World, for $11.1 billion. Trial Transcript ("Tr.") 957:15-22 (Catz).

7. In January 2006, Oracle acquired Siebel, including the Siebel copyrighted

materials in suit, for $6.1 billion.  Dkt. 528, UF 39.

8.     OIC is the owner or exclusive licensee for each of the copyright registrations-in-suit at issue in this case, and each of those registrations is valid.  Dkt. 528, UF 40-41.

9.     Intellectual property rights formerly held by certain PeopleSoft, JD Edwards, and Siebel entities were transferred to OIC as part of the acquisitions of PeopleSoft and Siebel by Oracle.  Dkt. 528, UF 6.

10.    As is typical in the enterprise software industry, Oracle does not sell ownership rights to this software or the related support products Oracle provides to its paying customers.  Dkt. 528, UF 7.

11.    Instead, Oracle's customers purchase licenses that grant them limited rights to use specific Oracle software programs.  Dkt. 528, UF 8.

12.    Separate from the license to the underlying software, Oracle also enters into support contracts with its customers, which entitled them to receive, for an annual maintenance fee, software upgrades and software support, including fixes, patches and updates typically made available for download from Oracle's password-protected websites.  Dkt. 528, UF 9.

13.    Oracle's predecessors also sold both software licenses and support contracts for PeopleSoft, JD Edwards, and Siebel enterprise software.  Dkt. 528, UF 10.

**B.    Defendants Rimini Street And Seth Ravin**

14.    Defendant Rimini Street, Inc. is a company that provides similar software support services to licensees of Oracle's PeopleSoft, JD Edwards and/or Siebel software.  Dkt. 528, UF 11.

15.    Rimini competes directly with Oracle to provide these services.  Dkt. 528, UF 12.

16.    Defendant Seth Ravin is the founder, president and CEO of Rimini, as well as the former President of TomorrowNow, Inc., a subsidiary of SAP AG ("TomorrowNow").  Tr. 240:9:15, 351:2-7 (Ravin).

17.    Rimini launched its operations in September 2005, offering support services for Oracle's Siebel software.  Rimini conducted a pilot launch of its Siebel support in January 2006 and acquired its first Siebel customer in February 2006.  Dkt. 528, UF 13.

18. Rimini expanded its support offering to Oracle's PeopleSoft products in April 2006 and to Oracle's JD Edwards products in September 2006. Dkt. 528, UF 14.

19. Rimini contracted with 364 customers to provide support for PeopleSoft, JD Edwards, and/or Siebel enterprise software between 2006 and November 2011. Dkt. 528, UF 15.

20. Each of Rimini's PeopleSoft, JD Edwards, and/or Siebel customers licensed PeopleSoft, JD Edwards and/or Siebel enterprise software from Oracle. Dkt. 528, UF 16.

**C.  Copies of Oracle Software And Support Materials on Rimini's Servers**

21. Rimini copied "massive amounts" of Oracle software and support materials, without ever obtaining any license from Oracle. Tr. 165:12-16 (Davis); 302:3-4 (Ravin).

22. Rimini had "thousands and thousands" of copies of Oracle software on Rimini servers. Tr. 551:10-18 (Ravin).

23. Rimini created and used full working copies of the PeopleSoft, JD Edwards, and Siebel software as "environments" on Rimini's servers. Tr. 303:1-5, 320:13-321:2, 758:23-759:4, 760:8-15 (Ravin); 1146:5-17 (Chiu); 1757:14-1758:11 (Whittenbarger).

24. Rimini had at least 478 PeopleSoft, JD Edwards, and Siebel environments on its own computer systems. Dkt. 528, 19, 24, Exs. B & F (undisputed); Tr. 174:8-20 (Davis).

25. Rimini has at least 216 environments on its servers that contain installed copies of Oracle Database. Dkt. 528, UF 25.

26. Each environment on Rimini's local systems constitutes a reproduction of one or more of the copyright registrations-in-suit. Dkt. 528, UF 24.

27. Many of Rimini's fixes for PeopleSoft software involved files that contained modified versions of Oracle's source code. Dkt. 528, UF 42.

28. All of the copies of and derivative works prepared from Oracle software and support materials that Rimini created and distributed to provide support were infringing. PTX 1458 (Dkt. 401), 5328 (Dkt. 5328) (stipulations); Jury Instruction 24, Dkt. 880 (final jury instructions); Dkt. 896 (verdict).

**D.  Rimini's Copying of PeopleSoft Software And Support Materials**

29. Rimini's PeopleSoft copies were unauthorized. Dkt. 474 (Order re Oracle's First

Mot. for Part. Summ. J.) at 27-28; Dkt. 896 (verdict).

30. Rimini "stipulated to liability [for copyright infringement] as to the PeopleSoft software." Dkt. 766 at 19.

31. The City of Flint and Pittsburgh Public Schools licenses are representative of "the PeopleSoft license agreements for all of Rimini's PeopleSoft customers." Dkt. 599 at 1.

32. The PeopleSoft license expressly limits "copying the licensed software to only the [customer's] facilities" and "solely" for the customer's "internal data processing." Dkt. 474 at 11-13; 17-18.

33. Both licenses forbid Rimini to have PeopleSoft software or documentation on its systems. PTX 698 at 5, § 16 (defined term "Software" includes documentation); *id.* at 1 § 1.1 ("Software" must be at customer's facilities); PTX 699 at 6 § 15 (defined term "Licensed Rights" includes both software and documentation); *id*. at 1 § 2.1(d) (customer may not "[d]istribute . . . to any third party any portion of the Licenses Rights").

### E. Rimini's Copying of Oracle Database

34. The Court granted summary judgment to Oracle on its copyright infringement claim as to Oracle Database. Dkt 476 at 15-16.

### F. Copying of Siebel and JD Edwards Software And Support Materials

35. Rimini's Siebel and JD Edwards copies were unauthorized. Dkt. 896 (verdict).

36. This Court already found that the JD Edwards license for Giant Cement (PTX 704) and the Siebel license for Novell (PTX 705) permit copies for "archival" and "backup" purposes only. Dkt. 474 at 22, 24.

37. Mr. Allison's testimony established that those licenses were representative of the JD Edwards and Siebel licenses generally, as both companies "used form license agreements." Tr. 1117:25-1118:5, 1118:15-19 (Allison).

38. Licenses gave the customer the right "[t]o reproduce, exactly as provided by [Oracle], a reasonable number of copies of the [software] solely for archive or emergency back-up purposes or disaster recovery and related testing." Dkt. 474 at 23 (quoting PTX 705, § 2.1(iv)).

39. That provision can only be satisfied if Rimini's copies for "us[e] exclusively for archival and back-up purposes, and related testing, as directly contemplated by Section 2.1(iv)." Dkt. 474 at 24 n.20.

40. Copies only fit that definition when they are created as "inherently an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost." Dkt. 474 at 11 (emphasis supplied). In "complete contrast" to that permitted backup copy, a software copy that is "modifiable (or already modified)" is outside the scope of the license. *Id.*

41. Rimini "used all of the software," including all its "Siebel software" and "JDE software" in its "work for customers." Tr. 303:1-5 (Ravin); Tr. 364:3-8 (Ravin) (all environments on Rimini's systems were "used in order to support customers" and for "troubleshooting").

42. Rimini's Siebel environments were "designed" at the outset for, among other uses, "testing and development." Tr. 318:19-22 (Ravin); Tr. 1146:5-25 (Chiu) (Siebel copies "used to provide support"); Tr. 758:23-759:4 (Ravin) (same); Tr. 1754:8-15 (Whittenbarger) (Siebel copies used for training); PTX 1461 (Chiu discussing customer Caterpillar (Siebel) "we reclarified how our support model is based on building up an in-house lab environment with a vanilla [not customized] fix-master [environment to test fixes and patches] and a customized replica of their dev/test environment would enable us to maximize our responsiveness to them").

43. Ravin likewise confirmed that JD Edwards environments were for "testing and development" and for "diagnostics and support." Tr. 321:1-6, 760:8-15 (Ravin).

44. Ravin explained Rimini's troubleshooting process: "you're taking the software, you're playing with it to see if you can figure out what's going wrong, what the customer had called in and reported." Tr. 364:24-365:1 (Ravin).

45. Rimini's copies of Oracle software were "general development test environments" or "generic environment[s]" otherwise used for testing, development, support, and troubleshooting. Tr. 320:8-18, Tr. 367:2-8 (Ravin); Tr. 367:18-23 (Ravin) (Rimini would use Customer A's software to troubleshoot for Customer B); Tr. 1146:5-25 (Chiu) ("explaining

1  that Rimini's internal Siebel environments were "used to provide support for those clients that
2  provided us their software"); Tr. 3186:13-3187:4 (Slepko) (Siebel local environments were used
3  to assist clients with their problems); Tr. 1754:8-15 (Whittenbarger) (Siebel environment used
4  for internal training); Tr. 1757:14-1758:5 (Whittenbarger) (Rimini "set up environments to
5  troubleshoot issues"); Tr. 2043:22-2044:21 (Blackmarr) (use of Customer A's software to
6  support Customer B); PTX 181 at 2 (June 2009 installation of JD Edwards was "to be used for
7  any configuration, testing and development required"); PTX 186 at 2 (Chiu explaining "I am
8  planning a JDE install for Medtronic's Support system"); PTX 190 (JD Edwards environments
9  associated with specific customers continued to be created through February 2010); PTX 33
10 ("Rimini would build out a[] [JD Edwards] environment to support them [customer]"); PTX 310
11 (Siebel environments used for troubleshooting); PTX 744 (same).

12    46.    An environment used for testing, development, or troubleshooting is not a backup
13 because you "don't touch" a backup.  Tr. 180:9-22, 182:16-183:4 (Davis).

14    47.    An "archive" or "backup":  a "copy . . . put on a physically different place," on a
15 "separate disk" or otherwise "put aside."  Tr. 180:5-181:17, 182:16-24 (Davis); *see also* Tr.
16 362:21-363:23 (Ravin) (discussing archives shipped to customers on DVDs or USB drives and
17 backups on tape drives).

18    48.    Backups are stored on tapes or other storage, unmodified.  Tr. 730:4-11 (Ravin);
19 Tr. 180:5-181:17, 182:16-24 (Davis).

20    49.    Copies used for troubleshooting, support, testing, or development are not backups.
21 Tr. 180:5-181:17, 182:16-24 (Davis).

22    **G.    RAM Copies**

23    50.    Rimini created additional in-memory copies, called RAM copies, every time it
24 started up or ran Oracle software.  Tr. 184:3-185:4 (Davis).

25    **H.    Cross-use And Distribution Of Oracle Software And Support Material**

26    51.    Rimini's unlicensed copying included widespread cross-use of Oracle
27 software.  Tr. 799:6-16 (Ravin).

28    52.    After previously denying cross-use, Ravin admitted at trial cross-use occurred "all

1  the time." Tr. 552:1-13 (Ravin).

**Cross-use to Create Environments: Cloning**

53. Rimini's cross-use included unlicensed "cloning" of Oracle software (copying an environment created ostensibly for one customer for another customer). Tr. 371:5-9, 374:12-15, 777:22-24 (Ravin); 1365:23-1366:14, 1381:188 (Williams); 192:22-193:7, 196:25-197:24, 198:25-199:11 (Davis); PTX 439; PTX 1491A; PTX 3507 at 31.

**Cross-use of Environments:  Developing Fixes and Updates**

54. On many occasions, Rimini used one customer's environment to support other customers. Tr. 2232:2-2233:23 (Benge).

55. Rimini used unlicensed "development" environments to create updates and fixes for multiple customers. Tr. 320:2-7 (Ravin); 202:18-203:3, 204:2-205:10 (Davis); PTX 5429.

56. Rimini "reused []all the time" by taking an update or fix that Rimini created for one customer and using it for and distributing it to another customer, including using Oracle's copyrighted code, changing it and distributing it to multiple Rimini customers. Tr. 552:1-552:5, 809:19-810:13 (Ravin); 2232:2-2233:23 (Benge).

**Cross-use of Environments: Troubleshooting**

57. On many occasions, Rimini used one customer's software to troubleshoot issues other customers were having. Tr. 367:18-23 (Ravin); 2043:22-2044:21 (Blackmarr).

**Cross-use of Support Material**

58. Rimini used the code in one customer environment to write a detailed design document to be used with other clients. Tr. 1656:20-1661:4 (Grigsby).

59. Rimini also used Oracle copyrighted support material as part of a sales presentation to customers. Tr. 1662:16-1668:7 (Grigsby).

60. Rimini stored Oracle support materials in non-client-specific folders. Tr. 1155:18-21 (Hicks).

61. Rimini used support documentation downloaded on behalf of one customer to rephrase the information and distribute it to other Rimini clients whose Oracle support was expired. PTX 236; Tr. 188:8-189:15 (Davis). Rimini created "extracts" that Rimini gave its

customers so that unlicensed copies that were shared amongst customers.  Rimini told customers that it was creating separate extracts for each customer, but Rimini was using one customer's log-in, starting with a faux customer, Leads Customers Growth, to copy all materials from Oracle's websites and then copying disks that Rimini distributed to multiple customers.  Tr. 333:9-334:3, 335:12-16 (Ravin); 1160:15-1161:10 (Hicks); PTX 7.

### I.     Software Library

62.     Rimini's "software library" was massive.  PTX 10; Tr. 166:9-20 (Davis); 242:1-3, 242:14-20 (Ravin).

63.     Ravin approved copying to that library (PTX 4 at 3-4; PTX 5), which included software and documentation for all of the products at issues:  PeopleSoft, JD Edwards, Siebel, and Database.  Tr. 167:5-10 (Davis); Tr. 1756:6-1757:8 (Whittenbarger); PTX 8; PTX 9; PTX 10; PTX 223.

64.     Rimini downloaded PeopleSoft and JD Edwards materials into the library before Rimini even had any clients licensed for those products.  Tr. 289:5-10 (Ravin); PTX 4; PTX 5; PTX 6.

65.     Rimini did not keep track of how that library was used or audit the library, and Rimini deleted that library shortly before Oracle filed this lawsuit.  Tr. 170:24-171:10 (Davis); Tr. 421:18-20, 422:21-423:4 (Ravin).

### J.     Automated Downloading

66.     Rimini also used customer log-ins to download massive amounts of materials, for multiple clients, including materials customers were not authorized to download.  Tr. 1751:4-16 (Whittenbarger); PTX 7.

67.      Oracle's Terms of Use prohibited access using automated tools since at latest February 19, 2007.  PTX 19; Tr. 864:9-865:5, 867:16-869:15 (Allison); 480:24-481:5 (Ravin).

68.     Ravin and others at Rimini read and knew about those restrictions and understood that they precluded automated downloading.  PTX 20; Tr. 480:10-14, 824:25-825:16 (Ravin).

69.     Ravin then made the decision to use those automated tools "despite those changes."  Tr. 482:11-19, 726:20-24 (Ravin); PTX 21, PTX 22, PTX 27.

70. Rimini used "automated" downloading tools that Ravin and Rimini knew were not authorized. Tr. 479:3-15, 769:9-10, 769:22-25 (Ravin); 1140:17-20 (Chiu).

71. Rimini was trying to stay under "the radar" (PTX 621), but Oracle eventually discovered the downloading due to Rimini's "massive download volumes" (PTX 42).

72. Rimini's automated downloading tools caused Rimini at times to make more requests to Oracle's Knowledge Base system than all other worldwide users of that system combined, including for periods of November 2008. Tr. 1167:8-1168:2 (Hicks).

73. In periods from November 2008 through January 2009, Rimini accessed Oracle's systems and used automated downloading tools from up to twelve virtual machines concurrently. Tr. 1169:17-1170:2 (Hicks).

74. In November 2008, Rimini downloaded from Oracle's systems at times from ten virtual machines concurrently "pretty much around the clock" to obtain materials for XO Communications. Tr. 1170:19-1171:6; PTX 46 at 2.

75. Rimini received written notice that its automated downloading was not permitted and was harming Oracle's systems and Rimini employees worried that Oracle was "onto us from massive download volumes." PTX 42 at 1.

76. Rimini wrote to Oracle in response to the notice: "I understand our current methodology creates issues with CPU utilization on Oracle's servers." PTX 482 at 3.

77. Oracle blocked Rimini IP addresses in response to Rimini's downloading, and Rimini "obtained some additional fixed IP addresses" to circumvent Oracle's IP blocks and continue downloading. Tr. 771:19-772:7 (Ravin); Tr. 1175:17-1176:3 (Hicks); Tr. 1232:8-20 (Baron).

78. Rimini employees also used their home, residential IP addresses to attempt to evade Oracle's detection and avoid Oracle's IP blocking. PTX 46 at 4 ("Started downloading the attachments. . . . (from my house and not using the download VMs) but got blocked after about 2,000 attachments"); Tr. 1232:21-1233:14 (Baron).

79. Rimini used the IDs for multiple customers to "crawl" Oracle's website, causing more than 184,000 deadlocks. Tr. 1180:19-1181:4 (Hicks).

80. Rimini's unauthorized access using automated tools from November 2008 through January 2009 harmed Oracle's systems, causing slowdowns, errors, and deadlocks, and crashed Oracle's server. Tr. 1172:9-15, 1174:5-1175:1, 1179:9-23 (Hicks); 1201:14-1202:11; 1210:5-1211:10 (Renshaw); PTX 665; PTX 669.

81. Rimini's unauthorized access using automated tools rendered Oracle's Knowledge Management system completely unavailable for four and a half hours in January 2009. Tr. 1211:8-10 (Renshaw); PTX 669.

82. Rimini's use of automated tools to access Oracle's systems "harmed Oracle significantly." Tr. 1168:23-1169:2 (Hicks).

### K. Improper Use of Credentials

83. Oracle's Terms of Use forbid using any entity's credentials for the benefit of any entity other than the entity to which the credentials were issued. PTX 19.

84. Rimini did not abide by this restriction on the use of credentials. PTX 8; Tr. 289:22-291:19, 333:9-334:3, 335:12-16 (Ravin); Tr. 1601:10-1602:24 (Leake); Tr. 1738:2-18 (Holmes); Tr. 2011:15-2013:5 (Blackmarr); 1160:15-1161:10 (Hicks); PTX 7; PTX 236; Tr. 188:8-189:15 (Davis).

### L. Rimini's Illegal Actions Have Harmed Oracle's Reputation and Goodwill

85. Rimini's copyright infringement and computer access violations allowed it to charge substantially less than Oracle charged for support: often 50% or less of what Oracle charged. Tr. 207:10-16 (Davis); Tr. 1940:6-1942:6, 1950:16-1951:12 (Dean).

86. Rimini's copyright infringement and computer access violations allowed it to gain scale quickly, with minimal effort and investment. Tr. 443:4-445:6 (Ravin); Tr. 1702:18-1703:22 (Yourdon); Tr. 1453:22-1476:6 (Maddock).

87. By purporting to offer vendor-level support at half the price or less of Oracle support and creating the impression that Oracle was overcharging for support, Rimini eroded "the bonds and the trust that [Oracle] ha[d] with [its] customers." "For the customers [Oracle] lost, it totally broke the relationship." By breaking these relationships, customers were also less likely to purchase other Oracle products. Tr. 948:17-949:8, 934:14-936:11 (Catz); DTX 146.

88. A customer who moves to Rimini for support may later find that its systems are out of date. Tr. 935:18-936:3 (Catz); Tr. 1571:11-1573:6 (Screven).

89. By creating uncertainty and distrust in the marketplace, Rimini's copyright infringement and computer access violations caused Oracle to "hav[e] to work extra hard to keep the customers [Oracle] ha[d]" due to the injury to Oracle's goodwill and reputation. Tr. 948:17-949:12 (Catz). As well, customers who left Oracle support for Rimini support were less likely to license additional software of any type from Oracle. *Id.*

**M.    Rimini Has Been Evasive And Dishonest Throughout This Litigation**

90. Rimini continued its infringing activities through at least February 2014. Tr. 751:7-15 (admission by counsel for Rimini). Rimini claims to have changed certain of its infringing behaviors after the Court granted partial summary judgment to Oracle on its copyright claims. Tr. 754:9-13 (colloquy with the Court).

91. Rimini created local environments and prepared and distributed derivative works from those environments for years after SAP and TomorrowNow conceded liability for copyright infringement and after TomorrowNow pled guilty to criminal copyright infringement. *See* Dkt. 823-6 (civil stipulation discussing local environments on TomorrowNow's computer systems); Dkt. 823-5 (guilty plea discussing local environments on TomorrowNow's computer systems).

92. Before trial, Rimini claimed that a software library never existed at Rimini Street. PTX 5332 (March 29, 2010 Answer) at ¶ 34 (denying existence of software library); PTX 1482 (June 16, 2011 Answer) at ¶ 34 (same).

93. At trial, Ravin claimed that Rimini's software library was not really a library, Tr. 247:7-12, that it was only "installation media," Tr. 255:6-9, 565:9-11, and that it was only PeopleSoft, Tr. 247:14-20.

94. Before trial, Rimini's 30(b)(6) designee, Senior Vice President Brian Slepko, and Ravin each flatly denied in depositions ever using one customer's environment to develop or test updates for other customers. Tr. 804:25-805:5 (Ravin); 3173:1-3174:3 (Slepko).

95. At trial, Ravin admitted that Rimini used one customer environment to develop or test updates for other customers "all the time." Tr. 552:1-5 (Ravin).

**N.     Rimini Has Failed To Cooperate In Discovery In *Rimini II***

96.     Rimini filed its declaratory action regarding its allegedly new business model on October 15, 2014.  Decl. of John A. Polito in Supp. of Mot. ("Polito Decl.") ¶ 3 & Ex. A.  Oracle filed its Counterclaims on February 17, 2015, alleging copyright infringement and additional claims.  *Id.* ¶ 4 & Ex. B.

97.     To date, Rimini has failed to produce a complete list of its customers, a complete list of environments that it has created or used, a complete list of the fixes and updates that it has distributed, and a complete list of its downloads, despite Oracle's discovery requests.   Polito Decl. ¶¶ 5-8 & Ex. C.

98.     To date, Rimini has declined to provide any information regarding its "migration" from its infringing business model to its allegedly new business model.  Polito Decl. ¶ 5-6, 8 & Ex. C.

**II.     <u>INJUNCTION PURSUANT TO 17 U.S.C. § 502(A)</u>**

Good cause being shown, the Court permanently enjoins and restrains Defendant Rimini Street, Inc. and its subsidiaries, affiliates, employees, directors, officers, principals, and agents (collectively, "Rimini") as follows:

1. Rimini Street, Inc. shall provide notice of this Section 502 Order to all subsidiaries, affiliates, employees, directors, officers, principals, and agents that may have any involvement whatsoever in reproducing, preparing derivative works from, or distributing PeopleSoft, JD Edwards,  Siebel, or Oracle Database software or documentation.

2. Rimini shall not reproduce, prepare derivative works from, or distribute PeopleSoft, JD Edwards, or Siebel software or documentation in any way unless both of the following conditions are met:

      (a)    Rimini shall not reproduce, prepare derivative works from, or distribute PeopleSoft, JD Edwards, or Siebel software or documentation unless solely in connection with work for a specific customer that has affirmed in writing that the customer holds a valid, written license agreement for the particular PeopleSoft, JD Edwards, or Siebel software and documentation authorizing Rimini's specific conduct; and

      (b)    Rimini shall not reproduce, prepare derivative works from, or distribute PeopleSoft, JD Edwards, or Siebel software or documentation unless such conduct is consistent with the remaining terms of this Order.

### A. PeopleSoft

3. Rimini shall not distribute PeopleSoft software or documentation or any derivative works created from or with PeopleSoft software or documentation;

4. Rimini shall not reproduce, prepare derivative works from, or use a specific licensee's PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations;

5. Rimini shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems;

6. Rimini shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee;

7. **JD Edwards**

8. Rimini shall not distribute JD Edwards software or documentation or any derivative works created from or with JD Edwards software or documentation;

9.  Rimini shall not reproduce, prepare derivative works from, or use a specific licensee's JD Edwards software or documentation other than on a specific licensee's own computer systems;

10. Rimini shall not copy or access JD Edwards software source code;

11. Rimini shall not reproduce, prepare derivative works from, or use JD Edwards software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems, except to create an unmodified copy of a specific licensee's software application and documentation for use by that specific licensee in the event that the production copy of the licensee's software is corrupted or lost;

12. Rimini shall not reproduce, prepare derivative works from, or use JD Edwards software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini shall not use a specific licensee's JD Edwards environment to develop or test software updates or modifications for the benefit of any other licensee;

### B. Siebel

13. Rimini shall not distribute or prepare derivative works from Siebel software or documentation;

14. Rimini shall not copy or access Siebel software source code;

15. Rimini shall not reproduce or use Siebel software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems, except solely to:

    a. create an unmodified copy of a specific licensee's software application and documentation for the use of that specific licensee in the event that the production copy of the licensee's software is corrupted or lost;

    b. create an unmodified copy of a specific licensee's software application and documentation for emergency back-up purposes; or,

        c.    create an unmodified copy of a specific licensee's software application and documentation for disaster recovery purposes and related testing;

16. Rimini shall not reproduce, prepare derivative works from, or use Siebel software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini shall not use a specific licensee's Siebel environment to develop or test software updates or modifications for the benefit of any other licensee;

### C. Oracle Database

17. Rimini shall not reproduce, prepare derivative works from, or distribute Oracle Database software.

## III. DISPOSITION OF MATERIALS PURSUANT TO 17 U.S.C. § 503(B)

Good cause being shown, the Court requires Defendant Rimini Street, Inc. and its subsidiaries, affiliates, employees, directors, officers, principals, and agents (collectively, "Rimini") to produce and provide to the third-party escrow service of Oracle's choice all computers and all storage media (including all backup copies) in the possession, custody, or control of Rimini Street that contain any complete or partial copies of the following:

1. PeopleSoft, JD Edwards, Siebel, or Oracle Database software or documentation;
2. Installation media for PeopleSoft, JD Edwards, Siebel, or Oracle Database software;
3. Fixes, updates, or other derivative works of PeopleSoft or JD Edwards software;
4. Any instructions, electronic materials, or other articles by means of which any of items 1, 2, or 3 may be reproduced; and,
5. Any virtual machines containing any copy of items 1, 2, 3, or 4.

Rimini Street, Inc. shall provide notice of this Section 503 Order to all subsidiaries, affiliates, employees, directors, officers, principals, and agents that may have any involvement whatsoever in reproducing, preparing derivative works from, or distributing PeopleSoft, JD Edwards, Siebel, or Oracle Database software or documentation.

## IV. INJUNCTION PURSUANT TO CDAFA, NCCL, AND UCL

Good cause being shown, the Court permanently enjoins and restrains Defendant Seth

Ravin, Defendant Rimini Street, and the subsidiaries, affiliates, employees, directors, officers, principals, and agents of either of them ("Rimini and Ravin"):

1. Rimini Street, Inc. and Seth Ravin shall provide notice of this CDAFA, NCCL, and UCL Order to all subsidiaries, affiliates, employees, directors, officers, principals, and agents that may have any involvement whatsoever in accessing any Oracle website.

2. Rimini and Ravin shall not access (including download from) any Oracle website in any manner that could damage, disable, overburden, impair, or otherwise result in unauthorized access to or interference with, the proper functioning of any Oracle accounts, systems, or networks, including but not limited to access by or use of any automated or computerized method simulating manual downloading;

3. Rimini and Ravin shall not distribute materials downloaded from any Oracle website to more than one person or entity;

4. Rimini and Ravin shall not access any Oracle website using any entity's credentials for the benefit of any entity other than the entity to which the credentials were issued.

## V. JUDGMENT ON UNFAIR COMPETITION CLAIM

Good cause being shown, the Court hereby finds that Oracle is entitled to judgment in its favor and against Defendants as to Oracle's claim of unfair competition pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*

**IT IS SO ORDERED.**

DATED:

By: _____
Hon. Larry R. Hicks
United States District Judge