1  BOIES, SCHILLER & FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
2  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
3  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
4  rpocker@bsfllp.com

5  BOIES, SCHILLER & FLEXNER LLP
   WILLIAM ISAACSON (*pro hac vice*)
6  KAREN DUNN (*pro hac vice*)
   5301 Wisconsin Ave, NW
7  Washington, DC 20015
   Telephone: (202) 237-2727
8  Facsimile: (202) 237-6131
   wisaacson@bsfllp.com
9  kdunn@bsfllp.com

10 BOIES, SCHILLER & FLEXNER LLP
   STEVEN C. HOLTZMAN (*pro hac vice*)
11 KIERAN P. RINGGENBERG (*pro hac vice*)
   1999 Harrison Street, Suite 900
12 Oakland, CA 94612
   Telephone: (510) 874-1000
13 Facsimile: (510) 874-1460
   sholtzman@bsfllp.com
14 kringgenberg@bsfllp.com

15 Attorneys for Plaintiffs
   Oracle USA, Inc., Oracle America, Inc., and
16 Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

17                    UNITED STATES DISTRICT COURT

18                          DISTRICT OF NEVADA

19 ORACLE USA, INC., a Colorado corporation;
   ORACLE AMERICA, INC., a Delaware
20 corporation; and ORACLE INTERNATIONAL
   CORPORATION, a California corporation,
21
                        Plaintiffs,
22
           v.
23
   RIMINI STREET, INC., a Nevada corporation;
24 and SETH RAVIN, an individual,
25
                        Defendants.
26

Case No. 2:10-cv-0106-LRH-PAL

**REPLY IN SUPPORT OF MOTION
FOR PERMANENT INJUNCTION
AGAINST DEFENDANTS RIMINI
STREET, INC. AND SETH RAVIN,
FOR DISPOSITION OF INFRINGING
COPIES, AND FOR JUDGMENT ON
ORACLE'S UNFAIR COMPETITION
CLAIM**

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT .................................................................................................................. 1

    A.    The Court Should Enter A Permanent Injunction. .............................................. 1

        1.    Rimini's Opposition Admits That Rimini Continues to Infringe. ................... 1

            a.    Infringing Derivative Works ................................................................ 2

            b.    "Licensee's Own Computer Systems" ................................................. 3

            c.    Cross-Use ............................................................................................ 4

            d.    Licensee's "Internal Data Processing Operations" ............................. 5

            e.    Local Copies of Oracle Software and Support Materials .................... 5

        2.    Rimini's Infringement Has Caused and Will Cause Irreparable
            Injury to Oracle's Goodwill and Reputation. ................................................ 6

        3.    The Balance of Hardships Tips Strongly in Favor of Oracle
            Because the Enjoined Acts Have No Legitimate Business Purpose. .............. 11

        4.    Public Policy Favors Entry of an Injunction Against Infringers and
            Those That Have Committed Computer Access Violations. ......................... 11

        5.    Rimini's Now Unbelievable Claim That It Has Ceased Its
            Improper Behavior Should Not Be Credited and Do Not Bar
            Injunctive Relief. ......................................................................................... 13

    B.    Oracle's Proposed Section 502 Injunction Appropriately Identifies The
        Unlawful Conduct That Rimini Must Cease Or Not Resume. .................................. 14

        1.    Rimini Must Not Be Permitted to Prepare or Distribute Infringing
            Derivative Works. ........................................................................................ 15

        2.    Oracle's Adoption of the Court's Language Regarding a
            "Licensee's Own Computer Systems" Is Proper. .......................................... 15

        3.    Restricting Rimini's Copying and Use of PeopleSoft Software and
            Documentation to Support of a Specific Licensee's Own Internal
            Data Processing Operations Is Appropriate and Unambiguous. ................... 16

        4.    Oracle's Definition of Cross-Use in Terms of Benefit to Another
            Licensee Is Appropriate and Consistent with the Court's Construal
            of the Relevant Licenses. ............................................................................. 16

        5.    Rimini Should Be Prohibited from Copying or Accessing JD
            Edwards Source Code, Siebel Source Code, and Oracle Database ............... 17

    C.    Oracle's Proposed Disposition Order Is Reasonable. .............................................. 18

        1.    Rimini Does Not Fairly Dispute the Predicate Facts. ................................... 18

        2.    Oracle's Escrow Proposal Is Reasonable and Appropriate. .......................... 19

    D.    Oracle Is Entitled To A CDAFA, NCCL, And UCL Injunction ............................. 19

    E.    Oracle Is Entitled To Judgment On Its UCL Claim. ............................................... 20

III.    CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Active Sports Lifestyle USA, LLC v. Old Navy, LLC, No. SACV 12-572 JVS EX,*
    2014 WL 1246497 (C.D. Cal. Mar. 21, 2014) ........................................................ 8

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240 (3d Cir. 1983) ............................................................................... 11

*Apple Inc. v. Psystar Corp.,*
    658 F.3d 1150 (9th Cir. 2011) ................................................................................ 6

*Apple Inc. v. Psystar Corp.,*
    673 F. Supp. 2d 943 (N.D. Cal. 2009) ...................................................... 9, 11, 15

*Apple, Inc. v. Samsung Electronics Co.,*
    678 F.3d 1314 (Fed. Cir. 2012) ........................................................................... 10

*BMG Music v. Gonzalez,*
    430 F.3d 888 (7th Cir. 2005) ............................................................................... 13

*Brighton Collectibles, Inc. v. Pedre Watch Co.,*
    No. 11CV00637 AJB WVG, 2013 WL 5719071 (S.D. Cal. Oct. 21, 2013) ............. 7

*Broad. Music, Inc. v. McDade & Sons, Inc.,*
    928 F. Supp. 2d 1120 (D. Ariz. 2013) ................................................................. 13

*Capitol Records Inc. v. Thomas-Rasset,*
    680 F. Supp. 2d 1045 (D. Minn. 2010) ................................................................ 10

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.,*
    Nos. CV 98–8218 NM (SHx), 99–4783 NM (SHx), 2003 WL 25778704
    (C.D.Cal. Jan. 29, 2003) ................................................................................ 12, 13

*Craigslist, Inc. v. Naturemarket, Inc.,*
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................................... 15

*Dolori Fabrics, Inc. v. Limited, Inc.,*
    662 F. Supp. 1347 (S.D.N.Y. 1987) .................................................................... 13

*Douglas Dynamics, LLC v. Buyers Prods. Co.,*
    717 F. 3d 1336 (Fed. Cir. 2013) .......................................................................... 10

*eBay, Inc. v. Bidder's Edge, Inc.,*
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................. 9

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) .............................................................................................. 1

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003) ............................................................................................ 12

1

**TABLE OF AUTHORITIES**
(continued)

2
                                                                                                    **Page(s)**

3   *Facebook, Inc. v. Grunin,*
        77 F. Supp. 3d 965, 973 (N.D. Cal. 2015) ........................................................... 20
4

5   *Fox Broadcasting Co. v. Dish Network LLC,*
        747 F.3d 1060 (9th Cir. 2013) ............................................................................... 8

6   *General Leaseways, Inc. v. National Truck Leasing Ass'n,*
        744 F.2d 588 (7th Cir. 1984) ................................................................................. 9
7

8   *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.,*
        739 F.2d 466 (9th Cir. 1984) ................................................................................. 7

9   *Guidance Endodontics, LLC v. Dentsply Intern., Inc.,*
        633 F. Supp. 2d 1257 (D.N.M. 2008) .................................................................... 9
10

11  *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.,*
        82 F.3d 1533 (10th Cir. 1996) ............................................................................... 7

12  *Iconix, Inc. v. Tokuda,*
        457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................................. 15
13

14  *In re Cir. Breaker Litig.,*
        860 F. Supp. 1453 (C.D. Cal. 1994) .................................................................... 12

15  *Jackson v. MPI Home Video,*
        694 F. Supp. 483 (N.D. Ill. 1988) ....................................................................... 12
16

17  *LGS Architects, Inc. v. Concordia Homes of Nev.,*
        434 F.3d 1150 (9th Cir. 2006) ............................................................................. 15

18  *Louis Vuitton Malletier S.A. v. LY USA, Inc.,*
        676 F.3d 83 (2d Cir. 2012) .................................................................................. 10
19

20  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
        518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................... 11, 13, 17

21  *Microsoft Corp. v. EEE Bus. Inc.,*
        555 F. Supp. 2d 1051 (N.D. Cal. 2008) ............................................................... 18
22

23  *Microsoft Corp. v. Motorola, Inc., No. C10-1823JLR,*
        2012 WL 5993202 (W.D. Wash. Nov. 30, 2012) ................................................ 10

24  *Minco, Inc. v. Combustion Eng'g, Inc.,*
        95 F.3d 1109 (Fed. Cir. 1996) ............................................................................... 9
25

26  *MySpace, Inc. v. Wallace,*
        498 F. Supp. 2d 1293 (C.D. Cal. 2007) .............................................................. 6, 7

27

28

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Mytee Products, Inc. v. Harris Research, Inc.*,
  439 Fed. Appx. 882 (Fed. Cir. 2011) ............................................................ 8, 9

*Polygram Intern. Pub, Inc. v. Nevada/TIG, Inc.*,
  855 F. Supp. 1314 (D. Mass 1994) ................................................................. 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991).......................................................................... 7

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992)........................................................................... 18

*SEC v. Koracorp Indus., Inc.*,
  575 F.2d 692 (9th Cir. 1978).......................................................................... 14

*Teller v. Dogge*,
  No. 2:12-CV-591, 2014 WL 4929413 (D. Nev. Sept. 30, 2014) .................... 17

*Traxler v. Multnomah County*,
  596 F.3d 1007 (9th Cir. 2010)........................................................................ 8

*United States v. Parker*,
  No. 3:07-CV-01969, 2015 WL 1745879 (S.D. Cal. Feb. 17, 2015) ............... 8

*United States v. Parke, Davis & Co.*,
  362 U.S. 29 (1960) ......................................................................................... 14

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ....................................................................... 14

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  No. CV 09-157-RGA, 2013 WL 6118447 (D. Del. Nov. 20, 2013).............. 10

**STATUTES**

17 U.S.C.
  § 102.............................................................................................................. 17
  § 405.............................................................................................................. 12
  § 502.................................................................................................. 14, 15, 16
  § 503.................................................................................................. 1, 18, 19
  § 504.............................................................................................................. 8

Cal. Penal Code § 502 ........................................................................................ 8

Nev. Rev. Stat.
  § 205.511........................................................................................................ 8
  § 205.513........................................................................................................ 20

Case No. 2:10-cv-0106-LRH-PAL

REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1

## TABLE OF AUTHORITIES
(continued)

2
                                                                                    **Page(s)**

3
**RULES**

4
Fed. R. Civ. P.
    39 ................................................................................................................ 8
5
    65 .............................................................................................................. 18

6

7
**OTHER AUTHORITIES**

8
H.R. Rep. 94-1476, 1976 U.S.C.C.A.N. 5659 (discussing Section 503(b) of the
    then-draft Copyright Act of 1976) ........................................................... 19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.       INTRODUCTION**

2          In its Opposition, Rimini seeks to re-imagine the trial record and to re-package itself as a

3    legitimate service provider rather than a proven copyright infringer and computer access violator.

4    Both parties agree that the four-factor test set forth in *eBay Inc. v. MercExchange, LLC*, 547 U.S.

5    388 (2006), applies to Oracle's request for an injunction.  Rimini strains for every argument

6    possible in opposing Oracle's proposed injunction, but in doing so, ignores the facts and the law.

7          Worse, Rimini's Opposition is strong evidence that Rimini continues to infringe Oracle's

8    copyrights.  Throughout its Opposition, Rimini objects that various provisions in Oracle's

9    proposed injunction would affect Rimini's current business processes, which Oracle is challenging

10   in the *Rimini II* lawsuit.  But Rimini points only to conduct that the Court and jury have found to

11   constitute infringement.  Rimini's "Opposition" makes clear that its infringement is ongoing.

12         As to dispossession, the Court has wide latitude to shape any remedial order pursuant to 17

13   U.S.C. § 503(b) that effects a reasonable disposition of infringing materials and of the means used

14   to create such materials.  The Court should use that power here.

15         Last, Rimini peppers its Opposition with requests that the Court allow Rimini to make edits to

16   any proposed injunction and disposition order prior to entry.  Rimini had the opportunity in its

17   Opposition to comment on Oracle's proposed injunction or submit its own.  Rimini should not get

18   another opportunity to oppose Oracle's injunction after Oracle's reply.  This is just another attempt at

19   delay, similar to Rimini's previous attempt to delay the injunction process through the extensive

20   briefing proposal it made on October 13, which the Court denied.  Dkt. 893.

21   **II.      ARGUMENT**

22         The Court should issue a permanent injunction because Oracle has satisfied each of the

23   *eBay* factors.  Oracle's proposed injunction is fair and reasonable.  The Court should also exercise

24   its "broad powers" and enter Oracle's proposed disposition order.  Finally, Oracle is entitled to

25   entry of judgment in its favor on the UCL claim.

26         **A.       The Court Should Enter A Permanent Injunction.**

27              **1.       Rimini's Opposition Admits That Rimini Continues to Infringe.**

28   Rimini's Opposition confirms Oracle's worst fears about Rimini's ongoing conduct:

1    "Rimini could suffer significant harm to its *current* business activities if Oracle's proposed

2    injunction is issued."  Opp'n at 16 (emphasis in original).  Rimini has not stopped infringing at all.

3    As discussed in detail below, Oracle seeks to enjoin acts that the Court or the jury has already

4    determined were infringing and unlawful.  Rimini suggests that it can avoid entry of any injunction

5    in this matter simply because the *Rimini II* matter is pending.  That is false:  Oracle is entitled to an

6    injunction based upon the facts proven and liability established in this case, without further delay.

7                              **a.     Infringing Derivative Works**

8              Rimini asserts that enjoining its creation of derivative works would resolve what it

9    describes as a "live issue in *Rimini II*:  whether Rimini's creation and distribution of custom code

10   and documentation violates Oracle's intellectual property rights."  Opp'n at 21. [1]  Rimini's creation

11   of derivative works can only be described as a "live issue" if Rimini continues to do so.  Further,

12   there is no "issue" as to whether Rimini is prohibited from making derivative works because the

13   verdict in this case is that doing so is copyright infringement.

14             Oracle proved at trial that Rimini created derivative works based upon Oracle software and

15   support materials by creating updates and documentation for and based upon Oracle's copyrighted

16   works and by modifying installed copies of Oracle's copyrighted works.  Tr. 202:15-17 (Davis)

17   ("Q.  Would you consider Rimini Street's updates and fixes a derivative work?  A.  Yes, in my

18   opinion."), 200:4-201:5 (testifying that Rimini "must be modifying Oracle software"), 186:12-16

19   (discussing a derivative work Rimini created based upon Siebel documentation); Tr. 2231:8-

20   2232:12 (Benge) (discussing a Rimini update to PeopleSoft software created by "chang[ing]

21   Oracle's copyrighted code"); PF 27 ("Many of Rimini's fixes for PeopleSoft software involved

22   files that contained modified versions of Oracle's source code.") (undisputed); *see also* Tr. 976:1-5

23   (Ravin) (acknowledging that customization of Oracle software could result in a derivative work).

24   Oracle also proved that Rimini distributed derivative works to customers.  PTX 5429 (listing 149

25   customers that received Rimini updates resulting from cross-use); Tr. 213:3-23 (Davis) (discussing

26   PTX 5429); Tr. 665:23-666:20 (Ravin) (testifying that Rimini would "develop an update based on

27   ─────────────
[1] Rimini's Corrected Opposition to Oracle's Motion (Dkt. 906) is cited as "Opp'n"; Oracle's
28   Motion (Dkt. 900) is cited as "Mot."; Oracle's concurrently-filed reply to Rimini's response to
     Oracle's proposed facts is cited as "PF [Fact #]."

1     the [Oracle] software, the changes, test it, package it up and send it to the client for installation.");

2     Tr. 1659:24-1661:4 (Grigsby) (discussing cross-use of a technical design document used to create

3     1099 fixes for JD Edwards); Tr. 2231:8-2233:23 (Benge) (testifying that a Rimini update to

4     PeopleSoft software was created once and delivered to seven customers); *see also* PTX 6001

5     (showing that Rimini distributed its updates to its clients).  Rimini did not dispute these facts at

6     trial.  The Court instructed the jury as to derivative works, and the jury found liability on all of

7     Oracle's copyright claims. Jury Instrs. 21 & 24, Dkt. 880; Dkt. 896.  To the extent that the jury has

8     not already so decided, the Court can and should find that Rimini's updates, fixes, and

9     documentation were infringing.  *See* PF 28.

10        Despite this substantial trial record, Rimini asserts that derivative work issues "have not

11     been litigated" in this matter.  Opp'n at 21.  That is wrong.  Rimini points out that Oracle's first

12     motion for partial summary judgment was limited to the reproduction right.  *Id.* (quoting Dkt. 284

13     at 9).  But Rimini ignores *the trial*.  Rimini moved unsuccessfully *in limine* to limit Oracle's

14     derivative-work case.  Dkt. 721 at 5-6.  The excerpts above establish that Oracle pursued and

15     proved an infringement theory based upon derivative works at trial.  Rimini all but admits that it

16     continues its infringement; the Court should put a stop to it.

17                 **b.**      **"Licensee's Own Computer Systems"**

18        By stating that enforcement of Oracle's licenses litigated in this matter by means of an

19     injunction "could also prejudice issues in dispute in *Rimini II*," Opp'n at 22, Rimini all but admits

20     that it does not currently comply with the Court's prior rulings.  To the contrary, Rimini apparently

21     continues to make copies of, and prepare derivative works from, Oracle software and support

22     materials located on systems that are not a licensee's own computer systems. *See* Opp'n at 22

23     (citing Dkt. 488 at 5).  This is copyright infringement that this Court should enjoin.

24        The Court has determined, as a matter of law, that the plain language of the PeopleSoft

25     licenses "prohibit[s] Rimini Street from copying or preparing derivative works from PeopleSoft

26     software other than to support the *specific licensee's* own internal data processing operations on the

27     *licensee's own computer systems*."  Jury Instr. 24, Dkt. 880 (emphasis added); *see also* Dkt. 474 at

28     12-13 (distinguishing between the City of Flint's facilities and "a back-up server … at a third-party

REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION, DISPOSITION, AND JUDGMENT

1    site … under the sole control of [the City of Flint]") (last alteration in original).  Rimini's assertion

2    that "the Court did not hold that Rimini could perform its activities only on a 'specific licensee's

3    own computer systems,'" Opp'n at 20-21, is contrary to these rulings.  As to PeopleSoft software,

4    there can be no dispute:  Rimini may not copy or prepare derivative works other than on the

5    licensee's own computer systems.

6         For JD Edwards and Siebel, the Court found that Rimini Street may copy JD Edwards

7    software and documentation "onto its computer systems to the extent necessary for" certain backup

8    purposes and may copy Siebel software and documentation "onto the third party's own computer

9    systems solely for" certain backup purposes. Jury Instr. 24, Dkt. 880.  The evidence at trial showed

10    and the jury found that Rimini's copying is not for any permissible purpose.  *Id.*; Dkt. 896.

11         Rimini argues that any injunction in this case should not include a location restriction

12    because the parties have not yet litigated Rimini's use of cloud-based computing.  Opp'n at 21-22.

13    But the pendency of *Rimini II* is not a get-out-of-jail-free card.  The Court has already construed

14    the licenses in *this* case, and should give effect to its rulings and the jury's verdict.

15               **c.**      **Cross-Use**

16         Rimini expresses concern that Oracle's requested injunction, which would prevent Rimini

17    from copying, preparing derivative works from, or using one customer's Oracle software for the

18    benefit of any other customer, would prevent Rimini from maintaining its "new" business model.

19    Opp'n at 22-24.  This is an astounding admission.  If Rimini continues to cross-use, then it

20    continues to infringe.  The Court should enjoin this behavior, consistent with its prior rulings.

21         The Court has ruled that the ban on cross-use applies to every product line at issue.  The

22    Court construed the plain language of the JD Edwards and Siebel licenses to prohibit Rimini Street

23    from "us[ing] the customer's software or support materials to support other customers." Jury Instr.

24    24, Dkt. 880.  The Court had previously held that an individual client's license to Oracle Database

25    did not permit Rimini to use any client copies of Oracle Database to "develop and test updates for

26    its clients" or to "support multiple customers." Dkt. 476 at 14-15.  And prior to that, the Court had

27    held that supporting multiple customers (and, specifically, using City of Flint's software to develop

28    and test software updates for customers other than City of Flint) was not permitted.  Dkt. 474 at 13.

1    Rimini has no basis to claim ignorance.  Given Rimini's admission of continued infringement, the

2    Court's clear guidance, and the jury's finding of liability on all counts of copyright infringement,

3    Oracle has strong entitlement to an injunction.

4                    **d.      Licensee's "Internal Data Processing Operations"**

5              Rimini takes the position that it does not understand the "internal data processing

6    operations" restriction in the PeopleSoft licenses, and that the Court therefore should not enter any

7    injunction containing this phrase.  Opp'n at 22.  That phrase is an exact quote from PeopleSoft

8    licenses that Rimini has stipulated apply uniformly to its customers using PeopleSoft software,

9    PTX 5328.  It was addressed several times at trial.  *E.g.*, Tr. 809:1-810:6 (Ravin) (admitting Rimini

10   violated this provision); 1112:22-1113:2 (Allison) (discussing its plain meaning).  Rimini's

11   disturbing argument concerning this just-litigated phrase is fundamentally inconsistent with

12   Rimini's claim it is no longer infringing—and underscores the need for injunctive relief.

13             Both the Court and Oracle's witness, Mr. Rich Allison, have provided extensive guidance

14   about the meaning of this phrase.  *See* Dkt. 474 at 13 (holding that use of City of Flint's

15   environments "to develop and test software updates for the City of Flint and other Rimini

16   customers with similar software licenses" was not use for City of Flint's internal data processing

17   operations); Tr. 1042:1-13 (Allison) ("internal data processing operations" restriction does not

18   prevent a licensee from supporting its own software), Tr. 1043:2-13 (same restriction does not

19   prevent a third party from "dial[ing] in and help[ing] somebody with their software and the use of

20   the software"), Tr. 1043:14-19 (general intent is that the "licensee can't go out and begin to

21   perform PeopleSoft services for others and thereby prevent Oracle from selling more PeopleSoft

22   software"), Tr. 1112:22-1113:2 (same restriction forbids Rimini from using one customer's

23   software "to develop and test updates to provide to other customers"); *see also* Tr. 809:22-810:6

24   (Ravin) (he knew "from the very beginning" that Rimini was "using copies of PeopleSoft software

25   for internal data processing operations for customers other than the licensee").

26                    **e.      Local Copies of Oracle Software and Support Materials**

27             Last, Rimini opposes Oracle's request for reasonable disposition on grounds that should

28   shock the Court:  "Oracle's proposed form of relief would significantly disrupt Rimini's business

1  operations by commanding that it turn over—to a third party and for an unlimited period of time—

2  physical computer equipment and storage media that Rimini uses to conduct its day-to-day

3  business servicing clients."  Opp'n at 27.  Oracle's proposed disposition order asks this Court to

4  order Rimini to turn over its computers and storage media in its possession, custody, or control that

5  contain copies of and derivative works prepared from the Oracle software and support materials at

6  issue in this case, all of which have been found to be infringing.  *See* Dkt. 900-1, Section III.

7  Rimini no longer relies on its story that following the Court's 2014 summary judgment orders,

8  Rimini adopted a "remote-services model," Dkt. 690 at 5, and "discontinued the infringing acts"

9  because it "operate[d] with solely remote environments," Dkt. 860.  The only way disposition

10  could "disrupt Rimini's business" is if the "solely remote" story is false.  Once again, Rimini has

11  shown that its "business" is infringing Oracle intellectual property.

12      Rimini asks to keep its infringing copies of Oracle software and support materials.  Rimini

13  concedes that "the copies and derivative works addressed at trial or on summary judgment were

14  found to infringe."  Opp'n at 31 (responding to PF 28).  Rimini does not dispute that every single

15  environment on Rimini's computer systems reproduced one or more of Oracle's registrations-in-

16  suit, that Rimini created updates and fixes using unlicensed development environments, or that

17  Rimini continued its infringing activities.  PF 26, 55, 90 (all undisputed).  Rimini's sweeping

18  statement that it uses the computers and storage media that contain the exact materials found to be

19  infringing "to conduct its day-to-day business servicing clients" is irredeemable.  Oracle asks this

20  Court to enter Oracle's proposed injunctive relief and disposition order without delay.

21      **2.    Rimini's Infringement Has Caused and Will Cause Irreparable Injury
            to Oracle's Goodwill and Reputation.**

22

23      Independent of the ongoing nature of the infringement, the Court should enter a permanent

24  injunction because harm to Oracle's business reputation and goodwill is irreparable harm.

25  *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007).  Rimini's massive

26  infringement and unlawful computer access eroded the relationships between Oracle and its

27  customers, and created uncertainty and distrust in the market.  PF 85-87, 89.  As discussed in

28  Oracle's Motion, because such harms are almost impossible to quantify, they are canonical

1    examples of irreparable harm.  *See, e.g., Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1154 (9th Cir.

2    2011) ("*Apple II*"); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d

3    597, 603 (9th Cir. 1991); *MySpace, Inc.*, 498 F. Supp. 2d at 1305.

4         Rimini does not dispute that injuries to goodwill and business reputation are types of

5    irreparable harm.  Instead, Rimini minimizes Oracle's evidence of injury to goodwill and business

6    reputation, claims that Oracle's evidence fails to establish causation sufficient for an injunction,

7    and claims that advisory portions of the jury's verdict prevent the Court from considering this

8    evidence.[2]  Rimini is wrong on all counts.

9         Rimini built a business through the pervasive, undisputed, and unauthorized downloading

10   and copying of Oracle software.  As explained in Oracle's Motion, by failing to pay for the

11   software it used and through unlawful downloading, Rimini built its business and gained customers

12   quickly.  PF 85-86.  As Safra Catz explained, Rimini broke "the bonds and trust that we have with

13   our customers … All of a sudden, they're wondering whether we've treated them fairly."  PF 87.

14   Ms. Catz's testimony was supported by the testimony of Oracle's experts Edward Yourdon and

15   Elizabeth Dean that Rimini's infringement damaged the bonds between Oracle and its customers.

16   *See* Tr. 1701:4-22 (Yourdon); Tr. 1990:4-24 (Dean).  The other evidence on causation, which

17   Rimini focused on in closing and focuses on now, shows the irreparable harm at stake.

18        Seeking to blunt Ms. Catz's testimony, Rimini asserts that it was "rank speculation" that

19   should be disregarded.  However, "[a] corporate officer familiar with company history, financial

20   statements, and customer relations may offer opinion testimony as to the extent the company

21   sustains damages to its goodwill".  *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533,

22   1547 (10th Cir. 1996).  Ms. Catz's testimony, corroborated by Mr. Yourdon's and Ms. Dean's

23   testimony, is compelling proof of the irreparable harm caused by Rimini.[3]

24   _____

25   [2] Rimini falsely asserts that Oracle rather than Rimini "equates lost profits with lost goodwill."
     Oracle in fact distinguished between the two.  *See, e.g.*, Mot. at 17 (explaining that "[c]ourts find

26   irreparable harm even where lost profits or lost future sales may be difficult to prove.").

27   [3] This evidence is enough to distinguish Rimini's cases concerning failure to show irreparable
     harm as a matter of law.  Both *Goldie's Bookstore, Inc. v. Superior Court of State of Cal*., 739 F.2d
     466, 472 (9th Cir. 1984) and *Brighton Collectibles, Inc. v. Pedre Watch Co*., No. 11CV00637 AJB

28   (WVG), 2013 WL 5719071, at *4 (S.D. Cal. Oct. 21, 2013) rejected requests for injunctions where
     the movants had introduced no evidence of customer goodwill or no evidence at all in support.

1        Rimini argues that the jury's award of no lost profits on Oracle's copyright infringement

2    claim implies that the jury found that Rimini's misconduct did not cause any harm to Oracle's

3    goodwill.  Opp'n at 1, 10.  That is wrong several times over.  First, the Court and the jury found

4    Rimini liable for copyright infringement and computer access violations, and awarded Oracle

5    actual damages under the relevant statutes.  By statute, both the Copyright Act and the computer

6    access statutes require that the alleged misconduct *caused harm* in order to award damages, and the

7    jury was instructed accordingly.  17 U.S.C. § 504(b) ("The copyright owner is entitled to recover

8    the actual damages suffered … *as a result of* the infringement") (emphasis added); Cal. Penal Code

9    § 502(e)(1) ("the owner or lessee of the computer, computer system, computer network, computer

10    program, or data who suffers damage or loss *by reason of* a violation of any of the provisions of

11    subdivision (c) may bring a civil action") (emphasis added);  Nev. Rev. Stat. § 205.511(1)(a)

12    ("Damages for any response costs, loss or injury suffered *as a result of* the crime") (emphasis

13    added); *see also* Jury Instrs. 30, 50, 55, 60.  Thus, the jury's verdict reflects a finding of that harm.

14    Harms, including irreparable harm, "flow from" Rimini's infringing copies and unlicensed

15    downloads.  *Fox Broadcasting Co. v. Dish Network LLC*, 747 F.3d 1060, 1072-73 (9th Cir. 2013).

16        Second, on the computer access claims, the jury specifically did award Oracle lost profits,

17    Dkt. 896, which is necessarily a finding that Rimini (and Ravin) caused those losses.  As to

18    copyright lost profits, the Court instructed the jury that it could award those only if Oracle proved

19    "the amount" of the lost profits, and that "[y]ou may not guess the amount … to calculate lost

20    profits."  Jury Instr. 31, Dkt. 880, *see also* Jury Instr. 29 (award of actual damages must not be

21    based on "conjecture").  With hundreds of customers at issue across multiple product lines and

22    through many years, the jury may have felt that copyright lost profits were simply too difficult to

23    quantify.[4]  And that is what Rimini argued in closing. *See, e.g.*, Tr. 3591:21-3592:2 (counsel for

---

24    [4] Rimini incorrectly argues that the Seventh Amendment constrains this Court from issuing

25    injunctive relief.  On Oracle's copyright claims, the jury was asked to select what it believed to be
"the best measure" of actual damages:  lost profits or a fair market value license.  Question 6, Dkt.

26    896.  For whatever measure it did not select, consistent with Fed. R. Civ. P. 39(c), the jury was
asked to provide an answer "advisory to the court only".  *Id.*  The Seventh Amendment does not

27    attach to decisions by an advisory jury, and "[a]n advisory jury verdict does not bind the court."
*United States v. Parker*, No. 3:07-CV-01969-H-JLB, 2015 WL 1745879, at *4 (S.D. Cal. Feb. 17,
2015) (citing *Traxler v. Multnomah County*, 596 F.3d 1007, 1013 (9th Cir. 2010)).  And

28    entitlement to lost profits is not a predicate to entitlement for an injunction.  *See Mytee Products,
Inc. v. Harris Research, Inc.*, 439 Fed. Appx. 882, 887 (Fed. Cir. 2011) ("We have never held,

1    Rimini).  Lost profits or lost future sales are not a prerequisite to a permanent injunction.  *See*

2    *Mytee Products, Inc. v. Harris Research, Inc.*, 439 Fed. Appx. 882, 887 (Fed. Cir. 2011) ("We

3    have never held, however, that in order to establish irreparable harm a patentee must demonstrate

4    that it is entitled to lost profits").  On the contrary, any difficulty in proving lost profits weighs in

5    *favor* of an injunction.  *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588

6    (7th Cir. 1984) ("the difficulties of proving lost profits make it chancy to rely on a damage award

7    to provide full compensation"; upholding preliminary injunction); *Guidance Endodontics, LLC v.*

8    *Dentsply Int'l, Inc.*, 633 F. Supp. 2d 1257, 1271 (D.N.M. 2008).

9         Regardless, case law recognizes that harm to goodwill and business reputation is

10   intangible, difficult to quantify, and sufficient to establish irreparable harm.  *See Apple Inc. v.*

11   *Psystar Corp.*, 673 F. Supp. 2d 943, 949-50 (N.D. Cal. 2009) ("*Apple I*") ("the same evidence and

12   rationale put forth by Apple to show irreparable harm support the conclusion that an award of

13   damages would be inadequate, simply because the harm caused to Apple's reputation, goodwill,

14   and brand is difficult, if not impossible, to quantify."), *aff'd*, *Apple II*, 658 F.3d at 1150, 1162.

15   "Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither

16   easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive

17   relief."  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (emphasis

18   added).  The jury's findings of causation and harm on Oracle's copyright and computer access

19   claims confirm this irreparable harm.

20        Rimini weakly asserts that the jury award of a fair market value license for Rimini's

21   infringement fully compensates Oracle.  Yet Rimini fails even to articulate how the jury's award

22   quantifies or compensates for the harm to Oracle's goodwill and reputation.  Opp'n at 14- 15.  At

23   most Rimini establishes that monetary damages can compensate a plaintiff for any goodwill a

24   *defendant* garnered by infringement.  *See* Opp'n at 15 *citing Minco, Inc. v. Combustion Eng'g,*

25   *Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996) (finding that the reasonable royalty award "already

26   compensates Minco [plaintiff] for any goodwill CE [defendant] garnered by infringement").

27   however, that in order to establish irreparable harm a patentee must demonstrate that it is entitled to
     lost profits "); *Active Sports Lifestyle USA, LLC v. Old Navy, LLC, No. SACV 12-572 JVS EX,*
28   2014 WL 1246497, at *2 (C.D. Cal. Mar. 21, 2014) (considering an application for an injunction
     after a jury found copyright infringement but no damages, at all).

1   This has nothing to do with the harm to plaintiff Oracle's goodwill and reputation in the

2   marketplace.[5]  And this fails to address the effect of Rimini's arrival in the marketplace on stolen

3   wings:  When Oracle competes with Rimini, whose business was built upon infringement of

4   Oracle's own intellectual property, "mere damages will not compensate for [Rimini's] increasing

5   share of the market, a market which [Oracle] competes in, and a market that [Oracle] has in part

6   created with its investment" in copyrighted software.  *Douglas Dynamics, LLC v. Buyers Prods.*

7   *Co.*, 717 F. 3d 1336, 1345 (Fed. Cir. 2013).

8         Last, Rimini argues that Oracle's request for a permanent injunction should be denied

9   because Oracle did not seek a preliminary injunction.  Opp'n at 12 (citing *Apple, Inc. v. Samsung*

10  *Elecs. Co.*, 678 F.3d 1314 (Fed. Cir. 2012)).  In support, Rimini cites only cases holding that a

11  court may weigh a party's delay in seeking relief when evaluating whether to seek a preliminary

12  injunction.  *See Samsung*, 678 F.3d at 1325 (discussing party's delay in evaluating a request for

13  preliminary injunction).  Permanent injunctions, by their nature, are entered after a determination

14  of liability.  Applied to Oracle's request for a permanent injunction, Rimini's argument is absurd:

15  Oracle moved promptly for an injunction once the Court heard the trial evidence and the jury

16  determined Rimini's liability as to PeopleSoft documentation, Siebel, JD Edwards, and the

17  computer access statutes.  Dkt. 896 (verdict).  Even after summary judgment, Rimini refused to

18  enter into a stipulation on PeopleSoft liability, only stipulating that the contract terms of the

19  exemplar licenses in the summary judgment order applied to all PeopleSoft customers.  PTX 5328.

20  Oracle was not required to move for preliminary relief to seek injunctive relief; any ruling

21  otherwise would clog the courts with protective motions for injunctive relief before the courts have

22  the benefit of trial evidence.  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 104  n.20

23  (2d Cir. 2012) (rejecting an argument similar to Rimini's in the trademark infringement context);

24  *Capitol Records Inc. v. Thomas-Rasset*, 680 F. Supp. 2d 1045, 1059 (D. Minn. 2010) ("rejecting

---

25  [5] Rimini's other cases are also irrelevant.  Opp. at 15 *citing XpertUniverse, Inc. v. Cisco Sys., Inc*.,
26  No. CV 09-157-RGA, 2013 WL 6118447, at *13 (D. Del. Nov. 20, 2013) (finding of the adequacy
    of money damages in the case where a patentholder is willing to forego its exclusive right for some
27  manner of compensation); and *Microsoft Corp. v. Motorola, Inc., No. C10-1823 JLR*, 2012 WL
    5993202, at *6 (W.D. Wash. Nov. 30, 2012)("because Motorola has always been required to grant
28  Microsoft a RAND license agreement for its H.264 standard essential patents, as a matter of logic,
    the impending license agreement will adequately remedy Motorola as a matter of law.")

1   assertion that Plaintiffs' failure to seek a preliminary injunction prevents entry of a permanent

2   injunction" (copyright case)), *vacated on other grounds*, 692 F.3d 899 (8th Cir. 2012).

3           **3.      The Balance of Hardships Tips Strongly in Favor of Oracle Because the**
                      **Enjoined Acts Have No Legitimate Business Purpose.**
4

5           The balance of hardships tips strongly in Oracle's favor because Oracle seeks only to

6   enjoin acts that have already been determined to be unlawful.  The balance of hardships tips

7   undisputedly in favor of a rightsholder seeking to protect its copyrighted works where the party to

8   be enjoined does not have a "separate legitimate business purpose" for continuation of the

9   infringing acts.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220

10  (C.D. Cal 2007); *Teller v. Dogge*, No. 2:12–CV–591 JCM (GWF), 2014 WL 4929413, at *5 (D.

11  Nev. 2014) ("Any harm to defendant in forcing him to comply with the requirements of the law is

12  outweighed by plaintiff's efforts to protect his copyrighted performances . . . from consumer

13  confusion.").  If Rimini's claims that its "new process" does not infringe Oracle's intellectual

14  property rights are true, then an injunction will create no burden on Rimini at all.  An injunction

15  can only impact Rimini if the story about its "new process" is false, as Rimini's Opposition

16  strongly suggests.

17          **4.      Public Policy Favors Entry of an Injunction Against Infringers and**
                      **Those Who Have Committed Computer Access Violations.**
18

19          Rimini claims that the injunction Oracle seeks would be "*against* public interest, as Oracle

20  is pursuing injunctive relief against the interest of the market and consumers."  Opp'n at 17.  That

21  is wrong.  A "reasonably tailored" injunction that vindicates copyright rights "would not harm the

22  interests of the public; rather, [it would be] consistent with the policies underlying copyright

23  protection"  *Apple I*, 673 F. Supp. 2d at 950; *see also Apple Computer, Inc. v. Franklin Computer

24  Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

25          Rimini also mischaracterizes the jury's verdict.  Rimini essentially argues that the jury's

26  advisory finding of no infringer's profits means that the jury concluded that Rimini did not in fact

27  "free ride on the works of others."  Opp'n at 17.  But in fact, the jury did find that Rimini's "free

28  ride" on Oracle's copyrights harmed Oracle in the amount of $35.6 million in actual damages for

1  copyright infringement.  Dkt. 896.  Based upon the jury instructions and the evidence presented,

2  the finding of no infringer's *profits* only related to whether Rimini earned a profit in so infringing.

3  Tr. 2654:15-17 (Zorn) (Rimini "had a net loss of 63 million" in the relevant time period); Tr.

4  2758:15-2760:1 (Hampton) ("they [Rimini] didn't have any profit.  They were negative on net

5  profit, so they weren't profitable."); Jury Instr. 32, Dkt. 880.  The jury still found the conduct to be

6  *unlawful*, and copyright law and Oracle's requested injunction seek to protect against such

7  infringement.  *Compare Eldred v. Ashcroft*, 537 U.S. 186, 225-26 (2003), *with* Tr. 443:4-445:6

8  (Ravin) (planning to get the high-multiples valuation of a software company without investment).

9        Rimini also argues that the jury's finding of innocent copyright infringement should thwart

10  Oracle's request for an injunction.  But courts can and do enter injunctions against innocent

11  infringers, consistent with the plain language of the Copyright Act.  *See* 17 U.S.C. § 405(b)

12  (allowing a court to "enjoin the continuation of the infringing undertaking" even where an innocent

13  infringer was misled by the absence of a copyright notice on an authorized copy of the copyrighted

14  work); *Jackson v. MPI Home Video*, 694 F. Supp. 483, 492, 493 (N.D. Ill. 1988) (issuing a

15  preliminary injunction against a likely innocent infringer who "evince[d] an attitude of callous

16  disregard toward Jackson's copyright").  The volume of infringing copies and derivative works in

17  this case, PF 21-28, 62, the scale of cross-use of those copies, PF 45-46, 51, 53-61, 64-65, and

18  Rimini's efforts to conceal its infringement, PF 52, 90-95, amply demonstrate Rimini's "callous

19  disregard" for Oracle's copyright rights.

20        The cases that Rimini cites in its Opposition do not counsel a different result.  Because

21  Rimini continues to infringe, its current infringement is undisputedly willful rather than innocent.

22  Rimini also cites almost entirely to discussions under the Lanham Act of innocent trademark

23  infringement where no harm had been established.  See *In re Cir. Breaker Litig.*, 860 F. Supp.

24  1453, 1455 (C.D. Cal. 1994) ("The Lanham Act empowers courts to issue injunctions 'to prevent

25  the violation' of the registrant's rights, 15 U.S.C. § 1116(a), not to punish innocent infringers."),

26  *aff'd sub nom. Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894

27  (9th Cir. 1997); *Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*, Nos. CV 98–8218

28  NM (SHx), 99–4783 NM (SHx), 2003 WL 25778704, at *7 (C.D. Cal. Jan. 29, 2003) (quoting *In

1    *re Cir. Breaker Litig.*).[6]  These cases have no relevance to the statutory notion of innocent

2    infringement under the Copyright Act.  When quoting from *Dolori Fabrics, Inc. v. Limited, Inc.*,

3    662 F. Supp. 1347 (S.D.N.Y. 1987), Rimini omits that the court denied injunctive relief where "an

4    innocent infringer … ceased its infringement *immediately upon receiving notice*" that the work was

5    copyrighted.  *Dolori Fabrics*, 662 F. Supp. at 1358 (emphasis added).  Rimini always had notice

6    that Oracle's software and support materials were copyrighted, Tr. 1546:5-20 (Screven).[7]  Rimini's

7    authorities do not counsel denial of Oracle's proposed injunction

8          Last, innocent infringement has no bearing on Oracle's request for entry of an injunction as

9    to Rimini's computer access violations, where the jury found that Rimini's and Ravin's violations

10   were knowing, willful, and without authorization.  Jury Instrs. 47, 48, 53, 54, Dkt. 880.

11              **5.      Rimini's Now Unbelievable Claim That It Has Ceased Its Improper**
12                      **Behavior Should Not Be Credited and Does Not Bar Injunctive Relief.**

13         Rimini asserts that Oracle's request for an injunction is based entirely on past infringement

14   and there is no risk of future harm.  Opp'n at 11, 13-14.  As noted above, Rimini's objections that

15   the proposed injunction would impact Rimini's *current* processes belie that assertion.

16         Regardless, Rimini does not address either the case law Oracle cited that voluntarily

17   cessation is unpersuasive evidence when considering a permanent injunction or the facts showing

18   that Rimini has a history of lying to the Court.  "A private party's discontinuation of unlawful

19   conduct does not make the dispute moot, however.  An injunction remains appropriate to ensure

20   that the misconduct does not recur as soon as the case ends."  *Metro-Goldwyn-Mayer Studios, Inc.*

21   *v. Grokster, Ltd.,* 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (quoting *BMG Music v. Gonzalez*,

22   430 F.3d 888, 893 (7th Cir. 2005)); *see also Broadcast Music, Inc. v. McDade & Sons, Inc.*, 928 F.

23   Supp. 2d 1120, 1136 (D. Ariz. 2013).

24         Further, Rimini's supposed change in practice only after a finding of infringement supports

25   the inference that Rimini will continue to infringe in the absence of an injunction.  Rimini makes

26   no attempt to deny this.  *Grokster*, 518 F. Supp. 2d at 1221 ("[S]uch an inference is warranted

---

27   [6] While *Contessa Food* included copyright claims, Rimini quotes only trademark-law discussions.

28   [7] In *Polygram Int'lPub., Inc. v. Nevada/TIG, Inc*., 855 F. Supp. 1314 (D. Mass 1994), the "good
     faith" Rimini cites related to indirect liability absent direct infringement.  *Id.* at 1323-24, 1334-35.

1   based upon various undisputed facts, including … [cessation] admittedly did not commence until

2   after this Court's September 27, 2006 Order granting Plaintiffs' motion for summary judgment.");

3   *accord SEC v. Koracorp Indus.*, 575 F.2d 692, 698 (9th Cir. 1978) (promises of reform are

4   unpersuasive "especially if no evidence of remorse surfaces until the violator is caught"); *Walt*

5   *Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (upholding trial court's permanent

6   injunction where the defendant "simply took the action that best suited him at the time [by

7   voluntarily ceasing infringement]; he was caught red-handed … [and defendant] suddenly

8   reformed"); *see also United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960).

9   **B.    Oracle's Proposed Section 502 Injunction Appropriately Identifies The**
10  **Unlawful Conduct That Rimini Must Cease Or Not Resume.**

11          Rimini also asserts that Oracle's proposed injunction pursuant to 17 U.S.C. § 502, Dkt.

12  900-1, Section II is vague and overbroad. This is simply another delay tactic.  After five and a half

13  years of litigation, the production of millions of documents, dozens of depositions, and a month-

14  long trial (including extensive expert testimony), Rimini now challenges certain terms in the

15  proposed injunction as "vague," while declining to offer any alternatives, let alone a proposed form

16  injunction addressing its concerns.[8]  Rimini's first attempt to draw out the injunction process by

17  requesting an extensive briefing schedule on October 13 failed.  Rimini's new effort to delay by

18  pressing a handful of complaints concerning Oracle's proposed injunction, while arguing that

19  terms both sides and the Court understand are somehow "vague" should also be rejected.

20          Specifically, here Rimini: (1) claims that Oracle seeks to enjoin conduct that was not

21  litigated in this matter; (2) feigns an inability to apply terms from Oracle's license agreements to its

22  present business model; and (3) protests that Oracle's proposed injunction may impact its present

23  business model.  As to the first point, Rimini is demonstrably incorrect; as to the second, the

24  Court's plain-language construction of the relevant language is embodied in the Court's summary

25  judgment orders and in jury instructions to which Rimini did not object; as to the third, Rimini's

26  stated concerns support the need for an injunction to avoid further acts of infringement. The Court

27  _____

28  [8] At trial, Mr. Ravin claimed to be "very familiar" with the PeopleSoft licenses (Tr. 379:22-24) and
     was described "as the leader in software maintenance" (Tr. 101:4-8).  Rimini now suggests that it
     and Mr. Ravin are unfamiliar with the industry in general and the PeopleSoft licenses in particular.

1    should adopt Oracle's proposed Section 502 Order in its entirety.

2           1.    **Rimini Must Not Be Permitted to Prepare or Distribute Infringing**
                  **Derivative Works.**
3

4           As discussed above, Oracle proved at trial that Rimini created and distributed infringing

5    derivative works.  Rimini should not be permitted to continue to do so.

6           Rimini suggests that the references to preparation and distribution of derivative works in

7    Oracle's proposed injunction are vague.  Opp'n at 20.  But the case that Rimini cites in support of

8    its position approved an injunction with just such language.  *Compare id.* (citing *Craigslist, Inc. v.*

9    *Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1062 (N.D. Cal. 2010)) *with Craigslist* at 1046

10   (enjoining "copying, distributing, displaying, *creating derivative works* or otherwise using

11   protected elements of craigslist's copyrighted website") (emphasis added).  Other cases approve

12   similar injunctive language.  *See LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150,

13   1158 (9th Cir. 2006) ("[T]he district court is directed to enter a preliminary injunction prohibiting

14   Concordia from reproducing, distributing, publicly displaying, or *creating derivative works* based

15   upon LGS's architectural plans.") (emphasis added), *overruled on other grounds*, *Perfect 10, Inc.*

16   *v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011); *Apple I*, 673 F. Supp. 2d. at 956 (enjoining

17   "[c]opying, selling, offering to sell, distributing, or *creating derivative works* of plaintiff's

18   copyrighted Mac OS X software without authorization from the copyright holder") (emphasis

19   added); *see also Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 1003 (N.D. Cal. 2006) (entering an

20   injunction that prohibited defendants "from infringing Plaintiff's copyrights").  In any event,

21   Oracle's proposed injunction includes a specific example of prohibited conduct:  "Rimini shall not

22   use a specific licensee's PeopleSoft environment to develop or test software updates or

23   modifications for the benefit of any other licensee."  Section 502 Order ¶ 6; *see also id.* ¶ 12 (same,

24   for JD Edwards); *id.* ¶ 16 (same, for Siebel).

25          2.    **Oracle's Adoption of the Court's Language Regarding a "Licensee's**
                  **Own Computer Systems" Is Proper.**
26

27          As discussed above, the Court already construed the plain language of Oracle's licenses to

28   impose location restrictions on Rimini's copying of, and preparation of derivative works from,

1    Oracle software and support materials.  Rimini nonetheless suggests that Oracle's failure to further

2    define "licensee's own computer systems" renders this phrase so vague as to not provide fair notice

3    of the scope of injunction.  Opp'n at 21-22.  Rimini's arguments do not withstand close scrutiny.

4         With respect to PeopleSoft, Oracle's Section 502 Order asks the Court to enjoin behavior

5    that the Court has already held to be unlawful, using the Court's own language, as discussed above.

6    *See* Jury Instr. 24, Dkt. 880.  As to JD Edwards and Siebel, almost all of the licenses at issue

7    contain some language limiting or forbidding off-site copies of the software.  PTX 5466.  The

8    Section 502 Order uses the same "specific licensee's own computer systems" language to describe

9    the permitted locations of the JD Edwards and Siebel software and support materials for

10   consistency and clarity.  The Court should enter Oracle's proposed location restrictions.

11                    **3.      Restricting Rimini's Copying and Use of PeopleSoft Software and**
                              **Documentation to Support of a Specific Licensee's Own Internal Data**
12                            **Processing Operations Is Appropriate and Unambiguous.**

13        Paragraph 4 of the Section 502 Order reads: "Rimini shall not reproduce, prepare derivative

14   works from, or use a specific licensee's PeopleSoft software or documentation other than to

15   support the specific licensee's own internal data processing operations."  Dkt. 900-1.  Rimini

16   objects that the phrase "internal data processing operations is so vague as to render this provision

17   of the injunction improper," likening it to a broad and formless "restraint[] upon the commission of

18   unlawful acts".  Opp'n at 22.  As discussed above, both the Court and Mr. Allison explained this

19   term in great detail.  The phrase "internal data processing operations" as applied to Rimini is both

20   expressive and undisputed, and should be included in the Section 502 Order.

21                    **4.      Oracle's Definition of Cross-Use in Terms of Benefit to Another**
                              **Licensee Is Appropriate and Consistent with the Court's Construction**
22                            **of the Relevant Licenses.**

23        Oracle's very first witness, Dr. Randall Davis, defined cross-use to mean "using one

24   customer's software for the benefit of another customer."  Tr. 191:21-192:9.  This simple

25   definition provides clear guidance regarding what Rimini may and may not do, as Rimini has

26   requested.  *See* Opp'n at 35 (objecting that PF 52 and 53 did not define cross-use).

27        Dr. Davis's definition is consistent with the Court's guidance on cross-use, discussed at

28   length above.  Rimini frets that its "new" business model may not survive if Oracle's proposed

1    injunction is entered.  Opp'n at 24.  That is true only to the extent Rimini continues to cross-use.

2    Rimini's argument simply confirms the need to prevent this improper behavior.  *Grokster*, 518 F.

3    Supp. 2d at 1220; *Teller*, 2014 WL 4929413 at *5.

4         Rimini asserts that Oracle's requested injunction would create a "monopoly in ideas or

5    knowledge."  Opp'n at 24 (citing 17 U.S.C. § 102(b)).  First, Rimini has affirmatively waived its

6    17 U.S.C. § 102 defense.  *See* Dkt. 401 ¶ 11. Second, Rimini identifies no facts in support of its

7    theory that enforcement of Oracle's license provisions would be "an impermissible use of

8    copyright law"—an argument that this Court rejected in *Rimini II*.  *Rimini II*, Order re Mot. to

9    Strike, Dkt. 90 at 6.  Third, Rimini has conceded that it creates new copies in the form of RAM

10   copies "every time it start[s] up or r[u]n[s] Oracle software."  PF 50 (undisputed).  Oracle's

11   proposed restriction is thus a restriction on copies and enforcement of a license provision, not an

12   unlawful monopoly.

13         **5.    Rimini Should Be Prohibited from Copying or Accessing JD Edwards
              Source Code, Siebel Source Code, and Oracle Database.**
14

15        Rimini complains that three of Oracle's proposed prohibitions are categorical, not

16   permitting any exception.  Each of these prohibitions is warranted.  The Court found that the plain

17   language of a JD Edwards license at issue "d[id] not permit Rimini to access the software's source

18   code to carry out development and testing of software updates."  Dkt. 474 at 22.  Oracle introduced

19   evidence at trial that Rimini did access and modify JD Edwards source code.  *See* PTX 195 at 6, 14

20   (identifying access to tools to "update the J.D. Edwards source code" as a development

21   requirement for a JD Edwards fix); Tr. 1657:5-1659:13 (discussing JD Edwards fix development,

22   including treatment of source code).  At trial, Mr. Ravin testified concerning Rimini's delivery of

23   Siebel fixes through modification of the Siebel repository, Tr. 696:21-698:1, which constitutes

24   access to source code.  The jury was ultimately instructed, in language to which Rimini never

25   objected, that Rimini could not "access the software's source code to carry out development and

26   testing of software updates" for both JD Edwards and Siebel.  *See* Dkt. 869 at 33 (no objection to

27   this language in Rimini's written objections); Tr. 3228:3-3248:5 (no objection to this language

28   during argument on express license instruction).  Oracle seeks enforcement of this prohibition.

1    Regarding Oracle Database, the Court held that the Developer License did not allow

2  Rimini to use Oracle Database for commercial purposes, *see* Dkt. 476 at 11, and that no customer's

3  Oracle License and Service Agreement permitted Rimini to copy Oracle Database, *see* Dkt. 476 at

4  14, 15.  Rimini has introduced evidence suggesting that it continues to make copies of Oracle

5  Database.  *See* Mackereth Decl. ¶ 9 ("Rimini downloads Oracle Database software from password-

6  protected Oracle websites").  Oracle seeks an injunction to enforce the Court's prior ruling.

7    **C.    Oracle's Proposed Disposition Order Is Reasonable.**

8    Oracle seeks a disposition order pursuant to 17 U.S.C. § 503(b).  Dkt. 900-1, Section III

9  (the "Section 503 Order").  As Oracle explained in its Motion, by statute, such orders are available

10  only as to materials and means "found to have been made or used in violation of the copyright

11  owner's exclusive rights," after a determination of infringement.  17 U.S.C. § 503(b).  Disposition

12  orders are distinct from impoundment orders, which may be sought at any time during the

13  pendency of a copyright infringement action.  17 U.S.C. § 503(a).  Impoundment orders are subject

14  to Fed. R. Civ. P. 65, while disposition orders, which are remedial in nature, are not.  *Compare*

15  Fed. R. Civ. P. 65(f) ("This rule applies to copyright-impoundment proceedings.") *and* Adv.

16  Comm. Notes to 2001 Amendment to Rule 65 (observing that "new subdivision (f)" applies to "the

17  discretionary impoundment procedure adopted in 1976, 17 U.S.C. § 503(a)") *with Microsoft Corp.*

18  *v. EEE Bus. Inc.*, 555 F. Supp. 2d 1051, 1061 (N.D. Cal. 2008) (entering a disposition order

19  pursuant to § 503(b) "authorizing the remedial destruction of the infringing Microsoft software").

20    **1.    Rimini Does Not Fairly Dispute the Predicate Facts.**

21    The jury found that all of Rimini's copies of Oracle software and support materials and all

22  derivative works prepared from Oracle software and support materials were infringing.  PF 28.

23  The Court has "broad powers" to enter a disposition order, *Rogers v. Koons*, 960 F.2d 301, 313 (2d

24  Cir. 1992), and should do so here.  As discussed above, Rimini concedes that all copies of which

25  Oracle is aware are infringing.  Opp'n at 31 (responding to PF 28).  Rimini nonetheless suggests

26  that "any other copies or derivative works" may not be infringing.  *Id.*; *see also id.* at 26 (alleging

27  that Oracle's proposed order "does not even require the copies on a Rimini server to be

28  infringing.")  Rimini provides no facts concerning its supposed non-infringing copies of Oracle

1   software.  The Court should adopt PF 28 and order reasonable disposition of all copies and

2   derivative works in Rimini's possession, custody, or control.[9]

3           Contrary to Rimini's suggestion, Opp'n at 26, there is no statutory requirement that

4   infringement be willful or that an infringer previously be sanctioned for a disposition order to

5   issue, and Rimini cites no case imposing such a requirement.  17 U.S.C. § 503(b).  And, in any

6   event, Rimini has been sanctioned for its conduct in this matter, and appears to admit that it

7   continues to infringe, satisfying this posited requirement.  *See* Dkt. 466 (granting sanctions against

8   Rimini for spoliation deleting copies of Oracle's of copyrighted works).

9           **2.**       **Oracle's Escrow Proposal Is Reasonable and Appropriate.**

10           Oracle proposes that infringing materials be produced and provided to the third party

11   escrow service of Oracle's choice.  Section 503 Order.  Rimini's suggestion that Oracle should be

12   limited to taking direct possession of the infringing copies or asking for their destruction, Opp'n at

13   26, is without merit.  While the Copyright Act of 1909, the predecessor to the current Act, had such

14   limits, *see* Copyright Act of 1909 § 101(d), Section 503(b) was enacted "to make this

15   [impoundment] provision more flexible by giving the court discretion to order 'destruction or other

16   reasonable disposition' of the articles found to be infringing.  Thus, as part of its final judgment or

17   decree, the court could order the infringing articles sold, delivered to the plaintiff, or disposed of in

18   some other way that would avoid needless waste and best serve the ends of justice."[10]  H.R. Rep.

19   94-1476, 1976 U.S.C.C.A.N. 5659 at 5776 (discussing Section 503(b)).

20           **D.**       **Oracle Is Entitled To A CDAFA, NCCL, And UCL Injunction.**

21           Oracle is entitled to entry of an injunction pursuant to the CDAFA, NCCL, and UCL.  Dkt.

22   900-1, Section IV (the "CDAFA, NCCL, and UCL Order").  The jury found that Rimini and Ravin

23   harmed Oracle through their computer access violations, and did so knowingly, willfully, and

24   without authorization.  Jury Instrs. 47, 48, 53, 54, Dkt. 880; Dkt. 896 (verdict).  As set forth in

25    

26   [9] Given Rimini's strategic choice to provide no information about the location of copies within its possession, custody, or control, Rimini cannot fairly complain that Oracle should request "images
27   of Rimini's relevant files on certain identified servers."  *Compare* PF 97-98 with Opp'n at 25.

[10] Cases and guidance from the 1960s thus provide no insight regarding disposition orders, which
28   did not exist at that time.  *Cf.* Opp'n at 25 (citing *Ted Arnold Ltd. v. Silvercraft Co.*, 259 F. Supp. 733 (S.D.N.Y. 1966) and Register's Rep. on the Gen. Revs. of the U.S. Copyr. L. (1961)).

1   Oracle's Motion, Rimini has caused and is causing Oracle irreparable harm because its competing

2   offering is built on unlawful behavior, including unauthorized downloading.  PF 85-87, 89.

3        Rimini's proffered responses to these facts are inadequate.[11]  Rimini's proffered

4   evidentiary objections were waived at trial, and its observations that Oracle cites to its own

5   witnesses for support do not rise to the level of objections.  *See, e.g.,* Opp'n at 39 (responding to

6   PF 87); *id.* at 40 (responding to PF 89).  These facts are sufficient grounds to establish irreparable

7   harm in support of Oracle's proposed CDAFA, NCCL, and UCL Order.

8        Rimini further argues that, as to unauthorized downloading, its voluntary cessation

9   arguments should carry the day.  Rimini's spoliation and false statements through the course of

10  litigation attempted to disguise the scope of its unauthorized downloading.  *See* Dkt. 466 (granting

11  sanctions against Rimini for deleting copies of Oracle's of copyrighted works); PF 92-93; Mot. at

12  21-22.  Given Rimini's conduct, Oracle should not be forced, again, to investigate outages, block

13  IP addresses, send cease-and-desist letters, and file yet more lawsuits should Rimini's unlawful

14  downloading continue or recur.  *See Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 973 (N.D. Cal.

15  2015) (granting an injunction in light of similar facts); PF 75-76 (undisputed); PF 77-82.

16       Finally, Oracle properly seeks an injunction under the NCCL.  Nev. Rev. Stat. § 205.513(2)

17  does not limit the class of litigants who may seek an injunction.[12]  Oracle is entitled to an

18  injunction under the UCL in light of Rimini's violation of the CDAFA.  *See* Mot. at 25.

19       **E.    Oracle Is Entitled To Judgment On Its UCL Claim.**

20       Oracle is entitled to judgment on its UCL claim under the "unlawful" prong of the UCL.

21  Mot. at 25.  While Rimini is correct that the Court initially requested that Oracle file its request for

22  judgment as a separate document, the Court later advised Oracle that no such separate filing was

23  required.  Eder Declaration, Ex. A.

24  **III.   CONCLUSION**

25       Oracle respectfully requests that its Proposed Order be entered in its entirety.

26  ─────────────────────
    [11] Rimini also ignores these proposed facts in declaring that Oracle did not show irreparable harm
27  under the CDAFA and NCCL.  *Cf.* Opp'n at 28-29 (addressing no proposed facts).

    [12] While Nev. Rev. Stat. § 205.513(1) discusses the roles of the state attorney general and district
28  attorneys, Nev. Rev. Stat. § 205.513(2) has no reference to such officials, and instead states
    expressly that issuance of a civil injunction does not prevent later criminal prosecution.

1

2     DATED:  November 9, 2015          Morgan, Lewis & Bockius LLP

3

4                                      By:_____/s/ Thomas S. Hixson_____
                                             Thomas S. Hixson
5                                            Attorneys for Plaintiffs
                                             Oracle USA, Inc.,
6                                            Oracle America, Inc. and
                                             Oracle International Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on the 9th day of November, 2015, I electronically transmitted the

3 foregoing REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION AGAINST

4 DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN, FOR DISPOSITION OF

5 INFRINGING COPIES, AND FOR JUDGMENT ON ORACLE'S UNFAIR COMPETITION

6 CLAIM to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of

7 Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic

8 Filing.

9 DATED:  November 9, 2015         Morgan, Lewis & Bockius LLP

10

11                         By:_____/s/ Thomas S. Hixson_____

12                             Thomas S. Hixson
                            Attorneys for Plaintiffs
                            Oracle USA, Inc.,

13                             Oracle America, Inc. and
                            Oracle International Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28