BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs*
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-PAL <br><br> **ORACLE'S MOTION FOR PREJUDGMENT INTEREST; NOTICE OF AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |

1

## <u>TABLE OF CONTENTS</u>

2

3     NOTICE OF MOTION AND MOTION ........................................................................ 1

INTRODUCTION ...................................................................................................... 1

4

STATEMENT OF FACTS .......................................................................................... 2

5     ARGUMENT ............................................................................................................... 4

6      I.    THE COURT SHOULD AWARD PREJUDGMENT INTEREST ON
          ORACLE'S COPYRIGHT CLAIM IN THE AMOUNT OF $37.06 MILLION .............. 4

7         A.   Pre-Judgment Interest Should Be Awarded on Oracle's Copyright Claim
              from October 29, 2006. ..................................................................................... 5

8

9         B.   The Court Should Award Federal Prejudgment Interest at the Prime Rate of
              8.25%.   7

10     II.   ORACLE IS ENTITLED TO PREJUDGMENT INTEREST ON THE
          DAMAGES FROM RIMINI'S VIOLATIONS OF COMPUTER STATUTES .............. 12

11         A.   California Law Establishes a 7% Interest Rate. ............................................. 12

12         B.   Nevada Law Establishes a 5.25% Interest Rate. ........................................... 14

CONCLUSION ......................................................................................................... 16

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Baker v. Garden Grove Med. Invs., Ltd.*,
306 Fed. App'x 393 (9th Cir.2009)...................................................................... 12

*Blankenship v. Liberty Life Assurance Co. of Boston*,
486 F.3d 620 (9th Cir. 2007)............................................................................... 8

*Ellis v. Alessi Tr. Corp.*,
2015 WL 3938436 (D. Nev. June 26, 2015) ....................................................... 1

*Evanston Ins. Co. v. OEA, Inc.*,
566 F.3d 915 (9th Cir. 2009)............................................................................... 12

*Ferrellgas, Inc. v. Am. Premier Underwriters, Inc.*,
79 F. Supp. 2d 1160 (C.D. Cal. 1999) ................................................................ 13

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
886 F.2d 1545 (9th Cir. 1989)..................................................................... 5, 6, 7, 9

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
2008 WL 928535 (N.D. Cal. Apr. 4, 2008) ........................................................ 10

*Gaylord v. United States*,
777 F.3d 1363 (Fed. Cir. 2015)............................................................................ 5

General Motors Corp. v. Devex Corp.,
461 U.S. 648 (1984) .............................................................................................. 6

*Gorenstein Enters. v. Quality Care-USA, Inc.*,
874 F.2d 431 (7th Cir. 1989)......................................................................... 7, 10

*Highlands Ins. Co. v. Continental Cas. Co.*,
64 F.3d 514 (9th Cir. 1995).................................................................................. 13

*Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*,
62 Fed. Appx. 322 (Fed. Cir. 2003) .................................................................... 11

*Hopi Tribe v. Navajo Tribe*,
46 F.3d 908 (9th Cir. 1995)................................................................................... 1

*IMX, Inc. v. LendingTree, LLC*,
469 F. Supp. 2d 203 (D. Del 2007) ..................................................................... 10

In the Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,
831 F. Supp 1354 (N.D. Ill. 1993) ...................................................................... 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*James v. Group Life and Health Benefits Plan*,
   2014 WL 4684885 (D. Or. Sept. 19, 2014) ................................................................... 9

*Junker v. HDC Corp.*,
   2008 WL 3385819 (N.D. Cal. July 28, 2008) ............................................................... 8

*Kleier Advertising, Inc. v. Premier Pontiac, Inc.*,
   921 F.2d 1036 (10th Cir. 1990) ..................................................................................... 6

*Leff v. Gunter*,
   33 Cal. 508 (1983) ............................................................................................... 12, 13

*Levy-Zentner Co. v. S. Pac. Trans. Co.*,
   74 Cal. App. 3d 762 (1st Dist. 1977) .................................................................... 12, 13

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ....................................................................................... 12

*Matter of Oil Spill by Amoco Cadiz*,
   954 F.2d 1279 (7th Cir. 1992) ................................................................................. 9, 10

*Michaelson v. Hamada*,
   29 Cal. App. 4th 1566 (2d Dist. 1994) ....................................................................... 14

*Mutuelles Unies v. Kroll & Linstrom*,
   957 F.2d 707 (9th Cir. 1992) ....................................................................................... 12

*Nelson v. EG&G Energy Measurements Group, Inc.*,
   37 F.3d 1384 (9th Cir. 1992) ......................................................................................... 7

*Open Text S.A. v. Box, Inc.*,
   2015 WL 4940798 (N.D. Cal. Aug. 19, 2015) ......................................................... 9, 10

*Oracle America, Inc. v. Google Inc.*,
   847 F. Supp. 2d 1178 (N.D. Cal. 2012) ........................................................................ 5

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ....................................................................................... 5

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
   575 F.2d 1152 (6th Cir. 1978) ....................................................................................... 6

*Pet Food Express Ltd. v. Royal Canin USA, Inc.*,
   2011 WL 6140886 (N.D. Cal. Dec. 8, 2011) .............................................................. 12

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) .................................................................................... 5, 7

*Price v. Stevedoring Servs. of America, Inc.*,
   697 F.3d 820 (9th Cir. 2012) ................................................................................ 7, 8, 9

1

*Quinton Instruments Co. v. Impra, Inc.*,
   71 F.3d 1573 (Fed. Cir. 1995) ................................................................. 10
2

3
*Server Tech., Inc. v. American Power Conversion Corp.*,
   2015 WL 1505654 (D. Nev. Mar. 31, 2015) ........................................... 8, 9
4

5
*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*,
   2014 WL 6883056 (D. Nev. Dec. 5, 2014) ................................................ 12
6

*Sobel v. Hertz Corp.*,
   291 F.R.D. 525 (D. Nev. 2013) ................................................................. 15
7

8
*Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*,
   862 F.2d 1564 (Fed. Cir. 1988) ................................................................... 8
9

10
*Telasia, Inc. v. EZ Supply, Inc.*,
   2015 WL 2095874 (D. Nev. May 5, 2015) ............................................... 15
11

*TMTV, Corp. v. Mass Prods.*,
   645 F.3d 464 (1st Cir. 2011) .................................................................. 6, 8
12

13
*Torres v. Goodyear Tire & Rubber Co.*,
   317 P.3d 828 (Nev. 2014) .................................................................. 14, 15
14

15
*Tracey v. Am. Family Mut. Ins. Co.*,
   2010 WL 5477751 (D. Nev. Dec. 30, 2010) ............................................. 15
16

*TVT Records v. Island Def Jam Music Group*,
   279 F. Supp. 2d 366 (S.D.N.Y. 2003) ......................................................... 5
17

18
*U.S. Fid. & Guar. Co. v. Lee Invs. LLC*,
   641 F.3d 1126 (9th Cir. 2011) ................................................................... 12
19

20
*U.S. v. Pend Oreille County Public Utility Dist. No. 1*,
   135 F.3d 602 (9th Cir. 1998) ............................................................... 8, 10
21

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.2d 1540 (Fed. Cir. 1991) ................................................................... 8
22

*United States v. Gordon*,
   393 F.3d 1044 (9th Cir. 2004) ..................................................................... 7
23

24
*W. Virginia v. United States*,
   479 U.S. 305 (1987) ..................................................................................... 1
25

26

27

28

1

## STATUTES

California Civil Code
    Section 3287.................................................................................................. 12
    Section 3287(a)............................................................................................. 12
    Section 502...................................................................................................... 2

Nevada Revised Statutes
    Section 17.130............................................................................................... 15
    Section 17.130(2).......................................................................................... 15
    Section 205.4765............................................................................................ 2
    Section 205.511(1)(a)..................................................................................... 2

United States Code
    Title 28, Section 1961 .......................................................................... 7, 8, 9, 10
    Title 28, Section 1961(a).................................................................................. 7

## OTHER AUTHORITIES

California Constitution
    Article XV, Section 1 .................................................................................... 14

Comm'r of Fin. Institutions, Prime Interest Rate,
    *available at* http://www.fid.state.nv.us/prime/primeinterestrate.pdf. ...................... 15

Federal Reserve Release H.15,week ending Dec. 30, 2005 (released January 3, 2006),
    *available at* http://www.federalreserve.gov/releases/h15/20060103 ......................... 7

Post Judgment Interest Rate, U.S. Admin. Ofc. Courts,
    *available at* http://www.uscourts.gov/services-forms/fees/post-judgement-interest-rate. ......... 7

## RULES

Federal Rules of Evidence
    Rule 201 ......................................................................................................... 9

1

## NOTICE OF MOTION AND MOTION

2  Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

3  ("Oracle") will and hereby do move for an award of prejudgment interest.  This motion is based

4  on this Notice of Motion and Motion, the Memorandum of Points and Authorities incorporated

5  herein, documents incorporated by reference, the entire record in this action, matters appropriate

6  for judicial notice, and any evidence or argument presented on reply or at the hearing.

7

## INTRODUCTION

8  "[P]rejudgment interest is a well-established remedy in this circuit."  *Hopi Tribe v.*

9  *Navajo Tribe*, 46 F.3d 908, 922 (9th Cir. 1995).  "[M]oney has a time value, and prejudgment

10  interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss

11  suffered" in the past.  *Id.* (citation and quotation marks omitted); *Ellis v. Alessi Tr. Corp.*, 2015

12  WL 3938436, at *2 (D. Nev. June 26, 2015) (Hicks, J.); *see also W. Virginia v. United States*,

13  479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of

14  money due as damages from the time the claim accrues until judgment is entered, thereby

15  achieving full compensation for the injury those damages are intended to redress.").

16  On Oracle's copyright claim, the jury awarded damages based on a hypothetical license

17  measure, which required the jury to estimate what Rimini and Oracle would have negotiated to

18  compensate Oracle for Rimini's infringement.  The jury decided the correct amount was $35.6

19  million.  The hypothetical negotiation occurred when infringement began, which was

20  indisputably by October 29, 2006, but Rimini did not pay Oracle in October 2006.  Instead,

21  Rimini enjoyed the benefits of infringement while Oracle received nothing—effectively making

22  Oracle an involuntary creditor of Rimini for nearly a decade.  To compensate Oracle for this

23  delay in payment, the presumptive federal prejudgment interest calculation uses 5.07%, (the one-

24  year Treasury rate for the week ending October 27, 2006), compounded yearly until judgment is

25  entered, totaling $19,959,532 in prejudgment interest.

26  The Court, however, has broad discretion to use an alternative calculation that better

27  reflects the economic realities of this case, and it should.  No rational creditor would have lent

28  Rimini—then an infant start-up—substantial funds at the nearly "risk free" Treasury rate.  A

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1   more appropriate—but still conservative—measure would be 8.25%, the prime rate as of the

2   week ending October 27, 2006, resulting in $37,060,964 million in prejudgment interest.

3        Adding prejudgment interest on Oracle's state-law claims—a matter of simple calculation

4   based on statutorily-mandated rates—the total prejudgment interest is as follows:

| *Prejudgment Interest* | *Oracle International* | *Oracle America* |
|---|---|---|
| Federal Copyright[1] | $37,060,964 | --- |
| California CDAFA[2] | $ 1,568,000 | $2,471,560 |
| Nevada CCL[3] | $ 1,764,000 | $2,780,505 |
| **Total requested (Copyright + CDAFA)[4]** | $38,628,964 | $2,471,560 |

11                      **STATEMENT OF FACTS**

12        Seth Ravin founded Rimini Street in 2005.  Tr. at 240:13-17 (Ravin).  Rimini's business

13   model—from the time of its very first customers in 2006—was to offer customers support for

14   Oracle products for 50% off Oracle's prices.  Tr. at 240:18-20; 276:24-277:4, 708:10-13 (Ravin).

15   Rimini's business plan was to separate "Oracle from its acquired licensees—denying Oracle

16   recurring revenue . . . ."  PTX 3; tr. 546:8-13 (Ravin).

17        At trial, the jury awarded Oracle two different types of damages.  The first was for

18   copyright infringement.  Oracle sued for infringement of four product lines:  PeopleSoft,

19   J.D. Edwards, Siebel, and Oracle Database.  Rimini, by its own admissions, was infringing all

20   four product lines by October 29, 2006.  *E.g.*, PTX5 (June 2006 downloading for PeopleSoft);

21   PTX 7 (June 2006 downloading for Siebel); PTX 223 (October 5, 2006 downloading of

---

[1] Against Rimini Street, Inc. only.  Verdict (Dkt. No. 896), Questions 6c, 7-8 & 21-22.

[2] California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, against both Rimini Street, Inc. and Seth Ravin.  Verdict (Dkt. No. 896), Questions 17 & 18, 21-22.

[3] Nevada Computer Crime Law ("NCCL"), Nev. Rev. Stat. § 205.4765 & 205.511(1)(a), against both Rimini Street, Inc. and Seth Ravin.  Verdict (Dkt. No. 896), Questions 17 & 18, 21-22.

[4] Oracle pled and continues to pursue the NCCL claim in the alternative to its CDAFA claim, which addresses the same conduct and has the same damages.  Accordingly, the "total requested" includes the federal copyright claim plus the CDAFA damages.

1   J.D. Edwards, Siebel, and PeopleSoft); Tr. 1756:1-1757:8 (Whittenbarger) (same plus Database);

2   PTX 3503 at 9 (admitting Database copies created on October 29, 2006); *see also* Verdict (Dkt.

3   No. 896), Questions 1-3.

4         The jury was instructed that a fair market value damages measure for copyright

5   infringement should be based on hypothetical negotiations on the dates on which "infringement

6   began." Final Jury Instruction No. 33 (Dkt. No. 880 at 41). Oracle's expert, Elizabeth Dean,

7   used October 29, 2006 as the hypothetical negotiation date for Oracle Database—and Rimini

8   Street never disputed it. Expert Report of Elizabeth Dean (Dkt. No. 661, Ex. 8) ("Dean Report"),

9   at ¶ 352. Rimini's damages expert, Scott Hampton, did not identify a particular date for the

10  negotiations on the other product lines. Instead, his opinion relied on a damages period starting

11  at the beginning of 2006 and used accounting records from 2006 with the jury. Tr. 2758:6-10

12  (Hampton) (discussing DTX 3019); Expert Report of Scott Hampton (Dkt. No. 664, Ex. 12)

13  ("Hampton Report"), at ¶¶ 10, 68. On the copyright claim, the jury determined that Rimini

14  should have purchased a license from Oracle for $35,600,000.00 as a result of that hypothetical

15  negotiation. Verdict (Dkt. No. 896), Question 6.

16        During and long after the October 2006 date of the hypothetical negotiations for

17  copyright infringement, Rimini was a risky, money-losing company. Tr. 2655:24-2656:7 (Zorn).

18  As such, its creditors demanded high rates of interest. For example, in 2007, after Rimini had

19  grown considerably, Rimini paid a very high rate—prime *plus 16.25%*—for a $500,000 bank

20  credit line that was secured by all the company's assets and guaranteed by two shareholders.

21  Ringgenberg Decl., Ex. 1 (ASP000732 at 740). And in 2013, Rimini made a software purchase,

22  which Rimini financed with a loan for $1.2 million "at a rate of approximately 9% per annum."

23  Ringgenberg Decl., Ex. 2 (Rimini Street, Inc., Form S-1, Amend. No. 2, at F-19 (filed May 13,

24  2014)); *see also id.* at p.63.

25        The second type of damages was for unauthorized access to Oracle's websites. In the

26  November 2008 to January 2009 period, a particularly pernicious episode of such conduct

27  harmed Oracle's servers by causing slowdowns, errors, and deadlocks, and eventually crashing

28  Oracle's server. Tr. 1172:9-15, 1174:5-1175:1, 1179:9-23 (Hicks); 1210:22-1211:10 (Renshaw).

1   Oracle's expert Christian Hicks identified the customers whose login credentials Rimini used

2   during this episode.  Tr. 1180:5-1181:4 (Hicks).  The materials obtained with these logins were

3   used as part of the offering to convince specific customers to leave Oracle support for Rimini.

4   PTX 482; Tr. 1139:7-1140:2 (Chiu).

5           On the computer access claim, Oracle's damages expert Elizabeth Dean identified the

6   profit Oracle would have made from those specific customers had they stayed with Oracle,

7   totaling at least $14.4 million.  Tr. 1833:1-19 (Dean).  To this she added the $27,000 in labor

8   costs Oracle incurred investigating the impact of Rimini's conduct on Oracle's computer

9   systems.  Tr. 1831:3-19 (Dean).  The jury agreed with Ms. Dean's calculations and awarded

10  Oracle that precise amount on the downloading claims:  $14,427,000.00.  Verdict (Dkt. No. 896),

11  Questions 18-19; *see also* Question 22.

12          Neither side's expert opinions in this matter account for the time value of money.

13  Ms. Dean's report expressly reserved the issue of prejudgment interest.  *E.g.*, Dean Report, at

14  ¶¶ 40, 399.  Defendants' expert, Mr. Hampton, offered a damages opinion based on point-in-time

15  accounting records to establish Rimini's avoided costs for each year.  Hampton Report, at

16  ¶¶ 163-179.  Nothing in Mr. Hampton's reports indicate that he ever applied any interest rate,

17  inflation adjustment, or otherwise considered the issue.  Never in his deposition or at trial did

18  Rimini or Mr. Hampton suggest otherwise.

19                                           **ARGUMENT**

20          The federal Copyright Act and the state computer abuse statutes on which the jury

21  awarded damages take different approaches to prejudgment interest.  Each is addressed in turn.

22  **I.      THE COURT SHOULD AWARD PREJUDGMENT INTEREST ON ORACLE'S**
          **COPYRIGHT CLAIM IN THE AMOUNT OF $37.06 MILLION.**
23

24          As explained below, an award of prejudgment interest would fairly compensate Oracle

25  for the time value of the $35.6 million in license fees the jury determined Oracle was owed in

26  October 2006.

27

28

1

2
    **A.**    **Pre-Judgment Interest Should Be Awarded on Oracle's Copyright Claim from October 29, 2006.**

3        An award of prejudgment interest "is available under the Copyright Act of 1976." *Polar*

4 *Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004). "[I]ts application in a

5 particular case hinges on whether such an award would further the statute's purpose." *Id.* at 718.

6 "[T]he purpose of [17 U.S.C.] § 504(b) is to compensate fully a copyright owner for the

7 misappropriated value of its property and 'to avoid unjust enrichment by defendants, who would

8 otherwise benefit from this component of profit through their unlawful use of another's work.'"

9 *Id.* at 718 (quoting *TVT Records v. Island Def Jam Music Group*, 279 F. Supp. 2d 366, 410

10 (S.D.N.Y. 2003)).  Prejudgment interest also deters infringers and discourages "needless delay."

11 *Polar Bear*, 384 F.3d at 718; *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886

12 F.2d 1545, 1551 (9th Cir. 1989) (denying "prejudgment interest systematically

13 undercompensates victims and underdeters putative offenders").  As shown below, prejudgment

14 interest on Oracle's copyright infringement award case plainly serves all these purposes:  Rimini

15 denied Oracle compensation by avoiding payment for nearly a decade, Rimini was enriched by

16 taking a long-term multimillion dollar interest-free loan from its competitor, and other would-be

17 infringers would be underdeterred if Rimini benefits from this litigation's length.

18        The damages measure applied by jury in this case, hypothetical license damages, is

19 established "at the time of infringement."  *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th

20 Cir. 2014).  The Court instructed the jury to calculate hypothetical license damages based on

21 hypothetical negotiations on "the dates on which infringement began."  Final Jury Instruction

22 No. 33 (Dkt. No. 880 at 41); *see also Gaylord v. United States,* 777 F.3d 1363, 1367 (Fed. Cir.

23 2015) ("To calculate the fair market value, a court deciding a copyright case [ . . . ] may

24 hypothesize a negotiation between the parties before the infringement occurred"); *Oracle*

25 *America, Inc. v. Google Inc.,* 847 F. Supp. 2d 1178, 1182 (N.D. Cal. 2012) ("In the context of

26 copyright infringement, the hypothetical lost license fee" is "similar" to patent law and considers

27 a "hypothetical negotiation" at "the time infringement began").

28

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1    Infringement began on or before October 29, 2006.  Oracle's expert, Ms. Dean, used that

2    date as the hypothetical negotiation date for Oracle Database.  Dean Report at ¶ 352.  Rimini and

3    its expert, Mr. Hampton, never disputed that date.  As for PeopleSoft, J.D. Edwards, and Siebel,

4    Mr. Hampton did not identify a particular date for the negotiations, but his opinion relied on a

5    damages period starting at the beginning of 2006 and used accounting records from 2006 with

6    the jury.  Tr. 2758:6-10 (Hampton) (discussing DTX 3019); Hampton Report, at ¶¶ 10, 68.  The

7    evidence at trial confirmed infringement of all relevant products by October 29, 2006.  *E.g.*,

8    PTX 5 (June 2006 downloading for PeopleSoft); PTX 7 (June 2006 downloading for Siebel);

9    PTX 223 (October 5, 2006 downloading of J.D. Edwards, Siebel, and PeopleSoft); Tr. 1756:1-

10   1757:8 (Whittenbarger) (same plus Database); PTX 3503 at 9 (admitting Database copies created

11   on October 29, 2006).

12       Thus, the hypothetical license negotiations would have occurred on or before October 29,

13   2006, and Rimini would have owed Oracle $35.6 million by that date.  As Oracle did not (and

14   has not) received payment for nearly a decade, prejudgment interest is appropriate to compensate

15   Oracle for the lost time value of money, to prevent unjust enrichment to Rimini, and to deter

16   infringers who, absent prejudgment interest, would be better off refusing to pay license fees until

17   forced by entry of judgment.  *TMTV, Corp. v. Mass Prods.*, 645 F.3d 464, 474 (1st Cir. 2011)

18   ("Prejudgment interest dating from the infringements compensated the plaintiff for the time

19   value of monies it should have had—just as if a contract debt had not been paid on time"

20   (copyright case)); *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1041-42

21   (10th Cir. 1990) (citing Ninth Circuit law and finding an abuse of discretion where district court

22   denied prejudgment interest on copyright lump-sum hypothetical license damages); *see also*

23   *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1984) (explaining that

24   prejudgment interest on patent damages is paid for "use of the money between the time of

25   infringement and the date of the judgment"); *Frank Music*, 886 F.2d at 1550 & n.5 (explaining

26   that patent and copyright prejudgment interest use the same principles; citing *General Motors*);

27   *cf. Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978) ("the

28   infringer would have nothing to lose, and everything to gain if he could count on paying only the

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1   normal, routine royalty non-infringers might have paid . . . [and] would be in a 'heads-I-win,

2   tails-you-lose' position").

3        **B.**     **The Court Should Award Federal Prejudgment Interest at the Prime Rate of 8.25%.**

4

5        In the Ninth Circuit, the starting point for federal prejudgment interest is the post-

6   judgment rate established by 28 U.S.C. § 1961, which is the one-year constant maturity Treasury

7   yield. *See Price v. Stevedoring Servs. of America, Inc.*, 697 F.3d 820, 836-37 (9th Cir. 2012) (*en*

8   *banc*) (collecting cases defaulting to § 1961 rate for prejudgment interest); *see also Frank Music*,

9   886 F.2d at 1553. The weekly average 1-year constant maturity Treasury yield for the week

10   ending just prior to infringement (the week ending October 27, 2006)[5] was 5.07%.[6] Applying

11   that rate, compounded annually[7] from October 29, 2006 to entry of judgment at a point after

12   ──────────────────

13   [5] Section 1961 is designed for calculating post-judgment interest, so it uses "the weekly average

14   1-year constant maturity Treasury yield [ . . . ] for the calendar week preceding judgment." 28
U.S.C. § 1961(a). But the "Treasury bill rate at the time of judgment has no bearing on what

15   could have been earned prior to judgment." *Nelson v. EG&G Energy Measurements Group, Inc.*,
37 F.3d 1384, 1392 (9th Cir. 1992). Instead, the correct rate under § 1961 when used for

16   prejudgment interest is the "rate operative immediately prior to the date" of the conduct that
caused Oracle to become Rimini's creditor. *Id.* at 1391; *United States v. Gordon,* 393 F.3d 1044,

17   1058 n.12 (9th Cir. 2004) ("the applicable prejudgment interest rate is the one in effect

18   immediately *prior* to the date of the wrongful conduct which caused a plaintiff's loss").

19   [6] Federal Reserve Release H.15, Treasury constant maturities—1 year (nominal), week ending
Dec. 30, 2005 (released January 3, 2006), *available at* http://www.federalreserve.gov/

20   releases/h15/20060103/; *see also* Post Judgment Interest Rate, U.S. Admin. Ofc. Courts,
*available at* http://www.uscourts.gov/services-forms/fees/post-judgement-interest-rate.

21   [7] Whatever rate is used, the recent *en banc* decision in *Price* established that compound interest

22   should be the norm, explaining that "courts have increasingly recognized that compound interest
generally more fully compensates a plaintiff." 697 F.3d at 834 (internal quotations, citation, and

23   modifications omitted); *see also Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431,
437 (7th Cir. 1989) (Posner, J.) ("We also reject the Gorensteins' argument that the judge should

24   not have awarded *compound* prejudgment interest [because they] denied Quality Care the use of
its money, including the opportunity to obtain interest on interest." (trademark case; emphasis in

25   original)). Prejudgment interest is an element of the plaintiff's compensation—and an infringer,
like any "ordinary thief," is in no "position to haggle" about the plaintiff's compensation. *Polar*

26   *Bear*, 384 F.3d at 709. While Oracle conservatively seeks compounding on only an annual basis,
more frequent compounding, such as on a monthly or quarterly basis, would also be appropriate.

27   *Blankenship*, 486 F.3d at 628 (10.1% interest compounded monthly appropriate);

28   (footnote continues on next page)

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1   October 28, 2015, to the jury's verdict of $35.6 million results in $19,959,532 in prejudgment

2   interest.  Declaration of Elizabeth Dean in Support of Motion for Prejudgment Interest ("Dean

3   Decl.") ¶ 6 & Ex. A.

4        However, the Ninth Circuit affords wide discretion in choosing a rate different from the

5   § 1961 rate when "the trial judge finds, on substantial evidence, that the equities of that particular

6   case require a different rate."  *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d

7   620, 628 (9th Cir. 2007) (upholding a 10.1% prejudgment interest rate); *see also U.S. v. Pend*

8   *Oreille County Public Utility Dist. No. 1*, 135 F.3d 602, 613 (9th  Cir. 1998) (upholding pre-

9   judgment compound interest award at 90% of the prime rate); *Uniroyal, Inc. v. Rudkin-Wiley*

10  *Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) ("A trial court is afforded wide latitude in the

11  selection of interest rates, and may award interest at or above the prime rate.") (internal citations

12  omitted); *Junker v. HDC Corp.*, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008) (Spero, M.J.)

13  ("the court may use the prime rate, the prime rate plus a percentage, the U.S. Treasury rate, state

14  statutory rate, corporate bond rate, or whatever rate the court deems appropriate under the

15  circumstances").

16       Recently, the Ninth Circuit, sitting *en banc*, explained that the § 1961-based approach to

17  prejudgment interest has utility only so far as it captures "market rates."  *Price*, 697 F.3d at 836.

18  The Circuit elaborated that it had merely "acquiesced" in using § 1961-based approaches to

19  "approximate" the correct rate in various contexts.  *Id.* at 835, 837-38.  Throughout the opinion,

20  the Circuit emphasized that prejudgment interest's primary goal is compensation.  *Id.* at 835-38.

21  Neither that goal nor prejudgment interest's inherent equitable nature is served by rigidly

22  adhering to a statutory formula created for a different purpose.[8]

23  *Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988)

24  (quarterly compounding appropriate)).

[8] This Court has recognized that § 1961's reliance on government borrowing rates may not

25  reflect the parties' economic reality.  For example, the current Treasury Bill rate is unusually low

26  due to market events arising after 2006.  Using it would result in "a windfall profit for the

    infringer."  *Server Tech., Inc. v. American Power Conversion Corp.*, 2015 WL 1505654, at *6

27  (D. Nev. Mar. 31, 2015) (Hicks, J.); see also *TMTV*, 645 F.3d at 475 ("the present federal rate is

    depressed by current monetary policy designed to combat recession"; rejecting T-bill-based

28  (footnote continues on next page)

1    Here, the hypothetical license measure of damages and the equities considered in a

2    copyright case—compensation to the plaintiff, deterring infringers, and preventing unjust

3    enrichment of the defendant—weigh strongly in favor of a market-based rate higher than the

4    § 1961 rate.  In particular, the appropriate analytical approach is to estimate the "interest rate that

5    [the plaintiff] would have demanded had it charged defendants for a loan at the time of the

6    alleged infringement, which captures the possibility that it would get stiffed by defendants."

7    *Open Text S.A. v. Box, Inc.*, 2015 WL 4940798, at *11 (N.D. Cal. Aug. 19, 2015) (collecting

8    patent cases from district courts in the Ninth Circuit); *see also Frank Music*, 886 F.2d at 1550 &

9    n.5 (drawing parallel between patent and copyright prejudgment interest).

10    The rationale for this approach was reaffirmed by the Ninth Circuit's *en banc* decision in

11    *Price,* 697 F.3d at 843, when it quoted and expressly approved of the Seventh Circuit's decision

12    in *Matter of Oil Spill by Amoco Cadiz*, 954 F.2d 1279 (7th Cir. 1992) on exactly this point, and

13    noted that a defendant's delay in payment makes the plaintiff an "'involuntary creditor.'"  *Price*,

14    697 F.3d at 843 (quoting *Oil Spill*, 954 F.2d at 1331).  As *Oil Spill* explained:

15    [T]he wrongdoer creates an involuntary creditor.  It may take time for the victim
     to obtain an enforceable judgment, but once there is a judgment the obligation is
16    dated as of the time of the injury.  In voluntary credit transactions, the borrower
     must pay the market rate for money.  (The market rate is the minimum
17    appropriate rate for prejudgment interest, because the involuntary creditor might
     have charged more to make a loan.)  Prejudgment interest at the market rate puts
18    *both* parties in the position they would have occupied had compensation been paid
     promptly. . . . .
19

20    . . . .

21    The defendant may go out of business (or encounter less serious reverses), or hide
     assets, during the litigation.  Any market interest rate reflects three things: the
22    social return on investment (that is, the amount necessary to bid money away
     from other productive uses), the expected change in the value of money during the
23    term of the loan (i.e., anticipated inflation), and the risk of non-payment.  The best

24    _____

     prejudgment interest rate in a copyright case); *James v. Group Life and Health Benefits Plan*,
25    2014 WL 4684885, at *3-4 (D. Or. Sept. 19, 2014) ("Citing the historically and artificially low
     Treasury Bill rate, other courts have awarded higher interest rates for prejudgment interest";
26    collecting authority and concluding the prime rate at the time of the transactions was
     appropriate); F.R.E. 201.  The distortions become even greater in cases such as this, when there
27    is a "lengthy infringement and litigation period."  *Server Tech.*, 2015 WL 1505654, at *6.

28

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1    estimate of these three variables is the amount *the defendant* must pay for money,
2    which reflects variables specific to that entity."

3    954 F.2d at 1331-32; *see also Gorenstein*, 874 F.2d 437 ("a more precise estimate would be the

4    interest rate paid by the defendant for unsecured loans.  We do not want to straitjacket the district

5    judges but we do want to caution them against the danger of setting prejudgment interest rates

6    too low by neglecting the risk, often non-trivial, of default").

7    By contrast, the § 1961 rate presumes a nearly risk-free debt owed by the United States

8    Treasury.  That is an inappropriate rate when the forced loan was extended to a risky

9    counterparty.  As Judge Easterbrook has explained:

10   Winners in litigation are not called "judgment creditors" for nothing.  They have made a
     large, involuntary, unsecured loan to a debtor of uncertain credit-worthiness that is doing
11   its utmost to avoid paying.  In the market the rate of interest on such loans greatly
     exceeds the rate the United States Government has to pay—a rate that economists usually
12   call the "risk-free rate."  Plaintiffs did not make a risk-free loan.

13   *In the Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 831 F. Supp

14   1354, 1394-95 (N.D. Ill. 1993) (Easterbrook, J.), *aff'd sub nom. Quinton Instruments Co. v.*

15   *Impra, Inc.*, 71 F.3d 1573 (Fed. Cir. 1995).

16   Accordingly, in the analogous patent infringement context, courts in the Ninth Circuit

17   and elsewhere routinely hold that the "the prime rate was the most accurate estimate of interest

18   the patentee would have charged the infringer for a loan."  *Fresenius Med. Care Holdings, Inc. v.*

19   *Baxter Int'l, Inc.*, 2008 WL 928535, at *3-4 (N.D. Cal. Apr. 4, 2008) (collecting cases); *see also*

20   *Open Text S.A.*, 2015 WL 4940798, at *11; *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203,

21   227-28 (D. Del 2007).  Like the Seventh Circuit authorities that *Price* endorsed, these courts

22   reason that the prime rate reflects what the businesses involved in litigation would have actually

23   paid for a loan from the time of infringement.  *Fresenius Med.*, 2008 WL 928535, at *4; *see also*

24   *Pend Oreille*, 135 F.3d at 613 (Ninth Circuit upholding pre-judgment compound interest award

25   of 90% the prime rate).

26   The prime rate just prior to infringement (the week ending October 27, 2006) was 8.25%.

27   Dean Decl. ¶ 7 & Ex. B.  Applying the prime rate compounded annually to the jury's verdict of

28

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1    $35.6 million from October 29, 2006 to entry of judgment on or after October 28, 2015 results in

2    $37,060,964 in prejudgment interest.  *Id.*

3          It bears emphasis that this prime rate is a strongly conservative estimate of what Rimini

4    would have had to pay Oracle in a market transaction.  At the time of the hypothetical

5    negotiation, Rimini was losing millions of dollars per year—a risky venture to which no one

6    would lend money at anywhere near prime.  DTX 399.  Rimini was then a risky new company

7    struggling with resource constraints and attempting to avoid the capital investment associated

8    with building software.  Tr. 443:4-445:6, 524:23-525:12, 526:16-527:3, 531:24-534:1 (Ravin).

9    In 2007, after Rimini had grown considerably, Rimini had to pay a much higher rate—prime *plus*

10   *16.25%*—for a $500,000 bank credit line that was secured by all the company's assets and

11   guaranteed by two shareholders.  Ringgenberg Decl. Ex. 1 (ASP000732 at 740).  In 2013 Rimini

12   made a software purchase, which Rimini financed with a loan for $1.2 million "at a rate of

13   approximately 9% per annum."  Ringgenberg Decl. Ex. 2 (Rimini Street, Inc., Form S-1, Amend.

14   No. 2, at F-19 (filed May 13, 2014)); *see also id.* at p.63.  And at the time of its last SEC filing,

15   in May 2014, Rimini was still paying more than the prime rate for a credit line (prime + 0.75 or

16   4%, whichever was higher) that was *secured* by putting a portion of Rimini's accounts receivable

17   in a "lockbox."  *Id.* at pp. 63 & F-18.  By that time, Rimini had been in business for more than 8

18   years and had a business backlog of more than $1 billion.  Tr. 445:7-19 (Ravin); *see also*

19   DTX 399.  These facts confirm that a rate of 8.25% for an unsecured software license loan of

20   $35.6 million is more than generous to Rimini.[9]

21

22   _____

23   [9] As with the § 1961 rate, a single rate from the time of the injury is appropriate.  *Hockerson-
     Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 334 (Fed. Cir. 2003) (error to use the

24   prime rate in effect on the date of the judgment; court could have selected other rates, including
     "the prime rate in effect on the date infringement began").  Here, it is appropriate to use the rate

25   on the date when Rimini forced Oracle to make it a multimillion dollar loan because Rimini
     forced Oracle to make it a long-term loan, and prime is already generous to Rimini in light of

26   what it would have paid at the time.  Moreover, the 8.25% rate's rough accuracy is confirmed

27   throughout the period by the software loan on which Rimini was still paying approximately 9%
     in 2013.

28

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

II.   **ORACLE IS ENTITLED TO PREJUDGMENT INTEREST ON THE DAMAGES FROM RIMINI'S VIOLATIONS OF COMPUTER STATUTES.**

Prejudgment interest on the pendent state claims is a substantive issue governed by state law. *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("The *Erie* principles apply equally in the context of pendent jurisdiction."). Here, both California and Nevada law provide Oracle with prejudgment interest for Rimini's violations of each state's computer statute.

A.   **California Law Establishes a 7% Interest Rate.**

Under California law, "a person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." Cal. Civ. Code § 3287(a). Section 3287(a) applies in all types of actions and is a matter of law. *Levy-Zentner Co. v. S. Pac. Trans. Co.*, 74 Cal. App. 3d 762, 794-798 (1st Dist. 1977); *see also Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) (applying California law).

A dispute about whether there is liability does not defeat the capable-of-certainty requirement. *Leff v. Gunter*, 33 Cal. 508, 519-20 (1983). Nor does a dispute about the amount of damages "where the amount of recovery closely approximate[s]" the plaintiff's claim. *Id.* Moreover, the "presence of a dispute between the parties as to the way in which to calculate damages does not bar recovery under California Civil Code § 3287." *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 2014 WL 6883056, at *5 (D. Nev. Dec. 5, 2014) (Hicks, J.) (quoting *Baker v. Garden Grove Med. Invs., Ltd.,* 306 Fed. App'x 393, 396 (9th Cir. 2009)); *see also Pet Food Express Ltd. v. Royal Canin USA, Inc.*, 2011 WL 6140886, at *4 (N.D. Cal. Dec. 8, 2011).

Similarly, the vesting requirement is satisfied as soon as the defendant was provided information from which it could have computed the amount. "California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined." *Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 921 (9th Cir. 2009). Thus, vesting

1  occurs as soon as the plaintiff provides the defendant information from which the defendant

2  could compute damages.  *Highlands Ins. Co. v. Continental Cas. Co.*, 64 F.3d 514, 521-22 (9th

3  Cir. 1995) (citing *Levy-Zenter*, 74 Cal. App. at 798); *Ferrellgas, Inc. v. Am. Premier*

4  *Underwriters, Inc.*, 79 F. Supp. 2d 1160, 1164 (C.D. Cal. 1999) ("prejudgment interest ordinarily

5  should be computed from the earliest date that the defendant knew, or from available information

6  reasonably could have computed, the amount owed on the plaintiff's claim").

7       Defendants never offered a competing damages figure on CDAFA but merely contested

8  liability and causation.  Specifically, Defendants contested neither the mathematical calculation

9  of the components of the CDAFA damages nor the factual amounts underlying those

10  components.  Again, those damages are composed of $27,000 in investigation and remediation

11  expenses and $14.4 lost profits from a specific set of downloading customers identified by

12  Oracle's expert Mr. Hicks.  *See* Tr. 1831:3-19 & 1833:1-19 (Dean); Verdict (Dkt. No. 896),

13  Questions 18-19; *see also* Question 22.  Rimini never contested the amount of the $27,000

14  investigation and remediation costs—only whether they had liability for it.  And Rimini never

15  contested the amount of the lost profits flowing from the lost customers on which the CDAFA

16  damages were awarded—again, they only disputed whether there was liability (either on factual

17  grounds of causation or legal grounds concerning the type of damages recoverable).  Oracle's

18  damages under the CDAFA were capable of calculation no later than January 17, 2012, the date

19  Oracle served Ms. Dean and Mr. Hicks's expert reports in this matter, which identified all of the

20  information necessary to calculate the lost profits that the jury awarded.  K. Ringgenberg

21  Decl. ¶¶ 5-6.  If there were any doubt, the fact that the jury awarded exactly what Oracle

22  requested removes it.  *Leff*, 33 Cal. at 520 (even disputes as to the amount of damages does not

23  defeat mandatory prejudgment interest "where the amount of recovery closely approximate[s]"

24  the plaintiff's claim"); Tr. 1832:23-1833:19 (Dean) & 3494:12-3495:1 (closing).   Therefore,

25  Oracle's prejudgment interest should begin to run no later than January 17, 2012.

26       Unlike the compound interest preferred under federal law, California law fixes a rate of

27  7% simple annual interest when, as here, the case does not involve a breach of fiduciary duty

28

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

1   between the parties.  *Michaelson v. Hamada*, 29 Cal. App. 4th 1566, 1585-86 (2d Dist. 1994);

2   Cal. Const. art. XV, § 1.

3       Finally, there can be no doubt what portion of the verdict is allocated to state claims.  The

4   jury's nonduplicative damages figures, combined with its total-damages-per-claim figures

5   demonstrate that the Defendants owe $14,427,000.00 on the state claim, as illustrated below:

| Damages | Oracle International | Oracle America | Sum |
|---|---|---|---|
| Copyright | $35,600,000.00[10] | --- | $35,600,000.00[11] |
| State computer statutes | $5,600,000.00[12] | $8,827,000.00[13] | $14,427,000.00 |
| Sum | $41,200,000.00[14] | $8,827,000.00[15] | $50,027,000.00 |

11       At 7% simple annual interest for four years from January 17, 2012 to an anticipated date

12   of entry of judgment on or after January 16, 2016, total prejudgment interest owed by the two

13   Defendants under the CDAFA is $2,471,560 to Oracle America and $1,568,000 to Oracle

14   International.  Dean Decl. ¶ 9 & Ex. C.

15       **B.**    **Nevada Law Establishes a 5.25% Interest Rate.**

16       As for damages under the NCCL, prejudgment interest is a matter of statutory right.

17   *Torres v. Goodyear Tire & Rubber Co.*, 317 P.3d 828, 830 (Nev. 2014) ("NRS 17.130 . . .

18   provides a statutory right for interest on judgments").  Nevada law establishes a prejudgment

19   interest rate of 2% plus "the prime rate at the largest bank in Nevada as ascertained by the

20   Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately

21   preceding the date of judgment."  Nev. Rev. Stat. § 17.130; *Telasia, Inc. v. EZ Supply, Inc.*, 2015

23   [10] Verdict (Dkt. No. 896), Question 6c.

24   [11] *Id.* Question 6c.

25   [12] *Id.* Question 18; *see also* Question 22.

26   [13] *Id.* Question 19.

27   [14] *Id.* Question 22.

    [15] *Id.* Question 21.

1   WL 2095874, at *2 (D. Nev. May 5, 2015).  On July 1, 2015, the prime rate as determined by the

2   Nevada Commissioner of Financial Institutions was 3.25% and has remained at that same rate.[16]

3   Accordingly, the prejudgment interest rate under Nevada law is 5.25%.

4          Nevada assesses simple interest on an annual basis.  *Torres v. Goodyear Tire & Rubber*

5   *Co.*, 317 P.3d 828, 830-31 (Nev. 2014); *Telasia, Inc. v. EZ Supply, Inc.*, 2015 WL 2095874, at

6   *2 (D. Nev. May 5, 2015) (Foley, M.J.); *Tracey v. Am. Family Mut. Ins. Co.*, 2010 WL 5477751,

7   at *11 (D. Nev. Dec. 30, 2010).

8          Nevada law differs from both California and federal law in that interest is drawn "from

9   the time of service of the summons."  *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 544 (D. Nev. 2013)

10  (Hicks, J.) (quoting Nev. Rev. Stat. § 17.130(2)).  The summons in this action was served on

11  January 27, 2010.  K. Ringgenberg Decl. Ex. 3 (1/27/2010 email confirming acceptance of

12  service via email).

13         At 5.25% simple annual interest from January 27, 2010 to an anticipated date of entry of

14  judgment on or after January 26, 2016, total prejudgment interest owed by the two Defendants

15  under the NCCL is $4,544,505, with $2,780,505 to Oracle America and $1,764,000 to Oracle

16  International.  Dean Decl. ¶ 11 & Ex. D.

17

18

19                                *                *                *

20

21

22

23

24

25

26   _____

27   [16] Comm'r of Fin. Institutions, Prime Interest Rate, *available at* http://www.fid.state.nv.us/
     prime/primeinterestrate.pdf.

28

ORACLE'S MOTION FOR PREJUDGMENT INTEREST

## **CONCLUSION**

For the foregoing reasons, Oracle respectfully requests an award of prejudgment interest on its claims, as follows:

| *Prejudgment Interest* | *Oracle International* | *Oracle America* |
|---|---|---|
| Federal Copyright | $37,060,964 | --- |
| California CDAFA | $ 1,568,000 | $2,471,560 |
| Nevada CCL | $ 1,764,000 | $2,780,505 |
| **Total requested (Copyright + CDAFA)** | $38,628,964 | $2,471,560 |

DATED:  November 13, 2015          Respectfully submitted

BOIES, SCHILLER & FLEXNER LLP

By:_____/s/ Kieran P. Ringgenberg_____
          Kieran P. Ringgenberg

*Attorneys for Plaintiffs* Oracle USA, Inc.,
Oracle America, Inc. and Oracle International
Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of November, 2015, I electronically transmitted the foregoing ORACLE'S MOTION FOR PREJUDGMENT INTEREST to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

DATED:  November 13, 2015

Respectfully submitted

BOIES, SCHILLER & FLEXNER LLP


By: _/s/ Kieran P. Ringgenberg_
    Kieran P. Ringgenberg

*Attorneys for Plaintiffs* Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation