# Exhibit 6

Minutes of the Nevada State Legislature
Assembly Committee on......JUDICIARY
Date:......April 22, 1983
Page:......One

MEMBERS PRESENT:    Chairman Jan Stewart
                    Vice-Chairman Shelley Berkley
                    Mr. Mike Malone
                    Mrs. Jane Ham
                    Mr. Byron Bilyeu
                    Mr. Gene Collins
                    Mr. Robert Fay
                    Mr. David Humke
                    Mr. Leonard Nevin
                    Mr. James Stone
                    Mrs. Courtenay Swain

MEMBERS ABSENT :    None

GUESTS PRESENT :    See guest list attached as EXHIBIT A.


Chairman Stewart called the meeting to order at 8:05 a.m. He announced to the Committee that he would take the bills in a different order than that listed on the agenda in order to accommodate Judge Agosti.

SB 211:   Reduces size of juries in criminal trials in justices' courts.  (BDR 14-877)

Judge Deborah Agosti, of Reno Justice Court, testified in favor of this bill, which she had originally requested. She noted she would address two sections of the bill during her testimony.

Regarding page 1, lines 7-10, she noted that her original request had been that the defendant demand a jury trial in writing not less than 15 days after the entry of his not guilty plea in Justice Court so that the time counts from the date of the entry of the not guilty plea. As originally written, however, the time counted backwards from the date set for trial and only gave the defendant 10 days to so request.

This section was changed in the first reprint of the bill, so that the time for requesting the jury trial was increased. It still counts back from the date set for trial, however.

Judge Agosti said that she apparently had not sufficiently stressed the need to change this when she testified before the Senate Committee. She therefore requested this Committee amend the bill to indicate that the defendant must demand the jury trial in writing within 20 days <u>of his entry of a not guilty plea</u>.

(Committee Minutes)

A Form 70

1538

8769

preempt 16 people who should be appearing in court for the benefit of one person, he feels those 16 people have been denied justice.

Mr. Lane said to date Justice Court trials have not been a problem. But none of this reaches the issue of whether or not an individual should be entitled to a jury trial in such cases as a matter of constitutional law. He noted that Justice Courts are creatures of statute. They are not of constitutional dimension. Their powers are governed by statute. There is case upon case in the State and U.S. Supreme Courts that constitutional jury trials for petty offenses are not mandated. The question is, what is a petty offense. He said he could see no reason for a Justice Court to have a jury trial as a matter of law. Whether or not the Legislature feels this ought to be is up to them.

Regarding fiscal impact, Mr. Lane pointed out that justice has never been equated with money. It cannot be totally ignored, however, and jury trials will have a fiscal impact.

Mr. Bilyeu agreed with Mr. Lane that the trial by jury in Justice Court is of statutory, not constitutional, dimension. However, he felt that if this issue were placed on a ballot, the people of Nevada would probably overwhelmingly vote to retain this right. He further stated that one cannot equate justice or citizens' rights with money.

Mr. Collins said that since there has been testimony to the effect that there is currently no problem with trials in Justice Court, other than the one mentioned by Judge Agosti involving the size of the juries, there is no reason to change the system. Should a problem arise in the future, then this situation can be re-addressed.

There followed a discussion concerning possible problems which could arise should the DUI bill pass.

When asked, Mr. Lane replied that he did feel a lot of attorneys used the threat of a jury trial to get the prosecutor to plea bargain.

AB 133: Makes illegal certain acts regarding computers.
        (BDR 16-596)

Mr. Stewart began the hearing on this bill by introducing Professor Mark Simkin, of the University of Nevada Reno, whom he had asked to testify. Mr. Stewart noted that Professor Simkin has written several papers on this topic.

Professor Simkin noted that he was in favor of this bill. He said that the average computer crime nets about $500,000 to the perpetrator. This is why he feels this to be a good bill.

Minutes of the Nevada State Legislature
Assembly Committee on ............JUDICIARY.............................................................................
Date:......April 22, 1983
Page:......Nine..............................

Professor Simkin noted that computer crimes are unique and because of this certain kinds of events which currently occur are not covered in the law. This fact, and the amount of money involved, make AB 133 a most necessary bill.

Professor Simkin cited the example of computer software, which is very valuable. Despite copyright laws, copying of some pieces of software in and of itself often does not constitute a crime.

He pointed out that Nevada will become one of approximately 15 states to pass such a law, should this pass, and thus the state would become one of the more progressive in this area.

Finally, he felt this to be a good law because it fits in with the state's attempts to diversify the economy. One of the most important and desirable industries which could be attracted to this state is the high tech industry. Computer protection is an obvious move in the right direction.

Professor Simkin said that in reading over the bill and presenting the bill to his colleagues--especially the Data Processing Management Association (DPMA), which met last night--he had several changes to recommend to the Committee. He then distributed copies of EXHIBIT C to the Committee Members. This document, attached to these minutes, outlines the changes he wished to see made in this bill, as well as the reasons for these changes.

In addition to those changes cited in Exhibit C, Professor Simkin also recommended that the words "modified" and "uses" be included in section 9.3 of the bill. Thus, this section would read: "Except as otherwise provided in subsection 4, a person who knowingly, willingly and without authorization:
(a) Modifies;
(b) Destroys;
(c) Uses;
(d) Damages... is guilty of a misdemeanor."
He explained that the reason for these changes is, again, to protect the computer against the possibility that, for example, someone alters the computational ability of the computer so that it, for example, adds rather than subtracts. Also, this would protect the computer against misuse as, for example, someone does not rightfully have authorization to the use of the computer but does so anyway.

The last point Professor Simkin wished to make concerned penalties. He noted that the penalties listed in the bill appear to be too lenient, especially since the average loss is around $500,000.

Mr. Malone agreed that the penalties listed were too lenient. He pointed out that a $5,000 fine for a crime netting $500,000 was

Case 2:10-cv-00106-LRH-VCF   Document 914-6   Filed 11/13/15   Page 5 of 6

Minutes of the Nevada State Legislature
Assembly Committee on................JUDICIARY..............................................................................
Date:........April 22, 1983............................
Page:........Ten............................

hardly a deterrent. This would definitely be a paying crime.

Professor Simkin said this figure of $500,000 should not be taken too seriously because there are less than 1,000 reported cases of computer abuse, and this includes a very lenient definition of the term "computer abuse". Considering there are approximately 3 million people working directly with computers, and an untold number working indirectly with computers, and over 200,000 computer centers in the U.S. and the commercial computer has been with us for at least 30 years, the probability that in that long a period of time, at that many established computer centers throughout the U.S., and with that many people working in computers there have been only 1,000 cases of abuse is highly unlikely. And these 1,000 cases include everything from stealing to the operator of a computer terminal throwing their shoe through the CRT screen.

Mr. Bilyeu then asked if, under section 9 of the bill regarding using a computer without authorization, a computer operator worked out their biorythm chart, would this be a misdemeanor.

Professor Simkin said that in his opinion, this would technically be a misdemeanor. He went on to note that one question which this does raise is how you define "authorization, right to use", etc. In his mind these are very ambiguous terms.

He went on to note that these problems should not discourage the Legislators from passing this bill. While perhaps not perfect, this law would be a definite asset to the Nevada Revised Statutes and its benefits would greatly outweigh any problems which might exist in it.

Mr. Humke questioned the recommended deletion of sections 10.2 and 10.3. He felt the requirement to secure and safeguard a computer to be a valuable one. Professor Simkin said he disagreed. He cited the example of a person who buys a micro computer, then fails to lock his car door when he leaves. Under sections 10.2 and 10.3 that person could be prosecuted.

Mrs. Swain asked what an appropriate penalty for this crime would be in terms of industrial espionage. Professor Simkin said he did not know for certain, but it should definitely be more than that currently contained in this bill. Mr. Stewart said it could easily be a $100,000 fine. Mrs. Swain said this bill should definitely be viewed in terms of industrial espionage.

Next to speak was Mr. Keith Parkyn, of the Sierra Pacific Power Company. His testimony was based upon EXHIBIT D, attached to these minutes.

Chairman Stewart noted that the changes to section 10 suggested by Mr. Parkyn were almost identical to those suggested by

Case 2:10-cv-00106-LRH-VCF   Document 914-6   Filed 11/13/15   Page 6 of 6

Minutes of the Nevada State Legislature
Assembly Committee on ............JUDICIARY...........................................................................
Date: April 22, 1983
Page: Eleven

Professor Simkin except that Mr. Parkyn defines this action as a felony rather than a misdemeanor and Professor Simkin would substitute the word "personal" for the word "credit".

Mr. Parkyn told Mr. Bilyeu he was interested in limiting, to a certain extent, a statute which may apply to computers. He said his reason for this is that if the law is made too direct to computers and too general, then computers are handled as special things under the law and this should not be. He noted that if a person commits a crime with computers, they ought to be punished; they ought not to be punished necessarily uniquely. Because computers can be used so generally, special legislation prepared to protect society should be limited in its scope.

In reply to Mr. Bilyeu, Mr. Parkyn said he had no great problem with substituting the word "personal" for the word "credit". He again stressed to the Committee, however, that this bill should not be allowed to become too general or all encompassing.

Chairman Stewart then called upon Professor Simkin again, asking him what he thought of Mr. Parkyn's suggested amendment to section 6 of the bill. He said he preferred his own definition, noting he felt this included those items mentioned in Mr. Parkyn's definition.

Professor Simkin also explained that the similarity in language is because they were both quoting from the Florida crime bill, which was the first crime bill enacted in 1978 and both apparently felt it to be an important addition to Nevada law.

AB 427: Makes trial by jury unavailable for misdemeanors.
(BDR 14-820)

SB 211: Reduces size of juries in criminal trials in justices' courts. (BDR 14-877)

Mr. Bill MacDonald, representing the Nevada District Attorneys Association and the Clark County District Attorney's Office, testified on these two bills. He said that they had asked the District Attorney's Office in Las Vegas to survey their cases that are set just to see what kind of impact we are looking at for jury trials in Justice Court. He said that it was not a complete survey, but it was fairly substantial. There were 16 jury trials being scheduled into December at this particular time. Most of those are DUI's, but four of them are vehicle overweight trials, the demand for jury trial brought by the same attorney in each case.

Mr. MacDonald said that when he was District Attorney in Humboldt County, they noticed over the last few years--probably as a result of stories in national publications: "How to beat a speeding