1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: 702.382.7300
    Facsimile: 702.382.2755
4   rpocker@bsfllp.com

5   BOIES, SCHILLER & FLEXNER LLP
    WILLIAM ISAACSON (*pro hac vice*)
6   KAREN DUNN (*pro hac vice*)
    5301 Wisconsin Ave, NW
7   Washington, DC 20015
    Telephone: 202.237.2727
8   Facsimile: 202.237.6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES, SCHILLER & FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
11  KIERAN P. RINGGENBERG (*pro hac vice*)
    1999 Harrison Street, Suite 900
12  Oakland, CA 94612
    Telephone: 510.874.1000
13  Facsimile: 510.874.1460
    sholtzman@bsfllp.com
14  kringgenberg@bsfllp.com

15
    Attorneys for Plaintiffs
16  Oracle USA, Inc., Oracle America, Inc., and
    Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

17                    UNITED STATES DISTRICT COURT

18                         DISTRICT OF NEVADA

19

20  ORACLE USA, INC., a Colorado corporation;          Case No 2:10-cv-0106-LRH-PAL
    ORACLE AMERICA, INC., a Delaware
21  corporation; and ORACLE INTERNATIONAL          **ORACLE'S MOTION FOR COSTS
    CORPORATION, a California corporation,          AND ATTORNEYS' FEES**

22                    Plaintiffs,                     *PUBLIC REDACTED VERSION*

23            v.

24  RIMINI STREET, INC., a Nevada corporation;
    SETH RAVIN, an individual,

25                    Defendants.

26

27

28

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II. RIMINI AND RAVIN'S PATTERN OF MISCONDUCT AND
    MISREPRESENTATIONS REQUIRED ORACLE TO EXPEND SIGNIFICANT
    EFFORTS ...................................................................................................................... 2

    A.  Throughout This Litigation, Rimini and Ravin Have Lied About and
        Concealed Their Conduct ........................................................................................ 2

        1.  Rimini's Misrepresentations About Cross-use........................................... 2

        2.  Rimini's False Statements About Its Use of Siebel and JD Edwards
            Environments Prevented Resolution of Liability at Summary
            Judgment ......................................................................................................... 3

        3.  Rimini's Spoliation of Evidence ................................................................. 4

        4.  Rimini Repeatedly Failed to Provide Complete and Accurate
            Discovery ......................................................................................................... 5

        5.  Rimini Improperly Failed to Admit Facts in Response to Oracle's
            Requests for Admissions................................................................................ 5

        6.  Despite Rimini's Conduct Throughout This Litigation, Oracle
            Prevailed on Its Claims .................................................................................. 6

    B.  Rimini's Reckless Business Strategy and Wasteful Litigation Tactics
        Continue ....................................................................................................................... 7

III. DISCUSSION ............................................................................................................ 7

    A.  The Court Should Grant Oracle Its Attorneys' Fees and Costs Incurred
        Litigating All Claims ................................................................................................ 7

        1.  Oracle Prevailed on Its Copyright and State Computer Access
            Claims and Oracle Proved Facts That Rimini Failed to Admit ............ 8

        2.  The Relevant Factors Strongly Favor Awarding Attorneys' Fees to
            Oracle ............................................................................................................... 9

            a.  Oracle Was Successful on Each of Its Copyright Claims
                Against Rimini ................................................................................ 10

            b.  Rimini's Litigation Tactics Made It Very Expensive for
                Oracle to Prevail............................................................................. 10

            c.  Rimini's Gambles with the Law Must Be Deterred.................... 11

            d.  Innovation Should Be Incentivized............................................... 12

            e.  The Court Should Award Fees for All Claims at Issue in
                This Litigation................................................................................. 13

        3.  The Court Should Award Attorneys' Fees to Oracle on Oracle's
            State Computer Access Claims .................................................................. 15

    B.  The Fees and Expenses That Oracle Requests Are Reasonable ........................ 16

        1.  The Rates Actually Paid By Oracle Were Reasonable Hourly Rates ...... 16

        2.  The Amount of Time Billed on This Case Was Reasonable ................... 20

        3.  Oracle Should Be Granted Its Costs ........................................................ 22

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1

a.  Oracle Is Presumptively Entitled to Recover Its Taxable Costs ........................................................................................ 22

2

b.  The Court Should Award Oracle All Costs ................................. 23

4.  Oracle's Total Fees and Costs Were Necessary And Reasonable .......... 25

3

IV.  CONCLUSION ............................................................................................. 26

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No  2:10-cv-0106-LRH-PAL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany &
Albany Cnty. Bd. of Elections*,
522 F.3d 182 (2d Cir. 2008)......................................................................... 18

*Ass'n of Mexican-Am. Educators v. State of California*,
231 F.3d 572 (9th Cir. 2000)........................................................................ 22

*Ballen v. City of Redmond*,
466 F.3d 736 (9th Cir. 2006)........................................................................ 16

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)........................................................................ 18

*Casella v. Morris*,
820 F.2d 362 (11th Cir. 1987).......................................................................... 9

*Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*,
No. CV 00-1693-A, 2003 WL 23715982 (D. Or. Oct. 27, 2003)........................................... 24

*Cowan v. Prudential Ins. Co. of Am.*,
935 F.2d 522 (2d Cir. 1991)......................................................................... 21

*Davis v. City and Cnty. Of San Francisco*,
976 F.2d 1536 (9th Cir. 1992)...................................................................... 24

*Diamond State Ins. Co. v. Deardorff*,
No. 1:10-CV-00004 AWI, 2011 WL 2414391 (E.D. Cal. June 8, 2011) ................................. 9

*Dillard v. City of Greensboro*,
213 F.3d 1347 (11th Cir.2000)...................................................................... 17

*Evanow v. M/V Neptune*,
163 F.3d 1108 (9th Cir. 1998)...................................................................... 22

*Ferland v. Conrad Credit Corp.*,
244 F.3d 1145 (9th Cir. 2001)...................................................................... 16

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)............................................................................. 9, 11

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
No. 08 CV 1992 MMA POR, 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010)...................... 25

*Gallagher v. Lions Gate Entm't Inc.*,
No. 2:15-CV-02739-ODW-E, 2015 WL 6478210 (C.D. Cal. Oct. 27, 2015) ...................... 9

*Gonzalez v. City of Maywood*,
   729 F.3d 1196 (9th Cir. 2013) ...................................................................................... 16, 20

*Grant v. Bethlehem Steel Corp.*,
   973 F.2d 96 (2d Cir. 1992) ................................................................................................. 21

*Gusman v. Unisys Corp.*,
   986 F.2d 1146 (7th Cir. 1993) ........................................................................................... 19

*Hearst Corp. v. Oregon Worsted Co.*,
   No. CV 99-640-BR, 2001 WL 668040 (D. Or. Apr. 18, 2001) ......................................... 13

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   697 F. Supp. 2d 1139 (N.D. Cal. 2010) ............................................................................ 22

*In Design v. K-Mart Apparel Corp.*,
   13 F.3d 559 (2d Cir. 1994) ................................................................................................. 9

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV 01-275, 2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005) .................... 25

*IO Grp., Inc. v. Jordan*,
   No. C 09-0884 MEJ, 2010 WL 2231793 (N.D. Cal. June 1, 2010) ...................................... 10

*Jackson v. Axton*,
   25 F.3d 884 (9th Cir. 1994) ........................................................................................... 9, 10

*Jardin v. DATAllegro, Inc.*,
   No. 08–CV–1462–IEG (WVG), 2011 WL 4835742 (S.D.Cal. Oct. 12, 2011) .................... 23

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1995) ............................................................................................... 16

*Kourtis v. Cameron*,
   358 Fed.App'x. 863 (9th Cir. 2009) ................................................................................... 17

*Louisville Black Police Officers Org., Inc. v. City of Louisville*,
   700 F.2d 268 (6th Cir.1983) .............................................................................................. 18

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424 (9th Cir. 1996) ............................................................................................. 12

*Marchand v. Mercy Med. Ctr.*,
   22 F.3d 933 (9th Cir. 1994) ................................................................................................. 8

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932 (9th Cir. 1999) ............................................................................................. 13

*Marx v. Gen. Revenue Corp.*,
   133 S. Ct. 1166 (2013) ...................................................................................................... 22

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

*Mattel, Inc. v. MGA Entm't, Inc.*,
    705 F.3d 1108 (9th Cir. 2012) ................................................................................. 9

*McCulloch v. Albert E. Price, Inc.*,
    823 F.2d 316 (9th Cir. 1987) ......................................................................... 9, 11, 12

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ............................................................................... 17

*National Assoc. of Concerned Veterans v. Secretary of Def.*,
    675 F.2d 1319 (D.C.Cir.1982) ............................................................................. 17

*Orchano v. Advanced Recovery, Inc.*,
    107 F.3d 94 (2d Cir. 1997) ................................................................................. 21

*Pacificorp v. Nw. Pipeline GP*,
    No. 3:10-CV-00099-PK, 2012 WL 6131558 (D. Or. Dec. 10, 2012) ..................................... 23

*Parrish v. Manatt, Phelps & Phillips, LLP*,
    No. C 10-03200 WHA, 2011 WL 1362112 (N.D. Cal. Apr. 11, 2011) ................................. 23

*Pastre v. Weber*,
    800 F. Supp. 1120 (S.D.N.Y. 1991) ....................................................................... 25

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
    685 F. Supp. 2d 456 (S.D.N.Y. 2010) ..................................................................... 25

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. 11-07098, 2015 WL 1746484 (C.D. Cal. Mar. 25, 2015) .......................... 16, 19, 20, 25

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010) ............................................................................... 17

*Rubbermaid Commercial Products, LLC v. Trust Commercial Products*,
    No. 2:13-cv-02144, 2014 WL 4987878 (D. Nev. Aug. 22, 2014) ...................................... 20

*Sega Enterprises Ltd. v. MAPHIA*,
    948 F. Supp. 923 (N.D. Cal. 1996) ....................................................................... 10

*Tampa Bay Water v. HDR Eng'g, Inc.*,
    No. 8:08-CV-2446-T-27, 2012 WL 5387830 (M.D. Fla. Nov. 2, 2012) ............................. 25

*Tibble v. Edison Int'l*,
    No. CV 07-5359, 2011 WL 3759927 (C.D. Cal. Aug. 22, 2011) ...................................... 23

*Trustees of Constr. Indus. v. Redland Ins. Co.*,
    460 F.3d 1253 (9th Cir. 2006) ............................................................................. 24

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
    429 F.3d 869 (9th Cir. 2005) ......................................................................... 13, 23, 24

*United States Football League v. National Football League*,
   887 F.2d 408 (2d Cir. 1989) ................................................................................. 21

*Van Gerwen v. Guarantee Mut. Life Ins.*,
   214 F.3d 1041 (9th Cir. 2000)............................................................................... 16

*Webb v. Sloan*,
   330 F.3d 1158 (9th Cir. 2003)............................................................................... 13

*Wyatt Tech. Corp. v. Malvern Instruments, Inc*.,
   No. CV 07-8298 ABC, 2010 U.S. Dist. LEXIS 144973 (N.D. Cal. June 17,
   2010), *aff'd*, 526 Fed. Appx. 761 (9th Cir. 2013) ................................................ 25

STATUTES

17 U.S.C. § 505 ............................................................................................ passim

28 U.S.C. § 1920 .................................................................................................... 22

Cal. Penal Code § 502 ...................................................................................... 8, 15

Nev. Rev. Stat. § 205.4765 ............................................................................... 8, 15

OTHER AUTHORITIES

Fed. R. Civ. P. 37 ..................................................................................................... 8

Fed. R. Civ. P. 54 ................................................................................................... 22

Dist. Nev. Local Rule 54-4 .................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No 2:10-cv-0106-LRH-PAL

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1    **NOTICE OF MOTION AND MOTION**

2    Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

3    (together, "Oracle") will and hereby do move for an award of attorneys' fees and costs against

4    Defendants Rimini Street, Inc. ("Rimini Street") and Seth Ravin (together, "Rimini" or

5    "Defendants").  This motion is based on this Notice of Motion and Motion, the Memorandum of

6    Points and Authorities incorporated herein, the declarations of Thomas S. Hixson ("Hixson

7    Decl."), Kieran O. Ringgenberg ("Ringgenberg Decl."), Richard J. Pocker ("Pocker Decl.") and

8    James C. Maroulis ("Maroulis Decl."), documents incorporated by reference, the entire record in

9    this action, matters appropriate for judicial notice, and any evidence or argument presented on

10   reply or at the hearing.

11   **MEMORANDUM OF POINTS AND AUTHORITIES**

12   **I.    INTRODUCTION**

13   After years of litigation to conclusively establish Rimini's massive copyright

14   infringement and unlawful downloading, Oracle now moves for an award of its attorneys' fees

15   and costs so that it can be fully compensated for the damages and costs that Rimini has caused

16   and so that Rimini is deterred from continuing its reckless disregard for intellectual property

17   rights.

18   Like other software companies, Oracle invests in developing and improving its products

19   with the expectation that it will be able to license them and protect them under the copyright and

20   data security laws.  Oracle has invested literally billions in the software at issue in this case.  The

21   jury's $50 million judgment is designed to compensate Oracle for the business damage caused by

22   Rimini's actions; Oracle's pending request for injunctive relief is intended to protect its software

23   from copying that cannot be remedied by monetary relief.  Complete relief requires an award of

24   Oracle's attorneys' fees and costs.  Oracle has spent $56.2 million (including $4.95 million in

25   taxable costs) in order to win that judgment in this highly complex case.

26   As the Court said, "this has been a very, very complex case . . . .  I can tell you that --

27   I've never seen a case this complex that involved this many issues before a jury as what you've

28

1  seen here and before the Court. . . . [I]t is certainly what you call a mega trial and a mega lawsuit

2  under any view." Tr. 3946:9-18.

3    Oracle's attorneys' fees and costs are justified because of the breadth of Rimini's

4  wrongful conduct and Rimini's persistent lies and acts of concealment before and throughout this

5  litigation.  It would simply not be fair to require Oracle to bear the burden of Rimini's

6  wrongdoing and litigation misconduct.

7    An award or Oracle's attorneys' fees and costs is authorized under copyright law and is

8  necessary to make Oracle whole.  It will also deter Rimini from continuing to pursue its "act

9  first, consider the laws later" approach to business.  Accordingly, the Court should award Oracle

10  its fees and costs.

11  **II.**  **RIMINI AND RAVIN'S PATTERN OF MISCONDUCT AND**
12     **MISREPRESENTATIONS REQUIRED ORACLE TO EXPEND SIGNIFICANT**
      **EFFORTS**

13    **A.**  **Throughout This Litigation, Rimini and Ravin Have Lied**
        **About and Concealed Their Conduct**

14
15    Oracle filed suit against Rimini in January of 2010, and Rimini forced Oracle to incur

16  unnecessary expenses from the beginning of discovery all the way to trial.

17      **1.**   **Rimini's Misrepresentations About Cross-use**

18    From the beginning, Rimini and Ravin made false statements to Oracle, the Court, and

19  the public regarding Rimini's core support processes.  In a 2010 deposition, Ravin testified that

20  Rimini ███████████████████████████████████████████████████████

21  ███████████████████████████." Hixson Decl., Ex. 21 (Ravin 7/21/10 Dep.) at 321:17-23.

22  He also testified that Rimini "███████████████████████████████████████

23  ██████████" *Id.* at 307:4-12; *see also id.* at 307:13-308:13, 306:3-13.  He testified that

24  ███████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  █████████████" *Id.* at 303:9-23; *see also* Tr. 804:20-805:5 (Ravin).  He said that Rimini's

27  ███████████████████████████████████████████████." Hixson Decl., Ex. 21

28  (Ravin 7/21/10 Dep.) at 325:20-326:9.  Rimini's Rule 30(b)(6) designee, Senior Vice President

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1       Brian Slepko, provided similar testimony, asserting that, "all the development is done for

2   a particular customer in that customer's environment using that customer's files" and "that work

3   [is] repeated for each customer for whom that work is applicable," meaning that "development is

4   done for -- on a particular customer's environment and then one at a time across customers."  Tr.

5   3173:17–3175:3.

6       Rimini repeated these lies to the Court.  In its June 16, 2011 answer to Oracle's

7   complaint, Rimini Street claimed that "each client is assigned a separate data 'silo' where Oracle

8   Software and Support Materials for only that client are maintained."  Dkt. 153, ¶ 4.  Rimini

9   similarly repeated its lies to its customers and the market.  *E.g.*, Tr. 319:10-14, 453:20- 454:10,

10   471:24-472:4, 547:23-548:1 (Ravin); 1396:10-14 & 1398:2-5, 1398:20- 1399:7, 1406:10-

11   1407:13, 1434:21-24 (Maddock); PTX 241, 5352; *see also* Tr. 1412:6-10 & 1414:9-12

12   (Maddock) (admitting that Rimini had no legitimate basis for its falsehoods).

13       Rimini knew its statements were false, and Oracle had to spend a considerable amount of

14   time and resources on discovery and expert analysis to prove it.  Hixson Decl., ¶ 17;

15   Ringgenberg Decl. ¶ 11; *see also* Dkt. 136 at 9:15-10:19.  In its February 13, 2014 ruling holding

16   that Rimini Street had infringed Oracle's copyrights, the Court exposed this deceit, finding that

17   one customer's "development environments were used to develop and test software updates for

18   the City of Flint and other Rimini customers with similar software licenses."  Dkt. 474 at 11.

19   Only after Oracle presented the evidence and expert testimony that it had amassed did Rimini

20   finally admit to its wrongdoing.  It was not until trial that Ravin finally admitted that cross-use

21   occurred "all the time."  Tr. 799:6-12 (Ravin).  Ravin also finally admitted that the significant

22   evidence of unauthorized copying that Oracle had discovered and Oracle's expert had analyzed

23   "looked pretty accurate."  Tr. 551:10-15 (Ravin).

24              **2.**    **Rimini's False Statements About Its Use of Siebel and**
                  **JD Edwards Environments Prevented Resolution of**

25                     **Liability at Summary Judgment**

26       Rimini's false claims about its conduct were not limited to cross-use.  In response to

27   Oracle's motion for summary judgment, Rimini made numerous false statements about its use of

28   Oracle's JD Edwards and Siebel software.  For example, Rimini claimed that "Siebel and J.D.

Case No  2:10-cv-0106-LRH-PAL

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1  Edwards environments maintained by Rimini are not open for development use," "Rimini did not

2  use Siebel or J.D. Edwards environments to develop, test, or package updates," "Rimini's JDE

3  support professionals generally do not use the local JDE environments for development, and

4  these environments are rarely accessed," and "Rimini's maintenance of environments on behalf

5  of its J.D. Edwards customers was for archival purposes."  Dkt. 269, Rimini Responses to

6  Oracle's Statement of Facts, Fact Nos. 56, 76 & Rimini Facts 41, 46.

7    The Court denied summary judgment as to the infringement of Siebel and JD Edwards

8  software only because Rimini's false statements led the Court to find disputed issues of material

9  fact (Dkt. 474 at 22-24 & n.20), forcing Oracle to go to trial to prove liability.  It was only at trial

10  – five and a half years after Oracle filed suit – that Rimini finally admitted the truth.  *E.g.*, Tr.

11  303:1-5 (Ravin) (Rimini "used all of the software," including all its "Siebel software" and "JDE

12  software" in its "work for customers."); 364:3-6 (Ravin) (environments on Rimini's systems

13  were "used in order to support customers"— that was their "full design and purpose"); 318:19-

14  22, 364:7-9 (Ravin) (Siebel environments were designed at the outset for, among other uses,

15  "testing and development" and "troubleshooting"); Tr. 1146:5-25 (Chiu) (Siebel copies "used to

16  provide support"); Tr. 758:23-759:4 (Ravin) (same); Tr. 1754:8-15 (Whittenbarger) (Siebel

17  copies used for training); Tr. 367:2-8 (Ravin) (J.D. Edwards environments were for "testing and

18  development" and for "diagnostics and support"); *see also* Dkt. 865 (detailing JD Edwards and

19  Siebel evidence).

20    Rimini's litigation conduct was extraordinarily wasteful in addition to being unethical.

21  Rimini fabricated disputed issues of material fact on summary judgment, only to have its CEO

22  admit infringement at trial three years – and millions of dollars – later.

23        **3.      Rimini's Spoliation of Evidence**

24    Rimini also ignored its preservation obligations and destroyed evidence.  Rimini

25  destroyed a key computer directory containing Oracle software that Rimini used for multiple

26  customers in violation of the customer licenses.  Magistrate Judge Leen found that Rimini

27  intentionally deleted this "software library" well after Rimini was on notice of potential litigation

28

1  and aware that the co-mingled software library was potentially relevant evidence.  Dkt. 466 at

2  17:15-17.

3        Judge Leen sanctioned Rimini for destroying this evidence.  *Id.* at 18:17-23.  Given

4  Rimini's prior false assurances that the library never existed, Judge Leen "underst[oo]d[]

5  Oracle's reservations about the veracity" of Rimini's representations.  *Id.* at 18:2.  Rimini's

6  actions not only forced Oracle to bring a spoliation motion, but they were also part of a pattern of

7  conduct that caused Oracle's attorneys and technical consultants to spend significantly more time

8  in discovery than should have been necessary to prove Oracle's infringement case.  Hixson

9  Decl., ¶ 17 (explaining how Oracle had to search for and analyze anecdotal evidence of how

10  Rimini used its unlawful software library because records of the library were not available);

11  Ringgenberg Decl., ¶ 11 (same).

12          **4.     Rimini Repeatedly Failed to Provide Complete and**
                      **Accurate Discovery**

13
14        One of the key pieces of evidence throughout the litigation was Rimini's response to

15  Oracle's Interrogatories 20-22.  These responses detailed the copies of PeopleSoft, JD Edwards,

16  and Siebel software stored and used on Rimini's local servers (referred to as "local

17  environments" at trial).  This information was readily accessible to Rimini, since it created the

18  local environments and used them on a daily basis.  Nevertheless, Rimini produced five

19  iterations of those responses over the course of discovery.  Hixson Decl., ¶ 18.  But Rimini did

20  not produce each new iteration of its own will.  Rather, upon receiving each new version of

21  Rimini's list of local environments, Oracle had to investigate the list for completeness by

22  exhaustively reviewing documents and analyzing data sources.  Oracle then had to draft meet

23  and confer letters detailing gaps in Rimini's iterative lists and requesting supplemental

24  information.  *See id.*, Exs. 10-12 (letters to Rimini identifying inadequacies in discovery

25  response).

26          **5.     Rimini Improperly Failed to Admit Facts in Response**
                      **to Oracle's Requests for Admissions**

27        Rimini also wrongfully refused to admit facts regarding its improper downloading.

28  Oracle served numerous requests for admission asking Rimini to admit to using automated

1   downloading tools to copy materials from Oracle support websites.  Hixson Decl., Ex. 29

2   (Rimini's responses to RFAs 136, 149, 150, 156, 165, 168, 171, 181, 187).  Rimini admitted

3   none.  *Id.*  It finally admitted these facts only at trial when faced with the extensive evidence and

4   expert analysis that Oracle presented.  *E.g.,*, PTX 1, 2 (Rimini violated license terms posted on

5   Oracle websites because it wanted to "help [it]self" to the so-called "buffet" of Oracle software);

6   PTX 4, 6, Tr. 289:5-10 (Ravin) (Rimini downloading PeopleSoft and JD Edwards materials

7   before Rimini even had any clients for those products); PTX 20, 21, 22, 27, Tr. 480:10-14,

8   482:11-19, 726:20-24 (Ravin knew—and explicitly stated in a letter to Oracle that he knew—that

9   Oracle websites prohibited the use of automated tools but continued to use them anyway); Tr.

10   1172:9-15, 1174:5-1175:1, 1179:9-23 (Hicks) (detailing harm to Oracle's systems); 1201:14-

11   1202:11; 1210:5-1211:10 (Renshaw); PTX 665; PTX 669; *see also* Dkt. 843 (detailing evidence

12   collected and presented at trial regarding Rimini's unlawful downloading).[1]  As with the cross-

13   use of software and infringement of Siebel and J.D. Edwards software, Rimini denied its conduct

14   for years, forced Oracle to spend enormous sums to prove Rimini's conduct, then admitted it was

15   all true at trial.

### 6.    Despite Rimini's Conduct Throughout This Litigation, Oracle Prevailed on Its Claims

17          Despite years of Rimini lies and concealment, Oracle discovered the truth and prevailed

18   against Rimini on Oracle's copyright claims for every product line at issue:  PeopleSoft, J.D.

19   Edwards, Siebel, and Database.  Dkt. 896 (Verdict); Dkt. 474 (Order on MSJ #1); Dkt. 476

20   (Order on MSJ #2).  Oracle also prevailed against Rimini and Ravin on its claims for violations

21   of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, and

---

[1] Rimini's tactics and unreasonableness extended to ignoring Court orders.  For example, despite dismissal of its copyright misuse counterclaim in 2010, Dkt. 111, Rimini continued to argue the claim at trial (and still continues to argue it), creating additional and unnecessary work for Oracle.  Dkt. 741 (Rimini Trial Brief) at 3 n.2, 15-18; Dkt. 906 (Rimini Opp. to Oracle Motion for Permanent Injc.) at 16-18.  Rimini also reasserted defenses that it had affirmatively waived, even after trial, such as claiming their acts were authorized under 17 U.S.C. § 117(a).  Dkt. 771 (Oracle's Opposition to Rimini's Objections to Jury Instructions) at 6.  Rimini had already waived any defense under that statute.  Dkt. 401 (Amended Stipulation re Copyright Registrations and Copies), ¶¶ 13-14."); Dkt. 907 at 17.

1   the Nevada Computer Crime Law ("NCCL"), Nev. Rev. Stat. § 205.4765 & 205.511(1)(a); Dkt.

2   896 (Verdict).  All together, the jury awarded Oracle $50,027,000 in damages.  *Id.*

3   **B.    Rimini's Reckless Business Strategy and Wasteful Litigation**

4   **Tactics Continue**

5   Rimini has repeatedly claimed to the press and to the Court that it changed its support

6   practices after the Court's February 2014 Summary Judgment Order and that its new support

7   model is non-infringing.  Oracle and Rimini are engaged in continued litigation regarding

Rimini's post-2011 conduct, including this claimed new support process ("*Rimini II*").  Dkt. 669.

8   Unless it awards Oracle's attorneys' fees in this case, the Court will encourage Rimini to

9   engage in the same duplicitous and wasteful discovery and litigation tactics again in *Rimini II*.

10  Likewise, awarding Oracle its attorneys' fees in this action will further the deterrent purposes of

11  a fee award.  Although discovery in *Rimini II* is in its early stages, Rimini's practice of

12  concealing its conduct is already apparent.  For example, it took Rimini three months after

13  Oracle's request plus a threatened motion to compel before it produced an updated customer list,

14  which even then contained significant omissions.  Hixson Decl., ¶ 22.  Rimini has similarly been

15  unwilling or unable to produce environment lists of the kind that were crucial in *Rimini I*.  *Id.*

16  Moreover, Rimini assured Oracle in July 2015 that it would be able to produce information from

17  the various databases it uses in its provision of support services, but then later said it could not

18  do so until the end of 2015.  *Id.*, ¶ 23.  Further, as Oracle explained in its reply brief in support of

19  its motion for an injunction, Rimini has not stopped infringing at all.  Dkt. 907.

20  **III.   DISCUSSION**

21  Attorneys' fees are appropriate in order to (1) deter Rimini's and Ravin's wasteful

22  litigation tactics and (2) further the aims of the copyright and data access laws by deterring future

23  unlawful conduct and incentivizing innovators to protect their intellectual property.  The fees and

24  costs that Oracle is requesting are reasonable.  They should be awarded to Oracle.

25  **A.    The Court Should Grant Oracle Its Attorneys' Fees and Costs Incurred**

26  **Litigating All Claims**

27  The Court has discretion to award the prevailing party's costs and attorneys' fees under

28  the Copyright Act and the California and Nevada state computer access statutes.  *See* 17 U.S.C.

1   § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of

2   full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to

3   the prevailing party as part of the costs."); Cal. Penal Code § 502(e)(2) ("In any action brought

4   pursuant to this subdivision the court may award reasonable attorney's fees."); Nev. Rev. Stat.

5   § 205.4765 ("Any victim of a crime described in NRS 205.473 to 205.513, inclusive, may bring

6   a civil action to recover . . . [c]osts and reasonable attorney's fees incurred in bringing the civil

7   action.").  Additionally, barring narrow exceptions, the Court *must* award expenses and

8   attorneys' fees for Oracle's costs in proving the facts that Rimini failed to admit in response to

9   Oracle's Requests for Admission. Fed. R. Civ. P. 37(c)(2) ("If a party fails to admit what is

10   requested under Rule 36 and if the requesting party later proves . . . the matter true, the

11   requesting party may move that the party who failed to admit pay the reasonable expenses,

12   including attorney's fees, incurred in making that proof.  The court must so order unless" certain

13   limited exceptions apply.).

14       **1.**    **Oracle Prevailed on Its Copyright and State Computer**
15                       **Access Claims and Oracle Proved Facts That Rimini**
                    **Failed to Admit**

16       Oracle prevailed against Rimini on Oracle's copyright claims and its state computer

17   access claims.  Dkt. 896 (Verdict); Dkt. 474 (Order on MSJ #1); Dkt. 476 (Order on MSJ #2).

18   Therefore, it is within the Court's discretion to award attorneys' fees pursuant to the copyright

19   and state computer access statutes.

20       Oracle also proved true the matters at issue in Oracle's Requests for Admission 136, 149,

21   150, 156, 165, 168, 169, 171, 181, 187, which relate to Oracle's downloading claims.  Rimini

22   failed to make the requested admission in each case.  *See* § II.A.5, *supra*.  These requests were

23   not objectionable under Fed. R. Civ. P. 36(a); they were of substantial importance in the

24   litigation; Rimini had no reasonable basis for believing it might prevail on the matters; and

25   Rimini had no other good reason for its failure to admit.  The Court must thus order Rimini to

26   pay the reasonable expenses and attorneys' fees Oracle incurred in its substantial effort to prove

27   these facts at trial, as detailed above in § II.A.5.  *See* Fed. R. Civ. P. 37(c)(2); *see also Marchand*

28   *v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) (affirming lower court's award of

attorneys' fees where defendant "had no reasonable basis to deny" requests for admission); *Diamond State Ins. Co. v. Deardorff*, No. 1:10-CV-00004 AWI, 2011 WL 2414391, at *5 (E.D. Cal. June 8, 2011) (same).

### 2. The Relevant Factors Strongly Favor Awarding Attorneys' Fees to Oracle

With respect to fees and costs for Oracle's copyright claims, "[b]ecause section 505 is intended in part to encourage the assertion of colorable copyright claims, to deter infringement, and to make the plaintiff whole, *fees are generally awarded to a prevailing plaintiff*." *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987) (internal citations omitted; emphasis supplied).  Not only is Oracle the prevailing plaintiff on its copyright claims, but in this case, the relevant factors strongly favor an award of attorneys' fees.

In determining the appropriate attorneys' fees award for the prevailing party in a copyright action, courts consider the degree of success obtained by the party seeking fees; frivolousness; motivation; the objective unreasonableness of both factual and legal arguments; and the need in particular circumstances to advance considerations of compensation and deterrence.  *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35 n.19 (1994).  However, "[s]ection 505 does *not* condition an award of fees on the showing of a willful infringement or frivolous suit."  *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987) (emphasis supplied); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 568 (2d Cir. 1994); *see also Gallagher v. Lions Gate Entm't Inc.*, No. 2:15-CV-02739-ODW-E, 2015 WL 6478210, at *2 (C.D. Cal. Oct. 27, 2015) ("the discretion to award fees and costs does not require an explicit finding of bad faith or blameworthiness on behalf of the losing party"). Courts should keep in mind the purpose of the Copyright Act to promote creativity for the public good and apply these factors in an evenhanded manner to the prevailing plaintiff and prevailing defendants alike.  *Id.*; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2012) ("The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act.").  These factors strongly favor awarding attorneys' fees to Oracle as the prevailing party on all its copyright claims due to

1   Rimini's wasteful litigation tactics, the need to deter Rimini, and the policy of encouraging

2   innovators like Oracle to assert their copyright claims.

3            **a.      Oracle Was Successful on Each of Its Copyright**
                        **Claims Against Rimini**

4

5            Oracle alleged infringement of copyrights ranging across four of its product lines

6   (PeopleSoft, Siebel, JD Edwards, and Oracle Database).  Oracle achieved summary judgment on

    its PeopleSoft software (Dkt. 474 at 28:26-29:4) and Database (Dkt. 476 at 31:14-17)

7
    infringement claims, and it achieved a successful jury verdict on its PeopleSoft documentation,

8
    Siebel, and JD Edwards infringement claims.  Dkt. 896 at 1-2.  Moreover, the jury found

9
    infringement on each of the 93 copyrights presented to the jury in its verdict on Oracle's

10
    statutory damages claim.  *Id.* at 7:1-15.  Therefore, Oracle was successful under each of its

11
    copyright infringement claims against Rimini.

12

13           **b.      Rimini's Litigation Tactics Made It Very**
                        **Expensive for Oracle to Prevail**

14           The use of objectively unreasonable factual and legal arguments by the non-prevailing

15  party in copyright litigation favors an award of attorneys' fees to the prevailing party.  *Jackson*,

16  25 F.3d at 890.  As discussed above in § II.A, the five-year history of this case is replete with

17  examples of Rimini taking factual and legal positions that were objectively false and forcing

18  Oracle to spend time and resources on unnecessary discovery, fact investigations, and motion

19  practice.

20           The case was complex already.  But Rimini's litigation tactics made it significantly more

21  so, ultimately forcing Oracle to spend thousands of hours and tens of millions of dollars to prove

22  its case, including dozens of depositions, scores of fact investigations, hundreds of meet and

23  confer letters and emails, and significant efforts to prove issues at trial that should have been

24  resolved long before.  Hixson Decl., ¶ 17.  The Court should award Oracle attorneys' fees to

25  compensate it for these unnecessary costs it was forced to incur in protecting its intellectual

26  property.  *See Sega Enterprises Ltd. v. MAPHIA*, 948 F. Supp. 923, 940 (N.D. Cal. 1996)

27  (awarding attorneys' fees to prevailing plaintiff in a copyright case, citing "weak" arguments

28  raised by defendant in defense); *IO Grp., Inc. v. Jordan*, No. C 09-0884 MEJ, 2010 WL

2231793, at *2-3 (N.D. Cal. June 1, 2010) (awarding attorneys' fees to prevailing plaintiff in a copyright case, citing "inherent contradictions in Defendant's factual statements").

### c.     Rimini's Gambles with the Law Must Be Deterred

Attorneys' fees are also appropriate to deter future infringement. *Fogerty*, 510 U.S. at 534-35 n.19 (1994); *McCulloch*, 823 F.2d 323.  This factor is particularly important in this case because the infringing party and many of its executives have infringed Oracle's copyrights before and are already engaged in litigation to determine whether they continue to do so.  A pattern is emerging in which Mr. Ravin starts a company with a legally questionable business model without giving any consideration of legal restrictions and without respecting others' intellectual property rights, his conduct is deemed infringing after expensive litigation, and he begins the cycle once more.

This started with Mr. Ravin's first company, TomorrowNow.  TomorrowNow pled guilty to copyright infringement in a criminal case and paid hundreds of millions of dollars to Oracle in a civil infringement case resulting from conduct that was central to the support model that Mr. Ravin created.  Tr. 410:15-411:12 (Ravin).  Ravin testified that ███████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████.  Hixson Decl., Ex. 20 (Ravin 5/21/2009 Dep.) at 35:17-37:12; 41:13-18, 110:2-111:15.  Those infringing local copies were part of the reason TomorrowNow stipulated to both civil and criminal liability for copyright infringement.  *Id.*, Ex. 23 (*Oracle USA, Inc. v. SAP AG*, N.D. Cal. Case No. 07-CV-1658, Dkt. 911), ¶¶ 15-16 (fact stipulation stating that, e.g., "TN made at least 6,189 Copies.  Each such copy constituted an infringement . . . ."); Ex. 25 at 2-5 (TN criminal plea stating that, e.g., "TOMORROWNOW employees made at least 6,189 "environment" copies of Oracle's PeopleSoft software").  And that same practice of storing

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1  infringing local copies on its servers and using them to develop fixes and updates is one of the

2  bases for this Court's and the jury's determination that Rimini also committed infringement.[2]

3         Mr. Ravin and Rimini appear to be starting the cycle anew with their claim of having

4  adopted a new support process in 2014.  *See* § II.B, *supra*.  Rather than running a business that

5  respects intellectual property and the law, Rimini cuts corners and rushes to the market with, at

6  best, the *hope* that a court or jury will not find it liable for its actions.  In the meantime, Rimini's

7  infringement allows it to dramatically cut costs and offer 50% off support to customers, which

8  helps Rimini quickly earn the revenue necessary to fund the inevitable litigation.  This behavior

9  must be deterred, and an award of attorneys' fees to Oracle as the prevailing party in this

10  litigation will promote that deterrence.  *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432

11  (9th Cir. 1996) (remanding based on lower court's failure to consider *Fogerty* factors and

12  expressing concern that the "award for damages in this case is insufficient to deter future

13  copyright infringements such as the one at issue here").

14              **d.       Innovation Should Be Incentivized**

15         Courts also consider the purpose of copyright law and the incentives of the prevailing

16  plaintiff.  "[S]ection 505 is intended in part to encourage the assertion of colorable copyright

17  claims . . . and to make the plaintiff whole."  *McCulloch*, 823 F.2d at 323.  The  consequence of

18  Rimini's recidivist infringement is that it costs Oracle a lot of money to litigate.  Oracle

19  prevailed in this litigation and recovered $50 million, which is a substantial sum.  However,

20  litigation is expensive, and this case cost tens of millions of dollars to litigate successfully.

21  Without the ability to recover attorneys' fees, it would be impossible for Oracle and other

22  _____

23  [2] Indeed, this litigation against Mr. Ravin—along with Rimini's wasteful litigation practices—
24  was born out of the SAP TomorrowNow litigation.  Oracle subpoenaed Mr. Ravin and Rimini as
    third parties during discovery in that earlier lawsuit in light of SAP's likely argument that Rimini
    Street was a noninfringing alternative, but Mr. Ravin and Rimini refused to comply, presumably
25  so they could avoid or delay discovery of their theft of Oracle's intellectual property for as long
    as possible.  Hixson Decl., Ex. 24 (*Oracle USA, Inc. v. SAP AG*, No. 2:09-CV-01591, Dkt. 49).
26  Only after significant motion practice, when this Court held Mr. Ravin and Rimini in contempt
    of court for this attempt to evade discovery and conceal evidence of their conduct, did Mr. Ravin
27  agree to give testimony.  *Id.* at 2.  Rimini's practice of attempting to delay and avoid discovery
    of the truth about its support practices set the stage for how Rimini litigated the present case.

28

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1   innovators to protect their intellectual property and be made whole.  The failure to award

2   attorneys' fees to successful plaintiff's acts as a *dis*incentive to enforce intellectual property

3   rights.  And the lack of a financially viable means of enforcing intellectual property rights creates

4   a further *dis*incentive to create intellectual property in the first place.  An award of attorneys'

5   fees in this case is appropriate because it would further the goals of copyright law by

6   incentivizing the creation of intellectual property.[3]  *See Hearst Corp. v. Oregon Worsted Co.*,

7   No. CV 99-640-BR, 2001 WL 668040, at *4 (D. Or. Apr. 18, 2001) (awarding attorneys' fees,

8   agreeing that an "award of attorneys' fees to Plaintiffs will compensate them for their costs of

9   serving as a private attorney general [and] encourage future private enforcement of infringement

10  claims").

11              **e.      The Court Should Award Fees for All Claims at**
                          **Issue in This Litigation**
12

13          Fees and costs recoverable under § 505 are *not* limited to those incurred in litigating the

14  copyright claims.  Where the copyright claim and other claims or counterclaims involve a

15  "common core of facts" or "related legal theories," the Court may award attorneys' fees and

16  costs on all related claims, including unsuccessful claims.  *Webb v. Sloan*, 330 F.3d 1158, 1168

17  (9th Cir. 2003); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 884 (9th

18  Cir. 2005) (citing *Webb*); *see also Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir.

19  1999) ("A court will award attorneys' fees for claims upon which the plaintiff failed to prevail

20  but were related to the plaintiff's successful claims.") (internal quotation marks and brackets

21  omitted).

22          Oracle either dropped before verdict or failed to prevail on the following claims:  federal

23  computer access, trespass to chattels, breach of contract, inducing breach of contract, and

24  _____

25  [3] The importance of copyright law to incentivizing innovation is particularly acute in the
    software industry.  Tr. 910:20-911:4 (Catz) ("Copyrights are absolutely central to the software
26  industry because it's extremely expensive and hard to build the software.  You spend lots of
    money building it, lots of time, lots of people's lives . . . and it's incredibly easy to . . . take a
27  copy of it.  So you have to be able to control what you've built or the whole industry won't
    exist.")

28

1    intentional interference and related state law claims.[4]  All of the claims and counterclaims at

2    issue in this litigation were based on a common core of facts and/or legal theories related to

3    Oracle's infringement and state computer access claims.

4          Oracle's computer access claims have always shared a core of facts intertwined with its

5    copyright claims because accessing software files (the subject of the computer access claims (*see*

6    Dkt. 146 (2d. Am. Compl.), ¶¶ 84-110, 146-151) necessarily included copying those files (the

7    subject of the copyright claims (*see id.*, ¶¶ 71-83)).  Further, both downloading and copying the

8    files and the use of the resulting files are governed by the website terms of use and the software

9    licenses.  *Id.*, ¶¶ 71-110.  Therefore, the work on both the federal and state computer access

10   claims, the trespass to chattels claims, and the copyright claims share a common core of facts and

11   related legal theories.  Likewise, the breach of contract and inducing breach of contract claims

12   relate to the same contract documents at issue in the other claims.  *Id.*, ¶¶ 112, 117.  Finally,

13   Oracle based its intentional interference and related state law claims on lies Rimini told its

14   customers about its conduct with respect to Oracle's software.  *Id.*, ¶¶ 125, 133, 156.  Rimini was

15   hiding the conduct at issue in its statements to customers precisely because that conduct was

16   infringing.  Therefore, all the work Oracle performed to prove Rimini's infringing conduct also

17   went towards proving that Rimini was interfering with Oracle's customer relationships by lying

18   about its conduct.  All of Oracle's claims revolve around the same set of core facts and legal

19   theories, and the Court should award attorneys' fees to Oracle for its work in litigating all its

20   claims.

21

22

23   ——————————————

24   [4] Oracle successfully moved to dismiss Rimini's counterclaims for copyright misuse, and Oracle
     defeated Rimini's counterclaims for defamation and unfair competition on summary judgment.

25   Regardless of Oracle's success on these claims, the misuse of copyright claim – an affirmative
     defense to copyright infringement – is obviously closely intertwined with Oracle's infringement

26   claim, and Rimini's defamation and unfair competition claims were based on Oracle's statements
     about Rimini's massive theft of Oracle's intellectual property.  Based on its own summary

27   judgment ruling, the Court found that Oracle's statements were true, and thus Rimini's claims
     failed.  Dkt. 476 at 29-30.  Therefore, all of Oracle's work on litigating Rimini's counterclaims

28   overlapped heavily with Oracle's work litigating its copyright claims.

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

### 3. The Court Should Award Attorneys' Fees to Oracle on Oracle's State Computer Access Claims

Because Oracle is the prevailing plaintiff on its California and Nevada computer access claims, the Court may also award attorneys' fees separately under those statutes. *See* Cal. Penal Code § 502(e)(2); Nev. Rev. Stat. § 205.4765. The same factors that favor awarding Oracle attorneys' fees for its copyright claims also favor an award for its state computer access claims. As detailed above in § II.C, and because the state computer access claims are closely related both factually and legally to the copyright claims, Rimini's litigation conduct made Oracle's expenses in litigating these claims unnecessarily high. For example, a key allegation in Oracle's computer access claims is that Rimini knowingly used automated tools in violation of Oracle's terms of use, resulting in harm to Oracle's support sites. Dkt. 146, ¶¶ 6, 92-110. The facts at issue in Oracle's requests for admissions (discussed in § II.C.5, *supra*) that Rimini failed to admit relate to Rimini's knowledge that the Oracle terms of use prohibited the use of automated downloading. Rimini refused to admit those facts throughout discovery, forcing Oracle to litigate the issue all the way to trial. Then, faced with the mounting evidence that Oracle had to develop through discovery, Seth Ravin admitted at trial that he authorized automated downloading from Oracle's support sites even after learning that it was prohibited by the terms of use. Tr. 482:15-483:5 (Ravin) ("Q. And after you learned of these terms of use, you continued to authorize automated downloading from Customer Connection; right? A. Yes, I made the decision to continue to use the automated terms despite those changes.").

Rimini's admission at trial, many years after it was obligated to make it, also shows that an award of attorneys' fees is essential to deter Rimini's conduct and to make Oracle whole for the harm Rimini's actions have caused. Rimini knew it was violating Oracle's terms of use and putting Oracle's support site at risk, but Rimini continued on regardless. This action caused Oracle over $14 million in damage (Dkt. 896 at 10-12) but it took millions of dollars in legal fees and five years for Oracle to obtain that verdict. Without awarding Oracle attorneys' fees, Rimini and other companies will violate the computer access statutes for the sake of growth, gambling that it will not cost too much later if they lose in court. On the other side, without an award of attorneys' fees, owners of intellectual property like Oracle will have little incentive to spend

1  millions of dollars on a lawsuit that could take years to yield a recovery.  An award of attorneys'

2  fees will properly align the incentives and encourage the protection of computer systems in

3  accordance with the aim of the state computer access laws.

4  **B.      The Fees and Expenses That Oracle Requests Are Reasonable**

5  "Reasonable attorney's fees" are based on the "lodestar" calculation.  *Gonzalez v. City of*

6  *Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  "Under the lodestar method, the district court

7  'multiplies the number of hours the prevailing party reasonably expended on the litigation by a

8  reasonable hourly rate.'"  *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

9  The lodestar amount is presumptively the reasonable fee amount.  *Van Gerwen v.*

10  *Guarantee Mut. Life Ins.*, 214 F.3d 1041, 1045 (9th Cir. 2000).[5]  Here, the relevant lodestar

11  calculation is determined by multiplying the actual rates Oracle paid for its attorneys by the

12  actual hours those attorneys spent on the litigation.  Both are reasonable.

13  **1.      The Rates Actually Paid By Oracle Were Reasonable Hourly Rates**

14  The actual rates Oracle paid for its attorneys are the prevailing market rates for this type

15  of litigation.  "Unless counsel is working outside his or her normal area of practice, evidence that

16  a billing rate was the usual rate the attorney charges for his or her services is evidence that the

17  rate is comparable to the market rate."  *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015

18  WL 1746484, *5 (C.D. Cal. Mar. 25, 2015) (citing *Moore v. James H. Matthews & Co.*, 682 F.2d

19  830, 840 (9th Cir. 1982)).  "Billing rates usually reflect, in at least a general way, counsel's

20  _____

21  [5] "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the

22  district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1149 n. 4 (9th Cir.

23  2001).  Those factors-also known as the *Kerr* factors-include:  "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal

24  service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations

25  imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11)

26  the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir. 2006); *see also Kerr v. Screen*

27  *Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1995).  These factors further support awarding Oracle the actual fees and costs it incurred.  *See infra*; Hixson Decl., ¶¶ 3-96; Maroulis Decl., ¶¶

28  2-5.

1    reputation and status (i.e., as partner, associate, or law clerk)." *Moore*, 682 F.2d at 840; *accord*

2    *Kourtis v. Cameron*, 358 Fed.App'x. 863, 868 (9th Cir. 2009) ("The district court's calculation

3    of an attorney's fee award . . . based on the actual rates charged by [prevailing party's] attorneys

4    was reasonable under 17 U.S.C. § 505.") ; *see also Dillard v. City of Greensboro,* 213 F.3d 1347,

5    1354-55 (11th Cir.2000) ("What [the attorney] charges clients is powerful, and perhaps the best

6    evidence of his market rate; that is most likely to be what he is paid 'as determined by supply

7    and demand.' "); *National Assoc. of Concerned Veterans v. Secretary of Def.,* 675 F.2d 1319,

8    1325 (D.C.Cir.1982) ("The best evidence would be the hourly rate customarily charged by the

9    affiant himself or by his law firm."). Here, Oracle hired Morgan Lewis & Bockius LLP[6] and

10    Boies Schiller and Flexner LLP ("BSF") to prosecute this case. The firms charged Oracle rates

11    in line with their usual rates, or lower, based on their normal areas of practice, and Oracle paid

12    those rates. Hixson Decl., ¶¶ 8-10; Ringgenberg Decl. ¶ 8-10. The reasonableness of MLB and

13    BSF rates is confirmed by Oracle's decision to pay them. Oracle is a sophisticated consumer of

14    legal services and will only pay rates that are commensurate with the skill Oracle required.

15    Maroulis Decl., ¶¶ 2-4. They are similar to the rates that other clients pay BSF and MLB and are

16    thus evidence of the market rate for their services. Hixson Decl., ¶ 9; Ringgenberg Decl. ¶ 9.

17        The rates Oracle paid for MLB and BSF are consistent with the prevailing rates in the

18    community for this type of complex litigation. "[T]he proper scope of comparison…extends to

19    all attorneys in the relevant community engaged in equally complex Federal litigation, no matter

20    the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010)

21    (internal quotes omitted). Courts determine reasonableness of a rate based upon "the rates

22    prevailing in that district for similar services by lawyers of reasonably comparable skill,

23    experience and reputation," irrespective of practice area. *Id.*, (*quoting Blum v. Stenson*, 465 U.S.

24    886, 895 n.11 (1984)). Here, one of Oracle's BSF attorneys, Richard Pocker, has been a resident

25

---

26    [6] The team of MLB attorneys working on the case were formerly at Bingham McCutchen LLP

27    until November 2014, when they joined Morgan Lewis & Bockius. Hixson Decl., ¶¶ 2, 4. Prior to November 2014, Bingham McCutchen LLP represented Oracle in this matter. *Id.* Bingham

28    McCutchen and Morgan Lewis & Bockius will be referred to collectively herein as "MLB."

1    of and has practiced in the Las Vegas community for thirty years.  Pocker Decl., ¶ 2.  From 2010

2    to 2015, his billing rate ranged from ██████████ which is commensurate with his skill and

3    experience.  Ringgenberg Decl. ¶ 18.  Mr. Pocker's rates are also consistent with the rates of the

4    other MLB and BSF attorneys who provided Oracle with legal services.  Hixson Decl., ¶¶ 30-60;

5    Ringgenberg Decl. ¶ 14-31 (detailing the skills, experience, and rates for MLB and BSF

6    attorneys).  All of their rates are reasonable and consistent with the prevailing market for their

7    services in this district.  Pocker Decl., ¶ 4.  Mr. Pocker's rates are direct evidence that MLB and

8    BSF rates reflect the prevailing rate for the skill and experience required for this litigation in this

9    district.

10           The reasonableness of the actual rates Oracle paid for MLB and BSF is confirmed by

11   both parties' decision to hire national law firms with teams that were not based in Las Vegas.

12   The MLB and BSF attorneys who worked on this case are primarily located in Las Vegas, San

13   Francisco, Oakland, and Washington, D.C.  Hixson Decl., Ex. 27.  Likewise, Rimini and Ravin

14   hired the national law firms of Shook, Hardy & Bacon LLP and Gibson Dunn & Crutcher LLP,

15   with lawyers based in San Francisco, Kansas City, Houston, Los Angeles, and Washington, D.C.

16   *Id.*  Both parties' decisions reflect that the market for legal services is national, and that both

17   parties believed only nationally-renowned firms could handle the case properly.  Pocker Decl.,

18   ¶ 4; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[R]ates outside the

19   forum may be used if local counsel was unavailable, either because they are unwilling or unable

20   to perform because they lack the degree of experience, expertise, or specialization required to

21   handle properly the case."); *Louisville Black Police Officers Org., Inc. v. City of Louisville,* 700

22   F.2d 268, 278 (6th Cir.1983) ("District courts are free to look to a national market, an area of

23   specialization market or any other market they believe appropriate to fairly compensate

24   particular attorneys in individual cases.").  Although most of the MLB and BSF attorneys are

25   located outside Las Vegas, their rates reflect the value of their services throughout the country in

26   any district. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany*

27   *Cnty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008) ("The legal communities of today are

28   increasingly interconnected.  To define markets simply by geography is too simplistic.");

1   *compare* Hixson Decl., ¶¶ 30-60 (detailing the skills, experience, and rates for MLB and BSF

2   attorneys); Ringgenberg Decl. ¶ 14-31 (same) *with* Hixson Decl., Ex. 26 (excerpt of 2014

3   National Law Journal survey detailing prevailing national market rates).

4          It is true that MLB and BSF charge premium rates, but "lawyers who fetch above-

5   average rates are presumptively entitled to them, rather than to some rate devised by the court."

6   *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).  Both are national firms with a

7   reputation of having top-tier litigators.  The Court recognized the professionalism and value

8   brought by both parties' attorneys, telling the jury that it had "seen professionalism at the top of

9   the ladder."  Tr. 3949:1-9.  The attorneys' "performance, from a professional standpoint, [was]

10  one that's just totally praiseworthy."  Tr. 3950:15-19.  "[W]e had some outstanding lawyers and

11  outstanding technical support."  Tr. 3951:1-2.  And this was not a simple case:  multiple claims

12  were at issue, the parties filed over 45 motions, engaged in intense and voluminous discovery,

13  and ultimately went through a four-and-a-half week trial after which the jury was provided with

14  a 14-page verdict form,[7] and 75 pages of jury instructions (that were the result of hundreds of

15  pages of briefing).[8]  Hixson Decl., ¶ 25-26; Dkts. 880, 896.  As the Court said, "this has been a

16  very, very complex case . . . .  I've never seen a case this complex that involved this many issues

17  before a jury as what you've seen here and before the Court.  . . .  *[I]t is certainly what you call a*

18  *mega trial and a mega lawsuit under any view*."  Tr. 3946:7-18 (emphasis supplied).[9]

19         This type of case "justified top-tier litigators."  *Compare Perfect 10*, 2015 WL 1746484

20  at **19-20 ("With more than 30 motions . . . voluminous discovery (and seemingly endless

21  discovery disputes), nearly 700 docket entries, and more than 38,000 pages in the Court's docket,

22  there is little doubt that this case was precisely the sort of complex, large, and burdensome case

23  _____

24  [7] The Court acknowledged that a verdict form of this complexity "is virtually unheard of in our
   civil trials and our criminal trials."  Tr. 3946:21-22.

25  [8] With respect to Oracle's summary judgment motions alone, the Court noted that "[t]his is a
26  complex case with briefing upon summary judgment motions of approximately 200 pages, with
   over 2,700 pages of exhibits."  Dkt. 474 at 28.

27  [9] *See also* Tr. 898:11-17, 1901:20-1902:2, 1986:11-16, 1988:5-13, 2732:15-19, 3168:19-25,
28  3348:14-16, 3361:19-3362:11.

1    that justified top-tier litigators" and was not a "straightforward copyright case"); *with* Hixson

2    Decl., ¶¶ 24-28 (over 45 motions, 900 docket entries, and voluminous and contentious

3    discovery); *see also Rubbermaid Commercial Products, LLC v. Trust Commercial Products*, No.

4    2:13-cv-02144, 2014 WL 4987878, at *8 (D. Nev. Aug. 22, 2014) *report and recommendation*

5    *adopted*, 2014 WL 4987881 (D. Nev. Oct. 6, 2014) (awarding actual rates of Squire Patton

6    Boggs, LLP of $225.25 to $624.75 per hour for non-resident attorneys in light of "the experience

7    and training of the attorneys . . . and the complexity of the subject-matter involved in this

8    [patent] action").  As in *Perfect 10*, because this case "involv[ed] multiple claims against

9    multiple parties, novel issues of law, and millions of dollars in potential damages," it justified a

10    "nationally-renowned law firm -- with relatively high hourly rates." *Id.*  Paying relatively higher

11    rates for MLB and BSF was "all the more reasonable" given that MLB and BSF had already

12    successfully represented Oracle in a "similar action[]" against TomorrowNow, Ravin's former

13    company.  2015 WL 1746484 at **19-20.

14             **2.**      **The Amount of Time Billed on This Case Was Reasonable**

15         The Court should award Oracle attorneys' fees based on the actual hours spent by

16    Oracle's attorneys.  "[T]o determine whether attorneys for the prevailing party could have

17    reasonably billed the hours they claim to their private clients, the district court should begin with

18    the billing records the prevailing party has submitted."  *Gonzalez*, 729 F.3d at 1202.

19         "Admittedly, a multi-million dollar attorneys' fee request is objectively large.  But a fee

20    award is not unreasonable simply because it involves a lot of money.  The operative question

21    isn't the dollar amount, the question is whether the rates charged and the hours spent are

22    reasonable in light of the totality of the litigation.  Courts in this [circuit] have awarded

23    attorneys' fees in excess of $100,000,000 in copyright litigation depending on the nature of the

24    underlying litigation, and reference to the dollar amount of a particular fee award is not

25    especially helpful without a sense of how much time it took to reasonably litigate the case."

26    *Perfect 10*, 2015 WL 1746484, at *27 (citing *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04–9049,

27    2011 WL 3420603, at *10 (C.D.Cal. Aug.4, 2011) *aff'd sub nom. Mattel, Inc v. MGA Entm't*,

28

ORACLE'S MOTION FOR COSTS AND ATTORNEYS' FEES

1  Inc., 705 F.3d 1108 (9th Cir.2013) (awarding attorneys' fees of $105,688,073.00 to prevailing

2  copyright defendant)).

3        Oracle's attorneys' billing records reflect a reasonable amount of time spent on this

4  litigation.  Hixson Decl., ¶ 15; Ringgenberg Decl. ¶ 12.  The Court recognized that the amount of

5  time necessary for this case was substantial, stating that it was "certain that this was a very

6  expensive trial and litigation on both sides in this case." Tr. 3951:4-5.  For all the reasons

7  explained above, including the size and complexity of the case and Rimini's years of false

8  denials, these attorneys' fees are reasonable.[10]

9        Oracle's litigation against SAP and TomorrowNow also confirms the reasonableness of

10  Oracle's attorneys' fees in this case.  In the *SAP TomorrowNow* case, which addressed strikingly

11  similar allegations against a similar business model that, like Rimini, was designed by Seth

12  Ravin and took approximately 350 of Oracle's PeopleSoft, JD Edwards, and Siebel customers,

13  Oracle and SAP TomorrowNow agreed to pay Oracle $120 million in total attorneys' fees and

14  costs.  *See id.*, Hixson Decl, Ex. 22 (*Oracle USA, Inc. v. SAP AG*, N.D. Cal. Case No. 07-CV-

15  1658, Dkt. 961); *id.*, Ex. 28 (*Oracle USA, Inc. v. SAP AG*, N.D. Cal. Case No. 07-CV-1658, Dkt.

16  745, Undisputed Fact 93 (describing allegations against TomorrowNow and its 358 customers));

17  § III.A.2.c, *supra*.

18        Finally, Oracle has made conservative adjustments to the hours actually spent.  First,

19  Oracle has not included any attorneys' fees or vendor costs from the month of October 2015,

20  since those invoices have not been processed yet.  Hixson Decl., ¶¶ 4, 8; Ringgenberg Decl.,

21  _____

22  [10] It is of no consequence that Oracle's request exceeds its judgment.  "[A] reasonable fee may
23  well exceed the prevailing plaintiff's recovery . . . ."  *Orchano v. Advanced Recovery, Inc.*, 107
    F.3d 94, 98-99 (2d Cir. 1997) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 564–67 (1986)
24  (approving fee award of $245,456.25 after recovery of $33,350 on claims of warrantless entry
    and excessive force); *Grant v. Bethlehem Steel Corp.*, 973 F.2d 96, 101–02 (2d Cir. 1992)
25  (approving fee award of $512,590.02 in employment discrimination class action settled for
    damages totaling $60,000), *cert. denied,* 506 U.S. 1053 (1993); *Cowan v. Prudential Ins. Co. of*
26  *Am.*, 935 F.2d 522, 523, 528 (2d Cir. 1991) (directing district court to award fees of $54,012.76
    in employment discrimination case in which plaintiff recovered damages of $15,000); *cf. United*
27  *States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989)
    (approving fee award of $5.5 million following antitrust plaintiff's recovery of three dollars in
28  damages), *cert. denied*, 493 U.S. 1071 (1990)).

1    ¶¶ 4, 8.  Second, ███████████████████████████████████.  Hixson Decl.,

2    ¶ 6; Ringgenberg Decl., ¶ 6.  Third, for time entries that were block-billed, Oracle conservatively

3    struck out the entire time spent by a timekeeper for any given day where Oracle has redacted the

4    description of the work done due to privilege or other reasons.  Hixson Decl., ¶ 7; Ringgenberg

5    Decl. ¶ 7.  Oracle removed over $5 million from its bills for these reasons.

6            **3.**      **Oracle Should Be Granted Its Costs**

7                **a.**    **Oracle Is Presumptively Entitled to Recover Its Taxable Costs**

8        Unless a federal statute, the Federal Rules of Civil Procedure, or a court order otherwise

9    provides, costs—other than attorney fees—"should be allowed to the prevailing party."  Fed. R.

10   Civ. P. 54(d)(1); LR 54-1(a); *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013) ("Rule

11   54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs.").  Rule

12   54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party," and the

13   "district court must specify a reason for its refusal to award costs."  *Ass'n of Mexican-Am.*

14   *Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (internal quotation marks

15   omitted).  Oracle seeks recovery of the following taxable costs.

16        <u>Deposition costs.</u>  Deposition costs are taxable as costs under 28 U.S.C. § 1920(2) and

17   Local Rule 54-4.  *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998).  Taxable

18   deposition costs include the costs related to a video deposition:  "The cost of videotaping,

19   including video technicians fees, as well as the cost of a copy of the videotape and written

20   transcript are taxable costs."  *Hynix Semiconductor Inc. v. Rambus Inc.*, 697 F. Supp. 2d 1139,

21   1150 (N.D. Cal. 2010).  Oracle incurred $193,000 in taxable deposition costs in this litigation,

22   and it is entitled to recover these taxable costs as the prevailing party.  Hixson Decl., Ex. 1.

23        <u>Electronic discovery costs.</u>  Under 28 U.S.C. § 1920(4), the prevailing party is entitled to

24   recover "[f]ees for exemplification and the costs of making copies of any materials where the

25   copies are necessarily obtained for use in the case."  Thus, under the statute, "[t]he reproduction

26   costs [the prevailing party] incurred in collecting, reviewing, and preparing client documents for

27   production were necessary expenditures made for the purpose of advancing the investigation and

28

1    discovery phases of the action.  As such, they are properly taxable." *Parrish v. Manatt, Phelps*

2    *& Phillips, LLP*, No. 10-03200, 2011 WL 1362112, at *2 (N.D. Cal. Apr. 11, 2011).

3        Courts have applied these principles in the context of electronic discovery.  "In

4    recognition of the growing use of electronic discovery, in 2008 Congress amended § 1920(4)

5    from '[a] judge or clerk of any court of the United States may tax as costs the following: ... fees

6    for exemplifications and copies of papers' to 'fees for exemplification and the costs of making

7    copies of any materials.' *Jardin v. DATAllegro, Inc.*, No. 08–CV–1462, 2011 WL 4835742, at

8    *5 (S.D.Cal. Oct. 12, 2011).  Consequently, where circumstances require conversion of

9    electronic data into a different format to share with parties during discovery, 'exemplification'

10    has been deemed to encompass all costs stemming from that process of conversion." *Pacificorp*

11    *v. Nw. Pipeline GP*, No. 3:10-CV-00099-PK, 2012 WL 6131558, at *6 (D. Or. Dec. 10, 2012).

12    Further, "the storage of electronic data throughout this process is obviously required to prepare

13    and produce the requested electronic discovery, requires no intellectual efforts, and may be

14    properly taxed under § 1920(4)." *Id.* at *8.  Courts also award fees charged by experts "to ensure

15    data is preserved, properly retrieved, and that the responding party's privacy interests are

16    sufficiently protected." *Tibble v. Edison Int'l*, No. CV 07-5359 SVW AGRX, 2011 WL

17    3759927, at *8 (C.D. Cal. Aug. 22, 2011) *aff'd*, 520 F. App'x 499 (9th Cir. 2013).

18        In this case, Oracle produced over 270,000 documents in response to Rimini's 57

19    requests for production, and the parties agreed to produce those documents in electronic format

20    according to a very specific protocol.  Hixson Decl., ¶ 27; Dkt. 216.  This process required

21    Oracle's vendor, Stroz Freidberg, to process over a million pages of documents for production to

22    Rimini in the agreed-upon format.  Oracle incurred fees of $4.7 million for Stroz Friedberg's

23    work related to taxable electronic discovery.  Hixson Decl., Ex 1.

24             **b.  The Court Should Award Oracle All Costs**

25        Oracle is also entitled to recover all of its costs, including fees spent on experts.  17

26    U.S.C. § 505; *Twentieth Century Fox*, 429 F.3d at 885 (§ 505 authorizes an award of all costs in

27    addition to fees).  Here, Oracle incurred $17.2 million in costs beyond its taxable costs, including

28

1    expert fees.[11]  Hixson Decl., Ex. 1.  These expenses were reasonable and necessary for the

2    provision of legal services in this matter.

3            Oracle's expert witnesses were especially important in overcoming Rimini's lies and

4    obtaining judgment in a complex technology case like this one.  Dr. Randall Davis's testimony

5    summarized the extensive, disparate, and previously concealed evidence of Rimini's

6    unauthorized copying.  Tr. 147:16-219:23 (Davis); Dkt. 843 at 1-3 (summarizing Davis

7    testimony of infringement).  In particular, he quantified the pervasiveness of Rimini's cross-use,

8    causing Ravin to finally admit at trial that Rimini did it "all the time" (after previously lying

9    under oath about the exact issue).  *See* § II.A.1, above.  Christian Hicks' analysis and testimony

10   about Rimini's downloading and the damage it caused was directly relevant to the findings that

11   Rimini and Ravin violated the CDAFA and NCCL.  Tr. 1147:1-1197:14 (Hicks); Dkt. 843 at 3-4

12   (summarizing Hicks downloading testimony).  And Edward Yourdon and Elizabeth Dean

13   provided key testimony about how Rimini's copying and downloading allowed it to take

14   customers from Oracle and benefit financially.  Tr. 1675:19-1730:5 (Yourdon), 1762:6-1983:1

15   (Dean); Dkt. 843 at 15-19 (summarizing Yourdon and Dean causation evidence).  Indeed, for the

16   CDAFA and NCCL, the jury awarded Oracle the exact damages measured by Dean.  *Compare*

17   Dkt. 896 (Verdict) *with* Tr. 1832:21-1833:19 (Dean).

18           Oracle's other costs include out-of-pocket costs associated with depositions, courier,

19   document production and storage, jury consulting, and copying.  Courts have consistently

20   recognized all of these as recoverable expenses.  *See Trustees of Constr. Indus. v. Redland Ins.*

21   *Co*., 460 F.3d 1253, 1258-59 (9th Cir. 2006) ("growing circuit consensus" that "reasonable

22   charges for computerized research may be recovered as attorneys' fees); *Davis v. City and Cnty.*

23   *Of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992) (out-of-pocket expenses including the

24   travel, courier and copying costs); *Confederated Tribes of Siletz Indians of Oregon v.*

25   _____

26   [11] Oracle includes in this motion taxable and non-taxable costs, as the Copyright Act allows
     Oracle to recover both.  *Twentieth Century Fox*, 429 F.3d at 885.  Should the Court require that
27   Oracle separate its taxable and non-taxable costs, Oracle can and will file a Bill of Taxable
     Costs.  A breakdown of Oracle's taxable costs are included in the concurrently filed Hixson
28   Decl., Ex. 1.

1   *Weyerhaeuser Co.*, No. CV 00-1693-A, 2003 WL 23715982, at *9 (D. Or. Oct. 27, 2003)

2   vacated and remanded on other grounds by *Confederated Tribes of Siletz Indians of Oregon v.*

3   *Weyerhaeuser Co.*, 484 F.3d 1086, 1087 (9th Cir. 2007) (granting award of $60,000 in fees for

4   mock trial consulting services:  "I do not suggest that mock trials and jury consultants are

5   necessary expenditures in routine litigation.  Far from it.  However, this was a complex case with

6   many millions of dollars at stake."); *Wyatt Tech. Corp. v. Malvern Instruments, Inc*., No. CV 07-

7   8298 ABC (RZx), 2010 U.S. Dist. LEXIS 144973, at *8–9 (N.D. Cal. June 17, 2010), *aff'd*, 526

8   Fed. Appx. 761 (9th Cir. 2013); *Pastre v. Weber*, 800 F. Supp. 1120, 1123, 1127 (S.D.N.Y.

9   1991) (photocopying, messenger services, contract printing, travel); *In re Broadcom Corp. Sec.*

10  *Litig.*, No. SACV 01-275, 2005 U.S. Dist. LEXIS 41993, at * 27-28 (C.D. Cal. Sept. 12, 2005)

11  (court reporting and video in connection with depositions); *Perfect 10*, 2015 WL 1746484, at *6

12  (collecting cases).

13       Among the largest expenses in a case of this size and complexity are the costs related to

14  electronic discovery.  "In an era where vast amounts of electronic information is available for

15  review, discovery in certain cases has become increasingly complex and expensive."  *Pension*

16  *Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 461

17  (S.D.N.Y. 2010); *Gabriel Technologies Corp. v. Qualcomm Inc*., No. 08 CV 1992 MMA POR,

18  2010 WL 3718848, at *10 (S.D. Cal. Sept. 20, 2010) ("The enormous burden and expense of

19  electronic discovery are well known."); *Tampa Bay Water v. HDR Eng'g, Inc.,* No. 8:08-CV-

20  2446-T-27TBM, 2012 WL 5387830, at *21 (M.D. Fla. Nov. 2, 2012) (finding an award of $3.1

21  million in electronic discovery costs was "certainly reasonable and necessary in managing this

22  complex, document-intensive case.").  In this case, Oracle paid $13.02 million to its vendors for

23  hosting, processing, and reviewing the electronic data produced by both sides in discovery.

24  Hixson Decl., Ex. 1.

25       For the reasons stated above, Oracle's non-taxable costs should be granted.

26       **4.    Oracle's Total Fees and Costs Were Necessary And Reasonable**

27       Oracle respectfully submits that the $56.2 million in total attorneys' fees and $4.95

28  million in total costs it paid were reasonable and necessary.

1   IV.   **<u>CONCLUSION</u>**

2          For the reasons stated above, the Court should award Oracle the $56.2 million in

3   attorneys' fees and costs (including $4.95 million in taxable costs) that it incurred.

4

5   DATED:  November 13, 2015            Morgan, Lewis & Bockius LLP

6

7                                       By:_____*/s/ Thomas S. Hixson*_____

8                                            Thomas S. Hixson
                                             Attorneys for Plaintiffs
9                                            Oracle USA, Inc.,
                                             Oracle America, Inc. and
10                                           Oracle International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

  I certify that on November 13, 2015, I electronically transmitted the foregoing MOTION

3

FOR COSTS AND ATTORNEYS' FEES to the Clerk's Office using the Electronic Filing

4

System pursuant to Special Order No. 109.

Dated:  November 13, 2015

5

             Morgan, Lewis & Bockius LLP

6

7

             By: _____ /s/ *Thomas S. Hixson*_____
                    Thomas S. Hixson

8

             Attorneys for Plaintiffs

9

             Oracle USA, Inc.,
             Oracle America, Inc. and

10

             Oracle International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28