SHOOK, HARDY & BACON LLP
B. Trent Webb *(pro hac vice)*
Peter Strand *(pro hac vice)*
Ryan D. Dykal *(pro hac vice)*
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers *(pro hac vice)*
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry *(pro hac vice)*
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson *(pro hac vice)*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

LEWIS ROCA ROTHGERBER LLP
W. West Allen (Nev. Bar No. 5566)
Daniel Polsenberg (Nev. Bar No. 2376)
Joel Henriod (Nev. Bar No. 8492)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
wallen@lrrlaw.com

RIMINI STREET, INC.
Daniel B. Winslow *(pro hac vice)*
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

John P. Reilly *(pro hac vice)*
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEVADA

|  |  |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>                    Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**RIMINI STREET, INC.'S AND SETH RAVIN'S OPPOSITION TO ORACLE'S MOTION FOR PREJUDGMENT INTEREST**<br><br>[REDACTED VERSION] |

1

**TABLE OF CONTENTS**

2
Page

3  I.  INTRODUCTION ............................................................................................... 1

4  II.  BACKGROUND ................................................................................................ 1

5  III.  LEGAL STANDARD ........................................................................................ 3

6  IV.  ARGUMENT ..................................................................................................... 5

7      A.  Oracle Is Not Entitled to Prejudgment Interest on the Copyright Infringement
           Award ........................................................................................................ 5

8
9          1.  The Fair Market Value License Fully Compensates Oracle for Any
               Infringement ..................................................................................... 5

10         2.  Rimini Did Not Needlessly Delay Resolution of this Lawsuit ......... 7

11     B.  Oracle's Copyright Interest Calculations Are Legally and Factually Flawed ........... 11

12         1.  The Statutory Interest Rate Is the Appropriate Rate ...................... 12

13         2.  The Rate Preceding the Judgment Is the Applicable Rate ............. 15

14     C.  Oracle Is Not Entitled to Interest on the State Hacking Damages Awards ............. 18

15         1.  Prejudgment Interest Is Unavailable for the California Damages Award ....... 18

16         2.  Prejudgment Interest Is Unavailable for the Nevada Damages Award .......... 21

17  V.  CONCLUSION ................................................................................................ 22

18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albios v. Horizon Communities, Inc.*,
  122 Nev. 409 (2006) ...........................................................................................21

*Blankenship v. Liberty Life Assurance Co. of Boston*,
  486 F.3d 620 (9th Cir. 2007)........................................................................12, 17

*Brayton Purcell LLP v. Recordon & Recordon*,
  2007 WL 420122 (N.D. Cal. Feb. 6, 2007)......................................................4, 9

*Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.*,
  2014 WL 29008 (S.D. Cal. Jan. 2, 2014)........................................................4, 10

*Currie v. Workers' Comp. Appeals Bd.*,
  24 Cal. 4th 1109 (2001) ......................................................................................18

*Duale v. Mercedez-Benz USA, LLC*,
  148 Cal. App. 4th 718 (2007)...................................................................18, 19, 20

*Excelsior Coll. v. Frye*,
  2007 WL 672517 (S.D. Cal. Feb. 21, 2007) ..................................................12, 17

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
  886 F.2d 1545 (9th Cir. 1989)..................................................3, 4, 11, 12, 13, 16

*Galvin v. Provident Life and Acc. Ins. Co.*,
  2010 WL 3619572 (N.D. Cal. Sept. 13, 2010) ...................................................17

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983)...............................................................................................9

*Getty Images (US), Inc. v. Virtual Clinics*,
  2014 WL 358412 (W.D. Wash. Jan. 31, 2014)...............................................6, 12

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
  874 F.2d 431 (7th Cir. 1989) ...............................................................................13

*Junker v. HDC Corp.*,
  2008 WL 3385819 (N.D. Cal. July 28, 2008)......................................................12

*Leff v. Gunter*,
  33 Cal. 3d 508 (1983) ..........................................................................................20

*Lewis C. Nelson & Sons v. Clovis Unified Sch. Dist.*,
  90 Cal. App. 4th 64 (2001)..............................................................................18, 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Liberty Media Holdings, LLC v. Vinigay.com,*
     2011 WL 7430062 (D. Ariz. Dec. 28, 2011) ..................................................................5

*Little Genie Prods. LLC v. PHSI Inc.,*
     2014 WL 3050326 (W.D. Wash. July 2, 2014) ..........................................................12

*Nelson v. EG&G Energy Measurements Grp., Inc.,*
     37 F.3d 1384 (9th Cir. 1994)......................................................................................15

*Matter of Oil Spill by Amoco Cadiz Off the Coast of France on March 16, 1978,*
     954 F.2d 1279 (7th Cir. 1992)....................................................................................14

*Omega S.A. v. Costco Wholesale Corp.,*
     776 F.3d 692 (9th Cir. 2015)......................................................................................10

*Oracle USA, Inc. v. SAP AG,*
     2010 WL 5372996 (N.D. Cal. Dec. 28, 2010) ....................................11, 12, 13, 15, 16

*Pet Food Express Limited v. Royal Canin USA, Inc.,*
     2011 WL 6140886 (N.D. Cal. Dec. 8, 2011) ..............................................................20

*Polar Bear Productions, Inc. v. Timex Corp.,*
     384 F.3d 700 (9th Cir. 2004)......................................................................3, 4, 5, 7, 10

*Price v. Stevedoring Servs. of Am., Inc.,*
     697 F.3d 820 (9th Cir. 2012)........................................................11, 13, 15, 16

*Robert R. Jones, Inc. v. Nino Homes,*
     858 F.2d 274 (6th Cir. 1988)........................................................................................3

*Ruff v. Cty. of Kings,*
     2009 WL 4572782 (E.D. Cal. Nov. 30, 2009) ............................................................16

*Saavedra v. Korean Air Lines Co., Ltd.,*
     93 F.3d 547 (9th Cir. 1996)........................................................................................17

*Sabbatino v. Liberty Life Assur. Co. of Boston,*
     2003 WL 23932613 (N.D. Cal. Dec. 9, 2003) ............................................................16

*Server Tech., Inc. v. Am. Power Conversion Corp.,*
     2015 WL 1505654 (D. Nev. Mar. 31, 2015)..............................................................12

*Shuette v. Beazer Homes Holding Corp.,*
     121 Nev. 837 (2005) ..................................................................................................21

*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection and Ins. Co.,*
     2014 WL 6883056 (D. Nev. Dec. 5, 2014)................................................................20

Gibson, Dunn & Crutcher LLP

OPPOSITION TO MOTION FOR PREJUDGMENT INTEREST

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Societe Civile Succession Guino v. Renoir*,
    305 F. App'x 334 (9th Cir. 2008) ...................................................................................4, 10

*Stickler v. Quilici*,
    98 Nev. 595 (1982) ........................................................................................................18, 21

*Studiengeselsschaft Kohle v. Dart Industries, Inc.*,
    862 F.2d 1564 (Fed. Cir. 1988)..........................................................................................17

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
    988 F.2d 122 (9th Cir. 1993)............................................................................................5, 7

*TMTV, Corp. v. Mass Prods., Inc.*,
    645 F.3d 464 (1st Cir. 2011) ..............................................................................................13

*U.S. v. Gordon*,
    393 F.3d 1044 (9th Cir. 2004)............................................................................................15

*U.S. v. Pend Oreille Cty. Pub. Utility Dist. No. 1*,
    135 F.3d 602 (9th Cir. 1998) .............................................................................................12

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991) .........................................................................................12

*Wakefield v. Olenicoff*,
    2015 WL 1460152 (C.D. Cal. Mar. 30, 2015) ..................................................................14

*WesternGeco LLC v. ION Geophysical Corp.*,
    2012 WL 2911968 (S.D. Tex. July 16, 2012)....................................................................14

**Statutes**

18 U.S.C. § 1030.........................................................................................................................8

28 U.S.C. § 504...........................................................................................................................4

28 U.S.C. § 1961 ......................................................................................................4, 11, 15, 17

Cal. Code Civ. Proc. § 3287.................................................................................................18, 19

Nev. Rev. Stat. § 17.130 .......................................................................................................16, 21

**Rules**

Nev. Rule Civ. P. 68 .................................................................................................................21

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO MOTION FOR PREJUDGMENT INTEREST

## I.      INTRODUCTION

Oracle's motion for prejudgment interest cannot be squared with the jury's unanimous verdict in this case, and so Oracle *once again* ignores that verdict and asks this Court to do the same.  Oracle is not entitled to prejudgment interest on any portion of the jury award as a matter of law, and its motion should be denied in its entirety.

The significance of the jury's verdict (which Oracle did not challenge in its post-trial motions) is that: (i) the $35.6 million fair market value license awarded by the jury fully compensates Oracle for all acts of infringement and an award of prejudgment interest would therefore be unlawfully duplicative; and (ii) Rimini Street, Inc. ("Rimini") and Seth Ravin were both fully justified in defending themselves against Oracle's lawsuit.  Indeed, Oracle *withdrew* or *abandoned* many of its claims prior to the jury being charged, the jury *rejected* the majority of its remaining claims and theories in their verdict including all copyright infringement allegations against Mr. Ravin, and the jury found all of Rimini's copyright infringement "innocent."  The goals of the Copyright Act would be disserved by penalizing an innocent infringer—one that did not needlessly delay resolution of this lawsuit, but rather repeatedly sought to resolve this case early and often—with a prejudgment interest award that *exceeds* what the jury determined to be fully compensatory for the infringing acts.  On this record, an award of prejudgment interest to Oracle would be an unlawful, and unnecessary, double recovery.

Oracle's overreach is highlighted by the miscalculations of its expert, Ms. Elizabeth Dean, who ignores binding Ninth Circuit law, governing statutes, and basic economic principles to reach a massively inflated prejudgment interest figure.  An analysis of these flaws is set forth in the concurrently filed declaration of Dr. Thomas Vander Veen.  Thus, if any interest is awarded at all, it could be only a fraction of the amount requested by Oracle.

## II.      BACKGROUND

Rimini was founded in 2005 to offer third-party support for a variety of software programs, and today offers support for Oracle programs such as PeopleSoft, J.D. Edwards ("JDE"), Siebel, and Oracle Database, as well software licensed by Oracle's software rival, SAP.  Also in 2005, Oracle acquired Siebel Systems, Inc., and thereafter began immediately contacting Rimini, accusing it of

Gibson, Dunn & Crutcher LLP

tortious conduct and demanding that Rimini "cease and desist" from describing certain Siebel maintenance and support services to its customers.   Declaration of Robert H. Reckers ("Reckers Decl.") Ex. A.

During the ensuing five-year-long letter writing campaign between Oracle and Rimini counsel, Rimini consistently stated that it was "ready and willing to meet with [Oracle] to discuss how best to work on a level, fair, and legal playing field that promoted healthy competition in the marketplace," in order to "forge a strong, mutually-respectful, working relationship."   *Id.* Ex. B. Oracle's representatives refused to engage in any such discussions for many years.   *Id.* Ex. C. Instead, Oracle employees communicated to Rimini's clients that Rimini made misrepresentations to those client relating to its customer base.   *Id.* Ex. D.   Rimini asked Oracle to stop (*id.*), but Oracle refused and continued to contact Rimini clients and accuse Rimini of lies and misrepresentations over a year later (*id.* Exs. E, F).   Meanwhile, Rimini continued to offer its clients "different program deliverables, different service levels, different benefits and risks, and a substantially different price point" than Oracle (*id.* Ex. D), and its business continued to grow.

Oracle filed a sweeping lawsuit in January 2010, alleging twelve claims against Rimini and its CEO, Seth Ravin, accusing them of willful copyright infringement, tortious business conduct involving alleged lies and deception, and computer hacking.   Since filing this lawsuit, Oracle has over time withdrawn or abandoned most of its claims and allegations, but only after extensive briefing and often at the very last minute, forcing Rimini (and this Court) to expend countless hours on issues that Oracle never should have litigated.   *See* Dkt. 752 at 66-87; 10/6 Tr. 3341:18-19; Dkt. 767 at 84; Dkt. 852 at 2.   Oracle also abandoned large portions of the report of its primary expert, Ms. Elizabeth Dean, but once again, only after Rimini spent significant resources to depose her, rebut her report with Rimini's own expert report, and file a motion to exclude her report.   Dkt. 600.

Rimini (with Mr. Ravin) even made three offers of judgment to Oracle under Federal Rule of Civil Procedure 68 in an attempt to resolve this lawsuit prior to trial:   (i) ████████████ ██████████████████████████████ (*see* Reckers Decl. ¶ 8); (ii) ██████████ ████████████████████████ (*id.* ¶ 9); and (iii) ████████████

█████████████████████████ (*id.* ¶ 10).  Oracle rejected each of these offers, seeking instead over $250 million in damages at trial *plus* punitive damages.

Specifically, Oracle asked the jury to award $95.7 million in lost profits as a result of copyright infringement (10/6 Tr. 3486), $16.4 million in infringer's profits (*id.* at 3487), and $117.6 million in damages for intentional interference with current and prospective customer relationships (*id.* at 3492-93).  But the jury rejected each of these damages amounts, and rejected outright Oracle's claims for intentional interference with prospective economic advantage and induced breach of contract, as well as Oracle's request for punitive damages, Oracle's theory of willful infringement, and Oracle's contributory and vicarious liability allegations against Mr. Ravin.  Dkt. 896.

The jury agreed with Rimini that a fair market value license was the best measure of copyright infringement damages and found that the full amount of such a license was $35.6 million.  *Id.* at 4-6.  The jury was instructed that the fair market value license "takes into account defendant Rimini's profits attributable to its infringement."  Dkt. 880 at 35 (Instr. 28).  The jury found explicitly that Rimini had *innocently* infringed Oracle's copyrights.  Dkt. 896 at 6.

The jury also awarded $14.4 million in lost profits (rejecting the alternative $34.9 million requested by Oracle), and $27,000 in investigation costs for the state hacking claims.  Dkt. 896 at 4-6, 13-14.  Rimini and Mr. Ravin have moved for judgment as a matter of law on these hacking claims.  Dkt. 913.

Oracle seeks $37,060,964 in prejudgment interest on the copyright infringement fair market value license, and $4,039,560 in prejudgment interest on the state hacking lost profits award.

### III.   LEGAL STANDARD

The Copyright Act "neither expressly allows nor prohibits awarding prejudgment interest in copyright infringement cases."  *Robert R. Jones, Inc. v. Nino Homes*, 858 F.2d 274, 282 (6th Cir. 1988).  Whether to award prejudgment interest in copyright infringement actions is in "the district court's sound discretion."  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 n.12 (9th Cir. 2004).

The Ninth Circuit first held that prejudgment interest was available under the 1909 Copyright Act in *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989), "[b]ecause

the 1909 Act allows plaintiffs to recover only the greater of the defendant's profits or the plaintiff's actual damages," and therefore "an award of profits or damages under the 1909 Act will not necessarily be adequate to compensate a prevailing copyright owner."  *Id.* at 1552; *see also id.* at 1552 n.8 (noting that Congress made prejudgment interest available in the Patent Act in 1946 "as a quid pro quo for the unavailability of profits in the patent context[, which] suggests the suitability of making prejudgment interest generally available under the 1909 [Copyright] Act where the copyright holder is limited to recovering only profits or damages, but not both").  The court also held that any prejudgment interest award should "be based on the fifty-two week Treasury bill rate" (as required by 28 U.S.C. § 1961), unless the district court concludes that the "equities demand a different rate."  *Id.* at 1552, 1553 n.12.

In contrast to the 1909 version of the statute, the Copyright Act of 1976 allows an award of *both* actual damages *and* infringer's profits to the extent they are not duplicative.  28 U.S.C. § 504(b).  Addressing this change in the statutory text, the Ninth Circuit held in *Polar Bear* that prejudgment interest is nevertheless permitted under the Copyright Act of 1976, because "[f]requently, a copyright plaintiff can only recover one type of remedy, be it actual damages or indirect profits," and "[b]ecause prejudgment interest may be necessary at times to effectuate the legislative purpose of making copyright holders whole and removing incentives for copyright infringement."  384 F.3d at 718.  "It is not difficult to imagine," the court noted, "a case involving undisputed copyright infringement … in which prejudgment interest may be necessary to discourage needless delay and compensate the copyright holder for the time it is deprived of lost profits or license fees."  *Id.*

Following *Polar Bear*, courts in the Ninth Circuit have declined to award prejudgment interest in copyright infringement actions where there was a good faith dispute regarding whether the conduct infringed, or where the damages award fully compensated the copyright holder.  *See Societe Civile Succession Guino v. Renoir*, 305 F. App'x 334, 338-39 (9th Cir. 2008) (affirming denial of prejudgment interest in copyright infringement action because "[t]his was not a case of indisputable copyright infringement"); *Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.*, 2014 WL 29008, at *7 (S.D. Cal. Jan. 2, 2014) ("The Ninth Circuit permits awards of prejudgment interest, but this interest may only be awarded in situations of 'indisputable infringement,' in order to 'discourage needless

delay and compensate the copyright holder'"); *Brayton Purcell LLP v. Recordon & Recordon*, 2007 WL 420122, at *10 (N.D. Cal. Feb. 6, 2007) (denying request for prejudgment interest because defendants' arguments were "legitimate," although ultimately unsuccessful, and "there was no evidence of [plaintiff] being deprived of lost profits or license fees as a result of Defendants' infringement"); *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 7430062, at *16 (D. Ariz. Dec. 28, 2011) ("The Court exercises its discretion to recommend the denial of an award of prejudgment interest, as the Court finds that an award of Plaintiff's actual or statutory damages adequately compensates Plaintiff for its damages in this case"); *cf. Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 988 F.2d 122 at *8 (9th Cir. 1993), *vacated on other grounds on reh'g*, 24 F.3d 1088 (9th Cir. 1994) (affirming denial of prejudgment interest because "interest on the entire amount of damages would be a 'windfall' for plaintiffs").

## IV.   ARGUMENT

Oracle is not entitled to prejudgment interest on either the copyright infringement award or the state hacking claim award as a matter of law for the reasons set forth herein.  And as discussed in the concurrently filed declaration of Dr. Thomas Vander Veen, if the Court were to award any interest at all, it could be only a fraction of the outrageous amount calculated by Oracle.

**A.     Oracle Is Not Entitled to Prejudgment Interest on the Copyright Infringement Award**

Oracle's request for $37 million in prejudgment interest on the copyright infringement award should be denied because the fair market value license fully compensates Oracle for all acts of infringement, and because Rimini did not needlessly delay the resolution of this lawsuit, but rather, was fully vindicated by the jury's verdict, which Oracle ignores.

**1.     The Fair Market Value License Fully Compensates Oracle for Any Infringement**

The fair market value license the jury awarded compensates Oracle for "the entire scope of the infringement" (Dkt. 880 at 41 (Instr. 33)), including "Rimini Street's profits attributable to its infringement" (*id.* at 35 (Instr. 28)).  As a result, prejudgment interest would be nothing but a windfall to Oracle and an improper double-punishment on Rimini.

Here, the jury concluded that Oracle lost *zero* customers and *zero* profits to Rimini as a result of the infringement, and that Rimini earned *zero* profits attributable to the infringement.  Dkt. 896 at

4.  As a result, there is no need to compensate Oracle for the time it was "deprived of lost profits," and there is no "unjust enrichment" to be avoided.  *Polar Bear*, 384 F.3d at 718.  In fact, Oracle's attrition rate *improved* during the relevant time period.  9/22 Tr. 1318; 9/24 Tr. 1866-68.  And Oracle's own expert (Mr. Yourdon) testified that Rimini's clients were part of the 5% of Oracle's customers that left Oracle each year even before Rimini entered the market.  9/24 Tr. 1722.  This is therefore not the typical prejudgment interest copyright infringement case in which the defendant made a sale (of an infringing work) that the plaintiff would have made (of a copyrighted work), and the infringing defendant enjoyed and reinvested the proceeds from that sale until judgment was entered, thereby entitling the plaintiff to interest on the sale *it* would have made.  The jury squarely rejected any such damages in this case.  The economic rationale for prejudgment interest is therefore entirely lacking here.

Oracle ignores the award the jury actually *did* make—a $35.6 million fair market value license, which fully compensates Oracle for Rimini's innocent acts of infringement.  As noted, the jury was instructed that the amount of the fair market value license takes into account "the entire scope of the infringement" (Dkt. 880 at 41 (Instr. 33)), including any enrichment to Rimini as a result of the infringement (*id.* at 35 (Instr. 28)).  The jury was also specifically instructed that it could "consider evidence of events and facts that happened *after* the date of the hypothetical negotiation" if they gave "insight into the expectations of the parties" at the time of infringement *or* at the time of negotiation.  Dkt. 880 at 41 (Instr. 33) (emphasis added).  There was no suggestion at trial or in any instruction to the jury that the amount of its award would be more than *doubled* based on interest that accrued between the negotiation and trial.  To the contrary, the jury was told that the fair market value license award it calculated was the whole package—including facts hypothetically known to Rimini and Oracle when they negotiated at the time of infringement, as well as facts that occurred after that date.

Awarding interest on the fair market value license would constitute an impermissible windfall for Oracle, and an improper punishment for Rimini.  *Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 358412, at *6 (W.D. Wash. Jan. 31, 2014) (prejudgment interest in copyright actions "should not be awarded merely to punish the losing party").  Indeed, the uncontroverted evidence at trial

demonstrated that many of Rimini's clients would have left Oracle regardless of whether Rimini was on the market.  *See* 10/1 Tr. 2962-63; *see also* 9/29 Tr. 2534 ("being upset" with Oracle "is what caused us to even go look for a third-party support"); 10/1 Tr. 2955-56, 2959; 10/2 Tr. 3165.  Awarding prejudgment interest would thus allow Oracle to unjustly benefit from Rimini's business that had nothing to do with the infringement.  *See Subafilms, Ltd.*, 988 F.2d 122 at *8 (affirming denial of prejudgment interest because "interest on the entire amount of damages would be a 'windfall' for plaintiffs").

Moreover, the jury had the tools to take into account the time value of money in reaching its $35.6 million fair market value license.  Rimini's damages expert, Mr. Hampton, testified that the possible range of a fair market value license in this case—for PeopleSoft, JDE, Siebel, and Oracle Database—was from $9.3 million to $17 million.  The jury's verdict reflects an approximate doubling or quadrupling of Mr. Hampton's figures, perhaps based on Oracle's repeated insistence throughout trial that it would have reinvested the money had Rimini obtained a license.  9/21 Tr. 925:22-926:12, 926:19-927:11 ("When they pay, we get to invest it back in the business…. Another customer comes, they contribute it, we expand our development organization, we expand our business, we build better products.  It's just this constant cycle."); 9/24 Tr. 1820:11-1821:4; 10/6 Tr. 3487:18-3488:7.  On the other hand, Oracle's expert, Ms. Dean, did not even *attempt* to calculate the fair market value license for PeopleSoft, JDE, and Siebel, because, due to intractable problems with her analysis, Oracle abandoned those calculations in response to Rimini's *Daubert* motion.  Dkt. 636.

The only reasonable inference to be drawn from these facts and the jury's unchallenged findings is that the jury set the award in an amount sufficient to fully compensate Oracle and make it whole for all purposes.  Oracle's argument to the contrary *ignores* the verdict and at the same time seeks to *double* it through prejudgment interest, and should be rejected.

### 2.    Rimini Did Not Needlessly Delay Resolution of this Lawsuit

An award of prejudgment interest is also inappropriate here because Rimini did not "needless[ly] delay" the resolution of this lawsuit.  *Polar Bear*, 384 F.3d at 718.  To the contrary: (i) Rimini successfully defended itself against the clear majority of Oracle's claims and allegations; (ii) Rimini's arguments for the remaining claims were at the very least legitimate; and (iii) from the

beginning of this case Rimini sought to resolve Oracle's concerns without protracted litigation.

Specifically, Rimini prevailed on the following at trial:

- **Induced Breach of Contract.**  The jury rejected Oracle's claim for over $100 million in damages for inducing breaches of Oracle's contracts with its clients.  Dkt. 896 at 8.

- **Intentional Interference.**  The jury rejected Oracle's claim for over $100 million in damages for intentional interference with Oracle's prospective business relationships.  *Id.* at 8-9.

- **Lost Profits.**  The jury rejected Oracle's claim that Rimini caused Oracle to lose nearly $100 million in lost profits as a result of copyright infringement.  *Id.* at 3-4.

- **Infringer's Profits.**  The jury rejected Oracle's claim that Rimini earned millions of dollars in profits attributable to copyright infringement.  *Id.* at 4.

- **Willful Infringement.**  The jury rejected Oracle's argument that Rimini willfully infringed Oracle's copyrights, finding instead that Rimini innocently infringed the copyrights as a factual matter.  *Id.* at 6.

- **Contributory and Vicarious Liability.**  The jury rejected Oracle's claim that Mr. Ravin was vicariously and contributorily liable for Rimini's copyright infringement.  *Id.* at 7-8.

- **Punitive Damages.**  The jury rejected Oracle's claim that it was entitled to punitive damages for malicious, oppressive, or fraudulent conduct committed by Rimini or Mr. Ravin.  *Id.* at 13-14.

Oracle has challenged *none* of these findings in its post-trial motions.

Oracle also withdrew or abandoned several claims at the last minute, after years of document discovery, depositions, briefing, expert reports, trial preparation, and trial, such as:

- **Federal Computer Fraud and Abuse.**  Oracle withdrew its claim under the Federal Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)(2)(C), (a)(4), and (a)(5)) *after* trial, on the night of October 5, 2015.  Notably, Rimini filed several briefs from the motion to dismiss stage through a Rule 50(a) brief at the close of evidence (*e.g.*, Dkts. 48 at 2-3; 741 at 21-24; 766 at 59-61; 773 at 16-19; 838 at 13-18), arguing that this claim was meritless and unconstitutional; the parties engaged three experts to testify on this claim; and Oracle spent multiple days at trial presenting evidence on this claim, before finally withdrawing it.

- **_Breach of Contract._**  Oracle withdrew its breach of contract claim on September 30, 2015, (Dkt. 852) _after_ Rimini filed multiple briefs explaining that the claim was meritless (_e.g._, Dkts. 739, 766, 838).  Oracle opposed Rimini's arguments at each turn before withdrawing this claim.

- **_Trespass to Chattels._**  Oracle withdrew its trespass to chattels claim on September 30, 2015 (Dkt. 852), _after_ Rimini filed multiple briefs from the motion to dismiss stage through a Rule 50(a) brief at the close of evidence explaining that the claim was meritless (_e.g._, Dkts. 48, 739, 766, 838).

- **_"Unfair" or "Fraudulent" Conduct Under California's Unfair Competition Law ("UCL")._**  Oracle abandoned its claims for UCL violations under the "unfair" and "fraudulent" prongs of the UCL by not seeking post-trial relief on them after the jury's verdict.

- **_Unjust Enrichment._**  Oracle abandoned its unjust enrichment claim by not pressing it during trial or seeking post-trial relief on it after the jury's verdict.

- **_Accounting._**  Oracle abandoned its claim for accounting by not pressing it during trial or seeking post-trial relief on it after the jury's verdict.

In other words, Oracle withdrew or abandoned **_six_** of its twelve claims (and part of the UCL claim) at the very last minute, after five years of litigation.  And Oracle also withdrew its lead damages expert's primary damages theory (Dkt. 600), _after_ Rimini hired an expert to rebut her report, _after_ Rimini deposed her, and _after_ Rimini filed a _Daubert_ motion to exclude the testimony that Oracle ultimately abandoned.  Oracle's unnecessary delay and prolonging of this litigation with claims that were meritless _as a matter of law_ is another reason to deny its request for prejudgment interest.  _Cf. Gen. Motors Corp. v. Devex Corp._, 461 U.S. 648, 655-57 (1983) ("it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit").

    The _only_ claims on which Oracle prevailed are the state hacking claims and copyright infringement, but Rimini's arguments on those claims are at the _very least_ "legitimate" and Rimini is not "unjustified" in defending itself against them.  _See Brayton Purcell_, 2007 WL 420122, at \*10 ("the Court does not find that there has been needless delay in this case" because defendants "had a

legitimate basis for" its arguments, which although "rejected" by the court, were not "unjustified," and therefore "the Court concludes that prejudgment interest in the instant case is not warranted"); *Brighton Collectibles*, 2014 WL 29008, at *8 ("[the defendant's] decision to fully litigate against any alleged infringement was not needless delay, [and] the Court cannot construe of any misconduct on the part of [defendant] to warrant the granting of prejudgment interest"). Indeed, the state hacking claims never should have gone to the jury, and the verdict on those claims must be vacated because application of these criminal prohibitions here would be unconstitutional, because neither statute allows the recovery of lost profits, and because this aspect of the jury's verdict is not supported by legally sufficient evidence, as is set forth in Rimini's Rule 50(b) motion. Dkt. 913. And as for the copyright infringement claim, the finding of ***innocent infringement*** necessarily means that Rimini "***had no reason to believe*** that its acts constituted an infringement of the copyright." Dkt. 880 at 43 (Instr. 35) (emphasis added). A finding that the infringement was "indisputable" would therefore run contrary to the verdict, which is yet another reason to deny Oracle's request for prejudgment interest. *Societe Civile*, 305 F. App'x at 339 (affirming denial of prejudgment interest because "this was not a case of indisputable copyright infringement").

Rimini also sought in good faith to resolve this lawsuit early, including consistent efforts to cooperate before the lawsuit was filed (*see* Reckers Decl. Exs. A-F), and multiple offers of judgment ████████████████████████████████████████████████████████ (*see id.* ¶¶ 8-10). But Oracle again refused, no doubt because its goal was not to obtain reasonable compensation for any infringement (which caused Oracle no harm according to the unanimous jury), but rather to burden its leading competitor in the after-market software support industry with years of unrelenting and distracting litigation.

Awarding interest under these circumstances would run counter to the purposes of the Copyright Act. *Polar Bear*, 384 F.3d at 718 (the decision to award prejudgment interest "in a particular case hinges on whether such an award would further the statute's purpose"). The "ultimate" purpose of the Copyright Act is to "motivate the creative activity of authors and inventors for the sake of the public's benefit," and to "restrict[] competition in a market that is beyond the scope of [the] copyright" does not serve that purpose. *Omega S.A. v. Costco Wholesale Corp.*, 776

F.3d 692, 698-99 (9th Cir. 2015) (Wardlaw, J., concurring).  The purpose of the Copyright Act would be *disserved* by rewarding Oracle's protracting of this litigation with tens of millions of dollars in prejudgment interest, particularly where Rimini did not needlessly delay in opposing Oracle's overreach, as the jury verdict proves, and therefore Oracle's request should be denied.

*  *  *

In short, no prejudgment interest award is warranted or appropriate in this case.  The jury's fair market value license fully compensates Oracle for the entire scope of the adjudicated infringement, and Rimini did not needlessly delay resolution of this lawsuit.  Oracle's motion should therefore be denied.

**B.    Oracle's Copyright Interest Calculations Are Legally and Factually Flawed**

If any prejudgment interest is awarded at all (and it should not be), this Court should apply the statutory rate "equal to the weekly average 1-year constant maturity Treasury yield … for the calendar week preceding the date of judgment."  28 U.S.C. § 1961.  Courts have consistently approved use of this statutory rate in copyright infringement cases (*e.g.*, *Frank Music*, 886 F.2d at 1552-53 & n.12), and the Ninth Circuit sitting *en banc* recently affirmed that "the § 1961 rate *does* reflect market rates and thereby 'fully compensates' aggrieved parties" (*Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 836 (9th Cir. 2012) (*en banc*) (emphasis in original)).  Oracle's request that the Court apply a prime rate (relying primarily on two inapposite ERISA cases), would result in an undue windfall for Oracle—***doubling*** its money in less than a decade even though Oracle (i) lost *zero* customers and *zero* profits to Rimini, (ii) Oracle's CEO testified that competition *benefitted* Oracle, and (iii) the country experienced a financial meltdown during the relevant time period, making such a profitable investment in the real world wholly incredible.

Oracle also argues that if the Court applies the § 1961 statutory rate (rather than Oracle's excessive prime rate), the Court should ignore the statutory text and apply the § 1961 rate *not* for "the week preceding the judgment" in 2016 (28 U.S.C. § 1961), but rather for the week preceding the hypothetical negotiation in 2006, because applying the *earlier* rate will result in an award tens of millions of dollars higher for Oracle.  Judge Hamilton rejected Oracle's identical argument in *Oracle USA, Inc. v. SAP AG*, 2010 WL 5372996, at *1 (N.D. Cal. Dec. 28, 2010) ("Substantial evidence

does not support a finding that the equities of the case require a rate other than the rate set forth in § 1961"), which Oracle fails to mention.  And the *en banc* Ninth Circuit in *Price* also applied the rate "for the calendar week preceding the date of judgment," even though the injury had occurred nine years earlier.  Oracle's argument to the contrary is baseless.

### 1.    The Statutory Interest Rate Is the Appropriate Rate

"[U]nless the district court concludes that the equities demand a different rate," an award of prejudgment interest in a copyright infringement case "should be based on the fifty-two week Treasury bill rate."  *Frank Music*, 886 F.2d at 1552-53.  Accordingly, courts in this circuit that have awarded prejudgment interest in copyright infringement actions since *Polar Bear* have applied the statutory interest rate found in 28 U.S.C. § 1961.  *Oracle v. SAP*, 2010 WL 5372996, at *1; *Excelsior Coll. v. Frye*, 2007 WL 672517, at *4 (S.D. Cal. Feb. 21, 2007); *Getty*, 2014 WL 358412, at *6; *Little Genie Prods. LLC v. PHSI Inc.*, 2014 WL 3050326, at *7-8 (W.D. Wash. July 2, 2014).

Oracle has offered no valid reason for this Court to apply a different interest rate, and none of Oracle's cited cases—which involve unique and totally inapposite circumstances—are instructive on whether a different rate should apply here.  *See Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007) (ERISA case permitting a prejudgment interest rate matching plaintiff's retirement account rate of return because the insurance company's improper failure to pay disability benefits forced cancer patient to spend his "own personal funds" to pay his monthly and medical expenses); *U.S. v. Pend Oreille Cty. Pub. Utility Dist. No. 1*, 135 F.3d 602 (9th Cir. 1998) (allowing prejudgment interest rate at 90% of the prime rate where defendant public utility company rendered plaintiff's land unusable for *forty years*, and where the Federal Energy Regulatory Commission required use of the prime rate in calculating retroactive readjustment of annual charges); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (permitting use of prime rate as prejudgment interest rate because the plaintiff patent-holder, due to its poor financial condition, was required to finance its operations during the litigation with money borrowed at rates above the prime rate); *Junker v. HDC Corp.*, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008) (awarding approximately $6,000 in prejudgment interest on lost profits in patent case where infringing defendant defaulted and did not respond to request for interest); *Server Tech., Inc. v. Am.*

*Power Conversion Corp.*, 2015 WL 1505654, at *3 (D. Nev. Mar. 31, 2015) (patent case applying prime rate where, unlike here, the evidence demonstrated that continued infringement caused patent holder to "lose customers and market share"); *TMTV, Corp. v. Mass Prods., Inc.*, 645 F.3d 464, 475 (1st Cir. 2011) (applying local Puerto Rico interest rate where T-Bill rate had recently decreased (in 2009, when judgment was entered) to "combat recession" even though the lawsuit had been pending for ten years outside of the recession).  There are no such unique circumstances here, and thus no "equities" that "demand a different rate." *Frank Music*, 886 F.2d at 1552.

Nor is there any merit to Oracle's claim that the federal statutory interest rate would provide inadequate compensation.  In fact, in the primary case on which Oracle relies for this argument, the *en banc* Ninth Circuit **applied the rate in § 1961**, concluding that "the § 1961 *does* reflect market rates and thereby 'fully compensates' aggrieved parties."  *Price*, 697 F.3d at 836 (emphasis in original); Dkt. 910 at 8-10.  Thus the various out-of-circuit cases Oracle describes as "expressly approved of" by *Price* are inapposite given the Ninth Circuit's actual holding in that case.  *Id.* at 8-9.

Oracle's argument that the prime rate should apply because Rimini's "delay in payment makes [it] an 'involuntary creditor'" is likewise meritless.  Dkt. 910 at 9.  This argument would swallow the rule—consistently applied by courts in copyright infringement cases—that the rate in § 1961 should apply absent substantial evidence that "the equities demand a different rate." *Frank Music*, 886 F.2d at 1552; *Oracle v. SAP*, 2010 WL 5372996, at *1.  Indeed, under Oracle's proposed rule, *every* defendant that is found liable for *some* amount would be subject to the prime rate, making the prime rate the default rate.  But in the Ninth Circuit, the rate in § 1961 is the default rate.  *Frank Music*, 886 F.2d at 1552; *see also* Vander Veen Decl. ¶¶ 20-22.

And in any event, as discussed above, Rimini did not delay resolution of this case.  Rather, Rimini successfully defended itself against a lawsuit largely without merit, which was intended to disrupt Rimini's ability to compete against Oracle in the marketplace.  Rimini offered to settle, offered to negotiate, and offered to discuss other licensing options with Oracle, but Oracle refused.  Moreover, the Seventh Circuit cases on which Oracle primarily relies to support this argument are once again completely inapposite, involving criminal or outrageous conduct or the application of foreign law.  *E.g.*, *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir.

1989) ("The award of prejudgment interest is particularly appropriate in a case such as this where the violation was intentional, and indeed outrageous"); *Matter of Oil Spill by Amoco Cadiz Off the Coast of France on March 16, 1978*, 954 F.2d 1279, 1335 (7th Cir. 1992) (applying British law to award prejudgment interest to cost of cleanup following decades-old oil spill off the coast of England).[1]

Oracle's characterization of its proposed rate as "market-based" is likewise flawed. Oracle mischaracterizes the $35.6 million license as a "loan" that Oracle speculates Rimini would have paid in one lump sum in October 2006 to cover its use through the end of 2012. Dkt. 910 at 4. But this lump-sum approach assumes that Rimini would have agreed to pay the entire license up front, thereby placing the entire risk of the more than five-year period on Rimini. Vander Veen Decl. ¶ 35. This is an impermissible assumption in a hypothetical license scenario. *See WesternGeco LLC v. ION Geophysical Corp.*, 2012 WL 2911968, at *2 (S.D. Tex. July 16, 2012) (rejecting hypothetical license award that assumed an "unreasonable negotiating approach" and a "financially catastrophic" negotiating position); *Wakefield v. Olenicoff*, 2015 WL 1460152, at *7 (C.D. Cal. Mar. 30, 2015) (rejecting hypothetical-license damages award that was "not supported by logic or basic economic principles" such as costs, risk, opportunity cost, and supply and demand). Indeed, expert testimony at trial established that as a general practice, Oracle Database licenses are not paid all at once (9/24 Tr. 1818-19 (Dean)), and that the costs avoided by Rimini were incurred over time (9/30 Tr. 2766-67, 2769-70 (Hampton)). Oracle even admits that Mr. Hampton offered "avoided costs *for each year*." Dkt. 910 at 4 (emphasis added). Oracle also fails to use a floating rate of prejudgment interest (Vander Veen Decl. ¶¶ 24-29), fails to consider taxes (*id.* ¶¶ 30-31), and fails to properly accrue

---

[1] Likewise irrelevant are the cherry-picked loans that Oracle cites as evidence of what Rimini should pay Oracle on the fair market value license (Dkt. 910 at 11), particularly because a significant impediment to obtaining a lower interest rate during this time was Oracle's lawsuit *against* Rimini seeking hundreds of millions of dollars in damages, which Oracle publicly touted that it would recover. Declaration of Doug Zorn ¶¶ 5-6. Under Oracle's twisted logic, Oracle would be permitted to sue a competitor for hundreds of millions of dollars in damages, publicly announce that Oracle would obtain these damages thereby impacting the rates at which the competitor could borrow during the lawsuit, reject the competitor's settlement offers ████████████████████████████████ ████████████████████████, and then obtain in prejudgment interest what it failed to obtain at trial, ████████████████████████████████████████████████████████████████████████.

1   prejudgment interest (*id.* ¶¶ 32-36).  Oracle's proposed rate and calculations are therefore completely

2   unreliable.

3   　　　　Given the adequacy of compensation provided by the federal statutory interest rate in § 1961,

4   the lack of extenuating circumstances "demanding" a departure from that rate, and the many flaws

5   with Oracle's calculations and proposed rate, this Court should reject Oracle's meritless request to be

6   awarded prejudgment interest at the prime rate.

7   　　　　**2.**　　　　**The Rate Preceding the Judgment Is the Applicable Rate**

8   　　　　The weekly Treasury Bill rate set forth in § 1961 changes over time, and so Oracle has asked

9   the Court to apply an earlier rate from 2006 because to do so would increase its prejudgment interest

10  award by millions.  But there is no basis for this.  Section 1961 is clear that the applicable rate is the

11  one "***for the calendar week preceding the date of the judgment***."  28 U.S.C. § 1961(a) (emphasis

12  added).  This is why the *en banc* Ninth Circuit in *Price*, following the text of the statute, awarded

13  prejudgment interest at the rate set *the week preceding the date of the judgment*.  *Price*, 697 F.3d at

14  839 (injury occurred in 1991; award issued in 2000); *see* Brief for Respondents at 2, *Price v.*

15  *Stevedoring Services of Am.*, 697 F.3d 820 (9th Cir. 2012) (No. 08-71719), 2008 WL 4133467, at *2

16  (interest calculated "based on the rate in effect on October 25, 2000").  And in *Oracle v. SAP*, Judge

17  Hamilton also applied the prejudgment interest rate at *the week preceding the date of the judgment*,

18  rejecting the identical argument Oracle asserts here.  *Oracle v. SAP*, 2010 WL 5372996 at *1.

19  　　　　Oracle devotes only a footnote to its attempt to circumvent the clear text of the statute.  Dkt.

20  910 at 7 n.5.  And the two cases buried in that footnote are not copyright cases, predate *Price*, and

21  both involve criminal or egregious behavior.  In *U.S. v. Gordon*, 393 F.3d 1044 (9th Cir. 2004), the

22  court awarded prejudgment interest under the Mandatory Victims Restitution Act of 1996 at the

23  federal rate in place preceding defendant's criminal embezzlement of millions of dollars after the

24  defendant's guilty plea to wire fraud and insider trading.　And *Nelson v. EG&G Energy*

25  *Measurements Grp., Inc.*, 37 F.3d 1384 (9th Cir. 1994), was an ERISA case involving the retirement

26  funds of 44 employees who took an early retirement option offered by the defendant employer.  The

27  employees disputed the valuation of their retirement accounts, which were distributed to them in a

28  lump sum after their early retirement.  The employees successfully contended that their accounts

should have been valued on September 30, 1987, prior to the stock market crash on October 19, 1987, whereas the employer claimed the correct valuation date was after the crash (which was the date the employer used to calculate the employees' disbursements).

Neither *Gordon* nor *Nelson* creates a rule that prejudgment interest must be calculated utilizing the Treasury yield rate preceding the alleged wrongdoing. *See Sabbatino v. Liberty Life Assur. Co. of Boston*, 2003 WL 23932613, at *2, n.5 (N.D. Cal. Dec. 9, 2003) (noting that "*Nelson* recognizes that a court only has discretion to stray from the scheme set forth in 28 U.S.C. § 1961(a) when the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate," and when a court "makes no such finding […], the § 1961(a) calculation method is used") (quotations and citation omitted); *Ruff v. Cty. of Kings*, 2009 WL 4572782, at *5-6 (E.D. Cal. Nov. 30, 2009) (holding it was "legally incorrect" to interpret *Gordon* as "requir[ing]" the application of "the rate in effect at the time of the wrongful conduct"). Rather, the deviations from the express statutory requirements of § 1961 were justified by the egregious harm suffered by the plaintiffs in both cases. *Id.*; *see also Frank Music*, 886 F.2d at 1552-53 & n.12 (holding "the same rate on which postjudgment interest is based" should apply "unless the district court concludes that the equities demand a different rate").[2]

It is telling that Oracle fails to cite a single copyright infringement case providing for prejudgment interest at the Treasury yield rate preceding the alleged wrongdoing, rather than preceding the judgment. Indeed, Oracle does not even cite *Oracle v. SAP*, a case in which Oracle itself unsuccessfully sought prejudgment interest at the weekly average one-year constant maturity Treasury yield calculated separately for each year back to the date of the hypothetical license negotiation. *See Oracle v. SAP*, 2010 WL 5372996, at *1. The court rejected this approach out of hand, holding that "[s]ubstantial evidence does not support a finding that the equities of the case require a rate other than the rate set forth in § 1961," and thus "prejudgment interest shall be calculated at [the § 1961 rate] for the calendar week preceding the date of the judgment." *Id.*

---

[2] Oracle's argument (Dkt. 910 at 7 n.5) is also undermined by its request for prejudgment interest on the Nevada hacking claim, which is also governed by a statute setting interest "***immediately preceding the date of judgment***." Nev. Rev. Stat. § 17.130(2) (emphasis added).

1  (quotations omitted); *see also Price*, 697 F.3d at 820 (affirming § 1961 interest rate in effect at time

2  of judgment); *Saavedra v. Korean Air Lines Co., Ltd.*, 93 F.3d 547, 555 (9th Cir. 1996) (affirming

3  district court's award of "prejudgment interest at the T-Bill rate just prior to judgment"); *Excelsior*

4  *Coll.*, 2007 WL 672517, at *4 (copyright case awarding prejudgment interest "at the rate provided in

5  28 U.S.C. § 1961(a)"); *Galvin v. Provident Life and Accident Ins. Co.*, 2010 WL 3619572, at *6

6  (N.D. Cal. Sept. 13, 2010) (awarding prejudgment interest at "the interest rate prescribed by 28

7  U.S.C. § 1961 … [which] provides that the interest shall be calculated … at a rate equal to the weekly

8  average 1-year constant maturity Treasury yield … for the calendar week preceding the date of the

9  judgment," which was 0.36%).[3]

10                                                         * * *

11         For the reasons set forth in Section IV.A., Rimini respectfully submits that no award of

12  prejudgment interest is appropriate in this case.  If, however, the Court were to conclude that

13  prejudgment interest should be awarded, then it should be at the statutory rate for the calendar week

14  preceding the judgment, which the parties would submit with the joint proposed judgment form

15  following disposition of all post-trial motions.[4]  At the current statutory rate, the only possible award

16  of prejudgment interest would be $1,768,006.  Vander Veen Decl. ¶¶ 11, 19, 23.

17

18  _____

19  [3]  Oracle expressly states that it "conservatively seeks compounding on only an annual basis" (Dkt. 910 at 7-8), which is also the basis provided for in 28 U.S.C. § 1961 ("Interest shall be … compounded annually").  In any event, the two cases Oracle cites about compounding on a different

20  basis are not copyright cases, predate *Price*, and are otherwise wholly inapposite.  *Blankenship*, 486 F.3d at 627-28 (ERISA case in which insurance company's improper failure to pay disability benefits

21  forced patient to spend personal funds to pay his monthly and medical expenses); *Studiengeselsschaft Kohle v. Dart Industries, Inc.*, 862 F.2d 1564, 1568 (Fed. Cir. 1988) (patent case in which the judge

22  relied on the patentee's "usual licensing approach" to assess a reasonable royalty to be paid quarterly and compounding interest on that basis).

23  [4]  The Court has ordered that final judgment will not be entered until the Court has ruled on all post-

24  trial motions—including Oracle's motion for an injunction (Dkt. 900), Oracle's motion for attorneys' fees and costs (Dkt. 917), Rimini's renewed motion for judgment as a matter of law (Dkt. 913, 915),

25  and Oracle's motion for prejudgment interest (Dkt. 910).  *See* Dkt. 893 at 3 ("final judgment is to be entered upon ruling of pending claims for Injunctive Relief and other post-trial motions"); Dkt. 899 at

26  3 (the parties' joint stipulation listing post-trial motions, including renewed motions for judgment as a matter of law, and "requests for [] injunctive relief, prejudgment interest, and attorneys' fees").  The

27  parties agreed to submit a joint proposed final judgment form "within 5 days of disposition of all post-trial motions" (Dkt. 899 at 2; Dkt. 903 (order approving joint stipulation)), and that proposal will

28  calculate the precise amount of prejudgment interest, if any, to include in the judgment.

Gibson, Dunn &
Crutcher LLP

**C.      Oracle Is Not Entitled to Interest on the State Hacking Damages Awards**

Oracle also seeks $4,039,560 in prejudgment interest on the California hacking claim award, or, in the alternative (and because Oracle still has no principled basis upon which to apply either state's law), $4,544,505 in prejudgment interest on the Nevada hacking claim award.  But no prejudgment interest is available with respect to either hacking claim because application of these statutes would be unconstitutional as applied to the conduct in this case, because neither statute allows for the recovery of lost profits, and because this aspect of the jury's verdict is not supported by legally sufficient evidence, as described in Rimini and Ravin's pending Rule 50(b) motion.  *See* Dkt. 913.

Even if these claims (and the damages award) survive Rule 50, Oracle's request for prejudgment interest on these claims fails as a matter of state law for the reasons set forth below.  *See Lewis C. Nelson & Sons v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 69 (2001) ("An award of prejudgment interest is not automatic"); *Stickler v. Quilici*, 98 Nev. 595, 596-97 (1982) (reversing prejudgment interest award where it was "impossible to determine what portion of the total verdict was for past damages" because Nevada law "disallows prejudgment interest for any amount representing future damages").[5]

**1.      Prejudgment Interest Is Unavailable for the California Damages Award**

Under California Civil Code section 3287, which applies to Oracle's California hacking claim (*Currie v. Workers' Comp. Appeals Bd.*, 24 Cal. 4th 1109, 1115 (2001)), only damages that are "certain, or capable of being made certain by calculation" may accrue prejudgment interest.  Cal. Code Civ. Proc. § 3287(a).  The "test for recovery of prejudgment interest under § 3287(a) is whether [the] *defendant* actually knows the amount owed or from reasonably available information could the defendant have computed that amount."  *Duale v. Mercedez-Benz USA, LLC*, 148 Cal. App. 4th 718, 728-29 (2007) (emphasis in original).   "[W]here the amount of damage, as opposed to the

---

[5]   In the event that any prejudgment interest is awarded on the state hacking claims at all, Oracle's prejudgment interest calculations suffer from some of the same flawed, speculative, and unreliable calculations and assumptions as its calculations on the fair market value license, and should be rejected.  *See, e.g.*, Vander Veen Decl. ¶¶ 34, 36.

1   determination of liability, depends upon a judicial determination based upon conflicting evidence,"

2   section 3287 "does not authorize prejudgment interest." *Id.* "Thus, where the amount of damages

3   cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate." *Id.*

4   (quotations and citations omitted).

5   Here, Rimini was never aware that Oracle sought $14.4 million in lost profits for automated

6   downloading from November 2008 to January 2009 until Oracle manufactured that number on the fly

7   at trial. Instead, Oracle had previously disclosed *only* a request for $27,000 in investigation costs

8   from that conduct (and $32 million in lost profits for Siebel support customers for a different set of

9   conduct, which the jury rejected). *E.g.*, Dean Rpt. at 26-27 (Table 5); Dkt. 739 at 14. Oracle's $14.4

10  million lost profits from Rimini's automated downloading from November 2008 to January 2009

11  emerged for the first time at trial, and was drawn from a subset of Oracle's *copyright* lost profits

12  damages analysis. 9/24 Tr. 1832:21-1833:19. No prejudgment interest is warranted on the $14.4

13  million damages award because Rimini had no way to anticipate that Oracle would suddenly tell the

14  jury that it was owed $14.4 million in duplicative copyright lost profits damages. *See* Cal. Code Civ.

15  Proc. § 3287(a); *Duale*, 148 Cal. App. 4th at 728-29; *Lewis*, 90 Cal. App. 4th at 69 ("The usual

16  prohibition against such interest is based upon the rationale that it is unreasonable to expect a

17  defendant to pay a debt before he or she becomes aware of it or is able to compute its amount").

18  Contrary to Oracle's misleading assertions (Dkt. 910 at 13), neither of its experts disclosed or

19  even hinted at the $14.4 million number prior to trial. Indeed, Oracle cites only Ms. Dean's *trial*

20  *testimony* (*id.* at 13:11-13 (citing Tr. 1831:3-19, 1833:1-19)), which does not mention anything

21  disclosed pretrial. Nor was there a way for Rimini to independently arrive at the $14.4 million

22  number—or even to approximate it—from Oracle's expert reports. Although Oracle halfheartedly

23  pieces together various portions of the Hicks and Dean reports to support its argument that the figure

24  was ascertainable before trial, it does not contend (because it cannot) that the number is actually

25  found in those reports. Instead, Oracle takes the customer IDs identified by Hicks, and then looks up

26  those customers in Dean's copyright infringement damages analysis to conjure up a damages figure

27  for automated downloading, even though the expert reports did not allude to this methodology. *See*

28  9/24 Tr. 1832:21-1833:19. Nor do the expert reports explain how Oracle in fact lost profits as a

1   result of the automated downloading that occurred from November 2008 to January 2009 because, of

2   course, it did not.  In any event, it would have made no sense for Rimini to anticipate that Oracle

3   would use the duplicative *copyright* damages analysis to calculate hacking claim damages, but that is

4   what Oracle purports to have done here.  Accordingly, even if the reports "identified all of the

5   information necessary to calculate the lost profits that the jury awarded," as Oracle contends (Dkt.

6   910 at 13), at most that information was scattered in pieces in different reports with no suggestion

7   that Oracle would assemble the damages figure for the first time in front of the jury the way it did.

8   Thus, "the amount of damages [could] not be resolved except by verdict," and no prejudgment

9   interest is available.  *Duale*, 148 Cal. App. 4th at 729.

10   Oracle also argues that Rimini has not challenged its damages calculation.  Dkt. 910 at 13.

11   That is patently false.  Rimini has not contested the amount of $27,000 of investigation costs (for

12   which Rimini is not liable under the law), but Rimini has indeed challenged every aspect of the $14.4

13   million of lost profits damages award, including its legal availability and lack of any support in the

14   evidence presented at trial.  *See* Dkt. 913.

15   Oracle's cited authorities note only that a dispute as to the *amount* of damages would not

16   necessarily preclude an award of prejudgment interest—those cases do not address the situation

17   where, as here, the very damages calculation *methodology* is not only disputed, but patently

18   fabricated.  In fact, all of Oracle's cited cases involved undisputed and concretely established

19   damages calculation methodologies.  *See Leff v. Gunter*, 33 Cal. 3d 508, 519 (1983) (noting "there is

20   essentially no dispute between the parties concerning the basis of computation of damages" and

21   describing plaintiff's damages award as a matter of "simple mathematics"); *Sierra Pac. Power Co. v.

22   Hartford Steam Boiler Inspection and Ins. Co.*, 2014 WL 6883056, at *5 (D. Nev. Dec. 5, 2014)

23   (plaintiff's damages "were capable of calculation before trial because the parties have consistently

24   agreed that [plaintiff] would recover the replacement cost if it rebuilt the dam, and the [actual cash

25   value] if it did not rebuild the dam"); *Pet Food Express Limited v. Royal Canin USA, Inc.*, 2011 WL

26   6140886, at *3-4 (N.D. Cal. Dec. 8, 2011) (holding that "it is true that many portions of the damages

27   at issue were disputed and uncertain," but the portion for which plaintiff sought prejudgment interest

28   was ascertainable because that portion consisted of past "payments already owed from 2008-2010,

based on data in [defendant's] possession," and because "there was no dispute between the parties as to the source of the [damages] numbers or how to calculate them").   Those cases stand in sharp contrast to the speculative, undisclosed, and illogical calculations here.

### 2.   Prejudgment Interest Is Unavailable for the Nevada Damages Award

Oracle's Nevada hacking claim suffers from the same defects as the California claim.  The liability finding is equally unsupportable and the $14.4 million award of lost profits equally lacks any basis in the law or evidence at trial.  Thus, Oracle cannot recover prejudgment interest on this claim, including on the $14.4 million award of lost profits.

In addition, prejudgment interest is unavailable under Nevada law because the applicable Nevada statute bars prejudgment interest on any award of future damages.  *See* Nev. Rev. Stat. § 17.130; *Stickler*, 98 Nev. at 596-97 ("NRS 17.130 disallows prejudgment interest for any amount representing future damages").   Where "it is impossible to determine what part of the verdict represented past damages" as opposed to "future damages," prejudgment interest must be denied. *Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 428-29 (2006); *Stickler*, 98 Nev. at 596-97 (same).  Here, it is impossible to determine whether the $14.4 million figure includes future damages because Oracle never disclosed a methodology explaining how it lost profits as a result of automated downloading from November 2008 to January 2009.  This very large figure—greater than ten million dollars for three months of sporadic activity—suggests that Oracle requested that the jury award it future lost profits.  Thus, because the "verdict form [did] not distinguish between past and present damages," and because the $14.4 million figure may include future damages, "[this] court cannot award prejudgment interest."  *Shuette v. Beazer Homes Holding Corp.*, 121 Nev. 837, 865 (2005).

Moreover, even if Oracle could recover prejudgment interest on its Nevada hacking claim (which it cannot), Oracle would not be entitled to any prejudgment interest after ████████████████████████████████████████.  *See* Nev. Rule Civ. P. 68(f) ("If the offeree rejects an offer and fails to obtain a more favorable judgment … the offeree cannot recover … interest for the period after service of the offer and before the judgment").

Gibson, Dunn & Crutcher LLP

OPPOSITION TO MOTION FOR PREJUDGMENT INTEREST

1

## V.    CONCLUSION

2      Oracle's motion for prejudgment interest should be denied in its entirety.

3

4    Dated: December 14, 2015                    GIBSON, DUNN & CRUTCHER LLP

5

6                                                By:   /s/ Blaine H. Evanson
                                                      Blaine H. Evanson
7
                                                Attorney for Defendants
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28