BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KIERAN P. RINGGENBERG (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com

MORGAN, LEWIS & BOCKIUS, LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market Street
Spear Street Tower
San Francisco, CA  94105
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  (650) 506-4846
Facsimile:  (650) 506-7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs*
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST**<br><br>**[REDACTED]**<br><br>Judge:  Hon. Larry R. Hicks |

ORACLE'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1
ARGUMENT ..................................................................................................................................... 2
I. THE COURT SHOULD AWARD PREJUDGMENT INTEREST ON ORACLE'S COPYRIGHT CLAIM. ................................................................................. 2
  A. An Award of Prejudgment Interest Will Serve the Copyright Act's Purposes. ............................................................................................................. 2
    1. Prejudgment Interest Is Necessary to Compensate Oracle and Deter Infringers. ......................................................................................... 2
    2. Rimini's Efforts to Shift Blame for the Delay in Payment Fail. ..................... 4
  B. Rimini Miscalculates the Default Prejudgment Interest Figure. ............................ 5
  C. The Evidence Supports Using the Prime Rate Instead of the Treasury Rate. ......................................................................................................................... 7
II. ORACLE IS ENTITLED TO PREJUDGMENT INTEREST ON THE JURY'S DAMAGES AWARD ON THE STATE-LAW COMPUTER CLAIMS. ......................... 8
  A. The Damages Award Was Calculable Within the Meaning of California's Prejudgment Interest Statute. ................................................................ 9
  B. Prejudgment Interest Is Proper Under Nevada Law. ............................................ 11
  C. Rimini Cannot Reduce Prejudgment Interest on the NCCL Damages by Resorting to a State Procedural Rule. ................................................................... 11
CONCLUSION ............................................................................................................................... 13

**TABLE OF AUTHORITIES**

**CASES**

*Baker v. Garden Grove Med. Invs., Ltd.,*
   306 Fed. App'x 393 (9th Cir. 2009)..................................................................................... 11

*Blanton v. Anzalone,*
   760 F.2d 989 (9th Cir. 1985)................................................................................................. 6

*Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.,*
   No. 11-CV-00637 AJB (WVG), 2014 WL 29008 (S.D. Cal. Jan. 2, 2014) ............................ 3

*City of Clovis v. Cty. of Fresno,*
   222 Cal. App. 4th 1469 (2014) ............................................................................................ 11

*Diaz v. Kubler Corp.,*
   785 F.3d 1326 (9th Cir. 2015).............................................................................................. 8

*Evanston Ins. Co. v. OEA, Inc.,*
   566 F.3d 915 (9th Cir. 2009)................................................................................................. 9

*Ferrellgas, Inc. v. Am. Premier Underwriters, Inc.,*
   79 F. Supp. 2d 1160 (C.D. Cal. 1999) ................................................................................. 11

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,*
   886 F.2d 1545 (9th Cir. 1989)............................................................................................... 3

*Highlands Ins. Co. v. Continental Cas. Co.,*
   64 F.3d 514 (9th Cir. 1995)................................................................................................... 9

*Hopi Tribe v. Navajo Tribe,*
   46 F.3d 908 (9th Cir. 1995)................................................................................................... 4

*Leff v. Gunter,*
   33 Cal. 508 (1983) ........................................................................................................... 9, 10

*Levy-Zentner Co. v. S. Pac. Trans. Co.,*
   74 Cal. App. 3d 762 (1st Dist. 1977) ............................................................................... 9, 10

*Lewis C. Nelson & Sons v. Clovis Unified Sch. Dist.,*
   90 Cal. App. 4th 64 (2001) ................................................................................................... 8

*Little Genie Productions LLC v. PHSI Inc.,*
   No. 2:12-cv-00357-RSM, 2014 WL 3050326 (W.D. Wash. July 2, 2014) ........................... 3

*Matter of Oil Spill by Amoco Cadiz,*
   954 F.2d 1279 (7th Cir. 1992)............................................................................................... 7

*Nelson v. EG&G Energy Measurements Group, Inc.,*
   37 F.3d 1384 (9th Cir. 1992)..................................................................................... 1, 5, 6, 7

*Oracle USA, Inc. v. SAP AG*,
   No. C 07-1658 PJH, 2010 WL 5372996 (N.D. Cal. Dec. 28, 2010) ..................................... 6, 7

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ................................................................................................ 2, 3

*Price v. Stevedoring Services of America, Inc.*,
   697 F.3d 820 (9th Cir. 2012) ................................................................................................ 6, 7

*Ruff v. County of Kings*,
   No. CV-F-06-651, 2009 WL 4572782 (E.D. Cal. 2009) ........................................................... 7

*Sabatino v. Liberty Life Assurance Co. of Boston*,
   No. 02-1891, 2003 WL 23932613 (N.D Cal. Dec, 9, 2003) ....................................................... 7

*Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   64 F.3d 1282 (9th Cir. 1995) ..................................................................................................... 10

*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*,
   No. 03:04-CV-00034-LRH–RAM, 2014 WL 6883056 (D. Nev. Dec. 5, 2014) .................. 9, 11

*Societe Civile Succession Richard Guino v. Renoir*,
   305 Fed. App'x 334 (9th Cir. 2008) ............................................................................................ 3

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ................................................................................................... 12

*TMTV, Corp. v. Mass Productions, Inc.*,
   645 F.3d 464 (1st Cir. 2011) ....................................................................................................... 3

*United States v. Gordon,*
   393 F.3d 1044 (9th Cir. 2004) ..................................................................................................... 6

*W. Virginia v. United States*,
   479 U.S. 305 (1987) ..................................................................................................................... 3

*Walsh v. Kelly*,
   203 F.R.D. 597 (D. Nev. 2001) ................................................................................................. 12

*Western Pacific Fisheries v. S.S. President Grant*,
   730 F.2d 1280 (9th Cir. 1984) ..................................................................................................... 5

*Williams v. Bridgeport Music, Inc.,*
   No. LA CV13–06004 JAK (AGRx), 2015 WL 4479500 (C.D. Cal. July 14, 2015) .................. 3

**STATUTES**

California Civil Code
  Section 3287 .................................................................................................................... 11
  Section 3287(a) ............................................................................................................. 9, 10

Nevada Revised Statutes
  Title 2, Chapter 17, Section 17.130(2) ............................................................................. 11

United States Code
  Title 28, Section 1961 .................................................................................................... 5, 6
  Title 28, Section 6621 ........................................................................................................ 6

**RULES**

Federal Rules of Civil Procedure
  Rule 68(a) ........................................................................................................................ 12

Nevada Rules of Civil Procedure
  Rule 68(c)(3) ................................................................................................................... 12
  Section 68(f) .................................................................................................................... 12

**INTRODUCTION**

Defendants Rimini Street, Inc. and Seth Ravin (together, "Rimini") once again seek to sidestep their obligations to Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle") for the illegal conduct found by the jury in this case.

On Oracle's copyright claim, the jury awarded damages – at Rimini's invitation – on a hypothetical license theory that was premised on a negotiation and payment by Rimini to Oracle no later than October 2006, by which time Rimini was infringing all of Oracle's relevant products. But Oracle was not paid in 2006; Rimini kept the benefits of the software plus the money it owed as a license fee for nearly a decade. Under settled law, an award of prejudgment interest is appropriate to serve the Copyright Act's purposes by compensating Oracle and deterring infringers.

Rimini argues that interest should be awarded at today's near-zero rates, contrary to controlling Ninth Circuit law holding that the default rate is the rate at the time payment should have been made, not nearly a decade later. *Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391-92 (9th Cir. 1992). Rimini also ignores the unique facts of this case, including Rimini's riskiness as a debtor and the high interest rates it actually paid on loans – factors calling for the application of a rate higher than the essentially risk-free Treasury rate.

On Oracle's state-law computer abuse claims, Defendants likewise ignore controlling law and the evidence on which the jury reached its verdict.[1]

Prejudgment interest should be awarded in the amounts of $38,628,964 to Oracle International and $2,461,560 to Oracle America. Oracle's Motion for Prejudgment Interest, Dkt. No. 910 (hereafter "Motion" or "Mot.") at 2.

---

[1] Defendants also submitted a lengthy declaration from Thomas Vander Veen, Dkt. # 965, which almost exclusively constitutes legal argument, most of which is not referenced, or referenced only in passing, in Defendants' brief. Oracle objects to the declaration as improper legal opinion and in violation of Local Rule 7-4.

1
ORACLE'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST

## ARGUMENT

**I.     THE COURT SHOULD AWARD PREJUDGMENT INTEREST ON ORACLE'S COPYRIGHT CLAIM.**

Disregarding the reality that prejudgment interest is necessary to compensate Oracle for the time-value of money in this case, Rimini wrongly argues that the passage of time between the October 2006 hypothetical negotiations and the date of the judgment should simply be ignored. Rimini also incorrectly asserts that, if any prejudgment interest is awarded, the interest rate should be the current, near-zero federal Treasury rate, even though Rimini could never have obtained a loan at such a low rate in 2006.

**A.     An Award of Prejudgment Interest Will Serve the Copyright Act's Purposes.**

Misstating the law and the facts, Rimini suggests that prejudgment interest in copyright cases is only allowed where infringement is "undisputed" and the defendant was the sole cause of "needless delay." Opposition to Motion for Prejudgment Interest, Dkt. No. 963 (hereafter "Opposition" or "Opp.") at 4, 7-10 (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 n.12 (9th Cir. 2004)). Prejudgment interest is available anytime it will serve the Copyright Act's purposes, not just in cases of "undisputed" infringement. Regardless, the Court already found there was no genuine dispute as to much of the infringement, Dkt. Nos. 474 & 476, and Rimini recanted at trial the factual assertions that led the Court to deny summary judgment as to the rest. Dkt. No. 922 at 2-6.

**1.     Prejudgment Interest Is Necessary to Compensate Oracle and Deter Infringers.**

*Polar Bear* holds that prejudgment interest in copyright cases "hinges on whether such an award would further the [Copyright Act's] purpose." *Id.* at 718. While "a case involving undisputed copyright infringement" and "needless delay" by defendant would qualify, those are not the sole circumstances in which an award would further the Copyright Act's purpose.[2]

---

[2] The phrase "undisputed copyright infringement" in *Polar Bear* describes that case's appellate procedural posture on appeal: after proving the defendant's liability for copyright infringement in
(Footnote Continues on Next Page)

1  "Prejudgment interest is 'uniquely tailored' to compensate the copyright holder for 'harm caused by delay in making reparations.'" *Little Genie Productions LLC v. PHSI Inc.*, No. 2:12-cv-00357-RSM, 2014 WL 3050326 (W.D. Wash. July 2, 2014) (quoting *Polar Bear*, 384 F.3d at 718). "It 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *Id.* (quoting *W. Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987)). "'Prejudgment interest dating from the infringements compensated the plaintiff for the time value of monies it should have had—just as if a contract debt had not been paid on time.'" *Id.* (quoting *TMTV, Corp. v. Mass Productions, Inc.*, 645 F.3d 464, 474 (1st Cir. 2011)); *see also* Mot. at 6 (collecting cases).[3]

Rimini does not dispute that the jury's award of damages based on a fair market value license was premised on negotiations at the time infringement began, Mot. at 5 (citing Instruction No. 33), nor does Rimini dispute that its infringement of all relevant products began no later than October 2006. Mot. at 6 (collecting evidence). Nor can Rimini dispute that Rimini has still never paid a penny of that amount, nearly 10 years later. Allowing parties like Rimini to benefit from delay in payment of license fees would "systematically undercompensate[] victims and underdeter[] putative offenders." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1551 (9th Cir. 1989).

In tacit acknowledgement of this law, Rimini argues that the jury's award "fully compensates" Oracle and that the jury may have "take[n] into account the time value of money."

---

(Footnote Continued from Previous Page)
a first trial and obtaining a copyright damages award in a re-trial limited to that issue, only the damages award was challenged on appeal. *Polar Bear* at 705.

[3] Rimini's reliance on *Societe Civile Succession Richard Guino v. Renoir,* 305 Fed. App'x 334 (9th Cir. 2008), is misplaced. The cursory treatment of prejudgment interest in that unpublished case focused on the deferential standard of review in light of the unique circumstances of "confusion" regarding whether the material at issue was "in the public domain." *Id.* at *338-39; *see also Williams v. Bridgeport Music, Inc.,* No. LA CV13–06004 JAK (AGRx), 2015 WL 4479500, at *46 (C.D. Cal. July 14, 2015) (rejecting the same argument from a defendant that also cited *Societe Civile*). And in *Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.,* No. 11-CV-00637 AJB (WVG), 2014 WL 29008 (S.D. Cal. Jan. 2, 2014), the jury awarded statutory damages in an amount which the Court held sufficiently "served[] the purposes of the Copyright Act in encouraging private enforcement and deterring infringement." *Id.* at *10.

Opp. at 6-7.  Rimini cites Jury Instruction No. 33, but ignores that it allowed the jury to consider evidence of facts "after the hypothetical negotiations *only* to the extent that it provides insight into the expectations of the parties at the time infringement first began, or insight into the amount a willing buyer would have been reasonably required *to pay a willing seller at the time of the infringement*."  Dkt. No. 880 at 41 (emphases added).  That instruction required the jury to assume payment was made "at the time of the infringement," not nearly a decade later.

No instruction told the jury to make any adjustment for the time value of money.  No party argued that the jury should take the time value of money into account.  No expert opined about it.  Rimini nevertheless speculates that "perhaps" the jury increased the damages to account for Oracle's reinvestment of revenue because the jury awarded more than what Rimini's expert recommended.  Opp. at 7.  Rimini ignores admissions that the inputs into Mr. Hampton's avoided costs calculations were artificially low,[4] and that Rimini's finance team created an avoided costs calculation that was far greater than what Mr. Hampton offered.  Tr. 2899:8-2903:4 (Hampton).  That evidence, combined with Instruction No. 33's admonition to consider only what a willing buyer would pay "at the time of infringement," lead to the indisputable conclusion that the jury awarded damages assuming payment in 2006.  It is therefore for the Court to address the delay in payment considering that "money has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered" so long ago.  *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 922 (9th Cir. 1995).

        **2.**     **Rimini's Efforts to Shift Blame for the Delay in Payment Fail.**

Rimini absurdly argues that the delay in payment was the result of "Oracle's protracting this litigation."  Opp. at 11.  To begin, the length of this litigation derives fundamentally from

---

[4] For example, Hampton made false assumptions about customers' remote environments and their actual use at Rimini.  Tr. 2909:3-25, 2912:4-21 & Tr. 2926:2-8 (Hampton).  Hampton assumed Indian engineers would cost $19,000 annually (Tr. 3047:5-8 (Hampton)) when in fact they would have cost $60,000–$75,000 annually (Tr. 3049:24-3050:1 (Hampton); PTX 2146; PTX 2153; PTX 1460; Tr. 791:21-24 (Ravin)).  Hampton ignored increased headcounts for Siebel and JD Edwards, and instead considered only PeopleSoft.  Tr. 2836:9-23, 3038:6-8 (Hampton).  Hampton ignored Rimini's actual experience in the labor market in order to opine that cheap qualified labor was plentiful.  Tr. 2903:13-22 (Hampton); Tr. 2188:24-2191:20) (Benge).

1  Defendants' deceit and other misconduct. As shown in Oracle's Motion for Attorneys' Fees and
2  Costs, Defendants lied about and concealed their conduct, destroyed evidence, and misled this
3  Court into denying summary judgment (as to the Siebel and J.D. Edwards products) with factual
4  assertions Defendants recanted at trial. Dkt. 922 at 2-6. Those misdeeds added years to the life
5  of this case by requiring extensive, technical fact and expert discovery and a trial on copyright
6  liability issues. *Id.* at 10-11.[5]
7  Rimini's attempt to place the blame at Oracle's feet misrepresents the record. Rimini
8  claims, for example, that "Oracle spent multiple days at trial presenting evidence" on its Federal
9  Computer Fraud and Abuse Act claim "before finally withdrawing it." Opp. at 8. Rimini
10 ignores that every bit of evidence on that claim developed in discovery and put on at trial
11 supported Oracle's state computer abuse claims, which Oracle won. Similarly, Oracle's
12 withdrawal of some other legal theories, and the jury's decision to side with Defendants on some
13 issues, fails to show that Oracle somehow made the litigation last longer than it should have. To
14 the contrary, the evidence underlying all the issues was substantially the same as the evidence on
15 the core copyright and computer abuse issues on which Oracle prevailed. Dkt. No. 922 at 13-15.

16  **B.    Rimini Miscalculates the Default Prejudgment Interest Figure.**

17  Rimini says if prejudgment interest is awarded, the starting point is the Treasury rate "for
18 the calendar week preceding the date of judgment," not the rate applicable when the payment
19 should have been made. Opp. at 11 (quoting 28 U.S.C. § 1961). Rimini glosses over *Nelson v.*
20 *EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384 (9th Cir. 1992), which expressly rejects
21 Rimini's argument:

22  > EG & G argues that the pre-judgment interest rate should have been calculated at
   > the 52-week Treasury bill rate as of the time of judgment, which was 3.51
23  > percent. This does not correspond with the approach taken in *Western Pacific*
   > *Fisheries* [*v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984)]. In that
24  > case, insurance underwriters had paid out funds for which they sought

---

[5] Rimini attempted even more delay. For example, Rimini sought on the eve of trial to
26 consolidate this case with a case Rimini filed in late 2014, thereby delaying Rimini's day of
reckoning by years more. Dkt. No. 669 (Hicks, J.) ("In the present action, consolidation would
27 lead to an unreasonable delay of trial, as this case is currently set for trial in September and has
been pending on the court's docket since 2010.").
28

> reimbursement. The interest rate utilized for the pre-judgment interest was the average 52-week Treasury bill rate operative immediately prior to the date of payment by the underwriters. This makes good sense because pre-judgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment. It is the Treasury bill rate during this interim that is pertinent, not the Treasury bill rate at the time of judgment. The Treasury bill rate at the time of judgment has no bearing on what could have been earned prior to judgment.

*Id.* at 1391-92; *see also United States v. Gordon,* 393 F.3d 1044, 1058 n.12 (9th Cir. 2004) ("We have held that the applicable prejudgment interest rate is the one in effect immediately prior to the date of the wrongful conduct which caused a plaintiff's loss").

Rimini says *Nelson* depends on its unique facts, Opp. at 15, but the Ninth Circuit explained that the district court in *Nelson* made "no findings" as to prejudgment interest, and therefore applied the default rate, not a different rate based on the specific facts of the case. *Nelson*, 37 F.3d at 1391 (requiring use of default rate "unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate"). Indeed, panels before and after *Nelson* applied the same rule to different facts. *E.g.*, *Gordon*, 393 F.3d at 1058 n.12; *Blanton v. Anzalone*, 760 F.2d 989, 993 (9th Cir. 1985).

Rimini repeatedly suggests that *Price v. Stevedoring Services of America, Inc.*, 697 F.3d 820 (9th Cir. 2012) (*en banc*) holds to the contrary. Opp. at 11, 15. However, no party in *Price* raised the issue of which date to use in identifying the interest rate, presumably because the applicable Treasury rates at the time of the injury (October 2, 1991, 5.5% ) and the time of the judgment (October 25, 2000, 5.94%) were not much different. Ringgenberg Reply Decl. ¶¶ 3-5. Instead, the *Price* parties disputed whether the "always higher" rate applicable to past-due tax payments under 28 U.S.C. § 6621 should apply instead. *Price*, 697 F.3d at 834. That is the issue the Ninth Circuit considered and decided. *Id.* at 834-39 ("we hold that § 1961, not § 6621, is to be used to calculate interest on past due payments under the Longshore Act"). There is no suggestion in *Price* that the court intended to discredit *Nelson*'s considered holding.

The other authorities cited by Rimini similarly fail to overcome *Nelson*. The one-page order in *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, 2010 WL 5372996 (N.D. Cal. Dec. 28, 2010), fails to consider *Nelson* and rejected Oracle's request to provide a brief on the

6
ORACLE'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST

issue. *Id.* at *1. Likewise, in *Ruff v. County of Kings*, No. CV-F-06-651, 2009 WL 4572782 (E.D. Cal. 2009) the court did not consider *Nelson* at all and merely says that the Court has discretion to set the interest rate. *Id.* at *6. In *Sabatino v. Liberty Life Assurance Co. of Boston*, No. 02-1891, 2003 WL 23932613 (N.D Cal. Dec, 9, 2003), the court in its discretion rejected the plaintiff's request for a flat 10% interest rate based on the "equities of that particular case" pursuant to *Nelson*, and did not address *Nelson*'s holding about which date to use to calculate the prejudgment interest rate. *Id.* at *2.

Accordingly, the default rate for federal prejudgment interest – that is, the rate applicable unless the Court "finds, on substantial evidence, that the equities of that particular case require a different rate," *Nelson*, 37 F.3d at 1391 – is 5.07%, yielding interest of $19,959,532. Mot. at 7-8.

### C. The Evidence Supports Using the Prime Rate Instead of the Treasury Rate.

Oracle showed in its motion that the facts of this case support the use of a higher rate to account for the substantial risk of non-payment inherent in Rimini making Oracle an "'involuntary creditor'" since 2006. Mot. at 9-11 (quoting *Price*, 697 F.3d at 843 (quoting *Matter of Oil Spill by Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir. 1992)). Rimini says this exception would "swallow the rule" and that the Treasury rate would "fully compensate aggrieved parties." Opp. at 13. Of course, that "rule" is just a default that Oracle can (and has) overcome with an evidentiary showing. *Nelson*, 37 F.3d at 1391. For example, Rimini ignores that, in 2006, Rimini was (and continued to be) a highly risky, unprofitable venture, Mot. at 11 (collecting evidence), placing Oracle under extraordinary risk of non-payment absent when a plaintiff is collecting from government entities, insurance companies, and other established businesses who are defendants in more typical cases. The unique risk of default is exactly why a higher interest rate is appropriate in this case. Mot. at 9-11 (collecting cases).

Rimini likewise asks the Court to ignore the Rimini "loans that Oracle cites as evidence of what Rimini should pay Oracle," because "a significant impediment to obtaining a lower interest rate during this time was Oracle's lawsuit." Opp. at 14 n.1. Rimini fails to mention that in 2007, relatively close to when infringement began but long before Oracle sued, Rimini agreed to pay a much higher rate – prime plus 16.25% – for a credit line *secured* by its assets and

guaranteed by shareholders.  Mot. at 11 (citing Ringgenberg Decl. Ex. 1 (ASP000732 at 740)).

Similarly, Oracle discussed the loans Rimini disclosed in its SEC filings and pointed out that the only loan Rimini describes as related to software carries an interest rate of "approximately 9% per annum."  Mot. at 11.  Rimini's only response is that Oracle "cherry-picked" the loans that Rimini previously deemed sufficiently material to disclose to investors.  Opp. at n.1.  By contrast, Rimini offers no evidence of receiving credit from any source, at any time, at a rate below the prime rate that Oracle proposes.  The reason is obvious:  Rimini's riskiness left cheap credit unavailable, except for the involuntary loan Rimini forced from Oracle when Rimini used Oracle's software without payment.

For these reasons, Oracle respectfully submits that, on the equities of this case, the prime rate of 8.25% is an appropriate, conservative rate for prejudgment interest, leading to $37,060,964 in prejudgment interest on the copyright verdict.  Mot. at 11.

## II. ORACLE IS ENTITLED TO PREJUDGMENT INTEREST ON THE JURY'S DAMAGES AWARD ON THE STATE-LAW COMPUTER CLAIMS.

Prejudgment interest on the computer-statute damages is mandatory under the applicable state statutes[6] at predetermined rates.  Mot. at 12-15.  To avoid that law, Rimini repackages arguments already addressed in the parties' Rule 50 briefing, then (a) argues that Oracle's damages were not sufficiently calculable for interest under California law; (b) disregards the record by speculating that some portion of the jury's award under Nevada law may have represented "future" damages; and (c) cites an inapplicable Nevada state procedural rule.

---

[6] Rimini does not dispute that the Nevada statute makes interest mandatory when its terms are met, but Rimini does appear to dispute the mandatory nature of California interest.  *See* Opp. at 18 (citing *Lewis C. Nelson & Sons v. Clovis Unified Sch. Dist.,* 90 Cal. App. 4th 64, 69 (2001), for the proposition that "prejudgment interest is not automatic" under California law).  Oracle seeks California prejudgment interest under California Civil Code § 3287(a), which makes prejudgment interest "a matter of right" by declaring that the plaintiff "is entitled" to interest when its conditions are met.  *Diaz v. Kubler Corp.,* 785 F.3d 1326, 1328 (9th Cir. 2015); Mot. at 12.  Rimini cites authority about a different provision, § 3287(b), which provides that interest "may" be awarded on certain contract actions.  *Lewis,* 90 Cal. App. 4th at 70.  As Rimini's own case explains, "there is a significant difference between prejudgment interest awarded as a matter of right under subdivision (a) and prejudgment interest awarded as a matter of discretion under subdivision (b)."  *Lewis,* 90 Cal. App. 4th at 70.  Section 3287(b) is not relevant here.

Opp. at 18-20.

### A. The Damages Award Was Calculable Within the Meaning of California's Prejudgment Interest Statute.

Prejudgment interest under California law requires that damages be "capable of being made certain by calculation" before prejudgment interest begins to accrue. Cal. Civ. Code § 3287(a). Rimini misconstrues the standard to require actual knowledge or absolute certainty. *See* Opp. at 18-19.

The calculability test is satisfied when Rimini received information from which the jury's damages were *capable* of being calculated in a manner that did not require evaluating "conflicting evidence." *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. 03:04-CV-00034-LRH–RAM, 2014 WL 6883056, at *4 (D. Nev. Dec. 5, 2014) (Hicks, J.) (quoting precedent). Damages are calculable even if the calculations would need to be offered in "expert testimony." *Levy-Zentner Co. v. S. Pac. Trans. Co.*, 74 Cal. App. 3d 762, 794-798 (1st Dist. 1977), *adopted by the Ninth Circuit as recognized in Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 921 (9th Cir. 2009) (reiterating that *Levy-Zentner* states the controlling interpretation of § 3287(a) in the Ninth Circuit). Legal disputes, including disputes about whether liability exists, are irrelevant to the calculability determination. *Highlands Ins. Co. v. Continental Cas. Co.*, 64 F.3d 514, 521 (9th Cir. 1995) ("a legal dispute will not" prevent § 3287(a) interest); *Leff v. Gunter*, 33 Cal. 508, 519-20 (1983) (liability).

As Oracle's motion explained, Rimini neither questioned the accuracy of the information underlying Oracle's calculations nor offered conflicting evidence on the relevant points. Mot. at 13. Rimini's opposition says Oracle's representations about Rimini's positions are "patently false," but cites only Rimini's renewed motion for judgment *as a matter of law*. Opp. at 20 (citing Dkt. No. 913). That motion argues, as it must, about legal issues (choice of law, statutory interpretation, a constitutionality challenge, and the causation standard).

Rimini also mischaracterizes Ms. Dean's damages report as not disclosing the information necessary to make CDAFA damages calculable. Opp. at 19. Table 5 of Ms. Dean's report – cited by Rimini, Opp. at 19 – references schedules of customers and calculations from

9
ORACLE'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST

1  which each customer's damages were derived, so damages were calculable for every customer at
2  issue at any relevant point in time. *Id.* at n.94-95. As a result, the damages the jury awarded
3  were calculable and vested within the meaning of § 3287(a) at the time of the expert reports. *See*
4  *Leff*, 33 Cal. at 520.
5      Oracle at trial offered the jury a smaller damages figure, using the same calculations and
6  the same underlying data in the Dean report, but based on a smaller set of customers and a
7  narrower time period. Tr. 1832:23-1833:19 (Dean) & 3494:12-3495:1 (closing). At the time,
8  Rimini made no objection to that smaller damages figure; it had none because the figure was
9  supported by Ms. Dean's report, and readily calculable from the report. Rimini now argues that
10 Oracle's conservative damages presentation waived Oracle's right to prejudgment interest;
11 according to Rimini, because pre-trial calculations would have resulted in a higher total damages
12 figure than $14.4 million, Oracle forfeited all prejudgment interest under California law. Opp. at
13 19-20.
14     *First*, Rimini's argument is unprecedented and irreconcilable with the case law. Electing
15 a more conservative theory or excluding components from the ultimate damages presentation is
16 proper, and does not undermine prejudgment interest. *See Levy-Zentner*, 74 Cal.App.3d 762 at
17 801 (damages sufficiently certain as of the date the plaintiff's expert offered two alternative
18 damages estimates even though plaintiff subsequently elected to pursue only the lower estimate);
19 *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 F.3d 1282, 1291-92 &
20 n.29 (9th Cir. 1995) (prejudgment interest available despite dispute as to whether "certain items"
21 claimed in damages demand were recoverable even where court ultimately excluded items; no
22 bar to prejudgment interest where damages demanded reduced by later developments such as
23 allocation, setoff, or counterclaim). Put another way, Rimini cannot avoid prejudgment interest
24 because pre-trial calculations could have provided notice of more damages than Oracle
25 ultimately sought.
26     *Second*, Rimini's argument subverts the purposes behind § 3287(a). Those purposes are
27 to compensate a plaintiff for the time-value of money and provide the defendant fair notice of its
28 possible exposure, and courts interpreting the statute refuse interpretations that would undermine

those goals. *City of Clovis v. Cty. of Fresno*, 222 Cal. App. 4th 1469, 1480 (2014); *Ferrellgas, Inc. v. Am. Premier Underwriters, Inc.*, 79 F. Supp. 2d 1160, 1164 (C.D. Cal. 1999). Rimini cannot deny Oracle just compensation by complaining that it had *more* notice than necessary.[7]

Finally, Rimini posits that a dispute about "methodology" – that is, how to calculate the interest – defeats the calculability requirement. Opp. at 20. It does not: A "dispute between the parties as to the way in which to calculate damages does not bar recovery under California Civil Code § 3287." *Sierra*, 2014 WL 6883056, at *5 (Hicks, J.) (quoting *Baker v. Garden Grove Med. Invs., Ltd.,* 306 Fed. App'x 393, 396 (9th Cir. 2009)).

### B. Prejudgment Interest Is Proper Under Nevada Law.

Nevada provides prejudgment interest for damages "except for any amount representing future damages." N.R.S. § 17.130(2). Rimini speculates that some portion of the jury's award could be for future damages because $14.4 million is "a very large figure." Opp. at 21. Rimini disregards Ms. Dean's repeated and express trial testimony that she calculated damages only through February 2014. Tr. 1787:22-1788:16, 1804:10-17, 1823:11-21 (Dean). Rimini also ignores this Court's policing of the pretrial determinations that only damages through February 2014 would go to the jury in this case. *E.g.*, Tr. 582:1-21; Dkt. No. 669 (Hicks, J.); Dkt. No. 515 at 3 (Leen, M.J.). If Rimini thought that Ms. Dean's testimony violated the pretrial orders concerning the trial's scope, or if Rimini believed the jury was confused by the testimony, it should have objected or clarified the record. It did not.

### C. Rimini Cannot Reduce Prejudgment Interest on the NCCL Damages by Resorting to a State Procedural Rule.

Rimini seeks to trim about a half-year's interest (from July 27, 2015 to present) by invoking a Nevada Rule of Procedure on offers of judgment. Opp. at 21. The argument fails for

---

[7] Rimini also complains that portions of the potential CDAFA damages identified in Ms. Dean's report "overlap[ped]" with certain copyright calculations and says it could not "anticipate" such calculations. Opp. at 19-20. Rimini argues the overlap somehow undermined its notice of potential prejudgment interest exposure. *Id.* The Dean Report states that some of the figures overlap, recognizes that Oracle would not seek duplicative recovery, and provides the information necessary to determine the overlap. *E.g.,* Expert Report of Elizabeth Dean (Dkt. No. 661, Ex. 8) at n.83; see also *id.* nn.94-95 (citing backup materials).

1  many reasons, but chief among them is that the Nevada Rule does not apply in federal court to
2  offers of judgment made by the *defendant*.  *Walsh v. Kelly*, 203 F.R.D. 597, 599-600 (D. Nev.
3  2001).  Federal Rule 68(a) controls all offers by the party "defending" the suit, thereby
4  preempting the Nevada Rule.  *Walsh*, 203 F.R.D. at 599-600.

   Rimini's argument from Nevada state procedure also fails on its own terms for at least
three more reasons.  *First*, an offer is valid in multiple-plaintiff cases only where "the damages
claimed by all the offeree plaintiffs are solely derivative, such as that the damages claimed by
some offerees are entirely derivative of an injury to the others or that the damages claimed by all
offerees are derivative of an injury to another."  Nev. R.C.P. 68(c)(3).  The NCCL verdict
included response-cost damages that are unique to Oracle America, Inc. and copyright provides
standing only for Oracle International Corporation, the copyright's owner or exclusive licensee.
*See* Verdict, Dkt. No. 896, Questions 18-19 & 22; *Sybersound Records, Inc. v. UAV Corp.*, 517
F.3d 1137, 1145-46 (9th Cir. 2008).  The Oracle plaintiffs' claims are therefore not "solely
derivative."

   *Second*, ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███ Ringgenberg Reply Dec. Exhibit A at 2-3.

   *Finally*, Rimini's offer was ineffective because ███████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████ Ringgenberg Reply Dec. Ex. A at 2-3.

                              *        *        *

1 | **CONCLUSION**

2 | For the foregoing reasons, Oracle's motion for prejudgment interest should be granted.

3 | DATED:  January 8, 2016          Respectfully submitted,

4 |                                  BOIES SCHILLER & FLEXNER LLP

6 |                                  By: /s/ *Kieran P. Ringgenberg*
                                          Kieran P. Ringgenberg

8 |                                  *Attorneys for Plaintiffs*
                                     Oracle USA, Inc., Oracle America, Inc., and Oracle
9 |                                  International Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of January, 2016, I electronically transmitted the foregoing PLAINTIFFS ORACLE USA, INC., ORACLE AMERICA, INC., AND ORACLE INTERNATIONAL CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

DATED:  January 8, 2016

Respectfully submitted

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Kieran P. Ringgenberg
    Kieran P. Ringgenberg

*Attorneys for Plaintiffs* Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation