SHOOK, HARDY & BACON LLP
B. Trent Webb, Esq. (*pro hac vice*)
Peter Strand, Esq. (*pro hac vice*)
Ryan D. Dykal, Esq. (*pro hac vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
bwebb@shb.com

Robert H. Reckers, Esq. (*pro hac vice*)
600 Travis Street, Suite 1600
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
rreckers@shb.com

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
Lauren M. Blas (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

HOWARD & HOWARD PLLC
W. West Allen (Nevada Bar. No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
Facsimile: (702) 567-1568
wwa@h2law.com

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Daniel Polsenberg (Nevada Bar. No. 2376)
Joel Henriod (Nevada Bar. No. 8492)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
dpolsenberg@lrrc.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-PAL <br><br> **AFFIDAVIT OF DENNIS L. KENNEDY** <br><br> Judge:     Hon. Larry R. Hicks |

**AFFIDAVIT OF DENNIS L. KENNEDY**

STATE OF NEVADA          )
                         ) ss:
COUNTY OF CLARK          )

Comes now, DENNIS L. KENNEDY, who being first duly sworn, deposes and says:

1.     I am a resident of Henderson, Nevada.

2.     I am an attorney and have been licensed to practice law in the State of Nevada since 1975. Between 1975 and 2006, I was a member of the law firm of Lionel, Sawyer & Collins, and I was a shareholder and director of that firm from 1979 until January 6, 2006. Since January 9, 2006, I have been a partner in the law firm of Bailey❖Kennedy (formerly known as Bailey❖Merrill).

3.     As set forth in my affidavit dated November 20, 2015, I was retained by Rimini Street, Inc. ("Rimini") and Seth Ravin ("Mr. Ravin") (jointly, the "Rimini Defendants") to render an opinion on the reasonableness of the attorneys' fees incurred by counsel representing Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively, the "Oracle Parties") in the matter entitled *Oracle USA, Inc., et al. v. Rimini Street, et al.*, Case No. 2:10-cv-0106-LRH-PAL, pending in the United States District Court, District of Nevada (the "Case").

4.     This Affidavit is made in support of the Rimini Defendants' Response to the Oracle Parties' Motion for Costs and Attorneys' Fees (the "Fee Motion") to be filed in the Case.

## QUALIFICATIONS

5.     My primary area of practice during the last 41 years has been civil and commercial litigation representing both plaintiffs and defendants, including hotel, gaming, insurance, pharmaceutical, tobacco, and other national companies, in class actions and complex matters in state and federal court and alternative dispute resolution.

6.     Since 1988, I have devoted a substantial amount of my time (both professional and personal) to the area of professional responsibility and legal ethics. My activities in this area include: (i) service on the State Bar Disciplinary Committee (Southern) for nine years, including three years as Chairman; (ii) service on the State Bar Ethics and Professional Responsibility

1

Committee for eight years, including three years as Chairman; (iii) service on various Nevada Supreme Court Committees charged with adoption, review, and revision of ethics and disciplinary rules; (iv) representation of attorneys and judges charged with ethical and disciplinary offenses; (v) defense of the Nevada State Bar and the Nevada Commission on Judicial Discipline in litigation; (vi) representing lawyers, judges, and others in litigation against the Nevada State Bar and the Nevada Commission on Judicial Discipline; (vii) giving expert testimony and advice on professional ethics; (viii) conducting continuing legal education on matters of professional ethics; and (ix) occupying the position of adjunct professor of law at the William S. Boyd School of Law (UNLV), where I teach Nevada Civil Practice, a course whose components consist of Civil Procedure, Evidence, and Professional Ethics. All of this, along with a list of prior matters in which I have been retained as a testifying expert, is set forth in my curriculum vitae, which is attached hereto as Exhibit A. I am being compensated for my work on the Case at my usual rate for expert testimony.

7.     I have knowledge of and experience with civil and commercial litigation. I am familiar with hourly rates customarily charged by lawyers and other professionals of law firms and allowed by courts in Nevada for professional services rendered in various matters. The sources and bases of my knowledge are as follows:

7.1.   The regular hourly rate that I charge for civil and commercial litigation ($800), the regular hourly rates that other partners of my firm charge for civil and commercial litigation ($325 to $650), the regular hourly rates that associates of my firm charge for civil and commercial litigation ($230 to $290), and the regular hourly rate that paralegals of my firm charge for civil and commercial litigation ($175).

7.2.   The regular hourly rates that attorneys in Nevada charge for civil and commercial litigation, which generally range between $200 and $650 (with a few billing as high as $800), and the regular hourly rates that non-attorneys in Nevada charge for civil and commercial litigation, which generally range between $125 and $225, depending upon the nature of the work and years of experience, skill and reputation of the attorney or non-attorney. I have knowledge of these rates because:

7.2.1.     My firm frequently "competes" for business with other law firms and one of the principal factors in such "competition" is fees.  Prospective clients often negotiate fees based upon what another law firm has proposed.

7.2.2.     Each year my firm assesses the fees that it charges to its clients and determines whether those fees should be adjusted.  One of the factors used in this assessment is the fees charged by other lawyers and law firms.  I become aware of these fees through communications with other lawyers and law firms.

7.2.3.     My firm represents other lawyers and law firms in litigation and administrative proceedings, and I become aware of their rates through this process.

7.2.4.     I have spoken to numerous senior and/or managing partners at Southern Nevada law firms to discuss the rates that they usually and customarily charge for civil and commercial litigation.

7.2.5.     I am familiar with unpublished orders issued by U.S. District Judges in Nevada identifying prevailing market rates for attorneys and non-attorneys in Southern Nevada.

7.3.     My firm is frequently retained as local counsel by out-of-state attorneys, and I become aware through those engagements of rates commonly charged by out-of-state attorneys, including those from major metropolitan areas like Los Angeles, San Francisco, and New York.

8.     Based upon the foregoing, I am able to assess and evaluate the reasonableness of attorneys' fees incurred by lawyers and other professionals of law firms in civil and commercial litigation in Southern Nevada.

**MATTERS REVIEWED**

9.     The list of documents and materials which I reviewed in preparing this Affidavit, along with several members in my firm working under my direction and supervision, and upon which I base my opinions expressed herein, is attached hereto as Exhibit B.  I have also discussed

3

1   the Case with the Rimini Defendants' counsel in the Case to the extent that I deemed such discussion

2   necessary and appropriate to formulate my opinions as to the time and labor required for the Case.

3       10.   I have personal knowledge of the facts recited below, derived from a review (by

4   myself and by others working under my direction and supervision) of the pertinent documents and

5   materials discussed herein, as well as any information identified as having been provided to me by

6   the Rimini Defendants' counsel in the Case, and I am competent to testify as to all opinions

7   expressed herein.   The opinions expressed herein are solely my own and may be modified in the

8   event that other evidence or documents are presented to me.   Joshua P. Gilmore, Esq. (an associate

9   in my firm) assisted me, under my direction and supervision, in the preparation of this Affidavit.

10                              **SUMMARY OF OPINIONS**

11       11.   For the reasons stated below, it is my opinion that the Oracle Parties (i) seek to

12   recover fees based on unreasonably high hourly rates, both for attorneys and non-attorneys, and (ii)

13   allowed their counsel to expend an unreasonable amount of time working on the Case, both of which

14   justify reductions by the District Court in the total amount of attorneys' fees, if any,[1] to be awarded

15   to the Oracle Parties; specifically:

16           11.1.   The attorneys billed at rates substantially higher than those of comparable

17           intellectual property and civil and commercial litigators in Southern Nevada (*e.g.*, associates

18           billed at rates normally charged by Southern Nevada partners).   The law permits the Oracle

19           Parties to seek to recover their fees based on rates that are usually and customarily charged

20           by in-state attorneys with similar years of experience, skill, and reputation.   The Oracle

21           Parties made no showing, nor in my opinion could they have made a showing, that in-state

22           attorneys were not available or qualified to do most – if not all – of the work for the Case.

23           11.2.   Non-attorneys with little or no disclosed experience with intellectual property

24           and civil and commercial litigation billed at excessively high rates in comparison to the rates

---

[1]       I understand that the Rimini Defendants intend to argue (i) that the Oracle Parties are
26   not entitled to recover any fees or expenses, (ii) that an award of fees and expenses would be
improper, and (iii) that the Oracle Parties failed to meet their burden of demonstrating that fees and
27   expenses are appropriate.   My opinions are relevant to the extent that the District Court exercises its
28   discretion to award fees and expenses to the Oracle Parties.

1    that are usually and customarily charged by non-attorneys in Southern Nevada (*e.g.*,

2    paralegals billed at rates normally charged by Southern Nevada associates).  Their rates must

3    be reduced accordingly in determining a proper lodestar calculation.

4         11.3.   The Oracle Parties overstaffed the Case by having numerous partners,

5    associates, and in-house contract attorneys from two different national law firms work on the

6    Case, along with numerous outside contract attorneys, resulting in excessive and unnecessary

7    duplication of effort.

8         11.4.   Partners at each firm billed for work more appropriately handled by and

9    assigned to associates.

10        11.5.   Rather than use the same attorneys throughout the Case, different attorneys at

11   both firms performed various tasks at different times, which is less efficient and more costly.

12        11.6.   Timekeepers block-billed their time (*e.g.*, timekeepers combined multiple

13   tasks performed in a day into a single time entry, rather than billing each task separately), a

14   practice that makes it difficult to separate recoverable from non-recoverable fees.

15   Timekeepers also used vague descriptions in many of their time entries, which made it

16   difficult to assess the reasonableness of the work performed.

17        11.7.   Attorneys billed for work related to matters other than the Case and for

18   clerical and administrative tasks, none of which is recoverable.

19   12.    Based on the above, it is my opinion that the fee award should be reduced by no less

20   than ▮▮▮▮▮▮▮, subject to any further reduction(s) as may be determined by the District Court

21   (*e.g.*, due to the small degree of success obtained by the Oracle Parties), calculated as follows:

22        12.1.   The District Court should reduce the fee award by no less than $9,159,350 by

23   calculating the lodestar using prevailing market rates for attorneys and non-attorneys in

24   Southern Nevada with similar years of experience, skill, and reputation—not the actual rates

25   charged by counsel for the Oracle Parties in the Case—as follows:

26

27

28

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12.1.1.   For William Isaacson, Esq. ("Isaacson") and Karen L. Dunn, Esq. ("Dunn"), $800 per hour and $550 per hour, respectively, and for all other partners at Boies, Schiller & Flexner LLP ("Boies Schiller"), $475 per hour;

12.1.2.   For Geoffrey M. Howard, Esq. ("Howard") and Thomas S. Hixson, Esq. ("Hixson"), $800 per hour and $550 per hour, respectively, and for all other partners at Bingham McCutchen LLP ("Bingham") and Morgan, Lewis and Bockius LLP ("Morgan Lewis"), $475 per hour;

12.1.3.   For all associates at Boies Schiller, Bingham, and Morgan Lewis, a maximum of $300 per hour;

12.1.4.   For all in-house contract attorneys at Bingham and Morgan Lewis, a maximum of $112.50 per hour; and

12.1.5.   For all non-attorneys (e.g., paralegals, case managers, and litigation specialists) at Boies Schiller, Bingham, and Morgan Lewis, a maximum of $150 per hour.

12.2.   The District Court should also reduce the fee award by an additional $6,631,662.30 by applying a ▮▮▮ percent (▮%) across-the-board reduction to the total number of hours claimed by the Oracle Parties.

12.3.   With these reductions in mind, the fee award for time spent on the Case by attorneys and non-attorneys at Boies Schiller, Bingham, and Morgan Lewis should be no more than ▮▮▮▮▮▮, subject to any further reduction(s) as may be determined by the District Court.

13.   Further, in my opinion, the District Court should not include any fees incurred by attorneys at H5 and Huron Consulting Group because the Oracle Parties did not meet their burden of showing that the rates charged by these timekeepers were in accordance with prevailing market rates in Southern Nevada for persons of similar years of experience, skill, and reputation or that the amount of time spent working on the Case was reasonable. As discussed below, the Oracle Parties

6

1  failed to provide sufficient information (and in certain instances, no information) about these

2  timekeepers or the work that they performed in the Case (purportedly totaling ▮▮▮▮).[2]

3      14.    Finally, in my opinion, assuming that the District Court reduces the fee award to

4  account for the partial degree of success obtained by the Oracle Parties at trial, the Rimini

5  Defendants have proposed four reasonable methodologies for making such a reduction.

6                              **OPINION AND ANALYSIS**

7      15.    The following are my detailed opinions and analyses of the Oracle Parties' Fee

8  Motion.

9                                **Material Facts**

10     16.    An overview of the Case, upon which I base my opinions expressed herein, is as

11  follows:

12         16.1.    The Oracle Parties sued the Rimini Defendants in January 2010. Certain

13     claims were tried to a jury in September and October 2015. The invoices submitted by the

14     Oracle Parties relate to events occurring from prior to the filing of the Complaint through

15     post-trial briefing.

16         16.2.    The following approximate milestone dates are reflected in the invoices or

17     elsewhere in the record:

18             16.2.1.    Pre-January 2010 – pre-filing investigation;

19             16.2.2.    January 2010 – filing of Complaint;

20             16.2.3.    April 2010 – filing of First Amended Complaint;

21             16.2.4.    April 2010 – written discovery begins (continuing through January

22     2012);

23             16.2.5.    August 2010 – fact witness depositions begin;

24             16.2.6.    June 2011 – filing of Second Amended Complaint;

25             16.2.7.    January 2012 – close of fact discovery;

26  _____

27     [2]    Due to the relatively nominal amount of fees sought for services rendered by
    attorneys and non-attorneys at Black Letter and Barg Coffin Lewis Trapp LLP (▮▮▮▮), I
28  express no opinion on the reasonableness of their fees.

16.2.8.    January 2012 – expert reports filed;

16.2.9.    March 2012 – filing of the Oracle Parties' first Motion for Summary Judgment;

16.2.10.   May 2012 – expert depositions begin;

16.2.11.   July 2012 – filing of the Oracle Parties' Motion for Sanctions;

16.2.12.   September 2012 – filing of the Oracle Parties' second Motion for Summary Judgment;

16.2.13.   February 2014 – entry of the District Court's Order granting in part the Oracle Parties' first Motion for Summary Judgment;

16.2.14.   August 2014 – entry of the District Court's Order granting in part the Oracle Parties' second Motion for Summary Judgment;

16.2.15.   July 2014 – filing of the pre-trial Order;

16.2.16.   January 2015 – start of settlement conferences (continuing through July 2015);

16.2.17.   January 2015 – trial preparation begins; and

16.2.18.   September 2015 – trial (completing in October 2015).

16.3.    The Oracle Parties asserted 12 claims in their Second Amended Complaint for (i) copyright infringement, (ii) violation of the federal computer fraud and abuse act, (iii) violation of the California computer data access and fraud act, (iv) violation of Nevada Revised Statute Section 205.4765, (v) breach of contract, (vi) inducing breach of contract, (vii) interference with prospective economic advantage, (viii) unfair competition, (ix) trespass to chattel, (x) unjust enrichment/restitution, (xi) unfair practices, and (xii) accounting.

16.4.    Prior to, during, or just after trial, the Oracle Parties abandoned their second, fifth, eighth (in part), ninth, tenth, eleventh, and twelfth claims.  After 15 days of trial testimony, the Oracle Parties submitted their first, third, fourth, sixth, and seventh claims to the jury.  After five days of deliberation, the jury found in favor of the Oracle Parties on three

of their five remaining claims (in part). The Oracle Parties pleaded two of the three claims in the alternative. I am assuming, for purposes of this Affidavit, that the Oracle Parties are the "prevailing party" where the jury awarded damages for a particular claim against a particular defendant.

16.5.    The jury returned a verdict in favor of the Oracle Parties as follows:

16.5.1.    On the first claim, $35,600,000 in damages against Rimini, representing the fair market value license measure of actual damages. The jury also awarded (in the alternative, at the Oracle Parties' election) $2,790,000 in statutory damages based upon a finding of innocent, rather than willful, infringement, entered against Rimini. The jury found that Mr. Ravin was not liable for contributory or vicarious copyright infringement;[3] and

16.5.2.    On the third and fourth claims (in the alternative), $14,027,000 in damages against the Rimini Defendants.[4]

17.    The Oracle Parties were initially represented in the Case by Bingham. They subsequently retained Boies Schiller to appear as co-counsel. Bingham later merged into Morgan Lewis. Background information provided by the Oracle Parties concerning the attorneys, non-attorneys, and law firms who worked on the Case is set forth in the declarations submitted by Kieran P. Ringgenberg, Esq. ("Ringgenberg") and Hixson in support of the Fee Motion.

17.1.    Boies Schiller charged the following rates throughout the Case (rounded to the nearest dollar):

///

///

///

---

[3]    As I understand it, the Oracle Parties sought $128,300,000 in damages on their first claim against the Rimini Defendants. As such, they recovered less than twenty eight percent (28%) of the total damages sought for this claim.

[4]    As I understand it, the Oracle Parties argued for $34,900,000 in damages on their third claim against the Rimini Defendants. As such, they recovered approximately forty percent (40%) of the total damages sought for this claim.

17.1.1.   Partners' hourly rates ranged from ███[5] to ███ (the average hourly rate, which was calculated by dividing the total amount sought for partners by the total number of hours claimed for partners, was ███);

17.1.2.   Associates' hourly rates ranged from ███ to ███ (the average hourly rate, which was calculated by dividing the total amount sought for associates by the total number of hours claimed for associates, was ███);

17.1.3.   Non-attorneys' hourly rates ranged from ███ to ███ (the average hourly rate, which was calculated by dividing the total amount sought for non-attorneys by the total number of hours claimed for non-attorneys, was ███).[6]

17.2.   Bingham and Morgan Lewis charged the following rates throughout the Case (rounded to the nearest dollar):

17.2.1.   Partners' hourly rates ranged from ███[7] to ███[8] (the average hourly rate, which was calculated by dividing the total amount sought for partners by the total number of hours claimed for partners, was ███;[9]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5]   As I understand it, Douglas R. Mitchell, Esq. ("Mitchell") made partner at Boies Schiller in ███   Therefore, he was an associate when he worked on the Case in ███

[6]   For purposes of this Affidavit, I am treating case managers, paralegals, special project coordinators, and legal assistants as non-attorneys.

[7]   As I understand it, Kristen A. Palumbo, Esq. ("Palumbo") and Bree Hann, Esq. ("Hann") became partners at Bingham in ███   Although they billed at ███ per hour in ███ because Bingham gave a 10% discount on its fees, the Oracle Parties apparently paid ███ per hour for their work on the Case in ███

[8]   Although Howard billed at ███ per hour, because Morgan Lewis gave a ███% discount on its fees, the Oracle Parties apparently paid ███ per hour for his work on the Case in ███

[9]   For purposes of this Affidavit, I am treating David O. Johanson, Esq. ("Johanson") as a partner given his years of experience.

17.2.2.   Associates' hourly rates ranged from ███ to███ [10] [11] (the average hourly rate, which was calculated by dividing the total amount sought for associates by the total number of hours claimed for associates, was ███);[12]

17.2.3.   In-house contract attorneys' hourly rates ranged from ███ to ███ (the average hourly rate, which was calculated by dividing the total amount sought for in-house contract attorneys by the total number of hours claimed for in-house contract attorneys, was ███); and

17.2.4.   Non-attorneys' hourly rates ranged from ███ to ███ (the average hourly rate, which was calculated by dividing the total amount sought for non-attorneys by the total number of hours claimed for non-attorneys, was ███).[13]

17.3.   With regard to nearly all of the attorneys who worked on the Case at Boies Schiller, the Oracle Parties did not provide a summary of prior case experience or work history to determine whether each attorney was appropriately assigned to the Case. By and large, the Oracle Parties only provided educational background and judicial clerkships (if any) for each attorney. However, graduating from a reputable law school and/or clerking for a distinguished judge—without more—does not automatically justify (or permit the recovery of) a high hourly rate.

17.4.   With regard to some of the associates who worked on the Case at Bingham and/or Morgan Lewis, the Oracle Parties did not provide a summary of prior case experience or work history to determine whether each associate was appropriately assigned to the Case.

---

[10]   Although Kyle Zipes, Esq. ("Zipes") and Nitin Jindal, Esq. ("Jindal") billed at ███ per hour in ███, because Bingham gave a ██% discount on its fees, the Oracle Parties apparently paid ███ per hour for their work on the Case in ███.

[11]   As I understand it, John A. Polito, Esq. ("Polito") became a partner at Morgan Lewis in ███. Until then, he was an associate working on the Case. Although he billed at ███ per hour in ███, because Morgan Lewis gave a ██% discount on its fees, the Oracle Parties apparently paid ███ per hour for his work on the Case in ███.

[12]   For purposes of this Affidavit, I am treating Chad Russell, Esq. ("Russell") as an associate given his years of experience.

[13]   For purposes of this Affidavit, I am treating paralegals, litigation specialists, and research librarians as non-attorneys.

11

By and large, the Oracle Parties only provided educational background and judicial clerkships (if any) for each attorney. However, graduating from a reputable law school and/or clerking for a distinguished judge—without more—does not automatically justify (or permit the recovery of) a high hourly rate.

17.5.   With regard to all of the in-house contract attorneys who worked on the Case at Bingham and/or Morgan Lewis, the Oracle Parties did not provide a summary of prior case experience or work history to determine whether each in-house contract attorney was appropriately assigned to the Case. Moreover, the Oracle Parties did not provide an educational background for each in-house contract attorney. Working for a big law firm—without more—does not automatically justify (or permit the recovery of) a high hourly rate.

17.6.   With regard to all of the non-attorneys who worked on the Case at Boies Schiller, the Oracle Parties did not provide a summary of prior case experience or work history to determine whether each non-attorney was appropriately assigned to the Case. Moreover, the Oracle Parties did not provide an educational background or legal training for any non-attorney. Working for a big law firm—without more—does not automatically justify (or permit the recovery of) a high hourly rate.

17.7.   With regard to some of the non-attorneys who worked on the Case at Bingham and/or Morgan Lewis, the Oracle Parties did not provide a summary of prior case experience or work history to determine whether each non-attorney was appropriately assigned to the Case. Moreover, the Oracle Parties did not provide an educational background or legal training for any non-attorney. Working for a big law firm—without more—does not automatically justify (or permit the recovery of) a high hourly rate.

18.   The representation of the Oracle Parties in the Case was undertaken on an hourly basis. Each firm appeared to generate an invoice on a monthly basis reflecting services rendered for that month.

19.   The Rimini Defendants separately retained Stuart, Maue, Mitchell & James ("Stuart Maue"), a legal auditing firm, to assist in analyzing the invoices submitted by the Oracle Parties with

1  their Fee Motion. Stuart Maue prepared spreadsheets setting forth a summary of the hours worked
2  and rates charged by each attorney and non-attorney at Boies Schiller, Bingham, and Morgan Lewis
3  who is or was involved in the representation of the Oracle Parties.  I am relying on those
4  spreadsheets (and the data contained therein) in support of my opinions.

5    20. In sum, the Oracle Parties seek to recover ▮▮▮▮▮ in attorneys' fees,
6  representing ▮▮▮▮ hours incurred between December 2008 and November 2015, for services
7  rendered by attorneys and non-attorneys at Boies Schiller, Bingham, and Morgan Lewis.[14]  The
8  Oracle Parties also seek to recover an additional ▮▮▮▮▮ in attorneys' fees, representing an
9  unknown amount of additional hours incurred during the pendency of the Case, for services rendered
10  by outside contract attorneys at H5, Huron Consulting Group, Inc., Black Letter, and Barg Coffin
11  Lewis Trapp LLP.

## **Applicable Legal Principles**

13    21. The Copyright Act of 1976 ("Copyright Act") provides that a district court may
14  award reasonable attorneys' fees and costs to a prevailing party. *See* 17 U.S.C. § 505. A district
15  court may utilize the lodestar method to calculate a reasonable attorneys' fee under the Copyright
16  Act. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of*
17  *reh'g*, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is calculated by multiplying the number of
18  hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."[15]  *Id.*
19  The party seeking fees carries the burden to demonstrate that the fees sought are reasonable.
20  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

---

24   [14] The Oracle Parties are actually seeking a different amount in fees. The above number
25  was manually calculated by Stuart Maue based on the invoices submitted by the Oracle Parties with
their Fee Motion. The Oracle Parties further state that they are not seeking an additional ▮▮▮▮
26  in attorneys' fees incurred by Boies Schiller, Bingham, and Morgan Lewis, because the time entries
related thereto were redacted for privilege (or other unstated reasons).

27   [15] A district court may then decide whether to adjust the lodestar figure based on certain
factors described in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which are
28  codified at LR 54-16(b)(3). *Compare Morales*, 96 F.3d at 364 n.8, *with id.* at 364 n.9.

22.     A district court may consider expert testimony in determining the reasonableness of attorneys' fees sought by a party in a case.[16] *See, e.g., Lobatz v. U.S. W. Cellular of Cal.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (citing *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2008)).

23.     In analyzing a party's fee request, a district court may consider whether each attorney billed a reasonable fee in accordance with the Rules of Professional Conduct. *Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."); *see also In re Amdura Corp.*, 139 B.R. 963, 968-69 (Bankr. D. Colo. 1992) (stating that attorneys should "meet the Supreme Court's expectation that every lawyer will heed his [or her] ethical obligation to exclude excessive, redundant, or otherwise unnecessary time" from a fee request); *Ecos, Inc. v. Brinegar*, 671 F. Supp. 381, 396 (M.D. N.C. 1987) ("Legal ethics demand that attorneys only seek compensation for the reasonable value of their work."); *accord Pablo Camarillo v. City of Maywood*, Case No. 2:07-cv-03469-ODW(SHx), 2015 WL 505886, at *7 (C.D. Cal. Feb. 4, 2015) (analyzing a formal opinion issued by the American Bar Association Standing Committee on Ethics and Professional Responsibility in determining whether counsel overbilled for work on the matter). That is partly because "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (emphasis in original).

24.     In Nevada, whether a lawyer satisfied his or her ethical obligations in representing a client (*e.g.*, billed a reasonable fee for services rendered in a matter) is generally established through expert testimony. *See Mainor v. Nault*, 101 P.3d 308, 320-21 (Nev. 2004); *Allyn v. McDonald*, 910 P.2d 263, 266 (Nev. 1996). The Nevada Rules of Professional Conduct are evidence of the standard of care to which Nevada-licensed attorneys are held. NEV. R. PROF'L CONDUCT, R. 1.0A(d); *Mainor*, 101 P.3d at 320-21. Attorneys appearing or practicing in a case brought in the United States District

---

[16]     An expert is someone who is qualified by virtue of specialized knowledge, skill, experience, training or education to express an opinion on matters within the scope of such knowledge, FED. R. EVID. 702, and is permitted to opine as to the ultimate issue in a case, FED. R. EVID. 704(a).

1  Court for the District of Nevada "shall adhere to the standards of conduct prescribed by the Model

2  Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of

3  Nevada." LR IA 10-7(a).

### Issues Presented

5  25.  I have been asked to consider the following issues regarding the Oracle Parties' Fee

6  Motion:

7  25.1.  Whether the Oracle Parties seek a lodestar calculation based on unreasonably

8  high hourly rates, both for attorneys and non-attorneys;

9  25.2.  Whether the Oracle Parties' counsel expended an unreasonable amount of

10  time working on the Case;

11  25.3.  Whether the Oracle Parties should recover fees incurred by attorneys at H5

12  and Huron Consulting Group; and

13  25.4.  Whether the Rimini Defendants have presented reasonable methodologies for

14  the District Court to employ to reduce the lodestar based on the Oracle Parties' limited

15  degree of success.

16  ***The Oracle Parties Seek to Recover Fees Based on Unreasonably High Hourly Rates***

17  26.  "In determining a reasonable hourly rate, the district court should be guided by the

18  rate prevailing in the community for similar work performed by attorneys of comparable skill,

19  experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir.

20  1986).  The same is true for analyzing the hourly rates of non-attorneys working on a matter.

21  *Trustees of Constr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).

22  27.  Based on these and other rules and principles governing professional responsibility

23  and legal ethics (discussed further below), my knowledge of the hourly rates usually and customarily

24  charged by attorneys and non-attorneys of my firm and by attorneys and non-attorneys of other firms

25  in Southern Nevada with similar years of experience, skill and reputation in intellectual property and

26  civil and commercial litigation, and the documents and materials reviewed in connection with the

27  Case, it is my opinion that the Oracle Parties seek to recover fees based on unreasonably high hourly

28

rates for attorneys and non-attorneys in Southern Nevada, and that the District Court should calculate the lodestar using prevailing market rates for this forum, resulting in a $9,159,350 reduction to the fee award; specifically:

    27.1.   In order to assess the reasonableness of the rates charged by counsel for the Oracle Parties in the Case, I surveyed the market for rates usually and customarily charged by intellectual property and civil and commercial litigation attorneys and non-attorneys in Southern Nevada. Specifically:

        27.1.1.   I contacted several intellectual property and civil and commercial litigation attorneys in Southern Nevada to determine their usual and customary rates; and

        27.1.2.   I, along with an associate in my office working under my direction and supervision, reviewed multiple fee applications filed in state and federal court in Southern Nevada over the last few years by various law firms setting forth the rates charged by attorneys and non-attorneys in those cases.

    27.2.   I also considered rate determinations set forth in unpublished orders issued by U.S. District Judges in the District of Nevada. My research reveals that U.S. District Judges in Southern Nevada have determined that prevailing market rates for partners and associates are $450 per hour and $250 per hour, respectively. *See, e.g., United States v. Pivaroff*, No. 2:13-cv-01498-JCM-PAL, 2015 WL 6149217, at *3 (D. Nev. Oct. 19, 2015) (collecting cases). Hourly rates may, under certain circumstances, be as high as $750 per hour for experienced partners and $350 per hour for experienced associates. *See Crew-Jones v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-cv-00203-GMN-RJJ, 2012 WL 1947967, at *2 (D. Nev. May 30, 2012); *see also Plaza Bank v. Alan Green Family Trust*, No. 2:11-CV-00130-MMD, 2013 WL 1759580, at *2 (D. Nev. Apr. 24, 2013) (finding $375 per hour to be unreasonable for associates). U.S. District Judges in Southern Nevada have found that the prevailing market rate for paralegals is $125 per hour. *See, e.g., Crusher Designs, LLC v. Atlas Copco*

*Powercrusher GmbH*, No. 2:14-CV-01267-GMN-NJK, 2015 WL 6163443, at *2 (D. Nev. Oct. 20, 2015).

27.3.   I also looked at fee surveys available online.  According to the 2015 Report of the Economic Survey prepared under the direction of the Law Practice Management Committee of the American Intellectual Property Law Association ("AIPLA"),[17] the median average hourly billing rates in 2014 for partners, of counsel, and associates at private law firms around the country handling intellectual property work was $425, $420, and $315, respectively.  The results of this survey are generally consistent with the prevailing market rates recognized in this District.

27.4.   Combining these findings with my personal knowledge of the market and the rates usually and customarily charged by my firm as described in Paragraph 7, *supra*, it is my opinion that prevailing market rates in Southern Nevada for intellectual property and civil and commercial litigation attorneys and non-attorneys are as follows:

27.4.1.   For partners, $350 to $650 per hour (with a few at the top of the market charging as high as $800 per hour);

27.4.2.   For associates, $200 to $350; and

27.4.3.   For non-attorneys, $100 to $200.

27.5.   With the above rate information in mind, it is my opinion that counsel for the Oracle Parties seek a lodestar calculation based on above-market rates for attorneys and non-attorneys in Southern Nevada, which is unreasonable.[18]   NEV. R. PROF'L CONDUCT, R. 1.5(a)(3).

27.5.1.   With regard to Boies Schiller, the average partner rate (█████), discussed in Paragraph 17.1.1, *supra*, is above market and approximately ████ higher than the rate usually and customarily awarded in this District, while the average

---

[17]   According to its website, *available at* http://www.aipla.org/Pages/default.aspx, AIPLA is "one of the largest associations of intellectual property attorneys in the world."

[18]   To the best of my knowledge, no U.S. District Judge in Southern Nevada has awarded fees based on the collective rates charged by counsel for the Oracle Parties in the Case.

associate rate ( █ ), discussed in Paragraph 17.1.2, *supra*, is above market and approximately █ higher than the rate usually and customarily awarded in this District.

27.5.2.    A closer look at the negotiated rates charged by some of the attorneys at Boies Schiller who worked on the Case reveals that they are above market in Southern Nevada for attorneys with similar years of experience, skill and reputation.[19]

27.5.2.1.    Isaacson billed almost █ hours to the Case. He billed at █ per hour. His background and experience may justify a higher rate than the average rate for partners, but his rate is still higher than the highest partner rate usually and customarily charged in Southern Nevada.

27.5.2.2.    Dunn billed over █ hours to the Case. She billed at █ per hour. Her background and experience may justify a higher rate than the average rate for partners, but her rate is still higher than the highest partner rate usually and customarily charged in Southern Nevada.

27.5.2.3.    Ringgenberg billed over █ hours to the Case. His rate varied from █ per hour to █ per hour. His rates are high for someone who has only been practicing law since █.

27.5.2.4.    Beko Reblitz-Richardson, Esq. ("Reblitz-Richardson") billed over █ hours to the Case. His rate was █ per hour. His rate is high for someone who has only been practicing law since █.

27.5.2.5.    Nasrina Bargzie, Esq. ("Bargzie") billed over █ hours to the Case. Her rate varied from █ hour to █ per hour. Her

---

[19]    I primarily focused on those attorneys who billed nearly or in excess of █ hours working on the Case. Nevertheless, the rates charged by other attorneys at Boies Schiller not specifically identified above, including Mitchell; David Boies, Esq. ("D. Boies"); William Norton, Esq. ("Norton"); Richard Pocker, Esq. ("Pocker"); Steven C. Holtzman, Esq. ("Holtzman"); Gregory Dubinsky, Esq. ("Dubinsky"); Meryl Governski, Esq. ("Governski"); Meredith Dearborn, Esq. ("Dearborn"); Marguerite Hogan, Esq. ("Hogan"); Josh Sheptow, Esq. ("Sheptow"); and John Neukom, Esq. ("Neukom") likewise exceed those usually and customarily charged in Southern Nevada when taking into account their years of experience, skill and reputation.

rates were high at the time (███████████) for someone who had only been practicing law since ████

27.5.2.6.   Alexis Loeb, Esq. ("Loeb") billed nearly ████ hours to the Case. Her rate varied from ████ per hour to ████ per hour. Her rates are high for someone who has only been practicing law since ████

27.5.2.7.   Sean Rodriguez, Esq. ("Rodriguez") billed over ████ hours to the Case. His rate varied from ████ per hour to ████ per hour. His rates are high for someone who has only been practicing law since ████

27.5.2.8.   Darien Meyer, Esq. ("Meyer") billed over ████ hours to the Case. His rate varied from ████ per hour to ████ per hour. His rates are high for someone who has only been practicing law since ████

27.5.2.9.   Alexander Konik, Esq. ("Konik") billed over ████ hours to the Case. His rate varied from ████ per hour to ████ per hour. His rates are high for someone who has only been practicing law since ████

27.5.3.   With regard to Bingham and Morgan Lewis, the average partner rate (████) discussed in Paragraph 17.2.1, *supra*, is toward the high end of the market and approximately ████ higher than the rate usually and customarily awarded in this District, while the average associate rate (████), discussed in Paragraph 17.2.2, *supra*, is above market and approximately ████ higher than the rate usually and customarily awarded in this District.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

27.5.4.   A closer look at the discounted rates charged by some of the attorneys at Bingham and Morgan Lewis who worked on the Case reveals that they are above market in Southern Nevada for attorneys with similar years of experience, skill and reputation.[20]

27.5.4.1.   Howard billed nearly █████ hours to the Case. His rate varied from ████ per hour to ████ per hour. His background and experience may justify a higher rate than the average rate for partners, but his rate is still higher than the highest partner rate usually and customarily charged in Southern Nevada.

27.5.4.2.   Hixson billed over ████ hours to the Case. His rate varied from ████ per hour to ████ per hour. His rates are high for someone with his level of experience.

27.5.4.3.   Palumbo billed over ████ hours to the Case. Her rate varied from ████ per hour to ████ per hour. Her rates are high for someone with her level of experience.

27.5.4.4.   Polito billed over ████ hours to the Case. His rate varied from ████ per hour to ████ per hour. His rates are high for someone who has only been practicing law since ████.

27.5.4.5.   Marjory Gentry, Esq. ("Gentry") billed nearly ████ hours to the Case. Her rate varied from ████ per hour to ████ per hour. Her rates were high at the time (████████) for someone who had only been practicing law since ████

---

[20]   I primarily focused on those attorneys who billed in excess of ████ hours working on the Case. Nevertheless, the rates charged by other attorneys at Bingham and Morgan Lewis not specifically identified above, including Hann; Johanson; Russell; Zipes; Frank M. Hinman, Esq. ("Hinman"); Rachelle A. Dubow, Esq. ("Dubow"); Zachary J. Alinder, Esq. ("Alinder"); Holly A. House, Esq. ("House"); Thai Q. Le, Esq. ("Le"); Elizabeth M. Sartori, Esq. ("Sartori"); Nicolette Young, Esq. ("Young"); Shameek Ghose, Esq. ("Ghose"); Dhruv Kaushal, Esq. ("Kaushal"); and Joy Sherrod, Esq. ("Sherrod") likewise exceed those usually and customarily charged in Southern Nevada when taking into account their years of experience, skill and reputation.

20

27.5.4.6.    Kevin Papay, Esq. ("Papay") billed over ▇ hours to the Case. His rate varied from ▇ per hour to ▇ per hour. His rates are high for someone who has only been practicing law since ▇

27.5.4.7.    Kirstie A. McCornock, Esq. ("McCornock") billed over ▇ hours to the Case. Her rate varied from ▇ per hour to ▇ per hour. Her rates are high for someone with her level of experience.

27.5.4.8.    Manu Pradhan, Esq. ("Pradhan") billed over ▇ hours to the Case. His rate varied from ▇ per hour to ▇ per hour. His rates are high for someone who has only been practicing law since ▇

27.5.4.9.    Martha Jeong, Esq. ("Jeong") billed over ▇ hours to the Case. Her rate varied from ▇ per hour to ▇ per hour. Her rates are high for someone who has only been practicing law since ▇

27.5.4.10.    Nargues Motamed Eder, Esq. ("Motamed Eder") billed over ▇ hours to the Case. Her rate varied from ▇ per hour to ▇ per hour. Her rates are high for someone who has only been practicing law since ▇

27.5.4.11.    Jindal billed over ▇ hours to the Case. His rate varied from ▇ per hour to ▇ per hour. His rates are high for someone who has only been practicing law since ▇

27.5.4.12.    Zachary Hill, Esq. ("Hill") billed over ▇ hours to the Case. His rate varied from ▇ per hour to ▇ His rates are high for someone who has only been practicing law since ▇

27.5.4.13.    Spencer H. Wan, Esq. ("Wan") billed over ▇ hours to the Case. His rate varied from ▇ per hour to ▇ per hour. His rates are high for someone who has only been practicing law since ▇

27.5.5.    The average non-attorney rate at Boies Schiller (▇), discussed in Paragraph 17.1.3, *supra*, is above market and approximately ▇ higher than the rate

usually and customarily awarded in this District.  The average non-attorney rate at Bingham and Morgan Lewis (███), discussed in Paragraph 17.2.4, *supra*, is above market and approximately ███ higher than the rate usually and customarily awarded in this District.

27.6.   In an attempt to justify the rates charged by the Oracle Parties in the Case, Pocker, a member of Boies Schiller, stated in an affidavit in support of the Oracle Parties' Fee Motion that "[t]he rates charged by both firms are consistent with the prevailing market rates for experienced top caliber attorneys for services performed in the District of Nevada in cases of this size and legal complexity."  I disagree with Pocker for the following reasons:

27.6.1.   Out-of-state attorneys, including those from California and Washington, D.C., commonly bill at rates higher than those of Southern Nevada attorneys.  In my experience, most Southern Nevada attorneys do not command the same high rates charged by attorneys in California and Washington, D.C.

27.6.2.   Pocker is counsel of record for the Oracle Parties; thus, his bias is patent.  The Oracle Parties did not support their Fee Motion with one or more affidavits from disinterested attorneys practicing in Southern Nevada opining as to the hourly rates usually and customarily charged by intellectual property and civil and commercial litigation attorneys.  I find this omission to be significant.

27.6.3.   Pocker does not even opine that the rates are consistent with prevailing market rates charged by attorneys and non-attorneys in Southern Nevada with similar years of experience, skill, and reputation.  Instead, he opines that the rates are consistent with those that others would charge for performing similar work in this District.  However, the issue presented is not whether other out-of-state attorneys and non-attorneys would charge similar rates when working in this District, but rather whether in-state attorneys and non-attorneys would charge similar rates for performing similar work in this District.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      27.6.4.     Courts do not accept self-serving, carefully styled affidavits from counsel of record regarding rate determinations unsupported by affidavits from other disinterested attorneys practicing in the relevant forum when the rates appear to be above market. *See, e.g.*, *CLM Partners LLC v. Fiesta Palms, LLC*, No. 2:11-cv-01387-PMP-CWH, 2013 WL 6388760, at *5 (D. Nev. Dec. 5, 2013) (refusing to award fees based on the rates charged by counsel for the defendants, in part because their rates were above market for this forum in comparison to rate determinations in other cases and because they did not provide "affidavits from other attorneys" indicating that their rates were reasonable).

      27.7.     Generally speaking, attorneys' fees are calculated "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). This is particularly true where fees are being sought under a fee-shifting statute. *Home Gambling Network, Inc. v. Piche*, No. 2:05-cv-00610-DAE, 2015 WL 1734928, at *10 (D. Nev. Apr. 16, 2015). That being said, a district court may look to rates outside the forum "if local counsel was unavailable because they lacked the degree of experience, expertise, or specialization required to properly handle the case." *Pivaroff*, No. 2:13-CV-01498-JCM-PAL, 2015 WL 6149217, at *2 (citing *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir. 1997)). In my opinion, the District Court should not do so here, for the following reasons:

      27.7.1.     The Oracle Parties did not provide evidence indicating that Southern Nevada attorneys were incapable of handling the Case. *Contra Gates v. Deukmejian*, 987 F.2d 1392, 1405-06 (9th Cir. 1992) (finding that the district court did not abuse its discretion by awarding fees based on San Francisco rates, rather than Sacramento rates, in large part because the moving party provided "numerous declarations of San Francisco and Sacramento attorneys" indicating that counsel in the relevant forum "were unavailable" to handle the case); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1175-76 (D. Nev. 1999) (looking at rates from the District of Columbia upon proof from the plaintiff that "there were no attorneys in Nevada with the

requisite skills and resources to conduct the type of litigation that the case would require"), *abrogated on other grounds as recognized in Kimbrough v. California*, 609 F.3d 1027, 1032 n.7 (9th Cir. 2010).

27.7.2.     Having practiced law in Southern Nevada for 41 years, and having substantial litigation experience representing attorneys, I am familiar with the caliber of attorneys admitted to the Nevada Bar.  Nevada has a substantial number of intellectual property and civil and commercial litigation attorneys who are capable of handling complex claims, including copyright infringement, state-law computer claims, and tortious interference claims, like those at issue in the Case.

27.7.3.     Accordingly, it is my opinion that the District Court should calculate the lodestar using market rates usually and customarily charged by attorneys and non-attorneys in Southern Nevada—not California or Washington, D.C. *See also Insolvency Svcs. Group, Inc. v. Meritage Homes Corp.*, No. 2:11-cv-01364-PMP-RJJ, 2014 WL 317750, at *4 (D. Nev. Jan. 28, 2014) (refusing to award fees at the "requested rates for attorneys in Los Angeles and New York, which vastly exceed the prevailing rates in Nevada," because the moving party "could have found counsel in Nevada with the requisite experience, expertise, and specialization who charged the prevailing market rate" to represent it in the matter); *Brincko v. Rio Props., Inc.*, No. 2:10-cv-00930-PMP-PAL, 2012 WL 275251, at *3-*4 (D. Nev. Jan. 31, 2012) (refusing to award fees based on the rates charged by out-of-state counsel).

27.8.   Having determined that the District Court should calculate the lodestar using prevailing market rates for this forum and not the rates actually charged elsewhere by counsel for the Oracle Parties, in my opinion, the following rates should be used:

27.8.1.     For Isaacson, $800 per hour.  In my opinion, given the size and complexity of the Case, it is appropriate for one partner at Boies Schiller to be awarded fees at the highest rate usually and customarily charged in Southern Nevada

by attorneys with similar years of experience, skill and reputation.[21] Based on Isaacson's qualifications, years of experience, and role at trial, he would be able to charge at the high end of the market in Southern Nevada.

27.8.2. For Dunn, $550 per hour. In my opinion, her qualifications, experience, and involvement with trial as second-chair for Boies Schiller justify a higher than usual rate for someone who has only been practicing law for 10 years. Moreover, given the size and complexity of the Case, it is fair for a second partner at Boies Schiller to be awarded fees at a higher rate that the rate usually and customarily awarded in this District for partners.

27.8.3. For all other partners at Boies Schiller, $475 per hour. Boies Schiller failed to include a summary of prior case experience or work history to allow me (or the District Court) to properly assess the qualifications and experience of the remaining partners who worked on the Case. Because the average number of years of experience for these partners was approximately 22.5, and because higher rates were afforded to Isaacson and Dunn than those that are usually and customarily awarded for partners in this District, in my opinion, $475 is a reasonable hourly rate for all other partners at Boies Schiller. That is still above the prevailing market rate recognized by U.S. District Judges in Southern Nevada. Anything higher than $475 per hour would be unreasonable because it would reward the Oracle Parties for over-staffing the Case with too many partners.

27.8.4. For Howard, $800 per hour. In my opinion, given the size and complexity of the Case, it is appropriate for one partner at Morgan Lewis to be awarded fees at the highest rate usually and customarily charged in Southern Nevada by attorneys with similar years of experience, skill and reputation. Based on Howard's qualifications, years of experience, and role at trial, he would be able to charge at the high end of the market in Southern Nevada.

---

[21] The time billed by D. Boies to the Case (███ hours) should also be calculated at $800 per hour given his years of experience, skill, and reputation.

25

27.8.5. For Hixson, $550 per hour. In my opinion, given his substantial involvement with the Case, qualifications and years of experience, $550 is a reasonable hourly rate. Moreover, given the size and complexity of the Case, it is fair for a second partner at Morgan Lewis to be awarded fees at a higher rate than the rate usually and customarily awarded in this District for partners.

27.8.6. For all other partners at Bingham and Morgan Lewis, $475 per hour. Because the average number of years of experience for these partners was 21, and because higher rates were afforded to Howard and Hixson than those that are usually and customarily awarded for partners in this District, in my opinion, $475 is a reasonable hourly rate for all other partners at Bingham and Morgan Lewis. That is still above the prevailing market rate recognized by U.S. District Judges in Southern Nevada. Anything higher than $475 per hour would be unreasonable because it would reward the Oracle Parties for over-staffing the Case with too many partners.

27.8.7. For all associates at Boies Schiller, a maximum of $300 per hour. As noted above, Boies Schiller failed to include information about the qualifications and experience of the associates assigned to the Case. Based on the average number of years of experience of associates assigned to the Case, in my opinion, $300 is a reasonable hourly rate (and above the prevailing market rate recognized by U.S. District Judges in Southern Nevada).

27.8.8. For all associates at Bingham and Morgan Lewis, a maximum of $300 per hour. Based on the qualifications and average number of years of experience of the associates assigned to the Case, in my opinion, $300 is a reasonable hourly rate (and above the prevailing market rate recognized by U.S. District Judges in Southern Nevada).

27.8.9. For in-house contract attorneys at Bingham and Morgan Lewis, a maximum of $112.50 per hour. Because the Oracle Parties did not include information about any in-house contract attorney assigned to the Case, in my opinion,

1    the District Court should calculate the lodestar using the lowest in-house contract
2    attorney rate of $112.50 per hour.

3            27.8.10.   For all non-attorneys (e.g., paralegals, case managers, and litigation
4    specialists) at Boies Schiller, Bingham and Morgan Lewis, a maximum of $150 per
5    hour.  In my opinion, $150 is a reasonable hourly rate given the limited information
6    provided by the Oracle Parties concerning the qualifications and years of experience
7    of non-attorneys assigned to the Case.[22]

8           27.9.   The rates proposed above are conservative as seen by the resulting average
9    hourly rates for partners (rounded to the nearest dollar):

10           27.9.1.   The adjusted average hourly rate for partners at Boies Schiller,
11   which was calculated by dividing the total amount sought for partners using the rates
12   identified in Paragraphs 27.8.1 through 27.8.3, *supra*, by the total number of hours
13   claimed for partners, was    which is nearly    more than the rate usually and
14   customarily awarded by U.S. District Judges in Southern Nevada; and

15           27.9.2.   The adjusted average hourly rate for partners at Bingham and
16   Morgan Lewis, which was calculated by dividing the total amount sought for partners
17   using the rates identified in Paragraphs 27.8.4 through 27.8.6, *supra*, by the total
18   number of hours claimed for partners, was approximately    which is nearly    
19   more than the rate usually and customarily awarded by U.S. District Judges in
20   Southern Nevada.

21   / / /
22   / / /
23   / / /
24   / / /
25   / / /

---

26      [22]   At first glance, it may seem unusual that non-attorneys are billing at rates above those
27   of in-house contract attorneys.  However, it is reasonable here because the Oracle Parties did not
     provide evidence meriting a higher hourly rate for in-house contract attorneys, and otherwise staffed
28   the Case with several non-attorneys who billed at rates above those of in-house contract attorneys.

1           27.10. The Oracle Parties seek to recover $31,264,891.35 in fees incurred by

2 attorneys and non-attorneys at Boies Schiller, Bingham, and Morgan Lewis. Using

3 prevailing market rates, the amount of fees sought would be reduced to ▮▮▮▮▮▮[23]

4           27.11. Based on the foregoing, it is my opinion that the Oracle Parties seek to

5 recover fees based on unreasonably high hourly rates compared to those usually and

6 customarily charged by attorneys and non-attorneys in Southern Nevada of similar years of

7 experience, skill, and reputation. Therefore, in calculating the lodestar, the District Court

8 should multiply the reasonable number of hours expended (analyzed below) by reduced

9 hourly rates for partners, associates, in-house contract attorneys, and non-attorneys as set

10 forth above, which, in the aggregate, would amount to a $9,159,350 reduction to the fee

11 award. *See, e.g., Herrington v. Cty. of Sonoma*, 883 F.2d 739, 746 (9th Cir. 1989) ("[I]f the

12 Herringtons have agreed to pay their counsel more than what this court determines to be a

13 reasonable hourly rate, the Herringtons, not the County, are responsible for paying the

14 portion of the rate charged which is in excess of a reasonable fee.").

15 ***The Oracle Parties' Counsel Expended an Unreasonable Amount of Time Working on the Case***

16         28.    The basic rules and principles governing the reasonableness of attorneys' fees upon

17 which I base my opinions expressed herein are as follows:[24]

18           28.1. A lawyer may not charge or seek to collect an unreasonable fee for

19 representing a client in a matter. NEV. R. PROF'L CONDUCT, R. 1.5(a). A district court will

20 consider the following factors "in determining the reasonableness of a fee":

21                28.1.1.    The time and labor required, the novelty and difficulty of the

22 questions involved, and the skill requisite to perform the legal service properly;

23

24      [23]    Stuart Maue has prepared spreadsheets calculating the lodestar using the prevailing market rates proposed above for attorneys and non-attorneys at Boies Schiller, Bingham, and

25 Morgan Lewis. I am relying on those spreadsheets (and the data contained therein) in calculating the above reduction. Those spreadsheets do not take into account further reductions to the lodestar as

26 discussed below.

27      [24]    Ethics experts commonly rely on and cite to applicable rules and principles when analyzing ethics issues. Doing so establishes that the expert's opinions are consistent with

28 prevailing views and best practices and not merely *ipse dixit*.

          28.1.2.    The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

          28.1.3.    The fee customarily charged in the locality for similar legal services;

          28.1.4.    The amount involved and the results obtained;

          28.1.5.    The time limitations imposed by the client or by the circumstances;

          28.1.6.    The nature and length of the professional relationship with the client;

          28.1.7.    The experience, reputation, and ability of the lawyer or lawyers performing the services; and

          28.1.8.    Whether the fee is fixed or contingent.[25]

*Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 962 (N.D. Cal. 2014) (indicating that the district court will look to Rule of Professional Conduct 1.5(a) in determining whether the fees sought are reasonable); *see also In re Estate of Bowlds*, 102 P.3d 593, 597 (Nev. 2004) (stating that a reasonableness determination "should be made under all of the SCR 155[26] considerations"); *Harvey v. United Pac. Ins. Co.*, 856 P.2d 240, 241 (Nev. 1993) (stating that these factors are important and must be considered "in determining reasonableness").

    28.2.    A lawyer owes a duty "to charge only fair, reasonable and conscionable fees" to his or her client. *Bird, Marella, Boxer & Wolpert v. Sup. Ct.*, 130 Cal. Rptr. 2d 782, 791-92 (Cal. Ct. App. 2003).

    28.3.    The fact that a client agrees to pay an unreasonable fee does not mean that the fee is reasonable in evaluating whether that fee should be paid by the opposing party. *See, e.g., In re Sinnott*, 845 A.2d 373, 379 (Vt. 2004) ("[L]awyers . . . cannot charge unreasonable fees even if they are able to find clients who will pay whatever a lawyer's contract demands."); *Attorney Grievance Comm'n v. Braskey*, 836 A.2d 605, 625-26 (Md. 2003)

---

[25]    These factors, among others, are codified at LR 54-16(b)(3).

[26]    Nevada SCR 155 is the predecessor to Nevada Rule of Professional Conduct 1.5.

(finding that a client's willingness to pay an unreasonable fee is irrelevant and amounts to "fee gouging"); *see also* RESTATEMENT (THIRD) LAW GOVERNING LAWYERS § 34 cmt. b ("A client-lawyer fee arrangement will be set aside when its provisions are unreasonable as to the client.") (citation omitted).[27]  In other words, "having a wealthy client does not justify a legal feeding frenzy resulting in the escalation of attorneys' fees and costs." *Microsoft Corp. v. United Computer Resources of New Jersey, Inc.*, 216 F. Supp. 2d 383, 386 (D. N.J. 2002); *see also United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 19 (1st Cir. 1988) ("A law firm's customary schedule of charges, though entitled to consideration, is not dispositive of the issue: a private client might well be willing to buy a Stradavarius when a Guadagnini would plainly do, or to pay top dollar for either when the same instrument could be purchased less expensively elsewhere.").  In deciding whether to award fees to the prevailing party, a district court must still determine whether the fee agreement between the lawyer and the client is reasonable. *Marquis & Aurbach v. Eighth Jud. Dist. Ct.*, 146 P.3d 1130, 1138-39 (Nev. 2006); *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33-34 (Nev. 1969); *see also Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (noting that review of the fee agreement "may aid in determining reasonableness").

28.4.   A lawyer may not excessively bill a client, whether through padding the bills, double-billing, or overworking a matter.   *See* ABA CENTER FOR PROFESSIONAL RESPONSIBILITY, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT, at 77-82 (8th ed. 2015) [hereinafter "ANNOTATED MODEL RULES"].[28]

---

[27]   The Nevada Supreme Court frequently relies upon the Restatement of the Law Governing Lawyers. *See, e.g., NC-DSH, Inc. v. Gardner*, 218 P.3d 853, 860 (Nev. 2009); *Leibowitz v. Eighth Jud. Dist. Ct.*, 78 P.3d 515, 520 n.19, 521 n.23 (Nev. 2003); *Palmer v. Pioneer Inn Assocs., Ltd.*, 59 P.3d 1237, 1247 (Nev. 2002).

[28]   Although the comments to the ABA Model Rules of Professional Conduct were not adopted by the Nevada Supreme Court, they "may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct." NEV. R. PROF'L CONDUCT, R. 1.0A. They are also frequently relied upon by the Nevada Supreme Court. *See, e.g., Merits Incentives, LLC v. Eighth Jud. Dist. Ct.*, 262 P.3d 720, 724 n.3 (Nev. 2011); *Palmer*, 59 P.3d at 1241-42; *In re Discipline of Schaefer*, 25 P.3d 191, 199 (Nev. 2001).  The Nevada Supreme Court likewise frequently consults the ANNOTATED MODEL RULES for guidance. *See, e.g., Liapis v. Second Jud. Dist. Ct.*, 282 P.3d 733, 737 (Nev. 2012); *Palmer*, 59 P.3d at 1240 n.8.

28.5.   A lawyer must exercise "billing judgment" in representing a client and not bill for excessive, reductant or unnecessary work. *Hensley*, 461 U.S. at 434; *see also Chalmers*, 796 F.2d at 1210 (noting that a district court may reduce a fee request if "the case was overstaffed and hours are duplicated" or if "the hours expended are deemed excessive or otherwise unnecessary").

29.   Based on these and other rules and principles governing professional responsibility and legal ethics,[29] my experience with civil and commercial litigation, and the documents and materials reviewed in connection with the Case, it is my opinion that the Oracle Parties' counsel billed an unreasonable amount of time to the Case by overstaffing it, excessively block-billing for various tasks, failing to properly allocate and assign work among attorneys and non-attorneys in each firm in an efficient and cost-effective manner, and charging for administrative or clerical work, warranting an across-the board reduction of ██% in the total number of hours to be included in the lodestar calculation, resulting in a $6,631,662.30 reduction to the fee award; specifically:

29.1.   In order to assess the reasonableness of the hours expended, I, along with several persons working under my direction and supervision, including Sarah E. Harmon, Esq. (a partner in my firm) and Amanda L. Stevens, Esq. (an associate in my firm), reviewed all the invoices submitted by counsel for the Oracle Parties to determine whether any time should be excluded altogether from the lodestar calculation or reduced by a percentage. In so doing, we focused on the following:

29.1.1.   Multiple attorneys working on the same task (and whether senior attorneys spent time on tasks that should have been handled by junior attorneys);

29.1.2.   Multiple attorneys attending an event (hearing, deposition, etc.);

29.1.3.   Excessive intra-office conferences and team meetings;

29.1.4.   Vague and non-descriptive time entries;

29.1.5.   Billing for work related to other matters;

---

[29]   The Oracle Parties' billing guidelines required their counsel to ████████
████████████████████████ Therefore, it is appropriate to consider the above-cited rules and principles in analyzing the propriety of the Oracle Parties' Fee Motion.

29.1.6.   Billing more than ████ hours per day by any single timekeeper;

29.1.7.   Administrative and clerical tasks; and

29.1.8.   Training or education.

29.2.   At the outset, the Oracle Parties have not satisfactorily explained why they needed two different law firms to handle the Case. It does not appear that each firm was tasked with handling separate and discrete matters. By having multiple firms with no clear or apparent division of labor, there is serious risk of duplication of effort and overlap of work, resulting in excessive and unnecessary billing. That appears to be true here.

29.2.1.   According to the *Wall Street Journal*, Boies Schiller is a "national litigation powerhouse." The firm states on its website that it has "litigated some of the most important and high profile copyright cases since the Supreme Court's 1984 decision in *Sony Corp. v. Universal Studios, Inc.*"

29.2.2.   Morgan Lewis is an international law firm employing more than 2,000 legal professionals. According to its website, the firm "has one of the largest intellectual property practices of any full-service law firm in the world."

29.2.3.   Each firm, on its own, was capable of representing the Oracle Parties in the Case. It is unknown why the Oracle Parties needed both firms to handle the Case, and the Oracle Parties have offered no explanation for hiring both firms.

29.2.4.   I am unable to determine whether and how co-counsel for the Oracle Parties coordinated with each other in order to effectively manage the Case. For example, it is unknown whether each firm handled different claims or defenses. Similarly, it is unknown whether each firm focused on alleged copyright infringement of different protected works owned by the Oracle Parties. Finally, it is unknown whether each firm handled different aspects of pre-trial discovery.

/ / /

/ / /

/ / /

29.2.5.    Based on a detailed and thorough review of the invoices, it appears that attorneys and non-attorneys in each firm worked on all aspects of the Case, which led to duplication of effort.[30] For example:

29.2.5.1. ██████████████████████

████████████████████████████████████████ worked on the Oracle Parties' initial Complaint.

29.2.5.2. ██████████████████████

████████████████████████████████████████ worked on the Oracle Parties' First Amended Complaint.

29.2.5.3. ██████████████████████

████████████████████████████████████████ worked on the Oracle Parties' Second Amended Complaint.

29.2.5.4. ██████████████████████

worked on the Stipulated Protective Order.

29.2.5.5. ██████████████████████

████████████████████████████████████████ worked on initial disclosures.

29.2.5.6. ██████████████████████

████████████████████████████████████████ worked on case management statements.

29.2.5.7. ██████████████████████

████████████████████████████████████████ worked on interrogatory responses.

---

[30]    Alongside the overlap in work by both firms, attorneys at each firm spent a substantial amount of time working on various aspects of the Case.  For example, at Bingham, ██ attorneys ██████████████████ worked on preparing for Scott Hampton's deposition, Hill spent approximately ██ days preparing for Mr. Ravin's deposition, Gentry spent approximately ██ days researching "████████████████████" Howard spent approximately ██ days working on expert reports, and Jindal spent at least ██ days working on expert motions.

29.2.5.8. ███████████████████████████

████████████████████████████████████████ worked—for

nearly ██ months—on the Oracle Parties' first Motion for Summary Judgment.

29.2.5.9. ███████████████████████████

█████████████████████████████████ worked on the

Oracle Parties' Motion for Sanctions.

29.2.5.10. ███████████████████████████

████████████████████████████████████████ worked—for

approximately ██ months—on the Oracle Parties' second Motion for Summary

Judgment.

29.2.5.11. ███████████████████████████

████████████████████████████████████████████████████

worked on the *Daubert* motion related to David Klausner.

29.2.5.12. ███████████████████████████

████████████████████████████████████████████████████

worked on the *Daubert* motion related to Elizabeth Dean.

29.2.5.13. ███████████████████████████

████████████████████████████████████████████████████

worked—for approximately ██ months—on witness outlines for trial, exhibits

to be used during witness examinations, and preparing witnesses, alongside ██

█████████████████████████████████████████

29.2.5.14. ███████████████████████████

████████████████████████████████████████████████████

worked—for  approximately  ██  months—on  jury  instructions,  alongside ██

█████████████████████████████████████████

29.2.5.15. ███████████████████████████

████████████████████████████████████████████████████

worked—for approximately █ months—on briefing for jury instructions, alongside ██████████████████████████████.

29.2.5.16. ███████████████████████████

██████████████████████████████

worked—for approximately █ months—on various tasks associated with conducting a mock jury trial, alongside ████████████████

███████████████████

29.2.5.17. ███████████████████████

█████████████████████████ worked—for approximately █ months—on setting up and dismantling the war room and making other arrangements for trial, alongside ████████████████████

███████████████

29.2.6.    Numerous attorneys in each firm regularly worked on and reviewed the same motions, communicated with the same experts, edited and revised meet and confer correspondence, and prepared for and attended the same depositions and pre-trial hearings. Similarly, numerous attorneys in each firm billed hundreds of hours to the copyright infringement claim, the hacking claim, and the interference with business relationship claim. In effect, members of each firm cross-checked the work performed by members of the other and regularly met or spoke with one another to discuss the Case.

29.2.7.    With regard to trial attendance, there was substantial overlap and duplication of effort by members in each firm:

29.2.7.1.    Day 1: ████████████████████

██████████████████████████████

██████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29.2.7.2.      Day 2: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.3.      Day 3: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.4.      Day 4: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.5.      Day 5: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.6.      Day 6: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.7.      Day 7: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.8.      Day 8: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.9.      Day 9: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

29.2.7.10.     Day 10: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

1

29.2.7.11.    Day 11: ███████████████████

2

3 ████████████████████████████████████

4

29.2.7.12.    Day 12: ███████████████████

5

6 ████████████████████████████████████

7

29.2.7.13.    Day 13: ███████████████████

8

9 ████████████████████████████████████

10

29.2.7.14.    Day 14: ███████████████████

11

12 ████████████████████████████████████

13

29.2.7.15.    Day 15: ███████████████████

14

15 ████████████████████████████████████

16

29.2.7.16.    Day 16: ███████████████████

17

18 ████████████████████████████████████

19

29.2.7.17.    Day 17: ███████████████████

20

21 ████████████████████████████████████

22

29.2.7.18.    Day 18: ███████████████████

23

24 ████████████████████████████████████

25

29.2.7.19.    Day 19: ███████████████████

26

27 ████████████████████████████████████

28

37

29.2.8.    The fact that attorneys and non-attorneys at each firm billed throughout the Case for performing the same or similar tasks is, in my opinion, indicative of a "lack of coordination among counsel." *U.S. v. Green*, 18 F. Supp. 3d 1234, 1241 (D. N. Mex. 2013); *see also Fiolek v. Tucson Unified School Dist.*, No. CV 01-36 TUC DCB, 2004 WL 3366149, at \*4 (D. Ariz. Sept. 10, 2004) (finding that too many attorneys working on the case led to excessive collaboration and duplication of effort).

29.2.9.    In line with the principles discussed in Paragraph 28.3, *supra*, the fact that a sophisticated client retains two law firms to handle a case does not mean that it is reasonable to do so if one firm is qualified to handle the case.

29.2.10.    Because the Oracle Parties have not explained why they needed two different firms to handle the Case, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation to account for duplication and excessive work.

29.3.    In addition to having two different law firms working on the Case, the Oracle Parties had an excessive number of attorneys and non-attorneys at each firm working on the Case.

29.3.1.    The Oracle Parties had ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from Boies Schiller, Bingham, and Morgan Lewis working on the Case.  No less than ▮ different timekeepers worked on the Case each month, and in some months, up to ▮ different timekeepers worked on the Case.[31]

29.3.2.    Counsel for the Oracle Parties often billed between ▮▮▮▮ hours per month working on the Case, with a few months exceeding ▮▮ hours. For example:

---

[31]    In those months, ▮ different timekeepers at Boies Schiller worked on the Case while 20 different timekeepers at Bingham and Morgan Lewis worked on the Case.

29.3.2.1.    In ████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.2.    In ████████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.3.    In ████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.4.    In ████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.5.    In ████████████ Bingham billed more than ████████ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.6.    In ████████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.7.    In ████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.8.    In ████████████ Bingham billed more than ███ hours to the Case, while Boies Schiller billed nearly ███ hours to the Case.

29.3.2.9.    In ████████████ Bingham billed more than ████████ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.10.    In ████████ Morgan Lewis billed more than ████████ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.11.    In ████████ Morgan Lewis billed more than ████████ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.2.12.    In ████████████ Morgan Lewis billed more than ████████ hours to the Case, while Boies Schiller billed more than ███ hours to the Case.

29.3.3.    The Oracle Parties claim that ██████████████████████ ██████████ (pursuant to their billing guidelines) effectively resulted ████████████

However, the Oracle Parties utilized the services of additional attorneys to nullify that time restriction. In total, ██ different attorneys worked on the Case for the Oracle Parties, not including dozens of outside contract attorneys at H5, Huron Consulting Group, Black Letter, and Barg Coffin Lewis Trapp LLP. As noted, the invoices are replete with instances where multiple attorneys at each firm billed the Oracle Parties for working on the Case. Thus, I disagree that the ██████████ restriction suggests that the total amount of fees sought by the Oracle Parties is reasonable.[32]

    29.3.4.    Based on a detailed and thorough review of the invoices, it appears that, over the duration of the Case, counsel for the Oracle Parties frequently had intra-office conferences and team meetings, which, in my opinion, is a consequence of assigning too many attorneys and non-attorneys to the Case. *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings."). For example:

    29.3.4.1.    Multiple members of each firm attended weekly meetings involving third-party vendors, experts, damages, and discovery.[33]

    29.3.4.2.    Multiple members of each firm participated in weekly meetings to discuss the status of the Case, task lists, and assignments.

    29.3.4.3.    Bingham and Morgan Lewis frequently had up to ██ attorneys and non-attorneys attend joint strategy meetings or participate in conference calls with up to ██ attorneys and non-attorneys from Boies Schiller.[34]

---

[32] There appear to be hundreds of instances in which timekeepers billed more than ██ hours in a day—without evidence that the Oracle Parties authorized billing more than ██ hours in those instances. Nor is there any way to determine whether the ██ hour days were actually reduced from the overall fee request. Finally, there appears to be one instance in which a non-attorney at Boies Schiller billed ██ hours in a day, which is not possible.

[33] In ███████████████████ at Bingham attended a ██ hour team meeting to discuss the Case.

[34] In ███████████████████ at Bingham attended a ██ hour joint strategy meeting with ████████████████ Boies Schiller.

29.3.5.    Courts will reduce the amount of hours for which fees will be awarded if counsel engaged in excessive intra-office conferences or team meetings. *See, e.g.*, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1194-95 (S.D. Cal. 2003); *Keith v. Volpe*, 644 F. Supp. 1317, 1324 (C.D. Cal. 1986).  Alternatively, courts will award fees only to the highest billing attorney involved in any such conference or meeting. *See, e.g.*, *Seven Signatures General P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1055 (D. Haw. 2012).

29.3.6.    Because counsel for the Oracle Parties overstaffed the Case and engaged in a significant number of intra-office conferences and team meetings, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation.

29.4.    More experienced attorneys at each firm performed a great deal of work on the Case, at times equal to, if not greater than the amount of work performed by less experienced attorneys.  In my opinion, a partner should take less time than an associate to complete a task, or at times should assign that task to an associate.

29.4.1.    "It is expected that litigation is often performed in teams and that the team leader delegates responsibility according to the talent of each team member and oversees the entire project." *Northon v. Rule*, 494 F. Supp. 2d 1183, 1187 (D. Or. 2007).  In other words, attorneys billing at high rates should assign work to attorneys billing at low rates, not necessarily do the work themselves. *Accord Melone v. Paul Evert's RV Country, Inc.*, 2:08-cv-00868-GWF, 2012 WL 1142638, at *6 (D. Nev. Apr. 3, 2012) ("In larger law firms, certain legal work may be performed by lower level associate attorneys, law clerks or paralegals, whose work is supervised, reviewed or revised by more senior level attorneys.").

29.4.2.    If a partner performs work that should be done by an associate, a district court may award fees for that partner's time at the associate's rate. *See, e.g.*,

41

*In re Fine Paper Antitrust Litig.*, 751 F. 2d 562, 591-93 (3d Cir. 1984) (affirming the district court's decision to compensate certain partner time at associate rates, because such work is customarily performed by associates); *Ursic v. Bethlehem Mines*, 719 F. 2d 670, 677 (3d Cir. 1983) ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.").

    29.4.3.    Partners billed a substantial amount of time working on the Case compared to associates and non-attorneys. For example:

        29.4.3.1.    Hixson billed approximately ▇ hours to the Case, which is more than any associate or non-attorney at Bingham and/or Morgan Lewis working on the Case.

        29.4.3.2.    Ringgenberg billed nearly ▇ hours to the Case, which is nearly twice as much as any associate and more than any non-attorney at Boies Schiller working on the Case.

        29.4.3.3.    Partners at Bingham and Morgan Lewis accounted for nearly ▇% of the total number of hours billed to the Case by those two firms.

        29.4.3.4.    Partners at Boies Schiller accounted for nearly ▇% of the total number of hours billed to the Case by that firm.

    29.4.4.    Based on a detailed and thorough review of the invoices, it appears that counsel for the Oracle Parties did not efficiently manage the Case (*e.g.*, partners performed work more appropriately handled by associates). For example:

        29.4.4.1.    Hixson (at Bingham) conducted legal research on the Oracle Parties' claims and motions for summary judgment, as well as drafted interrogatory responses.

        29.4.4.2.    Norton (at Boies Schiller) conducted legal research on the motion to dismiss as well as drafted interrogatory responses.

29.4.4.3.    Ringgenberg (at Boies Schiller) conducted legal research on the Oracle Parties' claims and the Motion for Preservation Order, arranged product demonstrations, and drafted witness examination outlines.

29.4.4.4.    Palumbo (at Bingham) conducted quality control review of documents produced in discovery, worked on amended disclosures, and performed legal research on and drafted the expert motions.

29.4.4.5.    Pocker (at Boies Schiller) prepared documents to deliver to and file with the Court.[35]

29.4.4.6.    Hann (at Bingham) drafted expert motions.

29.4.4.7.    Reblitz-Richardson (at Boies Schiller) conducted legal research as well as cite-checked and gathered documents for others to review.

29.4.5.    Though it may be more efficient in certain instances to have a partner work on a particular task, partners and associates in each of the Oracle Parties' law firms routinely worked on the same tasks (reviewing and revising each other's work). Thus, in my opinion, it does not appear that partners refrained from assigning work to associates for efficiency reasons.

29.4.6.    Because of the excess amount of partner time billed to the Case compared to associate (and non-attorney) time, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation.

29.5.   I am unable to review many time entries for reasonableness because they are vague.

29.5.1.    Imprecise billing makes it difficult to engage in a meaningful review of time records. *Hensley*, 461 U.S. at 434.  Fee reductions are warranted for vague descriptions of time entries. *See, e.g., Banas*, 47 F. Supp. 3d at 969; *U.S. v.*

---

[35]    Over half of Pocker's time entries are for reviewing documents.

*$167,070.00 in U.S. Currency*, No. 3:13-cv-00324-LRH-VPC, 2015 WL 5057028, at
*5-*6 (D. Nev. Aug. 25, 2015).

        29.5.2.    When billing to the Case, attorneys regularly used phrases such as
"███████," "██████," and "█████" Those entries make it impossible for me to
determine whether the time spent was reasonable.

        29.5.3.    Similarly, attorneys billed for telephone calls without identifying
the subject of the call and for drafting and reviewing correspondence without
identifying the subject of the correspondence. I am unable to review those entries to
determine whether the time spent was reasonable.

        29.5.4.    Some attorneys billed for attending meetings without identifying
the purpose of the meeting. Absent this information, I am unable to determine
whether the time spent was reasonable.

        29.5.5.    When billing to the Case, non-attorneys regularly used phrases such
as "█████████," "███████████████████████████," and
"████████████" Those entries are too vague to review for
reasonableness.

        29.5.6.    Dunn (at Boies Schiller) billed over ████ hours using the following
generic description: "█████████" Similarly, Seki (at Boies Schiller) billed
nearly ████ hours preparing for and attending trial and otherwise working on trial
logistics, without further detail.

        29.5.7.    Because counsel for the Oracle Parties were not consistently clear
in billing time to the Case, it is my opinion that the District Court should apply an
across-the-board reduction in the total amount of hours included in the lodestar
calculation.

    29.6.    Counsel for the Oracle Parties block-billed nearly all of their time to the Case,
which makes it difficult – if not impossible – to determine whether a reasonable amount of
time was spent on various tasks.

29.6.1.   Though block-billing is not improper *per se*, it makes it "difficult to determine how much time was spent on any one task" when analyzing the reasonableness of a fee request. *Metro Data Systems, Inc. v. Durango Systems, Inc.*, 597 F. Supp. 244, 245 (D. Ariz. 1984). Some courts have determined that block-billing may lead to an increase in time billed to a matter. *See, e.g.*, *Huhmann v. FedEx Corp.*, Case No. 13-cv-00787-BAS(NLS), 2015 WL 6127198, at *8 (S.D. Cal. Oct. 16, 2015).

29.6.2.   A district court may reduce a fee request if counsel block-billed their time. *Welch*, 480 F.3d at 948; *Gaines v. Douglas Cty. School Dist.*, No. 3:04-cv-00541-LRH-RAM, 2009 WL 2710063, at *3 (D. Nev. Aug. 25, 2009).

29.6.3.   When billing to the Case, counsel for the Oracle Parties did not bill separately for each task performed in a single day. Almost all of the time entries are block-billed. It is only those days where one isolated task is performed that multiple tasks are not block-billed in a single entry.

29.6.4.   Many time entries contain seven or more different tasks performed in a single day, which makes it difficult – if not impossible – to determine whether the time spent on each task was reasonable in comparison to the total amount of time billed that day. For example:

29.6.4.1.   On  Hixson (at Bingham) billed hours for the following tasks: "



29.6.4.2. ███████████ Norton (at Boies Schiller) billed ███ hours for the following tasks: "

29.6.4.3. On ███████████ Jeong (at Bingham) billed ███ hours for the following tasks: "

29.6.4.4. On ███████████, Palumbo (at Bingham) billed ███ hours for the following tasks: "

46

29.6.4.5.    On ███████████ a non-attorney at Bingham billed ██████ hours for the following tasks: "███████

29.6.4.6.    On ███████████ Jindal (at Bingham) billed ██ hours for the following tasks: "███████

29.6.4.7.    On ███████████ Konik (at Boies Schiller) billed ██ hours for the following tasks: '███████

29.6.4.8.    On [REDACTED] Reblitz-Richardson (at Boies Schiller) billed 9.7 hours for the following tasks: " [REDACTED]

29.6.5.    Because counsel for the Oracle Parties block-billed their time for the entirety of the Case, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation.

29.7.    Counsel for the Oracle Parties billed [REDACTED]

[REDACTED]. They also billed for work unrelated to the Case. In my opinion, none of that time should be included in the lodestar calculation because it is unreasonable to bill a client for such work.

29.7.1.    Attorneys at each firm regularly billed for preparing task lists and other documents outlining work to be done in the Case.

29.7.2.    Non-attorneys at each firm regularly billed for the following tasks: filing and downloading documents from the CM/ECF system; serving documents on opposing counsel or third parties; organizing the file; calendaring deadlines; downloading documents to the network; uploading documents to an online database;

ordering transcripts; HR-related issues for outside contract attorneys; updating the case contact list; scheduling and arranging calls, meetings, and interviews; creating binders; making hotel reservations; indexing documents; and making copies of documents for others to review. Such secretarial work is not recoverable.

29.7.3.    Attorneys at Bingham and Morgan Lewis billed for work not related to the Case, including: (i) billing for copyright registration applications; (ii) billing for work related to a prior lawsuit involving the Oracle Parties; and (iii) billing for work related to the declaratory relief action filed by Rimini in October 2014.

29.7.4.    Because counsel for the Oracle Parties billed for clerical and administrative work and for work not related to the Case, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation.

29.8.    Counsel for the Oracle Parties billed for ██████████████.

29.8.1.    Law firms typically assign a matter to one or more partners who then assign one or more associates to assist with the matter. Absent a change in circumstances (*e.g.*, the filing of an appeal), the same attorneys will work on the matter through its conclusion. Over time, those attorneys develop a body of knowledge about the matter that is not easily transferable to any other attorney in the firm. Notwithstanding this practice, attorneys may leave a firm during the pendency of a matter, which then requires the firm to assign another attorney in place of the departed attorney. When that happens, the new attorney must spend time reviewing the file. Many clients often ask that the firm write off the time spent by the new attorney getting up-to-speed with the matter, not wanting to be penalized by the firm's inability to retain the original attorney who was initially assigned to the matter.

29.8.2.    In addition, larger matters may require other attorneys in the firm to be involved, albeit to a lesser extent than the primary attorneys assigned to the matter.

Those attorneys do not have to be familiar with the entirety of the matter in order to assist with various tasks.

29.8.3.    Based on a detailed and thorough review of the invoices, it appears that different attorneys worked on the Case at different times.  If a new attorney had to work on the Case, he or she had to spend time learning about the Case.[36]  For example:

29.8.3.1.    In ███████ Hill and Papay (at Bingham) together billed nearly █ hours reviewing the file and learning about the Case.

29.8.3.2.    In ██████ Dearborn (at Boies Schiller) billed nearly █ hours reviewing the file and learning about the Case.

29.8.3.3.    In ██████████ Isaacson and Dunn (at Boies Schiller) together billed approximately █ hours reviewing the file and learning about the Case.

29.8.3.4.    In ██████ Dubinsky (at Boies Schiller) billed over █ hours reviewing the file and learning about the Case.

29.8.4.    Moreover, non-attorneys at each firm billed for attending training sessions for discovery purposes.

29.8.5.    The Oracle Parties' billing guidelines expressly provide that they "████████████████████████████████████ If the Oracle Parties refused to pay for time spent ██████████████████" the Rimini Defendants should not be expected to pay for such time.

29.8.6.    Because of the turnover and need to educate new attorneys and non-attorneys about the Case, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation.

---

[36]    It also appears from the invoices that counsel for the Oracle Parties had to spend time training in-house contract attorneys to work on the Case.

29.9.   In-house contract attorneys for the Oracle Parties consistently billed the same number of hours to the Case each day, which, in my opinion, suggests a lack of diligence in accurately recording time spent working on the Case.

    29.9.1.   Courts do not award hours that appear to be "in excess of the norm." *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1077 (10th Cir. 1998).

    29.9.2.   Based on a detailed and thorough review of the invoices, it appears that in-house contract attorneys regularly billed eight hours each day to the Case, without exception. For example:

        29.9.2.1.   In ▮▮, several in-house contract attorneys billed eight hours per day for four straight days for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,"

        29.9.2.2.   In ▮▮ an in-house contract attorney billed exactly ▮▮ hours a day for ▮▮ days.

    29.9.3.   In my opinion, an attorney's time working on a Case varies day to day or week to week and should not always be the same, day in and day out.

    29.9.4.   Because of the potential inaccurate billing by the in-house contract attorneys at Bingham and Morgan Lewis, it is my opinion that the District Court should apply an across-the-board reduction in the total amount of hours included in the lodestar calculation.

29.10.   Based on all of the billing issues identified above, it is my opinion that counsel for the Oracle Parties expended an unreasonable amount of time working on the Case. Therefore, in calculating the lodestar, the District Court should apply a ▮% across-the-board reduction to the total number of hours claimed, resulting in a $6,631,662.30 reduction to the fee award (▮▮▮▮▮▮▮▮▮▮▮▮).[37] *See, e.g., Gaines*, No. 3:04-cv-00541-

---

[37]   Together with the reduction proposed above using prevailing market rates, the fee award should be reduced by no less than ▮▮▮▮▮▮ subject to any further reduction(s) as may be determined by the District Court. Stated differently, the fee award for time spent working on the Case by members of Boies Schiller, Bingham, and Morgan Lewis should be no more than ▮▮▮▮▮, subject to any further reduction(s) as may be determined by the District Court.

1   LRH-RAM, 2009 WL 2710063, at *6 (noting that a district court can make an "across-the-

2   board" reduction in the total amount of hours claimed by the moving party when faced with a

3   "massive fee application") (citing *Gates*, 987 F.2d at 1399).

4   ***The District Court Should Refuse to Award Fees Incurred by H5 and Huron Consulting Group***

5        30.    It is my opinion that the Oracle Parties should not recover any fees incurred by

6   attorneys at H5 and Huron Consulting Group because the Oracle Parties failed to justify the rates

7   charged and time spent working on the Case by attorneys at H5 and Huron Consulting Group;

8   specifically:

9        30.1.    According to Hixson, the Oracle Parties contracted with H5 and Huron

10   Consulting Group to assist with document review. Attorneys at H5 billed at ▮ per hour,

11   while attorneys at Huron Consulting Group billed at ▮ per hour.

12        30.2.    In order to assess the reasonableness of the fee request related to H5 and

13   Huron Consulting Group, the Oracle Parties needed to provide the following: (i) the

14   qualifications of each person who worked on the Case; and (ii) time entries identifying the

15   services rendered by each person who worked on the Case. The Oracle Parties had the

16   burden to present such evidence with their Fee Motion.

17        30.3.    The Oracle Parties did not provide a summary of prior case experience or

18   work history—or any other information—to show that each attorney at H5 and Huron

19   Consulting Group had sufficient qualifications to work on the Case. Moreover, the Oracle

20   Parties did not provide educational background or legal training for any attorney at H5 and

21   Huron Consulting Group.    Absent this information, I am unable to analyze the

22   reasonableness of the rates charged by attorneys at H5 and Huron Consulting Group to

23   determine whether they are at or above market for Southern Nevada.[38]

24

25      [38]   In my experience, a law firm hires an outside contract attorney to perform a discrete
task related to a matter (*e.g.*, document or privilege review) as a cost-saving measure for the client.

26   That contract attorney usually bills at a rate lower than an associate at the firm working on the same
matter. Because contract attorneys at H5 billed at ▮ per hour, which is toward the top of the

27   market for associates in Southern Nevada, the Oracle Parties needed to justify that rate. Though
contract attorneys at Huron Consulting Group billed at a low rate (▮ per hour), the Oracle Parties

28   still needed to justify that rate.

1     30.4.   The Oracle Parties did not provide time entries describing services rendered

2  by each attorney at H5 and Huron Consulting Group. The invoices that accompanied the

3  Oracle Parties' Fee Motion only reveal a general category of time or, in many instances, that

4  time was billed to the Case, with no description accompanying each time entry. Because the

5  Oracle Parties did not provide sufficient (or in many instances, any) evidence to justify the

6  time spent by attorneys at H5 and Huron Consulting Group working on the Case, I am unable

7  to determine whether each attorney spent a reasonable or excessive amount of time working

8  on the Case.

9     30.5.   Based on the above, it is my opinion that no fees should be awarded for

10  services rendered by H5 and Huron Consulting Group, which amounts to a $4,360,943.20

11  reduction in the fee award.

12  ### The Rimini Defendants Have Proposed Reasonable Methodologies for Reducing the Fee Award Based on the Oracle Parties' Limited Degree of Success

13

14     31.   Assuming that the District Court exercises its discretion to reduce the fee award to

15  account for the limited degree of success obtained at trial by the Oracle Parties, *see Hensley*, 461

16  U.S. at 436, it is my opinion that the Rimini Defendants have proposed reasonable methodologies for

17  making such a reduction; specifically:

18     31.1.   As discussed above, the Oracle Parties alleged more claims than they tried to

19  the jury and sought more damages than what they were awarded by the jury. Moreover, they

20  were unsuccessful in showing that Mr. Ravin engaged in copyright infringement. Finally,

21  they did not recover punitive damages and only obtained a finding of innocent, rather than

22  willful, infringement by Rimini. As such, the Oracle Parties obtained only partial success at

23  trial.

24     31.2.   The Rimini Defendants have proposed four different methodologies for the

25  District Court to use in reducing the fee award to account for the Oracle Parties' limited

26  success (after accounting for the reductions proposed above and others argued by the Rimini

27  Defendants). Each methodology is reasonable in my opinion for the following reasons:

28

31.2.1.    Under the first approach, the Rimini Defendants recommend that the District Court reduce the fee award to account for the fact that the Oracle Parties only prevailed on three out of 12 claims.  This approach is reasonable because the Oracle Parties incurred fees in pursuit of claims that were either abandoned before or during trial or rejected by the jury upon considering all the evidence.  NEV. R. PROF'L CONDUCT, R. 1.5(a)(1) (analyzing reasonableness based on the time and labor required to handle the matter).

31.2.2.    Under the second approach, the Rimini Defendants recommend that the District Court reduce the fee award to account for the fact that the jury awarded substantially less damages than the total amount of damages sought by the Oracle Parties.  This approach is reasonable because the Oracle Parties incurred fees seeking substantially more than what they recovered at trial, and may (and likely would have) incurred less fees had they anticipated recovering substantially less at trial.  NEV. R. PROF'L CONDUCT, R. 1.5(a)(4) (analyzing reasonableness based on the amount involved and the results obtained)

31.2.3.    Under the third approach, the Rimini Defendants recommend that the District Court reduce the fee award to account for the fact that the jury awarded substantially less damages than the total amount of non-duplicative damages sought by the Oracle Parties.  This approach, like the second approach, is reasonable because it compares the final result to the amount of time expended to obtain that result.  NEV. R. PROF'L CONDUCT, R. 1.5(a)(4).

31.2.4.    Under the fourth approach, the Rimini Defendants recommend that the District Court reduce the fee award to account for the varying levels of success for each of the claims submitted to the jury by the Oracle Parties.  This approach is reasonable because the Oracle Parties did not fully succeed on any single claim (e.g., the jury awarded less damages for two of the three claims than requested by the

1    Oracle Parties and no damages for the third claim).  NEV. R. PROF'L CONDUCT, R.

2    1.5(a)(1), (4).

3    31.3.   Based on the foregoing, it is my opinion that the Rimini Defendants have

4    proposed reasonable methodologies for the District Court to use when calculating the

5    lodestar based on the Oracle Parties' limited degree of success at trial (assuming that the

6    District Court exercises its discretion to make such a reduction).

7    32.   I reserve the right to supplement this Affidavit if additional information is provided to

8    me.

9    Dated this 8TH day of March, 2016.

10

11

12    DENNIS L. KENNEDY

13

14    Subscribed and sworn to before me
      this 8th day of March, 2016.

15

16    NOTARY PUBLIC

17

18    SUSAN RUSSO
      Notary Public State of Nevada
      No. 99-1968-1
19    My Appt. Exp. Feb. 16, 2019

20

21

22

23

24

25

26

27

28

55

# EXHIBIT A

# EXHIBIT A

# DENNIS L. KENNEDY
# CURRICULUM VITAE

## EDUCATION

- B.A. Economics, University of Washington (1972)
- J.D., University of Washington School of Law (1975)
- Board of Editors, Washington Law Review

## PROFESSIONAL ASSOCIATIONS

- State Bar of Nevada
- American Bar Association
- American College of Trial Lawyers
- American Bar Association Standing Committee on Lawyers' Professional Responsibility

## EMPLOYMENT

- Lionel Sawyer & Collins (1975 - 1/6/2006)
- Bailey❖Kennedy (1/9/2006 - present)

## OTHER POSITIONS

- Adjunct Professor, UNLV/William S. Boyd School of Law; Health Care Law (2001, 2003, 2005); Nevada Civil Practice (2006, 2007, 2008, 2015, 2016)
- Chairman, Board of Trustees, Nathan Adelson Hospice (1995 - present)

## PUBLICATIONS

- Co-Author, Nevada Civil Practice Manual (5th ed., 2001)(2003-2013 supplements)

- Co-Editor (with Professor Jeffrey Stempel), Nevada Civil Practice Manual (5th ed.) (2003-2013 supplements)

- Solo and Small Firm Ethics Traps, Clark County Bar Association COMMUNIQUE (December 2013)

   Some Things That Can Hurt You If You Don't Pay Attention, Clark County Bar Association COMMUNIQUE (November 2015)

## SUPREME COURT AND BAR COMMITTEES

- State Bar of Nevada Disciplinary Committee (1989-1997). Chairman, Southern District (1993-1995)

- Member of State Bar Committee on Ethics and Professional Responsibility (December 2001 - December 2009; Chairman 2003-2007)

- Member of State Bar Committee on the Revisions to the Nevada Rules of Professional Conduct (the "Ethics 2000 Committee") (2003-2004)

- State Bar Professionalism Task Force (2004-present); Chairman, CLE Subcommittee (2009-2010). (Task force recently developed a mentoring program designed to assist newly admitted lawyers in the transition into the profession.)

- Nevada Supreme Court Bench-Bar Committee (SCR 14) (2005-present) (General function of the Committee is to consult with the Supreme Court on issues affecting the practice of litigation, including proposed amendments to the Nevada Rules of Civil and Appellate Procedure.)

- Member of Nevada Supreme Court Article 6 Commission (2007-2011) (Commission's projects were (i) the proposed intermediate court of appeals, (ii) changes in judicial selection process and (iii) changes in judicial campaign fund raising and disclosure). Final report of Commission issued June 2011

- Member of Nevada Supreme Court Committee on Public Access to Lawyer Discipline (1994). Committee report resulted in amendments to SCR 121

- Member of Nevada Supreme Court Committee on Judicial Ethics and Election Practices (1995). Committee report resulted in the adoption of the Rules Governing the Standing Committee on Judicial Ethics and Election Practices (1997)

- Member of Nevada Supreme Court Committee to Study the Amendment of NRCP 68 (offers of judgment) (2008-present)

- Nevada Supreme Court Judicial Education Requirements Study Committee (2015) (Committee is charged with studying the subject of judicial education and making a recommendation to the Nevada Supreme Court. Recommendation and report due April 2016)

## RATINGS AND RANKINGS

- Martindale Hubbell "A" "V" rating.

- Mountain States "Super Lawyer" 2015; Top 10 – ranked third overall – for Nevada, Utah, Montana, Idaho and Wyoming.

- Mountain States "Super Lawyer" 2005-present (top 75 lawyers in Nevada, Utah, Montana, Idaho and Wyoming).

- Chambers U.S.A. - one of the top 5 commercial litigators in Nevada (2005-present).

- Best Lawyers In America - Commercial Litigation and "Bet the Company" cases (1998-present).

- Best Lawyers' 2012 Las Vegas Health Care Lawyer of the Year.

### REPORTED CASES (1985-present)

- Lakeside Community Hospital v. Levenson, 101 Nev. 777, 710 P.2d 727 (1985).

- Herbst v. Humana Health Ins. of Nevada, 105 Nev. 586, 781 P.2d 762 (1989).

- In re Discipline of Stuhff, 108 Nev. 629, 837 P.2d 853 (1992).

- In re Discipline of Singer, 109 Nev. 1117, 865 P.2d 315 (1993).

- Forsyth v. Humana, Inc., 827 F. Supp. 1498 (D. Nev. 1993), aff'd in part and rev'd in part by Forsyth v. Humana, Inc., 99 F.3d 1504 (9th Cir. 1996); superseded on rehearing by Forsyth v. Humana, Inc., 114 F.3d 1467 (9th Cir. 1997); affirmed by Humana, Inc. v. Forsyth, 525 U.S. 299 (1999).

- Snoeck v. Brussa, 153 F.3d 984 (9th Cir. 1998).

- State of Nevada v. Reliable Health Care, 115 Nev. 253, 983 P.2d 414 (1999).

- Baker v. District Court, 116 Nev. 527, 999 P.2d 1020 (2000).

- Nguyen v. State, 116 Nev. 1171, 14 P.3d 515 (2000) (amicus brief for Nevada Resort Assn.).

- Brown v. District Court, 116 Nev. 1200, 14 P.3d 1266 (2000).

- Badillo v. American Brands, 117 Nev. 34, 16 P.3d 435 (2001).

- Badillo v. American Brands, 202 F.R.D. 261 (D. Nev. 2001).

- Michel v. Bare, 230 F. Supp. 2d 1147 (D. Nev. 2002).

- Maduka v. Sunrise Hospital, 375 F.3d 909 (9th Cir. 2004).

- Poulos v. Caesar's World, Inc., 379 F.3d 654 (9th Cir. 2004).

- <u>International Game Technology, Inc. v. Second Judicial District Court</u>, 122 Nev. Adv. Op. 13, 127 P.3d 1088 (2006).

- <u>Leroy's Horse and Sports Place v. Racusin</u>, 2001 WL 1345974 (9th Cir. November 1, 2001) (reversing district court judgment re damages and attorney's fees and remanding for jury trial); <u>Leroy's Horse and Sports Place v. Racusin</u>, CV-S-950-00927 (D. Nev. July 8, 2003) (jury verdict of $2,310,000); <u>Hartunian v. Racusin</u>, 2005 WL 79089 (9th Cir. January 14, 2005) (reversing district court order refusing to award pre-judgment interest on $2,310,000 jury verdict and remanding for determination of interest amount); <u>Racusin v. American Wagering, Inc.</u>, 465 F.3d 1048 (9th Cir. 2006), withdrawn on rehearing 493 F.3d 1067 (2007) (reversing BAP decision subordinating debt and affirming client's status as creditor entitled to payment of $2,310,000 judgment).

- <u>Nanopierce Technologies, Inc. v. Depository Trust Clearing Corp.</u>, 123 Nev. 362,168 P.3d 73 (September 20, 2007) (brief and oral argument on behalf of amicus curiae North American Securities Administrators Assn.).

- <u>State of Nevada v. District Court</u> (RJR Tobacco), 125 Nev. 37, 44, 199 P.3d 828 (January 29, 2009).

- <u>Betsinger v. D.R. Horton, Inc.</u>, 126 Nev. 162, 232 P. 3d 433 (May 27, 2010).

- <u>Orion Portfolio Services 2, LLC v. Clark County, ex rel. University Medical Center</u>, 126 Nev. Adv. Op. No. 39, 245 P. 3d 529 (October 14, 2010).

- <u>U-Haul International, Inc. v. Albright</u>, 626 F. 3d 498 (9th Cir. 2010).

- <u>Bahena v. Goodyear Tire & Rubber Co.</u>, 126 Nev. Adv. Op. 57, 245 P.3d. 1182 (2010) (brief on behalf of amicus curiae United States Chamber of Commerce).

- <u>Stultz v. Bellagio, LLC</u>, Nevada Supreme Court Case No. 56164 (October 29, 2011).

- <u>Walters v. Eighth Jud. Dist. Ct. ex rel. Cnty., of Clark,</u> 127 Nev. Adv. Op. No. 66, 263 P.3d 231 (2011).

- <u>In re City Center Construction and Lien Master Litigation</u>, Nevada Supreme Court Case No. 57186 (October 19, 2011).

- <u>Richman v. District Court</u>, Nevada Supreme Court Case No. 60676 (May 31, 2013).

- <u>Golden Gaming, Inc. v. Corrigan Management, Inc.</u>, Nevada Supreme Court Case Nos. 61696 and 62200 (March 26, 2015).

- <u>Keisic v. Valley Health System, LLC, et al.</u>, Nevada Supreme Court Case No. 64445 (December 29, 2015).

  <u>ETHICS/PROFESSIONAL RESPONSIBILITY REPRESENTATION</u>

- Defense of non-Nevada lawyer on charges of unauthorized practice (and related offenses) before State Bar Disciplinary Panel (1998-1999). (Name of counsel and law firm are confidential.)

- Representation of candidate for district court in defense of complaint regarding campaign advertisements before Standing Committee on Judicial Ethics and Campaign Practices. (1998). Name of candidate is confidential.

- Representation of attorney in appeal of disqualification order (SCR 160). <u>Brown v. Eighth Judicial District Court</u>, 116 Nev. 1200, 14 P.3d 1266 (2000).

- Representation of attorney before fee dispute panel in matter involving recovery of quantum meruit fee in the absence of written fee agreement in contingent fee case. <u>West v. Myers</u>, No. 02-128.

- Representation of members of Nevada Commission on Judicial Discipline in defense of action challenging constitutionality of the Commission's rules and activities. <u>Snoeck v. Brussa</u>, 153 F.3d 984 (9th Cir. 1998).

- Representation of Members of Nevada Commission on Judicial Discipline in defense of RICO and Civil Rights claims. <u>Mosley v. Gang, et al.</u>, Case No. CV-S-00-0976-JLQ(LRL).

- Representation of State Bar of Nevada in defense of action brought by out-of-state law firm challenging the constitutionality of SCR 199 firm name provision. <u>Lewis & Roca v. Bare</u>, Case No. CV-S-99-0757-JBR (RLH).

- Representation of law firm in challenge to constitutionality of Supreme Court Rule prohibiting use of trade name by lawyers. <u>Michel v. Bare</u>, 230 F. Supp. 2d 1147 (D. Nev. 2002) (declaring SCR 199(1) unconstitutional).

- Representation of candidate for district court in defense of complaint regarding allegedly untrue and defamatory statements made concerning opponent before Standing Committee on Judicial Ethics and Campaign Practices. (2002). Name of candidate is confidential.

- Representation of Nevada Commission on Judicial Discipline in defense of § 1983 civil rights claim. <u>Luckett v. Hardcastle, et al.</u>, Case No. CV-S-05-0726 RLH-RJJ. (Complaint dismissed).

- Representation of attorney in defense of lawsuit alleging negligence and malpractice. Malignaggi v. Goldberg, Case No. A 508763, District Court, Clark County, Nevada (case dismissed).

- Representation of law firm in opposing disqualification motion. Provenza v. Yamaha Motor Co., Case No. A446708, District Court, Clark County, Nevada.

- Representation of law firm in opposing disqualification motion. Roth v. BMW, Case No. A453810, District Court, Clark County.

- Representation of non-Nevada lawyer regarding allegations of lack of candor toward tribunal (SCR 172) (2006). (Name of counsel and law firm are confidential.)

- Representation of law firm in opposing disqualification motion. Daniell v. Peake Development, Case No. A508494, District Court, Clark County.

- Representation of attorney in defense of State Bar proceeding regarding violations of NRPC 1.8 (business transactions with client) and NRPC 1.7 (conflict of interest). Name of attorney confidential (SCR 121).

- Representation of attorney in defense of claims for misappropriation of confidential information. Friedman v. Friedman, Case No. D07-376354D, District Court, Clark County, Nevada.

- Representation of attorneys in defense of claims alleging violations of NRPC 4.2 arising out of contacts with putative class members prior to class certification. Del Webb Communities, Inc. v. The Eighth Judicial District Court of the State of Nevada in and for the County of Clark, and The Hon. Timothy C. Williams, District Judge, and Real Parties in Interest, Case No. 49423, Nevada Supreme Court.

- Representation of attorney in defense of State Bar proceeding regarding violations of NRPC 1.5 (fees) and NRPC 4.2 (contact with represented person). Case dismissed. Name of lawyer is confidential. (SCR 121).

- Representation of entity owned by attorney in defense of NRPC 1.8 claim. In re Receivership of Southwest Exchange, Case No. A535439, District Court, Clark County, Nevada.

- Representation of attorney in defense of malpractice/breach of fiduciary duty claim. Sorrell v. Snell & Wilmer, Case No. 08-CV-00761-RCJ-LRL, U.S. District Court, Nevada. Case settled.

- Representation of attorney in appeal of judgment refusing to enforce contingency fee agreement's term regarding attorney's entitlement to particular fee in the

6

event of his termination.  Golightly v. Gassner, Case No. 50212, Nevada Supreme Court.  Case decided.

- Representation of party in defense of claim for attorney's fees arising out of alleged "frivolous" litigation.  Club 93, Inc. v. County of Elko, CV-C-08-163, Fourth Judicial District Court, Elko, Nevada.  Case settled.

- Representation of client against attorney in claim for refund of alleged "non-refundable" retainer.  Sperberg v. Hunterton, Case No. 08-149 (State Bar Fee Dispute Proceeding).  Case decided.

- Representation of attorney in action against former partner and others for wrongful expulsion from law firm.  Powell v. Powell Naqvi, Case No. 08-566761, Eighth Judicial District Court.  Case settled.

- Representation of clients in seeking review of U.S. Magistrate Judge's order imposing monetary sanctions upon parties, individual lawyers, and law firm.  Dennis Montgomery, Montgomery Family Trust v. eTreppid Technologies, L.L.C.; Warren Trepp, Department of Defense of the United States of America; and Does 1 through 10, and Related Cases, Case No. 3:065-CV-00145-PMP-VPC, U.S. District Court, District of Nevada.  Matter settled.

- Representation of suspended attorney in proceedings seeking reinstatement to Nevada Bar.  (In re Richard Pipkins).  Matter pending.  Representation terminated.

- Representation of attorney and law firm in opposing disqualification motion.  Edwin K. Slaughter, et al. v. Uponor, Inc., et al., Case No. 2:08-CV-01223-RCJ-GWF, U.S. District Court, District of Nevada.  Case dismissed.

- Representation of non-Nevada lawyer on State Bar inquiry into charges of unauthorized practice.  (2009-2010).  Matter concluded without action by State Bar.  Name of lawyer is confidential.

- Representation of attorneys in defense of State Bar disciplinary proceeding alleging fee-splitting with non-lawyer and other matters.  State Bar v. Eglet (Case No. SG-10-0874) and Adams (Case No. SG-12-0803).

- Representation of attorney in fee dispute arbitration.  Davidson v. Gentile, Case No. 10-085, Nevada State Bar Fee Dispute Committee.  Matter decided.

- Representation of attorney in defense of State Bar disciplinary proceeding.  State Bar of Nevada v. Anthony Lopez, Bar No. 08-175 (and numerous related and consolidated cases).  Matters pending.

- Representation of judicial candidate in action challenging constitutionality of Nevada Code of Judicial Conduct Canon 4, Rule 4.1(A)(11). <u>Kishner v. Nevada Standing Committee on Judicial Ethics and Election Practices</u>, Case No. 2:10-cv-01858-RLH-RJJ, U.S. District Court, Nevada.  Matter concluded.

- Representation of attorney in matter where attorney disclosed confidential information relating to the representation of a client to prevent the commission of a criminal and fraudulent act by the client. Nevada RPC 1.6(b)(2) and (3). Attorney's name is confidential.  Case settled.

- Representation of former clients in action against law firm and attorney.  <u>Frias Holding Co. v. Greenberg Traurig</u>, Case No. A-10-630319-C, Eighth Judicial District Court, Clark County, Nevada.  Engagement concluded.

- Representation of former client against law firm in defense of  fee collection proceeding and in prosecution of malpractice counterclaim. <u>Lionel Sawyer & Collins v. DeWald</u>, State Bar Fee Dispute Committee Matter No. 10-108.  Case dismissed.

- Representation of law firm and lawyers in dispute with insurer over coverage for claims of professional negligence.  <u>Pacifica v. Goold Patterson, et al.</u>, Case No. A557726 (and related cases), Eighth Judicial District Court, Clark County, Nevada.  Matter settled.

- Representation of attorneys in defense of five consolidated disciplinary complaints arising out of consumer bankruptcy representation.  Nevada RPC 1.3, 1.4, 5.3 and 8.1.  <u>State Bar v. Haines and Krieger</u>, Case Nos.10-121-2842; 10-134-2842; 10-137-2557; SG10-0023; and SG10-0044. Matters concluded.

- Representation of law firm and lawyers in defense of lawsuit alleging violations of Nevada RPC 1.8.  <u>Richman v. Haines & Krieger, LLC, et al.</u>, Case No. A-11-643004-C, Eighth Judicial District Court, Clark County, Nevada; Case No. 60676, Nevada Supreme Court (May 31, 2013).  Matter pending following remand.

- Representation of lawyers in defense of 46 consolidated bar grievances and complaints arising out of consumer bankruptcies and residential loan modifications.  State Bar v. George Haines and David Krieger, Grievance No. SG11-1800 (and related matters).

- Representation of attorneys in challenge (by mandamus) to order of disqualification.  In re City Center Construction and Lien Master Litigation: <u>MGM Mirage Design Group v. District Court</u>, Nevada Supreme Court Case No. 57186 (October 19, 2011).

- Representation of Trust Beneficiaries in motion to disqualify counsel for trustee. In Re Cook Trusts, Case No. P-11-071394-T. Eighth Judicial District Court, Clark County, Nevada. Matter Decided.

- Representation of former client in defense of fee collection suit by law firm and prosecution of malpractice counterclaim. Lionel Sawyer & Collins v. DeWald, Case No. 79 194 Y 00090 11 nolg (AAA). Engagement concluded.

- Representation of not-for-profit entity in State Bar proceeding alleging unauthorized practice by assisting homeowners in dealings with mortgage lenders. (Name of client is confidential). Engagement concluded.

- Representation of Stokes & Stokes, Ltd. in the defense of various bar grievances. Case settled.

- Representation of parties in action seeking to overturn arbitrators' decision on grounds of fraud and partiality. Parker v. Carlson, et al., Case No. A571921, Eighth Judicial District County, Nevada. Matter settled.

- Representation (special counsel) of Allstate Insurance Co. on privilege and work product issues arising from interviews of former clients of an attorney. Allstate Insurance Co., v. Balle, et al., Case No. 2:10-CV-02205-KJD-RJJ, United States District Court, District of Nevada. Matter concluded.

- Representation of attorney and law firm in defense of allegations of unauthorized practice (Rule 5.5) and failure to register as a multi-jurisdictional law firm (Rule 7.5A). Waite v.Clark County Collection Service, Case No.2:11-cv-01741-LRH-VCF, United States District court, District of Nevada. Matter concluded

- Representation of attorney in defense of State Bar disciplinary proceeding as to alleged violations of RPC 1.7 (current client conflict), RPC 5.4 (professional independence/fee splitting with non-lawyers), and RPC 8.4 (misconduct involving dishonesty and fraud). State Bar v. Noel Gage, Case No. 08-053-1890. Disciplinary case concluded with settlement. Settlement approved by the Nevada Supreme Court. Client reinstated as member of State Bar.

- Representation of bar applicant before State Bar Moral Character and Fitness Committee on charges relating to alcohol abuse, plagiarism and financial responsibility. In re Melanie Feldhauser-Thomas. Matter concluded.

- Representation of law firm and its clients in opposing motion to disqualify law firm for acquisition and use of allegedly privileged documents. In re C.E. Cook Family Trust, Consolidated Case No. P-11-071394-T, District Court, Clark County, Nevada. Matter concluded.

- Representation of attorney in defense of State Bar disciplinary proceedings as to alleged violation of trust account rules. State Bar v. Joseph Scalia, Case Nos. SG11-1737, SG12-0903. Engagement concluded.

- Representation of former client of law firm in dispute with law firm arising out of law firm's conflict of interest in defending former client and another defendant at trial, where former client was found liable and other defendant was not. Names of client and law firm are confidential. Matter settled.

- Representation of attorney in appeal of letter of private reprimand resulting from attorney's conduct in federal court litigation. In re Steven Gibson, Case No. SG-12-0104. Matter decided.

- Representation of law firm in dispute with second law firm over payment of fees alleged to be due under fee sharing agreement. Gage Law Firm v. Feinberg Mayfield Kaneda & Litt, LLP d/b/a Fenton Grant Mayfield Kaneda & Litt, LLP f/k/a Feinberg Grant Mayfield Kaneda & Litt, Case No. A-14-697336-B, District Court, Clark County, Nevada. Matter pending.

- Representation of defendant entity sued by plaintiff's counsel with whom defendant entity had prior relationship, in proceedings regarding disqualification of plaintiff's counsel. Matter is confidential.

- Representation of departed lawyer in dispute with former firm regarding client files and compensation. Matter is confidential.

- Representation of law firm in dispute with departed lawyer regarding compensation. Matter is confidential.

- Representation of former attorneys' client in action against attorneys for malpractice and breach of fiduciary duty. McKenna v. Chesnoff, et al., Case No. 2-14-cv-1773-JAD-CWH pending in the United States District Court, District of Nevada.

- Representation of law firm and attorney in defense of claims for breach of duty and aiding and abetting breach of fiduciary duty. Hugh S. Proctor, et al. v. CPF Recovery Ways, LLC, et al., Case No. 2:14—cv-01693-RFB-PAL pending in the United States District Court, District of Nevada. Case settled.

- Representation of attorney in disciplinary proceedings resulting from attorney's conviction of a crime. State Bar of Nevada v. Chandan Manansingh, No. CR13-1850 (2015).

- Representation of attorney in defense of allegations of unauthorized practice of law. Matter is confidential.

- Representation of two partners of law firm in connection with their resignation from that firm and formation of a new firm. Matter is confidential.

- Representation of non-party for purpose of asserting accountant-client privilege in case where non-party's confidential information was at risk of disclosure.  Core-Vent Bio Engineering, Inc. v. Polo Nevada Investments, Case No. A644240, Eighth Judicial District Court, Clark County, Nevada.  Matter concluded.

- Representation of attorney regarding potential disciplinary complaint arising out of litigation financing and transactions involving medical liens.  Name of attorney is confidential.

- Representation of client in contemplated action against former attorney for malpractice.  Names of client and attorney are confidential.

- Representation of client in matter following the striking of client's answer and imposition of sanctions for discovery violations and misconduct of prior counsel (Rule 3.3).  Jane Doe v. Valley Health System, LLC, et al., Case No. 09-A-595780-C in the Eighth Judicial District Court, Clark County, Nevada.  Matter pending.

- Representation of managing partner of Las Vegas office of national law firm in connection with his departure from that firm and the formation of a new law firm.  Names of attorney and law firm are confidential.

## RETENTION AS EXPERT:  ETHICS/PROFESSIONAL RESPONSIBILITY

- Retained by bar applicant to give expert testimony before State Bar Moral Character and Fitness Committee regarding duty of confidentiality arising out of applicant's seeking employment with law firm representing adverse party.  Testimony given. (2004)  (Name of bar applicant is confidential).

- Retained by Cherry & Bailus to give expert testimony before State Bar Fee Dispute committee on issues regarding attorneys' withdrawal/termination of representation.  Testimony given.

- Retained by Dominic Gentile to give expert testimony in U.S. Bankruptcy Court, Orange County, California, on attorney's obligations to client upon withdrawal and attorney's duty to withdraw.  Offer of proof; no testimony given.  In re Ken Mizuno; The Bankruptcy Estate of Ken Mizuno v. Ken Mizuno, Dominic P. Gentile, Terrance G. Reed, et. al., Case No. SA94-14429LR, Adv. No. AD95-01043, United States Bankruptcy Court, Central District of California.

- Retained by Law Offices of Stan Hunterton to testify in State Court case on issues concerning attorney's obligations in billing client for fees and charging for costs and expenses.  Report prepared.  No testimony given.  Shinehouse & Duesing, a Nevada partnership, and Rumph & Peyton, a Nevada Partnership v. R.D. Prabhu, an individual, Case No. A379297, District Court, Clark County, Nevada.  Case

dismissed and re-filed as <u>Shinehouse & Duesing v. Prabhu</u>, Case No. A456661, District Court, Clark County, Nevada. Case dismissed.

• Retained by Law Offices of Gary Logan to testify as to lawyer's duties to jointly represented clients. Testimony given. <u>Nault v. Mainor</u>, Case No. A401657, District Court, Clark County, Nevada, <u>Mainor v. Nault</u>, 120 Nev. Adv. Op. 84, 101 P.3d 308 (2004).

• Retained by Alverson, Taylor, Mortensen, Nelson & Sanders to testify as to duties of attorney (competence) and scope of representation. Report prepared. Case dismissed. <u>Ilbert Mednicoff, an individual and CCN, Inc., a Nevada corporation v. George F. Holman, an individual, Robert L. Bolick, an individual, Stewart A. Gollmer, an individual, Gary Fields, an individual, Law Offices of Robert L. Bolick, Ltd., a Professional corporation and Does 1 through 100, inclusive</u>, Case No. A377374, District Court, Clark County, Nevada.

• Retained by Alverson, Taylor, Mortensen, Nelson & Sanders to testify as to duties of law firm to supervise work of associate attorney. Report prepared. Case dismissed. <u>Anthony Guymon, an incompetent person, by and through his Guardian ad Litem, Barbara Guymon; Barbara Guymon v. Cory J. Hilton; Hilton & Kahle; Villani, Hilton & Kahle; Villani, Gardner & Hilton; Perry & Spann; Pico & Mitchell, Ltd.; and Does 1 to 10, inclusive</u>, Case No. 00-A-422013-C, District Court, Clark County, Nevada.

• Retained by Alverson, Taylor, Mortensen, Nelson & Sanders to testify as to lawyer's conduct in trial and settlement of case. Report prepared. Case dismissed. <u>Mark J. Brown v. Alan Catley (and related cross actions)</u>, Case No. A381988, District Court, Clark County, Nevada.

• Retained by State Bar to testify in disciplinary proceeding as to lawyer's duties under SCR 170 (prohibition on filing frivolous litigation). <u>State Bar v. Mirch</u>, Case No. 3-34-20. Report prepared. Testimony given. <u>In The Matter of Discipline of Kevin Mirch</u>, Case No. 49212, Nevada Supreme Court, April 10, 2008 (attorney disbarred).

• Retained by Holland & Hart to testify as to duties owed by lawyer who engages in business transactions with clients. <u>Rivers v. Romano, et al.</u>, Case No. A483701, District Court, Clark County, Nevada. Report prepared. Testimony given. Case dismissed.

• Retained by attorney to testify regarding duties under SCR 152 (scope of representation), SCR 153 (diligence) and SCR 166 (declining or terminating representation), <u>State Bar v. Goldberg</u>, No. 04-013-1536. Testimony given. Case dismissed.

- Retained by Cristalli & Saggese to testify as to issues regarding formation of attorney-client relationship, scope of representation, and breach of duties arising therefrom. Johnson v. Smith, Case No. 512364. Report prepared. Case dismissed.

- Retained by Snell & Wilmer to testify regarding duties and responsibilities of attorney providing opinion in real estate sale transaction. Sundance West LLC, et al. v. Orix Capital Markets, LLC, Case No. CV-04-01995, Second Judicial District Court, Washoe County, Nevada. Report prepared. Case dismissed.

- Retained by Alverson, Taylor, Mortensen, Nelson & Sanders to testify regarding issues pertaining to insurer's "captive" law firm, including disclosure and client consent requirements. Artisan Tile & Plumbing, Inc., a Nevada corporation, formerly known as Davila Jimenez, Inc. doing business as Pueblo Landscape Company, Inc. v. Assurance Company of America, a New York Corporation; Bennion Clayson Marias & Haire fka Bennion & Clayson; Does 1 through 10, inclusive, Case No. A503744, District Court, Clark County, Nevada.

- Retained by Menter & Witkin to testify regarding (i) attorney's acceptance of defense of insured subject to insurer's litigation guidelines; (ii) conflicts arising from attorney's representation of four co-defendants in construction defect litigation; (iii) duty of insurer to provide independent counsel; and (iv) whether attorney's conduct met standard of care. National Fire & Marine Insurance Company v. Roger Gurr and Elsie Gurr (and counterclaim), Case No. 3:05-CV-0658-BES-VPC, United States District Court, District of Nevada. Report prepared. Case settled.

- Retained by Alverson, Taylor, Mortensen & Sanders to testify regarding attorney's conduct in determining proper defendants in litigation. Lesky v. Callister, Case No. 527875, District Court, Clark County, Nevada. Report prepared. Case dismissed.

- Retained by Gordon & Silver to testify regarding conduct of attorney and law firm in business transaction with client. Richards v. Allison, MacKenzie, et al., Case No. 03-01781A, First Judicial District Court, Carson City, Nevada. Report prepared. Case dismissed. Appeal pending.

- Retained by Deaner Scann Malan & Larsen to testify regarding an alleged conflict of interest arising from law firm's prior work and status of lawyer as shareholder in party to case. D & J Properties v. Siena Office Park 2, Case No. A537781, District Court, Clark County, Nevada. Report prepared. Testimony Given. Matter decided.

- Retained by Solomon Dwiggins & Freer to testify regarding the conduct of a lawyer and his law firm in the handling of an estate where the lawyer acted as trustee of various trusts and retained his own law firm to represent him. Leseberg

v. Woods, Case No. P59334, District Court, Clark County, Nevada. Report prepared. Deposition testimony given. Trial testimony given. Case settled.

- Retained by Menter & Witkin to testify regarding (i) duties of Nevada lawyer residing out of state and maintaining office in Nevada (SCR 42.1); and (ii) duties of multi-jurisdictional law firm maintaining office in Nevada (NRPC 7.5A). Roger and Elsie Gurr v. National Fire & Marine Insurance Company, Reiser & Associates, and Does 1 through 40, Case No. 07-CV-615-HDM-VPC, in the United States District Court, Reno. Report prepared. Case settled.

- Retained by Lewis Brisbois Bisgaard & Smith to testify regarding restitution of fees paid to law firm who is later disqualified due to conflict of interest. American Heavy Moving and Rigging, Inc. v. Lewis Brisbois Bisgaard & Smith, LLP, State Bar Fee Dispute Case No. 07-055 (State Bar Fee Dispute Panel). Rebuttal report prepared. Testimony given. Case decided.

- Retained by Michael Warhola to testify regarding waiver of attorney-client privilege by inadvertent disclosures of e-mail from client. Seidman v. Dilloo, Case No. D260143, District Court, Clark County, Nevada. Report prepared.

- Retained by attorney as consulting expert regarding opposing counsel's violations of NRPC 1.2(d) and 8.4(d) by rendering legal aid and advice to fugitive client to enable him to prosecute and defend litigation in Nevada. Joseph A. Bravo, David Z. Chesnoff, and Eckley M. Keach, Capital Growth Limited, Inc., Punta Arena De La Ventana, S.A. de C.V., Boca De La Salina, SA De C.V. v. Capital Growth, LLC, and Kerry Rogers, and All Related Actions, Case No. A536644, A542755, A535548, District Court, Clark County, Nevada. Report prepared. Underlying case dismissed. Bar Grievance filed. Screening panel testimony given. Matter decided.

- Retained by attorney as consulting expert to advise whether opposing counsel's conduct (harassment of witness) violated NRPC 8.4(d). Julia Brady, et al v. Kerry Rogers, et al., Case No. A572440, District Court, Clark County, Nevada. Report prepared. Underlying case dismissed.

- Retained by Alverson, Taylor, Mortensen, Nelson & Sanders to testify regarding duties and responsibilities of a lawyer who is counsel of record in pending litigation, whose client retains other counsel and then ceases communicating with the lawyer. Geier v. Denue, et al., Case No. A525183, Eighth Judicial District Court, Clark County, Nevada. Report prepared. Case settled.

- Retained by Marquis & Aurbach (later replaced by Lionel Sawyer & Collins) to testify regarding duties of lawyer who prepares a trust document, is appointed trustee upon client's death, and then retains his own law firm to represent the trust. In the Matter of the Total Amendment and Restatement of the William Eversole Family Trust Originally Dated April 6, 1996, Case No. P-09-0654430-T,

Eighth Judicial District Court, Clark County, Nevada.  Report prepared.  Case settled.

- Retained by law firm to advise as to firm's duties when potential conflict arises between clients jointly represented by firm in defense of litigation. NRPC 1.7. (Name of firm and identities of clients are confidential).

- Retained by Thorndal Armstrong Delk Balkenbush & Eisinger to testify regarding the scope of duties owed by a lawyer who has been retained to render only limited services. Brewer v. State of Nevada, et al., Case No. 554064, Eighth Judicial District Court, Clark County, Nevada.  Report prepared.  Matter settled.

- Retained by Alverson, Taylor, Mortensen, Nelson & Sanders to testify regarding the duties owed to a minority shareholder by a lawyer who represents a closely held corporation. Jackson v. Ira Levine, et al., Case No. A538983, Eighth Judicial District Court, Clark County, Nevada. Report prepared.  Trial testimony given. Case decided.

- Retained by Schiff Hardin, LLP to testify as to reasonableness of attorneys' fees. DTPI Holdings, LLP v. Forrest Binkley & Brown Capital Partners, LLP, Case No. 2:07-CV-00690-BES-RJJ, U.S. District Court, District of Nevada.  Report prepared. Case decided.

- Retained by Doyle Berman Murdy, P.C. to opine on attorney's conduct in representing several parties in related transactions.  XMASCO, LLC v. Wellborn & Associates, P.C., et al., Case No. A566261, Eighth Judicial District Court, Clark County, Nevada.  Case dismissed.

- Retained by Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, to testify as to attorney's duties regarding safekeeping and distribution of client's funds. Azine, et al. v. Johnson, et al., Case No. A587009, Eighth Judicial District Court, Clark County, Nevada.  Case settled.

- Retained by Lewis Brisbois Bisgaard & Smith to testify as to law firm's duties in preparing and communicating with client regarding drafts of transactional documents. Padilla v. Smith, Case No. A569307, Eighth Judicial District Court, Clark County, Nevada.  Report prepared.  Case settled.

- Retained by Solomon Dwiggins & Freer to testify regarding attorney's conduct in representing trustors and beneficiaries of a trust. Buck v. Hoffman, Case No. CV09-00324, Second Judicial District Court, Washoe County, Nevada.  Report prepared. Deposition taken.  Case settled.

- Retained by Lewis Brisbois Bisgaard & Smith to testify regarding attorney's conduct in representing closely held corporation. RPC 1.13.  Rita Quam Family Trust, et al. v. OPA Management, LLC, et al., Case No. A568829, Clark County

District Court. Report prepared. Case concluded on summary judgment in favor of attorney. Amended Complaint filed,. Additional report prepared. Matter settled.

- Retained as special counsel to brief and argue defendants' rights and obligations (*vis-a-vis*, non-settling plaintiffs) regarding possibly privileged or confidential documents received by defendants from some plaintiffs as a part of a settlement. Klaas v. Vestin Mortgage, Case No. A528385, Clark County District Court (matter decided).

- Retained by Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP to testify as to lawyer's obligations upon receipt from a third party of documents and information which appear to have been misappropriated from adverse party. Merits Incentives, LLC v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark, 127 Nev. Adv. Op. 63, 262 P.3d 720 (2011).

- Retained by Thorndal, Armstrong, Delk, Balkenbush & Eisinger to testify regarding attorney's conduct (diligence and competence) in representing client in complex mechanic's lien litigation. Maui One Excavating v. Mead & Pezzillo, et al., Case No. A539801, Clark County District Court. Report prepared. Case settled.

- Retained by Robertson & Vick, LLP to testify as to reasonableness of attorneys' fees. Voggenthaler, et al. v. Maryland Square, et al., Case No. 2:08-CV-01618 RCJ (GWF), U.S. District Court, District for Nevada. Report prepared. Matter decided.

- Retained by Travelers Companies, Inc. to opine on issues relating to the unauthorized practice of law (Nevada RPC 5.5 and SCR 49.10). Opinion prepared.

- Retained by Chamberlain Hrdlicka White Williams & Martin to opine on several Nevada RPC 8.3 issues in Valdez v. Cox Communications, et al., Case No. 2:09-CV-1797-PMP-RJJ in the U.S. District Court, District of Nevada. (Oral opinion delivered.)

- Retained by Mark Zaloras and the Law Offices of Peter Goldstein to opine on several malpractice, billing and fee issues. Gaxiola-Lim v. Michel, Case No. A-10-613812-C, Clark County District Court. Preliminary report prepared. Matter settled.

- Retained by the Cashill Law Firm to opine on attorney's entitlement to a fee for work done on behalf of an incompetent client. Merle Layton Trust, Case No. PR98-00336. Second Judicial District Court, Washoe County, Nevada. Report prepared.

- Retained by Marquis Aurbach Coffing to testify as to attorney's conduct in representation of clients and matters relating to negotiation of release from malpractice liability. <u>Gugino v. Nevada Contractors Ins. Co., et al.</u>, Case No. A-11-637935-B, Clark County District Court. Report prepared. Testimony given. Matter pending.

- Retained by Vernon L. Bailey, Esq. to testify as to attorneys' conduct in representation of clients and matters relating to legal malpractice, breach of fiduciary duty and negligence. <u>Inca Investments, Inc.; Platina, Inc. v. Kevin R. Hansen, Esq.; Wilde Hansen, LLP; Gregory L. Wilde, Esq.; Richard S. Ehlers, Esq.</u>, Case No. A-09-604391-C, Clark County District Court. Report prepared. Deposition taken. Case settled.

- Retained by Laxalt & Nomura to testify as to attorneys' obligations to and conduct affecting opposing party in litigation. <u>Pompei v. Hawes, et al.</u>, Case No. A-11-642012-C, Clark County, District Court. Report prepared. Deposition taken. Matter pending.

- Retained by Randolph Goldberg to testify as to attorney's conduct regarding various issues. <u>State Bar v. Goldberg</u>, Case Nos. 09-049-1536; 09-102-1536; and 09-235-1536. Report prepared. Matter pending.

- Retained by multi-jurisdictional law firm to render advice on compliance with Nevada registration and practice requirements (Nev. R.P.C. 7.5A).

- Retained by Christian, Kravitz, Dichter, Johnson & Sluga, LLC to testify regarding attorneys' obligations when terminating employment with a law firm and starting a new firm. <u>Burr v. Dodds</u>, Case No. A-11-650060-B, Clark County District Court. Matter settled.

- Retained by Hong & Hong to testify as to duties of attorneys (competence) in conduct of litigation. <u>Wacht v. Peel & Brimley</u>, Case No. A646410, Clark County District Court. Report prepared. Matter decided.

- Retained by attorney to render opinion on duties regarding disposition of disputed funds held by attorney. (Nev. R.P.C. 1.15) (Attorney's name is confidential.)

- Retained by Greenspoon Marder, P.A. to render opinion on attorney's duty to obtain clients' informed consent before settling or dismissing claims. <u>Pittman v. Westgate Planet Hollywood Las Vegas, LLC</u>, Case No. 2:09-CV-00878-PMP-GWF, United States District Court, District of Nevada. Report prepared. Matter decided.

- Retained by Simon & Berman to render opinion on conduct of lawyer and law firm in representing client in litigation (diligence, competence and

communications)., <u>Chandler v. Black & LoBello, et al.</u>, Case No. A-11-643955, refiled as Case No. A-12-660252, Clark County District Court. Matter settled.

- Retained by Lewis Brisbois Bisgaard & Smith LLP to render opinion on conduct of attorney in matters pertaining to failed investment. <u>Softwind Capital, LLC v. Global Project Solutions, LLC, et al.</u>, Case No. 2:11-CV-02057-JCM-GWF, United States District Court. Case settled.

- Retained by Lewis Brisbois Bisgaard & Smith LLP to render opinion on conduct of attorney regarding loans made to client (Nevada RPC 1.8). <u>Albert D. Massi v. Donald and Mary Nobis</u>, Case No. A672579 in the District Court, Clark County, Nevada. Case settled.

- Retained by law firm as consulting expert to render opinion regarding attorney's duty to report misconduct by opposing counsel. Nevada RPC 8.3(a). Name of law firm and subject attorney are confidential.

- Retained by Lewis Roca Rothgerber to render opinion on whether the common religious affiliation of the judge and one party's counsel requires the judge to recuse himself. <u>Lynan v. Health Plan of Nevada</u>, Case No. A583772 and <u>Magana v. Health Plan of Nevada</u>, Case No. A583816, District Court, Clark County, Nevada. Report prepared. Matter decided.

- Retained by Littler Mendelson to render opinion as to the propriety of self-dealing and other activities by company's in-house counsel. <u>Randazza v. Excelsior Media Corp.</u>, JAMS Case No. 1260002283. Report prepared. Testimony given. Case decided.

- Retained by Judy M. Sheldrew, Esq. to render an opinion on the propriety of several attorneys' conduct in dealing with client having diminished capacity <u>Andrews v. Rowe, et al.</u>, Case No. 12-PB-0075 in the Ninth Judicial District Court, Douglas County, Nevada. Report prepared. Case settled.

- Retained by Christine A. Zack to opine on issues of unauthorized and multi-jurisdictional practice of law. <u>In re: Fundamental Long Term Care, Inc.</u>, Case No. 8-11-BK-22258-MGW, District of Florida. Matter settled.

- Retained by Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, to opine on issues of supervision and trust account matters. <u>SBS Retail, Inc. v. Yves Chantre, Inc.</u>, Case No. A-13-681083-C, District Court, Clark County, Nevada. Matter pending.

- Retained by Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, to opine on issues regarding the conduct of class counsel in dealing with class representative. <u>Goldsmith v. Sill, et al.</u>, Case No. 2-12-CV-0090-LDG-CWH in the U.S. District Court, District of Nevada. Report prepared. Case pending.

- Retained by Lewis Brisbois Bisgaard & Smith LLP to opine on issues regarding conduct of counsel with respect to claims alleged in David Siebrasse, as Personal Representative of the Doreen Siebrasse Estate v. Jeffrey Burr, Ltd.; Jeffrey Burr; Mark Dodds; John Mugan; et al., Case No. A-11-648532-C, in the District Court, Clark County, Nevada. Report prepared. Case settled.

- Retained by Lewis Brisbois Bisgaard & Smith LLP to opine on issues regarding conduct of counsel with respect to claims alleged in T&R Construction Group v. Clark Tatom, LLC; and Bradley R. Tatom, Case No. A-13-689637-B, in the District Court, Clark County, Nevada. Report prepared. Case settled.

- Retained by Fulbright & Jaworski to opine on that firm's conduct in representing related entities in commercial transaction. Verano Land Group, LP v. VTLM Texas LP, et al, Case No. A-12-655514-B in the Eighth Judicial District Court, Clark County, Nevada. Report prepared. Deposition taken. Matter pending.

- Retained by Bowen Hall to opine on (i) propriety of lawyer threatening to withdraw from case during contested hearing unless the client accepted a settlement offer, and (ii) other issues of competency and diligence. James J "Butch" Peri v. Stephen C. Mollath; Prezant & Mollath; et al., Case No. CV08-02546 in the Second Judicial District Court, County of Washoe, State of Nevada. Trial testimony given. Case settled.

- Retained by Wilson, Elser, Moskowitz, Edelman & Dicker, LLP to opine on lawyer's duties with respect to firm trust account and partner's improper conduct. SBS Retail Inc., et al. v. Yves Chantre Inc., et al., Case No. A-13-681083-C, in the District Court, Clark County, Nevada. Report prepared. Case settled.

- Retained by Lewis Roca Rothgerber to opine on attorneys' conduct during trial and compliance with Nevada RPC 3.3 (candor to the tribunal) in the matter entitled Health Plan of Nevada, Inc., et al. v. Helen Meyer, et al., Nevada Supreme Court Case No. 64692. Report prepared. Case settled.

- Retained by McDonald Family Trust to opine on the conduct of shareholders and the entity's counsel in a related party transaction. Nevada RPC 1.13. Russell G. Sheltra, individually and as Trustee of the Russell G. Sheltra Gaming Trust and Little Bonanza, Inc. v. Margaret McDonald and Timothy McDonald, Individually and as Trustees of the Robert and Gloria McDonald Family Trust, et al., Case No. CV14-01111, in the Second Judicial District Court, Washoe County, Nevada. Case pending.

- Retained by Holland & Knight to opine on the reasonableness of attorneys' fees in the matter entitled Leerad, LP, et al. v. Imperial Credit Corporation d/b/a A.I. Credit Corporation, et al., Case No. A631490, in the Eighth Judicial District Court, Clark County, Nevada. Report prepared. Case pending.

- Retained by Thorndal, Armstrong, Delk, Balkenbush & Eisinger to opine on conduct of attorney in commercial real estate transaction. Shulman v. Bendavid,

Case No. A682679, District Court, Clark County, Nevada. Case Pending. Report prepared. Deposition taken. Case settled.

- Retained by Clyde Snow & Sessions to opine on attorney's conduct in a matter affecting several clients (RPC 1.7; 2.2). <u>United States of America v. Leon Benzer, et al.</u>, Case No. 2:13-cr-00018-JMC-GWF pending in the United States District Court, District of Nevada. Report prepared. Testimony given. Matter decided.

- Retained by Liberty Media Holdings LLC to opine on conduct of its in-house counsel in several matters. <u>Randazza v. Liberty Media Holdings, LLC</u>, Case No. A-12-673275-C in the Eighth Judicial District Court, Clark County, Nevada. Report prepared. Matter pending.

- Retained by Weinberg Wheeler Hudgins Gunn & Dial to opine on conduct of attorneys in representation (and withdrawal) of clients in litigation. <u>Lee v. 70 Ltd. Partnership</u>, Case No. A-13-691389-C, Eighth Judicial District Court, Clark County, Nevada. Report prepared. Matter pending.

- Retained by Rock Fusco & Connelly, LLP to opine on conduct of attorneys in the conduct of litigation. <u>International Game Technology v. Armstrong Teasdale, LLP</u>, Case No. A-15-715079-C, Eighth Judicial District Court, Clark County, Nevada. Case pending.

- Retained by Durham Jones & Pinegar to opine on conduct of attorney with respect to financial dealings with client (RPC 1.7 and 1.8). <u>Center Firearms Corp. v. Long Mountain Outfitters</u>, Case No. A-14-709294-B, Eighth Judicial District Court, Clark County, Nevada. Report prepared. Case decided.

- Retained by law firms to opine on issues regarding potential conflicts of interest which arise after retention in a matter. Names of law firms are confidential.

- Retained by Faux Law Group to opine on lawyers' conduct in the litigation and settlement of a matter. <u>Nahabedian v. Sutcliffe, et al., and related claims, counterclaims and third-party claims</u>, Case No. A-12-673897-C, District Court, Clark County, Nevada. Case settled.

- Retained by Gibbs, Giden, Locher, Turner & Senet LLP to opine on the conduct of a law firm and its attorneys (competence and supervision) in the representation of an HOA client. <u>Vistana Condominium Owners Assn., Inc. v. Kummer Kaempfer Bonner Renshaw & Ferrario</u>, Case No. 08-A-578306, District Court, Clark County, Nevada. Report prepared. Deposition taken. Case pending.

- Retained by Rimini Street, Inc. and Seth Ravin to opine on the reasonableness of the fees and costs incurred by the Plantiffs' counsel in the case entitled <u>Oracle USA, Inc., et al. v. Rimini Street, Inc. and Seth Ravin</u>, Case No. 2:10-cv-0106-LRH-PAL pending in the United States District Court, District of Nevada. Report prepared. Case pending.

- Retained by Lipson, Neilson, Cole, Seltzer & Garin, PC to opine on the conduct of members of Wasserman Kornheiser, LLP, at issue in the claims alleged in the matter entitled <u>Carlisle Homeowners Association v. Pacifica Covington, LLC, et al.</u>, Case No. A-13-678911-D, District Court, Clark County, Nevada.

- Retained by Lewis Roca Rothgerber to opine on conduct of attorney in the litigation of a matter. <u>Huckabay Properties, Inc. v. Beau Sterling, et al.</u>, Case No. CV-15-00765, Second Judicial District Court, Washoe County, Nevada. Case pending.

- Retained by Gordon & Rees to opine on the conduct of attorney regarding business transaction with client. <u>Blanchard v. Rosenfeld</u>, Case No. A637650, District Court, Clark County, Nevada. Report prepared. Case pending.

- Retained by Loose Brown & Associates to opine on the conduct of a law firm and one of its lawyers in the representation of a client in litigation. Matter is confidential.

- Retained by Morris Polich & Purdy to opine on conduct of lawyer and law firm in representation of client in litigation. <u>Sunport Business Trust v. Serle, et al.</u>, Case No. A-15-716677-C, District Court, Clark County, Nevada. Report prepared. Rebuttal report prepared. Case pending.

<u>CONTINUING LEGAL EDUCATION INSTRUCTION (1997-Present)</u>

- Southern Nevada Association of Women Attorneys (1/7/16): "Things to Fear in the New Year"

- Clark County Bar Association (12/9/15): "12th Annual Ethical Issues"

- Clark County Bar Association (6/25/15): "Things You Don't Know Can Hurt You – Here are 12 of them"

- Water Law Institute: 17th Annual Law of the Colorado River Conference (5/1/15): "Ethics and Social Media"

- Southern Nevada Association of Women Attorneys (1/15/15): "Ethics Issues for 2015"

- Clark County Bar Association (11/13/14): "11th Annual Ethics CLE"

- American Bar Association Section of Environment, Energy and Resources, 32nd Annual Water Law Conference: Ethics for Water Lawyers (6/6/14)

- Association of Legal Administrators, Las Vegas Chapter (5/13/14): "Issues in New Business Intake."

- American Bar Association Group Legal Services Association and Solo, Small Firm and General Practice Division Annual Meeting (5/2/14): "Ethics Issues In Marketing and Client Development."

- State Bar of Nevada:  Section of Environmental and Natural Resources Law (2/27/14) "Ethics Issues for Environmental Lawyers."

- Clark County Bar Association (12/13/13).  10th Annual Ethics CLE.

- City of Henderson, City Attorneys' Annual Retreat (10/17/13).  "A Lawyer Walks Into a Bar . . . The Dangers of Casual Advice and Conversation."

- Las Vegas Paralegal Society:  Keeping Abreast of Conflicts and Unauthorized Practice (6/18/13).

- Association of Legal Administrators, Las Vegas Chapter:  Legal Administrator's Role in Preventing Malpractice (6/11/13).

- American Bar Association Section of Environment, Energy and Resources, 31st Annual Water Law Conference:  Water Lawyers and Ethics (6/7/13).

- Clark County Bar Association (5/8/13) "4th Annual Solo and Small Firm Ethical Traps."

- UNLV Boyd School of Law (3/8/13) "Professionalism and Popular Culture."

- Clark County Bar Association (11/2/12).  9th Annual Ethics CLE.

- Clark County Bar Association (3/28/12).  "3rd Annual Hanging Out a Shingle? Solo and Small Firm Ethical Traps."

- American Bar Association Business Law Section Spring Meeting (3/22/12). "Saints and Sinners: Ethical Issues and Dilemmas in Client and Practice Development."

- Southern Nevada Association of Women Attorneys (2/24/12).  "Ten for Twelve: Ethics 2012."

- Clark County Bar Association (11/3/11) "8th Annual Ethics CLE."

- Nevada Paralegal Assn. (6/18/11) "UPL: Attorney Supervision of Paralegals."

- Department of Energy Contractor Attorneys' Assn. (5/27/11) "Ethics: Ten Things You Should Know."

- Southern Nevada Association of Women Attorneys (2/25/11) "Ten For Eleven: Ethics 2011."

- Clark County Bar Association (2/4/11) "Hanging Out A Shingle?  Solo and Small Firm Ethical Traps."

- Clark County Bar Association (9/30/10) "7th Annual Ethics Issues: 2010."

- American Society of Breast Surgeons (4/30/10) Avoiding and Responding to Litigation.

- Clark County Bar Association (3/26/10) Avoiding Solo/Small Firm Ethical Traps.

- Southern Nevada Association of Women Attorneys (2/26/10) Ethics 2010: Ten Thoughts for '10.

- State Bar of Nevada (11/12/09): Nevada Legal Ethics (2009).

- State Bar of Nevada, Clark County Bar Association and Washoe County Bar Association (10/13/09, Las Vegas; 10/14/09, Carson City): 2009 Professionalism Summit.

- Clark County Bar Association (9/18/09):  "Sixth Annual Ethics Issues: 2009."

- Public Relations Society of America (7/24/09):  "Keeping Out of Hot Water: Legal Considerations in Communications."

- Lecture and panel discussion with Justice Nancy Saitta and District Judge Linda Bell: "Professionalism in Litigation."  Boyd School of Law (4/1/09).

- Southern Nevada Association of Women Attorneys (2/20/09): "ETHICS 2009: Being Good Gets Harder Every Year."

- State Bar of Nevada (12/5/08): "Nevada Legal Ethics 2008."

- State Bar of Nevada (11/19/08): "Nevada Legal Ethics 2008."

- Indiana State Bar Association (11/13/08): "Ethics: A Western Perspective on Maintaining A Healthy Legal Practice."

- Clark County Bar Association (9/19/08): "Fifth Annual Ethics Issues 2008" (Prepared materials.  Presentation made by David J. Merrill).

- Southern Nevada Association of Women Attorneys (2/22/08): "Ethics 2008 - Be Careful Out There."

- State Bar of Nevada (11/30/07) "Nevada Legal Ethics 2007."

- State Bar of Nevada (11/16/07) "Nevada Legal Ethics 2007."

- Clark County Bar Association (10/31/07) "Lawyer Advertising: The New Rules."

- Wisconsin Law Alumni Association (9/8/07) "The New Rules of Professional Conduct."

- Clark County Bar Association (8/24/07) "Fourth Annual Legal Ethics - 2007."

- National Assn. of Retail Collection Attorneys (5/11/07) "Ethics Issues for Legal Collection Professionals."

- Southern Nevada Association of Women Attorneys (2/23/07) "Desperately Seeking Ethics - 2007."

- State Bar of Nevada (12/1/06) "Nevada Legal Ethics 2006."

- State Bar of Nevada (11/17/06) "Nevada Legal Ethics 2006."

- Clark County Bar Assn. (6/30/06) "Ethics 2006: The New Nevada Rules of Professional Conduct."

- State Bar of Nevada Professionalism Summit: Speaker and Panel Member (4/20/06).

- Southern Nevada Association of Women Attorneys (1/27/06) "Ethics Issues for 2006."

- State Bar of Nevada (11/18/05) "Nevada Legal Ethics 2005."

- State Bar of Nevada (11/4/05) "Nevada Legal Ethics 2005."

- Clark County Bar Assn. (9/15/05) "Ethics 2005:  Current Issues."

- Clark County Bar Assn. (3/4/05) Speaker and Panel Member: First Annual Professional Summit.

- State Bar of Nevada (11/19/04) "Ethics 2004: Year in Review."

- State Bar of Nevada (11/5/04) "Ethics 2004: Year in Review."

- Clark County Bar Assn. (7/30/04) "Current Issues In Ethics."

- Lorman Business Institute (7/20/04) "Current Issues in Ethics."

- National Hospice Assn. (3/21/04) "Legal Issues For Physicians In End of Life Care."

- Southern Nevada Assn. of Women Attorneys (1/30/04) "Ethics Issues for 2004."

- State Bar of Nevada (1/20/04) "Workers Compensation: Current Issues in Ethics."

- National Business Institute (10/21/03) "Current Issues In Attorney Client Privilege and Confidentiality."

- Sterling Educational Systems (9/25/03) "Common Ethical Problems for Transactional Lawyers."

- Clark County Bar Assn. (2/28/03) "ERISA 2003:  What's New?"

- Southern Nevada Assn. of Women Attorneys (1/31/03) "Ethics:  2003."

- State Bar of Nevada (11/22/02) "Nevada Legal Ethics - the Year In Review."

- American Corporate Counsel Assn. (6/18/02) "Issues of Attorney-Client Privilege for In-House Counsel."

- National Business Institute (12/7/01) "Current Issues In Legal Ethics:Nevada 2001."

- National Business Institute (7/13/01) "Attorney-Client-Privilege and the Work Product Doctrine In Nevada."

- National Business Institute (12/12/00) "Practical Legal Ethics."

- State Bar of Nevada (3/31/00) "Professionalism and Ethics."

- Southern Nevada Assn. of Women Attorneys (1/28/00) "Multi-Disciplinary Practice:  Ethical Considerations."

- State Bar of Nevada (12/10/99) "Winning Without Losing Your Professionalism."

- National Business Institute (11/17/99) "Practical Legal Ethics."

- Law Seminars Int'l. (6/25/99) "Ethics Considerations for Construction Lawyers."

- National Practice Institute (12/4/98) "Ethical Problems:  Dealing With Difficult Lawyers."

- ALAS (10/21/98) "Ethical Issues for Healthcare Lawyers."

- State Bar of Nevada (3/21/98):  "Ethics and Attorneys' Fee Agreements."

- CLE International (12/5/97) "Current Issues In Ethics"

- Institute for Paralegal Practice (8/26/97) "Preventing Unauthorized Practice of Law"

[Additional CLE instruction available upon request.]

# EXHIBIT B

# EXHIBIT B

# Matters Reviewed

## Filings from *Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*, Case No. 2:10-cv-00106-LRH-PAL

- Complaint for Damages and Injunctive Relief; filed January 25, 2010;

- Stipulated Protective Order; filed May 21, 2010;

- Second Amended Complaint; filed June 1, 2011;

- Defendant Seth Ravin's Answer to Oracle's Second Amended Complaint; filed June 16, 2011;

- Defendant Rimini Street, Inc.'s Answer to Oracle's Second Amended Complaint and First Amended Counterclaim; filed June 16, 2011;

- Order; filed February 13, 2014;

- Order; filed August 13, 2014;

- Order; filed October 14, 2014;

- Defendants Rimini Street, Inc.'s and Seth Ravin's Trial Brief; filed September 9, 2015;

- Oracle's Trial Brief; filed September 9, 2015;

- Verdict; filed October 13, 2015;

- Stipulation and Joint Statement Regarding Post-Trial Schedule; filed October 19, 2015;

- Order; filed October 22, 2015;

- Oracle's Motion for Prejudgment Interest; Notice of and Memorandum of Points and Authorities in Support of Motion; filed November 13, 2015;

- Oracle's Motion to Seal Portions of Oracle's Motion for Costs and Attorneys' Fees, Declarations of Thomas S. Hixson and Kieran O. Ringgenberg and Accompanying Exhibits, and Exhibits Accompanying the Declaration of James C. Maroulis; filed November 13, 2015;

- Oracle's Motion for Costs and Attorneys' Fees (Public Redacted Version), filed November 13, 2015;

- Declaration of Thomas S. Hixson in Support of Oracle's Motion for Costs and Attorneys' Fees (Public Redacted Version), filed November 13, 2015;

- Declaration of Kieran P. Ringgenberg in Support of Oracle's Motion for Costs and Attorneys' Fees (Public Redacted Version), filed November 13, 2015;

- Declaration of James C. Maroulis in Support of Oracle's Motion for Attorneys' Fees and Expenses, filed November 13, 2015, and exhibits attached thereto (Filed Under Seal);

- Declaration of Richard J. Pocker in Support of Oracle's Motion for Attorneys' Fees and Expenses, filed November 13, 2015;

- Oracle's Motion for Costs and Attorneys' Fees (Filed Under Seal), dated November 13, 2015;

- Declaration of Thomas S. Hixson in Support of Oracle's Motion for Costs and Attorneys' Fees, dated November 13, 2015, and exhibits attached thereto(Filed Under Seal);

- Declaration of Kieran P. Ringgenberg in Support of Oracle's Motion for Costs and Attorneys' Fees, dated November 13, 2015, and exhibits attached thereto (Filed Under Seal);

- Certificate of Service of Oracle's Motion for Costs and Attorneys' Fees (Dkt. 922), Declaration of Thomas S. Hixson and Exhibits 3-9 and 13-21 (Dkt. 923), Declaration of Kieran O. [sic] Ringgenberg and Exhibits 3-14 (Dkt. 924), and Exhibits A-C to the Declaration of James C. Maroulis (Dkt. 926), filed November 13, 2015;

- Defendants Rimini Street, Inc.'s and Seth Ravin's Rule 50(b) Renewed Motion for Judgment as a Matter of Law, filed November 13, 2015;

- Defendants Rimini Street, Inc.'s and Seth Ravin's Rule 50(b) Renewed Motion for Judgment as a Matter of Law on Oracle's Copyright Act Claims, filed November 13, 2015;

- Rimini Street, Inc.'s and Seth Ravin's Motion to Compel Discovery Relating to Oracle's Motion for Attorneys' Fees; filed November 23, 2015;

- William G. Ross Affidavit in Support of Rimini Street, Inc.'s and Seth Ravin's Motion to Compel Discovery Relating to Oracle's Motion for Attorneys' Fees; filed November 23, 2015;

- Notice of Errata re Motion for Costs and Attorneys' Fees, filed November 30, 2015;

- Supplemental Declaration of Thomas S. Hixson in Support of Oracle's Motion for Costs and Attorneys' Fees, filed November 30, 2015, and exhibits attached thereto (Filed Under Seal);

- Supplemental Declaration of Kieran P. Ringgenberg in Support of Oracle's Motion for Costs and Attorneys' Fees, filed November 30, 2015, and exhibits attached thereto (Filed Under Seal);

- Oracle's Motion to Seal Exhibits Accompanying the Supplemental Declaration of Thomas S. Hixson in Support of Oracle's Motion for Costs and Attorney's Fees, filed November 30, 2015;

- Certificate of Service of Amended Exhibit 2 and Exhibits A and B to the Declaration of Thomas S. Hixson in Support of Oracle's Motion for Costs and Attorneys' Fees, dated November 30, 2015;

- John L. Trunko Affidavit; filed December 3, 2015;

- Oracle's Opposition to Defendants' Motion to Compel Discovery Relating to Oracle's Motion for Attorneys' Fees, filed December 10, 2015;

- Rimini Street, Inc.'s and Seth Ravin's Reply in Support of Their Motion to Compel Discovery Relating to Oracle's Motion for Attorneys' Fees, filed December 21, 2015;

- Oracle's Motion for Leave to Supplement Its Motion for Costs and Attorneys' Fees, filed January 6, 2016;

- Declaration of Thomas S. Hixson in Support of Oracle's Motion for Leave to Supplement Its Motion for Costs and Attorneys' Fees, filed January 6, 2016, and exhibits attached thereto;

- Declaration of Kieran P. Ringgenberg in Support of Oracle's Motion for Leave to Supplement Its Motion for Costs and Attorneys' Fees, filed January 6, 2016, and exhibits attached thereto;

- Oracle's Supplement to its Motion for Costs and Attorneys' Fees; filed February 12, 2016; and

- Corrected Exhibit 4 to the Declaration of Thomas S. Hixon in Support of Oracle's Motion for Costs and Attorneys' Fees (undated).

## Documents related to *Oracle USA, Inc., et al. v. Rimini Street, Inc., et al.*, Case No. 2:10-cv-00106-LRH-PAL

- Letter from Thomas S. Hixson to Deborah K. Miller; dated March 27, 2015, Bates No. ORCLEFEEPROD00001-ORCLFEEPROD00014;

- Letter from Daniel F. Polsenberg to counsel; dated November 4, 2015;

- Letter from Thomas S. Hixson to Daniel F. Polsenberg; dated November 6, 2015;

- Letter from Thomas S. Hixson to Daniel F. Polsenberg; dated February 5, 2016;

- Affidavit of John L. Trunko and exhibits attached thereto submitted in support of the Rimini Defendants' Response to the Oracle Parties' Motion for Costs and Attorneys' Fees, including, but not limited to:
  - Exhibit B-1 – Summary of Fees and Expenses Billed For the Audit Period for Morgan, Lewis & Bockius, LLP (undated);
  - Exhibit B-2 – Summary of Hours and Fees by Position and Individual for Morgan, Lewis & Bockius LLP (undated);
  - Exhibit B-4 – Daily Hours Billed for January 2010 through November 2015 for Morgan, Lewis & Bockius LLP (undated);
  - Exhibit C-1 – Summary of Fees and Expenses Billed For the Audit Period for Boies, Schiller, & Flexner LLP (undated);
  - Exhibit C-2 – Summary of Hours and Fees by Position and Individual for Boies, Schiller, Flexner LLP (undated);
  - Exhibit C-4 – Daily Hours Billed for January 2010 through November 2015 for Boies, Schiller, Flexner LLP (undated);
  - Exhibit E-1 – Schedule of Fees in Excess of Prevailing Market Rates for Morgan, Lewis & Bockius LLP (undated); and

    o  Exhibit E-2 – Schedule of Fees in Excess of Prevailing Market Rates for Boies, Schiller, & Flexner LLP (undated).

## Additional Items

- American Intellectual Property Law Association's (AIPLA) Report of the Economic Survey; dated June 2015;

- Website of Boies, Schiller & Flexner LLP: http://www.bsfllp.com/index.html; and

- Website of Morgan, Lewis & Bockius LLP: https://www.morganlewis.com.