# Exhibit G

# Snell & Wilmer
L.L.P.
LAW OFFICES

One Arizona Center
Phoenix, AZ 85004-2202
602.382.6000
602.382.6070 (Fax)
www.swlaw.com

Wendy S. Neal
602.382.6334
wneal@swlaw.com

RECEIVED
ORACLE CORPORATION
LEGAL DEPARTMENT

JUL 0 2 2007

Calendared: _____
File: _____

DENVER
LAS VEGAS
ORANGE COUNTY
PHOENIX
SALT LAKE CITY
TUCSON

June 28, 2007

**VIA FEDEX**

Scott Gattey
Senior Corporate Counsel
Oracle
500 Oracle Parkway
M/S 5op7
Redwood Shores, CA 94065

Re:   **Continued Business Interference and Anti-Competitive Practices**

Dear Mr. Gattey:

As you most likely recall, Snell & Wilmer L.L.P. represents Rimini Street, Inc. as lead counsel for matters involving Oracle Corporation and its acquired entities. Regrettably, since our last communication more than a year ago, Oracle has continued—and in some instances amplified—its previously-documented pattern of anti-competitive behavior, activities, policies, and practices.

Detailed below are specific behaviors, activities, policies, and practices that—viewed separately and together—appear to be motivated not by legitimate business concerns, by rather a desire to foreclose any and all competition against Oracle's Annual Support Services for Oracle's acquired PeopleSoft, JD Edwards, and Siebel products, including "competition" by Oracle product licensees who merely desire to self-support their licensed applications.

We trust that Oracle Legal will promptly investigate and work to resolve the business and legal issues presented by the following:

**Micro Focus COBOL Licensing and Maintenance**

*Issue: Oracle as the Sole Source for License Acquisition of Third Party Product*

Several PeopleSoft products require a license to certain Micro Focus COBOL products for the PeopleSoft products to operate. Although consumers can seek competitive purchase bids

2016274

Snell & Wilmer is a member of LEX MUNDI, The Leading Association of Independent Law Firms.

EXHIBIT 6
Ashley Soevyn, CSR No. 12019
Date 12/14/10
Witness CATZ

Confidential Information

ORCLRS0045713

Oracle USA, Inc. v. Rimini Street, Inc.
10cv106-LRH-PAL

DTX 0129

Snell & Wilmer
L.L.P.

Scott Gattey
June 28, 2007
Page 2

for these COBOL products directly from Micro Focus or from a variety of independent distributors and retailers, Oracle has now contractually limited PeopleSoft licensees to purchasing required Micro Focus COBOL licenses only from Oracle. While this action, in and of itself is troublesome, when viewed in light of the following issue, the legal concerns become even more apparent.

### *Issue: Oracle as the Sole Source for Support of Required Third Party Product*

According to information recently made available to Rimini Street management, PeopleSoft licensees who, in the past, had licensed directly from Micro Focus those Micro Focus COBOL products required to operate their PeopleSoft products, recently received a letter from Micro Focus stating that their direct vendor support would not be renewed. While other, non-PeopleSoft licensees could still freely choose to obtain COBOL product support directly from Micro Focus, PeopleSoft licensees were told that they could only purchase support for the COBOL products from Oracle. In at least some instances of which Rimini Street is aware, when Micro Focus licensees contacted Oracle to arrange for support as their only option, Oracle informed these customers that they could not simply buy support for the COBOL products to which they held fully paid-up, perpetual licenses from Micro Focus. Rather, they were informed that to obtain support coverage for these products going forward, they must re-license—for a fee, of course—these same products from Oracle.

### *Issue: Oracle's Apparent Failure to Honor Perpetual License Rights*

Another product offered by Oracle to its licensees—the Micro Focus Net Express® product—requires a new, specially-generated license key each and every time it is installed by the licensee. This is true for re-installation of the product on the same machine on which the product originally was installed (such as, for instance, when there has been a system failure requiring re-installation of certain applications to regain functionality of the system) as well as installation on a different machine (all within license rights). Without the license key, the product is unusable. In at least some instances of which Rimini Street is aware, Oracle has refused to provide new license keys to Net Express® licensees who purchased their perpetual use license through Oracle, but who have chosen not to renew—or who have been denied the opportunity to renew—their Oracle annual support for the Micro Focus Net Express® product.

### Obtaining Licensed and Paid-For Materials from Oracle

### *Issue: Impediments to Oracle Annual Support Customers Seeking to Obtain From Oracle Materials for which They Paid*

In consideration of Oracle Annual Support fees for licensed products, licensees are supposed to get access to and rights to download and use program updates, software updates, bug

2016274

Confidential Information

ORCLRS0045714

**Snell & Wilmer**
L.L.P.

Scott Gattey
June 28, 2007
Page 3

fixes, patches, custom solutions, and instructional documents ("Materials") for such products. However, Oracle does not provide any reasonable mechanism by which a licensee paying support fees to Oracle can physically obtain all the Materials they are entitled to posses. In at least some instances of which Rimini Street is aware, Oracle has refused licensees' requests (made in accordance with express language in the licensees' respective agreements) for Oracle to package up and deliver the Materials to which the licensees are entitled. Licensees' only alternative for accessing these Materials is to download the same from Oracle's customer support websites. Unfortunately for these licensees, however, manually downloading the Materials is a huge project that generally requires a licensee to pay excessive and unreasonable labor costs, as the downloading process can take dozens of labor hours with the use of automation tools and potentially hundreds of labor hours without use of any automation tools.

### *Issue: Banning Use of Automation Tools Designed as a Competitive Barrier*

As detailed above, when Oracle refuses or otherwise fails to deliver, upon request, all Materials for which its Oracle Support Services customers have contracted and paid to access, possess, and use within their license rights, each affected licensee is left with no alternative but to bear the unreasonable cost and to manage the daunting task of downloading the potentially thousands of Materials from Oracle's customer support websites that are within the scope of their respective license agreement(s). Historically, these licensees and their contracted agents have had no choice but to resort to download automation tools as the only feasible way to download such a large volume of authorized Materials.

Oracle's recent decision to ban the use of automation tools designed to help with the massive, unreasonably costly, and time consuming project of downloading authorized Materials is not workable. Oracle's apparent practice of selling rights to Materials that Oracle Support Services customers cannot possibly take possession of without expending unreasonable resources might even be considered fraudulent.

### *Issue: "Only in Furtherance..." Website Use Term Designed as a Competitive Barrier*

The revised Terms of Use on Oracle's website state that a licensee's "username and password are confidential information and may only be distributed to persons within [licensee's] organization who have a legitimate business purpose for accessing the materials contained on this server in furtherance of [licensee's] relationship with Oracle/PeopleSoft/JDEdwards." To the extent Oracle interprets this language and seeks to enforce this provision in a way that prevents Oracle licensees from enabling their third party agents to access Materials on the Oracle customer support websites—on the licensees' behalf and for the purpose of obtaining authorized content—such enforcement activities are clearly anti-competitive. Moreover, any attempt by Oracle to re-define the terms and scope of a licensee's access to and downloads of authorized Materials after that licensee's decision to terminate Oracle Support Services, but during the valid

2016274

Confidential Information                                                                              ORCLRS0045715

**Snell & Wilmer**
———L.L.P.———

Scott Gattey
June 28, 2007
Page 4

support period, would be nothing more than a scheme to deprive the licensee of the Materials for which it invested significant resources (to Oracle's benefit).

**Oracle Maintenance Sales Practices & Policies**

*Issue: License Set Renewal Groupings Designed as a Competitive Barrier*

Oracle appears to have created and to now be actively employing a concept called "License Sets" to group products together in bundles, and then require licensees to either purchase Oracle Support Services coverage for all products within the License Set, or forego Oracle Support Services coverage altogether. In fact, in many such instances of which Rimini Street is aware, the products within the License Set were not originally licensed by the customer as a bundle, and the customer's software license and service agreements made no mention that certain products would be grouped together by Oracle for purposes of maintenance service renewals. In many cases, when an affected customer seeks to renew Oracle Support Services coverage for some—but not all—of the licensed products, the customer's request is denied. The so-called "License Set" concept appears to be a material degradation of the licensee's agreed-upon services terms and conditions, and has the effect of limiting the licensee's contractual right to choose what, if any, licensed Oracle products for which to elect coverage by Oracle Annual Support services.

*Issue: Re-Pricing Maintenance on Remaining Products Designed as a Competitive Barrier*

As a corollary to the above-detailed "License Set" issue, Rimini Street has been informed that many Oracle licensees who licensed products on a single license schedule are now being told that they cannot choose to terminate support on one or more licensed products on such schedule without having the Oracle Annual Support pricing on their remaining products significantly increased—often to a level in excess of the total cost for the original schedule for all products. In those cases of which Rimini Street is aware, these special Oracle Support Services terms were not agreed upon in the original licenses and services agreements signed by the licensees. Such unilateral re-pricing tactics by Oracle appear to constitute a material degradation in the licensees' Oracle Support Services agreements, and appear to be designed as a competitive barrier.

*Issue: Providing False and Misleading Information about Third Party Support to Oracle Customers Looking at Support Options*

Rimini Street is in possession of documentary evidence that Oracle has provided Oracle licensees false and misleading information regarding third party support offerings and their impact on the potential upgradability of PeopleSoft application releases for which licensees have

2016274

Confidential Information                                                                                              ORCLRS0045716

Snell & Wilmer
L.L.P.

Scott Gattey
June 28, 2007
Page 5

elected (or wish to elect) support by a third party service provider, such as Rimini Street. For example, Rimini Street has been forwarded multiple email communications, including one between a Ms. Rachel Romano, identifying herself as a Regional Maintenance Sales Manager for Oracle, and a Mr. Jay Crow, identifying himself as an Oracle Maintenance Sales Representative, and copied to a Mr. Rick Cummins, who appears to head up Oracle's Maintenance Renewal operation. The note says that implementing third party updates would make it much harder or impossible to upgrade to later versions of product. In fact, however—and as Oracle surely must know as the product manufacturer—tax updates are not carried forward to future releases. Moreover, any updates or fixes—whether provided by Oracle or Rimini Street or built by the licensees themselves—are effectively handled in the same way in the compare report process during an upgrade project. There is no material difference in complexity or risk to an upgrade project whether updates and fixes originate from Oracle or a third party. Any statements to the contrary made by Oracle to its licensees are false and misleading and—given that the documents in which these statements are made are compilations of supposed "facts" about why an Oracle licensee should be careful about purchasing third party support services—are believed to be designed to discourage Oracle Support Service customers from electing third party support services over Oracle's optional service offerings, and thus to disrupt the business of Rimini Street and other third party support providers.

### Issue: *Selectively Refusing Valid Support Purchase Orders from Clients Who Elect Third Party Support Options for Other Oracle Licensed Products*

Rimini Street is in possession of documentary evidence that Oracle Maintenance Sales representatives and management, with the apparent knowledge and consent by Ms. Rachel Romano and Mr. Rick Cummins, have purposely refused to accept valid purchase orders presented by Oracle licensees for renewing Oracle Support Services for certain products. In these instances, the products for which licensees sought to renew Oracle Support Services were licensed at different times from (and thus appeared on different licensing schedules than) products for which the licensee opted not to renew its Oracle Support Services agreement, in favor of contracting for support services from Rimini Street. These purchase orders were rejected despite the fact that, in each case, the Oracle licensee appeared to have issued the purchase order in full compliance with Oracle's service terms and pricing. It would appear that the affected Oracle licensees were being "punished" for their decision to transition some of their support for Oracle products from Oracle to a third party provider. Rimini Street was informed by said Oracle licensees that Oracle representatives told the affected Oracle licensees that if they wanted to continue with Oracle Support Services for the products on the valid purchase orders, the licensee would have to re-license the same products from Oracle—for a fee, of course—even though these licensees had already purchased perpetual license rights to the products. Such outrageous practices are not only potentially illegal and anti-competitive, but also are likely to prove detrimental to Oracle's long-term prospects for growing business within its client base.

2016274

Confidential Information                                                                                                                                        ORCLRS0045717

# Snell & Wilmer
L.L.P.

Scott Gattey
June 28, 2007
Page 6

### *Issue: Offering Special Incentives to Rimini Street Clients on the Condition They Immediately Terminate Their Rimini Street Support Agreements*

Rimini Street is in possession of evidence that the PeopleSoft Maintenance Sales team has been contacting Rimini Street clients for the sole and express purpose of inducing them to terminate their current Rimini Street contracts. Once again, Rimini Street's evidence includes contacts by a Ms. Rachel Romano of the PeopleSoft Maintenance Sales team and apparently her sales representatives, calling on Rimini Street clients and offering special Oracle Support Service incentives on the sole condition that the Oracle licensees "immediately terminate their Rimini Street Support Services Agreement." Oracle's inappropriate conduct is tortiously interfering with Rimini Street contracts and the expected economic advantages therefrom.

Oracle's actions noted herein have the potential to limit or even eliminate competitive service offerings that should otherwise be available to Oracle software licensees, and appear to indicate a continuing, calculated effort by Oracle to interfere with Rimini Street's existing client relationships and intimidate potential clients from terminating Oracle Support Services, self-supporting licensed Oracle products, or pursuing maintenance contracts with Rimini Street and/or other third party service providers. Oracle's conduct is, in short, anti-competitive.

Once again, we are bringing the above matters to your attention to afford Oracle an opportunity to investigate and resolve the legal issues presented. To facilitate resolution of these matters, senior Rimini Street representatives will make themselves available—just as they have for the last two years—to collaborate and cooperate with Oracle to ensure adequate protection of Oracle's intellectual property while enabling Oracle's licensees to fully exploit their contractual rights with both Oracle and Rimini Street.

Rimini Street would welcome an opportunity to work together with Oracle to further Oracle's legitimate and lawful business objectives and assure Rimini Street's unfettered right to support Oracle products for those Oracle licensees that elect Rimini Street's support services.

Be advised that Rimini Street has authorized Snell & Wilmer and its other appointed counsel to meet any continued attempts to interfere with Rimini Street's lawful business with an appropriate response to ensure that Rimini Street has the unimpeded opportunity to participate on a fair, level, and competitive playing field in the enterprise support services arena. Oracle's failure to take timely corrective action to resolve the above issues could lead to a further response from Rimini Street, government entities with jurisdiction, and/or Oracle's customers.

2016274

Confidential Information                                                                                       ORCLRS0045718

# Snell & Wilmer
L.L.P.

Scott Gattey
June 28, 2007
Page 7

                           Sincerely,

                           SNELL & WILMER L.L.P.

                           Wendy S. Neal

cc:    Seth Ravin, Rimini Street, Inc. (*via e-mail*)

2016274

Confidential Information

ORCLRS0045719