BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN L. DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com

MORGAN, LEWIS & BOCKIUS, LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market Street
Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Defendants. | CASE NO. 2:10-cv-0106-LRH-PAL<br><br>**DECLARATION OF BEKO REBLITZ-RICHARDSON IN SUPPORT OF ORACLE'S REPLY IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES**<br><br>Judge: Hon. Larry R. Hicks |

I, Beko Reblitz-Richardson, declare as follows:

1. I am an attorney admitted to practice law in the State of California and before the Court in this action *pro hac vice*. I am a partner with Boies, Schiller & Flexner LLP ("BSF"), counsel to Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively "Oracle" or "Plaintiffs") in this action. I make this declaration in support of Oracle's Reply in Support of Its Motion for Costs and Attorneys' Fees. I have firsthand knowledge of the contents of this declaration, except where otherwise noted as based on information and belief, and I could testify thereto.

**BSF Representation of Oracle**

2. In addition to representing Oracle in this lawsuit against Ravin and Rimini, BSF represented Oracle in the lawsuit against Ravin's former company, TomorrowNow, and SAP. That lawsuit involved similar conduct and many of the same claims asserted in this lawsuit against Ravin and Rimini. In that other lawsuit, BSF developed expertise that benefited Oracle with BSF's representation in this lawsuit against Ravin and Rimini.

3. A number of BSF attorneys who represented Oracle in the lawsuit against TomorrowNow and SAP contributed to Oracle's success in this lawsuit against Ravin and Rimini. In addition to my own work on both matters, BSF partners Steven C. Holtzman, Kieran P. Ringgenberg, and William F. Norton also worked on both matters.

4. To the extent BSF billing entries reference TomorrowNow, those entries relate to TomorrowNow's relevance to this case against Ravin and Rimini, including attempts by BSF attorneys to leverage what was learned in the TomorrowNow lawsuit to further Oracle's claims in this case, given the significant overlap in parties, witnesses, and issues.

5. As this case approached trial, BSF had to augment staffing on the case with attorneys who lacked the background and context for the case. When added to the case team, these attorneys had to familiarize themselves with the facts of the case. I understand and believe that Oracle approved each such attorney addition and also either approved the time it took the new attorney to "ramp up" on the case or did not so approve and the time was written off and is not reflected in our invoices or Oracle's fee request.

6. In this lawsuit, Oracle benefited from the fact that BSF has offices in both the Bay Area and Las Vegas. Rimini has offices in the Bay Area and Las Vegas, and BSF was able to efficiently represent Oracle's interests in this matter with experienced trial attorneys based in both locations. For trial, Oracle's litigation team worked out of BSF's Las Vegas office, which reduced Oracle's total recoverable expenses.

7. Based on a review of the deposition transcripts in this matter, I have concluded that twelve Rimini witnesses testified as to the location they were based, and six of those Rimini witnesses testified that they were based in the Bay Area. Of Rimini's twenty-four deposed witnesses, twelve were deposed in the Bay Area.

## BSF Hours

8. I understand and believe that the BSF invoices submitted in connection with Oracle's motion were based on contemporaneous time records which were carefully reviewed by BSF prior to the submission of those invoices to Oracle.

9. The work that BSF performed for Oracle in this matter was coordinated and supervised by one or more BSF partners and also by Oracle's team of in-house counsel. Mr. Ringgenberg coordinated and supervised that work continuously starting with BSF's retention in 2010 and through the end of 2015, and William Isaacson and Karen Dunn were also very involved with coordinating and supervising that work in preparation for trial and at trial.

10. Working closely with Oracle and co-counsel, BSF used written task lists and regular meetings and discussions to ensure an efficient and effective allocation of work for this matter, including an appropriate allocation of work between partners and associates.

11. At trial, BSF lawyers and paralegals were assigned to specific projects and given deadlines to ensure that all work was completed in a timely and efficient manner and to avoid duplicative work. For example, particular BSF attorneys were responsible for preparation for examination of specific witnesses, and others were responsible for drafting submissions concerning jury instructions. These projects were staffed in a way not only to ensure consistently high-quality work product, which contributed to Oracle's success at trial, but also to efficiently complete the necessary tasks working closely with co-counsel and Oracle.

12.  There is no basis for Rimini's suggestion that work should have been delegated in some other way, with certain work performed exclusively by partners or associates.  BSF associates were often tasked with initially drafting work product, but BSF partners and associates were all integrally involved in drafting, reviewing, and substantively revising iterative improvements before approving a final result.  BSF could not have provided the high quality representation of Oracle if it delegated work in the manner proposed by Rimini, with partners having less involvement with the substantive work necessary to prepare this case for trial.

13.  During the course of this case, I understand and believe that the BSF paralegals staffed on the case became familiar with the case file, the case calendar, the various vendors, and the parties' and the Court's operating procedures, and that it would have been inefficient for the attorneys to use their assistants or other secretarial support to conduct those tasks.  The regular maintenance of the case file, coordinating and arranging meetings and interviews, and preparing binders and documents for attorneys are core tasks for BSF paralegals who are familiar with and manage the entire case, and those tasks were properly assigned to BSF paralegals.  I also understand and believe that BSF attorneys sought to delegate logistical and administrative tasks to non-billing administrative staff wherever possible, although there were circumstances where it was most effective to involve an attorney or paralegal.

14.  Oracle's attorneys worked long hours to prepare a professional trial presentation on five consecutive trial days per week.  The parties agreed to disclose witnesses and exhibits and also exchange deposition designations and objections either before 8 a.m. or by 8 p.m., with negotiations and discussions often continuing after 8 p.m.  These were long days because there was an enormous amount of work to do, and counsel for all parties frequently negotiated issues late into the night and early in the morning.

15.  Rimini's counsel participated in those late-night exchanges.  For example, Rimini's counsel disclosed to Oracle's counsel certain deposition designations at 9:07 p.m. on September 23rd (and emailed about other issues at 10:10 p.m. that night), at 10:02 p.m. on September 24th, at 10:47 p.m. on September 28th, and at 10:27 p.m. on September 29th.  These late night exchanges were necessary due to the large amount of work required to address and

work through the parties' objections. Both the parties and the Court benefitted by limiting the number of disputes presented to the Court and before the jury. Endeavoring to streamline trial in that way meant that email exchanges between the parties would sometimes continue to early in the morning before the court day began (including for example a 5:58 a.m. email from Rimini's counsel on September 30th).

16. Counsel for Oracle and the defendants also had late-night meet and confers to work through issues before appearing in Court, which also involved long days of work. For example, at 9 p.m. on Sunday, September 13th, counsel for all parties had a telephonic meet and confer to discuss various outstanding issues, and there were subsequent emails among the parties that night. On October 5th, counsel for the parties had a meet and confer at 11:15 pm to discuss objections to the various closing demonstratives. Many projects required work by Oracle's attorneys and paralegals late into the night and on many occasions long past midnight.

17. Rimini complains about the attendance of BSF attorneys and paralegals in court during the trial, but that attendance was appropriately limited and productive. БSF attorneys were assigned to specific witnesses and issues. BSF attorneys often attended trial, for example, when they had worked on an issue that would be argued that day or when they had worked on the examination and exhibit admission strategies for a particular witness. There were many occasions where other BSF attorneys and I only attended court for a part of the day when, for example, a particular witness was testifying and during Rimini's opening statement. That was not idle time. While in court, other BSF attorneys, paralegals and I performed research based on issues raised contemporaneously in court and also prepared for the examination of other witnesses.

18. Rimini also complains that Oracle's attorneys "billed for attendance at technology training sessions that presumably ought to have been counted as part of overhead." Ross Decl. ¶ 30; Trunko Ex. L at 3. In support of that proposition, Rimini's experts identify three BSF attorneys who received training on My Oracle Support. However, the jury found Ravin and Rimini liable for violations of the CDAFA and NCCL in part based on their unauthorized access to My Oracle Support, and that training was part of the preparation to present this case to the jury

and to obtain a favorable jury verdict on those claims. BSF attorneys also attended training in the use of the document review system in this case, Stroz Review, including the case-specific details of how the documents were structured and how the review tool was set up. This training was necessary for the attorneys and staff to be able to review and retrieve documents for this case. The training was not a general training that would be applicable to other firm clients.

19. Based on the issues raised in connection with Rimini's Opposition, others from BSF and I reviewed again certain time records. Rimini identified one record where a paralegal entered 24 hours for a single day. That record was an error, and it was inadvertently included in Oracle's request for fees. Oracle does not seek to recover fees based on that entry, which totals $6,480. Based on our additional review in connection with Rimini's Opposition, Rimini's other complaints regarding the number of hours BSF spent on this matter are unfounded.

20. BSF uses separate billing matter numbers to track fees and expenses associated with different Oracle matters. BSF set up separate billing matter numbers for the Oracle action against Rimini that was tried in 2015 ("*Rimini I*") and for the action that Rimini filed in October 2014 and in which Oracle is asserting claims as a counterclaimant ("*Rimini II*"). In connection with this Motion, BSF also reviewed the BSF and Elysium Digital, L.L.C. ("Elysium") time entries and in part checked to see that no *Rimini II* time was included in the request. I am not aware of any BSF fees or expenses associated with *Rimini II* being included in any of the fees and expenses for which Oracle is seeking recovery in this Motion, for *Rimini I*.

**BSF Expenses**

21. Rimini raised certain complaints regarding BSF's expenses. Rimini's complaints include, for example, a round-trip Southwest flight from DC to Las Vegas which cost $1,334. That flight was neither lavish nor exorbitant, and it was necessary for Oracle's trial counsel to travel to Las Vegas for purposes of representing Oracle's interests in this litigation. In connection with Rimini's Opposition, Others at BSF and I conducted an additional review of BSF's expenses. Based on that additional review, apart from the Elysium expenses discussed below, the only issue identified concerned a flight involving two segments, where arguably only one segment should have been attributed to this matter. To avoid any issue regarding the

attribution of that expense, Oracle withdraws its request for reimbursement as to that $1,409.20 flight.

22. With respect to the Elysium invoices, Rimini complains that Oracle did not adjust the amount it seeks for payments made to Elysium to remove costs associated with time entries Oracle redacted, which Rimini concludes led to Oracle seeking $33,000 in excessive recovery. Rimini is mistaken; Oracle did correctly reduce each bill to account for redacted time. After BSF's additional review of these invoices in connection with Rimini's Opposition, and after further consultation with Elysium, BSF has determined that the only necessary adjustment to the Elysium invoices is an $815 reduction based on two time records.

23. On Elysium invoice #101901 (dated June 30, 2011), the invoice summary showed Matthew Lena billing 228.75 hours, but his individual time entries only totaled 228.5 hours. On Elysium invoice # 147769 (dated September 30, 2015), the invoice summary showed Daniel Steinbrook billing 4.25 hours, but his individual time entries only totaled 0.75 hours. Oracle withdraws its request for reimbursement as to that $815, which was based on an inconsistency between the summary records and the more detailed time records.

24. During our investigation in response to Rimini's Opposition, we also identified that we undercounted the recoverable costs paid to Elysium for invoice # 147851 (dated October 31, 2015) by $517.50. Oracle does not however seek to increase its request for that amount.

25. With regard to Elysium invoice # 107142 (dated March 12, 2012), the summary includes a total number of hours worked by certain Elysium employees that is greater than the total hours listed in their detailed billing entries, but that is due to an abatement that was accounted for with Oracle's Motion. Oracle requested and Elysium abated $96,036.25 from that month's invoice. That abatement represented $32,816.25 in hours worked during the month of that invoice, and the remainder of the abatement represented charges for hours billed in prior months. Elysium represented the abatement as a single $96,036.25 line-item on the invoice summary page and left the total number of hours worked on the invoice page unmodified. However, Elysium removed the abated hours from the accompanying pages detailing time entries so Oracle could see which entries survived the abatement and were still being charged.

1  Because Rimini tabulated the cost of each billed hour represented in the detailed time entry
2  records and then subtracted the entirety of the abatement, Rimini double-counted $32,816.25 of
3  the abatement for that month, as it was reflected *both* in the single line-item on the summary
4  page and in the pages detailing each billed hour.  Rimini's request that this amount be deducted
5  twice is unfounded.

   I declare that the foregoing is true under penalty of perjury of the laws of the United States.

   Executed this 4th day of April, 2016, at Oakland, California.


                                    */s/ Beko Reblitz-Richardson*
                                    Beko Reblitz-Richardson

1  **ATTESTATION OF FILER**

2  The signatory to this document is Beko Reblitz-Richardson, and I have obtained

3  Mr. Reblitz-Richardson's concurrence to file this document on his behalf.

4

5  Dated:  April 4, 2016    MORGAN, LEWIS & BOCKIUS, LLP

6                By:   /s/ *Thomas S. Hixson*
7                Thomas S. Hixson, Esq. (*pro hac vice*)
                 One Market Street
8                Spear Street Tower
                 San Francisco, CA  94105
9                Telephone:  (415) 442-1000
                 Facsimile:  (415) 442-1001
10               thomas.hixson@morganlewis.com

11               *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28