BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
KRISTEN A. PALUMBO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
thomas.hixson@morganlewis.com
kristen.palumbo@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>        Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES**<br><br>PUBLIC VERSION |

I, Richard M. Pearl, declare:

1.      I am a member in good standing of the California State Bar.  I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California.  I specialize in issues relating to court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys' fees and related issues.  In this case, I have been asked by Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation ("Oracle") to respond to the objections to Oracle's request for $58.2 million in attorneys' fees and costs (through November 2015) that Defendants Rimini Street and Seth Ravin (together, "Rimini") raised in the materials they filed on March 8, 2016.

I.      **Professional Background**

2.      Briefly summarized, my background is as follows:  I am a 1969 graduate of Boalt Hall School of Law, University of California, Berkeley, California.  I took the California Bar Examination in August 1969 and passed it in November of that year, but because I was working as an attorney in Atlanta, Georgia for the Legal Aid Society of Atlanta ("LASA"), I was not admitted to the California Bar until January 1970.  I worked for LASA until summer of 1971, when I then went to work in California's Central Valley for California Rural Legal Assistance, Inc. ("CRLA"), a statewide legal services program.  From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than fifty attorneys.  In 1982, I went into private practice, first in a small law firm, then as a sole practitioner.  Since 1982, my practice has been a general civil litigation and appellate practice, with an emphasis on cases and appeals involving court-awarded attorneys' fees.  Martindale Hubbell rates my law firm "AV."  I also have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, and 2016.  A copy of my current resumé is attached as **Exhibit A**.

3.      I am the author of *California Attorney Fee Awards* (3d ed. Cal. CEB 2010) and its February 2011, 2012, 2013, 2014, 2015, and March 2016 Supplements, as well as all its previous editions and annual supplements.  California appellate courts have cited this treatise on more

1   than 35 occasions.  *See, e.g., Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 576, 584

2   (2004); *Lolley v. Campbell*, 28 Cal.4th 367, 373 (2002); *Equilon Enters. v. Consumer Cause,*

3   *Inc.*, 29 Cal.4th 53, 62 (2002); *In re Conservatorship of Whitley*, 50 Cal.4th 1206, 1214-15, 1217

4   (2010); *Lyons v. Chinese Hosp. Ass'n*, 136 Cal.App.4th 1331, 1344-46 & n.9, 1348, 1350 n.10,

5   1351-52, 1354 (2006); *Chacon v. Litke*, 181 Cal.App.4th 1234, 1259-60 (2010); *Syers Properties*

6   *III, Inc. v. Rankin*, 226 Cal.App.4th 691, 698, 700 (2014).  Federal courts also have cited it.  *See*

7   *TruGreen Companies LLC v. Mower Brothers, Inc.*, 953 F.Supp.2d 1223, 1236 nn.50, 51 (D.

8   Utah 2013).  I also have lectured and written extensively on court-awarded attorneys' fees.  I

9   have been a member of the California State Bar's Attorneys' Fees Task Force and have testified

10   before the State Bar Board of Governors and the California Legislature on attorneys' fee issues.

11   In addition, I authored a federal manual on attorneys' fees entitled *Attorneys' Fees: A Legal*

12   *Services Practice Manual*, published by the Legal Services Corporation.  I also co-authored the

13   chapter on "Attorney Fees" in Volume 2 of CEB's *Wrongful Employment Termination Practice*,

14   2d Ed. (1997).

15        4.     More than 90% of my practice is devoted to issues involving court-awarded

16   attorneys' fees.  I have been counsel in over **190** attorneys' fee applications in state and federal

17   courts, primarily representing other attorneys.  I also have briefed and argued more than **40**

18   appeals, at least 25 of which have involved attorneys' fees issues.  I have been lead appellate

19   counsel on numerous Ninth Circuit appeals involving attorneys' fees, including:

20           •   *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992);

21           •   *Mangold v. Cal. Public California Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir.

22               1995);

23           •   *Velez v. Wynne*, 220 Fed.Appx. 512 (9th Cir. 2007); and

24           •   *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008).

25        5.     I also have successfully handled five cases in the California Supreme Court

26   involving court-awarded attorneys' fees:

27

28

- *Maria P. v. Riles*, 43 Cal.3d 1281 (1987), a landmark early decision on the scope of the attorneys' fees provision in California Code of Civil Procedure section 1021.5;
- *Delaney v. Baker*, 20 Cal.4th 23 (1999), which held that heightened remedies, including attorneys' fees, are available in suits against nursing homes under California's Elder Abuse Act;
- *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), which held, *inter alia*, that contingent risk multipliers remain available under California attorney fee law, despite the United States Supreme Court's contrary ruling on federal fee-shifting statutes (in *Ketchum*, I was primary appellate counsel in the Court of Appeal and "second chair" in the Supreme Court);
- *Flannery v. Prentice*, 26 Cal.4th 572 (2001), which held that in the absence of an agreement to the contrary, statutory attorneys' fees belong to the attorney upon whose services they are based; and
- *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (2004), which held, *inter alia*, that the "catalyst" theory was still valid under California law despite contrary federal Supreme Court authority.

6.      I also represented and argued on behalf of amicus curiae in *Conservatorship of McQueen*, 59 Cal.4th 602 (2014) (preserving right to appellate fees in statutory fee cases), and, along with Richard Rothschild, filed an amicus curiae brief in *Vasquez v. State of California*, 45 Cal.4th 243 (2008) (interpreting the attorneys' fees provision in California Code of Civil Procedure section 1021.5).

7.      I also have participated in attorneys' fees motions across the country, as an advocate, expert, or consultant, including proceedings in Arkansas, Arizona, Mississippi, Nebraska, Nevada, Oregon, Utah, Vermont, and Washington.  *See, e.g.*, *David C. v. Leavitt*, 900 F.Supp. 1547 (D. Utah 1995).  I also consulted with the plaintiff's attorneys in *Pacquiao v. Mayweather*, 2012 U.S. Dist. LEXIS 131896 (D. Nev. 2012).  For an expanded list of my representative decisions, see **Exhibit A**.

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

1       8.     I have been retained by various governmental entities, including the states of

2    Vermont and California, to consult with them regarding their affirmative attorney fee claims.

3    *See, e.g.*, *In re Tobacco Cases I*, 216 Cal.App.4th 570, 584 (2013).

4       9.     I am frequently called upon to opine about the reasonableness of attorneys' fees,

5    and numerous federal and state courts have relied on my testimony on those issues.  The

6    following federal cases have cited my declaration testimony favorably:

7         &bull;  *In re Cathode Ray Tube Antitrust Litig.*, Master File No. 3:07-cv-5944 JST, MDL

8             No. 1917 (N.D. Cal.), Report And Recommendation Of Special Master Re

9             Motions (1) To Approve Indirect Purchaser Plaintiffs' Settlements With the

10           Phillips, Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, And

11           Technologies Displays Americas Defendants, and (2) For Award Of Attorneys'

12           Fees, Reimbursement Of Litigation Expenses, And Incentive Awards To Class

13           Representative, Dkt. 4351, dated January 28, 2016 ("*Cathode Ray Tube* Report &

14           Recommendation");

15         &bull;  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827

16           (N.D. Cal.), Report and Recommendation of Special Master Re Motions for

17           Attorneys' Fees And Other Amounts By Indirect-Purchaser Class Plaintiffs And

18           State Attorneys General, Dkt. 7127, filed Nov. 9, 2012, adopted in relevant part,

19           2013 U.S. Dist. LEXIS 49885 (N.D. Cal. 2013) ("*TFT-LCD (Flat Panel)* Report

20           & Recommendation");

21         &bull;  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010), in

22           which the expert declaration referred to is mine;

23         &bull;  *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 08-55867 (9th Cir. 2012), Order

24           filed Dec. 26, 2012, at 6;

25         &bull;  *Holman v. Experian Information Solutions, Inc.*, 2014 U.S. Dist. LEXIS 173698

26           (N.D. Cal. 2014);

27         &bull;  *Walsh v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 176319 (N.D. Cal. 2013);

28

1         •  *Rosenfeld v. United States Dep't of Justice*, 904 F.Supp.2d 988, 1002 (N.D. Cal.

2           2012);

3         •  *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832, at *9 (N.D. Cal.

4           2011) (thorough discussion), *aff'd* 2013 U.S. App. LEXIS 6369 (9th Cir. 2013);

5         •  *Armstrong v. Brown*, 2011 U.S. Dist. LEXIS 87428 (N.D. Cal. 2011);

6         •  *Lira v. Cate*, 2010 WL 727979 (N.D. Cal. 2010);

7         •  *Californians for Disability Rights, Inc. v. California Dep't of Transportation*,

8           2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010);

9         •  *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095 (N.D. Cal. 2008) (an

10          earlier motion);

11         •  *Oberfelder v. City of Petaluma*, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal. 2002),

12          *aff'd* 2003 U.S. App. LEXIS 11371 (9th Cir. 2003);

13         •  *Bancroft v. Trizechahn Corp.*, No. CV 02-2373 SVW (FMOx), Order Granting

14          Plaintiffs Reasonable Attorneys' Fees and Costs In the Amount of $168,886.76,

15          Dkt. 278 (C.D. Cal. Aug. 14, 2006);

16         •  *Willoughby v. DT Credit Corp.*, No. CV 05-05907 MMM (CWx), Order

17          Awarding Attorneys' Fees After Remand, Dkt. 65 (C.D. Cal. July 17, 2006);

18         •  *A.D. v. California Highway Patrol*, 2009 U.S. Dist. LEXIS 110743 (N.D. Cal.

19          2009), *rev'd on other grounds*, 712 F.3d 446 (9th Cir. 2013), *reaffirmed and*

20          *additional fees awarded on remand*, 2013 U.S. Dist. LEXIS 169275 (N.D. Cal.

21          2013);

22         •  *Nat'l Federation of the Blind v. Target Corp.*, 2009 U.S. Dist. LEXIS 67139

23          (N.D. Cal. 2009).

24     10.    The California appellate cases referencing my testimony also include the

25  following:

26         •  *Kerkeles v. City of San Jose*, 243 Cal.App.4th 88 (2015);

27         •  *Habitat and Watershed Caretakers v. City of Santa Cruz*, 2015 Cal. App.

28          Unpub. LEXIS 7156 (2015);

1    • *Laffitte v. Robert Half Int'l Inc.*, 231 Cal.App.4th 860 (2014) (vacated on

2        grant of review);

3    • *In re Tobacco Cases I*, 216 Cal.App.4th 570 (2013);

4    • *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal.App.4th 972 (2013);

5    • *Children's Hospital & Medical Center v. Bonta*, 97 Cal.App.4th 740 (2002);

6    • *Wilkinson v. South City Ford*, 2010 Cal. App. Unpub. LEXIS 8680 (2010);

7    • *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628 (1996).

8    11.    In addition, numerous trial courts have relied upon my testimony in unpublished

9   attorneys' fee orders.

10   **II.    My Assignment**

11   12.    In this case, I have been asked by Oracle to respond to Rimini's March 8, 2016

12  Opposition to Oracle's request for $58.2 million in attorneys' fees and costs (through November

13  2015),[1] including to respond to the issues raised in the declarations of Dennis L. Kennedy, John

14  L. Trunko, and William G. Ross.  To form these rebuttal opinions, I have reviewed numerous

15  documents in the case.  A list of the documents I have considered is attached as **Exhibit B**.  I

16  also have communicated about the case with several of Oracle's attorneys, including Thomas S.

17  Hixson, Nitin Jindal, and Zachary Scott Hill of Morgan, Lewis & Bockius LLP ("Morgan

18  Lewis"), Beko Richardson and Sean Rodriguez of Boies, Schiller & Flexner LLP ("Boies

19  Schiller & Flexner"), and Oracle in-house counsel James C. Maroulis.  I have not testified by

20  deposition or at trial in the last four years. I am being compensated for my expert work in this

21  case at $775 per hour.  My resume, attached as **Exhibit A**, lists all of my publications in the last

22  10 years.

23

24

25

26   _____

[1] Oracle's request, as adjusted, consists of $35.6 million in attorneys' fees, $3.4 million in

27  taxable costs, and $19.1 million in non-taxable costs.  *See* Declaration of Thomas Hixson in
    Support of Oracle's Reply in Support of its Motion for Costs and Attorneys' Fees ("Hixson

28  Decl."), Ex. A.

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

### III.   Legal Principles Governing Oracle's Entitlement to Recover Its Reasonable Attorneys' Fees and Costs

13.   I understand that Oracle is entitled to recover its reasonable attorneys' fees and taxable and non-taxable costs under the federal Copyright Act and the Nevada and California computer access laws.[2]  Both federal and state law require that Oracle's reasonable attorneys' fees be determined under the lodestar method:  "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate."[3]  While Oracle bears the burden of documenting its reasonable fees, once those fees are documented, Rimini bears the burden of presenting equally

---

[2] Respectively: 17 U.S.C. § 505; Nev. Rev. Stat. § 205.4765; Cal. Penal Code § 502.

[3] *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Van Asdale v. Int'l Game, Tech.*, 2011 U.S. Dist. LEXIS 56715, at *5 (D. Nev. 2011); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063, at *12 (C.D. Cal. 2015).

Nevada Local Rule 54-16 also sets out the factors to be considered by this Court in determining this motion.  Subsection (b)(1) requires the party claiming fees to file a "reasonable itemization and description of the work performed."  Subsection (b)(2) requires an itemization of all non-taxable costs.  Subsection (b)(3) incorporates the lodestar method by listing the following factors, often called the *Kerr* factors (*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)), for the Court to consider in determining reasonable attorneys' fees:

(A) The results obtained and the amount involved;

(B) The time and labor required;

(C) The novelty and difficulty of the questions involved;

(D) The skill requisite to perform the legal service properly;

(E) The preclusion of other employment by the attorney due to acceptance of the case;

(F) The customary fee;

(G) Whether the fee is fixed or contingent;

(H) The time limitations imposed by the client or the circumstances;

(I)  The experience, reputation, and ability of the attorney(s);

(J)  The undesirability of the case, if any;

(K) The nature and length of the professional relationship with the client; and

(L) Awards in similar cases.

1   specific countervailing evidence that those fees are somehow unreasonable:  generalized

2   objections that the work is "excessive" or "duplicative" do not satisfy that burden.[4]

3          14.     Once established, there is a "strong presumption" that the lodestar figure

4   constitutes the reasonable fee[5]:  "[t]he lodestar amount is presumptively the reasonable fee amount"

5   and may only be adjusted upward or downward by applying a multiplier in "rare" or "exceptional"

6   cases where "the lodestar amount is unreasonably low or unreasonably high."[6]  "Because there is a

7   strong presumption that the lodestar amount represents a reasonable fee, adjustments to the

8   lodestar 'are the exception rather than the rule.'"[7]

9   **IV.    <u>Summary of Opinions</u>**

10          15.     In the declarations filed by Rimini, Dennis L. Kennedy, John L. Trunko, and

11   William G. Ross assert that Oracle's request to recover $58.2 million in attorneys' fees and costs

12   that Oracle paid is unreasonable, based on their views that Oracle's law firms engaged in

13   unreasonable billing practices and only achieved limited success, billed at hourly rates that

14   exceed the rates billed for comparable work by Southern Nevada law firms, and claimed

15   expenses that are excessive and lack documentation.

16          16.     I disagree with these assertions, and I disagree that the attorneys' fees and costs

17   that Oracle seeks to recover are unreasonable.

18          17.     As described further in this declaration, in my opinion, the attorneys' fees and

19   costs requested here, all of which have been reviewed and paid by Oracle, are more than

20   adequately documented, and are appropriate to and justified by the stakes involved, the manner

21   in which the litigation was conducted, and the results achieved.

22

23   _____

24   [4] *See, e.g., Gates v. Gomez*, 60 F.3d 525, 534-535 (9th Cir. 1995); *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal. 2010) (to reduce number of hours, it must be shown that "time claimed is obviously and convincingly excessive under the circumstances" (citation omitted)).

25   [5] *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir.1996).

26   [6] *Van Gerwen v. Guarantee Mut. Life Ins.*, 214 F.3d 1041, 1045 (9th Cir. 2000).  *See also, e.g., Van Asdale*, 2011 U.S. Dist. LEXIS 56715 at **5-6.

27   [7] *Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)).

28

18.     More specifically, in my opinion, Oracle's motion more than sufficiently establishes that the attorneys' fees it requests under the lodestar standard are reasonable: a) Oracle's law firms' hours, which have been carefully reviewed and paid by Oracle and then adjusted for Oracle's motion, are fully justified by the demands this case imposed, the stakes involved, and the results obtained (**Sections V & VI**); b) the hourly rates Oracle negotiated with and paid its law firms also are in line with the rates charged in the legal marketplace by comparably qualified attorneys for comparably complex, vigorously contested, high-stakes litigation (**Section VII**); and c) the costs paid by Oracle for expenses and services incurred to prevail in this litigation also are fully documented and reasonable (**Section VIII**).

19.     Oracle's request, and the evidentiary support that Oracle has provided, are consistent with the level of evidence and detail that numerous courts, including in many cases in which I have been an expert, have found to be sufficient to support an award for the attorneys' fees and costs the prevailing party sought, including in cases where the courts have rejected the same arguments raised by Rimini in this action.

## V.     The Hours For Which Oracle Requests Reimbursement Are Reasonable

20.     I disagree with the assertion by Rimini and its declarants that Oracle's law firms engaged in unreasonable billing practices.[8]  In my opinion, there is no basis for their request for a 30% reduction in Oracle's fee request, or for any reduction in Oracle's request.

21.     In my opinion, the number of hours for which Oracle seeks recovery (which is less than the total number of hours spent by the law firms on this litigation) is entirely appropriate to the stakes involved, the complexity of the factual and legal issues, the manner in which the litigation was conducted, the fact that Oracle had the burden of proof on its claims, and the results obtained.  I base that opinion on the following:

---

[8] Affidavit of Dennis L. Kennedy ("Kennedy Decl.") ¶ 29.10; *see also* Opposition to Oracle's Motion for Attorneys' Fees and Costs ("Opposition") at 22, 24.

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

a. **Oracle's Motion Provides More Than Sufficient Documentary Support For The Hours Claimed**

22.     Oracle has fully documented its fees by presenting the actual invoices its law firms submitted for their work, which included the daily hours for individuals who contributed to Oracle's success in this litigation.[9]  Those invoices were based on contemporaneous time records prepared by Oracle's law firms' attorneys and other professionals, which were carefully reviewed prior to the submission of invoices to Oracle.[10]  The invoices were then carefully reviewed by Oracle's in-house attorneys and, if approved, paid by Oracle.[11]  Nonetheless, Rimini claims that Oracle's fees petition is so "deficient" that the Court would be "well justified" in refusing to award any fees whatsoever.[12]  I strongly disagree.  Based on my extensive experience with fee petitions submitted to and accepted by numerous courts, in my opinion, those invoices, along with counsel's declarations, readily satisfy the requirement that Oracle present a "reasonable itemization and description of the work performed."[13]  Indeed, they are more detailed and complete than the records presented in many other cases in which substantial fees have been awarded.[14]

---

[9] Dkts. 923, 924, 925, 933, 934, 972, 973.

[10] Declaration of Beko Richardson in Support of Oracle's Reply in Support of Oracle's Motion for Costs and Attorneys' Fees ("Richardson Decl."), ¶ 8; Dkt. 923 ¶¶ 6, 12, 102; Dkt. 924 ¶¶ 6, 10. 43.

[11] Dkt. 920 ¶¶ 1, 4; Dkt. 923 ¶ 14; Dkt. 924 ¶ 13.

[12] Opposition at 21.

[13] Local Rule 54-16(b)(1); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2001); *Horsford v. California State Univ. Bd. of Trustees*, 132 Cal.App.4th 359, 396 (2005) ("the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous").  Invoices prepared from contemporaneous time records fully satisfy the requirement that Oracle document its fees.  *See, e.g.*, *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) ("So long as an attorney 'made contemporaneous entries as the work was completed, and … [her] billing was based on these contemporaneous records,' [the Second Circuit's documentation requirement] is satisfied.").

[14] *See, e.g.*, *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) (contemporaneous time records not required when request is reasonable and supported by other evidence); *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1992) (same).  *See also Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012) (rejecting defendant's arguments that fees should have been reduced for insufficient description and block billing); *United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (same); ¶¶ 49-56, 77-81, below (discussing "block-billing" and "vague entries").

10

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

**b. <u>Oracle's Close Monitoring of Its Law Firms' Invoices Confirm The Reasonableness of the Hours the Law Firms Spent</u>**

23.     The number of hours Oracle's law firms spent litigating this lawsuit are fully documented by the invoices that they submitted to Oracle, which were then reviewed and paid by Oracle.[15]  The fact that Oracle carefully reviewed and monitored the time spent by its law firms is a strong indication that those hours were reasonable.

24.     Many courts have found that a sophisticated, fee-paying party's careful monitoring of its counsel's work and the subsequent payment of its attorneys' fees creates a strong presumption that the fees incurred were reasonable and appropriate:

a.   "Given the fact that the fees were *paid by a party* who had no reassurance of indemnity, we believed that market considerations normally would render unnecessary resort to the time-consuming examination of individual expenses. For the federal courts, such exercises drain the institution of its most valuable resource – time."[16]

b.   The presumption that the lodestar amount is reasonable is "particularly forceful where, as here, the fees were billed to and *actually paid by the plaintiff* during the course of the litigation, the relationship between counsel and the plaintiff was a valid business relationship, and the plaintiff, as client, exercise[d] business judgment in retaining and paying counsel."[17]

25.     The strong presumption favoring the hours reviewed and paid for by Oracle also is consistent with the principle that hours are not chargeable to an opponent unless they would be billed to a fee-paying client.[18]  Here, Oracle's engagement letters with its law firms clearly stated

---

[15] Dkts. 923, 924, 925, 933, 934, 972, 973.

[16] *Metavante Corp. v. Emigrant Savings Bank*, 619 F.3d 748, 774 (7th Cir. 2010) ("*Metavante I*") (emphasis added).  *See also Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 U.S. Dist. LEXIS 39832, at *20 (N.D. Cal. 2011), *aff'd* 520 Fed.Appx. 592 (9th Cir. 2013); *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal.App.4th 608, 617 (2015) (specifically noting client's review of bills and efforts to minimize fees and maximize effectiveness).

[17] *Stonebrae*, 2011 U.S. Dist. LEXIS 39832 at *20 (emphasis added).

[18] *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (reasonableness of lodestar generally determined by whether fees would be billed to a fee-paying client); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) ("every item of service which, at

---

11

1    the standard that would be applied to its attorneys' work: ███████████████████

2    ████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ███████████████████"[19]  Further, the engagement letters stated that in-house counsel

6    "████████████████████████████████████████████████████████████

7    ████████████████."[20]  Indeed, the materials submitted by Oracle confirm that Oracle's in-

8    house counsel not only reviewed all its law firms' bills but actively participated in the underlying

9    work, which permitted them to carefully and knowledgably scrutinize those bills.[21]

10        26.    Pursuant to Oracle's policies, Oracle's law firms carefully reviewed each bill

11   before submitting it to Oracle; ████████████████████████████████████████

12   ████████████████████████[22]  Oracle's in-house attorneys then reviewed every single

13   bill; time entries they believed to be excessive or unnecessary were pointed out to counsel and

14   deleted from the bill; hours that were reasonably spent but exceeded Oracle's guidelines were

15   paid only with Oracle's approval.[23]

16        27.    Mr. Kennedy contends that the fact that a client agrees to pay a fee does not, in

17   and of itself, mean the fee is reasonable.[24]  While that may be, Oracle's careful review and

18   the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance
     or protect his client's interest …" is compensable (citation omitted)); *Norman v. Housing Auth.*
19   *of the City of Montgomery*, 836 F.2d 1292, 1301, 1306 (11th Cir. 1988); *Perfect 10*, 2015 U.S.
     Dist. LEXIS 54063 at *12.

20   [19] Dkt. 1012, Ex. B.

21   [20] *Ibid.*

22   [21] Dkt. 923 ¶ 14; Dkt. 924 ¶ 13.

     [22] Dkt. 923 ¶ 12; Dkt. 924 ¶ 10.
23
     [23] Dkt. 920 ¶¶ 1, 4; Dkt. 923 ¶ 14; Dkt. 924 ¶ 13.

24   [24] Kennedy Decl. ¶ 28.3.  Most of the cases Mr. Kennedy cites in support of his position do not
     even address fee petitions but instead are disciplinary proceedings where lawyers are alleged to
25   have violated ethical rules by charging their clients unreasonable fees.  *See In re Sinnott*, 176 Vt.
     596, 596 (2004); *Attorney Grievance Comm'n of Maryland v. Braskey*, 378 Md. 425, 430 (2003);
26   *Marquis & Aurbach v. Eighth Judicial Dist. Court*, 122 Nev. 1147, 1150 (2006).  This is
     obviously not the case here, as Oracle makes no such claim, and its review and approval of its
27   attorneys' fees confirm Oracle's belief that they were reasonable.  Nor is this a case where a
     "legal feeding frenzy" occurred because of a "wealthy client."  Kennedy Decl. ¶ 28.3 (quoting
28   *Microsoft Corp. v. United Computer Resources of New Jersey, Inc.*, 216 F.Supp.2d 383, 386 (D.

1   payment of its law firms' fees creates a *strong presumption*, based on market principles, that the

2   amount of time was reasonably expended to pursue and achieve Oracle's goals, *i.e.*, that in the

3   absence of any compelling reason to disallow their recovery, counsel's fees for the time they

4   expended are recoverable under the applicable fee-shifting statutes.[25]

5               **c.   The Complexity of this Case and Oracle's Success Confirm the**

6                   **Reasonableness of the Amount of Time Oracle's Law Firms Spent**

7         28.     In addition to Oracle's supporting declarations and exhibits, I have reviewed the

8   Court's Docket, the parties' substantive claims, the timeline of proceedings leading to the jury's

9   verdict, and the scope of discovery undertaken by the parties, as well as a graph[26] showing the

10   number of hours Oracle's law firms spent on the case each month over the course of the

11   litigation tied to the key stages of the litigation.  In my opinion, based on this documentation,

12   Oracle's careful review and payment, and my experience with the amount of time other lawyers

13   have spent on comparably complex cases, the amount of time Oracle's law firms spent and that

14   Oracle seeks to recover here was reasonable.

15         29.     The amounts involved and the results obtained by Oracle fully justify the number

16   of hours for which Oracle seeks recovery.  Under both federal and state law, a party that has

17   obtained excellent results should recover a fully compensatory fee.[27]  Oracle's recovery of $50

18   million is an excellent result by any measure.  Indeed, it is five times more than Rimini's expert

19

---

20   N.J. 2002).  To the contrary, Oracle's negotiation of favorable rates (as described in Section
    VII.c) and its enforcement of its billing guidelines evidence Oracle's efforts to pay only
21   reasonable fees.  Finally, the cases cited by Mr. Kennedy, which address whether attorney *rates*
    are reasonable (*Herrington v. County of Sonoma*, 883 F.2d 739, 746 (9th Cir. 1989) and *United*
22   *States v. Metro. Dist. Comm'n*, 847 F.2d 12, 19-20 (1st Cir. 1988)), do not support his position.
    As described in Section VII, significant evidence beyond the hourly rates Oracle negotiated
23   confirm their reasonableness.

24   [25] *See Metavante I*, 619 F.3d at 774; *Stonebrae*, 2011 U.S. Dist. LEXIS 39832 at *20; *Calvo*, 234
    Cal.App.4th at 617.

25   [26] Hixson Decl. Ex. K.

26   [27] *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney
    should recover a fully compensatory fee.  Normally, this will encompass all hours reasonably
27   expended on the litigation, and indeed in some cases of exceptional success an enhanced award
    may be justified."); *Morales*, 96 F.3d at 364-65; *Van Asdale*, 2011 U.S. Dist. LEXIS 56715 at
28   *19.

1    testified to at trial.[28]  It fully justifies the time spent.  Any injunctive relief and/or prejudgment

2    interest awarded by this Court would only further support this conclusion.  My disagreement

3    with the views of Rimini's declarants as to whether Oracle's success justifies the fees it has

4    requested is discussed in greater detail in Section VI, below.

5            30.      Both the legal and factual issues here were quite difficult and complex, going far

6    beyond the complexities found in the vast majority of cases.  As the Court recognized:  "[T]his

7    has been a very, very complex case … I can tell you that – I've never seen a case this complex

8    that involved this many issues before a jury as what you've seen here and before the Court … [I]t

9    is certainly what you call a mega trial and mega lawsuit under any view."[29]

10           31.      Rimini also appears to bear much of the responsibility for this complexity and the

11   resulting number of hours spent by Oracle proving its claims.  For example, Rimini listed 31

12   people on its May 25, 2010 initial disclosures and 36 people on its trial witness list (Dkt. 732).

13   And the extent of wrongdoing that was ultimately proven was extremely broad:  it spanned from

14   2006 through 2011, and included the infringement of 93 copyright registrations and four Oracle

15   product lines that was used to support over 300 customers during this time.[30]

16           32.      This case readily compares with other multi-million dollar fee cases in which I

17   have been involved, either as an expert, advocate, or consultant, including such cases as the

18   *Microsoft I-V Cases* (approving $51+ million lodestar),[31] the *In re TFT-LCD (Flat Panel)*

19   antitrust litigation (approving $308+ million),[32] and the *Cathode Ray Tube* antitrust litigation

20   (approving $250+ million).[33]  Indeed, the hours Oracle's law firms spent are comparable to those

21   spent and compensated in other equally complex cases.  For example, in Oracle's litigation

22   against Mr. Ravin's prior company, TomorrowNow Inc., where allegations of copyright

23   _____

24   [28] Trial Tr. at 2706:14-2707:5 (Hampton).

     [29] Trial Tr. at 3946:9-18.

25   [30] Dkt. 896; Dkt. 523 at 8.

26   [31] Order and Statement of Decision Re Class Counsel's Petition for Attorneys' Fees and Costs,
     J.C.C.P. No. 4106, filed Sep. 9, 20104 (Cal. Sup. Ct.).

27   [32] *TFT-LCD (Flat Panel)* Report & Recommendation.

28   [33] *Cathode Ray Tube* Report & Recommendation.

1    infringement mirrored those that were proved here, the defendants agreed to pay Oracle *$120*

2    *million*[34] for its attorneys' work on that case.[35]

3         33.     This Court also recognized that counsel's hard work resulted in a particularly

4    excellent presentation at trial:  "[A]cross the board these attorneys, in my view, have been as

5    professional, as polished, and as effective as any attorneys I have seen."[36]  An excellent trial

6    presentation, of course, results primarily from careful and thorough preparation.  This also

7    confirms the reasonableness of the total number of hours for which Oracle seeks recovery.

8         34.     To the person, Rimini's declarants ignore the extreme complexity of this case, the

9    duration of the pre-trial proceedings and the length of the trial, as well as the Court's recognition

10   of how complex it was and how well it was tried.  These factors are well-recognized, critical

11   factors in assessing the reasonableness of any fee award.  Local Rule 54-16(b) directs a fee

12   applicant to address, *inter alia*, "(C) [t]he novelty and difficulty of the questions involved," and

13   "(D) [t]he skill requisite to perform the legal service properly."  These factors are noticeably

14   missing from Rimini's declarants' analyses.  Their omission from Rimini's declarations is

15   telling.  Indeed, Mr. Kennedy inexplicably appears to liken this case to a "'farmer painting a barn

16   wall.'"[37]

17                  **d.  Oracle's Voluntary Reductions of the Hours for Which it Seeks**

18                       **Reimbursement Confirm the Reasonableness of Oracle's Fee Request**

19        35.     Oracle's motion does *not* request reimbursement for *all* its attorneys' reasonable

20   fees:  almost $6 million in recoverable fees – over 14% of Oracle's total fees – have not been

21       _____

22   [34] Dkt. 923, Ex. 22.  I understand that the defendants' agreement to pay attorneys' fees and costs in that case also included Oracle's agreement to dismiss some of its claims, but the amount is significant nonetheless.

23   [35] *See also Mattel, Inc. v. MGA Entm't Inc.*, 2011 U.S. Dist. LEXIS 85998, *43 (C.D. Cal. 2011)

24   (copyright action awarding defendant $105,688,073 in attorneys' fees and $31,677,104 in costs), *aff'd* 705 F.3d 1108 (9th Cir. 2013); *In re High-Tech. Employee Antitrust Litig.*, 2015 U.S. Dist.

25   LEXIS 118052, *46 (N.D. Cal. 2015) ($45,822,311 fee awarded for class antitrust action); *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 766-68 (S.D. Ohio 2007) ($108 million fee

26   awarded, even though the case lasted less than three years and the court found that counsel faced less risk because it "piggybacked" on an SEC action).

27   [36] Trial Tr. at 3949:12-14.

28   [37] Kennedy Decl. ¶ 29.4.2 (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)).

1   claimed.[38]  Its voluntary reductions take several forms.  First, by not charging for any time entry

2   in which some information is redacted, Oracle has reduced its fee request by far more than the

3   law requires:  as this Court has recognized, redacted entries are compensable in full if the

4   redactions are reasonably based and the time appears reasonable in context.[39]  Moreover, even if

5   the redacted tasks were not compensable, the remaining tasks in the time entry would still be

6   compensable,[40] but Oracle's motion does not seek recovery for that time.

7          36.   ███████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████        ████████████████████

10  ██████████████████████████████████████████

11  ███████████████████████████████.

12         37.   Third, Oracle is not claiming any fees for the extensive work done by its in-house

13  attorneys, even though that time is compensable.[43]  For example, Jim Maroulis, Oracle's in-

14  house attorney managing this litigation, attended 14 days of depositions (eight Oracle witnesses

15  and five Rimini witnesses), during which he contributed to the efforts of Oracle's outside

16  lawyers.[44]  He also held weekly conferences with Oracle's outside counsel to discuss case

17  strategy and progress; reviewed every substantive brief submitted by Oracle, all discovery

18  requests and discovery responses served on Rimini, and all substantive meet and confer

19

20  [38] Dkt. 972 ¶ 8; Dkt. 973 ¶ 8.

21  [39] *United States v. $167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556, at **13-14 (D. Nev. 2015) (Hicks, J.).  *See also Democratic Party of Washington v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (fee records may be redacted to avoid revealing privileged information, as long as

22  court can judge "whether the work was an appropriate basis for fees"); *Sobel v. Hertz Corp.*, 53 F.Supp.3d 1319, 1329-30 (D. Nev. 2014).

23  [40] *$167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at *15 n.8.

24  [41] *See Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992); *Rodriguez v. County of Los Angeles*, 96 F.Supp.3d. 1012, 1025 (C.D. Cal. 2014).

25  [42] Dkt. 1012, Ex. B; Hixson Decl. ¶ 54.

26  [43] *See Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 2015 WL 4932248, at *6 (N.D. Cal. 2015); *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1093-94 (2000) (citing

27  *Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y.*, 281 F.2d 538, 542 (3d Cir. 1960)).

28  [44] Hixson Decl. ¶ 59.

1    correspondence with opposing counsel; and attended every day of trial.[45]  Oracle's General

2    Counsel, Dorian Daley, as well as Associate General Counsel Deborah Miller, also personally

3    reviewed important case materials and participated in meetings to determine case strategy,

4    including at trial.[46]

5        38.    Finally, Oracle is also not requesting compensation for the fees incurred on this

6    motion after November 2015, even though that time is substantial and also is compensable.[47]

7        39.    Again, Rimini's declarants ignore these significant factors that bear on the

8    reasonableness of Oracle's claim.

9                    e.  **Rimini's Declarants' Failure to Take Into Account Rimini's Own**
                         **Litigation Costs Undermine Their Objections**
10

11       40.    Rimini's objections are also generally undermined by its failure to reveal its own

12   attorneys' hours and rates.[48]  As the district court observed on remand from *Metavante I*, "the

13   court is again persuaded that the fees asked for are commercially reasonable, given that the

14   defendant has again opted to not disclose its own fees – the court is confident that if the

15   defendant's costs and fees were not comparable to the plaintiff's costs and fees, the court would

16   have heard about it."[49]

17       41.    This omission is compounded by the fact that while urging the Court to deny

18   Oracle compensation for the vast majority of the hours its law firms spent, not one of Rimini's

19   declarants takes into account the number of hours that *Rimini's* attorneys spent on this case.

20   Indeed, they do not even appear to be aware of that figure, nor have they factored Rimini's own

21   _____

[45] *Id.* ¶ 60-62.

22   [46] *Id.*, ¶ 63.

23   [47] *See, e.g.*, *Anderson v. Director, Office of Workers Compensation Programs*, 91 F.3d 1322,
     1325 (9th Cir. 1996).  It should also be noted that Oracle is making no claim for the lost use of
24   the $50+ million in funds it has paid out over the course of this six-year case, even though that
     figure would likely be substantial and, in many circumstances, is recoverable.  *See, e.g.*,
25   *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989).

26   [48] *See Metavante I*, 619 F.3d at 775 (affirming district court's award, noting that the court "was
     faced with a situation in which the party challenging the fees as excessive had declined to reveal
27   its own fees as a measure of a reasonable expenditure").

     [49] *Metavante Corp. v. Emigrant Savings Bank*, 2011 U.S. Dist. LEXIS 69820, at *10 (E.D. Wis.
28   2011).

1   staffing practices into their analyses.  In my view, Rimini's declarants' failure to consider

2   Rimini's staffing, the time Rimini's attorneys spent, or the litigation tactics they employed, all of

3   which were readily available to Rimini's declarants, wholly undermines their contentions that

4   Oracle's law firms spent too much time on the case as a whole.[50]

5         42.    This point is most vividly demonstrated by Rimini's objections to Oracle's

6   staffing decisions.  Nowhere do Rimini's declarants appear to consider, or even be aware of, the

7   number of law firms *Rimini* employed (six), the number of attorneys and other professional staff

8   that Rimini used at various stages, or, *e.g.*, the number of internal conferences Rimini's attorneys

9   conducted and/or believed were necessary to effectively litigate this very complex case.

10   Rimini's objections on these grounds to Oracle's fees are discussed more fully below, at

11   paragraphs 57-76.

12         43.    *Both sides* hired multiple national law firms, at great cost, befitting the stakes and

13   complexities involved.  ███████████████████████████████████

14   ███████████████████████████████████████████████

15   ███████████████████████████████████████████████

16   ████████████████████████████████.[51]  It is reasonable to

17   expect that the final figure would have been considerably higher than ███████████, but neither

18   Rimini nor its declarants have revealed it.[52]

19         44.    Regardless of Rimini's actual fees, I would expect Oracle's hours to be greater

20   than Rimini's hours for several reasons.  First, Oracle had the burdens of proof and persuasion

21   throughout.  Second, most of the key evidence was in Rimini's possession.  As a consequence,

22

23

---

24   [50] *Democratic Party*, 388 F.3d at 1287 ("Litigation has something of the tennis game, something of war, to it; if one side hits the ball, or shoots heavy artillery, the other side necessarily spends

25   time hitting the ball or shooting heavy artillery back."); *$167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at *18 (proposed fee reduction rejected based in part on losing parties'

26   actions).

27   [51] Hixson Decl. ¶¶ 15-17, Exs. D, E, J.

28   [52] *Democratic Party*, 388 F.3d at 1287 (a comparison of hours spent by the prevailing and losing party can be "a useful guide in evaluating the appropriateness of time claimed").

1   Oracle's discovery burden was far heavier, as was its burden at trial.  Third, and perhaps more

2   importantly, Oracle *won*:

3   > Comparison of the hours spent in particular tasks by the attorney for the
4   > party seeking fees and by the attorney for the opposing party … does not
    > necessarily indicate whether the hours expended by the party seeking fees
    > were excessive.  Rather, any such comparison must carefully control for
5   > factors such as those mentioned, ***as well as for the possibility that the***
    > ***prevailing party's attorney – who, after all, did prevail – spent more time***
6   > ***because she did better work.***[53]

7              f.   **Rimini's Request for a 30% Reduction in Fees Is Unsupported By the**
                    **Evidence It Cites and Its  Specific Objections to Oracle's Law Firms'**
8                   **Hours Lack Merit**

9        45.    Rimini's opposition raises a number of  objections to the hours for which Oracle

10  seeks recovery.  In my view, none of Rimini's objections are supported by the record in this case.

11       46.    Rimini argues that Oracle should not recover for 30% of the amount Oracle seeks

12  to recover for its attorneys' work, based on a variety of alleged "unreasonable" billing practices:

13  block billing, redundant and excessive work, "vague" and "non-descriptive" time entries, "long

14  days", and the inclusion of entries for time spent on administrative and clerical tasks and for

15  work on other cases.[54]  Rimini does not explain, however, what portion, if any, of its proposed

16  30% reduction is attributable to any specific objection.  Instead, it offers a series of "examples"

17  for each category – the total number of which is an extremely small percentage (far less than

18  30%) of the 25,928 fee and expense entries Oracle submitted[55] – then lumps them all together

19  and asserts, without specific support or quantification, that there should be an across-the-board

20  30% reduction.[56]  For example, Mr. Trunko only identifies 172 examples of entries it claims

21  were "vague" (0.6% percent of the 25,928 total entries), then asks this Court to use those

22

23  [53] *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (emphasis added).  *See*
    *also Chabner v. United of Omaha Life Ins. Co.*, 1999 U.S. Dist. LEXIS 16552, at *9 (N.D. Cal.
24  1999) ("[D]efendant lost this case, so defendant's approach does not recommend a model for
    conducting litigation."); *Major v. Treen*, 700 F.Supp. 1422, 1430 (E.D. La. 1988) ("It is,
25  therefore, illogical to assume that attorneys who win should have spent no more time than
    attorneys who lose.").

26  [54] Opposition at 24-26 (citing to declarants).

27  [55] Trunko Decl. ¶ 18.

28  [56] As described below, many of Rimini's examples do not even support its objections.

1  examples to reduce Oracle's fees by some unspecified percentage of his and Rimini's 30%

2  figure.[57]  All of Rimini's objections suffer from the same deficiency:

3  - Mr. Trunko only identifies 24 examples of block billing;[58]

4  - Mr. Trunko only identifies 241 examples of purportedly excessive "Team

5  Meetings;"[59]

6  - Mr. Trunko only identifies 148 examples of purportedly inappropriate

7  "Administrative & Clerical" time entries, and states there were only $500,000 in

8  total;[60] and

9  - Mr. Trunko identifies no time entries that purportedly relate to another case.

10  For each of these, Mr. Trunko and Rimini fail to reveal what percentage of Rimini's proposed

11  30% reduction is attributable to each objection.  In my view, this makes it impossible to judge

12  the scope and extent of Rimini's objections, and that alone is sufficient grounds to reject them.

13  47.   In relying on an arbitrary percentage reduction, unsupported by quantifiable

14  objections, Rimini's opposition simply does not meet Ninth Circuit standards.  Under Ninth

15  Circuit case law, any objections to categories of time must quantify the objection and give the

16  Court the information required to make an objective, fact-based assessment of the number of

17  hours that should not be compensated, which Rimini has failed to do.[61]  The Ninth Circuit has

18  held that district courts cannot "slash[] broad categories of activity by arbitrary percentages on

19

20  [57] Trunko Decl. Ex. G.

   [58] Trunko Decl. Ex. F.

21  [59] Trunko Decl. Ex. K.

22  [60] Trunko Decl. Ex. L, ¶ 24.

23  [61] *See, e.g.*, *Gonzalez v City of Maywood*, 729 F.3d 1196, 1204 (9th Cir. 2013) (district court's
   failure to justify its percentage reductions in hours reasonably spent leads to conclusion that

24  reductions were arbitrary); *Ryan v. Editions Ltd. W.*, 786 F.3d 754, 765-66 (9th Cir. 2015)
   (district court must identify hours not compensated and explain why, and must explain

25  percentage reduction chosen for block-billing reduction); *Barnard v. Theobald*, 721 F.3d 1069,
   1077 (9th Cir. 2013) (40-percent lodestar reduction for excessive hours reversed in part because

26  trial court did not explain why 40 percent figure would be appropriate); *Moreno*, 534 F.3d at
   1111; *$167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at **16-17; *Perfect 10*,

27  2015 U.S. Dist. LEXIS 54063, at *13; *Pierce v. County of Orange*, 905 F.Supp.2d 1017, 1029
   (C.D. Cal. 2012) (reductions exceeding 10 percent "haircut" require detailed explanation, citing

28  *Moreno*).

1   the basis of ... inarticulable and unsubstantiated dissatisfaction with lawyers' efforts to

2   economize."[62]  Yet that is precisely what Rimini's arbitrary and unsubstantiated request for a

3   30% reduction asks this Court to do.

4        48.    Not only does Rimini fail to explain how much of its proposed 30% reduction is

5   attributable to any specific objection, each individual objection lacks merit.

6   **Block-Billing**

7        49.    Rimini's primary objection appears to be that Oracle's law firms engaged in

8   "block billing," which its declarants claim hampers review and is conducive to "padding."  In my

9   view, those block-billing objections lack merit, for several reasons.

10        50.    First, while Mr. Trunko states that 66% of Oracle's attorneys' hours were block-

11   billed, he does not identify which time entries comprise the 66%.  Instead, he only provides 24

12   examples.[63]  As such, the objection does not provide the Court with an adequate basis to quantify

13   anything or to deny Oracle any of its fees.

14        51.    Reductions for block billing may only be applied to problematic block-billed

15   entries:  it is error to reduce non-problematic entries for "block-billing."[64]  Consequently, any

16   block billing objection must specify and quantify the particular entries that supposedly constitute

17   block billing and also specifically identify those portions that impede the determination of

18   Oracle's reasonable fees, which Rimini fails to do.[65]

19        52.    Second, I have reviewed Oracle's invoices and find Mr. Trunko's estimations

20   overstated.  In my view, many of Oracle's law firms' time entries do not constitute

21   uncompensable "block billing" because they simply list sub-tasks that are focused on one task or

22

23   [62] *Ferland*, 244 F.3d at 1150.

   [63] Trunko Decl. ¶ 18, Ex. F.

24   [64] *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

25   [65] *See Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008) (use of "block
billing" may not "justify an across-the-board reduction or rejection of all hours"); *Secalt*, 668
26   F.3d at 690 (rejecting defendant's arguments that fees should have been reduced for insufficient
description and block billing); *United Steelworkers*, 512 F.3d at 565 (9th Cir. 2008) (same);
27   *Welch*, 480 F.3d at 948 (reversing 20 percent reduction for "block billing" as excessive and
remanding for more limited reduction).

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

1   event, and thus adequately describe the tasks performed.[66]  Mr. Trunko also fails to recognize or

2   acknowledge that ████████████████████████████████████████████████████████

3   ███████████████████.[67]  Moreover, as described above, Oracle is not claiming *any* fees for any

4   block-billed entry that contains a redacted task, a voluntary reduction that Oracle was *not*

5   required to make, and which reduced the amount Oracle seeks by almost $6 million.[68]

6         53.    Third, in my experience, "block billing" is the prevailing practice among

7   California law firms, and has even been used and described as reasonable by Rimini's own law

8   firms (despite their contrary argument now).  I have reviewed the billing records of scores of

9   California law firms, large and small.  Most of these firms, indeed the great majority, submit

10  billing records that describe each time keeper's daily activities but provide only a single

11  numerical total for each time keeper's activities that day – so-called "block billing."  Such

12  records are accepted both by clients who pay the fees and by the courts.[69]  As the Special Master

13  in the *Cathode Ray Tube* case noted:  "Having himself recorded time for almost 50 years, the

14  Special Master is aware how silly it is to insist (as insurance companies sometimes do) on

15  showing a specific amount of time on each action taken during a day."[70]  Significantly, none of

16  Rimini's attorneys or declarants, including Mr. Kennedy, refute this proposition or offer

17  evidence that they or most other firms do not block bill.

18        54.    Rimini's own law firms have based their fee claims on "block-billed" time

19  entries.  For example, Gibson Dunn & Crutcher based its fee claim in the Virginia marriage

20

21

22

23  _____

24  [66] *See, e.g.*, *Perfect 10*, 2015 U.S. Dist. LEXIS 54063 at **80-81.

    [67] Hixson Decl. ¶ 55.

25  [68] *See Democratic Party*, 388 F.3d at 1286; *$167,070.00 in U.S. Currency*, 2015 U.S. Dist.
    LEXIS 112556 at **13-14; *Sobel*, 53 F.Supp.3d at 1329-30; Dkt. 972 ¶ 8; Dkt. 973 ¶ 8.

26  [69] *See, e.g.*, *Stonebrae*, 2011 U.S. Dist. LEXIS 39832 at *29 ("Block-billing is a typical practice
    in this district, and blocked-bills have been found to provide a sufficient basis for calculating a

27  fee award."); *O'Bannon v. NCAA*, 114 F.Supp.3d 819, 831 (N.D. Cal. 2015).

28  [70] *Cathode Ray Tube* Report & Recommendation at p. 73.

1 equality case on "block-billed" time records.[71]  Similarly, Rimini's lead trial counsel, B. Trent

2 Webb, submitted block-billed time records for his firm's fee request in a copyright case.[72]

3      55.     Fifth, the practice of providing only daily totals for the various tasks performed in

4 a given day, without giving a separate time value for each task or sub-task, only becomes an

5 issue in fee applications when a significant amount of time is spent on non-compensable claims

6 or tasks that are lumped together with compensable claims or tasks.  That concern is not present

7 here, however, because as described in Section VI, Oracle's claims all arose from a common

8 core of facts and related legal theories, obviating any need for an apportionment.

9      56.     Finally, contrary to Rimini's claim, numerous federal courts in the Ninth Circuit

10 have found "block billing" perfectly acceptable when it does not impede the determination of

11 reasonable hours.[73]  Here, as in those cases, counsel's block billing does not impede the

12 determination of reasonable hours because all of Oracle's claims are related and therefore all of

13 its attorneys' time is compensable.

14 **Conferencing**

15      57.     Rimini objects that Oracle's law firms billed too much time for "conferencing."

16 Because Rimini claims that 10% of the hours were spent on conferences, but also recognizes the

17 need for and value of some conferencing, any reduction on this basis would come nowhere close

18 to supporting a 30% reduction to Oracle's fees.  Moreover, Rimini's declarants do not even

19 explain which conferences, or even what rough fraction or percentage they believe were

20

21 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[71] *See* **Exhibit C** (Gibson Dunn time records from *Bostic v. Rainey*, No. 14-1167 (4th Cir. 2014),
22 published in the *The National Law Journal*).

[72] *See* **Exhibit D** (Webb Declaration and time records from *Diplomatic Man, Inc. v. Nike, Inc.*,
23 No. 1:08-civ-00139 (GEL), Dkt. Nos. 49-2 & 49-3 (S.D.N.Y. 2009)).

24 [73] *See, e.g.*, *United Steelworkers*, 512 F.3d at 565 (rejecting defendant's arguments that fees
should have been reduced for insufficient description and block billing); *Secalt*, 668 F.3d at 690
25 (same); *Davis v. Prison Health Servs.*, 2012 U.S. Dist. LEXIS 138556, *34 (N.D. Cal. 2012)
(block-billing reduction rejected); *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, 2012 U.S. Dist.
26 LEXIS 20421, at **30-31 (E.D. Cal. 2012); *K.M. v. Tustin Unified School Dist.*, 78 F.Supp.3d
1289, 1304 (C.D. Cal. 2015) (block-billing objection rejected); *Perfect 10*, 2015 U.S. Dist.
27 LEXIS 54063 at *80 (entries not actually block-billed because they described each task
performed); *California Highway Patrol*, 2009 U.S. Dist. LEXIS 110743 at *11 ("block billing"
28 summaries "sufficiently describe[d] the tasks performed" to enable review of fee petition).

1     excessive, making it impossible to analyze the extent of Rimini's complaint. In fact, this level of

2     conferencing – 10% – has been found perfectly acceptable by many courts.[74]

3         58.      In my view, the amount of conferencing for which Oracle seeks to recover was

4     reasonable. In high-stakes, complex, long-lasting cases like this one, conferencing is not

5     "unnecessary duplication"[75] – it is essential to efficiently manage a case, which in turn can

6     *reduce* a lodestar. Conferencing facilitates efficiency and effectiveness by allowing counsel to

7     brainstorm, to share information, and to efficiently allocate responsibilities and thereby avoid

8     duplication.[76] Based on my review of the time records submitted in this case, that is what

9     occurred here, and there is no basis to reduce the amount Oracle seeks based on the time spent

10     conferencing.

11         59.      Indeed, even Rimini's declarants recognize that conferencing is necessary and

12     promotes efficiency in complex cases. As Mr. Ross states in his book, which he cites throughout

13     his declaration, "conferences among attorneys are among the least wasteful activities of

14     attorneys" and they "frequently save money for clients" because "[b]y talking with one another,

15     attorneys often formulate strategies that prevent duplication of effort that so often occurs when

16     attorneys fail to coordinate their efforts" and they "enable lawyers to develop solutions that

17

18     ――――――――――――――

[74] *See, e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 573 n.6 (1986) (approving 197 hours (10% of total time) spent by plaintiffs' two attorneys conferring with each other); *United States v. City & County of San Francisco*, 748 F.Supp. 1416, 1421 (N.D. Cal. 1990), *aff'd in relevant part sub nom Davis v. City & County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1990) (approving fees where 38% of total were for meetings and conferences, based on complexity of case).

[75] *Johnson v. University College of the University of Alabama in Bimingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (reductions for "duplication" are appropriate "only if the attorneys are *unreasonably* doing the *same* work" (emphasis in original)); *Mendez*, 540 F.3d at 1129 (duplicative work not justification for cutting fee "unless 'the lawyer does *unnecessarily* duplicative work'") (emphasis in original, citation omitted)); Hixson Decl. ¶ 56.

[76] *See, e.g.*, *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (because of its value, conferencing time should not be arbitrarily slashed); *Ramos v. Lamm*, 632 F.Supp. 376, 383 (D. Colo. 1986) ("In any complex litigation, efficiency derives from organization and coordination rather than lawyers operating independently."); *American Booksellers Ass'n v. Hudnut*, 650 F.Supp. 324, 329 (S.D. Ind. 1986) ("[T]ime well spent in conference can prevent the unnecessary duplication of effort sometimes caused by poor communication."); American Bar Association, Section of Business Law, Task Force on Lawyer Business Ethics, *Statements of Principles*, 51 Bus. Law 303, 1319, 1320 (1996) (participation in conferences by multiple attorneys is often necessary and beneficial, and therefore billable to clients).

1   would take an individual attorney far longer to reach."[77]  Rimini's own law firms bill for similar

2   conferencing when they make fee claims.[78]  And, while Mr. Ross opines that conferencing

3   should be carefully monitored by the client, he fails to take into account that Oracle did in fact

4   engage in just such careful monitoring; not only did Oracle's in-house counsel regularly join the

5   law firms' discussions and conferences, but this level of conferencing was approved and paid for

6   by Oracle, confirming that Oracle itself recognized this time as useful and necessary.

7   **Oracle's Choice of Law Firms**

8   60.    Rimini also objects to Oracle's retention of two preeminent national law firms,

9   calling it unnecessary "duplication."  Given Rimini's retention of multiple national law firms, a

10  fact that its declarants wholly ignore, this objection is meritless.

11  61.    In my opinion, Oracle's decision to retain two prominent national law firms to

12  handle this matter was fully justified by the scope and nature of this case.  It also was justified by

13  the work the same two law firms had done for Oracle on the same issues in a prior case, which

14  was reflected in their efficient and effective division of labor in this case.[79]

15  62.    Here, both Morgan Lewis and Boies Schiller & Flexner had knowledge and

16  experience with third-party support generally, with Mr. Ravin and the TomorrowNow-Rimini

17  business model in particular, and with Oracle's business.  Indeed, eleven Morgan Lewis

18  attorneys and four Boies Schiller & Flexner attorneys who worked on this case worked on the

19  TomorrowNow case beforehand.[80]  That prior work greatly facilitated their ability to represent

20  Oracle here, both in terms of their knowledge of the facts and issues and in their ability to work

21  efficiently and effectively together.  Given these circumstance, it certainly was reasonable for

22  Oracle to use the same overlapping teams in the two cases.  Again, Rimini's declarants fail to

23

---

24  [77] William G. Ross, *The Honest Hour:  The Ethics of Time-Based Billing by Attorneys* (1996), p. 157.

25  [78] See **Exhibit C** (Gibson Dunn time records) and **Exhibit D** (Shook Hardy time records).

26  [79] Hixson Decl. ¶¶ 18-21; Richardson Decl. ¶ 2.  In the prior case, Oracle was represented by the Boies Schiller & Flexner firm and by Bingham McCutchen LLP, which is now Morgan Lewis &

27  Bockius.

28  [80] Hixson Decl. ¶ 19; Richardson Decl. ¶ 3.

1   take these facts into account, even though Rimini was well aware of them.  Under both the case

2   law and this Court's local rules, this is a very relevant factor to be considered here.[81]

3        63.     Oracle is a highly-sophisticated consumer of legal services, which further

4   confirms the reasonableness of Oracle's decisions.  Oracle would have been fully cognizant of

5   the need to limit expenditures to those required to efficiently and effectively litigate this case,

6   and Oracle's decision as to how to staff such an important case is entitled to substantial

7   deference.[82]

8        **Alleged Overstaffing and Redundant and Excessive Work**

9        64.     Rimini's claim that the retention of two premier law firms inevitably leads to

10   overstaffing and redundant work is unfounded and truly baffling, for several reasons:  1) Rimini

11   itself retained *six* law firms to represent it, a fact its declarants inexplicably ignore; 2) the

12   demands of this case obviously warranted two firms – as this Court observed, this was an

13   exceptionally complex case;[83] 3) the same law firms that represented Oracle here had represented

14   it on similar issues in the past – Oracle's decision to keep that team in place led to *greater*

15   efficiency, not less; 4) Oracle itself carefully reviewed and monitored its attorneys' work to

16   ensure that it was not being billed for unnecessarily "duplicative" or inefficient work;[84] and 5)

17

18   [81] *See Yenidunya*, 2012 U.S. Dist. LEXIS 20421 at **19-20 (noting efficiency derived from
19   attorneys' prior and ongoing representation of party); *Pacquiao v. Mayweather*, 2012 U.S. Dist.
      LEXIS 131896, at *6 (D. Nev. 2012) (finding party's choice of counsel to be reasonable under
20   circumstances); *Metavante I*, 619 F.3d at 775 (rejecting complaint about choice of counsel);
      Local Rule 54-16(b)(3)(K) (factors relevant to reasonableness of attorneys' fees include "[t]he
21   nature and length of the professional relationship with the client").

22   [82]  *See Moreno*, 534 F.3d at 1114 (noting that the "district court may not set the fee based on
      speculation as to how other firms would have staffed the case"); *$167,070.00 in U.S. Currency*,
23   2015 U.S.Dist.LEXIS 112556 at *17 (rejecting percentage reduction for duplication or vague
      entries because the case was complex and defendants' actions partly responsible for size of fee);
24   *Moralez*, 2013 U.S. Dist. LEXIS 107666, *12 ("The Court is reluctant to second-guess the
      staffing decisions of Plaintiff's counsel.").

25   [83] Trial Tr. at 3946:9-18.

26   [84] Rimini's claim that Oracle was required to explain its division of labor between the two firms
      has no basis:  no case requires that level of detail.  Just as importantly, Oracle itself, which was
27   paying the bills, carefully monitored, reviewed, and paid for the cooperative efforts of the two
      firms.  As a sophisticated consumer, it had no incentive or interest in paying for the two firms to
28   duplicate each other's work.

1    Oracle's attorneys were highly effective, both in presenting their case and in winning a $50

2    million verdict, a fact Rimini's declarants also wholly ignore.  As the Ninth Circuit recognized in

3    *Moreno v. City of Sacramento*:  "By and large, the court should defer to the winning lawyer's

4    professional judgment as to how much time he was required to spend on the case; *after all, he*

5    *won, and might not have, had he been more of a slacker.*"[85]

6           65.    Rimini's claim that Oracle had too many attorneys working on the same task is

7    similarly flawed.  In my experience, having several attorneys working on the same brief,

8    pleading, or other task does not mean the work was "duplicative."[86]  In complex cases like this

9    one, for briefs or other important tasks, attorneys commonly divide the issues to be addressed.

10    Likewise, it is entirely reasonable and common, as well as beneficial for the client, to have work

11    reviewed by others on the team.

12           66.    In a case this complex, the need for input from others is particularly acute, both

13    because of the wide range of facts and law that must be considered and the value of having work

14    reviewed by other skilled attorneys,[87] which is why multiple attorneys worked on certain tasks in

---

16  [85] 534 F.3d at 1112 (emphasis added).

17  [86] *See Johnson,* 706 F.2d at 1208 (11th Cir. 1983) (reductions for "duplication" appropriate "only if the attorneys are *unreasonably* doing the *same* work" (emphasis in original)); *Democratic*

18  *Party,* 388 F.3d at 1286-87 ("[P]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort. … [I]f lawyers merely watch so that they can learn

19  and use their knowledge in subsequent cases, their time should not be billed.  But if, for example, they are there because their assistance is or may be needed by the lawyer arguing the case, as

20  when a judge asks 'where is that in the record,' and one lawyer must frantically flip through pages and find the reference to hand to the lawyer arguing, then assistance is most definitely

21  necessary.  Also, for example, a lawyer who has worked on the case and will be working on it subsequently may need to observe argument to judge how to proceed later."); *Nadarajah v.*

22  *Holder,* 569 F.3d 906, 921-22 (9th Cir. 2009); *Horsford v. Bd. of Trustees of California State Univ.,* 132 Cal.App.4th 359, 396-97 (2005) (noting that even partner-level lawyers routinely

23  review and edit each other's work).

24  [87] *See, e.g., Deocampo v. Potts,* 2014 U.S. Dist. LEXIS 24639, at *8-9 (E.D. Cal. 2014) ("Numerous courts have recognized that staffing multiple attorneys on a single task may improve a

25  party's chance of success in litigation. … Absent any specific evidence that plaintiffs' decision to staff multiple attorneys on particular tasks was excessive, the court will not reduce the billed hours of

26  plaintiffs' counsel on this basis."); *PSM Holding Corp. v. Nat'l Farm Fin. Corp.,* 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) ("[D]ivision of responsibility may make it necessary for more than one

27  attorney to attend activities such as depositions and hearings.  Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law." (quotations and citations omitted)).

28  *See also Moreno,* 534 F.3d at 1114 (the "district court may not set the fee based on speculation as to how other firms would have staffed the case").

---

27

1   this case.[88]  Rimini's reliance on Oracle's guidelines overlooks the fact that the guidelines do not

2   prohibit such work, which was not "duplicative" but indeed was necessary.  And again, Rimini's

3   attorneys billed for the same type of team approach in other cases and no doubt did so here as

4   well.[89]  Rimini's declarants, however, do not appear to have considered Rimini's staffing or

5   hours at all.

6          67.     Rimini's objection to Oracle's staffing at trial suffers from the same flaws.  The

7   demands of a three week jury trial involving exceptionally complex issues were extraordinary,

8   and Oracle's law firms' staffing led to a highly skilled and effective presentation.  Nor have I

9   seen any evidence whatsoever that any of Oracle's attorneys were "unreasonably doing the same

10  work" – at trial or at any other time.  Perhaps most importantly, Oracle expressly approved and

11  paid for that level of staffing, based on its belief that this would be the most efficient and

12  effective way to try, and win, its case.

13         68.     The time records submitted by Oracle show that different attorneys from Oracle's

14  law firms attended court on different days during trial.  Mr. Kennedy asserts that there was

15  "substantial overlap and duplication of effort" based on the number of attorneys who attended

16  court each day,[90] but Mr. Kennedy's counts do not reflect any analysis of the tasks performed by

17  those attorneys during each day of trial.  I understand that attorneys were responsible for the

18  preparation of different Oracle witnesses, the cross-examination of different Rimini witnesses,

19  and different evidentiary and legal issues.[91]  As a result, there is no basis to assume that the

20  attendance by multiple attorneys (including different attorneys on different days) reflects any

21  duplication of effort or basis to reduce any fees award.

22         69.     In my experience, clients often benefit from the attendance during trial of multiple

23  attorneys, including attendance by attorneys who are not directly responsible for the examination

24  or argument on a given day.  Attorneys need to keep apprised of the testimony and other

25  _____

26  [88] Hixson Decl. ¶¶ 38-42, 57; Richardson Decl. ¶ 11.

    [89] *See* **Exhibit C.**

27  [90] Kennedy Decl. ¶ 29.2.7.

28  [91] Hixson Decl. ¶ 43; Richardson Decl. ¶¶ 11, 17.

1    proceedings of each trial day to determine how the proceedings affect the distinct tasks for which

2    they were responsible, and attending trial enables attorneys to do that and also efficiently prepare

3    for future examinations and arguments.[92]  To the extent attorneys work on other matters while

4    attending trial, which I understand occurred in this case and which Mr. Kennedy also fails to

5    consider, that also confirms that the time was not "duplicative."  In my experience, dividing trial

6    responsibilities is an efficient way to try a case, and having numerous attorneys attend each day

7    of trial to stay informed of developments, is customary and often necessary to be effective, as the

8    Ninth Circuit has recognized: "[A] lawyer who has worked on the case and will be working on it

9    subsequently may need to observe argument to judge how to proceed later."[93]  I understand that

10   numerous attorneys from Rimini's multiple law firms also attended court each day during trial

11   even if they had no specific trial role that day,[94] which Rimini and its declarants ignore.

12         70.    Rimini's declarants also object that Oracle's law firms had partners doing

13   associate-level work, and relatedly, that they had too many partners working on the case.  I

14   disagree, for several reasons.  First, their objections ignore the roles each Oracle attorney played

15   and the need for attorneys at all levels, including partners, to perform the core tasks of any case.

16   For example, Thomas Hixson and Kieran Ringgenberg billed the most hours on the case because

17   they were two of the only attorneys who consistently worked on the case from its inception

18   through trial.[95]

19         71.    Mr. Kennedy cites only seven examples of legal work that he claims was "more

20   appropriately handled by associates,"[96] but even those examples do not support his complaints.

21   For example, he complains that partners should not have conducted legal research, drafted

22   motions, or drafted witness examinations.[97]  But, in my experience, these core legal tasks are

23   regularly performed by partners in virtually all cases, and partner participation in these tasks is

---

24   [92] *Ibid.*

25   [93] *Democratic Party*, 388 F.3d at 1287.

     [94] Hixson Decl. ¶ 44.

26   [95] *See, e.g.*, Hixson Decl. ¶ 46; Dkt. 923 Exs. 3-9; Dkt. 924 Exs. 3-8.

27   [96] Kennedy Decl. ¶ 29.4.4.

28   [97] Kennedy Decl. ¶ 29.4.4.

1    critical to effectively and efficiently litigating a case:  partners need to conduct research to

2    understand and effectively present and argue the legal issues in the case, and to properly advise

3    their clients.[98]  Also, given their experience, partners must participate in the drafting of legal

4    briefs and witness outlines given the importance of those documents to the outcome of the case.

5         72.    Second, Mr. Kennedy complains that Morgan Lewis and Boies Schiller & Flexner

6    partners accounted for 38% and 50% of each firms' hours billed, but Rimini does not state which

7    portion of these hours it claims should have been billed by less experienced attorneys or whether

8    different staffing would have reduced Oracle's bill.[99]  The scope and extent of his objections,

9    therefore, is unknown.  It also is impossible to reconcile Rimini's objection to an alleged failure

10   to delegate work with its objection that too many attorneys worked on the case and that the total

11   hours billed were too high.  Nor has Rimini revealed how it staffed this case.  In fact, in my

12   experience, the partner/associate split here is not unusual in complex cases, especially those that

13   go to trial.

14        73.    Third, it is not always cheaper to use associate level attorneys for highly-complex

15   work, as Mr. Kennedy acknowledges:  partners can often do the same work faster and more

16   effectively than associates, saving the client money and serving it better.[100]  In my view, that is

17   what occurred here:  this case involved highly-complex facts and law, with which the partner-

18   level attorneys had significant experience, which likely resulted in Oracle now seeking less fees

19   from Rimini than it might otherwise have paid and sought to recover.

20

21

_____

22   [98] *Continental*, 962 F.2d at 570 ("The judge … cut legal research time by 40 percent on the
     ground that experienced securities counsel don't need to do much research.  That clearly is
23   incorrect.  No matter how experienced a lawyer is, he has to conduct (or have conducted for him)
     research to deal with changes in the law, to address new issues, and to refresh his recollection.
24   No one carries the whole of federal securities law – not only the many detailed statutes and
     regulations but the thousands of decided cases – around in his head, and a lawyer who tries to
25   respond to a motion or brief without conducting fresh research is courting sanctions or a
     malpractice suit.  The judge gave no examples of excessive time spent on legal research – he just
26   had a gestalt reaction that there was too much.  That isn't good enough."); Hixson Decl. ¶¶ 45-
     46; Richardson Decl. ¶ 12.

27   [99] Kennedy Decl. ¶¶ 29.4.3.3, 29.4.3.4, 29.4.

28   [100] Kennedy Decl. ¶ 29.4.

74.     Fourth, Rimini's complaint is undermined by the fact that Oracle in-house counsel closely monitored its law firms' staffing and overall bills.  If Oracle believed less partner-level billing was appropriate, it could have demanded it.  Indeed, Oracle's oversight on this issue was shown by its decision to hire contract attorneys to complete document review, at very low ▮▮▮ ▮▮▮▮▮▮   ▮▮▮▮▮▮▮  hourly rates.[102]

75.     Fifth, as the courts have recognized, although partner-level attorneys may occasionally be required to do some work that a lower-level attorney *might* do, they do not generally charge lower rates for that work and are not required to do so.[103]

76.     Sixth, and finally, courts have recognized that there is no single formula for staffing a case and that considerable deference should be afforded to the attorneys' judgment: "While it is appropriate to consider the skill required to perform a task, … the district court may not set the fee based on speculation as to how other firms would have staffed the case."[104]

### Alleged Vague and Non-Descriptive Entries

77.     Rimini objects that Oracle's time records are too "vague" and "non-descriptive." Under federal law, however, "plaintiff's counsel … is not required to record in great detail how each minute of his time was expended."[105]  Rather, counsel need only identify "the general subject matter of his time expenditures."[106]  "[T]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed."[107]  Time records must be read in context:  thus, an entry for "legal research" or "document review" that precedes a major filing or event is perfectly adequate because it permits the court to determine how much time was

---

[101] The rate for certain contract attorneys was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ .

[102] Dkt. 923 ¶¶ 76-84, 97-98; Dkt. 925, Exs. A, B.

[103] *See City & County of San Francisco*, 748 F.Supp. at 1432, *aff'd in relevant part sub nom Davis*, 976 F.2d at 1548.

[104] *Moreno*, 534 F.3d at 1114 (internal citation omitted).

[105] *Hensley*, 461 U.S. at 437 n.12.

[106] *Ibid.*

[107] *Id.* at 441 (conc. op. of Burger, C.J.).

1  spent on the document or event, which is the critical question.[108]  Time-keeping is not an end in

2  itself:  "[T]he recordkeeping requirement should not be imposed in a draconian manner."[109]

3  Here, as described, counsel's time records were adequate for Oracle's in-house counsel to review

4  and approve them.  This created an even stronger presumption that the time spent was reasonably

5  incurred.[110]

6        78.      Applying the correct standards, Rimini's "vague" or "non-descriptive" objections

7  are belied by the billing practices most lawyers actually employ with clients, and those

8  objections have been repeatedly rejected by the courts.[111]  Indeed, two of Rimini's own law

9  firms, Gibson Dunn & Crutcher and Shook, Hardy, and Bacon, employ the same billing practices

10  in their fee claims, billing many hours for, e.g., "prepare for oral argument," "review briefs and

11  motions," and "document review," entries that are no more descriptive than "prepare for trial" or

12  "attention to discovery."[112]

13        79.      Based on my review, Oracle's time records are more than sufficient to determine

14  whether the hours for which Oracle seeks recovery were reasonable.  For example, an entry for

15  "trial prep" satisfies the requirement that the Court have sufficient information to determine if

16  the time was reasonably spent to further Oracle's interests in this case.  The issue is not whether

17  the time spent on any particular trial preparation task, such as preparing a witness or a pre-trial

18  document, was reasonable, but whether the total time Oracle's attorneys spent on trial

19

20  [108] *See, e.g.*, *City & County of San Francisco*, 976 F.2d at 1542 (time entry for "counsel
    meeting" occurring less than one month before complaint filed "conveys information sufficient
21  to pass muster under the *Hensley* standard"); *Prison Legal News v. Schwarzenegger*, 561 F.Supp.
    2d 1095, 1103 (N.D. Cal. 2008) ("vague" billing entries adequate when read in context).

22  [109] *Action on Smoking and Health v. Civil Aeuro. Bd.*, 724 F.2d 211, 222 (D.C. Cir. 1984).

23  [110] *See Metavante I*, 619 F.3d at 773-74.  In this light, Mr. Kennedy's complaint about the
    repetitive 8-hour entries from Oracle's contract attorneys (Kennedy Decl. ¶¶ 29.9.2, 29.9.3) are
24  easily explained:  because it saved Oracle considerable fees, its contract attorneys were hired on
    an hourly-basis to review documents for eight hours per day – they were not permitted to work
25  for longer than that so that Oracle could avoid paying overtime fees, so that is all they did; none
    of their working time was spent on any other matter.  Hixson Decl. ¶ 33.  The fact that the same
26  description is used is hardly unique or unreasonable, as Gibson Dunn's own time entries show.
    *See* **Exhibit C**.

27  [111] *See* nn. 113-116, below.

28  [112] *See* **Exhibit C** (Gibson Dunn time records) and **Exhibit D** (Shook Hardy time records).

1    preparation was within reasonable parameters.  The Court is not expected to micromanage

2    Oracle's attorneys' work but to decide whether, in context, the time spent on any larger task was

3    reasonable.[113]

4         80.    The relevant issue is whether the time that was spent was reasonably directed at

5    winning the case and would be billed to "a client of means who was seriously intent on

6    vindicating similar rights.…"[114]  Under this standard, "the measure of reasonable hours is

7    determined by the profession's judgment of the time that may be consciably billed and not the

8    least time in which it might theoretically have been done."[115]  Here, of course, the challenged

9    time was billed to a very sophisticated fee-paying client and, after careful review, found

10   reasonable and paid by that client.

11        81.    By providing its invoices covering all the fees and costs Oracle seeks, Oracle has

12   gone above and beyond the requirements for providing records to support its request.[116]

13   **Long Days**

14        82.    Rimini's declarants also object to the long days put in by Oracle's law firms at

15   key stages of the case.[117]  In my opinion, those objections simply ignore the realities of complex

16   litigation.  During key stages of any litigation, including during trial, it is perfectly common and

17   reasonable for attorneys to work 15 hour days or more, as the courts have recognized.[118]  And

18   again, Rimini's reference to Oracle's guidelines ignores the fact that Oracle recognized this

19

20

---

21   [113] *Moreno*, 534 F.3d at 1111-12.

22   [114] *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

     [115] *Id* at 1306.

23   [116] *See, e.g., Frank Music*, 886 F.2d at 1557 (contemporaneous time records not required when
24   request is reasonable and supported by other evidence); *$12,248 U.S. Currency*, 957 F.2d at 1521
     (same).  *See also Secalt*, 668 F.3d at 690 (rejecting defendant's arguments that fees should have
25   been reduced for insufficient description and block billing); *United Steelworkers*, 512 F.3d at
     565 (same).

26   [117] Trunko Decl. ¶ 22; Declaration of William G. Ross ("Ross Decl.") ¶ 25.

27   [118] *See, e.g., Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) *overruled on other grounds*,
     *Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987); *Danny
28   Kresky Enterprises Corp. v. Magid*, 716 F.2d 215, 218 (3d Cir. 1983).

---

33

1    reality and expressly approved these hours.[119]  During trial, I understand that Rimini's own

2    attorneys often sent emails after 10 p.m.,[120] and it would be reasonable to expect that counsel for

3    both parties were working long days.  Rimini's declarants do not appear to have considered

4    whether Rimini's outside counsel also spent long days working on this matter, which I believe

5    further undermines their complaints regarding Oracle's motion.

6        **Administrative & Clerical Tasks**

7        83.    In my opinion, Rimini's objections to certain time entries as reflecting non-

8    compensable "administrative" or "clerical" tasks are also unsound and do not warrant any

9    reduction in the amount that should be awarded to Oracle.  The standard, of course, is whether

10   such tasks are billed to fee-paying clients in the local community.[121]  In my experience, most if

11   not all large firms bill for such tasks, just as they were billed to and paid by Oracle.

12       84.    Many of the tasks Rimini's declarants object to involve setting up an efficient and

13   effective "war room" at Boies Schiller & Flexner's Las Vegas office for the trial.  Setting up a

14   "war room" in a remote location, however, is precisely the type of case-specific expense that,

15   when necessary to incur, law firms typically bill to their clients, and which clients pay.  That

16   process also necessarily involved the participation of core members of each law firm's case

17   teams.

18       85.    Similarly, I disagree with Mr. Kennedy's characterization of entries for "training"

19   on Oracle's document review platform (Stroz) as "administrative."  I understand that such

20   training was necessary to provide Oracle's attorneys with the ability to review the discovery in

21   this case, and to do so efficiently.[122]  I further understand that this training was only for this case,

22

23

24   ---

[119] Hixson Decl. ¶¶ 51, 53; Richardson Decl. ¶¶ 14, 16; Dkt. 924 ¶ 10.  The one entry for "24

25   hours" was simply an error that was missed in counsel's review of more than 25,000 entries and
     has been corrected.  Richardson Decl. ¶ 19.

26   [120] Richardson Decl. ¶¶ 14-15.

27   [121] *Trustees of the Construction Industry and Laborers Health & Welfare Trust v. Redland Ins.
     Co.*, 460 F.3d 1253, 1256-57 (9th Cir. 2006).

28   [122] Hixson Decl. ¶ 49; Richardson Decl. ¶ 18.

1   and not applicable to other firm clients.[123]  Oracle also recognized the necessity for its case teams

2   to participate in these activities when it approved the fees related to them.

3       86.     Moreover, virtually every attorney occasionally bills for small amounts of

4   "administrative" or "clerical" time, and that does not in my opinion warrant any reduction in the

5   amount of fees sought by Oracle.  All attorneys occasionally engage in scheduling tasks, copying

6   documents, or organizing files for future events or other tasks when it is more practical to do so

7   (*i.e.*, when it takes less time to do the work than to instruct someone else to do it, or when the

8   work involves legal analysis (*e.g.* organizing files)); it is often more efficient for an attorney to

9   copy a document rather than ask a paralegal or clerical worker to do it when essentially the same

10  amount of attorney time is involved.[124]  Indeed, Rimini's own law firm often billed for such

11  time, sometimes at partner rates.[125]  Likewise, organizing a file is often a very effective way to

12  prepare for an event or for drafting an important document.

13      87.     Mr. Kennedy also provides a list of tasks completed by non-attorneys (paralegals)

14  at each firm and claims that they are non-billable "secretarial work."[126]  But in a large case such

15  as this one, the regular maintenance of the case file, management of calendar deadlines,

16  management of contract attorneys, coordinating and arranging meetings and interviews, and

17  preparing binders and documents for attorneys are core tasks for paralegals who are familiar with

18  and manage the entire case.[127]  I understand that Rimini's law firms also used, and no doubt

19  billed for, paralegals to perform some of these tasks, such as the service of documents, that Mr.

20  Kennedy claims is "secretarial" work.[128]

21

---

22  [123] Hixson Decl. ¶ 49; Richardson Decl. ¶ 18.

23  [124] *See, e.g.*, *Elder v. National Conf. of Bar Exam'rs*, 2011 U.S. Dist. LEXIS 102205, at *11
    (N.D. Cal. 2011) (rejecting argument that certain "clerical" tasks performed by attorneys should
24  not be compensated); *Rosenfeld v U.S. Dep't of Justice*, 904 F.Supp.2d 988, 1006 (N.D. Cal.
    2012) (same).

25  [125] *See, e.g.*, **Exhibit C** at 7 (Gibson Dunn entry for 10/28/13 ("Attention to resolution of issue
    with pagination…"), 11 (4/28/14 entry ("Coordinate moot court logistics…").
26  [126] Kennedy ¶ 29.7.2.

27  [127] Hixson Decl. ¶ 36; Richardson Decl. ¶ 13.

28  [128] Hixson Decl. ¶ 37.

88.     Many of the tasks that Rimini's declarants call "administrative" or "clerical" actually require professional judgment and/or can be very helpful to the attorney (and hence to the client).  The preparation of task lists, for example, allows attorneys to identify new factual and legal issues and tasks that need to be addressed, as well as to efficiently manage the division of work in a complex case like this one – thereby reducing the total amount of fees that the party might seek to recover.[129]  For these reasons, courts have found the types of tasks Rimini's declarants complain about to be compensable.[130]

89.     Finally, Mr. Kennedy's claims about "overhead" expenses are similarly off base. All of these expenses related to the costs Morgan Lewis incurred to provide Oracle with ███████████████████████████████████████████████████████ ████████████████████ ███████████████████████████████ As described, in my experience, law firms often bill contract attorneys' work at *market* rates, and numerous authorities support billing contract attorneys at full market rates.[132]

**Redactions**

90.     I also disagree with the objection by Rimini's declarants to the redactions Oracle has made to the time records.[133]  The Ninth Circuit has made clear that a reasonable number of

---

[129] Hixson Decl. ¶¶ 47-48; Richardson Decl. ¶ 10.

[130] *See, e.g., Pierce*, 905 F.Supp.2d at 1031 (rejecting challenges to tasks that were not solely clerical in nature such as data entry that required knowledge of the case, coordinating witness movements, locating witnesses, and compiling trial documents and exhibits).

[131] Hixson Decl. ¶ 35.

[132] *See, e.g., In re: Tyco Int'l, Ltd.*, 535 F.Supp.2d 249, 272 (D.N.H. 2007); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 783 (S.D. Tex. 2008); *Carlson v. Xerox Corp.*, 596 F.Supp.2d 400, 409-10 (D. Conn. 2009).  *See also Shaffer v. Superior Court*, 33 Cal.App.4th 993, 1002-03 (1995) (law firm entitled to bill client at market value for contract attorney's services, not "cost").

[133] Mr. Ross complains that redactions should not be accepted because they impair his ability to analyze the unredacted portions of the time entry flies.  Ross Decl. ¶ 24.  That objection, however, flies in the face of attorney-client privilege and the case law recognizing its applicability to fee applicants.  It also ignores the fact that Oracle has not charged for any of the additional time recorded in a partially-redacted time entry, even though that time *is* compensable. *See $167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at **13-14.

1   redacted entries are perfectly acceptable, as has this Court.[134]  Moreover, as noted, by deleting all

2   time in any partially-redacted entry, Oracle has done far more than the law requires:  redacted

3   entries are compensable if the redactions are reasonably based and the time appears reasonable in

4   context.[135]  And, again, Rimini's own law firm employs the same practices when it files fee

5   claims.[136]

6           **Claimed Inconsistencies with Oracle's Billing Guidelines**

7         91.    Rimini also objects that certain fees and costs are not recoverable because they

8   are contrary to Oracle's billing guidelines.[137]  For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  However, the record

12  also demonstrates that approval was provided here.

13        92.    Pursuant to Oracle's guidelines, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  As Mr. Maroulis

17  declared, he was "responsible for reviewing and approving all of the bills for attorneys' fees and

18  costs," "reviewed them to ensure the time and expenses spent on the litigation were reasonable,"

19  the bills were "subject to additional review within Oracle," and they were approved and paid by

20  Oracle.[140]  For these reasons, it was not improper for Oracle's attorneys to charge Oracle for the

21  time entries in question, and for Oracle to claim them here.

22

23  [134] *Democratic Party*, 388 F.3d at 1286; *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013); *$167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at **13-14.

24  [135] *$167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at **13-14.

25  [136] See **Exhibit D** (Shook Hardy records).

     [137] Opposition at 20.

26  [138] Dkt. 1012 Ex. B; Hixson Decl. ¶ 50; Richardson Decl. ¶ 5.

27  [139] Hixson Decl. ¶ 50; Richardson Decl. ¶ 5.

28  [140] Dkt. 920 ¶¶ 1, 3.

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

1    **Claimed Work on Other Cases**

2       93.    Rimini also argues that Oracle improperly seeks reimbursement for work done on

3    other cases.[141]  However, neither Rimini nor Mr. Kennedy identifies a single time entry that

4    relates to any case other than this one.  Instead, Mr. Kennedy generally asserts, without any

5    supporting citation, that Oracle improperly seeks recovery in this case for work related to (a)

6    copyright registration applications, (b) a prior lawsuit involving Oracle, and (c) the second

7    lawsuit between Oracle and Rimini filed in October 2014.[142]  The record does not support Mr.

8    Kennedy's contentions or Rimini's arguments.

9       94.    As I understand the facts, Morgan Lewis did include entries for copyright

10   registration applications, but those applications related to copyright registrations that were

11   alleged (and found) to be infringed in this case.[143]  Likewise, Morgan Lewis' and Boies Schiller

12   & Flexner's invoices include references to "TomorrowNow," Mr. Ravin's former company and

13   the defendant in a prior Oracle lawsuit.[144]  However, the record also reflects that to the extent

14   billing entries reference the TomorrowNow lawsuit, those entries relate to:  1) Rimini's

15   discovery requests *in this case* for documents and testimony from the TomorrowNow lawsuit; 2)

16   attempts by Oracle's attorneys to leverage what was learned in the TomorrowNow lawsuit to

17   further Oracle's claims *in this case*, given the significant overlap in parties, witnesses, and

18   issues; and/or 3) TomorrowNow's relevance to *this* case.[145]

19      95.    I also understand that both firms use separate billing numbers for different cases

20   to ensure that only work done on this case is included on the law firms' bills for this case.[146]  For

21   example, both firms use a separate billing number for the second lawsuit between Oracle and

22   Rimini.  Nonetheless, and to ensure that any time for work on the second case, before a separate

23   _____

24   [141] Opposition at 26; Kennedy Decl. ¶ 29.7.3 .

     [142] Kennedy Decl. ¶ 29.7.3 .

25   [143] Hixson Decl. ¶¶ 27-28.

26   [144] Hixson Decl. ¶¶ 24-26; Richardson Decl. ¶ 4.

27   [145] Hixson Decl. ¶¶ 24-26; Richardson Decl. ¶ 4; Dkt. 607 (explaining TomorrowNow's
     relevance to this case).

28   [146] Hixson Decl. ¶ 23; Richardson Decl. ¶ 20.

1    billing number had been set up, did not get included in the fee request for this case, before

2    submitting Oracle's fee request, attorneys at both firms reviewed their bills to ensure no time

3    entries for other cases were included.[147]

4         96.    For these reasons, there appears to be no support for Rimini's claims that Oracle's

5    fee request includes work on other cases.

6    **VI.**    **Claim of Limited Success & Proposed Formulas**

7         97.    Rimini also claims that Oracle's fees should be reduced by 75-85% based on its

8    so-called "limited success," proffering four "formulas" for determining this amount.  In my

9    opinion, a "limited success" reduction is inappropriate here, for many reasons.

10         98.    The standard that applies to proposed "limited success" reductions is whether, in

11    the trial court's discretion, the relief obtained "is limited in comparison to the scope of the

12    litigation as a whole."[148]  Under this standard, however, "[w]here a lawsuit consists of related

13    claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced

14    simply because the district court did not adopt each contention raised.  But where the plaintiff

15    achieved only limited success, the district court should award only that amount of fees that is

16    reasonable in relation to the results obtained."[149]

17         99.    In my opinion, Oracle's fees and costs here are quite reasonable in relation to the

18    results obtained, and quite reasonable "in comparison to the scope of the litigation as a whole."

19    Given the stakes involved, the complexity of the issues, and Rimini's vigorous opposition, it was

20    quite reasonable for Oracle to spend $58.2 million in fees and costs to recover $50 million, *not*

21    *including* the value of injunctive relief, prejudgment interest, or an award of fees and costs – all

22    of which Oracle has requested based on the jury's verdict – or the prophylactic value of not

23    allowing a company like Rimini to infringe on its copyrights without consequence.

24         100.    My opinion is further supported by the fact that Oracle was wholly successful on

25    its primary claims:  Rimini was found to have infringed Oracle's copyright on every product line

---

26    [147] Hixson Decl. ¶ 23; Richardson Decl. ¶ 20; Dkt. 923 ¶ 15; Dkt. 924 ¶ 12.

27    [148] *Hensley*, 461 U.S. at 440.

28    [149] *Ibid.*

1    at issue in the litigation; it also was found to have violated both California's and Nevada's

2    computer access laws.  As Rimini previously acknowledged, "this case is, and has always been,

3    about copyright infringement."[150]

4          101.    Though Oracle dropped some related claims to simplify the trial and lost some

5    others at trial, in my opinion, based on my review of Oracle's counsel's billing entries and

6    relevant case documents, all of Oracle's claims appear to have stemmed from one common

7    course of practice undertaken by Rimini, involving a common core of facts, related legal

8    theories, and work that was inextricably intertwined, as those terms are defined by the case

9    law.[151]  Indeed, Rimini recognized as much when it argued to the Court before trial that Oracle's

10   "non-copyright claims are simply a repackaging of Oracle's copyright infringement claim," "the

11   only time Oracle's damages expert even mentioned the noncopyright claims was to point out that

12   they 'economically overlap' with the copyright claim or otherwise to compare their relationship

13   to the copyright claim," Oracle's interference claim and inducement of breach theories were

14   "wrapped into Oracle's copyright infringement claims," and Oracle's "breach of contract and

15   trespass to chattels claims arise from the same conduct as Oracle's computer hacking claims."[152]

16   In fact, much of counsel's time was devoted to discovering truthful information about Rimini's

17   practices, efforts that applied to all of Oracle's claims.[153]

18         102.    Based on these facts, in my opinion, a reduction for "unrelated" claims would be

19   entirely inappropriate:  "[T]he fee award should not be reduced simply because the plaintiff

20   failed to prevail on every contention raised in the lawsuit. … Litigants in good faith may raise

21   alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach

22   certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."[154]

23

---

24   [150] Dkt. 741 at 14.

25   [151] *See, e.g.*, *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003); *Van Asdale*, 2011 U.S. Dist. LEXIS 56715 at **18-20.

26   [152] Dkt. 741 at 4, 14, 18.

27   [153] Dkt. 923 ¶¶ 17-23; Dkt. 924 ¶ 11.

28   [154] *Hensley*, 461 U.S. at 435.

1    103.    In my opinion, the level of success actually achieved here, as well as the novelty

2  and complexity of the issues and Rimini's resistance, fully justify the time spent.  That Oracle

3  did not recover all the damages it requested from the jury does not diminish its request for a fully

4  compensatory fee.  There is a "strong presumption" that the lodestar figure is reasonable.[155]  A

5  party that has obtained "excellent results" is entitled to a fully compensatory fee.[156]  "The law

6  does not require plaintiffs to recover 100% of what they sue for in order to be considered

7  successful at trial":[157] "A plaintiff may obtain excellent results without receiving all the relief

8  requested."[158]  "Otherwise, virtually no plaintiff would ever recover reasonable attorneys'

9  fees."[159]

10   104.    There is no "proportionality rule" in copyright or other commercial cases that

11  governs the award of attorneys' fees:  the amount of damages recovered does not set a limit on

12  the fees that may be found reasonable.[160]  That is especially true where, as here, Oracle seeks to

13  prevent further unlawful conduct through its request for a permanent injunction.

14   105.    Rimini's "formulas" for reaching such a drastic reduction are unfounded.  The

15  initial formula – comparing the number of claims for relief pled to the number won – has been

---

16  [155] *Morales*, 96 F.3d at 363 n.8.

17  [156] *Hensley*, 461 U.S. at 435; *see also City of Riverside*, 477 U.S. at 569; *Arizona v. ASARCO
18  LLC*, 773 F.3d 1050, 1060-61 (9th Cir. 2014); *El-Hakem v. BJY, Inc.*, 415 F.3d 1068, 1075 (9th
   Cir 2005) (upholding district court's discretion not to reduce fee for unsuccessful claims).

19  [157] *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 438 (6th Cir. 1999).

20  [158] *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).

21  [159] *Hamlin*, 165 F.3d at 438.

22  [160] *See, e.g.*, *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012)
   ("[W]hile the amount of damages recovered is relevant to the amount of attorney's fees awarded,
   it is only one of several factors that a court must consider in determining the fee award."); *Lanard Toys Ltd. v. P.C. Woo Inc.*, 2000 U.S. App. LEXIS 23801, at **8-9 (9th Cir. 2000)
23  (affirming $80,904.75 fee award for defending $8,200 copyright claim).  *Cf. Calvo*, 234
   Cal.App.4th at 626-27 ($1.5 million fee reasonable in pursuit of $945,000 claim); *Peak-Las
24  Positas Partners v. Bollag*, 172 Cal.App.4th 101, 103, 113-14 (2009) (affirming attorneys' fee
   award of $511,282 in a breach of real estate contract to sell land for $475,000, finding that the
25  fees "are well documented and reasonable in light of the complexity of the issues, [defendant's]
   aggressive litigation posture, and the results obtained"); *Cruz v.Ayromloo*, 155 Cal.App.4th 1270,
26  1276 (2007) ("It is not uncommon to award attorney fees in an amount higher than the total
   damages award to a plaintiff or plaintiffs in a particular case.  Appellant cites no authority of the
27  proposition an award of attorney fees must always be less than the award of damages in a given
   case, and we are aware of none.").

28

1    expressly rejected by the United States Supreme Court because it bears no relation to the

2    amounts reasonably expended on the winning claims:  "We agree with the District Court's

3    rejection of 'a mathematical approach comparing the total number of issues in the case with

4    those actually prevailed upon.' … Such a ratio provides little aid in determining what is a

5    reasonable fee in light of all the relevant factors."[161]  Even Rimini's declarants cannot reasonably

6    opine that 15-25% of Oracle's attorneys' fees would have been sufficient to obtain a $50 million

7    verdict, not to mention whatever injunctive relief is ordered.  Nor can they plausibly maintain

8    that 75-85% of Oracle's attorneys' time was spent exclusively on the claims it dropped or lost or

9    on the damages it did not recover.

10          106.    Rimini's other two formulas, which ask this Court to reduce the fee award to the

11   same ratio that the amount of damages recovered bears to the amount sought, are no more a

12   reliable indicator of "success" in this case than comparing claims for relief.  Again, the fact that

13   some damages were not obtained, standing alone, seldom makes a fee unreasonable when the

14   amount requested was reasonably required to obtain the relief that was won.[162]  In commercial

15   cases especially, it often is reasonable, if not required, to spend more in fees than the damages

16   recovered because of the ancillary effects of such relief and/or the losing party's vigorous

17   resistance.[163]

---

18   [161] *Hensley*, 461 U.S. at 435 n.11 (internal citation omitted).

19   [162] *See, e.g.*, *City of Riverside*, 477 U.S. at 571; *Evon*, 688 F.3d at 1033; *Quesada v. Thomason*,
20   850 F.2d 537, 539-40 (9th Cir. 1988); *Van Asdale*, 2011 U.S. Dist. LEXIS 56715 at **20-22
     (rejecting defendant's argument that recovery of $2 million was a "limited success" because
21   plaintiff requested more at trial).  The cases Rimini cites do not support any of its formulas.  For
     example, *Mahach-Watkins v. Depee*, 593 F.3d 1054 (9th Cir. 2010), was a 42 U.S.C. § 1988 case
22   in which the plaintiff proved liability but recovered only $2 in nominal damages.  *Id.* at 1057.
     She then sought $686,794 in fees, but the trial court reduced that amount to $136,687 – 68,343
23   times her damages – based in part on her limited success.  *Id.* at 1058, 1063.  The *defendant*
     appealed, the plaintiff did not, and the Ninth Circuit summarily affirmed the amount.  Factually,
24   *Mahach-Watkins* simply bears no resemblance to a case where the plaintiff has recovered much
     more than nominal damages – $50 *million* (plus possible injunctive relief and up to $41.09
     million in pre-judgment interest) – and incurred attorneys' fees that are of the same magnitude.

25   [163] *See* cases cited in n.160, above.  The rule in civil rights cases is similar:  no rule of
     "proportionality" between fees and damages may be applied, nor must fees be proportionally
26   reduced based solely on the difference between relief sought and relief obtained.  *See, e.g.*, *City
     of Riverside*, 477 U.S. at 571.  Instead, parties who obtain significant success may be awarded
27   fully compensatory fees, even when their damages fall short of the amount requested.  *See also,
     e.g.*, *Harman v. City & County of San Francisco*, 158 Cal.App. 4th 407, 413, 419-21 (2008)
28   (reviewing fee award under federal law, but using state and federal law principles

---

107.    It also is significant to me that the amount of fees Oracle incurred was determined in large part by Rimini's vigorous resistance to this lawsuit.  If Rimini had wished to limit its fee liability, it could have made an unqualified Rule 68 settlement offer at some point in the litigation – for $50.027 million, plus prejudgment interest, Oracle's reasonable attorneys' fees to the date of the offer, and the injunctive relief Oracle requested – or even stipulated to liability.  A 75-85% reduction here would essentially negate Congress's chosen tool for limiting litigation costs in successful cases.

108.    In my opinion, the two Rule 68 offers Rimini eventually did make were ineffective to limit its fee liability.  ██████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ ██████ ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████ ██████ Rimini argues that those offers exceed the copyright infringement jury award in this case, and thus preclude Oracle from recovering the fees and costs it incurred after those offers.  I disagree.

109.    A Rule 68 offer only precludes a plaintiff from recovering post-offer fees and costs if it is "more favorable" than the final judgment the plaintiff obtains for all claims, including any prejudgment interest, attorneys' fees and costs awarded to the plaintiff, and the value of any non-equitable relief included in the judgment.[166]  Here, Oracle incurred $49.5

---

interchangeably; fee award of more than $1 million affirmed, even though plaintiff recovered only $30,300, which was far less than $600,000 in damages that he sought and only slightly more than defendant offered).

[164] Dkt. 1012 Ex. K.

[165] Dkt. 1012 Ex. M.

[166] *See* Fed. R. Civ. P. 68; *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 231-32 (2d Cir. 2006).

1    million in reasonable attorneys' fees and costs prior to Rimini's July 27, 2015 offer and $51.3

2    million prior to its August 24 offer.[167]  I understand that, because Rimini's offers were █████

3    ████████████████████████████████████████████████████████████████████████████████

4    ██████████████████████████    Thus, without even considering Oracle's prejudgment interest and

5    the value of any equitable relief it may obtain, Oracle's $50.027 million jury award plus $49.5

6    million or $51.3 million in fees and costs are "more favorable" than Rimini's Rule 68 offers.

**VII.   The Hourly Rates Charged By Oracle's Attorneys Are Reasonable in Light of Their Qualifications, Skills, and Prior Relationship with Oracle**

110.    I am aware of the hourly rates charged to and paid by Oracle in this matter.  I also have reviewed the backgrounds and qualifications of each biller, as well as significant samples of counsel's work.  It is my opinion that the hourly rates Oracle agreed to and did pay its law firms are in line with the rates charged by comparably qualified and skilled attorneys for comparably complex work.[169]

111.    Nonetheless, Rimini argues that this Court can only award rates that attorneys who reside in Nevada charge.  I disagree.

**a.   The Actual Rates Paid by Oracle Were Reasonable Because It Was Reasonable to Hire National Law Firms to Litigate this Complex Case**

112.    Given the stakes and issues involved, Oracle's decision to retain preeminent national law firms, with billing rates typical for such firms, to represent it in this litigation cannot be faulted especially where one of those firms had an office in Las Vegas and an experienced attorney in Las Vegas (Richard J. Pocker) who was also involved with this litigation.[170]  There

---

[167] Hixson Decl. ¶ 6.

[168] Declaration of Elizabeth A. Dean Concerning Attorneys' Fees and Costs.

[169] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (issue is whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate."); *Perfect 10*, 2015 U.S. Dist. LEXIS 54063 at *45.

[170] Richardson Decl. ¶ 6.

1    are several reasons Oracle's market-based decision to pay these hourly rates (which reflected

2    negotiated discounts) was reasonable. [171]

3          113.    First, and significantly, Rimini also was represented by top-of-the-line national

4    firms like Gibson Dunn & Crutcher, whose national rates are higher than those charged by

5    Oracle's attorneys here, and as described below, are regularly found to be among the highest in

6    the country. [172]  Rimini can hardly complain that Oracle made a similar choice.  And it is notable

7    that none of Rimini's declarants acknowledge or consider that Rimini hired multiple national law

8    firms with out-of-state attorneys to represent it.  Moreover, even though Oracle pointed to

9    Rimini's national law firms in its fee motion, neither Rimini nor its declarants chose to

10   acknowledge its own attorney choices in its opposition to Oracle's motion.

11         114.    Second, in comparable circumstances, this Court has found similar national rates

12   reasonable.  In the *Pacquiao v. Mayweather* matter, for example, this Court recognized that for

13   cases like this, national law firm rates are reasonable and should be awarded.  There, Pacquiao's

14   Los Angeles-based law firm, O'Melveny & Myers, submitted a fee motion based on the full, Los

15   Angeles-based rates that it had charged Mr. Pacquiao.  Defendant Mayweather objected,

16   claiming that the rates exceeded Nevada attorneys' rates.  This Court rejected that argument,

17   awarding Pacquiao the full rates he had paid, finding that in certain cases "*the parties can*

18   *reasonably be expected to retain nationally respected law firms and nationally respected*

19   *attorneys to pursue their interests in the litigation*," which will result in "*higher lodestars than*

20   *normally seen in this district.*"[173]  The same reasoning applies here.

21         115.    Third, as described in **Appendix A**, the rates charged to and paid by Oracle here

22   are clearly "in line" with the rates awarded to and charged by other national law firms for

23

---

24   [171] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182,
     191 (2nd Cir. 2007) ("[A] district court may use an out-of-district hourly rate – or some rate in
25   between the out-of-district rate sought and the rates charged by local attorneys – in calculating
     the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid
26   those higher rates.").

     [172] *See* **Exhibit E** (*Pope v. County of Albany*, 1:11-cv-00736-LEK-CFH, Dkt. No. 440, at 8-9
27   (N.D.N.Y. May 6, 2015, detailing rates that are national in nature).  *See also* **Exhibit C**.

     [173] *Pacquiao*, 2012 WL 4092684, at *6 (emphasis added).
28

1    comparably complex work.  They certainly are in line with the higher rates charged by Gibson

2    Dunn & Crutcher, one of Rimini's law firms.  In the Virginia marriage equality case, for

3    example, they billed rates of up to $1,800 per hour.[174]  Likewise, in a May 2015 fee application,

4    Gibson, Dunn & Crutcher's billing rates ranged from $416 to $1,174 per hour, with most rates in

5    the $500-600 range.[175]  In fact, Gibson, Dunn & Crutcher's bill rates have been consistently

6    ranked as among the highest in the country.[176]

7        116.    Rimini's objection that Oracle did not support its rates with outside declarations

8    is, in my opinion, misplaced.  Oracle not only submitted evidence that it had negotiated and

9    discounted its normal rates with Oracle, and that for this type of complex litigation, the hiring of

10    national law firms is a common and reasonable practice, but Oracle also justified its rates with

11    the 2014 National Law Journal survey[177] showing that its rates were well in line with the rates

12    charged by other national law firms.  Such surveys have frequently been relied on by other

13    courts.[178]

14            **b.  Oracle's Decision to Hire Law Firms Who Had a History with this**

15                **Dispute Justifies this Court Awarding Reasonable Rates for the San Francisco Bay Area, Where Oracle and Its Law Firms And Also Many**

16                **Rimini Witnesses Were Located**

17        117.    Oracle's pre-existing relationship with its two San Francisco Bay Area-based law

18    firms also is significant.[179]  That relationship involved a highly-successful case against Seth

19    Ravin's former company and involved the same type of practices at issue in this case.  In my

20    view, that prior experience would have been the most significant factor in choosing the counsel

21    [174] *See* **Exhibit C.**

22    [175] *See* **Exhibit E** (*Pope v. County of Albany*, 1:11-cv-00736-LEK-CFH, Dkt. No. 440, at 8-9 (N.D.N.Y. May 6, 2015)).

23    [176] *See* Appendix A, Appendix B**,** Dkt. 923, Ex. 22, **Exhibit C, Exhibit E, Exhibit O** (excerpt

24    from the 2013 National Law Journal Billing Billing Survey showing partner and associate rates for the top 31 firms, sorted by "Partner Billing Rate Avg.").

25    [177] Dkt. 923, Ex. 22.

26    [178] *See, e.g.*, *Gabriel Tech. Corp. v. Qualcomm Inc.*, 2013 US Dist Lexis 14105, *33 (S.D. Cal. 2013), *aff'd* 60 Fed.Appx. 966 (Fed Cir. 2014); *Petroleum Sales, Inc. v. Valero Ref. Co.*, 304 Fed. Appx. 615, 617 (9th Cir. 2008).

27    [179] *See* Local Rule 54-16(b)(3)(K) (factors relevant to reasonableness of attorneys' fees include

28    "The nature and length of the professional relationship with the client").

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

1   to represent it in this case.[180]  A demonstrated ability to obtain great results is obviously a

2   compelling factor.  Also, however, such relationships tend to show a trust in and satisfaction with

3   the attorneys' work, both in terms of efficiency and effectiveness; *i.e.* if the attorneys had a

4   practice of overbilling or doing inefficient, ineffective, or unskilled work, it is highly unlikely

5   that a sophisticated client like Oracle would have continued to hire them.

6       118.    Oracle's decision to retain Bay Area-based counsel also resulted in enhanced

7   efficiencies.  Oracle is headquartered in the Bay Area, and its Bay Area attorneys not only

8   already knew its business models but also were available for in-person communications –two

9   factors that enhance efficiency, reduce travel, and lower bills.  Moreover, much of the case

10  revolved around the Bay Area: ██████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████

13      119.    Because of these benefits, and given the complex nature of the litigation and

14  especially the prior work done by Oracle's law firms for it on very similar matters, the

15  reasonableness of the rates Oracle paid can also be confirmed by comparing them to the rates

16  charged by comparable law firms in the San Francisco Bay Area, where counsel's offices are

17  located.[182]  That Rimini also went outside the forum for its attorneys further justifies Oracle's

18  request.[183]

19      120.    As described in **Appendix B**, the standard hourly rates for litigation stated in

20  court filings, depositions, surveys, or other sources by numerous law firms or law firms with

21  offices or practices in California also support Oracle's counsel's rates.  For example, numerous

22  [180] *See, e.g.*, *Yenidunya*, 2012 U.S. Dist. LEXIS 20421 at **19-20 (prevailing party awarded San
    Francisco rates for Sacramento litigation because counsel had previously represented that party
23  and was familiar with the dispute).

24  [181] Hixson Decl. ¶ 58; Richardson Decl. ¶ 7.

25  [182] *Yenidunya*, 2012 U.S. Dist. LEXIS 20421 at **19-20 (E.D. Cal. 2012) (efficiency derived
    from attorneys' prior and ongoing representation of party justified deviation from forum rates);
    *Shany Co. v. Crain Walnut Shelling, Inc.*, 2015 WL 351660, at *6 (E.D. Cal. Jan. 23, 2015).  *See
26  also* Appendix B.

27  [183] *See Metavante I*, 619 F.3d at 775 (affirming fee award at non-forum rates, noting that "while
    criticizing Metavante for retaining an out-of-town firm to handle the trial, Emigrant itself
28  proceeded with a comparable out-of-town firm of its own").

1  firms with offices in the San Francisco Bay Area, including Arnold & Porter LLP, Cooley LLP,

2  Fenwick & West, and Orrick Herrington & Sutcliff, had numerous senior attorneys charging

3  rates of $800-$1,000 per hour or more in the 2007-2015 period.  A number of other California

4  and San Francisco firms, including Gibson, Dunn & Crutcher LLP, Rimini's law firm, billed

5  senior partners at rates in excess of $1,000 per hour during this period.

6                 c.  **The Discounts Oracle Negotiated Confirm The Reasonableness of the**
7                     **Actual Rates They Paid**

8        121.    The reasonableness of the rates Oracle paid its law firms and claim here also is

9  strongly supported by the fact that they were *negotiated* by Oracle, a highly-sophisticated

10  consumer of legal services, and thus reflect the market value of counsel's work, which is the

11  applicable standard.[184]  These rates are *not* outliers:  as demonstrated in Appendix B, the rates

12  Oracle negotiated with its law firms here are entirely consistent with the market rates paid for

13  comparably qualified attorneys handling comparably complex matters.  That one of Rimini's law

14  firms (Shook Hardy) charged lower rates is "of limited use," [185] particularly because another of

15  Rimini's law firms (Gibson Dunn) charges rates that are comparable to or *higher* than Oracle's

16  firms.[186]

17        122.    ████████████████████████████████████████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21

22  ───────────────────

23  [184] *See, e.g.*, *Metavante I*, 619 F.3d at 775; *Perfect 10*, 2015 U.S. Dist. LEXIS 54063 at **55-56
(C.D. Cal. 2015); *Mandel v. Lackner*, 92 Cal.App.3d 747, 761 (1979) ("The value of an
24  attorney's time generally is reflected in his normal billing rate." (quotations and citations
omitted)); *$167,070.00 in U.S. Currency*, 2015 U.S. Dist. LEXIS 112556 at *7 (fee agreement
relevant to determination of reasonable hourly rates).

25  [185] *Perfect 10*, 2015 U.S. Dist. LEXIS 54063 at *48; *see also City and County of San Francisco*,
26  748 F.Supp. at 1431 (lower rate charged by one comparable attorney only "some evidence" of
"range" of rates charged).

27  [186] *See* Appendix A, Appendix B**,** Dkt. 923, Ex. 22, **Exhibit C, Exhibit E, Exhibit O** (excerpt
from the 2013 National Law Journal Billing Billing Survey showing partner and associate rates
28  for the top 31 firms, sorted by "Partner Billing Rate Avg.").

1  ███████████. The result is a further indication of reasonableness. ████████████

2  ██████████████████████████████████████████

3      123. ██████████████████████████████████

4  ████████████████████████████████ In my experience, most

5  law firms bill contract attorneys' work at *market* rates – *i.e.*, the rates charged for attorneys of

6  comparable experience, skill, and expertise for comparable work. Indeed, numerous authorities

7  support billing contract attorneys at full market rates.[187] ████████████████████

8  ██████████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10  ████

11      124. I also disagree that Oracle was required to provide the specific qualifications of its

12  contract attorneys. Those rates were not based on the attorneys' specific qualifications but on the

13  discrete type of work – document review – they were asked to perform.[189] Regardless of their

14  level of experience or qualifications, the flat rates paid by Oracle represent significantly below

15  market rates. That arrangement resulted in a significant reduction in Oracle's total fees.[190]

16  **VIII.**    **Oracle's Costs Are Reasonable**

17      125. Oracle also has requested reimbursement for $3.4 million in taxable costs and

18  $19.1 million in non-taxable expenses incurred in this case. I have reviewed those costs and

19  expenses, and in my opinion, they are reasonable expenditures for a case of this scope and

20  complexity. The particular objections Rimini asserts (addressed below) do not alter that opinion.

21      126. As with their hours and rates, my opinion that Oracle's costs and expenses are

22  reasonable is based in part on the fact that they reflect substantial discounts negotiated by Oracle.

23  ██████████████████████████████████████████

24  ───────────────

25  [187] *See, e.g., Tyco Int'l*, 535 F.Supp.2d at 272; *Enron*, 586 F.Supp.2d at 783; *Carlson*, 596 F.Supp.2d at 409-10. *See also Shaffer*, 33 Cal.App.4th at 1002-03.

26  ██ █████████████████████████████████████

27  [189] Hixson Decl. ¶ 32.

28  [190] Hixson Decl. ¶¶ 31, 34.

1 ████████████████████████████████████████████

2 ████████████████████████████████

3    **Expert Fees**

4        127.    Rimini argues that the $7 million in expert fees Oracle incurred were

5 unreasonable.[192]  However, based on my experience with similarly large and complex cases

6 involving highly technical issues such as this one, significant expert analysis is required for a

7 plaintiff to prove its case and obtain the results that Oracle did here.  In addition, based on my

8 experience, $7 million is a reasonable amount of expert fees for a case of this size and

9 complexity.  These were amounts paid by Oracle in this litigation, and in my opinion Oracle

10 properly included those amounts in its request for fees and costs.

11    **"Other Costs"**

12        128.    Rimini also claims that Oracle should not be permitted to recover $1.2 million in

13 non-taxable costs because Oracle allegedly did not adequately identify, describe, or itemize

14 them.[193]  I disagree.  The costs to which Rimini refers are itemized in each of the invoices Oracle

15 submitted to the Court.  They are separately listed by date and include descriptions of their

16 purpose.  It also appears that Rimini was able to evaluate them despite its claim to the contrary.

17 Specifically, Mr. Trunko was able to review each invoice and organize these costs by

18 category.[194]  Based on my experience, the level of detail and organization in Oracle's attorneys'

19 invoices is sufficient to evaluate them, to justify their recovery of the costs, and conforms with

20 numerous other costs petitions that courts have accepted.

21

22

23

24

---

25 [191] *See, e.g.*, *Trustees of Constr. Indus. v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir.
2006); *City and County of San Francisco*, 976 F.2d at 1556.

26 [192] Opposition at 29-30.

27 [193] Opposition at 31.

28 [194] Trunko Decl. Ex. N-1.

1    **Claimed Errors**

2        129.    Rimini and its declarants claim that Oracle's fees and costs calculations contain

3    certain errors. I understand that Mr. Hixson and Mr. Richardson have investigated these

4    arguments and made certain corrections to Oracle's claim.

5        130.    In my experience, for fee petitions this large, these types of corrections are neither

6    surprising nor problematic. They are the product of a careful review of the materials. Oracle's

7    final fee and cost calculations are, in my opinion, well supported and provide a reliable basis for

8    the award of fees and costs. Oracle has addressed the immaterial and very few complaints

9    identified by numerous Rimini declarants who had over four months to analyze Oracle's claim.

10

11        If called as a witness, I could and would competently testify from my personal

12    knowledge to the facts stated herein. I declare under penalty of perjury under the laws of the

13    United States that the foregoing is true and correct. Executed this 4th day of April, 2016, in

14    Berkeley, California.

15

16                                    RICHARD M. PEARL

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

131.    Through my writing and practice, I have become familiar with the non-contingent market rates charged by attorneys in California and elsewhere.  This familiarity has been obtained in several ways:  (a) by handling attorneys' fee litigation; (b) by discussing fees with other attorneys; (c) by obtaining declarations regarding prevailing market rates in cases in which I represent attorneys seeking fees; and (d) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers and treatises.  I also have testified before trial courts or arbitrators on numerous occasions, and have submitted expert testimony by declaration on hundreds of occasions: each of those efforts require me to be aware of the hourly rates being charged by the firms involved.

132.    The information I have gathered, some of which is set forth herein, shows that the rates charged to and paid by Oracle are in line with the non-contingent market rates charged by national law firms:

- In December 2015, Thomson Reuters published its "Legal Billing Report," which surveys the rates approved for various law firms by the bankruptcy courts.  A true and correct copy of an excerpt for the data listed for the California and West Regions is attached hereto as **Exhibit F**.  It shows that Oracle's law firm's rates are well in line are in line with the rates awarded to other national law firms.

- On January 5, 2015, the National Law Journal published an article about its most recent rate survey entitled "Billing Rates Rise, Discounts Abound."  A true and correct copy of that article is attached hereto as **Exhibit G**.  It contains the rates charged by numerous law firms handling comparably complex litigation in this area.  Oracle's law firm's rates are well in line with those rates.

- On January 13, 2014, the National Law Journal published an article about its most recent rate survey.  That article included a chart listing the billing rates of the 50 firms that charge the highest average hourly rates for partners.  A true and correct copy of that article is attached hereto as **Exhibit H**.  Of the 50 firms listed, several have offices in the San Francisco Bay Area and many others have significant litigation experience in

this area.  And, although the discounted rates that some Oracle counsel are requesting here are *lower* than  the rates charged by the listed firms, the NLJ chart does show the rates requested here are in line with the rates charged by similarly-qualified attorneys for similar services, which is the applicable standard.  *See, e.g.*, *City & County of San Francisco*, 976 F.2d at 1547.

- The 2013 Real Rate Report Snapshot published by Ty Metrix/Legal Analytics summarizes the 2012 "real rates" for partners and associates in various cities. A copy of the relevant pages is attached hereto as **Exhibit I**.  It shows that for the San Francisco area law firms surveyed (309 partners, 327 associates), the Third Quartile partner rate in 2012 was **$800** per hour and the Third Quartile Associate rate in 2012 was **$525** per hour.  Given the excellent quality of the work performed and exceptional results obtained here, in my opinion the Third Quartile rates should serve only as a floor on counsel's rates – the primary attorneys in this matter would more appropriately be measured by the top ten percent (90th percentile) of attorneys.  Moreover, since 2012, many if not most California law firms have raised their rates by at least another 5-10%, with some raising them by 5% or so annually. Indeed, the Ty-Metrix survey shows that San Francisco partner and associate rates rose 8% between 2010 and 2012.

- In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 per hour or more revealed in public filings and major surveys.  A true and correct copy of that article is attached hereto as **Exhibit J**.  The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an *average* rate between $879 and $882 per hour.

- In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011.  A true and correct copy of that article is attached hereto as **Exhibit K**.  That article confirms that the rates charged by experienced and well-qualified attorneys continued to rise over the five-year period between 2006 and

53

2011, particularly in large urban areas. It also shows, for example, that the top quartile of lawyers bill at an *average* of "just under $900 per hour."

- Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers."  A true and correct copy of that article is attached hereto as **Exhibit L**.  That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas, who charged $1,000 per hour or more.

- The National Law Journal's December 2010 nationwide sampling of law firm billing rates (**Exhibit M**) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

- On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009.  That article is attached hereto as **Exhibit N**.  In addition to reporting that several attorneys had charged hourly rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.  Since by law, bankruptcy rates must be no higher than the rates charged for other types of similar work, these rates are probative here.

133.    The foregoing data shows that the rates charged to and paid by Oracle are in line with the prevailing rates charged by comparably qualified attorneys for reasonably similar work.

**APPENDIX B**

134.    The information I have gathered, some of which is set forth herein, also shows that the rates charged to and paid by Oracle are in line with the non-contingent market rates charged by San Francisco Bay Area law firms for work done by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable services.

135.    Comparable hourly rates have been found reasonable in numerous cases, including the following:

**2015 Rates**

a.    *In re High Tech Employment Antitrust Litigation*, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. 2015), filed September 2, 2015, a class antitrust action, in which the court found the following 2015 hourly rates reasonable for Lieff Cabraser Heimann & Bernstein and various other national class action law firms (before applying a 2.2 multiplier):

| Level | Rate |
|---|---|
| Partners | $490-975 |
| Associates and other non-Partners | $310-800 |
| Paralegals, law clerks, and litigation support staff | $190-430 |

b.    *O'Bannon v. National Collegiate Athletic Assn.*, 2015 U.S. Dist. LEXIS 91514  (N.D. Cal. 2015), filed July 13, 2015, a group antitrust action in which Bill Isaacson of Boies Schiller & Flexner LLP served as co-lead trial counsel (as he did in the present case).  In that case, the court found the following hourly rates reasonable:

| Level | Rate |
|---|---|
| Partners | $600-985 |
| Associates | $370-490 |
| Paralegals | $300-320 |
| Law Clerks | $325 |

c.    *Wynn v. Chanos,* 2015 U.S .Dist. LEXIS 80062 (N.D. Cal. 2015), filed June 19, 2015, an anti-SLAPP fee award, in which the court found the following hourly rates reasonable for the defendant's Arnold & Porter LLP attorneys:

55

| Level | Rate |
|---|---|
| Partners (2015) | $920-1085 |
| Partners (2014) | $875-1035 |
| Associates (2015) | $640-710 |
| Associates (2014) | $570-645 |

    d.    *Gutierrez v. Wells Fargo Bank, N.A,* 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. 2015), a consumer class action, in which the court found the following 2015 hourly rates reasonable for the Class' Lieff Cabraser Heimann & Bernstein attorneys (before applying a 5.5 multiplier):

| Level | Rate |
|---|---|
| Partner | $625-975 |
| Associates | $350-490 |
| Paralegals | $225-430 |

## 2014 Rates

    a.    *Ammari v. Pacific Bell Directory,* Alameda Superior Court No. RG05198014, Order Granting Plaintiffs' Application for Attorney's Fees, Reimbursement of Costs, and Service Awards, filed January 5, 2015, a consumer class action, in which the court found the following hourly rates reasonable, including rates for appellate counsel from Arnold & Porter LLC:

| Level | Rate |
|---|---|
| Partners | $600-995 |
| Associates | $375-675 |

    b.    *Banas v. Volcano Corp.*, 47 F.Supp.3d 957 (N.D. Cal. 2014), a dispute over a merger agreement decided on summary judgment, in which the court found the following hourly rates reasonable:

| Level | 2012 | 2013 | 2014 |
|---|---|---|---|
| Partner | $  975 | $1,035 | $1,095 |
| E-Discovery Staff Attorney | | $260 | $325 |

Paralegal        $245    $260    $275-290

### 2013 Rates

a.   *Ellis v. Costco Wholesale Corp.*, N.D. Cal. No. C04-3341 EMC, Order Granting Motion for Final Approval of Class Action Settlement, filed May 27, 2014, an employment class action, in which the court found the following hourly rates reasonable:

| Level | Rate |
|---|---|
| Partners | $500- 875 |
| Associates | $315-575 |
| Paralegals | $155-295 |
| Law Clerks | $185-275 |

b.   *In re Pacific Bell Late Fee Litigation,* Contra Costa County Superior Ct. No. MSC10-00840, Order Awarding Attorneys' Fees, Costs and Expenses and Authorizing Payment of Incentive Award to the Class Representative, filed October 18, 2013, a consumer class action, in which the court found the following hourly rates reasonable:

| Level | Rate |
|---|---|
| Partners | $675-850 |
| Associates | $390-620 |
| Paralegals and Litigation Support | $160-180 |

### 2012 Rates

a.   *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. 2013), an antitrust class action, in which the court found the following hourly rates reasonable for the indirect purchaser plaintiffs' class action counsel as follows:

**Zelle Hofman**

| Level | Blended Historical Rates |
|---|---|
| Partner | $525-1045 |
| Associates | $417-500 |

**Stever, Lowenthal *et al.***

| Level | Rate 2012 | Rate 2011 | Rate 2010 |
|---|---|---|---|
| Partner | $660-820 | $640-770 | $590-730 |
| Associates | $380 | $360 | $320 |

57

**Steyer, Lowenthal** *et al.*

| Level | Rate 2012 | Rate 2011 | Rate 2010 |
|---|---|---|---|
| Paralegal | $190 | $150 | $150 |

**Cooper & Kirkham**

| Bar Admission | Rates 2010-2012 |
|---|---|
| Partners | $825-950 |
| Associate | $550 |

b.      *Luquetta v. The Regents of the Univ. of California,* San Francisco Superior Ct. No.CGC-05-443007, Order Granting Plaintiffs' Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the following hourly rates reasonable:

| Level | Rate |
|---|---|
| Partners | $700-850 |
| Associates | $385-625 |
| Law Clerks | $250 |
| Paralegals | $215 |

136.    In addition, the rates charged by counsel in *Apple Inc. v. Samsung Electronics Co. Ltd.*, N.D. Cal. No. 11-cv—01846-LKK (PSG), support the rates requested here.  In that case, according to the declaration filed by Diane C. Hutnyan on July 22, 2012 (Dkt. No. 1275), Quinn Emanuel Urquhart & Sullivan LLP, counsel for defendant Samsung, charged median partner rates of $821 per hour and median associate rates of $448 per hour.

137.    Data I have collected regarding the rates charged by law firms with California and San Francisco offices also are consistent with the rates Oracle paid here.  These firms include, in alphabetical order:

**Arnold & Porter LLP**

| 2015 | Level | Rate |
|---|---|---|
| | Partners | Up to $1,085 |
| | Associates | Up to $710 |
| 2014 | | |
| | Partners | Up to $1,035 |
| | Associates | Up to $645 |
| | Legal Assistant | $300-325 |
| 2013 | | |
| | Average Partner | $815 |

|  |  |  | Highest Partner | $955 |
|  |  |  | Lowest Partner | $670 |
|  |  |  | Average Associate | $500 |

### Cooley LLP

| 2012-2014 Rates: | Years of Experience (in 2014) | 2012 | 2013 | 2014 |
|---|---|---|---|---|
|  | 31 | $975 | $1,035 | $1,095 |
|  | 17 | $670 | $710 | $770 |
|  | 9 | $550 | $645 | $685 |
|  | 7 | $500 | $585 | $685 |
|  | 6 |  | $530 | $620 |
|  | 3 |  | $355 | $445 |
|  | Paralegal |  | $260 | $325 |
|  | Paralegal | $245 | $260 | $275 |
|  | Paralegal |  |  | $290 |

### Covington Burling

| 2014 Rates | Level | Rate |
|---|---|---|
|  | Average Partner | $780 |
|  | Highest Partner | $890 |
|  | Lowest Partner | $605 |
|  | Average Associate | $415 |
|  | Highest Associate | $565 |
|  | Lowest Associate | $320 |

### Fenwick & West

| 2014 Rates | Years of Experience | Rate |
|---|---|---|
|  | 29 | $825-930 |
|  | 17-18 | $715-750 |
|  | 9-11 | $660-690 |
|  | 5 | $375-560 |
|  | 3 | $505 |
|  | Paralegal | $240-345 |
|  | Staff Support | $290 |
| 2013 Rates | 18 | $755 |
|  | 11 | $595 |
|  | 2 | $425 |
| 2012 Rates | 40 | $865 |
|  | 17 | $755 |
|  | 10 | $595 |

### Gibson Dunn & Crutcher LLP

| 2015 Rates: | Years of Experience | Rate |
|---|---|---|

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

| | | |
|---|---|---|
| | 37 | $1,125 |
| | 23 | $955 |
| | 3 | $575 |
| 2014 Rates | 48 | $1,800 |
| | 36 | $1,080 |
| | 22 | $910 |
| | 11 | $860 |
| | 9 (Of Counsel) | $740 |
| | 8 | $740 |
| | 6 | $690 |
| | 2 | $485 |
| 2013 Rates | 47 | $1,800 |
| | 35 | $1,040 |
| | 26 | $1,040 |
| | 15 | $925 |
| | 10 | $795 |
| | 7 | $695 |
| | 5 | $625 |
| | 1 | $425 |
| | Paralegals | $245-345 |

**Hausfeld LLP**

| 2014 Rates | Years of Experience | Rate |
|---|---|---|
| | 45 | $985 |
| | 37 | $935-895 |
| | 15 | $610-510 |
| | 14 | $600 |
| | 7 | $490 |
| | 3 | $370 |
| | Paralegals | $300-320 |
| | Law Clerks | $325 |

**Irell & Manella**

| 2013 Rates | Average Partner | $890 |
|---|---|---|
| | Highest Partner | $975 |
| | Lowest Partner | $800 |
| | Average Associate | $535 |
| | Highest Associate | $750 |
| | Lowest Associate | $395 |

**Jones Day**

| 2013 Rates | Average Partner | $745 |
|---|---|---|
| | Highest Partner | $975 |
| | Lowest Partner | $445 |
| | Average Associate | $435 |
| | Highest Associate | $775 |
| | Lowest Associate | $205 |

**Kirkland & Ellis**

| 2013 Rates | Average Partner | $825 |
|---|---|---|
| | Highest Partner | $995 |
| | Lowest Partner | $590 |
| | Average Associate | $540 |
| | Highest Associate | $715 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

| | | |
|---|---|---|
| | Lowest Associate | $235 |

**Latham & Watkins**

| 2013 Rates | | |
|---|---|---|
| | Average Partner | $990 |
| | Highest Partner | $1,100 |
| | Lowest Partner | $895 |
| | Average Associate | $605 |
| | Highest Associate | $725 |
| | Lowest Associate | $465 |

**Lieff Cabraser Heimann & Bernstein, LLP**

| 2014 Rates | Year of Bar Admission | Rate |
|---|---|---|
| | 1998 | $825 |
| | 2001 | $600 |
| | 2006 | $435 |
| | 2009 | $415 |
| | 2013 | $325 |
| | Paralegal/Clerk | $305 |
| 2013 Rates | 1975 | $925 |
| | 1998 | $800 |
| | 2001 | $525 |
| | 2003 | $490 |
| | 2006 | $415 |
| | 2009 | $395 |
| | 2013 | $320 |
| | Paralegal/Clerk | $285 |

**Morrison Foerster LLP**

| 2013 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $865 |
| | Highest Partner | $1,195 |
| | Lowest Partner | $595 |
| | Average Associate | $525 |
| | Highest Associate | $725 |
| | Lowest Associate | $230 |

**O'Melveny & Myers**

| 2013 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $715 |
| | Highest Partner | $950 |
| | Lowest Partner | $615 |

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
| | 12 | $695 |
| | 4 | $495 |

**Orrick Herrington & Sutcliffe**

| 2014 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $845 |
| | Highest Partner | $1,095 |
| | Lowest Partner | $715 |
| | Average Associate | $560 |
| | Highest Associate | $710 |
| | Lowest Associate | $375 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY
IN SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES

**Paul Hastings LLP**

| 2014 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $815 |
| | Highest Partner | $900 |
| | Lowest Partner | $750 |
| | Average Associate | $540 |
| | Highest Associate | $755 |
| | Lowest Associate | $350 |

**Pillsbury Winthrop Shaw Pittman LLP**

| 2013 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $865 |
| | Highest Partner | $1,070 |
| | Lowest Partner | $615 |
| | Average Associate | $520 |
| | Highest Associate | $860 |
| | Lowest Associate | $375 |
| 2010 Rates | Partners | $595-965 |
| | Associates | $320-650 |
| | Paralegals/Support Staff | $85-380 |

**Skadden, Arps, Slate, Meagher & Flom**

| 2013 Rates | Average Partner | $1,035 |
|---|---|---|
| | Highest Partner | $1,150 |
| | Lowest Partner | $845 |
| | Average Associate | $620 |
| | Highest Associate | $845 |
| | Lowest Associate | $340 |

**Wilson Sonsini Goodrich & Rosati PC**

| 2010 Rates | Years of Experience | Rate |
|---|---|---|
| | 28 | $875 |
| | Other Partners | $650-975 |
| | Associates | $290-610 |
| | Paralegals/Litigation Support | $120-300 |

138.    The foregoing data shows that the rates charged to and paid by Oracle are in line with the prevailing rates charged by comparably qualified attorneys for reasonably similar work.

1

**CERTIFICATE OF SERVICE**

2

     I certify that on April 4, 2016, I electronically transmitted the foregoing

3

**DECLARATION OF RICHARD M. PEARL IN SUPPORT OF ORACLE'S REPLY IN**

4

**SUPPORT OF ITS MOTION FOR COSTS AND ATTORNEYS' FEES** to the Clerk's

5

Office using the Electronic Filing System pursuant to Special Order No. 109.

6

Dated:  April 4, 2016              Morgan, Lewis & Bockius LLP

7

8

              By:  _____/s/ *Thomas Hixson*_____

9

                                Thomas Hixson

10

              Attorneys for Plaintiffs
              Oracle USA, Inc.,

11

              Oracle America, Inc. and
              Oracle International Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28