UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ORACLE USA, INC., a Colorado corporation; )
ORACLE AMERICA, INC., a Delaware )
corporation; and ORACLE )            2:10-CV-00106-LRH-PAL
INTERNATIONAL CORPORATION, a )
California corporation; )
)
                    Plaintiffs,     )            ORDER
)
v.                                  )
)
RIMINI STREET, INC., a Nevada       )
corporation; and SETH RAVIN, an individual; )
)
                    Defendants.     )
_____ )

     Before the court are plaintiffs Oracle USA, Inc.; Oracle America, Inc.; and Oracle

International Corporation's (collectively "Oracle") motion for a permanent injunction

(ECF No. 900), motion for prejudgment interest (ECF No. 910), and motion for attorneys' fees

(ECF No. 917). Defendants Rimini Street, Inc. ("Rimini") and Seth Ravin ("Ravin") (collectively

"defendants") filed oppositions to the motions (ECF Nos. 905, 958, 998) to which Oracle replied

(ECF Nos. 907, 979, 1018).

**I.      Facts and Procedural History**

     This action has an extensive factual and procedural history. In brief, Oracle develops,

manufactures, and licenses computer software. Oracle also provides software support services to

customers who license its software. Defendant Rimini is a company that provides similar software

support services to customers licensing Oracle's software and competes directly with Oracle to provide these services. Defendant Ravin is the owner and CEO of Rimini.

On January 25, 2010, Oracle filed a complaint for copyright infringement against defendants alleging that Rimini copied several of Oracle's copyright-protected software programs onto Rimini's own computer systems in order to provide software support services to its customers. ECF No. 1. In June 2011, Oracle filed a second amended complaint alleging thirteen causes of action against defendants: (1) copyright infringement; (2) violation of the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a); (3) violation of the California Computer Data Access and Fraud Act, Cal. Penal Code § 502; (4) violation of the Nevada Computer Crimes Law, NRS § 205.4765; (5) breach of contract; (6) inducement of breach of contract; (7) intentional interference with prospective economic advantage; (8) negligent interference with prospective economic advantage; (9) unfair competition; (10) trespass to chattels; (11) unjust enrichment; (12) unfair practices; and (13) accounting. ECF No. 146.

A jury trial was held on Oracle's claims from September 14 through October 13, 2015. On October 13, 2015, the jury returned its verdict and found that defendant Rimini engaged in copyright infringement of Oracle's copyrighted PeopleSoft, J.D. Edwards, and Siebel-branded Enterprise Software products. ECF No. 896. The jury also found that both defendants Rimini and Ravin violated the California Computer Data Access and Fraud Act and the Nevada Computer Crimes Law. *Id*. Ultimately, the jury awarded Oracle $35,600,00.00 against Rimini for copyright infringement and awarded Oracle $14,427,000.00 against both Rimini and Ravin for violation of the state computer access statutes. *Id*. After the jury verdict, Oracle filed the present motions for a permanent injunction, prejudgment interest, and attorneys' fees. ECF Nos. 900, 910, 917. The court shall address each post-trial motion below.

## II.    Motion for Permanent Injunction (ECF No. 900)

As part of its motion for a permanent injunction, Oracle seeks three separate forms of relief. First, Oracle seeks judgment against defendants on its claim for violation of California's Unfair

1    Competition Law. Second, Oracle seeks a permanent injunction to enjoin and restrain defendants

2    from continued infringement of Oracle's copyrighted Enterprise Software products and from

3    improperly accessing and taking data from Oracle's websites and computer systems. Finally,

4    Oracle seeks disposition of all copies of the infringing software on defendants' systems.

5    **A.  California's Unfair Competition Law**

6    Oracle seeks judgment against both defendants Rimini and Ravin on its claim for violation

7    of California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200 *et seq*.

8    California's UCL prohibits unlawful, fraudulent, and unfair business practices. *Cel-Tech Comm's,*

9    *Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1992). There is no right to a jury trial

10   under the UCL. Rather, a violation of the UCL occurs as a matter of law when there has been a

11   violation of a predicate act. CAL. BUS & PROF. CODE § 17200. A violation of the California

12   Computer Data Access and Fraud Act is an identified predicate act under the UCL. *See Cal-Tech*

13   *Comm's, Inc.*, 20 Cal. 4th at 180; CAL. BUS & PROF. CODE § 17500 *et seq*. Because the jury found

14   that defendants violated the CDAFA, Oracle is also entitled to judgment against defendants on its

15   UCL claim. Accordingly, the court shall grant Oracle's motion and issue judgment in favor of

16   plaintiffs Oracle America, Inc. and Oracle International Corporation on this claim.

17   **B.  Permanent Injunction**

18   "[T]he decision whether to grant or deny injunctive relief rests within the equitable

19   discretion" of the district court. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006). Such

20   discretion should be "exercised consistent with traditional principles of equity." *Id*. In determining

21   whether to issue a permanent injunction in copyright infringement actions, courts evaluate four

22   factors: (1) irreparable harm; (2) inadequacy of monetary damages; (3) the balance of hardships;

23   and (4) whether the public interest would be served by a permanent injunction. *Id*. at 391; *see also*

24   *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc*., 654 F.3d 989, 999 (9th Cir. 2011) (applying the

25   four-factor test outlined in *eBay*). Further, an injunction should issue when the intervention of the

26   ///

3

1  court in equity is essential to protect a party's rights against injuries that could not otherwise be

2  remedied. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

3  **1.  Availability of a Permanent Injunction**

4  Before addressing whether to award Oracle an injunction in this action, the court must first

5  determine whether Oracle is entitled to seek a permanent injunction against defendants and under

6  what statute(s), if any.

7  Initially, Oracle contends that it may seek a permanent injunction under the Nevada

8  Computer Crimes Law ("NCCL"). *See* NRS § 205.513(2) ("An injunction . . . [m]ay be issued

9  without proof of actual damage sustained by any person."). However, under the NCCL, only the

10  Nevada Attorney General or the appropriate district attorney may seek a permanent injunction

11  against a party who has violated the act. NRS § 205.513(1) (stating that only the "Attorney General

12  or the appropriate district attorney may file an action in any court of competent jurisdiction to

13  prevent the occurrence or continuance of that act or practice."). Thus, the plain language of the

14  statute does not authorize Oracle, a private party, to seek a permanent injunction for a violation of

15  the NCCL.

16  Next, Oracle seeks a permanent injunction under the California Computer Data Access and

17  Fraud Act ("CDAFA"). The CDAFA provides that the owner of a computer network, like Oracle,

18  may seek injunctive relief for violations of the statute. CAL. PENAL CODE § 502(e)(1) ("In addition

19  to any other civil remedy available, the owner or lessee of the computer, computer system,

20  computer network, computer program, or data who suffers damage or loss by reason of a violation

21  of any of the provisions of subdivision (c) may bring a civil action against the violator for

22  compensatory damages and injunctive relief or other equitable relief."). Accordingly, Oracle is

23  entitled to seek a permanent injunction against defendants under the CDAFA.

24  Finally, Oracle contends that it is entitled to seek a permanent injunction under the

25  Copyright Act. The Copyright Act provides that a district court may enter an injunction "on such

26  terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C.

§ 502(a). Therefore, the court finds that Oracle is entitled to separately seek a permanent injunction against defendant Rimini under the Copyright Act.[1]

### 2. Irreparable Injury

The first factor in a permanent injunction analysis is whether a plaintiff has suffered an irreparable injury as a result of a defendant's conduct, or will suffer an irreparable injury absent an injunction. *See American Trucking Ass'ns v. City of Los Angeles*, 559  F.3d 1046, 1052 (9th Cir. 2009). As part of a court's irreparable injury analysis in a copyright action, courts regularly examine three factors: (1) direct competition between the parties; (2) loss of market share due to the infringement; and (3) loss of customer and business goodwill. *See, e.g., Presidio Components Inc. v. Am. Tech. Ceramics Corp*., 702 F.3d 1351, 1362 (Fed. Cir. 2012) (stating that direct competition in the same market strongly supports the potential for irreparable harm absent an injunction); *i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 861 (Fed. Cir. 2010) (finding that harm to a party's market share, revenues, and brand recognition is relevant for determining whether the party has suffered an irreparable injury); *Celsis in Vitro, Inc. v. CellzDirect, Inc*., 664 F.3d 922, 930 (Fed. Cir. 2012) (holding that loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm).

Here, the court finds that defendants' unlawful actions, to wit copyright infringement and violations of the state computer access statutes, irreparably injured Oracle's business reputation and goodwill. First, it is undisputed that Oracle and Rimini directly compete with each other to provide software support services and that Rimini infringed Oracle's copyrighted works, which supports issuance of a permanent injunction. *See Presidio Components, Inc.*, 702 F.3d at 1362.

Second, the evidence in this action established Rimini's callous disregard for Oracle's copyrights and computer systems when it engaged in the infringing conduct. For example, the evidence established that Rimini's egregious and continued infringement enabled it to rapidly build

---

[1] As the jury did not find that defendant Ravin engaged in any copyright infringement, Oracle may not separately seek a permanent injunction against Ravin pursuant to the Copyright Act.

its business and gain market share against Oracle in the software support service market by offering cut-rate prices on its support services for Oracle software, generally at a discount of 50% of Oracle's prices for similar service contracts. In fact, Rimini's business model was built entirely on its infringement of Oracle's copyrighted software and its improper access and downloading of data from Oracle's website and computer systems, and Rimini would not have achieved its current market share and business growth without these infringing and illegal actions. Moreover, Rimini landed clients for its services by telling customers that Oracle's services were overpriced and could be provided at the same rate Rimini was offering while still providing Oracle significant profits, thereby harming Oracle's business reputation. Through this misconduct, Rimini gained an improper advantage that it used to harm Oracle's business reputation and  goodwill in the software service industry. Such injuries to a business' reputation and goodwill have consistently been held to constitute irreparable harm. *See Apple Inc. v. Psystar Corp. (Apple II)*, 658 F.3d 1150, 1154 (9th Cir. 2011).

Finally, Rimini's claim that it no longer engages in the conduct adjudged by the court and jury to infringe Oracle's copyrights is not a basis to deny issuance of an injunction. *See Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (stating that "[a] private party's discontinuation of unlawful conduct does not make the dispute moot, however. An injunction remains appropriate to ensure that the misconduct does not recur as soon as the case ends."). Therefore, the court finds that this factor weighs in favor of a permanent injunction.

### 3.  Inadequacy of Monetary Damages

In order to establish that an injunction is warranted, a plaintiff must show that monetary damages are inadequate to fully compensate it for the defendant's conduct. *eBay*, 547 U.S. at 391. Here, the court finds that Oracle has established that monetary damages alone are inadequate to compensate it for the losses suffered because of defendants. First, the court notes that certain harms suffered by Oracle like lost market share and company goodwill are intangible injuries difficult to

1      quantify and compensate. *See Apple II*, 658 F.3d at 1154 (stating that injuries to a business'

2      reputation and company goodwill are intangible injuries difficult to quantify and compensate).

3      Second, the infringement damages in this action were complex and difficult to determine. Unlike a

4      patent case where a specific number of infringing products are sold at a specific price, in this

5      copyright infringement action there was no efficient way to measure the damages Oracle suffered.

6      In particular, the jury was provided with two separate damage theories, both of which required the

7      jury to evaluate a substantial amount of evidence and expert testimony to reach the damages

8      awarded in this action. Oracle's lost profits theory required the jury to determine the lost profits, if

9      any, of a multi-billion dollar company that has a continuously growing business. Similarly,

10      Oracle's hypothetical license damages theory required the jury to determine the amount Oracle

11      would have charged for Rimini, its competitor in the software service market, to license its

12      copyrighted software when presented with evidence that Oracle does not license its software to

13      such competitors. The difficulty for the jury in determining damages in this action supports

14      Oracle's claim that monetary damages alone are insufficient to fairly and fully compensate it for

15      defendants' conduct. Finally, one of the most fundamental rights the holder of a copyright has is

16      the right to exclude others, and this right has routinely been held difficult to compensate solely

17      through monetary compensation. *See eBay*, 547 U.S. at 395 (Roberts, C.J. concurring) (identifying

18      and explaining the difficulty of protecting a right to exclude through monetary remedies alone).

19      Based on all the above, the court finds that this factor weighs in favor of an injunction.

20              **4.  Balance of Hardships**

21           A court must weigh and balance the competing effect that granting or withholding an

22      injunction would have on each party. *See Williams v. Bridgeport Music, Inc.*, 2015 U.S. Dist.

23      LEXIS 97262, at *128 (C.D. Cal. 2015). The court has reviewed the documents and pleadings on

24      file in this matter and finds that the balance of hardships weighs in favor of an injunction.

25      Generally, the balance of hardships tips in favor of a holder of a copyright seeking to protect its

26      copyrighted works, especially when the party to be enjoined does not have a separate legitimate

business purpose for continuation of the infringing acts. *Grokster*, 518 F. Supp. 2d at 1220. This case is no different. First, Rimini does not have a separate legitimate business purpose for continuation of the infringing acts. Second, there is no evidence that Rimini would be harmed by an injunction that enjoins and restrains future copyright infringement or using the materials gained from its infringement because Rimini has already represented to the court that is has changed its business model and support services away from the infringing model in response to the court's orders on summary judgment. Finally, because Oracle seeks to enjoin only acts that have already been determined to be unlawful, the balance of hardships weighs in Oracle's favor.

### 5. Public Interest

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the [copyright holder's] rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863.

Here, having reviewed all the documents and pleadings on file in this matter, the court finds that an injunction against future copyright infringement and violations of the computer access statutes are in the public interest. *See Apple Comput. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."). Further, an injunction against future infringement would not harm the public interest of access to competitive services because Rimini has repeatedly represented to the court that its current business model is not based on its prior infringing conduct. Taking defendants' statements as true, then Rimini's ability to compete against Oracle in the software support service market would not be lost with an injunction, and thus, the public would still have access to competition in that market. Finally, issuing an injunction in this action "ultimately serves the purpose of enriching the general public through access to creative works" by giving Oracle an incentive to continue to develop software for public use. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). Therefore, the

court finds that the relevant *eBay* factors favor issuance of a permanent injunction in this action, and the court shall grant Oracle's motion accordingly.

### C.  Disposition of Infringing Articles

In addition to a permanent injunction, Oracle seeks an order pursuant to the impoundment provisions of the Copyright Act either requiring defendants to turn over all infringing copies of Oracle's copyrighted works to a neutral third party to be approved by the court or destroying all infringing copies outright, thereby preventing defendants from continuing to leverage the benefits of its infringing actions in its current business model. *See* ECF No. 900.

The Copyright Act provides that, "[a]s part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights." 17 U.S.C. § 503(b). A disposition order is "an equitable remedy issued under the broad powers vested in a trial judge under 17 U.S.C. § 503(b)." *Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992). However, such seizure and impoundment orders are "extraordinary relief" solely within the discretion of the district court. *See Williams*, 2015 U.S. Dist. LEXIS 97262, at *131. Although the Ninth Circuit has not identified appropriate factors to consider in determining whether to issue impoundment, several courts have applied the same factors related to issuance of a permanent injunction. *See, e.g., Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011); *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007) (affirming a district court's order of impoundment upon consideration of the traditional injunction factors).

With respect to Oracle's proposed disposition order, the court finds that Oracle is not entitled to a separate order impounding Rimini's computers and media. Generally, disposition orders should be granted only where other legal remedies and compensatory damages do not provide adequate relief. Here, however, Oracle has received monetary compensation for Rimini's infringement, and the court has found that a permanent injunction should be issued against defendants against future conduct. These remedies are sufficient to protect and compensate Oracle.

Further, the requested outcome of Oracle's disposition remedy - preclusion of Rimini from using the infringing works - is achieved the same with a permanent injunction as it would be with a disposition order. Thus, having already found that Oracle is entitled to a permanent injunction, the court shall deny Oracle's request for a separate disposition order under Section 503(b).

### III.   Motion for Prejudgment Interest (ECF No. 910)

Oracle also seeks an award of prejudgment interest on the jury verdict. Prejudgment interest is "statutorily prescribed interest accrued either from the date of the loss or from the date when the complaint was filed up to the date the final judgment is entered. . . . Depending on the statute, it may or may not be an element of damages." *Prejudgment interest, Black's Law Dictionary* (10th ed. 2014). The purpose behind prejudgment interest is "to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Whether to award prejudgment interest under an applicable statute is in "the district court's sound discretion." *Id*.

Initially, Oracle seeks prejudgment interest under the Copyright Act on the jury's award of $35.6 million in damages against defendant Rimini for copyright infringement. *See* ECF No. 910. An award of prejudgment interest is an available statutory remedy under the Copyright Act. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004). In the Ninth Circuit, the starting point for federal prejudgment interest is the post-judgment rate established by 28 U.S.C. § 1961, which is the weekly average of the one-year constant maturity Treasury yield. *See Price v. Stevedoring Servs. of Am., Inc.,* 697 F.3d 820, 836-37 (9th Cir. 2012) (en banc), *see also Williams*, 2015 U.S. Dist. LEXIS 97262, at * 144.

In its motion, Oracle seeks prejudgment interest at the higher Prime rate rather than the Treasury rate, contending that the Prime rate is sufficient to cover inflation over the lengthy infringement and litigation period. *See* ECF No. 910. Further, Oracle argues that the hypothetical license measure of damages and the equities considered in a copyright case - compensation to the

///

1   plaintiff, deterring infringers, and preventing unjust enrichment of the defendant - weigh strongly

2   in favor of a market-based rate higher than the Section 1961 Treasury rate. The court disagrees.

3          "[U]nless the district court concludes that the equities demand a different rate," an award of

4   prejudgment interest in a copyright infringement case "should be based on the fifty-two week

5   Treasury bill rate." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1552-53

6   (9th Cir. 1989). Further, the Ninth Circuit has repeatedly held that the Section 1961 rate is the

7   appropriate rate of prejudgment interest in an action for copyright infringement. *Price,* 697 F.3d at

8   836; *Williams,* 2015 U.S. Dist. LEXIS 97262, at * 144. Here, the court finds that there is no basis

9   to deviate from the standard Treasury rate to the Prime rate in this action. That being said,

10  however, the court finds that there is good cause to set the prejudgment interest rate at the Treasury

11  rate on the date infringement began, rather than at the time of judgment. The court makes this

12  finding because of the nature of the jury's award of hypothetical license damages. As the jury

13  awarded damages to Oracle in an amount it would have received from Rimini for licensing

14  Oracle's software at the time it began infringing Oracle's copyrights in late 2006, the court finds

15  that this is the relevant time period for prejudgment interest. After this date, when Rimini began

16  infringing Oracle's copyrights, Oracle lost out on the licensing fees it would have received, absent

17  infringement. It is not equitable in the court's view to allow defendants to reap a windfall by the

18  lower interest rates that are now available simply because they engaged in discovery delays and

19  other litigation tactics (addressed more thoroughly in Oracle's motion for attorneys' fees) that kept

20  this action in litigation for several years. Therefore, the court shall grant Oracle's motion and set

21  the appropriate rate for prejudgment interest under the Copyright Act as the weekly average one-

22  year constant maturity Treasury yield at the start of the infringement.

23         Second, Oracle also seeks prejudgment interest under the CDAFA and the NCCL on the

24  jury's award of $14.4 million in damages for violation of the state computer access statutes. Under

25  California law, "a person who is entitled to recover damages certain, or capable of being made

26  certain by calculation, and the right to recover which is vested in the person upon a particular day,

is entitled to also recover interest from that day." CAL. CIV. CODE § 3287(a). However, under California law, only damages that are "certain, or capable of being made certain by calculation" prior to litigation may accrue prejudgment interest. *Duale v. Mercedez-Benz USA, LLC*, 148 Cal. App. 4th 718, 728-29 (2007). The "test for recovery of prejudgment interest under § 3287(a) is whether [the] defendant actually knows the amount owed or from reasonably available information could the defendant have computed that amount." *Id*. Further, "where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence" Section 3287 "does not authorize prejudgment interest." *Id*. Here, the amount of damages for defendants' conduct under the CDAFA was not known or easily calculable prior to trial and required the jury to evaluate and weigh conflicting evidence. Therefore, the court finds that Oracle is not entitled to prejudgment interest under the CDAFA.

In contrast, in Nevada, prejudgment interest is a matter of statutory right. *Torres v. Goodyear Tire & Rubber Co.*, 317 P.3d 828, 830 (Nev. 2014) ("NRS 17.130 . . . provides a statutory right for interest on judgments."). Nevada law establishes a prejudgment interest rate of 2% plus "the prime rate at the largest bank in Nevada ascertained by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment." NRS §17.130. Such interest is assessed as simple interest on an annual basis. *Torres*, 317 P.3d at 830-31. Further, under Nevada law, interest is drawn "from the time of service of the summons." *Sobel v. Hertz*, 291 F.R.D. 525, 544 (D. Nev. 2013). Here, the summons in this action was served on January 27, 2010. Thus, the court finds that Oracle is entitled to prejudgment interest at the Nevada statutory rate for the $14.4 million in damages for violation of the NCCL starting January 27, 2010, through the date of judgment.

///

///

///

///

12

1

**IV.     Motion for Attorneys' Fees (ECF No. 917)**

2        Oracle's last motion is its present motion for attorneys' fees and costs.[2] ECF No. 917. In its

3 request, Oracle is seeking a total of $35,627,807.99 in attorneys' fees; $4,950,560.70 in taxable

4 costs; and $17,636,755.68 in non-taxable costs for a total attorneys' fees and costs award of

5 $58,215,124.37. The first issue before the court is whether to award attorneys' fees in this action.

6 Then, if the court finds that such a fee award is appropriate, the court must determine the

7 appropriate fees award.

8        **A.  Determination of Whether to Award Fees**

9        Under Section 505 of the Copyright Act, the court has discretion to award a prevailing party

10 costs and attorneys' fees. *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its

11 discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also

12 award a reasonable attorney's fee to the prevailing part as part of the costs."). In order to determine

13 whether an award of attorneys' fees and non-taxable costs are warranted under the Copyright Act,

14 courts examine five factors: (1) the degree of success of the prevailing party; (2) the objective

15 reasonableness of the losing party's arguments during litigation; (3) the need to make the

16 prevailing party whole; (4) deterrence; and (5) the purposes of the Copyright Act. *See Kirtsaeng*,

17 136 S. Ct. at 1986; *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987); *Jackson*

18 *v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) (stating the five factor test for attorneys' fees under the

19 Copyright Act). Further, the Copyright Act does not condition an award of fees on a finding of

20 willful infringement. *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987) ("[A] showing of bad

21

22 ─────────────────

23        [2] Oracle's motion is accompanied by a breakdown of time spent by each contracted law firm, including
the individuals who provided the work, what was being worked on, and the amount of time spent on that item
24 as outlined in four separate declarations from Attorney Thomas S. Hixson, partner with the law firm Morgan,
Lewis and Bockius LLP (ECF No. 918, Hixson Decl.); Attorney Kieran P. Ringgenberg, partner with Boies,
Schiller & Flexner LLP (ECF No. 919, Ringgenberg Decl.); James C. Maroulis, Managing Counsel at Oracle
25 (ECF No. 920, Maroulis Decl.); and Richard J. Pocker, also a partner with Boies, Schiller & Flexner LLP (ECF
No. 921, Pocker Decl.). Oracle also filed a supplement to its motion for attorneys' fees and costs updating its
26 request for fees to include time spent at trial and on post-trial motions. ECF No. 996.

faith or frivolity is not a requirement of a grant of fees."). Rather, a court must evaluate each of the relevant factors and make a decision on "a more particularized, case-by-case assessment." *Kirtsaeng,* 136 S. Ct. at 1986. Each factor to determine whether an award of attorneys' fees is warranted is addressed below.

### 1. Degree of Success

Oracle argues that the degree of success it achieved on its claims warrants an award of attorneys' fees in this case. The court agrees. Oracle successfully defeated all of defendants' counterclaims, including counterclaims for copyright misuses, early in this litigation. Then, at trial, Oracle successfully prevailed on its claim for copyright infringement as the jury found that Rimini infringed every one of the 93 separate copyright registrations at issue. And important to the court is the fact that the trial was a copyright infringement case first and foremost, regardless of all other claims pled. Oracle also prevailed on its two separate state computer access claims against both defendants. As a result of its overall success, Oracle won a $50 million verdict against defendants - including $35,600,000 for copyright infringement and $14,427,000 for the state computer access claims - which was five times the damages number presented at trial by defendants' damages expert. There is no question to the court that a $50 million verdict is a substantial success regardless of what could have been issued in this case. Therefore, this factor weighs in favor of awarding attorneys' fees.

### 2. Objective Reasonableness

The second factor is the objective reasonableness of the losing party's position during the litigation. *Kirtsaeng,* 136 S. Ct. at 1983. "No matter which side wins a case, the court must assess whether the other side's position was (un)reasonable." *Id*. at 1988. However, the objective reasonableness of a losing party's position "can be only an important factor in assessing fee applications - not the controlling one." *Id*. at 1988. "That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones)." *Id*. "For example, a court may order

fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses." *Id*. at 1988-89 (citing *Viva Video, Inc. v. Cabrera*, 9 Fed. Appx. 77, 80 (2nd Cir. 2001)). "Or a court may do so to deter repeated instances of copyright infringement or over aggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Id*. at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593-95 (6th Cir. 2008) (awarding fees against a copyright holder who filed hundreds of suits on an overbroad legal theory, including in a subset of cases in which it was objectively reasonable)).

Here, the court finds that defendants' litigation position that it did not engage in copyright infringement was not an objectively reasonable position. Rather, it was based on a clear misreading of Oracle's software licensing agreements and a conscious disregard for the manner that Rimini used and housed Oracle's copyrighted software programs on its own servers. In fact, Rimini's position was so unreasonable that the court was able, at summary judgment, to determine that Rimini engaged in massive copyright infringement of Oracle's copyrighted works, thereby leaving only a few issues for trial. However, throughout this litigation, including right up until trial, Rimini contended that no copyright infringement ever occurred because it did not use the copyrighted software in a proscribed manner. Based on defendants' conduct, the court finds that their position was not reasonable.

Further, even if defendants' litigation position was reasonable, the court finds that attorneys' fees are still warranted in this action because of Rimini's repeated instances of copyright infringement and its significant litigation misconduct in this action. *See Id*. It is undisputed that defendants ignored their preservation obligations and destroyed evidence prior to trial, including a key computer directory containing Oracle software that Rimini used for multiple customers in violation of customer licenses. In fact, Magistrate Judge Leen found that defendants intentionally deleted the software library well after they were on notice of potential litigation and were well aware that the software library was potentially relevant evidence. As a result of their litigation misconduct, defendants were forced to acknowledge the spoliation and destruction of evidence at

trial, and the court even gave an adverse inference jury instruction about the issue. Therefore, taking all of the above into consideration, the court finds that this factor weighs in Oracle's favor.

### 3.  The Need to make Oracle Whole

The third factor in determining whether to award attorneys' fees under the Copyright Act is the need to make the prevailing party whole. *See McCulloch*, 823 F.2d at 323 ("[S]ection 505 is intended in part to encourage the assertion of colorable copyright claims . . . and to make the plaintiffs whole.").

In its motion, Oracle argues that an award of attorneys' fees is necessary to compensate it for its huge outlay of fees and costs necessarily incurred in enforcing its copyrights. The court agrees. Oracle has spent decades developing its copyrighted software only to have the defendants take that hard work and use it to their benefit at Oracle's expense. In order to prosecute this action, Oracle was compelled to spend a significant amount of resources in legal fees and costs over what was eventually awarded in damages just to stop defendants' unlawful conduct. Without a fee award, the court finds that Oracle's investment in its intellectual property and its incentive to create future software would not be appropriately protected or compensated.

### 4.  Deterrence

The fourth factor in a court's attorneys' fee analysis is the need to deter defendants and others from engaging in future infringement. *McCulloch*, 823 F.2d at 323. Here, the court finds that an award of attorneys' fees is appropriate to deter defendant Rimini from its pattern of infringing Oracle's copyrights, which started when the business began and continued until the middle of this litigation. Further, an award of fees is necessary to deter other third party service providers from engaging in similar infringing conduct in order to compete with Oracle for software support services.

### 5.  Purpose of the Copyright Act

The last factor in a court's analysis of whether to an award attorneys' fees is whether an award will further the purposes of the Copyright Act. *See Mattel, Inc. v. MGA Entm't, Inc.*, 705

16

F.3d 1108, 1111 (9th Cir. 2012) ("The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act.").

The court finds that awarding attorneys' fees in this action furthers the purposes of the Copyright Act as it rewards owners of intellectual property, like Oracle, for pursuing their rights under the act and "encouraging and rewarding authors' creations." *Kirtsaeng,* 136 S. Ct. at 1986. Further, as discussed above, an award of attorneys' fees would deter future infringement. As such, the court finds that a fee award is appropriate in this action. *See id.* ("[F]ee awards under § 505 should encourage the type of lawsuits that promote [the purposes of the Copyright Act]."). Accordingly, the court shall grant Oracle's motion and issue an award of attorneys' fees under the Copyright Act.[3]

**B. Amount of Fees**

If a district court determines that an award of attorneys' fees is warranted under the Copyright Act (or other statutory provision), the court must determine the amount of reasonable fees to award the prevailing party. In its motion, Oracle argues that the court should award $35,627,807.99 in attorneys' fees to compensate it for the fees it incurred to prosecute this litigation. In determining the reasonableness of an award of attorneys' fees, a district court considers several non-exclusive factors, including: (1) the reputation and skill of counsel; (2) the financial terms of the client fee arrangement;[4] (3) the nature and extent of work performed and

///

---

[3] An award of attorneys' fees is also available under both the CDAFA and the NCCL. *See* CAL. PENAL CODE § 502(e)(2) ("In any action brought pursuant to this subdivision the court may award reasonable attorney's fees."); NEV. REV. STAT. § 205.4765 ("Any victim of a crime described in NRS 205.473 to 205.513, inclusive, may bring a civil action to recover . . . [c]osts and reasonable attorney's fees incurred in bringing the civil action."). Insofar as the court has found that Oracle is entitled to attorneys' fees under the Copyright Act, the court also finds that attorneys' fees are warranted under the CDAFA and the NCCL, both of which allow attorneys' fees under factors less stringent than the Copyright Act. Further, in contrast to an award of fees under the Copyright Act, for which defendant Ravin was not found liable, the court finds that an award of fees under both the CDAFA and the NCCL may be levied against both defendants severally and equally.

[4] Here it is undisputed that Oracle's fee arrangements with counsel were hourly rate contracts for work performed in this action and were not contingency fee agreements.

17

results obtained; and (4) awards in similar cases. *See* LR 54-16(b)(3); *Resurrection Bay Conservation All. v. City of Seward Alaska*, 640 F. 3d 1087, 1095 (9th Cir. 2011).

Initially, in determining the amount of fees to award in an action, the court must look to the reasonableness of the rates charged by counsel. *Id*. Generally, courts determine a reasonable rate for attorneys' fees based upon "the rates prevailing in that district for similar services by lawyers of reasonably comparable skill, experience and reputation," irrespective of practice area. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 445 (9th Cir. 2010).  However, "the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 224 F.3d 1145, 1149 n.4 (9th Cir. 2001). Those additional non-exclusive factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).

Here, the court finds that the appropriate rates for counsel in this copyright infringement action are the actual rates charged by counsel. "Unless counsel is working outside his or her normal area of practice, evidence that a billing rate was the usual rate the attorney charges for his or her services is evidence that the rate is comparable to the market rate." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 WL 1746484, at *5 (C.D. Cal. Mar. 25, 2015). Further, in an action under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505. *See, e.g., Kourtis v. Cameron*, 358 Fed. App'x. 863, 868 (9th Cir. 2009). This is because in such complex litigation "the parties can reasonably be expected to retain nationally respected law firms and nationally respected attorneys to pursue their

interest in the litigation," which will result in "higher lodestars than normally seen in this district." *Pacquiao v. Mayweather*, 2012 WL 4092684, at *2 (D. Nev. 2012) (finding actual rates paid to California attorneys were "reasonable" and awarding them). As such, the court finds that the actual rates Oracle paid its attorneys - as established in the several declarations attached in support of Oracle's motion - are reasonable rates for this action.

Additionally, the reasonableness of the rates charged in this action is confirmed by both parties' decisions to hire national law firms. Their decisions to hire national firms reflects that the market for legal services for copyright infringement is a national market and that both parties believed only nationally-renowned firms that charged above market rates for this district could handle their cases. Therefore, the court finds that the actual rates charged by counsel in this action are reasonable rates.

Now, the issue turns to whether the amount of time billed in this case was reasonable. "[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). In its motion, Oracle argues that its billing records reflect a reasonable amount of time spent on this complex litigation, and that it has made conservative adjustments to the hours actually spent by counsel prior to submitting the records.

The court has reviewed Oracle's billing records and finds that Oracle has proffered sufficient evidence for the court to find that most of the time billed by counsel was reasonable for such complex litigation. However, as identified in detail by defendants' objections to evidence submitted in support of Oracle's motion,[5] Oracle's billing records do include some inconsistencies

_____

[5] Along with its opposition, defendants filed two separate objections to evidence submitted in support of Oracle's motion for attorneys' fees. ECF Nos. 1005, 1031. Unless and except as specified in the court's order, the court finds that the evidentiary objections are without merit or go to the weight the court should give the evidence in determining an award of attorneys' fees, rather than the admissibility of the evidence before the court.

that violate regular billing practices and guidelines, such as improper block billing entries, though

the court does not find Oracle's billing records nearly as "replete" with errors as defendants

contend. *See, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("[B]lock

billing makes it more difficult to determine how much time was spent on particular activities.").

Rather than identify every instance of a mathematical error, block billing, or missing invoice, the

court finds that a blanket reduction of the requested fees in the amount of 20% is appropriate and

consistent with other attorneys' fee awards under similar situations. *See, e.g., Huhmann v. FedEx

Corp.*, 2015 WL 6127198, at *8 (S.D. Cal. Oct. 16, 2015) (30% reduction for improper billing

entries); *eMove, Inc. v. SMD Software, Inc.*, 2012 WL 4856276, at *7 (D. Ariz. Oct. 11, 2012)

(20% reduction for improper billing entries); *Gunderson v. Mauna Kea Prop., Inc.*, 2011 WL

9754085, at *10 (D. Haw. May 9, 2011) (20% reduction for improper billing entries). Therefore,

reducing Oracle's request for fees by 20%, Oracle is entitled to recover $28,502,246.40 in

attorneys' fees incurred in this action.[6]

**C. Costs**

As part of its motion for attorneys' fees, Oracle seeks recovery of both taxable and non-

taxable costs. *See* ECF No. 917. First, Oracle seeks to recover $4,950,566.70 in taxable costs,

which includes deposition costs, document recovery and storage, and electronic discovery costs.

Under Rule 54(d) of the Federal Rules of Civil Procedure, unless a federal statute or court order

provides otherwise, costs should be awarded to the prevailing party. FED. R. CIV. P. 54(d)(1); *see

also Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000).

---

[6] Defendants argue that any fee award must be further reduced because Oracle did not achieve a result greater than their pre-trial Rule 68 offers. *See Lantz v. Kreider*, 2010 WL 2609080, at *5 (D. Nev. 2010) ("The proper course of action with respect to the unaccepted Rule 68 offer of judgment is to preclude plaintiff's recovery of that portion of fees and costs related to work on the . . . claim after the date of the offer."). The court disagrees. During the course of this action, Rimini offered Oracle three separate Rule 68 Offers of Judgment. Defendants contend that the second Rule 68 offer for $60 million and the third offer for $100 million are both more favorable than the roughly $52 million obtained at trial. However, the court finds that these offers, which did not include any injunctive relief and proposed payment over several years without interest, were not "more favorable" than the ultimate judgment Oracle obtained in this action.

20

The court has reviewed Oracle's request for taxable costs and finds that they are recoverable and reasonable. *See* 28 U.S.C. § 1920. Therefore, the court shall award Oracle $4,950,566.70 in taxable costs.

Oracle also seeks to recover $17,636,755.68 in non-taxable costs. Section 505 of the Copyright Act permits a successful plaintiff to recover all costs incurred in litigation, not just taxable costs authorized by Rule 54(d) and 28 U.S.C. § 1920. *See Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005). Here, Oracle's request for non-taxable costs includes litigation costs for expert witness fees, additional e-discovery fees not included under 28 U.S.C. § 1920, contract attorney services, jury consulting, and other non-taxable costs. As with Oracle's request for attorneys' fees, defendants object to several of the billing records and invoices submitted in support of Oracle's request.

The court has reviewed the documents and pleadings on file in this matter and finds that Oracle is entitled to an award of non-taxable costs in this action for the same reasons the court is awarding attorneys' fees. However, similar to the award of fees, the court finds that Oracle is entitled to only a reduced amount of fees for various billing issues, including lost or non-validated invoices, vague billing descriptions and vague work entries. Because of these limited errors, the court finds that an overall reduction of 25% for almost all non-taxable costs is warranted.

As to defendants' specific challenge regarding the expert witness fees of Oracle's damages expert Elizabeth Dean, the court finds that a reduction of 50% of her expert fees and costs is appropriate. The court makes this additional reduction because, prior to trial, Oracle withdrew Dean's testimony as to one of its two damages theories in response to a motion to exclude by defendants. Thus, at trial, Oracle only presented half of Dean's prepared testimony. The court finds that it would not be fair or equitable to require defendants to pay for expert witness testimony that was withdrawn in response to their challenge, especially in light of the fact that by that time in the litigation, defendants had already deposed Dean, rebutted her report with an expert of their own, and filed a motion to exclude her report. Defendants should not bear the costs of creating the

withdrawn portions of Dean's expert report. Therefore, reducing Oracle's request for costs by 50% for the expert witness costs of Elizabeth Dean ($1,812,066.02 to $906,033.01) and 25% for the rest of Oracle's requested non-taxable costs ($15,824,689.66 to $11,868,517.25), the court finds that Oracle is entitled to recover $12,774,550.26 in additional non-taxable costs for this action. Accordingly, the court shall grant Oracle's motion for attorneys' fees and costs and award Oracle fees and costs in the amount of $46,227,363.36.

IT IS THEREFORE ORDERED that plaintiffs' motion for a preliminary injunction (ECF No. 900) is GRANTED in-part and DENIED in-part in accordance with this order. Plaintiffs shall have ten (10) days after entry of this order to prepare an appropriate permanent injunction that complies with the court's order and submit the same for signature.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of plaintiffs Oracle America, Inc. and Oracle International Corporation and against defendants Rimini Street, Inc. and Seth Ravin on plaintiffs' ninth cause of action for unfair competition in violation of California's Unfair Competition Law.

IT IS FURTHER ORDERED that plaintiffs' motion for prejudgment interest (ECF No. 910) is GRANTED in-part and DENIED in-part in accordance with this order. Plaintiffs shall have ten (10) days after entry of this order to prepare an appropriate order setting prejudgment interest that complies with the court's order and submit the same for signature.

IT IS FURTHER ORDERED that plaintiffs' motion for attorneys' fees and costs (ECF No. 917) is GRANTED in accordance with this order. The clerk of court shall enter an award of attorneys' fees and costs in favor of plaintiffs Oracle USA, Inc.; Oracle America, Inc.; and Oracle International Corporation and against defendants Rimini Street, Inc. and Seth Ravin in the amount of  $46,227,363.36.

IT IS SO ORDERED.

DATED this 21st day of September, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE