# EXHIBIT B -
# Oracle's [Proposed] Findings of Fact in Support of Permanent Injunction Against Defendants Rimini Street, Inc. and Seth Ravin

| | |
|---|---|
| BOIES, SCHILLER & FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: (702) 382-7300<br>Facsimile: (702) 382-2755<br>rpocker@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>WILLIAM ISAACSON (*pro hac vice*)<br>KAREN DUNN (*pro hac vice*)<br>5301 Wisconsin Ave, NW<br>Washington, DC 20015<br>Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131<br>wisaacson@bsfllp.com<br>kdunn@bsfllp.com<br><br>BOIES, SCHILLER & FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: (510) 874-1000<br>Facsimile: (510) 874-1460<br>sholtzman@bsfllp.com<br><br>Attorneys for Plaintiffs<br>Oracle USA, Inc., Oracle America, Inc., and<br>Oracle International Corp. | MORGAN, LEWIS & BOCKIUS LLP<br>THOMAS S. HIXSON (*pro hac vice*)<br>KRISTEN A. PALUMBO (*pro hac vice*)<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: 415.442.1000<br>Facsimile: 415.442.1001<br>thomas.hixson@morganlewis.com<br>kristen.palumbo@morganlewis.com<br><br>DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>ORACLE CORPORATION<br>500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070<br>Telephone: 650.506.4846<br>Facsimile: 650.506.7114<br>dorian.daley@oracle.com<br>deborah.miller@oracle.com<br>jim.maroulis@oracle.com |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**[PROPOSED] FINDINGS OF FACT IN SUPPORT OF PERMANENT INJUNCTION AGAINST DEFENDANTS RIMINI STREET, INC. AND SETH RAVIN** |

The Court makes the following findings of fact in support of a permanent injunction against Defendants Rimini Street, Inc. and Seth Ravin:

### A. Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

1. On February 15, 2010, Plaintiff Oracle USA, Inc., a Colorado corporation, merged with and into Sun Microsystems, Inc. Sun Microsystems, Inc., the surviving corporation, was then renamed "Oracle America, Inc." ("Oracle America"). Dkt. 528, Undisputed Fact ("UF") 1.

2. Plaintiff Oracle America is a Delaware corporation, with its principal place of business in Redwood City, California. Dkt. 528, UF 2.

3. Oracle America develops and licenses certain intellectual property, including copyrighted enterprise software programs, and provides related services. Dkt. 528, UF 3.

4. Oracle America is the successor in interest to Oracle USA, and through Oracle USA is the successor to PeopleSoft USA, Inc. and a successor in interest to certain PeopleSoft, JD Edwards, and Siebel entities. Hereinafter, Oracle USA, Inc. and Oracle America, Inc. are referred to collectively as "Oracle America." Dkt. 528, UF 4.

5. Plaintiff Oracle International Company ("OIC," and together with Oracle America, "Oracle") is a California corporation, with its principal place of business in Redwood City, California. OIC owns and licenses certain intellectual property, including copyrighted enterprise software programs used around the world. Dkt. 528, UF 5.

6. In December 2004, Oracle acquired PeopleSoft, including the PeopleSoft copyrighted materials in suit related to PeopleSoft Enterprise, JD Edwards Enterprise One and JD Edwards World, for $11.1 billion. Trial Transcript ("Tr.") 957:15-22 (Catz).

7. In January 2006, Oracle acquired Siebel, including the Siebel copyrighted materials in suit, for $6.1 billion. Dkt. 528, UF 39.

8. OIC is the owner or exclusive licensee for each of the copyright registrations-in-suit at issue in this case, and each of those registrations is valid. Dkt. 528, UF 40-41.

9.      Intellectual property rights formerly held by certain PeopleSoft, JD Edwards, and Siebel entities were transferred to OIC as part of the acquisitions of PeopleSoft and Siebel by Oracle.  Dkt. 528, UF 6.

10.     As is typical in the enterprise software industry, Oracle does not sell ownership rights to this software or the related support products Oracle provides to its paying customers.  Dkt. 528, UF 7.

11.     Instead, Oracle's customers purchase licenses that grant them limited rights to use specific Oracle software programs.  Dkt. 528, UF 8.

12.     Separate from the license to the underlying software, Oracle also enters into support contracts with its customers, which entitled them to receive, for an annual maintenance fee, software upgrades and software support, including fixes, patches and updates typically made available for download from Oracle's password-protected websites.  Dkt. 528, UF 9.

13.     Oracle's predecessors also sold both software licenses and support contracts for PeopleSoft, JD Edwards, and Siebel enterprise software.  Dkt. 528, UF 10.

**B.    Defendants Rimini Street And Seth Ravin**

14.     Defendant Rimini Street, Inc. is a company that provides similar software support services to licensees of Oracle's PeopleSoft, JD Edwards and/or Siebel software.  Dkt. 528, UF 11.

15.     Rimini competes directly with Oracle to provide these services.  Dkt. 528, UF 12.

16.     Defendant Seth Ravin is the founder, president and CEO of Rimini, as well as the former President of TomorrowNow, Inc., a subsidiary of SAP AG ("TomorrowNow").  Tr. 240:9:15, 351:2-7 (Ravin).

17.     Rimini launched its operations in September 2005, offering support services for Oracle's Siebel software.  Rimini conducted a pilot launch of its Siebel support in January 2006 and acquired its first Siebel customer in February 2006.  Dkt. 528, UF 13.

18.     Rimini expanded its support offering to Oracle's PeopleSoft products in April 2006 and to Oracle's JD Edwards products in September 2006.  Dkt. 528, UF 14.

19.     Rimini contracted with 364 customers to provide support for PeopleSoft, JD

Edwards, and/or Siebel enterprise software between 2006 and November 2011.  Dkt. 528, UF 15.

20. Each of Rimini's PeopleSoft, JD Edwards, and/or Siebel customers licensed PeopleSoft, JD Edwards and/or Siebel enterprise software from Oracle.  Dkt. 528, UF 16.

### C. Copies of Oracle Software And Support Materials on Rimini's Servers

21. Rimini copied "massive amounts" of Oracle software and support materials, without ever obtaining any license from Oracle.  Tr. 165:12-16 (Davis); 302:3-4 (Ravin).

22. Rimini had "thousands and thousands" of copies of Oracle software on Rimini servers.  Tr. 551:10-18 (Ravin).

23. Rimini created and used full working copies of the PeopleSoft, JD Edwards, and Siebel software as "environments" on Rimini's servers.  Tr. 303:1-5, 320:13-321:2, 758:23-759:4, 760:8-15 (Ravin); 1146:5-17 (Chiu); 1757:14-1758:11 (Whittenbarger).

24. Rimini had at least 478 PeopleSoft, JD Edwards, and Siebel environments on its own computer systems.  Dkt. 528, 19, 24, Exs. B & F (undisputed); Tr. 174:8-20 (Davis).

25. Rimini has at least 216 environments on its servers that contain installed copies of Oracle Database.  Dkt. 528, UF 25.

26. Each environment on Rimini's local systems constitutes a reproduction of one or more of the copyright registrations-in-suit.  Dkt. 528, UF 24.

27. Many of Rimini's fixes for PeopleSoft software involved files that contained modified versions of Oracle's source code.  Dkt. 528, UF 42.

28. All of the copies of and derivative works prepared from Oracle software and support materials that Rimini created and distributed to provide support were infringing.  PTX 1458 (Dkt. 401), 5328 (Dkt. 5328) (stipulations); Jury Instruction 24, Dkt. 880 (final jury instructions); Dkt. 896 (verdict).

### D. Rimini's Copying of PeopleSoft Software And Support Materials

29. Rimini's PeopleSoft copies were unauthorized.  Dkt. 474 (Order re Oracle's First Mot. for Part. Summ. J.) at 27-28; Dkt. 896 (verdict).

30. The City of Flint and Pittsburgh Public Schools licenses are representative of "the PeopleSoft license agreements for all of Rimini's PeopleSoft customers."  Dkt. 599 at 1.

31. The PeopleSoft license expressly limits "copying the licensed software to only the [customer's] facilities" and "solely" for the customer's "internal data processing." Dkt. 474 at 11-13; 17-18.

32. Both licenses forbid Rimini to have PeopleSoft software or documentation on its systems. PTX 698 at 5, § 16 (defined term "Software" includes documentation); *id.* at 1 § 1.1 ("Software" must be at customer's facilities); PTX 699 at 6 § 15 (defined term "Licensed Rights" includes both software and documentation); *id.* at 1 § 2.1(d) (customer may not "[d]istribute . . . to any third party any portion of the Licenses Rights").

### E. **Rimini's Copying of Oracle Database**

33. The Court granted summary judgment to Oracle on its copyright infringement claim as to Oracle Database. Dkt 476 at 15-16.

### F. **Copying of Siebel and JD Edwards Software And Support Materials**

34. Rimini's Siebel and JD Edwards copies were unauthorized. Dkt. 896 (verdict).

35. This Court already found that the JD Edwards license for Giant Cement (PTX 704) and the Siebel license for Novell (PTX 705) permit copies for "archival" and "backup" purposes only. Dkt. 474 at 22, 24.

36. Mr. Allison's testimony established that those licenses were representative of the JD Edwards and Siebel licenses generally, as both companies "used form license agreements." Tr. 1117:25-1118:5, 1118:15-19 (Allison).

37. Licenses gave the customer the right "[t]o reproduce, exactly as provided by [Oracle], a reasonable number of copies of the [software] solely for archive or emergency back-up purposes or disaster recovery and related testing." Dkt. 474 at 23 (quoting PTX 705, § 2.1(iv)).

38. That provision can only be satisfied if Rimini's copies are for "us[e] exclusively for archival and back-up purposes, and related testing, as directly contemplated by Section 2.1(iv)." Dkt. 474 at 24 n.20.

39. Copies only fit that definition when they are created as "inherently an unmodified copy of the software for use in the event that the production copy of the software (the copy used

1 on a customer's systems) is corrupted or lost." Dkt. 474 at 11 (emphasis supplied). In "complete
2 contrast" to that permitted backup copy, a software copy that is "modifiable (or already
3 modified)" is outside the scope of the license. *Id.*

4     40. Rimini "used all of the software," including all its "Siebel software" and "JDE
5 software" in its "work for customers." Tr. 303:1-5 (Ravin); Tr. 364:3-8 (Ravin) (all
6 environments on Rimini's systems were "used in order to support customers" and for
7 "troubleshooting").

8     41. Rimini's Siebel environments were "designed" at the outset for, among other
9 uses, "testing and development." Tr. 318:19-22 (Ravin); Tr. 1146:5-25 (Chiu) (Siebel copies
10 "used to provide support"); Tr. 758:23-759:4 (Ravin) (same); Tr. 1754:8-15 (Whittenbarger)
11 (Siebel copies used for training); PTX 1461 (Chiu discussing customer Caterpillar (Siebel) "we
12 reclarified how our support model is based on building up an in-house lab environment with a
13 vanilla [not customized] fix-master [environment to test fixes and patches] and a customized
14 replica of their dev/test environment would enable us to maximize our responsiveness to them").

15     42. Ravin likewise confirmed that JD Edwards environments were for "testing and
16 development" and for "diagnostics and support." Tr. 321:1-6, 760:8-15 (Ravin).

17     43. Ravin explained Rimini's troubleshooting process: "you're taking the software,
18 you're playing with it to see if you can figure out what's going wrong, what the customer had
19 called in and reported." Tr. 364:24-365:1 (Ravin).

20     44. Rimini's copies of Oracle software were "general development test
21 environments" or "generic environment[s]" otherwise used for testing, development, support,
22 and troubleshooting. Tr. 320:8-18, Tr. 367:2-8 (Ravin); Tr. 367:18-23 (Ravin) (Rimini would
23 use Customer A's software to troubleshoot for Customer B); Tr. 1146:5-25 (Chiu) ("explaining
24 that Rimini's internal Siebel environments were "used to provide support for those clients that
25 provided us their software"); Tr. 3186:13-3187:4 (Slepko) (Siebel local environments were used
26 to assist clients with their problems); Tr. 1754:8-15 (Whittenbarger) (Siebel environment used
27 for internal training); Tr. 1757:14-1758:5 (Whittenbarger) (Rimini "set up environments to
28 troubleshoot issues"); Tr. 2043:22-2044:21 (Blackmarr) (use of Customer A's software to

1  support Customer B); PTX 181 at 2 (June 2009 installation of JD Edwards was "to be used for
2  any configuration, testing and development required"); PTX 186 at 2 (Chiu explaining "I am
3  planning a JDE install for Medtronic's Support system"); PTX 190 (JD Edwards environments
4  associated with specific customers continued to be created through February 2010); PTX 33
5  ("Rimini would build out a[] [JD Edwards] environment to support them [customer]"); PTX 310
6  (Siebel environments used for troubleshooting); PTX 744 (same).

7  45.   An environment used for testing, development, or troubleshooting is not a backup
8  because you "don't touch" a backup.  Tr. 180:9-22, 182:16-183:4 (Davis).

9  46.   An "archive" or "backup":  a "copy . . . put on a physically different place," on a
10 "separate disk" or otherwise "put aside."  Tr. 180:5-181:17, 182:16-24 (Davis); *see also* Tr.
11 362:21-363:23 (Ravin) (discussing archives shipped to customers on DVDs or USB drives and
12 backups on tape drives).

13 47.   Backups are stored on tapes or other storage, unmodified.  Tr. 730:4-11 (Ravin);
14 Tr. 180:5-181:17, 182:16-24 (Davis).

15 48.   Copies used for troubleshooting, support, testing, or development are not backups.
16 Tr. 180:5-181:17, 182:16-24 (Davis).

17 **G.   RAM Copies**

18 49.   Rimini created additional in-memory copies, called RAM copies, every time it
19 started up or ran Oracle software.  Tr. 184:3-185:4 (Davis).

20 **H.   Cross-use And Distribution Of Oracle Software And Support Material**

21 50.   Rimini's unlicensed copying included widespread cross-use of Oracle
22 software.  Tr. 799:6-16 (Ravin).

23 51.   After previously denying cross-use, Ravin admitted at trial cross-use occurred "all
24 the time."  Tr. 552:1-13 (Ravin).

25 **Cross-use to Create Environments: Cloning**

26 52.   Rimini's cross-use included unlicensed "cloning" of Oracle software (copying an
27 environment created ostensibly for one customer for another customer).  Tr. 371:5-9, 374:12-15,
28 777:22-24 (Ravin); 1365:23-1366:14, 1381:188 (Williams); 192:22-193:7, 196:25-197:24,

198:25-199:11 (Davis); PTX 439; PTX 1491A; PTX 3507 at 31.

**Cross-use of Environments:  Developing Fixes and Updates**

53. On many occasions, Rimini used one customer's environment to support other customers.  Tr. 2232:2-2233:23 (Benge).

54. Rimini used unlicensed "development" environments to create updates and fixes for multiple customers.  Tr. 320:2-7 (Ravin); 202:18-203:3, 204:2-205:10 (Davis); PTX 5429.

55. Rimini "reused [] all the time" by taking an update or fix that Rimini created for one customer and using it for and distributing it to another customer, including using Oracle's copyrighted code, changing it and distributing it to multiple Rimini customers.  Tr. 552:1-552:5, 809:19-810:13 (Ravin); 2232:2-2233:23 (Benge).

**Cross-use of Environments: Troubleshooting**

56. On many occasions, Rimini used one customer's software to troubleshoot issues other customers were having.  Tr. 367:18-23 (Ravin); 2043:22-2044:21 (Blackmarr).

**Cross-use of Support Material**

57. Rimini used the code in one customer environment to write a detailed design document to be used with other clients.  Tr. 1656:20-1661:4 (Grigsby).

58. Rimini also used Oracle copyrighted support material as part of a sales presentation to customers.  Tr. 1662:16-1668:7 (Grigsby).

59. Rimini stored Oracle support materials in non-client-specific folders.  Tr. 1155:18-21 (Hicks).

60. Rimini used support documentation downloaded on behalf of one customer to rephrase the information and distribute it to other Rimini clients whose Oracle support was expired.  PTX 236; Tr. 188:8-189:15 (Davis).  Rimini created "extracts" that Rimini gave its customers so that unlicensed copies that were shared amongst customers.  Rimini told customers that it was creating separate extracts for each customer, but Rimini was using one customer's log-in, starting with a faux customer, Leads Customers Growth, to copy all materials from Oracle's websites and then copying disks that Rimini distributed to multiple customers.  Tr. 333:9-334:3, 335:12-16 (Ravin); 1160:15-1161:10 (Hicks); PTX 7.

[PROPOSED] FINDINGS OF FACT IN SUPPORT OF PERMANENT INJUNCTION

**I.     Software Library**

61.    Rimini's "software library" was massive.  PTX 10; Tr. 166:9-20 (Davis); 242:1-3, 242:14-20 (Ravin).

62.    Ravin approved copying to that library (PTX 4 at 3-4; PTX 5), which included software and documentation for all of the products at issues:  PeopleSoft, JD Edwards, Siebel, and Database.  Tr. 167:5-10 (Davis); Tr. 1756:6-1757:8 (Whittenbarger); PTX 8; PTX 9; PTX 10; PTX 223.

63.    Rimini downloaded PeopleSoft and JD Edwards materials into the library before Rimini even had any clients licensed for those products.  Tr. 289:5-10 (Ravin); PTX 4; PTX 5; PTX 6.

64.    Rimini did not keep track of how that library was used or audit the library, and Rimini deleted that library shortly before Oracle filed this lawsuit.  Tr. 170:24-171:10 (Davis); Tr. 421:18-20, 422:21-423:4 (Ravin).

**J.     Automated Downloading**

65.    Rimini also used customer log-ins to download massive amounts of materials, for multiple clients, including materials customers were not authorized to download.  Tr. 1751:4-16 (Whittenbarger); PTX 7.

66.     Oracle's Terms of Use prohibited access using automated tools since at latest February 19, 2007.  PTX 19; Tr. 864:9-865:5, 867:16-869:15 (Allison); 480:24-481:5 (Ravin).

67.    Ravin and others at Rimini read and knew about those restrictions and understood that they precluded automated downloading.  PTX 20; Tr. 480:10-14, 824:25-825:16 (Ravin).

68.    Ravin then made the decision to use those automated tools "despite those changes."  Tr. 482:11-19, 726:20-24 (Ravin); PTX 21, PTX 22, PTX 27.

69.    Rimini used "automated" downloading tools that Ravin and Rimini knew were not authorized.  Tr. 479:3-15, 769:9-10, 769:22-25 (Ravin); 1140:17-20 (Chiu).

70.    Rimini was trying to stay under "the radar" (PTX 621), but Oracle eventually discovered the downloading due to Rimini's "massive download volumes" (PTX 42).

[PROPOSED] FINDINGS OF FACT IN SUPPORT OF PERMANENT INJUNCTION

71. Rimini's automated downloading tools caused Rimini at times to make more requests to Oracle's Knowledge Base system than all other worldwide users of that system combined, including for periods of November 2008. Tr. 1167:8-1168:2 (Hicks).

72. In periods from November 2008 through January 2009, Rimini accessed Oracle's systems and used automated downloading tools from up to twelve virtual machines concurrently. Tr. 1169:17-1170:2 (Hicks).

73. In November 2008, Rimini downloaded from Oracle's systems at times from ten virtual machines concurrently "pretty much around the clock" to obtain materials for XO Communications. Tr. 1170:19-1171:6; PTX 46 at 2.

74. Rimini received written notice that its automated downloading was not permitted and was harming Oracle's systems and Rimini employees worried that Oracle was "onto us from massive download volumes." PTX 42 at 1.

75. Rimini wrote to Oracle in response to the notice: "I understand our current methodology creates issues with CPU utilization on Oracle's servers." PTX 482 at 3.

76. Oracle blocked Rimini IP addresses in response to Rimini's downloading, and Rimini "obtained some additional fixed IP addresses" to circumvent Oracle's IP blocks and continue downloading. Tr. 771:19-772:7 (Ravin); Tr. 1175:17-1176:3 (Hicks); Tr. 1232:8-20 (Baron).

77. Rimini employees also used their home, residential IP addresses to attempt to evade Oracle's detection and avoid Oracle's IP blocking. PTX 46 at 4 ("Started downloading the attachments. . . . (from my house and not using the download VMs) but got blocked after about 2,000 attachments"); Tr. 1232:21-1233:14 (Baron).

78. Rimini used the IDs for multiple customers to "crawl" Oracle's website, causing more than 184,000 deadlocks. Tr. 1180:19-1181:4 (Hicks).

79. Rimini's unauthorized access using automated tools from November 2008 through January 2009 harmed Oracle's systems, causing slowdowns, errors, and deadlocks, and crashed Oracle's server. Tr. 1172:9-15, 1174:5-1175:1, 1179:9-23 (Hicks); 1201:14-1202:11; 1210:5-1211:10 (Renshaw); PTX 665; PTX 669.

80. Rimini's unauthorized access using automated tools rendered Oracle's Knowledge Management system completely unavailable for four and a half hours in January 2009. Tr. 1211:8-10 (Renshaw); PTX 669.

81. Rimini's use of automated tools to access Oracle's systems "harmed Oracle significantly." Tr. 1168:23-1169:2 (Hicks).

### K.   Improper Use of Credentials

82. Oracle's Terms of Use forbid using any entity's credentials for the benefit of any entity other than the entity to which the credentials were issued. PTX 19.

83. Rimini did not abide by this restriction on the use of credentials. PTX 8; Tr. 289:22-291:19, 333:9-334:3, 335:12-16 (Ravin); Tr. 1601:10-1602:24 (Leake); Tr. 1738:2-18 (Holmes); Tr. 2011:15-2013:5 (Blackmarr); 1160:15-1161:10 (Hicks); PTX 7; PTX 236; Tr. 188:8-189:15 (Davis).

### L.   Rimini's Illegal Actions Have Harmed Oracle's Reputation and Goodwill

84. Rimini's copyright infringement and computer access violations allowed it to charge substantially less than Oracle charged for support: often 50% or less of what Oracle charged. Tr. 207:10-16 (Davis); Tr. 1940:6-1942:6, 1950:16-1951:12 (Dean).

85. Rimini's copyright infringement and computer access violations allowed it to gain scale quickly, with minimal effort and investment. Tr. 443:4-445:6 (Ravin); Tr. 1702:18-1703:22 (Yourdon); Tr. 1453:22-1476:6 (Maddock).

86. By purporting to offer vendor-level support at half the price or less of Oracle support and creating the impression that Oracle was overcharging for support, Rimini eroded "the bonds and the trust that [Oracle] ha[d] with [its] customers." "For the customers [Oracle] lost, it totally broke the relationship." By breaking these relationships, customers were also less likely to purchase other Oracle products. Tr. 948:17-949:8, 934:14-936:11 (Catz); DTX 146.

87. A customer who moves to Rimini for support may later find that its systems are out of date. Tr. 935:18-936:3 (Catz); Tr. 1571:11-1573:6 (Screven).

88. By creating uncertainty and distrust in the marketplace, Rimini's copyright infringement and computer access violations caused Oracle to "hav[e] to work extra hard to keep

the customers [Oracle] ha[d]" due to the injury to Oracle's goodwill and reputation. Tr. 948:17-949:12 (Catz). As well, customers who left Oracle support for Rimini support were less likely to license additional software of any type from Oracle. *Id.*

### M. Rimini Has Been Evasive And Dishonest Throughout This Litigation

89. Rimini continued its infringing activities through at least February 2014. Tr. 751:7-15 (admission by counsel for Rimini). Rimini claims to have changed certain of its infringing behaviors after the Court granted partial summary judgment to Oracle on its copyright claims. Tr. 754:9-13 (colloquy with the Court).

90. Rimini created local environments and prepared and distributed derivative works from those environments for years after SAP and TomorrowNow conceded liability for copyright infringement and after TomorrowNow pled guilty to criminal copyright infringement. *See* Dkt. 823-6 (civil stipulation discussing local environments on TomorrowNow's computer systems); Dkt. 823-5 (guilty plea discussing local environments on TomorrowNow's computer systems).

91. Before trial, Rimini claimed that a software library never existed at Rimini Street. PTX 5332 (March 29, 2010 Answer) at ¶ 34 (denying existence of software library); PTX 1482 (June 16, 2011 Answer) at ¶ 34 (same).

92. At trial, Ravin claimed that Rimini's software library was not really a library, Tr. 247:7-12, that it was only "installation media," Tr. 255:6-9, 565:9-11, and that it was only PeopleSoft, Tr. 247:14-20.

93. Before trial, Rimini's 30(b)(6) designee, Senior Vice President Brian Slepko, and Ravin each flatly denied in depositions ever using one customer's environment to develop or test updates for other customers. Tr. 804:25-805:5 (Ravin); 3173:1-3174:3 (Slepko).

//
//
//
//
//
//

[PROPOSED] FINDINGS OF FACT IN SUPPORT OF PERMANENT INJUNCTION

94. At trial, Ravin admitted that Rimini used one customer environment to develop or test updates for other customers "all the time." Tr. 552:1-5 (Ravin).

**IT IS SO ORDERED.**

DATED:

By: _____
Hon. Larry R. Hicks
United States District Judge