GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

HOWARD & HOWARD
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wallen@howardandhoward.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**EMERGENCY MOTION**<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S MOTION (1) TO STAY ENFORCEMENT OF PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY (2) FOR A TEMPORARY SIXTY-DAY STAY**<br><br>**DECLARATION OF MARK A. PERRY FILED CONCURRENTLY HEREWITH**<br><br>Judge:       Hon. Larry R. Hicks |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on October 14, 2016, or as soon thereafter as the matter may be heard, in the United States District Court for the District of Nevada, Defendants Rimini Street, Inc. and Seth Ravin (together, "Rimini") will and hereby do move for an order staying enforcement of the permanent injunction signed by the Court on October 11, 2016 (Dkt. 1065) until the Ninth Circuit issues the mandate in the appeal filed on October 11, 2016, pursuant to Federal Rule of Civil Procedure 62(c), or in the alternative, for a temporary sixty-day stay to allow Rimini to seek a stay of the injunction in the Ninth Circuit.  Pursuant to Local Rule 7-4 and for the reasons set forth herein and in the declaration of Mark A. Perry filed concurrently herewith, Rimini respectfully requests that the Court rule on this Emergency Motion as soon as possible.

This Emergency Motion is based upon this Notice, the following Memorandum of Points and Authorities, the accompanying Declaration of Mark A. Perry, the Court's entire file in this matter, the trial record, and any such further oral or documentary evidence that may be submitted prior to determination of this Motion.

DATED:     October 12, 2016            GIBSON, DUNN & CRUTCHER LLP

By:  *Mark A. Perry*
     Mark A. Perry

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. PROCEDURAL HISTORY .................................................................................................... 1

III. LEGAL STANDARD ............................................................................................................. 3

IV. ANALYSIS ............................................................................................................................. 3

    A. All Four Traditional Factors Weigh in Favor of Ordering a Stay Pending Appeal ........................................................................................................................... 4

        1. Rimini Is Substantially Likely to Prevail on Appeal ......................................... 4

        2. Rimini Will Be Harmed Absent a Stay .............................................................. 7

        3. Oracle Will Not Be Harmed by a Stay ............................................................. 10

        4. The Public Interest Favors a Stay .................................................................... 11

    B. In the Alternative, the Court Should Temporarily Stay the Injunction to Allow Rimini to Seek a Stay from the Ninth Circuit ................................................................ 12

V. CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
  166 F.3d 772 (5th Cir. 1999) ........................................................................................................ 9

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...................................................................................................... 3

*Apple Inc. v. Samsung Elecs. Co.*,
  678 F.3d 1314 (Fed. Cir. 2012) .................................................................................................... 5

*Apple Inc. v. Samsung Elecs. Co.*,
  695 F.3d 1370 (Fed. Cir. 2012) .................................................................................................... 5

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013) .................................................................................................... 5

*Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.*,
  2013 WL 5719071 (S.D. Cal. Oct. 21, 2013) .............................................................................. 9

*Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*,
  824 F.2d 665 (8th Cir. 1987) ........................................................................................................ 7

*Campbell v. Nat'l Passenger R.R. Corp.*,
  2009 WL 4546673 (N.D. Cal. Nov. 30, 2009) .......................................................................... 13

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2006) ................................................................................................. 6, 7

*Conservation Cong. v. U.S. Forest Serv.*,
  2012 WL 3150307 (E.D. Cal. Aug. 1, 2012) ............................................................................. 13

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*,
  2003 WL 25778704 (C.D. Cal. Jan. 29, 2003) ............................................................................ 5

*Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  2013 WL 5718886 (E.D. Cal. Oct. 15, 2013) ............................................................................ 11

*Dolori Fabrics, Inc. v. Limited, Inc.*,
  662 F. Supp. 1347 (S.D.N.Y. 1987) ............................................................................................. 5

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .................................................................................................................. 5, 7

*Elliot v. Williams*,
  2011 WL 5080169 (D. Nev. Oct. 25, 2011) .............................................................................. 13

**TABLE OF AUTHORITIES**
**(Continued )**

Page(s)

*Fed. Election Comm'n v. Furgatch*,
　869 F.2d 1256 (9th Cir. 1989) ................................................................................................ 7

*Fox Broad. Co. v. Dish Network L.L.C.*,
　747 F.3d 1060 (9th Cir. 2014) ................................................................................................ 5

*Hilton v. Braunskill*,
　481 U.S. 770 (1987) ................................................................................................................ 3

*Hunt v. Check Recovery Sys., Inc.*,
　2008 WL 2468473 (N.D. Cal. June 17, 2008) ..................................................................... 11

*Lair v. Bullock*,
　697 F.3d 1200 (9th Cir. 2012) ..................................................................................... 4, 7, 10

*Leiva-Perez v. Holder*,
　640 F.3d 962 (9th Cir. 2011) (per curiam) ................................................................ 3, 4, 7, 10

*Mattel, Inc. v. MGA Entm't, Inc.*,
　705 F.3d 1108 (9th Cir. 2013) ................................................................................................ 9

*Minco, Inc. v. Combustion Eng'g, Inc.*,
　95 F.3d 1109 (Fed. Cir. 1996) ................................................................................................ 5

*New Era Publ'ns Int'l v. Henry Holt & Co., Inc.*,
　873 F.2d 576 (2d Cir. 1989) ................................................................................................. 11

*Nken v. Holder*,
　556 U.S. 418 (2009) ................................................................................................................ 3

*Oracle Am., Inc. v. Google Inc.*,
　798 F. Supp. 2d 1111 (N.D. Cal. 2011) .................................................................................. 5

*Oracle USA, Inc. v. Rimini Street, Inc.*,
　2:10-cv-00106 (D. Nev.) .......................................................................................................... 1

*Perfect 10, Inc. v. Google, Inc.*,
　653 F.3d 976 (9th Cir. 2011) .................................................................................................. 6

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
　134 S. Ct. 1962 (2014) .......................................................................................................... 11

*Rimini Street, Inc. v. Oracle Int'l Corp.*,
　2:14-cv-01699 (D. Nev.) .......................................................................................................... 2

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    2010 WL 2522428 (E.D. Tex. June 18, 2010).................................................................4, 7

*United States v. El-O-Pharmacy*,
    192 F.2d 62 (9th Cir. 1951).................................................................................................3

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) (en banc)..............................................................................6

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*,
    106 F.3d 894 (9th Cir. 1997)..............................................................................................4

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    2013 WL 6118447 (D. Del. Nov. 20, 2013) ......................................................................5

**Rules**

Fed. R. Civ. P. 62(c)....................................................................................................................3

Fed. R. Civ. P. 65(d) ...............................................................................................................6, 7

## I. INTRODUCTION

The Court entered a permanent injunction on October 11, 2016 (Dkt. 1065; *see also* Dkt. 1049), and Rimini Street, Inc. and Seth Ravin (together, "Rimini") have filed a notice of appeal to the Ninth Circuit. Dkt. 1067. Rimini respectfully requests that this Court stay enforcement of the permanent injunction pending resolution of the appeal because all four traditional guideposts weigh in favor of a stay. In the alternative, Rimini respectfully requests a temporary (sixty-day) stay to allow Rimini to seek a stay from the Ninth Circuit. Oracle cannot claim any prejudice from a temporary stay to allow orderly appellate review.

## II. PROCEDURAL HISTORY

***Rimini I.*** Oracle filed this lawsuit in 2010, alleging that Rimini infringed Oracle's copyrights while engaging in software support and that Rimini violated certain state laws prohibiting unauthorized computer access. *Oracle USA, Inc. v. Rimini Street, Inc.*, 2:10-cv-00106 (D. Nev.) ("*Rimini I*"). Oracle's copyright infringement claims in *Rimini I* were based on the *way* in which Rimini provided software support, primarily (i) local hosting of Oracle enterprise application and database software on Rimini's own servers, and (ii) "cloning" development environments from one client to another. Oracle's state-law computer access claims were based on automated downloading that occurred during three months from November 2008 to January 2009 that Oracle contended violated its website terms of use. Oracle did not seek a preliminary injunction after filing suit.

***Summary Judgment.*** At summary judgment, the critical question for the Court was whether Rimini's conduct was permitted by Oracle's licenses with its customers, using certain exemplar licenses to analyze the issue. This Court held that local hosting (reproductions on Rimini's systems) fell outside the scope of the exemplars. *See, e.g.*, *Rimini I*, 6 F. Supp. 3d 1086, 1098 (Feb. 13, 2014) (Rimini "not authorized" to copy software "on its own systems"). The Court also held that although the exemplar licenses permitted Oracle customers and third-party support providers like Rimini to make copies for "internal data processing operations," this authorization did not include copies made for multiple clients, even though each of those clients held licenses to the same software. *Id.* at 1097 (emphasis omitted). Oracle did not seek a preliminary injunction following this Court's summary judgment orders, which issued more than two years ago in February and August 2014.

***Revised Processes.*** With the benefit of the Court's guidance in the summary judgment orders, Rimini voluntarily transitioned to non-infringing alternative processes, which include remote access rather than local hosting, and no longer uses one client's software or documentation to reproduce or "clone" a new environment for any other Rimini client. *See* Dkts. 905-1 (Benge Decl.) ¶¶ 3-10, 905-2 (Mackereth Decl.) ¶¶ 4-11, 905-3 (Miller Decl.) ¶¶ 3-6, 905-4 (Phung Decl.) ¶¶ 3-10, and 905-5 (Teegarden Decl.) ¶¶ 3-6. In addition, by at least early 2009 (before this lawsuit was filed), Rimini had stopped using automated tools to download software from Oracle servers. *See* Dkts. 905-1 (Benge Decl.) ¶¶ 7-8, 905-2 (Mackereth Decl.) ¶¶ 8-9, 905-3 (Miller Decl.) ¶¶ 3-4, 905-4 (Phung Decl.) ¶¶ 7-8, 905-5 (Teegarden Decl.) ¶ 4.

***Rimini II.*** On October 15, 2014, Rimini filed *its own* lawsuit against Oracle seeking a declaration that its revised support processes do not infringe Oracle's copyrights. *Rimini Street, Inc. v. Oracle Int'l Corp.*, 2:14-cv-01699 (D. Nev.) ("*Rimini II*"). Those processes were not at issue in *Rimini I*. Indeed, Oracle opposed every effort by Rimini to litigate, or even refer to, its revised support processes in *Rimini I*. For example, Rimini requested supplemental discovery on September 17, 2014, and sought to introduce evidence of its revised processes at trial. Dkt. 488 at 12-20. Oracle argued in opposition that the "extensive discovery" needed to "test Rimini's claim of a non-infringing business model" would unnecessarily delay trial. *Id.* at 5-7. The Court agreed, excluding evidence at trial that Rimini had ceased using the processes at issue in *Rimini I* or any evidence of Rimini's "new support processes." Dkt. 515 at 2-3; *see also* Dkt. 593 at 13; Dkt. 723 at 3 (ruling that all "claims, issues, and evidence related to the new support model are being addressed solely in [*Rimini II*]").

***Trial.*** After a trial, the jury made an express factual finding that Rimini's copyright infringement was "innocent," not "willful," and that Oracle was entitled to a fair market value license of $35.6 million. Dkt. 896 at 4, 6. The jury rejected Oracle's claim that Mr. Ravin was vicariously or contributorily liable for Rimini's innocent copyright infringement. *Id.* at 2-3. The jury awarded $14.4 million against both Rimini Street and Ravin for the computer access violations. *Id.* at 12. The jury also rejected Oracle's tort claims that Rimini intentionally interfered or disrupted any client relationships, and rejected Oracle's request for punitive damages. *Id.* at 8-9, 13-14. In short, aside from three months of automatic downloading that occurred almost *eight* years ago, which Rimini

discontinued *before* this lawsuit was filed, there was *no finding* of any willful, intentional, or non-innocent improper conduct.

***The Injunction.*** Almost one year ago, on October 21, 2015, and more than five years after filing this lawsuit, Oracle filed a motion for a permanent injunction, its first request for injunctive relief in this case. Dkt. 900. Rimini opposed the motion (Dkt. 906), and oral argument was held on May 25, 2016 (Dkt. 1039). This Court granted Oracle's motion on September 21, 2016. Dkt. 1049. On September 23, 2016, Oracle submitted a proposed order of injunction (Dkt. 1052-1) that did not differ substantively from the one it had submitted a year earlier. Rimini filed its objections and a competing proposed order on September 26, 2016 (Dkt. 1055-1). On October 11, 2016, this Court entered its order of permanent injunction (which is identical to Oracle's proposal). Dkt. 1065.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) authorizes district courts to stay enforcement of permanent injunctions pending appeal. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *United States v. El-O-Pharmacy*, 192 F.2d 62, 79-80 (9th Cir. 1951) ("subdivision (c) of Rule 62 is . . . a recognition of the long established right of the trial court, after an appeal, to make orders appropriate to preserve the statute quo while the case is pending in the appellate court").

In assessing whether to order a stay, the Court should analyze "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The Ninth Circuit applies these factors as a "sliding scale" balancing test, under which "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see Leiva-Perez*, 640 F.3d at 966 ("If anything, a flexible approach is even *more* appropriate in the stay context") (emphasis in original).

### IV.   ANALYSIS

The Court is well aware of Rimini's disagreement with Oracle's positions in this litigation, including Oracle's request for a permanent injunction. The litigation has now reached the stage where

those arguments will be presented to the Ninth Circuit rather than this Court. Rimini has a substantial case for relief on appeal, but absent a stay of the injunction, Rimini will suffer irreparable harm while it proceeds with its appeal. Accordingly, Rimini respectfully requests that the Court (A) stay enforcement of the permanent injunction until after the Ninth Circuit issues its mandate; or, in the alternative, (B) temporarily stay enforcement of the injunction for sixty days so that Rimini may seek a stay from the Ninth Circuit. *See Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 2522428, at *5 (E.D. Tex. June 18, 2010) (holding that while a permanent injunction may have been warranted, this "does not preclude a granting of a stay of that injunction pending appeal as both issues require different analyses").

### A.  All Four Traditional Factors Weigh in Favor of Ordering a Stay Pending Appeal

Because the four relevant factors weigh in favor of a stay, the Court should grant Rimini's motion to stay enforcement of the permanent injunction until after the Ninth Circuit issues its mandate.

#### 1.  Rimini Is Substantially Likely to Prevail on Appeal

The first factor weighs in favor of a stay when "there is a 'substantial case for relief on the merits.'" *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (quoting *Leiva-Perez*, 640 F.3d at 966). This "standard *does not require* [that Rimini] show that 'it is more likely than not that [it] will win on the merits.'" *Id.* (emphasis added). Rather, a substantial case exists, and this factor is therefore satisfied, where there are "serious legal questions raised" or where there is a "fair prospect" of success. *Id.* (internal marks omitted).

Here, there is a substantial case for relief on the merits to support the issuance of a stay because, at a minimum, the appeal raises "serious legal questions" (*id.*) that go to the heart of whether an injunction should be entered in this case at all, including but not limited to:

*First*, a court may not enjoin innocent infringement. No such injunction has ever been issued under the Copyright Act, and many courts have indicated that an injunction in such circumstances would be improper because an innocent infringer by definition did not know and had no reason to know that its conduct was infringing. *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 903 (9th Cir. 1997) (affirming denial of injunction where "defendants were innocent infringers"); *Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*, 2003 WL 25778704, at *7

(C.D. Cal. Jan. 29, 2003) (where a defendant "has infringed innocently" and substantially revised its processes, "the public needs no protection"); *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F. Supp. 1347, 1358 (S.D.N.Y. 1987) (declining to issue injunction against "innocent infringer" who has "ceased its infringement"); *see also* Dkt. 906 at 11.  The jury's finding that Rimini's infringement was "innocent" cannot be reexamined by any federal court under the Seventh Amendment, and this finding alone precludes imposition of a permanent injunction under the Copyright Act.

*Second*, a court may not enjoin licensed conduct.  Again, no such injunction has ever been issued under the Copyright Act, and again many courts have indicated that an injunction in such circumstances would be improper.  *See Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1072-73 (9th Cir. 2014) (denial of injunction affirmed where license "constitute[d] a starting point or an aid in calculating damages"); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) (a fair market value license compensates the copyright holder "for the actual infringement that took place—no more and no less"); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996) ("goodwill acquired by infringement" was "already acknowledged" in "hypothetical license"); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 6118447, at *13 (D. Del. Nov. 20, 2013) ("money damages are rarely inadequate for a patent holder that is willing to forego its exclusive right for some manner of compensation"); *see also* Dkt. 906 at 15.  The jury found that a fair market value license is sufficient to compensate Oracle for the innocent acts of infringement proven at trial (Dkt. 896), and thus monetary relief is adequate in this case and precludes imposition of an injunction.

*Third*, Oracle did not establish a "causal nexus" between its asserted harm and Rimini's infringing acts.  The Federal Circuit has imposed, and enforced, such a requirement in the context of injunctions under the Patent Act.  *See Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012); *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1363-64 (Fed. Cir. 2013); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (holding injunctive provisions of the Patent Act and the Copyright Act should be construed congruently).  The Ninth Circuit has done the same in the copyright context.  *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir. 2011).  Oracle did not even attempt to satisfy the causal nexus requirement in this case (*see* Dkt. 906 at 12-13), which precludes imposition of any injunction.

*Fourth*, the scope of the Copyright Act injunction violates Federal Rule of Civil Procedure 65(d) because it fails to provide Rimini with adequate notice of what conduct is enjoined. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2006) (Rule 65 is meant to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood") (internal quotation marks omitted). Rimini has repeatedly demonstrated and objected to the vagueness and ambiguity in the order of injunction proposed by Oracle and adopted by the Court. *See* Dkts. 906, 1055-1. The Court has not addressed those objections. The injunction also violates Rule 65 because it is overbroad: On its face, the injunction is not limited to the conduct or works adjudicated at trial, and it can be read to reach conduct that was excluded from the first case and is at issue only in the second lawsuit. Moreover, the injunction purports to prohibit acts that are not made exclusive by statute—including "access" to Oracle's software—in a manner that, if it were otherwise authorized, would raise serious First Amendment problems. Finally, it purports to prohibit conduct that is permitted (or not prohibited) by various Oracle licenses.

*Fifth*, there are serious questions regarding the constitutionality of the California computer access statute, both on its face and as applied here. Oracle has argued throughout this case that Rimini can be held liable under this criminal law for a simple breach of website terms of use. But this *criminal* statute does not prohibit the means with which Rimini accessed the website, which it did with the specific authorization of licensed users. If the statute did prohibit Rimini's conduct, then it is unconstitutional—as the Ninth Circuit explained when rejecting the position that federal computer access laws extend to website terms of use. *See United States v. Nosal*, 676 F.3d 854, 860 (9th Cir. 2012) (en banc) ("Significant notice problems arise if we allow criminal liability to turn on the vagaries of private polices that are lengthy, opaque, subject to change and seldom read"). And even if the liability verdict under the computer access statute could withstand scrutiny, the injunction is manifestly unsupportable in light of the undisputed facts that Rimini engaged in isolated conduct over a three-month window that it voluntarily ceased nearly eight years ago and a year before Oracle even filed suit.

These issues present, at the very least, "serious legal questions" that the Ninth Circuit will be asked to resolve. While Rimini is confident that the court of appeals will vacate the injunction on one

or more of these bases, this Court does not have to accept that position in order to stay enforcement pending appeal. *Lair*, 697 F.3d at 1204. Rather, for present purposes it should be sufficient to restate the undisputed and indisputable fact that no court, in any jurisdiction, has ever issued a permanent injunction in circumstances even remotely like these. Because equity is based in the history and traditions of our people, the power of federal courts to issue injunctions is circumscribed by past practice. *eBay*, 547 U.S. at 392-93. The very novelty of the Court's order of permanent injunction, as well as the serious legal questions it raises, therefore weighs overwhelmingly in favor of a stay.

### 2.     Rimini Will Be Harmed Absent a Stay

The second factor weighs in favor of a stay where the applicant demonstrates "a probability of irreparable injury if the stay is not granted." *Lair*, 697 F.3d at 1214 (emphasis omitted). In analyzing this factor, the Court should focus on "the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" *Id.* (quoting *Leiva-Perez*, 640 F.3d at 969). Irreparable harm exists where a permanent injunction might cause "untold, irreversible consequences" for the enjoined party. *Id.* at 1215; *see Smith & Nephew*, 2010 WL 2522428, at *5 ("while in the context of awarding a permanent injunction the Court finds that the balance of hardships favors [plaintiff], the Court finds that in the context of a stay of the permanent injunction pending appeal the balance of hardships favors [defendant]"). Here, the permanent injunction creates uncertainty, confusion, and further business and legal risks because it is both vague and overbroad. *Columbia Pictures*, 710 F.3d at 1047 (Rule 65 is meant to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood") (internal quotation marks omitted); *Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir. 1989) (holding that a district court's permanent injunction with language "susceptible to a number of different interpretations" was "impermissibly vague" and violated Rule 65(d)); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) (affirming the district court's refusal to issue portions of a preliminary injunction that would "require[] [the defendant] to guess at what kind of conduct would be deemed trademark infringement").

*First*, Rimini has objected to and demonstrated the vague and ambiguous terms in Oracle's injunction on two separate occasions (*see* Dkts. 906, 1055-1), yet Oracle steadfastly refused to clarify

or narrow them to comply with Rule 65, or the conduct found to be infringing under the Copyright Act. The Court adopted Oracle's proposed language without addressing Rimini's objections. It is no answer to say, as Oracle has previously, that some of those terms are to be found (in other contexts) in prior rulings of this Court. The vague terms of the injunction will cause irremediable harm to Rimini's client relationships in light of Oracle's aggressive and persistent distribution of "Fear, Uncertainty, and Doubt" ("FUD") letters to Rimini's clients. In these letters, Oracle selectively quotes this Court's statements out of context to threaten and intimidate customers. For example, Oracle has repeatedly misrepresented that this Court "ruled" that Rimini "engaged in massive theft" (*see*, *e.g.*, Perry Decl. Exs. A, B), notwithstanding this Court's order granting Rimini's motion for clarification in which this Court held that it did *not* make such a finding (Dkt. 507 at 3 ("The court takes this opportunity to clarify that at no point in the August order did the court make a specific holding or finding that Rimini committed any act of intentional theft"), *id.* ("The issue of whether Rimini engaged in theft, as a separately pled cause of action, was not before the court"), a statement which Oracle conveniently omits from its communications. Thus, if the injunction is not stayed, Oracle will use it as an additional anti-competitive weapon against Rimini and its clients by selectively quoting the vague statements it proposed to the Court in additional FUD letters and press releases.

*Second*, the injunction is overbroad. Rather than clarify the vague injunction, Oracle suggested at the hearing that it would use the injunction to target what it referred to as "borderline" infringing conduct that "push[es] the envelope" and is "close to the line." Dkt. 1040 at 23:4-9, 24:16-24. Oracle's suggested use of an injunction is, of course, entirely improper and unlawful. Copyright law, including an injunction issued under the Copyright Act, protects intellectual property right holders from conduct that *crosses* the line of infringement, but it cannot be used to interfere with lawful competition that is arguably *close* to the line, or conduct that has not been adjudicated to be infringing, like Rimini's current processes that are being adjudicated in *Rimini II*. *See Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) ("failure to vigorously defend against [Plaintiff's] claims could have ushered in a new era of copyright litigation aimed not at promoting expression but at stifling the 'competition' upon which America thrives"). Yet the injunction as ordered by the Court reaches conduct that is not within the scope of rights that a copyright owner is entitled to control legally under

the Copyright Act.  For example, the Copyright Act does not prohibit "access or use," and in fact, Oracle admitted at trial that "accessing" JDE software source code is *required* in order to provide third-party support for JDE.  Dkt. 804 at 1307:25-1308:1 ("There's no way for [a third party] to deliver a critical fix on a solution that doesn't have source code").  Oracle is attempting to leverage its narrow exclusivity in the copyrighted works into a broad prohibition against third-party support, but an injunction cannot go beyond the conduct adjudicated and the legal authority for that adjudication.  *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 793 (5th Cir. 1999) (reversing order granting permanent injunction because plaintiffs used "copyrights to indirectly gain commercial control over products [it] does not have copyrighted") (internal quotation marks omitted).

The Copyright Act gives Oracle certain exclusive rights in certain works; it does not confer a monopoly—or, indeed, any exclusionary rights—over the provision of aftermarket support services for Oracle software products.  Oracle acknowledged at trial that third-party support is lawful, that Rimini and other third parties can offer aftermarket maintenance and support services to Oracle licensees, and that Oracle licensees have a contractual right to purchase services from Rimini and other third parties.  Yet at Oracle's insistence, this Court has entered an injunction that could—and, Oracle will argue, should—be construed as prohibiting the provision of third-party support.  Rimini does not believe the injunction lawfully can be read that broadly; but the history of this litigation shows that Oracle attempts the broadest possible reading of any constraint to the detriment of open market competition.  The Court, erroneously, dismissed Rimini's copyright misuse defense; it would be a bitter irony if the validity of that defense were to be conclusively established by Oracle's aggressive implementation of an order that this Court adopted, again erroneously, at Oracle's behest.  *Cf. Brighton Collectibles, Inc. v. Pedre Watch Co., Inc.*, 2013 WL 5719071, at *5 (S.D. Cal. Oct. 21, 2013) (declining to grant permanent injunction where a "broad" "over-encompassing" injunction would amount to "an unnecessary restraint of trade on Defendant").

This factor therefore weighs overwhelmingly in favor of a stay.

### 3. Oracle Will Not Be Harmed by a Stay

Under the third factor, courts look to "whether issuance of the stay will substantially injure the other parties interested in the proceeding" including the "opposing party." *Lair*, 697 F.3d at 1215; *Leiva-Perez*, 640 F.3d at 964.

Here, Oracle *cannot* claim that it would be harmed absent a stay of the injunction because the undisputed evidence establishes that Rimini no longer engages in the conduct found to be infringing. *See* Dkts. 905-1 (Benge Decl.) ¶¶ 3-10, 905-2 (Mackereth Decl.) ¶¶ 4-11, 905-3 (Miller Decl.) ¶¶ 3-6, 905-4 (Phung Decl.) ¶¶ 3-10, 905-5 (Teegarden Decl.) ¶¶ 3-6. In fact, Rimini changed its processes at a cost of millions of dollars, years before the jury returned its verdict, after the Court provided Rimini with guidance it needed to revise its processes, which processes Rimini did not know and by definition had no reason to know were infringing, and then Rimini instituted its own lawsuit—*Rimini II*—to test the legality of those processes. These are not the acts of a party that needs to be enjoined from additional infringement. Indeed, Oracle has not challenged or objected to any of the evidence demonstrating that Rimini has changed its infringing processes. Nor can Oracle rely on Rimini's revised, *current* processes as a basis for harm because the legality of those processes has not been adjudicated and Oracle has repeatedly claimed that the legality of those processes will be litigated in *Rimini II*.

In its order granting Oracle's motion for a permanent injunction, this Court found that Rimini's past infringing conduct "irreparably injured" Oracle's reputation and goodwill (Dkt. 1049 at 5), but even if that finding had legally sufficient support in the record (it does not), this Court made no finding that Oracle is suffering any ongoing injury as a result of the conduct adjudicated in *Rimini I*. Nor could it. The undisputed evidence demonstrates that Rimini discontinued the infringing processes two years ago, following this Court's summary judgment order, and discontinued the conduct found to violate state computer access statutes over six years ago, before this lawsuit was even filed. Moreover, the jury determined that Rimini's innocent infringement did not cause Oracle to lose any customers or profits—indeed, as Oracle's own witness admitted at trial, Oracle loses 5% of its customers each year and the customers that join Rimini are *in that* 5%. *See* Dkt. 906 at 13 (citing 9/24/15 Tr. at 1722). Further, although the Court cited one case for the proposition that voluntary cessation of unlawful

10
EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

1  conduct does not moot the dispute (Dkt. 1049 at 6), that doctrine is inapposite here because Rimini
2  responded to the Court's summary judgment rulings by stopping the conduct deemed infringing and
3  instituting new processes that do not infringe—and then seeking a judicial declaration to that effect.

4  Moreover, although Oracle filed this lawsuit over six years ago in 2010, it *never* filed a motion
5  for a preliminary injunction, and this delay is further proof of the absence of any immediacy that would
6  counsel against a stay.  *Cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) ("[A]
7  plaintiff's delay [in commencing suit] can always be brought to bear at the remedial stage, in
8  determining appropriate injunctive relief"); *New Era Publ'ns Int'l v. Henry Holt & Co., Inc.*, 873 F.2d
9  576, 584-85 (2d Cir. 1989) (holding that laches barred injunctive relief due to the plaintiff's two-year
10 delay in bringing suit).  This is not mere speculation:  Years have passed since this suit was instituted,
11 since the Court issued its summary judgment rulings, and even since Oracle first moved for an
12 injunction.  Oracle has never come forward with any *evidence* of irreparable harm it would suffer in
13 the absence of an injunction as distinguished from Rimini's continued (lawful) operations.  It cannot
14 now be heard to suggest that it would suffer any such harm on a going-forward basis.  This factor
15 therefore weighs strongly in favor of a stay.

16       **4.       The Public Interest Favors a Stay**

17       Finally, a stay pending appeal would serve important interests of sound and fair judicial
18 administration.  Namely, "a stay would avoid the parties and the Court wasting taxpayer resources on
19 a litigation which might be mooted on appeal." *Hunt v. Check Recovery Sys., Inc.*, 2008 WL 2468473,
20 at *5 (N.D. Cal. June 17, 2008); *Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 2013 WL
21 5718886, at *2 (E.D. Cal. Oct. 15, 2013) ("Judicial economy outweighs any prejudice [the non-moving
22 party] may experience from a routine stay").  Here, both the public and the judicial systems have
23 heavily invested in two lawsuits – *Rimini I* and *Rimini II* – to resolve the legality of certain Rimini
24 processes.  An injunction would serve *only* to open up a third front (potential contempt proceedings)
25 that will be duplicative, unnecessary, and a waste of public resources.  There is no reason to burden
26 this Court and its limited resources with yet an additional proceeding.  Given the significant legal issues
27 raised by the appeal, it would defy fundamental notions of fairness to require Rimini and this Court to
28 incur the burden of Oracle's signaled contempt actions in which it seeks to enforce a vague and

overbroad injunction against non-infringing so-called "borderline" conduct, by enforcing an improper injunction. Particularly in light of the complete absence of any harm to Oracle as a result of the stay, it is eminently reasonable and efficient to have the Ninth Circuit resolve these novel issues in the first instance.

The public interest also favors robust and lawful competition. The injunction prohibits conduct *beyond* what is prohibited in many Oracle licenses, including conduct that is permitted. The licenses vary greatly by licensee, particularly the JD Edwards and Siebel licenses, as Rimini has consistently argued. *See* Dkts. 617 at 6-7 (identifying variations in JD Edwards and Siebel licenses, including differences in provisions relating to accessing source code), 618-1, 618-2, 618-3, 618-4, 618-5; *see also* Perry Decl. Ex. C. Indeed, Oracle has acquired many different licenses over a span of years involving different products, some that Oracle wrote and some it inherited. Yet the injunction is modeled on language contained in a limited subset of more restrictive licenses when Oracle knows full well that many of its licenses – particularly those more modern licenses – do not actually prohibit that conduct. And although the parties stipulated that the *PeopleSoft* licenses at issue in *Rimini I* should be governed by the Court's February 13, 2014 order for a limited purpose (*id.* Ex. D), that stipulation did not address current licenses that do not include the "facilities" language so central to this Court's interpretation of the licenses at summary judgment (*id.* Ex. E)—an interpretation that was, in any event, erroneous. The injunction ignores this important variation, and would purport to restrict customers with such licenses from obtaining third-party support from Rimini under the terms of *other* parties' licenses, to which they did not agree. The injunction is profoundly anti-competitive, anti-customer, anti-choice, and anti-consumer. It is Oracle's attempt to impose an uber-license, on terms selected exclusively by Oracle, on an entire industry. The public interest demands that markets, not courts, regulate commerce in this fashion.

This factor therefore weighs heavily in favor of a stay.

**B.  In the Alternative, the Court Should Temporarily Stay the Injunction to Allow Rimini to Seek a Stay from the Ninth Circuit**

If the Court declines to stay the injunction pending resolution of the appeal, Rimini respectfully requests that the Court temporarily stay enforcement of the injunction for sixty days so that Rimini has

an opportunity to seek a stay from the Ninth Circuit. Courts routinely grant such requests. *See*, *e.g.*, *Elliot v. Williams*, 2011 WL 5080169, at *10 (D. Nev. Oct. 25, 2011) ("IT IS FURTHER ORDERED that pursuant to Federal Rule of Appellate Procedure 8(a)(1), the September 23, 2011 order of this Court, and the accompanying judgment (ECF Nos. 45, 46), are STAYED for SIXTY (60) DAYS from the date this order is filed to allow respondents time to seek a stay pending appeal from the Ninth Circuit Court of Appeals"); *Conservation Cong. v. U.S. Forest Serv.*, 2012 WL 3150307, at *2 (E.D. Cal. Aug. 1, 2012) ("However, the court grants Plaintiff a limited injunction of twenty-one (21) days to seek an injunction pending appeal from the Ninth Circuit, pursuant to Federal Rule of Appellate Procedure 8(a)(2)"); *Campbell v. Nat'l Passenger R.R. Corp.*, 2009 WL 4546673, at *2 (N.D. Cal. Nov. 30, 2009) ("Defendant must comply with the Court's injunction (Docket No. 280) within ten days of the date of this order. If Defendant intends to seek a stay from the Ninth Circuit, it must do so within this period of time.").

There is no reason to decline a temporary stay here because, as discussed above, Oracle has waited years to seek injunctive relief, there is no ongoing, irreparable harm to Oracle as a result of any of the adjudicated conduct, Rimini has indisputably discontinued the conduct found to be unlawful under the Copyright Act, and Oracle has identified *no immediate, irreparable harm* that it would suffer absent an injunction. Nearly one year passed between Oracle's motion and the order authorizing the injunction, and nearly another three weeks passed between that order and the actual injunction. Since Oracle has not identified any irreparable harm during those time periods, it cannot claim harm from an additional sixty days to allow the Ninth Circuit to take a considered look at the injunction. Thus, at the very least, a temporary stay in this action is warranted to allow the appellate process to proceed in an orderly fashion. Rimini will promptly seek a stay from the Ninth Circuit.

## V.   CONCLUSION

For these reasons, Rimini respectfully requests that the Court (i) stay enforcement of the permanent injunction until the Ninth Circuit issues its mandate, or, in the alternative, (ii) temporarily

stay enforcement of the injunction for sixty days so that Rimini has an opportunity to seek a stay from the Ninth Circuit.

DATED: October 12, 2016

GIBSON, DUNN & CRUTCHER LLP

By: *Mark A. Perry*
     Mark A. Perry

*Attorneys for Defendants
Rimini Street, Inc. and Seth Ravin*