BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
thomas.hixson@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S OPPOSITION TO RIMINI'S EMERGENCY MOTION (1) TO STAY ENFORCEMENT OF PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY (2) FOR A TEMPORARY SIXTY-DAY STAY**<br><br>Judge: Hon. Larry R. Hicks |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ........................................................................................................... 2

    A. Rimini's Motion Should Be Denied Because Rimini Has Not Satisfied the Requirements for an Emergency Motion ................................................... 2

    B. Legal Standard for Motion to Stay ............................................................. 3

    C. Rimini's Stay Request Fails at the Outset Because It Merely Recites Previously Rejected Arguments .................................................................. 4

    D. Rimini's Stay Request Fails Under All Four Factors ................................. 5

        1. Rimini Is Not Likely to Prevail on Appeal .................................... 5

        2. Rimini Has Failed to Show Irreparable Harm; Its Statements Establish the Opposite ................................................................... 8

        3. If a Stay Is Granted, Oracle Will Be Harmed By Rimini's Continued Infringement ................................................................ 11

        4. The Public Interest Favored the Injunction, and Now It Disfavors a Stay ............................................................................................... 12

    E. The Court Should Enforce Its Carefully Considered Injunction Immediately ............................................................................................... 13

III. CONCLUSION ..................................................................................................... 15

1

2 **TABLE OF AUTHORITIES**

3
**Page(s)**

4
**CASES**

5
*Apple Inc. v. Psystar Corp.*,
6     658 F.3d 1150 (9th Cir. 2011) .................................................................................... 6, 11

7 *Aug. Tech. Corp. v. Camtek, Ltd.*,
    395 F. App'x 692 (Fed. Cir. 2010) ................................................................................... 14
8

9 *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*,
    2013 WL 557102 (N.D. Cal. 2013) .................................................................................... 8

10
*Cardoza v. Bloomin' Brands, Inc.*,
11     141 F. Supp. 3d 1137 (D. Nev. 2015) ............................................................................ 2, 3

12 *Childs v. Stafford*,
    No. 11-CV-2690 W (NLS), 2012 WL 12875370 (S.D. Cal. Apr. 26, 2012) ................. 4, 10
13
*Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Robinson*,
14     123 F. Supp. 2d 965 (W.D.N.C. 2000) ............................................................................ 14

15
*Coal. for Econ. Equity v. Wilson*,
16     No. C 96-4024 TEH, 1997 WL 70641 (N.D. Cal. Feb. 7, 1997) ....................................... 4

17 *CyberMedia, Inc. v. Symantec Corp.*,
    19 F. Supp. 2d 1070 (N.D. Cal. 1998) ............................................................................... 5
18

19 *Fox Television Stations, Inc. v. FilmOn X, LLC*,
    968 F. Supp. 2d 134 (D.D.C. 2013) ................................................................................ 14

20
*Fullmer v. Michigan Dep't of State Police*,
21     207 F. Supp. 2d 663 (E.D. Mich. 2002) ............................................................................ 5

22 *Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.*,
    932 F. Supp. 1147 (S.D. Ind. 1996) .................................................................................. 5
23
*iLight Techs., Inc. v. Fallon Luminous Prod. Corp.*,
24     No. 2009-1342, 2009 WL 1939187 (Fed. Cir. July 1, 2009) ........................................... 14

25
*Kalani v. Starbucks Corp.*,
26     No. 13-CV-00734-LHK, 2016 WL 693251 (N.D. Cal. Feb. 22, 2016) ........................... 10

27 *Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ............................................................................................. 4
28

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

*Lincoln Nat. Life Ins. Co. v. Transamerica Life Ins. Co.*,
  No. 2009-1403, 2009 WL 2903594 (Fed. Cir. Sept. 1, 2009) .................................................. 14

*Marshak v. Reed*,
  199 F.R.D. 110 (E.D.N.Y. 2001) ........................................................................................ 14

*Metro-Goldwyn-Meyer Studios v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................................................... 12

*Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.)*
  *Thayer Rd.*, 812 F. Supp. 2d 273 (W.D.N.Y. 2011) ............................................................. 13

*Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*,
  834 F. Supp. 2d 29 (D. Mass. 2011) ................................................................................... 14

*Muniauction, Inc. v. Thomson Corp.*,
  2007 WL 2406950 (W.D. Pa. 2007) ...................................................................................... 9

*Mylan Labs., Inc. v. Leavitt*,
  495 F. Supp. 2d 43 (D.D.C. 2007) ...................................................................................... 14

*Mytee Products, Inc. v. Harris Research, Inc.*,
  2010 WL 3724587 (Fed. Cir. 2010) ..................................................................................... 14

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................................... passim

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  No. CIV.A. 04-1371-JJF, 2008 WL 5210843 (D. Del. Dec. 12, 2008) ................................... 4

*Rimini Street v. Oracle Int'l Corp.*,
  No. 2:14-cv-01699-LRH-CWH (D. Nev.) .................................................................... 8, 9, 11

*Shakopee Mdewakanton Sioux Cmty. v. FBCV, LLC*,
  No. 2:10-CV-10 JCM RJJ, 2011 WL 4904438 (D. Nev. Oct. 14, 2011) ............................... 10

*Silverstein v. Penguin Putnam, Inc.*,
  No. 01 CIV.309 JFK, 2003 WL 21361734 (S.D.N.Y. June 12, 2003) ............................ 13, 14

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
  No. 1:04CV00977, 2007 WL 4262725 (M.D.N.C. Nov. 30, 2007) ..................................... 14

**STATUTES**

17 U.S.C. § 504(a)(1) ............................................................................................................. 6

**OTHER AUTHORITIES**

Local Rule 7-4 .................................................................................................................. 2, 3

I.      INTRODUCTION

Oracle requested injunctive relief in its initial complaint in this case in January 2010. After nearly seven years of litigation, including a successful jury trial on the merits finding that Rimini infringed Oracle's copyrights and engaged in other unlawful acts, Oracle has obtained the relief it has sought since day one: a court order enjoining Rimini from continuing to offer services using practices that violate Oracle's rights.  Rimini now moves this Court to stay enforcement of that injunction with an argument that satisfies none of the four factors that govern such a request.  Rimini's stay request should be denied.

First, the "serious legal questions" that Rimini says show a likelihood of success on the merits were already the subject of extensive briefing and were each addressed—and soundly rejected—by the Court.  There is nothing new here.  Second, Rimini's unsubstantiated argument that it will suffer "irreparable injury" absent a stay is also a rehash of rejected arguments. Indeed, its claim of "untold, irreversible consequences" is contrary to its own public statements, including a press release—issued the same day it filed its motion—assuring the public that "[t]he injunction does not prohibit Rimini Street's ongoing or future provision of support for [Oracle's PeopleSoft, JD Edwards, Seibel, and Database] product lines" but merely "constrains" how Rimini provides that support.  Third, Rimini's assurance that a stay will not harm Oracle because "undisputed evidence establishes that Rimini no longer engages in the conduct found to be infringing" is both unsubstantiated and beside the point.  As the Court found, such a claim "is not a basis to deny issuance of an injunction." ECF No. 1049 at 6:14-15.  Finally, while Rimini makes lofty pronouncements about "sound and fair judicial administration," the public's interest—again, as the Court already has determined—is best served by enjoining "future copyright infringement and violations of the computer access statutes." *Id*. at 8:13-15.

If, as Rimini has continually insisted, it no longer infringes, then it will suffer no harm from the Court's injunction and has nothing to fear.  Because the Court's injunction order is firmly grounded, and because Rimini has completely failed to substantiate its claims of harm, the stay motion should be denied.

1

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

## II. ARGUMENT

### A. Rimini's Motion Should Be Denied Because Rimini Has Not Satisfied the Requirements for an Emergency Motion

Local Rule 7-4 sets forth the requirements for emergency motions.[1] *See* L.R. 7-4(c) ("Failure to comply with the requirements for submitting an emergency motion may result in denial of the motion."). Rimini must state the nature of the emergency to enable the Court to evaluate whether the matter is, in fact, an emergency (L.R. 7-4(a)(1), (c)), and establish "that it will be irreparably prejudiced if the Court resolves the motion pursuant to the normal briefing schedule." *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1142 (D. Nev. 2015). Rimini must also certify that, after meeting and conferring, it was unable to resolve the matter without court action. L.R. 7-4(a)(3). To satisfy its meet and confer obligation, Rimini had to "treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes," which requires parties to "present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions." *Cardoza*, 141 F. Supp. 3d at 1145 (citation omitted).

Rimini has not satisfied these requirements. It fails to state the nature of its "emergency," and does not even try to establish that it would be "irreparably prejudiced if the Court resolves the motion pursuant to the normal briefing schedule." L.R. 7-4(a)(1), (c); *Cardoza*, 141 F. Supp. 3d at 1142. Rimini merely concludes, without any explanation or evidentiary support, that it "will suffer irreparable harm if a stay of the injunction is not immediately granted." ECF No. 1069-1 (Perry Decl.), ¶ 4.

Rimini's statement is not merely conclusory. It directly contradicts Rimini's repeated representations to its customers and the public that it has ceased its infringing conduct and, therefore, that an injunction would have no effect on its business. Just twenty days before filing its "emergency" motion, Rimini told its customers in a press release that "since Rimini Street had

---

[1] "Emergency motions should be rare." L.R. 7-4(b). Rimini has filed five "emergency" motions in the past twelve months and two in the past two weeks. *See* ECF Nos. 941, 945, 990, 1062, and 1069.

1  ceased said conduct by July 2014, there is no expected impact [from the injunction] on any
2  current or future service offering, or on Rimini Street's current or future ability to service any of
3  its clients." Kennamer Decl., Ex. 1 (9/22/16 Press Release).
4        And just *two days ago*—the day after the Court entered the injunction—Rimini again
5  assured its customers through a press release that the "injunction does not prohibit Rimini
6  Street's ongoing or future provision of support." *Id.*, Ex. 2 (10/12/16 Press Release). Rimini
7  made those comments after having nearly a year to consider the language of the injunction. Mot.
8  at 3:7-10 (Rimini claimed that the final injunction is "identical" to Oracle's proposal which "did
9  not differ substantively from the one it had submitted a year earlier.").
10       Rimini has also failed to satisfy its meet and confer obligation to present to Oracle "the
11 merits of [Rimini's] positions with the same candor, specificity, and support during the informal
12 negotiations as during the briefing of discovery motions." L.R. 7-4(a)(3); *Cardoza*, 141 F. Supp.
13 3d at 1145 (citation omitted). Rimini sent a one-page letter on October 11, 2016 asking Oracle
14 to stipulate to a stay by the following day at noon. ECF No. 1069-1 (Perry Decl.), Ex. F. The
15 letter contained no explanation of why a stay was necessary. Oracle responded the next day,
16 pointing out, among other things, Rimini's press releases and court filings stating that Rimini no
17 longer infringes, and requesting that Rimini state whether its "current business model violates the
18 Court's order" so that Oracle could "evaluate [Rimini's] request for a stay." *Id.*, Ex. G. Rimini
19 never responded, and instead filed this "emergency" motion.
20       Rimini's failure to comply with the requirements for an emergency motion alone merits
21 denial of its motion.
22       **B.**    **Legal Standard for Motion to Stay**
23       Should the Court consider Rimini's motion on its merits, it should be denied, as the bar to
24 obtain a stay pending appeal is high and Rimini's unsupported motion falls far short. Because
25 "[a] stay is an intrusion into the ordinary processes of administration and judicial review," a stay
26 "is not a matter of right" but "an exercise of judicial discretion" that may properly be declined
27 "even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427, 433
28 (2009) (internal quotations and citations omitted).

1  Rimini, as the party requesting the stay, "bears the burden of showing that the
2  circumstances justify an exercise of that discretion." *Id.* at 433–34. The determination whether
3  to issue a stay is governed by four factors: "(1) whether the stay applicant has made a strong
4  showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably
5  injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties
6  interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v.
7  Braunskill*, 481 U.S. 770, 776 (1987)).

8  The first two factors "are the most critical" and establish minimum thresholds that must
9  be met for issuance of a stay. *Nken*, 556 U.S. at 434. The Supreme Court requires a **"strong
10 showing"** on that first critical factor, likelihood of success on the merits. *Id.* (emphasis added).

11  The second critical factor—irreparable harm—requires Rimini to demonstrate
12  *irreparable* harm, not just harm to its business. Irreparable harm is more than just a factor; it is
13  the "bedrock requirement" for a stay. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011).
14  It "requires an even stronger showing: the [movant] must demonstrate that irreparable harm is
15  'probable,' or more likely than not, if the stay is denied." *Childs v. Stafford*, No. 11-CV-2690 W
16  (NLS), 2012 WL 12875370, at *3 (S.D. Cal. Apr. 26, 2012), *aff'd,* 551 F. App'x 353 (9th Cir.
17  2014) (citing *Leiva-Perez v. Holder*). If the movant has not made a threshold showing of
18  irreparable harm, "a stay may not issue, regardless of the [movant's] proof regarding the other
19  stay factors." *Leiva-Perez*, 640 F.3d at 965.

20  **C.  Rimini's Stay Request Fails at the Outset Because It Merely Recites
         Previously Rejected Arguments**

22  Rimini must establish all the foregoing factors with arguments tailored to this stage of the
23  case. "[A] motion for stay pending appeal is not a second bite at the . . . injunction apple." *Coal.
24  for Econ. Equity v. Wilson,* No. C 96-4024 TEH, 1997 WL 70641, at *5 (N.D. Cal. Feb. 7, 1997)
25  (denying motion for stay pending appeal of preliminary injunction); *see also Power Integrations,
26  Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV.A. 04-1371-JJF, 2008 WL 5210843, at *2
27  (D. Del. Dec. 12, 2008) (denying motion for stay of permanent injunction because "the Court has

4
ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

considered several of these factors already in considering whether to issue a permanent injunction, and the Court's analysis is unchanged in the context of a stay").

Rimini ignores that principle, merely reciting already rejected arguments it previously made. That is insufficient, and therefore a stay cannot issue. The "mere recitation of arguments previously made and rejected . . . is not nearly enough to persuade [the Court] that [the movant] is likely to succeed on appeal." *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.*, 932 F. Supp. 1147, 1149 (S.D. Ind. 1996); *see also Fullmer v. Michigan Dep't of State Police*, 207 F. Supp. 2d 663, 664 (E.D. Mich. 2002) (although factors are similar, party seeking a stay will have more difficulty establishing likelihood of success on the merits "due to the difference in procedural posture" because must demonstrate "there is a likelihood of reversal").

### D. Rimini's Stay Request Fails Under All Four Factors

Application of the four factors mandates denial of Rimini's "emergency" stay request.

#### 1. Rimini Is Not Likely to Prevail on Appeal

Rimini tries to make the required "strong showing" of its likelihood of success on appeal, *Nken*, 556 U.S. at 434, by merely repeating the same five arguments that the Court already rejected, after extensive briefing and consideration, when it granted the injunction in the first place. There is no basis for the Court to revisit its well-founded prior determinations.

##### a. The Jury's Advisory Finding of Innocent Infringement Is No Bar to an Injunction

Asserting, incorrectly, that no case exists where a court has issued an injunction against an innocent infringer, Rimini concludes that "a court *may not* enjoin innocent infringement." Mot. at 4:23-5:6 (emphasis supplied). Rimini is mistaken. *See, e.g.*, *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1078-79 (N.D. Cal. 1998) (issuing injunction even assuming innocent infringement, and stating that "[i]nnocent intent generally is not a defense to copyright infringement, and injunctions may be issued without a showing of willful or deliberate infringement" (citing *Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 878 (3d Cir. 1982)). Rimini made this argument before (ECF No. 906 at 11:7-17, 17:17-18:2, 26:12-27:1), Oracle answered it (ECF No. 907 at 12:9-13:10), and the Court subsequently issued the injunction.

Rimini raises no new supporting argument, evidence or authority, and thus its recycled argument fails again for the same reason.[2]

### b. Monetary Damages Are Not an Adequate Remedy

Rimini also repeats its argument that because the jury elected to award Oracle $35 million in actual damages under 17 U.S.C. § 504(a)(1) using the hypothetical license model, Rimini was granted an *actual* license to continue its infringing conduct. Mot. at 5:7-19. Once again, Rimini asserted this argument before (ECF No. 906 at 14:25-15:24), Oracle demonstrated its legal and evidentiary nullity (ECF No. 907 at 9:20-10:7), and the Court explicitly rejected it. The Court found that "certain harms suffered by Oracle like lost market share and company goodwill are intangible injuries difficult to quantify and compensate" (ECF No. 1049 at 6:25-7:1, citing *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1154 (9th Cir. 2011)), which "supports Oracle's claim that monetary damages alone are insufficient to fairly and fully compensate it for defendants' conduct" (*id.* at 7:13-15). The Court further observed that "one of the most fundamental rights the holder of a copyright has is the right to exclude others, and this right has routinely been held difficult to compensate solely through monetary compensation." *Id.* at 7:13-18 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 395 (2006) (Roberts, C.J. concurring)). Rimini's motion does not address the Court's reasoning or raise any new arguments, evidence or law. Its argument fails for the same reasons as before.

### c. The Causal Nexus Between Rimini's Conduct and Oracle's Harm Is Clear

Rimini next argues that it will prevail on appeal because Oracle did not establish a "causal nexus" between Oracle's harm and Rimini's infringement. Rimini cites to its opposition to Oracle's motion for injunction and claims that "Oracle did not even attempt to satisfy the causal nexus requirement in this case." Mot. at 5:20-28. Not so. In fact, Oracle addressed this issue at length in its reply brief. ECF No. 907 at 8:1-9:19 & n.4. And the Court agreed with Oracle: "Here, the court finds that defendants' unlawful actions, to wit copyright infringement

---

[2] The Court also enjoined conduct that violated the California computer access laws, which required the jury to specifically find that Rimini and Ravin did not believe they acted within their authorization to access Oracle's systems. *E.g.*, ECF No. 880 at Nos. 47–49, 53–54.

and violations of the state computer access statutes, irreparably injured Oracle's business reputation and goodwill." ECF No. 1049 at 5:17-19. And: "Here, the court finds that Oracle has established that monetary damages alone are inadequate to compensate it for the losses suffered *because of* defendants." *Id.* at 6:24-25 (emphasis supplied). Again, Rimini does not address the Court's reasoning or raise any new supporting argument, evidence or case law. Its renewed argument therefore fails for the same reasons as before.

### d. The Terms of the Injunction Are Clear and Within the Scope of the Court's Findings

Rimini's fourth ground for its claim of likely success on the merits is its unfounded assertion that the terms of the injunction are vague and overbroad. As support, Rimini cites to its objections to Oracle's proposed injunction at ECF No. 1055-1. Mot. at 6:1-14. Oracle demonstrated at length that Rimini's objections were meritless (ECF No. 907 at 14:9-18:6; ECF No. 1056), and the Court granted Oracle's proposed injunction over Rimini's objections. ECF No. 1065.

Further, Rimini's claim that the terms of the injunction are vague and overbroad cannot be squared with its public representations as recently as two days ago that the injunction "does not prohibit Rimini Street's ongoing or future provision of support." Kennamer Decl., Ex. 2 (10/12/16 Press Release).

The terms and scope of the injunction have been thoroughly litigated; the Court already has considered and rejected the same arguments Rimini advances here.

### e. Rimini's Constitutional Challenge To California's Computer Access Statute is Unfounded

Rimini's final argument for likelihood of success is that California's computer access statute is unconstitutional on its face and as applied in this case. Mot. at 6:15-26. The argument is without merit and is based upon a distorted reading of the statute. Rimini was not liable under the statute "for a simple breach of website terms of use." *Id.* at 6:17. In fact, the jury instructions required a finding that, in knowingly accessing Oracle's computers and knowingly acting outside of their authorization, Rimini "caused [Oracle] to suffer damage or loss."

*E.g.*, ECF No. 880 (Final Jury Instr.) at No. 47.  The jury found Rimini and Seth Ravin liable for $14 million under that instruction.  ECF No. 896 (Verdict Form) at 10-11.

As with Rimini's other arguments, the parties have already briefed Rimini's argument that the California computer access statute is unconstitutional.  *See* ECF No. 913 at 18:27-23:9; ECF No. 957 at 23:6-25:16; ECF No. 976 at 9:23-12:15.  The Court rejected Rimini's argument, ECF No. 1041 at 17:7-20:16, and there is no basis to revisit that conclusion here.

*       *       *

None of Rimini's five arguments presents "serious legal questions."  Mot. at 6:27-28.  None presents the required "strong showing" for Rimini's likelihood of success on appeal.  *Nken*, 556 U.S. at 434.  Rather, Rimini's arguments merely rehash what the Court has already considered after extensive briefing, and rejected.  Rimini's stay request must be denied.

**2.     Rimini Has Failed to Show Irreparable Harm; Its Statements Establish the Opposite**

This Court already found that Rimini's long history of misconduct has irreparably harmed *Oracle*.  ECF No. 1049 at 5 ("Here, the court finds that defendants' unlawful actions, to wit copyright infringement and violations of the state computer access statutes, irreparably injured Oracle's business reputation and goodwill.").  It is bold indeed for Rimini to paint itself a victim.

In fact, Rimini's own statements to its customers and the general public establish that the injunction would *not* irreparably harm it.  For example, on September 22, 2016, Rimini told the public that "[s]ince Rimini Street had ceased said conduct by July 2014, there is no expected impact [from the injunction] on any current or future service offering, or on Rimini Street's current or future ability to service any of its clients."  Kennamer Decl., Ex. 1 (9/22/16 Press Release) (emphasis added).  Three weeks later, on October 12, Rimini publicized that "[the] injunction does not prohibit Rimini Street's ongoing or future provision of support."  *Id.*, Ex. 2 (10/12/16 Press Release).  Those statements to the public undermine Rimini's request for a stay based on its new claim that it *will* suffer irreparable harm from the injunction.  *See Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2013 WL 557102, *5 (N.D. Cal. 2013)

(denying request to stay injunction pending appeal finding no irreparable harm because infringer claimed to have "design-around" and asserted injunction would not disrupt business); *Muniauction, Inc. v. Thomson Corp.*, 2007 WL 2406950, at *1 (W.D. Pa. 2007) (denying motion to stay permanent injunction where defendants asserted it could use non-infringing prior art methods while it developed and implemented a non-infringing system).

Rimini previously made similar representations to the Court. As the Court found:

> [T]here is no evidence that Rimini would be harmed by an injunction that enjoins and restrains future copyright infringement or using the materials gained from its infringement because Rimini has already represented to the court that it has changed its business model and support services away from the infringing model in response to the court's orders on summary judgment.

ECF No. 1049 (9/21/16 Order) at 8:3-7. Rimini does not even attempt to address the Court's reasoning. *See* Mot. at 7:8-9:25. Instead, Rimini resorts—yet again—to its failed arguments that the terms of the injunction are vague, ambiguous, and overbroad. *Id.* at 7:27-9:25. Rimini even acknowledges—as it must—that it has objected to "the vague and ambiguous terms in Oracle's injunction on two separate occasions." *Id.* at 7:27-28. In granting the injunction, the Court has necessarily overruled Rimini's objections.

Rimini's speculation that Oracle *might* send letters to Rimini customers that *might* misrepresent the terms of the injunction (Mot. at 8:4-16) similarly provides no basis for any stay. Oracle has always accurately represented the Court's rulings in its communications with customers, and it will continue to do so. And while Rimini tries to conjure an "anti-competitive" threat based upon Oracle's correspondence quoting this Court's publicly filed rulings, Rimini's only competition law claims against Oracle were dismissed in both related actions. *See* ECF No. 111 at 6-9; *Rimini Street v. Oracle Int'l Corp.*, No. 2:14-cv-01699-LRH-PAL, ECF No. 90.

In the same vein, Rimini makes the baseless assertion that "this Court has entered an injunction that could—and, Oracle will argue, should—be construed as prohibiting the provision of third-party support." Mot. at 9:15-16. Oracle, of course, has never taken the position that all third-party support is illegal or that the injunction at issue here would prevent third-party support altogether. Rather, Oracle has sought to protect its intellectual property by preventing Rimini's

particular brand of infringing and illegal third-party support.  Rimini's speculative histrionics are, and the Court has found them to be, meritless.  *See Kalani v. Starbucks Corp.*, No. 13-CV-00734-LHK, 2016 WL 693251, at *5 (N.D. Cal. Feb. 22, 2016) ("conclusory assertions do not satisfy Defendant's burden to establish the possibility of irreparable harm").

Finally, Rimini claims, incorrectly, that "Oracle suggested at the [May 25, 2016 attorneys' fees and injunction] hearing that it would use the injunction to target what it referred to as 'borderline' infringing conduct that 'push[es] the envelope' and is 'close to the line.'"  Mot. at 8:17-19.  Oracle made no such suggestion; it was Rimini that introduced such speculation (ECF No. 1040 at 127).  Rather, Oracle stated that it sought attorneys' fees in part to deter Rimini from bad-faith litigation conduct (*id.* at 22:17-24:4, 24:12-24) such as the Court already has found:  "Here, the court finds that defendants' litigation position that it did not engage in copyright infringement was not an objectively reasonable position.  Rather, it was based on a clear misreading of Oracle's software licensing agreements and a conscious disregard for the manner that Rimini used and housed Oracle's copyrighted software programs . . . . ."  ECF No. 1049 at 15:8-11.

Rimini seeks to have it both ways on irreparable harm:  on the one hand, claiming without any support that it will suffer irreparable harm from the injunction, and on the other hand, making public pronouncements that it no longer infringes and thus that the injunction will cause no harm.  It refuses to explain to Oracle or the Court—as it must to obtain a stay—how the injunction irreparably harms its current business model.  Because Rimini's rehash of arguments does not come close to meeting its burden to show that it "more likely than not" will suffer "irreparable harm" if the injunction stands, the stay must be denied.  *Childs*, 2012 WL 12875370, at *3; *see also Shakopee Mdewakanton Sioux Cmty. v. FBCV, LLC*, No. 2:10-CV-10 JCM RJJ, 2011 WL 4904438, at *3 (D. Nev. Oct. 14, 2011) (denying emergency motion to stay permanent injunction pending appeal where defendants advanced only "vague and conclusory allegations of irreparable harm"; although defendants "strenuously argue that their very existence as a business is threatened, their moving papers do not contain specific allegations of irreparable injury").

### 3. If a Stay Is Granted, *Oracle* Will Be Harmed By Rimini's Continued Infringement

Rimini gives short shrift to the third factor—the harm to *Oracle* that will result from issuing a stay. Rimini baldly asserts that "Oracle *cannot* claim that it would be harmed absent a stay of the injunction because the undisputed evidence establishes that Rimini no longer engages in the conduct found to be infringing." Mot. at 10:5-6. This is wrong. Oracle has disputed and continues to dispute the existence of any evidence that Rimini has ceased its infringing conduct. Likewise, Oracle has steadfastly claimed that it is harmed by Rimini's continued infringement. Indeed, Oracle presented its claim in *Rimini II* as soon as the truth about Rimini's "new" processes became evident. *See Rimini Street v. Oracle Int'l Corp.*, No. 2:14-cv-01699-LRH-CWH, ECF No. 21 at 12, ¶ 53.

Rimini's empty assertion that it no longer infringes, and thus that Oracle cannot be harmed by a stay, also misapprehends and misrepresents the purpose of an injunction. An injunction gives the enjoining party an enforcement mechanism to prevent the offending party from continuing its unlawful conduct. *See Apple v. Psystar*, 673 F. Supp. 2d at 950 (permanent injunction's purpose is "'preven[ting] or restrain[ing]' further infringement of [Plaintiff's] copyrights and violations of the DMCA"). If, in fact, Rimini is no longer engaging in the enjoined conduct, it has no cause for concern. Rimini offers several unsupported arguments to try to undermine this basic point. None of them supports issuance of a stay.

First, it asserts that Oracle cannot "rely on Rimini's revised, *current* processes as a basis for harm because the legality of those processes has not been adjudicated and Oracle has repeatedly claimed that the legality of those processes will be litigated in *Rimini II*." Mot. at 10:14-17. As Rimini well knows, Rimini attempted to bring into evidence its "new" support processes in the *Rimini I* trial, and the Court rejected this attempt in order to allow the parties to bring that case to trial in a timely manner without prejudicing Oracle with untestable assertions about Rimini's "new" process. *See* ECF No. 508 (10/9/2014 Hrg. Tr.) at 6:13-23, 25:12-15; ECF No. 506 (minute order denying supplemental discovery). The pendency of *Rimini II* does not mitigate or lessen the harm to Oracle from practices barred by the injunction in *Rimini I*.

11
ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

1	Second, Rimini complains that the Court "made no finding that Oracle is suffering any
2	ongoing injury as a result of the conduct adjudicated in *Rimini I*." Mot. at 10:20-21. But, as
3	Rimini itself has conceded, Oracle only needed to establish "a real or immediate threat of
4	imminent harm in the future." ECF No. 906 at 9:10-11. And the Court assessed this risk in
5	finding in favor of a permanent injunction. *See* ECF No. 1049 at 6:14-20; *see also id.* at 5
6	("Here, the court finds that defendants' unlawful actions, to wit copyright infringement and
7	violations of the state computer access statutes, irreparably injured Oracle's business reputation
8	and goodwill.").
9	Third, Rimini claims that its alleged voluntary cessation of its infringing conduct
10	combined with its declaratory relief suit somehow exempts Rimini from an injunction, but it
11	cites no support for this unsupported claim. *Id.* at 10:28-11:3. The law is to the contrary, *see*
12	ECF No. 907 at 13, as the Court has found. ECF No. 1049 at 6. Rimini cannot immunize its
13	conduct from the reach of a court order simply by *claiming* that it has developed new, non-
14	infringing business practices—and regardless, "[a]n injunction remains appropriate to ensure that
15	the misconduct does not recur as soon as the case ends." *Metro-Goldwyn-Meyer Studios v.*
16	*Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (citation omitted).
17	Finally, Rimini argues—again—that Oracle's "delay" in seeking an injunction weighs
18	against Oracle. Mot. at 11:4-15. This simply recycles a meritless argument that Rimini
19	previously advanced, which the Court considered and rejected (ECF No. 906 at 11:27-12:15;
20	ECF No. 907 at 10:8-11:2).
21	\*     \*     \*
22	Considering Rimini's past conduct, the *risk* of ongoing harm to Oracle based upon
23	Rimini's continued infringement weighs against the issuance of any stay.

24	**4.	The Public Interest Favored the Injunction, and Now It Disfavors a Stay**

25	The Court already has determined that "issuing an injunction in this action 'ultimately
26	serves the purpose of enriching the general public through access to creative works' by giving
27	Oracle an incentive to continue to develop software for public use." ECF No. 1049 at 8:24-26
28

1   (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016)).  Taking Rimini at its
2   word that its new business model does not infringe, the Court reasoned that the public's interest
3   in competition does not suffer by issuance of the injunction.  *Id.* at 8:18-23.
4         In arguing for a stay, Rimini entirely ignores the Court's concerns for incentivizing the
5   creation of useful works.  Instead, Rimini first argues that the public interest favors a stay for the
6   sake of judicial efficiency, based on the idea that enforcement proceedings would unduly burden
7   the Court.  Mot. at 11:17-12:4.  That argument is speculative, but regardless, enforcing the
8   injunction favors the public interest by serving the goal of the Copyright Act to incentivize the
9   creation of useful works.
10        Rimini next raises a competition red herring, but instead of confirming that it has cleaned
11  up its business model, Rimini points to alleged flaws in the injunction that, at a minimum,
12  suggest that its business may still violate the injunction.  *Id.* at 12:5-23.
13        In short, Rimini (1) ignores Court's principal concern for the public interest—
14  incentivizing the creation of useful works, (2) raises the judicial economy issue but disregards
15  the fact that enforcement proceedings are appropriate, and (3) raises an issue that has no bearing
16  either way on the public interest.  Like the other factors, the public interest weighs decisively
17  against staying the injunction.

18      **E.**    **The Court Should Enforce Its Carefully Considered Injunction Immediately**
19        Rimini's request for a temporary stay of sixty days also should be rejected.  "[L]ogic
20  dictates that a court will seldom issue an order or judgment and then turn around and grant a stay
21  pending appeal, finding, in part, that the party seeking the stay is likely to prevail on appeal, *i.e.*
22  that it is likely that the court erred in issuing the underlying order or judgment."  *Millennium*
23  *Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.) Thayer Rd.*, 812 F. Supp. 2d
24  273, 275 (W.D.N.Y. 2011) (internal brackets and citation omitted); *see also Silverstein v.*
25  *Penguin Putnam, Inc.*, No. 01 CIV.309 JFK, 2003 WL 21361734, at *3 (S.D.N.Y. June 12,
26  2003) (denying motion to stay permanent injunction where court had already "carefully
27  considered" parties' arguments on the injunction, and "[t]he decision was not arbitrary nor did
28  the court abuse its discretion in entering the injunction").

While Rimini asserts that courts routinely grant requests to stay an injunction while the moving party seeks a stay from the appellate court, the law is clear that, where, as here, the movant has failed to satisfy the four-factor *Nken* test, no stay of any kind is warranted.[3] "Because the burden of meeting the standard [for a stay] is a heavy one, more commonly stay requests will be found not to meet the standard and will be denied." Injunction Pending Appeal, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.) (citing thirty cases denying motions to stay an injunction pending appeal).

Indeed, "[t]o allow defendant to continue to profit and benefit from its infringing work would violate the spirit and function of the copyright law." *Silverstein*, 2003 WL 21361734, at *3. This is especially true where the defendant has already been involved in prior cases involving claims of copyright infringement and, therefore, should be "aware of the risk that its method of business could constitute a violation of the intellectual property laws and the consequences of any such violation." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, No. 1:04CV00977, 2007 WL 4262725, at *1 (M.D.N.C. Nov. 30, 2007) (denying motion to stay permanent injunction).

---

[3] *See, e.g.*, *Fox Television Stations, Inc. v. FilmOn X, LLC*, 968 F. Supp. 2d 134, 139 (D.D.C. 2013) (denying motion to stay injunction where copyright infringer "has not shown 'either a high probability of success and some injury, or vice versa'"); *Marshak v. Reed*, 199 F.R.D. 110, 111 (E.D.N.Y. 2001) (denying motion to stay injunction in trademark infringement case); *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Robinson*, 123 F. Supp. 2d 965, 968-976 (W.D.N.C. 2000), *aff'd sub nom. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) (same); *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, 834 F. Supp. 2d 29, 31 (D. Mass. 2011) (denying motion to stay injunction in patent infringement case); *Mylan Labs., Inc. v. Leavitt*, 495 F. Supp. 2d 43, 47-49 (D.D.C. 2007) (same); *Lincoln Nat. Life Ins. Co. v. Transamerica Life Ins. Co.*, No. 2009-1403, 2009 WL 2903594, at *1 (Fed. Cir. Sept. 1, 2009) (same); *Mytee Products, Inc. v. Harris Research, Inc.*, 2010 WL 3724587, *1 (Fed. Cir. 2010) (same); *Aug. Tech. Corp. v. Camtek, Ltd.*, 395 F. App'x 692 (Fed. Cir. 2010) (same); *iLight Techs., Inc. v. Fallon Luminous Prod. Corp.*, No. 2009-1342, 2009 WL 1939187, at *1 (Fed. Cir. July 1, 2009) (same).

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

## III. CONCLUSION

For these reasons, Oracle respectfully requests that the Court deny Rimini's motion in its entirety.

Dated: October 14, 2016

MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Thomas S. Hixson
Thomas S. Hixson
Attorneys for Plaintiffs
Oracle USA, Inc.,
Oracle America, Inc. and
Oracle International Corporation

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

## CERTIFICATE OF SERVICE

I certify that on October 14, 2016, I electronically transmitted the foregoing **ORACLE'S OPPOSITION TO RIMINI'S EMERGENCY MOTION (1) TO STAY ENFORCEMENT OF PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY (2) FOR A TEMPORARY SIXTY-DAY STAY** to the Clerk's Office using the Electronic Filing System pursuant to Local Rules Section 1C.

Dated: October 14, 2016

Morgan, Lewis & Bockius LLP

By: /s/ Thomas Hixson
Thomas Hixson
Attorneys for Plaintiffs
Oracle USA, Inc.,
Oracle America, Inc. and
Oracle International Corporation