GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

HOWARD & HOWARD
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wallen@howardandhoward.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>              Plaintiffs,<br><br>        v.<br><br>RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual,<br><br>              Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**EMERGENCY MOTION**<br><br>**DEFENDANTS RIMINI STREET, INC.'S AND SETH RAVIN'S REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION (1) TO STAY ENFORCEMENT OF PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY (2) FOR A TEMPORARY SIXTY-DAY STAY**<br><br>Judge:        Hon. Larry R. Hicks |

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 2

    A.    All Four Traditional Factors Weigh in Favor of a Stay Pending Appeal...................... 2

        1.    Rimini Is Substantially Likely to Prevail on Appeal ....................................... 2

        2.    Rimini Would Suffer Irreparable Harm Absent a Stay .................................. 3

        3.    Oracle Will Not Be Harmed By a Stay ................................................. 5

        4.    The Public Interest Favors a Stay ...................................................... 7

    B.    In the Alternative, the Court Should Enter a Temporary Sixty-Day Stay ................... 8

III.    CONCLUSION................................................................................................ 10

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Campbell v. Nat'l Passenger R.R. Corp.*,
2009 WL 4546673 (N.D. Cal. Nov. 30, 2009)...............................................................................9

*Chamber of Commerce of U.S. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010)........................................................................................................4

*Condon v. Haley*,
21 F. Supp. 3d 572 (D.S.C. 2014)..................................................................................................9

*Conservation Cong. v. U.S. Forest Serv.*,
2012 WL 3150307 (E.D. Cal. Aug. 1, 2012) .................................................................................9

*Elliot v. Williams*,
2011 WL 5080169 (D. Nev. Oct. 25, 2011) ..................................................................................9

*Extreme Networks, Inc. v. Enterasys Networks, Inc.*,
2009 WL 679602 (W.D. Wis. Mar. 16, 2009) ...............................................................................3

*In re Hayes Microcomputer Prods., Inc. Patent Litig.*,
766 F. Supp. 818 (N.D. Cal. 1991) ............................................................................................3, 6

*Iowa Utils. Bd. v. FCC*,
109 F.3d 418 (8th Cir. 1996)..........................................................................................................4

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012).........................................................................................1, 2, 3, 5

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) (per curiam)....................................................................................2

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
2010 WL 2522428 (E.D. Tex. June 18, 2010)...............................................................................3

*Texas v. U.S. Envtl. Prot. Agency*,
829 F.3d 405 (5th Cir. 2016)..........................................................................................................4

### Statutes

28 U.S.C. § 1292 ........................................................................................................................1, 7

### Rules

Fed. R. App. P. 8.............................................................................................................................8

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

1

## I.     INTRODUCTION

2      Rimini Street, Inc. and Seth Ravin ("Rimini") identified in their motion significant issues that

3  they intend to raise on appeal from the permanent injunction.  While the Court disagreed with some of

4  those positions and declined to address others in ordering and entering the injunction, Federal Rule of

5  Civil Procedure 62 "does not require [that Rimini] . . . show that it is more likely than not that [it] . . .

6  will win on the merits" to secure a stay of enforcement; rather, a stay is warranted where there are

7  "serious legal questions" on appeal.  *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).  Rimini's

8  challenge to the permanent injunction indisputably presents a number of serious legal questions for the

9  Ninth Circuit to resolve.  Moreover, Rimini will suffer irreparable harm if the injunction remains in

10 force during the appeal, whereas Oracle would not be harmed by a stay.  Accordingly, the Court should

11 grant Rimini's motion and order a stay.

12      Oracle's argument in response largely boils down to the simplistic proposition that because the

13 Court already found that an injunction was warranted, a stay of that injunction is necessarily

14 unwarranted.  On that logic, a stay of injunction would never issue (and Federal Rule of Civil Procedure

15 62, Federal Rule of Appellate Procedure 8, and 28 U.S.C. § 1292 would all be rendered nugatory),

16 because the very existence of the injunction would justify its immediate enforcement.  Congress and

17 the courts, however, disagree with Oracle; and district courts regularly stay enforcement of injunctions

18 even though they may disagree with the enjoined party's position on the merits.

19      Oracle also advances the false dichotomy that because Rimini *can* continue to support its clients

20 even if the injunction is enforced, the injunction *will not* cause Rimini irreparable harm.  What Oracle

21 refuses to acknowledge is that the injunction Oracle drafted, and the Court adopted, goes far beyond

22 the practices adjudicated at summary judgment and trial; indeed, the injunction extends to practices

23 (such as accessing source code) that are not even regulated by the Copyright Act.  Accordingly, even

24 though Rimini's *current* processes have never been adjudged infringing—because Oracle successfully

25 kept them out of the trial in this case—Rimini will be forced to *further* modify those processes in a

26 good-faith attempt to comply with the vague and overbroad order of injunction, and those further

27 modifications will cost millions of dollars that Rimini will never recoup even if it prevails on appeal.

28 In addition, the ambiguities in the injunction's terms creates the very real probability that Oracle will

1   use the injunction to launch serial contempt proceedings, a point Oracle does not dispute in its

2   opposition, and which will further overburden the Court—and Rimini—with needless and preventable

3   litigation.  These injuries would all flow directly from enforcement of the injunction; they are all

4   irreparable; and they are more than sufficient, independently and collectively, to warrant a stay pending

5   appeal.

6                                    **II.    ARGUMENT**

7          Rimini respectfully requests that the Court (A) stay enforcement of the permanent injunction

8   until after the Ninth Circuit issues its mandate; or, in the alternative, (B) temporarily stay enforcement

9   of the injunction for sixty days so that Rimini may seek a stay from the Ninth Circuit.[1]

10  **A.    All Four Traditional Factors Weigh in Favor of a Stay Pending Appeal**

11         Because all four traditional factors favor granting a stay, Rimini's motion should be granted.

12  *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (per curiam) ("(1) whether the stay applicant

13  has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

14  irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

15  parties interested in the proceeding; and (4) where the public interest lies").

16                **1.    Rimini Is Substantially Likely to Prevail on Appeal**

17         Rimini set forth multiple grounds on which there is a "substantial case for relief on the merits."

18  *Lair*, 697 F.3d at 1204.  Oracle's argument that Rimini's motion "fails at the outset" because Rimini

19  "merely recit[es] already rejected arguments" (Dkt. 1073 at 4–5), reflects a fundamental

20  misunderstanding of the relevant stay standard.  It is certainly true that Rimini intends to ask the Ninth

21  Circuit to resolve a number of arguments that this Court previously rejected or ignored—were it

22  otherwise, Oracle would surely interpose a waiver objection.  Rimini is *not* asking this Court to

23  reconsider any of its rulings, and thus does not seek (as Oracle suggests) a "second bite at the

24  . . . injunction apple." Dkt. 1073 at 4.  Rather, the time has come for this case to move out of this Court

25

26  _____

27  [1]  Oracle devotes nearly two pages of its brief to arguing that Rimini's motion should be denied because
    Rimini supposedly did not comply with the local rules governing emergency motions.  Dkt. 1073 at 2–
    3.  That argument has no merit, but in any case was rendered moot by the Court's order entering an
28  emergency briefing schedule and imposing a temporary stay pending resolution of Rimini's motion.
    Dkt. 1072.  Therefore Rimini will focus herein on the substance of its motion.

1  and into the Ninth Circuit, and the question in the context of a stay motion is whether those arguments,

2  though rejected by this Court, nonetheless raise serious legal questions.

3          Given that no court in any jurisdiction has ever entered a permanent injunction in circumstances

4  like these, it cannot reasonably be disputed that the appeal presents serious legal questions.  Those

5  questions will include, among others, whether an innocent infringer can be enjoined; whether monetary

6  relief is adequate in light of the jury's verdict; whether Oracle's failure to establish a "causal nexus"

7  precludes an injunction; whether the injunction actually entered is both impermissibly vague and

8  overbroad; and other issues.  In response, Oracle simply reiterates its position that Rimini's arguments

9  are wrong.  Dkt. 1073 at 5–8.  But that is not the question in the context of this stay motion.  As binding

10  Ninth Circuit law explains, and which Oracle ignores, "this standard does not require [that Rimini] . .

11  . show that it is more likely than not that [it] . . . will win on the merits"; rather, this factor weighs in

12  favor of a stay where there are "serious legal questions" on appeal.  *Lair*, 697 F.3d at 1204.

13          District courts routinely grant motions to stay injunctions that involve complex or novel issues,

14  even while remaining convinced that an injunction is warranted.  *See*, *e.g.*, *Smith & Nephew, Inc. v.*

15  *Arthrex, Inc.*, 2010 WL 2522428, at *5 (E.D. Tex. June 18, 2010) (holding that while a permanent

16  injunction may have been warranted, this "does not preclude a granting of a stay of that injunction

17  pending appeal as both issues require different analyses"); *Extreme Networks, Inc. v. Enterasys*

18  *Networks, Inc.*, 2009 WL 679602, at *4 (W.D. Wis. Mar. 16, 2009) (granting stay of injunction even

19  though court "disagree[d] with defendant's challenges to the jury's verdict," because "the court of

20  appeals may see things differently"); *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 766 F.

21  Supp. 818, 823 (N.D. Cal. 1991) (granting *willful* infringer's request to stay permanent injunction even

22  though it found defendants' likely success on appeal "doubtful," because appeal raised serious legal

23  questions).  The same approach is warranted here.  The unprecedented injunction and the multiple

24  substantial challenges that Rimini will present on appeal means that there is a "substantial case for

25  relief on the merits," easily satisfying this element of the stay standard.

26          **2.      Rimini Would Suffer Irreparable Harm Absent a Stay**

27          Rimini also demonstrated that the second factor favors a stay because Rimini would suffer

28  several types of irreparable harm absent a stay.  Dkt. 1069 at 7–9.  Oracle's response to this factor is

1   premised on the false dichotomy that because Rimini has assured its clients it can continue to provide

2   enterprise software support even if the injunction goes into effect, *therefore* it will not suffer irreparable

3   harm.   Dkt. 1073 at 8–9.   But that response is utterly illogical, because an injunction can inflict

4   irreparable harm even without the extreme result of driving its target out of business.   This injunction

5   would cause irreparable harm in the form of millions of dollars of additional, unrecoverable costs to

6   Rimini.

7          Indeed, good-faith compliance with the injunction would require Rimini to modify its processes

8   *once again* and at substantial expense, even though Rimini maintains that its current processes are

9   entirely lawful and consistent with this Court's summary judgment rulings and trial verdict.   *See*

10  Dkt. 1069 at 7–9; Slepko Decl. ¶¶ 4–5.  If the Ninth Circuit concludes that no injunction is warranted,

11  or that the injunction as entered is unduly vague under Federal Rule of Civil Procedure 65 because its

12  terms cannot be understood and applied by an ordinary person, or overbroad because it prohibits lawful

13  and unadjudicated conduct, Rimini would not be able to recover the substantial additional costs that

14  would be required in order to comply with the injunction prior to the Ninth Circuit's ruling.   Contrary

15  to Oracle's suggestion, none of Rimini's statements or letters before or after the Court entered the

16  injunction can be read to suggest that the injunction does not cause Rimini harm.   To the contrary,

17  Rimini would be required to expend significant resources in order to provide enterprise software

18  support services in the manner required by the injunction. *See Id.* ¶ 5.

19          Forcing Rimini to spend millions of dollars that Oracle will never refund is by definition an

20  irreparable injury.  *See Texas v. U.S. Envtl. Prot. Agency*, 829 F.3d 405, 434 (5th Cir. 2016) ("[O]ur

21  sister circuits categorize financial losses as irreparable injury where no adequate compensatory or other

22  corrective relief will be available at a later date, in the ordinary course of litigation") (internal quotation

23  marks omitted); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010)

24  ("Imposition of monetary damages that cannot later be recovered . . . constitutes irreparable injury.");

25  *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of unrecoverable economic

26  loss . . . qualif[ies] as irreparable harm.").  The undisputed evidence establishes that the injunction will

27  impose this economic consequence on Rimini, and Oracle will not repay these expenditures if and

28

1    when the injunction is reversed or vacated on appeal.  Therefore, enforcement of the injunction will

2    impose irreparable harm on Rimini.

3         The scope of the injunction would also create a zone of uncertainty that will impose additional

4    costs, some unquantifiable, on Rimini.  The injunction can be read to reach conduct that was not

5    adjudicated in the summary judgment orders or at trial, and even some conduct that is not even

6    regulated by the Copyright Act.  For example, neither the Copyright Act nor Oracle's licenses (let alone

7    each and every one of its varying licenses) prohibits "access or use" of source code, or the "use" of an

8    environment for the "benefit" of another licensee (*see* Dkt. 1055-1), yet the injunction contains those

9    prohibitions.  Rimini has consistently objected to the vagueness and overbreadth of Oracle's proposed

10   injunction, but the Court adopted it—verbatim—anyway.  (By contrast, Rimini's proposed injunction

11   accurately described the conduct adjudicated as infringing.  *See* Dkt. 1055-2.)

12        Oracle's pronouncement that "[i]f, as Rimini has continually insisted, it no longer infringes,

13   then it will suffer no harm from the Court's injunction and has nothing to fear" (Dkt. 1073 at 1) is more

14   sophistry.  Oracle has admitted that it intends to use this injunction to police lawful conduct (Dkt. 1040

15   at 23:4–9, 24:16–24), and the ambiguities in the injunction could have a chilling effect on Rimini's

16   business. *See Lair*, 697 F.3d at 1215 (irreparable harm exists where permanent injunction might cause

17   "untold, irreversible consequences" for enjoined party).  Oracle attempts to backtrack from its own

18   counsel's words that it will pursue Rimini for "borderline" conduct that is "close to the line" and

19   "push[es] the envelope," but Oracle does not deny that it will, as it has previously stated, initiate

20   contempt proceedings on the basis of conduct that has not previously been adjudicated unlawful,

21   including conduct that is the subject of pending litigation in *Rimini II*.  Such unnecessary proceedings

22   would impose yet another form of irremediable harm on Rimini.

23        Rimini will suffer irreparable harm if the injunction is not stayed pending appeal, and the second

24   factor therefore weighs strongly in favor of a stay.

25   **3.    Oracle Will Not Be Harmed By a Stay**

26        The third factor weighs in favor of a stay because Oracle will suffer no harm if a stay is granted.

27   In its response, Oracle states that it has "steadfastly *claimed* that it is harmed by Rimini's continued

28   infringement" (Dkt. 1073 at 11 (emphasis added)), but Oracle has presented *no evidence* in support of

1    this "claim."  Nor could it.  The undisputed evidence and the indisputable record demonstrates that

2    Rimini has discontinued all the processes found infringing in *Rimini I*.  Dkts. 905-1 (Benge Decl.) ¶¶ 3–

3    10, 905-2 (Mackereth Decl.) ¶¶ 4–11, 905-3 (Miller Decl.) ¶¶ 3–6, 905-4 (Phung Decl.) ¶¶ 3–10, 905-

4    5 (Teegarden Decl.) ¶¶ 3–6.  Oracle not only failed to refute this evidence, it refuses to acknowledge it

5    and pretends it does not exist, arguing, without citing evidence, that Rimini is "continuing its unlawful

6    conduct."  Dkt. 1073 at 11.  This Court, however, has recognized that Rimini has substantiated its

7    allegations of changed processes.  Dkt 1049 at 8.  The lawfulness of those processes should be resolved

8    by the Court and jury in *Rimini II*, not in the context of a contempt proceeding.[2]

9         It is Oracle, not Rimini that is attempting to "have it both ways."  Dkt. 1073 at 10.  Oracle

10   successfully convinced the Court (against Rimini's objection) to keep evidence of Rimini's current

11   processes out of this lawsuit.  *See* Dkt. 1069 at 2.  Now, at the permanent injunction stage, Oracle

12   finally *admits* that the harm it claims to suffer results from the processes at issue in *Rimini II*, on which

13   there is *no evidence in this record*.  *See* Dkt. 1073 at 11 ("Oracle presented its claim in *Rimini II* as

14   soon as the truth about Rimini's 'new' processes became evident.").  But any harm Oracle purports to

15   suffer from Rimini's current processes is nothing more than fair competition, as there is no evidence

16   that the processes are unlawful.  It is true, supported by evidence, and undisputed that Rimini has

17   changed its processes.  It has not yet been determined (and is therefore at this point just alleged) whether

18   those new processes infringe.  Rimini maintains they do not, and the undisputed evidence in this case

19   shows as much; but Rimini recognizes that this is properly the subject of the second lawsuit.

20        Further, Oracle does not even *attempt* to address what harm it will suffer if the injunction is

21   stayed during the pendency of the *appeal*, which is, of course, the proper inquiry.  *See In re Hayes*

22   *Microcomputer Prods., Inc.*, 766 F. Supp. at 823 (granting *willful* infringer's request to stay permanent

23   injunction because plaintiff failed to demonstrate it would "be irreparably injured during the period in

24   _____

25   [2]  Oracle's baseless contention that Rimini's opposition to the injunction "suggest[s] that its business
     may still violate the injunction" (Dkt. 1073 at 13), is false.  Rimini intends to comply with the injunction

26   if it is not stayed, but, as explained above, at a cost of millions of dollars.  *See* Slepko Decl. ¶¶ 4–5.
     Likewise, Oracle's accusation that Rimini did not "confirm[] that it has cleaned up its business model"

27   (Dkt. 1073 at 13), is false.  Rimini presented uncontroverted evidence that it has revised its business
     model and that it no longer engaged in the processes found to be infringing.  Dkts. 905-1 (Benge Decl.)

28   ¶¶ 3–10, 905-2 (Mackereth Decl.) ¶¶ 4–11, 905-3 (Miller Decl.) ¶¶ 3–6, 905-4 (Phung Decl.) ¶¶ 3–10,
     905-5 (Teegarden Decl.) ¶¶ 3–6.  Oracle not only failed to refute that evidence, it has ignored it.

1   which the appeal will be pending").   Oracle and Rimini have been competing since 2006 with no

2   injunction in place.  This lawsuit continued for another five years before trial with no injunction in

3   place.  The motion for an injunction was pending for an additional year with no injunction in place.

4   Another month has passed since the September 21 order authorizing an injunction.  During all this

5   time, Oracle has had ample opportunity to present evidence of irreparable harm that it will suffer from

6   a temporary stay of the injunction, but, not surprisingly, it has adduced zero evidence.  That is because

7   a stay of the injunction will merely maintain the status quo while the Ninth Circuit resolves the appeal.

8   Under these circumstances, Oracle cannot claim, and it surely has not proved, that it will be harmed by

9   a stay.

10          **4.      The Public Interest Favors a Stay**

11          A stay is also in the public interest because it would allow the appellate court to determine

12   whether the injunction is proper (or whether, as Rimini argues, the injunction prohibits lawful conduct,

13   conduct that has not been adjudicated, and conduct unrelated to the Copyright Act), (i) *before* this Court

14   is burdened by additional proceedings, and (ii) *before* Oracle uses the overbroad and vague injunction

15   to pursue serial litigation/contempt proceedings for anticompetitive purposes.  Oracle does not deny

16   that it intends to enforce the injunction in this way.  Instead, Oracle tries to dodge the issue by arguing

17   that because the public interest favored entry of the injunction in the first place, the public interest

18   therefore *also* favors denying a motion to stay.  Dkt. 1073 at 12.  But if that were the case, then a stay

19   would *never* issue.  Indeed, the question is not whether the public interest favors an injunction at all;

20   rather, the question is whether the public interest favors a stay until the Court of Appeal can evaluate

21   the injunction.  Those are distinct questions—as 28 U.S.C. § 1292(a)(1) recognizes in authorizing an

22   interlocutory appeal of the injunction, as Federal Rules of Civil Procedure 62 recognizes in authorizing

23   the district court to enter a stay pending that appeal, and as Federal Rule of Appellate Procedure 8

24   recognizes in authorizing the Ninth Circuit to grant a stay pending the appeal.

25          Furthermore, Oracle has also sent scores of threatening and anticompetitive letters to Rimini's

26   clients (*see*, *e.g.*, Perry Decl. Exs. A, B), which do *not* "accurately represent[] the Court's rulings" as

27   Oracle blithely contends (Dkt. 1073 at 9; *see* Dkt. 1069 at 8 (citing Dkt. 507 at 3)); these letters,

28   distributed regularly for months, are not "speculation," but fact.  This is in keeping with Oracle's

1    continued attempt to interfere with Rimini's business, including through this lawsuit, and it will wield

2    the injunction as an additional weapon in support of that effort.  Again, Rimini recognizes that this

3    Court may not agree with this characterization of Oracle's actions, having (Rimini respectfully submits,

4    erroneously) dismissed Rimini's copyright misuse defense.  *See* Dkts. 111, 723, 861.  Rimini is not

5    asking this Court to revisit that ruling, but rather to consider whether this is a serious issue that ought

6    to be resolved by the Ninth Circuit before the injunction is enforced.  It cannot reasonably be contested

7    that the public interest favors competition, or that a stay pending appeal will foster the continued

8    competition between Oracle and Rimini in aftermarket support for Oracle products—a market in which

9    Oracle has a dominant market position, but no exclusive rights.

10   **B.       In the Alternative, the Court Should Enter a Temporary Sixty-Day Stay**

11          Even if the Court is not inclined to grant Rimini's request for a stay pending resolution of the

12   appeal, it should grant a temporary sixty-day stay so that Rimini may seek a stay from the Ninth Circuit.

13          Rimini is required to first seek a stay of the injunction in this Court before requesting a stay of

14   the injunction from the Ninth Circuit.  *See* Fed. R. App. P. 8(a)(2) (motion for stay in Court of Appeals

15   must "state that, a motion having been made, the district court denied the motion or failed to afford the

16   relief requested").  If this Court were to conclude that a stay is not warranted pending the outcome of

17   Rimini's appeal, Rimini intends to immediately file an emergency motion for a stay of the injunction

18   in the Ninth Circuit, along with a request for a temporary stay in that Court.  The sixty-day stay Rimini

19   seeks from this Court would simply give Rimini time to file that motion and time for the Ninth Circuit

20   to rule on Rimini's request on its merits.

21          In response to Rimini's motion, this Court temporarily stayed enforcement of the injunction,

22   making no findings on any legal or factual issues, until the Court has time to rule on Rimini's request

23   for a stay.  Dkt. 1072 ("Further, for the benefit of the parties, and with no findings of any legal or

24   factual issues, the court shall stay the underlying permanent injunction until the court has addressed

25   defendants' motion.").  That temporary stay gives the parties the opportunity to set forth their positions,

26   and the Court the opportunity to rule on those positions, before Rimini is irreparably harmed by the

27   injunction.  Even if this Court ultimately finds that a stay pending appeal is not warranted here, it should

28   give the Ninth Circuit that same opportunity with a temporary stay.  In other words, there is no reason

EMERGENCY MOTION FOR STAY OF PERMANENT INJUNCTION

1   to issue a temporary stay to allow *this* Court to make its decision, but not to issue a temporary stay to

2   allow the Ninth Circuit to make *its* decision.  The Court could do so again without making any legal or

3   factual findings, simply to maintain the status quo.

4         Oracle's arguments to the contrary once again miss the point, rely on inapposite cases, and

5   invite this Court to interfere with the appeal proceeding in an orderly fashion.  Oracle's argument boils

6   down to the flawed notion that if this Court agrees with Oracle that a stay pending appeal is not

7   warranted, *ipso facto*, this Court has concluded that a *temporary* stay is not warranted.  But not a single

8   case Oracle cites supports conflating the two separate questions of (i) whether the district court agrees

9   that a stay pending appeal is warranted, and (ii) whether the district court agrees that a temporary stay

10  to allow the *Ninth Circuit* to decide whether a stay pending appeal is warranted.  In fact, although

11  Oracle cites twelve cases in this section of its response, none of those cases even involve a temporary

12  stay at all.

13        Further, in making this argument, Oracle completely ignores the cases Rimini cited—including

14  cases in this district—demonstrating that *temporary* stays are regularly granted *even where* the district

15  court concludes that a stay pending appeal is *not* warranted.  *See*, *e.g.*, *Elliot v. Williams*, 2011 WL

16  5080169, at *10 (D. Nev. Oct. 25, 2011) ("IT IS FURTHER ORDERED that pursuant to Federal Rule

17  of Appellate Procedure 8(a)(1), the September 23, 2011 order of this Court, and the accompanying

18  judgment (ECF Nos. 45, 46), are STAYED for SIXTY (60) DAYS from the date this order is filed to

19  allow respondents time to seek a stay pending appeal from the Ninth Circuit Court of Appeals");

20  *Conservation Cong. v. U.S. Forest Serv.*, 2012 WL 3150307, at *2 (E.D. Cal. Aug. 1, 2012) ("However,

21  the court grants Plaintiff a limited injunction of twenty-one (21) days to seek an injunction pending

22  appeal from the Ninth Circuit, pursuant to Federal Rule of Appellate Procedure 8(a)(2)"); *Campbell v.*

23  *Nat'l Passenger R.R. Corp.*, 2009 WL 4546673, at *2 (N.D. Cal. Nov. 30, 2009) ("Defendant must

24  comply with the Court's injunction (Docket No. 280) within ten days of the date of this order.  If

25  Defendant intends to seek a stay from the Ninth Circuit, it must do so within this period of time.");

26  *Condon v. Haley*, 21 F. Supp. 3d 572, 588 (D.S.C. 2014) (denying stay pending appeal but granting

27  temporary stay "to allow the Fourth Circuit an opportunity" to consider a "petition to stay pending

28  appeal in an orderly and reasonable fashion").

1    In short, Oracle cannot and does not refute the fact that it makes eminent sense for the courts

2  (both this Court and the Ninth Circuit) to rule on the question of whether a stay of the injunction

3  pending the appeal is appropriate before the injunction goes into effect, a commonsense notion that this

4  Court's temporary stay has already recognized.  Dkt. 1072.

5                                         **III.      CONCLUSION**

6    For these reasons, Rimini respectfully requests that the Court (A) stay enforcement of the

7  permanent injunction until the Ninth Circuit issues its mandate, or, in the alternative, (B) temporarily

8  stay enforcement of the injunction for sixty days so that Rimini has an opportunity to seek a stay from

9  the Ninth Circuit.

10  DATED:          October 19, 2016                GIBSON, DUNN & CRUTCHER LLP

11

12                                                 By:   *Mark A. Perry*
                                                          Mark A. Perry

13
                                                   *Attorneys for Defendants*
14                                                 *Rimini Street, Inc. and Seth Ravin*

15

16

17

18

19

20

21

22

23

24

25

26

27

28