1  BOIES, SCHILLER & FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
2  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
3  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
4  rpocker@bsfllp.com

5  BOIES, SCHILLER & FLEXNER LLP
   WILLIAM ISAACSON (pro hac vice)
6  KAREN DUNN (pro hac vice)
   5301 Wisconsin Ave, NW
7  Washington, DC 20015
   Telephone: (202) 237-2727
8  Facsimile: (202) 237-6131
   wisaacson@bsfllp.com
9  kdunn@bsfllp.com

10 BOIES, SCHILLER & FLEXNER LLP
   STEVEN C. HOLTZMAN (pro hac vice)
11 1999 Harrison Street, Suite 900
   Oakland, CA 94612
12 Telephone: (510) 874-1000
   Facsimile: (510) 874-1460
13 sholtzman@bsfllp.com

14

15 Attorneys for Plaintiffs
   Oracle USA, Inc., Oracle America, Inc., and
16 Oracle International Corp.

   MORGAN, LEWIS & BOCKIUS LLP
   THOMAS S. HIXSON (pro hac vice)
   One Market, Spear Street Tower
   San Francisco, CA  94105
   Telephone:  415.442.1000
   Facsimile:  415.442.1001
   thomas.hixson@morganlewis.com

   DORIAN DALEY (pro hac vice)
   DEBORAH K. MILLER (pro hac vice)
   JAMES C. MAROULIS (pro hac vice)
   ORACLE CORPORATION
   500 Oracle Parkway, M/S 5op7
   Redwood City, CA 94070
   Telephone:  650.506.4846
   Facsimile:  650.506.7114
   dorian.daley@oracle.com
   deborah.miller@oracle.com
   jim.maroulis@oracle.com

17                    UNITED STATES DISTRICT COURT

18                         DISTRICT OF NEVADA

19  ORACLE USA, INC., a Colorado corporation;          Case No. 2:10-cv-0106-LRH-VCF
    ORACLE AMERICA, INC., a Delaware
20  corporation; and ORACLE INTERNATIONAL              **ORACLE'S SURREPLY IN**
    CORPORATION, a California corporation,             **OPPOSITION TO RIMINI'S**
21                                                     **MOTION TO STAY**
                  Plaintiffs,                          **ENFORCEMENT OF PERMANENT**
22                                                     **INJUNCTION**
           v.
23                                                     Judge: Hon. Larry R. Hicks
    RIMINI STREET, INC., a Nevada corporation;
24  AND SETH RAVIN, an individual,
                                                       **_PUBLIC REDACTED VERSION_**
25                Defendants.

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    Introduction ................................................................................................. 1

4    II.   Argument ..................................................................................................... 2

5          A.    Rimini Misstates the Applicable Legal Standard for Obtaining a Stay ......... 2

6          B.    Rimini Does Not and Cannot Show Likelihood of Success on the
                 Merits. ........................................................................................................ 2

7          C.    Rimini's New Claim of Compliance Cost Does Not Establish Likely
                 Irreparable Harm. ....................................................................................... 3

8                1.    As a Legal Matter, Unrecoverable Costs of Compliance Do Not
                       Constitute Irreparable Harm. .......................................................... 4

9                2.    As a Factual Matter, Rimini's New Evidence Does Not
                       Establish That It Is More Likely Than Not to Suffer

10                     Irreparable Harm. ........................................................................... 6

11         D.    Nothing In Rimini's Reply Refutes the Court's Finding of Significant
                 Harm to Oracle ........................................................................................... 8

12         E.    Denying Rimini's Requested Stay – of Any Length – Is in the Public
                 Interest. ...................................................................................................... 9

13   III.  Conclusion ................................................................................................. 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.O. Smith Corp. v. FTC*,
  530 F.2d 515 (3d Cir. 1976) ................................................................................ 6

*Am. Hosp. Ass'n v. Harris*,
  625 F.2d 1328 (7th Cir. 1980) ............................................................................. 6

*Amwest Sur. Ins. Co. v. Reno*,
  52 F.3d 332 (9th Cir. 1995) ................................................................................. 4

*Apple Comput. v. Franklin Comput. Corp.*,
  714 F.2d 1240 (3d Cir. 1983) .............................................................................. 9

*Chamber of Commerce of U.S. v. Edmondson*,
  594 F.3d 742 (10th Cir. 2010) ............................................................................ 5

*Childs v. Stafford*,
  No. 11-CV-2690 W (NLS), 2012 WL 12875370 (S.D. Cal. Apr. 26, 2012) .................. 2, 3, 6

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
  No. 14-CV-585 AJN, 2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015) ...................... 4

*ConverDyn v. Moniz*,
  68 F. Supp. 3d 34, 47 (D.D.C. 2014) .................................................................. 4

*CyberMedia, Inc. v. Symantec Corp.*,
  19 F. Supp. 2d 1070 (N.D. Cal. 1998) ................................................................ 2

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005) ................................................................................ 6

*Graphic Commc'ns Union v. Chicago Tribune Co.*,
  779 F.2d 13 (7th Cir. 1985) ................................................................................. 4

*In Re Fleetwood Enterprises, Inc.*,
  No. 6:09-14254-MJ, 2010 WL 960358 (C.D. Cal. Mar. 15, 2010) ...................... 5

*Iowa Utilities Bd. v. F.C.C.*,
  109 F.3d 418 (8th Cir. 1996) ............................................................................... 6

*Kalani v. Starbucks Corp.*,
  No. 13-CV-00734-LHK, 2016 WL 693251 (N.D. Cal. Feb. 22, 2016) .............. 7, 8, 9

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ............................................................................... 2

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Mylan Pharms., Inc. v. Shalala*,

4

    81 F. Supp. 2d 30 (D.D.C. 2000) ............................................................ 5

5

*Nken v. Holder*,

    556 U.S. 418 (2009) ............................................................................ 2

6

*Orquiza v. Walldesign, Inc.*,

7

    No. 2:11-CV-1374 JCM CWH, 2013 WL 4039409 (D. Nev. Aug. 6, 2013) ......................... 5

8

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,

    944 F.2d 597 (9th Cir. 1991) ................................................................. 5

9

10

*Shakopee Mdewakanton Sioux Cmty. v. FBCV, LLC*,

    No. 2:10-CV-10 JCM RJJ, 2011 WL 4904438 (D. Nev. Oct. 14, 2011) ........................ 7

11

*Sterling Commercial Credit--Michigan, LLC v. Phoenix Indus. I, LLC*,

12

    762 F. Supp. 2d 8 (D.D.C. 2011) ....................................................... 4, 5

13

*TD Int'l, LLC v. Fleischmann*,

    639 F. Supp. 2d 46 (D.D.C. 2009) ......................................................... 4

14

15

*Texas v. United States Envtl. Prot. Agency*,

    829 F.3d 405 (5th Cir. 2016) ................................................................ 5

16

*Vietnam Veterans of Am. v. Cent. Intelligence Agency*,

17

    No. CV 09-0037-CW, 2014 WL 492169 (N.D. Cal. Feb. 5, 2014) ............................. 5

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

## I.    INTRODUCTION

Rimini's reply undermines Rimini's request for a stay, and the injunction should be enforced.  In its opening brief, Rimini claimed irreparable harm from:  (1) the allegedly vague terms of the injunction permitting Oracle to spread "FUD" among Rimini customers (ECF No. 1069 at 7:27-8:16), and (2) Oracle's supposed threat (based on Rimini's deliberate misreading of the hearing transcript) to use the injunction to enforce "borderline" infringing conduct (*id.* at 8:17-9:24).  Oracle's opposition exposed the fallacy of these arguments, pointing to Rimini's statements to the public and to the Court that Rimini would suffer no harm from the injunction. ECF No. 1073 at 8:12-10:27.

In reply, Rimini now admits for the first time – contrary to its prior representations – that its current processes violate the terms of the injunction and that Rimini will need to change its processes.  Rimini also claims, based on a newly submitted declaration, that it can change its processes to comply with the injunction.  Rimini argues that the injunction should nonetheless be stayed because it will cost Rimini $1-4 million per year to comply with it.  ECF No. 1079 (Reply) at 4:7-10, 6 at n.2; ECF No. 1079-1 (Slepko Decl.), ¶¶ 3-5.[1]  Rimini argues for the first time that its compliance costs constitute irreparable harm, and its reply raises additional new issues that could have been but were not addressed in its motion.

None of Rimini's new arguments warrants a stay.  As a matter of law, Rimini's newly-asserted "compliance costs" do not constitute irreparable harm in the Ninth Circuit.  And none of the out-of-circuit authority cited by Rimini found irreparable injury based only on compliance costs like those claimed here.  Further, even if such costs could constitute irreparable harm, Rimini fails to meet its burden of establishing that irreparable harm is "probable" because it provides no evidence aside from conclusory speculation that it will actually incur up to $4 million in costs to comply with the injunction.  That failure is itself determinative.  Finally, even if Rimini could provide some evidence of unrecoverable compliance costs of $1-4 million, it still

---

[1]    Oracle moved to strike Rimini's new argument and evidence as improperly presented for the first time on reply and as inadmissible evidence.  The Court has allowed Oracle to submit this surreply in lieu of striking the new material.

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

1    fails to meet its burden for a stay because the other factors remain overwhelmingly in Oracle's

2    favor.  Rimini's claim that complying with the injunction would be inconvenient in no way

3    satisfies Rimini's burden or provides a basis for a stay.

4    **II.     ARGUMENT**

5         **A.     Rimini Misstates the Applicable Legal Standard for Obtaining
                    a Stay.**
6
             In its reply, Rimini incorrectly suggests that it need only show "serious legal issues" to
7
     meet its burden.  ECF No. 1079 (Reply) at 1:3-7, 3:9-12.  This is incorrect.  To meet its burden
8
     to obtain a stay, Rimini must (1) make a "strong showing" that it is likely to succeed on appeal
9
     and (2) demonstrate that it is more likely than not to suffer irreparable harm if the stay is denied,
10
     and if – and only if – Rimini can demonstrate those two factors, it must then persuade the Court
11
     that these factors outweigh both (3) the harm to Oracle from a stay and (4) the public interest in
12
     enforcing the injunction.  ECF No. 1073 at 3:23-4:19; *Nken v. Holder*, 556 U.S. 418, 427, 433-34
13
     (2009); *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011); *Childs v. Stafford*, No. 11-CV-
14
     2690 W (NLS), 2012 WL 12875370, at *3 (S.D. Cal. Apr. 26, 2012), *aff'd*, 551 F. App'x 353
15
     (9th Cir. 2014).  As we demonstrate, none of the arguments or evidence raised in Rimini's reply
16
     brief satisfies this standard.
17
          **B.     Rimini Does Not and Cannot Show Likelihood of Success on
                    the Merits.**
18
             In its reply, Rimini now identifies four[2] "serious legal issues" that it asserts are likely to
19
20   carry the day on appeal.  First, Rimini says that its motion presents the question "whether an

21   innocent infringer can be enjoined."  ECF No. 1079 at 3:5.  Courts in this circuit have shown no

22   reluctance to enjoin an "innocent" infringer where, as here, the circumstances warrant an

23   injunction.  *E.g.*, *CyberMedia, Inc. v. Symantec Corp.,* 19 F. Supp. 2d 1070, 1078-1079 (N.D.

24   Cal. 1998).  To prevail on this issue, Rimini would need to convince the Ninth Circuit to create

25

26   ───────────────
     [2]       Rimini's opening brief identified five "serious legal issues," but Rimini appears to have
     jettisoned the fifth – the argument that California's 32-year-old computer access statute is
27   somehow "unconstitutional."  *Compare* ECF No. 1069 (Motion) at 4:20-6:26 *with* ECF No. 1079
     (Reply) at 3:4-8.
28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

1  new law and hold that a court may not enjoin an infringer who was "innocent" solely in an

2  advisory finding for a potential damages measure.

3  Rimini's second issue ("whether monetary relief is adequate in light of the jury's

4  verdict," ECF No. 1079 at 3:5-6), fares no better.  Rimini would have to convince the Ninth

5  Circuit to hold that a jury's selection of the *hypothetical* license damages measure somehow

6  forcibly extracts a permanent, *actual* license from the copyright holder that prohibits it from

7  enforcing its copyright against the infringer's future conduct.  Such a holding would defy logic

8  and, unsurprisingly, finds no support in the case law.

9  To prevail on its third issue ("whether Oracle's failure to establish a 'causal nexus'

10  precludes an injunction," *id*. at 3:6-7), Rimini would have to convince the Ninth Circuit to

11  reverse the jury's and the Court's factual findings – based on the full evidence of a four-week

12  trial and additional briefing – that Rimini's conduct caused harm to Oracle.  While Rimini

13  understandably wants to rewrite the trial and the outcome, its dissatisfaction hardly merits

14  staying an essential part of that outcome.

15  Finally, Rimini's fourth issue ("whether the injunction actually entered is both

16  impermissibly vague and overbroad," *id*. at 3:7-8), defies the language of the applicable statutes

17  and the Court's rulings about the meaning of the license and contract documents upon which the

18  injunction is based.  Rimini provides no specific explanation as to the injunction's claimed

19  ambiguity or overbreadth; rather, it merely seeks to relitigate the underlying rulings on

20  infringement and computer access that provide the basis for the injunction's terms.  The ease

21  with which Rimini claims to have determined that its current support processes violate the terms

22  of the injunction contradicts its argument that those terms are ambiguous.

23  Far from a "strong showing" of likelihood of success on the merits for any of the four

24  issues it raises, Rimini's reply confirms only that the issues are retreads of issues long litigated

25  and decisively lost.

26  **C.      Rimini's New Claim of Compliance Cost Does Not Establish
        Likely Irreparable Harm.**

27  Rimini's attempt on reply to introduce new evidence of what it asserts are unrecoverable

28

3

1  costs of compliance with the Court's injunction does not establish any "irreparable harm" to

2  Rimini, for two reasons.

3  **1.    As a Legal Matter, Unrecoverable Costs of Compliance
Do Not Constitute Irreparable Harm.**

4

5       Settled law flatly contradicts Rimini's argument that cost of compliance "is by definition

6  an irreparable injury" (ECF No. 1079 (Reply) at 4:19-5:2).  *By definition*, "[e]conomic injury, by

7  itself, does <u>not</u> constitute irreparable harm." *Amwest Sur. Ins. Co. v. Reno*, 52 F.3d 332 (9th Cir.

8  1995) (emphasis added).  "If the monetary cost of implementing an injunction, standing alone,

9  were sufficient to justify a stay of injunction pending appeal, stays pending appeal would

10  become routine, conflicting with the rule that such relief should be 'extraordinary.'" *Church &*

11  *Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585 AJN, 2015 WL

12  5051769, at *2 (S.D.N.Y. Aug. 26, 2015), *aff'd*, No. 15-2411, 2016 WL 4708179 (2d Cir. Sept.

13  9, 2016) (denying stay) (inner quotation and citation omitted); s*ee also Graphic Commc'ns*

14  *Union v. Chicago Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985) ("the fact that an order . . .

15  imposes a cost . . . does not show irreparable harm.  Otherwise every order . . .  would be deemed

16  to create irreparable harm, and it would be easy to get such orders stayed").

17       Even assuming compliance costs could, in some circumstances, establish irreparable

18  harm, Rimini would have to show that its claimed economic harm is "so severe as to cause

19  extreme hardship to the business or threaten its very existence."  *Sterling Commercial Credit--*

20  *Michigan, LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 15 (D.D.C. 2011) (internal

21  quotations and citation omitted).  "The critical consideration under this exception is the effect

22  that the purported economic harm will have on a movant's business or its very existence."  *Id.*;

23  *see also ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 47 (D.D.C. 2014) (even though "asserted

24  losses, if accurate, would be significant," movant does not state that injunction will "force it out

25  of business or even state with certainty that losses will be significant enough to force the

26  business to operate at a loss"); *TD Int'l, LLC v. Fleischmann*, 639 F. Supp. 2d 46, 49 n.3 (D.D.C.

27  2009) (even assuming movant's alleged economic loss of over one million dollars, "[t]his alleged

28  loss . . . [was] never placed in the context of the financial condition of [movant's] business").

1    This is true even with respect to "unrecoverable losses," which must have a "'serious

2    effect' on [the movant] in order to be considered irreparable." *Sterling*, 762 F. Supp. 2d at 16;

3    *see also Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.,* 944 F.2d 597, 603

4    (9th Cir. 1991); *accord Orquiza v. Walldesign, Inc.*, No. 2:11-CV-1374 JCM CWH, 2013 WL

5    4039409, at *2 (D. Nev. Aug. 6, 2013) (denying stay because asserting "[m]onetary damages

6    alone do[es] not amount to irreparable harm"); *In Re Fleetwood Enterprises, Inc.*, No. 6:09-

7    14254-MJ, 2010 WL 960358, at *4 (C.D. Cal. Mar. 15, 2010) (same).  In other words,

8    "[b]ecause [Rimini] is alleging a non-recoverable monetary loss, it must demonstrate that the

9    injury [is] more than simply irretrievable; it must also be serious in terms of its effect on

10   [Rimini]." *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000) (internal

11   quotations and citation omitted); *see Vietnam Veterans of Am. v. Cent. Intelligence Agency*, No.

12   CV 09-0037-CW, 2014 WL 492169, at *3 (N.D. Cal. Feb. 5, 2014) (denying motion to stay,

13   holding that, while Defendants provide "'informal estimates' indicating that compliance with the

14   injunction may be expensive, Defendants present no evidence that incurring such costs will cause

15   irreparable harm").

16   Rimini does not even attempt to argue that its claimed compliance costs of up to $4

17   million constitute extreme hardship or would threaten Rimini's existence.[3]  Instead, Rimini

18   incorrectly asserts that those costs are "by definition an irreparable injury."  ECF No. 1079

19   (Reply) at 4:19-20.  Rimini relies on three cases to support this claim.  *Id.* at 4:20-26.  But none

20   of those cases found irreparable harm based only on relatively minimal compliance costs such as

21   those alleged by Rimini; rather, each case found irreparable injury based on additional harms

22   *beyond mere compliance costs.  Texas v. United States Envtl. Prot. Agency*, 829 F.3d 405, 434

23   (5th Cir. 2016) (petitioners raised harms *other than compliance costs* that were "great in

24   magnitude" including "unemployment and permanent closure of plants" which would "threaten

25   the very existence of some of Petitioners' businesses"); *Chamber of Commerce of U.S. v.*

26   ――――――――――――――――

[3]   Indeed, Rimini has asserted that it will pay in full a $124 million judgment to Oracle by
27   October 31, 2016.  *See* Kennamer Decl., Ex. 1 (10/27/16 email).  Rimini cannot claim both that it
     will pay $124 million but that costs of $1-$4 million constitute an extreme hardship.

28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

1     *Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (irreparable injury where petitioners would

2     "face investigation," "debarment from public contracts," and other liability); *Iowa Utilities Bd. v.*

3     *F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996) (irreparable injury because petitioners would not be

4     able to recover losses, including "loss of consumer good will").  Rimini does not cite a single

5     case finding irreparable harm where the sole harm alleged is the monetary cost of complying

6     with the injunction.[4]

7             Far from showing that the cost of compliance would have a serious effect on its business,

8     Rimini asserts in its reply that the "modifications are <u>not</u> expected to adversely impact the

9     ultimate outcomes required by Rimini's clients."  ECF No. 1079-1, ¶ 4 (emphasis added).  Thus,

10    as a matter of law, Rimini's claimed compliance costs fail to show that the injunction would

11    more likely than not cause irreparable harm.  That failure alone warrants the denial of Rimini's

12    motion.

13            **2.**        **As a Factual Matter, Rimini's New Evidence Does Not**
                             **Establish That It Is More Likely Than Not to Suffer**

14                              **Irreparable Harm.**

15             Even if Rimini's alleged compliance costs could be considered an irreparable harm as a

16    legal matter, Rimini's motion should still be denied because Rimini falls far short of meeting its

17    factual burden to show that it is *more likely than not* that it will suffer this harm.  *See Childs*,

18    2012 WL 12875370, at *3.  Rimini's only evidence for its claim that it will incur significant,

19    unrecoverable compliance costs is Mr. Slepko's declaration.  ECF No. 1079 at 4:10, 6 at n.2.

20    But Mr. Slepko merely states that Rimini "is examining its current processes" and "has identified

21    a series of additional modifications" that he *estimates* "would cost Rimini at least $1 million and

22    up to $4 million per year to implement."  ECF No. 1079-1, ¶¶ 4-5.  In other words, the

23

---

[4]       The harm at issue in the cases Rimini cites relates to unrecoverable costs of regulatory
24    compliance.  Even in that context, mere compliance costs do not constitute irreparable harm.  *Cf.*
       *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) ("ordinary compliance costs
25    are typically insufficient to constitute irreparable harm"); *Am. Hosp. Ass'n v. Harris*, 625 F.2d
       1328, 1331 (7th Cir. 1980) ("[I]njury resulting from attempted compliance with government
26    regulation ordinarily is not irreparable harm."); *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 527 (3d
       Cir. 1976) ("Any time a corporation complies with a government regulation that requires
27    corporation action, it spends money and loses profits; yet it could hardly be contended that proof
       of such an injury, alone, would satisfy the requisite for a preliminary injunction.").

28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

1   declaration fails to provide any evidence as to (1) what terms of the injunction Rimini's current

2   processes violate, (2) which of Rimini's support processes violate those terms, (3) what

3   modifications Rimini would have to implement in order to comply, or (4) any details about how

4   Mr. Slepko arrived at the *estimation* that those modifications would cost Rimini "at least $1

5   million and up to $4 million annually."  ECF No. 1079-1, ¶ 5.  The omissions are fatal to

6   Rimini's attempt to establish *likely irreparable* harm.  *Shakopee Mdewakanton Sioux Cmty. v.*

7   *FBCV, LLC*, No. 2:10-CV-10 JCM RJJ, 2011 WL 4904438, at *3 (D. Nev. Oct. 14, 2011)

8   (denying emergency motion to stay permanent injunction pending appeal where defendants

9   advanced only "vague and conclusory allegations of irreparable harm"); *Kalani v. Starbucks*

10  *Corp.*, No. 13-CV-00734-LHK, 2016 WL 693251, at *5 (N.D. Cal. Feb. 22, 2016) ("conclusory

11  assertions do not satisfy Defendant's burden to establish the possibility of irreparable harm").

12          Further, Mr. Slepko's ability to opine credibly on these matters must be evaluated in light

13  of both his prior, repeated denials of knowledge of the details of Rimini's support process and

14  also his statements about those processes contradicted by the Court's findings and by other

15  Rimini witnesses.  For example, notwithstanding his long-held position at Rimini "oversee[ing]

16  the development and delivery to clients of software source code fixes and updates" (ECF No.

17  1079-1, ¶ 1), ███████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████

21  ███████████████████████████████████████████████

22  ████████████████████████████████████████████████████████ Mr.

23  Slepko also testified – falsely – that all of Rimini's patch development "is done for a particular

24  customer in that customer's environment using that customer's files."  ECF No. 866 (Trial Tr.

25  Day 15) at 3173:17-25.  This testimony was false, and it cannot be squared with the Court's

26  finding on summary judgment.  ECF No. 474 at 11:16-18 ("the undisputed evidence establishes

27  that [the City of Flint's] development environments were used to develop and test software

28

7

1   updates for the City of Flint and other Rimini customers with similar software licenses").  Mr.

2   Slepko's testimony also directly contradicts the testimony of Rimini's CEO, Mr. Ravin, who

3   admitted at trial that Rimini took updates created "for other clients with the same version of

4   contract or license" and "reused [them] all the time."  ECF No. 792 (Trial Tr. Day 4) at 552:1-5.

5            **D.      Nothing In Rimini's Reply Refutes the Court's Finding of**
             **Significant Harm to Oracle.**

6            Disregarding the Court's finding that Oracle faces a real or immediate threat of imminent

7   future harm from Rimini's continued conduct, Rimini on reply asserts that both Oracle and the

8   Court *have conceded* that Rimini has corrected its infringing conduct and that its new processes

9   no longer infringe.  ECF No. 1079 at 5:26-6:8.  The assertion is false, as Rimini must know, and

10  is based upon a deliberate misreading of the Court's order granting Oracle's injunction.  As the

11  Court knows, Oracle has *always* contended that Rimini's support processes continue to infringe,

12  including in the *Rimini II* litigation.  The Court has also never "recognized that Rimini has

13  substantiated its allegations of changed processes."  ECF No. 1079 at 6:6-7.[5]  Rimini also seeks

14  to validate its current processes by reference to the declarations of Rimini employees submitted

15  with its opposition to Oracle's underlying motion for injunctive relief, *id.* at 6:1-4, but these

16  declarations do not show that Rimini ceased to infringing.  The Court need only compare the

17  terms of the injunction (ECF No. 1065) with the watered-down statements contained in Rimini's

18  declarations (ECF Nos. 905-1 through 905-5) to reject Rimini's self-serving declarations.  And,

19  to the extent they are being used by Rimini to claim compliance with the Court's orders, the

20  declarations are inconsistent with Mr. Slepko's declaration, which now concedes noncompliance

21

22

---

[5]        The Court stated only that "there is no evidence that Rimini would be harmed by an
23  injunction that enjoins and restrains future copyright infringement or using the materials gained
    from its infringement *because Rimini has already represented to the court* that is has changed its
24  business model and support services away from the infringing model in response to the court's
    orders on summary judgment." ECF No. 1049 at 8:3-7 (emphasis added).  The Court found no
25  evidence that Rimini would be harmed by an injunction and *expressly* conditioned that finding
    on Rimini's own, repeated representations that Rimini had corrected its infringing processes.  *Id.*
26  Thus, the Court in no way "recognized that Rimini has substantiated its allegations of changed
    processes" (ECF No. 1079 at 6:6-7).  Similarly, Rimini has deliberately misconstrued the Court's
27  order in its press releases as support for the legality of its current processes.  *See* ECF No. 1073-2
    (9/22/16 Press Release).

28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

with the injunction.

Rimini's secondary argument – that a stay "will merely maintain the status quo," which existed for the six years in this litigation before the Court entered its injunction (ECF 1079 at 6:20-7:9) – proves too much and should be rejected.  The "status quo" – as the Court has determined – is that "Rimini's unlawful actions, to wit copyright infringement and violations of the state computer access statutes, irreparably injured Oracle's business reputation and goodwill."  ECF No. 1049 (9/21/16 Order) at 5:17-19; ; *see also id.* at 6:3-6 ("Rimini's business model was built entirely on its infringement of Oracle's copyrighted software and its improper access and downloading of data from Oracle's website and computer systems, and Rimini would not have achieved its current market share and business growth without these infringing and illegal actions.").  That injury is ongoing every day that the injunction is stayed.  Rimini concedes as much by admitting that its current support processes *do not* comply with the terms of the injunction.  ECF No. 1079 at 4:7-8 ("good-faith compliance with the injunction would require Rimini to modify its processes").

**E.    Denying Rimini's Requested Stay – of Any Length – Is in the Public Interest.**

Rimini argues that a stay would never issue if the Court equates the public interest factors for imposing injunctive relief and for denying a stay.  Not only is this untrue (as the public interest is one of several factors at issue), but it is beside the point where, as here, Oracle has established and the Court has found that the public interest supports the injunction.  The public interest likewise favors denying Rimini's requested stay *when considered with the other three factors in the Court's stay analysis*.  The public interest is advanced by an injunction vindicating copyright rights.  *See, e.g.*, *Apple Comput. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).  Here, Rimini admits that its support practices continue to violate the terms of the injunction, and thus its only basis for denying that its support practices continue to infringe is contingent upon the injunction being entered in error – *i.e.*, contingent on Rimini prevailing on appeal.  But Rimini's arguments for success on appeal are a mere rehash of what the Court already has considered and rejected.  Meanwhile, Rimini's only real claim of harm from the

9

1    injunction (claimed unrecoverable compliance costs) is not irreparable as a matter of law, and

2    Rimini does not even attempt to provide sufficient evidence of its claimed compliance costs to

3    establish that it is more likely than not to incur them.  By contrast, the Court has already

4    determined that Oracle has been irreparably harmed by Rimini's conduct, and the threat of

5    ongoing irreparable harm is real, warranting the injunction.  Under these circumstances, the

6    public interest analysis tips decisively in favor of rejecting any further stay on Rimini's

7    infringing practices.  There is no basis for a stay of any length.

8    **III.**      **CONCLUSION**

9         For these reasons, and the reasons discussed in Oracle's opposition brief, Oracle

10   respectfully requests that the Court deny Rimini's motion to stay the injunction.

11

12   Dated:   October 27, 2016

                               MORGAN, LEWIS & BOCKIUS LLP

13

14                             By:        /s/ Thomas S. Hixson

15                                 Thomas S. Hixson

                                 Attorneys for Plaintiffs

16                                  Oracle USA, Inc.,

                               Oracle America, Inc. and

17                                  Oracle International Corporation

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY
ENFORCEMENT OF PERMANENT INJUNCTION

1

## **CERTIFICATE OF SERVICE**

2      I certify that on October 27, 2016, I electronically transmitted the foregoing **ORACLE'S**

3  **SURREPLY IN OPPOSITION TO RIMINI'S MOTION TO STAY ENFORCEMENT OF**

4  **PERMANENT INJUNCTION** to the Clerk's Office using the Electronic Filing System

5  pursuant to Local Rules Part IC.

6  Dated:  October 27, 2016           Morgan, Lewis & Bockius LLP

7

8                                     By:  _____/s/ Thomas Hixson_____

9                                          Thomas Hixson
                                           Attorneys for Plaintiffs
                                           Oracle USA, Inc.,
10                                         Oracle America, Inc. and
                                           Oracle International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28