1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
BEFORE THE HONORABLE PEGGY A. LEEN, MAGISTRATE JUDGE

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>    Plaintiffs,<br><br>  vs.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>    Defendants. | No. 2:10-cv-0106-LRH-PAL |

TRANSCRIPT OF MOTION HEARING

November 15, 2011

Las Vegas, Nevada

FTR No. 3B/20111115 @ 1:31 p.m.

Transcribed by:     Donna Davidson, CCR, RDR, CRR
                    (775) 329-0132
                    dodavidson@att.net

(Proceedings recorded by electronic sound recording, transcript produced by mechanical stenography and computer.)

TRANSCRIBED FROM DIGITAL RECORDING

2

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFFS:

 3    BOIES, SCHILLER & FLEXNER LLP
      KIERAN P. RINGGENBERG (By telephone)
 4    1999 Harrison Street, Suite 900
      Oakland, California 94612
 5    (510) 874-1000
      Fax: (510) 874-1460
 6    kringgenberg@bsfllp.com

 7    BOIES, SCHILLER & FLEXNER LLP
      RICHARD J. POCKER
 8    300 South Fourth Street, Suite 800
      Las Vegas, Nevada 89101
 9    (702) 382-7300
      Fax: (702) 382-2755
10    rpocker@bsfllp.com

11    MORGAN LEWIS & BOCKIUS LLP
      GEOFFREY M. HOWARD (By telephone)
12    MARJORIE GENTRY (By telephone)
      One Market, Spear Street Tower
13    San Francisco, California 94105
      (415) 442-1000
14    Fax:  (415) 442-1001
      geoff.howard@morganlewis.com
15
      JAMES C. MAROULIS (By telephone)
16    Oracle Corporation
      500 Oracle Parkway
17    Redwood City, California 94070
      (650) 506-4846
18    jim.maroulis@oracle.com

19
      FOR THE DEFENDANTS:
20
      SHOOK, HARDY & BACON LLP
21    ROBERT H. RECKERS (By telephone)
      600 Travis Street, Suite 3400
22    Houston, Texas 77002
      (713) 227-8008
23    Fax: (713) 227-9508
      rreckers@shb.com
24

25
```

TRANSCRIBED FROM DIGITAL RECORDING

3

1      LAS VEGAS, NEVADA, NOVEMBER 15, 2011, 1:31 P.M.

2                            --oOo--

3                      P R O C E E D I N G S

4

5           COURTROOM ADMINISTRATOR:  Please rise.

6           THE COURT:  Good afternoon.  Please be seated.

7           COURTROOM ADMINISTRATOR:  Your Honor, we are now

8    calling the hearing in the matter of Oracle, USA., Inc.,

9    versus Rimini Street, Inc.  The case number is

10   2:10-cv-0106-LRH-PAL.

11          At this time, we'd like to ask counsel to please

12   make your appearances for the record, starting with

13   plaintiff's counsel.

14          MR. HOWARD:  This is Jeff Howard.  And with me,

15   Your Honor, is Marjorie Gentry, from Bingham, representing

16   the plaintiff.

17          MR. RINGGENBERG:  This is Kiernan Ringgenberg,

18   from Boies, Schiller, also for the plaintiffs.

19          MR. MAROULIS:  And this is James Maroulis, from

20   Oracle Corporation, for plaintiffs.

21          MR. POCKER:  And Richard Pocker in the

22   courtroom, also from Boies, Schiller, on behalf of

23   plaintiffs, Your Honor.

24          THE COURT:  Thank you.

25          COURTROOM ADMINISTRATOR:  May we now have

1  appearances for defense counsel.
2          MR. RECKERS:  Yes, good afternoon, Your Honor.
3  This is Robert Reckers for the defendants.
4          THE COURT:  Mr. Reckers, this is your motion.  I
5  have read the moving and responsive papers.  And this is
6  your opportunity to be heard.
7          MR. RECKERS:  Thank you, Your Honor.
8          I think the transcript here speaks for itself.
9  There's one page of testimony.  We put it in the beginning
10 of our brief.
11         There's no -- in the testimony it shows that the
12 plea agreement, the exhibit at issue here, is not being
13 used to support any relevant issue of the case.  There's
14 actually no -- not even attempt to establish the witness
15 has any knowledge of the plea agreement.
16         Oracle's counsel even makes the comment in the
17 record that she believes that the witness doesn't have
18 knowledge of the plea agreement.
19         The use of the plea agreement and then the
20 superficial questioning serves only to harm Rimini's
21 relationships with its existing clients, and that is
22 unfairly prejudicial.
23         Oracle's arguments here seem to me to -- what --
24 they say they've establish -- the plea agreement
25 establishes and proves that Rimini's business model is

1   illegal.
2          TomorrowNow and SAP was another case.  That was
3   a stipulated plea agreement.  It does not say anything
4   about Rimini Street.  It is the height of unfairness to say
5   that that plea agreement should be used to establish the
6   liability of Rimini Street or the illegality of the
7   business model.
8          Furthermore, Oracle certainly, you know, can ask
9   about TomorrowNow, which the motion is very limited.  It is
10  limited just to the plea agreement and the other
11  settlements that come from and stipulations that come from
12  the other case.
13         Oracle's motion mentions communications Rimini
14  may have had with its customers in the marketplace
15  concerning TomorrowNow.  And that, of course, makes sense.
16  Rimini Street has to -- had to compete against TomorrowNow,
17  and they certainly had to deal with questions from their
18  customers about the litigation.
19         And our motion certainly doesn't seek to
20  preclude those types of questions from Oracle about
21  customers' knowledge of TomorrowNow.
22         What we are seeking to do is preclude use of the
23  plea agreement, as shown by -- in the one page of
24  testimony, to establish or to show that some illegality on
25  the part of Rimini Street where that unrelated case simply

1 doesn't establish it, and it's unfair to attempt to scare
2 our customers into thinking so.
3                THE COURT:  Thank you, Mr. Reckers.
4                Who will be addressing the plaintiff's
5 arguments?
6                MR. HOWARD:  Thank you, Your Honor.  This is
7 Jeff Howard.
8                Your Honor, in some ways this is the flip side
9 of the motion that the court -- not Your Honor, but one of
10 your colleagues, heard a couple of years ago during the SAP
11 litigation where the issue was essentially the same but a
12 mirror image; and that is the similarity of Rimini's
13 operations to TomorrowNow.
14                And the court -- that was the proceeding that
15 ended up in contempt.  But the issue was the same in the
16 sense that Mr. Ravin, who founded -- claims he founded
17 TomorrowNow, claims he founded the TomorrowNow business
18 model, and claims to have based the Rimini business model
19 on TomorrowNow and -- and so that issue has been common to
20 both litigations.  It is front and center in this case.
21                And the reason it's front and center, apart from
22 the liability and apart from whether the factual predicate
23 for the plea deal that TomorrowNow entered with the
24 Department of Justice, is causation.
25                And that is that customers testify that if they

1  had known that having copies of their software, as the plea
2  agreement recites, as the civil stipulation recites, as the
3  evidence at the TomorrowNow trial proved, if they had known
4  that that was in violation of their license agreement, if
5  it was -- that it was a criminal act, that they would not
6  have contracted with Rimini Street or that they would have
7  gone somewhere else once they found that out.
8              And as we've explained and provided evidence to
9  Your Honor, it's not Oracle that has put this issue to the
10 customers.  It's Rimini Street that has done that.
11             They have continuously and routinely submitted
12 and communicated to their customers on the very topic of
13 these questions and on the very issue that the plea
14 agreement goes to and that the stipulation goes to, and
15 that the merits of that litigation goes to for exactly that
16 reason.  Because customers raise concerns about it and
17 because it goes to whether they would stay or go, and it
18 goes to the causation issues in this case.
19             So Rimini Street --
20             THE COURT:  Causation of what, Mr. Howard?
21             MR. HOWARD:  Excuse me, Your Honor?
22             THE COURT:  Causation in what sense that is
23 relevant to a claim or defense involved in this action?
24             MR. HOWARD:  Causation of damages.  Causation of
25 lost profits.

1          So these customers are -- the set of customers
2   that are Rimini Street's customers, the fact that they have
3   left Oracle, they have -- they are no longer paying Oracle
4   support, and they have instead decided to pay Rimini Street
5   those support dollars for their Oracle software is the
6   basis of our lost profits' claim for copyright, for --
7   well, we can leave it at copyright for purposes of this
8   discussion.
9          And so our damages claim is that for each of
10  those customers had Rimini Street not been infringing the
11  copyrights by having local copies of the software on their
12  systems as a way to induce and support these customers over
13  to the Rimini Street side, that these customers would have
14  remained with Oracle.
15         And so those are ill-gotten gains by Rimini
16  Street and they're infringer's profits, and then they're
17  also lost profits on the Oracle side of the column.
18         And the issue is if they had known these facts,
19  would they have done something differently?  And Rimini
20  Street, in their sales communications, at the beginning of
21  starting the company, said:  We are like TomorrowNow.  We
22  operate the same way, so you should be comforted by the
23  fact that we are modeling ourselves after the industry
24  leader.
25         Now that the industry leader has been proven to

1   have been engaged in a criminal enterprise, based on the
2   same qualities that attracted customers to Rimini Street,
3   Rimini Street wants to say:  We're not like them at all.
4   But the same basic underlying operating principles are the
5   same all the way throughout.  And those go directly to the
6   question of whether Rimini Street gets those customer
7   support dollars, based on that infringement, or whether
8   Oracle gets them.
9           THE COURT:  You don't claim, do you, that the
10  outcome of the TomorrowNow/SAP civil or criminal cases has
11  any res judicata or collateral estoppel effect in this
12  case, do you, Mr. Howard?
13          MR. HOWARD:  No, we don't contend that, Your
14  Honor.  That's not the reason for the evidence and the
15  questions.
16          THE COURT:  I didn't think so.  I'm just making
17  that clear.
18          And I cut you off.  Is there any additional
19  argument that you would like to make?
20          MR. HOWARD:  Just one last point, Your Honor, is
21  that -- is that the standard is good cause, and there has
22  to be evidence to support a finding of prejudice.  There is
23  no evidence supported to support a finding of prejudice
24  here.
25          But even if there was, and even if the Court

1  were to assume prejudice, the relevance of this inquiry
2  clearly outweighs that prejudice, particularly given that
3  these are Oracle's customers too.
4           And we -- Oracle could have apparently
5  communicated to these customers and said, look, here's a
6  plea agreement, look what happened, and as a business
7  matter apparently that would have been okay, based on the
8  communications that Rimini Street has submitted to them on
9  that very topic as evidenced by Exhibit E to my
10 declaration.
11          But here it's just a limited narrow inquiry to
12 selected customers who have received those communications
13 in the context of a deposition where they're represented by
14 their own counsel.
15          THE COURT:  Who have objected, at least for the
16 instance that is raised in the papers here, to the line of
17 questioning on various grounds, including that their client
18 has no idea what you're talking about and the plea
19 agreement that you're showing in the deposition.
20          And I don't mean you personally because you
21 didn't conduct that deposition.
22          MR. HOWARD:  Sure.  I mean, we didn't tell them
23 in advance, that's true.  But those same customers have
24 either asked Rimini Street about the TomorrowNow litigation
25 and how it impacts them and whether Rimini Street operates

1  similarly to TomorrowNow, or they have received
2  communications from Rimini Street disclaiming the
3  similarities to TomorrowNow that the plea agreement
4  illustrates.
5       And so it is directly responsive to the issue
6  that the customer has raised with Rimini Street or Rimini
7  Street has raised with the customer as to the similarities
8  between the two companies as to the factual basis for the
9  plea, which is TomorrowNow had local copies of the
10 software.  And that was a basis for the plea agreement to
11 criminal copyright infringement.
12      THE COURT:  Thank you, Mr. Howard.
13      And, Mr. Reckers, it's your motion, so you get
14 the last word.
15      MR. RECKERS:  Thank you, Your Honor.  And I
16 would just say in response that Oracle's already proven
17 that they can ask a lot of these questions and delve into
18 these causation concepts without raising the plea
19 agreement.  They've only asked these questions in, I think
20 at the time the papers were filed, two of the five cases.
21      And all of the points Mr. Howard raised, those
22 questions can be answered -- can be asked, at least, in the
23 context outside of the plea agreement.  Does Rimini have
24 local copies?  That's something that they can ask.
25      They can ask about the correspondence.  They did

1    ask about the correspondence in a deposition transcript
2    that we have before us.
3             They can ask about the similarity in the
4    services, if their -- if the witness, in fact, has
5    knowledge of the TomorrowNow services.  Those are all
6    questions that can be asked.
7             But what you don't need is the plea agreement
8    being used as a proxy to show that there's some illegality.
9    The arguments simply do not support the need for that
10   particular plea agreement being put before the customer and
11   then the superficial-type questions that are actually
12   reflected by the record.
13            And we have, you know, the various
14   justifications that Oracle puts forth.  But we have, you
15   know, the transcript.  And it seems to me it's somewhat
16   after-the-fact explanations as to -- explanations for the
17   transcript.
18            When you look at the transcript and how it's
19   actually used, I would submit that it is unfairly
20   prejudicial and that there is good cause for granting
21   Rimini's motion.
22            THE COURT:  Thank you.
23            Counsel, since at least 1983 the drafters of the
24   Federal Rules of Civil Procedure and the Supreme Court have
25   recognized that the burden and expense of discovery is

1    great and that explosive or expansive discovery has caused
2    a potential for abuse.
3              And so the rules have been narrowed over the
4    years.  Broad discovery still remains the rule.  But the
5    trial courts have been urged repeatedly since 1983 to
6    impose reasonable limitations on the scope of discovery and
7    to evaluate the need for the discovery against its burden
8    or expense or potential for embarrassment or harassment.
9              In 1983 the advisory committee notes -- noted
10   that the court must apply the standards for limitation of
11   the scope of discovery that were added in Rule 26(b) in a
12   manner that will prevent the use of discovery to wage a war
13   of attrition as a device to coerce a party, whether
14   financially weak or affluent.
15             In this case, Mr. Howard, you are asking
16   questions based on the transcripts that I have been
17   provided in this case.  And I don't mean you personally
18   because I appreciate that you were not personally present
19   at the deposition and you were not the examining counsel.
20             But the questions that have been posed are posed
21   and formed in a way to suggest that it's a given that what
22   TomorrowNow has done is exactly the same thing as what
23   Rimini has done and then to ask the deponent if they have
24   knowledge that TomorrowNow has been found criminally and
25   civilly liable for that conduct.  And that is improper and

1   prejudicial, in my view.

2           Applying the limitations of Rule 26(b)(1), I
3   find that the value of that line of inquiry is grossly
4   overweighed by the unfair prejudice to Rimini in this case.

5           You assert various grounds for why this proposed
6   line of questioning is appropriate.  And in my view, your
7   arguments are not at all well taken.

8           What is involved in this case was relevant to
9   the core of your claims in this case is what Rimini has
10  done in this case.  Is it legal or is it not?  And if it's
11  not legal, if it infringes your intellectual property or
12  some other civil statute, what are your damages?

13          And so it's perfectly appropriate for you to
14  inquire whether customers of Rimini have discussed what it
15  is that Rimini does.

16          It's perfectly acceptable for you to inquire of
17  Rimini customers whether Rimini's customers have had any
18  concern about whether what it does is unlawful or infringes
19  against your intellectual property and whether if they had
20  known that anything is alleged to have infringed your
21  intellectual property they still would have entered into a
22  contractual relationship with Rimini.

23          What is not appropriate is the manner in which
24  you have conducted this line of inquiry suggesting that you
25  already know it's a given that Rimini did the same thing

1  that TomorrowNow did and TomorrowNow has been convicted of
2  felony charges by their own admissions and they have rolled
3  over on the criminal case -- civil case, excuse me, and
4  have admitted liability and conduct a line of inquiry along
5  those lines.
6          The -- you're not entitled to use a deposition
7  as a transcript and a tactic to make public statements.  If
8  you wish to communicate with Rimini's customers in an
9  ethical way and communicate what you think is a counter-
10 argument to what Rimini has been telling its customers
11 about what TomorrowNow litigation means and whether it is
12 similar or not dissimilar within the bound of ethics,
13 you're permitted to do that.
14         You can make press releases.  You can do
15 whatever you want to in that regard.
16         You can't use a deposition as a tactic to scare
17 Rimini's clients, and I think that's what you are, not too
18 transparently, attempting to do in this case.
19         So the motion is granted.
20         And let me just say this.  Mr. Howard, there are
21 some extraordinarily bright and skillful lawyers involved
22 in both sides of this case.  And I remember what it was
23 like to be a trial lawyer.  And I know only too well that
24 when one senses that there is blood in the water, it is all
25 too easy to try to push the envelope and try to do

1   everything you can to win this case and to promote your
2   client's cause.
3              But I have spent more time than I normally do in
4   articulating exactly how I think about this dispute in this
5   case to persuade you that this line of inquiry that you
6   have made in the transcripts presented is improper, is
7   prejudicial, and it will not be tolerated.
8              And if you are tempted to push the envelope,
9   there are other arrows in my quiver to deal with that.  So
10  I'm telling you that to be forewarned.
11             If you persist in this line of questioning that
12  goes over plea agreements and documents in a case that is
13  not before this Court, you run the risk of forfeiting your
14  right to take any further depositions of Rimini customers
15  and, beyond that, all of the other sanctions that are
16  available under Rule 37.
17             So just play it straight up.  You can ask the
18  customers what they knew and what they asked Rimini about
19  and whether they had any reason to believe that it was
20  unlawful and what they understood that it is that Rimini's
21  doing and if they would have continued to do business or if
22  they would have went with Rimini in the first place if they
23  had believed or suspected that what Rimini was doing was
24  unlawful or an infringement of your intellectual property.
25             Beyond that, it's out of bounds.

TRANSCRIBED FROM DIGITAL RECORDING

17

1    MR. HOWARD:  Very well, Your Honor.  We hear you
2 loud and clear, and that's how we'll proceed.
3    THE COURT:  Anything further on behalf of the
4 plaintiff, Mr. Howard?
5    MR. HOWARD:  No, Your Honor.
6    THE COURT:  Mr. Reckers?
7    MR. RECKERS:  No, Your Honor.
8    THE COURT:  Thank you.  We're adjourned.
9    COURTROOM ADMINISTRATOR:  Please rise.
10   (The proceedings concluded at 1:51 p.m.)
11                     *  *  *
12
13
14
15
16
17
18
19
20
21
22
23
24
25

DONNA DAVIDSON     (775) 329-0132

1          -oOo-

2    I certify that the foregoing is a correct

3    transcript from the electronic sound recording

4    of the proceedings in the above-entitled matter.

5

6    _[signature: Donna Davidson]_____    __11/22/16__

7    **Donna Davidson**                                 Date