1

2  BOIES SCHILLER FLEXNER LLP
   RICHARD J. POCKER (NV Bar No. 3568)
3  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
4  Telephone: (702) 382-7300
   Facsimile: (702) 382-2755
5  rpocker@bsfllp.com

6  BOIES SCHILLER FLEXNER LLP
   WILLIAM ISAACSON (*pro hac vice*)
7  KAREN DUNN (*pro hac vice*)
   1401 New York Avenue, NW, 11th Floor
8  Washington, DC 20005
   Telephone: (202) 237-2727
9  Facsimile: (202) 237-6131
   wisaacson@bsfllp.com
10 kdunn@bsfllp.com

11 BOIES SCHILLER FLEXNER LLP
   STEVEN C. HOLTZMAN (*pro hac vice*)
12 1999 Harrison Street, Suite 900
   Oakland, CA 94612
13 Telephone: (510) 874-1000
   Facsimile: (510) 874-1460
14 sholtzman@bsfllp.com

15
   Attorneys for Plaintiffs
16 Oracle USA, Inc., Oracle America, Inc., and
   Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
thomas.hixson@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

17            UNITED STATES DISTRICT COURT

18               DISTRICT OF NEVADA

19 ORACLE USA, INC., a Colorado corporation;
   ORACLE AMERICA, INC., a Delaware
20 corporation; and ORACLE INTERNATIONAL
   CORPORATION, a California corporation,
21
22            Plaintiffs,
23      v.
24 RIMINI STREET, INC., a Nevada corporation;
   AND SETH RAVIN, an individual,
25
              Defendants.
26

Case No. 2:10-cv-0106-LRH-VCF

**ORACLE'S MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Judge: Hon. Larry R. Hicks

27

28

1      <strong><u>NOTICE OF MOTION AND MOTION</u></strong>

2      Pursuant to Federal Rules of Civil Procedure 7(b) and 67, and Local Rules 7-2, 67-1, and

3    67-2, Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

4    (collectively "Oracle") respectfully move the Court for an order permitting Oracle to deposit its

5    $28,502,246.40 attorneys' fee award from Defendants Rimini Street, Inc. and Seth Ravin

6    (collectively "Rimini") in the Court's Registry Account, to be disbursed according to the

7    resolution of Oracle's renewed motion for attorneys' fees on remand.  This motion is based on

8    this Notice of Motion and Motion, the Memorandum of Points and Authorities incorporated

9    herein, the attached Declaration of Beko O. Reblitz-Richardson ("Reblitz-Richardson Decl."),

10   documents incorporated by reference, the entire record in this action, matters appropriate for

11   judicial notice, and any evidence or argument presented on reply or at the hearing.

12     <strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

13   **I.      INTRODUCTION**

14     This first lawsuit against Rimini ("*Rimini I*") is back before this Court on remand from

15   the Ninth Circuit so that the Court may reconsider (1) the issuance of a permanent injunction

16   against Rimini and (2) the award of attorneys' fees to Oracle.  The Ninth Circuit largely upheld

17   this Court's judgment for Oracle and against Rimini:  it affirmed judgment in Oracle's favor and

18   the $35.6 million damages award on Oracle's claim that Rimini infringed 93 Oracle copyrights,

19   upheld the $22.5 million award of prejudgment interest related to those damages, and largely

20   upheld the award of nearly $18 million in costs to Oracle.  The Ninth Circuit reversed the

21   judgment on the claims under the California and Nevada computer access statutes based on its

22   interpretation of those statutes.  In light of that reversal, the Ninth Circuit vacated the Court's

23   permanent injunction and attorneys' fee ruling so that those issues can be the subject of renewed

24   motions by Oracle on remand.

25     Oracle will promptly file, no later than March 23, 2018 (fewer than 14 days from the

26   issuance of the appellate mandate), renewed motions for a permanent injunction and for

27   attorneys' fees.  The parties already briefed and argued both issues, and Oracle believes these

28   issues can be decided on remand with limited additional briefing.  With respect to attorneys'

---

ORACLE'S MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT

1  fees, Oracle will seek the full amount of $28,502,246.40 previously awarded, because, as this

2  Court observed, "the trial was a copyright infringement case first and foremost," ECF No. 1049

3  at 14, and by prevailing on its copyright claims, Oracle is entitled to fees on all related claims

4  (even unsuccessful ones) under 17 U.S.C. § 505. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir.

5  2003); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 884 (9th Cir. 2005)

6  (citing *Webb*); *see also Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999).

7        With this motion, pursuant to Federal Rule of Civil Procedure 67, Oracle seeks a Court

8  order permitting it to deposit with the Court the $28,502,246.40 attorneys' fee award that Rimini

9  previously paid Oracle, pending the Court's adjudication of Oracle's renewed attorneys' fee

10  motion. Rule 67 contemplates precisely such an order where, as here, a party is in possession of

11  disputed funds that will be the basis of a forthcoming judgment. Once the Court resolves

12  Oracle's renewed attorneys' fee motion, the funds held in escrow can be disbursed by the Court

13  pursuant to its resolution of that motion. Particularly in light of Rimini's precarious financial

14  condition, unknown debt obligations, prior litigation misconduct, and inaccurate public

15  statements that it is entitled to receive a full "refund" of the attorneys' fees previously ordered by

16  the Court, good cause exists to deposit the attorneys' fee award with the Court rather than

17  returning it to Rimini, pending resolution of the renewed attorneys' fees motion.[1]

18  **II.     BACKGROUND**

19        **A.     The Court Entered A $124 Million Judgment Against Rimini,**
                **Which Rimini Paid in October 2016 With Funding From A**
20               **Questionable Third Party Funder.**

21        On October 18, 2016, the Court entered a final judgment against Rimini, awarding Oracle

22  $124,291,396.82 in damages, attorneys' fees, costs, and prejudgment interest, plus post-

23  judgment interest through the date of payment. ECF No. 1076. The Court entered this judgment

24  after a jury trial and verdict, as well as extensive post-trial briefing on issues including injunctive

25  relief, prejudgment interest, costs, and attorneys' fees, ECF No. 1049 at 1–2. The Court stated

---

26  [1] Oracle is prepared to promptly return to Rimini the damages that Rimini paid to Oracle under
   the state statutes ($14,427,000.00), as well as the related prejudgment interest ($5,279,060.12),
27  and the undisputed overpayment of costs ($1,515,285.45) (collectively totaling $21,221,345.57),
   as those matters have been settled by the Ninth Circuit's judgment and will not be the subject of
28  further adjudication in this Court.

ORACLE'S MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT

1    that Rimini behaved with "callous disregard for Oracle's copyrights" and "that Rimini's

2    egregious and continued infringement enabled it to rapidly build its business and gain market

3    share against Oracle in the software support service market by offering cut-rate prices on its

4    support services for Oracle software, generally at a discount of 50% of Oracle's prices for similar

5    service contracts." *Id.* at 5–6.

6          On October 31, 2016, Rimini paid Oracle that judgment in full, which amounted to

7    $124,330,923.27 including post-judgment interest.  Reblitz-Richardson Decl. ¶ 2.  Rimini's

8    payment to Oracle was based on $125 million obtained through Colbeck Capital Management

9    ("Colbeck") earlier in 2016 ("Colbeck Credit Facility").  Reblitz-Richardson Decl. ¶ 6, Ex. 3

10   (Rimini's June 28, 2016 press release). Colbeck is by its own description a "'special situations'

11   lender:  using its own unique and proprietary model for analyzing, structuring, and issuing loans,

12   it can offer loans to companies that may not be able to obtain financing elsewhere."  ECF No. 2

13   at 1, *Colbeck Capital Mgmt. v. Oracle Int'l Corp.*, No. 3:16-cv-00543-LRH-CWH (D. Nev. Sept.

14   8, 2016).  "In June 2016, Colbeck led a syndicate to raise $125 million in debt financing for

15   Rimini."  *Id.*  Colbeck also serves as lender or advisor to MindGeek, one of the largest

16   pornography aggregators on the internet.  ECF No. 57 at 7 n.1, *Colbeck Capital Mgmt. v. Oracle*

17   *Int'l Corp.*, No. 3:16-cv-00543-LRH-CWH (D. Nev. Dec. 22, 2017).

18         Rimini is now a publicly traded company.  Reblitz-Richardson Decl. ¶ 7, Ex. 4 (Rimini's

19   October 11, 2017 press release).  As indicated in Rimini's recent filings with the United States

20   Securities and Exchange Commission ("SEC"), substantially all of Rimini's assets, including

21   cash balances, are pledged as collateral under the Colbeck Credit Facility.  *Id.* ¶ 10, Ex. 7 at 8

22   (Rimini's March 6, 2018 Form S-8/S-3 Registration Statement).  As of the Sixth Amendment to

23   the Colbeck Credit Facility (effective October 3, 2017), Rimini owed a total of $135 million to

24   Colbeck, including the $125 million in aggregate principal and mandatory exit and consulting

25   fees of $10 million.  *Id.* at 6.

26

27

28

1

2      **B.      The Ninth Circuit Affirmed This Court's Copyright**
       **Infringement Judgment Against Rimini And The Substantial**
3      **Damages And Prejudgment Interest Awarded To Oracle For**
       **That Copyright Infringement.**

4      Rimini appealed this Court's judgment to the Ninth Circuit, contending that that Court's

5      rulings with respect to copyright infringement and a multitude of other issues were flawed and

6      subject to reversal.  The Ninth Circuit affirmed this Court's judgment and award of damages

7      against Rimini for ***all*** aspects of Oracle's claim that Rimini infringed 93 Oracle copyrights.

8      *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 953 (9th Cir. 2018).

9      The Ninth Circuit ruled that Rimini had no "general right to copy proprietary software,"

10     and that Rimini's "cross use" infringed Oracle's copyrights and was not permitted by the

11     applicable Oracle licenses.  *Id.* at 957.  Rimini also infringed Oracle's copyrights by copying

12     software "on Rimini's own computers, as opposed to the licensees' computers."  *Id.* at 959.  The

13     Ninth Circuit agreed with the Court's interpretation of the "facilities" restrictions in certain

14     Oracle licenses, explaining "that 'facilities under the control of a third party' could not qualify as

15     'the licensee's facilities.'  It was not only sensible but also necessary for the district court to read

16     a requirement of 'control' into the definition of '[a licensee's] facilities.'"  *Id.* at 960.

17     Because the Ninth Circuit affirmed in full Oracle's copyright infringement claim, it also

18     affirmed both the $35,600,000 in damages awarded for Rimini's copyright infringement and the

19     $22,491,636.16 awarded as prejudgment interest on that claim.  *Id.* at 962 n.7, 963.  The Ninth

20     Circuit further affirmed this Court's award of $12,774,550.26 in taxable costs to Oracle, and

21     reduced the non-taxable cost award to $3,435,281.25 based on a calculation error that Oracle did

22     not dispute.  *Id.* at 965–66.

23     **C.      The Ninth Circuit Remanded This Case So That This Court**
       **May Adjudicate Oracle's Renewed Motions For A Permanent**
24     **Injunction and Attorneys' Fees.**

25     The Ninth Circuit reversed the portion of this Court's judgment based on the state

26     computer access statutes, reaching a different construction of those statutes from this Court.  *Id.*

27     at 962.  According to the Ninth Circuit, "taking data using a *method* prohibited by the applicable

28

4

ORACLE'S MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT

1  terms of use, when the taking itself generally is permitted, does not violate" the state statutes.  *Id.*

2  Thus, the Ninth Circuit reversed the award of damages and prejudgment interest based on those

3  claims.  *Id.* at 962–63.  That amount totals $21,221,345.57 (see note 1, *supra*), which Oracle will

4  return to Rimini.

5         In light of its reversal on the state statutory violations, the Ninth Circuit vacated and

6  remanded the permanent injunction and attorneys' fee award for this Court's renewed

7  consideration on remand.  *Id.* at 953, 964–65.  The Ninth Circuit made clear that these are issues

8  committed to the Court's discretion.  *Id.* at 964–66. This motion only concerns the

9  $28,502,246.40 attorneys' fee award.

10         **D.    After The Ninth Circuit Denied Rimini's Rehearing Petition,**
         **Rimini Publicly Proclaimed That It Was "To Receive" A**
11         **"Refund" From Oracle Of The Entire Attorneys' Fee Award.**

12         Rimini petitioned for rehearing en banc in the Ninth Circuit, limited to the issues of

13  prejudgment interest and non-taxable costs.  On March 2, 2018, the Ninth Circuit denied

14  Rimini's petition.  Reblitz-Richardson Decl. ¶ 3, Ex. 1.  The appellate mandate issued on March

15  13, 2018.  *Id.* ¶ 4, Ex. 2.

16         On March 6, 2018, Rimini issued a press release, which it then included in an SEC filing,

17  entitled "Rimini Street ***to Receive*** Nearly $50 Million from Oracle."  *Id.* ¶ 11, Ex. 8 at Ex. 99.1

18  (Rimini's March 6, 2018 8-K) (emphasis added).  Referring to the Ninth Circuit's ruling, Rimini

19  stated that the "favorable appeal decision should result in a refund of nearly $50 million to

20  Rimini Street from Oracle."  *Id.*  Rimini further stated that it would "move forward to recover the

21  court-ordered refund of nearly $50 million from Oracle . . . ."  *Id.*  This press release came on the

22  heels of a January 24, 2018 press release by Rimini (following the Ninth Circuit's panel opinion)

23  stating that the Ninth Circuit's ruling "should result in a refund of up to nearly $50 million from

24  Oracle."  *Id.* ¶ 9, Ex. 6 (Rimini's January 24, 2018 press release).

25         Rimini's public proclamation that it is "to receive" a "refund of nearly $50 million" lacks

26  any plausible basis.  That figure includes not just the amounts for which the Ninth Circuit

27  reversed the judgment ($14,427,000 in state statutory damages, $5,279,060.12 prejudgment

28  interest on those damages, and approximately $1.5 million overpayment in taxable costs, totaling

5

1   around $21 million), but also includes the *__entire__* $28,502,246.40 attorneys' fee award.  Given

2   that Oracle's copyright infringement victory against Rimini was fully affirmed on appeal, that

3   Oracle's copyright claim was the centerpiece of the case and trial, and that the other claims in the

4   case were related to the copyright claims, Rimini has no good-faith basis to assert that it expects

5   a "refund" of all of the attorneys' fees previously awarded to Oracle. Rimini is publicly claiming

6   entitlement to a full refund of all fees paid to Oracle before any ruling from this Court on remand

7   regarding Oracle's entitlement to fees—despite that the Ninth Circuit specifically remanded that

8   issue for this Court's determination.

9       **E.      Rimini's Precarious Financial Situation Raises A Significant**
             **Risk Of Non-Payment Were Oracle To Return The Attorneys'**
10            **Fee Award to Rimini Pending This Court's Adjudication Of**
             **Oracle's Renewed Attorneys' Fee Motion.**

11      Oracle has significant concerns that a return of the disputed attorneys' fees to Rimini

12  pending the Court's adjudication of Oracle's renewed attorneys' fees motion would ultimately

13  result in non-payment to Oracle based on Rimini's inability to pay. Rimini's latest SEC filing

14  indicates that Rimini is in financial difficulty, due to indebtedness, growing losses, and decrease

15  in cash.  Those same filings indicate that if Rimini were to receive the disputed funds pending

16  resolution of the renewed attorneys' fees motion, those funds likely will be paid to third parties,

17  making Oracle's prospect of reclaiming those funds after adjudication of the fees motion even

18  less likely.

19      As Rimini stated in a March 6, 2018, SEC filing:  "We have substantial indebtedness, and

20  the fact that a significant portion of our cash flow is used to make debt service payments could

21  adversely affect our ability to raise additional capital to fund our operations."  Reblitz-

22  Richardson Decl. ¶ 10, Ex. 7 at 6 (Rimini's March 6, 2018 Form S-8/S-3 Registration

23  Statement).  Further:  "Significant amounts of cash will be required to service our indebtedness,

24  and we may not be able to generate sufficient cash from operations or otherwise to service all of

25  our indebtedness when due."  *Id.*  As explained above, substantially all of Rimini's assets,

26  including cash balances, are pledged as collateral under the Colbeck Credit Facility, to which

27  Rimini owes $135 million.  *Id.* at 6, 8.  Moreover, Rimini's contractual obligations under the

28

ORACLE'S MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT

1  Colbeck Credit Facility for the twelve months ending December 31, 2018 are $43 million, up

2  from $40.9 million in the preceding period.  Reblitz-Richardson Decl. ¶ 8, Ex. 5 at 64 (Rimini's

3  December 1, 2017 Form S-1 Registration Statement).  The publicly available information

4  indicates that Colbeck has no equity stake in Rimini, and as Colbeck is solely a creditor, its only

5  interest is in receiving cash from Rimini.

6      Rimini has also recently reported increasing net losses.  In the nine months ending

7  September 30, 2017, Rimini reported a net loss of $49.2 million, approximately $12 million

8  greater than in the nine months ending September 30, 2016 (in which Rimini had a net loss of

9  $37.3 million).  *Id.* at F-4 (Income Statement).

10      The same is true for cash on hand.  For the nine months ending September 30, 2017,

11  Rimini reported an overall net decrease in cash and cash equivalents of $12.6 million; excluding

12  cash Rimini received in 2017 from an insurance settlement, Rimini's net decrease in cash and

13  cash equivalents would have been $25.9 million.  *Id.* at F-6 (Cash Flow Statement).  Although

14  Rimini received a net capital infusion of $42.4 million from its merger in October 2017, $16.5

15  million went to paying mandatory exit fees on the Colbeck Credit Facility and transaction costs;

16  the remaining $25.9 million went to Rimini's balance sheet in a "restricted cash control account

17  under the Credit Facility."  *Id.* at F-21.

18      Finally, Rimini's SEC filings indicate that any payments from Oracle to Rimini would be

19  paid by Rimini to third parties, including insurance carriers and Colbeck:  "Certain of the final

20  refund amounts, net of our costs of the appeal, may be returned to insurance carriers as required

21  from our policies with them.  In addition, all net refund amounts would be required to be utilized

22  to pay down our current Credit Facility (including make-whole applicable premium if received

23  prior to June 24, 2019)."  *Id.* ¶ 10, Ex. 7 at 3 (Rimini's March 6, 2018 Form S-8/S-3 Registration

24  Statement).  The payment of any such returned funds to third parties underscores the risk to

25  Oracle of paying any amount to Rimini now and the need to preserve the status quo.

26

27

28

1    **III.    ARGUMENT**

2        **A.    The Court Should Issue An Order Under Rule 67 Permitting Oracle
              To Deposit The Attorneys' Fee Award With The Court Pending
3             Adjudication Of Oracle's Renewed Attorneys' Fee Motion.**

4            Federal Rule of Civil Procedure 67 applies to the situation at issue:  Oracle is in

5    possession of a disputed sum of money (the $28,502,246.40 in attorneys' fees previously

6    awarded by the Court), and Oracle seeks to deposit that money into escrow with the Court

7    pending resolution of Oracle's renewed fees motion.  When ownership of money is in dispute,

8    Rule 67 allows a party to deposit the money with the Court until ownership is decided.  Fed. R.

9    Civ. P. 67(a) ("If any part of the relief sought is a money judgment or the disposition of a sum of

10   money or some other deliverable thing, a party—on notice to every other party and by leave of

11   court—may deposit with the court all or part of the money or thing, whether or not that party

12   claims any of it."); *see also Mut. of Omaha Ins. Co. v. Estate of Arachikavitz*, No. 2:06-CV-

13   00830-BES, 2007 WL 2788604, at *4 (D. Nev. Sept. 21, 2007) (explaining that under Rule 67,

14   "a party, with the court's permission, may deposit with the court, all or any part of a sum of

15   money," and granting defendant's motion to deposit funds); *AT&T Commc'ns of Cal. v. Pac-*

16   *West Telecomm, Inc.*, No. C 06 07271 JSW, 2007 WL 1114037, at *1 (N.D. Cal. Apr. 13, 2007)

17   (explaining that "Rule 67 enables a party to be relieved of responsibility for a disputed fund,

18   while the parties litigate ownership of the fund," and granting plaintiff's motion to deposit

19   funds).  "The question of whether or not to grant a Rule 67 motion is a matter committed to the

20   Court's discretion."  *AT&T*, 2007 WL 1114037, at *1.

21               **1.    There Is A Genuine Dispute About The Ownership Of
                        The Attorneys' Fees.**
22
23           Deposit of funds under Rule 67 is appropriate where, as here, "the question of entitlement

     is genuinely in dispute."  *Jagar v. Jagar*, No. C-09-01455 EDL, 2010 WL 890938, at *1 (N.D.
24
     Cal. Mar. 10, 2010) (quoting *Alstom Caribe, Inc. v. George P. Reintjes Co., Inc.*, 484 F.3d 106,
25
     113 (1st Cir. 2007)).  In addition, "the entitlement dispute must be live; that is, the dispute must
26
     be extant at the time the court is asked to grant the Rule 67 motion."  *Id.*
27
             Here, there is a genuine dispute about entitlement to these funds.   Oracle contends it is
28

1   entitled to the full amount of attorneys' fees previously awarded and paid to Oracle, and it will

2   seek relief through a renewed motion to recover those fees.  Reblitz-Richardson Decl. ¶ 5.

3   Meanwhile, Rimini has publicly stated that it believes it is entitled to a full "refund" of those

4   funds.  *Id.* ¶ 9, Ex. 6 (Rimini's January 24, 2018 press release).  Thus a clear dispute exists

5   between the parties concerning which party should receive the funds at issue.[2]

6         Because the parties' entitlement to these funds will remain in dispute until the Court

7   issues an order on Oracle's renewed motion for attorneys' fees, the Court may and should issue a

8   Rule 67 order allowing Oracle to deposit the funds with the Court.  That is precisely the relief

9   contemplated by Rule 67, pending resolution of the ownership dispute.[3]  *See Qwest Corp. v. City*

10   *of Portland*, 204 F.R.D. 468, 470 (D. Or. 2001) ("Rule 67's 'purpose is to relieve the depositor

11   of responsibility for the fund in dispute while the parties hash out their differences with respect

12   to it.' ") (quoting *Cajun Elec. Power Coop., Inc. v. Riley Stoker Corp.*, 901 F.2d 441, 444–45

13   (5th Cir. 1990)); *Mut. of Omaha*, 2007 WL 2788604, at *4 ("Once funds are deposited, the court

14   should determine ownership and make disbursements.").

15          **2.     Although Not Required For A Rule 67 Order, Oracle Is**
                       **Likely To Succeed On Its Fees Motion.**

16

17         When deciding a Rule 67 motion, "the Court may consider the likelihood of success" on

18   the party's underlying claim of entitlement to the funds at issue.  *AT&T*, 2007 WL 1114037, at

19   *1.  The moving party "need not establish a likelihood of success" to prevail, but it "weighs in

20   favor of granting the motion."  *Id.*  Here, Oracle's likelihood of success in obtaining an

21   attorneys' fee award on remand weighs strongly in favor of a Rule 67 order.

22   [2] Even Rimini conceded in a recent SEC filing (despite its unfounded public statements that
Rimini was "to receive" a full refund of the fee award) that any amount "owed by Oracle will be

23   subject to the District Court judge's review of attorney's fees that were remanded."  *Id.* ¶ 10, Ex.
7 at 3 (Rimini's March 6, 2018 Form S-8/S-3 Registration Statement).

24   [3] District courts routinely exercise their discretion to order funds to be deposited with the court
under Rule 67.  *See, e.g.*, *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SA CV 12-1861-

25   JGB, 2016 WL 1069039, at *6 (C.D. Cal. Mar. 17, 2016); *Prudential Ins. Co. of Am. v. Wells*,
No. CV-15-08170-PCT, 2016 WL 687135, at *3 (D. Ariz. Feb. 19, 2016); *Metro. Life Ins. Co. v.*

26   *Leonis*, No. 14-cv-01104-JST, 2014 WL 6065819, at *2 (N.D. Cal. Nov. 12, 2014); *Putz v.
Golden*, No. C10-0741JLR, 2012 WL 5293354, at *4–5 (W.D. Wash. Oct. 26, 2012); *Thrivent*

27   *Fin. for Lutherans v. Epstein*, No. C08-5671BHS, 2008 WL 11344642, at *2 (W.D. Wash. Dec.
23, 2008); *Mut. of Omaha*, 2007 WL 2788604, at *4.

28

1    Oracle's forthcoming renewed motion for attorneys' fees will detail the reasons why

2    Oracle remains entitled to the entire amount of fees previously awarded, and Oracle respectfully

3    refers the Court to that forthcoming briefing. Oracle should be granted the full sum of the

4    previously awarded fees because, as the Court stated in ordering fees initially, "the trial was a

5    copyright infringement case first and foremost, regardless of all other claims pled." ECF No.

6    1049 at 14. That is equally true now as it was when the Court ruled on the initial attorneys' fee

7    motion. Under 17 U.S.C. § 505, Oracle is entitled to recover fees for all claims (whether

8    successful or unsuccessful) that are related to its successful copyright claims. *Webb v. Sloan*,

9    330 F.3d 1158, 1168 (9th Cir. 2003); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429

10   F.3d 869, 884 (9th Cir. 2005) (citing *Webb*); *see also Marsu, B.V. v. Walt Disney Co.*, 185 F.3d

11   932, 939 (9th Cir. 1999). And the Ninth Circuit affirmed this Court's judgment with respect to

12   **_all_** aspects of Oracle's copyright claim (involving 93 copyrights), as well as the full resulting

13   damages award of $35,600,000. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 953 (9th

14   Cir. 2018). Accordingly, Oracle's likelihood of success in obtaining fees on remand weighs

15   strongly in favor of granting this motion.

16           **3.      Although Also Not Required For A Rule 67 Order,**
                        **Rimini's Financial Distress And Resulting Risk Of Non-**
17                      **Payment Provide Further Support For This Motion.**

18           When adjudicating a Rule 67 motion, courts may consider "indication[s] that a [party]

19   could not satisfy a judgment against it." *Qwest Corp.*, 204 F.R.D. at 470. This consideration

20   also strongly weighs in favor of granting this motion. As detailed above, and as reflected in

21   Rimini's recent SEC filings, Rimini appears to be in financial distress, creating a real risk that it

22   will not be able to pay the Court's eventual attorneys' fee judgment if Oracle were to return the

23   attorneys' fee award to Rimini now. *See supra* Section II.E. Creating further risk to Oracle's

24   ability to collect is Rimini's apparent obligation to immediately pay any such "refund" from

25   Oracle to third parties, including its insurance carriers and Colbeck, to which Rimini owes $135

26   million. *See id.* In short, Rimini's financial distress and obligations to third parties underscore

27   the need to preserve the status quo by allowing Oracle to deposit the disputed funds with the

28   Court, so that they are available for disbursement upon the Court's attorneys' fee ruling.

**IV.     CONCLUSION**

For these reasons, Oracle respectfully requests that the Court issue an order permitting Oracle to deposit the full $28,502,246.40 awarded and paid to Oracle as fees with the Court in its Registry Account, to be disbursed according to the resolution of Oracle's renewed motion for attorneys' fees on remand.

Dated:   March 13, 2018

BOIES SCHILLER FLEXNER LLP

By:        /s/ William Isaacson

William Isaacson
Attorneys for Plaintiffs
Oracle USA, Inc.,
Oracle America, Inc. and
Oracle International Corporation

ORACLE'S MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT

1

## **<u>CERTIFICATE OF SERVICE</u>**

2    I certify that on March 13, 2018, I electronically transmitted the foregoing **ORACLE'S**

3  **MOTION TO DEPOSIT ATTORNEYS' FEE AWARD WITH THE COURT AND**

4  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** to the

5  Clerk's Office using the Electronic Filing System pursuant to Local Rules Section 1C.

6  Dated: March 13, 2018                    BOIES SCHILLER FLEXNER LLP

7

8                                    By:  /s/ *Ashleigh Jensen*
                                              Ashleigh Jensen
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

CERTIFICATE OF SERVICE