1   BOIES SCHILLER FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES SCHILLER FLEXNER LLP
    WILLIAM ISAACSON (*pro hac vice*)
6   KAREN DUNN (*pro hac vice*)
    1401 New York Avenue, NW, 11th Floor
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES SCHILLER FLEXNER LLP
    STEVEN C. HOLTZMAN (*pro hac vice*)
11  BEKO O. REBLITZ-RICHARDSON (*pro hac
    vice*)
12  1999 Harrison Street, Suite 900
    Oakland, CA 94612
13  Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
14  sholtzman@bsfllp.com
    brichardson@bsfllp.com
15

16  Attorneys for Plaintiffs
    Oracle USA, Inc., Oracle America, Inc., and
17  Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
thomas.hixson@morganlewis.com
john.polito@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

18              UNITED STATES DISTRICT COURT

19                  DISTRICT OF NEVADA

20
21  ORACLE USA, INC., a Colorado corporation;
    ORACLE AMERICA, INC., a Delaware
    corporation; and ORACLE INTERNATIONAL
22  CORPORATION, a California corporation,

23              Plaintiffs,

24      v.

25  RIMINI STREET, INC., a Nevada corporation;
    and SETH RAVIN, an individual,

26              Defendants.
27
28

Case No. 2:10-cv-0106-LRH-VCF

**ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES**

*PUBLIC REDACTED VERSION*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................ 1

II. STATEMENT OF FACTS .............................................................................. 3

    A. Throughout This Litigation, Rimini Lied About and Concealed Its Conduct ............................................................................................... 3

        1. Rimini's Misrepresentations About Cross-use ............................ 3

        2. Rimini's False Statements About Its Use of Siebel and JD Edwards Environments Prevented Resolution of Liability at Summary Judgment ...................................................................... 4

        3. Rimini's Spoliation of Evidence ................................................. 5

        4. Rimini Repeatedly Failed to Provide Complete and Accurate Discovery .................................................................................... 6

        5. Rimini Disregarded Court Orders and Continually Raised Arguments the Court Had Rejected ............................................ 6

    B. Despite Rimini's Conduct Throughout This Litigation, Oracle Prevailed on Its Copyright Claims and Rimini's Copyright Defenses and Counterclaims ............................................................................................ 7

    C. Rimini's History of Infringement and Its Reckless Business Strategy and Wasteful Litigation Tactics Continue ............................................... 8

III. DISCUSSION ................................................................................................ 10

    A. Oracle Is the Prevailing Party on Its Copyright Claims ...................... 10

    B. The Relevant Factors Strongly Favor Awarding Attorneys' Fees to Oracle ....... 10

        1. Oracle Was Successful on Each of Its 93 Copyright Claims Against Rimini ........................................................................... 11

        2. Rimini's Objectively Unreasonable Litigation Tactics Made It Very Expensive for Oracle to Prevail ...................................... 11

        3. Oracle Should Be Made Whole .................................................. 13

        4. Rimini's Gambles with the Law Must Be Deterred ................... 13

        5. Innovation Should Be Incentivized ............................................ 14

    C. Fees for Claims Related to the Core Copyright Claims Are Recoverable .......... 15

    D. The Court's Prior Fees Award of $28.5 Million Was Reasonable and Should Be Reinstated ........................................................................... 16

        1. The Rates Actually Paid by Oracle Were Reasonable Hourly Rates ....... 17

        2. The Amount of Time Billed on This Case Was Reasonable .................. 21

IV. CONCLUSION .............................................................................................. 22

ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany &*
5
    *Albany Cnty. Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008) .............................................................................. 19

6

*Ballen v. City of Redmond*,
7
    466 F.3d 736 (9th Cir. 2006) ............................................................................. 17

8

*Camacho v. Bridgeport Fin., Inc.*,
9
    523 F.3d 973 (9th Cir. 2008) ............................................................................. 19

10

*Casella v. Morris*,
    820 F.2d 362 (11th Cir. 1987) ........................................................................... 11

11

*Counts v. Meriwether*,
12
    2:14-cv-00396-SVW-CW, 2016 WL 1165888 (C.D. Cal. Mar. 9, 2016) ........... 15

13

*Dice Corp. v. Bold Techs. Ltd.*,
    No. 11-CV-13578, 2014 WL 2763618 (E.D. Mich. June 18, 2014) ................... 15
14

15

*Dillard v. City of Greensboro*,
    213 F.3d 1347 (11th Cir. 2000) ......................................................................... 18

16

*Ferland v. Conrad Credit Corp.*,
17
    224 F.3d 1145 (9th Cir. 2001) ........................................................................... 17

18

*Fogerty v. Fantasy, Inc.*,
19
    510 U.S. 517 (1994) ................................................................................... 13, 14

20

*Foster v. Kings Park Cent. Sch. Dist.*,
    174 F.R.D. 19 (E.D.N.Y. 1997) ................................................................... 15, 16

21

*Gonzalez v. City of Maywood*,
22
    729 F.3d 1196 (9th Cir. 2013) ................................................................ 16, 17, 21

23

*IO Grp., Inc. v. Jordan*,
    No. C 09-0884 MEJ, 2010 WL 2231793 (N.D. Cal. June 1, 2010) ................... 13
24

25

*Jackson v. Axton*,
    25 F.3d 884 (9th Cir. 1994) ......................................................................... 10, 11

26

*Kirtsaeng v. John Wiley & Sons, Inc.*,
27
    136 S. Ct. 1979 (2016) ............................................................................... *passim*

28

*Kourtis v. Cameron*,
  358 Fed.App'x. 863 (9th Cir. 2009)......................................................................... 18

*Louisville Black Police Officers Org., Inc. v. City of Louisville*,
  700 F.2d 268 (6th Cir. 1983)................................................................................... 19

*Magnuson v. Video Yesteryear*,
  85 F.3d 1424 (9th Cir. 1996)................................................................................... 14

*Marsu, B.V. v. Walt Disney Co.*,
  185 F.3d 932 (9th Cir. 1999)................................................................................... 15

*Minow v. Lexus*,
  No. CV 06-7496 CAS, 2008 WL 11338145 (C.D. Cal. Aug. 15, 2008) ................. 15

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982)................................................................................... 18

*National Assoc. of Concerned Veterans v. Secretary of Def.*,
  675 F.2d 1319 (D.C.Cir.1982) ................................................................................ 18

*Pacquiao v. Mayweather*,
  2012 WL 4092684 (D. Nev. 2012) ......................................................................... 18

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. 11-07098, 2015 WL 1746484 (C.D. Cal. Mar. 25, 2015).................................. 17, 20, 21

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010)................................................................................... 17

*Resurrection Bay Conservation All. v. City of Seward Alaska*,
  640 F. 3d 1087 (9th Cir. 2011)................................................................................ 17

*Rubbermaid Commercial Products, LLC v. Trust Commercial Products*,
  No. 2:13-cv-02144, 2014 WL 4987878 (D. Nev. Aug. 22, 2014).................................. 20, 21

*Sega Enterprises Ltd. v. MAPHIA*,
  948 F. Supp. 923 (N.D. Cal. 1996) ......................................................................... 12

*Symantec Corp. v. Logical Plus, Inc.*,
  No. C 06-7963 SI, 2010 WL 2330388 (N.D. Cal. June 4, 2010)............................. 15

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
  340 F.3d 829 (9th Cir. 2003)................................................................................... 15

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
  429 F.3d 869 (9th Cir. 2005)................................................................................... 15

*Webb v. Sloan*,
  330 F.3d 1158 (9th Cir. 2003)................................................................................. 15

ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES

1

**Statutes**

2

17 U.S.C. § 505 ........................................................................................................ 1, 10, 15, 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES

1    **NOTICE OF MOTION AND MOTION**

2        Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

3    (together, "Oracle") will and hereby do move for an award of attorneys' fees against Defendant

4    Rimini Street, Inc. ("Rimini").  This motion is based on this Notice of Motion and Motion; the

5    Memorandum of Points and Authorities incorporated herein; the supporting Declaration of

6    Zachary Hill filed concurrently with this motion; the previously filed papers and declarations

7    supporting Oracle's November 13, 2015 Motion for Attorneys' Fees and Costs, including ECF

8    Nos. 921, 922, 923, 924, 925, 931, 933, 934, 937, 939, 952, 969, 972, 973, 996, 1017, 1020,

9    1023, 1024, 1025, 1027, 1033, 1046, and 1049; documents incorporated by reference; the entire

10   record in this action; matters appropriate for judicial notice; and any evidence or argument

11   presented on reply or at the hearing.

12    **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I.    INTRODUCTION**

14       Following the jury's 2015 verdict for Oracle on each of Oracle's 93 copyright

15   infringement claims and award of damages on Oracle's copyright infringement and state

16   computer access claims, the Court granted Oracle's motions for attorneys' fees and costs,

17   prejudgment interest, and an injunction.  Rimini appealed.  The Ninth Circuit affirmed the

18   Court's judgment with respect to all the copyright infringement claims, reversed with respect to

19   the state computer access claims and remanded for reconsideration the award of $28,502,246.40

20   in attorneys' fees.  Oracle now renews its motion for attorneys' fees and requests that the Court

21   award Oracle the amount it awarded in the original fees order on the same grounds the Court

22   previously identified.

23       With the jury verdict on all Oracle's copyright infringement claims affirmed, Oracle

24   remains the prevailing party, and the Court has discretion to award attorneys' fees under 17

25   U.S.C. § 505 based on a five-factor test:  (1) Oracle's degree of success, (2) the objective

26   unreasonableness of Rimini's litigation conduct, (3) the need to make Oracle whole, (4) the need

27   to deter Rimini's continuing infringement, and (5) the need to further the aims of the copyright

28

1    laws by incentivizing innovators to protect their intellectual property.  ECF No. 1049 at 13.  The

2    Ninth Circuit's decision does not alter this Court's prior analysis on any of these five factors.

3         On the copyright claims, Oracle's degree of success remains unchanged.  Oracle won

4    each of the 93 copyright claims, and won on Rimini's affirmative defense of copyright misuse.

5    The jury awarded a $35.6 million verdict for copyright infringement, and the Court awarded

6    $22.5 million in pre-judgment interest on the infringement judgment, both challenged and

7    affirmed on appeal, along with an additional $16.2 million in costs.  The Ninth Circuit's reversal

8    on Oracle's state computer access claims does not affect Oracle's degree of success on its

9    copyright claims.

10        The Ninth Circuit's remand also has no effect on the other factors that the Court already

11   found in Oracle's favor, including Rimini's objectively unreasonable litigation conduct "based

12   on a clear misreading of Oracle's software licensing agreements and a conscious disregard for

13   the manner that Rimini used and housed Oracle's copyrighted software programs on its own

14   servers" (ECF No. 1049 at 15); the need to make Oracle whole and further the aims of the

15   Copyright Act by compensating Oracle for the "significant amount of resources in legal fees and

16   costs over what was eventually awarded in damages just to stop [Rimini's] unlawful conduct"

17   and to protect the software "Oracle has spent decades developing" (*id.* at 16:10-13); and the need

18   to deter Rimini "from its pattern of infringing Oracle's copyrights" (*id.* at 16).

19        The Ninth Circuit's remand appears to focus on whether the quantum of attorneys' fees

20   awarded should remain unchanged after reversal of the California computer fraud claim.  The

21   award should remain unchanged because, as this Court found, this case "was a copyright

22   infringement case first and foremost, regardless of all other claims pled."  ECF No. 1049 at 14.

23   Further, Oracle may recover any attorneys' fees incurred in litigating claims involving the same

24   "common core of facts" and "related legal theories" at issue in Oracle's copyright claims.

25   Rimini's "access" of Oracle's computer systems was just one method by which Rimini copied

26   Oracle software and infringed Oracle's copyrights, and therefore, fees incurred litigating

27   Oracle's computer access claims are recoverable.

28

1    Finally, the Court's prior award was reasonable and well within its discretion.  The Court

2    already found that, with a 20% blanket fee reduction, Oracle's attorneys' rates and time billed

3    were reasonable, and the Ninth Circuit's opinion did not alter that finding.  Therefore, based on

4    the same evidence that the Court has already considered and the same reasoning the Court has

5    already adopted, Oracle respectfully requests that the Court grant Oracle's request for attorneys'

6    fees and reinstate the $28,502,246.40 previously awarded.

7    **II.**    **STATEMENT OF FACTS**

8        **A.**    **Throughout This Litigation, Rimini Lied About and Concealed Its Conduct**

9    Oracle filed suit against Rimini in January of 2010, and Rimini forced Oracle to incur

10   unnecessary expenses from the beginning of discovery all the way to trial.

11               **1.**    **Rimini's Misrepresentations About Cross-use**

12   From the beginning, Rimini made false statements to Oracle, the Court, and the public

13   regarding Rimini's core support processes.  After being held in contempt by this Court for failure

14   to appear at deposition, Seth Ravin, Rimini's founder and CEO, appeared at deposition in 2010

15   and testified that Rimini's ███████████████████████████████████████████████████

16   ███████████████████████████████████████████████"  ECF No. 923, Ex. 21 (Ravin 7/21/10

17   Dep.) at 321:17-23.  He also testified that Rimini ████████████████████████████████

18   ████████████████████████  *Id.* at 307:4-12; *see also id.* at 307:13-308:13, 306:3-13.  He

19   testified that ██████████████████████████████████████████

20   ███████████████████████████████████████████████████████████████████

21   █████████████████████████  *Id.* at 303:9-23; *see also* Trial Transcript ("Tr.") at 804:20-

22   805:5 (Ravin).  He said that Rimini's ███████████████████████████████████

23   ███████████████  ECF No. 923, Ex. 21 (Ravin 7/21/10 Dep.) at 325:20-326:9.  Rimini's Rule

24   30(b)(6) designee, Senior Vice President Brian Slepko, provided similar testimony, asserting that

25   "all the development is done for a particular customer in that customer's environment using that

26   customer's files" and "that work [is] repeated for each customer for whom that work is

27   applicable," meaning that "development is done for – on a particular customer's environment

28   and then one at a time across customers."  Tr. at 3173:17–3175:3.

ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES

1    Rimini repeated these lies to the Court.  In its June 16, 2011 answer to Oracle's

2    complaint, Rimini claimed that "each client is assigned a separate data 'silo' where Oracle

3    Software and Support Materials for only that client are maintained."  ECF No. 153, ¶ 4; *see also*

4    ECF No. 136 at 11-12; ECF No. 523, ¶¶ 37-50, 82-90.  Rimini similarly repeated these lies to its

5    customers and the market.  *E.g.*, Tr. 319:10-14, 453:20- 454:10, 471:24-472:4, 547:23-548:1

6    (Ravin); 1396:10-14, 1398:2-5, 1398:20- 1399:7, 1406:10-1407:13, 1434:21-24 (Maddock);

7    PTX 241, 5352; *see also* Tr. 1412:6-10 & 1414:9-12 (Maddock) (admitting that Rimini had no

8    legitimate basis for its falsehoods).

9    Rimini knew its statements were false, and Oracle had to spend a considerable amount of

10   time and resources on discovery and expert analysis to prove it.  ECF No. 923 ¶ 17; ECF No.

11   924 ¶ 11; *see also* ECF No. 136 at 9:15-10:19.  In its February 13, 2014, ruling holding that

12   Rimini had infringed Oracle's copyrights, the Court exposed this deceit, finding that one

13   customer's "development environments were used to develop and test software updates for the

14   City of Flint and other Rimini customers with similar software licenses."  ECF No. 474 at 11.

15   Only after Oracle presented the evidence and expert testimony that it had amassed did Rimini

16   finally admit to its wrongdoing.  It was not until trial that Ravin finally admitted that cross-use

17   occurred "all the time."  Tr. 799:6-12, 803:10-12 (Ravin).  Ravin also finally admitted that the

18   significant evidence of unauthorized copying that Oracle had discovered and Oracle's expert had

19   analyzed "looked pretty accurate."  Tr. 551:10-15 (Ravin).

20          **2.      Rimini's False Statements About Its Use of Siebel and JD Edwards
               Environments Prevented Resolution of Liability at Summary
21             Judgment**

22   Rimini's false claims about its conduct were not limited to cross-use.  In response to

23   Oracle's motion for summary judgment, Rimini made numerous false statements about its use of

24   Oracle's JD Edwards and Siebel software.  For example, Rimini claimed that "Siebel and J.D.

25   Edwards environments maintained by Rimini are not open for development use," "Rimini did not

26   use Siebel or J.D. Edwards environments to develop, test, or package updates," "Rimini's JDE

27   support professionals generally do not use the local JDE environments for development, and

28   these environments are rarely accessed," and "Rimini's maintenance of environments on behalf

1    of its J.D. Edwards customers was for archival purposes." ECF No. 269, Rimini Responses to

2    Oracle's Statement of Facts, Fact Nos. 56, 76 & Rimini Facts 41, 46.

3            The Court denied summary judgment as to the infringement of Siebel and JD Edwards

4    software only because Rimini's false statements led the Court to find disputed issues of material

5    fact (ECF No. 474 at 22-24 & n.20), forcing Oracle to go to trial to prove liability.  It was only at

6    trial—five and a half years after Oracle filed suit—that Rimini finally admitted the truth.  *E.g.*,

7    Tr. 303:1-5 (Ravin) (Rimini "used all of the software," including all its "Siebel software" and

8    "JDE software" in its "work for customers."); 364:3-6 (Ravin) (environments on Rimini's

9    systems were "used in order to support customers"—that was their "full design and purpose");

10   318:19-22, 364:7-9 (Ravin) (Siebel environments were designed at the outset for, among other

11   uses, "testing and development" and "troubleshooting"); Tr. 1146:5-25 (Chiu) (Siebel copies

12   "used to provide support"); Tr. 758:23-759:4 (Ravin) (same); Tr. 1754:8-15 (Whittenbarger)

13   (Siebel copies used for training); Tr. 367:2-8 (Ravin) (J.D. Edwards environments were for

14   "testing and development" and for "diagnostics and support"); *see also* ECF No. 865 (detailing

15   JD Edwards and Siebel evidence).

16           Rimini's litigation conduct was extraordinarily wasteful in addition to being unethical.

17   Rimini fabricated disputed issues of material fact on summary judgment, only to have its CEO

18   admit infringement at trial three years – and millions of dollars – later.

19                        **3.        Rimini's Spoliation of Evidence**

20           Rimini also ignored its preservation obligations and destroyed evidence.  Rimini

21   destroyed a key computer directory containing Oracle software that Rimini used for multiple

22   customers in violation of the customer licenses.  Magistrate Judge Leen found that Rimini

23   intentionally deleted this "software library" well after Rimini was on notice of potential litigation

24   and aware that the co-mingled software library was potentially relevant evidence.  ECF No. 466

25   at 17:15-17.

26           Judge Leen sanctioned Rimini for destroying this evidence.  *Id.* at 18:17-23.  Given

27   Rimini's prior false assurances that the Oracle software library never existed, Judge Leen

28   "underst[ood] Oracle's reservations about the veracity" of Rimini's representations.  *Id.* at 18:2.

ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES

1     Rimini's actions not only forced Oracle to bring a spoliation motion, but they were also part of a

2     pattern of conduct that caused Oracle's attorneys and technical consultants to spend significantly

3     more time in discovery than should have been necessary to prove Oracle's infringement case.

4     ECF No. 923 ¶ 17 (explaining how Oracle had to search for and analyze anecdotal evidence of

5     how Rimini used its unlawful software library because records of the library were not available);

6     ECF No. 924 ¶ 11 (same).

7              **4.      Rimini Repeatedly Failed to Provide Complete and Accurate
                        Discovery**
8
9              One of the key pieces of evidence throughout the litigation was Rimini's response to

10    Oracle's Interrogatories 20-22.  These responses detailed the copies of PeopleSoft, JD Edwards,

11    and Siebel software stored and used on Rimini's local servers (referred to as "local

12    environments" at trial).  This information was readily accessible to Rimini, since it created the

13    local environments and used them on a daily basis.  Nevertheless, Rimini produced five

14    iterations of those responses over the course of discovery.  ECF No. 923 ¶ 18.  But Rimini did

15    not produce each new iteration of its own will.  Rather, upon receiving each new version of

16    Rimini's list of local environments, Oracle had to investigate the list for completeness by

17    exhaustively reviewing documents and analyzing data sources.  Oracle then had to draft meet

18    and confer letters detailing gaps in Rimini's iterative lists and requesting supplemental

19    information.  *See id.*, Exs. 10-12 (letters to Rimini identifying inadequacies in discovery

20    response).

21             **5.      Rimini Disregarded Court Orders and Continually
                        Raised Arguments the Court Had Rejected**

22             Rimini's tactics and unreasonableness extended to ignoring Court orders.  For example,

23    despite dismissal of its copyright misuse counterclaim in 2010, ECF No. 111, Rimini continued

24    to argue the claim at trial (and continued to argue it after trial), creating additional and

25    unnecessary work for Oracle.  ECF No. 741 (Rimini Trial Brief) at 3 n.2, 15-18; ECF No. 906

26    (Rimini Opp. to Oracle Motion for Permanent Injc.) at 16-18.  Rimini also reasserted defenses

27    that it had affirmatively waived, at and even after trial.  ECF No. 771 (Oracle's Opposition to

28    Rimini's Objections to Jury Instructions) at 6 ("Rimini requests that authorization under 17

1   U.S.C. § 117(a) be included in the explanation of a copyright holder's rights proposed at P-4 and

2   P-11.  Rimini Obj. 7-8.  Rimini had already waived any defense under that statute.  ECF No. 401

3   (Amended Stipulation re Copyright Registrations and Copies), ¶¶ 13-14.");  ECF No. 907 at 17.

4   **B.    Despite Rimini's Conduct Throughout This Litigation, Oracle**
        **Prevailed on Its Copyright Claims and Rimini's Copyright**
5       **Defenses and Counterclaims**

6   Despite years of Rimini lies and concealment, Oracle discovered the truth and prevailed

7   against Rimini on Oracle's 93 copyright claims, including every product line at issue:

8   PeopleSoft, JD Edwards, Siebel, and Database.  ECF No. 896 (Verdict); ECF No. 474 (Order on

9   MSJ #1); ECF No. 476 (Order on MSJ #2).  While Rimini's damages expert opined that Oracle

10  suffered damages of no more than $10 million (Tr. 2706:14-2707:5 (Hampton), 3584:24-

11  3587:20, 3604:7-12 (Rimini closing)), the jury awarded Oracle $35.6 million in damages for

12  Rimini's infringement.  ECF No. 896 (Verdict).  This Court also awarded an injunction to Oracle

13  to prevent further infringement by Rimini (ECF No. 1049 at 22), which was stayed by the Ninth

14  Circuit pending appeal, and Oracle now seeks to reinstate the copyright infringement portion of

15  the injunction on grounds unaffected by the Ninth Circuit's opinion.  The Court also awarded

16  substantial prejudgment interest and taxable and non-taxable costs, which the Ninth Circuit

17  largely affirmed, including an additional $22.5 million in prejudgment interest, $12.8 million in

18  taxable costs, and $3.4 million in non-taxable costs.  *Oracle USA, Inc.*, 879 F.3d at 965-66; *see*

19  *also id.* at 964 ("It is true that prejudgment interest is an element of compensation, not a

20  penalty") (quotation marks and citation omitted).

21  Oracle successfully moved to dismiss Rimini's counterclaims for copyright misuse and

22  unfair competition (ECF No. 111), and Oracle defeated Rimini's counterclaim for defamation

23  and Rimini's affirmative defenses of express license, consent to use, and implied license on

24  summary judgment (ECF No. 474).  Oracle either dropped before verdict or failed to prevail on

25  the following claims, either at trial or on appeal:  state and federal computer access claims,

26  trespass to chattels claim, breach of contract, inducing breach of contract, intentional

27  interference, unfair competition, unjust enrichment, and accounting claims.

28  All of these claims—successful or unsuccessful—centered around Oracle's copyright

1    infringement claims.  The misuse of copyright claim and affirmative defense and Rimini's other

2    affirmative defenses to Oracle's copyright infringement claims are obviously closely intertwined

3    with Oracle's infringement claim.  Rimini's defamation and unfair competition claims were

4    based on Oracle's statements about Rimini's massive theft of Oracle's intellectual property.

5    Based on its own summary judgment ruling, the Court found that Oracle's statements were true,

6    and thus Rimini's claims failed.  ECF No. 476 at 29-30.

7        The allegations in Oracle's complaint and trial testimony show that Oracle's computer

8    access claims and tort claims always shared a core of facts intertwined with its copyright claims.

9    Rimini's accessing of Oracle's software files (the subject of the computer access claims (*see*

10   ECF No. 146 (2d. Am. Compl.) ¶¶ 84-110, 146-51) necessarily included copying those files (the

11   subject of the copyright claims (*see id.*, ¶¶ 71-83)).  Accessing and copying the files were

12   governed by Oracle's Terms of Use.  *Id.* ¶¶ 71-110.  Oracle's expert analysis of Rimini's access

13   to Oracle's files overlapped with his analysis of Rimini's copying of those files.  *See* Tr. 1150:4-

14   7 (C. Hicks) ("Generally what we were doing was we were looking at Rimini Street's acquisition

15   of Oracle materials, looking at how those materials were acquired and stored, and what impact, if

16   any, it had on Oracle Systems.").  Similarly, Oracle's breach of contract and inducing breach of

17   contract claims relate to the same access to Oracle's copyrighted files at issue in the other claims.

18   ECF No. 146 (2d. Am. Compl.) ¶¶ 112, 117.  Oracle also based its intentional interference and

19   related state law claims on lies Rimini told its customers about its conduct with respect to

20   Oracle's software, including its copying of and access to those files.  *Id.* ¶¶ 125, 133, 156.

21       Therefore, all of Oracle's work on litigating its claims and Rimini's counterclaims and

22   defenses overlapped significantly with Oracle's work litigating its copyright claims.

23   **C.    Rimini's History of Infringement and Its Reckless Business
             Strategy and Wasteful Litigation Tactics Continue**

24       Rimini Street is the second incarnation of a business model that its CEO, Seth Ravin,

25   originally started with a company called TomorrowNow.  TomorrowNow pled guilty to

26   copyright infringement in a criminal case and paid hundreds of millions of dollars to Oracle in a

27   civil infringement case resulting from conduct that was central to the support model that Mr.

28

1   Ravin created.  Tr. 410:15-411:12 (Ravin).  Ravin testified in the TomorrowNow case that

2   during his time at TomorrowNow, he knew it was common for TomorrowNow to have Oracle

3   software on its systems and that it was standard for TomorrowNow to use those local

4   environments to develop fixes and updates.  ECF No. 923, Ex. 20 (Ravin 5/21/2009 Dep.) at

5   35:17-37:12; 41:13-18, 110:2-111:15.  Those infringing local copies were part of the reason

6   TomorrowNow stipulated to both civil and criminal liability for copyright infringement.  *Id.*, Ex.

7   23 (*Oracle USA, Inc. v. SAP AG*, N.D. Cal. Case No. 07-CV-1658 (May 21, 2009), ECF No.

8   911), ¶¶ 15-16 (fact stipulation stating that, e.g., "TN made at least 6,189 Copies.  Each such

9   copy constituted an infringement . . . ."); ECF No. 923, Ex. 25 at 2-5 (TN criminal plea stating

10  that, e.g., "TOMORROWNOW employees made at least 6,189 "environment" copies of Oracle's

11  PeopleSoft software")).  Indeed, this litigation against Mr. Ravin—along with Rimini's wasteful

12  litigation practices—was born out of the TomorrowNow litigation.  Oracle subpoenaed Mr.

13  Ravin and Rimini as third parties during discovery in that earlier lawsuit in light of SAP's likely

14  argument that Rimini was a noninfringing alternative, but Mr. Ravin and Rimini refused to

15  comply, presumably so they could avoid or delay discovery of their unlawful conduct for as long

16  as possible.  ECF No. 923, Ex. 24 (*Oracle USA, Inc. v. SAP AG*, No. 2:09-CV-01591 (ECF No.

17  49)).  As noted above, only after this Court held Mr. Ravin and Rimini in contempt for this

18  attempt to evade discovery and conceal evidence of their misconduct, did Mr. Ravin appear for

19  deposition.  *Id.* at 2.  Rimini's practice of attempting to delay and avoid discovery of the truth

20  about its support practices set the stage for how Rimini litigated the present case.

21        Rimini has repeatedly told the press and the Court that it changed its support practices

22  after the Court's February 2014 Summary Judgment Order and that its new support model is

23  non-infringing.  Oracle and Rimini are engaged in continued litigation regarding Rimini's post-

24  2011 conduct, including this "new" support process ("*Rimini II*").  ECF No. 669.  However,

25  Rimini's public 10-K SEC filing from March 15, 2018 tells a different story.  Rimini admits that

26  "[t]he injunction originally ordered by the District Court, which was vacated and remanded by

27  the Court of Appeals, would have required that we incur additional expense in the range of 1% to

28  2% of net revenue for additional labor costs to provide support for our clients as contracted."

1   Hill Decl., Ex. A at 15.  In other words, it continues to use its old process, which violates

2   Oracle's copyrights and this Court's original injunction.

3          In a further indication that its ongoing processes are unlawful, Rimini disclosed that on

4   March 2, 2018, it "received a subpoena directing [Rimini] to produce to a federal grand jury

5   certain communications and documents relating to the Company's support for certain software

6   systems and certain related operational practices."  *Id.* at 17; *see also Rimini Street, Inc. v.*

7   *Oracle Int'l Corp. ("Rimini II")*, 14-1699 (D. Nev.), ECF No. 703-1 (Grand Jury Subpoena).

8          Unless it awards Oracle's attorneys' fees in this case, the Court will encourage Rimini to

9   engage in the same duplicitous and wasteful discovery and litigation tactics again in *Rimini II*

10  while continuing its infringing conduct.

11  **III.   DISCUSSION**

12         As the prevailing party on all its copyright claims, Oracle should be awarded the same

13  attorneys' fees the Court previously awarded based on the same facts and reasoning that justified

14  the Court's original award.  *See* ECF No. 1049.

15         **A.     Oracle Is the Prevailing Party on Its Copyright Claims**

16         Oracle prevailed against Rimini on each of Oracle's 93 copyright claims and won over

17  $74 million in damages, interest, and costs.  *See* § II.B, above.  Therefore, the Court has

18  discretion to award attorneys' fees pursuant to the Copyright Act.  *See* 17 U.S.C. § 505 ("In any

19  civil action under this title, the court in its discretion may allow the recovery of full costs by or

20  against any party . . . .  [T]he court may also award a reasonable attorney's fee to the prevailing

21  party as part of the costs.").

22         **B.     The Relevant Factors Strongly Favor Awarding Attorneys' Fees to Oracle**

23         To determine whether an award of attorneys' fees is warranted under the Copyright Act,

24  courts examine five factors: (1) the degree of success of the prevailing party; (2) the objective

25  reasonableness of the losing party's arguments during litigation; (3) the need to make the

26  prevailing party whole; (4) deterrence; and (5) the purposes of the Copyright Act.  *See Kirtsaeng*

27  *v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016); *Jackson v. Axton*, 25 F.3d 884, 890

28  (9th Cir. 1994) (stating the five factor test for attorneys' fees under the Copyright Act).  Further,

the Copyright Act does not condition an award of fees on a finding of willful infringement.

*Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987) ("[A] showing of bad faith or frivolity is

not a requirement of a grant of fees."); ECF No. 1049 at 13:12-19.  The Court previously

determined these factors are in Oracle's favor.  *Id.* at 13-17.  Regarding Oracle's copyright

claims, the Ninth Circuit's decision does not alter any part of the analysis on these five factors.

**1.      Oracle Was Successful on Each of Its 93 Copyright Claims Against Rimini**

Oracle was completely successful on each of its 93 copyright infringement claims, and

Oracle's total damages award including prejudgment interest and costs exceeded $74 million,

more than seven times the damages number presented at trial by defendants' damages expert.

*See* § II.B, above.  The Ninth Circuit affirmed every aspect of this copyright verdict and award.

This high degree of success weighs heavily in favor of awarding attorneys' fees.

**2.      Rimini's Objectively Unreasonable Litigation Tactics Made It Very Expensive for Oracle to Prevail**

The Court considered the "objective reasonableness" factor in its original order and found

it to weigh in Oracle's favor.  ECF No. 1049 at 14:19-16:2.  The facts and arguments supporting

the Court's reasoning have not changed.  The use of objectively unreasonable factual and legal

arguments by the non-prevailing party in copyright litigation favors an award of attorneys' fees

to the prevailing party.  *Jackson*, 25 F.3d at 890.  Further, "a court may order fee-shifting

because of a party's litigation misconduct, whatever the reasonableness of his claims or

defenses." *Kirtsaeng*, 136 S.Ct. at 1988-89.

As discussed above in § II.A, the five-year history of this case is replete with examples of

Rimini's litigation misconduct and Rimini taking factual and legal positions that were

objectively false and forcing Oracle to spend time and resources on unnecessary discovery, fact

investigations, and motion practice.  The Court found:

> [Rimini's] litigation position that it did not engage in copyright infringement was not an objectively reasonable position. Rather, it was based on a clear misreading of Oracle's software licensing agreements and a conscious disregard for the manner that Rimini used and housed Oracle's copyrighted software programs on its own servers. In fact, Rimini's position was so unreasonable that

1
2
3
4
5

the court was able, at summary judgment, to determine that Rimini engaged in massive copyright infringement of Oracle's copyrighted works, thereby leaving only a few issues for trial. However, throughout this litigation, including right up until trial, Rimini contended that no copyright infringement ever occurred because it did not use the copyrighted software in a proscribed manner.

ECF No. 1049 at 15 (Court's order re attorneys' fees).

6
7

Rimini's litigation conduct was further unreasonable due to:

8
9
10
11
12
13
14

Rimini's repeated instances of copyright infringement and its significant litigation misconduct in this action. It is undisputed that defendants ignored their preservation obligations and destroyed evidence prior to trial, including a key computer directory containing Oracle software that Rimini used for multiple customers in violation of customer licenses. In fact, Magistrate Judge Leen found that defendants intentionally deleted the software library well after they were on notice of potential litigation and were well aware that the software library was potentially relevant evidence. As a result of their litigation misconduct, defendants were forced to acknowledge the spoliation and destruction of evidence at trial, and the [C]ourt even gave an adverse inference jury instruction about the issue.

15
16
17

*Id.* The Ninth Circuit acknowledged the Court's "understandable frustration with Rimini's litigation conduct." *Oracle USA, Inc.*, 879 F.3d at 964.

18
19
20
21
22
23
24

The case was complex already, simply based on the factual and legal issues involved.[1] But Rimini's litigation tactics made it significantly more complicated, ultimately forcing Oracle to spend thousands of attorney hours and tens of millions of dollars to prove its case, including dozens of depositions, scores of fact investigations, hundreds of meet and confer letters and emails, and significant efforts to prove issues at trial that should have been resolved long before. ECF No. 923 ¶ 17. As before, the Court should award Oracle attorneys' fees to compensate it for these unnecessary costs it was forced to incur in protecting its intellectual property. *See Sega Enterprises Ltd. v. MAPHIA*, 948 F. Supp. 923, 940 (N.D. Cal. 1996) (awarding attorneys' fees

25
26
27
28

---

[1] For its part, Rimini hired no fewer than six law firms and numerous attorneys working at national law firms throughout the country for this case, including Gibson Dunn & Crutcher (attorneys in Los Angeles, San Francisco, and Washington D.C.), Shook, Hardy & Bacon LLP (San Francisco, Houston, and Kansas City), Lewis Roca Rothgerber Christie LLP (Las Vegas), Greenberg Traurig, LLP (Las Vegas), Harrison Kemp & Jones (Las Vegas), and Howard & Howard Attorneys PLLC (Las Vegas). ECF No. 1024, Ex. C.

1    to prevailing plaintiff in a copyright case, citing "weak" arguments raised by defendant in

2    defense); *IO Grp., Inc. v. Jordan*, No. C 09-0884 MEJ, 2010 WL 2231793, at *2-3 (N.D. Cal.

3    June 1, 2010) (awarding attorneys' fees to prevailing plaintiff in a copyright case, citing

4    "inherent contradictions in Defendant's factual statements").  This factor weighs heavily in

5    Oracle's favor.

6              **3.      Oracle Should Be Made Whole**

7              The Court considered the need to make Oracle whole in its prior order:  "Oracle has spent

8    decades developing its copyrighted software only to have [Rimini] take that hard work and use it

9    to their benefit at Oracle's expense. In order to prosecute this action, Oracle was compelled to

10   spend a significant amount of resources in legal fees and costs over what was eventually awarded

11   in damages just to stop [Rimini's] unlawful conduct.  Without a fee award, the court finds that

12   Oracle's investment in its intellectual property and its incentive to create future software would

13   not be appropriately protected or compensated."  ECF No. 1049 at 16:10-15.  The facts and

14   arguments supporting this reasoning have not changed, and the Court should again require

15   Rimini to compensate Oracle for its fees incurred protecting Oracle's intellectual property in

16   order to make Oracle whole.

17             **4.      Rimini's Gambles with the Law Must Be Deterred**

18             As the Court already found, "an award of attorneys' fees is appropriate to deter defendant

19   Rimini from its pattern of infringing Oracle's copyrights, which started when the business began

20   and continued until the middle of this litigation.  Further, an award of fees is necessary to deter

21   other third party service providers from engaging in similar infringing conduct in order to

22   compete with Oracle for software support services."  ECF No. 1049 at 16:19-23.

23             Attorneys' fees are appropriate to deter future infringement.  *Fogerty v. Fantasy, Inc.*,

24   510 U.S. 517, 534-35 n.19 (1994).  A court may award fees "to deter repeated instances of

25   copyright infringement . . . even if the losing position was reasonable in a particular case."

26   *Kirtsaeng*, 136 S.Ct. at 1989.  This factor is particularly important in this case because Rimini

27   and many of its executives have been involved in infringing Oracle's copyrights before and are

28   already engaged in litigation to determine whether they continue to do so.  A pattern has

1    emerged in which Rimini's current CEO Seth Ravin sets up companies that infringe Oracle's

2    copyrights, those companies litigate for years (while denying the infringement and making

3    money from Oracle licensees), the conduct is deemed infringing after that expensive litigation,

4    and Mr. Ravin then begins the cycle once more.

5         This started with Mr. Ravin's first company, TomorrowNow, which employed a similar,

6    infringing support model.  *See* § II.C, above.  It continued when Mr. Ravin set up his next

7    infringing support company, Rimini.  *Id.*  And it continues to this day, as evidenced by Rimini's

8    own 10-K filing and the federal grand jury subpoena it received.  *Id.*

9         Rather than running a business that respects intellectual property and the law, Rimini cuts

10   corners and rushes to the market with, at best, the *hope* that a court or jury will not find it liable

11   for its actions.[2]  In the meantime, Rimini's infringement allows it to dramatically cut costs and

12   offer 50% off support to customers, which helps Rimini quickly earn the revenue necessary to

13   fund the inevitable litigation.  This behavior must be deterred, and an award of attorneys' fees to

14   Oracle as the prevailing party in this litigation will aid in that deterrence.  *See Magnuson v.*

15   *Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (remanding based on lower court's failure

16   to consider *Fogerty* factors and expressing concern that the "award for damages in this case is

17   insufficient to deter future copyright infringements such as the one at issue here").

18                    **5.       Innovation Should Be Incentivized**

19        As the Court has already found, "awarding attorneys' fees in this action furthers the

20   purposes of the Copyright Act as it rewards owners of intellectual property, like Oracle, for

21   pursuing their rights under the act and 'encouraging and rewarding authors' creations."  ECF No.

22   1049 at 17:3-5 (quoting *Kirtsaeng*, 136 S. Ct. at 1986).  The consequence of Rimini's recidivist

23   infringement is that it costs Oracle a lot of money to litigate.  Oracle prevailed in this litigation

24   and recovered over $74 million, which is a substantial sum.  However, litigation is expensive,

25   and this case cost tens of millions of dollars in attorneys' fees to litigate successfully.  Without

26   ─────────────────
     [2] One article published in February 2015 suggests that Mr. Ravin chose to make Las Vegas,
     Nevada the headquarters for Rimini "partly because the state's pool of jurors knows little about
27   the technology industry."  Hill Decl., Ex. B
     (https://www.theregister.co.uk/2015/02/27/to_beat_oracle_in_court_or_commerce_start_outside
28   _california/).

1  the ability to recover attorneys' fees, it would be impossible for Oracle and other innovators to

2  protect their intellectual property and be made whole.  The failure to award attorneys' fees to

3  successful plaintiffs acts as a *dis*incentive to enforce intellectual property rights.  And the lack of

4  a financially viable means of enforcing intellectual property rights creates a further *dis*incentive

5  to create intellectual property in the first place.

6        **C.**      **Fees for Claims Related to the Core Copyright Claims Are Recoverable**

7        Even though the Ninth Circuit reversed on Oracle's computer access claims, all of

8  Oracle's fees in the litigation are recoverable.  Under § 505, where the copyright claim and other

9  claims or counterclaims involve a "common core of facts" or "related legal theories," the Court

10  may award attorneys' fees on all related claims, including unsuccessful claims.  *Webb v. Sloan*,

11  330 F.3d 1158, 1168 (9th Cir. 2003); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429

12  F.3d 869, 884 (9th Cir. 2005) (citing *Webb*); *Counts v. Meriwether*, 2:14-cv-00396-SVW-CW,

13  2016 WL 1165888, at *6 (C.D. Cal. Mar. 9, 2016) (awarding attorneys' fees under § 505 for

14  defending against state-law claims because they "were based on the same allegations as the

15  copyright infringement claim"); *Dice Corp. v. Bold Techs. Ltd.*, No. 11-CV-13578, 2014 WL

16  2763618, at *21 (E.D. Mich. June 18, 2014) (allowing recovery of attorneys' fees for federal

17  computer access claim as "related" to copyright claim because complaint alleged defendant

18  "gained unauthorized access to Plaintiff's servers and software"); *Minow v. Lexus*, No. CV 06-

19  7496 CAS (SHx), 2008 WL 11338145, at *2 (C.D. Cal. Aug. 15, 2008) (awarding attorneys' fees

20  under § 505 for defending against the plaintiff's non-copyright claims "[b]ecause these claims

21  emanate from the same course and conduct from which plaintiff's copyright infringement claim

22  arose"); *Symantec Corp. v. Logical Plus, Inc.*, No. C 06-7963 SI, 2010 WL 2330388, at *4 (N.D.

23  Cal. June 4, 2010) (awarding attorneys' fees under § 505 to the plaintiff for its Lanham Act

24  claims because its "Lanham Act and Copyright claims all arose out of the same facts").  Even

25  where Oracle, as the prevailing party, was not successful on all claims, it may recover fees for

26  claims "related" to the successful claim.  *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d

27  829, 833 (9th Cir. 2003); *see also Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir.

28  1999); *Foster v. Kings Park Cent. Sch. Dist.*, 174 F.R.D. 19, 28 (E.D.N.Y. 1997) ("the fees

1    should no[t] necessarily be reduced in proportion to the amount recovered . . . the inquiry is

2    whether the plaintiff's successful and unsuccessful claims are sufficiently related").

3          The Court already found that "the trial was a copyright infringement case first and

4    foremost, regardless of all other claims pled."  ECF No. 1049 at 14:11-12.  But there were other

5    claims in this case.  Oracle successfully moved to dismiss Rimini's counterclaims for copyright

6    misuse and unfair competition (ECF No. 111) and defeated Rimini's counterclaim for

7    defamation on summary judgment (ECF No. 474), and Oracle either dropped before verdict or

8    failed to prevail at trial or on appeal on its state and federal computer access, trespass to chattels,

9    breach of contract, inducing breach of contract, and intentional interference and related state law

10   claims.  However, as discussed above in § II.B, the other claims, counterclaims, and affirmative

11   defenses were based on a common core of facts and/or legal theories related to Oracle's 93

12   infringement claims, as Oracle has consistently maintained.  *See, e.g.*, ECF No. 473 (Oracle's

13   Unopposed Motion for CMC) at 1 ("Oracle alleges copyright infringement and related claims

14   against Rimini").

15         Therefore, any fees related to work on these other claims is recoverable, and the Court

16   should award attorneys' fees to Oracle for its work in litigating all its claims based on Oracle's

17   complete success on each of its core copyright claims.

18   **D.      The Court's Prior Fees Award of $28.5 Million Was**
19   **            Reasonable and Should Be Reinstated**

20         In its prior order, the Court determined that "the actual rates Oracle paid its attorneys—as

21   established in the several declarations attached in support of Oracle's motion—are reasonable

22   rates for this action," ECF No. 1049 at 19:3-5, and that "most of the time billed by counsel was

23   reasonable for such complex litigation," *id.* at 19:20-21.  After applying a 20% reduction, the

24   Court found that Oracle was entitled to recover $28,502,246.40.  *Id.* at 20:11-13.  Based on the

25   same facts and reasoning, the same fees award is appropriate.

26         "Reasonable attorney's fees" are based on the "lodestar" calculation.  *Gonzalez v. City of*

27   *Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  "Under the lodestar method, the district court

28   'multiplies the number of hours the prevailing party reasonably expended on the litigation by a

1    reasonable hourly rate.'"  *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Initially,

2    in determining the amount of fees to award in an action, the court must look to the

3    reasonableness of the rates charged by counsel.  *Resurrection Bay Conservation All. v. City of*

4    *Seward Alaska*, 640 F. 3d 1087, 1095 (9th Cir. 2011).  The district court then turns to whether

5    the amount of time billed in the case was reasonable.  ECF No. 1049 at 19:12.  The Court's prior

6    findings regarding both the reasonableness of the hourly rate Oracle paid its attorneys and the

7    reasonable amount of time billed were appropriate and should be reinstated.

8            1.      **The Rates Actually Paid by Oracle Were Reasonable Hourly Rates**

9            Generally, courts determine a reasonable rate for attorneys' fees based upon "the rates

10   prevailing in that district for similar services by lawyers of reasonably comparable skill,

11   experience and reputation," irrespective of practice area.  *Prison Legal News v. Schwarzenegger*,

12   608 F.3d 446, 445 (9th Cir. 2010).  However, "the district court may, if circumstances warrant,

13   adjust the lodestar to account for other factors which are not subsumed within it."  *Ferland v.*

14   *Conrad Credit Corp.*, 224 F.3d 1145, 1149 n.4 (9th Cir. 2001).  Those additional non-exclusive

15   factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions

16   involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other

17   employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the

18   fee is contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount

19   involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10)

20   the 'undesirability' of the case, (11) the nature and length of the professional relationship with

21   the client, and (12) awards in similar cases."  *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th

22   Cir. 2006).

23           The actual rates Oracle paid for its attorneys are the prevailing market rates for this type

24   of litigation.  "Unless counsel is working outside his or her normal area of practice, evidence that

25   a billing rate was the usual rate the attorney charges for his or her services is evidence that the

26   rate is comparable to the market rate."  *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015

27   WL 1746484, *5 (C.D. Cal. Mar. 25, 2015) (citing *Moore v. James H. Matthews & Co.*, 682 F.2d

28   830, 840 (9th Cir. 1982)).  "Billing rates usually reflect, in at least a general way, counsel's

1   reputation and status (i.e., as partner, associate, or law clerk)."  *Moore*, 682 F.2d at 840; *accord*

2   *Kourtis v. Cameron*, 358 Fed.App'x. 863, 868 (9th Cir. 2009) ("The district court's calculation of

3   an attorney's fee award . . . based on the actual rates charged by [prevailing party's] attorneys

4   was reasonable under 17 U.S.C. § 505."); *see also Dillard v. City of Greensboro*, 213 F.3d 1347,

5   1354-55 (11th Cir. 2000) ("What [the attorney] charges clients is powerful, and perhaps the best

6   evidence of his market rate; that is most likely to be what he is paid 'as determined by supply

7   and demand.'"); *National Assoc. of Concerned Veterans v. Secretary of Def.*, 675 F.2d 1319,

8   1325 (D.C.Cir.1982) ("The best evidence would be the hourly rate customarily charged by the

9   affiant himself or by his law firm.").  "In an action under the Copyright Act, an award based on

10  the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C.

11  § 505."  ECF No. 1049 at 18:22-25 (citing *Kourtis*, 358 Fed. App'x. at 868).  In complex

12  litigation, "the parties can reasonably be expected to retain nationally respected law firms and

13  nationally respected attorneys to pursue their interest in the litigation," which will result in

14  "higher lodestars than normally seen in this district."  *Pacquiao v. Mayweather*, 2012 WL

15  4092684, at *2 (D. Nev. 2012) (finding actual rates paid to California attorneys were

16  "reasonable" and awarding them).

17          Here, Oracle hired Morgan Lewis & Bockius LLP[3] and Boies Schiller Flexner LLP

18  ("BSF") to prosecute this case.  The firms charged Oracle rates in line with their usual rates, or

19  lower, based on their normal areas of practice, and Oracle paid those rates.  ECF No.

20  923 ¶¶ 8-10; ECF No. 924 ¶¶ 8-10.  The reasonableness of MLB's and BSF's rates is confirmed

21  by Oracle's decision to pay them.  Oracle is a sophisticated consumer of legal services and will

22  only pay rates that are commensurate with the skill Oracle required.  ECF No. 925 ¶¶ 2-4.  They

23  are similar to the rates that other clients pay BSF and MLB and are thus evidence of the market

24  rate for their services.  ECF No. 923 ¶ 9; ECF No. 924 ¶ 9.

25

26  _____

27  [3] The team of MLB attorneys working on the case were formerly at Bingham McCutchen LLP
    until November 2014, when they joined Morgan Lewis & Bockius.  ECF No. 923 ¶ 2 4.  Prior to
    November 2014, Bingham McCutchen LLP represented Oracle in this matter.  *Id.*  Bingham
28  McCutchen and Morgan, Lewis & Bockius will be referred to collectively herein as "MLB."

1       The rates Oracle paid for MLB and BSF are consistent with the prevailing rates in the

2    community for this type of complex litigation.  ECF No. 921. ¶¶ 2, 4; ECF No. 923 ¶¶ 30-60;

3    ECF No. 924 ¶¶ 18, 14-31 (detailing the skills, experience, and rates for MLB and BSF

4    attorneys).  All of their rates are reasonable and consistent with the prevailing market for their

5    services on complex copyright litigation in this district.

6       The reasonableness of the actual rates Oracle paid for MLB and BSF is confirmed by

7    both parties' decision to hire national law firms with teams that were not based in Las Vegas.

8    The MLB and BSF attorneys who worked on this case are primarily located in Las Vegas, San

9    Francisco, Oakland, and Washington, D.C.  ECF No. 923, Ex. 27.  Likewise, Rimini and Ravin

10    hired the national law firms of Shook, Hardy & Bacon LLP and Gibson Dunn & Crutcher LLP,

11    with lawyers based in San Francisco, Kansas City, Houston, Los Angeles, and Washington, D.C.

12    *Id.*  Both parties' decisions reflect that the market for legal services is national, and that both

13    parties believed only nationally-renowned firms could handle the case properly.  ECF No. 921

14    ¶ 4; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[R]ates outside the

15    forum may be used if local counsel was unavailable, either because they are unwilling or unable

16    to perform because they lack the degree of experience, expertise, or specialization required to

17    handle properly the case."); *Louisville Black Police Officers Org., Inc. v. City of Louisville*, 700

18    F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of

19    specialization market or any other market they believe appropriate to fairly compensate

20    particular attorneys in individual cases.").  Although most of the MLB and BSF attorneys are

21    located outside Las Vegas, their rates reflect the value of their services throughout the country in

22    any district.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany*

23    *Cnty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008) ("The legal communities of today are

24    increasingly interconnected.  To define markets simply by geography is too simplistic.");

25    *compare* ECF No. 923 ¶¶ 30-60 (detailing the skills, experience, and rates for MLB and BSF

26    attorneys); ECF No. 924 ¶¶ 14-31 (same) *with* ECF No. 923, Ex. 26 (excerpt of 2014 National

27    Law Journal survey detailing prevailing national market rates).

28

1    Both MLB and BSF are national firms with a reputation of having top-tier litigators. The

2  Court recognized the professionalism and value brought by both parties' attorneys, telling the

3  jury that it had "seen professionalism at the top of the ladder." Tr. 3949:1-9. The attorneys'

4  "performance, from a professional standpoint, [was] one that's just totally praiseworthy." Tr.

5  3950:15-19. "[W]e had some outstanding lawyers and outstanding technical support." Tr.

6  3951:1-2. And this was not a simple case: multiple copyrights and claims were at issue, the

7  parties filed over 45 motions, engaged in intense and voluminous discovery, and ultimately went

8  through a four-and-a-half week trial after which the jury was provided with a 14-page verdict

9  form,[4] and 75 pages of jury instructions (that were the result of hundreds of pages of briefing).[5]

10  ECF No. 923 ¶¶ 25-26; ECF Nos. 880, 896. As the Court said, "this has been a very, very

11  complex case . . . . I've never seen a case this complex that involved this many issues before a

12  jury as what you've seen here and before the Court. . . . *[I]t is certainly what you call a mega*

13  *trial and a mega lawsuit under any view*." Tr. 3946:7-18 (emphasis supplied).[6]

14    This type of case "justified top-tier litigators." *Compare Perfect 10*, 2015 WL 1746484

15  at **19-20 ("With more than 30 motions . . . voluminous discovery (and seemingly endless

16  discovery disputes), nearly 700 docket entries, and more than 38,000 pages in the Court's docket,

17  there is little doubt that this case was precisely the sort of complex, large, and burdensome case

18  that justified top-tier litigators" and was not a "straightforward copyright case"); *with* ECF No.

19  923 ¶¶ 24-28 (over 45 motions, 900 docket entries, and voluminous and contentious discovery);

20  *see also Rubbermaid Commercial Products, LLC v. Trust Commercial Products*, No. 2:13-cv-

21  02144, 2014 WL 4987878, at *8 (D. Nev. Aug. 22, 2014) *report and recommendation adopted*,

22  2014 WL 4987881 (D. Nev. Oct. 6, 2014) (awarding actual rates of Squire Patton Boggs, LLP of

23  $624.75 to $225.25 per hour for non-resident attorneys in light of "the experience and training of

24  the attorneys . . . and the complexity of the subject-matter involved in this [patent] action"). As

---

25  [4] The Court acknowledged that a verdict form of this complexity "is virtually unheard of in our
      civil trials and our criminal trials." Tr. 3946:21-22.

26  [5] With respect to Oracle's summary judgment motions alone, the Court noted that "[t]his is a
      complex case with briefing upon summary judgment motions of approximately 200 pages, with

27  over 2,700 pages of exhibits." ECF No. 474 at 28.
     [6] *See also* Tr. 898:11-17, 1901:20-1902:2, 1986:11-16, 1988:5-13, 2732:15-19, 3168:19-25,

28  3348:14-16, 3361:19-3362:11.

1    in *Perfect 10*, because this case "involv[ed] multiple claims against multiple parties, novel issues

2    of law, and millions of dollars in potential damages," it justified a "nationally-renowned law firm

3    – with relatively high hourly rates." *Id.*  Paying relatively higher rates for MLB and BSF was

4    "all the more reasonable" given that MLB and BSF had already successfully represented Oracle

5    in a "similar action[]" against TomorrowNow, Ravin's former company.  2015 WL 1746484 at

6    **19-20; § II.C, above.

7         Based on these considerations, the Court has already concluded that the actual rates

8    Oracle paid its attorneys were reasonable rates.  ECF No. 1049 at 18:18-19:11.

9              **2.    The Amount of Time Billed on This Case Was Reasonable**

10        "[T]o determine whether attorneys for the prevailing party could have reasonably billed

11   the hours they claim to their private clients, the district court should begin with the billing

12   records the prevailing party has submitted."  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202

13   (9th Cir. 2013).

14        "Admittedly, a multi-million dollar attorneys' fee request is objectively large.  But a fee

15   award is not unreasonable simply because it involves a lot of money.  The operative question

16   isn't the dollar amount, the question is whether the rates charged and the hours spent are

17   reasonable in light of the totality of the litigation.  Courts in this [circuit] have awarded

18   attorneys' fees in excess of $100,000,000 in copyright litigation depending on the nature of the

19   underlying litigation, and reference to the dollar amount of a particular fee award is not

20   especially helpful without a sense of how much time it took to reasonably litigate the case."

21   *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098, 2015 WL 1746484, at *27 (C.D. Cal. Mar.

22   24, 2015) (citing *Mattel, Inc. v. MGA Entm't, Inc.*, No. 04–9049, 2011 WL 3420603, at *10

23   (C.D. Cal. Aug. 4, 2011) *aff'd sub nom. Mattel, Inc v. MGA Entm't*, Inc., 705 F.3d 1108 (9th Cir.

24   2013) (awarding attorneys' fees of $105,688,073.00 to prevailing copyright defendant)).

25        Oracle previously presented evidence that its attorneys' billing records reflect a

26   reasonable amount of time spent on this litigation.  ECF No. 923 ¶ 15; ECF No. 924 ¶ 12.  The

27   amount of time billed in Oracle's litigation against SAP and TomorrowNow also confirms the

28   reasonableness of Oracle's attorneys' fees in this case.  In the *SAP TomorrowNow* case, which

1  addressed strikingly similar allegations against a similar business model that, like Rimini, was

2  designed by Seth Ravin, SAP TomorrowNow agreed to pay Oracle $120 million in total

3  attorneys' fees and costs.  *See* ECF No. 923, Ex. 22 (*Oracle USA, Inc. v. SAP AG*, N.D. Cal.

4  Case No. 07-CV-1658 (May 21, 2009), ECF No. 961); *id.*, Ex. 28 (*Oracle USA, Inc. v. SAP AG*,

5  N.D. Cal. Case No. 07-CV-1658 (August 5, 2010), ECF No. 745, Undisputed Fact 93 (describing

6  allegations against TomorrowNow and its 358 customers)); § II.C, above.

7        Finally, Oracle also made conservative adjustments to the hours actually spent. ████

8  ████████████████████████████████████████.  ECF No. 923 ¶ 6; ECF No. 924 ¶ 6.

9  Also, for time entries that were block-billed, Oracle conservatively struck out the entire time

10  spent by a timekeeper for any given day where Oracle has redacted the description of the work

11  done due to privilege or other reasons.  ECF No. 923 ¶ 7; ECF No. 924 ¶ 7.  Oracle removed

12  over $5 million from its bills for these reasons.

13        Based on these considerations, and taking into account "some inconsistencies that violate

14  regular billing practices and guidelines, such as improper block billing entries," the Court found

15  it reasonable to apply a blanket reduction of 20% to Oracle's requested attorneys' fees of

16  $35,627,807.99 and awarded Oracle $28,502,246.40 in attorneys' fees.  ECF No. 1049 at 20:5-7.

17  Oracle does not seek to relitigate that 20% reduction.  Based on those same considerations, the

18  Court should reinstate the same attorneys' fees award.

19  **IV.**    **CONCLUSION**

20        For the reasons stated above, the Court should award Oracle $28,502,246.40 in attorneys'

21  fees.

22

23  DATED:  March 26, 2018          Morgan, Lewis & Bockius LLP

24

25                        By:      */s/ Thomas Hixson*

                              Thomas Hixson

26                              Attorneys for Plaintiffs

                            Oracle USA, Inc.,

27                              Oracle America, Inc. and

                            Oracle International Corporation

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

     I certify that on March 26, 2018, I electronically transmitted the foregoing ORACLE'S

3

RENEWED MOTION FOR ATTORNEYS' FEES to the Clerk's Office using the Electronic

4

Filing System pursuant to Special Order No. 109.

5

Dated:  March 26, 2018

Morgan, Lewis & Bockius LLP

6

7

By: _____  /s/ *Thomas Hixson*  _____

Thomas Hixson

8

9

Attorneys for Plaintiffs
Oracle USA, Inc.,
Oracle America, Inc. and

10

Oracle International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE