GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

HOWARD & HOWARD PLLC
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wallen@howardandhoward.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | **HEARING REQUESTED**<br><br><br>Case No. 2:10-cv-0106-LRH-PAL<br><br>**DEFENDANTS' OPPOSITION TO ORACLE'S RENEWED MOTION FOR A PERMANENT INJUNCTION** |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

I.      Oracle Files Suit Concerning Rimini's Pre-2014 Processes ................................. 2

II.     The Jury Rejects Nearly All of Oracle's Claims ...................................... 4

III.    The Ninth Circuit Stays, then Vacates, this Court's Permanent Injunction and Narrowly Upholds Copyright Infringement Liability .................. 4

LEGAL STANDARD ................................................................................................. 6

ARGUMENT ............................................................................................................. 7

I.      Oracle's Request for an Injunction Fails Under *eBay* ...................................... 7

     A.     Oracle Will Suffer No Irreparable Harm Absent an Injunction ................................................................................. 7

          1.    Oracle Fails to Show Irreparable Harm ............................. 8

          2.    Oracle Has, Once Again, Failed to Show a Causal Nexus. ............................................................................ 11

     B.     Oracle Has an Adequate Remedy at Law ............................... 14

     C.     The Balance of Hardships Favors Rimini ............................... 15

     D.     An Injunction Would Be Contrary to the Public Interest ........................ 17

II.     Oracle's Proposed Injunction Is Impermissibly Vague and Overbroad ........................................................................................ 18

     A.     Oracle's Proposed Injunction Disregards the Ninth Circuit's Narrow Decision ........................................................ 18

     B.     Oracle's Proposed Injunction Is Vague and Fails to Provide Adequate Notice ...................................................... 22

CONCLUSION ......................................................................................................... 24

OPPOSITION TO RENEWED MOTION FOR A PERMANENT INJUNCTION

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*ActiveVideo Networks, Inc. v. Verizon Comm's, Inc.,*
694 F.3d 1312 (Fed. Cir. 2012).................................................................17

5

6

*Apple Inc. v. Samsung Elecs. Co.,*
695 F.3d 1370 (Fed. Cir. 2012).................................................................11

7

*Apple Inc. v. Samsung Elecs. Co.,*
735 F.3d 1352 (Fed. Cir. 2013)...................................................................7

8

*Brighton Collectibles, Inc. v. Pedre Watch Co.,*
2013 WL 5719071 (S.D. Cal. Oct. 21, 2013) ...........................................17

9

*Casella v. Morris,*
820 F.2d 362 (11th Cir. 1987)...................................................................10

10

*Chi. Bd. of Educ. v. Substance, Inc.,*
354 F.3d 624 (7th Cir. 2003).....................................................................20

11

12

*Columbia Pictures Indus., Inc. v. Fung,*
710 F.3d 1020 (9th Cir. 2013)..............................................................23, 24

13

14

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.,*
2003 WL 25778704 (C.D. Cal. Jan. 29, 2003) .........................................16

15

*D.C. Comics Inc. v. Mini Gift Shop,*
912 F.2d 29 (2d Cir. 1990) ........................................................................10

16

*Dolori Fabrics, Inc. v. Limited, Inc.,*
662 F. Supp. 1347 (S.D.N.Y. 1987) ..........................................................16

17

*eBay, Inc v. MercExchange, L.L.C.,*
547 U.S. 388 (2006)..................................................6, 7, 8, 9, 10, 11, 14, 17

18

19

*Wilson v. Brennan,*
666 F. Supp. 2d 1242 (D.N.M. 2009) ..........................................................9

20

*Fitzgerald Pub. Co. v. Baylor Pub. Co.,*
807 F.2d 1110 (2d Cir. 1986).....................................................................10

21

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*
654 F.3d 989 (9th Cir. 2011)........................................................................9

22

23

*Floyd v. Laws,*
929 F.2d 1390 (9th Cir. 1991)..............................................................10, 14

24

*Garcia v. Google, Inc.,*
786 F.3d 733 (9th Cir. 2015)......................................................................21

25

26

*Jackson v. MPI Home Video,*
694 F. Supp. 483 (N.D. Ill. 1988) ..............................................................10

27

*Jacobsen v. Katzer,*
609 F. Supp. 2d 925 (N.D. Cal. 2009) .........................................................8

28

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO RENEWED MOTION FOR A PERMANENT INJUNCTION

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................................ 20

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................................................ 10

*Minco, Inc. v. Combustion Eng'g, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996) ............................................................................... 15

*Mulcahy v. Cheetah Learning LLC*,
    386 F.3d 849 (8th Cir. 2004) .................................................................................. 18

*Nat'l Labor Relations Bd. v. Express Publ'g Co.*,
    312 U.S. 426 (1941) ................................................................................................ 23

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................................ 12

*Oracle Am., Inc. v. Google Inc.*,
    798 F. Supp. 2d 1111 (N.D. Cal. 2011) ................................................................. 15

*Oracle USA, Inc. v. Rimini St., Inc.*,
    6 F. Supp. 3d 1086 (D. Nev. 2014) ................................................................... 3, 19

*Oracle USA, Inc. v. Rimini St., Inc.*,
    879 F.3d 948 (9th Cir. 2018) ........................................................................*passim*

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ..................................................................... 11, 12, 14

*Polygram Int'l. Publ'g, Inc. v. Nevada/TIG, Inc.*,
    855 F. Supp. 1314 (D. Mass 1994) ....................................................................... 16

*Price v. City of Stockton*,
    390 F.3d 1105 (9th Cir 2004) ..................................................................... 18, 22, 23

*Reno Air Racing Ass'n, Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) ............................................................................... 22

*Sony Corp. of Am. v. Universal City Studios*,
    464 U.S. 417 (1984) ................................................................................................ 21

*Stone v. Godbehere*,
    894 F.2d 1131 (9th Cir. 1990) ............................................................................... 23

*Teutscher v. Woodson*,
    835 F.3d 936 (9th Cir. 2016) ........................................................................... 10, 14

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953) ................................................................................................ 11

*Waldman Publ'g Corp. v. Landoll, Inc.*,
    43 F.3d 775 (2d Cir. 1994) ............................................................................... 18, 19

*Wales Indus. Inc. v. Hasbro Bradley, Inc.*,
    612 F. Supp. 510 (S.D.N.Y. 1985) ....................................................................... 10

*Walt Disney Co. v. Powell*,
    897 F.2d 565 (D.C. Cir. 1990) ........................................................................... 9, 10

OPPOSITION TO MOTION FOR A PERMANENT INJUNCTION

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
    106 F.3d 894 (9th Cir. 1997) ................................................................................. 10, 17

*Williams Elecs., Inc v. Artic Int'l, Inc.*,
    685 F.2d 870 (3d Cir. 1982) ........................................................................................ 10

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................................ 6, 7

### Statutes

17 U.S.C. § 102(b) ............................................................................................................... 23

17 U.S.C. § 106 ................................................................................................................... 21

17 U.S.C. § 106(1) ................................................................................................................ 3

17 U.S.C. § 502 ..................................................................................................................... 6

### Other Authorities

4 *Nimmer on Copyright*, § 14.06[C][1][a] ...................................................................... 18

U.S. Dep't of Commerce, *White Paper on Remixes, First Sale, and Statutory
    Damages, U.S. Patent & Trademark Office*, 91 (Jan. 2016) ...................................... 11

### Rules

Fed. R. Civ. P. 65(d) .................................................................................................... 22, 23

OPPOSITION TO MOTION FOR A PERMANENT INJUNCTION

**TABLE OF APPENDICES AND EXHIBITS**

**Appendix I**:  Rimini's Objections to Oracle's Proposed Findings of Fact

**Appendix II**:  Rimini's Proposed Order Denying Oracle's Renewed Motion

**Appendix III**:  Rimini's Specific Objections to Oracle's Proposed Injunction

**Appendix IV**:  Exhibits

     Volume I

          Exhibit A:  *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948 (9th Cir. 2018).

          Exhibit B:  Excerpts of Oral Argument Transcript from Ninth Circuit

          Exhibit C:  Rimini Declarations Regarding Changed Processes

          Exhibit D:  Jury Verdict

          Exhibit E:  Jury Instructions

          Exhibit F:  Permanent Injunction

          Exhibit G:  Ninth Circuit Order Staying Permanent Injunction Pending Appeal

          Exhibit H:  Slide 34 from Rimini's Permanent Injunction Argument

          Exhibit I:  Cited Testimony of Safra Catz

     Volume II

          Exhibit J:  Cited Testimony of Seth Ravin

          Exhibit K:  Cited Testimony of Kevin Maddock

     Volume III

          Exhibit L:  Cited Testimony of Edward Yourdon

          Exhibit M:  Cited Testimony of Former Oracle Customers

          Exhibit N:  Cited Testimony Regarding Oracle Improved Attrition

          Exhibit O:  Oracle's Internal Reports Regarding Customer Satisfaction

          Exhibit P:  Cited Testimony of Elizabeth Dean Regarding Damages

          Exhibit Q:  Declaration of Brian J. Slepko Regarding Cost of Overbroad Injunction

          Exhibit R:  Oracle's Trial Exhibit 3

          Exhibit S:  Oracle's Trial Exhibit 2155

Gibson, Dunn & Crutcher LLP

**INTRODUCTION**

The permanent injunction proposed by Oracle is inconsistent with the Ninth Circuit's recent decision, irreconcilable with the jury's verdict, incompatible with basic principles of equity, and unsupported by the policies underlying the Copyright Act. The undisputed evidence establishes that Rimini has long since ceased the practices adjudicated as infringing in this Court and affirmed on appeal, and Rimini's current processes are the subject of an entirely separate lawsuit. As Circuit Judge Friedland observed during the appellate argument, "I don't really understand why there also needs to be an injunction" in light of "a whole lawsuit [*i.e.*, *Rimini II*] to figure out if they're complying with the liability determinations." Ex. B at 41:19–20. Oracle had no good answer to that question in the court of appeals, and it has none in this Court. Its renewed motion should be denied.

Oracle contends that "[t]he Ninth Circuit's reversal on the state statutory claims in no way undercuts the basis or need for a permanent injunction" on copyright grounds. Mot. 13. As the Ninth Circuit recognized, however, the injunction previously entered by this Court rested on "'violations of state computer access statutes' contribut[ing] to an 'irreparable injury' to Oracle's business reputation and goodwill." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 964 (9th Cir. 2018) (Ex. A). That ruling reflects Oracle's own argument in its appellate brief, that this Court's analysis of irreparable injury "was not even limited to Rimini's copyright infringement, but also included Appellants' violation of the computer abuse laws." Ninth Cir. Dkt. 50 at 49; *see also id.* at 40. Yet, in its most recent motion, Oracle argues that it "never argued that the CDAFA [hacking violation] … supported the issuance of a copyright injunction." Mot. 13. That is patently false.

Oracle also misrepresents the Ninth Circuit's holdings. For example, Oracle contends that "[t]he Ninth Circuit affirmed this Court's finding that for *each Oracle product at issu*e, Rimini's support processes, including its *local hosting and cross-use* of Oracle software environments and other files, infringed Oracle's copyrights." Mot. 1 (emphases added). In fact, the Ninth Circuit expressly held that it "address[ed] the question of infringement as to PeopleSoft on the narrow ground of 'local hosting,'" and "[did] *not* decide whether 'direct use' or 'cross use' was permitted by the PeopleSoft license." *Oracle*, 879 F.3d at 960 n.6 (emphasis added). Similarly, as to JD Edwards and Siebel, the Ninth Circuit was clear that these licenses did *not* contain a "local hosting" limitation. *Id.* at 959 (noting

that the PeopleSoft licenses at issue were "more restrictive[] than the JD Edwards and Siebel licenses," as the former "limits copying … to only the [licensee's] facilities"). The court of appeals sustained liability for JD Edwards and Siebel on one limited theory of cross-use involving "creat[ing] development environments for *future customers* using the license of an existing customer on the basis that *future customers* presumably would have licenses that would permit them to hire Rimini to create development environments." *Id.* at 957 (emphases added); *id.* at 958 (JD Edwards and Siebel licenses do "not preclude Rimini from creating development environments for a licensee for various purposes *after* that licensee has become a customer of Rimini"). Yet Oracle's proposed injunction would prohibit cross-use as to PeopleSoft and local hosting as to JD Edwards and Siebel, even though the Ninth Circuit expressly did not reach those issues.

At bottom, Oracle's position is that this Court has no work to do on remand, other than simply entering *verbatim* the same injunction the Ninth Circuit just vacated. *See* Mot. 1 ("the Court should re-issue the injunction"); *id.* at 23 ("there is no reason to modify [the injunction's] prior scope"). But the Ninth Circuit treated the hacking and copyright injunctions "as if there were two separate injunctions." 879 F.3d at 964 n.8. The court of appeals *reversed* the hacking injunction, and it would simply have affirmed the copyright injunction if it agreed with Oracle. Instead, the Ninth Circuit *vacated* the copyright injunction and remanded it "for *reconsideration* in light of [its] opinion." *Id.* at 953 (emphasis added). It would be reversible error for this Court to eschew such reconsideration and re-enter the same unnecessary, inequitable, unlawful, and overbroad injunction that the court of appeals has already disapproved.

## BACKGROUND

Oracle's proposed findings of fact are inconsistent with the jury's verdict and the Ninth Circuit's opinion, as set forth in Rimini's separate objections. App. I. Rimini recites below a brief summary of the pertinent events leading to Oracle's renewed motion.

## I.      Oracle Files Suit Concerning Rimini's Pre-2014 Processes

"[I]n *lawful competition* with Oracle's direct maintenance services" (879 F.3d at 952 (emphasis added)), Rimini provides third-party support for a variety of enterprise software programs, including Oracle's PeopleSoft, JD Edwards, Siebel, and Oracle Database.

In *Rimini I*, Oracle sued Rimini in 2010, asserting twelve causes of action (Dkt. 146), ranging from trespass to chattels and unfair competition to copyright infringement and intentional inference with business relations.  As to copyright infringement, Oracle alleged that Rimini infringed Oracle's exclusive right to reproduce its software (*see* 17 U.S.C. § 106(1)) by engaging in what it called "local hosting" (maintaining copies of Oracle software on Rimini's own servers) and "cross use" (using copies made for one customer with a license in connection with another customer with an identical license). *Oracle*, 879 F.3d at 956, 959.  Oracle did not seek a preliminary injunction at the time it filed suit or at any time thereafter.

Rimini responded that the licenses between Oracle and its customers expressly authorize the creation of copies for "use in accordance with the terms of the license," including providing "access to and use of the Software" to "third parties" that "provide services" to the licensee. *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1086, 1096–99 (D. Nev. 2014).  At summary judgment, however, this Court determined that Rimini's practice of copying Oracle's PeopleSoft and Database software onto its own servers fell outside the scope of certain Oracle licenses.  *See id.* at 1098, 1101.  This Court also ruled that copying Oracle's software to develop and test software updates for other Rimini clients was not, as the licenses required, solely for the licensee.  *Id.* at 1097 & n.10.  But this Court denied Oracle's summary judgment motion as to JD Edwards and Siebel, concluding that there were disputed issues of material fact for the jury to resolve.  *Id.* at 1104.

Before *Rimini I* even reached final judgment, Rimini invested millions of dollars to revise its processes to conform to the way this Court had construed the license agreements.  The *Rimini I* evidentiary record contains undisputed evidence that by July 2014—more than a year before trial—Rimini had discontinued the specific practices (*e.g.*, "local hosting" and "cross use") addressed at the summary judgment stage.  *See* Ex. C (Declaration of Jim Benge ("Benge Decl.") ¶¶ 3–10; Declaration of Ron Teegarden ("Teegarden Decl.") ¶¶ 3–6; Declaration of Kien Phung ("Phung Decl.") ¶¶ 3–10; Declaration of Craig Mackereth ("Mackereth Decl.") ¶¶ 4–11; Declaration of David Miller ("Miller Decl.") ¶¶ 4–6.)).  To this day, Oracle has never submitted any evidence contradicting these sworn declarations.

Rimini sued Oracle in 2014 (*Rimini II*) seeking a declaration that its revised processes do not

1    infringe.  At Oracle's request, and over Rimini's objection, this Court declined to consolidate *Rimini I*

2    and *Rimini II* (Dkt. 669), limited the trial evidence in *Rimini I* to support processes Rimini used through

3    February 13, 2014 (thus excluding any evidence of Rimini's revised support processes) (Dkt. 515), and

4    ruled that all "claims, issues, and evidence related to the new support model are being addressed solely

5    in [*Rimini II*]" (Dkt. 723).

6    **II.      The Jury Rejects Nearly All of Oracle's Claims**

7            Oracle abandoned many of its claims before or during trial and lost on all its theories except for

8    copyright infringement against Rimini and computer hacking violations against Rimini and Mr. Ravin.

9    Oracle's entire theory of the case was that Rimini and Mr. Ravin stole Oracle's software, lied to

10   customers, and intentionally interfered with contracts between Oracle and its customers.  Oracle asked

11   the jury to award it nearly $250 million, plus punitive damages, for willful copyright infringement,

12   intentional interference with current and prospective customer relationships, and violations of two

13   state-law computer hacking statutes.

14           The jury rejected nearly all of Oracle's contentions, concluding that (1) Rimini's infringement

15   was "innocent," (2) the best measure of damages for the innocent infringement was a fair market value

16   license of $35.6 million (based on the cost to Rimini of adopting a non-infringing alternative),

17   (3) Rimini's infringement caused Oracle to lose *zero* dollars in profit, and (4) the infringement earned

18   Rimini *zero* dollars in profit.  Ex. D at 4–6.  The jury also rejected Oracle's claim that Mr. Ravin was

19   vicariously or contributorily liable for Rimini's innocent copyright infringement.  *Id.* at 2–3.  The jury

20   awarded $14.4 million under the state anti-hacking statutes.  The jury rejected outright Oracle's request

21   for punitive damages (*id.* at 13–14) and its claims that Rimini intentionally interfered with Oracle's

22   current and prospective customers (*id.* at 10–12).

23   **III.     The Ninth Circuit Stays, Then Vacates, This Court's Permanent Injunction and**

24            **Narrowly Upholds Copyright Infringement Liability**

25           After trial, and over Rimini's objection, Oracle moved for what the Ninth Circuit called "an

26   extensive permanent injunction."  *Oracle*, 879 F.3d at 952–53; *see also* Dkt. 900.  Rimini argued that

27   injunctive relief was unjustified in light of the jury's finding of innocent infringement and Oracle's

28   failure to meet any of the traditional factors justifying injunctive relief; but this Court entered the

injunction proposed by Oracle word for word.  *See* Ex. F.  Rimini immediately moved to stay the injunction before the Ninth Circuit, challenging the injunction on its own terms *without any reference to the hacking portion of the injunction*.  *See* Ninth Cir. Dkt. 3-1.  Rather, Rimini argued, as it had to this Court, that (1) an innocent infringer could not be enjoined, (2) Rimini had changed the practices adjudicated as infringing, (3) Oracle had an adequate remedy at law, (4) Oracle failed to establish a causal nexus, and (5) the injunction was vague and overbroad.  *See id.* at 11, 12–13, 14–16, 19.  The Ninth Circuit motions panel granted the stay (Ex. G), necessarily concluding that Rimini was likely to succeed in getting the copyright injunction reversed or vacated.

After full briefing and argument, the Ninth Circuit issued a published opinion that addressed a number of issues that significantly impact these proceedings on remand.

***First***, although the court of appeals sustained the jury's verdict that Rimini had engaged in "innocent" copyright infringement, it explicitly did so on "narrow ground[s]."  879 F.3d at 960 n.6.  As to PeopleSoft, the court did *not* affirm "cross-use" as a viable theory of infringement, instead upholding liability only "on the narrow ground of 'local hosting.'"  *Id.*  Because the record supported this Court's conclusion that the Rimini "servers where the copying took place were 'outside the control'" of the customers (whether "constructive" or otherwise), the court of appeals affirmed liability based on local hosting.  *Id.* at 959–60.  As to JD Edwards and Siebel, the Court upheld liability on a *limited* theory of "cross use", *i.e.*, that Rimini "created development environments for *future* customers using the license of an existing customer on the basis that *future* customers presumably would have licenses that would permit them to hire Rimini to create development environments."  879 F.3d at 957 (emphases added); *id.* at 958 (JD Edwards and Siebel licenses do "not preclude Rimini from creating development environments for a licensee for various purposes *after* that licensee has become a customer of Rimini").  The Ninth Circuit rejected Oracle's argument (Ninth Cir. Dkt. 50 at 13, 25–26) that the JD Edwards and Siebel licenses permit copies solely for archival purposes (*e.g.*, 879 F.3d at 958).  The court of appeals affirmed liability on documentation and as to Database *only* on waiver grounds.  *Id.* at 953 n.2, 960.

At oral argument before the Ninth Circuit, Oracle's counsel conceded that Rimini could "assist a licensed user in creating a testing environment … and use it to make a fix," and stated that "to the

extent there are disputes about that … those issues can be resolved" "in Rimini 2."  Ex. B at 25:6–20.

Oracle is therefore asking this Court to enjoin conduct that was not ultimately adjudicated in *Rimini I*,

and that Oracle represented to the Ninth Circuit remains to be resolved in *Rimini II*.

  **Second**, the court of appeals held that Rimini "indisputably had" the necessary authorization to

download materials on behalf of its clients from Oracle's website and thus "did not violate the state

[hacking] statutes."  879 F.3d at 962.  The court thus reversed the damages, prejudgment interest, and

injunction associated with these claims, and vacated the attorneys' fees award "for reconsideration in

light of Oracle's more limited success at litigation."  *Id.*

  **Third**, the court of appeals held that this Court did not independently consider the four *eBay*

factors regarding an injunction for copyright infringement, but instead relied on facts, alleged harms,

and issues related to the defunct computer hacking verdicts.  879 F.3d at 964.  "For example, the

[district] court concluded that Rimini's 'violations of state computer access statutes' contributed to an

'irreparable injury' to Oracle's business reputation and goodwill," which was the only irreparable harm

Oracle claimed justified the injunction.  *Id.*  The Ninth Circuit's conclusion is not surprising given that

Oracle repeatedly argued to this Court and to the court of appeals that the copyright injunction could

be justified based on the hacking verdicts.  *E.g.*, Ninth Cir. Dkt. 50 at 44 ("[T]he [district] court

considered the copyright and state-law violations together …. And rightly so, as much of Appellants'

business, and the harms Appellants caused Oracle, depended on the unauthorized downloading that

formed the basis for the computer abuse verdicts.").  Other than disapproving the injunction previously

entered, the Ninth Circuit did not "express [a] view" on whether an injunction should issue on remand.

879 F.3d at 964.

## LEGAL STANDARD

  The Copyright Act permits a court to grant injunctive relief "to prevent or restrain infringement

of a copyright" (17 U.S.C. § 502(a)) in accordance with traditional principles of equity (*eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006)).  Such relief is "an *extraordinary* remedy that may

only be awarded upon *a clear showing* that the plaintiff is entitled" to an injunction.  *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphases added).  The Supreme Court "has consistently

rejected … a rule that an injunction automatically follows a determination that a copyright has been

infringed." *eBay*, 547 U.S. at 392–93; *see also Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.").

## ARGUMENT

Oracle fails to meet its burden of "clear[ly] showing" that it is entitled to the "extraordinary remedy" of a permanent injunction. *Winter*, 555 U.S. at 22. Oracle asks this Court to re-enter the *identical* injunction that it presented the first time around, but that will not do in light of the Ninth Circuit's decision. The court of appeals recognized that the injunction had two parts, a copyright component and a hacking component, and thus treated it as "two separate injunctions." *Oracle*, 879 F.3d at 964 n.8. Had the Ninth Circuit endorsed the view presented in Oracle's motion, the court of appeals would have excised the hacking portion and affirmed the copyright portion alongside copyright liability. But it did not. The court of appeals reversed a substantial basis on which the original copyright injunction rested (harms from hacking), narrowly and carefully affirmed the judgment of infringement (which the jury had found innocent) only on specific grounds, vacated the copyright injunction, and remanded "for reconsideration in light of [its] opinion." *Id.* at 965. Oracle acknowledges none of this, and has admittedly done *nothing* to modify its request for injunctive relief— it has no new arguments and no new evidence.

For the reasons discussed below, Oracle comes nowhere near meeting its burden to prove, with specific, non-speculative evidence: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. On this record, Oracle is not entitled to *any* permanent injunction, much less the overbroad injunction it has proposed. Oracle is asking this Court to enjoin Rimini from practices the Ninth Circuit did not rule to be infringing. That would constitute reversible error.

## I. Oracle's Request for an Injunction Fails Under *eBay*

### A. Oracle Will Suffer No Irreparable Harm Absent an Injunction

Oracle has now had at least *six* opportunities in briefing before this Court and the Ninth Circuit

to demonstrate the basic requirement that it has suffered or will suffer an irreparable injury **caused by** the *infringing* aspects of Rimini's pre-2014 processes—*i.e.*, as the Ninth Circuit has now clarified, local-hosting of PeopleSoft and future-client cross-use for JD Edwards and Siebel—rather than legitimate market forces, Rimini's lawful downloading practices, Oracle's own poor support services, or any other factor.  Once again, Oracle has failed to carry its burden of proving irreparable injury or causal nexus.  Accordingly, no injunction may issue.

### 1.    Oracle Fails to Show Irreparable Harm

Oracle must demonstrate "that it has suffered an irreparable injury" (*eBay*, 547 U.S. at 391), and that there is "a real or immediate threat of imminent [irreparable] harm in the future" (*Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 937 n.3, 938 (N.D. Cal. 2009)).  Oracle contends that this showing has "previously" been made and that "[n]othing in the Ninth Circuit's opinion alters that conclusion."  Mot. 14.  In Oracle's view, supposed injuries to "Oracle's business reputation and goodwill" entitle it to relief.  *Id.* 14, 16.  Not so.

***First***, this Court's previous finding of irreparable injury was premised not only on Rimini's innocent copyright infringement, but also on Oracle's now-reversed hacking claims.  *See* Dkt. 1049 at 5–6.  Perhaps recognizing that this is fatal to its renewed motion, Oracle takes pains to deny it, informing this Court that it "*never* argued that the CDAFA [violation] … supported the issuance of a copyright injunction."  Mot. 13 (emphasis added).  That is demonstrably false:

- *Oracle*, 879 F.3d at 964:  "[T]he district court assessed the four [*eBay*] factors by reference to *both* the copyright and the CDAFA claims …. For *example*, the court concluded that Rimini's 'violations of state computer access statutes' contributed to an 'irreparable injury' to Oracle's business reputation and goodwill."

- Ninth Cir. Dkt. 50 at 40:  Oracle argued that there was a showing of irreparable harm because Rimini's "improper access and downloading of data" permitted Rimini to "achieve[] its current market share," offer lower prices, and thus allegedly break "the bonds and the trust that [Oracle] ha[s] with [its] customers.'"

- Ninth Cir. Dkt. 50 at 44:  Oracle argued that "the [district] court considered the copyright and state-law violations together …. And rightly so, as much of Appellants' business, and the harms Appellants caused Oracle, depended on the unauthorized downloading that formed the basis of the computer abuse verdicts."

- Ninth Cir. Dkt. 50 at 49:  Oracle argued that this Court's analysis "in its irreparable injury section" "was not even limited to Rimini's copyright infringement, but also included Appellants' violation of the computer abuse laws."

- Dkt. 907 at 6–7:  Oracle arguing to this Court that "Rimini's massive infringement and unlawful computer access eroded the relationships between Oracle and its customers…. As explained in Oracle's Motion, by failing to pay for the software it used and through unlawful downloading, Rimini built its business and gained customers quickly."

Oracle has used its hacking verdict to fill the gaps in its copyright claims throughout these proceedings (*see, e.g.*, Ex. H (Slide 34 of Rimini's injunction presentation)); it cannot now disavow that reality simply because the hacking claim is no longer available as a backstop.  And given that Oracle never previously tried to separate hacking harms from infringement harms, and has offered no new evidence or argument now, the reversal of the hacking judgment necessarily guts Oracle's claim of irreparable injury caused solely by (innocent) acts of copyright infringement.

***Second***, Oracle points to unspecified harms that will "be amplified by continued or future infringement" (Mot. 16) of which it claims to have "adduced evidence" in *Rimini II* (Mot. 19–20).  But Oracle does not even describe this supposed evidence, let alone provide it to the Court.  Oracle made this argument previously, also without evidence (Dkt. 900 at 16), attempting to dispute that since 2014 Rimini had changed the practices adjudicated to infringe at the summary judgment stage (Ex. C (declarations of Benge, Teegarden, Phung, Mackereth, and Miller)).  Oracle's excuse at the time was that it had "thus far been unable to test Rimini's" assertion, arguing that Rimini had not given it enough information in discovery in *Rimini II*, and thus "Rimini's protests of changed behavior [were] entitled to little weight."  Dkt. 900 at 20.  Now, more than two years later, fact discovery in *Rimini II* is closed, and Oracle claims that this discovery "has enabled Oracle to refute" Rimini's declarations.  Mot. 19.  Yet it fails to provide that evidence to the Court with its motion (and cannot properly submit any evidence for the first time with its reply brief).

***Third***, Oracle's citation to "pre-[injunction]" "misconduct" is little more than over-worded descriptions of innocent, pre-February 2014 copyright infringement.  Mot. 20.  But "presuming irreparable harm in a copyright infringement case is inconsistent with, and disapproved by, the Supreme Court's opinions in *eBay* and *Winter*."  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).  Oracle invokes *Walt Disney Co. v. Powell*, 897 F.2d 565 (D.C. Cir. 1990), but that decision rests on the exact "position … rejected by the United States Supreme Court" in *eBay*.  *Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1265 (D.N.M. 2009), *aff'd*, 390 F. App'x 780 (10th Cir.

2010).

The jury *rejected* Oracle's claims that Rimini and Mr. Ravin intentionally interfered with Oracle's current and prospective customer relationships and willfully infringed its copyrights. The jury instead found that Rimini's past infringement was *innocent*—Rimini "was not aware that its acts constituted infringement" nor did Rimini have any "reason to believe that its acts constituted an infringement." Ex. E at 43; Ex. D at 6. As Rimini has contended throughout these proceedings, it would be "a major departure" from equity practice to enjoin Rimini (*eBay*, 547 U.S. at 391–92), because Rimini is an adjudicated innocent infringer (*see Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 903 (9th Cir. 1997) (affirming denial of injunction where "defendants were innocent infringers")). The jury's finding of innocent infringement constitutionally binds this Court under the Seventh Amendment. *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991); *see also Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016).

Oracle has now had a half-dozen chances to cite even a single case in which an adjudicated innocent infringer was enjoined under the Copyright Act. It has failed to do so. Oracle has cited cases involving consent injunctions (*D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 36 (2d Cir. 1990)), preliminary injunctions with no jury findings (*Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510, 520 (S.D.N.Y. 1985); *Jackson v. MPI Home Video*, 694 F. Supp. 483, 492–93 (N.D. Ill. 1988)), and cases involving the inapposite proposition that a finding of *willfulness* is not required to issue an injunction (*Williams Elecs., Inc v. Artic Int'l, Inc.*, 685 F.2d 870, 878 (3d Cir. 1982)) or to award attorneys' fees (*Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987)).[1] Oracle resorts, once again, to completely inapposite cases involving willful infringers. Mot. 20–21; *see Walt Disney Co.*, 897 F.2d at 567 (noting that the "infringements were willful"); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 938–39 (2005) (noting "unmistakable" evidence of "*intentional* facilitation of … users' infringement") (emphasis added).

The "purpose of an injunction is to prevent future violations" of the law, as those violations

---

[1] Oracle fails to appreciate that there is *willful* infringement, and infringement, and *innocent* infringement. *See Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) ("It is plain that 'willfully' infringing and 'innocent intent' are not the converse of one another.").

have been adjudicated.  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).  But when the infringer's acts are innocent, it "will not need to be deterred from future infringements."  U.S. Dep't of Commerce, *White Paper on Remixes, First Sale, and Statutory Damages, U.S. Patent & Trademark Office*, 91 (Jan. 2016).  That is because an innocent infringer will conform its conduct once informed of the boundary inadvertently transgressed, just as Rimini did here.

Oracle's reliance on supposed "post-injunction misconduct" fares no better.  Mot. 22.  Oracle recycles its argument that Rimini "admi[tted] that Rimini's" new processes "violated the terms of the [prior] injunction" by pointing out that the injunction was overbroad.  Mot. 22.  Oracle omits that Rimini obtained a stay of *the exact injunction Oracle now proposes* in the face of Oracle's identical arguments.  Rimini's stay motion to the Ninth Circuit was not based on its appeal of the hacking claims; rather, Rimini argued that (1) an adjudicated innocent infringer never has been and could not be enjoined consistent with *eBay*, (2) Oracle had an adequate remedy at law, (3) Oracle failed to establish a causal nexus, and (4) the injunction was vague and overbroad.  Ninth Cir. Dkt. 3-1 at 11–16.  Rimini further argued that because it had ceased its prior infringing conduct, the injunction should be stayed.  *Id.* at 19.  The Ninth Circuit accepted those arguments, and stayed the same injunction Oracle asks this Court to re-enter.

Oracle's argument that "nothing" has changed simply ignores the appeal, the Ninth Circuit's stay order, and the Ninth Circuit ruling.  The court of appeals has clearly signaled that the injunction was defective, and this Court should resist Oracle's attempts to ignore the posture of this remand.

## 2.        Oracle Has, Once Again, Failed to Show a Causal Nexus.

Oracle refuses even to acknowledge the causal nexus requirement, let alone attempt to satisfy it on this record.  That is because Oracle could not possibly do so.  Even assuming Oracle *had* suffered harm to its goodwill and business reputation as it claims, to obtain an injunction Oracle must "present[] … evidence that *directly ties consumer demand* for [Rimini's support services] to [Rimini's] allegedly infringing feature," *i.e.*, local-hosting for PeopleSoft and future-client cross-use for JD Edwards and Siebel.  *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012) (emphasis added).  It "is not enough" for Oracle to assert "some insubstantial connection between the alleged harm and the infringement" to "check the causal nexus requirement off the list."  *Id.* at 1375; *see also Perfect 10,*

1   *Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) (failure to "show[] a sufficient causal connection

2   between irreparable harm" and infringement dooms a claim for "injunctive relief").   Oracle fails to

3   establish this requirement on several fronts.

4        ***First***, contrary to its prior position that "*much* of … the harms [Rimini] caused Oracle[]

5   depended on the unauthorized downloading that formed the basis for the computer abuse verdicts"

6   (Ninth Cir. Dkt. 50 at 44 (emphasis added)), Oracle now insists that copyright infringement was the

7   sole cause of this alleged irreparable harm (Mot. 14–16).   But Oracle clearly argued to the Ninth Circuit

8   that Rimini's "improper access and downloading of data" allegedly permitted Rimini to "achieve[] its

9   current market share," offer lower prices, and thus allegedly break "the bonds and the trust that [Oracle]

10   ha[s] with [its] customers."   Ninth Cir. Dkt. 50 at 40; *see also* Dkt. 907 at 6–7 (arguing the same to this

11   Court).   It is disingenuous for Oracle to try to rewrite history now that the Ninth Circuit held Rimini's

12   access and downloading was lawful.   Oracle is bound by its prior arguments.   *See New Hampshire v.*

13   *Maine*, 532 U.S. 742, 749 (2001) ("[A] party [may not] prevail[] in one phase of a case on an argument

14   and then rely[] on a contradictory argument to prevail in another phase.").

15        ***Second***, Oracle's evidence fails to establish that the innocently infringing features of Rimini's

16   processes, and not something else (*i.e.*, legitimate competition, superior service, Oracle's poor

17   treatment of customers, etc.) led to Oracle's purported loss of goodwill.   Oracle points to excerpts of

18   trial testimony, but none connects Oracle's proffered irreparable injury to infringement.

19        Oracle relies on the testimony of its CEO, Safra Catz (Mot. 16), who speculated that Rimini

20   telling Oracle's customers that Oracle is overpriced caused those "customers [to] wonder all of a sudden

21   whether [Oracle] [was] overcharging them," thus "break[ing] the bonds and the trust that [Oracle] ha[d]

22   with [its] customers."   Ex. I at 935:11–17.   That is pure speculation without any evidentiary basis and

23   not a single example of an actual Oracle customer losing its trust in Oracle as a result of Rimini's

24   statements to Oracle customers.   But even if her testimony were credited, Ms. Catz did *not* testify that

25   Oracle's purported loss in goodwill was "directly" tied to *specific infringing features* of Rimini's

26   practices, as is required under the law.   *See Perfect 10*, 653 F.3d at 981–82.

27        Contrary to Oracle's claim (Mot. 15), Mr. Ravin never testified that *infringement* permitted

28   Rimini to offer superior support at lower prices than Oracle.   *Cf.* Ex. P at 1943:4-6 (Oracle's profit

margins are "94 percent").  In the excerpt Oracle cites, Mr. Ravin testified that although Rimini was not a software company, its goal as a service provider was to be *similarly valuated* like a software company.  Ex. J at 443:4–445:6.  That does nothing to establish that "consumer demand" for Rimini's services was driven by local-hosting or cross-use.  Similarly, Oracle cites some twenty-three pages of Kevin Maddock's trial testimony, without explaining at all how it supports the proposition that "non-infringing alternatives lack scale."  Mot. 15 (citing Ex. K at 1453:22–1476:6).  That topic is never discussed in the cited testimony.  Nor does Edward Yourdon's testimony that Rimini promised it could deliver vendor-level support (*id.* (citing Ex. L at 1702:18–1703:22)) establish that Oracle's purported drop in goodwill was caused by any *specific infringing features* of Rimini's practices.

To the contrary, Mr. Yourdon's testimony affirmatively *contradicts* a causal nexus.  He admitted that Oracle loses 5% of its customers every year, even before Rimini entered the market.  Ex. L at 1722.  The overwhelming evidence at trial confirmed that customers left Oracle, and joined Rimini, for reasons having nothing to do with Rimini's innocent infringement, and the jury agreed.  Ex. M at 1518 (Oracle customers leave for "a variety of reasons," including not "lik[ing] the way that they've been treated [at Oracle]"); Ex. L at 1715 (Pitney Bowes left Oracle before considering Rimini); Ex. M at 2265 (customer experienced better service with Rimini); *id.* at 2271–72: (Rimini support is "much superior"); *id.* at 2383 (personalized service); *id*. at 2987–88 (Bausch & Lomb would not have gone back to Oracle even if "Rimini Street was not available as an option").  In fact, during the relevant time period, Oracle's attrition rate *improved*.  Ex. N at 1318; 1866–68; Ex. O.

Any harm to Oracle's reputation and goodwill was caused by Oracle's own poor customer service and mistreatment of its customers—which Oracle's own customers described as "aggressive and, at points, hostile."  Ex. M at 2962–63; *see also id.* at 2534 ("being upset" with Oracle "is what caused us to even go look for a third-party support"); *id.* at 2955–56, 2959 (stating customer "would have stayed with Oracle" if it had been "getting excellent service from Oracle" but "[was] talking to people who had very little experience with the software" and were "not well trained"); *id.* at 3165 (customer "perceived that they were receiving awful customer service and support").  Not one Oracle licensee testified that Rimini (let alone Rimini's *infringement*) caused that licensee to view Oracle in a negative light, as Ms. Catz speculated.  Oracle has thousands of customers, yet the *Rimini I* record

1   contains not one shred of evidence to support a causal nexus here, after *years* of litigation.

2   **Third**, the evidence on which Oracle relies here is the same evidence it presented to sustain its

3   claims for lost profits and tortious interference with Oracle's business relations at trial.  But the jury

4   rejected all of those claims. Ex. D at 4, 8–9.  It is not true that the jury was unable to determine whether

5   Oracle lost profits.  The jury found that Oracle lost *no* profits and that Rimini never unlawfully

6   interfered with Oracle's relationships with its customers.  This Court is bound by those findings. *Floyd*,

7   929 F.2d at 1397; *Teutscher*, 835 F.3d at 944.  As the Ninth Circuit put it in this case, "[a]t *all relevant*

8   *times*, Rimini … provided third-party support for Oracle's enterprise software, *in lawful competition*

9   *with Oracle's direct maintenance services*." *Oracle*, 879 F.3d at 952 (emphases added).  There is no

10  evidence establishing a causal nexus that the specific aspects of Rimini's prior practices that the Ninth

11  Circuit held to be infringing *caused* Oracle's unsubstantiated loss of goodwill, as opposed to any

12  number of factors unrelated to infringement.  Yet that is the burden Oracle must meet.  *E.g.*, *Perfect*

13  *10*, 653 F.3d at 982.  Entering an injunction under these circumstances would be legal error.

14      **B.      Oracle Has an Adequate Remedy at Law**

15      Oracle also fails to establish the second prong under *eBay*, that its "remedies available at law,

16  such as monetary damages, are inadequate." 547 U.S. at 391.  Oracle has received a complete remedy

17  at law for the conduct adjudicated in *Rimini I*, and any legally cognizable harm from Rimini's

18  subsequent conduct can be redressed in *Rimini II*.

19      At this stage in the litigation, it is settled that the jury awarded—and Rimini paid—Oracle $35.6

20  million and that this amount was, without dispute, "an objective measure of Oracle['s] … damages …

21  meant to approximate the fair market value of a license for *all of the copyrights Rimini Street*

22  *infringed*." Ex. E at 41 (emphasis added).  Furthermore, the Ninth Circuit has now affirmed a $22

23  million prejudgment interest award, which Rimini has also paid. *Oracle*, 879 F.3d at 964.  The court

24  of appeals held that this was to make Oracle whole, as "prejudgment interest is an element of

25  compensation." *Id.*  Combining these two compensatory elements, particularly in light of the jury's

26  rejection of Oracle's claim for lost profits and tortious interference, it is beyond the pale for Oracle to

27  claim that it is in need of any further remedy for the conduct at issue in *Rimini I*.  Mot. 16–17.

28      Oracle's suggestion that the harm to its goodwill is "unquantifiable" (Mot. 16) cannot be

reconciled with the jury verdict.  There is no basis for concluding that the jury had any "difficulty" in determining whether Oracle lost profits and suffered harm to its potential business. Mot. 17.  The jury instructions presented the jury with a binary choice:  Oracle was entitled to "the fair market value of a license for the rights infringed or its lost profits, not both." Ex. E at 35.  The jury rejected Oracle's claims that it was entitled to hundreds of millions of dollars in lost profits.  *See* Ex. P at 1774:5–7. Thus, together with the prejudgment interest award, Oracle has been fully compensated for all the harms adjudicated in this case.  *See Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996); *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011).

Rimini changed its processes, not as "voluntarily cessation," as Oracle argued (Mot. 15), but in response to this Court's orders.  As Judge Friedland observed at oral argument before the Ninth Circuit: "I don't really understand why there also needs to be an injunction, when it seems like [Rimini is] trying to comply," and where there is "a whole lawsuit [*i.e.*, *Rimini II*] to figure out if they're complying with the liability determinations." Ex. B at 41:18–22.  Any issues relating to Rimini's revised processes can be addressed in *Rimini II*.

## C.   The Balance of Hardships Favors Rimini

Oracle continues to argue that if Rimini no longer engages in the adjudicated infringing conduct (which is undisputed on this record), Rimini cannot possibly be harmed by Oracle's proposed injunction. Mot. 18.  Oracle is wrong.  The balance of hardships favors Rimini.

Oracle's proposed injunction would enjoin far more conduct than has been held unlawful.  As discussed below (Part II), Oracle's proposed injunction is grossly overbroad and does not even attempt to comport with the narrow basis of liability upheld by the Ninth Circuit.  The only "acts that have already been determined to be unlawful" (Mot. 17) are those identified in the Ninth Circuit's opinion. Indeed, Oracle's counsel stated explicitly before the Ninth Circuit that Rimini's additional challenges to this Court's construction of the software licenses (at summary judgment and in the permanent injunction) are open questions to be adjudicated in *Rimini II*.  *See* Ex. B at 25:6–20 (Oracle's counsel stating at oral argument that Rimini can make testing and development environments so long as they are not on Rimini's own servers and that any "disputes about that" may be resolved "in *Rimini 2*").

Oracle does not even argue that it will be harmed absent an injunction limited to the conduct

1    the Ninth Circuit found to be infringing.  Nor could it.  There is absolutely no evidence of any harm to

2    Oracle from Rimini's local-hosting of PeopleSoft and future-client cross-use for JD Edwards and

3    Siebel.  The only evidence before the Court is that Rimini no longer engages in this conduct; and that

4    evidence is undisputed.  In these circumstances, there is no risk of harm to Oracle in the absence of an

5    injunction.

6         In contrast, Oracle's proposed injunction—which sweeps in not only local-hosting of

7    PeopleSoft and future-client cross-use for JD Edwards and Siebel, but a whole host of other vague and

8    overly broad proscriptions not finally adjudged unlawful—would severely harm Rimini.  As Oracle

9    pointedly acknowledged before the Ninth Circuit, its real aim "is the ability to hold [Rimini] in

10   contempt"—that "is no small thing."  Ex. B at 42:18–22.  If this Court were to enter Oracle's proposed

11   injunction, Rimini would be forced to make additional changes to its business practices—*not* to comply

12   with the Ninth Circuit's decision or the jury's verdict, but to comply with a vague and much broader

13   injunction at a direct cost of approximately $4 million per year.  Ex. Q ¶¶ 4–5.  These expensive

14   changes, combined with a risk of a contempt proceeding based on conduct that has not been found to

15   be infringing, are severe harms to Rimini that militate strongly against injunctive relief.  Oracle will

16   also use any injunction to threaten Rimini's current and prospective clients, leading to further harms to

17   Rimini.

18        The jury's finding that Rimini's copyright infringement was "innocent," precludes, as a matter

19   of law and equity, any injunction at all—yet, once again, Oracle fails to acknowledge that finding in

20   its brief.  Indeed, now that the Ninth Circuit has reversed the hacking liability, the judgment contains

21   no willful or intentional conduct *whatsoever.  See Westinghouse*, 106 F.3d at 903 (affirming denial of

22   injunction because "defendants were innocent infringers"); *Contessa Food Prods., Inc. v. Lockpur Fish

23   Processing Co.*, 2003 WL 25778704, at *7 (C.D. Cal. Jan. 29, 2003) (where a party "has infringed

24   innocently" and changed its behavior, "the public needs no protection" and "courts usually deny

25   requests for permanent injunctions"); *Polygram Int'l. Publ'g, Inc. v. Nevada/TIG, Inc.*, 855 F. Supp.

26   1314, 1334–35 (D. Mass 1994) (finding no injunction warranted in copyright infringement action

27   where defendant had "good faith basis for believing that, under existing law" it was not infringing);

28   *Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F. Supp. 1347, 1350 (S.D.N.Y. 1987) (declining to issue

injunction against "innocent infringer" who has "ceased its infringement").

Finally, Oracle says it is seeking to "protect its copyrighted work," but provides no evidence of any actual, or even hypothetical, harm to its copyrighted software in the absence of an injunction. Rimini engages "in lawful competition with Oracle's *direct maintenance services*" (*Oracle*, 879 F.3d at 952 (emphases added)); Rimini does *not* compete with Oracle in the *software* market.   Any competition Oracle faces in the maintenance services market does not pose any threat to Oracle's ability to license its software.

Oracle's argument is plainly contrary to *eBay*'s holding that a permanent injunction does not automatically follow a determination that the right to exclude has been infringed.  547 U.S. at 392–93. Oracle claims that if Rimini has ceased the adjudicated conduct, it follows that the injunction would "create no burden whatsoever on Rimini," but, "if, as Oracle believes, Rimini's misconduct is continuing, then the balance of hardships tips decisively in Oracle's favor."  Mot. 18.  In other words, Oracle's position is that *no matter what*, if there has been past infringement, the balance of harms tips in its favor.  That is simply not the law.

### D.      An Injunction Would Be Contrary to the Public Interest

The public would be "disserved by a permanent injunction" (*eBay*, 547 U.S. at 391) because Oracle's injunction is decidedly *not* "reasonably tailored" (Mot. 18).  It is overbroad, and thus it poses a direct threat to "lawful competition with Oracle's direct maintenance services."  *Oracle*, 879 F.3d at 952.  Such injunctions "stifle fair competition" and "impair the public interest."  *Brighton Collectibles, Inc. v. Pedre Watch Co.*, 2013 WL 5719071, at *6 (S.D. Cal. Oct. 21, 2013).

Oracle resurrects its claim that injunctions "that vindicate[] copyright rights" are in the public interest (Mot. 18), but that position is contrary to *eBay*.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012) ("general public interest" in intellectual property rights is not "sufficient to mandate injunctive relief").  As the Ninth Circuit made clear, except for a few narrow limitations (involving practices that were discontinued in 2014), "the software licenses … permitted Oracle's licensees to hire Rimini to perform [support] work for them."  *Oracle*, 879 F.3d at 953.  Rimini performed such services "in lawful competition" with Oracle (*id.* at 952), and thus an overbroad and vague injunction will most definitely "impair the public's interest in enterprise software

1    support services" (Mot. 19).  The record is unequivocal that the market benefits from Rimini's lawful

2    competition with Oracle.  Ex. M at 1518, 1715, 2265, 2271–72, 2383, 2987–88.

3    **II.      Oracle's Proposed Injunction Is Impermissibly Vague and Overbroad**

4          Oracle urges this Court to issue *the exact same injunction* the Ninth Circuit stayed pending

5    appeal and then vacated, arguing that "the Ninth Circuit made no finding that the injunction was in any

6    way overbroad."   Mot. 22.   But the Ninth Circuit vacated the injunction and remanded "for

7    reconsideration"—not "for reentry."  The Court "treat[ed] the injunction as if there were two separate

8    injunctions"; it reversed the hacking injunction, and "vacate[d] the copyright injunction and

9    remand[ed] for reconsideration in light of [the] opinion."  879 F.3d at 964 & n.8.  Had the court of

10   appeals thought the copyright injunction could stand as-was, it would have left it in place.  That the

11   injunction was stayed, vacated, and remanded proves that Oracle's proposed injunction *cannot* be

12   entered by this Court.

13          **A.      Oracle's Proposed Injunction Disregards the Ninth Circuit's Narrow Decision**

14          Any injunction must be limited to adjudicated conduct, in that it "must be narrowly tailored …

15   to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches

16   of the law."  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir 2004); *see also Mulcahy v. Cheetah*

17   *Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir. 2004) ("[B]lanket injunctions to obey the law are

18   disfavored."); *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) ("Injunctive

19   relief should be narrowly tailored to fit specific legal violations."); 4 *Nimmer on Copyright*,

20   § 14.06[C][1][a] ("[T]he scope of the injunction should be coterminous with the infringement.").  There

21   are numerous ways in which Oracle's proposed injunction flouts this important rule and is

22   impermissibly overbroad.  Below are just some of the injunction's defects.  Rimini also includes a

23   specific set of objections to Oracle's injunction as Appendix III.  That appendix demonstrates, in

24   concise format, that Oracle's proposed injunction conflicts with the Ninth Circuit's decision, this

25   Court's summary judgment orders, the evidence at trial, the Copyright Act, and the Constitution.

26          ***General Provisions.***  Oracle's proposed injunction requires Rimini's customers to affirm in

27   writing that they hold a valid license agreement.  Dkt. 1117-1, ¶ 2(a).  This requirement is completely

28   disconnected from any "specific legal violation[]," for which Rimini was ultimately held liable.

*Waldman Publ'g*, 43 F.3d at 785.  Nor is there any license provision to support this requirement.  The Ninth Circuit recognized that "[*a*]*ll* of Rimini's customers pertinent to this dispute were licensees of Oracle's software."  *Oracle*, 879 F.3d at 952 n.1 (emphasis added).  Moreover, there is no finding by any jury or any court that Rimini ever provided copies of Oracle software to persons who did not have a valid license.  To the contrary, no customer supported by Rimini received Oracle software to which that customer was not entitled.  Oracle challenged only the *manner* in which these customers were supported.  There is no basis in law or equity to impose by injunction a requirement that is not grounded in the licenses or the Copyright Act.

Oracle also impermissibly seeks to make Rimini's ability to service one product line contingent on its adherence to the injunction's terms concerning a different product line.  Dkt. 1117-1, ¶ 2(b).  There is no basis for such a provision.  The Ninth Circuit recognized that the licenses at issue have meaningful differences in their terms.  *Oracle*, 879 F.3d at 953.  For instance, some PeopleSoft licenses contain a facilities limitation, while other PeopleSoft licenses and all JD Edwards and Siebel licenses do not.  *Id.* at 959; *see also Oracle*, 6 F. Supp. 3d at 1103.[2]  Accordingly, any infringement of one product line would be completely independent of Rimini's compliance regarding the others.

**Prohibition on "Distribution" and "Preparation of Derivative Works."**  Throughout its proposed injunction, Oracle seeks to enjoin *distribution* of the licensed software and the preparation of derivative works.  Dkt. 1117-1, ¶¶ 2–8, 10–12, 15.  But as Oracle itself has acknowledged, this case focused on the *reproduction* right.  *See, e.g.*, Dkt. 284 at 9 (Oracle stating that this case "concerns only the reproduction right").  The jury was instructed on liability concerning whether certain copies were made consistent with specific provisions of the license agreement.  *See* Ex. E at 27–31.  Unsurprisingly, the Ninth Circuit did not uphold liability based on, or even mention, distribution or derivate works.  In fact, the court of appeals affirmatively acknowledged that the licenses at issue permit "software … [to] be tested and *modified* to fit with *bespoke customizations* before being put to actual use."  *Oracle*, 879

---

[2] Although Rimini stipulated for purposes of *infringement liability* at trial that the City of Flint and Pittsburgh Public Schools PeopleSoft licenses were representative of PeopleSoft licenses in general, an injunction cannot possibly prohibit Rimini from local hosting if a licensee's *actual license* does not contain language substantially similar to the language on which the Ninth Circuit upheld liability.

F.3d at 955 (emphases added).  An injunction directed at distribution or derivative works would thus be unlawful.  *See Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003) (reversing injunction that prohibited infringement of display and performance rights, where only reproduction and distribution rights were at issue); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226–27 (C.D. Cal. 2007) (finding defendants liable on theory of inducing infringement, but declining to enjoin conduct going "far beyond the bounds of th[e] lawsuit").

**PeopleSoft Provisions.**  Relying on this Court's interpretation of the PeopleSoft licenses as limiting copying of the licensed software to the licensee's "facilities," the Ninth Circuit upheld liability on the "narrow ground" that Rimini infringed Oracle's copyright in PeopleSoft only when Rimini copied the licensed software on its own servers outside the actual or constructive control of its clients. *Oracle*, 879 F.3d at 960 & n.6.

Oracle's proposed terms as to PeopleSoft go far beyond this holding.  For instance, Oracle's proposed injunction states that Rimini may copy the licensed software only on a "specific licensee's own computer system."  Dkt. 1117-1, ¶ 5.  But the Ninth Circuit limited copying to servers over which the licensee retains actual or constructive control.  *Oracle*, 879 F.3d at 960.  This is an important distinction.  Further, Oracle seeks to enjoin cross use of PeopleSoft software, even though the Ninth Circuit expressly declined to decide whether Rimini violated the PeopleSoft copyright by engaging in cross use.  *Id.* at 960 n.6.  Oracle also attempts to bar copying of the licensed software "other than to support the specific licensee's own internal data processing operation" (Dkt. 1117-1, ¶ 4), and to preclude Rimini from using "a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee" (*id.*, ¶ 6).  But, in light of the Ninth Circuit's decision, enjoining cross use would clearly extend beyond the scope of conduct that has been adjudicated.

**JD Edwards and Siebel Provisions.**  In its discussion of the JD Edwards and Siebel licenses, the Ninth Circuit recognized that Rimini may create testing and development environments for licensees of both product lines.  The Court stated that "updates to enterprise software must be tested and modified to fit with bespoke customizations before being put to actual use," that such a "testing process requires the creation of 'development environments,'" and that "the very work of maintaining

customized software requires copying the software." *Oracle*, 879 F.3d at 955–56.  The court further recognized that while the PeopleSoft licenses contained a facilities limitation, JD Edwards and Siebel licenses did not. *See id.* at 959.  And the Court acknowledged that Rimini may house copies of the JD Edwards and Siebel software on its own servers for archival purposes *and* to support a customer's use. *See id.* at 958 (Rimini may "creat[e] development [and testing] environments for a licensee for various purposes *after* that licensee has become a customer of Rimini").  The Court upheld infringement liability as to both product lines only on the theory that Rimini performed work under color of a license held by an existing customer "for unknown or future customers."  *Id.* at 953; *see also id.* at 957.

Oracle's proposed terms concerning JD Edwards and Siebel are overbroad in several respects. The proposed injunction provides that Rimini may copy the licensed software only on "a specific licensee's own computer systems," and that Rimini may make such copies only for certain purposes, such as archiving and emergency back-up purposes.  Dkt. 1117-1, ¶¶ 8, 10, 14.  Yet neither the JD Edwards nor the Siebel licenses contain any sort of facilities limitation, and under both licenses, Rimini may house copies of the software on its own servers for archival *and* support purposes.  *Oracle*, 879 F.3d at 958–59.  Oracle's proposed injunction would therefore directly conflict with the Ninth Circuit's clear holding and enjoin conduct specifically permitted by the licenses.

Oracle also attempts to preclude Rimini from "copy[ing]" and "access[ing]" JD Edwards and Siebel source code, even though no license (let alone all of them) contains these broad and vague restrictions.  Dkt. 1117-1, ¶¶ 9, 13.  But the Ninth Circuit specifically recognized that Rimini *must* make copies in order to lawfully service the software.  *Oracle*, 879 F.3d at 955–56.  Moreover, "access" is not an exclusive right under the Copyright Act.  *See* 17 U.S.C. § 106; *see also Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 447 (1984) ("An unlicensed use of [a] copyright is not an infringement unless it conflicts with one of the specific exclusive rights conferred by the copyright statute.").  Prohibiting "access" would also violate the First Amendment, as such a prohibition is tantamount to enjoining Rimini from reading a copyrighted book.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc).  At no point did the Ninth Circuit uphold liability on the basis of Rimini "accessing" source code, and, accordingly, no injunction may properly enjoin such conduct.

Finally, Oracle seeks to prohibit Rimini's cross use of the licensed software even for other

existing Rimini clients.  Dkt. 1117-1, ¶¶ 11, 15 ("Rimini shall not use a specific licensee's JD Edwards [or Siebel] environment to develop or test software updates or modifications for the benefit of any other licensee.").  But the only infringing form of cross use upheld by the Ninth Circuit was work Rimini performed under color of an existing licensee for future or unknown clients.  879 F.3d at 953, 957.

***Oracle Database Provisions.***  The Ninth Circuit held that Rimini infringed the Database copyright by copying Database software using developer licenses that did not permit such copying, and that Rimini waived any reliance on the Oracle License and Service Agreements ("OLSAs") to avoid a finding of infringement.  *Id.* at 960.  Because any injunction must be limited to adjudicated conduct (*Price*, 390 F.3d at 1117), Rimini may not be enjoined from copying Database software using valid OLSAs that authorize such copying going forward.  Nor may Rimini be enjoined from copying Database software under color of a developer license that authorizes such copying.  Oracle's proposed blanket ban on all copying of Database software is thus overbroad.

**B.**     **Oracle's Proposed Injunction Is Vague and Fails to Provide Adequate Notice**

This Court should reject Oracle's proposed injunction for the additional reason that many of its terms are vague and fail to provide adequate notice of the proscribed conduct.  Rule 65(d) requires that every injunction "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(B)–(C).  One of the fundamental principles underlying this rule is that "those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits."  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013).  Rule 65(d) is intended "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Id.*  "The benchmark for clarity and fair notice is not lawyers and judges, who are schooled in the nuances of [the] law," but instead the "lay person, who is the target of the injunction."  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).  Oracle's proposed injunction fails to provide fair notice.

***Prohibition on "Use" of Software for the "Benefit" of or to "Support" Another Licensee.***
Oracle's proposed injunction forbids Rimini from "us[ing]" Oracle's software to "support" or "benefit" other licensees.  Dkt. 1117-1, ¶¶ 6, 11, 15.  These terms are vague and undefined, and thus fail to

provide Rimini with fair notice of what conduct is enjoined in violation of Rule 65(d) and the Due Process Clause.  *See Columbia Pictures*, 710 F.3d at 1047.  For example, after a Rimini engineer produces an update "us[ing]" Oracle's software for a specific licensee, succeeding clients will "benefit" in some sense because the engineer has already undertaken the learning process for producing the update.  An injunction may not be used to enjoin human thought or ingenuity.  *See*, *e.g.*, 17 U.S.C. § 102(b) (copyright protection does not extend to any "idea …, method of operation, [or] concept").  Yet Oracle has contended that this prohibition would impose that restriction on Rimini.

　　　*"Affiliates" and "Subsidiaries."*  Rule 65(d) also provides that an injunction binds "the parties' officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" with any of the foregoing.  Fed. R. Civ. P. 65(d).  Oracle seeks to add Rimini's "subsidiaries" and "affiliates" to the list of those bound by any injunction the Court may issue.  Dkt. 1117-1, ¶ 1.  But those terms are not in Rule 65(d), not defined in Oracle's proposed injunction, and do not comport with due process by providing fair notice to "subsidiaries" and "affiliates" *before* they may be hauled into Court at Oracle's whim on charges of contempt.  *See Stone v. Godbehere*, 894 F.2d 1131, 1133 (9th Cir. 1990).

　　　*"Internal Data Processing Operations."*  Oracle also seeks to restrict Rimini's use of Oracle's software to support specific licensee's own "internal data processing operations."  Dkt. 1117-1, ¶ 4.  The full scope of this contractual phrase is at issue in *Rimini II*, however, and it is exactly the type of vague language courts routinely reject when crafting injunctive relief.  *See Nat'l Labor Relations Bd. v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941).  Rather than identify specific adjudicated conduct, Oracle seeks an injunction that commands Rimini to obey the contract.  This Court should decline to impose "restrains upon the commission of unlawful acts" that are "so dissociated from those which [Rimini] has committed."  *Id.* at 436.

　　　Rimini cannot be enjoined according to Oracle's proposed overbroad and vague terms.  *See Columbia Pictures*, 710 F.3d at 1047; *Price*, 390 F.3d at 1117.  Adoption of the proposed injunction would ensure that subsequent litigation concerning the scope of the injunction will arise, and would significantly hamper  Rimini's daily business operations by injecting uncertainty into an area in which the law requires clarity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Oracle's renewed motion for a permanent injunction should be denied.

DATED:        April 4, 2018                    GIBSON, DUNN & CRUTCHER LLP

By: *s/ Mark A. Perry*
Mark A. Perry
*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that on April 4, 2018, I electronically filed the foregoing document with the

3 clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system.

4 The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who

5 have consented in writing to accept this Notice as service of this document by electronic means.

6                              GIBSON, DUNN & CRUTCHER LLP

7                              By: *s/ Mark A. Perry*
                              Mark A. Perry
8                              *Attorneys for Defendants*
                              *Rimini Street, Inc. and Seth Ravin*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

OPPOSITION TO RENEWED MOTION FOR A PERMANENT INJUNCTION