GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone:  (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

HOWARD & HOWARD PLLC
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wallen@howardandhoward.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-PAL<br><br>**APPENDIX I IN SUPPORT OF DEFENDANTS' OPPOSITION TO ORACLE'S RENEWED MOTION FOR A PERMANENT INJUNCTION**<br><br>**RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED FINDINGS OF FACT** |

1

2                              **TABLE OF APPENDICES AND EXHIBITS**

3    **Appendix I**:  Rimini's Objections to Oracle's Proposed Findings of Fact

4    **Appendix II**:  Rimini's Proposed Order Denying Oracle's Renewed Motion

5    **Appendix III**:  Rimini's Specific Objections to Oracle's Proposed Injunction

6    **Appendix IV**:  Exhibits

7            Volume I

8                    Exhibit A:  *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948 (9th Cir. 2018).

9                    Exhibit B:  Excerpts of Oral Argument Transcript from Ninth Circuit

10                   Exhibit C:  Rimini Declarations Regarding Changed Processes

11                   Exhibit D:  Jury Verdict

12                   Exhibit E:  Jury Instructions

13                   Exhibit F:  Permanent Injunction

14                   Exhibit G:  Ninth Circuit Order Staying Permanent Injunction Pending Appeal

15                   Exhibit H: Slide 34 from Rimini's Permanent Injunction Argument

16                   Exhibit I:  Cited Testimony of Safra Catz

17           Volume II

18                   Exhibit J:  Cited Testimony of Seth Ravin

19                   Exhibit K:  Cited Testimony of Kevin Maddock

20           Volume III

21                   Exhibit L:  Cited Testimony of Edward Yourdon

22                   Exhibit M:  Cited Testimony of Former Oracle Customers

23                   Exhibit N:  Cited Testimony Regarding Oracle Improved Attrition

24                   Exhibit O:  Oracle's Internal Reports Regarding Customer Satisfaction

25                   Exhibit P:  Cited Testimony of Elizabeth Dean Regarding Damages

26                   Exhibit Q:  Declaration of Brian J. Slepko Regarding Costs of Overbroad Injunction

27                   Exhibit R:  Oracle's Trial Exhibit 3

28                   Exhibit S:  Oracle's Trial Exhibit 2155

Gibson, Dunn &
Crutcher LLP

# **Appendix I**:
Rimini's Objections to Oracle's Proposed
Findings of Fact

# APPENDIX I

## RIMINI'S RESPONSE TO ORACLE'S PROPOSED FINDINGS OF FACT

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| 1. | Rimini copied "massive amounts" of Oracle software and support materials, without ever obtaining any license from Oracle. Tr. 165:12-16 (Davis); 302:3-4 (Ravin). | **Disputed in part.** At all times, and quite contrary to Oracle's repeated assertions, "[a]ll of Rimini's customers pertinent to this dispute were licensees of Oracle's software." *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 952 n.1 (9th Cir. 2018). Rimini operated under its clients' licenses, which the Court found it could assert as a defense in this action. ECF No. 474 at 8–10. Additionally, the Ninth Circuit recognized that Rimini engages "in *lawful competition* with Oracle's direct maintenance services," *Oracle*, 879 F.3d at 952 (emphasis added), and did not endorse Oracle's positions that Rimini and its CEO Seth Ravin were "thieves" and "liars" who engaged in "massive copying" and "fraud." Further, Mr. Ravin did not testify to the quantity of Oracle software and support material copied by Rimini. Tr. 302:3–4 (Ravin). | **Vague and ambiguous; Fed. R. Evid. 401–402** (Relevance); Misstates the evidence |
| 2. | Rimini had "thousands and thousands" of copies of Oracle software on Rimini servers. Tr. 551:10–18 (Ravin). | **Disputed.** The Ninth Circuit declined to adopt Oracle's newly minted theory of infringement based on an allegedly unreasonable number of copies made. Indeed, the Court's holding that copying is vital and necessary to the functioning of complex enterprise software, *see Oracle*, 879 F.3d at 955–56, belies any suggestion that the number of copies Rimini made under *any* of the licenses was itself impermissible. Moreover, Rimini downloaded only what its clients were | **Fed. R. Evid. 401–402** (Relevance) **Fed. R. Evid. 403** (Unduly prejudicial to the extent proposed fact implies that Rimini's infringement was anything but innocent) |

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | entitled to under their licenses. Tr. at 567:22–568:8, 728:12–22 (Ravin); Tr. 975:11–25 (Catz) ("Q. It could be thousands of files? A. It absolutely can be. Q. And the customer would be totally within its rights to download those materials; correct? A. Yes, as long as they're licensed for them, they may download them during their support contract."). Further, regardless of how many copies of Oracle software Rimini may have had on its servers, the jury found that Rimini's infringement was innocent. ECF No. 896 (verdict). | |
| 3. | Rimini created and used full working copies of the PeopleSoft, JD Edwards, and Siebel software as "environments" on Rimini's servers. Tr. 303:1–5, 320:13–321:2, 758:23–759:4, 760:8–15 (Ravin); 1146:5–17 (Chiu); 1757:14–1758:11 (Whittenbarger). | **Disputed** to the extent that the proposed fact implies that Rimini created and used copies of *every client's* software as environments on its servers. For example, Mr. Chiu testified that Rimini had "*some* internal environments for some of our Siebel clients" that were "used to provide support *for those clients that provided us their software.*" Tr. 1146:5–11. Moreover, as the Ninth Circuit held, JD Edwards and Siebel licenses do not contain a facilities limitation like the example PeopleSoft licenses did, nor do the JD Edwards and Siebel licenses prohibit "working copies" being made. *Oracle*, 879 F.3d at 958. | **Vague and ambiguous; Fed. R. Evid. 401–402** (Relevance); Misstates the evidence |
| 25. | Rimini has at least 216 environments on its servers that contain installed copies of Oracle Database. ECF No. 528, UF 25. | **Disputed** to the extent this proposed finding of fact is unlimited in time and implies that the fact is true as of the present date. | **Overbroad** |
| 26. | Each environment on Rimini's local systems constitutes a | **Disputed** to the extent this proposed finding of fact is | **Overbroad** |

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | reproduction of one or more of the copyright registrations-in-suit. ECF No. 528, UF 24. | unlimited in time and implies that the fact is true as of the present date. | |
| 27. | Many of Rimini's fixes for PeopleSoft software involved files that contained modified versions of Oracle's source code. ECF No. 528, UF 42. | | **Vague and ambiguous** |
| 28. | All of the copies of and derivative works prepared from Oracle software and support materials that Rimini created and distributed to provide support were infringing. PTX 1458 (ECF No. 401), 5328 (ECF No. 5328) (stipulations); Jury Instruction 24, ECF No. 880 (final jury instructions); ECF No. 896 (verdict). | **Disputed.** The Ninth Circuit did not uphold liability based on, or even mention, derivate work rights. The jury was instructed that it was "to determine whether … Rimini['s] … *copying* of [Oracle's] software applications … was authorized by its client's software license agreements." Dkt. 880 at 27 (emphasis added). As Oracle itself has acknowledged, this case has always been about the reproduction right. *See, e.g.,* Dkt. 284 at 9 (Oracle stating that this case "concerns only the reproduction right"). Also disputed to the extent the cited documents do not support the alleged fact. *See, e.g.* ECF No. 896 (asking only whether Oracle proved by a preponderance of the evidence that Rimini Street engaged in copyright infringement); ECF No. 401 (stating only that Rimini Street will not dispute Oracle's ownership or registration of the various copyrighted works at issue). | **Overbroad; Misstates the Evidence** |
| 29. | Rimini's PeopleSoft copies were unauthorized. ECF No. 474 (Order re Oracle's First Mot. for Part. Summ. J.) at 27–28; ECF No. 896 (verdict). | **Disputed in part.** Undisputed that the Ninth Circuit upheld liability as to particular copies addressed at trial and summary judgment based on a facilities limitation in licenses identical to the City of Flint's license. Disputed to the extent this finding implies | **Overbroad; Misstates the Evidence** |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | that any other copies were found to be not authorized. | |
| 30. | The City of Flint and Pittsburgh Public Schools licenses are representative of "the PeopleSoft license agreements for all of Rimini's PeopleSoft customers." ECF No. 599 at 1. | **Undisputed** that Rimini Street agreed for purposes of liability at trial that the City of Flint and Pittsburgh Public Schools licenses are representative of "the PeopleSoft license agreements for all of Rimini's PeopleSoft customers." **Disputed** that an injunction can issue pertaining to any PeopleSoft licenses that do not contain substantially similar language to the licenses adjudicated at trial. | **Overbroad** |
| 32. | Both licenses forbid Rimini to have PeopleSoft software or documentation on its systems. PTX 698 at 5, § 16 (defined term "Software" includes documentation); *id.* at 1 § 1.1 ("Software" must be at customer's facilities); PTX 699 at 6 § 15 (defined term "Licensed Rights" includes both software and documentation); *id.* at 1 § 2.1(d) (customer may not "[d]istribute . . . to any third party any portion of the Licenses Rights"). | **Disputed in part.** Disputed to the extent that "both licenses" is vague and ambiguous; that PTX 699 § 2.1(d) is misquoted; and that the proposed finding of fact implies that the licenses preclude Rimini from having *any* PeopleSoft software or documentation on its systems under any circumstances. Also disputed on grounds that "its systems" is vague and ambiguous. | **Vague and ambiguous; overbroad; Fed. R. Evid. 106** (incomplete writing) |
| 34. | Rimini's Siebel and JD Edwards copies were unauthorized. ECF No. 896 (verdict). | **Undisputed** that the Ninth Circuit upheld infringement liability for these products on the narrow grounds of cross use as to future customers. *Oracle*, 879 F.3d at 957. | **Vague and overbroad** |
| 35. | This Court already found that the JD Edwards license for Giant Cement (PTX 704) and the Siebel license for Novell (PTX 705) permit copies for "archival" and "backup" purposes only. ECF No. 474 at 22, 24. | **Disputed.** Giant Cement's JD Edwards license (PTX 704) permits copies for "archival needs *and to support the Users*." ECF No. 474 at 21. Novell's Siebel license (PTX 705) permits copies for "archive or emergency backup purposes *or disaster recovery and related testing*" purposes. *Id.* at 23. | **Fed. R. Evid. 106** (incomplete writing); **Misstates the Evidence** |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | Moreover, the Ninth Circuit held that the licenses were not construed "to permit *only archival and emergency backup*" as to J.D.E. and Siebel; to the contrary, Rimini may "creat[e] development environments for a licensee for various purposes after that licensee [of J.D.E. and/or Siebel] has become a customer of Rimini." *Oracle*, 879 F.3d at 958 (first emphasis added). In so ruling, the Ninth Circuit squarely rejected Oracle's arguments. *See* Oracle Br. 13 ("[T]he district court concluded that Rimini's copying *could* be permissible under the Siebel and JD Edwards licenses, *but only if Rimini made solely archival or backup copies for the licensee*." (second emphasis added); *id.* ("[T]he core liability issue for trial was whether Appellants made copies only for the licensee's own backup or archival use."); *id.* at 25–26 (the licenses "expressly require copies to be made only for 'archive or emergency backup purposes' or 'disaster recovery testing purposes' … [yet] Rimini concededly" made copies that were not "inherently an unmodified copy of the software for use in the event that the production copy" was corrupted or lost). <br><br> The court emphasized that the licenses do not *only* permit archival and emergency backup copies, but rather, they also permitted supporting the customer's "use of the software" (JDE) and "related testing" (Siebel), which constructions would not preclude Rimini from creating development environments for | |

Gibson, Dunn &
Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | a licensee for various purposes "*after* that licensee has become a customer of Rimini." *Oracle*, 879 F.3d at 958.<br><br>Moreover, the court acknowledged that "updates to enterprise software must be tested and modified to fit with bespoke customizations before being put to actual use," such a "testing process requires the creation of 'development environments.'" *Id.* at 955. | |
| 36. | Mr. Allison's testimony established that those licenses were representative of the JD Edwards and Siebel licenses generally, as both companies "used form license agreements." Tr. 1117:25–1118:5, 1118:15–19 (Allison). | **Disputed in part.**<br>Undisputed that this was Mr. Allison's testimony. Disputed to the extent it is Mr. Allison's opinion and does not *establish* that these licenses were at all "representative." | **Fed. R. Evid. 702** (Improper expert opinion); **Misstates the evidence** |
| 37. | Licenses gave the customer the right "[t]o reproduce, exactly as provided by [Oracle], a reasonable number of copies of the [software] solely for archive or emergency backup purposes or disaster recovery and related testing." ECF No. 474 at 23 (quoting PTX 705, § 2.1(iv)). | **Disputed**, on the same grounds as 22 & 35. | **Vague and ambiguous; overbroad** |
| 38. | That provision can only be satisfied if Rimini's copies for "us[e] exclusively for archival and back-up purposes, and related testing, as directly contemplated by Section 2.1(iv)." ECF No. 474 at 24 n.20. | **Disputed**, on the same grounds as 35. | |
| 39. | Copies only fit that definition when they are created as "inherently an unmodified copy of the software for use in the event that the production copy of the software (the copy used on a customer's systems) is corrupted or lost." ECF No. 474 | **Disputed**, on the same grounds as 35. | |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | at 11 (emphasis supplied). In "complete contrast" to that permitted backup copy, a software copy that is "modifiable (or already modified)" is outside the scope of the license. *Id.* | | |
| 40. | Rimini "used all of the software," including all its "Siebel software" and "JDE software" in its "work for customers." Tr. 303:1–5 (Ravin); Tr. 364:3–8 (Ravin) (all environments on Rimini's systems were "used in order to support customers" and for "troubleshooting"). | **Disputed in part**.<br><br>Mr. Ravin's affirmative response to the question that "your people used all of the software, PeopleSoft software, Oracle Database software, Siebel software, JDE software, you used that in connection with your work for customers," establishes only that Rimini used software from multiple product lines in its work for customers, not that Rimini used every copy of software in its work for customers. Tr. 303:1–4.<br><br>Further, Mr. Ravin testified that environments had the "design and purpose" to be "used in order to support customers." Tr. 364:3–6. His testimony regarding "troubleshooting" was specific to Siebel environments, not *all* environments. Tr. 364:3–13. Mr. Ravin further testified that the "design" of the environments was to use them for troubleshooting, but he did not "actually know how they were used day to day." Tr. 364:3–13; *see also* Tr. 321:3–6 ("I don't know how the Siebel or JD Edwards [environments] were actually used."). | **Misstates the Evidence** |
| 41. | Rimini's Siebel environments were "designed" at the outset for, among other uses, "testing and development." Tr. 318:19–22 (Ravin); Tr. 1146:5–25 (Chiu) (Siebel copies "used to provide support"); Tr. 758:23– | **Disputed.**<br><br>The Ninth Circuit held that Siebel licenses permit copies made for testing and development. *See* Response to Proposed Finding 35. | **Vague and ambiguous; Fed. R. Evid. 401–402 (Relevance); Misstates the Evidence** |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | 759:4 (Ravin) (same); Tr. 1754:8–15 (Whittenbarger) (Siebel copies used for training); PTX 1461 (Chiu discussing customer Caterpillar (Siebel) "we reclarified how our support model is based on building up an in-house lab environment with a vanilla [not customized] fix-master [environment to test fixes and patches] and a customized replica of their dev/test environment would enable us to maximize our responsiveness to them"). | The cited testimony does not support the proposed finding of fact. For example, Mr. Ravin testified he did not know how the Siebel environments were used. Tr. 321:3–6; *see also* Tr. 364:3–13. Additionally, Mr. Chiu testified that Rimini had "*some* internal environments for some of our Siebel clients" that were "used to provide support for those clients that provided us their software." Tr. 1146:5–11 (emphasis added). And Mr. Whittenbarger testified that Rimini "had an environment to evaluate the latest version and to learn – you know, learn about it." Tr. 1754:8–15. | |
| 42. | Ravin likewise confirmed that JD Edwards environments were for "testing and development" and for "diagnostics and support." Tr. 321:1–6, 760:8–15 (Ravin). | **Disputed**, on the same grounds as 35. Also, Mr. Ravin testified he did not know how the JD Edwards environments were used. Tr. 321:1–6 (Ravin). | **Fed. R. Evid. 401– 402** (Relevance); **Misstates the Evidence** |
| 43. | Ravin explained Rimini's troubleshooting process: "you're taking the software, you're playing with it to see if you can figure out what's going wrong, what the customer had called in and reported." Tr. 364:24–365:1 (Ravin). | | **Fed. R. 401–402** (Relevance); **Misstates the Evidence** |
| 44. | Rimini's copies of Oracle software were "general development test environments" or "generic environment[s]" otherwise used for testing, development, support, and troubleshooting. Tr. 320:8–18, Tr. 367:2–8 (Ravin); Tr. 367:18–23 (Ravin) (Rimini would use Customer A's software to troubleshoot for Customer B); Tr. 1146:5–25 (Chiu ("explaining that Rimini's internal Siebel environments were "used to | **Disputed in part.** Rimini creates unique and independent environments for each client that has customized code. Tr. 597:2–11 (Ravin); *see id.* at 598:1–6. Mr. Chiu testified that Rimini had "*some* internal environments for some of our Siebel clients" that were "used to provide support for those clients that provided us their software." Tr. 1146:5–11. Also disputed on the same | **Misstates the Evidence** |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | provide support for those clients that provided us their software"); Tr. 3186:13–3187:4 (Slepko) (Siebel local environments were used to assist clients with their problems); Tr. 1754:8–15 (Whittenbarger) (Siebel environment used for internal training); Tr. 1757:14–1758:5 (Whittenbarger) (Rimini "set up environments to troubleshoot issues"); Tr. 2043:22–2044:21 (Blackmarr) (use of Customer A's software to support Customer B); PTX 181 at 2 (June 2009 installation of JD Edwards was "to be used for any configuration, testing and development required"); PTX 186 at 2 (Chiu explaining "I am planning a JDE install for Medtronic's Support system"); PTX 190 (JD Edwards environments associated with specific customers continued to be created through February 2010); PTX 33 ("Rimini would build out a[] [JD Edwards] environment to support them [customer]"); PTX 310 (Siebel environments used for troubleshooting); PTX 744 (same). | grounds as 35. | |
| 45. | An environment used for testing, development, or troubleshooting is not a backup because you "don't touch" a backup. Tr. 180:9–22, 182:16–183:4 (Davis). | **Disputed in part.** Disputed to the extent this proposed finding of fact is actually a legal conclusion, and cites only the testimony of Oracle expert Dr. Davis. Moreover, as explained in more detail in response to proposed finding of fact 35, *supra*, the Ninth Circuit emphasized that the licenses do not *only* permit archival and emergency backup copies, but rather, they also permitted supporting the customer's "use of the software" (JDE) and "related testing" (Siebel). *Id.* at | **Fed. R. Evid. 702** (Improper expert opinion); **Fed R. Evid. 401–402** (Relevance) |

APPENDIX I:  RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED FINDINGS

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | 17. | |
| 46. | An "archive" or "backup": a "copy . . . put on a physically different place," on a "separate disk" or otherwise "put aside." Tr. 180:5–181:17, 182:16–24 (Davis); *see also* Tr. 362:21–363:23 (Ravin) (discussing archives shipped to customers on DVDs or USB drives and backups on tape drives). | **Disputed in part.** Disputed to the extent this proposed fact is actually a legal conclusion, and cites only the testimony of Oracle expert Dr. Davis and testimony from Mr. Ravin that does not directly support the ultimate conclusion. Moreover, as explained in more detail in response to proposed finding of fact 35, *supra*, the Ninth Circuit emphasized that the licenses do not *only* permit archival and emergency backup copies, but rather, they also permitted supporting the customer's "use of the software" (JDE) and "related testing" (Siebel). *Id.* at 17. | **Fed. R. Evid. 702** (Improper expert opinion); **Fed R. Evid. 401–402** (Relevance) |
| 47. | Backups are stored on tapes or other storage, unmodified. Tr. 730:4–11 (Ravin); Tr. 180:5–181:17, 182:16–24 (Davis). | **Disputed in part.** Disputed to the extent this proposed fact is actually a legal conclusion, and cites only the testimony of Oracle expert Dr. Davis and testimony from Mr. Ravin that does not support the ultimate conclusion. Further disputed to the extent Mr. Ravin did not testify the backups were stored "unmodified." Tr. 730:4–11 (Ravin). Moreover, as explained in more detail in response to proposed finding of fact 35, *supra*, the Ninth Circuit emphasized that the licenses do not *only* permit archival and emergency backup copies, but rather, they also permitted supporting the customer's "use of the software" (JDE) and "related testing" (Siebel). *Id.* at 17. | **Fed. R. Evid. 702** (Improper expert opinion); **Fed R. Evid. 401–402** (Relevance) |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | | |
| 48. | Copies used for troubleshooting, support, testing, or development are not backups. Tr. 180:5–181:17, 182:16–24 (Davis). | **Disputed in part.** Disputed to the extent this proposed finding of fact is actually a legal conclusion, and cites only the testimony of Oracle expert Dr. Davis. Moreover, as explained in more detail in response to proposed finding of fact 35, *supra*, the Ninth Circuit emphasized that the licenses do not *only* permit archival and emergency backup copies, but rather, they also permitted supporting the customer's "use of the software" (JDE) and "related testing" (Siebel). *Id.* at 17. | **Fed. R. Evid. 702** (Improper expert opinion); **Fed R. Evid. 401–402** (Relevance) |
| 50. | Rimini's unlicensed copying included widespread cross-use of Oracle software. Tr. 799:6–16 (Ravin). | **Disputed in part.** Liability as to PeopleSoft was not upheld on "cross-use" grounds but only as to the facilities limitation. *Oracle*, 879 F.3d at 960 & n.6. JD Edwards and Siebel liability was upheld on only "cross use" as to future customers. *Id.* at 957 | **Overbroad** |
| 51. | After previously denying cross-use, Ravin admitted at trial cross-use occurred "all the time." Tr. 552:1–13 (Ravin). | **Disputed.** Oracle cites no support here for the proposition that anyone "previously den[ied] cross-use." Moreover, cross-use is only relevant to liability for JD Edwards and Siebel for the reasons stated in response to proposed finding 50. | **Vague, Ambiguous, and Misstates the Evidence** |
| 52. | Rimini's cross-use included unlicensed "cloning" of Oracle software (copying an environment created ostensibly for one customer for another customer). Tr. 371:5–9, 374:12–15, 777:22–24 (Ravin); 1365:23–1366:14, 1381:188 | **Disputed** for the same reasons as Rimini disputes proposed finding 50. | **Overbroad** |

APPENDIX I:  RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED FINDINGS

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | (Williams); 192:22–193:7, 196:25–197:24, 198:25–199:11 (Davis); PTX 439; PTX 1491A; PTX 3507 at 31. | | |
| 53. | On many occasions, Rimini used one customer's environment to support other customers. Tr. 2232:2–2233:23 (Benge). | **Disputed** for the same reasons as Rimini disputes proposed finding 50. | **Vague and overbroad** |
| 54. | Rimini used unlicensed "development" environments to create updates and fixes for multiple customers. Tr. 320:2–7 (Ravin); 202:18–203:3, 204:2–205:10 (Davis); PTX 5429. | **Disputed** for the same reasons as Rimini disputes proposed findings 35 & 50. | **Overbroad** |
| 55. | Rimini "reused [] all the time" by taking an update or fix that Rimini created for one customer and using it for and distributing it to another customer, including using Oracle's copyrighted code, changing it and distributing it to multiple Rimini customers. Tr. 552:1–552:5, 809:19–810:13 (Ravin); 2232:2–2233:23 (Benge). | **Disputed** for the same reasons as Rimini disputes proposed findings 35 & 50. | **Overbroad** |
| 56. | On many occasions, Rimini used one customer's software to troubleshoot issues other customers were having. Tr. 367:18–23 (Ravin); 2043:22–2044:21 (Blackmarr). | **Disputed** for the same reasons as Rimini disputes proposed findings 35 & 50. | **Overbroad** |
| 57. | Rimini used the code in one customer environment to write a detailed design document to be used with other clients. Tr. 1656:20–1661:4 (Grigsby). | **Disputed** for the same reasons as Rimini disputes proposed findings 35 & 50. | **Overbroad** |
| 58. | Rimini also used Oracle copyrighted support material as part of a sales presentation to customers. Tr. 1662:16–1668:7 (Grigsby). | **Disputed in part.** The cited testimony does not establish that this presentation was presented to customers. Tr. 1662:16–1668:7 (Grigsby). | **Fed. R. Evid. 401–402** (Relevance) |
| 59. | Rimini stored Oracle support materials in non-client-specific | **Disputed in part.** Disputed to the extent the | **Fed. R. Evid. 401–402 (Relevance)** |

APPENDIX I:  RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED FINDINGS

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | folders. Tr. 1155:18–21 (Hicks). | finding implies this was a common practice or was performed for the entire relevant time period.<br><br>Storing materials in non-client specific folders was not a basis of liability. | |
| 60. | Rimini used support documentation downloaded on behalf of one customer to rephrase the information and distribute it to other Rimini clients whose Oracle support was expired. PTX 236; Tr. 188:8–189:15 (Davis). Rimini created "extracts" that Rimini gave its customers so that unlicensed copies were shared amongst customers. Rimini told customers that it was creating separate extracts for each customer, but Rimini was using one customer's log-in, starting with a faux customer, Leads Customers Growth, to copy all materials from Oracle's websites and then copying disks that Rimini distributed to multiple customers. Tr. 333:9–334:3, 335:12–16 (Ravin); 1160:15–1161:10 (Hicks); PTX 7. | **Disputed in part.**<br><br>Leads Customer Growth was not a "faux customer," but rather a Siebel licensee with an active support agreement during the relevant timeframe. Tr. 335:8–11 (Ravin).<br><br>Rimini worked as a consultant to Leads Customer Growth's overall implementation plan. Tr. 342:18–23.<br><br>Further disputed to the extent the finding implies this was a common practice or was performed for the entire relevant time period.<br><br>Also disputed to the extent that all Rimini clients receiving such materials were entitled to them under their agreements with Oracle. | **Misstates the Evidence** |
| 61. | Rimini's "software library" was massive. PTX 10; Tr. 166:9–20 (Davis); 242:1–3, 242:14–20 (Ravin). | **Disputed in part.**<br><br>Mr. Ravin did not testify to the size of any "software library." Tr. 242:1–3, 242:14–20. | **Vague, Ambiguous, and Misstates the Evidence** |
| 65. | Rimini's copyright infringement allowed it to charge substantially less than Oracle charged for support: often 50% or less of what Oracle charged. Tr. 207:10–16 (Davis); Tr. 1940:6–1942:6, 1950:16–1951:12 (Dean). | **Disputed.**<br><br>Rimini's ability to offer support services for 50% less than Oracle was not a result of any copyright infringement. Tr. 2663:11–2664:16 (Zorn). Rather, it was based on the idea that as Rimini "built the number of customers for a product line," it would "be built to a steady state," to "be profitable based on the amount | **Misstates the Evidence** |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | of cost. *Id.* Indeed, Mr. Zorn testified that Rimini's local hosting "actually made it *more* difficult" to maintain its 50% pricing model. Tr. 2664:1–4. <br><br> The cited testimony is only the opinion of Mr. Dean and is not supported by any evidence. *See, e.g.* Tr 1940:25–1941:2 ("So *I don't think* they could have had the business model that they had if they hadn't done [the allegedly infringing conduct].") | |
| 66. | Rimini's copyright infringement allowed it to gain scale quickly, with minimal effort and investment. Tr. 443:4–445:6 (Ravin); Tr. 1702:18–1703:22 (Yourdon); Tr. 1453:22–1476:6 (Maddock). | **Disputed.** <br><br> The cited testimony does not support the proposed finding of fact. Mr. Ravin testified that one of his goals for Rimini was scalability, "which means to be able to serve more and more customers more efficiently over time." Tr. 443:4–8. Mr. Yourdon's cited testimony reveals only his opinion that Rimini promised "vendor-level support"; the cited testimony does not refer to infringement or even Rimini's support practices. Tr. 1702:18–1703:22. Mr. Maddock's cited testimony relates to Rimini's competitors. Tr. 1453:22–1476:6. For the reasons stated in response to proposed fact 65, there is no connection between Rimini's alleged infringement and its pricing model. | **Misstates the Evidence** |
| 67. | By purporting to offer vendor-level support at half the price or less of Oracle support and creating the impression that Oracle was overcharging for support, Rimini eroded "the bonds and the trust that [Oracle] ha[d] with [its] customers." "For the customers [Oracle] lost, it totally broke the relationship." | **Disputed.** <br><br> The cited testimony is only the opinion of Oracle Co-CEO Ms. Catz. Moreover, other testimony reveals that the "bonds" that Oracle had with its customers were eroded for other reasons, including Oracle's poor support. Tr. 2949:1–11 ("Q. Did there come | **Fed. R. Evid. 701** (Improper opinion testimony)**, Fed. R. Evid. 702** (Improper expert opinion) |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | By breaking these relationships, customers were also less likely to purchase other Oracle products. Tr. 948:17–949:8, 934:14–936:11 (Catz); DTX 146. | a time when a decision was made to move away from Oracle support on the new software? A. Yeah. So we didn't – once Oracle acquired PeopleSoft, we found that our – the level of support tailed off quite a bit, so we weren't – we didn't believe we were getting the value out of the support dollars we were paying Oracle. We paid roughly – I think it was 2.2 million a year, and we just didn't feel we were getting value out of that, we weren't getting the help we needed from Oracle when things would break."); 2955:6–2956:8 ("What we found over time was we were being – we were talking to people who had very little experience with the software. . . . We would log a ticket and say we have a problem, and we'd get a call back from someone at Oracle and Oracle support. But what we found was over time the calls that we were getting back were not from people who understood the software or understood the different aspects or components of what could be broken.")<br><br>Oracle's mistreatment of its customers also eroded any "bonds" they had. *See, e.g.*, Tr. 2962–63 (describing Oracle service as "aggressive and, at points, hostile"); Tr. 2534 ("being upset" with Oracle "is what caused us to even go look for a third-party support"); Tr. 2955–56, 2959 (stating he "would have stayed with Oracle" if he had been "getting excellent service from Oracle" but "we were talking to people who had very little experience with the software" and were "not well trained"); Tr. 3165 (customer "perceived that they | |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | were receiving awful customer service and support"). | |
| 68. | A customer who moves to Rimini for support may later find that its systems are out of date. Tr. 935:18–936:3 (Catz); Tr. 1571:11–1573:6 (Screven). | **Disputed.**<br><br>The cited testimony is only the opinion of Oracle employees Ms. Catz and Mr. Screven, and is not based on any evidence or example of a single Oracle customer. | **Fed. R. Evid. 701** (Improper opinion testimony)**, Fed. R. Evid. 702** (Improper expert opinion) |
| 69. | By creating uncertainty and distrust in the marketplace, Rimini's copyright infringement caused Oracle to "hav[e] to work extra hard to keep the customers [Oracle] ha[d]" due to the injury to Oracle's goodwill and reputation. Tr. 948:17–949:12 (Catz). As well, customers who left Oracle support for Rimini support were less likely to license additional software of any type from Oracle. *Id.* | **Disputed.**<br><br>The cited testimony is only the opinion of Oracle Co-CEO Ms. Catz, and is not based on any evidence or an example of a single Oracle customer. Any harm to Oracle's reputation was caused by Oracle's own poor service and mistreatment of customers, as described in the response to proposed finding 67. Moreover, Yourdon admitted that Oracle loses 5% of its customers every year, even before Rimini entered the market. Tr. 1722:21–24. | **Fed. R. Evid. 701** (Improper opinion testimony)**, Fed. R. Evid. 702** (Improper expert opinion), **Misstates the Evidence** |
| 70. | Rimini continued its infringing activities through at least February 2014. Tr. 751:7–15 (admission by counsel for Rimini). Rimini claims to have changed certain of its infringing behaviors after the Court granted partial summary judgment to Oracle on its copyright claims. Tr. 754:9–13 (colloquy with the Court). | **Disputed in part.** As Oracle has not disputed in this action despite several opportunities to do so, Rimini has changed its processes. ECF No. 905-1 (Declaration of Jim Benge); 905-2 (Craig Mackereth); 905-3 (David Miller); 905-4 (Kien Phung); 905-5 (Ron Teegarden). Indeed, those changed processes are the subject of *Rimini II* because Oracle successfully kept Rimini's current processes out of this case. In September 2014, Oracle argued against supplemental discovery relating to Rimini's new processes. ECF Nos. 488, 515. In May 2015, Oracle opposed consolidating *Rimini I* and *Rimini II*, arguing that to | |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | | determine the legality of Rimini's new processes would "require extensive additional discovery." ECF Nos. 554, 593. And in July 2015, Oracle moved *in limine* to preclude from trial any evidence, argument, or even reference to Rimini's new processes because the "legality of the [new support] model" had yet to be determined, and "[i]ssues relating to Rimini's 2014 (and later) conduct will get a full hearing in *Rimini II*." ECF Nos. 646, 723. Finally, in September 2015, Rimini's two motions for reconsideration of the decision to exclude evidence of Rimini's new processes—which Oracle opposed—were denied. ECF Nos. 793, 845. | |
| 71. | Rimini created local environments and prepared and distributed derivative works from those environments for years after SAP and TomorrowNow conceded liability for copyright infringement and after TomorrowNow pled guilty to criminal copyright infringement. *See* ECF No. 823-6 (civil stipulation discussing local environments on TomorrowNow's computer systems); ECF No. 823-5 (guilty plea discussing local environments on TomorrowNow's computer systems). | **Disputed in part.** The jury found that Rimini's infringement was innocent. ECF No. 896 (verdict). The mere fact that Rimini's conduct occurred later in time than the SAP and TomorrowNow actions is irrelevant. *See* Jury Instruction 20, ECF No. 880 (instructing jury not to consider any TomorrowNow evidence when evaluating the legality of Rimini's conduct). Moreover, TomorrowNow did not stipulate to liability for the conduct at issue in this case, and therefore the stipulation would not have provided notice that any of Rimini's processes violated Oracle's copyrights. | **Fed R. 401–402** (Relevance); **Fed. R. Evid. 403** (Unduly prejudicial and irrelevant; implies a contradiction with jury's finding of innocent infringement) |
| 72. | Before trial, Rimini claimed that a software library never existed at Rimini Street. PTX 5332 (March 29, 2010 Answer) at ¶ 34 (denying existence of | **Disputed in part.** In its Complaint, Oracle alleged, "This case is about the massive theft of Oracle's software," and that Rimini | **Fed R. Evid. 401–402** (Relevance); **Fed. R. Evid. 403** (Unduly prejudicial); Misstates the evidence |

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | software library); PTX 1482 (June 16, 2011 Answer) at ¶ 34 (same). | downloaded "entire families of software (*e.g.*, PeopleSoft, JDE, or Siebel) that the customer does not license and for which it has no use." ECF No. 1, at 3:6–9. Oracle further alleged that "the scope of the downloaded Software and Support Materials – across multiple libraries in multiple lines of business – for customers that had no license to take, or need for, those products, suggests that Rimini Street took the Software and Support Materials to stockpile a library to support its present and prospective customers." ECF No. 1 at ¶ 50, ECF No. 36 at ¶ 59, and ECF No. 146 at ¶ 60.<br><br>In its Answer, Rimini admitted to having Oracle materials on its servers, explaining that, "as a matter of process and procedure, Rimini Street's clients are only delivered the Oracle Software and Support Materials to which they are legally entitled." ECF No. 30 at 9:11–13. Rimini's Answer then referred back to Oracle's language describing the alleged "library" of allegedly "stockpile[d]" materials and stated that "[*s*]*uch a 'library'* has never existed at Rimini Street ..." ECF No. 30 at 9:24–27 (internal quotes original).<br><br>At trial, Mr. Ravin testified that he believed these statements to be true, explaining that the denial of having "such a 'library'" at Rimini Street in the Answer referred back to how Oracle was using this term in its Complaint. *See, e.g.,* Tr 245:18–19. | |
| 73. | At trial, Ravin claimed that Rimini's software library was | **Disputed in part**, on the same | |

APPENDIX I:  RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED FINDINGS

Gibson, Dunn & Crutcher LLP

| # | Oracle's Proposed Finding of Fact | Rimini Street's Response | Evidentiary Objections |
|---|---|---|---|
| | not really a library, Tr. 247:7–12, that it was only "installation media," Tr. 255:6–9, 565:9–11, and that it was only PeopleSoft, Tr. 247:14–20. | grounds as 72. | |

APPENDIX I:  RIMINI'S OBJECTIONS TO ORACLE'S PROPOSED FINDINGS

Gibson, Dunn & Crutcher LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

GIBSON, DUNN & CRUTCHER LLP

By:*s/ Mark A. Perry*          
Mark A. Perry
*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP