# Exhibit B:

Excerpts of Oral Argument Transcript
from Ninth Circuit

1                  IN THE UNITED STATES COURT OF APPEALS

2                          FOR THE NINTH CIRCUIT

3

4

5    ORACLE USA INC., a Colorado        )
     corporation; ORACLE AMERICA,       )
6    INC., a Delaware corporation;      )
     ORACLE INTERNATIONAL               ) Nos. 16-16832
7    CORPORATION, a California          )      16-16905
     corporation,                       )
8                                       )
          Plaintiffs-Appellees,         )
9                                       )
          vs.                           )
10                                      )
     RIMINI STREET, INC., a             )
11   Nevada corporation; SETH           )
     RAVIN, an individual,              )
12                                      )
          Defendants-Appellants.        )
13   _____)

14

15
                   TRANSCRIPTION OF ORAL ARGUMENT
16
                        JULY 13, 2017
17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23

24   REPORTED BY:  RENAE E. LOPEZ, CSR NO. 12142

25   FILE NO.:  AB07AA8

Atkinson-Baker Court Reporters
www.depo.com

```
 1    A P P E A R A N C E S
 2   BEFORE:
 3   MICHELLE FRIEDLAND,
     JUDGE ON THE NINTH CIRCUIT
 4
     SUSAN P. GRABER,
 5   JUDGE ON THE NINTH CIRCUIT
 6   JEREMY D. FOGEL,
     JUDGE ON THE NORTHERN DISTRICT
     OF CALIFORNIA
 7
 8   FOR PLAINTIFFS-APPELLEES:
     KIRKLAND AND ELLIS, LLP
 9   BY:  PAUL D. CLEMENT, ESQ.
     655 Fifteenth Street NW
10   Washington, DC  20005
     (202) 879-5000
11
12
     FOR DEFENDANTS-APPELLANTS:
13   GIBSON, DUNN & CRUTCHER, LLP
     BY:  MARK A. PERRY, ESQ.
14   555 Mission Street
     Suite 3000
15   San Francisco, California  94105
     (415) 393-8200
16
17
18
19
20
21
22
23
24
25
```
                                              Page 2

```
 1                I N D E X
 2                               PAGE
 3   Mr. Perry                   4, 44
 4   Mr. Clement                 20
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
                                              Page 3

```
 1         TRANSCRIPTION OF ORAL ARGUMENT
 2    IN THE UNITED STATES COURT OF APPEALS
 3           FOR THE NINTH CIRCUIT
 4              JULY 13, 2017
 5                  - - -
 6
 7       MR. PERRY:  Thank you, Your Honor, and may it
 8   please the Court, Mark Perry for Rimini Street and
 9   Mr. Ravin.  I'll try to save two minutes for rebuttal.
10       From the constructions through the
11   instructions to the injunction, a single fundamental
12   error infected and pervaded the entire copyright case.
13   The district court ruled that third party maintenance
14   and support, and specifically the making of a testing
15   and development environment for updates and fixes, is
16   not within the licenses.
17       That one ruling made at summary judgment led
18   to summary judgment of infringement as to the
19   PeopleSoft and Database products, to directed verdicts
20   as to the Siebel and J.D. Edwards products, and to an
21   injunction that today prohibits Rimini Street from
22   conducting the conduct that is expressly authorized by
23   the licenses.
24       The court made this error at Page 100 to 102
25   first in the summary judgment record.  That's where the
```
                                              Page 4

```
 1   train jumped the tracks, Your Honors.  The court ruled
 2   that development and testing is not within the
 3   licenses, even though it was undisputed then and
 4   Oracle's witnesses admitted at trial that this complex
 5   enterprise software requires updates, requires fixes,
 6   and that a separate testing and development environment
 7   is necessary to make those updates and fixes.
 8       It may be important to understand why, Your
 9   Honors.  This is mission critical software.  This is
10   running the payroll, the taxes, the supplier contracts,
11   and so forth for these enterprises, these companies.
12   If they need to make an update or a fix, they can't do
13   it on the application program.  They have to have a
14   separate copy to run the update, to run the fix, to
15   test it out, to make sure it works, and then you apply
16   that to the application program.
17       The single fundamental error that
18   Judge Hicks made was in not recognizing that that
19   separate testing and development environment is a
20   licensed use, is a necessary use within the contract,
21   and that prohibiting that use, as the injunction does,
22   is not authorized by the Copyright Act.  It has nothing
23   to do with the Copyright Act.  It has -- is not
24   authorized by the licenses, and if upheld by this court
25   would constitute copyright misuse, as the Nimmer
```
                                              Page 5

                              2  (Pages  2  to  5)

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

1  treatise makes clear, in so many words.
2      JUDGE FRIEDLAND:  Say we agree with you on that
3  point.  Don't you also need to win on the using that
4  environment to help another client point?  I mean, it
5  seems like the court was resting on both points.
6      MR. PERRY:  Your Honor, in the jury instructions,
7  the court rested on "or."  It was either you can -- may
8  find liability if it was used -- not used only for
9  archival support, or was used for a third party
10 customer.  So the jury -- the jury verdict would have
11 to be vacated even if that is.  But our bigger
12 submission, Your Honor, is that the Copyright Act --
13 this is a copyright case.  The Copyright Act goes to
14 the copying, and the copying here was authorized, the
15 making of a separate environment.  How that environment
16 was used, or as Oracle's secondary argument, where that
17 environment was housed, on which server it lived, those
18 are license disputes.  Those are questions about the
19 application of a contract that ought to be under the
20 copyright laws, and this court's decision in MDY versus
21 Blizzard resolved as a matter contract law.
22      That's just a plain old commercial
23 dispute about the use of data, because once Oracle, as
24 they clearly have, has surrendered the exclusive right
25 to copy, all the remaining restrictions are not

Page 6

1  copyright problems.  They are contract problems.  And
2  Oracle, in this case, brought contract claims.  They
3  lost them or they withdrew them, but they had them, and
4  they could bring them in the future, but -- but this is
5  not a copyright dispute.
6      And -- and part of the -- the confusion, we
7  believe, starting in the summary judgment orders is in
8  the so-called cross-use and local hosting issues being
9  real issues.  And, look, our company as it reflected in
10 the record, we have -- we have corrected those problems
11 now that Oracle has informed us that they are problems
12 from Oracle's perspective.  We have taken steps to
13 redress them, and the second case, which is pending,
14 deals with whether those are acceptable under the
15 license, but they are not prohibited by the Copyright
16 Act.
17      Nothing in the Copyright Act has anything to
18 say about maintenance, other than to authorize it in
19 Section 117, about where -- which server data resides
20 on, about which customers use it for.  And analogies to
21 the physical world are imperfect, Judge Friedland, but
22 imagine if I have ten clients, and I have ten copies of
23 an identical support manual from Oracle.  This
24 cross-use argument is if I pull down one support
25 manual, and I don't look at which client it is, even

Page 7

1  though they're all identical, I have to -- I have to
2  instead look at the spine and pull down the support
3  manual that's labeled Client Number 2.  I have to look
4  at Support Manual Number 2.  That's all that's going on
5  here.
6      That may well be a license restriction, just
7  like the Federal Circuit said in the Storage Tech case,
8  you know, if I license you a book, and I say you can
9  read this book, but not the last ten pages, if you read
10 the last ten pages, you may have violated the license,
11 but you have not violated the Copyright Act.
12      Cross-use is a contract problem.  Local
13 hosting is a contract problem.  They are not copyright
14 problems.  The only copyright issue in this case, we
15 submit, is the making of a development and testing
16 environment.  We submit that the court got that plainly
17 wrong and it did it four times.
18      JUDGE FRIEDLAND:  Isn't there the possibility,
19 though, that the -- the sharing with another can be the
20 problem even if you've made a copy?  So you can copy
21 the music for your own sake, but when you start playing
22 it for a lot of other people, it starts to be a
23 problem.  Maybe that -- that's, in theory, a kind of
24 copyright issue, isn't it?
25      MR. PERRY:  Well, in your example, Your Honor,

Page 8

1  that's the public performance right, which is a
2  separate right under 106.  In -- in this case, every
3  Rimini Street client has a license.  No unlicensed
4  software was ever given to any customer or client
5  without a license.  The only question was whether, as
6  -- as Mr. Ravin put it at trial, operational silos, that
7  is keeping everybody within the Data -- the PeopleSoft
8  tower, or the Database tower, or physical silos, that
9  is Client 1 versus Client 2 versus Client 3 was
10 required.  That was a contract dispute we have had that
11 we believe has now been resolved.  We'll see -- again,
12 that's the second case, but that is not a Copyright Act
13 problem.
14      The -- the -- and -- and even if -- by the
15 way, let's spot Oracle this one, that would be a new
16 trial.  We -- a new trial would still be required.  It
17 wouldn't -- that wouldn't be a judgment.  That would
18 just be a new trial, because all of the liability
19 determinations, both at summary judgment and in the
20 verdict, rest not only on the so-called cross-use, but
21 also on the prohibition that Judge Hicks found on
22 creating development and testing environments.
23      And this development and testing
24 environments is the most critical piece in the case.
25 It is something we have raised over and over again.  We

Page 9

3  (Pages 6 to 9)

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

1  put it front and center in our brief, and Oracle -- it
2  doesn't appear in Oracle's brief.  All that Oracle says
3  in their brief in this court is well, these licenses
4  only are -- authorize archival copies, and that's just
5  not true.  The licenses do authorize archival copies,
6  as they have to, by the way, the -- the Copyright
7  Statute 35, USD Section 117 actually makes clear that
8  archival copies aren't even an act of infringement, so
9  that -- you know, that part of the license is not
10 necessary.
11         Then they also authorize each and every one
12 of the four licenses at issue, also authorized third
13 party support providers to assist the customer in their
14 use of the software.  What Judge Hicks said is that use
15 is, quote, related to internal business operations or
16 internal data processing operations, and that that
17 doesn't include copying for testing and updates.
18         Your Honor, that's just not the case.  The
19 trial record, Oracle's own witnesses, Page 924, Page
20 1046 and 1047, Page 1064 to 65 of the Excerpts of
21 Record all admitted that that kind of copying, that
22 kind of testing and development is permitted under
23 these licenses, and that makes sense if you look at the
24 licenses themselves.  Just give you one example from
25 the Siebel license, Page ER1163.

Page 10

1     JUDGE GRABER:  Just a second.  Thank you.  Okay.
2  I'm with you.
3     MR. PERRY:  Section 2.3 of the Siebel license,
4  "The customer should have the right to make suggestions
5  regarding new features, functionality or performance
6  and to create its own implementations of such
7  suggestions or to have them created for the customer."
8  In other words, the customer can hire a third party to
9  develop new features, functionality, or performance.
10    JUDGE GRABER:  Where do you see third party in
11 that, though?
12    MR. PERRY:  Your Honor, it's at the very last
13 sentence, "to have them created for the customer."  And
14 the third parties are more specifically referred to in
15 2.1 Romanette VIII, "to have third parties, such as
16 system integrators install, integrate, and otherwise
17 implement the software."
18         So the third parties are expressly
19 authorized under this contract, as under all others,
20 and not just for archival purposes, as -- as Oracle
21 would have it, and as Judge Hicks agreed, but for
22 implementation, integration, installation, new
23 features, new functionality, and new performance.
24 That's what Rimini Street's business is.  This -- these
25 provisions describe my client and expressly authorize

Page 11

1  the activities that it undertakes.
2         And what Judge Hicks did at summary
3  judgment, and then again in the jury verdict is said --
4  for the Siebel contract in the jury verdict, at Page
5  548 of the Excerpts of Record, he said these provisions
6  authorize only archival copies and do not authorize the
7  making of development and testing copies.  That is just
8  plain legal error.  He misread the contract, and -- and
9  correcting that error requires, we submit, a judgment for
10 Rimini, and Oracle hasn't disputed this.
11         Oracle has never disputed either at the Rule
12 50 stage or in this court, that if you reverse that
13 license construction, it's not just a new trial, it's a
14 judgment issue, because all the other issues in the
15 case, Judge -- Judge Friedland, this goes to your
16 question, are about contract application and licensing,
17 which ought to be resolved.  There is a second case
18 pending, as the court is aware, involving the current
19 processes.  That can all get sorted out on commercial
20 terms.
21         This whole thing -- by the way, this is a
22 commercial dispute.  Oracle doesn't want competition in
23 this space.  That is no secret.  It has sued every
24 third party service provider we believe ever to have
25 entered the market.  It usually has been successful,

Page 12

1  and it has usually driven them out of the market.
2  That's its prerogative, so long as it stays within the
3  law, but these licenses were not written by Oracle.
4  These licenses were written by companies that Oracle
5  acquired.  These licenses authorized third party
6  support.
7         My client is doing its best to comply with
8  these licenses and offer a service to customers as an
9  alternative for competition.
10    JUDGE FRIEDLAND:  So I think your -- your client
11 is still doing okay at this point, but -- so I'm
12 wondering how that affects your copyright misuse
13 argument.  So you say you're complying with this order,
14 but if this order is right, it's copyright misuse to
15 interpret it this way, but it seems like you are
16 surviving as a business.
17    MR. PERRY:  There's two answers to that.  First,
18 we -- we have changed the processes to address the
19 cross-use and local hosting aspects, which we agree are
20 contractual issues.  We think the court got those wrong
21 too, for reasons I'm happy to explain, but it is, you
22 know, more -- it makes it more expensive for my client,
23 to no benefit to Rimini Street.  To go back to my
24 example, if I have ten identical support manuals, to
25 make me look at Number 2 to support Client Number 2,

Page 13

Oral Argument
July 13, 2017

1 instead of just pick one of the ten identical manuals,
2 I can do that.  It adds a step to the process, and
3 every step is an expense, and it's no difference from
4 Oracle's perspective, because I still have ten
5 identical support manuals, but -- but we can do that,
6 and same with the local hosting.  There are some
7 transmission delays and so forth, but whether the
8 material is stored on Rimini's servers, or on the
9 client's servers, or on other servers -- by the way,
10 cloud servers, the client has control over, we submit
11 are within the client's -- that those are within the
12 site restrictions.
13     JUDGE GRABER:  Which -- which portion of the
14 instructions specifically are you contending is -- are
15 infected by this issue?
16     MR. PERRY:  Your Honor, it's on ER547 and ER548.
17 It's instruction -- it is the instruction entitled
18 "Copyright Infringement Express License," which is
19 Instruction Number 24.
20     JUDGE GRABER:  Right, I'm there.
21     MR. PERRY:  On 547 is the J.D. Edwards
22 instruction.  It's Lines 6 through 10, "This
23 provision," that is, the license provision, "does not
24 mean that a third party, like Rimini Street, is
25 authorized to make copies of the J.D. Edwards software

1 with the identified licensees.  I think that's the
2 total import of the instruction, isn't it?
3     MR. PERRY:  Well, there are -- the cross-use
4 aspect is in there.  It is in there, Judge Fogel, as an
5 "or" on Line 9 on Page 547.  It's either you make a
6 development and testing copy, or you use it to support
7 somebody else.  The jury can find liability on both.
8 We submit that the first is a clear error of copyright
9 law, and the second is a license dispute that ought to
10 be resolved, as such, and, by the way, is not without
11 the license is simply because the license is --
12     JUDGE FOGEL:  Does it -- does it say you can't
13 make any development and testing copies at all?  I
14 thought it said you -- you can't make any copies for
15 these prohibited purposes.
16     MR. PERRY:  Your Honor, it says the provision
17 does not mean that Rimini Street is authorized to make,
18 to carry out development and testing of software
19 updates.  I mean, that's the plain language of the
20 instruction.  Same thing in the summary judgment.
21     JUDGE GRABER:  Well, inter -- it's unfortunately
22 not very precise grammatically.  I just --
23     MR. PERRY:  Your --
24     JUDGE GRABER:  -- say that it's possible to read
25 the "supporting other customers" as modifying

1 application and documentation to, among other things,"
2 dot, dot, dot, "carry out development and testing of
3 software updates."  That is the eh--a and on 548, the
4 same sentence exists for Siebel, and just to close the
5 loop on it, the summary judgment stage is at Page 102
6 for PeopleSoft and Page 71 for Database under the
7 customer license, exact same sentence, exact same
8 error.  And, Judge Friedland, to answer your question,
9 that's the part that creates the business problem, and
10 that would be copyright misuse.  If that construction
11 is sustained, that is, that -- if a third party cannot
12 create development and testing environments, then
13 Oracle has effectively precluded third party
14 maintenance and support.
15     JUDGE FOGEL:  Well, I'm sorry, if I might
16 interrupt.  There's more to the instruction than that.
17 I mean, it says you can't create those environments for
18 certain purposes.  You -- you can do it for archival
19 purposes, and you can do it to support the customers
20 that -- that your client supported, but it says you
21 can't do it to use the -- to make modifications of the
22 software, use the customer's software or support
23 materials to support other customers.  So it's -- it's
24 using the software for purposes outside the scope of
25 the -- the business that your client was engaged in

1 everything that comes before in the sentence, and it's
2 possible to read it the way you do.
3     MR. PERRY:  Yes, Your Honor, I -- I agree with
4 you --
5     JUDGE GRABER:  But you --
6     MR. PERRY:  -- because --
7     JUDGE GRABER:  But it is possible to read it the
8 way Judge Fogel was just suggesting, that all of this
9 can't be done to help someone else.
10     MR. PERRY:  Well, that is because Oracle insisted
11 on making this case about cross-use, and kept trying to
12 elide this point about the development and testing
13 environments.  So let me -- let me make a very simple
14 way to under -- to think about this, that I -- simple
15 for me, anyway.  If the customer makes a development
16 and testing environment, is the customer within the
17 license?  We submit absolutely yes.  The customer,
18 however, would fit within the jury instruction, the
19 injunction, which I haven't touched on yet, but the
20 injunction which prohibits, by the way -- I mean, if
21 you look at the injunction as --
22     JUDGE GRABER:  Well, this -- this -- this
23 instruction is purely about third party use.  It's not
24 about the customer.
25     MR. PERRY:  But our --

1    JUDGE GRABER:  It doesn't say that.
2    MR. PERRY:  But -- but third parties have the
3  same rights as the customers.
4    JUDGE GRABER:  Well, that's a separate question,
5  but -- but it --
6    MR. PERRY:  Well, no, it's not a separate
7  question.
8    JUDGE GRABER:  Well, it is, because you said the
9  jury instruction would apply to the customer, but
10  it's -- it starts by saying this doesn't mean what a
11  third party can do, so it's all about third parties.
12    MR. PERRY:  Fair enough, Your Honor.  Our
13  submission is that there are no special restrictions on
14  third parties.  Oracle has tried to find some in its
15  brief here.  They are evanescent.  They are
16  nonexistent, because each of the licenses -- I'll just
17  point this out, PeopleSoft, Section 14.2, at Page
18  ER1180, "The licensee may provide access to and use of
19  the software to third parties that provide services."
20  J.D. Edwards, ER1172, Article II, Section 7, "Customer
21  may cause anyone to copy the software, to the extent
22  necessary to support the users."  Siebel, ER1163,
23  Section 2.1, Romanette VIII, "To have third parties
24  install, integrate, and implement the software."
25  Database customer arrangement, ER1183.  "You may" --

1  copyrighted book or from watching a copyrighted movie.
2  The courts don't have that power, Your Honor, but
3  Judge Hicks has ordered us not to access Oracle's
4  source code.  That's a First Amendment violation, in
5  addition to a Copyright Act violation.
6    And then the injunction also says that
7  Rimini Street can't use anyone's software for the
8  benefit of another, so to take my manual example, if I
9  take down the manual, and I learn for Client A, and I'm
10  using Client A's manual, that to update the tax
11  software, I have to set the switch to three this year,
12  and then I go to Client B, apparently, I can't just go
13  in and set the switch to B, because I'm using something
14  that I learned from that manual for the benefit of
15  another client.  So it's -- it's -- it's prohibiting
16  the mental processes of engineers and -- and -- and
17  innovators.
18    JUDGE GRABER:  Did you wish to save some rebuttal
19  time?
20    MR. PERRY:  I would.  Thank you very much, Your
21  Honor.
22    JUDGE GRABER:  Thank you.
23    MR. CLEMENT:  Good morning, Your Honors, and may
24  it please the court, Paul Clement for Oracle.
25    Rimini engaged in massive unauthorized

1  the rights granted, "You may allow your agents and
2  contractors to use the programs for this purpose," and
3  the purpose is for business operation.
4    Each of these contains an express
5  authorization for third parties to help the customer
6  use the software, and the undisputed evidence at trial,
7  the evidence from Oracle's witnesses was to -- using
8  the software requires updates, fixes, maintenance, and
9  support, and the only way to provide update, fixes,
10  maintenance, and support is to create a development and
11  testing environment so that this whole thing comes
12  together.
13    And as to the injunction, briefly, you know,
14  it carries through these same license constructions
15  that were in the summary judgment order and in the
16  instructions, and prohibits, for example, J.D. Edwards
17  and Siebel, third parties shall not use the software
18  for any purpose other than archiving.  That's not what
19  the licenses say.  The injunction goes so far beyond
20  the license.  They say, for JDE and Siebel, that the
21  Rimini Street cannot access the source code.
22    Your Honor, access is not a right under
23  Section 106.  106 applies to reproduction,
24  distribution, and derivative works, as relevant here.
25  Access -- you can't prohibit somebody from reading a

1  copying of Oracle's copyrighted works.  That copying
2  was not limited to application programs, but extended
3  to copyrighted materials made exclusively available to
4  customers who paid Oracle extra to support and update
5  Oracle's software in their application programs.  The
6  copying was conceded, as was distribution, to a degree,
7  was conceded, as was, belatedly, the unauthorized
8  cross-use by Rimini of copyrighted works downloaded for
9  one client and then copied and used to service a
10  different client.
11    Now, Mr. Perry makes some very interesting
12  arguments today, but they were not the arguments that
13  were contemporaneously made in the district court.  He
14  suggests that the root error here was that -- the
15  judge's summary judgment ruling.  Now, he talks about,
16  in the context of the Siebel case, some provisions of
17  the Siebel license that aren't even discussed in that
18  summary judgment order.
19    If you look at the Excerpts of Records, Page
20  112 and 113, you'll see the entirety of the discussion
21  of the Siebel license in the context of the license
22  that Siebel had with Novell.  Now, you won't see the
23  kind of provisions that he's talking about, and there's
24  a reason for that.
25    I mean, you know, litigation, especially a

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

1  litigation where one party to the litigation makes
2  repeated misrepresentations to the court, it has an
3  evolution of its own, and you can't just go into the
4  appellate court and sort of get a complete do-over.
5  Now, at the point the summary judgment order is being
6  litigated, and I think this is important to recognize,
7  Rimini Street is denying cross-use.  They're saying
8  they don't do it, they never do it.  That's their
9  position at that time.
10         By the time you get to trial, they're saying
11  cross-use happens all the time.  So at this point, the
12  only reason -- and you'll see this if you read these
13  two pages -- the only reason that they avoid summary
14  judgment, based on the aspects of the license that they
15  actually bring to the judge's attention
16  contemporaneously is because they actually say that
17  they can show that the only copies on their system were
18  there for archival and back-up purposes.
19         Now, that turns out to be another lie, and
20  by the time trial happens, they can't even sustain that
21  that's what they're going to do with the trial.
22      JUDGE GRABER:  Well, do -- I'm a little unclear
23  on what it is you're trying to tell us.  Are you
24  telling us that the issue that has been argued here was
25  waived, or are you telling us that it's wrong?  Because

Page 22

1  principal affirmative defense was express license.
2      JUDGE GRABER:  Right.
3      MR. CLEMENT:  It was expressly licensed.  The
4  burden's on them to point to provisions in the -- in
5  the licenses that authorize their conduct.
6      JUDGE GRABER:  Okay.  He's done that today.
7      MR. CLEMENT:  Well, if -- if I can say, first, he
8  has to do that at the right time in the litigation.
9      JUDGE GRABER:  I understand.
10      MR. CLEMENT:  And he hasn't done that.  Secondly,
11  even the provisions that he points to today do not
12  remotely map onto the copying and distribution that
13  they conceded below.  And so I'm happy to talk about
14  specific romanettes if we'd like, but nothing in any of
15  these licenses remotely authorized them to have
16  thousands and thousands of copies on their own servers
17  and to engage in copying and distribution for the
18  copyrighted work of one client and use it on another
19  client.
20         And these are not just contract disputes.  I
21  mean, again, that's another argument that they didn't
22  properly preserve.
23      JUDGE FRIEDLAND:  Though your opposing counsel
24  argued, though, that the -- that the injunction and --
25  and the copyright ruling prohibits them from using

Page 24

1  those are two quite very different things, and -- and
2  Opposing Counsel has pointed to text in the licensing
3  agreements that, in his view, suggests that third
4  parties do have a right, beyond archiving, to -- to
5  make use of -- of these materials, and so I'm trying to
6  pinpoint which thing you're saying.
7      MR. CLEMENT:  I'm ultimately saying both, Your
8  Honor.  I guess what I'm saying, though, is principally
9  on appeal, I think we have to litigate this on the
10  basis of the case that was actually litigated before
11  the judge, and if Mr. Perry wants to come up here and
12  say that the root cause of all the problems in this
13  case are the summary judgment order, he can't make
14  arguments based on little romanettes and licenses that
15  weren't part of the summary judgment argument.
16      JUDGE GRABER:  Why is he wrong if we look at the
17  licensing agreements?
18      MR. CLEMENT:  He's wrong if you look at the
19  licensing agreements -- if I can just back up one step.
20  The way that this case was litigated, and the way I
21  think it's properly litigated in this court is the
22  first question is did Rimini Street engage in copying
23  and distribution, and of course they did, and that's
24  conceded.  So then the burden shifts to them to provide
25  an affirmative defense, and they had a couple, but the

Page 23

1  the -- from making -- even -- even the licensee from
2  making a copy for a testing environment.  Do you -- and
3  then by proxy, their client from helping the -- the
4  licensee from doing that.  Do you dispute that it
5  prevents them from doing that?
6      MR. CLEMENT:  I -- I certainly would say that
7  they can't make a testing environment on their own
8  servers.  Now, you know, whether -- whether they can go
9  in, consistent with the terms of the lease, and not
10  engaging in any cross-use, and not doing it on their
11  own servers, whether they can go in and -- and assist a
12  licensed user in creating a testing environment on that
13  licensed user's servers and use it to make a fix, I
14  think that they probably can do that, with the caveat
15  that it might depend on the specific terms of the
16  specific license.
17         And to the extent there are disputes about
18  that, I mean, Mr. Perry and his law firm are involved
19  in Rimini 2 at a stage that they weren't involved in
20  Rimini 1, and those issues can be resolved.  And to the
21  extent that they say that there's something very
22  specific that they can't do under the license, that
23  they say they need to do in order to provide this
24  service, I suppose we could have a copyright
25  misuse affirmative defense that was focused on that

Page 25

Oral Argument
July 13, 2017

1  delta --
2      JUDGE GRABER:  Could I --
3      MR. CLEMENT:  -- but --
4      JUDGE GRABER:  Could I ask you about that, then?
5  So, for example, I'm looking at ER1163, which was the
6  page we were going over, which is the Siebel license
7  where it says that they have the right to have third
8  parties, EG, system integrators, install, integrate and
9  otherwise implement the programs and ancillary
10 programs, and have suggested fixes created.  You're
11 saying that can happen only on the servers of Siebel,
12 and not on the servers of the third party?  Is that
13 your argument as to what that means?
14     MR. CLEMENT:  That is the gist of it, Your Honor.
15     JUDGE GRABER:  Okay.
16     MR. CLEMENT:  I think what we would say is that
17 all of these provisions in the license, you know, that
18 provision can't be read in isolation.  It has to be
19 read in conjunction with the other license terms, and
20 the other license terms make clear two things; one,
21 that it takes -- it should take place on the licensee's
22 servers, on their -- on their facilities, and secondly,
23 that it really needs to be done in the way that at the
24 time of the litigation that the summary judgment went
25 down, they were saying that they were doing it, which

1  is they said at that time, we don't engage in -- in
2  cross-use.  We have a siloed approach to every one of
3  our users, and we never engage in this -- this kind of
4  cross-use.
5      That cross-use is important, in terms of the
6  conditions in the license.  It's not just a contract
7  dispute.  You know, there's a difference in this
8  court's cases between a condition and covenant, and it
9  is just not the law that if my client wants to license
10 somebody to engage in copying and distribution, to a
11 very limited extent, that once we do that, somebody
12 else, even a third party to it, can come in, engage in
13 massive copying and distribution and Katy, bar the
14 door, all we have is a contract claim.  That is not the
15 law, and he only refers to half of the illustration in
16 the Court's case.
17     Sure, if I tell somebody here's a copy of
18 Shakespeare or copyrighted work -- I guess it should be
19 something more contemporaneous.
20     JUDGE GRABER:  I would think so.
21     MR. CLEMENT:  Yeah, so -- so -- so a Garshin
22 novel or whatever, if I say here it is, it's yours, you
23 can -- you know, you can even make a copy, but, by the
24 way, don't read the last ten pages, that is just a
25 covenant that's contractually enforced.  But if I say,

1  oh, well, we're going to engage in -- I'm going to give
2  you this software, but I'm really worried, because it's
3  software, and my whole business is licensing, so I'm
4  really worried that this is going to get out, and all
5  of a sudden, a hundred users are going to use this
6  instead of just one, so I am going to significantly
7  limit and put a condition on the copying and
8  distribution you can do of this.  If the user then goes
9  and engages in massive copying, that is not just a
10 contract dispute, that is a clear violation of the
11 copyright laws, and it is something where their only
12 defense can be express license, and they have to point
13 to the specific provisions of the license that
14 authorized their conduct.
15     And this is, I think, important is that it's
16 not just enough for them to now talk about, look, we
17 have a little dispute about the licenses, about whether
18 it would authorize the way we now want to provide
19 service, or the way we hypothetically might have
20 provided service.  Their burden is to show that they
21 had an express license to engage in the conduct they
22 actually engaged in, and that issue --
23     JUDGE FRIEDLAND:  Is it your position that they
24 ever used one client's software to help another client,
25 who didn't have their own license?

1      MR. CLEMENT:  Well, it is our position that they
2  routinely used one client's copyrighted software to
3  provide service to another and engage in copying and
4  distribution that is not authorized by either license.
5      JUDGE GRABER:  That doesn't answer the question
6  that was asked.
7      JUDGE FRIEDLAND:  If both --
8      JUDGE GRABER:  Would you --
9      JUDGE FRIEDLAND:  -- people -- did both parties
10 in the -- in that exchange of both clients have
11 licenses with Oracle?
12     MR. CLEMENT:  In -- in many of the cases, yes.
13 Not exclusively.  I mean, there are arguments before
14 the jury, and I'm not sure, because of the way the case
15 was litigated, anything particularly turned on this,
16 but there were arguments that they were providing
17 service for PeopleSoft holders before they had a single
18 client.
19     The issue, with respect to Database, is
20 actually separate, and there, they just flatly violated
21 the terms of their own developer license, and there's
22 no third party.  So when you look at the case, and you
23 look at the 93 counts of copyright infringement where
24 the jury found copyright infringement for 93 works, you
25 break it down.  It is simply not the case as to -- that

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

1  to all 93 of those, everybody was covered by some
2  license.
3      JUDGE GRABER:  Would that matter?
4      MR. CLEMENT:  No, as -- as my, perhaps not
5  entirely responsive answer to the first question
6  indicates, our position is it doesn't matter at all,
7  maybe because you simply -- they engaged in massive
8  copying --
9      JUDGE GRABER:  Why wouldn't it matter?  Because
10 if they had the right to make ten copies for each of
11 ten clients, one for each, and they, in fact, made ten,
12 but they did it in one -- in one place and spread it
13 out over the ten, why -- why does that make any
14 difference in the real world?  Why do any damages flow
15 from that?
16     MR. CLEMENT:  It makes a difference in the real
17 world, I think, if you understand the licensing model
18 for software, because when you're licensing the use of
19 software, and you're not selling them the software,
20 you're licensing it, it is critical that your licensor
21 only uses it on their servers and their systems.
22     JUDGE GRABER:  I don't understand why.  I
23 understand -- you -- you keep saying that, but if --
24 but to use my hypothetical, if all ten people have paid
25 for one copy, if all paid, and they all have a license,

Page 30

1  and instead of making ten copies that are put into the
2  correct slots, they make ten copies in Slot Number 3,
3  and then give them to the same ten people, I don't
4  understand why that makes any difference.
5      MR. CLEMENT:  It makes a difference, Your Honor,
6  because if you don't honor the terms of the license,
7  and you don't keep essentially the license, and you
8  just mix them all together, what you end up is not with
9  ten copies on one person where it's consistent with a
10 licensing term.  You end up with exactly what you had
11 in this case, which is the software library that they
12 destroyed that had thousands and thousands of Oracle's
13 copyrighted works on it, and in a way that wasn't even
14 sorted from one client to another.  So they couldn't
15 even tell you that they -- even thought they were
16 contemporaneously claiming that we do this client by
17 client --
18     JUDGE FRIEDLAND:  But if they had downloaded a
19 whole bunch of things and put them on a server and
20 never touched them, your -- never used them to help any
21 client, never did anything with them, would -- it's
22 your position that would be a big problem?
23     MR. CLEMENT:  It would --
24     JUDGE FRIEDLAND:  Not sure what damages would
25 flow from that.  You wouldn't have lost any customer

Page 31

1  service business or anything.
2      MR. CLEMENT:  It -- if that had happened -- I
3  mean, it's an interesting question whether we would
4  have brought a copyright action under those
5  circumstances, but we would have one.
6      JUDGE FRIEDLAND:  I --
7      MR. CLEMENT:  I mean, look, if I just try to be
8  responsive to that, I mean, if we have a license, and
9  it licenses somebody to make just one copy for archival
10 and back-up purposes, and they make a thousand, that's
11 a copyright violation.  Now, if they keep the thousand,
12 and they never do anything --
13     JUDGE GRABER:  There are no damages.
14     MR. CLEMENT:  There's no damages.  What's that?
15     JUDGE GRABER:  Then there'd be no damages.  It's
16 just --
17     MR. CLEMENT:  Well, there'd be statutory damages.
18     JUDGE GRABER:  Right.
19     MR. CLEMENT:  I mean --
20     JUDGE GRABER:  Yeah.
21     MR. CLEMENT:  -- there might not be loss of
22 profit damages --
23     JUDGE GRABER:  Right.
24     MR. CLEMENT:  -- but there would be statutory
25 damages, and if they did it a way that was

Page 32

1  disrespectful for the copyrights and the like, you
2  might, in that case -- I mean, you know, maybe in that
3  case, you get statutory damages of 200.
4      JUDGE FRIEDLAND:  Before you run --
5      MR. CLEMENT:  In this case --
6      JUDGE GRABER:  Before you run out of time,
7  though, I -- I want to shift the focus, if I may, with
8  my colleagues' permission, to the statutory claims.
9      JUDGE FOGEL:  May I?
10     JUDGE GRABER:  Yes.
11     JUDGE FOGEL:  Before you do that, can I just ask
12 one question?
13     JUDGE GRABER:  Please.
14     JUDGE FOGEL:  Counsel made a point about the --
15 the jury instructions, and some potential ambiguity in
16 the jury instructions.  Can you -- can you address
17 that?
18     MR. CLEMENT:  Sure.  Well, first of all is -- you
19 know, I think it would be helpful to ask him on
20 rebuttal exactly where they preserved their objection
21 and exactly what their objection was contemporaneously,
22 because I -- the way this case is litigated, I hadn't
23 thought that they were objecting to that jury
24 instruction in that way.
25     I -- my contemporaneous understanding is

Page 33

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

1  they didn't even object to it in these terms.  My
2  answer to it would be, though, if you actually look
3  at -- I think this is Excerpts of Record, Page 547.
4      JUDGE FOGEL:  Right.
5      MR. CLEMENT:  If you look at this, all of this,
6  as I read it, is something about -- you know, this is
7  not something that says, broadly speaking, you can
8  never have a development testing environment, because
9  that's not really the way the case was being litigated,
10  and the specific prohibition, as I see it, is whether
11  you can access the software source code to carry out
12  development, testing of software updates.  Now, the
13  licenses are very clear that you can't access the --
14  the source code, and that's not uncommon, and I don't
15  think it's a First Amendment problem, and certainly no
16  First Amendment issue was adjudicated contemporaneously
17  or until about 20 minutes ago, but the licenses do not
18  allow access to source code.  As I say, that's a common
19  provision in licenses --
20      JUDGE FOGEL:  So --
21      MR. CLEMENT:  -- because --
22      JUDGE FOGEL:  So the syntax is not perfect, but
23  if you look at it in context, it's -- and particularly
24  if there's no objection, you don't see it as being an
25  issue?

Page 34

1      MR. CLEMENT:  I don't see it being an issue at
2  all.  And, again, I think what -- what they need is a
3  contemporaneously raised objection that also maps onto
4  the conduct they actually engaged in, and gives them a
5  colorable argument that the conduct they actually
6  engaged in was expressly licensed by these licenses.
7      JUDGE GRABER:  Okay.
8      MR. CLEMENT:  And if you think about it that way,
9  it's really not a particularly close question because
10  of what they did.
11      JUDGE GRABER:  Question about the statutory
12  claims.  I wanted to get your position on this, because
13  it appeared to me that the defendants had permission to
14  obtain the data, but what they did wrong was to use
15  things that I don't even understand, bots and scrapers.
16  Is that a correct understanding of what happened, that
17  if -- if an individual had laboriously downloaded each
18  thing one time, it had been downloaded, that would have
19  been okay, but using the bots and scrapers caused a lot
20  of problems, and that was not okay?  Is that -- is that
21  a correct understanding of what that claim is really
22  about?
23      MR. CLEMENT:  I think that is a correct
24  understanding of what the claim is about.
25      JUDGE GRABER:  Okay.  So if that's true, why is

Page 35

1  that a statutory violation at all, because it -- the
2  example I used in my own head was I say to you, you are
3  welcome to download this information, but please don't
4  do it on the weekends, 'cause I don't want to have to
5  have employees at my end on the weekends, and you do it
6  on Saturday afternoon.  I -- I'm not accessing the
7  information without permission.  I'm accessing it in a
8  manner that is contractually disallowed, and so I don't
9  understand why that isn't merely a contractual
10  violation and not a violation of the statute.
11      MR. CLEMENT:  I think it's a violation, Your
12  Honor, because what the statutes require, and this is
13  from this court's Christensen decision, is you have to
14  knowingly access without permission.  Now, they did not
15  have access, they did not have permission to access,
16  using the scrapers that they used in the manner that
17  they used them.
18      JUDGE GRABER:  But that's the -- the -- that's --
19  you're getting into my exact problem, which is the
20  manner, because Christensen -- in Christensen, they had
21  no permission to have the data, period, so they,
22  without permission, took, copied, and made use of the
23  data.  And here, there was permission to take the data,
24  make use of the data, but what they did wrong was how
25  they did it, and so I guess I just have difficulty

Page 36

1  seeing how that fits with the text of the statute with
2  Christensen and with our Nosal and Facebook cases that,
3  on the federal side, distinguish between violations of
4  terms of use and -- and wrongful acquisition of
5  information.
6      MR. CLEMENT:  Your Honor, I think it fits
7  comfortably within the terms of the statutes.  I'm
8  not -- for one thing, again, I'm not sure that the
9  exact argument you're making right now was
10  contemporaneously preserved, but -- and so that's one
11  answer, but the other answer is I do think it fits
12  within both the statute and within the terms of what
13  this court said in Christensen, and I think it's
14  important to recognize that one of the things that's
15  different about the statutes here, and one of the
16  things that I think makes them completely satisfied is
17  what really is a sine qua non of the violation is the
18  taking or use without permission, and --
19      JUDGE GRABER:  But they had permission to take
20  it.
21      MR. CLEMENT:  Not in this manner, Your Honor.
22      JUDGE GRABER:  But that's --
23      MR. CLEMENT:  Not --
24      JUDGE GRABER:  That's the --
25      MR. CLEMENT:  -- in this manner.

Page 37

10  (Pages 34 to 37)

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

| | |
|---|---|
| 1  JUDGE GRABER: But -- | 1  And so the argument that they made, which I |
| 2  MR. CLEMENT: And -- | 2  think the jury accepted, was, look, we couldn't have |
| 3  JUDGE GRABER: Christensen is about taking | 3  knowingly violated the terms of the licenses, because |
| 4  something you have no right to take at all. That -- | 4  we didn't have contemporaneous access to them. It's a |
| 5  those were the facts, and that was the decision, and | 5  completely different situation when it comes to the |
| 6  that's what the text of the statute seems to say, | 6  terms of use. There, they have -- there's all sorts of |
| 7  because what you're saying is, in my example, if I say | 7  contemporaneous evidence, and a cease and desist letter |
| 8  you are absolutely welcome to have this information, | 8  to boot, that shows that they knew that they couldn't |
| 9  please don't do it on Saturday. You do it on Saturday, | 9  take them essentially wholesale and -- because if you |
| 10  you've committed a crime in -- in California. That -- | 10  take it wholesale, I mean, obviously two things are |
| 11  I don't think that's what the legislature had in mind, | 11  going on. |
| 12  I guess -- | 12  The reason they're doing this is because |
| 13  MR. CLEMENT: Well, I -- | 13  they have some customer who's moving from Oracle to |
| 14  JUDGE GRABER: -- and I have difficulty with | 14  Rimini, and as a practical matter, they have like |
| 15  saying that the manner equates to a statutory | 15  six -- six days left on their contract that gives them |
| 16  violation. | 16  access to this site, and they don't have enough time to |
| 17  MR. CLEMENT: Well, Your Honor, with respect, I'm | 17  load them down one by one, so they just rip everything |
| 18  not sure why there's anything in the word without | 18  off the site, with the prospect of our -- my client's |
| 19  permission that forecloses somebody from providing a | 19  servers essentially getting shut down. That's why it's |
| 20  permission that has essentially a manner restriction on | 20  in there in the terms of use, and I don't see |
| 21  it, and I think when you think about -- whatever might | 21  anything -- |
| 22  be true of some other hypotheticals -- I mean, when you | 22  JUDGE GRABER: Well, that's particularly -- |
| 23  think about here where the manner restriction is | 23  MR. CLEMENT: To answer your question, I don't |
| 24  critical to protecting the integrity of the computer | 24  see anything in -- without permission that says -- |
| 25  systems -- | 25  JUDGE GRABER: Well, without permission what? |
| Page 38 | Page 40 |

| | |
|---|---|
| 1  JUDGE GRABER: Well, that's -- | 1  Without permission takes information, and that's not |
| 2  MR. CLEMENT: -- it gets to the heart. | 2  what happened here. They had permission to take the |
| 3  JUDGE GRABER: Except that the -- that there | 3  information, but only in a certain way. |
| 4  are -- there are ways to get to that, which would be, | 4  MR. CLEMENT: They did not have the -- they did |
| 5  you know, contractual, or contracts, or torts, or | 5  not have permission to take data in the way that they |
| 6  whatever, but remember, this is basically a criminal | 6  took data. |
| 7  statute that carries with it civil liabilities, | 7  JUDGE GRABER: I understand your argument, and |
| 8  so how -- | 8  you've exceeded your time. |
| 9  MR. CLEMENT: Sure, and with respect, that's why | 9  JUDGE FRIEDLAND: Can I ask one more question? |
| 10  the jury was instructed in this particular case. | 10  JUDGE GRABER: Yes. |
| 11  Essentially, they -- they were told to find -- not find | 11  JUDGE FOGEL: And I have one question too as |
| 12  liability unless they found subjective understanding | 12  well. |
| 13  that what Rimini Street was doing was forbidden by the | 13  JUDGE FRIEDLAND: Yeah. |
| 14  terms of use. | 14  JUDGE FOGEL: But please go ahead. |
| 15  And so the jury -- and this is one way in | 15  JUDGE FRIEDLAND: So if we were to agree with you |
| 16  which this is, I think, critically different from the | 16  on the liability determinations of the damages, can you |
| 17  issue with respect to the copyright, because I find, | 17  speak to why the injunction is necessary? It seems |
| 18  given all the conduct in this case, the most puzzling | 18  like they've brought a whole lawsuit to try to figure |
| 19  aspect of this case is the innocent infringement | 19  out if they're complying with the liability |
| 20  finding. But I think it makes a little more sense when | 20  determinations, so I don't really understand why there |
| 21  you understand, and you can look at their closing | 21  also needs to be an injunction, when it seems like |
| 22  arguments and see this, their principle argument below | 22  they're trying to comply. |
| 23  for why the infringement was innocent is because they | 23  MR. CLEMENT: Well, I think there needs to be an |
| 24  didn't have contemporaneous access to the license | 24  injunction principally because of the history of this |
| 25  terms, because the license terms were confidential. | 25  lawsuit and the history of Oracle's ability to rely on |
| Page 39 | Page 41 |

11 (Pages 38 to 41)

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

1  representation that Rimini Street makes to Oracle or to
2  courts.  I mean, if you understand that this is a
3  company that said that they had no software library,
4  they didn't have one at all, then when it came out that
5  they had one, and they said, well, you know, okay, it
6  was there, but, you know, they denied that they
7  destroyed it.  They destroyed it.
8       JUDGE FRIEDLAND:  So say --
9       MR. CLEMENT:  Then you get to the --
10      JUDGE FRIEDLAND:  So say they violate again in
11  your view, they -- they do something that you think is
12  another copyright violation.  Is there a practical
13  difference at that point between going to the court and
14  saying, look, we have this judgment that said they
15  can't do this, and now they're doing it again, versus
16  we have this injunction that also says they can't do
17  it, and now they're doing it again?
18      MR. CLEMENT:  Sure, and I mean one practical
19  difference is the ability to hold them in contempt, and
20  the ability to hold somebody who is repeatedly engaged
21  in contumacious conduct in contempt, I think, is no
22  small thing, and I think ultimately, the question is
23  it an abuse of discretion?  And I think Judge Hicks was
24  very well positioned to understand that this was no
25  ordinary infringer, and this is somebody who I would

Page 42

1       say, in my humble opinion, richly deserves to be
2  subject to an ongoing injunction enforced by the
3  contempt power of a court.
4       JUDGE FOGEL:  Just a related question.  The
5  statutory injunction -- two injunctions.  So the
6  statutory injunction is the only way you get Mr. Ravin
7  personally, but -- but under the copyright injunction,
8  he's bound by -- by the terms of the injunction.  Given
9  the innocent infringement finding -- I think you may
10  have addressed this question in part already, but given
11  the innocent infringement finding, did -- did
12  Judge Hicks apply the proper equities in issuing the
13  statutory injunction?
14      MR. CLEMENT:  In -- yes, but I think with respect
15  to the statutory injunction, it's -- and I think I did
16  sort of get to this, as to the -- as to the state law
17  claims, there's a finding of willful misconduct.
18      JUDGE FOGEL:  On the terms of use?
19      MR. CLEMENT:  Yes.
20      JUDGE FOGEL:  Yeah, not -- not copyright, but
21  terms of use.
22      MR. CLEMENT:  Right, and I thought that's what
23  you were asking me.
24      JUDGE FOGEL:  Yeah.
25      MR. CLEMENT:  And so the statutory claims, I

Page 43

1  mean, you know, again, I think there, the issue's
2  pretty straightforward, because you have a willful
3  finding, and I think the statutory injunction, which is
4  the only injunction that's directed to him personally,
5  is amply justified, especially because he was also
6  find -- found personally liable.
7       JUDGE FOGEL:  In terms of protection that your
8  client gets, does the statutory injunction add anything
9  other than naming Mr. Ravin personally?
10      MR. CLEMENT:  It -- it does, because I think
11  the -- the conduct that is enjoined by the statutory
12  injunction is different from the conduct that's
13  enjoined by the copyright injunction, and it's
14  oversimplifying matters, but it roughly corresponds to
15  sort of the access to the website issues, which are
16  principally covered by the statutory injunction, and
17  the sort of avoiding unauthorized copying, which is
18  principally covered by the copyright issue.
19      JUDGE FOGEL:  Thank you.
20      JUDGE GRABER:  Thank you, Counsel.  We'll hear
21  from Mr. Perry.
22      MR. PERRY:  Four quick points, if I may.  On the
23  injunction, what Oracle really likes -- and they say
24  lots of nasty things about my clients, by the way.  The
25  jury rejected all of that, all the tort claims, all the

Page 44

1  punitive damages, all the willfulness.  They found us
2  innocent, and they found us innocent because our
3  reading of the license was reasonable and correct.  But
4  in the injunction, what Oracle really likes is
5  Paragraph 2-A, which says that every one of our
6  customers has to affirm in writing that Rimini's
7  specific conduct is authorized by the licenses.
8       So they want to hold the sort of contempt
9  over their own customers and our customers, and they
10  want to drive them back from Rimini into the Oracle
11  fold, by requiring them to affirm, in writing, what
12  these contracts mean, which we're here in the Ninth
13  Circuit arguing what they mean, and that is not
14  something for the customers.  And that's not in the
15  Copyright Act, that's not in the licenses.  This is
16  just in terrorem, and this injunction is totally
17  unnecessary.
18       Judge Friedland, in answer to your question,
19  Mr. Clement said, in so many words, although it took a
20  long sentence, that developing and testing environments
21  may be authorized.  May be authorized.  We'll take
22  that.  That means a new trial, at minimum, and we think
23  it means judgment, but it means a new trial, because
24  again, at ER102, ER71, ER547, and ER548, Judge Hicks
25  ruled that testing and development --

Page 45

Oral Argument
July 13, 2017

**Page 46**

1    JUDGE GRABER:  What is your response to his
2  argument that at the time of summary judgment and at
3  the time of the crafting of the jury instructions, this
4  was not the specific argument that was made?
5    MR. PERRY:  Your Honor, it was -- it was exactly
6  the argument made for PeopleSoft and Database, and
7  that's specifically addressed at Page 102 and 71.  At
8  summary judgement --
9    JUDGE FRIEDLAND:  Sorry, could you say the page
10  again?
11    MR. PERRY:  I'm sorry, ER100 to 102 for the
12  PeopleSoft argument, Page ER71 for the Database
13  customer license.  For the Siebel and J.D. Edwards
14  arguments, Mr. Clement is correct, in the sense that
15  the summary judgment argument turned on the factual
16  record as to archival use; however the later -- the
17  other provisions that I've talked about were very much
18  injected later in the case.
19    I'll point the court, among other places, to
20  ER142 to 162, which is our detailed objection of the
21  injunctions, which pulled together in one place all of
22  the license constructions.  The injunction, of course,
23  carries through the license constructions from summary
24  judgement to the instructions to judgement.
25    As to the jury instructions themselves,

**Page 47**

1  Judge Graber, we objected, and Docket Number 620 is our
2  redacted version of our objection to application of the
3  summary judgment standards.  In the jury instructions,
4  we had also moved, of course, Rule 50(a), on the ground
5  that the --
6    JUDGE GRABER:  Specifically, did you -- did you
7  quarrel with the inclusion of the material about making
8  the --
9    MR. PERRY:  We -- we objected to the --
10    JUDGE GRABER:  -- extra copy for --
11    MR. PERRY:  We objected to the application of the
12  summary judgment standards in total, which is the same
13  as our Rule 50(a) motion, which is --
14    JUDGE GRABER:  That's not my question.  I'm not
15  being clear.  Your objection earlier, when you were
16  talking about the jury instructions, had to do with the
17  part that said the provision does not mean that a third
18  party, just paraphrasing here, has the authorization to
19  access the source code to carry out development and
20  testing.
21    MR. PERRY:  Yes.
22    JUDGE GRABER:  Did you object to that specific
23  sentence in the jury instructions?
24    MR. PERRY:  Not in so many words, Your Honor.
25    JUDGE GRABER:  Okay.

**Page 48**

1    MR. PERRY:  We objected to the application of the
2  summary judgment constructions in the -- to instructing
3  the jury on the summary judgment constructions, because
4  we maintained our -- our ongoing objection.
5    JUDGE FOGEL:  But -- but following up, the -- you
6  pointed out the potential -- and I'm sorry I keep
7  saying this, the syntactical problem in the way they
8  leads -- the language and some of the instructions
9  track.  Was there ever any objection to that?  Was the
10  trial court ever given an opportunity to address that?
11    MR. PERRY:  Yes, yes, Your Honor.  That -- there
12  is a -- thank you.  There is a separate document, which
13  is -- if my old eyes can read this thing, which they
14  probably can't.  My colleague will tell me the
15  citation.  We -- Rimini Street submitted an alternative
16  set of instructions that rewrote that one included to
17  have a different grammatical structure.  It still
18  incorporated the summary judgment language, because we
19  had lost the objection at Rule 52, carrying forward
20  summary judgment language, but the syntactical, I
21  believe, was corrected there.  In general, the court
22  adopted Oracle's instructions, Docket Number 869, Your
23  Honor, at 32 to 36, I'm told.
24    The last thing I'd like to offer, and
25  I'll -- and I'll sit down, is no client ever got any

**Page 49**

1  software for which it wasn't licensed.  We had a whole
2  trial.  Oracle could have showed that.  Mr. Clement
3  didn't give you any evidence.  They have theories, but
4  they have no evidence.
5    Every single one of Rimini's clients is an
6  Oracle customer that has paid millions and millions of
7  dollars for this software.  The only dispute here is
8  whether they need to be physically siloed and on which
9  server they reside.  If you've got an authorized copy
10  of a book, it's like saying you have to read it in your
11  library and not in your den, or you have to read it in
12  your house, but not at your office, or you have to look
13  at it in this order and not in that order.  Again,
14  those are restrictions.
15    JUDGE GRABER:  Well, why isn't it -- why isn't it
16  more like saying, you know, you have -- you have the
17  authority to have the book, but I'm withholding
18  authority for you to have the movie?  Why isn't it more
19  like that?
20    MR. PERRY:  Well, that specific point, Your
21  Honor, they have authorized the creation of modified
22  works in each of these agreements, so -- so they've
23  already granted that right, but the -- the use -- the
24  location restrictions are not something the Copyright
25  Act is concerned with, how -- where a work is stored,

13  (Pages 46 to 49)

Oral Argument
July 13, 2017

1  because the -- the fixation of the work is not
2  protected.  It is the work itself; okay?
3         The code is the code.  Wherever it resides,
4  that's what the copyright is in, and as long as the
5  code that the user has a license to the code, then
6  which copy it is -- and, by the way, Judge Hicks
7  actually understood this point and got it in rejecting
8  Oracle's argument regarding the installation media,
9  which is earlier in the first summary judgment order
10 when -- when Oracle said you had to use the specific
11 physical disc to feed them in the computer, and he said
12 no.  Judge Hicks said no, the code is the code, and the
13 copyright resides in the code.
14        And so the important thing for our purposes
15 is every single service, every single practice, every
16 update, fix, modification was provided for a customer
17 with a license.  There is no unlicensed --
18    JUDGE FRIEDLAND:  But he's saying that there was
19 this huge downloading of an entire library.  Are you
20 saying every bit of that library was used for someone,
21 or was there this extra file storage in case you needed
22 it?
23    MR. PERRY:  There may well have been extras, Your
24 Honor, because these are gigantic programs.  And if I
25 can just give you an example, you know, the PeopleSoft

Page 50

1  but it looks forward and says we may be going to
2  Michigan.  So it goes to Rimini Street and says
3  download that for me and hold if for me so that if I go
4  to Michigan, I can have it.  That's what is -- is
5  happening here, and that's what the clients are
6  entitled to.  That's what they paid for.
7         Every bit of data was bought and paid for.
8  Every bit, byte was bought and paid for.  It was taken
9  down.  It was held by Rimini Street for use by Oracle's
10 customers.  Remember, our clients are Oracle's
11 customers, and every bit of use here was authorized by
12 these licenses.  This whole case needs to be resolved
13 in that manner.
14    JUDGE GRABER:  Thank you, Counsel.  The case just
15 argued is submitted, and we appreciate very much the
16 stimulating and interesting arguments from both
17 counsel.
18        (End of recording.)
19
20
21
22
23
24
25

Page 52

1  tax program is going to have all 50 states.  If I've
2  got a customer, who is a deli in California, they may
3  only need the California tax regime, but if they get
4  the whole PeopleSoft package, it's going to have
5  thousands and thousands of files, as Mr. Clement says,
6  and it's going to include Michigan, and Wisconsin, and
7  California, and New York, and Illinois, and they might
8  not need these other 49 states, but next year, when
9  they expand into Nevada, or the year after that, when
10 they expand into Arizona, they will need those.  And
11 they paid for those, and they're entitled to those, and
12 then they can use those, or if they have an employee
13 that moves out of state, and under ERISA or something,
14 they have an obligation to keep up the tax reporting,
15 so there -- yes, there may be unused data --
16    JUDGE FRIEDLAND:  But had Rimini downloaded all
17 these things, like in anticipation for hoping to some
18 day get a client in Michigan?
19    MR. PERRY:  No, Your Honor, I -- and, again, it's
20 another mischaracterization.  Here's a simple way to
21 understand it:  The deli in California, its -- its --
22 its annual contract with Oracle is going to expire on
23 December 31st.  That client's entitled to a whole bunch
24 of things, for example, the Michigan tax data that it
25 hasn't yet downloaded, because it's only in California,

Page 51

TRANSCRIBER'S CERTIFICATE

3     I, RENAE E. LOPEZ, attest that the foregoing
4  proceedings provided to me via audio were transcribed
5  by me to the best of my ability.
6     I further attest that I am not a relative or
7  employee to any attorney or party, nor financially
8  interested in this action.
9     I declare under penalty of perjury under the laws
10 of the State of California that the foregoing is true
11 and correct.
12    Dated this _____ day of _____, 2017.
13
14
15    _____
         Renae E. Lopez

Page 53

14  (Pages 50 to 53)

Oral Argument
July 13, 2017

Atkinson-Baker Court Reporters
www.depo.com

Page 1

**A**

**ability** 41:25 42:19,20 53:5
**about** 6:18,23 7:18,19,20 12:16 17:11,12,14,23 17:24 18:11 21:15,23 24:13 25:17 26:4 28:16 28:17,17 33:14 34:6,17 35:8,11,22,24 37:15 38:3,21,23 44:24 46:17 47:7,16
**absolutely** 17:17 38:8
**abuse** 42:23
**AB07AA8** 1:25
**acceptable** 7:14
**accepted** 40:2
**access** 18:18 19:21,22,25 20:3 34:11,13,18 36:14 36:15,15 39:24 40:4,16 44:15 47:19
**accessing** 36:6,7
**acquired** 13:5
**acquisition** 37:4
**act** 5:22,23 6:12,13 7:16 7:17 8:11 9:12 10:8 20:5 45:15 49:25
**action** 32:4 53:8
**activities** 12:1
**actually** 10:7 22:15,16 23:10 28:22 29:20 34:2 35:4,5 50:7
**add** 44:8
**addition** 20:5
**address** 13:18 33:16 48:10
**addressed** 43:10 46:7
**adds** 14:2
**adjudicated** 34:16
**admitted** 5:4 10:21
**adopted** 42:2
**affects** 13:12
**affirm** 45:6,11
**affirmative** 23:25 24:1 25:25
**after** 51:9
**afternoon** 36:6
**again** 9:11,25 12:3 24:21 35:2 37:8 42:10,15,17 44:1 45:24 46:10 49:13 51:19
**agents** 19:1
**ago** 34:17
**agree** 6:2 13:19 17:3 41:15
**agreed** 11:21
**agreements** 23:3,17,19 49:22
**ahead** 41:14
**allow** 19:1 34:18
**already** 43:10 49:23
**alternative** 13:9 48:15
**although** 45:19
**ambiguity** 33:15
**Amendment** 20:4 34:15 34:16

**AMERICA** 1:5
**among** 15:1 46:19
**amply** 44:5
**analogies** 7:20
**ancillary** 26:9
**annual** 51:22
**another** 6:4 8:19 20:8,15 22:19 24:18,21 28:24 29:3 31:14 42:12 51:20
**answer** 15:8 29:5 30:5 34:2 37:11,11 40:23 45:18
**answers** 13:17
**anticipation** 51:17
**anyone** 18:21
**anyone's** 20:7
**anything** 7:17 29:15 31:21 32:1,12 38:18 40:21,24 44:8
**anyway** 17:15
**apparently** 20:12
**appeal** 23:9
**APPEALS** 1:1 4:2
**appear** 10:2
**appeared** 35:13
**appellate** 22:4
**application** 5:13,16 6:19 12:16 15:1 21:2,5 47:2 47:11 48:1
**applies** 19:23
**apply** 5:15 18:9 43:12
**appreciate** 52:15
**approach** 27:2
**archival** 6:9 10:4,5,8 11:20 12:6 15:18 22:18 32:9 46:16
**archiving** 19:18 23:4
**argued** 22:24 24:24 52:15
**arguing** 45:13
**argument** 1:15 4:1 6:16 7:24 13:13 23:15 24:21 26:13 35:5 37:9 39:22 40:1 41:7 46:2,4,6,12 46:15 50:8
**arguments** 21:12,12 23:14 29:13,16 39:22 46:14 52:16
**Arizona** 51:10
**arrangement** 18:25
**Article** 18:20
**asked** 29:6
**asking** 43:23
**aspect** 16:4 39:19
**aspects** 13:19 22:14
**assist** 10:13 25:11
**ATKINSON-BAKER** 1:21
**attention** 22:15
**attest** 53:3,6
**attorney** 53:7
**audio** 53:4
**authority** 49:17,18
**authorization** 19:5 47:18
**authorize** 7:18 10:4,5,11 11:25 12:6,6 24:5 28:18
**authorized** 4:22 5:22,24

6:14 10:12 11:19 13:5 14:25 16:17 24:15 28:14 29:4 45:7,21,21 49:9,21 52:11
**available** 21:3
**avoid** 22:13
**avoiding** 44:17
**aware** 12:18
**A's** 20:10

**B**

**B** 20:12,13
**back** 13:23 23:19 45:10
**back-up** 22:18 32:10
**bar** 27:13
**based** 22:14 23:14
**basically** 39:6
**basis** 23:10
**before** 2:2 17:1 23:10 29:13,17 33:4,6,11
**being** 7:8 22:5 34:9,24 35:1 47:15
**belatedly** 21:7
**believe** 7:7 9:11 12:24 48:21
**below** 24:13 39:22
**benefit** 13:23 20:8,14
**best** 13:7 53:5
**between** 27:8 37:3 42:13
**beyond** 19:19 23:4
**big** 31:22
**bigger** 6:11
**bit** 50:20 52:7,8,11
**Blizzard** 6:21
**book** 8:8,9 20:1 49:10,17
**boot** 40:8
**both** 6:5 9:19 16:7 23:7 29:7,9,10 37:12 52:16
**bots** 35:15,19
**bought** 52:7,8
**bound** 43:8
**break** 29:25
**brief** 10:1,2,3 18:15
**briefly** 19:13
**bring** 7:4 22:15
**broadly** 34:7
**brought** 7:2 32:4 41:18
**bunch** 31:19 51:23
**burden** 23:24 28:20
**burden's** 24:4
**business** 10:15 11:24 13:16 15:9,25 19:3 28:3 32:1
**byte** 52:8

**C**

**C** 2:1
**California** 1:7 2:6,15 38:10 51:2,3,7,21,25 53:10
**came** 42:4
**carries** 19:14 39:7 46:23
**carry** 15:2 16:18 34:11 47:19
**carrying** 48:19

**case** 4:12 6:13 7:2,13 8:7 8:14 9:2,12,24 10:18 12:15,17 17:11 21:16 23:10,13,20 27:16 29:14,22,25 31:11 33:2 33:3,5,22 34:9 39:10,18 39:19 46:18 50:21 52:12,14
**cases** 27:8 29:12 37:2
**cause** 18:21 23:12 36:4
**caused** 35:19
**caveat** 25:14
**cease** 40:7
**center** 10:1
**certain** 15:18 41:3
**certainly** 25:6 34:15
**CERTIFICATE** 53:1
**changed** 13:18
**Christensen** 36:13,20,20 37:2,13 38:3
**Circuit** 1:2 2:3,5 4:3 8:7 45:13
**circumstances** 32:5
**citation** 48:15
**civil** 39:7
**claim** 27:14 35:21,24
**claiming** 31:16
**claims** 7:2 33:8 35:12 43:17,25 44:25
**clear** 6:1 10:7 16:8 26:20 28:10 34:13 47:15
**clearly** 6:24
**Clement** 2:9 3:4 20:23,24 23:7,18 24:3,7,10 25:6 26:3,14,16 27:21 29:1 29:12 30:4,16 31:5,23 32:2,7,14,17,19,21,24 33:5,18 34:5,21 35:1,8 35:23 36:11 37:6,21,23 37:25 38:2,13,17 39:2,9 40:23 41:4,23 42:9,18 43:14,19,22,25 44:10 45:19 46:14 49:2 51:5
**client** 6:4 7:25 8:3 9:3,4,9 9:9,9 11:25 13:7,10,22 13:25 14:10 15:20,25 20:9,10,12,15 21:9,10 24:18,19 25:3 27:9 28:24 29:18 31:14,16 31:17,21 44:8 48:25 51:18
**clients** 7:22 29:10 30:11 44:24 49:5 52:5,10
**client's** 14:9,11 28:24 29:2 40:18 51:23
**close** 15:4 35:9
**closing** 39:21
**cloud** 14:10
**code** 19:21 20:4 34:11,14 34:18 47:19 50:3,3,5,5 50:12,12,13
**colleague** 48:14
**colleagues** 33:8
**colorable** 35:5
**Colorado** 1:5

**come** 23:11 27:12
**comes** 17:1 19:11 40:5
**comfortably** 37:7
**commercial** 6:22 12:19 12:22
**committed** 38:10
**common** 34:8
**companies** 5:11 13:4
**company** 7:9 42:3
**competition** 12:22 13:9
**complete** 22:4
**completely** 37:16 40:5
**complex** 5:4
**comply** 13:7 41:22
**complying** 13:13 41:19
**computer** 38:24 50:11
**conceded** 21:6,7 23:24 24:13
**concerned** 49:25
**condition** 27:8 28:7
**conditions** 27:6
**conduct** 4:22 24:5 28:14 28:21 35:4,5 39:18 42:21 44:11,12 45:7
**conducting** 4:22
**confidential** 39:25
**confusion** 7:6
**conjunction** 26:19
**consistent** 25:9 31:9
**constitute** 5:25
**construction** 12:13 15:10
**constructions** 4:10 19:14 46:22,23 48:2,3
**contains** 19:4
**contemporaneous** 27:19 33:25 39:24 40:4,7
**contemporaneously** 21:13 22:16 31:16 33:21 34:16 35:3 37:10
**contempt** 42:19,21 43:3 45:8
**contending** 14:14
**context** 21:16,21 34:23
**contract** 5:20 6:19,21 7:1 7:2 8:12,13 9:10 11:19 12:4,8,16 24:20 27:6,14 28:10 40:15 51:22
**contractors** 19:2
**contracts** 5:10 39:5 45:12
**contractual** 13:20 36:9 39:5
**contractually** 27:25 36:8
**control** 14:10
**contumacious** 42:21
**copied** 21:9 36:22
**copies** 7:22 10:4,5,8 12:6 12:7 14:25 16:13,14 22:17 24:16 30:10 31:1 31:2,9
**copy** 5:14 6:25 8:20,20 16:6 18:21 25:2 27:17 27:23 30:25 32:9 47:10 49:9 50:6
**copying** 6:14,14 10:17,21

Atkinson-Baker Court Reporters
www.depo.com

Page 2

21:1,1,6 23:22 24:12,17
27:10,13 28:7,9 29:3
30:8 44:17
**copyright** 4:12 5:22,23
5:25 6:12,13,13,20 7:1
7:5,15,17 8:11,13,14,24
9:12 10:6 13:12,14
14:18 15:10 16:8 20:5
24:25 25:24 28:11
29:23,24 32:4,11 39:17
42:12 43:7,20 44:13,18
45:15 49:24 50:4,13
**copyrighted** 20:1,1 21:1
21:3,8 24:18 27:18 29:2
31:13
**copyrights** 33:1
**corporation** 1:5,6,7,7,11
**correct** 31:2 35:16,21,23
45:3 46:14 53:11
**corrected** 7:10 48:21
**correcting** 12:9
**corresponds** 44:14
**counsel** 23:2 24:23 33:14
44:20 52:14,17
**counts** 29:23
**couple** 23:25
**course** 23:23 46:22 47:4
**court** 1:1,21 4:2,8,13,24
5:1,24 6:5,7 8:16 10:3
12:12,18 13:20 20:24
21:13 22:2,4 23:21
37:13 42:13 43:3 46:19
48:10,21
**courts** 20:2 42:2
**court's** 6:20 27:8,16
36:13
**covenant** 27:8,25
**covered** 30:1 44:16,18
**crafting** 46:3
**create** 11:6 15:12,17
19:10
**created** 11:7,13 26:10
**creates** 15:9
**creating** 9:22 25:12
**creation** 49:21
**crime** 38:10
**criminal** 39:6
**critical** 5:9 9:24 30:20
38:24
**critically** 39:16
**cross-use** 7:8,24 8:12
9:20 13:19 16:3 17:11
21:8 22:7,11 25:10 27:2
27:4,5
**CRUTCHER** 2:13
**CSR** 1:24
**current** 12:18
**customer** 6:10 9:4 10:13
11:4,7,8,13 15:7 17:15
17:16,17,24 18:9,20,25
19:5 31:25 40:13 46:13
49:6 50:16 51:2
**customers** 7:20 13:8
15:19,23 16:25 18:3
21:4 45:6,9,9,14 52:10

52:11
**customer's** 15:22

**D**

**D** 2:6,9 3:1
**damages** 30:14 31:24
32:13,14,15,17,22,25
33:3 41:16 45:1
**data** 6:23 7:19 9:7 10:16
35:14 36:21,23,23,24
41:5,6 51:15,24 52:11
**Database** 4:19 9:8 15:6
18:25 29:19 46:6,12
**Dated** 53:12
**day** 51:18 53:12
**days** 40:15
**DC** 2:10
**deals** 7:14
**December** 51:23
**decision** 6:20 36:13 38:5
**declare** 53:9
**defendants** 35:13
**Defendants-Appellants**
1:12 2:12
**defense** 23:25 24:1 25:25
28:12
**degree** 21:6
**Delaware** 1:6
**delays** 14:7
**deli** 51:2,21
**delta** 26:1
**den** 49:11
**denied** 42:6
**denying** 22:7
**depend** 25:15
**derivative** 19:24
**describe** 11:25
**deserves** 43:1
**desist** 40:7
**destroyed** 31:12 42:7,7
**detailed** 46:20
**determinations** 9:19
41:16,20
**develop** 11:9
**developer** 29:21
**developing** 45:20
**development** 4:15 5:2,6
5:19 8:15 9:22,23 10:22
12:7 15:2,12 16:6,13,18
17:12,15 19:10 34:8,12
45:25 47:19
**difference** 14:3 27:7
30:14,16 31:4,5 42:13
42:19
**different** 21:10 23:1
37:15 39:16 40:5 44:12
48:17
**difficulty** 36:25 38:14
**directed** 4:19 44:4
**disallowed** 36:8
**disc** 50:11
**discretion** 42:23
**discussed** 21:17
**discussion** 21:20
**dispute** 6:23 7:5 9:10

12:22 16:9 25:4 27:7
28:10,17 49:7
**disputed** 12:10,11
**disputes** 6:18 24:20
25:17
**disrespectful** 33:1
**distinguish** 37:3
**distribution** 19:24 21:6
23:23 24:12,17 27:10
27:13 28:8 29:4
**district** 2:6 4:13 21:13
**Docket** 47:1 48:22
**document** 48:12
**documentation** 15:1
**doing** 13:7,11 25:4,5,10
26:25 39:13 40:12
42:15,17
**dollars** 49:7
**done** 17:9 24:6,10 26:23
**door** 27:14
**dot** 15:2,2,2
**down** 7:24 8:2 20:9 26:25
29:25 40:17,19 48:25
52:9
**download** 36:3 52:3
**downloaded** 21:8 31:18
35:17,18 51:16,25
**downloading** 50:19
**do-over** 22:4
**drive** 45:10
**driven** 13:1
**DUNN** 2:13

**E**

**E** 1:24 2:1,1 3:1 53:3,15
**each** 10:11 18:16 19:4
30:10,11 35:17 49:22
**earlier** 47:15 50:9
**Edwards** 4:20 14:21,25
18:20 19:16 46:13
**effectively** 15:13
**eh** 15:3
**either** 6:7 12:11 16:5 29:4
**elide** 17:12
**ELLIS** 2:8
**employee** 51:12 53:7
**employees** 36:5
**end** 31:8,10 36:5 52:18
**enforced** 27:25 43:2
**engage** 23:22 24:17 27:1
27:3,10,12 28:1,21 29:3
**engaged** 15:25 20:25
28:22 30:7 35:4,6 42:20
**engages** 28:9
**engaging** 25:10
**engineers** 20:16
**enjoined** 44:11,13
**enough** 18:12 28:16
40:16
**entered** 12:25
**enterprise** 5:5
**enterprises** 5:11
**entire** 4:12 50:19
**entirely** 30:5
**entirety** 21:20

**entitled** 14:17 51:11,23
52:6
**environment** 4:15 5:6,19
6:4,15,15,17 8:16 17:16
19:11 25:2,7,12 34:8
**environments** 9:22,24
15:12,17 17:13 45:20
**equates** 38:15
**equities** 43:12
**ERISA** 51:13
**error** 4:12,24 5:17 12:8,9
15:8 16:8 21:14
**ER100** 46:11
**ER102** 45:24
**ER1163** 10:25 18:22 26:5
**ER1172** 18:20
**ER1180** 18:18
**ER1183** 18:25
**ER142** 46:20
**ER547** 14:16 45:24
**ER548** 14:16 45:24
**ER71** 45:24 46:12
**especially** 21:25 44:5
**ESQ** 2:9,13
**essentially** 31:7 38:20
39:11 40:9,19
**evanescent** 18:15
**even** 5:3 6:11 7:25 8:20
9:14 10:8 21:17 22:20
24:11 25:1,1 27:12,23
31:13,15,15 34:1 35:15
**ever** 9:4 12:24 28:24 48:9
48:10,25
**every** 9:2 10:11 12:23
14:3 27:2 45:5 49:5
50:15,15,15,20 52:7,8
52:11
**everybody** 9:7 30:1
**everything** 17:1 40:17
**evidence** 19:6,7 40:7
49:3,4
**evolution** 22:3
**exact** 15:7,7 36:19 37:9
**exactly** 31:10 33:20,21
46:5
**example** 8:25 10:24
13:24 19:16 20:8 26:5
36:2 38:7 50:25 51:24
**exceeded** 41:8
**Except** 39:3
**Excerpts** 10:20 12:5
21:19 34:3
**exchange** 29:10
**exclusive** 6:24
**exclusively** 21:3 29:13
**exists** 15:4
**expand** 51:9,10
**expense** 14:3
**expensive** 13:22
**expire** 51:22
**explain** 13:21
**express** 14:18 19:4 24:1
28:12,21
**expressly** 4:22 11:18,25
24:3 35:6

**extended** 21:2
**extent** 18:21 25:17,21
27:11
**extra** 21:4 47:10 50:21
**extras** 50:23
**eyes** 48:13

**F**

**Facebook** 37:2
**facilities** 26:22
**fact** 30:11
**facts** 38:5
**factual** 46:15
**Fair** 18:12
**far** 19:19
**features** 11:5,9,23
**federal** 8:7 37:3
**feed** 50:11
**Fifteenth** 2:9
**figure** 41:18
**file** 1:25 50:21
**files** 51:5
**financially** 53:7
**find** 6:8 16:7 18:14 39:11
39:11,17 44:6
**finding** 39:20 43:9,11,17
44:3
**firm** 25:18
**first** 4:25 13:17 16:8 20:4
23:22 24:7 30:5 33:18
34:15,16 50:9
**fit** 17:18
**fits** 37:1,6,11
**fix** 5:12,14 25:13 50:16
**fixation** 50:1
**fixes** 4:15 5:5,7 19:8,9
26:10
**flatly** 29:20
**flow** 30:14 31:25
**focus** 33:7
**focused** 25:25
**Fogel** 2:6 15:15 16:4,12
17:8 33:9,11,14 34:4,20
34:22 41:11,14 43:4,18
43:20,24 44:7,19 48:5
**fold** 45:11
**following** 48:5
**forbidden** 39:13
**forecloses** 38:19
**foregoing** 53:3,10
**forth** 5:11 14:7
**forward** 48:19 52:1
**found** 9:21 29:24 39:12
44:6 45:1,2
**four** 8:17 10:12 44:22
**Francisco** 2:15
**Friedland** 2:3 6:2 7:21
8:18 12:15 13:10 15:8
24:23 28:23 29:7,9
31:18,24 32:6 41:9,13
41:15 42:8,10 45:18
46:9 50:18 51:16
**from** 4:10,21 7:12,23
10:24 14:3 19:7,25 20:1
20:14 24:25 25:1,1,3,4

Oral Argument
July 13, 2017

25:5 30:15 31:14,25
36:13 38:19 39:16
40:13 44:12,21 45:10
46:23 52:16
front 10:1
functionality 11:5,9,23
fundamental 4:11 5:17
further 53:6
future 7:4

**G**
Garshin 27:21
general 48:21
gets 39:2 44:8
getting 36:19 40:19
GIBSON 2:13
gigantic 50:24
gist 26:14
give 10:24 28:1 31:3 49:3
50:25
given 9:4 39:18 43:8,10
46:10
gives 35:4 40:15
go 13:23 20:12,12 22:3
25:8,11 41:14 52:3
goes 6:13 12:15 19:19
28:8 52:2
going 8:4 22:21 26:6 28:1
28:1,4,5,6 40:11 42:13
51:1,4,6,22 52:1
Good 20:23
Graber 2:4 11:1,10 14:13
14:20 16:21,24 17:5,7
17:22 18:1,4,8 20:18,22
22:22 23:16 24:2,6,9
26:2,4,15 27:20 29:5,8
30:3,9,22 32:13,15,18
32:20,23 33:4,6,10,13
35:7,11,25 36:18 37:19
37:22,24 38:1,3,14 39:1
39:3 40:22,25 41:7,10
44:20 46:1 47:1,6,10,14
47:22,25 49:15 52:14
grammatical 48:17
grammatically 16:22
granted 19:1 49:23
ground 47:4
guess 23:8 27:18 36:25
38:12

**H**
half 27:15
happen 26:11
happened 32:2 35:16
41:2
happening 52:5
happens 22:11,20
happy 13:21 24:13
head 36:2
hear 44:20
heart 39:2
held 52:9
help 6:4 17:9 19:5 28:24
31:20
helpful 33:19

helping 25:3
Hicks 5:18 9:21 10:14
11:21 12:2 20:3 42:23
43:12 45:24 50:6,12
him 33:19 44:4
hire 11:8
history 41:24,25
hold 42:19,20 45:8 52:3
holders 29:17
honor 4:7 6:6,12 8:25
10:18 11:12 14:16
16:16 17:3 18:12 19:22
20:2,21 23:8 26:14 31:5
31:6 36:12 37:6,21
38:17 46:5 47:24 48:11
48:23 49:21 50:24
51:19
Honors 5:1,9 20:23
hoping 51:17
hosting 7:8 8:13 13:19
14:6
house 49:12
housed 6:17
huge 50:19
humble 43:1
hundred 28:5
hypothetical 30:24
hypothetically 28:19
hypotheticals 38:22

**I**
identical 23:8 8:1 13:24
14:1,5
identified 16:1
II 18:20
Illinois 51:7
illustration 27:15
imagine 7:22
imperfect 7:21
implement 11:17 18:24
26:9
implementation 11:22
implementations 11:6
import 16:2
important 5:8 22:6 27:5
28:15 37:14 50:14
INC 1:5,6,10,21
include 10:17 51:6
included 48:16
inclusion 47:7
incorporated 48:18
indicates 30:6
individual 1:11 35:17
infected 4:12 14:15
information 36:3,7 37:5
38:8 41:1,3
informed 7:11
infringement 4:18 10:8
14:18 29:23,24 39:19
39:23 43:9,11
infringer 42:25
injected 46:18
injunction 4:11,21 5:21
17:19,20,21 19:13,19
20:6 24:24 41:17,21,24

42:16 43:2,5,6,7,8,13
43:15 44:3,4,8,12,13,16
44:23 45:4,16 46:22
injunctions 43:5 46:21
innocent 39:19,23 43:9
43:11 45:2,2
innovators 20:17
insisted 17:10
install 11:16 18:24 26:8
installation 11:22 50:8
instead 8:2 14:1 28:6
31:1
instructed 39:10
instructing 48:2
instruction 14:17,17,19
14:22 15:16 16:2,20
17:18,23 18:9 33:24
instructions 4:11 6:6
14:14 19:16 33:15,16
46:3,24,25 47:3,16,23
48:8,16,22
integrate 11:16 18:24
26:8
integration 11:22
integrators 11:16 26:8
integrity 38:24
inter 16:21
interested 53:8
interesting 21:11 32:3
52:16
internal 10:15,16
INTERNATIONAL 1:6
interpret 13:15
interrupt 15:16
involved 25:18,19
involving 12:18
isolation 26:18
issue 8:14,24 10:12 12:14
14:15 22:24 28:22
29:19 34:16,25 35:1
39:17 44:18
issues 7:8,9 12:14 13:20
25:20 44:15
issue's 44:1
issuing 43:12

**J**
JDE 19:20
JEREMY 2:6
judge 2:3,5,6 5:18 6:2
7:21 8:18 9:21 10:14
11:1,10,21 12:2,15,15
13:10 14:13,20 15:8,15
16:4,12,21,24 17:5,7,8
17:22 18:1,4,8 20:3,18
20:22 22:22 23:11,16
24:2,6,9,23 26:2,4,15
27:20 28:23 29:5,7,8,9
30:3,9,22 31:18,24 32:6
32:13,15,18,20,23 33:4
33:6,9,10,11,13,14 34:4
34:20,22 35:7,11,25
36:18 37:19,22,24 38:1
38:3,14 39:1,3 40:22,25
41:7,9,10,11,13,14,15
44:20 46:1 47:1,6,10,16
49:15 51:17

42:8,10,23 43:4,12,18
43:20,24 44:7,19,20
45:18,24 46:1,9 47:1,6
47:10,14,22,25 48:5
49:15 50:6,12,18 51:16
52:14
judgement 46:8,24,24
judge's 21:15 22:15
judgment 4:17,18,25 7:7
9:17,19 12:3,9,14 15:5
16:20 19:15 21:15,18
22:5,14 23:13,15 26:24
42:14 45:23 46:2,15
47:3,12 48:2,3,18,20
50:9
JULY 1:16 4:4
jumped 5:1
jury 6:6,10,10 12:3,4 16:7
17:18 18:9 29:14,24
33:15,16,23 39:10,15
40:2 44:25 46:3,25 47:3
47:16,23 48:3
just 6:22 8:6 9:18 10:4,18
10:24 11:1,20 12:7,13
14:1 15:4 16:22 17:8
18:16 20:12 22:3 23:19
24:20 27:6,9,24 28:6,9
28:16 29:20 31:8 32:7,9
32:16 33:11 36:25
40:17 43:4 45:16 47:18
50:25 52:14
justified 44:5
J.D 4:20 14:21,25 18:20
19:16 46:13

**K**
Katy 27:13
keep 30:23 31:7 32:11
48:6 51:14
keeping 9:7
kept 17:11
kind 8:23 10:21,22 21:23
27:3
KIRKLAND 2:8
knew 40:8
know 8:8 10:9 13:22
19:13 21:25 25:8 26:17
27:7,23 33:2,19 34:6
39:5 42:5,6 44:1 49:16
50:25
knowingly 36:14 40:3

**L**
labeled 8:3
laboriously 35:17
language 16:19 48:8,18
48:20
last 8:9,10 11:12 27:24
48:24
later 46:16,18
law 6:21 13:3 16:9 25:18
27:9,15 43:16
laws 6:20 28:11 53:9
lawsuit 41:18,25
leads 48:8

learn 20:9
learned 20:14
lease 25:9
led 4:17
left 40:15
legal 12:8
legislature 38:11
let 17:13,13
letter 40:7
let's 9:15
liabilities 39:7
liability 6:8 9:18 16:7
39:12 41:16,19
liable 44:6
library 31:11 42:3 49:11
50:19,20
licence 16:11
license 6:18 7:15 8:6,8,10
9:3,5 10:9,25 11:3
12:13 14:18,23 15:7
16:9,11 17:17 19:14,20
21:17,21,21 22:14 24:1
25:16,22 26:6,17,19,20
27:6,9 28:12,13,21,25
29:4,21 30:2,25 31:6,7
32:8 39:24,25 45:3
46:13,22,23 50:5,17
licensed 5:20 24:3 25:12
25:13 35:6 49:1
licensee 18:18 25:1,4
licensees 16:1
licensee's 26:21
licenses 4:16,23 5:3,24
10:3,5,12,23,24 13:3,4
13:5,8 18:16 19:19
23:14 24:5,15 28:17
29:11 32:9 34:13,17,19
35:6 40:3 45:7,15 52:12
licensing 12:16 23:2,17
23:19 28:3 30:17,18,20
31:10
licensor 30:20
lie 22:19
like 6:5 8:7 13:15 14:24
24:14 33:1 40:14 41:18
41:21 48:24 49:10,16
49:19 51:17
likes 44:23 45:4
limit 28:7
limited 21:2 27:11
Line 16:5
Lines 14:22
litigate 23:9
litigated 22:6 23:10,20,21
29:15 33:22 34:9
litigation 21:25 22:1,1
24:8 26:24
little 22:22 23:14 28:17
39:20
lived 6:17
LLP 2:8,13
load 40:17
local 7:8 8:12 13:19 14:6
location 49:24
long 13:2 45:20 50:4

Atkinson-Baker Court Reporters
www.depo.com

look 7:9,25 8:2,3 10:23
  13:25 17:21 21:19
  23:16,18 28:16 29:22
  29:23 32:7 34:2,5,23
  39:21 40:2 42:14 49:12
looking 26:5
looks 52:1
loop 15:5
Lopez 1:24 53:3,15
loss 32:21
lost 7:3 31:25 48:19
lot 8:22 35:19
lots 44:24

**M**

made 4:17,24 5:18 8:20
  21:3,13 30:11 33:14
  36:22 40:1 46:4,6
maintained 48:4
maintenance 4:13 7:18
  15:14 19:8,10
make 5:7,12,15 11:4
  13:25 14:25 15:21 16:5
  16:13,14,17 17:13 23:5
  23:13 25:7,13 26:20
  27:23 30:10,13 31:2
  32:9,10 36:24
makes 6:1 10:7,23 13:22
  17:15 21:11 22:1 30:16
  31:4,5 37:16 39:20 47:7
making 4:14 6:15 8:15
  12:7 17:11 25:1,2 31:1
  37:9 47:7
manner 36:8,16,20 37:21
  37:25 38:15,20,23
  52:13
manual 7:23,25 8:3,4
  20:8,9,10,14
manuals 13:24 14:1,5
many 6:1 29:12 45:19
  47:24
map 24:12
maps 35:3
Mark 2:13 4:8
market 12:25 13:1
massive 20:25 27:13
  28:9 30:7
material 14:8 47:7
materials 15:23 21:3 23:5
matter 6:21 30:3,6,9
  40:14
matters 44:14
may 4:7 5:8 6:7 8:6,10
  18:18,21,25 19:1 20:23
  33:7,9 43:9 44:22 45:21
  45:21 50:23 51:2,15
  52:1
maybe 8:23 30:7 33:2
MDY 6:20
mean 6:4 14:24 15:17
  16:17,19 17:20 18:10
  21:25 24:21 25:18
  29:13 32:3,7,8,19 33:2
  38:22 40:10 42:2,18
  44:1 45:12,13 47:17

means 26:13 45:22,23,23
media 50:8
mental 20:16
merely 36:9
MICHELLE 2:3
Michigan 51:6,18,24 52:2
  52:4
might 15:15 25:15 28:19
  32:21 33:2 38:21 51:7
millions 49:6,6
mind 38:11
minimum 45:22
minutes 4:9 34:17
mischaracterization
  51:20
misconduct 43:17
misread 12:8
misrepresentations 22:2
mission 2:14 5:9
misuse 5:25 13:12,14
  15:10 25:25
mix 31:8
model 30:17
modification 50:16
modifications 15:21
modified 49:21
modifying 16:25
more 11:14 13:22,22
  15:16 27:19 39:20 41:9
  49:16,18
morning 20:23
most 9:24 39:18
motion 47:13
moved 47:4
moves 51:13
movie 20:1 49:18
moving 40:13
much 20:20 46:17 52:15
music 8:21

**N**

N 2:1 3:1
naming 44:9
nasty 44:24
necessary 5:7,20 10:10
  18:22 41:17
need 5:12 6:3 25:23 35:2
  49:8 51:3,8,10
needed 50:21
needs 26:23 41:21,23
  52:12
Nevada 1:11 51:9
never 12:11 22:8 27:3
  31:20,20,21 32:12 34:8
new 9:15,16,18 11:5,9,22
  11:23,23 12:13 45:22
  45:23 51:7
next 51:8
Nimmer 5:25
Ninth 1:2 2:3,5 4:3 45:12
non 37:17
nonexistent 18:16
NORTHERN 2:6
Nos 1:6
Nosal 37:2

nothing 5:22 7:17 24:14
novel 27:22
Novell 21:22
Number 8:3,4 13:25,25
  19:1 31:2 47:1 48:22
NW 2:9

**O**

object 34:1 47:22
objected 47:1,9,11 48:1
objecting 33:23
objection 33:20,21 34:24
  35:3 46:20 47:2,15 48:4
  48:9,19
obligation 51:14
obtain 35:14
obviously 40:10
off 40:18
offer 13:8 48:24
office 49:12
oh 28:1
okay 11:1 13:11 24:6
  26:15 35:7,19,20,25
  42:5 47:25 50:2
old 6:22 48:13
once 6:23 27:11
one 4:17 7:24 9:15 10:11
  10:24 14:1 21:9 22:1
  23:19 24:18 26:20 27:2
  28:6,24 29:2 30:11,12
  30:12,25 31:9,14 32:5,9
  33:12 35:18 37:8,10,14
  37:15 39:15 40:17,17
  41:9,11 42:4,5,18 45:5
  46:21 48:16 49:5
ongoing 43:2 48:4
only 6:8 8:14 9:5,20 10:4
  12:6 19:9 22:12,13,17
  26:11 27:15 28:11
  30:21 41:3 43:6 44:4
  49:7 51:3,25
onto 24:12 35:3
operation 19:3
operational 9:4
operations 10:15,16
opinion 43:1
opportunity 48:10
opposing 23:2 24:23
Oracle 1:5,5,6 6:23 7:2,11
  7:23 9:15 10:1,2 11:20
  12:10,11,22 13:3,4
  15:13 17:10 18:14
  20:24 21:4 29:11 40:13
  42:1 44:23 45:4,10 49:2
  49:6 50:10 51:22
Oracle's 5:4 6:16 7:12
  10:2,19 14:4 19:7 20:3
  21:1,5 31:12 41:25
  48:22 50:8 52:9,10
ORAL 1:15 4:1
order 13:13,14 19:15
  21:18 22:5 23:13 25:23
  49:13,13 50:9
ordered 20:3
orders 7:7

ordinary 42:25
other 7:18 8:22 11:8
  12:14 14:9 15:1,23
  16:25 19:18 26:19,20
  37:11 38:22 44:9 46:17
  46:19 51:8
others 11:19
otherwise 11:16 26:9
ought 6:19 12:17 16:9
out 5:15 12:19 13:1 15:2
  16:18 18:17 22:19 28:4
  30:13 33:6 34:11 41:19
  42:4 47:19 48:6 51:13
outside 15:24
over 9:25,25 14:10 26:6
  30:13 45:9
oversimplifying 44:14
own 8:21 10:19 11:6 22:3
  24:16 25:7,11 28:25
  29:21 36:2 45:9

**P**

P 2:1,1,4
package 51:4
page 3:2 4:24 10:19,19
  10:20,25 12:4 15:5,6
  16:5 18:17 21:19 26:6
  34:3 46:7,7,9
pages 8:9,10 22:13 27:24
paid 21:4 30:24,25 49:6
  51:11 52:6,7,8
Paragraph 45:5
paraphrasing 47:18
part 7:6 10:9 15:9 23:15
  43:10 47:17
particular 39:10
particularly 29:15 34:23
  35:9 40:22
parties 11:14,15,18 18:2
  18:11,14,19,23 19:5,17
  23:4 26:8 29:9
party 4:13 6:9 10:13 11:8
  11:10 12:24 13:5 14:24
  15:11,13 17:23 18:11
  22:1 26:12 27:12 29:22
  47:18 53:7
Paul 2:9 20:24
payroll 5:10
penalty 53:9
pending 7:13 12:18
people 8:22 29:9 30:24
  31:3
PeopleSoft 4:19 9:7 15:6
  18:17 29:17 46:6,12
  50:25 51:4
perfect 34:22
performance 9:1 11:5,9
  11:23
perhaps 30:4
period 36:21
perjury 53:9
permission 33:8 35:13
  36:7,14,15,21,22,23
  37:18,19 38:19,20
  40:24,25 41:1,2,5

permitted 10:22
Perry 2:13 3:3 4:7,8 6:6
  8:25 11:3,12 13:17
  14:16,21 16:3,16,23
  17:3,6,10,25 18:2,6,12
  20:20 21:11 23:11
  25:18 44:21,22 46:5,11
  47:9,11,21,24 48:1,11
  49:20 50:23 51:19
person 31:9
personally 43:7 44:4,6,9
perspective 7:12 14:4
pervaded 4:12
physical 7:21 9:8 50:11
physically 49:8
pick 14:1
piece 9:24
pinpoint 23:6
place 26:21 30:12 46:21
places 46:19
plain 6:22 12:8 16:19
plainly 8:16
Plaintiffs-Appellees 1:8
  2:8
playing 8:21
please 4:8 20:24 33:13
  36:3 38:9 41:14
point 6:3,4 13:11 17:12
  18:17 22:5,11 24:4
  28:12 33:14 42:13
  46:19 49:20 50:7
pointed 23:2 48:6
points 6:5 24:11 44:22
portion 14:13
position 22:9 28:23 29:1
  30:6 31:22 35:12
positioned 42:24
possibility 8:18
possible 16:24 17:2,7
potential 33:15 48:6
power 20:2 43:3
practical 40:14 42:12,18
practice 50:15
precise 16:22
precluded 15:13
prerogative 13:2
preserve 24:22
preserved 33:20 37:10
pretty 44:2
prevents 25:5
principal 24:1
principally 23:8 41:24
  44:16,18
principle 39:22
probably 25:14 48:14
problem 8:12,13,20,23
  9:13 15:9 31:22 34:15
  36:19 48:7
problems 7:1,1,10,11
  8:14 23:12 35:20
proceedings 53:4
process 14:2
processes 12:19 13:18
  20:16
processing 10:16

Atkinson-Baker Court Reporters
www.depo.com

products 4:19,20
profit 32:22
program 5:13,16 51:1
programs 19:2 21:2,5
  26:9,10 50:24
prohibit 19:25
prohibited 7:15 16:15
prohibiting 5:21 20:15
prohibition 9:21 34:10
prohibits 4:21 17:20
  19:16 24:25
proper 43:12
properly 23:21 24:22
prospect 40:18
protected 50:2
protecting 38:24
protection 44:7
provide 18:18,19 19:9
  23:24 25:23 28:18 29:3
provided 28:20 50:16
  53:4
provider 12:24
providers 10:13
providing 29:16 38:19
provision 14:23,23 16:16
  26:18 34:19 47:17
provisions 11:25 12:5
  21:16,23 24:4,11 26:17
  28:13 46:17
proxy 25:3
public 9:1
pull 7:24 8:2
pulled 46:21
punitive 45:1
purely 17:23
purpose 19:2,3,18
purposes 11:20 15:18,19
  15:24 16:15 22:18
  32:10 50:14
put 9:6 10:1 28:7 31:1,19
puzzling 39:18

**Q**

qua 37:17
quarrel 47:7
question 9:5 12:16 15:8
  18:4,7 23:22 29:5 30:5
  32:3 33:12 35:9,11
  40:23 41:9,11 42:22
  43:4,10 45:18 47:14
questions 6:18
quick 44:22
quite 23:1
quote 10:15

**R**

R 2:1
raised 9:25 35:3
Ravin 1:11 4:9 9:6 43:6
  44:9
read 8:9,9 16:24 17:2,7
  22:12 26:18,19 27:24
  34:6 48:13 49:10,11
reading 19:25 45:3
real 7:9 30:14,16

really 26:23 28:2,4 34:9
  35:9,21 37:17 41:20
  44:23 45:4
reason 21:24 22:12,13
  40:12
reasonable 45:3
reasons 13:21
rebuttal 4:9 20:18 33:20
recognize 22:6 37:14
recognizing 5:18
record 4:25 7:10 10:19
  10:21 12:5 34:3 46:16
recording 52:18
Records 21:19
redacted 47:2
redress 7:13
referred 11:14
refers 27:15
reflected 7:9
regarding 11:5 50:8
regime 51:3
rejected 44:25
rejecting 50:7
related 10:15 43:4
relative 53:6
relevant 19:24
rely 41:25
remaining 6:25
remember 39:6 52:10
remotely 24:12,15
Renae 1:24 53:3,15
repeated 22:2
repeatedly 42:20
REPORTED 1:24
REPORTERS 1:21
reporting 51:14
representation 42:1
reproduction 19:23
require 36:12
required 9:10,16
requires 5:5,5 12:9 19:8
requiring 45:11
reside 49:9
resides 7:19 50:3,13
resolved 6:21 9:11 12:17
  16:10 25:20 52:12
respect 29:19 38:17 39:9
  39:17 43:14
response 46:1
responsive 30:5 32:8
rest 9:20
rested 6:7
resting 6:5
restriction 8:6 38:20,23
restrictions 6:25 14:12
  18:13 49:14,24
reverse 12:12
rewrote 48:16
richly 43:1
right 6:24 9:1,2 11:4
  13:14 14:20 19:22 23:4
  24:2,8 26:7 30:10 32:18
  32:23 34:4 37:9 38:4
  43:22 49:23
rights 18:3 19:1

Rimini 1:10 4:8,21 9:3
  11:24 12:10 13:23
  14:24 16:17 19:21 20:7
  20:25 21:8 22:7 23:22
  25:19,20 39:13 40:14
  42:1 45:10 48:15 51:16
  52:2,9
Rimini's 14:8 45:6 49:5
rip 40:17
Romanette 11:15 18:23
romanettes 23:14 24:14
root 21:14 23:12
roughly 44:14
routinely 29:2
Rule 12:11 47:4,13 48:19
ruled 4:13 5:1 45:25
ruling 4:17 21:15 24:25
run 5:14,14 33:4,6
running 5:10

**S**

S 2:1
sake 8:21
same 14:6 15:4,7,7 16:20
  18:3 19:14 31:3 47:12
San 2:15
satisfied 37:16
Saturday 36:6 38:9,9
save 4:9 20:18
saying 18:10 22:7,10
  23:6,7,8 26:11,25 30:23
  38:7,15 42:14 48:7
  49:10,16 50:18,20
says 10:2 15:17,20 16:16
  20:6 26:7 34:7 40:24
  42:16 45:5 51:5 52:1,2
scope 15:24
scrapers 35:15,19 36:16
second 7:13 9:12 11:1
  12:17 16:9
secondary 6:16
secondly 24:10 26:22
secret 12:23
Section 7:19 10:7 11:3
  18:17,20,23 19:23
see 9:11 11:10 21:20,22
  22:12 34:10,24 35:1
  39:22 40:20,24
seeing 37:1
seems 6:5 13:15 38:6
  41:17,21
selling 30:19
sense 10:23 39:20 46:14
sentence 11:13 15:4,7
  17:1 45:20 47:23
separate 5:6,14,19 6:15
  9:2 18:4,6 29:20 48:12
server 6:17 7:19 31:19
  49:9
servers 14:8,9,9,10 24:16
  25:8,11,13 26:11,12,22
  30:21 40:19
service 12:24 13:8 21:9
  25:24 28:19,20 29:3,17
  32:1 50:15

services 18:19
set 20:11,13 48:16
SETH 1:11
Shakespeare 27:18
sharing 8:19
shift 33:7
shifts 23:24
show 22:17 28:20
showed 49:2
shows 40:8
shut 40:19
side 37:3
Siebel 4:20 10:25 11:3
  12:4 15:4 18:22 19:17
  19:20 21:16,17,21,22
  26:6,11 46:13
significantly 28:6
siloed 27:2 49:8
silos 9:6,8
simple 17:13,14 51:20
simply 16:11 29:25 30:7
sine 37:17
single 4:11 5:17 29:17
  49:5 50:15,15
sit 48:25
site 14:12 40:16,18
situation 40:5
six 40:15,15
Slot 31:2
slots 31:2
small 42:22
software 5:5,9 9:4 10:14
  11:17 14:25 15:3,22,22
  15:24 16:18 18:19,21
  18:24 19:6,8,17 20:7,11
  21:5 28:2,3,24 29:2
  30:18,19,19 31:11
  34:11,12 42:3 49:1,7
some 14:6 18:14 20:18
  21:11,16 30:1 33:15
  38:22 40:13 48:8 51:17
somebody 16:7 19:25
  27:10,11,17 32:9 38:19
  42:20,25
someone 17:9 50:20
something 9:25 20:13
  25:21 27:19 28:11 34:6
  34:7 38:4 42:11 45:14
  49:24 51:13
sorry 15:15 46:9,11 48:6
sort 22:4 43:16 44:15,17
  45:8
sorted 12:19 31:14
sorts 40:6
source 19:21 20:4 34:11
  34:14,18 47:19
so-called 7:8 9:20
space 12:23
speak 41:17
speaking 34:7
special 18:13
specific 24:14 25:15,16
  25:22 28:13 34:10 45:7
  46:4 47:22 49:20 50:10
specifically 4:14 11:14

14:14 46:7 47:6
spine 8:2
spot 9:15
spread 30:12
stage 12:12 15:5 25:19
standards 47:3,12
start 8:21
starting 7:7
starts 8:22 18:10
state 43:16 51:13 53:10
states 1:1 4:2 51:1,8
statute 10:7 36:10 37:1
  37:12 38:6 39:7
statutes 36:12 37:7,15
statutory 32:17,24 33:3,8
  35:11 36:1 38:15 43:5,6
  43:13,15,25 44:3,8,11
  44:16
stays 13:2
step 14:2,3 23:19
steps 7:12
still 9:16 13:11 14:4 48:17
stimulating 52:16
storage 8:7 50:21
stored 14:8 49:25
straightforward 44:2
Street 1:10 2:9,14 4:8,21
  9:3 13:23 14:24 16:17
  19:21 20:7 22:7 23:22
  39:13 42:1 48:15 52:2,9
Street's 11:24
structure 48:17
subject 43:2
subjective 39:12
submission 6:12 18:13
submit 8:15,16 12:9
  14:10 16:8 17:17
submitted 48:15 52:15
successful 12:25
sudden 28:5
sued 12:23
suggested 26:10
suggesting 17:8
suggestions 11:4,7
suggests 21:14 23:3
Suite 2:14
summary 4:17,18,25 7:7
  9:19 12:2 15:5 16:20
  19:15 21:15,18 22:5,13
  23:13,15 26:24 46:2,8
  46:15,23 47:3,12 48:2,3
  48:18,20 50:9
supplier 5:10
support 4:14 6:9 7:23,24
  8:2,4 10:13 13:6,24,25
  14:5 15:14,19,22,23
  16:6 18:22 19:9,10 21:4
supported 15:20
supporting 16:25
suppose 25:24
sure 5:15 27:17 29:14
  31:24 33:18 37:8 38:18
  39:9 42:18
surrendered 6:24
surviving 13:16

Oral Argument
July 13, 2017

**SUSAN** 2:4
**sustain** 22:20
**sustained** 15:11
**switch** 20:11,13
**syntactical** 48:7,20
**syntax** 34:22
**system** 11:16 22:17 26:8
**systems** 30:21 38:25

**T**

**take** 20:8,9 26:21 36:23
  37:19 38:4 40:9,10 41:2
  41:5 45:21
**taken** 7:12 52:8
**takes** 26:21 41:1
**taking** 37:18 38:3
**talk** 24:13 28:16
**talked** 46:17
**talking** 21:23 47:16
**talks** 21:15
**tax** 20:10 51:1,3,14,24
**taxes** 5:10
**Tech** 8:7
**tell** 22:23 27:17 31:15
  48:14
**telling** 22:24,25
**ten** 7:22,22 8:9,10 13:24
  14:1,4 27:24 30:10,11
  30:11,13,24 31:1,2,3,9
**term** 31:10
**terms** 12:20 25:9,15
  26:19,20 27:5 29:21
  31:6 34:1 37:4,7,12
  39:14,25,25 40:3,6,20
  43:8,18,21 44:7
**terrorem** 45:16
**test** 5:15
**testing** 4:14 5:2,6,19 8:15
  9:22,23 10:17,22 12:7
  15:2,12 16:6,13,18
  17:12,16 19:11 25:2,7
  25:12 34:8,12 45:20,25
  47:20
**text** 23:2 37:1 38:6
**thank** 4:7 11:1 20:20,22
  44:19,20 48:12 52:14
**their** 10:3,13 21:5 22:8,17
  24:5,16 25:3,7,10 26:22
  26:22 28:11,14,20,25
  29:21 30:21,21 33:20
  33:21 39:21,22 40:15
  45:9
**themselves** 10:24 46:25
**theories** 49:3
**theory** 8:23
**thing** 12:21 16:20 19:11
  23:6 35:18 37:8 42:22
  48:13,24 50:14
**things** 15:1 23:1 26:20
  31:19 35:15 37:14,16
  40:10 44:24 51:17,24
**think** 13:10,20 16:1 17:14
  22:6 23:9,21 25:14
  26:16 27:20 28:15
  30:17 33:19 34:3,15

**third** 4:13 6:9 10:12 11:8
  11:10,14,15,18 12:24
  13:5 14:24 15:11,13
  17:23 18:2,11,11,14,19
  18:23 19:5,17 23:3 26:7
  26:12 27:12 29:22
  47:17
**though** 5:3 8:1,19 11:11
  23:8 24:23,24 33:7 34:2
**thought** 16:14 31:15
  33:23 43:22
**thousand** 32:10,11
**thousands** 24:16,16
  31:12,12 51:5,5
**three** 20:11
**through** 4:10 14:22 19:14
  46:23
**time** 20:19 22:9,10,11,20
  24:8 26:24 27:1 33:6
  35:18 40:16 41:8 46:2,3
**times** 8:17
**today** 4:21 21:12 24:6,11
**together** 19:12 31:8
  46:21
**told** 39:11 48:23
**tort** 44:25
**torts** 39:5
**total** 16:2 47:12
**totally** 45:16
**touched** 17:19 31:20
**tower** 9:8,8
**track** 48:9
**tracks** 5:1
**train** 5:1
**transcribed** 53:4
**TRANSCRIBER'S** 53:1
**TRANSCRIPTION** 1:15
  4:1
**transmission** 14:7
**treatise** 6:1
**trial** 5:4 9:6,16,16,18
  10:19 12:13 19:6 22:10
  22:20,21 45:22,23
  48:10 49:2
**tried** 18:14
**true** 10:5 35:25 38:22
  53:10
**try** 4:9 32:7 41:18
**trying** 17:11 22:23 23:5
  41:22
**turned** 29:15 46:15
**turns** 22:19
**two** 4:9 13:17 22:13 23:1
  26:20 40:10 43:5

**U**

**ultimately** 23:7 42:22
**unauthorized** 20:25 21:7
  44:17

**unclear** 22:22
**uncommon** 34:14
**under** 6:19 7:14 9:2 10:22
  11:19,19 15:6 17:14
  19:22 25:22 34:2 43:7
  51:13 53:9,9
**understand** 5:8 24:9
  30:17,22,23 31:4 35:15
  36:9 39:21 41:7,20 42:2
  42:24 51:21
**understanding** 33:25
  35:16,21,24 39:12
**understood** 50:7
**undertakes** 12:1
**undisputed** 5:23 19:6
**unfortunately** 16:21
**UNITED** 1:1 4:2
**unless** 39:12
**unlicensed** 9:3 50:17
**unnecessary** 45:17
**until** 34:17
**unused** 51:15
**update** 5:12,14 19:9
  20:10 21:4 50:16
**updates** 4:15 5:5,7 10:17
  15:3 16:19 19:8 34:12
**upheld** 5:24
**USA** 1:5
**USD** 10:7
**use** 5:20,20,21 6:23 7:20
  10:14,14 15:21,22 16:6
  17:23 18:18 19:2,6,17
  20:7 23:5 24:18 25:13
  28:5 30:18,24 35:14
  36:22,24 37:4,18 39:14
  40:6,20 43:18,21 46:16
  49:23 50:10 51:12 52:9
  52:11
**used** 6:8,8,9,16 21:9
  28:24 29:2 31:20 36:2
  36:16,17 50:20
**user** 25:12 28:8 50:5
**users** 18:22 27:3 28:5
**user's** 25:13
**uses** 30:21
**using** 6:3 15:24 19:7
  20:10,13 24:25 35:19
  36:16
**usually** 12:25 13:1

**V**

**vacated** 6:11
**verdict** 6:10 9:20 12:3,4
**verdicts** 4:19
**version** 47:2
**versus** 6:20 9:9,9 42:15
**very** 11:12 16:22 17:13
  20:20 21:11 23:1 25:21
  27:11 34:13 42:24
  46:17 52:15
**via** 53:4
**view** 23:3 42:11
**VIII** 11:15 18:23
**violate** 42:10
**violated** 8:10,11 29:20

40:3
**violation** 20:4,5 28:10
  32:11 36:1,10,10,11
  37:17 38:16 42:12
**violations** 37:3
**vs** 1:9

**W**

**waived** 22:25
**want** 12:22 28:18 33:7
  36:4 45:8,10
**wanted** 35:12
**wants** 23:11 27:9
**Washington** 2:10
**wasn't** 31:13 49:1
**watching** 20:1
**way** 9:15 10:6 12:21
  13:15 14:9 16:10 17:2,8
  17:14,20 19:9 23:20,20
  26:23 27:24 28:18,19
  29:14 31:13 32:25
  33:22,24 34:9 35:8
  39:15 41:3,5 43:6 44:24
  48:7 50:6 51:20
**ways** 39:4
**website** 44:15
**weekends** 36:4,5
**welcome** 36:3 38:8
**well** 8:6,25 10:3 15:15
  16:3,21 17:10,22 18:4,6
  18:8 22:22 24:7 28:1
  29:1 32:17 33:18 38:13
  38:17 39:1 40:22,25
  41:12,23 42:5,24 49:15
  49:20 50:23
**went** 26:24
**were** 13:3,4 19:15 21:12
  21:13 22:17 26:6,25,25
  29:16,16 31:15 33:23
  38:5 39:11,25 44:15
  43:23 46:17 47:15 53:4
**weren't** 23:15 25:19
**We'll** 9:11 44:20 45:21
**we're** 28:1 45:12
**whole** 12:21 19:11 28:3
  31:19 41:18 49:1 51:4
  51:23 52:12
**wholesale** 40:9,10
**willful** 43:17 44:2
**willfulness** 45:1
**win** 6:3
**Wisconsin** 51:6
**wish** 20:18
**withdrew** 7:3
**withholding** 49:17
**witnesses** 5:4 10:19 19:7
**wondering** 13:12
**word** 38:18
**words** 6:1 11:8 45:19
  47:24
**work** 24:18 27:18 49:25
  50:1,2
**works** 5:15 19:24 21:1,8
  29:24 31:13 49:22
**world** 7:21 30:14,17

**worried** 28:2,4
**wouldn't** 9:17,17 30:9
  31:25
**writing** 45:6,11
**written** 13:3,4
**wrong** 8:17 13:20 22:25
  23:16,18 35:14 36:24
**wrongful** 37:4
**www.depo.com** 1:22

**X**

**X** 3:1

**Y**

**Yeah** 27:21 32:20 41:13
  43:20,24
**year** 20:11 51:8,9
**York** 51:7

**1**

**1** 9:9 25:20
**10** 14:22
**100** 4:24
**102** 4:24 15:5 46:7,11
**1046** 10:20
**1047** 10:20
**106** 9:2 19:23,23
**1064** 10:20
**112** 21:20
**113** 21:20
**117** 7:19 10:7
**12142** 1:24
**13** 1:16 4:4
**14.2** 18:17
**16-16832** 1:6
**16-16905** 1:7
**162** 46:20

**2**

**2** 8:3,4 9:9 13:25,25 25:19
**2-A** 45:5
**2.1** 11:15 18:23
**2.3** 11:3
**20** 3:4 34:17
**200** 33:3
**20005** 2:10
**2017** 1:16 4:4 53:12
**202** 2:10
**24** 14:19
**288-3376** 1:22

**3**

**3** 9:9 31:2
**3000** 2:14
**31st** 51:23
**32** 48:23
**35** 10:7
**36** 48:23
**393-8200** 2:15

**4**

**4** 3:3
**415** 2:15
**44** 3:3

Atkinson-Baker Court Reporters
www.depo.com

**49** 51:8

---
**5**

**50** 12:12 51:1
**50(a)** 47:4,13
**52** 48:19
**547** 14:21 16:5 34:3
**548** 12:5 15:3
**555** 2:14

---
**6**

**6** 14:22
**620** 47:1
**65** 10:20
**655** 2:9

---
**7**

**7** 18:20
**71** 15:6 46:7

---
**8**

**800** 1:22
**869** 48:22
**879-5000** 2:10

---
**9**

**9** 16:5
**924** 10:19
**93** 29:23,24 30:1
**94105** 2:15

Oral Argument
July 13, 2017