1   BOIES, SCHILLER & FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone: (702) 382-7300
    Facsimile: (702) 382-2755
4   rpocker@bsfllp.com

5   BOIES SCHILLER FLEXNER LLP
    WILLIAM ISAACSON (*pro hac vice*)
6   KAREN DUNN (*pro hac vice*)
    1401 New York Avenue, NW, 11th Floor
7   Washington, DC 20015
    Telephone: (202) 237-2727
8   Facsimile: (202) 237-6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES SCHILLER & FLEXNER LLP
11  STEVEN C. HOLTZMAN (*pro hac vice*)
    BEKO O. REBLITZ-RICHARDSON (*pro hac vice*)
12  1999 Harrison Street, Suite 900
    Oakland, CA 94612
13  Telephone: (510) 874-1000
    Facsimile: (510) 874-1460
14  sholtzman@bsfllp.com
    brichardson@bsfllp.com

    MORGAN, LEWIS & BOCKIUS LLP
    THOMAS S. HIXSON (*pro hac vice*)
    JOHN A. POLITO (*pro hac vice*)
    One Market, Spear Street Tower
    San Francisco, CA  94105
    Telephone:  415.442.1000
    Facsimile:  415.442.1001
    thomas.hixson@morganlewis.com
    john.polito@morganlewis.com

    DORIAN DALEY (*pro hac vice*)
    DEBORAH K. MILLER (*pro hac vice*)
    JAMES C. MAROULIS (*pro hac vice*)
    ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
    Redwood City, CA 94070
    Telephone:  650.506.4846
    Facsimile:  650.506.7114
    dorian.daley@oracle.com
    deborah.miller@oracle.com
    jim.maroulis@oracle.com

15  Attorneys for Plaintiffs
16  Oracle USA, Inc., Oracle America, Inc.,
    and Oracle International Corp.

17                   UNITED STATES DISTRICT COURT

18                        DISTRICT OF NEVADA

19  ORACLE USA, INC., a Colorado corporation;      Case No. 2:10-cv-0106-LRH-VCF
20  ORACLE AMERICA, INC., a Delaware
    corporation; and ORACLE INTERNATIONAL          **ORACLE'S REPLY IN SUPPORT OF
21  CORPORATION, a California corporation,          ITS RENEWED MOTION FOR
                                                    PERMANENT INJUNCTION
22              Plaintiffs,                          AGAINST DEFENDANT RIMINI
                                                    STREET, INC.**
23          v.

24  RIMINI STREET, INC., a Nevada corporation;
    and SETH RAVIN, an individual,
25
                Defendants.
26

27

28

1

**TABLE OF CONTENTS**

2

**Page(s)**

3

I.      INTRODUCTION ........................................................................................... 1

4

5

II.     RIMINI UNJUSTIFIABLY SEEKS TO MINIMIZE THE SCOPE OF ITS
        ADJUDICATED INFRINGEMENT ............................................................... 1

6

7

III.    THIS COURT SHOULD RE-ISSUE ITS COPYRIGHT INJUNCTION ........................ 3

8

        A.      Rimini's Irreparable Injury To Oracle's Goodwill And Reputation ..................... 3

9

10

        B.      Remedies Available At Law Are Inadequate .......................................... 6

11

        C.      The Balance Of Hardships Tips Strongly In Favor Of Oracle .............................. 7

12

13

        D.      Public Policy Favors Injunctive Relief Against Infringers Like Rimini ............... 8

14

        E.      Rimini's Claim That It Has Ceased Its Illegal Conduct Should Not Be
                Credited and Does Not Bar Injunctive Relief ........................................ 8

15

16

IV.     THE COPYRIGHT INJUNCTION IS FAIR AND REASONABLE .............................. 9

17

18

V.      CONCLUSION ............................................................................................. 12

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Apple Computer v. Franklin Computer Corp.*,
   714 F.2d 1240 (3d Cir. 1983)................................................................. 8

5

6

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011)................................................................. 4

7

*Apple Inc. v. Psystar Corp.*,
   673 F. Supp. 2d 943 (N.D. Cal. 2009) .................................................. 6

8

9

*Broadcast Music, Inc. v. Coco's Dev. Corp.*,
   No. 79-CV-391, 1981 WL 1364 (N.D.N.Y. Apr. 9, 1981) ...................... 5

10

11

*Broadcast Music, Inc. v. McDade & Sons, Inc.*,
   928 F. Supp. 2d 1120 (D. Ariz. 2013)................................................... 9

12

13

*Capitol Records, Inc. v. Thomas-Rasset*,
   692 F.3d 899 (8th Cir. 2012)................................................................. 8

14

*In re Cir. Breaker Litig.*,
   860 F. Supp. 1453 (C.D. Cal. 1994)...................................................... 5

15

16

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co., Ltd.*, Nos. CV 98-
   8218 NM (SHx), 99-4783 NM (SHx), 2003 WL 25778704 (C.D. Cal. Jan. 29,
   2003)  ..................................................................................................... 5

17

18

*D.C. Comics Inc. v. Mini Gift Shop*,
   912 F.2d 29 (2d Cir. 1990)................................................................... 5

19

20

*De Acosta v. Brown*,
   146 F.2d 408 (2d Cir. 1944)................................................................... 5

21

*Dolori Fabrics, Inc. v. Limited, Inc.*,
   662 F. Supp. 1347 (S.D.N.Y. 1987)...................................................... 5

22

23

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013)............................................................. 7

24

25

*eBay, Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................ 6

26

27

28

**TABLE OF AUTHORITIES**
(cont'd)

Page(s)

eBay Inc. v. MercExchange, L.L.C.,
  547 U.S. 388 (2006) ........................................................................... 3, 6, 8, 9

General Leaseways, Inc. v. Nat'l Truck Leasing Ass'n,
  744 F.2d 588 (7th Cir. 1984) ........................................................................... 7

Guidance Endodontics, LLC v. Dentsply Int'l, Inc.,
  633 F. Supp. 2d 1257 (D.N.M. 2008) ........................................................................... 7

Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.,
  82 F.3d 1533 (10th Cir. 1996) ........................................................................... 4

Jackson v. MPI Home Video,
  694 F. Supp. 483 (N.D. Ill. 1988) ........................................................................... 5

Labor Relations Div. of Constr. Indus., v. Teamsters Local 379,
  156 F.3d 13 (1st Cir. 1998) ........................................................................... 12

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................................... 7, 9

Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,
  874 F.3d 604 (9th Cir. 2017) ........................................................................... 10

Mytee Products, Inc. v. Harris Research, Inc.,
  439 F. App'x 882 (Fed. Cir. 2011) ........................................................................... 7

Oracle USA, Inc. v. Rimini Street, Inc.,
  879 F.3d 948 (9th Cir. 2018) ........................................................................... passim

Perfect 10, Inc. v. Google, Inc.,
  653 F.3d 976 (9th Cir. 2011) ........................................................................... 5

Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.,
  855 F. Supp. 1314 (D. Mass 1994) ........................................................................... 5

Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,
  944 F.2d 597 (9th Cir. 1991) ........................................................................... 4

Teller v. Dogge,
  No. 2:12-CV-591, 2014 WL 4929413 (D. Nev. Sept. 30, 2014) ........................................................................... 7

Teutscher v. Woodson,
  835 F.3d 936 (9th Cir. 2016) ........................................................................... 6

1

## TABLE OF AUTHORITIES
### (cont'd)

2

3
Page(s)

4

*United States v. Ben Zvi*,
   242 F.3d 89 (2d Cir. 2001)...................................................................... 9

5

*United States v. Lummi Indian Tribe*,
6
   235 F.3d 443 (9th Cir. 2000).................................................................. 2

7
*United States v. Thrasher*,
   483 F.3d 977 (9th Cir. 2007)............................................................... 1, 2
8

9
*Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*
   106 F.3d 894 (9th Cir. 1997).................................................................. 5

10
*WPIX, Inc. v. ivi, Inc.*,
11
   691 F.3d 275 (2d Cir. 2012).................................................................. 8

12
**Statutes**

13
17 U.S.C. § 102 ...................................................................................... 12

14
17 U.S.C. § 502(a) .................................................................................. 6

15
17 U.S.C. § 504(b) .................................................................................. 7

16

**Other Authorities**
17
11A Wright et al., *Federal Practice and Procedure* § 2956 (2013) ........................... 12
18

19

20

21

22

23

24

25

26

27

28

1    I.      **INTRODUCTION**

2             Rimini's Opposition to Oracle's Renewed Motion for a Permanent Injunction offers no

3    new facts or law to justify a departure from this Court's prior entry of a copyright injunction based

4    on Rimini's liability for copyright infringement, now affirmed by the Ninth Circuit.  Instead,

5    Rimini incorrectly claims that the Ninth Circuit somehow narrowed the scope of Rimini's conduct

6    that it found to be infringing.  To the contrary, the Ninth Circuit affirmed Rimini's liability for

7    infringement on *all* of Oracle's copyright claims and remanded for the limited purpose of

8    determining whether an injunction should issue on Oracle's copyright claims alone.  *Oracle USA,*

9    *Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 953, 964 (9th Cir. 2018).  The doctrines of rule of

10   mandate and law of the case leave no room to revisit this Court's and the jury's liability

11   determinations—much less shrink them in the manner Rimini suggests.  Rimini's implausibly

12   narrow reading of the Ninth Circuit's opinion indicates, once again, that Rimini refuses to

13   acknowledge its own wrongdoing, underscoring the need for injunctive relief.

14            This Court's prior reasoning, bolstered by the Ninth Circuit's affirmance, compels reentry

15   of the same copyright injunction.  Rimini's Opposition is based on a misreading of the Ninth

16   Circuit's opinion, a misunderstanding of appellate procedure, and a rehashing of the same

17   arguments that this Court considered, and correctly rejected, in granting Oracle injunctive relief.

18   II.     **RIMINI UNJUSTIFIABLY SEEKS TO MINIMIZE THE SCOPE OF ITS**
             **ADJUDICATED INFRINGEMENT**
19

20            Rimini's Opposition seeks to rewrite the history of its massive infringement of Oracle's

21   copyrights.  No legal authority, however, supports its revisionist claim that the "only acts that have

22   already been determined to be unlawful are those identified in the Ninth Circuit's opinion."  Opp'n

23   at 15:21–22.  This is incorrect and violates the rule of mandate, under which this Court may

24   appropriately base injunctive relief on any findings and rulings not foreclosed by the court of

25   appeals' decision.  "When a case has been once decided by this court on appeal, and remanded to

26   the district court, whatever was before this court, and disposed of by its decree, is considered as

27   finally settled."  *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (quotations and

28   alterations omitted).  While the Ninth Circuit's decision specifically discusses only those aspects of

1    infringement sufficient to affirm the judgment, nothing in the decision forecloses any of this

2    Court's rulings or the jury's verdict on infringement.  Rimini's efforts to revisit the prior

3    infringement rulings and verdict, however, are foreclosed.  "[A] district court could not revisit its

4    already final determinations unless the mandate allowed it."  *Id.* at 982 (quotations omitted).

5         Here, the Ninth Circuit, without condition, "affirm[ed] the judgment with respect to the

6    copyright infringement claims."  *Oracle*, 879 F.3d at 953.  Its mandate in no way narrows this

7    Court's rulings or the jury's verdict on copyright infringement.  Rather, under law of the case

8    principles, the Ninth Circuit's mandate precludes revisiting the copyright infringement

9    determinations that this Court found in twice granting Oracle summary judgment, that the jury

10   found after a month-long trial, and that the Ninth Circuit has now affirmed.

11        *First*, Rimini wrongly asserts that "enjoining cross use [of PeopleSoft] would clearly

12   extend beyond the scope of conduct that has been adjudicated."  Opp'n at 20:22–23.  Not so.  This

13   Court held at summary judgment that supporting multiple PeopleSoft customers (and, specifically,

14   Rimini's use of PeopleSoft licensed to City of Flint to develop and test software updates for

15   customers other than City of Flint) was not permitted.  ECF No. 474 at 13.  Not one single aspect

16   of Rimini's copyright liability was reversed by the Ninth Circuit on appeal—including this Court's

17   PeopleSoft cross-use adjudication.  *Oracle*, 879 F.3d at 960 n.6.  This Court has determined that

18   Rimini's cross-use of PeopleSoft is copyright infringement, and that determination is law of the

19   case.  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) ("[A] court is

20   generally precluded from reconsidering an issue previously decided by the same court, or a higher

21   court in the identical case.") (quotations omitted).  Rimini's arguments to the contrary not only

22   violate these legal principles, but are also a transparent attempt to rewrite the scope of Oracle's

23   PeopleSoft licenses, which the Ninth Circuit did not alter.

24        *Second*, Rimini argues that "this case focused on the *reproduction* right," Opp'n at 19:18–

25   19 (emphasis in original), ignoring *the trial*, where Oracle proved through abundant and largely

26   undisputed evidence that Rimini created unlicensed derivative works based upon Oracle software

27   and support materials and also violated Oracle's distribution rights.  *See* Section IV, *infra*.  This

28   Court instructed the jury as to derivative works and distribution (ECF No. 880) (Instructions 21 &

REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

1    24); the jury found liability on all of Oracle's copyright claims (ECF No. 896), including for

2    distributing and making derivative works; and the Ninth Circuit affirmed the same.  This Court

3    should once again enjoin that infringing misconduct.

4          *Third*, as to JD Edwards and Siebel, Rimini incorrectly asserts that "the only infringing

5    form of cross use upheld by the Ninth Circuit was work Rimini performed under color of an

6    existing licensee *for future or unknown clients*."  Opp'n at 22:3–4 (emphasis added).  This

7    argument is based on misleading citations to the Ninth Circuit's specific discussion of how

8    "Rimini dismisses evidence" of cross-use for "future customers."  *Oracle*, 879 F.3d at 957.  Rimini

9    ignores that the Ninth Circuit broadly defined "cross use" as "the creation of development

10   environments, under color of a license of one customer, to support *other* customers," including

11   those who "hold licenses" and "even for licensees who have yet to become customers of Rimini."

12   *Oracle*, 879 F.3d at 956 (emphasis in original).  *Any* act of cross-use is copyright infringement.

13         *Fourth*, Rimini makes the false claim that the Ninth Circuit has "already disapproved" of

14   Oracle's requested copyright injunction.  Opp'n at 2:19–20, 11:18–19.  The Ninth Circuit's

15   opinion does no such thing.  The Ninth Circuit "express[ed] no view on the propriety or scope of

16   any injunctive relief" on remand, ruling: "we do not know how the district court would weigh the

17   *eBay* factors with respect to the copyright claims alone."  *Oracle*, 879 F.3d at 964.

18         In sum, and contrary to Rimini's repeated attempts to show otherwise, the factual record

19   supporting the copyright injunction has not changed, the law concerning permanent injunctions in

20   copyright cases has not changed, and the scope of Rimini's adjudicated infringement has not

21   changed since this Court first entered its copyright injunction.  The only thing that has changed is

22   that the Ninth Circuit has conclusively affirmed Rimini's liability for massive copyright

23   infringement.  Reissuance of the copyright injunction is therefore warranted.

24   **III.    THIS COURT SHOULD RE-ISSUE ITS COPYRIGHT INJUNCTION**

25         As established in Oracle's Motion and this Court's prior ruling (ECF No. 1049), each of the

26   factors in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) supports injunctive relief.

27         **A.    Rimini's Irreparable Injury To Oracle's Goodwill And Reputation**

28         Oracle's Motion established that Rimini's copyright infringement caused harm to Oracle's

1    business reputation and goodwill, both of which are canonical examples of irreparable harm.

2    *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1154 (9th Cir. 2011) ("*Apple II*"); *Rent-A-Center, Inc.*

3    *v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  Rimini does not

4    dispute that injuries to goodwill and business reputation are irreparable harm or that Oracle

5    suffered them.  Instead, Rimini disputes causation, alleges inconsistencies, and repeats its legally

6    unsupported claim that "innocent" infringement precludes an injunction.  Each argument fails.

7        ***Oracle Has Shown Causal Nexus***.  Rimini's causation argument (Opp'n at 11:21–12:1)

8    ignores this Court's holding that Rimini's "infringement enabled it to rapidly build its business and

9    gain market share against Oracle … by offering cut-rate prices on its support services for Oracle

10   software." ECF No. 1049 at 5:24–6:2.  Notably, the Court reached this conclusion ***without***

11   ***reference*** to Rimini's mass-downloading.  Supporting this finding, Oracle's CEO Safra Catz

12   testified that Rimini's cut-rate prices broke "the bonds and the trust that we have with our

13   customers" and made customers "wonder[] whether we've treated them fairly."  Tr. 935:11-17.

14   Oracle experts Edward Yourdon and Elizabeth Dean also supported Ms. Catz's testimony in

15   opining that Rimini's infringement damaged the bonds between Oracle and its customers.  Tr.

16   1701:4-22 (Yourdon); Tr. 1795:23-1796:13, 1920:17-1921:5, 1940:4-1941:3, 1941:13-1942:6

17   (Dean).  Rimini's cherry-picking of customer statements fails to negate Ms. Catz's credible

18   testimony.  *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc*., 82 F.3d 1533, 1547 (10th Cir. 1996)

19   ("A corporate officer familiar with company history, financial statements, and customer relations

20   may offer opinion testimony as to the extent the company sustains damages to its goodwill.").

21        Rather than address this basis for the Court's prior ruling, Rimini rehashes the same types

22   of testimony and arguments that the Court previously considered and rejected.  *Compare* Opp'n at

23   12:15–14:1 *with* ECF No. 906 at 12:22–13:24.  For example, Rimini mischaracterizes the

24   testimony of CEO Seth Ravin, who admitted that Rimini's "business focuses on the most profitable

25   component of software business, annual maintenance fees, without any of the capital investment

26   required to develop software"—namely, by infringing Oracle's copyrights. Ex. J at 444:24–445:6.

27   Rimini also argues "Ms. Catz did *not* testify that Oracle's purported loss in goodwill was 'directly'

28   tied to *specific infringing features* of Rimini's practices, as is required under the law."  Opp'n at

REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

1    12:24–26 (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)) (emphasis

2    in original).  But the word "directly" appears nowhere in *Perfect 10*.  Rather, the Ninth Circuit

3    applied a standard of "sufficient causal connection," which is amply met here.  This Court found

4    that Rimini's massive copyright infringement allowed Rimini to offer cut rate prices on support of

5    Oracle's software (ECF No. 1049 at 5:23–6:13), which, as Ms. Catz explained, broke the bonds of

6    trust between Oracle and its customers.  Tr. 935:11-17.

7          ***Innocent Infringement Does Not Prevent an Injunction***.  Rimini once again wrongly

8    argues that "[t]he jury's finding that Rimini's copyright infringement was 'innocent,' precludes, as

9    a matter of law and equity, any injunction at all."  Opp'n at 16:18–19.  This Court has already

10   correctly rejected the argument because "there is no legal precedent to support Rimini's position."

11   ECF No. 1094 at 3:16–19.  To use its own words, Rimini has now "had a half-dozen chances to

12   cite even a single case" establishing that innocent copyright infringers *cannot* be enjoined.  Opp'n

13   at 10:13.  Not one has surfaced.  Instead, as Rimini's Opposition acknowledges, courts have

14   entered injunctions against innocent infringers in many contexts.  Opp'n at 10:14–24; *D.C. Comics

15   Inc. v. Mini Gift Shop*, 912 F.2d 29, 36 (2d Cir. 1990); *De Acosta v. Brown*, 146 F.2d 408, 410 (2d

16   Cir. 1944); *Broadcast Music, Inc. v. Coco's Dev. Corp.*, 1981 WL 1364, at *2 (N.D.N.Y. 1981);

17   *see also De Acosta*, 146 F.2d at 414 (Hand, J., dissenting on other grounds); *Jackson v. MPI Home

18   Video*, 694 F. Supp. 483, 492–93 (N.D. Ill. 1988).  Rimini cites the same cases that failed to

19   establish its point previously.  Those cases are no more relevant now, as they largely involve

20   Lanham Act discussions of innocent trademark infringement where no harm had been established.[1]

21          Rimini also disregards the plain wording of the Copyright Act, which broadly grants

22   _____

23   [1] *In re Cir. Breaker Litig.*, 860 F. Supp. 1453, 1455 (C.D. Cal. 1994) ("The Lanham Act empowers
     courts to issue injunctions 'to prevent the violation' of the registrant's rights … not to punish
     innocent infringers."), *aff'd sub nom. Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec.

24   Supply Inc.*, 106 F.3d 894 (9th Cir. 1997); *Contessa Food Prods., Inc. v. Lockpur Fish Processing
     Co., Ltd.*, Nos. CV 98-8218 NM (SHx), 99-4783 NM (SHx), 2003 WL 25778704, at *7 (C.D. Cal.

25   Jan. 29, 2003) (quoting *In re Cir. Breaker Litig.*).  As for *Dolori Fabrics, Inc. v. Limited, Inc.*, 662
     F. Supp. 1347 (S.D.N.Y. 1987), Rimini omits that the court denied injunctive relief where "an

26   innocent infringer … ceased its infringement *immediately upon receiving notice*" that the work was
     copyrighted.  *Id.* at 1358 (emphasis added).  In *Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.*, 855

27   F. Supp. 1314 (D. Mass 1994), the "good faith" Rimini cites related to indirect liability absent
     direct infringement.  *Id.* at 1323–24, 1334–35.  And though *Contessa Food* included copyright

28   claims, Rimini quotes only trademark-law discussions.  The cited passage is irrelevant.

1  federal courts the authority to issue permanent injunctions.[2]  17 U.S.C. § 502(a).  Congress could

2  have, but did not, draft this statute to limit a court's authority to issue injunctions *only* in cases

3  where infringement was found to be intentional.  This Court should, once again, reject Rimini's

4  attempt to alter this statutory scheme.  And Rimini's invocation of the Seventh Amendment

5  similarly fails.  The Reexamination Clause comes into play only when a finding *necessary* to

6  support equitable relief has been made by the jury.  *Teutscher v. Woodson*, 835 F.3d 936, 951 (9th

7  Cir. 2016).  Here, nothing in the *eBay* calculus requires a determination of Rimini's *mens rea* when

8  it infringed Oracle's copyrights.

9      **B.     Remedies Available At Law Are Inadequate**

10      Rimini's Opposition does not dispute that harms to goodwill and market reputation are

11  unquantifiable, and thus cannot be compensated solely by remedies at law.  *eBay, Inc. v. Bidder's*

12  *Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000); *Apple Inc. v. Psystar Corp.*, 673 F. Supp.

13  2d 943, 949–50 (N.D. Cal. 2009) ("*Apple I*") aff'd, *Apple II*, 658 F.3d at 1162; *see also* ECF No.

14  1049 at 6:25–7:1.  Instead, Rimini argues that Oracle relies on the same evidence that the "jury

15  rejected" for Oracle's claim of lost profits, and that "Oracle received a complete remedy at law."

16  Opp'n at 14:16–17, 15:4–5.  Rimini is wrong on both counts.

17      *First*, Rimini fails to substantiate its claim that Oracle received a complete remedy at law.

18  In fact, the jury's award does not quantify or compensate Oracle for the harm to Oracle's goodwill

19  and reputation.  The authority Rimini cites merely establishes that monetary damages can

20  compensate a plaintiff for any goodwill a *defendant* garnered by infringement.  *See* Opp'n at 15:7

21  (*citing Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996)) (reasonable

22  royalty "compensates [plaintiff] for any goodwill [defendant] garnered by infringement").  This

23  has nothing to do with the harm to *Oracle's* goodwill and reputation.  "[M]ere damages will not

24  compensate for [Rimini's] increasing share of the market, a market which [Oracle] competes in,

25  and a market that [Oracle] has in part created with its investment" in copyrighted software.

26  _____

27  [2] Rimini's claim that "the reversal of the hacking judgment necessarily guts Oracle's claim of irreparable injury," Opp'n at 9:8–9, is a logical fallacy.  That this Court previously entered one injunction for copyright infringement and one for computer hacking in no way precludes re-

28  issuance of the copyright injunction after the Ninth Circuit affirmed Rimini's infringement.

1  *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

2      *Second*, lost profits or lost future sales are not a prerequisite to a permanent injunction.

3  *Mytee Products, Inc. v. Harris Research, Inc.*, 439 F. App'x 882, 887 (Fed. Cir. 2011) ("We have

4  never held, however, that in order to establish irreparable harm a patentee must demonstrate that it

5  is entitled to lost profits").  Any difficulty in proving lost profits weighs in *favor* of an injunction.

6  *General Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 591 (7th Cir. 1984);

7  *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 633 F. Supp. 2d 1257, 1271 (D.N.M. 2008).

8      *Finally*, the jury did not "reject" Oracle's claim of lost profits.  The jury elected a "fair

9  market license" as an appropriate measure of damages for Rimini's infringement.  ECF No. 896 at

10  3.  Rimini's "rejection" argument, which this Court previously heard and rejected, overlooks that

11  copyright damages are "actual damages," and the various methods—"fair market license" and lost

12  profits alike—are means of reaching that single result.  17 U.S.C. § 504(b) ("The copyright owner

13  is entitled to recover the actual damages suffered by him or her as a result of the infringement").

14  There are many reasons the jury could have arrived at its damages award without "rejecting"

15  Oracle's lost profits methodology—including identifying a difficulty of calculation.  ECF No. 880

16  at 39 (Instruction 31), *id.* at 37 (Instruction 29) (jury could award lost profits only if Oracle proved

17  "the amount" of the lost profits; "[y]ou may not guess the amount … to calculate lost profits.").

18      **C.    The Balance Of Hardships Tips Strongly In Favor Of Oracle**

19      Rimini's Opposition fails to articulate any legitimate business purpose for permitting

20  Rimini to continue infringing Oracle's copyrights, which at this point would plainly be willful.

21  The balance of hardships tips indisputably in Oracle's favor.  *Metro-Goldwyn-Mayer Studios, Inc.*

22  *v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007); *Teller v. Dogge*, No. 2:12-CV-591,

23  2014 WL 4929413, at *5 (D. Nev. Sept. 30, 2014).

24      Rimini's allegations of harm are defeated by its own press release—issued the day after the

25  Court entered the same copyright injunction that Oracle seeks here—assuring the public that "[t]he

26  injunction does not prohibit Rimini Street's ongoing or future provision of support for [Oracle's

27  PeopleSoft, JD Edwards, Siebel, and Database] product lines" but merely "constrains" how Rimini

28  provides that support.  ECF No. 1073-3.  Rimini's "disingenuous" doublespeak (ECF No. 1094 at

1   4:6)—telling the Court one thing and the public something else—further supports injunctive relief.

2       Rimini also argues that "[t]here is absolutely no evidence of any harm to Oracle from

3   Rimini's local-hosting of PeopleSoft and future-client cross-use for JD Edwards and Siebel."

4   Opp'n at 16:1–3.  Rimini's incorrect assertions reflect an unreasonably narrow reading of the Ninth

5   Circuit's opinion, signaling Rimini's apparent intent to continue infringing Oracle's copyrights.

6   Rimini wants to jettison this Court's rulings and the jury's verdict and cabin its liability to only

7   those issues that (1) Rimini chose to appeal, (2) the Ninth Circuit decided were necessary to reach,

8   and (3) Rimini did not prevail upon. Even then, Rimini's interpretation of its "unlawful conduct" is

9   so cramped as to be divorced from the actual text of the Ninth Circuit's decision.  Rimini appears

10  to be doing everything it can to preserve its ability to infringe Oracle's copyrights in the future.

11  Reissuing the copyright injunction is warranted to stop Rimini's perpetual misconduct.

12      **D.     Public Policy Favors Injunctive Relief Against Infringers Like Rimini**

13      "Inadequate protections for copyright owners can threaten the very store of knowledge to

14  be accessed."  *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).  Because protection of

15  copyrights is "a vindication of the public interest," the fourth *eBay* factor also favors injunctive

16  relief.  *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 909 (8th Cir. 2012); *see also Apple*

17  *Computer v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

18      Rimini argues that an "overbroad" injunction threatens an undefined enterprise software

19  support market.  Opp'n at 17:21–18:2.  As explained below, the proposed injunction is not

20  overbroad; it is fair and reasonable.  Moreover, Rimini "has repeatedly represented to the court that

21  its current business model is not based on its prior infringing conduct."  ECF No. 1049 at 8:20–21.

22  Assuming so, Rimini has nothing to fear from reissuance of the proposed injunction, particularly in

23  light of its public statements discussed above.  ECF No. 1049 at 8:21–23.

24      **E.     Rimini's Claim That It Has Ceased Its Illegal Conduct Should Not Be
          Credited and Does Not Bar Injunctive Relief**
25

26      Rimini's claim that it has ceased its infringing conduct ignores law cited by Oracle that

27  voluntary cessation does not weigh against a permanent injunction, as well as facts showing that

28  Rimini has a history of lying about its practices.  "A private party's discontinuation of unlawful

1  conduct does not make the dispute moot, however.  An injunction remains appropriate to ensure

2  that the misconduct does not recur as soon as the case ends." *Grokster*, 518 F. Supp. 2d at 1222

3  (quotations omitted); *see also Broadcast Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d

4  1120, 1136 (D. Ariz. 2013).  The copyright injunction should issue now.  Each of the *eBay* factors

5  supports Oracle's entitlement to injunctive relief in *this case*.  Rimini's supposed change in

6  practice only after a finding of infringement supports the inference that Rimini will continue to

7  infringe absent an injunction.  *See* Motion at 20:21–21:9 (citing cases).  This Court should not wait

8  for the completion of *Rimini II* (in which a trial date has not yet been set).

9  **IV.    THE COPYRIGHT INJUNCTION IS FAIR AND REASONABLE**

10       The Court's prior copyright injunction remains fair and reasonable and should therefore be

11  reentered.  ECF No. 1117-1.  Rimini's objections lack merit.

12       ***Rimini Must Not Be Permitted to Prepare or Distribute Derivative Works***.  Oracle proved

13  at trial that Rimini created and distributed infringing derivative works to customers.[3]  Rimini thus

14  should be enjoined from infringing Oracle's distribution and derivative work rights.  ECF No.

15  1117-1 at ¶¶ 2–8, 10–12, 15, 16.  The jury was instructed as to distribution and derivative works

16  (ECF No. 880) (Instructions 21 & 24), and found liability on all of Oracle's copyright claims (ECF

17  No. 896).  Rimini complains the Ninth Circuit did not "even mention[] distribution or derivative

18  works."  Opp'n at 19:22.  But Rimini elected not to appeal those aspects of the jury instructions or

19  verdict; Rimini's failure to do so does not make them any less part of the Ninth Circuit's mandate.

20  *See United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("[W]here an issue was ripe for review

21  at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits

22  the district court from reopening the issue on remand unless the mandate can reasonably be

23  understood as permitting it to do so.").  Rimini also asserts that "the court of appeals affirmatively

24  acknowledged that the licenses at issue permit 'software … [to] be tested and *modified* to fit with

25  *bespoke customizations* before being put to actual use.'"  Opp'n at 19:23–20:1 (quoting *Oracle*,

26  879 F.3d at 955) (Rimini's emphasis).  That is not true.  Rimini quotes from the "Background"

27  [3] *See, e.g.*, Tr. 202:15-17, 200:4-201:5, 186:12-16 (Davis); Tr. 2231:8-2232:12 (Benge); PF 27; Tr.
   665:23-666:20, 976:1-5 (Ravin); PTX 5429; Tr. 213:3-23 (Davis) (discussing PTX 5429); Tr.
28  1659:24-1661:4 (Grigsby); PTX 6001; *see also* ECF No. 907 at 2:7–3:16.

1   section of the Ninth Circuit's opinion that discusses "enterprise software" generally and has

2   nothing to do with the actual provisions of Oracle's licenses. *Oracle*, 879 F.3d at 955.

3          ***Re-entry of the Same PeopleSoft Prohibitions Is Warranted***.  Rimini cites no authority to

4   support its argument that this Court's cross-use summary judgment adjudication as to Oracle's

5   PeopleSoft is no longer law of the case.  Nothing in the Ninth Circuit's decision modifies or

6   reverses this Court's PeopleSoft cross-use adjudication, which is therefore part of the mandate.

7   That the Ninth Circuit found it unnecessary to reach this issue in no way means that Rimini won.

8   The "cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is

9   necessary not to decide more." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms,*

10  *Inc.*, 874 F.3d 604, 617 n.13 (9th Cir. 2017) (quotations omitted).  The Court therefore should

11  reenter the same PeopleSoft prohibitions.  ECF No. 1117-1 at ¶¶ 3–6.

12         This Court also determined, as a matter of law, that the plain language of the PeopleSoft

13  licenses "prohibit[s] Rimini Street from copying or preparing derivative works from PeopleSoft

14  software other than to support the *specific licensee's* own internal data processing operations on the

15  *licensee's own computer systems*."  ECF 880 (Instruction 24) (emphasis added).  The Ninth Circuit

16  agreed: "It was not only sensible but also necessary for the district court to read a requirement of

17  'control' into the definition of '[a licensee's] facilities.'"  *Oracle*, 879 F.3d at 960 (alterations in

18  original).  Rimini argues "the Ninth Circuit limited copying to servers over which the licensee

19  retains actual or constructive control."  Opp'n at 20:14–15.  Once again, this is wrong.  The Ninth

20  Circuit did not change the scope of Oracle's licenses or this Court's correct interpretation of them.

21  The appellate court merely noted Rimini's failure of proof: "Indeed, Rimini made no showing that

22  its customers had even constructive control of [Rimini's] servers."  *Oracle*, 879 F.3d at 960.

23         ***JD Edwards and Siebel Prohibitions***.  As shown in Section II, *supra*, Rimini's narrow

24  interpretation of cross-use should be rejected.  The same is true of Rimini's objections to the

25  "'copy[ing]' and 'access[ing]' JD Edwards and Siebel source code" prohibitions in the proposed

26  injunction.  Opp'n at 21:17–18.  This Court found that the plain language of a JD Edwards license

27  at issue "d[id] not permit Rimini to access the software's source code to carry out development and

28  testing of software updates."  ECF No. 474 at 22.  Oracle introduced evidence at trial that Rimini

1  did access and modify JD Edwards source code.  *See* PTX 195 at 6, 14; Tr. 1657:5-1659:22.  Mr.

2  Ravin testified concerning Rimini's delivery of Siebel fixes through modification of the Siebel

3  repository, Tr. 696:21-698:1, which constitutes access to source code.  *See* ECF No. 907 at 17:15–

4  28 (summarizing this evidence).  The jury was instructed, without objection from Rimini, that

5  Rimini could not "access the software's source code to carry out development and testing of

6  software updates" for both JD Edwards and Siebel.  *See* ECF No. 869 at 33; Tr. 3228:3-3248:5.

7        Enforcing these prohibitions is not "tantamount to enjoining Rimini from reading a

8  copyrighted book."  Opp'n at 21:25.  This Court has already rejected Rimini's argument that

9  enforcement of Oracle's license provisions is an impermissible use of copyright law.  *Rimini II*,

10  Order re Mot. to Strike, ECF No. 90 at 6.  Even Rimini conceded that it creates new copies in the

11  form of RAM copies "every time it start[s] up or r[u]n[s] Oracle software."  PF 49 (undisputed).

12        Rimini's objections to the location restrictions also lack merit.  Almost all of the licenses at

13  issue for JD Edwards and Siebel contain some language limiting or forbidding off-site copies of

14  the software.  PTX 5466.  Oracle's copyright injunction uses the same "specific licensee's own

15  computer systems" language to describe the permitted locations of the three software products and

16  support materials for consistency and clarity.  The Court should reenter these prohibitions.

17        Finally, Rimini misleadingly quotes from Ninth Circuit's "Background" description of

18  "enterprise software" to argue that "the Ninth Circuit recognized that Rimini may create testing

19  and development environments for licensees of both product lines."  Opp'n at 20:25–26.  That

20  general description did not change the scope of the licenses at issue or confer any new rights on

21  Rimini.  *Oracle*, 879 F.3d at 955–56.  Nor did the Ninth Circuit give Rimini a blank check to

22  infringe in stating that the construction of Oracle's licenses reflected in the jury instructions

23  "would not preclude Rimini from creating development environments for a licensee for various

24  purposes *after* that licensee has become a customer of Rimini."  *Oracle*, 879 F.3d at 958 (emphasis

25  in original).  That statement (relating to license construction, not the proper scope of an injunction)

26  can only be read in light of this Court's now-affirmed constructions of JD Edwards and Siebel

27  license agreements, which are captured in the copyright injunction.  ECF No. 1117-1 at ¶¶ 7–15.

28        ***Oracle Database***.  This Court held that the Developer License did not allow Rimini to use

1   Oracle Database for commercial purposes (ECF No. 476 at 11), and that no customer's Oracle

2   License and Service Agreement permitted Rimini to copy Oracle Database, (*id.* at 14, 15).  Rimini

3   attempted to appeal these rulings but the Ninth Circuit found them "waived."  *Oracle*, 879 F.3d at

4   960.  The same Oracle Database prohibitions as before should be reentered.  ECF No. 1117-1 at

5   ¶ 16; *see Labor Relations Div. of Constr. Indus., v. Teamsters Local 379*, 156 F.3d 13, 17 (1st Cir.

6   1998) (arguments waived on appeal cannot be raised on remand).

7        *Oracle's Definition of Cross-Use in Terms of Benefit to Another Licensee is Appropriate*.

8   Oracle's expert, Dr. Randall Davis, defined cross-use to mean "using one customer's software for

9   the benefit of another customer."  Tr. 191:21-192:9.  This simple definition provides clear

10   guidance, and is consistent with this Court's and the Ninth Circuit's guidance on cross-use.  Rimini

11   fears this may somehow restrain "human thought or ingenuity."  Opp'n at 23:5–6 (citing 17 U.S.C.

12   § 102(b)).  But Rimini has affirmatively waived its 17 U.S.C. § 102 defense.  ECF No. 401 at ¶ 11.

13        *Licensee's "Internal Data Processing Operations."*  Rimini's feigned ignorance about the

14   meaning of the phrase "internal data processing operations" lacks merit.  ECF No. 907 at 5:4–25,

15   16:11–20.  PeopleSoft licenses that Rimini stipulated to apply uniformly to its customers using

16   PeopleSoft software contain this exact language.  PTX 5328; Tr. 809:1-810:6 (Ravin); 1112:22-

17   1113:2 (Allison).  Both the Court and Oracle's witness, Mr. Rich Allison, provided extensive

18   guidance about the meaning of this phrase.  ECF No. 474 at 13; Tr. 1042:1-13 (Allison), Tr.

19   1043:2-13, Tr. 1043:14-19.  Rimini suggests "this contractual phrase is at issue in *Rimini II."*

20   Opp'n at 23:18.  But tellingly, Rimini never explains how or why its meaning is not settled.

21        *Rimini's Remaining Objections Lack Merit*.  "[T]here is no dispute that, absent an

22   applicable license, Rimini's accused acts violated the exclusive right Oracle enjoys as owner of the

23   software copyright[s]."  *Oracle*, 879 F.3d at 954.  Affirmation of a valid customer license is

24   reasonable (ECF No. 1117-1 ¶ 2(a)).  And "[w]hen an injunction has issued against a corporation, a

25   subsidiary corporation or an independent corporation acting in active concert also may be bound

26   by the order."  11A Wright et al., *Federal Practice and Procedure* § 2956, at 404 (2013).

27   **V.    CONCLUSION**

28        Oracle respectfully requests that the copyright injunction be reentered in its entirety.

1

2

DATED:  April 11, 2018                    Morgan, Lewis & Bockius LLP

3

4                                         By:_____/s/ *John A. Polito*_____
                                                 John A. Polito
                                              Attorneys for Plaintiffs
5                                             Oracle USA, Inc.,
                                           Oracle America, Inc. and
6                                        Oracle International Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on the 11th day of April, 2018, I electronically transmitted the

3   foregoing ORACLE'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR

4   PERMANENT INJUNCTION AGAINST DEFENDANTS RIMINI STREET, INC. to the Clerk's

5   Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all

6   counsel in this matter; all counsel being registered to receive Electronic Filing.

7   DATED:  April 11, 2018              Morgan, Lewis & Bockius LLP

8

9                    By:      /s/ *John A. Polito*

10                       John A. Polito
                         Attorneys for Plaintiffs

11                       Oracle USA, Inc.,
                       Oracle America, Inc. and

12                       Oracle International Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28