GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

HOWARD & HOWARD PLLC
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wallen@howardandhoward.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Daniel F. Polsenberg (Nevada Bar No. 2376)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8200
dpolsenberg@lrrc.com

*Attorneys for Defendants Rimini Street, Inc. and Seth Ravin*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | **HEARING REQUESTED UNDER LOCAL RULE 54-14(f)** <br><br> Case No. 2:10-cv-0106-LRH-VCF <br><br> **DEFENDANTS' OPPOSITION TO ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................................. 5

    I.     The Ninth Circuit's Remand Requires the Court to "Reconsider" Its Decision Awarding Attorneys' Fees Based on Oracle's "More Limited Success" ................... 6

    II.     This Court Should Deny Oracle's Request for Attorneys' Fees in Its Entirety ........... 7

        A.     Application of the Fogerty Factors Requires Denial of Oracle's Motion ........ 7

        B.     Oracle's Failure to Provide Any Means for This Court to Apportion Attorneys' Fees Warrants Denial of the Renewed Motion ........................... 13

    III.     The Court Must at the Very Least Substantially Reduce Oracle's Proposed Award ....................................................................................................................... 14

        A.     Reductions Based on Limited Success .......................................................... 14

        B.     Oracle's Attorneys' Fees Are Capped as of August 24, 2015, the Date of Rimini's $100 Million Offer of Judgment ................................................. 20

        C.     Oracle's Attorneys' Hourly Rates Should Be Reduced to the Local Market Rate ................................................................................................... 22

        D.     Rimini Has Provided Information to Assist the Court in Its Calculations ..... 24

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Agrusa,*
   2016 WL 7665411 (C.D. Cal. July 19, 2016) ..................................................................11

*Allstate Ins. Co. v. Plambeck,*
   802 F.3d 665 (5th Cir. 2015) .........................................................................................19

*Am. Gen. Life & Accident Ins. Co. v. Wu,*
   2010 WL 117721 (C.D. Cal. Jan. 4, 2010) .....................................................................13

*Apple, Inc. v. Samsung Elecs. Co.,*
   2012 WL 5451411 (N.D. Cal. Nov. 7, 2012).................................................................23

*Baker v. Urban Outfitters, Inc.,*
   431 F. Supp. 2d 351 (S.D.N.Y. 2006)............................................................................18

*Bogan v. City of Boston,*
   489 F.3d 417 (1st Cir. 2007) ..........................................................................................22

*Camacho v. Bridgeport Fin., Inc.,*
   523 F.3d 973 (9th Cir. 2008)..........................................................................................23

*Castillo v. EarthLink Network, Inc.,*
   2007 WL 9706036 (C.D. Cal. Aug. 13, 2007)................................................................14

*Champion Produce, Inc. v. Ruby Robinson Co.,*
   342 F.3d 1016 (9th Cir. 2003).........................................................................................20

*Consol. Generator-Nevada v. Cummins Engine Co.,*
   114 Nev. 1304 (Nev. 1998)............................................................................................16

*Conway v. Licata,*
   144 F. Supp. 3d 212 (D. Mass. 2015) ............................................................................11

*Cummings v. Connell,*
   402 F.3d 936 (9th Cir. 2005)............................................................................................7

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC,*
   844 F.3d 79 (2d Cir. 2016).............................................................................................16

*Engrahm v. Cty. of Colusa,*
   2006 WL 3028416 (E.D. Cal. Oct. 24, 2006) .................................................................14

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,*
   122 F.3d 1211 (9th Cir. 1997)..................................................................5, 12, 15, 16, 17

*Ets-Hokin v. Skyy Spirits, Inc.,*
   323 F.3d 763 (9th Cir. 2003)....................................................................................7, 8, 10

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ...........................................................................................12, 14, 19

*Florentine Art Studio, Inc. v. Vedet K. Corp.*,
  891 F. Supp. 532 (C.D. Cal. 1995) ..................................................................................11

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) .....................................................................1, 4, 5, 12, 17, 18

*Fortgang v. Pereiras Architects Ubiquitous LLC*,
  2018 WL 1832184 (E.D.N.Y. Mar. 9, 2018) ..................................................................15

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ...............................................................................................9, 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................2, 13, 14, 17, 18, 19

*InvesSys, Inc. v. McGraw-Hill Cos.*,
  369 F.3d 16 (1st Cir. 2004) ..............................................................................................13

*Johnson v. Bay Bays Chicken & Waffles, LLC*,
  2017 WL 5952895 (S.D. Fla. Nov. 6, 2017).............................................................21, 22

*Jordan v. Multnomah Cty.*,
  815 F.2d 1258 (9th Cir. 1987) .........................................................................................23

*Jun-En Enter. v. Lin*,
  654 F. App'x 347 (9th Cir. 2016) ......................................................................................6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016) ...............................................................5, 8, 9, 10, 15, 18

*Lantz v. Kreider*,
  2010 WL 2609080 (D. Nev. June 25, 2010) ...................................................................20

*Lindsey v. Normet*,
  405 U.S. 56 (1972) ...........................................................................................................13

*Mahach-Watkins v. Depee*,
  593 F.3d 1054 (9th Cir. 2010) .........................................................................................19

*Marek v. Chesny*,
  473 U.S. 1 (1985) .............................................................................................................20

*Marryshow v. Flynn*,
  986 F.2d 689 (4th Cir. 1993)..............................................................................20, 21, 22

OPPOSITION TO MOTION FOR ATTORNEY'S FEES

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mattel, Inc. v. MGA Entm't, Inc.*,
   705 F.3d 1108 (9th Cir. 2013)................................................................12

*Matthew Bender & Co. v. W. Publ'g Co.*,
   240 F.3d 116 (2d Cir. 2001)................................................................15

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009)................................................................19

*McCulloch v. Albert E. Price, Inc.*,
   823 F.2d 316 (9th Cir. 1987)................................................2, 5, 10, 11

*McGinnis v. Ky. Fried Chicken of Cal.*,
   51 F.3d 805 (9th Cir. 1994)................................................................7, 14

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)................................................................16

*Norris v. Sysco Corp.*,
   191 F.3d 1043 (9th Cir. 1999)................................................................13, 14

*Oracle USA, Inc. v. Rimini St., Inc.*,
   6 F. Supp. 3d 1086 (D. Nev. 2014)................................................................3

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018)................................1, 2, 4, 5, 6, 7, 8, 9, 14, 16, 17, 18

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ................................................12

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010)................................................................23

*Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*,
   2014 WL 7336082 (D. Nev. Dec. 19, 2014)................................................10

*Rolland v. Cellucci*,
   151 F. Supp. 2d 145 (D. Mass. 2001) ................................................21

*Rosen v. Netfronts, Inc.*,
   2013 WL 3467205 (C.D. Cal. July 9, 2013) ................................................11

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,
   2005 WL 1244923 (E.D. Pa. May 24, 2005) ................................................19

*Schwarz v. Secy. of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995)................................................................15, 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO MOTION FOR ATTORNEY'S FEES

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Simon v. Intercontinental Transp. (ICT) B.V.*,
   882 F.2d 1435 (9th Cir. 1989) ...................................................................................21

*State Drywall, Inc. v. Rhodes Design & Dev.*,
   127 P.3d 1082 (Nev. 2006) .......................................................................................20

*Sundaram v. Villanti*,
   174 F. App'x 368 (9th Cir. 2006) .............................................................................19

*Sunrich Food Grp., Inc. v. Pac. Food of Or., Inc.*,
   304 F. App'x 518 (9th Cir. 2008) ...............................................................................7

*The Traditional Cat Ass'n Inc. v. Gilbreath*,
   340 F.3d 829 (9th Cir. 2003) .....................................................................................13

*UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*,
   446 F. Supp. 2d 1164 (E.D. Cal. 2006) .....................................................................16

*Van Skike v. Dir., Office of Workers' Comp. Programs.*,
   557 F.3d 1041 (9th Cir. 2009) .....................................................................................6

*Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*,
   173 F.3d 713 (9th Cir. 1999) .......................................................................................6

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*,
   677 F. Supp. 740 (S.D.N.Y. 1988) ............................................................................11

*Webb v. Sloan*,
   330 F.3d 1158 (9th Cir. 2003) ...................................................................................18

*Welch v. Metro. Life Ins., Co.*,
   480 F.3d 942 (9th Cir. 2007) .....................................................................................23

**Statutes**

17 U.S.C. § 505 ..........................................................................4, 5, 11, 12, 13, 17, 18

**Rules**

Fed. R. Civ. P. 68(d) ...................................................................................................20

**Treatises**

Black's Law Dictionary (10th ed. 2014) .....................................................................21

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Oracle has lost on every single claim it asserted against Seth Ravin; it has either lost or abandoned eleven of the twelve claims it asserted against Rimini; and both the jury and the Ninth Circuit have fully and finally rejected Oracle's constant claim throughout this litigation that Rimini engaged in intentional misconduct.  Yet, Oracle asks this Court to enter the identical fee award that the Ninth Circuit has already vacated and remanded for reconsideration, without any apportionment whatsoever.  Oracle's request is an invitation to commit reversible error.  This Court should deny Oracle's renewed motion, or at the very least substantially reduce the amount of fees Oracle seeks.

Oracle has claimed repeatedly throughout this litigation that Rimini acted knowingly, willfully, and with conscious disregard for Oracle's rights.  This was Oracle's principal trial theme, it is reflected in nearly every pleading Oracle has filed with the Court, and it was a significant basis for the Court's prior fees award.  But the jury rejected that argument as to Oracle's copyright infringement and interference claims, and the Ninth Circuit reversed the judgment on the hacking claims.  The state of mind of an infringer is a central factor in determining whether to award attorneys' fees, and the fact that Rimini has prevailed on every aspect of the case that required an examination of Rimini's intent or willfulness precludes any award of attorneys' fees.

Oracle's renewed motion ignores all of this, and asks the Court to reinstate the exact same fee award that the Ninth Circuit vacated.  Oracle's argument is an affront to the Ninth Circuit's decision, which vacated this Court's fee award and specifically remanded for "*reconsideration* in light of Oracle's *more limited success at litigation.*"  *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 965 (9th Cir. 2018) (emphases added).  The degree of Oracle's success in the case is a key consideration in determining whether fees should be awarded at all.  *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).  The Ninth Circuit determined that Oracle's success was "limited," and specifically directed this Court to reconsider whether to award attorneys' fees in light of that fact.  The Court may not simply reinstate the fee award that the Ninth Circuit vacated.

Reconsideration of Oracle's fee request warrants denial of attorneys' fees outright.  Oracle has prevailed on fewer than 8.3% of its claims, and has received only 14% of the damages it sought.  For the only claim on which Oracle has prevailed—copyright infringement—the jury found that

DEFENDANTS' OPPOSITION TO ORACLE'S RENEWED MOTION FOR ATTORNEYS' FEES

Rimini's infringement was *innocent*, which the Ninth Circuit has said the Court must consider when determining whether to award attorneys' fees (a factor Oracle completely ignores).  *See McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987), *reversed on other grounds by Fogerty*, 510 U.S. at 521 n.6.  And even if fees *could* be awarded under an application of the *Fogerty* factors, those fees would have to be apportioned—indeed, the Ninth Circuit directed this Court to consider Oracle's "limited success" on remand.  But Oracle has failed to provide the Court with any basis for apportioning its fees, and this also warrants denial of its request.

If the Court decides to award fees, it should substantially reduce the requested amount. "[T]he most critical factor" in determining the reasonableness of the fee award "is the degree of success obtained" (*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)), and the Ninth Circuit's direction to consider "Oracle's *more limited success* at litigation" (*Oracle*, 879 F.3d at 965 (emphasis added)) requires reduction.  The Court should further reduce Oracle's fees request given that Oracle obtained less than Rimini offered in its Rule 68 offer of judgment, and the rates charged by Oracle's counsel exceed reasonable local rates.  Thus, even if the Court disregards Oracle's deficient showing of entitlement to fees, it should award Oracle no more than ▮▮▮▮▮▮▮.  *See* Appendix A.

## BACKGROUND

"[I]n *lawful* competition with Oracle's direct maintenance services" (*Oracle*, 879 F.3d at 952 (emphasis added)), Rimini provides third-party support for a variety of enterprise software programs, including PeopleSoft, JD Edwards, Siebel, and Oracle Database.

Oracle sued Rimini and Mr. Ravin in 2010 (*Rimini I*), asserting twelve causes of action (Dkt. 146), ranging from trespass to chattels and unfair competition to copyright infringement and intentional inference with business relations.  As to copyright infringement, Oracle alleged that both Rimini and Mr. Ravin willfully infringed Oracle's exclusive right to reproduce its software by engaging in what it called "local hosting" and "cross use."  *Oracle*, 879 F.3d at 956–59.  Oracle also alleged that defendants violated one federal and two state anti-hacking statutes—the California Comprehensive Data Access and Fraud Act ("CDAFA") and the Nevada Computer Crimes Law ("NCCL")—by intentionally accessing and copying without authorization Oracle's software and support materials from Oracle's Technical Support website.  *See* Dkt. 146 at 26–30.

Rimini responded that the licenses between Oracle and its customers expressly authorized its processes. *See Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1086, 1096–99 (D. Nev. 2014). But at summary judgment, this Court determined that Rimini's practice of copying PeopleSoft and Database software onto its own servers fell outside the scope of certain Oracle licenses. *See id.* at 1098, 1101. The Court denied Oracle's summary judgment motion as to JD Edwards and Siebel, concluding that there were disputed issues of material fact. *Id.* at 1104.

After receiving this ruling, and before the case reached final judgment, Rimini invested millions of dollars to revise its processes to conform to the way this Court had construed the license agreements. The *Rimini I* evidentiary record contains undisputed evidence that by July 2014—more than a year before trial—Rimini had discontinued the specific practices (*e.g.*, "local hosting" and "cross use") addressed at the summary judgment stage. *See* Dkt. 1134-3.

On August 24, 2015, Rimini made a Rule 68 offer of judgment for $100 million *and significant injunctive relief*. Evanson Declaration ¶ 3, Ex. 3. Oracle rejected the offer within one day (*id.*, Ex. 4), and pressed the matter to a month-long jury trial, a year of post-trial motions, and another year-plus on appeal.

Oracle abandoned many of its claims before or during trial and lost on all its remaining theories except for (i) copyright infringement against Rimini and (ii) state-law computer hacking violations against Rimini and Mr. Ravin. Oracle's dominant trial theme was that Rimini and Mr. Ravin stole Oracle's software, lied to customers, and intentionally interfered with contracts between Oracle and its customers. *See*, *e.g.*, Dkt. 747 at 2 ("To lure customers away from Oracle, [Mr.] Ravin and Rimini repeatedly lied about their unlawful and unauthorized conduct."); *id.* at 24 ("[Mr.] Ravin and Rimini repeatedly lied to Oracle's customers and sought to conceal their misconduct."). Oracle asked the jury to award it nearly $250 million, plus punitive damages, for willful copyright infringement, intentional interference with customer relationships, and computer hacking. *Id.* at 17.

The jury rejected nearly all of Oracle's contentions, concluding that: (1) Rimini's infringement was "innocent"; (2) the best measure of damages for the innocent infringement was a fair market value license of $35.6 million (based on the cost to Rimini of adopting a non-infringing alternative); (3) Rimini's infringement caused Oracle to lose zero dollars in profit; and (4) the

infringement earned Rimini zero dollars in profit.  *See* Dkt. 896.  The jury also rejected Oracle's claim that Mr. Ravin was vicariously or contributorily liable for Rimini's innocent copyright infringement (*id.* at 2–3), its request for punitive damages (*id.* at 13–14), and its claims that Rimini intentionally interfered with Oracle's current and prospective customer relationships (*id.* at 8–9).  However, the jury found Rimini and Mr. Ravin liable under the state anti-hacking statutes, and awarded Oracle $14.427 million on those claims.  *Id.* at 10–12.

Oracle then moved for $35,627,807.99 in attorneys' fees (Dkt. 922), seeking fees for *all* the claims it litigated, arguing that the relevant factors under the state anti-hacking statutes and the federal Copyright Act "strongly favor[ed] awarding attorneys' fees to Oracle."  *Id.* at 9–10.

On September 21, 2016, this Court awarded attorneys' fees to Oracle under **both** Section 505 of the Copyright Act *and* the state anti-hacking statutes.  Applying the so-called *Fogerty* factors (*see Fogerty*, 510 U.S. at 534 n.19), the Court first concluded that Oracle's "degree of success" warranted an award of fees because, "[a]s a result of its *overall* success," Oracle had "won a $50 million verdict against defendants—including $35,600,000 for copyright infringement *and* $14,427,000 for the state computer access claims."  Dkt. 1049 at 14 (emphases added); *see also id.* ("Oracle also prevailed on its two separate state computer access claims").  The Court considered the "objective reasonableness of the losing party's position during the litigation," the need to "make [Oracle] whole," "the need to deter [Rimini, Mr. Ravin,] and others from engaging in future infringement," and whether "awarding attorneys' fees in this action furthers the purposes of the Copyright Act."  *Id.* at 14–16.  Significantly, the Court ruled that Rimini and Mr. Ravin were "severally and equally" liable for *all* of Oracle's attorneys' fees based solely on the state anti-hacking statutes' "less stringent" standards.  *Id.* at 17 n.3.  The Court, however, found that many of Oracle's billing entries "violate[d] regular billing practices and guidelines," and applied a "blanket reduction of the requested fees in the amount of 20%."  *Id.* at 20.  The Court's reduction lowered Oracle's award from $35,627,807.99 to $28,502,246.40.  *Id.*

On appeal, the Ninth Circuit narrowly upheld the jury's finding of copyright infringement against Rimini, but "reverse[d] the judgment as to both" the hacking claims against Rimini and Mr. Ravin due to Oracle's failure to show that they acted without or beyond authorization "at the time

1  [Rimini] took [Oracle] data in the first instance." *Oracle*, 879 F.3d at 953, 962.  This reversal also

2  eliminated Rimini's and Mr. Ravin's liability under the California UCL.  *Id.*

3    The Ninth Circuit also vacated the attorneys' fees award.  The Ninth Circuit noted that this

4  Court had "awarded $28,502,246.40 in attorneys' fees … under the fee-shifting provisions of the

5  Copyright Act *and* the state computer laws." *Oracle*, 879 F.3d at 965 (emphasis added).  It likewise

6  recognized that, "[a]lthough [Mr.] Ravin was not found liable for copyright infringement, the district

7  court decided that [Mr.] Ravin was, along with Rimini 'severally and equally' liable for the award

8  because he had violated the computer statutes." *Id.*  In light of the panel's reversal of hacking

9  liability, the Ninth Circuit "reverse[d] the judgment with respect to [Mr.] Ravin's liability for fees."

10  *Id.*  As for Rimini, the panel "vacate[d] the fee award and remand[ed] for reconsideration in light of

11  Oracle's *more limited success at litigation*." *Id.* (emphasis added).

12    Following remand, Oracle filed a renewed motion for attorneys' fees, "request[ing] that the

13  Court … reinstate the $28,502,246.40 previously awarded" "based on the same evidence that the

14  Court has already considered and the same reasoning the Court has already adopted." Dkt. 1120 at 3.

15  **LEGAL STANDARD**

16    The Copyright Act permits a court, "in its discretion," to grant the prevailing party a

17  "reasonable attorney's fee."  17 U.S.C. § 505.  But an award of attorneys' fees is *not* "automatic"

18  (*Fogerty*, 510 U.S. at 534), and courts "may not award attorney's fees as a matter of course"

19  (*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (quotations omitted)).  Instead,

20  courts exercise "equitable discretion," looking to a series of nonexclusive equitable factors that

21  include:  (1) the degree of success obtained by the prevailing party; (2) the reasonableness of the

22  losing party's legal and factual arguments; (3) the need to advance compensation and deterrence; (4)

23  whether an award of fees furthers the purposes of the Copyright Act; and (5) whether infringement

24  was innocent or willful.  *Fogerty*, 510 U.S. at 534 & n.19; *Entm't Research Grp., Inc. v. Genesis*

25  *Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997); *McCulloch*, 823 F.2d at 323.  Even where

26  attorneys' fees are awarded, the amount of awarded fees must be reasonable.  *See* 17 U.S.C. § 505.

27  **ARGUMENT**

28    Oracle's carbon copy request that this Court reinstate the same attorneys' fees award the

Ninth Circuit vacated is an affront to the Ninth Circuit's express directive to this Court on remand to "**reconsider**[]" the fees decision "in light of Oracle's *more limited success at litigation.*"  *Oracle*, 879 F.3d at 965 (emphases added).  The Ninth Circuit reversed Rimini's liability on three of Oracle's claims, *all* liability against Mr. Ravin, $14.427 million in damages, approximately $5 million in prejudgment interest, and *all* liability based on intentional or willful conduct; and it expressly determined that Oracle's success in the case was "more limited."  The degree of success obtained is a central consideration in determining whether to award fees and in apportioning the fees to award— yet Oracle ignores the Ninth Circuit's express direction for this Court to consider Oracle's "more limited success" in reconsidering whether to award fees.  The Court should deny Oracle's request outright or, if it decides to award fees, substantially reduce the fee award as set forth below.

**I.     The Ninth Circuit's Remand Requires the Court to "Reconsider" Its Decision Awarding Attorneys' Fees Based on Oracle's "More Limited Success"**

Oracle's renewed motion dispenses with the Ninth Circuit's opinion in just five sentences, concluding that "[t]he Ninth Circuit's reversal on Oracle's state computer access claims does not affect Oracle's degree of success on its copyright claims."  Dkt. 1120 at 2.  But the Ninth Circuit expressly "vacate[d] the fee award and remand[ed] for reconsideration in light of Oracle's *more limited success at litigation*."  *Oracle*, 879 F.3d at 965 (emphasis added).  Oracle's motion ***ignores this explicit direction from the Ninth Circuit***, arguing that the decision "does not affect Oracle's degree of success" (Dkt. 1120 at 2), in open contravention of the Ninth Circuit's mandate.  *See Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999) (district court on remand "must implement both the letter and the spirit of the mandate") (quotations omitted).

On remand, this Court must reconsider not only the *amount* of fees to award, but also whether to award fees *at all*.  The Ninth Circuit remanded "for *reconsideration*," not simply *recalculation*. *Oracle*, 879 F.3d at 965 (emphasis added).  Had the Ninth Circuit wished to order this Court simply to *recalculate* or *reduce* attorneys' fees instead of reconsidering their appropriateness altogether, it would have said so, as it often does. *E.g.*, *Jun-En Enter. v. Lin*, 654 F. App'x 347, 348 (9th Cir. 2016) ("We remand to the district court … to recalculate the attorneys' fees award, as appropriate."); *Van Skike v. Dir., Office of Workers' Comp. Programs.*, 557 F.3d 1041, 1048 (9th Cir. 2009)

1   (remanding "to reduce the fee award" and "recalculate the award in light of the foregoing guidance");

2   *Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005) ("we remand for recalculation"); *Sunrich*

3   *Food Grp., Inc. v. Pac. Food of Or., Inc.*, 304 F. App'x 518, 520 (9th Cir. 2008) ("We instructed the

4   court to recalculate the amount of fees.").

5          Put simply, this Court's directive from the Ninth Circuit is to reconsider whether an award of

6   fees is appropriate at all in view of Oracle's "limited success at litigation."  *Oracle*, 879 F.3d at 965.

7   Oracle's suggestion that the Court should reissue its prior fees award without considering the Ninth

8   Circuit's decision is an invitation to disregard the Ninth Circuit's mandate and should be rejected.

9   *See McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir. 1994).

10  **II.    This Court Should Deny Oracle's Request for Attorneys' Fees in Its Entirety**

11         A fresh application of the *Fogerty* factors in light of the Ninth Circuit's decision dictates a

12  denial of Oracle's request.  And even if fees *could be* awarded, Oracle's failure to provide the Court

13  with any basis for apportioning the fees to account for Oracle's more limited success (as the Ninth

14  Circuit directed) warrants denial of Oracle's renewed motion.

15         **A.    Application of the *Fogerty* Factors Requires Denial of Oracle's Motion**

16         The Ninth Circuit's decision significantly narrowed Oracle's success in the case (as the Court

17  of Appeals *expressly* determined), confirmed that *all* of the litigation stances for the defendants were

18  *both* objectively and subjectively reasonable, and showed that an award of fees against Rimini is

19  unnecessary to prevent future acts of infringement.

20         **1.    Oracle Achieved a Limited Degree of Success in This Litigation**

21         The first factor in an attorneys' fees analysis is "the degree of success obtained" by the

22  prevailing party.  *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).  This factor

23  weighs heavily against Oracle, which has now prevailed against only one of two defendants, on only

24  one of twelve claims against it.  Oracle secured only $35.6 million of the $245.9 million it sought in

25  this case.  It has prevailed on fewer than 8.3% of its claims, and has obtained 14% of its requested

26  damages.  And the single claim on which Oracle prevailed was for *innocent* copyright infringement—

27  not the willful infringement and lost profits that it sought to prove.

28         In its prior order awarding fees, this Court concluded that Oracle had attained a sufficient

degree of success because "Oracle won a $50 million verdict against defendants—including $35,600,000 for copyright infringement *and* $14,427,000 for the state computer access claims." Dkt. 1049 at 14 (emphasis added). This Court also found Rimini and Mr. Ravin "severally and equally" liable for the total amount of attorneys' fees based on Rimini's and Mr. Ravin's violations of the anti-hacking statutes. *Id.* at 17 n.3. But the Ninth Circuit reversed all liability under the anti-hacking statutes and the California UCL, all liability against Mr. Ravin (including for fees), all liability based on intentional or willful conduct, $14,427,000 in damages, and $5,279,060.12 in prejudgment interest. *Oracle*, 879 F.3d at 962–65. In addition, the scope of conduct that the Ninth Circuit deemed infringing is far narrower than Oracle has argued. *See* Dkt. 1130 at 4–6.

Despite the substantial change in circumstances, Oracle insists that the Court should issue an identical ruling on remand. In support, Oracle asserts that it was successful "on each of its 93 copyright infringement claims," *i.e.*, copyright registrations (Dkt. 1120 at 11), but that is a misleading description of this case as it was litigated and tried. This case was about four product lines and whether a discrete set of processes was permitted with respect to those four product lines—the number of copyright registrations has no bearing on the degree of Oracle's success. Indeed, dozens of the registrations relate to a single PeopleSoft version. *See* Dkt. 146 at 21–24. That Oracle included a copyright registration for every patch does not expand the case beyond the core copyright issue that was tried—whether Rimini could locally host or clone environments.

### 2. Rimini's Position Was Objectively Reasonable

The second factor—whether Rimini's legal and factual arguments in this litigation were "reasonable"—also weighs in favor of denying Oracle's request for fees. *Ets-Hokin*, 323 F.3d at 766; *see also Kirtsaeng*, 136 S. Ct. at 1989 (instructing courts to give "substantial weight" to this factor).

Oracle asserts that Rimini's "litigation position" as to infringement "was not an objectively reasonable position" and was "based on a clear misreading of Oracle's software licensing agreements." Dkt. 1120 at 11 (quoting Dkt. 1049 at 15). That argument ignores the findings by the jury and the Ninth Circuit's decision.

The jury and the Ninth Circuit accepted the vast majority of Rimini's litigation positions—justifying Rimini's decision to "keep fighting." *Kirtsaeng*, 136 S. Ct. at 1986. As to Mr. Ravin, the

jury found that Mr. Ravin *never infringed any copyrights—directly, contributorily, or vicariously* (*see* Dkt. 896 at 2–3, 6), and the Ninth Circuit reversed the sole claim on which the jury found Mr. Ravin liable, resulting in complete exoneration for any personal liability.  On the only remaining claim against Rimini (copyright infringement), the jury found that Rimini neither knew nor had any "reason to believe that its acts constituted an infringement" of Oracle's copyrights.  Dkt. 880 at 43; Dkt. 896 at 6.  Rimini's position was therefore by definition both objectively *and* subjectively reasonable.

In addition, the jury and the Ninth Circuit accepted Rimini's defense against Oracle's broad and incorrect claim that Rimini and Mr. Ravin engaged in intentional and willful conduct and repeatedly lied to customers to conceal their misconduct and lure customers away.  The jury rejected Oracle's willful infringement claim, its intentional interference claims, and its punitive damages claim, and found no lost profits.  And the Ninth Circuit explicitly stated that Rimini engaged in "*lawful* competition."  *Oracle*, 879 F.3d at 952 (emphasis added).

Oracle also focuses on alleged litigation misconduct by Rimini.  Dkt. 1120 at 11–12.  But even if Oracle's allegations were accurate,[1] such conduct neither has any bearing on whether Rimini's and Mr. Ravin's litigation positions were reasonable, nor entitles Oracle to the entire amount of requested fees.  In the rare instance where a request for attorneys' fees based on litigation misconduct is permitted, that award must be proportional to the alleged misconduct (*Kirtsaeng*, 136 S. Ct. at 1988–89), and the district court must "assess and allocate specific litigation expenses"

---

[1] Oracle's claim of litigation misconduct is factually incorrect.  *See* Dkt. 1006 at 4–6.  Oracle asserts that Rimini misrepresented whether it engaged in claimed "cross use."  Dkt. 1120 at 3.  But the cross use issue was resolved in the first nine minutes of the first substantive deposition in this case.  A Rimini 30(b)(6) witness testified that Rimini used one client's update to be distributed to other clients with the same versions of the software.  *See* Dkt. 1006, Ex. I.  Oracle also makes much of Judge Leen's spoliation order concerning a file of Oracle software.  Dkt. 1120 at 5.  But Rimini produced a witness to testify about the file, did not dispute that the file was deleted after Rimini anticipated litigation, and stipulated that the file contained copies of Oracle's software.  Dkt. 466 at 9–12, 16.  And when the jury was given an adverse inference instruction regarding this spoliation, it still rejected all of Oracle's theories of intentional harms.  Dkt. 880 at 20.  Oracle further contends that Rimini "failed to provide complete and accurate" responses to Oracle's Interrogatory Nos. 20–22.  Dkt. 1120 at 6.  These interrogatories were overly broad and unduly burdensome, seeking extensive details about "each environment" that "ever existed" on Rimini's computer system.  Rimini was required to analyze and summarize thousands of pieces of information in a sixty-page interrogatory response that included a detailed spreadsheet.  Dkt. 167 at 14–15; Dkt. 745.  Oracle never filed a motion to compel; instead, it argues that it had to draft "letters detailing gaps" in Rimini's responses.  Dkt. 1120 at 6.  And Rimini worked to diligently fill any potential gaps identified by Oracle.

(*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017)) attributable to that misconduct.  Oracle's presentation fails on both counts.

### 3.     A Fees Award Is Unnecessary to Deter an Innocent Infringer

The third factor is the need to advance considerations of "deterrence."  *Ets-Hokin*, 323 F.3d at 766.  In the Ninth Circuit, the Court must consider "the defendant's status as [an] innocent, rather than willful or knowing, infringer."  *McCulloch*, 823 F.2d at 323.  This is because innocent infringers "will not need to be deterred from future infringements."  U.S. Dep't of Commerce, White Paper on Remixes, First Sale, and Statutory Damages, U.S. Patent & Trademark Office, 91 (Jan. 2016).  This factor weighs decidedly in Rimini's favor, as the jury found Rimini liable for only innocent copyright infringement.

Oracle maintains that attorneys' fees are necessary to prevent "Rimini's [g]ambles with the [l]aw," *i.e.*, to "deter" Rimini.  Dkt. 1120 at 13.  To sustain its theory, Oracle claims that courts may deter "repeated instances of copyright infringement" (*Kirtsaeng*, 136 S. Ct. at 1989), and then argues that this factor is vitally important here because "Rimini and *many of its executives*" have a pattern of infringing Oracle's copyrights.  Dkt. 1120 at 13 (emphasis added).  Oracle is wrong.

*First*, Oracle's argument asks this Court to override the jury's finding of innocent infringement, in blatant violation of Rimini's Seventh Amendment rights.  Rimini successfully shouldered the "heavy" "burden of proving innocent infringement … [by] prov[ing] that it was not aware and had no reason to believe that its acts constituted infringement."  *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, 2014 WL 7336082, at *11 (D. Nev. Dec. 19, 2014).  And Oracle's description of Rimini's alleged conduct (*see* Dkt. 1120 at 13–14) is contradicted by the jury's express findings.  Thus, there is no need to deter Rimini through an award of attorneys' fees, just as there is no need to deter Rimini through an injunction.  *See* Dkt. 1130 at 9–11 (Rimini's opposition to Oracle's renewed motion for a permanent injunction).  As demonstrated by the five uncontested declarations in support of Rimini's opposition to Oracle's request for an injunction, Rimini voluntarily discontinued its infringing processes in light of this Court's summary judgment orders.  *See* Dkt. 1134-3.

Due to its blameless nature, innocent infringement cannot form the proper basis for an award of attorneys' fees as a matter of law.  As the Ninth Circuit explained in *McCulloch*, it did "not believe

Congress intended that the prevailing plaintiff should be awarded attorney's fees in every case." 823

F.2d at 323.  Instead, a "[c]onsideration[ ] which justif[ies] the denial of fees … [is] *the defendant's*

*status as [an] innocent, rather than willful or knowing, infringer*." *Id.* (emphasis added).  Although

Oracle maintains that "the Copyright Act does not condition an award of fees on a finding of *willful*

infringement" (Dkt. 1120 at 11 (emphasis added)), it has not cited a single case awarding attorneys'

fees against an adjudicated *innocent* infringer under the Copyright Act.  *See, e.g.*, *Adams v. Agrusa*,

2016 WL 7665411, at *2 (C.D. Cal. July 19, 2016) ("Plaintiffs are not entitled to attorneys' fees for

the additional reasons that Defendant Agrusa's infringement was innocent, Defendant Agrusa had

ceased any infringing conduct, and Defendant Agrusa had made good faith attempts to remedy the

infringement."); *Conway v. Licata*, 144 F. Supp. 3d 212, 215–16 (D. Mass. 2015) (denying attorneys'

fees in light of "jury's finding of innocent infringement"); *Rosen v. Netfronts, Inc.*, 2013 WL

3467205, at *5 (C.D. Cal. July 9, 2013) ("[B]ecause Pierson's infringement was innocent, Pierson

has ceased any infringing conduct, and Pierson has made good faith attempts to avoid infringement,

the Court finds that Rosen is not entitled to attorney's fees."); *Florentine Art Studio, Inc. v. Vedet K.*

*Corp.*, 891 F. Supp. 532, 541 (C.D. Cal. 1995) (awarding attorney fees to defendants, finding that

they were the prevailing parties, given that they "prevailed on seven of the nine infringement counts,

were found merely to be innocent infringers on the remaining two, and were assessed the minimum

statutory damages," and "established that they never knowingly copied any copyrighted work");

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 770 (S.D.N.Y. 1988) (finding party

proving only innocent infringement "*not* 'the prevailing party'").  Indeed, other than this Court's

prior (now-vacated) fee award, neither Rimini nor Oracle has found a single reported instance of a

court awarding attorneys' fees against an innocent infringer.

  *Second*, Oracle unbelievably argues that this Court should award attorneys' fees as a deterrent

to *Mr. Ravin*, even though **Mr. Ravin prevailed on every single claim asserted against him**.  Dkt.

1120 at 8–10, 13–14.  Oracle's claim that he "sets up companies" with the purpose of infringing

Oracle's copyrights disregards the verdict entirely, because Mr. Ravin was cleared under any theory

of infringement liability. Dkt. 1120 at 14.  For Oracle to dredge up TomorrowNow, evidence the jury

was instructed was entirely *irrelevant* to this case (*see* Dkt. 880 at 21), is beyond the pale.  The Court

1  should not base any decision to deter an innocent infringer on the conduct "of its executive[]" (Dkt.

2  1120 at 13), where, as here, that executive prevailed on *every single claim* leveled against him.

### 4.    The Remaining *Fogerty* Factors Weigh Against Oracle's Request

The remaining *Fogerty* factors—whether a fees award would advance considerations of compensation or further the purposes of the Copyright Act—also require denial of Oracle's motion. *See Entm't Research Grp.*, 122 F.3d at 1228–29.

*First*, Oracle's award of $35.6 million is more than sufficient compensation, especially where the jury found that Oracle lost *zero* customers and *zero* profits because of Rimini's innocent infringement. Attorneys' fees awards "were never intended to produce windfalls." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (quotations omitted). And Oracle, a sophisticated $100-plus billion-dollar company, is a "corporate behemoth[]" that can afford to finance copyright lawsuits, not a "starving artist[]" who could be discouraged from protecting his copyrights due to the possibility of incurring attorneys' fees. *Fogerty*, 510 U.S. at 524; *see Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *12 (C.D. Cal. Mar. 24, 2015) ("Perfect 10 is not a 'starving artist' in need of protection from an award of attorneys' fees—it is a serial plaintiff").

*Second*, an attorneys' fees award would *undermine* the purposes of the Copyright Act.  *See Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (calling this the "most important factor").  The purposes of the Copyright Act are served where defendants "seek to advance a variety of meritorious defenses" to a copyright infringement claim because such defenses help define "the boundaries of copyright law." *Fogerty*, 510 U.S. at 527.  When a defendant prevails on one such defense, the public gains access to new works that build upon copyrighted works.  Here, Mr. Ravin successfully defended himself against all of Oracle's copyright claims, and Rimini proved that it engaged in only innocent copyright infringement. *See* Dkt. 896 at 6.  Indeed, Rimini was *forced to spend millions of dollars* to vigorously defend itself because Oracle rejected an offer of judgment nearly three times the jury's award.  *See infra*, pp. 20–22.  Refusing to award fees here would *encourage* other innocent parties to defend against overreaching claims of copyright infringement, consistent with both the purposes of the Copyright Act and fundamental notions of due process.  *See Mattel*, 705 F.3d at 1111 ("failure to vigorously defend" against infringement lawsuit could "usher[]

in a new era of copyright litigation aimed not at promoting expression but at stifling the 'competition' upon which America thrives"); *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense.").

* * *

All of the *Fogerty* factors weigh in favor of denying Oracle's request for attorneys' fees. The Ninth Circuit's decision underscores that Oracle has experienced only a limited degree of success, and that Rimini has asserted reasonable litigation positions and does not need to be deterred from future infringement. Oracle has secured more than enough damages on its copyright claim, and the purposes of the Copyright Act will be disserved if this Court awards Oracle its attorneys' fees.

## B. Oracle's Failure to Provide Any Means for This Court to Apportion Attorneys' Fees Warrants Denial of the Renewed Motion

A party requesting attorneys' fees has the burden of "documenting the appropriate hours expended and hourly rates" charged in such a manner that "will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. That party must submit evidence and analysis that enables the Court to apportion the fees and determine the reasonableness of the fees requested, including information that specifies the claims to which each time entry correlates. *See The Traditional Cat Ass'n Inc. v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003); *InveSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 24 (1st Cir. 2004). Where, as here, the moving party makes a "deficient presentation" in requesting attorneys' fees, the Court is justified "in refusing to award any fees whatsoever." *Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999) ("We see no need for such a large expenditure of judicial resources in the face of such a miserable presentation by a plaintiff's attorney[.]"); *Am. Gen. Life & Accident Ins. Co. v. Wu*, 2010 WL 117721, at *2 (C.D. Cal. Jan. 4, 2010) ("Where ... an attorney submits a compilation of hours and costs to the Court which the trier of fact finds is unreasonable, not credible, excessive, or unreasonably inflated, the Court has discretion to conclude that the attorney is not entitled to any recovery.").

Oracle has now *twice* (both before and after remand) failed to satisfy its burden to apportion its fees. Oracle's unabashed failure to apportion in view of the Ninth Circuit's decision is egregious—given the Ninth Circuit's express direction to this Court to factor in Oracle's more

1   limited success in reconsidering a fee award.  Oracle was required to provide this Court a means of

2   separating the fees incurred in pursuit of its copyright claim from the fees incurred in pursuit of its

3   claims against Mr. Ravin and in pursuit of the remaining claims that Oracle lost or abandoned (*i.e.,*

4   all others, including the state-law hacking claims).  But it has failed to do so, and may not present

5   new evidence for the first time in its reply brief.

6         Oracle's failure of proof in apportioning its request for attorneys' fees warrants outright denial

7   of its renewed motion.  *See, e.g., Norris*, 191 F.3d at 1052; *Castillo v. EarthLink Network, Inc.*, 2007

8   WL 9706036, at *2 (C.D. Cal. Aug. 13, 2007); *Engrahm v. Cty. of Colusa*, 2006 WL 3028416, at *3

9   (E.D. Cal. Oct. 24, 2006) ("Since Defendants' billing time records do not identify the time spent

10  defending Plaintiffs' federal claims, Defendants' motion for attorney fees is denied.").

11  **III.**    **The Court Must at the Very Least Substantially Reduce Oracle's Proposed Award**

12        If this Court awards fees—which it should not—it should reduce Oracle's award to account

13  for:  (A) "Oracle's more limited success at litigation" (*Oracle*, 879 F.3d at 965); (B) fees incurred

14  after August 24, 2015, when Rimini submitted its Rule 68 offer of judgment for $100 million, plus

15  extensive injunctive relief; and (C) Oracle's failure to support the reasonableness of its attorneys'

16  rates.   Under a proper application of these reductions, Oracle could receive no more than

17  ████████.  *See* Appendix A.

18       **A.**    **Reductions Based on Limited Success**

19        "There is no precise rule or formula" for assessing the reasonableness of an attorneys' fees

20  award.  *Hensley*, 461 U.S. at 436.  But it is clear that "the most critical factor" in determining the

21  reasonableness of a fees award "is the degree of success obtained."  *Id.*; *see also Farrar*, 506 U.S. at

22  114 (courts are "obligated to give primary consideration to the amount of damages awarded as

23  compared to the amount sought"); *McGinnis*, 51 F.3d at 810 ("It is an abuse of discretion for the

24  district court to award attorneys' fees without considering the relationship between the extent of

25  success and the amount of the fee award.") (quotations omitted).  In performing this analysis, a court

26  may, in its equitable discretion, "attempt to identify specific hours that should be eliminated" or

27  "simply reduce the award to account for the limited success."  *Hensley*, 461 U.S. at 436–37.

28       ***The Court Must Apportion***.  There is no question that if the Court is to award fees, it *must*

reduce the fees "in light of Oracle's more limited success at litigation." *Oracle*, 879 F.3d at 965. That was the Ninth Circuit's express direction on remand, and although Rimini maintains that *no* fees should be awarded, at the very least the fees must be apportioned to account for the more limited success. Oracle's arguments to the contrary are unavailing.

*First*, Oracle cites Rimini's alleged misconduct as a justification for Oracle's entitlement to attorneys' fees. While fees may be based in part on "a party's litigation misconduct," such awards *must* be proportional to the alleged misconduct. *Kirstaeng*, 136 S. Ct. at 1988–89. Just last year, the Supreme Court held in *Haeger* that whenever a court awards attorneys' fees to punish a party, whether under the court's "inherent authority" or a "fee-shifting statute," the law "demands that a district court *assess and allocate* specific litigation expenses." 137 S. Ct. at 1183, 1187 (reversing award of attorneys' fees for failure to apportion) (emphasis added).

Oracle has failed to introduce any evidence that it incurred fees "as a direct result of bad faith conduct." *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 126 (2d Cir. 2001); *Fortgang v. Pereiras Architects Ubiquitous LLC*, 2018 WL 1832184, at *9 (E.D.N.Y. Mar. 9, 2018) ("Where, an award of attorneys' fees is based on misconduct, the award should be related to costs or expenses incurred as a direct result of bad faith conduct.") (quotation omitted). As a result, any purported litigation misconduct by Rimini could not justify Oracle's fee request.[2]

*Second*, Oracle has failed to meet its burden of demonstrating that the time incurred litigating its unsuccessful claims was so intertwined with its one successful claim of innocent copyright infringement against Rimini such that apportionment is impossible. Claims are "unrelated" to a successful copyright claim where, as here, they are "entirely distinct and separate" from the copyright claim—*i.e.*, they are not based on the same facts and legal theories. *Entm't Research Grp.*, 122 F.3d at 1230 (quoting *Schwarz v. Secy. of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995)).

Oracle's copyright claim challenged conduct that is entirely distinct and separate from the conduct underlying its unsuccessful claims. The Ninth Circuit held that Rimini infringed Oracle's copyrights by copying Oracle's PeopleSoft software on servers outside the control of Rimini's

---

[2] Oracle also ignores that Rimini has already suffered a significant consequence in the form of an adverse inference instruction to the jury. Dkt. 880 at 20.

1    customers, and by creating JD Edwards and Siebel development environments "for future customers

2    using the license of an existing customer on the basis that future customers presumably would have

3    licenses" permitting that conduct.  *Oracle*, 879 F.3d at 957–60.  The Court affirmed liability as to

4    Database on waiver grounds.  *Id.* at 960.

5           By contrast, Oracle's *unsuccessful* hacking, breach of contract, inducing breach of contract,

6    intentional interference, and trespass claims were premised on allegations that Rimini and Mr. Ravin

7    accessed Oracle's website without authorization and lied to customers.  Dkt. 146 at 28–39; *Oracle*,

8    879 F.3d at 961.  None of these allegations of intentional conduct have any relevance at all to

9    Oracle's copyright infringement claims.  The mere fact that these claims involved Oracle's software

10   does not absolve Oracle of its responsibility to apportion its fees.  *See Entm't Research Grp.*, 122

11   F.3d at 1230 (awarding fees only for copyright claim even though other contract-related claims were

12   part of the same "overall case and involved the same parties").

13          The legal theories underlying Oracle's claims are also vastly different.  For instance, many of

14   Oracle's claims required Oracle to show that Rimini acted intentionally (*see, e.g., Consol. Generator-*

15   *Nevada v. Cummins Engine Co.*, 114 Nev. 1304, 1311 (Nev. 1998) (providing elements of claim for

16   intentional interference with prospective business advantage)), whereas Oracle's copyright claim did

17   not require it to show any culpable state of mind whatsoever (*see EMI Christian Music Grp., Inc. v.*

18   *MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016); *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*,

19   446 F. Supp. 2d 1164, 1171–72 (E.D. Cal. 2006)).  Indeed, Oracle successfully avoided preemption

20   of its state-law claims precisely because the legal theories underlying its state hacking claims differ

21   completely from its copyright claims.  *See, e.g.*, Dkt. 957 at 28 ("Copyright infringement is not the

22   same as intruding into computer systems and networks."); *id.* ("The computer statutes … contain

23   extra elements (e.g., intentional computer misconduct) and protect qualitatively different rights (e.g.,

24   the right to be free from unauthorized computer intrusions)"); Dkt. 843 at 10 ("Intentional

25   interference has an 'extra element' that is qualitatively different from copyright.").  Oracle is

26   estopped from taking a contrary position now.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

27          Even if this was a "copyright infringement case first and foremost" (Dkt. 1049 at 14), that

28   does not absolve Oracle of any obligation to apportion its fee request.  The claims Oracle lost were

based on conduct and legal theories that are distinct and separate from its copyright infringement claims.  Even if the claims Oracle lost were secondary claims, Oracle is still required to apportion its fees given that it lost on all of those claims.  *See Entm't Research Grp.*, 122 F.3d at 1230.

*Third*, even if Oracle's claims were related, Oracle is still required to apportion its fees.  In *Hensley*, the Supreme Court held that "if … a plaintiff has achieved only a partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate *may be an excessive amount*."  461 U.S. at 436 (emphasis added).  "This will be true," the Court continued, "*even where the plaintiff's claims were interrelated* …."  *Id.* (emphasis added).  For instance, if a party "prevailed on only one of their six general claims … a fee award based on [all hours expended on the case] *clearly would have been excessive*."  *Id.* (emphasis added).  Oracle brought twelve causes of action against Rimini and lost or abandoned all but one, and lost on all its claims against Mr. Ravin.  Oracle cannot escape its duty to apportion through blanket invocations of a "common core of facts."  Dkt. 1120 at 15.

**The Amount of the Reduction**.  A proper apportionment of Oracle's fee request warrants a reduction of between \$27,314,652.80 and \$20,593,595.02 for a total of between \$1,187,593.60 and \$7,908,651.38 in fees.  *See* Appendix A.

**1.**  Oracle's requested amount should first be offset by the ▓▓▓▓▓▓▓▓ in fees that Rimini's experts attribute to Mr. Ravin's defense of Oracle's unmeritorious claims against him.  *See* Kennedy Decl. ¶¶ 7, 15.4; Vander Veen Decl. ¶¶ 15–16.  Mr. Ravin is a prevailing party under Section 505 of the Copyright Act, having defeated every single claim Oracle levied against him.[3]  *See Fogerty*, 510 U.S. at 522, 534 (holding that prevailing defendants and prevailing plaintiffs must be treated alike under Section 505 of the Copyright Act).  Indeed, the Ninth Circuit eliminated all liability against Mr. Ravin when it reversed his liability under the state anti-hacking statutes.  *See Oracle*, 879 F.3d at 962.  Thus, applying an offset would best represent the "degree of success" each side has obtained in this litigation—Oracle has experienced only limited success, while Mr. Ravin has experienced complete

---

[3]  As a prevailing party, Mr. Ravin could also move for attorneys' fees.  Rather than burden the Court with additional briefing and argument, Rimini submits that reducing Oracle's recovery by the amount of fees attributable to Mr. Ravin's defense is more efficient.  *See* Dkt. 1006 at 27 n.9.

Gibson, Dunn & Crutcher LLP

success.  *See Hensley*, 461 U.S. at 436.  It would also strike a balance, because Oracle would still receive an award, while also encouraging the advancement of meritorious copyright defenses.  *See Fogerty*, 510 U.S. at 527 ("defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement").[4]

Alternatively, Oracle's requested amount should be reduced by half to account for the fact that Oracle failed on all twelve of its claims against Mr. Ravin.  *See* Kennedy Decl. ¶¶ 8, 15.9; *Hensley*, 461 U.S. at 435 ("work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved") (quotations omitted).  Oracle chose to sue Mr. Ravin in addition to Rimini, and spent years pursuing several claims against him, but ultimately lost on every one of those claims.  Relying on Oracle's state hacking claims, this Court previously levied fees against Rimini and Mr. Ravin "severally and equally."  Dkt. 1049 at 17 n.3.  The Ninth Circuit reversed that decision outright, thereby absolving Mr. Ravin of *all* liability in this action.  *See Oracle*, 879 F.3d at 962–65.  Oracle is not entitled to recover any fees incurred in pursuit of any of its claims against him.  *See Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) ("As for *Hensley*'s second step, the district court applied the proper analysis.  Plaintiff initially sued several defendants, but prevailed against only one ….  A discretionary reduction to reflect that kind of limited success is appropriate.").  Oracle's requested amount of fees should, therefore, *at least* be trimmed in half, to $14,251,123.20.  *See* Vander Veen Decl. ¶ 17; *see also* Appendix A.

**2.**  Whether the Court adopts an offset approach or reduces Oracle's requested amount in half

---

[4]  The *Fogerty* factors also heavily weigh in favor of an offset.  *First*, Mr. Ravin has achieved absolute success in this litigation, defeating all twelve claims Oracle asserted against him.  *Second*, Oracle's claims against Mr. Ravin were objectively unreasonable and factually unsupported.  Oracle not only failed to show that Mr. Ravin intentionally or willfully infringed its copyrights (as it has claimed throughout this litigation), it also failed to show that Mr. Ravin *innocently* infringed.  *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) (objective reasonableness of plaintiff's position the most important factor when considering prevailing defendant's fees). *Third*, an offset would mitigate the cost of successfully defending against Oracle's unreasonable claims, and deter litigious plaintiffs like Oracle from pursuing a scorched earth litigation strategy. *See Kirtsaeng*, 136 S. Ct. at 1987 ("The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance [if it must pay defendant's fees].");  *Baker*, 431 F. Supp. 2d at 359–60.  *Fourth*, as explained above, an offset would strike a balance between the policies underlying the Copyright Act.  *See Kirtsaeng*, 136 S. Ct. at 1986 ("fee awards under § 505 should encourage the types of lawsuits that promote [the Act's dual] purposes").

1   to account for *Mr. Ravin's* prevailing party status, the Court should further adopt one of the following

2   three across-the-board percentage reductions to account for Oracle's limited success against *Rimini*.

3       **a.**   The Court should reduce Oracle's requested fees based on the number of claims on which

4   Oracle actually succeeded (one out of twelve), which yields an overall success rate of 8.3% against

5   Rimini.  *See Sundaram v. Villanti*, 174 F. App'x 368, 370 (9th Cir. 2006) (per curiam) ("Where only

6   'partial or limited success' was obtained, a full fee award may be excessive and encourage too much

7   litigation.") (quoting *Hensley*, 461 U.S. at 463); *see also Mahach-Watkins v. Depee*, 593 F.3d 1054,

8   1063 (9th Cir. 2010) (affirming 80% reduction to attorneys' fee award in light of plaintiff's "limited

9   success" on one federal claim and no success on state law claims); *Schwarz*, 73 F.3d at 900

10   (affirming 75% cut to portion of fees where plaintiff succeeded on only 25% of her claims).   The

11   structure of such an award recognizes the limited success Oracle obtained against Rimini in this

12   action, and is appropriate in light of Oracle's decision—in defiance of the Ninth Circuit's order and

13   mandate in this case—to not "propose[] an alternative means of calibrating the fee award to reflect its

14   limited success."  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 679 (5th Cir. 2015).   Adjusting

15   Oracle's requested amount to account for its limited success against Rimini would result in an award

16   of no more than $2,375,187.20.   Vander Veen Decl. ¶ 23, Tab 4c; Kennedy Decl. ¶¶ 9, 16.3.1;

17   Appendix A.

18       **b.**   In the alternative, Rimini proposes a comparison of the damages Oracle sought to the

19   damages Oracle ultimately obtained following the appeal before the Ninth Circuit.  *See McCown v.*

20   *City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) ("a district court should 'give primary

21   consideration to the amount of damages awarded as compared to the amount sought'") (quoting

22   *Farrar*, 506 U.S. at 114); *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, at *12

23   (E.D. Pa. May 24, 2005) ("One widely accepted method of measuring the level of success a plaintiff

24   has achieved is to consider the amount of damages awarded compared to the amount of damages

25   requested.").   Oracle brought this case to trial seeking a total of $245.9 million in damages, plus lost

26   profits and punitive damages.   Dkt. 747 at 17–25.   After remand from the Ninth Circuit, it walks

27   away with only $35.6 million in damages—a roughly 14.5% degree of success—and neither lost

28   profits nor punitive damages.   Applying an 85.5% reduction to Oracle's requested fees would result

1    in an award of no more than $4,126,392.73.   Vander Veen Decl. ¶ 23, Tab 4c; Kennedy Decl. ¶¶ 9,

2    16.3.2; Appendix A.

3        **c.**  Even if viewed as "first and foremost" a copyright case (Dkt. 1049 at 14), a comparison of

4    the copyright damages Oracle sought ($128.3 million) to the copyright damages Oracle obtained

5    ($35.6 million) yields only a 27.7% degree of success.  *See* Evanson Decl. ¶ 4, Ex. 5; Vander Veen

6    Decl. ¶ 19; Kennedy Decl. ¶¶ 9, 16.3.3.  An 82.3% reduction results in an award of no greater than

7    $7,908,651.38.  *See* Vander Veen Decl. ¶ 23, Tab 4c; Appendix A.

8        **B.    Oracle's Attorneys' Fees Are Capped as of August 24, 2015, the Date of Rimini's
             $100 Million Offer of Judgment**

9        Oracle's request for fees must also be reduced by *at least* ███████ because Oracle elected

10   to continue litigating this case when it could have settled it for more than it was ultimately awarded.

11   *See* Vander Veen Decl. ¶¶ 24–26, Tab 5c; Appendix A.  On August 24, 2015, Rimini offered Oracle

12   $100 million *plus an extensive injunction*.  Evanson Decl. ¶ 3, Ex. 3.  This offer of judgment is more

13   favorable than the judgment Oracle finally obtained, *even assuming* this Court awards Oracle

14   attorneys' fees.  Vander Veen Decl. ¶ 33, Tab 7 (scenario 1).  Thus, Oracle is not entitled to any fees

15   incurred *after* Rimini's offer.  *See* Fed. R. Civ. P. 68(d); *Marek v. Chesny*, 473 U.S. 1, 10 (1985)

16   (plaintiffs "who reject an offer more favorable than what is thereafter recovered at trial will not

17   recover attorney's fees for services performed after the offer is rejected"); *Champion Produce, Inc. v.

18   Ruby Robinson Co.*, 342 F.3d 1016, 1028 (9th Cir. 2003) (same); *Lantz v. Kreider*, 2010 WL

19   2609080, at *5 (D. Nev. June 25, 2010) (same).

20       Rimini's $100 million offer is more favorable than the judgment Oracle obtained.  "Where a

21   Rule 68 offer explicitly states that it is inclusive of prejudgment interest and pre-offer costs and

22   attorneys' fees, the judgment to which the offer is compared must include these items if they are

23   awarded."  *Champion Produce*, 342 F.3d at 1020; *see also Marryshow v. Flynn*, 986 F.2d 689, 692

24   (4th Cir. 1993) ("like 'judgments' must be evaluated" when comparing a Rule 68 offer to the

25   judgment obtained).   "Only pre-offer costs and attorneys' fees are included for purposes of

26   comparison, because post-offer costs and fees 'merely offset part of the expense of continuing the

27   litigation to trial, and should [therefore] not be included in the calculus.'"  *Champion Produce*, 342

28

F.3d at 1020 (quoting *Marek*, 473 U.S. at 7); *see also Marryshow*, 986 F.2d at 692 (where "offer includes costs then accrued," the "judgment must be defined on the same basis—verdict plus costs incurred as of the time of the offer of judgment"). The same reasoning applies to the inclusion of only pre-offer prejudgment interest. *Cf. State Drywall, Inc. v. Rhodes Design & Dev.*, 127 P.3d 1082, 1087 (Nev. 2006) ("[P]re-offer prejudgment interest must be added to the judgment when comparing it to the offer of judgment[.]"). Post-offer prejudgment interest, like post-offer costs and attorneys' fees, "should not … be included in the comparison and thereby become the vehicle to defeat the rule's purpose." *Marryshow*, 986 F.2d at 692.

Here, Rimini's $100 million offer was ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ (Evanson Decl. ¶ 3, Ex. 3), and therefore only pre-offer prejudgment interest, costs, and attorneys' fees should be added to the judgment when comparing it to Rimini's Rule 68 offer.

Oracle has previously argued that Rimini's offer was lower than the judgment when adjusted for net present value. *See* Dkt. 980 at 12. But Rule 68 does not require courts to adjust an offer of judgment for a net present value. "Rule 68 stands for the proposition that courts should weigh offers for judgment and final judgments *on their face*." *Rolland v. Cellucci*, 151 F. Supp. 2d 145, 151 (D. Mass. 2001) (emphasis added); *see also Simon v. Intercontinental Transp. (ICT) B.V.*, 882 F.2d 1435, 1439 (9th Cir. 1989) ("the only relevant figures for comparison under the rule were the judgment amounts offered and awarded").

Even so, Rimini's offer itself states that the payments would incur interest at the statutory post-judgment interest rate. Evanson Decl. ¶ 3, Ex. 3. Thus, Oracle would have obtained an amount far greater than $100 million had it accepted Rimini's offer.[5] Oracle has also argued that Rimini's offer—which was to be paid in installments—was ineffective because it created a "significant risk"

---

[5] Even when Rimini's offer is adjusted for the time value of money, Rimini's offer still exceeds Oracle's final judgment. *See* Dkt. 1011 Exs. 2–10. Although Oracle previously argued that the interest rates used by Rimini's expert "did not appropriately account for the risks associated with recovering the offers" (Dkt. 1023 at 17 n.23), "present value" is not an evaluation of the risk that a future payment will not be made. "Present value" means "[t]he sum of money that, with compound interest, would amount to a specified sum at a specified future date." *Black's Law Dictionary* (10th ed. 2014).

that Oracle would never be "paid in full." Dkt. 1023 at 17–18. But Rule 68 provides for a comparison between the judgment finally obtained and the amount offered—not the plaintiff's discounted view of what the plaintiff thought the defendant would really pay. *See Rolland*, 151 F. Supp. 2d at 151–52; *see also Johnson v. Bay Bays Chicken & Waffles, LLC*, 2017 WL 5952895, at *4 (S.D. Fla. Nov. 6, 2017) (finding final award more favorable after comparing face value of Rule 68 offer to final award, even though offer of judgment was "to be paid in twelve monthly installments"), *report and recommendation adopted*, 2017 WL 5952894 (S.D. Fla. Nov. 29, 2017). Regardless, Oracle's concern was misplaced, as Rimini in fact paid the full $124,330,923.27 judgment before appeal. Dkt. 1096.

In its prior order awarding fees, this Court concluded that Rimini's offer of judgment was less favorable than Oracle's previously obtained judgment, in part, because the offer "did not include any injunctive relief." Dkt. 1049 at 20 n.6. But this is inaccurate. Rimini's $100 million offer of judgment included an extensive proposed injunction. Evanson Decl. ¶ 3, Ex. 3.

Thus, in comparing Oracle's judgment to Rimini's August 2015 offer of $100 million, the monetary amount of Oracle's judgment is: (the $35.6 million copyright verdict) + (███████ in pre-offer attorneys' fees and costs)[6] + ($19,472,349.98 in pre-offer prejudgment interest) = a total of $94,358,442.98. Vander Veen Decl. ¶ 33, Tab 7 (scenario 1). Even if the Court is inclined to include the entire $22,491,636.16 in prejudgment interest, Oracle's monetary judgment would still be only $97,377,729.15—less than the $100 million Rimini offered. Vander Veen Decl. ¶ 33, Tab 7 (scenario 11). Accordingly, Oracle is statutorily prohibited from recovering *at least* ██████ in fees it incurred after August 24, 2015, and which it seeks in its renewed motion.

## C.   Oracle's Attorneys' Hourly Rates Should Be Reduced to the Local Market Rate

---

[6] This figure already takes into account the 20% reduction in attorneys' fees, the 50% reduction for the expert witness costs of Elizabeth Dean, and the 25% reduction for other non-taxable costs previously ordered by this Court, which Oracle is not challenging. Dkt. 1049; *see Marryshow*, 986 F.2d at 692 (the judgment finally obtained should include "the costs *actually awarded* by the court for the period that preceded the offer") (emphasis added); *see also Bogan v. City of Boston*, 489 F.3d 417, 431 (1st Cir. 2007) (rejecting plaintiffs' argument that amount of pre-offer fees and costs *requested* (as opposed to those actually awarded) should be added to the judgment, and stating that "[i]f this were the rule, a prevailing party could always evade the Rule 68 bar simply by asking for a sufficiently large fee award so that the judgment finally obtained exceeds the offer").

1    Oracle ask this Court to impose on Rimini hourly rates that far exceed the market rates in the

2 local community, without any evidence supporting the reasonableness of the rates relative to the

3 market.  The Court should reduce Oracle's request to account for market rates.

4    Oracle is free to hire and pay any attorney it wishes, and in this case it hired able counsel from

5 one national law firm (Boies Schiller) and one international law firm (Morgan Lewis) that charge

6 rates far in excess of the local market.  While Oracle may choose to pay top-of-the-market rates, it

7 may not foist that choice upon Rimini:  "the determination of a reasonable hourly rate is not made by

8 reference to rates actually charged the prevailing party" but to the "prevailing community rates."

9 *Welch v. Metro. Life Ins., Co.*, 480 F.3d 942, 946, 947 (9th Cir. 2007) (quotations omitted).

10    Oracle relies on out-of-circuit precedent to argue that this Court should judge the rate by

11 reference to the entire country as the relevant market (Dkt. 1120 at 19), but the Ninth Circuit has been

12 clear that "when determining a reasonable hourly rate, the relevant community *is the forum in which*

13 *the district court sits*" and the rate is, within that forum, the prevailing rate "for similar services by

14 lawyers of reasonably comparable skill." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454–

15 55 (9th Cir. 2010) (emphasis added) (quotations omitted).  Oracle makes no argument and has

16 presented no evidence that "local counsel was unavailable, either because they are unwilling or

17 unable to perform because they lack the degree of experience, expertise, or specialization required to

18 handle properly the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  Yet

19 that is the only scenario in which "[r]ates outside the forum may be used." *Id.* (quotations omitted).

20    Oracle is seeking an average associate hourly rate of over $450 and partner rates as high as

21 $967.50.  But Nevada courts usually award experienced associates no more than $250 per hour and

22 partner rates of about $450 per hour.  Dkt. 1007, ¶ 27.2.  As the party seeking fees, Oracle bears the

23 burden to submit actual evidence, "*outside of an attorney affidavit*," demonstrating that its rates are

24 reasonable and in line with the local community.  *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL

25 5451411, at *6 (N.D. Cal. Nov. 7, 2012) (emphasis added); *Jordan v. Multnomah Cty.*, 815 F.2d

26 1258, 1262–63 (9th Cir. 1987).  Oracle failed to do so, and there is therefore no evidentiary basis for

27 Oracle's imposition of out-of-market rates on Rimini.

28    Rimini requests that the Court reduce Oracle's rates to $800 per hour for William Isaacson

and Geoffrey Howard, $550 per hour for Karen Dunn and Thomas Hixson, $475 per hour for remaining partners, and $300 per hour maximum for all associates.  Adjusting the hourly rates reduces the total amount of fees to no more than ███████.  *See* Vander Veen Decl. ¶¶ 27–28, Tab 11c; Appendix A.

> **D.    Rimini Has Provided Information to Assist the Court in Its Calculations**

As set forth above, Rimini has proposed alternative, reasonable reductions in an effort to assist the Court in assessing Oracle's limited degree of success in this litigation.  *See* Kennedy Decl. ¶¶ 7–9 (opining that these reductions are reasonable).  To further assist the Court in calculating the amount of fees, Rimini has included a flowchart attached as Appendix A, which allows the Court to select an offset method (to account for Mr. Ravin's prevailing party status) as well as an apportionment method (to account for Oracle's limited success against Rimini).  *See* Appendix A. Further information is provided in the attached declaration of Thomas Vander Veen.  *See*, *e.g.*, Vander Veen Decl. ¶¶ 27–28, Tab 11b.  Should the Court decide to enter an order providing guidance to the parties on its proposed reductions, Rimini is happy to submit additional calculations to align with that order.  Rimini asks that the Court make the following reductions to Oracle's request.

| Oracle's Requested Amount | | $28,502,246.40 |
|---|---|---|
| **Step** | **Description** | **Total Fees Award After Reduction** |
| A.1 | After Reduction for Mr. Ravin's Total Success | $14,251,123.20 |
| A.2 | After Reduction for Oracle's More Limited Success Against Rimini | $1,187,593.60 |
| B. | After Rule 68 Reduction | ██████ |
| C. | After Unreasonable Rates Reduction | ██████ |
| **TOTAL FEES AFTER REDUCTIONS** | | ██████ |

## CONCLUSION

Oracle's renewed motion for attorneys' fees should be denied.  Alternatively, any fee award should be significantly reduced.

Gibson, Dunn & Crutcher LLP

DATED:  May 25, 2018                        GIBSON, DUNN & CRUTCHER LLP

                                            By: _s/ DRAFT_____
                                                 Mark A. Perry

                                            LEWIS ROCA ROTHGERBER CHRISTIE LLP

                                            By: _s/ DRAFT_____
                                                 Daniel F. Polsenberg

                                            *Attorneys for Defendants*
                                            *Rimini Street, Inc. and Seth Ravin*

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on May 25, 2018, I electronically filed the foregoing document with the

3

clerk of the court for the U.S. District Court, District of Nevada, using the electronic case filing

4

system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of

5

record who have consented in writing to accept this Notice as service of this document by electronic

6

means.

7

GIBSON, DUNN & CRUTCHER LLP

8

By: *s/ DRAFT*                                    
     Mark A. Perry

9

10

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## Appendix A

