1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
2           BEFORE THE HONORABLE LARRY R. HICKS, DISTRICT JUDGE

3

4    ORACLE USA, INC., a Colorado     :
     corporation; ORACLE AMERICA,     :
5    INC., a Delaware corporation;    :
     and ORACLE INTERNATIONAL         :No. 2:10-cv-0106-LRH-VCF
6    CORPORATION, a California        :
     corporation,                     :
7                                     :
             Plaintiffs,              :
8                                     :
         vs.                          :
9                                     :
     RIMINI STREET, INC., a Nevada    :
10   corporation; and SETH RAVIN,     :
     an individual,                   :
11                                    :
             Defendants.              :
12   _____:

13

14

                 TRANSCRIPT OF ORAL ARGUMENT RE
15      ORACLE'S RENEWED MOTION FOR PERMANENT INJUNCTION #1117
            AND RENEWED MOTION FOR ATTORNEY'S FEES #1118
16

17

                          July 23, 2018
18

19                        Reno, Nevada

20

21

22

23   Court Reporter:        Donna Davidson, RDR, CRR, CCR 318
                            Certified Realtime Reporter
24                          400 South Virginia Street
                            Reno, Nevada  89501
25                          (775) 329-0132

```
 1                        A P P E A R A N C E S

 2     FOR THE PLAINTIFFS:

 3     BOIES, SCHILLER & FLEXNER LLP
       RICHARD J. POCKER
 4     300 South Fourth Street, Suite 800
       Las Vegas, Nevada 89101
 5     (702) 382-7300
       Fax: (702) 382-2755
 6     rpocker@bsfllp.com

 7     BOIES SCHILLER & FLEXNER
       BEKO O. REBLITZ-RICHARDSON
 8     1999 Harrison Street, Suite 900
       Oakland, CA 94612
 9     (510) 874-1000 Fax: (510) 874-1460
       brichardson@bsfllp.com
10
       MORGAN LEWIS & BOCKIUS LLP
11     THOMAS S. HIXSON
       JOHN A. POLITO
12     One Market, Spear Street Tower
       San Francisco, California 94105
13     (415) 442-1000
       Fax:  (415) 442-1001
14     thomas.hixson@morganlewis.com
       john.polito@morganlewis.com
15
       JAMES C. MAROULIS
16     Oracle Corporation
       500 Oracle Parkway
17     Redwood City, California 94070
       (650) 506-4846
18     jim.maroulis@oracle.com

19
       FOR THE DEFENDANTS:
20
       GIBSON, DUNN & CRUTCHER LLP
21     MARK A. PERRY
       1050 Connecticut Avenue N.W.
22     Washington, DC 20036-5306
       (202) 955-8500
23     mperry@gibsondunn.com

24

25
```

```
 1              A P P E A R A N C E S (Continued)

 2   FOR THE DEFENDANTS:

 3   GIBSON DUNN & CRUTCHER LLP
     JEFFREY T. THOMAS
 4   3161 Michelson Drive
     Irvine, California 92612-4412
 5   (949) 451-3800
     jtthomas@gibsondunn.com
 6

 7   LEWIS ROCA ROTHGERBER CHRISTIE LLP
     DANIEL F. POLSENBERG
 8   3993 Howard Hughes Parkway, Suite 600
     Las Vegas, Nevada 89169
 9   (702) 949-8230
     Fax: (702) 949-8364
10   dpolsenberg@lrrc.com

11   W. West Allen
     HOWARD & HOWARD ATTORNEYS PLLC
12   3800 Howard Hughes Parkway
     Suite 1000
13   Las Vegas, Nevada 89169
     (702) 667-4843
14   Fax: (702) 567-1568
     ww@h2law.com
15
     DANIEL B. WINSLOW
16   RIMINI STREET, INC.
     3993 Howard Hughes Parkway, Suite 500
17   Las Vegas, Nevada 89169
     (925) 264-7736
18   DWinslow@riministreet.com

19

20

21

22

23

24

25
```

```
 1                    RENO, NEVADA, JULY 23, 2018, 1:35 P.M.

 2                              --oOo--

 3                    P R O C E E D I N G S

 4

 5              THE COURT:  Good afternoon.  Have a seat,

 6     please.

 7              COURTROOM ADMINISTRATOR:  Today is the date and

 8     time for oral argument regarding Oracle's renewed motion

 9     for permanent injunction, number 1117, and renewed motion

10     for attorney's fees, number 1118, in civil case

11     2:10-cv-106-LRH-PAL, Oracle USA, Inc., and others, versus

12     Rimini Street, Inc., and others.

13              Counsel, can you please state your appearances

14     for the record.

15              MR. HIXSON:  Good afternoon, Your Honor.  Tom

16     Hixson and John Polito from Morgan Lewis for Oracle,

17     Richard Pocker and Beko Richardson from Boies Schiller

18     Flexner for Oracle, and James Maroulis, managing counsel at

19     Oracle for Oracle.

20              THE COURT:  All right.  Thank you, Mr. Hixson.

21              MR. PERRY:  Good afternoon, Your Honor.  Mark

22     Perry from Gibson Dunn for Rimini Street.  I'll be arguing

23     the injunction piece.

24              Dan Polsenberg from Lewis Rocca will be arguing

25     the fee piece.
```

1          We also have with us Dan Winslow, the general

2     counsel of Rimini Street, and Jeffrey Thomas from Gibson

3     Dunn, who is the partner in the *Rimini II* case, and also

4     some of my colleagues from Gibson Dunn, and West Allen from

5     the Howard and Howard firm.

6          Thank you, Your Honor.

7          THE COURT:  All right.  Thank you.

8          Well, preliminarily, let me say, I welcome you

9     all back to the courtroom.  It brings back memories of

10    trial.

11         I'm candid to admit I've had more attorneys

12    admitted in this case than any other case that's ever been

13    before me.  And similarly in court and in practice, we've

14    had more attorneys attending than -- well, I've had some

15    cases where we've had as many, but there were more parties

16    involved.

17         So, well, let me inquire of you, Mr. Hixson and

18    Mr. Perry.  I know I entered the order that we would argue

19    the injunction side of this first and then the attorney's

20    fees.

21         Have you, between you, discussed who would be

22    going first?

23         MR. HIXSON:  Oracle is the moving party in both

24    motions, so we hadn't discussed it, but I assumed that we

25    would be going first.

1          THE COURT:  I would assume so too.  But just to

2    make sure we're all on the same page.

3          And I indicated each side would have up to 45

4    minutes on each one of the two arguments.

5          And so that takes us to you, Mr. Hixson.  You're

6    welcome to go forward.

7          MR. HIXSON:  Good afternoon, Your Honor.  As

8    you've indicated, the Court has given each side 45 minutes

9    per motion.  I would like to reserve 15 minutes of my time

10   for rebuttal, with the Court's permission.

11         THE COURT:  You certainly may.

12         MR. HIXSON:  Concerning the permanent

13   injunction, before I turn to the four *eBay* factors, I'd

14   like to address two preliminary issues, and the first is

15   the meaning of the Ninth Circuit's remand of the injunction

16   to this Court.

17         The remand is important, but, conceptually

18   speaking, it's not complicated.  When the court of appeals

19   reviews a decision by you on an injunction matter, they

20   review it for abuse of discretion.  So the court of appeals

21   wants to know that they're reviewing an exercise that you

22   did of your discretion.

23         They don't want to guess.  They don't want to

24   predict.  They don't want to say, Well, in the situation it

25   might be similar or different and the judge might have

1      ruled this way.  They want to know.  They want to know how

2      you acted in that situation.

3              Here, in 2016, you originally reviewed and

4      applied the four *eBay* factors to both Oracle's copyright

5      infringement claim and our California computer access claim

6      and applied them together.  And that was the context in

7      which you granted the permanent injunction.

8              The two injunctions were discrete.  One was

9      about the copyright infringement; one was about the

10     California computer act, as the Ninth Circuit noted, but

11     you review the *eBay* factors and your analysis together.

12             Now that the Ninth Circuit has reviewed the

13     California state access claim, they sent this case back to

14     you to exercise your discretion under Section 502 of the

15     Copyright Act, and they want to know what you would do if

16     presented with copyright infringement alone.

17             And they tell us that explicitly on page 964 of

18     the opinion where they say:

19             "We do not know how the district court would

20         weigh the *eBay* factors with respect to the

21         copyright claims alone."

22             And that's the scope of the remand.  It's a

23     straightforward issue.

24             Now, Rimini in their briefs tries to make a lot

25     more of it.  They say that the Ninth Circuit remanded with

1    instructions for you to do a lot more work on remand.  At

2    times Rimini even used the words "reversed" to describe

3    what the Ninth Circuit did with the injunction, when, in

4    fact, they simply vacated and sent it back.

5              But the Ninth Circuit is clear about what they

6    want from you, and that's to exercise your discretion when

7    it's just copyright infringement, are you willing to grant

8    the permanent injunction.

9              Rimini does say there are hints and suggestions

10   by the Ninth Circuit that the injunction was too broad,

11   that it extended to certain product lines it shouldn't have

12   covered, and things like that.

13             But the Ninth Circuit did not do any of that.

14   None of that is real.  And, in fact, the Ninth Circuit came

15   right on you and told you that again on page 964 of their

16   opinion, where they say, quote, We express no view on the

17   propriety or scope of any injunctive relief, which are

18   matters committed to the district court's discretion in the

19   first instance.

20             And so this is an important remand, but it's a

21   narrow one in scope:  Are you willing to do the same thing

22   when it's just copyright infringement as you did

23   previously.  And we believe that you should.

24             All of the reasons that you listed in your

25   September 2016 order for granting the permanent injunction

1    continue to apply when it's just a copyright infringement

2    claim.

3          Oracle has still suffered irreparable harm, the

4    remedies at law are still inadequate, and the balance of

5    hardships and the public interest continue to weigh in

6    favor of Oracle.

7          As a testament to how similar the issues are to

8    the ones you've previously considered, it's striking that

9    so many of the arguments in Rimini's opposition brief are

10   exactly the same ones they raised two years ago with the

11   Court's prior consideration of the motion.  And this helps

12   demonstrate that the findings and conclusions you made in

13   2016 continue to support the issuance of a permanent

14   injunction today.

15         Now, let me turn to the second preliminary

16   matter I'd like to discuss, which is the most curious

17   aspect of Rimini's opposition brief.

18         They say that if the Ninth Circuit did not

19   explicitly reach the merits of an issue, then you can't

20   enjoin them on that.  They don't say why they think that.

21   They don't say that there's a case that says that.  They

22   don't say there's a statute that says that or any kind of

23   doctrine or rule.

24         Their brief simply assumes that unless the Ninth

25   Circuit reached a certain issue, you are powerless to

1     enjoin them for that particular conduct.

2           But we never hear where that assumption comes

3     from.  The brief is just written on that premise.  Rimini

4     is incorrect about that.  Under both the rule of mandate

5     and the law of the case, their argument is wrong.

6           The rule of mandate provides, as the Ninth

7     Circuit explained in *United States v. Thrasher*, that a

8     district court cannot revisit its already final

9     determinations unless the mandate allowed it.

10          And we quoted for Your Honor the discussion of

11    the law of the case and the Ninth Circuit's decision in

12    *United States v. Lummi Indian Tribe*:

13          "A Court is generally precluded from

14          reconsidering an issue previously decided by the

15          same court, or a higher court in the identical

16          case."

17          And here the Court issued two orders on summary

18    judgment concerning PeopleSoft and Database infringement in

19    construing licenses with respect to JD Edwards and Siebel.

20          The Court then gave instructions to the jury,

21    and the jury heard the evidence and ruled in favor of

22    Oracle on all 93 of Oracle's copyright claims.

23          The copyright claims were adjudicated to

24    finality in this court.  There was nothing left.  There was

25    nothing unresolved.  Oracle prevailed entirely on its 93

1       copyright claims.

2                    And the Ninth Circuit's verdict on appeal was to

3       affirm the copyright verdict.  They did not reverse any

4       part of it.  They did not criticize you.  They did not

5       criticize any of the jury's findings.  They didn't say

6       anything about the copyright verdict was unclear.  They

7       simply, flat out affirmed.

8                    In that situation, under the rule of mandate and

9       the law of the case, you should not go back and revisit

10      your prior orders or the jury's determinations.  Those are

11      still binding.  Those determinations are still valid.

12      There's no basis to narrow the scope of Rimini's copyright

13      infringement liability.  Instead, you should issue a

14      permanent injunction that enjoins the full scope of

15      Rimini's infringing conduct that both you and the jury have

16      already adjudicated.

17                   There's a particularly powerful reason why you

18      should do this and why your injunction should reach matters

19      that were not reached by the Ninth Circuit in their opinion

20      on the merits.  And one of them is that Rimini made

21      strategic decisions on appeal and some unstrategic

22      decisions about issues that it wanted to challenge.

23                   Rimini didn't appeal everything that you found

24      on summary judgment, and they didn't appeal everything the

25      jury found.

1          To take a couple of examples, the jury found

2     liability for the creation and distribution of derivative

3     works.

4          You may recall at the 2015 trial Oracle put on

5     Professor Randall Davis who testified how Rimini created

6     derivative works in the form of patches and updates and

7     fixes and then distributed them to hundreds of its

8     customers, and he had charts and graphs showing the process

9     by which Rimini created these derivative works and the

10    number of different customers that received them.

11         And the next witness at trial was Seth Ravin,

12    Rimini's CEO.  And he was confronted with these exhibits

13    from Professor Davis' testimony, and he agreed, he said

14    that sounded right to him.

15         And when asked by his own counsel about the

16    preparation of these derivative works and their

17    distribution to customers, he said that Rimini did it,

18    quote, all the time.  So the jury found -- had that

19    evidence in front of them, and they ruled in favor of

20    Oracle on the merits.

21         On appeal, Rimini elected not to challenge the

22    findings about derivative works and distribution.

23         Now, I understand that there may have been a

24    reason why Rimini didn't want to do that and why they

25    limited their appeal to the reproduction rights.  If the

1    copies of the software, the development environment sitting

2    on Rimini's servers were infringing, then obviously the

3    derivative works that were prepared with them and were

4    distributed from them were also infringing.  So there was

5    no upside to Rimini from separately challenging the

6    derivative works and distributor issues on appeal.  They

7    didn't touch those issues on appeal.

8           But a necessary consequence of that is that the

9    Ninth Circuit, therefore, didn't reach it.  When an

10    appellant who has lost in the court below doesn't raise an

11    issue on appeal, there's no reason for the court of appeal

12    to do that, unless it were jurisdictional, which here it

13    wasn't.

14           And yet now what do we see when Oracle has

15    renewed its motion for a preliminary injunction?  Rimini is

16    telling you that you shouldn't enjoin the preparation of

17    derivative works or the distribution of them because,

18    quote, the Ninth Circuit didn't reach the issue.  But they

19    didn't reach the issue because Rimini didn't raise it.

20           The situation is even more extreme with respect

21    to Oracle Database.  Oracle moved for summary judgment on

22    every single copy of Oracle Database that Rimini had in its

23    possession or that it used to provide for support.

24           We said that none of them were authorized by the

25    developer license, which doesn't allow the commercialized

1      use of Database, and that Rimini had no ability to assert

2      its own customers licenses.  And you ruled in favor of

3      Oracle on all of the copies of Oracle Database.

4              And the Ninth Circuit said that Rimini waived

5      its appeal.  They said that Rimini failed to challenge your

6      order on summary judgment, and they waived it.  The Ninth

7      Circuit used the word "waived."

8              And now look what Rimini's doing.  They're

9      coming back before you in their opposition and brief, and

10     they're saying you can't enjoin them with respect to Oracle

11     Database because the Ninth Circuit didn't reach the merits

12     of the issue.

13             But that's crazy.  It wasn't -- the Ninth

14     Circuit said that Rimini had waived the demerits of the

15     issue.

16             Take a defendant who is convicted of murder and

17     then files his notice of appeal several days late.  I bet

18     the court of appeals is going to find that he probably

19     waived his right to appeal.  That doesn't mean he's not a

20     murderer anymore.  It means he has waived his ability to

21     challenge that determination.  Yet, that is literally the

22     argument that Rimini is saying.

23             They lost on summary judgment with respect to

24     Database.  The Ninth Circuit said they had waived their

25     ability to challenge that on appeal.  And before you they

1        say, aha, we're in the clear, you can't enjoin us.

2                No, that's not right.  They're not in the clear.

3        They're absolutely not in the clear when they have waived

4        their right to appeal and they have lost across the board

5        before this court on Oracle Database.  So you should

6        absolutely enjoin them with respect to Oracle Database

7        because they waived that on appeal.

8                And there were other issues that Rimini chose

9        strategically or unstrategically not to raise on appeal.

10       The Ninth Circuit reminded us all of one of them in

11       footnote 2 where they pointed out that your jury

12       instructions very clearly distinguished between software

13       and documentation.  And the Ninth Circuit noticed that

14       there was no appeal by Rimini with respect to any of the

15       documentation.

16               Does that mean you shouldn't enjoin them with

17       respect to documentation?  No.  They lost in the court

18       below, and they chose not to raise that issue on appeal.

19               For some issues, where Rimini did appeal, there

20       were multiple grounds on which this Court found Rimini's

21       conduct to be infringing and the Ninth Circuit didn't need

22       to reach all of them.  For example, let's talk about the

23       PeopleSoft environments, because Rimini makes such a big

24       deal about this in their opposition brief.

25               On summary judgment, in February 2014, you found

1    that the PeopleSoft environments were infringing for two

2    reasons.

3              First, you found that the license had a

4    facilities restriction, and so because these environments

5    were not on the customers' facilities, they infringed for

6    that reason.

7              Second, you found that the licenses had a

8    restriction that the software could only be used for the

9    internal data processing operations of each particular

10   client.  By contrast Rimini cross-used.  They cross-used a

11   clone, one environment for other clients, they cross-used

12   to have one environment to create derivative works that

13   they would send to a large number of them.  So there were

14   two grounds for that.

15             Then at trial Oracle introduced a third ground,

16   the derivative works issue that Rimini created and

17   prepared, patches, fixes, updates from these environments

18   and then distributed them.

19             On appeal Rimini challenged the facilities

20   restriction and the cross-use restriction, but not the

21   derivative works and distribution.

22             And the Ninth Circuit resolved the PeopleSoft

23   environments on the facilities restriction.  They said

24   it -- yep, it sure looks like these software environments

25   can only be at the customers' facilities, and they weren't.

1    They were on Rimini's facilities.

2              And the Ninth Circuit then dropped a footnote

3    and said because that issue was dispositive, because that

4    meant that all of those environments were infringing, they

5    didn't need to reach the separate issue of cross-use.

6              That doesn't mean that they reversed you.  It

7    means that the court of appeals -- there were two grounds

8    on which you held those environments to the unlawful, and

9    they only needed one to affirm.

10              That's a common thing for a court of appeals to

11   do.  There might be several things in support of a district

12   court's decision.  They don't need to decide all of them.

13              Fundamentally, the way Rimini reads the Ninth

14   Circuit's decision is that for every decision that you

15   made, for every finding that the jury made, Rimini is

16   saying that if the Ninth Circuit didn't reach that

17   particular issue, they secretly reversed.

18              Rimini would have you believe that large

19   portions of the Ninth Circuit's opinion are written in

20   invisible ink that only Rimini can see, that they

21   constantly went around reversing every single part of your

22   and the jury's copyright infringement determinations that

23   they did not explicitly reach.

24              But they didn't.  That's not there.  There isn't

25   the invisible ink there with the secret reversals.  The

1    verdict from the Ninth Circuit was affirmed, affirmed

2    without qualification.

3         Rimini's argument that they narrowed the finding

4    of copyright infringement liability, that they somehow

5    reversed or limited, none of that is what the word

6    "affirmed" means.

7         Under both the rule of mandate and the law of

8    the case, your prior findings, the jury's prior findings on

9    the full scope of Rimini's copyright infringement remain

10   intact and should not be reconsidered, and you should issue

11   a permanent injunction that goes to the full scope of the

12   adjudicated liability that Rimini has for copyright

13   infringement.

14         I'd like to turn now to the *eBay* factors and

15   focus on the first two, which is irreparable injury and the

16   remedies of law being inadequate.

17         There were several types of irreparable injury

18   that you found in your 2016 order.  There was good reason

19   to find them, and they continue to be correct findings

20   today.

21         The first was direct competition and the loss of

22   market share.  And we cited for the Court and cited again,

23   and you quoted cases such as the Federal Circuit's decision

24   in *Presidio Components* where they said:

25         "Direct competition in the same market is

1          certainly one factor suggesting strongly the

2          potential for irreparable harm."

3               And then in another case, *Douglas Dynamics*, this

4     was in the patent context, they said:

5          "Where two companies are in competition

6          against one another, the patentee suffers the

7          harm, often irreparable, of being forced to

8          compete against products that incorporate and

9          infringe its own patented inventions."

10              And, Your Honor, that is what is happening here.

11              Oracle has invested literally billions of

12    dollars in its valuable software products, and Oracle uses

13    those to compete in the market, and it finds itself in the

14    untenable situation where Rimini takes those inventions,

15    products that Oracle developed, and uses them to compete

16    against Oracle.

17              Rimini didn't have to incur any of the

18    development costs to make its own software because it

19    doesn't have a computing software product.  It uses the

20    environments of the Oracle software environments to develop

21    infringing derivative works, the patches that fixes them,

22    the updates to provide to its customers.

23              Rimini can do that at 50 percent off because it

24    doesn't spend billions of dollars to create its own

25    software.  It uses Oracle software against Oracle in an

1      infringing manner.  This is the direct competition that you

2      recognized as being an irreparable harm.

3            And Mr. Ravin was open about this on the witness

4      stand.  He said absolutely it was Rimini's business plan to

5      avoid incurring the costs of developing a competing product

6      and, instead, to make use of Oracle's products so they

7      could develop patches and fixes on that to have a scaleable

8      model, a more efficient model.  He didn't use the word

9      "infringing," but that's what that meant, to take Oracle's

10     products in direct competition and use infringement so they

11     could sell it at a cut-rate cost against Oracle.

12            And, as noted, you previously found this to be

13     irreparable harm.

14            Importantly, this is copyright harm.  It's not

15     computer access harm.  It is copyright harm directly

16     relevant to the remand in your consideration of an

17     injunction under Section 502.

18            The unlawful downloading that Oracle sued about

19     in *Rimini I* involved tools that Rimini employee, Douglas

20     Barren, developed for Rimini Street to use.  Rimini stopped

21     using those tools in January of 2009, but the infringement

22     continued.

23            All the new customers they gained in 2009 in

24     2010, in 2011, and all the years since then, that's

25     copyright harm that is being done to Oracle with direct

1    competition.

2              And the Court found in 2016 that Rimini would

3    not have achieved the market share that it had without this

4    use of infringement.  That's a direct link between the

5    copyright infringement and the irreparable harm, the loss

6    of market share and direct competition to Oracle.

7              And now why is this harm irreparable?  Why are

8    remedies at law inadequate?  You said it yourself in 2016.

9    Because loss of market share is difficult to quantify.

10   Because every day Oracle is going out there competing in

11   the situation of competing against its own inventions being

12   used against itself by an infringer.

13             There's also a second type of irreparable harm

14   that the Court found, and that's harm to goodwill and to

15   business reputation.

16             Courts in the Ninth Circuit have repeatedly held

17   that this type of harm is sufficient to justify a permanent

18   injunction.

19             We've cited for Your Honor the Ninth Circuit's

20   decisions in *Apple v. Psystar* and *Rent-A-Center* on this

21   point.  And, again, the evidence shows that Rimini's

22   infringement did injure and continues to injure Oracle's

23   reputation and goodwill.

24             Oracle's CEO, Safra Catz, testified that the

25   harms to Oracle's relationships that come from Rimini

1    telling everybody that Oracle is ripping them off.  Because

2    that's what Rimini is doing, when they go out there with

3    their 50 percent off, because they didn't have to spend any

4    money to write any of their software, they convey the

5    impression that Oracle is overcharging.

6              And they're proud of that.  This is their

7    marketing message.  They go out and tell everybody that

8    Oracle is overcharging them.  And this breaks the bonds

9    between Oracle and its customers.  This is a harm to

10   Oracle's reputation and goodwill.

11             There are other harms beyond that, that Ms. Catz

12   and Edward Screven testified to at trial, that many

13   customers believe Rimini's promises about its support being

14   adequate, and they find out only too late that without

15   Oracle's upgrades their systems are frozen and out of date,

16   and they can blame Oracle for that because Oracle was the

17   developer of the software.

18             This type of harm to goodwill is also

19   irreparable.  It's very difficult to quantify, and it's

20   hard to compensate exactly the effects on Oracle from all

21   of this.  And the *eBay* and *Apple* cases endorse this view

22   and say because this harm to goodwill and business

23   reputation's difficult to quantify, it again is a further

24   reason for a permanent injunction.

25             Now, Rimini constantly argues that the jury's

1      rejection of lost profits as a measure of damages means

2      there was no harm to Oracle.  But that's incorrect.

3              The jury was given different measure of ways to

4      measure damages and was asked to choose the one they

5      thought was most appropriate.  They chose a fair market

6      value and went with that one.

7              As the Court previously acknowledged, they may

8      have chosen not to award lost profits simply due to the

9      difficulty in ability to compute the lost profits.  And the

10     case law has recognized that sometimes lost profits can be

11     difficult to compute, and that's a further reason why an

12     injunction is important to protect the harm to goodwill and

13     the harm to business competition.

14             This is also why the *Rimini II* lawsuit is no

15     answer to Oracle's products.  Rimini says in their

16     opposition brief that you don't need to issue a permanent

17     injunction because there's a second lawsuit between the

18     parties, and they say any problems can be dealt with in

19     damages in that case.  They say Oracle hasn't explained why

20     it needs a permanent injunction in the first case when we

21     have the second one going on.

22             But we have explained, and there are several

23     reasons, and harm to goodwill and business reputation is

24     one of them.  Those are extremely difficult to quantify and

25     to recover in any lawsuit.  These harms are ongoing.

1           Rimini's advertising campaign, where they say

2    they're 50 percent off, means that Oracle is overcharging,

3    that reaches not just customers that end up going to

4    Rimini, it reaches a large segment of Oracle's customer

5    base, including customers that end up not going to Rimini,

6    including customers when they're trying to make the initial

7    decision do they license Oracle's software or do they

8    license a competitors's software, such as SAP or Salesforce

9    or Workday.

10          Rimini's broad message that Oracle is ripping

11   off its customers, which Rimini delivers because through

12   infringement it can offer 50 percent off, this hits

13   Oracle's customer base as a whole and customer -- potential

14   customers.

15          Even if Oracle recovers every single dollar in

16   lost profits in the *Rimini II* action, it will never have

17   any recovery for that harm to its business reputation and

18   goodwill due to Rimini's broad message out to Oracle's

19   customer base and potential customer base.  And that's one

20   reason why an injunction is necessary and the second

21   lawsuit will not provide a full recovery for Oracle.

22          There's also another type of irreparable harm

23   for which there's no remedy at law, and that's Oracle's

24   right to exclude.  And this was something I discussed in

25   2016 about the *eBay* case where Chief Justice Roberts had a

1      concurring opinion, where he acknowledged that, yes, it's

2      true, courts apply the traditional four factors in equity

3      to decide whether to issue an injunction.

4              And, yet, in case after case patent holders

5      routinely win the injunctions.  And he was trying to

6      explain why is that?  Is there some kind of contradiction

7      in there?

8              And he said, no, there's no contradiction

9      because at bottom a patent is a right to exclude, and

10     fundamentally damages can never fully make up for an

11     infringement on the right to exclude.

12             A copyright is similar to a patent in that it is

13     also a right to exclude.  And here, without an injunction,

14     Oracle suffers irreparable harm.

15             In this case, Oracle has been forced against its

16     will to become an involuntary licensor of its software to

17     Rimini Street, a company with which it wanted never to do

18     any business.  The jury awarded a fair market value of use

19     to Oracle as a measure of damages approximating the value

20     to use of Rimini Street, effectively, you know, a

21     hypothetical license amount.

22             But Oracle didn't want to license its software

23     to Rimini at any amount of money.  What Oracle wants is to

24     enforce its right to exclude.  And that's why we're here

25     before you today, saying just paying Oracle what amounts to

1    rent for using its property, a fair market value for using

2    it for a period of time isn't sufficient, because Oracle

3    has a right to exclude, to keep Rimini away from its

4    copyrights.

5         Sometimes I think that when we're talking about

6    intellectual property, analogies to physical property can

7    be helpful to illustrate a principle.  And this is one of

8    those times.

9         Imagine that you're a property owner.  You spent

10   a lot of money to buy some land, and you want to use this

11   land to run your business.  So you put up a shop on your

12   land.  You have a business, you're working hard, you're

13   getting customers, you're making a profit, and then one day

14   you notice that your competitor has built their shop on

15   your land as well.

16        They didn't go out, they didn't buy their own

17   land, they put up their shop on your land, and they're out

18   competing with you.

19        So you sue them for trespass, as any reasonable

20   person would.  You win at trial, and the jury awards you

21   damages, say reasonable value of use, amounting basically

22   to rent for them being on your land.

23        Then you move for a permanent injunction, and

24   the competitor comes back and says, Oh, you don't need an

25   injunction, you can just sue us again in the second case,

1    and then down the road you might get some more dollars for

2    a continued use of your land without your permission.

3              Your Honor, in that situation I hope you would

4    have some sympathy for the property owner who said, Hey,

5    wait a second, I never wanted to be a landlord.  I didn't

6    want to rent out my property, especially to my biggest

7    competitor.  This is -- I didn't want to be in that

8    business, I don't want to have anything to do with them at

9    all.

10             That's the position in which Oracle finds itself

11   as well.  It never wanted to be licensing its software to

12   Rimini, it wants Rimini not to use that at all.

13             The only way to enforce Oracle's right to

14   exclude is with a permanent injunction.  And that's another

15   reason why the *Rimini II* case cannot be a remedy at law for

16   Oracle because that would just -- that could be more

17   damages, yes, Oracle could potentially recover a very large

18   amount of damages, and is, in fact, seeking a large amount

19   of damages, but fundamentally Rimini's conduct would still

20   be continuing.

21             And the only way to enforce Oracle's right to

22   exclude is with an injunction.  Otherwise Rimini will

23   continue trespassing on Oracle's intellectual property.

24             The remaining *eBay* factors are straightforward.

25   The balance of hardships and the public policy again tilt

1     in Oracle's favor as you determined in 2016.

2              On both of those issues, it's important to note

3     that Oracle drafted a proposed order that tracks exactly

4     the liability determinations that you made on summary

5     judgment and the jury instructions that you gave to the

6     jury going into the trial.  We mirrored that exactly to

7     make sure that this injunction tracks the full scope of the

8     liability findings and doesn't go any further.

9              You may recall that the prior injunction had two

10    parts.  The first part was about copyright under Section

11    502 of the Copyright Act, and the second part was under the

12    California computer access statute.  They were completely

13    distinct parts of the injunction.  We didn't mix and

14    mingle.  We didn't match up copyright and the California

15    access.  We had them as separate.

16             And the Ninth Circuit saw that and they noticed

17    it and they pointed that out.  They said, yes, it looks

18    like that computer access injunction was totally distinct

19    from the copyright injunction.

20             So what we did, Your Honor, when we filed this

21    renewed motion, is we just took out all of the computer

22    data access and fraud and just went with the

23    straightforward copyright injunction.  It tracks the

24    findings that you made before exactly, it tracks your

25    liability findings and the jury instructions.

1           And because of that, the balance of hardships
2    and public policy weigh strongly in favor of Oracle because
3    you would only be enjoining conduct that has already been
4    adjudicated to having been found unlawful and there's no
5    legitimate reason for that conduct to continue.
6           Now, Rimini has a bunch of other arguments that
7    they made again in 2016 and that you rejected.  But for the
8    sake of completeness I'll tic through them.
9           One is their voluntary cessation argument.  They
10   say that after you ruled against them on their February
11   2014 summary judgment order they began to change their
12   ways.
13          Now, as you know, Your Honor, we don't believe
14   for a minute that they stopped infringing, and that's part
15   of the reason why we have the second case.
16          But for purposes of today, we're not asking you
17   to decide *Rimini II*, we're asking you to look at cases like
18   *MGM v. Grokster*, as you did before, that say that, Wait, if
19   you only cease the infringing conduct after a court has
20   issued a summary judgment order against you, that doesn't
21   count.
22          That's not good enough for voluntary cessation
23   because they did it only under judicial compulsion.  And
24   so -- and presumably if there were no injunction and no
25   further judicial compulsion, there's too great a risk that

1   the infringement could resume.

2           And we cited other cases, including the Ninth

3   Circuit's decision in *SEC v. Koracorp* that say, again, that

4   if they stop only after they've been caught, then that

5   doesn't count as a valuable voluntary cessation.

6           You should also bear in mind that after you

7   issued the last injunction in 2016, when Rimini claimed it

8   had stopped its infringing ways, what did they do?  They

9   filed an emergency motion.  They said that your injunction

10  would cause -- I'm going to quote their words, untold

11  irreversible consequences to Rimini Street if that

12  injunction were allowed to go into effect.

13          They submitted a declaration under penalty of

14  perjury saying that injunction would require additional

15  changes to their processes.

16          Well, that injunction just tracked the scope of

17  the infringing conduct.  That meant they hadn't really

18  ceased their infringing ways.

19          And, again, Rimini raises the innocent infringer

20  argument that they raised in 2016 and that you dealt with

21  in your prior order.  That just has nothing to do with the

22  Court's ability to issue an injunction.  Section 502(a) of

23  the Copyright Act authorizes you to issue a permanent

24  injunction.  Congress said absolutely nothing about

25  requiring the infringement to be intentional or willful or

1    anything like that.  An innocent infringer can be enjoined

2    like anyone else.

3            We've cited cases for Your Honor where courts

4    have done that.  Rimini has yet to come up with a case

5    saying that there's some kind of unstated requirement in

6    the statute that innocent infringers can't be enjoined. And

7    I do think as we consider that innocent infringer argument,

8    we all need to use common sense and realize what an

9    injunction is.  An injunction enjoins conduct in the

10   future, conduct that would happen after you issue

11   injunction, not conduct in the past.

12           The innocent infringer determination was based

13   on the state of mind the jury thought Rimini had with

14   respect to the infringement before the verdict came down.

15           But then the verdict came down, and the jury

16   found that they were liable, and the Ninth Circuit affirmed

17   that judgment of liability.

18           So if you issue an injunction at this point,

19   you're not enjoining innocent infringement, your enjoining

20   infringement that cannot in any way, shape, or form be

21   considered innocent.

22           Lastly, with respect to the scope of the

23   injunction, all of the arguments Rimini raises now are just

24   repeats from 2016, with one exception, and that's the

25   exception, the argument that I began with, where they say

1    that you can't enjoin something unless the Ninth Circuit

2    specifically reached the merits of that issue.

3            And that's just flat-out wrong.  As I said,

4    there were a number of reasons Ninth Circuit didn't reach

5    every issue.  One of the big reasons is that Rimini waived

6    some of those arguments and didn't raise them on appeal,

7    and others the court of appeal didn't need to.

8            But under both the rule of mandate and the law

9    of the case, there's no call for you to go back and narrow

10   the scope of yours and the jury liability findings.  All of

11   the *eBay* factors favor the grant of a permanent injunction,

12   and we ask that the Court grant one.  Thank you.

13            THE COURT:  Thank you, Mr. Hixson.

14            MR. PERRY:  May I approach, Your Honor?

15            THE COURT:  You may.

16            MR. PERRY:  Mark Perry for Rimini Street, Your

17   Honor.  I've handed up to the bench and to opposing counsel

18   a booklet with some slides that I hope will illustrate the

19   core of the parties' dispute.  And that's really what I'd

20   like to focus on today.

21            Oracle stands here and asks this Court to enter

22   the identical injunction that one panel of the Ninth

23   Circuit has already stayed and another panel of the Ninth

24   Circuit vacated.

25            Oracle admits that it advances the same

1    arguments that it did in 2016 because in Oracle's view

2    there has been no change in law, no change in facts, and

3    accordingly the merits of its motion have not changed.  And

4    that's a direct quote from its motion at page 12.

5            What's changed, Your Honor, is we have a Ninth

6    Circuit opinion.  We had an appeal in which these issues

7    were hotly contested by the parties, and we didn't have

8    that the last time around.  And our summation,

9    respectfully, is that the entry of Oracle's proposed

10   injunction is foreclosed by the Ninth Circuit's opinion.

11   And I'd like to focus at least the first part of my remarks

12   on that.

13           The parties' dispute really boils down to what

14   is the effect of that decision.  You just heard Mr. Hixson

15   describe in his second preliminary statement that

16   everything this Court and the jury did stands and was

17   affirmed by the Ninth Circuit.  That's Oracle's position.

18           Rimini's position is what the Ninth Circuit,

19   when confronted with express arguments, where it ruled on

20   one and not the other, the second is not preclusive, it

21   doesn't bind this Court, doesn't bind the parties.

22           And Oracle called that -- Mr. Hixson just called

23   that the most curious aspect of our argument.  He said that

24   has no authority and no basis.  And I think this really is

25   the Court -- this Court will have to decide this two

1    competing positions.

2              Because if Oracle's right, they're further down

3    the road; but if we're right, they lose entirely.  You

4    can't issue the injunction if they're not right on this

5    point.

6              And let me explain to the Court why they're not

7    right.  And I'd like to use the PeopleSoft licenses as an

8    example.

9              As the Court will recall, there were two bases

10   for PeopleSoft liability: local hosting and cross-use.

11   Both were appealed to the Ninth Circuit.  There's no waiver

12   issue here.  Both were hotly disputed in the Ninth Circuit.

13   And I'll come back to that point.

14              But in the Ninth Circuit's decision, the Ninth

15   Circuit ruled only on local hosting.  The Court sustained

16   the liability finding as to PeopleSoft as to local hosting,

17   and it put in a footnote, footnote 6, and I've put it up on

18   slide 3 here because it's very important:

19              "Because we address the question of

20         infringement as to PeopleSoft on the narrow

21         ground of local hosting, we do not decide

22         whether direct use or cross-use was permitted by

23         the PeopleSoft license."

24              "We do not decide."

25              So what is the consequence of that, Your Honor?

1    In its reply brief, Your Honor, Oracle says, and you heard

2    Mr. Hixson say it again today, that the law of the case and

3    the law of the -- and the mandate rule apply here.

4              That's wrong.  That's wrong as a matter of law.

5    And since we didn't get a surreply, I need to explain why

6    the first time.  Frankly, this is federal courts 101.

7              Your Honor, when a judgment goes up on appeal,

8    it's the judgment of the highest court that's controlling,

9    not the summary judgment, not the verdict, not the post-

10   trial judgments in the trial court, but the appellate

11   judgment.

12             And the scope of the appellate judgment and

13   mandate are defined by the Court's opinion if it chooses to

14   write one.  This is the Black Letter Law.

15             I've put on Restatement of Judgments, what

16   happens if two grounds for a judgment are presented to the

17   court of appeals and the court resolves one but refuses to

18   decide the other?

19             And the restatement is very clear.

20             "If the appellate court upholds one of the

21        determinations as sufficient and refuses to

22        consider whether or not the other is sufficient

23        and accordingly affirms the judgment, the

24        judgment is conclusive as to the first

25        determination," the one decided by the court of

1          appeals, it is not conclusive as to the second

2          determination.  That is the law.

3               The federal appellate courts uniformly follow

4     this approach.

5               I've put up on the next slide a quote from a

6     representative Ninth Circuit case:

7               "It is a well-established principle of

8          federal law that if an appellate court considers

9          only one of a lower court's alternative bases

10          for its holding, affirming the judgment without

11          reaching the alternative bases, only the basis

12          that is actually considered can have any

13          preclusive effect in subsequent litigation."

14               And I put the citation on here.  And because

15     this issue came up for the first time in Oracle's reply

16     brief, I've put, Your Honor, in the packet at slide -- or

17     in tab 5, just a few respective case citations from lots of

18     courts of appeals for this same proposition, which I think

19     is undisputed and frankly indisputable.

20               Your Honor, the Ninth Circuit considered local

21     hosting sufficient to sustain the liability as to

22     PeopleSoft.  The Ninth Circuit did not decide cross-use.

23     Therefore, the parties and the Court are bound as to local

24     hosting but are not bound as to cross-use.

25               That means it can be litigated again in *Rimini*

1    *II*, and will be, and cannot be the subject for an

2    injunction now after the Ninth Circuit's ruling.  The

3    equitable power of this Court is limited to the acts

4    actually adjudicated as infringing.

5              Oracle admits this, Your Honor, in their motion

6    at page 17.

7              "Oracle seeks only to enjoin acts that have

8         already been determined to be unlawful."

9              And as to PeopleSoft the only act determined to

10   be unlawful by the Ninth Circuit was local hosting, and the

11   Court expressly did not decide whether cross-use

12   was unlawful.

13             The same point carries through, Your Honor, to

14   JD Edwards and Siebel, the other two product lines that

15   have this issue.

16             Here we have something of the converse of the

17   PeopleSoft situation.  The court -- the Ninth Circuit ruled

18   that there are no site restrictions in those two licenses.

19   There's no local hosting problems at all, even though

20   Oracle's proposed injunction contains a local hosting

21   restriction that has no basis in the license, the judgment,

22   or the appellate mandate.

23             And with respect to cross-use, the Ninth Circuit

24   was very circumscribed.  The Ninth Circuit ruled that a

25   very specific form of cross-use, the use of one client's

1    software to create a development environment for a future

2    customer was an infringing act.

3              Court of Appeals stressed, and we put this quote

4    up on the next slide:

5              "Rimini created development environments for

6          future customers using the license of an

7          existing customer on the basis that future

8          customers presumably would have licenses that

9          would permit them to hire Rimini to create

10         development environments."

11           That was the context of the Ninth Circuit's

12    discussion of cross-use for JD Edwards and Siebel.

13           Now, in its reply brief, Your Honor, at page 3,

14    Oracle says that we, Rimini, ignore that the Ninth Circuit

15    broadly defined cross-use to include both current customers

16    and future customers.

17           Your Honor, it's absolutely true at page 956 of

18    the Court's -- Ninth Circuit's opinion in the background

19    section the Court has a sentence that's prefaced, generally

20    speaking, where it describes what cross-use may be broadly.

21    But then in the analysis portion of its discussion, on page

22    957 of the opinion, where it actually applies cross-use

23    limitations to the JD Edwards and Siebel products, it is

24    limited to future customer cross-use.

25           And the Ninth Circuit itself removed any doubt

1    on this, Your Honor, in the very next portion of its

2    opinion, which addressed copyright misuse, and the Court

3    said, and I'm quoting from page 958, and this is at the

4    bottom of slide 8 -- 6, excuse me, quote:

5              "The only remaining question is whether it

6         would be copyright misuse to forbid Rimini from

7         creating environments for licensees before they

8         have become customers."

9              Future customer cross-use.  And the Court said

10   that is not copyright misuse.  The Court did not address at

11   all whether current customer cross-use would be copyright

12   misuse because it didn't decide anything as to current

13   customer cross-use.

14             The only scope of the Ninth Circuit's opinion

15   was as to future customers.

16             And if we could put up slide 7, there's a reason

17   for this, Your Honor.  A really good reason.

18             The Ninth Circuit had some real skepticism about

19   whether cross-use is infringing or unlawful at all.  Rimini

20   came up to the Ninth Circuit and said cross-use is

21   not copyright infringement.  And it's not, Your Honor.

22   Copyright Act deals with copying.  Use is dealt with by

23   licenses.  This is not an infringement problem, but a

24   license problem.

25             And the Ninth Circuit recognized this.  And in

1    the questioning of Oracle's counsel, Judge Graber -- and

2    there's a long quote up there on the screen and in the

3    booklet, and the gist of it is if Rimini had the right to

4    make 10 copies for 10 clients and instead they made 10

5    copies for one client and then distributed it 10 times, why

6    does that make any difference?

7           And Oracle's response, Your Honor -- and this is

8    in the transcript, which we've also put in the booklet and

9    we urge the Court to read, of the Ninth Circuit's argument,

10   because Oracle made a number of concessions, that it would

11   violate the terms of the license.  Not that it was

12   copyright infringement.  Because it's not copyright

13   infringement.

14          If the license says you can only copy the

15   software while you're wearing a green shirt and you copy

16   the software wearing a red shirt, you have not committed

17   copyright infringement.  You may have breached the license,

18   but you have not committed copyright infringement.  And

19   that's a core dispute.

20          We argued on appeal, Your Honor, that -- and

21   there's a distinction, by the way, that's in the law

22   between copyright license covenants and conditions.  And

23   there's a lot of cases on this.  And we argued on appeal

24   that the whole cross-use kerfuffle is really properly put

25   under the context of conditions.  It is a subject of the

1     license and is only dealt with by breach of contract law

2     and not by copyright law.

3             Oracle urged the Ninth Circuit not to reach that

4     issue.  It said it hadn't been adequately developed.

5             And the Ninth Circuit agreed with Oracle and

6     said we're not going to decide that question whether

7     cross-use is contractual rather than a copyright issue

8     because it's not properly before us.  If it's not properly

9     before them, then it is definitely before this Court in

10    *Rimini II.*

11            The parties will vigorously debate this.  The

12    experts will deal with this.  The briefing will deal with

13    this.  This is a critical issue in the second case, Your

14    Honor, whether Oracle has any basis to restrict the use to

15    which the copies are made because, as I will describe in a

16    moment, the Ninth Circuit also resoundingly sustained

17    Rimini's right to make the copies.

18            Oracle says in its reply brief at page 3 that

19    any act of cross-use is copyright infringement.  That is

20    false.  That is not true.  And it is certainly not

21    supported by the Ninth Circuit's opinion.  They tried to

22    sell that in the Ninth Circuit, and the Night Circuit

23    wasn't buying it.

24            In fact, Your Honor, at the Ninth Circuit an

25    extraordinary thing happened.  If we can skip forward to

1    slide 9.  Oracle's lawyer in the Ninth Circuit conceded

2    that Rimini can make copies to support a licensed user.

3              Now, that may seem obvious.  It's been our

4    position all along.  But Oracle has never admitted that

5    until the Ninth Circuit oral argument.  It was the first

6    time in the long history of this litigation that Oracle has

7    conceded that Rimini can use the software because the

8    licenses after all, say that the licensee, the customer,

9    can hire a third-party vendor to perform support.

10             And what the Ninth Circuit recognized is several

11   things.  First, and this is all from the Court's opinion at

12   page 951:

13             "At all relevant times Rimini provided

14        third-party support for Oracle's enterprise

15        software in lawful competition with Oracle's

16        direct maintenance services."

17             So the provision of support itself is lawful.

18   We know that from the Ninth Circuit.

19             Second, the Ninth Circuit told us, again at page

20   952:

21             "Creating these software updates inherently

22        requires copying of Oracle's copyrighted

23        software which, unless allowed by license, would

24        be copyright infringement.

25             We're all in agreement on that too.

1          But the important part for now is copying is

2     required to perform the support system.

3          And then at page 958 the Ninth Circuit expressly

4     ruled that the licenses:

5          "Would not preclude Rimini from creating

6          development environments for a licensee for

7          various purposes after that licensee has become

8          a customer of Rimini."

9          In other words, carving out future customer

10    cross-use, the only subject it actually dealt with, the

11    Ninth Circuit expressly said that the licenses permit

12    Rimini from copying the software to create development

13    environments to provide support to Rimini's customers who

14    are also Oracle licensees.

15          That's what the Ninth Circuit said in this case,

16    Your Honor.  That is very different than the posture in

17    which Oracle came to this Court in 2016.

18          Two years ago, Mr. Hixson stood at this lectern

19    and told this Court, quote, and this is in the transcript

20    of page 70 from last time:

21          "Oracle wants to stop Rimini from using its

22          software."

23          That's what the injunction they have proposed is

24    designed to do.

25          They don't get to stop Rimini from using the

1    software.  The licenses allow the customers to use the

2    software, including for third-party support, and that was

3    sustained by the Ninth Circuit.  The only question is

4    whether there are particular acts that need further

5    judicial adjustment, and we submit no.

6            Because this whole case, Your Honor, is a

7    license dispute.  This whole case is about the scope of

8    these licenses and whether or not after making the copies,

9    which are permitted by the licenses, the manner in which

10    Rimini uses them is within or without the various

11    conditions imposed by the licenses.

12            And Oracle at the Ninth Circuit, and this is the

13    second quote on slide 9, he said this, and I'm quoting:

14            "To the extent there are disputes about

15          that, I mean, Gibson Dunn is involved in *Rimini*

16          *II* at a stage they weren't involved in *Rimini I,*

17          and those issues can be resolved in *Rimini II.*

18            That's what Oracle told the Ninth Circuit, to

19    avoid deciding whether cross-use is copyright infringement

20    at all, to avoid deciding whether current customer

21    cross-use is even in violation of the contracts, Oracle's

22    lawyer, Paul Clement, stood up in the Ninth Circuit and

23    said those can be decided in the second case.

24            And now Mr. Hixson comes to this Court and says,

25    Don't wait for the second case, decide them now.

1          There's a fundamental inconsistency in those

2    positions, Your Honor, and we submit that given the

3    representation that Oracle made to the Ninth Circuit was

4    clearly relied on by the Ninth Circuit, which then issued a

5    very narrow ruling not reaching cross-use, this Court

6    simply does not have the power to enjoin cross-use because

7    it hasn't been resolved.

8          If we can go to slide 10 please.  There are four

9    products at issue.  And I put up here just a simple chart,

10   four-column chart, Your Honor.

11         The court of appeals had one basis for ruling on

12   each one of them.

13         Local hosting for PeopleSoft; future customer

14   cross-use for JD Edwards; future customer cross-use for

15   Siebel; and waiver for Database.

16         Let me pause on Database.

17         The holding was not, as Mr. Hixson said this

18   afternoon, that Rimini had waived its challenge to Database

19   licenses.  It is rather, as the Court undoubtedly will

20   recall, there are two sets of Database licenses: the

21   developer licenses and the customer licenses called OLSA's.

22         This Court ruled that the Rimini services were

23   not permitted under the developer license and that Rimini

24   could not invoke the customer licenses because none of the

25   development environments had actually been obtained at the

1   summary judgment stage from customers.

2           We didn't challenge that ruling on appeal, and

3   in that sense it is waived.  No court, this Court or the

4   Ninth Circuit, has ever decided whether a development

5   environment obtained through a customer license can be used

6   for this purpose.  And again that's a question for *Rimini*

7   *II*.  It simply was never presented.

8           *Rimini I* dealt with a developer license.  We

9   have -- we'll live with that.  I mean, we agree, of course,

10  the Ninth Circuit decides certain things.  That's fine.

11  But the Ninth Circuit didn't decide anything about the

12  customer licenses for the simple reason that this Court had

13  not either.

14          The preclusive effect to the Ninth Circuit's

15  ruling though, Your Honor, extends no further than these

16  four points.  That means the other issues remain open for

17  litigation in *Rimini II*.  And it means those issues cannot

18  be enjoined in *Rimini I*.

19          And it bears remembering in this context, Your

20  Honor, that Rimini was willing, ready, able to have

21  everything decided in one lawsuit.  We asked the Court to

22  put all the issues together and decide them at once, and

23  Oracle refused.  Oracle said, "No, let's keep the two cases

24  apart, let's have the past practices in case *I* and the

25  current practices in case *II,* and this case agreed with

1    Oracle.

2              We're not challenging that.  But the consequence

3    of that is we have the second case, and it's going to have

4    a lot of things that have to be resolved in it as the Court

5    is aware.

6              This exercise, the permanent injunction, is not

7    the place to prejudge those issues.

8              Your Honor, I'd like to put this in broader

9    perspective.  And with apologies for my artistic skills,

10   I've drawn this graph to describe both this case and,

11   frankly, the ordinary course of commercial litigation.

12             You know, Oracle came to this Court in *Rimini I*

13   with a complaint that had a dozen causes of action against

14   two defendants, Rimini Street and Mr. Ravin, that sought

15   all kinds of relief on all kinds of theories.  And over

16   years of litigation the case was whittled down.  And that's

17   what happens to cases, right?

18             At summary judgment the Court ruled on some

19   things.  Oracle withdrew some things.  The jury rejected

20   some things and agreed with some other things.  And the

21   Ninth Circuit, as we've just spent several minutes

22   discussing, agreed with even fewer things, so that at the

23   end of the process or the bottom of the funnel we have a

24   much narrower case than we started out with.

25             As we stand here today, Your Honor, we're at the

1    pointy end of the pyramid.  We're at the narrowest, the

2    apex, the smallest part of the case, and the Court's

3    injunctive power, equitable power, to the extent it needs

4    to be or ought to be exercised at all is limited there.

5            Mr. Hixson wants to take you back to the base,

6    the broad base, the take-everything base.  Under his view

7    Rimini's very existence in the marketplace is an affront to

8    Oracle, a challenge to its customers, a threat to its

9    property, and an exercise of this Court's equitable power.

10   He wants the Court to enjoin Rimini's existence.  He wants

11   you to stop Rimini from accessing Oracle's copyrights.

12           That ship has sailed.  The Ninth Circuit said

13   that competition is lawful, access is required, copying is

14   required, and it's permitted by the licenses.

15           The details can be sorted out in the second

16   case.  That's what we know from the appeal.

17           And the injunction -- there's none necessary,

18   but even if it were -- we're not even talking about the

19   right discussion.  We ought to be at that narrow very end

20   of the pyramid.

21           And this feeds directly to the *eBay* factors,

22   Your Honor.  And I'm only going to talk about one, because

23   one is absolutely dispositive here, and that's irreparable

24   injury.

25           You know, the first time around, Oracle stood up

1    here, Mr. Hixson stood at this lectern and said you should

2    enjoin Rimini because they have callous disregard, wilful

3    disregard for property rights, and we know that both from

4    the copyright verdict and from the hacking claims.

5                And this Court agreed with Oracle.  And the

6    Court wrote in its order that the improper access and

7    downloading of data from the website caused the irreparable

8    harm, it was a factor in the irreparable harm.

9                The Ninth Circuit, we know, reversed the hacking

10   judgment, reversed the hacking injunction entirely, and

11   then vacated the copyright injunction.  And the Court of

12   Appeals was very clear on why it did that.

13               The Court said, and I put up some quotes on

14   slide 13, the district court assessed the four factors by

15   referring to both the copyright and the hacking claims

16   without considering separately the propriety of issuing an

17   injunction as to the copyright claims alone.

18               And we know which factor was important to the

19   Ninth Circuit because they told us that too.

20               For example, the Court concluded that Rimini's

21   violations of state computer access statutes contributed to

22   an irreparable injury to Oracle's business reputation and

23   goodwill.

24               So we know that the Court of Appeals has told

25   this Court we need to reevaluate irreparable injury.

```
 1                 What does Oracle say?  Oracle says, and this is
 2      a direct quote from its motion at page 13, that it, quote,
 3      never argued that the hacking claim supported issuance of a
 4      copyright injunction.  It never argued that.
 5                 Well, that's just false, Your Honor.  It argued
 6      that to this Court, and this Court agreed with Oracle.  It
 7      argued it to the Ninth Circuit.
 8                 I put up a quote on the slide just so you see:
 9                 "Much of Rimini's business and the harms
10           Rimini caused Oracle, depended on the
11           unauthorized downloading that formed the basis
12           of the computer abuse verdicts."
13                 I mean, yes, they did argue it.  And the court
14      of appeals was aware they argued it.  The court reversed
15      the hacking injunction and vacated the copyright injunction
16      to do that.
17                 Now, why did Oracle argue that?  Well, again, it
18      needed some intentional conduct.  It was faced with this
19      innocent infringement verdict.  It hates that.  We know
20      that.
21                 Mr. Clement in the appellate court called it the
22      most perplexing part of this case is the jury's innocent
23      infringement verdict.  We know the jury found that Rimini
24      had no reason to know that its actions were unlawful.
25      Because Rimini simply read the licenses differently than
```

1    this Court did, Your Honor.  That's the basis of this whole

2    dispute.  Rimini read the licenses differently than the

3    Court did, and the jury said that was innocent.

4              Oracle -- we've now briefed this issue six times

5    in two courts.  Oracle can't find a case, since the

6    republic was established, in which any court anywhere has

7    imposed a permanent injunction on an adjudicated innocent

8    infringer.

9              Mr. Hixson's response is, Well, Rimini can't

10   find a case where it didn't happen.

11             Well, there's two problems with that, Your

12   Honor.  Every case it didn't happen because there's no such

13   case, right?  And it's Oracle's burden.  The proponent of

14   an injunction has to prove that it is.

15             Does this Court really want to be the first case

16   in history to impose an injunction on an innocent

17   infringer?  We don't think so.  And we don't think it's

18   warranted.

19             And it's not just the innocence finding, Your

20   Honor.  We could even set that to the side.  I think the

21   innocence finding is telling about how the jury viewed

22   Rimini's conduct.

23             But let's really just look at Oracle's plain-old

24   failure of proof.  To set the table, let's remember what

25   Oracle's evidence is.  They've got one snippet from Safra

1     Catz, the CEO, who says that when Rimini offers its

2     services at 50 percent off, it breaks the bonds of trust

3     with its customers.  That's their evidence of irreparable

4     harm.

5              Your Honor, she's referring to Oracle -- or,

6     excuse me, to Rimini's existence, its ability to offer

7     support services in the marketplace; again, what the Ninth

8     Circuit has said is lawful competition in the market for

9     support services.

10             What Ms. Catz did not say was that the specific

11    act of local hosting the PeopleSoft development

12    environments caused any harm to Oracle.  What Ms. Catz did

13    not say was that the specific act of future customer

14    cross-use as to JD Edwards or Siebel caused any harm to

15    Oracle.

16             That's the evidence that Oracle is required to

17    come forward with to sustain a permanent injunction under

18    the law, and that's the evidence that is entirely missing

19    from this record.

20             Remember the four-column chart I put up that

21    shows the specific grounds for the Ninth Circuit's

22    affirmance.  To get an injunction Oracle would have to tie

23    each of those grounds, each of those specific acts, to loss

24    of goodwill or some other allegedly irreparable harm.  And

25    it can't do that.  It didn't even try to do that.  It

1     speaks in these vague generalities.  Even today Mr. Hixson

2     talked about infringement caused irreparable harm.

3              Well, we're not talking about infringement in

4     the air, Your Honor, we're talking about specific acts of

5     infringement that survived the motion to dismiss, summary

6     judgment, trial, verdict, post-trial motions, and appeal,

7     and those specific grounds, local hosting for PeopleSoft,

8     future customer cross-use for JD Edwards and Siebel, there

9     is no evidence that they would cause any harm to Oracle.

10             And there's a good reason for that too.  Before

11    the trial even started in this case, Your Honor, Rimini had

12    changed its processes so that it does not engage in local

13    hosting of the PeopleSoft product or future customer

14    cross-use of the JD Edwards and Siebel products.

15             This is not a matter of speculation.  We put in

16    evidence sworn declarations on this.  Oracle has never

17    deposed the affiants.  It's never put in any contrary

18    evidence.  Remember, Oracle has the burden of proof.

19             But we have put in evidence that shows they

20    can't win.  They have no contrary evidence.

21             They simply say, and you heard Mr. Hixson say it

22    again today, Well, we think Rimini's going to continue to

23    infringe.

24             There's two problems with that, Your Honor.

25    First is -- I'm going to sound like a broken record on

1    this -- we have a second case.  We have *Rimini II*, the

2    whole question of which, remember, was filed by Rimini.  We

3    are the plaintiff seeking a declaration that the current

4    processes do not infringe.  So if Oracle really thinks

5    Rimini is still infringing, there's a second case to sort

6    it out.

7         And the second is what the Supreme Court told us

8    about the power of injunctive relief, and this is the NLRB

9    case.  And we cite this at page 23 of our opposition:

10        "The mere fact that a court has found that a

11        defendant has committed an act in violation of a

12        statute does not justify an injunction broadly

13        to obey the statute and subject and the

14        defendant to comment proceedings if he shall at

15        any time in the future commit some new violation

16        unlike and unrelated to that which he was

17        originally charged."

18        And that's really what the injunction that

19    Oracle is asking the Court to enter would do.  It would set

20    forth a whole new set of prescriptions, requirements,

21    prohibitions, and so forth that have nothing to with local

22    hosting or future customer cross-use, and it would be traps

23    for a contempt proceeding.  An junction, Your Honor, is

24    perspective.  It's designed to prevent future misconduct.

25        There is not one wit of evidence in this

1     extensive record that Oracle -- or, excuse me, that Rimini

2     is ever likely to repeat in the future the local hosting or

3     future customer cross-use problems that the Ninth Circuit

4     based its liability verdict on.

5             And this is not a matter, as Mr. Hixson

6     derogatorily says, of voluntary cessation.  This is a

7     matter of a new company, a young company, a new entrant to

8     the market that read the licenses one way, that was

9     informed by a court of a different reading, and immediately

10    brought its conduct into compliance with the court's

11    orders.  That's a law abider, not a law breaker.

12            Rimini is committed to following the law.

13    Rimini is committed to providing support within the terms

14    of the licenses.  If Oracle would tell us how to do it, we

15    would be happy to have that conversation.  But they don't.

16    They just say whatever we do is illegal.  But the Ninth

17    Circuit doesn't agree.

18            One more problem with irreparable harm, Your

19    Honor.  Even if Oracle could prove harm, and it didn't, and

20    even if it could prove that such harm would cause -- you

21    know, be irreparable in the future, and it can't, it can't

22    prove that any harm was caused by the specific acts of

23    infringement.

24            We've made this point again a half dozen times,

25    and Oracle never responded to it until its reply brief in

1    this case.  The causal nexus requirement, which is applied

2    in both the Federal Circuit in patent cases and the Ninth

3    Circuit in copyright cases, is a component of the

4    irreparable injury requirement.  It is necessary for the

5    proponent of the injunction to tie the alleged irreparable

6    harm to the specific acts of infringement that it seeks to

7    enjoin.

8             Oracle hasn't even tried to make this showing,

9    Your Honor.  It cannot make this showing because there is

10   no evidence for it.

11            In its reply brief, as I say, Oracle, for the

12   first time in this litigation, addressed the causal nexus

13   requirement.  It says this.  I put it up on the slide, on

14   slide 19.  Its basic argument is, the word "directly"

15   doesn't appear in the Ninth Circuit's "Perfect 10"

16   decision.

17            Our argument was Ms. Catz did not testify that

18   Oracle's purported loss in goodwill was directly tied to

19   specific infringing features; and Oracle's response is the

20   word "directly" appears nowhere in the Ninth Circuit's

21   decision.

22            But let's unpack that, Your Honor.  First, the

23   word "directly" does appear in every one of the Federal

24   Circuit causal nexus decisions, so Oracle's belated

25   argument on this point is a concession that they can't meet

1    the Federal Circuit requirement, which we submit is the

2    controlling requirement on this point.  So we know that so

3    much.

4              Second, they want to focus on "directly," but

5    they don't focus on the more important point, which is

6    Ms. Catz did not testify that the purported loss in

7    goodwill was tied in any way whatsoever, directly,

8    indirectly, or otherwise to the specific acts of infringing

9    conduct.  They don't have any response to that because, of

10   course, she did not make any such evidence.

11             And for that reason, Your Honor, and this is the

12   third point, Oracle can't meet the Ninth Circuit's standard

13   on its own terms.  The Ninth Circuit's standard, and it's

14   on slide 20:

15             A party must show a sufficient causal

16        connection between irreparable harm to its

17        business and the particular acts conducted by

18        the defendant.

19             They don't have any evidence of that, Your

20   Honor.  They can't make that showing.  They've never tried

21   to make that showing, and they don't today.

22             All that Mr. Hixson said today on this point was

23   that infringement, quote/unquote, causes the harm.

24             Your Honor, infringement is a word of much

25   malleability.  And we're not talking at this point in this

1    litigation about infringement in the air, we're talking

2    about the specific acts of infringement that were sustained

3    by the Ninth Circuit as the basis for liability, and there

4    is no evidence tying those to this.

5             A couple more points, and I'll wrap up.  First,

6    Your Honor, Oracle has repeatedly raised, and Mr. Hixson

7    did it again today, this false argument this if Rimini has

8    really ceased its infringing conduct, then it has nothing

9    to fear from an injunction.

10             The problem is, the injunction proposed by

11   Oracle has no relation to the conduct that has been

12   adjudged to be infringing.  The injunction proposed by

13   Oracle is so far beyond it, it's like what the Supreme

14   Court described in that NLRB case, they say that because

15   Rimini committed one narrow infringing act or two narrow

16   infringing acts, they can be enjoined from a world that

17   Oracle's lawyers dreamed up.  And I'll give you just a few

18   examples of this, Your Honor.

19             I'd like to point out that at appendix 3 to our

20   opposition, which I've reproduced at tab 4 of the booklet,

21   we put in a copy of Oracle's proposed injunction with a

22   line-by-line, word-by-word set of objections to it.  I'm

23   not going to go through that today.  I just want to be

24   clear that we have objected to virtually every part of it

25   and explained in very specific terms why.

1              But at a higher level of generality, let's think

2        about what the problems are here.

3              Your Honor, the proposed injunction would

4        require Rimini's customers to affirm in writing that the

5        services are required by the licenses.  That requirement

6        has no basis in the Copyright Act, no basis in the

7        licenses, no basis in any ruling of this Court, no basis in

8        law, equity, or common sense.  It's just made up because

9        Oracle wants to make it more difficult to provide support

10       services.  It would violate the First Amendment rights of

11       the licensees, and it is absolutely untenable.

12             Second, Your Honor, the proposed injunction

13       would prohibit the creation of derivative works.  And Mr.

14       Hixson spent a fair bit of time on this.

15             Derivative works is a big deal in *Rimini II*.

16       There's going to be a lot of litigation about derivative

17       works.

18             Oracle, as usual, is trying to prejudge that

19       second case by getting an injunction here against

20       derivative works.

21             Derivative works were not decided in the first

22       case.  We didn't appeal it because there's no judgment on

23       derivative works, Your Honor.  The jury's instructions,

24       Instruction 21 on PeopleSoft, Instruction 23 on JD Edwards

25       and Siebel, were limited to copying, the reproduction

1    right.

2              There was a stray testimony at trial about

3    derivative works, and derivative works was listed in the

4    jury instructions in the statutory prohibitions.  The jury

5    was not instructed on and did not find anything regarding

6    derivative works or distribution for that matter.

7              This whole case involved the reproduction right,

8    as the Court presumably recalls from the trial.

9              Oracle is trying now to expand the judgment.

10   That's not the proper role of an injunction.  The proposed

11   injunction would broadly prohibit cross-use using -- you

12   know, Oracle made up the word cross-use for this

13   litigation, and then for the injunction it made up a bunch

14   of other words, support and benefit and so forth to expand

15   the concept of cross-use and put them into an injunction.

16   Well, that's not right, Your Honor.  Cross-use wasn't

17   decided by the Ninth Circuit, as we've discussed.  And the

18   licenses are what the licenses are.

19             Oracle doesn't get, by the way, an injunction

20   against a breach of contract.  There's no such thing.  You

21   don't get to enjoin a breach of contract.  But that's what

22   this whole cross-use section of the Oracle proposed

23   injunction is.

24             The proposed injunction would prohibit accessing

25   source code, even though the Ninth Circuit recognized that

1    accessing source code is required for providing support

2    services.  This is just blatantly contrary to the Ninth

3    Circuit opinion.  It's also a flagrant violation of the

4    First Amendment.

5            Imagine if Oracle presented an injunction to

6    this Court that said Rimini can't read a book published by

7    Oracle or can't watch a movie put out by Oracle.  You know,

8    to say that we can't look at the source code is not

9    consistent, Your Honor, with the First Amendment.

10           And the proposed injunction would impose site

11   restrictions, local hosting-type stuff on products,

12   including JD Edwards and Siebel, that not only do not have

13   site restrictions in the licenses but that the Ninth

14   Circuit expressly said do not have site restrictions in the

15   licenses.

16           So, Your Honor, over and over again, Oracle is

17   imposing or proposing injunctive prohibitions that do not

18   tie to the Ninth Circuit opinion, they don't even tie to

19   the verdict and judgment in this Court.

20           Your Honor, this is not a copyright injunction

21   at all.  It's an effort by Oracle to impose an uber license

22   on Rimini and all of its own customers with terms that were

23   never negotiated and have this Court sit to supervise, as

24   sort of the board of license appeals, all of these -- this

25   wish list of things that Oracle would like to have, but

1     that the Copyright Act does not require.

2                 It would be an abuse of discretion, Your Honor,

3     an abuse of discretion, to enter this injunction.  But we

4     don't need to go there.

5                 During the oral argument, and this is the last

6     point I'd like to make, I think it's important to reflect

7     on an important question that Judge Friedland posed again

8     to Oracle's counsel.  And I put this up on slide 23.

9                 And Judge Friedland said:

10                "I don't really understand why there also

11                needs to be an injunction, when it seems like

12                Rimini is trying to comply, and where there is a

13                whole lawsuit to figure out if they're complying

14                with the liability determinations."

15                Your Honor, Oracle didn't have a good answer

16    then, and it doesn't have a good answer now.  It didn't

17    address this in its briefing.  Today Mr. Hixson gave you

18    two arguments.  First, he said that *Rimini II* can't deal

19    with the situation of potential clients who were deterred

20    from signing up with Oracle and decide to go instead with

21    SAP or Salesforce because Rimini's existence in the

22    marketplace.

23                I think the legal term for that, Your Honor, is

24    hoo-ha.  There is no evidence of that, not in this case,

25    anyway.  It's never even been suggested by Oracle.  That's

1     the first time Oracle has ever made that argument.

2              You know, they've got the burden of proof here,

3     and to come in here and just pull out a wild hair I don't

4     think will do it.

5              Second, with more substance, Mr. Hixson said,

6     Well, we have the right to exclude.  Oracle, he said,

7     didn't choose to license its software.

8              Come again, Your Honor?  Oracle chose to license

9     its software.  Oracle has millions of licenses.  Oracle has

10    licensed every piece of software at issue in this case.

11    Every product line is licensed by Oracle to its customers

12    who are also Rimini's clients.

13             Every single license permits the licensee to

14    contract for third-party support.  It did choose to become

15    a licensee, and it doesn't have a right to exclude.  It

16    gave up that right when it entered into those licenses.

17    And to now come to this Court and to say that the right to

18    exclude is at stake mistakes what the entire lawsuit is

19    about, which is the term of those licenses.

20             The real answer, Your Honor, I submit, is the

21    one that Mr. Clement gave in the Ninth Circuit.  The only

22    answer he had was the ability to hold Rimini in contempt.

23    They would like an injunction, because they would like more

24    litigation.  As if this case hasn't spawned enough lawyers

25    and papers and court hearings and trials, Oracle would like

1      contempt proceedings on top of all that.

2              It wants the Court to enter this very broad,

3      very vague, very amorphous injunction so that every time

4      Rimini turns around Oracle can file another contempt

5      proceeding and come to this Court and say, Let's have it

6      out.

7              Your Honor, we would be back before this Court

8      again and again and again.  The Court has observed that

9      these are litigious parties.

10             I think there's no doubt about that on the

11     contempt.  But, again, it's not necessary.  We have the

12     second case.  If Oracle has legitimate concerns about the

13     current processes, the way that Rimini is actually

14     performing its support function, those can and will be

15     decided in the second case.  It's time for the first case

16     to come to an end.

17             If the Court denies the injunction, it's over.

18     If the Court grants the injunction, I'm sorry, Your Honor,

19     but we have no choice but to appeal.  That's the stark

20     choice here.

21             We submit that it's time for this case, the

22     first case, to simply come to an end and let the parties'

23     remaining disputes, which involves the current processes,

24     be resolved in the context of the second litigation, which

25     is ongoing.  Therefore, the injunction should be denied.

1              Unless the Court has any questions?

2              THE COURT:  All right.  No, I don't.  Thank you

3    very much, Mr. Perry.

4              MR. PERRY:  Thank you, Your Honor.

5              MR. HIXSON:  To circle back on the right to

6    exclude, what I said, obviously, was that Oracle did not

7    license its software to Rimini, its competitor.

8              Of course Oracle licenses its software to

9    customers that pay Oracle money for that.  That's

10   completely different from the right to exclude that it

11   wants to use here against a competitor that's infringing

12   its products and using its products against Oracle.

13             I guess as an overall summary of Mr. Perry's

14   argument is that most of it was about the wrong lawsuit.

15   It was as though he were presenting oral argument in

16   *Rimini II*.

17             He began by talking about the doctrine of

18   preclusion, and he cited to you Section 27 in the

19   Restatement Second of Judgments.  This is his explanation

20   for why grounds that were actually decided by the Ninth

21   Circuit are the ones that are binding.

22             Grounds that are reached by a court of appeal

23   are binding in a second lawsuit between the two parties.

24   That is what the Restatement Second of Judgments 27 applies

25   to.  That is what is binding in *Rimini I* as applied to

1    *Rimini II.*  That has nothing what to do with what we're

2    here about today, which is about *Rimini I.*

3               And we can look at this in one of the slides

4    that Mr. Perry had where he quoted the Ninth Circuit

5    interpreting Section 27 of the Restatement Second of

6    Judgments, where it says:

7               "It is a well-established principle of

8          federal law that if an appellate court considers

9          only one of a lower court's alternative bases

10         for its holding, affirming the judgment without

11         reaching the alternative bases, only the basis

12         that is actually considered can have any

13         preclusive effect in subsequent litigation."  In

14         another lawsuit.

15              Comment A to Section 27 of the Restatement

16   Section of Judgment clarifies what that means.

17              I looked this up while Mr. Perry was talking.

18   It says:

19              The rule of issue preclusion is operative

20         where the second action is between the same

21         persons who are parties to the prior action with

22         respect to the particular issue which the

23         second -- whether the second action is brought

24         by the plaintiff or by the defendant in the

25         original action.

1          It may be that the issues the Ninth Circuit

2     reached are what are binding in the future litigation

3     between Oracle and Rimini or in the *Rimini II* case.  But

4     we're here to talk about what you should do on remand in

5     *Rimini I.*

6          And under the rule of mandate and the law of the

7     case, all of the determinations that you made and the jury

8     made are still binding on you in this action.

9          Everything that Mr. Perry said on this point,

10    all of his reliance in the Restatement Second of Judgments

11    was just a complete distraction because he was talking

12    about the preclusive effect that one lawsuit has on another

13    lawsuit.

14          He argued, for example, that cross-use was not

15    really decided by the Ninth Circuit in this case because

16    they didn't reach it.

17          What the Ninth Circuit actually said is -- and

18    he argued that it really should be treated as a contractual

19    issue.  The Ninth Circuit said:

20          "With respect to cross-use Rimini's

21          assertion made for the first time in its reply

22          brief to us that cross-use is a contractual

23          rather than a copyright issue is not properly

24          before us.  The principle case on which Rimini

25          relies was not cited in Rimini's opening brief

1          and on appeal arguments not raised by a party in

2          its opening brief are deemed waived.

3               So look what happened.  We proved on summary

4     judgment that Rimini was committing cross-use, you ruled

5     that that was copyright infringement.  What happened on

6     appeal?  They didn't challenge that in their opening brief.

7               So we have a decisive decision by you their

8     cross-use was illegal and infringing.

9               The reason the Ninth Circuit didn't address that

10    with respect to at least PeopleSoft is because Rimini

11    didn't challenge it.  Rimini waived it.  Again, when a

12    litigant loses on an issue in the trial court and then

13    doesn't appeal it or waives that appeal, then that ruling

14    stands, and you should stand by your earlier determination

15    of cross-use.

16               The same thing happened with respect to

17    Database, where Mr. Perry says that this issue about

18    Rimini, whether Rimini can rely on its customers' copies of

19    Oracle Database wasn't actually decided.  The reason it

20    wasn't decided was because of waiver.

21               The Ninth Circuit again says that Rimini's

22    arguments on appeal with respect to Database are the same

23    as those with respect to the other software issue, except

24    that here Rimini contends, as Mr. Perry says here, that his

25    acts, in fact, were authorized by the Oracle license and

1     service agreements.

2           The Ninth Circuit continues:  Oracle properly

3     points out that Rimini has waived at this point because it

4     has failed to challenge the district court's legal

5     conclusion that Rimini was not entitled to assert the OLSAs

6     as a defense.

7           So, again, you reached the issue on summary

8     judgment, and they waived it on appeal.  Their waiver

9     should not cause you to narrow the scope of your permanent

10    injunction.  Because under the rule of mandate and law of

11    the case, that continues to be binding in this *Rimini I*

12    action.

13          What's preclusive in the second lawsuit is a

14    totally distinct issue.  And that's simply a distraction.

15          Apparently that distraction is a large part of

16    their opposition to the permanent injunction motion that

17    they're treating as if we filed a motion in the second

18    lawsuit, which isn't accurate.

19          And so I think when they have now finally, at

20    last, given us their explanation for why it is that you

21    should limit the scope of your injunction to the issues

22    that the Ninth Circuit reached, we can see that it just

23    doesn't make any sense.  It's a simply error in law that

24    Rimini is making.  They are ignoring the fact that this is

25    a first lawsuit and not a second lawsuit.  The issues of

```
 1        clarifying estoppel and issue preclusion are simply

 2        inapplicable when we're residing still within the same

 3        first lawsuit.

 4             Rimini then makes a couple of other arguments

 5        with respect to irreparable injury that at least are

 6        relevant in the first lawsuit.  They say, and this

 7        continues to baffle me, that we've never cited a case in

 8        which innocent infringement was infringed.  That's not

 9        true.  On page 5 we collect several of them, and our reply

10        brief cited them as we have before.

11             Mr. Perry argues that Rimini's infringement was

12        innocent because they read the licenses and simply

13        interpreted them differently than Your Honor did and that

14        the jury did.  That's not true.  The testimony at trial was

15        for the most part that Rimini didn't read the licenses.

16        They weren't aware of what they said.  That was their

17        principal defense.

18             Mr. Perry argues that Oracle has failed to tie

19        the specific infringing acts to the harm to their goodwill

20        because Safra Catz testified that Rimini's statements and

21        conduct damaged the bonds to the customers, and they say

22        that that's not sufficient.

23             But Oracle doesn't have to prove its entire case

24        through one witness, which is actually what Mr. Perry was

25        arguing right now.  Oracle proved its case through multiple
```

1     witnesses and a lengthy trial.

2              A key aspect of our proof showing the harm to

3     business reputation goodwill was testimony by Mr. Ravin

4     himself, and testimony by Oracle's witness, Professor

5     Davis, that Rimini's infringing acts produced efficiencies,

6     that because they didn't develop any of their own

7     software -- Mr. Ravin was quite proud of this, that they

8     didn't develop their own competing software product -- they

9     didn't entail any of those development costs, so they were

10    to offer support at 50 percent off.

11             And Mr. Davis showed the massive cross-use that

12    enabled them to gain efficiency and then to scale.  They

13    tied the specific infringing acts that Rimini committed to

14    Rimini's ability to deliver support at a lower cost, and

15    then Ms. Catz and Mr. Screven tied the loop by explaining

16    that Rimini going out with this cut-rate offer, when it

17    didn't have any of these expenses to incur, damages the

18    harm to goodwill.

19             So Oracle used several witnesses to establish

20    the linkage between specific infringing acts and the

21    irreparable harm to Oracle.

22             With respect to voluntary association, again,

23    Mr. Perry ignores the point that I focused on in my opening

24    remarks and that the Court focused on in your September

25    2016 order, which is that when the cessation comes only

1    after a dispute of litigation and a court has ruled on

2    summary judgment that the defendant's practice is unlawful,

3    then there's no guarantee they won't resume in the absence

4    of an injunction, and in that situation courts don't regard

5    that as a valid cessation -- a voluntary cessation because

6    it was under judicial compulsion.

7              That's exactly what happened here.  And just as

8    you followed in your 2016 opinion, I think you should do

9    that here for the same reasons as well.

10             With respect to their objections to the scope of

11   the injunction, most of these things we litigated two years

12   ago, and again we addressed them with respect to our reply

13   brief.  Their big issue, once again, is that they only want

14   the injunction to reach the specific issues where the Ninth

15   Circuit addressed them on the merits.

16             That's their big push for you here today.

17   That's how their entire opposition is briefed is they think

18   that only those things that the Ninth Circuit specifically

19   reached.

20             But that's just a legal error.  That's confusing

21   of the doctrine of preclusion, which deals with the effect

22   of one lawsuit -- the outcome of one lawsuit on a second

23   lawsuit with what you should do when you're still within

24   the first lawsuit.

25             In this lawsuit you made legal determinations of

1   copyright infringement liability, and the jury also made

2   those determinations.  That verdict was affirmed.  No part

3   of it was reversed.  It wasn't limited.  It wasn't

4   modified.  The Ninth Circuit didn't criticize anything you

5   or the jury did with respect to copyright infringement

6   liability.  They didn't reach necessarily every issue

7   because Rimini waived a lot of them and didn't raise

8   others.  But that verdict was affirmed.

9           So for purposes in this case there's no reason

10  for you to go back and revisit your or the jury's prior

11  holdings.

12          The effect of your holdings in this case is a

13  legally distinct question from the preclusive effect of

14  this action and subsequent litigation between the parties.

15  I acknowledge that.  The Restatement Second of Judgment,

16  Section 27, does draw that distinction.

17          But it's fundamentally wrong for Rimini to treat

18  this remand, this renewed motion as if it were a second

19  lawsuit, a totally distinct action and that Oracle needs to

20  show the issues of preclusion apply.  We don't need to show

21  that because we're still within the first lawsuit.  And

22  that resolves the bulk of Rimini Street's opposition and

23  shows that it has no merit.  And, again, we ask that you

24  enter a renewed permanent injunction.

25          Thank you, Your Honor.

```
 1                    THE COURT:  Thank you, Mr. Hixson.
 2                    Well, we've gone for an hour and a half.  Let's
 3      take a 10-minute break.  We'll resume at 3:20 sharply.
 4                    COURTROOM ADMINISTRATOR:  Please rise.
 5               (Recess from 3:06 p.m. until 3:21 p.m.)
 6                    COURTROOM ADMINISTRATOR:  Please rise.
 7                    THE COURT:  All right.  Have a seat, please.
 8                    So we'll talk about attorney's fees now.
 9                    Mr. Pocker.
10                    MR. POCKER:  Thank you, Your Honor.
11                    Like Mr. Hixson, with the 45 minutes that's been
12      allotted to my argument, I would ask that 15 minutes be
13      reserved to respond to whatever Mr. Polsenberg might
14      present.
15                    THE COURT:  All right.  Fine.
16                    MR. POCKER:  Thank you, Your Honor.
17                    Your Honor, I have a much simpler matter to
18      address with you, perhaps, than what you just heard with
19      respect to the injunction issue, and that is in connection
20      with your prior ruling awarding attorney's fees as part of
21      the costs that can be assessed pursuant to 17 U.S.C.
22      Section 505.
23                    Those attorney's fees were awarded in the amount
24      of $28.5 million, just over -- well, just under 24 months
25      ago in your order of September 2016.
```

1           The Ninth Circuit has, as with the injunction

2    issue, sent part of this issue back in light of the Ninth

3    Circuit's decision to reverse the claims -- the verdicts in

4    favor of Oracle with respect to the claims under the state

5    law computer access claims.

6           And what we're asking you here to do today, by

7    way of our renewed motion for attorney's fees, is to

8    reinstate the award to Oracle in exactly the same amount

9    that you adjudged back in September of 2016, that's

10   $28.5 million in attorney's fees.

11          And my explanation for that requires a little

12   bit of a walk down memory lane with respect to the

13   procedural posture here.

14          As the Court will recall, summary judgment

15   rulings were issued in 2014, in February of 2014 and August

16   of 2014, which resolved many of the issues between the

17   parties.

18          Nonetheless, there was a September 2015 trial

19   that was necessitated by the remaining claims, which

20   resulted in a jury award of $50 million on three claims

21   presented to the jury in favor of Oracle.

22          That jury further awarded $35.6 million to

23   Oracle for copyright infringement.  That was the component

24   of the 50 million.  And the other $14.4 million was awarded

25   for violations of the Nevada and California computer

1    statutes, which were later reversed by the Ninth Circuit.

2            On September 21st of 2016, this Court held a

3    lengthy hearing here with respect -- or, I'm sorry, issued

4    its order after a lengthy hearing conducted in May of that

5    year, which made the award of attorney's fees, which we

6    want you to reinstate.

7            You awarded $28,502,246 after applying a 20

8    percent reduction in the amount of attorney's fees that

9    were originally sought by my client.  You also awarded

10   $22.5 million in prejudgment interest on the infringement

11   judgment and awarded $16.2 million in costs, all under your

12   authority under 17 U.S.C. Section 505.

13           The January 8th, 2018, ruling by the Ninth

14   Circuit affirmed that Oracle was successful against Rimini

15   on each of the 93 copyright claims, and the jury's

16   $35.6 million copyright judgment was affirmed.

17           And I know from the dialogue that you've just

18   heard, there may be many interpretations of, at least from

19   the Rimini side, as to what the Ninth Circuit did or did

20   not do.  But that's clear.

21           Oracle was a clear winner, both at trial and on

22   appeal, for its copyright infringement claims on all 93 of

23   the copyrights.  The prejudgment interest, the Ninth

24   Circuit affirmed that as well, in the amount of 22 and a

25   half million dollars, just as the Court awarded down below.

1          In the course of doing so, the Ninth Circuit

2     observed that you had made an extensive and detailed record

3     throughout many years of complex and contentious

4     litigation, and it acknowledged your understandable

5     frustration with Rimini's litigation conduct is apparent in

6     some of the orders now before us.

7          Nonetheless, they went ahead and ruled to affirm

8     your ruling as to the costs as well.

9          As to copyright costs under the statute,

10    $16.2 million were awarded after a correction for what

11    turned out to be simply a calculation error.

12         The Ninth Circuit reversed only two claims, and

13    those were the state computer access claims I've referenced

14    earlier for which the jury had awarded $14,427,000.

15         Now, as to the attorney's fees, the Ninth

16    Circuit didn't spend much time with it, but because it had

17    reversed the judgment with respect to Mr. Ravin's

18    liability, it reversed his liability for the attorney's

19    fees, and it vacated the fee award that you had entered

20    earlier, in September of 2016, and remanded simply for

21    reconsideration in light of Oracle's more limited success

22    at litigation, ostensibly, okay, there's two fewer claims

23    that Oracle prevailed upon.

24         And basically what they are asking, or why they

25    sent this back and why we have renewed our motion, is to

1     see whether it makes any difference at all that those

2     particular claims were reversed at the Ninth Circuit level

3     when it comes to this Court's assessment of what the

4     appropriate award of attorney's fees should be.

5               Now, you would think from the opposition in this

6     case and yet two more expert reports from lawyers in

7     southern Nevada that this was a larger issue than the Ninth

8     Circuit really has identified.

9               Rimini Street has decided to go down the Alice

10    in Wonderland rabbit hole and start to talk about billing

11    rates and legal markets and creative ways to reduce the

12    award of attorney's fees based on percentages of success

13    under one metric or another.

14              But I would submit to you that we've been here,

15    we've done that, and you have already made the correct

16    rulings with almost every facet of the analysis that the

17    Court is required to do in order to decide attorney's fees.

18              All that's really left here is whether or not

19    the factor that talks about the success, the relative

20    success of the claimant for the attorney's fees is affected

21    at all by what happened at the Ninth Circuit.

22              And we would submit to you that it is not and

23    that the amount of the attorney's fees that you have

24    already awarded in this case is justified even in the

25    absence of findings on the state law computer claims

1    because they are an inextricable portion of the proof, the

2    evidence, and the work that was necessary for this case in

3    order to be a successful copyright infringement case.

4           And we can't lose sight, Your Honor, of the fact

5    that we're here seeking the attorney's fees as part of the

6    costs to which we have been deemed entitled by this Court's

7    ruling and the Ninth Circuit under 17 U.S.C. Section 505.

8           It isn't an invitation from the Ninth Circuit to

9    send you back into the 700 pages of expert reports and

10   billing statements and all of that, that we dealt with two

11   and a half years ago.  We're past that.  The only question

12   here is whether or not anything needs to change in light of

13   the Ninth Circuit's decision.

14          Well, it's funny how the more things change, the

15   more they stay the same.  The Ninth Circuit decision does

16   not alter this Court's prior analysis or require a

17   reduction in the awarded fees.  It's a very narrow one, the

18   remand focusing solely on whether to reduce these fees

19   based on the reversal of state computer access claims, and,

20   if so, if you choose to do so, by what amount.

21          Now, contrary to what Rimini suggests, and this

22   should be no surprise given that our clients obviously

23   disagree on the meaning of the Ninth Circuit language and

24   decisions, but contrary to what they suggest, the Ninth

25   Circuit decision in no way requires any reduction in the

1    prior fees award.

2              In its opposition to our renewed motion, they

3    attempt to relitigate much of which you've already decided

4    and some of which the Ninth Circuit has already considered

5    and rejected, instead of focusing on this very narrow

6    remand issue.

7              I say with respect to your prior findings, and

8    I'm going to summarize these relatively quickly, but many

9    of the Court's findings from the prior order are completely

10   unaffected by this Ninth Circuit remand, including, most

11   importantly, Oracle's degree of success on its copyright

12   claims, which is the sole basis for seeking attorney's fees

13   as a portion of costs in this case.

14             The fact that these two state law claims did not

15   ultimately prevail at the Ninth Circuit alters not at all

16   the total victory and the enormous success that Oracle had

17   with respect to its copyright claims, copyright

18   infringement claims.

19             It also doesn't change a thing about the

20   analysis the Court had of the objective reasonableness or

21   unreasonableness of Rimini Street's defenses and litigation

22   conduct with respect to making its case.  The very same

23   factors that led to the Court's decision in the prior case

24   are still the law -- are still the facts of this case,

25   still the observations, and every one of the observations

1    you made before changes not at all based on the Ninth

2    Circuit's decision.

3              Nor is anything altered about the analysis that

4    the Court engaged in with respect to the necessity to make

5    Oracle whole.  Nor with deterrence.

6              This Court analyzed whether or not an award of

7    attorney's fees would seek to deter not just Rimini Street,

8    not just Mr. Ravin, but any third-party support provider

9    from engaging in copyright infringement.  And that is a

10   valid concern, one of the factors that the case law says

11   you can analyze, and nothing about what happened with

12   respect to the two state law claims alters your prior

13   conclusions at all.

14             And, lastly, the Court is required to consider

15   the purpose of the Copyright Act in making these attorney's

16   fees' determinations, and nothing is changed with respect

17   to where the Court wound up last time in the analysis that

18   it entered.

19             Now, under Section 505 of the Copyright Act, as

20   I've noted before, the attorney's fees are a component of

21   the costs.  The Court is not required to give them, but

22   they may make them -- may award a reasonable attorney's fee

23   to the prevailing party as part of the costs.

24             There's no question Oracle is the prevailing

25   party on all -- on the claims involving all 93 of its

1    copyrights.

2              I suppose we could have pled it as 93 separate

3    claims to head off all these arguments about relative

4    success and balancing the unjust enrichment versus the --

5    you know, JD Edwards' copyright violation and all the

6    sophistry that's engaged in, in trying to minimize what

7    happened in this case.  But the scope of that is enormous.

8              This is an enormous victory.  Oracle is the

9    prevailing party.  No one can in good faith contest that.

10   The Ninth Circuit has affirmed it.

11             And if we turn to the next question, which is

12   applying the legal standards that we just referenced a few

13   moments ago, we see that nothing has changed here as well.

14   Oracle's degree of success remains unchanged.  Not a single

15   copyright claim was reversed on appeal.

16             We received, after the Ninth Circuit

17   calculations and adjustments were made, more than the value

18   of $74 million in combined damages, prejudgment interest,

19   and attorney's fees, which is a large and extremely in the

20   abstract large damages award, and it is multiple times,

21   close to six to seven times, the number of damages that

22   Rimini Street thought was appropriate -- or their expert

23   thought was appropriate during the litigation of this case.

24             Back then they said, Oh, their damages should be

25   $11 million because if we hire a few more people we

1    wouldn't have had to infringe.  The jury disagreed.  And

2    now it's been up through the appellate pipeline, and we're

3    at $74 million.  Significant success on behalf of Oracle.

4            The facts about Rimini's objective

5    unreasonableness haven't changed either.  And I know it's

6    the past, and we revisit this history often, but it's

7    important to do so because it's an important part of the

8    analysis that this Court had to undertake.

9            They have engaged in litigation misconduct, and

10   they adopted false factual and legal positions that forced

11   Oracle to spend time and resources on unnecessary

12   discovery, further fact investigations, experts, motion

13   practice.

14           The Court was right when we had the hearing two

15   and a half years ago and the Court observed at trial the

16   impact of Oracle's unreasonable positions in this case on

17   the length of the trial, the amount of attorney time and

18   witnesses that were required to rebut their clearly false

19   allegations.

20           This case became a monster because Rimini Street

21   misbehaved.  It all started, and this is in the papers,

22   when Mr. Ravin chose to be held in contempt in connection

23   with a deposition that was supposed to be held in the SAP

24   TomorrowNow litigation over in California rather than to go

25   under oath and explain how Rimini Street was operating.

1              Eventually, after being held in contempt, he

2    did, in fact, give a deposition.  It was like pulling

3    teeth.  But throughout his deposition history, both in that

4    case and in our own litigation, he has repeatedly denied

5    that cross-use ever happened, cross-use which is at the

6    center of the whole infringement and the Ninth Circuit

7    decision.

8              Five and a half years after Oracle filed suit,

9    that's after five and a half years of multiple attorneys

10   scrambling and seeking to find out exactly what Rimini

11   Street was up to, five and a half years of legal fees,

12   litigation, depositions, motions, meets-and-confers, all of

13   the expensive attributes to complex litigation, during his

14   trial testimony Mr. Ravin finally admitted to engaging in

15   cross-use, in his words, quote, all the time.

16             What could have been saved, how better and more

17   efficient this litigation might have been had there just

18   been a little early honesty.  And that's part of the track

19   record here that builds into this factor of their

20   unreasonable position.

21             In court filings and testimony Mr. Ravin and

22   other Rimini Street executives similarly denied cross-use

23   for years up until that day when under cross-examination

24   from Mr. Isaacson he finally said, Oh, yeah, we do that all

25   the time.

1          There were also statements made in the context

2    of the summary judgment briefing with respect to the JD

3    Edwards and the Siebel environments and how they were used

4    at Rimini.

5          As you'll recall, ultimately Rimini was found to

6    have used those environments for purposes of -- that

7    infringe Oracle's copyrights.  Back at the time of the

8    summary judgment motion, they placed before this Court in

9    their opposition evidence that maintained that they were

10   just copies made for archival purposes which was permitted

11   by the license.

12         Those representations and that false evidentiary

13   milieu caused this Court to have some pause about granting

14   full summary judgment on all those issues and, as a result,

15   those issues had to be addressed at trial, where it was

16   fully demonstrated that -- and through the testimony of

17   Rimini Street witnesses, that those environments had, in

18   fact, been used for purposes other than what Rimini Street

19   maintained during the summary judgment briefing.

20         The unnecessary expenses that were added are

21   numerous, and we've walked through them in the other

22   context in the past.

23         One of the biggest roadblocks to doing this case

24   in an efficient way was their destruction of the library of

25   Oracle copyrighted material that they destroyed after

1    becoming aware that litigation over this issue was in the

2    works.

3              They -- the Court, through Magistrate Judge

4    Leen, initially, and then this Court adopting her findings,

5    of course, did issue a spoliation order involving Rimini

6    Street.  And there was the adverse inference instruction at

7    trial.  But then there's the other impact of all that,

8    which is what would have been practically the smoking gun

9    as to what Oracle products and copyrighted materials Rimini

10   Street was using improperly instead no longer existed and

11   Oracle had to spend a few years of depositions, expert

12   investigation, analysis of millions of pages of documents

13   produced by the two sides in order to get to that point.

14             So it's no wonder that the Ninth Circuit found,

15   quote, understandable frustration with Rimini's litigation

16   conduct, unquote, and they understood exactly what this

17   Court was going through and what the parties were going

18   through.

19             All those findings relating to Rimini's

20   litigation misconduct remain completely unchanged.  This

21   Court found earlier that Rimini's litigation position that

22   it did not engage in copyright infringement was not an

23   objectively reasonable position, rather it was based on a

24   clear misreading of Oracle's software licensing agreements

25   and a conscious disregard for the manner that Rimini used

1    and housed Oracle's copyrighted software programs on its

2    own servers.

3            In fact, its position was so unreasonable that

4    the Court was able at summary judgment to determine that

5    Rimini Street engaged in massive copyright infringement of

6    Oracle's copyrighted works, thereby leaving only a few

7    issues for trial.

8            The Court said that then and the Court should

9    say that now because it's still true, and nothing about the

10   small change in what claims were ultimately upheld on

11   appeal changes that at all.

12           Rimini's repeated instances of copyright

13   infringement and its significant litigation misconduct in

14   this action was also commented upon by the Court in a

15   different context.  The Court also, in its order granting

16   attorney's fees, said it's undisputed that the defendants

17   ignored their preservation obligations and destroyed

18   evidence prior to trial, including a key computer directory

19   containing Oracle software.

20           Again, observation that the Court made.  Still

21   true.  Still important with respect to this issue.

22           Now, what is Rimini, in its opposition papers

23   and in its approach to this offer, in explanation or in

24   mitigation of the behavior that's been outlined here.

25   Well, they feebly say that the reasonableness of

1    Mr. Ravin's conduct is not at issue, as, you know, you

2    can't really blame him for this because he's no longer been

3    adjudged liable for any of these claims.

4              Well, we're not seeking attorney's fees from

5    him, so that is a complete red herring right there.

6              We hear over and over again, and I know we

7    discussed it ad nauseam in the original attorney's fees

8    briefing, this notion of their innocent infringer.

9              And as I discussed in the prior hearing and in

10   the papers, you know, the whole notion of the innocent

11   infringement versus willful had to do with the computation

12   of the statutory enhancement should Oracle have chosen

13   statutory damages over the other measures of damages that

14   the jury found.

15             It's really in that context, it's almost a step

16   lower than an advisory verdict with respect to whether or

17   not there should be an enhancement for those statutory

18   damages.

19             But more fundamentally, even if they're right

20   that this is an expression by the jury that at the time

21   they were infringing they had no reason to know they were

22   infringing, by the time the litigation started they did.

23   And by the time its underway and they're looking into the

24   evidence that they've seen and they're aware of what the

25   arguments are as to why it doesn't -- or it does constitute

1    copyright infringement and not simply a use of their

2    clients' licenses, by then I take it they should have read

3    the licenses by the time this case began, because they're

4    making representations about them in their summary judgment

5    pleadings, all that innocence went away about three months

6    at most into the discovery process.  So it really doesn't

7    matter with respect to looking at this.  It does not

8    mitigate or make reasonable Rimini's behavior in this case

9    at all.

10           And, again, that's another factor that the Court

11   found in favor of Oracle with respect to and what you

12   should do so again even if you're going to engage in that

13   kind of analysis.  Moreover, it's been said in context, in

14   many context, Section 505 does not condition an award of

15   fees on the showing of willful infringement.

16           This Court recognized that in its order, and

17   here we are again with the same arguments coming from

18   Rimini that oh, no, no, no, no, we're an innocent

19   infringer, you shouldn't give attorney's fees against us.

20           Then they make the curious argument without

21   actually supporting it by case law that specifically holds

22   so, that the Court must allocate specific expenses in the

23   legal fees to specific misconduct in the context of the

24   reasonableness analysis of Rimini's behavior.

25           Nowhere does the case law support that

1    proposition.  In fact, if you look at our reply at pages 4

2    and 5, we distinguish all the cases that Rimini says that

3    it says does make such a holding and a requirement.

4            And, more importantly, all the litigation

5    misconduct that we're talking about here, it isn't your

6    standard discovery sanction type stuff.  This is behavior

7    that unnecessarily made more complex and difficult the

8    exploration of factual and evidentiary issues.

9            This is part of why this case became so

10   complicated, why they survived a summary judgment they

11   never should have.  It's not, oh, you didn't file your

12   interrogatory responses in time or you were dilatory

13   consistently on this level.

14           So apportioning it to individual litigation

15   misconduct, this permeates the entire way they approached

16   this case.  And as a result, that's why no apportionment to

17   specific amounts is necessary.

18           Oracle was actually forced, and I think that's

19   not too strong of a word, to disprove an enormous amount of

20   false narrative, false information, and false evidence as

21   part of putting on its infringement case.  We wouldn't be

22   there at that successful level if we hadn't had to

23   basically treat this like a criminal case and find out, you

24   know, you can't take at face value what you're getting in

25   discovery here, you've got to do the extra work to expose

1    it.

2           The third factor, and I won't say much about

3    this because the Court was right the first time, and

4    nothing has changed, the analysis of what's necessary to

5    make Oracle whole.

6           Now, Oracle spent far more than $28.5 million in

7    attorney's fees, and the Court's familiar with that based

8    on the briefing and all the argument that went on before.

9           But the Court has properly also determined that

10   we've spent decades developing these copyrighted software

11   products only to have Rimini come in and piggyback, whether

12   legally, illegally, or infringing or not, on that

13   substantial investment.  Oracle was compelled to spend a

14   significant amount of resources in legal fees and costs

15   over what was eventually awarded in this case just to stop

16   Rimini's conduct.

17          Without a fee award, the Court found that

18   Oracle's investment and its intellectual property and its

19   incentive to create future software would not be

20   appropriately protected or compensated.  That was true in

21   2016, and it is true now.

22          Moreover, Rimini's counter to that is this is a

23   windfall for Oracle just because Oracle is a large company

24   and we can pay this out-of-pocket change.  Well, that's a

25   complete red herring again and totally irrelevant to the

1    point of the necessity of making it worthwhile for Oracle

2    to protect its hard-earned copyrights.

3            The deterrence issue.  There's been some

4    discussion of it in connection with the infringement

5    analysis.  But this Court has properly found that an award

6    of attorney's fees is appropriate to deter Rimini from a

7    pattern of infringing Oracle's copyrights.  And that

8    pattern, in our estimation, certainly persists.

9            It's a matter of record that a company started

10   and highly influenced by Mr. Ravin, TomorrowNow, not only

11   is it a civil infringer but they were convicted of federal

12   criminal charges.  And then we have the jury in our case

13   finding infringement on the part of Rimini Street in our

14   case, *Rimini I*.

15           And now we have *Rimini II*, where there are other

16   alleged infringements, and obviously in our position there

17   is infringement going on.

18           And then this whole issue of deterrence, the

19   idea that, well, we're an innocent infringer, it was just a

20   mistake, and we don't need to be deterred, well, they

21   better have a wake-up call over at Rimini Street in light

22   of what evidence has come out earlier this year, in March.

23           They told their open shareholders, first of all,

24   that if your injunction -- and this is addressed in the

25   papers, if the injunction actually is now entered while

1        it's being considered by the Court, that they're going to

2        have to spend significant amount of money and change what

3        they do.

4                Okay.  Well, if that's true, that means some of

5        what they're doing at least is still infringing.  So the

6        jury verdict didn't deter them, the battle over the

7        injunction hasn't deterred them, and deterrence is

8        something that is certainly something the Court can factor

9        into under the standards in its award of attorney's fees.

10               The second thing that happened is they reported

11       to their shareholders that they've received a federal grand

12       jury subpoena, that they're the subject of a federal

13       investigation.

14               Clearly some people do not learn.  And this is

15       part of the factual record that you go into whether or not

16       in this particular case they need to pay a significant

17       amount of attorney's fees in order to deter their behavior

18       and anybody out there who thinks that this is now a

19       legitimate way to compete with Oracle.

20               The Court has noted in its prior rulings that

21       Rimini Street is built on a foundation essentially of

22       copyright infringement.  The Court hasn't used these words,

23       but it's basically a parasitic business model.  And that's

24       why it needs to be monitored and looked at more closely.

25               And in this particular case, these statements to

1    the shareholders show that not a whole lot has changed as

2    to how they're doing business.  And under the

3    circumstances, that adds even greater heft to the

4    deterrence element in the Court's analysis.

5              The need to further the aims of the copyright

6    laws is another of the factors.  The Court got that one

7    completely right in its order back in September of 2016.

8              Rimini has a strange way of dealing with that.

9    They say that actually awarding attorney's fees to Oracle

10   will do the exact opposite of furthering the aims of the

11   copyright law because it will discourage starving artists

12   and the smaller parties in these big commercial

13   transactions from pursuing valid copyright defenses.

14             They point to Mr. Ravin having survived through

15   the Ninth Circuit process without having an award against

16   him for copyright infringement.

17             But what they ignore is Rimini Street has

18   already been adjudged not to be someone who is putting

19   forth meritorious defenses to unmeritorious copyright

20   claims.  They lost this.

21             So the idea that somehow if these fees are

22   awarded and reinstated that that's a bad message to them,

23   no, that's exactly the right message to them.  You lose;

24   you pay; there was nothing meritorious about your defense,

25   starving artist.

1             I think the most important point, and I've

2      probably belabored these other issues more than the Court

3      needs to in its decision, but this is an extremely narrow

4      remand, and it's solely to decide, well, is it going to be

5      $28,502,246 or some other amount?

6             So when we look at this as to why we are

7      asserting that you should keep exactly the same amount of

8      attorney's fees, part of it is there's no need to reinvent

9      the wheel here.

10             This Court -- and you're being asked by Rimini

11      Street to engage in all sorts of formulaic reductions of

12      the amounts and reanalysis of issues about who won what and

13      who is the prevailing party and who had the most success,

14      but even in reality it comes down to you've already been

15      there.

16             The $45 million that we asked for in attorney's

17      fees, the Court factored in all this nonsense that Rimini

18      Street puts forth, and you reduce the award by 20 percent

19      already to $28 million.

20             They want you to go back and say, Oh, but look

21      at all these claims that Oracle did not prevail on or were

22      dismissed or never reached the jury.  Well, you already

23      factored that in the last time.  That was part of the

24      factual milieu before.  And even after all of their

25      arguments about, Oh, my God, they only prevailed on three

1      claims, it's still $28 million.

2              So now it comes back to all right, so the two

3      computer law offenses were overturned.  What impact should

4      that have on the attorney's fees that will appropriately

5      compensate Oracle in this case?  And our position is it

6      should have absolutely no effect.

7              And the reason it should have absolutely no

8      effect is that every dollar of that $28 million was spent

9      putting together this case.  And I -- this case is, in this

10     Court's words, first and foremost and above all else a

11     copyright infringement case, all other claims

12     notwithstanding.

13             And all these -- and the Court recognized this

14     the first time.  There was no analysis that said, Well, you

15     know, I need to shave something off, they might have

16     actually done some research on unjust enrichment or this

17     witness only had to do with another claim.

18             All of the claims, but, more importantly, all of

19     the evidence, all of the work, went toward the copyright

20     claims.  If we had just simply had 93 copyright claims or

21     one claim with 93 copyrights and no other claims here, this

22     case would have been tried, investigated, discovered, and

23     analyzed exactly the same way.

24             And that -- the notion that, Oh, well, you need

25     to peel off some of the attorney's fees that might have

1    been only about those computer access claims, well, those

2    access claims were gravy.  The facts underlying them would

3    have been proven whether or not they were in the case or

4    not.

5            Because remember what it's all about, it's about

6    Rimini Street using their robots and their spiders and

7    their massive -- as part of their massive downloading to

8    get all of this Oracle content off of the Oracle websites

9    to start this business, to start this course of conduct

10    which leads to infringement of those very copyrights.

11            One of the big issues in this case, Rimini kept

12    saying, Oh, you know, we only take what our clients are

13    entitled to.  Well, we proved that wrong.  And how did we

14    prove it wrong?  By proving these massive downloads, the

15    very conduct that was part of the other -- the state law

16    claims, as part and parcel of here's what they're doing.

17    They don't need all this stuff.  They're taking stuff well

18    beyond what they're entitled -- their customers are

19    entitled to under their license.

20            This was all part and parcel of a huge scheme,

21    and it's impossible to sit there and say oh, okay, well,

22    $3,000 worth of work was done on the computer fraud claims,

23    but, you know, you can't pay that on the copyright claims

24    because it's separate and apart.

25            The Court sat through the trial.  And I think

1    it's interesting, the experts that are offered in this case

2    are so beside the point, when the only expertise that's

3    really required here is what happened in this case?  What

4    evidence was produced?  What was our money spent on?

5            Because I think when you clear away all these

6    formulas and testimony, that's what it's really about.  And

7    the bottom line is that $28 million was spent doing not

8    only just proving the mechanics of a copyright

9    infringement, but knocking down all the false statements

10   and all the smoke and mirrors that Rimini put up in the

11   course of representing what they did and didn't do.

12           And that bleeds right into these other tort

13   claims that we had as well, that they were lying to

14   customers and lying to everybody.  That's part and parcel

15   of they -- if, in fact, they were innocent infringers to

16   begin with, they didn't stay innocent very long.

17           And like most who engage in wrongdoing, it's the

18   coverup that takes them in.  And it was the coverup of the

19   copyright infringement that we needed to blast through.

20   I'm sure the Court remembers the demonstratives with the

21   law wall of lies and all of that.

22           But, you know, that's not too far from the truth

23   here.  And all this $28 million went to proving our

24   copyright infringement case and knocking down the false

25   representations and the clearing out the smoke, basically,

1    that Rimini Street was blowing most of the time.

2              This isn't the kind of case where you've got,

3    oh, well, there's this dispute over the breach of contract

4    A, and over here there's a dispute as to the breach of

5    contract B.  This is one big case.

6              And even if we didn't have these other claims in

7    this case, all that stuff about Rimini's downloading and

8    the impact it had on the servers, it's circumstantial

9    evidence that, whoa, what are they doing?  This is not

10   servicing your client within the terms of a license.

11             That would have all been admissible under Rule

12   404(b).  I know it's usually brought up in the criminal

13   context, and that's where it usually comes to bedevil me.

14   But all of this was coming in, so all the money that we

15   spent on unearthing these facts, analyzing it, cutting

16   through the nonsense on the other side, there's no

17   apportionment necessary at all.  It all went to the

18   successful prosecution of Oracle's copyright defense in

19   this particular case.

20             I could go on a little bit about some of the

21   alternatives that have been processed by Rimini Street as

22   to how this Court should address this issue.  They'd like

23   to revisit this whole ridiculous notion that we need to

24   count up all the claims in the case and see who won more of

25   them, and divide the number -- the amount of fees by the

1     number of successful claims and all of this.

2              Been there, done that.  There's no need to go

3     there again in light of this very limited development on

4     appeal.

5              We hear the novel notion of the Ravin offset

6     that should be taken against our attorney's fees.  Never

7     mind that said Seth Ravin hasn't moved for attorney's fees

8     in this case.  He hasn't put together the affidavits, the

9     reports, everything that he would need to do so.

10             He's not a prevailing party, or if he is, he

11    hasn't come forward with the attorney's fees -- attorney's

12    fees' motion.  There's no evidence that he even paid

13    attorney's fees, and yet somehow that should be an offset

14    against the attorney's fees that Rimini Street is

15    responsible as a result of its infringement of copyrights.

16             So that's a complete red herring right there.

17    And the fact that Dennis Kennedy and the other fellow say,

18    Oh, that sounds like a reasonable way to deal with it,

19    matters not at all.

20             The only expertise that's of any value here is

21    the expertise that, quite frankly, Your Honor, only you

22    possess, which is the knowledge of what's happened in this

23    case for the last eight and a half years and marrying that

24    up to the legal standards.  That's the only expertise we

25    need here.

1          There was also a proposal from Rimini Street to

2     just reduce it by 50 percent because after all there's two

3     defendants, and none of the claims against Mr. Ravin

4     survived.  There's no indication that half the fees were

5     spent pursuing Seth Ravin and half the fees were spent

6     pursuing Rimini Street on its own.  That is a completely

7     plucked-out-of-the-air type of proposal which has no real

8     logical coherence and is there only in an effort to reduce

9     the award.

10          I come back again to this notion of the limited

11    success.  The Ninth Circuit's language was in light of the

12    more limited success of Oracle.  And certainly that's just

13    saying, Well, you know, there are these claims that they

14    prevailed upon, now there's two fewer, what do you think?

15    Does it change your mind or not?

16          Rimini has basically accepted it as a license to

17    reopen this whole issue about whether there should be

18    attorney's fees in the first place, what dollar amounts

19    they should be.  It's not that at all.  With respect to,

20    you know, all their ways to bake into the new award the

21    lack of success, they completely ignore the fact that we

22    did this before.

23          The $28.5 million in attorney's fees embraces,

24    as the law permits, not only the fees on the claims for

25    which we were successful but for the claims which we may

1    have been unsuccessful, so long as they were part of the

2    common factual core and nucleus of the infringement case.

3    And that's all we're saying, Your Honor.

4           The Rule 68 argument, I'm not even really going

5    to go there.  I think it was adequately litigated the first

6    time we did this motion.

7           The offer made by Rimini Street was not more

8    favorable than the ultimate outcome for Oracle, not before,

9    not after the Ninth Circuit appeal.  And it's especially so

10   in light of what you've heard about the injunction.

11          Because if you look closely at their offer of

12   judgment, their injunction allowed cross-use to continue.

13   So how could that possibly be of benefit or of significant

14   benefit to Oracle?

15          By adding that into their offer of judgment,

16   they basically made it worth far more than its face value.

17   And then, of course, there's a whole issue of the payment

18   over time and all of that.  The Court was right the first

19   time, it would be right now to simply adopt the analysis

20   that it made before.

21          Your Honor, I know I've spoken a long time

22   concerning the issue that's so simple, but it really is.

23          What happened at the Ninth Circuit affects not

24   at all the justness of awarding Oracle the $28.5 million in

25   attorney's fees you awarded two years ago.  It all went to

1    proving the successful part of this case.  The law says if

2    there's related claims that are so related to the corpus of

3    the evidence, that they too can be the subject of

4    reimbursement.

5              But in this particular case you really don't

6    even have to go there.  Every dollar spent was well spent,

7    and it was spent on something that is reimbursable under

8    the copyright statute at issue.  Thank you.

9              THE COURT:  Thank you, Mr. Pocker.

10             MR. POLSENBERG:  Good afternoon, Your Honor.

11   Dan Polsenberg for defendant.  I'm going to be refreshingly

12   brief.

13             THE COURT:  Good afternoon, Mr. Polsenberg.

14             MR. POLSENBERG:  I think I have friends on both

15   sides of the room that have to catch flights.

16             Oracle says their position is simple, it's

17   basically been there, done that.  They effectively want you

18   not to do what the Ninth Circuit asked you to do.  They say

19   that I want you to reexamine the award of attorney's fees.

20   Well, that is true.  I do.

21             But that's not why we have a hearing today.

22   It's because the Ninth Circuit did remand for

23   reconsideration, in light of the degree of success, the

24   more limited degree of success.

25             And they present nothing.  Oracle is right, it

1    is a simple argument that they're making, but it is too

2    simple because they're not trying to help the Court at all

3    in doing what it needs to do.

4         Under *Hensley* -- and they claim *Hensley* doesn't

5    apply because it's a 1988 case, but I think it's a

6    wonderful explanation of how to appropriate fees.

7         And in *Hensley* the court points out that you

8    have to look at fees based on the degree of success.  Now,

9    there are two obligations under *Hensley*.  There's the

10   obligation -- there's the burden of the plaintiff in

11   presenting their claim for fees to show why they are

12   entitled to them, and there's also the responsibility of

13   the court to explain how it has apportioned.

14        But here they don't want to apportion at all.

15   And that, I think, is a terrible mistake on Oracle's part,

16   and it would be an even worse mistake on this Court's part.

17        In *Hensley* the Supreme Court keeps talking about

18   the burden of establishing entitlement, the relationship

19   between the amount of the fee awarded and the results

20   obtained.  Again, they say the extent of success and the

21   amount of the fees' award.

22        Now, Mr. Pocker says that I go into some -- I

23   don't remember if he used the word "ridiculous," but

24   detailed machinations about the number of claims.  And

25   there's probably a little bit of support for his position

1    in *Hensley* on that.

2           I don't think you have to do an arithmetic

3    computation of the issues.  But the Court was very clear

4    that you do have to look at the degree of success involved.

5           Let me go through their claims.  Now, yes, they

6    had 12 cause of action, and they prevailed on one of them,

7    we prevailed on 11.  That would be 8.4 percent.

8           But I'm not going to rely on that because I

9    think it is true that if they brought 93 copyright claims,

10   I would still have most of the same argument that I'm going

11   to make today.  Let me explain what I'm talking about.

12          I don't use PowerPoint.  Mr. Perry is very good

13   at it.  When I passed the bar, they had not yet invented

14   electricity.  So I use physical objects.

15          They brought a claim against Rimini for

16   copyright infringement.  They brought a claim against Seth

17   Ravin for copyright infringement.  They brought it for

18   willful infringement so they could get additional damages

19   so that they could get lost profits.  Against both of them.

20          They wanted punitive damages against both of

21   them.  They also brought the state law of computer access

22   and fraud claims.  And they brought in a couple other

23   claims, including -- we talked about trespass earlier

24   today, seems like yesterday, earlier today, they brought

25   trespass claims.

1              So a lot of these claims went by the wayside.

2       Some were withdrawn.  We went to trial essentially on these

3       elements.  The jury found there was infringement, but

4       innocent infringement, found no willfulness, therefore no

5       punitive damages.  Seth Ravin prevailed entirely on the

6       infringement claims, and then the Ninth Circuit reversed

7       the computer access and fraud claims.

8              Here's their degree of success.  It's not --

9       it's not just that, Oh, we prevailed on our copyright

10      claims.  They didn't prevail the way they wanted to

11      prevail.  They wanted all this and then all this again

12      against Seth Ravin.

13             They wanted -- I kept saying -- for weeks I've

14      been saying they were swinging for the fences, and this

15      morning Seth -- or, excuse me, this morning West said they

16      went for the kill.  And that's what they did here.

17             Their degree of success is that they only got so

18      much on their copyright claims, not that they prevailed on

19      all 93 registrations, but they only got so much.

20             That's why we pointed out they really only got

21      14 percent of a quarter of the billion dollars in damages

22      they wanted.  They only got 27.7 percent of the copyright

23      damages that they were seeking.  This isn't just the

24      elimination of 14 million -- I don't know, I can't believe

25      I actually say things like just $14 million, but this is

1    looking at all the issues that go to their limited degree

2    of success and now after the Ninth Circuit their even more

3    limited degree of success.

4              So what do they propose?  They say been there,

5    done that.  They don't even try to apportion.  They have to

6    do that to help you.  Their failing to do that means that

7    they don't get any fees whatsoever.  And it leaves you in

8    the situation where you have to examine all of this.

9              Oracle says, Well, the limited scope of the

10   remand was look at the elimination of the two computer

11   access and fraud claims.  The remand doesn't say that.

12   You're supposed to reconsider in light of the more limited

13   success that they have.

14             They talked about law of the case earlier today.

15   In their reply brief on attorney's fees on pages 1, 2, and

16   7, they argue law of the case.  This isn't law of the case.

17             The Ninth Circuit did not affirm anything.  They

18   vacated.  They sent it back down.  You can reconsider

19   anything now on the attorney's fees.

20             Now, I'm not going to go to all the detail that

21   Mr. Pocker went to in talking about all the other topics,

22   but the degree of success has been recognized by courts as

23   one of the primary factors in determining the objective

24   reasonableness or unreasonableness of a losing party.  So

25   effectively what we're looking at, here they're coming in

1    saying, Well, we lost on copyright infringement, but that's

2    not the claim we were facing.  We were facing willful

3    infringement, lost profit damages, punitive damages.  We

4    were looking at all that.

5         Were we reasonable in going into court?  We were

6    reasonable in fighting the big claim that they brought.

7         Now, they're coming in and saying we were

8    unreasonable about the little claim that -- on which Oracle

9    prevailed.  But look what we did in light of that.  We made

10   an offer of judgment for a hundred million dollars.

11        Now, I'm not arguing the offset of the damages

12   amount right now.  I'm talking about the position in which

13   we found ourselves.  We're in litigation, this company is

14   trying to kill us.  And they have this huge claim, and

15   they're spending a great amount of attorney's fees fighting

16   the bigger claim, the six salt shakers as opposed to the

17   one.

18        And we make an offer of judgment for a hundred

19   million dollars.  That's more than they got.  It's more

20   than the $35 million they got for this.  Even if you add

21   interest and cost, that's 74 million.

22        We were looking at this case in a situation

23   where, yes, we were reasonable in trying to resolve that.

24   Justice Kagan in *Kirtsaeng* talks about the factors to

25   consider in the award of fees, and she talks about how it

1    hinges on a party's attitude toward risk.

2             So if you have a weak claim and you're the

3    plaintiff, you don't pursue it anymore.  You have a weak

4    defense, and you're the defendant, you abdicate your

5    defense.

6             But we had -- while we didn't prevail on every

7    aspect, we had a winning defense on the vast amount of the

8    damages that they were seeking.

9             And we even tried to settle it at about the

10   borderline.  And we even were north of the borderline.  So

11   we were reasonable -- you know, I've got to get these all

12   back to Peg's.  We were reasonable in the positions that we

13   were taking then.

14            Now, they come in and say, Well, that's not the

15   only position that you look at, you look at the conduct and

16   the misconduct.  And I stand by what we said in our briefs.

17   If there was misconduct and, yes, *Kirtsaeng* does talk about

18   that, in a line, the court may order fee shifting because

19   of the parties' litigation misconduct, whatever the

20   reasonableness of his claims or defenses.

21            And they cite a Second Circuit case, *VivaVideo*.

22   But in *VivaVideo* that was a case where they found

23   willfulness.  This wasn't a dispositive resolution saying

24   if somebody engages in misconduct, you can shift all the

25   fees.

1          And, yeah, *Goodyear* was an inherent power case,

2    *Goodyear versus Haeger*.  But I don't think the reasoning is

3    any different here.  If there's misconduct, the fees that

4    are shifted must be related to the fees that they incurred

5    because of the misconduct.

6          They don't get everything.  Especially in light

7    of what's already happened here.  Judge Leen sanctioned us

8    for our misconduct.  The Court gave an adverse inference

9    instruction.  There are already remedial things and penal

10   things that the Court has implemented.  So it would be an

11   abuse of discretion, I would argue, for the Court -- for

12   the Court to go further.

13         And right after Justice Kagan cites *VivaVideo*,

14   she cites another case, *Bridgeport Music*, and that's a case

15   where they're talking about -- a plaintiff has hundreds of

16   claims, and some are overbroad and some are reasonable, and

17   the court has to take all of that into consideration.

18         Well, that's what this Court needs to do.  They

19   have claims that they were reasonable on prevailed.  But

20   they sought -- in the litigation itself they've sought far

21   too much.

22         Does the limited degree of success factor into

23   other issues?  Yes, of course, it does.

24         Making the plaintiff whole.  The purposes of the

25   Copyright Act.  Do we really want to be in a position where

1    we are encouraging people, plaintiffs, to sue for far too

2    much and have the other side pay all the fees for that?

3              So it's getting late in the day.  How much

4    should we apportion?  I have a lot of ideas.

5              Do we have appendix A?

6              In tab 5, Your Honor, you have appendix A, our

7    opposition to the motion to renewed motion.  Wow, that's

8    great.

9              That lays out different ways to reach numbers

10   that we have methodologies for that range from almost as

11   low as a million dollars to almost as high as 8 million

12   dollars.

13             Now, they don't like any of our methodologies,

14   but they don't have anything that they presented.

15             And failing to have presented anything, I think

16   they're in the position where they shouldn't get anything.

17   But let's -- let me take you through a couple of different

18   ways to do this.

19             We start with your 28.5 original award.  I

20   suggest we look at the offset, which we've called the Seth

21   Ravin issue.

22             Mr. Pocker accurately points out we didn't move

23   for attorney's fees for him.  But I think he misses the

24   point on what we're talking about.  If we spent $4.7

25   million defending those claims, it would be a reasonable

1    assessment of how much they would have spent also pursuing

2    those claims.

3            So that gives us $23.8 million.  We're right at

4    this column here, which you can't see me even if I go over

5    there.

6            Now, their degree of success for damages, even

7    for just their copyright claims, was only 27.7 percent,

8    which would give them $6.6 million.

9            But I also think that we should have a further

10   reduction in the amount of attorney's fees that you

11   allowed.  You allowed 80 percent of their attorney's fees,

12   and that was in light of all the aspects of the litigation.

13   But I think when they have pursued too much, when they have

14   sought these large damages and only recovered a fraction of

15   them, they should have a 30 percent markdown instead of a

16   20 percent markdown, reducing 20 percent to 70 -- or

17   reducing 80 percent to 70 percent, 70 percent is 87.5

18   percent, gives them 5.775 million.

19           Let's do an easier one.  Let's start with your

20   28.5, reduce that by their 27.7 percent, that gives them

21   7.9 million.  Because I think you have to look at all the

22   aspects.

23           But even if you looked only at the two claims

24   the Ninth Circuit reduced, you have an offset for 29, 28,

25   29 percent of the damages, you have an offset of 50 percent

1    of the parties, you have an offset of 67 percent of the

2    claims, the average of those is 49 percent.

3                They argue that their approach furthers the aims

4    of the act.  But in *Kirtsaeng* and in *Fogerty,* Justice Kagan

5    and Chief Justice Rehnquist talk about how the act strikes

6    a balance.

7                It isn't just allowing a plaintiff to bring a

8    claim.  It's looking at the public purpose, the purpose of

9    enriching the public through the general -- the general

10   public through access to creative work.

11               So we have to strike a balance through between

12   two subsidiary aims, encouraging and rewarding authors'

13   creations, while also enabling others to build on that

14   work.

15               This is an innocent act of infringement.  The

16   Ninth Circuit -- even back before *Fogerty,* when the Ninth

17   Circuit followed the approach where plaintiffs get all

18   their fees, the Ninth Circuit said one of the

19   considerations which justified the denial of fees is the

20   defendant's status as an innocent rather than a willful or

21   knowing infringer.

22               I don't think they've made out a case for fees.

23   I've been clear on that.  But even if the Court wants to

24   grant fees, I really think the number is between 7 and 8

25   million.  But if you were to go to 50 percent, if you were

1    to do 14.2 million, if you were to deny the injunction and

2    cut the fees award in half, I would not have any motivation

3    to take an appeal on the attorney's fees award.

4              Now, I've said before the scope of the remand

5    lets you address every issue.  So I think it's more than

6    just the 50 percent reduction for what we're doing now.  I

7    think it's considering all of the factors in light of their

8    limited success and now even more limited success.  But we

9    would be comfortable with that as a decision.

10             Thank you, Your Honor.

11             THE COURT:  Thank you, Mr. Polsenberg.

12             MR. POLSENBERG:  Mr. Pocker has used up his

13   time, so he's going to let me leave this messy and clean up

14   after the Court recesses.

15             THE COURT:  All right.

16             MR. POCKER:  Your Honor, I think I did go past

17   45 minutes, and your staff -- 42 minutes.  I have three

18   minutes, Your Honor.

19             THE COURT:  Well, let me see.  By my notes you

20   have five minutes left, if you'd like them.

21             MR. POCKER:  Your Honor, what we've just seen

22   demonstrates the sophistry and the creativity that is being

23   used by the other side to come up with these different

24   measures.  I mean, even this degree of success with the

25   salt shakers and the claims and all this stuff, well, if we

1       have 93 salt shakers in which we prevailed versus the 11

2       that they prevail, it's all just a big game.

3                   What the Court really needs to take into

4       consideration on this is the fact that this was, as you

5       declared, first and foremost, a copyright infringement

6       case.  It was tried as one, it was successfully tried as

7       one, and they can talk about how, Oh, you only got 14

8       percent of the numbers that were thrown around as damages

9       and whatever, but the award in this case is substantial,

10      significant, and evidences success.

11                  And this notion that somehow you have to make an

12      award so that people won't overplead their cases, the

13      courts and the progress of litigation has a way of weeding

14      that out.

15                  And in most instances this is another case of no

16      good deed goes unpunished.  We decided to tailor our own

17      case to come forward and say, Well, we're not going to have

18      this claim, that claim, let's get a writ of trespass to

19      chattels, and all of a sudden it's a salt shaker.  All of a

20      sudden it's a reason why, you know, we have failed utterly.

21      We're not succeeding to the degree that we have.

22                  When the Ninth Circuit says more limited

23      success, they mean more than the already extraordinary

24      success we've already had.  And all of the talk about, Oh,

25      you need to reduce this, you need to reduce that, this

1    Court already reduced by 20 percent the amount of fees that

2    we were asking for.

3            We submit no further reduction is necessary.

4    We've clearly demonstrated that everything we've spent was

5    in connection with the claims on which we were highly

6    successful.

7            And under the circumstances, this is a simple

8    one, Your Honor.  Simply reinstate the award that you made

9    before.  All the analysis he now wants you to do again you

10   did two years ago, properly, successfully, and with the

11   input of everybody in this room, and it still stands, and

12   that number should still be the number.

13           THE COURT:  All right.  Thank you, Mr. Pocker.

14           Well, thank you, counsel.  I appreciate the

15   arguments on both sides, and I compliment counsel on the

16   professionalism that has attached to all of this.

17           I would anticipate I'll get a written decision

18   to you in a fairly short period in time, no more than two

19   weeks on the outside as I sit here.  But in any event, I

20   will give you a decision soon.  And I appreciate having you

21   here.  I appreciate seeing everyone again.

22           This certainly is an extensive case, and it has

23   been pending for a long time.  And I hope that we all look

24   to its end in the near future.

25           I don't know what's going to happen with *Rimini*

1    II.  But at least for this case, I want to see it wrapped

2    up.  So thank you very much for being here.

3              This session of court will be adjourned at this

4    time.

5              And, Mr. Polsenberg, you can return Peg's salt

6    and pepper shakers.  But I appreciate the demonstration.

7              Thank you very much.  The Court will be in

8    recess.

9              COURTROOM ADMINISTRATOR:  Please rise.

10         (The proceedings concluded at 4:28 p.m.)

11                        *    *    *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            -o0o-

2        I certify that the foregoing is a correct

3        transcript from the record of proceedings

4        in the above-entitled matter.

5

6        _____        _7/28/18_

7        Donna Davidson, RDR, CRR, CCR #318        Date
         Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25