UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-0106-LRH-(VCF)

ORDER

Before the court are plaintiffs Oracle USA, Inc.; Oracle America, Inc.; and Oracle International Corporation's (collectively "Oracle") renewed motion for a permanent injunction (ECF No. 1117) and renewed motion for attorneys' fees (ECF No. 1118). Defendants Rimini Street, Inc. ("Rimini Street") and Seth Ravin ("Ravin") filed oppositions to the renewed motions (ECF Nos. 1130, 1145) to which Oracle replied (ECF Nos. 1139, 1152). A hearing on Oracle's renewed motions was held by the court on Monday, July 23, 2018.

**I.      Facts and Procedural History**

This action has an extensive eight-year history. In brief, and relevant to the renewed motions, Oracle develops, manufactures, and licenses computer software. Oracle also provides after-license software support services to customers who license its copyrighted software. Defendant Rimini Street is a company that provides similar after-license software support

services to customers licensing Oracle's copyrighted software and competes directly with Oracle to provide these services. Defendant Ravin is the owner and CEO of Rimini Street.

On January 25, 2010, Oracle filed a complaint for copyright infringement against defendants alleging that beginning in 2006, Rimini Street copied several of Oracle's copyright-protected software programs – including Oracle's copyrighted PeopleSoft, J.D. Edwards, and Siebel-branded Enterprise Software products – onto its own computer systems in order to provide after-license software support services to customers who licensed the copyrighted software programs. ECF No. 1. In June 2011, Oracle filed a second amended complaint alleging thirteen causes of action against defendants: (1) copyright infringement; (2) violation of the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a); (3) violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; (4) violation of the Nevada Computer Crimes Law ("NCCL"), NRS § 205.4765; (5) breach of contract; (6) inducement of breach of contract; (7) intentional interference with prospective economic advantage; (8) negligent interference with prospective economic advantage; (9) unfair competition; (10) trespass to chattels; (11) unjust enrichment; (12) unfair practices; and (13) an accounting. ECF No. 146.

A jury trial was held on Oracle's claims for copyright infringement and violation of the California and Nevada computer access statutes from September 14 through October 13, 2015. On October 13, 2015, the jury returned its verdict and found that defendant Rimini Street engaged in copyright infringement on ninety-three of Oracle's copyrighted PeopleSoft, J.D. Edwards, and Siebel-branded Enterprise Software products. ECF No. 896. The jury also found that both defendants Rimini Street and Ravin violated the California and Nevada computer access statutes. *Id*. Ultimately, the jury awarded Oracle $35,600,000.00 for Rimini Street's copyright infringement and $14,427,000.00 for defendants' violation of the state computer access statutes. *Id*. After the jury verdict, Oracle filed a series of post-trial motions including a motion for a permanent injunction (ECF No. 900), a motion for prejudgment interest (ECF No. 910), and a motion for attorneys' fees (ECF No. 917) which were all granted by the court on September 21, 2016, after extensive briefing by the parties and a May 25, 2016 court

hearing (ECF No. 1049). Defendants then appealed the jury verdict, along with the court's findings and orders, to the Ninth Circuit Court of Appeals. *See* ECF No. 1078.

On January 8, 2018, the Ninth Circuit issued its decision and opinion on defendants' appeal. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948 (9th Cir. 2018). In its decision, the Ninth Circuit affirmed in-part, reversed in-part, vacated in-part, and remanded in-part the jury's verdict and the court's various orders in this action. In particular, the Ninth Circuit affirmed in full all of the court's and jury's findings related to Oracle's claim of copyright infringement against Rimini Street for all ninety-three copyright registrations at issue in this action. *Id*. at 953 ("[W]e affirm the judgment with respect to the copyright infringement claims. We also affirm the remedies with respect to those claims[.]"). The Ninth Circuit also affirmed the jury's $35.6 million judgment against Rimini Street for its infringement and the court's award of approximately $22.5 million in prejudgment interest against Rimini Street. *Id*. at 953, 963-964. However, the Ninth Circuit reversed the jury's verdict against defendants Rimini Street and Ravin on Oracle's state law computer access claims (along with the related California UCL claim) and the jury's $14.4 million associated judgment on those claims. *Id*. at 953, 963. In light of its reversal on the state law claims, the Ninth Circuit vacated both the court's issuance of a permanent injunction and the court's award of attorneys' fees and remanded both of these issues for the limited purpose of determining whether the court would again issue a permanent injunction and/or an award of attorneys' fees based solely on Rimini Street's copyright infringement and without reference to the now reversed state law computer claims. *Id*. at 964-65.

In response to the Ninth Circuit's opinion, Oracle filed the present renewed motion for a permanent injunction to enjoin and restrain Rimini Street from any further infringement of Oracle's software copyrights (ECF No. 1117)[1] and renewed motion for attorneys' fees in the amount of $28,502,246.20 (ECF No. 1118). Both motions are addressed below.

///

///

///

---

[1] Along with its motion, Oracle has filed a proposed permanent injunction. *See* ECF No. 1117, Ex. A.

## II. Renewed Motion for Permanent Injunction (ECF No. 1117)

### A. Effect of the Ninth Circuit Opinion

The parties dispute the breadth and effect of the Ninth Circuit's opinion and remand upon the court's analysis on the renewed motion for a permanent injunction. *See* ECF Nos. 1117, 1130. In its renewed motion, Oracle argues that the Ninth Circuit's remand on the issue of whether to grant a permanent injunction is limited and in no way undercut the basis for, or the court's prior analysis on, issuing a permanent injunction against Rimini Street to enjoin and restrain future copyright infringement. *See* ECF No. 1117. Rather, Oracle argues that the Ninth Circuit remand only requires the court to reevaluate the relevant injunction factors solely under the Copyright Act and without reference to the now reversed state law computer claims. *Id*. In opposition, Rimini Street argues that the Ninth Circuit's remand constitutes a true reversal and effective disapproval of the permanent injunction that was previously entered by the court and thus, the opinion precludes the court from entering any injunction in this case. *See* ECF No. 1130.

The court has reviewed the parties' documents, along with the Ninth Circuit's opinion, and agrees with Oracle's reading of the opinion and the limited nature of the remand. In its order, the Ninth Circuit recognized that the court entered a permanent injunction against Rimini Street "based on copyright infringement and . . . based on alleged violations of the [state computer access statutes]." *Id*. The Ninth Circuit further recognized that in the court's order, "the district court assessed the [relevant] factors by reference to both the copyright and the [state computer access] claims, without considering separately the propriety of issuing an injunction as to the copyright claims alone." *Id*. The Ninth Circuit then concluded that "[b]ased on the record before us, we do not know how the district court would weigh the [relevant] factors with respect to the copyright claims alone. We express no view on the propriety or scope of any injunctive relief, which are matters committed to the district court's discretion in the first instance." *Id*. The court reads this express direction from the Ninth Circuit to mean that the court must examine the relevant permanent injunction factors based solely on Rimini Street's copyright infringement without including any findings related to the reversed state law computer access claims. The

court does not read any further limitation into its direction from the Ninth Circuit's opinion, nor does the court find that the remand precludes the issuance of an injunction in this action. With this understanding of the Ninth Circuit's remand, the court shall evaluate and analyze Oracle's renewed motion for a permanent injunction.

### B. Legal Standard for a Permanent Injunction

The Copyright Act provides that a district court may enter a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion" of the district court. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006). Such discretion should be "exercised consistent with traditional principles of equity." *Id*. In determining whether to issue a permanent injunction in a copyright infringement action, a district court evaluates four factors: (1) irreparable harm; (2) the inadequacy of monetary damages for the infringement; (3) whether the balance of hardships weighs in the copyright holder's favor; and (4) whether the public interest would be served by a permanent injunction. *Id*. at 391; *see also Flexible Lifeline Sys., Inc. v. Precision Lift, Inc*., 654 F.3d 989, 999 (9th Cir. 2011) (applying the four-factor test outlined in *eBay*). Further, a permanent injunction should issue when the intervention of the court in equity is essential to protect a party's rights against injuries that could not otherwise be remedied. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). The court shall address each *eBay* factor below.

#### 1. Irreparable Injury

The first factor in a permanent injunction analysis is whether a plaintiff has suffered an irreparable injury as a result of a defendant's conduct, or will suffer an irreparable injury absent an injunction. *See American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). As part of a court's irreparable injury analysis in a copyright action, courts regularly examine three main considerations: (1) direct competition between the parties; (2) loss of market share due to the infringement; and (3) loss of customer and business goodwill. *See, e.g., Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012) (stating that direct competition in the same market strongly supports the potential for irreparable harm

5

absent an injunction); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (finding that harm to a party's market share, revenues, and brand recognition is relevant for determining whether the party has suffered an irreparable injury); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (holding that loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm).

  Here, the court once again finds that Rimini Street's infringement of ninety-three separate copyright registrations over four of Oracle software product lines (Oracle Database, PeopleSoft, J.D. Edwards, and Siebel-branded Enterprise Software) irreparably injured Oracle's business reputation and goodwill. First, it is undisputed (and has been repeatedly acknowledged by the parties) that Oracle and Rimini Street directly compete with each other to provide after-license software support services to customers that license Oracle's copyrighted software. Direct competition between a copyright holder and a proven copyright infringer has consistently supported the issuance of a permanent injunction. *See Presidio Components, Inc.*, 702 F.3d at 1362.

  Second, the evidence in this action established that Rimini Street's conscious disregard for Oracle's software copyrights enabled Rimini Street to rapidly build its business from a new and unknown company in the after-license software support market to a major competitor of Oracle. By offering cut-rate prices on its own services, generally at a discount of 50% of Oracle's prices for similar service contracts, Rimini Street gained increasing market share and growth, including through the length of this litigation. The evidence further establishes that Rimini Street's business model from 2006, and up until at least the court's summary judgment orders in February 2014, was built entirely on its infringement of Oracle's copyrighted software. Rimini Street would not have achieved its current market share and exceptional revenue growth without its infringing conduct. In fact, the evidence in this action establishes that Rimini Street landed clients for its services by telling customers that Oracle's services were overpriced and could be offered at the same cut-rate, 50% discount that Rimini Street offered. Rimini Street was able to offer its after-license software support services at such low prices because its copyright infringement allowed it to offer support services without licensing the ninety-three different

copyrighted software products from Oracle or having to expend significant resources in time and money in developing its own competing software. Further, by purporting to offer vendor-level support at half the price of Oracle support, Rimini Street created the impression that Oracle was overcharging for support and eroded the bonds and trust that Oracle has with its customers. Such injuries to a business' reputation and goodwill have consistently been held to constitute irreparable harm. *See Apple Inc. v. Psystar Corp. (Apple II)*, 658 F.3d 1150, 1154 (9th Cir. 2011).

Finally, Rimini Street's claim that it no longer engages in the conduct adjudged by the court and jury to infringe Oracle's software copyrights is not a basis to deny issuance of an injunction. *See Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (stating that "[a] private party's discontinuation of unlawful conduct does not make the dispute moot, however. An injunction remains appropriate to ensure that the misconduct does not recur as soon as the case ends."). Therefore, based solely on Rimini Street's copyright infringement, the court finds that this factor again weighs in favor of a permanent injunction.

### 2. Inadequacy of Monetary Damages

In order to establish that an injunction is warranted, a plaintiff must show that monetary damages alone are inadequate to fully compensate it for the defendant's conduct. *See eBay*, 547 U.S. at 391. Here, the court finds that monetary damages alone are inadequate to compensate Oracle for the losses suffered as a result of Rimini Street's copyright infringement. First, the court notes that certain harms suffered by Oracle as a result of Rimini Street's conduct like lost market share and erosion of company goodwill are intangible injuries difficult to quantify and compensate which supports the issuance of a permanent injunction. *See Apple II*, 658 F.3d at 1154 (stating that injuries to a business' reputation and company goodwill are intangible injuries difficult to quantify and compensate).

Second, the copyright infringement damages in this action were uniquely complex and difficult to determine. Unlike a patent case where a specific number of infringing products are sold at a specific price, in this copyright infringement action there was no mathematically

efficient way for the jury to measure Oracle's damages. At trial, the jury was provided with two separate damage theories, both of which required the jury to evaluate a substantial amount of evidence and expert testimony before the jury reached the $35.6 million in copyright infringement damages awarded in this action. In particular, Oracle's lost profits theory required the jury to determine the lost profits, if any, of a multi-billion-dollar company that has a continuously growing business. In contrast, Oracle's hypothetical license damages theory required the jury to determine the amount Oracle would have charged and received from Rimini Street, its competitor in the after-license software support service market, to license the ninety-three different software products in this action after being presented with ample evidence that Oracle does not, and would not, license its software to competitors in the after-license support market. The difficulty for the jury in quantifying Oracle's damages in this action supports the court's finding that monetary damages alone are insufficient to fairly and fully compensate Oracle for Rimini Street's copyright infringement.

Finally, one of the most fundamental rights a copyright holder has is the right to exclude others from taking and distributing the copyrighted work and this right has routinely been held difficult to compensate solely through monetary compensation. *See eBay*, 547 U.S. at 395 (Roberts, C.J. concurring) (identifying and explaining the difficulty of protecting a right to exclude through monetary remedies alone). Based on all the above, the court finds that this factor once again weighs in favor of an injunction.

### 3. The Balance of Hardships

A court must weigh and balance the competing effect that granting or withholding an injunction would have on each party. *See Williams v. Bridgeport Music, Inc.*, 2015 WL 4479500, at *41 (C.D. Cal. 2015). The court has reviewed the documents and pleadings on file in this matter and finds that the balance of hardships weighs in favor of Oracle (as the copyright holder) and the issuance of a permanent injunction against Rimini Street for Rimini Street's infringement of ninety-three of Oracle's software copyrights. Generally, the balance of hardships tips in favor of a holder of a copyright seeking to protect its copyrighted works, especially when the party to be enjoined does not have a separate legitimate business purpose for continuing the conduct or

acts deemed to be infringement. *Grokster*, 518 F. Supp. 2d at 1220. This action is no different. Here, Rimini Street does not have a separate legitimate business purpose for continuation of the infringing acts. Further, there is no evidence that Rimini Street would be harmed by an injunction that enjoins and restrains future copyright infringement or using the materials gained from its infringement because Rimini Street has repeatedly represented to the court (including at the July 23, 2018 hearing on the present motions) that is has changed its business model and support services away from the conduct ultimately held to constitute copyright infringement. Finally, because Oracle seeks to enjoin only acts that have already been determined to be unlawful, and which have been affirmed on appeal, the balance of hardships weighs in favor of issuing a permanent injunction.

### 4. The Public Interest

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the [copyright holder's] rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863. Here, the court finds that a permanent injunction against Rimini Street for the possibility of future copyright infringement is in the public interest. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."). Further, an injunction against future copyright infringement would not harm the public's access to competitive after-license software support services because Rimini Street has repeatedly represented to the court that its current business model is not based on its prior infringing conduct. Taking Rimini Street's statements as true, the public's access to competition in the after-license software support service market would not be lost or diminished. Finally, issuing an injunction in this action "ultimately serves the purpose of enriching the general public through access to creative works" by giving Oracle an incentive to continue to develop software for public use. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). Therefore, the

court finds that all of the relevant *eBay* factors favor issuing a permanent injunction against Rimini Street and the court shall grant Oracle's renewed motion accordingly.

**III.  Renewed Motion for Attorneys' Fees (ECF No. 1118)**

In the same prior order granting Oracle's motion for a permanent injunction against Rimini Street, the court also granted Oracle's motion for attorneys' fees and awarded Oracle $28,502,246.40 in attorneys' fees against defendants Rimini Street and Ravin after a careful analysis of all relevant factors and a general reduction of Oracle's requested fees amount by 20%. *See* ECF No. 1049. The Ninth Circuit, "[i]n view of [their] conclusion that there was no violation of the state computer laws . . . vacate[d] the fee award and remand[ed] for reconsideration in light of Oracle's more limited success at litigation." *Oracle USA, Inc.*, 879 F.3d at 965. Oracle then filed the present renewed motion for attorneys' fees requesting the court re-issue its prior fee award of $28,502,246.40 against defendant Rimini Street. ECF No. 1118.

The first issue before the court is whether to re-award attorneys' fees in this action in light of the Ninth Circuit's reversal of the state law claims. Then, if the court finds that such a fee award is still appropriate under the Copyright Act, the court must determine what amount of fees is reasonable.

**A.  Determination of Whether to Award Fees**

Under Section 505 of the Copyright Act, the court has discretion to award a prevailing party its reasonable attorneys' fees. *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may . . . award a reasonable attorney's fee to the prevailing part[y.]"). The ability to award attorneys' fees is "[a]n important remedy under the Copyright Act[.]" *Glacier Films USA, Inc. v. Turchin*, ___ F.3d ___, 2018 WL 3542839, at *1 (9th Cir. July 24, 2018).

In order to determine whether an award of attorneys' fees is warranted under the Copyright Act, a district court examines the nonexclusive factors laid out by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), including: "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534, n. 19; *see also Kirtsaeng*, 136 S. Ct. at 1985 (reaffirming the application of the *Fogerty*

factors under the Copyright Act). The Ninth Circuit also recognizes additional relevant factors that may be considered by a district court including the overall degree of success obtained by the prevailing party in the litigation and the purposes of the Copyright Act. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017); *see also Glacier Films*, 2018 WL 3542839, at *3 (reaffirming the Ninth Circuit's commitment to these additional factors in determining an award of fees under the Copyright Act).

In applying these factors, a district court is not bound by any "precise rule," strict formulation, or weighing of the relevant factors. *Kirtsaeng*, 136 S. Ct. at 1985. Nor must all of the factors be met or addressed in a particular case. *Perfect 10, Inc.*, 847 F.3d at 675. Rather, a district court enjoys "wide latitude to award attorney's fees based on the totality of circumstances in a case" and the court should examine the relevant factors on "a more particularized, case-by-case assessment." *Kirtsaeng*, 136 S. Ct. at 1985. Further, the Copyright Act does not condition an award of fees on any particular finding of bad faith or willfulness by the non-prevailing party. *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987) ("[A] showing of bad faith or frivolity is not a requirement of a grant of fees."). The court shall address the most relevant factors in determining whether to re-issue an award of attorneys' fee in this particular action below.

**1. Degree of Success/Frivolousness**

Oracle argues that despite the Ninth Circuit's reversal on the state law claims, the degree of success it achieved on its copyright infringement claim establishes that this action was not frivolous and that the claim warrants reissuing an award of attorneys' fees in this case. *See* ECF No. 1118. The court agrees.

Throughout the history of this litigation, which was substantially and significantly focused on Rimini Street's alleged copyright infringement, Oracle successfully defeated all three of defendants' counterclaims, including defendants' counterclaim for copyright misuse. Further, Oracle successfully defeated all of defendants' eleven affirmative defenses which were heavily focused on Oracle's claim of copyright infringement including affirmative defenses for invalid copyright registrations, express license, consent of use, copyright misuse, improper copyright registration, implied license, statute of limitations, and fair use. Then, at trial, Oracle successfully

prevailed on its claim for copyright infringement as the jury found that Rimini Street infringed every one of the ninety-three separate copyright registrations at issue in this action. As a result of Oracle's success in establishing Rimini Street's liability on its copyright infringement claim, the jury awarded Oracle a $35.6 million judgment against Rimini Street for the infringement. Then, on appeal, the Ninth Circuit affirmed the court's orders and the jury's verdict on Oracle's copyright infringement claim in its entirety. *Oracle USA, Inc.*, 879 F.3d at 953.

The court recognizes that several of Oracle's claims were either dismissed or voluntarily withdrawn before trial, and, on appeal, the Ninth Circuit reversed the jury's verdict on the state law computer access claims. However, despite these dismissed, withdrawn, and reversed claims, the court finds that Oracle's overall success in this litigation supports an award of attorneys' fees. Most important to the court in its analysis and decision is that this litigation, at its heart and core, was a copyright infringement action against Rimini Street regardless of any other claims pled. First and foremost, Oracle alleged a claim of ninety-three separate incidents of copyright infringement against Rimini Street. The other pled claims were secondary to this central issue, and in some cases, were derivative claims for which Oracle could not receive any additional monetary relief. Several of these claims were voluntarily withdrawn by Oracle before trial as to bring central focus to Rimini Street's copyright infringement before the jury.

Second, the vast majority of the parties' pretrial motions and the court's related orders were significantly related to the issue of copyright infringement. For example, several rounds of motions, briefing, and court orders were devoted to defendants' counterclaims and affirmative defenses related to Oracle's claim of copyright infringement, particularly the counterclaim and affirmative defense of copyright misuse, and these were issues absolutely central to Oracle's copyright infringement claim. *See* ECF Nos. 67, 72, 74, 111, 405, 436, 450, 476. Further, an entire round of summary judgment briefing was solely devoted to the copyright infringement claim. *See* ECF Nos. 237, 259, 281, 474. All of this combined briefing, including submitted evidence, resulted in over two thousand pages of documents relating to Oracle's copyright infringement claim. Comparing the parties' briefing, the copyright infringement issues completely dwarfed the parties' briefing on all the other claims and issues in this action. Further,

over two-thirds of the Ninth Circuit's opinion is dedicated to the issue of Oracle's copyright infringement claim. *See Oracle USA, Inc.*, 879 F.3d 948.

Third, almost all of the evidence submitted at trial – documentary exhibits, witness testimony, and expert testimony and reports – was directed at or related to Oracle's copyright infringement claim. Disregarding the now reversed state law computer access claims which were submitted to the jury, the court finds that almost all of the evidence that was submitted at trial would have been submitted had these two claims not been at issue. Then, at trial, the jury awarded Oracle $35.6 million in copyright infringement damages based on this evidence after Oracle established Rimini Street's liability.

There is no question to the court that a $35.6 million verdict is a substantial success regardless of what could have been awarded in this case had the jury agreed with Oracle's larger damages figure. The Ninth Circuit recognizes that one of the most important aspects of a party's degree of success in a copyright infringement action is establishing the defendant's liability, regardless of the amount of damages awarded. *See Glacier*, 2018 WL 3542839, at *4 (citing *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006)). All of these factors support the court's finding that this was a copyright infringement action at its core. Thus, the court finds that this factor weighs in favor of awarding attorneys' fees.

**2. Objective Reasonableness**

Another relevant factor in whether to award fees under the Copyright Act is the objective reasonableness (or unreasonableness) of the losing party's position during the litigation. *Kirtsaeng*, 136 S. Ct. at 1983. In particular, the Ninth Circuit accords substantial weight to this factor in reviewing a district court's analysis of whether or not to award fees under the Copyright Act. *Glacier*, 2018 WL 3542839, at *3 (citing *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018)).

Here, the court finds that -- from the earliest part of litigation -- defendants' position that it did not engage in copyright infringement of Oracle's software copyrights was not an objectively reasonable position to take in this litigation. First, as reflected in the court's summary judgment orders, Rimini Street's position was based on a clear misreading of Oracle's software

licensing agreements and a conscious disregard for the manner that Rimini Street used and housed the copyrighted software programs on its own servers.

Second, throughout over five and one half years of this litigation, literally until trial, Rimini Street contended that it had not engaged in any conduct which could be considered copyright infringement, and, in particular, did not engage in cross-use of the copyrighted software and only used certain versions of the copyrighted software for archival purposes and disaster-related testing. In fact, it was on Rimini Street's assertions through various affidavits and deposition testimony submitted at summary judgment that the court denied portions of Oracle's motion for summary judgment on its copyright infringement claim and let these issues go to trial. However, at trial, defendant Ravin testified for the first time that Rimini Street did in fact engage in cross-use and other conduct which constitutes copyright infringement, but did so innocently and without knowledge that Rimini Street was acting improperly. This was a direct and major alteration, effectively a sea change, in Rimini Street's copyright defense throughout the litigation to that time and needlessly caused extensive investigation, discovery and expense to Oracle. As a result, Oracle was forced to spend substantially more time and resources to establish copyright infringement than should have been necessary.

Finally, the court finds that attorneys' fees are warranted because of Rimini Street's significant litigation misconduct in this action. *See Kirtsaeng*, 136 S. Ct. at 1988-89 (recognizing that a court may order attorneys' fees "because of a party's litigation misconduct."). It is undisputed that defendants ignored their preservation obligations and destroyed evidence prior to trial, including a key computer directory containing Oracle software that Rimini Street used for multiple customers in violation of customer licenses. In fact, Magistrate Judge Leen found that defendants intentionally deleted the software library well after they were on notice of potential litigation and were well aware that the software library was potentially relevant evidence. As a result of their litigation misconduct, defendants were forced to acknowledge the spoliation and destruction of evidence at trial, and the court even gave an adverse inference jury instruction on that issue. Further, the Ninth Circuit recognized Rimini Street's litigation conduct including the "many years of complex and contentious litigation" between the parties and the court's

1  "understandable frustration with [Rimini Street's] litigation conduct[.]" *Oracle USA, Inc.*, 879
F.3d at 964. Moreover, Rimini Street's unreasonable litigation tactics in this action were
minimally related to the state law claims reversed by the Ninth Circuit. Taking all of the above
into consideration, the court finds that this factor weighs in favor of sustaining the attorneys' fees
previously awarded by the court.

### 3. The Need to Make Oracle Whole

In its renewed motion, Oracle argues that re-issuing an award of attorneys' fees is necessary to compensate it for its huge outlay of fees and costs necessarily incurred in enforcing its copyrights. *See* ECF No. 1118. The court agrees. In order to prosecute this action, Oracle expended over $58 million in legal fees and costs to prove Rimini Street's unlawful conduct and obtain a copyright infringement judgment. Without a fee award, the court finds that Oracle's investment in its intellectual property and its incentive to create future software would not be appropriately protected or compensated. *See McCulloch*, 823 F.2d at 323 ("[S]ection 505 is intended in part to encourage the assertion of colorable copyright claims . . . and to make the plaintiffs whole.").

### 4. Deterrence

Oracle further argues that an award of attorneys' fees is necessary to deter Rimini Street as a copyright infringer, as well as other third parties, from engaging in future infringement. The court agrees. Here, the court finds that an award of attorneys' fees is an appropriate remedy to deter defendant Rimini Street from its pattern of infringing Oracle's copyrights, which started when the business began and continued up until, at the earliest, the court's orders on summary judgment in 2014. Further, an award of fees is necessary to deter other third party service providers from engaging in similar infringing conduct in order to compete with Oracle for after-license software support services. *See McCulloch*, 823 F.2d at 323.

### 5. Purpose of the Copyright Act

The last relevant factor in the court's analysis of whether to award attorneys' fees in this action is whether an award of attorneys' fees will further the purposes of the Copyright Act. *See Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2012) ("The most important

factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act."). "The goal of the Copyright Act is 'to promote creativity for the public good.'" *Glacier*, 2018 WL 3542839, at *6 (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)); *see also Fogerty*, 510 U.S. at 524 ("The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public."). The court finds that awarding attorneys' fees in this action furthers the purposes of the Copyright Act as it rewards owners of intellectual property, like Oracle, for pursuing their rights under the act and protecting, "encouraging and rewarding authors' creations." *Kirtsaeng*, 136 S. Ct. at 1986 ("[F]ee awards under § 505 should encourage the type of lawsuits that promote [the purposes of the Copyright Act]."). Further, an award of fees is still warranted despite Rimini Street's claim that Oracle was overly aggressive in pursuing this litigation. *See Glacier*, 2018 WL 3542839, at *7 ("Indeed, it is difficult to see how pursuing a meritorious infringement claim 'less aggressively' furthers 'the Copyright Act's essential goals.'"). Accordingly, the court shall grant Oracle's renewed motion and re-issue an award of attorneys' fees under the Copyright Act for Rimini Street's copyright infringement.

**B. Amount of Fees**

If, as here, a district court determines that an award of attorneys' fees is warranted under the Copyright Act, the court must then determine the amount of reasonable fees to award the prevailing party. In determining the reasonableness of an award of attorneys' fees, a district court considers several non-exclusive factors including: (1) the reputation and skill of counsel; (2) the financial terms of the client fee arrangement; (3) the nature and extent of work performed and results obtained; and (4) awards in similar cases. *See, e.g.,* LR 54-16(b)(3); *Resurrection Bay Conservation Alliance v. City of Seward Alaska*, 640 F.3d 1087, 1095 (9th Cir. 2011). The court previously analyzed these four factors in its prior order and determined that, after a careful analysis of each factor, Oracle was entitled to a fees award of $28,502,246.40. *See* ECF No. 1049. The court sees no basis to further reduce this award in light of the Ninth Circuit opinion and the court shall re-issue the award of attorneys' fees against Rimini Street.

///

First, the fees requested by Oracle in its renewed motion and previously awarded by the court are reasonable because they are the product of reasonable rates and a reasonable expenditure of time for the complexity of the litigation and because this action was first and foremost a copyright infringement action. *See* ECF No. 1049. The Ninth Circuit reversal on the state law claims does not change the court's analysis on the reasonableness of the rates charged by Oracle's counsel or the reasonableness of the time spent on this action. Nor does the reversal on the state law claims warrant a reduction of the court's previous award of $28,502,246.40. As addressed above, this action was first and foremost a copyright infringement action and the time spent on establishing Rimini Street's liability for copyright infringement, especially in light of Rimini Street's litigation conduct, is compensable. The court recognizes that Oracle's attorneys' fees request includes time billed not only on the successful copyright infringement claim, but also on Oracle's unsuccessful claims. However, the court finds that these claims involved a "common core of facts" or "related legal theories" to Oracle's copyright claims, and thus, may be included in an award of fees. *See Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (holding that the court may award attorneys' fees on all claims related to successful copyright claims). Moreover, even though the Ninth Circuit reversed on Oracle's state law computer claims, the time spent on those claims and the related attorneys' fees in the litigation are recoverable. *See, e.g., The Traditional Cat Ass'n, Inc. v. Gilbreath*, 3450 F.3d 829, 833 (9th Cir. 2003) (holding that where the prevailing party was not successful on all claims, it may still recover fees for claims "related" to the successful claims). Therefore, the court finds that, with the previous 20% reduction, Oracle is entitled to the same award of fees previously issued by the court. Accordingly, the court shall grant Oracle $28,502,246.40 in attorneys' fees against Rimini Street.

IT IS THEREFORE ORDERED that plaintiff's renewed motion for a permanent injunction (ECF No. 1117) and renewed motion for attorneys' fees (ECF No. 1118) are GRANTED.

///

///

IT IS FURTHER ORDERED that the clerk of court shall enter an award of attorneys' fees in favor of plaintiffs Oracle USA, Inc.; Oracle America, Inc.; and Oracle International Corporation and against defendants Rimini Street, Inc. in the amount of $28,502,246.40.

IT IS SO ORDERED.

DATED this 14th day of August, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE