GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
mperry@gibsondunn.com

Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7228
bevanson@gibsondunn.com

HOWARD & HOWARD PLLC
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Defendant Rimini Street, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation, and SETH RAVIN, an individual, <br><br> Defendants. | CASE NO. 2:10-cv-00106-LRH-VCF <br><br> **EMERGENCY MOTION** <br><br> **DEFENDANT RIMINI STREET, INC.'S MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY FOR A TEMPORARY STAY** <br><br> **DECLARATION OF MARK A. PERRY FILED CONCURRENTLY HEREWITH** <br><br> Judge:   Hon. Larry R. Hicks |

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT Defendant Rimini Street, Inc. ("Rimini") will and hereby does move under Federal Rule of Civil Procedure 62(c) for an order staying enforcement of the permanent injunction entered by the Court on August 15, 2018 (Dkt. 1166), until the Ninth Circuit issues the mandate in the appeal noticed by Rimini on August 16, 2018; or, in the alternative, for a temporary stay to allow Rimini to seek a stay of the injunction in the Ninth Circuit.  Pursuant to Local Rule 7-4 and for the reasons set forth herein and in the declaration of Mark A. Perry filed concurrently herewith, Rimini respectfully requests that the Court rule on this Emergency Motion as soon as possible.

This Emergency Motion is based upon this Notice, the following Memorandum of Points and Authorities, the accompanying Declaration of Mark A. Perry, the Court's entire file in this matter, including but not limited to the trial record, the record from the previous appeal, the submissions made to this Court on remand, and any further oral or documentary evidence that may be submitted before the ruling on this Motion.

Dated:  August 16, 2018

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Mark A. Perry*
          Mark A. Perry

*Attorneys for Defendant Rimini Street, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND ......................................................................................................2

III.    LEGAL STANDARD ..............................................................................................6

IV.     ARGUMENT ...........................................................................................................6

        A.      All Four Traditional Factors Weigh in Favor of Ordering a Stay
                Pending Appeal ...........................................................................................8

                1.      Rimini Is Substantially Likely to Prevail on Appeal ...........................8

                2.      Rimini Will Be Harmed Absent a Stay ................................................18

                3.      Oracle Will Not Be Harmed by a Stay .................................................21

                4.      The Public Interest Favors a Stay ........................................................22

        B.      In the Alternative, the Court Should Temporarily Stay the Injunction.............24

V.      CONCLUSION ........................................................................................................24

EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999).................................................................19

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011)................................................................6

*Apple Inc. v. Samsung Elecs. Co.*,
    695 F.3d 1370 (Fed. Cir. 2012)........................................................10, 11

*Aten Int'l Co. v. Emine Tech. Co.*,
    2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) ..................................14

*Aviall, Inc. v. Ryder Sys., Inc.*,
    110 F.3d 892 (2d Cir. 1997)..................................................................8

*Benisek v. Lamone*,
    138 S. Ct. 1942 (2018) .........................................................................21

*Boardman v. Pac. Seafood Grp.*,
    822 F.3d 1011 (9th Cir. 2016)..............................................................22

*Campbell v. Nat'l Passenger R.R. Corp.*,
    2009 WL 4546673 (N.D. Cal. Nov. 30, 2009).....................................23

*Chamber of Commerce of U.S. v. Edmondson*,
    594 F.3d 742 (10th Cir. 2010)..............................................................19

*City of Colton v. Am. Promotional Events, Inc.- West*,
    614 F.3d 998 (9th Cir. 2010)...........................................................8, 15

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013)..............................................................15

*Conservation Cong. v. U.S. Forest Serv.*,
    2012 WL 3150307 (E.D. Cal. Aug. 1, 2012) ......................................23

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*,
    2003 WL 25778704 (C.D. Cal. Jan. 29, 2003) ...................................13

*Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    2013 WL 5718886 (E.D. Cal. Oct. 15, 2013) .....................................22

*Dimick v. Schiedt*,
    293 U.S. 474 (1935).............................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ..................................................................................13, 14, 17

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) .................................................................................................16

*Elliot v. Williams*,
    2011 WL 5080169 (D. Nev. Oct. 25, 2011) ............................................................23

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998) ..........................................................................................12, 14

*Floyd v. Laws*,
    929 F.2d 1390 (9th Cir. 1991) ................................................................................12

*Fox Broad. Co. v. Dish Network L.L.C.*,
    747 F.3d 1060 (9th Cir. 2014) ................................................................................14

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) .................................................................16

*Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*,
    739 F.2d 466 (9th Cir. 1984) ............................................................................17, 19

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ..................................................................................................5

*Hunt v. Check Recovery Sys., Inc.*,
    2008 WL 2468473 (N.D. Cal. June 17, 2008) .......................................................22

*Iowa Utils. Bd. v. F.C.C.*,
    109 F.3d 418 (8th Cir. 1996) ..................................................................................19

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ..............................................................6, 7, 17, 20, 22

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) (per curiam) .......................................................6, 20

*Mattel, Inc. v. MGA Entm't, Inc.*,
    705 F.3d 1108 (9th Cir. 2013) ................................................................................19

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ....................................................................................9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................................................12

Gibson, Dunn &
Crutcher LLP

EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...........................................................12

*Minco, Inc. v. Combustion Eng'g, Inc.*,
   95 F.3d 1109 (Fed. Cir. 1996).........................................................................14

*Nat'l Labor Relations Bd. v. Express Publ'g Co.*,
   312 U.S. 426 (1941).........................................................................................19

*New Era Publ'ns Int'l v. Henry Holt & Co.*,
   873 F.2d 576 (2d Cir. 1989).............................................................................21

*Nken v. Holder*,
   556 U.S. 418 (2009)...........................................................................................6

*Oracle USA, Inc. v. Rimini St., Inc.*,
   6 F. Supp. 3d 1086 (D. Nev. 2014) ....................................................................2

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir. 2018)................................1, 2, 3, 4, 5, 6, 9, 10, 14, 15, 16, 18, 21, 22

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011).......................................................................11, 12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   134 S. Ct. 1962 (2014) .....................................................................................21

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F.2d 1132 (9th Cir. 1986)..........................................................................20

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012)........................................................................10

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004)..........................................................................15

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
   2010 WL 2522428 (E.D. Tex. June 18, 2010) ...................................................6

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
   421 F.3d 1307 (Fed. Cir. 2005)........................................................................10

*Tennant v. Peoria & P.U. Ry. Co.*,
   321 U.S. 29 (1944)...........................................................................................12

*Texas v. E.P.A.*,
   829 F.3d 405 (5th Cir. 2016)............................................................................19

Gibson, Dunn & Crutcher LLP

EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. El-O-Pharmacy,*
   192 F.2d 62 (9th Cir. 1951) .................................................................5

*United States v. Mahoney,*
   247 F.3d 279 (D.C. Cir. 2001) .........................................................21

*United States v. W.T. Grant Co.,*
   345 U.S. 629 (1953) ..................................................................13, 16

*Volkwagenwerk Aktiengesellschaft v. Church,*
   411 F.2d 350 (9th Cir. 1969) ...........................................................12

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.,*
   106 F.3d 894 (9th Cir. 1997) ...........................................................13

*World Wide Rush, LLC v. City of Los Angeles,*
   606 F.3d 676 (9th Cir. 2010) ...........................................................21

**Statutes**

17 U.S.C. § 106 .................................................................................15

**Other Authorities**

Commerce, *White Paper on Remixes, First Sale, and Statutory Damages, U.S.*
   *Patent & Trademark Office* (Jan. 2016) ..........................................13

4 *Nimmer on Copyright,* § 14.06[C][1][a] ........................................15

Oracle, *Federal Court Rules that Oracle is Entitled to a Permanent Injunction*
   *Against Rimini Street and Awards Attorneys' Fees in Copyright Suit,* PR
   Newswire (Aug. 14, 2018, 6:24 PM) ..............................................18

**Rules**

Fed. R. Civ. P. 62(c) ...........................................................................5

Fed. R. Civ. P. 65(d) .........................................................................14

**Treatises**

Restatement (Second) of Judgments § 27 cmt. o ..........................8, 15

Gibson, Dunn &
Crutcher LLP

EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

## I.    INTRODUCTION

"[I]n *lawful competition* with Oracle" (*Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 952 (9th Cir. 2018) (emphasis added)), Rimini helps customers download and update their licensed Oracle software.  At trial, the jury found that Rimini "innocently" downloaded and updated Oracle software in a manner that was technically outside the scope of its customers' licenses with Oracle, and for that, the jury awarded Oracle a $35.6 million fair market value license.  After trial, the Court awarded Oracle its attorneys' fees and imposed an injunction against Rimini and its CEO, Seth Ravin, in part, because they had also been held liable for violating two state computer anti-hacking statutes.  But the Ninth Circuit reversed all liability against Rimini and Mr. Ravin under the anti-hacking statutes, leaving only innocent copyright infringement liability against Rimini.  Under these facts—where Rimini has fully compensated Oracle for all acts of innocent infringement and where the judgment contains no intentional conduct whatsoever—no injunction should issue.

On August 15, 2018, however, this Court departed from historical equitable practice and entered a permanent injunction that is for the most part identical to the injunction that this Court previously entered and temporarily stayed (Dkt. 1072), and that the Ninth Circuit stayed (Dkt. 1134-7) and then vacated and remanded for "reconsideration" in light of the appellate decision.  *See Oracle*, 879 F.3d at 953.  Rimini respectfully requests that this Court stay enforcement of the current injunction pending appellate review.  The grounds for a stay are even stronger now than they were nearly two years ago when the Ninth Circuit stayed the previous injunction.  Simply put, the Court should preserve the status quo during Rimini's appeal.

All four relevant factors weigh in favor of a stay.  Rimini will present a number of substantial appellate challenges to the Court's injunction, and would suffer irreparable harm if the injunction were enforceable during the appeal; and the balance of hardships and public interest factors weigh decidedly in favor of Rimini—which, the Ninth Circuit made clear, engages "in *lawful competition*" with Oracle.  *Oracle*, 879 F.3d at 952 (emphasis added).  Undisputed evidence establishes that Rimini changed its support processes by July 2014 in

1   response to this Court's summary judgment rulings; Oracle has been fully compensated for all

2   *past* acts of "innocent" infringement encompassed by the judgment in the first case; and

3   Rimini's *current* processes are the subject of a second case being actively litigated.   The

4   injunction, however, could be read as reaching acts that have not yet been adjudicated.

5         Rimini understands that the Court has determined that an injunction is warranted, and it

6   is not asking this Court to revisit that determination.   Rimini will ask the Ninth Circuit to review

7   and reverse or vacate the injunction for a number of reasons, which are summarized below.

8   And the Court need not agree with those arguments to accept that they are substantial and will

9   receive serious consideration in the court of appeals, particularly given the stay issued by the

10   Ninth Circuit on the previous appeal and the skepticism with which the merits panel treated the

11   previous, nearly identical injunction.   Accordingly, this Court should stay enforcement of the

12   injunction pending Rimini's appeal or, at the very least, grant a temporary stay while Rimini

13   seeks a stay from the Ninth Circuit.

## II.   BACKGROUND

15         Oracle filed this lawsuit (*Rimini I*) in 2010, alleging twelve causes of action, including

16   that Rimini infringed Oracle's copyrights, violated two state anti-hacking statutes, and engaged

17   in a host of intentional misconduct directed at interfering with Oracle's business relations.   Dkt.

18   146.   As to copyright infringement, Oracle alleged that Rimini willfully infringed Oracle's

19   exclusive right to reproduce its software by providing support services.   *Oracle*, 879 F.3d at

20   956, 959.   Oracle did not move for a preliminary injunction at the time it filed suit.

21         Four years later, this Court determined on summary judgment that certain aspects of

22   Rimini's prior support processes—copying Oracle's PeopleSoft and Database software onto its

23   own servers (which Oracle calls "local hosting") and using Oracle software to develop and test

24   software updates for other Rimini clients (which Oracle calls "cross-use")—were not within

25   the scope of the exemplar licenses construed by the Court at that stage of the litigation.   *Oracle*

26   *USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1086, 1097 & n.10, 1098 (D. Nev. 2014).   But this

27   Court denied Oracle's summary judgment motion as to JD Edwards and Siebel, concluding that

28   there were disputed issues of material fact for the jury to resolve.   *Id.* at 1104.   Oracle did not

seek an injunction after this Court's summary judgment orders.

After receiving this Court's rulings, Rimini invested millions of dollars to revise its processes to conform to this Court's construction of the license agreements.  Rimini has submitted to the Court sworn declarations establishing that by no later than July 2014—more than a year before trial—Rimini had discontinued the specific practices (*i.e.*, "local hosting" and "cross-use") addressed at the summary judgment stage.  *See* Dkt. 1134-3.  Oracle has never submitted any contrary evidence.

Rimini filed a second lawsuit (*Rimini II*) in October 2014, seeking a declaration that its revised processes do not infringe.  These revised processes were not at issue in *Rimini I*, as this Court—at Oracle's insistence—declined to consolidate *Rimini I* and *Rimini II* (Dkt. 669), excluded all evidence regarding Rimini's revised support processes from the *Rimini I* proceeding (Dkt. 515), and ruled that all "claims, issues, and evidence related to the new support model are being addressed solely in [*Rimini II*]" (Dkt. 723).

*Rimini I* went to trial in September 2015.  Oracle abandoned many of its claims before or during trial and lost on all its theories except for copyright infringement against Rimini and computer hacking violations against Rimini and Mr. Ravin.  The jury found that Rimini's infringement was "innocent," that Oracle was entitled to a fair market value license of $35.6 million for Rimini's innocent infringement, that Rimini's infringement caused Oracle to lose *zero* dollars in profit, and that the infringement earned Rimini *zero* dollars in profit.  *See* Dkt. 1134-4 at 4–6.  The jury rejected Oracle's claim that Mr. Ravin was vicariously or contributorily liable for Rimini's innocent infringement.  *Id.* at 2–3.  While the jury awarded $14.4 million under the state anti-hacking statutes, it rejected outright Oracle's request for punitive damages (*id.* at 13–14) and Oracle's claim that Rimini intentionally interfered with Oracle's current and prospective customers (*id.* at 8–9).

After trial, and more than five years after filing this lawsuit, Oracle for the first time sought what the Ninth Circuit called "an extensive permanent injunction."  *Oracle*, 879 F.3d at 952–53; *see* Dkt. 900.  Rimini objected on numerous grounds, including that injunctive relief was inequitable in light of the jury's finding of innocent infringement, that injunctive relief was

1    not warranted under the *eBay* factors (because, among other defects, Oracle had failed to

2    establish the causal nexus requirement), and that Oracle's proposed injunction was overbroad

3    and untethered to the liability judgment.  But on October 11, 2016, this Court entered Oracle's

4    proposed injunction verbatim.  *See* Dkt. 1134-6.

5         Rimini immediately moved this Court to stay enforcement of the injunction pending the

6    Ninth Circuit's resolution of Rimini's appeal.  Dkt. 1069.  This Court temporarily stayed the

7    injunction pending its resolution of Rimini's motion (Dkt. 1072), but ultimately denied

8    Rimini's request.  Dkt. 1094 at 3–4.

9         Rimini then sought a stay from the Ninth Circuit, based solely on the copyright

10   injunction—*without challenging infringement liability* and without any reference to the hacking

11   portion of the injunction.  *See* Emergency Motion Under Cir. R. 27-3 to Stay the Order of

12   Permanent Injunction Seeking Relief by December 1, 2016, and to Order an Immediate

13   Administrative Stay Pending Consideration of This Motion, *Oracle USA, Inc. v. Rimini Street,*

14   *Inc.* (9th Cir. 2018) (No. 16-16832).  Rimini argued that the injunction should be stayed because

15   it would establish in the merits appeal, among other things, that (1) an adjudicated innocent

16   infringer cannot be enjoined, (2) Rimini had changed the practices adjudicated as infringing,

17   (3) Oracle had an adequate remedy at law, (4) Oracle had failed to establish a causal nexus, and

18   (5) the injunction was vague and overbroad.  *See id.* at 11–19.  The Ninth Circuit motions panel

19   promptly granted a stay pending appeal (Dkt. 1134-7), necessarily concluding that Rimini was

20   likely to succeed on the merits of one or more of these arguments and that it would suffer

21   irreparable injury in the absence of a stay.

22        After full briefing and oral argument, the Ninth Circuit affirmed the judgment of

23   copyright infringement, reversed the judgment under the state hacking statutes, and vacated the

24   injunction.  *Oracle*, 879 F.3d at 953–65.  As to PeopleSoft, the court of appeals upheld

25   infringement liability only "on the narrow ground of 'local hosting'" (*id.* at 960 n.6), because

26   the record supported this Court's conclusion that the Rimini "servers where the copying took

27   place were 'outside the control'" of the customers (*id.* at 959–60).  As to JD Edwards and Siebel,

28   the Ninth Circuit rejected Oracle's argument that the JD Edwards and Siebel licenses permit

copies solely for archival purposes (*id.* at 958), upholding liability on a limited theory of cross-use—that Rimini "created development environments for *future customers* using the license of an existing customer on the basis that *future customers* presumably would have licenses that would permit them to hire Rimini to create development environments." *Id.* at 957 (emphases added); *see also id.* at 958 (limiting copyright misuse analysis to whether it would be misuse "to forbid Rimini from creating development environments for licensees *before* they have become customers"). The Ninth Circuit affirmed liability as to Database *only* on waiver grounds. *Id.* at 953 n.2, 960.

The Ninth Circuit recognized that the previous injunction had two parts (a copyright component and a hacking component), and thus treated it as "two separate injunctions." *Oracle*, 879 F.3d at 964 n.8. The court of appeals reversed the hacking injunction outright, and vacated the copyright injunction. As to the latter, the Ninth Circuit recognized that this Court had not independently considered the four *eBay* factors regarding an injunction for copyright infringement, but had instead relied on facts, alleged harms, and issues related to the defunct computer hacking verdicts. *Id.* at 964. "For example, the [district] court concluded that Rimini's 'violations of state computer access statutes' contributed to an 'irreparable injury' to Oracle's business reputation and goodwill," which was the only irreparable harm Oracle claimed justified the injunction. *Id.* Although the opinion did not "express [a] view" on whether an injunction should issue on remand (*id.*), Judge Friedland stated during oral argument: "I don't really understand why there also needs to be an injunction" in light of "a whole lawsuit [*Rimini II*] to try to figure out if they're complying with the liability determinations." Dkt. 1134-2 at 41:18–21.

On remand, Oracle asked this Court to re-enter the copyright injunction. *See* Dkt. 1117-1. Rimini objected on the ground that Oracle's request was inconsistent with the Ninth Circuit's disposition of the appeal, which had affirmed the copyright judgment only on exceedingly narrow grounds, as well as for other reasons previously advanced, including the jury's innocent infringement finding and the absence of any causal nexus between the acts adjudged as infringing and the asserted irreparable harm. *See* Dkt. 1130. The Court held a hearing on

Oracle's motion. Dkts. 1161, 1159. On August 14, 2018, this Court granted Oracle's renewed motion for a permanent injunction, in an order that is substantially similar to its previous order. Dkt. 1164. On August 15, 2018, the Court entered an injunction that for the most part mirrors the copyright injunction previously entered. Dkt. 1166.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) authorizes district courts to stay enforcement of permanent injunctions pending appeal. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also United States v. El-O-Pharmacy*, 192 F.2d 62, 79–80 (9th Cir. 1951) ("subdivision (c) of Rule 62 is … a recognition of the long established right of the trial court, after an appeal, to make orders appropriate to preserve the status quo while the case is pending in the appellate court").

A stay of injunction is governed by the traditional stay factors, which ask whether the applicant (1) "has made a strong showing that he is likely to succeed on the merits"; (2) "will be irreparably injured absent a stay"; (3) shows that a stay will not "substantially injure the other parties interested in the proceeding"; and (4) shows that a stay is in "the public interest." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009). These factors are weighed on a "sliding scale," such that "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) ("If anything, a flexible approach is even *more* appropriate in the stay context [than in the preliminary injunction context].").

### IV.    ARGUMENT

The Ninth Circuit already stayed (and then vacated) almost the same injunction this Court has now re-entered. The propriety of a stay is even more apparent now than it was when the Ninth Circuit stayed this Court's previous injunction. On appeal, the Ninth Circuit recognized that Rimini engages "in lawful competition with Oracle's direct maintenance services" (*Oracle*, 879 F.3d at 952), that Rimini is entitled to copy and use Oracle code in providing those support services (*id.* at 956), that Rimini is not liable for any intentional misconduct *whatsoever* (*see id.* at 960–62), and that this Court's prior finding of irreparable

harm was impermissibly premised on the now-reversed computer hacking claims (*see id.* at 964).   The Ninth Circuit's opinion provides considerable additional support for Rimini's arguments that no injunction should issue at all on this record, and that the injunction entered by the Court is unlawfully overbroad and vague.

Rimini understands that this Court does not agree with its position regarding the propriety and scope of injunctive relief.   But the Court need not accept the correctness of Rimini's view on the merits now in order to grant a stay; it need only find that Rimini has a substantial case for relief on appeal and that Rimini will suffer irreparable harm in the absence of a stay.   *See Lair*, 697 F.3d at 1204 (likelihood of success on the merits and irreparable injury factors "are the most critical") (quoting *Nken*, 556 U.S. at 434); *Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 2522428, at *5 (E.D. Tex. June 18, 2010) (while a permanent injunction may have been warranted, that "does not preclude a granting of a stay of that injunction pending appeal as both issues require different analyses").   Rimini successfully made that point to the Ninth Circuit in the first appeal, and the court of appeals stayed the injunction pending appeal. Importantly, Rimini sought and obtained a stay of the first injunction based solely on arguments directed to the injunction itself, without challenging infringement liability and without even mentioning the hacking injunction.   Thus, the fact that the Ninth Circuit has now (narrowly) affirmed the infringement judgment does not make a stay less warranted; if anything, given the parties' sharp disagreement regarding the effect of the Ninth Circuit's opinion on the issuance of injunctive relief, a stay is even more appropriate this time around.

While Rimini is prepared to ask the Ninth Circuit again for a stay, it respectfully submits that it would be more just and efficient for this Court to simply stay enforcement of its own order while the appellate process plays out.   Indeed, this Court has a stake in controlling its own docket to prevent serial contempt proceedings that Oracle will certainly file on issues that are currently pending resolution in *Rimini II*.   Accordingly, Rimini respectfully requests that the Court stay enforcement of the permanent injunction until the Ninth Circuit issues its mandate; or, in the alternative, temporarily stay enforcement of the injunction until the Ninth Circuit rules on Rimini's stay application in that Court.

## A.     All Four Traditional Factors Weigh in Favor of Ordering a Stay Pending Appeal

The four stay factors—likelihood of success on appeal, irreparable injury, balance of hardships, and public interest—all weigh in favor of staying enforcement of the injunction until the Ninth Circuit considers Rimini's appeal and issues its mandate.

### 1.     Rimini Is Substantially Likely to Prevail on Appeal

The first factor weighs in favor of a stay when "there is a substantial case for relief on the merits." *Lair*, 697 F.3d at 1204 (quotations omitted).  While Rimini must show that "the likelihood of success on the merits is 'better than negligible,'" it does *not* have to show that "it is more likely than not that [it] will win on the merits." *Id.* (quotations omitted).  Rather, a "substantial case for relief" exists, and this factor is satisfied, when there are "serious legal questions raised" or where there is a "fair prospect" of success. *Id.* (quotations omitted).

Here, there is a substantial (and legally ample) case for relief on the merits to support the issuance of a stay because, at a minimum, Rimini's forthcoming appeal will present a number of serious questions that go to the heart of whether an injunction should be entered at all in this case, as well as the scope of any such injunction.  Rimini summarizes the principal arguments here:

*First*, in its order granting Oracle's renewed motion for a permanent injunction, the Court made errors of law in construing the scope of the Ninth Circuit's decision and mandate. *See, e.g.*, Dkt. 1164 at 3, 4–5.  The parties disputed whether the court of appeals' affirmance provides a basis for enjoining all acts of infringement within the judgment, or only those that the Ninth Circuit specifically affirmed on appeal.  The Court agreed with Oracle that it is the former.  Dkt. 1164 at 3 ("[T]he Ninth Circuit affirmed in full all of the court's and jury's findings related to Oracle's claim of copyright infringement against Rimini Street for all ninety-three copyright registrations at issue in this action.").  That was erroneous.

"It is a well-established principle of federal law that if an appellate court considers only one of a lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, *only the basis that is actually considered can have any preclusive effect in subsequent litigation*." *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998,

Gibson, Dunn &
Crutcher LLP

1004 n.4 (9th Cir. 2010) (emphasis added) (quotations omitted); *see also Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 897–98 (2d Cir. 1997) (where the court of appeals declines to address an issue raised on appeal, "it is equivalent to the party not having had an opportunity to appeal" the issue, and permits the issue to be raised in subsequent litigation); Restatement (Second) of Judgments § 27 cmt. o (where a trial court judgment rests on two independent grounds and the court of appeals affirms the judgment on only one of those grounds and declines to address the other, then the judgment is conclusive as to only the first ground).  Oracle's counsel agreed during the July 23, 2018, hearing on the renewed motions, stating that only "the issues the Ninth Circuit reached are what are binding in the future litigation between Oracle and Rimini or in the *Rimini II* case."  Dkt. 1161 at 67:1–3; *see also* Dkt. 1134-2 at 25:6–20 (Oracle's counsel conceding during oral argument before the Ninth Circuit that Rimini may, consistent with the licenses, "assist a licensed user in creating a testing environment … and use it to make a fix," and that "disputes about … those issues can be resolved" "in Rimini 2").  Where the legality of certain conduct remains live for resolution in a subsequent case involving the same parties, an injunction in the first case may not enjoin that conduct.

As Rimini has explained, and contrary to this Court's conclusion that "the Ninth Circuit affirmed in full all of the court's and jury's findings related to Oracle's claim of copyright infringement" (Dkt. 1164 at 3), the Ninth Circuit upheld infringement liability only as follows:

| PeopleSoft | JD Edwards | Siebel | Database |
|---|---|---|---|
| Local Hosting | Future-Customer Cross-Use | Future-Customer Cross-Use | Waiver |

*See* Dkt. 1159 at 10.  The injunction prohibits conduct that the Ninth Circuit did not deem infringing, and for which there is no preclusive effect.  Indeed, the parties are actively litigating these issues in *Rimini II*.  There is no basis for imposing an injunction in such a situation.

For instance, the injunction imposes a facilities limitation on the JD Edwards and Siebel product lines (*see* Dkt. 1166, ¶¶ 9–10), even though the Ninth Circuit recognized that the licenses for these products do not contain "restrictive[]" facilities limitations like the PeopleSoft licenses at issue (*Oracle*, 879 F.3d at 959).  The injunction also broadly prohibits reproduction,

derivative work preparation, and distribution of Oracle Database (Dkt. 1166, ¶¶ 6, 7, 9–10), even though infringement liability for Database was based on past copying pursuant to *developer* licenses (Dkt. 476 at 8–12), and the Ninth Circuit affirmed liability without addressing whether the *client* licenses permit the challenged conduct (*Oracle*, 879 F.3d at 953 n.2, 960).

Most significantly, the injunction enjoins *current*-customer cross-use of PeopleSoft, JD Edwards, and Siebel products. *See* Dkt. 1166, ¶¶ 6, 10, 14. But the Ninth Circuit explicitly declined to address cross-use of PeopleSoft (*Oracle*, 879 F.3d at 960 n.6), and addressed only *future*-customer cross-use of JD Edwards and Siebel (*id.* at 957). In so doing, the Ninth Circuit avoided deciding whether cross-use cannot be enjoined at all because it does not constitute copyrighting infringement. As Rimini has consistently maintained, cross-use is at most a breach of a contractual covenant (and not a license condition) that gives rise to a contract claim, as it concerns only the manner in which licensed copies are used. *E.g.*, *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939–40 (9th Cir. 2010); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315–17 (Fed. Cir. 2005).

Importantly, it is *Oracle* (not Rimini) that has delayed resolution of these questions. Rimini sought to combine the two cases and resolve these questions at the first trial, but Oracle (successfully) resisted that. Rimini asked the Ninth Circuit to resolve these questions, but Oracle not only argued waiver on appeal but also expressly told the Ninth Circuit that Rimini could make these arguments about the scope of infringement in the second case.

*Second*, Oracle failed to prove that it would suffer irreparable harm in the absence of an injunction, including, critically, the existence of a causal nexus between its asserted irreparable harm and the specific acts adjudicated as infringing. This Court provided three bases for concluding otherwise, none of which is sufficient to sustain an injunction on this record. This Court's initial reliance on *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012), and the "direct competition" factor (Dkt. 164 at 6) is unavailing. In *Presidio*, the Federal Circuit held that irreparable harm based on a violation of the right to exclude may exist where a company sells an infringing device in direct competition with the

patent owner.  *See* 702 F.3d at 1362.  But that says nothing about the existence (or non-existence) of irreparable harm here, where Oracle has no exclusive rights in the after-license support services market and the Ninth Circuit recognized that Rimini engages in "*lawful competition*" with Oracle in that market.  *Oracle*, 879 F.3d at 952 (emphasis added).

The Court next concluded that Rimini's "conscious disregard for Oracle's software copyrights" caused irreparable injuries to Oracle's "reputation and goodwill."  Dkt. 1164 at 6–7.  Not only does the Court's "conscious disregard" finding violate the Seventh Amendment (as discussed further below), but both Oracle and this Court failed to cite *any* evidence that "*directly ties consumer demand* for [Rimini's support services] to [Rimini's] allegedly infringing feature[s]," *i.e.*, local hosting for PeopleSoft and future-client cross-use for JD Edwards and Siebel.  *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012) (emphasis added).  Although Oracle previously argued, and this Court similarly concluded, that "much of … the harms [Rimini] caused Oracle[] depended on the unauthorized downloading that formed the basis for the computer abuse verdicts" (Answering Brief for Appellees at 44, *Oracle USA, Inc. v. Rimini Street, Inc.* (9th Cir. 2018) (No. 16-16832); *see* Dkt. 1049 at 5 (Rimini's "copyright infringement *and violations of the state computer access statutes*[] irreparably injured Oracle's business reputation and goodwill") (emphasis added)), Oracle pulled an about-face and suggested to this Court on remand that copyright infringement was the sole cause of its alleged irreparable harm (Dkt. 1117 at 14–16).

Moreover, the evidence Oracle presented at trial is wholly insufficient to establish that the innocently infringing features of Rimini's processes, and not something else (*e.g.*, legitimate competition, Rimini's superior service, Oracle's poor treatment of customers and 95% profit margin), *caused* Oracle's purported loss of goodwill.  *See Apple*, 695 F.3d at 1375 (requiring that "infringing feature[s] *drive[] consumer demand* for the accused product") (emphasis added); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) (affirming denial of injunction where search engines other than Google contributed to making plaintiff's copyrighted images freely available, and plaintiff failed to submit a single statement from a

1    single former subscriber who "ceased paying for [plaintiff's] services *because of* the

2    [copyrighted] content [being] freely available via Google") (emphasis added).

3          For example, Oracle relied on the testimony of Oracle's CEO, Safra Catz (Dkt. 1117 at

4    16), that Rimini's statements to Oracle's customers that Oracle is overpriced caused those

5    "customers [to] wonder all of a sudden whether [Oracle] [was] overcharging them," thus

6    "break[ing] the bonds and the trust that [Oracle] ha[d] with [its] customers" (Dkt. 1134-9 at

7    935:11–17).  This Court likewise concluded that, "by purporting to offer vendor-level support

8    at half the price of Oracle support, Rimini Street created the impression that Oracle was

9    overcharging for support and eroded the bonds and trust that Oracle has with its customers.

10   Dkt. 1164 at 7.  But this evidence establishes only a connection between Rimini's lower prices

11   and the (justified) belief among Oracle customers that Oracle is overcharging them.  Ms. Catz

12   did *not* testify that Oracle's purported loss in goodwill was "directly" tied to *specific infringing*

13   *features* of Rimini's past practices (as determined by the Ninth Circuit).  *See Apple*, 695 F.3d

14   at 1375.  (Nor did any other of Oracle's irreparable-harm evidence, as Rimini has previously

15   documented.  *See* Dkts. 1130 at 11–14; 1134-4; 1135-1; 1135-2; 1136-1; 1136-3; 1136-4; 1136-

16   5; 1136-9.)  Oracle conceded as much by arguing, erroneously, that the Ninth Circuit does not

17   require such a showing even though the Federal Circuit clearly does.  *See* Dkt. 1139 at 4–5.

18   Oracle's failure to demonstrate a causal nexus between its asserted harm and Rimini's

19   infringing acts precludes imposition of any injunction.  *See Perfect 10*, 653 F.3d at 982 (failure

20   to "show[] a sufficient causal connection between irreparable harm" and infringement dooms a

21   claim for "injunctive relief").

22         Last, this Court invoked *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 518 F. Supp.

23   2d 1197, 1222 (C.D. Cal. 2007), even though Rimini—an adjudicated innocent infringer—

24   bears no resemblance to the "knowing[] and intentional[]" infringers in that case (*Metro-*

25   *Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 921 (2005)).  And in doing so, the

26   Court dismisses Rimini's undisputed evidence that it no longer engages in the adjudicated

27   practices.  Dkt. 1164 at 7.  That is reversible error.  *See Volkswagenwerk Aktiengesellschaft v.*

28   *Church*, 411 F.2d 350, 352 (9th Cir. 1969) (injunction denied where "[t]here is little or no

evidence in the record casting doubt on Church's good faith abandonment of this infringement, or indicating that it will be resumed").

*Third*, this Court's injunction order violates the Seventh Amendment.  "It is the jury, not the court, which is the fact-finding body." *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944); *see Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).  And "it would be a violation of the seventh amendment right to jury trial for the court to disregard a jury's finding of fact" in awarding equitable relief.  *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991).  Although the jury explicitly found that Rimini *innocently* infringed Oracle's copyrights—meaning that Rimini "was not aware" and had no "reason to believe that its acts constituted" infringement (Dkt. 1134-5 at 43; Dkt. 1134-4 at 6)—this Court premised injunctive relief on a factual finding that Rimini acted with "*conscious disregard* for Oracle's software copyrights." Dkt. 1164 at 6 (emphasis added); *see also id.* at 13–14 (Rimini's litigation position was "based on a clear misreading of Oracle's software licensing agreements and a *conscious disregard* for the manner that Rimini Street used and housed the copyrighted software programs on its own servers") (emphasis added).  This finding violates the Seventh Amendment's Reexamination Clause, which bars judges from second-guessing a jury's factual findings.  *See Dimick v. Schiedt*, 293 U.S. 474, 487–88 (1935).

This error was prejudicial, because with the reversal of the hacking judgment there remains no intentional conduct in this case.  The Court's finding that Rimini acted in "conscious disregard" of Oracle's copyright rights was a necessary predicate to the issuance of an injunction, but it is flatly contrary to the jury's finding that all infringing acts were "innocent." Correcting this constitutional error requires reversal, not just vacatur, of the injunction.

*Fourth*, as a matter of law and equity, a court may not enjoin an adjudicated innocent infringer.  Now that the Ninth Circuit has reversed all liability under the anti-hacking statutes, the judgment contains no willful or intentional conduct *whatsoever*.  No court has permanently enjoined an adjudicated innocent infringer under the Copyright Act.  And Oracle has *still* never cited a single case demonstrating that enjoining an innocent infringer is consistent with the principles of equity that inhere in any analysis under *eBay*.  Instead, many courts have indicated

that an injunction in such circumstances is inappropriate because an innocent infringer by definition "was not aware" and "had no reason to believe that its acts constituted" infringement. Dkt. 1134-5; *see*, *e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 903 (9th Cir. 1997) (affirming denial of injunction where "defendants were innocent infringers"); *Contessa Food Prods., Inc. v. Lockpur Fish Processing Co.*, 2003 WL 25778704, at *7 (C.D. Cal. Jan. 29, 2003) ("the public needs no protection[,]" and "courts usually deny requests for permanent injunctions" where a defendant "has infringed innocently" and changed its behavior). This should come as no surprise. An injunction is designed to "prevent future violations" of the law, as those violations have been adjudicated. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). But when the infringer's acts are innocent, it "will not need to be deterred from future infringements." U.S. Dep't of Commerce, *White Paper on Remixes, First Sale, and Statutory Damages, U.S. Patent & Trademark Office*, 91 (Jan. 2016).

*Fifth*, an injunction is improper where, as here, the rights-holder has received an adequate remedy at law. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The jury awarded Oracle a $35.6 million fair market value license as full compensation for the conduct adjudicated to be innocent infringement in *Rimini I*, leaving for adjudication in *Rimini II* any later legally cognizable harm. *See* Dkt. 1134-5 at 41 ("The fair market value is an objective measure of Oracle['s] … damages that is meant to approximate the fair market value of a license *for all of the copyrights Rimini Street infringed*.") (emphasis added). The Ninth Circuit also affirmed a $22 million prejudgment interest award as "an element of [the] compensation" intended to make Oracle whole. *Oracle*, 879 F.3d at 963–64. These awards, along with the jury's rejection of Oracle's claims for lost profits and tortious interference, reflect the jury's "best measure" of Oracle's "*actual* damages for *all* acts of copyright infringement." Dkt. 1134-4 at 3 (emphases added).

Although this Court concluded that monetary damages are inadequate because Oracle's harms are "difficult to quantify" and "uniquely complex," "[j]uries regularly decide complex factual issues" (*Aten Int'l Co. v. Emine Tech. Co.*, 2010 WL 1462110, at *5 (C.D. Cal. Apr. 12,

2010); *see Feltner*, 523 U.S. at 353), and the jury here found that Oracle lost *zero dollars in profit* (Dkt. 1134-4 at 4).  And this Court's reliance on Oracle's right to exclude (Dkt. 1164 at 8) and the *concurrence* in *eBay* is plainly at odds with the *majority's* holding that a permanent injunction does not automatically follow a determination that the right to exclude has been infringed (547 U.S. at 392–93).  Oracle has received an adequate remedy at law, and an injunction is therefore inappropriate.  *See Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1072–73 (9th Cir. 2014) (affirming denial of injunction where license "constitute[d] a starting point or aid in calculating damages"); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996) ("goodwill acquired by infringement" was "already acknowledged" in "hypothetical license").

*Sixth*, the terms of the injunction—which are effectively the same as the terms of the copyright injunction the Ninth Circuit stayed pending appeal (Dkt. 1134-7), and then vacated and remanded for "*reconsideration*" under "the *eBay* factors with respect to the copyright claims alone" (*Oracle*, 879 F.3d at 964 (emphasis added))—are impermissibly vague.  Federal Rule of Civil Procedure 65(d) requires every injunction to provide fair and adequate notice of what conduct is enjoined.  *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013) (Rule 65(d) is intended "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood").  For example, the injunction's prohibition on "use" of software for the "benefit" of or to "support" another licensee fails to provide Rimini with fair notice of what conduct is enjoined, in violation of Rule 65(d) and the Due Process Clause.  *E.g.*, Dkt. 1130 at 22–23.  Similarly, the injunction purports to prohibit the creation of "derivative works" "from" or "within" various software platforms (Dkt. 1166, ¶¶ 1–3, 5–7, 9–11, 13–15), providing no definition whatsoever of what constitutes a derivative work, when such a work is "from" a product, and when such a work is "within" a product.  Indeed, the concept of derivative works is the subject of extensive debate and litigation in *Rimini II*; yet there is little question Oracle will attempt to leverage the injunction's vague terms *now* to prejudge that ongoing litigation through enforcing the injunction.  Issues such as these, however, must be resolved

1    *before* an injunction issues, not after-the-fact in the context of contempt proceedings.  Due

2    process entitles Rimini to fair notice of the injunction's terms.

3         *Seventh*, the injunction is overbroad.  Injunctions must be limited to adjudicated

4    conduct, and "be narrowly tailored … to remedy only the specific harms shown by the plaintiffs,

5    rather than to enjoin all possible breaches of the law."  *Price v. City of Stockton*, 390 F.3d 1105,

6    1117 (9th Cir. 2004) (quotations omitted); 4 *Nimmer on Copyright*, § 14.06[C][1][a] ("[T]he

7    scope of the injunction should be coterminous with the infringement.").  The injunction reaches

8    far more conduct than the Ninth Circuit found to be infringing.  For example, the injunction

9    enjoins cross-use of PeopleSoft software, even though the Ninth Circuit upheld liability on the

10   "narrow ground" of local hosting and expressly declined to address whether Rimini violated

11   the PeopleSoft copyright by engaging in cross-use.  *Oracle*, 879 F.3d at 960 & n.6; *see also*

12   *City of Colton*, 614 F.3d at 1004 n.4; Restatement (Second) of Judgments § 27 cmt. o.  The

13   injunction also limits Rimini's "access" to JD Edwards and Siebel source code (Dkt. 1166, ¶¶ 8,

14   12), even though the Ninth Circuit did not uphold liability on the basis of Rimini "accessing"

15   source code, and "access" is not an exclusive right under the Copyright Act (*see* 17 U.S.C.

16   § 106).  And the injunction enjoins the creation and distribution of derivative works, even

17   though the jury was never asked—and thus never found—whether Rimini infringed Oracle's

18   copyrights by distributing or creating derivative works from the copyrighted software.  *See* Dkt.

19   880 at 25.  Rimini submitted to the Court detailed objections to the injunction proposed by

20   Oracle.  Dkt. 1133.  Yet, with one exception (regarding customer affirmations) the order of

21   injunction entered by the Court simply repeats the objected-to provisions without addressing

22   those objections.

23        *Eighth*, and relatedly, the injunction prohibits *lawful* behavior.  An injunction exists to

24   prevent conduct that has been held to be intentionally unlawful (*W.T. Grant Co.*, 345 U.S. at

25   633), and cannot reach conduct that is *lawful*.  Unless and until an appellate court finally

26   adjudicates actions such as (for example) direct use and cross-use for PeopleSoft as constituting

27   copyright infringement, those actions cannot be enjoined and Rimini is free to contest such

28   restrictions.  Of course, now that these acts have been enjoined, Rimini is entitled to seek

1    appellate resolution immediately—which makes a stay all the more appropriate.

2         *Ninth*, the injunction violates the First Amendment.   It prohibits Rimini from

3    "accessing" Oracle source code, which is plainly unconstitutional.  *See Eldred v. Ashcroft*, 537

4    U.S. 186, 219 (2003); *Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc).  This

5    Court cannot enjoin a private party from reading a copyrighted book, watching a copyrighted

6    movie, or attending a copyrighted play; no more can it enjoin a private party from accessing

7    copyrighted software.  The Copyright Act is limited to *copying*, not use.

8         *Tenth*, the Court has substantially misread and misunderstood the Ninth Circuit's

9    opinion and remand instructions.  This Court stated that "the Ninth Circuit affirmed in full all

10   of the court's and jury's findings related to Oracle's claim of copyright infringement against

11   Rimini…."  Dkt. 1164 at 3.  But the Ninth Circuit *expressly* held, as just one example, that it

12   "address[ed] the question of infringement as to PeopleSoft *on the narrow ground of 'local*

13   *hosting,'* [and] *d[id] not decide* whether 'direct use' or 'cross use' was permitted by the

14   PeopleSoft license."  *Oracle*, 879 F.3d at 960 n.6 (emphases added).  Similarly, at Oracle's

15   behest, this Court "read" the Ninth Circuit's remand instructions narrowly (Dkt. 1164 at 4–5),

16   erroneously believing that the court of appeals sent the case back to simply re-issue the *same*

17   overbroad injunction on the *same* basis as before, just excising the hacking component.  But as

18   this Court acknowledged, yet misconstrued, the Ninth Circuit concluded that, "[b]ased on the

19   record before us, we do not know how the district court would weigh the [relevant] factors with

20   respect to the copyright claims alone."  Dkt. 1164 at 4 (quoting *Oracle*, 879 F.3d at 964).  The

21   Court's misreading of the Ninth Circuit's opinion infected the injunction order, rendering it

22   defective throughout.

23                                    *  *  *

24        These issues, and others, present "serious legal questions" warranting a stay.  While

25   Rimini is confident that the court of appeals will reverse or vacate the injunction, this Court

26   does not have to accept the correctness of Rimini's position in order to stay enforcement

27   pending appeal.  *See Lair*, 697 F.3d at 1204.  Rather, it is sufficient that no court has issued a

28   permanent injunction in circumstances remotely similar to these.  Because equity is based in

the history and traditions of our people, the power of federal courts to issue injunctions is circumscribed by past practice. *eBay*, 547 U.S. at 392–93. The very novelty of the Court's injunction, and the serious legal issues it presents, weigh heavily in favor of a stay.

### 2. Rimini Will Be Harmed Absent a Stay

The second factor also weighs in favor of a stay where, as here, the applicant demonstrates "a probability of irreparable injury if the stay is not granted." *Lair*, 697 F.3d at 1214. In analyzing this factor, the Court must focus on "the individualized nature of irreparable harm and not whether it is categorically irreparable." *Id.* (quotations omitted). Irreparable harm exists where a permanent injunction might cause "untold, irreversible consequences" for the enjoined party. *Id.* at 1215. Although this Court has previously said that Rimini "would [not] be harmed by an injunction" (Dkt. 1164 at 9), Rimini will suffer such harm if a stay is not granted in at least four ways.

*First*, "[a]n alleged constitutional infringement will often alone constitute irreparable harm." *Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). As Rimini has demonstrated, the Court's order violates both the First and the Seventh Amendments. The injunction is also impermissibly vague, in violation of Rule 65(d) and the Due Process Clause. *E.g.*, Dkts. 906, 1055-1, 1130. Yet, neither Oracle nor this Court has ever sought to narrow the terms of the injunction to comply with the law or the Ninth Circuit's narrow rulings. Instead, the Court has now twice substantially entered Oracle's proposed injunction—contrary to the Ninth Circuit's instruction that this Court "reconsider[]" the propriety of an injunction in view of Oracle's limited success on appeal. *Oracle*, 879 F.3d at 964. Subjecting Rimini to an unconstitutionally overbroad and vague injunction, which reaches both un-adjudicated and lawful acts itself constitutes irreparable harm.

*Second*, the injunction will cause irreparable harm to Rimini's current and prospective customer relationships. Rather than conform the terms of the injunction to the Ninth Circuit's narrow holdings on appeal, Oracle drafted—and this Court adopted—an injunction containing a kaleidoscope of vague and overly broad proscriptions that were not finally adjudged unlawful and, in fact, *are lawful*. For example, the injunction restricts Rimini's "access" to JD Edwards

and Siebel source code.  Dkt. 1166, ¶¶ 8, 12.  But the Copyright Act restricts copying—not accessing—copyrighted works.  And limiting access through a copyright injunction is diametric to the fundamental principle of American copyright law that the "public [have] access to the creative works" of others.  *Garcia*, 786 F.3d at 745 (dissolving injunction that "deprived the public the ability to view" a film).  Even though Oracle and the Ninth Circuit have acknowledged that Rimini engages in "*lawful competition* with Oracle's direct maintenance services" (*Oracle*, 879 F.3d at 952 (emphasis added)), the Court has entered an injunction that Oracle will surely interpret as broadly as possible, selectively quote, and use as an anti-competitive weapon to threaten and intimidate Rimini's clients (and Oracle's customers)—all in an attempt to preclude and discourage the provision of third-party support.  *See* Dkt. 1069-1, Exs. A, B (letters sent on Oracle's behalf in which Oracle threatens and intimidates Rimini customers); Dkt. 1040 at 70:8–9 ("Oracle wants to stop Rimini from using its software."); Dkt. 1161 at 19:14–16 (Oracle's counsel lamenting that Rimini uses Oracle's software "to compete against Oracle").  In fact, Oracle began its smear campaign the same day this Court issued its order granting Oracle's renewed motion for a permanent injunction.  *See* Oracle, *Federal Court Rules that Oracle is Entitled to a Permanent Injunction Against Rimini Street and Awards Attorneys' Fees in Copyright Suit*, PR Newswire (Aug. 14, 2018, 6:24 PM), https://www.prnewswire.com/news-releases/federal-court-rules-that-oracle-is-entitled-to-a-permanent-injunction-against-rimini-street-and-awards-attorneys-fees-in-copyright-suit-300697200.html.  Rimini will be irreparably harmed by Oracle's use of the injunction to sow fear, uncertainty, and doubt in the marketplace.

*Third*, despite successfully convincing the Court to exclude all evidence at trial of Rimini's revised processes, Oracle will attempt to use the injunction to challenge conduct that is currently at issue in *Rimini II* and was excluded from *Rimini I* at Oracle's request.  Indeed, Oracle acknowledged before the Ninth Circuit that its real aim "is the ability to hold [Rimini] in contempt"—which "is no small thing."  Dkt. 1134-2 at 42:18–22.  Oracle's intent to use this vague and overbroad injunction to prejudge live issues in *Rimini II* is entirely improper, anticompetitive, and unlawful.  *See Nat'l Labor Relations Bd. v. Express Publ'g Co.*, 312 U.S.

426, 435–36 (1941) ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged."); *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) ("failure to vigorously defend against [Plaintiff's] claims could have ushered in a new era of copyright litigation aimed not at promoting expression but at stifling the 'competition' upon which America thrives"); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 793 (5th Cir. 1999) (reversing order granting permanent injunction because plaintiffs used "copyrights to indirectly gain commercial control over products [it] does not have copyrighted") (quotations omitted).   The expense and uncertainty inflicted by contempt proceedings held under a legally defective injunction constitute yet another source of irreparable harm.

   *Fourth*, Rimini will have to expend an *unrecoverable* amount of costs to comply with the injunction in the absence of a stay.   "The threat of unrecoverable economic loss … qualif[ies] as irreparable harm." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996); *Texas v. E.P.A.*, 829 F.3d 405, 434 (5th Cir. 2016); *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010).   Rimini already expended millions of (unrecoverable) dollars altering its processes after this Court's summary judgment orders. Now, Rimini will be forced to make additional changes to its business practices in order to comply, not with the Ninth Circuit's opinion or the jury's verdict, but with a vague and overbroad injunction to the tune of $4 million per year.   *See* Decl. of Brian J. Slepko at ¶¶ 4–5. It is of no moment that these harms are monetary; what matters is that they are *unrecoverable* "in the course of [the] litigation." *Goldie's*, 739 F.2d at 471.   That is, by definition, irreparable. Oracle has not offered to reimburse Rimini for its injunction compliance costs and has offered no competing evidence.   Thus, Rimini's evidence of irreparable harm is undisputed, and this factor weighs overwhelmingly in favor of a stay.

   This Court previously concluded that "there is no evidence that Rimini Street would be harmed by an injunction" because Rimini "has changed its business model[,]" and "Oracle

seeks to enjoin only acts that have already been determined to be unlawful." Dkt. 1164 at 9. While Rimini has conformed its conduct and processes to this Court's summary judgment orders, as the undisputed evidence establishes, the injunction goes far beyond those orders or the jury verdict (not to mention the Ninth Circuit's even narrower opinion). The injunction, in short, does *not* reach "only acts that have already been determined to be unlawful" and because that premise is false so too is the Court's conclusion that the injunction will not harm Rimini.

### 3.  Oracle Will Not Be Harmed by a Stay

In considering the third factor, courts look to "whether issuance of the stay will substantially injure the other parties interested in the proceeding" including the "opposing party." *Lair*, 697 F.3d at 1215; *Leiva-Perez*, 640 F.3d at 964. Oracle will not suffer any future harm in the absence of a stay because the *undisputed* evidence demonstrates that by July 2014, Rimini changed its processes to exclude the specific acts found to be infringing. Dkt. 1134-3; *cf. Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir. 1986) (even willful trademark infringers may avoid injunction by disproving risk of future infringement). Rimini invested millions of dollars after this Court's summary judgment orders (and *years* before the jury's verdict) to conform its processes to the guidance provided in those orders, even though the jury ultimately found that Rimini "was not aware" and "had no reason to believe that its acts constituted" infringement. Dkt. 1134-5. Rimini then initiated its own lawsuit (*Rimini II*) to validate the legality of those revised processes, yet it was *Oracle* who insisted, over Rimini's objection, that the suits be kept entirely separate. Dkt. Nos. 488, 515, 669, 723. Oracle has now claimed to have "adduced evidence" that Rimini's revised processes continue to violate Oracle's copyrights (Dkt. 1117 at 19–20), yet no such evidence appears in the *Rimini I* record. That is because those processes have not been adjudicated as infringing, and the legality of those processes is currently at issue in *Rimini II*. Oracle cannot be heard to complain of staying the injunction in *Rimini I* because of *alleged* (but un-adjudicated) infringement related to the new processes when Oracle is the party that insisted those processes be litigated separately.

Oracle's principal argument to date has been that by contesting the injunction, Rimini

is somehow conceding it will violate the injunction.  *See* Dkt. 1139 at 8.  Oracle's position wrongly assumes that that the injunction is limited to previously adjudicated acts.  If, as Rimini contends, the Ninth Circuit did what it said it did, and upheld liability on a few "narrow ground[s]," leaving other issues for future litigation (*Oracle*, 879 F.3d at 960 n.6), then the injunction is overbroad and unlawful.  Moreover, if, as Rimini contends, the injunction's prohibitions on "access" and "benefits" and "use" are unconstitutional and vague, then the injunction is similarly unlawful.  Complying with an overbroad injunction, *despite* having changed its processes, will irreparably injure Rimini.  But, even when an injunction is "invalid," Rimini "must comply until the injunction is overturned on appeal."  *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001); *see also World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 689 (9th Cir. 2010) ("[A] person subject to an injunction must ordinarily obey it. However, one may challenge an injunction with which one disagrees through the usual process of law, such as an appeal.").  Oracle cannot use Rimini's duty to comply with an unlawful injunction to claim that Rimini is still engaging in infringement.

Oracle has not shown that it suffered any harm after the Ninth Circuit granted a stay of the previous injunction in 2016.  It will similarly be unable to show any harm from a stay of the current injunction pending appeal.  Indeed, any such attempt would be doomed by Oracle's failure to *ever* move for a preliminary injunction after filing this lawsuit in 2010.  *Cf. Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (affirming denial of plaintiffs' motion for a preliminary injunction where plaintiffs waited six years to seek injunctive relief); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) ("[A] plaintiff's delay [in commencing suit] can always be brought to bear at the remedial stage, in determining appropriate injunctive relief"); *New Era Publ'ns Int'l v. Henry Holt & Co.*, 873 F.2d 576, 584–85 (2d Cir. 1989) (holding that laches barred injunctive relief due to plaintiff's two-year delay in bringing suit).  This factor weighs in favor of a stay.

### 4.    The Public Interest Favors a Stay

Finally, "the public interest lies" in favor of a stay.  *Lair*, 697 F.3d at 1203.

*First*, a stay pending appeal would serve important interests of sound and fair judicial

administration.   Namely, "a stay would avoid the parties and the Court wasting taxpayer resources on a litigation which might be mooted on appeal." *Hunt v. Check Recovery Sys., Inc.*, 2008 WL 2468473, at *5 (N.D. Cal. June 17, 2008); *Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5718886, at *2 (E.D. Cal. Oct. 15, 2013) ("Judicial economy outweighs any prejudice [the non-moving party] may experience from a routine stay."). Here, both the public and the judicial system have heavily invested in two lawsuits—*Rimini I* and *Rimini II*—to resolve the legality of certain Rimini processes. The injunction now opens up a third front (an appeal), and potentially a *fourth* (contempt proceedings), which will be duplicative, unnecessary, and a waste of public resources. An appeal is inevitable, but there is no reason to burden this Court and its limited resources with contempt proceedings before the propriety and scope of the injunction itself are resolved on appeal.

*Second*, robust "competition … [is] vital to the public interest." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (citation omitted). As the Ninth Circuit made clear, except for a few narrow limitations (involving practices that were discontinued in 2014), "the software licenses … permitted Oracle's licensees to hire Rimini to perform [support] work for them," and Rimini provided such services "in lawful competition" with Oracle. *Oracle*, 879 F.3d at 952–53. But the injunction prohibits conduct far beyond that which is prohibited in many Oracle licenses and which the Ninth Circuit held to be infringing. And if left in place, the injunction would harm competition for support of Oracle software products— an aftermarket that unequivocally benefits from Rimini's lawful competition with Oracle. *See* Dkt. 1136-2 at 1518, 1715, 2265, 2271–72, 2383, 2987–88. Rimini's clients have the right to choose their support provider. The public interest demands that markets, not courts, regulate commerce. Yet, the injunction that Oracle persuaded this Court to enter is not a copyright injunction at all. It is an uber-license on Rimini that seeks to claw back the rights of customers to use third-party service providers based on terms selected exclusively by Oracle, most of which are not to be found in any contract or statute, and imposed using the compulsive power of a federal court. The injunction extends far beyond the scope of this Court's power under the Copyright Act. Indeed, every aspect of the injunction—from its issuance to its terms—is

erroneous.

**B.      In the Alternative, the Court Should Temporarily Stay the Injunction**

Even if the Court declines to stay the injunction pending resolution of the appeal, Rimini respectfully requests that the Court temporarily stay enforcement of the injunction while Rimini seeks a stay from the Ninth Circuit.  Courts routinely grant such requests.  *See*, *e.g.*, Dkt. 1072; *Elliot v. Williams*, 2011 WL 5080169, at *10 (D. Nev. Oct. 25, 2011); *Conservation Cong. v. U.S. Forest Serv.*, 2012 WL 3150307, at *2 (E.D. Cal. Aug. 1, 2012); *Campbell v. Nat'l Passenger R.R. Corp.*, 2009 WL 4546673, at *2 (N.D. Cal. Nov. 30, 2009).  The last time around, the Ninth Circuit promptly granted a stay pending appeal less than three months after the injunction issued—meaning any temporary stay would likely be brief.  Accordingly, in the event the Court declines to stay enforcement of the injunction pending appeal, it should grant a temporary stay until the Ninth Circuit has ruled on Rimini's stay application.

## V.      CONCLUSION

Rimini respectfully requests that the Court stay enforcement of the permanent injunction until the Ninth Circuit issues its mandate, or, in the alternative, temporarily stay enforcement of the injunction while Rimini moves for a stay from the Ninth Circuit.

DATED:  August 16, 2018                          GIBSON, DUNN & CRUTCHER LLP


                                                 By: *s/ Mark. A. Perry*
                                                       Mark A. Perry

                                                 *Attorney for Defendant Rimini Street, Inc.*

Gibson, Dunn & Crutcher LLP

EMERGENCY MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 16, 2018, I caused to be electronically uploaded a true

3

and correct copy in Adobe "pdf" format of the above document to the United States District

4

Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic

5

filing of a document, service is deemed complete upon transmission of the Notice of Electronic

6

Filing ("NEF") to the registered CM/ECF users.  All counsel of record are registered users.

7

GIBSON, DUNN & CRUTCHER LLP

8

9

By:  _/s/ Mark A. Perry_

Mark A. Perry

10

_Attorney for Defendant Rimini Street, Inc._

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28