BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
JOHN A. POLITO (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
john.polito@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>    Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S OPPOSITION TO RIMINI'S EMERGENCY MOTION (1) TO STAY ENFORCEMENT OF PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY (2) FOR A TEMPORARY SIXTY-DAY STAY**<br><br>Judge: Hon. Larry R. Hicks |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ........................................................................................................ 2

      A.    Legal Standard for Motion to Stay............................................................ 2

      B.    Rimini's Stay Request Fails at the Outset Because It Merely Repeats
            Previously Rejected Arguments.................................................................. 3

      C.    Rimini's Stay Request Fails Under All Four Factors ............................... 4

            1.    Rimini Is Not Likely to Prevail on Appeal ................................... 4

                  a.    Rimini's Arguments that the Injunction Is Inconsistent with
                        the Ninth Circuit's Opinion Are Meritless..................................... 4

                  b.    Rimini's Attacks on this Court's Finding that Oracle Will
                        Be Irreparably Harmed Absent an Injunction Are Meritless ........ 9

                  c.    The Jury's Finding of Innocent Infringement Is No Bar to
                        an Injunction ................................................................................ 11

                  d.    The Terms of the Injunction Are Clear and Within the
                        Scope of the Court's Findings...................................................... 13

                  e.    The Injunction Does Not Violate the First Amendment .............. 14

            2.    Rimini Fails to Show It Will Suffer *Irreparable* Harm Absent a
                  Stay.................................................................................................. 15

            3.    Oracle Will Be Harmed By Rimini's Infringement if a Stay is
                  Granted............................................................................................. 20

            4.    The Public Interest Favors the Injunction, and It Disfavors a Stay ........ 21

      D.    The Court Should Enforce The Injunction Immediately.......................... 22

III.  CONCLUSION.................................................................................................. 24

CERTIFICATE OF SERVICE

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011)................................................................................. 10

*Apple Inc. v. Psystar Corp.*,
   673 F. Supp. 2d 943 (N.D. Cal. 2009) ..................................................................... 21

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)..................................................................................... 14

*Aviall, Inc. v. Ryder Sys. Inc.*,
   110 F.3d 892 (2d Cir. 1997)....................................................................................... 8

*Boardman v. Pacific Seafood Group*,
   822 F.3d 1011 (9th Cir. 2016).................................................................................. 22

*Broadcast Music, Inc. v. Coco's Dev. Corp.*,
   1981 WL 1364 (N.D.N.Y. 1981) .............................................................................. 12

*Capitol Records, Inc. v. Thomas-Rasset*,
   692 F.3d 899 (8th Cir. 2012).................................................................................... 22

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012)................................................................................... 9

*Chamber of Commerce of U.S. v. Edmondson*,
   594 F.3d 742 (10th Cir. 2010).................................................................................. 20

*Childs v. Stafford*,
   2012 WL 12875370 (S.D. Cal. Apr. 26, 2012)................................................... 3, 16

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
   2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015) ........................................................ 18

*City of Colton v. Am. Promotional Events Inc.-West*,
   614 F.3d 998 (9th Cir. 2010)..................................................................................... 8

*Coal. for Econ. Equity v. Wilson*,
   1997 WL 70641 (N.D. Cal. Feb. 7, 1997) ................................................................. 4

*ConverDyn v. Moniz*,
   68 F. Supp. 3d 34 (D.D.C. 2014) ............................................................................. 18

*Craigslist Inc. v. 3taps Inc.*,
   964 F. Supp. 2d 1178 (N.D. Cal. 2013) ................................................................... 14

1

## TABLE OF AUTHORITIES
(continued)

2                                                                                                                     **Page(s)**

3   *CyberMedia, Inc. v. Symantec Corp.*,
4       19 F. Supp. 2d 1070 (N.D. Cal. 1998) ................................................................. 12

5   *D.C. Comics Inc. v. Mini Gift Shop*,
6       912 F.2d 29 (2d Cir. 1990) ................................................................................. 11

7   *De Acosta v. Brown*,
        146 F.2d 408 (2d Cir. 1944) ............................................................................... 11

8   *Douglas Dynamics, LLC v. Buyers Prods. Co.*,
9       717 F.3d 1336 (Fed. Cir. 2013) ............................................................................ 9

10  *Eldred v. Ashcroft*,
        537 U.S. 186 (2003) ........................................................................................... 14

11  *Fullmer v. Mich. Dep't of State Police*,
12      207 F. Supp. 2d 663 (E.D. Mich. 2002) ............................................................... 4

13  *Garcia v. Google, Inc.*,
14      786 F.3d 733 (9th Cir. 2015) .............................................................................. 14

15  *Goldie's Bookstore, Inc. v. Superior Court*,
        739 F.2d 466 (9th Cir. 1984) ........................................................................ 16, 17

16  *Graphic Commc'ns Union v. Chi. Tribune Co.*,
17      779 F.2d 13 (7th Cir. 1985) ................................................................................ 18

18  *Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*,
19      932 F. Supp. 1147 (S.D. Ind. 1996) ...................................................................... 4

20  *Hilton v. Braunskill*,
        481 U.S. 770 (1987) ............................................................................................. 3

21  *Iowa Utils. Bd. v. FCC*,
22      109 F.3d 418 (8th Cir. 1996) .............................................................................. 20

23  *Kirtsaeng v. John Wiley & Sons, Inc.*,
24      136 S. Ct. 1979 (2016) ....................................................................................... 22

25  *Leiva-Perez v. Holder*,
        640 F.3d 962 (9th Cir. 2011) ................................................................................ 3

26  *LG Elecs., USA, Inc. v. Dep't of Energy*,
27      679 F. Supp. 2d 18 (D.D.C. 2010) ...................................................................... 19

28

1

### TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*,

4

518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................................. 9, 10, 20, 21

5

*Millennium Pipeline Co. v. Certain Permanent & Temp. Easements*,

812 F. Supp. 2d 273 (W.D.N.Y. 2011) ................................................................. 23

6

*Mylan Pharms., Inc. v. Shalala*,

7

81 F. Supp. 2d 30 (D.D.C. 2000) ......................................................................... 20

8

*Nken v. Holder*,

556 U.S. 418 (2009) ................................................................................... 2, 3, 15, 23

9

10

*Oracle USA, Inc. v. Rimini Street, Inc.*,

879 F.3d 948 (9th Cir. 2018) ............................................................................. *passim*

11

*Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust*,

12

636 F.3d 1150 (9th Cir. 2011) ............................................................................. 20

13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,

14

2008 WL 5210843 (D. Del. Dec. 12, 2008) ......................................................... 4

15

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,

702 F.3d 1351 (Fed. Cir. 2012) ........................................................................... 9, 10

16

*Shays v. F.E.C.*,

17

340 F. Supp. 2d 39 (D.D.C. 2004) ....................................................................... 22

18

*Silverstein v. Penguin Putnam, Inc.*,

2003 WL 21361734 (S.D.N.Y. June 12, 2003) ................................................... 23

19

*Sterling Commercial Credit-Michigan, LLC v. Phoenix Indus. I, LLC*,

20

762 F. Supp. 2d 8 (D.D.C. 2011) ........................................................................ 18, 19

21

*Teutscher v. Woodson*,

22

835 F.3d 936 (9th Cir. 2016) ............................................................................... 12

23

*United States v. Lummi Indian Tribe*,

235 F.3d 443 (9th Cir. 2000) ............................................................................... 7, 8

24

*United States v. Thrasher*,

25

483 F.3d 977 (9th Cir. 2007) ............................................................................... 6

26

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,

27

2007 WL 4262725 (M.D.N.C. Nov. 30, 2007) ................................................... 24

28

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1

## TABLE OF AUTHORITIES
(continued)

2
Page(s)

3
*WPIX, Inc. v. ivi, Inc.*,

4
    691 F.3d 275 (2d Cir. 2012).................................................................................... 22

5
**CONSTITUTIONAL PROVISIONS & STATUTES**

6
17 U.S.C.
    § 502.................................................................................................................... 12

7
    § 504.................................................................................................................... 11

8
U.S. Const.
    amend. I............................................................................................................ 14, 16

9
    amend. VII........................................................................................................ 12, 16

10
**OTHER AUTHORITIES**

11
11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.)............................................................. 23

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

## I.       INTRODUCTION

After a month-long trial in 2015, a jury found that Rimini infringed 93 Oracle copyrights and violated state computer-fraud statutes.  Thereafter, this Court exercised its discretion and entered a permanent injunction barring Rimini's improper practices, but in late 2016, Rimini convinced the Ninth Circuit to stay that injunction pending appeal.  While Rimini did obtain reversal of the computer-fraud claims, Rimini lost its appeal on every single copyright claim in this case.  Consistent with the Ninth Circuit's instructions on remand, this Court again issued a permanent injunction barring Rimini's unlawful practices.  Now, almost three years since the jury's verdict, Rimini improperly urges that another stay pending appeal should issue, even though Rimini has no further ability to appeal Oracle's copyright claims.  There is no reason to give Rimini more time to continue its infringing activities.  The permanent injunction should not be stayed.

Rimini's arguments satisfy none of the four factors governing a stay motion.  First, far from providing a "strong showing" that it will succeed on the merits of its appeal, Rimini's motion rehashes the same meritless arguments this Court rejected in issuing the injunction and misreads and misrepresents the Ninth Circuit's opinion in this case.  The Ninth Circuit upheld the jury's copyright verdict, and Rimini has exhausted its appellate rights; thus, Rimini cannot now establish any "strong showing" of likely success on appeal.  Second, Rimini's unsubstantiated claim that it will suffer "irreparable injury" absent a stay falls far short of the showing required for a stay, and is completely belied by Rimini's statements to the public and the SEC since the Court issued its injunction.  Third, Rimini's unsupported claim that a stay will not harm Oracle because Rimini asserts it no longer infringes the copyrights is both factually and legally insufficient to justify a stay.  Fourth, the public interest (as this Court already concluded in issuing the injunction) is best served by enjoining Rimini's future copyright infringement, and nothing in Rimini's motion provides any basis to conclude otherwise.

Entirely undercutting Rimini's stay arguments to this Court are Rimini's own out-of-court admissions to the public and the SEC since this Court's issuance of the new injunction.  Indeed, less than a week after its emergency filing with this Court claiming irreparable harm,

1   Rimini told investors, customers, the SEC, and the world at large that this Court's injunction

2   places "No Limit on the Sale or Delivery of any Services for Oracle Products"[1]:

3

> **No Limit on the Sale or Delivery of any Services for Oracle Products**
>
> As was the case with the previous injunction issued in 2016 that was vacated by the Court of Appeals in January 2018, the renewed injunction does not limit any sale of service for any Oracle products or restrict service deliverables Rimini Street provides its clients, but rather defines the manner in which Rimini Street may continue to provide support services for certain Oracle product lines. However, compliance with the injunction will increase the amount of labor required for Rimini Street to complete its support deliverables for some clients, thereby costing the Company between $1 million and $4 million per year. For that reason and others, the Company has sought a stay of the injunction pending appeal.

8   The same public statement acknowledges that Rimini's only claimed harm is monetary, and thus

9   not irreparable.  *See id.*

10           Finally, the simple fact that the Ninth Circuit issued a stay in the prior appeal does not

11   support a stay here.  The Ninth Circuit's concern with regard to the injunction stemmed from the

12   Court's view of the state law claims, which the Ninth Circuit eventually overturned.  Rimini's

13   contrary arguments rely on a gross misreading of the Ninth Circuit's opinion, which affirmed on

14   the copyright infringement liability supporting the present injunction (despite Rimini's strenuous

15   arguments to the contrary).  Therefore, Rimini's likelihood of success on the merits and showing

16   sufficient irreparable harm is minimal to none this time.

17           The Court's injunction is well-founded, properly enjoins Rimini's infringing conduct, and

18   complies fully with the Ninth Circuit's opinion.  Rimini's motion for a stay should be denied.

19   **II.      ARGUMENT**

20           **A.      Legal Standard for Motion to Stay**

21           The bar to obtaining a stay pending appeal is high, and Rimini's unsupported motion falls

22   well short.  Because "[a] stay is an intrusion into the ordinary processes of administration and

23   judicial review," a stay "is not a matter of right" but "an exercise of judicial discretion" that may

24   properly be declined "even if irreparable injury might otherwise result."  *Nken v. Holder*, 556

25   U.S. 418, 427, 433 (2009) (citations omitted).

26

27   _____

[1]      Polito Decl., Ex. 1 (8/22/18 Press Release); Polito Decl., Ex. 2 (Rimini St., Inc., Current
28   Report (Form 8-K), at 4 (Aug. 23, 2018)).

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    As this Court has noted, a "stay pending appeal is an 'extraordinary remedy' that may be

2    awarded only upon a clear showing that an appellant is entitled to such relief."  ECF No. 1094 at

3    3:4–6.  Rimini, as the party requesting the stay, "bears the burden of showing that the

4    circumstances justify an exercise of that discretion."  *Nken*, 556 U.S. at 433–34.  The

5    determination whether to issue a stay is governed by four factors: "(1) whether the stay applicant

6    has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant

7    will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

8    the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* at 434

9    (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

10    The first two factors "are the most critical" and establish minimum thresholds that must

11    be met for issuance of a stay.  *Nken*, 556 U.S. at 434.  The Supreme Court requires a "strong

12    showing" on that first critical factor, likelihood of success on the merits.  *Id.*  The second critical

13    factor requires Rimini to demonstrate *irreparable* harm, not just harm to its business or

14    unplanned expenses.  Irreparable harm is more than just a factor; it is the "bedrock requirement"

15    for a stay.  *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011).  It "requires an even

16    stronger showing: the [movant] must demonstrate that irreparable harm is 'probable,' or more

17    likely than not, if the stay is denied."  *Childs v. Stafford*, 2012 WL 12875370, at *3 (S.D. Cal.

18    Apr. 26, 2012), *aff'd*, 551 F. App'x 353 (9th Cir. 2014) (citing *Leiva-Perez*).  If the movant has

19    not made a threshold showing of irreparable harm, "a stay may not issue, regardless of the

20    [movant's] proof regarding the other stay factors."  *Leiva-Perez*, 640 F.3d at 965.

21    **B.    Rimini's Stay Request Fails at the Outset Because It Merely Repeats
           Previously Rejected Arguments**

22

23    This Court has correctly rejected Rimini's arguments for a stay multiple times—when it

24    entered its current injunction, entered its previous injunction, and denied Rimini's previous

25    request for stay.  Nor does any decision of the Ninth Circuit suggest a contrary result.  To be

26    sure, the Ninth Circuit could have accepted Rimini's arguments about the propriety and scope of

27    the prior injunction, but the Court declined to do so—and gave no indication that the prior

28    injunction was unlawful or would be inappropriate based solely on Rimini's copyright violations.

3

1     *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 964 (9th Cir. 2018) ("We express no view

2     on the propriety or scope of any injunctive relief[.]").

3          Rimini's rehashing of previously rejected arguments is alone sufficient to deny the

4     motion.  The "mere recitation of arguments previously made and rejected . . . is not nearly

5     enough to persuade [the Court] that [the movant] is likely to succeed on appeal." *Endress +*

6     *Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 932 F. Supp. 1147, 1149 (S.D. Ind. 1996); *see*

7     *also Fullmer v. Mich. Dep't of State Police*, 207 F. Supp. 2d 663, 664 (E.D. Mich. 2002) (despite

8     similarity of factors, party seeking stay will have more difficulty establishing likelihood of

9     success "due to the difference in procedural posture," requiring "likelihood of reversal").  Thus,

10    "a motion for stay pending appeal is not a second bite at the . . . injunction apple." *Coal. for*

11    *Econ. Equity v. Wilson*, 1997 WL 70641, at *5 (N.D. Cal. Feb. 7, 1997); *see also Power*

12    *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2008 WL 5210843, at *2 (D. Del. Dec.

13    12, 2008) (denying motion for stay of permanent injunction because "the Court has considered

14    several of these factors already in considering whether to issue a permanent injunction, and the

15    Court's analysis is unchanged in the context of a stay").

16       **C.**      **Rimini's Stay Request Fails Under All Four Factors**

17          Application of the four factors mandates denial of Rimini's "emergency" stay request.

18          **1.**      **Rimini Is Not Likely to Prevail on Appeal**

19          Rimini asserts it has a substantial case for relief based on no less than *ten* "principal"

20    arguments—all of which Rimini assures this Court are "serious" and will lead to success on

21    appeal.  Mot. at 8:12–16.  Rimini's scattershot approach undercuts any notion that it has a

22    meritorious argument for appeal—and no number of meritless arguments can justify a stay.

23    Rimini provides no basis for this Court or the Ninth Circuit to question this Court's well-founded

24    determinations about the appropriateness and scope of injunctive relief.

25          **a.**      **Rimini's Arguments that the Injunction Is Inconsistent**

26                        **with the Ninth Circuit's Opinion Are Meritless**

27          Four out of Rimini's ten arguments charge this Court with acting inconsistently with the

28    Ninth Circuit's opinion in this case.  Not one of them has merit.  Rimini claims this Court "made

4

1    errors of law in construing the scope of" that opinion, Mot. at 8:18, which allegedly "infect" the

2    renewed injunction. *Id.* at 17:8–9. It also argues that this Court's renewed injunction is

3    somehow broader than what the Ninth Circuit's opinion allows. *Id.* at 16:3–17:1. Each of these

4    arguments is based on an obvious misreading of the Ninth Circuit's opinion. Moreover, Rimini

5    made all of them before to this Court when it opposed the renewed injunction (ECF No. 1130 at

6    1:24–2:10, 2:14–18, 15:19–27, 18:4–22:12); Oracle rebutted them (ECF No. 1139 at 1:5–13,

7    1:21–2:23, 3:4–23, 9:17–10:11); and this Court properly rejected them in issuing the renewed

8    injunction. Rimini raises no new evidence or argument about the Ninth Circuit opinion, and its

9    recycled claims fail to raise a substantial likelihood of success on appeal. This Court properly

10   read the Ninth Circuit opinion, and its injunction is fully consistent with that opinion.

11        In contrast, Rimini's arguments in support of a stay contradict and misrepresent the Ninth

12   Circuit's opinion. Its various mischaracterizations fall into two broad categories.

13        *First*, Rimini falsely claims that it was "erroneous" for this Court to recognize that the

14   Ninth Circuit affirmed the Court's and jury's findings regarding Oracle's liability for copyright

15   infringement. Mot. at 8:24. The Ninth Circuit specifically stated that while it reversed on the

16   state law claims, "we affirm the judgment with respect to the copyright infringement claims."

17   *Oracle*, 879 F.3d at 953. The Ninth Circuit indisputably affirmed Rimini's liability for copyright

18   infringement for *all four* of Oracle's software products, and thus *all 93* of the copyright

19   registrations at issue. *Id.* at 954 (explaining that Rimini "challenges the jury's finding of

20   copyright infringement with respect to" J.D. Edwards and Siebel "on two grounds," and

21   concluding "[n]either of these arguments is persuasive"); *id.* at 958–59 (noting Rimini's

22   arguments that it did not infringe PeopleSoft copyrights "are without merit"); *id.* at 960 ("The

23   record supports the district court's conclusion" that Rimini infringed as to PeopleSoft.); *id.*

24   ("[W]e affirm the district court's determination of copyright infringement as to Database.").

25        Several of Rimini's specific allegations about the Ninth Circuit's opinion are particularly

26   baseless. For example, Rimini alleges that the Ninth Circuit did not address any current cross-

27   use and only addressed future cross-use, and that as a result this Court's injunction of current

28   cross-use is improper. Mot. at 10:6–9. In fact, in rejecting Rimini's arguments about JD

5

1    Edwards and Siebel licenses, the Ninth Circuit addressed both current and future cross-use,

2    holding that "each of the licenses at issue here 'pointedly limits copying and use to support the

3    *Licensee*,'" and any "work that Rimini performs under color of a license held by a customer for

4    other existing customers" is not permitted. *Oracle*, 897 F.3d at 957. Moreover, Rimini's claim

5    that the Ninth Circuit "avoided deciding whether cross-use cannot be enjoined at all because it

6    does not constitute copyright infringement" also fails. Mot. at 10:10–11. The Ninth Circuit

7    already held that Rimini has waived the argument. *Oracle*, 897 F.3d at 957 & n.4.

8            Moreover, Rimini falsely implies throughout its motion (*e.g.* at 1:2, 1:27, 6:25, 11:3,

9    19:6, 23:16), and also in its recent press release, that the Ninth Circuit concluded that most of its

10   conduct amounted to "lawful competition" with Oracle. Not so. The Ninth Circuit recognized

11   the competition as "lawful" only in the sense that Oracle's licenses allow third-party support, *so*

12   *long as* that support is provided in a manner consistent with the terms of the license: "But in

13   order to compete effectively, Rimini also needed to . . . copy[] Oracle's copyrighted software,

14   which, unless allowed by license, would be copyright infringement." *Oracle*, 897 F.3d at 952.

15   Rimini disregards this discussion, in the same paragraph it repetitively cites. Indeed, after this

16   introductory remark, the Ninth Circuit *affirmed across the board* Rimini's liability for infringing

17   Oracle's copyrights. *Id.* at 953. The competition tactics at issue in this case *were not* "lawful."

18           *Second*, Rimini claims that this Court may only enjoin the "acts of infringement within

19   the judgment . . . that the Ninth Circuit specifically affirmed on appeal." Mot. at 17:8–14, 8:20–

20   21. But the Court did not reverse on any copyright infringement finding. It is at best grossly

21   misleading to state that the "Ninth Circuit did not deem [certain conduct] infringing." Mot. at

22   9:22–23. The Ninth Circuit merely declined to address all of Rimini's infringing conduct

23   because *it already had affirmed liability*. *See Oracle*, 879 F.3d at 953, 954, 960 & n.6. The fact

24   that the Ninth Circuit affirmed without addressing every specific infringing *action* discussed by

25   this Court in no way limits this Court's discretion in issuing the renewed injunction. Nothing in

26   the Ninth Circuit opinion implies that this Court may not enjoin conduct *it* concluded was

27   infringing, which findings were undisturbed on appeal despite Rimini's attacks on them.

28   Rimini's contrary arguments turn the mandate on its head. *See United States v. Thrasher*, 483

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1   F.3d 977, 982 (9th Cir. 2007) ("[A] district court could not revisit its already final determinations

2   unless the mandate allowed it."); *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th

3   Cir. 2000) ("[A] court is generally precluded from reconsidering an issue previously decided by

4   the same court, or a higher court in the identical case.").

5         For example, Rimini points to the footnote in the Ninth Circuit's opinion where, after it

6   had already concluded Rimini "infringe[d] as to PeopleSoft," the Court declined to address the

7   two other theories supporting liability as to PeopleSoft—*because it affirmed such liability*

8   *regardless*.  *Oracle*, 879 F.3d at 960 & n.6.  Rimini twists this common appellate-court practice

9   of only discussing as much of a district court opinion as is necessary to affirm into a claimed

10  implicit rejection by the Ninth Circuit of this Court's undisturbed findings.  Rimini offers no

11  support for this absurd proposition.  Relatedly, Rimini argues that the Ninth Circuit implicitly

12  disallowed this Court from reissuing "the *same*" injunction since it vacated and sent the

13  injunction back for reconsideration.  Mot. at 17:14–22.  But of course the Ninth Circuit did no

14  such thing.  *Oracle*, 879 F.3d at 964 ("We express no view on the propriety or scope of any

15  injunctive relief . . . .").  The Ninth Circuit considered all of Rimini's arguments against both

16  liability for copyright infringement and the scope and propriety of the prior injunction, and the

17  Ninth Circuit rejected all of Rimini's copyright liability-related arguments and declined to accept

18  *any* of Rimini's arguments against the injunction.  The Ninth Circuit gave no indication that its

19  decision regarding what Rimini calls the "narrow issue" of local hosting left further "issues for

20  future litigation."  Mot. at 22:4.  Instead, it affirmed that Rimini was liable for copyright

21  infringement.  *Oracle*, 879 F.3d at 960 & n.6.  So too with Rimini's arguments that the Ninth

22  Circuit did not address alternative infringing actions for JD Edwards and Siebel.  Mot. at 16:13–

23  16.[2]

24

25  [2]      For another example, in arguing the Ninth Circuit did not address whether client licenses
    permit the challenged conduct (even though it explicitly rejected that argument, *Oracle*, 879 F.3d
26  at 957), Rimini cites a footnote (Mot. at 10:4–5 (citing *Oracle*, 879 F.3d at 953 n.2)) stating that
    the Court did not address a different argument regarding documentation copyrights because
27  "Rimini does not appeal" that jury finding.  *Id.* (emphasis added).  That Rimini thinks it may
    benefit at this stage because the Ninth Circuit did not address an issue *that Rimini did not appeal*
28  reveals the absurdity of its arguments based on the scope of the Ninth Circuit opinion.

1    Rimini's argument that the renewed injunction is "overbroad" because it "reaches far

2    more conduct than the Ninth Circuit found to be infringing" (Mot. 16:7–10) is another iteration

3    of this same error.  Rimini admits (as it must) that injunctions may cover all "adjudicated

4    conduct." *Id.* at 16:3–4.  As discussed above, the Ninth Circuit's *affirmance* of Rimini's

5    copyright liability does nothing to *limit* the conduct this Court adjudicated as infringing Oracle's

6    copyrights, *see, e.g.*, ECF No. 474 at 13.

7    The injunction does not reach "lawful" conduct.  Mot. at 16:23–28.  Rimini cites no case

8    law (because it cannot) for the proposition that actions "cannot be enjoined" if "an appellate

9    court" has not yet ruled on the legality of those actions.  *Id.*  If this were true, no injunction could

10   ever issue before the case was appealed—a patently absurd claim.  Indeed, the Ninth Circuit in

11   this case remanded for this Court to "weigh the *eBay* factors with respect to the copyright claims

12   alone" because this Court previously had "assessed the four factors by reference to *both* the

13   copyright and the CDAFA claims."  *Oracle*, 879 F.3d at 964 (emphasis added).  Nothing about

14   this instruction *limited* the "copyright claims" on which this Court may base the injunction, and

15   as this Court has repeatedly determined, the injunction bars only illegal conduct.

16   Rimini's reliance on cases standing for the proposition that issues not necessarily reached

17   by an appellate court sometimes do not have preclusive effect in *subsequent* litigation are

18   irrelevant.  Mot. at 8:25–9:7 (citing *City of Colton v. Am. Promotional Events Inc.-West*, 614

19   F.3d 998, 1004 n.4 (9th Cir. 2010), and *Aviall, Inc. v. Ryder Sys. Inc.*, 110 F.3d 892, 897–98 (2d

20   Cir. 1997)).  This is not a subsequent litigation—it is the *same* litigation involving the *same*

21   findings by this Court and the jury that Rimini infringed in all the ways the injunction addresses.

22   And the Ninth Circuit has now affirmed Rimini's liability for that infringement.  The law of the

23   case says that this Court should not (and indeed, cannot) reconsider the issues it has already

24   decided and have been affirmed.  *Lummi Indian Tribe*, 235 F.3d at 452.  Rimini also presented

25   this argument and these same cases to the Court before, and the Court necessarily rejected them.

26   *See* ECF Nos. 1158, 1159.

27   What is more, the Ninth Circuit pointed out that issues regarding an injunction's "scope"

28   are reviewed for "abuse of discretion."  *See Oracle*, 879 F.3d at 964.  But Rimini offers no

8

1    argument why this Court abused its discretion in concluding that the undisturbed factual findings

2    support the injunction's scope.  As Rimini admits, it already submitted its overbreadth objections

3    to this Court, which rejected them.  Mot. at 16:19–22.  Rimini offers no new reason to think that

4    *this* injunction is overbroad—save for its misreading of the Ninth Circuit opinion.

5              **b.      Rimini's Attacks on this Court's Finding that Oracle**
                **Will Be Irreparably Harmed Absent an Injunction Are**
6              **Meritless**

7              Rimini repeats its argument that Oracle failed to prove it would suffer irreparable harm in

8    the absence of an injunction.  Mot. at 10:21–23.  Rimini's chief argument is that there is

9    insufficient evidence that Rimini's conduct *caused* the harm which Oracle has suffered.  *Id.* at

10   11:8–12:21.  But Rimini's challenge to this Court's causal determination is a factual challenge

11   which is reviewed only for clear error on appeal.  *Oracle*, 879 F.3d at 964.  Rimini presents no

12   reason that this Court clearly erred in its conclusion that Rimini's actions caused Oracle harm.

13             Moreover, prior to this motion, Rimini extensively briefed this very argument to this

14   Court on three separate occasions (ECF No. 1130 at 8:7–10:1, 11:6–14:13; ECF No. 1069 at

15   5:20–28; ECF No. 905 at 12:16–24), and this Court rejected it all three times (ECF No. 1164;

16   ECF No. 1094; ECF No. 1065).  "Here, the court *once again* finds that Rimini Street's

17   infringement of ninety-three separate copyright registrations over four of Oracle software

18   product lines . . . irreparably injured Oracle's business reputation and goodwill."  ECF No. 1164

19   at 6:6–9 (emphasis added).  Rimini offers no new reason that this Court should come to a

20   different result now.  Indeed, Rimini admits that it "previously documented" the evidence it

21   views as supporting this argument.  Mot. at 12:14–16.  And the competitive injuries found by

22   this Court are classic examples of irreparable harm.  *See Douglas Dynamics, LLC v. Buyers*

23   *Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664

24   F.3d 922, 930 (Fed. Cir. 2012).  Instead of rebutting these, Rimini quibbles over *evidentiary*

25   questions (Mot. at 11–12) that also fail to present *legal reasons* why it will succeed on appeal,

26   and that this Court already rejected.

27             Rimini again attacks this Court's reliance on *Presidio Components* and *Grokster*.  Mot. at

28   10:25, 12:22.  As before, Rimini misinterprets those and other cases.  First, Rimini claims that

1    *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012), does

2    not apply because that case involved a right to exclude a direct competitor, whereas Rimini says

3    it is a lawful competitor in a market for after-license services.  Mot. at 10:25–11:4.  It does not

4    matter that Rimini claims it could compete *without infringing Oracle's copyrights*.  That does

5    not alter Oracle's right to prevent Rimini from *infringing Oracle's copyrights* to compete with

6    Oracle—just as in *Presidio*, 702 F.3d at 1362.  Rimini also attempts to distinguish this case from

7    *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007),

8    claiming (without support) that the well-established rule that a Court may still enjoin an infringer

9    that has ceased its conduct *only applies* to non-innocent infringers.  But as discussed below, *infra*

10   Section II.C.1.c, this Court has rightly rejected Rimini's purported exemption from injunctions

11   for innocent infringers at every stage of these proceedings.

12        Similarly, Rimini misinterprets the Ninth Circuit's opinion by asserting that this Court's

13   finding "was impermissibly premised on the now-reversed computer hacking claims."  Mot. at

14   6:28–7:1.  Not so.  The Ninth Circuit pointed to this Court's prior irreparable harm finding as an

15   "example" of how this Court "assessed the four factors by reference to *both* the copyright and the

16   CDAFA claims."  *Oracle*, 879 F.3d at 964.  But the Ninth Circuit cast *no doubt whatsoever* on

17   this Court's irreparable harm finding.  *Id.* ("[w]e express no view").  Instead, it remanded for this

18   Court to consider each *eBay* factor based on copyright infringement alone.  The Ninth Circuit

19   provided no "additional support" (Mot. at 7:2–3) for Rimini's argument against this Court's

20   finding of irreparable harm caused by Rimini's copyright infringement.

21        Rimini also argues that the jury's award of $35 million in actual damages is adequate to

22   *fully* compensate Oracle.  Mot. at 14–15:10.  Rimini made this argument before (ECF No. 1130

23   at 14:14–15:8), Oracle demonstrated its inconsistency with the evidence and the case law (ECF

24   No. 1139 at 6:9–7:17), and this Court explicitly rejected it (ECF No. 1164 at 7:16–8:19).  In

25   issuing the current injunction, this Court found that "certain harms suffered by Oracle as a result

26   of Rimini Street's conduct like lost market share and erosion of company goodwill are

27   intangible" and thus "difficult to quantify and compensate."  ECF No. 1164 at 7:20–25 (citing

28   *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1154 (9th Cir. 2011)).  This Court also held that the

1  "copyright infringement damages in this action were uniquely complex and difficult to

2  determine," *id.* at 7:26–27, especially since the case involves the loss of the right to exclude

3  others. *Id.* at 8:14–19. Rimini argues in response that juries are capable of deciding complex

4  issues, but offers no reason to question this Court's conclusion that the jury did not (and could

5  not) completely compensate Oracle due to the unique facts of *this case*. Rimini's argument fails

6  for the same reasons as before.

7              **c.      The Jury's Finding of Innocent Infringement Is No Bar
                         to an Injunction**

8

9          At every stage of the dispute over an injunction, Rimini has argued that the jury's finding

10  that Rimini's copyright infringement was "innocent" somehow "precludes . . . any injunction at

11  all." ECF No. 1130 at 16:18–19; *see also id.* at 16:18–17:1; ECF No. 1069 at 4:23–5:6 (citing

12  same cases Rimini cites now, Mot. at 13:3–14:13). The Copyright Act, which provides this

13  Court with discretion to issue an injunction, contains no such limitation. *See* 17 U.S.C. § 504.

14  Had Congress wished to limit injunctive relief to cases where a party engaged in "willful"

15  infringement, Congress could have included that limit in the statute. Congress did not.

16          Since the statutory language plainly contradicts Rimini's argument, it is unsurprising that

17  Rimini still has failed to cite a single case holding that an "innocent" copyright infringer is

18  immune from injunctive relief. Moreover, Rimini raised all of its arguments based on the jury's

19  finding of innocent infringement in the Ninth Circuit as grounds for rejecting any possibility of

20  injunctive relief. The Ninth Circuit did not accept these arguments—for good reasons. And its

21  remand evinces no limitation on this Court's ability to impose injunctive relief based on Rimini's

22  copyright violations.

23          Rimini continues to assert that no case exists where a court has issued an injunction

24  against an innocent infringer. Mot. at 13:25–28. Rimini is wrong. *See, e.g.*, *D.C. Comics Inc. v.*

25  *Mini Gift Shop*, 912 F.2d 29, 36 (2d Cir. 1990) (affirming a finding of "innocent infringement,"

26  an award of statutory damages, and the issuance of "a permanent injunction . . . to deter future

27  infringements"); *De Acosta v. Brown*, 146 F.2d 408, 410 (2d Cir. 1944) (affirming an injunction

28  as "clearly correct" against a defendant whose infringement was "innocent"); *Broadcast Music,*

1    *Inc. v. Coco's Dev. Corp.*, 1981 WL 1364, at *2 (N.D.N.Y. 1981) (issuing a permanent

2    injunction where the defendant "was not aware nor had he reason to believe that his acts

3    constituted an infringement of copyright"); *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d

4    1070, 1078–79 (N.D. Cal. 1998) (issuing injunction even assuming innocent conduct, and stating

5    that "[i]nnocent intent generally is not a defense to copyright infringement, and injunctions may

6    be issued without a showing of willful or deliberate infringement").  Rimini addresses none of

7    these cases and merely cites the same cases that failed to establish this point previously—those

8    cases are no more relevant now, as they still largely involve Lanham Act discussions of

9    trademark infringement where no harm had been established.  ECF No. 1139 at 5:18–28.  Thus,

10   this Court's injunction, rejecting Rimini's argument, is not "novel[]."  Mot. at 18:2.

11        Rimini also repeats its meritless argument that this Court violated the Seventh

12   Amendment's Reexamination Clause.  Mot. at 13:3–17.  That argument rests on a

13   mischaracterization of this Court's opinion and yet another misunderstanding of law.  First, this

14   Court did not base the renewed injunction on Rimini's state of mind.  Rather it referred to

15   Rimini's "conscious disregard for Oracle's software copyrights" in the section discussing

16   irreparable harm to *Oracle*, noting that Rimini's use of Oracle's software "enabled Rimini to

17   rapidly build its business from a new and unknown company . . . to a major competitor of

18   Oracle."  ECF No. 1164 at 6:15–18.  That statement is followed by a discussion of Rimini's

19   *conduct* and how it damaged Oracle.  The relevant finding, then, is addressed to the nature of

20   Rimini's conduct, not to the jury's finding of "innocence" (*i.e.*, Rimini's state of mind).  Nothing

21   in the jury's findings precluded this Court from relying on the extremely damaging effect of

22   Rimini's conduct, recognized by the jury in its award of maximum statutory damages, in

23   concluding that irreparable harm would result to Oracle absent an injunction.  Second, the

24   Seventh Amendment is not even applicable here because the Reexamination Clause comes into

25   play only when a finding *necessary* to support equitable relief has been made by the jury.  *See*

26   *Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016).  Here, neither "conscious disregard"

27   nor non-innocence is a prerequisite for injunctive relief.  17 U.S.C. § 502(a).  There is no reason

28

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    for this Court to accept this variation of Rimini's argument that its "innocent" state-of-mind

2    exempts it from injunctive relief.

3              **d.**      **The Terms of the Injunction Are Clear and Within the Scope**
                           **of the Court's Findings**

4

5              Rimini refuses to accept the injunction's plain terms, arguing that it is "impermissibly

6    vague," and purports not to understand ordinary language.  For example, Rimini asserts that

7    terms like "use," "benefit," and "support" are ambiguous (Mot. at 15:11–28)—but these words

8    are the same ones the Court interpreted in the licenses and that the parties had no trouble using at

9    trial.  Rimini's challenge here merely seeks to re-litigate the rulings underlying the injunction's

10   terms.  Rimini also argues that the Ninth Circuit's use of the word "reconsideration" means that

11   the terms of this injunction should not be substantially the same as those of the last injunction.

12   Mot. at 15:11–13.  But the Ninth Circuit put no such thumb on the scale when it instructed this

13   Court to reconsider the *eBay* factors in light of its and the jury's copyright-infringement findings

14   alone.

15             And, of course, the injunction is far more specific than Rimini's selectively quoted words

16   suggest.  Based on the substantial evidence presented at trial and considered by the Court,

17   including many Oracle licenses and many witnesses' testimony, the injunction prohibits Rimini

18   from "us[ing] a specific licensee's . . . software or documentation other than to support the

19   specific licensee's own internal data processing operations" and from using a licensee's

20   "environment to develop or test software updates or modification for the benefit of any other

21   licensee."  ECF No. 1166 ¶¶ 4, 6.  In context, these terms clearly enjoin the cross-use and other

22   unlicensed Rimini activity that underlie the infringement findings in the first place.  The ease

23   with which Rimini claims to have determined to what extent its current support processes violate

24   the terms of the injunction contradicts its argument that those terms are ambiguous.[3]  In its press

25   releases and SEC filings, Rimini has not warned investors that it cannot determine what conduct

26   the injunction prohibits.  To the contrary, Rimini has claimed that it can comply with the

27   ─────────────────────
     [3]      *See* Polito Decl., Ex. 1 ("the renewed injunction does not limit any sale of service for any
     Oracle products or restrict service deliverables Rimini Street provides its clients, but rather
28   defines the manner in which Rimini Street may continue to provide support services").

                                    13

1   injunction by altering various business practices.

2       Rimini raised these arguments to this Court when it considered the proposed injunction

3   (ECF No. 1130 at 22:13–23:28), Oracle demonstrated why they are baseless (ECF No. 1117 at

4   22–23), and this Court granted the injunction.  They provide no basis for a stay.

5                **e.**      **The Injunction Does Not Violate the First Amendment**

6       Lastly, Rimini's claim that the injunction violates the First Amendment is meritless.  *See*

7   Mot. at 17:2–7.  Rimini asserts that enjoining a party liable for copyright infringement from

8   accessing the "source code" of the at-issue software "*to carry out development and testing*" (ECF

9   No. 1166 ¶¶ 8, 12 (emphasis added)) is *just like* a court enjoining someone from reading a

10  copyrighted book or watching a copyrighted movie.  Mot. at 17:5–7.  That comparison has no

11  support in logic or law.

12      The two cases Rimini string cites are inapposite.  Mot. at 17:2–4.  First, *Eldred v.*

13  *Ashcroft*, 537 U.S. 186, 219 (2003), stands for the basic proposition that ideas are not copyright-

14  protected, but expressions are.  Rimini's failure to analyze *Eldred* is perhaps because the case

15  offers *no support* for its supposed First Amendment right to access software to infringe Oracle's

16  copyrights during the course of development and testing software updates.  Second, *Garcia v.*

17  *Google, Inc.*, 786 F.3d 733 (9th Cir. 2015), held merely that "censor[ing] and suppress[ing] a

18  politically significant film—based upon a dubious and unprecedented theory of copyright"—

19  "deprived the public of the ability to view firsthand" the politically salient film.  *Id.* at 747.  Of

20  course, the theory of copyright infringement in *this* case is neither "dubious" nor

21  "unprecedented."  It was *affirmed by the Ninth Circuit*.  And general access to a political film

22  obviously warrants much more First Amendment protection than stopping one infringer from

23  accessing code it is barred from copying.  The *Garcia* court actually stated that the result would

24  be different in a "garden-variety copyright infringement [case], such as seeking to restrain the

25  use of copyrighted computer code."  *Id.*; *see Craigslist Inc. v. 3taps Inc.*, 964 F. Supp. 2d 1178,

26  1185 (N.D. Cal. 2013) (targeted prohibitions on "access" to websites raise no "serious

27  constitutional doubts"); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("The

28  First Amendment does not . . . provide a license for copyright infringement.").

1   Moreover, as Rimini has already conceded, it cannot merely "access" Oracle's code

2   without creating new RAM copies of that code "every time it start[s] up or [runs] Oracle

3   software." ECF No. 1139 at 11:7–11. While reading a book or viewing a film do *not* involve

4   copying a competitor's source code, Rimini's desired actions here do.

5                                           *        *        *

6   None of Rimini's litany of merits-related arguments presents a "serious legal question."

7   Mot. at 17:24. None presents the required "strong showing" for Rimini's likelihood of success

8   on appeal. *Nken*, 556 U.S. at 434. Moreover, the fact that the Ninth Circuit issued a stay in

9   Rimini's prior appeal does not support a stay here. To the contrary, Rimini's likelihood of

10  success is *much less* this time, since the Ninth Circuit has already overturned what it saw as

11  problematic (the state law convictions) and *affirmed* in full the copyright infringement liability

12  supporting the present injunction. Nothing about the Ninth Circuit's stay or opinion suggests

13  there is any merit to Rimini's current arguments for a stay. And the fact that Rimini raised these

14  challenges in the prior appeal and the Ninth Circuit did not accept them or impose any limit on

15  the appropriateness or scope of the injunction on remand further supports the conclusion that this

16  Court's repeated rejection of these arguments is correct.

17          **2.       Rimini Fails to Show It Will Suffer *Irreparable* Harm Absent a Stay**

18  Rimini previously argued (multiple times) that it would be irreparably harmed by this

19  Court's injunction. But this Court has rejected that argument (multiple times), finding that:

20          [T]here is no evidence that Rimini Street would be harmed by an
            injunction that enjoins and restrains future copyright infringement
21          or using the materials gained from its infringement . . . .

22  ECF No. 1164 at 9:3–5; *see also* ECF No. 1094 at 3:27–4:6; ECF No. 1049 at 8:3–7. Rimini's

23  current motion adds nothing new. Mot. at 18:10–11 (admitting this Court "has previously said

24  that Rimini 'would [not] be harmed by an injunction'" (quoting ECF No. 1164 at 9:3–4)).

25  Rimini again has failed to explain how the injunction irreparably harms its current business

26  model. Because Rimini's arguments do not come close to meeting *its burden* to show that it

27  "more likely than not" will suffer "irreparable harm" if the injunction stands, the stay must be

28  denied. *Childs*, 2012 WL 12875370, at *3.

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    As before, Rimini claims (1) that it will suffer a constitutional violation, (2) that the

2    injunction is vague and overbroad (again), (3) that Oracle might enforce the injunction against

3    Rimini in bad faith, and (4) that it will suffer compliance costs absent a stay.  Each argument is

4    meritless.  The injunction is necessary because *Rimini* "irreparably injured Oracle's business

5    reputation and goodwill," ECF No. 1164 at 6:6–9; Rimini's attempt to paint itself the victim of

6    the injunction against its misconduct should fail yet again.

7    *First*, Rimini claims that it can satisfy the irreparable-harm showing merely by alleging

8    that the injunction violates the First and Seventh Amendments.  Mot. at 18:13–23.  But as Oracle

9    showed (ECF No. 1139 at 1:20–3:17, 5:4–8; *supra* Section II.C.1), and the Court determined in

10   issuing its injunction (ECF No. 1164), Rimini has *not* demonstrated any such violations.

11   Moreover, Rimini points to no authority (because there is none) that states that a *rejected*

12   allegation of constitutional violation may support staying a *permanent* injunction.  The only case

13   it cites, *Goldie's Bookstore, Inc. v. Superior Court*, *reversed* a preliminary injunction issued by a

14   federal court to halt the application of an allegedly unconstitutional state law.  739 F.2d 466, 472

15   (9th Cir. 1984).  The law in question guaranteed an automatic stay in some but not all landlord-

16   tenant suits and was attacked on equal-protection grounds, among others.  The federal district

17   court issued an injunction barring application of the law after a state court had denied a stay

18   pending appeal in a landlord-tenant suit.  Even though the plaintiff alleged an imminent

19   constitutional injury, the Ninth Circuit concluded that the likelihood of success was too slight

20   and that principles of abstention counseled against federal court intervention.  *See id.*  Nothing in

21   that case supports a stay here.  This Court repeatedly has determined that Rimini's supposed

22   constitutional claims are meritless.  Rimini can cite no authority for the proposition that once a

23   court has rejected a party's constitutional claims *on the merits*, as this Court has done repeatedly

24   with Rimini's claims, the mere repeated allegation of constitutional harm establishes irreparable

25   harm to support a stay.  Otherwise, permanent injunctions could never be enforced before an

26   appeal in *any case* where a party raised the prospect of a constitutional violation (even if that

27   argument was already rejected).  Indeed, the *Goldie's Bookstore* Court noted that if a claim

28   "does not implicate" the relied-on constitutional provision, or if "the constitutional claim is . . .

16

1  tenuous," the allegation will not even support a preliminary injunction.  *Id.*  Constitutional

2  allegations already rejected by the Court do not constitute irreparable harm to justify a stay.

3      *Second*, Rimini resorts yet again to its failed assertions that the terms of the injunction are

4  vague and overbroad.  Mot. at 18:24–19:5, 19:27.  But Rimini has objected to the terms of the

5  injunction on numerous occasions (*see* ECF No. 1130 at 22:13–23:28), and, in granting the

6  injunction, the Court necessarily overruled Rimini's objections.  Compliance with an injunction

7  properly tied to Rimini's own infringing conduct is not irreparable harm.

8      *Third*, Rimini argues that Oracle's potential "use" of the injunction in press releases or

9  enforcement actions will irreparably harm Rimini.  *See* Mot. at 19:8–20:12.  This argument is

10  both speculative and meritless.

11      Rimini's accusations about what Oracle *may* do provide no basis for any stay.  Rimini

12  asserts that "Oracle *will surely* interpret [this Court's injunction] as broadly as possible,

13  selectively quote, and use as an anti-competitive weapon to threaten and intimidate Rimini's

14  clients" against Rimini's clients, Mot. at 19:8–9 (emphasis added), and that Oracle may use "the

15  injunction to sow fear, uncertainty, and doubt in the marketplace," *id.* at 19:20–21.  These

16  guesses at what Oracle *may* do, and Rimini's mischaracterization of Oracle's prior press-releases

17  quoting this Court's injunction as a "smear campaign" (*id.* at 19:14), are nothing but speculation.

18  And "[s]peculative injury does not constitute irreparable injury."  *Goldie's Bookstore*, 739 F.2d

19  at 472.  Rimini fails even to attempt to explain how Oracle quoting this Court's orders would

20  "sow" any "fear, uncertainty, or doubt."  There is no doubt:  Rimini has infringed Oracle's

21  copyrights, and is now enjoined from continuing to do so.

22      Rimini asserts "Oracle will attempt to use the injunction to challenge conduct that is

23  currently at issue in *Rimini II*" and will bring "contempt proceedings."  Mot. at 19:23–24; *id.* at

24  20:11.  In other words, Rimini believes that Oracle will act in bad faith, *i.e.*, by seeking to go

25  beyond the clear terms of the injunction if it is not stayed.  But Rimini provides no basis

26  whatsoever for that speculative aspersion.  And Rimini does not even attempt to explain how

27  enforcement of a properly issued injunction could lead to irreparable harm.  All Rimini can do is

28  cite three cases denying injunctions in the face of circumstances vastly different than those

1   present here.  *See id.* at 19:28–20:10.  The prospect that Oracle may enforce its legal rights as

2   determined by this Court cannot support a finding of irreparable harm.  Rimini's circular theory

3   that an allegedly defective injunction will cause harm *because* it is legally defective would entitle

4   *every* party that challenges the legality of an injunction to obtain a stay.

5          *Fourth*, Rimini repeats its argument that the costs it will have to expend "to comply with

6   the injunction" constitute irreparable injury.  Mot. at 20:13–14.  Rejecting this argument, this

7   Court has stated that Rimini's claims "that it will now incur substantial costs in complying with

8   the injunction is not the kind of irreparable harm that warrants a stay."  ECF No. 1094 at 4:6–12

9   (citing *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 5051769, at

10  *2 (S.D.N.Y. Aug. 26, 2015), *aff'd*, 843 F.3d 48 (2d Cir. 2016)).  The Court correctly applied

11  settled law that forbids finding irreparable harm based on compliance costs.  *E.g.*, *Graphic*

12  *Commc'ns Union v. Chi. Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985) ("The fact that an order

13  imposes a cost does not show irreparable harm.").  If the opposite were true, "every order would

14  be deemed to create irreparable harm, and it would be easy to get such orders stayed"—an

15  impermissible result.  *Id.*; *Church & Dwight*, 2015 WL 5051769, at *2 (if costs of compliance

16  justified a stay pending appeal, stays "would become routine, conflicting with the rule that such

17  relief should be 'extraordinary'").

18         Even assuming compliance costs could, in some circumstances, establish irreparable

19  harm, Rimini would have to show that its costs will be "so severe as to cause *extreme hardship*

20  *to the business or threaten its very existence*."  *Sterling Commercial Credit-Michigan, LLC v.*

21  *Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 15 (D.D.C. 2011) (emphasis added); *see ConverDyn v.*

22  *Moniz*, 68 F. Supp. 3d 34, 47 (D.D.C. 2014) (even though "asserted losses, if accurate, would be

23  significant," movant does not state that injunction will "force it out of business or even state with

24  certainty that losses will be significant enough to force the business to operate at a loss").

25         The only evidence Rimini points to for its claim that its compliance costs constitute

26  irreparable harm is the same declaration it relied on last time around:  a conclusory assertion that

27  complying with the injunction will cost between $1 million and $4 million a year.  ECF 1168-4

28  at 1:19–26.  But conclusory assertions regarding these purported costs—without identifying the

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    terms of the injunction that Rimini's current processes violate, which of Rimini's processes will

2    need to be altered, or any details about how these allegedly necessary modification costs were

3    estimated—cannot support a finding of irreparable harm.  *See* ECF No. 1087 at 7:1–11.  Further,

4    the declaration is authored by Mr. Slepko, who may not credibly opine on these matters given his

5    repeated denials of knowledge of the details of Rimini's support processes and his prior

6    statements that have been contradicted by this Court's findings.  *See id.* at 7:12–8:4 (redacted);

7    ECF No. 1089 (under seal).  Moreover, the declaration includes *no claim* that the costs (even if

8    accepted) will lead to extreme hardship or threaten Rimini's existence.  In fact, Rimini admits

9    that the "modifications are *not expected* to adversely impact the ultimate outcomes required by

10   Rimini's clients."  ECF No. 1168-4 (Slepko Decl.) at 1:19–20 (emphasis added).  That dooms

11   this argument.  *Sterling*, 762 F. Supp. 2d at 15 ("plaintiff provides no information whatsoever as

12   to what effect, if any, this purported economic harm will have on its business").

13           And Rimini's own words erase any doubt on this score.  Rimini told its investors in an

14   SEC filing that it would incur additional expenses of no more than 2% of its net revenue to

15   comply with the previous injunction—and the present injunction is even narrower.  Polito Decl.,

16   Ex. 3 (Rimini St., Inc., Annual Report (Form 10-K), at 15 (Mar. 15, 2018)).  Rimini's statements

17   to this Court and the public show its compliance costs will have a *de minimis* effect on Rimini's

18   business, even if its estimated $1 to $4 million in annual costs pending appeal were accurate.

19           Rimini's only other argument is its unsupported claim that it will be unable to recover the

20   $1 to $4 million per year it may spend to comply with this Court's order—but a "serious effect"

21   on the movant's business is required to find irreparable harm even in the face of truly

22   "unrecoverable losses."  *Sterling*, 762 F. Supp. 2d at 16; *see, e.g.*, *LG Elecs., USA, Inc. v. Dep't*

23   *of Energy*, 679 F. Supp. 2d 18, 35–36 (D.D.C. 2010) ("Even assuming" economic damages are

24   unrecoverable, "the financial impact [Rimini] claims it will suffer does not rise to the level of

25   irreparable harm" because it will impact only "a miniscule portion of the company's worldwide

26   revenues").  The effect must be serious, not merely "irretrievable" costs.  *Mylan Pharms., Inc. v.*

27   *Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000); *see* ECF No. 1087 at 5:18 (rebutting ECF No.

28   1079 at 4:19–20).

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    As Oracle has already explained (ECF No. 1087 at 5:19–6:6) and this Court has already

2    implicitly accepted by rejecting Rimini's argument based on increased costs (ECF No. 1094 at

3    3:4–12), the cases Rimini cites do *not* support the claim that unrecoverable losses alone are

4    sufficient to show irreparable harm.  *See Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir.

5    1996) (irreparable harm there included "loss of consumer goodwill"); *Chamber of Commerce of*

6    *U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) (irreparable harm there arose from

7    investigation, "debarment from public contracts," and other liability).  And for good reason: if

8    they did, then almost every injunction would be stayed.

9    Any hardship an infringer suffers in *complying with the law* is far outweighed by the

10   harm to the copyright owner who suffers the infringer's trespass of his rights.  *See Park Vill. Apt.*

11   *Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).  That is

12   particularly true where, as here, the defendant has no legitimate purpose for continuing its

13   unlawful conduct, *Grokster*, 518 F. Supp. 2d at 1220, and has routinely represented that it is no

14   longer engaged in that conduct, ECF No. 1164 at 9:6–7.  If those claims are true, then any

15   hardship associated with compliance should be *de minimis*.  If they are not true, then any harm

16   *Oracle* stands to suffer vastly outweighs Rimini's interest in staying the injunction.

17                  **3.      Oracle Will Be Harmed By Rimini's Infringement if a Stay is Granted**

18   Rimini gives short shrift to the harm that Oracle will suffer from a stay.  Indeed, Rimini

19   repeats the *exact same* arguments it raised to this Court in its prior motion for a stay and its

20   opposition to the injunction for why Oracle will not suffer harm.  *Compare* ECF No. 1168 at

21   21:7–22:25 *with* ECF No. 1069 at 10:1–11:15.  Namely, it argues (1) Rimini has changed its

22   process to cease its infringing conduct, (2) the injunction is "overbroad and unlawful," and (3)

23   Oracle somehow delayed seeking an injunction.  But these copied and pasted merits arguments

24   against the injunction itself have been rejected by this Court, and do nothing to assuage the harm

25   to Oracle if Rimini is permitted to continue infringing Oracle's copyrights.

26   *First*, Rimini falsely asserts that it has presented "*undisputed* evidence" that it no longer

27   infringes.  Mot. at 21:11.  But Rimini admits later in the same paragraph that Oracle alleged

28   "infringement related to the new processes."  *Id.* at 21:21–26.

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    Oracle in fact contends that Rimini is *currently* infringing Oracle's copyrights, and

2    Oracle also has consistently claimed that it is harmed by Rimini's infringement.

3    Rimini also misapprehends and misrepresents the purpose of an injunction.  An

4    injunction is an enforcement mechanism to prevent the enjoined party from continuing its

5    unlawful conduct.  *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009).

6    Rimini cannot immunize its conduct from this Court's order simply by claiming it has developed

7    new, non-infringing business practices.  And injunctions are frequently issued despite

8    discontinued misconduct so it "does not recur as soon as the case ends."  *Grokster*, 518 F. Supp.

9    2d at 1222.  While parties *may* attempt to "disprov[e] the risk of future infringement," Mot. at

10   21:14, Rimini misses the point that it has failed to do so here.  Mere disputed claims that a party

11   has stopped its infringing conduct do not *disprove* any risk of future violation.  Moreover, the

12   pending *Rimini II* litigation does not remove this Court's authority—explicitly recognized by the

13   Ninth Circuit, *Oracle*, 879 F.3d at 964—to enjoin Rimini from continuing to infringe Oracle's

14   copyrights.  This Court has resolved *this* case, and it may enjoin Rimini's infringing conduct.

15   *Second*, and implicitly recognizing the above point, Rimini reveals its true argument for

16   why a stay will not harm Oracle:  the injunction itself is "overbroad and unlawful."  Mot. at 22:5.

17   But as Oracle explained in analyzing the first stay factor—and as this Court concluded in issuing

18   the injunction and rejecting these same arguments (*e.g.*, ECF No. 1130 at 15:19–28)—the

19   injunction is neither unlawful nor overbroad.  So Rimini's argument that Oracle will not be

20   harmed fails, as well.  The Court should reject Rimini's attempt at bootstrapping its (meritless)

21   merits argument to support this *independent* requirement for a stay.

22   *Lastly*, Rimini argues (again) that Oracle's "delay" in seeking an injunction weighs

23   against Oracle.  Mot. at 22:15–25.  The Court has considered and rejected this argument, as well

24   (ECF No. 1069 at 11:4–15; ECF No. 1079 at 7:1–9).  Considering Rimini's past conduct—as

25   determined by the Court and the jury—the risk of ongoing harm to Oracle from Rimini's

26   infringement weighs against a stay.

27       **4.    The Public Interest Favors the Injunction, and It Disfavors a Stay**

28   Rimini's arguments that the public interest favors a stay are without merit.  This Court

21

1   already has determined that "issuing an injunction in this action 'ultimately serves the purpose of

2   enriching the general public through access to creative works' by giving Oracle an incentive to

3   continue to develop software for public use." ECF No. 1164 at 9:11–10:2 (quoting *Kirtsaeng v.*

4   *John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016)). Indeed, "[i]nadequate protections for

5   copyright owners can threaten the very store of knowledge to be accessed." *WPIX, Inc. v. ivi,*

6   *Inc.*, 691 F.3d 275, 287 (2d Cir. 2012). Protection of copyrights is thus "a vindication of the

7   public interest." *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 909 (8th Cir. 2012).

8   Ignoring this Court's proper concern for incentivizing creation of useful works, Rimini cites

9   *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1024 (9th Cir. 2016), which, while

10  generally advising that competition is vital to the public interest, does *not* address competition

11  based on copyright infringement. Mot. at 23:12. Recognizing this, Rimini reverts back to its

12  unfounded argument that the scope of the injunction is too broad and "prohibits conduct far

13  beyond" that which infringes Oracle's copyrights. Mot. at 23:17–27.

14        Rimini's only other argument is that potential contempt proceedings that would result

15  from its violation of this Court's injunction will impose a burden on the judicial system. Mot. at

16  22:28–23:11. But the argument that "there is no reason to burden this Court and its limited

17  resources with contempt proceedings before" the case is finally "resolved on appeal" (Mot. at

18  23:10–11)—if accepted—would justify staying *every injunction* pending appeal. Such a result is

19  prohibited by the reservation of stays for truly "extraordinary" cases. *Shays v. F.E.C.*, 340 F.

20  Supp. 2d 39, 41 (D.D.C. 2004). Enforcing the injunction favors the public interest by serving the

21  goal of the Copyright Act to incentivize the creation of useful works.

22        **D.    The Court Should Enforce The Injunction Immediately**

23        As before (ECF No. 1094 at 4:19–26), Rimini's request for a temporary stay while

24  Rimini seeks a stay from the Ninth Circuit should also be rejected. "[L]ogic dictates that a court

25  will seldom issue an order or judgment and then turn around and grant a stay pending appeal,

26  finding, in part, that the party seeking the stay is likely to prevail on appeal, *i.e.* that it is likely

27  that the court erred in issuing the underlying order or judgment." *Millennium Pipeline Co. v.*

28  *Certain Permanent & Temp. Easements*, 812 F. Supp. 2d 273, 275 (W.D.N.Y. 2011) (alterations

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1  omitted); *see Silverstein v. Penguin Putnam, Inc.*, 2003 WL 21361734, at *3 (S.D.N.Y. June 12,

2  2003) (denying motion to stay permanent injunction where court already "carefully considered"

3  parties' arguments, and "[t]he decision was not arbitrary nor did the court abuse its discretion in

4  entering the injunction").

5      While Rimini asserts that courts routinely grant requests to stay an injunction while the

6  moving party seeks a stay from the appellate court, Mot. at 24:5–8, the law is clear that, where,

7  as here, the movant has failed to satisfy the four-factor *Nken* test, no stay of any length is

8  warranted.  "Because the burden of meeting the standard [for a stay] is a heavy one, more

9  commonly stay requests will be found not to meet the standard and will be denied."  11 Fed.

10  Prac. & Proc. Civ. § 2904 (3d ed.).

11      That any stay pending the Ninth Circuit's consideration of Rimini's stay motion in that

12  Court may be brief does not support Rimini's position.  This Court should not issue a stay at all

13  if the *Nken* factors are not satisfied.  And in fact, the three months Rimini guesses (without

14  support) the Ninth Circuit will take to consider Rimini's motion is *more time* than the sixty days

15  Rimini requested (and this Court rejected) last time around.  ECF No. 1094 at 4:18–26.  In all

16  events, the present motion for stay was filed two days after this Court's order granting the

17  injunction, and Rimini's stated intention to file an emergency motion with the Ninth Circuit

18  means "there is no reason for" this Court to issue a temporary stay.  ECF No. 1094 at 4:23–26.

19      "To allow [a] defendant to continue to profit and benefit from its infringing work would

20  violate the spirit and function of the copyright law."  *Silverstein*, 2003 WL 21361734, at *3.

21  This is especially true where the defendant should be "aware of the risk that its method of

22  business could constitute a violation of the intellectual property laws and the consequences of

23  any such violation."  *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 2007 WL

24  4262725, at *1 (M.D.N.C. Nov. 30, 2007) (denying motion to stay permanent injunction).

25

26

27

28

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1    **III.    CONCLUSION**

2         For these reasons, Oracle respectfully requests that the Court deny Rimini's motion.

3         Dated:   August 30, 2018                  MORGAN, LEWIS & BOCKIUS LLP

4

5                                                   By:        /s/ *John A. Polito*
                                                          John A. Polito
6                                                       Attorney for Plaintiffs
                                                        Oracle USA, Inc.,
7                                                   Oracle America, Inc. and
                                                   Oracle International Corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S OPPOSITION TO EMERGENCY MOTION TO STAY ENFORCEMENT OF
PERMANENT INJUNCTION

1

## CERTIFICATE OF SERVICE

2       I certify that on August 30, 2018, I electronically transmitted the foregoing **ORACLE'S**

3 **OPPOSITION TO RIMINI'S EMERGENCY MOTION TO STAY ENFORCEMENT OF**

4 **PERMANENT INJUNCTION PENDING APPEAL, OR ALTERNATIVELY FOR A**

5 **TEMPORARY STAY** to the Clerk's Office using the Electronic Filing System pursuant to

6 Local Rules Section 1C.

7   Dated:  August 30, 2018                 Morgan, Lewis & Bockius LLP

8

9                              By:              */s/ John A. Polito*

10                                     John A. Polito
                                  Attorney for Plaintiffs

11                                     Oracle USA, Inc.,
                                    Oracle America, Inc. and

12                                     Oracle International Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28