# EXHIBIT 7
# Excerpts of Rimini Street, Inc.'s Quarterly Report for the Period Ending Sept. 30, 2018

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM 10-Q**

(Mark One)

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the Quarterly Period Ended September 30, 2018**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the Transition Period from _____ to _____

Commission File Number: 001-37397

# Rimini Street, Inc.
(Exact Name of Registrant as Specified in its Charter)

| **Delaware** | **36-4880301** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **3993 Howard Hughes Parkway, Suite 500, Las Vegas, NV** | **89169** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code:  **(702) 839-9671**

**Not Applicable**
(Former name or former address, if changed since last report)

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Company was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    YES ☑ NO ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). YES ☑ NO ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, and an emerging growth company. See the definitions of "large accelerated filer", "accelerated filer", "smaller reporting company", and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐          Accelerated filer ☑          Non-accelerated filer ☐

Smaller reporting company ☐          Emerging growth company ☑

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.   ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).    YES ☐ NO ☑

The registrant had 63,580,470 shares of its $0.0001 par value Common Stock outstanding as of November 1, 2018.

**RIMINI STREET, INC.**

**NOTES TO UNAUDITED CONDENSED CONSOLIDATED FINANCIAL STATEMENTS**

Fact discovery with respect to the above action substantially ended by March 2018 to accommodate witness or counsel availability, and expert discovery ended in September 2018. There is currently no trial date scheduled, and we do not expect a trial to occur in this matter earlier than 2021, but the trial could occur earlier or later than that. At this time, we do not have sufficient information regarding possible damages exposure for the counterclaims asserted by Oracle or possible recovery by us in connection with our claims against Oracle. Both parties are seeking injunctive relief in addition to monetary damages in this matter. As a result, an estimate of the range of loss cannot be determined. The Company believes that an award for damages is not probable, so no accrual has been made as of September 30, 2018 and December 31, 2017.

**Other Litigation**

From time to time, the Company may be a party to litigation and subject to claims incident to the ordinary course of business. Although the results of litigation and claims cannot be predicted with certainty, the Company currently believes that the final outcome of these ordinary course matters will not have a material adverse effect on its business. Regardless of the outcome, litigation can have an adverse impact on the Company because of judgment, defense and settlement costs, diversion of management resources and other factors. At each reporting period, the Company evaluates whether or not a potential loss amount or a potential range of loss is probable and reasonably estimable under ASC 450, *Contingencies*. Legal fees are expensed as incurred.

**Insurance Settlement Agreement**

On March 31, 2017, the Company entered into a Settlement Agreement, Release and Policy Buyback Agreement ("Settlement Agreement") with an insurance company that previously provided coverage for the defense costs related to the Oracle litigation referred to as Rimini II. The Settlement Agreement provided for aggregate payments to the Company of $24.0 million and resulted in the termination of coverage under the insurance policies. Prior to execution of the Settlement Agreement, the insurance company reimbursed the Company an aggregate of $4.7 million of defense costs, and pursuant to the settlement executed in March 2017, agreed to make an additional payment to the Company of $19.3 million that was received in April 2017. The Settlement Agreement was initially accounted for by recognizing a deferred insurance settlement liability for $19.3 million. This deferred insurance settlement liability was reduced as legal defense costs related to Rimini II were incurred subsequent to September 30, 2017. Accordingly, the deferred insurance settlement liability was eliminated as of March 31, 2018 due to legal defense costs of $11.2 million incurred for the nine months ended December 31, 2017 and $8.1 million incurred for the three months ended March 31, 2018.

**Subpoena**

On March 2, 2018, the Company received a federal grand jury subpoena, issued from the United States District Court for the Northern District of California, requesting the Company produce certain documents relating to the Company's support for certain software systems and certain related operational practices. The Company is cooperating with this inquiry.

**Liquidated Damages**

The Company enters into agreements with customers that contain provisions related to liquidated damages that would be triggered in the event that the Company is no longer able to provide services to these customers. The maximum cash payments related to these liquidated damages is approximately $24.7 million and $19.6 million as of September 30, 2018 and December 31, 2017, respectively. To date, the Company has not incurred any costs as a result of such provisions and has not accrued any liabilities related to such provisions in these unaudited condensed consolidated financial statements.

***Our ongoing litigation with Oracle presents challenges for growing our business.***

We have experienced challenges growing our business as a result of our ongoing litigation with Oracle. Many of our existing and prospective clients have expressed concerns regarding our ongoing litigation and, in some cases, have been subjected to subpoenas, depositions and various negative communications by Oracle in connection with the litigation. We have experienced in the past, and may continue to experience in the future, volatility and slowness in acquiring new clients, as well as clients not renewing their agreements with us, due to these challenges relating to our ongoing litigation with Oracle. Further, certain of our prospective and existing clients may be subject to additional subpoenas, depositions and negative communications from software vendors. We have taken steps to minimize disruptions to our existing and prospective clients regarding the litigation, but we continue to face challenges growing our business while the litigation remains ongoing. In certain cases, we have agreed to pay certain liquidated damages to our clients if the Company is no longer able to provide services to these clients, and/or reimburse our clients and our former lenders for their reasonable legal fees incurred in connection with any litigation-related subpoenas and depositions or to provide certain client indemnification or termination rights if any outcome of litigation results in our inability to continue providing any of the paid-for services. In addition, we believe the length of our sales cycle is longer than it otherwise would be due to prospective client diligence on possible effects of the Oracle litigation on our business. We cannot assure you that we will continue to overcome the challenges we face as a result of the litigation and continue to renew existing clients or secure new clients.

Additionally, the existence of this ongoing litigation, as well as the federal grand jury inquiry as discussed below initiated in March 2018, could negatively impact the value of our equity securities, could negatively impact our ability to raise additional equity or debt financing by creating challenges to providing satisfactory due diligence to potential investors or lenders to enable the evaluation of risk as well as could necessitate economic terms of any equity or debt financing that are more favorable to investors or lenders than otherwise in the absence of such conditions, in connection with any financing completed by the Company, if at all.

***Oracle has a history of litigation against companies offering alternative support programs for Oracle products, and Oracle could pursue additional litigation with us.***

Oracle has been active in litigating against companies that have offered competing maintenance and support services for their products. For example, in March 2007, Oracle filed a lawsuit against SAP and its wholly-owned subsidiary, TomorrowNow, Inc., a company our Chief Executive Officer, Seth Ravin, joined in 2002, and which was acquired by SAP in 2005. After a jury verdict awarding Oracle $1.3 billion, the parties stipulated to a final judgment of $306 million subject to appeal. After the appeal, the parties settled the case in November 2014 for $356.7 million. In February 2012, Oracle filed suit against Service Key, Inc. and settled the case in October 2013. Oracle also filed suit against CedarCrestone Corporation in September 2012 and settled the case in July 2013. TomorrowNow and CedarCrestone offered maintenance and support for Oracle software products, and Service Key offered maintenance and support for Oracle technology products. Given Oracle's history of litigation against companies offering alternative support programs for Oracle products, we can provide no assurance, regardless of the outcome of our current litigations with Oracle, that Oracle will not pursue additional litigation against us. Such additional litigation could be costly, distract our management team from running our business and reduce client interest and our sales revenue.

***We have received a federal grand jury inquiry directing delivery of certain documents relating to the Company's operations. If such inquiry leads to legal proceedings against the Company or any of its employees or members of its Board of Directors, the Company would incur legal costs and may potentially suffer an adverse outcome negatively affecting our business and financial results.***

On March 2, 2018, we received a subpoena directing us to produce to a federal grand jury certain communications and documents relating to the Company's support for certain software systems and certain related operational practices. We are cooperating with the governmental inquiry but cannot predict its ultimate resolution. Responding to the subpoena has caused us to incur substantial legal costs to date, and we will continue to incur legal costs until this inquiry is complete. A governmental inquiry and any legal proceedings instituted involving us, if any, from such inquiry, would require us to incur further legal costs, and if adversely determined, may ultimately result in the imposition of fines or other penalties. The mere fact of a grand jury inquiry regardless of merit or outcome could have a negative impact on our future revenue, revenue growth, client acquisition and retention, and our prospects to obtain new or alternative financing. Any such resulting material costs and expenses or other penalties could have a material adverse effect on our financial condition and results of operations.

**SIGNATURES**

Pursuant to the requirements of Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**RIMINI STREET, INC.**

| | |
|---|---|
| Date: November 8, 2018 | /s/ Seth A. Ravin |
| | Name: Seth A. Ravin |
| | Title: Chief Executive Officer |
| | (Principal Executive Officer) |
| Date: November 8, 2018 | /s/ Thomas B. Sabol |
| | Name: Thomas B. Sabol |
| | Title: Chief Financial Officer |
| | (Principal Financial and Accounting Officer) |

**EXHIBIT 31.1**

**CERTIFICATION OF PERIODIC REPORT UNDER SECTION 302 OF**
**THE SARBANES-OXLEY ACT OF 2002**

I, Seth A. Ravin, certify that:

1.      I have reviewed this Quarterly Report on Form 10-Q of Rimini Street, Inc.;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and have:

(a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

(a)  All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls over financial reporting.

Date: November 8, 2018

/s/ Seth A. Ravin
Seth A. Ravin
Title: Chief Executive Officer
(Principal Executive Officer)

**EXHIBIT 31.2**

**CERTIFICATION OF PERIODIC REPORT UNDER SECTION 302 OF**
**THE SARBANES-OXLEY ACT OF 2002**

I, Thomas B. Sabol, certify that:

1.      I have reviewed this Quarterly Report on Form 10-Q of Rimini Street, Inc.;

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and have:

        (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

        (b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

        (c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

        (a) All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

        (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls over financial reporting.

Date: November 8, 2018

/s/ Thomas B. Sabol
Thomas B. Sabol
Title: Chief Financial Officer
(Principal Financial and Accounting Officer)

EXHIBIT 32.1

**CERTIFICATION PURSUANT TO
18 U.S.C. 1350
(SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002)**

Pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, I, Seth A. Ravin, Chief Executive Officer of Rimini Street, Inc. (the "Company"), certify, that, to the best of my knowledge:

1. The Quarterly Report on Form 10-Q of the Company for the quarterly period ended September 30, 2018 (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Dated:  November 8, 2018                              By:  /s/ Seth A. Ravin
                                                           Seth A. Ravin
                                                           Title: Chief Executive Officer
                                                           (Principal Executive Officer)

A signed original of this written statement required by Section 906 of the Sarbanes-Oxley Act of 2002 has been provided to the Company and will be retained by the Company and furnished to the Securities and Exchange Commission or its staff upon request.

EXHIBIT 32.2

**CERTIFICATION PURSUANT TO**
**18 U.S.C. 1350**
**(SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002)**

Pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, I, Thomas B. Sabol, Chief Financial Officer of Rimini Street, Inc. (the "Company"), certify, that, to the best of my knowledge:

1. The Quarterly Report on Form 10-Q of the Company for the quarterly period ended September 30, 2018 (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Dated: November 8, 2018        By:  /s/ Thomas B. Sabol
                                    Thomas B. Sabol
                                    Title: Chief Financial Officer
                                    (Principal Financial and Accounting Officer)

A signed original of this written statement required by Section 906 of the Sarbanes-Oxley Act of 2002 has been provided to the Company and will be retained by the Company and furnished to the Securities and Exchange Commission or its staff upon request.