BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (pro hac vice)
KAREN DUNN (pro hac vice)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:    (202) 237-2727
Facsimile:    (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (pro hac vice)
BEKO O. REBLITZ-RICHARDSON
   (pro hac vice)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:    510.874.1000
Facsimile:    510.874.1460
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
JOHN A. POLITO (pro hac vice)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
john.polito@morganlewis.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>          Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION** |

1

## <u>TABLE OF CONTENTS</u>

2   I.      INTRODUCTION ................................................................................................ 1

3   II.     FACTUAL BACKGROUND .............................................................................. 3

4           A.      Rimini's Founding and TomorrowNow .................................................. 3

5           B.      Rimini's Massive Copyright Infringement Adjudicated in *Rimini I* ...................... 4

6           C.      Rimini's History of Lies and Litigation Misconduct ............................. 6

7           D.      This Court Enjoins Rimini's Continued Infringement ........................... 7

8           E.      Rimini's Refusal to Confirm Compliance with the Injunction and Provide

9                   Information Regarding Its Compliance ................................................... 8

10          F.      Rimini's Inconsistent Statements Regarding the Impact of the Injunction Raise

11                  Further Questions Regarding Rimini's Compliance ............................... 9

12  III.    LEGAL STANDARD ....................................................................................... 11

13  IV.     ARGUMENT .................................................................................................... 12

14          A.      Discovery Is Warranted Because Significant Questions Exist Regarding Rimini's

15                  Compliance with the Injunction. .......................................................... 12

16          B.      Oracle Properly Seeks Discovery Focused on Rimini's Noncompliance with the

17                  Injunction. ............................................................................................ 15

18  V.      CONCLUSION ................................................................................................ 15

19

20

21

22

23

24

25

26

27

28

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. to End Repression v. City of Chicago*,
   1992 WL 159495 (N.D. Ill. June 26, 1992) .............................................................11

*Blackberry Limited v. Typo Products LLC*,
   2014 WL 4136586 (N.D. Cal. Aug. 14, 2014)..................................................11, 15

*California Dept. of Social Services v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008)........................................................................ *passim*

*Cardionet, LLC v. Mednet Healthcare Technologies, Inc.*,
   146 F. Supp. 3d 671, 681 (E.D. Pa. 2015) .............................................................11

*John B. v. Goetz*,
   879 F. Supp. 2d 787 (M.D. Tenn. 2010) ................................................................12

*nCube Corp. v. Seachange Intern. Inc.*,
   Nos. 01-11, 09-573, 2010 WL 2266335 (D. Del. June 4, 2010).............................11

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir.), *cert. granted on other grounds*, 139 S. Ct. 52, 201 L.
   Ed. 2d 1130 (2018)........................................................................................ *passim*

*Rutherford v. Baca*,
   2009 WL 10653011 (C.D. Cal. Aug. 4, 2009), *clarified on denial of
   reconsideration*, 2009 WL 10653010 (C.D. Cal. Sept. 22, 2009) ...........................11

*U.S. v. Dist. Council of N.Y. City*,
   618 F. Supp. 2d 326 (S.D.N.Y. 2009)....................................................................12

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1

**NOTICE OF MOTION AND MOTION**

2
3
4
5
6
7
8

Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation (together, "Oracle") will and hereby do move the Court to permit discovery regarding defendant Rimini Street, Inc.'s ("Rimini") compliance with the Court's injunction (ECF No. 1166). This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities incorporated herein; the supporting Declaration of John Polito filed concurrently with this motion; the entire record in this action; matters appropriate for judicial notice; and any evidence or argument presented on reply or at the hearing.

9

**MEMORANDUM OF POINTS AND AUTHORITIES**

10

**I.     INTRODUCTION**

11
12
13
14
15
16
17
18
19
20
21
22

Rimini has refused to confirm that it is in compliance with this Court's injunction, and indeed, has asserted it does not even understand how to comply with the injunction. Accordingly, Oracle respectfully seeks the Court's permission to conduct discovery regarding Rimini's compliance. The Ninth Circuit has stated that a request for discovery "should be granted" where there are "significant questions regarding noncompliance" with a court order. *California Dept. of Social Services v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008). A post-judgment discovery request is akin to requesting discovery to oppose a summary judgment motion, which courts grant liberally. *Id.* Significant questions exist in this case based on, and without limitation, Rimini's refusal to provide Oracle with information regarding its compliance, its statement that it is only complying with the injunction in part, Rimini's inconsistent statements regarding the implications of the injunction on Rimini's support practices, and Rimini's long history of unlawful acts and litigation misconduct.

23
24
25
26

The Court's permanent injunction became effective on November 6, 2018. That injunction requires Rimini to refrain from engaging in certain practices, such as copying certain Oracle software to locations other than a specific licensee's own computer systems or for purposes other than to support the specific licensee's own internal data processing operations.

27
28

Since the injunction became effective, Rimini has refused to provide Oracle with information demonstrating its compliance. After exchanging letters regarding Rimini's

1

1   compliance, Rimini ultimately stated that the Court's injunction is "vague, unlawful, and

2   otherwise legally defective" and claimed compliance with the terms of the injunction only

3   "insofar as they are comprehensible and within the scope of the judgment in *Rimini I*." Rimini's

4   statement raises grave concerns regarding its compliance with the terms of the injunction, as

5   Rimini is claiming that it does not even understand what the injunction requires, and Rimini

6   repeats the position – rejected by both this Court and the Ninth Circuit – that the injunction's

7   terms are limited to Rimini's interpretation of the judgment in this case. Equally troubling, Rimini

8   has repeatedly refused to state whether it has stopped the specific practices that the injunction

9   prohibits.

10         Rimini also has made inconsistent statements regarding the injunction's impact. Seeking

11  to stay the injunction, Rimini initially asserted that the injunction would force Rimini to make

12  changes, causing Rimini irreparable harm. After the injunction became effective, Rimini said the

13  injunction was "moot" because Rimini made the necessary changes in 2014. Creating still further

14  doubt about compliance, Rimini CEO, Seth Ravin, told investors that Rimini made unspecified

15  changes to its processes, but that the changes would have no significant impact on Rimini. More

16  recently, in briefing in the Ninth Circuit, Rimini asserted that the injunction is impermissibly

17  vague and characterized cross-use as a "made-up idea" that was "uncritically adopted" by this

18  Court. (Rimini failed to mention that its trial counsel provided a definition of cross-use to the jury

19  in closing argument.) These inconsistent Rimini statements and disrespect for the Court strongly

20  suggest that Rimini is not complying with the injunction.

21         These concerns are amplified by Rimini's long history of misconduct and dishonesty.

22  Rimini's CEO founded the company by copying the business model of a criminal infringer, and

23  since its founding, Rimini "was built entirely on its infringement of Oracle's copyrighted

24  software." ECF No. 1164 at 6. In an earlier litigation with Oracle, this Court held Mr. Ravin in

25  contempt. Mr. Ravin would later breezily characterize this contempt finding as a "negotiation"

26  with the Court. This Court also sanctioned Rimini for destroying evidence, and the Court noted

27  the objectively unreasonable positions Rimini has taken regarding its practices, denying for years

28  before trial that it engaged in cross-use but then admitting that it did that "all the time." As a

2

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

result of Rimini's "litigation misconduct," this Court awarded attorneys' fees to Oracle.

With this motion, Oracle submits nine document requests and ten interrogatories that it wishes to serve on Rimini, which are narrowly tailored and designed to quickly and efficiently determine Rimini's compliance with the injunction. To streamline this discovery, Oracle will also separately file a motion in the second action ("*Rimini II*") seeking permission to use the discovery obtained in that action in connection with any enforcement proceedings in this action. The discovery in *Rimini II* sheds light on how Rimini is currently conducting its business. There is no reason why the same parties before the same Court should be unable to use this discovery; yet, Rimini refused to stipulate to modify the *Rimini II* protective order.

Litigants in federal proceedings typically seek to avoid contempt, avoid spoliating evidence, and avoid litigation misconduct, but Rimini is not a typical litigant. A publicly traded company's compliance with a federal permanent injunction is a serious matter, not some "negotiation" with the Court. Rimini's cavalier attitude toward this Court's injunction raises troubling questions that warrant discovery.

## II.   FACTUAL BACKGROUND

### A.   Rimini's Founding and TomorrowNow

Rimini's history of infringement began with its CEO, Seth Ravin, at his prior company, TomorrowNow, where he was a "cofounder of TomorrowNow support services" and served as President and Chief Operating Officer. Polito Decl., Ex.1 at 411:15-19; *id.*, Ex. 2 at 11; *id.*, Ex. 3 at 11. TomorrowNow pled guilty to infringement of Oracle's copyrights in a criminal case and paid more than $300 million dollars to Oracle in a civil infringement case resulting from conduct that was central to the support model that Mr. Ravin created. ECF No. 790 at 410:15-411:12.

When he testified in the TomorrowNow matter, Ravin stated that, during his time at TomorrowNow, he knew it was common for TomorrowNow to have Oracle software on its systems and that it was standard for TomorrowNow to use those local software copies to develop fixes and updates. *Id.*, Ex. 4 at 35:17-37:12; 41:13-18, 110:2-111:15. Those infringing local software copies were part of the reason TomorrowNow stipulated to both civil and criminal liability for copyright infringement. *Id.*, Ex. 5 (*Oracle USA, Inc. v. SAP AG*, N.D. Cal. Case No.

3

07-CV-1658, ECF No. 911) ¶¶ 15-16 (fact stipulation stating that, e.g., "TN made at least 6,189 Copies. Each such copy constituted an infringement . . . ."); *id.*, Ex. 6 at 2-5 (TomorrowNow criminal plea stating its "employees made at least 6,189 'environment' copies of Oracle's PeopleSoft software").[1]

Mr. Ravin designed Rimini's and TomorrowNow's business models to be the same. He "designed the TomorrowNow service," and Rimini's model "hasn't changed much from what I put together at TomorrowNow." Polito Decl., Ex. 8 at 3. TomorrowNow, like Rimini, obtained copies of Oracle's software from its customers. *Id.*, Ex. 4 at 35:17-24; *see also id.* at 44:2-45:17. And both companies then used those Oracle software environments for their tax and regulatory update process. *Id.*, Ex. 9 at 325:8-16. When TomorrowNow shuttered its doors because its business model was unlawful, Ravin viewed this development as a business opportunity for Rimini, hiring former TomorrowNow employees and seeking business from former TomorrowNow customers.[2]

## B.      Rimini's Massive Copyright Infringement Adjudicated in *Rimini I*

Beginning from its launch in 2005, Rimini copied massive amounts of Oracle software and support materials, without ever obtaining any license from Oracle. Rimini possessed "thousands and thousands" of copies of Oracle software on Rimini's servers. ECF No. 785 at 165:12-16 (Davis); ECF No. 790 at 302:3-4 (Ravin); ECF No. 792 at 551:10-18 (Ravin). Rimini was adjudicated to have infringed Oracle's copyrights by making and distributing unauthorized copies of and derivative works based upon Oracle's software. ECF No. 401; ECF No. 599 (stipulations); ECF No. 880 (final jury instructions), Jury Instruction 24; ECF No. 896 (verdict).

Rimini also infringed Oracle's copyrights by engaging in what Oracle, Rimini's own

---

[1] Like TomorrowNow before it, Rimini is under criminal investigation by the Department of Justice. Polito Decl., Ex .7.

[2] At least the following Rimini employees (in addition to Mr. Ravin) previously worked at TomorrowNow: Brian Slepko, Polito Decl., Ex.10 at 6:16-7:2; Michael Davichick, *id.*, Ex. 11 at 7:12-17, 15:20-16:4, 16:21-23, 17:2-12; Beth Lester, *id.*, Ex. 12 at 187:24-25; George Lester, ECF No. 815 at 1582:9-1583:10; Doug Baron, ECF No. 804 at 1221:11-24; Krista Williams, Polito Decl., Ex. 13 at 7:11-8:7; Rick Frank, *id.*, Ex. 14 at 41:21-42:3; and Manjula Hosalli, *id.*, Ex. 15 at 7:3-11.

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

counsel, this Court, and the Ninth Circuit repeatedly referred to as "cross-use." Rimini's unlicensed and unlawful cross-use included its use of Oracle software environments associated with one customer to create updates and fixes for multiple other Rimini customers. ECF No. 790 at 320:2-7; ECF No. 785 at 202:18-203:3, 204:2-205:10; Polito Decl., Ex. 16. Mr. Ravin admitted at trial that Rimini engaged in this cross-use "all the time" by taking an Oracle software update or fix that Rimini created for one customer and using it for and distributing it to other Rimini customers. ECF No. 792 at 552:1-552:5; ECF No. 794 at 809:19-810:13; ECF No. 840 at 2232:2-2233:23 (Benge); ECF No. 1164 at 14 ("at trial, defendant Ravin testified for the first time that Rimini Street did in fact engage in cross-use and other conduct which constitutes copyright infringement"). Rimini also engaged in unlawful cross-use by using Oracle software licensed to one Rimini customer to troubleshoot issues for other Rimini customers. ECF No. 790 at 367:18-23 (Ravin); ECF No. 822 at 2043:22-2044:21 (Blackmarr).

Based on the broad scope and nature of Rimini's copyright infringement, the Court concluded that Rimini's business model "was built entirely on its infringement of Oracle's copyrighted software." ECF No. 1164 at 6. The Court found that Rimini "would not have achieved its current market share and exceptional revenue growth without its infringing conduct." *Id.* Rimini was only able to offer its cut-rate prices "because its copyright infringement allowed it to offer support services without licensing the ninety-three different copyrighted software products from Oracle or having to expend significant resources in time and money in developing its own competing software." *Id.* at 6-7.

The Ninth Circuit affirmed the copyright infringement judgment in full. *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 964 (9th Cir.), *cert. granted on other grounds*, 139 S. Ct. 52, 201 L. Ed. 2d 1130 (2018). That opinion includes a straightforward and unambiguous discussion of what constitutes impermissible cross-use, stating: "Any work that Rimini performs under color of a license held by a customer for other existing customers cannot be considered work in support of that particular customer." *Id.* at 957. With respect to Rimini's copying of Oracle's PeopleSoft software, the Ninth Circuit affirmed "the district court's conclusion that the Rimini servers where the copying took place were 'outside the control of the [customers]'" and that Rimini's copying

5

1  therefore violated the licenses. *Id.* at 959-60 (alteration in original).

2       **C.**    **Rimini's History of Lies and Litigation Misconduct**

3       In addition to its proven copyright infringement, Rimini has a long-documented history of

4  litigation misconduct, obfuscation and illegitimate denial of its infringing activities. Rimini's

5  litigation misconduct began even before this litigation, when Oracle subpoenaed Mr. Ravin and

6  Rimini as third parties during discovery in Oracle's lawsuit against TomorrowNow. Mr. Ravin

7  and Rimini refused to comply, presumably so they could avoid or delay discovery of their theft of

8  Oracle's intellectual property for as long as possible. Polito Decl., Ex. 17 (*Oracle USA, Inc. v.*

9  *SAP AG*, No. 2:09-CV-01591, ECF No. 49). Mr. Ravin's defiance of this Court's Order did not

10  stop there, as he appealed the contempt ruling, but ultimately dropped that appeal. Mr. Ravin

11  would later describe his being held in contempt as "a negotiation between us, Oracle, and the

12  judge." ECF No. 792 at 544:7-19.

13       Rimini engaged in misconduct in this litigation on multiple fronts. For example, Rimini's

14  massive unlicensed copying and cross-use of Oracle's software for the benefit of multiple Rimini

15  clients was heavily disputed by Rimini before trial.[3] Rimini's Answer to Oracle's initial

16  Complaint set forth in detail an entirely fictitious development process, involving purported

17  "silos" that kept customer software separate, and involving the avoidance of cross-use by

18  developing a separate fix or update for each customer.[4] Multiple Rimini senior executives

19  repeated this lie during their depositions, denying ever using one customer's environment to

20  develop or test updates for other customers. ECF No. 794 at 804:25-805:5 (Ravin); 3173:1-

21  3174:3 (Slepko). Ultimately, however, the truth came out during discovery, and Ravin blithely

22  contradicted his prior sworn testimony, stating at trial that cross-use occurred "all the time." ECF

23  No. 792 at 552:1-13; ECF No. 1164 at 14. Rimini also maintained in its Answer and throughout

24  discovery that a software library never existed at Rimini Street. ECF No. 30 ¶ 34 (denying

---

25  [3] Rimini stated in a March 29, 2010 press release that Rimini had filed its answer "showing

26  Rimini Street's business processes and procedures are entirely legal and vehemently denying Oracle's false and malicious allegations." Polito Decl., Ex. 18.

27  [4] It is telling that Rimini was able, in 2010, to describe a process (that it never followed) that was designed to avoid liability for cross-use, but nine years later, Rimini now claims that it does not

28  even understand what cross-use is.

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

existence of software library); ECF No. 153 ¶ 34 (same). Before trial, the Court sanctioned

Rimini for the deliberate destruction of its collection of Oracle software – which was referred to

internally at Rimini Street as the "software library" – technical evidence that was relevant to

Rimini's infringing business practices. ECF No. 466.

As this Court ruled previously, Rimini's "position that it did not engage in copyright

infringement of Oracle's software copyrights was not an objectively reasonable position to take in

this litigation." ECF No. 1164 at 14-15. The Court held that Rimini's claim that its actions were

non-infringing was based on "a clear misreading of Oracle's software licensing agreements and a

conscious disregard for the manner that Rimini Street used and housed the copyrighted software

programs on its own servers." *Id.* Rimini has a history of falsely claiming that its business

services do not involve cross-use, as the Court recognized in holding that:

> throughout over five and one half years of this litigation, literally
> until trial, Rimini Street contended that it had not engaged in any
> conduct which could be considered copyright infringement, and, in
> particular, did not engage in cross-use of the copyrighted software
> and only used certain versions of the copyrighted software for
> archival purposes and disaster-related testing. In fact, it was on
> Rimini Street's assertions through various affidavits and deposition
> testimony submitted at summary judgment that the court denied
> portions of Oracle's motion for summary judgment on its copyright
> infringement claim and let these issues go to trial. ***However, at
> trial, defendant Ravin testified for the first time that Rimini Street
> did in fact engage in cross-use and other conduct which
> constitutes copyright infringement***, but did so innocently and
> without knowledge that Rimini Street was acting improperly. This
> was a direct and major alteration, effectively a sea change, in
> Rimini Street's copyright defense throughout the litigation to that
> time and needlessly caused extensive investigation, discovery and
> expense to Oracle.

*Id.* (emphasis added). The Ninth Circuit also recognized this Court's "understandable frustration"

with Rimini's "litigation conduct." *Oracle USA, Inc.*, 879 F.3d at 964.

**D.     This Court Enjoins Rimini's Continued Infringement**

Oracle moved for a permanent injunction on October 21, 2015. ECF No. 900. The Court

granted Oracle's motion on September 21, 2016, ECF No. 1049, and entered an injunction on

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

October 11, 2016, ECF No. 1065. That injunction was in effect for a time in 2016, before the Ninth Circuit stayed enforcement pending Rimini's appeal. After vacating the judgment against Rimini as to Oracle's state computer law claims, the Ninth Circuit remanded for reconsideration of "an injunction as to the copyright claims alone." *Oracle USA*, 879 F.3d at 964.

Oracle filed its renewed motion for a permanent injunction on March 21, 2018, ECF No. 1117, and the Court granted Oracle's renewed motion and entered judgment on August 14, 2018 (ECF Nos. 1164 & 1165) and entered the injunction on August 15, 2018 (ECF No. 1166). The Court entered a temporary, 60-day stay of the injunction on September 11, 2018 to allow Rimini to request a stay pending appeal. ECF No. 1177.

Rimini then sought a stay from the Ninth Circuit pending Rimini's appeal, arguing that the injunction is unlawful because it exceeds the scope of the conduct adjudicated in *Rimini I* (*Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF No. 4-1 (9th Cir. Sept. 14, 2018) at 12-13), is based on prior infringing processes that Rimini has since revised (*id.* at 14-15), and is unconstitutionally vague (*id.* at 16-17). On November 5, 2018, the Ninth Circuit denied Rimini's request to stay the injunction pending appeal. *Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF. No. 11 (9th Cir. Nov. 5, 2018). The injunction therefore became effective as of November 6, 2018.

The injunction requires Rimini to provide notice of the injunction to all its employees, agents, and subsidiaries, and places restrictions on Rimini's ability to reproduce, prepare derivative works from, and distribute Oracle's PeopleSoft, JD Edwards, Siebel, and Oracle Database software. ECF No. 1166.

**E.      Rimini's Refusal to Confirm Compliance with the Injunction and Provide Information Regarding Its Compliance**

On January 2, 2019, Oracle sent a letter to Rimini seeking to confirm Rimini's compliance with the injunction and obtain information regarding Rimini's actions and processes after the injunction became effective. Polito Decl., Ex. 19. Oracle requested that Rimini (1) provide a copy of the notice that Rimini had provided to its employees and agents in compliance with Paragraph

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1 of the Injunction, (2) describe all steps that Rimini has taken to comply with the injunction, and

(3) confirm that Rimini has ceased detailed specific practices that Rimini engaged in that would

violate the injunction. *Id.*

On January 23, 2019, Rimini sent a letter that did not confirm compliance with the Court's

injunction or provide any of the requested information. *Id.*, Ex. 20. Rimini did not provide Oracle

with the Court-ordered notice to Rimini's employees regarding the injunction. Rimini did not

identify a single change it had made to its processes to comply with the injunction. Rimini

declined to provide an answer to any of Oracle's requests, instead attempting to engage in

dilatory tactics on issues unrelated to Rimini's compliance with the injunction, feigning confusion

regarding the injunction and requesting additional information.

On January 31, 2019, Oracle sent a follow up letter identifying, at Rimini's request, the

specific provisions of the injunction at issue with the listed practices and providing additional

information. *Id.*, Ex.21. Oracle once again asked Rimini to provide specific information,

including whether Rimini had stopped certain practices. *Id.*

On February 7, 2019, Rimini responded by asserting that the Court's injunction is "vague,

unlawful, and otherwise legally defective" and claiming compliance with the terms of the

injunction only "insofar as they are comprehensible and within the scope of the judgment in

*Rimini I.*" *Id.*, Ex. 22. Rimini once again refused to state whether it has stopped the specific

practices identified by Oracle, instead seeking further delay. *Id.*

**F.      Rimini's Inconsistent Statements Regarding the Impact of the Injunction Raise Further Questions Regarding Rimini's Compliance**

In opposing Oracle's motions for permanent injunctive relief and seeking to stay the

injunctions, Rimini decried the business expense and inconvenience the injunction would cause.

ECF Nos. 905 at 2 (claiming the injunction would cause Rimini "significant harm"), 1130 at 16

(claiming that Oracle's proposed injunction "would severely harm Rimini"), 1168 at 20 (claiming

"irreparable harm" if Rimini were "forced to make additional changes to its business practices in

order to comply"). The Court noted that these Rimini claims of harm from the injunction were at

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1  odds with Rimini's repeated representations to the Court "that it has changed its business model

2  and support services away from the conduct ultimately held to constitute copyright infringement."

3  ECF No. 1164 at 9:5-7.

4      Since the Ninth Circuit denied Rimini's request to stay the injunction, Rimini has taken

5  different and inconsistent positions regarding the injunction. On November 9, 2018, Rimini

6  issued a press release stating that the current injunction is "substantially the same" as the "flawed

7  injunction" (entered in 2016), which addressed "former support processes that are no longer in

8  use, and that have not been used since July 2014 at the latest." Polito Decl., Ex. 23.[5] During

9  Rimini's quarterly earnings call on November 12, 2018, Rimini CEO Seth Ravin indicated that

10  Rimini nonetheless needed to make certain changes, and that Rimini would need to "do things

11  more manually because of the injunction being back in place." *Id.*, Ex. 25. Mr. Ravin did not

12  specify what if any changes Rimini made or would make to comply with the injunction, nor did

13  he explain the inconsistency with Rimini's press release.

14      Rimini has also taken inconsistent positions with this Court and the Ninth Circuit and

15  raised questions regarding its compliance by attacking the injunction as vague. While Rimini

16  initially asked this Court to stay the injunction on the basis that it would "be forced to make

17  additional changes to its business practices in order to comply" (ECF No. 1168 at 27), Rimini

18  then represented to the Ninth Circuit that Oracle's "request for injunctive relief is ***moot*** because

19  the acts adjudicated as infringing stopped in 2014." *Oracle USA, Inc., et al. v. Rimini Street, Inc.*,

20  No. 18-16554, ECF. No. 12 (9th Cir. Nov. 26, 2018) at 1 (emphasis added). Attacking the terms

21  of the injunction, Rimini told the Ninth Circuit that cross-use was a "made-up idea" and that

22  Oracle "foisted this injunction language on the district court, which uncritically accepted it." *Id.* at

23  1, 35. Further casting doubt on Rimini's compliance with the injunction, Rimini also told the

24  Ninth Circuit that the Court's injunction fails to "provide fair notice of what conduct is

25  
26  [5] In a September 2016 press release (issued the day after the Court issued the original permanent injunction, prior to Rimini's 2016 appeal to the Ninth Circuit), Rimini stated that "[s]ince Rimini

27  Street had ceased said conduct by July 2014, there is no expected impact [from the injunction] on any current or future service offering, or on Rimini Street's current or future ability to service any

28  of its clients." Polito Decl., Ex. 24.

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1  proscribed." *Id.* at 1.

2  **III.   LEGAL STANDARD**

3          The Court has the power to allow discovery in aid of enforcement of its injunctions.

4  *Leavitt*, 523 F.3d at 1033-36 (remanding for merits consideration a request for discovery to

5  ensure compliance with judgment after trial court had implicitly denied request for discovery in

6  case regarding agencies' compliance with foster care benefits eligibility standards). Granting a

7  request for "limited discovery to aid the court in determining whether [a defendant] had complied

8  with a judgment" is part of a court's inherent power to enforce compliance of its orders. *Id.* at

9  1033 (collecting cases). A "district court should give careful attention to a request for discovery

10 to establish noncompliance with one of its judgments." *Id.* The threshold level of evidence needed

11 to justify such discovery is "considerably less than that needed to show actual noncompliance."

12 *Id.* at 1034. So long as "significant questions regarding noncompliance have been raised,

13 appropriate discovery should be granted." *Id.* A post-judgment discovery request is akin to

14 requesting discovery to oppose a summary judgment motion, which courts grant liberally. *Id.*

15         Following the Ninth Circuit's holding in *Leavitt*, courts have routinely granted requests

16 for discovery in aid of enforcement when presented with indications that a party may not be in

17 compliance with an injunction. *Rutherford v. Baca*, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4,

18 2009) (quotation marks omitted), *clarified on denial of reconsideration*, 2009 WL 10653010

19 (C.D. Cal. Sept. 22, 2009); *see also, e.g.*, *Cardionet, LLC v. Mednet Healthcare Technologies,

20 Inc.*, 146 F. Supp. 3d 671, 681 (E.D. Pa. 2015) (granting post-judgment discovery concerning

21 noncompliance with consent judgement); *nCube Corp. v. Seachange Intern. Inc.*, Nos. 01-11, 09-

22 573, 2010 WL 2266335, at *3 (D. Del. June 4, 2010) (ordering post-judgment discovery

23 concerning noncompliance with permanent injunction). Courts should also grant discovery where,

24 "without [it], plaintiffs will not be able to determine whether the [enjoined party] has complied

25 with the court's injunctions." *Blackberry Limited v. Typo Products LLC*, 2014 WL 4136586

26 (N.D. Cal. Aug. 14, 2014) (granting discovery concerning noncompliance with preliminary

27 injunction).

28         "Courts have consistently held that the scope of post-judgment discovery is broad," and

11

that the "discovery sought need only be relevant to the proceedings, or likely to lead to the

discovery of relevant evidence." *All. to End Repression v. City of Chicago*, 1992 WL 159495, at

\*3 (N.D. Ill. June 26, 1992) (applying Rule 26 standard for pre-trial discovery in the post-

judgement context); *U.S. v. Dist. Council of N.Y. City*, 618 F. Supp. 2d 326, 329 (S.D.N.Y. 2009)

(same); *John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010) (same).

## IV.   ARGUMENT

### A.   Discovery Is Warranted Because Significant Questions Exist Regarding Rimini's Compliance with the Injunction.

The circumstances here far exceed the standard set by the Ninth Circuit for assessing

whether to permit compliance-focused discovery. Rimini's (1) failure to categorically state its

compliance with the injunction or provide information about its compliance; (2) problematic

conclusory assertion that it is in compliance with the injunction, even though Rimini claims it

does not even understand what conduct is prohibited; (3) inconsistent statements about the Rimini

support process changes required by the injunction; and (4) historical dependence on

infringement and litigation misconduct designed to hide the infringement all raise significant

questions regarding Rimini's compliance with the injunction that warrant discovery. *Leavitt*, 523

F.3d at 1034.

First, Rimini has refused to unambiguously state its compliance with the injunction or

provide Oracle with information regarding its compliance. Rimini has not provided Oracle with

the Court-ordered notice it was required to provide to its employees and others. ECF No. 166 ¶ 1

(requiring Rimini to provide notice of injunction). Rimini has refused to provide any information

regarding what steps it has taken to comply with the injunction. The only thing Rimini has

provided is a conclusory statement that it is in compliance. The injunction would have no force if

compliance merely required the shibboleth: "I'm complying."

Second, in response to Oracle's requests to state its compliance, Rimini responded that it

is complying only with the terms that it deems "comprehensible and within the scope of the

judgment in *Rimini I*." Polito Decl., Ex. 22. And rather than confirm that it has stopped specific

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

practices prohibited by the injunction, Rimini challenges the legality of the injunction, stating that it is "vague, unlawful, and otherwise legally defective" and arguing that Oracle seeks to adjudicate "the issues in dispute in *Rimini II*" contrary to Oracle's position when it was seeking an injunction. *Id.* at 1-2. Rimini raised these very points in its failed motion to stay the injunction (*Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF. No. 4-1 (9th Cir. Sep. 14, 2018) at 12-17), and apparently, Rimini is unilaterally seeking to impose the limitations the Ninth Circuit rejected. Nor is Oracle seeking to adjudicate *Rimini II* issues in relation to the *Rimini I* injunction. Regardless of any issues in *Rimini II*, the injunction prohibits certain Rimini business practices right now, and the only issue is whether Rimini is engaging in those practices in violation of the injunction.[6] Rimini's insistence on questioning the basis for the injunction that both this Court and the Ninth Circuit declined to stay, along with Rimini's refusal to provide information regarding any specific changes it made to its processes in response to the injunction, establish a "strong case for further discovery" regarding Rimini's injunction compliance. *Leavitt*, 523 F.3d at 1036; *see also id.* at 1034 (lack of data demonstrating compliance "when *some* information should have been available or obtainable is itself indicative of possible noncompliance with the injunction") (emphasis in original).

Third, Rimini's shifting, contradictory statements regarding the impact of the injunction also raise significant questions regarding Rimini's compliance. As the Court observed, Rimini first maintained that it stopped its infringing support practices by July 2014. ECF No. 1164 at 9:5-7. Then, when faced with the prospect of an injunction, Rimini began telling the Court that

---

[6] Rimini asserts in its February 7 letter that Oracle's "claim that Rimini's use of AFW is prohibited by the injunction" is somehow evidence that Oracle is attempting to adjudicate *Rimini II* issues by means of the *Rimini I* injunction because the legality of Rimini's AFW ("automated framework") process was not litigated in *Rimini I*. In fact, the specific practices with respect to AFW that Oracle asked Rimini to confirm have ceased ("Developing a PeopleSoft software update for one Rimini customer and then replicating that update via AFW to multiple Rimini customers" and "Developing a PeopleSoft software update for one Rimini customer and then sending instructions for how to replicate that update via AFW to multiple Rimini customers") are precisely the kind of cross-use adjudicated in *Rimini I* and prohibited by the injunction, as explained in Oracle's January 31, 2019 letter. Polito Decl., Exs. 21 & 22. Consistent with the Ninth Circuit's denial of Rimini's motion to stay, the pending *Rimini II* litigation provides no basis for Rimini to disregard the Court's *Rimini I* injunction.

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

the injunction "would severely harm Rimini." ECF No. 1130 at 16; *see also* ECF Nos. 905 at 2, 1130 at 16, 1168 at 20. Rimini has since made contradictory statements regarding the effect of the injunction, varying its message based on the audience and the desired effect. Rimini told the Ninth Circuit that the injunction is "moot" because it already made changes in 2014. *Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF. No. 12 (9th Cir. Nov. 26, 2018) at 1. Rimini told the public in press releases that the injunction does not "limit" or "restrict" Rimini's services, while also telling its investors that the injunction would require minimal changes to Rimini's support practices. Polito Decl., Ex. 23; *id.*, Ex. 25. In addition to its statements that (1) no changes are required because it has already complied, (2) complying with the injunction would severely damage Rimini, and (3) compliance would require minimal changes, Rimini has tried a fourth tack, suggesting that it cannot comply with the injunction because the terms are "vague" and cross-use is just a "made-up idea" that this Court "uncritically adopted" (*Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF. No. 12 (9th Cir. Nov. 26, 2018) at 1, 35).[7] Rimini's shifting and conflicting statements raise significant questions regarding its compliance, and Rimini's statements about its inability to interpret the Court's injunction suggest a "fundamental misunderstanding" of the injunction which "is itself suggestive of noncompliance, and could thus provide an additional basis" for the requested discovery. *Leavitt*, 523 F.3d at 1035.

Fourth, permitting discovery regarding Rimini's compliance with the injunction is especially important given Rimini's long history of lies and unlawful conduct. Beginning with Rimini's refusal to comply with a subpoena in the TomorrowNow litigation and continuing with Rimini's spoliation of evidence, Ravin's lying under oath, and Rimini's "significant litigation misconduct in this action," (ECF No. 1164 at 14:17-18), Rimini has repeatedly demonstrated its willingness to ignore the law and do whatever it took to avoid discovery of its infringement – and this Court found that Rimini's business "was built entirely on infringement" (*id.* at 6). Rimini's

---

[7] There is no ambiguity regarding the enjoined conduct, including with respect to cross-use. Both this Court and the Ninth Circuit explained cross-use plainly. *Oracle*, 879 F.3d at 956; ECF No. 474 at 13. Rimini's *trial counsel* provided a definition of "cross-use" to the jury (ECF No. 881 at 3552:13-22), and in 2010, Rimini's Answer described a fictitious development process designed to avoid liability by lying about cross-use (ECF No. 153 at 8:11-25).

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1    conduct is sufficient to raise significant questions regarding Rimini's compliance with the Court's

2    injunction.

3         **B.**     **Oracle Properly Seeks Discovery Focused on Rimini's Noncompliance with**
                 **the Injunction.**

4

5         The discovery Oracle seeks is reasonable. With this motion, Oracle submits nine

6    document requests and ten interrogatories that it is prepared to serve on Rimini immediately.

7    Polito Decl., Exs. 26 & 27. The discovery requests are narrowly tailored, focusing on Rimini's

8    compliance with the injunction. Depending on Rimini's responses to those discovery requests,

9    Oracle may seek a limited number of depositions and may wish to serve some additional written

10   discovery. Consistent with the Ninth Circuit's decision in *Leavitt*, Oracle only seeks "limited

11   discovery to aid the [C]ourt in determining" whether Rimini has "complied" with the Court's

12   injunction. 523 F.3d at 1033.

13        To proceed efficiently, Oracle proposes the following limits on the discovery that Oracle

14   may seek regarding Rimini's compliance with the injunction: 15 document requests; 15

15   interrogatories; two Rule 30(b)(6) depositions; four individual depositions; and five third-party

16   document and deposition subpoenas. *Blackberry*, 2014 WL 4136586, at *5 (granting request for

17   specified number of additional depositions and interrogatories, in addition to document requests

18   "relating to potential violations of the preliminary injunction order").

19        To move things forward efficiently, Oracle asks that the Court order Rimini to respond to

20   the initial document requests and interrogatories within 30 days of service and substantially

21   complete production of responsive documents within 60 days of service. Oracle makes these

22   proposals without waiving any right to seek modifications at a later date, if the need arises based

23   on the progress made regarding this discovery.

24   **V.**     **<u>CONCLUSION</u>**

25        For the reasons discussed above, Oracle respectfully requests that the Court grant Oracle's

26   motion to permit discovery as described above.

27

28

15

ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1

DATED: February 27, 2019          MORGAN, LEWIS & BOCKIUS LLP

2

3

By:         */s/ John A. Polito*
                    John A. Polito

4

Attorneys for Plaintiffs Oracle USA, Inc., Oracle
America, Inc. and Oracle International Corporation

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on the 27th day of February, 2019, I electronically transmitted the

3   foregoing **ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING**

4   **RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION** to the

5   Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic

6   Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

7                                 MORGAN, LEWIS & BOCKIUS LLP

8   DATED:  February 27, 2019

9                                 By:           */s/ John A. Polito*
                                                  John A. Polito
10

11                                 Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                                   America, Inc. and Oracle International
12                                 Corporation