GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
bevanson@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL G. LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>                    Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>**RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO PERMIT DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION**<br><br>**HEARING REQUESTED** |

Gibson, Dunn & Crutcher LLP

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................1

II.     BACKGROUND ..................................................................3

        A.      Rimini I ......................................................................3

        B.      Oracle Successfully Fights to Keep Process 2.0 Out of Rimini I ....................4

        C.      Trial, the Court's Injunction, and Appeal ...........................................5

        D.      Oracle Claims for the First Time that the Injunction Applies to
                Rimini's Revised Processes at Issue in Rimini II .................................7

        E.      Oracle's Misleading Assertions Regarding Rimini's Discovery Conduct........10

III.    LEGAL STANDARD ...........................................................12

IV.     ARGUMENT ......................................................................12

        A.      Oracle's Motion Violates Local Rule 26-7 ...........................................12

        B.      Oracle Seeks to Use the Injunction to Preempt Rimini II................................14

        C.      Oracle Has Not Offered Any Evidence Raising Significant Questions
                About Rimini's Compliance ....................................................16

        D.      Oracle's Proposed Discovery Requests Are Expansive....................................20

V.      CONCLUSION ....................................................................20

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of N.Y. v. Foothills at MacDonald Ranch Master Ass'n*,
329 F. Supp. 3d 1221 (D. Nev. 2018) ................................................................11

*Cal. Dept. of Soc. Servs. v. Leavitt*,
523 F.3d 1025 (9th Cir. 2008)..........................................................12, 16, 17, 18

*Does v. Trump*,
328 F. Supp. 3d 1185 (W.D. Wash. 2018) ........................................................20

*F.T.C. v. AMG Servs., Inc.*,
2014 WL 6069821 (D. Nev. Nov. 13, 2014), *aff'd*, 2015 WL 4073192 (D.
Nev. July 2, 2015)...............................................................................................13

*McNamara v. Hallinan*,
2019 WL 918984 (D. Nev. Feb. 25, 2019) ........................................................13

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................................................................................16

*Oracle Am. v. Hewlett Packard Enter. Co.*,
Case No. 3:16-cv-01393, Dkt. No. 516 (N.D. Cal. 2018)..................................11

*Oracle USA, Inc. v. Rimini Street, Inc. (Rimini I)*,
879 F.3d 948 (9th Cir. 2018)...................................................................3, 10, 19

*Oracle v. SAP AG*,
Case No. 2:09-cv-01591 (D. Nev.) .....................................................................10

*Pa. Mfrs.' Ass'n Ins. Co. v. Riccelli Enters., Inc.*,
2015 WL 12582794 (N.D.N.Y. Dec. 9, 2015), *aff'd*, 690 F. App'x 52 (2d
Cir. 2017) ............................................................................................................12

*Price v. City of Stockton*,
390 F.3d 1105 (9th Cir 2004).......................................................................14, 17

*Rutherford v. Baca*,
2009 WL 10653011 (C.D. Cal. Aug. 4, 2009)...................................................12

**Other Authorities**

4 *Nimmer on Copyright*, § 14.06[C][1][a] ..................................................................14, 17

Gibson, Dunn &
Crutcher LLP

ii

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Rules**

LR IA 1-3(f) ..........................................................................................................12

LR IA 1-3(f)(2) ......................................................................................................13

LR IA 1-3(f)(3) ......................................................................................................13

LR 1-1(c) ...............................................................................................................11

LR 26-7 ..............................................................................................................1, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

# I.    INTRODUCTION

Oracle's motion should be denied on multiple grounds.  It violates Local Rule 26-7, which requires that the parties meet and confer on the discovery dispute that is the subject of the motion, and it fails to offer any evidence whatsoever that raises "significant questions" about Rimini's compliance with the injunction.  But most importantly, Oracle has confirmed what Rimini has been accurately predicting—and Oracle has been falsely denying—for years: that Oracle seeks to use the injunction issued in *Rimini I* to prevent Rimini from using its revised support processes ("Process 2.0"), even though Process 2.0 was never adjudicated in *Rimini I* and is instead squarely at issue in *Rimini II*.  Oracle's attempt to circumvent *Rimini II* is most alarming in light of Oracle's previous insistence that Process 2.0 should not be litigated in *Rimini I*.  Indeed, Oracle previously opposed reopening discovery regarding the new processes in this case and objected to Rimini's attempt to consolidate *Rimini I* and *II*, arguing that evidence related to Process 2.0 was "*irrelevant to any liability issue at trial*" in *Rimini I*; this Court agreed with Oracle and ruled that Rimini's new processes would be litigated "solely" in *Rimini II*.  Fidelity to that ruling requires denial of the instant motion.

Each time Oracle moved for a permanent injunction in this case, Rimini argued that it was unnecessary because Rimini had long ago (even before trial) transitioned to Process 2.0, which Rimini supported with evidence that Process 2.0 did not incorporate any of the processes actually adjudicated in *Rimini I* (*i.e.*, locally hosted software environments used to support multiple clients).  *Oracle <u>never</u> rebutted any of that evidence*, despite several rounds of briefing over Oracle's proposed injunction.  And when Rimini warned this Court that Oracle would nevertheless seek to use the injunction it proposed (and that the Court adopted) to attack Process 2.0, Oracle repeatedly told the Court that the injunction was limited to *Rimini I* processes.

Perhaps hoping the Court has forgotten this history, Oracle attempts a brazen bait and switch: after successfully preventing discovery on or litigation of Process 2.0 in *Rimini I*, Oracle now tells the Court that it needs discovery on *exactly those new processes to determine whether Rimini is complying with the Rimini I injunction*.  The Court should not abide

Gibson, Dunn &
Crutcher LLP

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

Oracle's calculated about-face.  Having fought to keep Process 2.0 in *Rimini II* (and out of *Rimini I*), Oracle must now accept the Court's extant order and litigate claims related to those processes in *Rimini II*.  Allowing Oracle to preempt *Rimini II* issues through a *Rimini I* contempt proceeding would render more than four years of litigation in *Rimini II*—including more than 100 depositions, millions of documents of discovery, dozens of expert reports, and seven fully briefed and currently pending summary judgment motions—obsolete, and deprive Rimini of its right to a jury trial on any factual disputes regarding the legality of its Process 2.0.

Oracle also has failed to offer any evidence whatsoever that raises "significant questions" about Rimini's compliance with the injunction.  Instead, Oracle mischaracterizes the parties' discussion of these issues, claims that the mere fact of Rimini's appeal of the injunction is somehow evidence of its failure to comply, and wrongly insists that Rimini has made inconsistent statements about its compliance with the injunction.  Oracle also rehashes, once again, its tired and highly misleading claims about Rimini's supposed litigation misconduct, based on blatant mischaracterizations of the record, and despite the fact that they have absolutely nothing to do with the issues presented in Oracle's motion.

Oracle may also contend in reply that Rimini's switch to Process 2.0 did not really alter Rimini's underlying processes, such that Rimini has never made any real changes to address the Court's liability findings and injunction in *Rimini I*.  This is false.  Rimini spent millions to switch from the local processes at issue in *Rimini I* to a remote model in which every client has its own licensed software environment stored on its own computing resources, and Rimini remotely accesses each environment to provide support services.  These changes were substantial and costly, and indeed, Oracle previously told this Court that Rimini's revised, remote processes were so different from Rimini's prior practices that they were "irrelevant" to Oracle's liability theories in *Rimini I*.  Oracle cannot suddenly switch course now—after trial—and contend that Process 2.0 is the same as Rimini's old processes adjudicated in *Rimini I*.

Gibson, Dunn & Crutcher LLP

1
2
3
4
5
6
7
8
9
10

Moreover, even putting aside the foregoing arguments, all of which doom Oracle's motion, any "injunction compliance" litigation in *Rimini I*, including discovery related thereto, would be premature in light of Rimini's pending challenge to the injunction in the Ninth Circuit, which is set for oral argument in July. If the Ninth Circuit reverses the injunction, no burdensome discovery or contentious litigation over it will be necessary. Given that Rimini no longer engages in the old processes litigated in *Rimini I*, that *Rimini II* (which focuses squarely on Rimini's new processes) is currently pending, and that this Court has already found that Oracle did not suffer any harm from the absence of an injunction, both the Court and the parties would be well-served to defer any discovery until the Ninth Circuit rules.

11

## II.   BACKGROUND

12

### A.   *Rimini I*

13
14
15
16
17
18

Oracle filed this lawsuit against Rimini and its CEO, Seth Ravin, in 2010, alleging numerous causes of action, including copyright infringement, computer hacking, and various tort claims. ECF Nos. 36, 146. Oracle thereafter filed a motion for summary judgment arguing that two aspects of Rimini's support practices for its PeopleSoft clients infringed Oracle's copyrights: what Oracle named "local hosting" and "cross-use." *Oracle USA, Inc. v. Rimini Street, Inc. (Rimini I)*, 879 F.3d 948, 956, 959 (9th Cir. 2018).

19
20
21
22
23
24
25
26
27

"Local hosting" referred to Rimini storing and developing updates and modifications to its clients' licensed Oracle software locally on Rimini's computer systems. *Id*. at 960. And Oracle used the term "cross-use" to refer to "the making of development environments, under color of a license held by one identifiable customer of Rimini, for another identifiable customer of Rimini that also holds a license" or "for licensees who have yet to become customers of Rimini." *Id.* at 956. Oracle also argued that Rimini hosted "generic" environments not associated with a particular client, which it would use to develop updates that would be distributed to clients that held a license to the same software version. *See* ECF No. 246 at 20–21.

28

3

1   In its summary judgment order, this Court found that certain PeopleSoft licenses

2   prohibited Rimini from hosting its clients' licensed environments on its own systems.  ECF

3   No. 474.  The Court also found that it was "undisputed" that Rimini had used one locally

4   hosted generic environment to create software updates for multiple clients.  *Id.* at 13 (relying

5   on evidence that Rimini used locally hosted environment H751DEVO to create an update for

6   multiple clients).

7   After the Court issued its summary judgment ruling, Rimini invested millions of

8   dollars to revise its processes to conform to this Court's order, completing the transition to

9   Process 2.0 by the end of July 2014.  ECF No. 905 at 4–5; ECF No. 1130 at 3–4.  Process 2.0

10   eliminated the processes that were at issue in *Rimini I*.  *See* ECF No. 1134-3.  Under Process

11   2.0, each client (not Rimini) hosts its own, separate, licensed Oracle software environment,

12   and Rimini remotely accesses those clients' environments to provide support.  *See*, *e.g.*, *id.,*

13   Benge Declaration ¶¶ 3, 5 ("Rimini's current support processes for PeopleSoft do not rely on

14   the use of any 'local' PeopleSoft environments or documentation on Rimini's computer

15   systems."; "Instead of using local or cloned copies of PeopleSoft, Rimini's current process

16   involves remotely accessing a Rimini client's PeopleSoft environments that Rimini uses to

17   service that client.").  Rimini introduced this evidence in response to Oracle's motions for a

18   permanent injunction, and Oracle has *never* submitted any contrary evidence.

19   **B.    Oracle Successfully Fights to Keep Process 2.0 Out of *Rimini I***

20   After Rimini revised its support processes and transitioned to Process 2.0, Rimini

21   sought to reopen discovery on the new processes.  ECF No. 490 at 12–20.  Oracle resisted

22   those efforts, arguing that although it believed Rimini's new model was also infringing, it did

23   not believe that issue should be litigated in *Rimini I*—instead, "the Court should limit the trial

24   to Rimini's old support model."  *Id.* at 5–6.  Judge Leen agreed and declined to reopen

25   discovery.  ECF No. 515 at 2–3.

26   Rimini then filed another lawsuit (*Rimini II*), seeking a judicial declaration that

27   Process 2.0 does not infringe Oracle's copyrights.  *Rimini II*, Case No. 2:14-cv-1699, ECF

28   No. 1.  Rimini moved to consolidate the two cases, which Oracle again resisted on the basis

Gibson, Dunn &
Crutcher LLP

4

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

1   that liability for Rimini's new processes was not at issue in *Rimini I*.  ECF No. 594 at 13 and

2   n.6 ("Consolidation would also require consideration of Rimini's new 'remote' support

3   process and a determination of liability as to that process"; "Judge Leen ruled in October 2014

4   that this issue is not part of *Rimini I*.").  The Court denied consolidation.  ECF No. 669 at 5.

5       Oracle also filed a motion in limine to exclude any evidence of Process 2.0 at trial.

6   ECF No. 646.  In that motion, Oracle argued that there was a "clear division between"

7   *Rimini I* and *Rimini II*, that Judge Leen's order denying discovery on Process 2.0 *required*

8   exclusion of evidence about Process 2.0, and that the order was final and unreviewable

9   because Rimini did not appeal.  *Id.* at 4–6.  Oracle further contended that Process 2.0 was

10  "irrelevant" to Oracle's liability theory in *Rimini I*.  *Id.* at 5 ("The legality of the new 2014

11  model will be the subject of Rimini's new lawsuit.  In short, *Rimini's liability related to its*

12  *2014 support model is not at issue in this trial*, and therefore any evidence related to the 2014

13  support model *is irrelevant to any liability issue at trial*." (emphasis added)).  This Court

14  agreed with Oracle and excluded all evidence of Rimini's revised processes from *Rimini I*,

15  ruling that "Rimini's new service support model is not relevant to any claim or issue in

16  [*Rimini I*]" and that all "claims, issues, and evidence related to the new support model [*i.e.*,

17  Process 2.0] are being addressed *solely* in [*Rimini II*]."  ECF No. 723 at 3 (emphasis added).

18  **C.     Trial, the Court's Injunction, and Appeal**

19      *Rimini I* proceeded to trial in September 2015.  The jury found that Rimini's copyright

20  infringement was "innocent," that Oracle was entitled to a fair market value license of

21  $35.6 million, that Rimini's infringement caused Oracle to lose zero dollars in profit, and that

22  the infringement earned Rimini zero dollars in profit.  ECF No. 1134-4 at 4–6.  The jury

23  exonerated Mr. Ravin of all infringement liability, and awarded $14.4 million in damages on

24  Oracle's computer hacking claims.  *See id.* at 2–3, 10–12.

25      After trial—more than five years after filing suit—Oracle moved for injunctive relief

26  for the first time.  ECF No. 900.  In response to Oracle's injunction motion, Rimini argued

27  that Oracle was submitting an intentionally overbroad and vague injunction to try to preempt

28  issues being litigated in *Rimini II*.  ECF No. 906 at 5, 16–19; ECF No. 1069 at 7–8.  Oracle

Gibson, Dunn &
Crutcher LLP

5

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

1   denied that claim in no uncertain terms, telling the Court it was seeking only "an injunction

2   that codifies" the basis of liability in *Rimini I*.   Declaration of Eric D. Vandevelde

3   ("Vandevelde Decl."), Ex. 3 at 143.  This Court entered Oracle's proposed injunction (ECF

4   No. 1065), and denied Rimini's request for a stay (ECF No. 1094).

5         Rimini appealed and sought an emergency stay of the injunction, which the Ninth

6   Circuit granted.  No. 16-16832, Dkt. 26 (9th Cir. Dec. 6, 2016).  After full briefing and oral

7   argument, the Ninth Circuit reversed the hacking verdicts, narrowly affirmed the innocent

8   copyright infringement verdict, reversed the hacking injunction, and vacated the copyright

9   injunction.  879 F.3d at 953–65.  All told, Oracle lost on 23 of its 24 claims.  As to PeopleSoft

10  software, the court upheld liability only "on the narrow ground of 'local hosting'" because the

11  Rimini "servers where the copying took place were 'outside the control'" of the customers.

12  *Id.* at 959–60 & n.6.  As to JD Edwards and Siebel software, the court upheld liability on a

13  limited theory of "cross-use"—that Rimini "created development environments for *future*

14  *customers* using the license of an existing customer on the basis that *future customers*

15  presumably would have licenses that would permit them to hire Rimini to create development

16  environments."  *Id.* at 957 (emphases added); *see also id.* at 958.  The Ninth Circuit affirmed

17  liability as to Database software only on limited waiver grounds.  *Id.* at 953 n.2, 960.  After

18  reversing the hacking injunction outright, the panel separately vacated the copyright

19  injunction because this Court had relied on the reversed hacking verdict in assessing the

20  critical element of irreparable harm for the copyright injunction.  *Id.* at 964.

21        On remand, Oracle asked this Court to re-enter the exact same copyright injunction

22  that the Ninth Circuit vacated.  ECF No. 1117.  Oracle again assured this Court that "Oracle is

23  not asking now for a ruling on the merits of the issues in dispute in *Rimini II*" but rather was

24  asking "the Court for a permanent injunction restraining Rimini from continuing to commit

25  the infringement that *this Court and the jury have already determined* to constitute copyright

26  infringement" in *Rimini I*.  *Id.* at 20 n.3 (emphasis added).  Rimini objected on numerous

27  grounds (ECF Nos. 1130, 1159), noting that the injunction was overbroad and vague and

28  threatened to sweep in issues from *Rimini II*.  Once again, Oracle represented to this Court at

Gibson, Dunn &
Crutcher LLP

6

oral argument that the injunction was permissible because it "just track[s] the scope of the infringing conduct" adjudicated in *Rimini I*.  ECF No. 1040 at 143–44.  This Court granted Oracle's renewed motion for a permanent injunction (ECF No. 1164) and entered an injunction that is substantially similar to the previous one (ECF No. 1166).

Rimini moved for an emergency stay of the injunction (ECF No. 1168) and once again Oracle argued that the stay should be denied because the scope of the injunction was limited to conduct adjudicated in *Rimini I*.  *See* ECF No. 1174 at 8, 9, 16–17.  Oracle even chastised Rimini for arguing that Oracle would use the injunction to restrict Rimini's revised processes, stating:  "Rimini believes that Oracle will act in bad faith, *i.e.*, by seeking to go beyond the clear terms of the injunction if it is not stayed." *Id.* at 17.

This Court denied Rimini's request, but found "good cause for a limited stay" because "there is a second separate action between the parties which will address several of the legal and factual issues raised in the prior appeal," and "Oracle is unlikely to be harmed by a stay at this time as Oracle has not established that it suffered any harm after the Ninth Circuit granted a stay of the previous injunction back in 2016."  ECF No. 1177 at 4.  Rimini requested a stay from the Ninth Circuit, the parties made these same representations, and the Ninth Circuit denied the stay pending appeal.  No. 18-16554, Dkt. 11 (9th Cir. Nov. 5, 2018).  Oral argument on Rimini's appeal is scheduled for July 2019.  Rimini's opening brief and Oracle's opposition are attached hereto as Exhibits 1 and 2 to the Vandevelde Declaration.  Rimini's reply brief will be filed by March 15, 2019.

**D.     Oracle Claims for the First Time that the Injunction Applies to Rimini's Revised Processes at Issue in *Rimini II***

Despite all of the foregoing representations to this Court and the Ninth Circuit, on January 2, 2019, Oracle sent Rimini a letter accusing 20 different practices of potentially violating the injunction—*many of which relate to Rimini's Process 2.0 and were not adjudicated in Rimini I.*  For example, Oracle asked Rimini to confirm that Rimini had stopped using its Automated Framework ("AFW") tools to provide Rimini-written code to clients.  ECF No. 1201-8 at 2.  But Rimini created AFW *for use with Process 2.0*, discovery

7

into AFW was not permitted in *Rimini I* (at Oracle's insistence), and AFW was indisputably never adjudicated in *Rimini I*. *See* ECF No. 490 at 5–7 (Oracle referring to Rimini's provisional patent application for AFW, acknowledging that it related to Rimini's revised support processes, and arguing that issues related to it should not be litigated in *Rimini I*). Oracle's letter also asked Rimini to confirm that it does not use "the results of testing done on a PeopleSoft software environment associated with one Rimini customer to reduce the testing performed for other Rimini customers." ECF No. 1201-8 at 2. But "using the results of testing" an update in one client's environment (*i.e.*, the *knowledge* Rimini gains that its code or work product functions correctly) in determining the extent to which another client's environment must be tested was never adjudicated in *Rimini I* and is a central issue in *Rimini II*. *See Rimini I*, ECF No. 474 at 13 (addressing use of generic, locally hosted environment to develop and test updates distributed to multiple clients, but not discussing or ruling on Rimini's ability to rely on its own knowledge when providing support in separate, remote client environments); *Rimini II*, ECF No. 917 at 1 (Rimini's summary judgment brief in *Rimini II* arguing that "Rimini is entitled to have multiple clients, gain experience and knowledge from supporting those clients, use its ingenuity to develop solutions for those clients, and leverage its know-how and Rimini-created work product to provide a valuable service offering and to become better and faster over time.").

Oracle then filed a brief in the Ninth Circuit defending this Court's permanent injunction, and in that brief argued (for the first time) that an injunction can go "beyond the specific infringing conduct in which [Rimini] was found to have engaged" and can prohibit "any conduct beyond that which the jury affirmatively found to be infringing," including even "lawful conduct." Vandevelde Decl., Ex. 2 at 40–41 (Oracle answering brief).

As evidenced above, Oracle has no intention of limiting the scope of the injunction it proposed and this Court entered to the processes that were adjudicated in *Rimini I*. Rimini raised this concern in response to Oracle's January 2 letter, asking Oracle to explain when and where in *Rimini I* its list of challenged support practices was actually litigated, and to identify the evidentiary basis for its supposed "concern" about Rimini's injunction compliance. ECF

No. 1201-9.  Oracle's January 31 response did not address either request.  Instead, Oracle asserted that all the practices in its letter were covered by the injunction and reiterated its demand that Rimini consent to reopen *Rimini I* discovery.  ECF No. 1201-10.

Rimini responded again on February 7.  Rimini affirmed its belief that it is in compliance with the injunction and requested—*three times*—that the parties meet and confer so that Oracle could explain its unsubstantiated concerns regarding injunction compliance and the legal basis for its claim that the injunction could reach unadjudicated processes.  ECF No. 1201-11 at 1 (inviting Oracle to meet and confer regarding its "concern" that Rimini was not in compliance with the injunction); 2 (inviting Oracle to meet and confer regarding the list of Process 2.0 support practices it contends are covered by the injunction); 3 (inviting Oracle to meet and confer regarding its request to modify the *Rimini II* protective order).

Oracle never responded.  On February 27, Oracle filed the instant motion to reopen discovery.  Oracle did not notify Rimini that it intended to file a motion, or otherwise respond to Rimini's repeated requests to meet and confer.  The parties have never discussed any of the issues raised in Oracle's discovery motion by telephone, let alone in person.  Vandevelde Decl. ¶ 4.

Oracle's proposed discovery attached to its motion—which, as explained in detail below, is anything but "limited"—only confirms that Oracle's true intention is to preempt *Rimini II* via a contempt proceeding in *Rimini I*.  In addition to seeking information about Rimini's AFW tools, Oracle's proposed discovery also asks for information on Rimini's clients' use of cloud-hosting provider Windstream to store their PeopleSoft environments. *See* ECF No. 1201-12 at Request for Production Nos. 3, 6, 8; ECF No. 1201-13 at Interrogatory Nos. 1, 2, 8, 9.  Like AFW, use of the cloud was never litigated in *Rimini I*; Oracle's own counsel has admitted as much.  Vandevelde Decl. Ex. 3, May 25, 2016 Hearing Tr. at 143:14–20 (Oracle's counsel acknowledging that "cloud computing is at issue in *Rimini II* and it wasn't at issue in *Rimini I*.").

Gibson, Dunn &
Crutcher LLP

**E.    Oracle's Misleading Assertions Regarding Rimini's Discovery Conduct**

As with so many of its briefs, Oracle has again larded its motion with misleading descriptions of the litigation history in *Rimini I* and the TomorrowNow case (*Oracle v. SAP AG*, Case No. 2:09-cv-01591 (D. Nev.)).  This tired and one-sided history, which Oracle repeats in nearly every litigation filing and in numerous press releases, is *entirely irrelevant* to Oracle's motion, but is calculated to distract the Court from the actual evidence, the complete procedural history, and the jury's verdict of innocent infringement (which is conspicuously absent in Oracle's oft-repeated litigation narrative).  Oracle's false narrative needs to end.

As just one example, Oracle contends that the TomorrowNow court "held Mr. Ravin in contempt," Mot. at 2, for refusing to comply with a subpoena so that he and Rimini could "avoid or delay discovery of their theft of Oracle's intellectual property for as long as possible." Mot. at 6.  And Oracle claims that Mr. Ravin's appeal of that contempt finding constituted a further act of "defiance of this Court's Order." *Id.*  Oracle's spin borders on fanciful.  Oracle subpoenaed Rimini and Mr. Ravin to appear for a deposition in the TomorrowNow case, and after motion practice, the Court issued an order compelling Rimini and Mr. Ravin to appear.  Because Rimini and Mr. Ravin wanted to appeal that ruling, *they stipulated with Oracle* to a contempt finding, which was procedurally required to enable an appeal. *See* Case No. 2:09-cv-01591 (D. Nev.), ECF No. 47 at 1 ("WHEREAS, [Rimini and Mr. Ravin] believe the only available avenue for appeal of the [order compelling discovery] is from an order of contempt for refusal to comply").  And after Rimini and Mr. Ravin dropped their appeal, the TomorrowNow court *vacated the contempt order. Id.*; ECF No. 64.  Yet, Oracle continues to tell this Court—repeatedly—that Mr. Ravin was held in contempt, ignoring the facts that contravene its narrative.

In brief after brief—filed in this Court, the Ninth Circuit, and the Supreme Court—Oracle falsely excoriates Rimini's supposed "lies" and "dishonesty," no matter how disconnected from the legal issues at play. *See* Mot. at 2–3, 14–15; *Rimini I*, 16-16832, Dkt. No. 50 at 13–15 (9th Cir.); *Rimini I*, No. 17-1625, Dkt. No. 7, at 8–10 (S. Ct.).  This is a pattern for Oracle, and in another case, Oracle was formally admonished for engaging in

Gibson, Dunn & Crutcher LLP

similar conduct.  *See Oracle Am. v. Hewlett Packard Enter. Co.*, Case No. 3:16-cv-01393, Dkt. No. 516 (N.D. Cal. 2018) (criticizing Oracle for repeatedly using "extreme, unnecessary, overheated rhetoric" to attack opposing counsel and including irrelevant accusations of supposed misconduct in filings).

Oracle has time and again misrepresented this Court's orders or the verdict in *Rimini I* to paint Rimini in the most unfavorable light.  For example, Oracle continues to raise the TomorrowNow case at every opportunity because Mr. Ravin once worked there, even though this Court instructed the jury to disregard anything they had heard about TomorrowNow as evidence that Mr. Ravin "did, or was more likely to have done, the things that Oracle contends."  Dkt No. 880 at 21. Similarly, Rimini was forced to seek clarification from the Court after Oracle repeatedly (and falsely) asserted in the marketplace that the Court had found that Rimini intentionally engaged in theft of Oracle's intellectual property.   ECF No. 507 at 2.  The Court clarified that it had *not* made any such finding, and that its reference to "theft" was within the "limited context" of ruling on Rimini's defamation counterclaims, *id.* at 2–3—yet, to this day, Oracle continues to assert in nearly every brief (including the instant motion) that Rimini engaged in "theft" of its intellectual property.  Mot. at 6; *see also* Vandevelde Decl. Ex. 4 (Register Article) (Oracle representative stating in March 4, 2019 article that "Rimini engaged in a massive theft of Oracle's IP and tried to cover it up by destroying evidence and engaging in other litigation misconduct.").  And notwithstanding the fact that a jury rejected all of Oracle's intentional tort claims and found Rimini's infringement was *innocent*—meaning Rimini did not know and had no reason to know that its prior processes were infringing, ECF No. 869 at 6—Oracle attempts to paint Rimini, in this motion and at every other opportunity, as an intentional infringer that sought to hide its illicit practices.  *See*, *e.g.*, Mot. at 14 ("Rimini has repeatedly demonstrated its willingness to ignore the law and do whatever it took to avoid discovery of its infringement.").

Oracle's hyperbole and false narratives, which have no relevance at all to the issues presented, should stop.  *See* LR 1-1(c) ("The court expects a high degree of professionalism and civility from attorneys."); *Bank of N.Y. v. Foothills at MacDonald Ranch Master Ass'n*,

329 F. Supp. 3d 1221, 1235 (D. Nev. 2018) (admonishing parties for filing "vitriolic" briefs, including a hyperbolic accusation that a party attempted to "steal" property during foreclosure proceedings).

### III.    LEGAL STANDARD

A party seeking discovery concerning another party's compliance with an injunction must submit "evidence" that raises "*significant* questions regarding noncompliance."  *Cal. Dept. of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008) (emphasis added).  Mere speculation that noncompliance may be occurring is not sufficient; a party must come forward with *evidence*.  *Leavitt*, 523 F.3d at 1035 (noting the moving party had provided evidence of "at least twelve cases" where the responding party had violated the court's judgment); *Rutherford v. Baca*, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4, 2009) (finding "significant questions of noncompliance" to exist on the basis of a declaration and an expert report submitted in support of the motion for additional discovery); *Pa. Mfrs.' Ass'n Ins. Co. v. Riccelli Enters., Inc.*, 2015 WL 12582794, at *14 (N.D.N.Y. Dec. 9, 2015) ("[A] district court may deny a request to reopen discovery where it deems the request to be based on speculation as to what potentially could be discovered.") (internal quotation marks omitted), *aff'd*, 690 F. App'x 52 (2d Cir. 2017).

### IV.    ARGUMENT

Oracle's motion fails on several grounds.  As a threshold matter, Oracle has not satisfied the meet-and-confer requirements of Local Rule 26-7, and the Court should deny the motion on that ground alone.  Moreover, this Court already rejected Oracle's request when it ruled *at Oracle's insistence* that Rimini's Process 2.0 *could not be adjudicated* in *Rimini I* and ordered that all discovery about the new process must take place in *Rimini II*.  Finally, Oracle has failed to present any evidence that raises a question (significant or otherwise) about whether Rimini has discontinued the processes adjudicated in *Rimini I*.

### A.    Oracle's Motion Violates Local Rule 26-7

Under Local Rule 26-7, a discovery motion "*will not* be considered" (emphasis added) unless "the movant (1) has made a good faith effort to meet and confer as defined in LR IA

1-3(f) before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and-confer conference about each disputed discovery request."  Oracle has not satisfied either requirement, and its motion should be denied on this basis alone.

While the parties exchanged several letters before Oracle filed its motion, Oracle dodged Rimini's questions (regarding the basis for its concerns regarding Rimini's compliance with the injunction), did not respond to Rimini's last letter, and ignored Rimini's repeated invitations to meet and confer.   Vandevelde Decl. ¶ 4.   This falls far short of satisfying Local Rule IA 1-3(f), which makes clear that the meet-and-confer requirement "may *only* be satisfied through direct dialogue and discussion in a face-to-face meeting, telephone conference, or video conference." (Emphasis added.)  Indeed, the rule explicitly states that "[t]he exchange of written, electronic, or voice-mail communications *does not satisfy this requirement*." (Emphasis added.)  Yet, Oracle did not even attempt to submit the required meet-and-confer declaration.  LR IA 1-3(f)(2) ("A party who files a motion to which the meet-and-confer requirement applies *must* submit a declaration stating all meet-and-confer efforts, including the time, place, manner, and participants.") (emphasis added).

Judges in this District routinely deny discovery motions for failing to meet these requirements, and this Court should do the same here.  *See F.T.C. v. AMG Servs., Inc.*, 2014 WL 6069821, at *6 (D. Nev. Nov. 13, 2014), *aff'd*, 2015 WL 4073192 (D. Nev. July 2, 2015) (denying discovery motion because movant failed to comply with the meet-and-confer requirement); *McNamara v. Hallinan*, 2019 WL 918984, at *2 (D. Nev. Feb. 25, 2019) (denying discovery motion when counsel failed to certify occurrence of meet-and-confer and "the identified written correspondence—standing alone—d[id] not suffice to satisfy the … requirements").

Rimini requests that the Court admonish Oracle regarding the meet-and-confer requirement and require Oracle to pay Rimini's fees and costs in opposing Oracle's motion. *See* LR IA 1-3(f)(3) ("In addition to any sanction available under the Federal Rules of Civil Procedure, statutes, or case law, the court may impose appropriate sanctions under LR IA 11-8 for a party's failure to comply with the meet-and-confer requirement.").

**B.** **Oracle Seeks to Use the Injunction to Preempt *Rimini II***

Despite contrary representations to this Court and the Ninth Circuit that the *Rimini I* injunction reached only the conduct adjudicated in *Rimini I*, Oracle has done a complete about-face and now seeks to stretch the injunction to prohibit Rimini's revised processes (*i.e.*, Process 2.0) that *were never at issue or adjudicated in Rimini I*. Those processes are squarely presented for resolution in *Rimini II*, in multiple pending summary judgment motions. Oracle's attempt to preempt the proper and orderly resolution of those issues should be rejected.

It is black letter law that an injunction must be "narrowly tailored … to remedy *only the specific harms shown by the plaintiffs*." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir 2004) (emphasis added); *see also* 4 *Nimmer on Copyright*, § 14.06[C][1][a] ("[T]he scope of the injunction should be coterminous with the infringement."). As discussed above, Oracle represented to this Court and the Ninth Circuit that the injunction it proposed (and that this Court entered verbatim) was so limited, and reached only the processes adjudicated in *Rimini I*.

Oracle's request for discovery indisputably goes far beyond what was at issue in *Rimini I*. As discussed above, Oracle's letters, and its proposed discovery, seek information on Rimini's use of AFW and Rimini's clients' use of cloud-hosting provider Windstream to store environments. *See* ECF Nos. 1201-8 at 2; 1201-10 at 2; 1201-12 at Request for Production Nos. 3, 6, 8; 1201-13 at Interrogatory Nos. 1, 2, 8, 9. And Oracle's letters indicate that Oracle believes the injunction can prevent Rimini from relying on its own know-how and work product—which contains no Oracle code or other Oracle intellectual property—in providing remote support to multiple clients. *See* ECF No. 1201-8 at 2 (asking Rimini to confirm that it does not rely on its knowledge from testing a software update for one customer to test a same or similar update for another customer).

None of these issues was addressed by the Court or the jury in *Rimini I*. It is undisputed that AFW is a tool Rimini designed for use in Process 2.0, and that the Court never considered use of the cloud in *Rimini I*. *See* ECF No. 490 at 5–7 (Oracle citing

14

Gibson, Dunn &
Crutcher LLP

Rimini's provisional patent application for AFW and acknowledging it as part of Rimini's new process); Vandevelde Decl. Ex. 3, May 25, 2016 Hearing Tr. at 143:14–20 (Oracle's counsel acknowledging that "cloud computing is at issue in *Rimini II* and it wasn't at issue in *Rimini I*."). And the Court's only holding on "cross-use" concerned using a generic, locally hosted software environment to support multiple clients—the parties simply did not litigate what Rimini could or could not do with Rimini's own work product, or a client-hosted support model where Rimini remotely accesses each client's separate licensed software environment to provide support. ECF No. 474 at 13. The injunction thus cannot possibly cover these practices, and, on that basis alone, the Court should reject Oracle's motion.

Beyond its overreach to issues not adjudicated in *Rimini I*, Oracle's request is further improper because *all of these issues are being actively litigated in Rimini II*. That case has been pending for more than four years, and the Court has already ruled that *Rimini II* is the "sole" forum in which to adjudicate Rimini's revised processes. ECF No. 723. The parties have exchanged millions of documents, taken more than 100 depositions, and prepared dozens of expert reports, and there are currently seven fully briefed summary judgment motions before the Court, including numerous pages of argument related to AFW, the cloud, and "cross-use" as applied to Process 2.0. *See, e.g.*, *Rimini II*, ECF Nos. 917, 979. If Oracle were permitted to seek discovery on these processes in *Rimini I*—as a threshold step to filing a contempt action—all of the work this Court, and the parties, have and will put into litigating these issues in *Rimini II* has the potential to be rendered meaningless. Oracle cannot first fight to keep Process 2.0 out of the case, go to trial solely on Rimini's old processes, and then, *post-judgment*, suddenly decide that it wants Process 2.0 back in *Rimini I* for purpose of contempt proceedings.

Oracle's only response to this argument is that it believes Rimini uses AFW to engage in "precisely the kind of cross-use adjudicated in *Rimini I*." Mot. at 13 n.6. But it is undisputed that AFW is part of Process 2.0, and thus whether use of AFW constitutes "cross-use" was never litigated in *Rimini I*. *See* ECF No. 490 at 5–7. In fact, Oracle argued that Process 2.0 (including AFW) was *irrelevant* to liability issues in *Rimini I*, and the Court

15

Gibson, Dunn &
Crutcher LLP

agreed.  ECF No. 646 at 5; ECF No. 723.  As a result, there is an entirely separate, and hotly disputed, case dedicated to resolving issues related to AFW (*Rimini II*), and this Court has already ruled that case is the "sole[]" forum to adjudicate Rimini's revised processes.  ECF No. 723.

More broadly, any contention from Oracle that there is no real difference between Process 2.0 and the local practices adjudicated in *Rimini I* is false.  Rimini spent millions of dollars to move from a local support model to a remote support model where each client has its own, separate, licensed software environments, which Rimini accesses remotely to provide support.  ECF No. 490 at 13. Rimini has introduced evidence of that fundamental change in *Rimini I* through declarations, and Oracle never submitted any contrary evidence.  *See* ECF No 1134-3.  Indeed, if Process 2.0 was the same as the old processes adjudicated in *Rimini I*, Oracle would have had no reason to fight the inclusion of Process 2.0 in *Rimini I*.  But Oracle did just that, arguing that Process 2.0 was "not relevant" to Rimini's liability in *Rimini I*, and that the "legality of [Process 2.0] will be the subject of Rimini's new lawsuit."  ECF No. 646 at 5.  Oracle's prior statements are binding, and these issues must be litigated in *Rimini II*.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.").

Moreover, Rimini has challenged the legality of the injunction in the Ninth Circuit, and Rimini's appeal will be fully briefed this week and heard in early July.  This Court has already ruled that Oracle suffered no harm from the previous stay of its injunction, ECF No. 1177 at 4, and there is no reason to wade into another round of contentious discovery when the Ninth Circuit will soon weigh in and potentially change the entire landscape.

## C.   Oracle Has Not Offered Any Evidence Raising Significant Questions About Rimini's Compliance

In addition, the Court should deny Oracle's motion because Oracle has failed meet its burden of showing *evidence* that raises "significant questions" about Rimini's compliance with the injunction.  *See Leavitt*, 523 F.3d at 1034 (9th Cir. 2008) (to justify reopening

16

Gibson, Dunn &
Crutcher LLP

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

discovery for injunction enforcement purposes, a party must show evidence that raises "*significant* questions regarding noncompliance") (emphasis added).  Oracle makes four arguments to suggest Rimini is not in compliance.  All lack merit.

**First**, Oracle contends that Rimini has "refused to unambiguously state its compliance with the injunction or provide Oracle with information regarding its compliance." Mot. at 12. Neither assertion is true.  In its second letter to Oracle, Rimini stated that it "believes that it is in compliance with the terms of the injunction insofar as the injunction is comprehensible and within the scope of the judgment in *Rimini I.*"  ECF No. 1201-11 at 1.  As a matter of black letter law, an injunction must not be vague, and must be tailored to the conduct adjudicated. *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir 2004); *see also* 4 *Nimmer on Copyright*, § 14.06[C][1][a].  Rimini's response affirms Rimini's compliance while reiterating these legal requirements—it cannot possibly be taken as evidence that Rimini is violating the injunction.   Moreover, Oracle's complaint that Rimini has not provided Oracle with "information regarding its compliance" (Mot. at 1, 12) reveals Oracle's flawed and circular logic—essentially, Oracle is saying that it is entitled to discovery because Rimini will not consent to discovery.  Such a rule would eviscerate the standard requiring evidence raising significant questions regarding noncompliance.  In any event, Rimini *has not* refused to provide Oracle with information about its compliance with the injunction.  Instead, Rimini told Oracle repeatedly that it needed to understand the basis for Oracle's concern about noncompliance and Oracle's position that the *Rimini I* injunction could reach unadjudicated conduct, and *invited Oracle to meet and confer three times*.  ECF No. 1201-11.  Rather than participate in that process, Oracle filed its motion.  That violated the local rules (*see supra*), and does not support Oracle's claim that there are significant questions regarding Rimini's compliance.

**Second**, Oracle faults Rimini for "challeng[ing] the legality of the injunction." Mot. at 13. But Rimini's exercise of its right to appeal from the injunction is in no way evidence of noncompliance, and certainly does not show, as Oracle contends, "disrespect" for the Court; at most it underscores that the injunction is unlawful.  Oracle also cites *Leavitt*, 523 F.3d at

17

Gibson, Dunn &
Crutcher LLP

1035, for the proposition that Rimini's "refusal to provide information" supports ordering discovery. Mot. at 13. But the defendant in *Leavitt* claimed it had *no data whatsoever* related to its compliance with a court order. 523 F.3d at 1035. Here, by contrast, Rimini has not asserted it has no information about compliance, or refused to give such information to Oracle. To the contrary, Rimini has repeatedly asserted that—based on the cessation of the processes litigated in *Rimini I* and its transition to Process 2.0—Rimini is in compliance with the injunction. *See*, *e.g.*, ECF No. 906 at 1–2, 13–14; ECF No. 1201-11. But Oracle's requests for information do not concern the practices adjudicated in *Rimini I*; they focus on Rimini's new processes, as an attempt to circumvent *Rimini II*.

*Third*, Oracle manufactures contradictions between Rimini's prior statements about the injunction where none exist. Rimini's position has been consistent, and indeed was prescient. As Rimini argued in opposition to Oracle's first request for an injunction, as of July 2014, Rimini stopped the practices found to be infringing in *Rimini I*—"local hosting" and "cross-use" of locally hosted generic environments—by shifting to a remote model in which each client maintains its own, separate, licensed software environments that Rimini remotely accesses to provide support. ECF No. 906 at 1–2, 13–14. Rimini also argued (and predicted) that Oracle would later seek to leverage the vague terms in its proposed injunction to prevent conduct not adjudicated in *Rimini I*. *Id.* at 2 (arguing that the "injunction Oracle proposes includes vague and sweeping language … which could be read to encompass Rimini's revised processes that Oracle expressly and vigorously fought to exclude from this case. If the Court enters the proposed injunction, Rimini could suffer significant harm to its lawful business and to its ability to litigate contested conduct in the second action still pending in this Court."). Oracle has now lived up to Rimini's prediction, in an about-face from prior statements to this Court and the Ninth Circuit, and seeks to take discovery on support processes that were never adjudicated in *Rimini I* (conduct that Oracle previously told the Court would constitute "bad faith," ECF No. 1174 at 17). Rimini's accurate assertion that

Gibson, Dunn &
Crutcher LLP

this would happen, that it is legally improper, and that—if permitted—it would harm Rimini's business does not constitute evidence that Rimini is not in compliance with the injunction.[1]

  **Fourth,** Oracle's misleading rehash of the litigation history between the parties is not evidence of anything, let alone evidence that Rimini has not complied with the injunction since November 2018.  Indeed, despite Oracle claiming that Rimini's business was built on a "wall of lies," and calling Rimini a "liar" dozens of times during trial, the jury rejected Oracle's hyperbole and found that Rimini *was an innocent infringer that had no reason to know its conduct was unlawful, and awarded Oracle no lost profits damages*.  ECF No. 896 at 3–4, 6.  Moreover, after this Court's summary judgment order issued in February 2014, Rimini undertook a massive effort to move to a remote model in compliance with that ruling—long before any injunction issued—and then affirmatively filed *Rimini II* to obtain court review and approval of its new processes.  *See*, *e.g.*, ECF No. 906 at 1–2, 13–14.  Similarly, while repeatedly accusing Rimini of attempting to hide its infringement from Oracle, Oracle ignores that long before *Rimini I* was even filed, Rimini repeatedly asked Oracle to discuss Rimini's processes, and even proposed allowing a neutral third party to undertake a detailed audit and report its findings to Oracle (invitations Oracle repeatedly rejected).  ECF No. 153, ¶¶ 6–7; ECF No. 1006 at 4.  Far from the conduct of a scofflaw, Rimini's actions and the jury's verdict shows that Rimini seeks to comply with the copyright laws in good faith while engaging in what the Ninth Circuit affirmed is "lawful competition" with Oracle.  *Rimini I*, 879 F.3d at 952.

---

[1] Nor do Rimini's statements to its own clients that the injunction would not have an "impact … on any current or future service offering, or on Rimini Street's current or future ability to service any of its clients" conflict with Rimini's position.  Mot. at 10 n.5.  Rimini already changed its processes to comply with the Court's ruling in 2014.  Moreover, even if Rimini were required to make additional changes (*e.g.*, as a prophylactic measure in response to Oracle's overbroad reading of the injunction), Rimini would still deliver the same service offering—from a client perspective—as it had previously.

Gibson, Dunn &
Crutcher LLP

D.    **Oracle's Proposed Discovery Requests Are Expansive**

Because Oracle's motion is improper and lacks merit, no discovery is warranted and the Court should deny the motion outright.   Nonetheless, Rimini also disputes Oracle's assertion that the discovery it proposes is "limited."  Mot. at 15.

As just one example, Oracle's proposed Interrogatory No. 6 asks Rimini to: "Identify all of the tax and regulatory updates, break fixes, new functionality, documentation, or any other files that Rimini provided to customers for Oracle Software and Support Materials since November 5, 2018, including the names of the files, the customers to whom they were provided, the Persons who were involved in developing or testing them, the associated Oracle product line, product, and version, and the dates when they were provided to each customer." ECF No. 1201-13.  But Rimini provides tens of thousands of software updates a year, to hundreds of support customers, and employs hundreds of engineers to accomplish that task. Providing this information for every single update Rimini has provided over the last six months would be a monumental task.

And this is just the tip of the iceberg.  Oracle seeks the Court's authorization to serve 15 document requests, 15 interrogatories, and five third-party document and deposition subpoenas, and to conduct two Rule 30(b)(6) depositions and four individual depositions. Mot. at 15.  And Oracle reserves the right "to seek modifications at a later date." *Id.*  Were this discovery granted, the burden imposed on Rimini would be *anything but limited*.  *Does v. Trump*, 328 F. Supp. 3d 1185, 1202 (W.D. Wash. 2018) (ruling that discovery on defendants' compliance with injunction must be "narrowly craft[ed] … so that the requests are 'proportional to the needs of the case'" and "caution[ing] … that any such request must be narrowly tailored and proportional in light of the limited purpose of the authorized discovery" (citing Fed. R. Civ. P. 26(b)(1))).

## V.    CONCLUSION

In light of the foregoing, Rimini respectfully requests that the Court deny Oracle's motion.

Gibson, Dunn &
Crutcher LLP

Dated:  March 13, 2019

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Eric D. Vandevelde_
Eric D. Vandevelde

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused to be electronically uploaded a true and correct copy in Adobe "pdf" format of the above document to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon transmission of the Notice of Electronic Filing ("NEF") to the registered CM/ECF users.   All counsel of record are registered users.

DATED:  March 13, 2019

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Eric D. Vandevelde*
Eric D. Vandevelde

*Attorneys for Plaintiff and Counterclaimant*
*Rimini Street, Inc. and Counterdefendant Seth*
*Ravin*

RIMINI'S OPP'N TO ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY
RE RIMINI'S COMPLIANCE WITH PERMANENT INJUNCTION
CASE NO.. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP