# EXHIBIT 1

November 26, 2018 – Opening Brief for
Appellant Rimini Street, Inc.

No. 18-16554

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

ORACLE USA, INC., a Colorado corporation;
ORACLE AMERICA, INC., a Delaware corporation;
ORACLE INTERNATIONAL CORPORATION, a California corporation,

*Plaintiffs-Appellees*,

*v.*

RIMINI STREET, INC., a Delaware corporation,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
For the District of Nevada
No. 2:10-cv-0106-LRH-VCF

_____

## OPENING BRIEF FOR APPELLANT RIMINI STREET, INC.
_____

Blaine H. Evanson
Joseph A. Gorman
Shaun A. Mathur
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
(949) 451-3805
BEvanson@gibsondunn.com

Mark A. Perry
Jeremy M. Christiansen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
MPerry@gibsondunn.com

*Attorneys for Appellant Rimini Street, Inc.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that appellant Rimini Street, Inc. is a publicly traded Delaware corporation. Rimini Street, Inc. has no parent company, and no publicly held company owns 10% or more of its stock.


Dated: November 26, 2018

s/ *Mark A. Perry*
Mark A. Perry

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

JURISDICTIONAL STATEMENT ...............................................................2

ISSUES PRESENTED....................................................................................2

CONSTITUTIONAL AND STATUTORY PROVISIONS.............................2

STATEMENT OF THE CASE........................................................................3

SUMMARY OF ARGUMENT .....................................................................10

STANDARDS OF REVIEW ........................................................................12

ARGUMENT ................................................................................................13

    I.     The Permanent Injunction Should Be Reversed ................................13

         A.    Oracle's Request For Injunctive Relief Is Moot......................13

         B.    No Injunction Can Be Sustained On This Record....................16

              1.    The Irreparable Injury Requirement Was Not Met ........16

              2.    The Remaining *eBay* Factors Were Not Satisfied..........27

         C.    The Injunction As Entered Is Improper .................................31

              1.    The Injunction Is Overbroad...........................................31

              2.    The Injunction Is Vague ..................................................46

    II.    The Attorneys' Fee Award Should Be Reversed ...............................48

         A.    The District Court Refused To Apportion Fees......................48

              1.    The Mandate Requires Apportionment ..........................49

              2.    The Law Requires Apportionment ..................................54

          B.    Oracle Failed To Adduce Apportionment Evidence ...............56

              1.    Oracle Should Receive No Fees ......................................56

              2.    At Minimum, The Award Should Be Reduced .............58

CONCLUSION ..............................................................................................61

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.,*
568 U.S. 85 (2013) .........................................................................................13

*Anderson v. United States,*
612 F.2d 1112 (9th Cir. 1979) .......................................................................28

*Apple Inc. v. Samsung Elecs. Co.,*
695 F.3d 1370 (Fed. Cir. 2012) ...................................................17, 18, 19, 21

*Apple Inc. v. Samsung Elecs. Co.,*
735 F.3d 1352 (Fed. Cir. 2013) .....................................................................17

*Apple, Inc. v. Samsung Elecs. Co.,*
678 F.3d 1314 (Fed. Cir. 2012) .....................................................................17

*Automation By Design, Inc. v. Raybestos Prods. Co.,*
463 F.3d 749 (7th Cir. 2006) ....................................................................33, 34

*Aviall, Inc. v. Ryder Sys., Inc.,*
110 F.3d 892 (2d Cir. 1997) ..........................................................................41

*Beauchamp v. Anaheim Union High Sch. Dist.,*
816 F.3d 1216 (9th Cir. 2016) .......................................................................42

*Brown v. Stackler,*
612 F.2d 1057 (7th Cir. 1980) .......................................................................58

*Camacho v. Bridgeport Fin., Inc.,*
523 F.3d 973 (9th Cir. 2008) .........................................................................13

*Chi. Bd. of Educ. v. Substance, Inc.,*
354 F.3d 624 (7th Cir. 2003) .........................................................................44

*City of Colton v. Am. Promotional Events, Inc.-West,*
614 F.3d 998 (9th Cir. 2010) .........................................................................41

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ...................................................................12, 46

*Corp. Techs., Inc. v. Harnett*,
    731 F.3d 6 (1st Cir. 2013) ..............................................................................47

*CRST Van Expedited, Inc. v. EEOC*,
    136 S. Ct. 1642 (2016) ...................................................................................48

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
    836 F.2d 1320 (Fed. Cir. 1987) .....................................................................27

*Detrich v. Ryan*,
    740 F.3d 1237 (9th Cir. 2013) .......................................................................58

*Dimick v. Scheidt*,
    293 U.S. 474 (1935)........................................................................................26

*Doe v. Chao*,
    511 F.3d 461 (4th Cir. 2007) .........................................................................49

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)........................................................ 16, 17, 24, 27, 29, 31

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003)........................................................................................44

*Eldred v. Reno*,
    239 F.3d 372 (D.C. Cir. 2001) .......................................................................45

*Farrar v. Hobby*,
    506 U.S. 103 (1992)........................................................................................55

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998)...................................................................................25, 28

*Firth v. Los Angeles Pac. Land Co.*,
    28 Cal. App. 399 (Ct. App. 1915)..................................................................40

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*,
    807 F.2d 1110 (2d Cir. 1986) .........................................................................25

*Floyd v. Laws*,
    929 F.2d 1390 (9th Cir. 1991) ...............................................................26

*Frankel v. Bd. of Dental Exam'rs*,
    46 Cal. App. 4th 534 (Ct. App. 1996) ................................................39

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...........................................................................14

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ......................................................44, 45

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013) ............................................................58

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016)........................................................................27

*Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*,
    82 F.3d 1533 (10th Cir. 1996) ......................................................24, 28

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)............................................................................45

*Harris v. Emus Records Corp.*,
    734 F.2d 1329 (9th Cir. 1984) ............................................................36

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..................................................................58

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................... 48, 54, 55, 56, 57, 59

*AE ex rel. Hernandez v. Cty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012) ..............................................................13

*Jama v. I.C.E*,
    543 U.S. 335 (2005)............................................................................23

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ..........................................................45

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016) ...............................................................................57

*Knox v. Serv. Empls. Int'l Union, Local 1000*,
    567 U.S. 298 (2012) .................................................................................13

*Los Angeles Cty. v. Davis*,
    440 U.S. 625 (1979) .................................................................................16

*Maine Elec., Ltd. v. Printz Servs. Corp.*,
    980 P.2d 522 (Colo. 1999) ........................................................................39

*McCown v. City of Fontana*,
    565 F.3d 1097 (9th Cir. 2009) ........................................................54, 55, 60

*McGinnis v. Kentucky Fried Chicken*,
    51 F.3d 805 (9th Cir. 1994) ...............................................................48, 56

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..............................................................38, 40

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .........................................................29

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .................................................................................29

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007) .................................................................................36

*Mulcahy v. Cheetah Learning LLC*,
    386 F.3d 849 (8th Cir. 2004) .....................................................................47

*NLRB v. Express Publ'g Co.*,
    312 U.S. 426 (1941) .................................................................................47

*N.Y. Times Co. v. United States*,
    403 U.S. 713 (1971) .................................................................................45

*Norris v. Sysco Corp.*,
    191 F.3d 1043 (9th Cir. 1999) .............................................................56, 58

*Oracle USA, Inc. v. Rimini St., Inc.*,
   6 F. Supp. 3d 1086 (D. Nev. 2014) ................................................................4, 5

*Oracle USA, Inc. v. Rimini St., Inc.*,
   6 F. Supp. 3d 1108 (D. Nev. 2014) ....................................................................5

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir. 2018) ..................................................................*passim*

*Parsons v. Bedford*,
   28 U.S. (3 Pet.) 433 (1830) ...............................................................................25

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) .............................................17, 18, 19, 20, 22

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   875 F.3d 1369 (Fed. Cir. 2017) ........................................................................21

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004) ..........................................................................31

*Rimini St., Inc. v. Oracle Int'l Corp.*,
   No. 2:14-cv-01699-LRH-CWH (filed Oct. 15, 2014) ........................................5

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ..........................................................14, 15, 16

*Rosecrans v. Pac. Elec. Ry. Co.*,
   21 Cal. 2d 602 (1943) .......................................................................................40

*Schwarz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ..............................................................................60

*Stanley v. Georgia*,
   394 U.S. 557 (1969) ..........................................................................................45

*Stone v. Godbehere*,
   894 F.2d 1131 (9th Cir. 1990) ..........................................................................46

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
   421 F.3d 1307 (Fed. Cir. 2005) ........................................................................39

*Teutscher v. Woodson*,
  835 F.3d 936 (9th Cir. 2016) .............................................................26

*United States v. Garcia-Beltran*,
  443 F.3d 1126 (9th Cir. 2006) .........................................................49

*United States v. Holtzman*,
  762 F.2d 720 (9th Cir. 1985) ...........................................................46

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953).........................................................................24

*Vernor v. Autodesk, Inc.*,
  621 F.3d 1102 (9th Cir. 2010) .........................................................35

*Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*,
  173 F.3d 713 (9th Cir. 1999) ...........................................................49

*Volkswagenwerk Aktiengesellschaft v. Church*,
  411 F.2d 350 (9th Cir. 1969) ...........................................................24

*Webb v. Sloan*,
  330 F.3d 1158 (9th Cir. 2003) .........................................................59

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
  106 F.3d 894 (9th Cir. 1997) .....................................................23, 24

*Williams Elecs., Inc. v. Artic Int'l, Inc.*,
  685 F.2d 870 (3d Cir. 1982) ............................................................25

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).............................................................................19

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
  705 F.2d 1515 (9th Cir. 1983) .........................................................46

## Constitutional Provisions

U.S. Const. art. I, § 8, cl.8...............................................................45

U.S. Const. amend. I .......................................................................45, 46

U.S. Const. amend. V.......................................................................45, 46

U.S. Const. amend. VII ..............................................................23, 25, 26

**Statutes**

17 U.S.C. § 106(1) ...............................................................................37

17 U.S.C. § 117(a) ...............................................................................35

17 U.S.C. § 202 ....................................................................................37

17 U.S.C. § 405(b) ...............................................................................23

17 U.S.C. § 502(a) .................................................................23, 31, 38

17 U.S.C. § 505 ....................................................................................48

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. § 1292 ...................................................................................2

28 U.S.C. § 1331 ...................................................................................2

**Rules**

Cir. R. 28-2.7........................................................................................2

Fed. R. Civ. P. 65(d) ...........................................................................47

**Other Authorities**

2 *Nimmer on Copyright* § 8.08[D][2] ..............................................3, 34

4 *Nimmer on Copyright* § 14.06[C][1][a] .....................................31, 42

Restatement (Second) of Judgments § 27 (1981) ...............................42

Roger E. Schechter & John R. Thomas,
  *Principles of Copyright Law* (2010) .................................................36

U.S. Dep't of Commerce, *White Paper on Remixes, First Sale, and
  Statutory Damages, U.S. Patent & Trademark Office* (Jan. 2016) ...................24

# INTRODUCTION

In a previous appeal, this Court instructed the district court to reconsider its permanent injunction and attorneys' fee award in light of the Court's decision, which reversed all non-copyright claims and substantially narrowed the theories of copyright liability on which the judgment rests. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 964–65 (9th Cir. 2018). On remand, the district court disobeyed the mandate—and violated fundamental equitable, legal, and constitutional principles—by re-imposing essentially the same injunction and exactly the same fee award. Both orders should now be reversed.

The request for injunctive relief is moot because the acts adjudicated as infringing stopped in 2014. Moreover, the court below committed legal error as to each equitable factor, particularly the irreparable injury requirement and its causal nexus component. And the injunction goes far beyond the judgment or the scope of the Copyright Act, for example by prohibiting the made-up idea of "cross-use."

The prevailing party *lost* 23 out of the 24 claims asserted, including every claim against one defendant and all claims involving intentional misconduct. The sole remaining claim involves *innocent* conduct for which the jury awarded a small fraction of the damages sought. The district court's refusal to apportion the fee award to account for this marked lack of success requires reversal or, at minimum, a substantial reduction of the fee award.

1

# JURISDICTIONAL STATEMENT

The district court, which had jurisdiction under 28 U.S.C. § 1331, entered an order and amended judgment on August 14, 2018 (ER17–35), and an injunction the following day (ER13). Rimini filed a timely notice of appeal on August 16, 2018. ER6. This Court has jurisdiction under 28 U.S.C. §§ 1291 & 1292.

# ISSUES PRESENTED

**I.** Whether the order of permanent injunction should be reversed because:

**A.** Oracle's request for injunctive relief is moot since the acts adjudicated as infringing stopped by July 2014;

**B.** Neither the irreparable injury requirement nor the other prerequisites to injunctive relief have been met; and

**C.** The injunction prohibits conduct, including "cross-use," that is not infringing, and has not been adjudicated as unlawful.

**II.** Whether the attorneys' fee award should be reversed because:

**A.** The district court disregarded this Court's mandate to apportion Oracle's fees to account for its "more limited success"; and

**B.** The requisite apportionment analysis leads to an award of zero fees or, at minimum, a substantial reduction in the amount of fees.

# CONSTITUTIONAL AND STATUTORY PROVISIONS

Pertinent materials are in the addendum. *See* Cir. R. 28-2.7.

## STATEMENT OF THE CASE

**1.** Oracle licenses enterprise software programs to its customers for a "substantial one-time payment." 879 F.3d at 952. The four product lines at issue (PeopleSoft, JD Edwards, Siebel, and Oracle Database) are "designed to work across a large enterprise" by handling such tasks as "payroll, ... ordering materials, shipping products, [and] dealing with customers." ER1119–20. In addition to licensing its software, Oracle separately offers its licensees software support services for an additional fee.

Rimini is Oracle's largest competitor in the aftermarket for support services. That competition is "lawful" (879 F.3d at 952), and Oracle admits that "[n]othing in Oracle's licenses prohibits Oracle's customers from ... using third parties to service Oracle's products." Answering Brief for Appellees, No. 16-16832, Dkt. 50 at 29. Specifically, Oracle "licensees may hire ... Rimini to maintain their software for them," and "it is undisputed that the licenses generally permit Oracle's licensees to ... outsource the work of maintenance to others, such as Rimini." 879 F.3d at 956–57; *see* 2 *Nimmer on Copyright* § 8.08[D][2] (licensees may "fix, update, debug, customize, test and modify [their] copy of [the licensed software]" and have "unbridled authority to 'authorize' others to effectuate those activities for [them]").

3

**2.** "[T]he very work of maintaining customized software requires copying the software." 879 F.3d at 956. Nevertheless, Oracle filed this lawsuit in 2010 to stop Rimini from making copies of software for Oracle's licensees. Oracle asserted two dozen claims against Rimini and Ravin collectively, including willful copyright infringement, violations of federal and state computer hacking laws, breach of contract, intentional interference with prospective economic advantage, unfair competition, and trespass to chattels. ER1290–1336. Oracle sought hundreds of millions of dollars in compensatory and punitive damages.

With respect to the Copyright Act, Oracle alleged that Rimini's support processes infringed its exclusive right to reproduce the software in two ways. First, Oracle complained that Rimini stored copies of certain software licensed to Rimini's clients on Rimini's servers, rather than on those clients' servers (which Oracle called "local hosting"). *See* 879 F.3d at 959. Second, Oracle complained that Rimini used copies of software made for one client with an Oracle license in connection with providing support services to another client with an identical license (which Oracle called "cross-use"). *See id.* at 956.

Rimini responded that the licenses between Oracle and Rimini's clients expressly authorized the challenged aspects of Rimini's support processes. *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1086, 1096–99 (D. Nev. 2014). At summary judgment, however, the district court construed exemplary license

agreements to hold that storing copies of Oracle software on Rimini servers ("local hosting") was not authorized by those particular agreements.  *Id.* at 1098, 1101; *see also Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1117 (D. Nev. 2014). The court also concluded that using a copy of one client's Oracle software to provide support services to another client with a license to the same software (so-called "cross-use") was not authorized by the exemplary agreements.  6 F. Supp. 3d at 1097 & n.10.

**3.** Rimini invested millions of dollars to change its support processes to conform to the district court's constructions of the exemplary license agreements, completing its transition to revised processes by the end of July 2014.  ER310–29. Rimini submitted sworn declarations from the Rimini employees in charge of each of the four product lines, averring that Rimini's revised processes eliminated the challenged practices of "local hosting" and "cross-use."  *See id.*  Since July 2014, every client environment is stored at a location of the client's choosing and under the client's control (*i.e.*, no "local hosting"), and every Rimini client has its own unique development environment (*i.e.*, no "cross-use").  *Id.*

After revising its processes (but before trial), Rimini filed a separate lawsuit against Oracle seeking a declaration that Rimini's revised processes do not infringe.  *Rimini St., Inc. v. Oracle Int'l Corp.*, No. 2:14-cv-01699-LRH-CWH (filed

Oct. 15, 2014). At Oracle's request, and over Rimini's objection, the district court declined to consolidate the two cases. ER1151–61; ER1225–28.

**4.** This case went to trial in September 2015. Oracle abandoned many of its claims shortly before or at trial. *See* ER29. Oracle ultimately asked the jury to find both Rimini and Ravin liable for willful copyright infringement, unlawful computer hacking, inducing breach of contract, and intentional interference with prospective economic advantage (ER455–68), and requested $245.9 million in compensatory damages divided among three distinct theories of recovery, plus punitive damages, against both defendants (*see* ER1580).

Oracle's principal trial theme was that Rimini and Ravin were "liars" who "knew that [their] acts" were infringing and unlawful, and that they committed those acts in "conscious disregard" of Oracle's rights. ER506; ER577; ER582. Oracle told the jury that Rimini engaged in "fraud," and that Ravin knew of and "directed" the purported misconduct. ER496; ER506–08. During closing argument, Oracle called Rimini and Ravin liars 72 times (ER577), arguing that Rimini's business model was built on a "wall of lies" (ER483), and that Rimini and Ravin committed a host of intentional bad acts (ER506–16). Oracle also argued that "[t]his case is not just about Rimini" but is also about *Ravin* and why "CEOs need to be accountable under the law." ER527.

But the evidence did not support Oracle's accusations.  Oracle customers opt for third-party support instead of contracting with Oracle for numerous reasons, none of which have anything to do with "local hosting" or "cross-use."  *See*, *e.g.*, ER705–06; ER711; ER789–90; ER862; ER881; ER888 ER902; ER924; ER926–27; ER930–32; ER937–38.  Most customers leave Oracle because of high prices or poor service.  Indeed, Oracle's own expert testified that, long before Rimini entered the market, Oracle lost (and continues to lose) about 5% of its support customers every year and, critically, that Rimini's clients come from that group. ER802; ER811.

The jury rejected nearly all of Oracle's contentions and theories.  As to copyright infringement, the jury concluded that while Rimini had infringed Oracle's copyrights, such infringement was "*innocent*"—meaning that Rimini "was not aware" and "had no reason to believe that its acts constituted" infringement; and that Rimini's infringement caused Oracle to lose, and Rimini to gain, *zero* dollars in profit.  ER458–60 (emphasis added).  Instead, the jury determined that the best measure of damages for the innocent infringement was a hypothetical, fair-market value license of $35.6 million.  ER458–60.  The jury awarded $14.4 million under two state anti-hacking statutes.  ER464–66.  The jury rejected Oracle's claims that Ravin vicariously and contributorily infringed.  ER456–57.  The jury also rejected Oracle's request for punitive damages (ER467–68), and its claims that Rimini in-

7

duced breach of contract and intentionally interfered with Oracle's prospective economic advantage (ER464–66).

After the jury verdict, Oracle moved for a permanent injunction covering both copyright infringement and computer hacking (D.Ct. Dkt. 900), for prejudgment interest (D.Ct. Dkt. 910), and for fees and costs (D.Ct. Dkt. 917). The district court granted all of Oracle's motions. ER414–35.

**5.** In the previous appeal, Rimini challenged the judgment and post-trial orders. With respect to "cross-use," Judge Graber observed at oral argument:

> [I]f all ten people have paid for one copy, if all paid, and they all have a license, and instead of making ten copies that are put into the correct slots, they make ten copies in Slot Number 3, and then give them to the same ten people, I don't understand why that makes any difference.

ER361. As for the injunction, Judge Friedland stated at oral argument: "I don't really understand why there also needs to be an injunction" in light of "a whole lawsuit to figure out if [Rimini] is complying with the liability determinations." ER363.

Without answering these questions, this Court sustained Rimini's liability under the Copyright Act, but only on limited grounds. The Court expressly declined to address whether "'cross use' was permitted by the PeopleSoft license," upholding liability *only* "on the narrow ground of 'local hosting'" based on evidence that Rimini's "servers where the copying took place were 'outside the con-

trol'" of the clients. 879 F.3d. at 959–60 & n.6. As to JD Edwards and Siebel, the Court upheld liability only because Rimini "created development environments for *future customers* using the license of an existing customer on the basis that *future customers* presumably would have licenses that would permit them to hire Rimini to create development environments." *Id.* at 957 (emphases added). The Court affirmed liability as to Oracle Database on the ground that Rimini had waived reliance on the customer licenses. *Id.* at 953 n.2, 960.

The Court then reversed the judgment on the computer hacking statutes, as well as the $14.4 million in damages and prejudgment interest related to those claims. 879 F.3d at 962–63. The Court reversed the injunction directed to hacking. *Id.* at 962. And because the district court's analysis of irreparable harm relied on facts and alleged harms related to hacking as well as copyright, the Court "vacate[d] the copyright injunction and remand[ed] for *reconsideration* in light of [its] opinion." *Id.* at 964 (emphasis added). Finally, the Court "vacate[d] the fee award" as to Rimini, and "remand[ed] for *reconsideration* in light of Oracle's *more limited success at litigation*." *Id.* at 965 (emphases added).

**6.** On remand, Oracle asked the district court to re-enter the same copyright injunction and attorneys' fee award that this Court had vacated. D.Ct. Dkt. Nos. 1117, 1118. The district court granted both requests, entering a nearly identical injunction and the exact same fee award, both on essentially the same grounds as be-

fore.  ER13–16; ER18–35.  In the court's irreparable harm analysis, it contradicted the jury's finding of innocent infringement, finding instead that Rimini acted with "conscious disregard for Oracle's software copyrights."  ER23.  With respect to the amount of fees, the court did not acknowledge this Court's determination of Oracle's "more limited success," and instead found that there is "no basis to further reduce this award in light of the Ninth Circuit opinion."  ER33.

## SUMMARY OF ARGUMENT

**I.**  The permanent injunction should be reversed.

**A.**  Oracle's request for injunctive relief is moot because the acts adjudicated as infringing stopped long ago.  After summary judgment and long before trial, Rimini revised its support processes to halt the specific acts of "local hosting" and "cross-use" that Oracle challenged as infringing.  The *uncontroverted* evidence establishes that Rimini has not engaged in those acts since July 2014, and Rimini has initiated a second lawsuit seeking a declaration that its revised processes are lawful.  Oracle presented no evidence that Rimini might return to its prior processes.

**B.**  No injunction can be sustained on this record under the *eBay* factors.

**1.**  The district court committed two legal errors in evaluating irreparable harm.

**a.**  The district court was required to find that the specific acts adjudicated as infringing *caused* Oracle's asserted injury.  But the district court failed to analyze

(or even mention) this "causal nexus" requirement. Nor is there legally sufficient evidence in the record to establish a causal nexus.

**b.** Enjoining an adjudicated innocent infringer is unprecedented and inequitable. The district court disregarded the jury's innocent infringement finding, and premised its irreparable harm analysis on its contrary finding that Rimini acted with "conscious disregard" of Oracle's software copyrights—in violation of the Seventh Amendment's Reexamination Clause.

**2.** The remaining *eBay* factors also preclude an injunction. Oracle has already received damages in excess of $58 million (with interest), and this legal relief is more than adequate. While Rimini would be harmed if the injunction were allowed to stand, Oracle would suffer no harm in the absence of an injunction. The public interest would not be served because Oracle wants to initiate contempt proceedings against Rimini based on its current support processes, but the legality of those processes is being litigated in a separate case.

**C.** The injunction as entered is unlawfully overbroad and vague.

**1.** The injunction prohibits Rimini from engaging in all forms of "cross-use"—a concept Oracle made up for this litigation, but which is not proscribed by Oracle's licenses or the Copyright Act. The injunction also enjoins conduct that this Court recognized is not infringement (such as "local hosting" of JD Edwards and Siebel) and conduct that this Court declined to address during the previous ap-

11

peal (such as "cross-use" of PeopleSoft).  The injunction also prohibits "accessing"
JD Edwards and Siebel source code, which was not adjudicated as infringement, is
not covered by the Copyright Act, and is protected by the First Amendment.

**2.**  The injunction also fails to provide fair notice of what conduct is pro-
scribed.

**II.**  The attorneys' fee award should be reversed.

**A.**  A party that is only partially successful must apportion its attorneys' fee
award regardless of whether the successful and unsuccessful claims are related.
Because Oracle prevailed on only one of the 24 claims originally asserted against
Rimini and Ravin, this Court ordered the district court to "reconsider" the fee
award "in light of Oracle's more limited success."  The district court violated this
Court's mandate, and fee-shifting law generally, in refusing to apportion fees.

**B.**  Oracle refused to provide any evidence on apportionment of fees, and so
this Court should reverse the attorneys' fee award outright.  At minimum, this
Court should reduce the award to conform to the uncontroverted evidence submit-
ted by Rimini, which permits an award of no more than $2.1 million.

## STANDARDS OF REVIEW

The Court reviews "the legal conclusions de novo, the factual findings for
clear error, and the decision to grant a permanent injunction, as well as its scope,
for an abuse of discretion."  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d

1020, 1030 (9th Cir. 2013).  An attorneys' fee award is reviewed for abuse of dis-

cretion.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

"[A]n error of law" is always an abuse of discretion.  *AE ex rel. Hernandez v. Cty.*

*of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

## ARGUMENT

This Court should reverse both the permanent injunction and the fee award

outright.  Neither can be sustained on this record, and there is no reason to give

Oracle (or the district court) yet another shot.  Any remaining merits disputes be-

tween these parties can and should be resolved in the second, ongoing case.

## I. The Permanent Injunction Should Be Reversed.

Oracle's request for injunctive relief is moot.  In addition, the injunction the

district court entered is unconstitutional, unlawful, and inequitable.

### A. Oracle's Request For Injunctive Relief Is Moot.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy'

for purposes of Article III—when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike,*

*Inc.*, 568 U.S. 85, 91 (2013).  Although "[t]he voluntary cessation of challenged

conduct does not ordinarily render a case moot" (*Knox v. Serv. Empls. Int'l Union,*

*Local 1000*, 567 U.S. 298, 307 (2012)), a case becomes moot "if subsequent events

[make] it absolutely clear that the allegedly wrongful behavior could not reasona-

bly be expected to recur" (*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). This principle includes requests for injunctive relief. *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014).

Rimini overhauled its former processes after summary judgment, as evidenced by sworn, uncontradicted declarations submitted to the district court. For example, Rimini's Vice President of PeopleSoft Development averred that "Rimini's current support process does not download or transmit onto Rimini's computer systems any PeopleSoft software or documentation from password-protected Oracle websites." ER312. Instead, "Rimini's current process involves remotely accessing a Rimini client's PeopleSoft environments that Rimini uses to service that client." ER312. Rimini's Vice President of Global Siebel Service Delivery similarly declared that "Rimini's current process does not reproduce Siebel software or documentation licensed to one client from that client to any other client." ER321; *see also* ER315–17; ER327–28 (JD Edwards); ER324–25 (Database). Oracle never presented any contrary evidence—these fundamental changes to Rimini's processes, more than four years ago, are thus uncontroverted. This renders Oracle's request for an injunction moot.

*Rosebrock* is illustrative. The Department of Veterans Affairs was enforcing a regulation in an unconstitutional manner by engaging in selective viewpoint discrimination. 745 F.3d at 966–68. The veteran prevailed on liability, but the dis-

14

trict court denied his request for an injunction because it had become moot—the VA had instructed its officials to eliminate the enforcement inconsistencies.  *See id.* at 968–70.  On appeal, this Court affirmed because:  (1) the policy change "was a clear statement, broad in scope, and unequivocal in tone"; (2) the VA "fully addressed all of the objectionable measures" in the prior enforcement; (3) the veteran's lawsuit was the "catalyst for the agency's adoption of the new policy"; (4) the "recommitment to strict enforcement" had occurred "more than three years ago" by that point; and (5) "based on the record before [the Court]," there was no evidence that the VA had "engaged in conduct similar to that challenged" by the plaintiff. *Id.* at 973–74.

Under this framework, Oracle's request for an injunction is moot under Article III:  (1) Rimini submitted uncontroverted, sworn declarations from the responsible Rimini employees clearly explaining the revised processes and how they work (ER310–29); (2) the revised processes, as set forth in the declarations, squarely and fully address the issues adjudicated at summary judgment—"local hosting" and "cross-use"; (3) Rimini changed its processes to conform to the court's construction of the exemplary licenses, and thus the summary judgment orders were the catalyst for the change; (4) Rimini's transition to its revised processes occurred more than four years ago; and (5) there is no evidence that Rimini has

engaged in the challenged conduct since July 2014, or that Rimini intends to return to its prior processes.

The Judiciary has no power to order a party to stop doing something it stopped long ago. *See Los Angeles Cty. v. Davis*, 440 U.S. 625, 631–33 (1979). And not only did Rimini spend millions of dollars, years ago, to promptly change its conduct after summary judgment, it then *filed a separate action* to obtain a judicial declaration that its revised processes are lawful. This brings to the fore the question that Judge Friedland raised during oral argument the last time this case was before this Court: "Why [does] there also need[] to be an injunction, when it seems like [Rimini is] trying to comply" and there is "a whole lawsuit to figure out if they're complying with the liability determinations?" ER363.

Oracle's request for an injunction is moot under Article III, and the Court should reverse the district court's injunction for that reason alone. *See Rosebrock*, 745 F.3d at 974.

## B. No Injunction Can Be Sustained On This Record.

The district court committed *legal* errors at each step of the four-factor test required by *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 1. The Irreparable Injury Requirement Was Not Met.

In its irreparable injury analysis, the district court (a) failed to analyze the causal nexus requirement, and (b) violated the Seventh Amendment.

16

### a. There is no causal nexus.

The mere invasion of "the right to exclude others" is insufficient to justify "permanent injunctive relief." *eBay*, 547 U.S. at 392. Rather, the party seeking a permanent injunction must prove not only some irreparable injury, but also a direct "causal nexus" between that injury and the infringement. *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*"). As this Court has recognized, causation is a "necessary requirement for obtaining" injunctive relief. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011).

To establish a causal nexus, the rights holder must prove that "the infringing feature," and not some other aspect of competition between the parties, "drives consumer demand for the accused product" or service. *Apple II*, 695 F.3d at 1375. There cannot be a causal nexus "if consumers buy [the infringing] product for reasons other than the [infringing] feature." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("*Apple I*"); *see also Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1365 (Fed. Cir. 2013) ("*Apple III*"). "It is not enough" to assert "some insubstantial connection between the alleged harm and the infringement and check the causal nexus requirement off the list." *Apple II*, 695 F.3d at 1375.

For example, in *Apple II*, the Federal Circuit rejected Apple's attempt to establish a causal nexus "circumstantially" by "connecting the dots," because Apple

"presented no evidence that *directly tie*[*d*] consumer demand for [the competitor's product] to [the] allegedly infringing feature." 695 F.3d at 1375 (emphasis added). The court stressed that Apple was required to present evidence that consumers buy the infringing product "*because* it is equipped with the" infringing feature. *Id.* at 1375–76 (emphasis added).

Similarly, the copyright holder in *Perfect 10* claimed that Google's search engine caused irreparable harm to the rights holder's business through lost customers by making infringing images freely available. 653 F.3d at 981. But there was no causal nexus because the rights holder "failed to submit a statement from even a single former subscriber who ceased paying for [its] services because of content freely available via Google." *Id.* at 982.

Here, the supposedly irreparable injury the district court identified was harm to Oracle's goodwill and reputation. ER23. Even assuming, *arguendo*, that there was sufficient evidence to support this finding, the court failed to make the further, necessary finding of a direct causal nexus between this harm and the specific infringing features of Rimini's prior support processes.

*i. The district court ignored the causal nexus requirement.* Even though Rimini argued repeatedly that there must be a causal nexus before injunctive relief may be granted (D.Ct. Dkt. Nos. 906 at 8–13; 1069 at 5; 1130 at 11–14; 1168 at 10–13), the district court failed even to *acknowledge* this prerequisite to injunctive

relief. The court did not cite, much less distinguish, this Court's decision in *Perfect 10* or any of the Federal Circuit cases that Rimini has cited and briefed repeatedly. And the court made no finding of a causal nexus based on record evidence. Indeed, the term "causal nexus," which is well-established in the context of intellectual property injunctions, appears nowhere in the order below.

The district court's failure even to address this prerequisite to injunctive relief is, alone, an abuse of discretion requiring reversal of the injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

### ii. *The district court's irreparable harm findings do not establish a causal nexus.*

The court found that Rimini and Oracle competed in the software support market, that Rimini's infringement enabled it to rapidly grow its market share by offering vendor-level support at half the price of Oracle support, and that Rimini's lower prices led some Oracle customers to believe that Oracle was overpriced, thus "erod[ing] the bonds and trust that Oracle has with its customers." ER24. None of these findings (or any others in the court's order) "*directly* tie[s] consumer demand" for Rimini's prior support processes to the specific "infringing feature[s]" of those processes. *Apple II*, 695 F.3d at 1375 (emphasis added).

*First*, the only acts that have ever been adjudged infringing in this lawsuit involve specific forms of "local hosting" and "cross-use." *See* 879 F.3d at 957–60; *infra* at I.C.1. And neither the district court nor Oracle has ever identified a single

19

client that viewed Oracle negatively or chose Rimini's services *because* Rimini "local hosted" or engaged in "cross-use." *See* ER23–24. Any causal nexus is foreclosed because Oracle, like the rights holder in *Perfect 10*, failed to identify any customer who chose Rimini because of the acts of infringement. 653 F.3d at 982. Nor is there any evidence of how Rimini's "local hosting" or "cross-use" led to Oracle's loss of goodwill.

*Second*, the court concluded that Rimini offered lower prices than Oracle, and that Rimini's "copyright infringement allowed it to offer support services without licensing the ninety-three different copyright software products from Oracle or having to expend significant resources in time and money in developing its own competing software." ER23–24. This makes no sense. Oracle recoups its software development expenses through its software licensing fees. Rimini is not a software company, and competes with Oracle only in the *aftermarket*, for software *support*, where its status as a third party supporting Oracle licensees is lawful. The district court's criticism is like faulting the mechanic for charging less than the dealership for maintenance because the mechanic did not *make* the car. In any case, this finding by the district court has nothing to do with "local-hosting" or "cross-use," and it therefore cannot form the basis of a causal nexus.

*Third*, the district court also concluded that Rimini's infringement enabled it to "rapidly build its business" and "increas[e] [its] market share." ER23. But the

court made no finding that *specific acts* of "local hosting" or "cross-use" affected Rimini's growth in the aftermarket for software support, rendering "the causal link between the alleged infringement" and Rimini's share of the market "too tenuous." *Apple II*, 695 F.3d at 1376. In any event, the causal nexus analysis focuses on the *harm* to the rights-holder, not the *benefit* to the infringer. *Id.* at 1375–77.

*Fourth*, the court's finding that Rimini "landed clients" by telling customers that Oracle was overpriced both contradicts the jury verdict and is based on evidence that plainly fails to establish a causal nexus. At trial, Oracle sought over $100 million in lost profits damages on the theory that Rimini's infringement (and intentional interference) caused customers to leave Oracle and join Rimini. *See* D.Ct. Dkt. 747 at 17–18; ER528; ER1580. The jury rejected Oracle's request outright, finding that Oracle lost, and Rimini gained, *zero profits* from the infringement. ER458; ER462–63. Where, as here, a claim for an injunction rests on a theory of lost profits, the lack of "lost profits" means that the Court "must vacate the injunction." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383–84 (Fed. Cir. 2017).

The evidence on this point cannot establish a causal nexus in any event. Oracle co-CEO Safra Catz testified that Rimini told Oracle's customers that they charge "up to 50 percent [less] than Oracle," causing those "customers [to] wonder all of a sudden whether [Oracle] [was] overcharging them," "break[ing] the bonds

21

and the trust that [Oracle] ha[d] with [its] customers." ER953–54. But Catz never discussed "local hosting" or "cross-use." Oracle expert Elizabeth Dean testified that Rimini "couldn't have had a business" had it not infringed (ER772), but never connected any injury to goodwill to any infringing practices—indeed, she disclaimed any knowledge about whether Rimini had "locally hosted" or engaged in "cross-use" for any particular client (*see* ER768; ER772–73).

**iii. *The evidence in the record disproves a causal nexus.*** Oracle's own evidence establishes that licensees left Oracle for reasons having nothing to do with Rimini, let alone infringement, foreclosing a causal nexus. *See Perfect 10*, 653 F.3d at 982. Oracle's expert Edward Yourdon testified not only that Rimini's clients come from the same 5% of Oracle licensees that Oracle has been losing annually even before Rimini entered the market (ER802; ER811), but also that actual licensees in the case considered numerous factors when leaving Oracle (ER803–05 (*e.g.*, "the availability of reliable alternatives"; the option of "self-support"; the "stagnation of their existing system")). None of those factors have anything to do with Rimini's infringement. Oracle licensees (Rimini clients) testified at trial that they left because of Oracle's lack of value for the high price point and poor service. *See* ER781–82; ER857; ER916; ER923–27; ER930–31. Not one Oracle customer moved to Rimini *because* of "local hosting" or "cross-use."

There is not legally sufficient evidence to support the causal nexus require-ment.  The Court should reverse the injunction outright.

### b.    The district court violated the Reexamination Clause.

An adjudicated *innocent* infringer such as Rimini may not be enjoined.  *See Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 903 (9th Cir. 1997).  The district court initially attempted to overcome centu-ries of equitable practice by relying on the intentional conduct underlying the hack-ing verdicts to support its irreparable harm determination (ER427), but the verdicts based upon that intentional conduct have now been reversed.  879 F.3d at 962.  Ra-ther than reconsider the injunction in light of the jury's finding of "innocent" in-fringement, the court substituted its own finding that Rimini acted with "conscious disregard for Oracle's software copyrights."  ER23.  That finding violates the Sev-enth Amendment's Reexamination Clause.

*i. Innocent infringement does not warrant injunctive relief.*  District courts may grant injunctions when "reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  A different provision, inapplicable here, expressly authorizes injunctions against innocent infringers (17 U.S.C. § 405(b))—establishing that without such express authorization courts may not enjoin adjudi-cated innocent infringers under the Copyright Act.  *See Jama v. I.C.E*, 543 U.S. 335, 341 (2005) (courts do not "assume" Congress has permitted something

"when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest").

The Copyright Act incorporates "well-established principles of equity," and an injunction representing "a major departure from the long tradition of equity practice" cannot stand. *eBay*, 547 U.S. at 391. Enjoining Rimini would be such a major departure because no court has *ever* affirmed a permanent injunction against an adjudicated innocent infringer under the Copyright Act.

This Court has recognized that injunctions should not issue against "innocent infringers." *Westinghouse*, 106 F.3d at 903. That is because the "purpose of an injunction is to prevent future violations" of the law. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). An innocent infringer "will not need to be deterred from future infringements." U.S. Dep't of Commerce, *White Paper on Remixes, First Sale, and Statutory Damages, U.S. Patent & Trademark Office*, 91 (Jan. 2016). Instead, an innocent infringer will conform its conduct once informed of the boundary inadvertently transgressed. *See Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969). As summarized above, Rimini overhauled its former processes no later than July 2014, at great expense, making prospective injunctive relief unnecessary and improper. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996) (where

"there is no probability or threat of continuing infringements, injunctive relief is ordinarily inappropriate").

To be sure, "injunctions may be issued without a showing of willful or deliberate infringement." *Williams Elecs., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 878 (3d Cir. 1982). But the *absence* of willfulness is not equivalent to an *affirmative* jury finding of innocence; infringement can be—and most often is—neither willful nor innocent. *See Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986). This Court should not become the first appellate tribunal to affirm a permanent injunction against an adjudicated innocent infringer.

**ii. The district court contradicted the jury's finding of innocence.** Apparently recognizing that an innocent infringer cannot be enjoined, the district court *ignored* the jury's innocence finding, and substituted its own contrary finding that Rimini acted with "*conscious disregard* for Oracle's software copyrights." ER23 (emphasis added). That finding, and the resulting injunction, violate the Seventh Amendment's Reexamination Clause.

"[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages" under the Copyright Act, such as whether infringement is innocent, willful, or neither. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998). The Reexamination Clause is even "more important" than the jury trial right itself (*Parsons v. Bedford*, 28 U.S. (3 Pet.) 433,

447 (1830) (Story, J.)), because it prevents courts from second-guessing the jury's factual findings (*see Dimick v. Scheidt*, 293 U.S. 474, 487–88 (1935)). Thus, "it would be a violation of the [S]eventh [A]mendment right to jury trial for the court to disregard a jury's finding of fact" (*Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991)) when "making *any* subsequent rulings" in equity (*Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (emphasis added)). "[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determination in deciding the equitable claims." *Id.*

Oracle attempted to prove at trial that Rimini willfully infringed Oracle's copyrights. ER506–07. The jury not only rejected Oracle's willfulness argument, but also expressly found that Rimini's infringement was "innocent." ER460; ER655. This meant, according to the jury instructions, that Rimini "was not aware" and "had no reason to believe that its acts constituted" infringement. ER655.

In ordering the injunction, the district court did not even mention the jury's "innocent" infringement finding, instead substituting its own contrary finding— that "the evidence in this action established" that Rimini infringed with "conscious disregard for Oracle's software copyrights." ER23. This violated the Reexamination Clause because "conscious disregard" is the antithesis of innocence; indeed, it

is the very definition of "*willful infringement*." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed. Cir. 1987) (emphasis added); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

Oracle has previously suggested to this Court that the "conscious disregard" finding was not "necessary" to the injunction. Dkt. 7 at 8. Yet, when Oracle recently issued a press release on the subject of the injunction, it included only two sentences from the district court's 18-page order—the first of which is the court's finding that Rimini acted with "conscious disregard for Oracle's software copyrights." ER188. Having publicly proclaimed the importance of the court's "conscious disregard" finding, Oracle cannot disavow it now. In fact, it was at *Oracle's insistence* that the district court found in the first injunction order that Rimini acted with "callous disregard" (*see* D.Ct. Dkt. 907 at 12; ER418), and now with "conscious disregard" (ER23). Having invited—indeed, *trumpeted*—this constitutional error, Oracle cannot pretend that it is somehow harmless.

### 2.  The Remaining *eBay* Factors Were Not Satisfied.

The district court also erred in its analysis of whether: (a) the "remedies available at law, such as monetary damages, are inadequate to compensate for [the irreparable] injury"; (b) the "balance of hardships" weigh in favor of an injunction; and (c) "the public interest" would "be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.

27

**a.** The jury's $35.6 million damages award sufficiently compensated Oracle for "the entire scope of the infringement" (ER653), and the court's $22.7 million prejudgment interest award is also "an element of compensation" (879 F.3d at 964). Thus, Oracle has been fully compensated for all harms suffered through the date of judgment. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) ("the mandatory injunction was an inappropriate remedy" because the appellant could have been "compensated in damages and back pay"). An injunction is unnecessary to remedy any future harm because, as established above, Rimini stopped the conduct adjudicated as infringing long before judgment was entered. *See Harolds Stores*, 82 F.3d at 1555 (injunction unnecessary where "there is no probability or threat of continuing infringements"). If Oracle can prove compensable harm resulting from Rimini's current processes, it can seek relief in the second case.

The district court concluded that monetary damages are inadequate because they were "uniquely complex and difficult to determine," and "lost market share and erosion of company goodwill are … difficult to quantify and compensate." ER24. But a jury's damages award is not "rendered equitable simply because [the value of the award is] not fixed or readily calculable from a fixed formula." *Feltner*, 523 U.S. at 353 (when "the amount of damages [is] uncertain, their assessment [is] so peculiarly within the province of the jury that the Court should not alter it").

That the jury did not award as much as Oracle sought does not make monetary re-

lief "inadequate"; in suggesting otherwise, the district court again substituted its

judgment for the jury's.

**b.** The district court determined that the balance of hardships favors Oracle

as the "holder of a copyright." ER25–26. But a presumption in favor of rights

holders is not permitted. *eBay*, 547 U.S. at 394. The court's reasoning also ig-

nores that the injunction enjoins conduct that was abandoned long before the trial

even began, that is not protected under the Copyright Act, that has not been adjudi-

cated in this case, and that is being litigated in the second case. *See infra* at I.C.1.

The district court relied on *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,

Ltd.*, 518 F. Supp. 2d 1197, 1221–22 (C.D. Cal. 2007), for the proposition that an

injunction is appropriate "to ensure that the misconduct does not recur as soon as

the case ends." ER24. Rimini, an innocent infringer, bears no resemblance to the

"knowing[] and intentional[]" infringers in that case (*Metro-Goldwyn-Mayer Stu-

dios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 921 (2005)), whose very business de-

pended on infringement and who made only bare assertions of reform. *See Grok-

ster*, 518 F. Supp. 2d at 1221–22. The undisputed evidence here, in contrast, estab-

lishes that Rimini ceased its innocently infringing acts years ago by revising its

processes and then filed a new action to confirm that its revised processes do not

infringe. The balance of hardships weighs in Rimini's favor.

Moreover, while Rimini submitted uncontradicted evidence that it would suffer substantial irreparable harm if the injunction were allowed to stand (ER189–91), Oracle submitted *no evidence* of any harm in the absence of an injunction. In fact, the district court (expressly and accurately) found that Oracle did not experience "any harm" while the previous injunction was stayed during the pendency of the prior appeal (some 13 months, plus several months on remand in which no injunction had been granted). ER4. Nor, given the second case, would it suffer any irreparable harm in the absence of an injunction at all.

**c.** The district court ruled that preventing "the possibility of future copyright infringement is in the public interest," and that an injunction would give "Oracle an incentive to continue to develop software for public use." ER26. But Rimini is not a software company and does not compete with Oracle in the software market; and Oracle has no exclusive rights in the software *support* market. The district court's invocation of Oracle's incentives to develop software shows just how unmoored the injunction is from the adjudicated acts of infringement.

At the last oral argument before this Court, Oracle admitted that what it really wants is "the ability to hold [Rimini] in contempt"—which "is no small thing." ER364. And Oracle recently proclaimed that the Court's denial of Rimini's stay application may allow Oracle to "subject [Rimini] to contempt of court penalties." ER188. But such contempt proceedings could involve only Rimini's *revised* (and

30

fundamentally different) processes, which the parties are currently litigating in a separate case, at Oracle's request. The public interest is not served by that kind of gamesmanship. *See eBay*, 547 U.S. at 396–97 (Kennedy, J., concurring) (an injunction does "not serve the public interest" where it "is employed simply" to gain "undue leverage").

## C. The Injunction As Entered Is Improper.

The injunction entered by the district court cannot withstand scrutiny under basic principles governing the scope and clarity of injunctions.

### 1. The Injunction Is Overbroad.

An injunction may issue only when "reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The scope of a copyright injunction must be limited to adjudicated conduct and "narrowly tailored … to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *see also* 4 *Nimmer on Copyright* § 14.06[C][1][a] ("scope of the injunction should be coterminous with the infringement"). The injunction here reaches far beyond "those individual rights that Plaintiffs are permitted to enforce in this action" and must be reversed. *Price*, 390 F.3d at 1117.

### a. "Cross-use" cannot be enjoined under the Copyright Act.

Current-customer "cross-use"—a theory that Oracle made up from whole cloth—has not been finally adjudicated in this case, and in any event does not constitute copyright infringement. It cannot be enjoined under the Copyright Act.

This Court's previous opinion distinguished between two forms of so-called "cross-use." The first was current-customer "cross-use," which "is the making of development environments, under color of a license held by one identifiable customer of Rimini, for another identifiable customer of Rimini that also holds a license." 879 F.3d at 956. The second was future-customer "cross-use," which is "the creation of development environments under a given license for … licensees who have yet to become customers of Rimini." *Id.*

This Court previously upheld liability as to JD Edwards and Siebel only on the ground "that [Rimini] created development environments for *future customers* using the license of an existing customer on the basis that *future customers* presumably would have licenses that would permit them to hire Rimini to create development environments." 879 F.3d at 957 (emphases added). This Court left no doubt about the limited scope of its ruling when it proceeded to discuss only "whether it would be copyright misuse to forbid Rimini from creating development environments for licensees *before* they have become customers." *Id.* at 958.

32

Although Rimini ordinarily steps into the shoes of its clients for purposes of the rights granted under their licenses with Oracle (*Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 758 (7th Cir. 2006)), the Court ruled that Rimini does not yet stand in the shoes of a *future* client by whom it is not yet authorized to make support copies on the client's behalf (879 F.3d at 957). Rimini does not challenge that ruling here or in the second case.

The injunction, however, goes far beyond the conduct addressed in the previous appeal, purporting to enjoin Rimini from "us[ing] J.D. Edwards software … on one licensee's computer systems … for the *benefit of any other licensee*." ER15 (emphasis added); *see also* ER14 (similar, for PeopleSoft); ER16 (similar, for Siebel). By its express terms, the injunction prohibits the copying of software on behalf of *another existing Rimini client* (and Oracle licensee)—thus adopting Oracle's *current-customer* "cross-use" theory, which this Court laid out but then declined to reach in the previous appeal.[*]

---

[*] Rimini previously asked the Court to rule on current-customer "cross-use." *See* 879 F.3d at 957. Oracle, in contrast, asked this Court to narrowly uphold liability on the ground that Rimini "copied materials not licensed to any customer" (*i.e.*, future-customer "cross-use"). Answering Brief for Appellees, No. 16-16832, Dkt. 50 at 24. Ultimately, this Court decided that the full "cross-use" issue had not been clearly raised in the opening appellate brief (*see* 879 F.3d at 957), and declined to address current-customer "cross-use" *at all*. On remand, Rimini argued that the injunction could not prohibit "cross-use" because it was not within this Court's judgment, did not constitute copyright infringement, and was permitted by the licenses. D.Ct. Dkt. No. 1130 at 20–21, 23; D.Ct. Dkt. No. 1131, Obj. # 50–55; D.Ct. Dkt. No. 1133, Obj. #3, 8, 12. At the hearing below, Rimini argued that

The Court should reverse the injunction because "cross-use" as to Rimini's current clients is not copyright infringement, and at most involves questions of contract law, not copyright infringement.

***i. Every copy Rimini makes is authorized by the licenses.*** It is undisputed that *every* Rimini client has a license to Oracle software, and that *no* Rimini client ever received software for which it did not have a license. *See* 879 F.3d at 952 n.1 ("All of Rimini's customers pertinent to this dispute were licensees of Oracle's software"). Rimini made many copies of Oracle software, but those copies were for *Oracle licensees*—Rimini clients that by contract expressly authorized Rimini to step into their shoes and exercise their rights under the license to make copies on their behalf. Oracle has never presented any evidence that at any time any Rimini client received a copy of software to which it did not have a valid license.

It is well established that Rimini, as its clients' agent or contractor, may "act in [its clients'] stead" (*Automation By Design*, 463 F.3d at 757), and "fix, update, debug, customize, test and modify" its clients' software on their behalf (2 *Nimmer on Copyright* § 8.08[D][2]). The licenses themselves expressly provide that third-party support providers like Rimini may copy the licensed software to the extent

---

"cross-use" "is not an infringement problem, but a license problem." ER230 ("cross-use is not copyright infringement"); ER230–34. In granting Oracle's motion for an injunction, the district court squarely ruled that "cross-use … constitutes copyright infringement." ER31. Rimini's challenge to that ruling is properly preserved for and presented in this appeal.

necessary to provide support. ER1061–1109. As this Court previously (and correctly) ruled, "the very work of maintaining customized software requires copying the software," and Oracle's licensees may "hire … Rimini to maintain their software." 879 F.3d at 956–57; *see also* 17 U.S.C. § 117(a); *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1109 (9th Cir. 2010).

The injunction, however, prohibits Rimini from "us[ing]" Oracle's software "on one licensee's computer systems … for the benefit of any other licensee"—what Oracle calls "cross-use." ER14. Oracle made up its theory of "cross-use," and foisted this injunction language on the district court, which uncritically accepted it. It does not appear in the Copyright Act, and no appellate court has ever held that (current customer) "cross-use" constitutes copyright infringement.

Oracle purports to ground its "cross-use" idea in language in some of the license agreements that provides that copies of the software be made "solely for [the] Licensee's internal data processing operations." 879 F.3d at 959. But as Oracle admitted at trial, "what this [language] means is that the licensee can't go out and begin to perform PeopleSoft services for others and hereby prevent Oracle from selling more PeopleSoft software." ER961. It is true that a licensee may copy, or authorize the copying of, the licensed software only for its own internal support and not for someone else. But it is *legally irrelevant where that copy orig-*

*inated*—whether it was made from an installation disc, a copy the client download-ed, a copy Rimini downloaded, or a copy from another Rimini client.

The Copyright Act protects the reproduction right, which is the right to fix a protected expression into a tangible medium. Reproduction occurs—irrespective of the *source or purpose*—when the protected expression is fixed into the medium, *e.g.*, when an engineer types protected lines of code or pushes CTRL+C (copy) on the protected expression and CTRL+V (paste) into the relevant environment. For example, if a playwright licenses a script, reproduction would occur the moment the licensee pushes "copy" on a Xerox machine, takes a photograph of the script, or even pens down the lines of the script—whether it was done from the original script, a different copy of the script, or written from memory. *See* Roger E. Schechter & John R. Thomas, *Principles of Copyright Law* 187–88 (2010). The reproduction right concerns only the moment the protected expression is put into a tangible medium; it has nothing to do with the source from which the copy is made, nor subsequent use to which the copy is put.

Copyright law has long recognized the "important distinction between the *work itself* and the object … in which it is fixed or embodied." Schechter & Thomas, *supra*, at 31 (2010) (emphasis added); *see also Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 (2007); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1336 (9th Cir. 1984) ("copyright is separate and independent from … the material

object in which it is embodied"). Copyright protections extend to *the work*, not the object—such as a particular file—in which it is embodied, nor the use to which it is put. 17 U.S.C. § 106(1); *see also id.* § 202.

Thus, "cross-use," or using a copy of Licensee *A*'s software to support Licensee *B* (which has identical rights), is not copyright infringement, as each licensed client was authorized to fix Oracle's protected expression into a tangible medium. The licensee could do that in any number of ways, and the source of the protected expression, and subsequent use of the protected expression, is legally irrelevant *as a matter of copyright law*. The district court's own summary judgment order recognized as much, in rejecting Oracle's "flawed assumption that the rights to use and install the licensed software are restricted and tied solely to the specific software installation media delivered by Oracle," and holding that such a position "is in direct contention with the express language of the … license[s] as well as federal copyright law." ER1269.

It is a violation of neither the Copyright Act nor the license agreements to reproduce Oracle's protected work from *any* source, so long as the licensee receiving the copy is entitled to make the reproduction. Oracle does not—and cannot—cite one example of any Rimini client receiving a copy of Oracle software it was not licensed to receive. A complaint about the source of a licensee's copy does not constitute infringement and thus cannot be lawfully enjoined under the Copyright

Act, which provides only for injunctions to restrain infringement. *See* 17 U.S.C. § 502(a).

> **ii. "Cross-use" is not proscribed by the Copyright Act.** Not every breach of a license agreement constitutes copyright infringement; many, if not most, are just breaches of contract. This Court has developed a standard for identifying the few license breaches that also constitute copyright infringement. *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010). Under that standard, "cross-use" at best amounts to a breach of contract, not copyright infringement. Thus, "cross-use" cannot be enjoined under the Copyright Act.

Whether a departure from the license agreement constitutes copyright infringement as distinguished from a mere breach of contract depends on whether the particular contract language is a "condition" that "limit[s] a license's scope … the breach of which constitute[s] copyright infringement," or merely a "covenant," the "breach of which is actionable only under contract law." *MDY Indus.*, 629 F.3d at 939. This Court looks to state contract law to determine whether the provision is a covenant or condition. *See id.* (looking to Delaware law). Moreover, "for a licensee's violation of a contract to constitute copyright infringement, there must [also] be *a nexus between the condition and the licensor's exclusive rights of copyright*." *Id.* at 941 (emphasis added). A license provision cannot be a "condition," the breach of which gives rise to a copyright claim, if it merely prohibits some disfa-

vored conduct that bears little or no relation to a protected right under the Copy-right Act.  *See id.*

To illustrate, if a licensee were granted "the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages," then making "a hundred copies of the book" would be copyright infringement be-cause the copying exceeded the license in a way that infringed the Copyright Act's prohibition on "reproduction."  *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1316 (Fed. Cir. 2005).  "Alternatively, if the li-censee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a work does not violate any right protected by copyright law."  *Id.*

Under the relevant law, a restriction to "use" the software "solely for" the li-censee's "internal data processing operations" is not a condition, but merely a cove-nant.  Oracle's theory of "cross-use" is not based in an exclusive right under the Copyright Act.

*First*, the exemplary licenses are governed by California and Colorado law.  *See* ER1085; ER1267 n.5.  In both jurisdictions, conditions "are not favored in the law" (*Frankel v. Bd. of Dental Exam'rs*, 46 Cal. App. 4th 534, 550 (Ct. App. 1996); *Maine Elec., Ltd. v. Printz Servs. Corp.*, 980 P.2d 522, 527–28 (Colo. 1999)), and if there is ambiguity, "the agreement will be held to amount to a cove-

39

nant merely" (*Firth v. Los Angeles Pac. Land Co.*, 28 Cal. App. 399, 402 (Ct. App. 1915)). Nothing in the license agreements makes using the software "solely for [the] Licensee's internal data processing operations" a condition of the license, rather than merely a contractual promise. *See Rosecrans v. Pac. Elec. Ry. Co.*, 21 Cal. 2d 602, 605 (1943) (requiring express language of condition); ER1061–1106.

*Second*, Oracle's "cross-use" theory is not grounded in copyright. Just like restricting a licensee's ability to read the last ten pages of a copyrighted book, if Oracle's licenses are read to restrict the source or use of a licensed copy, that provision would not be "grounded in an exclusive right of copyright" (*MDY*, 629 F.3d at 940), and would amount only to a covenant. Every Rimini client was licensed to reproduce Oracle's protected expression—lines of code—in every instance at issue in this case. That is not disputed. The *source* of those lines of code or how the licensee *used* the software are irrelevant to Oracle's reproduction right (as secured by the Copyright Act), and therefore cannot constitute a basis for the injunction.

### b. The injunction enjoins conduct that this Court recognized is not infringing.

The injunction also enjoins conduct that appears nowhere in the license agreements and that this Court expressly recognized does not constitute copyright infringement. The clearest example is the district court's wholesale adoption of Oracle's proposed "facilities limitation" for JD Edwards and Siebel (limiting *where* copies may reside), prohibiting Rimini from using JD Edwards or Siebel

software on "any computer systems other than a specific licensee's own computer systems." ER15. This language mirrors the injunction's facilities limitation for PeopleSoft (ER14), but the JD Edwards and Siebel licenses do *not* contain a facilities restriction like the PeopleSoft licenses. ER1067–82. Unlike the JD Edwards and Siebel licenses, the PeopleSoft exemplar licenses "contain[] *an additional limitation* about the licensee's facilities." 879 F.3d at 959 (emphasis added). The PeopleSoft licenses are "more restrictive[] than the J.D. Edwards and Siebel licenses" *because* the PeopleSoft licenses "limit[] copying the licensed software to only the licensee's facilities." *Id.* The district court's decision judicially re-writes the JD Edwards and Siebel licenses, at Oracle's urging, and is an abuse of discretion.

### c. The injunction improperly enjoins conduct far beyond that which was decided in the previous appeal.

This Court's judgment is conclusive only as to the narrow categories of conduct actually decided in the previous appeal. Restatement (Second) of Judgments § 27 cmt. o (1981); *see City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1004 n.4 (9th Cir. 2010); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 897–98 (2d Cir. 1997); *see also* ER258 (Oracle's counsel agreeing that "the issues [this Court] reached are what are binding in the future litigation between Oracle and Rimini or in the *Rimini II* case"); ER4 (district court agreeing that "several of the legal and factual issues raised in the prior appeal" will be addressed in the

41

"second separate action between the parties"). And an injunction may "be no broader than the infringement" as determined by *this* Court. 4 *Nimmer on Copyright* § 14.06[C][1][a]; *see also Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (issue is "actually litigated and adjudicated," and thus part of the judgment, when "the parties present[] arguments on the issue, and the district court [makes] a final ruling which [is] appealed and affirmed by this court").

This Court sustained the liability verdict *only* on the following narrow bases:

- PeopleSoft: "Local hosting" was not within the exemplary license;

- JD Edwards & Siebel: "Cross-use" as to potential future clients was not within the exemplary licenses; and

- Database: Reliance on the customer licenses was waived.

*See* 879 F.3d at 956–60, 965. Yet, the district court's injunction extends much further.

For instance, the injunction prohibits Rimini from "us[ing] PeopleSoft software … on one licensee's computer systems to support … [or] for the benefit of any other licensee"—in other words, all forms of so-called "cross-use." *See* ER14. This Court could have ruled on "cross-use" as to PeopleSoft, as Rimini requested, but at Oracle's urging, the Court instead upheld liability only "on the narrow ground of 'local hosting,'" and expressly declined to rule on whether "cross-use" was permitted by the PeopleSoft license. 879 F.3d at 960 n.6. Thus, "cross-use"

42

as to PeopleSoft is *not* part of this Court's judgment, is an open question in *Rimini II*, and may not be enjoined.

The injunction also prohibits the creation of "derivative works" and "distribution" for every product line. ER14–16. But the "derivative works" and "distribution" rights were *never* litigated, let alone *finally* adjudicated, in *Rimini I*. In arguing that derivative works were decided below, Oracle has cited the district court's jury instruction that the PeopleSoft "licenses prohibited Rimini Street from copying or preparing derivative works from PeopleSoft software." ER642. But construing a license as prohibiting certain conduct is not the same as *finding* that the prohibited conduct occurred. The parties never litigated, and neither the jury nor the district court ever found, that Rimini violated the derivative works right. In fact, at summary judgment, Oracle expressly disavowed any reliance on the derivative works right and stated that its claims "concern[] *only the reproduction right*." D.Ct. Dkt. 284 at 9 (emphasis added).

The liability instructions make it even clearer that the jury was precluded from basing liability on derivative works. The instructions laid out three elements to infringement: (1) ownership of the copyright, (2) engaging in one of the exclusive rights (reproduction, derivation, distribution), and (3) permission (*i.e.*, license). ER637. The parties stipulated to ownership. The jury was then instructed that Oracle had "proven the second element" of the claim because the parties

43

agreed that Rimini "*copied*" the software. *Id.* (emphasis added). Nowhere does it say that Oracle proved derivation or distribution. Nor was the jury asked to determine whether Rimini created derivative works or distributed. The jury's only job was to determine whether Rimini had "an express license to *copy* these copyrighted works." ER637 (emphasis added); *see also* ER455–56 (verdict).

The injunction should be reversed because it encompasses derivation and distribution, which were not the basis of liability. *See Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003).

### d. A court may not constitutionally enjoin "access" to source code.

The injunction states that "Rimini Street shall not … *access* J.D. Edwards software source code" (ER15 (emphasis added); *see also id.* (Siebel)), but the jury was never instructed that "accessing" source code was a basis of liability, and Rimini was not held liable for doing so. Indeed, "access" is not an exclusive right under the Copyright Act that could give rise to infringement liability (it is at most a question of contract law)—let alone an injunction. To the contrary, "copyright law" was specifically designed "to encourage ultimate *public access to the creative work of the author*" (*Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015) (en banc) (emphasis added)), and to make "*instantly available* for public exploitation" "every idea, theory, and fact in a copyrighted work" (*Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (emphasis added)).

The injunction's prohibition against accessing Oracle source code also violates the First Amendment. *See Eldred*, 537 U.S. at 219; *Garcia*, 786 F.3d at 747; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322–29 (Fed. Cir. 2016) (Mayer, J., concurring). In our free society, the government cannot prohibit its citizens from reading a copyrighted book. It is "well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564–65 (1969) ("a State has no business telling a man … what books he may read or what films he may watch"). To be sure, the government *may* stop someone from *copying* the copyrighted book, as such prohibitions are fairly within Congress's power to "secur[e] for limited times to authors … the exclusive right to their … writings." U.S. Const. art. I, § 8, cl.8. The Copyright Clause permits exclusivity in "expression," which can be copyrighted, but not "ideas" or information, which "are free" from restraint. *See Eldred v. Reno*, 239 F.3d 372, 376 (D.C. Cir. 2001), *aff'd*, 537 U.S. 186 (2003); *see also N.Y. Times Co. v. United States*, 403 U.S. 713, 726 n.* (1971) (Brennan, J., concurring) ("the copyright laws, of course, protect *only the form of expression* and not the ideas expressed" (emphasis added)).

Prohibiting *access* to copyrighted materials is beyond the government's power, and thus beyond the power of the federal courts to enjoin. "[T]he Framers intended copyright itself to be the engine of free expression" (*Harper & Row Pub-*

*lishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985)), but Oracle proposes to use it for the exact opposite purpose and prohibit mere "access" to expression. That violates not only the Copyright Act, but also the First Amendment.

### 2. The Injunction Is Vague.

The injunction fails to provide Rimini with "fair notice" of what conduct is enjoined, in violation of Federal Rule of Civil Procedure 65(d) and the Fifth Amendment's Due Process Clause. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013); *Stone v. Godbehere*, 894 F.2d 1131, 1133 (9th Cir. 1990). An injunction must be "reasonably clear so that ordinary persons will know precisely what action is proscribed." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985). A vague injunction "leave[s] a litigant uncertain as to what he may or may not do without being in contempt of court." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1525 (9th Cir. 1983).

As just one example of this vagueness, the injunction restricts Rimini's use of Oracle's PeopleSoft software to support a specific licensee's own "internal data processing operations." ER14; *see* ER180; ER182 (objecting to this provision). The district court said that this meant "normal use of the software," which precluded copies of testing and development environments (ER1272); but that ruling does not survive the first appeal, where this Court recognized that the provision of support *requires* copying of software. 879 F.3d at 955–56. Moreover, the meaning of

46

this contractual phrase is among the issues that the parties are currently litigating in *Rimini II*. If nothing else, this vague provision is not grounded in any of the exclusive rights secured by the Copyright Act; it is simply an instruction to obey the license terms, but "blanket injunctions to obey the law are disfavored." *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir. 2004); *see also NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941).

Rimini submitted paragraph-by-paragraph objections to Oracle's proposed injunction, identifying specific terms that fail to provide fair notice of what conduct is enjoined. ER179–84. The district court did not respond to, or even *acknowledge*, Rimini's detailed objections to the injunction. ER18–27. That is reversible error. "Abuse-of-discretion review is respectful, but appellate deference is not unbridled." *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) ("abuse of discretion" when district court "ignore[s]" material factors relevant to injunctive relief).

For all these reasons, the district court's order of injunction should be reversed.

## II. The Attorneys' Fee Award Should Be Reversed.

The district court disregarded this Court's explicit directive to "reconsider[]" the attorneys' fee award on remand "in light of Oracle's *more limited success at litigation*." 879 F.3d at 965 (emphasis added).

### A. The District Court Refused To Apportion Fees.

Under the Copyright Act, district courts have discretion to award the prevailing party a "reasonable attorney's fee." 17 U.S.C. § 505. That provision must be construed *in pari materia* with other federal fee-shifting statutes (*CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016)), which make clear that what is "reasonable" depends "on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). And where, as here, the prevailing party "succeeded on only some of [its] claims for relief," the amount of the award *must* be apportioned to account for the prevailing party's "limited success." *Id.* at 431, 434. Indeed, "the degree of success obtained" is "the most critical factor" in determining the reasonableness of a fee award. *Id.* at 436. Thus, "[i]t is an *abuse of discretion* for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee awarded." *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994) (emphasis added).

Oracle has now lost on every claim it asserted against Ravin, and on 11 of 12 claims it asserted against Rimini. Indeed, Oracle America, which does not own

48

the copyrights in this case, lost *entirely*. *See* Dkt. 957 at 28–29 (Oracle conceding that "the hypothetical license … compensates Oracle America *for nothing*" (emphasis added)). Yet, the district court refused to apportion Oracle's fee award, finding that "this action was first and foremost a copyright infringement action." ER34. The district court's failure to apportion violates this Court's mandate, and contradicts binding Supreme Court precedent.

### 1. The Mandate Requires Apportionment.

A district court on remand must "implement both the letter and the spirit of the mandate, taking into account the court's opinion and the circumstances it embraces." *Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999); *see also Doe v. Chao*, 511 F.3d 461, 466 & n.1 (4th Cir. 2007). The lower court must "act … without variance or examination, only execution." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006). The district court's re-imposition of the exact same fee award failed to implement either the letter or the spirit of this Court's mandate.

Oracle originally alleged 24 claims against Rimini and Ravin (whom Oracle insisted on naming individually), including that they *willfully* infringed Oracle's copyrights, *maliciously* accessed and copied Oracle's software from its website, and *intentionally* interfered with Oracle's business relations. ER1282–1305. At trial, Oracle asked the jury for $245.9 million in damages against both defendants

(ER528–37) as well as punitive damages to punish Rimini and Ravin for their alleged "conscious disregard" of Oracle's rights.  ER506–07.

Virtually all of Oracle's contentions failed.  Oracle abandoned many of its claims after engaging in extensive discovery.  The jury concluded that Rimini's infringement was "innocent," and that Oracle was entitled to a $35.6 million fair-market value license.  ER460.  The jury rejected nearly all of Oracle's remaining claims, including claims alleging that Rimini and Ravin engaged in intentional or willful conduct.  ER455–68.  In all, after trial, Oracle had prevailed on only seven of its 24 total claims, and recovered $50 million of the $245.9 million it sought in compensatory damages.

Despite Oracle's limited success, the district court awarded Oracle $28.5 million in fees jointly and severally against *both* Rimini *and* Ravin because "Oracle won a $50 million verdict against *defendants*—including $35,600,000 for copyright infringement *and* $14,427,000 for the state computer access claims."  ER427 (emphases added).

On appeal, this Court narrowly upheld the jury's infringement verdict against Rimini on only three of the theories Oracle presented below.  *See* 879 F.3d at 956–960 & n.6.  This Court also reversed all hacking liability—eliminating *all* liability against Ravin and *all* liability for any intentional conduct by Rimini—as well as a state-law unfair competition claim.  *Id.* at 962.

As for fees, this Court observed that the district court relied on "the fee-shifting provisions of the Copyright Act *and* the state computer laws," and levied fees against Rimini and Ravin "severally and equally" even though Ravin "was not found liable for copyright infringement." 879 F.3d at 965 (emphasis added). Accordingly, this Court "reverse[d] the judgment with respect to Ravin's liability for fees," "vacate[d] the fee award," and "remand[ed] for reconsideration in light of Oracle's *more limited success at litigation*." *Id.* (emphasis added).

After losing over and over again, Oracle's final degree of success could only charitably be described as "limited," and it is now unquestionably "more limited" than before the appeal. Each successive phase of litigation winnowed Oracle's case in terms of claims and monetary recovery available. Oracle began with 24 claims against two defendants, and prevailed on one claim against one defendant—recovering only a small fraction of the damages Oracle sought. At the end of the day, Oracle lost far more than it won.

But despite this Court's express recognition that Oracle attained only "limited success" after appeal (879 F.3d at 965), the district court concluded that "Oracle is entitled to the same award of fees previously issued by the court." ER34. In determining the amount of fees, the court did not even acknowledge this Court's "limited success" determination. And the district court made only passing reference to the hacking claims, even though its previous fee award was expressly pred-

51

icated on those claims, and even though this Court cited them in remanding for re-consideration.

The district court justified its refusal to apportion based on its assertion that "this action was first and foremost a copyright infringement action," regardless of this Court's "reversal on the state law [hacking] claims." ER34. This was erroneous. The district court dismissed Oracle's failed efforts on the vast majority of its claims on the theory that they "were derivative claims for which Oracle could not receive any additional monetary relief." ER29. That cannot be squared with Oracle's own request to the jury, which posited "nonduplicative amounts" of damages for Oracle's separate claims before the jury. ER604. Oracle also defeated Rimini's argument that the state-law tort claims were preempted by the Copyright Act by arguing that they were *not* duplicative of the copyright claims and instead "protect qualitatively different rights." D.Ct. Dkt. 957 at 28–29. At the end of trial, Oracle sought hundreds of millions of dollars in damages for intentional interference and inducing breach of contract, neither of which had anything to do with copyright infringement. ER604. And even though Oracle spent a great deal of time and money trying to prove its non-copyright claims, the jury rejected *all of them* except the hacking claims, and those were reversed by this Court.

Oracle alleged that Rimini engaged in willful, intentional, and malicious conduct, and that Ravin and Rimini repeatedly lied about their conduct to steal cus-

tomers from Oracle. *See* D.Ct. Dkt 747. Oracle's primary argument at trial was that Rimini engaged in "fraud" (ER496) and built its business on a "wall of lies" (ER483), and that Ravin knew about and "directed" Rimini's intentional miscon-duct (ER506–08). Oracle called Rimini and Ravin liars 72 times during closing argument. ER577. None of this had any relevance to Oracle's copyright infringe-ment claim—and to the extent it did, the jury rejected it in finding that Rimini's infringement was "innocent."

The hacking claims alone comprised much of the discovery effort and trial evidence. Some Oracle witnesses, such as Christian Hicks and David Renshaw, testified *only* on hacking. In its previous fees order, the district court held Ravin "'severally and equally' liable for the award" *because of* those hacking claims. 879 F.3d at 965. On remand, the court barely considered the hacking claims.

Oracle's attacks on Ravin at trial were relentless. Oracle sued Ravin as an individual defendant, and told the jury repeatedly that "CEOs need to be accounta-ble under the law." ER527. Oracle's entire intentional interference theory was that Rimini's purported lies "originated with … Seth Ravin." ER500. Ravin testi-fied for nearly *four days* at trial (several times longer than any other witness)—most of which was dedicated to cross-examination by Oracle. Oracle then called Ravin out by name *115 times* during closing argument. ER474–561; ER596–610. Oracle was insistent that Ravin "should be on the hook for the entire 112.1 million

[in infringement damages], not just [Rimini]." ER603. Yet, Ravin has been absolved of all liability.

The district court's order effectively held that Oracle achieved the same amount of success after the appeal as it did before appeal. That cannot be squared with this Court's decision in the first appeal.

### 2. The Law Requires Apportionment.

The district court refused to reconsider the fee award on remand because Oracle's single copyright claim was "related" to its unsuccessful claims. Oracle previously made this argument on appeal in support of affirmance (Answering Brief for Appellees, No. 16-16832, Dkt. 50 at 55), and this Court implicitly rejected that argument in vacating and remanding the prior fee award (879 F.3d at 965). But *even if* Oracle's successful and unsuccessful claims were related, the district court was *still* required to apportion and "consider the relationship between the extent of success and the amount of the fee award." *Hensley*, 461 U.S. at 438. The Supreme Court has held that where "a plaintiff has achieved only partial or *limited success*, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate *may be an excessive amount.* This will be true *even where the plaintiff's claims [are] interrelated.*" *Id.* at 436 (emphases added); *see also McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (district court

must assess "the significance of the overall relief obtained … in relation to the hours reasonably expended on the litigation" even where claims are related).

For example, as the Supreme Court has explained, if a plaintiff "prevail[s] on only one of [its] six general claims … a fee award based on [all hours expended on the case] *clearly would* [*be*] *excessive*." *Hensley*, 461 U.S. at 436 (emphasis added). Even if the "plaintiff obtained significant relief" on that one successful claim, a "reduced fee is appropriate if the relief … is limited in comparison to the scope of the litigation as a whole." *Id.* at 438. This Court has likewise held that it was "unreasonable to grant … more than a comparable portion of the fees … requested" where the plaintiff "prevailed on one of his nine original claims" and recovered "less than one-tenth" of what "he requested in settlement." *McCown*, 565 F.3d at 1103–05.

If it is "clearly … excessive" for a plaintiff to recover all fees expended when it "prevail[s] on only one of … six general claims" (*Hensley*, 461 U.S. at 436), then *a fortiori* it is excessive for Oracle to recover $28.5 million in fees when it attained even "more limited success" (879 F.3d at 965) and prevailed on only one of *24 claims* and against only one of two *defendants*. Indeed, Oracle's $35.6 million verdict "is limited in comparison" to the $245.9 million it sought. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (courts are "obligated to give primary con-

sideration to the amount of damages awarded as compared to the amount sought"). Thus, a "reduced fee" is required. *Hensley*, 461 U.S. at 440.

The district court did not even cite *Hensley* or acknowledge the black-letter requirement of apportionment. Nor did the court consider the relationship between Oracle's limited success and the fee award. Instead, the court believed that a finding of relatedness ended the inquiry. The district court thereby abused its discretion, and its attorneys' fee award should be reversed. *See McGinnis*, 51 F.3d at 810.

### B. Oracle Failed To Adduce Apportionment Evidence.

As the party requesting fees, Oracle had the burden to "document[] the appropriate hours expended and hourly rates" charged in such a manner that would "enable a reviewing court" to apportion the fees and determine the reasonableness of the fee award. *Hensley*, 461 U.S. at 437. Oracle refused to meet this burden, and accordingly, it should receive no fees whatsoever. At minimum, the Court should substantially reduce Oracle's fee award to conform to the only evidence on apportionment in the record.

### 1. Oracle Should Receive No Fees.

Where the requesting party makes a "deficient presentation" in requesting and apportioning its fees, courts may "refus[e] to award any fees whatsoever." *Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999). After all, there is "no

need for such a large expenditure of judicial resources in the face of such a misera-
ble presentation by a plaintiff's attorney." *Id.*

Here, this Court remanded the attorneys' fee award for the district court to
"reconsider[]" the fee award "in light of Oracle's more limited success." 879 F.3d
at 965. This Court's specific reference to Oracle's "more limited success" can
mean only one thing: that Oracle was required to supply the district court with ev-
idence that would allow it to apportion Oracle's requested fees. *See Hensley*, 461
U.S. at 436 (apportionment required when "a plaintiff has achieved only partial or
*limited success*") (emphasis added).

On remand, contrary to *Hensley* and the mandate, Oracle did not even at-
tempt to present evidence that would enable a reviewing court to apportion its fees.
The parties have been litigating the propriety and amount of the attorneys' fee
award since November 13, 2015. D.Ct. Dkt. 917. Together, the parties submitted
over 140 pages of briefing and over 120 exhibits; participated in two hearings and
received two district court orders on fees; and are now on their second appeal of
the award. Not once has Oracle ever submitted *any* evidence (or even argument)
apportioning its fees to account for its partial success, as the law requires.

It is not the Judiciary's job to provide a sophisticated party like Oracle with
repeated opportunities to establish a fee award—enough is enough. *Kirtsaeng v.
John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016) ("an application for attor-

ney's fees should not result in a second major litigation"). Oracle's knowing re-
fusal to submit evidence apportioning its fees means that it should receive none
whatsoever. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204 n.4 (9th Cir.
2013); *Norris*, 191 F.3d at 1052; *see also Brown v. Stackler*, 612 F.2d 1057, 1059
(7th Cir. 1980).

### 2.   At Minimum, The Award Should Be Reduced.

While Oracle refused to submit apportionment evidence, Rimini submitted
an expert report on apportioning Oracle's fees—which Oracle neither objected to
nor rebutted. ER1529–1655. Thus, if the Court is unwilling to zero out Oracle's
fee request, it should, at the very least, reduce the fee award according to the un-
contested record evidence demonstrating how fees ought to be apportioned.
"[T]here is little doubt about the correct answer" on apportionment here, and thus
this Court should decide the "issue in the first instance rather than remand to the
district court." *Detrich v. Ryan*, 740 F.3d 1237, 1248 (9th Cir. 2013) (en banc)
(plurality opinion). That is particularly so in light of the district court's intransi-
gence.

*First*, to determine the amount of the reduction, the Court should start where
Oracle started this case—its complaint. Oracle sued *two* defendants (Rimini *and*
Ravin) in this litigation and asserted *12 independent claims* against *each of them
separately*. ER1309–32. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir.

1994) (courts must consider "the number of claims prevailed upon versus the number of claims … decided in defendant's favor"). Yet, at the end of the day, the "results obtained" (*id.*) pale in comparison to Oracle's litigation goals. Oracle established liability against *one* defendant (Rimini)—that is a 50% reduction in success right there, as Rimini's expert concluded. ER1528; ER1537. Ravin is a prevailing party in this litigation, despite Oracle's repeated efforts to hold him personally liable. ER527. "[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435; *see also Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003). Cutting the fee award in half to account for Oracle's complete failure results in an award of **$14.3 million**. *See* ER1528.

*Second*, the fee award should be further reduced to account for Oracle's limited success against Rimini relative to what Oracle sought against Rimini. This can be done by reference either to the *claims* on which Oracle succeeded or the *relief* that it obtained. The unrebutted expert evidence submitted below establishes that these two measures require additional reductions in the amount of:

- 91.7%, because Oracle prevailed on only one out of 12 claims against Rimini, resulting in a **$1.3 million award**; or

- 85.5%, because Oracle received $35.6 million in damages out of the $245.9 million in total damages sought, resulting in a **$2.1 million award**.

ER1528.  *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 900 (9th Cir. 1995) (reducing award under similar approach); *McCown*, 565 F.3d at 1104 (same).

Oracle did not dispute Rimini's expert analysis below, and the district court did not even acknowledge it.  Yet it provides a straightforward methodology for apportionment, as shown below:



The record in this case supports a fee award of $0, on Oracle's lack of evidence; or either $1.3 million or $2.1 million, on Rimini's evidence.  This Court should direct entry of an award in one of those amounts.

## CONCLUSION

The Court should reverse both the injunction and the fee award.

Respectfully submitted,

Dated: November 26, 2018

s/ *Mark A. Perry*

Blaine H. Evanson
Joseph A. Gorman
Shaun A. Mathur
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
(949) 451-3805
BEvanson@gibsondunn.com

Mark A. Perry
Jeremy M. Christiansen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
MPerry@gibsondunn.com

*Attorneys for Appellant Rimini Street, Inc.*

# STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Appellant Rimini Street, Inc. states that there are no related cases pending before this Court.


Dated:  November 26, 2018                  s/ *Mark A. Perry*_____
                                           Mark A. Perry

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 13,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2016.

Dated: November 26, 2018             s/ *Mark A. Perry*
                                      Mark A. Perry

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 26, 2018.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Dated: November 26, 2018

s/ *Mark A. Perry*
Mark A. Perry

## ADDENDUM

Pursuant to Circuit Rule 28-2.7, this addendum includes the following pertinent constitutional and statutory provisions and rules, reproduced verbatim:

**Exhibit A:**      U.S. Const. amends. I, V, and VII

**Exhibit B:**      17 U.S.C. §§ 106, 405, 502, and 505

**Exhibit C:**      Federal Rule of Civil Procedure 65

# EXHIBIT A

**U.S. Const. amends. I, V, and VII**

**Amendment I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**Amendment V**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**Amendment VII**

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

# EXHIBIT B

## 17 U.S.C. §§ 106, 405, 502, and 505

## § 106. Exclusive rights in copyrighted works

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

## § 405. Notice of copyright: Omission of notice on certain copies and phonorecords

(a) Effect of Omission on Copyright.  With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, the omission of the copyright notice described in sections 401 through 403 from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or

(3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

(b) Effect of Omission on Innocent Infringers.  Any person who innocently infringes a copyright, in reliance upon an authorized copy or phonorecord from which the copyright notice has been omitted and which was publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, incurs no liability for actual or statutory damages under section 504 for any infringing acts committed before receiving actual notice that registration for the work has been made under section 408, if such person proves that he or she was misled by the omission of notice. In a suit for infringement in such a case the court may allow or disallow recovery of any of the infringer's profits attributable to the infringement, and may enjoin the continuation of the infringing undertaking or may require, as a condition for permitting the continuation of the infringing undertaking, that the infringer pay the copyright owner a reasonable license fee in an amount and on terms fixed by the court.

(c) Removal of Notice.  Protection under this title is not affected by the removal, destruction, or obliteration of the notice, without the authorization of the copyright owner, from any publicly distributed copies or phonorecords.

7a

## § 502.  Remedies for infringement:  Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

Case 18-16554, 11/26/2018, ID: 11092972, DktEntry: 9-13, Page 86 of 90

## § 505.  Remedies for infringement:  Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

# EXHIBIT C

## Federal Rule of Civil Procedure 65

# Rule 65.  Injunctions and Restraining Orders

(a) Preliminary Injunction.

(1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

(2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) Temporary Restraining Order.

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry--not to exceed 14 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

11a

(4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice--or on shorter notice set by the court--the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) *Contents.* Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.

(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) Other Laws Not Modified. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. § 2284, which relates to actions that must be heard and decided by a three-judge district court.

(f) Copyright Impoundment. This rule applies to copyright-impoundment proceedings.