# EXHIBIT 2
January 23, 2019 –
Answering Brief for Appellees

No. 18-16554

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

ORACLE USA, INC., a Colorado corporation;
ORACLE AMERICA, INC., a Delaware corporation;
ORACLE INTERNATIONAL CORPORATION, a California corporation,

*Plaintiffs-Appellees*,

v.

RIMINI STREET, INC., a Nevada corporation,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Nevada
No. 2:10-cv-00106-LRH-VCF
_____

## ANSWERING BRIEF FOR APPELLEES
_____

WILLIAM A. ISAACSON
KAREN L. DUNN
BOIES, SCHILLER
 & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727

PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
MATTHEW D. ROWEN
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com

*Counsel for Plaintiffs-Appellees*
(*Additional Counsel Listed on Inside Cover*)

January 23, 2019

JOHN A. POLITO
MORGAN, LEWIS
 & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

DAVID B. SALMONS
MORGAN, LEWIS
 & BOCKIUS LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6238

## CORPORATE DISCLOSURE STATEMENT

Oracle Corporation is the ultimate parent company of Oracle America, Inc., and Oracle International Corporation.  Oracle Corporation also was the ultimate parent of Oracle USA, Inc., but that entity no longer exists.  Oracle Corporation wholly owns, through one or more of its privately held, wholly owned subsidiaries, Oracle America, Inc., and Oracle International Corporation.  No other publicly held corporation owns 10% or more of the stock in Oracle America, Inc., or Oracle International Corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION .............................................................................. 1

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF THE CASE AND THE FACTS ................................. 2

    A.   Pre-Trial, Trial, and Post-Trial Proceedings ......................... 2

    B.   The Appeal ............................................................................ 5

    C.   Proceedings on Remand ...................................................... 8

SUMMARY OF ARGUMENT ............................................................... 11

STANDARDS OF REVIEW ................................................................... 14

ARGUMENT ........................................................................................ 15

I.    The District Court Did Not Abuse Its Discretion In
    Enjoining Rimini ................................................................... 15

    A.   The District Court Had Jurisdiction to Enter the Injunction ............. 15

    B.   The District Court's Findings Were not Clearly Erroneous,
        and They Amply Support its Decision to Grant
        Injunctive Relief ................................................................... 17

    C.   The Injunction Is Fully Consistent With the Jury Verdict ................. 25

        1.   The Copyright Act contains no bar to enjoining
            "innocent" infringers .................................................. 26

        2.   Case law establishes that "innocent" infringers may
            be enjoined ................................................................ 28

ii

3.    Rimini's Seventh Amendment argument is meritless .............. 30

D.    The Injunction Is Neither Overbroad Nor Vague ............................... 32

    1.    Rimini's claim that this Court limited the mandate to "future-customer 'cross-use'" is demonstrably false .............. 32

    2.    Rimini's claim that the mandate foreclosed enjoining cross-use is likewise false ......................................................... 37

    3.    The district court had discretion to enjoin distribution and preparation of derivative works ........................................ 39

    4.    Rimini's objections to the "access" restrictions are baseless .................................................................................. 41

    5.    The injunction is not vague .................................................... 43

II.    The District Court Did Not Abuse Its Discretion In Awarding Attorneys' Fees ............................................................................................. 45

A.    The Decision to Re-Award Fees Was Not an Abuse of Discretion .......................................................................................... 45

    1.    The district court accurately applied the relevant factors ..................................................................................... 45

    2.    The fee award is entirely consistent with the mandate ............ 49

B.    There Is No Apportionment Requirement for Related Claims .......... 50

C.    The Amount of Fees Awarded Was Reasonable ................................. 53

CONCLUSION .................................................................................................... 58

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)..............................................................42

*Allstate Ins. Co. v. Plambeck*,
  802 F.3d 665 (5th Cir. 2015)...............................................................56

*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
  534 F. App'x 633 (9th Cir. 2013).........................................................18

*Ambat v. City & Cty. of San Francisco*,
  757 F.3d 1017 (9th Cir. 2014)..............................................................51

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011) ....................................................... 22, 23

*Apple Inc. v. Samsung Elecs. Co.*,
  695 F.3d 1370 (Fed. Cir. 2012)............................................................20

*Ballen v. City of Redmond*,
  466 F.3d 736 (9th Cir. 2006)................................................................53

*Broad. Music, Inc. v. Coco's Dev. Corp.*,
  1981 WL 1364 (N.D.N.Y. 1981)..........................................................29

*Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*,
  772 F.3d 1254 (11th Cir. 2014) ...........................................................30

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
  158 F.Supp.3d 184 (S.D.N.Y. 2016) ...................................................18

*Canon, Inc. v. GCC Int'l*,
  263 F. App'x 57 (Fed. Cir. 2008).........................................................25

*Capitol Records, Inc. v. Thomas-Rasset*,
  692 F.3d 899 (8th Cir. 2012)................................................................25

*Casella v. Morris*,
  820 F.2d 362 (11th Cir. 1987) .............................................................48

iv

*Chi. Bd. of Educ. v. Substance, Inc.*,
   354 F.3d 624 (7th Cir. 2003) ..............................................................................40

*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) ............................................................................45

*Columbia Pictures Indus. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ............................................................................14

*Columbia Pictures Indus., Inc. v. Prado Pacheco*,
   1990 WL 29787 (D.P.R. Feb. 27, 1990) ............................................................28

*Corder v. Gates*,
   947 F.2d 374 (9th Cir. 1991) ..............................................................................54

*Creative Computing v. Getloaded.com LLC*,
   386 F.3d 930 (9th Cir. 2004) ..............................................................................51

*Cty. of L.A. v. Davis*,
   440 U.S. 625 (1979) ............................................................................................16

*D.C. Comics Inc. v. Mini Gift Shop*,
   912 F.2d 29 (2d Cir. 1990) .................................................................................28

*Dang v. Cross*,
   422 F.3d 800 (9th Cir. 2005) ........................................................................ 50, 53

*De Acosta v. Brown*,
   146 F.2d 408 (2d Cir. 1944) ...............................................................................30

*Dogherra v. Safeway Stores, Inc.*,
   679 F.2d 1293 (9th Cir. 1982) ............................................................................48

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013) ..........................................................................22

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997) ............................................................................41

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) .................................................................................. *passim*

*Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*,
    868 F.3d 1248 (11th Cir. 2017) ............................................................16

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) ................................................................41

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)..............................................................................46

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................11, 16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ..................................................... 51, 52, 53, 56

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) .............................................................21

*Ibrahim v. DHS*,
    2019 WL 73988 (9th Cir. Jan. 2, 2019) .................................... 52, 53

*In re Cellular 101, Inc.*,
    539 F.3d 1150 (9th Cir. 2008) .............................................................35

*IO Grp., Inc. v. Jordan*,
    2010 WL 2231793 (N.D. Cal. June 1, 2010) .....................................48

*Jane L. v. Bangerter*,
    61 F.3d 1505 (10th Cir. 1995).............................................................56

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016)................................................................ *passim*

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
    567 U.S. 298 (2012)..............................................................................16

*Larkins v. Delta Air Lines, Inc.*,
    1994 WL 503849 (9th Cir. 1994).........................................................51

*Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*,
    116 F.3d 484 (table) (9th Cir. 1997) ...................................................56

*MAI Sys. Corp. v. Peak Comput., Inc.*,
   991 F.2d 511 (9th Cir. 1993) .................................................................29

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932 (9th Cir. 1999).................................................................51

*Mattel, Inc. v. MGA Entm't*,
   705 F.3d 1108 (9th Cir. 2013) ..................................................... 45, 48

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009)...............................................................55

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007)................................................23

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011).................................................................................21

*Moore v. Brown*,
   868 F.3d 398 (5th Cir. 2017)..................................................................16

*Moore v. Bryant*,
   348 F.3d 238 (7th Cir. 2003)..................................................................48

*Murray v. City of Onawa*,
   323 F.3d 616 (8th Cir. 2003)..................................................................56

*Northland Family Planning Clinic, Inc. v. Cox*,
   487 F.3d 323 (6th Cir. 2007)..................................................................16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)...............................................................................47

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018).................................................... *passim*

*Park ex rel. Park v. Anaheim Union High Sch. Dist.*,
   464 F.3d 1025 (9th Cir. 2006)...............................................................50

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*,
   636 F.3d 1150 (9th Cir. 2011) ..............................................................23

*Perfect 10, Inc. v. Google, Inc.*,
653 F.3d 976 (9th Cir. 2011) ............................................................21

*Rivera v. City of Riverside*,
763 F.2d 1580 (9th Cir. 1985) ..........................................................54

*Rondeau v. Mosinee Paper Corp.*,
422 U.S. 49 (1975) ............................................................................40

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ..........................................................56

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014) ............................................................16

*Runge v. Lee*,
441 F.2d 579 (9th Cir. 1971) ............................................................23

*Russian Media Grp., LLC v. Cable Am., Inc.*,
598 F.3d 302 (7th Cir. 2010) ............................................................41

*Ryan v. Editions Ltd. W., Inc.*,
786 F.3d 754 (9th Cir. 2015) ............................................................55

*Schwarz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ..............................................................55

*Shame On You Prods. v. Banks*,
893 F.3d 661 (9th Cir. 2018) ...................................................... 14, 47

*Sorenson v. Mink*,
239 F.3d 1140 (9th Cir. 2001) ..........................................................55

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) ............................................................30

*The Traditional Cat Ass'n v. Galbraith*,
340 F.3d 829 (9th Cir. 2003) ...................................................... 53, 56

*Thomas v. City of Tacoma*,
410 F.3d 644 (9th Cir. 2005) ............................................................53

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
    488 F.3d 352 (6th Cir. 2007) ................................................................47

*United States v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001) ................................................................40

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ...........................................................15

*United States v. U.S. Gypsum Co.*,
    340 U.S. 76 (1950) ............................................................................40

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953) ................................................................... 16, 29

*Warner Bros. Records Inc. v. Walker*,
    704 F. Supp. 2d 460 (W.D. Pa. 2010) ...............................................24

*Watson v. Cty. of Riverside*,
    300 F.3d 1092 (9th Cir. 2002) ...........................................................52

*Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*,
    106 F.3d 894 (9th Cir. 1997) .............................................................29

*WPIX, Inc. v. IVI, Inc.*,
    691 F.3d 275 (2d Cir. 2012) ..............................................................25

**Statutes**

17 U.S.C. §405 ...................................................................... 27, 28

17 U.S.C. §412 ...................................................................... 26, 48

17 U.S.C. §502 ........................................................................ *passim*

17 U.S.C. §504 .................................................................. 5, 22, 26

17 U.S.C. §505 ...............................................................................45

**Other Authority**

13C Wright & Miller, *Fed. Prac. & Proc. Juris.* §3533.5 (3d ed. 2018) ...............16

## INTRODUCTION

Rimini Street's opening brief is utterly divorced from this Court's decision in the previous appeal in this case.  Not only does Rimini attempt to resuscitate arguments that this Court squarely rejected and/or found waived; Rimini repeatedly misrepresents what this Court did and did not hold.  This Court affirmed in full the judgment that Rimini infringed all 93 copyrighted works at issue.  And this Court expressed no opinion on the propriety or scope of injunctive relief for that infringement, instead leaving those issues, and the question of attorneys' fees, to the sound discretion of the district court on remand.  Exercising that discretion, the district court (1) concluded that Oracle was entitled to an injunction to ensure that Rimini will not resume its serial infringement in the future, and (2) awarded Oracle 80% of the attorneys' fees Oracle sought after reaffirming not only that Rimini's litigation misconduct drove up Oracle's costs, but also that this case is and always was principally about the copyright claims on which Oracle prevailed in full.  Neither the injunction nor the fee award suffers from any legal defect, and each is well within the district court's broad discretion.  This Court should affirm in full.

## STATEMENT OF JURISDICTION

Oracle agrees with Rimini's statement of jurisdiction.

## STATEMENT OF THE CASE AND THE FACTS

### A.     Pre-Trial, Trial, and Post-Trial Proceedings

Oracle develops copyrighted enterprise software that helps organizations perform critical business functions.  Customers purchase licenses to use specific programs.  Some customers also purchase separate maintenance contracts that entitle them to copyrighted updates and other support services.  Rimini Street, Inc., which Seth Ravin founded in 2005, competes with Oracle to provide support services to customers who use Oracle's copyrighted software.  Shortly after its founding, Rimini began copying software from Oracle's websites "in direct contravention of the terms of use" of those websites.  *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 952 (9th Cir. 2018).  The scale of Rimini's copying was massive.  The cache of Oracle's copyrighted works on Rimini's servers was "a couple times the size of … all of the books in the Library of Congress."  16-16832 SER446.  That trove allowed Rimini to "mak[e] a crap load of money," ER510-11, selling services built around "infringement of Oracle's copyrighted software," ER23.

Upon learning of Rimini's infringing activity, Oracle "filed a complaint for copyright infringement," alleging that Rimini unlawfully made thousands of copies of Oracle's PeopleSoft-, J.D. Edwards-, and Siebel-branded software, which run on Oracle's Relational Database Management Software ("Database").  ER19.  Oracle later amended its complaint to add additional claims stemming from the same facts.

2

ER19, 34.  The litigation that ensued "was substantially and significantly focused on Rimini Street's alleged copyright infringement."  ER28.

Rimini admitted that it had copied some of Oracle's copyrighted software but insisted that its copying was authorized under license agreements between Oracle and Rimini's customers.  In the alternative, Rimini counterclaimed that the licenses constituted copyright misuse to the extent they did not authorize its copying.  Rimini filed additional counterclaims for defamation and unfair competition, and raised a host of affirmative defenses.  *See* 16-16832 ER59-60.  Before trial, "Oracle successfully defeated" all three counterclaims and all 11 of Rimini's affirmative defenses, "which were heavily focused on Oracle's claim of copyright infringement," ER28, and obtained summary judgment on its infringement claims as to PeopleSoft and Database, ER1237-41, 1264-80.

Despite those significant pretrial victories, a fundamental issue remained in dispute.  A core requirement of the licenses for Oracle's enterprise software is that copies made "under color of a license of one customer" may not be used "to support *other* customers"—*i.e.*, that "cross-use" is not permitted.  *Oracle*, 879 F.3d at 956. For more than five years—"literally until trial"—Rimini insisted that it complied with those restrictions on cross-use.  ER31.  Ravin, for instance, testified in his deposition that "[n]ever in the entire history of Rimini" did "it ever occur[] that one customer's software environment ha[d] been used to develop a fix or update that was

3

ultimately delivered to a different customer." 16-16832 SER515. As a result of these "assertions" that Rimini "did not engage in cross-use," the district court "denied portions of Oracle's motion for summary judgment on its copyright infringement claim and let these issues go to trial." ER31.

As it turned out, those assertions were untrue. Rimini had been able to make them in part because it "affirmatively and irretrievably deleted" its massive library of intermingled copies of Oracle materials, which made it impossible for Oracle to identify the source of the copies Rimini used in providing its "support services." 16-16832 SER132, 136, 146-47, 446. The district court later sanctioned Rimini for this spoliation by submitting an adverse-inference instruction to the jury, ER632, and Oracle ultimately painstakingly pieced together evidence disproving Rimini's claims. When confronted with that evidence at trial, Ravin blithely admitted that Rimini engaged in cross-use "all the time," and that his earlier deposition testimony denying as much was false. 16-16832 ER1225. Thus, Rimini ultimately conceded that it routinely used one customer's "development environments … to develop and test software updates for … *other Rimini customers*." 16-16832 ER100 (emphasis added).

Given the overwhelming evidence and Rimini's own belated admissions, Oracle succeeded on all 93 of its copyright claims against Rimini. To remedy Rimini's massive copyright infringement, the jury awarded Oracle the fair market

value of a hypothetical license, which it measured at $35,600,000. 16-16832 ER447-54. And although the jury found Rimini's infringement "innocent" rather than "willful," it awarded the maximum available amount of statutory damages ($30,000) for each of the 93 counts of infringement, for a total of $2,790,000. ER454.[1] The jury also found for Oracle on two state-law computer abuse claims and awarded approximately $14,000,000 in damages. 16-16832 ER46-50, 457-60.

After trial, the district court awarded Oracle costs, attorneys' fees, and prejudgment interest. 16-16832 ER4, 24-33. The court permanently enjoined Rimini from, *inter alia*, "reproduc[ing], prepar[ing] derivative works from, or distribut[ing] PeopleSoft, J.D. Edwards, or Siebel software or documentation unless solely in connection with work for a specific customer that has affirmed in writing that the customer holds a valid, written license agreement for the particular PeopleSoft, JD Edwards, or Siebel software and documentation authorizing Rimini's specific conduct." 16-16832 ER6. The court also entered an injunction against Rimini and Ravin on the state-law claims. 16-16832 ER8-9.

### B.    The Appeal

On appeal to this Court, Rimini argued that every copy it made was authorized by its customers' licenses, and thus that it was entitled to judgment as a matter of

---

[1] Oracle elected to recover the jury's measure of actual, rather than statutory, damages. *See* 17 U.S.C. §504(b)-(c).

law on all 93 copyright claims and on both state-law claims.  *See* Joint Opening Br. for Appellants ("JOB") 16-33, No. 16-16832 (9th Cir. Jan. 23, 2017).  Rimini also argued "for the first time in its reply brief … that 'cross-use' is a contractual rather than copyright issue"—*i.e.*, that even if its copying violated the licenses, it was not copyright infringement.  *Oracle*, 879 F.3d at 957.  This Court accepted none of Rimini's arguments against infringement and affirmed the jury's copyright verdict and damages award across the board.  *Id.* at 953-60.

With respect to J.D. Edwards and Siebel, Rimini argued that "the licenses in fact permit 'cross use,'" but the Court rejected that argument:  "[E]ach of the licenses at issue here 'pointedly limits copying and use to supporting the *Licensee*.'  The licenses do not authorize Rimini to 'develop products *Rimini* could sell for *Rimini's* financial gain.'"  *Id.* at 957.  The Court thus found that "[a]ny work that Rimini performs under color of a license held by a customer for other existing customers cannot be considered work in support of that particular customer."  *Id.*  The Court further found that "[t]he same logic applies to work Rimini performs for unknown, future customers."  *Id.*

With respect to PeopleSoft, the Court affirmed "the district court's conclusion that the Rimini servers where the copying took place were 'outside the control of the [customers],'" and thus that Rimini's copying violated the licenses.  *Id.* at 959-60 (alteration in original).  The Court likewise rejected Rimini's copyright misuse

arguments as inconsistent with the facts and the law. *Id.* at 958, 960. With respect to Database, the Court "affirm[ed] the district court's determination of copyright infringement" because Rimini "failed to challenge the district court's legal conclusion that Rimini was not entitled to assert the [Database licenses] as a defense." *Id.* at 960. The Court thus affirmed both the liability findings and the jury's $35.6 million damages award for copyright infringement in full. The Court reversed, however, on the state-law claims, "hold[ing] that taking data using a *method* prohibited by the applicable terms of use, when the taking itself generally is permitted, does not violate [either state statute]." *Id.*

Rimini also challenged the remedies the district court awarded. JOB39-61. The Court affirmed the awards of prejudgment interest and costs on the copyright claims. 879 F.3d at 963-66. Having reversed on the state-law claims, the Court reversed the state-law damages and prejudgment interest awards. *Id.* at 962-63. That left the injunction and attorneys' fees. Rimini argued that the copyright injunction was erroneous as a matter of law because the jury found that Rimini's infringement was "innocent," and it insisted that the district court "failed to make the requisite finding that there was a causal nexus between … Rimini's infringement" and the "diminution in Oracle's 'business reputation and goodwill.'" JOB 40-43. Rimini also argued that "Oracle Is Not Entitled to Any Fees" because "[a]n innocent infringer need not be deterred," and that Oracle "should get nothing" because a

7

district court is "required to apportion fees" in a "mixed result" case, and "Oracle decided to introduce no evidence of apportionment."  JOB49-54.

This Court did not accept those arguments.  Instead, the Court vacated and remanded "for reconsideration" of the fee award given its "conclusion that there was no violation of the state computer laws."  879 F.3d at 965.  The Court likewise vacated the injunction and remanded for the district court to "weigh the *eBay* factors with respect to the copyright claims alone," because it had assessed them "by reference to both the copyright and the [state-law] claims, without considering separately the propriety of issuing an injunction as to the copyright claims alone." *Id.* at 964 (emphasis omitted); *see eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  The Court "express[ed] no view on the propriety or scope of any injunctive relief," declaring those "matters committed to the district court's discretion."  879 F.3d at 964.

## C.   Proceedings on Remand

In light of this Court's ruling, Oracle renewed its attorneys' fee request and sought a new, copyright-only injunction.  The district court granted both requests. ER18-35.  With respect to attorneys' fees, the court "recognize[d] that several of Oracle's claims were either dismissed or voluntarily withdrawn before trial, and, on appeal, the Ninth Circuit reversed the jury's verdict on the state law computer access claims," but found that "Oracle's overall success in this litigation supports an award

8

of attorneys' fees." ER29.  As the court explained, this case "was substantially and significantly focused on Rimini Street's alleged copyright infringement," and Oracle won all 93 of its copyright claims, which constitutes "substantial success" under any measure.  ER28-30.  The court also found that fees "are warranted because of [Rimini's] significant litigation misconduct," including "destroy[ing] evidence prior to trial" and staving off summary judgment by falsely "assert[ing]" that it "did not engage in cross-use of the copyrighted software."  ER31 (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-89 (2016)).

Turning to the amount of fees, the court concluded that "the reversal on the state law claims [does not] warrant a reduction of the court's previous award" both because "this action was first and foremost a copyright infringement action," and because the state-law claims shared a common core of facts with the successful copyright claims.  The court thus awarded Oracle $28,502,246.40, which reflects a 20% across-the-board discount from what Oracle sought.  ER33-34.

With respect to injunctive relief, the district court followed this Court's instructions to the letter:  The court "weigh[ed] the *eBay* factors with respect to the copyright claims alone," exercised its "discretion," *see* 879 F.3d at 964, and found that each factor favors an injunction.  First, the court found that "Rimini Street's infringement of ninety-three separate copyright registrations … irreparably injured Oracle's business reputation and goodwill" because it enabled Rimini to offer cut-

9

rate prices, which "created the impression that Oracle was overcharging for support and eroded the bonds and trust that Oracle has with its customers."   ER23-24. Second, the court found that "monetary damages alone are inadequate" because "the copyright infringement damages in this action were uniquely complex and difficult to determine," and because "lost market share and erosion of company goodwill are intangible injuries difficult to quantify."   ER24-25.   Third, the court found that the balance of hardships favors Oracle because Rimini "does not have a separate legitimate business purpose for continuation of the infringing acts" and "there is no evidence that Rimini Street would be harmed by an injunction that enjoins and restrains future copyright infringement."   ER25-26.   Fourth, the court found that the public interest favors an injunction "because Rimini Street has repeatedly represented to the court that its current business model is not based on its prior infringing conduct," which if true means that "the public's access to competition in the after-license software support service market would not be lost or diminished." ER26.   The court also found that Rimini's "claim that it no longer engages in the [infringing] conduct … is not a basis to deny issuance of an injunction."   ER24.

Rimini sought a stay pending appeal.   ER1.   The district court denied that request but granted a temporary stay "to allow [Rimini] to file a motion to stay with the Ninth Circuit."   ER4.   This Court denied Rimini's stay request, after which the temporary stay dissolved.   CA9 Dkt.11.   The injunction remains in effect.

## SUMMARY OF ARGUMENT

Rimini's brief is a study in revisionist history. When Rimini is not pressing arguments this Court already squarely rejected or found waived, Rimini is affirmatively misrepresenting what this Court held. According to Rimini, the district court violated the mandate from this Court. In reality, the district court did exactly what this Court instructed it to do: It carefully exercised its broad discretion and decided to issue an injunction and award attorneys' fees. That the copyright injunction and the fee award have similar scopes in this second round reflects not inattention to the mandate, but the district court's considered findings about the centrality of Rimini's massive infringement both to this litigation and to Rimini's ability to provide cut-rate services and portray Oracle as over-priced. Rimini's attempts to find flaws in the district court's orders have no basis in law or fact.

Rimini's lead argument that injunctive relief is moot is meritless. Rimini has not come close to carrying its heavy burden to show mootness, which requires the enjoined party to demonstrate "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The sole case Rimini cites found that "formidable burden" satisfied only in light of the separation-of-powers principle that the government presumptively acts in good faith. No private

11

party—let alone one who misrepresented its business practices and committed "significant litigation misconduct," ER31—is entitled to similar deference.

Additionally, Rimini identifies no error in the district court's analysis of the *eBay* factors. Rimini's recycled claim that the court "ignored" the causal nexus requirement itself ignores an entire section of the court's order. The district court methodically explained how Rimini's massive copyright infringement enabled it to charge cut-rate prices for its services, and how that infringement-driven discount gave licensees the misimpression that Oracle's services were overpriced, thus harming Oracle's reputation and goodwill. The court's findings that Oracle's damages (including reputational harms) were difficult to determine, that the balance of hardships favors the copyright owner and not the serial infringer, and that the public interest favors an injunction all were far from clearly erroneous.

The injunction is entirely consistent with the jury verdict. Rimini's argument that innocent infringers may not be enjoined cannot be reconciled with the text and structure of the Copyright Act. The Copyright Act does not confine injunctions to "willful" or non-"innocent" infringers; it empowers courts to enter "final injunctions on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). That stands in stark contrast to other provisions of the Act that *do* make the availability of certain remedies dependent on the character of the infringement. And it explains why numerous courts have entered

12

injunctions against "innocent" infringers, and why no court has ever held that an innocent infringer is immune from being enjoined under the Copyright Act. It also dooms Rimini's Seventh Amendment argument, because the Reexamination Clause comes into play only when a finding *necessary* to support equitable relief was made by the jury. In all events, the district court did not rest the injunction on any finding about Rimini's *mens rea* or on any other finding contrary to the jury verdict. The Seventh Amendment thus was not even implicated, let alone violated, here.

Rimini's objections to the scope of the injunction are meritless. Rimini misrepresents what this Court held in the first appeal; it recycles arguments this Court already rejected; and it egregiously mischaracterizes the injunction. This Court affirmed all 93 of the copyright claims in full and did not accept any of the arguments Rimini pressed in its effort to avoid liability for its serial infringement. Rimini's continued resistance to the letter and spirit of those rulings confirms the wisdom of the district court's decision to impose an injunction.

Finally, the district court acted well within its discretion in awarding 80% of the attorneys' fees Oracle sought. Like its arguments on the scope of the injunction, Rimini's arguments that the fee award violates the mandate rely on blatant mischaracterizations of this Court's opinion. The district court did exactly what it was supposed to do: It accurately applied the relevant factors, and it did not err— let alone clearly err—in finding that a fee award was consistent with the purposes of

the Copyright Act.  Nor did it clearly err in finding that winning all 93 copyright claims in a case "substantially and significantly focused on … copyright infringement" constituted "substantial success," or in finding that Rimini's "litigation misconduct" independently justified awarding fees.  ER28-31.  Rimini's claim that Oracle "should receive no fees whatsoever" because Oracle did not "adduce apportionment evidence" flies in the face of long-settled precedent confirming that fees for related claims should not be apportioned.   Rimini's alternative pleas to reduce the award fare no better.  Precedent is clear that courts may award the full lodestar amount even if a plaintiff does not prevail against every defendant or on every claim.  That precedent applies with particular force where, as here, the unsuccessful claims were secondary-liability claims that would have netted Oracle zero additional dollars in damages.  In short, the court acted well within its ample discretion under §505.

## STANDARDS OF REVIEW

The decision to grant a permanent injunction is reviewed for abuse of discretion, as is the injunction's scope; underlying factual findings are reviewed for clear error.  *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013).  Fee awards likewise are reviewed for abuse of discretion.  *Shame On You Prods. v. Banks*, 893 F.3d 661, 665 (9th Cir. 2018).  Under that standard, this Court must defer to findings of fact and applications of law unless they are "illogical, implausible, or

without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

## ARGUMENT

### I.     The District Court Did Not Abuse Its Discretion In Enjoining Rimini.

The Copyright Act empowers courts to enter permanent injunctions "on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay*, 547 U.S. at 391. While the district court's original order did not focus exclusively on the copyright claims, the court did exactly that on remand. The decision to enter a permanent injunction that restrains Rimini from further violating Oracle's copyrights, but specifically *allows* Rimini to perform "work for a specific customer that holds a valid, written license agreement … authorizing Rimini Street's specific conduct," ER14, is both entirely consistent with governing law and well within the district court's broad discretion.

### A.     The District Court Had Jurisdiction to Enter the Injunction.

Rimini begins by arguing that Oracle's request for injunctive relief is "moot" because (Rimini insists that) it has ceased its infringing ways. Br.13-16. But as Rimini itself acknowledges, "'voluntary cessation of challenged conduct does not

ordinarily render a case moot.'"  Br.13 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).  This case is no exception.

In the voluntary cessation context, "[t]he burden of demonstrating mootness is 'a heavy one.'"  *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  A party must "show[] that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth*, 528 U.S. at 190.  Rimini's claim that it has "overhauled its former processes," Br.14, is nowhere near enough to carry that heavy burden.  Rimini cites no case finding a request for injunctive relief moot where a private party insisted that it had abandoned its illegal ways.  Instead, the sole case Rimini cites involved a *government agency* and relied heavily on the separation-of-powers principle that courts must "presume that the Government acts in good faith."  *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014); *see also id.* at 971.

As a legion of cases confirms, private parties are entitled to no comparable presumption.  *See, e.g.*, *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1256 (11th Cir. 2017); *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342 (6th Cir. 2007); 13C Wright & Miller, *Fed. Prac. & Proc. Juris.* §3533.5 (3d ed. 2018).  And the district court certainly was not obligated to apply any such presumption to a serial infringer who engaged in "significant litigation misconduct" (namely, spoliating

16

evidence and affirmatively lying about the scope of its infringing activity).  ER31.

Oracle's request for injunctive relief was not and is not moot.

### B.   The District Court's Findings Were not Clearly Erroneous, and They Amply Support its Decision to Grant Injunctive Relief.

A plaintiff seeking a permanent injunction must show that: (1) "it has suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "the balance of hardships between the plaintiff and defendant" "warrant[s]" "a remedy in equity"; and (4) "the public interest would not be disserved by a permanent injunction."  *eBay*, 547 U.S. at 397. The district court's findings that each of those factors is satisfied are amply supported by the record and far from clearly erroneous, and its conclusion that the balance of those factors warranted injunctive relief was well within its broad discretion.

**Irreparable injury.**   The district court's finding that Rimini's massive infringement "irreparably injured Oracle's business reputation and goodwill," ER23, is well-supported by the record.  As Rimini has "repeatedly acknowledged," "Oracle and Rimini Street directly compete with each other to provide after-license software support services to customers that license Oracle's copyrighted software."  ER23. And as the court explained, that sort of direct competition "has consistently supported the issuance of a permanent injunction" where, as here, the competitor-defendant's unlawful activity undermined the plaintiff's business reputation and

goodwill.  ER23; *see also, e.g.*, *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013); *cf. Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F.Supp.3d 184, 195 (S.D.N.Y. 2016) ("courts routinely find" lost sales in copyright context "difficult if not impossible to measure," thus inflicting irreparable harm).

Rimini contends that "licensees left Oracle" because of Oracle's "high price point," not Rimini's infringement.  Br.22.  But the district court rejected that claim as a matter of fact, finding that Oracle's prices seemed "high" only in comparison to what Rimini was able to charge *as a result of Rimini's massive copyright infringement*.  ER23-24 ("Rimini Street was able to offer its after-license software support services at such low prices because its copyright infringement allowed it to offer support services without licensing the ninety-three different copyrighted software products from Oracle").  That finding, which was supported by Rimini's own documents, *see* SER1-12, and which credited Oracle's witnesses over Rimini's, *see* ER344-45, was not erroneous, and certainly not clearly so.  Nor was it in any way contrary to the jury verdict.  Rimini claims that the jury found "that Oracle lost … *zero profits* from the infringement," Br.21, but that is simply false.  The jury chose a "Fair Market Value License," not "Lost Profits," as "the best measure" of Oracle's "actual damages for all acts of copyright infringement engaged in by defendant Rimini Street," and thus returned null sets, *not zeros*, for profits lost and

18

gained.  ER458; *see* ER456-63 (consistently using null-set symbol for questions the instructions told the jury not to answer).

The district court's finding also dispenses with Rimini's claim that the court "ignored" the requirement to draw a "causal nexus" between Oracle's irreparable injury and Rimini's copyright infringement.  Br.18.  The court found that Rimini's business "was built entirely on its infringement of Oracle's copyrighted software," ER23, *i.e.*, that Rimini would not have existed (and could not have harmed Oracle) but for its massive infringement.  The court then went on to explain that (1) Rimini "landed clients for its services by telling customers that Oracle's services were overpriced and could be [provided] at the same cut-rate, 50% discount that Rimini Street offered"; (2) Rimini would not have been able to charge those "cut-rate" prices or to acquire its significant "market share" without "its infringement of Oracle's copyrighted software"; (3) Rimini "created the impression that Oracle was overcharging for support" by "purporting to offer vendor-level support at half the price of Oracle support"; (4) Rimini's success in creating that impression "eroded the bonds and trust that Oracle has with its customers"; and (5) this erosion harmed Oracle's "business reputation and goodwill."  ER23-24 (emphasis added).  That "finding of a causal nexus based on record evidence" directly ties Rimini's

infringement not only to Oracle's injuries, both tangible and intangible, but to the very presence of Rimini as a competitor in the market.  Br.18-19.[2]

Rimini next argues that the district court committed "*legal* error[]" by failing to "'*directly* tie[] consumer demand' for Rimini's prior support processes to the specific 'infringing feature[s]' of those processes."  Br.16, 19 (third alteration in original) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012)).  That argument is wrong twice over.  First, this Court has never applied the "direct[] ties" standard, which is unique to patent law, and hence has been applied only by the Federal Circuit (and only in patent cases).  *See Apple*, 695 F.3d at 1374-77.[3]  Second, the district court *did* tie Oracle's injuries directly to Rimini's infringing practices.  Br.19.  The products at issue here were Oracle's copyrighted works, with Rimini charging money to provide support for that copyright work.  Consumer demand was therefore by definition directly tied to the copyrighted works.  Hence, the district court clearly explained that Rimini's massive copying and cross-use were

---

[2] Rimini chastises the court for failing to use the words "causal nexus."  *See* Br.19.  But Rimini cites no case supporting the proposition that an order methodically explaining how a defendant's unlawful conduct caused a plaintiff irreparable injury is nonetheless infirm if it fails to use those magic words.

[3] The direct ties standard solves a problem unique to patent law.  Because products are more than the sum of their patented parts, a patent plaintiff seeking a permanent injunction must show that "the patented feature drives consumer demand."  *Apple*, 695 F.3d at 1376.  Without that showing, a court cannot be certain that the infringement is what caused the plaintiff's irreparable injuries.  No court has embraced a comparable "direct ties" rule in the copyright context.

what enabled the cut-rate pricing that allowed Rimini "to rapidly build its business from a new and unknown company in the after-license software support market to a major competitor of Oracle," and to "create[] the impression that Oracle was overcharging for support and erode[] the bonds and trust that Oracle has with its customers." ER23-24; *see* ER31. That is more than "sufficient causal connection between irreparable harm to [Oracle's] business and [Rimini's] operation." *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011).

**Inadequate remedies at law.** The district court had ample basis to find that the jury award was inadequate to fully compensate Oracle for the harms Rimini's infringement caused. "Difficulty in estimating monetary damages is evidence that remedies at law are inadequate," *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011), and the damages caused by copyright infringement are notoriously difficult to quantify given "the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use*." *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring). That is particularly true of the "hypothetical license" used here. Hypothetical license awards make parties whole for what they would have charged the infringer *in the past* for a license to engage in infringement that has already occurred. But they do not account for the reality that Oracle would not actually have licensed Rimini on the terms to which it helped itself.

The finding that "the copyright infringement damages in this action were uniquely complex and difficult to determine," ER24, was thus entirely correct and certainly not clearly erroneous. So too was its finding that Oracle "lost market share and [suffered] erosion of company goodwill"—injuries that are "difficult to quantify." ER24; *see Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1154 (9th Cir. 2011) (harm to "business reputation" and "goodwill" are irreparable); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("mere damages will not compensate for a competitor's increasing share of the market").

Rimini does not even challenge those findings. Instead, Rimini argues that the court unlawfully "substituted its judgment for the jury's" by awarding injunctive relief on top of monetary relief. Br.28. That is wrong as a matter of fact and law. As to the facts: The jury did not find "that Oracle lost … *zero profits*." Br.21. As explained, because the jury did not choose "Lost Profits" as "the best measure" of Oracle's "actual damages for all acts of copyright infringement engaged in by defendant Rimini Street," it returned null sets—*i.e.*, it made no finding—for profits lost and gained. ER457. As to the law: Rimini misunderstands what a license award is. A hypothetical royalty provides compensation for *past* infringement, but it does not compensate for the prospect of *future* infringement. That is why Congress authorized *both* forms of relief as remedies in the Copyright Act, *see* 17 U.S.C. §§502, 504, and why courts have long recognized that a damages award, including

22

one based on a hypothetical royalty, does not obviate the need for a permanent injunction in infringement cases, *see, e.g.*, *Apple*, 658 F.3d at 1154; *Runge v. Lee*, 441 F.2d 579, 580 (9th Cir. 1971). Accepting Rimini's position would essentially nullify Congress' judgment that a successful copyright plaintiff may obtain both monetary and injunctive relief.

**Balance of hardships.** The district court acted well within its discretion in concluding that the balance of hardships favors Oracle. As a general matter, the harm a copyright owner suffers due to the infringer's continuing trespass of his rights far outweighs any hardship an infringer suffers from complying with the law. *See, e.g.*, *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011). That is particularly true where, as here, the defendant has no legitimate basis for continuing its unlawful conduct, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007), and has routinely represented that it is no longer doing so. Rimini has issued several press releases assuring the public that the injunction "simply prohibit[s] the previous conduct … that was found by the Jury and Court to be infringing"; that "[t]he injunction does *not* prohibit Rimini['s] ongoing or future provision of support for" Oracle's software; and that "since [Rimini] had ceased said conduct by July 2014, there is no expected impact on any current or future service offering, or on Rimini['s] current or future ability to service any of its clients." 16-16832 SER579-84. Rimini

23

has also represented to the SEC that "the renewed injunction does not limit any sale of service … [Rimini] provides its clients, but rather defines the manner in which [Rimini] may continue to provide support services."  Dkt.1174-2 at 4.

If those myriad representations are true, then any hardship associated with compliance should be *de minimis*.  But if they are *not* true—as was the case with Rimini's representations that it had no software library and that it never engaged in cross-use—then any harm Oracle stands to suffer from Rimini *again* flouting Oracle's rights vastly outweighs Rimini's interest in avoiding an injunction.[4]

Moreover, injunctive relief against an adjudicated infringer is the best way to address the problem that "infringement is easy to accomplish, but difficult to detect." *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460, 468 (W.D. Pa. 2010). This case confirms that adage.  It took Oracle years to uncover the truth—in large part because Rimini flouted court orders, destroyed evidence, and lied under oath. Dissolving the injunction will thus force Oracle—*the prevailing party*—either to take Rimini's word for it that it will not return to its old ways or to expend huge

---

[4] Rimini makes the remarkable claim that "Oracle submitted *no evidence* of any harm in the absence of an injunction."  Br.30.  In reality, Oracle showed, *and the district court agreed*, that Rimini's conduct—which Rimini *still* claims is lawful— caused Oracle "intangible injuries" justifying injunctive relief.  ER24.  And the district court further found that *Rimini* had provided "no evidence that [it] would be harmed by an injunction that enjoins and restrains future copyright infringement or using the materials gained from its infringement."  ER26.  Rimini does not challenge that finding as clearly erroneous, and for good reason—it is clearly correct.

sums of time and money relitigating points already hard won.  Permanent injunctions exist to spare prevailing parties such perverse results.

**Public interest.**  Finally, the district court did not err, let alone clearly err, in finding that the public interest favors an injunction.  "Inadequate protections for copyright owners can threaten the very store of knowledge to be accessed."  *WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).  Protecting copyrights thus "vindicat[es] the public interest."  *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 909 (8th Cir. 2012).  And while "the public benefits from lower prices resulting from free market competition," *Canon, Inc. v. GCC Int'l*, 263 F. App'x 57, 62 (Fed. Cir. 2008), Rimini has repeatedly represented that its current business is *not* based on its prior conduct.  ER26.  Rimini's argument that the injunction threatens competition is thus just a variant on its argument that the licenses constitute copyright misuse, which this Court already squarely rejected.  879 F.3d at 957-58, 960.  The district court did not err in finding that the public interest supports an injunction.  Nor did it abuse its broad discretion by concluding, after considering all the relevant factors, that injunctive relief was warranted.

## C.   The Injunction Is Fully Consistent With the Jury Verdict.

As in its last appeal to this Court, Rimini argues that the jury's finding that Rimini's infringement was "innocent" deprived the district court of the discretion to

grant any copyright injunction.  Br.23-27.  That argument remains irreconcilable with the plain text of the Copyright Act, established case law, and common sense.

> **1.**    **The Copyright Act contains no bar to enjoining "innocent" infringers.**

Rimini's argument that innocent infringers may not be enjoined cannot be reconciled with the text or structure of the Copyright Act.  The Copyright Act does not confine injunctions to "willful" or non-"innocent" infringers; it empowers courts to enter "final injunctions on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. §502(a).  That express authorization for injunctions without exceptions for any class of cases is telling because Congress knows how to limit remedies to certain types of infringement or categories of cases.  For example, while statutory damages ordinarily range from $750 to $30,000, they can be as low at $200 for particular forms of unwitting infringement and as high as $150,000 when the "infringement was committed willfully."  *Id.* §504(c).  As those provisions confirm, Congress knows how to make copyright remedies contingent on innocence or willfulness, and it did not do so in §502(a).  Moreover, Congress expressly limits the availability of certain remedies— statutory damages and attorneys' fees—for copyrights that are not timely registered, *id.* §412, but does not similarly limit injunctive relief.  Congress' decision to make injunctions available without regard to the form of infringement makes good sense,

as a copyright is, at its core, "a right to *exclude*," *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring), and an injunction is the principal way to enforce that right.

Rimini makes the convoluted argument that injunctive relief must not be available under §502 against an innocent infringer because an entirely separate provision of the Copyright Act expressly *allows* for injunctive relief against certain innocent infringers.  *See* Br.23-24 (citing 17 U.S.C. §405(b)).  Rimini cites no authority in support of the puzzling argument that a specific authorization for injunctions and a general authorization for injunctions add up to a limitation on injunctions, because no court has ever accepted it.  That is unsurprising; in reality, §405(b) only reinforces the conclusion that there is nothing incompatible between injunctive relief and a finding that the infringement was "innocent."

Section 405 deals with when a copyright owner fails to include notice of its copyright on publicly distributed copies of certain kinds of works.  *See* 17 U.S.C. §405.  Subsection 405(a) provides that failure to include that notice will not invalidate the copyright so long as one of three conditions is satisfied.  Subsection 405(b) provides that someone who "innocently infringes a copyright, in reliance upon" an authorized and publicly distributed copy of the work that omitted that notice "incurs no liability for actual or statutory damages under section 504 for any infringing acts … if such person proves that he or she was misled by the omission of notice."  *Id.* §405(b).  But it goes on to provide that "the court" still "may enjoin

27

the continuation of the infringing undertaking." *Id.* In other words, the provision clarifies that injunctive relief remains affirmatively available, even when damage remedies are precluded, for a particularly "innocent" form of infringement—namely, innocent infringement where the copyright holder omitted the requisite notice. Far from showing that injunctive relief is a remedy of last resort that is never appropriate for innocent infringement, this provision tends to show the opposite: that injunctive relief is a favored remedy that remains available even when other remedies are precluded and the plaintiff has failed to provide the requisite notice.

**2.    Case law establishes that "innocent" infringers may be enjoined.**

Rimini next repeats its consistent but mistaken refrain that "no court has *ever* affirmed a permanent injunction against an adjudicated innocent infringer under the Copyright Act." Br.24. That claim is no more true now than it was any of the previous times Rimini made it.

In *D.C. Comics Inc. v. Mini Gift Shop*, the Second Circuit affirmed *both* the "determination of innocent infringement" *and* the entry of "a permanent injunction" against that adjudicated innocent infringer on the ground that an injunction was appropriate "to deter future infringements and thereby protect [the plaintiff's] rights." 912 F.2d 29, 36 (2d Cir. 1990); *see also, e.g.*, *Columbia Pictures Indus., Inc. v. Prado Pacheco*, 1990 WL 29787, at *1-3 (D.P.R. Feb. 27, 1990) (entering injunction when infringement was "innocent"); *Broad. Music, Inc. v. Coco's Dev.*

28

*Corp.*, 1981 WL 1364, at *2 (N.D.N.Y. 1981) ("permanently enjoin[ing]" defendant who "had [no] reason to believe that his acts constituted an infringement"). Similarly, in *MAI Systems Corp. v. Peak Computer, Inc.*, this Court "upheld" a permanent injunction where the plaintiff made "no showing" that the defendant actually "violated the Copyright Act by loaning MAI computers and software to its customers," because the "threat of a violation" was sufficiently clear to justify injunctive relief. 991 F.2d 511, 519-20 (9th Cir. 1993).[5]

As these cases reflect, whether infringement was knowing, willful, or innocent may be a relevant consideration for a district court in determining whether to exercise its discretion to enter an injunction "to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). But innocent infringement and injunctive relief are not mutually exclusive—as Congress itself recognized in §405(b). What matters most is whether an injunction will "prevent future violations" of the law. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Accordingly, Rimini was free to argue (as it did) that the jury's innocence finding weighs against issuing injunctive relief. But the district court was just as free to disagree.

---

[5] Contrary to Rimini's contentions, *Westinghouse Electrical Corp. v. General Circuit Breaker & Electrical Supply Inc.*, 106 F.3d 894 (9th Cir. 1997), does not support its argument. *Westinghouse* is not a copyright case; the district court there exercised its discretion to deny an injunction under the Lanham Act. *Id.* at 903. *Westinghouse* thus has nothing to say about whether the Copyright Act gives courts discretion to enjoin "innocent" infringers.

### 3.   Rimini's Seventh Amendment argument is meritless.

Rimini alternatively contends that even if the jury's "innocence" finding did not foreclose injunctive relief, the court's findings in support of its injunction violate the Seventh Amendment.  Br.25-27.  That argument rests on a misunderstanding of the law and a mischaracterization of the district court's order.

The Reexamination Clause comes into play only when a finding necessary to support equitable relief has been made by the jury.  *Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016).  As just explained, however, non-innocence is *not* a necessary finding for injunctive relief under the Copyright Act.  *See, e.g.*, *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1260 (11th Cir. 2014) (affirming permanent injunction even though it was "disputed … whether or not [defendants] were innocent infringers"); *De Acosta v. Brown*, 146 F.2d 408, 410 (2d Cir. 1944) (affirming injunction against "innocent" infringer).  That alone disposes of Rimini's argument; the Reexamination Clause is not even implicated here.

But even if the Reexamination Clause were implicated, it certainly was not violated, because the court did not rest the injunction on any finding regarding Rimini's *mens rea*.  Rimini takes issue with the court's statement that Rimini acted with "conscious disregard" for Oracle's copyrights.  Br.26.  But that language came in the court's discussion of *Oracle's* irreparable injury, not a discussion of *Rimini's* mental state.  It is in the section of the order labeled "Irreparable Injury"; it follows

30

the court's elucidation of the irreparable injury requirement; and it is followed by a detailed discussion of how Rimini's infringement enabled Rimini to offer "cut-rate prices," which "created the impression that Oracle was overcharging for support and eroded [Oracle's] bonds and trust" with customers.  ER23-24.

Moreover, the "conscious disregard" language was not even necessary to the court's irreparable injury finding, let alone its decision to award injunctive relief. The "[f]irst" grounds for the court's irreparable injury finding were the "undisputed" fact that Oracle and Rimini "directly compete with each other" and the concomitant conclusion that Rimini's "infringement of ninety-three separate copyright registrations" facilitated its rapid ability to acquire market share at Oracle's expense. ER23.   The relevant discussion and findings thus are addressed to a question (whether the nature of Rimini's infringement caused Oracle irreparable harm) entirely separate from the question the jury was asked in reaching its innocent infringement finding (whether Rimini knew its conduct violated the licenses).  And nothing in the jury's findings precluded the court from taking into account the extremely damaging effects of Rimini's infringement, innocent or not.  The jury itself recognized that Rimini's infringement was particularly harmful when it selected the maximum statutory damages for innocent infringement ($30,000) for all

93 counts.  ER461.  The injunction—which neither made nor relied on any *mens rea* finding—is fully consistent with the verdict and the Seventh Amendment.[6]

### D.    The Injunction Is Neither Overbroad Nor Vague.

Rimini next repeats its contentions from the first appeal that the injunction is overbroad and vague.  But the bulk of those contentions rest on arguments that this Court already considered *and rejected*.  Rimini's refusal to accept this Court's holdings succeeds only in confirming the appropriateness of injunctive relief.

### 1.    Rimini's claim that this Court limited the mandate to "future-customer 'cross-use'" is demonstrably false.

Rimini begins by making the remarkable claim that "[e]very copy" it has ever made "is authorized by the licenses."  Br.34.  That argument should sound familiar: It is the exact same argument that Rimini made to this Court (and to the jury and the district court) to try to escape liability for its infringement altogether, *see supra* pp.5-6, and it is the exact same argument that this Court emphatically rejected.  879 F.3d at 953-60.  In fact, that was the core copyright issue in the last appeal, and it is the very first issue this Court addressed, methodically explaining on a license-by-license basis why Rimini's argument "that its activities were permissible under the

---

[6] Rimini makes much of a press release Oracle issued about the injunction that quoted the "conscious disregard" language from the district court's order.  Br.27.  But contrary to Rimini's suggestions, Oracle's press release did not characterize that as a "finding" of the court, much less a finding essential to the entry of the injunction.

terms of the licenses Oracle granted to its customers" was not "persuasive." *Id.* at 954.

Undeterred, Rimini spends several pages of its brief arguing that this Court simply got it wrong. According to Rimini, "cross-use" is a "made up" theory that was "uncritically accepted" by the district court even though it violates neither Oracle's licenses nor copyright law. Br.35, 37. But the conduct that the district court enjoined Rimini from continuing is the same conduct that this Court held violates the licenses (and thus is not a defense to Rimini's admitted copying)—namely, using one customer's licensed version of the software for the benefit of another. *Compare* ER14, *with* 879 F.3d at 957. In no way did the district court "disregard" or "violate" the mandate. Br.2, 12, 49. Rather, the district faithfully applied this Court's ruling that far from being "made up," "cross-use" is an apt term to describe the nature of Rimini's copyright infringement. *See* 879 F.3d at 957.

Rimini next tries to narrow the scope of this Court's holding, insisting that the district court was foreclosed from enjoining so-called "current-customer cross-use" because this Court affirmed liability on Siebel and J.D. Edwards "only on the ground 'that [Rimini] created development environments for *future customers* using the license of an existing customer on the basis that *future customers* presumably would have licenses that would permit them to hire Rimini to create development environments.'" Br.32 (quoting 879 F.3d at 957); *see also* Br.42 (arguing that "[t]his

Court sustained the liability verdict *only* on … '[c]ross-use' as to potential future clients"). That characterization of this Court's decision is demonstrably false.

The allegedly limiting language that Rimini quotes actually comes from this Court's description *of Rimini's own arguments*, not the Court's own holding. As this Court explained, Rimini maintained that its cross-use was authorized by the licenses because all of its copies were either for a current Oracle customer that "had its own license" or for "future customers [who] presumably would have licenses that would permit them to hire Rimini to create development environments." 879 F.3d at 957. This Court *rejected* that argument, agreeing with Oracle that "each of the licenses at issue here pointedly limits copying and use to supporting the *Licensee*." *Id.* (quotation marks omitted). The Court thus concluded *both* that "[a]ny work that Rimini performs under color of a license held by a customer *for other existing customers* cannot be considered work in support of that particular customer," *and* that "[t]he same logic applies to work Rimini performs *for unknown, future customers*." *Id.* (emphasis added). Far from "distinguish[ing] between … current-customer … and future-customer 'cross-use,'" Br.32, this Court explicitly held that "[t]he same logic applies to" both, 879 F.3d at 957.

Rimini drops a footnote claiming that this Court declined to address the "current-customer 'cross-use'" issue because it "had not been clearly raised in the opening appellate brief." Br.33 n.* (citing 879 F.3d at 957). That is demonstrably

false as well.  The argument that this Court found not "clearly raised" was a different one—namely, that *no* kind of cross-use can support copyright liability because "'cross-use' is a contractual rather than a copyright issue."  879 F.3d at 957.  And the Court did not simply decline to address that issue:  It concluded that Rimini "waived" that argument by failing to raise it until its reply brief, and then went on to conclude that it would reject the argument even if it were to consider it because Rimini "offered no analysis" of the licenses that would support it.  *Id.* at 957 & n.4.

Rimini nonetheless insists that this "Court should reverse the injunction because 'cross-use' as to Rimini's current clients is not copyright infringement, and at most involves questions of contract law, not copyright infringement."  Br.34.  Having both waived and failed to prove that argument in the first appeal, Rimini cannot try to remedy that deficiency now; to give a "second bite at the apple" to a party that failed to raise an issue in its first appeal would be a "manipulation" of the court system.  *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008).[7]  In all events, Rimini's argument continues to suffer from the same legal deficiency:  The license terms are relevant to this case not because everything that violates the

---

[7] Rimini suggests that the district court reopened this issue because it "squarely ruled that 'cross-use' … constitutes copyright infringement" on remand.  Br.33-34 n.* (quoting ER31).  That is not true either.  The district court simply noted, in the course of recounting Rimini's litigation misconduct, that Rimini repeatedly lied about cross-use before finally admitting at trial that it "did in fact engage in cross-use and other conduct which constitutes copyright infringement."  ER31.

licenses necessarily violates the Copyright Act, but because Rimini invoked the licenses to support its (failed) defense that its undisputed copying was *authorized*. *See* 879 F.3d at 954 ("[T]here is no dispute that, absent an applicable license, Rimini's accused acts violated the exclusive right Oracle enjoys as owner of the software copyright[s]."). Rimini is thus simply wrong to claim that cross-use is only a contractual matter.

Finally, Rimini's accusation that the district court "enjoin[ed] conduct that this Court recognized is not infringing," Br.40, is inexplicable. This Court did not hold (or even "recognize") that *any* of Rimini's conduct "is not infringing"; it "affirm[ed] the judgment with respect to the copyright infringement claims," without qualification. 879 F.3d at 953. Moreover, Rimini's lone example of this purported phenomenon misrepresents the injunction. Rimini claims that the injunction prohibits it from "using JD Edwards or Siebel software on 'any computer systems other than a specific licensee's own computer systems,'" and that this language erroneously "mirrors the injunction's facilities limitation for PeopleSoft" even though this Court noted that only the PeopleSoft licenses contain that restrictive facilities limitation. Br.40-41 (quoting ER14). In fact, those J.D. Edwards and Siebel provisions in the injunction do not "mirror" the PeopleSoft provision at all. Rimini claims otherwise only by misleadingly cutting off those provisions, which go on to explain the circumstances under which Rimini *can* make copies that are not on

"a specific licensee's own computer system," consistent with the terms of the licenses admitted as evidence at trial.  *See* ER15-16 (specifically allowing Rimini "to create an unmodified copy of a specific licensee's software application and documentation for use by that specific licensee in the event that the production copy of the licensee's software is corrupted or lost").  Once again, Rimini's argument has no basis in reality and ignores the factual record.

### 2. Rimini's claim that the mandate foreclosed enjoining cross-use is likewise false.

Rimini next argues that the injunction violates the mandate because it "enjoins conduct far beyond that which was decided in the previous appeal."  Br.41.  That argument is wrong as a matter of both law and fact.  Rimini is of course correct that a mandate "is conclusive only as to" what was "actually decided in the previous appeal."  Br.41.  But whatever bearing that issue-preclusion principle may have in this law-of-the-case context, it certainly does not mean that the district court was required to treat anything that this Court did *not* decide as if it were conclusively resolved *in Rimini's favor*.  Instead, to the extent the Court did not need to address all aspects of Rimini's conduct to reject Rimini's appellate arguments and affirm the copyright judgment in full, the district court's pre-appeal rulings on those issues remained the law of the case.  The district court was free to take those rulings into account in determining "the propriety or scope of any injunctive relief," an issue this Court declared "committed to the district court's discretion."  879 F.3d at 964.

Rimini is equally wrong in its characterization of what this Court "actually decided."  As explained, *see supra* pp.33-34, this Court manifestly did *not* confine its holdings on J.D. Edwards and Siebel to "[c]ross-use as to potential future clients." Br.42.  And as to Database, this Court found that Rimini waived any argument that its infringement was authorized by the Oracle License and Service Agreements.  879 F.3d at 960.  But far from "narrow[ing]" the basis of this Court's holding as to Database, Br.42, that waiver led this Court to "affirm" "the district court's legal conclusion that Rimini was not entitled to assert the OLSAs as a defense."  879 F.3d at 960.  Accordingly, as to J.D. Edwards, Siebel, and Database, Rimini's "actually decided" argument is irrelevant, as this Court *did* decide that all of the conduct the district court enjoined was not authorized by the licenses.

And although Rimini is correct that this Court did not "d[id] not decide whether" cross-use is "permitted by the PeopleSoft license," 879 F.3d at 960 n.6, that does not mean that this Court's decision precluded the district court from finding that cross-use of PeopleSoft software should be enjoined.  To the contrary, like every other issue regarding "the propriety or scope of any injunctive relief" necessary to remedy Rimini's infringement, this Court declared that issue "committed to the district court's discretion in the first instance."  *Id.* at 964.  The district court was thus entirely free to abide by its earlier conclusion that cross-use is *not* permitted by the PeopleSoft licenses and to enjoin Rimini from "us[ing] PeopleSoft

software … on one licensee's computer systems to support … any other licensee." ER14.

Moreover, Rimini does not even try to argue that the court's construction of the PeopleSoft licenses was incorrect, and so has waived any ability to do so. *See* 879 F.3d at 957 ("arguments not raised by a party in its opening brief are deemed waived"). Nor could Rimini reasonably make any such argument, as the PeopleSoft licenses plainly prohibit making copies or using environments that derive from Customer *A*'s license to support Customers *B*, *C*, or *D*. *See* 16-16832 ER1177 (confining third parties to making copies "*for Licensee's internal use*" and "in accordance with the terms set forth herein," which further limit uses to supporting "Licensee's *internal data processing operations*" (emphases added)).

### 3. The district court had discretion to enjoin distribution and preparation of derivative works.

Although the jury was instructed that the PeopleSoft "licenses prohibited Rimini Street from copying or preparing derivative works from PeopleSoft software," ER642, Rimini contends that the court could not enjoin that conduct because it is not clear whether the jury based its verdict on a finding that Rimini violated that prohibition. Br.43-44. But whatever violation(s) of the licenses may have led to the jury's findings, there can be no dispute that the parties litigated the question of whether the licenses *allowed* Rimini to engage in the conduct that the injunction prohibits. And, as evidenced by its jury instruction, the district court

39

concluded that they do not.  Rimini could have challenged that license-construction holding or that jury instruction in its first appeal, but it chose not to do so.  That alone precludes Rimini from pressing that argument now, "for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost."  *United States v. Ben Zvi*, 242 F.3d 89, 95-96 (2d Cir. 2001).  The district court thus acted well within its discretion in enjoining Rimini from engaging in that conduct.[8]

Moreover, Rimini's suggestion that the district court could enjoin only things that the jury affirmatively found it did misunderstands the scope of a court's discretion in granting an injunction.  Courts are vested with broad discretionary power to fashion injunctive relief based on the "necessities of the particular case." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975).  That authority includes the power to enjoin even otherwise-lawful conduct, so long as the decree is tailored to the nature and scope of the case.  *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88-89 (1950) (injunctions may cover "entirely proper" acts if doing so will prevent future violations).  That authority is particularly broad in the copyright context,

---

[8] The sole authority Rimini cites in support of its contrary (and waived) argument is utterly inapposite.  That case involved "an *appallingly* bad injunction" that contained "gibberish," applied to works in which plaintiff did "not own the copyrights," and extended beyond "defendants, and those in privity with them." *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003).  Rimini does not and cannot make any such claims here.

where injunctions may impose whatever terms the court deems "reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a). This Court and others thus consistently have upheld copyright injunctions that reach beyond the specific infringing conduct in which the defendant was found to have engaged. *See, e.g.*, *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1406 (9th Cir. 1997) (enjoining sale of entire book even though only front and back covers were infringed); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 306-07 (7th Cir. 2010) (upholding injunction preventing transmission of pirated and nonpirated programs "to prevent the evasion of the core prohibition in the decree and to extirpate any lingering effects of the violation sought to be remedied").

### 4.     Rimini's objections to the "access" restrictions are baseless.

Rimini claims that "the jury was never instructed that 'accessing' source code was a basis of liability," and that prohibiting Rimini from accessing a copyrighted work would violate the First Amendment. Br.44-45. Once again, that argument rests on the mistaken premise that the court lacked authority to enjoin any conduct beyond that which the jury affirmatively found to be infringing. That is not the law.

In reality, the court was free to conclude that enjoining Rimini from violating the licenses' access terms was the best way "to prevent or restrain infringement of" Oracle's copyrights. 17 U.S.C. §502(a); *see Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011) ("[I]njunctive relief to prevent copyright

41

infringement is available as an equitable remedy in the court's discretion."). The J.D. Edwards license restricts third-party access to source code by limiting third parties to "screen access" of the software (which, as Oracle explained at trial, does not include access to source code); and the Siebel license prohibits third parties from "access[ing] the software's source code to carry out development and testing of software updates."   16-16832 ER111, 1172.   Those prohibitions exist because restricting third parties' access to source code is the best way to ensure that third parties do not copy it.   The district court thus acted well within its discretion in ordering Rimini to abide by those restrictions.

Rimini's argument that those restrictions violate the First Amendment is nothing more than a backdoor effort to revive its failed copyright-misuse defense. Copyright misuse "forbids a copyright holder from 'secur[ing] an exclusive right or limited monopoly not granted by the Copyright Office.'"   *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (citation omitted).   Tracking that formulation nearly verbatim, Rimini argues that "access" cannot be enjoined because "'access' is not an exclusive right under the Copyright Act."   Br.44; *see also* Br.45. But all the injunction does is prohibit what the licenses—which this Court held *do not constitute copyright misuse*, *see* 879 F.3d at 957-58, 960—already prohibit. Once again, then, Rimini's argument is squarely foreclosed by this Court's decision.

Finally, even if the injunction went beyond the license terms to prohibit conduct the district court deemed necessary to prevent an adjudicated infringer from returning to its infringing ways, it would not present any serious First Amendment issue.  Rimini no longer stands in the position of a would-be licensee (or would-be support service provider for a licensee) who has never infringed Oracle's copyrights or violated Oracle's licenses.  Rimini is now an adjudicated infringer with an adjudicated record of violating license terms (and then attempting to cover up those actions by destroying evidence and lying), and the district court's ample discretion to enjoin conduct that would facilitate future violations is not limited to conduct that independently violates the copyright laws or the licenses.  *See supra* pp.40-41.  This Court need not address the outer bounds of the district court's discretion because the injunction here focuses on conduct that would not be authorized even for a third party who had never violated an Oracle copyright.  But Rimini, of course, is not in that position.  The district court acted well within its discretion in crafting this injunction.

### 5.    The injunction is not vague.

The injunction provides fair notice of precisely what it prohibits.  In arguing to the contrary, Rimini provides a solitary example of supposed vagueness:  Rimini claims that it cannot figure out what it means to be restrained from using software "to support a specific licensee's own 'internal data processing operations.'"  Br.46

43

(quoting ER14).  The answer is found in the text of this Court's opinion.  Just as "work that Rimini performs under color of a license held by a customer for other existing customers" (or "for unknown, future customers") "cannot be considered work in support of that particular customer," 879 F.3d at 957, environments traceable to Customer *A*'s license cannot be used "to support" Customer *B* because *B's* operations are obviously not "internal" to *A*.  Rimini's professed inability to grasp this basic point is contrary not only to this Court's opinion, but to Rimini's own pretrial stipulation to licenses containing this exact language and its trial testimony discussing the meaning of this precise phrase.  *See* 16-16832 ER321.

Rimini's more general complaint that the injunction is akin to an "injunction[]" to obey the law," Br.47, is equally misplaced.  The injunction does not simply enjoin Rimini from engaging in copyright infringement.  It enjoins Rimini from engaging in specific conduct that violates the licenses, as the district court and this Court have made clear, and as Rimini's own public statements confirm.  *See supra* p.23.  That Rimini continues to insist that this conduct does *not* violate the licenses even after this Court expressly rejected those arguments confirms beyond all doubt that the injunction is "reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. §502(a).

44

II.     **The District Court Did Not Abuse Its Discretion In Awarding Attorneys' Fees.**

The Copyright Act, which provides that courts have "discretion" to "award a reasonable attorney's fee to the prevailing party as part of the costs," 17 U.S.C. §505, "grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case," including "a party's litigation misconduct." *Kirtsaeng*, 136 S. Ct. at 1985, 1989.  The district court did not abuse its broad discretion in awarding Oracle 80% of the attorneys' fees it sought.  Rimini's contrary arguments rely on gross distortions of the law of this Circuit and the law of the case.

**A.     The Decision to Re-Award Fees Was Not an Abuse of Discretion.**

**1.     The district court accurately applied the relevant factors.**

"The first issue before the court" on remand was whether to re-award fees at all "in light of the Ninth Circuit's reversal of the state law claims."  ER27. Consistent with precedent, the district court "consider[ed] the facts of [this] case, weigh[ed] the appropriate factors, and ma[de] a fee determination based on the conduct of both parties."  *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1150 (9th Cir. 2018) (alterations in original).  The court acted well within its discretion in concluding that those factors, taken as a whole, favored awarding fees.

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act."  *Mattel, Inc. v. MGA Entm't*, 705 F.3d 1108, 1111 (9th Cir. 2013).  Because the Copyright

45

Act "serves the purpose of enriching the general public through access to creative works," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994), fee awards under §505 should promote suits that "encourag[e] and reward authors' creations while also enabling others to build on that work." *Kirtsaeng*, 136 S. Ct. at 1986. The district court did not clearly err in finding that a fee award was consistent with the purposes of the Act given Oracle's significant investments in developing its copyrighted software and the significant expense Rimini's misconduct forced Oracle to undertake to vindicate Oracle's rights. ER33; *see* ER32 ("Without a fee award, the court finds that Oracle's investment in its intellectual property and its incentive to create future software would not be appropriately protected or compensated.").

Nor did the court err (let alone clearly err) in finding that Oracle achieved "substantial success." ER30. This case "was substantially and significantly focused on Rimini Street's alleged copyright infringement." ER28. "[T]he vast majority of the parties' pretrial motions and the court's related orders were significantly related to the issue of copyright infringement," and "almost all of the evidence submitted at trial … was directed at or related to Oracle's copyright infringement claim[s]." ER29-30. Oracle defeated all of Rimini's counterclaims and affirmative defenses and won all 93 infringement claims, receiving "a $35.6 million verdict" with interest, plus injunctive relief. ER28-30. That is "substantial success" under any measure.

46

Rimini insists that Oracle *lost* the majority of its claims by counting claims Oracle voluntarily dismissed and/or never submitted to the jury.  Br.55.  But "the voluntarily dismissed claims were not copyright infringement claims, so they do not bear on who prevailed under the Copyright Act." *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007).  Likewise, while Oracle did not prevail on the non-copyright claims it took to trial, "the district court did not abuse its discretion in placing greater emphasis on the outcome of the Copyright Act claim[s]." *Shame On You*, 893 F.3d at 667.  Under §505, what matters is whether the party prevails *on its copyright claims*.  Oracle prevailed on all 93.

Third, the court did not clearly err in finding that Rimini's unreasonable litigating positions and litigation misconduct independently justify an award of fees. ER31.  As the Supreme Court explained in *Kirtsaeng*, "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses."  136 S. Ct. at 1988-89; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014) (allowing fee-shifting in light of disobedience of court order).  Here, Rimini staved off summary judgment by falsely "assert[ing] through various affidavits and deposition testimony" that it "did not engage in cross-use of the copyrighted software," which forced Oracle "to spend substantially more time and resources to establish copyright infringement than should have been necessary."  ER31.  An argument cannot be objectively reasonable

if it is objectively false.  *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003); *see*

*Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982) (concluding

that an employer would have acted in bad faith if it pursued a defense of an action

based on a lie); *IO Grp., Inc. v. Jordan*, 2010 WL 2231793, at *2-3 (N.D. Cal. June

1, 2010) (awarding fees in copyright case in light of "inherent contradictions in

Defendant's factual statements").  The finding that Rimini's significant misconduct

warranted fees was certainly not clear error.

Finally, the jury's finding that Rimini's infringement was "innocent" neither

deprived the court of discretion to award fees under §505 nor rendered its decision

to do so an abuse of that discretion.  While the Copyright Act limits the availability

of certain remedies, including attorneys' fees, in particular circumstances, *see, e.g.*,

17 U.S.C. §412, the Act "does not condition an award of fees on the showing of a

willful infringement or frivolous suit."  *Casella v. Morris*, 820 F.2d 362, 366 (11th

Cir. 1987); *see Mattel*, 705 F.3d at 1111.  Courts may award fees under §505 "to

deter repeated instances of copyright infringement … even if the losing position was

reasonable in a particular case."  *Kirtsaeng*, 136 S. Ct. at 1989.  Moreover, while the

jury may have found that Rimini's infringement was innocent, that does not make

Rimini's "significant litigation misconduct," ER31, any less unreasonable.

## 2.    The fee award is entirely consistent with the mandate.

Rimini does not challenge the district court's evaluation of the relevant legal factors or the factual findings underlying it. Instead, Rimini argues that the award violates the mandate because "this Court narrowly upheld the jury's infringement verdict against Rimini." Br.50. As already explained, there was nothing "narrow" about this Court's affirmance.

Rimini was adjudged to have infringed 93 separate copyright registrations spanning four software lines, and this Court affirmed on *every single one*. With respect to J.D. Edwards and Siebel, "Rimini challenge[d] the jury's finding of copyright infringement … on two grounds":  that the licenses allowed Rimini's copying; and that the licenses constitute copyright misuse to the extent they did not. 879 F.3d. at 954. This Court found "[n]either of these arguments … persuasive." *Id*. With respect to PeopleSoft, this Court "[a]gain" held that Rimini's "arguments are without merit." *Id.* at 958-59. And with respect to Database, this Court "affirm[ed] the district court's determination of copyright infringement" because Rimini "failed to challenge the district court's legal conclusion." *Id.* at 960. An across-the-board affirmance that accepts zero of the appellant's arguments cannot plausibly be described as having "narrowly upheld the jury's infringement verdict." Br.50.

This Court's reference to Oracle's "more limited success," 879 F.3d at 965, does not suggest otherwise. *Contra* Br.51. As is abundantly clear in context, the

49

Court was referring not to the scope of Oracle's appellate success on its copyright claims (which was complete), but to the appellate reversal on the state-law claims, which potentially impacted remedies premised on both copyright and state-law liability and thus prompted a remand. Indeed, the "more limited success" language comes immediately after a sentence noting the Court's "conclusion that there was no violation of the statute computer laws." 879 F.3d at 965.

Rimini's claim that Oracle "prevailed on one claim against one defendant," Br.51, is equally wrong. Oracle prevailed on *all 93* of its copyright claims and was awarded $35.6 million in damages. ER456-61. The notion that a $35.6-million award "could only charitably be described as 'limited,'" Br.51, is fanciful. *See Park ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1035-36 (9th Cir. 2006) (describing "limited success" as "insignificant," "nominal," "purely technical," or "de minimis" relief). So too is Rimini's argument that Oracle's success was "limited" because it was less than Oracle asked for in its complaint. As this Court has held time and again, "a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005).

## B.    There Is No Apportionment Requirement for Related Claims.

Rimini claims that Oracle "should receive no fees whatsoever" because Oracle supposedly "refused to meet [its] burden" to "adduce apportionment

evidence." Br.56 (capitalization omitted). But that "burden" is one of Rimini's own invention: "Allocation is not required where there is a 'common core of facts.'" *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 937 (9th Cir. 2004).

This Court has squarely held that "the district court should *not* attempt to divide the request for attorney's fees on a claim-by-claim basis" when "the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories.'" *Ambat v. City & Cty. of San Francisco*, 757 F.3d 1017, 1032 (9th Cir. 2014) (emphasis added). That rule is not limited to related claims that are all successful. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Consistent with *Hensley*, this Court has held that "apportionment was not appropriate" where a plaintiff won only one of four claims, *Larkins v. Delta Air Lines, Inc.*, 1994 WL 503849, at *4-5 (9th Cir. 1994), only two of six claims, *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999), and so on.

Rimini tries to paint a different picture by taking fragments from *Hensley* out of context. *See* Br.54, 59. But Rimini's cherry-picked citations elide the basic holding of *Hensley*: While a court may not award attorneys' fees for "work on an unsuccessful claim" if the unsuccessful claim was "based on different facts" than the

successful claims, a court may *and should* award fees for work on related claims. 461 U.S. at 434-35; *see id.* at 438 (concluding, despite differences in legal theories and some facts, that "the District Court did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues," because the claims sprung from a common course of conduct).

It could not be clearer that the copyright claims and the state-law claims were "related." Although the legal theories are different, this Court "do[es] not require commonality of both facts *and* law to conclude that claims are related." *Ibrahim v. DHS*, 2019 WL 73988, at *20 (9th Cir. Jan. 2, 2019) (en banc). Rather, "the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" *Id.* That is plainly the case here. As the district court explained, taking copyrighted software in violation of the terms of use and copying the software in violation of the licenses were both key components of Rimini's early success. ER419. And even if relatedness were a close call (it is not), that call was the district court's to make. *See Watson v. Cty. of Riverside*, 300 F.3d 1092, 1097 (9th Cir. 2002) (emphasizing "a district court's discretion in such matters").

Rimini does not challenge the court's relatedness finding, let alone its exercise of discretion. *See* Br.12, 54. Instead, Rimini raises only another meritless mandate claim, insisting that "this Court implicitly rejected th[e] argument" that the claims were related. Br.54. But again, absolutely nothing in this Court's opinion supports

52

that view. This Court typically does not decide relatedness in the first instance: "That is for the district court to decide." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005); *see, e.g.*, *Dang*, 422 F.3d at 813; *The Traditional Cat Ass'n v. Galbraith*, 340 F.3d 829, 834 (9th Cir. 2003). Had the panel meant to depart from that rule, it would have instructed the district court to reduce Oracle's fees, rather than remanding for the court to reconsider the fees question in the first instance.

Finally, to the extent Rimini's position is that Oracle was required to submit apportionment evidence for *related claims*, that is directly contrary to the law of this Circuit and "every other circuit … that has addressed the question." *Ibrahim*, 2019 WL 73988, at *20 & n.24 (collecting cases). The district court acted well within its discretion in concluding that the state-law claims were related to the infringement claims and in awarding fees for attorney time spent on both sets of claims.

## C. The Amount of Fees Awarded Was Reasonable.

The district court arrived at its fee award using the presumptively reasonable lodestar method, "multipl[ying] the number of hours 'the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *see Hensley*, 461 U.S. at 433. The court then reduced the lodestar by 20% to reflect its finding that Oracle's billing records contained a few block-billing entries. ER34; 16-16832 ER30-31; *see Hensley*, 461 U.S. at 437 (blanket percentage reductions are permissible so long as the court

"provide[s] a concise but clear explanation of its reasons for the fee award").  The resulting award was well within the district court's broad discretion.

Rimini claims that "a 50% reduction" is warranted because Oracle sought to hold Ravin vicariously or contributorily liable for Rimini's copyright infringement but was unsuccessful.  Br.59; *see* ER456-57.  Precedent is "clear," however, that district courts may award "the full lodestar amount" even if the plaintiff prevails against only a small fraction of defendants sued.  *Corder v. Gates*, 947 F.2d 374, 380 (9th Cir. 1991); *see, e.g.*, *Rivera v. City of Riverside*, 763 F.2d 1580 (9th Cir. 1985) (affirming full lodestar award where plaintiff prevailed against six of 32 defendants).  The district court plainly did not abuse its discretion in following that settled law.

That is particularly true given that the infringement claims against Ravin were secondary-liability claims.  *See* ER456-57.  Had Oracle succeeded in holding Ravin secondarily liable for Rimini's copyright infringement, Oracle would have netted zero additional dollars in damages.  And the scope of the injunction would not have been any different, other than applying to Ravin in his personal capacity (rather than just his professional capacity, as it does now).  Rimini cites no authority for the proposition that a district court abuses its discretion by refusing to multiply the lodestar amount by only the fraction of defendants held liable.  That is because no such authority exists.  Just as a court does not abuse its discretion by awarding fees for time spent on claims that a plaintiff loses outright, a court does not abuse its

discretion by making a prevailing party whole just because the plaintiff unsuccessfully sought to hold more defendants liable for the same unlawful conduct.

Rimini next argues that the award should be reduced either by 91.7% ("because Oracle prevailed on only one out of 12 claims against Rimini") or by 85.5% ("because Oracle received $35.6 million in damages out of the $245.9 million in total damages sought"). Br.59. That is just another variation on Rimini's flawed apportionment argument—and once again is an argument this Court has affirmatively rejected. *See, e.g.*, *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 765 (9th Cir. 2015) (rejecting district court's decision to "reduce[] the amount of remaining fees by three-quarters to reflect the fact that Ryan succeeded on only one of the four claims asserted in her complaint"); *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (affirming fully compensatory fee award where parties settled for far less than plaintiffs initially sought).

In fact, this Court rejected each of the methods Rimini proposes *in both of the cases Rimini cites*. *See McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009) ("the district court need not be so mechanical as to divide the amount of fees and costs requested by the number of claims," and "results may not be measured solely in terms of damages"); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) ("a plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the district court did not adopt each

contention raised" (alteration in original) (quoting *Hensley*, 461 U.S. at 440)).  Every circuit to address the issue has likewise rejected such methods.  *See, e.g.*, *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 679 (5th Cir. 2015); *Murray v. City of Onawa*, 323 F.3d 616, 619 (8th Cir. 2003); *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995); *Rosario v. Livaditis*, 963 F.2d 1013, 1021 (7th Cir. 1992).  And Rimini's argument is particularly misplaced in a case involving fees based on litigation misconduct, which can be awarded without regard to the scope of litigation success in absolute or relative terms.  *See Kirtsaeng*, 136 S. Ct. at 1983.

Ultimately, the most that can be said for Rimini is a truism:  The district court *could have* awarded less.  But the same could be said of nearly every decision left to the discretion of the district court.  Indeed, the district court could have awarded more, instead of reducing Oracle's fees by 20%.  That discretion is entrusted to district courts precisely because they have greater "knowledge of the case, the substance of the pleadings, orders and opinions, the course of the trial, and a sense of what the case was 'about' and what part the copyright claims played in the overall makeup of the case."  *Traditional Cat*, 340 F.3d at 834.  Hence, this Court's "role" on appeal "is to review for an abuse of discretion, not to review an award with 'special scrutiny.'"  *Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*, 116 F.3d 484 (table) *4 (9th Cir. 1997) (citation omitted).

In the end, Rimini premises its entire appeal on the facts that the injunctions and fee awards issued after the trial were based on both copyright and state-law violations, and post-remand, the district court ordered injunctive relief and fee awards of the same or similar scope. But there is nothing legally problematic about that result. Exercising its broad discretion under §502, the district court concluded that this case was really "about" copyright infringement through and through, and entered its injunction based on the copyright violations alone. As to fees, the court similarly exercised its discretion under §505 to find that the copyright claims were central; that Oracle achieved substantial success on its copyright claims and Rimini engaged in "litigation misconduct;" that the state-law claims were related to the copyright claims; and that awarding 80% of the fees Oracle sought would further the purposes of the Copyright Act. ER31, 34. Each of those conclusions was well within the wide latitude §505 affords. In short, there is nothing anomalous, let alone legally problematic, about the district court's conclusion that injunctive relief and attorneys' fees were appropriate and amply justified by Rimini's massive copyright infringement, which was the issue at the heart of this litigation.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

Respectfully submitted,

s/Paul D. Clement

| | |
|---|---|
| WILLIAM A. ISAACSON | PAUL D. CLEMENT |
| KAREN L. DUNN | *Counsel of Record* |
| BOIES, SCHILLER & FLEXNER LLP | ERIN E. MURPHY |
| 1401 New York Avenue, NW | MATTHEW D. ROWEN |
| Washington, DC 20005 | KIRKLAND & ELLIS LLP |
| (202) 237-2727 | 655 Fifteenth Street, NW |
| | Washington, DC 20005 |
| | (202) 879-5000 |
| | paul.clement@kirkland.com |
| | |
| JOHN A. POLITO | DAVID B. SALMONS |
| MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| One Market, Spear Street Tower | 2020 K Street NW |
| San Francisco, CA 94105 | Washington, DC 20006 |
| (415) 442-1000 | (202) 373-6238 |

*Counsel for Plaintiffs-Appellees*

January 23, 2019

58

## STATEMENT OF RELATED CASES

Pursuant to 9th Cir. R. 28-2.6, Plaintiffs-Appellees Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation, by and through their counsel of record, hereby certify that there are no related cases pending before this Court.


Dated:  January 23, 2019                              s/Paul D. Clement
                                                      Paul D. Clement

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of 9th Cir. R. 32-1(a) because it contains 13,955 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated:  January 23, 2019                                s/Paul D. Clement
                                                        Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement