| | |
|---|---|
| BOIES SCHILLER FLEXNER LLP<br>RICHARD J. POCKER (NV Bar No. 3568)<br>300 South Fourth Street, Suite 800<br>Las Vegas, NV 89101<br>Telephone: 702.382.7300<br>Facsimile: 702.382.2755<br>rpocker@bsfllp.com | MORGAN, LEWIS & BOCKIUS LLP<br>JOHN A. POLITO (*pro hac vice*)<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>Telephone: 415.442.1000<br>Facsimile: 415.442.1001<br>john.polito@morganlewis.com |
| BOIES SCHILLER FLEXNER LLP<br>WILLIAM ISAACSON (*pro hac vice*)<br>KAREN DUNN (*pro hac vice*)<br>1401 New York Avenue, NW, 11th Floor<br>Washington, DC 20005<br>Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131<br>wisaacson@bsfllp.com<br>kdunn@bsfllp.com | DORIAN DALEY (*pro hac vice*)<br>DEBORAH K. MILLER (*pro hac vice*)<br>JAMES C. MAROULIS (*pro hac vice*)<br>ORACLE CORPORATION<br>500 Oracle Parkway, M/S 5op7<br>Redwood City, CA 94070<br>Telephone: 650.506.4846<br>Facsimile: 650.506.7114<br>dorian.daley@oracle.com<br>deborah.miller@oracle.com<br>jim.maroulis@oracle.com |
| BOIES SCHILLER FLEXNER LLP<br>STEVEN C. HOLTZMAN (*pro hac vice*)<br>BEKO O. REBLITZ-RICHARDSON<br> (*pro hac vice*)<br>1999 Harrison Street, Suite 900<br>Oakland, CA 94612<br>Telephone: 510.874.1000<br>Facsimile: 510.874.1460<br>sholtzman@bsfllp.com<br>brichardson@bsfllp.com | *Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.* |

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**REPLY IN SUPPORT OF ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION** |

REPLY ISO MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD ................................................................................................... 2

III. ARGUMENT ................................................................................................................. 3

    A.  Local Rule 26-7 Does Not Apply to Oracle's Motion. ....................................... 3

    B.  Oracle's Motion Does Not Seek to Preempt *Rimini II*............................................ 5

    C.  Oracle Has Raised Significant Questions Regarding Rimini's Compliance. ......... 8

        1.  *Rimini Has Failed Yet Again to State Its Compliance.* ............................... 9

        2.  *The Ninth Circuit Already Denied Rimini's Motion to Stay the Injunction.* ................................................................................................. 10

        3.  *Rimini's Opposition Only Amplifies Rimini's Inconsistent Statements.* ... 10

        4.  *Rimini's History Indicates a Likelihood of Non-Compliance* ................... 10

    D.  Oracle's Proposed Discovery Is Narrowly Tailored and Targeted. ....................... 11

IV.  CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blackberry Limited v. Typo Products LLC*,
    2014 WL 4136586 (N.D. Cal. Aug. 14, 2014).........................................................................12

*Cal. Dep't of Soc. Servs. v. Leavitt*,
    523 F.3d 1025 (9th Cir. 2008)..........................................................................................2, 3, 10

*Corrales v. Castillo*,
    2008 WL 11451256 (D. Nev. Feb. 12, 2008) .........................................................................5

*Crawford v. Honig*,
    37 F.3d 485 (9th Cir. 1994).....................................................................................................8

*In re Crystal Palace Gambling Hall, Inc.*,
    817 F.2d 1361 (9th Cir. 1987).................................................................................................8

*Does v. Trump*,
    328 F. Supp. 3d 1185, 1202 (W.D. Wash. 2018)..............................................................11, 12

*Donovan v. Mazzola*,
    716 F.2d 1226 (9th Cir. 1983).................................................................................................8

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
    445 U.S. 375 (1980).....................................................................................................5, 8, 10

*McCarty v. U.S. Bank Nat'l Ass'n*,
    2018 WL 6705532 (D. Nev. Dec. 20, 2018)...........................................................................4

*McDaniel v. Shulkin*,
    2018 WL 547222 (D. Nev. Jan. 24, 2018)..............................................................................5

*McNamara v. Hallinan*,
    2019 WL 918984 (D. Nev. Feb. 25, 2019) ............................................................................3

*Morrison v. Quest Diagnostics, Inc.*,
    2016 WL 355120 (D. Nev. Jan. 27, 2016)..............................................................................5

*Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*,
    316 F.R.D. 327 (D. Nev. 2016)...............................................................................................4

*Pa. Mfrs' Ass'n Ins. Co. v. Riccelli Enters., Inc.*,
    2015 WL 12582794 (N.D.N.Y. Dec. 9, 2015).......................................................................3

*Poole v. Centennial Imps., Inc.*,
    2013 WL 3832415 (D. Nev. July 23, 2013)............................................................................4

*Rutherford v. Baca*,
    2009 WL 10653011 (C.D. Cal. Aug. 4, 2009) ..........................................................................2

**Other Authorities**

Fed. R. Evid. 401 ...............................................................................................................................8

Fed. R. Evid. 406 ...............................................................................................................................9

Fed. R. Civ. P. 37(a)(1) ..................................................................................................................3, 4

LR 26-7 ...................................................................................................................................1, 3, 4

iii

## I. INTRODUCTION

In opposing Oracle's motion, Rimini fails again to affirmatively state that it understands the Injunction's terms and is complying with those terms. Instead of addressing the significant compliance issues Oracle raised, Rimini obfuscates in the hopes of creating distractions, while once again challenging the basis for the Injunction. The Injunction's terms are clear, and as Rimini refuses to provide information as to its compliance with terms, Oracle should be permitted to take discovery.

Rimini's initial argument is that Oracle has not sufficiently met and conferred before bringing this motion. Rimini incorrectly cites LR 26-7, which applies to disputes about particular discovery requests. Here, discovery ended more than seven years ago, and Oracle now seeks the Court's permission to conduct new, focused discovery concerning Rimini's compliance with the Injunction. Local Rule 26-7 simply does not apply. Also, as Rimini's correspondence makes clear, further meet and confer is pointless. Rimini is unwilling to give Oracle *any discovery* into its compliance with the Injunction's terms. Indeed, Rimini is unwilling to permit Oracle to use the discovery Oracle obtained in *Rimini II* to assess Rimini's compliance. The parties' differences regarding compliance discovery are not the result of a lack of discussion; they are the result of Rimini's stonewalling.

Rimini's principal argument is that Oracle somehow seeks to "preempt" *Rimini II*. This argument fundamentally misunderstands the relationship between the Injunction and the *Rimini II* litigation. Right now, Rimini is subject to a permanent Injunction that has not been stayed, and the law requires that Rimini comply with *every term* of the Injunction. While Rimini complains that there may be some overlap between the Injunction and the *Rimini II* matter, Rimini incorrectly argues that the way to address that potential overlap is to exempt any practices that are at issue in *Rimini II* from the scope of the Injunction. In making this argument, Rimini repeats the very arguments it unsuccessfully asserted in opposing the Injunction. The Injunction itself contains no such limitation; its terms are clear; and Rimini must comply with those terms. Further, Rimini's speculation that it might (at some point in the future) obtain some determination in *Rimini II* that could conflict with the Injunction's terms provides no basis for staying or

limiting the Injunction today. If, at a future time, Rimini believes it has obtained such a determination in *Rimini II*, it is free to move to modify the Injunction. Unless and until that transpires, Rimini is subject to the Injunction, and it cannot exempt itself from the Injunction by unilaterally filing a declaratory judgment action, asserting that it believes it is operating lawfully.

Rimini also misunderstands the meaning of "evidence" in contending that Oracle's Motion does not establish significant questions regarding Rimini's compliance with the Court's Injunction. Rimini's failure to unambiguously state that it is complying with the Injunction is, *by itself*, significant evidence that Rimini is *not* complying. Similarly, Rimini's heavily qualified "statement of compliance" would give Rimini wide latitude to violate the plain language of the Injunction, and is based on the same arguments and unsupported constructions of the Injunction and this Court's rulings that this Court and the Ninth Circuit have already rejected. Rimini's attempt to explain away its inconsistent statements regarding its compliance only amplifies those inconsistencies and reinforces the significant questions regarding Rimini's compliance. Rimini also ignores the Court's findings regarding Rimini's history of infringement and litigation misconduct, which further demonstrate the existence of significant questions regarding Rimini's compliance with the Injunction.

Finally, Rimini provides no basis to object to the specific discovery that Oracle proposes. Other than an attorney statement concerning the alleged burden of just one interrogatory, Rimini provides no evidence regarding the cost or burden involved in answering the discovery.

## II.     LEGAL STANDARD

Rimini improperly seeks to elevate the standard for discovery concerning injunction compliance far beyond what is actually required. Opp. at 12:4-17. The threshold for conducting discovery into compliance is low, and part of the Court's inherent power to enforce compliance of its orders. *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (threshold to justify discovery far less than that needed to show actual noncompliance); *Rutherford v. Baca*, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4, 2009) (movant need only provide sufficient information to raise significant questions regarding issued orders). In the absence of any opportunity to propound discovery into compliance, appropriate discovery should be granted so

long as significant questions regarding compliance have been raised. *Leavitt*, 523 F.3d at 1034.

Rimini cites *Pa. Mfrs' Ass'n Ins. Co. v. Riccelli Enters., Inc.*, 2015 WL 12582794, at *14 (N.D.N.Y. Dec. 9, 2015) for the proposition that a district court can deny a request to reopen discovery if it is based on speculation as to what potentially could be discovered. This decision, however, describes the standard for reopening discovery in the face of a pending motion for summary judgment where the party seeking discovery had ample opportunity to conduct the discovery it sought and repeatedly failed to convince the court that it had productively seized that opportunity. 2015 WL 12582794, at *14-*15. That is not the case here, where Oracle has had no opportunity at all to conduct discovery into Rimini's noncompliance with this Court's order.

### III.  ARGUMENT

#### A.  Local Rule 26-7 Does Not Apply to Oracle's Motion.

Rimini first opposes Oracle's Motion by couching it as a motion about specific discovery requests rather than a motion to *permit* discovery. From that erroneous premise, Rimini argues that Oracle had an obligation to meet and confer in person or telephonically with Rimini before filing its motion under Local Rule 26-7, in addition to the parties' exchange of letters plainly indicating a dispute. Opp. at 12:26-13:28. Oracle's motion is not a discovery motion to which the meet and confer requirement applies, and there are no disputed discovery requests about which to meet and confer.[1]

*McNamara v. Hallinan*, 2019 WL 918984 at *1 (D. Nev. Feb. 25, 2019) (cited by Rimini in its Opposition at 13:20-23), makes clear that Local Rule 26-7 supplements Federal Rule of Civil Procedure 37(a)(1), which requires that a party *bringing a motion to compel* certify that the movant has conferred or attempted to confer to resolve the dispute. FRCP 37(a)(1) states that "a party may move for an order compelling disclosure or discovery" and that such a motion must include a certification that the movant has conferred or attempted to confer "with the person or party failing to make disclosure or discovery." Oracle has not brought a motion to compel to force

---

[1] Rimini declined Oracle's requests that Rimini (1) provide information about its compliance, (2) stipulate to a modification of the *Rimini II* protective order, and (3) stipulate to permit discovery regarding Rimini's compliance with the *Rimini I* injunction. Polito Decl., Exs. _ - _. Rimini's refusal demonstrates that any further meet and confer would have proved futile.

3
REPLY ISO MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

Rimini to respond to particular existing discovery requests to which Rimini has refused to respond. Oracle's request to permit discovery therefore does not fall under FRCP 37(a)(1) nor the Local Rule 26-7 that supplements it.

Like FRCP 37(a)(1), Local Rule 26-7 clearly contemplates application exclusively to disputes about particular discovery requests. Local Rule 26-7(c) pertains to "discovery disputes" that "are referred to the magistrate judge assigned to the case" and requires that a movant "set[] forth the details and results of the meet-and-confer conference about each disputed discovery request." The present motion is distinct from motions to compel subject to Local Rule 26-7. Discovery in this case is presently closed. Thus, Oracle has moved generally to permit limited discovery regarding Rimini's compliance with the Court's permanent injunction. There is no pending discovery request over which to meet and confer. *See Poole v. Centennial Imps., Inc.*, 2013 WL 3832415 at *5 (D. Nev. July 23, 2013) (denying motion to compel for failure to meet and confer under Local Rule 26-7 but nevertheless reopening discovery). Motions related to discovery more broadly, rather than motions to compel responses to existing requests, are not subject to Local Rule 26-7. *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327 (D. Nev. 2016) (meet and confer not required before bringing motion for sanctions arising out of discovery dispute); *McCarty v. U.S. Bank Nat'l Ass'n*, 2018 WL 6705532 (D. Nev. Dec. 20, 2018) (same). Rimini cites no case applying Local Rule 26-7 to a motion to reopen discovery.

Further Rimini makes no claim that a telephonic or in-person meet and confer would be fruitful. In its meet-and-confer letters, Rimini has strongly opposed *any* discovery regarding compliance with the Injunction. Indeed, Rimini has opposed letting Oracle use the discovery materials from *Rimini II* to assess compliance, even though doing so would be costless to Rimini, as Oracle's counsel *already possesses those materials*. Rimini makes no claim that the parties' fundamental disagreement on compliance discovery might somehow be resolved if only counsel picked up the phone or sat in the same conference room. Rimini is simply stalling.

Rimini's request for fees and costs should likewise be denied, because Local Rule 26-7 does not apply. Moreover, even were Local Rule 26-7 applicable, failure to satisfy the

requirement to confer is not a basis to sanction a party seeking discovery; rather it is used as a basis for *denying requested fees* on a motion to compel where the required conference has not occurred. *McDaniel v. Shulkin*, 2018 WL 547222 at *4 (D. Nev. Jan. 24, 2018) (denying request for sanctions for failure to meet and confer); *Morrison v. Quest Diagnostics, Inc.*, 2016 WL 355120 at *3-4 (D. Nev. Jan. 27, 2016) (granting motion to compel but declining to consider sanctions for failure to provide adequate discovery responses due to failure to adequately meet and confer); *Corrales v. Castillo*, 2008 WL 11451256 at *1 (D. Nev. Feb. 12, 2008) (noting the Court was unable to impose sanctions because, due to failure to meet and confer, Court could not determine whether discovery positions were justified).

        **B.**      **Oracle's Motion Does Not Seek to Preempt *Rimini II*.**

Rimini's argument that Oracle improperly seeks to use the Injunction to "preempt" *Rimini II*, Opp. at 14-16, fails for several reasons. As an initial matter, Oracle's Motion only seeks discovery, and allowing discovery would not "preempt" anything.

Rimini's argument fundamentally misunderstands the relationship between the Injunction and *Rimini II*. Rimini is currently subject to the Injunction, which has not been stayed. Nor was the Injunction limited to exclude issues that are being addressed in *Rimini II*, even though Rimini unsuccessfully urged this Court to do so. Accordingly, Rimini's assertion that the Injunction cannot reach any conduct that is currently being adjudicated in *Rimini II* is either: (a) an improper motion to seek another stay (presumably until *Rimini II* is completed); or (b) an improper motion to reconsider Rimini's objections to the scope of the Injunction. As the Injunction is unstayed, Rimini must comply will *all of its terms*. See *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) ("persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."). If, in the future, Rimini obtains a ruling in *Rimini II* that it believes is inconsistent with the Injunction, Rimini is free to seek to modify the Injunction's terms. Unless and until that happens, however, the existence of *Rimini II* provides no basis for limiting the Injunction. Rimini's argument to the contrary would create a unilateral vehicle for enjoined parties to escape the terms of an injunction, as Rimini is arguing the Injunction's scope

5

is limited because Rimini chose to file a declaratory judgment action, stating that it thinks it is doing nothing wrong. A party that is subject to a permanent injunction cannot unilaterally limit the terms of that injunction.

After seeking to unilaterally limit the Injunction, Rimini incorrectly argues that Oracle's requested discovery would somehow, "stretch the injunction." In fact, Oracle's licenses were extensively litigated in this case at both summary judgment and at trial, and the Ninth Circuit has affirmed that those licenses impose restrictions both on where Oracle software can be copied to (limited to licensee's facilities) and how that software can be used (no cross-use). Mot. at 13, n.6, 14:8-17 & n.7. The terms of the Injunction are directly tied to the Court's *Rimini I* rulings regarding those unambiguous license terms, as explained at length in Oracle's briefing on its renewed motion for attorneys' fees. ECF Nos. 1117, 1139. The Court entered the Injunction based on that briefing, and both this Court and the Ninth Circuit have declined to stay the Injunction pending Rimini's appeal. ECF No. 1177; *Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF. No. 11 (9th Cir. Nov. 5, 2018). It is Rimini's obligation to comply with the Injunction, and, as discussed in Oracle's Motion and below, there are significant questions regarding Rimini's compliance with the Injunction. That is the beginning and the end of what is relevant for determining whether compliance-related discovery is warranted.

Rimini argues that Oracle is estopped from applying the *Rimini I* Injunction to any practices not specifically adjudicated in *Rimini I* (Opp. at 16:11-18). *Rimini I* was filed in January 2010, and fact discovery closed in 2011. In mid-2014, as the parties were preparing for trial, Rimini tried to bring into the case evidence of its "new" processes for the first time to support its argument that its "new" model presented a non-infringing alternative in the *Rimini I* timeframe. ECF No. 723 at 3:12-15. Oracle resisted—and the Court rejected—Rimini's attempt because Rimini's claim that its new processes were non-infringing was speculative, and Oracle did not have discovery into Rimini's "new" processes. ECF No. 648 at 4-6; ECF No. 723 at 3:7-21. Further, the reopening of discovery that Rimini sought likely would have substantially delayed the trial, as discovery into Rimini's original processes took almost two years. The Court properly

limited the evidence at trial to the discovery record,[2] and nowhere did Oracle state that its post-trial permanent injunction would in any way be limited to the discovery record in *Rimini I*.

Seeking to narrow the Court's Injunction, Rimini also wrongly conflates the scope of the adjudicated facts with the scope of the conduct prohibited by the Injunction, arguing that "it is undisputed that AFW is part of Process 2.0, and thus whether use of AFW constitutes 'cross-use' was never litigated in *Rimini I*." Opp. at 15:25-27. As discussed above, however, Rimini cannot exclude its alleged processes from the Injunction's terms simply by filing a declaratory judgment action. It is irrelevant whether AFW or Rimini's purported "Process 2.0" was litigated in *Rimini I*. Rather, the only inquiry for the purpose of Injunction compliance and compliance-related discovery is whether Rimini is, in fact, complying with the specific terms of the Injunction. If Rimini's AFW program or its "2.0 Process" are contrary to the Injunction's terms, then Rimini is out of compliance and faces possible contempt. To be sure, Rimini could have—and did—argue that the Injunction's scope should be limited to exclude matters currently being litigated in *Rimini II*, but this Court rejected that limitation. The simple reality is that Rimini must comply with the Injunction's terms.

Finally, Rimini reiterates its arguments by claiming that Oracle's request for discovery regarding Rimini's compliance with the Injunction is "improper because all of these issues are being actively litigated in *Rimini II*" (Opp. at 15:11), and the pending *Rimini II* summary judgment motions would be "rendered meaningless" (Opp. at 15:17-20). Once again, Rimini overlooks the simple reality that the issue of whether it is in compliance with the Injunction turns solely on the Injunction's own terms. If Rimini does something that is inconsistent with the Injunction's terms, it is out of compliance. In the event that Rimini were to prevail in its summary

---

[2] Rimini states that it "has introduced evidence of that fundamental change in *Rimini I* through declarations, and Oracle never submitted any contrary evidence." Opp. at 16:9-10. But as Rimini knows, Oracle has not had discovery into Rimini's "new" processes as part of *Rimini I*, and thus Oracle never had the ability to challenge Rimini's assertions in *Rimini I*. Oracle seeks that discovery with the instant motion, along with Oracle's concurrently filed motion to modify the *Rimini II* protective order. Hypocritically, Rimini opposes Oracle's motion to modify the *Rimini II* protective order to allow use of *Rimini II* evidence to show non-compliance while criticizing Oracle here for failing to present "contrary evidence" rebutting Rimini's claims of a "fundamental change" to its processes and therefore compliance.

1 judgment motions, which Oracle believes is extremely unlikely, then the summary judgment
2 motions would not be "rendered meaningless," but rather, would form a possible basis for a
3 motion to modify the Injunction.
4     Rimini also claims that "there is no reason to wade into another round of contentious
5 discovery when the Ninth Circuit will soon weigh in and potentially change the entire landscape."
6 Opp. at 16:22-23. In doing so, Rimini is simply seeking another stay pending appeal, even though
7 this Court and the Ninth Circuit have already denied Rimini's request for a stay pending appeal.
8 ECF No. 1177; *Oracle USA, Inc., et al. v. Rimini Street, Inc.*, No. 18-16554, ECF. No. 11 (9th
9 Cir. Nov. 5, 2018). "Absent a stay, 'all orders and judgments of courts must be complied with
10 promptly.'" *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)
11 (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)). And a district court has
12 continuing jurisdiction to enforce its injunction. *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir.
13 1994); *see also GTE*, 445 U.S. at 386.

14     **C.**    **Oracle Has Raised Significant Questions Regarding Rimini's Compliance.**

15     Rimini's assertion that "Oracle has failed meet its burden of showing *evidence* that raises
16 'significant questions' about Rimini's compliance with the injunction" (Opp. at 16:26-28) is
17 incorrect. The fact that Rimini has failed in four separate instances—including in its responses to
18 Oracle's letters and in its oppositions to the instant Motion and the motion filed in *Rimini II* to
19 modify the protective order—to definitively state that it is in compliance with the Injunction and
20 provide information about its compliance is evidence that raises significant questions regarding
21 Rimini's compliance. Fed. R. Evid. 401(a). Rimini's statements that it does not understand the
22 Injunction's terms and that it is complying with the Injunction only insofar as the Injunction is
23 consistent with Rimini's interpretation of the Court's judgment in this case also is evidence that
24 Rimini may not be in compliance. Likewise, the fact that Rimini has made repeated, inconsistent
25 statements regarding its compliance with the Injunction—only amplified by its attempted
26 explanation in its Opposition—is evidence that raises further significant questions. *Id.* And
27 Rimini's long-running habit and routine practice of litigation misconduct—acknowledged by this
28 Court in multiple Orders, and not some figment of Oracle's imagination—is evidence that raises

significant questions regarding Rimini's compliance. Fed. R. Evid. 406.

### 1.     Rimini Has Failed Yet Again to State Its Compliance.

Rimini wrongly claims that it unambiguously represented that it is in compliance when it asserted that it "believes that it is in compliance with the terms of the injunction insofar as the injunction is comprehensible and within the scope of the judgment in *Rimini I*." Opp. at 17:6-8; ECF No. 1201, Ex. 20 at 1. Rimini cannot claim that it is complying with the Injunction while simultaneously suggesting that the Injunction's terms might not be "comprehensible." Rimini's purported confusion about what the Injunction's terms mean is all the more troubling in light of Rimini's position that it does not understand what "cross-use" means, even though its own counsel provided a definition to the jury in 2015, and the Ninth Circuit provided a definition more than a year ago. Mot. at 14:10-17 & n.7. Rimini's caveated statement would give Rimini wide latitude to continue infringing to the extent that (1) Rimini claims the Injunction is incomprehensible—as Rimini has previously argued unsuccessfully and at length (Opp. at 18:17; ECF No. 906 at 2, ECF No. 1130 at 18-24), and (2) Rimini interprets "the scope of the judgment in *Rimini I*" to be limited to the precise facts litigated in *Rimini I* and not the actual scope of the Injunction—as Rimini argues in its Opposition (Opp. at 14:16-15:9).

Rimini also claims that Oracle's request in correspondence to Rimini for the most basic information about Rimini's compliance with the Injunction amounts to a request for discovery. Opp. at 17:13-17. In fact, Oracle's request was a simple request for information: Explain what, if anything, Rimini has done to comply with the Injunction. Polito Decl., Exs. 19, 21. Rimini did not provide this basic information, nor does it do so in its Opposition. Instead, Rimini replied with a transparent attempt to delay and obfuscate, asking for "the basis for Oracle's concern." Opp. at 17:19. In opposition to Oracle's motion in *Rimini II*, Rimini at the same time suggests that any further scrutiny will preclude Rimini from engaging in its Process 2.0 (*Rimini II*, ECF No. 1228 at 1) –suggesting Rimini continues to engage in the same Process 2.0 practices today despite the Court's Injunction.

The bottom line is that Rimini has repeatedly failed to give the Court or Oracle any unqualified, straightforward assurance that Rimini is in compliance with the Injunction, and

REPLY ISO MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION

1  Rimini has not provided a single shred of information about its compliance. This fact alone raises
2  significant questions regarding Rimini's compliance. *Leavitt*, 523 F.3d at 1034.

3          2.    *The Ninth Circuit Already Denied Rimini's Motion to Stay the Injunction.*

4      Rimini wrongly claims that "Oracle faults Rimini for 'challeng[ing] the legality of the
5  injunction.'" Opp. at 17:25. Rimini is free to challenge the Injunction, as it has. Further, Rimini
6  was free to seek a stay of the Injunction, and it did so and lost. Having failed to obtain a stay, the
7  Injunction is in full force while Rimini pursues its appeal. *GTE Sylvania*, 445 U.S. at 386. The
8  fact that Rimini made only a heavily qualified statement of compliance, with its qualifications
9  matching its challenges to the legality of the Injunction, raises significant questions as to whether
10 Rimini is in compliance.

11         3.    *Rimini's Opposition Only Amplifies Rimini's Inconsistent Statements.*

12     Rimini tries to explain away the long series of contradictory statements that Oracle laid
13 out in its Motion (Mot. at 9:20-11:1, 13:17-14:17) by apparently taking the position that it has not
14 made any change to its support practices because "Rimini already changed its processes to
15 comply with the Court's ruling in 2014." Opp. at 18:12-16 & 19, n.1. Yet, despite claiming that
16 Rimini has been in compliance with the Injunction since 2014, Rimini represented to the Court in
17 2016 and 2018 that the Injunction "would severely harm Rimini." ECF No. 1130 at 16; *see also*
18 ECF Nos. 905 at 2, 1168 at 20. In November 2018 Rimini also told its investors that the
19 Injunction would require changes to Rimini's processes, while also telling the public that the
20 Injunction does not limit or restrict Rimini's services. Further, Rimini told the Ninth Circuit that
21 the Injunction is too vague to comply with. Mot. at 14:5-13. Moreover, even though Rimini
22 claims it made changes to its processes since the Injunction went into effect, Rimini has
23 steadfastly refused to provide the Court or Oracle with *any* information regarding those changes.
24 These inconsistencies create significant questions regarding Rimini's compliance with the
25 Injunction, and they demonstrate the importance of the proposed discovery.

26         4.    *Rimini's History Indicates a Likelihood of Non-Compliance*

27     Rimini may be tired of hearing about its history of infringement and litigation misconduct
28 (Opp. at 10, 19), but Rimini ignores the fact that this Court, not just Oracle, has noted Rimini's

"significant litigation misconduct in this action" (ECF No. 1164 at 14:17-18) and found that Rimini's business "was built entirely on its infringement" (*id.* at 6). If a company that built its entire business on infringement and engaged in litigation misconduct to avoid the consequences of its infringement is faced with an injunction prohibiting further infringement, its history of infringement and litigation misconduct certainly raise substantial questions regarding its compliance.

### D. Oracle's Proposed Discovery Is Narrowly Tailored and Targeted.

Oracle's proposed discovery is narrowly tailored and targeted to determining whether Rimini is in compliance with the Injunction. *See* ECF No. 1201, Exs. 26 & 27. These document requests and interrogatories seek (1) information about changes Rimini made to its support processes as a result of the Injunction, and (2) information about how it provides support post-injunction, including details about the customers and Oracle software it supports. *See id.* These requests are limited to Rimini's processes after the Injunction went into effect or changes to the processes made in anticipation of the Injunction.

Rimini offers no explanation at all as to why this proposed discovery is disproportional or burdensome, except for Interrogatory No. 6, which seeks information about the fixes and updates for the Oracle software at issue that Rimini has provided to its customers since the Injunction went into effect. Opp. at 20. To assess whether Rimini has complied with the Injunction, Oracle needs to know what support Rimini has provided to its customers since the Injunction was entered. Interrogatory No. 6 simply asks Rimini to identify aspects of that support. Rimini offers no explanation for why collecting the requested information would be "monumental" in this instance, aside from an attorney assertion about the large number of updates it purportedly delivers, which does not necessarily correlate to the effort in collecting and producing those updates, particularly because such updates exist in electronic form. Opp. at 20. Nor does Rimini propose any alternative by which the Court and Oracle could assess Rimini's compliance.

Similarly, Rimini's cited case does not support its conclusory assertion that "[w]ere this discovery granted, the burden imposed on Rimini would be anything but limited." Opp. at 20 (emphasis omitted) (citing *Does v. Trump*, 328 F. Supp. 3d 1185, 1202 (W.D. Wash. 2018)). In

*Does*, the court *granted* plaintiffs' motion for discovery regarding four categories of information pertaining to the Injunction, including "[d]ocuments relating to actions taken by Defendants to comply," and only cautioned plaintiffs to "narrowly craft their requests" "within these four categories" after limiting discovery to issues of mootness. The court also explicitly declined to "foreclose th[e] possibility" of "additional discovery, such as depositions." *Id.* at 1202.

Oracle's Motion proposes a limited set of narrowly tailored discovery: fifteen document requests and fifteen interrogatories, potentially followed by a limited set of depositions and third-party discovery. Mot. at 15.[3] It has provided the first phase of this proposed discovery for the Court's review. Rimini's Opposition offers no counterproposal for what discovery it could provide regarding its compliance with the Injunction, and instead continues to question the validity of the Injunction itself. *See, e.g.*, Opp. at 3, 6-7, 14, 17.

## IV.  **CONCLUSION**

For the reasons discussed above, Oracle respectfully requests that the Court grant Oracle's motion to permit discovery.

DATED: March 20, 2019         MORGAN, LEWIS & BOCKIUS LLP

By: _____*/s/ John A. Polito*_____
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

---

[3] Oracle's requests are also consistent with those of other parties obtaining discovery relating to injunctions. *See, e.g., Blackberry Limited v. Typo Products LLC*, 2014 WL 4136586, *5 (N.D. Cal. Aug. 14, 2014) (ordering discovery regarding compliance with a preliminary injunction, in the form of three depositions, including a 30(b)(6) deposition, eight interrogatories, and an unspecified number of document requests); *Does v. Trump*, 328 F. Supp. 3d 1185, 1202 (W.D. Wash. 2018).

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of March, 2019, I electronically transmitted the foregoing **REPLY IN SUPPORT OF ORACLE'S MOTION TO PERMIT LIMITED DISCOVERY REGARDING RIMINI'S COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: March 20, 2019

By:  */s/ John A. Polito*
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation