1          UNITED STATES DISTRICT COURT
               DISTRICT OF NEVADA
2     BEFORE THE HONORABLE CAM FERENBACH, MAGISTRATE JUDGE
                    ---o0o---
3

4   ORACLE USA, INC., a           :
    Colorado corporation; et      :
5   al.,                          :
                                  : No. 2:10-cv-106-LRH-VCF
6           Plaintiffs,           :
                                  : April 4, 2019
7        -vs-                     :
                                  : Las Vegas, Nevada
8   RIMINI STREET, INC., a        :
    Nevada corporation; et al.,   :
9                                 :
            Defendants.           :
10  _____:

11

12              TRANSCRIPT OF MOTION HEARING

13

14  APPEARANCES:

15  FOR THE PLAINTIFFS:  RICHARD J. POCKER, KATHLEEN
                         HARTNETT, JOHN A. POLITO and
16                       ZACHARY HILL
                         Attorneys at Law
17
                         JAMES C. MAROULIS (Telephonically)
18                       Attorney at Law

19

20  FOR THE DEFENDANTS:  MARK A. PERRY, STEPHEN C. WHITTAKER
                         and W. WEST ALLEN
21                       Attorneys at Law

22

23  Transcribed by:      Margaret E. Griener, CCR #3, FCRR
                         Official Reporter
24                       400 South Virginia Street
                         Reno, Nevada 89501
25

1          LAS VEGAS, NEVADA, THURSDAY, APRIL 4, 2019, 1:01 P.M.

2                          ---o0o---

3

4                  THE CLERK:  This is the time set for a motion

5     hearing in the matter of Oracle USA, Incorporated, et al.,

6     versus Rimini Street, Incorporated, et al.  The case number is

7     2:10-cv-106-LRH-VCF.

8                  Beginning with plaintiff's counsel, please state

9     your name for the record.

10                 MR. POCKER:  Your Honor, on behalf of the Oracle

11    parties, I'm Richard Pocker, Boies, Schiller & Flexner.  With

12    me is my partner also from Boies Schiller, Kathleen Hartnett,

13    and two other counsel representing Oracle parties, John Polito

14    and Zachary Hill, both from the law firm of Morgan Lewis.

15                 THE COURT:  Great.  Thank you.  Welcome.

16                 MR. ALLEN:  And good morning, your Honor.  Good

17    afternoon now.  West Allen from Howard & Howard on behalf of

18    Rimini Street, and with me today are Mr. Mark Perry, Mr. Chris

19    Whittaker, who will present our argument, and also present in

20    the courtroom is Mr. Jack Riley, associate general counsel for

21    Rimini Street.

22                 THE COURT:  Welcome.  And on the phone?

23                      (Unintelligible.)

24                 THE COURT:  Boy, Mr. Maroulis, I think you're

25    going to only be able to listen.  We could not understand a

1    word you said.

2                    MR. MAROULIS:  That's fine.

3                    THE COURT:  Okay.  All right.  So first thing I

4    thought we'd take up is the motion to seal.  That's pretty

5    straightforward.

6                    And, as often happens, it seems more often than

7    not the party moving to seal did not designate the documents

8    as confidential, but it's moving to seal because the other

9    side marked them as confidential.

10                   And then, you know, Rimini didn't respond to the

11   motion so I don't have really anything in the record that I

12   could base a finding of good cause to keep things sealed, but

13   if Rimini wants to, you know, let me know why it should be

14   sealed, I'll hear from them.

15                   MR. PERRY:  We have no objection to being

16   public, your Honor.

17                   THE COURT:  Oh, okay.  Well, then, the motion to

18   seal is denied.  Okay.

19                   Okay.  The next thing I thought -- I did have a

20   question for Rimini.  You know, I know there was the

21   litigation -- a part of this case was brought -- you were

22   requesting a stay, all right, and so I see in the record here,

23   let's see, a senior vice-president, I believe, I'm quoting

24   from ECF 1168-4 at 2, it said,

25                   "The permanent injunction entered by the

4

1          Court on August 15, 2018, would require Rimini to

2          further modify its support processes for Oracle

3          products.  Rimini is examining its current

4          processes in good faith effort to ensure

5          compliance with the injunction notwithstanding

6          its vagueness and overbreadth, and has identified

7          a series of additional modifications that it

8          believes would bring current processes into

9          compliance with the constraints imposed by the

10          injunction."

11             It goes on to say,

12          "For example, certain processes that are now

13          automated can be done manually requiring Rimini

14          to pay additional labor costs to accomplish the

15          manual process."

16             And then the next paragraph 5, it says,

17             "I estimate it would cost Rimini at least a

18          million and up to $4 million per year to

19          implement these modifications.  These costs would

20          be incurred solely as part of Rimini's good faith

21          effort to ensure compliance with the injunction,

22          and Rimini would not incur these costs in the

23          absence of the injunction."

24             So the question is, obviously, there was no

25   stay, so is Rimini actually doing these things now?

 1                    MR. PERRY:  Yes, your Honor.  Mark Perry for

 2    Rimini Street.

 3                    We have undertaken in two phases, if you will --

 4    you know, there's the main changeover of systems in July and

 5    August of 2014 which we refer to as the difference between

 6    process 1.0 and process 2.0, and the Court has seen that in

 7    the papers.

 8                    THE COURT:  Sure.

 9                    MR. PERRY:  And we'll be talking more about that

10    later.

11                    THE COURT:  And when was that?  I'm sorry.

12                    MR. PERRY:  July of 2014.

13                    THE COURT:  Okay.

14                    MR. PERRY:  After the summary judgment ruling,

15    before the trial.

16                    THE COURT:  Okay.

17                    MR. PERRY:  So that was a multimillion dollar

18    reworking of the practices to eliminate at that time the two

19    features of which Oracle was complaining, what has been called

20    local hosting and cross-use, generic cross-use in the papers.

21                    THE COURT:  Right.

22                    MR. PERRY:  Fast forward, if you will, to

23    November of 2018, and I don't want to -- I hope we can come

24    back at some point and talk about what happened in

25    between those two dates.

1          THE COURT:  Oh, sure, if we need to, yeah, but I

2     try to get the high points in.

3          MR. PERRY:  When the injunction was entered and

4     the stay was denied, we sought a stay first from the district

5     court and then the Ninth Circuit, Rimini went back through the

6     processes in process 2.0 that may be implicated by the

7     practices in case I, that is, local hosting and cross-use.

8          There was the insurance, if you will, that the

9     environments, the development and testing environments were

10    taken -- were off and stayed off of Rimini's systems and

11    weren't set on client systems that was the local hosting piece

12    that we have some compliance costs entailed in making sure

13    that happened.

14          And then on the -- on the development of updates

15    and so forth, the generic cross-use had been addressed at

16    process -- the changeover from process 1.0 to 2.0.

17          Out of an abundance of caution, and, frankly, in

18    light of the ambiguities in the injunction, Rimini, in 2018 to

19    present, has taken on additional manual operations, in other

20    words, to avoid automated systems that may be accused by

21    Oracle as being a so-called cross-use so that there are

22    updates for one client finished, the engineer then turns to

23    the second client and goes back to the white paper and -- you

24    know, the whiteboard and starts over from scratch.

25          The declaration that the Court refers to

1   estimated at the time that would be one to $4 million

2   essentially in labor costs, right --

3                    THE COURT:  Sure.

4                    MR. PERRY:  -- of duplication of efforts that --

5   to no end for either Rimini or the client, and, of course, to

6   no benefit to Oracle, but to ensure the --

7                    THE COURT:  Protecting their property interest,

8   I guess, right?  That's what the lawsuit's about?

9                    MR. PERRY:  Well, we'll see about that.

10                   THE COURT:  I mean, where we stand right now,

11  right?  Anyway.  That's all I can look at is where we stand

12  right now.

13                   MR. PERRY:  Absolutely, your Honor.

14                   So our understanding is that that -- you know,

15  that process has been undertaken.  That process was also

16  ongoing, of course.

17                   The company remains committed to compliance with

18  the injunction as far as -- again, our position, to be very

19  clear, and I think we have been very clear, is the injunction

20  goes to Rimini I, right, what was adjudicated in Rimini I --

21                   THE COURT:  Right.

22                   MR. PERRY:  -- has been addressed.

23                   THE COURT:  Yeah, but you see I guess maybe

24  there's a place for ambiguity here, at least I can get a

25  little confused because there's Rimini Roman numeral I and

1    Rimini Roman numeral II which I think is what you were saying,

2    but then there's the, you know, version 1.0 and 2.0, and

3    that's completely different concepts, right?

4              So it is possible, isn't it, that part of the

5    injunction Rimini I could impact what it is you're doing under

6    2.0?

7              MR. PERRY:  Not really, your Honor, not as far

8    as local hosting and generic cross-use goes.

9              Local hosting -- we've moved to a remote testing

10   environment, and, of course, Oracle has had years of discovery

11   on all of this, millions and millions of pages and so forth,

12   so that the local hosting issue and the generic cross-use that

13   was the issue in Rimini I.

14             Now, the Court is correct in this sense, there

15   were -- there was a -- there was what we called the gap

16   period.  There was a period of a limited number of time and

17   customers between the discovery cutoff in Rimini I and the

18   judgment in Rimini I -- or, excuse me, the changeover to

19   process 2.0 that would be addressed -- we have addressed that

20   in Rimini -- that's part of Rimini -- the Rimini II case.

21             But the injunction -- you know, our

22   compliance -- Rimini's compliance with the injunction covers

23   those customers well, and, again, as of July or August of

24   2014, we think that the changeover to 2.0 had been complete

25   whether or not the customers were included.

 1                    THE COURT:  Okay.  So let me ask a question.

 2    Who's going to argue over on this side?  Mr. Pocker.  Okay.

 3                    Well, I just -- this is a question, you don't

 4    need to make a whole argument, but let's assume for the sake

 5    of discussion that what -- gosh -- Mr. Perry just said --

 6    sorry, too many names -- what Mr. Perry just said is true, you

 7    know, but I can understand that, you know, Oracle wants to

 8    verify somewhat that what he said is true.  But if it's true

 9    what he said, would that be compliance with the injunction,

10    just assuming it's true?

11                    MR. POCKER:  Would it be compliance with the

12    injunction?  In our estimation, no, and then, again, that's

13    with the caveat that we don't know specifically what they've

14    been doing since November to now.

15                    I mean, a lot of the arguments are about changes

16    made in 2014, that type of thing.  We're entitled -- we have a

17    valid injunction in force.

18                    THE COURT:  Right.

19                    MR. POCKER:  And we need to know what that

20    process is now.

21                    Now, there's a --

22                    THE COURT:  Okay, I didn't ask you what you --

23    I'm just trying to take this --

24                         (Simultaneous indecipherable
                             conversation.)
25                    THE COURT:  Okay.

1           MR. POCKER:  Okay.  It doesn't solve the

2   problem, your Honor.  There is additional information we would

3   need.  And I think your original question, assuming this is

4   true, that's a mighty big assumption in light of the history

5   of this case.

6           THE COURT:  Okay.  That's fine.

7           I'm not -- I'm not asking you to admit it's

8   true.  I'm just trying to say if Mr. Perry got up there and

9   said, you know, "We've got 2.0 running, there's no local

10  hosting, there's no cross-use, we were using manual systems,

11  we're spending millions of dollars to make sure none of this

12  is going on," if that's true, I'm not saying you have to

13  believe him, would that be compliance with the injunction, or

14  what else could they -- do they need to be doing?

15          MR. POCKER:  Here's the problem.  They have

16  defined -- well, they have a creative interpretation of what

17  Rimini I was about, what the Ninth Circuit held, and what the

18  injunction in Rimini I means.

19          THE COURT:  Right.

20          MR. POCKER:  And, as a result, there are --

21  you've seen the injunction, it's multi-pages.

22          THE COURT:  Right, I've got a copy.

23          MR. POCKER:  It doesn't focus on particular

24  mechanisms by which the infringement occurred.  It addresses

25  processes and this notion of cross-use.

```
 1                    And you'll see this in Rimini's papers, they
 2      define cross-use or feign confusion about what it means, and
 3      it's clearly at odds with what the Court, the Ninth Circuit
 4      and Oracle is saying.  So I --
 5                    THE COURT:  Hold on, hold on.  Let me just say
 6      this.
 7                    I mean, cross-use -- he said cross-use means,
 8      you know, we can't use an automated system.  When we have a
 9      new client, we have to start over at step one and recreate the
10      whole process that we're doing for each client.
11                    Now, is that a sufficient definition of
12      cross-use, or is it -- you define it as something else?
13                    MR. POCKER:  They're not -- they are not
14      permitted under the Court's and Ninth Circuit's definition of
15      cross-use, as we've quoted in our pleadings, to use the
16      license and the work done under a license for one client for
17      the -- use it for --
18                    THE COURT:  Other clients.
19                    MR. POCKER:  -- other clients.
20                    THE COURT:  He just said, "We're not doing
21      that."  That's what he said just now in court.  As an officer
22      of the court, he told me, "We're not doing that.  Each client
23      we're taking over, you know, we're starting with a
24      whiteboard," I think he said.
25                    Now, I'm not saying you have to accept it as
```

1   true, I'm just saying, if it were true, would it be

2   compliance.

3               MR. POCKER:  That question can't be definitively

4   answered because of other practices in association with the

5   way Rimini 2.0 version is implemented that we believe violate

6   the copyright.

7               They seem -- backing up a minute here, they want

8   you to start with the premise that the changes in 2014, Rimini

9   2.0, somehow solved all the infringement problems that

10  ultimately led to the injunction in Rimini I.  That's not --

11              THE COURT:  Well, wait a minute.

12              MR. POCKER:  -- true.

13              THE COURT:  I think he was saying that was the

14  start of it, and then after -- in November, then, you know,

15  when they were trying to get the stay and they lost, then they

16  did a whole lot of other things.  That's what they're saying

17  they did.

18              Now, I know you don't trust them, but I don't

19  think he said to me, "What we did in '14 amounts to compliance

20  with the injunction."

21              Is that what you're saying?

22              MR. POCKER:  He was saying that.  If he's not,

23  then, that's a sea change in Rimini Street's position here.

24              THE COURT:  Well, let's find out.

25              Mr. Perry, I mean, what I heard was you said it

1    started in '14, and you did these things, but then once the

2    stay was denied, you've taken on all this other extra work,

3    right?

4                    MR. PERRY:  That's what I said.

5                    You have to take in it two steps, your Honor.

6                    THE COURT:  Right.

7                    MR. PERRY:  2014 was the changeover from what's

8    essentially a local system to a remote system.

9                    So local -- well, let's take these in two

10   pieces, right?

11                   Local hosting, solved in 2014 because we took

12   all the development and production environments off the Rimini

13   servers and moved them either to the cloud or to client

14   servers.  So the one half of the case, if you will, that's

15   done in 2014.

16                   THE COURT:  Okay.  Let's hold on.

17                   You dispute that.

18                   MR. POCKER:  I do, your Honor.

19                   THE COURT:  Okay.  Let's find out.

20                   MR. POCKER:  If --

21                   THE COURT:  Hold on.  Go ahead.

22                   MR. POCKER:  All right.  I'll give the

23   explanation.

24                   THE COURT:  Sure.

25                   MR. POCKER:  What Rimini I decided is that under

1    the licenses interpreted by the Court, and the consequences of

2    jury trial is that under the license agreements the software

3    has to be housed on the customer's facilities.

4                    THE COURT:  So cloud is not good enough?  Is

5    that your point.

6                    MR. POCKER:  And my point is that that was the

7    violation, one of the infringement violations in Rimini I.

8                    Rimini Street -- it's a little sleight of hand

9    here.  Now, they've said, "Well, it's not on our systems any

10   more."

11                   THE COURT:  Right.

12                   MR. POCKER:  Compliance with the injunction and

13   compliance with the rulings in Rimini I would require that it

14   be on facilities, the facilities of the customer.

15                   THE COURT:  Customer.  Okay.  I got that.

16                   Do you agree with that?

17                   MR. PERRY:  No, your Honor.

18                   THE COURT:  Okay.

19                   MR. PERRY:  Mr. Pocker just highlighted, I

20   think, the reason that this is not a discovery motion at all.

21   That is one of the merits disputes in Rimini II, the second

22   lawsuit --

23                   THE COURT:  Right.

24                   MR. PERRY:  -- that's pending on summary

25   judgment, whether a cloud server is the client's facility or

1    not within the meaning of the license.  That was not decided

2    in Rimini I.  The cloud wasn't even an issue in Rimini I.

3    It's not part of the judgment, it didn't go to the Ninth

4    Circuit.

5              We understand Oracle now takes the position that

6    the environments being off Rimini servers or being on the

7    cloud is not the client's facilities.

8              THE COURT:  Right.

9              MR. PERRY:  That's pending before Judge Hicks on

10   a motion for summary judgment, but it's not in the first case,

11   it's in the second case.

12             THE COURT:  Right.

13             MR. PERRY:  And we can't be held in contempt in

14   the first case for doing something that has never been

15   adjudicated, and that dispute -- and we're supposed to

16   cross-use, too.

17             When Mr. Pocker stood up and said that he

18   disagreed with what I just said --

19             THE COURT:  The whiteboard, yeah.

20             MR. PERRY:  -- they take the position that if

21   the engineer with the whiteboard has any knowledge in his

22   head --

23             THE COURT:  Yeah.

24             MR. PERRY:  -- that that constitutes cross-use.

25             THE COURT:  Right.

1            MR. PERRY:  Well, in addition to being crazy,

2    your Honor, that is, again, a proposition that's at issue in

3    the summary judgment motions in Rimini II.

4            In other words, the new definition of cross-use

5    that Oracle came up with, the second case, it hasn't been

6    decided by any judge yet.

7            The cloud got half decided by Judge Hoffman, who

8    is here today, in a discovery dispute --

9            THE COURT:  No, he's here because he's getting

10   Rimini II, and we realize --

11           MR. PERRY:  We understand, that's another

12   motion.

13           THE COURT:  Okay.

14           MR. PERRY:  And, you know, to jump to the bottom

15   line of the Rimini position here, we understand the

16   injunction, we're very much attempting to comply with it.  We

17   believe we are in compliance with it.

18           This motion is an effort to reopen discovery in

19   either case, or in both cases, to litigate the second case,

20   not the first case.

21           What Mr. Pocker just said he disagreed with me

22   on both local hosting and cross-use is not because of anything

23   decided by Judge Hicks or the Ninth Circuit in this case, it's

24   because of disputes that Oracle has raised in the second case.

25           We're happy to have those decided.  They're

1   pending -- there are seven motions for summary judgment fully

2   briefed sitting somewhere in this courthouse.

3                   THE COURT:  They're probably up in Reno.

4                   MR. PERRY:  Or in Reno, with thousands and

5   thousands of pages of exhibits.

6                   THE COURT:  Right.

7                   MR. PERRY:  And our concern -- you know, this is

8   a discovery dispute, your Honor, but it's a discovery dispute

9   predicate to a contempt proceeding, and the premise of

10  Oracle's submission is that Rimini can be held in contempt,

11  for example, for hosting documents on the cloud or

12  environments on the cloud, and cloud computing has never been

13  adjudicated in this case, and that will be adjudicated, but

14  it's not a contempt proceeding, and therefore it's not a

15  discovery dispute, and that's our position in a nutshell

16  (unintelligible).

17                  THE COURT:  I think this has been real helpful.

18                  Why don't you sit down.  I'm going to kind of go

19  into a different area, Mr. Pocker, and then we'll -- this will

20  all sort of be prelude, and I'll let you guys --

21                  MR. POCKER:  Your Honor, can I have one --

22                  THE COURT:  Go ahead, sure.

23                  MR. POCKER:  I just want to highlight.

24  Mr. Perry says none of this -- none of our positions were

25  resolved in the first Rimini case, and the very injunction for

1  which we --

2          THE COURT:  Hold on.  Let me -- hold up here.

3  What page are you on there?

4          MR. POCKER:  This is the injunction.  It would

5  be page 2 of 4.  This is --

6          THE COURT:  He's got a five-page injunction,

7  permanent injunction against defendant Rimini Street and Seth

8  Ravin.  It's docket 1065.  Is that the right one or --

9          MR. POCKER:  This is 1166, the injunction that's

10  currently in effect and filed on August 15th.

11          THE COURT:  Sorry, I pulled the wrong

12  injunction.  Let me just -- I can pull it up on the computer.

13          Does this injunction you're quoting override the

14  one that I'm looking at?

15          MR. POCKER:  Yeah, the one was entered back in

16  2016, and that was the one that was vacated by the Ninth

17  Circuit, and now we're back at the 2018 version.

18          THE COURT:  Okay.  I had -- someone gave me the

19  wrong injunction.  So what number is that?

20          MR. POCKER:  I'm looking at page 2 of this

21  injunction, and it's broken down, it's --

22          THE COURT:  1166.

23          MR. POCKER:  -- strictures about product

24  category, PeopleSoft --

25          THE COURT:  PeopleSoft, I'm there.

1              MR. POCKER:  Paragraph 5,

2                  "Rimini Street shall not reproduce, prepare

3           derivative works from, or use PeopleSoft software or

4           documentation on, with, or to any computer systems

5           other than a specific licensee's own computer systems."

6              THE COURT:  Right.

7              MR. POCKER:  Now, that's an enforceable portion

8  of the injunction which is different than Mr. Perry's

9  interpretation of the fix that Rimini Street has done.

10              He's acknowledged there's cloud hosting and all

11  the rest.

12              THE COURT:  Right.  Well, then, let me ask you

13  this, Mr. Pocker.

14              MR. POCKER:  Sure.

15              THE COURT:  If they've admitted in open court

16  that they're using the cloud server to do what they're doing,

17  and you say this is a violation of paragraph 4, why do you

18  need more discovery to go against -- go against them?  I mean,

19  they've said that's what they're doing.

20              MR. POCKER:  Well, I'm not so sure they've said

21  that.

22              THE COURT:  Well, I'll ask Mr. Perry again.  Are

23  you using the cloud server?  I mean, that's what you're doing.

24  That's what you're litigating in Rimini II, right?

25              MR. PERRY:  For certain clients, your Honor,

1    yes.

2                    And, again, Oracle has had three years of

3    discovery, including 850 depositions or document subpoenas to

4    our clients.  They know exactly who is on --

5                    THE COURT:  And that's in Rimini II.

6                    MR. PERRY:  Yes, sir.

7                    THE COURT:  So you already got that discovery in

8    Rimini II.

9                    MR. POCKER:  Well, that's the problem, your

10   Honor, because we also sought to amend and modify the

11   protective order in Rimini II so we could use all that in

12   Rimini I, and Rimini -- and Oracle -- while Rimini refuses to

13   consent to that.  We've had to file a motion to do that.  It's

14   in front of Judge Hoffman now.

15                   So, if anything, what this shows is any

16   representation made needs verification.  I don't want to quote

17   Ronald Reagan, but trust but verify.

18                   THE COURT:  I know, that's where I was trying to

19   go with this.  You see, I'm hoping we could come up with some

20   sampling technique or something that you could verify what you

21   need to verify.

22                   But, you know, we're a little ways from even --

23   but here's the problem for me now.  Suppose I were to say,

24   okay, you've already done the discovery in Rimini II, so

25   rather than redoing discovery here and spending all that time

```
 1    and money and effort, just go ahead and use the discovery you

 2    got in Rimini II in your injunction enforcement things here.

 3                    MR. POCKER:  There's only one problem with

 4    that --

 5                    THE COURT:  What's that?

 6                    MR. POCKER:  -- your Honor.  The injunction was

 7    entered in November of 2018.  Discovery in Rimini II closed in

 8    January 2018.  If you'll notice, our motion is narrowly

 9    tailored --

10                    THE COURT:  Right.

11                    MR. POCKER:  -- to target that period.

12                    Now we're going to address the other discovery

13    we could use to make our case in Rimini I with the motion for

14    protective -- modified protective order.

15                    So that's where we're -- we're not asking for

16    very much, and nothing said here in court today, when you pair

17    it up with the representations that you began the hearing

18    quoting from --

19                    THE COURT:  Right.

20                    MR. POCKER:  -- give us any comfort that without

21    seeing the actual evidence of how do they operate this

22    business post November 2018 that they're in compliance with

23    the injunction, and the difference between --

24                    THE COURT:  Let me ask a question.  So the

25    discovery in Rimini II did not include the time period after
```

1    November of '18?

2                 MR. POCKER:  No, no.  Rimini II -- we finished

3    up the discovery last January something, and then --

4                 THE COURT:  So the relevance -- so, yeah, the

5    relevant discovery has to be for the time period after --

6    anything they did before November '18 could not have been in

7    violation of the injunction.

8                 MR. POCKER:  It would not have been in violation

9    of the injunction.  And I know Rimini's position is that some

10   of what they did solved all of your problems.  That's

11   debatable, and we disagree with that.

12                THE COURT:  Yeah, they said that it would be the

13   impact after November '18.

14                MR. POCKER:  Sure.  At this point they could be

15   dealing the Rimini 3.0 for all we know, and yet, instead of

16   just saying when we had the correspondence with them, yep,

17   we're all in compliance with the injunction, then maybe I

18   could see the Court saying, oh, I'm not sure we need to go

19   further.

20                But when we look at the kind of response they

21   gave us, which was essentially, "Well, you know, to the extent

22   we understand it, to the extent that it tracks Rimini I" --

23                THE COURT:  Well, they're stuck between a rock

24   and a hard place because they're challenging the injunction

25   saying it's vague, so if they say definitively we're

1    complying, they've given up their position that it's vague.

2                    MR. POCKER:  Well, and nobody is saying you

3    can't continue your appeal to the Ninth Circuit or anything

4    else, but, in the meantime, an injunction was imposed, and

5    we're entitled to test compliance with it.

6                    We've met the standard from the appropriate

7    cases that we've cited, and it doesn't take much, it doesn't

8    take a smoking gun.  It does take a little bit of suspicion.

9    It can be done by circumstantial evidence, which we've done,

10   four different things about Rimini's conduct and statements

11   that gives us pause, and the answer to a question might be,

12   well, if you changed everything and you're so diligent or

13   whatever, why not say so or show us?

14                    THE COURT:  Right.

15                    MR. POCKER:  We get a red herring here with

16   Rimini II and Rimini I.  Rimini I is an adjudicated case.  We

17   have a judgment, we have a -- it's been upheld on appeal.  We

18   have an injunction, and although it's being challenged, it's

19   still the law of the land.

20                    Rimini II was this after-the-fact declaratory

21   relief action to get a blessing on a process that as of today

22   we're told isn't even really the process that Rimini Street is

23   using still.  They say they've changed it yet again.

24                    There's just so much uncertainty here, your

25   Honor.

1           And, again, it's a motion to open discovery.

2    We're not here to rule on the cloud or any of that other

3    nonsense.

4           THE COURT:  Right.

5           MR. POCKER:  And every one of these arguments

6    about, oh, you're preempting Rimini II, we are trying to do

7    this, we are trying to do that, they were made before Judge

8    Hicks, they were made before the Ninth Circuit, and they've

9    been rejected time and again.

10          So what we want now is what we're entitled to

11   which is to test and verify these latest pronouncements here

12   today that somehow additional changes have been made.

13          And as I've pointed out with the language in the

14   injunction, there's areas where nothing that Mr. Perry has

15   described today negates the infringement that is still ongoing

16   according to the very terms in the injunction, and we're

17   entitled to explore that.

18          If it winds up being a contempt proceeding, it

19   winds up being a contempt proceeding.  Who knows what

20   discovery will show.

21          THE COURT:  Well, okay, let me hear one last

22   word from Mr. Perry, and I think we'll start trying to go

23   through these discovery requests and see if we can find a

24   pattern or a reasonable way to do it.

25          MR. PERRY:  Two quick points, your Honor.

1          First, the current injunction is identical in

2   substance to the 2016 injunction, okay?

3          Oracle has had full discovery from the beginning

4   of 2015 to the beginning of 2018.  They know everything about

5   our systems, operations, practices, customers, clients.

6          THE COURT:  I understand.  But, I mean, you

7   know, if anything, in this field things change rapidly, right?

8   And so the injunction -- if they're going to prove you in

9   contempt, they have to show you did things after November '18.

10          MR. PERRY:  Absolutely, your Honor.  But to open

11   discovery they have to come forward with some evidence of

12   noncompliance, and they have all that discovery from the

13   two-year period, and they don't have a single thing that they

14   can bring to the Court and say, "Here, from all this discovery

15   we've already done we have found evidence, therefore we need

16   to see if you're still doing it."

17          THE COURT:  Well, but, I mean, what about this,

18   I mean, you know, paragraph -- paragraph 5 on page 2 of the

19   injunction, docket 1166, as Mr. Pocker pointed out says,

20          "Rimini Street shall not reproduce, prepare

21       derivative works from, or use PeopleSoft software or

22       documentation on with or to any computer system other

23       than the specific licensee's own computer system."

24          You've told me here in court you're doing it on

25   the cloud.

 1                      MR. PERRY:  And here's the most important point,

 2     your Honor.  Can I hand out -- would you mind if I handed out

 3     a document?

 4                      THE COURT:  Has the other side seen it?

 5                      MR. PERRY:  I'll give it to them.  They are all

 6     documents in the record, I just put them on a slide for you.

 7     Would you rather --

 8                      THE COURT:  No, no, that's okay.  I've got to

 9     figure out what to do here.

10                      You can give one to --

11                      MR. PERRY:  Mr. Pocker just said that we,

12     Rimini, have made these arguments --

13                      THE COURT:  Is it Rimini?

14                      MR. PERRY:  Rimini.

15                      THE COURT:  Oh, I've been pronouncing it wrong.

16     Rimini.

17                      MR. PERRY:  Everybody pronounces it differently,

18     your Honor.

19                      THE COURT:  Rimini.  Okay.

20                      MR. PERRY:  Mr. Pocker just said that Rimini has

21     made these arguments to the district court and the Ninth

22     Circuit and had them rejected.  They say that in their reply

23     brief, and that's the first slide I put in this little packet

24     is, is Oracle's current position that this argument has been

25     rejected by the district court.

1            Your Honor, they don't provide a citation for

2    that because it's false.  The truth is 180 degrees opposite of

3    that, and I'm happy to walk through all of this, but I know

4    time is short.  I'll just jump to the bottom line.

5            Slide 6, Judge Hicks ruled excepting -- I'm

6    sorry, in the bottom right corner, it's called Judge Hicks

7    Adopts Oracle's Representations.

8            THE COURT:  Oh, I see, down here under two

9    fifteen -- which page are you on?

10            MR. PERRY:  It's slide 6.

11            THE COURT:  Slide 6.  Mine says Ruling on Second

12    Injunction Motion?  Maybe they're numbered --

13            MR. PERRY:  Yes, Ruling on Second Injunction

14    Motion.

15            THE COURT:  Okay.  It's in the bottom corner,

16    okay.

17            MR. PERRY:  There are four factors, as the Court

18    is well aware, to grant an injunction one of which is the

19    balance of hardships.

20            Rimini made the point that the balance of

21    hardships tipped in our favor because Oracle was trying to

22    prejudge the second case in the first case through the

23    injunction.

24            Oracle insisted -- and I've quoted on the

25    previous slides on the precise places where Oracle said over

1    and over again that the injunction is limited to the things

2    adjudicated in the first case, and Judge Hicks, as a necessary

3    predicate to the injunction, ruled that Oracle seeks to enjoin

4    only acts that have already been determined to be unlawful.

5              That is an order of the Court on which the

6    injunction is based.  That order is what Oracle is trying to

7    undo today.

8              When Mr. Pocker provides an interpretation of

9    paragraph 5 on page 2 of the injunction, it goes clearly

10   beyond what was adjudicated in the first case.  It's a change

11   in Oracle's position, they're estopped from making it.  It's

12   wrong for reasons we've explained in the second case.

13             THE COURT:  Well, are you saying that in Oracle

14   I -- or Rimini I Oracle took the position that it was okay to

15   use the cloud?

16             MR. PERRY:  No, your Honor, the cloud was not at

17   issue.  What was at issue in Rimini I was environments on

18   Rimini's own servers.

19             THE COURT:  Own servers.  Okay.

20             MR. PERRY:  Right.  The question in Rimini II is

21   whether the cloud constitutes the client's facilities.

22             THE COURT:  Okay.  But the -- okay.  You say the

23   issue was what's going on on Rimini's own server.  Mr. Pocker

24   is going to say the issue was what's going on on the

25   customer's server.

1                    MR. PERRY:  Right, your Honor.  And it all comes

2      back to the license which Rimini -- this actually isn't a

3      copyright violation, it's not copyright infringement to host

4      something on a server, okay?  This is a license dispute.

5                    THE COURT:  Right.

6                    MR. PERRY:  And ask yourself why do we have an

7      injunction against a breach of contract.  There's another

8      oddity here, right, that we've got, that's a question before

9      the Ninth Circuit as well.

10                    But the license actually says facilities, right?

11     And Judge Hicks interpreted that to mean the customer's

12     facilities, the facilities of which the customer -- and then

13     the Ninth Circuit said in a footnote in its opinion that means

14     that the customer has to have actual or constructive control

15     over those facilities.

16                    THE COURT:  All right.

17                    MR. PERRY:  So our position --

18                    THE COURT:  The cloud, they have constructive

19     control.

20                    MR. PERRY:  With the cloud they have

21     constructive control because they're paying for it, and, as I

22     said, Judge Hoffman agreed with a version of that as part of a

23     discovery dispute.

24                    The important point for today, though, is Oracle

25     cannot come to the Court, we submit, and say that because we

1    are hosting on the cloud -- they don't even need any

2    discovery.  They know all that.  They have the contracts, they

3    have the relationships --

4                    THE COURT:  But they don't know since November

5    of '18.

6                    MR. PERRY:  Well, your Honor, if they really

7    think that's a violation, they could have moved for contempt

8    based on the evidence that they have, and, again, this is not

9    a disputed point.

10                   THE COURT:  But that's the point.  They want to

11   do discovery on what's been going on since the injunction was

12   entered in November of '18.  Why shouldn't they be allowed to

13   do that?

14                   MR. PERRY:  Because, your Honor, it's -- because

15   they can't get to where they need to go.

16                   Again, it is the -- discovery to what end?  If

17   they think that is a contemptuous act, in other words, an act

18   so clearly in violation of the injunction that a contempt

19   proceeding is warranted, then they should just bring a

20   contempt proceeding and we'll deal with that.

21                   A contempt proceeding will result in a

22   determination and an appeal.  We shouldn't have to spend

23   millions and millions of dollars on discovery.

24                   This discovery is extraordinarily expensive,

25   your Honor.  The parties collectively have spent tens of

 1    millions of dollars.  This last round, you know, involved

 2    hundreds and thousands and millions of papers, documents,

 3    witnesses, and so forth, and what they're asking for here is,

 4    is again to test a proposition that is not actually in

 5    dispute.

 6                 If cloud hosting is in contempt, let's tee that

 7    up and decide it as a contempt motion.  Why do we need

 8    discovery?

 9                 THE COURT:  Okay.  So it sounds to me like maybe

10    you're proposing you sit down with Mr. Pocker and see if you

11    can get a stipulated set of facts that you believe the facts

12    would not support contempt and he believes the facts would

13    support contempt.

14                 MR. PERRY:  Your Honor, we have offered to sit

15    down with Mr. Pocker multiple times.  They don't want to do

16    that.

17                 THE COURT:  Well, maybe I can order them to do

18    that.

19                 MR. PERRY:  I understand.  We --

20                 THE COURT:  Let me see what Mr. Pocker thinks

21    about that.

22                 MR. PERRY:  Yes, your Honor.

23                 THE COURT:  I mean, at least shouldn't we give

24    it a shot here before we spend millions of dollars to do

25    discovery?  If you can get an agreed set of facts, like, you

1   know, you've got to file a joint pretrial order, you agree to

2   the facts.

3            I mean, they apparently agree they're using the

4   cloud, you know, that's something you want to prove up, you

5   say that's in contempt of the order, right?

6            From November 2018 to the present Rimini has

7   been using the cloud to service his customers not limiting

8   itself solely to the customer's equipment.  I think they'd

9   stipulate to that fact.

10           MR. POCKER:  It's way beyond that, your Honor.

11           THE COURT:  Well, what other facts do you need?

12           MR. POCKER:  And, as a result, I don't know how

13   to quite address that.  We'll just spend millions of dollars

14   plus hundreds of thousands more if we go through that process.

15   There is no way that we are going to agree on a stipulated set

16   of facts regarding what Rimini Street is up to.  That's why we

17   want to do discovery.

18           THE COURT:  Well, you are done -- but do you

19   need everything they're up to or do you just need enough to

20   hold them in contempt?

21           MR. POCKER:  I mean, they're kind of the same --

22           THE COURT:  No, not really.  I've tried lots of

23   cases.  You get enough evidence to prove your case, you don't

24   have to keep going on and on and on getting evidence in if you

25   want Judge Hicks to find they're in contempt.

1                    MR. POCKER:  Well, but that's the whole point,

2      your Honor.  This is getting way super-complicated.  All it

3      really requires is for them -- and we've raised this with

4      Mr. Perry.  We're asking for what happened after

5      November 2018.

6                    We asked them if they were in compliance.  We

7      get a runaround.  We get information that clearly

8      demonstrates they don't want to answer that question.

9                    Unless we have the discovery mechanism to

10     actually seek the proof of what's going on there for five

11     months, only five months, and it's not burdensome, they've

12     been through this before.

13                   Specifically they raise a problem in their

14     opposition with request number 6.  "We do all these patches

15     and tax updates and all this stuff, it's a huge amount."

16     Well, that's the heart of the case, too, with respect to this

17     whole issue of cross-use.

18                   THE COURT:  All right.

19                   MR. POCKER:  So -- I --

20                   THE COURT:  Okay.  Well, let's see.  I may have

21     to -- you know, I like to rule on these from the bench, but I

22     may not be able to in this case.  Go ahead and --

23                   MR. POCKER:  And I don't mean to -- you know,

24     any frustration you're hearing is with the adversary, not with

25     the Court's proposal.  I just think it would not be a

 1    productive way to go.

 2                    THE COURT:  Yeah.

 3                    MR. POCKER:  It's -- what we need here is very

 4    straightforward.  We don't need to litigate now what happens

 5    in Rimini II versus Rimini I, and we've let fly or slide by a

 6    few representations that you really -- rather than go back and

 7    forth on a lot of them, if you have concerns about what

 8    representations were made on behalf of Oracle in September

 9    2015, we would invite the Court to go back and look at the

10    context of that as well.

11                    We have never said everything has to be decided

12    in Rimini II with respect to some of these issues that are

13    coming up.

14                    The context of all this, and you'll see this

15    from the docket, there was a motion to -- Rimini wanted to

16    bring in all the 2.0 changes in the first case.  This is after

17    discovery was over, they wanted to bring it all in and say

18    this is proof of a noninfringing alternative.  The parties

19    debated that.

20                    The judge said -- Judge Leen said no, we're too

21    far down this road, we're not reopening discovery.  That's an

22    entirely different context as to, oh, we're parceling, you

23    know, what gets tried here and what gets tried there.

24                    And likewise with the discussion about

25    consolidating the cases, as the Court knows, cases are

1    consolidated or not consolidated for all kinds of reasons, and

2    it does not definitively define the scope of the issues in

3    either case, that there's millions of instances where cases

4    are not consolidated.  The first case reaches some pretty

5    conclusive determinations either by the jury or the judge, and

6    they have an impact in a second case.

7                    THE COURT:  Sure.

8                    MR. POCKER:  And this keeps getting dredged up

9    here.  He just keeps wanting to argue that the injunction is

10   flawed.  We're here with -- we have an injunction.  He has a

11   remedy.  We want to enforce the injunction.

12                   And if this Court doesn't allow us to go that

13   way, we're stuck with a situation where they get a de facto

14   stay, they go through another six months, a year, year and a

15   half, who knows, before the Ninth Circuit decides.

16                   And three entities are harmed.  You've got the

17   Court because its injunction is just being flaunted,

18   potentially flaunted by the behavior until we find out what

19   they're up to.

20                   Second of all, you've got Oracle.  The

21   infringement continues, the same stuff that we've been

22   litigating for now nine years.  I signed the complaint in this

23   in 2010.  I think I'm the only one left from the original

24   lawyers in this case.

25                   And then, thirdly, the customers, because a part

1    of this -- and I know the Court is not down into the weeds on

2    this, but part of it is all this infringing material.  If

3    Rimini is infringing and pumping it out there to all the

4    Oracle customers, they're putting them at risk as well, or

5    they're going to have to call it back or destroy it at some

6    point potentially, depending on how the second case or the

7    remedy that the Court finds if it finds contempt on the first

8    injunction.

9                   So it's just --

10                  THE COURT:  I don't like the -- you know, to be

11   an agent for delay so why don't we go through some of these

12   requests for production first, and then the interrogatories,

13   and let me see if I can understand how they impact everything

14   we've talked about.

15                  So request for production number one says,

16                  "All documents concerning any changes to

17         Rimini's support processes for Oracle software and

18         support materials that Rimini planned in anticipation

19         of possible entry of the injunction or made in

20         response to the injunction."

21                  Well, I mean, "planned in anticipation of

22   possible entry," that makes no sense, right?  Because you say

23   you're limiting this to the time period after the injunction

24   was entered, right?  Why would that be relevant to what you're

25   trying to find out?

1           MR. POCKER:  Well, it is relevant as to whether

2    they think they're in compliance or not or what would be

3    necessary to place them in compliance.

4           So, yes, I think it is.  If they're looking at

5    the proposed injunction and they're saying, "Oh, we better do

6    A, B and C because otherwise we're not going to be in

7    compliance," that's certainly relevant to their state of mind

8    and their intention with a lot of this as well as relevant to

9    whether or not they think they're in compliance at the present

10   time.

11           THE COURT:  Well, I'm -- I think -- let me see

12   what Mr. Perry has to say.

13           What would be the burden of producing the

14   documents that would -- concerning changes that Rimini made to

15   the process, et cetera, made in response to the injunction, so

16   documents showing what you did in response to the injunction,

17   what would that involve?

18           MR. PERRY:  You mean, after the --

19           THE COURT:  Yeah, after November '18.

20           MR. PERRY:  You know, other than there's going

21   to be a privilege problem, obviously, because the lawyers are

22   involved.

23           THE COURT:  Right.

24           MR. PERRY:  We can deal with that in the

25   ordinary course.  That particular request is not in itself the

—38—

```
 1    greatest.  However, you know, it's part of a larger question

 2    which is, you know, Oracle is looking for what we did and then

 3    tell us why we did it wrong rather than tell us what we should

 4    do.

 5              But that one, as the Court has just limited it,

 6    is not the straw that would break the camel's back.

 7              THE COURT:  Yeah, I think you should be able --

 8    but you need to produce documents.  It's not an interrogatory,

 9    it's a request for production of documents.

10              MR. PERRY:  Your Honor, and as I stand here, I

11    don't know that such documents exist.  But, you know, we'd

12    have to go look for them, and that's expensive, and we

13    would -- you know, all of these things have burdens.

14              THE COURT:  Let's look at the next one then.

15    Let's see.

16              "Identify all persons involved -- documents

17          sufficient to identify all persons involved --

18          documents sufficient to identify all persons involved

19          with any changes to Rimini's support process" --

20              Okay.  Well, that's (inaudible), "or made in

21    response...including name, title, responsibility" -- okay.

22              Mr. Pocker, why do you need all that?  I don't

23    understand why you would need that.

24              MR. POCKER:  Well, your Honor, I anticipate that

25    if, in fact, we determine that what we see and receive from
```

1    them indicates a violation of the injunction --

2                    THE COURT:  Right.

3                    MR. POCKER:  -- that I don't see Rimini Street

4    saying, "Oh, yeah, you're right."

5                    We're going to have to present evidence and

6    prove the case, and this is the standard type of discovery

7    that would be in association with, okay, who decided to change

8    the system, who are the people with the most knowledge, and

9    those would be the people who might have to testify or,

10   depending on what discovery the Court allows, give a

11   deposition at some point.

12                    THE COURT:  Okay.  Well, you know, so maybe -- I

13   think what I would like to do is try and do this at least in

14   some stages.  Why don't we hold that one for later.  If

15   actually you do this first discovery and you find something

16   that you think deserves to go deeper, then we can talk about

17   it.

18                    Okay.  "A copy of Rimini's" -- now, I can say

19   these because these were blacked out on these, but the motion

20   to seal has been denied, so it would be,

21                    "A copy of Rimini's AWF database" or "AFW

22            database, AFW source code, and the new AFW FTP

23            folders related to...since November 5th."

24                    Okay.  That seems pretty well defined and

25   reasonable.  What's the problem with that one, Mr. Perry?

1          MR. PERRY:  Your Honor, the AFW database is a

2   massive dataset -- it's terabytes and terabytes, okay?

3          It is -- and here is an example of -- AFW didn't

4   even exist at the time of the judgment in Rimini I.  This is

5   part of process 2.0.

6          So this is -- literally to say that this would

7   lead to discoverable evidence about contempt -- how could we

8   be in contempt for doing practices, you know, that didn't

9   exist?

10         THE COURT:  Well, because if those new practices

11  actually violate the terms of the injunction, it's not a

12  defense to say these are new practices.

13         MR. PERRY:  Your Honor, we do think it is a

14  defense to say that for the precise reason that the Court

15  limited the injunction to the things that were adjudicated in

16  the first case.  I mean, that's part of the order that --

17         THE COURT:  All right.  Let me look at this

18  here.

19         MR. PERRY:  You know, if we're going to revisit

20  that, then the whole injunction is going to have to be

21  modified.

22         THE COURT:  Because Judge Hicks said, "Because

23  Oracle seeks to enjoin only acts that have been already

24  determined to be unlawful."

25         So -- okay.  So you're saying AFW database, AFW

```
 1    source code, and AFW FTP folders didn't even exist.
 2                  MR. PERRY:  Right.
 3                  THE COURT:  So the Court couldn't have
 4    determined -- but the problem is -- at least to my mind, and,
 5    you know, correct me if I'm wrong, the AFW database, source
 6    code, and these folders are not acts, they're evidence.
 7                  MR. PERRY:  No, your Honor.  They are practices,
 8    they are the replacement for the so-called generic cross-use
 9    that was at issue in the first case.
10                  They are squarely -- and there's a summary
11    judgment motion dealing with AFW in the second case.  This is
12    why Oracle is really trying to use this contempt proceeding to
13    litigate the second case, you know, without a jury which we're
14    entitled to, and --
15                  THE COURT:  Right.
16                  MR. PERRY:  -- without all the protections that
17    we're entitled to.
18                  THE COURT:  Well, hopefully Judge Hicks would
19    not let that happen.  I'm just doing the discovery.
20                  But, okay, I can understand why a source code
21    might be a process, I guess, I'm not a computer engineer, but
22    how can a database be a process?  A database is a bunch of
23    data, right?
24                  MR. PERRY:  Yeah, it's a huge dataset.
25                  And, again, your Honor, Oracle has the AFW
```

1    database or has had access to the AFW database for 2015 to

2    2018.  If they think anything in there is in violation of the

3    injunction, let them bring a contempt proceeding.  Again,

4    we --

5                   THE COURT:  There couldn't be a contempt

6    proceeding until -- it has to be used after the injunction.

7                   MR. PERRY:  Then ask us if there's been any

8    change from the evidence they already have.

9                   Again, we're being asked to embark after the

10   close of discovery in the second case, after the end of the

11   judgment in the first case pending appeal --

12                  THE COURT:  I understand that.  We're past that.

13   I'm going to order some discovery.

14                  So I think what I'm going to do here is, to the

15   extent the AFW database has changed since the last production

16   of that database, which I think must have been shortly before

17   the -- no, let's just say it this way.

18                  To the extent the AFW database has changed after

19   the date of the injunction that was entered in this case on

20   August 15th, is that right?  August 15th, 2018, those need to

21   be produced, the AFW database that's related to Rimini's

22   support of Oracle software and support material since

23   November 5th, 2018.

24                  But I'm not going to order the source code or

25   the FTP folders.  If you find something in the database that

1  you can demonstrate to me -- because I don't even understand

2  what it is right now.

3           MR. POCKER:  Your Honor, this request is the

4  same as one that was made in the course of Rimini II, and this

5  is very easily complied with.  The burdensomeness is --

6           THE COURT:  I'm not doing burdensomeness, I'm

7  doing scope so we'll just do the database for now and -- okay.

8           The next one is read-only access credentials to

9  all online resources used by Rimini.

10          What is that, read-only access credentials?  Is

11  this like metadata, keeping track of who got in and did

12  things?  Is that what it is?

13          MR. PERRY:  You're asking me, your Honor?

14          THE COURT:  Anybody.  I don't know what it is.

15          MR. POCKER:  Well, I can offer this.  DevTrack

16  and SharePoint are two of the mechanisms at Rimini Street

17  that --

18          THE COURT:  SharePoint I'm familiar with.

19          MR. POCKER:  Right.

20          And then monitor the activity that is in

21  question here is, that is, how is Rimini Street servicing its

22  Oracle software clients so --

23          THE COURT:  But -- you're trying to figure out

24  going in and doing stuff, you want to get the --

25          MR. POCKER:  Sure, sure.

1          THE COURT:  We can do that --

2          MR. POCKER:  I'm sorry.

3          THE COURT:  We can do that during the second

4   part.

5          Okay.  "All documents Rimini provided to its

6   customers" -- why do you need number 5, tax and regulatory

7   updates?

8          MR. POCKER:  Why would we need that?

9          THE COURT:  Yeah.

10         MR. POCKER:  Is that the question?

11         THE COURT:  Yeah.

12         MR. POCKER:  That's communications with the

13  customers about the tax updates and all the rest of that.

14         THE COURT:  How does that to do with the

15  injunction?  What does that have to do with the injunction?

16         MR. POCKER:  Well, the injunction prohibits the

17  dissemination and distribution of infringing materials.  This

18  is associated with that.

19         THE COURT:  All right.  I think it's too remote

20  so I'm not going to order that.

21         "All programs including software tools" --

22         MR. POCKER:  And the other thing that it -- if

23  we may revisit that.

24         THE COURT:  Yeah, sure.

25         MR. POCKER:  The other thing that it helps us

45

1   with is the notion of cross-use.  If two customers receive the

2   same files, that's evidence of attempts to cross-use.  So

3   that's where that, in conjunction with request number 6, is

4   relevant to this.

5               THE COURT:  They receive the same files?

6               MR. POCKER:  Oh, yeah.  That's exactly what

7   cross-use is, is that if you develop it for, you know, Union

8   Oil, and then you wind up using that same product, send it to

9   Texaco, that's cross-use --

10              THE COURT:  But there will be --

11              MR. POCKER:  -- under the injunction.

12              THE COURT:  But there will be -- and this is

13  where you're getting into the thing that you're saying even if

14  they started with the whiteboard and created the same file,

15  although they didn't just copy it over somehow --

16              MR. POCKER:  We'd be able to tell from --

17              THE COURT:  Yeah, the metadata.

18              MR. POCKER:  -- from this type of evidence as to

19  whether all the data is sending the same stuff to all the

20  different customers, and, you know, the details and what's in

21  a whiteboard and what's in somebody's brain, that's irrelevant

22  to what we're looking for here.

23              THE COURT:  You want to see the -- sort of the

24  fingerprints in the file.

25              MR. POCKER:  Sure.  And --

 1                    THE COURT:  Okay.  Here's what I'm going to do

 2    on that.  You're going to have to get together with Mr. Perry

 3    on this one, and I -- you say it's difficult, but you're both

 4    professionals here.

 5                    I would consider some type of sampling on this.

 6    I'm not going to make -- you know, produce every, you know,

 7    document that's been sent to a customer having to do with

 8    this, but if you could come up with some kind of random way to

 9    sample it, you know, get a certain percentage of them, and you

10    can look at them and see if there's a pattern, I guess, that's

11    legitimate, but not make you do the whole thing so --

12                    MR. POCKER:  Well --

13                    THE COURT:  -- that's granted conditionally on

14    some type of sampling agreement.

15                    MR. POCKER:  And ultimately we may be seeking

16    all of them.  That's the meat of the violation.

17                    THE COURT:  Well, see what you get in the

18    sample.

19                    MR. POCKER:  Your Honor, the other point with

20    respect to all of these, and this is just for the Court's

21    convenience, on that very same page of the injunction,

22    paragraph 6 talks about the restrictions on Rimini Street with

23    respect to this cross-use notion.  That may be helpful in

24    analyzing whether or not you think these requests are relevant

25    to a potential violation of the injunction.

1              THE COURT:  Okay.  Well, like I say, why don't

2   you do some sampling, we'll see what shows up on that one.

3              Okay.  "Policies or memoranda that Rimini wrote

4   or developed in response to the injunction."

5              Okay.  Well, and they said, I think, there would

6   be an attorney-client privilege concern about this, right, to

7   the extent someone is advising a client how to abide by an

8   injunction?  You wouldn't -- couldn't order them to produce

9   that, right?

10             MR. POCKER:  Well, to the extent that it's a

11  privileged document, I'm sure there will be a privilege log

12  and potentially litigation with respect to that.

13             But also remember that the injunction required

14  certain notices to be sent to the employees of Rimini Street,

15  that's invoiced within here, and that's -- did they do it,

16  let's see what it is, let's see what they've told them.

17             THE COURT:  I think that's appropriate, and, you

18  know, they can do a privilege log to the extent it's required.

19  So that one will be ordered.

20             What does that mean to "show the location of

21  each Oracle software environment"?

22             MR. POCKER:  Well, that's --

23             THE COURT:  That's the customers?

24             MR. POCKER:  Well, it's the environment in which

25  these changes to the Oracle software, Oracle software

```
 1    modifications are made.  Some of them may be on customer's

 2    location, some may be at Rimini Street, some may be in a

 3    cloud, some may be on WinStream.

 4              And, again, the very injunction that we're

 5    seeking to enforce restricts whether those environments can

 6    exist, and without this information we don't have the corpus

 7    to decide where all this stuff is and whether there's a

 8    violation of the terms of the injunction.

 9              They've provided this information before in the

10    other case.  It's not like it's a new revelation to them, and

11    especially given the fact that now we're entitled to update

12    their scenario on how they're doing business since November of

13    2018.

14              THE COURT:  Well, let's hear from Mr. Perry.

15    What do you have to say on number 8, Mr. Perry?

16              MR. PERRY:  Your Honor, I think 5 and 8 go a

17    little bit together, if you will.  Five was all the

18    communications with our customers, and 8 is where they are.

19              THE COURT:  Right.

20              MR. PERRY:  And between those two, that's

21    everything in the company, that's our entire business.

22              THE COURT:  It seems like it.

23              MR. PERRY:  Okay.  Because what we do is provide

24    updates and fixes and so forth for our clients.

25              THE COURT:  Yeah.  I'm not going to order that
```

1    now.

2                        And then the one about in answering

3    interrogatories, that's wrong, too.

4                        You know, what we're going to do on those is I'm

5    going to ask Aary (phonetic) to send you guys an audio file of

6    my discussion of what we just did here, and that will be the

7    ruling on those requests for production.

8                        Okay.  Let's go to the interrogatories.  Let's

9    see --

10                       MR. POCKER:  Your Honor, since there is this

11   objection to providing copies of all the fixes because that's

12   the business they do, perhaps an accommodation might be to

13   order them to produce a list of all those fixes that they've

14   done, fixes and updates they've done since November 2018.

15                       THE COURT:  So that would be an interrogatory.

16   Did you ask that interrogatory?

17                       MR. POCKER:  Haven't yet.

18                       THE COURT:  Okay.  Maybe you can ask that

19   interrogatory.  Maybe that's something you can do and we can

20   talk about it later.

21                       MR. POCKER:  Well, if we're permitted discovery,

22   we can do that.

23                       THE COURT:  Okay.  Well, you can pose that

24   interrogatory, and we'll see what they say.

25                       Okay.  That will be part of the ruling on that

1    production.

2                    Okay.  Number one, "State whether Rimini made

3    any changes to its support processes."  What do you mean by

4    support processes?

5                    MR. POCKER:  Which one are you asking about,

6    Judge?

7                    THE COURT:  Interrogatory 1 says whether Rimini

8    made any changes to its support processes.  What do you mean

9    by sport processes?

10                   MR. POCKER:  Support processes, what they do,

11   their business is they've got clients that license our

12   software.

13                   THE COURT:  Right.

14                   MR. POCKER:  You can get your support from

15   Oracle, you get support from them.  The process by which they

16   support them, that is, provide them with updates, fixes,

17   whatever work they need done on that, it's kind of the meat of

18   their business.

19                   THE COURT:  Right.  So it's really basically all

20   they've done in their business.  And there's no time limit on

21   this one.

22                   MR. POCKER:  Well, it is actually.  We asked

23   whether they have made any changes to the support processes in

24   response to the injunction, so that would be after November

25   2018.

1           THE COURT:  Or in anticipation of the

2    injunction.

3           MR. POCKER:  Possible entry of the injunction

4    which also, you know, goes back to when we filed the motion

5    for the injunction, and I believe it was the spring of 2018,

6    March 2018, so it's time bound and --

7           THE COURT:  And they're saying that, you know,

8    the changes they made when they went to 2.0 -- I mean, their

9    position is that when we went to 2.0, you know, that dealt

10   with a lot of the issues in the case, whether they did it in

11   anticipation of the injunction or not.

12           I don't know, it seems like it's -- this is like

13   give us all the evidence that's at issue in Rimini II.

14           MR. POCKER:  Well, you're certainly free to

15   limit it in scope of time, but it -- clearly it's in

16   anticipation of this injunction.  We proposed this injunction

17   first in 2016, the second time in 2018, but it's a factual

18   question as to, okay, what changes did you make.

19           THE COURT:  You know, these are awfully broad.

20           You know what, I am going to deny the -- is this

21   here on a motion to compel or protective order?  I can't

22   remember.  We're here on motion to compel?  It's your

23   commotion to compel, right?  Or are we here on a protective

24   order?

25           MR. POCKER:  I'm sorry, motion to compel, your

1    Honor.

2                    THE COURT:  Is it a motion to compel these

3    interrogatories or motion for protective order?  It's leave to

4    take the discovery --

5                    MR. POCKER:  Leave to take.

6                    THE COURT:  Leave to take the discovery.

7                    MR. POCKER:  Yeah.  We're just here to start the

8    process, your Honor.  Obviously this whole back and forth

9    about is this one okay, is that one okay, is down the road.

10                   THE COURT:  Right.

11                   MR. POCKER:  What we want to do is start this

12   process.  We have these exemplaries basically that say this is

13   a snapshot of what we would do if you let us do discovery.

14                   THE COURT:  Right.

15                   MR. POCKER:  And I've been corrected by my

16   cocounsel, the time limitation is in the interrogatories, it's

17   in the paragraph right before they're set forth, a time period

18   beginning August 14th, 2018, which is the date the Court

19   originally entered the injunction prior to all the stay back

20   and forth.

21                   THE COURT:  So it's in the definition section

22   you say?  Is what you're saying?

23                   MR. POCKER:  Yeah, so it's the very --

24   instructions, it's paragraph 5 --

25                   THE COURT:  Yeah, okay.

```
 1                    MR. POCKER:  -- in the instructions on page --
 2                    THE COURT:  Okay.  Okay.  Yeah, I should have
 3     gone back -- I don't have that page in front of me.
 4                    Here's what I think we'll do.  I'm going to
 5     allow you to do some discovery, allow you to do the stuff I
 6     said today you could do.
 7                    We'll hold off on the interrogatories except you
 8     can ask that one interrogatory about what was the people or
 9     the -- I can't remember, what was the interrogatory -- I
10     said -- you said you wanted him to prepare a list, and I said
11     it needed to be an interrogatory.
12                    MR. POCKER:  Okay.
13                    THE COURT:  Do you remember what --
14                    MR. POCKER:  Your Honor, since that -- all
15     right.  So the only interrogatory that, you know, is
16     countenanced at this time is interrogatory number 1; is that
17     correct?
18                    THE COURT:  No, no, it was a request for
19     production, I'm sorry.  I got --
20                    MR. PERRY:  Your Honor, Mr. Pocker asked whether
21     they could inquire as to a list of the fixes or updates
22     provided since November '18.  The Court said you would
23     entertain an interrogatory to that effect.
24                    THE COURT:  Right.
25                    MR. PERRY:  You know, more broadly, we're doing
```

1    all this in real time.  I mean, this is -- we had made a meet

2    and confer objection here for a real reason.

3                    THE COURT:  Sure.

4                    MR. PERRY:  If the Court's ruling is that some

5    discovery will be allowed, we disagree with it, but we accept

6    it, then we ought to get together and sort this out, right?

7    And we haven't had any of these conversations about scope,

8    timing --

9                    THE COURT:  Okay.

10                   MR. PERRY:  -- what's available, what's not

11   available.

12                   And while we would be more than happy to deal

13   with the Court, I'm not sure it's the best time -- use of

14   anybody's time as opposed to trying to hash out a system and

15   coming back with any disagreements.

16                   Because we understand the Court's ruling, right,

17   if I could restate it, just make sure I understand it, Oracle

18   is going to be permitted some limited discovery into

19   essentially injunction compliance after November 18th --

20   November 2018 when the injunction went into effect in the

21   general area described in the proposed discovery, but the

22   details, why don't counsel sort them out to see what's even

23   available, what's burdensome and what's not, and come back to

24   the Court if we have any disputes.

25                   And that would be the normal way, we would

1    submit, to do that having secured the Court's clarification,

2    but some discovery, again, we disagree but we got it, is going

3    to be permitted because -- well --

4                    THE COURT:  Yeah, I appreciate that offer.  Are

5    you good with that, Mr. Pocker?

6                    MR. POCKER:  Here's what I would anticipate

7    happening.  You've granted us leave to do discovery.  You've

8    blessed a couple of those requests but not all of them that

9    are in the --

10                   THE COURT:  Right.

11                   MR. POCKER:  -- requests --

12                   THE COURT:  Right.

13                   MR. POCKER:  If you grant us permission to do

14   discovery, we will then serve discovery requests, and then the

15   meet and confer will have to happen, and we'll have to go

16   through all of that.

17                   I noted before there was a lot of discussion

18   about how Oracle already knows all this stuff from Rimini II

19   that can be used in this -- the problem is when you know that

20   in Rimini II.

21                   So is Rimini at this point willing to stipulate

22   that we can use everything in Rimini II, the protective order

23   that can be modified and we use it in Rimini I?  That would

24   short circuit an awful lot of this.

25                   THE COURT:  Right, but it still won't get you

1    things after November of 2018.

2              MR. POCKER:  No, but it will certainly address a

3    lot of the concerns we have.

4              So, I don't know, if -- since they seem to think

5    we know all this and that's why we shouldn't be able to do

6    this in Rimini I, are they willing to stipulate that we can

7    use all that in Rimini I?

8              THE COURT:  Okay.  Here's what I'm going to do.

9    I guess to the extent I'm going to grant the motion to -- for

10   Oracle to take some limited discovery, I think in our

11   discussion of the different requests and whatnot, you can

12   see -- I think you should try to structure it in a way that,

13   you know, you get the lay of the land without trying to get

14   all the discovery you would possibly need in order to have a

15   contempt hearing, just, you know, do some scouting.

16             I would recommend you use some surveying

17   sampling type process, if you can come up with that.  I think

18   that would be really useful.

19             There may still be some facts you could

20   stipulate to, like the use of the cloud.  I can't imagine you

21   couldn't stipulate to that fact, everyone has said it here

22   multiple times, work something up like that.

23             If you file a report back to the Court on what's

24   happening in maybe, what, 30 days, would that be enough time?

25             MR. POCKER:  Well, your Honor, if, in fact, we

| | |
|---|---|
| 1 | craft discovery -- if we're now granted permission to perform |
| 2 | discovery, then that would take the normal course, we would |
| 3 | serve requests for production and interrogatories. |
| 4 | THE COURT:  Well, we would need a discovery plan |
| 5 | and scheduling, then, I guess, right?  How much time you're |
| 6 | going to do it, how many interrogatories, how many requests |
| 7 | for production.  Maybe you can work out something like that |
| 8 | and have me approve that so at least I know what's going on, |
| 9 | and -- |
| 10 | MR. POCKER:  Okay.  If that's the order of the |
| 11 | Court, then that's how we'll proceed. |
| 12 | THE COURT:  No, I'm just -- you know, I like to |
| 13 | work with counsel.  You can see it's very difficult for me if |
| 14 | you want me to say answer this, don't answer that, ask this or |
| 15 | that.  You know, you know your cases much better than I do. |
| 16 | You run a big risk of me going off one way or another on it. |
| 17 | So I would recommend you come up with a good |
| 18 | plan, and, you know, the simplest thing would be just give me |
| 19 | a discovery plan and scheduling order, you're going to take |
| 20 | discovery for this much time, and then motion for contempt, if |
| 21 | there is one, will be due at this time, and something like |
| 22 | that, that's fine. |
| 23 | You can stipulate to some facts, that would be |
| 24 | helpful, too, save a lot of time and money. |
| 25 | All right?  So -- so forget about -- go ahead. |

1              MR. PERRY:  I'm sorry, your Honor, one

2   housekeeping matter.

3              On the motion to seal, I'm told there may be an

4   exhibit or two that may be an issue or may not be an issue.

5   May we have, with the Court's permission, a day to confer on

6   our side and with Mr. Pocker?  I may have spoken too rashly in

7   saying I had no issue with the motion to seal.

8              THE COURT:  Okay.  Well, yes, let's just be

9   clear.  Okay.  We'll talk about the motion to seal first, and

10  then we'll go back and try to wrap up what's happening on the

11  other motion.

12              MR. PERRY:  Thank you.

13              THE COURT:  I don't know if -- I'm trying to

14  find -- it's a motion to seal what they filed which was --

15  were things that -- if I remember right, Rimini filed it,

16  there were things that Oracle defined as confidential.

17              There's nothing in the record for me to find

18  good cause.  I have to make a finding -- you know, just

19  because the parties agree to keep something sealed, I have to

20  look out for the public's interest.  I have to say there's

21  good cause.

22              So, let's see.  What number is the sealed -- it

23  would probably be better to take care of it now if I can.

24              MR. PERRY:  Your Honor, I believe it is Oracle

25  filed the motion to seal Rimini stuff that's been declared

1    confidential.

2                    THE COURT:  I had it backwards?  Okay.

3                    MR. PERRY:  And we think we're okay with that.

4    We would just like to go make sure -- to get it exactly right.

5                    MR. POCKER:  These things sometimes seem

6    counterintuitive to us, but we're only saying it's sealed

7    because they say it should be.

8                    THE COURT:  Right.

9                    MR. POCKER:  And then normally they would then

10   file some sort of response to our motion saying that's done

11   right, here's why.

12                   THE COURT:  Right.  That's why it has to be

13   sealed, right.

14                   So there's 13 exhibits that were filed under

15   seal, and you're not prepared today to tell me why they need

16   to be --

17                   MR. PERRY:  Your Honor, what I said today was we

18   didn't file a response on purpose.  My colleagues tell me we

19   just want -- if we could just have 24 hours just to make darn

20   sure, because once the cat's out of the bag, it's out of the

21   bag.

22                   THE COURT:  No, I understand.

23                   MR. PERRY:  But I don't think I have an issue.

24                   THE COURT:  You see that puts me in a problem

25   because I have to make a finding that there's good cause.

1              So here's what I'm going to do.  If the parties

2    agree -- I assume you can agree on this, that there's good

3    cause to seal something, or at least you don't oppose the

4    sealing of it, file a joint something that tells me why

5    there's good cause to seal this.

6              MR. PERRY:  Thank you, your Honor.

7              THE COURT:  And I'll look at it, and if I think

8    there's good cause, I'll seal it, okay?

9              MR. PERRY:  Okay.

10             THE COURT:  So that is going to be under

11   submission pending the supplement.

12             Then on the discovery motion, I am going to

13   permit discovery.  I've given some guidance what I think about

14   the proposed sample discovery.  I hope the parties take that

15   into consideration, get together, come up with a plan, give me

16   a discovery plan and scheduling order that includes a

17   discovery cutoff date and then a date for filing a contempt

18   motion, and if you don't file a contempt motion by -- you

19   know, that's a deadline so they don't have to keep worrying

20   about it.

21             Thirty days to get that in to me?

22             MR. PERRY:  I think that should be fine.

23             THE COURT:  What date would that be, Aaron?

24             I wish I had a better handle on it, but all this

25   computer stuff, you know, is a little -- a little daunting.

1                    MR. POCKER:  Welcome to our world, your Honor.

2                    THE CLERK:  That would be Monday, May 6th, your

3    Honor.

4                    THE COURT:  Monday, May 6th.  Okay.  Get that in

5    by then, then you can do some discovery, and if you need

6    something else, just file a motion.

7                    MR. POCKER:  Thank you, your Honor.

8                    MR. PERRY:  Thank you.

9                    THE COURT:  Thank you.

10                             -oOo-

11

12           I certify that the foregoing is a correct
             transcript from the record of proceedings
13           in the above-entitled matter.

14           /s/Margaret E. Griener          4/13/2019
             Margaret E. Griener, CCR #3, FCRR
15           Official Reporter

16

17

18

19

20

21

22

23

24

25

1

**'**

**'14** [2] - 12:19, 13:1
**'18** [8] - 22:1, 22:6, 22:13, 25:9, 30:5, 30:12, 37:19, 53:22

**/**

**/s/Margaret** [1] - 61:14

**1**

**1** [2] - 50:7, 53:16
**1.0** [3] - 5:6, 6:16, 8:2
**1065** [1] - 18:8
**1166** [3] - 18:9, 18:22, 25:19
**1168-4** [1] - 3:24
**13** [1] - 59:14
**14th** [1] - 52:18
**15** [1] - 4:1
**15th** [3] - 18:10, 42:20
**180** [1] - 27:2
**18th** [1] - 54:19
**1:01** [1] - 2:1

**2**

**2** [5] - 3:24, 18:5, 18:20, 25:18, 28:9
**2.0** [14] - 5:6, 6:6, 6:16, 8:2, 8:6, 8:19, 8:24, 10:9, 12:5, 12:9, 34:16, 40:5, 51:8, 51:9
**2010** [1] - 35:23
**2014** [8] - 5:5, 5:12, 8:24, 9:16, 12:8, 13:7, 13:11, 13:15
**2015** [3] - 25:4, 34:9, 42:1
**2016** [3] - 18:16, 25:2, 51:17
**2018** [22] - 4:1, 5:23, 6:18, 18:17, 21:7, 21:8, 21:22, 25:4, 32:6, 33:5, 42:2, 42:20, 42:23, 48:13, 49:14, 50:25, 51:5, 51:6, 51:17, 52:18, 54:20, 56:1
**2019** [2] - 1:6, 2:1
**24** [1] - 59:19
**2:10-cv-106-LRH-VCF** [2] - 1:5, 2:7

**3**

**3** [2] - 1:23, 61:14

**3.0** [1] - 22:15
**30** [1] - 56:24

**4**

**4** [6] - 1:6, 2:1, 4:18, 7:1, 18:5, 19:17
**4/13/2019** [1] - 61:14
**400** [1] - 1:24

**5**

**5** [7] - 4:16, 19:1, 25:18, 28:9, 44:6, 48:16, 52:24
**5th** [2] - 39:23, 42:23

**6**

**6** [6] - 27:5, 27:10, 27:11, 33:14, 45:3, 46:22
**6th** [2] - 61:2, 61:4

**8**

**8** [3] - 48:15, 48:16, 48:18
**850** [1] - 20:3
**89501** [1] - 1:24

**A**

**Aaron** [1] - 60:23
**Aary** [1] - 49:5
**abide** [1] - 47:7
**able** [5] - 2:25, 33:22, 38:7, 45:16, 56:5
**above-entitled** [1] - 61:13
**absence** [1] - 4:23
**absolutely** [2] - 7:13, 25:10
**abundance** [1] - 6:17
**accept** [2] - 11:25, 54:5
**access** [3] - 42:1, 43:8, 43:10
**accommodation** [1] - 49:12
**accomplish** [1] - 4:14
**according** [1] - 24:16
**accused** [1] - 6:20
**acknowledged** [1] - 19:10
**act** [2] - 30:17
**action** [1] - 23:21
**activity** [1] - 43:20
**acts** [3] - 28:4, 40:23, 41:6

**actual** [2] - 21:21, 29:14
**addition** [1] - 16:1
**additional** [5] - 4:7, 4:14, 6:19, 10:2, 24:12
**address** [3] - 21:12, 32:13, 56:2
**addressed** [4] - 6:15, 7:22, 8:19
**addresses** [1] - 10:24
**adjudicated** [8] - 7:20, 15:15, 17:13, 23:16, 28:2, 28:10, 40:15
**admit** [1] - 10:7
**admitted** [1] - 19:15
**Adopts** [1] - 27:7
**adversary** [1] - 33:24
**advising** [1] - 47:7
**after-the-fact** [1] - 23:20
**afternoon** [1] - 2:17
**AFW** [15] - 39:21, 39:22, 40:1, 40:3, 40:25, 41:1, 41:5, 41:11, 41:25, 42:1, 42:15, 42:18, 42:21
**agent** [1] - 36:11
**agree** [7] - 14:16, 32:1, 32:3, 32:15, 58:19, 60:2
**agreed** [2] - 29:22, 31:25
**agreement** [1] - 46:14
**agreements** [1] - 14:2
**ahead** [5] - 3:21, 17:22, 21:1, 33:22, 57:25
**al** [4] - 1:5, 1:8, 2:5, 2:6
**Allen** [1] - 2:17
**ALLEN** [2] - 1:20, 2:16
**allow** [3] - 35:12, 53:5
**allowed** [2] - 30:12, 54:5
**allows** [1] - 39:10
**alternative** [1] - 34:18
**ambiguities** [1] - 6:18
**ambiguity** [1] - 7:24
**amend** [1] - 20:10
**amount** [1] - 33:15
**amounts** [1] - 12:19
**analyzing** [1] - 46:24
**answer** [4] - 23:11, 33:8, 57:14
**answered** [1] - 12:4
**answering** [1] - 49:2
**anticipate** [2] - 38:24, 55:6
**anticipation** [5] -

36:18, 36:21, 51:1, 51:11, 51:16
**anyway** [1] - 7:11
**appeal** [4] - 23:3, 23:17, 30:22, 42:11
**APPEARANCES** [1] - 1:14
**appreciate** [1] - 55:4
**appropriate** [2] - 23:6, 47:17
**approve** [1] - 57:8
**APRIL** [1] - 2:1
**April** [1] - 1:6
**area** [2] - 17:19, 54:21
**areas** [1] - 24:14
**argue** [2] - 9:2, 35:9
**argument** [2] - 2:19, 9:4, 26:24
**arguments** [4] - 9:15, 24:5, 26:12, 26:21
**associate** [1] - 2:20
**associated** [1] - 44:18
**association** [2] - 12:4, 39:7
**assume** [2] - 9:4, 60:2
**assuming** [2] - 9:10, 10:3
**assumption** [1] - 10:4
**attempting** [1] - 16:16
**attempts** [1] - 45:2
**attorney** [1] - 47:6
**Attorney** [1] - 1:18
**attorney-client** [1] - 47:6
**Attorneys** [2] - 1:16, 1:21
**audio** [1] - 49:5
**August** [7] - 4:1, 5:5, 8:23, 18:10, 42:20, 52:18
**automated** [4] - 4:13, 6:20, 11:8
**available** [3] - 54:10, 54:11, 54:23
**avoid** [1] - 6:20
**aware** [1] - 27:18
**AWF** [1] - 39:21
**awful** [1] - 55:24
**awfully** [1] - 51:19

**B**

**backing** [1] - 12:7
**backwards** [1] - 59:2
**bag** [2] - 59:20, 59:21
**balance** [2] - 27:19, 27:20
**base** [1] - 3:12
**based** [2] - 28:6, 30:8
**BEFORE** [1] - 1:2

**began** [1] - 21:17
**beginning** [4] - 2:8, 25:3, 25:4, 52:18
**behalf** [3] - 2:10, 2:17, 34:8
**behavior** [1] - 35:18
**believes** [2] - 4:8, 31:12
**bench** [1] - 33:21
**benefit** [1] - 7:6
**best** [1] - 54:13
**better** [4] - 37:5, 57:15, 58:23, 60:24
**between** [6] - 5:5, 5:25, 8:17, 21:23, 22:23, 48:20
**beyond** [2] - 28:10, 32:10
**big** [2] - 10:4, 57:16
**bit** [2] - 23:8, 48:17
**blacked** [1] - 39:19
**blessed** [1] - 55:8
**blessing** [1] - 23:21
**Boies** [2] - 2:11, 2:12
**bottom** [4] - 16:14, 27:4, 27:6, 27:15
**bound** [1] - 51:6
**boy** [1] - 2:24
**brain** [1] - 45:21
**breach** [1] - 29:7
**break** [1] - 38:6
**brief** [1] - 26:23
**briefed** [1] - 17:2
**bring** [6] - 4:8, 25:14, 30:19, 34:16, 34:17, 42:3
**broad** [1] - 51:19
**broadly** [1] - 53:25
**broken** [1] - 18:21
**brought** [1] - 3:21
**bunch** [1] - 41:22
**burden** [1] - 37:13
**burdens** [1] - 38:13
**burdensome** [2] - 33:11, 54:23
**burdensomeness** [2] - 43:5, 43:6
**business** [7] - 21:22, 48:12, 48:21, 49:12, 50:11, 50:18, 50:20

**C**

**CAM** [1] - 1:2
**camel's** [1] - 38:6
**cannot** [1] - 29:25
**care** [1] - 58:23
**case** [43] - 2:6, 3:21, 6:7, 8:20, 10:5, 13:14, 15:10, 15:11,

15:14, 16:5, 16:19,
16:20, 16:23, 16:24,
17:13, 17:25, 21:13,
23:16, 27:22, 28:2,
28:10, 28:12, 32:23,
33:16, 33:22, 34:16,
35:3, 35:4, 35:6,
35:24, 36:6, 39:6,
40:16, 41:9, 41:11,
41:13, 42:10, 42:11,
42:19, 48:10, 51:10
**cases** [7] - 16:19,
23:7, 32:23, 34:25,
35:3, 57:15
**cat's** [1] - 59:20
**category** [1] - 18:24
**caution** [1] - 6:17
**caveat** [1] - 9:13
**CCR** [2] - 1:23, 61:14
**certain** [4] - 4:12,
19:25, 46:9, 47:14
**certainly** [3] - 37:7,
51:14, 56:2
**certify** [1] - 61:12
**cetera** [1] - 37:15
**challenged** [1] - 23:18
**challenging** [1] -
22:24
**change** [5] - 12:23,
25:7, 28:10, 39:7,
42:8
**changed** [4] - 23:12,
23:23, 42:15, 42:18
**changeover** [5] - 5:4,
6:16, 8:18, 8:24,
13:7
**changes** [13] - 9:15,
12:8, 24:12, 34:16,
36:16, 37:14, 38:19,
47:25, 50:3, 50:8,
50:23, 51:8, 51:18
**Chris** [1] - 2:18
**circuit** [1] - 55:24
**Circuit** [12] - 6:5,
10:17, 11:3, 15:4,
16:23, 18:17, 23:3,
24:8, 26:22, 29:9,
29:13, 35:15
**Circuit's** [1] - 11:14
**circumstantial** [1] -
23:9
**citation** [1] - 27:1
**cited** [1] - 23:7
**clarification** [1] - 55:1
**clear** [3] - 7:19, 58:9
**clearly** [5] - 11:3, 28:9,
30:18, 33:7, 51:15
**CLERK** [2] - 2:4, 61:2
**client** [11] - 6:11, 6:22,
6:23, 7:5, 11:9,

11:10, 11:16, 11:22,
13:13, 47:6, 47:7
**client's** [3] - 14:25,
15:7, 28:21
**clients** [8] - 11:18,
11:19, 19:25, 20:4,
25:5, 43:22, 48:24,
50:11
**close** [1] - 42:10
**closed** [1] - 21:7
**cloud** [25] - 13:13,
14:4, 14:25, 15:2,
15:7, 16:7, 17:11,
17:12, 19:10, 19:16,
19:23, 24:2, 25:25,
28:15, 28:16, 28:21,
29:18, 29:20, 30:1,
31:6, 32:4, 32:7,
48:3, 56:20
**cocounsel** [1] - 52:16
**code** [5] - 39:22, 41:1,
41:6, 41:20, 42:24
**colleagues** [1] - 59:18
**collectively** [1] - 30:25
**Colorado** [1] - 1:4
**comfort** [1] - 21:20
**coming** [2] - 34:13,
54:15
**committed** [1] - 7:17
**commotion** [1] - 51:23
**communications** [2] -
44:12, 48:18
**company** [2] - 7:17,
48:21
**compel** [5] - 51:21,
51:22, 51:23, 51:25,
52:2
**complaining** [1] - 5:19
**complaint** [1] - 35:22
**complete** [1] - 8:24
**completely** [1] - 8:3
**compliance** [24] - 4:5,
4:9, 4:21, 6:12, 7:17,
8:22, 9:9, 9:11,
10:13, 12:2, 12:19,
14:12, 14:13, 16:17,
21:22, 22:17, 23:5,
33:6, 37:2, 37:3,
37:7, 37:9, 54:19
**complicated** [1] - 33:2
**complied** [1] - 43:5
**comply** [1] - 16:16
**complying** [1] - 23:1
**computer** [7] - 18:12,
19:4, 19:5, 25:22,
25:23, 41:21, 60:25
**computing** [1] - 17:12
**concepts** [1] - 8:3
**concern** [2] - 17:7,
47:6

**concerning** [2] -
36:16, 37:14
**concerns** [2] - 34:7,
56:3
**conclusive** [1] - 35:5
**conditionally** [1] -
46:13
**conduct** [1] - 23:10
**confer** [3] - 54:2,
55:15, 58:5
**confidential** [3] - 3:8,
3:9, 58:16, 59:1
**confused** [1] - 7:25
**confusion** [1] - 11:2
**conjunction** [1] - 45:3
**consent** [1] - 20:13
**consequences** [1] -
14:1
**consider** [1] - 46:5
**consideration** [1] -
60:15
**consolidated** [3] -
35:1, 35:4
**consolidating** [1] -
34:25
**constitutes** [2] -
15:24, 28:21
**constraints** [1] - 4:9
**constructive** [3] -
29:14, 29:18, 29:21
**contempt** [28] - 15:13,
17:9, 17:10, 17:14,
24:18, 24:19, 25:9,
30:7, 30:18, 30:20,
30:21, 31:6, 31:7,
31:12, 31:13, 32:5,
32:20, 32:25, 36:7,
40:7, 40:8, 41:12,
42:3, 42:5, 56:15,
57:20, 60:17, 60:18
**contemptuous** [1] -
30:17
**context** [3] - 34:10,
34:14, 34:22
**continue** [1] - 23:3
**continues** [1] - 35:21
**contract** [1] - 29:7
**contracts** [1] - 30:2
**control** [3] - 29:14,
29:19, 29:21
**convenience** [1] -
46:21
**conversation** [1] -
9:24
**conversations** [1] -
54:7
**copies** [1] - 49:11
**copy** [4] - 10:22,
39:18, 39:21, 45:15
**copyright** [3] - 12:6,

29:3
**corner** [2] - 27:6,
27:15
**corporation** [2] - 1:4,
1:8
**corpus** [1] - 48:6
**correct** [4] - 8:14,
41:5, 53:17, 61:12
**corrected** [1] - 52:15
**correspondence** [1] -
22:16
**cost** [1] - 4:17
**costs** [5] - 4:14, 4:19,
4:22, 6:12, 7:2
**counsel** [5] - 2:8,
2:13, 2:20, 54:22,
57:13
**countenanced** [1] -
53:16
**counterintuitive** [1] -
59:6
**couple** [1] - 55:8
**course** [6] - 7:5, 7:16,
8:10, 37:25, 43:4,
57:2
**COURT** [185] - 1:1,
2:15, 2:22, 2:24, 3:3,
3:17, 5:8, 5:11, 5:13,
5:16, 5:21, 6:1, 7:3,
7:7, 7:10, 7:21, 7:23,
9:1, 9:18, 9:22, 9:25,
10:6, 10:19, 10:22,
11:5, 11:18, 11:20,
12:11, 12:13, 12:24,
13:6, 13:16, 13:19,
13:21, 13:24, 14:4,
14:11, 14:15, 14:18,
14:23, 15:8, 15:12,
15:19, 15:23, 15:25,
16:9, 16:13, 17:3,
17:6, 17:17, 17:22,
18:2, 18:6, 18:11,
18:18, 18:22, 18:25,
19:6, 19:12, 19:15,
19:22, 20:5, 20:7,
20:18, 21:5, 21:10,
21:19, 21:24, 22:4,
22:12, 22:23, 23:14,
24:4, 24:21, 25:6,
25:17, 26:4, 26:8,
26:13, 26:15, 26:19,
27:8, 27:11, 27:15,
28:13, 28:19, 28:22,
29:5, 29:16, 29:18,
30:4, 30:10, 31:9,
31:17, 31:20, 31:23,
32:11, 32:18, 32:22,
33:18, 33:20, 34:2,
35:7, 36:10, 37:11,
37:19, 37:23, 38:7,

38:14, 39:2, 39:12,
40:10, 40:17, 40:22,
41:3, 41:15, 41:18,
42:5, 42:12, 43:6,
43:14, 43:18, 43:23,
44:1, 44:3, 44:9,
44:11, 44:14, 44:19,
44:24, 45:5, 45:10,
45:12, 45:17, 45:23,
46:1, 46:13, 46:17,
47:1, 47:17, 47:23,
48:14, 48:19, 48:22,
48:25, 49:15, 49:18,
49:23, 50:7, 50:13,
50:19, 51:1, 51:7,
51:19, 52:2, 52:6,
52:10, 52:14, 52:21,
52:25, 53:2, 53:13,
53:18, 53:24, 54:3,
54:9, 55:4, 55:10,
55:12, 55:25, 56:8,
57:4, 57:12, 58:8,
58:13, 59:2, 59:8,
59:12, 59:22, 59:24,
60:7, 60:10, 60:23,
61:4, 61:9
**court** [8] - 6:5, 11:21,
11:22, 19:15, 21:16,
25:24, 26:21, 26:25
**Court** [27] - 4:1, 5:6,
6:25, 8:14, 11:3,
14:1, 22:18, 25:14,
27:17, 28:5, 29:25,
34:9, 34:25, 35:12,
35:17, 36:1, 36:7,
38:5, 39:10, 40:14,
41:3, 52:18, 53:22,
54:13, 54:24, 56:23,
57:11
**Court's** [7] - 11:14,
33:25, 46:20, 54:4,
54:16, 55:1, 58:5
**courthouse** [1] - 17:2
**courtroom** [1] - 2:20
**covers** [1] - 8:22
**craft** [1] - 57:1
**crazy** [1] - 16:1
**created** [1] - 45:14
**creative** [1] - 10:16
**credentials** [2] - 43:8,
43:10
**cross** [25] - 5:20, 6:7,
6:15, 6:21, 8:8, 8:12,
10:10, 10:25, 11:2,
11:7, 11:12, 11:15,
15:16, 15:24, 16:4,
16:22, 33:17, 41:8,
45:1, 45:2, 45:7,
45:9, 46:23
**cross-use** [25] - 5:20,

3

6:7, 6:15, 6:21, 8:8, 8:12, 10:10, 10:25, 11:2, 11:7, 11:12, 11:15, 15:16, 15:24, 16:4, 16:22, 33:17, 41:8, 45:1, 45:2, 45:7, 45:9, 46:23
**current** [4] - 4:3, 4:8, 25:1, 26:24
**customer** [5] - 14:14, 14:15, 29:12, 29:14, 46:7
**customer's** [5] - 14:3, 28:25, 29:11, 32:8, 48:1
**customers** [13] - 8:17, 8:23, 8:25, 25:5, 32:7, 35:25, 36:4, 44:6, 44:13, 45:1, 45:20, 47:23, 48:18
**cutoff** [2] - 8:17, 60:17

## D

**darn** [1] - 59:19
**data** [2] - 41:23, 45:19
**database** [15] - 39:21, 39:22, 40:1, 40:25, 41:5, 41:22, 42:1, 42:15, 42:16, 42:18, 42:21, 42:25, 43:7
**dataset** [2] - 40:2, 41:24
**date** [5] - 42:19, 52:18, 60:17, 60:23
**dates** [1] - 5:25
**daunting** [1] - 60:25
**days** [2] - 56:24, 60:21
**de** [1] - 35:13
**deadline** [1] - 60:19
**deal** [3] - 30:20, 37:24, 54:12
**dealing** [2] - 22:15, 41:11
**dealt** [1] - 51:9
**debatable** [1] - 22:11
**debated** [1] - 34:19
**decide** [2] - 31:7, 48:7
**decided** [8] - 13:25, 15:1, 16:6, 16:7, 16:23, 16:25, 34:11, 39:7
**decides** [1] - 35:15
**declaration** [1] - 6:25
**declaratory** [1] - 23:20
**declared** [1] - 58:25
**deeper** [1] - 39:16
**defendant** [1] - 18:7
**Defendants** [1] - 1:9
**DEFENDANTS** [1] -

1:20
**defense** [2] - 40:12, 40:14
**define** [3] - 11:2, 11:12, 35:2
**defined** [3] - 10:16, 39:24, 58:16
**definition** [4] - 11:11, 11:14, 16:4, 52:21
**definitively** [3] - 12:3, 22:25, 35:2
**degrees** [1] - 27:2
**delay** [1] - 36:11
**demonstrate** [1] - 43:1
**demonstrates** [1] - 33:8
**denied** [4] - 3:18, 6:4, 13:2, 39:20
**deny** [1] - 51:20
**deposition** [1] - 39:11
**depositions** [1] - 20:3
**derivative** [2] - 19:3, 25:21
**described** [2] - 24:15, 54:21
**deserves** [1] - 39:16
**designate** [1] - 3:7
**destroy** [1] - 36:5
**details** [2] - 45:20, 54:22
**determination** [1] - 30:22
**determinations** [1] - 35:5
**determine** [1] - 38:25
**determined** [3] - 28:4, 40:24, 41:4
**develop** [1] - 45:7
**developed** [1] - 47:4
**development** [3] - 6:9, 6:14, 13:12
**DevTrack** [1] - 43:15
**difference** [2] - 5:5, 21:23
**different** [7] - 8:3, 17:19, 19:8, 23:10, 34:22, 45:20, 56:11
**differently** [1] - 26:17
**difficult** [2] - 46:3, 57:13
**diligent** [1] - 23:12
**disagree** [3] - 22:11, 54:5, 55:2
**disagreed** [2] - 15:18, 16:21
**disagreements** [1] - 54:15
**discoverable** [1] - 40:7
**discovery** [69] - 8:10,

8:17, 14:20, 16:8, 16:18, 17:8, 17:15, 19:18, 20:3, 20:7, 20:24, 20:25, 21:1, 21:7, 21:12, 21:25, 22:3, 22:5, 24:1, 24:20, 24:23, 25:3, 25:11, 25:12, 25:14, 29:23, 30:2, 30:11, 30:16, 30:23, 30:24, 31:8, 31:25, 32:17, 33:9, 34:17, 34:21, 39:6, 39:10, 39:15, 41:19, 42:10, 42:13, 49:21, 52:4, 52:6, 52:13, 53:5, 54:5, 54:18, 54:21, 55:2, 55:7, 55:14, 56:10, 56:14, 57:1, 57:2, 57:4, 57:19, 57:20, 60:12, 60:13, 60:14, 60:16, 60:17, 61:5
**discussion** [9] - 9:5, 34:24, 49:6, 55:17, 56:11
**dispute** [9] - 13:17, 15:15, 16:8, 17:8, 17:15, 29:4, 29:23, 31:5
**disputed** [1] - 30:9
**disputes** [3] - 14:21, 16:24, 54:24
**dissemination** [1] - 44:17
**distribution** [1] - 44:17
**district** [3] - 6:4, 26:21, 26:25
**DISTRICT** [2] - 1:1, 1:1
**docket** [3] - 18:8, 25:19, 34:15
**document** [4] - 20:3, 26:3, 46:7, 47:11
**documentation** [2] - 19:4, 25:22
**documents** [13] - 3:7, 17:11, 26:6, 31:2, 36:16, 37:14, 37:16, 38:8, 38:9, 38:11, 38:16, 38:18, 44:5
**dollar** [1] - 5:17
**dollars** [5] - 10:11, 30:23, 31:1, 31:24, 32:13
**done** [14] - 4:13, 11:16, 13:15, 19:9, 20:24, 23:9, 25:15, 32:18, 49:14, 50:17, 50:20, 59:10
**down** [8] - 17:18,

18:21, 27:8, 31:10, 31:15, 34:21, 36:1, 52:9
**dredged** [1] - 35:8
**due** [1] - 57:21
**duplication** [1] - 7:4
**during** [1] - 44:3

## E

**easily** [1] - 43:5
**ECF** [1] - 3:24
**effect** [3] - 18:10, 53:23, 54:20
**effort** [4] - 4:4, 4:21, 16:18, 21:1
**efforts** [1] - 7:4
**either** [5] - 7:5, 13:13, 16:19, 35:3, 35:5
**eliminate** [1] - 5:18
**embark** [1] - 42:9
**employees** [1] - 47:14
**end** [3] - 7:5, 30:16, 42:10
**enforce** [2] - 35:11, 48:5
**enforceable** [1] - 19:7
**enforcement** [1] - 21:2
**engineer** [3] - 6:22, 15:21, 41:21
**enjoin** [2] - 28:3, 40:23
**ensure** [3] - 4:4, 4:21, 7:6
**entailed** [1] - 6:12
**entered** [8] - 3:25, 6:3, 18:15, 21:7, 30:12, 36:24, 42:19, 52:19
**entertain** [1] - 53:23
**entire** [1] - 48:21
**entirely** [1] - 34:22
**entities** [1] - 35:16
**entitled** [8] - 9:16, 23:5, 24:10, 24:17, 41:14, 41:17, 48:11, 61:13
**entry** [3] - 36:19, 36:22, 51:3
**environment** [3] - 8:10, 47:21, 47:24
**environments** [7] - 6:9, 13:12, 15:6, 17:12, 28:17, 48:5
**equipment** [1] - 32:8
**especially** [1] - 48:11
**essentially** [4] - 7:2, 13:8, 22:21, 54:19
**estimate** [1] - 4:17
**estimated** [1] - 7:1
**estimation** [1] - 9:12

**estopped** [1] - 28:11
**et** [5] - 1:4, 1:8, 2:5, 2:6, 37:15
**evidence** [14] - 21:21, 23:9, 25:11, 25:15, 30:8, 32:23, 32:24, 39:5, 40:7, 41:6, 42:8, 45:2, 45:18, 51:13
**exactly** [3] - 20:4, 45:6, 59:4
**examining** [1] - 4:3
**example** [3] - 4:12, 17:11, 40:3
**except** [1] - 53:7
**excepting** [1] - 27:5
**excuse** [1] - 8:18
**exemplaries** [1] - 52:12
**exhibit** [1] - 58:4
**exhibits** [2] - 17:5, 59:14
**exist** [5] - 38:11, 40:4, 40:9, 41:1, 48:6
**expensive** [2] - 30:24, 38:12
**explained** [1] - 28:12
**explanation** [1] - 13:23
**explore** [1] - 24:17
**extent** [8] - 22:21, 22:22, 42:15, 42:18, 47:7, 47:10, 47:18, 56:9
**extra** [1] - 13:2
**extraordinarily** [1] - 30:24

## F

**facilities** [9] - 14:3, 14:14, 15:7, 28:21, 29:10, 29:12, 29:15
**facility** [1] - 14:25
**fact** [6] - 23:20, 32:9, 38:25, 48:11, 56:21, 56:25
**facto** [1] - 35:13
**factors** [1] - 27:17
**facts** [9] - 31:11, 31:12, 31:25, 32:2, 32:11, 32:16, 56:19, 57:23
**factual** [1] - 51:17
**faith** [2] - 4:4, 4:20
**false** [1] - 27:2
**familiar** [1] - 43:18
**far** [5] - 7:18, 8:7, 34:21
**fast** [1] - 5:22

4

**favor** [1] - 27:21
**FCRR** [2] - 1:23, 61:14
**features** [1] - 5:19
**feign** [1] - 11:2
**FERENBACH** [1] - 1:2
**few** [1] - 34:6
**field** [1] - 25:7
**fifteen** [1] - 27:9
**figure** [2] - 26:9, 43:23
**file** [11] - 20:13, 32:1, 45:14, 45:24, 49:5, 56:23, 59:10, 59:18, 60:4, 60:18, 61:6
**filed** [6] - 18:10, 51:4, 58:14, 58:15, 58:25, 59:14
**files** [2] - 45:2, 45:5
**filing** [1] - 60:17
**fine** [4] - 3:2, 10:6, 57:22, 60:22
**fingerprints** [1] - 45:24
**finished** [2] - 6:22, 22:2
**firm** [1] - 2:14
**first** [21] - 3:3, 6:4, 15:10, 15:14, 16:20, 17:25, 25:1, 26:23, 27:22, 28:2, 28:10, 34:16, 35:4, 36:7, 36:12, 39:15, 40:16, 41:9, 42:11, 51:17, 58:9
**five** [4] - 18:6, 33:10, 33:11, 48:17
**five-page** [1] - 18:6
**fix** [1] - 19:9
**fixes** [6] - 48:24, 49:11, 49:13, 49:14, 50:16, 53:21
**flaunted** [2] - 35:17, 35:18
**flawed** [1] - 35:10
**Flexner** [1] - 2:11
**fly** [1] - 34:5
**focus** [1] - 10:23
**folders** [4] - 39:23, 41:1, 41:6, 42:25
**footnote** [1] - 29:13
**FOR** [2] - 1:15, 1:20
**force** [1] - 9:17
**foregoing** [1] - 61:12
**forget** [1] - 57:25
**forth** [8] - 6:15, 8:11, 31:3, 34:7, 48:24, 52:8, 52:17, 52:20
**forward** [2] - 5:22, 25:11
**four** [2] - 23:10, 27:17
**frankly** [1] - 6:17

**free** [1] - 51:14
**front** [2] - 20:14, 53:3
**frustration** [1] - 33:24
**FTP** [3] - 39:22, 41:1, 42:25
**full** [1] - 25:3
**fully** [1] - 17:1

### G

**gap** [1] - 8:15
**general** [2] - 2:20, 54:21
**generic** [5] - 5:20, 6:15, 8:8, 8:12, 41:8
**given** [3] - 23:1, 48:11, 60:13
**gosh** [1] - 9:5
**grant** [2] - 27:18, 55:13, 56:9
**granted** [3] - 46:13, 55:7, 57:1
**great** [1] - 2:15
**greatest** [1] - 38:1
**Griener** [3] - 1:23, 61:14, 61:14
**guess** [6] - 7:8, 7:23, 41:21, 46:10, 56:9, 57:5
**guidance** [1] - 60:13
**gun** [1] - 23:8
**guys** [2] - 17:20, 49:5

### H

**half** [3] - 13:14, 16:7, 35:15
**hand** [2] - 14:8, 26:2
**handed** [1] - 26:2
**handle** [1] - 60:24
**happy** [3] - 16:25, 27:3, 54:12
**hard** [1] - 22:24
**hardships** [2] - 27:19, 27:21
**harmed** [1] - 35:16
**HARTNETT** [1] - 1:15
**Hartnett** [1] - 2:12
**hash** [1] - 54:14
**head** [1] - 15:22
**hear** [3] - 3:14, 24:21, 48:14
**heard** [1] - 12:25
**hearing** [4] - 2:5, 21:17, 33:24, 56:15
**HEARING** [1] - 1:12
**heart** [1] - 33:16
**held** [3] - 10:17, 15:13, 17:10
**helpful** [3] - 17:17,

46:23, 57:24
**helps** [1] - 44:25
**herring** [1] - 23:15
**Hicks** [10] - 15:9, 16:23, 24:8, 27:5, 27:6, 28:2, 29:11, 32:25, 40:22, 41:18
**high** [1] - 6:2
**highlight** [1] - 17:23
**highlighted** [1] - 14:19
**HILL** [1] - 1:16
**Hill** [1] - 2:14
**history** [1] - 10:4
**Hoffman** [3] - 16:7, 20:14, 29:22
**hold** [9] - 11:5, 13:16, 13:21, 18:2, 32:20, 39:14, 53:7
**Honor** [54] - 2:10, 2:16, 3:16, 5:1, 7:13, 8:7, 10:2, 13:5, 13:18, 14:17, 16:2, 17:8, 17:21, 19:25, 20:10, 21:6, 23:25, 24:25, 25:10, 26:2, 26:18, 27:1, 28:16, 29:1, 30:6, 30:14, 30:25, 31:14, 31:22, 32:10, 33:2, 38:10, 38:24, 40:1, 40:13, 41:7, 41:25, 43:3, 43:13, 46:19, 48:16, 49:10, 52:1, 52:8, 53:14, 53:20, 56:25, 58:1, 58:24, 59:17, 60:6, 61:1, 61:3, 61:7
**HONORABLE** [1] - 1:2
**hope** [5] - 5:23, 60:14
**hopefully** [1] - 41:18
**hoping** [1] - 20:19
**host** [1] - 29:3
**hosting** [13] - 5:20, 6:7, 6:11, 8:8, 8:9, 8:12, 10:10, 13:11, 16:22, 17:11, 19:10, 30:1, 31:6
**hours** [1] - 59:19
**housed** [1] - 14:3
**housekeeping** [1] - 58:2
**Howard** [2] - 2:17
**huge** [2] - 33:15, 41:24
**hundreds** [2] - 31:2, 32:14

### I

**identical** [1] - 25:1

**identified** [1] - 4:6
**identify** [3] - 38:16, 38:17, 38:18
**II** [25] - 8:1, 8:20, 14:21, 16:3, 16:10, 19:24, 20:5, 20:8, 20:11, 20:24, 21:2, 21:7, 21:25, 22:2, 23:16, 23:20, 24:6, 28:20, 34:5, 34:12, 43:4, 51:13, 55:18, 55:20, 55:22
**imagine** [1] - 56:20
**impact** [4] - 8:5, 22:13, 35:6, 36:13
**implement** [1] - 4:19
**implemented** [1] - 12:5
**implicated** [1] - 6:6
**important** [2] - 26:1, 29:24
**imposed** [2] - 4:9, 23:4
**inaudible** [1] - 38:20
**INC** [2] - 1:4, 1:8
**include** [1] - 21:25
**included** [1] - 8:25
**includes** [1] - 60:16
**including** [2] - 20:3, 44:21
**Incorporated** [2] - 2:5, 2:6
**incur** [1] - 4:22
**incurred** [1] - 4:20
**indecipherable** [1] - 9:24
**indicates** [1] - 39:1
**information** [4] - 10:2, 33:7, 48:6, 48:9
**infringement** [6] - 10:24, 12:9, 14:7, 24:15, 29:3, 35:21
**infringing** [3] - 36:2, 36:3, 44:17
**injunction** [95] - 3:25, 4:5, 4:10, 4:21, 4:23, 6:3, 6:18, 7:18, 7:19, 8:5, 8:21, 8:22, 9:9, 9:12, 9:17, 10:13, 10:18, 10:21, 12:10, 12:20, 14:12, 16:16, 17:25, 18:4, 18:6, 18:7, 18:9, 18:12, 18:13, 18:19, 18:21, 19:8, 21:2, 21:6, 21:23, 22:7, 22:9, 22:17, 22:24, 23:4, 23:18, 24:14, 24:16, 25:1, 25:2, 25:8, 25:19, 27:18, 27:23,

28:1, 28:3, 28:6, 28:9, 29:7, 30:11, 30:18, 35:9, 35:10, 35:11, 35:17, 36:8, 36:19, 36:20, 36:23, 37:5, 37:15, 37:16, 39:1, 40:11, 40:15, 40:20, 42:3, 42:6, 42:19, 44:15, 44:16, 45:11, 46:21, 46:25, 47:4, 47:8, 47:13, 48:4, 48:8, 50:24, 51:2, 51:3, 51:5, 51:11, 51:16, 52:19, 54:19, 54:20
**Injunction** [2] - 27:12, 27:13
**inquire** [1] - 53:21
**insisted** [1] - 27:24
**instances** [1] - 35:3
**instead** [1] - 22:15
**instructions** [2] - 52:24, 53:1
**insurance** [1] - 6:8
**intention** [1] - 37:8
**interest** [2] - 7:7, 58:20
**interpretation** [3] - 10:16, 19:9, 28:8
**interpreted** [2] - 14:1, 29:11
**interrogatories** [8] - 36:12, 49:3, 49:8, 52:3, 52:16, 53:7, 57:3, 57:6
**interrogatory** [12] - 38:8, 49:15, 49:16, 49:19, 49:24, 50:7, 53:8, 53:9, 53:11, 53:15, 53:16, 53:23
**invite** [1] - 34:9
**invoiced** [1] - 47:15
**involve** [1] - 37:17
**involved** [5] - 31:1, 37:22, 38:16, 38:17, 38:18
**irrelevant** [1] - 45:21
**issue** [15] - 8:12, 8:13, 15:2, 16:2, 28:17, 28:23, 28:24, 33:17, 41:9, 51:13, 58:4, 58:7, 59:23
**issues** [3] - 34:12, 35:2, 51:10
**itself** [2] - 32:8, 37:25

### J

**jack** [1] - 2:20
**JAMES** [1] - 1:17

5

**January** [2] - 21:8, 22:3
**John** [1] - 2:13
**JOHN** [1] - 1:15
**joint** [2] - 32:1, 60:4
**Judge** [14] - 15:9, 16:7, 16:23, 20:14, 24:7, 27:5, 27:6, 28:2, 29:11, 29:22, 32:25, 34:20, 40:22, 41:18
**JUDGE** [1] - 1:2
**judge** [4] - 16:6, 34:20, 35:5, 50:6
**judgment** [11] - 5:14, 8:18, 14:25, 15:3, 15:10, 16:3, 17:1, 23:17, 40:4, 41:11, 42:11
**July** [3] - 5:4, 5:12, 8:23
**jump** [2] - 16:14, 27:4
**jury** [3] - 14:2, 35:5, 41:13

## K

**Kathleen** [1] - 2:12
**KATHLEEN** [1] - 1:15
**keep** [4] - 3:12, 32:24, 58:19, 60:19
**keeping** [1] - 43:11
**keeps** [2] - 35:8, 35:9
**kind** [5] - 17:18, 22:20, 32:21, 46:8, 50:17
**kinds** [1] - 35:1
**knowledge** [2] - 15:21, 39:8
**knows** [4] - 24:19, 34:25, 35:15, 55:18

## L

**labor** [2] - 4:14, 7:2
**land** [2] - 23:19, 56:13
**language** [1] - 24:13
**larger** [1] - 38:1
**Las** [1] - 1:7
**LAS** [1] - 2:1
**last** [4] - 22:3, 24:21, 31:1, 42:15
**latest** [1] - 24:11
**law** [2] - 2:14, 23:19
**Law** [3] - 1:16, 1:18, 1:21
**lawsuit** [1] - 14:22
**lawsuit's** [1] - 7:8
**lawyers** [2] - 35:24, 37:21
**lay** [1] - 56:13

**lead** [1] - 40:7
**least** [7] - 4:17, 7:24, 31:23, 39:13, 41:4, 57:8, 60:3
**leave** [4] - 52:3, 52:5, 52:6, 55:7
**led** [1] - 12:10
**Leen** [1] - 34:20
**left** [1] - 35:23
**legitimate** [1] - 46:11
**Lewis** [1] - 2:14
**license** [8] - 11:16, 14:2, 15:1, 29:2, 29:4, 29:10, 50:11
**licensee's** [2] - 19:5, 25:23
**licenses** [1] - 14:1
**light** [2] - 6:18, 10:4
**likewise** [1] - 34:24
**limit** [2] - 50:20, 51:15
**limitation** [1] - 52:16
**limited** [6] - 8:16, 28:1, 38:5, 40:15, 54:18, 56:10
**limiting** [2] - 32:7, 36:23
**line** [2] - 16:15, 27:4
**list** [3] - 49:13, 53:10, 53:21
**listen** [1] - 2:25
**literally** [1] - 40:6
**litigate** [3] - 16:19, 34:4, 41:13
**litigating** [2] - 19:24, 35:22
**litigation** [2] - 3:21, 47:12
**local** [11] - 5:20, 6:7, 6:11, 8:8, 8:9, 8:12, 10:9, 13:8, 13:9, 13:11, 16:22
**location** [2] - 47:20, 48:2
**log** [2] - 47:11, 47:18
**look** [9] - 7:11, 22:20, 34:9, 38:12, 38:14, 40:17, 46:10, 58:20, 60:7
**looking** [5] - 18:14, 18:20, 37:4, 38:2, 45:22
**lost** [1] - 12:15

## M

**MAGISTRATE** [1] - 1:2
**main** [1] - 5:4
**manual** [3] - 4:15, 6:19, 10:10
**manually** [1] - 4:13

**March** [1] - 51:6
**Margaret** [2] - 1:23, 61:14
**mark** [1] - 2:18
**Mark** [1] - 5:1
**MARK** [1] - 1:20
**marked** [1] - 3:9
**MAROULIS** [2] - 1:17, 3:2
**Maroulis** [1] - 2:24
**massive** [1] - 40:2
**material** [2] - 36:2, 42:22
**materials** [1] - 36:18, 44:17
**matter** [3] - 2:5, 58:2, 61:13
**mean** [22] - 7:10, 9:15, 11:7, 12:25, 19:18, 19:23, 25:6, 25:17, 25:18, 29:11, 31:23, 32:3, 32:21, 33:23, 36:21, 37:18, 40:16, 47:20, 50:3, 50:8, 51:8, 54:1
**meaning** [1] - 15:1
**means** [4] - 10:18, 11:2, 11:7, 29:13
**meantime** [1] - 23:4
**meat** [2] - 46:16, 50:17
**mechanism** [1] - 33:9
**mechanisms** [2] - 10:24, 43:16
**meet** [2] - 54:1, 55:15
**memoranda** [1] - 47:3
**merits** [1] - 14:21
**met** [2] - 23:6
**metadata** [2] - 43:11, 45:17
**might** [4] - 23:11, 39:9, 41:21, 49:12
**mighty** [1] - 10:4
**million** [3] - 4:18, 7:1
**millions** [10] - 8:11, 10:11, 30:23, 31:1, 31:2, 31:24, 32:13, 35:3
**mind** [3] - 26:2, 37:7, 41:4
**mine** [1] - 27:11
**minute** [2] - 12:7, 12:11
**modifications** [3] - 4:7, 4:19, 48:1
**modified** [3] - 21:14, 40:21, 55:23
**modify** [2] - 4:2, 20:10
**Monday** [2] - 61:2, 61:4
**money** [2] - 21:1,

57:24
**monitor** [1] - 43:20
**months** [3] - 33:11, 35:14
**Morgan** [1] - 2:14
**morning** [1] - 2:16
**most** [2] - 26:1, 39:8
**motion** [35] - 2:4, 3:4, 3:11, 3:17, 14:20, 15:10, 16:12, 16:18, 20:13, 21:8, 21:13, 24:1, 31:7, 34:15, 39:19, 41:11, 51:4, 51:21, 51:22, 51:25, 52:2, 52:3, 56:9, 57:20, 58:3, 58:7, 58:9, 58:11, 58:14, 58:25, 59:10, 60:12, 60:18, 61:6
**MOTION** [1] - 1:12
**Motion** [2] - 27:12, 27:14
**motions** [2] - 16:3, 17:1
**moved** [3] - 8:9, 13:13, 30:7
**moving** [2] - 3:7, 3:8
**MR** [184] - 2:10, 2:16, 3:2, 3:15, 5:1, 5:9, 5:12, 5:14, 5:17, 5:22, 6:3, 7:4, 7:9, 7:13, 7:22, 8:7, 9:11, 9:19, 10:1, 10:15, 10:20, 10:23, 11:13, 11:19, 12:3, 12:12, 12:22, 13:4, 13:7, 13:18, 13:20, 13:22, 13:25, 14:6, 14:12, 14:17, 14:19, 14:24, 15:9, 15:13, 15:20, 15:24, 16:1, 16:11, 16:14, 17:4, 17:7, 17:21, 17:23, 18:4, 18:9, 18:15, 18:20, 18:23, 19:1, 19:7, 19:14, 19:20, 19:25, 20:6, 20:9, 21:3, 21:6, 21:11, 21:20, 22:2, 22:8, 22:14, 23:2, 23:15, 24:5, 24:25, 25:10, 26:1, 26:5, 26:11, 26:14, 26:17, 26:20, 27:10, 27:13, 27:17, 28:16, 28:20, 29:1, 29:6, 29:17, 29:20, 30:6, 30:14, 31:14, 31:19, 31:22, 32:10, 32:12, 32:21, 33:1, 33:19, 33:23, 34:3, 35:8,

37:1, 37:18, 37:20, 37:24, 38:10, 38:24, 39:3, 40:1, 40:13, 40:19, 41:2, 41:7, 41:16, 41:24, 42:7, 43:3, 43:13, 43:15, 43:19, 43:25, 44:2, 44:8, 44:10, 44:12, 44:16, 44:22, 44:25, 45:6, 45:11, 45:16, 45:18, 45:25, 46:12, 46:15, 46:19, 47:10, 47:22, 47:24, 48:16, 48:20, 48:23, 49:10, 49:17, 49:21, 50:5, 50:10, 50:14, 50:22, 51:3, 51:14, 51:25, 52:5, 52:7, 52:11, 52:15, 52:23, 53:1, 53:12, 53:14, 53:20, 53:25, 54:4, 54:10, 55:6, 55:11, 55:13, 56:2, 56:25, 57:10, 58:1, 58:12, 58:24, 59:3, 59:5, 59:9, 59:17, 59:23, 60:6, 60:9, 60:22, 61:1, 61:7, 61:8
**multi** [1] - 10:21
**multi-pages** [1] - 10:21
**multimillion** [1] - 5:17
**multiple** [2] - 31:15, 56:22
**must** [1] - 42:16

## N

**name** [2] - 2:9, 38:21
**names** [1] - 9:6
**narrowly** [1] - 21:8
**necessary** [2] - 28:2, 37:3
**need** [28] - 6:1, 9:4, 9:19, 10:3, 10:14, 19:18, 20:21, 22:18, 25:15, 30:1, 30:15, 31:7, 32:11, 32:19, 34:3, 34:4, 38:8, 38:22, 38:23, 42:20, 44:6, 44:8, 50:17, 56:14, 57:4, 59:15, 61:5
**needed** [1] - 53:11
**needs** [1] - 20:16
**negates** [1] - 24:15
**NEVADA** [2] - 1:1, 2:1
**Nevada** [1] - 1:8, 1:7, 1:24
**never** [3] - 15:14,

17:12, 34:11
**new** [6] - 11:9, 16:4, 39:22, 40:10, 40:12, 48:10
**next** [4] - 3:19, 4:16, 38:14, 43:8
**nine** [1] - 35:22
**Ninth** [13] - 6:5, 10:17, 11:3, 11:14, 15:3, 16:23, 18:16, 23:3, 24:8, 26:21, 29:9, 29:13, 35:15
**nobody** [1] - 23:2
**noncompliance** [1] - 25:12
**none** [3] - 10:11, 17:24
**noninfringing** [1] - 34:18
**nonsense** [1] - 24:3
**normal** [2] - 54:25, 57:2
**normally** [1] - 59:9
**noted** [1] - 55:17
**nothing** [3] - 21:16, 24:14, 58:17
**notice** [1] - 21:8
**notices** [1] - 47:14
**notion** [3] - 10:25, 45:1, 46:23
**notwithstanding** [1] - 4:5
**November** [23] - 5:23, 9:14, 12:14, 21:7, 21:22, 22:1, 22:6, 22:13, 25:9, 30:4, 30:12, 32:6, 33:5, 37:19, 39:23, 42:23, 48:12, 49:14, 50:24, 53:22, 54:19, 54:20, 56:1
**number** [11] - 2:6, 8:16, 18:19, 33:14, 36:15, 44:6, 45:3, 48:15, 50:2, 53:16, 58:22
**numbered** [1] - 27:12
**numeral** [2] - 7:25, 8:1
**nutshell** [1] - 17:15

**O**

**objection** [3] - 3:15, 49:11, 54:2
**obviously** [3] - 4:24, 37:21, 52:8
**occurred** [1] - 10:24
**oddity** [1] - 29:8
**odds** [1] - 11:3
**OF** [2] - 1:1, 1:12

**offer** [2] - 43:15, 55:4
**offered** [1] - 31:14
**officer** [1] - 11:21
**Official** [2] - 1:23, 61:15
**often** [2] - 3:6
**Oil** [1] - 45:8
**once** [2] - 13:1, 59:20
**one** [38] - 6:22, 7:1, 11:9, 11:16, 13:14, 14:7, 14:21, 17:21, 18:8, 18:14, 18:15, 18:16, 21:3, 24:5, 24:21, 26:10, 27:18, 35:23, 36:15, 38:5, 38:14, 39:14, 39:25, 43:4, 43:8, 46:3, 47:2, 47:19, 49:2, 50:2, 50:5, 50:21, 52:9, 53:8, 57:16, 57:21, 58:1
**ongoing** [2] - 7:16, 24:15
**online** [1] - 43:9
**open** [3] - 19:15, 24:1, 25:10
**operate** [1] - 21:21
**operations** [2] - 6:19, 25:5
**opinion** [1] - 29:13
**oppose** [1] - 60:3
**opposed** [1] - 54:14
**opposite** [1] - 27:2
**opposition** [1] - 33:14
**Oracle** [43] - 2:5, 2:10, 2:13, 4:2, 5:19, 6:21, 7:6, 8:10, 9:7, 11:4, 15:5, 16:5, 16:24, 20:2, 20:12, 25:3, 27:21, 27:24, 27:25, 28:3, 28:6, 28:13, 28:14, 29:24, 34:8, 35:20, 36:4, 36:17, 38:2, 40:23, 41:12, 41:25, 42:22, 43:22, 47:21, 47:25, 50:15, 54:17, 55:18, 56:10, 58:16, 58:24
**ORACLE** [1] - 1:4
**Oracle's** [4] - 17:10, 26:24, 27:7, 28:11
**order** [22] - 20:11, 21:14, 28:5, 28:6, 31:17, 32:1, 32:5, 40:16, 42:13, 42:24, 44:20, 47:8, 48:25, 49:13, 51:21, 51:24, 52:3, 55:22, 56:14, 57:10, 57:19, 60:16
**ordered** [1] - 47:19

**ordinary** [1] - 37:25
**original** [2] - 10:3, 35:23
**originally** [1] - 52:19
**otherwise** [1] - 37:6
**ought** [1] - 54:6
**overbreadth** [1] - 4:6
**override** [1] - 18:13
**own** [5] - 19:5, 25:23, 28:18, 28:19, 28:23

**P**

**P.M** [1] - 2:1
**packet** [1] - 26:23
**page** [10] - 18:3, 18:5, 18:6, 18:20, 25:18, 27:9, 28:9, 46:21, 53:1, 53:3
**pages** [3] - 8:11, 10:21, 17:5
**pair** [1] - 21:16
**paper** [1] - 6:23
**papers** [4] - 5:7, 5:20, 11:1, 31:2
**paragraph** [4] - 4:16, 19:1, 19:17, 25:18, 28:9, 46:22, 52:17, 52:24
**parceling** [1] - 34:22
**part** [13] - 3:21, 4:20, 8:4, 8:20, 15:3, 29:22, 35:25, 36:2, 38:1, 40:5, 40:16, 44:4, 49:25
**particular** [2] - 10:23, 37:25
**parties** [7] - 2:11, 2:13, 30:25, 34:18, 58:19, 60:1, 60:14
**partner** [1] - 2:12
**party** [1] - 3:7
**past** [1] - 42:12
**patches** [1] - 33:14
**pattern** [2] - 24:24, 46:10
**pause** [1] - 23:11
**pay** [1] - 4:14
**paying** [1] - 29:21
**pending** [5] - 14:24, 15:9, 17:1, 42:11, 60:11
**people** [3] - 39:8, 39:9, 53:8
**PeopleSoft** [4] - 18:24, 18:25, 19:3, 25:21
**per** [1] - 4:18
**percentage** [1] - 46:9
**perform** [1] - 57:1

**perhaps** [1] - 49:12
**period** [8] - 8:16, 21:11, 21:25, 22:5, 25:13, 36:23, 52:17
**permanent** [2] - 3:25, 18:7
**permission** [3] - 55:13, 57:1, 58:5
**permit** [1] - 60:13
**permitted** [4] - 11:14, 49:21, 54:18, 55:3
**PERRY** [82] - 1:20, 3:15, 5:1, 5:9, 5:12, 5:14, 5:17, 5:22, 6:3, 7:4, 7:9, 7:13, 7:22, 8:7, 13:4, 13:7, 14:17, 14:19, 14:24, 15:9, 15:13, 15:20, 15:24, 16:1, 16:11, 16:14, 17:4, 17:7, 19:25, 20:6, 24:25, 25:10, 26:1, 26:5, 26:11, 26:14, 26:17, 26:20, 27:10, 27:13, 27:17, 28:16, 28:20, 29:1, 29:6, 29:17, 29:20, 30:6, 30:14, 31:14, 31:19, 31:22, 37:18, 37:20, 37:24, 38:10, 40:1, 40:13, 40:19, 41:2, 41:7, 41:16, 41:24, 42:7, 43:13, 48:16, 48:20, 48:23, 53:20, 53:25, 54:4, 54:10, 58:1, 58:12, 58:24, 59:3, 59:17, 59:23, 60:6, 60:9, 60:22, 61:8
**Perry** [16] - 2:18, 5:1, 9:5, 9:6, 10:8, 12:25, 17:24, 19:22, 24:14, 24:22, 33:4, 37:12, 39:25, 46:2, 48:14, 48:15
**Perry's** [1] - 19:8
**persons** [3] - 38:16, 38:17, 38:18
**phases** [1] - 5:3
**phone** [1] - 2:22
**phonetic** [1] - 49:5
**piece** [1] - 6:11
**pieces** [1] - 13:10
**place** [3] - 7:24, 22:24, 37:3
**places** [1] - 27:25
**plaintiff's** [1] - 2:8
**plaintiffs** [1] - 1:6
**PLAINTIFFS** [1] - 1:15
**plan** [5] - 57:4, 57:18, 57:19, 60:15, 60:16

**planned** [2] - 36:18, 36:21
**pleadings** [1] - 11:15
**plus** [1] - 32:14
**Pocker** [19] - 2:11, 9:2, 14:19, 15:17, 16:21, 17:19, 19:13, 25:19, 26:11, 26:20, 28:8, 28:23, 31:10, 31:15, 31:20, 38:22, 53:20, 55:5, 58:6
**POCKER** [102] - 1:15, 2:10, 9:11, 9:19, 10:1, 10:15, 10:20, 10:23, 11:13, 11:19, 12:3, 12:12, 12:22, 13:18, 13:20, 13:22, 13:25, 14:6, 14:12, 17:21, 17:23, 18:4, 18:9, 18:15, 18:20, 18:23, 19:1, 19:7, 19:14, 19:20, 20:9, 21:3, 21:6, 21:11, 21:20, 22:2, 22:8, 22:14, 23:2, 23:15, 24:5, 32:10, 32:12, 32:21, 33:1, 33:19, 33:23, 34:3, 35:8, 37:1, 38:24, 39:3, 43:3, 43:15, 43:19, 43:25, 44:2, 44:8, 44:10, 44:12, 44:16, 44:22, 44:25, 45:6, 45:11, 45:16, 45:18, 45:25, 46:12, 46:15, 46:19, 47:10, 47:22, 47:24, 49:10, 49:17, 49:21, 50:5, 50:10, 50:14, 50:22, 51:3, 51:14, 51:25, 52:5, 52:7, 52:11, 52:15, 52:23, 53:1, 53:12, 53:14, 55:6, 55:11, 55:13, 56:2, 56:25, 57:10, 59:5, 59:9, 61:1, 61:7
**point** [14] - 5:24, 14:5, 14:6, 22:14, 26:1, 27:20, 29:24, 30:9, 30:10, 33:1, 36:6, 39:11, 46:19, 55:21
**pointed** [2] - 24:13, 25:19
**points** [2] - 6:2, 24:25
**policies** [1] - 47:3
**POLITO** [1] - 1:15
**Polito** [1] - 2:13
**portion** [1] - 19:7
**pose** [1] - 49:23
**position** [13] - 7:18,

12:23, 15:5, 15:20, 16:15, 17:15, 22:9, 23:1, 26:24, 28:11, 28:14, 29:17, 51:9
**positions** [1] - 17:24
**possible** [4] - 8:4, 36:19, 36:22, 51:3
**possibly** [1] - 56:14
**post** [1] - 21:22
**potential** [1] - 46:25
**potentially** [2] - 35:18, 36:6, 47:12
**practices** [8] - 5:18, 6:7, 12:4, 25:5, 40:8, 40:10, 40:12, 41:7
**precise** [2] - 27:25, 40:14
**predicate** [2] - 17:9, 28:3
**preempting** [1] - 24:6
**prejudge** [1] - 27:22
**prelude** [1] - 17:20
**premise** [2] - 12:8, 17:9
**prepare** [3] - 19:2, 25:20, 53:10
**prepared** [1] - 59:15
**present** [6] - 2:19, 6:19, 32:6, 37:9, 39:5
**president** [1] - 3:23
**pretrial** [1] - 32:1
**pretty** [3] - 3:4, 35:4, 39:24
**previous** [1] - 27:25
**privilege** [4] - 37:21, 47:6, 47:11, 47:18
**privileged** [1] - 47:11
**problem** [11] - 10:2, 10:15, 20:9, 20:23, 21:3, 33:13, 37:21, 39:25, 41:4, 55:19, 59:24
**problems** [2] - 12:9, 22:10
**proceed** [1] - 57:11
**proceeding** [10] - 17:9, 17:14, 24:18, 24:19, 30:19, 30:20, 30:21, 41:12, 42:3, 42:6
**proceedings** [1] - 61:12
**process** [23] - 4:15, 5:6, 6:6, 6:16, 7:15, 8:19, 9:20, 11:10, 23:21, 23:22, 32:14, 37:15, 38:19, 40:5, 41:21, 41:22, 50:15, 52:8, 52:12, 56:17

**processes** [13] - 4:2, 4:4, 4:8, 4:12, 6:6, 10:25, 36:17, 50:3, 50:4, 50:8, 50:9, 50:10, 50:23
**produce** [3] - 38:8, 46:6, 47:8, 49:13
**produced** [1] - 42:21
**producing** [1] - 37:13
**product** [2] - 18:23, 45:8
**production** [10] - 13:12, 36:12, 36:15, 38:9, 42:15, 49:7, 50:1, 53:19, 57:3, 57:7
**productive** [1] - 34:1
**products** [1] - 4:3
**professionals** [1] - 46:4
**programs** [1] - 44:21
**prohibits** [1] - 44:16
**pronouncements** [1] - 24:11
**pronounces** [1] - 26:17
**pronouncing** [1] - 26:15
**proof** [2] - 33:10, 34:18
**property** [1] - 7:7
**proposal** [1] - 33:25
**proposed** [4] - 37:5, 51:16, 54:21, 60:14
**proposing** [1] - 31:10
**proposition** [2] - 16:2, 31:4
**protecting** [1] - 7:7
**protections** [1] - 41:16
**protective** [7] - 20:11, 21:14, 51:21, 51:23, 52:3, 55:22
**prove** [4] - 25:8, 32:4, 32:23, 39:6
**provide** [3] - 27:1, 48:23, 50:16
**provided** [3] - 44:5, 48:9, 53:22
**provides** [1] - 28:8
**providing** [1] - 49:11
**public** [1] - 3:16
**public's** [1] - 58:20
**pull** [1] - 18:12
**pulled** [1] - 18:11
**pumping** [1] - 36:3
**purpose** [1] - 59:18
**put** [2] - 26:6, 26:23
**puts** [1] - 59:24
**putting** [1] - 36:4

## Q

**quick** [1] - 24:25
**quite** [1] - 32:13
**quote** [1] - 20:16
**quoted** [2] - 11:15, 27:24
**quoting** [3] - 3:23, 18:13, 21:18

## R

**raise** [1] - 33:13
**raised** [2] - 16:24, 33:3
**random** [1] - 46:8
**rapidly** [1] - 25:7
**rashly** [1] - 58:6
**rather** [4] - 20:25, 26:7, 34:6, 38:3
**Ravin** [1] - 18:8
**reaches** [1] - 35:4
**read** [2] - 43:8, 43:10
**read-only** [2] - 43:8, 43:10
**Reagan** [1] - 20:17
**real** [3] - 17:17, 54:1, 54:2
**realize** [1] - 16:10
**really** [10] - 3:11, 8:7, 23:22, 30:6, 32:22, 33:3, 34:6, 41:12, 50:19, 56:18
**reason** [3] - 14:20, 40:14, 54:2
**reasonable** [2] - 24:24, 39:25
**reasons** [2] - 28:12, 35:1
**receive** [3] - 38:25, 45:1, 45:5
**recommend** [2] - 56:16, 57:17
**record** [6] - 2:9, 3:11, 3:22, 26:6, 58:17, 61:12
**recreate** [1] - 11:9
**red** [1] - 23:15
**redoing** [1] - 20:25
**refer** [1] - 5:5
**refers** [1] - 6:25
**refuses** [1] - 20:12
**regarding** [1] - 32:16
**regulatory** [1] - 44:6
**rejected** [3] - 24:9, 26:22, 26:25
**related** [2] - 39:23, 42:21
**relationships** [1] - 30:3

**relevance** [1] - 22:4
**relevant** [7] - 22:5, 36:24, 37:1, 37:7, 37:8, 45:4, 46:24
**relief** [1] - 23:21
**remains** [1] - 7:17
**remedy** [2] - 35:11, 36:7
**remember** [5] - 47:13, 51:22, 53:9, 53:13, 58:15
**remote** [3] - 8:9, 13:8, 44:19
**Reno** [3] - 1:24, 17:3, 17:4
**reopen** [1] - 16:18
**reopening** [1] - 34:21
**replacement** [1] - 41:8
**reply** [1] - 26:22
**report** [1] - 56:23
**Reporter** [2] - 1:23, 61:15
**representation** [1] - 20:16
**representations** [3] - 21:17, 34:6, 34:8
**Representations** [1] - 27:7
**representing** [1] - 2:13
**reproduce** [2] - 19:2, 25:20
**request** [7] - 33:14, 36:15, 37:25, 38:9, 43:3, 45:3, 53:18
**requesting** [1] - 3:22
**requests** [10] - 24:23, 36:12, 46:24, 49:7, 55:8, 55:11, 55:14, 56:11, 57:3, 57:6
**require** [2] - 4:1, 14:13
**required** [2] - 47:13, 47:18
**requires** [1] - 33:3
**requiring** [1] - 4:13
**resolved** [1] - 17:25
**resources** [1] - 43:9
**respect** [5] - 33:16, 34:12, 46:20, 46:23, 47:12
**respond** [1] - 3:10
**response** [8] - 22:20, 36:20, 37:15, 37:16, 47:4, 50:24, 59:10, 59:18
**response...including** [1] - 38:21
**responsibility** [1] - 38:21
**rest** [2] - 19:11, 44:13

**restate** [1] - 54:17
**restrictions** [1] - 46:22
**restricts** [1] - 48:5
**result** [3] - 10:20, 30:21, 32:12
**revelation** [1] - 48:10
**revisit** [2] - 40:19, 44:23
**reworking** [1] - 5:18
**Richard** [1] - 2:11
**RICHARD** [1] - 1:15
**Riley** [1] - 2:20
**RIMINI** [1] - 1:8
**Rimini** [115] - 2:6, 2:18, 2:21, 3:10, 3:13, 3:20, 4:1, 4:3, 4:13, 4:17, 4:22, 4:25, 5:2, 6:5, 6:18, 7:5, 7:20, 7:25, 8:1, 8:5, 8:13, 8:17, 8:18, 8:20, 10:17, 10:18, 12:5, 12:8, 12:10, 12:23, 13:12, 13:25, 14:7, 14:8, 14:13, 14:21, 15:2, 15:6, 16:3, 16:10, 16:15, 17:10, 17:25, 18:7, 19:2, 19:9, 19:24, 20:5, 20:8, 20:11, 20:12, 20:24, 21:2, 21:7, 21:13, 21:25, 22:2, 22:15, 22:22, 23:16, 23:20, 23:22, 24:6, 25:20, 26:12, 26:13, 26:14, 26:16, 26:19, 26:20, 27:20, 28:14, 28:17, 28:20, 29:2, 32:6, 32:16, 34:5, 34:12, 34:15, 36:3, 36:18, 37:14, 39:3, 40:4, 43:4, 43:9, 43:16, 43:21, 44:5, 46:22, 47:3, 47:14, 48:2, 50:2, 50:7, 51:13, 55:18, 55:20, 55:21, 55:22, 55:23, 56:6, 56:7, 58:15, 58:25
**Rimini's** [13] - 4:20, 6:10, 8:22, 11:1, 22:9, 23:10, 28:18, 28:23, 36:17, 38:19, 39:18, 39:21, 42:21
**risk** [2] - 36:4, 57:16
**road** [2] - 34:21, 52:9
**rock** [1] - 22:23
**Roman** [2] - 7:25, 8:1
**Ronald** [1] - 20:17
**round** [1] - 31:1
**rule** [2] - 24:2, 33:21

**ruled** [2] - 27:5, 28:3
**ruling** [5] - 5:14, 49:7, 49:25, 54:4, 54:16
**Ruling** [2] - 27:11, 27:13
**rulings** [1] - 14:13
**run** [1] - 57:16
**runaround** [1] - 33:7
**running** [1] - 10:9

### S

**sake** [1] - 9:4
**sample** [3] - 46:9, 46:18, 60:14
**sampling** [5] - 20:20, 46:5, 46:14, 47:2, 56:17
**save** [1] - 57:24
**scenario** [1] - 48:12
**scheduling** [3] - 57:5, 57:19, 60:16
**Schiller** [2] - 2:11, 2:12
**scope** [4] - 35:2, 43:7, 51:15, 54:7
**scouting** [1] - 56:15
**scratch** [1] - 6:24
**sea** [1] - 12:23
**seal** [14] - 3:4, 3:7, 3:8, 3:18, 39:20, 58:3, 58:7, 58:9, 58:14, 58:25, 59:15, 60:3, 60:5, 60:8
**sealed** [6] - 3:12, 3:14, 58:19, 58:22, 59:6, 59:13
**sealing** [1] - 60:4
**Second** [2] - 27:11, 27:13
**second** [16] - 6:23, 14:21, 15:11, 16:5, 16:19, 16:24, 27:22, 28:12, 35:6, 35:20, 36:6, 41:11, 41:13, 42:10, 44:3, 51:17
**section** [1] - 52:21
**secured** [1] - 55:1
**see** [32] - 3:22, 3:23, 7:9, 7:23, 11:1, 20:19, 22:18, 24:23, 25:16, 27:8, 31:10, 31:20, 33:20, 34:14, 36:13, 37:11, 38:15, 38:25, 39:3, 45:23, 46:10, 46:17, 47:2, 47:16, 49:9, 49:24, 54:22, 56:17, 57:13, 58:22, 59:24
**seeing** [1] - 21:21

**seek** [1] - 33:10
**seeking** [2] - 46:15, 48:5
**seeks** [2] - 28:3, 40:23
**seem** [3] - 12:7, 56:4, 59:5
**send** [2] - 45:8, 49:5
**sending** [1] - 45:19
**senior** [1] - 3:23
**sense** [2] - 8:14, 36:22
**sent** [2] - 46:7, 47:14
**September** [1] - 34:8
**series** [1] - 4:7
**serve** [2] - 55:14, 57:3
**server** [6] - 14:25, 19:16, 19:23, 28:23, 28:25, 29:4
**servers** [5] - 13:13, 13:14, 15:6, 28:18, 28:19
**service** [1] - 32:7
**servicing** [1] - 43:21
**set** [6] - 2:4, 6:11, 31:11, 31:25, 32:15, 52:17
**Seth** [1] - 18:7
**seven** [1] - 17:1
**shall** [2] - 19:2, 25:20
**SharePoint** [2] - 43:16, 43:18
**short** [2] - 27:4, 55:24
**shortly** [1] - 42:16
**shot** [1] - 31:24
**show** [4] - 23:13, 24:20, 25:9, 47:20
**showing** [1] - 37:16
**shows** [2] - 20:15, 47:2
**side** [4] - 3:9, 9:2, 26:4, 58:6
**signed** [1] - 35:22
**simplest** [1] - 57:18
**Simultaneous** [1] - 9:24
**single** [1] - 25:13
**sit** [3] - 17:18, 31:10, 31:14
**sitting** [1] - 17:2
**situation** [1] - 35:13
**six** [1] - 35:14
**sleight** [1] - 14:8
**slide** [6] - 26:6, 26:23, 27:5, 27:10, 27:11, 34:5
**slides** [1] - 27:25
**smoking** [1] - 23:8
**snapshot** [1] - 52:13
**so-called** [2] - 6:21, 41:8

**software** [11] - 14:2, 19:3, 25:21, 36:17, 42:22, 43:22, 44:21, 47:21, 47:25, 50:12
**solely** [2] - 4:20, 32:8
**solve** [1] - 10:1
**solved** [3] - 12:9, 13:11, 22:10
**someone** [2] - 18:18, 47:7
**sometimes** [1] - 59:5
**somewhat** [1] - 9:8
**somewhere** [1] - 17:2
**sorry** [8] - 5:11, 9:6, 18:11, 27:6, 44:2, 51:25, 53:19, 58:1
**sort** [5] - 17:20, 45:23, 54:6, 54:22, 59:10
**sought** [2] - 6:4, 20:10
**sounds** [1] - 31:9
**source** [5] - 39:22, 41:1, 41:5, 41:20, 42:24
**South** [1] - 1:24
**specific** [2] - 19:5, 25:23
**specifically** [2] - 9:13, 33:13
**spend** [3] - 30:22, 31:24, 32:13
**spending** [2] - 10:11, 20:25
**spent** [1] - 30:25
**spoken** [1] - 58:6
**sport** [1] - 50:9
**spring** [1] - 51:5
**squarely** [1] - 41:10
**stages** [1] - 39:14
**stand** [3] - 7:10, 7:11, 38:10
**standard** [2] - 23:6, 39:6
**start** [6] - 11:9, 12:8, 12:14, 24:22, 52:7, 52:11
**started** [2] - 13:1, 45:14
**starting** [1] - 11:23
**starts** [1] - 6:24
**state** [2] - 2:8, 37:7
**State** [1] - 50:2
**statements** [1] - 23:10
**STATES** [1] - 1:1
**stay** [8] - 3:22, 4:25, 6:4, 12:15, 13:2, 35:14, 52:19
**stayed** [1] - 6:10
**step** [1] - 11:9
**STEPHEN** [1] - 1:20
**steps** [1] - 13:5

**still** [6] - 23:19, 23:23, 24:15, 25:16, 55:25, 56:19
**stipulate** [6] - 32:9, 55:21, 56:6, 56:20, 56:21, 57:23
**stipulated** [2] - 31:11, 32:15
**stood** [1] - 15:17
**straightforward** [2] - 3:5, 34:4
**straw** [1] - 38:6
**Street** [18] - 1:24, 2:6, 2:18, 2:21, 5:2, 14:8, 18:7, 19:2, 19:9, 23:22, 25:20, 32:16, 39:3, 43:16, 43:21, 46:22, 47:14, 48:2
**STREET** [1] - 1:8
**Street's** [1] - 12:23
**strictures** [1] - 18:23
**structure** [1] - 56:12
**stuck** [2] - 22:23, 35:13
**stuff** [9] - 33:15, 35:21, 43:24, 45:19, 48:7, 53:5, 55:18, 58:25, 60:25
**submission** [2] - 17:10, 60:11
**submit** [2] - 29:25, 55:1
**subpoenas** [1] - 20:3
**substance** [1] - 25:2
**sufficient** [3] - 11:11, 38:17, 38:18
**summary** [6] - 5:14, 14:24, 15:10, 16:3, 17:1, 41:10
**super** [1] - 33:2
**super-complicated** [1] - 33:2
**supplement** [1] - 60:11
**support** [16] - 4:2, 31:12, 31:13, 36:17, 36:18, 38:19, 42:22, 50:3, 50:4, 50:8, 50:10, 50:14, 50:15, 50:16, 50:23
**suppose** [1] - 20:23
**supposed** [1] - 15:15
**surveying** [1] - 56:16
**suspicion** [1] - 23:8
**system** [7] - 11:8, 13:8, 25:22, 25:23, 39:8, 54:14
**systems** [9] - 5:4, 6:10, 6:11, 6:20, 10:10, 14:9, 19:4,

19:5, 25:5

### T

**tailored** [1] - 21:9
**talks** [1] - 46:22
**target** [1] - 21:11
**tax** [3] - 33:15, 44:6, 44:13
**technique** [1] - 20:20
**tee** [1] - 31:6
**Telephonically** [1] - 1:17
**tens** [1] - 30:25
**terabytes** [2] - 40:2
**terms** [4] - 24:16, 40:11, 48:8
**test** [3] - 23:5, 24:11, 31:4
**testify** [1] - 39:9
**testing** [2] - 6:9, 8:9
**Texaco** [1] - 45:9
**THE** [189] - 1:2, 1:15, 1:20, 2:4, 2:15, 2:22, 2:24, 3:3, 3:17, 5:8, 5:11, 5:13, 5:16, 5:21, 6:1, 7:3, 7:7, 7:10, 7:21, 7:23, 9:1, 9:18, 9:22, 9:25, 10:6, 10:19, 10:22, 11:5, 11:18, 11:20, 12:11, 12:13, 12:24, 13:6, 13:16, 13:19, 13:21, 13:24, 14:4, 14:11, 14:15, 14:18, 14:23, 15:8, 15:12, 15:19, 15:23, 15:25, 16:9, 16:13, 17:3, 17:6, 17:17, 17:22, 18:2, 18:6, 18:11, 18:18, 18:22, 18:25, 19:6, 19:12, 19:15, 19:22, 20:5, 20:7, 20:18, 21:5, 21:10, 21:19, 21:24, 22:4, 22:12, 22:23, 23:14, 24:4, 24:21, 25:6, 25:17, 26:4, 26:8, 26:13, 26:15, 26:19, 27:8, 27:11, 27:15, 28:13, 28:19, 28:22, 29:5, 29:16, 29:18, 30:4, 30:10, 31:9, 31:17, 31:20, 31:23, 32:11, 32:18, 32:22, 33:18, 33:20, 34:2, 35:7, 36:10, 37:11, 37:19, 37:23, 38:7, 38:14, 39:2, 39:12, 40:10, 40:17, 40:22,

41:3, 41:15, 41:18, 42:5, 42:12, 43:6, 43:14, 43:18, 43:23, 44:1, 44:3, 44:9, 44:11, 44:14, 44:19, 44:24, 45:5, 45:10, 45:12, 45:17, 45:23, 46:1, 46:13, 46:17, 47:1, 47:17, 47:23, 48:14, 48:19, 48:22, 48:25, 49:15, 49:18, 49:23, 50:7, 50:13, 50:19, 51:1, 51:7, 51:19, 52:2, 52:6, 52:10, 52:14, 52:21, 52:25, 53:2, 53:13, 53:18, 53:24, 54:3, 54:9, 55:4, 55:10, 55:12, 55:25, 56:8, 57:4, 57:12, 58:8, 58:13, 59:2, 59:8, 59:12, 59:22, 59:24, 60:7, 60:10, 60:23, 61:2, 61:4, 61:9
**therefore** [2] - 17:14, 25:15
**they've** [15] - 9:13, 14:9, 19:15, 19:19, 19:20, 23:1, 23:23, 24:8, 33:11, 47:16, 48:9, 49:13, 49:14, 50:11, 50:20
**thinks** [1] - 31:20
**thirdly** [1] - 35:25
**thirty** [1] - 60:21
**thousands** [4] - 17:4, 17:5, 31:2, 32:14
**three** [2] - 20:2, 35:16
**THURSDAY** [1] - 2:1
**timing** [1] - 54:8
**tipped** [1] - 27:21
**title** [1] - 38:21
**to...since** [1] - 39:23
**today** [11] - 2:18, 16:8, 21:16, 23:21, 24:12, 24:15, 28:7, 29:24, 53:6, 59:15, 59:17
**together** [4] - 46:2, 48:17, 54:6, 60:15
**took** [2] - 13:11, 28:14
**tools** [1] - 44:21
**track** [1] - 43:11
**tracks** [1] - 22:22
**Transcribed** [1] - 1:23
**transcript** [1] - 61:12
**TRANSCRIPT** [1] - 1:12
**trial** [2] - 5:15, 14:2
**tried** [3] - 32:22, 34:23
**true** [10] - 9:6, 9:8,

9:10, 10:4, 10:8, 10:12, 12:1, 12:12
**trust** [2] - 12:18, 20:17
**truth** [1] - 27:2
**try** [4] - 6:2, 39:13, 56:12, 58:10
**trying** [15] - 9:23, 10:8, 12:15, 20:18, 24:6, 24:7, 24:22, 27:21, 28:6, 36:25, 41:12, 43:23, 54:14, 56:13, 58:13
**turns** [1] - 6:22
**two** [13] - 2:13, 5:3, 5:18, 5:25, 13:5, 13:9, 24:25, 25:13, 27:8, 43:16, 45:1, 48:20, 58:4
**two-year** [1] - 25:13
**type** [6] - 9:16, 39:6, 45:18, 46:5, 46:14, 56:17

## U

**ultimately** [2] - 12:10, 46:15
**uncertainty** [1] - 23:24
**under** [9] - 8:5, 11:14, 11:16, 13:25, 14:2, 27:8, 45:11, 59:14, 60:10
**undertaken** [2] - 5:3, 7:15
**undo** [1] - 28:7
**unintelligible** [1] - 2:23
**unintelligible)** [1] - 17:16
**Union** [1] - 45:7
**UNITED** [1] - 1:1
**unlawful** [2] - 28:4, 40:24
**unless** [1] - 33:9
**up** [30] - 3:4, 4:18, 10:8, 12:7, 15:17, 16:5, 17:3, 18:2, 18:12, 20:19, 21:17, 22:3, 23:1, 24:18, 24:19, 31:7, 32:4, 32:16, 32:19, 34:13, 35:8, 35:19, 45:8, 46:8, 47:2, 56:17, 56:22, 57:17, 58:10, 60:15
**update** [1] - 48:11
**updates** [9] - 6:14, 6:22, 33:15, 44:7, 44:13, 48:24, 49:14, 50:16, 53:21

**upheld** [1] - 23:17
**USA** [2] - 1:4, 2:5
**useful** [1] - 56:18

## V

**vacated** [1] - 18:16
**vague** [2] - 22:25, 23:1
**vagueness** [1] - 4:6
**valid** [1] - 9:17
**Vegas** [1] - 1:7
**VEGAS** [1] - 2:1
**verification** [1] - 20:16
**verify** [5] - 9:8, 20:17, 20:20, 20:21, 24:11
**version** [4] - 8:2, 12:5, 18:17, 29:22
**versus** [2] - 2:6, 34:5
**vice** [1] - 3:23
**vice-president** [1] - 3:23
**violate** [2] - 12:5, 40:11
**violation** [12] - 14:7, 19:17, 22:7, 22:8, 29:3, 30:7, 30:18, 39:1, 42:2, 46:16, 46:25, 48:8
**violations** [1] - 14:7
**Virginia** [1] - 1:24
**vs** [1] - 1:7

## W

**wait** [1] - 12:11
**walk** [1] - 27:3
**wants** [2] - 3:13, 9:7
**warranted** [1] - 30:19
**ways** [1] - 20:22
**weeds** [1] - 36:1
**welcome** [3] - 2:15, 2:22, 61:1
**WEST** [1] - 1:20
**West** [1] - 2:17
**whatnot** [1] - 56:11
**white** [1] - 6:23
**whiteboard** [6] - 6:24, 11:24, 15:19, 15:21, 45:14, 45:21
**WHITTAKER** [1] - 1:20
**Whittaker** [1] - 2:19
**whole** [8] - 9:4, 11:10, 12:16, 33:1, 33:17, 40:20, 46:11, 52:8
**willing** [2] - 55:21, 56:6
**wind** [1] - 45:8
**winds** [2] - 24:18, 24:19
**WinStream** [1] - 48:3

**wish** [1] - 60:24
**witnesses** [1] - 31:3
**word** [2] - 3:1, 24:22
**words** [3] - 6:20, 16:4, 30:17
**works** [2] - 19:3, 25:21
**world** [1] - 61:1
**worrying** [1] - 60:19
**wrap** [1] - 58:10
**wrote** [1] - 47:3

## Y

**year** [4] - 4:18, 25:13, 35:14
**years** [3] - 8:10, 20:2, 35:22
**yourself** [1] - 29:6

## Z

**ZACHARY** [1] - 1:16
**Zachary** [1] - 2:14