BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:     702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:     (202) 237-2727
Facsimile:     (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
    (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:     510.874.1000
Facsimile:     510.874.1460
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:     415.442.1000
Facsimile:     415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     650.506.4846
Facsimile:     650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,*
*Oracle America, Inc., and Oracle*
*International Corp.*

GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL G. LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS
PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

*Attorneys for Defendants Rimini Street, Inc.*
*and Seth Ravin.*

UNITED STATE DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, | CASE NO. 2:10-CV-0106-LRH-VCF |
| Plaintiffs, | **JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION** |
| v. | **HEARING REQUESTED** |
| RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, | |
| Defendants. | **REDACTED** |

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

I.      **INTRODUCTION**

Pursuant to the Court's order (ECF No. 1215), Plaintiffs Oracle America, Inc. and Oracle International Corp. (collectively, "Oracle") and Defendants Rimini Street, Inc. and Seth Ravin (collectively, "Rimini"; all parties collectively, "Parties," any party, "Party") submit this Proposed Discovery Plan.  The Parties met and conferred by written correspondence dated April 11, April 17, April 22, April 24, and April 30, 2019 (Exs. 1-5), and by teleconferences on April 18 and May 1.  After meeting and conferring, the Parties have fundamental disagreements regarding a proposed discovery plan and schedule.  The Parties request guidance from the Court regarding their competing proposals.  Rimini requests that the Court set a hearing at its convenience to resolve the Parties' competing proposals.  The Parties each submit their own Proposed Scheduling Order.

A.      **Oracle's Statement**

Consistent with the Court's direction, Oracle proposes an injunction-related discovery plan with specific discovery caps, stages, and a final date (September 30, 2019) for Oracle's filing of any contempt motion.  April 4, 2019 Hrg. Tr. at 57:6-7, 60:15-18 ("THE COURT: … how many interrogatories, how many requests for production … give me a discovery plan and scheduling order that includes a discovery cutoff date and then a date for filing a contempt motion").  In contrast, Rimini's proposal of elongated staging with limited discovery and no dates certain is a recipe for delay and uncertainty.

The Court's direction, and Oracle's resulting proposal, flow from the significant questions regarding Rimini's compliance with the Injunction now in force.  Oracle has repeatedly put Rimini on notice of practices that violate the Injunction.  ECF No. 1201-8 (January 2, 2019 letter to Rimini) at 2 (listing 20 specific practices); ECF No. 1201-10 (January 31, 2019 letter to Rimini) at 2-7 (tying each of the 20 practices to specific language in the Injunction).  Yet Rimini now feigns—unreasonably and plainly for the purpose of delay—that it has no notice or understanding of the practices at issue.

1    Rimini's claim not to understand what conduct Oracle is accusing is particularly

2    disingenuous given Rimini's continuing opposition to Oracle's motion seeking leave to use

3    *Rimini II* discovery in this action, which prevents Oracle from stating how the *Rimini II* discovery

4    indicates *Rimini I* injunction violations.  Rimini continues to oppose Oracle's motion to modify

5    the *Rimini II* discovery protective order to allow Oracle to use *Rimini II* materials in *Rimini I*

6    (contrary to its representations at the April 4 hearing referencing *Rimini II* discovery), which

7    would expedite an assessment of injunction compliance.

8    Continuing its contradictory behavior, in a meet and confer on May 1, Rimini's counsel

9    encouraged Oracle's counsel to put on their "*Rimini II* hat" and send Rimini a letter *using Rimini*

10   *II evidence* to explain how might be violating the injunction, given that some *Rimini II* discovery

11   likely is "squarely at issue" in *Rimini I*.  This is precisely what the *Rimini II* protective order

12   currently bars Oracle from doing.  *Rimini II*, ECF No. 58 ¶ 8(b) (providing that designated

13   materials "shall be used solely for the purposes of preparation for trial, trial of and/or appeal from

14   this Action and no other").

15   Given the Court's prior findings of irreparable harm to Oracle and the inadequacy of

16   monetary damages tied to Rimini's copyright infringement, ECF No. 1164 at 5-7, injunction-

17   related discovery and any contempt motion should occur as soon as possible.  Judge Hicks and

18   the Ninth Circuit denied Rimini's requests to stay the Injunction, and the Injunction therefore

19   became effective on November 5, 2018.  Discovery and any contempt motion will focus on the

20   specific terms of the Injunction and Rimini's practices since November 5, 2018, and there is no

21   reason why the Parties cannot proceed quickly and efficiently. There is also no need to further

22   delay these proceedings or burden the Court with successive motions for leave to conduct further

23   discovery, as Rimini proposes below.

24   During the April 4, 2019 hearing at which the Court granted Oracle's motion for

25   injunction-compliance discovery, Rimini's counsel represented that he understood the Court's

26   ruling and proposed that counsel for the Parties discuss "what's even available, what's

27   burdensome and what's not, and come back to the Court if we have any disputes."  April 4, 2019

28

1     Hearing Tr. at 54:16-24.  Based on that representation, Oracle expected that the Parties would

2     move forward with discovery—not that Rimini would continue to stall that discovery.  Rimini's

3     counsel also admitted at the April 4 hearing that Rimini is using cloud servers (*id.* at 19:22-20:1)

4     and repeatedly (and incorrectly) claimed that Oracle already has lots of discovery from *Rimini II*

5     that it can use to assess injunction compliance (*Rimini II*, ECF No. 1232-1, submitted as Ex. 6 to

6     this submission, listing representations to the Court about *Rimini II* discovery by Rimini's

7     counsel).  In light of those representations, Oracle expected that Rimini would promptly stipulate

8     to its admitted use of cloud servers and stop opposing Oracle's use of *Rimini II* discovery that

9     would expedite resolution of injunction compliance proceedings.

10     However, Rimini is not living up to its representations to the Court.  Instead of working

11     with Oracle to negotiate and streamline discovery, Rimini has continued to obstruct that

12     discovery.  Rimini proposes a schedule that will cause further delay, with no final deadline for

13     any contempt motion.  Rimini continues to base its obstruction on the argument that injunction-

14     related discovery is an improper end-run around *Rimini II*—an argument that the Court rejected in

15     granting discovery.

16     Rimini also (1) refuses to agree to any of the stipulated facts proposed by Oracle (Ex. 5);

17     (2) refuses to expedite any production or responses to Oracle's discovery, insisting instead that

18     discovery should not begin until after the Court enters a Scheduling Order with production not

19     being completed until 60 days after service of initial discovery; (3) refuses to voluntarily provide

20     information needed to assess the feasibility of sampling; and, (4) refuses to provide basic cloud-

21     related discovery that would substantiate its representations at the April 4 hearing that it continues

22     to use cloud notwithstanding the terms of the Injunction.

23     Rimini's arguments regarding the history of this litigation and the relationship with *Rimini*

24     *II* provide no basis to narrow or delay discovery, as explained in the briefs Oracle filed in support

25     of its motion for leave to conduct discovery.  The terms of the Injunction are clear, and Rimini

26     has an obligation to comply with the Injunction.  The pending *Rimini II* litigation provides no

27     basis for Rimini to violate any term in the Injunction.  Oracle also never waived any rights

28

3

1    regarding enforcement of the Injunction, nor did Judge Hicks issue an order that somehow

2    permitted non-compliance by Rimini to extent practices are also at issue in *Rimini II*.  Rimini

3    should comply with the Injunction, and discovery is necessary to assess the full extent of Rimini's

4    non-compliance, irrespective of any of the issues in *Rimini II*.

5         In short, Rimini has provided Oracle with virtually no information relevant to Injunction

6    compliance since the hearing a month ago.  Rimini's approach serves no purpose other than to

7    increase Oracle's costs, delay discovery, and prevent an assessment of Rimini's compliance with

8    the Injunction—the entire point of which is to prevent further irreparable harm to Oracle.

9    Streamlined discovery and a contempt hearing should take place as quickly as possible.  With this

10   joint submission, Oracle proposes a discovery plan and case schedule that will enable just that.

11   Specifically, Oracle has tailored its reduced set of proposed discovery to address the Court's

12   comments during the last hearing, and has proposed an expedited schedule that will allow Oracle

13   to demonstrate non-compliance based on key examples, rather than an exhaustive catalog of

14   Rimini's non-compliance.  Oracle respectfully submits that its proposed approach will most

15   efficiently put an end to Rimini's unlawful conduct and the irreparable, ongoing harm to Oracle.

16        **B.    Rimini's Statement**

17        Rimini proposes moving forward with "limited discovery" in "stages," faithfully

18   following the guidance this Court provided at the April 4, 2019 hearing.  Oracle's proposal, by

19   contrast, ignores those limits; treats this dispute as if the Parties were in the midst of full-blown,

20   limitless fact discovery, and would impose enormous discovery burdens on Rimini—in a case

21   that is *closed*—without any showing by Oracle that Rimini engages in any allegedly

22   contumacious conduct post-injunction.  Oracle is not entitled to such unbounded discovery; its

23   request is extraordinary, and its proposal above flies in the face of this Court's ruling that further

24   discovery should proceed carefully and in stages.

25        Consistent with this Court's direction for there to be "stage[d]" discovery, Rimini

26   proposes a reasonable discovery plan that will proceed in two phases.  *See* April 4, 2019 Hrg. Tr.

27   at 39:13–14 ("THE COURT: … I would like to … try and do this at least in some stages.").  In

28

4

1  the first phase, Oracle will conduct "limited discovery" regarding the changes Rimini made to its

2  software support processes after the injunction went into effect on November 5, 2018.  *See id.* at

3  56:9–15 ("I'm going to grant the motion to—for Oracle to take some limited discovery … I think

4  you should try to structure [the discovery] in a way that, you know, you get the lay of the land

5  without trying to get all the discovery you would possibly need in order to have a contempt

6  hearing, just, you know, do some scouting.").  If the Court so orders, Rimini is ready and willing

7  in Phase 1 to respond to targeted discovery requests (which Rimini sets forth herein, *see infra* at

8  Section III), including a Rule 30(b)(6) deposition.  After that initial "scouting" discovery, if

9  Oracle believes Rimini's post-injunction conduct violates the injunction, Oracle should explain

10  which of Rimini's post-injunction support processes, if any, are contumacious, with specific

11  allegations showing where the processes were adjudicated in *Rimini I*—something it has refused

12  to do to date.  In that event, discovery may proceed to Phase 2, in which the Parties can take

13  further targeted discovery based on the specific post-injunction conduct Oracle accuses as

14  contumacious.  This phased approach faithfully follows the Court's order permitting Oracle

15  "limited discovery" to get the "lay of the land" and "do some scouting," provides an orderly way

16  in which to proceed, and balances the need for focused discovery with the burden of irrelevant

17  and overly broad discovery.  Given that Oracle has not come forward with any evidence of

18  irreparable harm—and in light of Judge Hicks' ruling that "Oracle has not established that it

19  suffered any harm" from Rimini's current support practices (*see* ECF No. 1177 at 4:25–27)—

20  there is no need for Oracle to engage in a burdensome, and virtually limitless, fishing expedition.

21       What Oracle asks the Court for is extraordinary relief—this is not a motion to compel,

22  Oracle has no unfettered right to discovery; the discovery period (indeed, *the case*) has been

23  closed for years.  Discovery to establish contempt of an injunction is generally not appropriate

24  until a complaining party sets forth its allegations regarding the allegedly contumacious conduct,

25  which define the scope of discovery and any subsequent contempt hearing.  *See Rutherford v.*

26  *Baca*, 2009 WL 10653011, at *3 (C.D. Cal. Aug. 4, 2009) (limiting new discovery "to the issues

27  identified in Plaintiffs' motion"); *nCube Corp. v. Seachange Int'l Inc.*, 2010 WL 2266335, at *3

28

5

1   (D. Del. June 4, 2010) (granting "discovery on the contentions alleged in the Contempt Motion").

2   But unlike a typical contempt proceeding in which specific allegations are set forth first,

3   discovery is conducted, and then an evidentiary hearing is held, here, Oracle proposes that it

4   engage in broad discovery to identify a factual basis for contempt—and only then, *after discovery*

5   *is over*, will Oracle identify its allegations to Rimini.  Oracle's proposal puts the proverbial cart

6   before the horse.

7        Oracle claims that it is entitled to this far-reaching discovery because it has "repeatedly

8   put Rimini on notice of practices that violate the Injunction," citing to meet and confer letters.

9   But this is false.  Oracle's letters do not identify any evidence that Rimini has engaged in

10  supposedly contumacious conduct after the injunction went into effect.  Instead of identifying this

11  information for Rimini, Oracle's letters *asked Rimini* whether it engaged in a broad list of 20

12  general practices, many of which related solely to conduct *never at issue* in *Rimini I*—and thus

13  not possibly within the scope of a *Rimini I* injunction.  For example, Oracle asked Rimini whether

14  its processes involve "replicating … update[s] via AFW," but AFW did not exist as part of

15  Rimini's Process 1.0, which was litigated in *Rimini I*.  AFW was created as part of Process 2.0

16  and is squarely at issue in *Rimini II*.

17       In subsequent letter exchanges, Rimini expressed its concern that Oracle was "seeking to

18  expand the scope of the injunction to cover conduct not at issue, and therefore never adjudicated

19  in *Rimini I*," and asked Oracle to "*identify when in* Rimini I *the specific conduct was litigated,*

20  *with supporting citations.*"  Ex. 2 a 4 (emphasis added).  Oracle steadfastly refused.  Then, the

21  afternoon before this Joint Proposed Discovery Plan was to be filed, Oracle stated that "[t]o the

22  extent Rimini continues to access PeopleSoft software on cloud servers in violation of the

23  facilities restriction in Oracle license agreements, that violates the Injunction."  This illustrates

24  Rimini's point.  Whether Rimini's support of clients that host their Oracle software on cloud

25  servers "violat[es]" the "facilities restriction in Oracle license agreements" was ***never adjudicated***

26  or at issue in *Rimini I*.  *See* May 25, 2016 Hrg. Tr. at 143:14–20 (Oracle's counsel acknowledging

27  that "cloud computing is at issue in *Rimini II* and it wasn't at issue in *Rimini I*").  Rather, cloud

28

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

issues are being litigated in *Rimini II*; indeed, this exact question is fully briefed for Judge Hicks in a motion for summary judgment in that case.  *See Rimini II*, ECF No. 917 at 24–29 ("Use of the Cloud Does Not Violate the PeopleSoft 'Facilities' Restriction").  Oracle's request to take discovery on the cloud is a blatant attempt to pull unadjudicated conduct into a contempt proceeding, in violation of black letter law.  *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (an injunction must be "narrowly tailored … to remedy *only the specific harms shown by the plaintiffs*") (emphasis added); *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 & n.1 (8th Cir. 2004) (vacating provision of injunction covering "course materials that were not before the court"); *see also TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 890 (Fed. Cir. 2011) (finding an injunction cannot be enforced when the new conduct is "more than colorably different" from the adjudicated process).

Oracle's position is all the more troubling because Oracle argued to this Court repeatedly that Rimini's revised processes were "irrelevant" to *Rimini I* and successfully convinced the Court to keep those processes out of a *Rimini I* trial where they could be adjudicated by a jury. *See, e.g.*, ECF No. 646 at 5 (Oracle stating that "[t]he legality of the new 2014 model will be the subject of Rimini's new lawsuit [*Rimini II*] … and therefore any evidence related to the 2014 support model is *irrelevant to any liability issue at trial* [in *Rimini I*]." (emphasis added)); *id.* at 1 (Oracle arguing that all "evidence and argument relating to Rimini's alleged new support model" should be "exclude[d]" from *Rimini I*; "*the legality of that purported model will be determined*" in *Rimini II*) (emphasis added)).  Having taking that position, Oracle should now be estopped from arguing that any of those processes violate a *Rimini I* injunction.

Given Oracle's prior insistence that *Rimini II* discovery is "irrelevant" to *Rimini I*, its successful attempt to keep *Rimini II* processes out of a *Rimini I* trial, and the black-letter law that an injunction cannot cover unadjudicated processes, Rimini has opposed Oracle's blanket request to allow all *Rimini II* discovery to be used in *Rimini I*.  Oracle suggests above that Rimini's opposition to Oracle's use of this discovery is somehow disingenuous; in reality, it is Oracle that has flip-flopped on this issue—first insisting that *Rimini II* processes were irrelevant to *Rimini I*,

and now insisting that *Rimini II* processes must be subject to the injunction.  Consistent with its position that *Rimini I* contempt proceedings can only concern conduct that was actually adjudicated in *Rimini I*, Rimini suggested—as a good faith compromise—that Oracle should identify any *specific* evidence from *Rimini II* that it thinks concerns adjudicated conduct that would be prohibited by the injunction and should be admitted in *Rimini I*.  *See* Ex. 4 at 4–5.  It is Rimini's position that no such discovery exists, because Rimini ceased the practices adjudicated in *Rimini I*.  Tellingly, Oracle rejected Rimini's reasonable offer—which would significantly lessen the burden on the Parties and the Court—and continues to complain to this Court that its hands are tied.  *See* Ex. 8.[1]  In reality, Rimini stands ready for Oracle to identify specific documents or other discovery it would like to use.  It is Oracle's burden to justify why it needs this specific discovery, which it refuses to do.  If Oracle were truly being "irreparably harmed" every day, it is difficult to imagine why it would not act on Rimini's invitation.

Thus, despite Rimini's repeated requests, Oracle has never confirmed what specific conduct it thinks Rimini is engaged in post-injunction that was *adjudicated in Rimini I* and that violates the injunction.  In other words, Oracle has not said which of Rimini's *current support practices* are supposedly contumacious, and why.  The practical (and intended) effect of Oracle's obfuscation is that Oracle will seek to take discovery on *every aspect of Rimini's support practices*.  Without any showing of relevance that might sharpen the scope of Oracle's requests, Oracle's unbounded discovery amounts to an unwarranted and burdensome fishing expedition.

Rimini's phased discovery plan, in contrast, follows the Court's direction at the April 4 hearing—focusing on what (as the Court stated) "has changed" since the injunction went into effect.  *See*, *e.g.*, Apr. 4, 2019 Hrg. Tr. at 42:14–17.  The proposal follows the Court's direction, and gives Oracle all the opportunity it needs to determine whether there is a basis for contempt allegations.  It will also streamline this process so that discovery can move more efficiently.  In Phase 1, Oracle can learn what Rimini changed post-injunction.  That should end the matter, as Rimini believes it is in compliance with the injunction.  If Oracle disagrees with Rimini, however,

---

[1]   Oracle submits as Exhibit 7 a supplemental brief that it has sought leave to file in *Rimini II*—which, as of the date of this submission—it has not been granted leave to do.

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

1   Oracle will be in a position to identify specific conduct that it alleges is contumacious and any

2   such allegations that can narrowly tailor the scope of further discovery.  Rimini's proposal has the

3   following advantages:

4        ***First***, Rimini's proposal follows the Court's guidance at the April 4 hearing by starting

5   with less burdensome "scouting" discovery.  Oracle's proposal ignores the Court's guidance and

6   proposes that all discovery be done at once on a significantly compressed schedule.  For example,

7   Oracle proposes that expert discovery—which took over 6 months and involved the analysis of

8   more than 8 terabytes of data in *Rimini II*—be conducted in 3 weeks.[2]  Oracle's proposal also

9   ignores other aspects of the Court's ruling.  For example, the Court stated that interrogatories

10  (with the exception of one) were not warranted at this stage, yet Oracle proposes that Rimini

11  should respond to 12 interrogatories in a 3-month period—half as many as the Parties answered in

12  3 ***years*** of discovery in *Rimini II*.

13       ***Second***, Rimini's staged approach allows Rimini to understand Oracle's claims and

14  Oracle to understand Rimini's post-injunction processes before engaging in the most burdensome

15  discovery.  Rimini has tried to understand Oracle's claims, including offering to stipulate that

16  Oracle could use certain discovery from the *Rimini II* case for purposes of showing Rimini what

17  conduct it alleges to be contumacious, if Oracle would only tell Rimini where the conduct it

18  alleges to be contumacious was litigated in *Rimini I*.  *See* Ex. 4 at 4–5.  Oracle rejected that

19  reasonable proposal, claiming instead that it isn't required to justify its need for *Rimini II*

20  discovery.  *See Rimini II*, ECF No. 1232-1.  Rimini's proposal herein aims to focus the Parties'

21  attention on the specific conduct Oracle contends is contumacious, and avoid an unbounded and

22  burdensome fishing expedition.  Thus, under Rimini's proposal, the Parties can tailor their

23  discovery plan to what Oracle actually accuses, after obtaining initial discovery on Rimini's post-

24  injunction processes.  A staged discovery approach will also allow the Court to schedule motion

25  practice to address threshold legal issues (if they arise, depending on what, if anything, Oracle

26  accuses) before engaging in potentially needless and burdensome discovery.

27  ---

[2]   Indeed, in *Rimini II*, it took several weeks for Rimini's experts just to *load* the unprecedented volume of data
28       produced by one of Oracle's technical experts so that analysis could even begin.

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

*Third*, Oracle's proposed discovery schedule is unworkable for at least the following reasons:

- It fails to follow the Court's direction that discovery should be "limited" (Oracle's requests, including 20 RFPs and 12 unbounded interrogatories, are anything but limited);

- It fails to follow the Court's direction that discovery proceed in "stages";

- Under Oracle's proposal, Rimini will never learn Oracle's allegations until a contempt motion is filed, after discovery is completed—the reverse of a logical procedure—precluding Rimini's ability to serve defensive discovery;

- It is extremely compressed and does not allow sufficient time for Rimini to identify and produce responsive materials, let alone mount a defense;

- It provides Rimini only one week to serve an expert rebuttal report after receiving Oracle's expert report—an especially unworkable proposal given that, until Oracle serves its opening report, Rimini will not know what aspect of its processes Oracle accuses;

- It contemplates completing expert discovery in 3 weeks when expert discovery in *Rimini II* took over 6 months; and

- It seeks 12 interrogatories, with no stated limits on burden or subject matter, despite the Court's ruling that the Parties should hold off on interrogatories at this time.

Oracle claims that its break-neck schedule and deviation from normal procedures is justified by "irreparable harm," but the Court *already ruled* that Oracle has not suffered any harm from the lack of an injunction since 2016.  ECF No. 1177 at 4:25–27 ("Oracle has not established that it suffered any harm after the Ninth Circuit granted a stay of the previous injunction back in 2016.").  Oracle's position is all the more illogical given that Oracle has not identified for Rimini what the alleged "irreparable harm" is, thus giving Rimini no opportunity to test or rebut Oracle's claim.

Rimini proposes that the Court implement a reasonable, phased discovery approach as set forth in more detail in Section III, *infra*.  Rimini further respectfully requests that the Court hold a hearing at its convenience to resolve Rimini's and Oracle's competing discovery plans.

## II.     STIPULATED FACTS

During the April 4, 2019 hearing, the Court encouraged the Parties to meet and confer regarding the possibility of streamlining discovery through a set of stipulated facts (which the Court recognized could "save a lot of time and money") and to then "report back" to the Court. April 4, 2019 Hrg. Tr. at 31:9–13, 32:6–9, 56:19–24, 57:12–24.  The Parties' proposals are below.

### A.     Oracle's Statement

The Court directed the Parties to develop stipulated facts to the extent possible.  In January 2019, Oracle asked Rimini to state whether it continues to engage in 20 specific practices.  ECF No. 1201-8.  Rimini still has not stated whether it continues to do so.  Since the April 4 hearing, Oracle again asked Rimini to stipulate to any of these practices that it continues to engage in, as well as 11 other specific practices tied to the terms of the Injunction.  Ex. 5. Rimini has not yet responded to that letter.  On Friday night, with a revised version of this filing, Rimini proposed stipulating to three "facts" – self-serving statements that include points that Oracle disputes (such as control over cloud servers) and cannot assess without discovery (███████ ██████████████████████████████████).  Ex. 7.  Given Rimini's refusal to provide any information regarding its processes since November 2018, Oracle is at an obvious disadvantage in terms of proposing specific factual stipulations.  Oracle reasonably proposed stipulated facts that are tied to the language of the Injunction, which Rimini now complains about below.  Instead of offering other stipulated facts, which could help streamline and reduce the burden of discovery, Rimini offers only complaints.

### B.     Rimini's Statement

Rimini asked Oracle to propose stipulated facts that would be relevant to its as-yet-undisclosed contempt allegations.  *See*, *e.g.*, Ex. 4 at 3.  Oracle told Rimini it would, but then did not do so until May 1 (days before this statement was due).  Oracle's proposed list of stipulated facts are not actually "facts" and are apparently designed to make legal determinations in Oracle's favor in the guise of a factual statement.  For instance, Oracle proposed a stipulated fact: "Since November 5, 2018, Rimini has used PeopleSoft software associated with a specific Rimini customer other than to support the specific customer's own internal data processing operations," a

11

vague statement that essentially asked Rimini to admit to violating the injunction.  It also asked Rimini to interpret license language regarding what constitutes "internal data processing operations" that is presently briefed for Judge Hicks in a summary judgment motion in *Rimini II*. *See*, *e.g.*, *Rimini II*, ECF No. 917 at 23–24.

Additionally, most of Oracle's proposed "stipulated facts" were merely interrogatories in disguise.  They made a statement with a blank for Rimini to fill in—essentially asking Rimini to do an investigation and report back with an answer.  For example, Oracle asked Rimini to stipulate that "Since November 5, 2018, Rimini has accessed PeopleSoft software associated with the following Rimini customers: [Rimini to fill in list of applicable customers]."  Oracle also left Rimini with insufficient time to investigate those interrogatory-style "stipulated facts."

Oracle's repeated suggestion that Rimini has not offered to enter into any stipulation regarding the cloud is also demonstrably false.  For instance, Rimini offered to stipulate that some Rimini clients may have hosted, or continued to host, their Oracle software in cloud locations controlled by those clients after the injunction went into effect.  *See* Ex. 4 at 3 ("Rimini does not dispute that some of its clients may have chosen to host their Oracle software in the cloud, which those clients contract for and control, and … Rimini would be willing to stipulate to this fact (subject to its relevance objections)."); *see also* Ex. 7.  Rimini does not necessarily know how or where a particular client hosts its Oracle software environments, for example, servers inside the client's headquarters or on computing resources located at a co-location facility or cloud provider. *See Rimini II*, ECF No. 606.  Indeed, Oracle itself has acknowledged that it also has no practicable method to determine which of its customers host Oracle software in the cloud. Oracle's stated objection to Rimini's proposed fact is apparently that it does not agree that clients (rather than Rimini) control their own cloud locations.  But Judge Hoffman already conclusively resolved that issue, *see id.*, and thus Oracle's objection is no basis for rejecting Rimini's proposal. Rimini offered to stipulate to other facts as well (*see* Ex. 7), which Oracle rejected.  Rimini is nevertheless prepared to continue working with Oracle on stipulated facts.

III. **DISCOVERY PLAN**

A. **Oracle's Statement**

Consistent with the Court's direction to propose a discovery cutoff date, a date for filing a contempt motion, and specific caps on discovery (April 4, 2019 Hrg. Tr. at 57:5-7, 60:15-18), Oracle proposes the following discovery plan, which contemplates streamlined discovery necessary to inform injunction compliance, and which will allow the Parties to complete discovery and Oracle to file any contempt motion as soon as reasonably practicable:

| Deadlines | Oracle Proposal |
|---|---|
| Deadline to serve first round of written discovery | May 6, 2019 |
| Deadline to complete production of documents in response to first round of document requests | June 24, 2019 |
| Deadline to serve final written discovery | July 8, 2019 |
| Close of fact discovery | August 27, 2019 |
| Expert disclosures | September 4, 2019 |
| Expert rebuttal disclosures | September 11, 2019 |
| Close of expert discovery | September 18, 2019 |
| Deadline to file motion for order to show cause/contempt motion | September 30, 2019 |

| Type of Discovery | Oracle Proposal |
|---|---|
| Requests for production | 20 |
| Requests for inspection | 5 |
| Interrogatories | 12 |
| Depositions (fact witnesses) | 5 |
| Depositions (non-party) | 5 |

13

| Type of Discovery | Oracle Proposal |
|---|---|
| Requests for admission[3] | 35 |
| Third-party subpoenas | 10 |

During the last hearing, Rimini's counsel stated that the Parties would work together to figure out "what's even available, what's burdensome and what's now, and come back to the Court if we have any dispute." April 4, 2019 Hrg. Tr. at 54:22-24. Oracle proceeded accordingly, seeking information from Rimini (Ex. 1) and then sending a narrowed set of documents requests and interrogatories (Ex. 5). Rimini now refuses to respond to any discovery until 30 days after service after the Court issues a Scheduling Order, proposes a substantially more limited set of requests, and proposes that Oracle be required to file yet another motion for leave to conduct discovery before proceeding with further discovery. Respectfully, this will lead to yet more delay and irreparable harm to Oracle. Consistent with the Court's instructions, Oracle seeks to proceed based on set deadlines for completing discovery and filing any contempt motion.

Rimini's proposed schedule below is based on false claims of ignorance about the practices at issue and will cause only unnecessary and prejudicial delay. As discussed above, in its letters and in briefing with the Court, Oracle has repeatedly identified specific practices at issue. *E.g.*, ECF Nos. 1201-8, 1201-10. Rimini's claim that it does not know what violates the Injunction is baseless. The Parties engaged in extensive briefing before the Court entered that Injunction, after years of litigation, and the terms of the Injunction are clear. For example, to the extent Rimini continues to engage in cross-use, that violates the Injunction. To the extent Rimini continues to access PeopleSoft software on cloud servers in violation of the facilities restriction in Oracle license agreements, that violates the Injunction. License terms pertaining to those practices were litigated and construed in *Rimini I*, and the pending *Rimini II* litigation does not excuse Rimini's compliance with the Injunction. The parties are represented by large law firms capable of completing discovery within the proposed timeframe, including any expert discovery.

Oracle proposes the discovery limits above based in part on Rimini's ongoing refusal to

---

[3] Oracle proposes that this limit not apply to RFAs used to authenticate documents, which should instead be unlimited.

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

stipulate to facts that should not reasonably be disputed.  For example, Rimini's counsel admitted to the Court that Rimini continues to access Oracle software on cloud-hosted servers.  April 4, 2019 Hearing Tr. at 19:22-20:1.  Rimini has since then nonetheless refused to stipulate to that access or other relevant facts.  Ex. 5.  In light of Rimini's positions and past litigation misconduct, and as explained below, Oracle's proposed discovery limits are tailored and reasonable.  The "initial" discovery proposed by Rimini below does not even cover all of the products at issue in the Injunction and instead appears designed to conceal key relevant evidence of its post-Injunction practices.

**Proposed requests for production & inspection**:  This discovery will allow Oracle to obtain documents and information regarding Rimini's compliance with the Injunction.  After meeting and conferring with Rimini, Oracle served five document requests on Rimini.  Ex. 5. That was a revised version of the document requests Oracle submitted with its earlier motion, based on the Court's comments during the April 4, 2019 hearing.  Oracle expects to serve one or more additional sets of document requests on Rimini, with a proposed limit of 20 requests.  This is an appropriate number of requests given Rimini's refusal to stipulate to certain facts and the need for documents and inspections to assess Rimini's compliance with the Injunction.

**Proposed interrogatories**:  Interrogatories will enable Oracle to obtained verified information from Rimini regarding its compliance with the Injunction, where Rimini has otherwise refused to provide that information without written discovery.  Oracle recently served five interrogatories on Rimini.  Ex. 4.  As explained in Oracle's recent letter, these interrogatories seek basic information regarding Rimini's compliance with the Injunction, which will help streamline discovery and assess the feasibility of the sampling that the Court envisioned.  *Id.* at 2. Oracle expects to serve one or more additional sets of interrogatories on Rimini, with a proposed limit of 12 interrogatories.  This total number of interrogatories is reasonable given the need for information regarding compliance.

**Proposed depositions**:  Depositions will enable Oracle to obtain information regarding Rimini's compliance with the Injunction, including from executives who directed any changes

15

1   and lower-level employees subject to those restrictions.  Oracle anticipates that most depositions

2   would take place after Rimini substantially completes its production of responsive documents,

3   including emails that can be used to question these individuals, though it may be useful to

4   schedule one or more 30(b)(6) depositions earlier, to obtain foundational information.

5         **Proposed requests for admission**:  Requests for admission will help narrow the scope of

6   discovery and focus the issues for any contempt motion.  Oracle proposes a limit of 50 requests,

7   which would not include any requests focused on authenticating documents for admission in

8   connection with any contempt motion.  Given the limited number of depositions, these requests

9   are necessary to enable the party to present the relevant documents to the Court.

10         **Potential third-party subpoenas**:  Third-party discovery may be necessary given

11   Rimini's position regarding its possession, custody, and control of information relating to its

12   customers.  To assess the extent to which Rimini is violating the Injunction through the

13   preparation and distribution of derivative works, Oracle may need to obtain and analyze some of

14   the Oracle software updates distributed by Rimini to its customers.  Rimini has taken the position

15   that it cannot provide those Oracle software updates because they are on systems controlled by

16   Rimini's customers.  To obtain copies of those updates and other relevant information, and

17   subject to the Parties' ongoing discussions regarding sampling, Oracle may need to serve some

18   number of third-party subpoenas seeking the production of documents and testimony.  Oracle

19   proposes a limit of ten such subpoenas.

20         **B.**    **Rimini's Statement**

21         At the April 4 hearing, the Court ruled that the parties should develop a Joint Discovery

22   Plan that takes discovery in phases.  In the first phase, the Court directed that Oracle could take

23   some "limited discovery" to "get the lay of the land without trying to get all the discovery

24   [Oracle] would possibly need in order to have a contempt hearing, just, you know, ***do some***

25   ***scouting***."  Apr. 4, 2019 Hrg. Tr. at 56:9–15 (emphasis added); *see also id.* at 39:13–14 ("THE

26   COURT: … I would like to … try and do this at least in some stages.").  Then Oracle may file a

27   motion requesting leave to proceed with specific additional discovery.  *Id.* at 61:4–6 ("THE

28

1   COURT: … you can do some discovery, and if you need something else, just file a motion."); *id.*

2   at 39:15–17 ("THE COURT: … If actually you do this first discovery and you find something

3   that you think deserves to go deeper, then we can talk about it.").

4          Following this guidance, and in light of the particular posture of this case, Rimini

5   respectfully submits that rather than entering an order that permits Oracle to serve a set number of

6   discovery requests, without specifying what information those requests will seek, the Court

7   should set a schedule that takes into account Oracle's claim to need some "narrowly tailored,"

8   "target[ed]" discovery into Rimini's processes after November 5, 2018 (*id.* at 21:6–11), to test

9   Rimini's compliance with the injunction, while reserving more burdensome discovery until

10   Oracle can make a showing that the additional discovery is warranted.  Rimini proposes that the

11   Parties pursue the following phased discovery approach.

12   ***Phase 1*:  Limited "Scouting" Discovery Regarding Rimini's Post-Injunction**

13   **Changes to Processes**

14          In the first phase, Rimini would respond to the following preliminary discovery regarding

15   post-injunction conduct:

16        • A request for production of non-privileged documents sufficient to show the

17           changes to Rimini's support processes for PeopleSoft and JD Edwards made in

18           response to the injunction;

19        • A request for production of non-privileged policies or memoranda that Rimini

20           created and promulgated in response to the injunction regarding Rimini's support

21           practices for PeopleSoft and JD Edwards;

22        • A request for production of AFW records stored in the AFW database that reflect

23           what "has changed after the date of the injunction" (*id.* at 42:18–19);

24        • An interrogatory seeking a list of updates to PeopleSoft and JD Edwards software

25           that Rimini developed after November 5, 2018, identifying the updates, the related

26           product lines, and the clients to which Rimini distributed the updates; and

27        • An interrogatory seeking a list of Rimini's clients that, for the period after

28

November 5, 2018, have chosen to host their Oracle software in the cloud, to the extent Rimini is able to obtain this information from Remote Access Documents or Statements of Work for its clients.

In Phase 1, after production of documents and information responsive to the above requests, Rimini would make a deponent available for a half-day (3.5 hour) Rule 30(b)(6) deposition concerning any changes Rimini made to its PeopleSoft support processes in response to the injunction.

Consistent with the Court's ruling at the April 4 hearing, Rimini does not believe that interrogatories are warranted at this time, except for the two interrogatories listed above. *See id.* 53:7–11 ("THE COURT: … We'll hold off on the interrogatories."). Likewise, consistent with the Court's guidance, Rimini believes that permitting Oracle access to Rimini's online resources, such as DevTrack, is premature, and should be addressed during a later phase of discovery (if necessary). *See id.* at 44:3–4 (the Court, referring to Rimini's online resources: "We can do that during the second part.").

At the conclusion of Phase 1, if Oracle believes it can make a showing that further discovery is necessary into specific conduct that it identifies as having been adjudicated in *Rimini I* and is allegedly contumacious, Oracle should file a motion for further discovery. *See id.* at 61:4–6 ("THE COURT: … you can do some discovery, and if you need something else, just file a motion."); *id.* at 39:15–17 ("THE COURT: … If actually you do this first discovery and you find something that you think deserves to go deeper, then we can talk about it."). Rimini proposes that after completion of briefing on Oracle's motion for further discovery, the Court hold a hearing to determine whether there is good cause for more extensive discovery targeted to Oracle's specific accusations, and, if so, to set a schedule for this discovery and any necessary motion practice.

### *Phase 2*: Further Targeted Discovery (Good Cause Showing)

Following Phase 1, Oracle should identify the specific conduct it alleges is contumacious (if any), and the Court should hold a hearing on Oracle's motion for further discovery to decide whether additional discovery is warranted and, if so, to determine an appropriate discovery

1   schedule.  If the Court determines that Oracle has shown good cause to conduct further discovery,

2   the Parties can then proceed to Phase 2 and engage in more extensive discovery targeted to

3   Oracle's specific allegations.  Today, without knowing what specific conduct Oracle contends (or

4   will contend) is contumacious, or whether the discovery Rimini will provide in Phase 1 will

5   provide Oracle the information it needs to test Rimini's compliance with the injunction, Rimini is

6   unable to provide a more detailed schedule.

7        As the Court understood at the April 4 hearing, phased discovery is the most efficient way

8   for the Parties to proceed.  It orients discovery around potentially dispositive issues and avoids

9   unnecessary (and disproportionate) expenditure of resources in the event Oracle either is unable

10   to proffer a showing of contumacious conduct or does not need additional discovery to test

11   Rimini's compliance with the injunction. Fed. R. Civ. P. 30(a)(2)(A) advisory committee's note

12   ("[C]ounsel have a professional obligation to develop a mutual cost-effective plan for discovery

13   …."); Fed. R. Civ. P. 26(f) advisory committee's note ("[I]t is desirable that the parties' proposals

14   regarding discovery … discuss how discovery can be conducted most efficiently and

15   economically.").

16        Rimini's approach is also fairer to the Parties.  Without knowing what conduct Oracle

17   contends is contumacious, Rimini is unable to pursue its own discovery to rebut those claims,

18   including preparing expert witnesses.  In this phased approach, Rimini's own discovery (if

19   necessary) would come in Phase 2, after Oracle has articulated its accusations.  While Oracle

20   contends that it has "repeatedly identified specific practices at issue[,]" as discussed above, this

21   distorts the actual record.  Oracle has repeatedly failed to identify any ongoing *Rimini I* conduct

22   by Rimini that would run afoul of the injunction.  Nor do Oracle's purported "examples" help.

23   Oracle claims that if Rimini "continues to engage in cross-use" or "continues to access

24   PeopleSoft software on cloud servers," Rimini is violating the injunction.  But the cloud was not

25   adjudicated in *Rimini I*, by Oracle's own admission (and, in any event, Rimini has offered to enter

26   into a stipulated fact about its clients' use of the cloud).  Moreover, "cross-use"—a term Oracle

27   invented—in *Rimini I* referred the use of locally hosted, generic environments to create updates

28

for multiple clients: a practice Oracle knows Rimini has discontinued because Rimini no longer hosts environments, and each client has its own environments stored on its computer systems. *See Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 959 (9th Cir. 2018) ("[T]he accused act concerning PeopleSoft is the creation of development environments, … on Rimini's own computers, as opposed to the licensees' computers"). Oracle apparently seeks to now expand its definition of cross-use (as it has in *Rimini II*), but the injunction (which does not use the term "cross-use") must, by law, be limited to conduct actually adjudicated in *Rimini I*. In sum, Oracle has to date failed to identify any ongoing Rimini practice it believes is a continuation of the specific conduct adjudicated in the first case.

In light of this reality, Oracle's proposed approach to discovery—which does not involve phasing—is inefficient and burdensome. The discovery Oracle proposes herein is not "limited" or "narrowly tailored" in any meaningful way. It is on par with allowing the plaintiff discovery before its complaint is even filed, precluding the defendant from having a fair and reasonable understanding of the claims alleged against it. It also provides no procedure for informing Rimini of the processes (adjudicated in *Rimini I*) that Oracle contends are contumacious.

Further, Oracle's proposed expert discovery is inefficient and unworkable. Expert discovery is not necessary (or even appropriate) until after Oracle specifically accuses the conduct that is alleges to be contumacious. In addition, even if expert discovery were warranted at this time, Oracle's proposal is unworkable because it envisions that Rimini will file a rebuttal expert report within one week of receiving Oracle's report. This is impossible, given that Rimini would not know what issues to address, or even what expert to retain, until it received Oracle's report. Moreover, expert discovery on Oracle's schedule is impracticably compressed. Oracle allows just 3 weeks for expert reports and depositions under its schedule, but expert discovery in *Rimini II*, for example, took over 6 months.

Moreover, Oracle's proposal regarding third-party subpoenas is premature. Oracle should not be permitted to burden third parties with subpoenas before it has even identified any

1  supposedly contumacious conduct by Rimini.  Subpoenas, if any, should be part of Phase 2.[4]

2        Oracle's request for *20* Requests for Production is also disproportional to the needs of the

3  case.  Oracle's proposal sets no limits on what those requests could seek and how broad they

4  could reach.  Such a large number of requests is not necessary for Oracle to understand the

5  changes Rimini made to its processes post-injunction and conduct the "scouting" discovery the

6  Court ordered.

7        Finally, Oracle's proposal includes *twelve* interrogatories, in contravention of the Court's

8  ruling that the Parties should refrain from serving interrogatories (with the exception of one

9  related to a list of Rimini's updates) at this time.  *See id.* 53:7–11 ("THE COURT: … We'll hold

10  off on the interrogatories.").

11  **Rimini's Proposed Discovery Schedule**

| Discovery Event | Date |
|---|---|
| Phase 1 Discovery begins | Upon Court's adoption of a discovery plan and issuance of a scheduling order |
| Deadline for Oracle to serve three document requests and two interrogatories (described *supra*) | 30 days after Court's adoption of a discovery plan and issuance of a scheduling order |
| Deadline to complete production of documents in response to first round of document requests | 60 days after service of written discovery |
| Close of Phase 1 Discovery | 45 days after production of documents and responses to interrogatories |
| Deadline for Oracle to file Motion for Further Discovery, specifically identifying the acts it accuses of being contumacious, if any | 15 days after close of Phase 1 Discovery |
| Hearing on Oracle's Motion for Further Discovery (if Motion granted, schedule provided for Phase 2 Discovery) | A date acceptable to the Court in approximately late September or early October 2019 |
| Close of Phase 2 Discovery | To be set at Hearing on Oracle's Motion for Further Discovery (if Motion granted) |
| Motion for Order to Show Cause / Contempt Motion (if any) | To be set after close of Phase 2 Discovery |

---

[4]   Oracle also misconstrues the history of this litigation when it argues that Rimini has "taken the position" that its clients (not Rimini) control their own computer systems.  This is not just Rimini's "position," it is law of the case.  Judge Hoffman has already ruled that Rimini does not control its clients' computer systems (over Oracle's strenuous objection).  *See Rimini II*, ECF No. 606.

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

1    **IV.    OTHER DISCOVERY ISSUES**

2         **A.    Oracle's Statement**

3         Based on its experience over the past nine years of litigating claims against Rimini, as

4    well as Rimini's refusal to date to answer Oracle's questions about injunction compliance, Oracle

5    has serious concerns regarding Rimini's willingness to provide relevant discovery in a timely

6    fashion.  Oracle requested information from Rimini regarding its compliance with the Injunction

7    on January 2, 2019, and Rimini has to date still not provided any explanation regarding its revised

8    process or provided any documents concerning its processes since the Injunction.  Oracle

9    therefore served Rimini with written discovery on April 30, 2019.  Rimini in response has taken

10   the position that it will not begin the process of responding to discovery until after the Court

11   issues a scheduling order and has requested that no discovery be served until 30 days after the

12   scheduling order issues.  Rimini also insists that it will need 30 days to respond, even as to the

13   discovery that Oracle has already served.  In light of these concerns, Oracle proposes and requests

14   the following:

15        **Confirmation that Oracle's service of discovery was proper**:  Oracle asks the court to

16   confirm that Rimini must timely respond to the discovery that Oracle served on April 30, 2019.

17        **Written discovery response time**:  Oracle proposed shortening the time for the Parties to

18   respond to written discovery to 21 days; Rimini has refused to agree.  Given the irreparable harm

19   to Oracle from any continuing violation of the Injunction, Oracle believes that a shortened

20   timeframe is warranted.

21        **Periodic Court conferences**:  Magistrate Judge Leen previously had a process where the

22   parties would raise issues with the Court on a regular basis, and then appear before the Court to

23   address those issues.  ECF No. 93.  Oracle asked Rimini whether it would jointly request the

24   same process now, and Rimini refused.  Oracle believes that a similar process would be helpful

25   with this discovery, especially in light of Rimini's ongoing refusal to meaningfully engage in

26   discovery.  Oracle requests that the Court schedule conferences at least every month, with the

27   Parties submitting a joint statement seven days prior to the conference.

28

**Discovery-related letters**:  Magistrate Judge Hoffman required the Parties to jointly file a letter with the Court before submitting full briefing on any discovery issues.  *Rimini II*, ECF No. 372.  Oracle asked Rimini whether it would jointly request the same process now, and Rimini refused.  Oracle believes that a similar process would be helpful with this discovery, and that it may help reduce the number of filings with the Court.

**Staged contempt proceedings**:  Every day that goes by in which Rimini violates the Injunction causes irreparable harm to Oracle.  Any Rimini delay in providing documents and other discovery (along with its refusal to stipulate to certain facts) should not be a basis for Rimini to continue violating the Injunction, and to thereby obtain the stay that this Court and the Ninth Circuit rejected.  Thus, Oracle should be permitted to file more than one order to show cause if warranted.  This is consistent with the comments made by Rimini's counsel.  April 4, 2019 Hearing Tr. at 31:6-8 (Mr. Perry:  "If cloud hosting is contempt, let's tee that up and decide it as a contempt motion.  Why do we need discovery?").  Oracle proposes a deadline for any order to show cause above, but any stipulated facts and discovery may permit Oracle to raise certain discrete issues with the Court in advance.[5]

**B.     Rimini's Statement**

Oracle's proposals to modify the Federal and Local Rules related to discovery is unwarranted.  Oracle contends these modifications are necessary because it is purportedly "irreparably harmed" each day that it is "delayed" from filing a contempt motion.  But Judge Hicks has already found that Oracle experienced no harm when the previous injunction was stayed and/or vacated for a period of years.  ECF No. 1177 at 4:25–27 ("Oracle has not established that it suffered any harm after the Ninth Circuit granted a stay of the previous injunction back in 2016.").  Further, Oracle never moved for a temporary restraining order or preliminary injunction in more than four years of litigation in Rimini I. There is no urgency here, especially given that Oracle has not accused any specific conduct, let alone identified evidence, that any of Rimini's current practices violate the injunction.  Accordingly, as a general matter,

---

[5] Oracle also reserves all rights to pursue additional contempt proceedings in the future.

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

1    there is no basis for imposing special discovery requirements here.  Rimini responds to each

2    proposal in detail below.

3        **Oracle's Service of Discovery Before a Discovery Plan Has Been Entered.**  This Court

4    clearly envisioned that the Parties would submit a proposed discovery plan, the Court would enter

5    an order, and *then* discovery would begin—the normal process in this Court.  April 4, 2019 Hrg.

6    Tr. at 61:4-6 ("Get that [joint plan and scheduling order] in by [May 6], **then** you can do some

7    discovery.") (emphasis added).  Rimini's proposed schedule respects that process and the Court's

8    ruling.

9        **Oracle's Request to Shorten Written Discovery Response Time.** Oracle's request for a

10   21-day response period for discovery is unworkable.  The Federal Rules grant 30 days for good

11   reason, and parties are often required to seek extensions, even in less complicated cases.  *See*

12   *generally* Rule 33 Notes of Advisory Committee on Rules – 1970 Amendment (explaining that it

13   was necessary to extend the time to respond to 30 days for interrogatories because the then-

14   current deadline of 15 days for answers was "too short" and data showed that "tardy response to

15   interrogatories is common, virtually expected").  Here, in a highly technical case that involves

16   complex technical discovery, a 21-day deadline will almost certainly lead to regular requests for

17   extensions.  The discovery history in *Rimini II* only underscores this point—in that case, both

18   sides routinely sought extensions for answering written discovery due to the complexity of the

19   underlying subject matter.  Oracle apparently now intends to seek in *Rimini I* substantially similar

20   technical discovery.  As a result, a 21-day deadline is untenable.

21       **Periodic Court Conferences.**  Rimini believes that burdening the Court and the Parties

22   with monthly status conferences is unnecessary in this case.  The Parties went through a

23   significant portion of *Rimini II*—which involved 3 years of discovery, over a thousand written

24   discovery requests, and more than 100 depositions—without regular conferences.  Given that

25   *Rimini I* will involve significantly narrower discovery, the Parties should be able to adhere to the

26   standard process for resolving disputes as they did in *Rimini II*.  Moreover, Rimini's proposed

27   discovery plan builds in hearings at the close of Phase 1 discovery, and (if necessary) Phase 2

28

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

1    discovery.

2         **Letter Briefs Regarding Discovery.**  There is no cause for altering the Local Rules to

3    require the filing of letter briefs before the Parties can file motions for protective orders or to

4    compel.  While that process was eventually implemented in *Rimini II*, as noted, that case involved

5    a much broader scope of discovery than is envisioned here.  Here, all the Court has ordered is

6    "limited" discovery for the purpose of "scouting."  April 4, 2019 Hrg. Tr. at 56:9–15.  The

7    process established by the Local Rules is adequate for handling any disputes that may arise during

8    this targeted discovery.

9         **Oracle's Proposal for Serial Contempt Motions.** Oracle should not be permitted to

10    bring serial motions for contempt.  This Court has already ordered that this Joint Discovery Plan

11    should include a deadline for "**a** contempt motion," not multiple motions.  *Id.* at 60:17–18

12    (emphasis added).  Nor is there any reason that Oracle cannot include all of its allegations in a

13    single motion.  Oracle's apparent concern that it may have some evidence early on, and additional

14    evidence later, is all the more reason for the Court to enforce the phased approach discussed

15    during the hearing and proposed by Rimini.  Oracle should take the initial, "scouting" discovery

16    ordered by this Court first and determine what conduct by Rimini (if any) it believes is

17    contumacious.  Then, assuming the Court grants further discovery on those issues, Oracle can

18    take the discovery it needs, and bring a single motion for contempt when that discovery is

19    complete.  This is an efficient way of structuring the contempt process that both respects the

20    Court's time and conserves resources for the Parties.  Oracle's labeling of its serial motions as

21    "staged proceedings" warps what the Court had envisioned by staged discovery.  The Court

22    ordered staged discovery resulting in one motion (if any), not unlimited discovery resulting in

23    some unknown number of motions.

24

25         Dated: May 6, 2019

26

27

28

| BOIES SCHILLER FLEXNER LLP | GIBSON, DUNN & CRUTCHER LLP |
|---|---|
| By:     */s/ Richard J. Pocker*<br>Richard J. Pocker<br>*Attorneys for Plaintiffs Oracle USA, Inc.,*<br>*Oracle America, Inc. and Oracle*<br>*International Corporation* | By:     */s/ Mark A. Perry*<br>Mark A. Perry<br>*Attorneys for Attorneys for Defendants Rimini*<br>*Street, Inc. and Seth Ravin.* |

## <u>ATTESTATION OF FILER</u>

The signatories to this document are Mark Perry and me, and I have obtained Mr. Perry's concurrence to file this document on his behalf.

Dated:  May 6, 2019

BOIES SCHILLER FLEXNER LLP

By:   */s/ Richard J. Pocker*
Richard J. Pocker

JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 6, 2019, I electronically transmitted the foregoing **JOINT PROPOSED DISCOVERY PLAN RE: INJUNCTION** to the Clerk's Office using the Electronic Filing System pursuant to Local Rules Section 1C.

Dated:  May 6, 2019                              BOIES SCHILLER FLEXNER LLP


By:   /s/ *Ashleigh Jensen*
                           Ashleigh Jensen

1