# EXHIBIT 2

[Letter from Eric D. Vandevelde to Kathleen R. Hartnett, dated April 17, 2019]

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Eric D. Vandevelde
Direct: +1 213.229.7186
Fax: +1 213.229.6186
EVandevelde@gibsondunn.com

April 17, 2019

VIA ELECTRONIC MAIL

Kathleen R. Hartnett
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

Re:     *Oracle USA, Inc. et al. v. Rimini Street, Inc. & Seth Ravin*
          Case No. 2:10-cv-0106-LRH-VCF (D. Nev.)

Dear Kathleen:

We write in response to your April 11, 2019 letter regarding the Court's injunction in *Rimini I* and the hearing before Magistrate Judge Ferenbach on April 4, 2019. We also respond here to Mr. Pocker's April 11, 2019 letter regarding Oracle's request that Rimini withdraw its opposition to Oracle's motion to modify the *Rimini II* protective order to allow use of *Rimini II* materials in *Rimini I*.

As an initial matter, both of Oracle's motions, and all of its prior correspondence regarding injunction compliance, put the proverbial cart before the horse. If Oracle has a good-faith belief (based on *Rimini II* discovery or otherwise) that Rimini is engaged in any adjudicated practices that could constitute contempt of the *Rimini I* injunction, then Oracle has an obligation to inform Rimini what practices are at issue and the bases for Oracle's belief. Only upon such notification can Rimini respond meaningfully and substantively to Oracle's concerns. And only upon such notification can Rimini reasonably tailor any discovery responses. Yet, to date, Oracle has refused to identify any specific acts adjudicated in *Rimini I* that are included in Rimini's current processes, and thus could constitute alleged contempt. Instead, Oracle has identified 20 practices that it contends are unlawful, without any attempt (despite our repeated requests) to show that those practices were actually adjudicated in *Rimini I*. Whether any of those practices are actionable as infringement is the subject of *Rimini II*, in which discovery closed *before* the injunction even became effective. We therefore fail to see how they could possibly be considered contumacious and thus actionable under the injunction entered in *Rimini I*. We again invite Oracle to explain its position in this respect.

While Rimini agrees to provide some information in response to narrowly tailored requests (as set forth below and consistent with Magistrate Judge Ferenbach's guidance at the April 4 hearing), it should not have to undertake the effort and expense of more burdensome discovery

# GIBSON DUNN

Kathleen R. Hartnett
April 17, 2019
Page 2

until after the appeal of the injunction has concluded.  *See*, *e.g.*, Apr. 4, 2019 Hrg. Tr. at 56:3–15 (the Court ordering that Oracle may "take some limited discovery" to "get the lay of the land without trying to get all the discovery you would possibly need in order to have a contempt hearing, just, you know, do some scouting").  The appeal challenges both the issuance and scope of the injunction, and any reversal, vacatur, or limitation on the scope of the injunction will undermine, if not outright eliminate, the grounds for the discovery Oracle seeks. Accordingly, Rimini maintains and reserves its objections to engaging in burdensome and overly broad discovery while the injunction is on appeal.

Further, while the appeal is unresolved, Rimini should not have to engage in the expense and burden of a contempt proceeding.  For this reason, the deadline to file any contempt motion in any discovery plan prepared for the Court should occur after the Ninth Circuit issues its mandate on Rimini's pending appeal.

As to the specific points raised in your letter, we respond as follows:

***First***, Oracle asks Rimini to "provide an updated AFW database production that includes all records created or modified on or after November 5, 2018 and read-only access to DevTrack." Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 1.

At the outset, we note that the Court did not address or rule on whether the injunction can cover—or whether Oracle can take discovery regarding—any processes that were not adjudicated in *Rimini I*.  Rimini's position, as set forth consistently throughout this litigation, is that the injunction entered in *Rimini I* cannot and does not prohibit any such processes.  *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (An injunction must be "narrowly tailored … to remedy only the specific harms shown by the plaintiffs."); 4 *Nimmer on Copyright*, § 14.06[C][1][a] ("[T]he scope of the injunction should be coterminous with the infringement.").  Until very recently, that was Oracle's position as well.  *See*, *e.g.*, *Rimini I* Dkt. No. 1117 at 20 n.3 (Oracle assuring the Court that it was "not asking now for a ruling on the merits of the issues in dispute in *Rimini II*, and instead was asking "the Court for a permanent injunction restraining Rimini from continuing to commit the infringement that *this Court and the jury have already determined to constitute copyright infringement*" in *Rimini I* (emphasis added)).  Having successfully persuaded Judge Hicks to enter the injunction on that premise, Oracle should be judicially estopped from taking a different position now.  Therefore, Rimini continues to object to providing any discovery regarding processes that were not adjudicated in *Rimini I*—including AFW.

Oracle has not explained how "an updated AFW database that includes all records created or modified on or after November 5, 2018 and read-only access to DevTrack" encompass processes adjudicated to infringe in *Rimini I*.  In fact, as Oracle knows, AFW, which is part of

# GIBSON DUNN

Kathleen R. Hartnett
April 17, 2019
Page 3

Rimini's 2.0 processes, was not even at issue in *Rimini I*—at Oracle's own insistence—and is now being litigated in *Rimini II*. It therefore is not a proper subject of discovery in connection with the *Rimini I* injunction.

At the April 4 hearing, Magistrate Judge Ferenbach ruled that Oracle was not entitled to discovery into "source code or the FTP folders" within AFW. Apr. 4, 2019 Hrg. Tr. at 42:24–25. He also ruled that Oracle was not entitled to read-only access to DevTrack (or any other "online resources used by Rimini"). *Id.* at 43:8–44:4. Rimini therefore does not agree to provide copies of or access to these materials or resources.

We recognize that Magistrate Judge Ferenbach indicated at the hearing that some aspects of the AFW "database" could be discoverable. *Id.* at 42:24–25. Rimini is prepared to meet and confer with Oracle regarding this request to ensure it is reasonably tailored.

***Second***, Oracle asks whether "Rimini has, since November 5, 2018, used any non-Oracle software other than AFW and DevTrack in connection with Rimini's development of software updates, patches, and fixes for the Oracle software products at issue in this case." Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 1. Rimini responds that in the period since the injunction was entered, it has used Jira—an online resource—as part of its process for development of fixes, patches, and updates for Oracle software, including the software at issue in *Rimini I*.

***Third***, Oracle asks Rimini to "identify any discovery requests included with Oracle's motion, ECF No. 1199, to which Rimini would not object," which Oracle will then consider as it "prepare[s] [its] initial discovery requests." Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 2. At the April 4 hearing, Magistrate Judge Ferenbach significantly limited the proposed requests Oracle included with its Motion, including ruling that the interrogatories served with the Motion were unwarranted at this stage of the proceedings. Apr. 4, 2019 Hrg. Tr. at 53:7–11.[1] Rimini would thus object to all of Oracle's interrogatories included with Oracle's Motion to Permit Discovery on the ground that they are premature (among other objections).

With respect to the proposed document requests included with Oracle's Motion (*see* Dkt. No. 1199-27), and without prejudice to Rimini's right to assert any appropriate objections once Oracle serves formal requests, Rimini would, in principle, agree to conduct a reasonable search and to produce non-privileged documents sufficient to show "changes to Rimini's support processes for Oracle Software and Support Materials that Rimini made in response to the Injunction" in response to Oracle's proposed RFP No. 1. Dkt. No. 1199-27 at 5. Rimini would

---

[1]  The Court did rule that Oracle could propound an interrogatory in place of its RFP No. 5. *See* Apr. 4, 2019 Hrg. Tr. at 49:23–50:1. Rimini is willing to meet and confer regarding the scope of such a request.

**GIBSON DUNN**

Kathleen R. Hartnett
April 17, 2019
Page 4

object on relevance and proportionality grounds to any demand by Oracle for documents concerning any "anticipated" changes to Rimini's support processes, particularly in light of Magistrate Judge Ferenbach's comments that a request for such documents "makes no sense." Apr. 4, 2019 Hrg. Tr. at 36:21–25.

In response to Oracle's proposed RFP No. 7, Rimini would, in principle, agree to conduct a reasonable search to produce non-privileged "policies or memoranda Rimini wrote or developed in response to the Injunction" "regarding Rimini's support practices for Oracle Software and Support Materials" "pursuant to paragraph 1 of the Injunction." Dkt. No. 1199-27 at 6. Again, Rimini would object on relevance and proportionality grounds to any demand by Oracle for policies or memoranda developed in anticipation of the injunction.

*Fourth*, Oracle asks Rimini to "respond to the third request" in Oracle's January 2, 2019 letter. Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 2. Rimini has twice expressed its concerns about the scope of Oracle's request that Rimini confirm that it does not engage in 20 distinct practices purportedly related to Rimini's provision of software support, and has twice asked Oracle to Respond to Rimini's threshold questions regarding that request. *See* Jan. 23, 2019 E. Vandevelde Ltr. to Z. Hill at 1; Feb. 7, 2019 E. Vandevelde Ltr. to Z. Hill at 2–3. Rimini again renews its request that Oracle "confirm whether [it] contends that each of the 20 practices identified in [its] letter is within the express terms of the injunction, and, if so, please identify when in *Rimini I* the specific conduct was litigated, with supporting citations, as well as the specific injunction term(s) that [Oracle] contend[s] address each practice." Jan. 23, 2019 E. Vandevelde Ltr. to Z. Hill at 1.

*Fifth*, Oracle asks Rimini to provide information regarding Rimini's access to its clients' software hosted in the cloud. Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 2. But *Rimini I* did not involve or adjudicate issues related to Rimini's clients' use of the cloud. *See* May 25, 2016 Hrg. Tr. at 143:14–20 (Oracle's counsel acknowledging that "cloud computing is at issue in *Rimini II* and it wasn't at issue in *Rimini I*"). And Oracle has not articulated how Rimini's access to its clients' cloud-hosted Oracle software and support materials is relevant to Rimini's compliance with the *Rimini I* injunction. Moreover, much of the information Oracle seeks is in Rimini's clients'—not Rimini's—possession, custody, or control. *See Rimini II* Dkt. No. 606 ("Rimini does not have control over (nor possession or custody of) its clients' software environments and archives located on its clients' computer systems"). As Oracle itself knows from its own experience, Rimini does not even know in many cases whether clients host in the cloud. *See* Feb. 7, 2018 M. Lin Ltr. to E. Vandevelde ("Oracle has no practicable method by which to determine which third parties, out of the many Oracle licensees, have such [cloud] hosting arrangements.").

**GIBSON DUNN**

Kathleen R. Hartnett
April 17, 2019
Page 5

**Sixth**, Oracle asks Rimini to compile a list of "all updates to the relevant Oracle software products that Rimini created [or 'generated or distributed'] during the time period of November 5, 2018 to the present." Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 2. Rimini is willing to meet and confer about whether it is necessary for Rimini to create a compilation of this information before the parties can determine whether sampling would be "a feasible approach to evaluation of [Rimini's] updates," and whether the burden of this undertaking is proportional to the needs of this proceeding.

**Seventh**, Oracle requests that Rimini "preserve copies of all updates to the relevant Oracle software products delivered on or after April 9, 2019." Apr. 11, 2019 K. Hartnett Ltr. to M. Perry, et al. at 2. As already stated in Rimini's January 23 and February 7 letters, Rimini has been complying, and will continue to comply, with its obligation to preserve documents and other materials related to its support for the Oracle products at issue in the ongoing litigation. Rimini reiterates its request that Oracle confirm that it is also preserving relevant information on its systems.

Rimini does not agree to withdraw its opposition to Oracle's pending motion to modify the *Rimini II* protective order to allow use of *Rimini II* materials in *Rimini I*. We maintain that Oracle's motion should be denied as an improper attempt to preempt the Court's consideration of Process 2.0 in the *Rimini II* case, where it belongs, and as Oracle previously insisted. Moreover, and as articulated in Rimini's opposition to that motion, Oracle failed to satisfy its meet and confer obligation, and has also failed to demonstrate either good cause to modify the protective order or any prejudice to Oracle if the protective order remains unmodified.

Very Truly Yours,

Eric D. Vandevelde

EDV/adm

cc: Benjamin P. Smith
    John A. Polito
    Sharon R. Smith
    Frank B. Kennamer
    Lucy Wang
    Zachary S. Hill
    Lindsey M. Shinn

**GIBSON DUNN**

Kathleen R. Hartnett
April 17, 2019
Page 6


Lisa S. Lee
William Isaacson
Karen Dunn
Richard Pocker
Kathleen Hartnett
Beko Richardson
Sean Rodriguez
Nasrina Bargzie
Micol Small
Meryl Governski
Gabriel Schlabach
Rebecca M. Abel
Samuel Ungar
Ashleigh Jensen

Jeffrey T. Thomas
Samuel Liversidge
Michele L. Maryott
Joseph A. Gorman
Casey J. McCracken
Chris Whittaker
Jennafer M. Tryck
Ronald Gomez
Katie M. Magallanes
Blake Shinoda
Daniel R. Adler
Daniel J. Kuo
Wesley Sze
Matthew Sessions
Amber McKonly
Tracy A. Morgan