# EXHIBIT 4

[Letter from Eric D. Vandevelde to Kathleen R. Hartnett, dated April 24, 2019]

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Eric D. Vandevelde
Direct: +1 213.229.7186
Fax: +1 213.229.6186
EVandevelde@gibsondunn.com

April 24, 2019

VIA ELECTRONIC MAIL

Kathleen R. Hartnett
Boies Schiller Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

Re:   *Oracle USA, Inc. et al. v. Rimini Street, Inc. & Seth Ravin*
      Case No. 2:10-cv-0106-LRH-VCF (D. Nev.)

Dear Kathleen:

We write in response to your April 22, 2019 letter regarding the Parties' Proposed Discovery Plan and Scheduling Order. We have also expressed Rimini's positions to you in our April 17 letter and during the April 18 meet and confer. We want to make clear at the outset, despite the mischaracterizations in your letter, our commitment to developing a joint discovery plan that the Court can review and adopt (or modify) so that the Parties may take "limited discovery" and Oracle can "do some scouting," in accordance with Magistrate Judge Ferenbach's April 4 Order.

The Parties have a fundamental disagreement regarding whether Rimini's *new* processes, not adjudicated in *Rimini I*, could form a basis for a contempt proceeding in *Rimini I*. Rimini's position is that they cannot. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (An injunction must be "narrowly tailored … to remedy only the specific harms shown by the plaintiffs."); 4 *Nimmer on Copyright*, § 14.06[C][1][a] ("[T]he scope of the injunction should be coterminous with the infringement."). Resolution of this threshold legal issue is critical to defining the scope of any contempt proceeding and corresponding discovery.

Rimini has repeatedly asked Oracle to explain—as it is obligated to do—a good faith basis for its belief that Rimini is engaged in any adjudicated practices that could constitute contempt of the *Rimini I* injunction. *See*, *e.g.*, Apr. 17, 2019 Ltr. from E. Vandevelde to K. Hartnett. Yet Oracle has steadfastly refused to do so. To date, and including in its April 22 letter, Oracle has not identified a single act adjudicated in *Rimini I* that is included in Rimini's current processes, and which therefore could form a basis for contempt of the *Rimini I* injunction. Instead, Oracle continues to press for discovery into processes that were undisputedly *not* adjudicated in *Rimini I* and thus could *not* give rise to contempt of the *Rimini I* injunction, but

**GIBSON DUNN**

Kathleen R. Hartnett
April 24, 2019
Page 2

instead are the subject of pending summary judgment motions in *Rimini II*, including AFW and cloud-hosting.

Oracle's position that it is entitled to seek discovery into Rimini's *new* processes (*i.e.*, Process 2.0) is contrary to its representation and assurance to Judge Hicks when seeking the injunction that Oracle was "not asking now for a ruling on the merits of the issues in dispute in *Rimini II*," and instead was asking "the Court for a permanent injunction restraining Rimini from continuing to commit the infringement that *this Court and the jury have already determined to constitute copyright infringement*" in *Rimini I*. *Rimini I* Dkt. No. 1117 at 20 n.3 (emphasis added). Oracle's position is particularly problematic given that the *Rimini I* injunction is presently on appeal, and if Rimini prevails, there will be no contempt proceedings whatsoever. Oracle's suggestion to the contrary runs afoul of binding Ninth Circuit precedent. *See*, *e.g.*, *Word Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 689 (9th Cir. 2010) (collecting cases and holding that "[v]acatur of the injunction … voids the civil contempt order"). *See also*, *e.g.*, *United States v. United Mine Workers*, 330 U.S. 258, 295 (1947) ("The right to remedial relief falls with an injunction which events prove was erroneously issued[.]"). Accordingly, Rimini continues to maintain that more burdensome discovery and any contempt proceeding should be deferred until after the appeal has concluded.

Subject to the foregoing positions and our continuing objections to discovery regarding processes that were not adjudicated in *Rimini I*, we address the seven specific issues discussed in your letter.

***First***, Oracle has asked Rimini to produce AFW records modified or created after November 5, 2018, and provide read-only access to DevTrack. *See* Apr. 22, 2019 Ltr. from K. Hartnett to E. Vandevelde at p. 2. Rimini has agreed to consider whether to produce AFW records stored in the AFW database that were created or modified on or after November 5, 2018. Rimini is evaluating this request, including investigating the feasibility and burden of producing this material.

Regarding DevTrack, Magistrate Judge Ferenbach ruled that Oracle was not entitled to read-only access to this online resource (or any other "online resources used by Rimini") because it is disproportional to Oracle's needs at this stage of the proceeding. Apr. 4, 2019 Hrg. Tr. 43:8–44:4; *see also id.* at 44:3–4 ("We can do that during the second part.").

***Second***, at your request, we are working with Rimini to investigate whether Jira includes additional material—created or modified after November 5, 2018—that is not included in the DevTrack database. Again, Rimini does not agree to provide Oracle read-only access to Jira at this time, because, as Magistrate Judge Ferenbach ruled, "online resources used by Rimini" are outside the scope of any preliminary discovery that Oracle may need.

**GIBSON DUNN**

Kathleen R. Hartnett
April 24, 2019
Page 3

***Third***, Rimini has informed Oracle that it would not object, in principle, to certain of Oracle's sample requests for production of documents included with its Motion to Reopen Discovery. *See* Apr. 17, 2019 Ltr. from E. Vandevelde to K. Hartnett. Magistrate Judge Ferenbach significantly limited the proposed discovery requests Oracle included with its Motion, including ruling that the interrogatories served with the Motion were unwarranted at this stage of the proceeding. Apr. 4, 2019 Hrg. Tr. at 53:7–11. Magistrate Judge Ferenbach also instructed the Parties to tailor any new discovery requests to his rulings and guidance during the April 4 hearing. *See*, *e.g.*, *id.* at 53:4–6 ("I'm going to allow you to do some discovery, allow you to do the stuff I said today you could do."); *id.* at 56:10–11 (instructing the Parties to take into account "our discussion of the different requests"); *id.* at 60:13–14 (encouraging the Parties to consider the Court's "guidance" on "the proposed sample discovery"). Those rulings included permitting Oracle to serve one interrogatory in lieu of its sample RFP No. 5 served with the Motion, which sought information about Rimini's updates. *See* Apr. 4, 2019 Hrg. Tr. at 49:23–50:1. The Parties are addressing this request separately (*see infra* page 4). Rimini objects to Oracle serving other interrogatories at this stage of the proceeding.

***Fourth***, your letter incorrectly states that Rimini has "refused" to respond to Oracle's request that Rimini provide information regarding whether it engages in 20 enumerated practices. *See* Apr. 22, 2019 Ltr. from K. Harnett to E. Vandevelde at p. 3. As Rimini has repeatedly explained, the processes Oracle identified can be relevant to a contempt proceeding in *Rimini I* only if they were litigated and adjudicated in *Rimini I*. Rimini has repeatedly asked Oracle "whether [it] contends that each of the 20 practices identified in [its] letter is within the express terms of the injunction, and, if so, [that Oracle] identify when in *Rimini I* the specific conduct was litigated, with supporting citations, as well as the specific injunction term(s) that [Oracle] contend[s] address each practice." *See* Apr. 17, 2019 Ltr. from E. Vandevelde to K. Hartnett; *see also* Jan. 23, 2019 Ltr. from E. Vandevelde to Z. Hill. Oracle has repeatedly refused to answer that question.

***Fifth***, Oracle asks Rimini to provide information regarding Rimini's access to its clients' software environments that may be hosted in the cloud. *See* Apr. 22, 2019 Ltr. from K. Hartnett to E. Vandevelde at p. 3. It is undisputed, and indeed Oracle has previously acknowledged, that cloud hosting was *not* litigated in *Rimini I* and is instead the subject of *Rimini II*. *See* May 25, 2016 Hrg. Tr. at 143:14–20 (Oracle's counsel acknowledging that "cloud computing is at issue in *Rimini II* and it wasn't at issue in *Rimini I*"). Nevertheless, as Rimini explained during the Parties' April 18 meet and confer, Rimini does not dispute that some of its clients may have chosen to host their Oracle software in the cloud, which those clients contract for and control, and that Rimini would be willing to stipulate to this fact (subject to its relevance objections). Oracle rejected that proposal. We asked Oracle to propose any stipulated facts, but Oracle did not do so in its letter. Oracle also asked Rimini whether it could provide a list of specific clients that have chosen to host their Oracle software in the cloud. Rimini is

**GIBSON DUNN**

Kathleen R. Hartnett
April 24, 2019
Page 4

investigating whether that request is feasible, given that Rimini does not necessarily know whether a particular client IP address is associated with a server inside the client's headquarters, at a co-location facility, or within a cloud provider's data center. Indeed, Oracle has itself recognized this in the past, *i.e.*, that it cannot determine whether its customers host Oracle software in the cloud. *See* Feb. 7, 2018 Ltr. from M. Lin to E. Vandevelde ("Oracle has no practicable method by which to determine which third parties, out of the many Oracle licensees, have such [cloud] hosting arrangements.").

**Sixth**, Oracle asks Rimini to compile a list of "all updates to the relevant Oracle software products that Rimini generated or distributed during that time period of November 5, 2018 to the present." Apr. 22, 2019 Ltr. from K. Hartnett to E. Vandevelde at p. 4. Magistrate Judge Ferenbach's ruling at the April 4 hearing was that Oracle should serve an interrogatory targeting this information. Oracle has agreed to serve an interrogatory, and Rimini will consider that discovery request.

**Seventh**, Oracle requests that Rimini "preserve copies of all updates to the relevant Oracle software products delivered on or after April 9, 2019." Apr. 22, 2019 Ltr. from K. Hartnett to E. Vandevelde at 4. Oracle's April 22 letter mischaracterizes Rimini's response. As already stated in Rimini's January 23, February 7, and April 17 letters, Rimini has been complying, and will continue to comply, with its obligation to preserve documents and other materials related to its support for the Oracle products at issue in the ongoing litigation. Rimini is not obligated to preserve materials that are not within its possession, custody, or control. *See Rimini II* Dkt. No. 606 ("Rimini does not have control over (nor possession or custody of) its clients' software environments and archives located on its clients' computer systems.").

Rimini's position regarding its opposition to Oracle's pending motion to modify the *Rimini II* protective order to allow use of *Rimini II* materials in *Rimini I* is stated in its opposition briefing and its April 17 letter. Oracle's motion should be denied as an improper attempt to preempt the Court's consideration of Process 2.0 in the *Rimini II* case. Moreover, Oracle failed to satisfy its meet and confer obligation, and has also failed to demonstrate either good cause to modify the protective order or any prejudice to Oracle if the protective order remains unmodified. Nevertheless, Rimini is willing to consider a narrowly tailored proposal from Oracle to use in these proceedings certain *Rimini II* discovery regarding processes that Oracle can show were adjudicated in *Rimini I*. Oracle should identify the specific discovery materials that it wishes to use in *Rimini I*, and explain their relevance to this proceeding. Rimini can then assess whether modification of the protective order is warranted. Rimini reiterates, however, that the *Rimini II* protective order is in place to maintain the separation between the

**GIBSON DUNN**

Kathleen R. Hartnett
April 24, 2019
Page 5


*Rimini I* and *Rimini II* cases, which Oracle insisted upon and that Judge Hicks imposed at Oracle's request (and over Rimini's objection).


Very Truly Yours,

*[signature]*

Eric D. Vandevelde

EDV/adm

cc: Benjamin P. Smith
    John A. Polito
    Sharon R. Smith
    Frank B. Kennamer
    Lucy Wang
    Zachary S. Hill
    Lindsey M. Shinn
    Lisa S. Lee
    William Isaacson
    Karen Dunn
    Richard Pocker
    Kathleen Hartnett
    Beko Richardson
    Sean Rodriguez
    Nasrina Bargzie
    Micol Small
    Meryl Governski
    Gabriel Schlabach
    Rebecca M. Abel
    Samuel Ungar
    Ashleigh Jensen

    Jeffrey T. Thomas
    Samuel Liversidge
    Michele L. Maryott
    Joseph A. Gorman
    Casey J. McCracken
    Chris Whittaker

**GIBSON DUNN**

Kathleen R. Hartnett
April 24, 2019
Page 6

    Jennafer M. Tryck
    Ronald Gomez
    Katie M. Magallanes
    Blake Shinoda
    Daniel R. Adler
    Daniel J. Kuo
    Wesley Sze
    Matthew Sessions
    Amber McKonly
    Tracy A. Morgan