BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:     702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:     (202) 237-2727
Facsimile:     (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
     (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:     415.293.6800
Facsimile:     415.293.6899
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:     415.442.1000
Facsimile:     415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     650.506.4846
Facsimile:     650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ORACLE USA, INC.; a Colorado corporation;
ORACLE AMERICA, INC.; a Delaware
corporation; and ORACLE INTERNATIONAL
CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation;
and SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-0106-LRH-VCF

**ORACLE'S MOTION TO COMPEL
AND MEMORANDUM OF POINTS
AND AUTHORITIES RE POST-
INJUNCTION REQUESTS FOR
PRODUCTION**

---

1

## TABLE OF CONTENTS

2   I.   INTRODUCTION ................................................................... 1

3   II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................... 3

4        A.   The Injunction Issued After Rimini's Adjudicated Serial Infringement and
                  Attempted Concealment of Its Illegal Conduct ..................................... 3
5        B.   Pre-Trial Document Productions in *Rimini I* and *Rimini II* ........................ 4
         C.   Oracle's Post-Injunction Requests for Production ................................. 5
6        D.   Custodians and Search Terms ................................................... 5
         E.   Oracle's Proposed Production Schedules .......................................... 7
7        F.   The Ninth Circuit Upholds the Injunction ........................................ 7

8   III. LEGAL STANDARD ............................................................... 8

9   IV.  ARGUMENT ..................................................................... 9

10       A.   Custodial Production is Necessary To Determine Rimini's Actual Post-Injunction
                  Conduct ....................................................................... 10
11       B.   Oracle's Proposed Custodians And Search Terms Are Likely To Identify Highly
                  Relevant Custodial Documents .................................................. 11
12
13            1.   Oracle's Proposed 19 Custodians Are An Appropriate And Necessary
                       Cross-Section of Relevant Personnel ...................................... 11
14            2.   Oracle's Proposed Search Terms Are Relevant And Proportional. .......... 15
              3.   Rimini's Proposed Search Terms Are Facially Insufficient .................... 16
15
16       C.   The Court Should Impose A Production Schedule RequiringRimini To Complete
                  Production For Several Custodians Per Week Through Early October ............... 18
17   V.   CONCLUSION ................................................................... 19

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashker v. Cate*,
  No. 09-CV-05796-CW, 2013 WL 4026971 (N.D. Cal. 2013)...................................................8

*Fed. Trade Comm'n v. AMG Servs., Inc.*,
  No. 2:12-CV-536-GMN-VCF, 2015 WL 5097526 (D. Nev. Aug. 28, 2015) ...........................8

*Hologram USA Inc. v. Pulse Evolution Corp.*,
  No. 2:14-CV-00772-GMN-NJK, 2016 WL 3663942 (D. Nev. July 6, 2016) ...........................8

*Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*,
  No. 2:10-CV-01385-JCM, 2011 WL 4573349 (D. Nev. Sept. 29, 2011), *order
  corrected on reconsideration sub nom. Painters Joint Comm. v. J.L. Wallco,
  Inc.*, No. 2:10-CV-1385 JCM PAL, 2011 WL 5854714 (D. Nev. Nov. 21,
  2011) ......................................................................................................................................8

*Sargant v. HG Staffing, LLC*,
  No. 3:13-CV-00453-LRH, 2014 WL 1653273 (D. Nev. Apr. 23, 2014)...................................8

*Williams v. Univ. Med. Ctr. of S. Nevada*,
  760 F. Supp. 2d 1026 (D. Nev. 2010) .....................................................................................8

**Other Authorities**

Fed. R. Civ. P. 26 ...........................................................................................................................8, 18

Fed. R. Civ. P. 34(b) ..........................................................................................................................18

Fed. R. Civ. P. 37(a).........................................................................................................................1, 8

Local Rule 26-7.....................................................................................................................................1

ii

**NOTICE OF MOTION AND MOTION**

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 26-7, Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively "Oracle") respectfully move the Court for an order compelling Defendant Rimini Street, Inc. ("Rimini") to produce certain documents in response to Oracle's Supplemental Requests for Production of Documents 1–5, 8–11, and 13 ("Supplemental RFPs").  This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of David R. Kocan ("Kocan Decl.") and exhibits thereto, the entire record in this action, and such other matters and argument as may be presented to the Court.  In light of the expedited Injunction-compliance discovery schedule currently in force, Oracle concurrently files a Motion for Shortened Time, asking that Rimini's responsive brief be due August 26 (seven rather than 14 days after Oracle's Motion to Compel), and that Oracle's reply brief be due August 29 (three rather than seven days after Rimini's response).

## I.    **INTRODUCTION**

Although Oracle has been seeking Injunction-compliance information from Rimini since January, and although this Court ordered such discovery months ago (ECF Nos. 1215, 1232), Rimini to date has failed to produce ***any*** custodial documents.  Custodial documents have been key throughout this litigation in establishing Rimini's actual practices—as opposed to what Rimini claims to be doing.  Over and over, custodial documents have shown that Rimini's claims about its practices are false.  Three days ago, in materially rejecting Rimini's appeal of the Injunction, the Ninth Circuit found that "Rimini's internal emails" were powerful evidence supporting the Injunction's issuance.  ECF No. 1236 at 3.  Custodial documents thus are critical to assessing Rimini's compliance with the Court's Injunction, ECF No. 1166.  Yet Rimini improperly insists on limiting the number of Rimini custodians to a mere six people, on narrowing the number of documents to be reviewed by Rimini to 20,000 to 30,000 documents, and on reducing the number of proposed search terms from 280 to 33. Each of these three roadblocks is unreasonable, as the Parties' experience during this lengthy litigation makes clear.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

First, Oracle properly identified 19 custodians, and Oracle explained why each custodian is likely to have relevant documents.  This number of custodians is less than half the Rimini custodians in the underlying action that led to the issuance of the Injunction.  Rimini's insistence on a mere six custodians is wholly inconsistent with the history of this litigation, which has shown that documents from witnesses across Rimini's business are needed to establish Rimini's infringing business practices.

Second, Rimini seeks to impose a drastic limitation:  that Rimini's review be limited to a maximum total of "20,000 to 30,000 documents," leaving Oracle with an ultimate production that is even smaller.  Rimini's proposal disregards that this technical case is, by its nature, document-intensive.  To put Rimini's proposal into perspective, Rimini produced *ten million documents* in the two underlying litigations.  Even non-parties routinely produced more than 30,000 documents. In fact, 24 produced more than 30,000 and six produced more than 100,000 in *Rimini I* and *Rimini II*.  Rimini's proposed, truncated production will not adequately shed light on Rimini's post-Injunction practices.  The improper nature of Rimini's limitation is underscored by Rimini's failure to explain which responsive documents above the arbitrary limit would be excluded. Oracle understandably is concerned that the most relevant documents would be the ones that are withheld from review and production.

Third, regarding search terms, the parties have had almost a decade of experience with document discovery relating to the issues at hand.  Oracle proposes a carefully designed list of 280 relevant terms.  Rimini refuses to accept Oracle's list of terms, refuses to explain why any term might be irrelevant, refuses to make any meaningful effort to narrow search terms that it believes to be overbroad, and even refuses to tell Oracle how many hits there have been for each proposed term as to the majority of Oracle's proposed custodians.  Rather, Rimini insists that only 33 terms that generate no more than 30,000 documents for it to review be used.  Rimini's proposal would likely render Injunction-compliance discovery a pointless exercise.

The Injunction has been in force since November 2018, when the Ninth Circuit denied Rimini's motion to stay, and three days ago, the Ninth Circuit upheld the Injunction with minor revisions, relying upon exactly the sort of documents that Rimini continues to withhold.  Oracle

2

raised concerns about Rimini's compliance starting in January 2019.  Rimini then dragged its feet at every turn, making discovery as slow and arduous as possible.  If Rimini can avoid meaningful discovery obligations, then Rimini can avoid compliance with the Injunction altogether.  One might expect a publicly traded company to take pains to demonstrate that it is complying with a federal court order.  Yet, even after being sanctioned for destroying evidence, after lying about its support practices, and after Judge Hicks found that Rimini engaged in "significant litigation misconduct," ECF No. 1164 at 14, Rimini's pattern of deception and obfuscation continues.

Oracle respectfully requests that the Court compel Rimini to produce custodial documents for Oracle's proposed custodians pursuant to Oracle's proposed search terms, starting immediately, to be completed by October 11.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Injunction Issued After Rimini's Adjudicated Serial Infringement and Attempted Concealment of Its Illegal Conduct

Following a jury trial and Rimini's unsuccessful appeal of its liability for infringing 93 of Oracle's copyrights in this *Rimini I* lawsuit—infringement upon which Rimini's business was based, ECF No. 1164 at 6—this Court entered the Injunction, which took effect in November 2018.  In a press release that month, Rimini described the Injunction as "legally flawed." Declaration of John Polito in Support of Oracle's Motion to Permit Limited Discovery Regarding Rimini's Compliance with the Court's Permanent Injunction, Ex. 23, ECF No. 1199-24.  Last Friday, the Ninth Circuit rejected Rimini's appeal and upheld the Injunction, with minor modifications.

The Injunction prohibits Rimini from engaging in certain practices with respect to certain Oracle product lines.  Specifically, and as reflected in Oracle's list of five potential Injunction violations served on Rimini pursuant to the Court's June 21 scheduling order, Rimini's conduct at issue in these Injunction-compliance proceedings includes:  (1) cloud-hosting of PeopleSoft software and support materials; (2) cross-use of PeopleSoft software and support materials; (3) cross-use of JD Edwards software and support materials; (4) copying of JD Edwards source

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1    code;[1] and, (5) distribution of PeopleSoft and JD Edwards software and support materials. *See*

2    Kocan Decl., ¶¶ 10, 28 & Exs. 3, 20. In addition, these proceedings will address whether Rimini

3    properly notified its personnel of the Injunction, as the Injunction requires.

4            Rimini's current efforts to resist meaningful custodial production relating to its

5    compliance with the Injunction must be viewed against its long-documented history of litigation

6    misconduct and illegitimate denial of its unlawful activities. For example, before the *Rimini I*

7    trial, Rimini vigorously disputed Oracle's claim of massive unlicensed copying and cross-use of

8    Oracle's software. Rimini's Answer to Oracle's initial Complaint set forth in detail an entirely

9    fictitious development process, involving purported "silos" that kept customer software separate,

10   and avoiding cross-use by allegedly developing a separate fix or update for each customer.

11   Multiple Rimini senior executives repeated this lie during their depositions. ECF No. 794 at

12   804:25–805:5 (Ravin); ECF No. 866 at 3173:1–3175:3 (Slepko). Ultimately, as the Court has

13   explained, at trial Ravin blithely contradicted his prior sworn testimony, stating at trial that cross-

14   use occurred "all the time." ECF No. 792 at 552:1–13; ECF No. 1164 at 14. Rimini falsely

15   maintained in its Answer and throughout discovery that a software library never existed at Rimini

16   Street. ECF No. 30 ¶ 34 (denying existence of software library); ECF No. 153 ¶ 34 (same). But as

17   the Court also found, the evidence ultimately showed that Rimini *did* maintain what was referred

18   to internally at Rimini Street as the "software library," and the Court sanctioned Rimini for the

19   deliberate destruction of its collection of Oracle software. ECF No. 466. As another example, in

20   granting in part Oracle's first partial summary judgment motion, the Court rejected Rimini's

21   claims that it had no "generic" development environments, relying in large part on evidence from

22   Rimini's custodial documents. ECF No. 474 at 11, 13, 27–28; ECF No. 246 at 11–14, 20–24.

23       **B.    <u>Pre-Trial Document Productions in *Rimini I* and *Rimini II*</u>**

24           After almost a decade of litigation in *Rimini I* and *Rimini II*, the Parties are well aware that

25   the issues in dispute are document-intensive. Using hundreds of search terms that the Parties

26

27   ───────────────

     [1] In light of the Ninth Circuit's opinion, ECF No. 1236, Oracle informed Rimini on August 16
28   that it was limiting the scope of the fourth potential Injunction violation to copying of JD
     Edwards source code, rather than also accessing such code.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1  negotiated, Rimini produced over 900,000 documents in pre-trial discovery in *Rimini I*, at least

2  730,000 of which were custodial documents.  Kocan Decl. ¶ 3.  Third parties produced an

3  additional one million documents in *Rimini I*, with six third parties producing more than 30,000

4  documents, and three producing over 100,000 documents.  *Id.* ¶ 4.

5       In pre-trial discovery in *Rimini II*, using a technology-assisted review protocol, Rimini

6  produced over nine million documents, at least 4.7 million of which were custodial documents.

7  *Id.* ¶ 5.  Third parties produced over 3.5 million documents in *Rimini II*, with 18 third parties

8  producing more than 30,000 documents and five producing over 100,000 documents.  *Id.* ¶ 6.

9       **C.    Oracle's Post-Injunction Requests for Production**

10      In June, the Court authorized Oracle to serve up to 15 requests for production ("RFPs")

11  regarding Rimini's Injunction compliance.  ECF No. 1232.  It did not limit Oracle to seeking non-

12  custodial documents.  To date, Oracle has served 13 post-Injunction RFPs ("Supplemental

13  RFPs").  Kocan Decl., ¶¶ 11–14 & Exs. 4–6.  At issue in this Motion are Oracle's Supplemental

14  RFP Nos. 1–5 (First Set), served May 1, Nos. 8–11 (Third Set), served July 23, and No. 13 (Fifth

15  Set), served August 15, all of which call for production of custodial documents.

16      As of the filing of this Motion, Rimini has produced 84,817 non-custodial documents and

17  not a single custodial document.  Kocan Decl. ¶ 2.

18      **D.    Custodians and Search Terms**

19      After the Court issued its post-Injunction scheduling order on June 21, 2019, Oracle

20  reminded Rimini by letter dated June 28, 2019 that Rimini's productions should include custodial

21  documents.  *Id.*, Ex. 7 (June 28, 2019 letter from K. Hartnett to E. Vandevelde).  On July 9, 2019,

22  Rimini proposed an extremely limited custodial search and production from only four custodians,

23  notably excluding any executive custodians.  *Id.*, Ex. 8 (July 9, 2019 letter from C. McCracken to

24  J. Minne).

25      On July 12, Oracle proposed 20 custodians grouped into five categories as a tailored

26  cross-section of the Rimini departments most likely to have relevant information about

27  compliance with the Injunction.  *Id.*, Ex. 9 (July 12, 2019 letter from J. Minne to C. McCracken):

28  executives and policymakers, in-house tool developers, IT and environment support personnel,

5

1 PeopleSoft developers, and JD Edwards developers.

2 Oracle originally proposed 270 search terms, grouped into 16 categories, based on the

3 parties' long experience with the topics at issue and the design of effective search terms in this

4 matter. *Id.* Oracle asked Rimini to collect documents for each proposed custodian and provide

5 information about the number of documents hit by each search term for each proposed custodian

6 to allow for further negotiation and refinement of terms as necessary. *Id.*

7 Rimini rejected Oracle's proposed custodians and search terms and provided search term

8 hit counts for only eight of Oracle's proposed custodians. *Id.*, Ex. 14 (July 30, 2019 email from J.

9 Tryck). Despite Rimini's intransigence, Oracle proposed several potential compromises with

10 Rimini, including reducing the number of custodians to 12 (subject to Oracle's ability to add back

11 custodians if case developments warranted). *Id.*, Ex. 16 (August 2, 2019 letter from J. Minne to J.

12 Tryck). Oracle also dropped two categories of search terms, and broke several search terms that

13 Rimini identified as hitting on large numbers of documents into multiple smaller, more precise

14 search terms. *Id.*[2] Rimini has rejected all of these compromises. Then, on August 5, 2019,

15 Rimini further narrowed its offer of custodial discovery, stating that it would review (not

16 produce) no more than 30,000 custodial documents across only six custodians. *Id.*, Ex. 17

17 (August 5, 2019 letter from J. Tryck to J. Minne). Rimini again failed to provide meaningful

18 information to Oracle concerning how the removal of particular custodians or terms would impact

19 the production of relevant documents. Rimini also disclosed that one of Oracle's requested

20 topical custodians (the to-be-identified lead developer for certain post-Injunction JD Edwards

21 updates) was the same as a named custodian, such that Oracle's request for 20 custodians was

22 actually for 19. *Id.*

23 On August 13, Rimini unilaterally selected 33 of Oracle's proposed search terms totaling

24 fewer than 30,000 document hits and stated that, starting at 5 p.m. on August 15, Rimini would

25 run those search terms (or any equally narrow set of search terms) against six custodians to

26

27

28 [2] As discussed below, Oracle dropped an additional five search terms on August 16 in light of the Ninth Circuit's opinion.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1    construct the set of documents it would review and from which it would make a rolling custodial

2    production.  *Id.*, Ex. 19 (August 13, 2019 email from J. Tryck to D. Kocan).

3             **E.**      **Oracle's Proposed Production Schedules**

4             Since the Court's discovery scheduling order, Oracle has repeatedly proposed to Rimini

5    that that the Parties stipulate to a reasonable production schedule for custodial documents.  Rimini

6    has ignored or rejected Oracle's proposed schedules as "absurd" while failing to suggest an

7    alternative timeline.  *Id.*, Ex. 17 (August 5, 2019 letter from J. Tryck to J. Minne).  Rather, Rimini

8    continues to insist (contrary to the applicable rules) that it has no obligation to produce documents

9    before the close of discovery.  *Id.*, Ex. 15 (July 30, 2019 email from C. McCracken).

10            **F.**      **The Ninth Circuit Upholds the Injunction**

11            Last Friday, August 16, the Ninth Circuit denied Rimini's appeal challenging the

12   Injunction and upholding all but two paragraphs and four words of the Injunction.  In rejecting

13   Rimini's argument that the record failed to establish a "causal connection" between Rimini's

14   improper conduct and the harm to Oracle, the Ninth Circuit cited exactly the type of custodial

15   documents that Rimini seeks to withhold here:

16            The court pointed to the fact that Oracle and Rimini were direct competitors, explained
              that Rimini was able to gain increasing market share by offering lower prices for its
17            service than Oracle offered, and that these lower prices were possible because Rimini's
              infringing conduct saved the company time and money. This conclusion was supported by
18            the record, ***including Rimini's own internal e-mails***.

19

20   ECF No. 1236 at 3 (emphasis added).  That same day, Oracle informed Rimini that, in light of the

21   Ninth Circuit's modification of the Injunction, Oracle was modifying its description of Rimini's

22   alleged Injunction violation with respect to JD Edwards source code and withdrawing five search

23   terms.  Kocan Decl., ¶ 28 & Ex. 20.  Rimini again rejected Oracle's proposed custodians, search

24   terms, and production schedule.

25            On Monday, August 19, Rimini issued a press statement failing to acknowledge that the

26   Injunction remains largely in force, instead stating that the Ninth Circuit "did not vacate the

27   injunction entirely," Kocan Decl., ¶ 30 & Ex. 22, in an apparent effort to confuse the public and

28   its customer base about its appellate loss and the Injunction's current scope and force.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1

### III.   LEGAL STANDARD

2       A party may move to compel discovery where, as here, a party fails to produce requested

3   documents.  Fed. R. Civ. P. 37(a)(1), (3)(B)(iv).  Under Rule 37, an "incomplete disclosure,

4   answer, or response" is treated as a failure to respond.  Fed. R. Civ. P. 37(a)(4); *see also Sargant*

5   *v. HG Staffing, LLC*, No. 3:13-CV-00453-LRH, 2014 WL 1653273, at *2 (D. Nev. Apr. 23,

6   2014).

7       It is ***Rimini's*** burden to justify its refusal to produce relevant custodial documents in

8   response to Oracle's Supplemental RFPs.  Where, as here, the movant (Oracle) "has in good faith

9   conferred or attempted to confer with the party resisting discovery," and "the information in

10   controversy is relevant and discoverable under Rule 26," the resisting party (Rimini) "carries *a*

11   *heavy burden* of demonstrating why discovery should be denied."  *Fed. Trade Comm'n v. AMG*

12   *Servs., Inc.*, No. 2:12-CV-536-GMN-VCF, 2015 WL 5097526, at *2 (D. Nev. Aug. 28, 2015)

13   (internal quotation marks and citations omitted, emphasis added).  As "the party opposing

14   discovery," Rimini "bears the burden of showing the discovery is overly broad and [un]duly

15   burdensome, or not relevant."  *Painters Joint Comm. v. Employee Painters Trust Health &*

16   *Welfare Fund*, No. 2:10-CV-01385-JCM, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011),

17   *order corrected on reconsideration sub nom. Painters Joint Comm. v. J.L. Wallco, Inc.*, No. 2:10-

18   CV-1385 JCM PAL, 2011 WL 5854714 (D. Nev. Nov. 21, 2011).

19       Courts may order prompt production when granting motions to compel.  *Hologram USA*

20   *Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-00772-GMN-NJK, 2016 WL 3663942 at *3 (D. Nev.

21   July 6, 2016) (ordering party to produce all responsive documents within 11 days); *Ashker v.*

22   *Cate*, No. 09-CV-05796-CW, 2013 WL 4026971 at *7 (N.D. Cal. 2013) (rejecting argument that

23   party had no obligation to produce before the close of discovery and setting short schedule for

24   document production beginning two weeks after order granting motion to compel); *Williams v.*

25   *Univ. Med. Ctr. of S. Nevada*, 760 F. Supp. 2d 1026, 1033 (D. Nev. 2010) (ordering production of

26   documents within ten days).

27

28

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1

## IV.   **ARGUMENT**

2     Rimini's Court-ordered response to Oracle's list of five potential Injunction violations

3  denies that Rimini is engaging in any of the identified conduct or, remarkably, that Rimini ever

4  has, notwithstanding liability findings in *Rimini I* and the considerable *Rimini II* evidence to the

5  contrary. Particularly in light of the history of this litigation, which has involved Rimini denying

6  unlawful practices that are eventually proven to exist (such as the cross-use covered by the

7  Injunction), meaningful custodial production by Rimini showing Rimini's ***actual*** post-Injunction

8  behavior is necessary to determine whether Rimini is in compliance with the Injunction.

9     Custodial documents will provide essential context and meaning to Rimini's technical

10  production, as such documents have throughout this litigation.  As the Ninth Circuit has held,

11  custodial documents that Rimini produced during pre-trial discovery in *Rimini I* provided key

12  support to this Court's finding that "Rimini was able to gain increasing market share by offering

13  lower prices for its service than Oracle offered, and that these lower prices were possible because

14  Rimini's infringing conduct saved the company time and money"—a finding that ultimately led

15  to the very Injunction that Oracle now seeks to enforce.  ECF No. 1236 at 3.  Rimini is a

16  geographically distributed software support company whose employees, managers and executives

17  operate through regular, substantive communications amongst themselves about Rimini's daily

18  operations, including with respect to the processes covered by the Injunction.  Custodial

19  production will provide highly relevant information about Rimini's understanding of the

20  Injunction and its actions taken in response, including software development and testing

21  schedules, planning documents, drafts of technical specifications, and instant messages and e-

22  mails sent in the course of implementing the same.

23     Oracle seeks to hold Rimini to account for defying the Injunction that was designed to

24  prevent ongoing harm to Oracle and the public.  Absent the custodial production that Oracle

25  seeks, there is a significant risk that noncompliance by Rimini will go undetected.  Oracle

26  requests that the Court compel a custodial production based on Oracle's 19 proposed custodians

27  and 280 proposed search terms, and order Rimini to complete promptly the production of

28  responsive, custodial documents for three or four custodians per week, beginning the week of

9

September 2–6 and finishing the week of October 7–11.  Production at a slower pace will prejudice Oracle's ability to file a motion for order to show cause on the current schedule.

### A.    Custodial Production is Necessary To Determine Rimini's Actual Post-Injunction Conduct

Rimini's custodial documents are necessary to determine how Rimini actually operates its business post-Injunction with respect to the practices at issue in the Injunction, and the extent to which Rimini has violated the Injunction.  Throughout both *Rimini I* and *Rimini II*, Rimini's internal e-mails, instant messages, and draft and final documents related to Rimini's support of Oracle software have brought to light Rimini's actual practices.  Likewise, this discovery is essential in the face of Rimini's falsehoods.

Here, Rimini has categorically denied engaging in the five practices identified by Oracle as likely violative of the Injunction:  using PeopleSoft software other than on a customer's own systems (such as the cloud), cross-using both PeopleSoft and JD Edwards software, copying JD Edwards source code, and distributing PeopleSoft and JD Edwards software and support materials.  Both non-custodial technical ***and*** custodial productions are necessary to test Rimini's denials.  For example (and by analogy), Oracle has moved for partial summary judgment in *Rimini II* based on (among other things) Rimini's ongoing cloud hosting and cross-use, which are practices that not only violate the Injunction but also are bases for Rimini's liability in *Rimini II*. In support of its motions for summary judgment to establish liability on those topics, Oracle relied on a significant number of custodial documents from the *Rimini II* time period, including documents obtained from custodians from whom Oracle is currently requesting Injunction-compliance discovery.  Kocan Decl, ¶ 7.  Likewise here, custodial documents from Rimini's technical managers, executives, developers and IT personnel for the period after the Injunction, and not produced in *Rimini II*, will likely support a motion for an order to show cause, because such documents reveal Rimini's actual day-to-day practices regarding Rimini's support practices and therefore its Injunction compliance.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

### B. Oracle's Proposed Custodians And Search Terms Are Likely To Identify Highly Relevant Custodial Documents

Oracle's goal is to obtain relevant documents from Rimini so that it can assess Rimini's Injunction compliance and fully support any show cause motion to obtain compliance. Accordingly, Oracle carefully selected 19 custodians and 280 search terms that are indisputably relevant.

Rimini has refused to engage in meaningful or substantive discussion with Oracle about its proposed approach or how to narrow it intelligently. Instead, Rimini has sought to impose arbitrary and vastly underinclusive parameters for custodial production, proposing six custodians and 33 search terms that are woefully inadequate to the serious task at hand. Rimini's approach would exclude unquestionably relevant custodians. And Rimini justifies its selection of 33 search terms not because they are most relevant, but instead because combined they result in Rimini's arbitrary number of fewer than 30,000 documents to be reviewed. Kocan Decl, ¶ 27 & Ex. 19 ("[I]n light of the limited time remaining for fact discovery, Rimini has identified from Oracle's latest round of search terms a subset of terms that hit on a reasonable number of documents.").

#### 1. Oracle's Proposed 19 Custodians Are An Appropriate And Necessary Cross-Section of Relevant Personnel

Rather than seeking documents from all potentially relevant custodians, Oracle used its knowledge from years of litigating with Rimini to propose a tailored list of 19 Rimini custodians (fewer than half the 55 (*Rimini I*) and 50 (*Rimini II*) custodians at issue in the underlying litigations). Twelve of those custodians have been deposed about Rimini's earlier conduct akin to that at issue here. Oracle's proposed custodians represent a cross-section of Rimini departments whose practices are at issue. The 19 custodians cut across five categories that are the most critical for assessing various aspects of Injunction compliance:

- Discovery from a key subset of **Rimini's executives** is essential, given their role in setting and implementing Rimini's policies implicated by the Injunction.

- Discovery from **Rimini's internal tool developers** is necessary because Rimini's asserted changes to their software tools, particularly AFW (which automated Rimini's barred cross-use), are relevant to Injunction compliance;

11

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

- Discovery from **Rimini's environment management team** is necessary because Rimini has asserted in response to Oracle's interrogatories that ███████████████████████████████████████████████████ ██████████████;

- Discovery from the **Rimini engineers who develop and test updates for Oracle's PeopleSoft and JD Edwards software** (two distinct categories) is needed to determine whether Rimini is continuing to cross-use Oracle software in violation of the Injunction.[3]

The following chart lists and briefly details Oracle's proposed 19 custodians, demonstrating their roles and relevance to the specific Injunction compliance issues at hand:

| Category | Name | Rimini I custodian? | Rimini II custodian? | Role/Notes |
|---|---|---|---|---|
| **Executives and Policymakers** | Seth Ravin | Yes | Yes | CEO, ████████ |
| | Nancy Lyskawa | Yes | Yes | SVP ███████████ |
| | Sebastian Grady | No | Yes | President, ████ |
| **In-house Tool Developers** | Rick Frank | No | No | ████████ |
| | Don Sheffield | No | Yes | ████████ |
| **Customer Environment Support Personnel** | Kaitland Conley | No | No | ████████ |

[3] Oracle did not propose any custodians from many additional categories of likely relevant Rimini personnel, including marketing personnel, administrative and financial professionals, and engineers tasked to product lines other than PeopleSoft and JD Edwards.

12

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

| | | | | | |
|---|---|---|---|---|---|
| 1 | | Manjula Hosalli | Yes | Yes | ████████████ |
| 6 | | David Miller | No | Yes | ████████████ |
| 10 | *PeopleSoft Developers* | Jim Benge | Yes | Yes | Proposed by Rimini, ████ |
| 12 | | Tim Conley | Yes | Yes | ████████████ |
| 14 | | Brenda Davenport | Yes | Yes | ████████████ |
| 17 | | Susan Tahtaras | Yes | Yes | ████████████ |
| 21 | | Kevin Wood | No | No | ████████████ |
| 25 | | Lead PeopleSoft Post-Injunction Developer | TBD | TBD | Lead developer for post-Injunction PeopleSoft software updates (to be identified by Rimini) |
| 27 | *JD Edwards Developers* | Ray Grigsby | Yes | Yes | VP Global JD Edwards Service Delivery; ████ |

13

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

| | | | | |
|---|---|---|---|---|
| | Michael Jacob | No | No | ██████████ |
| | Sai Sharma | No | Yes | ██████████ |
| | Ron Teegarden | No | No | Proposed by Rimini; ██████ |
| | Gary Tidwell | No | No | ██████████ |

Rimini raises two objections to Oracle's proposed custodian list, both of which lack merit. First, Rimini asserts that the three executive level employees that Oracle proposed (Mr. Ravin, Ms. Lyskawa, and Mr. Grady) "are substantially less likely to have information relevant to the process changes Rimini implemented." Kocan Decl., Ex. 10 (July 17, 2019 Letter from C. McCracken to J. Minne). As Rimini well knows, days of trial and deposition testimony from Mr. Ravin, deposition testimony from Ms. Lyskawa and Mr. Grady, and many custodial documents from all three of these individuals underscore their likely personal involvement with forming and implementing policies implicated by the Injunction. ██████████████

██████████████████████████████████████████

██████████████████████████████████████████

The limited hit count data Rimini has provided to Oracle confirms their importance: the executive custodians each generated far more hits than any other custodians for highly relevant search terms, including thousands of hits for terms like "AFW", [4] "injun*", and "licens*." *Id.*, Ex. 13 (July 26, 2019 email from J. Tryck to J. Minne). Contrary to Rimini's assertions, these executives are involved in conduct related to compliance with the Injunction.

---

[4] Rimini's AFW software automates cross-use by allowing Rimini to take a software update developed for one Rimini customer and replicate that update for multiple other Rimini customers. The "AFW" search term is therefore highly likely to yield documents relevant to whether Rimini is continuing to cross-use Oracle software in violation of the Injunction.

14

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

Rimini's second objection is burden, with Rimini asserting that "20 custodians is excessive and wholly disproportionate to the process changes at issue." *Id.*; *see also* Kocan Decl., Ex. 12 (July 23, 2019 letter from C. McCracken to J. Minne). As it has throughout this process, Rimini's burden argument is directed to the number of custodians as a proxy for the size of the expected production, and is divorced from the actual issues and information implicated by each custodian. Oracle did not choose custodians arbitrarily, but proposed a select cross-section of Rimini personnel with responsibilities relevant to the Injunction. Rimini has refused to produce the hit counts for the majority of the custodians that Oracle has requested and has failed to provide information from which meaningful data about overlapping hits and deduplication can be derived. It thus has failed to demonstrate any *undue* burden, which by definition requires Rimini to make some showing that the custodians that Oracle has proposed are unlikely to have uniquely relevant and probative information.

## 2.    Oracle's Proposed Search Terms Are Relevant And Proportional

Rimini has also refused to agree to or negotiate a reasonable set of search terms in response to Oracle's proposed search terms list. Rather, and remarkably, Rimini insists on 33 self-selected search terms that will allow it to reverse-engineer a set of fewer than 30,000 documents to be reviewed. *Id.*, Ex. 17 (August 5, 2019 letter from J. Tryck to J. Minne). This approach is unlikely to locate and produce the documents most relevant to Injunction compliance.

Notably, the limited information that Rimini has provided Oracle about its proposed custodians and search terms (hit counts for up to eight of its proposed 19 custodians) show that Oracle's terms are working and returning documents relevant to Injunction compliance. For example, search terms related to software updates (including Rimini's naming convention for those updates) hit on numerous documents for proposed technical custodians, while terms related to the Injunction show substantial hits for proposed executive custodians. Rimini has failed to substantiate its assertions that Oracle's search terms are irrelevant or overbroad.

After almost a decade of litigation, it is well established that the issues in this dispute are document-intensive. Rimini has already produced over ten million documents to date (and presumably collected and reviewed many times that number). But Rimini's proposed document

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1   cap would put Rimini, whose potential violation of the Injunction is central to the current

2   proceedings, in the position of *reviewing* fewer documents than at least two dozen non-parties

3   across *Rimini I* and *Rimini II* have **produced**.  In response to third-party subpoenas in *Rimini II*,

4   non-parties to the litigation reviewed and produced tens of thousands more documents than

5   Rimini claims it is able to review.  Eighteen third parties produced more than 30,000 documents

6   in response to subpoenas in *Rimini II*, with five producing over 100,000 documents.  Rimini

7   cannot credibly claim that it should produce (let alone review) fewer documents regarding its

8   compliance with a federal permanent injunction than third parties to this litigation produced in

9   response to document subpoenas.

10                      **3.      Rimini's Proposed Search Terms Are Facially Insufficient**

11          On August 13, Rimini identified 33 search terms that it would be willing to use in

12   identifying potentially responsive documents.  Even with the limited data that Rimini has

13   provided, these search terms are inadequate to meet Oracle's needs.

14          For example, Oracle's Supplemental RFP 10 seeks documents concerning Rimini's

15   development and distribution of certain post-Injunction updates identified in Rimini's discovery

16   responses.[5]  Rimini's Response to Oracle's Supplemental Interrogatory No. 5 shows that, in 2019,

17   Rimini's updates for both JD Edwards and PeopleSoft (both product lines named in the

18   Injunction) were released in bundles starting with the string "RS19."  Individual updates were

19   prefixed with a product indicator ('J' for JD Edwards and 'P' for PeopleSoft), a two-letter country

20   code, and a letter indicating the particular application module that was affected ('F' for Financials

21   and 'P' for HR/Payroll).  Accordingly, Oracle proposed search terms that match these naming

22   patterns:  "RS19*", "J??F", "J??P", "P??F", and "P??P".  Rimini has rejected all of these search

23   terms. Oracle's Supplemental RFP 3 seeks copies of both draft and final versions of updates and

24

25   _____

26   [5] "All Communications Concerning the development and distribution of updates listed in
     Rimini's First Supplemental Responses to Oracle's Supplemental Interrogatories 1–5 and
     Supplemental Requests for Production Nos. 1–5 including, without limitation, the updates
27   referenced in Exhibit D and the client delivery documents that Rimini produced."  Kocan Decl.,
     ¶ 13 & Ex. 5.
28

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

of any other documents sent by Rimini to customers post-Injunction.[6]  From *Rimini I* and *Rimini II* discovery, Oracle knows Rimini's standard names for updates for JD Edwards and PeopleSoft are likely to match on the search terms "1099*", "Year-End*", "HCM*", and "FSCM*".  Rimini has also rejected each of these search terms.  Rimini has even rejected the term "update*", though Rimini's development and testing of updates is central to Oracle's assertions that Rimini may be violating the Injunction.

Similarly, Oracle's Supplemental RFP 9 seeks all communications relating to specific types of source code and other technical files, including files that Rimini transmitted to customers post-Injunction using AFW.[7]  Oracle proposed search terms corresponding to each of the file and document types listed in the RFP.  Rimini has rejected all but one of those search terms.

Rimini's rejections are not limited to technical terms:  while Oracle's Supplemental RFP 5 seeks policies and memoranda (and drafts thereof) regarding Rimini's post-Injunction support processes,[8] Rimini rejected 17 different terms, including "polic*" (over 13,000 document hits) and "white paper*" (almost 900 document hits), relevant to this RFP.

Oracle has proposed search terms likely to identify relevant documents.  Rimini has agreed only to a few of those search terms so that the hits they return when run will fit within Rimini's self-imposed hit-count limit.  The search terms Rimini has proposed, on the other hand, do not identify the documents most relevant to the Parties' dispute, nor does Rimini claim they do so; they merely reduce the scope of Rimini's discovery obligations.  The Court should order

---

[6] "All Documents Rimini provided to its customers in connection with its support of Oracle Software and Support Materials since November 5, 2018, including without limitation tax and regulatory updates, break fixes, new functionality, documentation, or any other files."  Kocan Decl., ¶ 12 & Ex. 4.

[7] "All Communications Concerning .sqr, .sqc, .,sql, .txt, .cbl, .dat, .xml, .xsd, .pdb, .dat, .dms, 'Technical Specification,' 'Functional Specification,' 'Test Plan,' 'Dev Instructions,' 'Build Instruction' and RS-prefixed files distributed by Rimini on or after November 5, 2018, including without limitation, files identified in the AFW records produced as part of RSI_AFW001."  Kocan Decl., ¶ 13 & Ex. 5.

[8] "All policies or memoranda Rimini wrote or developed in response to the Injunction regarding Rimini's support processes, including but not limited to notices to all subsidiaries, affiliates, employees, directors, officers, principals, and agents pursuant to paragraph 1 of the Injunction," Kocan Decl., ¶ 12 & Ex. 4.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1   Rimini to implement Oracle's proposed search terms, which are intended to identify relevant

2   documents to the best of Oracle's ability in light of the limited information available to it.

3   **C.     The Court Should Impose A Production Schedule Requiring Rimini To
     Complete Production For Several Custodians Per Week Through Early October**

4

5   Oracle asks that the Court require Rimini to produce custodial documents on a now-

6   necessarily tight, but doable, schedule.  Oracle's expected motion for an order to show cause is

7   due October 20.  To avoid any further prejudice to Oracle,[9] Oracle asks the Court to order Rimini

8   to complete three custodial productions per week starting the week of September 2–6, increasing

9   to completion of four custodial productions per week starting the week of September 23–27.

10  Under that schedule, Rimini would complete production for 13 custodians by September 27, and

11  for the remaining six custodians by October 11.

12  Rimini's position that it has no obligation to produce documents in response to Oracle's

13  requests for production until the close of fact discovery is both wrong as a matter of law and

14  extremely prejudicial to Oracle.  Kocan Decl., Ex. 15 (July 30, 2019 email from C. McCracken).

15  Under Rule 34(b)(2)(B), after providing a written response, the "production must then be

16  completed no later than the time for inspection specified in the request or another reasonable time

17  specified in the response."  Oracle's requests specified that documents should be produced for

18  inspection and copying "no later than thirty days from the date of service."  Kocan Decl., Ex. 5 at

19  1.  Rimini did not seek an extension, and did not propose a reasonable, alternative time in its

20  response.  Accordingly, Rimini's responsive productions to RFPs 1–5 are late.

21  Oracle's repeated efforts to negotiate an appropriate production schedule with Rimini

22  have been unsuccessful.  For document-intensive cases such as this matter and *Rimini II*, a rolling

23  production that spans a month or more can be a reasonable compromise.  Oracle sought just such

24  a compromise over the last six weeks, and was rebuffed repeatedly.  Kocan Decl., Exs. 9–20.

25  While Rimini has finally agreed in concept to a rolling production, Kocan Decl., Ex. 19 (August

26

27  ───────────────
    [9] Oracle's initial expert disclosures are due September 5.  Oracle will supplement those
28  disclosures pursuant to Fed. R. Civ. P. 26(e) with respect to any documents that Rimini produces
    too late to be considered for inclusion in the September 5 disclosures.

18

1   13, 2019 email from J. Tryck to D. Kocan), Rimini has not committed to any end date for that

2   production.  Because lengthy meet-and-confer negotiation has failed, Oracle asks the Court for an

3   order imposing Oracle's proposed schedule for Rimini's rolling production.

4   **V.      <u>CONCLUSION</u>**

5          For the reasons stated above, Oracle respectfully requests that the Court compel Rimini to

6   produce documents as to the custodians and search terms that Oracle has proposed, on the

7   timeline proposed by Oracle.

8
    DATED: August 19, 2019                          MORGAN, LEWIS & BOCKIUS LLP
9

10
                                                    By: _____
11                                                          */s/ John A. Polito*
                                                          John A. Polito
12
                                                    Attorneys for Plaintiffs Oracle USA, Inc., Oracle
13                                                  America, Inc. and Oracle International Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on the 19th day of August, 2019, I electronically transmitted the

3  foregoing **ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND**

4  **AUTHORITIES RE POST-INJUNCTION REQUESTS FOR PRODUCTION** to the Clerk's

5  Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all

6  counsel in this matter; all counsel being registered to receive Electronic Filing.

7                                      MORGAN, LEWIS & BOCKIUS LLP

8   DATED: August 19, 2019

9                              By:        */s/ John A. Polito*
                                          John A. Polito
10

11                              Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                                America, Inc. and Oracle International
12                                            Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE