# Exhibit 17
# Excerpts of the Letter from Jennafer Tryck to Jacob Minne, dated August 5, 2019

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive
Irvine, CA 92612-4412
Tel 949.451.3800
www.gibsondunn.com

Jennafer M. Tryck
Direct: +1 949.451.4089
Fax: +1 949.475.4789
JTryck@gibsondunn.com

Client: 79957-00020

August 5, 2019

VIA ELECTRONIC MAIL

Jacob J.O. Minne
Morgan Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304

Re:     *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-0106-LRH-VCF (D. Nev.)

Dear Jacob:

We respond to your August 2, 2019 letter concerning custodians and search terms, as well as Oracle's proposed production deadlines.

1. **Oracle's Proposed Search Terms**

In light of the compressed discovery schedule set by the Court's June 21, 2019 Order (Dkt. 1232), the parties agreed on a July 3 meet and confer call, and in subsequent written correspondence, that the most efficient way to address collection, review, and production of email and other custodial documents was to "work together to identify custodians and search terms."  *See* July 10, 2019 Ltr. from C. McCracken to J. Minne.

On July 12, Oracle provided a list of **240** search terms.  *See* July 12, 2019 Ltr. from J. Minne to C. McCracken.  Rimini agreed to run Oracle's list of search terms, but reserved the right to object on the basis of relevance and burden, and specifically noted that "many of Oracle's proposed terms have nothing to do with the Injunction or Rimini's process changes in response (*e.g.*, security*, success stor*), that others go beyond the scope of Oracle's June 28, 2019 letter (*e.g.*, ODB*, Siebel*), and that others are extremely overbroad (*e.g.*, Oracle*, Tax*, PeopleSoft*)."  July 17, 2019 Ltr. from C. McCracken to J. Minne.

Even while the parties negotiated the number and names of custodians (discussed *infra* at pp. 5–7), Rimini asked Oracle to identify its priority custodians so that Rimini could begin collecting those custodians' data.  On July 18, Oracle identified eight priority custodians, and Rimini proceeded to collect their email, IM, and hard drive data.  On average, Rimini collected approximately 15 GB of data for each custodian.  This was a burdensome endeavor to

GIBSON DUNN

Jacob J.O. Minne
August 5, 2019
Page 4


DevTrack and Jira. Those sources, as well as the other documents Rimini has produced and its written discovery responses, clearly show the changes Rimini instituted in its support processes post-Injunction.

Oracle's insistence on Rimini reviewing this enormous volume of data is also disproportional to the needs of the case in light of Oracle's access to *Rimini II* custodial discovery materials. *See Rimini II*, Dkt. 1237. The purpose of this injunction compliance proceeding is for Oracle to determine what changed from those processes *after* November 5, 2018. *See* Apr. 4, 2019 Hrg. Tr. at 42:56 ("THE COURT: There couldn't be a contempt proceeding until – it has to be used after the injunction."). It is unfathomable that Oracle's need to identify any changes to Rimini's processes would necessitate the review of *hundreds of thousands* of custodial documents—*in addition to* the immense volume of non-custodial data that Rimini has already produced (and is in the process of producing).

Implicitly acknowledging the extreme burden it would impose on Rimini to review the volume of documents generated by its search terms, Oracle now proposes that Rimini simply "forego a responsiveness review and instead review only for privilege, producing all non-privileged documents identified by the keywords." Aug. 2, 2019 Ltr. from J. Minne to J. Tryck. Rimini does not agree that production of hundreds of thousands of confidential and otherwise business-sensitive documents, many of which likely fall outside the narrow scope of this proceeding, is a reasonable accommodation. And, in any event, Rimini would still need to conduct a privilege review; thus, Oracle's proposed solution does little to reduce the undue burden on Rimini.

Rimini thus does not agree to review the hundreds of thousands of documents identified by Oracle's search terms. Rimini has already produced, or is in the process of producing, non-custodial data that will provide ample information for Oracle to determine whether Rimini is in compliance with the Injunction. Although less relevant and more costly and burdensome, Rimini will also agree to review a reasonable volume of custodial data and produce such data if responsive and non-privileged. Given the compressed discovery period, Rimini's believes that 20,000–30,000 documents is a feasible amount of material to review in the time available. Please immediately provide us with a revised set of search terms that could realistically generate this volume of documents. If Oracle wishes to continue negotiating the scope of this document review, please send us a list of priority search terms immediately so that Rimini can begin a review of documents hitting on those terms. Oracle's delay in proposing reasonable search terms is impeding Rimini's ability to move forward with custodial document productions.

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 6

Rimini explained that the most relevant information is non-custodial and has already been produced. Rimini also explained to Oracle that, to the extent custodial discovery could be relevant at all, the individuals most likely to have relevant information are the heads of Rimini's PeopleSoft and JD Edwards development teams, which Rimini proposed as custodians from the outset. *See* July 9, 2019 Ltr. from C. McCracken to J. Minne. Rimini never stated that *all* of Oracle's proposed non-executive custodians are likely to have relevant information. We believe Oracle is referring to a conversation during our meet and confer call on July 19 in which Oracle asked whether the 20 custodians it identified still work at Rimini in similar positions to their positions in *Rimini II*, and to which we responded that we believe they do. That is not a concession of relevance, and it is disingenuous for you to so state.

Rimini has repeatedly told Oracle that collecting email, IM, and hard drive data from its employees is a burdensome and time-consuming process, and each additional custodian increases the burdens on Rimini's limited resources. *See supra* at pp. 1–3. Moreover, each additional custodian would generate further search term hits, particularly in light of Oracle's vastly overbroad terms that pull-in documents wholly unrelated to this proceeding. It is burdensome and costly to process and review these additional documents. *See id.* Oracle does not need hit counts to verify these assertions.

<u>Second</u>, Oracle's position that it should be entitled to discovery from Rimini's executives because they are referenced in Injunction notification letters and because their data generated more hits than other custodians also lacks merit. The question of whether Rimini's post-November 5, 2018 support processes in fact violate the Injunction cannot be answered through documents concerning Injunction notification letters. As Rimini has already explained to Oracle, "[t]hese executives are not involved in the actual provision of technical support to clients, and thus their custodial files are not likely to contain evidence of the specifics of Rimini's software support processes." July 23, 2019 Ltr. from C. McCracken to J. Minne.

It is also of no moment that executive custodian documents hit on Oracle's search terms. As discussed *supra* at pages 2–3, these terms are vastly overbroad and seek irrelevant information. For instance, Nancy Lyskawa's and Seth Ravin's documents show 11,149 and 14,298 hits for Oracle* (respectively)—but this is to be expected for executives of a company whose business it is to provide third-party support to numerous Oracle products, many of which have no relevance to this proceeding.

Oracle's proposed accommodations, discussed *supra* at page 4, are insufficient to reduce the undue burden and disproportionality concerns that Rimini has raised for weeks. As stated above, *see supra* at page 4, once it receives reasonable search terms from Oracle, Rimini is ready to proceed with a review of documents collected from six of the non-executive custodians identified in Oracle's July 18 letter (*i.e.*, Tim Conley, David Miller, Don Sheffield,

GIBSON DUNN

Jacob J.O. Minne
August 5, 2019
Page 7

Jim Benge, Ron Teegarden, and Michael Jacob).  Oracle indicated in its August 2 letter that it would like to replace Michael Jacob as a custodian with "whomever Rimini identifies as the lead developer for JDE 2018 year-end updates for JD Edwards EnterpriseOne."  This individual is Michael Jacob, and Rimini will include him in this collection and review unless it hears otherwise from Oracle before August 12.  As it has done with non-custodial material, Rimini will produce responsive, non-privileged custodial documents on a rolling basis.[2]

### 3. Oracle's Proposed Production Schedule

Oracle's assertions that Rimini has "delayed" in discovery are entirely without merit.  Rimini has produced thousands of documents in an extremely compressed timeframe and is continuing to produce documents on a rolling basis as soon as they are located.  Your assertion that Rimini agreed on July 3 to produce FTP folders is false, as has been discussed in previous letters; Oracle served an RFP for those materials on July 23, and Rimini intends to produce them as soon as they are collected and processed.

Further, with respect to custodial productions, it is disingenuous for Oracle to claim that Rimini has "placed the custodial production weeks behind schedule," when it is Oracle that refused to propose reasonable search terms, or agree to a reasonable number of custodians, that would generate a volume of documents that Rimini could review and produce in the limited timeframe set by the Court.  As Rimini also stated, Rimini is willing to produce custodial documents on a rolling basis (as it has already agreed to do with respect to non-custodial materials).

More to the point, Rimini cannot agree to Oracle's schedule, which borders on the absurd.  To begin, the proposed schedule requires Rimini to produce documents responsive to RFP Nos. 8–11 (served July 23, 2019) weeks before responses to those RFPs would be due under the Federal Rules.  Moreover, it is impossible for Rimini to "complete all custodial production" by August 19, 2019, particularly given that Oracle still refuses to choose its custodians or narrow its search terms in any reasonable way, and appears unwilling to commit to not serving additional RFPs seeking custodial materials.

As Rimini has said from the beginning, Oracle needs to be realistic about what discovery can be achieved in the very compressed timeline for this proceeding.  Oracle wants to have it both ways: it wants scorched-earth discovery, and also for Rimini to produce all requested materials at the drop of a hat.  That simply is not possible.  Rimini is collecting and

---

[2] As Rimini already informed Oracle, given the time constraints of this limited proceeding, Rimini agrees to review each potentially responsive document from this set only once. *See* July 26, 2019 Email from J. Tryck.  To the extent Oracle intends to serve any additional RFPs to seek custodial documents, Rimini asks that Oracle serve those requests by August 12 so that they may be included in Rimini's custodial review.

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 8

producing documents on a rolling basis, but Oracle's demands for expedited production are unreasonable. As Oracle well knows from *Rimini II* discovery, which took years to complete, collection and production of documents from technical, non-custodial sources is a time-consuming process. As one example of the time-intensive nature of this discovery, Oracle just a few days ago (on an August 1 meet and confer call) asked Rimini to investigate whether it can export data from SharePoint and Salesforce. Rimini has already investigated this request and can report that collecting and producing this data would take approximately 3 to 4 weeks to complete (exclusive of any privilege review). It would thus be impossible for Rimini to complete this production by today, Monday, August 5, and it is unreasonable for Oracle to expect Rimini to do so.

      We would again encourage Oracle to take a reasonable approach to discovery. But if Oracle insists on bringing a motion regarding custodians, search terms, or related issues, Rimini can be available to meet and confer on a proposed briefing schedule.

Very truly yours,

Jennafer M. Tryck

JMT/jmt


cc: Karen L. Dunn
      Kathleen R. Hartnett
      William Isaacson
      Ashleigh Jensen
      Tran Le
      Richard J. Pocker
      Beko Reblitz-Richardson
      Sean Rodriguez
      Gabriel Schlabach
      Samuel Ungar
      Zachary S. Hill
      David Kocan
      Lisa S. Lee
      Jacob J.O. Minne
      John A. Polito
      Lindsey M. Shinn