GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>**RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .................................................................................................4

    A.    *Rimini I* ..................................................................................................4

    B.    *Rimini II* ................................................................................................5

    C.    This Post-Trial Proceeding .......................................................................5

        1.    Rimini's Production of Substantial Discovery Regarding Its Processes ...................................................................................................7

        2.    Rimini's Attempts to Work with Oracle to Define a Reasonable Scope of Custodial Discovery ...............................................................8

III. LEGAL STANDARD .......................................................................................11

IV. ARGUMENT .....................................................................................................12

    A.    Custodial Email Productions Have Virtually No Marginal Relevance............12

    B.    Oracle's Request for 19 Custodians and 246 Search Terms, Covering Over 780,000 Documents, Is Unduly Burdensome and Disproportional. ........14

        1.    Oracle's Proposed Custodians Are Too Numerous and Unlikely to Have Relevant, Non-Duplicative Information. ..................................14

        2.    Oracle's Proposed Search Terms Are Overbroad and Unduly Burdensome. ........................................................................................17

        3.    Rimini's Proposed Search Terms and Custodians Are Reasonable. .......................................................................................18

    C.    Oracle's Production Schedule Is Unwarranted and Unduly Burdensome. ........................................................................................20

V. CONCLUSION ...................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcraft v. Experian Info. Solutions, Inc.*,
    2018 WL 6171772 (D. Nev. Nov. 26, 2018) .......................................................11

*In re Bard IVC Filters Prod. Liab. Litig.*,
    317 F.R.D. 562 (D. Ariz. 2016) ..........................................................................11

*Gilead Scis., Inc. v. Merck & Co., Inc.*,
    2016 WL 146574 (N.D. Cal. Jan. 13, 2016) .......................................................11

*Morrison v. Quest Diagnostics Inc.*,
    2016 WL 355120 (D. Nev. Jan. 27, 2016) ..........................................................12

*Oracle USA, Inc. v. Rimini St., Inc. (Rimini I)*,
    879 F.3d 948 (9th Cir. 2018)..........................................................................3, 4, 5

*Roberts v. Clark County Sch. Dist.*,
    312 F.R.D. 594 (D. Nev. 2016)...........................................................................12

**Rules**

Fed. R. Civ. P. 26(b)(1)..........................................................................11, 13, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

## I.    INTRODUCTION

Rimini has been complying with the November 5, 2018 Injunction in this case.  In fact, Rimini had substantially revised its processes by July 2014—prior to trial in this matter, and years prior to the Injunction—to comply with the Court's summary judgment orders.  Oracle nevertheless brought this post-trial proceeding to confirm Rimini's compliance with the Injunction, telling the Court at the April 4, 2019 hearing that Oracle sought discovery only to "test and verify" any "additional changes [that] have been made" to Rimini's support processes after the Injunction went into effect (ECF No. 1218 (Apr. 4, 2019 Hr. Tr.) at 24:10–12), and that it was "not asking for very much" (*id.* at 21:15–16).  The Court granted Oracle's request for limited discovery.  *Id.* at 56:9–10 ("THE COURT:… I'm going to grant the motion to—for Oracle to take some limited discovery.").  After having previously represented that it was "not asking for much," Oracle now asks Rimini to review documents from 19 custodians hitting on any of 246 search terms, which results in over ***780,000 documents***—in addition to the over 85,000 Rimini has already produced.  Oracle never told this Court that the "limited discovery" it sought involved an expectation that Rimini would review three-quarters of a million documents.  Oracle's request has virtually no marginal relevance, is unduly burdensome, disproportional, and, bluntly, practically impossible in the time allotted for discovery in this post-trial proceeding.  Oracle's Motion should be denied.

On June 21, this Court issued its formal discovery order, requiring Oracle to "state precisely and unambiguously" "five separate and distinct examples" of Rimini's "process, practice or other conduct" that Oracle claims would violate the Injunction if they continued after November 5, 2018.  ECF No. 1232 at 2.  The Court also set a schedule to take reasonable discovery concerning those five examples, setting October 8, 2019 as the discovery cutoff date.  *Id.*  The Court, at Oracle's urging, thus ordered an approximately three-month expedited discovery period, which also included expert discovery.  *Id.*

Since discovery commenced, Rimini has worked expeditiously to produce substantial, comprehensive discovery (which was entirely ignored by Oracle's Motion), including:

- Over 85,000 documents covering its support processes for the Oracle products at issue;

- Access to its DevTrack and Jira databases, which Rimini uses to store information concerning development of its updates;

- The entirety of its Automation Framework ("AFW") Database for the post-November 5, 2018 time period.  This database of 9.2 gigabytes of data contains a record of every transaction Rimini performed using its AFW tools—*i.e.*, the tools it uses in its PeopleSoft support processes;

- All source code for every version of Rimini's AFW tools after November 5, 2018;

- The actual updates Rimini created after November 5, 2018, to the extent they exist on Rimini's systems;

- All documentation sent to clients regarding Rimini's updates performed for those clients; and

- Rimini's internal development documents (called "Dev Instructions"), which describe how developers perform these Rimini updates.

- Rimini is also in the process of producing documents (numbering in the tens or hundreds of thousands) from its SharePoint and Salesforce databases, which contain documents concerning Rimini's development processes, and complete records of communications between Rimini and its clients regarding their support "tickets," the resolution of those tickets, and communications about those tickets.

This enormous volume of material that Rimini already produced or is in the process of producing is more than sufficient for Oracle to "test and verify" Rimini's injunction compliance.  Yet, in its Motion to Compel, Oracle seeks much more:  email discovery from ***19 custodians***, using ***246 search terms***, and covering discovery requests that seek every email sent by a Rimini employee concerning Rimini's support business.  Oracle's proposed custodians and search terms generate over ***780,000 documents*** that must be reviewed.  These documents have little to no marginal relevance.  Oracle's claims relate to the manner by which Rimini provides updates to its clients, and those processes are evidenced by the updates themselves, documentation, logs, databases, source code, and other non-custodial files that Rimini has already produced.  Moreover, Oracle's request is the epitome of undue burden—it would take

Gibson, Dunn &
Crutcher LLP

about a year for a team of ten lawyers, working full time, to complete a review of these documents—to say nothing of the exorbitant cost of doing so.

Oracle also has access to the nearly **10 million** documents produced in *Rimini II*, and the **4.2 terabytes** of data, database logs, and source code produced in that case, all of which the Court has ruled—at Oracle's request—can be used in this proceeding. *Rimini II*, ECF No. 1237. Oracle has more than enough information to "test and verify" any "additional changes [that] have been made" to Rimini's support processes after November 5, 2018. ECF No. 1218 at 24:10–12. Oracle promised the Court that allowing it to use *Rimini II* materials in this proceeding would lessen Oracle's need for additional discovery. ECF No. 1201 at 3; *Rimini II*, Case No. 2:14-cv-1699, ECF No. 1226 at 5. In an about-face, Oracle now equates discovery in this three-month post-trial proceeding to the discovery completed in all of *Rimini II*. But Oracle glosses over the fundamental differences between that case and this one: discovery in *Rimini II* lasted **over three years** (and cost tens of millions of dollars), covered **20 claims**, and included product lines not at issue here.

Despite its belief that custodial documents are irrelevant, Rimini attempted for six weeks to work with Oracle to reach a pragmatic, reasonable approach for custodial document production that was manageable and proportional in the accelerated discovery period. Rimini asked Oracle no fewer than five times to provide a workable combination of custodians and search terms, but Oracle refused to narrow its requests. In the end, Rimini proceeded on its own to select a targeted subset of the search terms and custodians identified by Oracle resulting in a set of over 30,000 custodial documents to review—which, although still voluminous, can feasibly be accomplished (with great effort) in the discovery period. Nonetheless, Oracle refused to accept Rimini's reasonable proposal, and moved to compel.

The relief Oracle seeks—that Rimini be ordered to review over 780,000 documents in the span of weeks—is simply unfeasible, and vastly disproportional to the needs of this proceeding. Oracle's Motion should be denied.

## II.    BACKGROUND

**A.    *Rimini I***

Rimini provides third-party support for ERP software, including Oracle's PeopleSoft, EBS, JDE, Siebel, and Database, in "lawful competition" with Oracle's own support services. *Oracle USA, Inc. v. Rimini St., Inc. (Rimini I)*, 879 F.3d 948, 952 (9th Cir. 2018).  Rimini is Oracle's largest competitor in the market for support services.  All of Rimini's clients have license agreements with Oracle that allow them to use, copy, and modify their Oracle software, and allow third parties, such as Rimini, to do so on the clients' behalf.  *See id.* at 953, 958.

Oracle filed this lawsuit against Rimini and its CEO, Seth Ravin, in 2010, alleging 12 causes of action, ranging from trespass to chattels and unfair competition to copyright infringement and intentional interference with business relations.  ECF No. 146 at 20–41.  With respect to copyright infringement, at summary judgment in February 2014, the district court held that two of Rimini's practices in use at that time exceeded the scope of its clients' license agreements for the PeopleSoft product line and, therefore, constituted copyright infringement. *Rimini I*, 879 F.3d at 956, 959.  Specifically, the Court held that Rimini's practice of storing copies of its clients' Oracle software on Rimini servers (called "local hosting") was not authorized.  It also held that Rimini's practice of copying the licensed Oracle software of one client to provide to a different client with an identical license (dubbed "cross-use" by Oracle) violated the license agreements.  *See id.* at 956 ("cross-use" refers to "the making of development environments, under color of a license held by one identifiable customer of Rimini, for another identifiable customer of Rimini that also holds a license" or "for licensees who have yet to become customers of Rimini").

Following the Court's summary judgment ruling and more than a year before trial in *Rimini I*, Rimini invested millions of dollars to revise its processes to conform to the Court's rulings, completing the transition to "Process 2.0" by the end of July 2014.  Under Process 2.0, every Rimini client has its own development environment located on the client's own systems, not Rimini's, thereby ending "local hosting."  Moreover, Rimini ceased the accused "cross-use" conduct by ensuring that each client had a separate environment on its own systems and

1    that Oracle software is not copied from one client's environment to another (even if both clients

2    have exactly the same license).

3         The case went to trial in September 2015. Oracle abandoned many of its claims before

4    or during trial, and lost on all of the claims it tried except for copyright infringement against

5    Rimini and computer hacking violations against Rimini and Mr. Ravin. *Rimini I*, ECF No. 896.

6    The computer hacking violations were later reversed by the Ninth Circuit in their entirety.

7    *Rimini I*, 879 F.3d at 956, 959. Even as to copyright infringement, the jury found Rimini's

8    infringement to be "innocent" and found that it did not cause Oracle to lose any profits (or

9    Rimini to make any profits). ECF No. 896 at 3–6. All told, after eight years of litigation, Oracle

10   lost on all but its infringement claim, as to which Rimini's conduct was adjudicated "innocent."[1]

11   **B.   *Rimini II***

12        In October 2014, before trial in *Rimini I* and after transitioning to Process 2.0, Rimini

13   filed a separate lawsuit against Oracle (*Rimini II*) seeking a judicial declaration that its revised

14   processes do not infringe Oracle's copyrights. *Rimini II*, ECF No. 1. As Oracle notes in its

15   Motion, that case proceeded through more than three years of discovery, including the

16   production by Rimini of nearly 10 million documents and 4.2 terabytes of data, more than 100

17   depositions, and opinions by more than 15 experts. Currently, there are seven summary

18   judgment motions pending. The propriety of Rimini's Process 2.0 is thus being litigated in a

19   separate proceeding that has fully completed years of discovery. The Court held that all of that

20   discovery from *Rimini II* could be used in this proceeding. *Rimini II*, ECF No. 1237.

21   **C.   This Post-Trial Proceeding**

22        On August 15, 2018, the Court entered an Injunction, which went into effect on

23   November 5, 2018. ECF No. 1166. On February 27, 2019, Oracle moved this Court to re-open

24   discovery in *Rimini I* seeking only "limited discovery to aid the [C]ourt in determining whether

25   Rimini has complied with the Court's injunction." ECF No. 1201 at 15 (internal quotation

---

[1] Once again, Oracle rehashes its tired and highly misleading claims about Rimini's supposed litigation misconduct from eight years ago, based on blatant mischaracterizations of the record, and despite the fact that they were fully considered during the trial and have absolutely nothing to do with the issues presented in Oracle's Motion.

marks omitted).  This Court granted the motion for the specific purpose of seeking "limited discovery."  ECF No. 1218 at 56:9–15.  Indeed, because Oracle was already intimately familiar with Rimini's processes from *Rimini II*, the Court focused the discovery on what "has changed" in Rimini's processes since the Injunction went into effect.  *Id.* at 42:14–17.

After two joint submissions from the parties regarding a joint discovery plan, on June 21, 2019, this Court set a schedule for reasonably limited, but expedited, discovery.  ECF No. 1232.  Under the Court's plan, Oracle was to serve Rimini with a list of no more than five items "describing conduct disclosed in *Rimini II* (including cross-use and cloud hosting) which Oracle contends would violate Judge Hicks' injunction if it continued after the injunction was effective."  *Id.* at 2.  Each description was supposed to state "precisely and unambiguously each separate process, practice or other conduct" Oracle was accusing.  *Id.*  Oracle's specific "precise[] and unambiguous[]" allegations would then guide discovery.  *Id.* at 1.  The Court set an expert report deadline of September 5, 2019, giving the parties slightly more than 10 weeks for fact discovery—a schedule that contemplated targeted and focused discovery.

Unfortunately, the list of accused processes Oracle served did not "precisely" or "unambiguously" accuse any specific conduct.  Instead, it merely repeated the language of the Injunction.  ECF No. 1237-5.  For example, *one* of Oracle's five allegations was that Rimini "reproduce[s], prepare[s] derivative works from, or use[s] a specific licensee's PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for … other licensees, including, specifically, that Rimini Street … use[s] a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of … other licensees and that Rimini's reproduction, creation of derivative works, and use is not solely 'to support the specific licensee's own internal data processing operations'"—effectively regurgitating the language of paragraphs 4 and 6 of the Injunction.  *Id.* at 2–3.  Oracle's allegations covered only PeopleSoft and JD Edwards product lines.  *Id.*

Oracle then sought discovery regarding every aspect of Rimini's post-Injunction business processes.

Gibson, Dunn &
Crutcher LLP

### 1.     Rimini's Production of Substantial Discovery Regarding Its Processes

Oracle's motion ignores the substantial volume of discovery Rimini has already produced in this contempt proceeding—over 85,000 documents (144,672 pages) of primarily non-custodial documentation.  Mot. 5; Declaration of Jennafer M. Tryck ("Tryck Decl.") ¶ 2.[2] These documents include, among other things: (1) copies of Rimini's updates provided to clients; (2) the update documentation provided to clients, describing the updates; (3) Rimini developer documents describing the code changes that encompass the updates; (4) log files showing the transfer of files to client systems; and (5) internal Rimini emails from its department leads and CEO explaining what process changes were to be made in response to the Injunction.  In addition, Rimini provided Oracle with access credentials to its two software development database platforms—DevTrack and Jira.  These databases are used by Rimini developers and contain information regarding the development, testing, and distribution of Rimini's updates.  Oracle has access to DevTrack and Jira for all relevant PeopleSoft and JD Edwards updates after the Injunction went into effect.  *Id.* ¶ 3.

Rimini also provided Oracle with all documents relating to its proprietary AFW tools.  Rimini's AFW tools are software programs developed by Rimini to expedite its development of PeopleSoft updates for its clients, and these tools are frequently used by Rimini's PeopleSoft teams.  Rimini produced (1) all source code for the AFW tools, showing all updates since November 5, 2018; (2) the entire AFW database (after November 5, 2018), which contains records of every transaction a Rimini engineer performed with the AFW tools, including what files were sent to which clients, by whom, and the date and time sent; and (3) all AFW Monitor logs, again showing all use of the tools.  *Id.* ¶ 4.  Rimini is also in the process of producing the records in its client relations database, Salesforce, which contains complete records of communications between Rimini and its clients regarding their support "tickets," communications about those tickets, and the resolution of those tickets.  *Id.* ¶ 5.

---

[2]  Unless otherwise noted, all references to exhibits are to the Declaration of Jennafer M. Tryck submitted herewith.

Gibson, Dunn & Crutcher LLP

### 2.    Rimini's Attempts to Work with Oracle to Define a Reasonable Scope of Custodial Discovery

In light of the compressed discovery schedule set by the Court's June 21, 2019 order (ECF No. 1232), the parties agreed that the most efficient way to address custodial document production (*e.g.*, email) was to "work together to identify custodians and search terms."  *See* Tryck Decl. Ex. 1.  Rimini attempted to work with Oracle in that regard, but Oracle repeatedly insisted on a scope of custodial discovery that was exceedingly burdensome and unlikely to produce any non-duplicative relevant evidence, and would be impossible to achieve in the time allotted.

The scope of Oracle's Requests for Production ("RFPs") seeking custodial emails is staggering.  For example, through just one RFP, Oracle seeks "All Communications Concerning the development and distribution of updates listed in Rimini's First Supplemental Responses to Oracle's Supplemental Interrogatories 1–5 and Supplemental Requests for Production Nos. 1– 5 [which listed every update Rimini has performed after November 5, 2018]."  ECF No. 1237- 7 at 8 (RFP No. 10).  Through another RFP, Oracle seeks "All Communications Concerning .sqr, .sqc, .sql, .txt, .cbl, .dat, .xml, .xsd, .pdb, .dat, .dms, 'Technical Specification,' 'Functional Specification,' 'Test Plan,' 'Dev Instructions,' 'Build Instruction' and RS-prefixed files distributed by Rimini on or after November 5, 2018."  *Id.* (RFP No. 9).  Each of these RFPs covers virtually every aspect of Rimini's support business.

### a.    Disagreement Regarding the Number of Custodians

While Rimini believed that custodial email production was unnecessary in light of the non-custodial documents and data Rimini was producing, on July 9, in an effort to compromise, Rimini proposed collecting and searching email from four custodians, including the head of Rimini's PeopleSoft development team and the head of Rimini's JD Edwards development team.  *See* ECF No. 1237-10 (July 9, 2019 Ltr. From C. McCracken to J. Minne).  To the extent any custodial documents are even marginally probative beyond what has already been produced, these custodians are most likely to have such documents.  *Id.*

In response, on July 12, Oracle proposed **20** custodians, including Rimini executives. ECF No. 1237-11.  To put that in perspective, the *Rimini II* case—which had a discovery period

Gibson, Dunn & Crutcher LLP

of more than three years (as opposed to 10 weeks), involved 20 claims (not one), and three additional Oracle software lines not at issue here—collected documents from 50 custodians. Rimini thus responded that Oracle's proposal was excessive and disproportionate. ECF No. 1237-12. Nevertheless, in the interest of cooperation and to avoid burdening the Court with motion practice, Rimini agreed to allow Oracle to choose up to eight custodians, if that would resolve the dispute. ECF No. 1237-14. Oracle rejected Rimini's compromise offer. To keep things moving while the parties tried to work out their dispute, Rimini informed Oracle that it would proceed with the collection from the six non-executive custodians identified by Oracle and would produce documents on a rolling basis. Tryck Decl. Ex. 2 at 7.

### b.   Disagreement Regarding Search Terms

Oracle's insistence on overbroad search terms compounded the problems related to the number of custodians it was demanding. On July 12, 2019, Oracle provided Rimini a list of **<u>240</u>** search terms. ECF No. 1237-3. On July 26, Rimini provided Oracle with a spreadsheet showing the hit counts for the proposed search terms against the top 8 individuals on Oracle's list of 20 proposed custodians, which showed that those terms resulted in over 225,000 documents, excluding document families and documents on hard drives, which Rimini was still in the process of collecting. ECF No. 1237-15; *see also* ECF No. 1237-16. Rimini notified Oracle that "[t]he volume will need to be reduced drastically to arrive at a reasonable set of documents to review within the timeframe set by the Court for this proceeding." ECF No. 1237-15. Rimini requested that Oracle propose narrowed search terms. *Id.*

Oracle responded on July 29, but refused to narrow any terms. Tryck Decl. Ex. 3 (July 29, 2019 Email from D. Kocan). Later that same day, Rimini responded, again noting that "Oracle has not responded to our request that it substantially narrow its search terms," explaining that the terms "are vastly too broad, returning more than 225,000 documents," and that "[t]he hit counts are far too high given the compressed discovery time period." *Id.* Rimini again reiterated its request that Oracle propose narrower search terms. *Id.*

On August 2, Oracle proposed to "revise" only 6 of 240 terms, and to "***add additional terms***." ECF No. 1237-18 (emphasis added). Oracle's revised and additional terms reduced

1  the document pool by fewer than five thousand (from 225,983 to 221,097), which did not solve

2  the problem Rimini had repeatedly raised.

3          On August 5, Rimini detailed to Oracle the burden, indeed the practical ***impossibility***,

4  of reviewing hundreds of thousands of documents within the Court's imposed timeframe.

5  Tryck Decl. Ex. 4.  Rimini stated that while any email discovery would be marginally relevant

6  at best, it only would be feasible to review 20,000–30,000 documents in the time allotted—not

7  10 to 20 times that number.  *Id.*  Rimini requested that, if Oracle wished to continue to negotiate

8  the scope of the document review, Oracle should nevertheless propose a list of priority search

9  terms, so that Rimini could immediately start reviewing and producing from that set.  *Id.* at 4.

10         Oracle refused to do so.  ECF No. 1237-20.  In light of Oracle's refusal, coupled with

11 the limited time remaining for fact discovery, Rimini unilaterally identified a targeted subset of

12 Oracle's search terms that hit on a feasible number of documents to review.  Tryck Decl. Ex. 5

13 (Aug. 19 Ltr. From J. Tryck to J. Polito).  Rimini informed Oracle that it would review this

14 subset and begin to produce documents unless Oracle provided an alternative set of search

15 terms.  *Id.*  Oracle did not do so, and Rimini is currently in the process of reviewing those

16 documents.

17         In its Motion, Oracle now asks the Court to order Rimini to review all documents that

18 hit on 246 facially overbroad search terms, across 19 custodians.  But this results in a proposed

19 review set of ***at least <u>780,369</u> documents***.[3]  Tryck Decl. ¶ 7.  In Rimini's estimation—based on

20 its experience processing custodial documents in *Rimini I* and *Rimini II*—a typical first-level

21 document reviewer can review somewhere between 25 and 50 Rimini custodial documents per

22 hour, depending on the complexity of the documents (*i.e.*, approximately 1,000–2,000

23 documents per week).  *Id.* ¶ 8.  It would thus take a team of 10 document reviewers (at a

24 minimum) between 39 and 78 weeks to complete a first-level review of Oracle's proposed

25

_____

26 [3] This figure is higher than the figures discussed in the parties' meet-and-confer
   correspondence because it includes all 18 named custodians.  During meet and confer, the
27 parties had limited their discussions to 6 or 8 named custodians.  Additionally, Oracle has
   only identified 18 of its 19 proposed custodians, which means this number will increase if
28 Oracle's Motion is granted and a 19th custodian is named.

1   document set.  A quality control and privilege review would add several more weeks, depending

2   on the volume of documents deemed responsive.  *Id.*[4]

### III.   LEGAL STANDARD

4         Two requirements must be met for information to be discoverable under Federal Rule

5   of Civil Procedure 26.  First, the requested information must be "relevant to any party's claim

6   or defense."  Fed. R. Civ. P. 26(b)(1).  Second, the information must be "proportional to the

7   needs of the case."  *Id.*  To determine whether a discovery request is proportional, courts

8   consider "the importance of the issues at stake in the action, the amount in controversy, the

9   parties' relative access to the relevant information, the parties' resources, the importance of the

10   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

11   outweighs its likely benefit."  *Id.*

12         A party moving to compel discovery must demonstrate that both the relevance and

13   proportionality requirements of Rule 26 are satisfied.  *See Ashcraft v. Experian Info. Solutions,*

14   *Inc.*, 2018 WL 6171772, at *1 (D. Nev. Nov. 26, 2018); *In re Bard IVC Filters Prod. Liab.*

15   *Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) ("Relevancy alone is no longer sufficient—

16   discovery must also be proportional to the needs of the case."); *Gilead Scis., Inc. v. Merck &*

17   *Co.*, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("[A] party seeking discovery of relevant,

18   non-privileged information must show, before anything else, that the discovery sought is

19   proportional to the needs of the case.").  "The proportionality requirement focuses on the

20   marginal utility of the discovery sought."  *Ashcraft*, 2018 WL 6171772, at *1 (citation omitted).

21   "At bottom, proportionality is a 'common-sense concept' that should be applied to establish

22   reasonable limits on discovery."  *Id.* (citation omitted).  A motion to compel discovery outside

23   the scope and limits of Rule 26 must be denied.  Courts have a duty to "eliminate unnecessary

24   or wasteful discovery" to ensure that cases proceed in a "just, speedy, and inexpensive" manner.

---

[4]  In further efforts to pursue scorched earth discovery and harass Rimini's clients in this post-trial proceeding, Oracle has recently sought to bypass the Court's Scheduling Order's limit of five third-party subpoenas by serving Public Records Act requests on Rimini's public entity clients, seeking the same material it seeks in its subpoenas.  As of this date, Oracle has served at least six Public Records Requests on Rimini's clients.

*Morrison v. Quest Diagnostics Inc.*, 2016 WL 355120, at *6 (D. Nev. Jan. 27, 2016); *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016).

## IV.  ARGUMENT

Oracle's request for custodial email discovery from 19 custodians, using 246 search terms, and encompassing virtually every email these Rimini employees have generated in the course of business since November 5, 2018, is disproportional to the needs of this post-trial proceeding.  Indeed, Oracle's Motion seeks to have Rimini review over 780,000 documents in six weeks, which is simply unworkable.

Oracle's Motion should be denied.  *First*, custodial documents are unnecessary in light of the substantial non-custodial documents Rimini has produced or is in the process of producing, which constitute direct evidence of Rimini's processes.  *Second*, Oracle's custodians and search terms are overbroad and unduly burdensome.  *Third*, Oracle's proposed production schedule is unreasonable.

### A.  Custodial Email Productions Have Virtually No Marginal Relevance.

Oracle's allegations relate to Rimini's processes for providing clients with software updates, and specifically, whether Rimini uses or copies one client's software to provide updates to a different client.  Rimini has already produced an enormous amount of data in this proceeding demonstrating how it provides updates, including the updates themselves, update documentation, logs, access to its internal development databases, source code, and more.  *See supra* Section I.  In addition, Oracle has access to the 10 million documents, 4.2 terabytes of data, database logs, and source code that Rimini produced to Oracle in *Rimini II*.  These materials show the inner workings of Rimini's support processes, including the changes that Rimini made to those processes in response to the Injunction.  Rimini also provided interrogatory responses identifying the few process changes it made in response to the Injunction.

Ignoring the discovery already in its possession, Oracle claims to need "meaningful custodial production … showing Rimini's ***actual*** post-Injunction behavior."  Mot. 9 (original emphasis); *see also id.* at 10.  But emails and instant messages are, at best, cumulative of the

enormous volume of evidence Rimini has already produced concerning its post-Injunction update processes.  These processes are best evidenced by the updates themselves, logs of Rimini's activities, Rimini's software tools (including logs and source code), and its development and client databases.  These sources of evidence show the who, what, where, and how of Rimini's update processes—and Rimini has already produced them.  Email communications, on the other hand, do not answer the central questions of which clients received which updates and what those updates contained.  The purpose of this proceeding is for Oracle to take discovery of what "additional changes have been made" to Rimini's support processes post-Injunction, not to recreate of the full scope of *Rimini II* discovery in a few weeks.

Oracle's arguments for why these materials are relevant are meritless.  <u>*First*</u>, Oracle claims that email and instant message (IM) communications among Rimini's employees "related to Rimini's support of Oracle software" may "br[ing] to light Rimini's actual practices."  Mot. 10; *see also id.* at 9.  But Oracle already has the best records of Rimini's "actual practices" in the technical material Rimini has produced.  Similarly, Rimini has already produced the emails from its department leads and its CEO explaining to the company what process changes Rimini would be making in response to the Injunction.

<u>*Second*</u>, Oracle claims that it relied on some custodial documents in support of arguments in *Rimini II* (Mot. 10), but that is no reason to allow additional custodial discovery in this proceeding.  Oracle sought, and was granted permission, to use the *Rimini II* materials in this proceeding.  *Rimini II*, ECF No. 1237.  *Rimini II* involved 20 claims by the parties, five Oracle product lines, more than three years of fact discovery, and seven months of expert discovery.  The fact that all of the materials produced in *Rimini II* can now be used in this proceeding *lessens*, rather than increases, the need for custodial discovery in this proceeding.  Indeed, even according to Oracle's counsel, the purpose of the present proceeding is to "test and verify" any "*additional changes [that] have been made*" to Rimini's support processes after November 5, 2018, not to redo all the discovery that was conducted in *Rimini II*.  ECF No. 1218 at 24:10–12 (emphasis added).

*Third*, Oracle's assertion that custodial documents "will provide essential context and meaning to Rimini's technical production" (Mot. 9), borders on the absurd. After nearly a decade of intense litigation between the parties—during which Rimini produced terabytes of technical material, provided Oracle with read-only access to its online databases, and participated in 12 Rule 30(b)(6) depositions concerning its processes—Oracle is *exceptionally* well-versed in Rimini's technical systems and processes. Moreover, the Court has ordered that Oracle may take an additional Rule 30(b)(6) deposition of Rimini in this proceeding.

## B. Oracle's Request for 19 Custodians and 246 Search Terms, Covering Over 780,000 Documents, Is Unduly Burdensome and Disproportional.

Oracle's requested custodians and search terms would require Rimini to review over 780,000 documents in six weeks. Not only is such a review impracticable, it is wholly disproportionate to the needs of this proceeding given the substantial discovery Oracle has already secured in this case and in *Rimini II*. As Rimini repeatedly explained to Oracle, with great effort, it feasibly can review approximately 30,000 documents in the expedited discovery period. Tryck Decl. Ex. 4; ECF No. 1237-21. Oracle steadfastly refused to offer a reasonable combination of custodians and search terms that would generate that volume of documents, or even a "priority" set of terms that Rimini could begin reviewing while the parties continued their negotiations. Tryck Decl. Ex. 4. After weeks of no progress due to Oracle's obstinacy, Rimini was left with no choice but to select a targeted subset of Oracle's proposed custodians and search terms, and Rimini is currently engaged in a review of over 30,000 custodial documents generated from those custodians and terms. *Id.* Rimini respectfully asks the Court to deny Oracle's request for Rimini to review and produce additional custodial materials.

### 1. Oracle's Proposed Custodians Are Too Numerous and Unlikely to Have Relevant, Non-Duplicative Information.

Oracle's broad request for 19 custodians, including three Rimini executives, is not targeted to discover relevant material, is disproportional to the needs of this proceeding, and would impose an undue burden on Rimini. Fed. R. Civ. P. 26(b)(1). On its face, 19 custodians is a very large number—many more than the average federal case litigated over the course of

years rather than weeks.  In light of the documents Oracle already has in its possession and the history of this litigation, such broad custodial discovery is unnecessary.

*Rimini Executives.*  Rimini's executives are several levels removed from the day-to-day Rimini update processes at issue.  Oracle nonetheless claims that Rimini should collect and produce custodial material from three Rimini executives because they may have "personal involvement with forming and implementing policies implicated by the Injunction." Mot. 14. But Rimini has *already produced* emails from department leads and its CEO explaining what process changes were to be made in response to the Injunction.  Tryck Decl. ¶ 10.  In addition to the custodial documents already produced, Oracle seeks documents from Rimini's President, Sebastian Grady, because he supposedly has "communications regarding customer concerns about the nature of Rimini's business processes." Mot. 12.  Oracle fails to explain how such concerns, if they exist, would have any relevance to this proceeding.  Mr. Grady was a custodian in *Rimini II* because *Rimini II* involved a host of non-copyright claims (*e.g.*, Lanham Act, tortious interference with contract), on both sides, for which communications with Rimini clients were relevant; but that does not apply here.  Likewise, Oracle has no persuasive justification for discovery from Nancy Lyskawa, Rimini's Senior Vice President, Global Client Onboarding.  Finally, Oracle argues that Mr. Ravin "authored and sent notification of the Injunction to all Rimini personnel" (*id.*), but Rimini *produced* that email and other related emails.  Oracle has no justification for seeking to probe the rest of Mr. Ravin's emails.  Oracle argues that these three executive custodians generated "far more hits than any other custodians" for certain Oracle search terms.  (Mot. 14.)  But that is not surprising because Oracle's search terms include terms such as "PeopleSoft*" and "JD Edwards*," which would obviously generate hits for executives employed by a company whose business is to support PeopleSoft and JD Edwards software.  These terms (and others like them) are hopelessly overbroad and not tied to any relevant issue in this proceeding.

***Internal Tool Developers.***  Even assuming that "Rimini's asserted changes to their software tools, particularly AFW" are "relevant to Injunction compliance"[5] (Mot. 11), Oracle does not need emails concerning tool development.  Rimini has produced AFW source code, the entire AFW database, and AFW monitor logs for the post-Injunction period.  Rimini responded to an interrogatory, explaining the changes made to the AFW tools post-Injunction, and Oracle can verify those changes from the actual source code Rimini produced, and during its Rule 30(b)(6) deposition.  Emails are entirely irrelevant.

***Customer Environment Support Personnel.***  Oracle claims that discovery from Rimini's environment support personnel is necessary because Rimini connects to client environments "frequently."  Mot. 12.  Of course it does; that is how Rimini provides support.  But the fact that Rimini connects to its clients' environments does not render documents from its environment support personnel relevant.  And Rimini has already produced to Oracle the list of environments it has accessed in the post-Injunction period and updates provided to those clients.  Email or instant message communications collected from administrators of the virtual machines used for remote access are simply not relevant.

***Rimini Engineers.***  Emails and IMs of Rimini engineers concerning Rimini's post-Injunction processes are, at best, cumulative of evidence already revealed in more detail by the updates, logs, source code, development documents, and development databases already produced, the interrogatory responses Rimini provided, and the 30(b)(6) deposition Oracle will take.  Nonetheless, Rimini offered, and Oracle rejected, reviewing documents from *four* engineer custodians across the PeopleSoft and JD Edwards product lines.  Tryck Decl. Ex. 4; ECF No. 1237-20.  It is extremely burdensome for Rimini to collect and produce documents from *11* of these employees, as requested by Oracle, particularly given that it has already produced tens of thousands of documents and gigabytes of data from technical non-custodial sources.

---

[5]  Rimini's AFW tools did not even exist during the *Rimini I* trial, were not adjudicated in *Rimini I*, and therefore cannot be within the scope of these proceedings.

### 2.    Oracle's Proposed Search Terms Are Overbroad and Unduly Burdensome.

Oracle's demand that Rimini review a document set generated from its proposed 19 custodians and 246 search terms is simply unworkable.  This review set would contain **at least 780,369 documents**.  Tryck Decl. ¶ 7.  It would take a team of 10 document reviewers (at a minimum) between *39 and 78 weeks* to complete this review.  *Id.* ¶ 8.  A review of that magnitude is infeasible in this post-trial proceeding, and well beyond the "limited discovery" this Court ordered.

Rimini attempted to work with Oracle to reach a pragmatic, reasonable approach for custodial document collection and production that would provide Oracle the information it claims it needs, and would also be reasonably achievable.  *See* Tryck Decl. Ex. 4.  Oracle repeatedly rebuffed Rimini's efforts.  *Id.*  Yet, Oracle now claims that Rimini "refused to agree to or negotiate a reasonable set of search terms in response to Oracle's proposed search terms list."  Mot. 15.  Not true:  On numerous occasions, over a span of multiple weeks, Rimini provided data points on hit counts for Oracle's terms across different custodians, each time asking Oracle to narrow its terms, or simply to select "priority search terms" while the parties continued to negotiate, so that Rimini could at least make progress.  *See* Tryck Decl. Ex. 4 at 4.  Oracle refused to make any reasonable changes to its terms, continued to insist on the application of over 240 terms, and demanded that Rimini review hundreds of thousands of documents in a matter of weeks, which is unreasonable and, for all practical purposes, impossible.

Oracle's assertion that its terms "[a]re working and returning documents relevant to Injunction compliance" is wrong as a matter of logic.  Mot. 15.  That a search term returns a high number of hits does not mean it targets relevant information.  In fact, if a search term returns an exceedingly high number of hits, that is an indication that it was overbroad.  For instance, many of Oracle's terms would pull in any number of irrelevant "general office" communications (*e.g.*, Copy*, delet*, update*, push*).[6]  Other terms relate to entire product

---

[6]  For example, if an employee sent an email asking a colleague to "copy" her on future correspondence, that email, and all others in the chain, would be pulled into Oracle's proposed review set.

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn & Crutcher LLP

lines that Rimini supports (PeopleSoft*, JD Edwards*).  And there are 240 other terms.  That an email "hits" on any one of these terms does not mean it is relevant, and at most shows that the related hits are merely cumulative of other evidence already produced.

### 3. Rimini's Proposed Search Terms and Custodians Are Reasonable.

Although Rimini disputes that custodial documents are even marginally relevant, it has been willing to review and produce from *any search terms* Oracle selects, so long as those terms generate a document set that Rimini could reasonably review in this discovery period.  Tryck Decl. Ex. 4.  Tellingly, Oracle refused to provide such terms.  *Id.*  Rimini thus selected terms from Oracle's broader list that Rimini believes address Oracle's RFPs.  For instance, in response to Oracle's RFP No. 1, Rimini agreed to produce documents and communications "sufficient to identify the changes Rimini made to its PeopleSoft and JD Edwards (if any) support processes in response to the Injunction."[7]  The following terms Rimini selected from Oracle's list (among many others) address this RFP: AFW*, diff OR diffs, copy paste*, Env*, break-fix*, FTP*, File Transfer*, Injun*, enjoin*, source code*, CodeAnalyz*, code analyz*, Dev-Instruction*.

Oracle complains that Rimini's search terms may not cover every document requested by Oracle's RFPs, but that is because Oracle's RFPs are extraordinarily overbroad.  Rimini's search terms, combined with the non-custodial and database documents it already produced, more than cover the relevant universe:

- ***RFP No. 3***.  Oracle sought "All Documents Rimini provided to its customers in connection with its support of Oracle Software and Support Materials since November 5, 2018, including without limitation tax and regulatory updates, break fixes, new functionality, documentation, or any other files."  At the April 4 hearing, this Court specifically rejected a nearly identical RFP asking for "All documents Rimini provided to its customers."  ECF No. 1218 at 44:5–20, 46:1–14. Nevertheless, Rimini (1) produced all updates on its system that were sent to clients;

---

[7] Oracle's June 28, 2019 list of five allegedly contumacious practices focuses only on PeopleSoft and JD Edwards support; discovery is limited to these two product lines.

Gibson, Dunn &
Crutcher LLP

(2) produced the documentation sent to clients with the updates; and (3) is in the process of producing the relevant portions of its Salesforce database, which contains all communications with clients regarding their support tickets. Emails are not relevant to this RFP.

- **RFP No. 5.** This request seeks "All policies or memoranda Rimini wrote or developed in response to the Injunction regarding Rimini's support processes." Rimini's policy changes, and the documents instructing its employees on those policy changes, were separately collected and produced. Email discovery is, again, not necessary for this RFP.

- **RFP No. 9.** This request seeks "All Communications Concerning .sqr, .sqc, .sql, .txt, .cbl, .dat, .xml, .xsd, .pdb, .dat [sic], .dms, 'Technical Specification,' 'Functional Specification,' 'Test Plan,' 'Dev Instructions,' 'Build Instruction' and RS-prefixed files distributed by Rimini on or after November 5, 2018…." This RFP covers any communication about any type of file that Rimini might possibly update, and is patently overbroad. Again, this Court specifically rejected at the April 4 hearing a similarly broad RFP seeking documents "Rimini provided to its customers." ECF No. 1218 at 44:3–20. Rimini nevertheless produced all of its updates on its systems (which include these types of files), and its Dev Instructions and Build Instructions, and gave Oracle read-only access to its development databases. Oracle has never attempted to explain how emails about these files would be relevant or non-cumulative.

- **RFP No. 10.** This request seeks "All Communications Concerning the development and distribution of updates listed in Rimini's First Supplemental Response to Oracle's Supplemental Interrogatories 1–5 and Supplemental Requests for Production Nos. 1–5, including, without limitation…." In effect, this is a request for every email "concerning" every update Rimini has ever developed or implemented since November 5, 2018. That request is overbroad. The development databases and Dev Instructions Rimini produced provide the relevant information

regarding Rimini's updates.  And, in any event, Rimini's search terms cover this RFP (*e.g.*, AFW*, Code After*, Code Before*, Development Rev*, FTP*, FromRSI*, ToRSI*, File Transfer*, CodeAnalyz*).

If Oracle wanted to propose different search terms resulting in a manageable number of documents to review, it had every opportunity to do so.  It refused to be reasonable, instead steadfastly insisting that Rimini review hundreds of thousands of documents.  It should not be heard to complain now.

**C.    Oracle's Production Schedule Is Unwarranted and Unduly Burdensome.**

Putting aside that the discovery Oracle seeks is disproportionate to the needs of this post-trial proceeding and unduly burdensome on any timeline, Oracle's proposed timeline is simply unworkable.  There are over 780,000 documents in Oracle's proposed review set.  Tryck Decl. Ex. 4.  A typical first-level document reviewer for these highly technical documents can review 25 to 50 documents per hour (1,000–2,000 per week).  *Id*.  At that rate, it would take 10 full-time reviewers at least 39–78 weeks to complete review.  Stated another way, to complete a first-level review in 6 weeks would require 63–126 lawyers reviewing documents full time.  And that ignores a quality control and privilege review, which would require additional time.

Contrary to Oracle's arguments (Mot. 18), Rimini has never objected to producing documents on a rolling basis; in fact, it has consistently produced documents in this manner, having already made seven productions from July 12 through August 26.  Tryck Decl. ¶ 6.  And Rimini has consistently offered to produce custodial documents on a rolling basis if only Oracle would narrow the scope of custodians and search terms to something manageable.  *See* Tryck Decl. Ex. 5.  Oracle has needlessly delayed this process, as Rimini could not begin a custodial document review until at least one custodian and search term pairing was agreed upon.  Rimini repeatedly asked Oracle to identify its "high priority" search terms so that Rimini could begin the process while the parties worked out their remaining disputes, but Oracle refused to do so, further prejudicing Rimini.  *Id*.  Rimini is now reviewing over 30,000 custodial documents for production, and has agreed to produce responsive, non-privileged documents on a rolling basis. The Court should deny Oracle's request for any further custodial production.

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

## V.     CONCLUSION

For the reasons stated herein, Oracle's Motion should be denied.

Dated: August 26, 2019

GIBSON, DUNN & CRUTCHER LLP


By:  /s/ Eric D. Vandevelde
                    Eric D. Vandevelde

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused to be electronically uploaded a true and correct copy in Adobe "pdf" format of the above document to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon transmission of the Notice of Electronic Filing ("NEF") to the registered CM/ECF users.  All counsel of record are registered users.

Dated: August 26, 2019

GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Eric D. Vandevelde*
Eric D. Vandevelde

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

Gibson, Dunn &
Crutcher LLP