# EXHIBIT 4
# 2019.08.05 – J. Tryck Ltr to J. Minne re Custodians & Search Terms

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive
Irvine, CA 92612-4412
Tel 949.451.3800
www.gibsondunn.com

Jennafer M. Tryck
Direct: +1 949.451.4089
Fax: +1 949.475.4789
JTryck@gibsondunn.com

Client: 79957-00020

August 5, 2019

VIA ELECTRONIC MAIL

Jacob J.O. Minne
Morgan Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA  94304

Re:     *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-0106-LRH-VCF (D. Nev.)

Dear Jacob:

We respond to your August 2, 2019 letter concerning custodians and search terms, as well as Oracle's proposed production deadlines.

### 1. Oracle's Proposed Search Terms

In light of the compressed discovery schedule set by the Court's June 21, 2019 Order (Dkt. 1232), the parties agreed on a July 3 meet and confer call, and in subsequent written correspondence, that the most efficient way to address collection, review, and production of email and other custodial documents was to "work together to identify custodians and search terms." *See* July 10, 2019 Ltr. from C. McCracken to J. Minne.

On July 12, Oracle provided a list of **240** search terms. *See* July 12, 2019 Ltr. from J. Minne to C. McCracken. Rimini agreed to run Oracle's list of search terms, but reserved the right to object on the basis of relevance and burden, and specifically noted that "many of Oracle's proposed terms have nothing to do with the Injunction or Rimini's process changes in response (*e.g.*, security*, success stor*), that others go beyond the scope of Oracle's June 28, 2019 letter (*e.g.*, ODB*, Siebel*), and that others are extremely overbroad (*e.g.*, Oracle*, Tax*, PeopleSoft*)." July 17, 2019 Ltr. from C. McCracken to J. Minne.

Even while the parties negotiated the number and names of custodians (discussed *infra* at pp. 5–7), Rimini asked Oracle to identify its priority custodians so that Rimini could begin collecting those custodians' data. On July 18, Oracle identified eight priority custodians, and Rimini proceeded to collect their email, IM, and hard drive data. On average, Rimini collected approximately 15 GB of data for each custodian. This was a burdensome endeavor to

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 2

complete, which Rimini estimates took 8–10 hours of employee time (and an additional 2–4 hours of attorney time) for each custodian.[1]

On July 26, Rimini provided Oracle a spreadsheet showing the hit counts for Oracle's proposed search terms across Oracle's eight priority custodians. *See* July 26, 2019 Email from J. Tryck. As Rimini explained in that correspondence, "the volume of documents generated by Oracle's search terms for the eight priority custodians is **225,983**" and "[t]hese numbers do not include data from custodian hard drives (which is still being processed) or document families, which will also need to be reviewed." *Id.* (emphasis added). Rimini notified Oracle that "[t]he volume will need to be reduced drastically to arrive at a reasonable set of documents to review within the timeframe set by the Court for this proceeding." *Id.* We thus requested that "Oracle promptly propose narrowed search terms." *Id*.

Oracle responded on July 29, but instead of narrowing any search terms, it asked Rimini to confirm "that the final review of any custodians will include documents tied to these terms"—*i.e.*, *all* terms without any narrowing. July 29, 2019 Email from D. Kocan. Later that same day, Rimini responded, again noting that "Oracle has not responded to our request that it substantially narrow its search terms," explaining that the terms "are vastly too broad, returning more than 225,000 documents," and that "[t]he hit counts are far too high given the compressed discovery time period." July 29, 2019 Email from J. Tryck. We reiterated our request that "Oracle propose narrower search terms." *Id.*

Now, in its August 2 letter, Oracle proposes to "revise" only 6 (of 240) terms, and to "add additional terms." Aug. 2, 2019 Ltr. from J. Minne to J. Tryck. These changes resulted in a reduction of fewer than five thousand documents, from 225,983 to 221,097. Incorporating the hard drive data collected to date, and document families, the total number of documents Rimini would have to review is **766,934**. A responsiveness and privilege review of this volume of documents would be unduly burdensome, exceedingly expensive, and completely out of proportion to the needs of this proceeding.

Rimini estimates—based on its experience processing custodial documents in *Rimini I* and *Rimini II*—that a typical first-level document reviewer can review somewhere between 25 and 50 Rimini custodial documents in an hour, depending on the complexity of the documents (*i.e.*, approximately 1,000–2,000 documents in a week). It would thus take a team of 10 document reviewers between 38 and 77 weeks to complete only a first-level review of Oracle's proposed document set. A quality control review would add additional weeks, and a privilege

---

[1] These collections also include substantial amounts of vendor time for processing and analyzing these large volumes of data, at significant cost to Rimini.

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 3

review would require approximately four more weeks for each set of 20,000 potentially privileged documents.

Oracle contends that it need not narrow its search terms and Rimini should undertake this incredibly burdensome and costly review because "a number of documents are likely to be relevant," which Oracle argues is evidenced by the fact that "high hit counts may well result from a high number of responsive documents, especially as to certain custodians." *Id.* But Oracle's logic is not sound—the correlation between "hits" and relevant documents is tenuous at best. As Rimini cautioned Oracle on July 17, Oracle's terms are vastly overbroad, target processes and other information that have nothing to do with the Injunction, and go beyond the scope of Oracle's June 28 letter identifying its list of accused processes. As one example, Oracle asked Rimini to search for the term Oracle\*. As Oracle knows, a significant portion of Rimini's business focuses on supporting Oracle products, many of which are not the subject of this litigation. This term resulted in nearly 50,000 document hits, many of which likely have nothing to do with Rimini's compliance with the *Rimini I* injunction. Oracle nevertheless has refused to offer a reasonable alternative that would hone in on the five specific practices Oracle contends violate the Injunction. *See* June 28, 2019 Ltr. from J. Polito to M. Perry. As another example, Oracle asked Rimini to run the term Env\*—presumably to identify documents related to "environments," but again, "environments" are relevant to many aspects of Rimini's business that are wholly unrelated to this proceeding, including, for example, supporting SAP clients. This term generated over 40,000 hits. Likewise, the term "development" unsurprisingly generated almost 30,000 hits, presumably because Rimini's support business involves working in clients' "development" environments. These are but three examples demonstrating that Oracle's terms are vastly overbroad.

Oracle's refusal to offer appropriately tailored search terms is unreasonable and contrary to Magistrate Judge Ferenbach's instruction that Oracle seek only "enough evidence to prove [its] case" but not "keep going on and on and on getting evidence." Apr. 4, 2019 Hrg. Tr. at 32:22–25; *id.* at 31:23–25 (cautioning Oracle to take a reasonable approach "before we spend millions of dollars to do discovery"). The overbreadth of Oracle's terms also flouts the Court's June 21 Order that "[t]he claims and defenses of this dispute will define the scope of discovery under the plan set forth below." Dkt. No. 1232. Many of Oracle's terms have no reasonable connection to the five practices Oracle identified in its June 28 letter (*e.g.*, Siebel\* or ODB\*).

The burden Oracle seeks to impose upon Rimini is all the more unnecessary given that custodial documents are unlikely to significantly add to the substantial information Rimini has already produced, or agreed to produce, in discovery. Rimini has already produced, or agreed to produce shortly, the development information concerning its updates created after the Injunction, including Rimini's AFW database, and access to its development databases—

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 4

DevTrack and Jira. Those sources, as well as the other documents Rimini has produced and its written discovery responses, clearly show the changes Rimini instituted in its support processes post-Injunction.

Oracle's insistence on Rimini reviewing this enormous volume of data is also disproportional to the needs of the case in light of Oracle's access to *Rimini II* custodial discovery materials. *See Rimini II*, Dkt. 1237. The purpose of this injunction compliance proceeding is for Oracle to determine what changed from those processes *after* November 5, 2018. *See* Apr. 4, 2019 Hrg. Tr. at 42:56 ("THE COURT: There couldn't be a contempt proceeding until – it has to be used after the injunction."). It is unfathomable that Oracle's need to identify any changes to Rimini's processes would necessitate the review of *hundreds of thousands* of custodial documents—*in addition to* the immense volume of non-custodial data that Rimini has already produced (and is in the process of producing).

Implicitly acknowledging the extreme burden it would impose on Rimini to review the volume of documents generated by its search terms, Oracle now proposes that Rimini simply "forego a responsiveness review and instead review only for privilege, producing all non-privileged documents identified by the keywords." Aug. 2, 2019 Ltr. from J. Minne to J. Tryck. Rimini does not agree that production of hundreds of thousands of confidential and otherwise business-sensitive documents, many of which likely fall outside the narrow scope of this proceeding, is a reasonable accommodation. And, in any event, Rimini would still need to conduct a privilege review; thus, Oracle's proposed solution does little to reduce the undue burden on Rimini.

Rimini thus does not agree to review the hundreds of thousands of documents identified by Oracle's search terms. Rimini has already produced, or is in the process of producing, non-custodial data that will provide ample information for Oracle to determine whether Rimini is in compliance with the Injunction. Although less relevant and more costly and burdensome, Rimini will also agree to review a reasonable volume of custodial data and produce such data if responsive and non-privileged. Given the compressed discovery period, Rimini's believes that 20,000–30,000 documents is a feasible amount of material to review in the time available. Please immediately provide us with a revised set of search terms that could realistically generate this volume of documents. If Oracle wishes to continue negotiating the scope of this document review, please send us a list of priority search terms immediately so that Rimini can begin a review of documents hitting on those terms. Oracle's delay in proposing reasonable search terms is impeding Rimini's ability to move forward with custodial document productions.

**GIBSON DUNN**

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 5

### 2. Selection of Custodians

On July 9, 2019, Rimini proposed that Oracle agree to a limit of four custodians, including the head of Rimini's PeopleSoft development team, and the head of Rimini's JD Edwards development team. *See* July 9, 2019 Ltr. from C. McCracken to J. Minne. Rimini informed Oracle that these two individuals were most likely to have relevant custodial materials related to the five practices identified in Oracle's June 28 letter, which focuses on Rimini's processes for supporting PeopleSoft and JD Edwards. Rimini also invited Oracle to select two additional custodians of its choosing associated with the PeopleSoft and JD Edwards development teams. *Id.*

In response, on July 12, Oracle proposed **20 custodians**, including Rimini executives who, Oracle acknowledges, are not involved in the day-to-day support of Oracle software. *See* July 12, 2019 Ltr. from J. Minne to C. McCracken. Twenty custodians is nearly half the number of custodians used in each of the *Rimini I* and *Rimini II* suits, which each involved years of discovery and the production of *millions* of documents. Rimini thus responded that Oracle's proposal "is excessive and wholly disproportionate to the process changes at issue." July 17, 2019 Ltr. from C. McCracken to J. Minne. Rimini also stated that "Oracle's identification of executive personnel as potential custodians is unnecessary and unduly burdensome, given that these employees are substantially less likely to have information relevant to the process changes Rimini implemented in response to the injunction than members of Rimini's software support teams." *Id.* Indeed, as explained above and repeatedly in Rimini's letters, custodial discovery is itself completely unnecessary given the substantial non-custodial discovery Rimini has produced and will be producing.

In the interest of cooperation and to avoid burdening the Court with motion practice, Rimini nevertheless agreed to allow Oracle to choose up to eight custodians, if it would resolve the dispute. July 23, 2019 Ltr. from C. McCracken to J. Minne.

Apparently, Oracle has rejected Rimini's compromise offer. In its August 2 letter, Oracle contends that it should be entitled to select 12 custodians, and "reserves the right to seek the production of responsive documents from further custodians." Aug. 2, 2019 Ltr. from J. Minne to J. Tryck. Oracle argues that it is entitled to a 50% increase in custodians (from the 8 already offered) because Rimini purportedly "conceded that the non-executive custodians proposed by Oracle are all likely to have relevant information," and Oracle cannot verify Rimini's claims of burden. Oracle also contends it is entitled to executive custodians because they are "referenced in notification letters mandated by the injunction" and "each generated more numerous hits than any other custodians." *Id.* Oracle's positions are meritless.

*First*, Rimini never "conceded" that Oracle's proposed non-executive custodians "are *all likely* to have relevant information." *Id.* (emphasis added). In fact, the opposite is true.

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 6


Rimini explained that the most relevant information is non-custodial and has already been produced. Rimini also explained to Oracle that, to the extent custodial discovery could be relevant at all, the individuals most likely to have relevant information are the heads of Rimini's PeopleSoft and JD Edwards development teams, which Rimini proposed as custodians from the outset. *See* July 9, 2019 Ltr. from C. McCracken to J. Minne. Rimini never stated that *all* of Oracle's proposed non-executive custodians are likely to have relevant information. We believe Oracle is referring to a conversation during our meet and confer call on July 19 in which Oracle asked whether the 20 custodians it identified still work at Rimini in similar positions to their positions in *Rimini II*, and to which we responded that we believe they do. That is not a concession of relevance, and it is disingenuous for you to so state.

Rimini has repeatedly told Oracle that collecting email, IM, and hard drive data from its employees is a burdensome and time-consuming process, and each additional custodian increases the burdens on Rimini's limited resources. *See supra* at pp. 1–3. Moreover, each additional custodian would generate further search term hits, particularly in light of Oracle's vastly overbroad terms that pull-in documents wholly unrelated to this proceeding. It is burdensome and costly to process and review these additional documents. *See id.* Oracle does not need hit counts to verify these assertions.

<u>Second</u>, Oracle's position that it should be entitled to discovery from Rimini's executives because they are referenced in Injunction notification letters and because their data generated more hits than other custodians also lacks merit. The question of whether Rimini's post-November 5, 2018 support processes in fact violate the Injunction cannot be answered through documents concerning Injunction notification letters. As Rimini has already explained to Oracle, "[t]hese executives are not involved in the actual provision of technical support to clients, and thus their custodial files are not likely to contain evidence of the specifics of Rimini's software support processes." July 23, 2019 Ltr. from C. McCracken to J. Minne.

It is also of no moment that executive custodian documents hit on Oracle's search terms. As discussed *supra* at pages 2–3, these terms are vastly overbroad and seek irrelevant information. For instance, Nancy Lyskawa's and Seth Ravin's documents show 11,149 and 14,298 hits for Oracle* (respectively)—but this is to be expected for executives of a company whose business it is to provide third-party support to numerous Oracle products, many of which have no relevance to this proceeding.

Oracle's proposed accommodations, discussed *supra* at page 4, are insufficient to reduce the undue burden and disproportionality concerns that Rimini has raised for weeks. As stated above, *see supra* at page 4, once it receives reasonable search terms from Oracle, Rimini is ready to proceed with a review of documents collected from six of the non-executive custodians identified in Oracle's July 18 letter (*i.e.*, Tim Conley, David Miller, Don Sheffield,

GIBSON DUNN

Jacob J.O. Minne
August 5, 2019
Page 7

Jim Benge, Ron Teegarden, and Michael Jacob).  Oracle indicated in its August 2 letter that it would like to replace Michael Jacob as a custodian with "whomever Rimini identifies as the lead developer for JDE 2018 year-end updates for JD Edwards EnterpriseOne."  This individual is Michael Jacob, and Rimini will include him in this collection and review unless it hears otherwise from Oracle before August 12.  As it has done with non-custodial material, Rimini will produce responsive, non-privileged custodial documents on a rolling basis.[2]

### 3. Oracle's Proposed Production Schedule

Oracle's assertions that Rimini has "delayed" in discovery are entirely without merit.  Rimini has produced thousands of documents in an extremely compressed timeframe and is continuing to produce documents on a rolling basis as soon as they are located.  Your assertion that Rimini agreed on July 3 to produce FTP folders is false, as has been discussed in previous letters; Oracle served an RFP for those materials on July 23, and Rimini intends to produce them as soon as they are collected and processed.

Further, with respect to custodial productions, it is disingenuous for Oracle to claim that Rimini has "placed the custodial production weeks behind schedule," when it is Oracle that refused to propose reasonable search terms, or agree to a reasonable number of custodians, that would generate a volume of documents that Rimini could review and produce in the limited timeframe set by the Court.  As Rimini also stated, Rimini is willing to produce custodial documents on a rolling basis (as it has already agreed to do with respect to non-custodial materials).

More to the point, Rimini cannot agree to Oracle's schedule, which borders on the absurd.  To begin, the proposed schedule requires Rimini to produce documents responsive to RFP Nos. 8–11 (served July 23, 2019) weeks before responses to those RFPs would be due under the Federal Rules.  Moreover, it is impossible for Rimini to "complete all custodial production" by August 19, 2019, particularly given that Oracle still refuses to choose its custodians or narrow its search terms in any reasonable way, and appears unwilling to commit to not serving additional RFPs seeking custodial materials.

As Rimini has said from the beginning, Oracle needs to be realistic about what discovery can be achieved in the very compressed timeline for this proceeding.  Oracle wants to have it both ways: it wants scorched-earth discovery, and also for Rimini to produce all requested materials at the drop of a hat.  That simply is not possible.  Rimini is collecting and

---

[2] As Rimini already informed Oracle, given the time constraints of this limited proceeding, Rimini agrees to review each potentially responsive document from this set only once.  *See* July 26, 2019 Email from J. Tryck. To the extent Oracle intends to serve any additional RFPs to seek custodial documents, Rimini asks that Oracle serve those requests by August 12 so that they may be included in Rimini's custodial review.

**GIBSON DUNN**

Jacob J.O. Minne
August 5, 2019
Page 8

producing documents on a rolling basis, but Oracle's demands for expedited production are unreasonable. As Oracle well knows from *Rimini II* discovery, which took years to complete, collection and production of documents from technical, non-custodial sources is a time-consuming process. As one example of the time-intensive nature of this discovery, Oracle just a few days ago (on an August 1 meet and confer call) asked Rimini to investigate whether it can export data from SharePoint and Salesforce. Rimini has already investigated this request and can report that collecting and producing this data would take approximately 3 to 4 weeks to complete (exclusive of any privilege review). It would thus be impossible for Rimini to complete this production by today, Monday, August 5, and it is unreasonable for Oracle to expect Rimini to do so.

We would again encourage Oracle to take a reasonable approach to discovery. But if Oracle insists on bringing a motion regarding custodians, search terms, or related issues, Rimini can be available to meet and confer on a proposed briefing schedule.

Very truly yours,

*Jennafer M. Tryck*

Jennafer M. Tryck

JMT/jmt

cc: Karen L. Dunn
Kathleen R. Hartnett
William Isaacson
Ashleigh Jensen
Tran Le
Richard J. Pocker
Beko Reblitz-Richardson
Sean Rodriguez
Gabriel Schlabach
Samuel Ungar
Zachary S. Hill
David Kocan
Lisa S. Lee
Jacob J.O. Minne
John A. Polito
Lindsey M. Shinn

GIBSON DUNN

Jacob J.O. Minne
August 5, 2019
Page 9

    Benjamin P. Smith
    Sharon R. Smith