BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:    (202) 237-2727
Facsimile:    (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
   (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:    415.293.6800
Facsimile:    415.293.6899
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S REPLY IN SUPPORT OF MOTION TO COMPEL RE POST-INJUNCTION REQUESTS FOR PRODUCTION**<br><br><u>**PUBLIC REDACTED VERSION**</u> |

ORACLE'S REPLY IN SUPPORT OF MOTION TO COMPEL

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   Oracle Seeks a Relevant and Proportionate Post-Injunction Custodial Production Vital to Assessing Rimini's Injunction Compliance. .............................................. 2

    B.   Oracle's Proposed Custodians and Search Terms Proportionately Seek Relevant Non-Duplicative Documents. ................................................................................. 4

        1.   Oracle's Proposed Custodians Are Proportionate. ....................................... 5

            a.   Executives and Policymakers ............................................................ 6
            b.   In-House Tool Developers ................................................................. 6
            c.   Customer Environment Support Personnel ....................................... 7
            d.   PeopleSoft and JD Edwards Developers ........................................... 7

        2.   Oracle's Proposed Search Terms Are Proportionate, Whereas Rimini's Are Insufficient. ............................................................................................ 8

            a.   Supplemental RFPs 3 and 5 ............................................................... 8
            b.   Supplemental RFPs 9 and 10 ............................................................. 9

    C.   Oracle's Requested Production Schedule Is Workable and Reasonable. ............. 10

III. CONCLUSION ............................................................................................................ 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 45 ...................................................................................................................5

Fed. R. Evid. 502 ..................................................................................................................10

I.        **INTRODUCTION**

Rimini's opposition is based on three meritless arguments: (a) custodial documents are irrelevant; (b) there is insufficient time to produce documents; and (c) Oracle's requests are unduly burdensome.

Regarding custodial documents, Rimini's argument is demonstrably disingenuous. Two weeks ago, the Ninth Circuit upheld almost all provisions of the Injunction, and in doing so, the Ninth Circuit cited "Rimini's own internal emails," ECF No. 1236 at 3, as evidence. The Ninth Circuit's opinion disposes of this argument: custodial documents are essential here.

Regarding the time to complete production, Rimini wrongly argues that it is being required to produce documents in a matter of weeks. In fact, Oracle first requested these documents in January, and after motion practice, this Court ruled in early April that Oracle was entitled to discovery. Rimini has had almost nine months to produce documents that might back up its claim that is it complying with the Injunction, and it has failed to do so. Despite Rimini's delays, the Parties here are experienced at wrapping up discovery on a tight timeframe, and they can and should do so again here.

Regarding burden, Rimini entirely ignores the reality that Judge Hicks issued a *permanent injunction*, needed to stop Rimini's rampant copyright infringement, and the Ninth Circuit upheld that injunction. The issue here is what level of discovery is appropriate to determine whether Rimini—a company whose business model was "entirely based on infringing" Oracle's copyrights—is complying with the Injunction. Oracle has sought appropriately targeted discovery, while Rimini has proposed a series of admittedly unilateral limitations that are antithetical to the manner in which discovery is conducted in federal court. Rimini contends that discovery into its company-wide practices should be limited to six custodians and an arbitrary limit of 30,000 documents. Rimini is not engaging in a truth-seeking exercise; Rimini is trying to hide the ball.

Accordingly, Oracle respectfully requests that the Court order Rimini to make a custodial production using Oracle's proposed custodians and search terms on a rolling basis between now and October 11.

## II.  ARGUMENT

### A.  Oracle Seeks a Relevant and Proportionate Post-Injunction Custodial Production Vital to Assessing Rimini's Injunction Compliance.

According to Rimini, "Custodial Email Productions Have Virtually No Marginal Relevance" in light of the technical production that Rimini is making. Opp'n at 12. This is demonstrably false. As discussed above, the Ninth Circuit disagrees, citing "Rimini's own internal emails" in upholding the Injunction. ECF No. 1236 at 3.

While the Ninth Circuit's decision disposes of this issue, the history of this longstanding litigation shows **both** custodial and technical information are necessary to understand and assess Rimini's actual practices—which often deviate sharply from what Rimini claims its practices are. Oracle's Motion highlighted three examples of Rimini's disproven past denials: cross-use, creation (and subsequent deletion) of a "library" of Oracle software, and the existence of generic development environments. Mot. at 4. To test Rimini's denials of the five Injunction violations identified by Oracle—cloud hosting of PeopleSoft; cross-use of PeopleSoft; cross-use of JD Edwards; copying JD Edwards source code; and distributing copyrighted PeopleSoft and JD Edwards materials—Oracle must be able to review the actual words and actions of Rimini employees, which are largely apparent only through custodial production. Oracle's pending summary judgment motions in *Rimini II* include significant reference to Rimini admissions in custodial documents showing Rimini's ongoing unlawful cross-use and cloud hosting during the *Rimini II* time period. Mot. at 10. Equivalent documents from the post-Injunction period will be similarly relevant to showing such conduct during that period.

An excerpt from one of a handful of emails that Rimini employees posted to Jira, an online system to which Oracle gained access only days before Oracle filed its Motion, demonstrates the value of the custodial documents that Oracle requests. The email shows ▌

▌

▌:



Stokes Decl., ¶ 2 & Ex. 1.  The Oracle file contains an Oracle copyright notice:

```
!              Confidentiality Information:                      *
!                                                                *
! This module contains confidential and proprietary information  *
! of Oracle; it is not to be copied, reproduced, or transmitted  *
! in any form, by any means, in whole or in part, nor is it to   *
! be used for any purpose other than that for which it is        *
! expressly provided under the applicable license agreement.     *
!                                                                *
! Copyright (C) 2006 Oracle. All Rights Reserved.                *
```

*Id.* ¶ 3 & Ex. 2.  This email would be identified for review if the parties used Oracle's search terms and would not be identified for review (save for the name of the attachment) if Rimini's proposed search terms applied.[1]

This email also shows, despite Rimini's representations to the contrary, that Rimini does not "gain and reuse knowledge and experience in the course of providing support to multiple

---

[1] Because it is not Rimini's regular practice to attach emails of this nature to Jira, access to Jira is not a substitute for custodial productions.

clients." Joint Status Report, ECF No. 1231, at 17. Rimini cross-uses: Rimini developer Michael Johnson modified a copy of PeopleSoft software to create a derivative work that was not solely for the benefit of the associated customer; this code was sent to other Rimini employees, who then could copy that code into software associated with other customers.

Rimini also makes the specious claim that custodial production is unnecessary because "Oracle sought, and was granted permission, to use the *Rimini II* materials in this proceeding." Opp'n at 13. The discovery cutoff in *Rimini II* was February 2018—nine months ***before*** the Injunction took effect in November 2018. Had Rimini simply stipulated that its support practices have not changed since February 2018, discovery could have been very substantially limited, but Rimini did not do so. Accordingly, to assess Rimini's current practices, Oracle and the Court need to examine ***post-Rimini II cutoff custodial documents***.

Finally, Rimini incorrectly suggests that a custodial production is unnecessary because it allegedly "already produced the emails from its department leads and its CEO explaining to the company what process changes Rimini would be making in response to the Injunction." Opp'n at 13. This is an apparent reference to the mere five Injunction notice emails that Rimini produced, which were responsive to Oracle's request for Injunction notices. These emails underscore the need for a custodial production to test whether and how Rimini implemented the stated changes and responded to follow-up questions and issues. For example, in one of these five emails (improperly marked as privileged), ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" Stokes Decl., ¶ 8 & Ex. 7 (RSI006850039). Oracle's few glimpses into Rimini's custodial emails show the importance of Rimini's custodial documents.

B. **Oracle's Proposed Custodians and Search Terms Proportionately Seek Relevant Non-Duplicative Documents.**

Rimini's Opposition is replete with exaggerated claims of burden that result from its own refusal to negotiate search terms or custodians with Oracle (and, as discussed below, from Rimini's own delay in beginning the custodial review process). Based on its years of experience

4

ORACLE'S REPLY IN SUPPORT OF MOTION TO COMPEL

with the topics at issue in this litigation, Oracle proposed 19 custodians (in light of the multiple Rimini departments implicated by the Injunction) and approximately 280 search terms. Oracle expected that search to reach the most relevant custodial documents, as Oracle has no interest in an overbroad production, particularly given the expedited time frame. Yet Rimini refused to engage with Oracle's proposal, taking hard lines on the number of custodians and refusing to provide Oracle with hit count reports (which cost nothing) for all custodians that would have allowed Oracle to negotiate search terms meaningfully. Rimini rejected Oracle's proposal to compromise at 12 custodians, instead insisting that it would agree only to a combination of custodians and search terms that yielded 30,000 document hits or fewer. *Compare* Mot. at 6 *with* Opp'n at 14.

Rimini's insistence on producing nothing more than whatever documents remain from a review of 30,000 documents from six custodians based on search terms "unilaterally identified" by Rimini, Opp'n at 10, will undermine the ability of the Court and Oracle to assess Rimini's Injunction compliance. Rimini has offered no justification for why a 30,000 custodial document cap is proportionate here, beyond claiming that it is incapable of reviewing more documents in the time now remaining. Rimini should not be rewarded for its own obstruction and delay. And, again, Rimini's proposed document cap would put Rimini in the position of *reviewing* fewer documents regarding its compliance with a federal permanent injunction than at least two dozen non-parties across *Rimini I* and *Rimini II* have each **produced** in response to Rule 45 subpoenas. Mot. at 15–16.

### 1. Oracle's Proposed Custodians Are Proportionate.

Oracle's proposed list of 19 Rimini custodians represents a cross-section of Rimini departments whose practices are directly at issue in assessing Injunction compliance: Rimini executives, Rimini's internal tool developers, Rimini's environment management team, and the Rimini engineers who develop and test updates for Oracle's PeopleSoft and JD Edwards Software (two distinct categories). Rimini's objections to each of these categories of proposed custodians are without merit.

a.     **Executives and Policymakers**

Rimini seeks to avoid custodial production from executives and policymakers by claiming, incorrectly, that Injunction compliance can be determined solely by reference to Rimini's technical, day-to-day processes as implemented by lower level personnel. Opposition at 15. The record of this litigation makes clear that the opposite is true: Rimini's key executives and policymakers have unique roles related to setting and implementing policies related to Rimini's support of Oracle customers, including Injunction compliance. Sebastian Grady is likely to have relevant documents because, as shown by analogous documents from the *Rimini II* custodial productions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Rimini states without discussion that Oracle has no justification for discovery from Nancy Lyskawa, but Ms. Lyskawa's role in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, means that she is highly likely to have custodial documents regarding policies and practices related to Rimini's post-Injunction update processes.

CEO Seth Ravin's documents are clearly relevant as he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, underscoring his direct, personal involvement in Injunction compliance. This is consistent with Mr. Ravin's history of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Stokes Decl., ¶ 4 & Ex. 3 (*Rimini II* Depo. Ex. 1351). In light of Mr. Ravin's demonstrated, active role in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, his documents are essential to assessing Injunction compliance.

b.     **In-House Tool Developers**

Rimini supports Oracle software customers through a variety of software tools that automate Rimini's provision of software updates and other materials to its customers; that is, the tools automate cross-use in violation of the Injunction. Custodial documents about the post-Injunction design and operation of these tools are thus critical, particularly as Rimini claims that it changed some of these tools after the Injunction issued.

For example, Rimini now uses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████.[2]  To test whether Rimini is complying with the Injunction, Oracle cannot rely on ████████ data, as Rimini has destroyed that data. Custodial documents are needed to shed light on Rimini's actual practices. Stokes Decl., ¶¶ 5–6 & Exs. 4–5.

### c. Customer Environment Support Personnel

Rimini contends that custodial documents from customer environment support personnel are unnecessary because Rimini has produced to Oracle the list of environments it has accessed and the "actual updates Rimini created after November 5, 2018, to the extent they exist on Rimini's systems." Opp'n at 2. Notably, Rimini has not provided all post-Injunction updates that it sent to Oracle customers from its systems, because (as noted above) it is now clear that ████████ deletes this relevant evidence. Stokes Decl., ¶ 7 & Ex. 6. In 2018, Rimini claimed to have retained and produced copies of all files that ████████ deleted. *Id.*, ¶ 5 & Ex. 4. But now, Rimini has refused to state whether its production to date includes a complete copy of even a single update set to customers. *Id.*, ¶ 7 & Ex. 6. Lists of environments and lists of updates alone will not show all cross-use or copying of Oracle code by Rimini employees, as shown by the email discussed above.

### d. PeopleSoft and JD Edwards Developers

Rimini argues that custodial documents from Rimini developers are cumulative of other evidence, and proposes that its production be limited to four development-related custodians. Opp'n at 16. Oracle requests production from five named JD Edwards developers, testers, and managers, five named PeopleSoft developers, testers, and managers, and one additional PeopleSoft custodian to be named by Rimini. Oracle's list includes Rimini personnel who develop and test PeopleSoft and JD Edwards updates covered by the Injunction as well as those responsible for delivering updates to new Rimini customers. Given that Rimini has identified ████ distributions of software updates to customers in the time period between January and May 2019 alone, Stokes Decl., ¶ 9, Oracle's proposal of nine developer custodians (out of the dozens

---

[2] Oracle will bring a motion regarding this deletion shortly if the Parties are unable to resolve the issue.

of potentially relevant development personnel) is proportional to the needs of the case. In contrast, Rimini's proposal of four development-related custodians, Opp'n at 16, is arbitrarily low and would ensure the exclusion of relevant evidence.

### 2. Oracle's Proposed Search Terms Are Proportionate, Whereas Rimini's Are Insufficient.

Oracle illustrated the appropriateness of its search terms by reference to the relevant requests for production (Oracle's Supplemental RFPs 3, 5, 9, and 10). Mot. at 16–17. Rimini does not explain why any term is irrelevant, does not attempt to narrow search terms that it believes to be overbroad, and does not contend that the few terms it has selected are better at identifying relevant documents than those it rejects. Nor does Rimini provide any meaningful counterproposal designed to result in a relevant production of documents. Instead, Rimini proposes an arbitrary set of search terms in order to reverse engineer a limited set of documents to be reviewed (20,000–30,000), all without performing any analysis (let alone providing evidence) of what documents would be shielded from disclosure. As Rimini candidly admits, it "unilaterally identified a targeted subset of Oracle's search terms that hit on a feasible number of documents to review." Opp'n at 10. Rimini did so after refusing to provide Oracle with hit count information for all custodians (until after Rimini filed its Opposition), which would have allowed Oracle to assess potential narrowing of search terms. Rimini's arbitrary approach to responding to discovery requests lacks any authority and should be rejected.

#### a. Supplemental RFPs 3 and 5

Rimini claims that custodial production is "not relevant" to Supplemental RFP No. 3, which requests documents (including drafts) that Rimini provided to its customers post-Injunction in connection with support of Oracle software. Rimini is wrong: Supplemental RFP No. 3 plainly encompasses custodial documents provided to customers. Rimini does not address most of the search terms Oracle identified as relevant to RFP No. 3 ("1099*", "Year-End*", "HCM*", and "FSCM*"), and asserts only in passing (without substantiation) that "update*" would pull in "irrelevant 'general office' communications." Opp'n at 17. Software "Updates" are plainly central to Injunction compliance, and Rimini has not provided any meaningful information that

would allow the parties to tailor that term further without losing key documents.

Similarly, Rimini states incorrectly that custodial discovery is not called for by Supplemental RFP No. 5. Opp'n at 19. RFP No. 5 calls for policies or memoranda (including drafts) that Rimini wrote or developed in response to the Injunction regarding Rimini's support processes. *Id.* To date, Rimini has produced *five* emails regarding Injunction compliance—which Rimini claims are its Injunction "notices." *See supra* at p.4; ECF No. 1239-2 (RSI006850037). These documents only serve to confirm that responsive custodial email exists with respect to Supplemental RFP No. 5, and therefore should be ordered produced. Rimini does not address "polic*", "white paper*," or any other relevant search term that Oracle proposed and Rimini rejects. Rimini cannot avoid its discovery obligations with a conclusory statement that custodial production is unnecessary.

### b. Supplemental RFPs 9 and 10

Supplemental RFP No. 9 seeks all communications relating to specific types of source code and other technical files, including files that Rimini transmitted to customers post-Injunction ▮. Mot. at 17. Oracle proposed search terms corresponding to each of the file and document types listed in the RFP. *Id.* Rejecting all but one of those search terms, *id.*, Rimini argues that documents sought by RFP No. 9 are irrelevant and cumulative. Opp'n at 19. This is clearly erroneous. As demonstrated by the Rimini email excerpted above, *see supra*, in which ▮▮▮, Rimini employees communicate by email and in detail regarding ▮▮▮. As explained above, such discussions can prove Injunction violations, for example if they reflect cross-use or other unlawful copying or distribution of Oracle's copyrighted works. While Rimini's technical records (and third-party productions of updates) may also provide evidence of cross-use and other Injunction violations, they are not a substitute for emails reflecting explicit acts of copying and cross-use.

With respect to Supplemental RFP No. 10, which seeks documents concerning Rimini's development and distribution of certain post-Injunction updates identified in Rimini's discovery responses, Rimini asserts that its proposed search terms are sufficient—an assertion disproven by

9

ORACLE'S REPLY IN SUPPORT OF MOTION TO COMPEL

the email discussed above, the content of which hits on Oracle's proposed search terms (such as "*.sqc" and "HCM*") but not Rimini's (which would identify, at most, the name of the attachment). Nor is Supplemental RFP No. 10 overbroad, given that Rimini's updates to Oracle software are at the core of Oracle's list of potential Injunction violations. Notably, Rimini's meager list of proposed search terms would exclude Rimini's typical naming patterns for updates to PeopleSoft and JD Edwards and would exclude any term directed at JD Edwards updates at all.

### C. Oracle's Requested Production Schedule Is Workable and Reasonable.

An overarching theme of Rimini's brief is that Oracle's proposed custodians and search terms must be rejected because Rimini cannot review the resulting documents in the time remaining. To begin with, Rimini should not be permitted to benefit from its own delay: Oracle first requested information in January; and this Court ruled in early April that discovery is appropriate here. Yet, Rimini refused to discuss a custodial production until after the Court issued its June order setting forth the parameters of discovery. Even then, Rimini refused to engage in a reasonable negotiation, continually shifting its position on the potential scope of a custodial search and production for weeks, until its ultimatum that Oracle accept six custodians and no more than 30,000 documents reviewed.

In any event, Oracle has proposed procedures by which Rimini could timely produce the documents that Oracle seeks without undue burden. First, Oracle will not object to a production of all documents that hit on Oracle's proposed search terms as a "document dump." Second, Oracle will agree that any production of privileged custodial documents is presumptively inadvertent under both Fed. R. Evid. 502 and ¶ 15 of the Protective Order in light of the circumstances of the case. See Decl. of David R. Kocan in Supp. of Mot. to Compel ("Kocan Decl."), Ex. 16, ECF No. 1237-18, at 3–4. Third, Rimini should produce documents on a rolling basis (three or four custodians per week until October 11), which is certainly feasible. This lengthy litigation has involved much larger document productions, and the Parties here are in a unique position to review these documents quickly and efficiently. Had Rimini started this process in January or April or even June, custodial productions would be done by now.

Finally, Rimini's contention that Oracle is responsible for this delay is baseless. Rimini's custodial production proposals, while shifting, eventually centered on an unreasonable demand that Oracle commit to a small set of custodians before Rimini would provide search term hit count data for any additional custodians and that Oracle forgo seeking relief from this Court. *See* Kocan Decl., ¶ 21, Ex. 13. Oracle attempted to negotiate with Rimini in good faith to arrive at a reasonable compromise until just before filing its Motion. Mot. at 5–7; Kocan Decl. ¶¶ 17–28, Exs. 7–20. Oracle's attempt to compromise, and thereafter its prompt filing for relief from the Court once a reasonable compromise became clearly unavailable, is precisely how a litigant is supposed to proceed.

### III. CONCLUSION

Despite representing to this Court in the first sentence of its brief that "Rimini has been complying with the November 5, 2018, injunction is this case," Rimini has opposed the very discovery needed to test this representation. Oracle and the Court are entitled to know whether, as Rimini claims, it has finally changed its ways, or whether its practice of consciously disregarding Oracle's intellectual property rights continues. Rimini should not be permitted to exercise a pocket veto of the Injunction by hiding the very documents needed to test its purported compliance. Oracle respectfully requests that the Court compel Rimini to produce documents based on Oracle's proposed custodians and search terms, on a rolling basis, to be completed by October 11.

DATED: August 29, 2019   MORGAN, LEWIS & BOCKIUS LLP

By: */s/ John A. Polito*
 John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

11
ORACLE'S REPLY IN SUPPORT OF MOTION TO COMPEL

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August, 2019, I electronically transmitted the foregoing **ORACLE'S REPLY IN SUPPORT OF MOTION TO COMPEL RE POST-INJUNCTION REQUESTS FOR PRODUCTION** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: August 29, 2019

By: _/s/ John A. Polito_
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

CERTIFICATE OF SERVICE