BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
     (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:    415.293.6800
Facsimile:    415.293.6899
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-VCF <br><br> **ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL** <br><br> <u>**PUBLIC REDACTED VERSION**</u> |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

    A.    The Permanent Injunction And Attorneys' Fees Order On Remand ..................... 3

        1.    The Court Again Entered A Permanent Injunction Against Rimini .......... 3

        2.    The Court Again Granted Oracle's Motion For Attorneys' Fees ............... 4

    B.    Rimini's Latest Appeal Of The Injunction And Attorneys' Fees Order................ 5

        1.    The Ninth Circuit's January 2018 Opinion Established That Cross-Use Was Infringement........................................................................... 5

        2.    Rimini Misrepresented And Ignored The Ninth Circuit's Prior Cross-Use Ruling ................................................................................... 6

        3.    Rimini Misrepresented The Ninth Circuit's Prior Statements About Oracle's Licenses And The Nature Of Software Support........................... 7

        4.    Rimini Mischaracterized The Attorneys' Fees Rulings Of The Ninth Circuit And This Court ................................................................. 8

        5.    Rimini Continued To Consume Resources By Repeatedly Filing Supplemental Arguments........................................................................ 9

    C.    The Ninth Circuit Affirmed The Fee Award And Materially Upheld The Injunction ............................................................................................................. 9

        1.    The Ninth Circuit Materially Upheld The Injunction .............................. 10

        2.    The Ninth Circuit Affirmed The Fee Award............................................. 10

    D.    Oracle Incurred Significant Expenses On Appeal ................................................ 11

III.    LEGAL STANDARD ......................................................................................... 11

IV.    ARGUMENT ...................................................................................................... 12

    A.    The Court Should Award Oracle Appellate Attorneys' Fees................................ 12

        1.    Oracle's Degree Of Success Is High ....................................................... 13

        2.    Rimini's Position On Appeal Was Objectively Unreasonable ................. 14

        3.    Fees On Appeal Are Necessary To Make Oracle Whole.......................... 16

        4.    Attorneys' Fees Are Necessary To Deter Rimini ................................... 17

        5.    Attorneys' Fees Further The Purpose Of The Copyright Act .................. 18

    B.    The Fees That Oracle Requests Are Reasonable ................................................. 19

        1.    The Rates Actually Paid By Oracle Were Reasonable Hourly Rates ....... 19

**TABLE OF CONTENTS**
(continued)

Page

      2.     The Amount of Time Billed On The Appeal Was Reasonable ................. 23

V.     CONCLUSION ........................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litigation*,
   No. 14-CV-4062, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ...........................................22

*Adsani v. Miller,*
   139 F.3d 67 (2d Cir. 1998)................................................................................................12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany
   Cnty. Bd. of Elections,*
   522 F.3d 182 (2d Cir. 2008)..............................................................................................21

*Ballen v. City of Redmond,*
   466 F.3d 736 (9th Cir. 2006).............................................................................................20

*Camacho v. Bridgeport Fin., Inc.,*
   523 F.3d 973 (9th Cir. 2008)........................................................................................11, 22

*Casella v. Morris,*
   820 F.2d 362 (11th Cir. 1987)...........................................................................................11

*Chrapliwy v. Uniroyal, Inc.,*
   670 F.2d 760 (7th Cir. 1982).........................................................................................22, 23

*Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.,*
   152 F.3d 1171 (9th Cir. 1998)...........................................................................................13

*Creative Computing v. Getloaded.com LLC,*
   386 F.3d 930 (9th Cir. 2004).............................................................................................14

*Davis v. Guam,*
   No. 11-00035, 2019 WL 1512266 (D. Guam Apr. 8, 2019).............................................20, 21

*Family PAC v. Ferguson,*
   745 F.3d 1261 (9th Cir. 2014)...........................................................................................12

*Fantasy, Inc. v. Fogerty,*
   94 F.3d 553 (9th Cir. 1996)..............................................................................................12

*Ferland v. Conrad Credit Corp.,*
   244 F.3d 1145 (9th Cir. 2001)...........................................................................................19

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994).....................................................................................................17, 18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Glacier Films (USA), Inc. v. Turchin*,
    896 F.3d 1033 (9th Cir. 2018)..............................................................12, 14, 15, 18

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013)...........................................................................19, 23

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................14, 19

*Jackson v. Axton*,
    25 F.3d 884 (9th Cir. 1994)...........................................................................11, 14, 18

*John Wiley & Sons, Inc. v. Kirtsaeng*,
    No. 08-cv-7834, 2016 WL 7392210 (S.D.N.Y. Dec. 21, 2016) ..............................12

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016) ...................................................................................*passim*

*Kourtis v. Cameron*,
    358 Fed. App'x. 863 (9th Cir. 2009).......................................................................20

*Lanard Toys Ltd. v. Novelty, Inc.*,
    375 Fed. Appx. 705 (9th Cir. 2010) .........................................................................12

*Louisville Black Police Officers Org., Inc. v. City of Louisville*,
    700 F.2d 268 (6th Cir. 1983).....................................................................................22

*Magnuson v. Video Yesteryear*,
    85 F.3d 1424 (9th Cir. 1996).....................................................................................18

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996)................................................................................11, 13

*Mattel, Inc. v. MGA Entm't, Inc.*,
    No. 04-cv-9049, 2011 WL 3420603 (C.D. Cal. Aug. 4, 2011)................................23

*McCown v. City of Fontana*,
    565 F.3d 1097 (9th Cir. 2009)...................................................................................14

*Moore v. JAS. H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982).....................................................................................20

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008)...................................................................................23

-ii-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  879 F.3d 948 (9th Cir. 2018).................................................................................... *passim*

*Pacquiao v. Mayweather*,
  No. 2:09-cv-2448, 2012 WL 4092684 (D. Nev. Sept. 17, 2012)................................21

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. 11-cv-07098, 2015 WL 1746484 (C.D. Cal. Mar. 25, 2015)......................20, 23

*Phigenix, Inc. v. Genentech Inc.*,
  No. 15-cv-01238, 2019 WL 2579260 (N.D. Cal. June 7, 2019)................................22

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010).....................................................................................19

*Resurrection Bay Conservation All. v. City of Seward Alaska*,
  640 F.3d 1087 (9th Cir. 2011)...................................................................................19

*Shame On You Prods., Inc. v. Banks*,
  893 F.3d 661 (9th Cir. 2018)...............................................................................11, 14

*TCA Television Corp. v. McCollum*,
  No. 15-cv-4325, 2017 WL 2418751 (S.D.N.Y. June 5, 2017) ..................................12

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
  340 F.3d 829 (9th Cir. 2003).....................................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.
  Litigation*,
  MDL No. 2672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................22, 23

*Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*,
  No. CIV. 2:11-1787, 2012 WL 538263 (E.D. Cal. Feb. 17, 2012).........................21

**Statutes**

17 U.S.C. § 505 ................................................................................................ *passim*

**Other Authorities**

Fed. R. App. P. 28(j) ...........................................................................................9, 16

Ninth Circuit Rule 39-1.8...........................................................................................1

LR 54-14(b)(3) ................................................................................................19, 20

-iii-

1

**NOTICE OF MOTION AND MOTION**

2        Pursuant to 17 U.S.C. § 505, Ninth Circuit Rule 39-1.8, the Order of the United States

3 Court of Appeals for the Ninth Circuit, Case No. 18-16554, ECF No. 57, and this Court's

4 September 13, 2019 Order, ECF No. 1264, Plaintiffs Oracle USA, Inc., Oracle America, Inc. and

5 Oracle International Corporation (together, "Oracle") will and hereby do move for an award of

6 attorneys' fees on appeal against Defendant Rimini Street, Inc. ("Rimini Street," "Rimini," or

7 "Defendant").  This motion is based on this Notice of Motion and Motion, the Memorandum of

8 Points and Authorities incorporated herein, the declarations of John A. Polito ("Polito Decl."),

9 Kathleen Hartnett ("Hartnett Decl."), Paul D. Clement ("Clement Decl."), and James C. Maroulis

10 ("Maroulis Decl."), documents incorporated by reference, the entire record in this action, matters

11 appropriate for judicial notice, and any evidence or argument presented on reply or at the hearing.

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

13 **I.**     **INTRODUCTION**

14        On August 16, 2019, the Ninth Circuit issued a memorandum decision, summarily and

15 resoundingly rejecting Rimini's second attempt to invalidate this Court's injunction and to reduce

16 or eliminate Rimini's obligation to pay $28,502,246.40 in attorneys' fees, affirming the Court's

17 award of attorneys' fees in its entirety and upholding the injunction with minor modifications.

18 Case No. 18-16554, ECF No. 55-1.  The Ninth Circuit then granted Oracle's motion to transfer

19 consideration of attorneys' fees on appeal to this Court.  Case No. 18-16554, ECF No. 57.  Oracle

20 now moves for attorneys' fees incurred in defending against Rimini's latest appeal.

21        The Court has discretion to award Oracle's attorneys' fees under 17 U.S.C. § 505, upon

22 considering a set of nonexclusive factors, including: (1) Oracle's degree of success, (2) the

23 objective unreasonableness of Rimini's litigation conduct, (3) the need to make Oracle whole, (4)

24 the need to deter Rimini's continuing infringement, and (5) the need to further the aims of the

25 copyright laws by incentivizing innovators to protect their intellectual property.  ECF No. 1164 at

26 10-11; ECF No. 1049 at 13.  These factors weigh strongly in favor of granting Oracle's motion.

27        First, Oracle had a high degree of success on appeal:  the Ninth Circuit affirmed every

28

1

ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL

penny of this Court's $28 million attorneys' fee award, and upheld this Court's renewed permanent injunction in all material respects.  The Ninth Circuit's revisions to the injunction regarding two discrete issues concerning two Oracle product lines have no material effect on Oracle's overall degree of success, because the vast majority of the injunction remains in effect and still bars Rimini from infringing Oracle's copyrights on all of the Oracle product lines at issue in the underlying litigation.

Second, Rimini persisted in mounting objectively unreasonable litigation positions in this latest appeal.  As it has throughout the case, Rimini continued to take positions "based on a clear misreading of Oracle's software licensing agreements and a conscious disregard for the manner that Rimini Street used and housed [Oracle's] copyrighted software programs on its own servers." ECF No. 1164 at 13-14.  Among other things, Rimini insisted that cross-use, a key case issue, was a "made-up idea," and then misrepresented the scope and effect of prior rulings on cross-use by both this Court and the Ninth Circuit.  Case No. 18-16554, ECF No. 12, Opening Br. at 1, 11, 32, 35.  Rimini also repeatedly, and falsely, accused this Court of disregarding the Ninth Circuit's mandate.  *See, e.g.*, *id.* at 49 ("The district court's re-imposition of the exact same fee award failed to implement either the letter or the spirit of [the Ninth Circuit's] mandate.").  The Ninth Circuit's latest opinion squarely rejects the unreasonable assertions and accusations that Rimini made on appeal.

The remaining factors all weigh in Oracle's favor.  Ordering reimbursement of the appellate fees will further the aims of the Copyright Act by compensating Oracle for "its huge outlay of fees … necessarily incurred in enforcing its copyrights"; to protect "Oracle's investment in its intellectual property and its incentive to create future software" (ECF No. 1164 at 15:8-13); and deterring Rimini "from its pattern of infringing Oracle's copyrights" (*id.* at 15:19-22).

This Court previously found that the fees Oracle requested were "reasonable because they [were] the product of reasonable rates and a reasonable expenditure of time for the complexity of the litigation and because this action was first and foremost a copyright infringement action." ECF No. 1164 at 17.  This is still the case.  As discussed below, the rates and time billed by

ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL

1    Oracle's attorneys on appeal, including the high-caliber appellate counsel retained to present this

2    complex case to the Ninth Circuit in the face of Rimini's obfuscation, are similarly reasonable.

3    Oracle therefore respectfully requests that the Court grant Oracle's request for appellate

4    attorneys' fees of $207,487.24.

5    **II.**      <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

6        **A.**      <u>**The Permanent Injunction And Attorneys' Fees Order On Remand**</u>

7        After succeeding at trial and on appeal on its claims that Rimini had infringed 93 Oracle

8    copyrights, on remand, Oracle renewed its motions for a permanent injunction and for attorneys'

9    fees. ECF Nos. 1117, 1118. In August 2018, the Court granted both.

10        **1.**      **The Court Again Entered A Permanent Injunction Against Rimini**

11        The Court entered a renewed permanent injunction against Rimini with respect to

12    copyright infringement, agreeing with Oracle that the Ninth Circuit's remand "only require[d] the

13    court to reevaluate the relevant injunction factors solely under the Copyright Act and without

14    reference to the now reversed state law computer claims." ECF No. 1164 at 4. The Court did so,

15    finding that the *eBay* factors continued to weigh in Oracle's favor. First, the Court found that

16    Rimini's copyright infringement irreparably injured Oracle's business reputation and goodwill

17    through, *inter alia*, Rimini's direct competition with Oracle, its gain in market share through its

18    cut-rate prices enabled by its infringement, and its conscious disregard for Oracle's copyrights.

19    *Id.* at 5-7. Second, the Court found the factor of inadequate monetary damages weighed in

20    Oracle's favor because Oracle's loss of market share and company goodwill are "intangible

21    injuries difficult to quantify and compensate," because the damages were complex and difficult to

22    calculate, and because "the right to exclude others from taking and distributing the copyrighted

23    work . . . has routinely been held difficult to compensate solely through monetary compensation."

24    *Id.* at 7-8. Third, the Court found that the balance of hardships factor weighed in Oracle's favor

25    because Rimini has no legitimate business purpose for continuing its infringement, because there

26    was no evidence Rimini would be harmed, because Rimini repeatedly represented that it no

27    longer infringes, and because the injunction only enjoins acts determined to be unlawful. *Id.* at 8-

28

9.  Fourth and finally, the Court found that an injunction furthers the public interests that copyright law serves by protecting Oracle's "incentive to continue to develop software for public use," further observing that "competition in the after-license software support service market would not be lost or diminished." *Id.* at 9.

### 2.       The Court Again Granted Oracle's Motion For Attorneys' Fees

In the same order, the Court also granted Oracle's request for attorneys' fees incurred through November 2015 in the amount of $28,502,246.40, for work through trial and post-trial briefing, and for work on Oracle's motion for attorneys' fees.  ECF No. 1164 at 17.

First, the Court found that Oracle's "overall success" in the litigation, "at its heart and core . . . a copyright infringement action," supported an award of fees.  The Court observed that "one of the most important aspects of a party's degree of success in a copyright infringement action is establishing the defendant's liability, regardless of the amount of damages awarded" and that "on appeal, the Ninth Circuit affirmed the court's orders and the jury's verdict on Oracle's copyright infringement claim in its entirety."  ECF No. 1164 at 11-13.

Next, the Court found that Rimini's position was objectively unreasonable, "based on a clear misreading of Oracle's software licensing agreements and a conscious disregard for the manner that Rimini Street used and housed the copyrighted software programs on its own servers."  *Id.* at 13-14.  The Court also considered the "sea change" in Rimini's copyright defense: that Rimini finally admitted cross-use at trial, after more than five years of denying such conduct.  *Id.* at 14.  Finally, the Court noted Rimini's significant litigation misconduct, including the intentional destruction of (and subsequent denial of the existence of) relevant evidence.  *Id.*

The Court further found that an award of attorneys' fees was necessary to make Oracle whole, to deter Rimini and other third parties from engaging in future infringement, and to further the purposes of the Copyright Act.  *Id.* at 15-16.

The Court determined that the amount of fees Oracle sought was reasonable "because they are the product of reasonable rates and a reasonable expenditure of time for the complexity of the litigation and because this action was first and foremost a copyright infringement action."

*Id.* at 17.  The Court also found that Oracle's unsuccessful claims involved "a 'common core of facts' or 'related legal theories' to Oracle's copyright claims, and thus, may be included in an award of fees."  *Id.*  The Court thus granted Oracle $28,502,246.40 in attorneys' fees, the same amount it had previously granted before Rimini's first appeal.

### B.    Rimini's Latest Appeal Of The Injunction And Attorneys' Fees Order

Rimini appealed the Court's renewed entry of the permanent injunction and attorneys' fees award.  In doing so, Rimini attempted to resuscitate arguments that the Ninth Circuit had already squarely rejected or found waived, and repeatedly misrepresented what the Ninth Circuit had and had not held.  The Ninth Circuit disposed of Rimini's overblown arguments in a six-and-a-half page unpublished memorandum.  Rimini's litigation conduct on appeal was extraordinarily wasteful, unnecessarily causing Oracle to incur substantial attorneys' fees to respond to Rimini's objectively unreasonable arguments.

### 1.    The Ninth Circuit's January 2018 Opinion Established That Cross-Use Was Infringement

Even though the Ninth Circuit previously discussed cross-use in its prior published opinion, and even though Rimini's own trial counsel offered a definition of cross-use in his closing arguments, Rimini claimed in this appeal that "'cross-use'" is a "made-up idea" that this Court "uncritically accepted."  Case No. 18-16554, ECF No. 12, Opening Br. at 1, 11, 32, 35.  The Ninth Circuit's 2018 opinion shows that Rimini, once again, was not being candid:

> 'Cross use,' generally speaking, is the creation of development environments, under color of a license of one customer, to support other customers. There are numerous forms of 'cross use.'  In its narrowest form, 'cross use' is the making of development environments, under color of a license held by one identifiable customer of Rimini, for another identifiable customer of Rimini that also holds a license.  It also may include the creation of development environments under a given license for other customers of Rimini that may themselves hold licenses or even for licensees who have yet to become customers of Rimini.

*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 956 (9th Cir. 2018).  The Ninth Circuit then applied this concept to the Oracle software licenses at issue, explaining that cross-use was not permitted:

ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL

[E]ach of the licenses at issue here 'pointedly limits copying and use to supporting the '*Licensee.*' The licenses do not authorize Rimini to 'develop products *Rimini* could sell for *Rimini's* financial gain.' Any work that Rimini performs under color of a license held by a customer for other existing customers cannot be considered work in support of that particular customer. The same logic applies to work Rimini performs for unknown, future customers.

*Id.* (emphasis in original). The Ninth Circuit confirmed that cross-use is a copyright violation, rejecting Rimini's argument that cross-use is a mere contractual violation. *Id.* at 957.

Although Rimini now claims cross-use is a "made up" idea, its trial counsel provided the jury with the following definition in 2015: "If we have multiple clients with the exact same release, the same rights, we would come up with one fix and then apply it to other customers that had the exact same rights. That's the cross-use, the reusing of updates that you've heard about in this case." *Id.* at 957, n.3.

### 2. Rimini Misrepresented And Ignored The Ninth Circuit's Prior Cross-Use Ruling

In its latest appeal, Rimini presented unfounded, inaccurate, and previously waived arguments about the Ninth Circuit's 2018 rulings concerning cross-use. Rimini claimed that the 2018 opinion had embraced arguments about cross-use that the Ninth Circuit had actually rejected, and asserted that cross-use had not been "finally adjudicated" when this Court and the Ninth Circuit have ruled on it. Case No. 18-16554, ECF No. 12, Opening Br. at 32, 42-43.

Specifically, Rimini first claimed that the Ninth Circuit had recognized a limitation on cross-use that the Ninth Circuit had in fact expressly rejected. According to Rimini, the Ninth Circuit's "previous opinion distinguished between two forms of so-called 'cross-use'": (1) "current-customer" cross-use, which "is the making of development environments, under color of a license held by one identifiable customer of Rimini, for another identifiable customer of Rimini that also holds a license" and (2) "future-customer" cross-use, which is "the creation of development environments under a given license for … licensees who have yet to become customers of Rimini." Case No. 18-16554, ECF No. 12, Opening Br. at 32. In fact, the Ninth Circuit stated "[t]here are numerous forms of 'cross use'" and did not limit the term to these two forms. 879 F.3d at 956.

6

1   Rimini next used the false distinction of current-customer versus future-customer cross-

2   use to attempt to subvert the Ninth Circuit's 2018 holding.  Rimini claimed that the Ninth Circuit

3   had found only future-customer cross-use to be infringing, Case No. 18-16554, ECF No. 12,

4   Opening Br. at 32 (citing 879 F.3d at 957, 958), and that current-customer cross-use "has not

5   been finally adjudicated in this case, and in any event does not constitute copyright

6   infringement," *id.* at 32.  But the Ninth Circuit's 2018 ruling had in fact ***rejected*** Rimini's

7   proposed distinction, finding that "each of the licenses at issue here 'pointedly limits copying and

8   use to supporting the *Licensee*'," that "[a]ny work that Rimini performs under color of a license

9   held by a customer *for other existing customers* cannot be considered work in support of that

10  particular customer," and that "[t]he same logic applies to work Rimini performs for *unknown,*

11  *future customers*."  879 F.3d at 957 (emphasis added).  Far from distinguishing between the

12  impermissibility of cross-use that benefits existing customers and cross-use that benefits future

13  customers, the Ninth Circuit held that the "same logic" applied (and thus that cross-use was

14  infringing regardless of whether the beneficiary was a current Rimini customer or a future,

15  prospective Rimini customer).

16   Rimini also improperly attempted to re-litigate the merits of the judgment for copyright

17  infringement, which already had been affirmed by the Ninth Circuit in 2018, in its latest appeal.

18  For example, Rimini urged the Ninth Circuit to reverse the injunction on grounds that cross-use

19  "at most involves questions of contract law, not copyright infringement," ignoring the Ninth

20  Circuit's prior ruling that Rimini had waived this argument.  *Compare* Case No. 18-16554, ECF

21  No. 12, Opening Br. at 34, *with* 879 F.3d at 957.

### 3.   Rimini Misrepresented The Ninth Circuit's Prior Statements About Oracle's Licenses And The Nature Of Software Support

24   Rimini's arguments on appeal also misrepresented the Ninth Circuit's prior statements

25  about what Oracle's software licenses allow, to suggest that the Ninth Circuit had approved

26  Rimini's practices when it had done the opposite.  Rimini selectively quoted the Ninth Circuit's

27  2018 order to argue that "Oracle 'licensees may hire . . . Rimini to maintain their software for

28

them,'" and that "it is undisputed that the licenses generally permit Oracle's licensees to . . . outsource the work of maintenance to others, such as Rimini."  Case No. 18-16554, ECF No. 12, Opening Br. at 3 (citing 879 F.3d at 956-57).  Rimini's selective omissions altered these Ninth Circuit quotes almost beyond recognition.  In the first quoted passage, the Ninth Circuit said in full that "The licensees may hire a third party such as Rimini to maintain their software for them**, *but nothing in the licenses permits them to grant a non-party to the license a general right to copy proprietary software*.**"  879 F.3d at 957 (emphasis added).  The second quotation reads in full: "Here, it is undisputed that the licenses generally permit Oracle's licensees to ***maintain the software and make development environments for themselves***.  However, some licensees of the software, lacking either the capability or the interest, opt to outsource the work of maintenance to others, such as Rimini or even Oracle itself."  *Id.* at 956 (emphasis added).

Rimini similarly attributed to the Ninth Circuit the statement that "the very work of maintaining customized software requires copying the software."  *Id.* at 35 (citing 879 F.3d at 956).  But the entire sentence conveys a very different meaning: "In other words, the very work of maintaining customized software requires copying the software, ***which without a license to do so is a violation of the exclusive right of the copyright owner***."  879 F.3d at 956 (emphasis added).

### 4.     Rimini Mischaracterized The Attorneys' Fees Rulings Of The Ninth Circuit And This Court

Rimini asserted on appeal that this Court "did not acknowledge" and "disregarded this Court's explicit directive to 'reconsider[]' the attorneys' fee award on remand 'in light of Oracle's more limited success at litigation.'"  Case No. 18-16554, ECF No. 12, Opening Br. at 10, 48.  These assertions were false: this Court's attorneys' fee order specifically cited the Ninth Circuit's remand "for reconsideration in light of Oracle's more limited success at litigation."  ECF No. 1164 at 10.  The Court then acknowledged that "[t]he first issue before the court is whether to re-award attorneys' fees in this action in light of the Ninth Circuit's reversal of the state law claims," before proceeding to reconsider the factors under the mandate.  *Id.*

Rimini also told the Ninth Circuit that "[t]he district court's re-imposition of the exact

same fee award failed to implement either the letter or the spirit of this Court's mandate," and asked the Ninth Circuit to decide the fees issue "in the first instance rather than remand to the district court . . . *in light of the district court's intransigence*."  Case No. 18-16554, ECF No. 12, Opening Br. at 49, 58 (internal citation omitted; emphasis added).  Yet, perhaps recognizing that this Court's award of attorneys' fees was well within its discretion, Rimini's appellate counsel did not raise this issue at oral argument.  Nonetheless, Oracle incurred substantial attorneys' fees opposing Rimini's appeal on this point.

> **5.    Rimini Continued To Consume Resources By Repeatedly Filing Supplemental Arguments**

On appeal, Rimini also engaged in a practice of filing meritless and irrelevant notices of supplemental "authority" with the Ninth Circuit, purportedly under Fed. R. App. P. 28(j), which allows supplemental citation of "pertinent and significant authorities."  In less than two months, Rimini filed *three* Rule 28(j) notices that improperly sought to inject additional factual disputes and arguments into the appeal.  Oracle incurred legal expenses reviewing, analyzing, and responding to this improper tactic.  *See* Case No. 18-16554, ECF No. 45, June 27, 2019 Response; Case No. 18-16554, ECF No. 54, Aug. 14, 2019 Response.

These letters, Case No. 18-16554, ECF Nos. 43 (filed June 21, 2019), 46 (filed July 3, 2019) and 53 (filed Aug. 13, 2019), did not cite any new legal authority at all but instead attached filings and attorney correspondence pertaining to the injunction-enforcement proceedings not before the Ninth Circuit.  *See* Case No. 18-16554, ECF No. 45, June 27, 2019 Response.  This included attorney correspondence suggesting Oracle was engaged in copyright misuse, even though Rimini's counterclaim and affirmative defense for copyright misuse were dismissed in 2010 and were not the subject of any pending appeal.  Case No. 18-16554, ECF No. 53-2 at 3-4; ECF No. 111 at 8.

**C.    The Ninth Circuit Affirmed The Fee Award And Materially Upheld The Injunction**

The Ninth Circuit conclusively rejected Rimini's arguments in its latest appeal, affirmed

9

the award of attorneys' fees in full and upheld the injunction with only minor modifications.

### 1. The Ninth Circuit Materially Upheld The Injunction

The Ninth Circuit ruled conclusively that this Court "did not abuse its discretion in granting the injunction." Case No. 18-16554, ECF No. 55, Aug. 16, 2019 Order ¶ 2. For example, in rejecting Rimini's claim that this Court failed to analyze the "causal connection" requirement, the Ninth Circuit stated that "[t]he district court appropriately weighed the *eBay* factors, including permissibly finding that Rimini's infringing conduct had a 'causal connection' to the irreparable harm suffered by Oracle." *Id.* The Ninth Circuit also rejected Rimini's mootness argument. *Id.* ¶ 1.

The Ninth Circuit almost entirely rejected Rimini's contention that the injunction is overbroad, making only two minor modifications. *Id.* ¶ 3. As to JD Edwards and Siebel only, the Ninth Circuit struck (1) two paragraphs enjoining "local hosting" and (2) four words enjoining "accessing" source code. *Id.* It left the remainder of the injunction in place. The Ninth Circuit also rejected Rimini's claim that the injunction was vague, holding that the injunction "clearly sets out what conduct is restricted, namely that Rimini shall not reproduce, prepare derivative works from, or distribute software except 'to support the specific licensee's own internal data processing operations.'" *Id.* ¶ 4.

On August 19, 2019, Rimini issued a press statement that the Ninth Circuit "did not vacate the injunction entirely," ECF No. 1237-24, suggesting that the Ninth Circuit vacated significant portions of the injunction when it had not, in an apparent effort to confuse the public.

### 2. The Ninth Circuit Affirmed The Fee Award

The Ninth Circuit also fully affirmed the attorneys' fees award, rejecting Rimini's claim that this Court had "failed to implement either the letter or the spirit" of its mandate. The Ninth Circuit stated that "the district court clearly reconsidered the amount of the award and re-applied the attorneys' fees factors. Therefore, the district court did as instructed by this court." Case No. 18-16554, ECF No. 55, Aug. 16, 2019 Order ¶ 5. The appellate court similarly rejected Rimini's claim that attorneys' fees *must* be apportioned, ruling that Oracle could in fact recover attorneys'

1   fees incurred in litigating its copyright claims or "related claims," and that the Court permissibly

2   concluded that the claims "'involve[d] a common core of facts' [and were] based on 'related legal

3   theories,'" because "the 'action was first and foremost a copyright infringement action.'" *Id.*

4          **D.**    **Oracle Incurred Significant Expenses On Appeal**

5         After the Ninth Circuit issued its latest ruling in Oracle's favor, Oracle moved the Ninth

6   Circuit to transfer consideration of attorneys' fees on appeal to this Court, Case No. 18-16554,

7   ECF No. 56.  The Ninth Circuit granted the motion.  Case No. 18-16554, ECF No. 57.  In

8   defending against this second appeal, Oracle has incurred $207,487.24 in reasonable attorneys'

9   fees from July 2018 through July 2019 that it seeks to recover here.[1]

10  **III.**    **LEGAL STANDARD**

11        To determine whether an award of attorneys' fees is warranted under 17 U.S.C. § 505,

12  courts in the Ninth Circuit examine several non-exclusive factors, including: (1) the degree of

13  success of the prevailing party; (2) the objective reasonableness of the losing party's arguments

14  during litigation; (3) the need to make the prevailing party whole; (4) deterrence; and (5) the

15  purposes of the Copyright Act.  *See Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th

16  Cir. 2018); *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (setting forth

17  factors including "frivolousness, motivation, objective unreasonableness[,]and the need in

18  particular circumstances to advance considerations of compensation and deterrence"); *Maljack*

19  *Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890–91 (9th Cir. 1996) (applying test

20  to attorneys' fees on appeal); *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) (stating the five

21  factor test).  The Copyright Act does not condition an award of fees on a finding of willful

22  infringement.  *Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987) ("[A] showing of bad faith

23  or frivolity is not a requirement of a grant of fees.").

24

25  _____

    [1] Oracle incurred additional fees from July-September 2019, including for the hours spent
preparing this motion.  Polito Decl. ¶ 7; Hartnett Decl. ¶ 6; Clement Decl. ¶ 6.  Oracle will

26  supplement this motion with a request for reimbursement of those fees once they are paid.

27  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("In statutory fee cases,
federal courts, including our own, have uniformly held that time spent in establishing the

28  entitlement to and amount of the fee is compensable.").

1      The Court "enjoys 'wide latitude to award attorney's fees based on the totality of

2 circumstances in a case,'" while remaining "tethered to judicial guideposts." *Glacier Films*

3 *(USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018).  In awarding attorneys' fees on

4 appeal, courts "should 'look[] at [the litigation] holistically and in light of the Copyright Act's

5 goals.'"  *TCA Television Corp. v. McCollum*, No. 15-cv-4325, 2017 WL 2418751, at \*16

6 (S.D.N.Y. June 5, 2017) (awarding attorneys' fees on appeal) (quoting *John Wiley & Sons, Inc. v.*

7 *Kirtsaeng*, No. 08-cv-7834, 2016 WL 7392210, at \*2 (S.D.N.Y. Dec. 21, 2016) and citing *Adsani*

8 *v. Miller*, 139 F.3d 67, 74-75 (2d Cir. 1998)); *Glacier Films (USA), Inc.*, 896 F.3d at 1043 n.8

9 (holistically assessing defendant's legal positions).  Fees for defending an appeal to prevent the

10 loss of a district court's fee award serves the purposes of the Copyright Act.  *Fantasy, Inc. v.*

11 *Fogerty*, 94 F.3d 553, 561 (9th Cir. 1996); *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705,

12 714 (9th Cir. 2010) (granting plaintiff-appellee reasonable attorneys' fees on appeal).

13      A party may seek a grant of attorneys' fees on appeal notwithstanding the Ninth Circuit's

14 designation that each party will bear its own costs on appeal.  *Family PAC v. Ferguson*, 745 F.3d

15 1261, 1269 (9th Cir. 2014).

16 **IV.**    **ARGUMENT**

17      The Court should award appellate attorneys' fees for Oracle's successful defense of

18 Rimini's latest appeal of the injunction and attorneys' fees that Oracle was awarded for Rimini's

19 copyright infringement.  An award of appellate fees will reimburse Oracle for the substantial

20 expenses that Rimini and this case—now almost a decade old—continue to cause, deter Rimini's

21 wasteful litigation tactics, and further the aims of the copyright laws by deterring future unlawful

22 conduct and incentivizing innovators to protect their intellectual property.

23     **A.**    **The Court Should Award Oracle Appellate Attorneys' Fees**

24      By successfully defending against Rimini's appeal of the injunction and attorneys' fees

25 Oracle obtained after proving Rimini liable for infringing 93 of Oracle's copyrights, Oracle

26 remains the prevailing party and the Court has discretion to award attorneys' fees pursuant to the

27 Copyright Act.  *See* 17 U.S.C. § 505 ("In any civil action under this title . . . the court may also

28

12

1    award a reasonable attorney's fee to the prevailing party as part of the costs.").  Section 505 gives

2    "broad leeway" to both the district court and the court of appeals to award attorneys' fees in

3    copyright cases.  *Kirtsaeng*, 136 S. Ct. at 1984-85; *Columbia Pictures TV v. Krypton Broad. of*

4    *Birmingham, Inc.*, 152 F.3d 1171, 1171 (9th Cir. 1998); *Maljack Prods.*, 81 F.3d at 890–91.  The

5    non-exclusive Section 505 factors that previously weighed in favor of an award of fees for

6    Oracle's successful prosecution of its copyright claims in this Court likewise weigh in favor of an

7    award of fees on appeal.

8                        **1.       Oracle's Degree Of Success Is High**

9            As this Court recognized in its order on remand granting attorneys' fees to Oracle, Oracle

10   has achieved a high degree of success in this litigation, which centers around Oracle's successful

11   (and far from frivolous) copyright claims.  ECF No. 1164, Aug. 14, 2018 Order at 11-13.  As

12   context for Oracle's recent Ninth Circuit success, Oracle's victories in the district court included

13   "successfully defeat[ing] all three of defendants' counterclaims," "successfully defeat[ing] all of

14   defendants' eleven affirmative defenses," and prevailing at trial on its claim for infringement of

15   93 of its copyrights, resulting in a permanent injunction and award of attorneys' fees.  *Id.* at 11-

16   12.  On Rimini's first appeal, "the Ninth Circuit affirmed the court's orders and the jury's [$35.6

17   million] verdict on Oracle's copyright infringement claim in its entirety."  *Id.*  On remand from

18   the Ninth Circuit, in addition to reinstating the award to Oracle of more than $28 million in

19   attorneys' fees, the Court also reentered a permanent injunction against Rimini regarding

20   copyright infringement.  *Id.* at 9-10, 17-18.

21          Rimini again appealed, seeking to overturn both the injunction and fees award.  The Ninth

22   Circuit affirmed the full attorneys' fees award and rejected Rimini's challenge to the injunction in

23   all material respects.  The Ninth Circuit rejected Rimini's arguments about mootness, abuse of

24   discretion, and vagueness.  Case No. 18-16554, ECF No. 55, Aug. 16, 2019 Order at 2-5.  Rimini

25   also argued that the injunction is overbroad, but the Ninth Circuit rejected those arguments with

26   narrow exceptions.  First, the panel struck a phrase from two paragraphs pertaining only to JD

27   Edwards and Siebel ("and access")—while acknowledging that the phrase could be redundant (as

28

13

ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL

1   it is, for electronic materials such as those at issue in this matter).  *Id.* at 5 ("Even if the

2   prohibition on access is meant to prevent copying, it is unnecessary, as copying is separately

3   prohibited by the injunction.").  Second, the panel revised the JD Edwards and Siebel sections to

4   remove reference to restrictions on the locations where such software could be hosted.  *Id.* at 4-5.

5   All the other JD Edwards and Siebel restrictions remain in place.  *Id.* at 5 ("In all other respects,

6   the injunction is not overbroad.").

7        In short, the heart of Rimini's second appeal was a challenge to the relief flowing from its

8   fully-adjudicated copyright infringement, and the Ninth Circuit upheld the remedies that this

9   Court ordered—injunctive relief and attorneys' fees.

10       The Ninth Circuit's immaterial modification of the injunction does not detract from

11  Oracle's success on appeal, because the injunction (including the minor issues as to which the

12  injunction was revised) and the fee award were all litigated on appeal based on a "common core

13  of facts" and "related legal theories."  Case No. 18-16554, ECF No. 55, Aug. 16, 2019 Order ¶ 5

14  (citing *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003), *McCown*

15  *v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S.

16  424, 453 (1983)), and *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 937 (9th Cir.

17  2004)).  Because Oracle succeeded in the Ninth Circuit as to the fee award in its entirety and as to

18  the vast majority of the injunction, any time spent on the stricken language is recoverable and

19  need not be apportioned.  *Id.*; *see also* ECF No. 1164 at 17.

20            **2.        Rimini's Position On Appeal Was Objectively Unreasonable**

21       The objective unreasonableness of Rimini's positions on appeal provide further reason to

22  award fees to Oracle under the Copyright Act.  *Kirtsaeng*, 136 S. Ct. at 1983; *Jackson*, 25 F.3d at

23  890.  The Ninth Circuit accords substantial weight to this factor in reviewing a district court's

24  analysis of whether or not to award fees under the Copyright Act.  *Glacier Films (USA), Inc.*, 896

25  F.3d at 1037 (citing *Shame On You Prods., Inc.*, 893 F.3d at 666).

26       In awarding fees in this matter, this Court previously—and correctly—found the

27  "objective reasonableness" factor to weigh in Oracle's favor.  ECF No. 1164 at 13:19-15:5; ECF

28

1   No. 1049 at 14:19-16:2.  As the Court is aware, ECF Nos. 922, 1117, the long history of this case

2   is replete with examples of Rimini taking factual and legal positions that were false and

3   unreasonable, forcing Oracle to spend time and resources on unnecessary discovery, fact

4   investigations, and motion practice.  For instance, in its August 2018 fees order that the Ninth

5   Circuit has now affirmed, this Court found that "from the earliest part of litigation -- defendants'

6   position that it did not engage in copyright infringement of Oracle's software copyrights was not

7   an objectively reasonable position to take in this litigation."  ECF No. 1164 at 13.  The Court

8   based this conclusion on three findings: (1) that "Rimini Street's position was based on a clear

9   misreading of Oracle's software licensing agreements and a conscious disregard for the manner

10  that Rimini Street used and housed the copyrighted software programs on its own servers"; (2)

11  that Rimini only admitted it engaged in cross-use after more than five years of litigation; and (3)

12  that Rimini engaged in litigation misconduct that resulted in sanctions.  *Id.* at 13-15.

13          Rimini continued its practice of taking objectively unreasonable positions in this latest

14  appeal.  As discussed in Section II.B.2-3, *supra*, Rimini's presentation to the Ninth Circuit

15  refused to accept the settled holdings of the Ninth Circuit and this Court, and continued to

16  misread Oracle licenses that had been interpreted by this Court and the Ninth Circuit.  *See id.*  For

17  instance, Rimini's briefing on the latest appeal derided cross-use as a "made up" theory that "has

18  not been finally adjudicated in this case," Case No. 18-16554, ECF No. 12, Opening Brief at 32;

19  *see id.* at 1, 11, 35, despite the fact that the Ninth Circuit's opinion in the first appeal clearly

20  defined cross-use and stated its illegality under Oracle's licenses.  And—directly contradicting its

21  claim that cross-use is "made up"—Rimini invented a distinction between "current customer" and

22  "future customer" cross-use that the Ninth Circuit previously had *rejected*.  879 F.3d at 957.

23  Particularly in light of the history of this litigation, Rimini's defiance and misstatement of the

24  Ninth Circuit's prior ruling was not reasonable.  *See Glacier Films (USA), Inc.*, 896 F.3d at 1043

25  (directing district court to consider unreasonableness of defendant's denial of liability after

26  admitting to downloading media without permission).  Oracle had no choice but to expend

27  unnecessary resources to correct Rimini's procedural and substantive misrepresentations.

28

1    Moreover, while claiming to the Ninth Circuit that the injunction was vague, overbroad,

2 and destructive to its business, Case No. 18-16554, ECF No. 12, Opening Br. at 11, Rimini was

3 making representations to the public, its customers, and regulators that the injunction did not

4 require major changes to its business.  ECF No. 1174-2 at 4; ECF No 1199-24 at 2.

5    Finally, Rimini's appeal repeatedly and falsely accused this Court of defying the Ninth

6 Circuit's mandate in awarding fees and an injunction on remand.  *See* Case No. 18-16554, ECF

7 No. 12, Opening Br. at 58 (complaining of "the district court's intransigence"); *id.* at 35 (claiming

8 that this Court "uncritically accepted" "injunction language" that Oracle "foisted" upon it); *id.* at

9 49 (claiming that this Court "failed to implement either the letter or the spirit of this Court's

10 mandate").  These accusations were unreasonable:  the Ninth Circuit held that, "the district court

11 clearly reconsidered the amount of the award and re-applied the attorneys' fees factors [and] . . . .

12 did as instructed by this court," that entry of the injunction was not an abuse of discretion, and

13 that the injunction was not vague.  Case No. 18-16554, ECF No. 55, Aug. 16, 2019 Order at 3, 5,

14 6.  Rimini's claims that letters between counsel for Rimini and counsel for Oracle, the Parties'

15 joint status report, and the Court's post-injunction discovery schedule were supplemental

16 authority under Fed. R. App. P. 28(j) were similarly unreasonable.  *Compare* Fed. R. App. 28(j)

17 *with* Case No. 18-16554, ECF Nos. 43, 46, and 53.  Perhaps recognizing that these arguments

18 were meritless, Rimini's appellate counsel declined to discuss attorneys' fees at all during oral

19 argument.

20            **3.      Fees On Appeal Are Necessary To Make Oracle Whole**

21    The Court correctly determined in its previous fee order that such fees were needed to

22 make Oracle whole: "[i]n order to prosecute this action, Oracle expended over $58 million in

23 legal fees and costs to prove Rimini Street's unlawful conduct and obtain a copyright

24 infringement judgment.  Without a fee award, the court finds that Oracle's investment in its

25 intellectual property and its incentive to create future software would not be appropriately

26 protected or compensated."  ECF No 1164 at 15 (citing *McCulloch v. Albert E. Price, Inc.*, 823

27 F.2d 316, 323 (9th Cir. 1987) ("[S]ection 505 is intended in part to encourage the assertion of

28

1    colorable copyright claims . . . and to make the plaintiffs whole.")); *see also* ECF No. 1049 at

2    16:10-15 ("Oracle has spent decades developing its copyrighted software only to have [Rimini]

3    take that hard work and use it to their benefit at Oracle's expense.").

4          The same rationale supports awarding appellate attorneys' fees to Oracle for its successful

5    defense of Rimini's latest appeal.  In the latest appeal, Oracle expended more than $207,487.24 in

6    attorneys' fees to defend its remedies for Rimini's copyright infringement: attorneys' fees and

7    injunctive relief.  The Court should require Rimini to compensate Oracle for these fees incurred

8    protecting Oracle's intellectual property on appeal in order to make Oracle whole.

9                **4.      Attorneys' Fees Are Necessary To Deter Rimini**

10         As the Court previously found in awarding district court attorneys' fees, "an award of

11   attorneys' fees is an appropriate remedy to deter defendant Rimini Street from its pattern of

12   infringing Oracle's copyrights, which started when the business began and continued up until, at

13   the earliest, the court's orders on summary judgment in 2014.  Further, an award of fees is

14   necessary to deter other third party service providers from engaging in similar infringing conduct

15   in order to compete with Oracle for after-license software support services."  ECF No 1164 at

16   15:19-24; *see also* ECF No. 1049 at 16:19-23.

17         This reasoning still applies fully with respect to Rimini's latest appeal:  attorneys' fees

18   should be used to deter future infringement by Rimini.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

19   534-35 n.19 (1994).  A court may award fees "to deter repeated instances of copyright

20   infringement . . . even if the losing position was reasonable in a particular case."  *Kirtsaeng*, 136

21   S. Ct. at 1989.  This factor remains particularly salient in light of Rimini's insistence on

22   continuing infringing practices, currently the subject of litigation in *Rimini II* and injunction-

23   enforcement proceedings in this *Rimini I* matter.  In any ordinary world, the litigation to date

24   would have deterred Rimini, but given that it has not, an award of attorneys' fees is necessary to

25   continue sending a deterrent message that perhaps one day Rimini will hear.

26         An award of attorneys' fees will also send a message about the importance of respecting

27   the authority of this Court and of the Ninth Circuit.  The recent appeal revealed Rimini's

28

17

1   disrespect for the efforts by this Court and by the Ninth Circuit to rein in Rimini's infringing

2   conduct.  Rather than honestly addressing the prior rulings concerning cross-use made by this

3   Court and by the Ninth Circuit, Rimini's appellate presentation derided the concept of cross-use

4   as "made up."  Rather than acknowledging this Court's diligent re-examination of the injunction

5   and fee award on remand, Rimini meritlessly accused this Court of disobedience and

6   "intransigence."  Rimini's defiance went further still by telling the Ninth Circuit one thing and

7   telling the public another, *supra*, and further telling the public that the Ninth Circuit "did not

8   vacate the injunction entirely," ECF No. 1237-24, instead of acknowledging that the entire

9   injunction had been upheld with only minor modifications.  These behaviors must be deterred.

10  An award of appellate attorneys' fees to Oracle will aid in that deterrence.  *See Magnuson v.*

11  *Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (remanding based on lower court's failure

12  to consider *Fogerty* factors and expressing concern that the "award for damages in this case is

13  insufficient to deter future copyright infringements such as the one at issue here").

### 5.   Attorneys' Fees Further The Purpose Of The Copyright Act

15  "The goal of the Copyright Act is 'to promote creativity for the public good.'"  *Glacier*

16  *Films (USA), Inc.*, 896 F.3d at 1041 (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994));

17  *see also Fogerty*, 510 U.S. at 524 ("The primary objective of the Copyright Act is to encourage

18  the production of original literary, artistic, and musical expression for the good of the public.").

19  As the Court previously found, "awarding attorneys' fees in this action furthers the purposes of

20  the Copyright Act as it rewards owners of intellectual property, like Oracle, for pursuing their

21  rights under the act and protecting, "encouraging and rewarding authors' creations."  ECF No.

22  1164 at 16:6-9 (citing *Kirtsaeng*, 136 S. Ct. at 1986); *see also* ECF No. 1049 at 16:3-5.

23  Rimini's recidivist infringement improperly increases Oracle's litigation costs.  Rimini's

24  objectively unreasonable arguments on appeal only further increased this expense.  Without the

25  ability to recover attorneys' fees, it would be impossible for Oracle and other innovators to

26  protect their intellectual property and be made whole.  The failure to award attorneys' fees to

27  successful plaintiffs acts as a disincentive to enforce intellectual property rights.  And the lack of

28

a financially viable means of enforcing intellectual property rights creates a further disincentive to create intellectual property in the first place.

## B.   The Fees That Oracle Requests Are Reasonable

 "Reasonable attorney's fees" are based on the "lodestar" calculation, in which "the district court 'multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'"  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  In determining the reasonableness of an award of attorneys' fees, a court considers several non-exclusive factors, including: "(1) the reputation and skill of counsel; (2) the financial terms of the client fee arrangement; (3) the nature and extent of work performed and results obtained; and (4) awards in similar cases."  ECF No. 1164 at 16 (citing *Resurrection Bay Conservation All. v. City of Seward Alaska*, 640 F. 3d 1087, 1095 (9th Cir. 2011)); *see also* LR 54-14(b)(3).  Initially, in determining the amount of fees to award in an action, a court must look to the reasonableness of the rates charged by counsel.  *Id.*  The court then turns to whether the amount of time billed in the case was reasonable.  ECF No. 1049 at 19:12.  The fees requested by Oracle on appeal are reasonable because they are the product of reasonable rates and a reasonable expenditure of time for the complexity of the litigation and because this action was first and foremost a copyright infringement action.

### 1.   The Rates Actually Paid By Oracle Were Reasonable Hourly Rates

Generally, courts determine a reasonable rate for attorneys' fees based upon the "rates prevailing in that district for 'similar services by lawyers of reasonably comparable skill, experience and reputation'," irrespective of practice area.  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 445 (9th Cir. 2010).  However, "the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it."  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  These include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to

acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).[2]

The actual rates Oracle paid for its attorneys are the prevailing market rates for this type of litigation. "'Unless counsel is working outside his or her normal area of practice,' evidence that a billing rate was the usual rate the attorney charges for his or her services is evidence that the rate is comparable to the market rate." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-07098, 2015 WL 1746484, at *5 (C.D. Cal. Mar. 25, 2015) (quoting *Moore v. JAS. H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982)). "Billing rates usually reflect, in at least a general way, counsel's reputation and status (i.e., as partner, associate, or law clerk)." *Moore*, 682 F.2d at 840. "In an action under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505." ECF No. 1049 at 18:22-25 (citing *Kourtis v. Cameron*, 358 Fed. App'x. 863, 868 (9th Cir. 2009)).

In its previous fees order, the Court found the actual national-market rates charged by Oracle's counsel were reasonable. ECF No. 1164 at 17 (citing ECF No. 1049 at 19). Here, Oracle hired Kirkland & Ellis LLP ("K&E") to defend this case on appeal, and trial counsel Morgan Lewis & Bockius LLP ("MLB") and Boies Schiller Flexner LLP ("BSF") continued to represent Oracle. The decision to hire specialized appellate counsel is reasonable. *Davis v.*

---

[2] These factors overlap with the elements to be addressed under LR 54-14(b)(3) and are discussed throughout this motion, but for purposes of the Rule, Oracle reiterates that (A) Oracle achieved a high degree of success on the second appeal (including affirmance of its $28 million fee award) and seeks $207,487.24 in fees here, (B) & (E) Oracle's counsel expended 254.4 hours on appeal (*see* Polito Decl. ¶ 21 & Ex. 2; Hartnett Decl., Ex. 2; Clement Decl., Ex. 2), (C)-(D) & (I) experienced, high-caliber appellate counsel were required to present this complex case to the Ninth Circuit in the face of Rimini's unreasonable positions and obfuscation, (F) & (G) the firms charged Oracle ███████████████████ (K) the firms have represented Oracle for multiple engagements over several years, and (L) this motion and Oracle's prior motions provides information regarding awards in similar cases. Oracle submits that (H) & (J) do not apply, and that it will provide (M) any other information the Court may request.

20

1    *Guam*, No. 11-00035, 2019 WL 1512266, at *4 (D. Guam Apr. 8, 2019).  The decision to hire

2    counsel with prior experience with the case or the parties is also reasonable.  *See, e.g.*, *Yenidunya*

3    *Invs., Ltd. v. Magnum Seeds, Inc.*, No. CIV. 2:11-1787, 2012 WL 538263, at *7-9 (E.D. Cal. Feb.

4    17, 2012) (prevailing party awarded San Francisco rates for Sacramento litigation because

5    counsel had previously represented party and was familiar with the dispute).

6         The reasonableness of MLB's, BSF's, and K&E's actual rates is also confirmed by

7    Oracle's decision to pay them.  Oracle is a sophisticated consumer of legal services and will only

8    pay rates that are commensurate with the skill Oracle required.  Maroulis Decl. ¶¶ 2-3, 5.  The

9    firms charged Oracle ███████████████████████████████████████████████

10   ███████████████████████, and Oracle paid those rates, thus they are evidence of the market

11   rate for their services.  Polito Decl. ¶¶ 8, 11-12, 15; Hartnett Decl. ¶¶ 7, 10; Clement Decl. ¶¶ 7,

12   10-11; Maroulis Decl. ¶ 6-7.

13        Here, *both* parties hired national law firms with a reputation of having top-tier litigators,

14   and with teams that were not based solely in Las Vegas, which further confirms the

15   reasonableness of the rates Oracle paid.  In complex litigation, "the parties can reasonably be

16   expected to retain nationally respected law firms and nationally respected attorneys to pursue

17   their interest in the litigation," which will result in "higher lodestars than normally seen in this

18   district."  *Pacquiao v. Mayweather*, No. 2:09-cv-2448, 2012 WL 4092684, at *2 (D. Nev. Sept.

19   17, 2012) (finding actual rates paid to California attorneys were "reasonable" and awarding

20   them).  The MLB, BSF, and K&E attorneys who worked on this appeal are primarily located in

21   San Francisco, California and Washington, D.C., *see* Case No. 18-16554, ECF No. 23,

22   Answering Br. at cover, and their rates reflect the value of their services throughout the country in

23   any district.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany*

24   *Cnty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008) ("The legal communities of today are

25   increasingly interconnected.  To define markets simply by geography is too simplistic.").

26   Likewise, Rimini hired the national law firm Gibson Dunn & Crutcher LLP, with lawyers based

27   in Irvine, California and Washington, D.C.  Case No. 18-16554, ECF No. 12, Opening Br. at

28

1   cover.  In fact, Gibson, Dunn & Crutcher's billing rates have been consistently ranked as among

2   the highest in the country.  *See, e.g.*, ECF No. 1021, Pearl Decl. ¶ 115, Appendix A, Appendix B,

3   Exhibit C, Exhibit E, Exhibit O; ECF No. 918, Ex. 22.

4         Both parties' decisions reflect that the market for legal services is national, and that both

5   parties believed only nationally-renowned firms with specialized appellate practices could handle

6   the appeal properly.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)

7   ("[R]ates outside the forum may be used if local counsel was unavailable, either because they are

8   unwilling or unable to perform because they lack the degree of experience, expertise, or

9   specialization required to handle properly the case."); *Louisville Black Police Officers Org., Inc.*

10  *v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a

11  national market, an area of specialization market or any other market they believe appropriate to

12  fairly compensate particular attorneys in individual cases."); *Chrapliwy v. Uniroyal, Inc.*, 670

13  F.2d 760, 767-769 (7th Cir. 1982) ("As a specialist, the attorney will usually charge more for

14  performing services in his area of expertise").

15        The rates Oracle paid for MLB, BSF, and K&E are reasonable and consistent with the

16  prevailing market for their services on complex copyright litigation in this district and on appeal

17  in the Ninth Circuit.  *Compare* Polito Decl. ¶¶ 17-29, Hartnett Decl. ¶¶ 12-15, and Clement Decl.

18  ¶¶ 13-20 (detailing the skills, experience, and rates for MLB, BSF, and K&E attorneys) *with* ECF

19  No. 918-12 (excerpt of 2014 National Law Journal survey detailing prevailing national market

20  rates).  *See also* ECF NO. 1021, Pearl Decl. ¶ 120, Appendix A (describing market rates),

21  Appendix B (describing San Francisco Bay Area law firm rates in 2007-2015 time period); *In re*

22  *Animation Workers Antitrust Litigation*, No. 14-CV-4062, 2016 WL 6663005, at *6 (N.D. Cal.

23  Nov. 11, 2016) (finding reasonable senior attorney rates of $845-1,200, other counsel rates of

24  $275-735, and paralegal rates up to $290 in antitrust class action); *Phigenix, Inc. v. Genentech*

25  *Inc.*, No. 15-cv-01238, 2019 WL 2579260, at *11 (N.D. Cal. June 7, 2019) (citing 2017 American

26  Intellectual Property Law Association economic survey and finding reasonable rates for partners

27  up to $909 and up to $459 for associates in patent infringement action); *In re Volkswagen "Clean*

28

*Diesel" Mktg., Sales Practices, & Prod. Liab. Litigation*, MDL No. 2672, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding reasonable rates of $275-1600 for partners, $150-790 for associates, and $80-490 for paralegals in complex consumer class action).  Paying relatively higher rates for certain MLB, BSF, and K&E attorneys was "all the more reasonable" given their specialized expertise, and that they had already successfully represented Oracle in the first appeal and in the district court.  *Perfect 10*, 2015 WL 1746484, at *19-20; *Chrapliwy*, 670 F.2d at 769.

## 2.    The Amount of Time Billed On The Appeal Was Reasonable

The Court should award Oracle attorneys' fees based on the actual hours spent by Oracle's attorneys.  "[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted."  *Gonzalez*, 729 F.3d at 1202.  "The operative question isn't the dollar amount, the question is whether the rates charged and the hours spent are reasonable in light of the totality of the litigation.  Courts in this [circuit] have awarded attorneys' fees in excess of $100,000,000 in copyright litigation depending on the nature of the underlying litigation, and reference to the dollar amount of a particular fee award is not especially helpful without a sense of how much time it took to reasonably litigate the case."  *Perfect 10*, 2015 WL 1746484, at *27 (citing *Mattel, Inc. v. MGA Entm't, Inc.*, No. 04-cv-9049, 2011 WL 3420603, at *10 (C.D. Cal. Aug. 4, 2011), *aff'd sub nom. Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108 (9th Cir. 2013) (awarding attorneys' fees of $105,688,073.00 to prevailing copyright defendant)); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("by and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case ....").

Oracle's attorneys' billing records reflect a reasonable amount of time spent on the second appeal.  *See* Maroulis Decl. ¶ 7; Polito Decl. ¶¶ 2, 17, 21; Hartnett Decl. ¶¶ 3, 12, and Clement Decl. ¶¶ 3, 13.  The Court previously recognized that the amount of time necessary for this case was substantial, stating that it was "certain that this was a very expensive trial and litigation on both sides in this case."  ECF No. 892, Trial Tr. at 3951:4-5.  The second appeal, even though

tailored to the injunction and fee award, was substantial and expensive—in no small part due to Rimini's deployment of an array of misleading and unreasonable arguments.  For all the reasons explained above, including the size and complexity of the case, and Rimini's shifting litigation positions, re-litigation of settled issues, and mischaracterizations of the record requiring correction, these attorneys' fees are reasonable.

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████   Maroulis Decl. ¶¶ 4, 6; Polito Decl. ¶ 9; Hartnett Decl. ¶ 8; Clement Decl. ¶ 8.  Oracle also made conservative adjustments to the hours actually spent.  For example, Oracle conservatively struck out the entire time spent by a timekeeper for time entries that were block-billed where all or part of the description of the work related to work other than the appeal or this motion for attorneys' fees, and for any entry where Oracle has redacted the description of the work done due to privilege or other reasons.  Polito Decl. ¶ 10; Hartnett Decl. ¶ 9; Clement Decl. ¶ 9.

## V.  **CONCLUSION**

For the reasons stated above, the Court should award Oracle $207,487.24 in attorneys' fees.


DATED: September 20, 2019                 MORGAN, LEWIS & BOCKIUS LLP


                                          By:  _____
                                                    */s/ John A. Polito*
                                               John A. Polito

                                          Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                                          America, Inc. and Oracle International Corporation

24

ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of September 2019, I electronically transmitted the

foregoing **ORACLE'S MOTION FOR ATTORNEYS' FEES ON APPEAL** to the Clerk's

Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all

counsel in this matter; all counsel being registered to receive Electronic Filing.


MORGAN, LEWIS & BOCKIUS LLP

DATED: September 20, 2019

By:   _____*/s/ John A. Polito*_____
                John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc. and Oracle International
Corporation

1