BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:    (202) 237-2727
Facsimile:    (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
    (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:    415.293.6800
Facsimile:    415.293.6899
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-VCF <br><br> **ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES RE POST-INJUNCTION DISCOVERY** <br><br> **PUBLIC REDACTED VERSION** |

## <u>TABLE OF CONTENTS</u>

I.    FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

    A.    The Injunction Has Been In Effect For Over A Year ........................................ 2

    B.    Oracle's Post-Injunction Requests for Production ........................................... 2

        1.    Supplemental Interrogatory No. 5 ........................................................ 2

        2.    Supplemental Request For Production No. 11 ...................................... 3

        3.    Production of "Dev Instructions" ........................................................ 3

II.   LEGAL STANDARD ........................................................................................................ 6

III.  ARGUMENT ...................................................................................................................... 6

    A.    Rimini's Insufficient Response to Supplemental Interrogatory No. 5 ................... 7

    B.    Rimini's Failure to Produce Documents Responsive to Supplemental Request For Production No. 11 ................................................................................................. 9

    C.    Production of Dev Instructions ........................................................................... 12

        1.    By Withholding Dev Instructions, Rimini Is Refusing To Produce Relevant Documents ........................................................................... 13

            a.    Drafts Are Relevant Because Rimini Copies And Uses Copyrighted Oracle Software To Create Them ................................................. 13

            b.    Rimini Whitewashes the "Final" Versions of Dev Instructions to Conceal the Extent of its Copyright Infringement ........................ 16

        2.    Rimini's Privilege Objections are Meritless ............................................. 16

IV.   CONCLUSION ................................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Fed. Trade Comm'n v. AMG Servs., Inc.*,
  No. 2:12-CV-536-GMN-VCF, 2015 WL 5097526 (D. Nev. Aug. 28, 2015) .......................6, 7

*Fisher v. United States*,
  425 U.S. 391 (1976)........................................................................................................17

*Ocean Mammal Inst. v. Gates*,
  2008 WL 2185180 (D. Haw. May 27, 2008) ....................................................................19

*Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*,
  No. 2:10-CV-01385-JCM, 2011 WL 4573349 (D. Nev. Sept. 29, 2011), *order
  corrected on reconsideration sub nom. Painters Joint Comm. v. J.L. Wallco,
  Inc.*, No. 2:10-CV-1385 JCM PAL, 2011 WL 5854714 (D. Nev. Nov. 21,
  2011) .....................................................................................................................6, 8

*Phillips v. C.R. Bard, Inc.*,
  290 F.R.D. 615 (D. Nev. 2013).....................................................................................17, 18

*Radiant Burners, Inc. v. Am. Gas Ass'n*,
  320 F.2d 314 (7th Cir. 1963)...........................................................................................19

*Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*,
  No. 2:05-cv-01318-BES-GWF, 2006 WL 3149362, 2006 U.S. Dist. LEXIS
  80403 (D. Nev. Nov. 1, 2006).........................................................................................19

*Sargant v. HG Staffing, LLC*,
  No. 3:13-CV-00453-LRH, 2014 WL 1653273 (D. Nev. Apr. 23, 2014)...................................6

*Swidler & Berlin v. United States*,
  524 U.S. 399 (1998)........................................................................................................17

*U.S. Postal Serv. v. Phelps Dodge Refining Corp.*,
  852 F. Supp. 156 (E.D.N.Y. 1994) ...................................................................................19

*United States v. Martin*,
  278 F.3d 988 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002).......................17

*Vernor v. Autodesk, Inc.*,
  621 F.3d 1102 (9th Cir. 2010)..........................................................................................15

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
  647 F.2d 18 (9th Cir. 1981)...............................................................................................17

ii

*Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court in & for Cty. of Clark,*
  133 Nev. 369, 399 P.3d 334 (2017), reh'g denied (Sept. 28, 2017) .........................................17

**Other Authorities**

Fed. R. Civ. P. Rule 26 ............................................................................................................6

Fed. R. Civ. P. Rule 33(d) .......................................................................................................8

Fed. R. Civ. P. Rule 37(a) ................................................................................................1, 5, 6

Local Rule 26-7 ........................................................................................................................1

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

**NOTICE OF MOTION AND MOTION**

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 26-7, Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively "Oracle") respectfully move the Court for an order compelling Defendant Rimini Street, Inc. ("Rimini") to produce certain documents in response to Oracle's Supplemental Requests for Production of Documents Nos. 9, 11, and 14 and provide supplemental responses to Oracle's Supplemental Interrogatory No. 5. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of David Kocan ("Kocan Decl.") and Barbara A. Frederiksen-Cross ("BFC Decl.") and exhibits thereto, the entire record in this action, and such other matters and argument as may be presented to the Court.

**INTRODUCTION**

Following a jury trial, numerous court opinions, and appeals, this Court entered an Injunction prohibiting Rimini from continuing business practices in order to stop Rimini's infringement of Oracle's copyrights. ECF No. 1166. Although this Court has repeatedly ordered that Rimini produce documents and information through Injunction-compliance discovery (ECF Nos. 1215, 1232, 1255), Rimini continues to resist such production. Rimini has tried to run the clock on Oracle's requests for timely production of documents critical to securing enforcement of the Injunction and relief under orders of this Court.

As Injunction-compliance discovery comes to a close, and more than a year since the Injunction went into effect, the time for foot-dragging is over. Oracle respectfully requests that the Court once again compel Rimini to produce documents pursuant to Oracle's Supplemental Requests for Production and Interrogatories, starting immediately, to be completed before the Court-ordered discovery deadline of January 17, 2020.

Specifically, Oracle requests that Rimini be compelled to produce a complete list of updates and other materials that Rimini has actually delivered to customers, as well as the whitepapers, webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials that Rimini makes available on its website, along with the documents relating to Oracle Software and Support Materials that were used to create these documents. Oracle also

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

requests that Rimini be ordered to produce draft "Dev Instructions," which are technical materials that both ███████████████████████████████████████████████████████████ ███████████████████████████████████████████.  Rimini has objected to providing these drafts on grounds of relevance and privilege, even though the documents are created by the business and contain only ██████████████████████████████████ ████████████████████████████—not communications seeking legal advice or attorney work product.  These categories of information are within Rimini's custody and control, and Rimini is well-positioned to efficiently collect and provide the information.  But for months Rimini has delayed, made excuses, and shifted positions in an effort to avoid disclosure.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Injunction Has Been In Effect For Over A Year

The present Injunction has been in effect since November 6, 2018. The Injunction prohibits Rimini from conduct including:  (1) cloud-hosting of PeopleSoft software and support materials; (2) cross-use of PeopleSoft software and support materials; (3) cross-use of JD Edwards software and support materials; (4) access to JD Edwards source code; and (5) distribution of PeopleSoft and JD Edwards software and support materials.  ECF No. 1237-5 (Oracle's June 28, 2019 letter to Rimini pursuant to ECF No. 1232).

### B.      Oracle's Post-Injunction Requests for Production

To date, Oracle has served fifteen supplemental requests for production and seven supplemental interrogatories.  Kocan Decl. ¶¶ 2-3.  Although the parties have been able to resolve a number of issues through meet-and-confer, Oracle seeks to compel discovery on the following issues where the parties have been unable to reach agreement.[1]

#### 1.      Supplemental Interrogatory No. 5

Oracle's Supplemental Interrogatory No. 5 seeks information about the updates that

---

[1] Among them, Rimini has agreed to produce responsive, non-privileged documents from its ShareFile system (aka RSI File Share), and confirmed during a December 5, 2019 meet and confer call that it would in fact produce documents.  Rimini has also agreed to investigate the burden of producing 8 tables from Salesforce that it produced in *Rimini II* but omitted from its production here.  Oracle attempted to determine when Rimini would complete its investigation

2

Rimini has provided to its customers since November 5, 2018 for Oracle software that is the subject of the Injunction, including the names of the files that Rimini distributed and the versions of Oracle software to which the updates applied.  Kocan Decl. ¶ 4, Ex. 8.  Though it has supplemented its response four times, Rimini not only has failed to provide a single file name, it also omits any reference to at least 567 update and release IDs identified by Oracle in prior meet-and-confer correspondence.  *Id.*  Rimini's latest response also attempts to frustrate Oracle's efforts to understand the scope of Rimini's post-Injunction support offerings by, for the first time, asserting that ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████ .  *Id.*

### 2.    Supplemental Request For Production No. 11

RFP No. 11 seeks "[d]ocuments relating to Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials."  Rimini initially claimed there were no documents responsive to this request, and then after several meet-and-confer letters produced only a single document.  Oracle offered to consider limiting the scope of this request if Rimini would provide a list of webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials on Rimini's website and an estimate of the number of documents referenced in creating such materials.  Kocan Decl. ¶ 23, Ex. 26 (Nov. 8, 2019 letter from J. Minne to J. Tryck).  Rimini declined, and refuses to produce the requested documents.[2]

### 3.    Production of "Dev Instructions"

"Dev Instructions" are the ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████ .  As discussed in Section III(C)(1) below, Dev Instructions often document

---

and agree or refuse to produce these tables during the meet and confer, but Rimini could not provide such a date.  Because there is still a possibility this issue will be resolved, Oracle does not include it in this motion to compel, but may seek leave to file another should Rimini ultimately refuse to produce these tables from Salesforce.  Oracle similarly reserves its rights as to documents in Rimini's ShareFile system, should this production remain incomplete.

[2] Three days before this motion was due, Rimini belatedly offered to produce two additional webinars in response to this RFP.  Kocan Decl. ¶ 26, Ex. 29  (Dec. 3, 2019 letter from J. Tryck to J. Minne).

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1    instances where Rimini uses one customer-associated environment to develop and test updates for

2    multiple customers, and sometimes the Dev Instructions themselves contain copies of or

3    derivative works based on Oracle's copyrighted software.  The Parties' principal disputes

4    concerning Dev Instructions involve Rimini's claims that draft Dev Instructions are irrelevant,

5    and in some cases, privileged.  Oracle contends the draft versions are highly relevant, often more-

6    so than final versions, because the draft versions have not been modified with *post-facto* hearsay

7    or other changes that obscure Rimini's use of and copying from PeopleSoft environments.

8          To create Dev Instructions, Rimini accesses a PeopleSoft Environment (often called a

9    "prototype," "Scrum," or "design" environment), and ██████████████████████████████

10   ████████████████████.  *See, e.g.,* BFC Decl., ¶ 20, Ex. 6 (Printout of JIRA entry

11   ████████).  During this process, an initial draft Dev Instruction is created, and such drafts, on

12   Rimini's system, have been found to contain Oracle code.  *Compare* BFC Decl. ¶ 9, Ex. 2 at lines

13   37-38 (RSI006865952) *with* BFC Decl. ¶ 12, Ex. 4 at lines 217, 224 (Oracle GA File

14   ████████████).  ████████████████████████████████████████████████

15   ████████████████████████████████████████████████████

16   ████████████████.  Kocan Decl. ¶ 9, Ex. 12 (RSI007041376 at 5-6).  Ultimately, ████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████.  BFC Decl., ¶¶ 20-22, Exs. 5-7

19   (Printouts of JIRA entries ████████████████████████).

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████.  BFC Decl. ¶ 10, Ex 3,

22   side-by-side of draft and final HCM200075 Dev Instruction.  ████████████████████

23   ████████████████████████████████████████████████████

24   ████████.  *See* BFC Decl. ¶ 15, Ex. 3 (side-by-side).

25         Rimini has asserted privilege against the draft Dev Instructions stored in a folder with the

26   path ████████████████████████ and has only agreed to produce "final" Dev Instructions

27   and Dev Instructions that were "sent to a client environment."  Kocan Decl. ¶ 25, Ex. 28 at 1-2

28   (Nov. 18, 2019 letter from J. Tryck to J. Minne).  However, Dev Instructions stored in this folder

4

1   are accessible to all Rimini engineers for purposes other than legal review and analysis.

2   Accordingly, when a Rimini engineer deposits draft instructions in the ███████████████

3   ██████████ folder, that engineer is not simply seeking legal review of these instructions[3], but

4   rather, the engineer is sharing those instructions with other Rimini engineers who are supporting

5   customers.  Rimini admits that it creates Dev Instructions to provide ███████████████████

6   ████████████████████," *Id.*, ¶ 4, Ex. 8 (Rimini's operative responses to Oracle's

7   Supplemental Interrogatories Nos. 1 and 5) at 7. ████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ██████████████████████████████████. BFC Decl., ¶¶ 21-22,

11  Exs. 5, 7 ████████████████████).  Custodial productions also show that ██████

12  ████████████████████████████████████████████████████

13  █████████████████████ Kocan Decl., ¶ 11, Ex. 14 (RSI007063463).  Moreover,

14  the changes made appear to be purely editorial, and not legal in nature.  For example, the text

15  ████████████████████████████████████████████████████

16  ████████████████████ BFC Decl. ¶ 15, Ex. 3 at lines 40/42 (emphasis added to show

17  changes).

18      Moreover, Rimini originally stored the Dev Instructions in folders called "Individual

19  Updates" until June 2019, when it became clear Oracle would likely obtain post-Injunction

20  discovery, and Rimini renamed the folders used for storing Dev Instructions from "Individual

21  Updates" to ████████████████████  *Id.*, ¶ 17, Ex. 5 (████████).  ████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  █████████. Kocan Decl., ¶ 13, Ex. 16 (RSI007086636).

25      Oracle first raised the issue of Rimini's inadequate production of Dev Instructions on July

26  19, 2019, and since then, the parties have exchanged a dozen letters referencing Dev Instructions,

---

27

28  [3] It is doubtful that such an engineer is seeking "legal review" at all regarding highly technical
    software code.

5

1  and engaged in a commensurate number of meet-and-confer calls. *Id.*, ¶ 14, Ex. 17.  Rimini has

2  agreed to produce final Dev Instructions and Dev Instructions sent to customers, but refuses to

3  produce any draft Dev Instruction files not distributed to a customer.

4  **II.    LEGAL STANDARD**

5       A party may move to compel discovery where, as here, a party fails to answer an

6  interrogatory or produce requested documents.  Fed. R. Civ. P. 37(a)(1), (3)(B)(iii-iv).  Under

7  Rule 37, an "incomplete disclosure, answer, or response" is treated as a failure to respond.  Fed.

8  R. Civ. P. 37(a)(4); *see also Sargant v. HG Staffing, LLC*, No. 3:13-CV-00453-LRH, 2014 WL

9  1653273, at *2 (D. Nev. Apr. 23, 2014).

10       Rimini has a burden to justify its refusal to produce various documents in response to

11  Oracle's Supplemental RFPs and Interrogatories.  Where, as here, the movant (Oracle) "has in

12  good faith conferred or attempted to confer with the party resisting discovery," and "the

13  information in controversy is relevant and discoverable under Rule 26," the resisting party

14  (Rimini) "carries *a heavy burden* of demonstrating why discovery should be denied." *Fed. Trade*

15  *Comm'n v. AMG Servs., Inc.*, No. 2:12-CV-536-GMN-VCF, 2015 WL 5097526, at *2 (D. Nev.

16  Aug. 28, 2015) (internal quotation marks and citations omitted, emphasis added).  As "the party

17  opposing discovery," Rimini "bears the burden of showing the discovery is overly broad and

18  unduly burdensome, or not relevant."  *Painters Joint Comm. v. Employee Painters Trust Health*

19  *& Welfare Fund*, No. 2:10-CV-01385-JCM, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011),

20  *order corrected on reconsideration sub nom. Painters Joint Comm. v. J.L. Wallco, Inc.*, No. 2:10-

21  CV-1385 JCM PAL, 2011 WL 5854714 (D. Nev. Nov. 21, 2011).

22  **III.    ARGUMENT**

23       Rimini continues to deny engaging–now or ever–in any conduct that would violate the

24  Injunction, notwithstanding considerable evidence to the contrary in both *Rimini I* and *Rimini II*.

25  Throughout the history of this litigation, Rimini has denied unlawful practices that are eventually

26  proven to exist (such as the cross-use covered by the Injunction).  Consequently, meaningful

27  production by Rimini showing Rimini's post-Injunction conduct is necessary to determine

28  whether Rimini is in compliance with the Injunction.

6

## A.    Rimini's Insufficient Response to Supplemental Interrogatory No. 5

Rimini has not sufficiently responded to Oracle's Interrogatory No. 5.  Oracle's Interrogatory No. 5 asks Rimini, among other things, to provide "the names of the files . . . provided to each customer," along with "the associated Oracle product line, product, and version" Kocan Decl. ¶ 4, Ex. 8 at 13 (Rimini's operative responses to Oracle's Supplemental Interrogatories Nos. 1 and 5).  In its first substantive response three months later, Rimini referred to an exhibit, Exhibit D, that included ████████████████████████████████

████████████████████████████████████████████████████████████████

Kocan Decl. ¶ 13, Ex. 16, July 19, 2019 letter from D. Kocan to E. Vandevelde at 3.  The exhibit Rimini produced failed to identify any filename or product version information.  *Id.*  Rimini's supplemental responses do not correct these omissions.  Rimini will not correct these omissions absent an order from the Court.  *Id.*, ¶ 17 Ex. 20 (Sept. 9, 2019 Letter from E. Vandevelde to T. Prado).

Oracle's repeated attempts to meet and confer in good faith to resolve this issue have not been reciprocated by Rimini.  Oracle raised the issue with Rimini days after Oracle first realized what Rimini had done.  Kocan Decl. ¶ 13, Ex. 16, July 19, 2019 Letter from D. Kocan to E. Vandevelde at 6.  Over the next several months, Oracle made numerous, good faith attempts to meet and confer with Rimini to correct these omissions.  *See, e.g.*, *id.*, ¶ 16, Ex. 19 (Aug. 30, 2019 Letter from T. Prado to E. Vandevelde); ¶ 19, Ex. 22 (Oct. 4, 2019 Letter from J. Minne to J. Tryck); ¶ 20, Ex. 23 (Oct. 19, 2019 Letter from J. Minne to J. Tryck); ¶ 23, Ex. 26 (Nov. 8, 2019 Letter from J. Minne to J. Tryck); ¶ 25, Ex. 28 (Nov. 26, 2019 Letter from J. Minne to J. Tryck).  Rimini's replies that it was "investigating" the issue, or that it would "either amend Exhibit D to the extent that doing so is not unduly burdensome or, if it is unduly burdensome, amend its response to Interrogatory No. 5 to so state" were at best noncommittal.  *See, e.g.*, Kocan Decl. ¶ 14, Ex. 17 (July 23, 2019 Letter from C. McCracken to D. Kocan).  Finally, after over three months since it first received Oracle's Interrogatory, Rimini suddenly changed its position by indicating that it would not be providing the filenames and product version information requested.  *Id.*, ¶ 17, Ex. 20 (Sept. 9, 2019 Letter from E. Vandevelde to T. Prado).

1    Rimini's delays, equivocations, and change of position show an unwillingness to meet and confer

2    in good faith on this issue.

3    　　　Moreover, Rimini has failed to meet its "*heavy burden* of demonstrating why discovery

4    should be denied." *Fed. Trade Comm'n v. AMG Servs., Inc.*, No. 2:12-CV-536-GMN-VCF, 2015

5    WL 5097526, at *2 (D. Nev. Aug. 28, 2015) (internal quotation marks and citations omitted,

6    emphasis added).  Instead, Rimini claims that its original response was a "clerical error," and that

7    reviewing its own documents would be too "time-consuming."  Kocan Decl. ¶ 17, Ex. 20 (Sept. 9,

8    2019 Letter from E. Vandevelde to T. Prado).  However, Rimini has failed to offer any

9    explanation to meet its "heavy burden" as to why reviewing its own development records would

10   somehow be unduly burdensome. *Painters Joint Comm. v. Employee Painters Trust Health &*

11   *Welfare Fund*, No. 2:10-CV-01385-JCM, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011),

12   *order corrected on reconsideration sub nom. Painters Joint Comm. v. J.L. Wallco, Inc.*, No. 2:10-

13   CV-1385 JCM PAL, 2011 WL 5854714 (D. Nev. Nov. 21, 2011).  Rimini contracts with its

14   customers to provide software support; it is not credible that Rimini does so without knowing

15   what versions of software its customers run and without tracking what files it has sent to its

16   customers.

17   　　　Invoking Rule 33(d), Rimini claims that Oracle should have to sift through Rimini's own

18   development records to identify file names and product versions.  Kocan Decl. ¶ 17, Ex. 20 (Sept.

19   9, 2019 Letter from E. Vandevelde to T. Prado).  Rimini's use of Rule 33(d) is improper because

20   the "burden of deriving or ascertaining the answer . . . [is not] substantially the same for either

21   party."  Fed. R. Civ. P. 33(d).  Rimini requires Oracle to remotely connect through several

22   different layers of virtual machines and virtual private network connections to access JIRA.

23   Kocan Decl. ¶¶ 27-29.  This not only makes the initial connection process extremely time

24   consuming, it also introduces significant lag times while using JIRA.  *Id.*.  To make matters

25   worse, users are frequently disconnected, causing users to go through the disruptive, time-

26   consuming process of reconnecting to the system each time.  *Id.*, ¶ 29.  Additionally, Rimini has

27   severely limited Oracle's ability to export content from JIRA.  Oracle must manually export

28   content one update at a time, usually by taking multiple screenshots of each individual JIRA web

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

page. *Id.*, ¶ 28. Lastly, Rimini limits Oracle's ability to move content off of Rimini's systems, requiring that Oracle use a separate program with a separate set of log-in processes to do so. *Id.* As JIRA's administrator, none of these restrictions would exist for Rimini. The other documents Rimini cites in its response are similarly incomplete and fail to include all the information requested in this Interrogatory. Accordingly, Rimini's attempt to invoke Rule 33(d) is improper.

Rimini also refuses to provide information for four categories of updates that it deems are not responsive. In total, Rimini's deficiency amounts to the omission of at least 567 update and release IDs. Kocan Decl. ¶ 22, Ex. 25 at 1 (Nov. 7, 2019 Letter from C. Whittaker to J. Minne); *id.*, ¶ 25, Ex. 28 at 5 (Nov. 26, 2019 Letter from J. Minne to J. Tryck). Despite the fact that Rimini's own JIRA development system shows ████████████████████████████ ████████████████████████████, Rimini appears to take the position that an update is not responsive if any portion of it was created or modified before the Injunction went into effect. This is unsupportable: even if development on an update began before November 5, 2018, any testing, development, or distribution of the update after the Injunction's effective date is relevant. In assessing Rimini's compliance with the injunction, evidence regarding the updates it distributed to customers after the Injunction went into effect is clearly relevant, and is necessary to assess Rimini's compliance.

**B.      Rimini's Failure to Produce Documents Responsive to Supplemental Request For Production No. 11**

Oracle's Supplemental RFP No. 11 seeks "[a]ll Documents relating to Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials." Kocan Decl. ¶ 5, Ex. 9 at 6 (Oracle's Third Suppl. Req. for Prod). "Rimini's Online Materials" is defined as:

> Documents advertised or made available on or through Rimini's websites, including, without limitation, materials on Rimini's online resource library located at https://www.riministreet.com/resource-library, white papers (such as those referenced on webpage https://www.riministreet.com/white-paper-unpacking-the-hcm-andfin-pum-images-for-peoplesoft), webinars (such as those referenced on webpage https://info.riministreet.com/PeopleSoft-Webinars-LP.html), analyst research, brochures, client success

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1    stories, datasheets, eBooks, infographics, podcasts, research reports, and videos.

2  *Id.* at 2-3.

3    In the four months this request has been outstanding, throughout meet and confers and

4  written correspondence, Oracle repeatedly explained that this RFP includes all whitepapers,

5  webinars, articles, updates, software, and manuals, and documents referenced in the creation of

6  such materials, so long as they relate to Oracle Software at issue. *See, e.g.*, *id.*, ¶¶ 18-20, 23, 25,

7  Exs. 21-23, 26, 28 (Sept. 17, 2019 letter from D. Kocan to E. Vandevelde; Oct. 4, 19, and Nov. 8,

8  26, 2019 letters from J. Minne to J. Tryck).

9    This is not an overbroad request.  It directly targets documents bearing on Rimini's

10  compliance with the Injunction.  For example, if Rimini is using Oracle's Software and Support

11  Materials to develop Rimini's Online Materials, then it is using Oracle's Software and Support

12  Materials "other than to support the specific licensee's own internal data processing operations,"

13  which violates the Injunction.  ECF No. 1166, Injunction ¶¶ 2, 4, 5.  Rimini may also be creating

14  derivative works, reproducing, and distributing Oracle Software and Support Materials in

15  violation of the Injunction, depending on the contents of Rimini's Online Materials and what

16  Oracle Software and Support Materials were used to prepare them.  *Id.* at ¶¶ 2, 3, 4, 5, 6, 7.

17    Rimini first objected to RFP No. 11 by asserting that it █████████████████

18  ████████████████████  Kocan Decl. ¶ 5, Ex. 9 at 10–11 (Rimini's operative responses to

19  Oracle's Third Supplemental Requests for Production.).  Given Rimini's statements to the public

20  that some of its online materials were based on analysis of "all of the updates Oracle Corporation

21  incorporated into the PeopleSoft 9.2 HCM images," this objection lacks credibility.  *Id.*, ¶ 19, Ex.

22  22 (Oct. 4, 2019 letter from J. Minne to J. Tryck (citing Rimini's website).  And analysis of

23  Oracle's copyrighted works (including software updates) for purposes of providing information to

24  a broad audience (whether current customers, prospective customers, or the public) would violate

25  the Injunction.  Injunction ¶¶ 2, 3, 4, 5, 7.  Oracle's request is tailored to reach documents

26  reflecting such improper conduct.

27    Rimini also attempted to shift the burden of identifying responsive documents to Oracle,

28  despite Oracle's obvious inability to identify all of Rimini's documents responsive to the RFP

without having access to those documents.  Kocan Decl. ¶ 19, Ex. 22 (Oct. 4, 2019 letter from J. Minne to J. Tryck).

Despite Oracle's consistent and repeated explanations of the RFP and these terms in correspondence and meet and confer, *see, e.g.,* Kocan Decl. ¶ 18, Ex. 21 (Sept. 17, 2019 Letter from D. Kocan to E. Vandevelde), Rimini instead insisted (incorrectly) that Oracle attempted to expand the scope of the RFP.  To date, Rimini has produced just one document: a white paper identified by URL in the definition of Rimini's Online Materials, which was finally produced after extended meet and confer.[4]

In an effort to compromise and to address Rimini's complaints regarding burden, Oracle requested "a list of all of the whitepapers, webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials that Rimini makes available on its website, along with an estimate of the number of documents referenced or used in creating them" so that Oracle could consider selecting a subset or sample.  Kocan Decl. ¶ 23, Ex. 26 (Nov. 8, 2019 Letter from J. Minne to J. Tryck).  After almost a month, Rimini finally refused to provide such a list.  *Id.*, Exs. 28-29 (Nov. 26, 2019 Letter from J. Minne to J. Tryck; Dec. 3, 2019 Letter from J. Tryck to J. Minne ("Rimini has determined that it would be unduly burdensome to provide a list of all materials on Rimini's website that relate to PeopleSoft or JDE.  Oracle can review Rimini's

---

[4] While the white paper identified by URL in the RFP appears to be accessible through the Rimini website, it is behind a form requiring the user to provide contact information.  Because this form appears likely to generate a communication to the Rimini sales team, out of an abundance of caution and in the interest of avoiding any appearance of an unauthorized communication with a represented party, Oracle did not complete the form and was thus unable to access the document. Kocan Decl. ¶ 19, Ex. 22 (Oct. 4, 2019 letter from J. Minne to J. Tryck).

11

1   website and find that information for itself.")).

2          Because Rimini has not provided a list, the Court should order Rimini to search for and

3   produce all Rimini Online Materials relating to Oracle Software and Support Materials, as well as

4   any other Documents used to create such Rimini Online Materials.  At the very least, the Court

5   should order Rimini to produce the webinars specifically identified in the RFP.

6          **C.       Production of Dev Instructions**

7          Oracle is seeking production of Rimini's draft Dev Instruction files, pursuant to

8   Supplemental RFP Nos. 9 and 14. Supplemental RFP 9 seeks:

9          **All Communications Concerning** .sqr, .sqc, .,sql, .txt, .cbl, .dat, .xml, .xsd, .pdb, .dat .dms,
           "Technical Specification," "Functional Specification," "Test Plan," **"Dev Instructions,"**
10         "Build Instruction" and RS-prefixed files <u>distributed by Rimini on or after November 5,
           2018</u>, including without limitation, files identified in the AFW records produced as part of
11         RSI_AFW001.

12  Kocan Decl. ¶ 5, Ex. 9 at 6 (emphasis added).  "Communications" is defined to include

13  "Documents," which expressly include "drafts."  *Id.* at 1-2.  **Rimini conceded that this request**

14  **"calls for all Dev Instructions."**  *Id.* ¶ 15, Ex. 18 (July 30, 2019 email from C. McCracken to D.

15  Kocan).

16         Rimini's refusal to produce draft undistributed Dev Instructions was one impetus for

17  Oracle's service of Supplemental RFP No. 14:

18         **All Documents used, created or modified in the course of Rimini's provision of support
           services for Oracle Software covered by the Injunction since November 5, 2018**,
19         including, without limitation, Documents attached to, linked to, or linked from JIRA entries;
           and/or Documents saved to Rimini's "T:" drive, RSI File Share, teams.microsoft.com
20         services, SharePoint, DepartmentShares, ShareFile, internal.rsi, FTP servers, internal wikis,
           or "Bit Bucket" systems.
21

22  *Id.*, ¶ 6, Ex. 10 at 5 (Rimini's operative responses to Oracle's Sixth Supplemental Requests for

23  Production) (emphasis added).  Again, "Documents" is defined to include "drafts."  *Id.* at 1-2.

24  Because Dev Instructions are created and modified in the course of Rimini's provision of support

25  services for PeopleSoft software, *id.* ¶ 4, Ex. 8 (Rimini's operative responses to Oracle's

26  Supplemental Interrogatories Nos. 1 and 5) at 7, Supplemental RFP No. 14 seeks all draft and

27  final versions of Dev Instructions created by Rimini, whether or not they were distributed to

28  environments associated with Rimini's customers.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

To date, Rimini has agreed to produce only final Dev Instruction files and Dev Instruction files that were distributed to customers, and claims that all other Dev Instructions are irrelevant. Kocan Decl. ¶ 26, Ex. 29 (Dec. 3, 2019 letter from J. Tryck to J. Minne).  Rimini further claims that all Dev Instruction files saved to the ███████████████ folder are subject to attorney-client privilege.  *Id.*  These objections should not be sustained.

### 1.   By Withholding Dev Instructions, Rimini Is Refusing To Produce Relevant Documents

Dev Instructions, whether draft or final, are evidence relevant to Rimini's cross-use of PeopleSoft environments during the development, testing, and retrofitting of updates:  conduct that violates the Court's directive that "Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee."  Injunction ¶ 6; *see also* ¶¶ 4-5.

### a.   Drafts Are Relevant Because Rimini Copies And Uses Copyrighted Oracle Software To Create Them

Rimini concedes that Dev Instructions that "went to clients" are relevant because they "provide information about the implemented updates." Kocan Decl. ¶ 24, Ex. 27 at 1 (Nov. 18, 2019 letter from J. Tryck to J. Minne).  By the same token, Dev Instructions that were created using copyrighted PeopleSoft environments—where Rimini used (and in doing so, copied) Oracle Software Environments to develop and test the content of the Dev Instructions—provide evidence of enjoined "development and testing" contrary to Paragraph 6 of the Injunction, as well as reproduction, preparation of derivative works from, or use of a customer's software "other than to support the specific licensee's own internal data processing operations" as prohibited in Paragraph 4.

████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████ Kocan Decl.
¶ 25, Ex. 28 at 1 (Nov. 26, 2019 letter from J. Minne to J. Tryck), ¶ 23, Ex. 26 at 2 (Nov. 8, 2019

13

1  letter from J. Minne to J. Tryck).  Draft Dev Instruction files are thus evidence of Rimini's

2  copying and use of PeopleSoft environments to develop and test updates for the benefit of

3  multiple customers, not just the customer associated with the environment where prototyping took

4  place, in violation of the prohibitions on cross-use in the injunction.

5         Evidence from Rimini's JIRA system supports Oracle's contention.[5]  When a complex

6  update needs to go to multiple customers, an environment associated with one customer is chosen

7  as the prototype (or "Scrum") environment, and others are built more rapidly by retrofitting

8  material from the prototype environment onto environments associated with other customers (a

9  process called "Kanban").  Rimini's mid-2019 development work for HCM200440 illustrates this

10  process. ███████████████████████████████████████

11  ██████████████████████████████████████████████

12  ██████████████████████████████████████████████

13  ██████████████████████████████████████████

14  ██████████████████████████████████████████████

15  ███████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ██████████████████████████████████████████████

18  ███████████████████████████████████████████████

19  ██████████████████████████████████████████

20  ██████████████████████████████████████████████

21  ████████

22         The draft Dev Instruction, ██████████████████████████████████████,

23  is direct evidence that Rimini was using an environment associated with one customer, ████████

24  ██████████████, "to support, troubleshoot, or perform development or testing for [another]

25  licensee" in violation of Paragraph 6 of the Injunction, and specifically, that Rimini was using

26  ████████ "PeopleSoft environment to develop or test software updates or modifications for the

27  ─────────────────────

28  [5] Rimini has characterized JIRA as one of "the databases that reflect what our engineers are
actually doing." ECF No. 1256 (Sept. 3, 2019 Hearing Tr.) at 25:6-10.

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1    benefit of" the Kanban customers, in violation of this Court's Injunction.  ECF No. 1166 ¶ 6; *see*

2    *also* ¶ 4.  This is not an isolated incident; Rimini's system further shows ███████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████.  BFC Decl. ¶ 22, Ex. 5 (██████

5    ████).  Oracle seeks copies of the draft Dev Instructions to obtain additional (and more specific)

6    evidence of Rimini's copying, modification, distribution, and use of Oracle's PeopleSoft

7    software.

8             Custodial productions also confirm that Rimini tested updates in PeopleSoft environments

9    and used the results of these tests to create or modify the Dev Instructions for other customers in

10   violation of the cross-use provisions of the injunction.  For example, ██████████████

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   █████████████     Kocan  Decl., ¶ 9, Ex. 12, RSI007041376.

14           In a few instances, Rimini has produced early copies of Dev Instructions (for example,

15   because draft copies were sent to Rimini customers).  These draft Dev Instructions often contain

16   evidence that they were developed using an environment associated with a customer.  For

17   example, ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ██████████████████████████     *Id.*, ¶ 8, Ex. 11 (RSI006954036); *see Vernor v. Autodesk, Inc.*,

21   621 F.3d 1102, 1110 (9th Cir. 2010) ("unauthorized loading of copyrighted software into RAM"

22   infringes "software copyrights").  In another draft that Rimini produced, the draft Dev Instruction

23   included ██████████████████████████████████████████  BFC

24   Decl., ¶¶ 8-12; *compare* BFC Decl. ¶ 9, Ex. 2 at lines 37-38 (RSI006865952) *with* BFC Decl. ¶

25   12, Ex. 4 at lines 217, 224 (Oracle GA File ██████████).  Again, Rimini could not have

26   created this draft Dev Instruction without opening this file (copying it into memory) and then

27   copying these lines of Oracle source code into the draft Dev Instruction file.

28           Because these draft Dev Instructions were created close in time to Rimini's development

                                                  15
─────────────────────────────────────────────────────────────────
ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

and testing of prototype and retrofit updates, they are often reliable evidence of Rimini's copying

during that development and testing.  Accordingly, the draft Dev Instructions are highly relevant,

and Oracle is entitled to their production.

        b.      **Rimini Whitewashes the "Final" Versions of Dev Instructions**

                **to Conceal the Extent of its Copyright Infringement**

Rimini has suggested that draft Dev Instructions need not be produced because whatever

evidence of violations of the injunction that they show, "the same is true for the final Dev

Instructions.  Kocan Decl. ¶ 24, Ex. 27 at 1 (Nov. 18, 2019 letter from J. Tryck to J. Minne).  This

is false.

Oracle has identified final Dev Instructions from which Rimini has stripped out evidence

that Rimini copied Oracle source code—source code that was present in draft Dev Instructions.

As mentioned above, a small number of draft Dev Instructions were produced; in some cases,

Rimini also produced the "final" version of these Dev Instructions.  In the final versions, evidence

of access to and copying from Oracle software had been stripped from the document:



BFC Decl. ¶ 15, Ex. 3 (side-by-side comparison of "HCM2000075 Dev Instructions.txt"

[RSI006865952] and "HCM2000075 Dev Instructions -Final.txt" [RSI006953654]).

This strong and specific evidence of Rimini's copying and use of an Oracle Software

Environment associated with one customer to develop updates for other customers in violation of

the injunction is not available from the final version of the Dev Instruction file, alone.

        **2.**      **Rimini's Privilege Objections are Meritless**

No later than June 2019, it became a standard operating procedure for ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████"  *See, e.g.*, BFC Decl. ¶ 22, Ex. 5 (██████████) (change on June 4, ████████

16

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1    ███████████████████████████████████).  Rimini has refused to produce certain

2    draft and other Dev Instructions based in part on Rimini has asserted privilege against at least the

3    draft Dev Instructions it funnels into this folder.  Kocan Decl, ¶ 24, Ex. 27 at 1-2 (Nov. 18, 2019

4    J. Tryck Letter.  However, this objection is meritless for three reasons.  First, Rimini has not

5    made a *prima facie* showing that the information is privileged.  Second, even if lawyers provided

6    some edits to intermediate documents, production of at least the initial draft Dev Instructions will

7    not reveal any privileged communications.  Finally, in reviewing the few circumstances where

8    Rimini has produced draft and final Dev Instructions, there is no evidence that any of the

9    modifications comprise legal advice.

10          For a communication to be protected by the attorney-client privilege, it must be in

11    confidence, between a client and attorney, for the purpose of seeking legal advice.  *United States*

12    *v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002).

13    Further, in order to separate ordinary business communications from true requests for legal

14    advice, in the context of intra-company communications, attorney client privilege protects "only

15    those disclosures necessary to obtain informed legal advice ***which might not have been made***

16    ***absent the privilege***."  *Fisher v. United States*, 425 U.S. 391, 403-05 (1976) (emphasis added).  In

17    other words, privilege only attaches where the "primary purpose" of the disclosure is to seek legal

18    advice.  *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628-31 (D. Nev. 2013).  "Because it impedes

19    full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v.*

20    *Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *see also Swidler &*

21    *Berlin v. United States*, 524 U.S. 399, 411 (1998) ("In light of the heavy burden that they place on

22    the search for truth, evidentiary privileges in litigation are not favored, and even those rooted in

23    the Constitution must give way in proper circumstances. Consequently, we construe the scope of

24    privileges narrowly.") (internal citations omitted).

25          Here, any attempt to show privilege fails because none of the Dev Instructions are kept

26    confidential. █████████████████████████████████████████████

27    ████████████████████████████████████████████████████

28    ████████████████████████████████████████████

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1 ██████████████████████████████████████.  BFC Decl. ¶ 17, Ex. 5 (████████████).

2 ██████████████████████████████████████████████████████████████

3 ███████████████████████████████████████.  Kocan Decl. ¶ 11, Ex. 14

4 (RSI007063463).  Because the Dev Instructions ████████████████████████████████

5 ███████████████████████████████, they cannot be said to be a confidential

6 communication.  *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 133

7 Nev. 369, 374, 399 P.3d 334, 341 (2017), reh'g denied (Sept. 28, 2017) ("[c]ommunications may

8 be disclosed to other persons within a corporation or legal team in order to facilitate the rendition

9 of legal advice without losing confidentiality; however, the disclosure must only be to the limited

10 group of persons who are necessary for the communication, and attempts must be made to keep

11 the information confidential and not widely disclosed.").

12     Rimini also cannot show that primary purpose of ***drafting*** an initial Dev Instruction file is

13 to obtain legal advice regarding facts that might not otherwise be disclosed.  *Phillips*, 290 F.R.D.

14 at 629.  Rimini has not produced a privilege log or any other documents to show that this

15 requirement for privilege has been met.  To the contrary, Rimini admits that ████████████

16 █████████████████████████████████████████████████████████████

17 ████████████████████████████████.  Kocan Decl. ¶ 4, Ex. 8 (Rimini's operative

18 responses to Oracle's Supplemental Interrogatories Nos. 1 and 5) at 7.  While a later version of a

19 Dev Instruction, with questions, comments and other context specifically directed at Rimini's in-

20 house counsel ***might*** be considered privileged (though Rimini has not made any showing that

21 such content exists), the initial draft (wherever it is stored) is not.

22     Rimini has also argued that "Oracle appears to seek the privileged drafts in order to

23 compare them to final versions in order to determine the legal advice that Rimini's lawyers

24 provided."  *Id.*, ¶ 21, Ex. 24 at 2 (Oct. 28, 2019 letter from J. Tryck to J. Minne).  This argument

25 fails because it pre-supposes that initial drafts are privileged; as discussed above, they are not.

26 Moreover, Oracle would have no way of knowing which changes between draft and final versions

27 reflected the advice; as shown above, █████████████████████████████████████

28 ████████████████████████████████████.  *See, e.g., id.*, ¶ 11, Ex. 14

(RSI007063463) (█████████████████████████████████████████

████████████████████████████████████████).

   Finally, even if Oracle could divine which changes were made by Rimini's counsel, those

technical changes do not amount to protected legal advice.  For example, Rimini produced two

versions of the Dev Instruction for HCM200075, but the differences appear to be purely editorial,

and not legal in nature.  For example, █████████████████████████████████████████

████████████████████████████████████████████

BFC Decl. ¶ 15, Ex. 3 <u>at lines 40/42</u> (emphasis added to show changes).  Even assuming,

*arguendo*, that the phrase ████████████████████████████████

was added by Rimini's attorneys, that phrase does not amount to legal advice.  *See U.S. Postal*

*Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994) (finding

defendants' claim of privilege over "editorial comments or inserts providing factual background"

added by attorneys to technical documents to be "well beyond the 'outer boundary' of the

privilege.").

   Instead of using its in-house counsel as a source of legal advice, Rimini is using that office

to shield from discovery highly relevant technical documents written by engineers that are

damaging to its case.  Such non-legal communications are not privileged.  *Residential*

*Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 WL

3149362, 2006 U.S. Dist. LEXIS 80403, at *32-33 (D. Nev. Nov. 1, 2006) ("The attorney-client

privilege is narrowly construed because it impedes the search for truth.  Narrowly construed, the

privilege protects only confidential communications from a professional legal adviser, acting in

his capacity as such, made to the client.").  This effort went into overdrive in June, when it

became clear Oracle would likely obtain post-Injunction discovery, and Rimini ████████

█████████████████████████████████████████████████

█████████ BFC Decl. ¶ 22, Ex. 5 at 5 ███████████).  Around the same time, one Rimini

employee ██████████████████████████████████████████████

███████████████████████████████████████████████████

█████████.  Kocan Decl., ¶ 12, Ex. 15 (RSI007086636).  Using a lawyer to provide self-serving

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1   editorial changes to a technical document—changes that could just as easily be applied by an

2   engineer—does not support a claim of privilege.  *Radiant Burners, Inc. v. Am. Gas Ass'n*, 320

3   F.2d 314, 324 (7th Cir. 1963) ("Certainly, the privilege would never be available to allow a

4   corporation to funnel its papers and documents into the hands of its lawyers for custodial

5   purposes and thereby avoid disclosure."); *see also  U.S. Postal Serv.*, 852 F. Supp. at 162. (noting

6   the "necessarily limited legal role that an attorney has in commenting on documents prepared by

7   scientific consultants"); *Ocean Mammal Inst. v. Gates*, 2008 WL 2185180, at *12, 15 (D. Haw.

8   May 27, 2008) (applying privilege only to lawyer's comments in draft memorandum and

9   requiring disclosure of rest).

10        Because Rimini has not met its strict burden of establishing privilege over draft and other

11  Dev Instructions, and because it seems doubtful that any privilege exists, Rimini cannot stand on

12  this objection, and the production of all Dev Instructions should be ordered.

13  **IV.**      **<u>CONCLUSION</u>**

14        Oracle's repeated efforts to negotiate with Rimini regarding each of the above discovery

15  deficiencies have been unsuccessful.  Because lengthy meet-and-confer negotiation has failed,

16  and in light of the rapidly approaching discovery deadlines in this case, Oracle asks the Court for

17  an order to ensure Rimini does not simply wait out its obligations to provide complete discovery

18  responses.  Oracle respectfully requests that the Court compel Rimini to produce documents in

19  response to Oracle's Supplemental Requests for Production of Documents Nos. 9, 11, and 14 and

20  provide supplemental responses to Oracle's Supplemental Interrogatory No. 5 as soon as possible,

21  but at the latest before fact discovery closes.

22

23  DATED: December 6, 2019               MORGAN, LEWIS & BOCKIUS LLP

24

25  By: _____*/John A. Polito/*_____
                                        John A. Polito

26

27  Attorneys for Plaintiffs Oracle USA, Inc., Oracle
    America, Inc. and Oracle International Corporation

28

ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of December, 2019, I electronically transmitted the foregoing **ORACLE'S MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES RE POST-INJUNCTION DISCOVERY** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: December 6, 2019

By:      */John A. Polito/*
                John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle
America, Inc. and Oracle International
Corporation

CERTIFICATE OF SERVICE