# EXHIBIT 22
# Oct. 4, 2019 Letter from J. Minne to J. Tryck
# REDACTED VERSION

# Morgan Lewis

**Jacob J.O. Minne**
Associate
+1.650.843.7280
Jacob.minne@morganlewis.com

October 4, 2019

**VIA E-MAIL**
Jennafer M. Tryck
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Email: JTryck@gibsondunn.com

Re:   <u>Oracle USA, Inc., et al v. Rimini Street, Inc., et al.</u>, Case 2:10-cv-00106-LRH-VCF

Dear Jennafer:

We write regarding several ongoing discovery disputes in the above-captioned matter.

<u>Production of Draft "Dev Instructions"</u>

Rimini claims that "[d]raft, non-final versions of Dev Instructions" are non-responsive, irrelevant, and privileged.  Sept. 6, 2019 J. Tryck letter to J. Minne.  We disagree.

Regarding responsiveness, Oracle's discovery requests expressly define "Documents(s)" to cover "drafts" and "also includes any copy that differs in any respect from the original or other versions of the Document(s)."  *See* Oracle's First – Fifth Supplemental Requests For Production. Additionally, these drafts are relevant because the injunction concerns not only the updates ultimately distributed by Rimini, but also the process by which those updates are developed; comparing draft and final versions of Dev Instructions will shed light on that process.

Nor has Rimini shown that these documents are privileged.  Privilege does not attach to documents created in the ordinary course of business where the **primary purpose** is not seeking legal advice.  *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238, 240 (N.D. Cal. 1990) (citing *Fisher v. United States*, 425 U.S. 391, 403–05 (1976) (attorney client privilege protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege")).  Even in heavily regulated industries, a company cannot manufacture privilege by funneling the day-to-day work of its engineers "through the legal department for review, comment and approval."  *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 631 (D. Nev. 2013); *see also Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 324 (7th Cir. 1963) ("Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure.").

Here, there is no doubt that Dev Instructions are ███████████████████████████████
█████████████████████████████████████████████████████████████████.  Rimini

**Morgan, Lewis & Bockius LLP**

One Market
Spear Street Tower
San Francisco, CA  94105-1596          +1.415.442.1000
United States                          +1.415.442.1001

Jennafer M. Tryck
October 4, 2019
Page 5

▮

This screenshot was taken from ▮.

Please produce all environment spreadsheets, including all such spreadsheets ▮ ▮. Access to such documents should be provided via the credentials called for by RFP No. 6, and such documents are also responsive to at least RFP No. 7 ("Documents sufficient to identify and show the location of each Oracle Software Environment that Rimini Personnel have accessed since November 5, 2018").

Rimini's Response to Interrogatory No. 5

Rimini's response to Interrogatory No. 5 still appears to omit ▮. For instance, Rimini's responses fails to include ▮ ▮ Additionally, Rimini has still not identified ▮ Rimini's attempt to have Oracle identify for Rimini ▮

Moreover, Rimini's letter indicates that aside from ▮

Accordingly, Oracle again asks that Rimini correct its response to Rog 5 to include any updates that have been omitted. Furthermore, ▮ Thus, Rimini should also supplement its response so that it includes all updates that have been released to date.

Rimini's Production in Response to RFP 11

RFP 11 seeks "[d]ocuments relating to Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials." Rimini's continued refusal to produce documents in response to this RFP, *see, e.g.,* Sept. 23, 2019 letter from E. Vandevelde to D. Kocan, is improper.

Oracle has twice clarified, once during the parties August 1, 2019 meet and confer, and again in the September 17 letter from D. Kocan to E. Vandevelde, that this request includes at least the Whitepaper described at https://www.riministreet.com/white-paper-unpacking-the-hcm-and-fin-

Jennafer M. Tryck
October 4, 2019
Page 6

pum-images-for-peoplesoft, and the PeopleSoft Webinars described at https://info.riministreet.com/PeopleSoft-Webinars-LP.html, because (a) they "relat[e] to Oracle Software and Support Materials" and (b) they "compris[e] … Rimini's Online Materials," as those terms are defined.  Rimini's contention that it did not analyze Oracle updates in creating this material is suspect, given the contrary statement on the webpage that Rimini in-fact "analyzed all of the updates Oracle Corporation incorporated into the PeopleSoft 9.2 HCM images…" and also does not excuse Rimini from producing this document, as regardless, it is clearly related to Oracle Software and Support Materials.

Rimini's assumption that Oracle has access to the whitepaper document is also based on a faulty premise.  The download button will not work without submitting contact information through the form, presumably to Rimini's sales team.  As this could be construed as an improper *ex parte* contact, Oracle has not done this.  Nor can Oracle contact the author of the whitepaper to inquire about what other documents were used in its creation.  Nor can Oracle search Rimini's systems to locate all other responsive documents.

Rimini should search for all Rimini Online Materials and produce all such materials relating to Oracle Software and Support Materials, as well as any other Documents in Rimini's possession, custody, or control that were used to create such Rimini Online Materials.  This includes, without limitation, the whitepapers and webinars identified above, drafts of these materials, and all articles, updates, software, manuals, or other Documents used in their creation, whether or not they are listed in the "References" section.

Rimini's Refusal to Permit Designation of Material Produced by Public Entities Under the Protective Order

We were surprised by your refusal to permit public entities to produce material under the Protective Order in response to Oracle's request for documents under statute.  This is contrary to Rimini's previous statement, that so-designating materials "will resolve any confidentiality objections by Rimini to the production of materials by public entities in response to Oracle's requests."  October 5, 2010 letter from R. Reckers to T. Hixson.

In light of Rimini's change of position and intervention to block the production of highly relevant updates that are created by Rimini but Rimini no longer has in its possession, custody, or control, we propose that the parties jointly move to modify the Post-Injunction Discovery Order in this case and permit subpoenas to be served on public entities that have refused to produce documents based on Rimini's objections.  This will allow these entities to designate portions of their responses under the Protective Order.  Please let us know if you agree.

Access to Other Non-Custodial Sources

As discussed in the August 30, 2019 letter, Oracle's review of Jira, DevTrack, and other discovery has identified several additional non-custodial sources of information, not otherwise discussed above, including, without limitation, ████████████████████████████████████████████████.
Oracle maintains that if Rimini is unwilling to produce credentials for these online resources in response to RFP No. 6, it should at least produce the relevant documents from these sources, including documents ████████████████████████████████████████████████.
In addition to the credentials called for by RFP No. 6, such documents are also responsive to RFP Nos. 2, 4, and, as Rimini concedes, 14.