# EXHIBIT 26
# Nov. 8, 2019 Letter from J. Minne to J. Tryck
# REDACTED VERSION

# Morgan Lewis

**Jacob J.O. Minne**
Associate
+1.650.843.7280
Jacob.minne@morganlewis.com

November 8, 2019

**VIA E-MAIL**
Jennafer M. Tryck
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Email: JTryck@gibsondunn.com

Re:   <u>Oracle USA, Inc., et al v. Rimini Street, Inc., et al.,</u> Case 2:10-cv-00106-LRH-VCF

Dear Jennafer:

We write regarding several ongoing discovery disputes in the above-captioned matter.

<u>Production of Dev Instructions Transmitted Via AFW</u>

We look forward to Rimini's production of the six remaining unproduced Dev Instructions documents cited in our last letter, as well as the additional Dev Instructions files ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Please let us know when we can expect this production. Oracle's proposed schedule for further supplements will be addressed in Oracle's proposed discovery refresh schedule, discussed during the Parties' call on November 1, 2019.

As to the two Dev Instruction files that were already produced under different names:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Please (1) provide the Bates numbers of these documents, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and (2) produce the documents you rely on for the assertion that they were "renamed subsequent to the transfer." Oct. 28, 2019 letter from J. Tryck to J. Minne.

<u>Production of Draft Dev Instructions</u>

Rimini must produce draft Dev Instructions, which Rimini creates to document updates and provide technical information about updates to its clients. Dev Instructions drafts are highly relevant because they reflect Rimini engineers' own articulation of the development process, such as Rimini's use of prototype customer environments to support Rimini's update process. Such direct-from-the-source statements and party admissions are critical evidence. Oracle has previously cited an internal Rimini email chain that illustrates why Dev Instruction drafts are important evidence

Jennafer M. Tryck
November 8, 2019
Page 2

about how Rimini develops and tests updates in individual clients' environments for the benefit of other Rimini clients (*i.e.*, some of Rimini's environment cross-use). Oct. 19, 2019 letter from J. Minne to J. Tryck; 

As we understand it, Rimini has no privilege objection to producing Dev Instruction drafts if those drafts were attached to an email or saved into any location other than a shared folder self-servingly titled ■■■■■■■■■■■■■■. But Rimini is seeking to block discovery of nearly all early-draft Dev Instructions because ■■■■■■■■■■■■■■■■■■■■■■■■ (that is, regardless of whether there was actual intent to solicit legal advice or whether there was any legitimate reason to do so). ■■■■ ■■■■■■■■■■■■■ is an improper attempt to cloak ordinary business documents in privilege. *Cf. Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 324 (7th Cir. 1963) ("Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure.").

Privilege does not turn on where an employee saves a file; there is no principled distinction between an engineer's initial draft Dev Instruction that was saved ■■■■■■■■■■■■ and one saved ■■■■■■. In either case, the draft was created not to solicit legal advice but to ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *Ocean Mammal Inst. v. Gates*, 2008 WL 2185180, at *12, 15 (D. Haw. May 27, 2008) (applying privilege only to lawyer's comments in draft memorandum and requiring disclosure of rest). Similarly, documents do not become privileged because they are submitted to attorneys for "editorial comments or inserts providing factual background"—especially when, as here, the documents are technical in nature and therefore "necessarily" can have little or no substantive input from lawyers. *U.S. Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994) (noting the "necessarily limited legal role that an attorney has in commenting on documents prepared by scientific consultants"). Rimini has not established that documents are placed into ■■■■■■■■■■■■■■■■■ anything other than "editorial" changes to documents that ■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■

Oracle at this time demands that Rimini produce all Dev Instructions (1) as they existed before attorney review and regardless whether they were placed in ■■■■■■■■ and (2) in their final form, whether or not they were sent to clients. Oracle reserves all rights as to interim drafts.

<u>Rimini's Production of Salesforce and SharePoint Materials</u>

Oracle is in receipt of and is reviewing Rimini's productions of SharePoint and Salesforce materials, which Rimini represents are substantially complete. Oct. 16, 2019 letter from J. Tryck to K.

---

[1] Rimini has responded by attempting to narrow the focus to the "implementation" of updates, as distinct from testing and development. The development and testing of updates Rimini provides to multiple customers is just as relevant to the question of cross-use as their implementation, as the injunction shows. ECF No. 1166, Injunction ¶¶ 6, 10, 14.

Jennafer M. Tryck
November 8, 2019
Page 2

about how Rimini develops and tests updates in individual clients' environments for the benefit of other Rimini clients (*i.e.*, some of Rimini's environment cross-use). Oct. 19, 2019 letter from J. Minne to J. Tryck;



As we understand it, Rimini has no privilege objection to producing Dev Instruction drafts if those drafts were attached to an email or saved into any location other than a shared folder self-servingly titled ▉▉▉▉▉▉▉▉▉▉▉▉. But Rimini is seeking to block discovery of nearly all early-draft Dev Instructions because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (that is, regardless of whether there was actual intent to solicit legal advice or whether there was any legitimate reason to do so). ▉▉▉▉▉▉▉▉▉▉▉▉ is an improper attempt to cloak ordinary business documents in privilege. *Cf. Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 324 (7th Cir. 1963) ("Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure.").

Privilege does not turn on where an employee saves a file; there is no principled distinction between an engineer's initial draft Dev Instruction that was saved ▉▉▉▉▉▉▉▉▉▉ and one saved ▉▉▉▉. In either case, the draft was created not to solicit legal advice but to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Ocean Mammal Inst. v. Gates*, 2008 WL 2185180, at *12, 15 (D. Haw. May 27, 2008) (applying privilege only to lawyer's comments in draft memorandum and requiring disclosure of rest). Similarly, documents do not become privileged because they are submitted to attorneys for "editorial comments or inserts providing factual background"—especially when, as here, the documents are technical in nature and therefore "necessarily" can have little or no substantive input from lawyers. *U.S. Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994) (noting the "necessarily limited legal role that an attorney has in commenting on documents prepared by scientific consultants"). Rimini has not established that documents are placed into ▉▉▉▉▉▉▉▉▉▉▉▉ anything other than "editorial" changes to documents that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.





Oracle at this time demands that Rimini produce all Dev Instructions (1) as they existed before attorney review and regardless whether they were placed in ▉▉▉▉▉▉ and (2) in their final form, whether or not they were sent to clients. Oracle reserves all rights as to interim drafts.

<u>Rimini's Production of Salesforce and SharePoint Materials</u>

Oracle is in receipt of and is reviewing Rimini's productions of SharePoint and Salesforce materials, which Rimini represents are substantially complete. Oct. 16, 2019 letter from J. Tryck to K.

---

[1] Rimini has responded by attempting to narrow the focus to the "implementation" of updates, as distinct from testing and development. The development and testing of updates Rimini provides to multiple customers is just as relevant to the question of cross-use as their implementation, as the injunction shows. ECF No. 1166, Injunction ¶¶ 6, 10, 14.

Jennafer M. Tryck
November 8, 2019
Page 4

Teams.microsoft.com Materials

The Parties appear to be joined on the issue of whether teams.microsoft.com, a shared drive, is a "custodial source." Oracle reserves all rights. In the meantime, please confirm whether the ████████████████████████████████████████████████████ are included in Rimini's custodial productions.

Jira Entries with Restricted View Rights

There appears to be one remaining ███████████ that Oracle cannot access. We request a technical phone call to walk though this final issue.

Spira/SpiraTeam Credentials

The Spira credentials appear to be functioning. We will be in touch if we encounter any issues.

Environment Spreadsheets

Oracle is in receipt of and is reviewing Rimini's production of environment spreadsheets, produced just two days after Rimini agreed to conduct a search for such documents. Oct. 30, 2019 letter from J. Tryck to K. Hartnett; Oct. 28, 2019 letter from J. Tryck to J. Minne. Please confirm whether Rimini represents this production is complete.

Rimini's Response to Interrogatory No. 5

Oracle received and is reviewing Rimini's supplemental response to Interrogatory No. 5 and the accompanying correspondence. Oracle's proposed schedule for additional supplements will be addressed in Oracle's proposed discovery refresh schedule, discussed during the Parties' call on November 1, 2019.

Rimini's Production in Response to RFP No. 11

Oracle received Rimini's production of the de-designated whitepaper and is reviewing Rimini's representation that "the whitepaper was created by referencing public sources, which are cited in the document." Oct 28, 2019 letter from J. Tryck to J. Minne.

Rimini's re-interpretation of Oracle's RFP to assert there are no responsive documents is demonstrably incorrect: Rimini now interprets "documents 'related' to Oracle Software and Support Materials" to mean solely "Oracle Software and Support Materials." The RFP calls for "All Documents relating to Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials." Oracle is entitled to discovery on whitepapers, webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials that Rimini makes available on its website, as well as the documents Rimini referenced in the creation of such materials. Such discovery has a direct bearing on Rimini's compliance with the Injunction. ECF No. 1166, Injunction ¶¶ 2, 3, 4, 5, 7, 9. Yet Rimini will not even agree to produce the webinars explicitly named in the RFP, referenced at the URL https://info.riministreet.com/PeopleSoft-Webinars-LP.html. Oct. 19, 2019 letter from J. Minne to J. Tryck.

Jennafer M. Tryck
November 8, 2019
Page 5

To address Rimini's claim that this is an overly burdensome request, Oracle proposes that Rimini provide a list of all of the whitepapers, webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials that Rimini makes available on its website, along with an estimate of the number of documents referenced or used in creating them, and Oracle will consider selecting a subset or sample. Please confirm if Rimini agrees to this proposal.

Unless or until the parties reach agreement about such a subset or sample, Oracle maintains that Rimini should search for and produce all Rimini Online Materials relating to Oracle Software and Support Materials, as well as any other Documents used to create such Rimini Online Materials.

Rimini's Refusal to Permit Designation of Material Produced by Public Entities Under the Protective Order

For the first time in either *Rimini* litigation, Rimini is attempting to stop public entities from fulfilling Oracle's sunshine act requests by asserting "trade secret" protection over materials that Rimini distributed to public entities. For over *nine years* counsel for all Parties in this litigation have resolved any such concern by extending public entities the courtesy of protection according to the protective order's terms. Oct. 19, 2010 letter from K. Ringgenberg to R. Reckers; Oct. 25, 2010 email from R. Reckers to K. Ringgenberg (confirming that the agreement's purpose was to resolve "confidentiality objections by Rimini."). Rimini challenged these facts on the October 22 meet and confer call. After that call Oracle provided documentation of the Parties' agreement shortly after the October 22 call, but Rimini's most recent letter is silent on this long-standing agreement and practice. Please confirm that Rimini will continue to honor its agreement. If not, please explain what new facts have caused Rimini to renounce its agreement and burden public entities by forcing them to make trade secret determinations and risk litigation of those determinations.

Oracle has not taken a position with customers regarding Rimini's objections to Oracle's PRA requests. Oracle disagrees with Rimini's speculative interpretation of its October 4 letter, which is quite clear that, as stated by Rimini's own attorney in 2010, the Parties' agreement was directed to resolving "confidentiality objections by Rimini."

Please also confirm, as Rimini has suggested, that it is Rimini's position that "updates that are created by Rimini but Rimini no longer has in its possession, custody, or control" (Oct. 4, 2019 letter from J. Minne to J. Tryck) are trade secrets. If not, please explain what new facts have caused Rimini to change its position.

Access to Other Non-Custodial Sources

See discussion of non-custodial sources below in the section regarding RFP 14.

Injunction Compliance Communications

If Rimini contends the documents resulting from Rimini employees' use of the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are privileged, Rimini can include them in a privilege log. But as SharePoint documents are non-custodial, such privilege logs (as well as any responsive, non-privileged documents that Rimini identifies) should accompany Rimini's *non-custodial SharePoint* production. Please confirm that Rimini agrees.

Files Sent via AFW TransferFiles