```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2          BEFORE THE HONORABLE CAM FERENBACH, MAGISTRATE JUDGE
                             ---o0o---
 3

 4     ORACLE USA, INC., a Colorado      :
       corporation; ORACLE AMERICA,      :
 5     INC., a Delaware corporation;     :
       and ORACLE INTERNATIONAL          :
 6     CORPORATION,  a California         :
       corporation,                      :
 7                                       :
                    Plaintiffs,          : No. 2:10-cv-106-LRH-VCF
 8                                       :
              -vs-                       : November 20, 2019
 9                                       :
       RIMINI STREET, INC., a Nevada     : Las Vegas, Nevada
10     corporation; and SETH RAVIN,      :
       an individual,                    :
11                                       :
                    Defendants.          :
12     _____   :

13

14                 TRANSCRIPT OF STATUS CONFERENCE

15     APPEARANCES:

16     FOR THE PLAINTIFFS:       RICHARD J. POCKER
                                 Attorney at Law
17                               Las Vegas, Nevada

18                               JAMES C. MAROULIS
                                 Attorney at Law
19                               Redwood City, California

20                               LINDSEY McGRATH SHINN
                                 Attorney at Law
21                               San Francisco, California

22     Transcribed by:          Margaret E. Griener, CCR #3, FCRR
                                 Official Reporter
23                               400 South Virginia Street
                                 Reno, Nevada 89501
24

25     (Appearances continued on Page 2.)
```

2

1    APPEARANCES (Continued):

2

3    FOR THE DEFENDANTS:          ERIC VANDEVELDE
                                  Attorney at Law
4                                 Los Angeles, California

5                                 W. WEST ALLEN
                                  Attorney at Law
6                                 Las Vegas, Nevada

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LAS VEGAS, NEVADA, WEDNESDAY, NOVEMBER 20, 2019, 1:04 P.M.

2                              ---o0o---

3

4                    THE CLERK:  Oracle USA, Inc., et al., versus

5     Rimini Street, Inc., et al., 2:10-cv-106-LRH-VCF.  This is a

6     status conference.

7                    Counsel, enter your appearance, please.

8                    MR. POCKER:  Your Honor, Richard Pocker, Boies,

9     Schiller, Flexner, on behalf of the Oracle parties.

10                   THE COURT:  Thank you, Mr. Pocker.

11                   MR. MAROULIS:  Good afternoon, your Honor.

12    James Maroulis from Oracle for the Oracle entities.

13                   THE COURT:  Mr. Maroulis.

14                   MS. SHINN:  Good morning, your Honor.  Lindsey

15    Shinn from Morgan, Lewis & Bockius for the Oracle parties.

16                   THE COURT:  Ms. Shinn.

17                   MR. VANDEVELDE:  Good afternoon, your Honor.

18    Eric Vandevelde from Gibson Dunn on behalf of Rimini.

19                   THE COURT:  Mr. Vandevelde.

20                   MR. ALLEN:  And West Allen from Howard & Howard

21    on behalf of Rimini.

22                   THE COURT:  Thank you, Mr. Allen.

23                   Bear with me just a minute here.  Go ahead and

24    sit down.  I'm in a district courtroom (inaudible) and not at

25    my computer.

1                    There we go.  Number 1288, that must be the

2       right case.

3                    All right.  So, I've read through your

4       statement.  I want to first just thank the lawyers.  You guys

5       are doing a great job.  I know it's a really complex deal, and

6       you're working your way through it doing your best, I'm sure,

7       and it's very helpful to me to have a joint statement that's

8       so clear.

9                    First of all, I'm going to grant the motion to

10      seal, number 1285.  You know, there's just a few items

11      redacted out of the statement, and it appears to me good cause

12      which is the standard for nondispositive matters.

13                   Now, I'm just wondering as we talk about -- do

14      we need to seal the hearing?  I mean, can you avoid

15      mentioning -- you know, there's only kind of like the names of

16      entities, it seems like, and software and --

17                   MR. VANDEVELDE:  I think we can, your Honor.

18                   THE COURT:  Okay, if you need --

19                   MR. POCKER:  I think we can discuss it openly --

20                   MR. VANDEVELDE:  I don't think we'll need to.

21                   THE COURT:  Okay.

22                   MR. VANDEVELDE:  We can revisit at the end if

23      someone happens to blurt something out.

24                   THE COURT:  Well --

25                   MR. POCKER:  No, your Honor.  We only moved to

 1    seal because of Rimini Street's designation so we don't have a

 2    problem.

 3                THE COURT:  Okay.  Well, let's just go open

 4    record is always preferable, and I guess if something -- as

 5    you say, somebody thinks of something, then maybe we can

 6    describe it.

 7                You know, if you notice something, it might be

 8    good just to jump up because then Jerry can flag it and we can

 9    go around -- that would be better, if you can.  But if -- if

10    you don't, we'll do it.

11                Okay.  I also noticed, as a preliminary matter,

12    that there was some motions to seal, or actually there was a

13    motion to seal and then the sealed document numbers 1270 and

14    1271, which had to do with the attorney's fees motion that

15    then got withdrawn.  So those motions to seal have never been

16    ruled on because, of course, Judge Hicks never looked at the

17    motions.

18                So, anyway, I took a quick glance at them, and I

19    think it's appropriate, so I'm going to go ahead and order

20    that 1270 be granted, the motion to seal.

21                And, actually, I don't think there should be a

22    gavel on 1271, Jerry, that's just the actual unredacted

23    document so we can just remove that gavel, okay?

24                THE CLERK:  Yes, your Honor.

25                THE COURT:  All right.  So, now, it was reported

1    that it looked like you were going to finish the custodial

2    productions by the 18th, is that true?

3                    MR. VANDEVELDE:  Yeah.  Do you want me to give

4    you an update?

5                    THE COURT:  Yeah, that would be great.

6                    MR. VANDEVELDE:  Okay.

7                    THE COURT:  Why don't you give me an update.

8    Okay.

9                    MR. VANDEVELDE:  And, as I see it -- and,

10   obviously, interrupt me if there's other topics you want to

11   take up and in different orders.

12                    I think there's kind of two broad issues to

13   discuss.  One is an update on kind of where we stand on

14   custodial discovery and discovery more broadly, and then

15   second, obviously there are a few scheduling disputes to

16   hammer out.

17                    THE COURT:  Right.

18                    MR. VANDEVELDE:  On custodial discovery, just to

19   give your Honor a sense, in the last few months we have

20   reviewed over 500,000 -- I think between 500 and 600,000

21   custodial documents, and you'll recall that per the Court's

22   order we had to input into their search terms so that universe

23   of documents was driven entirely by Oracle's election.

24                    THE COURT:  Right.

25                    MR. VANDEVELDE:  The reason we have been able to

1   accelerate that is because we have, over the course of the

2   last few months, doubled capacity with contract reviewers.

3   Even since the last hearing I think we increased the number of

4   contract reviewers by 33 percent.  So that has led to some

5   speedup.

6                THE COURT:  Let me ask you real quick.  So of

7   the 500 to 600,000 documents reviewed, how many were actually

8   produced?

9                MR. VANDEVELDE:  Around 350,000, your Honor.

10               THE COURT:  Okay, great.

11               MR. VANDEVELDE:  There's still some substantial

12  work left to do on privilege logs.  I believe there's three

13  more, and those should finish around mid December.

14               THE COURT:  Okay.  So --

15               MR. VANDEVELDE:  Because those lag roughly

16  21 days.

17               THE COURT:  Everything has been produced, but

18  you still need to complete the privilege log.

19               MR. VANDEVELDE:  I just want to be crystal

20  clear, this is just custodial.

21               THE COURT:  Custodial.

22               MR. VANDEVELDE:  This is just one chunk.  It's a

23  large chunk but one chunk of the much broader universe of

24  documents.

25               THE COURT:  Right, the custodial ones that were

```
 1    the subject of the order that talked about --
 2                    MR. VANDEVELDE:  Yes.
 3                    THE COURT:  -- shifting the cost.
 4                    MR. VANDEVELDE:  Exactly, your Honor.
 5                    THE COURT:  Okay.
 6                    MR. VANDEVELDE:  And to give your Honor a sense,
 7    roughly the cost to date has approached, I think, 600,000
 8    documents.
 9                    THE COURT:  Wow.
10                    MR. VANDEVELDE:  And that's just, again,
11    custodial.  If you were to include noncustodial and the many,
12    many hundreds of hours, it's got to be many multiples of that.
13                    THE COURT:  I think you said 600,000 documents,
14    but you meant dollars?
15                    MR. VANDEVELDE:  I'm sorry, dollars, yes.
16                    THE COURT:  Thank you.
17                    MR. VANDEVELDE:  Okay.  So that's the state of
18    custodial discovery, so great progress.
19                    And then I thought I'd transition to some of the
20    scheduling issues.
21                    THE COURT:  All right.  We have the scheduling,
22    and then we have the one -- you know, the additional subpoena
23    duces tecum.  Those are the two issues, I think, right?
24                    MR. VANDEVELDE:  Yep.
25                    THE COURT:  Okay.  Let's do the scheduling
```

 1    first, both sides, and then we'll talk about the others.

 2                      MR. VANDEVELDE:  Okay.  First, I feel compelled

 3    to briefly address the statement in their papers that say

 4    we're dragging our feet.  It is unfair, it is wildly

 5    inaccurate.  We have been working intensely on this.  The

 6    amount of time devoted is a direct result of the breadth of

 7    their discovery requests.

 8                      This is somewhat of an unusual situation.

 9    There's no complaint, there's no claims, there's nothing we

10    can use to limit or cap in their discovery requests or tether

11    them to.

12                      We don't have the ability to seek discovery

13    ourselves, and we didn't have input into their search terms,

14    so we have been at the mercy of their discovery request.

15                      Now, in April, roughly six months ago, they

16    said, quote, "It's going to be narrowly tailored.  We're not

17    asking for much.  We want to test and verify."  That just has

18    not been borne out by the facts.

19                      This is all water under the bridge.

20                      THE COURT:  Right.

21                      MR. VANDEVELDE:  I'm not complaining about it

22    now, I'm just saying that we have been at the mercy of their

23    scope of discovery, and we have worked fastidiously,

24    diligently, efficiently, and hard at getting them just

25    mind-bogglingly large amounts of information, and that's what

1    they have.

2                    THE COURT:  Okay.

3                    MR. VANDEVELDE:  So in terms of discovery

4    itself, there have been, I think, two key breakthroughs which

5    are great.

6                    One is that because of the additional resources

7    that we devoted to custodial document review, that has been

8    completed much quicker than anticipated, which is great, and

9    because of that, we have agreed with Oracle to accelerate the

10   end of the close of fact discovery.  So the parties are in

11   agreement on that issue.  That was great news.

12                    The second piece of good news is that Oracle

13   agreed with us that as a matter of common sense we should have

14   fact discovery close and then start expert discovery.

15                    THE COURT:  Right.

16                    MR. VANDEVELDE:  Because, in Rimini II, it was

17   the opposite which led to many, many supplemental reports,

18   corrected supplemental reports, surrebuttal expert reports and

19   so on.  So that is now done.

20                    There are -- in my count, there are four issues

21   to resolve, all are important, one is exceedingly important,

22   and I'll get to that.  Maybe I'll save that for last.

23                    THE COURT:  Okay.

24                    MR. VANDEVELDE:  The first one is the motion to

25   compel briefing schedule.

```
 1                    THE COURT:  Right.

 2                    MR. VANDEVELDE:  That is on the chart on page --

 3                    THE COURT:  You want --

 4                    MR. VANDEVELDE:  -- 1.

 5                    THE COURT:  -- opposition December 20th, they

 6      want opposition December 13th.

 7                    MR. VANDEVELDE:  Yes.  The difference here is

 8      they propose to reduce the local rule and cut it in half.

 9                    THE COURT:  Right.

10                    MR. VANDEVELDE:  They have not proposed to cut

11      their own time in half in any way, and it just doesn't make

12      sense.

13                    If their concern is that if there's a ruling on

14      a motion to compel that requires us to produce documents, and

15      they need to be able to digest them in time, the answer is not

16      having our time for our opposition, it's just extending the

17      fact discovery by a week.

18                    And I would just note there's a bit of

19      unfairness in saying, "We get the full amount of time for our

20      reply, you get half the time for opposition."  In all the

21      federal courts I'm aware of, oppositions get more time than

22      replies.

23                    So we think we should just follow the local

24      rules.  They can file their motion to compel, if there is one,

25      and we should get what's required under the local rules.
```

1                    So that's the first issue.

2                    The second is the close of fact discovery.

3    Oracle has proposed January 9th --

4                    THE COURT:  Let me ask this, though.  Actually,

5    this kind of jumped out at me at the beginning.

6                    So if the final privilege log is due on

7    December 5th, I mean, is it anticipated there might be motions

8    to compel arising out of the privilege log?  It seems to me

9    that might be actually the most likely place to have motions

10   to compel come out of.

11                   MR. VANDEVELDE:  I'm not aware --

12                   THE COURT:  I'm sorry, I was kind of looking at

13   Mr. Pocker, but, yeah, go ahead and answer.

14                   MR. VANDEVELDE:  I just -- I'm not aware of

15   litigation, in almost a decade of litigation, over privilege

16   log issues.

17                   THE COURT:  Okay.

18                   MR. VANDEVELDE:  But I'll let Mr. Pocker speak

19   to that.

20                   THE COURT:  So you're not really anticipating

21   that, Mr. Pocker?

22                   MR. POCKER:  Well, at this time it's hard to

23   predict whether that would be a problem or not.  To date it

24   has not been.

25                   THE COURT:  Hasn't been, right.  So that -- I

 1  was kind of -- so that's encouraging.

 2              Okay.  Great.  Go ahead.

 3              MR. VANDEVELDE:  All right.  So moving to the

 4  second bolded entry in that table around line 19, the close of

 5  fact discovery, Oracle has proposed January 9th, and we have

 6  proposed January 24th, and let me tell you what's driving that

 7  difference.

 8              What's driving that difference is that under

 9  your Honor's order, Oracle has the ability for one Rule

10  30(b)(6) deposition.

11              THE COURT:  Right.

12              MR. VANDEVELDE:  We have a lot of experience in

13  this litigation with 30(b)(6) depositions.

14              It is likely to have -- we haven't received it

15  yet, it hasn't been noticed, so we don't know what's coming,

16  but based on our experience we know there's likely to be many

17  topics, it's likely to cover multiple products, it's likely to

18  cover people with different sets of responsibilities, and it

19  is likely to fracture into multiple people.

20              And, if fact discovery has to close by

21  January 9th, meaning those likely multiple depositions need to

22  happen by January 9th because these are fact witnesses, even

23  though they're corporate representatives, it's part of fact

24  discovery, we're talking about witness prep and travel right

25  during the holidays.  It's essentially right before the

```
 1    holidays, through the New Year's to that first week in
 2    January.
 3                  Rimini, like many technology companies, goes
 4    what you might call low power mode during that week.  People
 5    are traveling, kids are on break, and there's just kind of no
 6    good reason in our view to inflict that kind of logistical
 7    challenge and pain and burden on those multiple witnesses.
 8                  THE COURT:  Let me ask this.  What's the
 9    earliest -- did I set a window to do the 30(b)(6)?
10                  MR. VANDEVELDE:  No, they could have served it
11    whenever they wanted.
12                  THE COURT:  We can do it at any time.  I mean,
13    do you have -- I'll just ask, do you have a timeline for when
14    you're planning on noticing the 30(b)(6) depo?
15                  MR. POCKER:  Well, we had intended to serve
16    notice for a 30(b)(6) deposition in the very near future.
17    Remember, it's only November 20th right now.
18                  THE COURT:  Right.
19                  MR. POCKER:  And we're talking about
20    January 9th, January 24th, that's a long time from now.
21                  THE COURT:  I know.  It --
22                  MR. POCKER:  And --
23                  THE COURT:  -- kind of depends on when you send
24    the notice, because then you're going to -- I'm sure there's
25    going to be some discussion back and forth, you know.
```

 1                    MR. VANDEVELDE:  And it may very well be with

 2    people's travel, you know, witnesses' travel plans.  We can

 3    be -- the lawyers can be more accommodating, but with witness

 4    travel plans, it may just be -- and I think it is very likely

 5    to be that those two weeks, two to three weeks, frankly,

 6    before January 9th are going to be very, very difficult.

 7                    THE COURT:  I understand.

 8                    MR. VANDEVELDE:  And we just don't see the

 9    reason to not extend it a week or two.

10                    So that's the second scheduling issue.

11                    I'll skip to the one on the next page, around

12    line 8, the opposition to motion for order to show cause.

13                    THE COURT:  Right.

14                    MR. VANDEVELDE:  This is similar to the first

15    issue I raised.

16                    So your Honor is aware, there's no briefing

17    schedule set.  The only date right now on Oracle's anticipated

18    motion for an order to show cause why Rimini is not in

19    contempt of the injunction, that's the only date is Oracle's

20    initial motion for order to show cause.

21                    So we would like to build out a reasonable

22    briefing schedule.  This is a dispositive motion.  It's more

23    than a dispositive motion, it's a fundamentally critical

24    motion for the company.

25                    Under Local Rule 7-2, summary judgment motions

1     are three weeks.  Given the complexity of the technical issues

2     at play in Rimini II and Rimini I, the parties had five weeks

3     for summary judgment motions.  We are asking for four now.

4                    We think the issues and the complexity of that

5     opposition will be very much on par with the summary judgment

6     briefing, and so we're asking for four weeks.

7                    I will tell you that in Rimini II, the summary

8     judgment phase which completed almost a year ago, and those

9     are still pending, there were seven summary judgment motions,

10    they were very lengthy and detailed and complicated, and

11    that's why we got five weeks.  We think it's going to be just

12    as detailed and complex and complicated here.

13                    Two weeks is certainly -- it's less than a

14    summary judgment motion, it's just not fair, and we think we

15    need four weeks --

16                    THE COURT:  All right.

17                    MR. VANDEVELDE:  -- on that motion.

18                    THE COURT:  I understand.

19                    MR. VANDEVELDE:  All right.  Let me turn to the

20    last scheduling issue, and I want to emphasize this is the

21    most important issue for Rimini on the table today, and, that

22    is, how much time we have for our rebuttal expert reports and,

23    in particular, our technical expert's rebuttal analysis of

24    their technical experts.

25                    It is -- it is just absolutely 100 percent

1    critical that we have enough time.  We have fought long and

2    hard about it.

3              We came up with our best estimate based on a

4    decade of litigation and what has happened in Rimini I and

5    Rimini II, and we think we need at minimum seven weeks.

6              And we haven't -- we've had conversations with

7    Oracle, and we've just said, "Look, this is the minimum.  This

8    isn't a split-the-baby situation."  This isn't a -- we are

9    telling you the minimum we need to be able to accomplish these

10   expert rebuttal reports in a way that allows us to defend

11   ourselves in critical litigation.

12             Let me talk about why it's so important and why

13   it's necessary, and there's a bunch of reasons.

14             First is that these are complex issues.  This is

15   complex software.  These are highly technical support

16   processes.  We are talking about software products that are

17   comprised of thousands, if not tens of thousands, of files of

18   code.  That code needs to be reviewed and analyzed.

19   Application of things like the abstraction filtration

20   comparison tests need to happen.

21             And the second reason involves a massive amount

22   of discovery.  I already talked about custodial discovery that

23   approaches 600,000 documents, but there are just truly immense

24   amounts of technical data that have been produced in the last

25   several months.

1             THE COURT:  Both ways -- or, no, you haven't

2    really gotten anything, it's everything you're producing --

3             MR. VANDEVELDE:  We don't have the ability to do

4    discovery.

5             THE COURT:  -- that's right.  Okay.

6             MR. VANDEVELDE:  It's been completely

7    asymmetrical.

8             And that would include -- I don't know if your

9    Honor recalls from last April, but the AFW database --

10             THE COURT:  Right.

11             MR. VANDEVELDE:  -- and source code, SharePoint,

12    Salesforce, Jira, Devtrack, we've produced much of that, we

13    have exported and produced some of that.  We have provided

14    live access to read-only versions of some of those massive

15    data sets, and so there's just an incredible amount of

16    information.

17             And then, third, and this is key, is we don't

18    know what we're shooting at yet.  We don't know what their

19    factual theories are as to why we violate the injunction.

20             Again, we don't have a complaint, and there's no

21    claims.  Oracle has told us, accused us, "We think you're

22    violating the injunction."  We've said, "How can we violate

23    the injunction, we fundamentally changed our processes years

24    ago, years before the injunction went into effect."

25             If you recall, your Honor ordered Oracle to

1   write a five --

2                   THE COURT:  I remember.

3                   MR. VANDEVELDE:  -- five paragraph -- I don't

4   know if your Honor has actually reviewed it.  It's a very,

5   very --

6                   THE COURT:  Not recently, but --

7                   MR. VANDEVELDE:  -- it's a very, very short

8   letter.

9                   Your Honor, on June 21st, ordered Oracle to,

10  quote, "State precisely" --

11                  THE COURT:  Right.

12                  MR. VANDEVELDE:  -- "and unambiguously each

13  separate process, practice, or other conduct Oracle is

14  accusing."

15                  Oracle complied with the letter of your Honor's

16  order, and on June 28th sent us a letter.  It's very short,

17  but it doesn't precisely or unambiguously say anything, your

18  Honor.

19                  It doesn't identify a single specific Rimini

20  technical process.  It doesn't cite any facts or evidence.  It

21  doesn't identify any specific client or software update where

22  Oracle thinks Rimini engineers have violated the injunction.

23  All it does is literally parrot back the terms of the

24  injunction itself.

25                  So we actually raised that deficiency with

1   Oracle in August and said, "You haven't provided the type and

2   specificity of information that your Honor required of

3   Oracle," and they have never responded.

4                THE COURT:  We discussed this.  The letter is

5   filed here somewhere, isn't it?

6                MR. VANDEVELDE:  They are filed -- they may have

7   been attached to a filing in September.

8                THE COURT:  Oh, well, yeah, I vaguely remember

9   it, probably enough, I guess.  Yes.

10               MR. VANDEVELDE:  Yeah.  So let me just kind of

11  round out the thought on this, is we asked them, look -- we

12  call it the five things letter.  "Your five things letter

13  didn't tell us what you're accusing.  You don't talk about any

14  specific technical process whatsoever."

15               We asked them -- you know, we pointed out those

16  deficiencies, and they never responded, and so we don't --

17  still to this day we don't know what they're accusing.

18               Why is that important?  That's important for a

19  couple of reasons, because Rimini II played on it exactly like

20  this, your Honor.  For years of litigation we did not know

21  what their infringement theories were which are akin to their

22  theories about violating the injunction.  We found out when

23  they submitted their technical expert reports.  That was, I

24  think, in the spring of 2018.

25               When they did, your Honor, those five boxes of

1    materials over there comprising 29,000 pages, that is just two

2    reports and exhibits.  It is not the data that was analyzed,

3    it is not all the code that was analyzed, it was not the data

4    that we had to transfer.

5                    The transfer alone, literally the electronic

6    copying of the data that underlied those reports took three to

7    four weeks just to copy electronically.  That's the volume of

8    data that was at issue in Rimini II, and that's what we think

9    is coming when we see their expert reports in this matter.

10                    The scale of discovery is -- here is on par with

11    what the scale of discovery was in Rimini II.  It is literally

12    humanly impossible for our expert, and we only have one

13    technical expert who is not supported, unlike Oracle's

14    experts, with an army -- I think they have a dozen or more

15    supporting technical experts to support their two main

16    technical experts, their testifying experts.

17                    We have one professor.  He's a -- he works hard,

18    he's smart, he's efficient, but he's also a full-time

19    professor at Duke University, and it is literally impossible

20    for us, even if the information is a half or a quarter of what

21    happened in Rimini II, we need seven weeks.  We've done the

22    math.  We've looked hard at this, and we cannot put on a case

23    that we're entitled to put on to defend ourselves without

24    seven weeks.

25                    And we've tried to engage with Oracle.  They

1    increased what they said from one to two weeks, and it's just

2    not enough.  So we are asking for seven weeks for that.  That

3    is the most important issue on the table for Rimini today

4    because we need to have the time to defend ourselves.

5                    THE COURT:  All right.  I understand,

6    Mr. Vandevelde.

7                    MR. VANDEVELDE:  Okay.  Now, I'm happy to

8    address the subpoena issue --

9                    THE COURT:  Let's do that separately.

10                    MR. VANDEVELDE:  Okay.

11                    THE COURT:  It's easier for me if we do it one

12   at a time.

13                    MR. VANDEVELDE:  I'll just preview that issue.

14   It shouldn't be teed up today, but I'm happy to talk about it

15   to the extent you want to.

16                    THE COURT:  Okay.  That would be great.  Thank

17   you.  Let's see if we can't get the schedule worked out first,

18   but the subpoena I don't think will affect the schedule.

19                    So, Mr. Pocker.

20                    MR. POCKER:  Well, your Honor, and as

21   Mr. Vandevelde characterized it, a lot of this is water under

22   the bridge.

23                    We do appreciate the fact that with this Court's

24   framework and encouragement, Rimini Street has finally started

25   to produce what they needed to produce, and they've made

 1    admirable progress, and that's why we have submitted the

 2    proposed scheduling order that we did.

 3                   It's November now, November 20th.   As

 4    Mr. Vandevelde confirmed, pretty much custodial production on

 5    behalf of Rimini Street is done.   Noncustodial he says is

 6    pretty close.

 7                   The privilege log, as the Court has noted and he

 8    has noted, there could be issues there, but that's not

 9    something we're terribly worried about.

10                   So it's really time to wrap this all up, and the

11    close of discovery date that we've proposed, January 9th, it's

12    close to the holidays, but in light of the progress that's

13    been made under the Court's framework for discovery here,

14    we're in a position to end all of this with respect to

15    discovery on January 9th.

16                   THE COURT:  Well, okay.  So, I mean, it kind of

17    brings up the subject, because when you notice the 30(b)(6)

18    depositions, there's going to be topics -- I'm sure there's

19    going to be some meet and confer about which topics are

20    appropriate, and counsel should succeed with most of that, and

21    then they've got to line up their people.  By the time you get

22    there, you are going to be into the holidays it seems like.

23                   MR. POCKER:  But it didn't make any sense for

24    us, your Honor, to do a detailed Rule 30(b)(6) --

25                   THE COURT:  Right.

1            MR. POCKER:  -- notice without having the

2    custodial production.

3            THE COURT:  Right.

4            MR. POCKER:  And as soon as we get that, and

5    with the representations that have been made and the progress

6    that's been made, we'll be able to get that notice out.

7            If it goes out now at the end of November, I'm

8    confident we have enough time to meet and confer and go back

9    and forth and establish a framework in which we can conduct

10   that deposition after the first of the year, maybe even at the

11   end of December.

12            THE COURT:  And that's the last thing to do in

13   discovery before the --

14            MR. POCKER:  Well, absent some issue that might

15   result --

16            THE COURT:  The motion to compel.

17            MR. POCKER:  -- in a motion to compel and a

18   further order from this court, yes.

19            THE COURT:  Okay.

20            MR. POCKER:  We have, in fact, lessened Rimini

21   Street's burden by a concession that we made in the last few

22   days.

23            As the Court knows, they've been required at

24   various times to freshen their disclosures to update the

25   information, but we have agreed with them that as of November

1      18th, post that date, they will not have to produce the kind

2    of information they have produced in the noncustodial variety.

3                    THE COURT:  Okay.

4                    MR. POCKER:  And that -- and that's a

5    significant concession on our part to move this thing along

6    because Rimini Street, the end of the year is a big time with

7    respect to the productions they make to their customers with

8    respect to tax updates and regulatory updates.  So we're

9    willing to forego that burden on them with the understanding

10   that we're moving this thing along.

11                   Much has been made about the schedule, and

12   Mr. Vandevelde wants to say basically that it's not Rimini

13   Street's problem that this took so long to get where we are

14   today, but, you know, we asked for information regarding what

15   we believed to be the violations of the injunction back in

16   January of this year and did not get a satisfactory response.

17   All we got back was, "Well, you know, it's still in front of

18   the appellate court," or, "We don't really understand what

19   you're asking."

20                   THE COURT:  I remember, we talked about all

21   that, yes.

22                   MR. POCKER:  I'm sorry?

23                   THE COURT:  I remember we went through all of

24   that when we were deciding, and there was also the pending --

25   whether the Rimini II discovery could be used in Rimini I.

1                    MR. POCKER:  Sure, sure.

2                    THE COURT:  There were a lot of issues.

3                    MR. POCKER:  There was a lot that dragged this

4     on.

5                    With respect to the five -- the wish list, the

6     five big things that we find wrong with their conduct and the

7     injunction, if the Court will recall, we were limited to a

8     sentence about each one.

9                    THE COURT:  I think so.

10                   MR. POCKER:  So it isn't as if we're going to

11    give them 20 pages of detailed analysis.

12                   But, again, it's different.  Even in the

13    interrogatories about infringement allegations in Rimini II,

14    there's an injunction out there that has been analyzed by the

15    appellate court, interpreted every which way.  All the

16    confusion that they have raised in their pleadings has been

17    dispensed with.

18                   They know what it is we find objectionable about

19    what they do and how it violates the injunction, and the

20    notion that somehow they're in the dark and they're about to

21    get blindsided with some theory that they've never heard of as

22    to why it violates the injunction is completely misplaced.

23                   It's interesting, these five boxes over here

24    really kind of illustrate our point with respect to why we can

25    have an expeditious schedule here.

1             If you recall, early in these proceedings the

2    view of -- and I think it was Mr. Perry before Mr. Vandevelde

3    became more actively engaged in these hearings, he was

4    saying, "You know, all of this is part of Rimini II, and, as a

5    result, we should wait and see what happens in Rimini II and

6    the summary judgment motions and all that."

7             Well, those five boxes kind of explain what was

8    the problem in Oracle's view in Rimini II.  So they're not in

9    the dark as to what's going on here.

10            And the representations made by Rimini Street

11   throughout these proceedings is, "We fixed everything that was

12   adjudicated in Rimini I, we did it before that case was even

13   tried.  As a result, the Rimini 2.0," I think they've referred

14   to it, "is what we've done, we've made a few changes since the

15   injunction was ordered, but that's the state of play, and we

16   don't think it violates the copyrights laws, and we don't

17   think it violates the injunction."

18            Well, okay.  If that's what you're doing, you

19   know already much of what is accused about your operations

20   with respect to copyrights and with respect to the injunction

21   because the injunction and the copyright -- they cover the

22   same terrain.

23            So we're indifferently situated.  We're not a

24   tabula rosa where all of a sudden they're going to get this

25   expert report from us on January 23rd, and, "Oh, my God, it's

1   all kinds of stuff we've never heard about, we can't respond

2   to."

3               In many instances they could probably use the

4   same rebuttal reports or surrebuttal reports and whatnot that

5   they've developed in Rimini II.  By their own statements in

6   this court, we didn't change much since November of 2018 when

7   this injunction went into effect.

8               So the burden that they say they need seven

9   weeks to address, it just isn't there.  This is just a whole

10  different type of case.

11              The other thing that they persist in saying is

12  that this is a dispositive motion, it's like the summary

13  judgment motion, you know, you wouldn't be required to respond

14  to a summary judgment motion in two weeks.

15              Well, summary judgment motions are summary

16  judgment motions.  We have a different situation here.  We

17  have the enforcement of a court order, and it needs to be seen

18  in that context.

19              Now, are there technical issues and whatnot?

20  Yes, there are, but all of the information about what they do

21  comes from Rimini Street.  There wasn't any discovery like --

22  I think Mr. Vandevelde made a representation or comment

23  basically that he didn't have reciprocal discovery rights.  He

24  doesn't need them.

25              Their experts have had access to everything

1    Rimini Street does for years and years, and if they're using

2    the same experts, they're the same ones who analyzed their

3    work and system and determined that there wasn't anything that

4    violated the copyright laws or violated the injunction by

5    proxy, so the burden argument is overstated.

6              With respect to being on notice, they can't have

7    it both ways in the sense that throughout these proceedings

8    they've come in and said, "Oh, the injunction is very vague,

9    we don't know what it covers so we don't really know what can

10   be accused or how it could be running afoul of this."

11             Then out of the other side of their mouths they

12   say, "We've been in compliance not only with copyright laws

13   but the injunction.  See Rimini II, and you'll understand

14   exactly what we're saying."

15             So either they know what their own company is

16   doing, they know how their own processes work, or they don't.

17   It's Oracle actually who has had to undertake the discovery

18   burden in this case to make sure their representations about

19   what they do are actually what they do.

20             THE COURT:  But their problem is they're going

21   to say so your experts are looking at all that, and now

22   they're going to come up with the details of a technical, you

23   know, foundation on which to base the contempt argument, and

24   they don't know what that's going to be because --

25             MR. POCKER:  Well, so --

1          THE COURT:  -- they won't know what it is until

2    they get it, right?

3          MR. POCKER:  Well, that's almost always the case

4    to a certain degree.

5          THE COURT:  I know, but I think the point here

6    is that when you're talking about all this highly technical

7    computer -- thousands of files and programming and all that

8    that --

9          MR. POCKER:  Well, but we can put that in

10   context, too, your Honor.

11         THE COURT:  Okay.

12         MR. POCKER:  Some of the exhibits are these

13   mind-numbingly 500, 600 pages of -- printouts of data

14   basically, but the meat of the argument, of course, is in the

15   reports and the analysis of that.

16         Now, in this instance we bore the burden of

17   going in and saying, "What you're doing violates the

18   injunction," so we have to segment and specify particular

19   aspects of their operation and why we think they offend it.

20         They already should know how their operation

21   works.  Their experts have already been busy doing reports in

22   Rimini II, the discovery of which can be now used in this case

23   thanks to Judge Hoffman's order.

24         So they know what's -- all they have to do is

25   say, "Okay, what do you say -- you think it works this way,

1    no, we have already looked at this, it doesn't work that way,"

2    or, "It works that way, but it doesn't violate the

3    injunction," which isn't an expert issue, by the way.

4                The experts are not the ultimate -- you know, he

5    may be a professor at Duke, but he's not going to rule as to

6    whether Judge Hicks' injunction has been violated or not.

7                So I think there's an effort to make this look

8    more overwhelming than it actually is.

9                Now, the original schedule that we had, they

10   were required to do rebuttal experts a week after we came up

11   with ours, and ours was on a very short fuse, too, considering

12   when discovery activities began.  I think both dates were in

13   October, and then we had to turn around and file that motion

14   toward the end of October as well.

15               Not that much has happened to make this much

16   more complex than that case was back in the late summer and

17   early fall.

18               He talks about the volume of what's been

19   produced, but it's essentially their business records and

20   their operating systems so that we can determine whether there

21   are specific instances of violating these provisions of the

22   injunction.

23               It's not as if every single -- you know, every

24   single electronic document is a highly technical description

25   of their process which needs to get evaluated, it's, "Okay,

1    who did you send what to and at what time," and then the

2    overall systems are analyzed.  It's not as if there's 600,000

3    different documents that need to be digested by an expert.

4              And it really will come down to something as

5    basic as how does their system work, which they should already

6    know and their experts are already prepped on, and then how

7    does that compare with what the Court determined is an

8    unlawful practice.

9              THE COURT:  And one of the issues is doing it

10   through the cloud versus doing it on their customers'

11   computer, you know?  Wasn't there an issue like that in the

12   injunction, or am I getting confused with something else?

13             MR. POCKER:  How would --

14             THE COURT:  Yeah, in other words, when they

15   would go in --

16             MR. POCKER:  Oh, cloud hosting versus on the

17   facilities?

18             THE COURT:  Yeah, on the facilities.

19             MR. POCKER:  Well, that's almost --

20             THE COURT:  I mean, that's not that technical is

21   my point.

22             MR. POCKER:  No, I -- that's why I'm struggling

23   to answer -- I don't know that that's the kind of --

24             THE COURT:  That's not even an issue now?

25             MR. POCKER:  -- issue.  I think what it -- I

1   mean, it may turn out -- I don't want to --

2                    THE COURT:  Or a legal issue, I guess, the

3   injunction governing cloud hosting as opposed to --

4                    MR. POCKER:  Right.  In many ways that will be

5   decided by the Court deciding, okay, what does the facilities

6   clause mean, and it's already ruled in Rimini I, so we've got

7   to know where that's going.

8                    THE COURT:  Right.

9                    MR. POCKER:  And then is this factual scenario

10  where, no, it's over here on the cloud as opposed to on a

11  Rimini server, whatever the distinction or facts show, yeah,

12  it's application of the prior ruling in Rimini I, the language

13  of the injunction, and what are they doing.  Yeah, that's not

14  something that's going to require dueling experts.

15                    THE COURT:  Experts.  Okay.

16                    MR. POCKER:  So there are many of those issues

17  that really aren't even expert issues.

18                    And a lot of this is -- the burden is really on

19  our side because we've got to digest all of what they're

20  doing, try to make some sense out of it, and analyze whether

21  or not it violates the injunction or not.

22                    The defense is pretty easy if they've done their

23  homework in Rimini II because they claim that they changed

24  everything and they're not doing anything that was embraced by

25  Rimini I and they're not in violation.

```
 1              So I think we can get lost in number of boxes or
 2    number of documents reviewed in this -- you talk about
 3    asymmetry, the asymmetry actually disfavors Oracle because
 4    they know a whole lot more about what they're doing and what
 5    they have than we may based on this exchange of information.
 6    So that's why we picked the kind of dates we did.
 7              Very briefly on the motions to compel, the --
 8    I -- we don't always agree on how issues should be resolved,
 9    but both sides are pretty darn good at having meets and
10    confers.  We've exchanged a lot of written back and forth.  So
11    it's not as if there's any great mystery once we file a motion
12    to compel as to what the respective positions are.
13              During Rimini II we often had this process with
14    respect to discovery motions where Judge Hoffman would have us
15    submit a joint letter with our positions, and then he would
16    tell us if he wanted briefing or not.
17              THE COURT:  Right.
18              MR. POCKER:  So these are not major, huge
19    endeavors such as responding to a summary judgment motion or
20    anything else.
21              So in order to move this thing along -- and who
22    knows, there may not be any motions to compel, you know,
23    everything is premature until we see what we get in this
24    scenario.
25              But if there are, allowing them a week to
```

1    respond -- and if the Court wants to shave down our reply time

2    to three days or something like that, we could certainly live

3    with that, but I think the motion to compel time frame that

4    we've proposed is appropriate.

5               As I mentioned, the expert issues are far less

6    onerous than at first blush some might think, and as a result

7    our proposal, which wraps up expert discovery by the beginning

8    of February, is doable in this case and it's appropriate.

9               When you put into effect the schedule we've

10   proposed, this will be teed up with our motion for an order to

11   show cause, their response, and any reply by the end of March

12   is still a year and a half after the entry of the injunction

13   and 14 months after we first contacted them and said, "We

14   think what you're doing is a violation of the injunction."

15              So we've been patient.  We're not trying to

16   railroad anything here.

17              I agree with Rimini Street that it's an

18   important issue for them, but it's not one that comes as a

19   surprise, and it's completely in their control whether they

20   abide by the injunction or not.  We're entitled to have that

21   injunction enforced.

22              We've made concessions about what we sought in

23   discovery.  We've made concessions on the timing.  It's time

24   to move this along.  And they may not think a difference of

25   three months from March to July or whenever their schedule

1    finally plays out --

2                THE COURT:  June 9th.

3                MR. POCKER:  -- but it is a big difference, your

4    Honor.

5                THE COURT:  I understand, Mr. Pocker.

6                All right.  Thank you.

7                MR. POCKER:  Are there any other scheduling

8    issues you --

9                THE COURT:  No.

10               MR. POCKER:  -- you want us to address?

11               THE COURT:  No, I think I know what I'm going to

12   do here, and I want to hear one more time from Mr. Vandevelde,

13   though, of course.

14               MR. VANDEVELDE:  Just a couple of

15   clarifications.

16               On the motion to compel, again, it's not the one

17   driving this I don't think.

18               THE COURT:  Right.

19               MR. VANDEVELDE:  But there's just no reason -- I

20   have yet to hear a reason for deviating from the local rules.

21   The local rules say we get a certain amount of time, there's

22   been no articulation whatsoever for a reason to deviate from

23   that.

24               THE COURT:  All right.

25               MR. VANDEVELDE:  On the rebuttal experts, which,

1   again, is our most important issue, Oracle's position seems to

2   be it's your business, you operate it, be prepared to defend

3   every aspect of it that exists.

4              And we've been through this rodeo before.  I

5   know Mr. Pocker hasn't been involved in expert discovery.  I

6   know he has not been involved in discovery meet and confers in

7   the years I've been in the case, but we've been through this

8   rodeo before.

9              In Rimini II, they digested the universe of

10  information we produced.  It was large just like it is here.

11  They produced 8 terabytes of data that took four weeks to

12  electronically copy, and it took us seven more weeks for our

13  expert to analyze and prepare a rebuttal technical report.

14             That is what is going to happen here.  I'm

15  confident that when we get their report it is going to be a

16  massive turn over of information relying upon an even larger

17  universe of underlying data, and we need to be able to defend

18  ourselves.

19             We have looked hard at this.  We haven't moved

20  from seven weeks because we put out our final and best number

21  right away.  That is our minimum.  And so we would ask that we

22  be allowed the time sufficient to prepare a defense.

23             THE COURT:  All right.

24             MR. VANDEVELDE:  Thank you.

25             THE COURT:  Thank you very much.

1              Well, okay.  Well, you know, I thought about

2    this ahead of time, and both counsel's arguments were very

3    helpful and persuasive so let me just start -- the beginning

4    is a little easier.

5              On the opposition to motions to compel, I'm

6    going to have the date -- assuming the motion to compel, if a

7    motion to compel is filed on December 6th, which is the last

8    day to do it, and -- the opposition will be due December 16th.

9    So I'm giving ten days for that.

10             Now, let's just think about this.  If you file a

11   motion to compel earlier than December 6th, I still think --

12   we'll go with the same briefing schedule.

13             So, you know, if none is filed by December 6th,

14   then there won't be any motions to compel.  But if it's filed

15   on or about before that, I'm going to give a deadline based on

16   filing December 6th, but if it gets filed earlier, then just

17   figure the ten-day -- figure the period like I've given a

18   ten-day period there.  Of course, if there's an intervening

19   weekend, then you've got to move it to the final day.

20             All right.  Then the reply, I would go with -- I

21   would go with December 20th on that because that will shorten

22   down the time to four days instead of a week, and then same

23   way it will operate.

24             All right.  Now, close of fact discovery.  You

25   know, on this one I pretty much was thinking I'd split the

1    baby on it because it's so hard to know, so that's what I'm

2    going to do; January 17th, 2019 [sic].  That gives you another

3    week in the new year to schedule in the 30(b)(6) depositions

4    if you need it.

5              And then the initial expert I decided to go

6    with -- then that would be -- everyone agrees two weeks so

7    that would be January 31st, 2019, for the --

8              THE CLERK:  2020?

9              THE COURT:  2020, thank you, Jerry.

10             And then the rebuttal expert disclosure, I was

11   thinking of shorter dates.  I'm going to have to recalculate

12   everything.  I have moved a little bit, you've persuaded me,

13   Mr. Vandevelde.  So I'm going to go with five weeks.  So five

14   weeks after the original expert.

15             So, Jerry, what's five weeks from January 31st?

16   Five weeks from January 31st?

17             THE CLERK:  That would be Friday, March 6th,

18   your Honor.

19             THE COURT:  Okay.  So that will be March 6th.

20             And then the close of expert discovery -- what

21   was I doing there now?  I think I was going to do ten days

22   after that one so what's ten days -- that would be March -- is

23   March 16th a weekday?

24             THE CLERK:  It's a Monday, your Honor.

25             THE COURT:  Okay.  So March 16th would be the

1     close of expert discovery.

2                  So then the motion to show cause, everyone said

3     two and a half weeks.  You said the 16th was a Monday?

4                  THE CLERK:  Yes, your Honor.

5                  THE COURT:  Okay.  So that would be the 23rd,

6     24th, let's make it the 25th, March 25th, but the --

7                  MR. POCKER:  Your Honor?

8                  THE COURT:  Yes.  Have I gotten off track here?

9                  MR. POCKER:  With respect to the expert

10    discovery period, because we proposed a much earlier one, part

11    of the basis for doing that was our expert witness is set to

12    be testifying in another trial in March, so that I think the

13    earliest she could -- at least one of the experts,

14    contemplated experts could do a deposition would be March 20th

15    and after.

16                  THE COURT:  Okay.

17                  MR. POCKER:  So if we have an expert discovery

18    period, if we could have it close March 27th or shortly

19    thereafter, that would be --

20                  THE COURT:  Okay.

21                  MR. VANDEVELDE:  Your Honor, if I could just

22    interject, maybe what makes sense, it would be fair, is to

23    accommodate her schedule we would get -- why not just build

24    that into the rebuttal expert disclosures?

25                  THE COURT:  I was just going to do that.

1          MR. VANDEVELDE:  Thanks, your Honor.  We're on

2    the same page.

3          THE COURT:  I mean, it only makes sense

4    because --

5          MR. VANDEVELDE:  Yeah.

6          THE COURT:  Yeah.  So, actually, let's move that

7    out, so I'll give you six weeks for the rebuttal expert

8    disclosure.

9          So, Jerry, so that would be March 13th, I think?

10   I'll let somebody read this after you're done because I've

11   written over my numbers on here.

12         So that would be March 13th then for --

13         THE CLERK:  That's correct, your Honor.

14         THE COURT:  Okay.  Thanks.

15         And then what date do you want for the close of

16   expert discovery, Mr. Pocker?

17         MR. POCKER:  March 27th, your Honor?

18         THE COURT:  Okay.  So that will be March 27th is

19   the close of expert discovery, and then everyone agreed two

20   and a half weeks after that, so what's two and a half weeks

21   after March 27th, Jerry?

22         THE CLERK:  That takes us to April 15, your

23   Honor.

24         THE COURT:  Okay.  April 15.  And then -- how

25   much time -- I was going to give three weeks on the opposition

1    to the motion to show cause, so what's three weeks from

2    April 15th?

3                    THE CLERK:  We're looking at May 6, your Honor.

4                    THE COURT:  May 6, and then two weeks after that

5    would be May 20th, I guess.

6                    THE CLERK:  That's correct.

7                    THE COURT:  Would be -- so we ended up being a

8    little more toward Rimini's side but mainly to accommodate

9    Oracle's expert witness.  So that's the way the chips fall

10   sometimes.

11                   All right.  So does somebody want to read those

12   dates back just one time so Jerry can have it on the record

13   when he goes to do the minute order?  Kind of starting from

14   the beginning, and we'll all read along.

15                   MR. VANDEVELDE:  I think I have them.

16                   THE COURT:  Okay.

17                   MR. VANDEVELDE:  I'm happy to.

18                   November 18th, December 5th, December 6th,

19   December 16th, December 20th, January 17th, January 31st,

20   March 13th, March 27th, April 15th, May 6th, May 20th.

21                   THE COURT:  All right.  Those are the ones I had

22   so -- okay.

23                   So now we just have the subpoena, right?  Let's

24   see, sort of like a motion to quash I guess.

25                   MR. VANDEVELDE:  Exactly, your Honor.  It should

1    be styled as a motion for leave to amend your Honor's order.

2                    THE COURT:  Okay.

3                    MR. VANDEVELDE:  Your Honor gave them five

4    subpoenas, they served five subpoenas, they got records from

5    five subpoenas.  They don't like the records for one of them,

6    and they want a sixth subpoena.

7                    I would also say that in addition to your

8    Honor's limitation, or in excess of your Honor's limitation,

9    they have also served, I believe, eight Public Records Act

10   requests so they're already collecting information via other

11   ways or well beyond what your Honor contemplated.

12                   We didn't run to the Court and complain, but we

13   think it was in circumvention of the spirit of your Honor's

14   order about five subpoenas, but they have already served that

15   fifth subpoena.  They have already received records from that.

16                   Their statement that we somehow misled them

17   about the nature of the information is just patently false.

18   We said here is information, it is information relating to

19   software updates, documentation only, updates relate to

20   software updates, and they have known about our system -- they

21   have been accessing our systems for years.  We don't think

22   they should be entitled to have a sixth subpoena.

23                   THE COURT:  I think I understand your position

24   pretty clearly.

25                   MR. VANDEVELDE:  I'll also just say as a process

1  perspective, this shouldn't be at a status conference, this

2  should be a motion for leave to amend.  If they want to brief

3  it, we're happy to oppose it, and we can have a separate

4  hearing.  I'm happy to discuss it.  Obviously I already have.

5            THE COURT:  Right.

6            MR. VANDEVELDE:  But we don't like the fact that

7  two days before a status conference they want to raise this

8  issue with your Honor.

9            THE COURT:  In the joint report.

10           MR. VANDEVELDE:  Yes.

11           THE COURT:  All right.  You have preserved your

12 position on that.

13           Mr. Pocker.

14           MR. POCKER:  Well, your Honor, it is an unusual

15 procedural posture, but if Mr. Vandevelde's position is we

16 should do it as a motion to compel later and --

17           THE COURT:  Well, I think he says a motion to

18 amend my order because he's saying you already got --

19           MR. POCKER:  Well, that's --

20           THE COURT:  -- the results of five subpoenas and

21 so you want to be allowed an extra -- he said substitute

22 which, you know, I think he rightly points out it's not really

23 a substitute, you want an additional one, and you want it

24 because you claim they deceived you in the interrogatory

25 answer.  They say you misread it, but they didn't deceive you.

1            MR. POCKER:  No, I understand what their

2    position is, but it really doesn't matter whether they

3    intentionally deceived us or not.

4            THE COURT:  Okay.

5            MR. POCKER:  Our position is that the

6    language -- it says, "Exhibit D lists information relating to

7    software updates and fixes that Rimini has implemented for JD

8    Edwards and PeopleSoft clients since November 5th, 2018," and

9    then they gave us hundreds of pages of a list of all these

10   supposed updates and fixes.

11           So we selected for our -- two of our five

12   subpoenas dealing with JD Edward software, the two that seemed

13   to have -- or that according to their records received the

14   most updates and fixes, and in the end it turned out they just

15   received documentation regarding updates and fixes.

16           But when you read that, they said, "Okay, here's

17   my list of everybody who got the -- JD Edward and PeopleSoft

18   clients who received updates and fixes."  So we got something,

19   but we didn't get what we were led by inaccuracy -- we don't

20   need to go deceit, that's all water under the bridge.

21           THE COURT:  Right.

22           MR. POCKER:  But it's not very well written,

23   it's inaccurate, and all we were looking for -- and they can't

24   say it was sprung on them in the last couple of days because

25   my colleagues have been discussing this in the past.  It's

```
 1     just a way of making this discovery complete and meaningful

 2     for the purposes of Judge Hicks' evaluation.

 3                    And this stuff about the public records, good

 4     lawyers get their information from --

 5                    THE COURT:  Yeah, I've got no problem with you

 6     doing that.

 7                    MR. POCKER:  And we're not trying to circumvent

 8     the Court's order at all.  You know, it's another avenue

 9     available to get information.  It does not burden Rimini

10     Street.

11                    THE COURT:  Of course.

12                    MR. POCKER:  And we pursued that.  It shouldn't

13     be so to the derogation of what was contemplated by discovery.

14                    In fact, Rimini Street uses these public record

15     requests in order to find out Oracle pricing for a business

16     competitive advantage so let's not be naive about what's going

17     on there.

18                    So this is simply an accommodation that we've

19     asked of the Court, is to allow us to have one more subpoena

20     that we can direct to a client who actually received updates

21     and fixes --

22                    THE COURT:  Right.

23                    MR. POCKER:  -- because otherwise we'll never

24     get information relevant to what they're doing.

25                    THE COURT:  I understand.
```

1          Anything more, Mr. Vandevelde?

2          MR. VANDEVELDE:  I think that Oracle should file

3   a motion for leave to amend.  I think it's inappropriate that

4   it be raised at a status conference.  We're happy to oppose

5   it.

6          We think there's no merit to the argument or

7   even the suggestion that we somehow misled them in our

8   interrogatory response, and we're happy to brief it if they

9   want to bring that motion.

10          THE COURT:  Well, I'm going to tell you, based

11   on the record I have here, I'm not going to allow another

12   subpoena.

13          You can always file a motion.  I'm not going to

14   order you to file a motion.  You can if you want to.  I'm sure

15   we'll brief it up, but just having it added in here in the

16   statement, I'm not going to grant it.

17          But I guess I can say, since you brought it up,

18   that I'm kind of inclined -- I probably wouldn't grant it

19   anyway even if you filed the motion, I got to tell you,

20   because I feel like you've gotten an awful lot of discovery

21   here.

22          You know, five -- five subpoenas was not

23   required by anything other than I just picked a number that I

24   thought would be fair.  I could have as easily said four, you

25   know.

1           So I think I've done my best to give Oracle a

2    fair shot at getting the information they need to enforce the

3    injunction, and at this point I just -- I think we need to

4    wrap it up.

5              All right.  Thank you all.

6              MR. VANDEVELDE:  Thank you, your Honor.

7                        -o0o-

8

9           I certify that the foregoing is a correct
            transcript from the record of proceedings
10          in the above-entitled matter.

11          /s/Margaret E. Griener          12/6/2019
             Margaret E. Griener, CCR #3, FCRR
12           Official Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## /

/s/Margaret [1] - 48:11

## 1

**1** [1] - 11:4
**100** [1] - 16:25
**12/6/2019** [1] - 48:11
**1270** [2] - 5:13, 5:20
**1271** [2] - 5:14, 5:22
**1285** [1] - 4:10
**1288** [1] - 4:1
**13th** [4] - 11:6, 41:9, 41:12, 42:20
**14** [1] - 35:13
**15** [2] - 41:22, 41:24
**15th** [2] - 42:2, 42:20
**16th** [5] - 38:8, 39:23, 39:25, 40:3, 42:19
**17th** [2] - 39:2, 42:19
**18th** [3] - 6:2, 25:1, 42:18
**19** [1] - 13:4
**1:04** [1] - 3:1

## 2

**2** [1] - 1:25
**2.0** [1] - 27:13
**20** [3] - 1:8, 3:1, 26:11
**2018** [3] - 20:24, 28:6, 45:8
**2019** [4] - 1:8, 3:1, 39:2, 39:7
**2020** [2] - 39:8, 39:9
**20th** [8] - 11:5, 14:17, 23:3, 38:21, 40:14, 42:5, 42:19, 42:20
**21** [1] - 7:16
**21st** [1] - 19:9
**23rd** [2] - 27:25, 40:5
**24th** [3] - 13:6, 14:20, 40:6
**25th** [2] - 40:6
**27th** [5] - 40:18, 41:17, 41:18, 41:21, 42:20
**28th** [1] - 19:16
**29,000** [1] - 21:1
**2:10-cv-106-LRH-VCF** [2] - 1:7, 3:5

## 3

**3** [2] - 1:22, 48:11
**30(b)(6)** [8] - 13:10, 13:13, 14:9, 14:14, 14:16, 23:17, 23:24, 39:3
**31st** [4] - 39:7, 39:15,

39:16, 42:19
**33** [1] - 7:4
**350,000** [1] - 7:9

## 4

**400** [1] - 1:23

## 5

**500** [3] - 6:20, 7:7, 30:13
**500,000** [1] - 6:20
**5th** [3] - 12:7, 42:18, 45:8

## 6

**6** [2] - 42:3, 42:4
**600** [1] - 30:13
**600,000** [6] - 6:20, 7:7, 8:7, 8:13, 17:23, 32:2
**6th** [8] - 38:7, 38:11, 38:13, 38:16, 39:17, 39:19, 42:18, 42:20

## 7

**7-2** [1] - 15:25

## 8

**8** [2] - 15:12, 37:11
**89501** [1] - 1:23

## 9

**9th** [9] - 12:3, 13:5, 13:21, 13:22, 14:20, 15:6, 23:11, 23:15, 36:2

## A

**abide** [1] - 35:20
**ability** [3] - 9:12, 13:9, 18:3
**able** [5] - 6:25, 11:15, 17:9, 24:6, 37:17
**above-entitled** [1] - 48:10
**absent** [1] - 24:14
**absolutely** [1] - 16:25
**abstraction** [1] - 17:19
**accelerate** [2] - 7:1, 10:9
**access** [2] - 18:14, 28:25
**accessing** [1] - 43:21
**accommodate** [2] -

40:23, 42:8
**accommodating** [1] - 15:3
**accommodation** [1] - 46:18
**accomplish** [1] - 17:9
**according** [1] - 45:13
**accused** [3] - 18:21, 27:19, 29:10
**accusing** [3] - 19:14, 20:13, 20:17
**Act** [1] - 43:9
**actively** [1] - 27:3
**activities** [1] - 31:12
**actual** [1] - 5:22
**added** [1] - 47:15
**addition** [1] - 43:7
**additional** [3] - 8:22, 10:6, 44:23
**address** [4] - 9:3, 22:8, 28:9, 36:10
**adjudicated** [1] - 27:12
**admirable** [1] - 23:1
**advantage** [1] - 46:16
**affect** [1] - 22:18
**afoul** [1] - 29:10
**afternoon** [2] - 3:11, 3:17
**AFW** [1] - 18:9
**ago** [3] - 9:15, 16:8, 18:24
**agree** [2] - 34:8, 35:17
**agreed** [4] - 10:9, 10:13, 24:25, 41:19
**agreement** [1] - 10:11
**agrees** [1] - 39:6
**ahead** [5] - 3:23, 5:19, 12:13, 13:2, 38:2
**akin** [1] - 20:21
**al** [2] - 3:4, 3:5
**allegations** [1] - 26:13
**ALLEN** [2] - 2:5, 3:20
**Allen** [2] - 3:20, 3:22
**allow** [2] - 46:19, 47:11
**allowed** [2] - 37:22, 44:21
**allowing** [1] - 34:25
**allows** [1] - 17:10
**almost** [4] - 12:15, 16:8, 30:3, 32:19
**alone** [1] - 21:5
**amend** [4] - 43:1, 44:2, 44:18, 47:3
**AMERICA** [1] - 1:4
**amount** [5] - 9:6, 11:19, 17:21, 18:15, 36:21

**amounts** [2] - 9:25, 17:24
**analysis** [3] - 16:23, 26:11, 30:15
**analyze** [2] - 33:20, 37:13
**analyzed** [6] - 17:18, 21:2, 21:3, 26:14, 29:2, 32:2
**Angeles** [1] - 2:4
**answer** [4] - 11:15, 12:13, 32:23, 44:25
**anticipated** [3] - 10:8, 12:7, 15:17
**anticipating** [1] - 12:20
**anyway** [2] - 5:18, 47:19
**appearance** [1] - 3:7
**APPEARANCES** [2] - 1:15, 2:1
**Appearances** [1] - 1:25
**appellate** [2] - 25:18, 26:15
**application** [2] - 17:19, 33:12
**appreciate** [1] - 22:23
**approached** [1] - 8:7
**approaches** [1] - 17:23
**appropriate** [4] - 5:19, 23:20, 35:4, 35:8
**April** [6] - 9:15, 18:9, 41:22, 41:24, 42:2, 42:20
**argument** [4] - 29:5, 29:23, 30:14, 47:6
**arguments** [1] - 38:2
**arising** [1] - 12:8
**army** [1] - 21:14
**articulation** [1] - 36:22
**aspect** [1] - 37:3
**aspects** [1] - 30:19
**assuming** [1] - 38:6
**asymmetrical** [1] - 18:7
**asymmetry** [2] - 34:3
**attached** [1] - 20:7
**Attorney** [5] - 1:16, 1:18, 1:20, 2:3, 2:5
**attorney's** [1] - 5:14
**August** [1] - 20:1
**available** [1] - 46:9
**avenue** [1] - 46:8
**avoid** [1] - 21:14
**aware** [4] - 11:21, 12:11, 12:14, 15:16
**awful** [1] - 47:20

## B

**baby** [2] - 17:8, 39:1
**base** [1] - 29:23
**based** [5] - 13:16, 17:3, 34:5, 38:15, 47:10
**basic** [1] - 32:5
**basis** [1] - 40:11
**bear** [1] - 3:23
**became** [1] - 27:3
**BEFORE** [1] - 1:2
**began** [1] - 31:12
**beginning** [4] - 12:5, 35:7, 38:3, 42:14
**behalf** [4] - 3:9, 3:18, 3:21, 23:5
**best** [4] - 4:6, 17:3, 37:20, 48:1
**better** [1] - 5:9
**between** [1] - 6:20
**beyond** [1] - 43:11
**big** [3] - 25:6, 26:6, 36:3
**bit** [2] - 11:18, 39:12
**blindsided** [1] - 26:21
**blurt** [1] - 4:23
**blush** [1] - 35:6
**Bockius** [1] - 3:15
**bogglingly** [1] - 9:25
**Boies** [1] - 3:8
**bolded** [1] - 13:4
**bore** [1] - 30:16
**borne** [1] - 9:18
**boxes** [4] - 20:25, 26:23, 27:7, 34:1
**breadth** [1] - 9:6
**break** [1] - 14:5
**breakthroughs** [1] - 10:4
**bridge** [3] - 9:19, 22:22, 45:20
**brief** [3] - 44:2, 47:8, 47:15
**briefing** [6] - 10:25, 15:16, 15:22, 16:6, 34:16, 38:12
**briefly** [2] - 9:3, 34:7
**bring** [1] - 47:9
**brings** [1] - 23:17
**broad** [1] - 6:12
**broader** [1] - 7:23
**broadly** [1] - 6:14
**brought** [1] - 47:17
**build** [2] - 15:21, 40:23
**bunch** [1] - 17:13
**burden** [9] - 14:7, 24:21, 25:9, 28:8,

29:5, 29:18, 30:16, 33:18, 46:9
**business** [3] - 31:19, 37:2, 46:15
**busy** [1] - 30:21

# C

**California** [4] - 1:6, 1:19, 1:21, 2:4
**CAM** [1] - 1:2
**cannot** [1] - 21:22
**cap** [1] - 9:10
**capacity** [1] - 7:2
**case** [10] - 4:2, 21:22, 27:12, 28:10, 29:18, 30:3, 30:22, 31:16, 35:8, 37:7
**CCR** [2] - 1:22, 48:11
**certain** [2] - 30:4, 36:21
**certainly** [2] - 16:13, 35:2
**certify** [1] - 48:9
**challenge** [1] - 14:7
**change** [1] - 28:6
**changed** [2] - 18:23, 33:23
**changes** [1] - 27:14
**characterized** [1] - 22:21
**chart** [1] - 11:2
**chips** [1] - 42:9
**chunk** [3] - 7:22, 7:23
**circumvent** [1] - 46:7
**circumvention** [1] - 43:13
**cite** [1] - 19:20
**City** [1] - 1:19
**claim** [2] - 33:23, 44:24
**claims** [2] - 9:9, 18:21
**clarifications** [1] - 36:15
**clause** [1] - 33:6
**clear** [2] - 4:8, 7:20
**clearly** [1] - 43:24
**CLERK** [10] - 3:4, 5:24, 9:8, 39:17, 39:24, 40:4, 41:13, 41:22, 42:3, 42:6
**client** [2] - 19:21, 46:20
**clients** [2] - 45:8, 45:18
**close** [14] - 10:10, 10:14, 12:2, 13:4, 13:20, 23:6, 23:11, 23:12, 38:24, 39:20, 40:1, 40:18, 41:15,

41:19
**cloud** [4] - 32:10, 32:16, 33:3, 33:10
**code** [4] - 17:18, 18:11, 21:3
**colleagues** [1] - 45:25
**collecting** [1] - 43:10
**Colorado** [2] - 1:4
**coming** [2] - 13:15, 21:9
**comment** [1] - 28:22
**common** [1] - 10:13
**companies** [1] - 14:3
**company** [2] - 15:24, 29:15
**compare** [1] - 32:7
**comparison** [1] - 17:20
**compel** [18] - 10:25, 11:14, 11:24, 12:8, 12:10, 24:16, 24:17, 34:7, 34:12, 34:22, 35:3, 36:16, 38:5, 38:6, 38:7, 38:11, 38:14, 44:16
**compelled** [1] - 9:2
**competitive** [1] - 46:16
**complain** [1] - 43:12
**complaining** [1] - 9:21
**complaint** [2] - 9:9, 18:20
**complete** [2] - 7:18, 46:1
**completed** [2] - 10:8, 16:8
**completely** [3] - 18:6, 26:22, 35:19
**complex** [5] - 4:5, 16:12, 17:14, 17:15, 31:16
**complexity** [2] - 16:1, 16:4
**compliance** [1] - 29:12
**complicated** [2] - 16:10, 16:12
**complied** [1] - 19:15
**comprised** [1] - 17:17
**comprising** [1] - 21:1
**computer** [3] - 3:25, 30:7, 32:11
**concern** [1] - 11:13
**concession** [2] - 24:21, 25:5
**concessions** [2] - 35:22, 35:23
**conduct** [3] - 19:13, 24:9, 26:6
**confer** [2] - 23:19,

24:8
**conference** [4] - 3:6, 44:1, 44:7, 47:4
**CONFERENCE** [1] - 1:14
**confers** [2] - 34:10, 37:6
**confident** [2] - 24:8, 37:15
**confirmed** [1] - 23:4
**confused** [1] - 32:12
**confusion** [1] - 26:16
**considering** [1] - 31:11
**contacted** [1] - 35:13
**contemplated** [3] - 40:14, 43:11, 46:13
**contempt** [2] - 15:19, 29:23
**context** [2] - 28:18, 30:10
**continued** [1] - 1:25
**Continued** [1] - 2:1
**contract** [2] - 7:2, 7:4
**control** [1] - 35:19
**conversations** [1] - 17:6
**copy** [2] - 21:7, 37:12
**copying** [1] - 21:6
**copyright** [3] - 27:21, 29:4, 29:12
**copyrights** [2] - 27:16, 27:20
**corporate** [1] - 13:23
**corporation** [4] - 1:4, 1:5, 1:6, 1:10
**CORPORATION** [1] - 1:6
**correct** [3] - 41:13, 42:6, 48:9
**corrected** [1] - 10:18
**cost** [2] - 8:3, 8:7
**counsel** [2] - 3:7, 23:20
**counsel's** [1] - 38:2
**count** [1] - 10:20
**couple** [3] - 20:19, 36:14, 45:24
**course** [6] - 5:16, 7:1, 30:14, 36:13, 38:18, 46:11
**Court** [8] - 23:7, 24:23, 26:7, 32:7, 33:5, 35:1, 43:12, 46:19
**court** [5] - 24:18, 25:18, 26:15, 28:6, 28:17
**COURT** [126] - 1:1, 3:10, 3:13, 3:16,

3:19, 3:22, 4:18, 4:21, 4:24, 5:3, 5:25, 6:5, 6:7, 6:17, 6:24, 7:6, 7:10, 7:14, 7:17, 7:21, 7:25, 8:3, 8:5, 8:9, 8:13, 8:16, 8:21, 8:25, 9:20, 10:2, 10:15, 10:23, 11:1, 11:3, 11:5, 11:9, 12:4, 12:12, 12:17, 12:20, 12:25, 13:11, 14:8, 14:12, 14:18, 14:21, 14:23, 15:7, 15:13, 16:16, 16:18, 18:1, 18:5, 18:10, 19:2, 19:6, 19:11, 20:4, 20:8, 22:5, 22:9, 22:11, 22:16, 23:16, 23:25, 24:3, 24:12, 24:16, 24:19, 25:3, 25:20, 25:23, 26:2, 26:9, 29:20, 30:1, 30:5, 30:11, 32:9, 32:14, 32:18, 32:20, 32:24, 33:2, 33:8, 33:15, 34:17, 36:2, 36:5, 36:9, 36:11, 36:18, 36:24, 37:23, 37:25, 39:9, 39:19, 39:25, 40:5, 40:8, 40:16, 40:20, 40:25, 41:3, 41:6, 41:14, 41:18, 41:24, 42:4, 42:7, 42:16, 42:21, 43:2, 43:23, 44:5, 44:9, 44:11, 44:17, 44:20, 45:4, 45:21, 46:5, 46:11, 46:22, 46:25, 47:10
**Court's** [4] - 6:21, 22:23, 23:13, 46:8
**courtroom** [1] - 3:24
**courts** [1] - 11:21
**cover** [3] - 13:17, 13:18, 27:21
**covers** [1] - 29:9
**critical** [3] - 15:23, 17:1, 17:11
**crystal** [1] - 7:19
**custodial** [13] - 6:1, 6:14, 6:18, 6:21, 7:20, 7:21, 7:25, 8:11, 8:18, 10:7, 17:22, 23:4, 24:2
**customers** [1] - 25:7
**customers'** [1] - 32:10
**cut** [2] - 11:8, 11:10

# D

**dark** [2] - 26:20, 27:9
**darn** [1] - 34:9
**data** [9] - 17:24, 18:15, 21:2, 21:3, 21:6, 21:8, 30:13, 37:11, 37:17
**database** [1] - 18:9
**date** [8] - 8:7, 12:23, 15:17, 15:19, 23:11, 25:1, 38:6, 41:15
**dates** [4] - 31:12, 34:6, 39:11, 42:12
**days** [9] - 7:16, 24:22, 35:2, 38:9, 38:22, 39:21, 39:22, 44:7, 45:24
**deadline** [1] - 38:15
**deal** [1] - 4:5
**dealing** [1] - 45:12
**decade** [2] - 12:15, 17:4
**deceit** [1] - 45:20
**deceive** [1] - 44:25
**deceived** [2] - 44:24, 45:3
**December** [15] - 7:13, 11:5, 11:6, 12:7, 24:11, 38:7, 38:8, 38:11, 38:13, 38:16, 38:21, 42:18, 42:19
**decided** [2] - 33:5, 39:5
**deciding** [2] - 25:24, 33:5
**defend** [5] - 17:10, 21:23, 22:4, 37:2, 37:17
**DEFENDANTS** [1] - 2:3
**Defendants** [1] - 1:11
**defense** [2] - 33:22, 37:22
**deficiencies** [1] - 20:16
**deficiency** [1] - 19:25
**degree** [1] - 30:4
**Delaware** [1] - 1:5
**depo** [1] - 14:14
**deposition** [4] - 13:10, 14:16, 24:10, 40:14
**depositions** [4] - 13:13, 13:21, 23:18, 39:3
**derogation** [1] - 46:13
**describe** [1] - 5:6
**description** [1] - 31:24
**designation** [1] - 5:1
**detailed** [4] - 16:10,

16:12, 23:24, 26:11
**details** [1] - 29:22
**determine** [1] - 31:20
**determined** [2] - 29:3, 32:7
**developed** [1] - 28:5
**deviate** [1] - 36:22
**deviating** [1] - 36:20
**devoted** [2] - 9:6, 10:7
**Devtrack** [1] - 18:12
**difference** [5] - 11:7, 13:7, 13:8, 35:24, 36:3
**different** [6] - 6:11, 13:18, 26:12, 28:10, 28:16, 32:3
**difficult** [1] - 15:6
**digest** [2] - 11:15, 33:19
**digested** [2] - 32:3, 37:9
**diligently** [1] - 9:24
**direct** [2] - 9:6, 46:20
**disclosure** [2] - 39:10, 41:8
**disclosures** [2] - 24:24, 40:24
**discovery** [48] - 6:14, 6:18, 8:18, 9:7, 9:10, 9:12, 9:14, 9:23, 10:3, 10:10, 10:14, 11:17, 12:2, 13:5, 13:20, 13:24, 17:22, 18:4, 21:10, 21:11, 23:11, 23:13, 23:15, 24:13, 25:25, 28:21, 28:23, 29:17, 30:22, 31:12, 34:14, 35:7, 35:23, 37:5, 37:6, 38:24, 39:20, 40:1, 40:10, 40:17, 41:16, 41:19, 46:1, 46:13, 47:20
**discuss** [3] - 4:19, 6:13, 44:4
**discussed** [1] - 20:4
**discussing** [1] - 45:25
**discussion** [1] - 14:25
**disfavors** [1] - 34:3
**dispensed** [1] - 26:17
**dispositive** [3] - 15:22, 15:23, 28:12
**disputes** [1] - 6:15
**distinction** [1] - 33:11
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 3:24
**doable** [1] - 35:8
**document** [4] - 5:13, 5:23, 10:7, 31:24
**documentation** [2] -

43:19, 45:15
**documents** [10] - 6:21, 6:23, 7:7, 7:24, 8:8, 8:13, 11:14, 17:23, 32:3, 34:2
**dollars** [2] - 8:14, 8:15
**done** [7] - 10:19, 21:21, 23:5, 27:14, 33:22, 41:10, 48:1
**doubled** [1] - 7:2
**down** [4] - 3:24, 32:4, 35:1, 38:22
**dozen** [1] - 21:14
**dragged** [1] - 26:3
**dragging** [1] - 9:4
**driven** [1] - 6:23
**driving** [3] - 13:6, 13:8, 36:17
**duces** [1] - 8:23
**due** [2] - 12:6, 38:8
**dueling** [1] - 33:14
**Duke** [2] - 21:19, 31:5
**Dunn** [1] - 3:18
**during** [3] - 13:25, 14:4, 34:13

## E

**earliest** [2] - 14:9, 40:13
**early** [2] - 27:1, 31:17
**easier** [2] - 22:11, 38:4
**easily** [1] - 47:24
**easy** [1] - 33:22
**Edward** [2] - 45:12, 45:17
**Edwards** [1] - 45:8
**effect** [3] - 18:24, 28:7, 35:9
**efficient** [1] - 21:18
**efficiently** [1] - 9:24
**effort** [1] - 31:7
**eight** [1] - 43:9
**either** [1] - 29:15
**election** [1] - 6:23
**electronic** [2] - 21:5, 31:24
**electronically** [2] - 21:7, 37:12
**embraced** [1] - 33:24
**emphasize** [1] - 16:20
**encouragement** [1] - 22:24
**encouraging** [1] - 13:1
**end** [9] - 4:22, 10:10, 23:14, 24:7, 24:11, 25:6, 31:14, 35:11, 45:14
**endeavors** [1] - 34:19

**ended** [1] - 42:7
**enforce** [1] - 48:2
**enforced** [1] - 35:21
**enforcement** [1] - 28:17
**engage** [1] - 21:25
**engaged** [1] - 27:3
**engineers** [1] - 19:22
**enter** [1] - 3:7
**entirely** [1] - 6:23
**entities** [2] - 3:12, 4:16
**entitled** [4] - 21:23, 35:20, 43:22, 48:10
**entry** [2] - 13:4, 35:12
**ERIC** [1] - 2:3
**Eric** [1] - 3:18
**essentially** [2] - 13:25, 31:19
**establish** [1] - 24:9
**estimate** [1] - 17:3
**et** [2] - 3:4, 3:5
**evaluated** [1] - 31:25
**evaluation** [1] - 46:2
**evidence** [1] - 19:20
**exactly** [4] - 8:4, 20:19, 29:14, 42:25
**exceedingly** [1] - 10:21
**excess** [1] - 43:8
**exchange** [2] - 34:5
**exchanged** [1] - 34:10
**Exhibit** [1] - 45:6
**exhibits** [2] - 21:2, 30:12
**exists** [1] - 37:3
**expeditious** [1] - 26:25
**experience** [2] - 13:12, 13:16
**expert** [29] - 10:14, 10:18, 16:22, 17:10, 20:23, 21:9, 21:12, 21:13, 27:25, 31:3, 32:3, 33:17, 35:5, 35:7, 37:5, 37:13, 39:5, 39:10, 39:14, 39:20, 40:1, 40:9, 40:11, 40:17, 40:24, 41:7, 41:16, 41:19, 42:9
**expert's** [1] - 16:23
**experts** [17] - 16:24, 21:14, 21:15, 21:16, 28:25, 29:2, 29:21, 30:21, 31:4, 31:10, 32:6, 33:14, 33:15, 36:25, 40:13, 40:14
**explain** [1] - 27:7
**exported** [1] - 18:13

**extend** [1] - 15:9
**extending** [1] - 11:16
**extent** [1] - 22:15
**extra** [1] - 44:21

## F

**facilities** [3] - 32:17, 32:18, 33:5
**fact** [13] - 10:10, 10:14, 11:17, 12:2, 13:5, 13:20, 13:22, 13:23, 22:23, 24:20, 38:24, 44:6, 46:14
**facts** [3] - 9:18, 19:20, 33:11
**factual** [2] - 18:19, 33:9
**fair** [4] - 16:14, 40:22, 47:24, 48:2
**fall** [2] - 31:17, 42:9
**false** [1] - 43:17
**far** [1] - 35:5
**fastidiously** [1] - 9:23
**FCRR** [2] - 1:22, 48:11
**February** [1] - 35:8
**federal** [1] - 11:21
**fees** [1] - 5:14
**feet** [1] - 9:4
**FERENBACH** [1] - 1:2
**few** [6] - 4:10, 6:15, 6:19, 7:2, 24:21, 27:14
**fifth** [1] - 43:15
**figure** [2] - 38:17
**file** [7] - 11:24, 31:13, 34:11, 38:10, 47:2, 47:13, 47:14
**filed** [7] - 20:5, 20:6, 38:7, 38:13, 38:14, 38:16, 47:19
**files** [2] - 17:17, 30:7
**filing** [2] - 20:7, 38:16
**filtration** [1] - 17:19
**final** [3] - 12:6, 37:20, 38:19
**finally** [2] - 22:24, 36:1
**finish** [2] - 6:1, 7:13
**first** [13] - 4:4, 4:9, 9:1, 9:2, 10:24, 12:1, 14:1, 15:14, 17:14, 22:17, 24:10, 35:6, 35:13
**five** [23] - 16:2, 16:11, 19:1, 19:3, 20:12, 20:25, 26:5, 26:6, 26:23, 27:7, 39:13, 39:15, 39:16, 43:3, 43:4, 43:5, 43:14, 44:20, 45:11, 47:22

**extend** text continues...

**fixed** [1] - 27:11
**fixes** [6] - 45:7, 45:10, 45:14, 45:15, 45:18, 46:21
**flag** [1] - 5:8
**Flexner** [1] - 3:9
**follow** [1] - 11:23
**FOR** [2] - 1:16, 2:3
**forego** [1] - 25:9
**foregoing** [1] - 48:9
**forth** [4] - 14:25, 24:9, 34:10
**fought** [1] - 17:1
**foundation** [1] - 29:23
**four** [8] - 10:20, 16:3, 16:6, 16:15, 21:7, 37:11, 38:22, 47:24
**fracture** [1] - 13:19
**frame** [1] - 35:3
**framework** [3] - 22:24, 23:13, 24:9
**Francisco** [1] - 1:21
**frankly** [1] - 15:5
**freshen** [1] - 24:24
**Friday** [1] - 39:17
**front** [1] - 25:17
**full** [2] - 11:19, 21:18
**full-time** [1] - 21:18
**fundamentally** [2] - 15:23, 18:23
**fuse** [1] - 31:11
**future** [1] - 14:16

## G

**gavel** [2] - 5:22, 5:23
**Gibson** [1] - 3:18
**given** [2] - 16:1, 38:17
**glance** [1] - 5:18
**God** [1] - 27:25
**governing** [1] - 33:3
**grant** [3] - 4:9, 47:16, 47:18
**granted** [1] - 5:20
**great** [10] - 4:5, 6:5, 7:10, 8:18, 10:5, 10:8, 10:11, 13:2, 22:16, 34:11
**Griener** [3] - 1:22, 48:11, 48:11
**guess** [6] - 5:4, 20:9, 33:2, 42:5, 42:24, 47:17
**guys** [1] - 4:4

## H

**half** [8] - 11:8, 11:11, 11:20, 21:20, 35:12, 40:3, 41:20

**hammer** [1] - 6:16
**happy** [7] - 22:7, 22:14, 42:17, 44:3, 44:4, 47:4, 47:8
**hard** [7] - 9:24, 12:22, 17:2, 21:17, 21:22, 37:19, 39:1
**hear** [2] - 36:12, 36:20
**heard** [2] - 26:21, 28:1
**hearing** [3] - 4:14, 7:3, 44:4
**hearings** [1] - 27:3
**helpful** [2] - 4:7, 38:3
**Hicks** [1] - 5:16
**Hicks'** [2] - 31:6, 46:2
**highly** [2] - 17:15, 30:6, 31:24
**Hoffman** [1] - 34:14
**Hoffman's** [1] - 30:23
**holidays** [4] - 13:25, 14:1, 23:12, 23:22
**homework** [1] - 33:23
**Honor** [40] - 3:8, 3:11, 3:14, 3:17, 4:17, 4:25, 5:24, 6:19, 7:9, 8:4, 8:6, 15:16, 18:9, 18:25, 19:4, 19:9, 19:18, 20:2, 20:20, 20:25, 22:20, 23:24, 30:10, 36:4, 39:18, 39:24, 40:4, 40:7, 40:21, 41:1, 41:13, 41:17, 41:23, 42:3, 42:25, 43:3, 43:11, 44:8, 44:14, 48:6
**Honor's** [6] - 13:9, 19:15, 43:1, 43:8, 43:13
**HONORABLE** [1] - 1:2
**hosting** [2] - 32:16, 33:3
**hours** [1] - 8:12
**Howard** [2] - 3:20
**huge** [1] - 34:18
**humanly** [1] - 21:12
**hundreds** [2] - 8:12, 45:9

### I

**identify** [2] - 19:19, 19:21
**ll** [19] - 10:16, 16:2, 16:7, 17:5, 20:19, 21:8, 21:11, 21:21, 25:25, 26:13, 27:4, 27:5, 27:8, 28:5, 29:13, 30:22, 33:23, 34:13, 37:9
**illustrate** [1] - 26:24

**immense** [1] - 17:23
**implemented** [1] - 45:7
**important** [9] - 10:21, 16:21, 17:12, 20:18, 22:3, 35:18, 37:1
**impossible** [2] - 21:12, 21:19
**inaccuracy** [1] - 45:19
**inaccurate** [2] - 9:5, 45:23
**inappropriate** [1] - 47:3
**inaudible** [1] - 3:24
**Inc** [2] - 3:4, 3:5
**INC** [3] - 1:4, 1:5, 1:9
**inclined** [1] - 47:18
**include** [2] - 8:11, 18:8
**increased** [2] - 7:3, 22:1
**incredible** [1] - 18:15
**indifferently** [1] - 17:23
**individual** [1] - 1:10
**inflict** [1] - 14:6
**information** [20] - 9:25, 18:16, 20:2, 21:20, 24:25, 25:2, 25:14, 28:20, 34:5, 37:10, 37:16, 43:10, 43:17, 43:18, 45:6, 46:4, 46:9, 46:24, 48:2
**infringement** [2] - 20:21, 26:13
**initial** [2] - 15:20, 39:5
**injunction** [34] - 15:19, 18:19, 18:22, 18:23, 18:24, 19:22, 19:24, 20:22, 25:15, 26:7, 26:14, 26:19, 26:22, 27:15, 27:17, 27:20, 27:21, 28:7, 29:4, 29:8, 29:13, 30:18, 31:3, 31:6, 31:22, 32:12, 33:3, 33:13, 33:21, 35:12, 35:14, 35:20, 35:21, 48:3
**input** [2] - 6:22, 9:13
**instance** [1] - 30:16
**instances** [2] - 28:3, 31:21
**instead** [1] - 38:22
**intended** [1] - 14:15
**intensely** [1] - 9:5
**intentionally** [1] - 45:3
**interesting** [1] - 26:23
**interject** [1] - 40:22

**INTERNATIONAL** [1] - 1:5
**interpreted** [1] - 26:15
**interrogatories** [1] - 26:13
**interrogatory** [2] - 44:24, 47:8
**interrupt** [1] - 6:10
**intervening** [1] - 38:18
**involved** [2] - 37:5, 37:6
**involves** [1] - 17:21
**issue** [19] - 10:11, 12:1, 15:10, 15:15, 16:20, 16:21, 21:8, 22:3, 22:8, 22:13, 24:14, 31:3, 32:11, 32:24, 32:25, 33:2, 35:18, 37:1, 44:8
**issues** [17] - 6:12, 8:20, 8:23, 10:20, 12:16, 16:1, 16:4, 17:14, 23:8, 26:2, 28:19, 32:9, 33:16, 33:17, 34:8, 35:5, 36:8
**items** [1] - 4:10
**itself** [2] - 10:4, 19:24

### J

**James** [1] - 3:12
**JAMES** [1] - 1:18
**January** [19] - 12:3, 13:5, 13:6, 13:21, 13:22, 14:2, 14:20, 15:6, 23:11, 23:15, 25:16, 27:25, 39:2, 39:7, 39:15, 39:16, 42:19
**JD** [3] - 45:7, 45:12, 45:17
**Jerry** [7] - 5:8, 5:22, 39:9, 39:15, 41:9, 41:21, 42:12
**Jira** [1] - 18:12
**job** [1] - 4:5
**joint** [3] - 4:7, 34:15, 44:9
**Judge** [5] - 5:16, 30:23, 31:6, 34:14, 46:2
**JUDGE** [1] - 1:2
**judgment** [12] - 15:25, 16:3, 16:5, 16:8, 16:9, 16:14, 27:6, 28:13, 28:14, 28:15, 28:16, 34:19
**July** [1] - 35:25
**jump** [1] - 5:8

**jumped** [1] - 12:5
**June** [3] - 19:9, 19:16, 36:2

### K

**key** [2] - 10:4, 18:17
**kids** [1] - 14:5
**kind** [18] - 4:15, 6:12, 6:13, 12:5, 12:12, 13:1, 14:5, 14:6, 14:23, 20:10, 23:16, 25:1, 26:24, 27:7, 32:23, 34:6, 42:13, 47:18
**kinds** [1] - 28:1
**known** [1] - 43:20
**knows** [2] - 24:23, 34:22

### L

**lag** [1] - 7:15
**language** [2] - 33:12, 45:6
**large** [3] - 7:23, 9:25, 37:10
**larger** [1] - 37:16
**Las** [3] - 1:9, 1:17, 2:6
**LAS** [1] - 3:1
**last** [11] - 6:19, 7:2, 7:3, 10:22, 16:20, 17:24, 18:9, 24:12, 24:21, 38:7, 45:24
**late** [1] - 31:16
**Law** [5] - 1:16, 1:18, 1:20, 2:3, 2:5
**laws** [2] - 27:16, 29:4, 29:12
**lawyers** [2] - 4:4, 15:3, 46:4
**least** [1] - 40:13
**leave** [3] - 43:1, 44:2, 47:3
**led** [3] - 7:4, 10:17, 45:19
**left** [1] - 7:12
**legal** [1] - 33:2
**lengthy** [1] - 16:10
**less** [2] - 16:13, 35:5
**lessened** [1] - 24:20
**letter** [7] - 19:8, 19:15, 19:16, 20:4, 20:12, 34:15
**Lewis** [1] - 3:15
**light** [1] - 23:12
**likely** [8] - 12:9, 13:14, 13:16, 13:17, 13:19, 13:21, 15:4
**limit** [1] - 9:10

**limitation** [2] - 43:8
**limited** [1] - 26:7
**LINDSEY** [1] - 1:20
**Lindsey** [1] - 3:14
**line** [3] - 13:4, 15:12, 23:21
**list** [3] - 26:5, 45:9, 45:17
**lists** [1] - 45:6
**literally** [4] - 19:23, 21:5, 21:11, 21:19
**litigation** [6] - 12:15, 13:13, 17:4, 17:11, 20:20
**live** [2] - 18:14, 35:2
**Local** [1] - 15:25
**local** [5] - 11:8, 11:23, 11:25, 36:20, 36:21
**log** [5] - 7:18, 12:6, 12:8, 12:16, 23:7
**logistical** [1] - 14:6
**logs** [1] - 7:12
**look** [2] - 20:11, 31:7
**Look** [1] - 17:7
**looked** [5] - 5:16, 6:1, 21:22, 31:1, 37:19
**looking** [4] - 12:12, 29:21, 42:3, 45:23
**Los** [1] - 2:4
**lost** [1] - 34:1
**low** [1] - 14:4

### M

**MAGISTRATE** [1] - 1:2
**main** [1] - 21:15
**major** [1] - 34:18
**March** [18] - 35:11, 35:25, 39:17, 39:19, 39:22, 39:23, 39:25, 40:6, 40:12, 40:14, 40:18, 41:9, 41:12, 41:17, 41:18, 41:21, 42:20
**Margaret** [2] - 1:22, 48:11
**Maroulis** [2] - 3:12, 3:13
**MAROULIS** [2] - 1:18, 3:11
**massive** [3] - 17:21, 18:14, 37:16
**materials** [1] - 21:1
**math** [1] - 21:22
**matter** [5] - 5:11, 10:13, 21:9, 45:2, 48:10
**matters** [1] - 4:12
**McGRATH** [1] - 1:20
**mean** [8] - 4:14, 12:7,

14:12, 23:16, 32:20, 33:1, 33:6, 41:3
**meaning** [1] - 13:21
**meaningful** [1] - 46:1
**meant** [1] - 8:14
**meat** [1] - 30:14
**meet** [3] - 23:19, 24:8, 37:6
**meets** [1] - 34:9
**mentioned** [1] - 35:5
**mentioning** [1] - 4:15
**mercy** [2] - 9:14, 9:22
**merit** [1] - 47:6
**mid** [1] - 7:13
**might** [6] - 5:7, 12:7, 12:9, 14:4, 24:14, 35:6
**mind** [2] - 9:25, 30:13
**mind-bogglingly** [1] - 9:25
**mind-numbingly** [1] - 30:13
**minimum** [4] - 17:5, 17:7, 17:9, 37:21
**minute** [2] - 3:23, 42:13
**misled** [2] - 43:16, 47:7
**misplaced** [1] - 26:22
**misread** [1] - 44:25
**mode** [1] - 14:4
**Monday** [2] - 39:24, 40:3
**months** [6] - 6:19, 7:2, 9:15, 17:25, 35:13, 35:25
**Morgan** [1] - 3:15
**morning** [1] - 3:14
**most** [6] - 12:9, 16:21, 22:3, 23:20, 37:1, 45:14
**motion** [41] - 4:9, 5:13, 5:14, 5:20, 10:24, 11:14, 11:24, 15:12, 15:18, 15:20, 15:22, 15:23, 15:24, 16:14, 16:17, 24:16, 24:17, 28:12, 28:13, 28:14, 31:13, 34:11, 34:19, 35:3, 35:10, 36:16, 38:6, 38:7, 38:11, 40:2, 42:1, 42:24, 43:1, 44:2, 44:16, 44:17, 47:3, 47:9, 47:13, 47:14, 47:19
**motions** [16] - 5:12, 5:15, 5:17, 12:7, 12:9, 15:25, 16:3, 16:9, 27:6, 28:15,

28:16, 34:7, 34:14, 34:22, 38:5, 38:14
**mouths** [1] - 29:11
**move** [5] - 25:5, 34:21, 35:24, 38:19, 41:6
**moved** [3] - 4:25, 37:19, 39:12
**moving** [2] - 13:3, 25:10
**MR** [117] - 3:8, 3:11, 3:17, 3:20, 4:17, 4:19, 4:20, 4:22, 4:25, 6:3, 6:6, 6:9, 6:18, 6:25, 7:9, 7:11, 7:15, 7:19, 7:22, 8:2, 8:4, 8:6, 8:10, 8:15, 8:17, 8:24, 9:2, 9:21, 10:3, 10:16, 10:24, 11:2, 11:4, 11:7, 11:10, 12:11, 12:14, 12:18, 12:22, 13:3, 13:12, 14:10, 14:15, 14:19, 14:22, 15:1, 15:8, 15:14, 16:17, 16:19, 18:3, 18:6, 18:11, 19:3, 19:7, 19:12, 20:6, 20:10, 22:7, 22:10, 22:13, 22:20, 23:23, 24:1, 24:4, 24:14, 24:17, 24:20, 25:4, 25:22, 26:1, 26:3, 26:10, 29:25, 30:3, 30:9, 30:12, 32:13, 32:16, 32:19, 32:22, 32:25, 33:4, 33:9, 33:16, 34:18, 36:3, 36:7, 36:10, 36:14, 36:19, 36:25, 37:24, 40:7, 40:9, 40:17, 40:21, 41:1, 41:5, 41:17, 42:15, 42:17, 42:25, 43:3, 43:25, 44:6, 44:10, 44:14, 44:19, 45:1, 45:5, 45:22, 46:7, 46:12, 46:23, 47:2, 48:6
**MS** [1] - 3:14
**multiple** [4] - 13:17, 13:19, 13:21, 14:7
**multiples** [1] - 8:12
**must** [1] - 4:1
**mystery** [1] - 34:11

### N

**naive** [1] - 46:16
**names** [1] - 4:15
**narrowly** [1] - 9:16
**nature** [1] - 43:17

**near** [1] - 14:16
**necessary** [1] - 17:13
**need** [20] - 4:14, 4:18, 4:20, 7:18, 11:15, 13:21, 16:15, 17:5, 17:9, 17:20, 21:21, 22:4, 28:8, 28:24, 32:3, 37:17, 39:4, 45:20, 48:2, 48:3
**needed** [1] - 22:25
**needs** [3] - 17:18, 28:17, 31:25
**NEVADA** [2] - 1:1, 3:1
**Nevada** [5] - 1:9, 1:17, 1:23, 2:6
**never** [7] - 5:15, 5:16, 20:3, 20:16, 26:21, 28:1, 46:23
**new** [1] - 39:3
**New** [1] - 14:1
**news** [2] - 10:11, 10:12
**next** [1] - 15:11
**noncustodial** [3] - 8:11, 23:5, 25:2
**nondispositive** [1] - 4:12
**none** [1] - 38:13
**note** [1] - 11:18
**noted** [2] - 23:7, 23:8
**nothing** [1] - 9:9
**notice** [7] - 5:7, 14:16, 14:24, 23:17, 24:1, 24:6, 29:6
**noticed** [2] - 5:11, 13:15
**noticing** [1] - 14:14
**notion** [1] - 26:20
**November** [9] - 1:8, 14:17, 23:3, 24:7, 24:25, 28:6, 42:18, 45:8
**NOVEMBER** [1] - 3:1
**number** [7] - 4:1, 4:10, 7:3, 34:1, 34:2, 37:20, 47:23
**numbers** [2] - 5:13, 41:11
**numbingly** [1] - 30:13

### O

**objectionable** [1] - 26:18
**obviously** [3] - 6:10, 6:15, 44:4
**October** [2] - 31:13, 31:14
**OF** [2] - 1:1, 1:14
**offend** [1] - 30:19

**Official** [2] - 1:22, 48:12
**often** [1] - 34:13
**once** [1] - 34:11
**one** [27] - 6:13, 7:22, 7:23, 8:22, 10:6, 10:21, 10:24, 11:24, 13:9, 15:11, 21:12, 21:17, 22:1, 22:11, 26:8, 32:9, 35:18, 36:12, 36:16, 38:25, 39:22, 40:10, 40:13, 42:12, 43:5, 44:23, 46:19
**onerous** [1] - 35:6
**ones** [3] - 7:25, 29:2, 42:21
**open** [1] - 5:3
**openly** [1] - 4:19
**operate** [2] - 37:2, 38:23
**operating** [1] - 31:20
**operation** [2] - 30:19, 30:20
**operations** [1] - 27:19
**oppose** [2] - 44:3, 47:4
**opposed** [2] - 33:3, 33:10
**opposite** [1] - 10:17
**opposition** [9] - 11:5, 11:6, 11:16, 11:20, 15:12, 16:5, 38:5, 38:8, 41:25
**oppositions** [1] - 11:21
**Oracle** [25] - 3:4, 3:9, 3:12, 3:15, 10:9, 10:12, 12:3, 13:5, 13:9, 17:7, 18:21, 18:25, 19:9, 19:13, 19:15, 19:22, 20:1, 20:3, 21:25, 29:17, 34:3, 46:15, 47:2, 48:1
**ORACLE** [3] - 1:4, 1:4, 1:5
**Oracle's** [7] - 6:23, 15:17, 15:19, 21:13, 27:8, 37:1, 42:9
**order** [21] - 5:19, 6:22, 8:1, 13:9, 15:12, 15:18, 15:20, 19:16, 23:2, 24:18, 28:17, 30:23, 34:21, 35:10, 42:13, 43:1, 43:14, 44:18, 46:8, 46:15, 47:14
**ordered** [3] - 18:25, 19:9, 27:15

**orders** [1] - 6:11
**original** [2] - 31:9, 39:14
**otherwise** [1] - 46:23
**ourselves** [5] - 9:13, 17:11, 21:23, 22:4, 37:18
**overall** [1] - 32:2
**overstated** [1] - 29:5
**overwhelming** [1] - 31:8
**own** [4] - 11:11, 28:5, 29:15, 29:16

### P

**P.M** [1] - 3:1
**page** [3] - 11:2, 15:11, 41:2
**Page** [1] - 1:25
**pages** [4] - 21:1, 26:11, 30:13, 45:9
**pain** [1] - 14:7
**papers** [1] - 9:3
**par** [2] - 16:5, 21:10
**paragraph** [1] - 19:3
**parrot** [1] - 19:23
**part** [4] - 13:23, 25:5, 27:4, 40:10
**particular** [2] - 16:23, 30:18
**parties** [4] - 3:9, 3:15, 10:10, 16:2
**past** [1] - 45:25
**patently** [1] - 43:17
**patient** [1] - 35:15
**pending** [2] - 16:9, 25:24
**people** [4] - 13:18, 13:19, 14:4, 23:21
**people's** [1] - 15:2
**PeopleSoft** [2] - 45:8, 45:17
**per** [1] - 6:21
**percent** [2] - 7:4, 16:25
**period** [4] - 38:17, 38:18, 40:10, 40:18
**Perry** [1] - 27:2
**persist** [1] - 28:11
**perspective** [1] - 44:1
**persuaded** [1] - 39:12
**persuasive** [1] - 38:3
**phase** [1] - 16:8
**picked** [2] - 34:6, 47:23
**piece** [1] - 10:12
**place** [1] - 12:9
**plaintiffs** [1] - 1:7
**PLAINTIFFS** [1] - 1:16

**planning** [1] - 14:14
**plans** [2] - 15:2, 15:4
**play** [2] - 16:2, 27:15
**played** [1] - 20:19
**plays** [1] - 36:1
**pleadings** [1] - 26:16
**Pocker** [10] - 3:8, 3:10, 12:13, 12:18, 12:21, 22:19, 36:5, 37:5, 41:16, 44:13
**POCKER** [48] - 1:16, 3:8, 4:19, 4:25, 12:22, 14:15, 14:19, 14:22, 22:20, 23:23, 24:1, 24:4, 24:14, 24:17, 24:20, 25:4, 25:22, 26:1, 26:3, 26:10, 29:25, 30:3, 30:9, 30:12, 32:13, 32:16, 32:19, 32:22, 32:25, 33:4, 33:9, 33:16, 34:18, 36:3, 36:7, 36:10, 40:7, 40:9, 40:17, 41:17, 44:14, 44:19, 45:1, 45:5, 45:22, 46:7, 46:12, 46:23
**point** [4] - 26:24, 30:5, 32:21, 48:3
**pointed** [1] - 20:15
**points** [1] - 44:22
**position** [7] - 23:14, 37:1, 43:23, 44:12, 44:15, 45:2, 45:5
**positions** [2] - 34:12, 34:15
**post** [1] - 25:1
**posture** [1] - 44:15
**power** [1] - 14:4
**practice** [2] - 19:13, 32:8
**precisely** [2] - 19:10, 19:17
**predict** [1] - 12:23
**preferable** [1] - 5:4
**preliminary** [1] - 5:11
**premature** [1] - 34:23
**prep** [1] - 13:24
**prepare** [2] - 37:13, 37:22
**prepared** [1] - 37:2
**prepped** [1] - 32:6
**preserved** [1] - 44:11
**pretty** [6] - 23:4, 23:6, 33:22, 34:9, 38:25, 43:24
**preview** [1] - 22:13
**pricing** [1] - 46:15
**printouts** [1] - 30:13
**privilege** [6] - 7:12,

7:18, 12:6, 12:8, 12:15, 23:7
**problem** [6] - 5:2, 12:23, 25:13, 27:8, 29:20, 46:5
**procedural** [1] - 44:15
**proceedings** [4] - 27:1, 27:11, 29:7, 48:9
**process** [6] - 19:13, 19:20, 20:14, 31:25, 34:13, 43:25
**processes** [3] - 17:16, 18:23, 29:16
**produce** [4] - 11:14, 22:25, 25:1
**produced** [9] - 7:8, 7:17, 17:24, 18:12, 18:13, 25:2, 31:19, 37:10, 37:11
**producing** [1] - 18:2
**production** [2] - 23:4, 24:2
**productions** [2] - 6:2, 25:7
**products** [2] - 13:17, 17:16
**professor** [3] - 21:17, 21:19, 31:5
**programming** [1] - 30:7
**progress** [4] - 8:18, 23:1, 23:12, 24:5
**proposal** [1] - 35:7
**propose** [1] - 11:8
**proposed** [9] - 11:10, 12:3, 13:5, 13:6, 23:2, 23:11, 35:4, 35:10, 40:10
**provided** [2] - 18:13, 20:1
**provisions** [1] - 31:21
**proxy** [1] - 29:5
**Public** [1] - 43:9
**public** [2] - 46:3, 46:14
**purposes** [1] - 46:2
**pursued** [1] - 46:12
**put** [5] - 21:22, 21:23, 30:9, 35:9, 37:20

**Q**

**quarter** [1] - 21:20
**quash** [1] - 42:24
**quick** [2] - 5:18, 7:6
**quicker** [1] - 10:8
**quote** [2] - 9:16, 19:10

**R**

**railroad** [1] - 35:16
**raise** [1] - 44:7
**raised** [4] - 15:15, 19:25, 26:16, 47:4
**RAVIN** [1] - 1:10
**read** [6] - 4:3, 18:14, 41:10, 42:11, 42:14, 45:16
**read-only** [1] - 18:14
**real** [1] - 7:6
**really** [12] - 4:5, 12:20, 18:2, 23:10, 25:18, 26:24, 29:9, 32:4, 33:17, 33:18, 44:22, 45:2
**reason** [7] - 6:25, 14:6, 15:9, 17:21, 36:19, 36:20, 36:22
**reasonable** [1] - 15:21
**reasons** [2] - 17:13, 20:19
**rebuttal** [10] - 16:22, 16:23, 17:10, 28:4, 31:10, 36:25, 37:13, 39:10, 40:24, 41:7
**recalculate** [1] - 39:11
**received** [6] - 13:14, 43:15, 45:13, 45:15, 45:18, 46:20
**recently** [1] - 19:6
**reciprocal** [1] - 28:23
**record** [5] - 5:4, 42:12, 46:14, 47:11, 48:9
**records** [6] - 31:19, 43:4, 43:5, 43:15, 45:13, 46:3
**Records** [1] - 43:9
**redacted** [1] - 4:11
**reduce** [1] - 11:8
**Redwood** [1] - 1:19
**referred** [1] - 27:13
**regarding** [2] - 25:14, 45:15
**regulatory** [1] - 25:8
**relate** [1] - 43:19
**relating** [2] - 43:18, 45:6
**relevant** [1] - 46:24
**relying** [1] - 37:16
**remember** [5] - 14:17, 19:2, 20:8, 25:20, 25:23
**remove** [1] - 5:23
**Reno** [1] - 1:23
**replies** [1] - 11:22
**reply** [4] - 11:20, 35:1, 35:11, 38:20
**report** [4] - 27:25,

37:13, 37:15, 44:9
**reported** [1] - 5:25
**Reporter** [2] - 1:22, 48:12
**reports** [13] - 10:17, 10:18, 16:22, 17:10, 20:23, 21:2, 21:6, 21:9, 28:4, 30:15, 30:21
**representation** [1] - 28:22
**representations** [3] - 24:5, 27:10, 29:18
**representatives** [1] - 13:23
**request** [1] - 9:14
**requests** [4] - 9:7, 9:10, 43:10, 46:15
**require** [1] - 33:14
**required** [6] - 11:25, 20:2, 24:23, 28:13, 31:10, 47:23
**requires** [1] - 11:14
**resolve** [1] - 10:21
**resolved** [1] - 34:8
**resources** [1] - 10:6
**respect** [10] - 23:14, 25:7, 25:8, 26:5, 26:24, 27:20, 29:6, 34:14, 40:9
**respective** [1] - 34:12
**respond** [3] - 28:1, 28:13, 35:1
**responded** [2] - 20:3, 20:16
**responding** [1] - 34:19
**response** [3] - 25:16, 35:11, 47:8
**responsibilities** [1] - 13:18
**result** [5] - 9:6, 24:15, 27:5, 27:13, 35:6
**results** [1] - 44:20
**review** [1] - 10:7
**reviewed** [5] - 6:20, 7:7, 17:18, 19:4, 34:2
**reviewers** [2] - 7:2, 7:4
**revisit** [1] - 4:22
**RICHARD** [1] - 1:16
**Richard** [1] - 3:8
**rightly** [1] - 44:22
**rights** [1] - 28:23
**RIMINI** [1] - 1:9
**Rimini** [50] - 3:5, 3:18, 3:21, 5:1, 10:16, 14:3, 15:18, 16:2, 16:7, 16:21, 17:4, 17:5, 19:19, 19:22,

20:19, 21:8, 21:11, 21:21, 22:3, 22:24, 23:5, 24:20, 25:6, 25:12, 25:25, 26:13, 27:4, 27:5, 27:8, 27:10, 27:12, 27:13, 28:5, 28:21, 29:1, 29:13, 30:22, 33:6, 33:11, 33:12, 33:23, 33:25, 34:13, 35:17, 37:9, 45:7, 46:9, 46:14
**Rimini's** [1] - 42:8
**rodeo** [2] - 37:4, 37:8
**rosa** [1] - 27:24
**roughly** [3] - 7:15, 8:7, 9:15
**round** [1] - 20:11
**Rule** [3] - 13:9, 15:25, 23:24
**rule** [2] - 11:8, 31:5
**ruled** [2] - 5:16, 33:6
**rules** [4] - 11:24, 11:25, 36:20, 36:21
**ruling** [2] - 11:13, 33:12
**run** [1] - 43:12
**running** [1] - 29:10

**S**

**Salesforce** [1] - 18:12
**San** [1] - 1:21
**satisfactory** [1] - 25:16
**save** [1] - 10:22
**scale** [2] - 21:10, 21:11
**scenario** [2] - 33:9, 34:24
**schedule** [13] - 10:25, 15:17, 15:22, 22:17, 22:18, 25:11, 26:25, 31:9, 35:9, 35:25, 38:12, 39:3, 40:23
**scheduling** [8] - 6:15, 8:20, 8:21, 8:25, 15:10, 16:20, 23:2, 36:7
**Schiller** [1] - 3:9
**scope** [1] - 9:23
**seal** [7] - 4:10, 4:14, 5:1, 5:12, 5:13, 5:15, 5:20
**sealed** [1] - 5:13
**search** [2] - 6:22, 9:13
**second** [6] - 6:15, 10:12, 12:2, 13:4, 15:10, 17:21
**see** [8] - 6:9, 15:8,

21:9, 22:17, 27:5,
29:13, 34:23, 42:24
**seek** [1] - 9:12
**segment** [1] - 30:18
**selected** [1] - 45:11
**send** [2] - 14:23, 32:1
**sense** [9] - 6:19, 8:6,
10:13, 11:12, 23:23,
29:7, 33:20, 40:22,
41:3
**sent** [1] - 19:16
**sentence** [1] - 26:8
**separate** [2] - 19:13,
44:3
**separately** [1] - 22:9
**September** [1] - 20:7
**serve** [1] - 14:15
**served** [4] - 14:10,
43:4, 43:9, 43:14
**server** [1] - 33:11
**set** [3] - 14:9, 15:17,
40:11
**SETH** [1] - 1:10
**sets** [2] - 13:18, 18:15
**seven** [8] - 16:9, 17:5,
21:21, 21:24, 22:2,
28:8, 37:12, 37:20
**several** [1] - 17:25
**SharePoint** [1] - 18:11
**shave** [1] - 35:1
**shifting** [1] - 8:3
**SHINN** [2] - 1:20, 3:14
**Shinn** [2] - 3:15, 3:16
**shooting** [1] - 18:18
**short** [3] - 19:7, 19:16,
31:11
**shorten** [1] - 38:21
**shorter** [1] - 39:11
**shortly** [1] - 40:18
**shot** [1] - 48:2
**show** [7] - 15:12,
15:18, 15:20, 33:11,
35:11, 40:2, 42:1
**sic]** [1] - 39:2
**side** [3] - 29:11, 33:19,
42:8
**sides** [2] - 9:1, 34:9
**significant** [1] - 25:5
**similar** [1] - 15:14
**simply** [1] - 46:18
**single** [3] - 19:19,
31:23, 31:24
**sit** [1] - 3:24
**situated** [1] - 27:23
**situation** [3] - 9:8,
17:8, 28:16
**six** [2] - 9:15, 41:7
**sixth** [2] - 43:6, 43:22
**skip** [1] - 15:11

23:1
**smart** [1] - 21:18
**software** [8] - 4:16,
17:15, 17:16, 19:21,
43:19, 43:20, 45:7,
45:12
**someone** [1] - 4:23
**sometimes** [1] - 42:10
**somewhat** [1] - 9:8
**somewhere** [1] - 20:5
**soon** [1] - 24:4
**sorry** [3] - 8:15, 12:12,
25:22
**sort** [1] - 42:24
**sought** [1] - 35:22
**source** [1] - 18:11
**South** [1] - 1:23
**specific** [4] - 19:19,
19:21, 20:14, 31:21
**specificity** [1] - 20:2
**specify** [1] - 30:18
**speedup** [1] - 7:5
**spirit** [1] - 43:13
**split** [2] - 17:8, 38:25
**split-the-baby** [1] -
17:8
**spring** [1] - 20:24
**sprung** [1] - 45:24
**stand** [1] - 6:13
**standard** [1] - 4:12
**start** [2] - 10:14, 38:3
**started** [1] - 22:24
**starting** [1] - 42:13
**State** [1] - 19:10
**state** [2] - 8:17, 27:15
**statement** [6] - 4:4,
4:7, 4:11, 9:3, 43:16,
47:16
**statements** [1] - 28:5
**STATES** [1] - 1:1
**status** [4] - 3:6, 44:1,
44:7, 47:4
**STATUS** [1] - 1:14
**still** [7] - 7:11, 7:18,
16:9, 20:17, 25:17,
35:12, 38:11
**Street** [11] - 1:23, 3:5,
22:24, 23:5, 25:6,
27:10, 28:21, 29:1,
35:17, 46:10, 46:14
**STREET** [1] - 1:9
**Street's** [3] - 5:1,
24:21, 25:13
**struggling** [1] - 32:22
**stuff** [2] - 28:1, 46:3
**styled** [1] - 43:1
**subject** [2] - 8:1,
23:17
**submit** [1] - 34:15
**submitted** [2] - 20:23,

23:1
**subpoena** [9] - 8:22,
22:8, 22:18, 42:23,
43:6, 43:15, 43:22,
46:19, 47:12
**subpoenas** [7] - 43:4,
43:5, 43:14, 44:20,
45:12, 47:22
**substantial** [1] - 7:11
**substitute** [2] - 44:21,
44:23
**succeed** [1] - 23:20
**sudden** [1] - 27:24
**sufficient** [1] - 37:22
**suggestion** [1] - 47:7
**summary** [12] - 15:25,
16:3, 16:5, 16:7,
16:9, 16:14, 27:6,
28:12, 28:14, 28:15,
34:19
**summer** [1] - 31:16
**supplemental** [2] -
10:17, 10:18
**support** [2] - 17:15,
21:15
**supported** [1] - 21:13
**supporting** [1] - 21:15
**supposed** [1] - 45:10
**surprise** [1] - 35:19
**surrebuttal** [2] -
10:18, 28:4
**system** [3] - 29:3,
32:5, 43:20
**systems** [3] - 31:20,
32:2, 43:21

## T

**table** [3] - 13:4, 16:21,
22:3
**tabula** [1] - 27:24
**tailored** [1] - 9:16
**talks** [1] - 31:18
**tax** [1] - 25:8
**technical** [17] - 16:1,
16:23, 16:24, 17:15,
17:24, 19:20, 20:14,
20:23, 21:13, 21:15,
21:16, 28:19, 29:22,
30:6, 31:24, 32:20,
37:13
**technology** [1] - 14:3
**tecum** [1] - 8:23
**teed** [2] - 22:14, 35:10
**ten** [5] - 38:9, 38:17,
38:18, 39:21, 39:22
**ten-day** [2] - 38:17,
38:18
**tens** [1] - 17:17
**terabytes** [1] - 37:11

**terms** [4] - 6:22, 9:13,
10:3, 19:23
**terrain** [1] - 27:22
**terribly** [1] - 23:9
**test** [1] - 9:17
**testifying** [2] - 21:16,
40:12
**tests** [1] - 17:20
**tether** [1] - 9:10
**THE** [138] - 1:2, 1:16,
2:3, 3:4, 3:10, 3:13,
3:16, 3:19, 3:22,
4:18, 4:21, 4:24, 5:3,
5:24, 5:25, 6:5, 6:7,
6:17, 6:24, 7:6, 7:10,
7:14, 7:17, 7:21,
7:25, 8:3, 8:5, 8:9,
8:13, 8:16, 8:21,
8:25, 9:20, 10:2,
10:15, 10:23, 11:1,
11:3, 11:5, 11:9,
12:4, 12:12, 12:17,
12:20, 12:25, 13:11,
14:8, 14:12, 14:18,
14:21, 14:23, 15:7,
15:13, 16:16, 16:18,
18:1, 18:5, 18:10,
19:2, 19:6, 19:11,
20:4, 20:8, 22:5,
22:9, 22:11, 22:16,
23:16, 23:25, 24:3,
24:12, 24:16, 24:19,
25:3, 25:20, 25:23,
26:2, 26:9, 29:20,
30:1, 30:5, 30:11,
32:9, 32:14, 32:18,
32:20, 32:24, 33:2,
33:8, 33:15, 34:17,
36:2, 36:5, 36:9,
36:11, 36:18, 36:24,
37:23, 37:25, 39:8,
39:9, 39:17, 39:19,
39:24, 39:25, 40:4,
40:5, 40:8, 40:16,
40:20, 40:25, 41:3,
41:6, 41:13, 41:14,
41:18, 41:22, 41:24,
42:3, 42:4, 42:6,
42:7, 42:16, 42:21,
43:2, 43:23, 44:5,
44:9, 44:11, 44:17,
44:20, 45:4, 45:21,
46:5, 46:11, 46:22,
46:25, 47:10
**theories** [3] - 18:19,
20:21, 20:22
**theory** [1] - 26:21
**thereafter** [1] - 40:19
**they've** [8] - 22:25,
23:21, 24:23, 26:21,

27:13, 28:5, 29:8,
33:22
**thinking** [2] - 38:25,
39:11
**thinks** [2] - 5:5, 19:22
**third** [1] - 18:17
**thousands** [3] - 17:17,
30:7
**three** [8] - 7:12, 15:5,
16:1, 21:6, 35:2,
35:25, 41:25, 42:1
**throughout** [2] -
27:11, 29:7
**timeline** [1] - 14:13
**timing** [1] - 35:23
**today** [4] - 16:21, 22:3,
22:14, 25:14
**took** [5] - 5:18, 21:6,
25:13, 37:11, 37:12
**topics** [4] - 6:10,
13:17, 23:18, 23:19
**toward** [2] - 31:14,
42:8
**track** [1] - 40:8
**Transcribed** [1] - 1:22
**transcript** [1] - 48:9
**TRANSCRIPT** [1] -
1:14
**transfer** [2] - 21:4,
21:5
**transition** [1] - 8:19
**travel** [4] - 13:24, 15:2,
15:4
**traveling** [1] - 14:5
**trial** [1] - 40:12
**tried** [2] - 21:25, 27:13
**true** [1] - 6:2
**truly** [1] - 17:23
**try** [1] - 33:20
**trying** [2] - 35:15, 46:7
**turn** [4] - 16:19, 31:13,
33:1, 37:16
**turned** [1] - 45:14
**two** [19] - 6:12, 8:23,
10:4, 15:5, 15:9,
16:13, 21:1, 21:15,
22:1, 28:14, 39:6,
40:3, 41:19, 41:20,
42:4, 44:7, 45:11,
45:12
**type** [2] - 20:1, 28:10

## U

**ultimate** [1] - 31:4
**unambiguously** [2] -
19:12, 19:17
**under** [7] - 9:19,
11:25, 13:8, 15:25,
22:21, 23:13, 45:20

**underlied** [1] - 21:6
**underlying** [1] - 37:17
**undertake** [1] - 29:17
**unfair** [1] - 9:4
**unfairness** [1] - 11:19
**UNITED** [1] - 1:1
**universe** [4] - 6:22, 7:23, 37:9, 37:17
**University** [1] - 21:19
**unlawful** [1] - 32:8
**unlike** [1] - 21:13
**unredacted** [1] - 5:22
**unusual** [2] - 9:8, 44:14
**up** [15] - 5:8, 6:11, 17:3, 22:14, 23:10, 23:17, 23:21, 29:22, 31:10, 35:7, 35:10, 42:7, 47:15, 47:17, 48:4
**update** [5] - 6:4, 6:7, 6:13, 19:21, 24:24
**updates** [11] - 25:8, 43:19, 43:20, 45:7, 45:10, 45:14, 45:15, 45:18, 46:20
**USA** [2] - 1:4, 3:4
**uses** [1] - 46:14

## V

**vague** [1] - 29:8
**vaguely** [1] - 20:8
**VANDEVELDE** [69] - 2:3, 3:17, 4:17, 4:20, 4:22, 6:3, 6:6, 6:9, 6:18, 6:25, 7:9, 7:11, 7:15, 7:19, 7:22, 8:2, 8:4, 8:6, 8:10, 8:15, 8:17, 8:24, 9:2, 9:21, 10:3, 10:16, 10:24, 11:2, 11:4, 11:7, 11:10, 12:11, 12:14, 12:18, 13:3, 13:12, 14:10, 15:1, 15:8, 15:14, 16:17, 16:19, 18:3, 18:6, 18:11, 19:3, 19:7, 19:12, 20:6, 20:10, 22:7, 22:10, 22:13, 36:14, 36:19, 36:25, 37:24, 40:21, 41:1, 41:5, 42:15, 42:17, 42:25, 43:3, 43:25, 44:6, 44:10, 47:2, 48:6
**Vandevelde** [11] - 3:18, 3:19, 22:6, 22:21, 23:4, 25:12, 27:2, 28:22, 36:12, 39:13, 47:1

**Vandevelde's** [1] - 44:15
**variety** [1] - 25:2
**various** [1] - 24:24
**VEGAS** [1] - 3:1
**Vegas** [3] - 1:9, 1:17, 2:6
**verify** [1] - 9:17
**versions** [1] - 18:14
**versus** [3] - 3:4, 32:10, 32:16
**via** [1] - 43:10
**view** [3] - 14:6, 27:2, 27:8
**violate** [3] - 18:19, 18:22, 31:2
**violated** [4] - 19:22, 29:4, 31:6
**violates** [6] - 26:19, 26:22, 27:16, 27:17, 30:17, 33:21
**violating** [3] - 18:22, 20:22, 31:21
**violation** [2] - 33:25, 35:14
**violations** [1] - 25:15
**Virginia** [1] - 1:23
**volume** [2] - 21:7, 31:18
**vs** [1] - 1:8

## W

**wait** [1] - 27:5
**wants** [2] - 25:12, 35:1
**water** [3] - 9:19, 22:21, 45:20
**ways** [4] - 18:1, 29:7, 33:4, 43:11
**WEDNESDAY** [1] - 3:1
**week** [8] - 11:17, 14:1, 14:4, 15:9, 31:10, 34:25, 38:22, 39:3
**weekday** [1] - 39:23
**weekend** [1] - 38:19
**weeks** [31] - 15:5, 16:1, 16:2, 16:6, 16:11, 16:13, 16:15, 17:5, 21:7, 21:21, 21:24, 22:1, 22:2, 28:9, 28:14, 37:11, 37:12, 37:20, 39:6, 39:13, 39:14, 39:15, 39:16, 40:3, 41:7, 41:20, 41:25, 42:1, 42:4
**WEST** [1] - 2:5
**West** [1] - 3:20
**whatnot** [2] - 28:4, 28:19

**whatsoever** [2] - 20:14, 36:22
**whole** [2] - 28:9, 34:4
**wildly** [1] - 9:4
**willing** [1] - 25:9
**window** [1] - 14:9
**wish** [1] - 26:5
**withdrawn** [1] - 5:15
**witness** [4] - 13:24, 15:3, 40:11, 42:9
**witnesses** [2] - 13:22, 14:7
**witnesses'** [1] - 15:2
**wondering** [1] - 4:13
**words** [1] - 32:14
**works** [4] - 21:17, 30:21, 30:25, 31:2
**worried** [1] - 23:9
**wow** [1] - 8:9
**wrap** [2] - 23:10, 48:4
**wraps** [1] - 35:7
**write** [1] - 19:1
**written** [3] - 34:10, 41:11, 45:22

## Y

**year** [6] - 16:8, 24:10, 25:6, 25:16, 35:12, 39:3
**Year's** [1] - 14:1
**years** [7] - 18:23, 18:24, 20:20, 29:1, 37:7, 43:21