GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

*Attorneys for Defendants*
*Rimini Street, Inc. and Seth Ravin*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>            Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>**RIMINI STREET, INC'S OPPOSITION TO ORACLE'S MOTION TO COMPEL RE POST-INJUNCTION DISCOVERY**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**PUBLIC REDACTED VERSION** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................1

II. LEGAL STANDARD ........................................................................................2

III. ARGUMENT ....................................................................................................3

    A.     Oracle's Motion to Compel a Further Response to Rog 5 Should Be Denied .......3

        1.     Relevant Facts Relating to Rog 5 ........................................................4

        2.     Rimini's Response to Rog 5 Is Proper and Sufficient.........................6

    B.     Oracle's Motion to Compel Materials Responsive to RFP No. 11 Should Be Denied .........................................................................................7

        1.     Relevant Facts Relating to Rimini's Online Materials and RFP No. 11.............8

            a.     Rimini's Marketing Materials on Its Website.................................8

            b.     Oracle's RFP No. 11 ....................................................................9

            c.     Oracle's Drastic Expansion of RFP No. 11 During the Meet-and-Confer Process .........................................................10

        2.     The Online Materials Oracle Seeks Are Not Relevant and Are Disproportional to the Needs of This Post-Trial Proceeding ...........................11

            a.     There Are No Responsive Documents........................................12

            b.     The Documents Requested Under Oracle's Expanded View of RFP No. 11 Are Irrelevant ..............................................................12

            c.     The Requested Discovery Is Disproportional to the Needs of This Proceeding...............................................................................13

    C.     Oracle's Motion to Compel Draft Dev Instructions Should Be Denied Because They Are Privileged and Are Irrelevant to This Proceeding .................14

        1.     Relevant Facts Relating to Dev Instructions ....................................14

        2.     Rimini's Draft Dev Instructions in the ███████████████ ███ Are Privileged ........................................................16

            a.     The Draft Dev Instructions Are Kept Confidential.....................17

            b.     The Draft Dev Instructions Are a Communication to Counsel to Obtain Legal Advice .................................................................18

Gibson, Dunn &
Crutcher LLP

c.      Rimini's IP Counsel's Edits And Comments Provide Legal Advice ........19

3.      Draft Dev Instructions Not Used To Support Rimini Clients Are Not
Relevant To Oracle's Claims .............................................................................21

IV. CONCLUSION ......................................................................................................23

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcraft v. Experian Info. Solutions, Inc.*,
    2018 WL 6171772 (D. Nev. Nov. 26, 2018) .......................................................3

*In re Banc of Cal. Sec. Litig.*,
    2018 WL 6167907 (C.D. Cal. Nov. 26, 2018) ..................................................19

*Gen-Probe Inc. v. Becton, Dickinson and Co.*,
    2012 WL 3762447 (S.D. Cal. August 29, 2012)..........................................18, 19

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
    357 F.3d 900 (9th Cir. 2004)............................................................................16

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    879 F.3d 948 (9th Cir. 2018)............................................................................22

*Panduit Corp. v. Burndy Corp.*,
    1971 WL 17100 (N.D. Ill. Nov. 1, 1971)..........................................................17

*Phillips v. C.R. Bard, Inc.*,
    290 F.R.D. 615 (D. Nev. 2013)........................................................................18

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    329 F.R.D. 656 (D. Or. 2019) ..........................................................................18

*Premiere Digital Access Inc. v. Central Telephone Co.*,
    360 F. Supp. 2d 1168 (D. Nev. 2005) ....................................................15, 16, 17

*Roth v. Aon Corp.*,
    254 F.R.D. 538 (N.D. Ill. 2009) ......................................................................17

*Turner v. The Paul Revere Life Ins. Co.*,
    2015 WL 5097805 (D. Nev. Aug. 28, 2015) .......................................................3

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*
    (W.D. Okla. June 22, 2012) ..............................................................................19

**Rules**

Fed. R. Civ. P. 26(b)(1)....................................................................................2, 3, 21

Fed. R. Civ. P. 26(b)(3)........................................................................................16

Fed. R. Civ. P. 33(d) .............................................................................................6

Gibson, Dunn &
Crutcher LLP

# I.  INTRODUCTION

At the outset of this post-trial proceeding, Oracle represented to the Court that it only sought "limited discovery."  ECF No. 1199 at 1 ("Oracle's Motion to Permit Limited Discovery Regarding Rimini's Compliance With the Court's Permanent Injunction").  In the six months since Oracle made this statement, Oracle has requested, and Rimini has produced, a staggering amount of material, including more than 600,000 documents, the source code to Rimini's software tools, and massive data exports of its AFW database, client-management platform (Salesforce), and intranet (SharePoint).  Given Oracle's demands, the burden on Rimini, and the accelerated nature of this proceeding, Rimini was forced to provide direct access to multiple internal software support systems (Jira, DevTrack, and Spira).  That 24/7 access—by Rimini's *competitor*—continues today.  And more documents and data will be produced in the coming weeks, as Rimini is currently working to "refresh" certain productions.  This is an enormous amount of discovery for a post-trial proceeding that began with Oracle's representation that it was "not asking for very much."  ECF No. 1218 (Apr. 4, 2019 Hrg. Tr.) at 21:16.

Given this discovery record, Oracle's accusations that Rimini has "run the clock" and engaged in "foot dragging" are baseless.  Because discovery in this proceeding is a one-way street, and Oracle has no discovery obligations of its own, Oracle has used its leverage to pressure Rimini for more and more information, repeatedly sending Rimini letters raising 15 or more purported "issues" with Rimini's discovery.  Rimini has diligently responded to each and every issue, and, as Oracle admits (Mot. at 2), the parties resolved the vast majority of their disagreements through the meet-and-confer process.  What remains are three disputes in which Oracle seeks information that is irrelevant and/or privileged, unduly burdensome or impossible to provide, and disproportionate to the needs of this proceeding.

*First,* Oracle's motion to compel Rimini to provide a fifth supplemental response to Supplemental Interrogatory No. 5 ("Rog 5") should be denied.  Oracle seeks to compel Rimini to undertake a time consuming, manual review of its documents and software systems to compile a summary report for Oracle that Rimini does not keep in the ordinary course of business.  Rimini has no obligation to create a report that does not exist.  Rimini has produced

1

to Oracle, or provided live access to, all of the information necessary to compile this information, and has directed Oracle to these sources under Rule 33(d).  Under a straightforward reading of Rule 33(d), Rimini's response is entirely proper, and nothing more is required.

**Second,** Oracle's motion to compel further production of irrelevant marketing materials on Rimini's website in response to Request For Production ("RFP") No. 11 should be denied. Under the RFP as written, there are no responsive documents.  When Rimini informed Oracle of that fact, Oracle reinterpreted RFP No. 11 to allegedly cover "***all*** whitepapers, articles, updates, software, and manuals and documents" on Rimini's website "and documents referenced in the creation of such materials"—*i.e.*, every document on Rimini's website and every document that any author "referenced" in creating any of the documents on Rimini's website.  That reinterpretation is improper, and the new, expanded request seeks irrelevant marketing documents, is unduly burdensome, and is disproportionate to the needs of this proceeding.

**Third,** and finally, Oracle's motion to compel *draft* Dev Instructions that have never been used in connection with providing support services to clients should be denied because they are privileged, and, in any event, are irrelevant.  The draft Dev Instructions that Oracle seeks from a folder titled ███████████████████ reflect privileged communications between Rimini employees and Rimini in-house intellectual property counsel seeking and providing advice regarding compliance with this Court's Injunction and Rimini's policies for use of intellectual property.  Moreover, such draft documents are irrelevant; Rimini has already produced *all* Dev Instructions ████████████████████████████████ ██████  In contrast, the *draft* Dev Instructions that Oracle demands ████████████ ████████████████████████████, and thus are irrelevant.

Oracle's motion should be denied in its entirety, and the parties should move on to the next phases of this proceeding.

## II.  LEGAL STANDARD

Discovery is limited to matters that are both "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The moving party bears

the burden to show a prima facie case of proportionality.  *Turner v. The Paul Revere Life Ins. Co.*, 2015 WL 5097805, at *3 (D. Nev. Aug. 28, 2015).  "Proportionality focuses on the marginal utility of the discovery being sought."  *Ashcraft v. Experian Info. Solutions, Inc.*, 2018 WL 6171772, at *1 (D. Nev. Nov. 26, 2018).  The Court "must limit the frequency or extent of discovery … if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

## III.  ARGUMENT

### A.    Oracle's Motion to Compel a Further Response to Rog 5 Should Be Denied

Rog 5 requests a summary compilation of detailed information regarding all deliverables that Rimini has provided its clients, including the dates, clients that received the update, the files updated, software versions that were run, and application platforms.[1]  Rimini ███████████████████████████████████████████████████████████████████ ██████████ (Declaration of Sheryl Arnold in Support of Rimini's Opposition to Oracle's Motion to Compel ("Arnold Decl.") ¶ 3), and Rimini objected to Rog 5 on this basis.  Declaration of David Kocan in Support of Oracle's Motion to Compel re Post-Injunction Discovery ("Kocan Decl."), Ex. 8 at 15.  However, Rimini undertook an investigation to determine whether it could export a subset of the information sought by Rog 5 from its Jira and DevTrack software support systems.  Arnold Decl. ¶ 5.  While Rimini initially believed that exporting some information about client deliverables would impose a manageable burden, it soon became clear that even that effort would require a time-consuming, manual review of Jira and DevTrack entries.  *See id.*

In good faith, Rimini resolved to press forward and attempt to compile the information it could, notwithstanding the burden, and provided that extensive information to Oracle.  *See Id.* ¶ 5.  In total, Rimini employees who have full time jobs that have nothing to do with this

---

[1]  Rog 5 also asks Rimini to list "the Persons who were involved in developing or testing" individual client deliverables.  Rimini informed Oracle that Rimini ██████████████████████ ██████████ *See* Kocan Decl., Ex. 20 at 2–3.  Oracle dropped the issue and its motion does not appear to seek this information.

Gibson, Dunn & Crutcher LLP

litigation spent well over 100 hours working on the project. *Id.* ¶ 7. But Oracle was not satisfied, and sent Rimini numerous letters claiming that Rimini's response to Rog 5 omitted certain client deliverables, which Oracle purported to have discovered by reviewing the same systems Rimini was relying on—Jira and DevTrack, to which Oracle has been given live access. *See e.g.* Kocan Decl., Exs. 19, 22. Oracle's letters also demanded that Rimini provide other information that was not exportable from any Rimini system and would require Rimini to perform a document-by-document review of ███████████████████████████████ ██████████████████████████ (which, even in the limited time period covered by this proceeding, number well into the thousands) █████████████████████████████ *Id.* Although Rimini has already produced to Oracle ██████████████████████, which constitute perhaps the best information about Rimini's client deliverables, Oracle ignored these materials and continued to insist that Rimini provide Oracle a summary that Rimini simply does not have.

Eventually, because of the burden, and because Oracle already has the documents and data it needs to compile *all* of the information available that is responsive to Rog 5—not just the subset Rimini was trying to export from Jira and DevTrack—Rimini served on Oracle a supplemental response to Rog 5 that relies on Rule 33(d) and directs Oracle with specificity to the relevant sources. *See* Kocan Decl., Ex. 8. The burden on either party to review those sources is the same. Rimini's latest supplemental response is therefore sufficient, and Oracle's motion should be denied.

1. **Relevant Facts Relating to Rog 5**

████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████ *Id.*

Gibson, Dunn &
Crutcher LLP

1   In response to Rog 5, Rimini undertook an investigation to determine what information

2   could be exported from its Jira and DevTrack systems, and concluded that it could provide

3   Oracle ████████████████████████████████████████████████████████████████

4   █████████████████████████████████████████ *Id.* ¶ 5.  While the

5   ███████████████████████████████████████████████ could be exported from Jira

6   and DevTrack, ███████████████████ could not.  *Id.*  Nevertheless, acting in good faith,

7   Rimini undertook a manual and, as it turned out, extraordinarily time-consuming review of

8   DevTrack and Jira entries to obtain ████████████.  *Id.*  The results were compiled into Exhibit

9   D to Rimini's response to Rog 5.  *Id.*

10   Oracle then sent Rimini a series of letters claiming that Rimini's response was deficient.

11   Oracle's deficiency claims were based in part on its own review of Rimini's DevTrack and Jira

12   systems—*i.e.*, the same information Rimini relied on.  *See e.g.* Kocan Decl., Exs. 19, 22.  Rimini

13   responded to each of these letters by performing yet another manual review of DevTrack and

14   Jira.  Arnold Decl. ¶ 6.  The Rimini employees who were best suited to attempt to compile the

15   information invested well over 100 hours working on the project, which, because of their

16   normal job duties, they did by working nights and weekends.  Arnold Decl. ¶ 7.  Oracle also

17   contended that Rimini must summarize and compile ████████████████████████████

18   in Exhibit D, despite the fact that Rimini had already explained that this information is not

19   exportable from Jira or DevTrack, but is available to Oracle in ████████████████

20   ████████████  Kocan Decl., Ex. 20 at 1–2.

21   In light of the burden associated with manual review of Jira and DevTrack, and Oracle's

22   continued insistence that Exhibit D was deficient, Rimini served a Fourth Supplemental

23   Response to Rog 5 that, pursuant to Rule 33(d), directed Oracle to ██████████████

24   ████████████████████████████████████ as sources in which Oracle could find

25   all of the information it seeks.  Kocan Decl., Ex. 8 at 8–9.  In follow-up correspondence, Rimini

26   explained to Oracle that ██████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████, would provide the best information available.  Declaration

1   of Eric D. Vandevelde in Support of Rimini's Opposition to Oracle's Motion to Compel

2   ("Vandevelde Decl."), Ex. B at 4–6.  Indeed, although Oracle's motion falsely claims that

3   Rimini has refused to provide ████████████████████, both categories of

4   information are readily available to Oracle in ██████████████ (but are not

5   systematically tracked in Jira or DevTrack). *See, e.g., id.* at Ex. C.

6           **2.      Rimini's Response to Rog 5 Is Proper and Sufficient**

7           Oracle contends that Rimini's response to Rog 5 is insufficient because it does not

8   include "file names or product version information" and omits "567 ███████████

9   Mot. at 7, 9.  Both arguments should be rejected.

10          Rimini's Fourth Supplemental Response to Rog 5 properly relied on Rule 33(d).  Oracle

11  contends that the burden of obtaining information responsive to Rog 5 is not "substantially the

12  same" on both parties based on supposed logistical issues related to accessing Jira.  *See* Mot. at

13  8.  But as Rimini has explained, the process for obtaining this information largely involves a

14  manual review of the ████████████, which identify, among other things, the

15  ████████████████████████████████████████

16  ████████████  *See* Vandevelde Decl., Ex. B at 4.  Tellingly, Oracle's motion

17  barely mentions these documents, other than to vaguely claim that "the other documents Rimini

18  cites in its response are similarly incomplete."  Mot. at 9.  To the extent Oracle is not satisfied

19  with the information available in ██████████████, it can cross-check the

20  deliverables in Jira, DevTrack, and Rimini's export of SalesForce records.  *See* Vandevelde

21  Decl., Ex. B at 4.  This process of reviewing the ██████████████, and consulting

22  other sources if necessary, is precisely what Rimini would be forced to undertake to create a

23  report that includes all the available information sought by Rog 5, and thus the burden is

24  "substantially" the same for both Rimini and Oracle.  *See* Fed. R. Civ. P. 33(d) (producing and

25  referencing business records is a proper response where "the burden of deriving or ascertaining

26  the answer will be substantially the same for either party").  Regardless, Oracle's claims about

27  the burden of using Jira ring hollow, given that Oracle has repeatedly relied on Jira to create

28

1    detailed lists of the very information it contends Rimini should add to Exhibit D.[2]  *See* Kocan

2    Decl., Ex. 19 at 1.

3            Oracle's argument regarding the 567 ███████████ supposedly missing from

4    Exhibit D is similarly flawed.  As an initial matter, the fact that Oracle is using the same sources

5    as Rimini to dispute Rimini's compilation only shows that a Rule 33(d) response is proper;

6    Oracle can make its own compilation, as it apparently already has done.  Further, the specific

7    ███████████████ Oracle claims are "missing" are not responsive, including because

8    ████████████████████████████████████████████████████

9    ████████████████████████████ before the effective date of the

10   Injunction.  Vandevelde Decl., Ex. B.  Oracle's motion does not address the first two categories,

11   but it vaguely claims that ████████████████████ after the Injunction

12   took effect (without identifying the specific ████████████ to which this argument

13   supposedly applies).  Rimini's time-consuming investigations have shown that Oracle is wrong,

14   but regardless, this back and forth should end.  Oracle has the ████████████████

15   and other data sources it needs to compile the deliverable list it seeks, and the burden is the

16   same on both parties to create that list.  Nothing more is required from Rimini, and Oracle's

17   motion should be denied.

18   **B.    Oracle's Motion to Compel Materials Responsive to RFP No. 11 Should Be Denied**

19           Oracle's motion to compel certain marketing materials from Rimini's website in

20   response to RFP No. 11 should also be denied because (1) reading the RFP according to its

21   plain terms, there are no responsive documents; and (2) under Oracle's expanded view of RFP

22   No. 11, the documents sought—*i.e.*, every PeopleSoft or JDE document on Rimini's website

23   and all documents "referenced" in creating them—are entirely irrelevant and would be unduly

24   burdensome if not impossible to produce.

---

25
26   [2]  Oracle makes much of the fact that Rimini's initial substantive response to Rog 5 suggested
     that Exhibit D contained ████████████████████.  Exhibit D did not
27   contain that information, and Rimini never intended to suggest that it did, as the ███
     ████████████ from Jira and DevTrack.  That language was a clerical error,
28   as Rimini explained, and Rimini immediately corrected the error when Oracle brought it to
     Rimini's attention.  Oracle's attempt to manufacture some "bad faith" on Rimini's part from
     this innocent mistake is unprofessional and should be ignored.

Gibson, Dunn & Crutcher LLP

1. **Relevant Facts Relating to Rimini's Online Materials and RFP No. 11**

   a. **Rimini's Marketing Materials on Its Website**

Rimini maintains an externally-facing website, riministreet.com, which contains hundreds of online marketing assets ("Online Materials"). Declaration of Meyleen Beichler in Support of Rimini's Opposition to Oracle's Motion to Compel ("Beichler Decl.") ¶ 3. These materials include client marketing briefs, brochures, company fact sheets, data sheets, and "client success stories," as well as marketing webinars and white papers. *Id.* The materials are for marketing purposes, to advertise Rimini's services and inform potential clients of the value they can obtain from hiring Rimini for software support. *Id.* ¶ 4; Declaration of Frank Reneke in Support of Rimini's Opposition to Oracle's Motion to Compel ("Reneke Decl.") ¶ 2.

These materials are generally publicly available (indeed, that is their purpose). Beichler Decl. ¶ 6; Reneke Decl. ¶ 11. No login or password is required to access them. In some cases, a user needs to enter a name and organization before clicking "download" in order to download a document, but any name or organization will suffice. Beichler Decl. ¶ 6; Reneke Decl. ¶ 11. Oracle's counsel can access them by typing their name and organization (or any name and organization) into the appropriate boxes.

Dozens of people have authored or contributed to Rimini's Online Materials. Beichler Decl. ¶ 9. Typically, to the extent an author of an article or white paper relies on external sources in creating online content, those sources are publicly available online, in which case, it is Rimini's policy to reference those sources in the "References" section of the paper. *Id.* ¶ 7. Aside from sources explicitly referenced, Rimini does not have a systematic way to identify the materials authors considered or referenced in writing content for the website. *Id.* ¶¶ 8–9.

Employees that create online content do not have access to Oracle software environments, software, or patches. *Id.* ¶ 5; Reneke Decl. ¶¶ 3, 5. Rimini does not rely on any non-public Oracle materials in creating any marketing or online content. Beichler Decl. ¶ 5; Reneke Decl. ¶ 3. To the extent it relies on any Oracle information, it is publicly-available information, such as publicly-available information from Oracle's own website. Reneke Decl. ¶ 3. Online content creators are separate from Rimini's development team (which does have

access to Rimini's clients' Oracle software as part of support of each client), and do not obtain information from the development team regarding Oracle software for use in marketing materials.  Beichler Decl. ¶ 5; Reneke Decl. ¶¶ 3, 5.

### b.  Oracle's RFP No. 11

Oracle's RFP No. 11 requests "All Documents relating to Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials."  Kocan Decl., Ex. 9 at 10.  In simple terms, "Oracle Software and Support Materials" means any Oracle software applications (including updates and patches), or proprietary support documentation.[3] "Rimini's Online Materials" essentially means any document "advertised" or made available on Rimini's website.[4]  Kocan Decl., Ex. 21 at 1, n.1.

By its plain terms, RFP No. 11 seeks all documents relating to "Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials."  Thus, cutting through the awkward phrasing of the RFP, if there is a Rimini online asset that comprises Oracle software, or that Oracle software was used to create, this RFP seeks all documents relating to the Oracle software used to create the asset.

Upon receiving RFP No. 11, Rimini investigated with those that oversee the creation of its online content and determined that Rimini does not use Oracle Software and Support Materials in creating its online marketing materials and that content creators do not have access

---

[3]  The full definition of "Oracle Software and Support Materials" is: "software applications, environments, and other installations, program updates, software updates, bug fixes, patches, custom solutions, and instructional documents for any families of software products provided by Oracle, including those of the J.D. Edwards Family of Products, PeopleSoft Family of Products, Siebel Family of Products, and Oracle Database Family of Products, regardless of whether any such materials were later modified by any Person, including without limitation a customer or third-party support provider." Vandevelde Decl., Ex. A ¶¶ 8, 14.

[4]  The full definition of "Rimini's Online Materials" is:  "Documents advertised or made available on or through Rimini's websites, including, without limitation, materials on Rimini's online resource library located at https://www.riministreet.com/resource-library, white papers (such as those referenced on webpage https://www.riministreet.com/white-paper-unpacking-the-hcm-andfin-pum-images-for-peoplesoft), webinars (such as those referenced on webpage https://info.riministreet.com/PeopleSoft-Webinars-LP.html), analyst research, brochures, client success stories, datasheets, eBooks, infographics, podcasts, research reports, and videos." Kocan Decl., Ex. 21 at 1, n.1.

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn & Crutcher LLP

1    to such materials.  *See* Beichler Decl. ¶ 5; Reneke Decl. ¶ 3.  Thus, Rimini responded as follows

2    (objections omitted):

3    ████████████████████████████████████

4    ████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ████████████████████████████████████████████████

     Kocan Decl., Ex. 9 at 10.

10

11        Although Rimini's investigation revealed that there are no responsive documents,

     Rimini invited Oracle to identify any online content that Oracle believed may "comprise"
12
     Oracle Software and Support Materials or may have been created by using Oracle Software and
13
     Support Materials.  *Id.*  Oracle identified one such white paper.  Kocan Decl., Ex. 21 at 1.  That
14
     paper was publicly available online at a link that Oracle itself identified, but Oracle refused to
15
     download it from the website, and instead requested that Rimini produce it.[5]  Even though
16
     Rimini confirmed with the author of the white paper that no Oracle Software and Support
17
     Materials were used in creating the white paper, and thus it was not responsive, Rimini
18
     produced the article.  Vandevelde Decl., Ex. D at 4.
19

20                    c.    **Oracle's Drastic Expansion of RFP No. 11 During the Meet-and-**
                           **Confer Process**

21        Not satisfied with Rimini's response that no responsive documents exist, Oracle

22   attempted to rephrase RFP No. 11 during the meet-and-confer process in order to drastically

23   expand its scope.  Rather than requesting documents related to "Oracle Software and Support

24   Materials comprising or used in Rimini's Online Materials," as the text of RFP No. 11 states,

25   Oracle claimed that it now seeks "all whitepapers webinars, articles, updates, software, and

26   manuals, and documents referenced in the creation of such materials, so long as they relate to

27
     ────────────────────────
28   [5]  Oracle claimed that downloading the document would be "an unauthorized communication
         with a represented party," an excuse for which it has never provided any authority.  *See*
         Mot. at 11.

Gibson, Dunn &
Crutcher LLP

the Oracle Software at issue." Mot. at 10; Kocan Decl., Ex. 23 at 5. In other words, Oracle now seeks every asset on Rimini's website that relates to PeopleSoft or JDE, and "all documents referenced in the creation" of those assets.

That is a breathtakingly broad request. Rimini objected that—in addition to being outside the scope of the language of RFP 11—the request was overly broad, irrelevant, unduly burdensome, and disproportional to the needs of this proceeding. Vandevelde Decl., Ex. D at 4; Kocan Decl., Ex. 24 at 5. Oracle never specified why it believed such marketing documents were relevant other than its conclusory assertion that "[s]uch discovery has a direct bearing on Rimini's compliance with the Injunction." Kocan Decl., Ex. 26 at 4.

Without explaining the relevance of its expanded request, Oracle asked Rimini to provide a list of those assets and to provide "an estimate of the number of documents referenced or used in creating them." *Id.* at 5. Rimini investigated the feasibility of doing so, and determined that ████████████████████████████████████ and that the work required to create such a list would be equal for both Oracle and Rimini; the documents are on Rimini's website, so Oracle could identify them for itself if it wished. Kocan Decl., Ex. 29 at 6; Beichler Decl. ¶¶ 6, 8. As for identifying the "documents referenced or used in creating" the online materials, that would require interviewing every author of online content over the past year and having them attempt to identify "referenced" documents—an unduly burdensome, unrealistic, and grossly disproportional task. Beichler Decl. ¶ 9.

Oracle did not attempt to identify any specific online materials that it claimed were relevant, save for the one white paper that Rimini produced (even though it was not relevant). Instead, Oracle filed this motion to compel.

### 2. The Online Materials Oracle Seeks Are Not Relevant and Are Disproportional to the Needs of This Post-Trial Proceeding

Oracle's motion should be denied for two reasons. First, under the plain terms of RFP No. 11 as written, there are no responsive documents. Second, under Oracle's expanded reframing of RFP No. 11, the documents sought are irrelevant and not proportional to the needs of this proceeding.

1

### a.     There Are No Responsive Documents

The plain text of RFP No. 11 seeks documents related to "Oracle Software and Support Materials comprising or used in Rimini's Online Materials."  That is, if there are any Rimini Online Materials that comprise or were created by using Oracle Software and Support Materials, the RFP requests all documents "related to" the Oracle Software and Support Materials used in the Rimini Online Materials.  However, Oracle Software and Support Materials were not used to create any of Rimini's Online Materials.  Beichler Decl. ¶ 5; Reneke Decl. ¶¶ 3, 5, 9.  Thus, there are no responsive documents.

Oracle identified only one document, a white paper, that it *contends* may have been created using Oracle software.  But, as made clear by the author of the paper, no Oracle Software and Support Materials were used or referenced in creating that paper.  Reneke Decl. ¶¶ 6–9.  He and his team do not even have access to Oracle software.  *Id.* ¶ 3.  Oracle claims that the paper states that "Rimini Street analyzed all of the updates Oracle Corporation incorporated" into certain PeopleSoft images, and on that basis argues that Rimini's statement that it did not access Oracle software "lacks credibility."  Mot. at 10.  That is wrong.  The paper analyzed Oracle's publicly-available descriptions of the contents of Oracle updates, and cited that online source in its references.  Reneke Decl. ¶¶ 7, 9.  In any case, Rimini produced that document to Oracle (even though it would have taken less than a minute for Oracle to download it for itself).

Notwithstanding Oracle's access to Rimini's website and ability to review documents therein, Oracle does not contend that any other document on Rimini's website incorporates Oracle Software and Support Materials.  Accordingly, no responsive documents exist, and there is nothing to compel.

### b.     The Documents Requested Under Oracle's Expanded View of RFP No. 11 Are Irrelevant

Oracle's attempt to expand RFP No. 11 to encompass all documents on Rimini's website related to PeopleSoft and JDE and all documents referenced in their creation should be rejected because that is not what the text of RFP No. 11 seeks.  But even if the Court allows Oracle to reframe its RFP, the request, as reframed, seeks only irrelevant documents.

Rimini's Online Materials are marketing documents.  They are not used for client support.  They do not consist of ███████████████████████████████ ████████████████  Thus, they have nothing to do with the issues in this proceeding, namely whether Rimini violated the Injunction by "us[ing] a specific licensee's PeopleSoft [or JDE] software or documentation other than to support the specific licensee's own internal data processing operations."  ECF No. 1166 ¶ 6; *see* Mot. at 10.

Oracle's sole claim of relevance is that "[f]or example, *if* Rimini is using Oracle's Software and Support Materials to develop Rimini's Online Materials, ***then*** it is using Oracle's Software and Support Materials 'other than to support the specific licensee's own internal data processing operations,' which violates the Injunction."  Mot. at 10 (emphases added).  That is a dubious "if."  Oracle has provided no evidence showing that Rimini uses Oracle Software and Support Materials to develop online content.  And, as Rimini's employees declared, Rimini's creators of online content do not even have access to such materials.  Beichler Decl. ¶ 5; Reneke Decl. ¶ 3.  At most, Oracle's argument supports relevance of documents under the original scope of RFP No. 11—documents related to situations where Oracle Software and Support Materials were used in creating Rimini's Online Materials—for which there are no responsive documents.  Oracle makes *no argument* for why every marketing document related to PeopleSoft or JDE, and every document referenced in their creation, would be relevant.

### c.  The Requested Discovery Is Disproportional to the Needs of This Proceeding

In addition to being irrelevant, the requested discovery is disproportional to the needs of the proceeding for three reasons.  *First*, the documents are publicly available online and accessible to Oracle.  Beichler Decl. ¶ 6.  Oracle could have reviewed these documents (and perhaps did), and if it believed in good faith that some were relevant, it could have specifically sought those documents and articulated their relevance.  As explained above, it did so for only one document, and Rimini produced the document to avoid a dispute.

*Second*, Oracle's request for all "documents referenced in the creation" of all materials on the website is extraordinarily burdensome, and likely impossible to comply with.  Rimini

does not have a repository of documents authors considered or "referenced" in creating Online Materials. Beichler Decl. ¶ 9. Thus, it would need to individually interview each of the dozens of authors of online content to ask if they remember what they "referenced" in their work, and, if so, how to locate it. *Id.* Employees are unlikely to remember the ancillary information they referenced in connection with material they wrote months or years ago. *See* Reneke Decl. ¶ 10. Moreover, the task of even attempting to identify these materials would require large time commitments by Rimini employees, in addition to attorney time to conduct interviews, and would be unlikely to yield anything of relevance.[6]

*Third*, because there is no central repository of documents "referenced" in the creation of Online Materials, Oracle's request amounts to a request for Rimini to collect and review custodial documents for all of the authors of online content. The Court already ruled on the scope of custodial discovery, limiting it to ten custodians of Oracle's choosing and implementing cost-shifting measures. Oracle chose not to identify any marketing witnesses as custodians (again, because they are not relevant), and it should not be permitted to make an end-run around that Order through RFP No. 11. Rimini also does not have possession, custody or control over materials that an author viewed online, such as on a public website. Accordingly, Oracle's request to compel a supplemental response to RFP No. 11 should be denied.

## C. Oracle's Motion to Compel Draft Dev Instructions Should Be Denied Because They Are Privileged and Are Irrelevant to This Proceeding

### 1. Relevant Facts Relating to Dev Instructions

As part of its processes for providing tax, legal, and regulatory ("TLR") updates to its clients' PeopleSoft software, ███████████████████████████ Declaration of Tim Conley in Support of Rimini's Opposition to Oracle's Motion to Compel ("Conley Decl.") ¶ 2. ████████████████████████

████████████████████████

---

[6] Some types of online content, such as articles or white papers, typically cite referenced sources in a "References" section, in which the author provides links to articles or other cited materials. Those materials are equally available to Oracle, who can follow the links in Rimini's online materials just as easily as Rimini's counsel can.



1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 2–3.

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  Declaration of Erin Mendillo in Support of Rimini's Opposition to Oracle's Motion to Compel

9  ("Mendillo Decl.") ¶ 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮ Conley Decl. ¶ 5; Mendillo Decl. ¶ 4. ▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mendillo Decl. ¶ 4. ▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮ Conley Decl.¶ 6; Mendillo Decl. ¶ 5. ▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Conley

17  Decl. ¶ 7; Mendillo Decl. ¶ 5. Rimini does not claim privilege over any of these final Dev

18  Instructions in ▮▮▮▮▮▮▮▮▮, and Rimini has produced them to Oracle.

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mendillo Decl. ¶ 7. ▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮.[7] *Id.* ¶ 7.

26

27

28  [7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Gibson, Dunn &
Crutcher LLP

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL
CASE NO. 2:10-CV-00106-LRH-VCF

**2.      Rimini's Draft Dev Instructions in the** ███████████ **Are Privileged**

Oracle first claims that draft Dev Instructions in the ███████████████ ████ are not privileged.  That claim is wrong.  In the Ninth Circuit, the attorney-client privilege exists where: "(1) legal advice of any kind was sought; (2) the advice was from a professional legal adviser in his capacity as such; (3) the communications was relating to that purpose; (4) the communication was made in confidence; and (5) the communication was made by the client."  *Premiere Digital Access Inc. v. Central Telephone Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005).

Draft Dev Instructions in ████████████████████ (and not in the ███████████████) meet all of these elements.  *First*, R████████████ ████████████████ for the purpose of seeking legal advice from Rimini's Legal Department regarding ██████████████████████ Conley Decl. ¶ 4; Mendillo Decl. ¶ 3.  *Second*, the communications ███████████████ ██████████████████ Mendillo Decl. ¶ 4.  *Third*, ████████████ ████████████████ for the purpose of providing legal advice regarding ██████████████████ *Id.  Fourth*, the draft Dev Instructions and any comments made to them are kept confidential because ████████ ██████████████████ *Id.* ¶ 7.  *Finally*, the communication is made ██████████████ *Id.* ¶ 4; *Premiere Digital Access*, 360 F. Supp. 2d at 1175.[8]

Oracle makes three arguments in support of its claim that draft Dev Instructions are not privileged: (1) they are not kept confidential; (2) they do not seek legal advice; and (3) counsel's edits do not reflect legal advice.  Each of these arguments lacks merit.

---

[8]  To the extent draft Dev Instructions contain attorney comments, those comments are also work product.  "[T]o qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'"  *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004).  ██████████████████ ██████████ meet these criteria.  *See* Mendillo Decl. ¶¶ 3–4.

<b>a.    The Draft Dev Instructions Are Kept Confidential</b>

███████████████████████████████████████████████████

████████████████████████████ is a confidential communication to counsel seeking legal advice. ████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████ Mendillo Decl. ¶ 7.[9]

Oracle claims that ███████████████████████████████████████

██████████████████████, they are no longer confidential.  Mot. at 18.  But the fact that

███████████████████████████████████████████ does not negate confidentiality.  *See Premiere Digital Access*, 360 F. Supp. 2d at 1174–75 (email prepared by in-house counsel was privileged, despite the fact that the email was forwarded from one non-legal employee to another).  Instead, when assessing confidentially, courts look to whether the individuals with access to the legal communication had an interest in the underlying information. *See Roth v. Aon Corp.*, 254 F.R.D. 538, 541–42 (N.D. Ill. 2009) (finding no breach of confidentiality because "all of the non-lawyer individuals who were privy to the [email at issue] were … ***directly concerned with the matter*** …[and] [t]o disallow corporations the space to collectively discuss sensitive information with legal counsel would be to ignore the realities of large-scale corporate operation") (emphasis added); *Panduit Corp. v. Burndy Corp.*, 1971 WL 17100, at *2 (N.D. Ill. Nov. 1, 1971) (finding no waiver of privilege where "[t]he subject matter of the communications in question is within the scope of the duties of the involved employees").  Here, it is beyond dispute that █████████████████████████████████████

████████████████████████████████████████████████

████.[10]  Mendillo Decl. ¶ 7.

Oracle also argues that communications in the ████████████████████████████ are not confidential because █████████████████████████████████████

---

[9]   *See supra* n.7.

[10]  ████████████████████████████. *Supra* n.7.

17

1 █████████████████████████████████████████████████████████████

2 ███████      Mot. at 18–19.  That is highly misleading.  The cited document actually d██████

3 ███████████████████████████████████████████████████████████

4 ████████████ over which Rimini does ***not*** claim any privilege.  *See* BFC Decl. Ex. 5 at 2

5 ███████████████████████████████████████████████████████████

6 ██████████████████████████████████████████) (emphasis added).  This is a critical

7 point.  The final Dev Instructions ██████████████████████████████████████████

8 ████████████████████████—the contents of which Rimini produced.  Oracle's

9 Motion seeks solely privileged drafts.

10      Further, Oracle's argument that █████████████████████████████████

11 █████████████████████████████████████████ does not negate

12 privilege.  ████████████████████████████████████████

13 ███████████████████████████ Conley Decl. ¶ 4.  There is

14 no legal or logical reason why that should vitiate privilege.

15        **b.**    **The Draft Dev Instructions Are a Communication to Counsel to Obtain Legal Advice**

16

17      Oracle also claims that the *initial* drafts of Dev Instructions are not communications to

18 counsel seeking legal advice because Rimini has not shown that the "primary" purpose of

19 ***drafting*** a Dev Instruction document is to obtain legal advice.  *See* Mot. at 18.  This is not the

20 law.  "The fact that a document may be prepared for a business purpose does not preclude it

21 from being privileged if it is sent to an attorney *for the purpose of receiving legal advice relating*

22 *to that document*."  *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D.

23 656, 662 (D. Or. 2019) (emphasis added).  Likewise, here, the fact that a █████████████

24 ████████████████████ does not negate the fact that ████████████████████

25 ████████████████████████████████████████.  Oracle's

26 authority, *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 629 (D. Nev. 2013), does not require a

27 different conclusion.  There, the court recognized that the proper analytical framework is to

28 examine the "context of the communication and content of the document" and take "into

account the facts surrounding the creation of the document and the nature of the document." *Id.*  Here, the context and facts show that ███████████████████████████ ███████████████████████████████████████████████████████████ Rimini is engaged in ongoing litigation with Oracle and is also subject to the Court's Injunction, and the draft Dev Instructions are created in the ██████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████  Mendillo Decl. ¶¶ 3–4.

Further, if the draft Dev Instructions were produced, a simple comparison between the draft and final versions would reveal Rimini's attorneys' legal advice.  *See Gen-Probe Inc. v. Becton, Dickinson and Co.*, 2012 WL 3762447, at *3 (S.D. Cal. August 29, 2012) (finding that draft letters were privileged since "the [original and final] letters are not identical, the substance of the conversations between [attorney and client] could be indirectly disclosed by the disclosure of the earlier drafts.").  Indeed, when a draft document is sent to counsel for review and legal advice, "the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed."  *In re Banc of Cal. Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018); *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, at *10 (W.D. Okla. June 22, 2012) (same).  Oracle argues that attorney-client communications cannot be discerned by comparing the draft and final versions of the Dev Instructions because ███████████████████████████████████████████████*See* Mot. at 18.  But Oracle misstates Rimini's process. ████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████  (Mendillo Decl. ¶¶ 4–6), ████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████  *See Gen-Probe*, 2012 WL 3762447, at *3.

   c.    **Rimini's IP Counsel's Edits and Comments Provide Legal Advice**

Rimini's IP counsel ██████████████████████████████████████████ ███████████████████████████████████████████  Mendillo Decl. ¶ 4.

Contrary to Oracle's arguments, the documents are not sent to counsel to solicit "editorial, and not legal" comments, nor is this a process to "shield" relevant discovery.  Mot. at 19–20.

With respect to "editorial" comments, Oracle cites an example of ███████████

████████████████████████████████████████████████████████████████

████████████████████████████  Mot. at 19.  This is not merely an "editorial comment."

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███  *See* Mendillo Decl. ¶ 4.  In light of the ongoing litigation between the parties concerning Rimini's processes for supporting Oracle software, ████████████████████████

████████████████████████████████████████████████████████████████

██████████████████  Moreover, the extent and nature of counsel's comments is irrelevant to whether the initial communication to counsel seeking legal advice was privileged.

Oracle next argues that █████████████████████████████████████

██████████████████ is an attempt to "shield" relevant discovery.   That accusation is not well taken.  *First*, █████████████████████████████████

██████████████████  *See* Mendillo Decl. ¶ 3.  *Second*, the parties have been engaged in a decade of litigation, and Rimini is subject to the Court's Injunction.  ██████

████████████████████████████████████████████████████████████████

██████████████████  *See* Mendillo Decl. ¶ 4.  *Third*, Oracle argues that Rimini renamed folders ███████████████████ from "Individual Updates" to ███████████████

██████████ when discovery opened in this post-trial proceeding in an improper attempt to claim privilege over non-privileged documents.  Mot. at 19.  This is false.  ████████████

████████████████████████████████████████████████████████████████

████████████████████████  *See id.* ¶ 3.

Oracle provides no argument for why ████████████████████████████████

██████████████████ is in any way evidence of efforts to "shield" relevant discovery

Gibson, Dunn &
Crutcher LLP

(and, as discussed *infra* Section III(C)(3)), this material is not relevant to Oracle's claims). Indeed, Oracle's sole example to support this premise in fact shows that ███████████████

████████████████████████████████████████████████ Oracle points to ███████████████████

████████████████████████████████████████████████ (Mot. at 19), but Oracle cannot explain why that comment regarding t███████████████

███████████ suggests that Rimini was "shielding" relevant content. And even i███████

██████████████████████████████████████, as Oracle alleges (*id.* at 20), ██

████████████████████████████████████████████████ ██████ The reality is that Rimini, a company engaged in protracted litigation and subject to this Court's Injunction, instituted practices—██████████████████████— designed to ensure that its support processes comply with that Injunction.

Because draft Dev Instructions are privileged attorney-client communications, and because Oracle's arguments to the contrary are meritless, the Court should deny Oracle's motion.

### 3.    Draft Dev Instructions Not Used to Support Rimini Clients Are Not Relevant to Oracle's Claims

Even putting aside the fact that draft Dev Instructions are privileged, Oracle cannot meet its threshold burden to show that the discovery it seeks is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Oracle claims that draft Dev Instructions are "evidence relevant to Rimini's cross-use of PeopleSoft environments," which allegedly "violates the Court's directive that 'Rimini shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation *on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee.*" Mot. at 13 (emphasis added). Rimini has produced *final* Dev Instructions ████████████████████

████████████████ Rimini also produced any draft Dev Instructions ████████████████

█████████t. Oracle's Motion nevertheless seeks *draft* Dev Instructions that were *never* used

Gibson, Dunn &
Crutcher LLP

1    to support Rimini clients.  Because documents that were *never* used to support Rimini's clients

2    are not relevant to Oracle's "cross-use" theory, the Court should deny Oracle's motion.

3           Oracle attempts to show relevance by conflating the distinctions between the *final* Dev

4    Instructions that Rimini has already produced and the *draft* Dev Instructions that were never

5    sent to clients or used for client software support.  Oracle contends that draft Dev Instructions

6    are evidence of "enjoined 'development and testing' … as well as reproduction, preparation of

7    derivative works from, or use of a customer's software 'other than to support the specific

8    licensee's own internal data processing operations.'"  Mot. at 14.  Rimini disputes that Dev

9    Instructions improperly ██████████████████████████████ (and disputes

10   Oracle's characterization of Rimini's development processes (*see id.* at 14–15)), but putting

11   that aside for purposes of this discovery motion, the fatal flaw in Oracle's "relevance" claim is

12   that the *draft* Dev Instructions do not show anything relevant to Rimini's ███████████

13   ████ that the *final* Dev Instructions do not already show.

14          Oracle cites a draft Dev Instruction created for update ███████ and argues that this

15   example shows that drafts are evidence that the instructions were "developed using an

16   environment associated with a customer."  Mot. at 15.  Rimini disputes that Dev Instructions

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████. *See Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d

23   948, 953 (9th Cir. 2018) ("[T]he software licenses, with certain restrictions, permitted Oracle's

24   licensees to hire Rimini to [develop and test updates] for them.").  The draft Dev Instruction

25   does not show that it was allegedly "developed using an environment associated with a

26   customer" any more than the final.

27          In addition, Oracle's "cross-use" allegations depend on the Dev Instruction being

28   ████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████      Oracle presents no argument for why a draft Dev Instruction that has

3 never been used to support a client is relevant to its "cross-use" claim.

4        Finally, Oracle accuses Rimini of "whitewash[ing]" its draft Dev Instructions by

5 "strip[ing] out evidence that Rimini copied Oracle source code … that was present in draft Dev

6 Instructions." Mot. at 16. This grossly mischaracterizes the facts, and even if it were true (it is

7 not), this conduct would not make *draft* Dev Instructions relevant to Oracle's claims in this

8 proceeding. Oracle points to one alleged instance in which ████████████████████████████

9 ████████████████████████████████████████████████████████████████████████████

10 █████████████████████████.[11] The final Dev Instruction ████████████████████

11 ██████████████████████████████████. Mot. at 16. Oracle claims that the draft

12 somehow shows that Rimini "whitewashed" Oracle code from a draft Dev Instruction to hide

13 content before a Dev Instruction is used to support Rimini's clients. But Rimini *produced* this

14 draft Dev Instruction, as well as any others that went to client environments.

15        Because draft Dev Instructions are not relevant to Oracle's claims, Oracle's Motion

16 should be denied.

17                                    **IV.  CONCLUSION**

18        For the foregoing reasons, Oracle's motion should be denied in its entirety.

19

20 Dated:  December 16, 2019

21                                    GIBSON, DUNN & CRUTCHER LLP

22

23                                    By:_  */s/ Eric D. Vandevelde*
                                            Eric D. Vandevelde

24                                    *Attorneys for Defendants*
25                                    *Rimini Street, Inc. and Seth Ravin*

26

27 ────────────────────────────

28 [11]  Rimini disputes that the excerpt of code Oracle identifies ██████████████████
   ████████████████████████

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

Gibson, Dunn &
Crutcher LLP

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION TO COMPEL
CASE NO. 2:10-CV-00106-LRH-VCF