# EXHIBIT B
## Letter from Jennafer Tryck to Jacob Minne, dated December 3, 2019

**PUBLIC REDACTED VERSION**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive
Irvine, CA 92612-4412
Tel 949.451.3800
www.gibsondunn.com

Jennafer M. Tryck
Direct: +1 949.451.4089
Fax: +1 949.475.4789
JTryck@gibsondunn.com

Client: 79957-00020

December 3, 2019

VIA ELECTRONIC MAIL

Jacob J.O. Minne
Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA 94304-1124

Re:     *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-0106-LRH-VCF (D. Nev.)

Dear Jacob:

We write to respond to your November 26, 2019 letter and to follow-up on our November 27, 2019 letter.

1.      Production of Dev Instructions Transmitted Via AFW

Your letter asks us to provide Oracle ███████████████████████████████████████████
██████████████████████████████████████████████████████ No Oracle discovery request covers such information, nor is Rimini required to provide such discovery about discovery, or to reveal its counsel's work product.

We are diligently working to collect the remaining four Dev Instructions cited in Oracle's prior letter, along with other documents ████████████████████████████████
████████████████████████ We do not have a date certain for when that production will be completed.

2.      Production of Draft Dev Instructions

As we have explained in multiple letters now (*e.g.*, letters of Sept. 6, Oct. 11, Oct. 28, and Nov. 18, 2019), we disagree with Oracle's assertions that draft Dev Instructions not provided to clients have any relevance. Rimini has agreed to produce: (1) all final Dev Instructions; and (2) all Dev Instructions sent to a client environment (even if non-final). The dispute is that Oracle also wants drafts of Dev Instructions that are not final, that were never sent to client environments, and that do not reflect the updates the clients actually implemented. We agree that we are joined on this issue. Rimini reserves all rights.

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 2

3.      Rimini's Production of Salesforce Materials

       In its November 8, 2019 letter, Oracle claimed that Rimini's Salesforce production was deficient because it purportedly omitted numerous tables that Rimini produced in *Rimini II*. *See* Nov. 8, 2019 J. Minne Ltr., Ex. A.  Rimini disputed that its production was deficient, and asked Oracle to explain why the tables were relevant to this proceeding.  *See* Nov. 18, 2019 J. Tryck Ltr.  In its November 26 letter, Oracle provided a theory of relevance for 11 tables.  With respect to the Case and Case Comments tables, Rimini produced both tables as part of its Salesforce production.  Please search ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Rimini is evaluating Oracle's position regarding the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ tables.  If Rimini determines that it can produce them for the relevant time period without undue burden, it will do so.

4.      Allegedly "Missing" AFW Logs

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

       *Informal Discovery About Discovery.*  Your letter asks informal questions seeking discovery about discovery, such as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Rimini has no obligation to continue answering Oracle's unending informal questions about these issues.

       Further, your accusation that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Your letter states that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ To be clear, Rimini has made no such admission.

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 3

*Pathname Metadata for Production 19.*   Regarding the metadata for Production 19, your letter makes two false assertions.  First, Rimini did not "manufacture" metadata, nor was the metadata "created by attorneys after the fact."  Nov. 26, 2019 J. Minne Ltr. at 3.  The production included metadata corresponding to the way the files were collected—*i.e.*, first to a central location using a tool and then, by attorneys, for production.  This was done because it would have been unduly burdensome to perform a forensic collection of each individual hard drive, or, in the case of the custodians at issue in the custodial discovery order (Sheffield, Tahtaras, Frank), it would have been duplicative.  And custodial collection was not required because (other than for Sheffield, Tahtaras, and Frank) these are custodians outside of the agreed-upon set.  *See* Sept. 6, 2019 J. Polito email.

Second, Oracle's assertion that "Rimini also failed to produce any date metadata with these files" is demonstrably false.  The produced metadata included a "Date Modified" field, which is the date the log was created.

In any event, Oracle's claimed need for additional metadata is contrived.  The logs themselves contain automatically generated header text and footer text that state (1) the computer on which the log was generated, and (2) the date and time the log was created.  For example,



Because Oracle already has the information it seeks, and it would be wasteful and burdensome for Rimini to redo a collection, Rimini will not recollect these log files.

*Two Remaining Computers.*   We are attempting to collect logs from two computers that are no longer in use:                                      Production of logs from those computers, if any, will likely be made at the same time as Rimini's refresh of other sources, which is underway.

5.      Teams.microsoft.com Materials

Rimini has conducted a reasonable search of Microsoft Teams channels used by its custodians.  To the extent any transcripts from those channels hit on any Oracle search terms,

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 4

they would be produced consistent with the Court's September 6, 2019 order governing custodial productions. Rimini is not aware of any such transcripts in its productions.

6.    Jira and Spira/SpiraTeam Credentials

Rimini agrees that Oracle may continue to use its read-only access to Jira, Spira/SpiraTeam, and DevTrack until the close of expert discovery, subject to the limitation detailed in the parties' August 15, 2019 agreement that Oracle use this access "only for the purposes of this *Rimini I* proceeding." *See* Aug. 13, 2019 J. Tryck Email; Aug. 15, 2019 D. Kocan Email.

7.    ███████████████████

Rimini is evaluating Oracle's list of release IDs and update IDs that it claims ████ ████████████████████████ in Rimini's production. Nov. 26, 2019 J. Minne Ltr.

8.    Rimini's Response to Interrogatory No. 5

As we have previously explained, Rimini does not maintain in the ordinary course of business reports or compilations that contain the information Oracle seeks in Interrogatory No. 5. Nevertheless, Rimini has made a good faith attempt to export the information from Jira (and, where applicable, DevTrack) in response to Interrogatory No. 5, as well as in response to Oracle's serial letters asking about specific deliverables. Rimini invested substantial resources in that effort, which involved manual review and compilation of Jira information by numerous Rimini employees and attorneys. This process has revealed that it is extremely burdensome for Rimini to compile the information Oracle seeks in Interrogatory No. 5 and that, due to the way individual updates are tracked in Jira, not all of the information Oracle seeks is available from that source. We notified Oracle of this issue. *See* Rimini Fourth Supp. Response to Interrogatory No. 5.

The best information available responsive to Interrogatory No. 5 is the client documentation Rimini has produced and identified in its Interrogatory Response, coupled with Rimini's Jira and DevTrack systems, to which Oracle has access, and Rimini's Salesforce records, which Rimini produced (and will supplement as necessary depending on the outcome of the investigation addressed in item 3, *supra*). Rimini's last supplemental Interrogatory Response cited Oracle to these materials pursuant to Rule 33(d).

Your letter contends that Rimini has not satisfied the requirements for reliance on Rule 33(d). We disagree. *First*, the burden to compile the information Oracle seeks in Interrogatory No. 5 is the same for both parties. Oracle has client documentation associated

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 5

with the deliverables Rimini has provided its clients during the relevant period, and Oracle is equally capable of reviewing that documentation to compile the information it seeks. Oracle can also cross-check these documents against Jira, DevTrack, and Salesforce to obtain any additional information it seeks. This is the same method Rimini would have to employ to compile this information. Oracle's identification of updates that Rimini supposedly "omitted" shows that Oracle is perfectly capable of determining the updates Rimini provided to clients based on the information Rimini has already produced. *Second,* Rimini has identified the records that contain the information Oracle seeks by Bates number. Nothing else is required under Rule 33(d).

More fundamentally, Rimini's efforts at answering Interrogatory No. 5 and the repeated back-and-forth with Oracle in which Oracle purports to identify additional updates that Rimini "missed" has shown that Rimini's Rule 33(d) response is the best and most accurate answer Rimini can reasonably give without undue burden, and it is also the most efficient use of the parties' resources.

With respect to Exhibit B to your letter, Rimini has already spent substantial time reviewing the Update and Issue IDs noted in your October 19, 2019 letter and has determined they are not responsive for one of the reasons identified in our November 8, 2019 letter. Oracle is yet again attempting to improperly expand the scope of one of its discovery requests. We respond to your specific contentions regarding responsiveness as follows:

- You argue that Issue IDs not associated with any deliverable provided to a client are responsive because they are purportedly "reflective of Rimini's support process." But Oracle's Interrogatory No. 5 seeks a list of deliverables "that Rimini has provided to its customers." Oracle has access to Jira, DevTrack, Spira, ██████████ ██████████ and hundreds of thousands of custodial documents, from which it can obtain whatever information it believes is "reflective of Rimini's support process." But adding such Issue IDs to Rimini's response to Interrogatory No. 5—which calls for and contains information about deliverables *provided to clients*—would make the response inaccurate.

- You argue that Issue IDs associated with deliverables provided to Rimini clients before the effective date of the injunction (November 5, 2018) are responsive. But Oracle's Interrogatory No. 5 seeks only deliverables provided to clients "since November 5, 2018."

- You argue that Issue IDs associated with discrete subtasks undertaken as part of creating a client deliverable, where the client deliverable itself has its own Issue ID are responsive because "they are likely to contain information relevant to Rimini's

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 6

development and support processes."  Again, Interrogatory No. 5 seeks information about deliverables "that Rimini has provided to its customers."  Accordingly, because Rimini did not provide a deliverable to clients for these Issue IDs, adding them would be inaccurate.

- You argue that Rimini's response to Interrogatory No. 5 should include Issue IDs for deliverables in Jira that were also tracked through DevTrack ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Again, Oracle has access to Jira and can obtain whatever information it believes is "relevant to Rimini's development and support processes."  But adding duplicative Jira IDs to Rimini's response to Interrogatory No. 5 would make it inaccurate.

Finally, your various references to Rimini's "discovery obligations" are misguided. Rimini has directed Oracle to the information it seeks, and there is no basis for any contention that Rimini has not properly preserved that information.  The compilation of information Oracle seeks does not exist in the ordinary course of business, and thus it must be created from the information Rimini has produced to Oracle.  Rimini has no obligation to maintain information in Oracle's preferred fashion.

9.   Rimini's Production in Response to RFP No. 11

   *List of all online materials and all documents "referenced" in their creation.*  Oracle requested "a list of all of the whitepapers, webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials that Rimini makes available on its website, along with an estimate of the number of documents referenced or used in creating them."  Nov. 26, 2019 J. Minne Ltr.  Rimini has determined that it would be unduly burdensome to provide a list of all materials on Rimini's website that relate to PeopleSoft or JDE.  Oracle can review Rimini's website and find that information for itself.

   As to Oracle's request for an estimate of all documents "referenced or used in creating" all of the documents on the website, our investigation determined that it is not possible to provide such a reliable estimate.

# GIBSON DUNN

Jacob J.O. Minne
December 3, 2019
Page 7

  _Webinars._   Your letter requests production of the two webinars referenced at https://info.riministreet.com/PeopleSoft-Webinars-LP.html.[1]  As with other online marketing material, those webinars are not relevant to any issue in this proceeding.  Nevertheless, if it will moot the parties' dispute regarding RFP No. 11, Rimini would be willing to produce those two webinars as a compromise.  Otherwise, Rimini will oppose Oracle's motion regarding RFP No. 11 because it is overbroad, unduly burdensome, seeks irrelevant material, and is disproportionate to the needs of this proceeding.

10.   Designation of Material Produced by Public Entities Under the Protective Order

  During the parties' meet and confer on October 22, 2019, you stated that at least one client that Oracle served with a public records request asked whether it could designate materials produced in response to that request under the _Rimini I_ protective order.  We asked you whether that client was aware that the parties have an agreement that any documents the client produces will be treated as Highly Confidential – Attorneys' Eyes Only.  You did not respond to that question on the call, and have continued to avoid responding to it in subsequent correspondence.  Your latest letter states that Oracle has "not taken a position with customers regarding Rimini's objections to Oracle's PRA requests."  That is not responsive to the question we posed.  Please state whether the Rimini client or clients Oracle is working with are aware of the parties' agreement, and, if so, please explain why that agreement does not address the client's concerns.   If Oracle has not informed the client(s) of the parties' agreement, we suggest that it do so.  Or, if Oracle identifies the client(s) at issue, we are happy to reach out to them.

  As we have repeatedly explained, Rimini's objections to production by public clients rely on the production exemptions enumerated in the applicable public records request statutes.  Where such exemptions apply, the documents are not subject to production.  Rimini's positions on what exemptions may apply are laid out in Rimini's letters to those clients, which Oracle has.

11.   Files Sent via AFW TransferFiles

  We received Exhibit C to your letter, which allegedly identifies "the 78 files" for which you contend "Rimini has failed to produce any copies (or even any files with matching filenames)."  In most of these cases, the file was renamed subsequent to its transfer.  In the

---

[1]   There are three webinars advertised on this page: June 11th, July 9th, and August 13th.  The July 9th webinar never took place and does not exist.  The other two are both titled "Taking Control of Your PeopleSoft Roadmap," are given by the same speakers, and cover the same topics (though, the webinars are live, so are not word-for-word identical).

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 8

attached "Response to Exhibit C," we have indicated the file name of the produced file that corresponds to the file on Oracle's Exhibit C.

There were six files (out of Oracle's list of 466) that could not be located after a diligent search; these are indicated in the Response to Exhibit C.

Your letter states, "as shown in Exhibit D to this letter, the majority of the files that Rimini's AFW records indicate ███████████████████████████████████ We do not understand what you mean. We also do not understand what Exhibit D is purporting to show or what it has to do with "pathnames." Please provide further explanation, and we will respond. We note that Exhibit D lists a series of file names, and each of those files does appear to have been produced—we investigated a random sample and every one in our sample has been produced. We also note that, as we have explained in prior letters (e.g., Sep. 25, 2019 Ltr. from E. Vandevelde, Oct. 2, 2019 email from E. Vandevelde), it is not correct to say that there are 10,030 files on Exhibit D. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ here are not 88 copies of that file, there is one, and it was produced.

Your letter states, "Oracle assumes that Rimini has not produced the files referenced in Exhibits C and D because Rimini has deleted either the files themselves or the information needed to identify the AFW records that each file corresponds to. If this is incorrect, please explain." That is incorrect for the reasons described above. As to the six files so-identified on Rimini's Response to Exhibit C, those files were not located, but that does not mean that the files were deleted. Instead, they may have been moved or renamed.

12.   RFP No. 14

First, Rimini has investigated Oracle's request to collect and produce information from Rimini's ShareFile system, and Rimini agrees to review and produce non-privileged, responsive documents stored on this system. That process is already underway █████████████████████████████████████████████

Second, Rimini has articulated its position concerning Oracle's demand for Rimini to provide an explanation of the sources it has searched for responsive information in prior correspondence. See, e.g., Nov. 18, 2019 J. Tryck Ltr. Without waiving any work product protections or privileges, Rimini notes that the vast majority of its productions include

## GIBSON DUNN

Jacob J.O. Minne
December 3, 2019
Page 9

metadata that Oracle can view to see the sources Rimini has searched for responsive documents.

        Third, Oracle's request is overbroad and duplicative in that it includes documents saved to ███████████████████████████████████ are subsumed under this request for a full scan of Rimini's entire network.  Consistent with its discovery obligations, Rimini has conducted a reasonable search of appropriate sources within its network for documents responsive to Oracle's discovery requests, and has produced (and continues to produce) non-privileged responsive documents from those sources.  Rimini reserves all rights.

13.    <u>Custodial Document Production and Reimbursements</u>

        Rimini provided a reimbursement proposal to Oracle on December 2, 2019.  *See* Dec. 2, 2019 J. Tryck Ltr.  As explained in that letter, one additional document that erroneously hit on "transfer*" (and which was not identified on the parties' spreadsheets) was fully withheld from Production 31 for privilege (document label RSI007900151).  That document was included in Rimini's reimbursement proposal.

        Rimini's "approach to review and production of documents" is protected work product. Oracle does not dispute this fact, nor does it offer any authority supporting its position that it should be permitted access to this protected information simply because Oracle is ordered to reimburse Rimini for the cost of these productions.

        Without waiving any work product protections or privileges, Rimini further states that it repeatedly explained to Oracle (prior to Oracle's selection of its search terms and custodians), that executive custodians' documents are *less likely* to be relevant, and *more likely* to be privileged.  *See, e.g.*, Aug. 5, 2019 J. Tryck Ltr.  These individuals are also involved in sensitive business discussions that have no bearing on this proceeding.  *See, e.g., id.*  Review of these custodians' documents involves more attorney time, and is thus more costly.  Oracle ignored Rimini's guidance and nevertheless included these custodians in its search parameters. It cannot now complain about its choices.

14.    ██████  <u>Deposition Exhibits</u>

**GIBSON DUNN**

Jacob J.O. Minne
December 3, 2019
Page 10

Sincerely,

*/s/ Jennafer M. Tryck*

Jennafer M. Tryck

JMT/adm

cc: Karen L. Dunn
    Kathleen R. Hartnett
    William Isaacson
    Ashleigh Jensen
    Tran Le
    Richard J. Pocker
    Beko Reblitz-Richardson
    Sean Rodriguez
    Gabriel Schlabach
    Samuel Ungar
    Zachary S. Hill
    David Kocan
    Lisa S. Lee
    John A. Polito
    Lindsey M. Shinn
    Benjamin P. Smith
    Sharon R. Smith