# EXHIBIT D
Letter from Jennafer Tryck to Jacob Minne, dated October 11, 2019

**PUBLIC REDACTED VERSION**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Jennafer M. Tryck

Direct: +1 949.451.4089
Fax: +1 949.475.4789
JTryck@gibsondunn.com

October 11, 2019

VIA ELECTRONIC MAIL

Jacob J.O. Minne
Morgan Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA 94304

Re:  *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-0106-LRH-VCF (D. Nev.)

Dear Jacob:

I write in response to your letter of Friday, October 4, 2019.

As an initial matter, we reiterate our continuing objection to the unilateral imposition of arbitrary and unreasonable deadlines for Rimini to respond to Oracle's correspondence (*see* Aug. 31, 2019 Ltr. from E. Vandevelde), particularly in light of Oracle's own repeated and extended delays. Oracle's Friday evening letter raises fifteen issues and unilaterally demands a response in four business days. Rimini addressed many of these issues on September 6 and 9, and requested additional information from Oracle—yet Oracle waited nearly a month to respond. Oracle's repeated delays stand in contrast to Rimini's prompt and timely responses to Oracle's letters and discovery requests. We reiterate our request for some minimal professional courtesy in the process of corresponding about outstanding discovery issues.

We respond as follows to the fifteen issues raised in your letter.

1. Draft Dev Instruction Documents—*First*, and as we stated in our September 6 letter, we disagree that draft Dev Instructions are relevant. Rimini has produced final Dev Instructions. It has also produced, as part of its productions regarding the AFW ███████████, Dev Instructions, whether final or draft, that were sent to clients. Draft Dev Instructions (particularly those not sent to clients) do not reflect the actual updates performed on clients' systems, and are therefore not relevant. Your letter claims in conclusory terms that "comparing draft and final versions of Dev Instructions will shed light on [Rimini's] process," but we do not see how such a comparison would inform Oracle of Rimini's process, and Oracle has never explained how it could.

   *Second*, Dev Instructions in the ████████████████████████████ are privileged. They are created in that directory for the purpose of having Rimini's in-house legal team review them; their creation in that folder is therefore a communication to an attorney. Rimini is not claiming privilege over the final versions, nor is it claiming privilege over any Dev Instructions not in that folder (unless otherwise sent to counsel or reflecting communications from counsel). You admit that you seek the draft Dev Instructions to

**GIBSON DUNN**

Jacob J.O. Minne
October 11, 2019
Page 2

compare them to final versions, but, to the extent there are any differences between draft and final versions, that would reflect Rimini's counsel's edits or comments, and would thus constitute privileged work product. *See, e.g., Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 647 (D. Nev. 2013) (ruling that draft material "located in a file folder for a product liability meeting" that "includes comments by attorneys" is attorney-client privileged material protected from production); *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2012 WL 3762447, at *2 (S.D. Cal. Aug. 29, 2012) (collecting cases holding that "a draft of a document intended for publication can be covered by the attorney-client privilege, 'provided that the draft documents demonstrated an intent to seek confidential legal advice on their content'").

2. SharePoint and Salesforce Materials—As we explained to Oracle during meet and confer on the proposed order for custodial document productions (*see* Sept. 5, 2019 C. Whittaker Email), "Rimini's obligation under the order to produce custodial docs on a weekly basis will necessarily impact Rimini's ability to review and produce non-custodial documents responsive to Oracle's requests." Oracle acknowledged Rimini's position. *See* Sept. 5, 2019 J. Polito Email. We advised Oracle that we expected to start making rolling productions this week (*see* Sept. 30, 2019 Email from J. Tryck), and we have done so (*see* Oct. 11, 2019 Ltr. from J. Tryck re Production 22).

3. AFW Logs—*First*, AF ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, they are governed by our agreement and the Court's September 6, 2019 Order regarding custodial discovery (Dkt. 1255). There is no obligation to produce these logs beyond what we are already producing as part of custodial discovery. *Second*, notwithstanding that Rimini has no obligation to produce them outside of the relevant custodians, Rimini was already preparing a production of these logs in connection with its production of AFW FTP files before we received your letter. They were produced on Wednesday, October 9, 2019. *Third*, for some users of the AF ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4. Confluence, Bitbucket, and Wiki Materials—As we stated in our September 6 letter, Rimini is not aware of PeopleSoft or JD Edwards teams using Confluence, Bitbucket, or Wiki systems in their development or update-delivery processes. We asked Oracle to provide screenshots or other specific information to assist in our investigation of this issue. Oracle waited four weeks to provide a screenshot, which purports to show a link to a Wiki page. Rimini is investigating.

**GIBSON DUNN**

Jacob J.O. Minne
October 11, 2019
Page 3

5. Teams.microsoft.com Materials—Microsoft Teams materials are custodial. And, as we stated in our September 6 letter, Rimini has collected Microsoft Teams materials from relevant custodians and will produce responsive, non-privileged documents pursuant to the Court's September 6, 2019 Order (Dkt. 1255).

6. Jira Entries with Restricted View Rights—As Rimini explained in its September 6 letter, we investigated Oracle's claim that it was unable to view certain Jira entries, and we were able to view the entry Oracle identified, using the same credentials provided to Oracle. We asked Oracle to provide screenshots or other specific information that we could use to further investigate this issue. Oracle waited four weeks to provide a screenshot. With the information Oracle provided in its October 4 letter, Rimini investigated and can confirm that Oracle's access to relevant material in Jira is not restricted. Oracle can access all issues, releases, reports, etc. by clicking on these fields in the menu bar on the left of the screen. The [REDACTED]

7. Spira/SpiraTeam Access—Oracle acknowledges in its letter that Spira is a stand-alone system that is not linked to or integrated with Jira. Notwithstanding this, Rimini agrees to investigate the burden of reactivating Oracle's credentials for this system, and will be prepared to discuss this issue on the parties' next meet and confer call.

8. [REDACTED]—Oracle contends that it is entitled to all [REDACTED] because some Jira entries refer to these spreadsheets. Rimini requested additional information from Oracle concerning [REDACTED] in its September 6 letter. Oracle waited four weeks to respond. Rimini is investigating Oracle's request in light of the information Oracle provided in its October 4 letter.

9. Rimini's Response to Interrogatory No. 5—Rimini requested additional information to investigate Oracle's concerns with Rimini's response to Interrogatory No. 5 on September 9 (see Sept. 9, 2019 Ltr. from E. Vandevelde), and Oracle waited until October 4 to respond. We note that your letter claims that Oracle has identified certain updates that are missing from Rimini's response, but withholds the names of those updates. This is not productive, and suggests that Oracle is more interested in making work for Rimini than actually resolving this issue. Nevertheless, Rimini is investigating your claims, and, if we identify additional items that should be included, we will supplement our response. We reiterate our request that you identify the specific updates you contend are missing from Rimini's response to help our investigation.

**GIBSON DUNN**

Jacob J.O. Minne
October 11, 2019
Page 4

10. <u>Rimini's Production in Response to RFP No. 11</u>—Please see our September 23, 2019 correspondence on this issue.

    The whitepaper you requested in your letter is publicly available, as we have told you repeatedly, but nevertheless we will produce it to you with Bates stamps, even though it is not responsive.

    RFP 11 seeks "All Documents relating to Oracle Software and Support Materials comprising or used in the development of Rimini's Online Materials." As we have explained, to the extent that there are Oracle Software and Support Materials that are used in Rimini Online materials, the RFP seeks documents "relating to" those Oracle materials. No Oracle Software and Support Materials were used in the creation of the materials at issue, so there is nothing to produce.

    Your letter attempts to redefine RFP 11 to broaden it beyond any reasonable bounds. Your letter now states that "Rimini should search for all Rimini Online Materials and produce all such materials relating to Oracle Software and Support Materials, as well as any other Documents in Rimini's possession, custody, or control that were used to create such Rimini Online Materials." In other words, you now interpret RFP 11 as encompassing every document on Rimini's web site that "relat[es]" to Oracle Software and Support Materials, regardless of whether Oracle Software and Support Materials were used in the creation of the online materials, and also encompassing every document used to create any of those documents. That is not what the RFP asks for, and is massively overbroad, disproportional to the needs of this proceeding, irrelevant, and unduly burdensome.

11. <u>Designation of Material Produced by Public Entities Under the Protective Order</u>—Oracle's use of Public Records Act requests to obtain documents from Rimini's clients is a transparent attempt to circumvent the Court's June 21, 2019 Discovery Order (Dkt. 1232), which permits Oracle only five third-party subpoenas. Rimini does not agree to modify the Court's Order so that Oracle may subpoena any client that rightfully refuses to produce documents in response to Oracle's PRA requests.

12. <u>Access to Other Non-Custodial Sources</u>—As Rimini explained a month ago (*see* Sept. 6, 2019 Ltr. from J. Tryck), it will conduct a reasonable search for, and will produce, non-privileged documents responsive to Oracle's discovery requests, including from appropriate non-custodial sources. Oracle's request for a list of these sources is discovery about discovery, and Rimini's obligations do not include providing Oracle with such a list.

13. <u>Cloud-Hosting Contracts</u>—Rimini is not aware of any Windstream/TierPoint cloud-hosting contracts not previously produced in *Rimini II*. Any contracts between Rimini's

Jacob J.O. Minne
October 11, 2019
Page 5

    clients and cloud services providers (*e.g.*, Amazon Web Services) would necessarily be in the possession, custody, and control of those entities, and Rimini is not obligated to collect and produce them (*see Rimini II*, Dkt. 606).

14. <u>Injunction Compliance Communications</u>—The communications between Rimini employees and Rimini legal counsel concerning injunction compliance are privileged and custodial. Pursuant to the Court's September 6, 2019 Order (Dkt. 1255), Rimini will log any of these materials that are identified through the custodial review process, and will produce its logs in accordance with the timeframe set in that Order.

15. <u>Files Sent via</u> ▇▇▇▇▇—As stated in our email of October 4, 2019, we anticipate being able to complete the production by October 18.

We can be available to meet and confer on October 18, 2019 between 11:00 a.m. and 2:00 p.m.

Sincerely,

*/s/ Jennafer M. Tryck*

Jennafer M. Tryck

JMT/dl

cc:    Karen L. Dunn
       Kathleen R. Hartnett
       William Isaacson
       Ashleigh Jensen
       Tran Le
       Richard J. Pocker
       Beko Reblitz-Richardson
       Sean Rodriguez
       Gabriel Schlabach
       Samuel Ungar
       Zachary S. Hill
       David Kocan
       Lisa S. Lee
       Jacob J.O. Minne
       John A. Polito
       Lindsey M. Shinn

**GIBSON DUNN**

Jacob J.O. Minne
October 11, 2019
Page 6

    Benjamin P. Smith
    Sharon R. Smith