# EXHIBIT 28
# Nov. 26, 2019 Letter from J. Minne to J. Tryck
# REDACTED VERSION

# Morgan Lewis

**Jacob J.O. Minne**
Associate
+1.650.843.7280
Jacob.minne@morganlewis.com

November 26, 2019

**VIA E-MAIL**
Jennafer M. Tryck
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Email: JTryck@gibsondunn.com

Re:   *Oracle USA, Inc., et al v. Rimini Street, Inc., et al.*, Case 2:10-cv-00106-LRH-VCF

Dear Jennafer:

We write regarding several ongoing discovery disputes in the above-captioned matter.

Production of Dev Instructions Transmitted Via AFW

████████████████████████████████████████████████████████████ Nov. 18, 2019 letter from J. Tryck to J. Minne.

We look forward to Rimini's production of the remaining unproduced Dev Instructions documents cited in our last letter, as well as the additional Dev Instructions documents transferred via AFW from the last AFW database collection through November 18, 2019. Please let us know when we can expect this production. Since Oracle agreed to forego discovery of documents created after this date (ECF No. 1284, Joint Statement), Rimini should have more time to devote to this and other outstanding discovery issues.

Production of Draft Dev Instructions

Oracle is entitled to discovery about Rimini's development process. As we reiterated in our last letter, Rimini creates Dev Instructions ████████████████████████. Accordingly, the initial, unedited-by-a-lawyer documents are important evidence of unlicensed use and copying of customer environments not "solely for the licensee's internal data processing operations at its facilities" in violation of the injunction. *See* Nov. 8, 2019 letter from J. Minne to J. Tryck. Draft Dev Instructions are relevant even if they were never sent to clients because (1) they reflect work done in the prototype customer environment that was used to create the Dev Instruction and (2) they can be used to support subsequent customers even if they were not physically distributed to those customers. Moreover, Rimini's representation that "the finals (unlike drafts) actually reflect an implemented update," Nov. 18, 2019 letter from J. Tryck to J. Minne, does not change the fact that drafts are relevant and responsive documents; in any event, your representation is an

Jennafer M. Tryck
November 26, 2019
Page 2

unsubstantiated assertion that Oracle is entitled to test. Nonetheless, it appears the Parties are joined on the issue of draft Dev Instructions.

Rimini's Production of Salesforce and SharePoint Materials

Rimini agreed to produce Salesforce data in lieu of providing read-only access to its Salesforce database, and at the time estimated it could do so in approximately four weeks. Aug. 6, 2019 email from J. Tryck. Rimini has provided no justification for its unilateral selection of ▮▮▮▮▮ or why it took so long to export and produce such a small subset. Nor did Rimini apprise Oracle of its intent to significantly reduce the scope of its Salesforce production as compared to *Rimini II*, despite its agreement to produce Salesforce data, until its belated production. Oct. 22, 2019 letter from J. Tryck to K. Hartnett.

Rimini's production omits a number of tables critical to understanding the data in the tables it did produce. For example, ▮▮▮▮▮ and thus should be produced.

Likewise, ▮▮▮▮▮ Each of these tables are also separately relevant and should be produced.

Similarly, ▮▮▮▮▮ Again, the table should also be produced because it is independently relevant.

Lastly, rather than identify individual users by name, each SalesForce table refers to ▮▮▮▮▮ These tables are relevant both independently and in combination with the other tables that Rimini has produced, and should be produced.

Missing AFW Logs

It appears you are representing that ▮▮▮▮▮. Nov. 18, 2019 letter from J. Tryck to J. Minne. Please confirm.

The only explanation Rimini has offered as to why ▮▮▮▮▮

Jennafer M. Tryck
November 26, 2019
Page 5

████████████████████████████████████████████████████████████████
Fourth Suppl. Resp. to Interrog. No. 5. These caveats, in addition to failing to provide a complete response to Oracle's interrogatory, provide no explanation for how to identify these "some individual fixes and updates," and make it more difficult to interpret Exhibit D-3.

As shown in Exhibit B to this letter, Rimini's Exhibit D-3 still fails to include ███████████ ████████████████████████████████████████ We note that Rimini's cover letter asserts that a number of these update and release IDs are not responsive, but does not specify which have been withheld, beyond certain examples. Nov. 8. 2019 letter from C. Whittaker to J. Minne. Oracle disagrees with Rimini's regarding the responsiveness of these updates:

- ████████████████████████████████████████████████████████████ are still responsive because they are reflective of Rimini's support process.

- ████████████████████████████████████████████████████████████████ ████████████████████████████████ as noted in our October 19 letter. Again, these are reflective of Rimini's development efforts during the injunction period.

- ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ are responsive because they are likely to contain information relevant to Rimini's ████████████████████████████████████████████

- ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ are responsive because they are likely to contain information relevant to Rimini's ████ ████████████████████████████

Nor has Rimini made the showings necessary to permit it to respond to this interrogatory pursuant to FRCP 33(d), which states that "if the burden of deriving or ascertaining the answer will be substantially the same for either party" then Rimini may "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Rimini has met neither of these requirements.

First, the burden for Rimini to ascertain the answer to this interrogatory is not the same as Oracle's, ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ . Rimini can run more fulsome queries to obtain this information than Oracle can. Rimini's claim that ████ ████████████████████████████████████████████ is extraordinary. Moreover, Rimini implemented Jira during the pendency of this and the *Rimini II* litigation, during which information about the updates that Rimini generated and distributed to its customers has been a central topic of discovery. Rimini cannot complain that, knowing of its ongoing discovery obligations, it implemented a system that makes it difficult to comply with them.

Second, Rimini's additional caveats make it more difficult to know which records have been accounted for in Exhibit D to its Response and which have not. Rimini alone knows what files it has distributed to its clients, and Rimini is in the best position to provide this information. Rimini should

Jennafer M. Tryck
November 26, 2019
Page 6

supplement its response. If Rimini does not agree by December 2, 2019 to do so, then Oracle will assume the Parties are joined on the issue.

Rimini's Production in Response to RFP No. 11

Oracle continues to disagree with Rimini's erroneous interpretation of Oracle's RFP.

Regardless of Rimini's complaints as to its alleged overbreadth of this RFP (which are not well-taken, and are disputed in this and Oracle's previous letters), Rimini has consistently ignored Oracle's requests for Rimini to produce the webinars explicitly named in the RFP and referenced at the URL https://info.riministreet.com/PeopleSoft-Webinars-LP.html. *See, e.g.*, Sept. 27, 2019 letter from D. Kocan to E. Vandevelde; Oct. 4, 19, and Nov. 8, 2019 letters from J. Minne to J. Tryck. Rimini has produced the whitepaper. There is no reason it cannot also produce the webinars. If Rimini does not agree by December 2, 2019 to produce them, then Oracle will assume the Parties are joined on the issue.

Oracle awaits Rimini's response to its November 8, 2019 proposal that Rimini provide a list of all of the whitepapers, webinars, articles, updates, software, and manuals related to Oracle Software and Support Materials that Rimini makes available on its website, along with an estimate of the number of documents referenced or used in creating them. Nov. 8, 2019 letter from J. Minne to J. Tryck. If Rimini does not agree by December 2, 2019 to do so, then Oracle will assume the Parties are joined on the issue.

Unless or until the parties reach agreement about such a subset or sample, Oracle maintains that Rimini should search for and produce all Rimini Online Materials relating to Oracle Software and Support Materials, as well as any other Documents used to create such Rimini Online Materials.

Rimini's Refusal to Permit Designation of Material Produced by Public Entities Under the Protective Order

Oracle already answered the question Rimini asked during the October 22 meet and confer and repeated in its October 28 letter: "Oracle has not taken a position with customers regarding Rimini's objections to Oracle's PRA requests." Nov. 8, 2019 letter from J. Minne to J. Tryck.

Oracle also reiterates its request that Rimini confirm that it is Rimini's position that "updates that are created by Rimini but Rimini no longer has in its possession, custody, or control" (Oct. 4, 2019 letter from J. Minne to J. Tryck) are trade secrets. If not, please explain what new facts have caused Rimini to change its position. Nov. 8, 2019 letter from J. Minne to J. Tryck.

Injunction Compliance Communications

Oracle reserves all rights as to these materials.

Files Sent via AFW TransferFiles

In your letter, Rimini indicates that it has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, it appears that Rimini has failed to produce ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For instance, of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,