BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:   702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:    (202) 237-2727
Facsimile:     (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
    (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:    415.293.6800
Facsimile:     415.293.6899
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:    415.442.1000
Facsimile:     415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:     650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S REPLY ISO MOTION TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES RE POST-INJUNCTION DISCOVERY**<br><br>**<u>PUBLIC REDACTED VERSION</u>** |

**TABLE OF CONTENTS**

I. ARGUMENT ........................................................................................................................ 2

    A. Rimini's Insufficient Response to Supplemental Interrogatory No. 5 ..................... 2
    B. Oracle Is Entitled to Discovery Responsive to Supplemental RFP No. 11 ............. 3

        1. Oracle Seeks Documents Relevant to Rimini's Injunction Compliance .... 3
        2. Rimini's Must Identify Documents Responsive to RFP No. 11 ................. 4
        3. Oracle's Request Is Proportionate ............................................................... 5

    C. Oracle Is Entitled to Draft Dev Instructions ............................................................ 7

        1. Draft Dev Instructions Are Relevant to Injunction Compliance................. 7
        2. Draft Dev Instructions Are Not Privileged ................................................. 9

II. CONCLUSION ................................................................................................................... 12

ORACLE'S REPLY ISO MOTION TO COMPEL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Banc of Cal. Sec. Litig.*,
   2018 WL 6167907 (C.D. Cal. Nov. 26, 2018) .......................................................................... 10

*Gen-Probe Inc. v. Becton, Dickinson & Co.*,
   2012 WL 3762447 (S.D. Cal. Aug. 29, 2012) .......................................................................... 12

*Gregorio v. Clorox Co.*,
   2019 WL 362688 (N.D. Cal. Jan. 30, 2019) ............................................................................ 10

*Lumber v. PPG Indus., Inc.*,
   168 F.R.D. 641 (D. Minn. 1996) ............................................................................................. 12

*Phillips v. C.R. Bard, Inc.*,
   290 F.R.D. 615 (D. Nev. 2013) ............................................................................................... 10

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   329 F.R.D. 656 (D. Or. 2019) ................................................................................................. 12

*Premiere Digital Access Inc. v. Central Telephone Co.*,
   360 F. Supp. 2d 1168 (D. Nev. 2005) ..................................................................................... 10

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*,
   2012 WL 2370637 (W.D. Okla. June 22, 2012) ..................................................................... 12

*United States v. Martin*,
   278 F.3d 988 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002) ..................... 10

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ................................................................................................................ 10

**Other Authorities**

F.R.E. Rule 501 ............................................................................................................................. 10

Fed. R. Civ. P. Rule 33(d) ......................................................................................................... 1, 2

# INTRODUCTION

The Court's Injunction places restrictions on Rimini's processes for the development and testing of updates to Oracle software and for the creation of documentation and support materials. To ensure compliance with the Injunction, Oracle is entitled to examine those behind-the-scenes processes, and Rimini cannot evade discovery by merely asserting, yet again, that it is in compliance. Rimini has inherently superior access to information regarding what Rimini does, how Rimini does it, and upon which materials Rimini relies. But Rimini refuses—unreasonably—to provide the access that Oracle needs, and declines to disclose facts that are uniquely within its knowledge and control, thus necessitating this motion to compel.

Interrogatory No. 5 seeks information central to Injunction compliance about the materials that Rimini actually distributes to its customers. Rimini cannot merely cite Rule 33(d) and force Oracle to sift through Rimini documentation to identify the file names and product versions that Rimini's interrogatory response fails to provide. Rimini has far more efficient and effective ways of gathering this information than Oracle does, not least because Rimini ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Moreover, Rimini regularly disputes Oracle's analysis of the records to which Rimini directs Oracle, most recently claiming that 567 post-Injunction updates Oracle identified as missing from Rimini's response are "not responsive" while refusing to prepare a complete list of updates delivered to customers after the effective date of the Injunction. Rimini should provide a complete response to Interrogatory No. 5.

As for RFP No. 11 and the creation of the Dev Instructions that are part of the process Rimini uses to deliver updates to Oracle software (RFPs 9 and 14), Rimini seeks to distract from its production failures by emphasizing the customer-facing aspects of its processes, such as public documents on its website and the final versions of Dev Instructions. But discovery into the underlying processes that lead to such customer-facing materials is critical to evaluating Rimini's compliance with the Injunction, as those underlying processes appear to involve cross-use and other actions barred by the Injunction. Rimini alone has access to drafts, reference materials, and other documents illustrating whether Rimini's support processes violate the Injunction.

Rimini admits in its Opposition that it uses "publicly-available information from Oracle's

1  own website" to create Rimini's informational materials.  In light of this admission, Oracle asks
2  the Court to require Rimini to provide a complete response to RFP No. 11.
3     Rimini also concedes that it ███████████████ when creating Dev Instructions.
4  But Rimini attempts to shield its copying and use of Oracle Software from discovery with a
5  blanket assertion of attorney-client privilege over drafts of software code and technical
6  documentation that it "funnels" through its legal department. ████████████████
7  ████████████████████████████████████████████, vitiating any claim of
8  privilege.  The editorial and factual revisions Rimini's attorneys make are not legal advice, and
9  they are not meaningfully treated as confidential internally.  Oracle's Motion should be granted.

10 **I.    ARGUMENT**
11    **A.    Rimini's Insufficient Response to Supplemental Interrogatory No. 5**
12    This Court entered a permanent injunction against Rimini Street—after finding that
13 Rimini built its entire business by infringing Oracle software, consciously disregarded Oracle's
14 intellectual property rights, and engaged in litigation misconduct.  ECF No. 1164 at 6, 14.  That
15 Injunction places restrictions on Rimini's development, testing, and distribution of Oracle-related
16 materials; Oracle seeks to test Rimini's compliance with those restrictions.
17    Rimini may not use Fed. R. Civ. P. 33(d) to deny discovery of key information.  As the
18 only party with full, direct, administrative access to its records on Jira concerning updates to
19 Oracle software that Rimini provides its customers, Rimini's burden to obtain the information
20 requested in Interrogatory No. 5 from its Jira records would be far less than for Oracle, whose
21 access to Jira is severely restricted.  Rimini suggests that its Jira records are incomplete, and that
22 the only way to obtain the information requested in Interrogatory No. 5 is to perform a manual
23 review of its ████████████████.  Not so.
24    First, Rimini's incorrectly states that ████████████████████████████
25 ████████████████ Opp. at 7 n.2. ████████████████████████████████
26 ████████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████████
28 ████████████████████████████████████████████████████████████

2
ORACLE'S REPLY ISO MOTION TO COMPEL

1    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

2    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Declaration of Lindsey M. Shinn ("Shinn Decl.") ¶ 5, Ex. 4,

3    RSI2_000175614 at 5622; *see also id.* at ¶ 4, Ex. 3, RSI007318716 at 8718 ▉▉▉▉▉▉▉▉▉▉▉

4    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; *see also, e.g., id.* at ¶ 3, Ex. 2,

5    RSI007036694 at 6695 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

6    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

7    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; *see also, e.g., id.* at ¶ 2, Ex. 1, RSI007100400 ▉▉▉▉▉▉▉

8    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

9    ▉▉▉. Without access to tools to parse the information in the fields, the burden on Oracle to

10   obtain the requested information would be far greater.

11        Second, Rimini incorrectly suggests that it cannot properly respond to Interrogatory No. 5

12   without manually obtaining the information from ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. As shown above,

13   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

14   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

15   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Shinn Decl.

16   ¶ 5, Ex. 4, RSI2_000175614 at 5622; *see also id.* at ¶ 4, Ex. 3, RSI007318716 at 8718.  Rimini's

17   suggestion that it must manually gather information from these documents when ▉▉▉▉▉▉▉▉▉

18   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ defies reason.

   **B.     Oracle Is Entitled to Discovery Responsive to Supplemental RFP No. 11**

20        **1.     Oracle Seeks Documents Relevant to Rimini's Injunction Compliance**

21        RFP No. 11 seeks to determine whether Rimini's creation of its Online Materials violates

22   the Injunction by using Oracle's "software or documentation." ECF No. 1166, Injunction ¶¶ 2, 3,

23   4, 5, 6, 7.  There is nothing "dubious" (Opp. at 13) about Oracle's argument that if Rimini is

24   using Oracle's Software and Support Materials to develop Rimini's Online Materials, then it is

25   violating the Injunction against using Oracle's Software and Support Materials "other than to

26   support the specific licensee's own internal data processing operations."  Rimini is an adjudicated

27   copyright infringer enjoined from continuing to engage in the infringing conduct for which it was

28   ordered to pay over $90 million in damages, costs, and fees following a jury trial.  It is far from

1  "dubious" that Rimini would continue to engage in a pattern of infringing conduct in direct
2  violation of the Injunction; Oracle has already made a showing sufficient to open discovery into
3  Rimini's conduct.  ECF No. 1232.  Once again Rimini—
4  ████████████████████████████████████, ECF 1201-21 (Jan. 23, 2019 letter from E.
5  Vandevelde to Z. Hill)—asserts that it need not provide discovery because Rimini believes it is in
6  compliance.  The very purpose of discovery is to test that assertion.

    **2.**  **Rimini's Must Identify Documents Responsive to RFP No. 11**

8    Rimini has the burden of determining which documents are responsive to RFP No. 11.
9  Rimini's insistence that Oracle instead identify the responsive documents amounts to a demand
10 that Oracle first prove violation of the Injunction, and then request the materials created through
11 that violation.  Rimini has it backwards.  Oracle is entitled to this discovery to evaluate Rimini's
12 Injunction compliance, after which Oracle is responsible for demonstrating violation of the
13 Injunction using that evidence.  Rimini is in the unique position of knowing how its documents
14 were created, and is therefore uniquely able to identify responsive documents.

    **a.**  **Rimini's Interpretation of The RFP is Incorrect and Misleading**

16   Rimini's claim that no responsive documents exist is unconvincing in light of its repeated
17 mischaracterizations of the plain language of the RFP and its associated definitions, as is Rimini's
18 claim that Oracle has attempted to expand the scope of the RFP over the course of meet and
19 confer.  Opp. at 9-11.  Oracle's RFP No. 11 requests "All Documents relating to Oracle Software
20 and Support Materials comprising or used in the development of Rimini's Online Materials."
21 "Software and Support Materials" is defined to include "instructional documents."  Opp. at 9 n.3.
22 Rimini's Opposition repeatedly omits "Support Materials" when discussing the scope of RFP No.
23 11.  *See, e.g.*, Opp. at 9 (incorrectly claiming that RFP No. 11 is limited to a "Rimini online asset
24 that comprises **Oracle software**, or that **Oracle software** was used to create") (emphasis added);
25 *id.* at 12 ("Oracle identified only one document, a white paper, that it contends may have been
26 created using **Oracle software**.") (emphasis added).

27   Because Rimini's employee declarations do not address the full scope of Oracle's
28 copyrighted works at issue in the Injunction, they do not establish that no responsive documents

1  exist. Rimini seeks to defend its failure to respond to RFP No. 11 by providing declarations that
2  the employees who created Rimini's Online Materials do not have access to Oracle software. *See*
3  Beichler Decl. ¶ 5 ("Employees in the Marketing and Sales Departments do not have access to
4  Oracle **software environments, software, or patches**") (emphasis added); Reneke Decl. ¶ 3
5  ("My [teams] have never had any access to Oracle **software environments, software, or**
6  **patches**") (emphasis added). These declarations conspicuously do not disclose that employees do
7  have access to, and in fact rely upon, Oracle's written support materials.

        **b.**        **Rimini Admits It Relies Upon Oracle's Instructional Materials**

9        Oracle maintains a documentation website at docs.oracle.com. The documentation and
10 other "instructional documents" on this website are protected by copyright and are covered by the
11 Injunction. The website is accessible via the internet to the general public, subject to Oracle's
12 Terms of Use. But Rimini is not just the general public; Rimini must comply with the Injunction.
13       Rimini admits to using copyrightable material from Oracle's website in creating its online
14 content: "To the extent [Rimini] relies on any Oracle information, it is publicly-available
15 information, such as publicly-available information from Oracle's own website." Opp. at 8. The
16 Injunction has no exception for using Oracle's "public" materials to support Rimini customers.
17 Use of Oracle Software and Support Materials from resources such as docs.oracle.com, such as
18 through the creation and distribution of derivative works, is a violation of the Injunction
19 regardless of whether Rimini considers the material it retrieved to be "public." Rimini's
20 admission confirms the importance of full and complete disclosure in response to RFP No. 11.
21       Rimini's employee declarations fail to establish that there are no responsive documents.
22 *See* Beichler Decl. ¶ 5 ("The Marketing team does not rely on any non-public Oracle information
23 in creating any Online Materials."); Reneke Decl. ¶ 3 ("We have never relied on any non-public
24 Oracle materials in creating Rimini's Online Materials concerning Oracle's Applications. Instead,
25 we rely on publicly available materials and information to prepare Online Materials."). Rimini is
26 not permitted to copy, create derivative works from, or distribute Oracle's documentation,
27 whether or not Rimini deems that documentation to be "public."
28         **3.**        **Oracle's Request Is Proportionate**

The Injunction prohibits the distribution of PeopleSoft or J.D. Edwards software or documentation or any derivative work created from or within that software or documentation. Oracle's RFP No. 11 directly targets documents created by conduct that would violate these and other provisions of the Injunction. Injunction ¶¶ 2, 3, 4, 5, 6, 7. Rimini's use of Oracle's documentation to prepare its Online Materials may constitute reproduction, creation of derivative works, or distribution of Oracle documentation or works derived from Oracle documentation that violates the Injunction. *Id*. Rimini's use of Oracle's Software and Support Materials to develop Rimini's Online Materials is use "other than to support the specific licensee's own internal data processing operations," which also violates the Injunction. Injunction ¶¶ 2, 4, 5.

Rimini's poor record-keeping regarding how it prepares its materials, resulting in the need to consult with employees, cannot excuse Rimini from its discovery obligations. Rimini's declarations indicate that it is "policy" to cite "reference materials . . . where appropriate" and that this is "generally . . . done by use of footnotes or end notes." Beichler Decl. ¶ 7; Reneke Decl. ¶ 4. But "policy" is not practice (particularly not for Rimini, as a decade of litigation has amply demonstrated), and self-serving assertions that Rimini cites materials "where appropriate" are vague and untestable unless Rimini identifies all documents called for by RFP No. 11. Moreover, the citations that do appear in Rimini's Online Materials are not reliable and illustrate that citations within Rimini's documents are not an acceptable replacement for Rimini properly searching for and producing responsive documents. For example, the single white paper produced by Rimini contains endnotes with broken URLs, and includes at least one reference to a source that does not appear to exist. As well, the paper does not actually cite the majority of the endnotes, calling into question whether Rimini has in fact "accurately attribute[d] information" to the sources used to create it. Shinn Decl. ¶¶ 6, 10-13.

Regarding burden, while Rimini complains that responding to this Request would entail providing a substantial amount of information available on Rimini's website, Rimini fails to provide evidence that copying this information or identifying its sources would be burdensome. This Request simply asks Rimini—a self-styled information technology company—to make and produce electronic copies of materials that it has posted to its own website and the underlying

materials referenced where those materials consist of the Oracle Software and Support Materials covered by the Injunction. Rimini's claims of burden ring hollow, and its attempts to misconstrue, limit, and ultimately avoid RFP No. 11 should be rejected.

### C. Oracle Is Entitled to Draft Dev Instructions

The Injunction applies to Rimini's *entire* support process for Oracle software, including Rimini's use of Oracle Software to *create* files such as Dev Instructions. Rimini seeks to limit discovery into its development process to the distribution of "final" Dev Instructions to Rimini customers and the "use" of final Dev Instructions to support those customers. *See, e.g.,* Opp. at 15. This proposed limitation would allow significant parts of Rimini's development process—including potential cross-use and other Injunction violations—to escape scrutiny. Oracle is entitled to discovery as to both the earlier and later portions of Rimini's support process.

Rimini also seeks to shield from discovery its use of customers' Oracle Software to create Dev Instructions through privilege. But Rimini has failed to provide evidence to sustain its claim of privilege; mere funneling of these business documents through Rimini attorneys is not enough.

#### 1. Draft Dev Instructions Are Relevant to Injunction Compliance

Rimini [REDACTED] Dev Instructions. Opp. at 22 (Rimini [REDACTED]). This alone shows their relevance to Rimini's post-Injunction development practices.[1]

Rimini's claims that the draft Dev Instructions are irrelevant because they were "never used to support Rimini clients" and that "the *draft* Dev Instructions do not show anything relevant to Rimini's [REDACTED] that the *final* Dev Instructions do not already show," Opp. at 21-22, are simply not true. Rimini and its declarants omit that Dev Instructions are not created for use with that *first* customer's system. Rimini creates Dev Instructions to implement the same

---

[1] Rimini suggests Oracle may only seek discovery "relevant to Oracle's 'cross-use' theory," Opp. at 22, but the Injunction is not limited to cross-use.

7

ORACLE'S REPLY ISO MOTION TO COMPEL

1  update for *different* customers. Mot. at 4.² Such conduct likely violates the Injunction. *Id.* at 13.³

2  Rimini admits that Dev Instructions are created ████████████████████████

3  ████████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  Conley Decl. ¶¶ 2-3. Although Rimini claims ████████████████████████████

6  ████████████████████████████████ *id.* at ¶ 3, ████████████████

7  ████████████████████████████████████████████████████████████████████████

8  ██  Opp. at 23. That the Oracle code was removed during the "finalization" process suggests

9  there are additional draft Dev Instructions containing Oracle code that Rimini has not produced.

10  Nor does Rimini dispute this possibility. *Id.* Oracle is entitled to draft Dev Instructions to assess

11  whether Rimini's copying and use of Oracle's Software is consistent with the Injunction.

12  Rimini's response that it "disputes that Dev Instructions ████████████████

13  ████████████████████████████████████████████████████████████████████████

14  ████████████████████████" Opp. at 22, is all the more reason Oracle needs this discovery.

15  Contrary to Rimini's suggestion, Opp. at 15 (citing Conley Decl. ¶ 7; Mendillo Decl. 5),

16  ████████████████████████████████████████████████████████████████; rather, it

17  falls squarely in the middle, with discovery into the full process necessary to assess Injunction

---

² Rimini asserts that ████████████████████████████████████████████████████
████████████████████████████████████████████████████████ Opp. at 22 (citing *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 953 (9th Cir. 2018)). But as the Court and Rimini both know, those licenses do not permit Rimini to violate the Injunction.

³ Rimini's creative italicization does not change the Injunction's meaning. Opp. at 21 ("Oracle claims that draft Dev Instructions are 'evidence relevant to Rimini's cross-use of PeopleSoft environments,' which allegedly 'violates the Court's directive that "Rimini shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation *on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee*."). The Court and Ninth Circuit have made clear that Rimini may not reproduce, prepare derivative works from, or use one customer's PeopleSoft Software to support other customers.

⁴ In fact, Rimini's declarations do not acknowledge Rimini's copying and use of Oracle software in the creation of draft Dev Instructions content, at all. *See* Mendillo Decl. ¶ 3 ████████████
████████████████████████████████████████████████████████████████████████████.
Conley Decl. ¶ 3 ██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

compliance. *See* Mot. at 4, 14-15.  Oracle needs the draft Dev Instructions to show, for example, how Rimini used the prototype environment to create the Dev Instruction, what it copied from the prototype environment, or what derivative works it prepared.  Because Rimini admits it modifies draft Dev Instructions before reproducing them to other customers, at least some of this information is not available in the final versions.[5]

The *entire* process of creating, revising, and finalizing the Dev Instruction, reflecting the update made in one customer's Oracle Software for use in implementing the same update in Oracle Software associated with another customer, is relevant to whether Rimini's support processes violate the Injunction.  The fact that final Dev Instructions are whitewashed to hide egregious conduct, like the copying of Oracle code, emphasizes the need for this discovery.

### 2. Draft Dev Instructions Are Not Privileged

Rimini does not claim that draft Dev Instructions located outside the ▮▮▮▮▮ ▮▮▮▮ folder are privileged.  Because these are relevant, as discussed above, the Court should order Rimini to produce them.

Further, this order should include *all* draft Dev Instructions, even when they are stored in the ▮▮▮▮▮▮▮▮▮▮ folder.  These materials are plainly relevant to Injunction compliance.  Rimini asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Mendillo Decl. ¶ 4; Opp. at 20.  This is exactly the discovery Oracle is entitled to: information regarding whether Rimini developers are using ***Oracle's*** copyrighted works to create documents that contain ***Oracle*** code and saving these documents to ***Rimini*** systems, in violation of the Injunction.

Oracle has already identified one draft Dev Instruction containing Oracle code, and

---

[5] The fact that Rimini may have modified these drafts before calling them "final" does not mean that they were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 23.  Enabling cross-use is the primary reason that Rimini creates Dev Instructions.  *See* Conley Decl. ¶¶ 2-3.

Rimini does not dispute there may be more. Indeed, the existence of this review process suggests that more exist. Rimini's system is designed for its counsel to intercept this conduct, improperly shielding an entire segment of its development process from discovery. Mot. at 19-20.

Draft Dev Instructions are not communications to counsel to obtain legal advice. Rimini disputes this, claiming that "[t]he fact that a document may be prepared for a business purpose does not preclude it from being privileged if it is sent to an attorney for the purpose of receiving legal advice relating to that document," but it cites no authority holding that business documents funneled through attorneys necessarily qualify as privileged communications. *See* Opp. at 18.[6] Rimini fails to apply the "primary purpose" test for determining whether a document that has both a business and legal use is privileged. A communication is only privileged when made for the purpose of securing legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). "As an extension of this, . . . in order for a communication [involving in-house counsel] that pertains to both business and legal advice to be considered privileged, the 'primary purpose' must be to obtain or give legal advice." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628 (D. Nev. 2013).[7]

*In re Banc of Cal. Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018), Opp. at 19, does not require a different result. As that court explained, "the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance"; Rimini makes no such showing. Rimini also ignores its obligation to "identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted" and the warning that "[b]lanket assertions are 'extremely disfavored.'" *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002). *See also Gregorio v. Clorox Co.*, 2019 WL 362688, at *2 n.13 (N.D. Cal. Jan. 30, 2019) ("there is no blanket 'draft' rule of privilege").

As Rimini acknowledges, it is proper to examine the context of the communication and

---

[6] Rimini also misstates the attorney-client privilege standard, reciting Nevada law instead of federal law. Opp. at 16; F.R.E. 501; *Premiere Digital Access Inc. v. Central Telephone Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005).

[7] Rimini does not argue for application of the alternative "because of" test. *Phillips,* 290 F.R.D. at 629. Because Dev Instructions are created because of ███████████████ ███████████████, Rimini's claims would fail under that test as well. Mot. at 18.

1   content of the document.  Opp. at 18-19 (citing *Phillips*, 290 F.R.D. at 629).  Here, both of
2   Rimini's declarants admit that ███████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████████████████████
4   ████████████████████████████████████████████████████████████████████████████
5   ██████████████████████████████████████████████████  Conley Decl. ¶ 5; *see*
6   *also* Mendillo Decl. ¶ 4.  This ██████████ may qualify as a communication to counsel, but not
7   the draft Dev Instructions themselves, which were created for the primary purpose of ██████
8   ████████████████████████████████████████ which is well within the scope of
9   Rimini's regular business affairs.  Mot. at 18; Conley Decl. ¶ 2.
10        Rimini's declarants confirm that draft Dev Instructions are not confidential and are not
11  created for the purpose of seeking legal advice.  ███████████████████████████████
12  ████████████████████████████  Conley Decl. ¶ 4.  The mere existence of a
13  draft Dev Instruction in the ████████████████ folder is not a hand-off to an
14  attorney for legal review; ████████████████████████████████████████████████
15  ████████████████████████  Opp. at 15.  ████████████████████████████████████
16  ████████████████████████████████████  Mendillo Decl. ¶ 6.
17        It is not "beyond dispute" that ██████████████████████████████████████
18  ████████████████████████████████████████████████████████████████████████████
19  ██████████████████████████████████  Opp. at 17; Mendillo Decl. ¶ 7.  And
20  because Rimini makes no showing that each Rimini developer is "directly concerned" with each
21  and every draft Dev Instruction document, Opp. at 17 (citing *Roth v. Aon Corp.*, 254 F.R.D. 538,
22  541-42 (N.D. Ill. 2009)), if these documents were privileged, disclosure to all developers and
23  other employees with access to the █████ folder would destroy that privilege.
24        Rimini's █████ folder is also not a "space to collectively discuss sensitive information
25  with legal counsel," as it ████████████████████████████████████████████████
26  ██████████████████████████ (Opp. at 19), and ordering the disclosure of the draft Dev
27  Instructions therein does not "ignore the realities of large-scale corporate operation."  *See* Opp. at
28  17 (citing *Roth*, 254 F.R.D. at 541-42).  Rimini's other cases are distinguishable and

1  unpersuasive.  For example, *Gen-Probe Inc. v. Becton, Dickinson & Co.,* 2012 WL 3762447, at

2  *3 (S.D. Cal. Aug. 29, 2012) concerned draft letters created by counsel, not a whole folder of

3  technical documents created by software developers.  *United Food & Commercial Workers Union

4  v. Chesapeake Energy Corp.*, 2012 WL 2370637, at *10 (W.D. Okla. June 22, 2012), is an out-of-

5  circuit opinion (as is much of Rimini's authority) concerning draft SEC filings, and provided

6  detailed assertions of privilege, not a blanket, categorical claim.

7  Rimini also makes no showing that its counsel's edits and comments provide legal advice.

8  A case Rimini relies on, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D.

9  656, 662 (D. Or. 2019), cites another which noted that "plaintiffs could not 'shield their

10 investigation ... merely because they elected to delegate their ordinary business obligations to

11 legal counsel.'"  *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 646 (D. Minn. 1996).  That Rimini

12 has delegated to counsel (███████████████████████████████████████████

13 ███████████████████ Mendillo Decl. ¶ 1) ███████████ Dev Instructions does not

14 render them privileged.  *In re Premera*, 326 F.R.D. at 662.  The purported ███████████

15 ███████████ allegedly present in Oracle's example, *see* Opp. at 20, is exactly the kind

16 of "editorial comments or inserts providing factual background" that go "well beyond the 'outer

17 boundary' of the privilege."  Mot. at 19-20 (citing *U.S. Postal Serv. v. Phelps Dodge Refining

18 Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994)).  Even if Oracle could divine which changes were

19 made by Rimini's counsel, those changes do not amount to protected legal advice.  Mot. at 19.

20 ████████████████████████████████████████████████████████

21 ████████████████████ Opp. at 19.  Rather, it is a post hoc scrub of a file a Rimini created

22 using a prototype environment, to document an update it made on that environment, for use in

23 replicating the same update to other customers.  Mot. at 18-20.  Rimini may not shield these

24 drafts by funneling them through Rimini lawyers.

25 **II.     CONCLUSION**

26 Oracle respectfully requests that the Court grant Oracle's Motion and compel complete

27 responses to Interrogatory No. 5 and RFP No. 11, as well as all copies of draft Dev Instructions,

28 wherever they are stored.

DATED: December 20, 2019         MORGAN, LEWIS & BOCKIUS LLP

By: _____/s/ John A. Polito_____
         John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 20th day of December, 2019, I electronically transmitted the foregoing **ORACLE'S REPLY ISO MOTION TO COMPEL** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: December 20, 2019

By:     /s/ John A. Polito
        John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation