GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

*Attorneys for Defendant*
*Rimini Street, Inc.*

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 908-6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 2:10-cv-00106-LRH-VCF |
| Plaintiffs, | **RIMINI'S RESPONSE TO ORACLE'S OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER RELATED TO RIMINI'S CLAIM OF ATTORNEY-CLIENT PRIVILEGE** |
| v. | |
| RIMINI STREET, INC., et al., | |
| Defendants. | ***PUBLIC REDACTED VERSION*** |

Gibson, Dunn & Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

1

**TABLE OF CONTENTS**

2
Page

3    I.      INTRODUCTION ...................................................................................................1

4    II.     BACKGROUND ....................................................................................................4

5            A.      *Rimini I*, *Rimini II*, and These Post-Trial Proceedings .........................4

6                    1.      *Rimini I* and Rimini's Switch to Process 2.0 .........................4

7                    2.      Oracle Expands its "Cross-Use" Theory in *Rimini II* ............5

8                    3.      Oracle Seeks to Import Its Expanded View of "Cross-Use" into
                             *Rimini I* Contempt Proceedings ..............................................6

9
            B.      Oracle's Motion to Compel Privileged Draft Dev Instructions ..........7
10
                    1.      Rimini's Use of Dev Instructions.............................................7
11
                    2.      Legal Review of Draft Dev Instructions ..................................8
12
                    3.      Rimini's Production of Dev Instructions ..................................9
13
                    4.      Oracle's Motion and Judge Ferenbach's Ruling.....................10
14
     III.    STANDARD OF REVIEW ..................................................................................11
15
     IV.     ARGUMENT .......................................................................................................12
16
            A.      Judge Ferenbach Correctly Found that Rimini Established a *Prima
17                   Facie* Case of Privilege ......................................................................12

18          B.      Judge Ferenbach Correctly Found That the Purpose of the
                     Communications at Issue Was to Obtain Legal Advice ......................15
19
            C.      Judge Ferenbach Correctly Found that Rimini's Review Process Is "an
20                   Appropriate Attorney-Client Interaction"—Not a So-Called "Cover-
                     Up" .......................................................................................................18
21
     V.      CONCLUSION ....................................................................................................20
22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Banc of Cal. Sec. Litig.*,
  2018 WL 6167907 (C.D. Cal. Nov. 26, 2018) ...................................................16

*Columbia Pictures, Inc. v. Bunnell*,
  245 F.R.D. 443 (C.D. Cal. 2007) ...................................................................11

*Fritsch v. City of Chula Vista*,
  187 F.R.D. 614 (S.D. Cal. 1999).....................................................................19

*Games2U, Inc. v. Game Truck Licensing, LLC*,
  2013 WL 4046655 (D. Ariz. 2013)................................................................14

*Gen-Probe Inc. v. Becton, Dickinson & Co.*,
  2012 WL 3762447 (S.D. Cal. Aug. 29, 2012) .............................................16

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992).................................................................12, 13

*Grimes v. City & County of San Francisco*,
  951 F.2d 236 (9th Cir. 1991)..........................................................................11

*Ideal Elec. Co. v. Flowserve Corp.*,
  230 F.R.D. 603 (D. Nev. 2005).......................................................................17

*In re Imperial Corp. of Am.*,
  174 F.R.D. 475 (S.D. Cal. 1997).....................................................................13

*Jadwin v. County of Kern*,
  767 F. Supp. 2d 1069 (E.D. Cal. 2011).........................................................11

*Jones v. Skolnik*,
  2017 WL 3749668 (D. Nev. Aug. 30, 2017) ...............................................11

*Oracle USA, Inc. v. Rimini Street, Inc.*,
  879 F.3d 948 (9th Cir. 2018).............................................................................4

*Osband v. Ornoski*,
  2005 WL 6572191 (E.D. Cal. Dec. 1, 2005) ...............................................11

*Outdoor Media Grp., Inc. v. City of Beaumont*,
  506 F.3d 895 (9th Cir. 2007)...........................................................................15

*Phillips v. C.R. Bard, Inc.*,
  290 F.R.D. 615 (D. Nev. 2013)..............................................................12, 16

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   329 F.R.D. 656 (D. Or. 2019) ..................................................................... 16

*Premiere Digital Access Inc. v. Cent. Tel. Co.*,
   360 F. Supp. 2d 1168 (D. Nev. 2005) ...................................................... 12, 18

*Rimini Street, Inc. v. Oracle Int'l Corp.*,
   Case No. 2:14-cv-1699 ................................................................................ 5

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
   274 F.R.D. 63 (W.D.N.Y. 2011) .............................................................. 17

*Roth v. Aon Corp.*,
   254 F.R.D. 538 (N.D. Ill. 2009) ............................................................... 17

*S.E.C. v. Arvco Capital Research, LLC*,
   2014 WL 65764 (D. Nev. Jan. 6, 2014) .................................................. 11

*Smith v. Clark County Sch. Dist.*,
   727 F.3d 950 (9th Cir. 2013) ................................................................... 11

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ................................................................... 11

*United States v. Gypsum Co.*,
   333 U.S. 364 (1948) ................................................................................. 11

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ................................................................................. 19

**Rules**

Fed. R. Civ. P. 26(b)(5) ................................................................................. 13

Fed. R. Civ. P. 72(a) ..................................................................................... 11

iii

Gibson, Dunn &
Crutcher LLP

# I.   INTRODUCTION

As part of its extensive efforts to ensure compliance with this Court's injunction and Rimini's policies, ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████   These drafts are communications from Rimini's developers to Rimini's legal counsel for the purpose of seeking legal advice, including injunction compliance.  Rimini produced in discovery all final Dev Instructions coming out of this process, as well as any other Dev Instructions (whether draft or not) that were sent to a software environment of any Rimini client.  In other words, Oracle already has ██████ ██████████████████████████████████████████████████████████   Oracle's motion to compel seeks only those drafts in ███████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████   Those drafts were properly withheld as privileged and confidential attorney-client communications.

Magistrate Judge Ferenbach has presided over discovery in these post-trial proceedings since March 2019.  He has held 5 hearings, ruled on 4 discovery motions in addition to other disputes, reviewed extensive submissions from the parties related to injunction compliance and discovery, and is intimately familiar with the facts related to these issues.  Judge Ferenbach held oral argument on Oracle's motion to compel the privileged documents now at issue, reviewed the declarations submitted by Rimini and other evidence in the record, considered all of Oracle's arguments (the same ones Oracle makes here), and rejected those arguments on the merits.  Among other things, he held that "what Rimini is doing is taking steps to comply with the injunction" and that Rimini is "tak[ing] an extra step to make sure they're not violating the injunction when they go ahead and send it off to customers, [and] that that's an appropriate attorney-client interaction.  It is a communication to an attorney for advice."  ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 54:4–22.

Judge Ferenbach's ruling on privilege was correct and certainly not "clear error" or "contrary to law," as required for reversal.  His ruling was consistent with Rimini's sworn declarations:  one from a lead developer explaining that ███████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████ and one from Rimini's in-house counsel explaining that ███

███████████████████████████████████████████████████████████████

███████████  Judge Ferenbach's crediting of this sworn testimony over Oracle's attorney argument to conclude that the communications are privileged was not clear error.

Oracle's Objections to Magistrate Judge Ferenbach's Order, ECF No. 1313 ("Objections"), make three arguments, all of which were considered and properly rejected by Judge Ferenbach.

**First,** Oracle argues that Rimini failed to meet its burden to establish a *prima facie* showing of privilege because Rimini did not produce a privilege log.  But that argument fails because (1) Rimini provided sworn declarations establishing the basis of privilege over this category of documents in the ███████████████████████; (2) Ninth Circuit law does not require a privilege log, as opposed to declarations; and (3) Oracle did not even *request* a privilege log in its motion to Judge Ferenbach, instead making that request for the first time at oral argument only *after* Judge Ferenbach ruled.  Even then, Judge Ferenbach rejected the request because it would serve no purpose, as the declarations already establish privilege.

**Second,** Oracle argues that the "primary purpose" of creating the draft Dev Instructions is a business purpose.  That argument fails factually because, consistent with Rimini's sworn declarations, ███████████████████████████████████████████████

███████████████████████████████████████████████  As Judge Ferenbach put it, "[i]t is a communication to an attorney for advice" and the purpose is "to make sure they're not violating the injunction."  ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 54:13–20.  Oracle's argument also fails legally because it misconstrues the primary purpose test, which focuses on the primary purpose of a communication when in-house counsel serves both legal and business roles.  Here, the record establishes that Rimini's in-house counsel was acting in a

2

legal role, not a business role, and Judge Ferenbach's finding to that effect was not clear error. And, under well-settled law, the fact that the Dev Instruction, when final, serves a business purpose does not preclude the *draft* from being privileged when it is sent to counsel to obtain legal advice.

**Third,** Oracle accuses Rimini of "shielding" evidence and engaging in a "cover up." Oracle has it backward. The purpose of the attorney review procedure is to take additional steps to ensure compliance—in the words of Judge Ferenbach, "taking steps to comply with the injunction, and using lawyers to do that." ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 54:6–7. Nothing is being "shielded" beyond legitimate attorney-client communications (which are appropriately protected from discovery, as in every case). All the final Dev Instructions—those actually used in Rimini's processes—have been produced.

Judge Ferenbach applied the correct law to the facts as he found them based on sworn declarations. His ruling on this discovery matter is entitled to substantial deference, but even if it were not, it should be affirmed because it is entirely correct. Oracle's Objections should be overruled.

In addition to improperly seeking access to privileged communications, Oracle's Objections contain accusations and invective that are false and require correction. Oracle claims that Rimini "resisted" discovery in this post-trial proceeding. *See*, *e.g.*, Objections at 2. That is untrue. In fact, in a mere six months, Rimini produced more than 600,000 documents, the code to its own software tools, and massive exports of gigabytes of data from its databases, client-management platform (Salesforce) and intranet (Sharepoint). Rimini also provided Oracle with 24/7 access to its internal development and testing platforms (Jira, DevTrack, and Spira). All of this was produced in response to Oracle's "Motion to Permit *Limited* Discovery" (emphasis added) regarding Rimini's compliance with the injunction. ECF No. 1199. Judge Ferenbach never once found that Rimini had shirked its discovery obligations. To the contrary, he acknowledged on two separate occasions that "a ton of discovery has been given" and that "you've [Oracle] gotten an awful lot of discovery here." ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 23:15–18; ECF No. 1294, Nov. 20, 2019 Hearing Tr. at 47:20–21. And he noted that

"everybody is operating in good faith here."  ECF No. 1280, Oct. 7, 2019 Hearing Tr. at 19:6.
In further misdirection, Oracle claims that Rimini "arbitrarily" resisted custodial discovery and
that the Court compelled Rimini to produce custodial documents, but the dispute was legitimate,
the Court granted far less custodial discovery than Oracle sought, and, recognizing the
incredible burden being imposed on Rimini, the Court ordered production only on the condition
that *Oracle pay* for much of the cost.  Oracle's accusations that Rimini has been unreasonably
"resistant" are meritless.

## II.      BACKGROUND

The procedural history of this case, and Oracle's novel theories underlying its
contention that Rimini is violating the injunction, are necessary context for understanding
Oracle's motion.  Thus, Section A below briefly discusses the relevant procedural background
of the case.  Section B describes the facts specifically related to Oracle's motion.

**A.      *Rimini I*, *Rimini II*, and These Post-Trial Proceedings**

**1.      *Rimini I* and Rimini's Switch to Process 2.0**

As this Court knows, after filtering out all of the claims Oracle either dismissed or lost
at trial or on appeal, only two practices were challenged and adjudicated to be infringing in
*Rimini I*: (1) Rimini's "local hosting" of its clients' Oracle licensed software environments, and
(2) "cross-use" of generic (*i.e.*, non-client specific) software environments to provide support
services to multiple clients (even though all such clients had valid licenses).  *Oracle USA, Inc.
v. Rimini Street, Inc. (Rimini I)*, 879 F.3d 948, 956, 959 (9th Cir. 2018).  In its February 2014
summary judgment order, this Court found that certain legacy PeopleSoft licenses prohibited
Rimini from locally hosting its clients' licensed environments on its own systems.  ECF No.
474.  The Court also found that Rimini had used at least one generic environment to create
software updates for multiple clients.  *Id.* at 13.

Rimini invested millions of dollars to revise its processes to conform to this Court's
summary judgment ruling, completing the transition to Process 2.0 by the end of July 2014.
ECF No. 905 at 4–5; ECF No. 1130 at 3–4.  Process 2.0 eliminated the processes that were at
issue in *Rimini I*.  *See* ECF No. 1134-3.  Under Process 2.0, each client (not Rimini) hosts its

4

Gibson, Dunn &
Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

1    own, separate, licensed Oracle software environment on the client's own systems, and Rimini

2    remotely accesses those clients' environments (on the clients' systems) to provide support. *See*,

3    *e.g.*, *id.* at Benge Declaration ¶¶ 3, 5.

4          Process 2.0 was never litigated in *Rimini I*.  Rimini sought to have Process 2.0 tried to

5    the jury in *Rimini I*, but Oracle resisted, arguing that "the Court should limit the trial to Rimini's

6    old support model."  ECF No. 490 at 5–6.  Rimini thus filed a separate lawsuit in October 2015

7    (*Rimini II*), seeking a judicial declaration that Process 2.0 does not infringe Oracle's copyrights.

8    *Rimini Street, Inc. v. Oracle Int'l Corp.*, Case No. 2:14-cv-1699 ("*Rimini II*"), ECF No. 1.

9    Oracle successfully moved to exclude any mention of Process 2.0 in the *Rimini I* trial.  It argued

10   that Process 2.0 was "irrelevant" to Oracle's liability theories in *Rimini I*.  ECF No. 646 at 5

11   ("The legality of the new 2014 model will be the subject of Rimini's new lawsuit.  In short,

12   *Rimini's liability related to its 2014 support model is not at issue in this trial*, and therefore any

13   evidence related to the 2014 support model *is irrelevant to any liability issue at trial*."

14   (emphases added)).  This Court agreed with Oracle and excluded all evidence of Rimini's

15   revised processes from *Rimini I*, ruling that "Rimini's new service support model is not relevant

16   to any claim or issue in [*Rimini I*]" and that all "claims, issues, and evidence related to the new

17   support model [*i.e.*, Process 2.0] are being addressed *solely* in [*Rimini II*]."  ECF No. 723 at 3

18   (emphasis added).  Thus, none of the disputed issues surrounding Rimini's significantly revised

19   processes have been tried to a jury.

20          **2.      Oracle Expands its "Cross-Use" Theory in *Rimini II***

21          To advance an infringement theory broad enough to capture Rimini's revamped

22   processes, in *Rimini II*, Oracle massively expanded its definition of "cross-use."  According to

23   Oracle, "cross-use" is not limited to what was adjudicated in *Rimini I*—*i.e.*, locally hosted

24   generic environments, which Rimini ceased using nearly *6 years ago* (by July 2014).  Instead,

25   Oracle uses the term "cross-use" to attack something more fundamental—the very idea that

26   Rimini developers are allowed to gain and re-use their *experience* and *know-how* in their jobs.

27   Under Oracle's new definition, Rimini engages in "cross-use" █████████████████████

28   ███████████████████████████████████████████████████████████████████████

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

1    ██████. *Rimini II*, ECF No. 927 at 14; *Rimini II*, ECF No. 929-2, at ¶¶ 390, 392–93, 469–70.

2    In other words, Oracle contends that ████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████. Oracle contends that

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████. *Rimini II*, ECF No. 929-1 at

8    150:3–151:24, 170:6–171:18, 174:10–176:2; *Rimini II*, ECF No. 929-2 at ¶ 217.  Indeed, Oracle

9    has taken it even further, suggesting that ████████████████████████████

10   ████████████████████████████████████████████████████████

11   █████████████████████ *Rimini II*, ECF No. 929-1 at 174:10–176:2.  This "cross-use"

12   theory, and its application to Rimini's 2.0 processes, are hotly disputed issues that are central

13   to several of the *Rimini II* summary judgment motions currently pending before this Court.  *See*

14   *Rimini* II, ECF Nos. 904, 929.

15        **3.    Oracle Seeks to Import Its Expanded View of "Cross-Use" into *Rimini I***

16            **Contempt Proceedings**

17        Oracle has imported its new, massively expanded "cross-use" theory into these post-

18   trial proceedings in an attempt to apply it to Rimini's 2.0 processes in *Rimini I*, rather than in

19   *Rimini II*.  For example, Oracle's position, as set forth most recently in its expert report served

20   during contempt discovery proceedings, ██████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████.[1]  This view of "cross-use" is divorced from

25   Oracle's definition of the term in *Rimini I*—it does not matter to Oracle that each client now

26   _____

27   [1] ████████████████████████████████████████████████████████

28   ████████████████████ *Rimini II*, ECF No. 929-1 at 213:5–15.

6

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

(and for the past nearly 6 years) maintains its own, separate environments on its own systems, or that Rimini now remotely accesses each client's environments separately to perform the necessary work for each client within each client's own environment.  Nor does it matter to Oracle that Rimini eliminated locally hosted environments and does not copy any Oracle intellectual property from one client to another.  Under Oracle's expanded view, unlawful "cross-use" occurs when Rimini engineers simply gain experience and know-how in working with Oracle software.

Oracle's Objections to Judge Ferenbach's order reflect the same pattern.  Oracle argues that Rimini's use of Dev Instructions—which, as explained in more detail below, ███████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████—are supposed evidence of "Rimini's continued cross-use in violation of this Court's Injunction."  Objections at 1.  But Oracle's false assertion is predicated on Oracle's fundamentally expanded definition of "cross-use" in *Rimini II*.  Whether Rimini's reliance on its own know-how (in the form of Dev Instructions or other methods) in providing updates to clients is somehow copyright infringement was never adjudicated in *Rimini I*.  Rather, this conduct is part of Process 2.0 and is pending resolution in *Rimini II*.  *See Rimini II*, ECF No. 927.

**B.** **Oracle's Motion to Compel Privileged Draft Dev Instructions**

**1.** **Rimini's Use of Dev Instructions**

Dev Instructions are technical documents that reflect what steps a Rimini developer must take to implement an update.  Dev Instructions are typically used ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

7

Gibson, Dunn &
Crutcher LLP

1     ████████████████████████ ECF No. 1297-3, Decl. of Tim Conley ("Conley Decl.")

2     ¶¶ 2–3  Among other things, the Dev Instruction ████████████████████████████

3     ████████████████████████████████████████████████████████████████████████████

4     ████████████████████████████████████████████████████████████████████████████

5     ████████████████████████████████████████████████████████████████████████████

6     ███████████████████████████████████████████████████████████████████████████n.

### 2.     Legal Review of Draft Dev Instructions

8          Following the issuance of the injunction, ████████████████████████████████

9     ████████████████████████████████████████████████████████████████████████████

10    ████████████████████████████████████████████████████████████████████████████

11    ████████████████████████████████ ECF No. 1297-4, Decl. of Erin Mendillo

12    ("Mendillo Decl.") ¶ 5.   Rimini engineers ████████████████████████████████████

13    ████████████████████████████████████████████████████████████████████ ECF

14    No. 1297-3, Conley Decl. ¶ 4. ███████████████████████████████

15    ████████████████████████████████████████████████████████████████████████████

16    ███████████████████████████ *Id.* ¶ 5; ECF No. 1297-4, Mendillo Decl. ¶ 4. ████

17    ████████████████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████. ECF No. 1297-4, Mendillo Decl. ¶ 4.

19    ███████████████████████████████████████, the Rimini engineer is

20    sending a communication to an in-house lawyer for the purpose of receiving legal advice—*i.e.*,

21    the engineer is asking for the lawyer's legal opinion ████████████████████████████

22    ████████████████████████████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████████████████████████████

25    ████████████████████ ECF No. 1297-4, Mendillo Decl. ¶ 5; ECF No. 1297-4, Conley Decl. ¶ 6.

26    All of the final Dev Instructions have been produced in this post-trial proceeding, and were not

27    at issue in Oracle's motion to compel.

28

Gibson, Dunn &
Crutcher LLP

1   ████████████████████████████████████████████████

2   ██████████████████████████████████████ ECF No. 1297-4, Mendillo

3   Decl. ¶ 7.  The individuals with access rights to this folder are the engineers and attorneys

4   seeking and providing, respectively, legal advice regarding injunction and policy compliance.[2]

5       **3.    Rimini's Production of Dev Instructions**

6           As Oracle concedes, Rimini produced to Oracle all "final" versions of the Dev

7   Instructions—in other words, ██████████████████████████████████████████████

8   ██████████████████████████████████ Objections at 4.  Moreover, Rimini also

9   produced any draft versions of Dev Instructions that may have been sent to client environments

10  before (or while) legal review was performed.  ECF No. 1310, Jan. 22, 2020 Hearing Tr. at

11  42:1–5.  Accordingly, Oracle has every Dev Instruction that has ever been sent to a client's

12  environment—altogether, as Oracle admitted, more than 500 Dev Instructions.  *Id.* at 42:9–15.

13  The only versions of Dev Instructions sought by Oracle's motion are the *drafts* ████████████

14  █████████████████████████████████████████████████████████████████████████████████

15  Oracle has the final versions corresponding to those drafts.

16          In overheated fashion, Oracle claims that Rimini has improperly "withheld" or

17  attempted to "conceal" discovery in this case, and that Rimini's privilege claim over draft Dev

18  Instructions is "Rimini's latest tactic for resisting production ordered by this Court."  Objections

19  at 3.  This is false.  Oracle has had virtually unbounded access to Rimini's documents and

20  systems, regarding nearly every aspect of Rimini's business, for nearly a decade.  Even in these

21  accelerated post-trial proceedings, Rimini has produced a massive amount of discovery,

22  including more than 600,000 documents, the code to Rimini's software tools, 24/7 access to

23  Rimini's internal development and testing platforms (Jira, DevTrack, and Spira), and massive

24  data exports of its AFW database, client-management platform (Salesforce) and intranet

25  (SharePoint), not to mention the nearly 10 million documents produced in *Rimini II* and the 4.2

26  terabytes of data, database logs, and code produced in that case, which have been deemed

27  _____

28  [2] ████████████████████████████████████████████████████
        ████████████████████████

9

Gibson, Dunn &
Crutcher LLP

produced in *Rimini I*. ECF Nos. 1244 at 3, 1297 at 1. Indeed, Judge Ferenbach has, on several occasions, made note of the immense volume of discovery produced by Rimini and commended Rimini for complying with its obligations. *See*, *e.g.*, ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 23:15–18 ("I put a lot of pressure on Rimini to do things, and both counsel have worked together, and that's great, I really appreciate that, and a ton of discovery has been given."); ECF No. 1294, Nov. 20, 2019 Hearing Tr. at 47:20–21 (the Court to Oracle's counsel: "you've gotten an awful lot of discovery here").

### 4.    Oracle's Motion and Judge Ferenbach's Ruling

On December 6, 2019, Oracle moved to compel the draft Dev Instructions (among other things, which Judge Ferenbach ruled on and Oracle does not challenge). ECF No. 1292. Oracle's motion did not request that the Court compel Rimini to produce a privilege log for the drafts. Nor did Oracle ever ask for a privilege log during discovery.

After hearing argument on January 22, 2020, and considering the declarations submitted by Rimini in support of its privilege claim, Judge Ferenbach ruled that Rimini's invocation of privilege over draft Dev Instructions submitted "For Legal Review" was proper. ECF No. 1310. Specifically, Judge Ferenbach held that placing a draft Dev Instruction in the privileged folder for review by Rimini in-house counsel "is a communication to an attorney for advice. And so those draft Dev Instructions, as long as they weren't sent out to anybody beyond the copy, will not be produced." ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 54:20–22. Judge Ferenbach also held that, by incorporating in-house counsel into the process, Rimini is "tak[ing] an extra step to make sure they're not violating the injunction when they go ahead and send it off to the customers, that that's an appropriate attorney-client interaction." *Id.* at 54:16–19.

At the hearing, ***after*** Judge Ferenbach ruled that Rimini's assertion of privilege was proper and denied the motion, Oracle's counsel asked—for the first time—that the Court order Rimini to produce a privilege log for the draft Dev Instructions and to "redact" the documents. ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 55:5–8. The Court denied this request, holding: "the point here is that when the engineers send the draft to the lawyer, that whole thing is – that's the communication from the client to the attorney to get legal advice. So to me the whole

10

draft is a privileged communication, and, you know, it's part of the process so a redaction doesn't make any sense. I think that's what the record establishes." *Id.* at 55:14–20.

Oracle then filed the present Objections, claiming that Judge Ferenbach's privilege ruling based on the sworn declarations submitted by Rimini engineers and in-house counsel is "clearly erroneous" and "contrary to law."

### III.    STANDARD OF REVIEW

A magistrate judge's order on a discovery motion "generally operates as a final determination." *Jones v. Skolnik*, 2017 WL 3749668, at *2 (D. Nev. Aug. 30, 2017) (Hicks, J.). However, "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1–3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law." LR IB 3-1(a); *see also* Fed. R. Civ. P. 72(a). "This standard of review is significantly deferential to the initial ruling." *S.E.C. v. Arvco Capital Research, LLC*, 2014 WL 65764, at *2 (D. Nev. Jan. 6, 2014).

"Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Specifically, "in reviewing … for clear error, [a court] must not reverse as long as the findings are plausible in light of the record viewed in its entirety, even if [the court] would have weighed the evidence differently had [it] been the trier of fact." *Osband v. Ornoski*, 2005 WL 6572191, at *5 n.4 (E.D. Cal. Dec. 1, 2005) (citing *United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jones*, 2017 WL 3749668, at *2 (Hicks, J.) (citing *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1110–11 (E.D. Cal. 2011)). When reviewing the order, "the court applies the deferential abuse-of-discretion standard; the magistrate judge's order will be reversed only if the magistrate judge abused her broad discretion." *Id.* (citing *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007)). The court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

11

Gibson, Dunn &
Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

# IV.    ARGUMENT

Judge Ferenbach's ruling was correct.  He considered the arguments made by Oracle and the sworn declarations and exhibits in the record, and held oral argument.  Relying on declarations explaining Rimini's legal review process, he reasonably found that ████

████████████████████████████████████████████████████████████████████

████████████    were attorney-client communications made for the purpose of seeking legal advice and, therefore, privileged.  That ruling is well supported, and far from "clear error" or "contrary to law."

## A.    Judge Ferenbach Correctly Found that Rimini Established a *Prima Facie* Case of Privilege

The party asserting the attorney-client privilege must make a *prima facie* showing that the privilege applies.  *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 627 (D. Nev. 2013) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir. 1992)).  The privilege applies where: (1) legal advice of any kind was sought; (2) the advice was from a professional legal adviser in his capacity as such; (3) the communication was relating to that purpose; (4) the communication was made in confidence; and (5) the communication was made by the client. *Premiere Digital Access Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005); *see also In re Grand Jury Investigation*, 974 F.2d at 1071 n.2.

Judge Ferenbach was correct to find that draft Dev Instructions at issue in █████████

████████████████    meet all of these elements.  *First*, ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████    ECF No. 1297-3, Conley Decl. ¶ 4.  ██████████████████████

████████████████████████████████████████████████████████████    (ECF No.

1297-4, Mendillo Decl. ¶ 3) ██████████████████████████████████████████

████████████████████████████████    *Id.* ¶¶ 4, 5.  Thus, the purpose of the communication is to seek counsel's legal advice on injunction and policy compliance.  *Second*,

████████████████████████████████████████████████████████████████████

12

Gibson, Dunn & Crutcher LLP

1       *Id.* ¶ 4. *Third,* ███████████████████████

2 ████████████████████████████████████████████

3 ███████████████████ *Id. Fourth,* ████████████

4 ████████████████████████████████████████████

5 █████████████████████████ *Id.* ¶ 7. *Finally,* ███

6 ███████████████████████████ *Id.* ¶ 4. All of

7 these facts are supported by sworn declarations.  It was thus not clear error for Judge Ferenbach

8 to credit the declarations and find the elements of privilege satisfied.

9       In its objections, Oracle argues that Judge Ferenbach committed clear error and ruled

10 contrary to law because he did not order Rimini to produce a privilege log and, therefore

11 according to Oracle, could not have possibly found the elements of privilege met.  Objections

12 at 9–10.  Oracle is wrong.[3]

13       ***First,*** there is no legal requirement that a party make its *prima facie* showing of privilege

14 with a privilege log rather than with declarations.  Federal Rule of Civil Procedure 26(b)(5)

15 does not require a privilege log.  Fed. R. Civ. P. 26(b)(5); *see In re Imperial Corp. of Am.*, 174

16 F.R.D. 475, 477 (S.D. Cal. 1997) ("[N]o where in [Fed. R. Civ. Pro.] 26(b)(5) is it mandated

17 that a document-by-document privilege log is required, if a party seeks to withhold documents

18 based on privilege or work product.").  The Ninth Circuit has recognized that there are "a

19 number of means of sufficiently establishing the privilege, *one of which* is the privilege log

20 approach."  *In re Grand Jury Investigation*, 974 F.2d at 1071 (emphasis added).

21       Here, Rimini submitted sworn declarations both from a Rimini developer and IP

22 counsel—the sender and recipient of the communications at issue—establishing the

23 circumstances of the privilege.  That is better evidence than an unsworn privilege log, and

24 Oracle points to *no case* in which a court has been reversed for relying on declarations rather

25 than a privilege log.  Contrary to Oracle's assertions, Rimini's privilege objection was not a

---

[3] Although the "clear error" and "contrary to law" standards of review apply generally to review of Judge Ferenbach's order as a whole, because Oracle did not even *request* a privilege log until *after* Judge Ferenbach denied Oracle's motion, Judge Ferenbach's decision not to order production of a log was entirely discretionary.

13

Gibson, Dunn & Crutcher LLP

"blanket" objection, but rather concerned a specific category of documents in the "For Legal Review – Privileged" folder, subject to a specific legal review process, and all subject to the same analysis.  *See Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655, at *6–7 (D. Ariz. 2013) (finding that attorney declarations providing categories of documents, a general description of the nature of the documents, and the attorneys/clients/representatives who sent/received the documents were sufficient to evaluate a claim of privilege and a document-by-document log was therefore unnecessary).  Indeed, at the hearing, after Judge Ferenbach denied Oracle's motion, Oracle requested that the Court order a privilege log, but Judge Ferenbach rejected that request, stating on the record that a privilege log was unnecessary and would serve no purpose:  "No [to Oracle's request], because I think the point here is that when the engineers send the draft to the lawyer, that whole thing is – that's the communication from the client to the attorney to get legal advice.  So to me the whole draft is a privileged communication...."  ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 55:14–18.

**Second,** Oracle distorts Rimini's declarations in order to claim that privilege was not supported.  Oracle repeatedly argues that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Objections at 10.  That misrepresents Ms. Mendillo's declaration.  In fact, Ms. Mendillo testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ECF No. 1297-4, Mendillo Decl. ¶ 4.  Oracle's out-of-context quotation of the word "may" comes from a different portion of the declaration, in which Ms. Mendillo testified that ██████████████████████████████████████████████████████████████████████████████████████ *Id.* ¶ 3.  In context, the sentence merely explains ████████████████████████████████████████████████████ Judge Ferenbach did not commit clear error in implicitly rejecting Oracle's distortion of the record.

14

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

1    **Third,** despite the parties exchanging no fewer than 12 letters regarding the production

2    of Dev Instructions in discovery, Oracle never requested the production of a privilege log.

3    Oracle's motion also did *not* request that the Court order a privilege log.  That request was made

4    for the first time at oral argument *after* Judge Ferenbach had already issued his ruling.  ECF

5    No. 1310, Jan. 22, 2020 Hearing Tr. at 55:5–9.  Judge Ferenbach unmistakably did not commit

6    "clear error" or abuse his discretion by not awarding relief that was not even sought in Oracle's

7    motion.  *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007)

8    ("Generally, the federal courts deem waived any arguments that are not raised and presented in

9    the parties' opening briefs.").  And, in any case, as Judge Ferenbach explained on the record, a

10   privilege log would add nothing given the declarations already submitted.

11          Judge Ferenbach's finding that Rimini made a *prima facie* showing of privilege as to

12   the draft Dev Instructions was supported by the evidence, including sworn declarations.

13   Accordingly, Oracle's objections should be overruled.

14   **B.      Judge Ferenbach Correctly Found That the Purpose of the Communications at**

15   **Issue Was to Obtain Legal Advice**

16          Oracle next argues, as it did to Judge Ferenbach, that the primary purpose of creating

17   the draft Dev Instructions in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was not to obtain legal

18   advice.  Judge Ferenbach addressed and rejected this argument, stating that "when the engineers

19   send the draft to the lawyer, that whole thing is – that's the communication from the client to

20   the attorney to get legal advice."  ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 55:14–17.  He

21   noted that the point of the communication was to "tak[e] steps to comply with the injunction,

22   and they're using lawyers to do that" and that "tak[ing] an extra step to make sure they're not

23   violating the injunction when they go ahead and send [the instruction] off to the customers,

24   that's an appropriate attorney-client interaction.  It is a communication to an attorney for

25   advice."  *Id.* at 54:4–21.

26          That finding is amply supported by the record.  Rimini's declarants testified ▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ECF No. 1297-3,

Gibson, Dunn &
Crutcher LLP

1   Conley Decl. ¶ 4; *see also id.* ¶ 6. ████████████████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████ ECF

4   No. 1297-4, Mendillo Decl. ¶ 4.  This is a paradigmatic example of an engineer seeking legal

5   advice from counsel to comply with a court order.  Because the record supports Judge

6   Ferenbach's finding, he did not commit clear error.

7           Oracle raises a number of ancillary arguments, all of which Judge Ferenbach properly

8   rejected.  **First,** Oracle argues that because draft Dev Instructions are "technical documents,"

9   they are created for a business purpose and therefore not privileged under the "primary purpose"

10  test.  Objections at 11.  This misconstrues the primary purpose test.  The primary purpose test

11  applies when a communication is made to attorneys seeking "both business and legal advice"

12  (Objections at 11 (citing *Phillips*, 290 F.R.D. at 628))—in other words, a situation when an in-

13  house attorney acts in both a business and legal capacity.  Here, ███████████████

14  ████████████████████████████████████████████████████

15  ECF No. 1297-4, Mendillo Decl. ¶ 4.  The fact that the documents are technical is irrelevant;

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ███████████      *Id.* ¶ 1; *see also* ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 48:3–20.

19          Moreover, it is irrelevant to the primary purpose test that the Dev Instruction, once final,

20  will eventually be used for a business purpose; the question is whether the *communication to*

21  *counsel*—here the creation of the draft in a specific folder for counsel's review—was made for

22  a legal purpose.  Indeed, it is well settled that "[t]he fact that a document may be prepared for

23  a business purpose does not preclude it from being privileged if it is sent to an attorney for the

24  purpose of receiving legal advice relating to that document."  *In re Premera Blue Cross*

25  *Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019); *see also Gen-Probe Inc.*

26  *v. Becton, Dickinson & Co.*, 2012 WL 3762447, at *2 (S.D. Cal. Aug. 29, 2012) (collecting

27  cases holding that drafts of documents created for legal review before ultimately being

28  disclosed are not outside of the privilege); *In re Banc of Cal. Sec. Litig.*, 2018 WL 6167907, at

Gibson, Dunn &
Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

*2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed."); *Ideal Elec. Co. v. Flowserve Corp.,* 230 F.R.D. 603, 607–08 (D. Nev. 2005) (drafts of affidavit to be submitted to court remain privileged); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 85 (W.D.N.Y. 2011) (draft documents intended for publication can be covered by the attorney-client privilege, "provided that the draft documents demonstrated an intent to seek confidential legal advice on their content."). Here, the initial draft Dev Instructions are created for legal review to receive legal advice regarding ensuring compliance with the injunction before becoming "final" for use. Those drafts for counsel's review are thus privileged. The final versions were produced by Rimini and are not subject to Oracle's motion.

**Second,** Oracle's Objections confuse the draft Dev Instructions ████████████ ██████████████████ with the "legal ticket" ███████████████ ████████████████ Oracle claims that only the legal ticket is privileged. Objections at 11. That is wrong. While the legal ticket ██████████████ the key substantive communication is the draft Dev Instruction █████████████, as Judge Ferenbach found. ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 55:15–17 (Judge Ferenbach: "the whole draft is a privileged communication").

**Third,** Oracle argues that the draft Dev Instructions are not sufficiently confidential to be privileged. Objections at 12. That is wrong. There is no genuine dispute that the drafts at issue never left Rimini; any draft that was sent to a client environment (inadvertently or otherwise) was produced. Additionally, even within Rimini, ████████████████ ███████████████████████████████████ ████████████████████ ECF No. 1297-4, Mendillo Decl. ¶ 7. Even the cases cited by Oracle recognize that disclosure to company personnel with an interest in the matter does not waive privilege. *Roth v. Aon Corp.*, 254 F.R.D. 538, 541–42 (N.D. Ill. 2009) (finding no breach of confidentiality because "all of the non-lawyer individuals who were privy to the [email at issue] were … *directly concerned with the matter* …[and] [t]o disallow

17

Gibson, Dunn & Crutcher LLP

1  corporations the space to collectively discuss sensitive information with legal counsel would be

2  to ignore the realities of large-scale corporate operation") (emphasis added) (cited by

3  Objections at 12–13); *see also Premiere Digital Access*, 360 F. Supp. 2d at 1174–75.  Here,

4  ███████████████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████

7      ***Finally,*** Oracle argues that Rimini's counsel's edits to one draft Dev Instruction (which

8  was produced) were "editorial" and "do[] not amount to legal advice."  Objections at 13.  This

9  is a quintessential factual issue on which the parties disagreed, and which Judge Ferenbach was

10  well within his rights to decide against Oracle, crediting Rimini's declarations over Oracle's

11  attorney argument.  But ultimately, it is irrelevant.  That in some cases ██████████████████

12  ███████████████████████████████████████████████████████ does not

13  change the fact that the purpose of providing the draft to counsel was to seek legal advice to

14  ensure compliance with the injunction.  Of course, in situations where counsel has no edits, the

15  draft and the final are the same, and it has already been produced to Oracle as a final.  The non-

16  approved drafts, on the other hand, reflect decisions by counsel communicated to engineers

17  (through non-approval) and are quintessentially privileged.  In seeking the drafts communicated

18  to counsel and counsel's communications in response, Oracle is invading the heart of the

19  attorney-client privilege.

20      In sum, Judge Ferenbach applied the correct law and concluded as a factual matter based

21  on the declarations submitted that the communications at issue were made for the purpose of

22  seeking and providing legal advice regarding injunction compliance. Those findings were not

23  clearly erroneous.

24  **C.    Judge Ferenbach Correctly Found that Rimini's Review Process Is "an**

25  **Appropriate Attorney-Client Interaction"—Not a So-Called "Cover-Up"**

26      Oracle argues that Rimini's legal review process allows it to "shield" its development

27  process and "cover up" alleged violations of the injunction.  Objections at 13–14.  Oracle has

28  it exactly backward: █████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

██████████████████████████████████████████ Oracle

made its "shielding" argument to Judge Ferenbach (ECF No. 1310, Jan. 22, 2020 Hearing Tr. at 53:13–14), but he rejected it. As Judge Ferenbach found, Rimini is taking steps "to make sure they're not violating the injunction when they go ahead and send it off to the customers, that's an appropriate attorney-client interaction. It is a communication to an attorney for advice." *Id.* at 54:15–20; *see also id.* at 51:22–23 (The Court: "[T]hey [Rimini] want to set up a procedure to make sure at the end of the day that they're not violating the injunction.").

Indeed, the necessary and intended consequence of the attorney-client privilege is that some communications are protected from discovery, because doing so facilitates broader public policies of allowing individuals and corporations to communicate freely with lawyers to "find out how to obey the law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 393 (1981); *see also Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 631 (S.D. Cal. 1999) ("It is the very essence of evidentiary privileges to protect from disclosure relevant evidence.").

Oracle claims that ███████████████████████████████████ ███████████████████████████████ Objections at 14. To be sure, that is Oracle's position, although it is obviously disputed by Rimini and was not endorsed by Judge Ferenbach. Under Oracle's expanded view of "cross-use," ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ In fact, Oracle's expert testified ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ *Rimini II*, ECF No. 929-1 at 232:7–234:21. Thus, to Oracle, the fact that Dev Instructions are created at all is an alleged violation of the injunction because ████ ████████████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

1 ███████████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████ That interpretation of

3 "cross-use" is hotly disputed, but the *draft* Dev Instructions are irrelevant to the dispute.[4]  All

4 of the final Dev Instructions ███████████████████████ have been produced.

5 Oracle can (and does, through its already-served expert report) argue that the Dev Instructions

6 constitute "cross-use," and that dispute will and should be resolved at the merits stage in *Rimini*

7 *II*.  The fact that Oracle contends that attorney-client privileged communications themselves

8 constitute violations of the injunction speaks to the absurdity of its merits position, but it has

9 no bearing at all on whether the criteria for an attorney-client privileged communication have

10 been met.

11      Rimini's attorney review procedure to further ensure injunction compliance should be

12 commended, not penalized.  Judge Ferenbach recognized as much when he held that "it seems

13 to me, you know, assuming everything from … Oracle's point of view, that what Rimini is

14 doing is taking steps to comply with the injunction, and they're using lawyers to do that."  ECF

15 No. 1310, Jan. 22, 2020 Hearing Tr. at 54:4–10.  Oracle can point to no factual finding that

16 Judge Ferenbach made that was unsupported by the record, and no binding case law that he

17 misread or violated.  Accordingly, Judge Ferenbach's decision should stand.

18                              **V.     CONCLUSION**

19      Judge Ferenbach is knowledgeable about the facts and procedural history of this case,

20 particularly the post-verdict discovery, having presided over 4 motions and 5 hearings and

21 overseeing discovery since March 2019.  He fully considered and properly rejected the

22 arguments Oracle repeats in its Objections.  He applied the correct law and made findings that

---

23

24  [4]  Also hotly disputed is the copyrightability of references to variable names and other
25  standard and/or constrained programming elements, which is pending summary judgment
    in *Rimini II*.  In its Objections, Oracle repeats a claim that Judge Ferenbach already
26  considered, *i.e.*, that Rimini allegedly copied two lines of Oracle code in one (out of 500)
    files.  Oracle, however, failed to conduct the required abstraction-filtration-comparison
27  analysis, and Rimini disputes any copying as well as the copyrightability of those two lines.
    In any event, Oracle has the particular file in question (because it was actually sent to a
28  Rimini client), and so it is irrelevant to this dispute over draft Dev Instructions that never
    came out of the legal review process and were never used in connection with providing
    support to any client.

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF

were supported by sworn declarations.  He, therefore, did not commit "clear error," and his ruling on this discovery matter should not be disturbed.

Dated:  February 26, 2020

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Eric D. Vandevelde
                      Eric D. Vandevelde

*Attorneys for Defendant*
*Rimini Street, Inc.*

21

RIMINI'S RESPONSE TO ORACLE'S
OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE FERENBACH'S ORDER
CASE NO. 2:10-CV-00106-LRH-VCF