GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

*Attorneys for Defendant*
*Rimini Street, Inc.*

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: 925.264.7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: 336.908.6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: 702.667.4843
wwa@h2law.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al., | CASE NO. 2:10-CV-00106-LRH-VCF |
| Plaintiffs, | **RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*** |
| v. | |
| RIMINI STREET, INC., et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

1

## TABLE OF CONTENTS

2

Page

3

I. INTRODUCTION ...................................................................................................1

4

II. BACKGROUND..................................................................................................2

5

A.    Two Different Processes, Two Separate Lawsuits................................3

6

1.    *Oracle Initiates* Rimini I *to Adjudicate the Legality of Process 1.0*............................................................................................3

7

8

2.    *The Court Construes the Licenses on Summary Judgment* ...................3

3.    *Rimini Changes from Process 1.0 to Process 2.0* .................................4

9

10

4.    *The Court, at Oracle's Insistence, Excludes Process 2.0 from* Rimini I ....................................................................................6

11

5.    *Rimini Files* Rimini II *to Adjudicate the Legality of Process 2.0* ...........7

12

B.    The Proceedings in *Rimini I* ...............................................................8

13

1.    *The Jury Finds Process 1.0 Constituted Innocent Infringement* ............8

14

2.    *The Ninth Circuit Narrowly Affirms the Liability Judgment* .................8

15

3.    *The Court Enjoins Only Those Practices Previously Adjudicated as Infringing*...............................................................8

16

17

4.    *The Ninth Circuit Narrowly Affirms the Injunction* ...............................9

C.    The Proceedings in *Rimini II* .............................................................10

18

19

1.    *Oracle Advances New Theories of Infringement Against Process 2.0* ...............................................................................10

20

2.    *The Challenges to Process 2.0 Are Fully Briefed on Summary Judgment* ..............................................................................11

21

D.    Contempt-Related Proceedings in *Rimini I*........................................12

22

23

1.    *Oracle Engages in Wide-Ranging Discovery* .....................................12

2.    *Oracle Reveals Its Contention that Unadjudicated Aspects of Process 2.0 Violate the Injunction* ........................................12

24

25

III. LEGAL STANDARD............................................................................................13

26

27

28

1

## TABLE OF CONTENTS

2

Page

IV. ARGUMENT ................................................................................................14

    A.    This Court and Oracle Are Bound by the Orders Separating *Rimini I* from *Rimini II* ...........................................................................14

        1.    *The Law of the Case Requires this Court to Adhere to Its Separation Orders* ................................................................14

        2.    *Oracle Is Estopped from Attempting to Evade the Separation Orders* .................................................................16

    B.    Process 2.0 Cannot Be Adjudicated for the First Time in a Summary Contempt Proceeding .................................................19

V. CONCLUSION ...........................................................................................24

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Abbott Labs. v. TorPharm, Inc.*,
   503 F.3d 1372 (Fed. Cir. 2007)................................................................21, 22, 23

5

6

*Arbek Mfg., Inc. v. Moazzam*,
   55 F.3d 1567 (Fed. Cir. 1995).........................................................................22, 23

7

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999).................................................................................21

8

9

*Cal. Dep't of Social Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008)..............................................................................13

10

*Chic. Bd. of Educ. v. Substance, Inc.*,
   354 F.3d 624 (7th Cir. 2003).................................................................................21

11

12

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013)..............................................................................20

13

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
   836 F.2d 1320 (Fed. Cir. 1987).............................................................................23

14

15

*Dimick v. Schiedt*,
   293 U.S. 474 (1935)......................................................................................19, 20

16

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
   762 F.3d 829 (9th Cir. 2014).................................................................................21

17

18

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998).............................................................................................19

19

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011)..............................................................................19

20

21

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001)...........................................................................16, 18

22

*Iconix, Inc. v. Tokuda*,
   457 F. Supp. 2d 969 (N.D. Cal. 2006) .................................................................21

23

24

*Ingle v. Circuit City*,
   408 F.3d 592 (9th Cir. 2005).................................................................................16

25

*Leslie Salt Co. v. United States*,
   55 F.3d 1388 (9th Cir. 1995).................................................................................15

26

27

*New Hampshire v. Maine*,
   532 U.S. 742 (2001).......................................................................................17, 18

28

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018)...................................................................2, 3, 8, 22

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   783 F. App'x 707, 710 (9th Cir. 2019) ...............................................................9, 10, 20

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004) ............................................................................................20

*Rebel Oil Co. v. Atl. Richfield Co.*,
   146 F.3d 1088 (9th Cir. 1998) ............................................................................................15

*Richardson v. United States*,
   841 F.2d 993 (9th Cir. 1988) ..............................................................................................15

*Rufo v. Inmates of Suffolk Cty. Jail*,
   502 U.S. 367 (1992) ............................................................................................................14

*Skydive Ariz., Inc. v. Quattrochi*,
   673 F.3d 1105 (9th Cir. 2012) ......................................................................................20, 21

*Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*,
   364 U.S. 642 (1961) ............................................................................................................13

*Tennant v. Peoria & P.U. Ry. Co.*,
   321 U.S. 29 (1944) ..............................................................................................................19

*Teutscher v. Woodson*,
   835 F.3d 936 (9th Cir. 2016) ..............................................................................................20

*TiVo Inc. v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011) ......................................................................................21, 22

*United States v. Maricopa Cty.*,
   151 F. Supp. 3d 998 (D. Ariz. 2015) ..................................................................................21

*United States v. Swift & Co.*,
   286 U.S. 106 (1932) ............................................................................................................14

*United States v. U.S. Gypsum Co.*,
   340 U.S. 76 (1950) ..............................................................................................................21

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
   784 F.2d 1472 (9th Cir. 1986) ............................................................................................14

**Treatises**

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   *Federal Practice & Procedure* § 4478 (2d ed. Nov. 2019 update).....................................15

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   *Federal Practice & Procedure* § 4478.1 (2d ed. Nov. 2019 update)..................................15

4 Melville B. Nimmer & David Nimmer,
   *Nimmer on Copyright* § 14.06[C][1][a] ............................................................................20

# I. INTRODUCTION

At Oracle's request, this Court long ago drew a bright line between *Rimini I* and *Rimini II*—ruling that the former lawsuit is limited to Rimini's previous support processes, while Rimini's current support processes will be litigated only in the latter lawsuit. Because Oracle has recently revealed its intention to transgress this line of demarcation in the context of anticipated contempt proceedings, Rimini respectfully requests that the Court enforce its earlier orders and judgment keeping the two cases (and the two different support models) separate.

This case, *Rimini I*, concerned Rimini's "Process 1.0," which Rimini ceased using in 2014; the separate case, *Rimini II*, concerns "Process 2.0," which Rimini has used ever since. Certain aspects of Process 1.0 were litigated to judgment in *Rimini I*: Oracle's challenges to Process 1.0 focused on Rimini's (i) *local hosting* of Oracle software on Rimini's systems, and (ii) creation and use of *generic development environments*, not dedicated to any specific client. Neither of those things is present in Process 2.0, which is a *remote*, *client-hosted*, *client-specific* support model where each Rimini client hosts its own separate environments on that client's own systems; where each client's Oracle software is siloed on that client's systems and never intermingled with other clients' Oracle software; and where Rimini separately and remotely accesses each client's environments to provide support to that client. Process 2.0 has never been adjudicated; indeed, multiple summary judgment motions regarding the lawfulness of Process 2.0 are pending in *Rimini II*.

The delineation between *Rimini I* (regarding Process 1.0) and *Rimini II* (regarding Process 2.0) is not an accident. Oracle repeatedly pushed for this separation, and this Court repeatedly ordered it. When Rimini sought to tell the *Rimini I* jury about Process 2.0, and when Rimini sought to consolidate *Rimini I* and *Rimini II*, Oracle fought to keep them separate. This Court agreed with Oracle, ruling that evidence regarding Process 2.0 would be excluded from this case. *See*, *e.g.*, ECF No. 723 at 3. The judgment and ensuing injunction reflect that separation. On remand from the Ninth Circuit, this Court explicitly confirmed that the injunction "enjoin[s] *only* acts that have already been determined to be unlawful, and which have been affirmed on appeal" in *Rimini I*. ECF No. 1164 at 9 (emphasis added).

By this motion, Rimini seeks enforcement of the Court's orders and judgment separating *Rimini I* from *Rimini II*, and to prevent Oracle from attempting to blur or erase the Court-ordered line separating the two proceedings in the context of its forthcoming contempt motion. This motion is both warranted and timely in light of an expert report recently served by Oracle in *Rimini I*, which makes clear that Oracle intends to argue that certain aspects of Process 2.0 violate the *Rimini I* injunction, even though those very aspects have yet to be adjudicated in *Rimini II* and, indeed, are pending before the Court in motions for partial summary judgment in that lawsuit.

To be clear, Rimini is *not* asking the Court by this motion to decide whether or not Rimini is in contempt of the injunction. Oracle's motion for an order to show cause is due on May 27, 2020, and Rimini will respond to that motion in due course. Nor is Rimini seeking a ruling on liability for any aspect of Process 2.0. Those issues are fully briefed in multiple motions for partial summary judgment pending in *Rimini II*. Rather, this motion simply asks the Court to enforce the line between the two cases that the Court, at Oracle's request, drew long ago.

The bases for this motion are twofold: *First*, this Court has already ordered that *Rimini I* is limited to Process 1.0, while everything concerning Process 2.0 will be litigated in *Rimini II*; that ruling constitutes the law of the case, and Oracle, which successfully advocated for this separation earlier in the litigation, is judicially estopped from asking the Court to revisit it now. *Second*, the injunction is, by its own terms and equity practice, limited to the processes adjudicated in *Rimini I* (and those not more than colorably different), and cannot lawfully or constitutionally be extended to reach unadjudicated processes in the context of summary contempt proceedings, which would deprive Rimini of a jury trial and other substantive and procedural rights it is entitled to in *Rimini II*.

## II. BACKGROUND

Rimini provides third-party support for its clients that have licenses to use Oracle software programs. The Ninth Circuit has ruled that such third-party support is consistent with both the Copyright Act and Oracle's licenses, and thus lawful. *See Oracle USA, Inc. v. Rimini*

*Street, Inc. (Rimini I)*, 879 F.3d 948, 952 (9th Cir. 2018) ("Rimini … provided third-party support for Oracle's enterprise software, in lawful competition with Oracle's direct maintenance services").  Thus, the two separate lawsuits—*Rimini I* and *Rimini II*—concern whether the *manner* by which Rimini formerly provided, and currently provides, that support can give rise to copyright liability.  Rimini's old support model (Process 1.0) and its current support model (Process 2.0) present fundamentally different issues in this respect.

**A.**      **Two Different Processes, Two Separate Lawsuits**

>  **1.**      ***Oracle Initiates* Rimini I *to Adjudicate the Legality of Process 1.0***

In 2010, Oracle filed this lawsuit (*Rimini I*) alleging that certain aspects of the *manner* in which Rimini provided support to its clients constituted copyright infringement.  Oracle primarily challenged two specific aspects of Process 1.0 as exceeding the scope of the licenses: (1) Rimini's *local hosting* of its clients' Oracle software environments on Rimini's systems, and (2) Rimini's use of *generic development environments* on Rimini's systems that were not tied to any particular client to develop software updates for multiple clients, including cloning one client's environment for another, which Oracle coined "cross-use."  *Rimini I*, 879 F.3d at 956, 959.  These two aspects of Process 1.0 involved the intermingling, reproduction, and distribution of Oracle software between and amongst clients.[1]

>  **2.**      ***The Court Construes the Licenses on Summary Judgment***

On summary judgment, the Court first addressed Rimini's support processes for PeopleSoft.  The relevant conduct was largely undisputed.  *See* ECF No. 474 at 5 (the Court noting that Rimini did not dispute "that it copied the identified copyrighted software programs to create the allegedly infringing [generic] development environments on its company systems [*i.e.*, local hosting] so that it could develop and test software updates for its customers").  Rather, the parties disputed whether that conduct was permitted by the terms of the relevant software licenses that each customer already held.  *Id.* (noting that Rimini contended its processes were

---

[1]  It was not disputed that all clients had valid licenses from Oracle for the software in question.  *See Rimini I*, 879 F.3d at 952 n.1 ("All of Rimini's customers pertinent to this dispute were licensees of Oracle's software").  Thus, consistent with the jury's finding of *innocent* infringement, Rimini reasonably believed that such intermingling did not constitute copyright infringement.

RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND JUDGMENT
CASE NO. 2:10-CV-00106-LRH-VCF

"authorized ... by the express language of Oracle's customer software licensing agreements").

The Court rejected Oracle's argument that Rimini failed to identify a relevant license because Rimini did not pair the *specific* software installation media with the *specific* license associated with it. *Id.* at 9 ("Oracle's initial argument is premised on the flawed assumption that the rights to use and install the licensed software are restricted and tied solely to the specific software installation media delivered by Oracle"). However, the Court concluded "that Rimini's copying of the copyrighted software on *its company systems* is … outside the scope" of the licenses because Rimini's company systems were not the licensees' "facilities." *Id.* at 12 (emphasis added); *see also id.* ("the license grants the [licensee] a 'license to use the licensed Software, solely for [the licensee's] *internal data processing operations at its facilities* in the [United States]'") (emphasis in original). Oracle also argued that Rimini created updates "using one or two environments for each major PeopleTools release" (*i.e.*, a generic environment) and "copied the resulting project(s) or data change(s) for delivery … to every customer," ECF No. 246 at 12, and the Court concluded that this use of a generic environment to create and then copy updates to all licensees exceeded the license provision that each client's software be used solely for that client's "internal data processing operations," ECF No. 474 at 12–13.

With respect to J.D. Edwards ("JDE") and Siebel, the Court did *not* hold that local hosting was generally prohibited. But, similar to PeopleSoft, the Court did determine that the JDE and Siebel licenses did not authorize the copying of one customer's software environment "to support other customers," *i.e.*, the use of generic environments. ECF No. 880 at 28, 29.

### 3.      *Rimini Changes from Process 1.0 to Process 2.0*

To conform to the Court's *Rimini I* summary judgment rulings interpreting the licenses, Rimini undertook a massive effort to revise its support processes, and completed the transition from Process 1.0 to Process 2.0 by the end of July 2014. ECF No. 905 at 4–5; ECF No. 1130 at 3–4; *see also* ECF No. 1049 at 6, 8. Process 2.0 works fundamentally differently than Process 1.0.

Under Process 1.0, Rimini locally hosted its clients' Oracle software environments as well as generic development environments to develop and test updates containing Oracle

software that Rimini would then copy and send to multiple clients. Declaration of Eric D. Vandevelde in Support of Rimini's Motion to Enforce the Court's Orders and Judgment Separating *Rimini I* from *Rimini II* ("Vandevelde Decl."), Ex. B (Mar. 13, 2020 Astrachan Contempt Rebuttal Report) ¶ 19. Under Process 2.0, Rimini no longer hosts *any* Oracle software environments. *Id.* ¶¶ 19, 27. Instead, each client (not Rimini) hosts its own separate, licensed Oracle software environments (typically, development and production environments); each client's environments are located on that client's own computer systems, which that client controls; and Rimini remotely accesses the client's environments, using that client's Oracle software to support that particular client. *See*, *e.g.*, *id.*; ECF No. 905-1 (Benge Decl.) ¶¶ 3, 5 ("Rimini's current support processes for PeopleSoft do not rely on the use of any 'local' PeopleSoft environments or documentation on Rimini's computer systems"; instead, they "involve[] remotely accessing a Rimini client's PeopleSoft environments that Rimini uses to service that client").[2]

Likewise, under Process 2.0, Rimini no longer uses *any* generic environments to develop and test updates. In fact, under Process 2.0, Rimini does not allow *any* copying of Oracle software to or from Rimini, or between and among any Rimini clients. Vandevelde Decl., Ex. B (Mar. 13, 2020 Astrachan Contempt Rebuttal Report) ¶¶ 19, 27. Instead, each Rimini client now has its own unique, siloed development environment, on that client's own systems, which Rimini remotely accesses to develop and test updates using only that client's Oracle software. ECF No. 905-1 (Benge Decl.) ¶¶ 6, 10 ("Rimini's current process involves remotely accessing the clients' PeopleSoft software" and "does not reproduce PeopleSoft software or documentation licensed to one client from that client to any other client").

The graphic below demonstrates these critical differences between Process 1.0 and Process 2.0—namely, the changes (i) from Rimini/local-hosted to remote/client-hosted

---

[2]  Rimini submitted a series of declarations describing the fundamental changes that it made in transitioning from Process 1.0 to Process 2.0. *See* ECF Nos. 905-1 to 905-5. Oracle has never objected or responded to these declarations, which are uncontroverted on the *Rimini I* record. *See* ECF No. 1049 at 6, 8 (recognizing Rimini's representations that it "no longer engages in the conduct adjudged by the court and jury to infringe" and that it "has changed its business model and support services away from the infringing model").

Gibson, Dunn &
Crutcher LLP

development environments (*i.e.*, under Process 2.0, the blue development environments now exist on each client's systems, *not* Rimini's), and (ii) from generic environments to client-specific environments (*i.e.*, the replacement in Process 2.0 of the blue generic environment with separate blue development environments for each client).



Vandevelde Decl., Ex. B (Mar. 13, 2020 Astrachan Contempt Rebuttal Report) ¶ 20.

### 4.    *The Court, at Oracle's Insistence, Excludes Process 2.0 from* **Rimini I**

Process 2.0 was never litigated, let alone adjudicated, in *Rimini I*.  To be sure, Rimini *sought* to permit discovery into Process 2.0 in *Rimini I* and also sought to have Process 2.0 tried to the jury in *Rimini I*, in part so that Rimini could show the jury that it had changed its support model to comply with the Court's orders, that it was no longer infringing (even under Oracle's view of the license agreements), and that any unlawful aspects of its former processes were unintentional and done in good faith.  *See* ECF No. 488 at 12–20.  But Oracle vigorously opposed those attempts, insisting that *Rimini I* be limited to Process 1.0, arguing that all evidence or argument pertaining to Process 2.0 "is irrelevant."  *Id.* at 8.  This Court agreed with Oracle:

- In September 2014, Oracle urged the Court to "limit the [*Rimini I*] trial to Rimini's old support model," stating that "Rimini's new support process is not relevant to liability or damages in a trial on Rimini's 'old' infringing support model," and that "any damages related to [Process 2.0] would be sought in a separate lawsuit."  *Id.*

Gibson, Dunn & Crutcher LLP

- At an October 2014 hearing, Oracle told the Court that Rimini's "new process isn't relevant" to *Rimini I*, that all "issues" concerning Rimini's new support model should be "put … in another case," and that the trial should "be limited to" Process 1.0. ECF No. 508 at 7:17, 8:16–20.

- Magistrate Judge Leen agreed with Oracle and denied Rimini's request to reopen discovery regarding Process 2.0. ECF No. 515 at 2–3. Judge Leen also stated that there was no basis to use the *Rimini I* proceeding to address "what Rimini is doing now" with Process 2.0. ECF No. 508 at 25:16–18.

### 5. *Rimini Files* Rimini II *to Adjudicate the Legality of Process 2.0*

As a result of these rulings, Rimini filed a separate lawsuit (*Rimini II*) in October 2014, seeking a judicial declaration that Process 2.0 does not exceed the scope of Oracle's licenses. *Rimini Street, Inc. v. Oracle Int'l Corp. (Rimini II)*, No. 14-1699-LRH-DJA (D. Nev. filed Oct. 15, 2014), ECF No. 1. Rimini attempted to consolidate the two cases, but Oracle again opposed those efforts, continuing to argue that the two cases must be kept separate because they involve different processes and conduct. Again, this Court agreed with Oracle:

- Oracle argued that consolidation should be denied because "[t]he Court has already established a clear dividing line between the two cases" and "[c]onsolidation would … require consideration of Rimini's new 'remote' support process" that "Judge Leen ruled … is not part of *Rimini I*." ECF No. 593 at 11, 13 & n.6; *see also id.* at 11–12 (urging the Court to enforce the "clear dividing line" that Judge Leen established between *Rimini I* and *Rimini II*). The Court denied consolidation. ECF No. 669 at 5.

- Oracle filed a motion *in limine* to exclude any evidence of Process 2.0 at the *Rimini I* trial. ECF No. 646. Oracle argued that there was a "clear division between" *Rimini I* and *Rimini II*, and that Judge Leen's order denying discovery on Process 2.0 required exclusion of evidence about Process 2.0. *Id.* at 4–6. In fact, Oracle insisted that Process 2.0 was "irrelevant" to *Rimini I*, stating that "[t]he legality of the new 2014 model will be the subject of Rimini's new lawsuit" and "is not at issue in this trial." *Id.* at 5.

- This Court excluded all evidence of Rimini's revised Process 2.0 from *Rimini I*, ruling

Gibson, Dunn & Crutcher LLP

1   that "Rimini's new service support model is not relevant to any claim or issue in

2   [*Rimini I*]" and that "all claims, issues, and evidence related to the new support model

3   [Process 2.0] are being addressed *solely* in [*Rimini II*]."  ECF No. 723 at 3 (emphasis

4   added).

5   In short, this Court drew a bright line between Process 1.0 (*Rimini I*) and Process 2.0 (*Rimini II*),

6   which the parties and the Court followed through the entry of final judgment in *Rimini I* and

7   through the issuance of the injunction.

8   **B.**   **The Proceedings in *Rimini I***

9       *1.*   ***The Jury Finds Process 1.0 Constituted Innocent Infringement***

10       *Rimini I* went to trial in September 2015.  The jury found that Process 1.0—and

11   specifically, Rimini's local hosting of client environments and use of generic development

12   environments (including the "cloning" of one client's environment to give to others), so-called

13   "cross-use"—had "innocent[ly]" infringed Oracle's copyrights.  ECF No. 896 at 6.  The Court

14   entered judgment on the verdict.  ECF No. 1050.  After trial, Oracle moved for a permanent

15   "injunction that codifies" the basis for copyright liability in *Rimini I*.  ECF No. 1040 at 143:16.

16   The Court entered Oracle's proposed injunction.  ECF No. 1065.

17       *2.*   ***The Ninth Circuit Narrowly Affirms the Liability Judgment***

18       On appeal, the Ninth Circuit affirmed the finding of innocent copyright infringement.

19   *Rimini I*, 879 F.3d at 953–65.  As to PeopleSoft, the Ninth Circuit upheld liability only "on the

20   narrow ground of 'local hosting'" because the Rimini "servers where the copying took place

21   were 'outside the control of the [customers].'"  *Id.* at 959–60 & n.6.  As to JDE and Siebel, the

22   panel upheld liability on a limited theory of "cross-use" premised on Rimini's use of generic

23   (*i.e.*, non-client specific) environments to support multiple clients.  *See id.* at 957 (holding that

24   the licenses permit copy and use only "in support of [a] particular customer").  In light of the

25   Ninth Circuit's reversal on Oracle's state-law claims, however, the panel "vacate[d] the

26   copyright injunction and remand[ed] for reconsideration" in view of its rulings.  *Id.* at 964.

27       *3.*   ***The Court Enjoins Only Those Practices Previously Adjudicated as Infringing***

28       On remand, Oracle asked this Court to enjoin Rimini from engaging in the conduct

previously adjudicated as infringing.  ECF No. 1117.  Oracle continued to argue for a clear delineation between *Rimini I* and *Rimini II*, and this Court again enforced that bright line:

- In requesting the injunction, Oracle assured the Court that "Oracle is not asking now for a ruling on the merits of the issues in dispute in *Rimini II*" but rather is asking "for a permanent injunction restraining Rimini from continuing to *commit the infringement that this Court and the jury have already determined to constitute copyright infringement*" in *Rimini I*.  *Id.* at 20 n.3 (emphasis added).

- After Rimini warned that the injunction threatened to sweep in issues from *Rimini II* (*see generally* ECF Nos. 1130, 1159), Oracle insisted that the injunction was intended to "just track[] the scope of the infringing conduct" adjudicated in *Rimini I* (ECF No. 1158 at 30:16–17).

- In Oracle's renewed motion for a permanent injunction, Oracle told this Court that under its proposed permanent injunction, "Rimini *only* would be barred from doing things that it purportedly is no longer doing," and that the injunction was narrowly "tailored" to only "prevent future occurrences of the conduct *adjudged to constitute copyright infringement in this case* [*i.e.*, *Rimini I*]."  ECF No. 1117 at 18, 23 (emphases added).

- And in granting Oracle's renewed motion, this Court stated that Oracle was "seek[ing] to enjoin *only acts that have already been determined to be unlawful*, and which have been affirmed on appeal."  ECF No. 1164 at 9 (emphasis added).  The Court then entered an injunction substantially identical to the previous one.  ECF No. 1166.

### 4.    *The Ninth Circuit Narrowly Affirms the Injunction*

On appeal again, the Ninth Circuit found the injunction to be overbroad "in two respects."  *Oracle USA, Inc. v. Rimini Street, Inc.*, 783 F. App'x 707, 710 (9th Cir. 2019).  First, the injunction was overbroad because it "restrict[ed] 'local hosting' for the J.D. Edwards and Siebel licenses," even though the "J.D. Edwards and Siebel licenses do not contain such a limitation."  *Id.*  Second, it prohibited "access[ing] [JDE] source code," as "accessing" is not an infringing activity under the Copyright Act.  *Id.* at 711.

The panel also recognized that *Rimini I* and *Rimini II* are separate proceedings and that

Gibson, Dunn & Crutcher LLP

the processes at issue in *Rimini II* (Process 2.0) were not at issue in *Rimini I*.  When Process 2.0 came up at oral argument, Judge Graber pointedly stated that those processes are "not in front of us" in this case.  Oral Argument at 2:10–25, *Rimini I*, No. 18-16554 (9th Cir. July 12, 2019), https://tinyurl.com/sbyw42x.  And in its decision, the panel held that the injunction "is not impermissibly vague" because it tracks license language that Rimini had argued permitted the local hosting and use of generic environments in Process 1.0.  783 F. App'x at 711.

**C.     The Proceedings in *Rimini II***

> ***1.     Oracle Advances New Theories of Infringement Against Process 2.0***

In *Rimini II*, Rimini seeks, among other relief, a judicial declaration that Process 2.0 does not constitute copyright infringement because it is permitted under its clients' Oracle software licenses, while Oracle counterclaims that Process 2.0 exceeds the scope of those licenses.  Oracle has advanced entirely *new* theories of infringement, three examples of which are that clients' cloud-hosted environments violate their licenses; that Rimini should be prohibited from reusing its own know-how, experience, and Rimini-created work product; and that Rimini-created development tools violate Oracle's software licenses.  Oracle advanced none of those theories in *Rimini I* (nor could it have, since they were not implicated by Process 1.0).

Cloud hosting is one example of a liability theory that Oracle has raised in *Rimini II* that was not litigated in *Rimini I*.  In *Rimini II*, Oracle contends for the first time that some of its licensees are prohibited from hosting their PeopleSoft software on cloud-based servers, and that Rimini vicariously violates those clients' licenses when it supports clients that do.  Nowhere in this Court's summary judgment orders in *Rimini I*, or during the *Rimini I* trial, did the legality of cloud hosting arise.  Indeed, Oracle's counsel has expressly conceded that cloud hosting "wasn't at issue in *Rimini I*."  ECF No. 1040 at 143:14–20.  As discussed earlier, *Rimini I* concerned *Rimini's* local hosting of its clients' software environments under Process 1.0 (which ceased in 2014), not whether clients were permitted to host their environments in the cloud.

Oracle's challenge to the reuse of Rimini's engineers' know-how and work product is another example of Oracle accusing conduct in *Rimini II* that was not adjudicated in this case.

While Oracle now labels the reuse of knowledge and Rimini-created work product as "cross-use" in *Rimini II*, it was not the "cross-use" that was adjudicated in *Rimini I*—the same term is now being used by Oracle to accuse entirely different conduct.  In *Rimini I*, in this Court's orders and at trial, the term "cross-use" referred to the cloning of one client's environment to give to another client, and the use of generic development environments to create updates for, and copying and sending those update files (containing Oracle code) to, multiple clients.  Now that those processes long ago ceased with the implementation of Process 2.0, Oracle contends in *Rimini II* that it is unlawful "cross-use" if Rimini engineers simply learn how to solve a problem for Client A and then reuse that knowledge to solve the same problem—often more quickly and efficiently—for Clients B, C, and D, even if each client's software remains separate and siloed on that client's systems, and even if no client's Oracle files are sent to or intermingled with those of other clients.  Oracle did not advance such a theory in *Rimini I*, and certainly neither this Court nor the jury addressed it or agreed with it.  *See, e.g.*, ECF No. 246 at 12 (Oracle arguing that Rimini engaged in cross-use by "using one or two [generic] environments" and "cop[ying] the resulting project(s) or data change(s) for delivery … to every customer").

Oracle's challenge to Rimini's Automated Framework ("AFW") tools is a third example of a theory advanced in *Rimini II* but not adjudicated in this case.  Rimini developed AFW tools for use in Process 2.0 and received a patent on those tools in December 2019.  AFW tools allow Rimini engineers to remotely connect to and execute certain commands on clients' systems, including, for example, to efficiently propagate *Rimini-created* work product to multiple clients.  *Rimini II*, No. 14-CV-1699-LRH-DJA (Nov. 16, 2018), ECF No. 1084 at 7.  In *Rimini II*, Oracle argues—for the first time—that it exceeds the scope of the licenses for Rimini to deliver its own work product in this manner.  These tools were never addressed or adjudicated by the Court or jury in *Rimini I*.

### 2.    The Challenges to Process 2.0 Are Fully Briefed on Summary Judgment

The three examples summarized above—cloud hosting, reuse of Rimini's know-how and work product, and AFW tools—are all the subject of pending partial summary judgment motions in *Rimini II*.  *See Rimini II*, No. 14-1699-LRH-DJA, ECF Nos. 898 (Oracle's motion

for summary judgment on "Cross-Use and Derivative Works"), 917 (Rimini's motion for summary judgment on "Undisputed Processes" in Process 2.0), 930 (Oracle's motion for summary judgment on "Migration and Windstream [Cloud] Hosting"). These are a subset of the seven summary judgment motions, supported and opposed by multiple expert reports and voluminous supporting evidence, pending in *Rimini II*. *See Rimini II*, No. 14-1699-LRH-DJA, ECF Nos. 881–1079, 1124 –206, 1208, 1210–22.

**D.      Contempt-Related Proceedings in *Rimini I***

       ***1.      Oracle Engages in Wide-Ranging Discovery***

       In February 2019, without providing any specifics, Oracle accused Rimini of violating the injunction and sought discovery into Rimini's compliance. ECF No. 1199. Magistrate Judge Ferenbach granted Oracle's motion to permit discovery. ECF No. 1215. Fact discovery was wide-ranging, with Rimini producing nearly a million documents and gigabytes of technical data, providing 24/7 access to multiple Rimini systems, and providing Rule 30(b)(6) deposition testimony on over 40 topics, including Rimini's current processes (*i.e.*, Process 2.0). Following the close of fact discovery, Oracle served the report of its technical expert, Barbara Frederiksen-Cross, on January 31, 2020. *See* Vandevelde Decl., Ex. A (Jan. 31, 2020 Frederiksen-Cross Contempt Report). Ms. Frederiksen-Cross is also Oracle's primary technical expert in *Rimini II*.

       ***2.      Oracle Reveals Its Contention that Unadjudicated Aspects of Process 2.0 Violate the Injunction***

       Ms. Frederiksen-Cross's "contempt" report contends that three features of Process 2.0—which were never adjudicated in *Rimini I*—violate the *Rimini I* injunction:

- Ms. Frederiksen-Cross opines that **cloud hosting** violates the *Rimini I* injunction, expressly adopting her analysis of Process 2.0 from her *Rimini II* report. Vandevelde Decl., Ex. A (Jan. 31, 2020 Frederiksen-Cross Contempt Report) ¶ 38 ("As explained in my *Rimini II* report, it is my opinion that PeopleSoft software contained within virtual machines that are hosted on Windstream's cloud servers are not located on any licensee's computer systems, and thus Rimini's continued [support] of PeopleSoft

Gibson, Dunn &
Crutcher LLP

software hosted on Windstream's cloud servers violates the Injunction"); *see also id.* ("Rimini consistently violates the Injunction by reproducing and creating derivative works based upon PeopleSoft software on servers and virtual machines hosted by Windstream"); *id.* ¶ 172 ("My report submitted in *Rimini II* explained that cloud environments hosted on Windstream violate the facilities restriction contained within certain customer agreements and are therefore unlicensed").

- Ms. Frederiksen-Cross opines that the **reuse of engineer know-how and *Rimini-created* work product** violates the injunction, again adopting her analysis of Process 2.0 from her *Rimini II* report.  *See*, *e.g.*, *id.* ¶¶ 40–45; *id.* ¶ 272 (asserting that Rimini commits copyright infringement when it "leverag[es] its work for prototype customers to reduce the labor and shorten the time for testing updates for other customers"); *see also id.* ¶ 208 (stating that "cross-use" includes "Rimini's drastic reduction (or even omission altogether) of testing of an update in environments associated with some recipient customers in light of successful testing in other environments").

- Ms. Frederiksen-Cross also opines that use of **AFW tools** violates the injunction, adopting her opinion from *Rimini II*.  *See*, *e.g.*, *id.* ¶¶ 108, 209, 230.

In total, Ms. Frederiksen-Cross's "contempt" report adopts or relies on her opinions from *Rimini II* at least 34 times.  *See*, *e.g.*, *id.* ¶¶ 30, 38, 83–85, 106, 108–09, 112, 161, 166, 171–73, 208–10, 217, 219, 221, 231, 267–68, 272–73, 292–94, 301–02, 307, 311, 323, 384.  Oracle has thus revealed its intention to argue that these unadjudicated aspects of Process 2.0 violate the injunction.

## III.  LEGAL STANDARD

A district court has the "inherent power to enforce its judgments."  *Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008).  Because an "injunction often requires continuing supervision by the issuing court," a court has the inherent discretion to enforce an injunction to ensure that "'what it has been doing has [not] been turned through changing circumstances into an instrument of wrong.'"  *Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114–

15 (1932)); *see also Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 380 (1992) (recognizing "need for flexibility" in administering equitable relief).  Thus, a district court "retains the inherent equitable power to … enforce a[n] … injunction." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1474–75 (9th Cir. 1986).

## IV.  ARGUMENT

For two reasons, this Court should enforce its previous orders, incorporated in the judgment and the injunction, and ensure that *Rimini I*—including any contempt proceedings—remains limited to Process 1.0, the specific conduct actually litigated and adjudicated in *Rimini I*, while providing that any issues related to Process 2.0 can and should be litigated in *Rimini II*.  *First*, Oracle previously persuaded this Court to limit *Rimini I* to Process 1.0; that ruling is the law of the case, and Oracle is judicially estopped from contending otherwise. *Second*, an injunction may lawfully and constitutionally prohibit only conduct that was actually adjudicated to be infringing (*i.e.*, Process 1.0), and may not be enforced against unadjudicated conduct (*i.e.*, Process 2.0) unless Oracle can prove it is not more than colorably different from the adjudicated conduct.

## A.   This Court and Oracle Are Bound by the Orders Separating *Rimini I* from *Rimini II*

Oracle previously urged this Court to draw a "clear division" between Rimini's Process 1.0, which was adjudicated in *Rimini I*, and Process 2.0, which would be (and is now being) adjudicated in *Rimini II*.  ECF No. 646 at 4.  This Court agreed and adopted that division in a series of orders that merged into the final judgment.  The law of the case doctrine bars this Court from reconsidering this prior ruling, and Oracle is judicially estopped from taking the opposite position now.

### 1.    The Law of the Case Requires this Court to Adhere to Its Separation Orders

The law of the case doctrine requires that this Court follow its prior orders separating *Rimini I* from *Rimini II*, and that Rimini's revised processes be reserved for the latter.  Under this doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court … in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.

1988). This doctrine applies to issues that were "decided explicitly or by necessary implication in the previous disposition" (*Rebel Oil Co. v. Atl. Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998) (internal quotation marks omitted)), and even to "summarily treated issues" (*Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995) (internal quotation marks omitted)). It applies with even greater force where, as here, final judgment has been entered and affirmed on appeal, and only post-judgment proceedings remain before the Court. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478.1 (2d ed. Nov. 2019 update) ("reconsideration often is better deserved, and more important, while an action wends its way *toward the first final judgment* in the trial court," and not afterwards) (emphasis added).

The Court has already addressed, on multiple occasions, whether issues relating to Process 2.0 are properly within the scope of *Rimini I*. And each time, the Court ruled that they are not. For example, the Court denied Rimini's request to reopen discovery for evidence regarding Process 2.0. *See* ECF No. 508 at 25:12–13; ECF No. 515 at 2–3. In excluding evidence and argument regarding Process 2.0 from the *Rimini I* trial, the Court further held that Process 2.0 "is not relevant to any claim or issue in this action," ruling that "all claims, issues, and evidence related to the new support model are being addressed *solely* in that separate action [*i.e.*, *Rimini II*]." ECF No. 723 at 3 (emphasis added). And in entering the permanent injunction, this Court held that the injunction "seeks to enjoin only acts that have already been determined to be unlawful, and which have been affirmed on appeal." ECF No. 1164 at 9. The import of these rulings could not be clearer: Process 2.0 has no place in this proceeding.

The law of the case doctrine applies with full force during the contempt stage of the case. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 n.15 (2d ed. Nov. 2019 update) ("An earlier decision construing the judgment should be honored as the law of the case in later proceedings to enforce the same judgment"). A departure from orders entered earlier in the litigation may be warranted *only* if "the first decision was clearly erroneous; an intervening change in the law occurred; the evidence [has become] substantially different; other changed circumstances exist; or a manifest

injustice would otherwise result." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (numbering omitted). None of these factors is present here; accordingly, the Court has no discretion to revisit the existing separation orders. Indeed, the subsequent development of an extensive evidentiary record about Process 2.0 in *Rimini II* confirms that Process 2.0 is most appropriately litigated in that case. In fact, *not* adhering to the law of the case would result in a manifest injustice, given that the Court and the parties have already relied on the separation of Process 2.0 from *Rimini I* in shaping the scope of discovery, trial, and injunction in *Rimini I*.

### 2.   *Oracle Is Estopped from Attempting to Evade the Separation Orders*

Not only does the law of the case doctrine preclude Oracle's attempt to apply the *Rimini I* injunction to Process 2.0, but Oracle is also estopped from contradicting its previous position that *Rimini I* and *Rimini II* must be kept separate and that Rimini's revised processes (Process 2.0) must be litigated in *Rimini II*. Oracle must live with the consequences of its strategic decision, successfully implemented long ago in the *Rimini I* litigation, to keep Process 1.0 and Process 2.0 in separate lawsuits.

An injunction is an exercise of the Court's equitable power, and its enforcement must also reflect principles of fairness and equity. Having obtained the injunction based on the proceedings in *Rimini I*, including its repeated representations that the scope of the enjoined conduct was limited to conduct actually adjudicated, Oracle cannot now backtrack to enforce the injunction against processes that it expressly and successfully fought to exclude from the *Rimini I* proceedings. Allowing Oracle to reverse course threatens the orderly administration of justice, and the judicial estoppel doctrine thus serves as an independent basis to enforce this Court's judgment that Oracle cannot bring in Process 2.0 for contempt purposes. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel furthers "the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the court") (internal quotation marks omitted).

Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v.*

Gibson, Dunn &
Crutcher LLP

1   *Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted).  Three factors "inform the

2   decision whether to apply the doctrine in a particular case."  *Id.* at 750.  "First, a party's later

3   position must be clearly inconsistent with its earlier position."  *Id.* (internal quotation marks

4   omitted).  "Second, courts regularly inquire whether the party has succeeded in persuading a

5   court to accept that party's earlier position, so that judicial acceptance of an inconsistent

6   position in a later proceeding would create the perception that [the] court was misled."  *Id.*

7   (internal quotation marks omitted).  Third, courts consider "whether the party seeking to assert

8   an inconsistent position would derive an unfair advantage or impose an unfair detriment on the

9   opposing party if not estopped."  *Id.* at 751.  All three factors weigh in favor of estoppel here.

10         *First*, Oracle's current position is "clearly inconsistent with its earlier position."  *Id.* at

11  750 (internal quotation marks omitted).  After Rimini revised its support processes to conform

12  to this Court's 2014 summary judgment rulings, Rimini sought to have Process 2.0 tried to the

13  jury in *Rimini I*.  ECF No. 488 at 12–20.  Oracle steadfastly opposed Rimini's request and drew

14  a hard line between Rimini's old and revised processes, insisting that trial in *Rimini I* should

15  cover only "Rimini's old support model" (*id.* at 8), that all remedies relating to Process 2.0

16  "would be sought in a separate lawsuit" (*id.*), and that "[t]he legality of the new 2014 model

17  will be the subject of Rimini's new lawsuit" (ECF No. 646 at 5).  And in its request for a

18  permanent injunction, Oracle maintained that its proposed injunction "just track[s] the scope of

19  the infringing conduct" adjudicated in *Rimini I*.  ECF No. 1158 at 30:16–17.  Indeed, Oracle

20  repeatedly assured the Court that it was not seeking "a ruling on the merits of the issues in

21  dispute in *Rimini II*" but instead was merely seeking to "restrain[] Rimini from continuing to

22  commit the infringement that this Court and the jury have already determined to constitute

23  copyright infringement" in *Rimini I*.  ECF No. 1117 at 20 n.3.

24         But Oracle has since reversed course.  It now proclaims there is no clear dividing line

25  between the two processes, and that the injunction enjoins Rimini from engaging in the new

26  processes that are the subject of *Rimini II*, even though no court or jury has ever adjudicated

27  those new processes.  *See* ECF No. 1222 at 1–2; ECF No. 1231 at 6–7; *see also*, *e.g.*,

28  Vandevelde Decl., Ex. A (Jan. 31, 2020 Frederiksen-Cross Contempt Report) ¶¶ 38–45, 77,

166–74.  This position contradicts Oracle's previous position that there must be a "clear division between" *Rimini I* and *Rimini II* because Process 2.0 is "irrelevant" to *Rimini I*.  ECF No. 646 at 5.

*Second*, Oracle "succeeded in persuading" this Court "to accept [its] earlier position." *New Hampshire*, 532 U.S. at 750.  Oracle insisted that the Court limit *Rimini I* to Rimini's old support processes and reserve for another case all claims and issues arising out of Rimini's Process 2.0.  And the Court did just that, excluding from the *Rimini I* trial all evidence and argument regarding Rimini's revised processes, and concluding that "all claims, issues, and evidence related to the new support model are being addressed solely in [*Rimini II*]."  ECF No. 723 at 3; ECF No. 508 at 25:12–13; ECF No. 515 at 2–3; ECF No. 669 at 5.  The Court also relied on Oracle's view about the scope of the injunction, and expressly granted the injunction "*because* Oracle seeks to enjoin *only* acts that have *already* been determined to be unlawful, and which have been affirmed on appeal."  ECF No. 1164 at 9 (emphases added).

*Third*, estopping Oracle from enforcing the injunction against Rimini's new processes would preserve "the orderly administration of justice" (*Hamilton*, 270 F.3d at 782 (internal quotation marks omitted)), and prevent Oracle from "deriv[ing] an unfair advantage" (*New Hampshire*, 532 U.S. at 751).  Since 2014, the parties have expended significant resources separately litigating Process 2.0, and *Rimini II* has already proceeded through more than three years of discovery—including the production of nearly 10 million documents (40 million pages) and 4.2 terabytes of data, more than 100 depositions, and opinions by more than 15 experts.  Currently, seven motions for partial summary judgment are pending in *Rimini II*, including several motions that squarely address the exact same Process 2.0 practices that Oracle contends violate the *Rimini I* injunction.  *See Rimini II*, No. 14-1699-LRH-DJA, ECF Nos. 881, 888, 898 ("Cross-Use and Derivative Works"), 910, 916, 917 ("Undisputed Processes" in Process 2.0), 930 ("Migration and Windstream [Cloud] Hosting").  Permitting Oracle to nevertheless use the *Rimini I* injunction to hold Rimini in contempt for engaging in the support processes that are the subject of those pending motions would waste significant party and judicial resources and disrupt the orderly administration of these cases that have existed for nearly six years.

Oracle is estopped from now seeking to apply the *Rimini I* injunction against Rimini's new support processes that are the subject of *Rimini II*—processes that Oracle had fought to expressly keep *out* as "irrelevant" to *Rimini I*.  ECF No. 646 at 5.  The Court should enforce its judgment that the injunction "enjoin[s] only acts that have already been determined to be unlawful, and which have been affirmed on appeal."  ECF No. 1164 at 9.

**B.**     **Process 2.0 Cannot Be Adjudicated for the First Time in a Summary Contempt Proceeding**

To permit Oracle to seek contempt sanctions based on unadjudicated aspects of Process 2.0—which are fundamentally different from Process 1.0, and the subject of ongoing litigation in *Rimini II*—would also deprive Rimini of its constitutional right to a full and fair opportunity to litigate the propriety of its new processes, and would undermine fundamental equitable and due process principles.  Rimini is entitled to plenary adjudication of Process 2.0, including summary judgment on a full record and, if necessary, a jury trial—all of which will take place in *Rimini II*.  A summary contempt proceeding is no substitute.

*First*, enjoining Process 2.0 under the guise of enforcing the injunction would violate Rimini's Seventh Amendment right to have a jury determine the facts regarding the alleged infringement in Process 2.0.  It is well established that "[t]he Seventh Amendment provides a right to a jury trial both as to liability and as to the amount of actual copyright damages." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) ("[T]he Seventh Amendment provides a right to a jury trial on all issues … under § 504(c) of the Copyright Act")).  Thus, "[i]t is the jury, not the court, which is the fact-finding body" charged with determining infringement liability in the first instance.  *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944).  As the Supreme Court has long recognized, "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

Here, to the extent issues are not resolved on summary judgment, the *Rimini II*

Gibson, Dunn &
Crutcher LLP

litigation—which will squarely adjudicate the lawfulness of Process 2.0—will be tried by a jury, as is Rimini's right under the Seventh Amendment.[3]  Using the *Rimini I* injunction to hold Rimini in contempt for engaging in Process 2.0 would effectively give Oracle a remedy against Process 2.0 *before* Rimini has exercised its "entitle[ment] to have those claims tried to a jury." *Teutscher v. Woodson*, 835 F.3d 936, 943 (9th Cir. 2016).   This Court has already acknowledged that the injunction covers only "acts that have already been determined to be unlawful, and which have been affirmed on appeal." ECF No. 1164 at 9.  And the Ninth Circuit agreed that the injunction was "overbroad" in several respects and narrowed the injunction to ensure that it prohibited only those acts that were "the basis for" the infringement finding, and that it was "'no more burdensome to [Rimini] than necessary.'" 783 F. App'x at 710–11 (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1049 (9th Cir. 2013)). Accordingly, this Court should enforce its prior orders and reject any curtailment of Rimini's constitutional rights.  *See Dimick*, 293 U.S. at 485–86.

>    *Second*, equitable and due process principles similarly require a jury trial, and prevent a court from adjudicating new conduct in the context of a summary contempt proceeding. While contempt may be decided by a judge without a jury, that is only because the underlying conduct has already been adjudicated.

>    Indeed, it is well established that an injunction must be "narrowly tailored to the scope of the issues tried in the case," and no further.  *Skydive Ariz., Inc. v. Quattrochi*, 673 F.3d 1105, 1116 (9th Cir. 2012); *see also Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) ("an injunction must be narrowly tailored … to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law") (internal quotation marks omitted); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06[C][1][a] (the "scope of the injunction should be coterminous with the infringement").  Accordingly, "[a]ctual

---

[3]  It is understandable that Oracle would like to avoid a jury trial.  The jury in *Rimini I* rejected almost all of Oracle's claims and found that any infringement by Process 1.0 was "innocent." Rimini fully expects that the jury in *Rimini II* will exonerate Process 2.0 altogether, so that the parties can compete in the marketplace rather than in the courtroom.  That is presumably why Oracle now seeks to eliminate the separation between *Rimini I* (for Process 1.0) and *Rimini II* (for Process 2.0), which Oracle previously requested, and which this Court ordered.

success on the merits of a claim is required for a permanent injunction" (*Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999)), and injunctions must be "limited … to the specific claims … on which [the plaintiff] prevailed" (*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 840 (9th Cir. 2014)). *See also Chic. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003) (reversing injunction that prohibited forms of infringement beyond those adjudicated in the litigation); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998–99 (N.D. Cal. 2006) (injunction must be "narrowly tailor[ed]" to reach only those "harm[s] arising out of *past* acts of copyright infringement") (emphasis added). "Courts should not enjoin conduct that has not been found to violate any law." *Skydive Ariz.*, 673 F.3d at 1116; *see also United States v. Maricopa Cty.*, 151 F. Supp. 3d 998, 1031 (D. Ariz. 2015) ("[A]ny injunctive relief the Court ultimately grants will be based only on conduct it has found violated the law."). To the extent an injunction may ever extend further, it is *only* where a defendant acted "in disregard of law"—not where, as here, the conduct was innocent. *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 89 (1950).

Thus, where the conduct at issue in the contempt proceeding is different from that which was previously adjudicated, contempt is not appropriate. The Federal Circuit's decision in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011), provides the appropriate framework. Under *TiVo*, a "party seeking to enforce [an] injunction" in the infringement context must demonstrate that the "newly accused product is not more than colorably different from the product found to infringe." *Id.* at 882. "If there is 'more than a colorable difference' between the accused product and the adjudged infringing product … , [then] contempt proceedings are not appropriate." *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1380 (Fed. Cir. 2007). To determine whether a redesigned process is more than colorably different—and therefore beyond the scope of the injunction—courts must consider whether "one or more of those elements previously found to infringe has been modified, or removed," and whether those "modification[s] [are] significant." *TiVo*, 646 F.3d at 882. "If those differences between the old and new elements are significant," then the newly redesigned process "as a whole shall be deemed more than colorably different from the adjudged infringing one" (*id.*), and "contempt

proceedings are not appropriate" (*Abbott Labs.*, 503 F.3d at 1380).  "This safeguard … accommodates due process." *Arbek Mfg., Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995) ("during summary contempt proceedings, before reaching the ultimate question of whether an injunction against infringement has been violated, the trial court must first consider a threshold question, namely whether substantial open [infringement] issues must be litigated") (internal quotation marks omitted).

Oracle bears the burden of proving that any conduct it ultimately accuses as contumacious was adjudicated in *Rimini I*, or is not more than colorably different from conduct adjudicated in *Rimini I*.  *TiVo*, 646 F.3d at 883 ("The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences").  To be clear, by this motion, Rimini is *not* asking the Court to decide now that Process 2.0 is (or is not) more than colorably different from Process 1.0.  Rather, given Oracle's indication through its expert's report that it does not intend to limit its contempt accusations to processes adjudicated in *Rimini I*, Rimini requests that the Court enforce its prior orders separating *Rimini I* and *Rimini II*, requiring that any contempt proceedings be limited to conduct previously adjudicated to be infringing in *Rimini I* (*i.e.*, Process 1.0), or conduct not more than colorably different therefrom.

The relief required by this motion is warranted because Oracle has made clear that it intends to argue that aspects of Process 2.0, never adjudicated in *Rimini I*, violate the injunction. As just one example, Oracle has previously admitted that cloud hosting was never "at issue in *Rimini I*."  ECF No. 1040 at 143:14–20.  Indeed, as the Ninth Circuit made clear in its ruling, the issue of where a licensee may host its Oracle environments turns on whether the server location is "under the control of" the licensee—a question that requires a factfinder to make factual determinations about whether a customer has actual or constructive control of the servers.  *Rimini I*, 879 F.3d at 960.  Thus, while *Rimini I* concerned whether licensees had control over *Rimini's* servers, the question of whether licensees have control over their own *cloud-hosted* environments is an entirely different factual question that has never been adjudicated and is squarely before the Court on summary judgment in *Rimini II*, and which a

1  jury must resolve if there are material disputed facts.  *Rimini II*, No. 14-1699-LRH-DJA, ECF

2  No. 917 at 28–29.

3         As the pending summary judgment motions in *Rimini II* establish, the parties disagree

4  whether cloud hosting is permitted by the licenses and the Copyright Act, just as they disagree

5  whether Rimini's reuse of know-how of its own work product violates the Copyright Act or

6  any license.  Those questions (and a number of others) are squarely presented in *Rimini II*,

7  which is the appropriate forum for deciding the legality of Process 2.0 under the orders

8  previously entered in *Rimini I*.  What Rimini requests at this time is that the Court enforce those

9  prior orders separating *Rimini I* from *Rimini II*, and thereby require Oracle to limit its

10 forthcoming contempt motion to Process 1.0.  Any other result would frustrate Rimini's

11 "opportunity to litigate the infringement question at a new trial," and thereby deprive Rimini of

12 its right to due process.  *Arbek*, 55 F.3d at 1570; *see also Del Mar Avionics, Inc. v. Quinton

13 Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987) ("A device not previously before the

14 court, and shown to differ from those structures previously litigated, requires determination on

15 its own facts"); *Abbott Labs.*, 503 F.3d at 1380 (a "contempt hearing is [not] an appropriate

16 forum for adjudging whether an allegedly redesigned product is infringing").

17        Simply put, the Court cannot impose contempt sanctions based on new support

18 processes that Rimini implemented following this Court's summary judgment rulings, that have

19 never been adjudicated, and that are more than colorably different from the processes

20 adjudicated in *Rimini I*.  Any such challenge must be brought in a separate lawsuit, and indeed,

21 such a lawsuit already exists—*Rimini II*—where there is a fully developed summary judgment

22 record regarding the legality of Process 2.0, and where all issues can be resolved in a full and

23 fair proceeding as this Court previously ordered.  Just as Rimini was required to stay within the

24 boundaries of Process 1.0 earlier in the history of *Rimini I*, Oracle should be required to respect

25 those same boundaries at the contempt stage.  The legality of Process 2.0 can and should be

26 resolved only in *Rimini II*.

27

28

1

## V.  CONCLUSION

2     At Oracle's request, the Court previously drew a bright line between *Rimini I* (Process

3  1.0) and *Rimini II* (Process 2.0).  The Court should enforce its previous orders and judgment

4  dividing the conduct adjudicated in *Rimini I* (Process 1.0) from the conduct yet to be

5  adjudicated in *Rimini II* (Process 2.0).

6

7  Dated: April 2, 2020

8                                   GIBSON, DUNN & CRUTCHER LLP

9

10                                  By:   /s/ *Eric D. Vandevelde*
                                              Eric D. Vandevelde
11
                                    *Attorneys for Defendant*
12                                  *Rimini Street, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused to be electronically uploaded a true and correct copy in Adobe "pdf" format of the above document and attachments thereto to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) System.  After the electronic filing of a document, service is deemed complete upon transmission of the Notice of Electronic Filing ("NEF") to the registered CM/ECF users.  All counsel of record are registered users.

Dated: April 2, 2020

By:  /s/ *Eric D. Vandevelde*
             Eric D. Vandevelde

*Attorneys for Defendant*
*Rimini Street, Inc.*