BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
    (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:    415.293.6800
Facsimile:    415.293.6899
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-VCF <br><br> **ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*** |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................... 1

II.    BACKGROUND ................................................................................. 1

    A.    2014 and 2015 Motion Practice and Pretrial Orders ......................... 1
    B.    First Injunction ................................................................................ 2
    C.    Second Injunction ............................................................................. 3

III.   LEGAL STANDARD ......................................................................... 6

    A.    The Mandate Rule and Law of The Case ........................................... 6
    B.    Reconsideration ................................................................................ 8

IV.    THE MOTION IS PROCEDURALLY IMPROPER ............................. 8

    A.    The Ninth Circuit's Affirmance Forecloses Rimini's Motion ............... 8
    B.    Rimini Has Waived Any Argument Regarding The Injunction Scope That It Failed To Appeal ............................................................. 10
    C.    This Court's Post-Trial Orders Foreclose Rimini's Motion ............... 11
    D.    The Scope Of The Injunction Is Not A Proper Subject For A Motion For Reconsideration ............................................................ 12

V.     THE MOTION IS SUBSTANTIVELY WITHOUT MERIT ................ 12

    A.    Legal Standard ............................................................................... 12
    B.    The Scope of the Injunction Is Proper ............................................. 13
    C.    The Expert Analysis and Related Arguments Rimini Seeks to Exclude Are Well Within The Scope of Rimini's Enjoined Conduct ................................................................. 14

        1.    Rimini's Objection Is Premature and Improper ....................... 14
        2.    Ms. Frederiksen-Cross's Analysis Tracks The Injunction ....... 15
        3.    Ms. Frederiksen-Cross Does Not Opine on Products And Activities Outside the Scope of the Injunction ........................... 17
        4.    Ms. Frederiksen-Cross's Cites to Discovery from *Rimini II* Are Unremarkable ............................................................ 17
        5.    Rimini's Seventh Amendment Arguments Are Baseless ........... 19
        6.    Rimini's Patent Law Citations Are Irrelevant ......................... 20

VI.    CONCLUSION ................................................................................. 21

i

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011)................................................................13, 14

*Bacon v. Cox*,
   No. 2:18-CV-00319-JAD-NJK, 2019 WL 8013761 (D. Nev. Apr. 19, 2019)....................8, 12

*Barrow v. Falck*,
   11 F.3d 729 (7th Cir. 1993)................................................................7

*Demos v. Brown* (*In re Graves*),
   279 B.R. 266 (B.A.P. 9th Cir. 2002)................................................................20

*Dimick v. Schiedt*,
   293 U.S. 474 (1935)................................................................20

*Disney Enterprises, Inc. v. VidAngel Inc.*,
   No. CV1604109ABPLAX, 2017 WL 6820015 (C.D. Cal. Sept. 13, 2017) ............................21

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997)................................................................6, 13

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998)................................................................20

*Hubbard/Downing, Inc. v. Kevin Heath Enterprises*,
   No. 1:10-CV-1131-WSD, 2013 WL 12239523 (N.D. Ga. May 30, 2013)............................21

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000)................................................................8, 12

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
   245 F.R.D. 470 (D. Nev. 2007)................................................................8

*Oracle USA, Inc. v. Rimini St., Inc.*,
   783 F.App'x 707 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 850 (2020)................................6, 13

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir. 2018)................................................................3

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004)................................................................10

*Rio Properties, Inc v. Stewart Annoyances, Ltd.*,
   No. 02:01–CV–00459–LRH–PAL, 2008 WL 2512830 (D. Nev. June 19, 2008)....................7

ii

*Rondeau v. Mosinee Paper Corp.*,
  422 U.S. 49 (1975) ................................................................................................12

*Russian Media Grp., LLC v. Cable Am., Inc.*,
  598 F.3d 302 (7th Cir. 2010) .........................................................................6, 13

*Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*,
  No. 1:18-CV-21733-UU, 2019 WL 5256980 (S.D. Fla. Mar. 22, 2019) ................12

*Teutscher v. Woodson*,
  835 F.3d 936 (9th Cir. 2016) .................................................................................20

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) .................................................................8, 11, 21

*U.S. v. Ben Zvi*,
  242 F.3d 89 (2d Cir. 2001) ...............................................................7, 10, 11, 19

*U.S. v. Jingles*,
  702 F.3d 494 (9th Cir. 2012) ...............................................................7, 12, 21

*United States v. Husband*,
  312 F.3d 247 (7th Cir. 2002) ...................................................................................7

*United States v. Lummi Indian Tribe*,
  235 F.3d 443 (9th Cir. 2000) .............................................................................7, 12

*United States v. Neddenriep*,
  No. 2:16-CR-00265-GMN-NJK, 2019 WL 6123778 (D. Nev. Nov. 7, 2019) ...................8, 12

*United States v. Patterson*,
  878 F.3d 215 (6th Cir. 2017) .............................................................................7, 11

*United States v. Thomas*,
  No. 114CR00228LJOSKO7, 2016 WL 2926511 (E.D. Cal. May 19, 2016) ............12

*United States v. Thrasher*,
  483 F.3d 977 (9th Cir. 2007) .............................................................................6, 9

*United States v. U.S. Gypsum Co.*,
  340 U.S. 76 (1950) ................................................................................................12

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
  590 F. Supp. 2d 1306 (D. Nev. 2008) ...................................................................21

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ...............................................................................21

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND
JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*

**Statutes**

17 U.S.C. § 502(a) ................................................................................................................13

**Other Authorities**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06[C][1][a] ......................10

Local Rule 59-1(a) ...............................................................................................................8

Local Rule 59-1(b) .........................................................................................................8, 12

Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp. (collectively, "Oracle") oppose Rimini Street, Inc.'s Motion to Enforce the Court's Orders and Judgment Separating *Rimini I* from *Rimini II* (the "Motion").  The Motion is a procedurally improper, meritless filing.  Oracle respectfully requests that this Court deny Rimini's Motion.

## I.     **INTRODUCTION**

Rimini's Motion is its eighth attempt to argue its opposition to the issuance of this Court's lawful injunction (ECF No. 1166) (the "Injunction").  Once again, the Motion repeats Rimini's prior arguments from its (1) Opposition to Oracle's First Injunction Motion, (2) Opposition to Oracle's Renewed Injunction Motion, (3) Emergency Motion to Stay filed in this Court, (4) Emergency Motion to Stay filed in the Ninth Circuit, (5) briefing to the Ninth Circuit, (6) oral argument before the Ninth Circuit, and (7) in its opposition to injunction compliance discovery. The Ninth Circuit, Your Honor, and Magistrate Judge Ferenbach correctly rejected these argument the first seven times Rimini made them, and these baseless arguments should be rejected again.

Rimini's Motion is procedurally barred and meritless.  As a procedural matter, the mandate rule, law of the case, and this Court's local rules on motions for reconsideration foreclose this filing.  Substantively, Rimini once again seeks to narrow the Injunction's scope with manufactured limitations that are nowhere to be found in the Injunction itself.  Rimini may not unilaterally limit the Injunction's terms to insulate its current practices.  Moreover, the conduct described in Ms. Frederiksen Cross's expert report is plainly within the scope of the Injunction.

## II.     **BACKGROUND**

### A.     **2014 and 2015 Motion Practice and Pretrial Orders**

Pretrial fact discovery in *Rimini I* closed in December 2011.  ECF No. 212, Order at 2-3. In 2014, during pretrial discussions, Rimini announced its intent to present evidence at trial about a "new" business model that it claimed to have launched after the Court granted-in-part Oracle's first motion for partial summary judgment on February 13, 2014 (ECF No. 474), and it produced

1

over 100,000 documents concerning that allegedly new model.  ECF No. 488, Joint Request for Case Management Conference at 4-5.  Oracle opposed the introduction of this new evidence on grounds that it was irrelevant to Rimini's conduct through 2011 and that discovery into Rimini's post-*Rimini I*-discovery conduct would delay trial in *Rimini I*.  *Id.* at 5-12.  Magistrate Judge Leen, to whom the issue had been referred, rejected Rimini's request to re-open discovery.  ECF No. 508, Oct. 9, 2014 Hrg. Tr. at 25:12-26:7; ECF No. 515, Order at 3.

Rimini filed—but did not serve—its declaratory judgment complaint in *Rimini II* less than a week after the Court denied Rimini's motion to re-open discovery in *Rimini I*.  *Rimini II*, ECF No. 1 (Complaint).  Rimini then proposed that the Court consolidate *Rimini I* and *Rimini II*, which also would have delayed trial.  ECF No. 554, Rimini's Motion to Preclude Certain Damages or Consolidate at 14-15.  The Court rejected Rimini's request, holding that "though commonality exists between the two actions, the court, nevertheless, finds consolidation inappropriate because of the distinct litigation postures the cases are currently in."  ECF No. 669 at 5.

While Rimini's motion to consolidate was pending, it produced 30 documents about its "new" 2014 process as *Rimini I* trial exhibits.  ECF No. 646, Oracle's Motions in Limine at 1.  Oracle moved *in limine* to exclude these documents, related testimony, and references to *Rimini II* as irrelevant to the *Rimini I* trial.  *Id.* at 1-7.  Oracle also noted that Rimini failed to appeal Magistrate Judge Leen's order declining to re-open discovery.  *Id.* at 1-2.  This Court granted Oracle's motion.  ECF No. 723, Order at 3.

### B.    First Injunction

After Oracle obtained a jury verdict in its favor, *inter alia*, on its copyright infringement claim, this Court granted in part Oracle's motion for a permanent injunction on September 21, 2016, over Rimini's objections, ECF No. 1049, and on October 11, 2016, entered a permanent injunction, ECF No. 1065.

In its November 2, 2015 Opposition to Oracle's Motion for a Permanent Injunction, Rimini argued that Oracle's proposed injunction "attempt[ed] to leverage its narrow verdict with respect to Rimini processes that violated Oracle's reproduction right into a sweeping prohibition against conduct never adjudicated by the Court or the jury.  That includes conduct that the Court,

at Oracle's urging, confined to *Rimini II*." ECF No. 905 at 19; *see also id.* at 21 ("Oracle's proposed injunction also reaches issues that have not been litigated . . . [and] is yet another attempt to resolve a live issue in *Rimini II.*")*;* ECF No. 1040 (oral argument transcript) (Rimini contends that "Oracle's proposed injunction would appear to prohibit Rimini Street from using cloud-based servers to provide support services to its customers, even though there is absolutely no doubt that cloud computing played no role whatsoever in *Rimini I*"); ECF No. 1055 (Defendants' Objection to Oracle's Proposed Orders) at 3  ("A unifying theme of these concerns, however, was that Oracle was attempting to reach conduct that was not adjudicated in the first case (*Rimini I*), and/or that is the subject of ongoing litigation in the second case (*Rimini II*).").

As Oracle explained in its Reply in Support of Motion for Permanent Injunction, "Rimini objects that various provisions in Oracle's proposed injunction would affect Rimini's current business processes, which Oracle is challenging in the *Rimini II* lawsuit. *But Rimini points only to conduct that the Court and jury have found to constitute infringement.* Rimini's 'Opposition' makes clear that its infringement is ongoing." ECF No. 907 at 5 (emphasis added).  This Court issued its first injunction over Rimini's opposition and more limited proposed injunction, ECF No 1055, which the Court necessarily rejected.  ECF No. 1049, Order; ECF No. 1065, Injunction.

On appeal, the Ninth Circuit vacated the first injunction and remanded for reconsideration. *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 964 (9th Cir. 2018).  The Ninth Circuit otherwise held: "[W]e affirm the judgment with respect to the copyright infringement claims. *We also affirm the remedies with respect to those claims*[.]" *Id.* at 953 (emphasis added).  As this Court has explained, "the Ninth Circuit affirmed in full all of the court's and jury's findings related to Oracle's claim of copyright infringement against Rimini Street for all ninety-three copyright registrations at issue in this action and the jury's $35.6 million judgment against Rimini Street for its infringement."  ECF No. 1177 at 2.

## C.     Second Injunction

On remand, Rimini again resisted issuance of an injunction.  Rimini reiterated its argument that "[a]ny injunction must be limited to adjudicated conduct, in that it 'must be narrowly tailored to remedy only the specific harms shown by the plaintiffs'" in its April 4, 2018

3

1   Opposition to Oracle's Renewed Motion for a Permanent Injunction.  ECF No. 1130 at 18.

2   Rimini argued, for example, that the proposed injunction would enjoin "cross-use" too broadly.

3   *Id.* at 5, 16.  As Oracle explained, its definition of cross-use "provides clear guidance, and is

4   consistent with this Court's and the Ninth Circuit's guidance on cross-use."  ECF No. 1139 at 17.

5   Additionally, this Court held at summary judgment that supporting multiple PeopleSoft

6   customers—and, specifically, Rimini's use of PeopleSoft software licensed to City of Flint and

7   Pittsburgh Public Schools to develop and test software updates for customers other than City of

8   Flint and Pittsburgh Public Schools, respectively—was not permitted.  ECF No. 474 at 13, 18.

9   This Court again entered the requested injunction over Rimini's objection.  ECF No. 1164, Order;

10  ECF No. 1166, Injunction.

11      On August 16, 2018, Rimini moved this Court for a stay of the Injunction pending appeal.

12  Rimini argued that this Court erred in enjoining all acts of infringement within its judgment,

13  which, in Rimini's view, included "conduct that the Ninth Circuit did not deem infringing, and

14  for which there is no preclusive effect."  ECF No. 1168 at 9.  Rimini continued, "the parties are

15  actively litigating these issues in *Rimini II*.  There is no basis for imposing an injunction in such a

16  situation."  *Id.*  Rimini reiterated its contention that the injunction against cross-use is overbroad.

17  *Id.* at 11.  This Court denied the requested stay, and commented on Rimini's re-advancement of

18  arguments that were previously rejected:

19      **Rimini Street raises the same argument and issues is has raised throughout this**
        **action which the court has repeatedly denied as without merit.  Rimini Street's**
20      **failure to raise any new legal or factual arguments that have not already been**
        **discounted by the court weighs heavily against Rimini Street's claim that it is likely**
21      **to succeed on the merits of its appeal.**  This is especially true in light of the fact that the
        Ninth Circuit only vacated and remanded the injunction rather than reverse the permanent
22      injunction in its entirety.  Further, Rimini Street's motion is premised on an unsupported
        and extremely narrow reading of the Ninth Circuit opinion that the court has already
23      addressed in its order granting Oracle's motion for a permanent injunction.  *See* ECF No.
        1164.  Thus, Rimini Street is not likely to succeed on the merits of its appeal.
24

25  ECF No. 1177 at 3 (emphasis added).

26      On September 14, 2018, Rimini moved for a stay of the Injunction in the Ninth Circuit.

27  Rimini again contended that the Injunction "prohibited conduct that this Court expressly did not

28

4

adjudicate in the previous appeal." Declaration of Jacob J.O. Minne ("Minne Decl.") ¶ 3, Ex. 3

*Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 18-16554 (9th Cir.) ("2018 Appeal") ECF No.

4-1 at 1. Rimini again argued that "[a]t Oracle's insistence, the district court declined Rimini's

request to consolidate the cases, holding that all the evidence of Rimini's current processes must

be kept to the second proceeding." *Id.* at 3. Rimini also argued that this Court's conclusion "that

Rimini can be enjoined from (and potentially held in contempt for) conduct in *Rimini I* that is

actively being litigated in *Rimini II*—is illogical and erroneous." *Id.* at 12. Rimini further argued

that "[i]t is inconsistent with the principles of equity that govern the issuance of injunctions for

Oracle to nonetheless obtain an injunction in *Rimini I* prohibiting the very conduct it asked this

Court not to adjudicate in that case, and that is subject to ongoing litigation in *Rimini II*." *Id.*

Oracle opposed Rimini's stay request on the grounds that the Injunction is fully consistent

with the jury's innocent infringement finding, causal nexus law, and the Ninth Circuit's mandate.

Minne Decl. ¶ 4, Ex. 4 (2018 Appeal ECF No. 7). The Ninth Circuit denied Rimini's motion to

stay the Injunction. Minne Decl. ¶ 5, Ex. 5 (2018 Appeal ECF No. 11).

On November 26, 2018, Rimini argued to the Ninth Circuit that "Oracle's request for

injunctive relief [was] moot because the acts adjudicated as infringing stopped long ago." ECF

No. 1209-3 at 10 (2018 Appeal ECF No. 12, Opening Brief). Rimini contended that "[t]he

injunction as entered is unlawfully overbroad and vague," on the ground, *inter alia*, that the

Injunction enjoins cross-use. *Id.* at 11; *see also id.* at 41-48, 50-54. Rimini repeated these

contentions during oral argument. July 12, 2019 Oral Argument Recording at 6:00 *(available at*

https://www.ca9.uscourts.gov/

media/view.php?pk_id=0000034266) (Mr. Perry: "… the only two acts adjudicated as unlawful

were hosting the development environments on Rimini's own servers, that form of local hosting,

and wholesale duplication of development environments … there is no causal nexus to support

this injunction"); *see also id.* at 9:00 ("the five things that [Oracle] now say[s] are in contempt of

the injunction … are not complaining of anything that was adjudicated in the first case"); 11:08

(contending that if "the judge's order granting the injunction … 'only enjoin[ed] things that were

adjudicated in the first case . . . we actually wouldn't be here").

5

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND
JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*

As Oracle explained during oral argument in the Ninth Circuit: (1) there "isn't [a] predicate legal rule that says you can only enjoin something that was strictly litigated in the first case," (2) the cross-use injunction is not overbroad because "the first case really was about cross-use, and what the injunction does in the main is enjoin cross-use" and, (3) with respect to the PeopleSoft license, "you really needed to keep [the client's] materials on their servers … in the first case, Rimini might not have engaged in cloud hosting … but if the ruling in the first case is that you have to keep them on the client's server, it really doesn't matter."  July 12, 2019 Oral Argument Recording at 14:49.  Further, Oracle argued, "Rimini's benighted view that the injunction is and must be limited to conduct specifically affirmed to be copyright infringement . . . is not and has never been Oracle's position or the law."  Minne Decl. ¶ 7, Ex. 7 (2018 Appeal ECF No. 45).  As Oracle long has argued, this Court was "free to enjoin any conduct it found infringing (or necessary to prevent continued infringement)."  *Id.*  Oracle further explained in its brief:

> This Court and others thus consistently have upheld copyright injunctions that reach beyond the specific infringing conduct in which the defendant was found to have engaged. *See, e.g.*, *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1406 (9th Cir. 1997) (enjoining sale of entire book even though only front and back covers were infringed); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 306-07 (7th Cir. 2010) (upholding injunction preventing transmission of pirated and non-pirated programs "to prevent the evasion of the core prohibition in the decree and to extirpate any lingering effects of the violation sought to be remedied).

ECF No. 1209-4 (2018 Appeal ECF No. 23, Opposition) at 52.  Oracle won these arguments. *Oracle USA, Inc. v. Rimini St., Inc.*, 783 F.App'x 707, 711 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 850 (2020).  The Ninth Circuit vacated two paragraphs and four words of the Injunction, affirmed the rest, and remanded to this Court.  *Id.* at 711-12.

## III.   LEGAL STANDARD

### A.   The Mandate Rule and Law of The Case

"When a case has been once decided [] on appeal, and remanded to the [district court], whatever was before [the appellate] court, and disposed of by its decree, is considered as finally settled.  The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate."  *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir.

2007).  The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *U.S. v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).  "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'"  *Id.* (citing *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)); *see also Rio Properties, Inc v. Stewart Annoyances, Ltd.*, No. 02:01–CV–00459–LRH–PAL, 2008 WL 2512830, at *2 (D. Nev. June 19, 2008) (declining to grant JMOL when Ninth Circuit remanded for a new trial on the merits).  "The court may explicitly remand certain issues exclusive of all others; but the same result may also be accomplished implicitly."  *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002).  "The court's silence on the argument implies that it is not available for consideration on remand."  *Id.*

The mandate rule bars wasteful relitigation of issues that could have been challenged on appeal but were not, "for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Ben Zvi*, 242 F.3d at 96.  "[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded."  *Husband*, 312 F.3d at 250-51.  "An argument bypassed by the litigants, and therefore not presented in the court of appeals, may not be resurrected on remand and used as a reason to disregard the court of appeals' decision."  *Barrow v. Falck*, 11 F.3d 729, 730-31 (7th Cir. 1993).  *See also United States v. Patterson*, 878 F.3d 215 (6th Cir. 2017) ("where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand.").

Relatedly, under law of the case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *U.S. v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012).  The doctrine applies when "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'"  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).  "An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument."  *Jingles*, 702 F.3d at 502 (citing *United States v. Jordan*, 429

7

1    F.3d 1032, 1035 (11th Cir. 2005)).

2       **B.**    <u>**Reconsideration**</u>

3       Where, as here, a party reiterates its previous arguments, the court may treat the filing as a

4    motion for reconsideration.  *United States v. Neddenriep*, No. 2:16-CR-00265-GMN-NJK, 2019

5    WL 6123778, at *2 (D. Nev. Nov. 7, 2019), report and recommendation adopted, No. 2:16-CR-

6    00265-GMN-NJK, 2019 WL 6338004 (D. Nev. Nov. 25, 2019).  Characterizing a motion as

7    seeking some alternative form of relief "does not alter that [the party] is seeking reconsideration."

8    *Bacon v. Cox*, No. 2:18-CV-00319-JAD-NJK, 2019 WL 8013761, at *1 & n.1 (D. Nev. Apr. 19,

9    2019).  As the Local Rules provide, "[m]otions for reconsideration are disfavored." Local Rule

10   59-1(b).  They "should not be granted absent highly unusual circumstances."  *Kona Enters., Inc.*

11   *v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  Reconsideration is an "extraordinary

12   remedy, to be used sparingly."  *Id*; *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 245 F.R.D.

13   470, 472 (D. Nev. 2007); *see also* Local Rule 59-1(a).

14   **IV.**    <u>**THE MOTION IS PROCEDURALLY IMPROPER**</u>

15       Rimini's Motion is nothing more than an attempt to relitigate the scope of the Injunction

16   in this contempt proceeding.  The Injunction's scope was carefully considered and duly entered

17   by this Court and affirmed the Ninth Circuit.  The mandate rule, law of the case, and the standards

18   for motions for reconsideration foreclose Rimini's resurrection of its failed arguments.

19       As the Federal Circuit has explained, "Supreme Court precedent is clear on the issue.  The

20   time to appeal the scope of an injunction is when it is handed down, not when a party is later

21   found to be in contempt."  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 889 (Fed. Cir. 2011)

22   (citing *Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948)).  "It would be a

23   disservice to the law…to depart from the long-standing rule that a contempt proceeding does not

24   open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and

25   thus become a retrial of the original controversy."  *Id.*

26       **A.**    <u>**The Ninth Circuit's Affirmance Forecloses Rimini's Motion**</u>

27       The Ninth Circuit already has rejected Rimini's arguments in this Motion.  This Court

28

8

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND
JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*

1   "could not revisit its already final determinations unless the mandate allowed it," and, since the

2   Ninth Circuit affirmed this Court, the mandate prohibits the reconsideration Rimini seeks.  *United*

3   *States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (citation omitted).

4          Rimini's appeal centered on the scope of the Injunction.  Rimini argued that "the

5   injunction prohibits Rimini from 'us[ing] PeopleSoft software … on one licensee's computer

6   systems to support … [or] for the benefit of any other licensee'—in other words, all forms of so-

7   called 'cross-use,'" and that "'cross-use' as to PeopleSoft is not part of this Court's judgment, is

8   an open question in *Rimini II*, and may not be enjoined."  ECF No. 1209-3, 2018 Appeal ECF No.

9   1209-3 at 42-43; *see also id.* at 35 (claiming that "Oracle made up its theory of 'cross-use,' and

10  foisted this injunction language on the district court, which uncritically accepted it.").  And in its

11  Reply, Rimini argued: "The question—raised but not resolved in the prior appeal—whether

12  Rimini could use a copy of Licensee A's software to make a copy to support Licensee B, when

13  both licensees were current Rimini clients that had identical license rights, is now squarely before

14  the Court… The injunction cannot be affirmed without addressing this issue."  Minne Decl. ¶ 6,

15  Ex. 6 (2018 Appeal ECF No. 33) at 15.

16         Rimini told the Ninth Circuit that Oracle contended that a number of "discrete practices"

17  were in violation of the injunction.  Minne Decl. ¶ 9, Ex. 9 (2018 Appeal ECF No. 46-1) at 1.

18  Rimini identified those practices as including "cloud-hosting of PeopleSoft Software and Support

19  Materials," "cross-use of PeopleSoft Software and Support Materials," and "Cross-Use of JD

20  Edwards Software and Support Materials."  *Id*. at 46-3 1-2.  Rimini argued that "[n]ot one of

21  those practices was adjudicated at trial or on appeal in *Rimini I*" but rather are "the subject of

22  pending summary judgment motions in *Rimini II*."  *Id.* at 46-1 at 1.  Rimini also argued that AFW

23  tools such as "the CodeAnalyzer tool and the Dev Review tool that are referenced in Oracle's

24  allegations . . . did not even exist during the *Rimini I* timeframe and cannot be subject to the

25  Injunction."  *Id.* ¶ 8, Ex. 8 (2018 Appeal ECF No. 53-2) at 8.  The Ninth Circuit thus was

26  apprised of Rimini's concerns regarding the scope and breadth of the Injunction against post-

27  *Rimini-I*-trial conduct also at issue in *Rimini II*.

28         Affirming this Court, the Ninth Circuit decided the scope of the Injunction in Oracle's

9

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND
JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*

favor, rejecting all of Rimini's arguments, with two minor exceptions not relevant here.  ECF No. 1236.  When the Ninth Circuit expressly held that "*[i]n all other respects,* the injunction is not overbroad, the Ninth Circuit rejected all of Rimini's argument that the Injunction's application to Rimini's post-*Rimini I*-trial conduct is overbroad. *Id.* at ¶ 3.  As to innocent infringement, the Ninth Circuit held that "Rimini's mental state was not necessary to the district court's determination of irreparable injury, nor to the broader weighing of the eBay factors."  ECF No. 1236 at ¶ 2.  The Ninth Circuit also rejected Rimini's attempt to narrow the scope of the Injunction on vagueness grounds, and illustrated by example that the present-tense language of the Injunction reaches Rimini's current conduct: "The injunction clearly sets out what conduct is restricted, namely that Rimini shall not reproduce, prepare derivative works from, or distribute software except 'to support the specific licensee's own internal data processing operations.'" *Id.* at ¶ 4.  These rulings are final.

Nonetheless, apparently undeterred by its appellate loss, Rimini recycles its prior arguments that the Injunction "must be narrowly tailored … to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law" and that it cannot enjoin "innocent" infringement.  Mot. at 20-21.  *Compare* ECF No. 1209-3, 2018 Appeal ECF No. 12, Opening Br. at 24-25, 31, 44 (also citing, *e.g., Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06[C][1][a]; and *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003)).

There is nothing in the "specific dictates of the remand" or "spirit of the mandate" indicating that the scope of the Injunction covering Rimini's current conduct remains open for reconsideration. *See Ben Zvi*, 242 F.3d at 95.  Quite the contrary.  Rimini repeatedly has argued that the Injunction should be vacated or narrowed because it covers Rimini's current conduct. Rimini lost those arguments and is now just wasting this Court's judicial resources.

### B.   **Rimini Has Waived Any Argument Regarding The Injunction Scope That It Failed To Appeal**

Even if Rimini had a colorable argument that it had not raised these Injunction scope issues before (and as explained above, there is not), the arguments would be waived.  *See TiVo*

10

1    *Inc. v. EchoStar Corp.*, 646 F.3d 869, 877 (Fed. Cir. 2011) (argument regarding scope of

2    injunction waived when party failed to appeal that issue); *United States v. Patterson,* 878 F.3d

3    215, 218 (6th Cir. 2017) ("where an issue was ripe for review at the time of an initial appeal but

4    was nonetheless foregone, the mandate rule generally prohibits the district court from reopening

5    the issue on remand."). The mandate rule "forecloses litigation of issues decided by the district

6    court but foregone on appeal or otherwise waived." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d

7    Cir. 2001).

8    ## C.   This Court's Post-Trial Orders Foreclose Rimini's Motion

9    This Court's post-trial orders also constitute the law of the case and foreclose Rimini's

10   further relitigation of the Injunction's scope. This Court held on summary judgment that

11   supporting multiple PeopleSoft customers was not permitted. ECF No. 474 at 13, 18. This Court

12   later entered the Injunction, over Rimini's objection that it "must be limited to adjudicated

13   conduct" and "narrowly tailored to remedy only the specific harms shown by the plaintiffs," and

14   that the proposed injunction would enjoin "cross-use" too broadly. ECF No. 1130 at 5, 16. 18;

15   ECF No. 1164, Order; ECF No. 1166, Injunction. The Court also noted it did so after "the Ninth

16   Circuit affirmed in full all of the court's and jury's findings related to Oracle's claim of copyright

17   infringement against Rimini Street for all ninety-three copyright registrations at issue." ECF No.

18   1177, Order to Mot. to Stay at 2.

19   This Court denied Rimini's stay request over Rimini's arguments that there was "no basis

20   for imposing an injunction" because "the parties are actively litigating these issues in *Rimini II*"

21   and that the injunction against cross-use was overbroad. ECF No. 1168 at 9, 11. This Court

22   further held that "Rimini Street raises the same argument and issues it has raised throughout this

23   action *which the court has repeatedly denied as without merit*," and noted that Rimini failed to

24   "raise any new legal or factual arguments that have not already been discounted by the court."

25   ECF No. 1177 at 3 (emphasis added). The Court also rejected Rimini's "unsupported and

26   extremely narrow reading of the [first] Ninth Circuit opinion." *Id.* These rulings constitute the

27

28

law of the case and should not be reconsidered here.[1]  *Lummi*, 235 F.3d at 452 ("the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition'"; holding district judge properly applied law of the case); *Neddenriep*, 2019 WL 6123778, at *2 (declining to reconsider); *Kona Enters.,* 229 F.3d at 890 (not abuse of discretion to deny motion for reconsideration).

### D. The Scope Of The Injunction Is Not A Proper Subject For A Motion For Reconsideration

Although Rimini styles its motion as some sort of "motion to enforce," it is nothing more than an improper and highly disfavored motion for reconsideration.  *Bacon*, 2019 WL 8013761, at *1 & n.1 (D. Nev. Apr. 19, 2019); Local Rule 59-1(b).  Even absent the Ninth Circuit's mandate, there are no "highly unusual circumstances" that warrant reconsidering the Injunction's scope. *Kona Enters., Inc.*, 229 F.3d at 890.[2]

## V.   THE MOTION IS SUBSTANTIVELY WITHOUT MERIT

### A. Legal Standard

Courts are vested with broad discretionary power to fashion injunctive relief based on the "necessities of the particular case."  *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975). That authority includes the power to enjoin even otherwise-lawful conduct, so long as the decree is tailored to the nature and scope of the case.  *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88-89 (1950) (injunctions may cover "entirely proper" acts if doing so will prevent future violations). The court's authority is particularly broad in the copyright context, where injunctions may impose whatever terms the court deems "reasonable to prevent or restrain infringement of a copyright."

---

[1] Rimini has made no showing that any of the exceptions to law-of-the-case doctrine should apply, namely, that "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."  *Jingles*, 702 F.3d at 503 & n.3 (citing *Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012) (en banc) (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)).

[2] In addition, motions "that exclude broad categories of evidence are disfavored."  *United States v. Thomas*, No. 114CR00228LJOSKO7, 2016 WL 2926511, at *1–2 (E.D. Cal. May 19, 2016). This is especially true "in a bench trial where the gatekeeping rationale is not fully operative" or likewise in a post-injunction evidentiary hearing.  *See Salomon Constr. & Roofing Corp. v. James McHugh Constr. Co.*, No. 1:18-CV-21733-UU, 2019 WL 5256980, at *4 (S.D. Fla. Mar. 22, 2019).

1   17 U.S.C. § 502(a).

2        "Courts have extended injunctive relief beyond the four corners of the litigated

3   copyrighted works to cover non-litigated items of similar character." *Apple Inc. v. Psystar Corp.*,

4   658 F.3d 1150, 1161 (9th Cir. 2011) (citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C.

5   Cir. 1990) (extending a permanent injunction to copyrighted characters that were not expressly

6   litigated in the underlying action); *Warner Bros. Records, Inc. v. Brown,* 2008 WL 4911161, at

7   *2–3 (N.D. Cal. Nov. 13, 2008)); *see also, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA,*

8   *Inc.*, 109 F.3d 1394, 1406 (9th Cir. 1997) (enjoining sale of entire book even though only front

9   and back covers were infringed); *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302,

10  306-07 (7th Cir. 2010) (upholding injunction preventing transmission of pirated and nonpirated

11  programs "to prevent the evasion of the core prohibition in the decree and to extirpate any

12  lingering effects of the violation sought to be remedied").

13       **B.    The Scope of the Injunction Is Proper**

14       Despite Rimini's repeated attempt to sow confusion—arguing that there is some

15  complicated interplay between the Injunction and the issues raised in the *Rimini II* declaratory

16  judgment action Rimini chose to file—the Injunction's scope is clear.  As the Ninth Circuit has

17  held, the Injunction's terms are neither vague nor overbroad.  *Oracle USA, Inc. v. Rimini St., Inc.*,

18  783 F.App'x at 710-11.  Rimini must abide by those terms.  It is irrelevant that another litigation

19  may address conduct that the Injunction bars.  *Psystar*, 658 F.3d at 1161.  If conduct is barred by

20  the Injunction, that is the end of the inquiry.  While Rimini continues to assert that the Injunction

21  only bars the precise conduct that Rimini believes was actually adjudicated in *Rimini I*, that is not

22  what the Injunction says, and that is not the law.  In issuing this Injunction (over Rimini's

23  objection), this Court properly exercised its authority to prohibit acts by Rimini (an adjudicated

24  infringer) that could lead to further infringement.

25       In contrast with Rimini's contentions, Mot. at 15-16, 19-21, the Injunction sets the metes

26  and bounds of any contempt proceedings.  Rimini's "Process 2.0" methods that are the subject of

27  *Rimini II* are at issue in these enforcement proceedings because Rimini continues to engage in

28  conduct that the Injunction plainly bars.  If Rimini were complying with the Injunction, Rimini

13

would have no reason to seek to so limit the Injunction's scope even once, much less seven times.

*Psystar* is particularly instructive.  In that case, "Psystar filed suit in Florida, after Apple filed this suit for infringement in California.  But due to a discovery dispute, the subject matter of the two suits [was] not identical." *Id.* at 1160.  When Apple obtained a copyright injunction against Psystar in the Ninth Circuit, the defendant complained that it overlapped with the Florida litigation; but the appellate court was unmoved: "While Psystar stresses that the copyrighted work in the Florida case is different, federal law provides the district court the discretion to 'grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *Id.* at 1161 (citing 17 U.S.C. § 502(a)).

Here, as in *Psystar*, this Court has the power to enter an injunction that reaches categories of infringing conduct more broadly than the specific conduct adjudicated in *Rimini I*.  This ensures an injunction that could remain meaningful as Rimini pursued variations of its infringing processes.  The Injunction rightfully enjoins conduct within its scope regardless of whether that conduct is also at issue in *Rimini II*, and Oracle has maintained that position throughout this litigation.  ECF No. 1117 at 23.

**C.**  **The Expert Analysis and Related Arguments Rimini Seeks to Exclude Are Well Within The Scope of Rimini's Enjoined Conduct**

Ms. Frederiksen-Cross's analysis is clearly tethered to the Injunction.  This Court has ruled (again over Rimini's objection) that evidence produced in *Rimini II* and related processes is part of the record for Injunction-contempt proceedings.  ECF Nos. 1209, 1215; *Rimini II* ECF Nos. 1228, 1235.  Because Rimini did not appeal these rulings, it cannot complain that Oracle's expert is relying on evidence in the record in this case, including this *Rimini II* discovery.

**1.**  **Rimini's Objection Is Premature and Improper**

After Oracle files its Order to Show Cause why Rimini should not be held in contempt for violating the Injunction, Rimini will have ample opportunity to oppose that motion and will be free to argue that Mr. Frederiksen-Cross's opinions do not show a violation of the Injunction.  While Rimini's claims in that regard will be meritless, in our adversarial system, Rimini will be given a full opportunity to air its objections.  Likewise, Oracle has the right to present the

14

arguments, evidence, and expert opinions it chooses in support of that Order To Show Cause.

The instant Motion, however, is a premature and improper attempt to limit what Oracle can say in its Order to Show Cause.  The appropriate time and place for any objection to Ms. Frederiksen-Cross's opinions is during the briefing on the contempt issues.  The sad reality that Rimini is once again engaging in litigation misconduct is demonstrated by the fact that *the day before Rimini filed this motion*, it demanded an extension of the schedule on the Order to Show Cause, arguing that everything relating to that motion should be delayed because of the COVID-19 pandemic.  After obtaining the extension, Rimini brought this motion the very next day, seeking to litigate the evidence that could be presented in a motion that Rimini claimed must be held in abeyance.

### 2.    Ms. Frederiksen-Cross's Analysis Tracks The Injunction

Each section of Ms. Frederiksen-Cross's expert report is tailored to the enjoined conduct, including the three categories of conduct—cloud hosting, cross-use, and tool-assisted (AFW) copying—that Rimini erroneously argues exceed the scope of the Injunction.  Mot. at 12-13.

As to cloud hosting, including in the paragraphs of the Frederiksen-Cross Report ("Report") that Rimini cites, ¶¶ 38 and 172,[3] the conduct described is enjoined at least pursuant to Injunction Paragraph 5.  ECF No. 1166 ("Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer system").

Ms. Frederiksen-Cross's report shows the association between the *Rimini I* injunction and cloud hosting, explaining that "under the terms of certain PeopleSoft software licenses, [PeopleSoft environment] reproductions are only permitted at a customer's facility, that the PeopleSoft environments located on Rimini's computer systems were found to infringe Oracle's copyrights in the *Rimini I* time period because they were not at a licensed customers' facilities,

[3] Excerpts of Ms. Frederiksen-Cross's Report were submitted as Exhibit A to the Declaration of Mr. Vandevelde (ECF No. 1236) and adopted by Ms. Frederiksen-Cross in her declaration, submitted herewith (Report ¶¶ 29-47, 77-86, 103-112, 161-178, 208-210, 216-222, 227-233, 267-277, 292-294, 301-312, 323-324.) Additional excerpts of her Report are provided as Exhibit 1 to her declaration and also adopted therein (Report ¶¶ 9-15, 98-102, 119-120, 150-160, 179-207, 211-215, 221-226, 234-266, 278-291, 316-322, 360-372.).

1   and that ███████████████████████████████████████████████████

2   ███████████████████████████████████ Report ¶ 77; *see also id.* at ¶¶14, 165-

3   173.  Ms. Frederiksen-Cross further explains that there is a substantive distinction between

4   customer-hosting and cloud-hosting, with ████████████████████████████████

5   ████████████████████████████████ (*id.* at ¶¶ 168-170).

6        The PeopleSoft and JDE cross-use described by Ms. Frederiksen-Cross is further enjoined

7   under Injunction Paragraphs 6 and 10.  ECF No. 1166 ("Rimini Street shall not reproduce,

8   prepare derivative works from, or use [PeopleSoft or JDE] software … on one licensee's

9   computer systems to support, troubleshoot, or perform development or testing for any other

10  licensee, … [and] shall not use a specific licensee's [PeopleSoft or JDE] environment to develop

11  or test software updates or modifications for the benefit of any other licensee").  Contrary to

12  Rimini's assertion that the report merely addresses "reuse of engineer know-how and *Rimini-*

13  *created* work product" (Mot. at 13), the report provides concrete examples of ██████████

14  █████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████

16  Report ¶¶ 83, 98-107; 231-242, 287-288, 316-322, 365-376, 380-381.  The rhetoric of "Rimini-

17  created" updates belies the fact that they were ████████████████████ in violation of the

18  Injunction.

19       The report also documents how Rimini uses one client's software environment to perform

20  development and testing for multiple other clients ████████████████████.  *Id.* at ¶¶ 243-

21  266.  Once an update is complete for a prototype customer, Rimini ████████████████████

22  ███████████████████████████████████████

23  ████████████████████████ *See, e.g., id.* at ¶¶ 246-249; 256-257.  These ████████████

24  ██████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████

26  ███████████ *See, e.g., id.* at ¶¶ 250-252; 258-259.  Ms. Frederiksen-Cross is documenting copying

27  and cross-use of environments and of ████████████████ environments, not "engineer

28  know-how."

16

Finally, Ms. Frederiksen-Cross also shows how Rimini's AFW systems violate the Injunction.  Report ¶¶ 108, 209, and 230 all relate to the function and operation of AFW ███████████████████████████ tools.  Ms. Frederiksen-Cross confirmed that these tools were in use while the Injunction was in effect.  *See* Report ¶ 280. ████████████████████ ████████████████████████████████████████████████████████████ ████████ they violate the injunction's prohibition on using one customer's software for the benefit of other customers.  *Id.* at ¶¶ 115, 119, 229-230.  This development and use of AFW violated the Injunction's prohibition on cross use.  *Id.* at ¶ 280; ECF No. 1166.[4]

### 3.   Ms. Frederiksen-Cross Does Not Opine on Products And Activities Outside the Scope of the Injunction

Ms. Frederiksen-Cross's report *does not* opine on several topics that are at issue in *Rimini II* but are outside the scope of the Injunction.  To take one example, the report is silent as to Rimini's support processes for product lines that are at issue in *Rimini II* but were not adjudicated as part of *Rimini I*.  Similarly, the report does not address Rimini's actions before the Injunction became effective that are not tied to post-Injunction conduct (even if such acts today would violate the Injunction).  For instance, Rimini's "migration" of PeopleSoft environments from its ████████████████████████████ infringed Oracle's exclusive rights to copy and distribute PeopleSoft, but these acts are the subject of summary judgment proceedings in *Rimini II*.  *See, e.g., Rimini II*, ECF No. 930, Oracle's Motion for Partial Summary Judgment.  Because those predated the Injunction, they are not the subject of Ms. Frederiksen-Cross's expert report here.

### 4.   Ms. Frederiksen-Cross's Cites to Discovery from *Rimini II* Are Unremarkable

Rimini's supposed impetus for filing its Motion is that the expert report "reveals" that Oracle will enforce the Injunction by relying on discovery from *Rimini II*— *but that discovery is*

---

[4] Although not cited in Rimini's motion, Ms. Frederiksen-Cross also showed that many aspects of Rimini's AFW system violated the Injunction's prohibition on distribution, by ██████████ ████████████████████████████████████████████████ Report ¶ 326; ECF No. 1166 ¶ 3 ("Rimini Street shall not distribute … any derivative works created from or with PeopleSoft software or documentation.").

17

*part of the record here.*  Mot. at 13 (adding "[i]n total, Ms. Frederiksen-Cross's 'contempt' report adopts or relies on her opinions from Rimini II at least 34 times.").  But this should be neither surprising nor noteworthy, as reliance on *Rimini II* discovery for post-Injunction proceedings was (1) already thoroughly briefed and (2) necessary to describe Rimini's post-Injunction conduct. Further, it is odd that Rimini would complain now about the use of *Rimini II* material in these proceedings when Rimini's counsel represented to Magistrate Judge Ferenbach that *Rimini I* Injunction-compliance discovery should be limited because "Oracle has had three years of Discovery" in *Rimini II.*  ECF No. 1218, Apr. 4, 2018 Hearing Tr. at 20:2-6; *see also id.* at 8:10-11, 25:3-5, 30:1-3, 41:25-42:3.

In addition, any purportedly new objection Rimini might have to the use of *Rimini II* material in this proceeding (and Rimini has no such new objection) has been waived.  When Rimini refused to agree to permit *Rimini II* material to be used in this proceeding, Oracle moved to modify the operative Protective Order and to allow limited discovery on how Rimini's processes had changed.  *Rimini II,* ECF No. 1226 (Motion to Modify Protective Order); *Rimini II,* ECF No. 1228 (Opposition); *Rimini II,* ECF No. 1229 (Reply); ECF No. 1199 (Motion to Permit Discovery); ECF No. 1209 (Opposition); ECF No. 1210 (Reply).  While Rimini's counsel was telling Magistrate Judge Ferenbach that Oracle  did not need post-Injunction discovery in *Rimini I* because it already had adequate discovery from *Rimini II*, Rimini's counsel was arguing to Magistrate Judge Hoffman (in the *Rimini II* case) that Oracle should be precluded from using *Rimini II* material in *Rimini I.*  *Rimini II,* ECF No. 1228 (Opposition).  Judge Hoffman rejected that argument, and granted Oracle's motion to permit the use of the *Rimini II* materials in this proceeding.  *Rimini II*, ECF No. 1237, Order ("Oracle has met its burden of showing that the discovery produced in *Rimini II* pursuant to this court's protective order is relevant and generally discoverable in the *Rimini I* case.  The requested information is relevant because it may provide insight into Rimini's modified processes which are nevertheless the subject of the injunction").  Rimini did not appeal that ruling.  Accordingly, Rimini's argument that Oracle or its experts cannot use *Rimini II* material in this proceeding has been waived, and Rimini's attempt to reargue this issue is meritless.

It is not at all surprising that Ms. Frederiksen-Cross relies on materials from *Rimini II*. As Oracle already has explained in briefing on modifying the *Rimini II* Protective Order, "[t]o understand and explain any 'changes' to Rimini's processes, the parties need to be able to use the *Rimini II* discovery regarding Rimini's earlier (and unchanged) processes." *Rimini II*, ECF No. 1235 at 1. The Court agreed, finding that *Rimini II* discovery "is relevant because it may provide insight into Rimini's modified processes which are nevertheless the subject of the injunction." *Rimini II*, ECF No. 1237 at 3 (emphasis added). The use of this discovery by Oracle or its experts does not expand the scope of the Injunction, it explains Rimini's post-Injunction conduct. *Id.* at 4 ("[c]ontrary to Rimini's argument, the scope of the injunction is not subject to expansion as the result of the release of discovery").

In fact, in objecting to post-Injunction discovery in this case "Rimini argued that discovery in [*Rimini I*] is unnecessary because if it exists, it is available in *Rimini II*." *Id.* at 3-4. Consistent with that representation, Rimini provided paltry discovery responses, for instance, describing the changes to its support processes in response to the Injunction ███████████ Minne Decl. ¶ 2, Ex. 2 (Rimini's Corrected Supplemental Response to Interrogatory No. 1). Ms. Frederiksen-Cross's reliance on *Rimini II* discovery to inform her post-Injunction report is consistent with Rimini's insistence that Oracle must glean the facts of Rimini's post-Injunction conduct from the *Rimini II* record.

### 5. Rimini's Seventh Amendment Arguments Are Baseless

Rimini claims that "enjoining Process 2.0" would violate the Seventh Amendment right to jury trial "as to liability and as to the amount of actual copyright damages." Mot. at 19. Rimini continues that the jury is "charged with determining [copyright] infringement liability." *Id.* But Rimini misapprehends the procedural posture of this case. There is an enforceable Injunction in place that prohibits Rimini from certain conduct. ECF No. 1166. Any concerns about the scope of the Injunction were ripe for review during Rimini's appeals, and to the extent not raised previously are now waived. *Ben Zvi*, 242 F.3d at 95.

Furthermore, determining whether the Injunction has been violated is not a question of assessing copyright infringement liability or damages. Whether Rimini is violating the Injunction

19

1  is an entirely distinct question from whether Rimini's conduct in *Rimini II* infringed Oracle's

2  copyrights.[5]  In short, the question of whether Rimini's current conduct violates the Injunction is

3  not a jury question.  *Demos v. Brown* (*In re Graves*), 279 B.R. 266, 271-72 (B.A.P. 9th Cir. 2002)

4  (rejecting the contention that a party is entitled to trial by jury in an injunction action; citing

5  *United States v. Louisiana*, 339 U.S. 699, 706 (1950) ("It is long-settled that an action solely for

6  an injunction is 'equitable' in nature, hence not subject to the Seventh Amendment right to trial

7  by jury.")).[6]  To find otherwise would give Rimini a free pass to violate the Injunction here.

8  ### 6.    Rimini's Patent Law Citations Are Irrelevant

9      Rimini citations to patent law regarding whether a "newly accused product is not more

10  than colorably different from the product found to infringe" are irrelevant.  Mot. at 21-23.  The

11  Injunction, by its clear terms, does not bar the sale of any "product" new or old.  Rather, the

12  Injunction bars specific Rimini actions and practices, regardless of whether those actions and

13  practices are used in connection with Rimini's prior, current, or future offerings to customers.

14  The "colorable differences" standard applies in patent-infringement cases involving specific

15  infringing *products* and is not relevant here.

16      Courts consistently have rejected attempts to impose the "colorably different" patent law

17  standard in copyright cases.  For instance, in *Disney Enterprises, Inc. v. VidAngel Inc.*, No.

18  CV1604109ABPLAX, 2017 WL 6820015, at *2-3 (C.D. Cal. Sept. 13, 2017), defendant

19  VidAngel cited various patent-infringement cases for the proposition that the injunction was

20  overbroad inasmuch as it applied to technologies that were not analyzed in the *Disney* court's

21  prior order.  The court rejected VidAngel's attempt to apply the "colorably different" standard in

22

23  [5]  As Rimini concedes, this concern is speculative, as the jury trial issue will only come into play
24  on copyright infringement issues "to the extent issues are not resolved on summary judgment."
    Mot. at 19.

25  [6] The cases Rimini relies on also acknowledge this.  *See Teutscher v. Woodson*, 835 F.3d 936,
    943 (9th Cir. 2016) (noting plaintiff "had no right to a jury trial" on his equitable claim); *Feltner*
26  *v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998) (citing § 502 as one of the "other
    remedies provisions of the Copyright Act [that] use[s] the term 'court' in contexts generally
27  thought to confer authority on a judge, rather than a jury."); *Dimick v. Schiedt*, 293 U.S. 474, 485-
    86 (1935) (noting that trial by jury is the "normal and preferable mode of disposing of issues of
28  fact in civil cases *at law*") (emphasis added).

this context, noting that "this is not a patent infringement action, and no device or technology has been restrained by the injunction." *Id.*  Moreover, it found that applying this standard would "defeat the purpose of the injunction by giving VidAngel the virtually unfettered ability to make use of the Plaintiff's copyrighted works without penalty for every 'more than colorably different' version of the service they can create." *Id.*; s*ee also, Hubbard/Downing, Inc. v. Kevin Heath Enterprises*, No. 1:10-CV-1131-WSD, 2013 WL 12239523, at *4 (N.D. Ga. May 30, 2013) (refusing to apply the *TiVo* standard despite use of the term "colorably different" in a settlement agreement).  To the extent this issue has not already been waived, the Court should follow suit here and decline to apply the patent standard to a copyright case.

*****

This Motion is just another stall tactic.  But the jig is up.  Delaying this Injunction enforcement proceeding, as Rimini requests, would result in "manifest injustice."  *Jingles*, 702 F.3d at 503; *see also Visa Int'l Serv. Ass'n v. JSL Corp.,* 590 F. Supp. 2d 1306, 1313 (D. Nev. 2008) (quoting *Lummi Indian Tribe*, 235 F.3d at 452), aff'd, 610 F.3d 1088 (9th Cir. 2010). Rimini already has obtained a substantial delay in enforcement proceedings by failing to cooperate with Injunction-enforcement discovery.  Much as this Court and the Ninth Circuit rejected Rimini's prior stay requests, this Court should decline Rimini's request for further delay. This Court should deny this Motion and enforce the Injunction.

## VI.    CONCLUSION

For the foregoing reasons, Rimini's Motion to Enforce the Court's Orders and Judgment Separating *Rimini I* from *Rimini II* should be denied.

DATED: April 23, 2020                          MORGAN, LEWIS & BOCKIUS LLP


By:  _____/s/ John A. Polito_____
                   John A. Polito

        Attorneys for Plaintiffs Oracle USA, Inc., Oracle
        America, Inc., and Oracle International Corporation

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of April, 2020, I electronically transmitted the foregoing **Case No. 2:10-cv-0106-LRH-VCF ORACLE'S OPPOSITION TO RIMINI'S MOTION TO ENFORCE THE COURT'S ORDERS AND JUDGMENT SEPARATING *RIMINI I* FROM *RIMINI II*** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: April 23, 2020

By: _____ /s/ John A. Polito _____
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation