# Exhibit 4

**Excerpts of Appellees' Response to Urgent Motion to Stay, filed in *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 18-16554, (ECF No. 7)**

**No. 18-16554**

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; ORACLE INTERNATIONAL CORPORATION, a California corporation,

*Plaintiffs-Appellees*,

v.

RIMINI STREET, INC., a Nevada corporation,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Nevada,
No. 2:10-cv-0106-LRH-VCF

_____

## APPELLEES' RESPONSE TO URGENT MOTION TO STAY THE ORDER OF PERMANENT INJUNCTION AND TO ORDER AN IMMEDIATE ADMINISTRATIVE STAY

_____

WILLIAM A. ISAACSON
KAREN L. DUNN
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727

PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
MATTHEW D. ROWEN
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com

*Counsel for Plaintiffs-Appellees*
(*Additional Counsel Listed on Inside Cover*)

September 24, 2018

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

STANDARD OF REVIEW ................................................................................. 5

ARGUMENT ...................................................................................................... 5

I.    Rimini Is Not Likely To Succeed On The Merits ...................................... 5

    A.    The Injunction Is Fully Consistent with the Jury's "Innocent Infringement" Finding ........................................... 6

    B.    The Injunction Is Fully Consistent with Causal Nexus Law .............. 9

    C.    The Injunction Is Fully Consistent with this Court's Mandate ............................................................................... 12

    D.    None of Rimini's Remaining Arguments Has Merit.......................... 16

II.   Rimini Will Not Suffer Irreparable Injury .............................................. 17

III.  The Balance Of Hardships Weighs Against A Stay ................................. 18

IV.   A Stay Will Not Serve The Public Interest .............................................. 20

CONCLUSION ................................................................................................. 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

favored an injunction. Order 5-10. Rimini sought to stay the injunction pending

appeal. Dkt.1168. The district court denied that request but granted a 60-day stay

to allow Rimini to seek a stay from this Court. Dkt.1177.

## STANDARD OF REVIEW

A stay pending appeal "is not a matter of right, even if irreparable injury might

otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). It is "an exercise of

judicial discretion, and the propriety of its issue is dependent upon the circumstances

of the particular case." *Id*. In deciding whether to stay an injunction, this Court

considers whether the applicant "has made a strong showing that [it] is likely to

succeed on the merits," whether the applicant "will be irreparably injured" without

a stay, the balance of hardships, and "the public interest." *Lair v. Bullock*, 697 F.3d

1200, 1203 (9th Cir. 2012). This Court reviews "the legal conclusions de novo, the

factual findings for clear error, and the decision to grant a permanent injunction, as

well as its scope, for an abuse of discretion." *Oracle*, 879 F.3d at 964. That standard

underscores the extraordinary burden Rimini faces, as the basic legal question

whether Rimini committed copyright infringement was definitively resolved *against*

Rimini in the earlier appeal, and the other factors are reviewed deferentially.

## ARGUMENT

## I.     Rimini Is Not Likely To Succeed On The Merits.

Rimini's motion offers a scattershot of challenges (some in bullet-point form)

to the district court's discretionary determination to issue an injunction. None has

merit. Nor does Rimini's assertion that "in granting the previous stay pending appeal," this Court already "conclud[ed]" that Rimini is "likely to prevail" here. Mot.7.[1] If anything, the opposite is true. While the previous injunction rested in part on state-law violations reversed in the prior appeal, the current injunction rests exclusively on copyright violations that this Court *affirmed*. The prior appeal—in which this Court not only affirmed the infringement determination but also declined to accept Rimini's arguments, reprised here, that injunctive relief for the copyright violations was categorically inappropriate—shows that Rimini is unlikely to prevail on appeal and makes a stay particularly inappropriate. In all events, Rimini's arguments fail on their own terms.

### A. The Injunction Is Fully Consistent with the Jury's "Innocent Infringement" Finding.

As it did in its prior appeal, Rimini begins with its claim that the district court could not grant an injunction because the jury found Rimini's infringement "innocent." Mot.7-8, 14-15. That argument cannot be reconciled with the text and structure of the Copyright Act. The Copyright Act does not confine injunctions to "willful" or non-"innocent" infringers; it empowers courts to enter "final injunctions on such terms as [they] may deem reasonable to prevent or restrain infringement of

---

[1] In light of the subsequent merits decision affirming Rimini's copyright infringement but reversing on state-law claims, the previous stay may simply have reflected concerns about the state-law claims.

a copyright." 17 U.S.C. §502(a). That stands in stark contrast to other provisions

of the Act that *do* make the availability of certain remedies dependent on the

character of the infringement. For example, while statutory damages ordinarily

range from $750 to $30,000, they can be as low at $200 for certain kinds of unwitting

infringement and as high as $150,000 when the "infringement was committed

willfully." *Id.* §504(c). As those provisions confirm, Congress knows how to make

copyright remedies contingent on innocence or willfulness, and it did not do so in

§502(a).

Unsurprisingly, courts routinely enjoin "innocent" infringers. *See, e.g.*, *D.C.*

*Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 36 (2d Cir. 1990) (affirming *both*

"determination of innocent infringement" *and* entry of "a permanent injunction …

to deter future infringement"); *Columbia Pictures Indus., Inc. v. Prado Pacheco*,

1990 WL 29787, at *1-3 (D.P.R. Feb. 27, 1990) (entering injunction where

infringement was "innocent"); *Broad. Music, Inc. v. Coco's Dev. Corp.*, 1981 WL

1364, at *2 (N.D.N.Y. 1981) ("permanently enjoin[ing]" defendant who "had [no]

reason to believe that his acts constituted an infringement"). Indeed, this Court

affirmed a permanent injunction in a case in which the plaintiff made "no showing"

that the defendant violated copyright law *at all*, because the "threat of a violation"

was still sufficiently clear to justify injunctive relief. *MAI Sys. Corp. v. Peak*

*Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993); *see United States v. W. T. Grant*

*Co.*, 345 U.S. 629, 633 (1953) (foremost consideration is whether injunction will "prevent future violations"). In short, whether infringement was "innocent" is not dispositive for injunctive relief—and no court has ever held otherwise.

For much the same reason, Rimini's Seventh Amendment argument is meritless. Rimini maintains that the district court made a finding that Rimini acted with "conscious disregard," and that this finding is an impermissible reexamination of the jury's finding that its infringement was "innocent." Mot.8. But the Reexamination Clause comes into play only when a finding *necessary* to support equitable relief has been made by the jury. *Teutscher v. Woodson*, 835 F.3d 936, 951 (9th Cir. 2016). Non-innocence is *not* a necessary finding for injunctive relief under the Copyright Act. *See, e.g.*, *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014) (affirming permanent copyright injunction even though it was "disputed … whether or not [defendants] were innocent infringers"); *De Acosta v. Brown*, 146 F.2d 408, 410 (2d Cir. 1944) (affirming injunction against "innocent" infringer as "clearly correct").

In any event, the district court did not rest the injunction on any finding regarding Rimini's *mens rea*. Rimini takes issue with the district court's "conscious disregard" terminology, but that language came in a discussion of *Oracle's* irreparable injury, not *Rimini's* mental state. It is in the section of the order labeled "Irreparable Injury"; it follows the court's elucidation of the irreparable injury

8

requirement; and it is followed by a detailed discussion of how Rimini's infringement enabled Rimini to offer "cut-rate prices," which "created the impression that Oracle was overcharging for support and eroded [Oracle's] bonds and trust" with customers. Order 5-7. And that was not the district court's sole basis for finding irreparable harm. The "[f]irst" ground for that finding was the "undisputed" fact that Oracle and Rimini "directly compete with each other" and the court's conclusion that Rimini's "infringement of ninety-three separate copyright registrations" facilitated its rapid ability to acquire market share at Oracle's expense. Order 6. There is no Seventh Amendment issue here, let alone one likely to result in reversal of the injunction.

## B. The Injunction Is Fully Consistent with Causal Nexus Law.

Repeating a demonstrably false argument that Rimini advanced in the prior appeal, Rimini again insists (at 9) that the district court "ignor[ed] the 'causal nexus' requirement." In reality, the court methodically explained the connection between Rimini's infringement and Oracle's irreparable business harms.

Specifically, the court found that: (1) "Rimini Street landed clients for its services by telling customers that Oracle's services were overpriced and could be [provided] at the same cut-rate, 50% discount that Rimini Street offered"; (2) Rimini would not have been able to charge those "cut-rate" prices or to acquire its significant "market share" without "its infringement of Oracle's copyrighted software"; (3) by

9

"purporting to offer vendor-level support at half the price of Oracle support," Rimini "created the impression that Oracle was overcharging for support"; (4) Rimini's success in creating that impression—which, again, *was built entirely on its infringement of Oracle's copyrighted software*"—"eroded the bonds and trust that Oracle has with its customers"; and (5) this erosion harmed Oracle's "business reputation and goodwill." Order 6-7 (emphasis added). That reasoning clearly qualifies as a conclusion "that the specific infringing features of Rimini's prior practices were the cause of Oracle's loss of goodwill." Mot.10.

Rimini simply ignores this entire section of the court's order, instead making the self-serving claim that "any harm to Oracle's reputation was caused by its own high prices." Mot.10. But that willfully ignores the district court's express findings that Oracle's prices seemed "high" only in comparison to what Rimini was able to charge *as a result of its massive infringement of Oracle's copyrights*. *See* Order 6-7. Those findings provide all the "causal nexus" the law requires.

Rather than confront the district court's actual findings, Rimini concocts the false claim that Oracle "told the district court that Oracle did not even have to *meet* [the causal nexus] requirement." Mot.9. Again, that statement is demonstrably incorrect. In the very motion Rimini cites, Oracle argued, under the heading "*Oracle Has Shown Causal Nexus*," that the "'sufficient causal connection'" standard this Court applied in *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir.

10

2011), "is amply met here." Dkt.1139 at 4-5. To be sure, Oracle did tell the district court that the *Perfect 10* "causal nexus" standard is the correct standard, and that Rimini was wrong to insist that Oracle must satisfy the more demanding "direct[] ties" standard the Federal Circuit has applied in certain patent cases. *See* Mot.9 (emphasis omitted); *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012). But Oracle's briefing appropriately discussed what the appropriate causal nexus standard is. Rimini's claim that Oracle represented to the court that no causal nexus is required is simply false.

Rimini next attacks the district court's nexus finding by arguing that Oracle's injuries had to be directly tied to "the practices resolved on summary judgment or the narrower practices addressed on appeal." Mot.11. That is wrong as a matter of law, *see infra* Part I.C, but it is equally wrong as a matter of fact, as the district court *did* tie Oracle's irreparable harm to those practices. The court clearly explained that Rimini's massive copying on its own servers, which Rimini used to make environments to serve multiple customers (not just the "particular customer" to which an environment traced), is what allowed Rimini to offer lower prices and thereby paint Oracle in a negative light. Order 6-7.

To the extent Rimini claims that those were not "practices resolved on summary judgment or … addressed on appeal," Mot.11 (emphasis omitted), it is wrong again. With respect to PeopleSoft, this Court affirmed not only the legal

11

conclusion that the licenses "'do[] not authorize Rimini's off-site copies of the licensed software,'" but also the factual finding "'that Rimini made copies of the licensed software at its own facilities and *outside the control* of the [customers].'" 879 F.3d at 959-60 (alterations and emphasis in original); *see id.* at 960 (holding that it was "necessary for the district court to read a requirement of 'control' into" that license term).  With respect to J.D. Edwards and Siebel, the Court held that because "each of the licenses … 'pointedly limits copying and use to supporting the '*Licensee*,'" Rimini violated Oracle's copyrights when it made new copies (*e.g.*, new environments) to support *other* customers.  *Id.* at 957.  The district court thus tied Oracle's injury to the very same conduct this Court addressed on appeal.

## C.     The Injunction Is Fully Consistent with this Court's Mandate.

Notwithstanding this Court's explicit disclaimer that it "express[ed] no view on the propriety or scope of any injunctive relief" on remand, and instead declared those "matters committed to the district court's discretion in the first instance," *id.* at 964, Rimini makes the bizarre argument that this Court's mandate somehow precluded the district court from enjoining any conduct that this Court did not explicitly find infringing.  Mot.11.  That argument finds no support in law or logic.

This Court "affirm[ed] the judgment with respect to the copyright infringement claims," 879 F.3d at 953, and repeatedly rejected Rimini's contrary arguments as "without merit," *see id.* at 957-60.  To the extent the Court did not need

to address all aspects of Rimini's conduct to reject Rimini's appellate arguments and affirm the copyright infringement judgment, that does not mean that the district court was required to treat that conduct as if it were non-infringing or was prohibited from enjoining it.  To the contrary, once this Court rejected Rimini's appellate arguments and affirmed the judgment of liability for copyright infringement, that judgment became law of the case, and "the propriety or scope of any injunctive relief" necessary to remedy Rimini's infringement became an issue "committed to the district court's discretion in the first instance." *Id.* at 964.

That is particularly true given the nature of this case, where Rimini's copying was massive and undisputed, and Rimini's only defenses on appeal were that the copying was licensed and, if not, then Oracle engaged in copyright misuse.  Once this Court rejected those arguments, the district court was free to remedy Rimini's massive and unlicensed copyright infringement without confining itself to the specific arguments for affirmance.  Thus, even assuming that the injunction reaches "conduct that this Court did not deem infringing," Mot.13, that is irrelevant.  And while Rimini is free to argue on appeal that the injunction sweeps too broadly, that argument faces a daunting standard of review and has nothing to do with the scope of the mandate.

The cases on which Rimini relies do not suggest otherwise.  Those cases deal with the preclusive effect of judgments in "subsequent litigation."  *City of Colton v.*

13

*Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1004 n.4 (9th Cir. 2010); *accord* Restatement (Second) of Judgments §27. Not one deals with remand proceedings *in the same case*, let alone suggests that only the precise rationale given by the appellate court in rejecting appellate arguments and affirming a district court liability judgment may be followed on remand in fashioning a remedy. The scope of the appellate arguments this Court feels compelled to address to affirm a finding of liability simply does not dictate what the district court can consider in fashioning a remedy. Instead, once this Court rejected Rimini's appellate arguments that its massive copying was licensed, the district court enjoyed substantial discretion to fashion an appropriate injunction.

To the extent Rimini argues that "this Court explicitly held" that certain of Rimini's conduct "was *not* infringing," Mot.13, that argument is baseless. Indeed, Rimini supports that claim only by identifying arguments that it claims this Court "did not consider." Mot.13. Of course, there is an obvious difference between something this Court "did not consider" and something this Court "explicitly held." At any rate, Rimini is not even right about what this Court did and did not consider. The only thing "untethered from this Court's prior decision," Mot.14, is Rimini's characterization of it.

Rimini's arguments regarding Database demonstrate most clearly the flaws in its position. Rimini contends that the district court had no authority on remand to

14

enjoin Rimini from further infringing Oracle's Database products because this Court never "explicitly held" that the Database infringement judgment was correct. But this Court *affirmed* the judgment that Rimini infringed Database on the ground that Rimini *waived* its Database arguments on appeal. 879 F.3d at 960. Taken to its logical conclusion, Rimini apparently could have defeated *any* copyright injunction on remand by waiving all its copyright arguments in the first appeal. That is obviously not the law. To the contrary, the mandate rule "*forecloses* litigation of issues decided by the district court but foregone on appeal or otherwise waived." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (emphasis added).

Rimini also misrepresents this Court's opinion in arguing that the Court "addressed only future-client 'cross-use' of JD Edwards and Siebel." Mot.13. In fact, this Court held:

> [E]ach of the licenses at issue here "pointedly limits copying and use to supporting the '*Licensee*.'" The licenses do not authorize Rimini to "develop products *Rimini* could sell for *Rimini's* financial gain." Any work that Rimini performs under color of a license held by a customer for other existing customers cannot be considered work in support of that particular customer.

879 F.3d at 957. The Court then went on confirm that "[t]he same logic applies to work Rimini performs for unknown, future customers." *Id.* The Court could not have applied "the *same* logic" to *future* clients had it not just set forth that logic as to *existing* ones.

15

Respectfully submitted,

WILLIAM A. ISAACSON
KAREN L. DUNN
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-2727

s/Paul D. Clement
PAUL D. CLEMENT
 *Counsel of Record*
ERIN E. MURPHY
MATTHEW D. ROWEN
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
paul.clement@kirkland.com

JOHN A. POLITO
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000

DAVID B. SALMONS
MORGAN, LEWIS & BOCKIUS LLP
2020 K Street, NW
Washington, DC 20006
(202) 373-6238

*Counsel for Plaintiffs-Appellees*

September 24, 2018