# Exhibit 8
# Excerpts of Rimini's 28(j) Notice of Authorities, filed in *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 18-16554, (ECF Nos. 53-1 and 53-2)

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Mark A. Perry
Direct: +1 202.887.3667
Fax: +1 202.530.9696
MPerry@gibsondunn.com

Client: 79957-00008

August 13, 2019

VIA ECF FILING

Molly Dwyer
Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

Re: Oracle USA, Inc. v. Rimini Street, Inc., No. 18-16554

Dear Ms. Dwyer:

Oral argument in this appeal was heard on July 12, 2019, in Portland, Oregon, before Judges Tashima, Graber, and Owens.

Pursuant to Rule 28(j), Rimini Street, Inc. previously submitted Oracle's June 28, 2019 statement to the district court identifying five practices that Oracle alleges contravene the injunction the Court is considering in this appeal. *See* Dkt. 46-3. To complete the record, Rimini hereby submits its August 5, 2019 response to Oracle's statement regarding these five practices. *See* Exhibit A.

The Court's forthcoming decision in this appeal could moot or materially affect the course of all contempt-related proceedings in the district court. Accordingly, Rimini respectfully submits that the parties and the district court would greatly benefit from the issuance of the Court's decision, at least as to the validity and scope of the permanent injunction, by October 20, 2019—the deadline for Oracle to file any application in the district court regarding Rimini's compliance with the extant injunction (which has not been stayed pending appeal). *See* Dkt. 46-2.

Respectfully submitted,

*/s/ Mark A. Perry*

Mark A. Perry

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

John A. Polito
August 5, 2019
Page 8

was not adjudicated in *Rimini I*. Oracle admitted at summary judgment that its claims in *Rimini I* "concern[ed] only the reproduction right." ECF No. 284 at 9. And the jury was not asked to determine whether Rimini created derivative works.

<u>*Rimini Does Not Engage in So-Called "Cross-Use."*</u> Oracle is incorrect that Rimini reproduces, prepares derivative works from, or uses one licensee's PeopleSoft software or documentation to support other licensees. Ever since Rimini completed the transition to Process 2.0 in July 2014, every Rimini client has had its own, dedicated development environment. Pursuant to Process 2.0, updates are developed in each client's environment to support that particular client, and Oracle code is not copied from one client's environment to a different client's environment.

Rimini supports over 100 PeopleSoft clients, all of which have paid Oracle for a license to PeopleSoft software that allows them to update, modify, and create derivative works from the software—and to hire a third-party support provider like Rimini to do so for them. In some instances, multiple Rimini clients may need the same update (for example, an update that implements a change in how the federal tax rate is calculated in PeopleSoft's payroll module). In such cases, a Rimini developer may begin by accessing Client A's environment to develop and test the update for Client A (sometimes referred to as the "prototype" client). After that work is done, the developer may access Client B's environment to make the same tax rate change. Because the developer has gained on-the-job knowledge by creating the update for Client A, the developer may be able to implement the change for Client B more quickly. But in this process, Rimini is using Client A's environment to develop and test updates for Client A, and is using Client B's environment to develop and test updates for Client B. Rimini is not, as Oracle suggests, using Client A's environment to support Client B.

At times between July 2014 and November 5, 2018, Rimini used certain proprietary software tools to assist with the PeopleSoft update process, including the CodeAnalyzer tool and the Dev Review tool that are referenced in Oracle's allegations. These tools, and their functionality, did not even exist during the *Rimini I* timeframe and cannot be subject to the Injunction. Indeed, these tools are—like Oracle's newly expanded definition of "cross-use"—squarely at issue in *Rimini II* and the subject of multiple, pending summary judgment motions. *See Rimini II*, ECF Nos. 927, 1084. These tools also do not reproduce, create derivative works from, or distribute Oracle copyrighted software of one licensee to support a different licensee, and thus they are lawful in all respects. Nevertheless, in light of the vagueness and ambiguity of the Injunction's terms (an issue the Ninth Circuit is currently considering), and to avoid a costly and protracted compliance proceeding over them, Rimini stopped using the CodeAnalyzer and Dev Review tools on or very shortly after November 5, 2018.