# Exhibit 4

## Excerpts of Opening Brief for Appellant Rimini Street, Inc. filed in *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 18-16554, (ECF No. 12)

No. 18-16554

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

ORACLE USA, INC., a Colorado corporation;
ORACLE AMERICA, INC., a Delaware corporation;
ORACLE INTERNATIONAL CORPORATION, a California corporation,

*Plaintiffs-Appellees*,

*v.*

RIMINI STREET, INC., a Delaware corporation,

*Defendant-Appellant*.

---

On Appeal from the United States District Court
For the District of Nevada
No. 2:10-cv-0106-LRH-VCF

---

**OPENING BRIEF FOR APPELLANT RIMINI STREET, INC.**

---

Blaine H. Evanson
Joseph A. Gorman
Shaun A. Mathur
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612
(949) 451-3805
BEvanson@gibsondunn.com

Mark A. Perry
Jeremy M. Christiansen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
MPerry@gibsondunn.com

*Attorneys for Appellant Rimini Street, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1
JURISDICTIONAL STATEMENT ..........................................................2
ISSUES PRESENTED...............................................................................2
CONSTITUTIONAL AND STATUTORY PROVISIONS...........................2
STATEMENT OF THE CASE...................................................................3
SUMMARY OF ARGUMENT ..................................................................10
STANDARDS OF REVIEW .....................................................................12
ARGUMENT ...........................................................................................13
I. The Permanent Injunction Should Be Reversed ................................13
A. Oracle's Request For Injunctive Relief Is Moot.......................13
B. No Injunction Can Be Sustained On This Record ....................16
1. The Irreparable Injury Requirement Was Not Met ........16
2. The Remaining *eBay* Factors Were Not Satisfied..........27
C. The Injunction As Entered Is Improper ...................................31
1. The Injunction Is Overbroad.........................................31
2. The Injunction Is Vague .............................................46
II. The Attorneys' Fee Award Should Be Reversed ...............................48
A. The District Court Refused To Apportion Fees........................48
1. The Mandate Requires Apportionment ..........................49
2. The Law Requires Apportionment ................................54
B. Oracle Failed To Adduce Apportionment Evidence ................56
1. Oracle Should Receive No Fees ....................................56
2. At Minimum, The Award Should Be Reduced ..............58
CONCLUSION .........................................................................................61

## INTRODUCTION

In a previous appeal, this Court instructed the district court to reconsider its permanent injunction and attorneys' fee award in light of the Court's decision, which reversed all non-copyright claims and substantially narrowed the theories of copyright liability on which the judgment rests. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 964–65 (9th Cir. 2018). On remand, the district court disobeyed the mandate—and violated fundamental equitable, legal, and constitutional principles—by re-imposing essentially the same injunction and exactly the same fee award. Both orders should now be reversed.

The request for injunctive relief is moot because the acts adjudicated as infringing stopped in 2014. Moreover, the court below committed legal error as to each equitable factor, particularly the irreparable injury requirement and its causal nexus component. And the injunction goes far beyond the judgment or the scope of the Copyright Act, for example by prohibiting the made-up idea of "cross-use."

The prevailing party *lost* 23 out of the 24 claims asserted, including every claim against one defendant and all claims involving intentional misconduct. The sole remaining claim involves *innocent* conduct for which the jury awarded a small fraction of the damages sought. The district court's refusal to apportion the fee award to account for this marked lack of success requires reversal or, at minimum, a substantial reduction of the fee award.

fore. ER13–16; ER18–35. In the court's irreparable harm analysis, it contradicted the jury's finding of innocent infringement, finding instead that Rimini acted with "conscious disregard for Oracle's software copyrights." ER23. With respect to the amount of fees, the court did not acknowledge this Court's determination of Oracle's "more limited success," and instead found that there is "no basis to further reduce this award in light of the Ninth Circuit opinion." ER33.

## SUMMARY OF ARGUMENT

**I.** The permanent injunction should be reversed.

**A.** Oracle's request for injunctive relief is moot because the acts adjudicated as infringing stopped long ago. After summary judgment and long before trial, Rimini revised its support processes to halt the specific acts of "local hosting" and "cross-use" that Oracle challenged as infringing. The *uncontroverted* evidence establishes that Rimini has not engaged in those acts since July 2014, and Rimini has initiated a second lawsuit seeking a declaration that its revised processes are lawful. Oracle presented no evidence that Rimini might return to its prior processes.

**B.** No injunction can be sustained on this record under the *eBay* factors.

**1.** The district court committed two legal errors in evaluating irreparable harm.

**a.** The district court was required to find that the specific acts adjudicated as infringing *caused* Oracle's asserted injury. But the district court failed to analyze

(or even mention) this "causal nexus" requirement. Nor is there legally sufficient evidence in the record to establish a causal nexus.

**b.** Enjoining an adjudicated innocent infringer is unprecedented and inequitable. The district court disregarded the jury's innocent infringement finding, and premised its irreparable harm analysis on its contrary finding that Rimini acted with "conscious disregard" of Oracle's software copyrights—in violation of the Seventh Amendment's Reexamination Clause.

**2.** The remaining *eBay* factors also preclude an injunction. Oracle has already received damages in excess of $58 million (with interest), and this legal relief is more than adequate. While Rimini would be harmed if the injunction were allowed to stand, Oracle would suffer no harm in the absence of an injunction. The public interest would not be served because Oracle wants to initiate contempt proceedings against Rimini based on its current support processes, but the legality of those processes is being litigated in a separate case.

**C.** The injunction as entered is unlawfully overbroad and vague.

**1.** The injunction prohibits Rimini from engaging in all forms of "cross-use"—a concept Oracle made up for this litigation, but which is not proscribed by Oracle's licenses or the Copyright Act. The injunction also enjoins conduct that this Court recognized is not infringement (such as "local hosting" of JD Edwards and Siebel) and conduct that this Court declined to address during the previous ap-

software on "any computer systems other than a specific licensee's own computer systems." ER15. This language mirrors the injunction's facilities limitation for PeopleSoft (ER14), but the JD Edwards and Siebel licenses do *not* contain a facilities restriction like the PeopleSoft licenses. ER1067–82. Unlike the JD Edwards and Siebel licenses, the PeopleSoft exemplar licenses "contain[] *an additional limitation* about the licensee's facilities." 879 F.3d at 959 (emphasis added). The PeopleSoft licenses are "more restrictive[] than the J.D. Edwards and Siebel licenses" *because* the PeopleSoft licenses "limit[] copying the licensed software to only the licensee's facilities." *Id.* The district court's decision judicially re-writes the JD Edwards and Siebel licenses, at Oracle's urging, and is an abuse of discretion.

**c. The injunction improperly enjoins conduct far beyond that which was decided in the previous appeal.**

This Court's judgment is conclusive only as to the narrow categories of conduct actually decided in the previous appeal. Restatement (Second) of Judgments § 27 cmt. o (1981); *see City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1004 n.4 (9th Cir. 2010); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 897–98 (2d Cir. 1997); *see also* ER258 (Oracle's counsel agreeing that "the issues [this Court] reached are what are binding in the future litigation between Oracle and Rimini or in the *Rimini II* case"); ER4 (district court agreeing that "several of the legal and factual issues raised in the prior appeal" will be addressed in the

"second separate action between the parties"). And an injunction may "be no broader than the infringement" as determined by *this* Court. 4 *Nimmer on Copyright* § 14.06[C][1][a]; *see also Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (issue is "actually litigated and adjudicated," and thus part of the judgment, when "the parties present[] arguments on the issue, and the district court [makes] a final ruling which [is] appealed and affirmed by this court").

This Court sustained the liability verdict *only* on the following narrow bases:

- PeopleSoft: "Local hosting" was not within the exemplary license;
- JD Edwards & Siebel: "Cross-use" as to potential future clients was not within the exemplary licenses; and
- Database: Reliance on the customer licenses was waived.

*See* 879 F.3d at 956–60, 965. Yet, the district court's injunction extends much further.

For instance, the injunction prohibits Rimini from "us[ing] PeopleSoft software … on one licensee's computer systems to support … [or] for the benefit of any other licensee"—in other words, all forms of so-called "cross-use." *See* ER14. This Court could have ruled on "cross-use" as to PeopleSoft, as Rimini requested, but at Oracle's urging, the Court instead upheld liability only "on the narrow ground of 'local hosting,'" and expressly declined to rule on whether "cross-use" was permitted by the PeopleSoft license. 879 F.3d at 960 n.6. Thus, "cross-use"

as to PeopleSoft is *not* part of this Court's judgment, is an open question in *Rimini II*, and may not be enjoined.

The injunction also prohibits the creation of "derivative works" and "distribution" for every product line. ER14–16. But the "derivative works" and "distribution" rights were *never* litigated, let alone *finally* adjudicated, in *Rimini I*. In arguing that derivative works were decided below, Oracle has cited the district court's jury instruction that the PeopleSoft "licenses prohibited Rimini Street from copying or preparing derivative works from PeopleSoft software." ER642. But construing a license as prohibiting certain conduct is not the same as *finding* that the prohibited conduct occurred. The parties never litigated, and neither the jury nor the district court ever found, that Rimini violated the derivative works right. In fact, at summary judgment, Oracle expressly disavowed any reliance on the derivative works right and stated that its claims "concern[] *only the reproduction right*." D.Ct. Dkt. 284 at 9 (emphasis added).

The liability instructions make it even clearer that the jury was precluded from basing liability on derivative works. The instructions laid out three elements to infringement: (1) ownership of the copyright, (2) engaging in one of the exclusive rights (reproduction, derivation, distribution), and (3) permission (*i.e.*, license). ER637. The parties stipulated to ownership. The jury was then instructed that Oracle had "proven the second element" of the claim because the parties

agreed that Rimini "*copied*" the software. *Id.* (emphasis added). Nowhere does it say that Oracle proved derivation or distribution. Nor was the jury asked to determine whether Rimini created derivative works or distributed. The jury's only job was to determine whether Rimini had "an express license to *copy* these copyrighted works." ER637 (emphasis added); *see also* ER455–56 (verdict).

The injunction should be reversed because it encompasses derivation and distribution, which were not the basis of liability. *See Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003).

**d. A court may not constitutionally enjoin "access" to source code.**

The injunction states that "Rimini Street shall not … *access* J.D. Edwards software source code" (ER15 (emphasis added); *see also id.* (Siebel)), but the jury was never instructed that "accessing" source code was a basis of liability, and Rimini was not held liable for doing so. Indeed, "access" is not an exclusive right under the Copyright Act that could give rise to infringement liability (it is at most a question of contract law)—let alone an injunction. To the contrary, "copyright law" was specifically designed "to encourage ultimate *public access to the creative work of the author*" (*Garcia v. Google, Inc.*, 786 F.3d 733, 745 (9th Cir. 2015) (en banc) (emphasis added)), and to make "*instantly available* for public exploitation" "every idea, theory, and fact in a copyrighted work" (*Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (emphasis added)).

The injunction's prohibition against accessing Oracle source code also violates the First Amendment. *See Eldred*, 537 U.S. at 219; *Garcia*, 786 F.3d at 747; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322–29 (Fed. Cir. 2016) (Mayer, J., concurring). In our free society, the government cannot prohibit its citizens from reading a copyrighted book. It is "well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564–65 (1969) ("a State has no business telling a man … what books he may read or what films he may watch"). To be sure, the government *may* stop someone from *copying* the copyrighted book, as such prohibitions are fairly within Congress's power to "secur[e] for limited times to authors … the exclusive right to their … writings." U.S. Const. art. I, § 8, cl.8. The Copyright Clause permits exclusivity in "expression," which can be copyrighted, but not "ideas" or information, which "are free" from restraint. *See Eldred v. Reno*, 239 F.3d 372, 376 (D.C. Cir. 2001), *aff'd*, 537 U.S. 186 (2003); *see also N.Y. Times Co. v. United States*, 403 U.S. 713, 726 n.* (1971) (Brennan, J., concurring) ("the copyright laws, of course, protect *only the form of expression* and not the ideas expressed" (emphasis added)).

Prohibiting *access* to copyrighted materials is beyond the government's power, and thus beyond the power of the federal courts to enjoin. "[T]he Framers intended copyright itself to be the engine of free expression" (*Harper & Row Pub-*

*lishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985)), but Oracle proposes to use it for the exact opposite purpose and prohibit mere "access" to expression. That violates not only the Copyright Act, but also the First Amendment.

**2. The Injunction Is Vague.**

The injunction fails to provide Rimini with "fair notice" of what conduct is enjoined, in violation of Federal Rule of Civil Procedure 65(d) and the Fifth Amendment's Due Process Clause. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013); *Stone v. Godbehere*, 894 F.2d 1131, 1133 (9th Cir. 1990). An injunction must be "reasonably clear so that ordinary persons will know precisely what action is proscribed." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985). A vague injunction "leave[s] a litigant uncertain as to what he may or may not do without being in contempt of court." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1525 (9th Cir. 1983).

As just one example of this vagueness, the injunction restricts Rimini's use of Oracle's PeopleSoft software to support a specific licensee's own "internal data processing operations." ER14; *see* ER180; ER182 (objecting to this provision). The district court said that this meant "normal use of the software," which precluded copies of testing and development environments (ER1272); but that ruling does not survive the first appeal, where this Court recognized that the provision of support *requires* copying of software. 879 F.3d at 955–56. Moreover, the meaning of

this contractual phrase is among the issues that the parties are currently litigating in *Rimini II*. If nothing else, this vague provision is not grounded in any of the exclusive rights secured by the Copyright Act; it is simply an instruction to obey the license terms, but "blanket injunctions to obey the law are disfavored." *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir. 2004); *see also NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941).

Rimini submitted paragraph-by-paragraph objections to Oracle's proposed injunction, identifying specific terms that fail to provide fair notice of what conduct is enjoined. ER179–84. The district court did not respond to, or even *acknowledge*, Rimini's detailed objections to the injunction. ER18–27. That is reversible error. "Abuse-of-discretion review is respectful, but appellate deference is not unbridled." *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) ("abuse of discretion" when district court "ignore[s]" material factors relevant to injunctive relief).

For all these reasons, the district court's order of injunction should be reversed.

## II. The Attorneys' Fee Award Should Be Reversed.

The district court disregarded this Court's explicit directive to "reconsider[]" the attorneys' fee award on remand "in light of Oracle's *more limited success at litigation*." 879 F.3d at 965 (emphasis added).

### A. The District Court Refused To Apportion Fees.

Under the Copyright Act, district courts have discretion to award the prevailing party a "reasonable attorney's fee." 17 U.S.C. § 505. That provision must be construed *in pari materia* with other federal fee-shifting statutes (*CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016)), which make clear that what is "reasonable" depends "on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). And where, as here, the prevailing party "succeeded on only some of [its] claims for relief," the amount of the award *must* be apportioned to account for the prevailing party's "limited success." *Id.* at 431, 434. Indeed, "the degree of success obtained" is "the most critical factor" in determining the reasonableness of a fee award. *Id.* at 436. Thus, "[i]t is an *abuse of discretion* for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee awarded." *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994) (emphasis added).

Oracle has now lost on every claim it asserted against Ravin, and on 11 of 12 claims it asserted against Rimini. Indeed, Oracle America, which does not own

(ER528–37) as well as punitive damages to punish Rimini and Ravin for their alleged "conscious disregard" of Oracle's rights. ER506–07.

Virtually all of Oracle's contentions failed. Oracle abandoned many of its claims after engaging in extensive discovery. The jury concluded that Rimini's infringement was "innocent," and that Oracle was entitled to a $35.6 million fair-market value license. ER460. The jury rejected nearly all of Oracle's remaining claims, including claims alleging that Rimini and Ravin engaged in intentional or willful conduct. ER455–68. In all, after trial, Oracle had prevailed on only seven of its 24 total claims, and recovered $50 million of the $245.9 million it sought in compensatory damages.

Despite Oracle's limited success, the district court awarded Oracle $28.5 million in fees jointly and severally against *both* Rimini *and* Ravin because "Oracle won a $50 million verdict against *defendants*—including $35,600,000 for copyright infringement *and* $14,427,000 for the state computer access claims." ER427 (emphases added).

On appeal, this Court narrowly upheld the jury's infringement verdict against Rimini on only three of the theories Oracle presented below. *See* 879 F.3d at 956–960 & n.6. This Court also reversed all hacking liability—eliminating *all* liability against Ravin and *all* liability for any intentional conduct by Rimini—as well as a state-law unfair competition claim. *Id.* at 962.

As for fees, this Court observed that the district court relied on "the fee-shifting provisions of the Copyright Act *and* the state computer laws," and levied fees against Rimini and Ravin "severally and equally" even though Ravin "was not found liable for copyright infringement." 879 F.3d at 965 (emphasis added). Accordingly, this Court "reverse[d] the judgment with respect to Ravin's liability for fees," "vacate[d] the fee award," and "remand[ed] for reconsideration in light of Oracle's *more limited success at litigation*." *Id.* (emphasis added).

After losing over and over again, Oracle's final degree of success could only charitably be described as "limited," and it is now unquestionably "more limited" than before the appeal. Each successive phase of litigation winnowed Oracle's case in terms of claims and monetary recovery available. Oracle began with 24 claims against two defendants, and prevailed on one claim against one defendant—recovering only a small fraction of the damages Oracle sought. At the end of the day, Oracle lost far more than it won.

But despite this Court's express recognition that Oracle attained only "limited success" after appeal (879 F.3d at 965), the district court concluded that "Oracle is entitled to the same award of fees previously issued by the court." ER34. In determining the amount of fees, the court did not even acknowledge this Court's "limited success" determination. And the district court made only passing reference to the hacking claims, even though its previous fee award was expressly pred-

icated on those claims, and even though this Court cited them in remanding for reconsideration.

The district court justified its refusal to apportion based on its assertion that "this action was first and foremost a copyright infringement action," regardless of this Court's "reversal on the state law [hacking] claims." ER34. This was erroneous. The district court dismissed Oracle's failed efforts on the vast majority of its claims on the theory that they "were derivative claims for which Oracle could not receive any additional monetary relief." ER29. That cannot be squared with Oracle's own request to the jury, which posited "nonduplicative amounts" of damages for Oracle's separate claims before the jury. ER604. Oracle also defeated Rimini's argument that the state-law tort claims were preempted by the Copyright Act by arguing that they were *not* duplicative of the copyright claims and instead "protect qualitatively different rights." D.Ct. Dkt. 957 at 28–29. At the end of trial, Oracle sought hundreds of millions of dollars in damages for intentional interference and inducing breach of contract, neither of which had anything to do with copyright infringement. ER604. And even though Oracle spent a great deal of time and money trying to prove its non-copyright claims, the jury rejected *all of them* except the hacking claims, and those were reversed by this Court.

Oracle alleged that Rimini engaged in willful, intentional, and malicious conduct, and that Ravin and Rimini repeatedly lied about their conduct to steal cus-

tomers from Oracle. *See* D.Ct. Dkt 747. Oracle's primary argument at trial was that Rimini engaged in "fraud" (ER496) and built its business on a "wall of lies" (ER483), and that Ravin knew about and "directed" Rimini's intentional misconduct (ER506–08). Oracle called Rimini and Ravin liars 72 times during closing argument. ER577. None of this had any relevance to Oracle's copyright infringement claim—and to the extent it did, the jury rejected it in finding that Rimini's infringement was "innocent."

The hacking claims alone comprised much of the discovery effort and trial evidence. Some Oracle witnesses, such as Christian Hicks and David Renshaw, testified *only* on hacking. In its previous fees order, the district court held Ravin "'severally and equally' liable for the award" *because of* those hacking claims. 879 F.3d at 965. On remand, the court barely considered the hacking claims.

Oracle's attacks on Ravin at trial were relentless. Oracle sued Ravin as an individual defendant, and told the jury repeatedly that "CEOs need to be accountable under the law." ER527. Oracle's entire intentional interference theory was that Rimini's purported lies "originated with … Seth Ravin." ER500. Ravin testified for nearly *four days* at trial (several times longer than any other witness)—most of which was dedicated to cross-examination by Oracle. Oracle then called Ravin out by name *115 times* during closing argument. ER474–561; ER596–610. Oracle was insistent that Ravin "should be on the hook for the entire 112.1 million

[in infringement damages], not just [Rimini]." ER603. Yet, Ravin has been absolved of all liability.

The district court's order effectively held that Oracle achieved the same amount of success after the appeal as it did before appeal. That cannot be squared with this Court's decision in the first appeal.

**2. The Law Requires Apportionment.**

The district court refused to reconsider the fee award on remand because Oracle's single copyright claim was "related" to its unsuccessful claims. Oracle previously made this argument on appeal in support of affirmance (Answering Brief for Appellees, No. 16-16832, Dkt. 50 at 55), and this Court implicitly rejected that argument in vacating and remanding the prior fee award (879 F.3d at 965). But *even if* Oracle's successful and unsuccessful claims were related, the district court was *still* required to apportion and "consider the relationship between the extent of success and the amount of the fee award." *Hensley*, 461 U.S. at 438. The Supreme Court has held that where "a plaintiff has achieved only partial or *limited success*, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate *may be an excessive amount.* This will be true *even where the plaintiff's claims* [*are*] *interrelated*." *Id.* at 436 (emphases added); *see also McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (district court