BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON (pro hac vice)
KAREN DUNN (pro hac vice)
2001 K Street, NW
Washington, DC 20006
Telephone:    202.223.7300
Facsimile:    202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

BOIES SCHILLER FLEXNER LLP
BEKO O. REBLITZ-RICHARDSON (pro hac
vice)
SEAN P. RODRIGUEZ (pro hac vice)
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone:    415.293.6800
Facsimile:    415.293.6899
srodriguez@bsfllp.com
brichardson@bsfllp.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (pro hac vice)
JOHN A. POLITO (pro hac vice)
SHARON R. SMITH (pro hac vice)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual, <br><br> Defendants. | Case No. 2:10-cv-0106-LRH-VCF <br><br> **ORACLE'S MOTION FOR SANCTIONS PURSUANT TO RULE 37; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br><br> **REDACTED** |

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.  Rimini's Infringing Conduct ............................................ 3

    B.  Rimini's History of Spoliation ......................................... 3

    C.  The Permanent Injunction ............................................... 4

    D.  TransferFiles and Rimini's Deletion Program ............................ 5

    E.  Rimini's Lies About Destroying Evidence (Again) ........................ 7

        1.  Rimini's Destruction of Over ▮▮▮▮ Files ............................ 7

        2.  Rimini's False Claim that the Deleted Files Continue to Exist. ............. 9

        3.  Rimini Modifies Its Deletion Tool ................................. 10

III.  LEGAL STANDARD ............................................................ 11

IV.  ARGUMENT .................................................................. 12

    A.  Rimini Has Spoliated Evidence ......................................... 12

        1.  Rimini Had A Duty To Preserve The AFW FTP Files. ................... 12

        2.  The AFW FTP Files Were Lost Because Rimini Failed To
Undertake Reasonable Steps To Preserve Them. .................... 14

        3.  The Spoliated Evidence Cannot Be Restored Or Replaced. .................... 16

    B.  Rimini's Spoliation Was Intended To Deprive Oracle Of The
Information's Use In This Litigation And Merits Rule 37(e)(2) Sanctions......... 18

        1.  Rimini's Actions Evince Intentionality. ................................. 18

        2.  A Rebuttable Presumption Will Remedy Rimini's Willful
Spoliation. ..................................................... 20

    C.  At Minimum, The Court Should Correct The Prejudice Against Oracle. .......... 21

        1.  Rimini's Spoliation Has Prejudiced Oracle. ........................... 22

        2.  The Court Should Consider Evidence Of Rimini's Spoliation In
Determining Rimini's Compliance With The Injunction. ...................... 22

3.    The Court Should Consider Alternative Remedies To Cure Rimini's Prejudicial Conduct.................................................................. 23

D.    The Court Should Order Rimini To Reimburse Oracle's Fees And Costs .......... 24

V.    CONCLUSION................................................................................................................ 24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors*,

4

 69 F.3d 337 (9th Cir. 1995) ................................................. 22

5

*Apple Inc. v. Samsung Elecs. Co.*,

6

 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ................................. 14

7

*Arista Records LLC v. Usenet.com, Inc.*,

8

 608 F. Supp. 2d 409 (S.D.N.Y. 2009)................................... 14

9

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,

10

 2016 WL 6609208 (C.D. Cal. July 12, 2016),

11

 *R&R adopted,* 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016).................................. 23

12

*Brown v. Albertsons, LLC*,

13

 2017 WL 1957571 (D. Nev. May 11, 2017)......................................... 11, 14, 22, 23

14

*Bull v. UPS*,

15

 665 F.3d 68 (3d Cir. 2012)................................................... 16

16

*Cardinale v. Smith's Food & Drug Ctrs., Inc.*,

17

 2019 WL 2425698 (D. Nev. Jan. 10, 2019)......................... 22

18

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,

19

 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019)......................... 18

20

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,

21

 2014 WL 4748139 (W.D. Wash. Aug. 8, 2014) ................... 13

22

*Perez v. U.S.P.S.*,

23

 2014 WL 10715267 (W.D. Wash. Sept. 3, 2014) ................ 21

24

*Gaina v. Northridge Hosp. Med. Ctr.*,

25

 2018 WL 6258895 (C.D. Cal. Nov. 21, 2018).................................22-23

26

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,

27

 497 F. Supp. 2d 627 (E.D. Pa. 2007) ................................... 14

28

*HP Tuners, LLC v. Sykes-Bonnett*,

2019 WL 5069088 (W.D. Wash. Sept. 16, 2019),

*R&R adopted as modified,* 2019 WL 5064762 (W.D. Wash. Oct. 9, 2019) ........................... 18

*In re Krause*,

367 B.R. 740 (Bankr. D. Kan. 2007) ................................................................................. 13

*In re Napster, Inc. Copyright Litig.*,

462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................. 1, 11, 14

*LaJocies v. N. Las Vegas*,

2011 WL 1630331 (D. Nev. Apr. 28, 2011) ...................................................................... 12

*Leon v. IDX Sys. Corp.*,

464 F.3d 951 (9th Cir. 2006) ..................................................................................... 19-20

*Maggio v. Zeitz*,

333 U.S. 56 (1948) ............................................................................................................ 23

*Matter of Hornblower Fleet, LLC*,

2019 WL 1506870 (S.D. Cal. Apr. 5, 2019) ..................................................................... 21

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,

2016 WL 2957133 (N.D. Cal. May 23, 2016) ................................................................... 23

*Mfg. Automation & Software Sys., Inc. v. Hughes*,

2018 WL 5914238 (C.D. Cal. Aug. 20, 2018) .................................................................. 12

*Micron Tech., Inc. v. Rambus, Inc.*,

645 F.3d 1311 (9th Cir. 2011) .......................................................................................... 22

*Moody v. CSX Transp., Inc.*,

271 F. Supp. 3d 410 (W.D.N.Y. 2017) ............................................................................. 19

*Newberry v. Cty. of San Bernardino*,

750 F. App'x 534 (9th Cir. 2018) .................................................................................. 11-12

*NuVasive, Inc. v. Kormanis*,

2019 WL 1171486 (M.D.N.C. Mar. 13, 2019) .................................................................. 20

*OmniGen Research v. Yongqiang Wang*,

321 F.R.D. 367 (D. Or. 2017) ......................................................................... 12, 19

*Oracle USA, Inc. v. Rimini Street, Inc.*,

783 F. App'x 707 (9th Cir. 2019) ......................................................................... 4

*Oracle USA, Inc. v. Rimini Street, Inc.*,

879 F.3d 948 (9th Cir. 2018) ......................................................................... 4

*Paisley Park Enters., Inc. v. Boxill*,

330 F.R.D. 226 (D. Minn. 2019) ......................................................................... 24

*Porter v. City & Cty. of San Francisco*,

2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ......................................................................... 18

*Schnider v. Providence Health & Servs.*,

2018 WL 1558554 (D. Alaska Mar. 9, 2018) ......................................................................... 14

*Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*,

2016 WL 7115911 (D. Alaska Dec. 6, 2016) ......................................................................... 21

*Shamis v. Ambassador Factors Corp.*,

34 F. Supp. 2d 879 (S.D.N.Y. 1999) ......................................................................... 15

*Skyline Steel, LLC v. PilePro, LLC*,

101 F. Supp. 3d 394 (S.D.N.Y. 2015) ......................................................................... 14

*Small v. Univ. Med. Ctr.*,

2018 WL 3795238 (D. Nev. Aug. 9, 2018) ......................................................................... 12

*Spencer v. Lunada Bay Boys*,

806 F. App'x 564 (9th Cir. 2020) ......................................................................... 24

*Spencer v. Lunada Bay Boys*,

2018 WL 839862 (C.D. Cal. Feb. 12, 2018) ......................................................................... 24

*Stedeford v. Wal-Mart Stores, Inc.*,

2016 WL 3462132 (D. Nev. June 24, 2016) ......................................................................... 12

*Ungar v. City of New York*,

329 F.R.D. 8 (E.D.N.Y. 2018) ......................................................................... 18, 21

*United Factory Furniture Corp. v. Alterwitz,*

    2012 WL 1155741 (D. Nev. Apr. 6, 2012) ............................................................................ 11

*United States v. Kitsap Physicians Serv.,*

    314 F.3d 995 (9th Cir. 2002) .............................................................................................. 11

*Univ. Acct'g Serv., LLC v. Schulton,*

    2019 WL 2404512 (D. Or. June 7, 2019) ............................................................................ 14

*Victor Stanley, Inc. v. Creative Pipe, Inc.,*

    269 F.R.D. 497 (D. Md. 2010) ............................................................................................ 20

*WeRide Corp. v. Kun Huang,*

    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .......................................................... 13, 19, 20

*Woods v. Scissons,*

    2019 WL 3816727 (D. Ariz. Aug. 14, 2019) .................................................................. 20, 23

*Zubulake v. UBS Warburg LLC,*

    220 F.R.D. 212 (S.D.N.Y. 2003) .................................................................................... 1, 11


**Rules**

Fed. R. Civ. P. 37(e) ......................................................................................................... passim


**Treatises**

8B Wright & Miller, *Fed. Prac. & Proc.* (3d ed. Aug. 2019 Update)......................................... 12


**Other Authorities**

Fed. R. Civ. P. 37 Advisory Comm.'s note, 2015 amend......................................... 18, 21, 22, 23

## NOTICE OF MOTION AND MOTION

Pursuant to Federal Rule of Civil Procedure 37(e) and Local Rule IA 11-8, Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively "Oracle") respectfully move the Court for an order directing that sanctions be entered against Defendant Rimini Street, Inc. ("Rimini") for failing to comply with its document preservation obligations.  This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting Declarations of Sean P. Rodriguez ("Rodr. Decl.") and Barbara Frederiksen-Cross ("F-C Decl.") and exhibits thereto, the entire record in this action, and such other matters and argument as may be presented to the Court.

## I.      INTRODUCTION

Rimini should be sanctioned for spoliating evidence by creating, deploying, and failing to suspend a data-deletion program (the "Deletion Program") that destroyed some of the most critical evidence relating to Rimini's failure to comply with this Court's November 5, 2018 permanent injunction (the "Injunction").  After Rimini infringed 93 copyrights, the Court issued the Injunction to prohibit copyright infringement in the materials Rimini distributes to customers. Rather than preserve the actual materials that Rimini distributed to its customers, Rimini wrote the Deletion Program to delete the files Rimini ***admittedly sent*** to its customers from its own systems.  The full extent of Rimini's spoliation is unknown; Rimini cannot identify everything it deleted.  At a minimum, Oracle has confirmed that Rimini deleted more than ▮▮▮▮ files.

Rimini's deletion of this critical evidence is remarkable for several reasons.  First, it is black letter law that a party involved in (or reasonably anticipating) litigation must preserve evidence and suspend the routine destruction of evidence.  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).  Here, Rimini not only *wrote and deployed* the "Deletion Program" in the midst of this litigation, it failed to suspend it for nine months after the Injunction issued.  Second, the destroyed evidence goes to the heart of the Injunction, which places legal restrictions on distribution of software patches and fixes: Rimini will likely argue in the forthcoming contempt proceeding that the files that it admittedly sent to customers comply with the Injunction because

they contain no Oracle copyrightable expression, but Rimini has *destroyed* more than ▮▮▮ of these files.  Rimini cannot proffer a defense based on the contents of files it intentionally destroyed.  Third, Rimini had no reasonable business justification for destroying this evidence, as the burden of preservation was *de minimis*.  Fourth, Rimini destroyed this evidence after being sanctioned *in this case* for spoliation, and after paying tens of millions of dollars in attorneys' fees because of its "significant litigation misconduct."  ECF No. 1164 at 14.

Rimini's excuses for its spoliation are meritless.  Rimini's initial position was to state falsely that it was not destroying evidence—but as in the past, when Rimini was caught in a lie, it changed its story.  Next, Rimini asserted that it could locate copies of all the files that it destroyed, but that too was untrue.  Rimini then asserted that it was certain that the files it could not locate comply with the Injunction, but no litigant may destroy thousands and thousands of files and create a self-serving story about what they contained—and here, Rimini is not a typical litigant, but rather, a repeated spoliator of evidence and adjudicated copyright infringer.  Finally, lacking any other excuse, Rimini asserted that it should not have to bear the cost of preserving these files—a meritless assertion in litigation of this size and complexity.  In any event, the law does not allow any party to destroy evidence first and then assert a claim of burden thereafter.

Many motions for sanctions address close calls or inadvertent failures to suspend the destruction of tangential or cumulative evidence.  This is not such a motion.  Rimini has once again deliberately destroyed evidence that would demonstrate its misconduct.  Accordingly, Oracle respectfully requests that the Court impose appropriate sanctions under Federal Rule of Civil Procedure 37(e)(2), including (but not limited to) a presumption that the destroyed files would have demonstrated Rimini's cross-use.  In the alternative, Oracle respectfully requests that the Court impose sanctions pursuant to Rule 37(e)(1) in order to cure the prejudice to Oracle, including (but not limited to) consideration of Rimini's spoliation in the process of adjudicating Oracle's forthcoming Motion for an Order to Show Cause ("MSC").

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Rimini's Infringing Conduct

Oracle initiated this action on January 25, 2010, filing suit against Rimini and its CEO Seth Ravin to stop Rimini's infringing copying of Oracle copyright-protected software programs, including PeopleSoft, J.D. Edwards, and Siebel-branded Enterprise Software products.  ECF No. 1.  On October 13, 2015, after two summary judgment orders in Oracle's favor and a month-long trial on the remaining factual issues, the jury found that Rimini infringed 93 of Oracle's copyrights on PeopleSoft-, J.D. Edwards-, Siebel-, and Oracle Database-branded software and support materials.  ECF No. 896.  As this Court concluded, "Rimini Street's business model from 2006, and up until at least the court's summary judgment orders in February 2014, was built entirely on its infringement of Oracle's copyrighted software.  Rimini Street would not have achieved its current market share and exceptional revenue growth without its infringing conduct."  ECF No. 1164 (the "Injunction Order") at 6.

### B.     Rimini's History of Spoliation

In January 2010, shortly before this litigation was filed, Rimini's employees deleted a library of improperly obtained Oracle software that Rimini had stored on its internal servers.  ECF No. 466 (the "First Spoliation Order").  Rimini did so long after it anticipated litigation with Oracle and conceded that the information in that software library was relevant.  After deleting those files, Rimini falsely represented that it never maintained a software library.  *Id.* at 18.

Magistrate Judge Leen granted Oracle's motion for spoliation sanctions on March 29, 2013.  *Id.* at 1.  Judge Leen found that Rimini knowingly and willfully deleted its software library, and expressly held that "it is no defense that Rimini deleted the software library to save storage space."  *Id.* at 7.  To remedy Rimini's spoliation, the Court ordered that the trial jury be instructed "that Rimini breached its duty to preserve relevant evidence when it deleted the software library in January 2010, knowing that Oracle was likely to file a lawsuit against it for alleged illegal activity in copying and using Oracle's software, and knowing the software library contained evidence potentially relevant to this lawsuit."  *Id.* at 18.

### C.   The Permanent Injunction

On September 21, 2016, the Court entered a permanent injunction barring Rimini from, among other things, engaging in cross-use.  ECF No. 1049.  On appeal, the Ninth Circuit affirmed all of the Court's and jury's findings relating to Rimini's copyright infringement. *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 953-60, 964 (9th Cir. 2018).  On August 15, 2018, the Court reentered the operative permanent injunction in substantially unaltered form. ECF No. 1166.  Rimini again appealed the Court's order and requested an emergency stay of the Injunction.  No. 18-16554, ECF Nos. 4, 12 (9th Cir.).  On November 5, 2018, the Ninth Circuit denied Rimini's stay request.  ECF No. 1180.  The Injunction took effect that same day.  The Ninth Circuit subsequently affirmed the portions of the Injunction relevant to this Motion. *Oracle USA, Inc. v. Rimini Street, Inc.*, 783 F. App'x 707 (9th Cir. 2019).

The Injunction requires that "Rimini Street shall not distribute PeopleSoft software or documentation or any derivative works created from or with PeopleSoft software or documentation."  Injunction ¶ 3.  It bars Rimini from "reproduc[ing], prepar[ing] derivative works from, or us[ing] a specific licensee's PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations."  *Id.* ¶ 4.  Nor may Rimini "reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee."  *Id.* ¶ 6.  And Rimini must not "reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems."  *Id.* ¶ 5.

Oracle reminded Rimini of its preservation obligations throughout the Injunction compliance period.  In response, Rimini has repeatedly claimed that it "has been complying, and will continue to comply, with its obligation to preserve documents and other materials related to its support for the Oracle products at issue in the ongoing litigation."  Rodr. Decl., Ex. A (Feb. 7, 2019 Vandev. Letter).

### D.     TransferFiles and Rimini's Deletion Program

For several years, Rimini has used a software program called the Automated Framework ("AFW") to copy PeopleSoft software and support materials to its customers' systems.  *See Rimini II*, ECF No. 904-3, Decl. of Christian B. Hicks ¶ 6 (citing § 6.1.1).  AFW includes a suite of tools designed by Rimini's in-house engineers.  ECF No. 1326, F-C Rept. ¶¶ 30, 108.

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████  ECF No. 1326, F-C Rept. ¶¶ 209, 218; Rodr. Decl., Ex. B (*Rimini II*, Rimini's 3-27-2018 4th Supp. Response to Interrog. No. 2) at 26, 38; *id.*, Ex. C (*Rimini II,* Feb. 23, 2018 Depo. of Jim Benge) at 232-235; *id.*, Ex. D (*Rimini II,* Feb. 28, 2018 Depo. of Rick Frank) at 157:7-15.  ██████████ ████████████████████████████████████████████████████.  *Id.* at 162:23-25.  ████████████████████████ ████████████████.  ECF No. 1326, F-C Rept. ¶ 218.  ████████████████████████ ████████████████████████.  *Id.*

During the Injunction compliance period, Rimini has relied primarily on a separate AFW subprogram called TransferFiles to copy PeopleSoft files from Rimini's systems to customer-associated environments.  ECF No. 1331-1, F-C Rept. ¶ 225.  Using TransferFiles, Rimini developers ████████████████████████████████████████████████ ████████████████████████████████ then distribute those files to customers.  F-C Decl., Ex. 1 ¶¶ 127-133, 334, 385; ECF No. 1326, F-C Rept. ¶ 161.  Rimini's use of TransferFiles ████ ████████████████████████████████████████ after the Injunction went into effect.

TransferFiles works in tandem with Rimini's Deletion Program, called ████████████████████████████████ which seeks out files distributed using TransferFiles and destroys them.  F-C Decl., Ex. 1 ¶¶ 386-88, 393.[1]  TransferFiles and the Deletion Program

---

[1] Files distributed using FTP technology remain on an FTP server indefinitely until they are affirmatively deleted.  F-C Decl., Ex. 1 ¶ 385.  FTP technology does not differentiate between files that have been downloaded from the FTP server and those that have not.

1  operate as follows: ████████████████████████████████████

2  ████████████████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ██████████████████████████████████████████

6  ████████████████████████████████████████

7  ████████████████████████████████████████████

8  ████████████████████████ *Id.* ████████████████████████████

9  ████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████ *Id.* ¶¶ 136,

13 387-88.  Via these computer programs, Rimini distributes files to its customers, keeps copies of

14 the distributed files on Rimini's systems, confirms the customers have received the files, and

15 then deletes the copies it distributed from Rimini's systems.  As a result, the files that Rimini has

16 sent to its customers are deleted from Rimini's systems.

17        Had Rimini suspended the Deletion Program, it would have possessed a single repository

18 of more than ██████ files distributed to customers.  The repository would have permitted Oracle

19 and the Court to test Oracle's claim that Rimini is engaged in improper cross-use and would have

20 illustrated the scope of that cross-use.  This repository also would have permitted Oracle and the

21 Court to test Rimini's claim that none of the files it transferred to customers contained

22 protectable Oracle expression.  But Oracle and the Court can do no such thing because Rimini

23 deliberately destroyed this repository.

24        "[I]t is very unusual for a support organization to create a software tool that automatically

25 deletes material sent to its customers."  *Id.* ¶ 394.  Yet this is exactly what Rimini has done.

26

27

28

**E.**     **Rimini's Lies About Destroying Evidence (Again)**

Oracle attempted to understand Rimini's use of the TransferFiles tool—and whether Rimini was spoliating material on its AFW FTP servers—during the *Rimini II* litigation, but Rimini simply lied, saying it was adhering to its preservation obligations.

For example, in September 2017, Oracle issued an RFP to Rimini in *Rimini II* requesting "[a]ll documents concerning Rimini's storage or transfer of fixes, patches or updates for Oracle Software . . . concerning Rimini's use of any file-sharing application, FTP or similar servers . . . ." Rodr. Decl., Ex. E.  Oracle also requested copies of the fixes, patches, and updates that Rimini distributed to customers.  *Id*.  Rimini outwardly appeared to agree to these requests, Rodr. Decl., Ex. F, and Oracle relied on Rimini's misleading representations that it was preserving all materials ███████████████████████████, Rodr. Decl., Ex. G, and that Rimini did not have "any policies, practices, or procedures regarding the deletion of fixes, patches, or updates."  Rodr. Decl., Ex. H.

However, after noticing a number of ██████████████████████████████████, Oracle became concerned that Rimini was withholding documents and repeatedly contacted Rimini for explanation.  Rodr. Decl., Ex. I (Sept. 27, 2018 Reblitz-Rich. Letter) at 4-5; Rodr. Decl., Ex. J (Nov. 7, 2018 Reblitz-Rich. Letter) at 1-2.  Rimini responded,

> Consistent with the design and purpose of the AFW FTP process, materials do not remain in the AFW FTP folder locations ██████████████████████ ██████████████████.  However, the ███████████████████ remain in their ████████████████████████████████ and, to the best of Rimini's knowledge, have been produced in this litigation.  As we have previously explained, Rimini also kept detailed ████████████████, and those ████████ have been produced to Oracle.

Rodr. Decl., Ex. K (Dec. 10, 2018 Vandev. Letter) at 1.  Because Rimini's document productions in *Rimini II* substantially ended in September 2018, Oracle was unable to obtain evidence regarding Rimini's document deletion in *Rimini II*.

1.     Rimini's Destruction of Over ██████ Files

Oracle discovered that Rimini was destroying evidence after this Court ordered Rimini to produce discovery necessary to enforce the Injunction.  On August 20, 2019, in response to Oracle's Post-Injunction discovery requests, Rimini produced—for the first time—████████

chronicling the breadth of its active and affirmative deletion of responsive materials during the Post-Injunction Period.[2]  Rodr. Decl., Ex. L (Aug. 28, 2019 Kocan Letter).  For the first time, Oracle learned that between November 5, 2018 and July 25, 2019, Rimini had systematically deleted at least ███ files from its AFW FTP server—and that each and every one of those ███ ███████████████████ F-C Decl., Ex. 1 ¶ 392.

While Rimini eventually suggested that it might be able to locate the files in other Rimini systems, Rodr. Decl., Ex. K (Dec. 10, 2018 Vandev. Letter), it is impossible to conclusively determine whether such files are identical to the files Rimini deleted from its repository.  In fact, the ██████████ demonstrate that many of the files Rimini sent to customers are not the same as those scattered throughout Rimini's other computer systems.  For example, while ████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ███  F-C Decl. ¶¶ 21-22 & at Exs 7-8.  ██████ updates are simply missing, and Rimini cannot be heard to argue that these updates comply with the Injunction after Rimini destroyed them.

Further, Rimini's Deletion Program destroyed the "draft" updates Rimini sent to customer-associated prototype environments using TransferFiles, even though the Injunction clearly governs Rimini's testing and development practices.  Injunction ¶ 6.  Draft updates are updates that Rimini is developing and testing on customer-associated systems, and once again, Rimini has taken the position that it is complying with the Injunction's provisions regarding testing and development after destroying evidence about its testing and development practices.  Rimini frequently distributes ██████████████████████████████ ████████████████████████████████████████ before distributing the final version of the file to the prototype customer and then *en masse* to other customers.  But Rimini has not produced many of these earlier versions, and it appears that they were overwritten on the "██████████████████████" in addition to being systematically deleted from the

---

[2] The very existence of these ██████████ inherently contradicts Rimini's previous insistence that it did not have and was not aware of "any policies, practices, or procedures regarding the deletion of fixes, patches, or updates."  Rodr. Decl., Ex. H (Dec. 20, 2017 Vandev. Letter).

AFW FTP server.[3]  For example, Rimini's AFW records associated with Rimini update HCM200640 reveal that during a three-day period in July 2019, Rimini sent ▇ different versions of a file named ▇▇▇▇ from the same, non-customer-specific folder on Rimini's network to prototype customer ▇▇ before finalizing the file and distributing it to ▇▇▇▇▇▇.  *See* F-C Decl., Ex. 2 ¶ 24; Ex. 9.  Despite having created, distributed, and deleted at least ▇ different versions of this file, Rimini produced only ▇▇▇▇▇ it sent to ▇▇ in the course of its work on this update.  *See* F-C Decl., Ex. 8.  Because Rimini deleted the ▇ earlier versions of the file, there is no way to determine the extent to which Rimini used Oracle code in those early versions of these software updates, or how many violations of the Injunction or acts of infringement Rimini committed when cross-using ▇▇ PeopleSoft software.  The record therefore lacks critical evidence regarding whether the deleted files violated the Injunction.

        2.    <u>Rimini's False Claim that the Deleted Files Continue to Exist.</u>

After falsely stating that it was not deleting files, and after suggesting that it might be able to find copies of the files it deleted, Rimini eventually adopted the position that it had located and produced copies of all the files it had destroyed.  Rimini failed to explain how it could know that the files it located are the same as the files it destroyed.  Further, as noted above, the evidentiary record contains clear gaps that cannot be ignored simply on Rimini's say-so.

The evidentiary gap here is enormous.  Rimini deleted at least ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ F-C Decl. Ex. 1 ¶ 392; F-C Decl. ¶¶ 15-16.  For at least ▇▇▇▇▇▇, Rimini could not produce matching files from the server itself or

---

[3] Specifically, Rimini engineers would ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ F-C Decl., Ex. 2 ¶ 25.  Otherwise, there would be no need to ▇▇▇▇▇.  Because the Deletion Program deleted *all* versions of the files from Rimini's AFW FTP server—and the earlier versions of the files on Rimini's systems were overwritten and thus deleted by the Rimini engineers—Rimini failed to preserve any copies of these different earlier versions, which would otherwise have remained on the FTP server.

from the folders that Rimini's ▮▮▮▮▮ show were the sources of those files.  Rodr. Decl. ¶ 15.

▮▮▮▮ percent of the deleted files could not be recovered from any reliable source.[4]

Many of the update files that Rimini has produced originated from different folders on Rimini's systems than the files that Rimini actually distributed to customers (and then deleted from the FTP server).  Thus, there is no way to determine whether the files Rimini produced are the same as the files it distributed to customers.  For example, Rimini's AFW records show that Rimini repeatedly distributed a file named ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮  F-C Decl. ¶ 17, Ex. 4 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  However, metadata produced with documents named ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  F-C Decl. ¶ 18, Ex. 5 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and none from "▮▮▮▮▮▮▮▮▮▮▮▮").  Thus, there is a gap in the evidentiary record because there is no way to confirm whether the single version of ▮▮▮▮▮ that Rimini produced is different from or identical to any of the versions Rimini actually distributed to its customers.  By deleting these files—and thousands more like them—Rimini covered up evidence of what each file contained and whether it violated the Injunction.

### 3.   Rimini Modifies Its Deletion Tool

The day after Rimini finally produced its ▮▮▮▮▮, Oracle sent a letter requesting that Rimini (1) "immediately disable this deletion function and investigate, identify, and modify or suspend any other functions or features that operate to cause the loss of potentially relevant ESI"; (2) identify which files were deleted and when; and (3) make Rimini's AFW servers available for inspection in order to increase the likelihood that deleted files could be forensically recovered.  Rodr. Decl., Ex. O (Aug. 21, 2019 Kocan Letter) at 2.  It also reminded Rimini of its duty to "preserve any and all records" relating to the AFW FTP files, and that the "failure to

---

[4] While Rimini claims to have produced copies of many of these ▮▮▮▮ files, there are no records tying these alleged copies to the versions actually transferred via AFW.  *See* F-C Decl., Ex. 1 ¶ 395 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

preserve evidence, including any intentional or negligent destruction of such evidence, constitutes spoliation of evidence and may entitle Oracle to sanctions." *Id.*

Rimini remained silent for more than a month. Then on October 1, 2019, Rimini finally responded that "[g]*oing forward*, files sent using the TransferFile tool [would] be recoverable from [a] single archived location." Rodr. Decl., Ex. P (Oct. 1, 2019 Vandev. Letter) at 1 (emphasis added). Rimini also disclosed that, in response to Oracle's August 21, 2019 letter, it was "modifying its AFW TransferFile tool to preserve the intermediate, duplicate copies at issue," and that "the new tool, as modified, will copy the intermediate, duplicate copies to an archived location before deleting them from the FTP folders."[5] *Id.* Rimini's productions indicate that this change was not particularly burdensome, as Rimini began archiving ███████ ████████████████████████████. Rodr. Decl., Ex. R (example of produced archived file) *and* F-C Decl. ¶ 20, Ex. 6 (AFW record of transferred files with corresponding job number).

## III.   **LEGAL STANDARD**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending, or reasonably foreseeable litigation. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). "Litigants owe an uncompromising duty to preserve what they know or reasonably should know will be relevant evidence in a pending lawsuit . . . ." *United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012). Once a party's duty to preserve relevant evidence takes effect, it must "suspend any existing policies related to deleting or destroying files." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1070; *see also Brown v. Albertsons, LLC*, 2017 WL 1957571, at *6 (D. Nev. May 11, 2017) (same); *Zubulake*, 220 F.R.D. at 218 (same).

Courts may impose "severe sanctions against a party that engages in the spoliation of evidence." *Alterwitz*, 2012 WL 1155741, at *3. Rule 37(e) provides for certain sanctions for the spoliation of electronically stored information ("ESI"). *Newberry v. Cty. of San Bernardino*, 750

---

[5] As explained below, Oracle strongly disputes Rimini's mischaracterization of the deleted files as "intermediate, duplicate copies." Files that Rimini distributes to customers are not intermediate copies, and having destroyed the files, Rimini cannot claim they are duplicates.

F. App'x 534, 537 (9th Cir. 2018); *see also Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at \*67 (D. Nev. Aug. 9, 2018).  If a spoliating party has intentionally destroyed information it had a duty to preserve, the Court may order serious sanctions, including a presumption that the lost information was unfavorable to the spoliating party.  Fed. R. Civ. P. 37(e)(1).  Even if the spoliating acts do not reach this heightened intent requirement, however, the court may order any lesser sanctions necessary to cure the prejudice to the other party.  Fed. R. Civ. P. 37(e)(2).

"The applicable standard of proof for spoliation motions in the Ninth Circuit is the preponderance of evidence."  *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (citing *LaJocies v. N. Las Vegas*, 2011 WL 1630331, at \*1 (D. Nev. Apr. 28, 2011)).

## IV.   ARGUMENT

### A.   Rimini Has Spoliated Evidence

To impose Rule 37(e) sanctions, "the Court must make three findings: (1) that the ESI is information the party had a duty to preserve; (2) the information must have been lost because the party failed to preserve it; and (3) the lost ESI must be irreplaceable."  *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2018 WL 5914238, at \*6 (C.D. Cal. Aug. 20, 2018); *see also* Fed. R. Civ. P. 37(e); *Small*, 2018 WL 3795238 at \*66.

#### 1.   Rimini Had A Duty To Preserve The AFW FTP Files.

"The duty to preserve discoverable materials . . . arises when the party has notice that the evidence is relevant to litigation."  *Stedeford v. Wal-Mart Stores, Inc.*, 2016 WL 3462132, at \*5 (D. Nev. June 24, 2016); *see also* 8B Wright & Miller, *Fed. Prac. & Proc.* § 2284.2 (3d ed. Aug. 2019 Update) (duty is triggered when "party should foresee litigation and also appreciate that the information should be preserved for possible use in that litigation").

This is not a case where the defendant was unsure about whether it would be subject to litigation and the preservation obligations that follow.  This motion comes after a decade of litigation concerning the legality of Rimini's processes, a full trial record, prior sanctions for spoliation of a software library, and an Injunction against cross-use affirmed on appeal.

The Injunction became effective November 5, 2018.  ECF No. 1180.  The evidence that Rimini destroyed was material to evaluating whether Rimini complied with the Injunction's

cross-use provisions, and the allegedly related files that Rimini produced are an incomplete and inadequate substitute.  F-C Decl. Ex. 1 ¶¶ 383, 385, 392, 397.

In evaluating whether Rimini has violated the Injunction's prohibition on the transfer of specified material between Rimini's systems and those of its customers, the very best evidence is the specific material that Rimini actually distributed to its customers.  Yet that is the evidence that Rimini decided to destroy.  While Rimini claims that the files it transferred to customers comply with the Injunction, there is no way to evaluate that claim in many instances, as Rimini has destroyed the files it sent.  Effective enforcement requires an examination of the materials Rimini transferred from its systems to its customers' systems.  Rimini therefore had a duty to preserve these files.  *See, e.g.*, *WeRide Corp. v. Kun Huang,* 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020) (imposing spoliation sanctions where destruction of discoverable material continued after entry of injunctive relief); *In re Krause*, 367 B.R. 740, 765 (Bankr. D. Kan. 2007) (a party is "certainly . . . on fair notice" that it has a duty to preserve electronic evidence when an adversarial proceeding against it is initiated and an injunction is obtained).

Rimini cannot escape its preservation duties by mischaracterizing the files on its FTP server as somehow "temporary" or "transitory."  *See* Rodr. Decl., Ex. S (Aug. 29, 2019 Vandev. Letter) at 1.  Rimini took affirmative steps to destroy materials that would have otherwise persisted on its FTP server's hard drive—a permanent storage drive, unlike temporary cache files or RAM.  *See Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2014 WL 4748139, at *7 (W.D. Wash. Aug. 8, 2014).  The over ███ deleted files that were distributed to customers were not temporary, intermediate copies.  In fact, Rimini developers had to write the Deletion Program in order to flag these customer files for deletion and then delete these files.  F-C Decl. Ex. 1 ¶ 386.  Had Rimini not written the Deletion Program or if Rimini had suspended this automatic deletion as it was obligated to do, the record would show whether or not these ███ files complied with the Injunction.

Even if these files were somehow "transitory" (and they were not), Rimini still violated its duty by not preserving them.  Courts have found that litigants have a duty to preserve even the most temporary and transitory of files once they are on notice that they are relevant.  *E.g.*,

*Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 409-12 (S.D.N.Y. 2015) (imposing

spoliation sanctions for deletion of "temporary files"); *Arista Records LLC v. Usenet.com, Inc.*,

608 F. Supp. 2d 409, 441 (S.D.N.Y. 2009) (imposing spoliation sanctions for failure to preserve

"transient electronic data"); *cf. Healthcare Advocates, Inc. v. Harding, Earley, Follmer &*

*Frailey*, 497 F. Supp. 2d 627, 641 (E.D. Pa. 2007) (defendant not liable for deletion of temporary

cache files only because it "did not affirmatively destroy the evidence").  Further, it is well-

settled law that a litigant has an obligation to suspend the routine deletion of relevant evidence in

connection with ongoing litigation.  *Napster*, 462 F. Supp. 2d at 1070; *Brown*, 2017 WL

1957571, at *6; *see also Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D.

Cal. 2012) (imposing spoliation sanctions due in part to defendant's failure to suspend

"automatic biweekly [email] destruction policy" after litigation was reasonably foreseeable).

Here, Oracle repeatedly placed Rimini on direct notice that files on its FTP server were highly

relevant to this litigation.  Rimini violated its preservation obligations by writing and deploying a

document-deletion program *in the midst of litigation*, lying to cover it up, and then failing to

suspend its deletion scheme after this Court issued the Injunction.

    2. <u>The AFW FTP Files Were Lost Because Rimini Failed To Undertake</u>
      <u>Reasonable Steps To Preserve Them.</u>

  "Intentionally destroying evidence satisfies the standard for failing to take reasonable

steps to preserve that evidence."  *Univ. Acct'g Serv., LLC v. Schulton*, 2019 WL 2404512, at *6

(D. Or. June 7, 2019); *see also Schnider v. Providence Health & Servs.*, 2018 WL 1558554, at *2

(D. Alaska Mar. 9, 2018) (a party fails to take reasonable steps to preserve relevant information

when it "intentionally and permanently delete[s] the information").  Rimini failed to take

reasonable steps to preserve these documents.  Doing so would have been simple: Rimini merely

had to not delete the files on its AFW FTP server.  Instead, Rimini developed and implemented a

program designed to systematically scan for and delete the files.  Without Rimini's Deletion

Program, copies of the files distributed from Rimini's server to Rimini's customers would have

remained on Rimini's FTP server, available for production and review in this proceeding.

Rimini has no legitimate operational reason to remove files from its FTP server. Even if one existed, however, Rimini could have easily preserved these files as evidence from the start. ███████████████████████████████████████████████████████. *E.g.*, Rodr. Decl., Ex. P (Oct. 1, 2019 Vandev. Letter); Rodr. Decl., Ex. R; F-C Decl. ¶¶ 20, 24, Ex. 6. Nor was this the only solution at Rimini's disposal: Rimini could have implemented a secure litigation backup for files in order to comply with its preservation obligations. Rimini took similar measures earlier in this litigation. When transferring files using ███████████████████████████████████████████. Rodr. Decl., Ex. D (*Rimini II,* Feb. 28, 2018 Depo. of Rick Frank) at 157:7-15, 162:23-25.

Rimini also cannot contend that preserving the relevant materials is disproportionate to the needs of the case because of the storage required to preserve the data. Backups of update files are small. For example, Rimini's Production 38, which is comprised of ██████████████████████████████████████████████████████—less than the storage capacity of an ordinary DVD or thumb drive. F-C Decl. ¶ 24. And "it is no defense" for Rimini to contend that it spoliated relevant material "to save storage space." First Spoliation Order at 7. This Court rejected Rimini's 2013 argument that the Oracle software library could be deleted because of the burden of preserving it, *id.*, and Rimini's current claims regarding burden are meritless because the files at issue now are a fraction of the size of that software library. In any event, the law does not permit a litigant to belatedly raise the issue of burden *after* deleting evidence; a party contemplating deleting relevant evidence to reduce costs must meet and confer with its adversary. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 889 (S.D.N.Y. 1999) (spoliator had duty to notify adverse counsel and court before destroying relevant evidence to save storage charges).

Further, Rimini clearly was not destroying evidence because of storage-space concerns. If Rimini had legitimate concerns about storage capacity, it could have proposed alternatives in a meet-and-confer process. For example, it could have proposed that Rimini retain metadata and calculate and store MD5 hash values, thus providing some information about the files. But

Rimini did no such thing.  Rather, it unilaterally deleted the files and it failed to capture the (even smaller) metadata and hash values.

### 3. The Spoliated Evidence Cannot Be Restored Or Replaced.

Rather than contest the underlying facts—because it cannot—Rimini has tried to rationalize its spoliation, claiming it has located copies of these files.  Rodr. Decl., Ex. S (Aug. 29, 2019 Vandev. Letter) ("These files are duplicative and only marginally relevant").  Yet, Rimini cannot show that the files it managed to locate scattered throughout the company are identical to the thousands of files it chose to destroy.  As discussed above, Rimini cannot show that it has produced actual copies of ▮▮▮ of the ▮▮▮▮▮ deleted files that it admittedly distributed to customers.  Each one of those ▮▮▮▮▮▮▮▮▮▮ files is subject to the Injunction's restrictions, and Rimini cannot show that it is complying with the Injunction simply by saying, "Take our word for it, here are copies of those files."  Further, Rimini's argument is legally meritless because "producing copies in instances where the originals have been requested may constitute spoliation if it would prevent discovering critical information," as "in some instances, original documents might yield relevant evidence that is simply not available from copies."  *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012).  This case is even more compelling, as Rimini cannot even show that it has produced copies; Rimini has merely *claimed* that the self-selected documents it produced *are copies*.

The destroyed files and their metadata would have shown:

- the extent to which Rimini used Oracle code or customer-associated Oracle Software Environments to develop early versions of updates that were subsequently distributed by Rimini to other customers (*i.e.*, cross-use) (F-C Decl., Ex. 1 ¶¶ 127, 130, 395; ECF No. 1326, F-C Rept. ¶¶ 161, 227; F-C Decl., Ex. 2 ¶¶ 24-25, 42).
- the extent to which Rimini's early versions of update files (which were actually sent to customers before being deleted and not produced in litigation) incorporated Oracle code that was removed before those files were finalized and produced (*i.e.* cross-use) (F-C Decl., Ex. 1 ¶¶ 127, 130, 392; ECF No. 1326, F-C Rept. ¶ 161).

- regular transmission, modification, and re-transmission of update files to one customer-associated environment for development purposes before sending it again, in finalized form, to others (*i.e.*, cross-use) (F-C Decl., Ex. 1 ¶¶ 385, 392, 395; ECF No. 1326, F-C Rept. ¶ 227; F-C Decl., Ex. 2 ¶¶ 24-25, 42); and

- the date each file was created, the date it was last modified, the dates files were accessed, the author of each file, the size of each file, and the machine on which each file was created.  F-C Decl., Ex. 1 ¶¶ 385, 395; ECF No. 1326, F-C Rept. ¶ 161; F-C Decl., Ex. 3 Section 3.5.4.

Instead, all of this information—as it existed at the time that the files were actually distributed—has been lost.  In the First Spoliation Order, this Court held that the destruction of similar data and metadata constituted spoliation.  ECF No. 466 at 18.

Rimini not only destroyed the files that were distributed to customers, Rimini also foreclosed easy determination of what those files contained.  Without access to the actual contents of the missing files, the most effective method for determining whether two files are identical is to compare their respective MD5 hash values, as two files with the same MD5 hash values are identical.  F-C Decl. ¶ 22.  By deleting thousands of files without logging their MD5 hash values, Rimini made it impossible for Oracle, the Court, or even Rimini itself determine whether the files it has produced are the same as the files it has destroyed.[6]  *Id.* at Ex. 1 ¶ 392.

Further, Rimini's AFW database records show that Rimini frequently ██████ ████████████████████████████████████████████████████████████████ before distributing the finalized file *en masse* to other customers.  *See* F-C Decl., Ex. 2 ¶¶ 24-25. For example, Rimini sent at least ██ copies of ████████████████ before distributing the file to ████████████████.  As ████████ clearly did not need ██ copies of the same file, and the file was ultimately distributed to ████████ other customers, the evidence shows that Rimini used ████████ environment to test and develop this update.  The Injunction places clear restrictions on Rimini's

---

[6] While Rimini's failure to retain conclusive evidence has frustrated this analysis, there are indicia that the produced files differ from the deleted files.  Specifically, ███████████████████████ ████████████████████████████████████████████████████████████  F-C Decl. ¶¶ 17-18, Exs. 4-5.

testing and development of updates, and Rimini was thus obligated to preserve all ▇ versions, so that Oracle and the Court could determine whether this testing and development violated the Injunction. *See* Injunction ¶ 6. Rimini, however, destroyed ▇▇▇▇▇▇ of this file, produced one version, and then claimed that the other ▇ were identical. Oracle and the Court have no way of knowing whether Rimini's representation is true (and neither does Rimini).

There is no factual dispute that Rimini intentionally destroyed evidence. The law is clear that Rimini had a duty to preserve this evidence. And Rimini had no legitimate business purpose for destroying this evidence. F-C Decl., Ex 1 ¶ 383. Rimini should be sanctioned.

### B. Rimini's Spoliation Was Intended To Deprive Oracle Of The Information's Use In This Litigation And Merits Rule 37(e)(2) Sanctions

Upon finding that a spoliating party "acted with the intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2), the Court may "use specified and very severe" sanctions. Fed. R. Civ. P. 37 Advisory Comm.'s note, 2015 amend., subdiv. (e)(2).

"[C]ourts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that . . . [it] purposefully destroyed evidence to avoid its litigation obligations." *Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (citing cases). The party need not actively destroy evidence; instead, "conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018).

#### 1. Rimini's Actions Evince Intentionality.

"A party's destruction of evidence can be considered willful or in bad faith when the party had notice that the evidence was potentially relevant to litigation before it was destroyed." *HP Tuners, LLC v. Sykes-Bonnett*, 2019 WL 5069088, at *4 (W.D. Wash. Sept. 16, 2019), *R&R adopted as modified,* 2019 WL 5064762 (W.D. Wash. Oct. 9, 2019); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at *10 (S.D. Cal. Dec. 4, 2019) (same).

Rimini's documents have been subject to continuous hold obligations for over a decade. First Spoliation Order at 14, 16.  Rimini's management knew those obligations well, both from the First Spoliation Order and because leaders of the company testified at the 2015 trial.

When Oracle asked Rimini to describe any "policies, practices, [or] procedures concerning the . . . deletion of all fixes, patches, and updates that Rimini provided to or created for its customers," Rodr. Decl., Ex. T, Rimini falsely assured Oracle that it "does not have or is not aware of any policies, practices, or procedures regarding the deletion of fixes, patches, or updates."  Rodr. Decl., Ex. H.  In fact, Rimini wrote and deployed a tool for destroying evidence, and then, routinely used this Deletion Program for nearly a year after the Injunction went into effect on November 5, 2018.  ECF No. 1333-1, F-C Rept. ¶ 225.[7]

After Oracle raised the telltale ▮▮▮▮▮▮▮▮ in September 2018, Rodr. Decl., Ex. I (Sept. 27, 2018 Reblitz-Rich. Letter) at 4-5, it is beyond question that Rimini knew what it was doing.  Rimini's carefully worded response indicates that Rimini and its counsel were aware of the deletion.  Rodr. Decl., Ex. K (Dec. 10, 2018 Vandev. Letter) at 1 ("Consistent with the design and purpose of the AFW FTP process, materials do not *remain* in the AFW FTP folder locations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.") (emphasis added).

As Rimini was on clear notice no later than September 2018 that it needed to preserve the files at issue, its continued deletion of those files was intentional.  *Supra* Part II.E.  In *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367 (D. Or. 2017), the court imposed Rule 37(e)(2) sanctions where a defendant on notice of litigation deleted obviously relevant files.  In *WeRide Corp.*, 2020 WL 1967209, at *12, the court found sufficient intentionality to impose case-terminating sanctions pursuant to Rule 37(e)(2) where the defendant had a "disturbing pattern of destroying discoverable material" that "continued not only through the commencement of this litigation" but after the issuance of an injunction—and on that on those facts "the totality of the circumstances indicate[d] that [the defendant]'s spoliation was intentional."  *See also Leon v.*

---

[7] At least one court has held that when there has been an ongoing failure to preserve obviously relevant evidence over a long period of time, such dereliction of duty is sufficient to "evince intentionality" necessary for the imposition of Rule 37(e)(2) sanctions. *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017).

*IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (willful spoliation of relevant evidence where employee deleted 2,200 files from his computer after suit was filed).   In November 2018, the Injunction came into effect and placed restrictions on Rimini's testing, development, and distribution of the updates Rimini sent to customers.  Rimini knew this.  Yet Rimini continued to delete thousands of files that would have shown whether or not it was complying with the Injunction.  Rimini modified its Deletion Program only after being forced to turn over its smoking-gun ▮▮▮▮▮▮ and receiving Oracle's demand to stop destroying evidence.

The evidence further confirms that Rimini's spoliation was intentional because the Deletion Program depended on people—not computers—configuring and overseeing it on an ongoing basis.  F-C Decl., Ex. 1 ¶ 136.  Even if Rimini had set it and forgotten it (which is not supported by the facts), Rimini's creation and implementation of the "highly unusual" Deletion Program in the first place was a relevant and intentional act.  *Id.* ¶ 383.  Courts have held that ESI spoliation caused by automated deletion programs may serve as the basis for sanctions pursuant to Rule 37(e)(2) or its predecessor standard.  *E.g., Woods v. Scissons*, 2019 WL 3816727, at *6 (D. Ariz. Aug. 14, 2019) (allowing jury to decide whether automated deletion of video recordings was performed "with the intent to deprive [plaintiff] of the use of the videotape during this litigation"); *NuVasive, Inc. v. Kormanis*, 2019 WL 1171486, at *16 (M.D.N.C. Mar. 13, 2019) (automatic deletion of text messages, paired with evidence of bad faith, permitted finding that deletion was intentional).

The Court may also rely on Rimini's history of spoliation as evidence of its bad faith. *WeRide Corp.*, 2020 WL 1967209 at *12 ("pattern of destroying discoverable material" in litigation justified Rule 37(e)(2) sanctions); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 502 n.10 (D. Md. 2010) (defendant's spoliation in prior case "is relevant to his state of mind in this case as well").  Rimini knew that this Court had imposed harsh sanctions for its destruction of relevant files, but carried on destroying new and obviously relevant files anyway.

2.   A Rebuttable Presumption Will Remedy Rimini's Willful Spoliation.

While Rule 37(e)(2) authorizes the Court to impose "case-dispositive sanctions" for willful destruction of evidence, Oracle does not seek such sanctions here (because judgment has

already been entered against Rimini).  Instead, the Court should draw a rebuttable presumption that the information contained in the spoliated files was unfavorable to Rimini, as authorized by the text of the Rule.  Fed. R. Civ. P. 37(e)(2) (expressly authorizing "presum[ption] that the lost information was unfavorable to the party" as sanction).  This presumption is available even when the Court is acting as a finder of fact, absent a jury.  *E.g.*, *Matter of Hornblower Fleet, LLC*, 2019 WL 1506870, at \*2 (S.D. Cal. Apr. 5, 2019) ("although a mandatory presumption jury instruction is not appropriate [as a remedy for spoliation in a bench trial], a rebuttable inference may still be drawn by the District Judge"); *Perez v. U.S.P.S.*, 2014 WL 10715267, at \*1 (W.D. Wash. Sept. 3, 2014) ("rebuttable inference" could be drawn from spoliation in bench trial).

Here, the Court's assessment of the MSC should include a presumption that the missing data would have supported a conclusion that Rimini "reproduced, prepared derivative works from, and distributed PeopleSoft" software in violation of the Injunction.[8]  Injunction ¶ 2.

### C.     At Minimum, The Court Should Correct The Prejudice Against Oracle.

"[W]here prejudice cannot be inferred from the spoliator's state of mind, it may be proven circumstantially, in which case sanctions (other than those specifically enumerated in subdivision (e)(2)) may be awarded."  *Ungar*, 329 F.R.D. at 13.  "[P]lacing the burden of proving prejudice on the party that did not lose the information may be unfair."  2015 Advisory Comm. Note, *supra*, subdiv. (e)(1); *see also Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*, 2016 WL 7115911, at \*6 (D. Alaska Dec. 6, 2016) ("Once spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing.").

---

[8] Specifically, the Court should presume that Rimini was "distribut[ing] PeopleSoft software or documentation," "reproducing, preparing derivative works from, [and using] PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations," "reproducing, preparing derivative works from, [and] using PeopleSoft software [and] documentation on . . . computer systems other than a specific licensee's own computer systems," and "reproducing, preparing derivative works from, [and] using PeopleSoft software [and] documentation on one licensee's computer systems to support, troubleshoot, [and] perform development or testing for . . . other licensees."  Injunction ¶¶ 3-6.

1

1.   Rimini's Spoliation Has Prejudiced Oracle.

2

To demonstrate prejudice from the spoliation of evidence, a party "must only 'come

3

forward with plausible, concrete suggestions' about what the spoliated evidence 'might have

4

been.'" *Brown v. Albertsons, LLC,* 2017 WL 1957571, at *9 (D. Nev. May 11, 2017) (quoting

5

*Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (9th Cir. 2011)); *see also Anheuser-*

6

*Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995) (prejudice where

7

spoliation forced party "to rely on incomplete and spotty evidence").

8

Oracle has explained what the destroyed evidence would have shown. *Supra* Part

9

IV.A.3. It would have provided crucial information about Rimini's development process,

10

including the extent to which Rimini used Oracle code in early drafts of the software updates that

11

it transmitted to customers. F-C Decl., Ex. 1 ¶ 383. And it would have shown the extent to

12

which Rimini used prototype environments to develop and test early versions of update files that

13

were later retrofitted and distributed to other customers. *Id.* In other words, it would have

14

shown the extent to which Rimini engaged in cross-use in violation of the Injunction. This

15

satisfies the criteria for prejudicial conduct.

16

2.   The Court Should Consider Evidence Of Rimini's Spoliation In
Determining Rimini's Compliance With The Injunction.

17

18

The Court may impose remedies of its choosing pursuant to Rule 37(e)(1) even if it

19

declines to impose Rule 37(e)(2) sanctions. 2015 Advisory Comm. Note, *supra*, subdiv. (e)(1) .

20

In this instance, the Court should consider the evidence concerning the loss of the

21

information in question—*i.e.*, Rimini's destruction of the documents—and its likely relevance to

22

the case. Many courts have adopted this lesser sanction for spoliation. In one recent case,

23

*Cardinale v. Smith's Food & Drug Ctrs., Inc.*, 2019 WL 2425698, at *2 (D. Nev. Jan. 10, 2019)

24

(Ferenbach, M.J.), the Court granted a motion for spoliation sanctions where an update to a

25

surveillance system unintentionally caused the loss of important video evidence, allowing the

26

parties to present evidence and arguments about the loss of the footage to the jury.

27

Courts throughout this Circuit have similarly concluded that it is appropriate to consider

28

evidence of spoliation in adjudication on the merits. *E.g.*, *Gaina v. Northridge Hosp. Med. Ctr.*,

2018 WL 6258895, at *4 (C.D. Cal. Nov. 21, 2018) (parties may "present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision"); *Brown*, 2017 WL 1957571, at *11 (concluding that lightest appropriate sanction was to permit introduction of evidence of spoliation and permit factfinder "to draw its own conclusions from the loss or destruction" of the evidence); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016) (allowing presentation of spoliation evidence); *see also Woods v. Scissons*, 2019 WL 3816727, at *6 (D. Ariz. Aug. 14, 2019) (same).

Consistent with these cases, this Court should consider the full scope of Rimini's misconduct, with its relevant historical practices in mind, when reaching a determination on Oracle's MSC. Courts are "entitled to consider all evidence relevant to" the question of a party's contempt, "tried just as any other issue." *Maggio v. Zeitz*, 333 U.S. 56, 74 (1948).

> 3.   The Court Should Consider Alternative Remedies To Cure Rimini's Prejudicial Conduct.

The Court need not, and should not, limit itself to the sanctions enumerated above. The Court has considerable discretion in fashioning an appropriate remedy. 2015 Advisory Comm. Note, *supra*, subdiv. (e)(1)  (court may implement any remedy that "do[es] not have the effect of measures that are permitted [only] under subdivision (e)(2).").

These include monetary penalties to account for the expert time and analysis required to compensate for the spoliated evidence. *See* F-C Decl., Ex. 1 ¶¶ 383-97. Here, unraveling the extraordinary lengths to which Rimini has gone to cover up its tracks has required a significant amount of expert resources. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *26 (C.D. Cal. July 12, 2016) (ordering spoliator to pay expenses related to expert's forensic analysis), *R&R adopted*, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016).

The Court may also "exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." 2015 Advisory Comm. Note, *supra*, subdiv. (e)(1) . Oracle reserves the right to identify such items of evidence after Rimini files its contempt papers.

**D.** **The Court Should Order Rimini To Reimburse Oracle's Fees And Costs**

Oracle also respectfully requests that it be reimbursed for the fees and costs it incurred in bringing this Motion. The fees and costs may be awarded as part of a Rule 37(e) sanction and pursuant to Rule 26(c)(1)(B) and this Court's inherent authority. *Spencer v. Lunada Bay Boys*, 806 F. App'x 564 (9th Cir. 2020), *aff'g* 2018 WL 839862, at *2 (C.D. Cal. Feb. 12, 2018) (awarding attorneys' fees to non-spoliating party pursuant to Rule 37(e) with amount "[to be] determined by the Magistrate Judge upon . . . further submissions by the parties"); *see also Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 238 (D. Minn. 2019) ("The Court will therefore order . . . the [spoliating] Defendants to pay reasonable expenses, including attorney's fees and costs, that Plaintiffs incurred as a result of the [spoliating] Defendants' misconduct.").

**V.** **CONCLUSION**

For the foregoing reasons, the Court should impose spoliation sanctions against Rimini pursuant to Federal Rule of Civil Procedure 37(e)(2). If it does not find sufficient intentionality, it should instead impose spoliation sanctions pursuant to Rule 37(e)(1). In either case, it should order Rimini to reimburse Oracle's additional fees and costs.

DATED: July 10, 2020

BOIES SCHILLER FLEXNER LLP

By: */s/ Richard J. Pocker*
Richard J. Pocker
Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corporation

## CERTIFICATE OF SERVICE

  I certify that on July 10, 2020, I electronically transmitted the foregoing **MOTION FOR RULE 37 SANCTIONS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel are CM/ECF registrants.

Dated:  July 10, 2020

           BOIES SCHILLER FLEXNER LLP


          By:   /s/ *Ashleigh Jensen*

           Ashleigh Jensen