# EXHIBIT 3

[Excerpts of Christian Hicks Rebuttal Report to the Expert Reports of Owen Astrachan and Daniel Ellis, dated June 22, 2018 – REDACTED]

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL REPORT TO

THE EXPERT REPORTS OF OWEN ASTRACHAN AND DANIEL ELLIS

CHRISTIAN B. HICKS

IN THE MATTER OF

RIMINI STREET, INC., Plaintiff,

v.

ORACLE AMERICA, INC. AND ORACLE INTERNATIONAL CORPORATION,

Defendants.

ORACLE AMERICA, INC. AND ORACLE INTERNATIONAL CORPORATION,

Counterclaimants,

v.

RIMINI STREET, INC. AND SETH RAVIN, Counterdefendants.

U.S. DISTRICT COURT, DISTRICT OF NEVADA, CASE NO. 2:14-cv-01699 LRH CWH

June 22, 2018

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

another customer system. Moreover, Rimini's AFW includes additional mechanisms (the ▮▮▮▮▮▮▮▮ and "TransferFiles" features) for copying whole files directly between machines. As described in paragraph 8.3 of my Opening Report, these Rimini tools, when used together, are capable of copying files between machines of different customers. These Rimini AFW mechanisms were used to copy more than ▮▮▮ non-RS-prefixed files. (Opening Report para. 8.3.4.) I describe these mechanisms, including how Rimini can use them to copy files from one customer to another customer via a Rimini machine, in paragraph 8.3 of my Opening Report.

3.5.4. Furthermore, it is not straightforward to determine the extent to which these request types may have been used to transmit file contents between machines of different customers. This is due to the lack of hash and originating file path information in TransferFiles requests. As illustrated in Exhibit-AFW-Database-Overview of my Opening Report, the TransferFiles records indicate source file location only on the AFW FTP server, not their pre-upload location. Thus, I disagree with Professor Astrachan's claim that Rimini's Environments 2.0 processes do not allow Rimini to copy Oracle software associated with one customer to Rimini and to other customers.

3.6. **Professor Astrachan refuses to acknowledge Rimini's cross-use and downplays specific examples of cross-use in the Rimini system.**

3.6.1. Professor Astrachan describes the technology Rimini employs to copy modifications from an environment associated with one customer to an environment associated with another (Astrachan Report para. 104), but he downplays how often

14

4.5.9. Oracle's conduct is in line with the actions of other companies who have enforced their terms of use.

4.5.10. Finally, Mr. Ellis ignores how Oracle exceeded industry norms by giving Rimini a grace period to cease its automated downloading, and by offering to work with licensees to resolve any issues. Companies can and do demand that users immediately cease activity that violates their terms of use. *Craigslist*, 942 F. Supp. 2d at 966–67 (Craigslist sent a cease-and-desist letter demanding that users immediately "cease and desist all . . . craigslist-related activities" and that they were "no longer authorized to access . . . craigslist's website or services for any reason"). By contrast, in its cease-and-desist letter, Oracle gave Rimini a 60-day grace period before terminating its access, despite having no obligation to do so. With respect to Oracle licensees that had contracted with Rimini, I also understand that Oracle offered to discuss their access to Oracle's support materials beyond the 60-day period, or to provide other assistance as needed.

_____          22 June 2018
Christian B. Hicks                 Date