| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>MARK A. PERRY (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  11101<br>Telephone: 202.955.8500<br>mperry@gibsondunn.com | RIMINI STREET, INC.<br>DANIEL B. WINSLOW (*pro hac vice*)<br>6601 Koll Center Parkway, Suite 300<br>Pleasanton, CA 94566<br>Telephone: (925) 264-7736<br>dwinslow@riministreet.com |
| GIBSON, DUNN & CRUTCHER LLP<br>JEFFREY T. THOMAS (*pro hac vice*)<br>BLAINE H. EVANSON (*pro hac vice*)<br>JOSEPH A. GORMAN (*pro hac vice*)<br>CASEY J. MCCRACKEN (*pro hac vice*)<br>3161 Michelson Drive<br>Irvine, CA  92612-4412<br>Telephone: 949.451.3800<br>jtthomas@gibsondunn.com<br>bevanson@gibsondunn.com<br>jgorman@gibsondunn.com<br>cmccracken@gibsondunn.com | RIMINI STREET, INC.<br>JOHN P. REILLY (*pro hac vice*)<br>3993 Howard Hughes Parkway, Suite 500<br>Las Vegas, NV 89169<br>Telephone: (336) 908-6961<br>jreilly@riministreet.com<br><br>HOWARD & HOWARD ATTORNEYS PLLC<br>W. WEST ALLEN (Nevada Bar No. 5566)<br>3800 Howard Hughes Parkway, Suite 1000<br>Las Vegas, NV 89169<br>Telephone: (702) 667-4843<br>wwa@h2law.com |
| GIBSON, DUNN & CRUTCHER LLP<br>SAMUEL LIVERSIDGE (*pro hac vice*)<br>ERIC D. VANDEVELDE (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, CA  90071-3197<br>Telephone: 213.229.7000<br>sliversidge@gibsondunn.com<br>evandevelde@gibsondunn.com | |

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>            Plaintiffs,<br><br>     v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>            Defendants. | CASE NO. 2:10-cv-00106-LRH-VCF<br><br>**DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS**<br><br>**PUBLIC REDACTED VERSION** |

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

I, Jennafer M. Tryck, declare as follows:

1. I am an attorney at the law firm of Gibson, Dunn & Crutcher LLP, representing Rimini Street, Inc. in the above-captioned case. I submit this declaration in support of Rimini's Opposition to Oracle's Motion for Rule 37 Sanctions. The facts stated in this declaration are based on my personal knowledge, and if called upon as a witness, I would and could testify competently to them.

### *Rimini II* Discovery

2. The discovery period in *Rimini II* spanned more than three years, from 2015 through spring of 2018. Over the course of that time, Rimini produced nearly 10 million documents (40 million pages) and 4.2 terabytes of data in response to 264 Oracle document requests. It was far and away the most massive discovery effort I have participated in during my seven-year career at Gibson Dunn in complex litigation. My colleagues have told me the same is true for them.

3. Rimini collected and produced documents from 50 custodians of Oracle's choosing. These custodians included Rimini's CEO and members of its upper management team, as well as software support engineers and technicians who work directly with Rimini's clients.

4. Anticipating a large volume of discovery requests and documents to produce, the Court ordered the Parties in *Rimini II* to implement a Technology Assisted Review ("TAR") process for its custodial production. As part of this process, Oracle's counsel reviewed sample sets of Rimini's document coding to confirm whether it agreed that the documents Rimini's counsel identified as non-responsive were non-responsive, and whether the documents Rimini's counsel identified as responsive were responsive. In other words, Oracle's counsel had substantial control over determining responsiveness. The TAR software then identified documents for production from Rimini's 50 custodians based on the responsiveness coding of the sample sets that Oracle had reviewed and approved. Rimini refreshed its collection of custodial documents multiple times during *Rimini II*; each refresh resulted in the need to code new sample sets for responsiveness, meet and confer with Oracle to reach consensus on the

2

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

responsiveness coding, and then run the TAR software to identify documents to produce based on the responsiveness coding of the sample sets.

5. At a high level of generality, based on the consensus responsiveness coding that Oracle and Rimini agreed to, essentially any non-privileged custodial document relating in any way to Rimini's support processes for any of the five Oracle products at issue in the *Rimini II* litigation (*i.e.*, PeopleSoft, J.D. Edwards, Siebel, Oracle Database, and E-Business Suite) was deemed responsive and was produced to Oracle. (By contrast, documents relating to Rimini's support for SAP products would not be responsive.)

6. Rimini also produced millions of pages of documents from non-custodial sources throughout its systems, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rimini also produced Karen's Directory Printer ("KDP") data, which consisted of directory and file structures, as well as metadata, for over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that Rimini preserved for purposes of this litigation. Oracle was able to, and did, identify the non-custodial sources that it requested be searched. Rimini also produced a corporate witness to testify regarding its non-custodial document repositories so that Oracle had every opportunity to inquire regarding document sources in order to tailor its discovery requests.

7. In addition to proffering a corporate witness, Rimini provided Oracle with other detailed sources of information concerning its non-custodial sources. For example, in response to Oracle's Interrogatory No. 25, Rimini provided directory listings and file path information for network drives that are used or have been used by Rimini engineers to provide updates, archiving, or break/fix support to clients operating the relevant product lines in this case. Oracle's counsel then used these directory listings to cross-check and confirm that Rimini had produced relevant fixes, patches, and updates on its systems.

8. In total, Rimini made 150 document productions to Oracle on a rolling basis throughout the discovery period.

9. In addition to documents, Rimini also produced the source code for its Automated Framework ("AFW") proprietary software tools on December 23, 2015. As

3

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

1  discovery progressed, Rimini also provided refresh productions of the source code on
2  March 28, 2016, April 29, 2016, July 18, 2017, and January 25, 2018. Rimini ensured that
3  refresh productions of the AFW source code were made to Oracle as Rimini made fixes or
4  upgrades to its AFW tools so Oracle could see the changes Rimini made.

5  　　　　10.　　Rimini also produced its AFW database and log files to Oracle. The AFW
6  database contains detailed information that is logged when an AFW tool is used. For example,
7  when a Rimini engineer uses a tool, the AFW database will █████████████████
8  ████████████████████████████████████████████████████████
9  █████████████████████████████. The database consists of many gigabytes of data.
10 Rimini first produced this data on December 23, 2015, and provided refresh productions of the
11 data on March 28, 2016, July 21, 2016, March 24, 2017, April 26, 2017, and February 23, 2018.
12 Oracle thus had full visibility into Rimini's use of AFW tools throughout the discovery period.

13 　　　　11.　　Rimini also downloaded and produced voluminous information from its
14 Salesforce system, including files containing hundreds of thousands of rows of information.
15 ████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████
21 ████

22 　　　　12.　　Rimini also provided Oracle with five sets of access credentials to its software
23 development tracking platforms ████████████ This allowed Oracle's outside counsel,
24 and Oracle's experts and others approved under the Protective Order, to have live, 24 hours-
25 per-day, 7-days-per-week, access to Rimini's development and testing platforms. Although
26 Oracle's access credentials did not allow Oracle to change anything in Rimini's systems, Oracle
27 could (and did) see the same records and work boards that Rimini's engineers and quality
28 assurance personnel were using on a daily basis. Oracle's credentials allowed it to see what

4

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

Rimini was working on at any given minute. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████.

13.     Rimini also answered 25 interrogatories, many of which contained numerous subparts, and which sought detailed information concerning Rimini's systems and software support processes.  For instance, for two of Oracle's interrogatories (Interrogatory Nos. 3 and 10), Rimini prepared voluminous charts reflecting extremely detailed information in its possession, custody, and control regarding its clients' environments for which Rimini provides support.  Rimini not only supplemented these charts periodically to account for new information or new clients, but it also supplemented or amended them when Oracle requested more information.  Rimini's response to Interrogatory No. 3 was ultimately supplemented or amended 11 different times; Interrogatory No. 10 was supplemented five times.  Most of these amended or supplemented responses were accompanied by multiple, lengthy charts of data.  For example, the tenth amended response to Interrogatory No. 3 was accompanied by eight different charts, totaling over 27,000 different data points regarding Rimini's clients' environments.

14.     Oracle contended in discovery that Rimini had control over its clients' Oracle-licensed software located on the clients' computer systems, and demanded that Rimini access, download, and produce massive amounts of data about that software on the clients' computers. On May 18, 2017, Rimini filed a motion for protective order, seeking a clear order from the Court that Rimini did not have control over its clients' Oracle-licensed software located on the clients' computer systems, and was not required to collect documents and data from those systems to respond to discovery.  *Rimini II*, ECF No. 499.  The Court granted that motion, finding that Rimini did not have possession, custody, or control over its clients' Oracle-licensed software located on the clients' computer systems.  *Rimini II*, ECF No. 606.

15.     Rimini also responded to 200 requests for admission, many of which contained numerous subparts.

16.     Rimini witnesses also sat for 25 depositions.  Acknowledging the scope of discovery in the case, Magistrate Judge Hoffman commended Rimini during the deposition

5

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

phase for the "massive discovery in this case and the number of depositions" that Rimini completed. *Rimini II*, ECF No. 696 (Mar. 2, 2018 Hr'g Tr. at 14:9–13).

17. Oracle also issued *more than 700* subpoenas to Rimini's clients. Each of those subpoenas sought voluminous documents, software, and other material and data, based on more than 20 broad categories of requests, including, *e.g.*, all software that Rimini supported and anything derived from that software; all fixes, patches, and updates that Rimini provided to the client; all other documents and data reflecting Rimini's support work on the client's software; all contracts between the client and Rimini, and between the client and any third party that Rimini recommended; and all communications between the client and Rimini.

18. Rimini and its counsel spent hundreds, if not thousands, of hours assisting Oracle in collecting this information from the subpoenaed clients, and from other clients not subpoenaed. Rimini's counsel engaged in bi-weekly, telephonic conferences with Oracle's counsel—which typically lasted between two and four hours each—for a period of approximately seven months to discuss in great detail what had been collected and what was outstanding for each and every client that was in-scope for the project (approximately 1,000 in total). During a single meet-and-confer call, the Parties were able to discuss the collection efforts for anywhere between 20 and 60 of Rimini's clients. (These multi-hour teleconferences were separate from and in addition to the Parties' weekly or bi-weekly discovery calls discussed below.)

19. Before each of these meet-and-confer calls, the Parties would exchange spreadsheets reflecting detailed information about the collection efforts made by each Party with respect to every Rimini client that would be discussed on the upcoming call. Rimini's spreadsheets contained 19 columns of information for each client.

20. Following the meet-and-confer calls, the Parties would exchange detailed letters—separate from and in addition to the Court-ordered weekly or bi-weekly discovery issue letters discussed below—summarizing the collection efforts discussed on the calls and any agreements a Party had made with respect to following up with a client for the information

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

Oracle sought. In all, the Parties exchanged at least 16 letters, totaling almost 300 single-spaced pages of summaries.

21. Magistrate Judge Hoffman commended Rimini on "making progress" and "trying to be as efficient as possible" during this long process of helping Oracle to collect third-party information. *Rimini II*, ECF No. 491 (April 28, 2017 Hr'g Tr. at 24:20–22).

22. Oracle took the deposition of 32 of Rimini's clients and other third parties concerning Rimini and its software support processes.

23. Oracle also took the deposition of seven Rimini experts regarding Rimini and its support processes.

24. Oracle submitted reports from nine experts. In total, it served 19 expert reports (including opening, corrected, and various "surrebuttal" and supplemental reports) concerning Rimini and Rimini's support processes. These reports encompassed many thousands of pages of opinions, exhibits, and appendices.

25. Rimini was in constant communication with Oracle to achieve this massive discovery effort with as much cooperation as possible. During the discovery period, the parties exchanged hundreds of meet-and-confer and other discovery-related letters, totaling thousands of pages. The parties also engaged in standing meet-and-confer calls to resolve discovery disputes and apprise each other of discovery progress. I personally participated in these teleconferences on a regular basis. Through 2016, these calls were weekly. The calls typically involved three to five attorneys from each side and addressed on the order of 10 to 20 issues each week. Calls lasted roughly an hour on average, but lasted much longer during busy discovery periods. To make the calls productive, the Parties each exchanged letters on Mondays raising outstanding discovery issues, and exchanged response letters on Wednesdays, in advance of Thursday voice-to-voice meet and confers. In its letters and during the meet-and-confer teleconferences, Rimini's counsel provided detailed information to Oracle's counsel concerning discovery. Starting in January 2017 until the end of fact discovery in February 2018, the letter exchange and meet-and-confer calls moved to a bi-weekly schedule because the

7

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

Magistrate Judge believed that the parties were cooperating to the point that weekly calls were no longer needed.

26.  During the course of fact discovery in *Rimini II*, there were myriad discovery issues raised to the Court by both Parties—through informal, periodic Joint Status Reports, and through formal motions to compel and other discovery motion practice—and resolved by the Court at Joint Status Conferences and formal hearings on motions.  Both Parties were well-versed in bringing discovery disputes to the Court's attention for intervention and resolution.

27.  Near the close of the discovery period in *Rimini II*, Judge Hoffman again commended Rimini's discovery efforts and professionalism, stating: "I appreciate all the hard work that everybody put into this.  I keep learning on this case, and the professional presentations and arguments and what have you are very inspirational to me.…  I appreciate all the work you've done in this case."  *Rimini II*, ECF No. 1119–2 (Oct. 23, 2018 Hr'g Tr. at 102:8–18).

### *Rimini I* Post-Injunction Discovery

28.  On February 27, 2019, Oracle filed a motion for "Limited" post-trial discovery into Rimini's compliance with this Court's injunction.  ECF No. 1199 ("Oracle's Motion to Permit Limited Discovery Regarding Rimini's Compliance With the Court's Permanent Injunction").  Judge Ferenbach opened discovery on June 21, 2019, setting a schedule for post-trial discovery.  *See* ECF No. 1232.

29.  In May 2019, the Court allowed Oracle to use all of the discovery from *Rimini II* in *Rimini I*.  *Rimini II*, ECF No. 1237.

30.  Pursuant to Judge Ferenbach's scheduling order (ECF No. 1232), Oracle sent a letter to Rimini on June 28, 2019, describing what Oracle contended was "conduct disclosed in *Rimini II* (including cross-use and cloud hosting) which Oracle contends would violate Judge Hicks' injunction if it continued after the injunction was effective."  On August 5, 2019, Rimini served a 15-page, single-spaced response that explained, point by point, why Oracle's contentions were factually and legally wrong, and described why Rimini's support processes do not violate the Court's Injunction.

8
DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn & Crutcher LLP

31.     The *Rimini I* post-Injunction discovery period (including expert discovery) was initially contemplated to take three and a half months (June 21, 2019–October 8, 2019), but was expanded to approximately seven months for fact discovery (until January 17, 2019) due to the sheer volume of materials Oracle sought.  Expert discovery closed June 30, 2020.

32.     During this discovery period, Rimini responded to 37 Oracle discovery letters and emails (averaging about one per week), which frequently raised multiple issues.  The parties also regularly engaged in telephonic meet and confers to discuss the issues raised in Oracle's correspondence.  On these calls, Rimini's counsel provided detailed information to Oracle's counsel concerning its discovery efforts.

33.     The parties agreed in early July 2019 to collaborate in the identification of custodians and search terms.  On July 9, 2019, Rimini proposed that Oracle agree to a limit of four custodians, including the heads of Rimini's PeopleSoft and JD Edwards development teams.  Rimini invited Oracle to choose the remaining two custodians.  On July 12, 2019, Oracle proposed a list of 20 custodians and 240 search terms.  Rimini offered to compromise and let Oracle choose six custodians (later raising its offer to eight custodians if that would avoid involving the Court in this dispute), but Oracle rejected Rimini's offer.  In the spirit of cooperation, Rimini nevertheless agreed to collect data from a set of 12 "priority" custodians of Oracle's choosing and spent weeks generating hit counts for Oracle using its 240 search terms, ostensibly to assist Oracle in narrowing its terms and custodians.  But Oracle refused to meaningfully narrow its terms, nor would it agree to a smaller group of custodians.  Given the compressed discovery period, Rimini informed Oracle that it would proceed to review documents collected from six custodians of Oracle's choosing and would produce documents on a rolling basis using a subset of Oracle's proposed search terms.  Oracle refused that offer and filed a motion to compel Rimini to collect from 20 custodians and to implement all 240 search terms.  ECF No. 1237.

34.     In ruling on Oracle's motion, the Court largely agreed with Rimini, allowing Oracle to select only 10 custodians and 120 search terms, and ordering Oracle to share the costs of these additional custodians and terms.  ECF No. 1256 (Sept. 3, 2019 Hr'g Tr. at 41:3–6).

9

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

Additionally, the Court made clear that Rimini was not "at fault" for the custodial discovery issue: "THE COURT: … as everyone realizes, [this is] an intense case, people working hard, it's very important. But even though [Oracle] had to file this motion, ***I don't think it was fault on any side***. You know, it's a tough issue[] to work through." *Id.* at 48:4–11 (emphasis added).

35. Rimini produced to Oracle hundreds of thousands of documents from the 10 custodians of Oracle's choosing. As in *Rimini II*, these custodians included Rimini's CEO, members of its upper management team, as well as software support engineers and technicians. Oracle also had complete discretion in selecting 120 search terms (*see* ECF No. 1255), which Rimini then used to identify responsive, non-privileged documents from the custodians.

36. In addition, Rimini produced to Oracle hundreds of thousands of non-custodial documents and files (in addition to those previously-produced in *Rimini II*) related to Rimini's support of the Oracle product lines at issue in this case. This included, among other things: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As in *Rimini II*, these non-custodial productions included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

37. Rimini again produced its AFW database (for the period post-dating the Injunction), which contained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Rimini also produced updated source code for Rimini's AFW proprietary software tools so that, again, Oracle had the versions of the tools that existed in the time period at issue in discovery.

38. In total, Rimini produced more than 10,000 documents from the AFW FTP archive that Rimini maintained starting in September 2019.

10
DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

39. Rimini also responded to 10 additional interrogatories, and 10 additional requests for admission. Like the interrogatories and requests for admission served in *Rimini II*, these discovery requests often had numerous subparts and took Rimini and its counsel hundreds of hours to complete. *See* ECF No. 1295 (Sheryl Arnold, Senior Manager within Rimini's Global Service Delivery Group, explaining that she and her team "spent well over 100 hours" preparing an exhibit for a response to one of Oracle's interrogatories, and that they "often had to work on this project at night or on weekends").

40. Rimini proffered a Rule 30(b)(6) corporate witness to testify on approximately 33 topics (Oracle's original deposition notice identified 40 topics).

41. Rimini continued to provide Oracle live, 24/7, read-only access to its internal software development tracking systems. As in *Rimini II*, this included ▮▮▮▮▮▮▮▮▮▮. In the post-trial proceeding, this also included a new system ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. Thus, again, Oracle's lawyers and experts had 24/7, read-only access to the very software platforms that Rimini engineers were using to plan and track their work.

42. Oracle served four third-party subpoenas and an additional eight public records requests to Rimini's clients and other third parties, asking them to produce their software files and all support files that they received from Rimini. Oracle took the depositions of four of these third parties.

43. Oracle prepared four expert reports regarding Rimini and Rimini's support processes.

44. Oracle took the deposition of two Rimini experts.

45. Oracle filed two motions to compel discovery in this proceeding. ECF Nos. 1237, 1290. In the first motion, as discussed above, Oracle sought additional search terms and custodians (beyond those Rimini had already agreed to) for Rimini's custodial document productions. The Court granted Oracle's motion in part and denied it in part, reducing by half the volume of terms and custodians Oracle could pursue, and ordering Oracle to share in the

11

Gibson, Dunn & Crutcher LLP

DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S
OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

costs of Rimini's productions. *See* ECF No. 1255. The second motion came toward the end of fact discovery. Oracle moved to compel on three separate issues. The Court denied Oracle's motion in full as to two of the issues. As to the third issue, the Court denied the motion in all relevant respects, but "granted" Oracle the ability to download publicly available marketing materials from Rimini's website—an ability that Oracle always had. *See* ECF No. 1310.

46. At the end of the fact discovery period, Magistrate Judge Ferenbach recognized the efforts that Rimini put into the discovery process, stating: "I put a lot of pressure on Rimini to do things, and both counsel have worked together, and that's great, I really appreciate that, and ***a ton of discovery has been given***." ECF No. 1310 (Jan. 22, 2020 Hr'g Tr. at 23:15–18) (emphasis added).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this Declaration on July 24, 2020, at Long Beach, California.

               */s/ Jennafer M. Tryck*
                 Jennafer M. Tryck

Gibson, Dunn & Crutcher LLP

12
DECLARATION OF JENNAFER M. TRYCK IN SUPPORT OF RIMINI STREET INC.'S OPPOSITION TO ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF