BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:  702.382.7300
Facsimile:  702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:  202.223.7300
Facsimile:  202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

BOIES SCHILLER FLEXNER LLP
SEAN P. RODRIGUEZ (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:  415.293.6800
Facsimile:  415.293.6899
srodriguez@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**REPLY IN SUPPORT OF ORACLE'S MOTION FOR SANCTIONS PURSUANT TO RULE 37**<br><br>**REDACTED** |

**TABLE OF CONTENTS**

I.   RIMINI'S DELETION PROGRAM DESTROYED ▬▬▬ OF FILES ............. 2

    A.   Rimini Admits That It Deleted Over ▬▬ Files Sent To Customers ................. 2

    B.   The Deleted Files Include Many Unique Documents ............................................. 2

    C.   The Destroyed Files Were Not "Temporary" Or "Transitory," And Rimini Was Obligated To Preserve Them ........................................................................ 4

II.  ORACLE WAS PREJUDICED BY RIMINI'S SPOLIATION ....................................... 7

III. RIMINI'S SPOLIATION WAS INTENTIONAL ............................................................. 9

IV.  ORACLE'S MOTION WAS TIMELY ........................................................................... 11

V.   CONCLUSION ................................................................................................................ 12

...

# TABLE OF AUTHORITIES

**Cases**

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
    319 F.R.D. 730 (N.D. Ala. 2017) ............................................................................................ 9

*Alexce v. Shinseki*,
    447 F. App'x 175 (Fed. Cir. 2011) ............................................................................................ 5

*Arista Records LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y 2009) ........................................................................................ 5

*Borum v. Brentwood Vill., LLC*,
    332 F.R.D. 38 (D.D.C. 2019) .................................................................................................... 3

*Colvolve, Inc. v. Compaq Computer Corp.*,
    223 F.R.D. 162 (S.D.N.Y. 2004) .............................................................................................. 5

*Freeman v. Collins*,
    2014 WL 325631 (S.D. Ohio Jan. 29, 2014) .......................................................................... 12

*Goodman v. Praxair Servs., Inc.*,
    632 F. Supp. 2d 494 (D. Md. 2009) ........................................................................................ 12

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
    497 F. Supp. 2d 627 (E.D. Pa. 2007) ........................................................................................ 5

*HP Tuners, LLC v. Sykes-Bonnett*,
    2019 WL 5069088 (W.D. Wash. Sept. 16, 2019),
    *R&R adopted as modified*, 2019 WL 5064762 (W.D. Wash. Oct. 9, 2019) ............................ 9

*Larios v. Lunardi*,
    — F. Supp. 3d —, 2020 WL 1062049 (E.D. Cal. 2020) ........................................................ 12

*Moody v. CSX Transp., Inc.*,
    271 F. Supp. 3d 410 (W.D.N.Y. 2017) ..................................................................................... 9

*Paisley Park Enters, Inc. v. Boxill*,
    330 F.R.D. 226 (D. Minn. 2019) ............................................................................................ 11

*Rhabarian v. Cawley*,
    2014 WL 546015 (E.D. Cal. Feb. 11, 2014) .......................................................................... 12
*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
    2015 WL 4077732 (S.D. Cal. July 6, 2015) ......................................................................... 12
*Skyline Steel, LLC v. PilePro, LLC*,
    101 F. Supp. 3d 394 (S.D.N.Y. 2015) .................................................................................... 6
*Small v. Univ. Med. Ctr.*,
    2018 WL 3795238 (D. Nev. Aug. 9, 2018) ............................................................................ 7
*Wai Feng Trading Co. v. Quick Fitting, Inc.*,
    2019 WL 118412 (D.R.I. Jan. 7, 2019) .................................................................................. 7
*Wakefield v. ViSalus, Inc.*,
    2019 WL 1411127 (D. Or. Mar. 27, 2019) .......................................................................... 12
*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*,
    2017 WL 239341 (W.D. Ark. Jan. 19, 2017) ........................................................................ 7
*WeRide Corp. v. Kun Huang*,
    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ....................................................................... 9

**<u>Rules</u>**

Fed. R. Civ. P. 37(e) ................................................................................................................ 6, 7, 9

Rimini has been caught red-handed deleting evidence. Again. Instead of taking responsibility, Rimini attempts to downplay and rationalize its destruction of over ▆▆ files' worth of critical evidence. The Court should reject Rimini's paper-thin excuses.

*First*, Rimini argues that Oracle has overstated the magnitude of Rimini's spoliation, claiming that over ▆▆ files are merely ▆▆, all but six of which were produced in some fashion. But the ▆▆-file figure is based entirely on self-serving meet-and-confer correspondence. That Rimini could not find even one piece of evidence to support this claim—or any employee, expert, or attorney willing to attest to it under penalty of perjury—is damning.

*Second*, Rimini invents the story that files distributed using FTP are merely "temporary" or "transitory." Not true. Files distributed using FTP remain on an FTP server indefinitely until they are affirmatively deleted by a user. The more than ▆▆ files are now lost because Rimini *wrote and implemented* the Deletion Program that sought out and destroyed them. If the files were "temporary" or "transitory," that is only because Rimini's spoliation made them so.

*Third*, Rimini falsely claims that Oracle fails to articulate any prejudice suffered as a result of Rimini's spoliation of evidence. Oracle's Motion describes in detail how the deleted documents likely would have demonstrated Rimini's further violations of the Injunction, including its continuing cross-use. Rimini's wholesale deletion of ▆▆ of the actual files it distributed to customer-associated environments—which go to the core of the Injunction's restrictions on Rimini's development and testing practices—is highly prejudicial.

*Fourth*, Rimini claims its spoliation was unintentional, attempting to portray itself as a model litigant whose prior spoliation of a vast Oracle software library was a simple "mistake." Rimini cannot reinvent the past. Its prior spoliation was followed by further litigation misconduct, and Rimini's latest act evinces intentionality. Rimini knew the files it distributed to customers were material, received an express discovery request for them, actively investigated its Deletion Program, misled Oracle about the its operation, and continued to spoliate.

*Finally*, Rimini claims that Oracle's Motion is untimely. But Rimini obstructed Oracle's attempts to learn the truth by repeatedly misleading Oracle about key facts related to its spoliation—changing its story only when presented with incontrovertible evidence of its

malfeasance. Even if this were not the case, Rimini never objected to the timing of this Motion prior to its Opposition, despite Oracle's repeated assertions to Judge Ferenbach that it intended to move on Rimini's spoliation. And Rimini articulates no prejudice from the Motion's timing.

The Court should not tolerate Rimini's repeat offenses—or its excuses.

I.  **RIMINI'S DELETION PROGRAM DESTROYED ▮▮▮▮ OF FILES**

Oracle's Motion describes Rimini's Deletion Program and details the scope of Rimini's spoliation. Mot. 5-6, 7-10. Rimini concedes that the files Oracle identified were deleted. Opp. 8. But Rimini attempts to disguise its intentional conduct with verbal gymnastics, minimizing the number of files it deleted, claiming (incorrectly) that no information was lost, and portraying the deleted files as merely "temporary" or "transitory." *Id.* at 1-2, 7-10, 14-19.

   A.  **Rimini Admits That It Deleted Over ▮▮▮ Files Sent To Customers**

Rimini takes issue with Oracle's terminology regarding its spoliation, claiming that its Deletion Program is *merely* a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 8-9. This claim is untrue. F-C Decl. Ex. 1 ¶ 135-136. In any event, Rimini's technical jargon cannot conceal the key fact: Rimini systematically deleted the files it distributed to customer-associated environments, and Rimini admits that it wrote the code to do so. Opp. at 7-9.

   B.  **The Deleted Files Include Many Unique Documents**

Oracle's opening expert report demonstrated that ▮▮▮ unique files were deleted. Mot. 8; F-C Decl. Ex. 1 ¶ 392. Rimini asserts that only ▮▮ unique files are at issue—not the ▮▮▮ files identified in Rimini's ▮▮▮▮▮—and claims it produced copies of all but six of them. Opp. 9-11. Remarkably, Rimini relies *solely* on meet-and-confer correspondence to support this claim.[1] *Id.*; Vandevelde Decl. Exs. C, G, H. Rimini fails to present a single piece of record evidence or a single declaration—from any employee, expert, or lawyer—to support it. *Id.* Rimini's unsubstantiated ▮▮-documents figure also suffers from two glaring problems.

---

[1] Rimini's cited declaration contains no support for Rimini's ▮▮-documents statistic or Rimini's claims about the scope of its productions. Frank Decl. ¶¶ 9-10 (cited at Opp. 10).

*First*, Rimini asserts (without evidence) that any two files with the same filename are necessarily identical. But Oracle's Motion demonstrated Rimini's practice of repeatedly modifying and distributing multiple distinct early drafts of files bearing the same filename during development before distributing a later version of the file to multiple customers. Mot. 8-9, 17-18; F-C Decl. Ex. 2 ¶¶ 24-25, Exs. 8-9. Rimini used TransferFiles to send ▊ files bearing the filename ▊ to prototype customer ▊ on ▊ separate occasions from the same non-customer-specific folder on Rimini's network. *Id.* Because ▊ did not need ▊ copies of the same file, the only plausible explanation is that the ▊ transfers reflected unique versions of the file at various stages of development. *Id.* This conclusion is bolstered by the fact that, after repeatedly sending the file to ▊, Rimini distributed a single version of the file to ▊ other customers. *Id.* But Rimini produced only the *single*, "final" version of the file to Oracle. *Id.* Because Rimini did not produce the ▊ earlier versions it sent to ▊—because Rimini's engineers apparently overwrote the earlier drafts of the file on Rimini's "local" systems—Rimini has no basis to claim that the files were identical, and *no witness* (no Rimini engineer, no Rimini expert, no Rimini lawyer) is willing to swear under oath that these files are identical. *See Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019) (imposing sanctions where spoliator "identified alternate copies and produced a substantial number" because, absent full recovery of all missing files, "no amount of discovery will confirm the extent to which information was lost."). Rimini's Opposition is silent on this example of spoliation.

*Second*, Rimini declares that files bearing *different* filenames are the same, even when those filenames self-evidently rebut the assertion. The following excerpt from Exhibit H to the Declaration of Eric Vandevelde ("Vandevelde Decl.")—part of the meet-and-confer correspondence Rimini cites—illustrates why Rimini's assertion makes no sense:

Vandevelde Decl. Ex. H. Rimini's suggestion that ▊ ▊, are each identical to ▊ is preposterous. Exhibit H contains many similar assertions that ▊. And

again, Rimini's suggestion is merely a suggestion, as *no evidence* supports its position.

Oracle attempted to quantify Rimini's spoliation by noting that Rimini failed to produce copies of files matching the file and folder names identified in Rimini's ▓▓ for ▓▓ of ▓▓ (over ▓▓) of the deleted files. Mot. 9-10 & n.4. Rimini objects to this figure as "wildly exaggerated" because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ *See* Opp. 9-10 ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (emphasis added)). But there is no way to know whether the files were identical *because Rimini destroyed them*. Perhaps a Rimini engineer knows whether Rimini's speculation has any basis, but not one stepped forward.

### C. The Destroyed Files Were Not "Temporary" Or "Transitory," And Rimini Was Obligated To Preserve Them

Rimini argues that its spoliation should be excused because the files it deleted were allegedly "temporary" and "transitory." Opp. 1-2, 16-19. Rimini mischaracterizes both the nature of the deleted files and its document preservation obligations.

Files distributed via FTP are stored on an FTP server unless affirmatively deleted, Mot. 5 n.1; F-C Decl. Ex. 1 ¶ 385, and Rimini's server is a permanent storage solution, Mot. 13. Rimini's likening its FTP server to ephemeral storage such as temporary cache files or RAM is as misleading as it is wrong. Absent the Deletion Program Rimini intentionally designed, wrote, and deployed, the deleted files would have remained on Rimini's server indefinitely. *Id.*

Rimini's attempt to analogize the files destroyed by its Deletion Program to the copy/paste functionality of a word processor is equally baffling. Opp. 1-2. The deleted files are more aptly analogized to attachments stored in the "sent" folder of an email account. When an email user sends a document from her hard drive as an email attachment, the transmitted version of the attached document remains stored in the "sent" email folder, even if the user subsequently modifies or deletes the file on her hard drive. Rimini's creation and use of the Deletion Program is akin to the email user's developing and running an email deletion program that automatically and continuously deletes all sent emails. The intentional creation of the email deletion program does not magically convert the sent folder from a permanent storage location to a transitory one.

1  Regardless, Rimini was duty-bound to preserve even temporary files once it was on notice that they were relevant. Mot. 13-14. Rimini's protestations to the contrary are unavailing.

*First*, Rimini invents a rule that "a party does not have any duty to preserve temporary, intermediate electronic data" "absent a specific request for temporary electronic data—especially where the information in the temporary files exists elsewhere and where there is no legitimate business purpose for the preservation of the temporary copy." Opp. 16-17. The primary case Rimini cites for this purported "rule," *Alexce v. Shinseki*, is an unpublished, out-of-circuit decision that did not address temporary electronic data and concerned documents whose duplicative nature was not in dispute. 447 F. App'x 175, 177-78 (Fed. Cir. 2011).[2]

The other cases Rimini relies on are similarly unhelpful to its argument. In *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, the court concluded that the "most important fact regarding the lost evidence is that the Harding firm did not affirmatively destroy the evidence" and that "no evidence has been presented showing that the Harding firm was responsible for erasing them." 497 F. Supp. 2d 627, 641 (E.D. Pa. 2007). Rimini, by contrast, created and ran its Deletion Program to delete files affirmatively that would otherwise have remained on its AFW FTP server. Mot. 5-6, 13; Opp. 7-8. *Arista Records LLC v. Usenet.com, Inc.* did not set forth a clear rule because (like here) the spoliating party had received a prior request for the documents. 608 F. Supp. 2d 409, 431 (S.D.N.Y 2009). And *Colvolve, Inc. v. Compaq Computer Corp.* involved "ephemeral" data displayed on an oscillator screen "until the tuning engineer makes the next adjustment, and then the document changes." 223 F.R.D. 162, 177 (S.D.N.Y. 2004). The court distinguished documents that "have some semi-permanent existence" and "are recoverable as active data until deleted, either deliberately or *as a consequence of automatic purging*." *Id.* (emphasis added). Here, the files Rimini deleted were permanent files until Rimini "automatically purg[ed]" them with the Deletion Program it wrote.

*Second*, Rimini's invented "specific request" rule fails as a matter of law and fact. The Federal Rules of Civil Procedure do not endorse this "catch me if you can" approach. Quite the

---

[2] Notably, the trial court in *Alexce* stated that "if it could be shown that documents were destroyed that were both nonduplicative and relevant, such developments could have substantially different implications." *Id.* at 177.

1 contrary, the Rule clearly require a litigant to suspend programs that automatically delete
2 evidence. Fed. R. Civ. P. 37(e); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 409 &
3 n.8 (S.D.N.Y. 2015) (rejecting Rimini's invented rule). Rimini not only failed to take the basic
4 step of suspending automatic deletion of the actual files it was sending to customers, Rimini
5 actually wrote and deployed the Deletion Program. And Rimini knows that it must preserve
6 evidence even in the absence of a "specific request," as Magistrate Judge Leen sanctioned
7 Rimini in *this case* for destroying an electronic software library shortly before the case was
8 filed—*i.e.*, prior to any discovery requests, let alone a "specific" one. ECF No. 466.

9       In any event, Oracle meets Rimini's test. Oracle specifically sought the files that Rimini
10 deleted from its AFW FTP server. In a September **2017** RFP, Oracle sought "[a]ll documents
11 concerning Rimini's storage or transfer of fixes, patches or updates for Oracle Software
12 . . . concerning Rimini's use of any file-sharing application, FTP or similar servers," as well as
13 copies of the fixes, patches, and updates Rimini distributed to customers via FTP. Mot. 7; Rodr.
14 Decl. Ex. E. Rimini cannot argue it lacked a specific request for the "fixes, patches, and
15 updates" it distributed to customers via its AFW FTP server.

16       ***Third***, as justification for its systematic destruction of evidence, Rimini concocts the tale
17 that its spoliation was necessary to prevent its AFW FTP server from ▮▮▮▮▮▮▮▮ Opp.
18 8-9. Unsurprisingly, Rimini never explains what ▮▮▮▮▮ is, how ▮▮▮▮▮ occurs, or why
19 ▮▮▮▮▮ is bad. *Id.* Curiously, ▮▮▮▮▮ is never even mentioned in any of Rimini's
20 supporting declarations. *See* Frank Decl. ¶ 11. In his declaration, Richard Frank testifies ▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮[3] (*Id.*) Even this explanation is nonsensical, as Rimini is arguing ▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As Oracle has previously shown, the files
25 Rimini distributes via TransferFiles are small, Mot. 15, and Rimini's opposition makes no

---

[3] Mr. Frank avers knowledge today, but during fact discovery he repeatedly answered ▮▮▮▮
▮▮▮▮ to questions about TransferFiles and the Deletion Program, such as ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Supp. Rodr. Decl., Ex. A (*Rimini II*, Feb. 28,
2018 Depo. of Rick Frank) at 91:9–92:13.

attempt to claim that it would have been burdensome to preserve this critical evidence.

II.     **ORACLE WAS PREJUDICED BY RIMINI'S SPOLIATION**

Despite acknowledging that Rule 37(e) "does not place the burden of proving or disproving prejudice on one party or the other," Rimini nevertheless improperly seeks to place this burden on Oracle. Opp. 19 (quoting *Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *69 (D. Nev. Aug. 9, 2018)). In doing so, Rimini selectively quotes from *Small*, which notes that "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair." *Id.* (quoting Fed. R. Civ. P. 37 Advisory Comm.'s Note, 2015 amend., subdiv. (e)(1)).[4]

Even if prejudice were Oracle's burden to prove, Oracle has more than met that burden. As Oracle's Motion explains in significant detail, the destroyed files and their metadata concern the software files Rimini sent to its customers. The files would have shown the extent to which Rimini violated the Injunction's prohibitions on cross-use by, among other things, (a) using customer-associated Oracle Software Environments to develop and test prototype updates later distributed to other customers, and (b) incorporating Oracle code in early versions of update files sent to prototype customers (code which was later sanitized from the final, produced versions). Mot. 16-18, 22. Rimini's claim that "Oracle has not even attempted to articulate how it has been prejudiced by Rimini's use of TransferFiles," Opp. 19—i.e., the Deletion Program—is baseless.

*First*, Rimini repeats its false and misleading argument that it has "located all but six (*i.e.*, 99%) of the transferred files Oracle requested and produced them to Oracle from their underlying locations on Rimini's systems." *Id.* Contrary to Rimini's representations, Rimini deleted ▇▇ files—not ▇▇—and the files Rimini produced did not match the underlying file

---

[4] Rimini's other citations do not bolster its arguments. While *Wai Feng Trading Co. v. Quick Fitting, Inc.*, 2019 WL 118412, at *6 (D.R.I. Jan. 7, 2019), states that "proof that the lost ESI is important or material to a significant issue should fall on the movant," there can be no dispute that the evidence of the actual files Rimini distributed to customers is material to the core issue in the present contempt proceedings—whether Rimini's development practices and distribution of updates comply with its obligations under the Injunction. And Rimini selectively quotes from *Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, 2017 WL 239341, at *2 (W.D. Ark. Jan. 19, 2017), which based its ruling on the fact that "at least some of that absent material was discoverable and available to the party seeking the sanction, who nevertheless chose not to review it." Here, it is impossible to verify whether the files Rimini produced are actual copies of the spoliated materials, and Rimini does not claim Oracle failed to review its productions.

and folder names from which AFW copied the deleted files in at least ▊ cases—over ▊.[5] Mot. 9-10. Rimini provides no evidence whatsoever to contradict this fact.

Rimini's claim that "Oracle previously acknowledged that Rimini's production of a *single copy* of each transferred file, along with a list of the clients that received each file, would be a 'fair and proportional way for Rimini to satisfy its discovery obligations'" grossly mischaracterizes Oracle's position. Opp. 20. The discovery compromise that Oracle proposed and that Rimini misquotes *expressly* ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Vandevelde Ex. B, at 6.

*Second*, Rimini's argument that "Oracle has made no showing that the duplicate files at issue would have materially improved its contempt case" or "contain information different from the copies Oracle already received in discovery" is circular. Opp. 20. Oracle cannot *know* what the deleted files contained because Rimini destroyed them. As these are the files Rimini actually sent to customers, they were central to determining Rimini's Injunction compliance, which is likely why Rimini deleted them.

*Third*, Rimini's claim that the deleted materials would have had "no impact on Oracle's case" is false, as is its assertion that "neither Oracle nor its expert has cited a single one of those intermediate files in support of its contempt motion." Opp. 21. Oracle's OSC Motion discusses the archived file "Dev Instruction for another Rimini PeopleSoft update (HCM200929)," which "▊▊▊ from the Oracle source code file ▊▊▊" ECF No. 1368, at 23 n.12 (citing ECF No. 1368-1 ¶ 87, Ex. 3). Oracle's expert also considered ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. ECF No. 1326, BFC Rept. ¶ 30.

*Fourth*, Rimini engages in victim-blaming, arguing that Oracle would have avoided prejudice by bringing its Motion sooner. Opp. 21. While the timeliness of Oracle's motion is discussed below, it is irrelevant to the issue of prejudice. By the time this dispute became ripe, the evidentiary damage caused by Rimini's destruction of documents (and thus the prejudice to

---

[5] Rimini disputes this figure, claiming that the location "*where* a file may be stored has nothing to do with the *contents* of the file . . . ." Opp. 20-21. But as neither Oracle, the Court, nor even Rimini can verify that the contents of the files Rimini produced actually match the contents of the files Rimini deleted (because they no longer exist), Oracle's method of matching file and folder names is the best available method for determining the scope of Rimini's spoliation.

Oracle) was complete.  Judge Ferenbach could not have ordered Rimini to reverse the deletion.

### III.  RIMINI'S SPOLIATION WAS INTENTIONAL

As Oracle's Motion explains, a more than sufficient basis exists for the Court to conclude that Rimini's spoliation was intentional.  Mot. 18-20.  Rimini (a) was aware of its document preservation obligations, (b) received discovery requests from Oracle for the files Rimini distributed to customers via FTP, (c) investigated the operation of the Deletion Program in 2018, (d) misled Oracle about the nature of its policies and practices, and (e) continued to destroy documents until it was forced to turn over the smoking-gun ▬▬▬ that proved the scope of Rimini's destruction of evidence.  *Id.* at 7, 18-20.

Having no defense on the facts, Rimini responds by emphasizing that Rule 37(e)(2)'s standard is more stringent than the standards for other discovery violations.  Opp. 22.  This truism does not rebut the fact that courts have found patterns of behavior like Rimini's more than sufficient to meet the intentionality requirement.  *HP Tuners, LLC v. Sykes-Bonnett*, 2019 WL 5069088, at *4 (W.D. Wash. Sept. 16, 2019), *R&R adopted as modified*, 2019 WL 5064762 (W.D. Wash. Oct. 9, 2019); *see also* Mot. 18-20 (additional authority).  Moreover, courts regularly *infer* intent based on factors including the nature of the spoliated evidence, the party's knowledge of its materiality, the affirmative steps the party took to destroy it, and the party's past conduct.  *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017); *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431-32 (W.D.N.Y. 2017) (applying *Ala. Aircraft*); *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020).

Rimini attempts to distinguish Oracle's authorities because they "involve the willful and covert destruction of evidence after a party has already been put on clear notice of a request for the destroyed evidence."  Opp. 23.  This argument restates the rule—and describes Rimini's behavior to a T.  Rimini was on notice of Oracle's request for updates distributed to customers via FTP, investigated the operation of its Deletion Program in September 2018, lied about the program, and continued to destroy the files anyway.  Mot. 18-20.  The only reasonable conclusion is that Rimini's continued use of the Deletion Program was fully intentional.

Rimini also claims it "acted transparently and in good faith at all times."  Opp. 22.  But

1  Rimini demonstrated the opposite of transparency and good faith when it repeatedly misled
2  Oracle about TransferFiles and the Deletion Program.  In 2017, Rimini falsely stated that it did
3  not have "any policies, practices, or procedures regarding the deletion of fixes, patches, or
4  updates." Mot. 7; Rodr. Decl. Ex. H.  When Oracle asked about empty directories on Rimini's
5  FTP server in 2018, Rimini assured Oracle that the materials distributed via TransferFiles "have
6  been produced in this litigation"—the same misleading claim Rimini asserts now.  Mot. 7; Rodr.
7  Decl. Ex. K.  And Rimini deserves no credit for its actions in late 2019 to "locate and produce"
8  copies of the deleted files or to archive going forward.  *See* Opp. 23.  Rimini took those steps
9  only *after* the Court ordered Rimini to produce discovery necessary to enforce the Injunction,
10 including Rimini's smoking-gun ███████.  Mot. 7-8, 10-11.

11      Rimini contends that Oracle should have made greater efforts to challenge the misleading
12 representations Rimini made during *Rimini II* discovery.  Opp. 23-24.  Rimini's suggestion that
13 Oracle is somehow to blame for falling for Rimini's lies is absurd.  This argument cannot excuse
14 Rimini's duty to preserve evidence relating to the Injunction in this *Rimini I* action.  Even in
15 *Rimini II*, as Oracle noted in its Motion, Rimini sent its misleading "explanation" for how
16 TransferFiles operates only *after* discovery had substantially ended.  Mot. 7.  In addition, during
17 the *Rimini II* period, ████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████. *Id.* at 5.
19 Oracle had no knowledge that Rimini ████████████████████████████████████████
20 ████████ during the Injunction period until the Court reopened discovery.

21      Rimini argues that the Court should disregard its prior history of spoliation, asserting that
22 its previous destruction of evidence was simply an isolated "mistake."  Opp. 24.  But Rimini's
23 litigation misconduct is not limited to its past destruction of evidence—or even its attempts to
24 cover up that spoliation by falsely representing that it had never maintained the deleted library of
25 Oracle software.  *See* Mot. 3.  Rimini has also been caught submitting false statements to stave
26 off summary judgement.  *See* ECF No. 1120 at 4-5.  Rimini's spoliation is part of a longstanding
27 pattern of misconduct.
28      In a last-ditch attempt to evade responsibility, Rimini even blames its lawyers, claiming

that Rimini has been a model litigant with "an exemplary record in discovery" following its retention of Gibson Dunn. Opp. 24. Rimini neglects to mention that it retained Gibson Dunn *before* the first trial, and that after hiring Gibson Dunn, Rimini failed to update its false written discovery assertions and deposition testimony. Not until the first days of trial did CEO Seth Ravin finally admit that he had lied about Rimini's history of cross-use and other forms of copyright infringement (while Gibson Dunn attorneys sat in the courtroom). ECF No. 1120 at 3-5. Rimini also has the same General Counsel today as it did when Mr. Ravin provided this testimony, and he, too, was present in the courtroom that day. Rimini's past spoliation is consistent with its broader malfeasance throughout the litigation and is clearly relevant to the Court's evaluation of Rimini's intentionality. Rimini must take responsibility for its decisions and conduct, not blame lawyers it chose to fire.

## IV.  ORACLE'S MOTION WAS TIMELY

Rimini contends that Oracle's Motion is untimely, arguing that Oracle should have brought its Motion during the contempt discovery period or even during *Rimini II* discovery. Opp. 13-14. Oracle's Motion documents its exhaustive, years-long series of attempts to understand if Rimini was using TransferFiles as a spoliation tool. Mot. 7-8. Oracle's diligent efforts to investigate whether Rimini was destroying evidence of cross-use were met with obfuscation. As a result, Oracle was unable to demonstrate spoliation until the Court reopened discovery and Rimini produced the ▊▊▊▊ on August 19, 2019 proving its spoliation. *Id.* When Rimini finally produced those ▊, Oracle brought its spoliation concerns to Rimini the very next day, Mot. 10; Rodr. Decl. Ex. O, and Rimini informed Oracle approximately one month later that it would archive files distributed via TransferFiles "[g]oing forward," Mot. 11; Rodr. Decl. Ex. P. This eliminated the need for Oracle to bring the motion during discovery: Rimini's spoliation had ceased, and there was nothing anyone could do to reverse the deletions.[6]

Less than a month later, at a hearing before Judge Ferenbach, Oracle's counsel mentioned

---

[6] Rimini contends that Judge Ferenbach might have allowed Oracle to issue additional third-party subpoenas, Opp. 11, 14. Oracle did ask; Rimini opposed; and the Court denied Oracle's request. ECF No. 1287 at 4-6, 9-11; ECF No. 1294, 47:1–48:4. *Cf. Paisley Park Enters, Inc. v. Boxill*, 330 F.R.D. 226, 235 (D. Minn. 2019) (spoliation sanctions imposed where evidence not recoverable from unsubpoenaed third parties).

the spoliation issue early on.  ECF No. 1256, at 5:11-25.  Rimini cannot claim surprise because Oracle spelled out the issue for both Rimini and the Court:

> [The] reliability of all the technical information they're giving us has been called into question recently because **they've got one tool, it's transfer files** that is used to transfer updates and work to the customer but then it immediately deletes the—for lack of term—evidence of what was transferred . . . **this was the spoliation issue I referenced before.**"

*Id.* at 32:12-33:8.  Then, at a January 22 hearing, the Court acknowledged that Oracle had carefully reserved its rights on the spoliation issue:

> [ORACLE'S COUNSEL]: "[T]here may be a possible request for spoliation sanctions as well in connection with this [OSC motion].
>
> THE COURT: *Yeah, that would be down the road.* I'm not trying to, you know, cut you off.  Just—it sounds to me—of course, you can't predict the future how I'm going to rule on this motion, and as things get produced, something might happen.  But as things stand now and what's known, *setting aside this possible spoliation which you reserve* that, everything else seems to be completed?

ECF No. 1310, at 5:24-6:15.

In any event, "[n]o federal rule dictates the timing of a request for spoliation sanctions." *Freeman v. Collins*, 2014 WL 325631, at *7 (S.D. Ohio Jan. 29, 2014).  Courts therefore have discretion whether to assess the timeliness of a spoliation motion—or to decline to do so. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009).  Even in the cases Rimini cites, courts declined to find spoliation motions untimely—even when the movant's delay was "egregious"—when they were brought before the adjudication of dispositive motions and before the eve of trial.  *Id.* at 509; *see also Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 4077732, at *2 (S.D. Cal. July 6, 2015).[7]  Here, Oracle filed its spoliation Motion at the same time it filed its motion for an Order to Show Cause—so that the Court and parties need not revisit the same facts multiple times.

V. **CONCLUSION**

For the foregoing reasons, the Court should grant Oracle's motion.

---

[7] *Accord Wakefield v. ViSalus, Inc.*, 2019 WL 1411127, at *4 (D. Or. Mar. 27, 2019) (denying spoliation motion brought shortly before trial); *Larios v. Lunardi*, — F. Supp. 3d —, 2020 WL 1062049, at *4 (E.D. Cal. 2020) (denying spoliation motion brought after dispositive motion deadline); *Rhabarian v. Cawley*, 2014 WL 546015, at *3 (E.D. Cal. Feb. 11, 2014) (same).

DATED: July 31, 2020            BOIES SCHILLER FLEXNER LLP


By: */s/ Richard J. Pocker*
      Richard J. Pocker
      Attorneys for Plaintiffs Oracle USA, Inc.,
      Oracle America, Inc., and Oracle International
      Corporation

# CERTIFICATE OF SERVICE

I certify that on July 31, 2020, I electronically transmitted the foregoing **REPLY IN SUPPORT OF ORACLE'S MOTION FOR SANCTIONS PURSUANT TO RULE 37** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel are CM/ECF registrants.

Dated: July 31, 2020               BOIES SCHILLER FLEXNER LLP


                                   By:  /s/ *Ashleigh Jensen*
                                        Ashleigh Jensen