# EXHIBIT L

# Excerpts from September 20, 2019 deposition of Easter Seal New Hampshire's 30(b)(6) corporate representative, Jay A. Hoyt

# PUBLIC REDACTED VERSION

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
                      DISTRICT OF NEVADA
 2                 NO. 2:10-cv-0106-LRH-VCF
   _____
 3   ORACLE USA, INC.; a Colorado corporation; ORACLE )
 4   AMERICA, INC.; a Delaware corporation; and ORACLE)
 5   INTERNATIONAL CORPORATION, a California          )
 6   corporation,                                     )
 7                  Plaintiffs,                       )
 8                     vs.                            )
 9   RIMINI STREET, INC., a Nevada corporation;       )
10   and SETH RAVIN, an individual,                   )
11                  Defendants.                       )
12   _____)
13          HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY
14               VIDEOTAPED DEPOSITION OF EASTER
15   SEALS OF NEW HAMPSHIRE BY JAY A. HOYT, called as a
16   witness by and on behalf of the Plaintiffs,
17   pursuant to the applicable provisions of the
18   Federal Rules of Civil Procedure, Rule 30(b)(6),
19   before P. Jodi Ohnemus, RPR, RMR, CRR, CA-CSR
20   #13192, NH-CSR #91, and MA-CSR #123193, at Sheehan
21   Phinney Bass & Green, 1000 Elm Street, Manchester,
22   New Hampshire, on Friday, September 20, 2019,
23   commencing at 9:21 a.m.
24
25   PAGES: 1-67
```

Page 1

### Page 18

```
 1    A.   We moved to another system.            09:39:50
 2    Q.   What system was that?                  09:39:51
 3    A.   DayForce by Ceridian.                  09:39:55
 4    Q.   Does Rimini provide updates for the    09:39:57
 5  DayForce system?                              09:39:59
 6    A.   No.                                    09:40:00
 7    Q.   Why did you decide to switch?          09:40:04
 8    A.   PeopleSoft is old.                     09:40:09
 9    Q.   Were you still able to receive updates for  09:40:14
10  the PeopleSoft system that you had in April of 2018  09:40:16
11  -- PeopleSoft HR?                             09:40:18
12    A.   Yes.                                   09:40:20
13    Q.   Aside from being old, was there anything  09:40:23
14  particular that PeopleSoft HR -- how it wasn't  09:40:25
15  meeting your needs?                           09:40:28
16    A.   Yes.                                   09:40:35
17    Q.   And what was that?                     09:40:35
18    A.   It's -- well, because of its age, it   09:40:40
19  doesn't have the capabilities of a -- a modern  09:40:44
20  system; it was installed in-house; we didn't want  09:40:48
21  to maintain the software inside of our own    09:40:52
22  environment.                                  09:40:56
23    Q.   What were the challenges with maintaining  09:40:59
24  the software?                                 09:41:00
25    A.   It's just time, it's -- and effort of  09:41:03
```

### Page 19

```
 1  staff.                                        09:41:06
 2    Q.   Was cost a consideration?              09:41:09
 3    A.   No.                                    09:41:12
 4    Q.   Looking back at the document at 9402, who  09:41:15
 5  is Christopher R. Dunn, if you know?          09:41:22
 6    A.   I don't.                               09:41:24
 7         MS. CARRIER:  Sorry -- for clarification:  09:41:27
 8  Christopher Dunn works at my office.  He just  09:41:28
 9  printed these documents.                      09:41:30
10         MR. MINNE:  Okay.                      09:41:33
11    Q.   Other than the author or printer at the  09:41:33
12  top, does the information in the header look  09:41:37
13  correct?                                      09:41:42
14    A.   Yes.                                   09:41:43
15    Q.   Is there any reason to believe that it  09:41:43
16  would have been changed since you received it?  09:41:45
17    A.   No.                                    09:41:47
```

### Page 20

```
 2    Q.   Do you know where your update would have  09:42:16
 3  been posted?                                  09:42:17
 4    A.   In the cloud based.                    09:42:18
 5    Q.   And am I correct that you did not collect  09:42:23
 6  materials from the cloud server?              09:42:26
 7    A.   That's true.                           09:42:27
 8    Q.   Do you consider that to be your system?  09:42:28
 9    A.   We provision it.                       09:42:31
10    Q.   What does that mean?                   09:42:34
11    A.   We purchase the system.                09:42:36
12    Q.   Did you purchase the physical hardware?  09:42:41
13    A.   No.                                    09:42:42
14    Q.   Well, what did you -- what did you     09:42:46
15  purchase, then?                               09:42:48
16    A.   Service.                               09:42:49
17    Q.   Okay.  From whom?                      09:42:49
18    A.   Windstream.                            09:42:50
19    Q.   So going back then, because you purchased  09:42:58
20  it, do you consider it to be your system?     09:43:00
21    A.   Yes.                                   09:43:09
22    Q.   All right.  If asked, will you collect  09:43:12
23  documents from that system?                   09:43:15
24    A.   No.                                    09:43:15
25    Q.   Why not?                               09:43:16
```

### Page 21

```
 1    A.   We don't need it.                      09:43:19
 2    Q.   In the context of responding to this   09:43:22
 3  subpoena in this matter that calls for support  09:43:24
 4  documents from your systems, is there a reason you  09:43:26
 5  wouldn't collect it?                          09:43:30
 6    A.   Again, we wouldn't need it.            09:43:32
 7    Q.   Okay.  So turning back to -- I believe  09:43:53
 8  it's Exhibit 1802, Schedule A.                09:43:55
 9    A.   (Witness reviews document.)            09:43:55
10    Q.   So item "b" calls for "All documents and  09:44:22
11  communications concerning any Oracle software and  09:44:26
12  support materials that have been copied to or  09:44:29
13  stored on your systems by Rimini on or after August  09:44:31
14  15th, 2018," and it goes on.                  09:44:35
15         So -- so do you consider the updates to be  09:44:40
16  responsive to this request or not?            09:44:44
17    A.   I don't.                               09:44:48
18    Q.   Okay.  And why not?                    09:44:49
19    A.   Again, because we don't -- we didn't use  09:44:51
20  them.                                         09:44:53
21    Q.   So I guess I'm wondering, because you  09:44:56
22  didn't use them, do you not consider Windstream to  09:45:00
23  be your system?                               09:45:02
24    A.   In that context, no.                   09:45:04
25    Q.   Okay.  When was the last time you used  09:45:08
```



| | Page 26 | | | Page 28 |
|---|---|---|---|---|
| 18 | Q. Do you know whether Easter Seals continues 09:52:34 | | 1 | Q. And you don't use PeopleSoft HR; correct? 09:54:21 |
| 19 | to pay for the Windstream environment? 09:52:36 | | 2 | A. That's correct. 09:54:24 |
| 20 | A. Yes. 09:52:40 | | 3 | Q. And you don't need updates for PeopleSoft 09:54:26 |
| 21 | Q. And does Easter Seals continue to pay for 09:52:43 | | 4 | HR; correct? 09:54:28 |
| 22 | the Windstream environment? 09:52:45 | | 5 | A. That's correct. 09:54:29 |
| 23 | A. Yes. 09:52:46 | | 6 | Q. In addition to the printed-out version of 09:54:50 |
| 24 | Q. Do you know about how much they pay? 09:52:47 | | 7 | these files that you have, do you know whether 09:54:52 |
| 25 | A. Yes. 09:52:49 | | 8 | these files were also collected and produced in 09:54:53 |

Page 26

| 1 | Q. How much is that? 09:52:50 |
| 2 | A. Approximately $1,100 a year. 09:52:52 |
| 3 | Q. Do you know why Easter Seals continued to 09:53:01 |
| 4 | pay for the environment when it no longer uses that 09:53:03 |
| 5 | environment for support? 09:53:05 |
| 6 | A. Could you repeat that? 09:53:09 |
| 7 | MR. MINNE: Could you read back the 09:53:11 |
| 8 | question. 09:53:12 |
| 9 | (Question read back.) 09:53:12 |
| 10 | A. I do. 09:53:26 |
| 11 | Q. And why is that? 09:53:27 |
| 12 | A. The environment is for testing any update 09:53:31 |
| 13 | that we might potentially need from a support 09:53:38 |
| 14 | perspective. 09:53:41 |
| 15 | Q. Does that include any updates to 09:53:46 |
| 16 | PeopleSoft Financials? 09:53:49 |
| 17 | A. Yes. 09:53:51 |
| 18 | Q. Do you currently receive updates to 09:53:55 |
| 19 | PeopleSoft Financials from Rimini? 09:53:57 |
| 20 | A. We received one. 09:53:59 |
| 21 | Q. Which update was that? 09:54:01 |
| 22 | A. That was the attachment with the zip file. 09:54:02 |
| 23 | Q. Okay. But you no longer receive updates 09:54:12 |
| 24 | for PeopleSoft HR; correct? 09:54:13 |
| 25 | A. We no longer retrieve them. 09:54:17 |

Page 27

9   native version? 09:54:56
10  A. I don't understand the question. 09:54:59
11  Q. Did you have to collect these files twice? 09:55:07
12  A. No. 09:55:11
13  Q. Okay. I'll represent to you that, in 09:55:13
14  addition to receiving a PDF with all of these 09:55:16
15  files, we also received native version copies of 09:55:18
16  these files. 09:55:20
17  Does that make sense? 09:55:22
18  A. Yes. 09:55:23
19  Q. Okay. 09:55:23

Page 29

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



```
12        MR. THOMAS:  Counsel, just one question --    10:41:06
13   housekeeping:  This is an exhibit number from       10:41:09
14   another case.                                       10:41:13
15        MR. MINNE:  That's correct, yes.               10:41:16
16        MR. THOMAS:  Do you think it's a good idea     10:41:18
17   to continue using exhibits from another case?       10:41:19
18   Given numbers, I mean.                              10:41:22
19        MR. MINNE:  I've got no objection if we        10:41:23
20   want to further mark it.                            10:41:28
21        MR. THOMAS:  I think it might be a good        10:41:30
22   idea, because otherwise we may have a 121 in this   10:41:31
23   case.                                               10:41:35
24        MR. MINNE:  Yeah.  That's -- that's fair.      10:41:36
25   Sure.                                               10:41:36
                                                         Page 50
```

```
 6        Q.  Do you know if Easter Seals has a license  10:43:41
 7   for any COBOL compiler?                             10:43:44
 8        A.  I don't believe so.                        10:43:47
 9        Q.  Do you know if Easter Seals previously had 10:43:52
10   a license for a COBOL compiler?                     10:43:53
11        MR. THOMAS:  Objection.  Outside the scope     10:43:56
12   to the extent...                                    10:43:56
13        (Court Reporter comment.)                      10:43:56
14        MR. THOMAS:  Outside the scope of the          10:43:56
15   subpoena to the extent it's outside the time frame  10:44:01
16   for the subpoena.                                   10:44:03
17        A.  I -- I don't know.  Possibly.              10:44:08
```

```
23        MR. MINNE:  Okay.  Those are the questions     10:44:33
24   I have at this time.  I'll note that there were     10:44:34
25   several documents referenced that we had not        10:44:36
                                                         Page 52
```

```
 1   Let's mark it 1809 -- sorry, the                    10:41:36
 2   previously marked Exhibit 121 will be marked 1809.  10:41:38
 3        (Exhibit 1809, EASTERSEALSNH2-SUB              10:41:49
 4        000007844-848.)                                10:41:53
 5        Q.  You testified previously --                10:42:15
 6        MR. MINNE:  Is the court reporter ready?       10:42:19
 7        COURT REPORTER:  I'm ready.                    10:42:20
 8        Q.  You testified previously that Easter Seals 10:42:22
 9   paid approximately $1,100 for this Windstream       10:42:24
10   environment; correct?                               10:42:27
11        A.  Yes.                                       10:42:28
                                                         Page 51
```

```
 1   received, and to the extent those are -- we would   10:44:38
 2   request those documents be produced and reserve all 10:44:42
 3   rights to continue the deposition regarding those   10:44:48
 4   documents.                                          10:44:51
 5        MR. THOMAS:  Let's go off the record for a     10:44:52
 6   minute.                                             10:44:53
 7        VIDEO OPERATOR:  The time is 10:45, and we     10:44:54
 8   are now off the record.                             10:44:56
 9        (Recess was taken.)                            10:44:56
10        VIDEO OPERATOR:  The time is 10:49, and we     10:49:22
11   are now back on the record.                         10:49:25
12        EXAMINATION                                    10:49:25
13   BY MR. THOMAS:                                      10:49:25
14        Q.  Good morning, sir.  My name's Jeff Thomas, 10:49:27
15   and I represent Rimini Street.  Thanks for your     10:49:30
16   time here today.                                    10:49:32
17        Now, you've explained to us that you are      10:49:36
18   no longer retrieving the PeopleSoft HR updates      10:49:38
19   because you don't -- you no longer use that system; 10:49:42
20   correct?                                            10:49:45
21        A.  That's true.                               10:49:46
22        Q.  Okay.  But you still want and have         10:49:47
23   contracted for Rimini to provide updates to the     10:49:51
24   environment on -- in the cloud.                     10:49:55
25        A.  For PeopleSoft Financials.                 10:50:00
                                                         Page 53
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    Q.  Okay.  But are you -- do you know whether       10:50:04
 2  Rimini is, in fact, still downloading updates to      10:50:08
 3  PeopleSoft HR in the environment?                     10:50:13
 4        MR. MINNE:  Objection.  Lacks foundation.       10:50:17
 5    A.  I -- I don't know.                              10:50:19
 6    Q.  Do you know whether you still have a            10:50:21
 7  contract with Rimini and are paying Rimini to         10:50:24
 8  provide those PeopleSoft HR updates?                  10:50:28
 9    A.  We are.                                         10:50:31
10        MR. MINNE:  Same objection.                     10:50:32
11    Q.  You are.                                        10:50:33
12    A.  We are.                                         10:50:33
13    Q.  Okay.  So that's something that Easter          10:50:34
14  Seals wants Rimini to do; correct?                    10:50:36
15    A.  Yes.                                            10:50:38
16        MR. MINNE:  Could you give me a second to       10:50:43
17  interpose an objection before you answer.             10:50:44
18        THE WITNESS:  Okay.                             10:50:46
19    Q.  So is it -- is it true that Easter Seals        10:50:47
20  has made the decision that, although it no longer     10:50:50
21  uses PeopleSoft HR, it wants Rimini to continue to    10:50:56
22  provide updates for that system in the cloud          10:51:02
23  environment?                                          10:51:06
24        MR. MINNE:  Objection.  Lacks foundation.       10:51:07
25    A.  Yes.                                            10:51:11
```
Page 54

```
 1    Q.  And has Easter Seals ever asked Rimini to       10:51:17
 2  stop providing those updates?                         10:51:21
 3    A.  No.                                             10:51:23
 4    Q.  Has Easter Seals ever informed Rimini that      10:51:23
 5  it is no longer using the PeopleSoft HR system?       10:51:28
 6        MR. MINNE:  Objection.  Lacks foundation.       10:51:33
 7    A.  Not to my knowledge.                            10:51:34
 8    Q.  And I believe you explained that, although      10:51:45
 9  you no longer use the PeopleSoft HR system, you       10:51:48
10  still have that software and the database on your    10:51:50
11  system?                                               10:51:53
12    A.  We do.                                          10:51:54
13    Q.  And that's because you use it for               10:51:56
14  reference and other purposes?                         10:51:57
15    A.  That's true.                                    10:51:59
16    Q.  Now, you explained to Counsel earlier that      10:52:10
17  Easter Seals does not have access to the test         10:52:15
18  environment that's maintained in the cloud;           10:52:17
19  correct?                                              10:52:20
20    A.  That's true.                                    10:52:20
21    Q.  But you do have access -- don't you -- to       10:52:21
22  the FTP site where you can download the updates       10:52:26
23  from?                                                 10:52:28
24        MR. MINNE:  Objection.  Misstates               10:52:29
25  testimony.                                            10:52:30
```
Page 55

```
 1    A.  I'm going to say probably.                      10:52:32
 2    Q.  And in terms of retrieving any updates --       10:52:35
 3  for example, for PeopleSoft Financial -- that         10:52:41
 4  Rimini may provide, do you need access to any other   10:52:46
 5  site other than that FTP site?                        10:52:51
 6    A.  No.                                             10:52:53
 7    Q.  Sir, Counsel showed you previously what         10:53:08
 8  was marked as Exhibit 1809, which is the email that   10:53:11
 9  you sent.                                             10:53:20
10        Do you see that?                                10:53:21
11    A.  Yes.                                            10:53:22
12    Q.  Okay.  I'd just like to ask you a couple        10:53:24
13  of followup questions about that.                     10:53:25
14        MR. THOMAS:  I'm going to ask the reporter      10:53:43
15  to mark as Exhibit 1810 a document that was           10:53:45
16  previously marked in the other lawsuit as Exhibit     10:53:50
17  118.                                                  10:53:54
18        (Exhibit 1810, Easter Seals 17672-675.)         10:54:05
19        MR. MINNE:  Counsel, it looks like you're       10:54:19
20  introducing into evidence the entire set of           10:54:20
21  deposition exhibits?                                  10:54:23
22        MR. WHITTAKER:  No, that's just a copy for      10:54:25
23  you.                                                  10:54:26
24        MR. MINNE:  Okay.                               10:54:26
25        MR. THOMAS:  I suggest you use tab 118 as       10:54:28
```
Page 56

```
 1  your copy.                                            10:54:28
 2        MR. MINNE:  Understood.  Thank you.             10:54:32
 3    Q.  Sir, do you have that in front of you?          10:54:33
 4    A.  I do.                                           10:54:35
 5  [REDACTED]
 6  [REDACTED]
 7  [REDACTED]
 8  [REDACTED]
 9  [REDACTED]
10  [REDACTED]
11  [REDACTED]
12  [REDACTED]
13  [REDACTED]
14  [REDACTED]
15  [REDACTED]
16  [REDACTED]
17  [REDACTED]
18  [REDACTED]
19  [REDACTED]
20  [REDACTED]
21    Q.  It's true, isn't it, that you were given        10:55:26
22  the option to either put your environments on your    10:55:28
23  own systems or -- or in the cloud?                    10:55:31
24    A.  That's true.                                    10:55:36
25    Q.  And Easter Seals chose the option of            10:55:37
```
Page 57

15 (Pages 54 - 57)

```
 1  putting your environments in the cloud.          10:55:40
 2    A.  That's true.                                10:55:42
 3    Q.  And by doing so you took ownership of your  10:55:43
 4  -- of those cloud environments; is that true?    10:55:48
 5    A.  Yes, by paying for it.                      10:55:52
 6        MR. THOMAS:  Mark as Exhibit --             10:56:38
 7        COURT REPORTER:  1811.                      10:56:41
 8        MR. THOMAS:  -- 1811 a document that was    10:56:44
 9  previously marked in the other litigation as      10:56:47
10  Exhibit 110, license agreement between PeopleSoft 10:56:49
11  and Easter Seals.                                 10:57:02
12        (Exhibit 1811, ORCLRS 0665229-236.)         10:57:08
13    Q.  Sir, do you see that this is a Software     10:57:22
14  License and Services Agreement between PeopleSoft 10:57:28
15  and Easter Seals?                                 10:57:30
16    A.  Yes.                                        10:57:33
17        MR. MINNE:  Objection.  Outside the scope.  10:57:33
18  Lacks foundation.                                 10:57:36
19    Q.  And you see in the very first provision of  10:57:48
24        MR. MINNE:  Same objections.                10:58:10
25    Q.  Do you see that?                            10:58:11
                                                        Page 58
```

```
 1    A.  Yes.                                        10:58:11
 2    Q.  Are you -- since August 15 of 2018, are     10:58:13
 3  you aware of Rimini providing any support for     10:58:19
 4  Easter Seals for any purposes other than your     10:58:25
 5  internal data processing operations?              10:58:30
 6        MR. MINNE:  Objection.  Lacks foundation.   10:58:33
 7    A.  No.                                         10:58:35
 8    Q.  You mentioned earlier that you are aware    10:59:01
 9  that Mr. Bonfanti was deposed in other litigation 10:59:03
10  between Rimini and Oracle?                        10:59:07
11    A.  Yes.                                        10:59:11
12    Q.  Do you have any reason at all to believe    10:59:13
13  that any of the testimony that Mr. Bonfanti gave in 10:59:15
14  that deposition was inaccurate?                   10:59:18
15        MR. MINNE:  Objection.  Lacks foundation.   10:59:21
16    A.  No.                                         10:59:22
                                                        Page 59
```

```
11    Q.  Sir, since August 15, 2018, to your         11:01:49
12  knowledge has Oracle informed Easter Seals that it 11:01:55
13  should not continue to use Rimini?                11:02:02
14        MR. MINNE:  Objection.  Beyond the scope.   11:02:06
15    A.  No.                                         11:02:07
16    Q.  Has -- during that same time period, has    11:02:08
17  Oracle ever informed Easter Seals that it cannot  11:02:12
18  maintain its environments on the cloud?           11:02:17
19        MR. MINNE:  Objection.  Beyond the scope.   11:02:20
20    A.  No.                                         11:02:22
21    Q.  Has anyone ever suggested to you that       11:02:23
22  Easter Seals cannot both maintain your environments 11:02:27
23  on the cloud and use a third-party support        11:02:31
24  provider?                                         11:02:34
25        MR. MINNE:  Same objection.                 11:02:35
                                                        Page 60
```

```
 1    A.  No.                                         11:02:36
 2    Q.  Does that make any sense to you?            11:02:42
 3    A.  I -- I don't -- I don't know.  I'm not      11:02:45
 4  sure of the context.                              11:02:48
 5    Q.  Okay.  Fair enough.                         11:02:50
 6        MR. THOMAS:  No further questions.  Thank   11:02:58
 7  you very much.                                    11:03:00
 8        FURTHER EXAMINATION                         11:03:00
 9  BY MR. MINNE:                                     11:03:04
10    Q.  Mr. Hoyt, I have just a few more questions  11:03:11
11  for you, and then we can finish up.               11:03:13
12    A.  Okay.                                       11:03:13
13    Q.  Turning back to the collection of emails,   11:03:20
14  the last page, "Amendment 3."                     11:03:22
15        MR. THOMAS:  What exhibit are we on?        11:03:29
16        MS. CARRIER:  1804?                         11:03:35
17        MR. MINNE:  Yes.                            11:03:36
18    A.  Which one?                                  11:03:36
19    Q.  It's the last page, Easter Seals 9520.      11:03:37
20  It's Exhibit 1804.                                11:03:41
21    A.  Yes.                                        11:03:48
22    Q.  You testified earlier that you -- before    11:03:49
23  today you haven't seen this document; correct?    11:03:50
24    A.  I don't believe so.                         11:03:52
25    Q.  And is it also correct that you're not      11:03:54
                                                        Page 61
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    MR. MINNE: Yes.                    11:08:34
 2    VIDEO OPERATOR: Does that go for the   11:08:37
 3  video as well?                       11:08:38
 4    MR. MINNE: Yeah.                   11:08:41
 5    COURT REPORTER: Three days for your final
 6  transcript?
 7    I did get word of that.
 8    MR. WHITTAKER: You did? Then, yeah.
 9  That's what they've ordered.
10    MR. MINNE: Yeah, and if we can get roughs
11  as soon as possible.
12    COURT REPORTER: And does three days work
13  for you?
14    MR. MINNE: Fine.
15    (Whereupon the deposition recessed at
16    11:08 a.m.)
```

Page 66

CERTIFICATE

I, Patricia Jodi Ohnemus, a Licensed Shorthand Reporter for the State of New Hampshire, do hereby certify that the foregoing is a true and accurate transcript of my stenographic notes of the proceeding taken at the place and on the date hereinbefore set forth to the best of my skill and ability under the conditions present at the time.

I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this proceeding was taken, and further that I am not a relative or employee of any attorney or counsel employed in this case, nor am I financially interested in this action.

The foregoing certification of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying reporter.

*Patricia Jodi Ohnemus*
Patricia Jodi Ohnemus
LCR #91, RMR, RPR, CRR

Page 67

18 (Pages 66 - 67)