GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: 925.264.7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: 336.908.6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: 702.667.4843
wwa@h2law.com

*Attorneys for Defendant
Rimini Street, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., et al., <br><br> Defendants. | Case No. 2:10-CV-00106-LRH-VCF <br><br> **DEFENDANT RIMINI STREET, INC.'S MOTION FOR A JURY TRIAL** <br><br> <u>**ORAL ARGUMENT REQUESTED**</u> <br><br> <u>**PUBLIC REDACTED VERSION**</u> |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................1

II. PROCEDURAL POSTURE ...............................................................................2

III. LEGAL STANDARD AND PROCEDURES .......................................................4

IV. ARGUMENT ....................................................................................................6

    A.      The Nature Of This Proceeding Requires Certain Constitutional Protections............................................................................................7

    B.      Process 2.0's Legality Cannot Be Adjudicated In A Summary Proceeding.........................................................................................15

V. CONCLUSION ...............................................................................................19

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. TorPharm, Inc.*,
    503 F.3d 1372 (Fed. Cir. 2007)...................................................................17

*Am. Foundry & Mfg. Co. v. Josam Mfg. Co.*,
    79 F.2d 116 (8th Cir. 1935).......................................................................17

*Arbek Mfg., Inc. v. Moazzam*,
    55 F.3d 1567 (Fed. Cir. 1995)....................................................................16

*Bloom v. Illinois*,
    391 U.S. 194 (1968)....................................................................................9

*Cal. Artificial Stone Paving Co. v. Molitor*,
    113 U.S. 609 (1885)..................................................................................17

*Codispoti v. Pennsylvania*,
    418 U.S. 506 (1974)....................................................................................7

*Consolidation Coal Co. v. Local No. 1784*,
    514 F.2d 763 (6th Cir. 1975) .......................................................................5

*Cooke v. United States*,
    267 U.S. 517 (1925).....................................................................................7

*Crowe v. Smith*,
    151 F.3d 217 (5th Cir. 1998) .....................................................................13

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993) ...................................................................6, 15

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)...................................................................................16

*F.J. Hanshaw Enters., Inc. v Emerald River Dev., Inc.*,
    244 F.3d 11289 (9th Cir. 2001) ....................................2, 6, 9, 10, 11, 13, 14, 15

*Fidelity Nat'l Fin., Inc. v. Friedman*,
    2009 WL 890471 (D. Ariz. Mar. 31, 2009).................................................5

*FTC v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999) .....................................................................2

*FTC v. Trudeau*,
    579 F.3d 754 (7th Cir. 2009) .....................................................................13

DEFENDANT RIMINI STREET, INC.'S MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011) ............................................................16

*Green v. United States*,
   356 U.S. 165 (1958) (Black, J., dissenting)...............................8, 14

*Hicks v. Feiock*,
   485 U.S. 624 (1988)...........................................................................8

*Iconix, Inc. v. Tokuda*,
   457 F. Supp. 2d 969 (N.D. Cal. 2006) ............................................16

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994)...........................1, 2, 6, 7, 9, 13, 14, 15

*Jakes Ltd., Inc. v. City of Coates*,
   356 F.3d 896 (8th Cir. 2004) ..........................................................14

*Lindsey v. Normet*,
   405 U.S. 56 (1972).............................................................................6

*McCullough Tool Co. v. Well Surveys, Inc.*,
   395 F.2d 230 (10th Cir. 1968) ........................................................17

*Miller v. City of Los Angeles*,
   661 F.3d 1024 (9th Cir. 2011) ........................................................13

*Mitchell v. 3PL Sys., Inc.*,
   2013 WL 12129617 (C.D. Cal. Apr. 8, 2013) ................................16

*Nat'l Org. for Women v. Operation Rescue*,
   37 F.3d 646 (D.C. Cir. 1994)..........................................................11

*Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*,
   721 F.3d 1122 (9th Cir. 2013) ......................................................6, 9

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018) ......................................................2, 11

*Oracle, et al. v. Rimini Street, et al.*,
   No. 16-16832 (9th Cir.) ....................................................................2

*Peterson v. Highland Music, Inc.*,
   140 F.3d 1313 (9th Cir.) ...................................................................5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Price v. City of Stockton,*
390 F.3d 1105 (9th Cir. 2004) ...................................................................16

*Sagami v. Palmer Mktg. ENT, LLC,*
2011 WL 13244113 (W.D. Wisc. Sept. 13, 2011)......................................16

*Sankary v. Ringgold-Lockhart,*
611 F. App'x 893 (9th Cir. 2015) ...............................................................13

*Sheet Metal Workers v. EEOC,*
478 U.S. 421 (1986)......................................................................................9

*Siebring v. Hansen,*
346 F.2d 474 (8th Cir. 1965) ......................................................................17

*Skydive Ariz., Inc. v. Quattrocchi,*
673 F.3d 1105 (9th Cir. 2012) ....................................................................16

*Sure Plus Mfg. Co. v. Kobrin,*
719 F.2d 1114 (11th Cir. 1983) ..................................................................17

*Taggart v. Lorenzen,*
139 S.Ct. 1795 (2019).................................................................................17

*TiVo Inc. v. EchoStar Corp.,*
646 F.3d 869 (Fed. Cir. 2011)...............................................................2, 16

*United States v. Ayres,*
166 F.3d 991 (9th Cir. 1999) ........................................................................5

*United States v. Robinson,*
449 F.2d 925 (9th Cir. 1971) ........................................................................5

*Young v. United States ex rel. Vuitton et Fils S.A.,*
481 U.S. 787 (1987)......................................................................................5

**Rules**

Fed. R. Civ. Proc. 11, 37.................................................................................8

**Treatises**

4 Nimmer on Copyright § 14.06[C][1][a]......................................................16

11A Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2960 (3d ed. 2013)............................4

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Rutter Group, Prac. Guide: Fed. Civ. Proc. Before Trial (2020) ¶ 13:246 ...............................4

DEFENDANT RIMINI STREET, INC.'S MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

Oracle has moved this Court to issue an order to show cause why Rimini should not be held in contempt, and severely sanctioned, for allegedly violating the injunction.  ECF No. 1368 ("OSC Motion").  Even though the injunction was limited to Rimini's *former* support processes (Process 1.0) that Rimini ceased using by July 2014 and this Court expressly ruled that it was "enjoin[ing] only acts that have already been determined to be unlawful, and which have been affirmed on appeal" (ECF No. 1164 at 9), Oracle's OSC Motion is not based on those acts.  Instead, the OSC Motion is based entirely on aspects of Rimini's *current* support processes (Process 2.0), which have never been adjudicated by this Court or a jury, and which are the subject of pending summary judgment motions in *Rimini II*.  Although Process 2.0 has never been adjudicated, Oracle suggests that the Court should nevertheless conclude *summarily* that it is unlawful and bar Rimini from competing and providing aftermarket support for certain Oracle product lines that generate substantial revenue for Rimini.

As explained in Rimini's separately filed opposition to Oracle's OSC Motion, no order to show cause should issue because Process 2.0 both *cannot* and *does not* violate the injunction.  If this Court nevertheless issues an order to show cause, then it must conduct a constitutionally adequate proceeding at which Oracle would have to prove its contempt case and Rimini would have the opportunity to present every available defense.  Oracle acknowledges that some kind of hearing is required to resolve factual disputes.  *See* ECF No. 1368 at 11 n.5.  However, the Constitution requires considerably more than that.

Before being held in (let alone sanctioned for) contempt, Rimini is entitled to a number of constitutional protections—including, most importantly, a jury trial—for two independent reasons.  *First*, such protections are required where, as here, a party seeks "serious," non-compensatory sanctions for alleged "disobedience to complex injunctions."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833–34, 838 (1994) (such cases "are especially suited for trial by jury").  Oracle's own submission, which sets out a list of proposed sanctions, including an order barring Rimini from competing and providing aftermarket support services for certain Oracle product lines and impounding Rimini's computers, makes

clear that a jury trial is required by the Due Process Clause. *Second*, the acts accused as contumacious (Process 2.0) were not adjudicated by the jury in *Rimini I*, and they are more than colorably different from the conduct (Process 1.0) that was tried to judgment. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011); *see also* Declaration of Jim Benge in Support of Rimini's Opposition to Oracle's OSC Motion and Accompanying Tutorial Video (filed concurrently).[1]  The Seventh Amendment and due process require a jury trial before imposing sanctions or other consequences on Rimini for (alleged) infringement by previously unadjudicated acts.

In addition, Oracle would bear the burden of proving contempt by clear and convincing evidence, *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999), or (if Oracle follows through on its request for punitive sanctions) beyond a reasonable doubt, *Bagwell*, 512 U.S. at 834.  Rimini would also have the right to call witnesses, cross-examine Oracle's witnesses, and be afforded a presumption of innocence. *See F.J. Hanshaw Enters., Inc. v Emerald River Dev., Inc.*, 244 F.3d 1128, 1138–39 (9th Cir. 2001).  Because Oracle ignores all of this in its OSC Motion, Rimini respectfully submits this Motion to protect its constitutional rights—and, in particular, its right to a jury trial—in the event the Court issues an order to show cause.

## II.    PROCEDURAL POSTURE

As this Court is aware, and as discussed at length in Rimini's motion to enforce this Court's prior separation orders (*see* ECF No. 1323), there are two lawsuits pending between Rimini and Oracle. *See Rimini Street, Inc. v. Oracle, et al.*, Case No. 2:14-cv-01699 (D. Nev.). Relevant to both cases, it is undisputed that Rimini can lawfully compete with Oracle to provide software support to Oracle licensees. *See Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 952 (9th Cir. 2018); *see also Oracle, et al. v. Rimini Street, et al.*, No. 16-16832 (9th Cir.), ECF No. 50 (Oracle acknowledging to the Ninth Circuit that "[n]othing in Oracle's licenses prohibits Oracle's customers from using … third parties to service Oracle's

---

[1]  The video accompanying the Declaration of Jim Benge is also available at ████████████████████████████████████.

Gibson, Dunn &
Crutcher LLP

products[,]" and "[t]hird parties remain free to offer their own software and their own support services for Oracle's software").  The question is thus only whether the *process* by which Rimini provides that support can give rise to liability.

Before the injunction, the Court concluded at summary judgment that certain aspects of Process 1.0 entailed copying that was not encompassed by the support authorizations in Oracle's licenses.  In response to the Court's orders, Rimini spent millions of dollars to redesign its support processes (now Process 2.0) and sought to have the lawfulness of those redesigned support processes considered by the *Rimini I* jury.  *See* ECF No. 488 at 12–20. Oracle vigorously opposed those attempts, insisting that *Rimini I* be limited to Process 1.0, and arguing that all evidence or argument pertaining to Process 2.0 was "irrelevant." *Id.* at 8.  This Court agreed with Oracle, denying Rimini's request to reopen discovery in *Rimini I* to incorporate Process 2.0 (ECF No. 515 at 2–3), and concluding that there was no basis to use the *Rimini I* proceeding to address "what Rimini is doing now" with Process 2.0 (ECF No. 508 at 25:16–18).  As a result, Rimini filed *Rimini II* to confirm that Process 2.0 is lawful and does not violate the Copyright Act.  Following years of costly, expansive, and largely one-sided discovery (*see* ECF No. 1374-3), the legality of Process 2.0 is currently teed up in seven extensive summary judgment motions pending in *Rimini II*. *See Rimini II*, ECF Nos. 881–950, 967–1079, 1124–206, 1208, 1210–22.

Once the *Rimini II* summary judgment briefing was completed, Oracle turned its focus back to *Rimini I* and in February 2019, sought discovery into Rimini's compliance with the injunction.  ECF Nos. 1201, 1215.  The Court ruled that Oracle could use *Rimini II* discovery in *Rimini I*, and that Oracle could engage in additional discovery regarding injunction compliance.  *Rimini II*, ECF No. 1237 at 3–4.  In both discovery contexts, Rimini cooperated with Oracle's broad and intrusive discovery requests; indeed, the total amount of information produced in this case dwarfs the amount of discovery in most civil lawsuits.  Over a period of years, Rimini provided Oracle millions of documents, terabytes of data, source code to its proprietary software development tools, and live, 24/7 access to its internal software development tracking systems.  Oracle also served hundreds of interrogatories, requests for

admission, deposition notices and subpoenas, and other discovery requests.  *See generally* ECF No. 1374-3.

Oracle filed its OSC Motion on July 10, 2020.  ECF No. 1368.  Importantly, that motion does *not* ask this Court to make a finding of contempt; nor does it ask the Court to award sanctions against Rimini.  Oracle also does not contend that Rimini has continued to engage in any of the conduct found by the *Rimini I* jury to have constituted "innocent" copyright infringement, or the specific acts addressed by the Ninth Circuit in affirming the liability judgment.  Rather, Oracle requests that this Court enter an order requiring Rimini to show cause why certain aspects of Process 2.0 (the subject of *Rimini II*), which were not adjudicated in *Rimini I*, do not violate the injunction.  *See* ECF No. 1365-3 (proposed order).  Oracle's motion should be denied for all of the reasons set forth in Rimini's opposition to Oracle's OSC Motion ("Opp. to OSC Motion," filed concurrently), Rimini's motion to exclude Oracle's expert report (filed concurrently), and Rimini's motion to enforce this Court's prior orders and judgment (ECF No. 1323).  The proper place to adjudicate the legality of Process 2.0 is in *Rimini II*, as this Court previously ordered, where the parties spent *years* building an evidentiary record, and where comprehensively briefed summary judgment motions await the Court's resolution.  The *Rimini II* lawsuit should not be prejudged, or pretermitted, by a contempt proceeding.

This Motion addresses the procedures, including a jury trial, that the Court must follow during this post-judgment proceeding *if* the Court nevertheless decides to issue an order to show cause.

## III.   LEGAL STANDARD AND PROCEDURES

Oracle has filed a motion for an order to show cause.  The Court can either deny Oracle's motion, in which case this contempt proceeding will be over (and the parties can proceed with *Rimini II* and the adjudication of Process 2.0), or grant Oracle's motion and issue an order to show cause, which would have to set forth those specific acts that the Court believes may be contumacious and why.  *See* 11A Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 2960 (3d ed. 2013); Rutter Group, Prac. Guide: Fed. Civ. Proc. Before Trial (2020) ¶ 13:246.

Rimini's position is that Oracle's OSC Motion should be denied forthwith.  But if the Court nevertheless allows this contempt proceeding to go forward and ultimately issues an order to show cause, the Constitution and settled precedent require that certain procedures must be followed before any finding of contempt or imposition of sanctions may occur.

As a preliminary matter, any order to show cause must set forth the specific facts upon which the Court's order is based.  Oracle's proposed order, which simply restates the provisions of the injunction (ECF No. 1365-3), falls far short of the requisite specificity to satisfy due process here.  *See United States v. Robinson*, 449 F.2d 925, 930 (9th Cir. 1971) (reversing finding of contempt where "order to show cause stated generally" provisions of injunction purportedly violated "without specifying the facts upon which this general charge rested;" due process requires the order "contain enough to inform [the alleged contemnor] of the nature and particulars of the contempt charged"); *see also Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 794 (1987) (courts are required to "state the essential facts" constituting contempt to satisfy notice requirement); *Consolidation Coal Co. v. Local No. 1784*, 514 F.2d 763, 765 (6th Cir. 1975) ("Like any civil litigant, a civil contemnor is … clearly entitled to those due process rights, applicable to every judicial proceeding, of proper notice."). Therefore, the Court cannot simply enter Oracle's proposed order.

Next, Rimini is entitled to an opportunity to be heard.  Oracle concedes that a "full hearing" is required before a contempt finding is made if there are disputes of material fact. ECF No. 1368 at 11 n.5.  Indeed, it is well settled in this Circuit that where disputes of material fact exist, a court "should not impose contempt sanctions solely on the basis of affidavits." *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (quoting *Peterson v. Highland Music, Inc*., 140 F.3d 1313, 1324 (9th Cir.), *cert. denied*, 525 U.S. 983 (1998)); *Fidelity Nat'l Fin., Inc. v. Friedman*, 2009 WL 890471, at *8 (D. Ariz. Mar. 31, 2009) (requiring a hearing where there are disputes between the parties over the interpretation of the facts presented).  Here, as detailed in Rimini's Opposition to Oracle's OSC Motion and accompanying declarations and exhibits, there are numerous disputes of material fact that must be resolved by a neutral factfinder.  *See generally* Opp. to OSC Motion.  Thus, it is beyond debate that an evidentiary

hearing must be conducted before making any contempt findings or imposing any sanctions.

But Rimini is entitled to more than just a hearing:  On the circumstances here presented, the Court must conduct a full jury trial on whether any specific acts identified in an order to show cause constitute contempt of the injunction, as well as what (if any) sanctions should issue.  *F.J. Hanshaw*, 244 F.3d at 1138–39; *Bagwell*, 512 at U.S. 838–39.

For the reasons set forth below, due process also requires that in the context of this case, including the nature of Oracle's accusations of contumacious conduct and requested sanctions, Rimini must be provided with additional protections, including:

- Oracle must prove as to each specific accused act that:  (1) Rimini violated the injunction; (2) beyond substantial compliance; and (3) such violation was not based on a good faith and reasonable interpretation of the injunction.  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

- Oracle must prove all elements beyond a reasonable doubt, *Bagwell*, 512 U.S. at 834, or at minimum by clear and convincing evidence, *Dual-Deck Video*, 10 F.3d at 695.

- Rimini must be provided the ability to call and examine witnesses of Rimini's choosing and to present evidence of Rimini's choosing.  *F.J. Hanshaw*, 244 F.3d at 1138–39.

- Rimini must be afforded a presumption of innocence, and has the right to present every available defense.  *Id.*; *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972)*.

Absent these protections, no contempt finding or sanctions may issue.  *Bagwell*, 512 U.S. at 833–34, 838; *see also Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 721 F.3d 1122, 1129–30 (9th Cir. 2013) ("[N]oncompensatory sanctions for violations of complex injunctions require[] heightened procedural protections including a jury trial and a beyond reasonable doubt burden of proof.").

## IV.   ARGUMENT

If the Court permits this contempt proceeding to continue, Rimini is entitled to a jury trial for two independent reasons.  *First*, Oracle accuses Rimini of out-of-court conduct that (allegedly) violates a complex injunction, and intends to seek serious, punitive, and non-compensatory sanctions; such a proceeding requires a jury trial and other safeguards to protect

Rimini's due process rights. *Second*, Process 2.0 is fundamentally different from the processes adjudicated in *Rimini I*, and cannot be found infringing or to violate the injunction in a summary contempt proceeding.

**A.     The Nature Of This Proceeding Requires Certain Constitutional Protections**

Rimini is entitled to a jury trial (and associated heightened procedural protections) due to the complexity of the injunction and serious nature of the sanctions Oracle seeks. As the United States Supreme Court has long recognized, such protections are "both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power." *Bagwell*, 512 U.S. at 834. The Court reasoned that where the alleged contumacious conduct is indirect (takes place out of the court's presence), involves compliance with a complex injunction, and the sanctions requested are serious and non-compensatory, an accused contemnor in a civil suit is entitled to a jury trial and enhanced procedural protections:

> [T]he ultimate question posed in this case, is what procedural protections are due before any particular contempt penalty may be imposed. Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required. To the extent that such contempts take on a punitive character, however, and are not justified by other considerations central to the contempt power, criminal procedural protections may be in order.
>
> …
>
> Our jurisprudence in the contempt area has attempted to balance the competing concerns of necessity and potential arbitrariness by allowing a relatively unencumbered contempt power when its exercise is most essential, and requiring progressively greater procedural protections when other considerations come into play.
>
> …
>
> Thus, petty, direct contempts in the presence of the court traditionally have been subject to summary adjudication, "to maintain order in the courtroom and the integrity of the trial process in the face of an 'actual obstruction of justice.'" *Codispoti v. Pennsylvania*, 418 U.S. 506, 513 (1974) (citation omitted). In light of the court's substantial interest in rapidly coercing compliance and restoring order, and because the contempt's occurrence before the court reduces the need for extensive factfinding and the likelihood of an erroneous deprivation, summary proceedings have been tolerated.
>
> Summary adjudication becomes less justifiable once a court leaves the realm of immediately sanctioned, petty direct contempts.… Still further procedural protections are afforded for contempts occurring out of court, where the considerations justifying expedited procedures do not pertain. ***Summary***

Gibson, Dunn &
Crutcher LLP

***adjudication of indirect contempts is prohibited***, *e.g.*, *Cooke v. United States*, 267 U.S. 517, 534 (1925), and criminal contempt sanctions are entitled to full criminal process, *e.g.*, *Hicks* [*v. Feiock*], 485 U.S. [624,] 632 [(1988)]. Certain indirect contempts nevertheless are appropriate for imposition through civil proceedings. Contempts such as failure to comply with document discovery, for example, while occurring outside the court's presence, impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power. Courts traditionally have broad authority through means other than contempt—such as by striking pleadings, assessing costs, excluding evidence, and entering default judgment—to penalize a party's failure to comply with the rules of conduct governing the litigation process. *See*, *e.g.*, Fed. R. Civ. Proc. 11, 37. Such judicial sanctions never have been considered criminal, and the imposition of civil, coercive fines to police the litigation process appears consistent with this authority. Similarly, indirect contempts involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing.

For a discrete category of indirect contempts, however, civil procedural protections may be insufficient. ***Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding***. *Cf. Green v. United States*, 356 U.S. 165, 217 n. 33 (1958) (Black, J., dissenting) ("Alleged contempts committed beyond the court's presence where the judge has no personal knowledge of the material facts are especially suited for trial by jury. A hearing must be held, witnesses must be called, and evidence taken in any event. And often ... crucial facts are in close dispute") (citation omitted). Such contempts do not obstruct the court's ability to adjudicate the proceedings before it, and the risk of erroneous deprivation from the lack of a neutral factfinder may be substantial. *Id.* at 214–215. Under these circumstances, criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power.

....

Other considerations convince us that the fines challenged here are criminal. The union's sanctionable conduct did not occur in the court's presence or otherwise implicate the court's ability to maintain order and adjudicate the proceedings before it. Nor did the union's contumacy involve simple, affirmative acts, such as the paradigmatic civil contempts examined in *Gompers*. Instead, the Virginia trial ***court levied contempt fines for widespread, ongoing, out-of-court violations of a complex injunction. In so doing, the court effectively policed petitioners' compliance with an entire code of conduct that the court itself had imposed***. The union's contumacy lasted many months and spanned a substantial portion of the State. The fines assessed were serious, totaling over $52 million. ***Under such circumstances, disinterested factfinding and evenhanded adjudication were essential, and petitioners were entitled to a criminal jury trial.***

....

Our decision concededly imposes some procedural burdens on courts' ability to sanction widespread, indirect contempts of complex injunctions through

DEFENDANT RIMINI STREET, INC.'S MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

noncompensatory fines.   Our holding, however, leaves unaltered the longstanding authority of judges to adjudicate direct contempts summarily, and to enter broad compensatory awards for all contempts through civil proceedings.  *See*, *e.g.*, *Sheet Metal Workers v. EEOC,* 478 U.S. 421 (1986).  Because the right to trial by jury applies only to serious criminal sanctions, courts still may impose noncompensatory, petty fines for contempts such as the present ones without conducting a jury trial.  We also do not disturb a court's ability to levy, albeit through the criminal contempt process, serious fines like those in this case.

….

Where, as here, "a serious contempt is at issue, considerations of efficiency must give way to the more fundamental interest of ensuring the even-handed exercise of judicial power." [*Bloom v. Illinois*, 391 U.S. 194, 209 (1968)].

*Id.* at 830–39 (emphases added).  Here, all of the factors discussed in *Bagwell* compel a jury trial before any finding of contempt, or imposition of sanctions, may issue.

**Severity of Proposed Sanctions.**  Though Oracle has not asked the Court to award sanctions (ECF No. 1365-3 (proposed order)), it has informed the Court that it may in the future seek the following three penalties against Rimini if the Court enters an order to show cause and finds Rimini in contempt:  (1) an order barring Rimini from supporting certain Oracle software; (2) impoundment of Rimini's computer systems; and (3) unspecified monetary sanctions and attorneys' fees.  ECF No. 1368 at 28–30.  These are draconian, punitive, and non-compensatory sanctions, and they therefore require a jury trial.  *Bagwell*, 512 U.S. at 834–38; *F.J. Hanshaw*, 244 F.3d at 1138–39; *Ahearn*, 721 F.3d at 1129–30 ("[N]oncompensatory sanctions for violations of complex injunctions require[] heightened procedural protections including a jury trial.").

Whether a contempt sanction is punitive—and thus warrants a jury trial—requires an examination of "the character of the relief itself."  *Bagwell*, 512 U.S. at 828.  A sanction is punitive where it is designed to retroactively punish the contemnor for "completed act[s] of [alleged] disobedience."  *Id.* at 828.  By contrast, a sanction is compensatory where it is designed to compensate "the complainant for losses sustained" or if it affords the contemnor with an "opportunity to purge" or avoid the sanction through compliance.  *F.J. Hanshaw*, 244 F.3d at 1138.

Here, Oracle's threatened sanction requests are undeniably punitive.  Oracle asks this

Gibson, Dunn &
Crutcher LLP

Court for a bar order to "put[] an end to [Rimini's] business" of supporting its clients' fully and properly licensed Oracle PeopleSoft and JD Edwards software. ECF No. 1368 at 29. Oracle also asks this Court to "impound" Rimini's computers as retroactive punishment for *past* conduct. Taking possession of Rimini's computers does not compensate Oracle, and it does not "coerce" Rimini into complying with the injunction. Rimini's business *requires* its computers. For this reason, the proposed sanction is also effectively a *second* bar order. Oracle attempts to support its threatened request for punitive sanctions by pointing exclusively to lawsuits that have *already been resolved*, including one involving TomorrowNow, which, as this Court has already ruled "is not relevant to this case" (*see* ECF No. 880 at 21 (Instr. No. 20)), as well as to the *Rimini I* judgment, for which Rimini has already paid Oracle all damages owed. *F.J. Hanshaw*, 244 F.3d at 1138; *see also* ECF No. 1372-15 (calculating total amount paid to Oracle by Rimini to the *Rimini I* judgment, including interest and fees, as over $90 million).

Rimini is now a 15-year-old company. *See* Declaration of Eric D. Vandevelde ("Vandevelde Decl.") at ¶ 2 & Ex. A. It has offices in 18 different countries (including the United States), and employs over 1,300 full-time employees—in Nevada, throughout the United States, and around the world. *Id.* ¶¶ 2–3 & Exs. B–C. In May 2020, Rimini was named one of the Top Companies to Work for in Las Vegas. *Id.* ¶ 8 & Ex. G. Rimini has been recognized by leading industry groups and publications for its outstanding business practices in providing valuable software support for over one thousand hospitals, schools, government agencies, utilities, and businesses. *Id.* Exs. F, H. Rimini's clients and the public rely on Rimini to keep clients' mission-critical software systems running smoothly. *Id.* Ex. E. Contempt sanctions could have serious consequences, potentially affecting many of Rimini's public shareholders, employees, and clients. *See generally id.* Exs. C, F. It is difficult to imagine a more draconian and punitive sanction than to "bar Rimini from providing support for Oracle's PeopleSoft and JD Edwards product lines." ECF No. 1359 at 28.

Rimini began providing support services based on a good-faith reading of the licenses. This Court read those licenses differently, but the jury determined that the ensuing

infringement was *innocent*—meaning that Rimini did not know, and did not have reason to know, that its conduct was infringing.  ECF No. 896 at 6; *see also* ECF No. 880 at 43 (No. 35) (defining innocent infringement).  Rimini immediately changed its processes, at significant expense, to comply with this Court's constructions and instituted a declaratory judgment action (*Rimini II*) to confirm the lawfulness of its new processes (Process 2.0).  And importantly, the Ninth Circuit agreed that Rimini's competition is "lawful."  *Rimini I*, 879 F.3d at 952.  Oracle ignores all of this, and seeks to bar Rimini's competition and support for certain Oracle product lines based on conduct *that has never been considered*, *let alone adjudicated*, by this Court, the jury, or the Ninth Circuit.  But the Constitution prohibits such relief absent the full protections requested by this Motion.  *See F.J. Hanshaw*, 244 F.3d at 1141 (emphasizing the "utmost importance" of "[a] jury of one's peers" when a court uses its inherent powers to impose serious, punitive sanctions); *Nat'l Org. for Women v. Operation Rescue*, 37 F.3d 646, 659 (D.C. Cir. 1994) ("as sanctions become more serious and factfinding becomes more complex, due process demands greater procedural safeguards").

Oracle does not want "compensation" for Rimini's conduct.  In fact, Oracle did not even retain a damages or causation expert in these contempt proceedings to calculate any actual harm to Oracle, threatening instead to seek extreme relief directed at barring Rimini from competing and offering aftermarket support services for certain Oracle product lines.  Oracle has aggressively sought hundreds of millions of dollars in damages in both *Rimini I* and in *Rimini II*, evidencing that if Oracle had truly wanted to establish compensable harm in this post-judgment proceeding, it had all the available tools to do so.  But it did not.  In fact, Oracle sent a letter to Rimini during injunction compliance discovery stating that it did not intend to seek damages at that time.  *See* Vandevelde Decl. at ¶ 10 & Ex. I.

Oracle also purports to reserve its ability to ask for monetary sanctions in an unspecified amount, though on the order of tens of millions of dollars (which it contends are "compensatory"), as well as attorneys' fees.  ECF No. 1365 at 30.  But as a threshold matter, Oracle will never be able to show any harm caused by the acts it accuses as contumacious.  The *Rimini I* jury found that Rimini's use of Process 1.0 caused Oracle to lose zero profits and

caused Rimini to gain zero profits. ECF No. 879. This Court also found that Oracle did not "suffer[] any harm" "after the Ninth Circuit granted a stay of the previous injunction back in 2016." ECF No. 1177. To the extent Oracle had any evidence to overcome that jury result, or the Court's finding, the time to proffer it was with its OSC Motion; Oracle's failure to submit any evidence to support its damages theory constitutes a waiver.

To remedy this obvious failure, Oracle asks to reopen discovery *yet again*, but that would be improper. Oracle justifies its request by claiming that the scope of discovery in this proceeding was "limited to determining whether or not Rimini has violated the terms of the Injunction." ECF No. 1365 at 30. Not so. Oracle had every opportunity to pursue damages discovery during the many months of discovery that the Court already permitted (at Oracle's request). Oracle proposed a discovery plan to the Court, which was largely granted. That Order gave Oracle complete discretion in the discovery it pursued, including damages discovery. *See* ECF No. 1232 at 2. Oracle simply chose not to seek such discovery, even after Rimini expressly asked whether Oracle intended to do so. As noted, Oracle flatly stated that it was not planning to seek damages in support of its OSC Motion. *See* Vandevelde Decl. at ¶ 10 & Ex. I. Instead, Oracle pursued—and Rimini produced—an immense amount of discovery during that period, including many hundreds of thousands of documents, source code from Rimini's systems, and ongoing, 24/7 read-only access to the systems themselves. *See* ECF No. 1374-3. Oracle offers no justification for why it elected not to conduct damages discovery at the appropriate time, and it should not be permitted to belatedly burden Rimini with yet another round of discovery, *ten years after this case was filed*. Rather, Oracle should be held to its representation, and these issues should be addressed in *Rimini II*, where the parties have exchanged damages reports and deposed each side's damages experts.

In any event, monetary sanctions far lower than what Oracle suggests would be appropriate have been deemed "serious," thus warranting heightened procedural protections. *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1030 (9th Cir. 2011) (reversing order imposing $63,678.50 in sanctions for failure to hold jury trial); *F.J. Hanshaw*, 244 F.3d at 1138–39 ($500,000); *Crowe v. Smith*, 151 F.3d 217, 228 n.13 (5th Cir. 1998) ("$5 million is

non-petty in the case of a corporation."); *cf. Bagwell*, 512 U.S. at 837 n.5 (suggesting that $10,000 constitutes the appropriate threshold for deeming a sanction "serious").

Moreover, monetary sanctions are punitive and require a jury trial, where, as here, "the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Bagwell*, 512 U.S. at 829; *see also Sankary v. Ringgold-Lockhart*, 611 F. App'x 893, 895 (9th Cir. 2015) (reversing contempt order because "[t]he unconditional fine was punitive … it was not compensatory and did not afford [defendant] an opportunity to purge contempt"); *FTC v. Trudeau*, 579 F.3d 754, 769–770 (7th Cir. 2009) (vacating and remanding where $37.6 million fine did not coerce future compliance because contemnor had no opportunity to purge).  Oracle proposes no such opportunity for Rimini to reduce or avoid monetary sanctions here.

***Out-of-Court Compliance With Complex Injunction.***  A jury trial is likewise essential where the alleged contumacious conduct is "complex," *i.e.*, it involves not "simple, affirmative acts," but rather alleged "widespread, ongoing, out-of-court violations of a complex injunction" issued by the same court that is being asked to enforce it.  *Bagwell*, 512 U.S. at 837.  In such cases, "the risk of erroneous deprivation from the lack of a neutral factfinder may be substantial," and a jury trial is "appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power."  *Id.* at 834; *see also id.* at 840 (Scalia, J, concurring) (proceeding without a jury, where "one and the same person … make[s] the rule, … adjudicate[s] its violation, and … assess[es] its penalty is out of accord with our usual notions of fairness and separation of powers").

As a preliminary matter, where, as here, alleged contempt "did not occur in the court's presence or otherwise implicate the court's ability to maintain order and adjudicate the proceedings before it," that fact weighs in favor of a jury trial.  *Id.* at 837.  As the Supreme Court has explained, "'[a]lleged contempts committed beyond the court's presence where the judge has no personal knowledge of the material facts are especially suited for a trial by jury'" because "the need for extensive, impartial factfinding" is "pressing."  *Id.* at 833–34 (quoting *Green v. United States*, 356 U.S. 165, 217 n.33 (1958) (Black, J. dissenting)); *see also Jakes Ltd., Inc. v. City of Coates*, 356 F.3d 896, 903 (8th Cir. 2004) (ordering jury trial to resolve

"fact-intensive" and "controversial" inquiry where plaintiff sought "substantial" fine).  Here, there is no dispute that the accused conduct (*i.e.*, Rimini's Process 2.0) occurred outside of the Court's presence.  *See generally* ECF No. 1368.  Process 2.0 is also alleged to be widespread and ongoing.  *Id.*  The matter is thus well suited for a trial by jury.  *Bagwell*, 512 U.S. at 833.

There can also be no dispute that the injunction and the conduct it governs are complex. In this post-injunction proceeding alone, the parties' technical experts served a combined 300 pages of opinions (not including thousands of pages of exhibits and appendices), analyzing Oracle computer code and Rimini's technical support processes, and Rimini has concurrently filed 4 employee declarations and a tutorial video setting forth significant detail about those processes.  *See* Benge Decl. & Video; Declaration of Craig Mackereth; Declaration of Brenda Davenport; Declaration of Sudhir Kumar.  The injunction also imposes a "code of conduct" on Rimini by regulating the manner in which it provides support for four Oracle software products (PeopleSoft, JD Edwards, Siebel, and Database).

It is difficult to imagine a civil contempt case meriting a jury trial and concomitant procedural protections more than this one, which arguably involves *more* complex facts, a *more* complex injunction, and *more* punitive sanctions than those in *Bagwell*.  And the accused conduct (Rimini's Process 2.0) is even *more* indirect than in *Bagwell* since it has never before been adjudicated, and this Court denied Rimini's attempt to have it adjudicated in *Rimini I*.  It follows *a fortiori* from *Bagwell* that the Constitution requires a jury trial here, in order to protect the alleged contemnor's due process rights.  *See Bagwell*, 512 U.S. at 834, 837 (explaining importance of juries as safeguards against "arbitrary exercise of judicial power" in contempt proceedings where courts would otherwise be "solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct"); *see also F.J. Hanshaw*, 244 F.3d at 1141 ("Even if judges are able to separate their roles as accuser and fact finder, which is undeniably difficult, it would still *appear* to the accused as fundamentally unfair.") (emphasis in original).

The law of this Circuit also makes clear that a jury trial is just one of the constitutional protections to which Rimini is entitled should the Court issue an order to show cause.  Because

of the severity and punitive nature of Oracle's threatened sanctions, Oracle must prove as to each accused act that:  (1) Rimini violated the injunction; (2) beyond substantial compliance; and (3) such violation was not based on a good faith and reasonable interpretation of the injunction.  *Dual-Deck Video*, 10 F.3d at 695.  Oracle must prove these elements beyond a reasonable doubt, *Bagwell*, 512 U.S. at 834, or (depending on the sanctions sought) at minimum by clear and convincing evidence, *Dual-Deck Video*, 10 F.3d at 695.  Additionally, Rimini must be provided the ability to call and examine witnesses of Rimini's choosing and to present evidence of Rimini's choosing.  *F.J. Hanshaw*, 244 F.3d at 1138–39.  And Rimini must be afforded a presumption of innocence, and has the right to present every available defense.  *Id.*  These protections "are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power."  *Bagwell*, 512 U.S. at 834.

For the foregoing reasons, Rimini is entitled to a jury trial and related substantive and procedural protections on the question of whether it is in contempt of the Court's injunction and what (if any) sanctions should ensue.

**B.     Process 2.0's Legality Cannot Be Adjudicated In A Summary Proceeding**

After Rimini changed its processes from Process 1.0 to Process 2.0 in 2014, this Court decided, at Oracle's repeated urging, to separate adjudication of the two processes.  The Court was crystal clear:  "***all claims, issues, and evidence related to the new support model are being addressed <u>solely</u> in [Rimini II]***."  ECF No. 723 at 3 (emphasis added); *see also* ECF Nos. 1323, 1347.  Thus, Process 2.0 was not tried in *Rimini I*.  No jury or judge has ever decided whether Rimini's revised support model is lawful or unlawful.  Yet, Oracle is now taking the *opposite* position and trying to shoehorn adjudication of Process 2.0 into this post-judgment contempt proceeding.

It is black letter law that where, as here, one process was adjudicated as unlawful, the Court may not hold a party in contempt for a process that is more than colorably different from the adjudicated process.  *TiVo*, 646 F.3d at 882.  Under *TiVo*, conduct that was not adjudicated and is more than colorably different from the prior infringement may not be held as contumacious without the protections of a jury trial.  *Id.*  This rule is grounded in the principle

that the Seventh Amendment and due process entitle parties to a full and fair opportunity to litigate the legality of their conduct and to have factual disputes about those issues resolved by a jury. *Arbek Mfg., Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995); *see also GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) ("[T]he Seventh Amendment provides a right to a jury trial both as to liability and as to the amount of actual copyright damages."); *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012); *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) ("[A]n injunction must be narrowly tailored … to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law."); 4 Nimmer on Copyright § 14.06[C][1][a] (the "scope of the injunction should be coterminous with the infringement"); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998–99 (N.D. Cal. 2006) (injunction must be "narrowly tailor[ed]" to reach only those "harm[s] arising out of past acts of copyright infringement").

Oracle studiously ignores *TiVo* and the constitutional principles on which that decision rests. But *TiVo* applies to all proceedings to enforce injunctions under the federal intellectual property laws, including the Copyright Act. *See*, *e.g.*, *Sagami v. Palmer Mktg. ENT, LLC*, 2011 WL 13244113, at *4 n.1 (W.D. Wisc. Sept. 13, 2011) (suggesting it would be "more fair and efficient to valuate plaintiffs' allegations" that a "re-designed" product infringed on plaintiffs' copyright "in the context of a new trial rather than a contempt proceeding," citing *TiVo*); *Mitchell v. 3PL Sys., Inc.*, 2013 WL 12129617, at *6 (C.D. Cal. Apr. 8, 2013) (citing *TiVo* to support holding that proposed copyright infringement injunction improperly "extends well beyond the subject matter of this litigation"). Indeed, the Supreme Court has made clear that copyright and patent injunctions are governed by the same standards. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006). It would be legal error for this Court to follow Oracle's lead and ignore *TiVo*.

Moreover, nothing in the rationale for the "colorable differences" test is specific to patent law. It long predates even the Federal Circuit itself. *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 233 (10th Cir. 1968); *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir. 1965); *Sure Plus Mfg. Co. v. Kobrin*, 719 F.2d 1114, 1118 (11th Cir. 1983); *Am. Foundry*

& *Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d 116, 117 (8th Cir. 1935).  The test rests on the Supreme Court's instruction more than 100 years ago that contempt is not appropriate "where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct."  *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885).  The Court reiterated that principle of due process just last year outside the patent context.  *See Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019) (noting in bankruptcy case that "civil contempt should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct," quoting *Cal. Artificial Stone Paving*).

The colorable differences inquiry applies to all contexts in which one product or process is adjudicated as infringing or otherwise invading the rights of another, subject to an injunction, and then is redesigned.  *See Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1380 n.3 (Fed. Cir. 2007) (explaining that the "colorable difference" test is a restatement of the Supreme Court's holding in *California Artificial Stone Paving*); *Am. Foundry & Mfg. Co.*, 79 F.2d at 117 (noting that colorable differences test is "merely an application to patent injunction contempt proceedings of the general rule as to all civil contempt proceedings").  In cases of infringement, the "dividing point" between cases that "should be handled by a summary contempt proceeding and those cases which should be more fully viewed in an infringement proceeding" is whether the redesigned product or process is "merely colorably different." *McCullough Tool Co.*, 395 F.2d at 233.  This rule applies *at least* to all patent, copyright, trademark, and other cases arising under the federal intellectual property statutes.

Here, there can be no dispute that Process 2.0 was not litigated in *Rimini I*.  *See* ECF No. 1323.  Nor can there be any dispute that Process 2.0 is more than colorably different from Process 1.0.  *See* Opp. to OSC Motion; *see also supra* fn.1.  In fact, Rimini's experts opined at length concerning the clear and fundamental differences between the two processes.  *See* Declaration of Owen Astrachan, Ex. A at ¶¶ 143–54 ("Rimini's Process 2.0 is fundamentally different from the processes adjudicated in this case"); *id.* ¶¶ 155–60 ("Oracle's criticisms of Process 2.0 are entirely different from the issues litigated on summary judgment and at trial in *Rimini I*"); *id.* ¶ 156 ("The conduct Ms. Frederiksen-Cross opines is 'cross use' in this

proceeding is substantially different than the conduct at issue at trial in this matter…. the accused conduct does not resemble the Process 1.0 'cross-use' conduct litigated on summary judgment and at trial in *Rimini I*"); *id.* ¶ 157 ("the issue of cloud account ownership was not litigated in *Rimini I*"); *id.* ¶ 160 ("Rimini's use of its own knowledge and experience was not litigated in *Rimini I*. *Rimini I* involved the explicit copying of one client's Oracle software and providing that software to a different client, which is not at issue here."); Declaration of Stephen Lanchak, Ex. A at ¶ 17 ("…Oracle never claimed that cloud hosting infringed its copyrights in *Rimini I* and [] this issue is being raised for the first time in this case in the context of this post-trial proceeding"); *id.* ¶ 27 ("████████████████████████████████ ████████████████████████████████████████████████. Instead, Oracle argued in *Rimini I* that Rimini could not host on its own servers instances of Oracle Database downloaded from Oracle's websites pursuant to a 'developer license' or as authorized by Rimini's clients (Oracle licensees), and also that Rimini could not make copies of 'locally hosted' environments of Oracle Database or use 'locally hosted' environments to develop software updates that were distributed to multiple clients. Frederiksen-Cross offers no evidence or opinions in her report on these *Rimini I* arguments.").

Oracle's expert *did not even address this issue* in her contempt declaration (ECF No. 1368-1), or in the expert reports Oracle served in connection with the contempt proceedings (*see* ECF Nos. 1369-1–5). Nor could she, given Oracle's statements throughout this litigation (and set forth at length in Rimini's motion to enforce, *see* ECF No. 1323) acknowledging that Process 2.0 was not, and is not, at issue in this case. With respect to cloud computing, Oracle could not have been clearer: "I acknowledge that cloud computing is at issue in *Rimini II* and wasn't at issue in *Rimini I*…. [In] *Rimini II* we can fight with each other whether cloud constitutes the customer's facilities." ECF No. 1040 at 143:14–18. Yet, in Oracle's OSC Motion, Oracle has changed its position and is asking this Court to determine, for the first time, whether cloud computing violates the Copyright Act. *See* ECF No. 1368 at 18. This is improper, and a violation of Rimini's Seventh Amendment and due process rights.

Rimini welcomes resolution of the lawfulness of Process 2.0, which Rimini developed

and instituted to comply with this Court's 2014 summary judgment orders. Indeed, it was Rimini that initiated *Rimini II* as declaratory judgment plaintiff to validate the lawfulness of its revised processes, years before Oracle proposed (and the Court substantially adopted) the injunction at issue in this proceeding. And that resolution should come in *Rimini II*—on a full record and before a jury—as this Court has previously and repeatedly ordered. If the Court nevertheless enters an order to show cause why any aspect of Process 2.0 violates the injunction (which Rimini submits would be error), there must be a jury trial to resolve such previously unadjudicated conduct.

## V.    CONCLUSION

The Constitution requires a jury trial before Rimini can be found in contempt, or sanctioned, for violating the injunction based on the acts accused in Oracle's OSC Motion.

DATED: July 31, 2020

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Eric D. Vandevelde_

*Attorneys for Defendant*
*Rimini Street, Inc.*