# EXHIBIT A

# Expert rebuttal report of Stephen Lanchak, dated March 13, 2020

# PUBLIC REDACTED VERSION

Oracle USA, Inc., et al.

v.

Rimini Street, Inc.

Case No. 2:10-cv-00106-LRH-VCF (D. Nev.)

**Expert Rebuttal Report of Stephen Lanchak**

March 13, 2020

*[signature]*
Stephen Lanchak

HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

SUBJECT TO PROTECTIVE ORDER
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

claims it prohibits, because such practices are and have historically been widely understood and accepted in the industry.

16.  The following is a summary of my opinions as they relate to the practices Frederiksen-Cross contends violate the Injunction:

*Cloud-Hosting of PeopleSoft Software and Support Materials.*

17.  ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[2]  I am aware of this Court's orders regarding local hosting on Rimini systems, which is different from the cloud hosting discussed in Frederiksen-Cross's report.  It is my understanding that Oracle never claimed that cloud hosting infringed its copyrights in *Rimini I* and that this issue is being raised for the first time in this case in the context of this post-trial proceeding.

18.  In my experience, licensees of ERP software host their software (as well as documentation and related materials) on computing resources in various locations according to their business needs.  These locations may include, for example, computing resources that licensees own that are located at the licensees' physical place of business (*e.g.*, a licensee's servers located at the licensee's headquarters), computing resources that licensees own (or lease) that are located at a location owned (or leased) by a third party (*e.g.*, a licensee's servers located at a third-party data center), and computing resources that licensees lease that are located at a third-party cloud provider (*e.g.*, a licensee's virtual servers hosted in the provider's cloud infrastructure).  There are no inherent functional differences between the licensee's computing resources in any of those locations, although there are often significant advantages for licensees to use cloud-based computing resources (*e.g.*, cost savings, efficiency, performance, security, and scalability).  When licensees host their software in the cloud (or at any third-party location such as a data center), it is standard industry practice for those licensees to retain control over, access to, and use of that

---

[2] Frederiksen-Cross Rep. ¶ 38.

SUBJECT TO PROTECTIVE ORDER
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

software. In every meaningful sense, a licensee's cloud computing resources are its "own computer systems."³ Because of its advantages, for many years, the industry has moved increasingly toward cloud-based hosting. Oracle, in fact, encourages licensees of Oracle software (including PeopleSoft) to host their software in the cloud, and the industry understands that licensees are permitted to do so. Oracle and other third-party support providers (*i.e.*, Rimini's competitors) offer and provide support services to licensees that host their Oracle software on cloud computing resources. To my knowledge, Oracle has never taken the position (other than in *Rimini II* and this post-trial proceeding) that a licensee is not permitted to host Oracle software on the licensee's cloud-based computing resources.

19. Thus, and as discussed in more detail below, *see* Section IV.A, it is my opinion, based on decades of work in this field, and the materials I have reviewed in this post-trial proceeding and in *Rimini II*, that PeopleSoft licensees understand that hosting their software in the cloud (including Windstream's cloud) is not prohibited by their licenses, and that in every meaningful sense, their cloud computing resources *are* their own computer systems. The industry would therefore understand the phrase "own computer systems" in paragraph 5 of the Injunction to include cloud computing resources.

*"Cross-Use" and "Distribution" of PeopleSoft and JDE Software and Support Materials.*

20. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████⁴ ████████████████████████████████
████████████████████████████████████████████

---

³ Injunction ¶ 5.

⁴ Frederiksen-Cross Rep. ¶¶ 40, 44.

6

prepare derivative works from, or use" JDE software or documentation.[10]  The fact that the Injunction limits the manner in which Rimini can provide support—but does not prohibit it altogether—is consistent with my understanding and experience in the industry that third-party support is widely accepted.  For all of these reasons, it is therefore my opinion that the industry would not understand paragraph 8 of the Injunction to prohibit in-memory copies of JDE software (*i.e.*, copying "into system memory").

### *Actions Involving Oracle Database.*

26. ███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████  I disagree.  Based on my decades of experience in the field, and the materials I reviewed in this proceeding and in *Rimini II*, my opinion is that the industry would understand a prohibition on "reproduction" to pertain to the creation of unlicensed instances of Oracle Database, and not the creation of in-memory copies.

27. Based on my review of records in the post-trial proceeding, I understand that Oracle did not contend in *Rimini I* that in-memory copies (*i.e.*, RAM copies) of Oracle Database constituted copyright infringement.  Instead, Oracle argued in *Rimini I* that Rimini could not host on its own servers instances of Oracle Database downloaded from Oracle's websites pursuant to a "developer license" or as authorized by Rimini's clients (Oracle licensees), and also that Rimini could not make copies of "locally hosted" environments of Oracle Database or use "locally hosted" environments to develop software updates that were distributed to multiple clients.[12]  Frederiksen-Cross offers no evidence or opinions in her report on these *Rimini I* arguments.

---

[10]  *See* Injunction ¶¶ 7, 9–10.

[11]  Frederiksen-Cross Rep. ¶ 358.

[12]  *See Rimini I*, ECF No. 417 (Oracle Motion for Summary Judgment).

SUBJECT TO PROTECTIVE ORDER
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

28. In my experience, the industry does not understand the creation of in-memory copies (*i.e.*, RAM copies) of Oracle Database to be in conflict with Oracle's software licenses, nor does the industry consider the creation of RAM copies to otherwise violate Oracle's intellectual property rights. To the contrary, the creation of RAM copies is widely considered to be a necessary function of a user's (or third-party support provider's) use of the software because any time a user of Oracle Database loads the software (whether to support the software or simply to operate it), RAM copies are made. In other words, the software cannot function without creating RAM copies, and the creation of RAM copies is understood in the industry to be a necessary function of Oracle Database software. ██████████████████████████████████ is not only inconsistent with industry understanding, but it would also effectively prohibit Rimini from supporting any ERP application that uses or relies on Oracle Database, even applications that were not at issue in *Rimini I*, such as *non-Oracle* applications developed by other companies (*e.g.*, SAP). And, again, it is my understanding, based on the history and common use of third-party support in the industry, as well as from statements in the Ninth Circuit opinion and from the district court in the Injunction itself, is that third-party support *is* permitted. It is my opinion that the industry would not understand the Injunction to prohibit the creation of in-memory copies of Oracle Database as Frederiksen-Cross claims in her report.

29. I may have additional opinions and conclusions as I receive additional information, including in response to any opinions offered by any expert witness put forth by Oracle. I reserve the right to supplement and modify the opinions in this report.

### III. Background

**A.   Industry History**

30. The Background section of this report is intended to set forth facts that describe the industry and provide context for my opinions, including an overview of the history of the relevant industry players and the products they developed, the general industry understanding of the text of Oracle licenses for PeopleSoft and JDE, as well as background on support and maintenance practices for those products.