**EXHIBIT B**

**Excerpts from Supplemental Report**

**of  Professor Owen Astrachan**

**submitted  on June 26, 2020**

**PUBLIC REDACTED VERSION**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ORACLE USA, INC., et al.,

                Plaintiffs,

     v.

RIMINI STREET, INC., et al.,

                Defendants.

Case No. 2:10-cv-00106-LRH-VCF

 

**SUPPLEMENTAL EXPERT REPORT OF
PROFESSOR OWEN ASTRACHAN
IN RESPONSE TO SURREBUTTAL REPORT OF BARBARA
FREDERIKSEN-CROSS**

**June 26, 2020**

**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

_____

Professor Owen Astrachan
Dated: June 26, 2020

word.[58] ████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████ ▪
██████████████████████████████

36.    ████████████████████████████.  If two
clients have the same file, File X, and Rimini modifies a line of code of File X separately in each
client's environment, Rimini did not "send" or "provide" File X to both clients.  That file was
already in each client's environment.  Rimini also did not "send" or "distribute" the modified
File X to both clients—most of File X was already there.  It would be accurate to say that the
*modified line of code* was provided.

37.    Some examples of this error include the following. ████████████████████
████████████████████████████████████████
███████████ ▪ ██████████████████████████
████████████████████████████████████████
████████████████████████████
██████████████████████████ ▪ There is no evidence that Rimini
"distributed" tax910au.sqr; that file existed on client systems originally.  Rimini made
modifications to the file in each client's environment, separately.

## 5.    FUNDAMENTAL ERROR #5:  ACCUSING THE USE OF KNOWLEDGE AND KNOW-HOW

38.    ████████████████████████████████
████████████████████████████████████████

---

[58]  *See* R1 Astrachan Rebuttal Rpt., ¶ 315 ("I understand that a 'distribution' under the Copyright Act requires an actual dissemination or transfer of ownership to take place.  In other words, the software has to 'change hands,' for example by sale or rental, lease, or lending.  I understand that the distribution must also be 'to the public' to violate the Copyright Act.").

[59]  R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 35.

[60]  R1 Frederiksen-Cross Opening Rpt., ¶ 179.

[61]  *Id.*, ¶ 203.

*(Cont'd on next page)*



39.     I gave a very large number of examples of this, but the example below is particularly instructive.  Ms. Frederiksen-Cross was asked at her September 2018 deposition the following question:

> Let's say an engineer at Rimini working for client A figures out that a particular table, let's call it ["]state tax table["], needs to be changed in some way.  A different engineer implementing the same fix, the same update for Client B emails the first engineer and says, "Hey, do you know what table will need to be changed to implement this fix?"  And the engineer replies, "The state tax table."  Is that cross-use because the name of the table was referenced?

."[63]

40.

My point is that the Injunction does not prohibit (nor do Oracle's license agreements prohibit) re-use of knowledge learned, or the re-use of Rimini's work product (which is not copyrighted to Oracle).  This is not a "carve-out"; it simply is not prohibited.

---

[62]   R1 Astrachan Rebuttal Rpt., ¶ 41; s*ee also id.* ¶¶ 53–66, 159–60, 253–58, 261–62, 271.

[63]   Deposition of Barbara Frederiksen-Cross, Sept. 19, 2018, pp. 248–50.

[64]   R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 37.

*(Cont'd on next page)*

[redacted] [65] At her June 2020 deposition, she was asked the same question and again could not answer.[66]

41. [redacted]



---

[65] R1 Astrachan Rebuttal Rpt., ¶ 65. She testified that "my solution would be to go and confer with counsel and find out what the legal answer is." [redacted]

[66] Deposition of Barbara Frederiksen-Cross, June 19, 2020, pp. 147–48.

[67] R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 37.

[68] *See* R1 Frederiksen-Cross Opening Rpt., ¶¶ 16–17; R1 Astrachan Rebuttal Rpt., ¶¶ 47–53 (explaining the breadth of these assumptions).

[69] Corrected Supplemental Expert Report of Barbara Ann Frederiksen-Cross, dated June 19, 2018 ("R2 Frederiksen-Cross Supp. Rpt."), ¶ 217 (emphasis added).

[70] *Id.* ¶ 715 (emphasis added).

*(Cont'd on next page)*



- Ms. Frederiksen-Cross testified, as quoted above, that it would be "cross-use" for one engineer to tell another engineer that the table that needs fixing is "the state tax table." She testified "A. *Where the __knowledge__ and use of the first customer's licensed environment was used to derive that information*, the first customer's license was used to derive that information, *it's my understanding that it's cross-use for that use of the first customer's environment to be used* on behalf of a second or different customer for use in that customer's licensed -- that second customer's licensed environment."[75]

---

[71] R1 Frederiksen-Cross Opening Rpt., ¶ 272 (emphasis added).

[72] Deposition of Barbara Frederiksen-Cross, Sept. 19, 2018, pp. 233–34 (emphasis added).

[73] *Id.* p. 151 (emphasis added).

[74] R1 Frederiksen-Cross Opening Rpt., ¶ 365 (emphasis added).

[75] Deposition of Barbara Frederiksen-Cross, Sept. 19, 2018, p. 249 (emphasis added).

*(Cont'd on next page)*



42.     The above are examples, not an exhaustive list.  In addition, even *after* her Surrebuttal Report, Ms. Frederiksen-Cross gave deposition testimony again confirming

---

76   Deposition of Barbara Frederiksen-Cross, Sept. 19, 2018, p. 186 (emphasis added).

77   *Id.* at pp. 194–95.

- Ms. Frederiksen-Cross was asked if a Rimini engineer who fixed an issue for Client A could remember his fix and use it for Client B who was encountering the same issue.  She responded:  "[I]f the engineer *__remembered__* exactly the code he wrote, exactly what he fixed, exactly where he fixed it, and *__he relied on that very specific knowledge and detailed knowledge__* to re-create that update for another customer, then it would be my understanding that because he's relying on the work done in the system of Client A to identify the change and to implement the change and to test the change when he goes to Client B with the certainty that that is the change required that that would be impermissible."[78]

- She also testified:  "[E]ven just the act of testing that – or developing the fix in the first place and then testing it so that you know this is the fix, *__when you transport that knowledge__* to another environment, you may be running through the same set of tests, but you've already benefited from the fact of developing that test – or developing that test plan of what to test and what not to test and how to test it and what specific steps to take in the test."[79]

- She also testified that "cross-use" does not depend on any time savings, but occurs when "using the benefit of the *__knowledge__* gained on Client A's system when you develop that update, then applying that for the benefit of the another customer when you apply that update elsewhere."[80]

43.    These are non-exhaustive examples.  The essence of Ms. Frederiksen-Cross's testimony was that any knowledge gained by a Rimini engineer in performing a fix for Client A could never be reused because then Client B would "benefit" from Rimini's knowledge.

44.    ███████████████████████████████████████ ▬

████████████████████ ▮ ████████████████████████████

---

[78]    Deposition of Barbara Frederiksen-Cross, June 19, 2020, pp. 130–31.

[79]    *Id.* p. 166.

[80]    *Id.* p. 118.

[81]    R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 38.

*(Cont'd on next page)*



45.       ██████████████████████████████████

████████████████████████████████████████████████████ When the Rimini developer is

using Client A's environment and making modifications and performing testing to implement

Rimini's update, he is using Client A's environment to support Client A, which complies with

the Injunction.  When he documents the solution, including any Rimini-written code, that does

not violate the Injunction because Rimini's work product is not Oracle software and

documentation (nor is it copyrighted to Oracle).  And when Rimini solves the same problem for

subsequent clients in those clients' environments, its use of each client's software is to support

that client.  This is consistent with the Injunction.

46.       ██████████████████████████████████



---

[82]  *Id.*  Additional non-exhaustive examples of Ms. Frederiksen-Cross committing this error are the following paragraphs of her Opening Report:  40–45, 208–11, 231–66, 272–77, 288–89, 298–304, 348, 365, 374.

[83]  R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 38.

[84]  *E.g.*, R1 Astrachan Rebuttal Rpt., ¶¶ 248–59.

[85]  *See*, *e.g.*, Deposition of Barbara Frederiksen-Cross, Sept. 19, 2018, p. 151 ("you were applying that knowledge in the second environment, then I would say yes, you're cross using that knowledge").

*(Cont'd on next page)*

 In fact, as I stated in my Rebuttal Report, Oracle's expert at trial in *Rimini I* testified that an example of conduct that was <u>not</u> "cross-use" is having "one dev[elopment] environment for every client who is using the software"[87]—*i.e.*, precisely the conduct Rimini engages in now under Process 2.0.

47. .[90] So long as the solutions written down are Rimini work product and Rimini knowledge, and do not substantially incorporate protected expression from Oracle works, the Injunction, as I understand it, does not prohibit using that solution and knowledge.

---

86   *See* R1 Astrachan Rebuttal Rpt., ¶¶ 143–60.  Ms. Frederiksen-Cross does not respond to any of these opinions in her Surrebuttal Report.

87   Trial Tr. at pp. 204–05.

88   R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 39.

89   R1 Frederiksen-Cross Opening Rpt., ¶ 277; R1 Astrachan Rebuttal Rpt., ¶ 280.

90   Ms. Frederiksen-Cross recognizes this by acknowledging that there is no difference between "taking highly-detailed notes" and "memorization."  R1 Frederiksen-Cross Surrebuttal Rpt., ¶ 39.

*(Cont'd on next page)*