BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:       702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:     202.223.7300
Facsimile:       202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

BOIES SCHILLER FLEXNER LLP
BEKO REBLITZ-RICHARDSON (*pro hac vice*)
SEAN P. RODRIGUEZ (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:     415.293.6800
Facsimile:       415.293.6899
brichardson@bsfllp.com
srodriguez@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:     415.442.1000
Facsimile:       415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     650.506.4846
Facsimile:       650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.*

UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | **Case No. 2:10-cv-0106-LRH-VCF**<br><br>**ORACLE'S REPLY IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY RIMINI STREET, INC. SHOULD NOT BE HELD IN CONTEMPT**<br><br>**PUBLIC REDACTED VERSION** |

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION .................................................................................................... 1

II. RIMINI'S PEOPLESOFT SUPPORT PROCESSES VIOLATE THE INJUNCTION. ......................................................................................................... 2

    A.  Rimini Is Violating Paragraphs 4 and 6 of the Injunction. ............................ 2

        1.  Rimini's prototype/retrofit development model is cross-use. .......... 3

        2.  Rimini's creation and use of "Dev Instructions" is cross-use. ........ 5

        3.  Rimini's tools automate its systematic cross-use. ............................ 6

        4.  Rimini cross-uses PeopleSoft when testing its updates. ................. 7

    B.  Rimini Violates Paragraph 5 of the Injunction by Copying and Using PeopleSoft Outside of its Customers' Own Computer Systems. ................... 7

        1.  Windstream-hosted PeopleSoft environments are not a specific licensee's own computer systems. .................................................. 7

        2.  Rimini creates copies of PeopleSoft software and documentation, storing them on its networks and computer systems. ...................... 9

    C.  Rimini's Updates and Modifications to PeopleSoft Software are Derivative Works in Violation of Paragraphs 4, 5, and 6 of the Injunction. ......................... 9

III. RIMINI'S JD EDWARDS SUPPORT PROCESSES VIOLATE THE INJUNCTION. ....................................................................................................... 11

    A.  Rimini Copies JD Edwards Software Source Code When Developing and Testing Updates, Violating Paragraph 8. .............................................. 11

    B.  Rimini's JD Edwards Development and Testing Processes Violate Paragraph 10 of the Injunction Through Cross-Use and Creation of Derivative Works. ........................................................................................ 13

IV. RIMINI DISTRIBUTES PEOPLESOFT AND JD EDWARDS SOFTWARE AND SUPPORT MATERIALS IN VIOLATION OF THE INJUNCTION. .................... 13

V. RIMINI'S PEOPLESOFT AND JD EDWARDS SUPPORT PROCESSES ALSO VIOLATE THE INJUNCTION AS TO ORACLE DATABASE. ................. 13

VI. RIMINI WRONGLY MINIMIZES THE SCOPE OF ADJUDICATED CONDUCT. ........................................................................................................... 14

VII. THERE IS NO BASIS TO IMPOSE THE "NO MORE THAN COLORABLY DIFFERENT" PATENT LAW STANDARD IN THIS COPYRIGHT CASE. ................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonick v. Elec. Arts, Inc.*,
    841 F.3d 1062 (9th Cir. 2016) ..................................................................................11

*Disney Enters., Inc. v. VidAngel Inc.*,
    No. CV 16-04109, 2017 WL 6820015 (C.D. Cal. Sept. 13, 2017) ..........................15

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998) .............................................................................10, 11

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    783 F.App'x 707 (9th Cir. 2019) ................................................................................3

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    879 F.3d 948 (9th Cir. 2018) ............................................................................2, 4, 8

*Psihoyos v. Liberation, Inc.*,
    No. 96 Civ. 3609, 1997 WL 218468 (S.D.N.Y. Apr. 30, 1997) ...............................13

*TiVo Inc. v. EchoStar Corp.*,
    646 F.3d 869 (Fed. Cir. 2011) ............................................................................11, 15

*Triad Sys. Corp. v. Se. Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) ....................................................................................12

**Statutes**

17 U.S.C. § 117(c) .........................................................................................................12

17 U.S.C. § 502(a) .........................................................................................................12

## I. INTRODUCTION

In its Opening Brief, Oracle pointed to specific facts showing that Rimini is violating the Injunction. While Rimini's Opposition argues, once again, that the Injunction should be limited, Rimini Street does not dispute the underlying facts. Specifically, Rimini does not dispute:

- Rimini copies PeopleSoft and JD Edwards software when using an environment associated with one customer to prototype updates and create Dev Instructions and other works for the benefit of other Rimini customers. OSC Motion at 12–18, 26–27. This undisputed conduct violates Paragraphs 2a, 4, 6, and 10 of the Injunction.

- Rimini copies PeopleSoft software that is cloud-hosted on servers owned and operated by third-party Windstream. OSC Motion at 18–21. Rimini's copying and use of PeopleSoft software that is hosted outside "a specific licensee's own computer systems" violates Paragraph 5 of the Injunction. *Id.*

- Rimini's updates ▮▮▮▮▮▮▮▮▮▮ Benge Decl. ¶¶ 27, 35 (emphasis in original); BFC Decl. ¶ 84. These updates are derivative works under Ninth Circuit law, and Rimini's creation, copying, and distribution of them violates Paragraphs 2a, 4, 6, and 10 of the Injunction. OSC Mot. at 21–23.

- Rimini copies ▮▮▮▮▮▮▮▮▮▮ Mackereth Decl. ¶ 5. JD Edwards "open code" is "J.D. Edwards software source code" (OSC Motion at 23–26), and Rimini's admitted copying violates Paragraph 8 of the Injunction.

- Rimini distributes updates to customers to be applied to Oracle software using its TransferFiles tool. OSC Motion at 27–28. Rimini's unauthorized distribution of derivative works violates Paragraphs 3 and 7 of the Injunction.

- Rimini ▮▮▮▮▮▮▮▮▮▮ (OSC Motion at 28; Kumar Decl. ¶ 10), violating Paragraph 15 of the Injunction.

In its Opening Brief, Oracle showed that Rimini violates the Injunction because its business model depends on improper copying of derivative works, and Oracle cited Rimini's own expert, who testified no customer would hire Rimini if Rimini could not "re-use" the patches and updates that it developed for other customers. Rimini has no answer to its own expert.

Lacking any factual basis to avoid contempt, Rimini repeats for the *eighth time* that the Injunction should be limited to its "Process 1.0." Opp. at 14–15. As both this Court and the Ninth Circuit have held, the Injunction is not so limited. The Order to Show Cause should issue.

## II. RIMINI'S PEOPLESOFT SUPPORT PROCESSES VIOLATE THE INJUNCTION.

### A. Rimini Is Violating Paragraphs 4 and 6 of the Injunction.

As the Ninth Circuit held in this case: "There are numerous forms of 'cross use.'" *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 956 (9th Cir. 2018).  Rimini previously acknowledged during closing arguments that "cross-use" broadly referred to "the reusing of updates that you've heard about in this case": "[i]f we have multiple clients with the exact same release, the same rights, we would come up with one fix and then apply it to other customers that had the exact same rights." *Id.* at 956 n.3.  Rimini's assertion in its Opposition that "the only kind of cross-use at issue in *Rimini I*" is "hav[ing] generic environments or cop[ying] Oracle software of one client to give to others," Opp. at 13, is incorrect, on the facts and on the law.

Oracle's technical expert captured the cross-use at issue in *Rimini I* during the first day of trial: "cross-use, as we're talking about it, involves using one customer's software for the benefit of another customer." Tr. at 191:24-192:9.  Paragraphs 2a, 4, and 6 of the Injunction enjoin Rimini from further PeopleSoft cross-use.  The Injunction states that Rimini "shall not reproduce, prepare derivative works from, or use a specific licensee's PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations."  Injunction ¶ 4.  The Injunction further states that Rimini "shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee." *Id.* ¶ 6.  And the Injunction likewise requires that Rimini's reproduction, distribution, and preparation of derivative works from Oracle software be "solely in connection with work for a specific customer" with a valid license agreement authorizing Rimini's conduct. *Id.* ¶ 2a.

In opposing entry of the Injunction, Rimini argued to this Court that the Injunction was overly broad because it bars types of cross-use outside of Rimini's "Process 1.0."  After this Court rejected Rimini's argument, Rimini appealed, arguing to the Ninth Circuit that the

1    Injunction is overbroad because it prohibits "all forms of so-called 'cross-use.'"  ECF No. 1348-5
2    at 42.  The Ninth Circuit rejected Rimini's overbreadth arguments and, except for narrow
3    exceptions not relevant here, upheld this Court's Injunction.  *Oracle USA, Inc. v. Rimini Street,*
4    *Inc.*, 783 F.App'x 707, 710–12 (9th Cir. 2019).  In arguing that the Injunction only prohibits a
5    narrow form of cross-use, Rimini is disregarding the Injunction's express terms, this Court's
6    decisions, and the Ninth Circuit's ruling.[1]

**1.     Rimini's prototype/retrofit development model is cross-use.**

Rimini does not dispute that it continues to use a prototype/retrofit development model in which Rimini copies PeopleSoft updates developed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, with or without modification.  OSC Motion at 12–15.  Rimini wrongly asserts that this conduct is not "copying" but rather "*separately implementing* the same or similar Rimini changes to separate client environments."  Opp. at 19 (emphasis in original).  As Oracle's technical expert, Ms. Frederiksen-Cross, explained: "Rimini uses a relatively small number of Scrum [*i.e.*, prototype] clients to perform the time consuming development work, saves much of that development work to Dev Instructions and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, then rapidly copies that work to many more Kanban [*i.e.*, retrofit] clients."  BFC Decl. ¶ 15.  Rimini is copying for the benefit of multiple customers, which is cross-use in violation of the Injunction.  Further, Rimini's discussion of "separately implementing" a change is sophistry.  Rimini violates the Injunction by *developing* a change that is used for more than one customer, and then violates it again by *distributing* that change to multiple customers.  Whether Rimini "implements"—that is, "puts into effect"—a change for each customer is irrelevant.[2]

Oracle illustrated Rimini's continued and impermissible cross-use with two exemplary PeopleSoft updates: HCM200443 and HCM200440.  Rimini did not dispute any of the predicate facts that Oracle established about these updates, including that Rimini retrofitted ▮▮▮

---

[1] Rimini also accuses Oracle of pursuing a "new theory of 'cross-use'" that targets Rimini's "own knowledge and work product."  Opp. at 13 (emphasis removed).  But Oracle's OSC Motion targets specific acts of copying prohibited by the Injunction.

[2] Oxford University Press, available at: https://www.lexico.com/definition/implement (last accessed August 13, 2020).

1  ▮▮▮
2  ▮▮▮ OSC Motion at 14–15. ▮
3  ▮▮▮ resulted from Rimini's cross-use of PeopleSoft software; they cannot be squared
4  with Rimini's assertions that it "got faster" and that "[e]ach update was independently
5  implemented." Opp. at 20.  In fact, no testimony from Jim Benge, Professor Astrachan, or any
6  other Rimini declarant supports either assertion.  And that echoes a much larger failing.  While
7  Rimini had Mr. Benge prepare a lengthy declaration and narrate a multimedia presentation about
8  Rimini's broad stroke support practices, Rimini chose not to ask Mr. Benge to investigate any of
9  the Injunction violations featured in Oracle's OSC Motion, despite his name appearing on many
10 of Oracle's supporting exhibits.[3]  Polito Decl. Exs. 11, 17, 20, 21, 36, 37.

   Rimini also lacks any evidentiary support for its claim that ▮▮▮
   ▮▮▮
   ▮▮▮ Opp. at 6
14 (emphasis in original).  Significantly, no Rimini witness sponsors that inaccurate assertion.  When
15 Rimini uses the PeopleSoft environment associated with Client A to prototype an update,
16 Rimini's use and copying of PeopleSoft is for the benefit of the other Rimini clients needing the
17 update (and for Rimini's own financial benefit, as well).  As the Ninth Circuit ruled, "[a]ny work
18 that Rimini performs under color of a license held by a customer for other existing customers
19 cannot be considered work in support of that particular customer."  *Oracle*, 879 F.3d at 957.

20   *Finally*, Rimini's reliance on the opinions of Professor Astrachan ignores how his actual
21 assignment was limited by design.  Professor Astrachan failed to confirm that no Rimini
22 developer had copied Oracle code to Rimini's systems after the Injunction went into effect.
23 Polito Reply Decl. Ex. 41 at 26:24-27:9.  Professor Astrachan based his technical analysis of
24 Rimini's processes on what Rimini engineers and documentation told him and did not undertake

---

[3] Rimini congratulates itself for allegedly cooperating during post-Injunction discovery. Post-Injunction discovery could have ended much sooner had Rimini conceded to its underlying conduct (as it now largely does) when Oracle asked Rimini to admit or deny that it engages in the prohibited acts that are the subject of its OSC Motion.  ECF No. 1348-2.  Instead, Rimini responded with 16 pages of evasion (ECF No. 1348-8) and months of delay.  Rimini's "sea change" reversal is "significant litigation misconduct," just as before.  ECF No. 1164 at 14.

1  any factual investigation to verify those statements were accurate. *Id.* at 25:11-16, 26:11-23.  He
2  did not observe Rimini engineers log onto a client system to create an update for any Oracle
3  software or otherwise observe the creation of a Dev Instruction, technical specification, or test
4  case. *Id.* at 32:8-33:17. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 152:18-154:19.

      **2.**     **Rimini's creation and use of "Dev Instructions" is cross-use.**

7      The key facts regarding Rimini's creation and use of Dev Instructions are largely
8  undisputed.  Rimini creates Dev Instructions using PeopleSoft software licensed to a single
9  customer, and Rimini admits that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp. at 6 (emphasis
11 in original).  Rimini also admits that Dev Instructions ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Benge Decl. ¶ 31 (emphasis added).
13     Rimini's creation and use of these Dev Instructions violates the Injunction.  Rimini copies
14 PeopleSoft software in an environment associated with one customer to create the Dev
15 Instructions, and they are—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ BFC Decl. ¶¶ 28–36.  The Dev Instructions may include
17 Oracle code, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19 ▓▓  OSC Motion at 15–16, 23 n.12.  Rimini's copying is cross-use—it benefits other Rimini
20 customers receiving the same update (violating Paragraph 6) and is not "solely in connection
21 with" the "licensee's own internal data processing operations" (violating Paragraphs 2a and 4).
22     Rimini speculates that Dev Instructions ▓▓▓▓▓▓▓▓▓▓▓▓▓ because ▓▓▓▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp. at 20.  But Rimini offers no evidence of ever
25 using Dev Instructions for archival purposes.  The evidence instead shows that Dev Instructions
26 exist so that Rimini can deliver to Clients B, C, and D the same update that Rimini created using
27 the environment associated with Client A (which has no need for them).  BFC Decl. ¶¶ 28–29,
28 34–36; Benge Decl. ¶ 31.  Dev Instructions allow Rimini to duplicate an update developed in

1  Client A's environment for Clients B, C, and D, thus benefitting the non-prototype customers.
2  Polito Decl. Ex. 18 at RSI006913545 (Dev Instruction: ▮
3  ▮). Even if Client A somehow benefits
4  from a Dev Instruction, the Injunction prohibits Rimini from using the PeopleSoft software
5  associated with Client A to benefit other customers.
6       Rimini's assertion that it ▮
7  ▮ is without factual support and contrary to the evidence. Opp. at 20–21 (emphasis
8  in original). Once again, Rimini's Opposition makes factual assertion that no Rimini fact witness,
9  expert, or attorney would dare swear to under penalty of perjury. In fact, Oracle's Opening Brief
10  points to a Dev Instruction that ▮
11  ▮ BFC Decl. ¶ 30; Ex. 19 (RSI006952588).

### 3. Rimini's tools automate its systematic cross-use.

13       Rimini does not dispute its use of TransferFiles ▮
14  ▮
15  ▮ BFC Decl. ¶¶ 43–44. Rimini also does not dispute that it
16  completed ▮ such transfers during the post-Injunction period. *Id*. Rimini instead claims,
17  with no support, that "Rimini is free to copy and send its *own* documents to clients as it pleases."
18  Opp. at 21 (emphasis in original). But as previously explained, Paragraphs 2a, 4, and 6 of the
19  Injunction prohibit the cross-use of PeopleSoft software. And Oracle illustrated Rimini's
20  violation of these paragraphs using the HCM200640 update discussed in its OSC Motion.
21       Oracle proved that Rimini used TransferFiles to send ▮ to the PeopleSoft
22  environment associated with one Rimini customer ▮ times between July 23 and 26,
23  2019 as part of prototype development for this update. OSC Motion at 16–17; BFC Decl. ¶¶ 47–
24  48. Oracle proved that Rimini used TransferFiles to distribute ▮ to ▮ other Rimini
25  customers between July 27 and August 2, 2019. *Id*. This conduct clearly and convincingly shows
26  Rimini using and reproducing PeopleSoft software in the environment associated with ▮ to
27  develop ▮ for the benefit of ▮ other Rimini customers. That conduct violates the
28  Injunction, and Rimini has not even contradicted this evidence, much less proffered a defense.

### 4. Rimini cross-uses PeopleSoft when testing its updates.

Rimini VP of Global Quality Assurance Brenda Davenport confirmed Rimini's cross-use of PeopleSoft software when testing updates. Ms. Davenport declared that Rimini ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Davenport Decl. ¶ 3), thus copying PeopleSoft software into memory. She further declared that Rimini creates ▮▮▮▮▮ for updates that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 4–5. And after creating its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 4 (emphasis added). This conduct violates the Injunction.

The Injunction states that Rimini "shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or *testing for any other licensee*" nor "use a specific licensee's PeopleSoft environment to develop or *test software updates or modifications for the benefit of any other licensee*." Injunction ¶ 6 (emphasis added). While Client A may benefit from the testing (Opp. at 21), Rimini's creation of the test plan using Client A's PeopleSoft environment is for the benefit of other customers also receiving the update, which is prohibited.

Rimini's Opposition also offers no response to the fact that it used the PeopleSoft environment associated with the City of Eugene (COE or COEX) on ▮▮▮▮▮ as a generic environment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. BFC Decl. ¶¶ 69–71; Polito Decl. Ex. 20–21. Rimini used the COE associated PeopleSoft environment to (1) ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (BFC Decl. ¶ 70; Polito Decl. Ex. 20) and (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (BFC Decl. ¶ 70; Polito Decl. Ex. 21). Both acts are cross-use.

### B. Rimini Violates Paragraph 5 of the Injunction by Copying and Using PeopleSoft Outside of its Customers' Own Computer Systems.

#### 1. Windstream-hosted PeopleSoft environments are not a specific licensee's own computer systems.

Windstream-hosted PeopleSoft environments cannot be "a specific licensee's own

1  computer systems" because Rimini's customers have no possessory interest in the computer
2  systems underlying Windstream's cloud-hosting services. Injunction ¶ 5. Windstream
3  ████████████████████████████████████████████ Polito Decl. Ex. 26. Rimini
4  does not dispute this, nor does it dispute that Windstream hosts customer-associated PeopleSoft
5  environments in a ████████████████████████████████████████████████████████
6  ████████████████████████████. OSC Motion at 18–19.

       Nothing in Rimini's Opposition establishes any basis for Rimini's disregard of the plain terms of the Injunction. The meaning of "a specific licensee's own computer systems" is clear—the computer systems hosting a licensee's PeopleSoft software must belong to the specific licensee. Injunction ¶ 5. The extrinsic opinions of Professor Astrachan and Mr. Lanchak regarding the plain language of the Injunction are unnecessary and irrelevant.

       *First*, Rimini is incorrect in asserting that "the server (*i.e.*, computer system) where the copying takes place is the client's VM" (*i.e.*, virtual machine). Opp. at 24. Both technical experts agree that a virtual machine is "software." Vandevelde Decl. Ex. O at 213:9-21; Polito Reply Decl. Ex. 41 at 236:12–14. A virtual machine cannot be a "computer system," Mr. Frederiksen-Cross explains, because it "doesn't have an independent existence" and "must still run on a physical computer system." Vandevelde Decl. Ex. O at 213:9-21.

       *Second*, Rimini wrongly argues that the Ninth Circuit's decision on the first appeal supports Rimini's argument that it is complying with the Injunction because Windstream servers can be servers at a customer's "facilities." In affirming this Court's interpretation and application of the "facilities" restriction in Oracle's PeopleSoft licenses, the Ninth Circuit *quoted but ultimately rejected* Rimini's argument that the plain meaning of "facilities" encompasses servers not kept on customers' "actual premises," such as when customers "contract[] with third parties for still more capacity." *Oracle*, 879 F.3d at 959–60. The Ninth Circuit instead held that "'facilities under the control of a **third party**' could *not* qualify as 'the *licensee's* facilities.'" *Id.* (emphasis in original and added). In any event, the Injunction does not use the term "facilities."

       *Finally*, even if its nebulous "control of the software" arguments were relevant, Rimini still fails to show that its customers exercise control over their associated PeopleSoft software

cloud hosted by Windstream.  Oracle proved that two exemplary Rimini customers (█████ █████ and Easter Seals) admittedly did not exercise any control over their associated Windstream PeopleSoft environments.  OSC Motion at 18–21.  Rimini ignored ██████████, along with ████████████████████████████████████████████████████ Polito Decl. Ex. 33.  As for Easter Seals, the best that Rimini could do was compile a laundry list of speculative actions that this customer "could" take in order to wrest control from Rimini.  Opp. at 24–25.   Rimini cited no evidence to show Easter Seals actually exercised any control over its associated Windstream environment during the post-Injunction period.

        **2.**     **Rimini creates copies of PeopleSoft software and documentation, storing them on its networks and computer systems.**

In an attempt to explain away its copying of Oracle code into the ████████████ file on Rimini's networks, Rimini argues that analytic dissection shows no "unlawful reproduction" and that Oracle's expert failed to perform the required analysis.  Opp. at 25.  Both contentions fail.  Ms. Frederiksen-Cross conducted analytic dissection (Opp. to Rimini's Motion to Exclude at 12–16), and concluded that over 30% of the lines of code in ██████████ are copied from Oracle source code.  BFC Decl. ¶¶ 77–78, Ex. 1.  Rimini does not dispute that a copy of the ██████████ file on its systems is almost entirely Oracle code with a few Rimini modifications.  Opp. at 26.  Rimini employees received and internally forwarded Oracle's copyrighted support documentation for PeopleSoft via e-mail.  Polito Decl. Ex. 11. The Injunction makes no exception for PeopleSoft support materials on Rimini's computer systems that Rimini claims not to use.

        **C.**     **Rimini's Updates and Modifications to PeopleSoft Software are Derivative Works in Violation of Paragraphs 4, 5, and 6 of the Injunction.**

Paragraphs 4, 5, and 6 of the Injunction bar Rimini from preparing derivative works from Oracle's PeopleSoft software and documentation.  Injunction ¶¶ 4–6.  Rimini agrees that the updates it creates ███████████████████████████████ and also consist of ████████████████████████████████████████████████████ Benge Decl. ¶¶ 27, 35.  Under Oracle's previously cited authorities, these undisputed facts establish that the Rimini-created PeopleSoft updates are derivative works.  OSC Motion at 21–23.

|   |   |
|---|---|
| 1 | Rimini agrees that when it modifies a PeopleSoft environment with an update "both the |
| 2 | modified environment as a whole and any modified files are derivative works." Opp. at 17.  But |
| 3 | citing to Injunction Paragraphs 4, 6, and 10, Rimini argues that its "creation of derivative works |
| 4 | in the client's environment to support the client does not violate the injunction." *Id.*  Nothing in |
| 5 | these paragraphs (or anywhere else in the Injunction) supports the argument.  Rimini prototypes a |
| 6 | PeopleSoft update in an environment associated with one customer before retrofitting the update |
| 7 | in environments associated with other customers.  During development and testing, Rimini |
| 8 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Davenport Decl. ¶¶ 4–5. |
| 9 | This copying of PeopleSoft benefits the retrofit customers and is prohibited cross-use. |
| 10 | Rimini's individual updates are also derivative works under the Ninth Circuit's reasoning |
| 11 | in *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110, 1114 (9th Cir. 1998), in which the court |
| 12 | directed entry of an injunction against Micro Star for selling new levels to a videogame ("Duke |
| 13 | Nukem" or "D/N-3D") in the form of MAP files.  Micro Star made the same argument to the |
| 14 | Ninth Circuit that Rimini makes here: namely, that its "MAP files are not derivative works |
| 15 | because they do not, in fact, incorporate any … protected expression." *Id.* at 1112 ("Therefore, |
| 16 | [Micro Star] claims, nothing of D/N-3D's is reproduced in the MAP files").  The Ninth Circuit |
| 17 | rejected the argument because a "copyright owner holds the right to create sequels, and the stories |
| 18 | told in [Micro Star's] MAP files are surely sequels, telling new (though somewhat repetitive) |
| 19 | tales of [the protagonist's] fabulous adventures." *Id.* at 1112 (citations omitted).  Just as the MAP |
| 20 | files were infringing derivative sequels to the game at issue in *Micro Star*, the PeopleSoft |
| 21 | software updates created by Rimini are derivative extensions of Oracle's PeopleSoft software. |
| 22 | Rimini also ignores a critical reason why the MAP files in *Micro Star* were infringing |
| 23 | derivative works—they "can only be used with D/N-3D." *Id.* at 1112 n.5.  Were it otherwise, |
| 24 | "the MAP files would not incorporate the protected expression of D/N-3D because they would |
| 25 | not be telling a D/N-3D story." *Id.*  The same is also true of Rimini's PeopleSoft updates.  Rimini |
| 26 | does not dispute those updates ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 27 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 28 |   |

1 ▮"[4]  BFC Decl. ¶ 84.  This applies also to Rimini Dev Instructions that incorporate Oracle software.  BFC Decl. ¶ 87, Ex. 3, ECF No. 1292-1 to -5, OSC Motion at 23 n.12.

### III. RIMINI'S JD EDWARDS SUPPORT PROCESSES VIOLATE THE INJUNCTION.

#### A. Rimini Copies JD Edwards Software Source Code When Developing and Testing Updates, Violating Paragraph 8.

Rimini concedes its JDE support processes involve ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Mackereth Decl. ¶ 5.  JD Edwards "open code" is "J.D. Edwards software source code."  OSC Motion at 23–26; Injunction ¶ 8.  Because Paragraph 8 of the Injunction bars Rimini from copying (and modifying) JD Edwards software source code, the evidence clearly and convincingly shows that Rimini is violating the Injunction.

Rimini wrongly argues that "until now, arguments about how specific terms should be understood and applied were not ripe."  Opp'n at 28 n.6.  But on November 10, 2018, five days after the Injunction took effect, Rimini decided to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Polito Decl. Ex. 7.  Rimini waived this argument when it failed to seek clarification from this Court, and waived this argument again when Rimini failed to raise this issue during its second appeal.  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 889 (Fed. Cir. 2011) ("The time to appeal the scope of an injunction is when it is handed down, not when a party is later found to be in contempt.").

Rimini's arguments also fail on the merits.  *First*, the opinions of Rimini's "ERP industry expert," Mr. Lanchak, are irrelevant to the current dispute.  Opp. at 27.  Rimini does not identify any ambiguity in the meaning of "J.D. Edwards software source code" or explain why parol opinions from Mr. Lanchak are key to resolving it (or even relevant).  Making matters worse, Mr. Lanchak testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Polito Reply Decl. Ex. 42 at 173:8–174:11.  Mr. Lanchak also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—a notion that beggars belief after the numerous sealing requests this

---

[4] Nothing in *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016) is to the contrary or otherwise disturbs the reasoning in *Micro Star*.  In fact, the Ninth Circuit notes in *Antonick* that a plaintiff need not prove substantial similarity or even access when there is "direct evidence of copying."  *Id.* at 1065.  Here, Rimini concedes direct copying of Oracle software.

1  Court has adjudicated relating to what Rimini calls "open code." *Id.* at 175:7–14.

2      *Second*, Rimini's "open code" arguments are contradicted by its own ▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Polito Decl. Ex.

4  9 at RSI006850411 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮; Ex. 10 at RSI006850428 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis added in each).  Professor Astrachan

7  likewise agreed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Polito Reply Decl. Ex. 41 at 268:5–269:14), ▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 270:2–

10  271:5).  Rimini never explains why the same is not true for "J.D. Edwards software source code."

11      *Third*, giving "J.D. Edwards software source code" its plain and ordinary meaning, as

12  Oracle proposes, is not "inconsistent with [P]aragraph 10" of the Injunction.  Opp. at 27.  Though

13  there is overlap between Paragraphs 8 and 10, they are not co-extensive: for example, only

14  Paragraph 10 prohibits copying and use of documentation and user interface screens, while only

15  Paragraph 8 prohibits copying of source code even for the sole benefit of the associated licensee.

16      *Fourth*, Rimini's purported fear that properly enforcing the prohibitions in Paragraph 8

17  would prevent development and testing of updates "merits little equitable consideration." *Triad*

18  *Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded by statute on other*

19  *grounds*, 17 U.S.C. § 117(c) (alleging "lost profits" from enjoining "an activity which has been

20  shown likely to be infringing … merits little equitable consideration") (quotation and citation

21  omitted).  This Court has acknowledged "there may not be any manner by which a competing

22  company like Rimini can engage in its services without engaging in copyright infringement,"

23  ruling that such a situation "does not constitute copyright misuse."[5] *Rimini II*, ECF No. 90 at 6.

24  Having chosen to copy Oracle's software without a license, Rimini cannot be heard to complain

25  that this Court must interpret the Injunction in a manner that permits additional copying.

---

[5] Oracle previously explained that the Ninth Circuit's discussion of copyright misuse during the first appeal relates to license construction and not the power of this Court to enter an injunction that prevents or restrains infringement.  17 U.S.C. § 502(a); ECF No. 1139 at 11.

ORACLE'S REPLY ISO ITS MOTION FOR ORDER TO SHOW CAUSE

B. **Rimini's JD Edwards Development and Testing Processes Violate Paragraph 10 of the Injunction Through Cross-Use and Creation of Derivative Works.**

Rimini's Opposition does not even address the other examples of JDE cross-use set forth in Oracle's OSC Motion that violate Paragraph 10 of the Injunction. OSC Motion at 26–27. The evidence is uncontroverted that Rimini copied JDE code into technical specifications that it used to create updates for multiple customers. BFC Decl. ¶¶ 97–101, Ex. 5. Rimini also uses the same cross-use development model for JDE that it does for PeopleSoft. Mackereth Decl. ¶ 7.

## IV. RIMINI DISTRIBUTES PEOPLESOFT AND JD EDWARDS SOFTWARE AND SUPPORT MATERIALS IN VIOLATION OF THE INJUNCTION.

Rimini does not dispute that it distributes updates, Dev Instructions, and other files to customers using TransferFiles, email, FTP, ShareFile, copy-paste, and informal delivery. OSC Motion at 27–28. Because Rimini's PeopleSoft and JDE updates (and certain Dev Instructions) are derivative works, Rimini's distribution violates Paragraphs 3 and 7 of the Injunction. Rimini claims that "a 'distribution' under the Copyright Act requires … that the work 'changed hands' and that it was disseminated 'to the public.'" Opp. at 29. But one Rimini customer can be the public (OSC Motion at 27 n.15), and distribution can be "by sale, gift, loan, or some rental or lease arrangement." *Psihoyos v. Liberation, Inc.*, No. 96 Civ. 3609, 1997 WL 218468, at *2 (S.D.N.Y. Apr. 30, 1997) (internal quotations omitted); Opp. to Rimini's Motion to Exclude at 19–21. Rimini's arguments are meritless, and this Court should hold Rimini in contempt.

## V. RIMINI'S PEOPLESOFT AND JD EDWARDS SUPPORT PROCESSES ALSO VIOLATE THE INJUNCTION AS TO ORACLE DATABASE.

In 2015, when opposing Oracle's request for a permanent injunction, Rimini admitted that Paragraph 15 of the Injunction imposed an "***Absolute Prohibition on Copying***" Oracle Database. ECF No. 906 at 24 (emphasis in original). In 2018, when opposing entry of this Injunction, Rimini again conceded that Paragraph 15 imposed a "blanket ban on all copying of Database software," and raised the same arguments it now makes—Rimini cannot be enjoined from copying Oracle Database pursuant to a valid license. *Compare* ECF No. 1130 at 22 *with* Opp. at 29–30. The Court rejected these arguments, entered the Injunction, and the Ninth Circuit

1  affirmed.  There is no daylight under law of the case or the mandate rule for Rimini to raise them

2  again.  Rimini now admits "[i]t would be impossible … to support ODB without ▓▓▓▓▓▓

3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"  Kumar Decl. ¶ 10.  This is proof that

4  Rimini continues to engage in conduct in violation of Paragraph 15 of the Injunction.

5  **VI.   RIMINI WRONGLY MINIMIZES THE SCOPE OF ADJUDICATED CONDUCT.**

6   Rimini's Opposition is the eighth time that Rimini has reargued the Injunction should not

7  apply to its current support practices.  The prior seven failed attempts are detailed in Oracle's

8  Opposition to Rimini's Motion to Enforce (ECF No. 1335) and Motion for Sanctions (ECF No.

9  1348).  In this eighth iteration, Rimini claims that it "indisputably does not engage in the enjoined

10  Process 1.0 conduct that was adjudicated in *Rimini I*."  Opp. at 14.  This is baseless.

11   The Injunction's cross-use prohibitions are not limited to "generic environments."[6]

12  Section II.A, *supra*.  Rimini wrongly claims that the Court's February 2014 cross-use summary

13  judgment order "refer[ed] to the *copying of Oracle code* from the City of Flint's environment to

14  other clients."  Opp. at 16 (emphasis in original).  This Court's summary judgment ruling did not

15  turn on the presence or absence of Oracle code in any updates.  *See* ECF No. 474 at 13.  Rimini

16  also repeatedly argues that the only type of cross-use prohibited by the Injunction is the

17  "*intermingling of Oracle code between clients*."  Opp. at 4 (emphasis in original); *id.* at 12, 13.

18  But that is not what the Injunction says.

19   Rimini's arguments about cloud-hosting repeat its failed arguments to the Ninth Circuit

20  and lack merit.  ECF No. 1335 at 3–6, 8–10; ECF No. 1348 at 3, 6–9.  The conduct already

21  adjudicated is not "Process 1.0" (Opp. at 7–8), but rather non-customer hosting and cross-use.

22  Those are the "acts that have already been determined to be unlawful, and which have been

23  affirmed on appeal."  ECF No. 1164 at 9.

24   Rimini's argument that copying of "JDE Software source code" "was never litigated in

25  *Rimini I*" borders on the absurd.  Opp. at 13.  The Court held that Rimini could not copy JDE

26  "software's source code to carry out development and testing of software updates," but denied

---

[6] Rimini still uses generic environments, as evidenced by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of PeopleSoft updates in the environment associated with City of Eugene (COEX).  Section II.A.4, *supra*.

1  summary judgment because of a factual dispute about "whether Rimini's use of the development
2  environment associated with Giant Cement was for archival purposes or whether Rimini accessed
3  the software's source code." ECF No. 474 at 22–23.  The jury was instructed on these same
4  issues at trial (ECF No. 880 at 28), and found for Oracle.  Rimini appealed and lost.  Later,
5  Rimini brought an appeal challenging the Injunction, and Rimini lost again.

**VII.    THERE IS NO BASIS TO IMPOSE THE "NO MORE THAN COLORABLY DIFFERENT" PATENT LAW STANDARD IN THIS COPYRIGHT CASE.**

Rimini's "not more than colorably different" standard is unique to patent law.  *TiVo*, 646 F.3d at 882; Opp. at 14–15.  Injunctions in patent cases restrict the sale of specific *products*, and a patent injunction can also restrict the sale of a new product that is not more than colorably different from the enjoined product.  Rimini fails to identify a single decision that applied this patent law standard to copyright contempt proceedings, and Oracle is not aware of any.  *See Disney Enters., Inc. v. VidAngel Inc.*, No. CV 16-04109, 2017 WL 6820015, at *2-3 (C.D. Cal. Sept. 13, 2017) (refusing to apply the "not more than colorably different" standard to copyright contempt proceedings because it would "giv[e] [defendant] the virtually unfettered ability to make use of the Plaintiff's copyrighted works without penalty for every 'more than colorably different' version of the service they can create").  The Injunction here is not directed at a specific Rimini client offering, but rather, it bars specific acts in providing support to customers.  Rimini is violating the Injunction because it continues to engage in acts that the Injunction prohibits.

In any event, Rimini's Process 2.0 is not more than colorably different than Process 1.0. Rimini never stopped copying PeopleSoft software outside of its customers' own computer systems or cross-using PeopleSoft and JD Edwards software, which were the "bas[e]s for[] the prior finding of infringement." *TiVo*, 646 F.3d at 882.  Ms. Frederiksen-Cross' analysis shows that Rimini's professed Process 2.0 reforms did not alter its performance of the same unlawful practices that this Court held and the jury found to be an infringement of Oracle's copyrights.[7] BFC Decl. ¶¶ 13–121; *see also* Opp. to Rimini's Motion to Exclude at 10–11.

---

[7] Oracle withdraws (without prejudice) its request that the Injunction be amended to bar Rimini from providing support for Oracle's PeopleSoft and JD Edwards product lines.  OSC Motion at 28–29; *see generally* Opp. to Rimini's Motion for a Jury Trial.

15

ORACLE'S REPLY ISO ITS MOTION FOR ORDER TO SHOW CAUSE

DATED: August 14, 2020                MORGAN, LEWIS & BOCKIUS LLP

By: _____*/s/ John A. Polito*_____
　　　　　John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August 2020, I electronically transmitted the foregoing **ORACLE'S REPLY IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY RIMINI STREET, INC. SHOULD NOT BE HELD IN CONTEMPT** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

DATED: August 14, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: _____*/s/ John A. Polito*_____
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corporation