BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: 702.382.7300
Facsimile: 702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone: 202.223.7300
Facsimile: 202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

BOIES SCHILLER FLEXNER LLP
BEKO REBLITZ-RICHARDSON (*pro hac vice*)
SEAN P. RODRIGUEZ (*pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: 415.293.6800
Facsimile: 415.293.6899
brichardson@bsfllp.com
srodriguez@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: 650.506.4846
Facsimile: 650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,

Defendants.

**Case No. 2:10-cv-0106-LRH-VCF**

**ORACLE'S OPPOSITION TO RIMINI STREET, INC.'S MOTION TO EXCLUDE THE DECLARATION AND OPINIONS OF BARBARA A. FREDERIKSEN-CROSS ISO ORACLE'S MOTION FOR ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. Ms. Frederiksen-Cross Analyzed Rimini's Copying And Cross-Use ........ 3

1. Environment Copying ........ 3

2. Copying Of Oracle Files On Rimini Servers ........ 4

3. Literal Copying And Substantial Similarity ........ 4

B. Ms. Frederiksen-Cross Analyzed Rimini's Creation Of Derivative Works ........ 5

C. Ms. Frederiksen-Cross Analyzed Rimini's Distribution ........ 5

D. Rimini's "Knowledge" And "Know-How" Arguments ........ 6

E. Ms. Frederiksen-Cross's Reports Were Timely Submitted ........ 7

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 7

A. Ms. Frederiksen-Cross's Declaration And Opinions Are Relevant ........ 7

1. Ms. Frederiksen-Cross's Declaration And Opinions Are Relevant To Determining Whether Rimini's Conduct Violates The Injunction ........ 8

2. Rimini's Claim That Ms. Frederiksen-Cross's View Of Cross-Use Would Prevent Engineers From Using Their "Knowledge" Does Not Render Ms. Frederiksen-Cross's Opinions Irrelevant ........ 9

3. The *TiVo* Standard Is Inapplicable ........ 10

4. Ms. Frederiksen-Cross Compared Purported Processes 1.0 And 2.0 ........ 10

B. Ms. Frederiksen-Cross's Opinions Are Reliable And Helpful ........ 11

1. Ms. Frederiksen-Cross's Opinions As To Rimini's Copying Are Reliable ........ 12

a. Rimini Directly Copied Oracle's Code Verbatim ........ 12

b. Ms. Frederiksen-Cross's Analytic Dissection Analysis Is Reliable ........ 14

c. Ms. Frederiksen-Cross's Opinions As To Cross-Use Are Reliable. ........ 16

            d. *DropzoneMS* Is Inapposite. ........ 17

2. Ms. Frederiksen-Cross's Opinions Regarding Rimini's Derivative Works Are Reliable. ........ 17

3. Ms. Frederiksen-Cross's Opinions Regarding Distribution Are Reliable. ........ 19

V. CONCLUSION ........ 22

ii

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO EXCLUDE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .......... 20

*ABS Enter., Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) .......... 18, 19

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013) .......... 7

*American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014) .......... 20, 21

*Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016) .......... 14

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) .......... 12, 18

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) .......... 12

*Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd* 658 F.3d 1150 (9th Cir. 2011) .......... 19

*Baker v. SeaWorld Entm't, Inc.*, 423 F. Supp. 3d 878, 898–99 (S.D. Cal. 2019) .......... 20

*Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129 (E.D. Cal. 1999) .......... 9

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2012 WL 13170064 (N.D. Cal. July 13, 2012) .......... 13, 14

*Broderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127 (N.D. Cal. 1986) .......... 14

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) .......... 15

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) .......... 21

*Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688 (N.D. Ill. 2004) .......... 15

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v. Countrywide Fin. Corp.*, 984 F. Supp. 2d 1021 (C.D. Cal. 2013) ........ 15

*Daubert v. Merrell Dow Pharma.*, 509 U.S. 579 (1993) ........ 7, 13, 21

*Disney Enters., Inc. v. VidAngel Inc.*, No. CV 16-04109-AB, 2017 WL 6820015 (C.D. Cal. Sept. 13, 2017) *appeal docketed* on other grounds, No. 20-55352 (9th Cir. Apr. 1, 2020) ........ 10

*DropzoneMS, LLC v. Cockayne*, No. 3:16-cv-02348-YY, 2019 WL 7630788 (D. Ore. Sept. 12, 2019) ........ 2, 17

*Dun & Bradstreet Software v. Grace Consulting, Inc.*, 307 F.3d 197 (3rd Cir. 2002) ........ 18

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, CV 14-02496-BRO (Ex), 2015 WL 12655556 (C.D. Cal. Oct. 1, 2015) ........ 20

*F.T.C. v. Neovi, Inc.*, No. 06-CV-1952 JLS, 2011 WL 1465590 (S.D. Cal. Apr. 18, 2011) ........ 7

*Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277 (3d Cir. 1991) ........ 20

*Goldman v. Healthcare Mgmt. Sys., Inc.*, 628 F. Supp. 2d 748 (W.D. Mich. 2008) ........ 14

*Home Pro Const. Co. v. Hoelscher Weatherstrip Mfg. Co.*, No. CIV.A. H-11-4440, 2013 WL 6491189 (S.D. Tex. Dec. 10, 2013) ........ 15

*Hubbard/Downing, Inc. v. Kevin Heath Enterprises*, No. 1:10-CV-1131-WSD, 2013 WL 12239523 (N.D. Ga. May 30, 2013) ........ 10

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) ........ 13

*Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) ........ 18, 19

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ........ 20, 21

*Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-CV-04405-HSG, 2020 WL 2301213 (N.D. Cal. May 8, 2020) ........ 11, 19

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ....................................................................................7

*Psihoyos v. Liberation, Inc.*,
No. 96 CIV. 3609(LMM), 1997 WL 218468 (S.D.N.Y. Apr. 30, 1997) ...............................20

*Smith v. Jackson*,
84 F.3d 1213 (9th Cir. 1996) ....................................................................................13

*Tangorre v. Mako's, Inc.*,
No. 01Civ.4430(BSJ)(DF), 2003 WL 470577 (S.D.N.Y. Jan. 6, 2003)...............................20

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ....................................................................9

*TiVo, Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) .............................................................................. 1, 10

*Trustees of S. Cal. IBEW-NECA Pension Plan v. Bypass Trust Under the 2010 Steelman Inter Vivos Trust*,
No. SACV 17-2078 JVS(AGRx), 2019 WL 3295651 (C.D. Cal. Apr. 8, 2019) .....................7

*U.S. for Use and Benefit of Bergelectric Corp. v. Sauer, Inc.*,
No. 5:18-cv-00612-EJD, 2020 WL 470273 (N.D. Cal. Jan. 29, 2020) ...................................7

*United States v. Am. Soc'y of Composers, Authors & Publishers*,
627 F.3d 64 (2d Cir. 2010) ........................................................................................21

*United States v. Flores*,
901 F.3d 1150 (9th Cir. 2018) ....................................................................................7

*Wihtol v. Wells*,
231 F.2d 550 (7th Cir. 1956) ......................................................................................9

*Yesh Music, LLC v. Amazon.com, Inc.*,
249 F. Supp. 3d 645, 660 (E.D.N.Y. 2017) .................................................................21

**Statutes**

17 U.S.C. § 101 .......................................................................................................17

17 U.S.C. § 106 .......................................................................................................20

17 U.S.C. § 502 .......................................................................................................12

**Other Authorities**

Federal Rule of Evidence 402 ......................................................................................1

Federal Rule of Evidence 702 ..........................................................................1, 2, 7, 12

vi

ORACLE'S OPPOSITION TO RIMINI'S MOTION TO EXCLUDE

## I. INTRODUCTION

Rimini's motion to exclude (ECF No. 1392, "MTE") the declaration and opinions of Oracle expert Barbara A. Frederiksen-Cross is baseless and a waste of the Court's time. This Court has relied on expert forensic analysis of software code throughout this case, and Ms. Frederiksen-Cross performed much of that key analysis. She is a highly qualified expert, and Rimini does not contend otherwise. Ms. Frederiksen-Cross's factual recitations are sound, and her opinions are relevant, reliable, and grounded in copyright (not patent) law. Her declaration and opinions will assist the Court in evaluating Rimini's ongoing infringement in the post-Injunction period.

Ms. Frederiksen-Cross's declaration and opinions easily meet the Rule 402 relevancy standard. She performed a technical analysis of Rimini code and Oracle code in the post-Injunction period to identify copying, cross-use, distribution, and derivative works created in violation of the Injunction. That analysis is unquestionably relevant here. Rimini's purported relevancy argument is just another attack on the scope of this Court's Injunction, repeating arguments that this Court and the Ninth Circuit have rejected at least seven times. And Rimini's contention that Ms. Frederiksen-Cross's declaration and opinions are irrelevant because she purportedly ignored the "more than colorably different" standard set forth in *TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011), is simply wrong. *TiVo* is a patent law case that does not apply to copyright cases. Neither Rimini nor Oracle has identified a single case in which court has applied *TiVo* to a copyright injunction. Courts also do not exclude expert opinions as irrelevant for declining to consider inapplicable legal standards. Plus, out of an abundance of caution, Ms. Frederiksen-Cross *did* analyze whether Rimini's post-Injunction code is colorably different than Oracle's code; it isn't.

Ms. Frederiksen-Cross's declaration and opinions also are reliable under Rule 702. She performed a thorough technical analysis of the Rimini code and Oracle code at issue, using a range of appropriate analytic techniques. Rimini obviously does not like her conclusions, but that does not render them unreliable. To argue for exclusion, Rimini manufactures methodological requirements that do not exist and applies an impermissibly narrow definition of a "derivative

work." Rimini also argues that Ms. Frederiksen-Cross's opinions were excluded on the same grounds urged here in *DropzoneMS, LLC v. Cockayne*, No. 3:16-cv-02348-YY, 2019 WL 7630788, at *5 (D. Ore. Sept. 12, 2019), but that is a misrepresentation. The *DropzoneMS* ruling did not turn on the reliability of Ms. Frederiksen-Cross's opinions. Quite the contrary. The *DropzoneMS* court excluded her testimony because retaining counsel proffered her expert opinions six months after the close of expert discovery. Here, Ms. Frederiksen-Cross's opinions were timely submitted, are reliable, and meet the Rule 702 standard.

Ms. Frederiksen-Cross's analysis and opinions evidence Rimini's ongoing infringement. Even with the limited scope of discovery in these post-Injunction proceedings,[1] she identified numerous examples of infringement. Her technical analysis addressed each of the types of infringement raised in Rimini's motion to exclude—copying, derivative works, distribution—and she found evidence of each (and of cross-use) in the post-Injunction period. This Court should deny Rimini's motion to exclude.

## II. FACTUAL BACKGROUND

Ms. Frederiksen-Cross is an expert in software copyright, software development, and computer forensics, with specific experience in "the analysis of software development projects" and "forensic analysis." ECF No. 1365-1, Declaration of B. Frederiksen-Cross ("BFC Decl.") ¶¶ 2–4. Ms. Frederiksen-Cross has over 40 years of experience in the software industry, and courts have admitted her as an expert at least 25 times. She submitted five expert reports in this case and in *Rimini II,* as well as declarations. Rimini does not challenge her credentials or expertise.

Almost two years ago, this Court enjoined Rimini from continuing to infringe Oracle's copyrighted software code (the "Injunction"). But Rimini has not stopped. On July 10, 2020, Oracle filed its pending Motion to Show Cause Why Rimini Street, Inc. Should Not Be Held In Contempt, and submitted Ms. Frederiksen-Cross's declaration and opinions in support.

---

[1] *See* ECF No. 1232, Post-Injunction Discovery Scheduling Order (permitting ten Requests for Production, ten Requests for Admission, five Interrogatories, five third party subpoenas, and one 30(b)(6) deposition); ECF No. 1255, Order re Motion to Compel Custodial Production (limiting custodial productions to 10 custodians and 120 search terms).

**A. Ms. Frederiksen-Cross Analyzed Rimini's Copying And Cross-Use**

Ms. Frederiksen-Cross conducted a thorough technical analysis of Rimini's post-Injunction support processes. She reviewed, *inter alia*, the following sources:

- The records from Rimini's Automated Framework ("AFW") software tools, including the TransferFiles tool, which allows Rimini to copy and distribute individual files from Rimini's systems to its customers;
- Rimini's development tracking system ("Jira"), and associated records and metrics;
- Rimini's testing system ("Spira") and Rimini's records documenting its testing updates for Oracle software in customer environments;
- Documents produced from Rimini's shared network drives; and
- Software updates provided to certain Rimini customers.

ECF No. 1326, Opening Report ¶ 30.

Ms. Frederiksen-Cross located Rimini files in the above sources and analyzed those files using reliable techniques, including:

- Identifying matching Oracle and Rimini files by percentage of similar code, side-by-side comparisons, and visual inspection (*e.g.,* ECF No. 1333-1, Opening Report ¶ 189; *see also* BFC Dec. ¶¶ 77–78);
- Identifying blocks of Oracle protected expression and substantial similarity (*e.g.,* ECF No. 1333-1, Opening Report ¶¶ 189–190, 192); and
- Identifying non-functional idiosyncrasies in copied code that are expressive and have no programming rationale (*e.g.*, *id.* ¶¶ 191, 193).

Through this analysis, Ms. Frederiksen-Cross identified a range of ongoing copying conduct in the post-Injunction period.

**1. Environment Copying**

Ms. Frederiksen-Cross found that in the process of developing, testing, and distributing software updates, Rimini regularly creates RAM copies of Oracle software in one customer's environment for the benefit of other customers. She explained that "each time Rimini uses the PeopleSoft, JD Edwards, or Oracle Database software, this use results in the creation of copies of

Oracle protected software in the computer's Random Access Memory ('RAM')" and that these "in-memory copies are necessarily created when software is used." BFC Decl. ¶ 34. Ms. Frederiksen-Cross also found that Rimini engages in this copying conduct with Windstream–hosted PeopleSoft software environments, *i.e.*, that Rimini creates copies of Oracle software outside of the licensee's own computer systems. *Id.* ¶¶ 72–76.

Rimini does not dispute that it creates these copies of environments.

**2. Copying Of Oracle Files On Rimini Servers**

Ms. Frederiksen-Cross found that Rimini maintains copies of Oracle files on Rimini's own computer systems. She opined that certain files stored on [redacted], or emailed between [redacted], include information copied directly from Oracle source code or documentation, sometimes copied wholesale without any apparent modification. BFC Decl. ¶¶ 79–82. Some of the files she identified even contained Oracle copyright notices. BFC Decl. ¶¶ 79, 82. Rimini [redacted] at least [redacted] from various [redacted] in the post-Injunction time-period. Polito Decl. ¶¶ 4–5, Exs. 2 and 3.

**3. Literal Copying And Substantial Similarity**

Ms. Frederiksen-Cross found that Rimini made literal copies of Oracle code. For example, she compared the "Rimini file" [redacted] to the Oracle file [redacted] She found that 32% of the lines in the "Rimini file" [redacted] were copied from the Oracle file [redacted] BFC Decl. ¶ 77. Ms. Frederiksen-Cross performed a "complete side-by-side comparison of these files" and highlighted "content in the Rimini file matching the Oracle file" that shows "***substantial similarities between these files and protected expression copied from the Oracle file*** to the RS-prefixed file." *Id.* (emphasis added); *see also* ECF No. 1369-1 (excerpted version of the side-by-side comparison). Continuing her analytic dissection, she considered and analyzed other elements, such as the functional purpose of the code, and found that Rimini copied elements with no functional purpose, including the [redacted] [redacted] [as shown on page 29 in Exhibit 1 @ Rimini line [redacted] and in the middle of [redacted] [as shown on page 6 in Exhibit 1 @ Rimini line [redacted] where '□' indicates a blank space." BFC Decl. ¶ 78.

Ms. Frederiksen-Cross also documented Rimini taking screenshots of a customer's Oracle software as it is running and copying the display of that software onto Rimini systems. BFC Decl. ¶¶ 56–65. She identified instances where Rimini reproduced "numerous non-functional visual elements" of Oracle's copyrighted screen displays, including "the selection of color, shape, size and shading of the buttons, drop down menus, and banner text." BFC Opp. Decl. ¶ 13, Ex. 6, Surrebuttal Report ¶ 17. Ms. Frederiksen-Cross opined that "[t]he design, creation, selection and arrangement of these features are non-trivial portions of protected expression that Rimini has copied wholesale via these screenshots." *Id.*

**B. <u>Ms. Frederiksen-Cross Analyzed Rimini's Creation Of Derivative Works</u>**

Ms. Frederiksen-Cross examined Rimini files to determine whether those files constitute derivative works. BFC Decl. ¶ 84. For example, she analyzed Rimini's Dev Instructions, which are files that Rimini uses to [REDACTED] She identified several Dev Instructions containing Oracle code and others containing [REDACTED] *Id.* ¶¶ 86–87. Based on these discoveries, Ms. Frederiksen-Cross opined that Rimini engineers writing the Dev Instruction are [REDACTED] *Id.* ¶ 86. She further opined that "Dev Instructions are, at a minimum, [REDACTED] *Id.* Ms. Frederiksen-Cross also explains that Dev Instructions are derivative works if they "contain either source code or sufficiently detailed pseudocode that modifies or extends existing Oracle software." *Id.* Ms. Frederiksen-Cross's forensic analysis of Rimini's files led her to conclude that Rimini creates derivative works based upon PeopleSoft software by creating updates that "extend the features and functionality of the existing PeopleSoft software, rely for their operation on the underlying PeopleSoft architectural framework, and do not operate independently from the PeopleSoft components upon which they rely." *Id.* ¶ 84.

**C. <u>Ms. Frederiksen-Cross Analyzed Rimini's Distribution</u>**

Ms. Frederiksen-Cross examined records in Rimini's AFW database and Jira system to analyze Rimini's transmission of files to its customers. The reviewed transmission records show,

*inter alia*, the filename, recipient, and transfer date. BFC Decl. ¶¶ 42–48. Ms. Frederiksen-Cross explained that "Rimini used the TransferFile feature of AFW throughout the Post-Injunction Period, copying files from Rimini computer systems to its [clients'] computer systems [REDACTED] times." *Id.* ¶¶ 108, 45. Through her forensic analysis, Ms. Frederiksen-Cross determined that Rimini transmits software updates that are developed and tested on an environment associated with one customer to multiple other customers. For example, she determined that Rimini sent the HCM200640 software update to [REDACTED] customers, and Rimini sent the HCM200105 software update to [REDACTED] Rimini customers over a [REDACTED] the update initially deployed. *Id.* ¶¶ 45–48. She also analyzed deposition transcripts, exhibits, and Rimini and third party productions, including emails, to identify other types of transmissions. Through her investigation, she discovered that Rimini emails updates to customers, transmits updates from Windstream servers to customer servers, uses a program called ShareFile to send documents to customers, and copies and pastes code. *Id.* ¶ 109–12.

Ms. Frederiksen-Cross's forensic analysis identified [REDACTED] of instances of Rimini transmitting files —including files initially developed for one customer—to [REDACTED] of other customers. Certain of those transmissions constitute distribution in violation of the Injunction.

**D. <u>Rimini's "Knowledge" And "Know-How" Arguments</u>**

Ms. Frederiksen-Cross considered Rimini's "knowledge" and "know-how" arguments in her analysis. She explained that "Rimini's processes encompass much more than reliance on any alleged general knowledge." BFC Opp. Decl. ¶ 13, Ex. 6, Surrebuttal Report ¶ 38. Based on her forensic analysis, Ms. Frederiksen-Cross opined that Rimini's business model involves developing updates for a "prototype" customer and then reproducing that update for other customers, "which permits Rimini to leverage and replicate identical or near-identical work product across multiple customers." *Id.* She also considered Rimini's contention that its Dev Instructions were developed [REDACTED] but, based on her forensic analysis, she rejected that contention. *Id.* ¶¶ 41–42. She also opined that, even if Rimini memorizes and retypes code when replicating an identical update, Rimini is still copying and cross-using Oracle code. *Id.* ¶ 39.

### E. Ms. Frederiksen-Cross's Reports Were Timely Submitted

Ms. Frederiksen-Cross's Opening Report in these contempt proceedings was timely filed, and Rimini never contended otherwise. When Ms. Frederiksen-Cross submitted her Surrebuttal Report and errata to her Opening Report, Rimini moved to strike both as untimely. ECF No. 1351, Jt. Submission at 8. Magistrate Judge Ferenbach rejected Rimini's request, and Rimini did not appeal that ruling. ECF No. 1354, Minute Order.

## III. LEGAL STANDARD

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). "Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." *Id.*

"[T]he trial court may exercise discretion to allow expert testimony if the testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "The inquiry envisioned by Rule 702 is [] a flexible one." *Daubert v. Merrell Dow Pharma.* 509 U.S. 579, 594 (1993).

Where the matter will proceed by bench trial, the "*Daubert* gatekeeping obligation is less pressing" because "there is no risk of tainting the trial by exposing a jury to unreliable evidence." *U.S. for Use and Benefit of Bergelectric Corp. v. Sauer, Inc.*, No. 5:18-cv-00612-EJD, 2020 WL 470273, at *1 (N.D. Cal. Jan. 29, 2020); *see also F.T.C. v. Neovi, Inc.*, No. 06-CV-1952 JLS, 2011 WL 1465590, at *2 (S.D. Cal. Apr. 18, 2011) (reserving admissibility ruling in contempt proceeding until hearing); *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018); *Trustees of S. Cal. IBEW-NECA Pension Plan v. Bypass Trust Under the 2010 Steelman Inter Vivos Trust*, No. SACV 17-2078 JVS(AGRx), 2019 WL 3295651, at *3 (C.D. Cal. Apr. 8, 2019).

## IV. ARGUMENT

### A. Ms. Frederiksen-Cross's Declaration And Opinions Are Relevant

Rimini's relevance arguments are meritless. MTE at 18–24. Rimini does not challenge

the substance of Ms. Frederiksen-Cross's forensic and factual investigation. Rimini does not dispute her findings that Rimini copied PeopleSoft, JDE, and Oracle Database wholesale in development and testing environments. Rimini's motion to exclude should be denied.

**1. Ms. Frederiksen-Cross's Declaration And Opinions Are Relevant To Determining Whether Rimini's Conduct Violates The Injunction**

Rimini argues that Ms. Frederiksen-Cross's declaration and opinions are irrelevant because, in Rimini's view, the Injunction is overbroad and the infringement identified by Ms. Frederiksen-Cross might not violate the hypothetical injunction Rimini wishes were in place. *See* MTE at 21–24. The Ninth Circuit and this Court have rejected Rimini's arguments regarding the Injunction's scope at least seven times, and this Court should do so yet again. ECF No. 1209-3, 2018 Appeal ECF No. 1209-3 at 42–43; ECF No. 1236.

Ms. Frederiksen-Cross's declaration and opinions are relevant and helpful for evaluating whether Rimini is violating the *actual* Injunction. She provides concrete examples of copying and cross-use in the post-Injunction period that fall well within the Injunction's scope. For example, through her forensic analysis, Ms. Frederiksen-Cross determined that Rimini uses a prototype environment containing Oracle software (which is copied into RAM) to develop code and detailed written instructions (such as Dev Instructions) that are then used by other Rimini customers. BFC Decl. ¶¶ 13–36; *see also* BFC Opp. Decl. ¶ 14, Ex. 7, *Rimini II,* June 19, 2018 Supplemental Report ¶¶ 195–205; BFC Opp. Decl. ¶ 12, Ex. 5, Opening Report ¶¶ 83, 98–107; 231–242, 287–289, 316–322, 365–376, 380–381. Rimini's own expert Professor Astrachan admits that RAM copies can violate the Injunction. Polito Decl. ¶ 3, Ex. 1, Astrachan Depo. Tr. at 274:4–276:8.

Furthermore, Ms. Frederiksen-Cross's declaration and opinions explain how Rimini's post-Injunction conduct is rooted in the copying and cross-use that caused this Court to enjoin Rimini from further infringement. For example, drawing on her forensic analysis, she explains the relationship between Rimini's automated AFW systems and Rimini's prior acts of copying. *See, e.g.,* BFC Decl. ¶¶ 39, 45–48. She also explains how Rimini's cloud hosting violates the Injunction, opining that "cloud-hosted services…cannot be considered the customers' 'own

computer systems' because the customers do not own the hardware" and "Rimini—not the customer—exercises primary if not exclusive control over these environments as a condition for support from Rimini." BFC Opp. Decl. ¶13, Ex. 6, Surrebuttal Report ¶ 52. Ms. Frederiksen-Cross's opinions are plainly relevant.

**2. Rimini's Claim That Ms. Frederiksen-Cross's View Of Cross-Use Would Prevent Engineers From Using Their "Knowledge" Does Not Render Ms. Frederiksen-Cross's Opinions Irrelevant**

Rimini argues that Ms. Frederiksen-Cross's opinions are irrelevant on the grounds that, under her purportedly "novel theory of cross-use," an engineer would be prevented from relying on "knowledge" gained while performing an update for one customer when subsequently performing updates for other customers. MTE at 23. Rimini made a similar argument regarding its "know-how" in *Rimini II*. ECF No. 927, Rimini's Mot. for Partial Summ. J. Simply put, there is neither a "knowledge" nor a "know-how" defense to copyright infringement.

Rimini does not cite any authority to support its argument that if it is relying on "knowledge" gained from working on one customer's update, it can replicate that update for other customers. Oracle is not aware of any such authority. Copying and cross-use are infringement, whether Rimini's engineers are staring at the code at the moment they copy it or not. *See Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1140 (E.D. Cal. 1999) ("there is no doubt that 'copying' would include using the copyright protected expression as a model or a template for one's own work even if done from memory as opposed to actual or electronic tracing"); *Wihtol v. Wells*, 231 F.2d 550, 552–53 (7th Cir. 1956) (copying can be from memory); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482–83 (9th Cir. 2000) (subconscious copying of song from memory does not excuse infringement), overruled on other grounds by *Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). Even Rimini's expert Professor Astrachan concedes that [REDACTED] Polito Decl. ¶ 6, Ex. 4, *Rimini II*, Astrachan Depo. Tr. at 127:13–128:4.

In its opposition to Oracle's pending Motion to Show Cause, Rimini admits that it [REDACTED]. ECF No. 1382,

Rimini's Opp. to Oracle's Mot. for Order to Show Cause ("OSC Opp.") at 6. As Ms. Frederiksen-Cross explained: "Dev Instructions include much more than ['knowledge and know-how']…they contain specific instructions for how to replicate the exact same updates in retrofit/Kanban customers that were developed in the prototype/Scrum customers environments." OSC Mot. at 12, 15-16; BFC Opp. Decl. ¶ 12, Ex. 6, Surrebuttal Report ¶¶ 41–42. Rimini also admits that its engineers "view" Oracle software "in the process of creating a Dev Instruction" because "it would be impossible to support Oracle software without viewing parts of the software itself . . . ." ECF No. 1297, Rimini's Opp. to Mot. to Compel at 22:17–20. This admitted copying and cross-use are at the heart of enjoined conduct, and Ms. Frederiksen-Cross's opinions regarding Rimini's copying and cross-use are highly relevant here.

**3. The *TiVo* Standard Is Inapplicable**

Rimini argues that Ms. Frederiksen-Cross's declaration and opinions are irrelevant because they purportedly fail to address the "colorably different" standard discussed in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011). As discussed in Oracle's concurrently-filed OSC Reply and Opposition to Motion for Jury Trial, *TiVo* is a patent law case and inapplicable to this copyright action. *See Disney Enters., Inc. v. VidAngel Inc.*, No. CV 16-04109-AB (PLAx), 2017 WL 6820015, at *2–3 (C.D. Cal. Sept. 13, 2017) *appeal docketed on other grounds*, No. 20-55352 (9th Cir. Apr. 1, 2020). (rejecting attempt to apply the "colorably different" standard to the copyright context); *Hubbard/Downing, Inc. v. Kevin Heath Enterprises*, No. 1:10-CV-1131-WSD, 2013 WL 12239523, at *4 (N.D. Ga. May 30, 2013) (refusing to apply *TiVo* despite appearance of term "colorably different" in a settlement agreement).

**4. Ms. Frederiksen-Cross Compared Purported Processes 1.0 And 2.0**

Even if *TiVo* applied here (and it does not), Ms. Frederiksen-Cross did compare Rimini's "2.0" process to the adjudicated processes. Based on her forensic analysis, Ms. Frederiksen-Cross opined that "Rimini's '2.0' processes are substantially similar to what the Court in *Rimini I* found to infringe Oracle's copyrights. In my opinion, Rimini's '2.0' processes fail to cure problematic aspects of those earlier processes, and in fact introduce new methods of cross-use and of creating and distributing derivative works." BFC Opp. Decl. ¶ 15, Ex. 8, *Rimini II*, June 22,

2018 Rebuttal Report ¶ 19.[2] *See also* BFC Opp. Decl. ¶ 14, Ex. 7, *Rimini II*, June 19, 2018 Supplemental Report ¶¶ 593–594; *see generally id.* ¶¶ 593–602.

For example, Ms. Frederiksen-Cross compared Rimini's [REDACTED] with Rimini's former local-hosting arrangement and concluded that the conduct previously adjudicated as infringement continues in the post-Injunction period. *See, e.g.*, ECF No. 1326, Opening Report ¶¶ 167, 169, 172 (describing Rimini's work to [REDACTED]; *see also* BFC Decl. ¶¶ 74–76 (describing how [REDACTED]).

Drawing further on her forensic analysis, Ms. Frederiksen-Cross opined that the categories of cross-use adjudicated in *Rimini I* still persist today. ECF No. 1326, Opening Report ¶¶ 208–210; ECF No. 1333-1, Opening Report ¶ 211; *see also* BFC Decl. ¶¶ 83–84. Rimini's assertion that Ms. Frederiksen-Cross does not assert that Rimini continues to use generic environments, MTE at 22, is incorrect. On the contrary, she opined that, in the post-Injunction period, Rimini used, *inter alia*, the Oracle software environment associated with Rimini customer [REDACTED] as a generic environment for Rimini's testing of updates destined for other Rimini customers. BFC Decl. ¶¶ 69–71.

Ms. Frederiksen-Cross's analysis shows that Rimini's current processes are not "colorably different" from the processes adjudicated infringing and enjoined in this case. Rimini and Professor Astrachan may disagree with her factual and technical findings, but that is no reason to exclude those findings. *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-CV-04405-HSG, 2020 WL 2301213, at *1–2 (N.D. Cal. May 8, 2020) (denying motion to exclude, noting movant will "have the opportunity to address any outstanding concerns through '[v]igorous cross-examination' and 'presentation of contrary evidence.'"). Ms. Frederiksen-Cross's declaration and opinions are relevant, and this Court should deny Rimini's motion to exclude.

### B. Ms. Frederiksen-Cross's Opinions Are Reliable And Helpful

Rimini's reliability arguments are meritless. MTE at 5–17. Rimini does not challenge

---

[2] Rimini provides no evidence here that it "invested millions of dollars to redesign its systems." MTE at 18.

Ms. Frederiksen-Cross's experience or expertise. Nor does Rimini challenge the factual underpinnings of her opinions or the results of her forensic analysis. In most instances, Rimini does not even challenge Ms. Frederiksen-Cross's substantive opinions. As explained below, Ms. Frederiksen-Cross's methodology for assessing Rimini's copying, preparation of derivative works, and distribution, meet the standards of Rule 702.

**1. Ms. Frederiksen-Cross's Opinions As To Rimini's Copying Are Reliable**

"Analytic dissection" refers to identifying "those elements of a work that are protectable" before comparing the original work to the accused work. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442–43 (9th Cir. 1994). "Abstraction-filtration-comparison" refers to "analyzing [the] nonliteral structure of computer program[s]." *Id.* at 1445 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 706–11 (2d Cir. 1992)). Rimini argues that Ms. Frederiksen-Cross's declaration and opinions are unreliable because she did not employ an "abstraction-filtration-comparison," Rimini's preferred type of "analytic dissection" analysis. MTE at 5–10. Nonsense.

*First,* through her forensic analysis, Ms. Frederiksen-Cross identified direct evidence of copying in violation of the Injunction. Under well-established law, no further analysis was necessary.

*Second*, Ms. Frederiksen-Cross conducted analytic dissection and filtered out non-protected elements.

*Third,* Ms. Frederiksen-Cross's opinions also reliably demonstrate Rimini's continued cross-use.[3]

**a. Rimini Directly Copied Oracle's Code Verbatim**

[3] An injunction may also provide "relief beyond the four corners of the litigated copyrighted works to cover non-litigated items of similar character." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011); 17 U.S.C. § 502(a). Here, Rimini wholesale copied and infringed dozens of registered PeopleSoft works. ECF No. 896 (Jury Verdict). To prevent and restrain similar infringement in the future, the Injunction fairly reaches all copying of PeopleSoft code and support documentation outside of the customer's computer system. Injunction ¶ 5. As Rimini's expert admits, [redacted] Polito Decl. ¶ 3, Ex. 1, Astrachan Depo. Tr. 182:16–17.

Through her forensic analysis, Ms. Frederiksen-Cross found that Rimini copied large swaths of Oracle code and support materials ***verbatim*** into Rimini files on Rimini-internal systems. BFC ¶¶ 77–82. For example, she found that Rimini copied 32% of the lines in the "Rimini file" [REDACTED] from the Oracle file [REDACTED] She also identified examples where Rimini copied certain non-functional elements, like double-spacing around certain words, that were "idiosyncra[tic]" and demonstrated that Rimini had copied directly from Oracle code. BFC Decl. ¶¶ 77–78, Exhibit 1. Ms. Frederiksen-Cross also relied on documentary evidence that Rimini employees shared Oracle documentation via email. OSC Mot. at 21; *see also* BFC Decl. ¶¶ 80–82. Ms. Frederiksen-Cross found that Rimini [REDACTED] *Id.* ¶ 79, Exhibit 2. (Rimini objects that it [REDACTED] OSC Opp. at 26, but fails to disclose that it [REDACTED]. Polito Decl. ¶¶ 4–5, Exs. 2 and 3.) This is direct evidence of copying.

Under blackletter law, analytic dissection is unnecessary to prove copyright infringement where, as here, the infringer has engaged in direct, literal copying. As explained in Nimmer:

> Where there is literal similarity (virtually, though not necessarily, completely word for word) between plaintiff's and defendant's works, … ***it is not necessary to determine the level of abstraction at which similarity ceases to consist of an "expression of ideas," because literal similarity by definition is always a similarity as to the expression of ideas***.

4 Nimmer on Copyright § 13.03[A][2] (2019) (emphasis added); *see also Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (noting substantial similarity analysis is invoked simply "[b]ecause direct evidence of copying is not available in most cases."); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) (same); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2012 WL 13170064, at *3 (N.D. Cal. July 13, 2012) (denying *Daubert* motion and noting "abstraction/filtration/comparison test is not required where the alleged copying is literal code"); *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016) (noting that a plaintiff need not prove substantial similarity or even access when there is "direct evidence of copying")

Rimini and its expert assert that evidence of direct copying cannot establish copyright

infringement. MTE at 1, 5. During his deposition, Professor Astrachan absurdly opined that even if two files were 99% identical, he could not conclude whether copying had occurred unless he performed a nuanced analytic dissection analysis. Polito Decl. ¶ 6, Ex. 4, *Rimini II*, Astrachan Depo Tr. at 252:10–253:12. This is flatly incorrect. Courts routinely rely on direct copying analysis to find infringement. *Brocade Commc'ns Sys., Inc.*, 2012 WL 13170064, at *3 (N.D. Cal. July 13, 2012); *Broderbund Software, Inc. v. Unison World, Inc*., 648 F. Supp. 1127, 1135 (N.D. Cal. 1986) (holding that no substantial similarity analysis was required because "Plaintiffs produced sufficient direct evidence of copying to establish infringement"); *Engenium Sols., Inc. v. Symphonic Techs.*, Inc., 924 F. Supp. 2d 757, 787 (S.D. Tex. 2013) (holding that the abstraction-filtration-comparison framework "makes little sense" in a case alleging infringement of source code); *Goldman v. Healthcare Mgmt. Sys., Inc.*, 628 F. Supp. 2d 748, 753–54 n.4 (W.D. Mich. 2008) (AFC "is not necessary or useful here as the alleged infringement is literal in both senses of the word: literal copying (word for word) and a literal element of the program (source code)."

Ms. Frederiksen-Cross's analysis regarding direct copying is consistent with the Court's directive for OSC briefing in this case. The Court previously ruled that Oracle need not (and in fact could not) submit lengthy code comparisons in its OSC Motion. ECF No. 1349. The Court directed Oracle to submit exhibits that were "evidentiary in nature" and that would "help the court make its ruling on the merits," specifically excluding, *e.g.*, "a 275-page document of source code." *Id.* at 2–3. Ms. Frederiksen-Cross's declaration is consistent with this guidance: for example, instead of putting in an entire code comparison, she included just 11 pages that were more than sufficient to establish literal copying. Ms. Frederiksen-Cross's direct copying analysis is reliable and helpful to the Court.

b. **Ms. Frederiksen-Cross's Analytic Dissection Analysis Is Reliable**

Although Ms. Frederiksen-Cross did not need to perform analytic dissection after

identifying numerous examples of literal copying, she nonetheless did so. Her careful analysis found substantial similarity between Oracle code and Rimini code, and on this basis, she opined that Rimini copied Oracle's protected expression.

Rimini implies that there is "essentially" one analytic dissection test "adopted" by "Circuits around the country"—an "Abstraction-Filtration-Comparison" test. MTE at 6 n.2. On the contrary, experts performing analytic dissection are not required to follow one "formal" methodology. *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 694 (N.D. Ill. 2004); *In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v. Countrywide Fin. Corp.*, 984 F. Supp. 2d 1021, 1036 (C.D. Cal. 2013). Indeed, Rimini's motion endorses a five-element test, but Rimini's own expert endorsed a different eight-element test. MTE at 7–8; Polito Decl. ¶ 6, Ex. 4, *Rimini II*, Astrachan Depo Tr. at 214:20–217:24. Rimini cites no authority requiring either of these tests before an expert can opine on the similarities between two works. The only requirement is that "where two works are found to be similar without regard to the scope of the copyright in the plaintiff's work … the source of the similarity must be identified and a determination made as to whether this source is covered by plaintiff's copyright." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992). Ms. Frederiksen-Cross's analysis meets this standard.

Ms. Frederiksen-Cross analyzed Rimini files and Oracle files side by side, both by percentage and visual inspection, to determine the amount of matching code. She also identified blocks of Oracle protected expression in the corresponding Rimini files, and considered functional code versus code that is expressive and has no programming rationale. *See, e.g.,* BFC Decl. ¶¶ 77–78; ECF No. 1333-1, Opening Report ¶¶ 189–193.[4] This is analytic dissection.

Ms. Frederiksen-Cross found that "idiosyncrasies" without a functional purpose in the Oracle code mirrored in the "Rimini code" as well (*e.g.* comparing Oracle's [REDACTED] file and "Rimini's" [REDACTED] file). BFC Decl. ¶ 78. These "idiosyncrasies" are evidence that

[4] Any concerns regarding the way Ms. Frederiksen-Cross "compared the [Oracle and Rimini files] goes to the weight of [her] testimony, and not its admissibility." *Home Pro Const. Co. v. Hoelscher Weatherstrip Mfg. Co.*, No. CIV.A. H-11-4440, 2013 WL 6491189, at *5 (S.D. Tex. Dec. 10, 2013).

the code Rimini copied is not strictly defined by functional parameters of a programming language, but rather subject to the creative ingenuity of the programmer. Doctrines such as merger and scènes à faire (which Rimini's expert suggests should operate to allow Rimini to copy this code despite the Injunction, ECF No. 1383, Ex. A, Astrachan Rebuttal ¶ 273, fn. 271), would not apply to the code in question, as it could have been written without double-spaces. Ms. Frederiksen-Cross's discovery of these idiosyncrasies demonstrates that her analytic dissection and resulting opinions are reliable.

Rimini also asserts that Ms. Frederiksen-Cross did not perform analytic dissection or opine that the screenshots Rimini copied from Oracle software to Rimini systems are similar to any protectable Oracle expression. MTE at 10–11; OSC Opp. at 22. Not true. She identified many of the protected elements of Oracle's copyrighted screen displays that Rimini reproduced: "the PeopleSoft and JDE user interface elements that Rimini [REDACTED] BFC Opp. Decl. ¶ 13, Ex. 6, Surrebuttal Report ¶ 17 (further noting that the "design, creation, selection and arrangement of these features are non-trivial portions of protected expression that Rimini has copied wholesale via these [REDACTED] *see also* BFC Decl. ¶¶ 56–65.

### c. **Ms. Frederiksen-Cross's Opinions As To Cross-Use Are Reliable.**

Rimini makes wholesale, literal copies of PeopleSoft, JDE, and Oracle Database on Development and Test environments when it develops and tests updates. BFC Decl. ¶¶ 14, 34, 72–76. Rimini does not dispute this point. Key here, Ms. Frederiksen-Cross's forensic analysis demonstrated that Rimini then cross-uses those copies, which violates the Injunction.

Drawing on her forensic analysis, Ms. Frederiksen-Cross connects the dots to show that Rimini loads complete copies of PeopleSoft and JDE software on environments associated with one Rimini customer, which Rimini uses to create and test Dev Instructions and other update files. Rimini then sends those updates via Rimini's AFW program and other means to be rapidly applied to other Rimini customers. *See, e.g.*, BFC Decl. ¶¶ 15, 31, 36, 47–48, 85, 108–13. This

is prohibited cross-use. Additionally, Ms. Frederiksen-Cross identified Rimini's cross-use of Oracle software in testing. *Id.* ¶¶ 52–65. Her opinions as to cross-use are reliable and will be helpful to the Court.

d. ***DropzoneMS* Is Inapposite.**

Rimini wrongly asserts that Ms. Frederiksen-Cross's testimony should be excluded because she made the "exact same error" in *DropzoneMS,* 2019 WL 7630788, at *5. MTE at 1. *DropzoneMS* is inapposite. The *DropzoneMS* court excluded Ms. Frederiksen-Cross's testimony because counsel submitted her expert opinions almost six months after the close of expert discovery, and the court concluded that the plaintiffs could not offer her expert opinions as lay opinion testimony. Here, Ms. Frederiksen-Cross's expert opinions are timely. Additionally, in *DropzoneMS*, the allegedly copied elements included "many third-party and open-source packages" and did not provide direct evidence of copying. *DropzoneMS*, 2019 WL 7630788, at *14. Here, Ms. Frederiksen-Cross's declaration and opinions evidence Rimini's direct copying from Oracle's protected code.

**2. Ms. Frederiksen-Cross's Opinions Regarding Rimini's Derivative Works Are Reliable.**

Rimini argues that Ms. Frederiksen-Cross's opinions regarding derivative works should be excluded because she purportedly applied the wrong legal standard. MTE at 12. In fact, Rimini misstates the applicable legal standard, and Ms. Frederiksen-Cross got it right.

"A 'derivative work' is defined in the Copyright Act as a work 'based upon one or more preexisting works' that 'recast[s], transform[s], or adapt[s]' a preexisting work and 'consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship.'" *ABS Enter., Inc. v. CBS Corp.*, 908 F.3d 405, 414 (9th Cir. 2018) (quoting 17 U.S.C. § 101; alterations in original). The Copyright Act protects derivative works that are literary works even when they contain no literal copying of the text of the underlying work. 17 U.S.C. § 101 (defining a "translation" to be a derivative work). In the Ninth Circuit, derivative works must exist in a concrete or permanent form and "substantially incorporate protected material from the preexisting work." *Micro Star v. Formgen Inc.*, 154 F.3d

1107, 1110 (9th Cir. 1998).

Rimini contends that such substantial incorporation requires the verbatim incorporation of protected expression. The Ninth Circuit rejected this exact argument in controlling precedent in *Micro Star*. The Ninth Circuit rejected Micro Star's argument that its "MAP files are not derivative works because they do not, in fact, incorporate any … protected expression." *Id.* at 1112. The Ninth Circuit held that "[a] copyright owner holds the right to create sequels, and the stories told in [Micro Star's] MAP files are surely sequels, telling new (though somewhat repetitive) tales of [the protagonist's] fabulous adventures." *Id.* (citations omitted). Likewise, as the copyright owner, Oracle holds the right to create sequels, extensions, and new versions of its copyrighted software. Rimini's updates *incorporate* Oracle's protected expression by creating de facto new versions. Rimini's Dev Instructions and other Technical Specifications document the changes to be made to Oracle's software and provide "paint-by-numbers" updates for Oracle software. *Id.* at 1110. Just like the MAP files in *Micro Star*, these updates and instructions would have no use or value without the Oracle software and could not have been developed without Oracle's software. *See also Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 938 (N.D. Cal. 2009) (granting summary judgment based on modification to and extension of the functionality of copyrighted software), *aff'd* 658 F.3d 1150 (9th Cir. 2011); *Dun & Bradstreet Software v. Grace Consulting, Inc.*, 307 F.3d 197, 207–08 (3rd Cir. 2002) (defendant consulting company, who provided maintenance services to the licensees of the plaintiff copyright holder, created an infringing derivative work by copying and modifying a copy of the plaintiff's tax program).

Rimini incorrectly contends that Ms. Frederiksen-Cross applied "her own tests" to identify derivative works. MTE at 12–13. In fact, she followed established authority when analyzing whether Rimini created works that (1) modify and extend PeopleSoft environments or extend the features and functionality of the existing PeopleSoft software, (2) rely for their operation on the underlying PeopleSoft architectural framework, and (3) do not operate independently from the PeopleSoft components upon which they rely. *ABS Enter.,* 908 F.3d at 1122; *Micro Star*, 154 F.3d at 1110–14; *Apple*, 673 F. Supp. at 938. Based on her forensic analysis, she concluded that Rimini created enjoined derivative works. *See, e.g.*, BFC Decl. ¶¶ 84, 86.

Finally, Rimini incorrectly claims that Ms. Frederiksen-Cross's conclusion that certain Dev Instructions are [REDACTED] [REDACTED]" MTE at 14. Rimini must do more than simply [REDACTED] that comply with the Injunction; Rimini's actual conduct must comply. Through her careful forensic analysis, Ms. Frederiksen-Cross identified Oracle code (or specific references to Oracle code that could only be identified while looking at the Oracle code) in certain of Rimini's Dev Instructions. BFC Decl. ¶ 86. These Dev Instructions are derivative works that violate the Injunction. Ms. Frederiksen-Cross's opinions as to derivative works are reliable and should not be excluded.

**3. Ms. Frederiksen-Cross's Opinions Regarding Distribution Are Reliable.**

Rimini does not dispute Ms. Frederiksen-Cross's factual opinions regarding how Rimini transmits Oracle software, documentation, and derivative works. For example, neither Rimini nor Professor Astrachan disputes Ms. Frederiksen-Cross's opinion that Rimini transmitted the HCM200640 software update to [REDACTED] Rimini customers and the HCM200105 software update to [REDACTED] Rimini customers. *See* OSC Motion at 17, 28 (citing BFC Decl. ¶¶ 45–48, 116–119); OSC Opp. at. 29 (citing ECF No. 1383, Ex. A, Astrachan Rebuttal ¶¶ 316–318).

Instead, Rimini argues that Ms. Frederiksen-Cross's opinion regarding distribution are unreliable because she allegedly omitted the specific legal standard for distribution from her declaration. But under well-established authority, she was not required to do so. *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-CV-04405-HSG, 2020 WL 2301213, at *1–2 (N.D. Cal. May 8, 2020) (denying motion to exclude where movant claimed expert did not articulate the correct legal standard at deposition, noting such knowledge was not "a necessary component of the technical experts' analysis") (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court.")); *Baker v. SeaWorld Entm't, Inc.*, 423 F. Supp. 3d 878, 898–99 (S.D. Cal. 2019) (rejecting motion to exclude, concluding expert opinion did not rest on an erroneous legal standard where expert used the economic definition of a term instead of the legal

definition). Ms. Frederiksen-Cross's role in this proceeding is to show the Court what Rimini actually did, and counsel can then argue about whether or not those actions satisfy the legal standard for distribution (and they do).

Furthermore, Rimini asserts the wrong legal definition for "distributed." MTE at 15–16. The Injunction states that Rimini shall not "distribute" Oracle software or documentation. ECF No. 1166 ¶¶ 2, 3, 7. The Copyright Act does not define "distribute," but Section 106(3) grants to "the owner of copyright ... the exclusive rights to ... distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). Contrary to Rimini's assertion that "[p]rovisions of a work to single entities, and private dissemination are not distributions 'to the public,'" MTE at 16, "even one person can be the public" under Section 106(3). *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 300 (3d Cir. 1991); *Flexible Lifeline Sys., Inc. Precision Lift, Inc.*, CV 10-44-H-DWM, 2011 WL 13133925, at *4 (D. Mont. Sept. 13, 2011) ("Distribution to one person is considered to be distribution to the public.") (citing *id.*); *Psihoyos v. Liberation, Inc.*, No. 96 CIV. 3609(LMM), 1997 WL 218468, at *2 (S.D.N.Y. Apr. 30, 1997) ("Congress intended this right [§ 106(3)] to include distribution to the public 'whether by sale, gift, loan, or some rental or lease arrangement.'"); *Tangorre v. Mako's, Inc.*, No. 01Civ.4430(BSJ)(DF), 2003 WL 470577, at *10 (S.D.N.Y. Jan. 6, 2003) (permitting customers to take copies of calendar without authorization from copyright holder "fairly characterized as unauthorized distribution"). Making files available is also sufficient to violate the distribution right. *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, CV 14-02496-BRO (Ex), 2015 WL 12655556, at *13 (C.D. Cal. Oct. 1, 2015); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) ("users who upload file names to the search index for others to copy violate plaintiffs' distribution rights.").

The Supreme Court has explained that reproducing "personal copies" of a work to provide to multiple, individual recipients, and then sending each recipient its own "personal copy" is transmission "to the public." *American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 446, 448–49 (2014). Because Rimini selects, reproduces, modifies, and distributes the relevant files, Rimini is the direct infringer, and the "volitional conduct" exception to certain

copyright infringement claims does not apply. *Compare Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 667 (9th Cir. 2017) (explaining that application of *Aereo* requires volitional conduct by the infringer) *with* OSC Motion at 7–11, 16–17, 27–28; BFC Decl. ¶¶ 37–48; 108–119 (demonstrating Rimini's volitional conduct). The works Rimini distributes are not being "returned" to customers who already "own" or "possess" them, so the "re-obtaining one's own copy" carve-out to *Aereo*'s holding does not apply. *See Aereo*, 573 U.S. at 448–449. Rimini is distributing new or modified works that its customers do not already have.[5] Additionally, Ms. Frederiksen-Cross's declaration reliably describes how Rimini reuses and redistributes updates and test cases for new Rimini customers, like HCM200105, long after their initial deployment. BFC Decl. ¶¶ 116–119; see also OSC Motion at 28.

The pre-*Aereo* Second Circuit cases Rimini cites, *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 139 (2d Cir. 2008) and *United States v. Am. Soc'y of Composers, Authors & Publishers*, 627 F.3d 64, 75 (2d Cir. 2010), do not apply. In *Cartoon Network*, individual customers, not defendant Cablevision, created the copies of the works at issue (recordings of television shows) on Cablevision's servers for the customer's individual use. Accordingly, Cablevision's transmission of an individual customer-created copy back to that individual customer was not a transmission "to the public" under the "volitional conduct" exception. 536 F.3d at 134–40; *Perfect 10*, 847 F.3d at 667 (distinguishing an entity that "merely supplies equipment that allows others" to copy copyrighted works from entities that are more active participants). *Am. Soc'y of Composers* is likewise inapposite. In *Am. Soc'y of Composers,* the Second Circuit held that the download of a "digital file containing a musical work" was not a public performance because (as opposed to streaming) there was no "performance created by the act of transmission." 627 F.3d at 70, 73–75. The public performance right is not at issue here. Rimini, not its customers, creates and distributes the reproductions and modifications. Ms. Frederiksen-Cross's declaration and opinions as to distribution are reliable and should not be excluded.

---

[5] *Yesh Music, LLC v. Amazon.com, Inc.*, 249 F. Supp. 3d 645, 660 (E.D.N.Y. 2017), where the recipients previously owned the files they subsequently received, is inapposite.

## V. CONCLUSION

Rimini seeks to exclude Ms. Frederiksen- Cross not because her opinions are irrelevant, unreliable, unsupported, or unhelpful. Rather, Rimini brings this *Daubert* motion because the evidence regarding Rimini's contempt comes solely from Rimini witnesses and documents, and if Rimini could somehow exclude her testimony, Oracle would have to show contempt solely through hostile Rimini witnesses. This motion to exclude is simply another improper Rimini attempt to skew the forthcoming contempt proceeding in Rimini's favor.

Ms. Frederiksen-Cross's declaration and opinions are reliable and relevant to assist the trier of fact in determining whether Rimini's conduct violates the Injunction. Oracle respectfully requests that the Court deny Rimini's motion.

DATED: August 14, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ John A. Polito
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2020, I electronically transmitted the foregoing ORACLE'S OPPOSITION TO RIMINI'S MOTION TO EXCLUDE to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: August 14, 2020

By: /s/ John A. Polito
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation