# EXHIBIT B

[REDLINE OF CORRECTED VERSION OF ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR JURY TRIAL]

BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:     702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON *(pro hac vice)*
KAREN DUNN *(pro hac vice)*
2001 K Street, NW
Washington, DC 20006
Telephone:     202.223.7300
Facsimile:     202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

BOIES SCHILLER FLEXNER LLP
BEKO O. REBLITZ-RICHARDSON *(pro hac vice)*
SEAN P. RODRIGUEZ *(pro hac vice)*
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone:     415.293.6800
Facsimile:     415.293.6899
srodriguez@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH *(pro hac vice)*
JOHN A. POLITO *(pro hac vice)*
SHARON R. SMITH *(pro hac vice)*
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:     415.442.1000
Facsimile:     415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY *(pro hac vice)*
DEBORAH K. MILLER *(pro hac vice)*
JAMES C. MAROULIS *(pro hac vice)*
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     650.506.4846
Facsimile:     650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle America, Inc., and
Oracle International Corp.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, | Case No. 2:10-cv-0106-LRH-VCF |
| Plaintiffs, | **ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL** |
| v. | |
| RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

        A.      Pre-Trial History and the Origin of "Process 2.0" ................................ 2

        B.      The Trial and Permanent Injunction ..................................................... 4

        C.      Process 2.0 ............................................................................................ 5

        D.      Contempt Discovery .............................................................................. 6

        E.      Undisputed Conduct .............................................................................. 8

III.    LEGAL STANDARD .......................................................................................... 8

IV.     ARGUMENT ....................................................................................................... 9

        A.      Nothing in Oracle's OSC Motion Triggers Criminal Process Rights .................. 9

                1.      Oracle properly seeks compensatory relief (compensatory
                        sanctions, fees, and costs) in this civil contempt proceeding. ................... 9

                        a.      Rimini confuses civil and criminal contempt remedies. .............. 10

                        b.      Rimini suggests the wrong evidentiary standard for
                                compensatory sanctions. ......................................................... 12

                2.      Oracle requests equitable remedies contemplated by the Copyright
                        Act to induce Rimini's compliance (impoundment or escrow). .............. 13

                3.      Oracle will defer its request for a bar order. ..................................... 14

        B.      Rimini Cannot Establish Any Right to a Jury Trial Based on
                "Complexity," Patent Law, or Any Other Doctrines ......................................... 15

                1.      Rimini cannot claim a "complexity" exception. ..................................... 15

                2.      The Federal Circuit's patent-specific "more than colorable
                        differences" test does not apply and is inconsistent with Ninth
                        Circuit and Supreme Court doctrine. ..................................................... 17

                3.      Civil contempt is equitable and therefore no Seventh Amendment
                        right attaches to contempt damages. ..................................................... 19

        C.      "Process 2.0" Changes Nothing ............................................................... 20

D.    There is No Willfulness, Intent, or Good-Faith Defense to Civil Contempt that Would Otherwise Require a Jury ................................................................. 21

V.    CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A&M Records, Inc. v. Napster, Inc.*,
  284 F.3d 1091 (9th Cir. 2002) ........................................................................ 15

*Adobe Sys. Inc. v. Software Tech*,
  No. 5:14-CV-02140-RMW, 2015 WL 6951875 (N.D. Cal. Nov. 10, 2015)........................ 8~~9~~

*Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*,
  721 F.3d 1122 (9th Cir. 2013) ...................................................................... 10~~1, 12~~

*Balla v. Idaho State Bd. of Corr.*,
  869 F.2d 461 (9th Cir. 1989) ........................................................................ 20

*BMG Music v. Gonzalez*,
  430 F.3d 888 (7th Cir. 2005) ........................................................................ 20

*BMG Music v. Perez*,
  952 F.2d 318 (9th Cir. 1991) ......................................................................... 9

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
  814 F.3d 91 (2d Cir. 2016)............................................................................ 9

*Choice Hotels Int'l, Inc. v. Key Hotels of Atmore II*, LLC,
  2017 WL 6945340 (S.D. Ala. Aug. 18, 2017)....................................................... 13

*Crowe v. Smith*,
  151 F.3d 217 (5th Cir. 1998) ........................................................................ 12

*Disney Enterprises, Inc. v. VidAngel Inc.*,
  2017 WL 6820015 (C.D. Cal. Sept. 13, 2017) ................................................. 18, 19

*Donovan v. Mazzola*,

    716 F.2d 1226 (9th Cir. 1983) ........................................................................ 21

*Entral Grp. Int'l, LLC v. Honey Café on 5th, Inc.*,

    2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006) ................................................ 1~~23~~

*F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.*,

    244 F.3d 1128 (9th Cir. 2001) ........................................................................ 10

*F.T.C. v. Kuykendall*,

    371 F.3d 745 (10th Cir. 2004) ........................................................................ 16

*F.T.C. v. Trudeau*,

    579 F.3d 754 (7th Cir. 2009) .......................................................................... 11

*Feltner v. Columbia Pictures Television, Inc.*,

    523 U.S. 340 (1998) ........................................................................................ 20

*Goodyear Tire & Rubber Co. v. Haeger*,

    137 S. Ct. 1178 (2017) .................................................................................... 10

*GoPets Ltd. v. Hise*,

    657 F.3d 1024 (9th Cir. 2011) .................................................................. 19, 20

*Goya Foods, Inc. v. Wallack Mgmt. Co.*,

    344 F.3d 16 (1st Cir. 2003) ............................................................................ 12

*Haeger v. Goodyear Tire & Rubber Co.*,

    813 F.3d 1233 (9th Cir. 2016),

    *reversed in part on other grounds*, 137 S. Ct. 1178 (2017) .......................... 14

*Hart v. Massanari*,

    266 F.3d 1155 (9th Cir. 2001) ........................................................................ 22

*Hicks on Behalf of Feiock v. Feiock*,

    485 U.S. 624 (1988) ................................................................................................ 9

*Hounddog Productions, L.L.C. v. Empire Film Grp., Inc.*,

    826 F. Supp. 2d 619 (S.D.N.Y. 2011) ................................................................. 13

*Hubbard/Downing, Inc. v. Kevin Heath Enterprises*,

    No. 1:10-CV-1131-WSD, 2013 WL 12239523 (N.D. Ga. May 30, 2013) ........... 19

*In re Crystal Palace Gambling Hall, Inc.*,

    817 F.2d 1361 (9th Cir. 1987) ............................................................................. 21

*In re Deed & Note Traders, L.L.C.*,

    2018 WL 1354328 (B.A.P. 9th Cir. Mar. 14, 2018) ............................................ 12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,

    10 F.3d 693 (9th Cir. 1993) ................................................................................. 22

*In re E. W. Const. Co., Inc.*,

    21 F.3d 1112 (9th Cir. 1994) ................................................................................. 8

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,

    774 F.3d 935 (9th Cir. 2014) ............................................................................... 21

*Int'l Union, United Mine Workers of Am. v. Bagwell*,

    512 U.S. 821 (1994) ..................................................................................... passim

*Lasar v. Ford Motor Co.*,

    399 F.3d 1101 (9th Cir. 2005) ..................................................................... 9, 11, 12

*LFP IP, LLC v. Hustler Cincinnati, Inc.*,

    810 F.3d 424 (6th Cir. 2016) ............................................................................... 15

ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL

*McComb v. Jacksonville Paper Co.*,

   336 U.S. 187 (1949) .................................................................................................. 19, 21

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,

   296 F.R.D. 400 (D. Md. 2013) ........................................................................................ 10

*Miller v. City of Los Angeles*,

   661 F.3d 1024 (9th Cir. 2011) ........................................................................................ 12

*Mitchell Int'l, Inc. v. Fraticelli*,

   No. CIV. 03-1031 GAG/BJM, 2007 WL 4197583 (D.P.R. Nov. 26, 2007) ........................ 13

*Nat'l Org. for Women v. Operation Rescue*,

   37 F.3d 646 (D.C. Cir. 1994) .......................................................................................... 12

*NLRB v. Ironworkers Local 433*,

   169 F.3d 1217 (9th Cir. 1999) ........................................................................................ 16

*NLRB v. Local 3, Intern. Broth. of Elec. Workers*,

   471 F.3d 399 (2d Cir. 2006) ............................................................................................ 16

*Parsons v. Ryan*,

   949 F.3d 443 (9th Cir. 2020) ................................................................................. 1, 9, 16

*Sankary v. Ringgold-Lockhart*,

   611 F. App'x 893 (9th Cir. 2015) .................................................................................... 11

*Shillitani v. U.S.*,

   384 U.S. 364 (1966) ......................................................................................................... 8

*Standard Oil Co. of California v. Arizona*,

   738 F.2d 1021 (9th Cir. 1984) ........................................................................................ 20

ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL

*Stone v. City & Cty. of San Francisco*,

   968 F.2d 850 (9th Cir. 1992) *as amended on denial of reh'g* (Aug. 25, 1992) .......... 20, 21, 22

*TiVo, Inc. v. EchoStar Corporation*,

   646 F.3d 869 (Fed. Cir. 2011)........................................................................ 18, 19

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,

   768 F.2d 1001 (9th Cir. 1985) ............................................................................. 15

*Triad Sys. Corp. v. Se. Express Co.*,

   64 F.3d 1330 (9th Cir. 1995) ............................................................................... 15

*United States v. Powers*,

   629 F.2d 619 (9th Cir. 1980) ................................................................................. 8

*Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*,

   2006 WL 2792756 (E.D.N.Y. Sept. 27, 2006) ....................................................... 10

Statutes

17 U.S.C. § 503(a)(1)............................................................................................... 13

17 U.S.C. § 503(b) .................................................................................................. 14

Other Authorities

11A Wright & Miller § 2960 (West 2020) ................................................................. 8

ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL

1

## I.       **INTRODUCTION**

2        Rimini's "Motion for a Jury Trial" (ECF No. 1389, the "Motion") seeks to delay justice

3   with a *re*-trial to a new jury before the Permanent Injunction can be enforced.  The argument

4   boils down to the theory that a defendant can make minor purported changes to its conduct, then

5   avoid contempt by arguing that an injunction (or trial) did not cover today's precise fact pattern.

6   The Supreme Court has consistently rejected such arguments.  And the window dressing Rimini

7   calls "Process 2.0" does not meaningfully differ from the conduct already adjudicated.

8        Rimini should not be permitted to undermine the Court's judgment in this manner.  The

9   Court entered the Injunction after living with this case and its facts for almost a decade.  The

10  Injunction exists to stop Rimini from engaging in improper conduct, and to ensure that Oracle

11  has a vehicle to protect its intellectual property rights in an efficient and speedy manner.  Oracle

12  respectfully requests that the Motion be denied and that the contempt proceedings continue

13  through the well-established civil process.

14       *First*, the Motion mischaracterizes and misapplies the test for whether contempt

15  proceedings are criminal in nature.  The civil-criminal distinction turns on the purpose and type

16  of remedy.  Civil contempt remedies do one of two things:  compensate for loss or coerce future

17  compliance.  Oracle seeks only well-established civil remedies:  compensation, impoundment,

18  and an order ensuring future compliance with the Injunction.  These are not criminal remedies,

19  and the Court has full discretion to award them.

20       *Second*, Rimini incorrectly argues that "complex" contempt requires a full-blown trial.

21  There is no special "complexity" rule, and the Ninth Circuit has explained that complexity

22  concerns do not arise when a court orders traditional "coercive and compensatory relief."  *See*

23  *Parsons v. Ryan*, 949 F.3d 443, 455-56 (9th Cir. 2020).  Further, Rimini's violations of the

24  injunction are not "complex"; rather, the Injunction's prohibitions are clear, and the evidence

25  clearly and convincingly shows that Rimini is violating numerous provisions of the Injunction.

26       *Third*, Rimini's Motion improperly seeks to import a patent-specific test that does not

27  apply in a copyright case.  Here, the Injunction prohibits Rimini from engaging in ***particular***

28  ***conduct***, and the record clearly and convincingly shows that Rimini engaged in those acts.

Although the patent law test is inapplicable, Rimini's conduct would still warrant contempt under the standard it incorrectly urges the Court to adopt. Rimini's supposedly new "process" involves superficial changes to the context in which it commits infringement, but not the conduct. For example, Rimini moved much of its misconduct to "cloud" servers rather than locally hosted systems. Rimini now contends that, by branding a few changes as "Process 2.0," it has created something akin to a new patentable business process or conduct that demands a full retrial. Rimini knows better. Yet, less than two years ago Rimini's lead counsel represented to Magistrate Judge Ferenbach that the contempt issues here should be resolved by motion practice, and he even suggested that discovery would be unnecessary:

> If cloud hosting is in contempt, let's tee that up and decide it as a contempt motion. Why do we need discovery?

(ECF No. 1218 (April 4, 2019 Hearing Tr.) at 31:6-8.)

Moreover, Rimini should not be heard to complain about lack of discovery, lack of expert disclosure, or lack of process. Rimini repeatedly argued for, and obtained, narrow discovery: (a) document production from only ten custodians; (b) a single 30(b)(6) deposition; (c) no Rimini fact witness depositions whatsoever; (d) five customer document subpoenas; and (e) no customer depositions whatsoever. These limits on fact discovery necessitated very limited expert disclosures. Having successfully narrowed discovery, Rimini now seeks to prejudice Oracle by demanding a wide-ranging jury trial.[1]

Rimini's Motion is yet another ploy to delay justice and attempt to escape accountability by re-trying the case it already lost before a new jury. It should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Pre-Trial History and the Origin of "Process 2.0"

Oracle filed this case in January 2010. ECF No. 1. After years of discovery, the Court ruled on two summary judgment motions in 2014. In the first summary judgment order, the Court concluded (among other things) that there was no dispute of material fact that Rimini had

---

[1] For these reasons, Oracle reserves all rights to seek an order barring Rimini from supporting PeopleSoft or J.D. Edwards software, but will not seek such a remedy at the upcoming Court hearing on contempt. *See* ECF No. 1368 ("OSC Motion") at 29.

(i) engaged in "cross-use" (that is, Rimini violated Oracle's exclusive rights by using one customer's licensed software in support of other customers) and (ii) regularly violated the "facilities restrictions" in certain Oracle licenses by creating copies of Oracle software on systems that were not located on the premises of Rimini's customers.  ECF No. 474 at 12-14; ECF No. 1365 at 3-4.  In the second order, in August 2014, the Court ruled that there was no dispute of material fact about even more acts of infringement.  ECF No. 476.  Shortly thereafter, the Court set trial for September 2015.  ECF No. 669 at 5.

At the eleventh hour, Rimini sought to delay trial by asking to introduce what it calls "Process 2.0" as part of its defense.  Just as it does today, Rimini argued that it created a "new" and "improved support process" following the Court's summary judgment rulings.  ECF No. ~~No.~~ 488 (Jt. Stat., Sept. 17, 2014) at 13, 16.  Rimini contended this new "remote" model did not violate the facilities restrictions, and that it no longer involved cross use.  *Id.* at 17-20.  Rimini also argued that Process 2.0 was a minor departure that could be easily handled in the first trial.  *E.g.*, ECF No. 488 (Jt. Stat., Sept. 17, 2014) at 16~~2~~ ("While Rimini's full implementation of the improved non-infringing 'remote service model' occurred after and in response to the Court's February 13, 2014 Opinion, the underlying concept of remote software support is not new and Rimini had the necessary equipment, know-how and experience to implement the non-infringing alternative at the onset of the infringement." ~~*Id.* at 16~~).

Oracle was unwilling to let Rimini's infringement continue by agreeing to reopen discovery regarding a purportedly new process, which would have the effect of delaying trial for years.  Oracle objected that it would need discovery to test Rimini's assertions.  ECF No. 488 (Jt. Statement, Sept. 17, 2014) at 5-6.  Rimini argued that the discovery needed was "limited," would "be complete in a relatively short period of time," and would not unduly delay trial.  *Id.* at 17-20.  Judge Leen agreed that the discovery burden on Oracle, combined with the fact that the case had "been pending for five years," meant Rimini should not be permitted to delay trial with its new contentions.  ECF No. 515 at 2-3.  Rimini did not appeal Judge Leen's ruling.

Less than a week later, Rimini filed a "Declaratory Judgment Action" (*Rimini II*), asserting it did not infringe Oracle's copyrights during the period outside the first trial's scope.

1  *Rimini II*, ECF No. 1 ;  *Rimini II*, ECF No. 7.  Again seeking to delay trial, Rimini moved to

2  consolidate *Rimini I* and *Rimini II*, arguing that it its so-called Process 2.0 could be efficiently

3  tried together with the rest of the case, complaining that its own decision to file *Rimini II* would

4  "waste judicial resources and unnecessarily place the expense of two lawsuits on Rimini" if the

5  Court did not consolidate *Rimini I* and *II*.  ECF No. 554 at 15.  The Court rejected the idea,

6  explaining that "though commonality exists between the two actions," consolidation would "lead

7  to an unreasonable delay of trial, as this case is currently set for trial in September and has been

8  pending on the court's docket since 2010."  ECF No. 669 at 5.[2]

9        **B.        The Trial and Permanent Injunction**

10       The jury trial ran from September 14 to October 13, 2015.  ECF Nos. 774-

11  896.  Throughout that month-long trial, Oracle proved that Rimini's business fundamentally

12  relied on copyright violations such as cross-use and non-local copies.  *E.g.*, Order, ECF No. 1164

13  at 6 (explaining that Rimini's business was "built entirely on its infringement of Oracle's

14  copyrighted software.").  Oracle's trial presentation and evidence showed the various ways

15  Rimini devised to impermissibly copy Oracle's software.

16       The jury agreed, concluding that Rimini had violated Oracle's copyrights and caused

17  tens of millions of dollars of damages.  ECF No. 896 (jury verdict).  Oracle moved the Court for

18  a permanent injunction.  The Court issued Oracle's proposed injunction, reasoning that it was

19  appropriate in light of "Rimini's egregious and continued infringement" and "callous disregard

20  for Oracle's copyrights and computer systems[.]"  Order, ECF No. 1049 at 5–6.

21       Rimini protested; it opposed; it appealed; and it moved to stay enforcement several times.

22  ECF No. 1333 (Oracle's Opp. to "Motion to Enforce Judgment") at 1-6 (recounting the history).

23  Then, as now, Rimini's primary objection was that the Injunction's scope was greater than the

24  scope of the first case and could apply to Rimini's "2.0 Process."  *Compare id.*, *with* Mot. at 3,

25  17-18.

26

27  _____

[2] Oracle subsequently asserted counterclaims, significantly expanding the scope of *Rimini II*.

28  *Rimini II*, ECF No. 399.

1

### C.    Process 2.0

2    Rimini has repeatedly acknowledged that its "2.0" processes needed to change to satisfy

3    the Injunction.  *See, e.g.*, ECF No. 1079 at 1 ("even though Rimini's *current* processes have

4    never been adjudged infringing . . . Rimini will be forced to *further* modify those processes in a

5    good-faith attempt to comply with the vague and overbroad order of injunction"); ECF No. 905

6    at 16 (injunction "threatens to bar Rimini's current conduct"), 19 (injunction enacts a "sweeping

7    prohibition against conduct . . . confined to *Rimini II*"), 21–22 (recognizing injunction limits

8    copies to client's facilities, prohibiting Rimini's use of cloud-based computing), 23 (interpreting

9    the injunction's "prohibitions on Rimini's use of Oracle software licensed to one customer in a

10   manner that would 'benefit any other licensee'" as "an effort to restrict the very processes"

11   underlying Process 2.0).

12   These are not just lawyers' assertions.  Rimini's employees submitted declarations

13   acknowledging that Process 2.0 was not consistent with the Injunction:

14   
15   
16   
17   
18   
> [The] permanent injunction . . . would require Rimini to further modify its
> support processes for Oracle products.  Rimini is examining its current
> processes . . . and has identified a series of additional modifications that, it
> believes, would bring its current processes into compliance with the
> constraints imposed by the injunction. . . .  For example, certain processes
> that are now automated can be done manually, requiring Rimini to pay
> additional labor costs to accomplish the manual processes."

19   ECF No. 1079-1, Slepko Decl. ¶ 4; *id.* at ¶ 5 ("I estimate that it would cost Rimini at least $1

20   million and up to $4 million per year to implement the anticipated modifications. These costs

21   would be incurred solely as part of Rimini's good-faith effort to ensure compliance with the

22   injunction, and Rimini would not incur these costs in the absence of the injunction.").

23   In light of Rimini's repeated representations that its Process 2.0 would need to be

24   modified to comply with the Injunction, Oracle sought Injunction-compliance discovery.  In

25   response, Rimini stalled again, arguing that no such discovery was warranted because the already

26   developed factual record was sufficient for ***this Court*** to rule ***via motion practice*** whether

27   contempt was warranted:

28

1

> If cloud hosting is in contempt, let's tee that up and decide it as a contempt
> motion. Why do we need discovery?

2   ECF No. 1218 (April 4, 2019 Hearing Tr.) at 31:6-8.  This was not an off-the-cuff remark.  It

3   was Rimini's emphatic position:

4

> [MR. PERRY:]  The important point for today, though, is ***Oracle cannot***

5   > come to the Court, we submit, and ***say that*** [it is entitled to discovery]
> ***because we are hosting on the cloud*** – ***they don't even need any***

6   > ***discovery. They know all that.***  They have the contracts, they
> have the relationships

7

8   > THE COURT: But they don't know since November of '18.

9   > MR. PERRY: Well, your Honor, if they really think that's a violation, ***they***
> ***could have moved for contempt based on the evidence that they have,***

10  > ***and, again, this is not a disputed point***.

11  *Id.* at 29:24-30:9.

12  ### D.   Contempt Discovery

13  After failing in its attempts to deny Oracle all Injunction-compliance discovery, Rimini

14  then sought to limit this discovery as much as possible.  Before contempt discovery started,

15  Rimini successfully argued that it needed a bill of particulars regarding the conduct Oracle

16  believed <u>was</u> contumacious.  Before discovery began, Oracle was ordered to

17

> "serve Rimini with a list describing conduct disclosed in Rimini II
> (including cross-use and cloud hosting) which Oracle contends would

18  > violate Judge Hicks' injunction if it continued after the injunction was
> effective. The list may contain no more than five separate and distinct

19  > examples. Each item on the list must be described in not more than three
> sentences. Each description must state precisely and unambiguously each

20  > separate process, practice or other conduct Oracle claims violated Judge

21  > Hicks' injunction."

22  ECF No. 1232 at 2.  Contempt discovery was limited to "claims and defenses" of the conduct in

23  Oracle's 15-sentence list.  *Id.* at 1.  Oracle served the list on June 28, 2019.  ECF No. 1348-2.

24  Next, Rimini had also argued for, and obtained, severe limits on evidence Oracle could

25  obtain in this proceeding.  The Court and the parties are well aware of the extensive discovery

26  necessary to conduct a jury trial regarding Rimini's conduct.  A<u>s</u>t the chart below shows, in these

27  contempt proceeding<u>s</u> Oracle has received only a small fraction of the discovery it received in

28  connection with the *Rimini I* trial or the *Rimini II* case:

ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL

|  | **Rimini I** (ECF Nos. 109, 118, 142, 163) | **Rimini II** (ECF Nos. 48, 94, 364, 372, 384) | **Rimini I Post-Injunction** (ECF No. 1232) |
|---|---|---|---|
| RFPs | Unlimited Oracle served 98 Rimini served 57 | Unlimited Oracle served 272 Rimini served 346 | 10 |
| Custodians | 54 | 50 | 10 |
| RFAs | 250 | 175 | 10 |
| Interrogatories | 40 | 35 | 5 |
| Experts | 5 (total) | 5 (total) | 3 (total) |
| Depositions (party) | 25 | 25 | 1 |
| Depositions (non-party) | 20 | 35 | 5 subpoenas for document production or testimony |
| Third-party subpoenas for document production | Unlimited | Unlimited | |

Rimini's attempts to limit discovery continued.  At one point, Rimini asserted that it would only produce 30,000 documents in response to Oracle's RFPs, even if the number of responsive documents exceeded 30,000 (which it did).  ECF No. 1311 at 3.  Rimini provided no explanation as to how it would select the responsive documents it chose to produce from the responsive documents it would refuse to produce.  Oracle moved to compel; Rimini lost; and Rimini claims it ultimately produced "many hundreds of thousands" of responsive documents.  Mot. at 12.

After fact discovery closed, Rimini then turned its attention to limiting or delaying these proceedings.  Rimini sought to limit expert disclosures.  Rimini opposed Oracle's request to submit additional exhibits in its Order To Show Cause, and Rimini opposed Oracle's request to extend the page limit in its Order To Show Cause briefing.[3]  Rimini then insisted that contempt proceedings could not proceed until expert depositions were conducted in person, but Rimini stated that it was unsafe to conduct in-person depositions because attorneys would need to fly across country during the current pandemic.  Ultimately, the parties proceeded with video

---

[3] By submitting a "Motion to Enforce the Court's Orders," a *Daubert* motion directed at Oracle's sole expert, and this Motion for a Jury Trial, Rimini has essentially provided itself with additional briefing in opposition to Oracle's Order To Show Cause, after arguing that the Order To Show Cause must be resolved in a single, normal-length motion.

ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL

1    depositions, which Rimini attorneys flew across country to attend in person.

2        All of these limitations – on discovery, on briefing, on exhibits – were based on the

3    premise that these proceedings should be streamlined, and would be presented to the Court, not a

4    jury, consistent with established equitable practice. Now, however, in an about-face, Rimini

5    demands an extensive evidentiary record. Rimini wants to re-try this action in a wide-ranging

6    jury trial, where Rimini can "present every available defense" it can imagine and call witnesses

7    "of its own choosing." Mot. 6. Rimini would like to defend itself from contempt by presenting

8    evidence Oracle did not receive in discovery, and by calling witnesses Oracle was not permitted

9    to depose. Likely recognizing that it could not prevail even in such a one-sided proceeding,

10   Rimini requests that this Court change the burden of proof to the "beyond a reasonable doubt"

11   standard. *Id.*

12       E.    **Undisputed Conduct**

13       As explained in Oracle's contemporaneously filed OSC Reply and Opposition to

14   Rimini's Motion to Exclude Oracle's expert, Rimini admits or does not dispute the great

15   majority of the conduct that will be at issue in the contempt proceedings. OSC Reply <u>at</u> 1.

16   **III.   <u>LEGAL STANDARD</u>**

17       It is well established that there is no right to a jury trial in any civil contempt proceedings.

18   *Shillitani v. U.S.*, 384 U.S. 364 (1966); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512

19   U.S. 821, 838-39 (1994) ("the right to trial by jury applies only to serious criminal sanctions");

20   *In re E. W. Const. Co., Inc.*, 21 F.3d 1112 (9th Cir. 1994) ("While there is a Sixth Amendment

21   right to a jury trial in certain criminal contempt cases, there is no such right in civil contempt

22   cases."); 11A Wright & Miller § 2960 (West 2020) ("There is no right to a trial by jury for the

23   violation of an order of court when the proceeding is for civil contempt unless a statute so

24   provides.").

25       The gateway issue is, therefore, whether contempt proceedings in this matter will be civil

26   or criminal in nature. "The difference between criminal and civil contempt is in the intended

27   effects of the court's punishment." *United States v. Powers*, 629 F.2d 619, 626–27 (9th Cir.

28   1980). The distinction entails "a fact-specific inquiry that must be understood in the context of

each individual case." *CBS Broad. Inc. v. FilmOn.com, Inc.,* 814 F.3d 91, 102 (2d Cir. 2016), *analysis cited with approval at Parsons v. Ryan*, 949 F.3d 443, 456 (9th Cir. 2020).

Contempt proceedings are generally civil if the remedy is designed either to compensate the injured party or to "coerce" compliance with Court orders. *Id.*; *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110–11 (9th Cir. 2005). Compensatory remedies approximate the harm caused by the contemnor's violation and attempt to make those injured by the contumacious conduct whole. *Lasar*, 399 F.3d at 1110–11 ("The monetary sanctions imposed, however, were compensatory in nature because they were designed to compensate Lasar for unnecessary costs and attorney's fees and to reimburse the district court"). In addition to compensatory remedies, a coercive remedy seeks to compel compliance with an injunction. The classic "coercive" situation is the recalcitrant witness who is imprisoned until she agrees to testify. *Bagwell*, 512 U.S. at 828. A party subject to "coercion" holds the "keys of their prison in their own pockets"—they may end the punishment by complying with the court order. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988). Similarly, courts may impose daily fines until the contemnor complies, which is "coercive" because the contemnor can stop the fines by complying. *Id.* at 632-33.

By contrast, criminal contempt proceedings vindicate the court's authority or punish the contemnor. For example, a large fine that is unrelated to the actual harm is likely punitive, particularly if the fine is paid into the Court rather than the injured party. Such remedies do not compensate the wronged litigant or coerce compliance. They punish disobedience.

## IV.   ARGUMENT

### A.   Nothing in Oracle's OSC Motion Triggers Criminal Process Rights

#### 1.   Oracle properly seeks compensatory relief (compensatory sanctions, fees, and costs) in this civil contempt proceeding.

Oracle requests three compensatory remedies: Compensatory sanctions, fees, and costs. Monetary sanctions commensurate with copyright damages are civil, compensatory relief. *BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991); *Adobe Sys. Inc. v. Software Tech*, No. 5:14-CV-02140-RMW, 2015 WL 6951875, at *6 (N.D. Cal. Nov. 10, 2015); *see also Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*, 2006 WL 2792756, at *14 (E.D.N.Y. Sept.

27, 2006) (awarding $330,000 copyright statutory damages where defendant violated preliminary injunction); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 296 F.R.D. 400 (D. Md. 2013) (awarding statutory copyright damages as compensation for ongoing contempt of preliminary injunction).   Fees and costs are likewise compensatory and recoverable in civil proceedings, provided that they were incurred because of the contumacious conduct.   *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)

a.   <u>Rimini confuses civil and criminal contempt remedies.</u>

Rimini's argument against compensatory damages makes two fundamental errors, confusing the differing remedies in civil contempt proceedings (like this one) and criminal contempt proceedings.   First, Rimini wrongly asserts that fines can only be paid in criminal contempt proceedings, not civil proceedings.   Second, Rimini seeks to buttress this error by wrongly arguing that civil contempt remedies can only be coercive, and thus any compensatory fine for past conduct necessarily is a criminal remedy.   In fact, courts sitting in equity have ample authority to award compensatory fines.

The first flaw in Rimini's argument is easily disposed of, as the law is clear that a monetary award can be either civil or criminal.   Rimini's own authority says exactly that.   *F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001).   In *Hanshaw*, the Ninth Circuit found that a $500,000 fine payable to <u>the </u>government was a fine for criminal contempt because it was not intended to compensate the injured party, but rather, was intended to punish the contemnor.   The *F.J. Handshaw* panel went on to uphold a $200,000 civil contempt fine paid to the opposing party precisely because it was designed compensate that party for its losses.   244 F.3d at 1138, 1142.

While Rimini discusses *Bagwell* at length, that case involved a clear punitive fine.   Mot. at 7-10 (quoting 84 lines of *Bagwell*); *id.* at 6, 13-15.   In *Bagwell*, the court punished the contemnor with a $52 million fine payable to the government.   In doing so, the trial court did not even "attempt to calibrate the fines to damages caused."   *Id.* at 834.   Under well-settled law, the

Supreme Court concluded that this fine was punitive, and required a jury trial.[4]  In so doing, the

Supreme Court explained that its decision "leaves unaltered the longstanding authority of judges

to . . . enter broad compensatory awards for all contempts through civil proceedings."  *Id.* at 838-

39.  It is beyond question, that this Court has ample authority to order a contemnor to

compensate the victim of its wrongful conduct.  If, in the future, Oracle seeks to have Rimini pay

tens of millions of dollars in punitive fines to the government, a jury trial likely would be

required.  Oracle currently is not seeking that remedy.

Rimini's second flaw is to assert that a civil fine can only be used to coerce future

compliance, not compensate a wronged party for past non-compliance with an injunction.

Again, Rimini's own authorities show that is simply wrong.  In *Hanshaw*, discussed above, the

Ninth Circuit upheld a $200,000 fine, compensating the harmed party for past contumacious

conduct.  In another of Rimini's cases, *F.T.C. v. Trudeau*, 579 F.3d 754 (7th Cir. 2009), the

Seventh Circuit explained that a $37.6 million civil contempt fine could be justified as a non-

coercive, civil compensatory remedy.  *Id.* at 768, 770.  The court then remanded so the court

below could explain whether that was so.  *Id.* at 770.

Rimini seeks to blur the line between civil coercive remedies (designed to compel Rimini

finally to comply with the Injunction) and civil compensatory remedies (designed to make

Oracle whole) precisely because Rimini has been violating the Injunction for 21 months and

Oracle has been harmed by this conduct.  Rimini has no right under contempt law to "reduce or

avoid" the consequences of its past improper conduct.  *Lasar*, 399 F.3d at 1110–11 ("It is true

that Ford and Sutter did not hold the keys to their cells, for they had no way of avoiding the

monetary sanctions.  The monetary sanctions imposed, however, were compensatory in nature . .

. "; affirming civil proceedings).[5]

---

[4] Rimini also cites *Sankary v. Ringgold-Lockhart*, where the Ninth Circuit found that a non-compensatory fine was a punitive sanction requiring criminal process.  611 F. App'x 893, 895 (9th Cir. 2015).

[5] Rimini cites several other opinions on compensatory sanctions.  None indicates that a jury trial is appropriate on an OSC in this case.  *Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 721 F.3d 1122 (9th Cir. 2013), which  Rimini cites  (concluding that sanctions were

Under Rimini's misreading of the law, a contemnor would never have to compensate a party injured by its *past misconduct*, as compensatory fines could only be used to ensure *future compliance* with an injunction.  That is not the law, and the facts of this case show precisely why it should not be the law.  Here, the Injunction has been in effect since November 2018, and Rimini has avoided a contempt proceeding for almost two years.  Under Rimini's theory, this Court lacks the authority to order Rimini to pay a penny for the damages caused to Oracle during the lengthy period of time Rimini violated the Injunction.  Well-settled law and longstanding principles of equity make clear that Rimini is simply wrong.  *E.g.*, *Lasar*, 399 F.3d at~~1101,~~ 1110–11; *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 630–31 (9th Cir. 2016) (reiterating the "bright-line distinction between compensatory and coercive" contempt sanctions).

> b.  Rimini suggests the wrong evidentiary standard for compensatory sanctions.

Rimini inaccurately states that "all elements" must be proven by a heightened evidentiary standard.  Mot. at 6.  In fact, no circuit has ever adopted a heightened evidentiary standard for proof of compensatory sanctions.  *Ahearn*, 721 F.3d at 1129 n.3 ("Every circuit to have considered this issue [the standard of proof for compensatory sanctions in civil contempt proceedings] has adopted a preponderance standard.").  Civil compensatory sanctions do not require "mathematical exactitude."  *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, ~~at~~ 20-21 (1st Cir. 2003) (Selya, J.).  Instead they must be "reasonably proportionate" to the violation's harm and proven by a preponderance of the evidence.  *Id.*; *see also In re Deed & Note Traders, L.L.C.,* 2018 WL 1354328, at *9 (B.A.P. 9th Cir. Mar. 14, 2018).

---

"civil, not criminal, because they sought to coerce the Union and its members to comply with the court's injunctions and to compensate injured parties for actual losses caused by the Union's and its members' contumacious conduct."); *Nat'l Org. for Women v. Operation Rescue*, 37 F.3d 646, 659 (D.C. Cir. 1994) (reiterating that compensatory and coercive damages do not require criminal proceedings); *Miller v. City of Los Angeles*, 661 F.3d 1024 (9th Cir. 2011) (concluding that attorneys' fees award was punitive rather than compensatory because it covered all fees rather than just the fees related to contempt proceeding); *Crowe v. Smith*, 151 F.3d 217, 228 & n.13 (5th Cir. 1998) (addressing whether punitive, criminal sanctions were too petty to trigger Sixth Amendment protection—not whether the sanctions at issue were civil or criminal).

### 2. Oracle requests equitable remedies contemplated by the Copyright Act to induce Rimini's compliance (impoundment or escrow).

Oracle's OSC Motion requests equitable remedies in the form of impoundment of Rimini's computer systems "so that Oracle can ascertain the full extent of Rimini's improper conduct." OSC Mot. at 29. Alternatively, the OSC Motion suggests placing Rimini's systems in escrow until Rimini can "demonstrate compliance" with the Permanent Injunction. *Id.* These are equitable remedies contemplated by the Copyright Act, and granting such relief has never required a jury trial. Impoundment or escrow would end after Rimini "demonstrates compliance to this Court's satisfaction" (OSC Mot. at 29), and thus are designed to "coerce" Rimini into compliance by vesting Rimini with the power to terminate the sanction. In addition, impoundment or escrow are steps in Oracle's proposed plan to remediate the harm Rimini has caused. They are, therefore, not criminal.

The Copyright Act expressly permits the Court to impound all infringing copies and means of making infringing copies "at any time" and without trial. 17 U.S.C. sec. 503(a)(1); *Entral Grp. Int'l, LLC v. Honey Café on 5th, Inc.*, 2006 WL 3694584, at *8 (E.D.N.Y. Dec. 14, 2006) (ordering impoundment of computer systems used to copy, store, and distribute infringing works); *Mitchell Int'l, Inc. v. Fraticelli*, No. CIV. 03-1031 GAG/BJM, 2007 WL 4197583, at *10 (D.P.R. Nov. 26, 2007) (same). Impoundment is an equitable remedy that is imposed without a jury. *Hounddog Productions, L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 633-34 (S.D.N.Y. 2011). Thus, courts have ordered impoundment in civil contempt proceedings. *E.g.*, *Choice Hotels Int'l, Inc. v. Key Hotels of Atmore II*, LLC, 2017 WL 6945340, at *2 (S.D. Ala. Aug. 18, 2017) (noting prior impoundment of trademark infringing materials in civil contempt proceedings); *see also* Contempt and Seizure Order, 1:16-cv-00452, ECF 32 (S.D. Ala. May 3, 2017), at 5. Further, after Oracle prevailed in the jury trial here, Oracle sought impoundment as a remedy, and the Court concluded that no impoundment was needed at that time because the Injunction should end Rimini's misconduct. Unfortunately, Rimini defied the Injunction, and impoundment is now needed, and Rimini is not entitled to second jury trial on this issue.

Similarly, as another civil remedial measure, Oracle suggested the possibility of placing

"Rimini's computer systems in escrow" until "Rimini demonstrates compliance to this Court's satisfaction." OSC Mot. at 3, 7, 29. The Copyright Act permits other "reasonable disposition[s]" as alternatives to impoundment. 17 U.S.C. § 503(b). Escrow to a private neutral party is a reasonable alternative to impoundment. The private party option may be more appropriate and avoid unnecessary burdens on government officers with impoundment given the nature of the materials at issue (computer hardware that needs to be set up and used if Oracle is permitted to investigate the full extent of Rimini's wrongdoing).

Moreover, contempt sanctions are civil when they are designed to "remedy . . . an ongoing problem." *Haegar v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233 (9th Cir. 2016), *reversed in part on other grounds*, 137 S. Ct. 1178 (2017). The OSC Motion explains that both impoundment and escrow would be remedial because they are designed to give Oracle time to investigate and understand the full extent of Rimini's wrongdoing and mitigate the ongoing harm from Rimini's contempt. OSC Mot. at 29-30. Just as compensatory sanctions remedy a past harm, the impoundment or escrow remedy serves to remediate current and ongoing harm.[6]

### 3.    Oracle will defer its request for a bar order.

The OSC Motion explains that an order barring Rimini from supporting PeopleSoft and JD Edwards is appropriate because Rimini has proven that it views "damages, injunctions, and sanctions as a cost of doing business" that it is willing to accept. OSC Mot. at 29. Oracle does not seek a bar order to punish Rimini, but to compel compliance because lesser interventions have not sufficiently incentivized Rimini to stop its illegal conduct. A bar order is also consistent with the fact that Rimini's business model was "built entirely on its infringement of Oracle's copyrighted software." ECF No. 1164 at 6 (Prelim. Inj. Order).

But, in the interest of avoiding further delay, Oracle will withdraw its request for a bar order without prejudice to seeking such a remedy in the future. Although a bar order would not

---

[6] Rimini's protestations about the temporary loss of the systems that contain infringing copies or evidence of infringement undermine its contentions that it changed to a "remote" support model. OSC Opp. at 1, 5, 15, 22, 25. If Rimini supports customers remotely, it should have little need for the software and support materials on any particular Rimini system.

require a jury trial,[7] contempt proceedings are a grave and urgent matter.  Rimini's brazen

contempt is so unusual that there are few direct precedents to determine whether any additional

process is appropriate when pursuing a bar order in civil contempt.  To ensure that Oracle

obtains swift relief through the most efficient route possible, and that means a bench proceeding

limited to the core issues, Oracle withdraws its request reluctantly.  We note that Rimini

successfully narrowed discovery at every turn—even arguing that ***no discovery*** was needed at all

and that contempt could be resolved by motion practice (Apr. 4, 2019 Hearing Tr. at 31:6-8.

29:24-30:9)—and thereby prejudicing Oracle's ability to present a full picture of the extent of

Rimini's misconduct.  Only Rimini holds the evidence necessary to show the full picture of

Rimini's pervasive misconduct, and Oracle's ability to obtain evidence was severely limited by

Rimini's hypocritical and disingenuous representations.[8]

### B.   Rimini Cannot Establish Any Right to a Jury Trial Based on "Complexity," Patent Law, or Any Other Doctrines

#### 1.   Rimini cannot claim a "complexity" exception.

The Motion's argument section opens with an 84-line block-quote from the Supreme

Court's *Bagwell* opinion.  Mot. at 7-8.  The Motion later devotes several pages to arguing that

*Bagwell* creates a special rule for "complex" cases that allows defendants to force full-blown

---

[7] The Court may implement a bar order without contempt proceedings.  The Copyright Act permits such injunctions, and in fact Oracle could have requested it after trial.  *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1097–99 (9th Cir. 2002); *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1337–38 (9th Cir. 1995).  The Court could still do so today through civil proceedings because it retains the jurisdiction and authority to modify its injunction to include such an order.  In *Transgo*, the Ninth Circuit explained,

> "When dealing with its equitable powers, a court possesses the intrinsic power to adapt the injunction to meet the needs of a 'new day.'  The district court has continuing jurisdiction over such matters as the modification of injunctive relief."

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022-23 (9th Cir. 1985) (reiterating trial court's power to modify a trademark injunction after trial); *accord LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424 (6th Cir. 2016) ("district courts may modify an injunction that is not achieving its principal objectives").

[8] If a jury proceeding were required to decide whether a bar order is warranted, Oracle would face a Hobson's choice: either (a) proceed to a jury trial with vastly insufficient discovery; or (b) reopen discovery wholesale, and delay Rimini's day of reckoning for years.

ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL

trials before being held to account for contempt of court.  Mot. at 13-15.  *Bagwell* stands for nothing of the sort, and the Ninth Circuit undermined Rimini's reading of *Bagwell* earlier this year.

Before addressing the flaws in Rimini's *Bagwell* arguments, it should be noted that the Ninth Circuit rejected a "complex code of conduct" theory earlier this year.  In *Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020), the contemnor in *Ryan* argued, like Rimini, that *Bagwell* required a jury trial because the injunction was "complex."  *Id.* at 455-56.  The Ninth Circuit held that *Bagwell* did not apply because concerns about complexity do not arise where the court's remedy is "coercive and compensatory."  *Id.* at 456.  *Parsons* is consistent with the Tenth Circuit's teaching that a special exception for "complexity" would be "difficult and impractical to apply." *F.T.C. v. Kuykendall*, 371 F.3d 745, 754 (10th Cir. 2004).

As discussed above, *Bagwell* addressed a Virginia state court's imposition of $52 million in fines for violations of an injunction involving union strikes.  *Bagwell*, 512 U.S. at 837-38. The fines were admittedly punitive:  "neither any party nor any court of the Commonwealth has suggested that the challenged fines are compensatory."  *Id.* at 834, 837-38.  The injunction was an act of judicial lawmaking-and-enforcement, where the judge legislated labor law and union conduct from the bench.  *Id.* at 834, 837-38.  In short, the trial court in *Bagwell* had fashioned its own "complex code of conduct" and "announced [a] prospective fine schedule," appointing itself to "effectively police[] . . . . an entire code of conduct that the court itself had imposed." *Bagwell*, 512 U.S. at 834, 837; *NLRB v. Local 3, Intern. Broth. of Elec. Workers*, 471 F.3d 399, 404-05 (2d Cir. 2006) (noting that *Bagwell* was concerned about proceedings that "leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the" conduct).  The injunction "affected a substantial portion of the state" and "lasted many months." *Id.* at 838.  The Court held that under **those** specific "circumstances disinterested factfinding and evenhanded adjudication were essential, and petitioners were entitled to a criminal jury trial." *Id.*; *see also Local 3*, 471 F.3d at 405 (declining to apply *Bagwell* due to its "unusual" circumstances (quoting *NLRB v. Ironworkers Local 433*, 169 F.3d 1217, 1219 (9th Cir. 1999)).

Seizing on the word "complex," Rimini asserts a special right to a jury trial because its

business is allegedly "complex."  Rimini is triply wrong in suggesting that *Bagwell* creates a two-tier system of contempt proceeding, with civil proceedings for contemnors with a simple business, and criminal proceedings for contemnors with complex businesses.  First, *Bagwell*'s holding does not turn on "complexity"; it turns on the fact that the $52 million fine was punitive because it was paid to the government and did not compensate any harmed party.  The Supreme Court was clear that *Bagwell* did not impose a new standard or reflect any new rule or alteration to the "the longstanding authority of judges . . . to enter broad ***compensatory*** awards for all contempts through civil proceedings."  *Id.* at 838 (emphasis added).  Second, Rimini improperly urges this Court to adopt a two-tiered system of justice, one where simple contemnors face summary proceedings, while well-heeled contemnors who can afford high-priced counsel obtain a higher standard of due process.  Nothing in the law supports that position.  Third, the "complexity" in *Bagwell* involved the Injunction's provisions, not the contemnor's business.  Here, Rimini specifically challenged the Injunction as vague and overly broad, and it lost that argument on appeal.  Rimini's "complexity" argument is yet another attempt to reargue issues it lost on appeal.

In a final effort to confuse the issue, Rimini discusses the differences between "direct" contempt, which occurs in court, and "indirect" contempt, which occurs out of court.  Mot. at 13; *Bagwell*, 512 U.S. 833-34.  This argument borders on the farcical, as Rimini is not developing, testing, and distributing software in the Federal Courthouse in Las Vegas, and the Injunction contains no geographical limitations.

> **2.**     **The Federal Circuit's patent-specific "more than colorable differences" test does not apply and is inconsistent with Ninth Circuit and Supreme Court doctrine.**

Improperly seeking to import concepts of patent litigation into a copyright case, Rimini asserts that the relevant question is "only whether the *process* by which Rimini provides" support violates the injunction.  Mot. at 3 (emphasis in original); *id.* at 15-17.  This is incorrect.  In a patent case, a plaintiff typically argues that defendant's product infringes a patent, and if the plaintiff prevails, it can obtain an injunction that prohibits the defendant from selling that product.  To prevent a defendant from evading an injunction by making mere cosmetic changes

to the product, a patent injunction can also prohibit a defendant from selling products that are not "more than colorably different" from the enjoined products.  In the patent context, a jury may have a role to play in comparing a purport<u>ed</u> new product to the enjoined product.

By contrast, a copyright injunction typically bars specific actions.  Here, the Injunction does exactly that, barring Rimini from engaging in specific acts, regardless of whether those acts are part of Rimini's purported "1.0 Process," "2.0 Process," or some future "3.0 Process."  As the Injunction's enforcement does not turn on whether one process is "colorably different" from another, but rather turns on Rimini's actual acts in providing support, a jury has no role to play here.

Rimini relies on the Federal Circuit's decision in *TiVo, Inc. v. EchoStar Corporation*, where the panel feared that contempt proceedings in patent cases had devolved into debates about the similarity of "a few randomly chosen features" of newly accused embodiments rather than concentrating on the aspects of the embodiment that had actually been presented at trial. 646 F.3d 869, 884 (Fed. Cir. 2011).  In response, *TiVo* created a multistep procedure for patent contempt proceedings.  646 F.3d at 884-85.  *TiVo* stated that the procedure it created aims to test whether there are "more than colorable differences" between an embodiment adjudged infringing and a newly accused embodiment.  *Id.*  According to *TiVo*, if the court concludes that "more than colorable differences" between the two embodiments exist, then it should order a new patent trial.  *Id.*

*TiVo* has no relevance to this action.  Rimini calls its current processes "version 2.0," but Rimini's conduct here does not involve isolated features of new embodiments of its previous copyright violations; it involves plain violations of the language of the Injunction through continued cross-use and unauthorized copying.  The **acts** that Rimini **concedes** it engages in are prohibited by the Injunction's plain text and no further analysis is required.  *See* OSC Reply at 1.

Courts have also refused to apply the "more than colorably different" patent law standard in copyright cases.  *Disney Enterprises, Inc. v. VidAngel Inc.*, 2017 WL 6820015, at *2-3 (C.D. Cal. Sept. 13, 2017) ("this is not a patent infringement action, and no device or technology has been restrained by the injunction"; addressing copyright civil contempt proceedings);

*Hubbard/Downing, Inc. v. Kevin Heath Enterprises*, No. 1:10-CV-1131-WSD, 2013 WL 12239523, at *4 (N.D. Ga. May 30, 2013) (refusing to apply the *TiVo* standard for similar reasons).  The *Disney* court observed that if "more than colorable differences" were enough to require a retrial, ~~copyright~~ businesses that rely on copyright infringement could infringe "without penalty for every 'more than colorably different' version of the service they can create."  *Disney*, 2017 WL 6820015, at *2–3.  Infringement without penalty is what Rimini wants—the ability to make superficial changes, re-brand its misconduct with a new version number, and continue infringing forever.[9]

### 3. Civil contempt is equitable and therefore no Seventh Amendment right attaches to contempt damages.

Rimini cites *GoPets Ltd. v. Hise* for the proposition that the "Seventh Amendment provides a right to a jury trial both as to liability and as to the amount of actual copyright damages."  Mot at 16 (quoting 657 F.3d 1024, 1034 (9th Cir. 2011)).  But Rimini already had its trial on liability and damages.  It lost.  The Court entered a Permanent Injunction, which Rimini appealed.  Rimini lost the appeal, and the Injunction's language and scope has been upheld. Rimini cannot now challenge the Injunction.  ECF No. 1333 at 1-3, 13-20 (Oracle's opposition to Rimini's "Motion to Enforce" the judgment, explaining that Rimini has repeatedly lost its attempts to argue that its purported "current practices" or "Process 2.0" are untouchable under the Injunction); *see also Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 857 n.11 (9th Cir.

---

[9] Or, as the Supreme Court more colorfully put it:

> "It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined.  Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we [have] condemned . . . . The instant case is an excellent illustration of how it could operate to prevent accountability for persistent contumacy.  Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan.  Thereafter the defendants work out a plan that was not specifically enjoined.  Immunity is once more obtained because the new plan was not specifically enjoined.  And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught."

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192–93 (1949).

1992), *as amended on denial of reh'g* (Aug. 25, 1992) ("A contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." (quoting *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989)).

There is no Seventh Amendment (or any other) right to a jury trial for compensatory contempt remedies.  Section IV.A, above.  *GoPets*, which is not a contempt case, does not hold otherwise.  *GoPets* discussed the jury-trial right during the main case, not after trial.  The *GoPets* panel explains that because "English law courts in the late 18th century" heard copyright claims, the Seventh Amendment attaches to certain copyright actions.  657 F.3d at 1034 (citing and quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 1034 (1998)).  Rimini errs by assuming that copyright's common-law origin deprives this Court of its inherent equitable authority to hold contempt proceedings to enforce injunctions.  It does not.  The civil contempt power is well established in copyright actions, and nothing in *GoPets* or the Supreme Court case it cites, *Feltner*, indicates otherwise.  *BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005) (*Feltner* establishes that copyright actions are "normal civil actions subject to the normal allocation of functions between judge and jury."); *see also Standard Oil Co. of California v. Arizona*, 738 F.2d 1021, 1026 (9th Cir. 1984) ("'Legal' issues relating to . . . civil contempt were tried by a judge at common law.").

### C.    "Process 2.0" Changes Nothing

Rimini's Motion asserts—for the ***tenth*** time—Rimini's now-frivolous theory that the Injunction cannot reach its current misconduct because it exceeds the scope of the first trial.  *E.g.*, Mot. at 1-2, 17-18; ECF Nos. 1333 at 1 (Oracle's Opposition to Rimini "Motion to Enforce Judgment").  This section briefly addresses Rimini's contentions—to the extent they have not already been addressed above—because a fully briefed motion before the Court specifically addresses Rimini's false assertions that it can avoid contempt by asserting that what it calls "Process 2.0" is beyond the scope of the first trial.  ECF No. 1333.

"Process 2.0" finds its origins in Rimini's attempt to stall the trial.  The Court declined to let Rimini further delay the case, then pending for almost ~~six~~five years.  Rimini pled its self-

serving "Process 2.0" story in a declaratory judgment action that became *Rimini II*.  Now Rimini

argues that its decision to file a "separate case" and new branding for its services ("Process 2.0")

mean that the Court cannot enforce the Injunction without a full trial.  Mot. at 17-20.  The actual

situation is simple:   Rimini continues to engage in illegal conduct that is barred by the

Injunction.  That conduct is fundamentally the same as conduct already adjudicated by the jury.

Moreover, Rimini does not factually dispute much of what Oracle's OSC explains.  OSC Reply

at 1.

Rimini's "Process 2.0" assertions are irrelevant.  In civil contempt proceedings, "the sole

question is whether a party complied with the district court's order."  *Donovan v. Mazzola*, 716

F.2d 1226, 1240 (9th Cir. 1983).

Rimini's self-serving assertions that its conduct is new (it is not) fare no better.

Injunctions can reach new conduct because "the schemes available to those determined to evade

injunctions are many and varied, and no injunction can explicitly prohibit every conceivable plan

designed to defeat it."  *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d

935, 954 (9th Cir. 2014).  In any event, Oracle will demonstrate that Rimini's illegal conduct is

not materially different from what was litigated in *Rimini I*.  *E.g.*, OSC Mot. at 7-11.

**D.     There is No Willfulness, Intent, or Good-Faith Defense to Civil Contempt that Would Otherwise Require a Jury**

Rimini contends that "good faith" is relevant to civil contempt.  Mot. at 6, 15 ("good

faith").  Similarly, Rimini asserts that its alleged mental state should be considered.  Mot. at 11.

"Intent is not an issue in civil contempt proceedings."  *Donovan*, 716 F.2d at 1240 (9th

Cir. 1983) (citing *McComb*, 336 U.S. at 191 ("Since the purpose [of civil contempt] is remedial,

it matters not with what intent the defendant did the prohibited act.... An act does not cease to be

a violation of a law and of a decree merely because it may have been done innocently."))  Thus,

civil contempt "need not be willful," and there is no good-faith exception to the requirement to

obey a court order.  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir.

1987); *see also Stone*, 968 F.2d at 858 (the "good faith compliance standard" is "not the law in

this Circuit").

1   Rimini cites one case for the proposition that "good faith" is at issue in the civil context.

2   Mot. at 6, 15 (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695

3   (9th Cir. 1993)).  That case explains, however, that "there is no good faith exception to the

4   requirement of obedience to a court order."  *Dual-Deck*, 10 F.3d at 693, 695.  Rimini suggests

5   otherwise by quoting a separate statement about substantial compliance with a reasonably

6   interpreted order.   Mot. at 15.  To the extent *Dual-Deck* suggests that Rimini can import

7   irrelevant evidence about "good faith" through a substantial compliance defense (or any other

8   way),- the earlier-decided cases holding that "the good faith compliance standard is not the law

9   in this circuit" control.  *Stone*, 968 F.2d at 858; *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir.

10   2001) (earlier-decided panel opinion controls).

11   **V.    CONCLUSION**

12   For the foregoing reasons, the Court should deny Rimini's Motion for a Jury Trial in any

13   contempt proceedings concerning the acts discussed in Oracle's OSC Motion.

14   DATED:  August 14, 2020                         BOIES SCHILLER FLEXNER LLP

15

16                                            By: */s/ Richard J Pocker*

17                                                Richard J. Pocker
                                                 Attorneys for Plaintiffs Oracle USA, Inc.,
18                                                Oracle America, Inc., and Oracle International
                                                 Corporation
19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2         I certify that on August 14, 2020, I electronically transmitted the foregoing **ORACLE'S**

3   **OPPOSITION TO RIMINI'S MOTION FOR A JURY TRIAL** to the Clerk's Office using

4   the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in

5   this matter; all counsel are CM/ECF registrants.

6

7    Dated:  August 14, 2020

8                                              BOIES SCHILLER FLEXNER LLP

9

10                                           By:  /s/ *Ashleigh Jensen*

11                                                 Ashleigh Jensen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28