1   GIBSON, DUNN & CRUTCHER LLP          RIMINI STREET, INC.
    MARK A. PERRY (*pro hac vice*)           DANIEL B. WINSLOW (*pro hac vice*)
2   1050 Connecticut Avenue, N.W.        6601 Koll Center Parkway, Suite 300
    Washington, DC  11101               Pleasanton, CA 94566
3   Telephone: 202.955.8500             Telephone: 925.264.7736
    mperry@gibsondunn.com               dwinslow@riministreet.com
4
    GIBSON, DUNN & CRUTCHER LLP          RIMINI STREET, INC.
5   JEFFREY T. THOMAS (*pro hac vice*)       JOHN P. REILLY (*pro hac vice*)
    BLAINE H. EVANSON (*pro hac vice*)       3993 Howard Hughes Parkway, Suite 500
6   JOSEPH A. GORMAN (*pro hac vice*)        Las Vegas, NV 89169
    CASEY J. MCCRACKEN (*pro hac vice*)      Telephone: 336.908.6961
7   3161 Michelson Drive                jreilly@riministreet.com
    Irvine, CA  92612-4412
8   Telephone: 949.451.3800             HOWARD & HOWARD ATTORNEYS PLLC
    jtthomas@gibsondunn.com             W. WEST ALLEN (Nevada Bar No. 5566)
9   bevanson@gibsondunn.com             3800 Howard Hughes Parkway, Suite 1000
    jgorman@gibsondunn.com              Las Vegas, NV 89169
10  cmccracken@gibsondunn.com           Telephone: 702.667.4843
                                        wwa@h2law.com
11  GIBSON, DUNN & CRUTCHER LLP
    SAMUEL LIVERSIDGE (*pro hac vice*)
12  ERIC D. VANDEVELDE (*pro hac vice*)
    333 South Grand Avenue
13  Los Angeles, CA  90071-3197
    Telephone: 213.229.7000
14  sliversidge@gibsondunn.com
    evandevelde@gibsondunn.com
15
    *Attorneys for Defendant*
16  *Rimini Street, Inc.*

17                  **UNITED STATES DISTRICT COURT**

18                      **DISTRICT OF NEVADA**

19  ORACLE USA, INC., et al.,            │  Case No. 2:10-CV-00106-LRH-VCF
                                         │
20              Plaintiffs,              │  **DEFENDANT RIMINI STREET,**
                                         │  **INC.'S REPLY IN SUPPORT OF**
21      v.                               │  **MOTION FOR A JURY TRIAL**
                                         │
22  RIMINI STREET, INC., et al.,         │  **ORAL ARGUMENT REQUESTED**
                                         │
23              Defendants.              │  **PUBLIC REDACTED VERSION**

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. ARGUMENT.................................................................................................................1

    A.      Rimini Is Entitled to a Jury Trial Under Bagwell ..................................1

          1.       The Nature of the Sanctions Oracle Seeks Requires a Jury Trial ..........................................................................................................1

          2.       The Complexity of the Injunction Requires a Jury Trial ...........4

          3.       Rimini Is Entitled to Other Heightened Procedural Protections 6

    B.      Process 2.0 Cannot Be Adjudicated in a Summary Proceeding ............7

II. CONCLUSION ........................................................................................................12

DEFENDANT RIMINI STREET, INC.'S REPLY IN SUPPORT OF MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Foundry & Mfg. Co. v. Josam Mfg. Co.*,
  79 F.2d 116 (8th Cir. 1935) ...................................................................................................10

*Arbek Mfg., Inc. v. Moazzam*,
  55 F.3d 1567 (Fed. Cir. 1995).................................................................................................7

*Bianco v. Globus Med., Inc.*,
  2017 WL 3895921 (E.D. Tex. Sept. 6, 2017) .......................................................................11

*Cal. Artificial Stone Paving Co. v. Molitor*,
  113 U.S. 609 (1885) .................................................................................................................8

*Cass Cty. Music Co. v. C.H.L.R., Inc.*,
  88 F.3d 635 (8th Cir. 1996) .....................................................................................................4

*Choice Hotels Int'l, Inc. v. Key Hotels of Atmore II, LLC*,
  2017 WL 6945340 (S.D. Ala. Aug. 18, 2017)........................................................................3

*Disney Enters., Inc. v. VidAngel Inc.*,
  2017 WL 6820015 (C.D. Cal. Sept. 13, 2017) .....................................................................11

*Dream Games of Ariz., Inc. v. PC Onsite*,
  561 F.3d 983 (9th Cir. 2009) ...................................................................................................4

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) .................................................................................................6, 7

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
  244 F.3d 1128 (9th Cir. 2001) .................................................................................................7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)................................................................................................................10

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998)..................................................................................................................4

*Gompers v. Bucks Stove & Range Co.*,
  221 U.S. 418 (1911)..................................................................................................................3

*Hubbard/Downing, Inc. v. Kevin Heath Enters.*,
  2013 WL 12239523 (N.D. Ga. May 30, 2013)......................................................................11

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994)....................................................................................1, 4, 5

*LCSC v. L.A. Cty. MTA*,
    564 F.3d 1115 (9th Cir. 2009) ...........................................................................7

*Leadsinger, Inc. v. Cole*,
    2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006) .......................................................3

*Mitchell v. 3PL Sys., Inc.*,
    2013 WL 12129617 (C.D. Cal. Apr. 8, 2013) ...................................................11

*Ncube Corp. v. SeaChange Int'l Inc.*,
    732 F.3d 1346 (Fed. Cir. 2013)...........................................................................8

*Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*,
    721 F.3d 1122 (9th Cir. 2013) .............................................................................6

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    783 F. App'x 707 (9th Cir. 2019) ........................................................................5

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    879 F.3d 948 (9th Cir. 2018) .............................................................................11

*Parsons v. Ryan*,
    949 F.3d 443 (9th Cir. 2020) ..........................................................................4, 5

*Sagami v. Palmer Mktg. ENT, LLC*,
    2011 WL 13244113 (W.D. Wisc. Sept. 13, 2011)..............................................11

*SCVNGR, Inc. v. DailyGobble, Inc.*,
    2018 WL 4677816 (E.D. Tex. May 30, 2018)..............................................10, 11

*Sure Plus Mfg. Co. v. Kobrin*,
    719 F.2d 1114 (11th Cir. 1983) ........................................................................10

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019)........................................................................................8

*TiVo Inc. v. EchoStar Corp.*,
    646 F.2d 869 (Fed. Cir. 2011)..................................................................1, 8, 10

*United States v. United Mine Workers of Am.*,
    330 U.S. 258 (1947)............................................................................................3

DEFENDANT RIMINI STREET, INC.'S REPLY IN SUPPORT OF MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

# I.   ARGUMENT

*All* of the conduct that Oracle now accuses as contumacious is also squarely at issue in *Rimini II*—a separate lawsuit that Rimini instituted after this Court, at Oracle's request, excluded all evidence of Process 2.0 from the trial in this case.  ECF No. 1323.  Oracle has never explained *why* this Court should consider this conduct in the context of contempt proceedings rather than in *Rimini II*.  Oracle also does not dispute that if the Court denies the OSC Motion, as it should, Oracle's complaints about Rimini's current processes can be resolved in *Rimini II*.  Of course, Rimini is entitled to a jury trial in *Rimini II*, and it appears that Oracle's real objective in attempting to institute contempt proceedings is to avoid a trial by jury.  However, Rimini is entitled to a jury trial on contempt for two independent reasons.

*First*, contempt proceedings seeking "serious," non-compensatory sanctions for alleged "out-of-court disobedience to complex injunctions" are "especially suited for trial by jury." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833–34 (1994).  That describes this case to a T:  Oracle seeks *only* non-compensatory sanctions, and the injunction governing Rimini's out-of-court conduct is undisputedly complex.  A jury trial is thus required.

*Second*, contempt proceedings involving unadjudicated conduct that is more than colorably different than the conduct adjudicated (and subject to the injunction) must be tried to a jury.  *TiVo Inc. v. EchoStar Corp.*, 646 F.2d 869, 882 (Fed. Cir. 2011).  Again, that principle fits here like a glove:  Oracle accuses *only* aspects of Process 2.0 that have never been considered by the jury, this Court, or the Ninth Circuit.  A jury trial is thus required.

## A.   Rimini Is Entitled to a Jury Trial Under *Bagwell*

### 1.   The Nature of the Sanctions Oracle Seeks Requires a Jury Trial

As Oracle admits (Opp. at 8–9), "the stated purposes of a contempt sanction alone cannot be determinative" when evaluating what procedures are required, but rather, an assessment of whether a contempt sanction is civil or punitive requires courts to make "an examination of the character of the relief itself."  *Bagwell*, 512 U.S. at 828.  Oracle maintains that the sanctions it seeks are "compensatory" and "remedial" (Opp. at 9–13), but an "examination of the character of the relief itself" makes it abundantly clear that Oracle's

Gibson, Dunn &
Crutcher LLP

proposed sanctions are punitive.  In its OSC Motion, Oracle proposed:  (1) a bar order to "put[] an end to [Rimini's] business" (ECF No. 1365 at 29); (2) impoundment of Rimini's computer systems (*id.*); and (3) unspecified damages, even though Oracle admittedly has no evidence of harm (*id.* at 30).  These sanctions are undeniably punitive.  Mot. at 9–13.

*First*, Oracle's OSC Motion seeks an order "bar[ring] Rimini from providing support for Oracle's PeopleSoft and JD Edwards product lines."  ECF No. 1365 at 28.  Oracle now admits (as it must) that a bar order would be punitive, and—in a transparent attempt to avoid a jury trial—proposes to "withdraw its request for a bar order without prejudice to seeking such a remedy in the future."  Opp. at 14–15; *see also* ECF No. 1405 at 15 n.7.  Leaving the sword of Damocles hanging over Rimini's head (in Oracle's words, "deferring" the sword's drop) is not a withdrawal of any sort.  Since Oracle seeks to keep this punitive sanction in play, a jury trial is required.  *See* Mot. at 9–11.

*Second*, an order impounding Rimini's computer systems would be punitive.  This case does not concern pirated movies where impound of the infringing DVDs might make sense.  Oracle seeks impoundment of all of Rimini's computer systems and everything on them.  As Oracle well knows, to provide remote support, Rimini must use its own computer systems to connect to client systems, even if it performs the support services in the clients' environments.  *See* ECF No. 1393.  Oracle's request is analogous to impounding the federal court system's ECF/PACER servers, webservers, email servers, and judges' and clerks' computers—the work of the Judiciary would grind to a halt.  Oracle's impoundment request is tantamount to a bar order, which would serve no compensatory or remedial purpose.  Indeed, Oracle's contention that it needs to impound Rimini's systems to "assess" Rimini's conduct further proves that—despite years of far-reaching discovery into all aspects of Rimini's support business—Oracle has no evidence of wrongdoing or harm.[1]

---

[1]  Oracle's suggestion that it does not have "the evidence necessary to show the full picture" of Rimini's processes (Opp. at 15) is preposterous.  Oracle has secured comprehensive discovery into Rimini's processes and systems, both in this proceeding and in *Rimini II*.  *See* ECF No. 1374-3.  The fact that it has turned up no evidence of ongoing wrongdoing reflects Rimini's compliance with the law and this Court's orders, not any discovery deficiencies.

Gibson, Dunn &
Crutcher LLP

As Oracle admits, it previously sought an impoundment order, and the Court rightly concluded that this request was not well-founded.  ECF No. 1365 at 29 (citing ECF No. 1049 at 10:1–3).  In essentially seeking reconsideration of that order, Oracle now cites a single unpublished district court case addressing trademark infringement for the proposition that "courts have ordered impoundment in civil contempt proceedings."  Opp. at 13 (citing *Choice Hotels Int'l, Inc. v. Key Hotels of Atmore II, LLC*, 2017 WL 6945340, at *2 (S.D. Ala. Aug. 18, 2017)).  But the *Choice Hotels* case involved impoundment of hotel signage, and the hotel operator could continue to operate the hotel and demonstrate injunction compliance (*e.g.*, by creating new signage).  That case is neither authoritative nor pertinent, and does not authorize impoundment of a software support company's entire computer systems that it uses to operate.

*Third*, Oracle's request for unspecified, purportedly "compensatory" monetary sanctions is also punitive because Oracle has *no evidence whatsoever* of harm, and thus *any* monetary relief would be punitive.  *See* Mot. at 11–12; ECF No. 1365 at 30.  Oracle needs no discovery to determine whether *it suffered harm*; on the contrary, Oracle informed Rimini during discovery that it did not intend to "seek damages as part of its Motion for Order to Show cause."  ECF No. 1387-14.  It is therefore undisputed that any monetary payment to Oracle would be *non-compensatory*, and thus *punitive*.  *See*, *e.g.*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) (holding that "[w]here compensation is intended, … [a] fine must of course be based upon evidence of complainant's actual loss"); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443–44 (1911) (holding that compensatory relief must be "measured in some degree by the pecuniary injury caused by the act of disobedience"); *Leadsinger, Inc. v. Cole*, 2006 WL 2266312, at *17 (S.D.N.Y. Aug. 4, 2006) (collecting cases).  Oracle's request for attorney's fees does not transform this into a civil proceeding.  As in other cases, fees are ancillary to the main event, and Oracle has not prevailed on its OSC Motion.

Oracle's fallback argument is that it could ask the Court to impose *statutory* damages under the Copyright Act (Opp. at 9–10), but Oracle did not seek statutory damages in its OSC Motion, and thus this request for relief is waived.  But even if it is not, Oracle's request simply highlights, yet again, why the lawfulness of Process 2.0 must be resolved in *Rimini II*.  If Oracle

believes it is entitled to statutory damages for copyright infringement, then it must seek those damages in an infringement suit where there is an undisputed right to a jury trial. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 355 (1998) ("[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself."); *see also Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (same); *Cass Cty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 643 (8th Cir. 1996) (explaining the importance of a jury trial when statutory damages are sought because the intent of the statutory remedy is "preeminently to punish the defendant"). The Court should reject Oracle's improper attempt to make an end run around the Seventh Amendment.

### 2. The Complexity of the Injunction Requires a Jury Trial

As the Supreme Court explained in *Bagwell*, a jury trial is "both necessary and appropriate to protect the due process rights of the parties and prevent the arbitrary exercise of judicial power" in cases concerning "indirect contempts … involving out-of-court disobedience to complex injunctions." 512 U.S. at 833–34. Thus, contrary to Oracle's assertion, Rimini is not urging a "complexity exception" to *Bagwell*'s holding. Opp. at 15–17. Rather, Rimini relies on *Bagwell*'s express recognition that disputes like this one, involving out-of-court compliance with "complex injunctions," warrant trial by jury and "elaborate and reliable factfinding." 512 U.S. at 833–34. This case meets every single *Bagwell* factor (Mot. at 13–15), and thus if the Court issues an order to show cause, Rimini must be afforded a jury trial and related constitutional safeguards to protect its due process rights.

Contrary to Oracle's insistence (Opp. at 16), *Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020), has no bearing here. *Parsons* involved a settlement agreement (not an injunction); the scope of that agreement was not disputed (unlike the injunction here); there was no change in the defendant's conduct (unlike Rimini's change from Process 1.0 to 2.0); and thus the contempt phase did not implicate the due process concerns raised when "the court effectively policed petitioners' compliance with an entire code of conduct *that the court itself had imposed.*" *Bagwell*, 512 U.S. at 837 (emphasis added); *see also Parsons*, 949 F.3d at 451–52.

Furthermore, *Parsons* did not involve a parallel second action (like *Rimini II* here) in which the accused conduct was already being litigated and indeed awaiting ruling on multiple summary judgment motions. Finally, the sanctions in *Parsons* were not punitive, but rather "coercive and compensatory." *Parsons*, 949 F.3d at 456. *Parsons* is thus the opposite of the situation before the Court in this case.

*Parsons* aside, Oracle's cursory attempts to avoid the clear language and holding of *Bagwell* fail. *See* Opp. at 17. *First*, Oracle contends that *Bagwell* turned on the fact that a fine was paid to the government. In truth, the Court focused on the punitive nature of the sanctions and the complexity of the injunction. *See Bagwell*, 512 U.S. at 833–34, 837. Both are equally present here. *Second*, Oracle contends that Rimini is seeking a "higher standard of due process" for "well-heeled" litigants with "high-priced counsel." Not so. *Every* litigant is entitled to a jury trial where, as here, non-compensatory sanctions are sought based on out-of-court conduct accused to violate a complex injunction. *Third*, Oracle contends that the "complexity" in *Bagwell* "involved the Injunction's provisions, not the contemnor's business." But the same is true here: The parties have significant and unresolved disagreements on what the injunction prohibits. To be sure, Rimini argued on appeal that the injunction was vague and overbroad. *Oracle USA, Inc. v. Rimini Street, Inc.*, 783 F. App'x 707, 709 (9th Cir. 2019). The appellate court agreed that certain provisions of the injunction were vague, but that others were not. *Id.* at 710–11. The remaining terms now must be construed and applied.

Oracle is now pulling a bait-and-switch on this Court. It successfully advocated for exclusion of Process 2.0 from the *Rimini I* trial, and this Court ruled that "all claims, issues, and evidence related to" Process 2.0 would be addressed "solely" in *Rimini II*. ECF No. 723 at 3. Oracle also secured the injunction by telling the Court that it was limited to adjudicated conduct (*i.e.*, Process 1.0), and the Court agreed that the injunction reaches "only acts that have already been determined to be unlawful, and which have been affirmed on appeal." ECF No. 1164 at 9. Oracle now seeks to reverse course, arguing that Process 2.0 should be adjudged as contumacious in this proceeding. But under these circumstances, coupled with the jury's verdict of "innocent" infringement, addressing *any* unadjudicated conduct in a contempt

proceeding would be "punitive" within the meaning of *Bagwell*.  The Court should put an end to this gamesmanship by denying the OSC Motion.  If this proceeding goes forward, however, it must culminate in a jury trial.

### 3.     Rimini Is Entitled to Other Heightened Procedural Protections

Oracle does not dispute that if the Court were to grant Oracle's OSC Motion, it would have to issue an order to show cause that sets forth the specific acts the Court believes may be contumacious and why.  Nor does Oracle dispute that its proposed order (ECF No. 1365-3) is insufficient.  And, if an order to show cause issues, Oracle does not dispute: (a) that it must prove as to each accused act that: (i) Rimini violated the injunction, (ii) beyond substantial compliance, and (iii) such violation was not based on a good faith and reasonable interpretation of the injunction; (b) that it must prove these elements beyond a reasonable doubt, or at minimum by clear and convincing evidence; (c) that Rimini must be afforded the ability to call and examine witnesses of Rimini's choosing and to present evidence of Rimini's choosing; (d) that Rimini must be afforded a presumption of innocence; and (e) that Rimini must be permitted the opportunity to demonstrate why the specific acts identified in the order did not occur or do not violate the injunction, and to present every other available defense.  *See* Mot. at 14–15.  Oracle disputes only Rimini's entitlement to a heightened standard of proof as to remedies (Opp. at 12), and the availability of a "good faith" defense (*id.* at 21–22).  With respect to those two points, Oracle is wrong.

*First*, Oracle contends that it need not prove, by any heightened standard, the *amount* of damages it is purportedly owed (though it concedes it must meet a heightened standard for every other element).  Opp. at 12.  That is incorrect.  *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  The sole decision on which Oracle relies, *Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 721 F.3d 1122 (9th Cir. 2013), *declined* to reach this issue.  *Id.* at 1129.  In any event, Oracle has not presented *any* evidence of damages or harm, facts which are entirely in Oracle's control, so it could not satisfy *any* standard of proof.

*Second*, Oracle is simply wrong when it argues that Rimini's "good faith" is irrelevant

to contempt.  Opp. at 21–22.  As the Ninth Circuit explained in *Dual-Deck*, "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order."  10 F.3d at 695; *see also LCSC v. L.A. Cty. MTA*, 564 F.3d 1115, 1123–24 (9th Cir. 2009) (applying *Dual-Deck* to find no sanctions warranted).  Rimini's good faith and reasonable interpretation of the injunction is thus highly relevant to the injunction compliance inquiry, and Oracle bears the burden to prove, by a heightened standard, that Rimini's conduct was *not* based on a good faith and reasonable interpretation of the injunction.  And Rimini may of course oppose Oracle's evidence with its own.  *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc*., 244 F.3d 1128, 1138–39 (9th Cir. 2001).  Rimini's position here is objectively and subjectively reasonable; it has consistently taken the position that the injunction is limited to Process 1.0, and this interpretation is grounded in multiple orders of this Court that say exactly that.  *See* ECF No. 1323.  Litigants must be able to rely on court orders in self-policing their conduct.  And under Rimini's reasonable construction, Oracle concedes that Rimini has engaged in no acts that could be adjudged contumacious.

Moreover, if an order to show cause issues, Oracle must prove that Rimini's Process 2.0 is a *material* deviation from the injunction's requirements.  As the Ninth Circuit explained in *Dual-Deck*:  "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply."  10 F.3d at 695 (internal citations omitted); *see also Arbek Mfg., Inc. v. Moazzam*, 55 F.3d 1567, 1570 (Fed. Cir. 1995) ("[C]ontempt is a shield protecting the patentee against an infringer's flagrant disregard for court orders … not a sword for wounding a former infringer who has made a good-faith effort to modify a previously adjudged or admitted infringing device to remain in the marketplace.").  After nearly a decade of discovery, millions of pages of documents, virtually unfettered access to Rimini's systems, and thousands of pages of expert reports, Oracle points to only a handful of purported "violations."  If anything, this *confirms* Rimini's substantial compliance with the injunction, even as misconstrued by Oracle.

**B.     Process 2.0 Cannot Be Adjudicated in a Summary Proceeding**

Rimini fundamentally changed its support processes from Process 1.0 to Process 2.0

Gibson, Dunn &
Crutcher LLP

by July 2014.  The changes to Rimini's processes have been well-documented throughout this proceeding and *Rimini II,* and are set forth in the Declaration of Jim Benge and accompanying video. ███████████████████████████████████   Oracle does not dispute that Rimini changed its processes and disputes nothing in the Benge presentation.  Rather, Oracle argues in a conclusory fashion that the changes are "superficial."  Opp. at 19.  But Oracle has no *evidence* to back up this assertion.  *See Ncube Corp. v. SeaChange Int'l Inc.*, 732 F.3d 1346, 1349 (Fed. Cir. 2013) ("On a contempt motion, the party seeking to enforce the injunction bears the burden of proving by clear and convincing evidence 'both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes.'") (quoting *TiVo*, 646 F.3d at 883).

It is black letter law that a party can be held in contempt only for those acts that are prohibited by the injunction at issue.  Over 130 years ago, the United States Supreme Court stated this principle clearly:  A threshold question in any contempt proceeding is whether there is a "fair ground for doubt as to the wrongfulness of the defendant's conduct."  *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885).  The Supreme Court unanimously reiterated this principle just last Term, holding that a court may hold a party in contempt only "if there is *no fair ground of doubt* as to whether the order barred the [party's] conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (emphasis in original).  If, however, there is an "objectively reasonable basis for concluding that the [party's] conduct might be lawful," contempt is improper.  *Id.*  This standard applies to *all* injunctions, and reflects "traditional civil contempt principles."  *Id.* at 1802 ("This standard reflects the fact that civil contempt is a 'severe remedy,' and that principles of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt.").  Yet Oracle does not cite or address either of these Supreme Court cases.

Here, there is more than a "fair ground of doubt," as evidenced by the mountain of motions and supporting materials pending before the Court.  In this proceeding, the parties have filed seven motions (471 pages of legal argument and 1180 pages of exhibits).  In *Rimini II,* the parties filed seven summary judgment motions (729 pages of legal argument and

DEFENDANT RIMINI STREET, INC.'S REPLY IN SUPPORT OF MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

thousands of pages of exhibits).  The parties exchanged 33 expert reports in *Rimini II* and 6 here.  As Rimini pointed out (and Oracle does not dispute), contempt is properly reserved for open violations of clear orders.  *See* ECF No. 1392 at 19.  The situation here is anything but.

Among the *Oracle* personnel who have stated under penalty of perjury or at a hearing before this Court that they do not believe the injunction covers Process 2.0 and/or that those processes are lawful are its founder Larry Ellison (*Rimini II*, ECF No. 975-5 at 82:17–83:5 ███████████████████████████████████████████████████ its current CEO Safra Catz (*Rimini II*, ECF No. 975-6 at 83:16–84:3); and its own lawyers (ECF No. 1040 at 143:14–18 ("I acknowledge that cloud computing is at issue in *Rimini II* and wasn't at issue in *Rimini I.* ... [In] *Rimini II* we can fight with each other whether cloud constitutes the customer's facilities.")).  In fact, Oracle's in-house counsel ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████ *Rimini II*, ECF Nos. 975-9, 975-10 (emphases added).  Oracle *encourages* its licensees to cloud host (*see Rimini II*, ECF No. 927 at 25–27); Ms. Catz herself stated: ████ ██████████████████████████████████████ *Rimini II*, ECF No. 925-38 at 6.

Rimini's witnesses are in accord, including a professor of computer science at Duke University (ECF No. 1389-2 ¶¶ 143–54 ("Rimini's Process 2.0 is fundamentally different from the processes adjudicated in this case."); *id.* ¶ 156 ████████████████████████ ████████████████████████████████████████████████ an assistant director at the Kellogg School of Management who spent over 18 years consulting with clients on PeopleSoft and JDE implementations (ECF No. 1386-3 ¶ 17 ("Oracle never claimed that cloud hosting infringed its copyrights in *Rimini I*."); *id.* ¶ 27 ("Oracle did not contend in *Rimini I* that in-memory copies (*i.e.*, RAM copies) of Oracle Database constituted copyright infringement.")); numerous Oracle licensees (ECF No. 1386-11 at 20:19–21 (██████████████████████████████████████); *Rimini II*, ECF No. 975-8 at 121:8–122:24 (████████████████); *Rimini II*, ECF No. 992-6 at 152:3–7 (████ ██████████)); and Rimini's competitors (*Rimini II*, ECF No. 975-29 at 83:11–84:15).

This point cannot be reasonably debated—there is fair ground of doubt as to whether Rimini's Process 2.0 is covered by the injunction (or, indeed, whether it is unlawful at all).  As a result, it must be adjudicated in a plenary proceeding.  Here, that separate case (*Rimini II*) has *already* been filed, discovery is *complete*, the Court has ruled on the pleadings, and the parties' merits positions are teed up at summary judgment.  It is difficult to imagine a case that is *less* suited than this one to resolution in summary contempt proceedings.

*TiVo* is an application of the venerable "fair ground of doubt" principle in the particular context of intellectual property injunctions.  Under *TiVo*, if the revised process or product is "more than colorably different" than the adjudicated process or product, there is a fair ground of doubt, and "[c]ontempt is then inappropriate."  646 F.3d at 882; *see also Sure Plus Mfg. Co. v. Kobrin*, 719 F.2d 1114, 1118 (11th Cir. 1983) (defining "more than colorable difference" as "one that gives rise to some fair ground of doubt" that the process is covered by the injunction); *Am. Foundry & Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d 116, 118 (8th Cir. 1935) ("The definition of 'colorable' in relation to such infringement contempt proceedings is stated … as follows: 'Process of contempt is a severe remedy and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct.'").  Since Oracle does not dispute the principle, it cannot be heard to say that it does not apply in copyright cases.

Moreover, in *all* intellectual property cases, the law encourages parties to design around barriers—a point that Oracle never addresses.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 350 (1991) (The Copyright Act "encourages others to build freely upon the ideas and information conveyed by a work.").  The infringing acts, or those not more than colorably different, may be addressed in contempt; all others require a separate proceeding (or at a minimum, a jury trial).

Oracle's efforts to confine copyright cases to "processes" and patent cases to "products" are misplaced.  Opp. at 17.  Many copyright cases involve copying of products or "works," such as those involving copied paintings and songs.  And many patent cases involve a process (or method), including *TiVo* itself.  646 F.3d at 876; *see also*, *e.g.*, *SCVNGR, Inc. v. DailyGobble, Inc.*, 2018 WL 4677816, at *7 (E.D. Tex. May 30, 2018) (denying show cause

motion because defendant changed its process after judgment and the new process was "more than colorably different" from the one found to be infringing). In *SCVNGR*, the court rejected plaintiff's argument that defendant's process changes were "superficial" (2018 WL 4677816, at *2), but did not decide that the new process was lawful. Rather, it held that the issue was not proper for a contempt proceeding. *Id.* at *7. This Court should similarly find that Oracle has not met its burden to show that Process 2.0 is not more than colorably different than Process 1.0, and decide Process 2.0's legality in *Rimini II*.

Oracle argues that courts have "refused" to apply the "more than colorably different" standard in copyright cases, citing two unpublished district court cases. Opp. at 18. One is a patent case involving a contractual term in a settlement agreement that used the "more than colorably different" language; it is simply not relevant here. *Hubbard/Downing, Inc. v. Kevin Heath Enters.*, 2013 WL 12239523 (N.D. Ga. May 30, 2013). Likewise inapposite is *Disney Enterprises, Inc. v. VidAngel Inc.*, 2017 WL 6820015 (C.D. Cal. Sept. 13, 2017), which does not even cite *TiVo*, has never been cited by another court, and involved a motion to clarify (not a contempt motion). There, the court denied defendant's motion to clarify, which sought confirmation that an injunction did not cover a new technology for distribution of Disney movies (for which defendant had no license). *VidAngel* is nothing like this case, where every one of Rimini's customers has a license to use the copyrighted work, it is undisputed that Rimini can lawfully compete with Oracle to provide support (*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 952 (9th Cir. 2018)), and Rimini's Process 2.0 does not copy any Oracle code whatsoever. In any event, other courts *have* applied the "more than colorably different" standard in copyright and other non-patent cases. *See*, *e.g.*, *Sagami v. Palmer Mktg. ENT, LLC*, 2011 WL 13244113, at *4 n.1 (W.D. Wisc. Sept. 13, 2011); *Mitchell v. 3PL Sys., Inc.*, 2013 WL 12129617, at *6 (C.D. Cal. Apr. 8, 2013); *Bianco v. Globus Med., Inc.*, 2017 WL 3895921, at *2 & n.1 (E.D. Tex. Sept. 6, 2017).

Finally, Oracle's argument that *TiVo* is inapplicable because Process 2.0 "does not involve isolated features of new embodiments of its previous copyright violations," but rather involves "continued cross-use and unauthorized copying" and the injunction prohibits those

"acts," is *directly* contrary to the law and this Court's precedent. Opp. at 18. This Court held that the injunction prohibits "only acts that have already been determined to be unlawful, and which have been affirmed on appeal." ECF No. 1164 at 9. Two "acts" were adjudicated in *Rimini I*—local hosting on Rimini's systems and generic environment "cross-use." ECF No. 1323 at 3–6. Those were the *only* two "acts" affirmed by the Ninth Circuit. *Id.* at 8. Cloud hosting and Oracle's new theory of "cross-use" were never adjudicated (or even mentioned) in *Rimini I. Id.* at 10–11. Oracle admits this. First, its lawyer said to this Court: "I acknowledge that cloud computing is at issue in *Rimini II* and wasn't at issue in *Rimini I*." ECF No. 1040 at 143:14–18. Second, it acknowledges in a footnote in its OSC reply brief that its "cross-use" theory is "new" (but it argues that it may nevertheless form the basis for contempt). ECF No. 1401 at 3 n.1. Even if these new theories could be addressed in a contempt proceeding, they would have to be decided by a jury.

*TiVo* is the response to Oracle's argument that a defendant cannot "make minor purported changes to its conduct, then avoid contempt by arguing that an injunction (or trial) did not cover today's precise fact pattern." Opp. at 1. If the changes were truly "minor," then they could be addressed in contempt proceedings. If not, a new proceeding (or at least a jury trial) is required. And *TiVo* explains where to draw the line between "minor" and "major"—*i.e.*, "more than colorably different." If Oracle *really* believed that there was no substantial difference between Process 1.0 and 2.0, then it would *embrace* the *TiVo* standard and make the requisite showing. But it has not (and cannot) make the showing because Processes 1.0 and 2.0 are fundamentally different, and the lawfulness of Process 2.0 must be resolved in *Rimini II*—or, at minimum, before a jury.

## II. CONCLUSION

If the Court issues an order to show cause, then Rimini will be entitled to a jury trial and other procedural protections.

DEFENDANT RIMINI STREET, INC.'S REPLY IN SUPPORT OF MOTION FOR A JURY TRIAL
CASE NO. 2:10-CV-00106-LRH-VCF

DATED:  August 21, 2020

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Eric D. Vandevelde_____

*Attorneys for Defendant*
*Rimini Street, Inc.*