| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>MARK A. PERRY (*pro hac vice*)<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  11101<br>Telephone: 202.955.8500<br>mperry@gibsondunn.com | RIMINI STREET, INC.<br>DANIEL B. WINSLOW (*pro hac vice*)<br>6601 Koll Center Parkway, Suite 300<br>Pleasanton, CA 94566<br>Telephone: 925.264.7736<br>dwinslow@riministreet.com |
| GIBSON, DUNN & CRUTCHER LLP<br>JEFFREY T. THOMAS (*pro hac vice*)<br>BLAINE H. EVANSON (*pro hac vice*)<br>JOSEPH A. GORMAN (*pro hac vice*)<br>CASEY J. MCCRACKEN (*pro hac vice*)<br>3161 Michelson Drive<br>Irvine, CA  92612-4412<br>Telephone: 949.451.3800<br>jtthomas@gibsondunn.com<br>bevanson@gibsondunn.com<br>jgorman@gibsondunn.com<br>cmccracken@gibsondunn.com | RIMINI STREET, INC.<br>JOHN P. REILLY (*pro hac vice*)<br>3993 Howard Hughes Parkway, Suite 500<br>Las Vegas, NV 89169<br>Telephone: 336.908.6961<br>jreilly@riministreet.com<br><br>HOWARD & HOWARD ATTORNEYS PLLC<br>W. WEST ALLEN (Nevada Bar No. 5566)<br>3800 Howard Hughes Parkway, Suite 1000<br>Las Vegas, NV 89169<br>Telephone: 702.667.4843<br>wwa@h2law.com |
| GIBSON, DUNN & CRUTCHER LLP<br>SAMUEL LIVERSIDGE (*pro hac vice*)<br>ERIC D. VANDEVELDE (*pro hac vice*)<br>333 South Grand Avenue<br>Los Angeles, CA  90071-3197<br>Telephone: 213.229.7000<br>sliversidge@gibsondunn.com<br>evandevelde@gibsondunn.com | |

*Attorneys for Defendant*
*Rimini Street, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>                   Plaintiffs,<br><br>      v.<br><br>RIMINI STREET, INC., et al.,<br><br>                   Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>**RIMINI STREET, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS**<br><br><u>**ORAL ARGUMENT REQUESTED**</u><br><br>*<u>PUBLIC REDACTED VERSION</u>* |

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

**TABLE OF CONTENTS**

Page

I. ARGUMENT ................................................................................................................... 1

    A.    Ms. Frederiksen-Cross's Opinions Are Unreliable ............................................. 1

        1.    The "Copying" Opinions Failed to Apply Analytic Dissection .............. 1

        2.    The "Derivative Works" Opinions Applied the Wrong Legal Standard ..................................................................................................... 6

        3.    The "Distribution" Opinions Applied the Wrong Legal Standard .......... 8

    B.    Ms. Frederiksen-Cross's Opinions Are Irrelevant .............................................. 9

II. CONCLUSION ............................................................................................................. 12

i

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF
ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn & Crutcher LLP

Case 2:10-cv-00106-LRH-VCF   Document 1416   Filed 08/21/20   Page 3 of 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)..................................................................................................9

*Antonick v. Elec. Arts Inc.*,
    2014 WL 245018 (N.D. Cal. Jan. 22, 2014) ............................................................................3

*Antonick v. Elec. Arts, Inc.*,
    841 F.3d 1062 (9th Cir. 2016)..................................................................................................8

*Apple, Inc. v. Psystar Corp.*,
    673 F. Supp. 2d 931 (N.D. Cal. 2009) .....................................................................................7

*Atl. Recording Corp. v. Howell*,
    554 F. Supp. 2d 976 (D. Ariz. 2008)........................................................................................9

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002)....................................................................................................2

*Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
    965 F.3d 365 (5th Cir. 2020)....................................................................................................3

*DropzoneMS, LLC v. Cockayne*,
    2019 WL 7630788 (D. Or. Sept. 12, 2019)..............................................................2, 3, 4, 5

*EarthCam, Inc. v. OxBlue Corp.*,
    49 F. Supp. 3d 1210 (N.D. Ga. 2014) ......................................................................................5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..................................................................................................................2

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
    9 F.3d 823 (10th Cir. 1993)..................................................................................................3, 5

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
    964 F.2d 965 (9th Cir. 1992)................................................................................................7, 8

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998)..................................................................................................6

*nCube v. SeaChange Int'l Inc.*,
    732 F.3d 1346 (Fed. Cir. 2013)..............................................................................................10

*Paycom Payroll, LLC v. Richison*,
    758 F.3d 1198 (10th Cir. 2014)................................................................................................3

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF
ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018)..................................................................................2, 3, 4

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020).......................................................................................2, 4

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011).........................................................................................10

**Treatises**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright (2020)............................2, 3, 4

4 William F. Patry, Patry on Copyright (2020)...........................................................................9

iii
RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF
ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn & Crutcher LLP

# I. ARGUMENT

Oracle does not dispute that its Order to Show Cause ("OSC") Motion rests entirely on Ms. Frederiksen-Cross's opinions; that her "contempt" opinions were imported wholesale from *Rimini II*; or that those opinions are subject to *Daubert* scrutiny at this stage. Oracle argues that *Daubert* scrutiny is "less pressing" if this proceeding is tried to the Court (Opp. at 7), implicitly conceding that Ms. Frederiksen-Cross's opinions must be excluded if contempt is tried to a jury, as it should be. ECF No. 1389. Even in a bench trial, Ms. Frederiksen-Cross's opinions should be excluded because they are unreliable and irrelevant. Contrary to Oracle's intimation that by challenging her *methodologies* under *Daubert* Rimini has somehow conceded that she is qualified and that her conclusions are correct (Opp. at 1, 7–8, 11–12), Rimini does *not* agree that Ms. Frederiksen-Cross (who does not hold a bachelor's degree) is qualified or that any of her conclusions have merit. Indeed, Rimini disputes every aspect of her conclusions. *See* ECF Nos. 1327, 1386-1, 1386-2 (Astrachan Reports). But those would be issues for cross-examination only *if* her opinions were admissible. They are not.

Ms. Frederiksen-Cross's opinions are *unreliable* because she applied the wrong legal standards in addressing exclusive rights under the Copyright Act, and they are *irrelevant* because they pertain to unadjudicated conduct (Process 2.0) that is more than colorably different than the conduct tried to the jury and affirmed on appeal (Process 1.0)—an issue that Ms. Frederiksen-Cross failed to analyze and is thus unrebutted. Because her opinions are not admissible, reliance on any of them in this contempt proceeding would be legal error.

## A.    Ms. Frederiksen-Cross's Opinions Are Unreliable

Oracle does not dispute that when the injunction uses terms of art under the Copyright Act—"reproduction," "derivative works," and "distribution"—those terms have their legal meanings. Ms. Frederiksen-Cross, however, failed to apply the correct legal standards for those terms, rendering her opinions methodologically unsound as a matter of law.

### 1.    The "Copying" Opinions Failed to Apply Analytic Dissection

It is undisputed that proof of "copying" under the reproduction right of the Copyright Act has two distinct elements: (1) the fact of copying; and (2) "unlawful appropriation"—that

1

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

is, proof that any copied material was *protected* and *substantial* enough to render two works "substantially similar." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018); *see* 4 Nimmer on Copyright § 13.01[B] (2020). This is necessary because "copyright law does not forbid all copying," *Rentmeester*, 883 F.3d at 1117, and not every portion or element of a copyrighted work is protected. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). Courts must therefore "take care to inquire only whether the *protectible elements, standing alone*, are substantially similar," and "must filter out and disregard the non-protectible elements in making its substantial similarity determination," through analytic dissection (also called the "extrinsic test" or "abstraction-filtration-comparison"). *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis in original); *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020); Mot. at 6–8 & n.2.

Ms. Frederiksen-Cross did not perform this mandatory task. Oracle concedes that for most files she contends were "copied," she did not identify *any* purported Oracle code or expression in the files whatsoever (Mot. at 10 n.3). For a few files, she only identified supposedly "matching" lines of code, but took no steps to filter out unprotected elements. Her failure to perform analytic dissection renders her methodology unreliable as a matter of law. *DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *14 (D. Or. Sept. 12, 2019) (holding that Ms. Frederiksen-Cross's "280 pages of side-by-side computer-generated comparisons" showing "identical or similar lines of code" were insufficient as a matter of law to establish infringement absent "testimony distinguishing unprotectable source code from purportedly protectable source code"); Mot. at 11 (collecting cases excluding experts for failing to perform analytic dissection, *none* of which Oracle addresses in its opposition).

**a.** Oracle contends that analytic dissection is not required where there is "direct evidence of copying." Opp. at 12. But Oracle's premise that there is "direct evidence of copying" is wrong because all Ms. Frederiksen-Cross indicated is that some lines of code in two Rimini files match lines of code in Oracle files; there is no proof that the code was copied, let alone "direct evidence" of copying. *See* 4 Nimmer, § 13.03[F][1][a] ("[T]wo programs that have been created independently may appear similar in many respects."); ECF No. 1392-1

2

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

(Astrachan Reb. Rpt.) ¶¶ 185–91 (explaining why "matching" code is the result of constraints imposed by government requirements and not evidence of copying).

More importantly, Oracle confuses the first element of "copying"—the fact of copying—with the second element—"unlawful appropriation." Matching lines of code may be probative of the *fact* of copying, but they have no relevance to "unlawful appropriation"—*i.e.*, whether any matching code is protectable and whether the similarities in protectable expression are substantial in light of the entire work as a whole. *Rentmeester*, 883 F.3d at 1117.

Thus, courts routinely hold that even where the fact of copying is *established or conceded* (it is not here), a substantial similarity analysis, including analytic dissection, must still be performed. *DropzoneMS,* 2019 WL 7630788, at *14; *Antonick v. Elec. Arts Inc.*, 2014 WL 245018, at *6 (N.D. Cal. Jan. 22, 2014) (finding no infringement as a matter of law despite jury's finding that defendant "copied some of Antonick's code" because no showing of substantial similarity); *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 372, 375 (5th Cir. 2020) (affirming judgment of no infringement where defendant conceded that it "directly and identically" copied 5% of plaintiff's computer schema, but there was no showing of substantial similarity); *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1207 (10th Cir. 2014) (vacating adoption of report that failed to perform analytic dissection because "an infringement analysis does *not* begin and end with 'copying in fact.'"); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 833 & n.10, 842 (10th Cir. 1993) (vacating infringement finding even where defendant's program "was copied from" plaintiff's program because district court failed to analyze whether elements were protectable).

Oracle ignores the "unlawful appropriation" element and all this case law. Oracle attempts to enlist Professor Nimmer to argue that analytic dissection is unnecessary where there is literal copying, Opp. at 13 (quoting 4 Nimmer, § 13.03[A][2]), but Oracle quotes the wrong section of the treatise, which deals with wholesale copying of literary works, not functional software code. As to functional software code specifically, Nimmer explains that even where literal copying is established, the question remains whether the works are "actionably" similar (*id.* § 13.03[F][1][a] & n.280.1), and he explains for 25 pages how that analysis must be

3

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

1  performed by, for example, filtering out code that is constrained by external considerations, target industry practice, computer industry practice, efficiency, or is otherwise not protectable. *Id.* §§ 13.03[F][2]–[3]; *see* ECF No. 1392-1 ¶¶ 182–202 (Astrachan applying this filtering).

Oracle also cites cases purportedly holding that a substantial similarity analysis is not necessary when there is direct evidence of copying (Opp. at 14), but Oracle again conflates the fact of copying and unlawful appropriation. As the Ninth Circuit explained in *Rentmeester*, the term "substantial similarity" has "unfortunately" been used "to describe both the degree of similarity relevant to proof of copying and the degree of similarity necessary to establish unlawful appropriation. The term means different things in those two contexts." 883 F.3d at 1117. The cases Oracle cites use the term in the first context and hold, logically, that where there is admitted evidence of copying (there is not here) one does not need to engage in an analysis of access and similarity in order to prove copying circumstantially. *See Skidmore*, 952 F.3d at 1064 (noting that the plaintiff can prove the fact of copying "circumstantially" by showing access and similarity). But none of those cases hold that the Court can forego an analysis of whether the allegedly "copied" portions of the code are protectable and whether they are substantial in relation to PeopleSoft as a whole.

**b.** Oracle's fallback argument is that Ms. Frederiksen-Cross did perform analytic dissection. That is false. The extent of her analysis was creating computer-generated "side by side" file comparisons to "determine the amount of matching code" (Opp. at 15)—the exact same defective methodology that the *DropzoneMS* court recently held insufficient as a matter of law to establish infringement. 2019 WL 7630788, at *14. She never performed any analysis of whether the alleged "matching code" was protectable, or whether it was constrained (*e.g.*, by government forms or basic logic and efficiency), or whether any protectable code (if any) is substantial in the context of PeopleSoft as a whole. Indeed, neither her Declaration nor her reports even mentions analytic dissection or filtering of unprotectable elements. Oracle cites paragraphs 77–78 of her declaration and 189–193 of her opening report, but those paragraphs opine only that certain code "matches," and contain nothing resembling analytic dissection. For example, in paragraph 77, she opines that the spacing around two terms is the same in both

4

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

files, which she considers to be an "idiosyncrasy" indicative of the fact of copying. It is not, as Professor Astrachan explained (ECF No. 1392-1 ¶ 200), but in any event, spacing has no relevance to whether any of the matching code is protectable. *See Gates Rubber*, 9 F.3d at 845 (noting that errors common to two programs may be probative of "copying as a factual matter," but "do not assist in determining what material is protectable under copyright law").

This exact approach by Ms. Frederiksen-Cross—noting "matching" lines in "side-by-sides," with no analysis of what, if any, code is protectable—was rejected in *DropzoneMS*. 2019 WL 7630788, at *14. Oracle attempts to distinguish *DropzoneMS* because Ms. Frederiksen-Cross's report there was untimely, and it was excluded on that *additional* basis. But Oracle omits that the *DropzoneMS* court went on to hold that even if her report had been timely, *it was insufficient as a matter of law to establish infringement because it contained* "*no filtration analysis.*" *Id.* (emphasis added). The court concluded that "[w]ithout expert testimony distinguishing unprotectable source code from purportedly protectable source code, [plaintiff's] claim fails as a matter of law." *Id.* The same result should apply here.

Oracle also argues that Ms. Frederiksen-Cross "identified many of the protected elements of Oracle's copyrighted screen displays" in opining that Rimini's taking of screenshots of Oracle software is "copying." Opp. at 16. But Ms. Frederiksen-Cross's entire "analysis" consists of two conclusory sentences (not included in her declaration), in which she claims that the "selection and arrangement" of the ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ are "non-trivial portions of protected expression." *Id.* Those are conclusions, not analysis. She failed to discuss any particular screenshot, identify any of those alleged elements, explain why they are expressive, or explain why a screenshot of them would be substantial in relation to PeopleSoft as a whole. *See EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1233 (N.D. Ga. 2014) (a screenshot is "an inanimate sliver of the user interface that is of little substance to the overall copyrighted work" and the burden is on the copyright holder to "show the significance of the screenshots"); *see* ECF No. 1386-2 (Astrachan Supp. Rpt.) ¶ 23.

5

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF
ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

**2.     The "Derivative Works" Opinions Applied the Wrong Legal Standard**

The sole debate regarding derivative works is the "applicable legal standard." Opp. at 17. Oracle contends that Ms. Frederiksen-Cross followed "established authority" in determining that a work is a derivative work if it is designed to modify or extend PeopleSoft software, relies for its operation on PeopleSoft software, or does not operate independently from PeopleSoft components. *Id.* at 5, 18. Applying this standard, Ms. Frederiksen-Cross opines that 100% Rimini-created files—such as its own updates and Dev Instructions, *containing no Oracle code or expression* and containing *only* Rimini code—are derivative works. Mot. at 14; BFC Decl. ¶¶ 14, 29, 83–87, 106, 109. Rimini contends that a work is a derivative work only if it "substantially incorporate[s] protected material from the preexisting work." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998). If Rimini is correct on the law, Ms. Frederiksen-Cross's opinions must be excluded.

Oracle concedes that "[i]n the Ninth Circuit, derivative works must … substantially incorporate protected material from the preexisting work." Opp. at 17 (citing *Micro Star*). Yet Oracle misreads *Micro Star* as somehow not requiring substantial incorporation. In *Micro Star*, the Court held that the accused work *did* substantially incorporate protected material, namely the Duke Nukem story. *Micro Star*, 154 F.3d at 1112. The owner's copyright in the Duke Nukem video game series protected not only the particular code in its game files, but also the protected elements of the Duke Nukem story itself, including its "unique setting, characters, and plot." *Id.* at 1112–13. The accused infringer created additional game levels that copied the game's expressive elements "down to the last detail." *Id.* at 1109, 1111. The Court held that these game levels were "sequels," substantially incorporating expressive elements of the Duke Nukem story, and thus were infringing. *Id.* at 1112. But nothing in *Micro Star* suggests that files that do *not* contain copyrighted expression—*e.g.*, do not copy code nor expressive elements of a creative story—can be derivative works. It states the opposite. *Id.* at 1110–11.

Oracle erects and tears down a straw man, claiming that Rimini argues that "substantial incorporation requires the verbatim incorporation of protected expression." Opp. at 18. That is *not* Rimini's position. "Substantial incorporation of protected material" could be material

6

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

other than verbatim copying of code, such as the Duke Nukem character and story elements in *Micro Star*. Rimini's point is that Oracle's "derivative works" test does not depend on incorporation of protected expression *at all*—verbatim or otherwise—and Ms. Frederiksen-Cross did not identify *any* supposed protected expression in the Rimini files and Dev Instructions that she contends are "derivative works." Oracle likens Rimini's updates and Dev Instructions to "sequels" of PeopleSoft (*id.*), but that analogy fails. "Sequels" are derivative works because they incorporate protected elements from the preexisting work: *e.g.*, characters, settings, plot lines, and stories. Ms. Frederiksen-Cross does not identify any such protected Oracle expression—code or otherwise—in the Rimini files she accuses.

In contrast to the unbroken line of cases holding that a derivative work must "substantially incorporate protected material" (*see* Mot. at 12), there is *no case law* articulating Oracle's standard that a program designed to "modify" or "extend" a copyrighted program or that is "not independent of" a copyrighted program is—by itself—a derivative work regardless of whether it substantially incorporates protected expression. Oracle relies on *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 938 (N.D. Cal. 2009), but that case held that a modified operating system *as a whole*—including the original files and the modified files—was a derivative work. That is because the system *as a whole* substantially incorporates protected expression in the form of all of the preexisting material that was not modified. *See* ECF No. 1392-1 ¶ 43 (Astrachan explaining this "Fundamental Error" by Ms. Frederiksen-Cross, and explaining that derivative work environments, which occur only on clients' systems for the benefit of that client, do not violate the injunction). That principle is unhelpful to Oracle here because Ms. Frederiksen-Cross does not merely opine that modified Oracle environments *as a whole* are derivative works; she opines that Rimini's updates and Dev Instructions—*standing alone*—are derivative works regardless of whether they substantially incorporate any Oracle protected expression. That is not the law, and thus those opinions should be excluded.

Oracle's "extension" and "cannot operate independently" theories of derivative works are also flatly inconsistent with *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 964 F.2d 965 (9th Cir. 1992). In that case, the accused device was a "Game Genie" that was designed to

7

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

be used with a Nintendo gaming system to provide a modified gaming experience, and had no other purpose—it was "useless by itself." *Id.* at 969. Even though the Game Genie extended the functionality of the Nintendo system and could not operate independently, the Court concluded it was *not* a derivative work because it did "not physically incorporate a portion of a copyrighted work." *Id.* at 968–69; *see Rimini II*, Case No. 14-01699, ECF No. 927 at 12–13; *Rimini II*, ECF No. 1164 at 2–4.

Finally, Oracle claims that Ms. Frederiksen-Cross "identified Oracle code" in ▮ files. Opp. at 19; BFC Decl. ¶¶ 77–79, 87. As to those ▮ files, although Ms. Frederiksen-Cross contends that some code in the Rimini files "matches" Oracle code, she performed no filtration analysis to determine whether the code is protectable or substantial in relation to PeopleSoft as a whole, and thus her opinions fail for the reasons stated in Section III.A.1—she has no basis to opine that any *protected* material was "substantially incorporated," and thus no basis to claim they are derivative works. *See Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065–66 (9th Cir. 2016) (equating substantial similarity analysis with "substantially incorporates" standard).

### 3. The "Distribution" Opinions Applied the Wrong Legal Standard

Ms. Frederiksen-Cross's opinions that Rimini violated the injunction through "distributions" are unreliable for two independent reasons.

*First*, she failed to show that any of the purportedly "distributed" works substantially incorporate protectable Oracle expression. Mot. at 15. The files she claims were "distributed" (with one exception, discussed below) are Rimini files that she does not contend contain any Oracle code. *Id.* The injunction only prohibits distribution of *Oracle* software (ECF No. 1166 ¶¶ 3, 7); "distribution" of Rimini's own files is irrelevant. Because Ms. Frederiksen-Cross failed to analyze whether the files contained Oracle expression, her methodology is unsound. Oracle did not respond to this argument because there is no response. *See* Opp. at 19–21.

*Second*, Ms. Frederiksen-Cross's "distribution" opinions are unreliable because she did not apply the legal definition of "distribution." Oracle mischaracterizes the issue as whether Ms. Frederiksen-Cross *stated* the legal standard in her reports. Opp. at 19. But the problem is not that she failed to *state* the standard, it is that she *applied* the wrong standard. Oracle

8

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

concedes that "distribution" as used in the injunction has a specific meaning under copyright law. *Id.* at 20. It also does not dispute, and thus concedes, that Ms. Frederiksen-Cross admitted that when she used the term "distribution" she was not using it in its legal sense, but to mean sending "something from Point A to Point B." Mot. at 16. That ends the matter. Ms. Frederiksen-Cross cannot opine that "Rimini's Ongoing Distribution of PeopleSoft … Software and Support Materials Violates The Injunction" (BFC Decl. at 41) when she is using the word "distribution" in a vastly different sense than the injunction and failed to do any of the analysis required to draw a conclusion under the injunction's meaning of "distribution."

Oracle's discussion of the law regarding "distribution" (Opp. at 20–21) is irrelevant both because Ms. Frederiksen-Cross did not apply that law or analyze any of those issues, and because the generic law Oracle recites (incorrectly) has nothing to do with Ms. Frederiksen-Cross's opinions. In particular, as Rimini explained in its motion and Oracle does not dispute, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Oracle does not dispute that a distribution requires the material to "change hands." *Id.*; Opp. at 20–21. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Opp. at 21 (acknowledging that re-obtaining one's own copy of software is not a distribution). And where, as here, files are made available for retrieval, no "distribution" occurs. 4 Patry on Copyright § 13:11.50 (2020) (those who make a file available in a folder "are not themselves distributing it"); *see also Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 986–87 (D. Ariz. 2008) (distinguishing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001), cited by Oracle). Ms. Frederiksen-Cross did not analyze these issues and has no basis to opine that a "distribution" within the meaning of the injunction occurred.

**B.     Ms. Frederiksen-Cross's Opinions Are Irrelevant**

Not a single act now accused by Oracle was considered by the jury, this Court, or the Ninth Circuit. *Rimini I* concerned Process 1.0. *Rimini II* concerns Process 2.0. Those are fundamentally different processes, as established by a wealth of uncontradicted evidence. ECF

9

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

No. 1392-1 (Astrachan Reb. Rpt.) ¶¶ 17–20, 143–60; ECF No. 1385-2 (Benge Decl.) ¶¶ 5–36; ECF No. 1393 ███████████████████████████████████████. Because Process 2.0 is more than colorably different than Process 1.0, the lawfulness of Process 2.0 must be decided in *Rimini II*, and cannot be resolved in this contempt proceeding. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011). Ms. Frederiksen-Cross's opinions—which concern *only* Process 2.0—are therefore irrelevant.

Aside from arguing that *TiVo* does not apply to copyright cases—which Rimini has debunked elsewhere (ECF No. 1389 at 16–17, ECF No. 1414 at 8–12)—Oracle's only response is that Ms. Frederiksen-Cross "did compare Rimini's '2.0' process to the adjudicated processes." Opp. at 10–11; *see also* OSC Reply at 15. This is an astonishing position for Oracle to take. Ms. Frederiksen-Cross had multiple opportunities to perform a colorable differences analysis, and Rimini raised *TiVo* long ago (ECF Nos. 1225, 1231, 1323), yet she did not conduct that analysis—which requires carefully analyzing what elements of Process 1.0 were "previously contended, and proved" to be infringing, whether those elements "ha[ve] been modified or removed" and the significance of those modifications. *TiVo*, 646 F.3d at 882. Oracle does not even pretend that Ms. Frederiksen-Cross conducted *that* analysis, and the "compar[isons]" to which Oracle now points are not sufficient to discharge its burden under *TiVo*. *nCube v. SeaChange Int'l Inc.*, 732 F.3d 1346, 1349 (Fed. Cir. 2013) (moving party bears the burden to show differences are less than colorable "by clear and convincing evidence").

In contrast, Professor Astrachan performed a detailed colorable differences analysis, examining the features of Process 1.0 that Oracle contended at trial were infringing (local hosting and generic environments) by using Oracle's own proof at trial, showing the undisputed removal of those processes, and explaining the fundamental significance of the changes made by Rimini, including that under Process 2.0, each client has its own Oracle software environment and Oracle software from that environment is not copied to any other environment. ECF No. 1392-1 ¶¶ 143–60. Ms. Frederiksen-Cross submitted a surrebuttal report that *did not respond* to Professor Astrachan's colorable differences analysis or otherwise address the differences between Process 1.0 and 2.0.

Gibson, Dunn & Crutcher LLP

Stretching to find *anything* that might pertain to the *TiVo* inquiry, Oracle points to a handful of paragraphs from various reports served by Ms. Frederiksen-Cross in this proceeding and in *Rimini II*. Opp. at 10–11. But the cited paragraphs do not purport to analyze the *differences* between Process 1.0 and 2.0 and do not come close to satisfying *TiVo*.

Oracle first cites paragraphs 167, 169, and 172 of Ms. Frederiksen-Cross's opening contempt report, and the corresponding paragraphs 74–76 of the BFC Declaration, in which she opines that clients' cloud environments are not, in her opinion, the clients' "facilities." Oracle has conceded, however, that cloud environments did not exist under Process 1.0 and that whether a client's cloud environment is its own computer system was never litigated. ECF No. 1040 at 143:14–18. Ms. Frederiksen-Cross does not compare Process 1.0 "local hosting" to Process 2.0 client-hosted cloud environments, nor does she explain why Rimini's change from shared generic environments on Rimini's systems, to clients each having their own dedicated environments *not* on Rimini's systems is not more than a "colorable" change. She skips over the colorable differences analysis (*TiVo* step 1) and straight to whether, in her opinion, Process 2.0 still infringes (*TiVo* step 2).

Oracle next cites paragraphs 208–211 of the same report, and the corresponding paragraphs 83–84 of the BFC Declaration, but in those paragraphs Ms. Frederiksen-Cross opines only that Rimini continues to "cross-use" Oracle software. There is no discussion whatsoever of the differences between Process 1.0 and Process 2.0. This is critical because to accuse Process 2.0, Oracle and Ms. Frederiksen-Cross came up with a new theory of "cross-use" based on Rimini's re-use of its own knowledge—a theory that would preclude a developer from ever solving the same problem for two different clients. Mot. at 22–23. Oracle attempts to defend the merits of its new theory, *but it does not dispute* that Oracle's new re-use-of-knowledge theory was never litigated in *Rimini I* or affirmed on appeal. Opp. at 9–10.

Oracle also points to three paragraphs from Ms. Frederiksen-Cross's <u>Rimini II</u> reports. *Id.* at 10–11. Those paragraphs also do not provide any analysis of the differences between Process 1.0 and 2.0 and their importance. One paragraph states only that "Rimini did not make significant changes to its support practices related to updates to Oracle software on or around

11

Gibson, Dunn & Crutcher LLP

RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

October 13, 2015." BFC Opp. Decl., Ex. 7 ¶ 592. That is because the transition to Process 2.0 was complete by July 2014, more than a year earlier. Oracle even quotes Ms. Frederiksen-Cross's assertion that Rimini "introduce[d] new methods" of what she contends is "cross-use" (Opp. at 10) without any attempt to show that those "new methods" are not more than colorably different than what was adjudicated in *Rimini I*.

The changes Rimini made to its processes following summary judgment in *Rimini I* to address local hosting and "cross-use" are well-established and indisputable. Regarding local hosting, Ms. Frederiksen-Cross and Oracle concede that Rimini has not locally hosted any Oracle software environments since at least July 2014. ECF No. 1386-13 (BFC Dep. Tr.) at 27:13–15. Regarding "cross-use," none of Ms. Frederiksen-Cross's reports contend that Rimini continued to use generic environments. Oracle argues that Ms. Frederiksen-Cross opined in paragraphs 69–71 of her declaration that City of Eugene is such an environment, but the Court can read those paragraphs and will find no mention of a "generic environment," no contention that any Oracle software was copied from that environment to any other environment, and no comparison of any post-injunction conduct to conduct adjudicated in *Rimini I*.

Ms. Frederiksen-Cross was not Oracle's expert in *Rimini I*. Oracle's expert in that case testified at trial that Rimini committed "cross-use" by using generic environments, and he specifically contrasted that practice with having "an environment for each client," noting that "if one version of the software is used by 10 clients, and you only have one dev environment for the version of the software as opposed to one dev environment for every client who is using the software, you've saved yourself a lot of time, money, and effort." ECF No. 785 at 204:21–205:10. Now that Rimini's Process 2.0 has a development environment for every client—the practice its own expert implied was *not* "cross-use"—Oracle has a new expert and a new knowledge "cross-use" theory. Oracle is entitled to litigate its new theory in *Rimini II*, but that new theory cannot be the subject of this contempt proceeding. And Oracle's expert opinion testimony on that subject—and every other unadjudicated act—is therefore irrelevant.

## II. CONCLUSION

For the foregoing reasons, Ms. Frederiksen-Cross's opinions should be excluded.

12
RIMINI'S REPLY ISO MOTION TO EXCLUDE DECLARATION AND OPINIONS OF
ORACLE'S EXPERT, BARBARA FREDERIKSEN-CROSS
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

Dated: August 21, 2020

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Eric D. Vandevelde*
　　　　Eric D. Vandevelde

*Attorneys for Defendant
Rimini Street, Inc.*