**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,

               Plaintiff,

vs.

RIMINI STREET, INC., a Nevada corporation,

               Defendant.

2:10-cv-0106-LRH -VCF

**Report and Recommendation**

MOTION FOR SANCTIONS PURSUANT TO RULE 37 [ECF No. 1359]

Before the Court is plaintiffs Oracle USA, Inc., Oracle America Inc., and Oracle International Corporation's (collectively "Oracle") motion for sanctions pursuant to Rule 37. (ECF No. 1359). The Court recommends denying the motion.

**I.  Background**

Oracle alleges that defendant Rimini Street Inc. ("Rimini") spoliated evidence and seeks sanctions pursuant to Federal Rule of Civil Procedure 37. (ECF No. 1359). Oracle argues that during the injunction compliance period, Rimini used an Automated Framework subprogram called TransferFiles, "to copy PeopleSoft files from Rimini's systems to customer-associated environments." (*Id.* at 12.) Oracle argues that Rimini used a program that destroyed a certain number of files it distributed using TransferFiles. (*Id.*) Oracle argues, "there is no way to determine whether the files Rimini produced are the same as the files it distributed to customers." (*Id.* at 17.)

Oracle argues in its motion that Rimini has a history of spoliating evidence. (*Id*. at 17-18 and 24, citing to ECF No. 466). Oracle concedes that Rimini immediately changed their procedure once Oracle sent them a letter about this issue, and since October 2019 Rimini modified its, "TransferFile tool to

1

1   preserve the intermediate, duplicate copies at issue[.]" (ECF No. 1359 at 18). Oracle asks that as

2   spoliation sanctions, the Court should draw a rebuttable presumption that the information contained in

3   the spoliated files was unfavorable to Rimini." (*Id.*)

4        Rimini argues in its response that, "[w]hen a Rimini engineer uses TransferFiles to transmit

5   such a file to a client, it creates a new copy on the client's system while retaining Rimini's

6   original file." (ECF No. 1372 at 6). Rimini argues that it has used TransferFiles since 2013, that Oracle

7   knew about the TransferFiles subprogram, and that Rimini changed the program as soon as Oracle raised

8   the issue. (*Id.*) Rimini argues that, "Oracle objects only to Rimini's alleged failure to preserve the

9   transitory [redacted] copy (which typically exists for a matter of seconds)—even though the result of the

10  TransferFiles process is (at least) two identical copies of a file where only one previously existed." (*Id.*)

11  Rimini states that, "[t]he copy/paste functionality in a word-processing program is analogous. When a

12  user copies text from one document to another, the text is first copied to an intermediate "clipboard" in

13  the computer's memory, from which it can then be pasted to its destination. The original copy remains,

14  in addition to the newly created duplicate; but the transitory copy on the clipboard is not retained in the

15  ordinary course." (*Id.* at 6-7.)  Rimini argues that since the absence of clipboard copies in discovery

16  would not constitute spoliation, its actions via TransferFile prior to Oracle's letter should not be

17  sanctionable. (*Id.* at 7.)

18       Rimini argues that because the files were transitory duplicates, that it did not know, nor could it

19  have reasonably known, that Oracle would seek these temporary files in discovery. (*Id.*) Rimini states

20  that it recovered most of the temporary files Oracle claims were spoliated and that it produced the newly

21  produced temporary files after October 2019 through the end of discovery. (*Id.*) Rimini argues that

22  although the Court found that it spoliated evidence in the past, that was seven years ago and does not

23  constitute a pattern. (*Id.*)

24       Rimini argues that Oracle's motion is untimely because it waited until long after discovery

25

1    closed to bring the motion. (*Id*. at 18). Rimini also argues that Oracle could have brought this issue to

2    the Court's attention during the discovery period so that the Court could have fashioned a remedy if

3    needed. (*Id.* at 19). Rimini argues that one example of a potential remedy could have been to allow,

4    "Oracle to serve (additional) limited subpoenas to Rimini's clients to obtain the additional copies of the

5    transferred files from the client's systems[.]"

6         Oracle argues in its reply that, "there is no way to know whether the files were identical because

7    Rimini destroyed them." (ECF No. 1376 at 8, emphasis omitted). Oracle also argues that Rimini

8    mischaracterizes the files at issue as transitory; it argues that the files are more analogous, "to

9    attachments stored in the 'sent' folder of an email account." (*Id*.) Oracle argues that Rimini's actions

10   are, "akin to the email user's developing and running an email deletion program that automatically and

11   continuously deletes all sent emails." (*Id*.) Oracle also argues that, "Rimini's claim that Oracle

12   previously acknowledged that Rimini's production of a single copy of each transferred file, along with a

13   list of the clients that received each file, would be a fair and proportional way for Rimini to satisfy its

14   discovery obligations grossly mischaracterizes Oracle's position." (*Id*. at 12, internal citations and

15   emphasis omitted.) Oracle argues that since, "these are the files Rimini actually sent to customers, they

16   were central to determining Rimini's Injunction compliance[.]" (*Id*.) Oracle argues there was no need to

17   seek relief during the discovery period because, "Rimini's destruction of the documents" caused

18   prejudice to Oracle, and the Court, "could not have ordered Rimini to reverse the deletion." (*Id*.)

19        On September 3, 2020, the Court held a video status hearing to determine four preliminary

20   issues. (See ECF Nos. 1420 at 3-4 and 1425). The order setting the status hearing also stated that, "[t]he

21   parties will also have an opportunity to clarify their respective positions regarding the issues of fact [ ]."

22   Regarding the first, third, and fourth issues, the parties agreed that: (a) there is a reliable record

23   regarding the list of Rimini's clients that received each file; (b) that the Court need not set an in-person

24   evidentiary hearing to make factual findings regarding the nature of the files and whether the files could

25

1    have been restored or replaced through additional discovery; and (c) that the Court could decide this

2    motion on the briefing without holding an evidentiary hearing. (ECF No. 1425). The parties did not

3    agree regarding the second preliminary issue: whether the parties believe that re-opening limited

4    discovery could solve the issue of whether the files can be restored or replaced, pursuant to Federal Rule

5    of Civil Procedure 37(e).

6        Oracle argued at the status hearing that there was no need to take any limited discovery regarding

7    the lost documents from Rimini. Oracle argued that taking third party discovery would delay the

8    proceedings by approximately six months because of the response times. Oracle also argued that there

9    was no guarantee that what currently exists in the files of the customers will be that exact same ESI.

10   Rimini has no control over the materials on the customers' sites.  Oracle cannot be certain that those

11   documents remain in the possession of the customer in an unaltered form. Oracle argued that customer

12   discovery might not provide it with the exact material that is the subject of the spoliation motion.

13       Rimini argued that it produced copies of most of the allegedly missing ESI, but to the extent that

14   there are missing files, Oracle could have brought the motion sooner so that the Court could have

15   fashioned a remedy, but instead Oracle waited eight months after its last correspondence with Rimini on

16   this issue to file its motion for spoliation. Rimini also argues that any files Oracle alleges are missing

17   could exist and would be easy to find. For example, Rimini noted that six missing files at issue were sent

18   to only one client. Rimini stated that it would not object to, and would help facilitate, allowing Oracle to

19   serve limited third-party subpoenas. Rimini argued that responses to third-party subpoenas took six

20   months in the past because the subpoenas were broad, but that narrow third-party subpoenas, such as

21   would be appropriate here, would not cause a long delay. Rimini argued that allowing narrow third-party

22   discovery would cure the issue.

23       Rimini also filed a demonstrative exhibit before the hearing which outlines Rimini's positions

24

25

4

1    regarding the issues of fact. (See ECF No. 1421). Oracle filed a response[1] to the demonstrative exhibit

2    after the hearing to rebut Rimini's positions. (ECF No. 1426). Rimini filed a reply to Oracle's response

3    that notes that demonstrative exhibits are typically handed out in Court at the hearing and that Rimini

4    only filed the demonstrative exhibit before the hearing because the parties would be appearing on video.

5    **II.     Discussion**

6    Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve

7    property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner,*

8    *LLP,* 590 F.3d 638, 649 (9th Cir. 2009). Federal Rule of Civil Procedure 37(e) establishes the necessary

9    findings to support curative measures for spoliation of electronically stored information.

10   Rule 37(e) states in part:

11
12   > If electronically stored information that should have been preserved in the
     > anticipation or conduct of litigation is lost because a party failed to take reasonable
13   > steps to preserve it, and it cannot be restored or replaced through additional
     > discovery, the court: (1) upon finding prejudice to another party from loss of the
14   > information, may order measures no greater than necessary to cure the prejudice[.]

15   See Federal Rule of Civil Procedure 37(e),(e)(1).

16   A court may then impose sanctions under Rule 37(e) only if it finds "(1) [the party] failed to

17   preserve ESI 'that should have been preserved' in anticipation or conduct of litigation; (2) the

18   information was lost because [the party] failed to take reasonable steps to preserve it; (3) the ESI cannot

19   be restored or replaced; and (4) the plaintiffs were prejudiced by the loss." *Small v. Univ. Med. Ctr.*, No.

20   2:13-cv-0298-APG-PAL, 2018 U.S. Dist. LEXIS 134716, at 236-37 (D. Nev. July 31, 2018).

21

22

23
     ---
24   [1] Oracle's response is not fashioned as a motion, but Oracle attached a proposed order to strike Rimini's
     demonstrative exhibit. The Court declines to construe Oracle's response as a motion and will not strike
     the demonstrative exhibit, but the Court did review and consider the facts and arguments both parties
25   presented.

Parties are not required to "preserve each instance of relevant electronically stored information":

> ESI is maintained in a wide variety of formats, locations, and structures. Many copies of the same ESI may exist in active storage, backup, or archives. Computer systems manage data dynamically, meaning that the ESI is constantly being cached, rewritten, moved, and copied. For example, a word processing program usually will save a backup copy of an open document into a temporary file every few minutes, overwriting the previous backup copy. In this context, imposing an absolute requirement to preserve all ESI would require shutting down computer systems and making copies of data on each fixed disk drive, as well as other media that normally are used by the system.

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 112 (2018).

A court may not sanction a party for spoliation under FRCP 37(e) if the parties can restore or replace the lost ESI through feasible means. See 2015 Advisory Committee Notes to FRCP 37(e). Courts have declined to award sanctions for deleted ESI where other avenues of discovery could "replace" it by revealing the same information that the deleted ESI would have provided. See, for example, *Oracle Am., Inc. v. Hewlett Packard Enter. Co*., 328 F.R.D. 543, 552-54 (N.D. Cal. 2018) (Court did not sanction Oracle regarding missing documents, finding no loss when missing documents could be reproduced from other sources or were produced from other sources, and that loss is a "threshold inquiry"); see also *Adams AV Select Invs., LLC v. Klein*, 2020 WL 2425715, at 5 (D. Del. May 12, 2020) (no sanctions warranted where emails were "forwarded to [a different] account or sent to other parties"); see also *Eshelman v. Puma Biotechnology, Inc*., 2017 WL 2483800, at 5 (E.D.N.C. June 7, 2017) (Despite deleted internet browser history that could not be restored, the Court declined to order sanctions in part because the plaintiff could seek information about the same internet searches performed through deposition testimony).

Other courts have declined to award sanctions where the moving party failed to take discovery to try to replace the deleted ESI. See *Best Payphones, Inc. v. City of New York*, No. 1-CV-3924 (JG) (VMS), 2016 WL 792396, at 4 (E.D.N.Y. Feb. 26, 2016), aff'd as modified sub nom. *Best Payphones,*

6

1   *Inc. v. Dobrin*, 409 F. Supp. 3d 130 (E.D.N.Y. 2018)(Court denied Rule 37 sanctions where the movants

2   failed to request copies of the deleted ESI from third parties); see also *Mfg. Automation & Software Sys.*

3   *v. Hughes,* No. 2:16-cv-08962-CAS(KSx), 2018 U.S. Dist. LEXIS 73424, at 18 (C.D. Cal. Apr. 30,

4   2018)(The Court found that, "that the proper procedure with respect to requesting Rule 37(e) sanctions

5   would have been for defendants (1) to file a motion to compel any missing electronically store

6   information and (2) in the event they could not obtain the missing emails from plaintiff or through a

7   court order, to subpoena missing emails from alternate sources.").

8         Rule 37 does not contain an express time limit for filing a motion for sanctions. Courts have

9   "identified a number of factors that can be used to assess the timeliness of spoliation motions."

10  *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506-08 (D. Md. 2009) (collecting cases); see also

11  *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008). Relevant to Oracle's motion, "courts must

12  give consideration to the explanation of the moving party as to why the motion was not filed earlier."

13  *Wakefield v. ViSalus, Inc.*, No. 3:15-CV-1857-SI, 2019 WL 1411127, at 3 (D. Or. Mar. 27,

14  2019)(internal citation omitted); see also *Long*, 561 F. Supp. 2d at 91 (characterizing factors governing

15  timeliness sanctions motion as "when the movant learned of the discovery violation, how long he waited

16  before bringing it to the court's attention, and whether discovery has been completed").

17        The parties present dueling analogies regarding the missing ESI. The parties also do not agree

18  regarding the number of missing files, but the number of missing documents is irrelevant to this

19  analysis.

20        I conclude that Rimini's analogy, that the missing files are mere transitory, intermediate files

21  (like the transitory copy of words on the clipboard in a word processing application when a user

22  copies/pastes from one document to another) is a credible and good-faith explanation regarding how

23  Rimini's engineers use TransferFiles to transmit files to a client, and how it creates a new copy on the

24  client's system while retaining Rimini's original file. Since I conclude that the missing files are

25

1  transitory copies, I also conclude that Rimini did not have an obligation to preserve each instance of

2  relevant electronically stored information. This is compounded by the fact that the transitory files were

3  duplicative of the files that already existed on Rimini's (and the client's) systems.

4  Even assuming *arguendo* that Oracle's analogy (that the missing ESI is more akin to deleted

5  emails) is correct, its motion for sanctions would still fail because Rimini has not lost any ESI pursuant

6  to the plain language of Rule 37(e). The parties agree that there is a reliable list of clients that Oracle

7  could have subpoenaed during the discovery period: ESI is not lost if it is available from another source

8  or if it "exists in multiple locations." See 2015 Advisory Committee Notes to FRCP 37(e). Oracle could

9  have sought the missing documents from alternate sources (Rimini's clients).

10  Oracle did not attempt to take third-party discovery during the discovery period to replace any of

11  the missing ESI at issue. The purpose of the third-party discovery would have been to compare customer

12  copies of the files received from Rimini with those produced by Rimini in discovery. Oracle cited delay

13  (noting that responses from third parties have taken about six months in the past) as one of the reasons it

14  did not take third-party discovery, yet it waited eight months from its last correspondence with Rimini

15  regarding this issue to file the instant motion. The timing of Oracle's motion, long after the close of

16  discovery, and its blanket rejection of the Court's (reluctant) invitation regarding potentially re-opening

17  discovery on this issue, supports a finding that the documents at issue are not "lost," as required by Rule

18  37(e).

19  Oracle also argued that there was "no guarantee" that Rimini's clients would have unaltered

20  versions of the ESI it seeks, but there is never any guarantee that a third-party, who has no obligation to

21  preserve ESI, would have missing ESI. The purpose of taking discovery is seek the truth. If a copy

22  existed in another location, this would have cured the issue. There is also no evidence that Rimini

23  engaged in bad faith as it had been open and honest with Oracle regarding its TransferFiles subprogram

24  for many years and it changed the program as soon as Oracle raised the issue. Rimini also offered to

25

8

facilitate in helping Oracle seek additional discovery from its own clients. Oracle was not diligent in its obligation to take discovery before seeking sanctions. The missing ESI could be reproduced from other sources, but Oracle told the Court it does not want to re-open discovery to test its theory or cure the issue.

Oracle has not shown that any ESI was lost within the meaning of Rule 37.  Since Rimini did not have an obligation to preserve the transitory ESI at issue here, Rimini took reasonable steps to preserve evidence (i.e. the duplicates it maintained on its systems and produced to Oracle). Loss is a threshold requirement for sanctions.  It is not necessary to determine what the remedy for the loss of any ESI should be.

The Court recommends denying Oracle's motion.

Accordingly,

IT IS RECOMMENDED that Oracle's motion for sanctions pursuant to Rule 37 (ECF No. 1359) be DENIED.

DATED this 21st day of September, 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE