UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>ORDER |

Oracle USA Inc., Oracle America, Inc., and Oracle International Corporation (collectively "Oracle") objects to Magistrate Judge Ferenbach's order related to defendants' claim that certain discovery is protected by attorney-client privilege. ECF No. 1311, 1313-s.[1] Rimini Street, Inc., and Seth Ravin (collectively "Rimini") timely responded. ECF Nos. 1317, 1319-s. Both parties also filed motions to seal their respective briefing. ECF Nos. 1312, 1318. For the reasons contained within this Order, the Court overrules Oracle's objections and grants the parties' motions to seal.

---

[1] The parties filed portions of their briefing under seal. Due to the nature of the sealed material, the Court grants the parties' requests to seal. *See* Part III.B. While the Court would prefer to keep all the sealed information confidential, some of it is necessary to resolve the pending motion. The Court will therefore include the information unredacted in this Order where appropriate. The Court recognizes that the parties have privacy interests in the confidential information, but the public has an even greater interest in the reasoning behind the Court's Order. The Court will refer to the sealed pleadings with an "-s" designation and, for clarity, will cite to the sealed document for pinpoint citations unless otherwise noted.

## I. BACKGROUND

Oracle develops, manufactures, and licenses computer software, particularly Enterprise Software Programs. Unlike traditional software, entities interested in purchasing Oracle's software do not purchase the software outright, but rather purchase a license to use the software throughout the duration of the license agreement. Also, unlike traditional software that is installed on a single computer, enterprise software is hosted on servers that allow everyone within the organization to access it simultaneously. One of the key features of enterprise software is its customizability; the software can be modified to fit the specific needs of the organization licensing it. Enterprise software is routinely updated with service packs and patches that increase functionality and performance, correct and fix bugs, and improve security. Oracle provides this support service to its licensees for an additional cost on top of the licensing fees, but the licensees can and often do seek third party service providers, such as Rimini, to perform that service instead.

Oracle first sued Rimini in 2010, alleging that Rimini infringed several of Oracle's copyrights when it, *inter alia*, used work that it completed for one client for the benefit of other clients, which Oracle claimed was a violation of its software copyrights. Following the filing of dispositive motions, the Court granted summary judgment to Oracle on some of its copyright infringement claims, the key finding being that Rimini violated the "facilities restriction" within PeopleSoft's standard licensing agreement when it hosted its clients' development environments on its own computer systems, a process called "local hosting." *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F.Supp.3d 1086, 1096–98 (D. Nev. 2014). Later after a month-long trial, a jury found in favor of Oracle on other copyright infringement claims related to Oracle's J.D. Edwards and Siebel software.

On appeal, the Ninth Circuit affirmed both this Court's grant of summary judgment and all of the jury's verdict on infringement violations under the Copyright Act, only reversing regarding violations of the California Computer Data Access and Fraud Act ("CDAFA") and the Nevada Computer Crimes Law ("NCCL"). *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 962 (9th Cir. 2018). The Ninth Circuit also upheld this Court's decision to grant Oracle the "full costs" of the litigation, which included expert witness fees, e-discovery expenses, and jury consultant fees.

*Id*. at 965–66. The Supreme Court granted certiorari on the latter issue, reversing the Ninth Circuit and holding that the Copyright Act only allows a district court to authorize awards for litigation expenses expressly listed in the costs statute. *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873 (2019).

Prior to the Supreme Court's ruling in March 2019, this Court granted Oracle's motion for a permanent injunction, which prevents Rimini from continuing the practices which prompted Oracle's lawsuit. ECF No. 1164. On February 27, 2019, Oracle filed a motion to reopen discovery to determine if Rimini had been complying with this court's permanent injunction. ECF No. 1199. Magistrate Judge Cam Ferenbach granted Oracle's motion, and subsequently, Oracle filed several motions to compel.[2] ECF Nos. 1237, 1290. Following voluminous briefing and oral argument, Judge Ferenbach granted in part and denied in part Oracle's motions to compel on September 3, 2019, and January 22, 2020. ECF Nos. 1250, 1307.

Currently pending before the undersigned is Oracle's objections to Judge Ferenbach's January 22 ruling, which in part, denied Oracle's motion to compel Rimini to produce draft "Dev Instructions" contained within a file folder named "For Legal Review – Privileged." ECF Nos. 1311, 1313-s. Dev Instructions are technical documentation that Rimini's engineers create to memorialize how they solved a problem or created a fix. ECF No. 1310 at 34-35, 46-47. At the discovery hearing, Oracle argued that these draft documents are not privileged because: (1) Rimini makes a "blanket privilege objection," without providing either a privilege log or redacted documents; (2) that Rimini has failed to make a showing that every withheld document contains attorney-client communications and that the primary purpose of creating the withheld documents was to obtain legal advice; (3) that due to the highly technical nature of the document a lawyer would not be able to provide any legal advice on it; (4) that "Rimini has developed a system to place these drafts in a legal folder in a way that really attempts to hide what's already been a violation of the injunction;" and (5) that any edits to the final Dev Instructions were not substantive edits. *Id.* at 36-42. The parties represented to the court that Rimini had disclosed both the draft and

---

[2] While the parties were engaged in this discovery dispute, on August 16, 2019, the Ninth Circuit upheld the majority of the permanent injunction and the grant of attorney's fees to Oracle. *Oracle USA, Inc. v. Rimini Street, Inc.*, 783 Fed. Appx. 707, 2019 WL 3854259 (9th Cir. Aug. 16, 2019) (unpublished).

final Dev Instructions that went to Rimini's clients, but what Oracle specifically wanted were the withheld drafts that had not been sent to or used with clients. *Id.* at 42.

Rimini argued that while there is a company policy that no Oracle code is to appear in the Dev Instructions, in order to ensure this policy is followed and to comply with the injunction, Rimini created a legal review process, during which its lawyer, who reads code and has a technical background, reviews the Dev Instructions before they are sent to or used with clients. *Id.* at 47-48. Rimini argued that "[w]hen a developer creates a draft Dev Instruction, that is the communication. It doesn't matter that it's code, the communication is the provision of it to counsel. . . .[The engineer] is going to . . . counsel at Rimini and saying, 'Please look at this code and tell me your legal opinion about whether or not this implicates injunction issues or other compliance issues.'" *Id.* at 49. Rimini further argued that this is not a situation where Rimini's counsel is acting in both a business and a legal capacity, but rather, they are "wearing their pure legal hat." *Id.*

Following the parties' argument, Judge Ferenbach ruled from the bench that:

> [A]ssuming everything really from your point of view, from Oracle's point of view, that what Rimini is doing is taking steps to comply with the injunction, and they're using lawyers to do that . . ..
> . . .
> So I find that the claim of attorney-client privilege in this set of circumstances where there's a draft of a Dev Instruction to deal with a situation, and that they have taken an extra step to make sure they're not violating the injunction when they go ahead and send it off to the customers, that that's an appropriate attorney-client interaction.
> It is a communication to an attorney for advice. And so those draft Dev Instructions, as long as they weren't sent out to anybody beyond the copy, will not be produced.

*Id.* at 54. Judge Ferenbach further declined to order Rimini to produce a privilege log or produce the drafts with redactions, finding that:

> [B]ecause I think the point here is that when the engineers send the draft to the lawyer, that whole thing is -- that's the communication from the client to the attorney to get legal advice. So to me the whole draft is a privileged communication, and, you know, it's part of the process so a redaction doesn't make any sense. I think that's what the record establishes.

*Id.* at 55. Accordingly, the court denied Oracle's motion to compel. *Id.* It is on this record that Oracle objects to Judge Ferenbach's ruling. ECF No. 1311, 1313-s. Rimini timely responded to these objections. ECF Nos. 1317, 1319-s.

4

## II.   LEGAL STANDARD

A magistrate judge may decide non-dispositive pre-trial matters, and these orders generally operate as a final ruling. FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). But if a party timely objects to the magistrate judge's order, a district court judge will review the order and "set aside any part . . . that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A); LR IB 1-3. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin v. Cty. of Kern*, Case No. CV-F-07-026 OWW/TAG, 2008 WL 4217742, at *1 (E.D. Cal. Sept. 11, 2008) (quoting *DeFazio v. Wallis*, 459 F.Supp.2d 159, 163 (E.D.N.Y. 2006)). In reviewing orders on discovery disputes, the court applies the deferential abuse-of-discretion standard, reversing only if the magistrate judge abused his or her broad discretion. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007); *see also Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (articulating that a judge abuses his or her "discretion only when [their] decision is based on an erroneous conclusion of law or where the record contains no evidence on which [they] rationally could have based that decision."). Discovery motions are non-dispositive motions within the scope of Rule 72(a), and thus, subject to the "clearly erroneous or contrary to law" standard of review. *See Rockwell Int'l, Inc. v. Pos-A-Traction Indust. Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983) (*per curiam*).

## III.   DISCUSSION

### A. Oracle's objections to Magistrate Judge Ferenbach's order related to Rimini's claim of attorney-client privilege are overruled.

After reviewing Oracle's objections, the parties' memoranda, and other relevant matters in the record pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure Rule 72(a), and Local Rule IB 3-1, the Court is satisfied that Magistrate Judge Ferenbach's order is neither clearly

erroneous or contrary to law. As a preliminary matter, all of Oracle's arguments made before Judge Ferenbach at the hearing, are simply reiterated here today.

"The attorney-client privilege is the oldest of the privileges for confidential communications," and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citations omitted). For the privilege to apply, Rimini must demonstrate that documents adhere to the eight essential elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 n.2 (9th Cir. 1992) (internal quotation and citations omitted). It is Rimini's burden, as the party asserting the privilege, to "make a *prima facie* showing that the privilege protects the information the party intends to withhold." *Id.* at 1071.

Based on the record, Judge Ferenbach considered the evidence and ruled that Rimini had met its burden of proving these elements. He concluded that the engineers drafting the Dev Instructions seek legal advice, from Rimini's in-house counsel, through the legal review process. Judge Ferenbach considered evidence that Rimini's in-house counsel reads code and has technical expertise that allows her to provide legal advice related to the technical Dev Instruction documents. He specifically ruled that this interaction was "appropriate attorney-client" communication, and that the communication is for the specific purpose of the client getting legal advice from its counsel to ensure compliance with the injunction. Judge Ferenbach also heard argument and reviewed evidence that access to the draft Dev Instruction files is limited to the engineers who write the documents and the counsel that review them.

Oracle asserts that Rimini has made an improper "blanket objection" to production of the draft Dev Instruction and failed to produce a privilege log. The Court agrees that "blanket objections" are generally improper and that "any privilege objection should be specific with respect to documents or other communications." *In re Imperial Corp. of America*, 174 F.R.D. 475,

6

477 (S.D. Cal. 1997). However, the Court disagrees that such documentation *must* be in the form of a privilege log. *See In re Grand Jury Investigation*, 974 F.2d at 1071 (citing *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989)) (reiterating that the privilege log is simply one of the ways "by which a party could protect its confidential communications without frustrating the prosecutor's legitimate inquires."); *In re Imperial Corp. of America*, 174 F.R.D. at 477 (citing FED. R. CIV. PRO. 26(b)(5)) ("[N]o where in Fed.R.Civ.Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required, if a party seeks to withhold documents based on privilege or work product."). And Oracle cites no case law that states such. Rather, the Advisory Notes to Federal Rule of Civil Procedure 26 provide that a detailed privilege log "may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." FED. R. CIV. P. 26(b)(5) advisory committee's notes to 1993 amendment.

Here, Judge Ferenbach considered the assertion of privilege based on a category of documents: draft Dev Instructions contained in a file folder labeled "For Legal Review – Privileged." And specific discussion occurred during the hearing regarding the volume of the records. In his discretion, Judge Ferenbach determined that a privilege log was not needed to formulate his ruling and that the declarations provided were sufficient. This Court will not second guess that decision as it is not contrary to any law or federal rule of this Court. *See Dole*, 889 F.2d at 890 (9th Cir. 1989) ("The district court is in a better position than this court to choose [the means by which it determines the privilege] after hearing from the parties.").

Next Oracle argues that the draft Dev Instructions cannot be privileged because they are not for the primary purpose of securing legal advice. As courts in this District have previously noted, the Supreme Court in *Upjohn* established that for the attorney-client privilege to apply, "the communications at issue must have been made for the purpose of securing legal advice.*" Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628 (D. Nev. 2013) (citing *Upjohn*, 449 U.S. at 394). And, "when dealing with communications to or from in-house counsel, many courts have found that in order for a communication that pertains to both business and legal advice to be considered privileged, the '*primary purpose*' must be to obtain or give legal advice." *Id.* (emphasis added)

7

(collecting cases). Magistrate Judge Lean in *Henderson Apartment Venture, LLC v. Miller*, articulated the primary purpose standard within the context of corporate communications:

> [W]hen the primary purpose of the communication is [to] discern the legal ramifications of a potential course of action, that communication is for a 'legal' purpose. . . . Communications made between in-house counsel in his or her capacity as such and employees in the scope of their employment, must be made with knowledge that they are speaking to in-house counsel for the purpose of securing legal advice.

Case No. 2:09-cv-01849-HDM-PAL, 2011 WL 1300143, at *9 (D. Nev. March 31, 2011) (quoting *Premiere Digital Access Inc. v. Central Telephone Co.*, 360 F.Supp.2d 1168, 1174 (D. Nev. 2005)).

The parties specifically argued this point during the hearing and Judge Ferenbach determined that: "I think the point here is that when the engineers send the draft to the lawyer, that whole thing is -- that's the communication from the client to the attorney to get legal advice. . . . So I find that the claim of attorney-client privilege in this set of circumstances where there's a draft of a Dev Instruction to deal with a situation, and that they have taken an extra step to make sure they're not violating the injunction." Judge Ferenbach reached this conclusion after reviewing the record and hearing argument from the parties, including Oracle's argument that Rimini was attempting to "cover-up" violations of the injunction. This determination is consistent with the Supreme Court and this District's precedent for considering the privilege in instances of employee agent communication with counsel on behalf of the corporation. Therefore, the Court cannot find Judge Ferenbach's order was contrary to law or clearly erroneous.

Given this record, the Court finds that Judge Ferenbach properly concluded that Rimini had met its burden of establishing a *prima facie* showing of the privilege. No part of this ruling is contrary to law or clearly erroneous. Accordingly, the Court overrules Oracle's objections and affirms Judge Ferenbach's ruling.

**B. The parties' motions to seal (ECF Nos. 1312 & 1318) are granted.**

The Court is acutely cognizant of the presumption in favor of public access to papers filed in the district court. *See Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). With non-dispositive motions, this presumption is rebutted by a showing that the material to be filed under

seal is being done pursuant to a valid protective order. *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1135 (9th Cir. 2005) (citing *Philips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)).

Oracle argues that its objections should remain under seal because good cause warrants preserving the secrecy of the redacted material: the redacted portions reflect information Rimini has designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the operative protective order (ECF No. 55) or under the protective order in *Rimini Street, Inc. v. Oracle International Corp.*, Case No. 2:14-cv-01699-LRH-DJA. ECF No. 1312. Rimini likewise argues that the redacted information contained within its response to Oracle's objections reflect information protected by court order, proprietary technical processes and how Rimini serves clients, and Magistrate Judge Ferenbach already sealed the same information contained within the underlying briefs, declarations, and exhibits (ECF No. 1307). ECF No. 1318. The Court agrees with the parties and Judge Ferenbach and finds that both Oracle's and Rimini's briefing are to remain under seal because the information is protected by protective order and good cause warrants maintaining the secrecy.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED that Oracle's objections to Magistrate Judge Ferenbach's order related to Rimini's claim of attorney-client privilege (ECF Nos. 1311, 1313-s) are **OVERRULED** and the Court **AFFIRMS** Judge Ferenbach's Order**.**

IT IS FURTHER ORDERED that Oracle's motion to seal its objections (ECF No. 1312) is **GRANTED** *nunc pro tunc*.

IT IS FURTHER ORDERED that Rimini's motion to seal its response to Oracle's objections (ECF No. 1318) is **GRANTED** *nunc pro tunc*.

IT IS SO ORDERED.

DATED this 25th day of September, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE