1                   UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
2      BEFORE THE HONORABLE CAM FERENBACH, MAGISTRATE DISTRICT JUDGE
                             ---o0o---
3

4      ORACLE USA, INC., a Colorado      :
       corporation; ORACLE AMERICA,      :
5      INC., a Delaware corporation;     :
       and ORACLE INTERNATIONAL          :
6      CORPORATION, a California         :
       corporation,                      :
7                                        :
                    Plaintiffs,          : No. 2:10-cv-106-LRH-VCF
8                                        :
              -vs-                       : September 3, 2020
9                                        :
       RIMINI STREET, INC., a Nevada     : Las Vegas, Nevada
10     corporation; and SETH RAVIN,      :
       an individual,                    :
11                                       :
                    Defendants.          :
12     _____   :

13

14                   TRANSCRIPT OF MOTION HEARING

15

16     APPEARANCES:

17     FOR THE PLAINTIFFS:        RICHARD J. POCKER
                                  Attorney at Law
18                                Las Vegas, Nevada

19                                JAMES C. MAROULIS
                                  Attorney at Law
20                                Redwood City, California

21                                JOHN A. POLITO and
                                  LINDSEY McGRATH SHINN
22                                Attorney at Law
                                  San Francisco, California
23

24

25     (Appearances continued on Page 2.)

```
 1    APPEARANCES (Continued):

 2

 3    FOR PLAINTIFFS:            WILLIAM ISAACSON
                                 Attorney at Law
 4                               Washington, DC

 5

 6    FOR THE DEFENDANTS:        ERIC VANDEVELDE
                                 Attorney at Law
 7                               Los Angeles, California

 8                               CASEY J. McCRACKEN
                                 Attorney at Law
 9                               Irvine, California

10                               W. WEST ALLEN
                                 Attorney at Law
11                               Las Vegas, Nevada

12                               JOHN P. REILLY
                                 Attorney at Law
13                               Las Vegas, Nevada

14

15

16

17

18

19

20

21    Transcribed by:           Margaret E. Griener, CCR #3, FCRR
                                 Official Reporter
22                               400 South Virginia Street
                                 Reno, Nevada 89501
23

24

25
```

1       LAS VEGAS, NEVADA, THURSDAY, SEPTEMBER 3, 2020, 11:00 A.M.

2                           ---o0o---

3

4                   THE CLERK:  Is the time set for a hearing on

5   motion in case 2:10-cv-106-LRH-VCF, Oracle USA, Inc., et al.,

6   versus Rimini Street, Inc., et al.

7                   Counsel, please state your appearances for the

8   record beginning with the plaintiffs.

9                   MR. POCKER:  Your Honor, on behalf of the Oracle

10  parties, I'm Richard J. Pocker, Boise Schiller Flexner.

11                  Also present on the call in conference is

12  Lindsey Shinn and John Polito of Morgan Lewis, as well as

13  James Maroulis, in-house counsel for the Oracle parties.

14                  THE COURT:  Right.  Thank you, Mr. --

15                  MR. POCKER:  And I --

16                  THE COURT:  Go ahead.

17                  MR. POCKER:  Actually, I also omitted

18  Mr. Isaacson is also present in the video conference.  He's

19  now with Paul Weiss.

20                  THE COURT:  All right.  Thank you, Mr. Pocker.

21                  MR. VANDEVELDE:  Good morning, your Honor.

22                  Eric Vandevelde from Gibson Dunn on behalf of

23  Rimini Street, and with me is Casey McCracken from Gibson

24  Dunn, as well as Jack Reilly, in-house counsel at Rimini

25  Street.

1              THE COURT:  And West Allen, local counsel, too?

2    Yeah.

3              MR. ALLEN:  Yes, your Honor.  West Allen here on

4    behalf of Rimini Street as well.

5              THE COURT:  Oh, okay.  You just popped in there.

6              Well, this is the new normal right now.  I don't

7    know if the parties are aware, but we've been doing criminal

8    cases on this video setup for a few months now.  We can't

9    transport the detainees from Pahrump up here.  And we've been

10   doing the audio -- civil cases still by telephone.

11             And I thought, especially with the parties

12   involved in this case, it should be possible to set up a video

13   conference which I think will work better, and I appreciate

14   everyone coming into it.  We may be doing more of it.

15             Okay.  So before we get into the argument, there

16   are a number of motions to seal that I think relate to this

17   particular motion, and I believe they are 162, which is

18   Oracle's -- I'm sorry, 1362, which is Oracle's, 1373 is

19   Rimini's, 1378 is Oracle's reply, and then 1422, there was

20   just a recent demonstrative evidence filed which was to be

21   under seal.

22             I didn't see any oppositions to that.  Given the

23   nature of the case and everything, you know, unless somebody

24   has an objection, I'm going to grant all those motions to

25   seal.

1            Hearing no objections, those will all be

2      granted.

3            Okay.  Now, before we get to the issues that I

4      listed on pages 3 and 4 of my order, I wanted to explore with

5      Oracle, Mr. Pocker, the remedies requested in your motion, all

6      right?

7            Now, if I find that the documents at issue are

8      lost because Rimini failed to take reasonable steps to

9      preserve them, and, two, they cannot be restored or replaced

10     through additional discovery, and, three, Oracle is

11     prejudiced, as I see it the two sanctions you're requesting

12     are, one, a report and recommendation would have to be -- I

13     mean, you didn't know I'd be doing this probably when you

14     wrote it, but a report and recommendation to Judge Hicks that

15     evidence of Rimini's spoliation be considered relevant in the

16     contempt proceedings, that would be the first sanction, and

17     then, secondly, a monetary sanction.

18            I didn't see any other sanction being requested.

19     I just want to make sure I didn't miss anything there.

20            MR. POCKER:  No, I think that fairly summarizes

21     what was in our initial motion, your Honor.

22            THE COURT:  Okay.  Great.

23            All right.  Well, then, I'm glad I got that

24     straight, and since it's your motion, I'll hear from you

25     first, Mr. Pocker.

1            MR. POCKER:  Well, your Honor, as the Court's

2    order setting this hearing detailed, I think primarily what

3    the Court was interested in from both sides is some answers as

4    to whether or not there is a way to assist you in resolving

5    certain factual discrepancies that you've -- or factual

6    disputes that you've identified in that order.

7            It's set as a status conference, and in light of

8    the fact that you had set out four different questions and

9    issues that you wanted us to address, I'll start with that,

10    just summarize what Oracle's position is with respect to each

11    of your inquiries.

12            You initially asked whether the parties agree

13    that there's a reliable record in the discovery materials of

14    which clients, Rimini Street clients, received the now

15    spoliated documents from Rimini Street, and --

16            THE COURT:  You know, Mr. Pocker, I don't like

17    to try to edit argument, but could we just call them lost for

18    now?  You know, that's what they are is the lost files, right?

19            MR. POCKER:  All right, the lost files.

20            THE COURT:  Okay.

21            MR. POCKER:  At issue the lost files that were

22    sent Rimini Street customers.

23            By our calculation -- first of all, there is a

24    record that is maintained at Rimini for the AFW transfer log.

25    It's called the AFW transfer log.  From our examination of the

1    discovery provided, we've determined that there are 139

2    customers out there to which the lost documents in question

3    were sent.  So I think that's our analysis of what's available

4    out there.

5                     THE COURT:  Okay.

6                     MR. POCKER:  Then you also asked for the

7    parties' position with respect to whether or not reopening

8    discovery in this matter could somehow assist the Court with

9    resolving some of these factual disputes and resolving them --

10                    THE COURT:  Right.  Let me explain what that

11   question was.

12                    I think, you know, it's got to do with that

13   second element under 37(e) where it says if your

14   electronically stored information that should have been

15   preserved in anticipation of litigation is lost because a

16   party failed to take reasonable steps to preserve it, okay,

17   and then, two, it cannot be restored or replaced through

18   additional discovery.

19                    So that's really what I'm looking at there, you

20   know, what would be involved, if we got the list of people,

21   would it be reasonable to just -- rather than, you know, enter

22   some order based on the assumption that these documents are

23   not recoverable, to try and go get them from those 139

24   customers.  That was my question.

25                    MR. POCKER:  Well, your Honor, Oracle's position

1    is that discovery not only is not warranted but really isn't

2    going to be very helpful in resolving --

3                    THE COURT:  Okay.

4                    MR. POCKER:  (Inaudible) and that's for a number

5    of reasons.

6                    As you know, during our proceedings with respect

7    to discovery on the potential motion for order to show cause,

8    Rimini did its best to argue for limited and restrictive

9    discovery by the parties both as to what Rimini Street

10   produced and as to third-party discovery, so we really haven't

11   done a lot of depositions of third parties, in fact, we

12   haven't done any in these discovery proceedings here.

13                   Rimini I, the case which we are presently

14   arguing, and the other case which we referred to as Rimini II,

15   in both those cases there was extensive third-party discovery.

16                   Now, what we found is that, for instance, with

17   Rimini I, the average time for a complete response or a

18   substantially complete response to a third-party subpoena was

19   approximately 180 days, almost roughly six months, and that

20   was -- and those situations involved hundreds of subpoenas

21   going out there.

22                   The same thing was true in Rimini II, the same

23   general time frame, and I have specific statistics on that if

24   the Court wishes to hear that.

25                   So what we're considering here is, of course, a

1    discovery period that could delay these proceedings at least

2    six months, maybe longer than that.  As a result, that doesn't

3    seem a very effective way to approach this issue.

4                    (Inaudible) what the customers would have in

5    their systems is not necessarily -- in fact, in all

6    likelihood, is not identical to the documents and the

7    electronic information which is lost in this case and was the

8    subject of our motion.

9                    And I know the Court has reviewed the motion

10   papers, but essentially the information and documents we're

11   seeking are, without dispute by either side, lost, destroyed,

12   specifically deleted, according to the AFW process and the

13   deletion program executed by Rimini Street.

14                    There is no guarantee that what currently exists

15   in the files of the customers would be that exact same

16   document, and two examples illustrate this significantly, and

17   the Court has seen the briefing.

18                    In our motion and our reply, we reference a

19   situation in which the AFW TransferFiles mechanism was used to

20   make 18 transfers to customer Raley's.  Only one of them

21   obviously was, in the end, going to be the final version --

22   there were 18 versions of the same fix in a Rimini-created

23   document.  So by necessity the only one they would have kept

24   would have been the final version of that fix.

25                    So there are 17 interim versions of that that

1    would have transferred to the customer, and, in all

2    likelihood, because they weren't the final versions, were

3    deleted.

4              Second of all, Rimini maintains that it has no

5    possession, control, or access to the materials on their

6    customers' sites without the customers' permission.

7              So, as a practical matter, we're not certain

8    that the same -- that those documents remain in the possession

9    of the customer in an unaltered form.  They could have been

10   changed, there could have been any number of things going on

11   there.

12             In any event, what we're looking to remedy is

13   the destruction of the exact items that were sent to the

14   customer.  The customer discovery isn't necessarily going to

15   provide us with a copy of that exact material that is the

16   subject of the spoliation motion.

17             Likewise, and we've addressed this in our

18   pleadings in great detail so I don't want to bore the Court

19   with it further, but the files that are retained -- were

20   retained by Rimini before they were placed on the AFW

21   TransferFiles mechanism, they aren't necessarily in the same

22   form and condition now as they were when they were transferred

23   from Rimini Street to the customer.

24             Now, we've pointed out a number of instances in

25   which file names, Rimini Street files, have the same name,

1    they have different content, and, in the reverse, there's a

2    couple of situations in which the same content has different

3    names.

4                So if that truly were reliable and they could be

5    obtained from Rimini, or obtained from the customer in the

6    same condition as they were transferred, then that would be a

7    different scenario.  But that's just not what we have here.

8    It's almost --

9                THE COURT:  I think I understand your position

10   on that one, that it just -- there's no discovery that can fix

11   this problem.  So I got that I think.

12               MR. POCKER:  All right.  The other question that

13   the Court asked us to address was regarding whether or not an

14   evidentiary hearing would be of any value, and Oracle's

15   position there is we're willing to do whatever the Court feels

16   that it needs to do in that regard.

17               We believe that the briefing in this case and,

18   most significantly, some of the concessions that Rimini Street

19   has already made about what it did with these lost files and

20   how its system operates, the Court does have enough in the way

21   of a factual record to rule that these particular lost files

22   were not transitory files, that they were in fact relevant

23   evidence, and, you know, so to make factual findings as to

24   (inaudible).

25               So, in our view, an evidentiary hearing isn't

1   necessary, especially by the fact that courts uniformly who

2   have already decided this issue is that if you have a

3   situation in which files are automatically deleted or subject

4   to automatic deletion, that it is the responsibility of that

5   party during the litigation to disengage those deletion

6   functions.  It's undisputed in this case that Rimini didn't do

7   that up until the end of this controversy and maybe before the

8   spoliation motion.

9           So it's not like there's a lot of factual light

10   that can be shed beyond what's already in the pleadings.

11           Also --

12           THE COURT:  Mr. Pocker, before you go to the

13   next one, I mean, what I was thinking of there is, you know,

14   there seems to be a dispute that -- you know, Rimini's

15   position is that the files that were in this AFW transfer and

16   the process used was kind of just like a clipboard on Word,

17   you know, you click a copy of it, and you move it over there,

18   and you place it down.

19           And so, you know, the fact that it existed in

20   this very temporary state for a period of time, that means --

21   because it was that type of a process, there was no need or

22   reason to hang onto them, whereas you're saying, no, they're

23   much more like an attachment to e-mail, and that this, you

24   know, you have to do that.

25           So that kind of sounded like -- you know, you

1    were talking about a metaphor -- mixed -- different --

2    competing metaphors here, it's kind of a factual question.

3               Do I have to say, oh, yes, this is more like a

4    clipboard on Word, or, oh, no, this is more like a -- an

5    attachment to an e-mail?  You know, how do I make that

6    decision?

7               MR. POCKER:  Your Honor, I think it's a little

8    easier -- and we certainly have the declarations of the

9    experts and the information about the tactical issues from the

10   respective sides.

11              But I think more fundamentally is their entire

12   argument rests on the notion that these images, these

13   documents placed on AFW, were transitory.

14              And I think you can already from the record

15   assume that because those images and documents would still

16   exist on the AFW TransferFiles server today if they hadn't

17   themselves come up with a deletion program, that shows that

18   they're certainly not akin to temporary RAM images and some of

19   the other things that have been mentioned by Rimini Street as

20   being analogous and addressed in some of their case law.

21              This is so clearly a situation where (inaudible)

22   using or hearing the argument it was transitory is because of

23   Rimini Street's own actions making it transitory.

24              So I don't -- you know, certainly, if the Court

25   wishes to have an evidentiary hearing and hear from the

1    experts on this issue, Oracle is willing to play this however

2    you wish to do so with one major exception, and that is we

3    would request that if the Court orders an evidentiary hearing,

4    that the scope of that hearing and the evidence presented at

5    that hearing be limited to what's already in the record with

6    respect to this motion as well as the testimony, perhaps, of

7    the two experts, and I think Mr. Frank was the other witness

8    who has provided a declaration.

9           I don't think it would be appropriate or fair at

10    this point to allow Rimini Street to address all of the

11    factual issues which they had a chance to do in their

12    opposition and yet did not do, and I think that's another

13    factor in what's before the Court and what the Court would

14    need to do with it.

15           Because there are a lot of assertions in the

16    opposition, and we highlighted these in our reply, that are

17    unsupported by the testimony of anybody at Rimini Street,

18    they're just laid out there as to how the company functions or

19    where these copies are and that type of thing.  They're just

20    not supported by record evidence.

21           THE COURT:  Mr. Pocker, let me ask you before I

22    forget.  Back about two or three minutes ago you said that

23    Rimini came up with, you know, a deleting program for the AFW

24    process.

25           Are you saying that the AFW process, when it was

1    first being used, didn't have that deletion program aspect to

2    it, and then they later created it?  Or is it your

3    understanding that the deletion function existed from when

4    they started using the AFW all the way through until they --

5    I guess they did change it at some point, they took it out at

6    some point, I believe.

7                    MR. POCKER:  They did take it out at some point,

8    absolutely.

9                    THE COURT:  Right.  But was it existing from the

10   beginning, or are you saying it was added at some point?

11                   MR. POCKER:  You know, in all honesty, your

12   Honor, I cannot answer that.  I know how long it's been

13   operating with respect to this relevant time period with the

14   injunction.

15                   THE COURT:  All right.  So --

16                   MR. POCKER:  And in our --

17                   THE COURT:  Your belief is that it existed at

18   the time of the injunction, that the deletion was there at the

19   time of the injunction.

20                   MR. POCKER:  Yes.

21                   THE COURT:  Okay.  Okay, good.

22                   All right.  Go ahead and finish up.  I think the

23   fourth question is kind of a flip side of the third question,

24   so do you have anything more to add before I hear from

25   Mr. Vandevelde?

1          MR. POCKER:  No, your Honor, other than if

2     you're -- the Court did reference a couple of these factual

3     issues.  I don't know if you want further argument with

4     respect to that to help you flesh those out.  If you are, I'm

5     happy to address those issues, but as to the big four

6     questions that you posed, that's Oracle's position.

7          THE COURT:  Okay.  Well, let's hear what

8     Mr. Vandevelde has to say, and then, you know, I've got some

9     time here.  If we need to go further, we can.

10          Mr. Vandevelde.

11          MR. VANDEVELDE:  Good morning, your Honor.

12          There's a lot of misconception going on, but at

13    the very outset, although I don't think your Honor buys into

14    Oracle's repeated attempts to portray Rimini as some rogue or

15    nefarious litigant, and in fact, your Honor and other judges

16    have commended Rimini on its discovery efforts, I feel

17    compelled to state unequivocally that Rimini takes its

18    discovery obligations extremely seriously, and that it has

19    gone far above and beyond those obligations in this case.

20          Virtually every aspect of Rimini's business has

21    been under the microscope for almost a decade.  Oracle's

22    lawyers and experts have had access to and have been rummaging

23    around in Rimini's live systems for years.

24          It would not be an overstatement, as we

25    described in our supporting declaration, to say that Rimini

1    has produced more discovery than any litigant in the history

2    of this district at the expense of many, many millions of

3    dollars, and that burden has been tremendous and it has been

4    asymmetrical.

5                    And it is unfortunate that Oracle's, you know,

6    MO is at every turn, in every brief, at every opportunity is

7    to paint Rimini, its counsel, everyone associated with Rimini

8    in a false light accusing them of all sorts of misdeeds that

9    are just simply not true.

10                   And our response, as always, has been to simply

11   recount the facts and the law, and that's what I intend to do.

12   I just had to say that at the outset because it's an ongoing

13   pattern.

14                   Now, there is a lot to cover and to respond to,

15   and I'm mindful -- and I'm going to address your Honor's four

16   specific questions.

17                   So let me -- let me lay out my plan so your

18   Honor knows where I'm going.

19                   First, I want to address the question of

20   numbers.  How many files are we even talking about.  Why is

21   there such a discrepancy between the parties.

22                   Oracle says 15,000 -- says various numbers, but

23   15,000, and we didn't get to respond to their reply brief, and

24   their lead argument about the numbers is reckless.  It's a

25   reckless representation about the number of files at issue.

1            Second, two of your Honor's specific questions

2    were whether there's a reliable record showing which clients

3    received which files.  That was your Honor's question one, and

4    also whether an evidentiary hearing might be necessary.  That

5    was your Honor's question three.

6            And to address those it's critical that we

7    understand the existing record and data and what they actually

8    show, and so in a moment I want to walk through as quickly as

9    I can the demonstrative timeline that we submitted, and we'll

10   explain exactly how we got here.

11           And when you cut through Oracle's

12   characterizations, the material facts are simply not in

13   dispute and they call for a denial of the motion.  That

14   doesn't mean we're not willing to help Oracle try and get

15   information that we think is irrelevant, but the motion should

16   be denied based on undisputed facts.

17           Third, your Honor asked about the nature of the

18   files and whether allowing limited discovery would be a

19   reasonable path forward.  That was your Honor's second

20   question.  But to answer that question we need to talk about

21   Oracle's alleged prejudice, not just files, what information

22   are they claiming is lost; how do they claim they have been

23   harmed by what they claim is destroyed information.

24           So those are the three topics I want to hit, and

25   I'll start with the first, how many files are actually at

1    issue in this motion.

2            Now, Oracle has provided several different

3    figures for how many are at issue, 15,000, 10,000, 9,000, but

4    Oracle's expert testimony and prior statements show that those

5    numbers are just simply inaccurate.

6            There's a fundamental difference at a technical

7    level that Mr. Pocker didn't get into between files and file

8    transfers.  One is a thing, right?  A thing, the file itself.

9    The other is a transaction, a file transfer.

10           So when Oracle claims there are 15,000 files

11   missing, what they really mean is that there were 15,000 file

12   transfer transactions reflected in the logs.

13           And so, for example, if Rimini transferred the

14   same one file to a hundred different clients, and Rimini

15   produced a copy of that file, which it did, and it gives

16   Oracle a list of the hundred clients who received it, which it

17   did, and that's reflected in the logs, what Oracle is saying

18   is that Rimini has spoliated 99 files.  That is just simply

19   misleading.

20           Oracle's own expert cites numerous examples of

21   this actually occurring in Exhibit 1 to their motion.

22   Ms. Frederiksen-Cross, paragraph 132, she cites an example of

23   the same file being sent at the same time to 98 different

24   clients.  Oracle would say that's 97 spoliations.  That's

25   wrong, that's misleading.

1            In Exhibit 2 of their motion, Federiksen-Cross

2    says on at least six occasions Rimini sent the same

3    (inaudible) file at the same time to more than a hundred

4    different clients.  Again, they're accusing us of 99 acts of

5    spoliation even though it's the same file sent at the same

6    time.

7            So their individual file counts are off by a

8    factor of more than a hundred, and that's what's really

9    accounting for the difference between the 15,000 number that

10   Mr. Pocker and Oracle references in its papers and the 466

11   number, and I want to get into that right now because it's

12   important.

13           Tellingly, Oracle did not make this mistake as

14   to counting and did not count this way during the meet and

15   confer when it demanded that Rimini produce these allegedly

16   missing files.

17           Oracle didn't attach to its motion -- it's

18   actually quite telling, they didn't attach to their motion a

19   letter on September 23rd, 2019, to Rimini that said, quote,

20           "For ease of reference, we have attached a

21      list of the specific files we seek,"

22   and they attach a spreadsheet, a spreadsheet listing how many

23   files?  466 files.  We attached that letter to our opposition,

24       I don't know if they didn't see it, but, shockingly,

25   Oracle's lead argument in their reply brief is that Rimini's

1      466 file figure is self-serving, and that, quote, "There's no

2      support for Rimini's 466 document statistics."

3                But, your Honor, that was Oracle's list of missing

4      files.  That was Oracle's spreadsheet.  We didn't make that

5      up.  We didn't do that.

6                We're entitled to rely on the list of files that

7      Oracle sends us during meet and confer and says, "We'd like

8      these files."  And, frankly, the number is not reasonably

9      subject to dispute.  That number is based on the loss.

10               So at the end of the day, here are the real numbers,

11     your Honor.  Using Oracle's own list of 466 files, Rimini

12     produced 460 of them, 99 percent of them.

13               And then -- and I'll go into this more in detail in

14     a bit, but after Rimini modified the tool, the transfer file

15     tool, to accommodate Oracle's request -- we disagreed with

16     them, we said, "We don't have to capture these temporary files

17     because we're preserving the originals," but despite our

18     disagreement with them, we accommodated their request

19               So those intermediate files were captured.  We

20     produced almost 11,000 files, 10,834 files, 100 percent of

21     every temporary, every intermediate file ever sent after that

22     point including, undoubtedly, many, many duplicate copies.

23               Now, these two buckets that I just went through, the

24     99 percent and hundred percent, they're not comparable.  They

25     can't be combined like apples and oranges, right?  We're

1   talking about different things.  But they are accurate in

2   their own right.

3           So that is the issue of the numbers here.  I wanted

4   to explain that discrepancy because it's glaring.  How does

5   Oracle say 15,000, how do we say 466.  The 466 is Oracle's

6   number.  It's the spreadsheet from Oracle that it sent to

7   Rimini in September of 2019 and said, "Here are the files we

8   want from you."

9           THE COURT:  Now, let me ask you, though,

10  Mr. Vandevelde, when they said -- they said that, "These are

11  the 466 we want from you," that's not the same thing as

12  saying, "These are the 466 files we believe are lost, all of

13  them."  They're just saying, "These are the ones we want from

14  you."

15          Am I hearing that right?

16          MR. VANDEVELDE:  It was in connection with them

17  saying that, "You haven't produced the files that we're seeing

18  in the logs and that we -- they're either lost or you produced

19  them.  Here are the 466 we want from you."

20          THE COURT:  Okay.  So -- and there's no dispute

21  that the logs are complete; is that right?

22          MR. VANDEVELDE:  No, there's no dispute that the

23  logs are --

24          THE COURT:  So you're saying the logs are

25  complete, the logs were given to Oracle, Oracle went through,

1    and when they said there are files missing, they listed 466

2    files.

3              MR. VANDEVELDE:  Yeah, the logs -- let's say

4    they show 15,000, like Oracle (inaudible), as I detailed,

5    their own expert says those numbers are off by factors of a

6    hundred in many instances, right?

7              And so Oracle analyzed those logs and said --

8    and analyzed what we had produced and said, "Here are the 466

9    we want from you."

10             THE COURT:  I understand.  Go ahead.

11             MR. VANDEVELDE:  All right.  So that's what's

12   driving the discrepancy.

13             So we have produced 99 files of -- percent of

14   the files Oracle asked for based on the logs, and we have

15   produced a hundred percent of the files after the tool was

16   changed.

17             Now, I want to move on to my second point which

18   is the timeline.  I'll try to go through this as quickly as

19   possible.  I thought it would be helpful for your Honor.

20   Normally, if I was in the courtroom with your Honor, I would

21   just walk up a copy to you.  So we filed it this morning.

22             THE COURT:  Okay --

23             MR. VANDEVELDE:  Does your Honor have a copy?

24             THE COURT:  Hold on, Mr. Vandevelde.

25             Mr. Pocker, you've seen this demonstrative

1    document?

2                    MR. POCKER:  Your Honor, I have.

3                    I take issue with the fact that it's

4    characterized as demonstrative.

5                    And part of an objection I also have is your

6    Honor set this hearing for a specific purpose which was to

7    address these four issues.  Is it my understanding that now

8    we're arguing the motion for spoliation?

9                    THE COURT:  Well, you know, no, I still -- how

10   do you draw the line?  I mean, I need to understand the issues

11   in the motion to decide if I need to have this evidentiary

12   hearing or I can do it on my own.

13                   I -- I think this is helpful for me, and if you

14   need more time or something, you know, at the end of the

15   hearing -- I mean, I'm sure you're well prepared on these

16   issues, I'll certainly hear from you, but I think this is

17   helpful to have an outline, and as long as you have it and can

18   follow along, I'd like to hear it.  So --

19                   MR. VANDEVELDE:  And that's why we filed it.

20                   And Oracle's counsel, Mr. Pocker, just spent

21   25 minutes arguing why there's spoliation, so I think I'm

22   entitled to some leeway to rebut that argument.

23                   So if your Honor is looking at the timeline,

24   right, the story starts in 2013, and this goes to a question

25   your Honor asked, when did this tool, the TransferFiles tool,

1    when was it created.  It was created almost seven years ago.

2    It's not a new tool as Oracle suggests.  It's been a part of

3    the existing processes for many years.  It is a custom-built,

4    patented tool.

5                    It's purpose is to create a bit-for-bit

6    duplicate copy of a Rimini file, right, onto the client's

7    system.  That is exactly what it does.  It does not delete the

8    original file that's copied.

9                    Now, this is the critical point.  Because the

10   tool cannot make that copy directly onto the client's system,

11   it first creates a temporary copy on the order of a few

12   seconds into that the FTP folder which then causes the

13   bit-for-bit duplicate copy to be created on the client's

14   system.

15                   At the time of the transfer it is indisputable

16   that no information whatsoever is deleted or destroyed.  It's

17   impossible.  The original file still exists, and I'll get to

18   this more in a minute.

19                   Item two in the timeline, "Rimini has used

20   TransferFiles thousands of times since at least 2014," so in

21   the narrative of Oracle's brief trying to paint Rimini as some

22   nefarious actor, they're making accusation that when the

23   injunction was issued Rimini suddenly started using this tool

24   to hide evidence.  That is just ridiculous.

25                   Their own experts analyzed this tool years ago

1    and confirmed this tool has been in use since 2014 tens of

2    thousands of times; tens of thousands of times.  So nothing

3    has changed.

4              And that brings us to item three, "TransferFiles

5    has worked the same way since its inception."  The operation

6    of the tool has not changed, that is undisputed, not after it

7    was created, not after the trial, Rimini I, not during Rimini

8    II, not after the injunction.

9              The tool in this respect has never changed, and

10   Oracle has the actual source code to know that.  It got the

11   source code -- this moves to item four.  In 2015, we produced

12   the source code for TransferFiles.

13             So for the last approximately five years Oracle

14   has had the very source code for the tool.  They could analyze

15   it and see every detail about how it worked, what it did, an

16   FTP copy, how the transfers worked, how long they lasted.

17             And it didn't just have that capability, moving

18   on to item five, it actually analyzed them.  Two Oracle

19   experts in 2017 and '18 -- I don't know when they began

20   analyzing the source code, but we know that in 2017 and '18

21   two Oracle experts analyzed the tool.  They spent the time and

22   they knew exactly how this tool worked.

23             Item six.  This one is absolutely critical.

24             "TransferFiles does not delete the original

25       file being transferred.  After successfully running,

1          more copies exist of the transfer file than existed

2          before the tool was run."

3               That is simply indisputable.  They don't dispute

4    it, and, in fact, Oracle's expert confirms it.  She wrote,

5               "After a successful FTP transfer, two copies

6          of the original file exist, the original file itself

7          and the new copy on the destination system," that's

8          the client's system.

9               There cannot be spoliation.  When that tool is

10   running -- it runs, it creates another copy, the original

11   still exists.  There cannot be spoliation based on those

12   facts.

13               THE COURT:  Well, what about Mr. Pocker said

14   that they've got examples where there was 18 transactions one

15   after another, and I guess he's saying there were different

16   files for all the 18.  How does that fit in?

17               MR. VANDEVELDE:  And I want to get to that

18   point.  If you don't mind, can we just reserve that --

19               THE COURT:  Sure, okay.

20               MR. VANDEVELDE:  And I'll get through this.  I

21   want to address that --

22               THE COURT:  I understand.

23               MR. VANDEVELDE:  -- head on.

24               Seven -- item seven, I'll quickly go through,

25   you asked whether they're logged.  That's undisputed on both

1    sides and goes to your Honor's first question, yes, they're

2    (inaudible) both on which clients receive which files.  The

3    answer is yes.

4                On December -- item eight, on December 10th,

5    2018, so Oracle has already had the code for five years, they

6    know exactly how it works, its experts have analyzed how it

7    works, right?

8                We then told Oracle in a letter exactly how the

9    tool works.  Even putting aside that their experts already

10   knew it, we wrote,

11               "Consistent with the design and purpose of

12          the FTP process, materials do not remain in the FTP

13          folder once they have been successfully

14          transferred....However, the transferred materials

15          remain in their preexisting locations on Rimini's

16          systems....Please let us know if you would like to

17          discuss further."

18               So they have the source code, their experts

19   analyzed it, we told them exactly how it worked.  This is

20   almost two years ago, your Honor.  We invited them to discuss

21   it further, and if they had any questions, and then it was

22   crickets.

23               They let the issue go.  More than eight months

24   passed -- this is item nine -- with no response from Oracle.

25               If they had simply picked up the phone, or

1    responded to our letter, or called me up and asked us to

2    change the tool, what we would have done is exactly what we

3    did when they did that in 2019.  We would have said, "We

4    strongly disagree with you that we're required to do this,

5    but, fine, we'll make that change."

6              This is the exact opposite of how Oracle tries

7    to paint Rimini.  That is commendable behavior on Rimini -- we

8    engaged, we discussed, we invited them to discuss, and then

9    they go silent for eight months.  This whole problem is

10   because Oracle did not engage with us on this issue.

11             Item ten, on August 21st, 2019, Oracle finally

12   did respond.  That is the first time they requested that we

13   modify the tool so that the intermediate copies are

14   maintained.

15             And, again, the original copy is not deleted in

16   this process.  There is no spoliation.  There cannot be.  That

17   is undisputed, and their own expert agrees.

18             On August 21st, 2019, that's the first time they

19   asked to us change the tool, and we did exactly what I said we

20   would have done.  We said, "We strongly disagree, but, fine,

21   we'll change the tool."

22             Now, item 11.  "Notably" -- it's a little bit

23   out of chronological order but it's important.

24             "Notably, exactly two years earlier," in

25      2017, "August 21st, 2017, Oracle acknowledged that

1          Rimini's production of a single copy of each

2          transferred file, along with a list of the clients

3          that received each file, would be a," quote, "'fair

4          and proportional way for Rimini to satisfy its

5          discovery obligations.'"

6              Oracle's position in this motion years later is

7     the exact opposite of their earlier position when they said it

8     would be fine to produce one copy of files that had been

9     distributed through Rimini's system to multiple clients.

10             Now, I'm not trying to -- your Honor, I'm not

11    trying to argue waiver, or some law of the case, or estoppel

12    that they can't change positions, but what I am trying to say

13    is that they knew how the tool worked, right?

14             They had the source code, their experts analyzed

15    it, we told them that in a letter in 2000 -- earlier, you

16    know, and they had the position that one copy plus the list of

17    who got it was reasonable.

18             And then when they finally -- "You know what,

19    we've changed our mind, we want you to keep those intermediate

20    copies," what did we do?  We changed the tool.

21             That is -- again, that is the definition of

22    commendable, cooperative, collaborative working with opposing

23    counsel.

24             So item 12 -- we're almost done.  In any event,

25    despite our disagreement, when they asked to us change the

1    tool, we changed the tool.  That is undisputed.  That is

2    confirmed by Oracle's own expert, and the citations are there.

3              We then, having changed the tool, we produced

4    10,834 intermediate FTP files after the TransferFiles tool was

5    modified.  That is undisputed by Oracle.

6              And, number 14, I'll talk about this more later

7    when I address the alleged prejudice, but, tellingly, Oracle

8    has filed its big motion for -- asking for an OSC about why

9    Rimini should not be held in contempt of the injunction.

10             Oracle has not cited a single intermediate file

11   of those almost 11,000.  That was not a duplicate of an

12   original file that Rimini would have produced even if we had

13   never modified the TransferFiles tool.

14             And let me explain that in simpler words.

15             Despite having thousands and thousands and

16   thousands of these earlier temporary intermediate files, its

17   experts analyzed them, it hasn't cited a single one making its

18   case for why Rimini should be held in contempt.  That shows

19   these files are irrelevant to Oracle's theories.

20             The only example, by the way -- this is the

21   citation column for that row, the only example, by the way, is

22   a final version, not an earlier intermediate version.  All

23   those 18 versions, that's not -- they cite one example, and

24   it's a final version, not an earlier version.

25             Item 15,

1          "On September 23rd, 2019, Oracle sent Rimini"

2      Oracle's "list of 466 files that it said were

3      previously transferred and still not produced."

4              I talked about this earlier.  This is Oracle's

5  count.  For some reason in their reply brief they suggest it's

6  Rimini.  That's false, it's absolutely false, that's Oracle's

7  list, and we went about trying to collect and produce those

8  files.

9              On November -- item 16, on November 26th, 2019,

10 Oracle noted that we had produced some.  We had made progress.

11 They sent us a revised list noting that we had produced --

12 that there were 78 still outstanding, and we continued to

13 produce files.

14             On December 3rd, 2019, we sent a letter to

15 Oracle stating that we had completed our manual search and

16 provided a list showing we had produced 72 out of 78.  That's

17 460 out of the 466 files on Oracle's list.

18             And then, again, our diligence, our

19 collaboration, our trying to reach out to them was met with

20 silence again.

21             Item 18, eight months go by -- Oracle does not

22 send another letter, they do not meet and confer, they do not

23 ask Rimini or the Court about obtaining copies of the six

24 files from the clients, they do not move to compel, nothing.

25             And then on July 10th, 2020, they filed a

1    spoliation motion yelling that we're spoliators, that Rimini

2    destroys evidence.  That is just false.  It's just simply

3    false.

4                   This is almost five years, July 10th, 2020, is

5    almost five years after Oracle had the source code and knew

6    how the tool worked after its experts analyzed it, two years

7    after we told them that the intermediate copies were not kept,

8    and almost one year after Rimini modified the tool to

9    accommodate Oracle's request.

10                  So this --

11                  THE COURT:  What about the question I asked you

12   earlier about the 18 --

13                  MR. VANDEVELDE:  Yeah, let me jump right there.

14   I will just submit -- wrapping up at this time, I'll submit

15   that on these undisputed facts, there is simply no spoliation

16   from the tool and the motion should be denied.

17                  Let me move on to your Honor's important

18   question about the versions.

19                  So we need to deconstruct what Oracle is really

20   saying here, right, months and months and months later in its

21   motion about what information it says was lost.

22                  It is not saying that the original file was

23   deleted when the tool was run.  Again, I already talked about

24   that, their expert agrees, our expert agrees, it's

25   indisputable.

1              But I'm also are not saying that a new copy is

2    not made in the client's system.  Again, it is undisputed that

3    a copy is made, all the experts say it.

4              What Oracle is really saying is that even though

5    the original file was kept, and even though an additional copy

6    was made, is that months later, when we went to go look for

7    the file to collect -- at the original file, it was maybe

8    renamed or moved or, in some cases, it may have been edited.

9              That is your Honor's question, right?

10              So Oracle is not saying that the original files

11   were deleted, it's saying that in some cases they may have

12   been moved over the course of many months, or may or may not

13   have been edited -- but -- may or may not have been edited,

14   but that's not spoliation, and let me --

15              THE COURT:  Okay.  Hold on.  Let me understand

16   this.

17              Okay.  So that is one argument Mr. Pocker made

18   that, you know, some of the examples had got different names,

19   different content.

20              But my -- there was another thing he said was

21   that when the transfer -- the action of the transfer was

22   happening, he had an example where there were 18 different --

23   somehow they knew in the log, I guess, that there were 18

24   different files sent, and there must have been changes in

25   those files between the original one that was kept and the

1   other one at the end that still exists, that somehow there

2   were other versions that weren't kept.  I believe that's what

3   he said.

4                    MR. VANDEVELDE:  Yeah.  No, that's his argument,

5   it's not in the logs, your Honor, it's not, that's just wrong,

6   but that's the inference Oracle is drawing, right?  They're

7   saying the fact that there were transfers creates this

8   inference that there are versions, right?

9                    THE COURT:  But --

10                   MR. VANDEVELDE:  Let me just -- can I -- I just

11  want to give an analogy that I think is very helpful, right?

12                   Imagine that Oracle sued your Honor alleging

13  that versions of your orders incorporated their copyrighted

14  material, right?  And in discovery Oracle said, "Your Honor,

15  give me all your orders from the last year," and you go and

16  find them on your work computer, your desktop computer in

17  chambers, and you produce them.

18                   And Oracle comes back and says, "Your Honor, the

19  orders you produced were from different locations on your

20  computer and what's reflected in the logs.  Your Honor

21  produced them from a folder on your desktop called, you know,

22  Final Orders, but the ECF logs, those logs show that they were

23  actually uploaded from a different folder called, let's say,

24  Orders to Be Filed, and on that basis Oracle would say you

25  spoliated.  You spoliated because they're in a different

1    location.

2              And then Oracle would also complain, it says,

3    "Well, your Honor, some of the files you produced have

4    different names now.  You produced a file called Minute Order

5    9/3/2020, but the actual uploaded order was called Minute

6    Order 9/3/202.final.  That's a different name.  We can

7    prove," right, "that they're the same.  You've spoliated, your

8    Honor."

9              And then -- and this gets to your question,

10   Oracle would complain, "Your Honor, you know, you didn't give

11   us snapshots of your orders as they were being drafted.  How

12   do we know that the earlier versions didn't have our

13   copyrighted material in them which your Honor sanitized?"

14   That's the word they used.

15              "Your Honor probably sanitized them from the

16   final version that was uploaded.  We can see a bunch of

17   versions, but you didn't save them, and we suspect you

18   sanitized our copyrighted material from the final one so

19   therefore you've spoliated, and, not only that, you didn't

20   keep MD5 patches.  You didn't generate or keep MD5 patches of

21   your orders, so we can't tell.  You purposefully didn't do

22   that because you were trying to prevent us from seeing what's

23   changed.  You're trying to hide the fact that your copyrighted

24   materials in earlier versions of your orders, so therefore you

25   have spoliated," right?

1            Your Honor didn't spoliate anything if you or

2    your clerk renamed one of your orders or moved one of your

3    orders.  That's just not the law.  There is no preservation

4    obligation to keep a file in a particular folder or never

5    change a file's name.

6            And there are no snapshots as you were drafting

7    them, right?  Because there were no -- and there were no MD5

8    values because your software wasn't designed to do that.

9            Your word processing program -- let's say it's

10   Microsoft Word, it creates copies, it creates snapshots both

11   in memory and on disk, and as you're working in the file, it

12   does that so that if you're writing your order and you lose

13   power, or the program crashes, you don't lose work.

14            But those snapshots aren't saved.  Your software

15   doesn't save those snapshots.  That's just the way Microsoft

16   Word was designed and works, and that's exactly what's

17   happening here.

18            And, again, this ties back to -- Oracle has

19   known for years and years and years exactly how file transfers

20   works, right?  And Oracle's view of the law and Rimini's

21   obligations is just simply not accurate.  It's not supported

22   by the law.  The law does not require litigants to modify an

23   existing tool that creates a copy to create even more copies

24   or to start generating MD5 patches.

25            The tool was designed --

```
 1                    THE COURT:  That's the second time you've said
 2     that.  Did you say MD5 patches?
 3                    MR. VANDEVELDE:  MD5.  Sorry, that's a
 4     shorthand -- I'm not sure if your Honor is familiar with that
 5     concept, but basically it's a long string of letters and
 6     numbers that represents a unique file, right?  So Oracle is
 7     saying because you didn't generate this number, this
 8     fingerprint, so to speak --
 9                    THE COURT:  It's a way to track the document.  I
10     got it.
11                    MR. VANDEVELDE:  Exactly.
12                    So, you know, the law does not require litigants
13     to have -- when it makes a copy, to make more copies or to
14     generate MD5 patches.
15                    This tool was designed years ago, and Oracle
16     knew it.  It was designed to make a copy, bit-for-bit copy on
17     a client's systems.  That's what it does.
18                    The intermediate copy lasts only a few seconds.
19     I'm not sure if that's material.  I don't think it is.
20     Because the original file is kept and the intermediate copy
21     serves no business purpose and --
22                    THE COURT:  Okay, let me stop you there,
23     Mr. Vandevelde.
24                    Mr. Pocker, could you just jump in here?
25                    I'll let you finish, Mr. Vandevelde.
```

1               But I thought you said that the record in this

2     case showed that there were times when the transfers were

3     happening that it started as one file and then, while the

4     transfer was going on, it changed into different files before

5     the transfer was completed.

6               Did I misunderstand you on that?

7               MR. POCKER:  I think you may have.

8               THE COURT:  Okay.

9               MR. POCKER:  Your Honor, what I -- are you

10    referencing the 18 files to Raley's or --

11              THE COURT:  Yes, yes, the 18 files.  I thought

12    you said there were different versions and the only one you

13    had was the original and the end one, you didn't have the ones

14    in between.

15              MR. POCKER:  Right --

16              THE COURT:  Go ahead.

17              MR. POCKER:  The ones in between, what it

18    actually transferred to the customers, are the files that are

19    deleted and lost.

20              And what would -- I think what I was discussing

21    with you was, if we were going to Raley's and found that,

22    well, okay, let's go to Raley's and find out what was actually

23    transferred to them using this tool, it would most likely only

24    be the final version of that particular update or electronic

25    file.

1              THE COURT:  I think I -- let me just make

2    sure -- I think I understand what you're saying.

3              So using Mr. Vandevelde's conception, there

4    would have been 18 transactions, each transaction would have

5    started, you know, like version 1, version 2, version 3, up to

6    version 18, Raley's probably wouldn't keep the intermediate

7    versions, they would probably only keep version 18.

8              Is that what you were saying?

9              MR. POCKER:  Yes.

10             And I think something that may be lost in

11   Mr. Vandevelde's presentation is these logs that we're talking

12   about, they can show in general terms what was sent to each

13   customer, but they don't have all the content.  As he's

14   represented --

15             THE COURT:  Yeah, I don't think he's saying --

16   okay.  Sorry, Mr. Pocker.  I don't want to take it away from

17   Mr. Vandevelde.  I just wanted to make clear that 18 argument

18   because it didn't seem to me he was responding, and that was

19   because I didn't understand your argument.

20             So back to you, Mr. Vandevelde.

21             MR. VANDEVELDE:  Well, your Honor, let me --

22             MR. POCKER:  What we put forth in our original

23   motion and we visited in the reply with the citations to the

24   expert, whatever, so if the Court has questions about that,

25   that's the best place to flesh it out.

1           THE COURT:  Okay.  Great.  Thank you.

2           Okay.  Mr. Vandevelde.

3           MR. VANDEVELDE:  Yeah, let me pick up.

4           So a litigant is not required to modify a tool

5   to make extra copies or generate MD5 patches.

6           And I want to address this Raley's issue head

7   on, right?  Because, your Honor, in my analogy, right, that's

8   like saying, you know, your Honor has spoliated because you

9   didn't create a separate version of your order.

10          So you worked on it in the morning, you added a

11  few paragraphs, you worked on it in the afternoon, you added a

12  few paragraphs, and you saved over the file, right?  Oracle is

13  saying that that's spoliation.

14          That is not the law.  That is just not the law.

15  There is not an obligation for a living file like that for

16  every time you type a character or add a paragraph or add a

17  page or add a citation, that you save a new version of the

18  file.

19          THE COURT:  Right.  But let me just tell you

20  from what you're telling me, if I understand the Raley's

21  situation, you know, Rimini had a document that put it through

22  this AFW process and sent it on to Raley's.  Then they edited

23  it, did something different, put it in, sent it on, then they

24  edited it, did something different, put it in, sent it on.

25          You would have a copy of each one you sent

1   because you kept the one you sent, right?  The one you didn't

2   keep was the temporary one before -- while it was going to the

3   client.  If there were a series of transactions, you would

4   have the original for each transaction, right?

5                   MR. VANDEVELDE:  And that's a function that we

6   cannot send it directly, it's just an artifact of the

7   technology.  We have to send it through this process.

8                   THE COURT:  Right.

9                   MR. VANDEVELDE:  It exists for a few seconds.

10  There's no purpose to create it because at the time it's a

11  duplicate, and the law doesn't require someone to create new

12  versions every time there's an order, right?

13                  THE COURT:  Right.  Okay.

14                  MR. VANDEVELDE:  And, so, you know, we cited --

15  the (inaudible) conference is an authoritative source on this

16  issue, right?  It's a go-to source.

17                  It says, ESI, quote, is constantly being cast

18  rewritten, moved, copied, and it gives the example of the Word

19  processing file I just used in the analogy with your Honor.

20                  It says, quote,

21                  "Every few minutes it's overwriting a

22        previous backup copy, and a party's preservation

23        obligation does not require," quote, "'freezing all

24        of ESI.'  To require such broad preservation would

25        cripple organizations."

1            And so, look, your Honor, we're almost like

2   water under the bridge now.  Like, the issue is, regardless of

3   whether who's right, right, about this, Oracle asked us to

4   change it, they knew about how the tool worked from the very

5   beginning, years ago.

6            We had literally -- I know Mr. Pocker was not

7   involved in any of this, but we had hundreds and hundreds and

8   hundreds of letters, meet and confer letters, we had hundreds

9   and hundreds of phone calls on this very issue, on the issue

10  of TransferFiles and how it operated and how the FTP process

11  worked.

12            There is letters in the record about that very

13  process going back years, and when they finally asked to us

14  change it, we changed it, right?  We changed it.

15            We said, "We strongly disagree, we don't think

16  we're required," but we changed the tool.

17            And so, you know, the last point I want to make

18  here, your Honor, is about prejudice and relevance, right,

19  which is the reason that Oracle is saying that they need all

20  these earlier snapshots is because they would show Rimini was

21  up to no good.  The earlier snapshots would show that there

22  was Oracle code in the files, and that Rimini, quote,

23  sanitized them just like your Honor did in my example.

24            But the proof's in the pudding, your Honor,

25  right?  We changed the tool, and we produced 11,000 of

1    those -- nearly 11,000 of those earlier snapshots, and they

2    haven't cited a single one in their contempt theory -- in

3    their contempt motion.

4              If Rimini was doing what Oracle is contending,

5    that we were including Oracle code and sanitizing it, those

6    would be found in those thousands and thousands and thousands

7    of files.  They don't.

8              And in the hundreds of pages of briefs and

9    expert reports, how many times have they cited an earlier

10   snapshot?  Zero.

11             And, again, the single example they cite to in

12   their reply brief on page 8 is not what they say it is, your

13   Honor, it's the final version of the file, not an earlier one.

14             THE COURT:  All right, Mr. Vandevelde.

15             MR. VANDEVELDE:  That demonstrates not just no

16   prejudice, it demonstrates irrelevance to their contempt here.

17             THE COURT:  I understand.

18             MR. VANDEVELDE:  So for all these reasons, we

19   believe the motion should be denied.  It's not timely, right?

20             And that matters.  That matters because we could

21   have done what we eventually did when they asked, which is we

22   could have changed the tool.  We would have disagreed, but we

23   would have changed the tool.  All of this could have been

24   avoided.

25             They knew how the tool worked going back years

1    and years, and there was no spoliation because the original

2    file was kept, and there's no prejudice because we've seen

3    what happens when they get all these earlier snapshots, they

4    got 11,000 of them, and they weren't used, right?  They're

5    irrelevant to Oracle's contempt theory.

6                    THE COURT:  Okay, Mr. Vandevelde.  I think it's

7    clear that it's your position that we don't need an

8    evidentiary hearing, that all these facts are not in dispute

9    really.

10                   MR. VANDEVELDE:  Yes.  So I want to address

11   that.

12                   I think maybe similar to Oracle's position, we

13   defer to your Honor.  If your Honor -- if there's a fact that

14   you think is important to decide this motion, then we are

15   happy to have an evidentiary hearing.

16                   We are happy to provide clarification on certain

17   issues.  But on the undisputed facts, the timeline, the lack

18   of prejudice, right, the fact that the original is not

19   deleted, and the fact that there's no legal obligation to

20   prevent a file from being renamed, edited, or overwritten,

21   right, until we were on notice, and then we changed it, the

22   motion should be denied.

23                   THE COURT:  All right.  Thank you,

24   Mr. Vandevelde.

25                   Okay, Mr. Pocker, I'm sure you've got a few

1    things to say, please.  Take your time.

2                    MR. POCKER:  I'd like to start with some

3    discussion with respect to some of the points Mr. Vandevelde

4    made.

5                    THE COURT:  Sure.

6                    MR. POCKER:  His whole approach to this is

7    really turning on the burden of preservation on its head.

8                    If I understand his argument, it's, "We told you

9    how AFW worked back in 2013.  You know, you should have

10   anticipated that it would be working and destroying evidence

11   for the next seven years, and you never said anything to us

12   about it until you actually realized that this was going on,

13   and we said, 'Oh, we were wrong,' and fixed it."

14                   THE COURT:  Let me ask you that.  What happened

15   to make you realize that it was going on here in the last few

16   months when you didn't realize it before?

17                   MR. POCKER:  Well, if you go back to 2018, the

18   end of 2018, and there are exhibits and correspondence in the

19   record already, but there were questions in Rimini II about

20   why certain files on the AFW server were empty, and that

21   triggered some back and forth between the parties about why

22   that occurred.

23                   But the Court will recall that in 2019 we

24   started to -- we started to do the discovery with respect to

25   enforcement of the injunction, and it is in the summer of

1    2019, and Mr. Vandevelde cites some of the correspondence, I

2    think that correspondence speaks for itself in the sense of,

3    you know -- let's not characterize the facts there.

4              But at that point in time there was a dispute

5    about what happened to these intermediate files, this

6    information that was transferred versus the AFW TransferFiles

7    mechanism, and at that point in time there was this discussion

8    of what's missing.

9              That is when we realized that this function --

10   and he can say we knew how it functioned, or our experts did,

11   six years ago, but now we're talking about enforcement of the

12   injunction, and in this discovery period we're trying to

13   figure out, okay, what have they been doing since the

14   injunction was placed -- put into place.

15             Now, you would have thought that somebody who

16   knew they were going to be under a microscope like Rimini

17   Street would be very careful about preserving evidence of what

18   it was actually sending to its clients so as to be able to

19   prove that its compliance with the injunction -- that it had

20   been complying with the injunction.

21             So at that point in time -- and I think the

22   Court recalls that we had a hearing in which we raised with

23   the Court the fact that there were still these discussions

24   about possible spoliation.  I think it was early in -- well,

25   it was in 2019, maybe early 2020.  I remember I'm the person

1    that had the dialogue with you.

2                    And we said, "We may be filing a motion seeking

3    sanctions for spoliation," and the Court's response, and we

4    mentioned this in our reply, was, "Well, that will be down the

5    road."

6                    So I -- what I think has turned the entire

7    process upside down is Rimini Street is in litigation, they

8    know they're to preserve evidence, there was a specific

9    discovery request that we wanted copies of all patches and

10   product that was transferred to the clients and evidence of

11   that, and so they know they're supposed to be preserving this

12   stuff.

13                   As far as the relevance is concerned, it's

14   absolutely central to the very issue that's going to be in

15   front of Judge Hicks.  We're talking about compliance with the

16   injunction, and one of the things the injunction prohibits are

17   certain instances of conduct that constitute cross-use, and

18   this evidence that we're talking about now that no longer

19   exists is evidence of cross-use.

20                   Specifically -- and Mr. Vandevelde, with his

21   discussion of Raley's and the Court focusing on it, that's a

22   classic example we're talking about here where, for some

23   reason, Rimini Street is using Raley's software and

24   environments and materials to fine tune and test and ready for

25   distribution on a wider scale certain tax updates and

1    electronic documents.

2                      And it goes through this whole process, and

3    what's lost in between if we have the final?  Well, we don't

4    know what they were doing in between with respect to that

5    particular patch or fix.

6                      Now -- and we noted this in our motion and in

7    our replies, and I don't want to be redundant, but that very

8    same item is then disseminated widely to all -- to numerous

9    other customers of Rimini Street.

10                     This is the exact pattern of behavior that's at

11   issue in the injunction, which is, okay, did you use the

12   software and environments of one customer to then benefit your

13   other customers, which would be a violation of the injunction,

14   it's contrary to the rulings of the Ninth Circuit and the

15   Court in the original litigation.

16                     So what's -- the whole point of who cares what's

17   sent to somebody -- to one of the customers because, after

18   all, you can get it from the customer, or we already have it

19   in our system, it defeats our right to explore exactly what

20   was sent to those customers because what was sent to them is

21   where the evidence is going to be of cross-use or use of --

22   Mr. Vandevelde referenced, gee, some things may have Oracle

23   code in them, some things may have copyright notices.

24                     What's at issue here is what did Rimini Street

25   do with respect to its customers, and when they say, you know,

1   "We really don't keep copies of what we sent to our customers,

2   at least not exactly what we sent to them, that's not only bad

3   business practice but, yes, it evidences an intention that

4   that particular version of the patch fix, whatever they're

5   sending to them, not exist any more.

6           And there isn't anything more central to

7   determining exactly what are they doing with respect to their

8   customers and what they're sending them than this type of

9   evidence.  So it's certainly relevant.

10          Another point he made was something about the

11  logs, and then he misspoke, but he said the logs would show

12  which client received which patch or which item.  That's not

13  exactly true.  They'll just show that something was sent to

14  that customer, and it will have a description, but the exact

15  item is, of course, the item that's been deleted from the AFW

16  server.

17          THE COURT:  Well, Mr. Pocker, but I thought it

18  was undisputed that they have an original copy of what they

19  sent associated with the --

20          MR. POCKER:  As we pointed out in our motion,

21  that's not always the case, and what's happened with these

22  name changes and redesignations -- and maybe Mr. Vandevelde

23  wants to analogize it to if you had been sued and you have to

24  have different versions of your order, if you rename them,

25  you've spoliated.

1           THE COURT:  Right.

2           MR. POCKER:  I guess it's -- the central issue

3    is not what is still in Rimini's files, the central issue is

4    what got sent to the customers, and there is no guarantee that

5    what is in their files, given these renaming and overwriting

6    and other changes that they -- for instance, the Court talked

7    about this Raley's thing.

8           Let's say they did send an interim version of a

9    particular patch or fix to Raley's, and then now they have

10   their original there which they then would work on and

11   overwrite and modify so that's what's in Rimini's file might

12   be the final version, but it isn't going to be those

13   intermediate versions, and yet those intermediate versions

14   were sent to the customer, and that's where the violation of

15   the injunction may have occurred.

16          So I -- there is not this exact match between

17   what's in Rimini's files versus what has been deleted from the

18   AFW server.

19          The other thing I wanted to -- this whole

20   numbers dialogue.  Mr. Vandevelde himself said AFW has deleted

21   thousands of files over the years.  So, yeah, if it routinely

22   functions, then, yes, it deleted 15,000 files.

23          Now, if you want to get down to whether or not

24   there's an additional copy of a certain file that was deleted,

25   then that's a separate issue.  But this numbers thing is

1    really not an area where anybody on our side is overstating

2    things.  By his own admission, that's what was happening

3    there, and what was --

4                    THE COURT:  All right.

5                    MR. VANDEVELDE:  I just want to respond to that.

6                    The question is not files, the question under

7    rule, 37 itself, is about information, it's not whether files

8    exist or not.  It's whether information --

9                    THE COURT:  I understand your position -- I

10   understand your position on that, Mr. Vandevelde, thank you.

11                   Go ahead, Mr. Pocker.

12                   MR. POCKER:  Okay.  And then -- to return to

13   this issue of, you know, is our motion timely, as I mentioned

14   before, we have indicated in hearings in this court that we

15   were exploring this issue back at the end of 2019.

16                   The request -- it's almost like no good deed

17   goes unpunished.  We gave Rimini Street a chance to correct

18   this and have dialogue with us, and now that's somehow an

19   indication that we're at fault for not earlier in the process

20   having gone to them and said, you know, "Are you spoliating?

21   Please honor your preservation obligations."

22                   Well, what's happened here is basically they are

23   in control of what happens to their electronic evidence, and

24   as we've set forth in our motion and in our reply and all the

25   authorities is that there's no question that they have the

1    preservation obligation, and they don't need to be warned by

2    us when we suddenly discovered that, "You know what, certain

3    stuff is missing, and your explanation is that it was deleted

4    by this function."

5              So I -- this is turning the burden on its head

6    there.

7              THE COURT:  Well, let me ask you this,

8    Mr. Pocker.

9              Number 17 on the demonstrative evidence says on

10   December 3rd Rimini sent a letter to Oracle stating that it

11   had completed its manual search and provided a list showing

12   that it produced 72 of the last 78 outstanding, which made it

13   a total of 460 out of 466, it had produced everything, and

14   then it says eight months go by, and then you filed the

15   motion.

16             So you're saying -- why -- why was it eight

17   months go by, or why didn't you respond when they said, "We've

18   given you," you know, "460 out of 466"?

19             MR. POCKER:  Why would -- I'm not sure I

20   understand the question, your Honor.  I mean, some of this

21   stuff is gone forever, and that's -- well --

22             THE COURT:  Because all this says undisputed by

23   Oracle that, you know, Rimini changed their system over, they

24   produced 11,000 of the intermediate files, and then on

25   September 23rd, after checking everything, this is in 2019,

1    Oracle sent Rimini a list of 466 files that it said were

2    previously transferred and still had not been produced.

3              And then, you know, for the next few months you

4    worked through all that, and it was left with only six files

5    missing, at least from Rimini's point of view.

6              They're saying they figured everything was okay,

7    and then here comes this motion, you know, after discovery

8    closed.  That seems kind of problematic.  I mean, it --

9              MR. POCKER:  Well, is it problematic, your

10   Honor?  Because I guess we disagree with them as to whether

11   it's all been produced.

12             THE COURT:  Right.

13             MR. POCKER:  And, you know, that's -- obviously

14   it's a matter of doing motions and attachments and whatever.

15             But I don't know, a one-line letter that says,

16   "Oh, no, you haven't, and we're going to move for spoliation"?

17             I don't think there was any secret.  We stated

18   it on the record here in January that there was still this

19   possibility that we would seek relief for the spoliation we

20   believe had occurred.

21             THE COURT:  Okay.  And you say --

22             MR. POCKER:  So I -- it -- it's interesting --

23             THE COURT:  That's what you've done, and you've

24   laid out your case.  Okay.  I understand your response.

25             Does anybody have anything else to add?

1             MR. VANDEVELDE:  Yeah, I just want to -- just a

2     couple of things.

3             I just want to direct your Honor's attention to

4     row 11 of the demonstrative timeline because it's very

5     important, and it shows that Oracle changed its mind.

6             So this was a letter in 2017, August 2017, that

7     is three years ago, and the letter was from Oracle counsel,

8     and it says,

9                 "Rimini used its AFW to distribute materials

10               between customers.  The file passes through Rimini's

11               server on the way to its destination, including via

12               FTP server.  As to responsive materials maintained on

13               customer (inaudible) systems, and distributed through

14               Rimini systems, in lieu of Rimini seeking to produce

15               copies of every single software patch fixer

16               update" -- skipping ahead to the bold, "Oracle would

17               agree that for Rimini to produce one copy and

18               identify and verify discovery responses each customer

19               to who Rimini distributed the patch fixer update."

20             Your Honor, we weren't -- we shoulder willingly

21     the obligation to preserve materials, we do.  We preserve the

22     original file.  There was a dispute.

23             Again, there were hundreds of letters in Rimini

24     II about various issues but also including this precise issue;

25     this precise issue.  The dispute was Oracle and Rimini are

1    having a discussion of what do we do about these FTP

2    transitory intermediate copies, right?

3              And Oracle took a position.  Their position was

4    produce one copy and tell us everyone who got it.  That's

5    exactly --

6              THE COURT:  Okay.

7              MR. VANDEVELDE:  -- what we did.

8              THE COURT:  I understood your argument on that.

9              And you're not saying that that somehow stops

10   them or anything, but you're saying that shows that you were

11   going in good faith and acting reasonably and so on like that.

12             MR. VANDEVELDE:  It has been good faith since

13   day one, your Honor.

14             THE COURT:  I understand your argument,

15   Mr. Vandevelde.  Okay.

16             MR. VANDEVELDE:  Yes.

17             THE COURT:  All right.

18             MR. POCKER:  Your Honor, as to that, if I may

19   just shortly --

20             THE COURT:  Sure.

21             MR. POCKER:  I think the entire atmosphere that

22   Mr. Vandevelde wants to create about the compliance and the

23   cooperation of Rimini Street, we always have to keep in

24   mind -- and I know your Honor wasn't involved in the case

25   earlier, but Rimini Street was sanctioned for destroying a

1    software library.  There were directives to the jury pointing

2    out spoliation of evidence.

3              There have been numerous discovery disputes

4    prior to your assignment to the case that show that there have

5    been a number of questions about Rimini's conduct.

6              If you go back to the whole reason there's an

7    injunction and saw the findings of Judge Hicks back in 2018,

8    he highlights many of the games that were played in discovery

9    here.

10              So I -- I just want to make sure that the

11    record, taken on the entire record in this case, is

12    illustrative of how difficult it is to get Rimini Street to do

13    what it ought to do.

14              And that was our whole point here is -- and you

15    can go back to the correspondence and see that it's limiting,

16    and if you look at our motion and our reply, you'll see our

17    explanation for why 2017 is kind of irrelevant to statements

18    with respect to what's going on now.

19              But this is an instance where the heart of the

20    case is still what did Rimini send to its customers and did

21    that violate the injunction, and that's the very evidence

22    that's missing here, and there has to be a remedy for that.

23              And it's just not an accident that this was

24    designed that way, and we've pointed that out.  I don't want

25    to belabor the pleadings.  I know I asked at one point was

1    this going to be a full-blown motion argument or just

2    addressing the Court's concerns --

3                    THE COURT:  Right.  It's evolved.

4                    All right.  Well, thank you, Mr. Pocker.

5                    I'll give you the last word on that.

6                    MR. VANDEVELDE:  One practical -- just one

7    practical comment I wanted to make, your Honor, which is this.

8                    THE COURT:  Yes.

9                    MR. VANDEVELDE:  This motion should be denied,

10   but, you know, to the point about missing files, we produced

11   99 percent of the 466.  We produced a hundred percent of

12   11,000 files after the tool was changed.

13                   To the extent there are missing files, I want to

14   address this issue of our potential third-party subpoenas,

15   right?  I mean, Oracle, Mr. Pocker mentioned it would take a

16   long time.  The fact of the matter is Oracle twice waited

17   eight months, they waited 16 months in between taking action

18   on anything.

19                   Those files may very well exist.  The six files,

20   for example, that are the -- make up the balance of the 466,

21   those were sent to one client.  There's no version issue,

22   right?  One is a flowchart, one is a state tax form.  They're

23   largely irrelevant.  They were each sent to one client.

24                   We could -- you know, if the Court is inclined,

25   we would not object to allowing Oracle to serve limited

```
 1    third-party subpoenas.  They could be very narrow.

 2                   The reason those old third-party subpoenas took

 3    so long is because they were so broad.  This could be a

 4    subpoena to a limited set of clients for a limited set of file

 5    names and see what's there.

 6                   And that would cure -- I mean, again, these

 7    files are irrelevant.  They haven't been used.  The proof's in

 8    the pudding.  But to the extent Oracle wants them, we would

 9    not object, and, in fact, we would help facilitate getting

10    them with our -- you know, assisting our clients to get them

11    to Oracle.

12                   THE COURT:  Okay, Mr. Vandevelde.  Thank you on

13    that.

14                   Do you have any comment to that, Mr. Pocker?

15    Because that was a new argument.

16                   MR. POCKER:  Well, your Honor, it presumes that

17    he's right with respect to the number of files we're still

18    missing or -- you know, we've hashed this over back and forth

19    for the entire time.

20                   You know, the reason why thousands of deleted

21    files in that time period may be relevant is that if Rimini --

22    they make their argument that, well, you only need one copy of

23    what was sent to everybody.  Well, if it was sent to

24    everybody, that is a probative fact in this case, and the only

25    way we would ever be able to prove that it was sent to
```

1    everybody beyond circumstantially, the most direct proof,

2    would be having the very evidence that's been deleted here.

3                    THE COURT:  All right.

4                    MR. VANDEVELDE:  I'm sorry, I just have to

5    interject.  That is factually wrong.  The log shows one file

6    being sent to a hundred clients, and they have that file and

7    they have the log.  That statement is just factually wrong.

8                    THE COURT:  Yeah, you're talking about two

9    different things.  You're saying that -- which I understand,

10   he's saying that having the original file and the log is not

11   enough, he should be able to see an image or a file of what

12   actually was transmitted to test, to make sure that the one

13   you have is the actual one that went to the customer.

14                    Is that basically what you're saying,

15   Mr. Pocker?

16                    MR. POCKER:  That's a large part of it, your

17   Honor.

18                    THE COURT:  Yeah.

19                    Okay.  Well, thank you, gentlemen.  I must say

20   this case is always interesting, and I'm going to take it

21   under submission.

22                    I'll see if we need to have any further

23   proceedings or if I can decide it on the papers and the

24   comments today.  Thank you very much.

25                    MR. VANDEVELDE:  Thank you, your Honor.

1                              -oOo-

2

3         I certify that the foregoing is a correct
          transcript from the record of proceedings
4         in the above-entitled matter.

5         /s/Margaret E. Griener          9/18/2020
           Margaret E. Griener, CCR #3, FCRR
6          Official Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

46:18, 57:7
**2019** [13] - 20:19, 22:7,
29:3, 29:11, 29:18,
32:1, 32:9, 32:14,
46:23, 47:1, 47:25,
52:15, 53:25
**2020** [5] - 1:8, 3:1,
32:25, 33:4, 47:25
**21st** [3] - 29:11, 29:18,
29:25
**23rd** [3] - 20:19, 32:1,
53:25
**25** [1] - 24:21
**26th** [1] - 32:9
**2:10-cv-106-LRH-VCF** [2] - 1:7, 3:5

## 3

**3** [6] - 1:8, 2:21, 3:1,
5:4, 40:5, 61:5
**37** [1] - 52:7
**37(e** [1] - 7:13
**3rd** [2] - 32:14, 53:10

## 4

**4** [1] - 5:4
**400** [1] - 2:22
**460** [4] - 21:12, 32:17,
53:13, 53:18
**466** [19] - 20:10, 20:23,
21:1, 21:2, 21:11,
22:5, 22:11, 22:12,
22:19, 23:1, 23:8,
32:2, 32:17, 53:13,
53:18, 54:1, 58:11,
58:20

## 7

**72** [1] - 32:16, 53:12
**78** [3] - 32:12, 32:16,
53:12

## 8

**8** [1] - 44:12
**89501** [1] - 2:22

## 9

**9,000** [1] - 19:3
**9/18/2020** [1] - 61:5
**9/3/202.final** [1] - 36:6
**9/3/2020** [1] - 36:5
**97** [1] - 19:24
**98** [1] - 19:23
**99** [6] - 19:18, 20:4,
21:12, 21:24, 23:13,

'

**'18** [2] - 26:19, 26:20
**'fair** [1] - 30:3
**'freezing** [1] - 42:23
**'Oh** [1] - 46:13

/

**/s/Margaret** [1] - 61:5

## 1

**1** [2] - 19:21, 40:5
**10,000** [1] - 19:3
**10,834** [2] - 21:20,
31:4
**100** [1] - 21:20
**10th** [3] - 28:4, 32:25,
33:4
**11** [2] - 29:22, 55:4
**11,000** [7] - 21:20,
31:11, 43:25, 44:1,
45:4, 53:24, 58:12
**11:00** [1] - 3:1
**12** [1] - 30:24
**132** [1] - 19:22
**1362** [1] - 4:18
**1373** [1] - 4:18
**1378** [1] - 4:19
**139** [2] - 7:1, 7:23
**14** [1] - 31:6
**1422** [1] - 4:19
**15** [1] - 31:25
**15,000** [9] - 17:22,
17:23, 19:3, 19:10,
19:11, 20:9, 22:5,
23:4, 51:22
**16** [2] - 32:9, 58:17
**162** [1] - 4:17
**17** [2] - 9:25, 53:9
**18** [15] - 9:20, 9:22,
27:14, 27:16, 31:23,
32:21, 33:12, 34:22,
34:23, 39:10, 39:11,
40:4, 40:6, 40:7,
40:17
**180** [1] - 8:19

## 2

**2** [3] - 1:25, 20:1, 40:5
**2000** [1] - 30:15
**2013** [2] - 24:24, 46:9
**2014** [2] - 25:20, 26:1
**2015** [1] - 26:11
**2017** [7] - 26:19,
26:20, 29:25, 55:6,
57:17
**2018** [4] - 28:5, 46:17,

58:11

## A

**A.M** [1] - 3:1
**able** [3] - 47:18, 59:25,
60:11
**above-entitled** [1] -
61:4
**absolutely** [4] - 15:8,
26:23, 32:6, 48:14
**access** [2] - 10:5,
16:22
**accident** [1] - 57:23
**accommodate** [2] -
21:15, 33:9
**accommodated** [1] -
21:18
**according** [1] - 9:12
**accounting** [1] - 20:9
**accurate** [2] - 22:1,
37:21
**accusation** [1] - 25:22
**accusing** [2] - 17:8,
20:4
**acknowledged** [1] -
29:25
**acting** [1] - 56:11
**action** [2] - 34:21,
58:17
**actions** [1] - 13:23
**actor** [1] - 25:22
**acts** [1] - 20:4
**actual** [2] - 26:10,
36:5, 60:13
**add** [5] - 15:24, 41:16,
41:17, 54:25
**added** [3] - 15:10,
41:10, 41:11
**additional** [4] - 5:10,
7:18, 34:5, 51:24
**address** [13] - 6:9,
11:13, 14:10, 16:5,
17:15, 17:19, 18:6,
24:7, 27:21, 31:7,
41:6, 45:10, 58:14
**addressed** [2] - 10:17,
13:20
**addressing** [1] - 58:2
**admission** [1] - 52:2
**afternoon** [1] - 41:11
**AFW** [19] - 6:24, 6:25,
9:12, 9:19, 10:20,
12:15, 13:13, 13:16,
14:23, 14:25, 15:4,
41:22, 46:9, 46:20,
47:6, 50:15, 51:18,
51:20, 55:9
**ago** [8] - 14:22, 25:1,
25:25, 28:20, 38:15,

43:5, 47:11, 55:7
**agree** [2] - 6:12, 55:17
**agrees** [3] - 29:17,
33:24
**ahead** [6] - 3:16,
15:22, 23:10, 39:16,
52:11, 55:16
**akin** [1] - 13:18
**al** [2] - 3:5, 3:6
**alleged** [2] - 18:21,
31:7
**allegedly** [1] - 20:15
**alleging** [1] - 35:12
**ALLEN** [2] - 2:10, 4:3
**Allen** [2] - 4:1, 4:3
**allow** [1] - 14:10
**allowing** [2] - 18:18,
58:25
**almost** [13] - 8:19,
11:8, 16:21, 21:20,
25:1, 28:20, 30:24,
31:11, 33:4, 33:5,
33:8, 43:1, 52:16
**AMERICA** [1] - 1:4
**analogize** [1] - 50:23
**analogous** [1] - 13:20
**analogy** [3] - 35:11,
41:7, 42:19
**analysis** [1] - 7:3
**analyze** [1] - 26:14
**analyzed** [10] - 23:7,
23:8, 25:25, 26:18,
26:21, 28:6, 28:19,
30:14, 31:17, 33:6
**analyzing** [1] - 26:20
**Angeles** [1] - 2:7
**answer** [3] - 15:12,
18:20, 28:3
**answers** [1] - 6:3
**anticipated** [1] - 46:10
**anticipation** [1] - 7:15
**APPEARANCES** [2] -
1:16, 2:1
**appearances** [1] - 3:7
**Appearances** [1] -
1:25
**apples** [1] - 21:25
**appreciate** [1] - 4:13
**approach** [2] - 9:3,
46:6
**appropriate** [1] - 14:9
**area** [1] - 52:1
**argue** [2] - 8:8, 30:11
**arguing** [3] - 8:14,
24:8, 24:21
**argument** [18] - 4:15,
6:17, 13:12, 13:22,
16:3, 17:24, 20:25,
24:22, 34:17, 35:4,
40:17, 40:19, 46:8,

56:8, 56:14, 58:1,
59:15, 59:22
**artifact** [1] - 42:6
**aside** [1] - 28:9
**aspect** [2] - 15:1,
16:20
**assertions** [1] - 14:15
**assignment** [1] - 57:4
**assist** [2] - 6:4, 7:8
**assisting** [1] - 59:10
**associated** [2] - 17:7,
50:19
**assume** [1] - 13:15
**assumption** [1] - 7:22
**asymmetrical** [1] -
17:4
**atmosphere** [1] -
56:21
**attach** [3] - 20:17,
20:18, 20:22
**attached** [2] - 20:20,
20:23
**attachment** [2] -
12:23, 13:5
**attachments** [1] -
54:14
**attempts** [1] - 16:14
**attention** [1] - 55:3
**Attorney** [8] - 1:17,
1:19, 1:22, 2:3, 2:6,
2:8, 2:10, 2:12
**audio** [1] - 4:10
**August** [4] - 29:11,
29:18, 29:25, 55:6
**authoritative** [1] -
42:15
**authorities** [1] - 52:25
**automatic** [1] - 12:4
**automatically** [1] -
12:3
**available** [1] - 7:3
**average** [1] - 8:17
**avoided** [1] - 44:24
**aware** [1] - 4:7

## B

**backup** [1] - 42:22
**bad** [1] - 50:2
**balance** [1] - 58:20
**based** [5] - 7:22,
18:16, 21:9, 23:14,
27:11
**basis** [1] - 35:24
**BEFORE** [1] - 1:2
**began** [1] - 26:19
**beginning** [3] - 3:8,
15:10, 43:5
**behalf** [3] - 3:9, 3:22,
4:4

**behavior** [2] - 29:7, 49:10
**belabor** [1] - 57:25
**belief** [1] - 15:17
**benefit** [1] - 49:12
**best** [2] - 8:8, 40:25
**better** [1] - 4:13
**between** [12] - 17:21, 19:7, 20:9, 34:25, 39:14, 39:17, 46:21, 49:3, 49:4, 51:16, 55:10, 58:17
**beyond** [3] - 12:10, 16:19, 60:1
**big** [2] - 16:5, 31:8
**bit** [8] - 21:14, 25:5, 25:13, 29:22, 38:16
**bit-for-bit** [3] - 25:5, 25:13, 38:16
**blown** [1] - 58:1
**Boise** [1] - 3:10
**bold** [1] - 55:16
**bore** [1] - 10:18
**bridge** [1] - 43:2
**brief** [6] - 17:6, 17:23, 20:25, 25:21, 32:5, 44:12
**briefing** [2] - 9:17, 11:17
**briefs** [1] - 44:8
**brings** [1] - 26:4
**broad** [2] - 42:24, 59:3
**buckets** [1] - 21:23
**built** [1] - 25:3
**bunch** [1] - 36:16
**burden** [3] - 17:3, 46:7, 53:5
**business** [3] - 16:20, 38:21, 50:3
**buys** [1] - 16:13

**C**

**calculation** [1] - 6:23
**California** [5] - 1:6, 1:20, 1:22, 2:7, 2:9
**CAM** [1] - 1:2
**cannot** [6] - 5:9, 7:17, 15:12, 25:10, 27:9, 27:11, 29:16, 42:6
**capability** [1] - 26:17
**capture** [1] - 21:16
**captured** [1] - 21:19
**careful** [1] - 47:17
**cares** [1] - 49:16
**case** [21] - 3:5, 4:12, 4:23, 8:13, 8:14, 9:7, 11:17, 12:6, 13:20, 16:19, 30:11, 31:18, 39:2, 50:21, 54:24,

56:24, 57:4, 57:11, 57:20, 59:24, 60:20
**cases** [5] - 4:8, 4:10, 8:15, 34:8, 34:11
**CASEY** [1] - 2:8
**Casey** [1] - 3:23
**cast** [1] - 42:17
**causes** [1] - 25:12
**CCR** [2] - 2:21, 61:5
**central** [4] - 48:14, 50:6, 51:2, 51:3
**certain** [8] - 6:5, 10:7, 45:16, 46:20, 48:17, 48:25, 51:24, 53:2
**certainly** [5] - 13:8, 13:18, 13:24, 24:16, 50:9
**certify** [1] - 61:3
**chambers** [1] - 35:17
**chance** [2] - 14:11, 52:17
**change** [10] - 15:5, 29:2, 29:5, 29:19, 29:21, 30:12, 30:25, 37:5, 43:4, 43:14
**changed** [1] - 10:10, 23:16, 26:3, 26:6, 26:9, 30:19, 30:20, 31:1, 31:3, 36:23, 39:4, 43:14, 43:16, 43:25, 44:22, 44:23, 45:21, 53:23, 55:5, 58:12
**changes** [3] - 34:24, 50:22, 51:6
**character** [1] - 41:16
**characterizations** [1] - 18:12
**characterize** [1] - 47:3
**characterized** [1] - 24:4
**checking** [1] - 53:25
**chronological** [1] - 29:23
**Circuit** [1] - 49:14
**circumstantially** [1] - 60:1
**citation** [2] - 31:21, 41:17
**citations** [2] - 31:2, 40:23
**cite** [2] - 31:23, 44:11
**cited** [5] - 31:10, 31:17, 42:14, 44:2, 44:9
**cites** [3] - 19:20, 19:22, 47:1
**City** [1] - 1:20
**civil** [1] - 4:10
**claim** [1] - 18:22,

18:23
**claiming** [1] - 18:22
**claims** [1] - 19:10
**clarification** [1] - 45:16
**classic** [1] - 48:22
**clear** [2] - 40:17, 45:7
**clearly** [1] - 13:21
**CLERK** [1] - 3:4
**clerk** [1] - 37:2
**click** [1] - 12:17
**client** [4] - 42:3, 50:12, 58:21, 58:23
**client's** [6] - 25:6, 25:10, 25:13, 27:8, 34:2, 38:17
**clients** [16] - 6:14, 18:2, 19:14, 19:16, 19:24, 20:4, 28:2, 30:2, 30:9, 32:24, 47:18, 48:10, 59:4, 59:10, 60:6
**clipboard** [2] - 12:16, 13:4
**closed** [1] - 54:8
**code** [12] - 26:10, 26:11, 26:12, 26:14, 26:20, 28:5, 28:18, 30:14, 33:5, 43:22, 44:5, 49:23
**collaboration** [1] - 32:19
**collaborative** [1] - 30:22
**collect** [2] - 32:7, 34:7
**Colorado** [1] - 1:4
**column** [1] - 31:21
**combined** [1] - 21:25
**coming** [1] - 4:14
**commendable** [2] - 29:7, 30:22
**commended** [1] - 16:16
**comment** [2] - 58:7, 59:14
**comments** [1] - 60:24
**company** [1] - 14:18
**comparable** [1] - 21:24
**compel** [1] - 32:24
**compelled** [1] - 16:17
**competing** [1] - 13:2
**complain** [2] - 36:2, 36:10
**complete** [4] - 8:17, 8:18, 22:21, 22:25
**completed** [2] - 32:15, 39:5, 53:11
**compliance** [3] - 47:19, 48:15, 56:22

**complying** [1] - 47:20
**computer** [3] - 35:16, 35:20
**concept** [1] - 38:5
**conception** [1] - 40:3
**concerned** [1] - 48:13
**concerns** [1] - 58:2
**concessions** [1] - 11:18
**condition** - 10:22, 11:6
**conduct** [2] - 48:17, 57:5
**confer** [4] - 20:15, 21:7, 32:22, 43:8
**conference** [5] - 3:11, 3:18, 4:13, 6:7, 42:15
**confirmed** [2] - 26:1, 31:2
**confirms** [1] - 27:4
**connection** [1] - 22:16
**considered** [1] - 5:15
**considering** [1] - 8:25
**consistent** [1] - 28:11
**constantly** [1] - 42:17
**constitute** [1] - 48:17
**contempt** [7] - 5:16, 31:9, 31:18, 44:2, 44:3, 44:16, 45:5
**contending** [1] - 44:4
**content** [4] - 11:1, 11:2, 34:19, 40:13
**continued** [2] - 1:25, 32:12
**Continued** [1] - 2:1
**contrary** [1] - 49:14
**control** [2] - 10:5, 52:23
**controversy** [1] - 12:7
**cooperation** [1] - 56:23
**cooperative** [1] - 30:22
**copied** [2] - 25:8, 42:18
**copies** [16] - 14:19, 21:22, 27:1, 27:5, 29:13, 30:20, 32:23, 33:7, 37:10, 37:23, 38:13, 41:5, 48:9, 50:1, 55:15, 56:2
**copy** [32] - 10:15, 12:17, 19:15, 23:21, 23:23, 25:6, 25:10, 25:11, 25:13, 26:16, 27:7, 27:10, 29:15, 30:1, 30:8, 30:16, 34:1, 34:3, 34:5, 37:23, 38:13, 38:16,

38:18, 38:20, 41:25, 42:22, 50:18, 51:24, 55:17, 56:4, 59:22
**copyright** [1] - 49:23
**copyrighted** [4] - 35:13, 36:13, 36:18, 36:23
**corporation** [4] - 1:4, 1:5, 1:6, 1:10
**CORPORATION** [1] - 1:6
**correct** [2] - 52:17, 61:3
**correspondence** [4] - 46:18, 47:1, 47:2, 57:15
**counsel** [8] - 3:7, 3:13, 3:24, 4:1, 17:7, 24:20, 30:23, 55:7
**count** [2] - 20:14, 32:5
**counting** [1] - 20:14
**counts** [1] - 20:7
**couple** [3] - 11:2, 16:2, 55:2
**course** [3] - 8:25, 34:12, 50:15
**COURT** [71] - 1:1, 3:14, 3:16, 3:20, 4:1, 4:5, 5:22, 6:16, 6:20, 7:5, 7:10, 8:3, 11:9, 12:12, 14:21, 15:9, 15:15, 15:17, 15:21, 16:7, 22:9, 22:20, 22:24, 23:10, 23:22, 23:24, 24:9, 27:13, 27:19, 27:22, 33:11, 34:15, 35:9, 38:1, 38:9, 38:22, 39:8, 39:11, 39:16, 40:1, 40:15, 41:1, 41:19, 42:8, 42:13, 44:14, 44:17, 45:6, 45:23, 46:5, 46:14, 50:17, 51:1, 52:4, 52:9, 53:7, 53:22, 54:12, 54:21, 54:23, 56:6, 56:8, 56:14, 56:17, 56:20, 58:3, 58:8, 59:12, 60:3, 60:8, 60:18
**court** [1] - 52:14
**Court** [23] - 6:3, 7:8, 8:24, 9:9, 9:17, 10:18, 11:13, 11:15, 11:20, 13:24, 14:3, 14:13, 16:2, 32:23, 40:24, 46:23, 47:22, 47:23, 48:21, 49:15, 51:6, 58:24
**Court's** [3] - 6:1, 48:3,

58:2
**courtroom** [1] - 23:20
**courts** [1] - 12:1
**cover** [1] - 17:14
**crashes** [1] - 37:13
**create** [6] - 25:5, 37:23, 41:9, 42:10, 42:11, 56:22
**created** [6] - 9:22, 15:2, 25:1, 25:13, 26:7
**creates** [6] - 25:11, 27:10, 35:7, 37:10, 37:23
**crickets** [1] - 28:22
**criminal** [1] - 4:7
**cripple** [1] - 42:25
**critical** [3] - 18:6, 25:9, 26:23
**Cross** [2] - 19:22, 20:1
**cross** [3] - 48:17, 48:19, 49:21
**cross-use** [3] - 48:17, 48:19, 49:21
**cure** [1] - 59:6
**custom** [1] - 25:3
**custom-built** [1] - 25:3
**customer** [15] - 9:20, 10:1, 10:9, 10:14, 10:23, 11:5, 40:13, 49:12, 49:18, 50:14, 51:14, 55:13, 55:18, 60:13
**customers** [16] - 6:22, 7:2, 7:24, 9:4, 9:15, 39:18, 49:9, 49:13, 49:17, 49:20, 49:25, 50:1, 50:8, 51:4, 55:10, 57:20
**customers'** [2] - 10:6
**cut** [1] - 18:11

### D

**data** [1] - 18:7
**days** [1] - 8:19
**DC** [1] - 2:4
**decade** [1] - 16:21
**December** [4] - 28:4, 32:14, 53:10
**decide** [3] - 24:11, 45:14, 60:23
**decided** [1] - 12:2
**decision** [1] - 13:6
**declaration** [2] - 14:8, 16:25
**declarations** [1] - 13:8
**deconstruct** [1] - 33:19

**deed** [1] - 52:16
**defeats** [1] - 49:19
**Defendants** [1] - 1:11
**DEFENDANTS** [1] - 2:6
**defer** [1] - 45:13
**definition** [1] - 30:21
**Delaware** [1] - 1:5
**delay** [1] - 9:1
**delete** [2] - 25:7, 26:24
**deleted** [17] - 9:12, 10:3, 12:3, 25:16, 29:15, 33:23, 34:11, 39:19, 45:19, 50:15, 51:17, 51:20, 51:22, 51:24, 53:3, 59:20, 60:2
**deleting** [1] - 14:23
**deletion** [7] - 9:13, 12:4, 12:5, 13:17, 15:1, 15:3, 15:18
**demanded** [1] - 20:15
**demonstrates** [2] - 44:15, 44:16
**demonstrative** [6] - 4:20, 18:9, 23:25, 24:4, 53:9, 55:4
**denial** [1] - 18:13
**denied** [5] - 18:16, 33:16, 44:19, 45:22, 58:9
**depositions** [1] - 8:11
**described** [1] - 16:25
**description** [1] - 50:14
**design** [1] - 28:11
**designed** [6] - 37:8, 37:16, 37:25, 38:15, 38:16, 57:24
**desktop** [2] - 35:16, 35:21
**despite** [3] - 21:17, 30:25, 31:15
**destination** [2] - 27:7, 55:11
**destroyed** [3] - 9:11, 18:23, 25:16
**destroying** [2] - 46:10, 56:25
**destroys** [1] - 33:2
**destruction** [1] - 10:13
**detail** [3] - 10:18, 21:13, 26:15
**detailed** [2] - 6:2, 23:4
**detainees** [1] - 4:9
**determined** [1] - 7:1
**determining** [1] - 50:7
**dialogue** [3] - 48:1, 51:20, 52:18
**difference** [2] - 19:6,

20:9
**different** [26] - 6:8, 11:1, 11:2, 11:7, 13:1, 19:2, 19:14, 19:23, 20:4, 22:1, 27:15, 34:18, 34:19, 34:22, 34:24, 35:19, 35:23, 35:25, 36:4, 36:6, 39:4, 39:12, 41:23, 41:24, 50:24, 60:9
**difficult** [1] - 57:12
**diligence** [1] - 32:18
**direct** [2] - 55:3, 60:1
**directives** [1] - 57:1
**directly** [2] - 25:10, 42:6
**disagree** [4] - 29:4, 29:20, 43:15, 54:10
**disagreed** [2] - 21:15, 44:22
**disagreement** [2] - 21:18, 30:25
**discovered** [1] - 53:2
**discovery** [27] - 5:10, 6:13, 7:1, 7:8, 7:18, 8:1, 8:7, 8:9, 8:10, 8:12, 8:15, 9:1, 10:14, 11:10, 16:16, 16:18, 17:1, 18:18, 30:5, 35:14, 46:24, 47:12, 48:9, 54:7, 55:18, 57:3, 57:8
**discrepancies** [1] - 6:5
**discrepancy** [3] - 17:21, 22:4, 23:12
**discuss** [3] - 28:17, 28:20, 29:8
**discussed** [1] - 29:8
**discussing** [1] - 39:20
**discussion** [4] - 46:3, 47:7, 48:21, 56:1
**discussions** [1] - 47:23
**disengage** [1] - 12:5
**disk** [1] - 37:11
**dispute** [11] - 9:17, 12:14, 18:13, 21:9, 22:20, 22:22, 27:3, 45:8, 47:4, 55:22, 55:25
**disputes** [3] - 6:6, 7:9, 57:3
**disseminated** [1] - 49:8
**distribute** [1] - 55:9
**distributed** [3] - 30:9, 55:13, 55:19
**distribution** [1] -

48:25
**DISTRICT** [3] - 1:1, 1:1, 1:2
**district** [1] - 17:2
**document** [6] - 9:16, 9:23, 21:2, 24:1, 38:9, 41:21
**documents** [10] - 5:7, 6:15, 7:2, 7:22, 9:6, 9:10, 10:8, 13:13, 13:15, 49:1
**dollars** [1] - 17:3
**done** [7] - 8:11, 8:12, 29:2, 29:20, 30:24, 44:21, 54:23
**down** [4] - 12:18, 48:4, 48:7, 51:23
**drafted** [1] - 36:11
**drafting** [1] - 37:6
**draw** [1] - 24:10
**drawing** [1] - 35:6
**driving** [1] - 23:12
**Dunn** [2] - 3:22, 3:24
**duplicate** [5] - 21:22, 25:6, 25:13, 31:11, 42:11
**during** [5] - 8:6, 12:5, 20:14, 21:7, 26:7

### E

**e-mail** [2] - 12:23, 13:5
**early** [2] - 47:24, 47:25
**ease** [1] - 20:20
**easier** [1] - 13:8
**ECF** [1] - 35:22
**edit** [1] - 6:17
**edited** [6] - 34:8, 34:13, 41:22, 41:24, 45:20
**effective** [1] - 9:3
**efforts** [1] - 16:16
**eight** [7] - 28:4, 28:23, 29:9, 32:21, 53:14, 53:16, 58:17
**either** [2] - 9:11, 22:18
**electronic** [4] - 9:7, 39:24, 49:1, 52:23
**electronically** [1] - 7:14
**element** [1] - 7:13
**empty** [1] - 46:20
**end** [8] - 9:21, 12:7, 21:10, 24:14, 35:1, 39:13, 46:18, 52:15
**enforcement** [2] - 46:25, 47:11
**engage** [1] - 29:10
**engaged** [1] - 29:8
**enter** [1] - 7:21

**entire** [5] - 13:11, 48:6, 56:21, 57:11, 59:19
**entitled** [3] - 21:6, 24:22, 61:4
**environments** [2] - 48:24, 49:12
**Eric** [1] - 3:22
**ERIC** [1] - 2:6
**ESI** [2] - 42:17, 42:24
**especially** [2] - 4:11, 12:1
**essentially** [1] - 9:10
**estoppel** [1] - 30:11
**et** [2] - 3:5, 3:6
**event** [2] - 10:12, 30:24
**eventually** [1] - 44:21
**evidence** [20] - 4:20, 5:15, 11:23, 14:4, 14:20, 25:24, 33:2, 46:10, 47:17, 48:8, 48:10, 48:18, 48:19, 49:21, 50:9, 52:23, 53:9, 57:2, 57:21, 60:2
**evidences** [1] - 50:3
**evidentiary** [8] - 11:14, 11:25, 13:25, 14:3, 18:4, 24:11, 45:8, 45:15
**evolved** [1] - 58:3
**exact** [8] - 9:15, 10:13, 10:15, 29:6, 30:7, 49:10, 50:14, 51:16
**exactly** [17] - 18:10, 25:7, 26:22, 28:6, 28:8, 28:19, 29:2, 29:19, 29:24, 37:16, 37:19, 38:11, 49:19, 50:2, 50:7, 50:13, 56:5
**examination** [1] - 6:25
**example** [11] - 19:13, 19:22, 31:20, 31:21, 31:23, 34:22, 42:18, 43:23, 44:11, 48:22, 58:20
**examples** [4] - 9:16, 19:20, 27:14, 34:18
**exception** [1] - 14:2
**executed** [1] - 9:13
**Exhibit** [2] - 19:21, 20:1
**exhibits** [1] - 46:18
**exist** [6] - 13:16, 27:1, 27:6, 50:5, 52:8, 58:19
**existed** [4] - 12:19, 15:3, 15:17, 27:1

**existing** [4] - 15:9, 18:7, 25:3, 37:23
**exists** [6] - 9:14, 25:17, 27:11, 35:1, 42:9, 48:19
**expense** [1] - 17:2
**expert** [10] - 19:4, 19:20, 23:5, 27:4, 29:17, 31:2, 33:24, 40:24, 44:9
**experts** [15] - 13:9, 14:1, 14:7, 16:22, 25:25, 26:19, 26:21, 28:6, 28:9, 28:18, 30:14, 31:17, 33:6, 34:3, 47:10
**explain** [4] - 7:10, 18:10, 22:4, 31:14
**explanation** [2] - 53:3, 57:17
**explore** [2] - 5:4, 49:19
**exploring** [1] - 52:15
**extensive** [1] - 8:15
**extent** [2] - 58:13, 59:8
**extra** [1] - 41:5
**extremely** [1] - 16:18

## F

**facilitate** [1] - 59:9
**fact** [18] - 6:8, 8:11, 9:5, 11:22, 12:1, 12:19, 16:15, 24:3, 27:4, 35:7, 36:23, 45:13, 45:18, 45:19, 47:23, 58:16, 59:9, 59:24
**factor** [2] - 14:13, 20:8
**factors** [1] - 23:5
**facts** [8] - 17:11, 18:12, 18:16, 27:12, 33:15, 45:8, 45:17, 47:3
**factual** [9] - 6:5, 7:9, 11:21, 11:23, 12:9, 13:2, 14:11, 16:2
**factually** [2] - 60:5, 60:7
**failed** [2] - 5:8, 7:16
**fair** [1] - 14:9
**fairly** [1] - 5:20
**faith** [2] - 56:11, 56:12
**false** [5] - 17:8, 32:6, 33:2, 33:3
**familiar** [1] - 38:4
**far** [2] - 16:19, 48:13
**fault** [1] - 52:19
**FCRR** [2] - 2:21, 61:5

**Federiksen** [1] - 20:1
**Federiksen-Cross** [1] - 20:1
**FERENBACH** [1] - 1:2
**few** [10] - 4:8, 25:11, 38:18, 41:11, 41:12, 42:9, 42:21, 45:25, 46:15, 54:3
**figure** [2] - 21:1, 47:13
**figured** [1] - 54:6
**figures** [1] - 19:3
**file** [53] - 10:25, 19:7, 19:8, 19:9, 19:11, 19:14, 19:15, 19:23, 20:3, 20:5, 20:7, 21:1, 21:14, 21:21, 25:6, 25:8, 25:17, 26:25, 27:1, 27:6, 30:2, 30:3, 31:10, 31:12, 33:22, 34:5, 34:7, 36:4, 37:4, 37:11, 37:19, 38:6, 38:20, 39:3, 39:25, 41:12, 41:15, 41:18, 42:19, 44:13, 45:2, 45:20, 51:11, 51:24, 55:10, 55:22, 59:4, 60:5, 60:6, 60:10, 60:11
**file's** [1] - 37:5
**filed** [6] - 4:20, 23:21, 24:19, 31:8, 32:25, 53:14
**Filed** [1] - 35:24
**files** [81] - 6:18, 6:19, 6:21, 9:15, 10:19, 10:25, 11:19, 11:21, 11:22, 12:3, 12:15, 17:20, 17:25, 18:3, 18:18, 18:21, 18:25, 19:7, 19:10, 19:18, 20:16, 20:21, 20:23, 21:4, 21:6, 21:8, 21:11, 21:16, 21:19, 21:20, 22:7, 22:12, 22:17, 23:1, 23:2, 23:13, 23:14, 23:15, 27:16, 28:2, 30:8, 31:4, 31:16, 31:19, 32:2, 32:8, 32:13, 32:17, 32:24, 34:10, 34:24, 34:25, 36:3, 39:4, 39:10, 39:11, 39:18, 43:22, 44:7, 46:20, 47:5, 51:3, 51:5, 51:17, 51:21, 51:22, 52:6, 52:7, 53:24, 54:1, 54:4, 58:10, 58:12, 58:13, 58:19, 59:7, 59:17, 59:21
**filing** [1] - 48:2
**final** [11] - 9:21, 9:24, 10:2, 31:22, 31:24, 36:16, 36:18, 39:24, 44:13, 49:3, 51:12
**Final** [1] - 35:22
**finally** [3] - 29:11, 30:18, 43:13
**findings** [2] - 11:23, 57:7
**fine** [4] - 29:5, 29:20, 30:8, 48:24
**fingerprint** [1] - 38:8
**finish** [2] - 15:22, 38:25
**first** [10] - 5:16, 5:25, 6:23, 15:1, 17:19, 18:25, 25:11, 28:1, 29:12, 29:18
**fit** [1] - 27:16
**five** [5] - 26:13, 26:18, 28:5, 33:4, 33:5
**fix** [6] - 9:22, 9:24, 11:10, 49:5, 50:4, 51:9
**fixed** [1] - 46:13
**fixer** [2] - 55:15, 55:19
**flesh** [1] - 16:4, 40:25
**Flexner** [1] - 3:10
**flip** [1] - 15:23
**flowchart** [1] - 58:22
**focusing** [1] - 48:21
**folder** [5] - 25:12, 28:13, 35:21, 35:23, 37:4
**follow** [1] - 24:18
**FOR** [3] - 1:17, 2:3, 2:6
**foregoing** [1] - 61:3
**forever** [1] - 53:21
**forget** [1] - 14:22
**form** [3] - 10:9, 10:22, 58:22
**forth** [4] - 40:22, 46:21, 52:24, 59:18
**forward** [1] - 18:19
**four** [5] - 6:8, 16:5, 17:15, 24:7, 26:11
**fourth** [1] - 15:23
**frame** [1] - 8:23
**Francisco** [1] - 1:22
**frank** [1] - 14:7
**frankly** [1] - 21:8
**Frederiksen** [1] - 19:22
**Frederiksen-Cross** [1] - 19:22
**front** [1] - 48:15
**FTP** [9] - 25:12, 26:16,

27:5, 28:12, 31:4, 43:10, 55:12, 56:1
**full** [1] - 58:1
**full-blown** [1] - 58:1
**function** [4] - 15:3, 42:5, 47:9, 53:4
**functioned** [1] - 47:10
**functions** [2] - 12:6, 14:18, 51:22
**fundamental** [1] - 19:6
**fundamentally** [1] - 13:11

## G

**games** [1] - 57:8
**gee** [1] - 49:22
**general** [2] - 8:23, 40:12
**generate** [4] - 36:20, 38:7, 38:14, 41:5
**generating** [1] - 37:24
**gentlemen** [1] - 60:19
**Gibson** [3] - 3:22, 3:23
**given** [4] - 4:22, 22:25, 51:5, 53:18
**glad** [1] - 5:23
**glaring** [1] - 22:4
**go-to** [1] - 42:16
**grant** [1] - 4:24
**granted** [1] - 5:2
**great** [3] - 5:22, 10:18, 41:1
**Griener** [2] - 2:21, 61:5, 61:5
**guarantee** [2] - 9:14, 51:4
**guess** [5] - 15:5, 27:15, 34:23, 51:2, 54:10

## H

**hang** [1] - 12:22
**happy** [3] - 16:5, 45:15, 45:16
**harmed** [1] - 18:23
**hashed** [1] - 59:18
**head** [4] - 27:23, 41:6, 46:7, 53:5
**hear** [7] - 5:24, 8:24, 13:25, 15:24, 16:7, 24:16, 24:18
**HEARING** [1] - 1:14
**hearing** [18] - 3:4, 5:1, 6:2, 11:14, 11:25, 13:22, 13:25, 14:3, 14:4, 14:5, 18:4, 22:15, 24:6, 24:12, 24:15, 45:8, 45:15,

47:22
**hearings** [1] - 52:14
**heart** [1] - 57:19
**held** [2] - 31:9, 31:18
**help** [3] - 16:4, 18:14, 59:9
**helpful** [5] - 8:2, 23:19, 24:13, 24:17, 35:11
**Hicks** [3] - 5:14, 48:15, 57:7
**hide** [2] - 25:24, 36:23
**highlighted** [1] - 14:16
**highlights** [1] - 57:8
**himself** [1] - 51:20
**history** [1] - 17:1
**hit** [1] - 18:24
**hold** [2] - 23:24, 34:15
**honesty** [1] - 15:11
**Honor** [59] - 3:9, 3:21, 4:3, 5:21, 6:1, 7:25, 13:7, 15:12, 16:1, 16:11, 16:13, 16:15, 17:18, 18:17, 21:3, 21:11, 23:19, 23:20, 23:23, 24:2, 24:6, 24:23, 24:25, 28:20, 30:10, 35:5, 35:12, 35:14, 35:18, 35:20, 36:3, 36:8, 36:10, 36:13, 36:15, 37:1, 38:4, 39:9, 40:21, 41:7, 41:8, 42:19, 43:1, 43:18, 43:23, 43:24, 44:13, 45:13, 53:20, 54:10, 55:20, 56:13, 56:18, 56:24, 58:7, 59:16, 60:17, 60:25
**honor** [1] - 52:21
**Honor's** [9] - 17:15, 18:1, 18:3, 18:5, 18:19, 28:1, 33:17, 34:9, 55:3
**HONORABLE** [1] - 1:2
**house** [2] - 3:13, 3:24
**hundred** [9] - 19:14, 19:16, 20:3, 20:8, 21:24, 23:6, 23:15, 58:11, 60:6
**hundreds** [8] - 8:20, 43:7, 43:8, 43:9, 44:8, 55:23

## I

**identical** [1] - 9:6
**identified** [1] - 6:6
**identify** [1] - 55:18
**II** [5] - 8:14, 8:22, 26:8,

46:19, 55:24
**illustrate** [1] - 9:16
**illustrative** [1] - 57:12
**image** [1] - 60:11
**images** [3] - 13:12, 13:15, 13:18
**imagine** [1] - 35:12
**important** [5] - 20:12, 29:23, 33:17, 45:14, 55:5
**impossible** [1] - 25:17
**in-house** [2] - 3:13, 3:24
**inaccurate** [1] - 19:5
**inaudible** [8] - 8:4, 9:4, 13:21, 20:3, 23:4, 28:2, 42:15, 55:13
**inaudible)** [1] - 11:24
**Inc** [2] - 3:5, 3:6
**INC** [3] - 1:4, 1:5, 1:9
**inception** [1] - 26:5
**inclined** [1] - 58:24
**including** [4] - 21:22, 44:5, 55:11, 55:24
**incorporated** [1] - 35:13
**indicated** [1] - 52:14
**indication** [1] - 52:19
**indisputable** [3] - 25:15, 27:3, 33:25
**individual** [2] - 1:10, 20:7
**inference** [2] - 35:6, 35:8
**information** [12] - 7:14, 9:7, 9:10, 13:9, 18:15, 18:21, 18:23, 25:16, 33:21, 47:6, 52:7, 52:8
**initial** [1] - 5:21
**injunction** [18] - 15:14, 15:18, 15:19, 25:23, 26:8, 31:9, 46:25, 47:12, 47:14, 47:19, 47:20, 48:16, 49:11, 49:13, 51:15, 57:7, 57:21
**inquiries** [1] - 6:11
**instance** [3] - 8:16, 51:6, 57:19
**instances** [3] - 10:24, 23:6, 48:17
**intend** [1] - 17:11
**intention** [1] - 50:3
**interested** [1] - 6:3
**interesting** [2] - 54:22, 60:20
**interim** [2] - 9:25, 51:8
**interject** [1] - 60:5

**intermediate** [17] - 21:19, 21:21, 29:13, 30:19, 31:4, 31:10, 31:16, 31:22, 33:7, 38:18, 38:20, 40:6, 47:5, 51:13, 53:24, 56:2
**INTERNATIONAL** [1] - 1:5
**invited** [2] - 28:20, 29:8
**involved** [5] - 4:12, 7:20, 8:20, 43:7, 56:24
**irrelevance** [1] - 44:16
**irrelevant** [6] - 18:15, 31:19, 45:5, 57:17, 58:23, 59:7
**Irvine** [1] - 2:9
**Isaacson** [1] - 3:18
**ISAACSON** [1] - 2:3
**issue** [29] - 5:7, 6:21, 9:3, 12:2, 14:1, 17:25, 19:1, 19:3, 22:3, 24:3, 28:23, 29:10, 41:6, 42:16, 43:2, 43:9, 48:14, 49:11, 49:24, 51:2, 51:3, 51:25, 52:13, 52:15, 55:24, 55:25, 58:14, 58:21
**issued** [1] - 25:23
**issues** [11] - 5:3, 6:9, 13:9, 14:11, 16:3, 16:5, 24:7, 24:10, 24:16, 45:17, 55:24
**item** [18] - 25:19, 26:4, 26:11, 26:18, 26:23, 27:24, 28:4, 28:24, 29:11, 29:22, 30:24, 31:25, 32:9, 32:21, 49:8, 50:12, 50:15
**items** [1] - 10:13
**itself** [4] - 19:8, 27:6, 47:2, 52:7

### J

**Jack** [1] - 3:24
**JAMES** [1] - 1:19
**James** [1] - 3:13
**January** [1] - 54:18
**JOHN** [2] - 1:21, 2:12
**John** [1] - 3:12
**JUDGE** [1] - 1:2
**Judge** [3] - 5:14, 48:15, 57:7
**judges** [1] - 16:15
**July** [2] - 32:25, 33:4
**jump** [2] - 33:13,

38:24
**jury** [1] - 57:1

### K

**keep** [9] - 30:1, 36:20, 37:4, 40:6, 40:7, 42:2, 50:1, 56:23
**kept** [8] - 9:23, 33:7, 34:5, 34:25, 35:2, 38:20, 42:1, 45:2
**kind** [6] - 12:16, 12:25, 13:2, 15:23, 54:8, 57:17
**known** [1] - 37:19
**knows** [1] - 17:18

### L

**lack** [1] - 45:17
**laid** [2] - 14:18, 54:24
**large** [1] - 60:16
**largely** [1] - 58:23
**LAS** [1] - 3:1
**Las** [4] - 1:9, 1:18, 2:11, 2:13
**last** [6] - 26:13, 35:15, 43:17, 46:15, 53:12, 58:5
**lasted** [1] - 26:16
**lasts** [1] - 38:18
**law** [11] - 13:20, 17:11, 30:11, 37:3, 37:20, 37:22, 38:12, 41:14, 42:11
**Law** [8] - 1:17, 1:19, 1:22, 2:3, 2:6, 2:8, 2:10, 2:12
**lawyers** [1] - 16:22
**lay** [1] - 17:17
**lead** [2] - 17:24, 20:25
**least** [5] - 9:1, 20:2, 25:20, 50:2, 54:5
**leeway** [1] - 44:22
**left** [1] - 54:4
**legal** [1] - 45:19
**letter** [11] - 20:19, 20:23, 28:8, 29:1, 30:15, 32:14, 32:22, 53:10, 54:15, 55:6, 55:7
**letters** [5] - 38:5, 43:8, 43:12, 55:23
**level** [1] - 19:7
**Lewis** [1] - 3:12
**library** [1] - 57:1
**lieu** [1] - 55:14
**light** [3] - 6:7, 12:9, 17:8

**likelihood** [2] - 9:6, 10:2
**likely** [1] - 39:23
**likewise** [1] - 10:17
**limited** [6] - 8:8, 14:5, 18:18, 58:25, 59:4
**limiting** [1] - 57:15
**LINDSEY** [1] - 1:21
**Lindsey** [1] - 3:12
**line** [2] - 24:10, 54:15
**list** [15] - 7:20, 19:16, 20:21, 21:3, 21:6, 21:11, 30:2, 30:16, 32:2, 32:7, 32:11, 32:16, 32:17, 53:11, 54:1
**listed** [2] - 5:4, 23:1
**listing** [1] - 20:22
**literally** [1] - 43:6
**litigant** [3] - 16:15, 17:1, 41:4
**litigants** [2] - 37:22, 38:12
**litigation** [4] - 7:15, 12:5, 48:7, 49:15
**live** [1] - 16:23
**living** [1] - 41:15
**local** [1] - 4:1
**location** [1] - 36:1
**locations** [2] - 28:15, 35:19
**log** [6] - 6:24, 6:25, 34:23, 60:5, 60:7, 60:10
**logged** [1] - 27:25
**logs** [17] - 19:12, 19:17, 22:18, 22:21, 22:23, 22:24, 22:25, 23:3, 23:7, 23:14, 35:5, 35:20, 35:22, 40:11, 50:11
**look** [3] - 34:6, 43:1, 57:16
**looking** [3] - 7:19, 10:12, 24:23
**Los** [1] - 2:7
**lose** [2] - 37:12, 37:13
**loss** [1] - 21:9
**lost** [18] - 5:8, 6:17, 6:18, 6:19, 6:21, 7:2, 7:15, 9:7, 9:11, 11:19, 11:21, 18:22, 22:12, 22:18, 33:21, 39:19, 40:10, 49:3

### M

**MAGISTRATE** [1] - 1:2
**mail** [2] - 12:23, 13:5
**maintained** [3] - 6:24,

29:14, 55:12
**maintains** [1] - 10:4
**major** [1] - 14:2
**manual** [2] - 32:15, 53:11
**Margaret** [2] - 2:21, 61:5
**Maroulis** [1] - 3:13
**MAROULIS** [1] - 1:19
**match** [1] - 51:16
**material** [6] - 10:15, 18:12, 35:14, 36:13, 36:18, 38:19
**materials** [9] - 6:13, 10:5, 28:12, 28:14, 36:24, 48:24, 55:9, 55:12, 55:21
**matter** [5] - 7:8, 10:7, 54:14, 58:16, 61:4
**matters** [2] - 44:20
**McCracken** [2] - 2:8, 3:23
**McGRATH** [1] - 1:21
**MD5** [8] - 36:20, 37:7, 37:24, 38:2, 38:3, 38:14, 41:5
**mean** [10] - 5:13, 12:13, 18:14, 19:11, 24:10, 24:15, 53:20, 54:8, 58:15, 59:6
**means** [1] - 12:20
**mechanism** [3] - 9:19, 10:21, 47:7
**meet** [4] - 20:14, 21:7, 32:22, 43:8
**memory** [1] - 37:11
**mentioned** [4] - 13:19, 48:4, 52:13, 58:15
**met** [1] - 32:19
**metaphor** [1] - 13:1
**metaphors** [1] - 13:2
**microscope** [2] - 16:21, 47:16
**Microsoft** [2] - 37:10, 37:15
**might** [2] - 18:4, 51:11
**millions** [1] - 17:2
**mind** [4] - 27:18, 30:19, 55:5, 56:24
**mindful** [1] - 17:15
**Minute** [2] - 36:4, 36:5
**minute** [1] - 25:18
**minutes** [3] - 14:22, 24:21, 42:21
**misconception** [1] - 16:12
**misdeeds** [1] - 17:8
**misleading** [2] - 19:19, 19:25
**miss** [1] - 5:19

**missing** [1] - 19:11, 20:16, 21:3, 23:1, 47:8, 53:3, 54:5, 57:22, 58:10, 58:13, 59:18
**misspoke** [1] - 50:11
**mistake** [1] - 20:13
**misunderstand** [1] - 39:6
**mixed** [1] - 13:1
**MO** [1] - 17:6
**modified** [4] - 21:14, 31:5, 31:13, 33:8
**modify** [4] - 29:13, 37:22, 41:4, 51:11
**moment** [1] - 18:8
**monetary** [1] - 5:17
**months** [17] - 4:8, 8:19, 9:2, 28:23, 29:9, 32:21, 33:20, 34:6, 34:12, 46:16, 53:14, 53:17, 54:3, 58:17
**Morgan** [1] - 3:12
**morning** [4] - 3:21, 16:11, 23:21, 41:10
**most** [3] - 11:18, 39:23, 60:1
**MOTION** [1] - 1:14
**motion** [41] - 3:5, 4:17, 5:5, 5:21, 5:24, 8:7, 9:8, 9:9, 9:18, 10:16, 12:8, 14:6, 18:13, 18:15, 19:1, 19:21, 20:1, 20:17, 20:18, 24:8, 24:11, 30:6, 31:8, 33:1, 33:16, 33:21, 40:23, 44:3, 44:19, 45:14, 45:22, 48:2, 49:6, 50:20, 52:13, 52:24, 53:15, 54:7, 57:16, 58:1, 58:9
**motions** [3] - 4:16, 4:24, 54:14
**move** [5] - 12:17, 23:17, 32:24, 33:17, 54:16
**moved** [4] - 34:8, 34:12, 37:2, 42:18
**moves** [1] - 26:11
**moving** [1] - 26:17
**MR** [72] - 3:9, 3:15, 3:17, 3:21, 4:3, 5:20, 6:1, 6:19, 6:21, 7:6, 7:25, 8:4, 11:12, 13:7, 15:7, 15:11, 15:16, 15:20, 16:1, 16:11, 22:16, 22:22, 23:3, 23:11, 23:23,

24:2, 24:19, 27:17, 27:20, 27:23, 33:13, 35:4, 35:10, 38:3, 38:11, 39:7, 39:9, 39:15, 39:17, 40:9, 40:21, 40:22, 41:3, 42:5, 42:9, 42:14, 44:15, 44:18, 45:10, 46:2, 46:6, 46:17, 50:20, 51:2, 52:5, 52:12, 53:19, 54:9, 54:13, 54:22, 55:1, 56:7, 56:12, 56:16, 56:18, 56:21, 58:6, 58:9, 59:16, 60:4, 60:16, 60:25
**multiple** [1] - 30:9
**must** [2] - 34:24, 60:19

## N

**name** [4] - 10:25, 36:6, 37:5, 50:22
**names** [5] - 10:25, 11:3, 34:18, 36:4, 59:5
**narrative** [1] - 25:21
**narrow** [1] - 59:1
**nature** [2] - 4:23, 18:17
**nearly** [1] - 44:1
**necessarily** [3] - 9:5, 10:14, 10:21
**necessary** [2] - 12:1, 18:4
**necessity** [1] - 9:23
**need** [12] - 12:21, 14:14, 16:9, 18:20, 24:10, 24:11, 24:14, 33:19, 43:19, 45:7, 53:1, 59:22, 60:22
**needs** [1] - 11:16
**nefarious** [2] - 16:15, 25:22
**NEVADA** [2] - 1:1, 3:1
**Nevada** [6] - 1:9, 1:18, 2:11, 2:13, 2:22
**never** [2] - 26:9, 31:13, 37:4, 46:11
**new** [7] - 4:6, 25:2, 27:7, 34:1, 41:17, 42:11, 59:15
**next** [3] - 12:13, 46:11, 54:3
**nine** [1] - 28:24
**Ninth** [1] - 49:14
**normal** [1] - 4:6
**normally** [1] - 23:20
**notably** [2] - 29:22,

29:24
**noted** [2] - 32:10, 49:6
**nothing** [2] - 26:2, 32:24
**notice** [1] - 45:21
**notices** [1] - 49:23
**noting** [1] - 32:11
**notion** [1] - 13:12
**November** [2] - 32:9
**number** [15] - 4:16, 8:4, 10:10, 10:24, 17:25, 20:9, 20:11, 21:8, 21:9, 22:6, 31:6, 38:7, 53:9, 57:5, 59:17
**numbers** [10] - 17:20, 17:22, 17:24, 19:5, 21:10, 22:3, 23:5, 38:6, 51:20, 51:25
**numerous** [3] - 19:20, 49:8, 57:3

## O

**object** [2] - 58:25, 59:9
**objection** [2] - 4:24, 24:5
**objections** [1] - 5:1
**obligation** [6] - 37:4, 41:15, 42:23, 45:19, 53:1, 55:21
**obligations** [5] - 16:18, 16:19, 30:5, 37:21, 52:21
**obtained** [2] - 11:5
**obtaining** [1] - 32:23
**obviously** [2] - 9:21, 54:13
**occasions** [1] - 20:2
**occurred** [3] - 46:22, 51:15, 54:20
**occurring** [1] - 19:21
**OF** [2] - 1:1, 1:14
**Official** [2] - 2:21, 61:6
**old** [1] - 59:2
**omitted** [1] - 3:17
**once** [1] - 28:13
**one** [49] - 5:12, 9:20, 9:23, 11:10, 12:13, 14:2, 18:3, 19:8, 19:14, 26:23, 27:14, 30:8, 30:16, 31:17, 31:23, 33:8, 34:17, 34:25, 35:1, 36:18, 37:2, 39:3, 39:12, 39:13, 41:25, 42:1, 42:2, 44:2, 44:13, 48:16, 49:12, 49:17, 54:15, 55:17, 56:4,

56:13, 57:25, 58:6, 58:21, 58:22, 58:23, 59:22, 60:5, 60:12, 60:13
**one-line** [1] - 54:15
**ones** [3] - 22:13, 39:13, 39:17
**ongoing** [1] - 17:12
**operated** [1] - 43:10
**operates** [1] - 11:20
**operating** [1] - 15:13
**operation** [1] - 26:5
**opportunity** [1] - 17:6
**opposing** [1] - 30:22
**opposite** [2] - 29:6, 30:7
**opposition** [3] - 14:12, 14:16, 20:23
**oppositions** [1] - 4:22
**Oracle** [77] - 3:5, 3:9, 3:13, 5:5, 5:10, 14:1, 17:22, 18:14, 19:2, 19:10, 19:16, 19:17, 19:24, 20:10, 20:13, 20:17, 21:7, 22:5, 22:6, 22:25, 23:4, 23:7, 23:14, 25:2, 26:10, 26:13, 26:18, 26:21, 28:5, 28:8, 28:24, 29:6, 29:10, 29:11, 29:25, 31:5, 31:7, 31:10, 32:1, 32:10, 32:15, 32:21, 33:5, 33:19, 34:4, 34:10, 35:6, 35:12, 35:14, 35:18, 35:24, 36:2, 36:10, 37:18, 38:6, 38:15, 41:12, 43:3, 43:19, 43:22, 44:4, 44:5, 49:22, 53:10, 53:23, 54:1, 55:5, 55:7, 55:16, 55:25, 56:3, 58:15, 58:16, 58:25, 59:8, 59:11
**ORACLE** [3] - 1:4, 1:4, 1:5
**Oracle's** [34] - 4:18, 4:19, 6:10, 7:25, 11:14, 16:6, 16:14, 16:21, 17:5, 18:11, 18:21, 19:4, 19:20, 20:25, 21:3, 21:4, 21:11, 21:15, 22:5, 24:20, 25:21, 27:4, 30:6, 31:2, 31:19, 32:2, 32:4, 32:6, 32:17, 33:9, 37:20, 45:5, 45:12
**oranges** [1] - 21:25

**order** [12] - 5:4, 6:2, 6:6, 7:22, 8:7, 25:11, 29:23, 36:5, 37:12, 41:9, 42:12, 50:24
**Order** [2] - 36:4, 36:6
**Orders** [2] - 35:22, 35:24
**orders** [9] - 14:3, 35:13, 35:15, 35:19, 36:11, 36:21, 36:24, 37:2, 37:3
**organizations** [1] - 42:25
**original** [24] - 25:8, 25:17, 26:24, 27:6, 27:10, 29:15, 31:12, 33:22, 34:5, 34:7, 34:10, 34:25, 38:20, 39:13, 40:22, 42:4, 45:1, 45:18, 49:15, 50:18, 51:10, 55:22, 60:10
**originals** [1] - 21:17
**OSC** [1] - 31:8
**ought** [1] - 57:13
**outline** [1] - 24:17
**outset** [2] - 16:13, 17:12
**outstanding** [2] - 32:12, 53:12
**overstatement** [1] - 16:24
**overstating** [1] - 52:1
**overwrite** [1] - 51:11
**overwriting** [2] - 42:21, 51:5
**overwritten** [1] - 45:20
**own** [10] - 13:23, 19:20, 21:11, 22:2, 23:5, 24:12, 25:25, 29:17, 31:2, 52:2

## P

**Page** [1] - 1:25
**page** [2] - 41:17, 44:12
**pages** [2] - 5:4, 44:8
**Pahrump** [1] - 4:9
**paint** [3] - 17:7, 25:21, 29:7
**papers** [3] - 9:10, 20:10, 60:23
**paragraph** [2] - 19:22, 41:16
**paragraphs** [2] - 41:11, 41:12
**part** [3] - 24:5, 25:2, 60:16
**particular** [7] - 4:17, 11:21, 37:4, 39:24,

49:5, 50:4, 51:9
**parties** [9] - 3:10,
3:13, 4:7, 4:11, 6:12,
8:9, 8:11, 17:21,
46:21
**parties'** [1] - 7:7
**party** [8] - 7:16, 8:10,
8:15, 8:18, 12:5,
58:14, 59:1, 59:2
**party's** [1] - 42:22
**passed** [1] - 28:24
**passes** [1] - 55:10
**patch** [6] - 49:5, 50:4,
50:12, 51:9, 55:15,
55:19
**patches** [7] - 36:20,
37:24, 38:2, 38:14,
41:5, 48:9
**patented** [1] - 25:4
**path** [1] - 18:19
**pattern** [2] - 17:13,
49:10
**Paul** [1] - 3:19
**people** [1] - 7:20
**percent** [8] - 21:12,
21:20, 21:24, 23:13,
23:15, 58:11
**perhaps** [1] - 14:6
**period** [5] - 9:1, 12:20,
15:13, 47:12, 59:21
**permission** [1] - 10:6
**person** [1] - 47:25
**phone** [2] - 28:25,
43:9
**pick** [1] - 41:3
**picked** [1] - 28:25
**place** [3] - 12:18,
40:25, 47:14
**placed** [3] - 10:20,
13:13, 47:14
**plaintiffs** [2] - 1:7, 3:8
**PLAINTIFFS** [2] -
1:17, 2:3
**plan** [1] - 17:17
**play** [1] - 14:1
**played** [1] - 57:8
**pleadings** [3] - 10:18,
12:10, 57:25
**plus** [1] - 30:16
**Pocker** [24] - 3:10,
3:20, 5:5, 5:25, 6:16,
12:12, 14:21, 19:7,
20:10, 23:25, 24:20,
27:13, 34:17, 38:24,
40:16, 43:6, 45:25,
50:17, 52:11, 53:8,
58:4, 58:15, 59:14,
60:15
**POCKER** [39] - 1:17,
3:9, 3:15, 3:17, 5:20,

6:1, 6:19, 6:21, 7:6,
7:25, 8:4, 11:12,
13:7, 15:7, 15:11,
15:16, 15:20, 16:1,
24:2, 39:7, 39:9,
39:15, 39:17, 40:9,
40:22, 46:2, 46:6,
46:17, 50:20, 51:2,
52:12, 53:19, 54:9,
54:13, 54:22, 56:18,
56:21, 59:16, 60:16
**point** [19] - 14:10,
15:5, 15:6, 15:7,
15:10, 21:22, 23:17,
25:9, 27:18, 43:17,
47:4, 47:7, 47:21,
49:16, 50:10, 54:5,
57:14, 57:25, 58:10
**pointed** [3] - 10:24,
50:20, 57:24
**pointing** [1] - 57:1
**points** [1] - 46:3
**POLITO** [1] - 1:21
**Polito** [1] - 3:12
**popped** [1] - 4:5
**portray** [1] - 16:14
**posed** [1] - 16:6
**position** [16] - 6:10,
7:7, 7:25, 11:9,
11:15, 12:15, 16:6,
30:6, 30:7, 30:16,
45:7, 45:12, 52:9,
52:10, 56:3
**positions** [1] - 30:12
**possession** [2] - 10:5,
10:8
**possibility** [1] - 54:19
**possible** [3] - 4:12,
23:19, 47:24
**potential** [2] - 8:7,
58:14
**power** [1] - 37:13
**practical** [3] - 10:7,
58:6, 58:7
**practice** [1] - 50:3
**precise** [2] - 55:24,
55:25
**preexisting** [1] - 28:15
**prejudice** [6] - 18:21,
31:7, 43:18, 44:16,
45:2, 45:18
**prejudiced** [1] - 5:11
**prepared** [1] - 24:15
**present** [2] - 3:11,
3:18
**presentation** [1] -
40:11
**presented** [1] - 14:4
**presently** [1] - 8:13
**preservation** [6] -

37:3, 42:22, 42:24,
46:7, 52:21, 53:1
**preserve** [5] - 5:9,
7:16, 48:8, 55:21
**preserved** [1] - 7:15
**preserving** [3] - 21:17,
47:17, 48:11
**presumes** [1] - 59:16
**prevent** [2] - 36:22,
45:20
**previous** [1] - 42:22
**previously** [2] - 32:3,
54:2
**primarily** [1] - 6:2
**probative** [1] - 59:24
**problem** [2] - 11:11,
29:9
**problematic** [2] - 54:8,
54:9
**proceedings** [6] -
5:16, 8:6, 8:12, 9:1,
60:23, 61:3
**process** [14] - 9:12,
12:16, 12:21, 14:24,
14:25, 28:12, 29:16,
41:22, 42:7, 43:10,
43:13, 48:7, 49:2,
52:19
**processes** [1] - 25:3
**processing** [2] - 37:9,
42:19
**produce** [8] - 20:15,
30:8, 32:7, 32:13,
35:17, 55:14, 55:17,
56:4
**produced** [29] - 8:10,
17:1, 19:15, 21:12,
21:20, 22:17, 22:18,
23:8, 23:13, 23:15,
26:11, 31:3, 31:12,
32:3, 32:10, 32:11,
32:16, 35:19, 35:21,
36:3, 36:4, 43:25,
53:12, 53:13, 53:24,
54:2, 54:11, 58:10,
58:11
**product** [1] - 48:10
**production** [1] - 30:1
**program** [6] - 9:13,
13:17, 14:23, 15:1,
37:9, 37:13
**progress** [1] - 32:10
**prohibits** [1] - 48:16
**proof** [1] - 60:1
**proof's** [2] - 43:24,
59:7
**proportional** [1] - 30:4
**prove** [3] - 36:7,
47:19, 59:25
**provide** [2] - 10:15,

45:16
**provided** [5] - 7:1,
14:8, 19:2, 32:16,
53:11
**pudding** [2] - 43:24,
59:8
**purpose** [5] - 24:6,
25:5, 28:11, 38:21,
42:10
**purposefully** [1] -
36:21
**put** [5] - 40:22, 41:21,
41:23, 41:24, 47:14
**putting** [1] - 28:9

**Q**

**questions** [8] - 6:8,
16:6, 17:16, 18:1,
28:21, 40:24, 46:19,
57:5
**quickly** [3] - 18:8,
23:18, 27:24
**quite** [1] - 20:18
**quote** [7] - 20:19,
21:1, 30:3, 42:17,
42:20, 42:23, 43:22

**R**

**raised** [1] - 47:22
**Raley's** [12] - 9:20,
39:10, 39:21, 39:22,
40:6, 41:6, 41:20,
41:22, 48:21, 48:23,
51:7, 51:9
**RAM** [1] - 13:18
**rather** [1] - 7:21
**RAVIN** [1] - 1:10
**reach** [1] - 32:19
**ready** [1] - 48:24
**real** [1] - 21:10
**realize** [2] - 46:15,
46:16
**realized** [2] - 46:12,
47:9
**really** [11] - 7:19, 8:1,
8:10, 19:11, 20:8,
33:19, 34:4, 45:9,
46:7, 50:1, 52:1
**reason** [7] - 12:22,
32:5, 43:19, 48:23,
57:6, 59:2, 59:20
**reasonable** [5] - 5:8,
7:16, 7:21, 18:19,
30:17
**reasonably** [2] - 21:8,
56:11
**reasons** [2] - 8:5,
44:18

**rebut** [1] - 24:22
**receive** [1] - 28:2
**received** [5] - 6:14,
18:3, 19:16, 30:3,
50:12
**recent** [1] - 4:20
**reckless** [2] - 17:24,
17:25
**recommendation** [2] -
5:12, 5:14
**record** [16] - 3:8, 6:13,
6:24, 11:21, 13:14,
14:5, 14:20, 18:2,
18:7, 39:1, 43:12,
46:19, 54:18, 57:11,
61:3
**recount** [1] - 17:11
**recoverable** [1] - 7:23
**redesignations** [1] -
50:22
**redundant** [1] - 49:7
**Redwood** [1] - 1:20
**reference** [3] - 9:18,
16:2, 20:20
**referenced** [1] - 49:22
**references** [1] - 20:10
**referencing** [1] - 39:10
**referred** [1] - 8:14
**reflected** [3] - 19:12,
19:17, 35:20
**regard** [1] - 11:16
**regarding** [1] - 11:13
**regardless** [1] - 43:2
**REILLY** [1] - 2:12
**Reilly** [1] - 3:24
**relate** [1] - 4:16
**relevance** [2] - 43:18,
48:13
**relevant** [5] - 5:15,
11:22, 15:13, 50:9,
59:21
**reliable** [3] - 6:13,
11:4, 18:2
**relief** [1] - 54:19
**rely** [1] - 21:6
**remain** [3] - 10:8,
28:12, 28:15
**remedies** [1] - 5:5
**remedy** [2] - 10:12,
57:22
**remember** [1] - 47:25
**rename** [1] - 50:24
**renamed** [3] - 34:8,
37:2, 45:20
**renaming** [1] - 51:5
**Reno** [1] - 2:22
**reopening** [1] - 7:7
**repeated** [1] - 16:14
**replaced** [2] - 5:9,
7:17

8

**replies** [1] - 49:7
**reply** [11] - 4:19, 9:18, 14:16, 17:23, 20:25, 32:5, 40:23, 44:12, 48:4, 52:24, 57:16
**report** [2] - 5:12, 5:14
**Reporter** [2] - 2:21, 61:6
**reports** [1] - 44:9
**representation** [1] - 17:25
**represented** [1] - 40:14
**represents** [1] - 38:6
**request** [6] - 14:3, 21:15, 21:18, 33:9, 48:9, 52:16
**requested** [3] - 5:5, 5:18, 29:12
**requesting** [1] - 5:11
**require** [5] - 37:22, 38:12, 42:11, 42:23, 42:24
**required** [3] - 29:4, 41:4, 43:16
**reserve** [1] - 27:18
**resolving** [4] - 6:4, 7:9, 8:2
**respect** [14] - 6:10, 7:7, 8:6, 14:6, 15:13, 16:4, 26:9, 46:3, 46:24, 49:4, 49:25, 50:7, 57:18, 59:17
**respective** [1] - 13:10
**respond** [5] - 17:14, 17:23, 29:12, 52:5, 53:17
**responded** [1] - 29:1
**responding** [1] - 40:18
**response** [6] - 8:17, 8:18, 17:10, 28:24, 48:3, 54:24
**responses** [1] - 55:18
**responsibility** [1] - 12:4
**responsive** [1] - 55:12
**restored** [2] - 5:9, 7:17
**restrictive** [1] - 8:8
**rests** [1] - 13:12
**result** [1] - 9:2
**retained** [2] - 10:19, 10:20
**return** [1] - 52:12
**reverse** [1] - 11:1
**reviewed** [1] - 9:9
**revised** [1] - 32:11
**rewritten** [1] - 42:18
**Richard** [1] - 3:10
**RICHARD** [1] - 1:17

**ridiculous** [1] - 25:24
**Rimini** [87] - 3:6, 3:23, 3:24, 4:4, 5:8, 6:14, 6:15, 6:22, 6:24, 8:8, 8:9, 8:13, 8:14, 8:17, 8:22, 9:13, 9:22, 10:4, 10:20, 10:23, 10:25, 11:5, 11:18, 12:6, 13:19, 13:23, 14:10, 14:17, 14:23, 16:14, 16:16, 16:17, 16:25, 17:7, 19:13, 19:14, 19:18, 20:2, 20:15, 20:19, 21:11, 21:14, 22:7, 25:6, 25:19, 25:21, 25:23, 26:7, 29:7, 30:4, 31:9, 31:12, 31:18, 32:1, 32:6, 32:23, 33:1, 33:8, 41:21, 43:20, 43:22, 44:4, 46:19, 47:16, 48:7, 48:23, 49:9, 49:24, 52:17, 53:10, 53:23, 54:1, 55:9, 55:14, 55:17, 55:19, 55:23, 55:25, 56:23, 56:25, 57:12, 57:20, 59:21
**RIMINI** [1] - 1:9
**Rimini's** [17] - 4:19, 5:15, 12:14, 16:20, 16:23, 20:25, 21:2, 28:15, 30:1, 30:9, 37:20, 51:3, 51:11, 51:17, 54:5, 55:10, 57:5
**Rimini-created** [1] - 9:22
**road** [1] - 48:5
**rogue** [1] - 16:14
**roughly** [1] - 8:19
**routinely** [1] - 51:21
**row** [2] - 31:21, 55:4
**rule** [2] - 11:21, 52:7
**rulings** [1] - 49:14
**rummaging** [1] - 16:22
**run** [2] - 27:2, 33:23
**running** [2] - 26:25, 27:10
**runs** [1] - 27:10

# S

**San** [1] - 1:22
**sanction** [3] - 5:16, 5:17, 5:18
**sanctioned** [1] - 56:25
**sanctions** [2] - 5:11, 48:3

**sanitized** [4] - 36:13, 36:15, 36:18, 43:23
**sanitizing** [1] - 44:5
**satisfy** [1] - 30:4
**save** [3] - 36:17, 37:15, 41:17
**saved** [2] - 37:14, 41:12
**saw** [1] - 57:7
**scale** [1] - 48:25
**scenario** [1] - 11:7
**Schiller** [1] - 3:10
**scope** [1] - 14:4
**seal** [3] - 4:16, 4:21, 4:25
**search** [2] - 32:15, 53:11
**second** [7] - 7:13, 10:4, 18:1, 18:19, 23:17, 38:1
**secondly** [1] - 5:17
**seconds** [3] - 25:12, 38:18, 42:9
**secret** [1] - 54:17
**see** [11] - 4:22, 5:11, 5:18, 20:24, 26:15, 36:16, 57:15, 57:16, 59:5, 60:11, 60:22
**seeing** [2] - 22:17, 36:22
**seek** [2] - 20:21, 54:19
**seeking** [3] - 9:11, 48:2, 55:14
**seem** [2] - 9:3, 40:18
**self** [1] - 21:1
**self-serving** [1] - 21:1
**send** [5] - 32:22, 42:6, 42:7, 51:8, 57:20
**sending** [3] - 47:18, 50:5, 50:8
**sends** [1] - 21:7
**sense** [1] - 47:2
**sent** [35] - 6:22, 7:3, 10:13, 19:23, 20:2, 20:5, 21:21, 22:6, 32:1, 32:11, 32:14, 34:24, 40:12, 41:22, 41:23, 41:24, 41:25, 42:1, 49:17, 49:20, 50:1, 50:2, 50:13, 50:19, 51:4, 51:14, 53:10, 54:1, 58:21, 58:23, 59:23, 59:25, 60:6
**separate** [2] - 41:9, 51:25
**September** [5] - 1:8, 20:19, 22:7, 32:1, 53:25
**SEPTEMBER** [1] - 3:1

**series** [1] - 42:3
**seriously** [1] - 16:18
**serve** [1] - 58:25
**server** [6] - 13:16, 46:20, 50:16, 51:18, 55:11, 55:12
**serves** [1] - 38:21
**serving** [1] - 21:1
**set** [8] - 3:4, 4:12, 6:7, 6:8, 24:6, 52:24, 57:9
**SETH** [1] - 1:10
**setting** [1] - 6:2
**setup** [1] - 4:8
**seven** [4] - 25:1, 27:24, 46:11
**several** [1] - 19:2
**shed** [1] - 12:10
**SHINN** [1] - 1:21
**Shinn** [1] - 3:12
**shockingly** [1] - 20:24
**shorthand** [1] - 38:4
**shortly** [1] - 56:19
**shoulder** [1] - 55:20
**show** [11] - 8:7, 18:8, 19:4, 23:4, 35:22, 40:12, 43:20, 43:21, 50:11, 50:13, 57:4
**showed** [1] - 39:2
**showing** [3] - 18:2, 32:16, 53:11
**shows** [5] - 13:17, 31:18, 55:5, 56:10, 60:5
**side** [3] - 9:11, 15:23, 52:1
**sides** [3] - 6:3, 13:10, 28:1
**significantly** [2] - 9:16, 11:18
**silence** [1] - 32:20
**silent** [1] - 29:9
**similar** [1] - 45:12
**simpler** [1] - 31:14
**simply** [10] - 17:9, 17:10, 18:12, 19:5, 19:18, 27:3, 28:25, 33:2, 33:15, 37:21
**single** [6] - 30:1, 31:10, 31:17, 44:2, 44:11, 55:15
**sites** [1] - 10:6
**situation** [4] - 9:19, 12:3, 13:21, 41:21
**situations** [2] - 8:20, 11:2
**six** [8] - 8:19, 9:2, 20:2, 26:23, 32:23, 47:11, 54:4, 58:19
**skipping** [1] - 55:16

**snapshot** [1] - 44:10
**snapshots** [9] - 36:11, 37:6, 37:10, 37:14, 37:15, 43:20, 43:21, 44:1, 45:3
**software** [6] - 37:8, 37:14, 48:23, 49:12, 55:15, 57:1
**someone** [1] - 42:11
**sorry** [3] - 4:18, 40:16, 60:4
**Sorry** [1] - 38:3
**sorts** [1] - 17:8
**sounded** [1] - 12:25
**source** [2] - 26:10, 26:11, 26:12, 26:14, 26:20, 28:18, 30:14, 33:5, 42:15, 42:16
**South** [1] - 2:22
**speaks** [1] - 47:2
**specific** [6] - 8:23, 17:16, 18:1, 20:21, 24:6, 48:8
**specifically** [2] - 9:12, 48:20
**spent** [2] - 24:20, 26:21
**spoliate** [1] - 37:1
**spoliated** [9] - 6:15, 19:18, 35:25, 36:7, 36:19, 36:25, 41:8, 50:25
**spoliating** [1] - 52:20
**spoliation** [19] - 5:15, 10:16, 12:8, 20:5, 24:8, 24:21, 27:9, 27:11, 29:16, 33:1, 33:15, 34:14, 41:13, 45:1, 47:24, 48:3, 54:16, 54:19, 57:2
**spoliations** [1] - 19:24
**spoliators** [1] - 33:1
**spreadsheet** [4] - 20:22, 21:4, 22:6
**start** [4] - 6:9, 18:25, 37:24, 46:2
**started** [6] - 15:4, 25:23, 39:3, 40:5, 46:24
**starts** [1] - 24:24
**state** [4] - 3:7, 12:20, 16:17, 58:22
**statement** [1] - 60:7
**statements** [2] - 19:4, 57:17
**STATES** [1] - 1:1
**stating** [2] - 32:15, 53:10
**statistics** [2] - 8:23, 21:2

**status** [1] - 6:7
**steps** [2] - 5:8, 7:16
**still** [14] - 4:10, 13:15,
24:9, 25:17, 27:11,
32:3, 32:12, 35:1,
47:23, 51:3, 54:2,
54:18, 57:20, 59:17
**stop** [1] - 38:22
**stops** [1] - 56:9
**stored** [1] - 7:14
**story** [1] - 24:24
**straight** [1] - 5:24
**STREET** [1] - 1:9
**Street** [25] - 2:22, 3:6,
3:23, 3:25, 4:4, 6:14,
6:15, 6:22, 8:9, 9:13,
10:23, 10:25, 11:18,
13:19, 14:10, 14:17,
47:17, 48:7, 48:23,
49:9, 49:24, 52:17,
56:23, 56:25, 57:12
**Street's** [1] - 13:23
**string** [1] - 38:5
**strongly** [3] - 29:4,
29:20, 43:15
**stuff** [3] - 48:12, 53:3,
53:21
**subject** [4] - 9:8,
10:16, 12:3, 21:9
**submission** [1] -
60:21
**submit** [1] - 33:14
**submitted** [1] - 18:9
**subpoena** [2] - 8:18,
59:4
**subpoenas** [4] - 8:20,
58:14, 59:1, 59:2
**substantially** [1] -
8:18
**successful** [1] - 27:5
**successfully** [2] -
26:25, 28:13
**suddenly** [2] - 25:23,
53:2
**sued** [2] - 35:12, 50:23
**suggest** [1] - 32:5
**suggests** [1] - 25:2
**summarize** [1] - 6:10
**summarizes** [1] - 5:20
**summer** [1] - 46:25
**support** [1] - 21:2
**supported** [2] - 14:20,
37:21
**supporting** [1] - 16:25
**supposed** [1] - 48:11
**suspect** [1] - 36:17
**system** [10] - 11:20,
25:7, 25:10, 25:14,
27:7, 27:8, 30:9,
34:2, 49:19, 53:23

**systems** [5] - 9:5,
16:23, 38:17, 55:13,
55:14
**systems....Please** [1]
- 28:16

**T**

**tactical** [1] - 13:9
**tax** [2] - 48:25, 58:22
**technical** [1] - 19:6
**technology** [1] - 42:7
**telephone** [1] - 4:10
**tellingly** [2] - 20:13,
31:7
**temporary** [7] - 12:20,
13:18, 21:16, 21:21,
25:11, 31:16, 42:2
**ten** [1] - 29:11
**tens** [2] - 26:1, 26:2
**terms** [1] - 40:12
**test** [2] - 48:24, 60:12
**testimony** [3] - 14:6,
14:17, 19:4
**THE** [74] - 1:2, 1:17,
2:6, 3:4, 3:14, 3:16,
3:20, 4:1, 4:5, 5:22,
6:16, 6:20, 7:5, 7:10,
8:3, 11:9, 12:12,
14:21, 15:9, 15:15,
15:17, 15:21, 16:7,
22:9, 22:20, 22:24,
23:10, 23:22, 23:24,
24:9, 27:13, 27:19,
27:22, 33:11, 34:15,
35:9, 38:1, 38:9,
38:22, 39:8, 39:11,
39:16, 40:1, 40:15,
41:1, 41:19, 42:8,
42:13, 44:14, 44:17,
45:6, 45:23, 46:5,
46:14, 50:17, 51:1,
52:4, 52:9, 53:7,
53:22, 54:12, 54:21,
54:23, 56:6, 56:8,
56:14, 56:17, 56:20,
58:3, 58:8, 59:12,
60:3, 60:8, 60:18
**themselves** [1] - 13:17
**theories** [1] - 31:19
**theory** [2] - 44:2, 45:5
**therefore** [2] - 36:19,
36:24
**they've** [1] - 27:14
**thinking** [1] - 12:13
**third** [9] - 8:10, 8:11,
8:15, 8:18, 15:23,
18:17, 58:14, 59:1,
59:2
**third-party** [6] - 8:10,

8:15, 8:18, 58:14,
59:1, 59:2
**thousands** [11] -
25:20, 26:2, 31:15,
31:16, 44:6, 51:21,
59:20
**three** [6] - 5:10, 14:22,
18:5, 18:24, 26:4,
55:7
**THURSDAY** [1] - 3:1
**ties** [1] - 37:18
**timeline** [6] - 18:9,
23:18, 24:23, 25:19,
45:17, 55:4
**timely** [2] - 44:19,
52:13
**today** [1] - 13:16,
60:24
**took** [3] - 15:5, 56:3,
59:2
**tool** [46] - 21:14,
21:15, 23:15, 24:25,
25:2, 25:4, 25:10,
25:23, 25:25, 26:1,
26:6, 26:9, 26:14,
26:21, 26:22, 27:2,
27:9, 28:9, 29:2,
29:13, 29:19, 29:21,
30:13, 30:20, 31:1,
31:3, 31:4, 31:13,
33:6, 33:8, 33:16,
33:23, 37:23, 37:25,
38:15, 39:23, 41:4,
43:4, 43:16, 43:25,
44:22, 44:23, 44:25,
58:12
**topics** [1] - 18:24
**total** [1] - 53:13
**track** [1] - 38:9
**transaction** [3] - 19:9,
40:4, 42:4
**transactions** [4] -
19:12, 27:14, 40:4,
42:3
**Transcribed** [1] - 2:21
**TRANSCRIPT** [1] -
1:14
**transcript** [1] - 61:3
**transfer** [13] - 6:24,
6:25, 12:15, 19:9,
19:12, 21:14, 25:15,
27:1, 27:5, 34:21,
39:4, 39:5
**TransferFiles** [12] -
9:19, 10:21, 13:16,
24:25, 25:20, 26:4,
26:12, 26:24, 31:4,
31:13, 43:10, 47:6
**transferred** [13] - 10:1,
10:22, 11:6, 19:13,

26:25, 28:14, 30:2,
32:3, 39:18, 39:23,
47:6, 48:10, 54:2
**transferred....**
**However** [1] - 28:14
**transfers** [6] - 9:20,
19:8, 26:16, 35:7,
37:19, 39:2
**transitory** [5] - 11:22,
13:13, 13:22, 13:23,
56:2
**transmitted** [1] - 60:12
**transport** [1] - 4:9
**tremendous** [1] - 17:3
**trial** [1] - 26:7
**tries** [1] - 29:6
**triggered** [1] - 46:21
**true** [3] - 8:22, 17:9,
50:13
**truly** [1] - 11:4
**try** [4] - 6:17, 7:23,
18:14, 23:18
**trying** [9] - 25:21,
30:10, 30:11, 30:12,
32:7, 32:19, 36:22,
36:23, 47:12
**tune** [1] - 48:24
**turn** [1] - 17:6
**turned** [1] - 48:6
**turning** [2] - 46:7, 53:5
**twice** [1] - 58:16
**two** [16] - 5:9, 5:11,
7:17, 9:16, 14:7,
14:22, 18:1, 21:23,
25:19, 26:18, 26:21,
27:5, 28:20, 29:24,
33:6, 60:8
**type** [4] - 12:21, 14:19,
41:16, 50:8

**U**

**unaltered** [1] - 10:9
**under** [7] - 4:21, 7:13,
16:21, 43:2, 47:16,
52:6, 60:21
**understood** [1] - 56:8
**undisputed** [12] -
12:6, 18:16, 26:6,
27:25, 29:17, 31:1,
31:5, 33:15, 34:2,
45:17, 50:18, 53:22
**undoubtedly** [1] -
21:22
**unequivocally** [1] -
16:17
**unfortunate** [1] - 17:5
**uniformly** [1] - 12:1
**unique** [1] - 38:6
**UNITED** [1] - 1:1

**unless** [1] - 4:23
**unpunished** [1] -
52:17
**unsupported** [1] -
14:17
**up** [15] - 4:9, 4:12,
12:7, 13:17, 14:23,
15:22, 21:5, 23:21,
28:25, 29:1, 33:14,
40:5, 41:3, 43:21,
58:20
**update** [3] - 39:24,
55:16, 55:19
**updates** [1] - 48:25
**uploaded** [3] - 35:23,
36:5, 36:16
**upside** [1] - 48:7
**USA** [2] - 1:4, 3:5

**V**

**value** [1] - 11:14
**values** [1] - 37:8
**VANDEVELDE** [34] -
2:6, 3:21, 16:11,
22:16, 22:22, 23:3,
23:11, 23:23, 24:19,
27:17, 27:20, 27:23,
33:13, 35:4, 35:10,
38:3, 38:11, 40:21,
41:3, 42:5, 42:9,
42:14, 44:15, 44:18,
45:10, 52:5, 55:1,
56:7, 56:12, 56:16,
58:6, 58:9, 60:4,
60:25
**Vandevelde** [24] -
3:22, 15:25, 16:8,
16:10, 22:10, 23:24,
38:23, 38:25, 40:17,
40:20, 41:2, 44:14,
45:6, 45:24, 46:3,
47:1, 48:20, 49:22,
50:22, 51:20, 52:10,
56:15, 56:22, 59:12
**Vandevelde's** [2] -
40:3, 40:11
**various** [2] - 17:22,
55:24
**Vegas** [4] - 1:9, 1:18,
2:11, 2:13
**VEGAS** [1] - 3:1
**verify** [1] - 55:18
**version** [20] - 9:21,
9:24, 31:22, 31:24,
36:16, 39:24, 40:5,
40:6, 40:7, 41:9,
41:17, 44:13, 50:4,
51:8, 51:12, 58:21
**versions** [17] - 9:22,

9:25, 10:2, 31:23,
33:18, 35:2, 35:8,
35:13, 36:12, 36:17,
36:24, 39:12, 40:7,
42:12, 50:24, 51:13
**versus** [3] - 3:6, 47:6,
51:17
**via** [1] - 55:11
**video** [3] - 3:18, 4:8,
4:12
**view** [3] - 11:25,
37:20, 54:5
**violate** [1] - 57:21
**violation** [2] - 49:13,
51:14
**Virginia** [1] - 2:22
**virtually** [1] - 16:20
**visited** [1] - 40:23
**vs** [1] - 1:8

## W

**waited** [2] - 58:16,
58:17
**waiver** [1] - 30:11
**walk** [2] - 18:8, 23:21
**wants** [3] - 50:23,
56:22, 59:8
**warned** [1] - 53:1
**warranted** [1] - 8:1
**Washington** [1] - 2:4
**water** [1] - 43:2
**Weiss** [1] - 3:19
**WEST** [1] - 2:10
**West** [2] - 4:1, 4:3
**whatsoever** [1] -
25:16
**whereas** [1] - 12:22
**whole** [7] - 29:9, 46:6,
49:2, 49:16, 51:19,
57:6, 57:14
**widely** [1] - 49:8
**wider** [1] - 48:25
**WILLIAM** [1] - 2:3
**willing** [3] - 11:15,
14:1, 18:14
**willingly** [1] - 55:20
**wish** [1] - 14:2
**wishes** [2] - 8:24,
13:25
**witness** [1] - 14:7
**Word** [5] - 12:16, 13:4,
37:10, 37:16, 42:18
**word** [3] - 36:14, 37:9,
58:5
**words** [1] - 31:14
**works** [5] - 28:6, 28:7,
28:9, 37:16, 37:20
**wrapping** [1] - 33:14
**writing** [1] - 37:12

**wrote** [3] - 5:14, 27:4,
28:10

## Y

**year** [2] - 33:8, 35:15
**years** [24] - 16:23,
25:1, 25:3, 25:25,
26:13, 28:5, 28:20,
29:24, 30:6, 33:4,
33:5, 33:6, 37:19,
38:15, 43:5, 43:13,
44:25, 45:1, 46:11,
47:11, 51:21, 55:7
**yelling** [1] - 33:1

## Z

**zero** [1] - 44:10