BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON *(pro hac vice)*
KAREN DUNN *(pro hac vice)*
2001 K Street, NW
Washington, DC 20006
Telephone:    202.223.7300
Facsimile:    202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH *(pro hac vice)*
JOHN A. POLITO *(pro hac vice)*
SHARON R. SMITH *(pro hac vice)*
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

*Attorneys for Plaintiffs*
*Oracle USA, Inc., Oracle America, Inc., and*
*Oracle International Corp.*

DORIAN DALEY *(pro hac vice)*
DEBORAH K. MILLER *(pro hac vice)*
JAMES C. MAROULIS *(pro hac vice)*
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURTa

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation; ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; AND SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S OBJECTION TO MAGISTRATE JUDGE FERENBACH'S REPORT AND RECOMMENDATION ON ORACLE'S MOTION FOR SANCTIONS PURSUANT TO RULE 37**<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

NOTICE OF OBJECTION AND OBJECTION ................................................................... 1

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

     A.     TransferFiles and Rimini's Deletion Program .......................................... 3

     B.     Rimini Repeatedly Lied About Destroying Evidence (Again) ................... 5

         1.     Rimini's Misrepresentations During *Rimini II* Discovery ......... 5

         2.     Rimini Destroyed Over ███ Files ............................................... 6

         3.     Rimini Falsely Claimed that No Files Were Lost ...................... 8

         4.     Rimini Modified Its Deletion Tool Only When Caught Red-
            Handed ...................................................................................... 8

     C.     The Parties' Prior Briefing and Magistrate Judge Ferenbach's Report ................. 9

         1.     Oracle's Motion for Sanctions (ECF No. 1363) ......................... 9

         2.     Rimini's Opposition (ECF No. 1374) ...................................... 10

         3.     Oracle's Reply (ECF No. 1379) ............................................... 10

         4.     Report and Recommendation (ECF No. 1431) ........................ 11

III.   LEGAL STANDARD .......................................................................................... 11

     A.     Review of Report and Recommendation .................................................. 11

     B.     Rule 37(e) Spoliation Sanctions ............................................................... 12

IV.   ARGUMENT ....................................................................................................... 13

     A.     The Spoliated Files Were Not "Transitory, Intermediate Files" and Rimini
         Had an Obligation to Preserve Them Even If They Were ................................... 13

         1.     The Deleted Files Were Permanent But For the Deletion Program ......... 13

         2.     Rimini Had a Duty to Preserve the ███ Deleted Files
            Regardless of Whether They Were "Transitory" ..................... 15

B.      Rimini Had a Duty to Preserve the ███ Files Whether or Not They

Were Sent to Third Parties Because They Were Not Duplicative of Other

Files Produced by Rimini ..................................................................... 16

C.      The Spoliated Files Were Not Replaceable ........................................ 19

V.      CONCLUSION............................................................................................ 22

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**                                                                    **Page(s)**

4

*26 Beverly Glen, LLC v. Wykoff Newberg Corp.*
    2007 WL 1560330 (D. Nev. May 24, 2007)................................................................11

5

6

*Adams AV Select Investments, LLC v. Klein*
    2020 WL 2425715 (D. Del. May 12, 2020)..............................................................17

7

8

*Alexce v. Shinseki*
    447 F. App'x 175 (Fed. Cir. Oct. 6, 2011)................................................................14

9

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*
    69 F.3d 337 (9th Cir. 1995) .....................................................................................20

10

11

*Arista Recs. LLC v. Usenet.com, Inc.*
    608 F. Supp. 2d 409 (S.D.N.Y. 2009).....................................................................15

12

*Best Payphones, Inc. v. City of New York*
    2016 WL 792396 (E.D.N.Y. Feb. 26, 2016)...........................................................20

13

14

*Brown v. Albertsons, LLC*
    2017 WL 1957571 (D. Nev. May 11, 2017)............................................................12

15

16

*Convolve, Inc. v. Compaq Computer Corp.*
    223 F.R.D. 162 (S.D.N.Y. 2004) ............................................................................14

17

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*
    2014 WL 4748139 (W.D. Wash. Aug. 8, 2014)......................................................13

18

19

*Eshelman v. Puma Biotechnology, Inc.*
    2017 WL 2483800 (E.D.N.C. June 7, 2017) ......................................................17, 18

20

21

*Fowler v. Wal–Mart Stores, Inc.*
    2017 WL 3174915 (D. Nev. July 26, 2017) ...........................................................11

22

23

*Grimes v. City & Cnty. of San Francisco*
    951 F.2d 236 (9th Cir. 1991) ..................................................................................11

24

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*
    497 F. Supp. 2d 627 (E.D. Pa. 2007) .................................................................14, 15

25

26

*Jadwin v. Cnty. of Kern*
    767 F. Supp. 2d 1069 (E.D. Cal. 2011)...................................................................11

27

*Kearney v. Foley & Lardner, LLP*
    590 F.3d 638 (9th Cir. 2009) ..................................................................................11

28

---

iv

*LaJocies v. City of N. Las Vegas*
   2011 WL 1630331 (D. Nev. Apr. 28, 2011) ........................................................................12

*Manufacturing Automation & Software Systems, Inc. v. Hughes*
   2018 WL 2059839 (C.D. Cal. Apr. 30, 2018) ......................................................................20

*In re Napster, Inc. Copyright Litig.*
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................................12

*Newberry v. Cnty. of San Bernardino*
   750 F. App'x 534 (9th Cir. Sept. 18, 2018) ..........................................................................12

*OmniGen Rsch. v. Yongqiang Wang*
   321 F.R.D. 367 (D. Or. 2017) ..............................................................................................12

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.*
   328 F.R.D. 543 (N.D. Cal. 2018) .........................................................................................17

*Paisley Park Enters., Inc. v. Boxill*
   330 F.R.D. 226 (D. Minn. 2019) ..........................................................................................18

*Playstudios, Inc. v. Centerboard Advisors, Inc.*
   2019 WL 6493926 (D. Nev. Dec. 3, 2019) ...........................................................................11

*Skyline Steel, LLC v. PilePro, LLC*
   101 F. Supp. 3d 394, 409–12 (S.D.N.Y. 2015) .....................................................................15

*Small v. Univ. Med. Ctr.*
   2018 WL 3795238 (D. Nev. Aug. 9, 2018) ...........................................................................12

*United Factory Furniture Corp. v. Alterwitz*
   2012 WL 1155741 (D. Nev. Apr. 6, 2012) ............................................................................12

*United States v. Kitsap Physicians Serv.*
   314 F.3d 995 (9th Cir. 2002) ................................................................................................11

*United States v. Ressam*
   593 F.3d 1095 (9th Cir. 2010) ..............................................................................................11

*Wood v. Nautilus Ins. Co.*
   2019 WL 4932924 (D. Nev. Oct. 7, 2019) ............................................................................11

*Zubulake v. UBS Warburg LLC*
   220 F.R.D. 212 (S.D.N.Y. 2003) ..........................................................................................12

ORACLE'S OBJECTION TO REPORT AND RECOMMENDATION ON ORACLE'S MOTION FOR RULE 37 SANCTIONS

**Rules and Regulations**

Fed. R. Civ. P.
    Rule 37 ...................................................................................................... *passim*
    Rule 37(b) ......................................................................................................20, 21
    37(e) ......................................................................................................... *passim*
    72(a) ..........................................................................................................1, 11

L.R. IB
    3-1 ....................................................................................................................1
    3-1(a) ................................................................................................................11

**Other Authorities**

*The Sedona Principles, Third Edition: Best Practices, Recommendations &*
    *Principles for Addressing Electronic Document Production*, 19 Sedona Conf.
    J. 1 (2018) ......................................................................................................14

1

**NOTICE OF OBJECTION AND OBJECTION**

2

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule IB 3-1, Plaintiffs

3

Oracle USA, Inc., Oracle America, Inc., and Oracle International Corporation (collectively

4

"Oracle"), respectfully object to Magistrate Judge Ferenbach's Report and Recommendation on

5

Oracle's Motion for Sanctions Pursuant to Rule 37.  This Objection is based on this Notice of

6

Objection, the accompanying Memorandum of Points and Authorities, the Declaration of John

7

A. Polito in Support of Objection ("Polito Decl."), the entire record in this action, and such other

8

matters and argument as may be presented to the Court.

9

**I.    INTRODUCTION**

10

Roughly a decade ago, Rimini Street, Inc. ("Rimini") destroyed a vast library of Oracle

11

software—which it falsely denied creating—and the Court sanctioned Rimini for its spoliation.

12

ECF No. 466, at 16–17 ("Rimini spoliated evidence when it deleted the software library in

13

January 2010. . . .  The court finds that Rimini's deletion of the software library was willful, in

14

the sense that it was intentionally deleted well after Rimini was on notice of potential litigation

15

with Oracle regarding Rimini's use of Oracle's copyrighted software.").  Rimini did not learn its

16

lesson.  Although Rimini's methods of document destruction have changed since 2010, Rimini

17

continues to disregard its document preservation obligations and to spoliate important evidence.

18

Accordingly, Oracle seeks sanctions against Rimini under Rule 37.

19

Rimini has once again deleted files that were relevant to a key issue in this case.  This

20

Court's Injunction specifically applies to Rimini's distribution of files to its customers.  Rather

21

than preserve those files, which are central to the issue of whether Rimini is complying with the

22

Injunction, Rimini created and deployed an automated program to delete the very files that

23

Rimini sends to its customers.  In total, Rimini deleted more than ███████████ (██████ *files*,

24

including draft and final documents, including patches, updates, and other files.  Rimini's

25

spoliation prevented Oracle from obtaining a complete set of these patches, updates, and other

26

files that Rimini sent to each of its customers using the TransferFiles tool.  Whether these files

27

complied with the Injunction is now largely unknowable because Rimini destroyed this evidence.

28

Rimini's spoliation was deliberate. Rimini wrote, implemented, and executed a data-deletion program called ███████████████████████ (the "Deletion Program") that wiped out copies of the files Rimini sent to its customers. Mot., ECF No. 1363 at 5–6. The deleted files were not transitory files; they would have remained on Rimini's systems, providing a complete picture of what Rimini distributed to customers, had Rimini not chosen to destroy them.

As with its spoliation in 2010, Rimini and its counsel misled Oracle about the deletion to avoid detection and accountability. After Oracle identified a number of empty directories on servers Rimini used to send documents and files to customers, Rimini repeatedly represented that no data was lost and that it retained copies of all files sent to Rimini's customers. But Rimini cannot show that the copies of files it located elsewhere on its systems are the same as the ██████ files it destroyed with the Deletion Program, and while Rimini's counsel made that very representation to Magistrate Judge Ferenbach, Rimini pointed to *no evidence whatsoever* to support that bald assertion. No Rimini employee, expert witness, or lawyer dared to swear under penalty of perjury that the files it located are the same as the files it destroyed. Nor does any documentary evidence support this false assertion.

This Court should grant Oracle's motion for sanctions, and Magistrate Judge Ferenbach's Report and Recommendation (ECF No. 1431) ("Report") errs in recommending otherwise. The Report's finding that the deleted files were "transitory" is contradicted by the undisputed fact that the files Rimini destroyed would have remained on Rimini's FTP server permanently and indefinitely absent Rimini's creation and implementation of the Deletion Program. There is no support for the proposition adopted by the Report that a party may design a document-purging program in the middle of litigation and escape its document preservation obligations by claiming that the Deletion Program converted the deleted documents from permanent to temporary files. Rather, the law is clear that parties must *suspend* automatic deletion programs, not write and deploy them.

The Report also errs in both its factual findings and legal conclusion that no files were "lost" because Oracle did not attempt to take third-party discovery to replace the deleted ESI.

During the more than a year that Oracle sought to enforce this Court's injunction, Magistrate Judge Ferenbach (at Rimini's urging) limited Oracle to five customer subpoenas.  Thus, Oracle could not have obtained meaningful third-party discovery regarding the deleted files.  Further, Oracle was not obligated to conduct unreasonably burdensome and lengthy third-party discovery to try to cure Rimini's spoliation before bringing its motion for sanctions.

Accordingly, Oracle objects to the Report in full and respectfully requests that this Court determine that the Report clearly erred and sanction Rimini for its ongoing, deliberate spoliation.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   TransferFiles and Rimini's Deletion Program

For several years, Rimini has used a software program called the Automated Framework ("AFW") to copy PeopleSoft software and support materials to its customers' systems.  Mot. at 5 (citing *Rimini II*, ECF No. 904-3, Decl. of Christian B. Hicks ¶ 6 (citing § 6.1.1)).  AFW includes a suite of tools designed by Rimini's in-house engineers.  *Id.* (citing *Rimini II*, ECF No. 1326, F-C Rept. ¶¶ 30, 108).

During the Injunction compliance period (November 5, 2018 to the present), Rimini has relied primarily on an AFW subprogram called TransferFiles to copy PeopleSoft files and support materials from Rimini's systems to customer-associated environments.  *Id.* (citing ECF No. 1331-1, F-C Rept. ¶ 225).  The transfer of these materials from Rimini systems to customer-associated environments is at the heart of Rimini's violations of Oracle copyrights through cross-use and copying.  Using TransferFiles, Rimini developers ████████████████ ██████████████████████████████████████████████ and then distribute those files to customers.  *Id.* (citing ECF No. 1363-1, F-C Decl., Ex. 1 ¶¶ 127–33, 334, 385; ECF No. 1326, F-C Rept. ¶ 161).  Rimini's use of TransferFiles ████████████ ██████████████████████ after the Injunction went into effect on November 5, 2018.

In or about ██████████, ECF No. 1374-2, Frank Decl. ¶ 12—long after it was engaged in litigation with Oracle—████████████████████████████████████



█████████████████████████.[1]  Mot. at 5 (citing ECF No. 1363-1, F-C Decl., Ex. 1 ¶¶ 386–388, 393).  █████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████  *Id.* at 6.  ████████

██████████████████████████████████████████████████

████████████████████████████████. *Id.*  ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████. *Id.* (citing ECF No. 1360, F-C

Decl., Ex. 1 ¶¶ 386–88, 393).  ████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████. *Id.* (citing ECF No.

1363-1, F-C Decl., Ex. 1 ¶¶ 136, 387–88).  As a result, the files that Rimini sends to its

customers from Rimini systems are intentionally and systematically deleted from Rimini's AFW

FTP server.

The files deleted by Rimini's program were permanent files *until* Rimini created and used

the program to delete them automatically.  Even after that, Rimini could have suspended its

Deletion Program at any time—and should have done so, consistent with its document

preservation obligations.  Because Rimini failed to suspend the Deletion Program and deleted

and destroyed the files sent to its customers using TransferFiles during the Injunction compliance

period, Rimini intentionally prevented Oracle and the Court from evaluating the scope of

Rimini's improper cross-use.  Rimini's spoliation also prevented Oracle and the Court from

---

[1] Rimini refers to the Deletion Program as a "███████████  ECF No. 1374, at 8.  Rimini acknowledges that its "██████████ is "██████████████" (*i.e.*, █████ files from its AFW FTP server.  *See id.*

evaluating Rimini's claim that none of the files it transferred contained protectable Oracle expression.  In many cases, Rimini ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████.  *See infra*, at 16–17; ECF No. 1374-4,

Vandevelde Decl., Ex. H (Dec. 3, 2019 Tryck Letter), at 7–8.

**B.**   **Rimini Repeatedly Lied About Destroying Evidence (Again)**

1.   Rimini's Misrepresentations During *Rimini II* Discovery

By September 2017, Oracle was attempting to understand Rimini's use of the TransferFiles tool— during the *Rimini II* litigation.  In response to this investigation, Rimini lied, stating that it was adhering to its preservation obligations.

In September 2017, Oracle issued an RFP to Rimini in *Rimini II* requesting "[a]ll documents concerning Rimini's storage or transfer of fixes, patches or updates for Oracle Software . . . concerning Rimini's use of any file-sharing application, FTP or similar servers . . . ."  Mot. at 7 (quoting ECF No. 1361, Rodriguez Decl., Ex. E).  Oracle also requested copies of the fixes, patches, and updates that Rimini distributed to customers.  *Id.* (citing ECF No. 1361, Rodriguez Decl., Ex. E).  Rimini appeared to agree to these requests, *id.* (citing ECF No. 1363-11, Rodriguez Decl., Ex. F), and Oracle relied on Rimini's sworn interrogatory responses that it was preserving all materials sent to customer-associated environments via FTP, *id.* (citing ECF No. 1363-11, Rodriguez Decl., Ex. G), and that Rimini did not have "any policies, practices, or procedures regarding the deletion of fixes, patches, or updates,"  *id.* (quoting ECF No. 1361, Ex. H).

In 2018, after noticing a number of empty directories on Rimini's AFW FTP server, Oracle became concerned that Rimini, despite its representations, was withholding documents and repeatedly contacted Rimini for an explanation.  *Id.* (citing ECF No. 1363-11, Rodriguez Decl., Ex. I (Sept. 27, 2018 Reblitz-Richardson Letter) at 4–5, Ex. J (Nov. 7, 2018 Reblitz-Richardson Letter) at 1–2). Rimini responded that all transferred materials constituting potential cross-use had not only been preserved, but had been produced:

Consistent with the design and purpose of the AFW FTP process, materials do not remain in the AFW FTP folder locations ███████████████████████. However, *the* ███████████████████████ *and, to the best of Rimini's knowledge, have been produced in this litigation.* As we have previously explained, Rimini also kept detailed ███████████████, and those ███ have been produced to Oracle.

*Id.* (citing ECF No. 1363-11, Rodriguez Decl., Ex. K (Dec. 10, 2018 Vandevelde Letter) at 1) (emphasis added). As explained below, *infra* at 16–17, this was untrue.

### 2. Rimini Destroyed Over ███ Files

Only in 2019, after this Court ordered Rimini to produce discovery necessary to enforce the Injunction, did Oracle obtain evidence that Rimini was destroying evidence. On August 20, 2019, in response to Oracle's post-Injunction discovery requests, Rimini produced—for the first time—███████ chronicling the breadth of its active and affirmative deletion of responsive materials during the post-Injunction Period.[2] Mot. at 7–8. (citing ECF No. 1363-11, Rodriguez Decl., Ex. L (Aug. 28, 2019 Kocan Letter)). These ███ were not produced in *Rimini II.* For the first time, Oracle learned that between November 5, 2018 and July 25, 2019, Rimini intentionally and systematically deleted at least ██████ files from its AFW FTP server—and that each and every one of those ██████████████████████. *Id.* At 8 (citing ECF No. 1363-1, F-C Decl., Ex. 1 ¶ 392).

The ██████████ demonstrate Rimini had misrepresented that it had both preserved and produced the files transferred to customers. Many of the files Rimini sent to customers are ***not*** the same as those that remain scattered throughout Rimini's other computer systems. For example, while ████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████ *Id.* (citing ECF No. 1363-1, F-C Decl. ¶¶ 21–22 & Exs. 7–8). The █████ of ██████ corresponding to the ██████████████ are missing. They are not otherwise available to Oracle because Rimini intentionally destroyed them with the

---

[2] The very existence of these ██████████ contradicts Rimini's earlier insistence that it did not have and was not aware of "any policies, practices, or procedures regarding the deletion of fixes, patches, or updates." ECF No. 1361, Ex. H (Dec. 20, 2017 Vandevelde Letter).

Deletion Program.

Additionally, Rimini's Deletion Program destroyed the "draft" updates Rimini sent to customer-associated prototype environments using TransferFiles. The drafts are critical in these contempt proceedings because the Injunction expressly governs Rimini's testing and development practices. Injunction, ECF No. 1166 ¶ 6. Draft updates are updates that Rimini develops and tests on customer-associated systems as part of its prototyping process. Rimini frequently distributes ███████████████████████—*i.e.*, ████████████████████ ██████████████████████—████████████████████ before distributing the final version of the file to the prototype customer and then *en masse* to other customers. In many cases, Rimini has not produced the early versions of these files, and has produced only the "final" version. But for the Deletion Program, the early versions would have been available on Rimini's FTP server for production to Oracle. It also appears that Rimini's engineers intentionally overwrote certain pre-final versions of the files.[3]

For example, Rimini's AFW records for Rimini update HCM200640 reveal that during a three-day period in July 2019, Rimini sent █ different versions of a file named ███████ from the same, non-customer-specific folder on Rimini's network to ███ a prototype customer, before finalizing the file and distributing it to ██████████. Mot. at 9 (citing ECF No. 1363-1, F-C Decl., Ex. 2 ¶ 24; Ex. 9). Despite having created and distributed at least █ different versions of this file—and then deleting the copies of those versions stored on its AFW FTP server—Rimini produced only ██████████████████. *Id.* (citing ECF No. 1363-1, F-C Decl., Ex. 8). Because Rimini deleted the █ earlier versions of the file and the copies of the █ earlier versions from the FTP server, neither Oracle nor the Court can determine the extent to which Rimini used Oracle code, or how many violations of the Injunction or acts of

---

[3] Rimini engineers would ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████. ECF No. 1363-1, F-C Decl., Ex. 2 ¶ 25.

infringement Rimini committed when cross-using ███ PeopleSoft software.  Oracle has therefore been deprived of critical evidence regarding whether the deleted files violated the Injunction.

### 3.   Rimini Falsely Claimed that No Files Were Lost

Rimini eventually adopted the position that it had located and produced copies of all but six of the files it had destroyed, but Rimini failed to provide any evidence or even an explanation for how it could possibly know that the files it located are the same as the files it destroyed on the FTP server.  Oracle has no way to test Rimini's assertion.  Further, as noted above, the evidentiary record contains clear gaps that demonstrate that Rimini's attempted defense is baseless. *See infra* at 16–17.[4]

The evidentiary gap is enormous.  Rimini deleted at least ███ files—███ of which were █████████████.[5]  Mot. at 9 (citing ECF No. 1363-1, F-C Decl. ¶¶ 15–16 & Ex. 1 ¶ 392).  For at least ███ of the █████ files, Rimini could not produce files that match the files deleted from its AFW FTP server or from the folders that Rimini's ████ identify as the sources of those files.  *Id.* (citing ECF No. 1363-11, Rodriguez Decl. ¶ 15).[6]  As a result, over ██ percent of the deleted files could not be recovered from any reliable source.  While Rimini claims to have produced copies of many of these ███ files, there are no records—*i.e.*, there is no evidence—tying these alleged copies to the versions actually transferred to customers via AFW.  *See id.* at 10 n.4 (citing ECF No. 1363-1, F-C Decl., Ex. 1 ¶ 395 (███████████████ ██████████████)).

### 4.   Rimini Modified Its Deletion Tool Only When Caught Red-Handed

On August 21, 2019, the day after Rimini finally produced its ███████ Oracle sent a

---

[4] Rimini's assertion also contradicts its *Rimini II* interrogatory responses, in which Rimini stated in relevant part that █████████████████████████████████████████ ECF No. 1363-11, Rodriguez Decl., Ex. G (Rimini's Am. Resp. to Oracle's Interrog. No. 23) at 12 n.8.
[5] These ████ **files** each have one of ███ different **file names**.  ECF No. 1363-1 (F.-C. Decl.) ¶ 15.
[6] Rimini's AFW Records identify at least 139 customers to which at least one deleted file for which Rimini produced no matching file was sent.  ECF No. 1433 at 6:21–7:4.

---

8

letter requesting that Rimini (1) "immediately disable this deletion function and investigate, identify, and modify or suspend any other functions or features that operate to cause the loss of potentially relevant ESI"; (2) identify which files were deleted and when; and (3) make Rimini's AFW servers available for inspection to increase the likelihood that deleted files could be forensically recovered.  ECF No. 1363-11, Rodriguez Decl., Ex. O (Aug. 21, 2019 Kocan Letter) at 2.  Oracle also reminded Rimini of its duty to "preserve any and all records" relating to the AFW FTP files, and that the "failure to preserve evidence, including any intentional or negligent destruction of such evidence, constitutes spoliation of evidence and may entitle Oracle to sanctions." *Id.*

On October 1, 2019, Rimini stated that "[g]*oing forward*, files sent using the TransferFile tool [would] be recoverable from [a] single archived location."  *Id.*, Ex. P (Oct. 1, 2019 Vandevelde Letter), at 1 (emphasis added).  Rimini also disclosed that, in response to Oracle's August 21, 2019, letter, it was "modifying its AFW TransferFile tool to preserve the intermediate, duplicate copies at issue," and that "the new tool, as modified, will copy the intermediate, duplicate copies to an archived location before deleting them from the FTP folders." *Id.*  Rimini could have preserved its documents for the prior two years in precisely the same manner.

### C. The Parties' Prior Briefing and Magistrate Judge Ferenbach's Report

#### 1. Oracle's Motion for Sanctions (ECF No. 1363)

On July 10, 2020, Oracle filed a motion for sanctions, ECF No. 1363, in connection with its motion for an order to show cause why Rimini should not be held in contempt of the Injunction ("Motion" or "Mot.").  Oracle laid out the factual background above, *id.* at 5–11, and explained why Rimini's conduct constitutes spoliation, *id.* at 12–18.  Oracle argued that Rimini's spoliation was intentional and justified a rebuttable presumption under Rule 37(e)(2) that "the missing data would have supported a conclusion that Rimini 'reproduced, prepared derivative works from, and distributed PeopleSoft' software in violation of the Injunction."  *Id.* at 18–21. In the alternative, Oracle explained how Rimini's spoliation had prejudiced Oracle, and

9

requested remedies including (a) the Court's consideration of Rimini's spoliation during the Injunction compliance proceedings, (b) monetary penalties, and (c) the exclusion of certain Rimini evidence. *Id.* at 21–23. Oracle also sought attorneys' fees and costs. *Id.* at 24.

### 2. Rimini's Opposition (ECF No. 1374)

On July 24, 2020, Rimini filed its opposition and raised four arguments. ECF No. 1374 ("Opp."). First, Rimini argued that Oracle's motion was untimely, contending that Oracle could have brought the motion earlier and that, had Oracle brought the motion earlier, Magistrate Judge Ferenbach could have remedied the spoliation through additional discovery. *Id.* at 13–14. Second, Rimini contended that there was no spoliation because "no ESI was 'lost'" and that Rimini had no duty to preserve the files it undisputedly deleted because they were "temporary" or "transitory." *Id.* at 14–19. Third, Rimini argued that Oracle was not prejudiced because the deleted files were mere duplicates, again claiming that Rimini had produced copies of all but six of the deleted files. *Id.* at 19–21. Fourth, Rimini argued that any spoliation that occurred was unintentional and that the Court should not consider its past history of spoliation in evaluating intentionality. *Id.* at 21–24.

### 3. Oracle's Reply (ECF No. 1379)

On July 31, 2020, Oracle filed its reply. ECF No. 1379 ("Reply"). Oracle noted Rimini's admission that it had deleted over ███ files, and explained that—contrary to Rimini's claims—many of those files were unique (*i.e.*, not merely duplicates) and that they were neither "temporary" nor "transitory," because they would have remained on Rimini's FTP server indefinitely but for Rimini's creation, implementation, and execution of the Deletion Program. *Id.* at 2–7. Oracle pointed out that Rimini had cited no evidence whatsoever in support of its argument that the files it located are identical to the files it destroyed. *Id.* at 3–4. Oracle then reiterated the prejudice it suffered from Rimini's spoliation, *id.* at 7–9, and rebutted Rimini's claim that the deletions were unintentional, *id.* at 9–11. Lastly, Oracle explained that its motion was timely because it was brought shortly after the close of expert discovery, that Rule 37 does not dictate the timing of a spoliation motion, and that no amount of additional

1  discovery could have restored the deleted files.  *Id.* at 11–12

2               4.     Report and Recommendation (ECF No. 1431)

3        On September 21, 2020, Magistrate Judge Ferenbach issued his Report and

4  Recommendation, recommending that the Court deny Oracle's request for sanctions.  ECF No.

5  1431 ("Report").  The Report found that "the missing files are mere transitory, intermediate

6  files." *Id.* at 7–8.  The Report found that Rimini was not obligated to preserve the deleted files,

7  and that they were duplicative of other copies stored on Rimini's systems and client-associated

8  environments.  *Id.* at 8.  The Report concluded that no information was lost because Oracle could

9  have subpoenaed Rimini's clients to try to recover the files.  *Id.* at 8–9.

10       Oracle objects to each of the Report's findings and recommendations.[7]

11  **III.**   **LEGAL STANDARD**

12     **A.**     **Review of Report and Recommendation**

13       The district court must modify or set aside any part of the order that is clearly erroneous or

14  is contrary to law.  *See* Fed. R. Civ. P. 72(a); LR IB 3-1(a).  "The 'clearly erroneous' standard applies

15  to a magistrate judge's factual findings, whereas the 'contrary to law' standard applies to a magistrate

16  judge's legal conclusions." *Fowler v. Wal–Mart Stores, Inc.*, 2017 WL 3174915, at *2 (D. Nev. July

17  26, 2017) (citing *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991)).  "A

18  finding is clearly erroneous when although there is evidence to support it, the reviewing body on the

19  entire evidence is left with the definite and firm conviction that a mistake has been committed."

20  *Playstudios, Inc. v. Centerboard Advisors, Inc.*, 2019 WL 6493926, at *1 (D. Nev. Dec. 3, 2019)

21  (quoting *United States v. Ressam*, 593 F.3d 1095, 1118 (9th Cir. 2010) (internal quotation marks

22  omitted)).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case

23

24  _____

[7] Rimini filed unauthorized, supplemental briefing as a "demonstrative" two hours before the
September 3, 2020 hearing on Oracle's Motion.  ECF No. 1423.  Oracle timely responded and
objected to Rimini's demonstrative, ECF No. 1428, and Rimini filed a response, ECF No. 1430.
Magistrate Judge Ferenbach "review[ed] and consider[ed] the facts and arguments both parties
presented" in those filings. Report at 5 n.1.  Oracle maintains and reasserts its objections to
Rimini's demonstratives and again requests that the Court disregard Rimini's assertions that
certain facts are "undisputed" or "confirmed."  ECF No. 1428 at 5.

1  law, or rules of procedure." *Wood v. Nautilus Ins. Co.*, 2019 WL 4932924, at *2 (D. Nev. Oct. 7,

2  2019) (quoting *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1110–11 (E.D. Cal. 2011)). "Under

3  the contrary to law standard, the Court conducts a de novo review of the Magistrate Judge's legal

4  conclusions." *26 Beverly Glen, LLC v. Wykoff Newberg Corp.*, 2007 WL 1560330, at *2 (D. Nev.

5  May 24, 2007) (citing *Grimes*, 951 F.2d at 241).

6        **B.**    **Rule 37(e) Spoliation Sanctions**

7        Spoliation is the destruction or significant alteration of evidence, or the failure to preserve

8  property for another's use as evidence in pending or reasonably foreseeable litigation. *Kearney*

9  *v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009); *United States v. Kitsap Physicians*

10  *Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). "Litigants owe an uncompromising duty to preserve

11  what they know or reasonably should know will be relevant evidence in a pending lawsuit . . . ."

12  *United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012).

13  Once a party's duty to preserve relevant evidence takes effect, it must "suspend any existing

14  policies related to deleting or destroying files." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp.

15  2d 1060, 1070 (N.D. Cal. 2006); *see also Brown v. Albertsons, LLC*, 2017 WL 1957571, at *6

16  (D. Nev. May 11, 2017) (same); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y.

17  2003) (same).

18        Courts may impose "severe sanctions against a party that engages in the spoliation of

19  evidence." *Alterwitz*, 2012 WL 1155741, at *3. Rule 37(e) provides for certain sanctions for the

20  spoliation of electronically stored information ("ESI"). *Newberry v. Cnty. of San Bernardino*,

21  750 F. App'x 534, 537 (9th Cir. Sept. 18, 2018); *see also Small v. Univ. Med. Ctr.*, 2018 WL

22  3795238, at *67 (D. Nev. Aug. 9, 2018). If a spoliating party has intentionally destroyed

23  information it had a duty to preserve, the Court may order serious sanctions, including a

24  presumption that the lost information was unfavorable to the spoliating party. Fed. R. Civ. P.

25  37(e)(2). Even if the spoliating acts do not reach this heightened intent requirement, however,

26  the court may order any lesser sanctions necessary to cure the prejudice to the other party. Fed.

27  R. Civ. P. 37(e)(1).

28

"The applicable standard of proof for spoliation motions in the Ninth Circuit is the preponderance of evidence." *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (citing *LaJocies v. City of N. Las Vegas*, 2011 WL 1630331, at *1 (D. Nev. Apr. 28, 2011)).

## IV. ARGUMENT

### A. The Spoliated Files Were Not "Transitory, Intermediate Files" and Rimini Had an Obligation to Preserve Them Even If They Were

The Report concluded that Rimini did not have an obligation to preserve the more than ▮▮▮ files that Rimini concedes it deleted because it found that those files were "mere transitory, intermediate files." Report at 7–8. *First*, the Report's finding that the deleted files are transitory is clearly erroneous as it is flatly contradicted by the undisputed fact that the files Rimini destroyed would have remained on Rimini's FTP server permanently and indefinitely absent Rimini's creation and implementation of the Deletion Program. *Second*, even if the files were "transitory" (which they are not), Rimini still had an obligation to preserve them and the Report's conclusion otherwise is contrary to law.

#### 1. The Deleted Files Were Permanent But For the Deletion Program.

As Oracle explained in its Motion, the hard drive on Rimini's FTP server is a permanent storage solution, unlike RAM or temporary cache files. Mot. at 13 (citing *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2014 WL 4748139, at *7 (W.D. Wash. Aug. 8, 2014)). Nothing about FTP technology causes files to be automatically deleted, so files distributed using FTP technology remain on an FTP server indefinitely unless and until they are affirmatively deleted. ECF No, 1363-1, F-C Decl., Ex. 1 ¶ 385; *see* Mot. at 5 n.1. The only reason Rimini argues that the files it deleted were "temporary" is that Rimini wrote, implemented, and executed a Deletion Program that systematically sought out and destroyed those files.

Rimini did not dispute *any* of these facts (other than quibbling about Oracle's "Deletion Program" terminology) and provided no evidence to the contrary. Opp. at 7–10. And Rimini's purported *rationale* for implementing its Deletion Program—▮▮▮▮▮▮▮▮▮▮ *id.* at 8–9—

does not change the nature of the files or storage system from permanent to temporary.[8]  The

explanation only bolsters Oracle's argument that the files were permanent absent Rimini's

spoliation.  If the files were inherently "transitory," they would not cause " ████████  Moreover,

Rimini has not cited any authority for the proposition that parties are permitted to " █████ their

file storage, notwithstanding their preservation obligations, and Oracle is not aware of any.

     The files saved to Rimini's FTP server prior to their destruction by the Deletion Program

are akin to emails stored in the "sent" folder of an email account.  Reply at 4.  When an email

user sends a document from her hard drive as an email attachment, the transmitted version of the

attachment remains stored in the "sent" email folder, even if the user subsequently modifies or

deletes other copies of the document on her hard drive.  Rimini's Deletion Program essentially

deleted all of the "sent" files.  But that deletion does not render the sent files "transitory."

     None of the cases Rimini cited in its briefing suggest otherwise.  Opp. at 16–18.  *Alexce*

*v. Shinseki* did not concern electronic data at all.  447 F. App'x 175, 177–78 (Fed. Cir. Oct. 6,

2011).  *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey* involved a situation

where "no evidence" was "presented showing that the Harding firm was responsible for erasing"

the deleted documents.  497 F. Supp. 2d 627, 641 (E.D. Pa. 2007) (referring to this as the "most

important fact" in the court's spoliation decision).  By contrast, here, Rimini concedes that it

created, implemented, and ran its Deletion Program.  And *Convolve, Inc. v. Compaq Computer*

*Corp.* involved inapposite (and truly "ephemeral") data displayed on an oscillator screen only

"until the tuning engineer makes the next adjustment."  223 F.R.D. 162, 177 (S.D.N.Y. 2004).

     The Report does not rely on any of Rimini's cases to support its clearly erroneous finding

that the deleted files were "temporary" or "intermediate."  Report at 5–8.  The only related

authority the Report cites is *The Sedona Principles, Third Edition: Best Practices,*

*Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona

---

[8] Rimini's declarant Richard Frank claims that ████████████████████████████████
████████████  ECF No. 1374-2, Frank Decl. ¶ 11.
This is entirely inconsistent with Rimini's argument that ████████████████████████
████████████████████████████████████  *See* Opp. at 8–9.

Conf. J. 1, 112 (2018).  Report at 6.  The *Sedona Principles* note the reality that ESI may be stored in multiple locations, that some software (such as word processors) create temporary backup copies of files that are automatically erased without the party's input, and that litigants are not required to preserve duplicative copies of every relevant file.  *Id.*  The *Sedona Principles* do not support a finding that a party may write, implement, and execute its own deletion program to seek and destroy a repository of some of the most relevant documents in the case, and in so doing characterize the deleted files as "temporary."  In fact, the *Sedona Principles* expressly state that a party to a litigation must suspend the automatic deletion of data.  19 Sedona Conf. J. at 104.

There is no support for the proposition adopted by the Report and argued by Rimini that a party may design a document-purging program in the middle of litigation and then claim that its preservation obligations have been altered because use of the program converted the deleted documents from permanent to temporary files.[9]  Under the Report's rationale, all files that can be destroyed are "temporary."  Neither the Report nor Rimini have cited any authority for such a massive loophole to a litigant's document preservation obligations.  As a result, the Report's finding that the deleted files were "temporary" or "intermediate" is clearly erroneous.  The finding is inconsistent with the factual record and unsupported by any legal authority.  The Court should therefore decline to adopt it.

2.     <u>Rimini Had a Duty to Preserve the ████ Deleted Files Regardless of Whether They Were "Transitory"</u>

The Report's conclusion that a party has no duty to preserve "transitory" documents is contrary to law.  Parties are duty-bound to preserve even the most temporary and transitory of files once they are put on notice of their relevance.  *See, e.g.*, *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 409–12 (S.D.N.Y. 2015) (imposing spoliation sanctions for deletion of "temporary files"); *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 431–44 (S.D.N.Y. 2009) (imposing spoliation sanctions for failure to preserve "transient electronic

---

[9] Rimini's briefing failed to identify any such authority.  *See* Opp. at 16–19.

15

data"); *cf. Healthcare Advocates*, 497 F. Supp. 2d at 641 (declining to apply a spoliation sanction for deletion of temporary cache files *only* because the defendant "did not affirmatively destroy the evidence").  In September *2017*, Oracle sought "[a]ll documents concerning Rimini's storage or transfer of fixes, patches or updates for Oracle Software . . . concerning Rimini's use of any file-sharing, FTP or similar servers," as well as copies of the fixes, patches, and updates Rimini distributed to customers via FTP.  ECF No. 1361, Rodriguez Decl., Ex. E.  Rimini was on notice of the relevance of the deleted repository of documents on its AFW FTP server and should have preserved them.  The Report's conclusion otherwise is contrary to law.

**B.**    **Rimini Had a Duty to Preserve the ▬▬▬ Files Whether or Not They Were Sent to Third Parties Because They Were Not Duplicative of Other Files Produced by Rimini**

The Report concluded that "Rimini did not have an obligation to preserve" the deleted files because the "files were duplicative of the files that already existed on Rimini's (and the client's) systems."  Report at 8.  This finding is clearly erroneous because, as Oracle pointed out repeatedly in its briefing, there is no evidence whatsoever to support the finding that Rimini retained duplicate copies of each of the destroyed files, and the Report's conclusion that a party's transmittal of documents to non-parties (here Rimini's clients) obviates its preservation obligations is contrary to law.

*First*, the Report's finding that the deleted files were duplicative of files that Rimini maintained on its systems was clearly erroneous.  Rimini failed to provide *any* record evidence or declarations proving that the deleted files were duplicative of other copies that it preserved and produced to Oracle.  Reply at 2.  Rimini certainly *argued* that "[n]o information has been 'lost' as a result of TransferFiles" and that it has located copies of all but six of the more than ▬▬▬ deleted files from other locations on Rimini's systems," but those are assertions in a brief, not supported by any witness or document.  Opp., at 2, 10–11.  Rimini's argument is based on Rimini's representations that files bearing the same filename *must* be identical to the deleted files, and that even files bearing different filenames must also be identical, all of which is based solely on Rimini's counsel's say-so.  No witnesses dared to swear under penalty of perjury that

any of those statements were true.  These bald representations are belied by Rimini's own AFW Records and by common sense, and the Report was clearly erroneous for relying on them.

For example, Rimini used TransferFiles to send ███ files bearing the filename ████████ from a non-customer-specific folder on Rimini's network to ██████ on ██ separate occasions over a period of ███████████. Reply at 3 (citing ECF No. 1363-1, F-C Decl., Ex. 2 ¶¶ 24–25, Exs. 8–9).  Because ███████ did not need ██ copies of an identical file, the only plausible explanation is that the ██ transfers reflected unique versions of the file at various stages of development.  *Id.*  After repeatedly sending the file to ████████ Rimini distributed a *single* version of the file to ██████████████—which indicates that Rimini developed the final widely distributed version through the iterations sent to ██████  *Id.*  Rimini's productions, however, contained only **one** version of the ██████████ file it sent to ███████—not all ██ versions.  *Id.*  Rimini's representation that "[n]o information has been 'lost,'" Opp. at 2, is only a statement in its briefs and is supported by no factual evidence.

Moreover, Rimini has represented to Oracle and the Court that files bearing *different* filenames are identical.  For, example, on December 3, 2019, Rimini's counsel sent Oracle a letter claiming that ██████████████████████████████████████████ ████████████████████████████████████████.  ECF No. 1374-4, Vandevelde Decl., Ex. H (Dec. 3, 2019 Tryck Letter), at 7–8.  Rimini presented an ████████████████████████████ ████████████████████████████████████████████████, without any evidentiary basis.  *See id.*  Rimini represented that ████████████████████████████ ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*See* ECF No. 1374-4, Vandevelde Decl., Ex. H (second to last page).  Rimini's counsel's representation that a ████████████████████████████████████████████████████. There would be no

reason to have second, third, and "Final" versions of this update if each were identical to each other.  Concluding that Rimini could meet its discovery obligations by producing "final" versions of its documents overlooks the fact that the Injunction governs Rimini's *development processes*, and to ensure compliance with the Injunction, Rimini needs to produce versions of documents that show these processes.[10]

*Second*, the authorities relied upon by the Report do not support its conclusion that Rimini had no duty to preserve the files because it sent them to third parties.  Report at 6, 8.  *Adams AV Select Investments, LLC v. Klein* did not address the scope of the party's document preservation duties and involved a situation where a party sought an adverse inference without formally bringing a Rule 37 motion.  2020 WL 2425715, at *5 (D. Del. May 12, 2020).  And *Eshelman v. Puma Biotechnology, Inc.* did not involve copies of files sent to non-parties and instead concerned the automatic deletion of the Internet browsing histories of several of the defendants' own employees.  2017 WL 2483800, at *3–5 (E.D.N.C. June 7, 2017) (concluding that the histories could be recreated through party depositions).  Neither of these cases is similar to the situation here, where absent Rimini's spoliation, Rimini's FTP server would have maintained exact copies of every file sent to 139 customers using TransferFiles.

Further, the idea that Rimini had no duty to preserve the repository—despite failing to preserve the other copies of the files on its systems—because copies of the deleted files *may* still be dispersed across the computer systems of 139 non-parties is an unreasonable preservation standard that would lead to the widespread destruction of documents.  Applying such a standard would allow a party to delete any email sent to or from a non-party, so long as the party keeps a log of the non-parties with which it communicated.  Moreover, because non-parties are not bound by Rule 37's document preservation requirements (as the Report acknowledges), such a standard would lead to the destruction of relevant evidence.  *See* Fed. R. Civ. P. 37(e); *see also*

---

[10] For this reason, the Report's citation to *Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 328 F.R.D. 543, 552–54 (N.D. Cal. 2018) does not support the Report's finding.  There, unlike here, most of the documents at issue pre-dated Oracle's preservation obligations, and Oracle was able to find and produce the documents from other custodians.  *Id.*  Here, by contrast, Rimini ***does not have*** copies of all the files it destroyed.

Report at 8 (acknowledging that Rimini's customers were not required to preserve copies of the spoliated files). Courts correctly have declined to adopt such a standard. *See Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 235–36 (D. Minn. 2019) (imposing spoliation sanctions for deletion of text messages sent to unsubpoenaed non-parties).[11]

Because the Report's conclusion that Rimini had no duty to preserve the spoliated files is based on the clearly erroneous finding that Rimini maintained duplicative copies of the deleted files and the clearly erroneous conclusion that transmittal to third parties obviates Rimini's preservation obligations, it is contrary to law and the Court should decline to adopt it.

### C.    The Spoliated Files Were Not Replaceable

The Report concluded that the ███ files were not "lost" because "Oracle did not attempt to take third-party discovery during the discovery period to replace any of the missing ESI at issue." Report at 8. The Court should decline to adopt this conclusion, which is contrary to law.

Initially, Oracle was not on notice of the need for such third party discovery during the discovery period of *Rimini II*. During that discovery period, Rimini represented that it had both preserved and produced all of the files transferred to customers. It was during discovery of Rimini's compliance with the Injunction that Rimini produced ███ that showed the existence of the deleted files.

Further, during the Injunction discovery period, Oracle was not obligated to conduct unreasonably burdensome and lengthy third-party discovery to try to cure Rimini's spoliation before bringing its motion for sanctions.

Initially, such third-party discovery would have far exceeded the scope of discovery permitted by Judge Ferenbach in these Injunction enforcement proceedings. Rimini vigorously

---

[11] In *Boxhill*, the court noted that Plaintiff likely was unaware that Defendants had communicated with the third parties, 330 F.R.D. at 235, which Oracle concedes is not the case here. However, given the scope of Rimini's spoliation, this is a distinction without a difference because Oracle could not have reasonably reconstructed the deleted files through non-party discovery, and should not have been required to issue 139 Rule 45 subpoenas to recreate a single repository that would exist absent Rimini's Deletion Program. *See infra* at 20.

opposed *any* discovery in this post-Injunction Period, forcing Oracle to seek the Court's leave to take discovery.  ECF No. 1201, Oracle's Feb. 27, 2019 Motion for Limited Discovery. Magistrate Judge Ferenbach granted the motion, but suggested the parties "get the lay of the land without trying to get all the discovery you would possibly need in order to have a contempt hearing, just, you know, do some scouting."  ECF No. 1218, Apr. 4, 2019 Hr'g Tr. at 56:9–15. Rimini then submitted an overly narrow, phased proposed discovery plan.  ECF No. 1231, Joint Status Report.  In its own proposed discovery plan, Oracle sought, among other things, ten third-party subpoenas, five party depositions, and five non-party depositions.  *Id.* at 4.  Magistrate Judge Ferenbach permitted Oracle only five non-party subpoenas and/or depositions, and one 30(b)(6) deposition.  ECF No. 1232, at 2.  Rimini continued to fight this discovery, forcing Oracle to file a motion to compel, ECF No. 1239, which Magistrate Judge Ferenbach granted in part, ECF No. 1255.  And when Oracle sought leave to serve an additional third-party subpoena when one of the customers it originally subpoenaed had not actually received updates from Rimini, Rimini opposed that effort.  ECF No. 1294, Nov. 20, 2019 Hr'g Tr. at 42:21–48:4.  Not only did the Court reject Oracle's request for a sixth subpoena, the Court warned it was unlikely to grant any further discovery, stating that "You can always file a motion. . . . But I guess I can say, since you brought it up, that I'm kind of inclined -- I probably wouldn't grant it anyway even if you filed the motion, I got to tell you, because I feel like you've gotten an awful lot of discovery here. . . . I think we need to wrap it up."  *Id.* at 47:10–48:4.

In any event, Oracle could not have feasibly reconstructed through additional discovery the ███-file repository that Rimini intentionally deleted, even if Magistrate Judge Ferenbach had granted Oracle leave to issue 139 Rule 45 subpoenas.  In *Rimini I,* the average response time for third-party subpoenas was 164 days across the 266 customers that produced documents, and in *Rimini II*, an average of 185 days across the 531 customers that produced documents.  Polito Decl., ¶¶ 2–4.  And there is no guarantee that customers will agree to produce files they received from Rimini:  in *Rimini II*, at least 42 customers that responded to a third-party subpoena produced no documents, at all.  *Id.* ¶ 5.  Considering that Rimini's customers were not obligated

to retain the files Rimini sent them, subpoenaing all 139 customers would have amounted to a massive, time-consuming effort with little to no chance of success.  And even assuming customers still had and actually produced relevant files, Oracle would have then had to attempt to match these thousands of files to Rimini's AFW records.

In the principal case on which the Report relies, *Best Payphones, Inc. v. City of New York*, the situation was very different.  The court held "that Plaintiff ***was*** under a duty to preserve the evidence," and "acted negligently in failing to preserve the evidence."  2016 WL 792396, at *3 (E.D.N.Y. Feb. 26, 2016) (emphasis added).  The court denied the defendant's request for serious remedies (though it granted its request for attorneys' fees) only because the defendant failed to demonstrate prejudice through its failure to conduct "obvious" third-party discovery, which it could have conducted "easily."  *Id.* at *3, *6–7.  And, importantly, the language from *Manufacturing Automation & Software Systems, Inc. v. Hughes*, 2018 WL 2059839, at *7 (C.D. Cal. Apr. 30, 2018), that the Report quotes[12] actually misconstrues the procedural requirements of Rule 37:  Rule 37(**b**) sanctions, which Oracle has not sought, require that the party seeking sanctions first seek an order to compel; Rule 37(**e**) contains no such requirement.[13]

For these reasons, the Court should decline to adopt the Report's conclusion that no files were lost and its clearly erroneous finding that the files could have been feasibly reproduced from Rimini's clients.  Parties are not entitled to violate their document preservation obligations on the grounds that some other non-party may be preserving documents relevant to the litigation. Party-to-party discovery and document preservation by parties to an action are the heart of discovery under the Federal Rules.  The potential for third-party discovery is not a get-out-of-

---

[12] *See* Report at 7 (quoting erroneous language that "the proper procedure with respect to requesting Rule 37(e) sanctions would have been for defendants (1) to file a motion to compel any missing electronically stored information and (2) in the event they could not obtain the missing emails from plaintiff or through a court order, to subpoena missing emails from alternate sources.").  The basis for this erroneous statement in *Hughes* is the court's citation to the steps taken by a party seeking sanctions under Rule 37(**b**) in a prior case.  *See Hughes*, 2018 WL 2059839, at *7, *7 n.6 (discussing the record in *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337 (9th Cir. 1995)).

[13] Magistrate Judge Leen granted Oracle's earlier motion for Rule 37 sanctions in 2013, even though it was brought after fact discovery had closed.  *See generally* ECF No. 307, Oracle's May 30, 2012 Motion for Sanctions; ECF No. 466, Sealed Order.

jail-free card. Rimini was obligated to preserve these documents, and it deliberately chose to destroy them. This Court should grant Oracle's motion for sanctions.

## V.    **CONCLUSION**

Oracle respectfully requests that the Court decline to adopt the Report and Recommendation and grant Oracle's Motion for Rule 37 sanctions.

DATED:  October 5, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: _____
            */s/ John A. Polito*
            John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corporation

## CERTIFICATE OF SERVICE

I certify that on October 5, 2020, I electronically transmitted the foregoing **OBJECTION TO MAGISTRATE JUDGE FERENBACH'S REPORT AND RECOMMENDATION ON ORACLE'S MOTION FOR SANCTIONS PURSUANT TO RULE 37** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel are CM/ECF registrants.

Dated:  October 5, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: _____*/s/ John A. Polito*_____
John A. Polito

Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle International
Corporation