GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

*Attorneys for Defendant*
*Rimini Street, Inc.*

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA  94566
Telephone: 925.264.7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV  89169
Telephone: 336.908.6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone: 702.667.4843
wwa@h2law.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>RIMINI STREET, INC., et al.,<br><br>    Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>**RIMINI'S RESPONSE TO ORACLE'S OBJECTION TO MAGISTRATE JUDGE FERENBACH'S REPORT AND RECOMMENDATION ON ORACLE'S MOTION FOR SANCTIONS PURSUANT TO RULE 37**<br><br>Judge:  Hon. Larry R. Hicks<br><br>**PUBLIC REDACTED VERSION** |

Gibson, Dunn & Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S OBJECTION TO REPORT AND RECOMMENDATION ON
ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 3

    A.   Oracle Received Wide-Ranging Discovery ....................................................... 3

    B.   Rimini's TransferFiles Tool Creates *Additional* Copies of Transferred Files .................................................................................................................. 4

    C.   Rimini Was "Open and Honest" with Oracle Regarding TransferFiles ........... 6

    D.   The Hearing on Oracle's Motion ...................................................................... 9

    E.   Judge Ferenbach's Order Recommending Denial of Oracle's Motion .............. 9

III.  STANDARD OF REVIEW ........................................................................................ 11

IV.   ARGUMENT ............................................................................................................ 11

    A.   Each of Judge Ferenbach's Three, Independent Bases for Denying Oracle's Motion Is Correct and Not "Clearly Erroneous" ............................... 12

        1.   *Judge Ferenbach Correctly Found that the Files Are "Transitory, Intermediate" Files that Rimini Had No Duty to Preserve* ............................................................................................. 12

        2.   *Judge Ferenbach Correctly Concluded that No Data Was "Lost"* ................................................................................................. 16

        3.   *Judge Ferenbach Correctly Found that Rimini "Took Reasonable Steps to Preserve Evidence" and Was "Open and Honest" About TransferFiles* ............................................................ 20

    B.   Oracle's Motion Should Be Denied on Other Grounds that Judge Ferenbach Did Not Need to Reach .................................................................. 21

V.    CONCLUSION ......................................................................................................... 22

Gibson, Dunn & Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3 **Cases**

4 *Adams AV Select Invs., LLC v. Klein*,
2020 WL 2425715 (D. Del. May 12, 2020)........................................................18

5

6 *Anderson v. City of Bessemer City, N.C.*,
470 U.S. 564 (1985)..................................................................................11, 15

7 *Arista Recs. LLC v. Usenet.com, Inc.*,
608 F. Supp. 2d 409 (S.D.N.Y. 2009).........................................................13, 17

8

9 *Best Payphones, Inc. v. City of New York*,
2016 WL 792396 (E.D.N.Y. Feb. 26, 2016)....................................................19

10 *Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) ....................................................................11

11

12 *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602 (1993) .......................................................................................11

13

14 *Convolve, Inc. v. Compaq Comput. Corp.*,
223 F.R.D. 162 (S.D.N.Y. 2004) ....................................................................13

15 *Grimes v. City & Cnty. of San Francisco*,
951 F.2d 236 (9th Cir. 1991)...........................................................................11

16

17 *Hall CA-NV, LLC v. Ladera Dev., LLC*,
2020 WL 1033560 (D. Nev. Mar. 2, 2020)......................................................11

18 *Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*,
497 F. Supp. 2d 627 (E.D. Pa. 2007) ........................................................13, 17

19

20 *Holguin v. AT&T Corp.*,
2018 WL 6843711 (W.D. Tex. Nov. 8, 2018)..................................................21

21 *Jones v. Skolnik*,
2017 WL 3749668 (D. Nev. Aug. 30, 2017) ....................................................11

22

23 *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*,
2016 WL 1105297 (S.D. Fla. Mar. 22, 2016)..................................................16

24 *Mfg. Automation & Software Sys., Inc. v. Hughes*,
2018 WL 2059839 (C.D. Cal. Apr. 30, 2018) .................................................19

25

26 *Newberry v. Cnty. of San Bernardino*,
750 F. App'x 534 (9th Cir. 2018)....................................................................12

27 *Skyline Steel, LLC v. PilePro, LLC*,
101 F. Supp. 3d 394 (S.D.N.Y. 2015).............................................................16

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

*Small v. Univ. Med. Ctr.*,
　　2018 WL 3795238 (D. Nev. Aug. 9, 2018) ........................................................12

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
　　327 F.R.D 96 (E.D. Va. 2018) ........................................................16

**Rules**

Fed. R. Civ. P. 37(e) ........................................................12, 13, 16, 19, 20

Fed. R. Civ. P. 37(e)(1) ........................................................12, 21

Fed. R. Civ. P. 37(e)(2) ........................................................12, 20, 22

Fed. R. Civ. P. 72(a) ........................................................11

**Other Authorities**

*The Sedona Principles, Third Edition: Best Practices, Recommendations &*
*Principles for Addressing Electronic Document Production,*
　　19 Sedona Conf. J. 1 (2018) ........................................................13, 17, 18

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.  INTRODUCTION

Magistrate Judge Ferenbach entertained multiple rounds of briefing (including three briefs from Oracle), held a lengthy hearing, and issued a detailed Report and Recommendation on Oracle's Motion for Rule 37 Sanctions, making careful factual findings based on the extensive record evidence.  He found that Rimini "took reasonable steps to preserve evidence," that there is "no evidence that Rimini engaged in bad faith," and that Rimini "has been open and honest with Oracle regarding its TransferFiles subprogram for many years."  ECF No. 1431 ("R&R") at 8–9.  He recommended denying Oracle's motion for sanctions on three independently sufficient grounds.  In its objections, Oracle simply ignores Judge Ferenbach's considered analysis of this discovery dispute, and continues to press the same false narrative that Judge Ferenbach found inconsistent with the record evidence.  Judge Ferenbach's factual findings were not clearly erroneous, nothing in his report is "contrary to law," and accordingly Oracle's motion should be denied.

Oracle's motion was based on Rimini's use of "TransferFiles," a program that actually *creates copies* of Rimini-created documentation, notes, programs, and similar files that do not contain Oracle intellectual property.  When a Rimini engineer uses TransferFiles to transmit such a file to a client, it creates a new copy on the client's system while *retaining the original file*.  To effectuate the transfer, 



Oracle objected only to Rimini's alleged failure to preserve the transitory ███████ copy (which typically exists for a matter of seconds)—even though the result of the TransferFiles

Gibson, Dunn &
Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S OBJECTION TO REPORT AND RECOMMENDATION ON
ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

process is (at least) two identical copies of a file where only one previously existed.   No information has been lost.

Even though Oracle filed its motion in 2020, TransferFiles itself is far from new.  Oracle has known exactly how it works for at least *five years*—since at least 2015, when Rimini produced the TransferFiles source code to Oracle, and Oracle's experts analyzed the tool in detail.   Three years later, in December 2018, Rimini also explained to Oracle exactly how TransferFiles worked—including explicitly noting that the temporary, intermediate copies █████ █████████████████████████████████████████████████████████████████████ ██████████████████—and invited Oracle to discuss the matter.  Oracle stayed silent for more than eight months.   Then, in August 2019, Oracle claimed for the first time that the temporary, intermediate files that it had known about for several years needed to be preserved, and that Rimini was allegedly "spoliating" evidence by not preserving them.   Even though Rimini strongly disagreed, Rimini, in good faith, modified the TransferFiles source code within a few weeks so that the intermediate copies are permanently stored in an archival folder.   It also undertook a time-consuming manual process to search for and produce from its systems copies of the unique files that Oracle identified as having been transferred using TransferFiles.   Oracle raised no issue at the time, and again stayed silent for another eight months.   Then, in July 2020, long after post-injunction discovery closed—Oracle filed its motion for Rule 37 sanctions.

Judge Ferenbach reviewed this history and rejected Oracle's arguments on three independent factual grounds:   *First*, Judge Ferenbach ruled that the copies on the FTP server, which last for mere seconds, were "transitory, intermediate files" for which there was no duty to preserve.   He analogized them to text on a computer "clipboard" when a user uses a copy-and-paste function in a word processing program.   R&R at 7–8.   *Second*, Judge Ferenbach ruled that Oracle failed to show that any electronically stored information ("ESI") had been "lost" within the meaning of Rule 37 because "Oracle could have sought the missing documents from alternate sources" (including by seeking the duplicate copy created on client systems), but simply chose not to during the discovery period.   *Id.* at 8.   The Court also aptly noted that the "timing of Oracle's motion," which was filed "long after the close of discovery," undercut

2

Gibson, Dunn &
Crutcher LLP

RIMINI'S RESPONSE TO ORACLE'S OBJECTION TO REPORT AND RECOMMENDATION ON
ORACLE'S MOTION FOR RULE 37 SANCTIONS
CASE NO. 2:10-CV-00106-LRH-VCF

1  Oracle's argument that ESI had been "lost."  *Id.  Third*, Judge Ferenbach found that "Rimini
2  took reasonable steps to preserve evidence" and there was "no evidence that Rimini engaged in
3  bad faith[,] as it had been open and honest with Oracle regarding its TransferFiles subprogram
4  for many years and it changed the program as soon as Oracle raised the issue."  *Id.* at 8–9.

5       There is no basis for this Court to second-guess the factual findings that Judge
6  Ferenbach reached based on his careful consideration of the parties' briefing, detailed
7  evidentiary record, and lengthy oral argument.  The Court should overrule Oracle's objections.

8                                **II.  BACKGROUND**

9       Oracle's statement of alleged "facts" ignores Judge Ferenbach's findings of fact,
10  including how Rimini's TransferFiles tool actually works, Rimini's transparency with Oracle
11  regarding the tool, Oracle's years-long silence, Rimini's good-faith accommodations, and the
12  fact that no evidence was actually lost.  The true facts, summarized below, are also presented
13  in a demonstrative exhibit (ECF No. 1423), which Judge Ferenbach and the parties discussed
14  during the hearing on Oracle's motion.  Rimini attaches it as Exhibit A to this response for the
15  Court's convenience.  *See* Ex. A (ECF No. 1423) ("Demo. Exh.").

16  **A.    Oracle Received Wide-Ranging Discovery**

17       Oracle's baseless accusations of discovery misconduct must be appreciated within the
18  context of the decade of litigation in which Oracle has received more discovery than probably
19  any other litigant in the history of civil litigation in this District.  *See generally* ECF No. 1374-
20  3 ("Tryck Decl.").  Since the filing of *Rimini II* in 2014, Rimini made over 150 productions of
21  more than 10 million documents (*40 million pages*), over 4.2 terabytes of data, and massive
22  data exports from its internal network drives and support ticketing system.  *Id.* ¶¶ 2–11.  Rimini
23  also produced the source code to its proprietary AFW software tools, including TransferFiles.
24  *Id.* ¶ 9.  In addition, Rimini provided Oracle with unprecedented live access to its software
25  development management platforms—which Rimini uses to track fixes and updates for its
26  clients—which allowed Oracle's lawyers and experts to monitor Rimini's development in real
27  time.  *Id.* ¶ 12.  Oracle has virtually lived *inside* Rimini's computer systems for the past 10
28  years.

That discovery has continued post-injunction, wherein Rimini produced nearly 1 million additional documents, and again produced its source code and data exports, among other things. *Id.* ¶¶ 35–38.  Both Judge Hoffman and Judge Ferenbach commended Rimini for its cooperation and good faith participation in the face of an unprecedented discovery burden.  *See* ECF No. 1280 at 19:6; *Rimini II*, ECF No. 1119-2 at 102:8–18.

**B.  Rimini's TransferFiles Tool Creates *Additional* Copies of Transferred Files**

Oracle's Rule 37 motion challenged Rimini's use of TransferFiles, a tool within Rimini's AFW program, which Rimini uses to copy files from Rimini's system to a client's environment located remotely on a client's systems.  ECF No. 1374-1 ("Astrachan Rpt.") ¶ 333. Rimini uses this tool to transfer files that do not contain any Oracle intellectual property, such as ███████████████████████████████████████████████ ██████████████████████████████.  ECF No. 1374-2 ("Frank Decl.") ¶¶ 4, 6. TransferFiles was developed in 2013—seven years ago—and was included in the very first version of AFW, released in December of that year.  *Id.* ¶¶ 4, 12.  It has worked the same way since its inception.  *Id.* ¶¶ 4–10, 12.

TransferFiles works as follows:  ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████.  Frank Decl. ¶ 8; Astrachan Rpt. ¶¶ 334–35. ████████████████████████████ ████████████████████████████████████████████████████████████ ██████ :



Frank Decl. ¶ 4; Astrachan Rpt. ¶ 333.  At the end of the process, ***the original copy of the file on Rimini's system is retained, and there is an additional, duplicate copy of the file on the***

4

Gibson, Dunn &
Crutcher LLP

1    *client's system.*  Frank Decl. ¶ 10; Astrachan Rpt. ¶ 334.

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████.  Frank Decl.

5    ¶ 8; Astrachan Rpt. ¶ 335. ████████████████████████████████

6    ████████████████████████████████████:

7
8
9
10

11   Astrachan Rpt.  ¶ 335. ████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ███████████████████:

15
16
17
18

19   *Id.* ¶ 337. ████████████████████████████████████████████

     ███████████  *See* Frank Decl. ¶ 9; Astrachan Rpt. ¶ 336.  TransferFiles does not modify or

20   remove the original copy of the file on Rimini's system.  The net result is to *create* an additional

21   copy on the client's system (while retaining the one on Rimini's system), as even Oracle's own

22   expert admitted.  *See* ECF No. 1363-2 ¶ 385 (Oracle's Expert: "[A]fter a successful … transfer,

23   *two copies of the original file exist*, the original file itself and the new copy on the destination

24   system.") (emphasis added).   The purpose of an FTP (File *Transfer* Protocol) server is to

25   facilitate the *transfer* of files, not to store them.

26           As Judge Ferenbach explained, TransferFiles is similar to a copy-and-paste function in

27   a "word processing application."  R&R at 7.  When a user copies and pastes material from one

28

Gibson, Dunn &
Crutcher LLP

document to another, a transitory copy is created temporarily on a computer's "clipboard" to facilitate the copying, but it is not stored permanently. *Id.*  Similarly here, to facilitate a copy from Rimini to the client, TransferFiles generates a temporary, transitory copy of a file in an FTP folder. *Id.* at 7.  And just as with the copy-and-paste functionality in a word processing program, TransferFiles does not modify or remove the original copy of the file—it preserves the original and creates a duplicate.

Contrary to Oracle's assertions, there is no "Deletion Program" that ███████████ ███████████████████████████████████████████ ECF No. 1436 ("Obj.") at 4 (citing ECF No. 1363-2 ¶¶ 387–88). ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Astrachan Rpt. ¶ 338; Frank Decl. ¶¶ 8, 12.  As explained above, ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Frank Decl. ¶ 12.  Oracle's suggestion that there exists a separate "Deletion Program" that Rimini implemented to avoid its discovery obligations in this injunction-compliance proceeding is patently false, and Judge Ferenbach rejected it. ████████████████████████████████████████████ *Id.* ¶ 13; Astrachan Rpt. ¶ 347; *see also* ECF No. 1363-2 ¶ 134. ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ ECF No. 1360-1 ¶¶ 131–32; *see also* Astrachan Rpt. ¶ 347. These records were produced to Oracle both in *Rimini II* and in this proceeding.  Tryck Decl. ¶¶ 10, 37; ECF No. 1374-8.

**C.**    **Rimini Was "Open and Honest" with Oracle Regarding TransferFiles**

As Judge Ferenbach found, "Rimini … had been open and honest with Oracle regarding its TransferFiles subprogram for many years."  R&R at 8.  Oracle knew how TransferFiles worked more than four years before it filed its "spoliation" motion.  Rimini produced the TransferFiles source code to Oracle in the *Rimini II* litigation starting in 2015, and continued to produce every new version of the source code throughout this proceeding.  *See* Demo. Exh.

#1.4 (citing ECF No. 1372-6); Tryck Decl. ¶ 9.  Oracle's own expert in *Rimini II* confirmed in June 2017 that he had reviewed the source code and understood how it worked.  *Rimini II*, ECF No. 515 ¶ 5; Demo. Exh. #1.5.  Indeed, that expert submitted an 83-page report in May 2018 regarding his review of the source code and operation of AFW tools, including TransferFiles specifically.  ECF No. 1374-4 ¶ 11.

In December 2018, in response to inquiries from Oracle, Rimini also explained in a plain and straightforward manner how TransferFiles works:



ECF No. 1363-19; Demo. Exh. #1.8.  Rimini offered to "discuss further" if Oracle had any concerns or questions, but Oracle did not engage with Rimini.  ECF No. 1363-19.

It was not until nearly eight months later, on August 21, 2019, that Oracle asserted for the first time that it believed that the TransferFiles tool—for which Oracle had the source code since 2015, which its experts analyzed in 2017, and which Rimini explained in 2018—resulted in the "spoliation" of evidence.  ECF No. 1363-23 at 1; Demo. Exh. ##1.9–1.10.

Rimini promptly met and conferred with Oracle and explained why its concerns were unfounded.  *See*, *e.g.*, ECF No. 1363-27 at 1.  Oracle provided Rimini with a list of 466 files that Oracle believed, based on Rimini's produced AFW records, had been transferred to clients using TransferFiles during the post-injunction discovery period, and which it contended Rimini had not produced.  ECF No. 1374-6.  To resolve the issue in good faith, Rimini undertook a time-consuming, manual process to search for and produce a copy of each of the 466 unique files that Oracle identified.  *See* ECF No. 1363-24 at 1.  Rimini was able to locate 99% (*i.e.*, 460 out of 466) of these files, which it produced to Oracle.  ECF No. 1374-10 at 8; ECF No. 1374-9; Demo Exh. ## 1.13–1.17.  Of the six files that Rimini could not locate on its systems— which include clearly irrelevant files like "sample.txt" and a publicly available Georgia tax

1   form—Rimini explained to Oracle that they were not necessarily deleted, and instead ███

2   ███████████████████   ECF No. 1374-10 at 8.[1]

3      In addition, in September 2019, shortly after Oracle raised this alleged "spoliation"

4   issue, Rimini voluntarily revised the TransferFiles tool ████████████████████████

5   ████████████████████████████████████████████████.  *See* ECF

6   No. 1363-24 at 1; Frank Decl. ¶ 14; ECF No. 1374-7; Demo. Exh. #1.12.  Rimini had no

7   obligation to modify TransferFiles—and indeed, there is no business purpose to saving a third

8   duplicative copy of transferred files.  *See* Frank Decl. ¶ 11.  Rimini did so only at Oracle's

9   request, first made in late August 2019.  *See* ECF No. 1363-23.  Judge Ferenbach recognized

10   these facts, finding that "[t]here is also no evidence that Rimini engaged in bad faith as … it

11   changed the program as soon as Oracle raised the issue."  R&R at 8.

12      Rimini produced to Oracle these extra intermediate copies from the newly created

13   archive from September 17, 2019, through the document discovery cutoff in November 2019,

14   even though they were duplicative.  Tryck Decl. ¶ 10; ECF Nos. 1372-10, 1372-14; Demo. Exh.

15   #1.13.  Of the 10,834 files produced from this archive, Oracle cited only one that was not a

16   duplicate of an original file that Rimini would have produced even if Rimini had never modified

17   the way in which TransferFiles works.  Demo. Exh. #1.14.

18      Oracle then did nothing for months, not sending Rimini any further correspondence, not

19   seeking to meet and confer further, not moving to compel, and not seeking permission to

20   subpoena copies of the files residing on client environments.  As Judge Ferenbach noted, Oracle

---

[1]  Oracle's Objections repeatedly claim that "more than ███ files" are at issue (Obj. at 6, 10, 13, 15, 16, 19, 20), but that statistic wildly exaggerates the actual number because Oracle counts exact duplicates.  For example, ███████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████  (*see, e.g.,* ECF No. 1360-1 ¶ 132; ECF No. 1360-2 ¶ 24) ████████████████████  Oracle's own discovery correspondence made clear that Oracle was seeking 466—not ███—files.  *See* Demo. Exh. #1.15; ECF No. 1374-6 at 5.  Rimini produced 460 (99%) of those files to Oracle, and Oracle has made no issue about the remaining 6.  Judge Ferenbach ultimately ruled that "the number of missing documents [was] irrelevant to []his analysis."  R&R at 7.

8

Gibson, Dunn &
Crutcher LLP

"instead … waited eight months after its last correspondence with Rimini on this issue to file its motion for spoliation."  R&R at 4.

**D.     The Hearing on Oracle's Motion**

Judge Ferenbach held a 77-minute hearing on September 3, 2020.  ECF No. 1425.  One of the issues the Court addressed related to Oracle's claim that information had been "lost."  In particular, because it was undisputed that TransferFiles creates a duplicate copy of any transferred file on the client's system, Judge Ferenbach asked whether "re-opening limited discovery could solve the issue of whether the files can be restored or replaced."  ECF No. 1420 at 3.  Although Rimini's counsel "offered to facilitate in helping Oracle seek additional discovery from its own clients" (R&R at 8–9; ECF No. 1433 at 58:24–59:11), Oracle responded with a "blanket rejection of the Court's (reluctant) invitation regarding potentially re-opening discovery on this issue."  R&R at 8; ECF No. 1433 at 7:25–8:2.  Oracle refused the opportunity to conduct potentially curative discovery (to the extent there was anything to cure) ostensibly due to "delay" in clients producing documents, but as Judge Ferenbach noted, Oracle's concerns of delay were inconsistent with the fact that "it waited eight months from its last correspondence with Rimini regarding this issue to file the instant motion."  R&R at 8.

After the hearing, Judge Ferenbach considered further briefing in the form of Oracle's objections to a Rimini demonstrative used at the hearing, and Rimini's response.  *See* ECF Nos. 1423, 1428, 1430.

**E.     Judge Ferenbach's Order Recommending Denial of Oracle's Motion**

On September 21, 2020, Judge Ferenbach issued his ruling, which recommended denying Oracle's motion on multiple independent grounds, each of which were supported by detailed factual findings:

***First,*** Judge Ferenbach found that "the missing files are mere transitory, intermediate files," and "Rimini did not have an obligation to preserve each instance of relevant electronically stored information," particularly where "the transitory files were duplicative of the files that already existed on Rimini's (and the client's) systems."  R&R at 7–8.  He concluded that "Rimini's analogy, that the missing files are mere transitory, intermediate files

9

1   (like the transitory copy of words on the clipboard in a word processing application when a user

2   copies/pastes from one document to another) is a credible and good-faith explanation regarding

3   how Rimini's engineers use TransferFiles to transmit files to a client, and how it creates a new

4   copy on the client's system while retaining Rimini's original file." *Id.* at 7.

5       **Second,** Judge Ferenbach concluded that "[e]ven assuming *arguendo* … that the

6   missing ESI is more akin to deleted emails" (as Oracle argued), Oracle's request for sanctions

7   "would still fail because Rimini has not lost any ESI pursuant to the plain language of Rule

8   37(e)." *Id.* at 8. In particular, he found that "there is a reliable list of clients that Oracle could

9   have subpoenaed during the discovery period," such that the information was "available from

10   another source" and "exist[ed] in multiple locations." *Id.* He was troubled that "Oracle did not

11   attempt to take third-party discovery during the discovery period to replace any of the missing

12   ESI at issue." *Id.* And he found that Oracle's argument that ESI was "lost" was undermined

13   by "[t]he timing of Oracle's motion (which he found was filed "long after the close of

14   discovery" and "eight months from its last correspondence with Rimini regarding this issue")

15   as well as Oracle's "blanket rejection" of the Court's "invitation regarding potentially re-

16   opening discovery" to "test its theory or cure the issue." *Id.* at 8–9. Moreover, although he

17   recognized that there is "never any guarantee" that the files would still exist on a third party's

18   systems, Judge Ferenbach nonetheless found that "[i]f a copy existed in another location, this

19   would have cured the issue," and noted that Oracle refused the Court's invitation to search. *Id.*

20   at 8.

21       **Third,** Judge Ferenbach held Oracle was not entitled to spoliation sanctions because

22   "Rimini took reasonable steps to preserve evidence." *Id.* at 9. In particular, he noted the

23   "duplicates [Rimini] maintained on its systems and produced to Oracle." *Id.* Judge Ferenbach

24   observed that there "is also no evidence that Rimini engaged in bad faith as it had been open

25   and honest with Oracle regarding its TransferFiles subprogram for many years and it changed

26   the program as soon as Oracle raised the issue." *Id.* at 8.

27       Thus, because "Rimini did not have an obligation to preserve the transitory ESI at issue

28   here," because "Oracle has not shown that any ESI was lost within the meaning of Rule 37,"

Gibson, Dunn &
Crutcher LLP

1    and because "Rimini took reasonable steps to preserve evidence," Judge Ferenbach

2    "recommend[ed] denying Oracle's motion." *Id.* at 9.

## III.  STANDARD OF REVIEW

4            A magistrate judge's order on a non-dispositive pre-trial matter "generally operates as

5    a final determination." *Jones v. Skolnik*, 2017 WL 3749668, at *2 (D. Nev. Aug. 30, 2017)

6    (Hicks, J).   However, "[a] district judge may reconsider any pretrial matter referred to a

7    magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the

8    magistrate judge's order is clearly erroneous or contrary to law."  LR IB 3-1(a); *see also* Fed.

9    R. Civ. P. 72(a).  A "magistrate judge's order will be reversed only if the magistrate judge

10   abused her broad discretion." *Jones*, 2017 WL 3749668, at *2 (citing *Columbia Pictures, Inc.*

11   *v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007)).  An order is "clearly erroneous" only if "the

12   reviewing [court] on the entire evidence is left with the definite and firm conviction that a

13   mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers*

14   *Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993).  This standard is highly deferential, and "[t]he

15   reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes*

16   *v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).  This Court will therefore

17   "not second guess" a magistrate judge's factual findings (ECF No. 1432 at 7), and even where

18   there are "'two permissible views of the evidence,'" the magistrate judge's "'choice between

19   them *cannot* be clearly erroneous.'" *Hall CA-NV, LLC v. Ladera Dev., LLC*, 2020 WL

20   1033560, at *2 (D. Nev. Mar. 2, 2020) (quoting *Anderson v. City of Bessemer City, N.C.*, 470

21   U.S. 564, 574 (1985)).

## IV.  ARGUMENT

23           Oracle's objections to Judge Ferenbach's order should be overruled.   Oracle has not

24   demonstrated that Judge Ferenbach committed clear error in making detailed factual findings

25   about TransferFiles and the discovery record.   Judge Ferenbach's three holdings—each of

26   which independently supports denying Oracle's motion—reflect a proper application of the law

27   to the facts.  Furthermore, Judge Ferenbach was correct to deny Oracle's motion for additional

28

Gibson, Dunn &
Crutcher LLP

reasons that he did not need to reach, namely, that Oracle had not established prejudice, and had in fact *declined* all allowable remedies.

## A.   Each of Judge Ferenbach's Three, Independent Bases for Denying Oracle's Motion Is Correct and Not "Clearly Erroneous"

Rule 37(e) provides the sole basis for sanctions involving electronically stored information ("ESI"). *Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018). "The days of imposing severe, punitive sanctions for loss of ESI that can be restored or replaced by other discovery, especially ESI that is marginally relevant or duplicative of information from other sources should be over." *Small v. Univ. Med. Ctr.*, 2018 WL 3795238, at *69 (D. Nev. Aug. 9, 2018). Thus, under Rule 37(e), a court may impose sanctions *only if* the moving party proves, among other things, that (1) there was ESI "that should have been preserved"; (2) such ESI was "lost" and cannot "be restored or replaced through additional discovery"; and (3) the party "failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). If the moving party proves each of these elements, "the court … upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The most serious sanctions, such as an adverse inference instruction (which is the only remedy Oracle sought, to the exclusion of all others), are available "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

Judge Ferenbach denied Oracle's motion for three reasons: *First*, because the files at issue were transitory, intermediate files, Rimini had no duty to preserve them. *Second*, Oracle failed to show that any ESI was "lost," particularly given the fact that Oracle refused to pursue copies of the files on clients' systems. *Third*, Rimini took reasonable steps to preserve any ESI. The Report and Recommendation should be adopted on all of these bases, but any one is independently sufficient.

### 1.   *Judge Ferenbach Correctly Found that the Files Are "Transitory, Intermediate" Files that Rimini Had No Duty to Preserve*

The Court should overrule Oracle's objections because Oracle has not shown that the transitory, intermediate files at issue "should have been preserved in the anticipation or conduct

12

Gibson, Dunn & Crutcher LLP

of litigation." Fed. R. Civ. P. 37(e). As Judge Ferenbach concluded, because "the missing files are transitory copies," Rimini "did not have an obligation to preserve each instance of" those transitory files. R&R at 7–8. It is well-established that "[p]arties are not required to 'preserve each instance of relevant electronically stored information' [because] '[m]any copies of the same ESI may exist,' [and] 'ESI is constantly being cached, rewritten, moved and copied.'" *Id.* at 6 (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 112 (2018)). Consistent with these principles, courts have routinely held that there is no obligation to preserve similar temporary, transient ESI.[2]

Oracle's primary argument is that Judge Ferenbach's factual finding that the files at issue "were 'mere transitory, intermediate files'" was clearly erroneous. Obj. at 13 (quoting R&R at 7–8). There is no basis for this objection, for Judge Ferenbach's factual finding is correct and amply supported by the record. As explained in the expert report of Professor Owen Astrachan and a declaration from the lead designer of the TransferFiles program, TransferFiles is a *copying* program that *creates* additional copies of Rimini-created or other non-Oracle files on client environments. Frank Decl. ¶ 8; Astrachan Rpt. ¶ 335. Indeed, Oracle's own expert acknowledged this fact. ECF No. 1363-2 ¶ 385 (Oracle's expert: "[A]fter a successful FTP transfer, two copies of the original file exist, the original file itself and the new copy on the destination system."). Specifically, a user operates TransferFiles by ███████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████. Frank

---

[2] *See*, *e.g.*, *Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 640–42 (E.D. Pa. 2007) (no duty to preserve temporary screenshot cache files that were printed to hard copy where defendant did not know the files "would be sought"); *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 431 (S.D.N.Y. 2009) (file sharing network operator had no duty to preserve usage logs and files contained on its servers, which were "transitory" and took "additional steps to retrieve and store," until operator was "on notice" that plaintiff considered files to be "relevant" and "were requesting [them]"); *Convolve, Inc. v. Compaq Comput. Corp.*, 223 F.R.D. 162, 177 (S.D.N.Y. 2004) (no duty to preserve intermediate data on measurement device, where the intermediate data served no business purpose).

Gibson, Dunn &
Crutcher LLP

Decl. ¶ 8; Astrachan Rpt. ¶¶ 334–35.  The entire process normally takes a matter of seconds, with the end result being that at least two copies of the transferred file exist (*i.e.*, the copy on the client's system, and the original copy on Rimini's system) where only one previously existed.  Frank Decl. ¶ 4; Astrachan Rpt. ¶ 333.  Oracle has not addressed any of these facts or explained how Judge Ferenbach's factual finding is clearly erroneous in light of this factual record.

Oracle objects to Judge Ferenbach's finding because it contends that "files distributed using FTP technology remain on an FTP server indefinitely unless and until they are affirmatively deleted," such that they are more "akin to emails stored in the 'sent' folder of an email account." Obj. at 13–14.  Judge Ferenbach considered this argument (which Oracle made three times) and expressly rejected it.  R&R at 7–8.  Most importantly, Oracle's argument ignores that the intermediate FTP files are incidental to the transfer.  They last for a matter of seconds for the sole purpose of facilitating a transfer to a client environment.  The original and the newly created duplicate are both preserved.  Indeed, Judge Ferenbach made the factual determination that TransferFiles is more analogous to a copy-and-paste function than it is to email.  *Id.* at 7. ("I conclude that Rimini's analogy, that the missing files are mere transitory, intermediate files … like the transitory copy of words on the clipboard in a word processing application … [,] is a credible and good-faith explanation regarding how Rimini's engineers use TransferFiles to transmit files to a client.").  Moreover, Oracle's email analogy is inapposite because under the TransferFiles system both the original copy (which Oracle analogizes to a sent email) and the client's system copy (which Oracle analogizes to the received email) *are preserved*.  The TransferFiles tool is thus nothing like creating a program that would delete repositories of sent email.

At most, Oracle's argument is an alternative factual characterization about whether the evidence regarding TransferFiles was more like a copy-and-paste feature's "clipboard" (as Rimini argued) or emails in a "Sent" folder (as Oracle argued).  As Judge Ferenbach observed, these are essentially "dueling analogies regarding the missing ESI." *Id.*  Deciding which analogy was more appropriate in light of the evidence is a purely factual determination that is

14

Gibson, Dunn &
Crutcher LLP

appropriately left to his discretion.  In the words of the Supreme Court, an argument based on an alternative "view[] of the evidence" is not a basis to overturn a "factfinder's choice between [it]," which "*cannot* be clearly erroneous" *even if* the alternative interpretation of the evidence is "permissible."  *Anderson*, 470 U.S. at 574 (emphasis added).  In short, there is nothing clearly erroneous about Judge Ferenbach's factual finding that the files at issue were "transitory, intermediate files."

In the alternative, Oracle argues that "[r]egardless of whether they were 'transitory,'" Rimini nonetheless had a duty to preserve these files because supposedly "[p]arties are duty-bound to preserve even the most temporary and transitory of files once they are put on notice of their relevance."  Obj. at 15.  In support, Oracle cites to a request for production that it served in September 2017 for "'[a]ll documents … concerning Rimini's use of any file-sharing, FTP or similar servers,' as well as copies of the fixes, patches, and updates Rimini distributed to customers via FTP."  *Id.* at 16 (quoting ECF No. 1361, Ex. E).

Oracle's argument is belied by the record and Judge Ferenbach's factual findings.  In particular, Rimini was *not* "on notice of the[] relevance" of the intermediate, transitory TransferFiles copies.  To the contrary, as Judge Ferenbach found, Rimini had been "open and honest with Oracle regarding its TransferFiles subprogram for many years."  R&R at 8.  If anything, Rimini had *no* reason to believe that the temporary TransferFiles copies would be sought by Oracle—and indeed, had reason to think the opposite.  Rimini had already produced the TransferFiles source code to Oracle, told Oracle how it worked, and invited Oracle to discuss if it had any concerns.  *See* Demo. Exh. ##1.4, 1.8.  Having heard nothing more from Oracle, and recognizing that the intermediate files are duplicates, the most reasonable inference was that Oracle had no objection to the TransferFiles process.  Rimini's understanding was further corroborated because two years earlier (in August 2017), Oracle had acknowledged that Rimini's production of a single copy of each transferred file, along with a list of the clients that received each file, would be a "fair and proportional way for Rimini to satisfy its discovery obligations."  ECF No. 1374-5 at 6.  And when Oracle did finally make it clear that it wanted Rimini to preserve additional duplicates of the intermediate files in August 2019, Judge

Gibson, Dunn &
Crutcher LLP

Ferenbach recognized that Rimini "changed the program as soon as Oracle raised the issue." R&R at 8. Within a month, Rimini had modified the TransferFiles tool, tested it, and deployed it. *See* Demo. Exh. #1.12; *see also* ECF No. 1374-9.

This history shows that Rimini discharged its preservation and discovery obligations reasonably and responsibly. Judge Ferenbach's factual findings—that Rimini had been "open and honest with Oracle" about TransferFiles "for many years," and that Rimini "changed the program as soon as Oracle raised the issue"—are entitled to substantial deference and there is no reason to disturb them. R&R at 8.[3]

### 2.    *Judge Ferenbach Correctly Concluded that No Data Was "Lost"*

Judge Ferenbach also properly denied Oracle's motion because "Rimini has not lost any ESI pursuant to the plain language of Rule 37(e)." R&R at 8. As noted in his order, "there is a reliable list of clients that Oracle could have subpoenaed during the discovery period" to "replace any of the missing ESI at issue," and "ESI is not lost if it is available from another source or if it exists in multiple locations." *Id.* (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment); *see Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, at *6 (S.D. Fla. Mar. 22, 2016) (no loss of ESI where ESI could be produced from other source); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D 96, 107 (E.D. Va. 2018) (ESI is "not 'lost' in any sense of the word" when it is "attainable … [from another] copy"). In particular, Judge Ferenbach found that the intermediate, transitory TransferFiles files were duplicative of files that were available from at least two other sources—namely, Rimini's system and the customer's system. R&R at 8. Both findings are amply supported by the record.

---

[3]  Indeed, the leading case cited by Oracle emphasizes that whether a party was on notice of a duty to preserve temporary ESI is a highly fact-intensive issue. In *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 409 (S.D.N.Y. 2015) (cited in Obj. at 15), whether the "deletion" of ESI constituted spoliation depended on whether it was more like a systematic deletion of logs after one week (which should be preserved), or the deletion of "temporary cache files" during the course of a normal computer operation (which need not be preserved absent notice of their relevance).

16

Gibson, Dunn & Crutcher LLP

a.   Rimini Produced All But Six of the "Missing" Files (None of Which Is Material)

First, Judge Ferenbach's conclusion that no ESI was "lost" is well supported by the record, which demonstrates that Rimini produced to Oracle its copy of 99%—*i.e.*, all but six—of the files that were transferred.  Demo. Exh. ##1.16, 1.17.  (Oracle has never contended that the six that could not be located, including a file named "sample.txt," are material.)   As explained above, the net result of running TransferFiles is that the original file on Rimini's system is preserved and a duplicate copy is *created* on a client's system, and thus the files exist in both places.  *See* Frank Decl. ¶ 8; Astrachan Rpt. ¶ 335; Demo. Exh. #1.6.  If Oracle wished for Rimini to create an archive of duplicate files that would be frozen in place (so that they would not be subsequently moved, renamed, or modified) it was incumbent on Oracle to say so.  *See Sedona Principles*, 19 Sedona Conf. J. at 111 ("A party's preservation obligation does not require 'freezing' of all ESI."); ECF No. 1374 at 18; *see also Healthcare Advocs.*, 497 F. Supp. 2d at 640–42 (no duty to preserve temporary cache files if defendant did not know the files "would be sought"); *Arista Recs.*, 608 F. Supp. 2d at 431 (no duty to preserve logs until "on notice" that plaintiffs considered files to be "relevant" and "were requesting [them]").  But Oracle said nothing until August 2019.

Oracle first argues (as it did to Judge Ferenbach) that there was supposedly no evidence that the intermediate FTP files were duplicative of other copies (Obj. at 16), but that is false. Rimini submitted multiple declarations explaining how TransferFiles creates duplicate copies but does not alter the original.  *See* Demo. Exh. #1.6; Frank Decl. ¶ 10; Astrachan Rpt. ¶ 334; *see also* ECF No. 1363-2 ¶ 385.  Rimini also sent Oracle spreadsheets matching each allegedly "missing" file to a copy of the current version of that file on Rimini's system.  *See* ECF No. 1374-10.

Oracle next argues (as it did to Judge Ferenbach) that the files that Rimini produced "were not duplicative" of the files that had been transferred through TransferFiles because some files might have changed locations on Rimini's systems or been renamed or modified after they had been transferred through TransferFiles (Obj. at 16), but this is not evidence of spoliation.

17

Gibson, Dunn &
Crutcher LLP

As the Sedona Principles recognize, modern "[c]omputer systems manage data dynamically" and "ESI is constantly being … moved." *Sedona Principles*, 19 Sedona Conf. J. at 112.  There is no obligation to maintain a copy of a file in a specific location when that information is already maintained elsewhere, and renaming or reorganizing files is not spoliation.  *See Adams AV Select Invs., LLC v. Klein*, 2020 WL 2425715, at *5 (D. Del. May 12, 2020).  No evidence was presented that any of the copies on Rimini's systems were *deleted*, as opposed to moved.

           b.    <u>Oracle Did Not Attempt to Replace Any of the "Missing" ESI from Third Parties</u>

        Second, Judge Ferenbach found that Oracle did not establish that ESI was "lost" because copies likely resided on the client systems.  R&R at 8.  As he explained, even if there was "'no guarantee' that Rimini's clients would have unaltered versions" of the files at issue, Oracle could have sought the transferred files from the clients' systems "during the discovery period," which would have allowed it "to compare customer copies of the files received from Rimini with those produced by Rimini in discovery."  *Id.*  Oracle claims it did not pursue third-party discovery during the discovery period because it speculates that it would have taken a long time for third parties to respond and because "there is no guarantee that customers will agree to produce files they received from Rimini."  Obj. at 20–21.  Oracle's excuse is not reasonable, and Judge Ferenbach properly rejected it.  As Judge Ferenbach noted, Oracle's concerns of delay were inconsistent with the fact that Oracle "waited almost eight months from its last correspondence with Rimini regarding this issue to file [its] motion."  R&R at 8; *see* also Demo. Exh. #1.17; ECF No. 1374-10.[4]  Judge Ferenbach's conclusion about the management of discovery is squarely within his purview and his judgment is entitled to substantial deference.

---

[4]  Oracle claims that third-party discovery would have been futile because third parties took an average of 185 days to respond to the subpoenas it issued in *Rimini II*.  Obj. at 20.  But even if true, that is less than the eight months that Oracle waited before filing its motion for Rule 37 sanctions.  Moreover, the subpoenas in *Rimini II* were wide-ranging and extremely burdensome.  They demanded, among other things, that clients produce information regarding their entire environments.  By contrast, it would have been easy for a third party to respond to a subpoena seeking a single file or handful of files that it received on a precise date and time, and as Judge Ferenbach noted, Oracle's failure to even "attempt to take third-party discovery during the discovery period" for such files—and its "blanket rejection" to do so now—"support[ed] a finding that the documents at issue are not 'lost,' as required by Rule 37(e)."  R&R at 8.

Gibson, Dunn & Crutcher LLP

In short, Oracle cannot establish that the ESI is "lost" without even attempting to obtain it from sources where it likely exists.  R&R at 8.

Judge Ferenbach's conclusion is also fully supported by the case law holding that "courts have declined to award sanctions where the moving party failed to take discovery" from third parties to confirm whether ESI had truly been lost.  *See id.* at 6–7 (citing cases).  For example, in *Best Payphones, Inc. v. City of New York*, 2016 WL 792396 (E.D.N.Y. Feb. 26, 2016) (cited in R&R at 6–7), the court denied a motion for Rule 37 sanctions where the moving party "failed to obtain the evidence from an available non-party," and therefore had "not shown prejudice."  *Id.* at *7.  Oracle's attempt to distinguish *Best Payphones* on the basis that the potential third-party discovery in that case was "obvious" and "eas[y]" (Obj. at 21) is both legally irrelevant and unconvincing because Oracle made no showing that obtaining specific files from clients would have been difficult, particularly given Oracle's past practice of issuing hundreds of broad third-party subpoenas in this case.  It was therefore not an abuse of discretion for Judge Ferenbach to fault Oracle for failing to even *ask* to take third-party discovery during the post-injunction discovery period to investigate its concerns about the TransferFiles process.  *See* R&R at 8.[5]

These issues of whether Oracle should have sought additional discovery and was dilatory are factual and completely within Judge Ferenbach's purview, particularly given his familiarity with overseeing discovery in this proceeding for over a year.  There is no reason to second-guess Judge Ferenbach's factual finding that no ESI has been "lost" as a result of TransferFiles.

---

[5]  Judge Ferenbach also cited *Manufacturing Automation & Software Systems, Inc. v. Hughes*, 2018 WL 2059839 (C.D. Cal. Apr. 30, 2018) (cited in R&R at 7), as an example of where a party has been required to have attempted to obtain the ESI at issue from alternate sources before seeking Rule 37 sanctions.  Oracle argues the *Hughes* court "misconstrue[d]" Rule 37 by conflating Rule 37(b) and Rule 37(e).  Obj. at 21 & n.12.  But *Hughes* did not "misconstrue" Rule 37(e)—indeed, the court specifically addressed "Rule 37(e)," and its application is entirely consistent with the text of Rule 37(e), which gives judges discretion in how and when to award discovery remedies.  *See Hughes*, 2018 WL 2059839, at *7; Fed. R. Civ. P. 37(e) (the court "may" award discovery sanctions in its discretion).

Gibson, Dunn &
Crutcher LLP

### 3. *Judge Ferenbach Correctly Found that Rimini "Took Reasonable Steps to Preserve Evidence" and Was "Open and Honest" About TransferFiles*

Finally, Oracle has not even attempted to rebut Judge Ferenbach's finding that "Rimini took reasonable steps to preserve evidence" and that there is "no evidence that Rimini engaged in bad faith," which is an independent ground to deny Oracle's motion. R&R at 8–9; *see* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Because [Rule 37] calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve."); Fed. R. Civ. P. 37(e)(2) (adverse inference sanction is available "only upon finding that the party acted with the intent to deprive another party of the information's use").

The record fully supports Judge Ferenbach's conclusion that Rimini acted reasonably at every turn. The TransferFiles tool *creates* copies of files; it does not delete evidence. Rimini was "open and honest with Oracle regarding its TransferFiles subprogram for many years" (R&R at 8), having produced the TransferFiles source code to Oracle as early as 2015. ECF No. 1372-6; Demo. Exh. #1.4. As Oracle's own expert has acknowledged, TransferFiles ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ ECF No. 1363-2 ¶ 131; Demo. Exh. #1.7. Nothing was hidden from Oracle. Rimini produced a copy of the transferred files from its own systems to Oracle and, following extensive meeting-and-conferring with Oracle, confirmed that it had located and produced to Oracle 460 (*i.e.*, 99%) of the 466 files that Oracle contended were missing. ECF Nos. 1374-6, 1374-10. Given Oracle's knowledge of the inner workings of TransferFiles (by having the actual source code in 2015, its experts' written analysis of the code in 2017, and Rimini's clear statement to Oracle in 2018 that files are not maintained on the FTP servers), there was no reason for Rimini to think that Oracle had a problem with the way it functioned. When Oracle changed its position in August 2019 and claimed that the way in which TransferFiles operated constituted "spoliation," Rimini

Gibson, Dunn & Crutcher LLP

disagreed, but changed the tool in good faith to avoid a dispute.  R&R at 8 (noting that Rimini engaged in good faith and "changed the program as soon as Oracle raised the issue").  Judge Ferenbach's conclusion that Rimini's conduct constituted "reasonable steps" to preserve evidence was not clearly erroneous.  *Id.* at 9.

## B.   Oracle's Motion Should Be Denied on Other Grounds that Judge Ferenbach Did Not Need to Reach

As discussed above, each of the three conclusions in Judge Ferenbach's order is sufficient to deny Oracle's motion.  The Court can therefore stop here and overrule Oracle's objections.  But there are additional, compelling reasons why Oracle's motion should be denied, relating to other grounds that Judge Ferenbach did not reach and had no need to reach.

First, Oracle has not proven prejudice, which is a prerequisite to receiving any remedy under Rule 37.  *See* Fed. R. Civ. P. 37(e)(1); ECF No. 1372 at 19–21.  Rimini produced 99% of the "missing" files that Oracle had identified, and Oracle has not articulated *how* any of those remaining six files—which include irrelevant files like "sample.txt" and a publicly available state tax form—would have materially improved its "presentation of proof."  *Holguin v. AT&T Corp.*, 2018 WL 6843711, at *7 (W.D. Tex. Nov. 8, 2018).  Oracle disputes whether the files Rimini produced are in fact the same, but it provides no proof that any relevant information was "lost."  In fact, the irrelevance of these files is underscored by what happened *after* Rimini agreed to modify the TransferFiles tool, in September 2019, to create a redundant archive of the intermediate files.  Rimini produced more than 10,000 intermediate FTP files from this archive from its creation through the close of discovery.  *See* Demo. Exh. #1.13.  Yet Oracle's Motion for an Order to Show Cause Why Rimini Should Not Be Held in Contempt (ECF No. 1368) *did not cite a single intermediate file* that Rimini would not have otherwise produced.[6]  Demo. Exh. #1.14; *see* ECF No. 1379 at 8:17–21.  The clear conclusion is that these files are

---

[6]  For example, Oracle claimed that its contempt motion cited to one file (out of the 10,000+ files) that Rimini produced from the TransferFiles archive it maintained since September 2019.  *See* ECF No. 1379 at 8.  But Oracle actually cited only the final version of that file, which would have been produced even if Rimini did not maintain the redundant archived copy.  Thus, Oracle has not identified a single file that it relied upon in its contempt motion, which would not have been produced but for the redundant archive.  *See* ECF No. 1430 at 5.

Gibson, Dunn & Crutcher LLP

immaterial, particularly in view of the mountain of discovery Oracle obtained, including 24/7 access into Rimini's development systems.

Second, Oracle's motion should be denied because the *only* remedy Oracle seeks (to the exclusion of all others) is an adverse inference, which Rule 37 does not permit given the absence of bad faith. *See* Fed. R. Civ. P. 37(e)(2) (adverse inference is permissible "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation"); *cf.* R&R 8 ("There is … no evidence that Rimini engaged in bad faith."). Even if ESI had truly been "lost" (it has not) and if Oracle had truly been prejudiced (it was not), Judge Ferenbach correctly observed that the appropriate remedy would be to reopen discovery for the limited purpose of determining "whether the files can be restored or replaced." ECF No. 1420 at 3. During the hearing, Rimini "offered to facilitate in helping Oracle seek additional discovery from its own clients." R&R at 8–9; *see also* ECF No. 1433 at 59:8–11 (Rimini's counsel offering to "help facilitate getting [the files]" by "assisting [Rimini's] clients to get them to Oracle"). And Oracle, as Judge Ferenbach noted, gave a "blanket rejection" of this invitation. R&R at 8.

Instead, Oracle seeks only the remedy of an adverse inference. But this remedy is off-limits under Rule 37, which requires a showing that Rimini "acted with the intent to deprive." Fed. R. Civ. P. 37(e)(2). There is no conceivable basis to find intentional misconduct by Rimini. *See* ECF No. 1374 at 21–24. Judge Ferenbach concluded that Rimini was "reasonable" and did not engage in any misconduct at all—let alone intentional misconduct, and he added that there is "no evidence that Rimini engaged in bad faith as it had been open and honest with Oracle regarding its TransferFiles subprogram for many years and it changed the program as soon as Oracle raised the issue." R&R at 8. Indeed, as Judge Ferenbach noted, that Oracle sought an adverse inference instruction—or no remedy at all—is inconsistent with "seek[ing] the truth." *Id.*

## V.  CONCLUSION

Judge Ferenbach presided over all discovery in this proceeding and is familiar with the facts. He considered multiple rounds of briefing, held a hearing, and issued a well-reasoned

22

1    order based on his factual findings and his judgment that further discovery—which he offered

2    to provide but Oracle refused—could have cured any perceived issue.  Oracle has not presented

3    any convincing argument as to why any one of Judge Ferenbach's rulings is clearly erroneous—

4    let alone all three, which is what it must show to prevail on its objections.  The Court should

5    overrule Oracle's objections and deny the motion for sanctions.

6    Dated:  October 19, 2020

7                                                  GIBSON, DUNN & CRUTCHER LLP

8

9                                                  By:_____/s/ Eric D. Vandevelde_____
                                                              Eric D. Vandevelde

10                                                 *Attorneys for Defendant*
11                                                 *Rimini Street, Inc.*

Gibson, Dunn &
Crutcher LLP