GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA  94566
Telephone: 925.264.7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV  89169
Telephone: 336.908.6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone: 702.667.4843
wwa@h2law.com

*Attorneys for Defendant*
*Rimini Street, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al., | Case No. 2:10-cv-00106-LRH-VCF |
|         Plaintiffs, | **RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE** |
|    v. | ***PUBLIC REDACTED VERSION*** |
| RIMINI STREET, INC., et al., | **Hearing:** |
|         Defendants. | Date:     September 20, 2021<br>Time:    9:00 a.m.<br>Place:   Bruce R. Thompson<br>             Courthouse, Reno, NV<br>Judge:  Hon. Larry R. Hicks |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................1

II.  BACKGROUND .................................................................................................2

    A.  *Rimini I* Summary Judgment, Jury Verdict, and Injunction ...............................2

    B.  Rimini's Compliance Efforts .............................................................................3

    C.  Oracle Accuses Rimini of Contempt ..................................................................4

    D.  The Court Orders a Show Cause Hearing Regarding Ten Specific
        Issues ...............................................................................................................4

III.  LEGAL STANDARD .........................................................................................7

IV.  ARGUMENT .......................................................................................................7

    A.  The Two Violations Found by the Court Are Not Contumacious .....................7

        1.  Isolated Files on Rimini's System:  Rimini Should Not Be Held
            in Contempt ..........................................................................................7

        2.  Update for Matheson Trucking: Rimini Should Not Be Held in
            Contempt ............................................................................................12

    B.  Rimini Did Not Violate the Injunction, and Certainly Did Not Act
        Contumaciously for the Eight Other Discrete Instances Set for Hearing .........14

        1.  Rimini Should Not Be Held in Contempt Regarding
            RSPCMPAY.cbl ...............................................................................15

        2.  Rimini Should Not Be Held in Contempt with Respect to
            Alleged "Cross-Used" Updates ..........................................................16

        3.  Rimini Should Not Be Held in Contempt Regarding JDE
            Source Code ........................................................................................23

    C.  Sanctions Are Not Appropriate ........................................................................28

V.  CONCLUSION ..................................................................................................30

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alcatel USA Inc. v. DGI Techs., Inc.*,
   166 F.3d 772 (5th Cir. 1999)...................................................................................25

*In re Chase & SanBorn Corp.*,
   872 F.2d 397 (11th Cir. 1989)................................................................................28

*City of Spokane v. World Wide Video of Wash., Inc.*,
   2008 WL 11391133 (E.D. Wash. Jan. 7, 2008) ....................................................30

*In re Crystal Palace Gambling Hall, Inc.*,
   817 F.2d 1361 (9th Cir. 1987)................................................................................28

*D.P.L. Enters., Inc. v. Green Air Direct, Inc.*,
   2012 WL 6043277 (D. Nev. Dec. 4, 2012)...........................................................29

*Degla Grp. for Inv., Inc. v. Boconcept USA, Inc.*,
   2010 WL 11509053 (C.D. Cal. Sept. 30, 2010).....................................................9

*DeMichiel v. AEG Live NJ, LLC*,
   2018 WL 6074537 (C.D. Cal. Oct. 16, 2018)........................................................29

*DropzoneMS, LLC v. Cockayne*,
   2019 WL 7630788 (D. Or. Sep. 12, 2019).............................................................16

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993)..........................................................................9, 10, 13

*Gen. Signal Corp. v. Doncallo, Inc.*,
   787 F.2d 1376 (9th Cir. 1986).................................................................................9

*Herb Reed Enters., Inc. v. Monroe Powell's Platters, LLC*,
   2014 WL 3894069 (D. Nev. Aug. 8, 2014) ............................................................9

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
   349 F. Supp. 2d 509 (E.D.N.Y. Nov. 26, 2004)....................................................30

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
   774 F.3d 935 (9th Cir. 2014).................................................................................13

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994)...............................................................................................28

*Krause v. Titleserv, Inc.*,
   402 F.3d 119 (2d Cir. 2005)...................................................................................18

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*,
    564 F.3d 1115 (9th Cir. 2009)...................................................................................7

*LegalForce RAPC WorldWide P.C. v. Demassa*,
    2019 WL 5395038 (N.D. Cal. Oct. 22, 2019)..........................................................29

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
    964 F.2d 965 (9th Cir. 1992)..................................................................................21

*Micro Star v. Formgen*,
    154 F.3d 1107 (9th Cir. 1998).................................................................................21

*Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union*,
    2012 WL 6115046 (D. Or. Dec. 10, 2012) .............................................................13

*Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*,
    721 F.3d 1122 (9th Cir. 2013).................................................................................28

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    879 F.3d 948 (9th Cir. 2018).........................................................................2, 3, 25

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017)...........................................................................11, 26

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018).................................................................................15

*Rinehart v. Brewer*,
    483 F. Supp. 165 (S.D. Iowa 1980) ........................................................................13

*Stone v. City & Cty. of S.F.*,
    968 F.2d 850 (9th Cir. 1992)...................................................................................10

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019) ............................................................................................13

*Tegal Corp. v. Tokyo Electron Co.*,
    248 F.3d 1376 (Fed. Cir. 2001).......................................................................11, 26

*TiVo Inc. v. EchoStar Corp.*,
    646 F.3d 869 (Fed. Cir. 2011)...................................................................................7

*U.S. Phillips Corp. v. KBC Bank N.V.*,
    667 F. App'x 632 (9th Cir. 2016) ............................................................................28

*UMG Recordings, Inc. v. Augusto*,
    628 F.3d 1175 (9th Cir. 2011).................................................................................18

Gibson, Dunn &
Crutcher LLP

1

2

# TABLE OF AUTHORITIES
(continued)

Page(s)

3

4

*United States v. Anderson*,
  2016 WL 1169309 (N.D. Cal. Mar. 25, 2016) ........................................................................29

5

*United States v. Bright*,
  596 F.3d 683 (9th Cir. 2010) .............................................................................................7, 29

6

7

*W. Knight Foster P'ship v. Saratoga Data Sys., Inc.*,
  2018 WL 1000373 (N.D. Cal. Feb. 21, 2018) ..................................................................25

8

*Wallis v. Greyhound Lines, Inc.*,
  2020 WL 7248368 (C.D. Cal. Nov. 9, 2020) ...................................................................11

9

10

*Whittaker Corp. v. Execuair Corp.*,
  953 F.2d 510 (9th Cir. 1992) ........................................................................................28, 29

11

**STATUTES**

12

17 U.S.C. § 117(a) ...........................................................................................................18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.   INTRODUCTION

2   This Court issued an order to show cause regarding certain discrete acts by Rimini that

3   the Court found to be actual or potential violations of the permanent injunction, and set an

4   evidentiary hearing for September 2021.  *See* ECF No. 1459.  As summarized below, and as

5   Rimini will further establish at that hearing, no instance in which the Court found a violation

6   warrants holding Rimini in contempt, Rimini is in compliance with respect to the remaining

7   issues to be presented at the hearing, and the Court's show-cause order should be discharged.

8   Following this Court's summary judgment order in *Rimini I*, Rimini invested millions

9   of dollars to revise its processes, transitioning to Process 2.0 by July 31, 2014.  A jury found

10   Rimini liable for innocent infringement in 2015, and this Court entered a permanent injunction

11   in 2018.  Oracle initiated wide-ranging discovery in 2019 into Rimini's compliance with the

12   injunction, and over the course of about "a year and a half" (ECF No. 1459 at 5), Rimini

13   produced nearly one million documents and voluminous technical data, and provided Oracle

14   24/7 access to multiple Rimini systems that Rimini engineers use on a daily basis.  Oracle then

15   filed a motion accusing Rimini of contempt, asserting many sweeping theories of non-

16   compliance with the injunction.  *See* ECF No. 1365.

17   After reviewing this record, the Court found just two violations and eight potential

18   violations, and set an evidentiary hearing on these discrete issues.  ECF No. 1459 at 15–28, 35.[1]

19   One of the violations involved Rimini's clients sending to Rimini—contrary to Rimini's

20   policies and conspicuous warnings—copyrighted Oracle files, which resulted in those files

21   being on Rimini's email server.  The second involved a single update for a single client—one

22   of thousands of updates Rimini implemented in the post-injunction time period—and was an

23   understandable mistake based on Rimini's good faith and reasonable interpretation of the

24   injunction.  For the remaining issues, as detailed below, Rimini is in compliance.

25   For Rimini to be held in contempt, Oracle has the burden to prove by clear and

26

27   _____

[1]   The Court also held that Rimini violated the injunction with respect to two updates for
28   Campbell Soup and City of Eugene that occurred in 2015 and 2016, respectively.  ECF No.
1459 at 17–18.  However, both parties agree that those updates cannot be violations of the
injunction because they predated the injunction.  ECF No. 1461 at 3; *see* ECF No. 1460.

convincing evidence, for each alleged violation, that (1) Rimini violated the injunction; (2) Rimini was not in substantial compliance; and (3) Rimini's actions were not based on a good faith and reasonable interpretation of the injunction.   Oracle cannot meet its burden. Although Rimini has no burden, Rimini will show at the hearing that it did not violate the injunction with respect to the eight disputed issues, and that at all times, including with respect to the two issues on which the Court found violations, Rimini was in substantial compliance with the injunction and acted reasonably and in good faith.

For the reasons set forth below, and based on the evidence to be offered at the September hearing, Rimini respectfully submits that the order to show cause should be discharged.

## II.   BACKGROUND

The facts set forth below and throughout this brief are not exhaustive, but are indicative of the evidence Rimini will present at the hearing on this matter.[2]

### A.   *Rimini I* Summary Judgment, Jury Verdict, and Injunction

"Rimini … provide[s] third-party support for Oracle's enterprise software, in lawful competition with Oracle's direct maintenance services" for that same software.   *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 952 (9th Cir. 2018).

In 2010, Oracle filed *Rimini I*, alleging that certain aspects of Rimini's support practices ("Process 1.0") exceeded the scope of client licenses on which Rimini relies when servicing its client's software, components of which are copyrighted by Oracle.   "Of importance to these [contempt] proceedings," on summary judgment in *Rimini I*, this Court held that "Rimini violated [a] 'facilities restriction' within [a] PeopleSoft" license agreement "when [Rimini] hosted its clients' development environments on its own computer systems, a process called 'local hosting.'"   ECF No. 1459 at 2–3.   The Court also held that Rimini violated the PeopleSoft license by engaging in what Oracle called "cross-use," *i.e.*, "'the creation of development environments, under color of license of one customer, to support *other* customers.'"   *Rimini St., Inc. v. Oracle Int'l Corp.* (*Rimini II*), No. 2:14-cv-1699, ECF No. 1253 at 45 (quoting *Rimini I*,

---

[2]   Given the Court's order limiting evidentiary material to 100 pages, it would not be possible to submit all evidence that will be presented at the hearing with this filing.

2

879 F.3d at 956).  Following trial, the jury found that Rimini had innocently infringed Oracle's PeopleSoft, J.D. Edwards ("JDE"), and Siebel software copyrights.  *See* ECF No. 1459 at 3.

Following the appeal, this Court entered a modified injunction, which prohibits Rimini from engaging in a discrete set of "conduct" that was "adjudicated unlawful" in *Rimini I*, but "does ***not*** enjoin conduct that has yet to be adjudicated unlawful."  *Id.* at 10 (emphasis added).

## B.    Rimini's Compliance Efforts

Even before the injunction issued, Rimini substantially revised its support processes to comply with this Court's rulings.  Rimini ensured that each client has its own segregated software environments that are not on Rimini's systems.  ECF No. 1385 at 5.  Rimini also:

- Adopted an Acceptable Use Policy ("AUP") designed to ensure compliance with Oracle's license agreements.  The AUP is *more restrictive* than the injunction. ███████████████████████████████████████████████████████████████

- Made further changes to its processes after the injunction issued, in an abundance of caution, despite having already substantially revised them.  ECF No. 1385-2-s ¶ 43 & n.2.

- Informed all personnel of the injunction and explained their obligation to comply with it. *E.g.*, ECF Nos. 1386-5-s through 1386-8-s.

- Sent specific guidance to each product line team.  ECF Nos. 1386-7-s and 1386-8-s.

- Required all personnel to affirm that they reviewed the injunction.  ECF No. 1386-5-s.

- Trained employees periodically on the requirements of both the AUP and the injunction. ECF No. 1386-12-s (Mackereth Dep.) at 62:20–63:16; 68:25–69:13; 178:13–179:5.

- Educated clients regarding the injunction and the AUP, including repeatedly instructing its clients—using a number of different methods—*not* to send any Oracle or other third-party intellectual property to Rimini.  ECF No. 1385-1-s ¶ 13.

- ████████████████████████████████████████████████████████████████

- ███████████████████████████████████████████████

During the period at issue, Rimini had more than 1,400 employees, operating in 21 countries, and delivered over ████ PeopleSoft and JDE updates to support nearly 400 clients, each of which has tens of thousands of licensed files that Rimini must interact with to provide support.  Oracle engaged in extensive discovery of, and motion practice about, Rimini's conduct

Gibson, Dunn &
Crutcher LLP

during that time period, and yet this contempt proceeding concerns only a handful of alleged violations.  Rimini's successful implementation of thousands of updates in compliance with the injunction is a testament to its compliance efforts.

**C.      Oracle Accuses Rimini of Contempt**

Beginning in April 2019, Oracle took wide-ranging discovery into Rimini's operations. *See* ECF No. 1215.  The Court permitted "approximately a year and a half" of new discovery (*see* ECF No. 1459 at 5), which involved Rimini producing nearly one million documents and gigabytes of technical data, providing 24/7 access to multiple Rimini systems, and providing Rule 30(b)(6) deposition testimony on over 40 topics, including Process 2.0.

Oracle then filed a motion for an order to show cause why Rimini should not be held in contempt of Court.  *See* ECF No. 1365.  In that motion, Oracle did not claim that Rimini continued to host client environments on its systems or to use generic environments to support multiple clients, as had been litigated in *Rimini I*.  Instead, Oracle accused many instances of unadjudicated conduct—conduct directly in dispute in *Rimini II*—and claimed that Rimini's entire "processes" related to PeopleSoft, JDE, and Oracle Database violated the injunction in *Rimini I*.  *See id.*  Specifically, Oracle argued that Rimini's:  (i) "prototype/retrofit support service model"; (ii) "Dev Instructions"; (iii) "AFW Tools software"; (iv) cloud-storage by its clients; (v) "test casing"; (vi) updates and modifications; (vii) increased efficiency in developing updates; and (viii) copying of Oracle Database, *all categorically* amounted to violations of various injunction provisions.  *See* ECF No. 1459 at 15–28.

**D.      The Court Orders a Show Cause Hearing Regarding Ten Specific Issues**

The Court issued its show cause order on March 31, 2021.  ECF No. 1459.  The Court emphasized that "neither the intention nor the purpose of the permanent injunction" was to effect "a complete ban on Rimini support services."  *Id.* at 26; *see id.* at 27 (rejecting Oracle's position that "would be a ban on all copying").  The Court also made clear that "the injunction does not enjoin conduct that has yet to be adjudicated unlawful" (*id.* at 10; *see also*, *id.* at 11 ("the permanent injunction only enjoins conduct that has been adjudicated unlawful")), and that Rimini cannot be held "in contempt for conduct not yet adjudicated in *Rimini II*" (*id.*).

Gibson, Dunn &
Crutcher LLP

The Court held that many of Oracle's contempt theories were outside the scope of the contempt proceedings either because they had not been adjudicated in *Rimini I*, or because they were directly at issue in *Rimini II*.[3]  The Court further held that Oracle failed to meet its burden on certain specific claims.  *Id.* at 25–26.

The Court ordered a show cause hearing on a narrowly defined and discrete set of issues. The Court held that Rimini violated the injunction in two instances:  (i) a PeopleSoft software file and two emails containing ten items of PeopleSoft user documentation—all sent to Rimini by clients against its policies—were on Rimini's systems; and (ii) a single update for Matheson Trucking violated the injunction because, on the record before the Court, there was no "indication it was developed or tested in [Matheson's] environments."  *Id.* at 22–23, 26–27. The Court issued an order to show cause as to why Rimini should not be held in contempt for these incidents, and what, if any, sanction would be appropriate.  *Id.*  With respect to eight other specific incidents, the Court ordered that an evidentiary hearing was needed to determine whether the conduct violated the injunction.  *Id.* at 19–27.

This Court explicitly "caution[ed] the parties to strictly stay within the bounds" articulated in the order to show cause for their "argument and evidence presentation" adding that "*violations will not be tolerated*."  *Id.* at 35 (emphasis added).[4]

---

[3]  The Court held, among other things, that: whether "Rimini's prototype/retrofit support service model constitutes copyright infringement is … squarely before the Court in *Rimini II*" (ECF No. 1459 at 16); "[N]either Rimini's Dev Instructions nor its AFW Tools software were before the Court or held to be unlawful in *Oracle I*… [and] whether these support services constitute copyright infringement is squarely before the Court in *Rimini II*" (*id.* at 15); "[T]he Court will not make a blanket finding that whenever an update is built quicker for one client than another, that means that Rimini … violates the permanent injunction" (*id.* at 16; *see also id.* at 25); "The Court finds that the test case is not 'testing' as provided for in paragraph 6 of the permanent injunction; rather, the test case is simply the plan for how Rimini will test a specific update" (*id.* at 19); "[T]o read the injunction to prohibit all distribution of Rimini updates to its clients would be a complete ban on Rimini support services.  That was neither the intention nor the purpose of the permanent injunction and such a reading would be outside its scope" (*id.* at 26); "Rimini is not required to test updates and if Rimini chooses to send a client an untested update, developed in that client's environment, the Court cannot find that conduct violates the injunction" (*id.*); and "it is clear that this provision does not prohibit all copying of Oracle Database" (*id.* at 28).

[4]  In its response to Rimini's motion for reconsideration, Oracle announced its intention to violate the Court's order by claiming that it "intends … to establish *additional* violations of the Injunction (in addition to the examples … as to which the Court requested an evidentiary

*(Cont'd on next page)*

RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

A chart of the ten discrete issues for resolution at the September hearing is below.

| Violations Found by the Court | |
|---|---|
| **Issue** | **Description** |
| 1. PeopleSoft Files on Rimini's Systems | The Court found that in three instances, clients sent PeopleSoft files or documentation to Rimini, which created copies on Rimini's systems in violation of the injunction. *See* ECF No. 1459 at 22–23. |
| 2. Update for Matheson Trucking | The Court found that for one update for Matheson Trucking there was no "indication [this update] was developed or tested in [Matheson's] environments." *Id.* at 26. |
| **Disputed Violations at Issue for the September Hearing** | |
| 3. JHN Update | Oracle contended that an update was tested in City of Eugene's environment but not JHN's environment. The Court set a hearing to determine whether "testing" related to this update "constitutes unlawful cross-use." *Id.* at 19–20. |
| 4. Rsi940a.sqr Update | Oracle contended that a file called rsi940a.sqr "was tested in COE and then sent to all clients in scope." The Court set a hearing to determine whether "testing" related to this update "constitutes unlawful cross-use." *Id.* at 19–20. |
| 5. RSPCMPAY.cbl | The Court set a hearing to "hear from both parties['] competing experts to determine if Rimini's file [RSPCMPAY.cbl] contains protected Oracle expression that Rimini is prohibited from having on its systems." *Id.* at 20–22. |
| 6. 1099 Update for Easter Seals | Oracle contended that an update for Easter Seals was a derivative work constituting "cross-use." The Court stated that it "lacks necessary information" and that a hearing is necessary to determine whether the creation and distribution of the update violated the injunction. *Id.* at 24. |
| 7. Access to JDE Source Code | The Court ordered an evidentiary hearing on the parties' dispute "over the definition of [J.D. Edwards software] source code." The Court also identified two files—prvtsidx.plb and a Rimini technical specification—that are alleged to contain such code. *Id.* at 25. |
| 8. Prvtsidx.plb File | |
| 9. JDE Technical Specification | |
| 10. Update HCM200105 | Oracle contended that Rimini committed "cross-use" with respect to HCM200105 for Rockefeller Group and Home Shopping Network. The Court ordered an evidentiary hearing to determine where and how the update was developed and tested and "whether Rimini's conduct violates the permanent injunction." *Id.* at 27. |

hearing) at and before the September 20, 2021 evidentiary hearing." ECF No. 1461 at 3 (emphasis added). Oracle's expressed intention to raise new issues not presented in its motion for an order to show cause would upend the Court's show-cause procedure and violate due process. *See* ECF No. 1465 at 2–5.

Gibson, Dunn &
Crutcher LLP

## III.    LEGAL STANDARD

For each of the ten discrete issues set for hearing, Oracle bears the burden to prove three things by clear and convincing evidence:  (1) Rimini violated the injunction; (2) Rimini's violation was "beyond substantial compliance"; and (3) Rimini's conduct was "not based on a good faith and reasonable interpretation of the injunction." *See, e.g.*, *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010); *Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009); Oracle's OSC Motion, ECF No. 1368 at 11.  Oracle must prove all three elements—proof of a violation of the injunction does not itself warrant holding Rimini in contempt.[5]

## IV.    ARGUMENT

Rimini should not be held in contempt of the Court's injunction with respect to the two violations this Court found because it substantially complied with the injunction and acted based on a good faith and reasonable interpretation of the injunction.  Rimini is in compliance with respect to the other eight discrete issues set for hearing.  Even if Rimini were found in contempt, sanctions would not be appropriate.

**A.    The Two Violations Found by the Court Are Not Contumacious**

This Court found that Rimini violated the injunction in two discrete ways:  (1) when clients sent a small number of PeopleSoft files to Rimini, and Rimini therefore had those files on its systems; and (2) with respect to a single update for Matheson Trucking.  Rimini should not be held in contempt of the Court's injunction for either violation because in both cases, Rimini substantially complied with the injunction and acted based on a reasonable and good faith interpretation of the injunction.

**1.    Isolated Files on Rimini's System:  Rimini Should Not Be Held in Contempt**

The Court found that Rimini violated the injunction in three instances in which clients sent Rimini Oracle copyrighted files, thereby placing those files on Rimini's systems in

---

[5]  Rimini respectfully contends that Process 2.0 conduct is "more than colorably different" from the adjudicated Process 1.0 conduct, and therefore, under *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881 (Fed. Cir. 2011), contempt proceedings are not appropriate for any of the ten discrete issues set for hearing.  ECF No. 1386 at 14–16.  The Court ruled against Rimini on this issue, and Rimini will not re-argue the point, but preserves the issue.

Gibson, Dunn &
Crutcher LLP

violation of the injunction.  ECF No. 1459 at 22–23.  The Court acknowledged that Rimini may not have willfully intended to violate the injunction when its clients sent it material "contrary to [Rimini's] express instructions," but found that a technical violation nevertheless had occurred.  *Id.*  The Court invited evidence and argument, and set a hearing, to decide whether Rimini should be held in contempt for these non-willful violations.

Rimini respectfully contends that it should not—indeed, cannot—be held in contempt because Rimini substantially complied with the injunction's provision that Rimini not reproduce PeopleSoft software or documentation on its computer systems.  These violations are isolated incidents—three incidents totaling eleven files over the course of more than one year.  In each case, Rimini did not seek to have these files on its systems; clients sent them to Rimini, despite the reasonable steps Rimini took to warn clients not to do so.  And in each case, Rimini did not use the files.  In stark contrast to the conduct the Court enjoined, the files at issue here are single, isolated files (only one of which is a code file), not entire software environments.

### a.  Overview of Relevant Facts

Below is an overview of the relevant facts Rimini will establish at the hearing.

**Psptaxdt.dms.**  In its motion for an order to show cause, Oracle argued that a single Oracle PeopleSoft file, psptaxdt.dms is "on Rimini's systems" and was "modified only with a handful of Rimini-added lines of code."  ECF No. 1368-s at 21.  What Oracle failed to explain is that this file was sent to Rimini by client ██████████████—unsolicited by Rimini— as part of a support request.  ECF No. 1386-9-s at 2.  The client wrote, ███████████ ████████████████████████████████████████████ and asked for confirmation as to which version was correct, attaching the psptaxdt.dms file as a reference.  *Id.* The file was thus on Rimini's systems the moment Rimini received the email, through no fault of its own.  The file contains Rimini modifications to the original Oracle file because Rimini had made modifications to the file *in the client's environment*, pursuant to its usual processes and consistent with the injunction.  The Rimini-modified file reached Rimini's systems only when the client sent it unprompted by Rimini.

**PeopleSoft documentation sent by ████████.**  The remaining two incidents

Gibson, Dunn &
Crutcher LLP

involve PeopleSoft documentation—*e.g.*, user-facing descriptions of the software's functionality—not code. The evidence will show that in the process of onboarding client █████, Rimini and ███ were working together to move eight licensed Oracle documents from ███'s computers to ███'s environment that Rimini remotely accesses. However, instead of following the normal process in which the client would place the files directly on its own system, the client emailed the files to Rimini to place on that system, thereby causing a copy to be created on Rimini's email server. *See* Ex. A.[6] Had the client placed the files directly on its own system, there would have been no violation. There is no evidence that Rimini used any of these files other than to transfer them to the client's system.

**Payroll documentation sent by client ████████████████.** A similar incident occurred while onboarding client ████. ████ had two licensed PeopleSoft documentation files on its systems. Instead of placing the files in the proper location (in the client's environment) as requested by the Rimini employee, the client emailed them to Rimini. *See* Ex. B (email from ████: "Attached are the 18-E release notes"). Rimini then placed the files in the proper location, but that extra step created a copy of the files on Rimini's systems.

### b.    Rimini Substantially Complied with the Injunction

"Substantial compliance with the court order is a defense to civil contempt," and contempt is not appropriate where there are a "few technical violations" despite all reasonable efforts to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *see also Gen. Signal Corp. v. Doncallo, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) ("If a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt."); *Degla Grp. for Inv., Inc. v. Boconcept USA, Inc.*, 2010 WL 11509053, at *19 (C.D. Cal. Sept. 30, 2010) (concluding that minor violations were "not sufficient to warrant the entry of an order of contempt."). "A contemnor fails to take all reasonable steps where there is 'little conscientious effort on the part of the [contemnor] to comply.'" *Herb Reed Enters., Inc. v. Monroe Powell's Platters, LLC*, 2014 WL 3894069, at *6 (D. Nev. Aug. 8, 2014) (quoting

---

[6]  Exhibit citations are to the Declaration of Eric D. Vandevelde, submitted herewith.

Gibson, Dunn &
Crutcher LLP

*Stone v. City & Cty. of S.F.*, 968 F.2d 850, 857 (9th Cir. 1992)); *see also Stone*, 968 F.2d at 857 (all reasonable steps does *not* mean "every [step] that the court could conceive").

Rimini's compliance was substantial, and its violations were merely "technical" for a number of reasons.

*First*, the injunction's prohibition on Rimini copying PeopleSoft software and documentation to its own systems stems from this Court's *Rimini I* summary judgment ruling regarding Rimini's practice (prior to July 2014) of locally hosting *entire PeopleSoft environments*—each comprising thousands of files and from which the software could be run—and using those environments for development and testing purposes. When this Court held that such local hosting of entire environments violated the "facilities" restriction in certain older PeopleSoft licenses, Rimini overhauled its processes to move those environments off its systems. *See generally* ECF No. 1385-s at 4–5. It is undisputed that after Rimini's transition to Process 2.0 by July 31, 2014, Rimini has never had an active Oracle software environment on its systems. *See* ECF No. 1383-15 at 27:13–15. Rimini's efforts to remove hundreds of environments, including millions of files, from its systems and revise its support processes demonstrate its compliance. By contrast, the violations at issue in this contempt proceeding, involving 11 isolated files sent by clients to Rimini in three incidents, do not remotely resemble the conduct that led to the injunction.

*Second*, the small number of incidents at issue do not show contempt for this Court's injunction. Rimini has more than 1,400 employees and operations in 21 countries. It supported nearly 400 PeopleSoft and JDE clients during the one-year period at issue in these proceedings. Each of those clients has tens of thousands of licensed PeopleSoft files, and Rimini interacts with those clients and those files on a daily basis. Rimini has policies in place to prevent violations of the injunction (ECF No. 1385-1-s ¶¶ 13–14), but given the scope of Rimini's work and the number of employees, it is not realistic (nor the law) to expect that inadvertent violations will never occur. That is why perfection is not the standard for contempt. *See Dual-Deck*, 10 F.3d at 695. The three incidents at issue, over the course of more than one year, are regrettable, but they do not show that Rimini was acting in contempt of this Court's order.

Gibson, Dunn &
Crutcher LLP

*Third*, the violations were not willful.  In each incident, the files were sent to Rimini by clients.  Rimini did not seek to obtain those files, nor did it use the files for its own purposes.  There is no indication that any of the employees involved intended to violate a court order, let alone an indication that Rimini as a corporate entity intended to disregard the Court's order.  Indeed, in the case of psptaxdt.dms, which was emailed to Rimini without prompting, Rimini took no active step at all, but merely received a file contrary to its policy.  Rimini cannot be held in contempt for someone else's actions.  *See Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) ("[C]ourts have held parties in contempt based on the conduct of others" only upon "proof that the party subject to contempt sanctions had control over those who engaged in the conduct proscribed by the injunction."); *accord Wallis v. Greyhound Lines, Inc.*, 2020 WL 7248368, at *2 (C.D. Cal. Nov. 9, 2020); *cf. Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666–68 (9th Cir. 2017) (reaffirming the "volitional conduct" rule whereby a defendant, not a third party, must be the cause of a copy to be held liable for infringement), *cert. denied*, 138 S. Ct. 504 (2017).

*Fourth*, Rimini took all reasonable steps to comply with the Court's prohibition on having clients' PeopleSoft software and documentation on Rimini's systems.  Rimini moved its clients' environments off its systems and transitioned to a remote support model.  It informed its employees and clients of the injunction.  It adopted an AUP Policy that forbids storing third-party intellectual property on its systems and trains employees on that policy.  ECF No. 1386-4-s.  It also repeatedly reminds clients of their obligation *not* to send Rimini any third-party copyrighted files. ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ ECF No. 1385-1-s ¶ 13.

These steps reasonably, and significantly, reduce the likelihood of inadvertent violations.

Gibson, Dunn & Crutcher LLP

**2.      Update for Matheson Trucking: Rimini Should Not Be Held in Contempt**

The Court found one violation of the injunction relating to "cross-use," involving update HCM200049 for Matheson Trucking.  The Court, relying on an email chain, held that the update was delivered to Matheson "without any indication it was developed or tested in that client's environments."  ECF No. 1459 at 26.  The Court held that the parties may not re-argue the fact of the violation, but are permitted to "argue whether Rimini should be held in contempt for such a violation, and what sanctions are appropriate."  *Id.* at 27.  Rimini respectfully contends that contempt is not appropriate because its actions were based on a good faith and reasonable interpretation of the injunction, and Rimini substantially complied with the injunction.

**a.      Overview of Facts Relating to HCM200049 for Matheson Trucking**

RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

### b. Rimini Acted Based on a Good Faith and Reasonable Interpretation of the Injunction

A company "should not be held in contempt if [its] action appears to be based on a good faith and reasonable interpretation of the [court's order]." *Dual-Deck*, 10 F.3d at 695; *see Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019) ("civil contempt should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct"); *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014) ("[I]f a defendant's action appears to be based on a good faith and reasonable interpretation of the court's order, he should not be held in contempt."); *Rinehart v. Brewer*, 483 F. Supp. 165, 170–71 (S.D. Iowa 1980) (finding no contempt where defendant's actions were based on good faith and reasonable interpretation); *Hooks ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 2012 WL 6115046, at *2–3 (D. Or. Dec. 10, 2012) (no contempt where violation depended on a "complex legal question subject to reasonable differences of opinion" that "is, in part, the subject of a separate ... case ... pending in this Court").

The injunction provides that "Rimini Street shall not reproduce, prepare derivative works from, or use a specific licensee's PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations." ECF No. 1166 ¶ 4. Rimini reasonably believed that it was complying with that provision because its use of City of Eugene's software to test the update was to support City of Eugene, which was in scope to receive the update, and its use of Matheson's software to implement and test the update was to support Matheson. Moreover, ███████████████████████████████████ ███████ does not "reproduce" "PeopleSoft software" because the file does not contain any PeopleSoft code or expression. *See* ECF No. 1368-1-s ¶ 71; 1386-1-s ¶ 279.

It was also reasonable for Rimini to believe that, to the extent it re-used its knowledge and work product to implement the same update for Matheson that it implemented in City of Eugene's development environment, that re-use of knowledge was not "cross-use." In fact, this Court held, after this update occurred, that "it is generally not cross use for a Rimini engineer to create an update file for Client A exclusively using Client A's software and then create the same update file for Client B exclusively using Client B's software," and it is not "cross-use"

Gibson, Dunn & Crutcher LLP

for a Rimini engineer to "use the knowledge he or she gained when developing the same or similar update for Client B." *Rimini II*, ECF No. 1253 at 87. Here, the rsi940a.sqr file is a stand-alone file written by Rimini on Rimini's systems and containing only Rimini-written code. It was reasonable for Rimini to "use the knowledge [it] gained" from implementing and testing its modification to that file for City of Eugene to know that the same implementation likely would work for Matheson. Rimini later confirmed that knowledge when it tested the update in Matheson's environment to support Matheson.

In addition, at the time of this violation in January 2019, neither this Court nor the Ninth Circuit had adjudicated the bounds of "cross-use" in an analogous situation. In *Rimini I*, the Court and jury found that using *generic* environments to create updates containing Oracle code that were then sent to multiple clients was infringing. The Matheson update is nothing like the conduct at issue in *Rimini I*, as the Rimini clients receiving this update had separate environments, and no files (let alone Oracle code) were transferred between environments.

### c.    Rimini Substantially Complied with the Injunction

This violation was also not contumacious because Rimini's compliance was substantial. The Matheson update does not indicate a systematic problem with Rimini's processes. This update is one of ███ updates that Rimini performed between the time the injunction was entered and the close of discovery. Rimini completely revamped its processes in good faith to comply with Court orders in *Rimini I*, even before the injunction was issued, and took further steps after the injunction issued. *See generally* Section II.B, *supra*. The fact that only one update has been found to violate (and only a handful of others are at issue at the show cause hearing) is a testament to Rimini's substantial efforts to comply with the injunction.

### B.    Rimini Did Not Violate the Injunction, and Certainly Did Not Act Contumaciously for the Eight Other Discrete Instances Set for Hearing

For the remaining eight issues set for hearing in September, Oracle cannot show by clear and convincing evidence that Rimini violated the injunction, did not substantially comply, and did not act based on a reasonable and good faith interpretation of the injunction. To the contrary, Rimini did not violate the injunction or act contumaciously.

Gibson, Dunn &
Crutcher LLP

### 1.      Rimini Should Not Be Held in Contempt Regarding RSPCMPAY.cbl

Rimini wrote a code file on its systems called RSPCMPAY.cbl, which solves a particular tax issue that is not solved by the native PeopleSoft software.  Oracle contends the file contains lines of code that "match" lines of code in a different Oracle file titled PSPTARRY.cbl that performs an entirely different function.  ECF No. 1459 at 20–21.  The Court recognized the disputed expert testimony regarding this file, and ordered that "[t]he Court, as fact finder, must hear from both parties competing experts to determine if Rimini's file contains protected Oracle expression that Rimini is prohibited from having on its systems." *Id.* at 22.  The evidence will show that Rimini did not violate the injunction, and in any event, it should not be held in contempt.

### a.      Rimini Did Not Violate the Injunction with Respect to RSPCMPAY.cbl

As this Court held, to demonstrate a violation of the injunction, Oracle must show that RSPCMPAY.cbl "contains *protected* Oracle expression that Rimini is prohibited from having on its systems." *Id.* at 22 (emphasis added).  To make this showing, Oracle must show through "[a]nalytic dissection" that the file bears "substantial similarity" to Oracle's file.  *Id.* at 21; ECF No. 1392-s at 5–8.  In analytic dissection, the non-protectible elements in RSPCMPAY.cbl are first "filter[ed]" out, and then the remaining elements of the file are compared to PSPTARRY.cbl to determine "holistic[ally]" whether they are "substantially similar in total concept and feel."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc).

Oracle's expert, Barbara Frederiksen-Cross, did not engage in that analysis, and because her hearing testimony will be limited to opinions she previously disclosed, Oracle cannot meet its burden.  ECF No. 1385-s at 25–26; ECF No. 1392-s at 5–11.  Rather than perform analytic dissection, Ms. Frederiksen-Cross's only work on this issue was to create a computer-generated comparison of the files and then assert that one third of the lines in Rimini's file matched lines in Oracle's file.  Ms. Frederiksen-Cross offered nearly identical opinions about code matching without performing analytic dissection in an analogous case, and the court found that her

Gibson, Dunn &
Crutcher LLP

opinions were insufficient to establish infringement as a matter of law.  *DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *14 (D. Or. Sep. 12, 2019); ECF No. 1392-s at 11.

By contrast, Rimini's expert, Professor Owen Astrachan, performed analytic dissection. He will explain at the hearing why the allegedly matching portions of code are not protectible, and opine that after removing those elements, the files differ in their total concept and feel and are not substantially similar.  ECF No. 1386-1-s (Astrachan Rpt.) ¶¶ 195–202.  For example, Professor Astrachan will testify that the two files have different purposes, perform different tasks, and are dissimilar in many ways.  *Id.* ¶ 197.  The similarities Oracle points to are a result of both files needing to pull data from the same database using a specific Cobol application programming interface (API) called PTPSQLRT.  *Id.* ¶ 198.  Thus, although it is not Rimini's burden to do so, Rimini will show at the hearing that these files are not substantially similar, and that no injunction violation occurred.

### b.   Even If There Was a Violation, Rimini Was in Substantial Compliance

Even if this single file is determined to contain Oracle expressive code and to be substantially similar to an Oracle file, a finding of contempt is not warranted.  Rimini has performed approximately ███ updates for PeopleSoft during the post-injunction period.  It produced nearly one million documents covering that time period and gave Oracle full access to its development and testing databases.  ECF No. 1374-3 ¶¶ 35–36, 41.  Yet, even if a violation is found with respect to this file (it should not be), this will be the *only* such file where Rimini allegedly copied a portion of an Oracle file onto its systems.  This *one* file demonstrates Rimini's substantial compliance with the injunction, not contempt for it.

### 2.   Rimini Should Not Be Held in Contempt with Respect to Alleged "Cross-Used" Updates

The Court also set for hearing four instances of alleged "cross-use."  ECF No. 1459 at 19–20, 24.  Each of these relates to a specific update implemented for one or two specific clients.  The evidence will show that no "cross-use" occurred.

### a.   The JHN Update Did Not Violate the Injunction

In its motion for order to show cause, Oracle argued that Rimini "cross-used" the City

of Eugene's ("COE" or "COEX") environment to test an update for Johnson Controls ("JHN"). ECF No. 1368-s at 18.  The Court stated that if Rimini tested the update "in COEX for Rimini client JHN[,] and … it was not tested in JHN's environment," this could be "cross-use."  ECF 1459 at 19–20.  The evidence will show, however, that (1) the update at issue concerns a change to the font size in an Adobe PDF, *not* any Oracle code; (2) the testing performed in COE's environment was for COE because COE needed this update; and (3) Rimini also implemented and tested the update for JHN separately using JHN's software.  No "cross-use" occurred.

The evidence will show that the update at issue attempts to fix a bug in the printing of a W-2 form. ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ Both of those fixes involve changing a setting in Adobe, not any modification of any Oracle file.  ECF No. 1386-1-s ¶ 278 (Astrachan Report).

████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

The evidence will further show that the modifications to JHN's template were implemented specifically for JHN and tested specifically with JHN, ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████

Oracle's "cross-use" concerns are unfounded.  To begin, all of the changes made to implement this fix were made in Adobe software—the fix did not even implicate PeopleSoft software.  ECF No. 1386-1-s ¶ 278 (Astrachan Report).  Further, while the Court has held that "cross-use" occurred where Rimini used Oracle tools to develop files and then sent those files "outright" to other clients using tools "without any testing or development in [those clients']

respective environments," none of those circumstances occurred here. *Rimini II*, ECF No. 1253 at 53–54; ECF No. 1459 at 18.[7]  The update was not developed using Oracle software, it was not sent from COE to JHN or to any other client, and the implementation and testing of JHN's update occurred in JHN's environment.

**b.**   **The rsi940a.sqr Updates for** ▮▮▮▮▮▮ **and** ▮▮▮▮▮▮ **Did Not Violate the Injunction**

Similarly, Oracle contends that Rimini tested a modification to the Rimini file rsi940a.sqr in COE's environment and then "sent" that file to all clients in scope.  ECF No. 1368-1-s ¶ 71; ECF No. 1459 at 19–20.  Oracle is wrong, and no "cross-use" occurred.

The update at issue, HCM200049, relates to federal tax Form 940 and its related Schedule A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Those forms changed slightly between tax years 2017 and 2018, and thus, in July 2018, Rimini determined that it would need to provide an update to nearly all of its U.S. clients related to those changes. ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at '536.

---

[7]  The Court made various rulings regarding its interpretation of Oracle license agreements and "cross-use" in *Rimini II* and in its show cause order, and Rimini will not re-argue all these points.  *See Rimini II*, ECF No. 1253; ECF No. 1385.  Rimini preserves those issues for appeal, and maintains that the conduct Oracle accused in these contempt proceedings is licensed and not infringing.  In particular, all copies and adaptations of Oracle software at issue were "authorize[d]" by Rimini's clients, who are "owner[s] of [the] copy of [the] computer program" they license from Oracle, and such copies and adaptations were "created as an essential step in the utilization of the computer program in conjunction with a machine and … in no other manner."  17 U.S.C. § 117(a).  Oracle licensees (Rimini's clients) pay "substantial consideration" for their licensed copy of software; the entire purpose of the software is to be "customized" to the licensee's "operations"; those copies are "stored" on servers owned or controlled by the licensee (not Oracle); and licensees have rights to perpetual possession of their copy.  *Krause v. Titleserv, Inc.*, 402 F.3d 119, 124 (2d Cir. 2005).  The licensees therefore exhibit all "'incidents of ownership,'" *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1183 (9th Cir. 2011) (quoting *Krause*), under Section 117, and the copies and modifications Rimini's clients authorized Rimini to make were, as a matter of law, "not an infringement" (17 U.S.C. § 117(a)), and therefore not a basis for contempt.  Rimini acknowledges that in *Rimini II* this Court held that the essential step defense cannot be invoked by licensees (*see Rimini II*, ECF No. 90 at 3–4), but submits that holding was in error.  *See also Rimini II*, ECF No. 1263 at 82–87.  The essential step defense precludes all of the alleged injunction violations here.

RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

1 █████████████████████████████████████

2 █████████████████████████████████████

3 ██████████████████████

| X | DC | • | × 0.000 | • | X | NY | • | × 0.000 | • |
|---|----|---|---------|---|---|----|---|---------|---|
| X | DE | • | × 0.000 | • | X | OH | 385,000.00 | × 0.000 | 2,310.00 |
| X | FL | • | × 0.000 | • | X | OK | • | × 0.000 | • |
| X | GA | • | × 0.000 | • | X | OR | • | × 0.000 | • |
| X | HI | • | × 0.000 | • | X | PA | • | × 0.000 | • |

7 ████████████████████████████████

8 █████████████████████████████████████

9 █████████████████████████████████████

10 ██████████████████████████████████████

11 ██████████████████████████████████████

12 ██████████████████████████████████████

13 ██████████████████████████████████████

14 ██████████████████████████████████████

15 ██████████████████████████████████████

16 ██████████████████████████████████████

17 ██████████████████████████████████████

18 ████

19 ████████████████████████████████

20 ██████████████████████████████████████

21 ██████████████████████████████████████

22 ██████████████████████████████████████

23 ██████████████████████████████████████

24 ████████████████████████████

25 ████████████████████████████████

26 ██████████████████████████████████████

27 ██████████████████████████████████████

28 ██████████████████████████████████████

1 [REDACTED]

2 [REDACTED]

3      These facts show that no "cross-use" occurred.  The update undisputedly did not contain

4 any Oracle software.  ECF No. 1368-1-s ¶ 71 ([REDACTED]

5 [REDACTED]); ECF Nos. 1392-1-s ¶ 31, 1386-1-s ¶ 279 (Astrachan Rpt.).  When Rimini tested

6 the update in COE's environment, it was doing so to support COE, which was in scope to

7 receive the update at that time.  The fact that the scope later changed does not turn that prior

8 testing into "cross-use."  Further, Rimini did not send any files from COE's environment to any

9 other environment.  Rather, [REDACTED]

10 because that Rimini-written work product does not contain any Oracle code.  Further, Rimini

11 tested each client's update in that client's specific environment.

12          c.       **The 1099 Update for Easter Seals Did Not Violate the Injunction**

13      On January 3, 2019, Rimini sent a .zip file containing a release, which is a bundle of

14 updates, to Easter Seals.  That release (18F07) is not alleged to contain any Oracle code or

15 copyrighted expression.  *See* ECF No. 1368-s at 23.  Oracle nevertheless contends that the

16 release is a derivative work and that creating the derivative work for Easter Seals violated the

17 injunction.  *Id.*

18      The Court declined to hold that the release was a derivative work, stating that "the Court

19 will not make a blanket ruling that every modification and every update that Rimini has created

20 for PeopleSoft is a derivative work."  ECF No. 1459 at 23.  It further held that even if it were a

21 derivative work, it may not be "unlawful" because derivative works are permitted by the

22 injunction absent "cross-use" or some other offense.  *Id.*  The Court noted that "[i]t is not clear

23 from the record before the Court where this update came from, where it was developed, and for

24 what client" and set those issues for hearing.  *Id.* at 24.

25      Oracle cannot establish that any violation occurred.  Although Rimini has no burden, it

26 will show at the hearing that the set of updates delivered to Easter Seals addressed updates to

27 IRS Forms 1099-INT and 1099-MISC for tax year 2018.  [REDACTED]

28 [REDACTED]

1   █████████████████████████████████████████████

2   █████████████████████████████████████████████

3   ████████████████████████████ *See*, *e.g.*, Ex. K.  Because none of

4 these files contains any Oracle code (ECF No. 1386-1 ¶ 318 & n.313), █████████

5   █████████████████████████████████████████████

6   █████████████████████████████████████████████

7   █████████████████████████████████████████████

8   █████████████████████████████████████████████

9   ████████████████████████████ ECF No. 1369-34.

10      These files are not derivative works.  To be a derivative work, the set of updates must

11 substantially and actually incorporate protected material from the preexisting work.  *Lewis*

12 *Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 968 (9th Cir. 1992); *see also Micro*

13 *Star v. Formgen*, 154 F.3d 1107, 1110 (9th Cir. 1998).  There is not even an *allegation* that

14 these files do so.  The files are Rimini-written.  They contain no Oracle expression, either literal

15 or non-literal.  *See Rimini II*, ECF Nos. 1297, 1302.  Moreover, unlike the update that this Court

16 found to be a derivative work in *Rimini II* (*Rimini II*, ECF No. 1253 at 52–53), these updates

17 were not created using PeopleSoft tools.  Oracle's argument thus fails at the outset.

18      Further, even if the files were derivative works, ████████████████

19   █████████████████████████████████████████████

20   █████████████████████████████████████████████

21   █████████████████████████████████████████████

22   ████████████ Ex. M at 1. █████████████

23   ████████████████████████████ *Id.* ████

24   █████████████████████████████████████████████

25   █████████████████████████████████████████████

26   █████████████████████████████████████████████

27   ████████████████████████████ ECF No. 1459 at 24. ██

28   █████████████████████████████████████████████

RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 2:10-CV-00106-LRH-VCF

Gibson, Dunn &
Crutcher LLP

1

2

3 ████

4     **d.**       **Update HCM200105 for Rockefeller Group and Home Shopping**

5                 **Network Did Not Violate the Injunction**

6       Oracle claimed that Rimini committed "cross-use" when it implemented update

HCM200105 for Rockefeller Group and Home Shopping Network.  The Court held that it was

7 not clear from the record whether the update was developed and tested in those clients' own

8 environments.  ECF No. 1459 at 27.  The evidence will show that the updates for each client

9 were developed and tested in those clients' own environments.  No "cross-use" occurred.

10       The evidence will show that HCM200105 is an update that addresses an Oregon state

11 quarterly tax reporting issue, which affects clients doing business in Oregon.  Ex. N.  The update

12 was originally developed in September 2018.  The update consists of ████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ██████████████████████████████████████ *E.g.,*

16 Ex. O at 1.  ███████████████████ not alleged to contain any Oracle code or

17 copyrighted expression.  ECF No. 1368-s at 28.  ██████████████████████

18 ████████████████████████████████████████

19 ██████████████████████████████

20 ██████████████████████████████████████

21 ████████████████████████████████████████

22 ████████████████████████████████████████

23 ██████████████████████████████████████████.[8] ████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26

27

28 [8] This Court held that "Rimini's Dev Instructions" were not "before the Court or held to be unlawful in *Oracle I*" and that "[i]t is inappropriate to make a determination as to the validity of these services for the first time in contempt proceedings."  ECF No. 1459 at 15.

Gibson, Dunn &
Crutcher LLP

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████

This was not "cross-use."  The update was implemented and tested in the recipient clients' environments to support those clients.  This update is very different from the COE update this Court found to be "cross-use" in its *Rimini II* summary judgment order because, unlike the COE update, the update here was not copied from a prototype client to another client, further development occurred in the clients' respective environments, and the update was also tested in the clients' respective environments.  *Cf.* ECF No 1459 at 18 *and Rimini II*, ECF No. 1253 at 53 (finding "cross-use" where, among other things, update was sent "outright" from one client's environment to other clients "without any testing or development in their respective environments").

> e. **Rimini Acted Reasonably and in Good Faith, and Substantially Complied with the Injunction**

Even if the Court were to find a violation of the injunction (it should not), Oracle cannot meet its burden to prove by clear and convincing evidence that Rimini failed to substantially comply with the injunction and failed to act based on a reasonable and good faith interpretation of the injunction.

*First*, as explained above, the small number of alleged incidents shows that Rimini substantially complied with the injunction.  Rimini overhauled its processes to comply with the Court's orders.  If errors were made with respect to a handful of updates, out of ████, that certainly does not show contempt for the Court's order.  It shows the opposite.

*Second*, even if the Court were to find a violation, Rimini's interpretation of the injunction, which led it to believe that these acts were permitted, was reasonable for all the reasons described above for why these updates were not in fact "cross-use."

> **3. Rimini Should Not Be Held in Contempt Regarding JDE Source Code**

Oracle argues that Rimini violated paragraph 8 of the injunction by "copying JDE

software source code" whenever it develops and tests updates (ECF No. 1459 at 24) and in two specific instances: a file (prvtsidx.plb) attached to a support ticket by a client, and a Rimini technical specification.  Oracle is wrong.  This Court held that "the parties' dispute over the definition of source code is material to the Court's ruling, and therefore, an evidentiary hearing on the issue is necessary before the Court can determine whether Rimini's conduct violates the injunction."  *Id.* at 25.  Rimini will demonstrate at the hearing that its interpretation is correct, and is the only interpretation consistent with Oracle's licenses.

### a.  Rimini Did Not Violate the Injunction

### (i)  Rimini's Modification of Open Code During Updates

Paragraph 8 of the injunction prohibits Rimini from copying "J.D. Edwards software source code to carry out development and testing of software updates."  Oracle's argument that Rimini violates this provision is based on an overbroad reading of "J.D. Edwards software source code" that encompasses code that is *intended* to be copied and modified.

The evidence will show that JDE licensees receive both "open code" and "closed code" portions of the software.  Open code is accessible to the licensee and *intended* to be modified and customized by the client so that it can be kept up to date with tax, legal, and regulatory changes.  Open code *must* be modified for the software to function properly, ███████████ ██████████████████████████████████████████████████████████████.  ECF No. 1386-3 ¶¶ 68–70.  Closed code, in contrast, is delivered in an obfuscated form and cannot be viewed without taking steps to reverse engineer or "decompile" it.

Oracle has contended that paragraph 8 prohibits Rimini from copying "open code," *i.e.*, the accessible code that Oracle intends for its licensees to modify to keep their software up to date.  All of Oracle's contempt allegations relate solely to Rimini's alleged copying of (including by merely *looking at*) JDE *open* code.  Oracle's arguments fail for multiple reasons.

*First*, interpreting paragraph 8 of the injunction to prohibit copying of (and thus even *looking at*) JDE open code creates a conflict with paragraph 10.  Paragraph 10 allows Rimini to "reproduce, prepare derivative works from, or use" a licensee's "J.D. Edwards software" to "develop or test software updates or modifications," so long as the update or modification is

not "for the benefit of any other licensee."  But Rimini *must* copy open code to develop such updates.  Thus, if paragraph 8 prevents Rimini from copying open code, paragraph 10 would be superfluous—Rimini would not be permitted to create software updates for a licensee at all under paragraph 8, even if they were not "for the benefit of any other licensee" under paragraph 10.  The injunction should not be read to contradict itself in that way.  *See* ECF No. 1459 at 26 ("[A] reading [that] would render other provisions of the injunction superfluous … would be an absurd result."); *W. Knight Foster P'ship v. Saratoga Data Sys., Inc.*, 2018 WL 1000373, at *3 (N.D. Cal. Feb. 21, 2018) (declining to read injunction provision in a manner that would render words superfluous).  Rimini's reading gives effect to both paragraphs:  under paragraph 8, Rimini would be prohibited from copying the source code underlying the "J.D. Edwards software" itself (*i.e.*, the closed code); under paragraph 10, Rimini would be prohibited from copying one licensee's JDE open code "for the benefit of any other licensee."

*Second*, precluding Rimini from copying (and thus even *looking at*) JDE open code would function as a total ban on Rimini providing JDE support.  It is undisputed that Rimini cannot create JDE updates without copying JDE open code, and that JDE could not run without these updates.  Thus, without the ability to reproduce open code, Rimini could not offer JDE support.  Such a result would contradict this Court's holding that it will not read the injunction to impose "a complete ban on Rimini support services" because "[t]hat was never the intention nor the purpose of the permanent injunction."  ECF No. 1459 at 26.[9]

*Third*, Rimini's ERP industry expert, Stephen Lanchak, unrebutted by any evidence (as Oracle has no industry expert), will explain at the hearing that—in the context of JDE support— "J.D. Edwards Software source code" means the proprietary "closed" code that is not intended to be modified.  Paragraph 8 prohibits Rimini from attempting to uncover and copy the "source code" of "JD Edwards software," *e.g.*, by decompiling the closed code to get at the source code underneath. ████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[9]   In addition, reading Oracle's licenses to implement a total ban on third-party support would constitute copyright misuse.  *See* ECF No. 1385-s at 28; *Oracle*, 879 F.3d at 957–58; *Alcatel USA Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999).

Gibson, Dunn &
Crutcher LLP

1   ████████████████████████████ ECF No. 1386-3 ¶ 70. ████████████████

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████ *Id.* ¶ 82.

6        *Fourth*, this Court held that the injunction enjoins only "*unlawful*, infringing conduct,"

7   and thus conduct permitted by Oracle's license agreements is not enjoined.  ECF No. 1459 at

8   23–24.  ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ██████████████

12       *Fifth*, this Court held that "the permanent injunction only enjoins conduct that has been

13  adjudicated unlawful," and that Rimini cannot be held "in contempt for conduct not yet

14  adjudicated in *Rimini II*."  ECF No. 1459 at 11.  The meaning of "J.D. Edwards software source

15  code" and whether Rimini copies that code was not adjudicated in *Rimini I* and therefore cannot

16  be the basis for contempt.

17             **(ii)**       **Prvtsidx.plb File**

18       Oracle also claimed that one example of Rimini "copying J.D. Edwards software source

19  code" was a file called prvtsidx.plb that Rimini produced during discovery to Oracle from its

20  support ticketing system.  Oracle failed to mention that that file was placed on Rimini's systems

21  by a client on December 5, 2018, contrary to Rimini's express warnings to clients not to do so.

22  There is no evidence that the file was used.

23       At the hearing, Oracle will be unable to prove that prvtsidx.plb is a JDE file at all.  Even

24  if it were, it consists of open code, and is not "J.D. Edwards software source code" for the

25  reasons explained above.  And, even if it were, a client's uploading of that file to Rimini's

26  ticketing system would not be a violation of the injunction because the client, not Rimini, copied

27  the file.  *See Tegal*, 248 F.3d 1376 at 1379–80; *Perfect 10*, 847 F.3d at 668.

28

Gibson, Dunn &
Crutcher LLP

### (iii)     JDE Technical Specification

Oracle claimed that Rimini copied Oracle code into a single JDE technical specification. ECF No. 1368-s at 25.  As an initial matter, even if that were true, the allegedly copied code is open code, so this would not be a violation.  But Oracle's claim is also highly misleading.

contains no expression

### b. Rimini's Interpretation of the Injunction Was Reasonable and in Good Faith

Even if the Court concludes that Rimini copied JDE software source code in violation of the injunction, Rimini's interpretation is at the very least reasonable. Rimini's interpretation gives effect to each paragraph of the injunction, while Oracle's renders a portion of the injunction superfluous. Rimini's interpretation is also supported by expert testimony, while Oracle's is not. Rimini's interpretation reconciles industry practice and ███████████ ██████████████████████████████████████████████████████, while Oracle's interpretation is hopelessly inconsistent. For all the reasons Rimini's interpretation of the injunction is correct, its interpretation is at the very least reasonable and in good faith.

## C. Sanctions Are Not Appropriate

Even if this Court were to find Rimini in contempt (it should not), well-settled law forecloses all of the sanctions sought by Oracle. Because Rimini will prove that it has engaged in no contumacious conduct, any discussion of sanctions is both premature and unnecessary; Rimini therefore sets forth here certain baseline principles.

If contempt is established, Oracle bears the burden to prove what sanctions, if any, are appropriate. *See Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union*, 721 F.3d 1122, 1129–30 (9th Cir. 2013). Any sanctions must be strictly compensatory—*i.e.*, "limited by [Oracle]'s actual loss." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366 (9th Cir. 1987); *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1994). Sanctions that "punish" Rimini for violating the injunction cannot be awarded. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). As such, if Oracle cannot show actual damage from the alleged violations, no sanctions may be awarded. *See U.S. Phillips Corp. v. KBC Bank N.V.*, 667 F. App'x 632, 633 (9th Cir. 2016); *accord In re Chase & SanBorn Corp.*, 872 F.2d 397, 400–01 (11th Cir. 1989).

While, in some cases, courts may go beyond compensatory sanctions and award forward-looking "coercive" sanctions to "compel compliance" with the injunction moving forward, they may not do so in civil contempt proceedings involving complex injunctions without heightened procedural protections, including a jury trial. *Ahearn*, 721 F.3d at 1129–30

Gibson, Dunn &
Crutcher LLP

(*Bagwell* held that "noncompensatory sanctions for violations of complex injunctions require[] heightened procedural protections including a jury trial and a beyond reasonable doubt burden of proof"); ECF No. 1389-s at 7–9. Noncompensatory sanctions are thus not available here.

Even if coercive sanctions could be awarded (they cannot), they must be "the *minimum sanction necessary to obtain compliance*." *Whittaker Corp.*, 953 F.2d at 517 (emphasis added); *Bright*, 596 F.3d at 696 (district courts "generally must impose the minimum sanction necessary to secure compliance"). Where, as here, the defendant has demonstrated a good faith willingness to comply with the Court's orders, *courts rarely impose sanctions*. *Compare DeMichiel v. AEG Live NJ, LLC*, 2018 WL 6074537, at *3 (C.D. Cal. Oct. 16, 2018) (giving contemnor the opportunity to comply with the contempt order, and stating that sanctions would be imposed only if it disobeyed) *and D.P.L. Enters., Inc. v. Green Air Direct, Inc.*, 2012 WL 6043277, at *2 (D. Nev. Dec. 4, 2012) (declining to "impose any sanctions" unless "defendant continues such continued intransigence") *and United States v. Anderson*, 2016 WL 1169309, at *4 (N.D. Cal. Mar. 25, 2016) (deferring imposition of sanctions and noting the party "will no longer be held in contempt" if he now complies with the underlying order), *with LegalForce RAPC WorldWide P.C. v. Demassa*, 2019 WL 5395038, at *5 (N.D. Cal. Oct. 22, 2019) (awarding coercive sanctions because contemnor "has repeatedly flouted [its] … obligations" under an injunction and refused "to follow th[e] Court's specific directions").

The sanctions Oracle requests are completely inappropriate. Oracle seeks court "impoundment of Rimini's infringing copies and computer systems." ECF No. 1368 at 29. Impoundment of Rimini's computers—which would seriously limit Rimini's ability to provide lawful support—is punitive, not compensatory, and is grossly disproportionate to the alleged violations. *See Whittaker Corp.*, 953 F.2d at 518 ("civil sanctions" must permit contemnor "to purge itself of the contempt").

Oracle conceded it has no evidence of actual, compensatory damages. ECF No. 1368-s at 30. It has not retained a damages or causation expert in these contempt proceedings to calculate any actual harm to Oracle. Oracle even sent a letter to Rimini during injunction compliance discovery stating it did not intend to seek damages as part of its motion for an order

to show cause.  ECF No. 1387-14 at 1.  Oracle is also not entitled to attorneys' fees because the vast majority of its contempt theories have been rejected, and those discrete issues that remain are relatively minor, and would, at best, show inadvertent violations.  *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 521 (E.D.N.Y. Nov. 26, 2004) (declining to exercise discretion to award attorneys' fees where "there was an effort to comply [with the court's injunction] and there is no evidence that the Defendants willfully or deliberately attempted to defy [the] injunction"); *City of Spokane v. World Wide Video of Wash., Inc.*, 2008 WL 11391133, at *1 (E.D. Wash. Jan. 7, 2008) (declining to award fees where neither party "acted in bad faith … and there was no finding of willful disobedience of a court order").

## V.    CONCLUSION

For the foregoing reasons, and the arguments and evidence to be presented at and after the September hearing, Rimini respectfully requests that the Court discharge the order to show cause.

Dated:  May 10, 2021

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Eric D. Vandevelde*
                              Eric D. Vandevelde

*Attorneys for Defendant*
*Rimini Street, Inc.*

Gibson, Dunn & Crutcher LLP