BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:     702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:     202.223.7300
Facsimile:     202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:     415.442.1000
Facsimile:     415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     650.506.4846
Facsimile:     650.506.7114
dorian.daley@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>Defendants. | Case No. 2:10-cv-0106-LRH-VCF<br><br>**ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 3

    A.    Rimini Violated the Injunction ................................................................ 3

    B.    The Injunction, Fully in Force, Is Based on Years of Discovery, Careful Factual Findings, and Guidance from the Ninth Circuit .................................................... 3

        1.    At every step, Rimini has represented to its employees, customers, and the public that it is business as usual ................................................ 3

        2.    Rather than demonstrate its compliance with the Injunction, Rimini stonewalled Oracle for months ................................................ 5

    C.    Even Without Full Discovery into Rimini's Support Processes, Oracle Identified Injunction Violations Warranting Contempt ................................ 5

III.    RIMINI SHOULD BE HELD IN CONTEMPT FOR ITS ADJUDICATED VIOLATIONS OF THE INJUNCTION ................................................................ 7

    A.    Rimini Should Be Held in Contempt for the PeopleSoft Software and Documentation on Its Systems ................................................................ 8

    B.    Rimini Should Be Held in Contempt for its Cross-Use of Updates Related to Matheson Trucking .................................................................. 12

    C.    Rimini Posits an Erroneously Narrowed Definition of Cross-Use ...................... 14

IV.    RIMINI SHOULD BE HELD IN CONTEMPT FOR THE ADDITIONAL PEOPLESOFT CONDUCT FOR WHICH THE COURT ORDERED RIMINI TO SHOW CAUSE ...... 16

    A.    Rimini Violated the Injunction When It Copied Protected Oracle Expression into RSPCMPAY.cbl ...................................................................... 16

    B.    Rimini Violated the Injunction When It Cross-Used COEX to Resolve a Support Case for Customer Johnson Controls (JHN) ...................................... 17

    C.    Rimini Violated the Injunction When It Cross-Used COEX to Develop and Test Updates to rsi940a.sqr for Spherion (SPH) and Smead (SME) .......................... 19

    D.    Rimini Violated the Injunction in Developing and Distributing Its 1099 Derivative Work Update to Easter Seals ........................................................ 20

i

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

    E.    Rimini Violated the Injunction in Cross-Using Its "One Code for All" rsiqtrtx.sqr

4

        File to Deliver HCM200105 to Rockefeller Group and Home Shopping

        Network .......................................................................................................... 22

5

V.    RIMINI SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE INJUNCTION'S

6

    JD EDWARDS PROHIBITIONS ..................................................................................... 23

7

    A.    Rimini Copies "J.D. Edwards Software Source Code" ........................................ 23

8

    B.    Rimini Copied "J.D. Edwards Software Source Code" into Its Technical

9

        Specifications ..................................................................................................... 26

10

VI.    RIMINI HAS NOT SUBSTANTIALLY COMPLIED WITH THE INJUNCTION ....... 27

11

VII.    IMPOUNDMENT/ESCROW, COMPENSATORY DAMAGES, AND ATTORNEYS'

    FEES ARE APPROPRIATE REMEDIES ..................................................................... 29

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1
2
**TABLE OF AUTHORITIES**
3
**Page(s)**
4
**Cases**

5
*Atari Interactive, Inc. v. Redbubble, Inc.*,
--- F. Supp. 3d ----, 2021 WL 706790 (N.D. Cal. 2021) ........................................................ 10
6
*Black Lives Matter Seattle-King County v. City of Seattle, Seattle Police Dep't*,
7
--- F. Supp. 3d. ----, 2021 WL 289334 (W.D. Wash. Jan. 28, 2021) ..................................... 28
8
*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) ................................................................................................. 17
9
10
*Computer Assocs. Int'l v. Quest Software, Inc.*,
333 F. Supp. 2d 688 (N.D. Ill. 2004) ..................................................................................... 16
11
*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v. Countrywide Fin.*
12
*Corp.*,
984 F. Supp. 2d 1021 (C.D. Cal. 2013) .................................................................................. 17
13
14
*F.T.C. v. Affordable Media, LLC*,
179 F.3d 1228 (9th Cir. 1999)................................................................................................... 7
15
*Helfand v. Gerson*,
16
105 F.3d 530 (9th Cir. 1997) ................................................................................................... 29
17
*Henry Schein, Inc. v. Certified Bus. Supply, Inc.*,
No. SA CV 03-1662, 2008 WL 9452685 (C.D. Cal. Aug. 20, 2008) ..................................... 28
18
19
*Institute of Cetacean Research v. Sea Shepherd Conservation Society*,
774 F.3d 935 (9th Cir. 2014).................................................................................................... 10
20
*Kelly v. Wengler*,
21
822 F.3d 1085 (9th Cir. 2016) ................................................................................................. 28
22
*Lee v. United States*,
Case No. 2:14-cv-00606, 2016 WL 3360653 (D. Nev. June 9, 2016).................................... 29
23
24
*Micro Star v. Formgen Inc.*,
154 F. 3d 1107 (9th Cir. 1998) ................................................................................................ 21
25
*Micro-Sparc, Inc. v. Amtype Corp.*,
26
592 F. Supp. 33 (D. Mass. 1984) ............................................................................................ 27
27
*Oracle USA, Inc. v. Rimini Street, Inc.*,
879 F.3d 948 (9th Cir. 2018).................................................................................................... 15
28

iii

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led
    Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) ................................................. 17

*S.E.C. v. Fujinaga*,
    No. 2:13-cv-1658, 2020 WL 3050713 (D. Nev. June 8, 2020) ................................. 7

*Tegal Corp. v. Tokyo Electron Co.*
    248 F.3d 1376 (Fed. Cir. 2001) ............................................................................. 10

*Vernor v. Autodesk, Inc.*,
    621 F.3d 1102 (9th Cir. 2010) ............................................................................... 19

*W. Water Mgmt., Inc. v. Brown*,
    40 F.3d 105 (5th Cir. 1994) ................................................................................... 26

*Wallis v. Greyhound Lines, Inc.*,
    No. CV 19-3448, 2020 WL 7248368 (C.D. Cal. Nov. 9, 2020) ............................ 10

**Statutes**

17 U.S.C. § 117 ............................................................................................................. 19

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1

## I.      INTRODUCTION

2      The Court's March 31, 2021, Order to Show Cause directed Rimini "to show cause why it

3 should not be held in contempt for violating the permanent injunction."  ECF No. 1459 at 35.

4 Rimini's response ("Response") fails to do so.  Instead, Rimini blames others for its violations of

5 the Injunction, claims that Rimini demonstrated "substantial compliance" simply because of the

6 volume of Rimini's support practices, and excuses infringement of JD Edwards software through

7 feigned confusion about the term "source code."  Rimini largely lacks testimony or record

8 evidence for these assertions, ignoring the directive to show cause and vaguely alluding to what

9 unspecified evidence might show at the hearing.  The evidence Rimini does supply with its

10 Response confirms that Rimini has violated the Injunction numerous times by reproducing and

11 using PeopleSoft software and documentation on its computer systems, cross-using PeopleSoft

12 software, and copying JD Edwards source code.  Rimini is engaging in the same conduct this

13 Court has repeatedly held unlawful.

14      Rimini's claims of substantial compliance, unaccompanied by evidence, are simply the

15 most recent reprise of Rimini's "Process 2.0" story.  Rimini claims it revised its practices into

16 "Process 2.0" in 2014, which is a year before the jury rendered a verdict in Oracle's favor, and

17 before any injunction issued.  Rimini also contends that its Injunction violations were based on a

18 reasonable and good faith interpretation of the Injunction.  But all that Rimini offers are these

19 tortured readings of the Injunction's many prohibitions:

20
   - Rimini blames its customers for the PeopleSoft files on its systems that this Court found
21      to violate the Injunction, despite the evidence showing that Rimini used or reproduced
       those files.

22
   - Rimini mischaracterizes its cross-use Injunction violation regarding Matheson Trucking as
23      merely the "reus[e] [of] knowledge and work product."  Response at 13.

24
   - Rimini wrongly asserts the only cross-use adjudicated by this Court and the jury was
25      "using *generic* environments to create updates containing Oracle code that were then sent
       to multiple clients."  *Id.* at 14 (emphasis in original).

26
   - Rimini argues that its cross-use violations should be excused because even though Rimini
27      *developed* particular updates through cross-use, it performed some modicum of *testing* in
       the beneficiary recipients' PeopleSoft environments.

28

1

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    • Rimini argues that the Injunction's prohibition on copying "J.D. Edwards source code"
2        distinguishes between what Rimini calls "open code" and "closed code," even though
         ████████████████████████████████████████████████████████████████████
3        ████████████████████████████████████████   ECF No. 1405-1-s at 173:8–174:11.

4        That Rimini so willingly distorts the meaning of the Injunction—after the Ninth Circuit

5    held that it "clearly sets out what conduct is restricted" (ECF No. 1236 at 5)—shows precisely

6    why Rimini should be held in contempt.

7        Rimini also argues that it should not be held in contempt because there are only a "small

8    number" of Injunction violations to be confirmed at the September 20, 2021, hearing.  In fact, the

9    violations that Rimini admitted, as well as those that Oracle will be prepared to prove at the

10   hearing, are numerous and exemplary of business practices "built entirely on its infringement of

11   Oracle's copyrighted software." ECF No. 1164 at 6.  Rimini's violations of the Injunction are

12   substantive, central to what the Injunction forbids, and especially with respect to copying JD

13   Edwards source code, systemic throughout its support processes.

14       Nor can Rimini claim that the violations of the Injunction that Oracle did uncover are

15   unrepresentative of its overall support practices because the discovery in this case was

16   substantially circumscribed at Rimini's urging.  Rimini resisted the production of documents,

17   depositions, and third-party subpoenas at every turn in these contempt proceedings, and

18   ultimately persuaded the Court to limit discovery in these proceedings.  For example, while

19   Rimini touts its purported efforts to inform its employee about the Injunction, Rimini fails to

20   mention that it refused to tell Oracle what efforts, if any, it made to inform its employees or to

21   attempt to comply with the Injunction.  Oracle only learned this most basic Injunction-compliance

22   information after a successful motion to compel.

23       Rimini also makes no showing as to why it could not have complied with the Injunction,

24   as required when a party has been found to have committed Injunction violations.  Rimini could

25   have complied with the Injunction, but instead chose not to, adopting a cavalier attitude toward

26   the Injunction as evidenced by Rimini's public statements and refusal to provide information

27   about its Injunction compliance.  This Court should find Rimini in contempt and either impound

28   Rimini's computer systems or require that they be placed in escrow to allow monitoring by

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    Oracle for additional Injunction violations.

2    **II.      FACTUAL BACKGROUND**

3         **A.      Rimini Violated the Injunction**

4         In its Order to Show Cause, the Court held that Rimini violated the Injunction in at least

5    two ways.  First, Rimini has PeopleSoft software and user documentation on its systems.  ECF

6    No. 1459 at 22–23.  Second, Rimini cross-used update HCM200049 by delivering it to customer

7    Matheson Trucking without developing or testing the update in that customer's environments.  *Id.*

8    at 26–27.  The Court also ordered an evidentiary hearing on eight other issues.  *See generally, id.*

9         **B.      The Injunction, Fully in Force, Is Based on Years of Discovery, Careful
             Factual Findings, and Guidance from the Ninth Circuit**

10

11        Oracle brought this lawsuit in January 2010, prevailed on partial summary judgment in

12   2014, and at trial in 2015, establishing that Rimini infringed all 93 of Oracle's copyrights-in-suit

13   on two primary grounds: cross-use and violation of the facilities restriction.  ECF No. 474; ECF

14   No. 896.  This Court entered an injunction in 2016, and after an initial appeal and a limited

15   remand, entered the Injunction in 2018.  ECF No. 1164; ECF No. 1166; ECF No. 1111.

16        These rulings, and their underlying briefings, were based on numerous discovery

17   responses, emails, and deposition and trial testimony.  *See, e.g.,* ECF No. 474 at 13, 26, 27; ECF

18   No. 242; ECF No. 261; ECF No. 476 at 13; ECF No. 411; ECF No. 438; ECF No. 1049 at 5–6;

19   ECF No. 1164 at 13.  The Ninth Circuit substantially affirmed the Injunction on appeal,

20   reiterating that it "clearly sets out what conduct is restricted."  ECF No. 1236 at 5.  But Rimini

21   has continued to operate as if the Injunction were a contract that it can interpret as it sees fit and

22   that it can breach when efficient for Rimini to do so.

23             **1.      At every step, Rimini has represented to its employees, customers, and
                   the public that it is business as usual**

24

25        After the Injunction took effect in 2018, Rimini called the Injunction vague and

26   overbroad, and ███████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████ Declaration

28   of Jacob Minne ("Minne Decl.") ¶ 2, Ex. 4 (Depo Ex. 1832); ECF No. 1369-7-s.  After the Ninth

                                              3

Circuit affirmed the Injunction in relevant part, Rimini told the public only about purported errors that the Ninth Circuit had corrected, and claimed that it "had voluntarily stopped using the legacy processes that were found to be infringing before the 2015 trial and before the District Court issued an injunction barring the use of those legacy processes in 2018."  Minne Decl. ¶ 3, Ex. 5.

The day this Court ruled that Rimini violated the Injunction, Rimini issued a press release entitled "Court Rules in Rimini Street's Favor on Key Matters, Denies Oracle's Motions and Cites 'Common Sense' and 'Absurd Result' in Denying Oracle's Claim."  Minne Decl. ¶ 4, Ex. 6. Rimini did not mention it was facing contempt for violating a permanent injunction issued by a federal court.  Company CEO Seth Ravin repeated these claims during a May 10, 2021, earnings call and told the public that the Court had "affirmed that there has been no finding of infringement by the court of the company's enterprise software support process 2.0 or Automation Framework, AFW tools …."  Minne Decl. ¶ 5, Ex. 7.  This is flatly contradicted by the Court's Order to Show Cause: "In relevant part, the Court held that ***Rimini had infringed four of Oracle's copyrights … while following its new Process 2.0 support services*** for its clients Campbell Soup and City of Eugene."  ECF No. 1459 at 6 (emphasis added).[1]

The Court held that Rimini's conduct under its purported "2.0 process" can both infringe Oracle's copyrights and violate the Injunction.  ECF No. 1459 at 17–18; *Rimini II*, ECF No. 1253 at 38–65.  And Rimini has not significantly changed those processes as part of its post-Injunction compliance efforts.  Rimini refers only to two changes it allegedly made: 1) keeping PeopleSoft environments off its systems, and 2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Response at 3 (citing ECF No. 1385 at 5 and ECF No. 1385-2-s ¶ 43 & n.2).  These changes are insufficient.  As the Court's Order to Show Cause confirms, Rimini also violated the Injunction by doing the same things it has been doing since the inception of this litigation: having PeopleSoft copyrighted materials on its systems and supporting customers through cross-use.

---

[1] Mr. Ravin even implied this case is complete and that the evidentiary hearing was set solely to address Rimini's motion for reconsideration.  Minne Decl. Ex. 7 ("The parties are also engaged in a dispute over a permanent injunction that has been in place since 2018 … We have filed a motion with the court to correct the errors.  The court has scheduled an evidentiary hearing in September 2021.").

4

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

**2.     Rather than demonstrate its compliance with the Injunction, Rimini stonewalled Oracle for months**

Shortly after this Court and the Ninth Circuit rejected Rimini's request to stay the Injunction pending appeal, ECF No. 1177 at 3; ECF No. 1180 at 1, Oracle contacted Rimini ████ ████████████████████████████████████████████████ ECF No. 1201-8-s at 2–3. Oracle asked Rimini ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.* at 3.  Oracle also sought to discuss a process by which Rimini would preserve certain materials and copy them to escrow at Oracle's expense, and to modify the protective order to use *Rimini II* discovery in *Rimini I.  Id.* █████████████████████████████████████████ ████████████████████████████ ECF Nos. 1201-9-s, 1201-11-s. ████████████████████ ████████████████████████████████████████████████████████████ █████████████████████ *Id.*

Rimini then delayed discovery proceedings for four months with procedural maneuvering. When Oracle sought to modify the Protective Order in *Rimini II*, so that the vast discovery from that case could be used in this Injunction-compliance proceeding, Rimini argued to Magistrate Judge Hoffman that it would be improper to use that material in this case.  *Rimini II,* ECF No. 1228; *Rimini II,* ECF No. 1234; *contra Rimini II,* ECF No. 1237 (granting Oracle's motion). When Oracle sought Injunction-compliance discovery in this case, Rimini argued to Magistrate Judge Ferenbach that such discovery was unnecessary because Oracle could use all of the discovery material from *Rimini II*.  ECF No. 1218 at 16:7–10, 20:2–6, 25:3–16, 30:1–31:8. Unsurprisingly, Rimini did not inform Magistrate Judge Ferenbach that it had taken the exact opposite position before Magistrate Judge Hoffman (who had not yet ruled on the issue).

**C.     Even Without Full Discovery into Rimini's Support Processes, Oracle Identified Injunction Violations Warranting Contempt**

Oracle's Motion for Order to Show Cause contains sufficient evidence of violations of the Injunction to support a show-cause order and a contempt finding.  Rimini claims that the Injunction violations identified in Oracle's Motion are limited to "isolated" instances.  Response

5

1   at 7–8.  But Oracle identified numerous Injunction violations within the circumscribed support

2   processes that it was permitted to review.

3         Although Magistrate Judge Ferenbach granted Oracle's Motion for Limited Discovery, he

4   further curtailed Oracle's already-limited request.  ECF No. 1201; ECF No. 1218 at 42:12–43:2,

5   53:2–11, 56:8–15.  He agreed with Rimini's argument that only "limited" discovery was

6   necessary to determine whether Rimini was in contempt.  ECF No. 1218 at 32:18–25 ("You get

7   enough evidence to prove your case, you don't have to keep going on and on and on getting

8   evidence in if you want Judge Hicks to find they're in contempt."); ECF No. 1256 at 25:11–15,

9   28:1–11 (Rimini: "we have agreed, we have agreed to some custodial discovery").

10         Yet Rimini resisted the production of any custodial documents, claiming all custodial

11   documents were irrelevant, *id.* at 20:12–15, 25:16–22, forcing Oracle to bring a motion to compel

12   production of documents from nineteen custodians.  As Oracle explained:

> [c]ustodial documents have been key throughout this litigation in establishing Rimini's
> actual practices—as opposed to what Rimini claims to be doing.  Over and over, custodial
> documents have shown that Rimini's claims about its practices are false.  Three days ago,
> in materially rejecting Rimini's appeal of the Injunction, *the Ninth Circuit found that
> "Rimini's internal emails" were powerful evidence supporting the Injunction's issuance.*

16   ECF No. 1239 at 1–2 (emphasis added); *see also id.* at 10–12.  Magistrate Judge Ferenbach

17   granted the motion in part, but limited Oracle to ten custodians, less than 1% of Rimini's "1,400

18   employees," and Oracle was not permitted to depose any individual witness beyond a single Rule

19   30(b)(6) deposition.  ECF No. 1256 at 40:9–41:9; ECF No. 1255; ECF No. 1232.  Rimini

20   designated one witness to testify on all 30(b)(6) topics, and thus, Oracle received only seven

21   hours of deposition testimony.  Oracle also was limited to five third-party subpoenas to Rimini

22   customers—*i.e.*, less than 2% of Rimini's post-Injunction PeopleSoft and JD Edwards customers.

23   ECF No. 1232.[2]  As shown below, in these contempt proceedings Oracle received only a small

24   fraction of the discovery that it received in connection with the *Rimini I* trial or the *Rimini II* case:

25

26

27

28                       
[2] Oracle was also permitted only 30 pages of briefing and 250 pages of exhibits for its Motion.
ECF No. 1349 at 2.

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

| | *Rimini I* | *Rimini II* | *Rimini I* Post-Injunction |
|---|---|---|---|
| Custodians | 54 | 50 | 10 |
| RFPs | Unlimited Oracle served 98 Rimini served 57 | Unlimited Oracle served 272 Rimini served 346 | 15 |
| RFAs | 250 | 175 | 10 |
| Interrogatories | 40 | 35 | 5 |
| Depositions (party) | 25 | 25 | 1 |
| Depositions (non-party) | 20 | 35 | 5 subpoenas for document production or testimony |
| Third-Party Subpoenas | Unlimited | Unlimited | |
| Number of Third-Party Productions Received | 317 | 607 | 5 |

The evidence that came out of this limited discovery shows that Rimini has violated the Injunction. Yet Oracle still does not know the full extent of Rimini's contempt because Oracle has not received full discovery into Rimini's support processes (which would require discovery similar to what Oracle received in *Rimini I* and *Rimini II*). There is no basis for Rimini's assertion that the unexamined portions of its support processes comply with the Injunction; rather, the presumption should run the other way.[3]

## III.   RIMINI SHOULD BE HELD IN CONTEMPT FOR ITS ADJUDICATED VIOLATIONS OF THE INJUNCTION

"The standard for finding a party in civil contempt is well settled" and Rimini's Response ignores it: "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citations and quotations omitted); *S.E.C. v. Fujinaga*, No. 2:13-cv-1658, 2020 WL 3050713, at *3 (D. Nev. June 8, 2020). At least as to the Injunction

---

[3] On May 11, 2021, Rimini produced over 29 gigabytes of documents, one of the largest productions of documents that Rimini made during post-Injunction discovery in this case. This production "includes Salesforce data for all cases for the J.D. Edwards and PeopleSoft product lines that were open at any time between November 5, 2018 … and September 10, 2019." ECF No. 1471 at 2. Other than claiming "error," Rimini offers no explanation as to why this massive production of documents arrives now, months after the close of expert discovery and the filing of Oracle's OSC Motion. *Id.* Oracle reserves all rights with respect to this untimely production.

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1   violations that the Court found in its Order to Show Cause regarding (1) PeopleSoft files and

2   documentation on Rimini's systems and (2) Rimini's cross-use in delivering HCM200049 to

3   Matheson Trucking, Rimini has the burden to demonstrate why it should not be held in contempt.

4        Rimini's Response fails to show cause as to why it should not be held in contempt for

5   these violations of the Injunction.  Rimini offers boilerplate "evidence will show" recitations,

6   many of which are unsupported by evidence or citations to the discovery record.  After calling its

7   violations "regrettable," Rimini pivots to the same "Process 2.0" story from its prior filings.  This

8   Court should not permit Rimini to keep reciting the same, false narratives to its investors, the

9   Court, and the public.  This Court should hold Rimini in contempt.

10       **A.    Rimini Should Be Held in Contempt for the PeopleSoft Software and Documentation on Its Systems**

11

12       In February 2014, this Court ruled that Rimini infringed Oracle's copyrights by

13  maintaining local copies of PeopleSoft software on its computer systems.  ECF No. 474 at 8–20.

14  Seven years later in its Order to Show Cause, the Court ruled that "Rimini is violating the

15  permanent injunction" by maintaining "the 'psptaxdt.dms' source code file and emails containing

16  PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents" on its systems.

17  ECF No. 1459 at 22–23.  Rimini is engaging in the same unlawful conduct as before.

18       The Court further directed in its Order to Show Cause that "at the hereafter hearing, the

19  parties will not be permitted to re-argue the at-issue conduct."  *Id.* at 23.  Yet that is exactly what

20  Rimini attempts to do in its Response.  The Court should disregard this re-arguing of the predicate

21  facts, which further underscores the need for a contempt sanction.

22       ***Psptaxdt.dms***.  Rimini blames customer R.R. Donnelley for sending the "psptaxdt.dms"

23  file to Rimini on March 27, 2019, "as part of a support request."  Response at 8 (citing ECF No.

24  1386-9-s at 2).  But the Response ignores that ████████████████████ R.R.

25  Donnelley ████████████████  After this customer attached the file to an email ██

26  ████████████████  Rimini wrote to R.R. Donnelley on March 28, stating:

27  ████████████████████████████████

28  ████████████████  Declaration of Barbara Frederiksen-Cross ("BFC Decl.") ¶¶ 2–
                                                           8

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    11, Ex. 1.  Rimini's ██████████████ of the psptaxdt.dms file (at minimum by making

2    RAM copies) violates Paragraph 5 of the Injunction.

3         ***Rimini's Internal Forwarding of PeopleSoft Documentation***.  Rimini blames ██

4    ████████ for "plac[ing] the [PeopleSoft] files on [Rimini's] own system."  Response at 9.  This

5    is incorrect.  ████████████████████████████████████  Rimini Ex. A

6    ██████████████████████████████████████████████.

7    Furthermore, Rimini internally forwarded eight PeopleSoft documents to two other Rimini

8    employees, reproducing each document at least three times (*i.e.*, in the two recipients' inboxes

9    and in the sender's sent folder) and further admits to uploading these documents to an

10   environment associated with ██████████.  *See id.*; Response at 9.  These multiple

11   reproductions of PeopleSoft documentation are further violations of Paragraph 5.

12        ***Rimini's Movement of PeopleSoft Documentation to ShareFile***.  Oracle's expert, Ms.

13   Frederiksen-Cross, identified two additional instances of PeopleSoft documentation on Rimini's

14   systems in her declaration supporting Oracle's OSC Motion.  ECF No. 1368-1-s at ¶ 82; ECF No.

15   1335-1-s at ¶ 201 & nn. 209–10 (identifying Bates numbers).  Rimini again seeks to shift the

16   blame to a customer, claiming that ██████████████ sent these PeopleSoft documents to

17   Rimini.  But the PeopleSoft documents that Ms. Frederiksen-Cross identified were <u>not</u> email

18   attachments; they came from Rimini's ██████████████.  Minne Decl. ¶¶ 6–7, Ex. 8

19   (RSI007954243), Ex. 9 (RSI007954231).  Thus, even if Rimini's assertion is true, Rimini took

20   the extra step of further copying these PeopleSoft documents from one of its employees' email

21   accounts to its ██████████████—additional reproductions in violation of the Injunction.

22        ***Rimini's Local Copies of PeopleSoft Files Do Not Substantially Comply with the***

23   ***Injunction***.  Under Paragraph 5 of the Injunction, Rimini "shall not reproduce, prepare derivative

24   works from, or use PeopleSoft software or documentation on, with, or to any computer systems

25   other than a specific licensee's own computer systems."  Injunction ¶ 5.  In its Response, Rimini

26   does not explain why it failed to comply with this prohibition with respect to local copies of

27   PeopleSoft files on its systems.  Rimini asserts that "[i]t repeatedly reminds clients of their

28   obligation *not* to send Rimini any third-party copyrighted files."  Response at 11 (emphasis in

1  original).  Yet Rimini did not identify a single such reminder or correction that it gave to R.R.

2  Donnelley, ████████████████████████████.  And Rimini concedes that "[d]espite

3  [its] instructions, clients do occasionally send such material to Rimini."  ECF No. 1382 at 9.

4  Rimini also failed to identify any efforts to quarantine or otherwise sequester the copyrighted

5  PeopleSoft material at issue in these instances, despite claiming to train its employees on the

6  requirements of its Acceptable Use Policy and Rimini's supposed efforts to monitor compliance.

7  Response at 3, 11; Minne Decl. ¶¶ 8–9, Ex. 10 (Depo Ex. 1835) at RSI007115500 ██████

8  ████████████████████████████████████████████████████

9  ████████████, Ex. 11 (Mackereth Rule 30(b)(6) Depo.) at 72:6–16 ████████████

10 ████████████████████████████████████████████████.

11      Instead of sequestering the files, in the three instances where the Court found violations,

12 Rimini deliberately made *additional* copies of the files or ████ them to provide support to the

13 customer.  The evidence is directly contrary to Rimini's claim that its "violations were not

14 willful" and there was no "volitional conduct."  Response at 11.  Even if Rimini could show that

15 these violations were not willful (and it cannot), this Court has already ruled that "the absence of

16 willfulness does not relieve from civil contempt."  ECF No. 1459 at 22.  Volitional conduct is

17 likewise satisfied with proof of proximate causation, which is plainly met here.  *Atari Interactive,*

18 *Inc. v. Redbubble, Inc.*,  --- F. Supp. 3d ----, 2021 WL 706790, at *13–14 (N.D. Cal. 2021)

19 (genuine issues for trial where the defendant "exercises control over every aspect of the sale …

20 and thus holds the best position to prevent [copyright] infringement").[4]

21      Finally, Rimini claims that its migration of Oracle software environments and "efforts to

22 remove hundreds of environments, including millions of files, from its systems and revise its

23 support processes demonstrate its compliance."  Response at 10.  But Rimini's migration ended in

24 _____

25 [4] Rimini's additional authority is likewise inapposite.  The Ninth Circuit distinguished *Tegal Corp. v. Tokyo Electron Co.* 248 F.3d 1376, 1379 (Fed. Cir. 2001), as holding "only that a party

26 enjoined from 'facilitating' infringement of a patent cannot be held in contempt merely for failing to prevent another's infringement, absent an affirmative act of facilitation."  *Institute of Cetacean*

27 *Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 952 (9th Cir. 2014).  *Wallis v. Greyhound Lines, Inc.*, No. CV 19-3448, 2020 WL 7248368, at *2 (C.D. Cal. Nov. 9, 2020), dealt

28 with third-party discovery disputes not relevant here.

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    2014.  That migration cannot be used to show compliance with an Injunction that issued in 2018.

2            ***Additional Violations of Paragraph 5 of the Injunction***.  Rimini misleadingly suggests

3    that the PeopleSoft files and documentation on its systems are limited to "11 isolated files sent by

4    clients to Rimini in three incidents."  Response at 10.  Oracle's technical expert identified

5    multiple other examples of PeopleSoft files on Rimini's systems.  Given the page limitation in its

6    OSC Motion, Oracle limited its presentation of these types of Injunction violations to specific

7    examples.  Oracle is prepared to present additional examples of violations of Paragraph 5

8    (developed during discovery) at the hearing if the Court believes that doing so is appropriate.

9            Rimini argues that presenting evidence about these additional violations of the Injunction

10    at the September 20, 2021, evidentiary hearing "would upend the Court's show-cause procedure

11    and violate due process."  Response at 5–6 n.4.  Rimini is incorrect.  Additional examples of

12    PeopleSoft files on Rimini's systems were disclosed to Rimini over a year ago during post-

13    Injunction expert discovery.[5]

14            *First*, Ms. Frederiksen-Cross ██████████████████

15    ████████████████████████████████ BFC Decl. ¶ 13, Ex. 2 (BFC Rpt. ¶ 328 & n.358);

16    Minne Decl. ¶¶ 10–11, Ex. 12 (RSI007291141), Ex. 13 (RSI007291146).  Rimini appears not to

17    have told the customer that emailing PeopleSoft code was prohibited.  Rimini also ███████████

18    ██████████████████████████████ Minne Decl. ¶ 12, Ex. 14 (RSI007291065).[6]

19            *Second*, Ms. Frederiksen-Cross identified the following examples of files on Rimini's

20    Salesforce system that are ██████████████████████

| Bates Number | Candidate Filename | Oracle Filename | Percentage Match | Salesforce |
|---|---|---|---|---|
| RSI007486983 | ████████ | ████████ | 96% | ███ |
| RSI007487681 | ████████ | ████████ | 97.66% | ███ |
| RSI007539876 | █████ | ████████ | 98.95% | ███ |

[5] Furthermore, to the extent the Court is not inclined to consider these files as additional Injunction violations in connection with these OSC proceedings, they are nonetheless relevant evidence refuting Rimini's allegations of substantial compliance and its claim that its Injunction violations are somehow isolated in nature.

[6] Oracle has also located additional PeopleSoft documentation on Rimini's systems.  *See, e.g.*, Minne Decl. ¶¶ 13–14, Ex. 15 (RSI007494527), Ex. 16 (RSI007494523) (customer email).

11

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

| | | | | 99.42% | |
|---|---|---|---|---|---|
| RSI007539877 | ███ | ███ | | 99.42% | ███ |
| RSI007543542 | ███ | ███ | | 100% | ███ |
| RSI007543543 | ███ | ███ | | 99.77% | ███ |
| RSI007543544 | ███ | ███ | | 100% | ███ |
| RSI007600178 | ███ | ███ | | 97.14% | ███ |
| RSI007600179 | ███ | ███ | | 99.94% | ███ |

BFC Decl. Ex. 2 (BFC Rpt. ¶ 372).  Each of these PeopleSoft files on Rimini's systems is a further violation of Paragraph 5 of the Injunction.[7]

   **B.    Rimini Should Be Held in Contempt for its Cross-Use of Updates Related to Matheson Trucking**

   In February 2014, this Court ruled that Rimini infringed Oracle's copyrights by developing fixes and updates in one customer's environment that were distributed to other customers.  ECF No. 474 at 12–13.  Rimini continues to engage in the same unlawful cross-use of Oracle's PeopleSoft software.  The Court found in its Order to Show Cause that Rimini's "update HCM200049, delivered to Rimini's client Matheson Trucking, without any indication it was developed or tested in that client's environment, is a clear violation of the permanent injunction."  ECF No. 1459 at 26.  Rimini spends nearly three pages challenging the Court's findings on this issue—albeit based on arguments the Court has already rejected.  Response at 12–14.

   ***Rimini's Admitted Cross-Use.***  Rimini developed and tested ████████████ ████████████████ (Response at 12), thus reproducing and using the associated PeopleSoft software, including RAM copies.  Rimini's documents confirm ██████████ ███████████████████████████████████████████████████████████ ██████ Rimini Ex. C at '446 (emphasis added).  Rimini ████████████████████████ ████████████████████████████████████ Response at 12.  This is

──────────

[7] Rimini also claims that its Acceptable Use Policy "prohibits copying or storing *any client's* third-party software or documentation on any Rimini system."  Response at 3 (emphasis in original).  But Ms. Frederiksen-Cross ████████████████████████████████████████ ████████████████████████████████████████ ECF No. 1335-1-s at ¶ 198 & n.203. ██████ proves that Rimini's Acceptable Use Policy is ineffective at preventing Rimini from violating the Injunction and infringing Oracle's copyrights.

12

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    prototypical cross-use: Rimini used the PeopleSoft environments associated with City of Eugene

2    to develop and test a fix for other customers, including Matheson Trucking.

3            ***Rimini's Erroneous Interpretation of the Injunction***.  Rimini repackages arguments that

4    this Court has rejected into what it now calls a reasonable and good faith interpretation of the

5    Injunction by characterizing its Injunction violations as merely the "re-use[] [of] knowledge."

6    Response at 13.  This Court rejected the same argument in its *Rimini II* summary judgment order

7    because "Rimini has presented no evidence that it took the 'know-how' it received by developing

8    this update in City of Eugene's environment and used it to develop a separate update for other

9    clients."  *Rimini II*, ECF No. 1253 at 53.  Instead, here, Rimini merely ████████████ to the

10   PeopleSoft environment associated with Matheson Trucking.  Whether Rimini's update ████

11   ████████████████████████████████ is irrelevant.  Response at 12.  The Injunction

12   prohibits cross-use "to develop or test software updates or modifications."  Injunction ¶ 6.

13           Rimini violated Paragraph 4 of the Injunction because its use of the PeopleSoft

14   environments associated with the City of Eugene did not "support the licensee's own internal data

15   processing operations."  Injunction ¶ 4.  Rimini violated Paragraph 6 of the Injunction because it

16   used the PeopleSoft environments associated with the City of Eugene "to develop or test software

17   updates or modifications for the benefit of" Matheson Trucking.  *Id.* ¶ 6.  Rimini's belief that "it

18   was complying" with the Injunction "because its use of City of Eugene's software to test the

19   update was to support City of Eugene, which was in scope to receive the update," ignores these

20   prohibitions of the Injunction.  Response at 13.  Rimini is engaging in the same cross-use that this

21   Court held unlawful in its February 2014 summary judgment order.  ECF No. 474 at 13.

22           Rimini also does not offer any evidence that City of Eugene was "in scope to receive" or

23   somehow benefitted from the update that Rimini was developing for Matheson Trucking.

24   Response at 13.  The Court rejected a similar argument in its *Rimini II* summary judgment order,

25   when the Court ruled that Rimini cross-used the PeopleSoft environments associated with

26   Campbell Soup to develop its PPACA update.  As the Court explained, "[e]ven though Campbell

27   Soup and Rimini had a contract for third-party service, that does not mean that Rimini may act

28   outside the scope of the license agreement and make copies of the PeopleSoft software that are

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1   not solely for the licensee's internal data processing operations." *Rimini II*, ECF No. 1253 at 45.

2   Much like Campbell Soup, which told Rimini that it did not want Rimini's PPACA update,

3   Rimini points to no evidence (or anything else in the discovery record) showing that City of

4   Eugene wanted, needed, or was otherwise experiencing problems with the rsi940a.sqr file that

5   Rimini was modifying in its associated PeopleSoft environments.

6               ***Rimini's Adjudicated Cross-Use Does Not Substantially Comply with the Injunction.***

7   Rimini incorrectly asserts that its "Matheson update is nothing like the conduct at issue in *Rimini*

8   *I*," claiming once again that "using *generic* environments to create updates containing Oracle

9   code" was the only conduct that the Court has adjudicated as unlawful.  Response at 14 (emphasis

10  in original).  Yet neither of Rimini's purported distinctions appears in this Court's February 2014

11  summary judgment order.  To the contrary, this Court ruled that Rimini's copying and use of

12  Oracle's PeopleSoft software was unlicensed because "the development environments associated

13  with the City of Flint were not used solely for the City of Flint's internal data processing

14  operations.  Instead, the development environments were used to develop and test software

15  updates for the City of Flint and other Rimini customers …."  ECF No. 474 at 13.  Furthermore,

16  the Court could find, based upon this and other violations discussed in its prior orders, that Rimini

17  in fact treats the PeopleSoft environments ostensibly associated with City of Eugene as generic

18  environments, akin to the pre-migration environments associated with the City of Flint.

19          **C.      Rimini Posits an Erroneously Narrowed Definition of Cross-Use**

20              For the first time in its Response, Rimini advances a new argument about its cross-use

21  violations (including its adjudicated Injunction violation regarding Matheson Trucking).  Rimini

22  now argues that its cross-use violations should be excused because (for example) even though

23  Rimini *developed* particular updates through cross-use, it performed some modicum of *testing* in

24  the beneficiary recipients' PeopleSoft environments.

25              Rimini's assertion that it ██████████████████████████████████████████ is

26  unsupported.  Response at 12 (emphasis removed).  Rimini submits an email ███████████

27  ████████████████████████████████████████████████████████████████████

28  █████████   Rimini Ex. E.  This email █████████████████████████████████

14

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1   ██████████████████████████████████████████████████ [8]

2        Rimini's assertion is also irrelevant because the Injunction does not excuse cross-use

3   violations based on Rimini's subsequent conduct in the development cycle. Rimini's efforts to

4   narrow the Injunction ignore that "[t]here are numerous forms of 'cross-use'" and that "[a]ny

5   work that Rimini performs under color of a license held by a customer for other existing

6   customers cannot be considered work in support of that particular customer." *Oracle USA, Inc. v.*

7   *Rimini Street, Inc.*, 879 F.3d 948, 956–57 (9th Cir. 2018). The Injunction does not permit the

8   escape valve that Rimini posits here, nor do the Court's prior rulings on cross-use: both

9   development and testing must proceed customer-by-customer.

10       Under Paragraph 4 of the Injunction, Rimini "shall not reproduce, prepare derivative

11  works from, or use a specific licensee's PeopleSoft software or documentation other than to

12  support the specific licensee's own internal data processing operations." Injunction ¶ 4. Under

13  Paragraph 6, Rimini "shall not reproduce, prepare derivative works from, or use PeopleSoft

14  software or documentation on one licensee's computer systems to support, troubleshoot, or

15  perform development or testing for any other licensee, including, specifically, that Rimini Street

16  shall not use a specific licensee's PeopleSoft environment to develop or test software updates or

17  modifications for the benefit of any other licensee." *Id.* ¶ 6. This Court thus prohibited the

18  conduct at issue in these contempt proceedings. If Rimini uses or otherwise reproduces

19  PeopleSoft software associated with one customer to support, troubleshoot, or perform

20  development and testing for another customer, Rimini has violated the Injunction. If Rimini uses

21  or otherwise reproduces PeopleSoft software associated with one customer to develop or test

22  _____

23  [8] Rimini also submits ████████████████████████████████████████████████

24  ████████ Response at 12; Rimini Ex. D. But ████████████ is only a software tool that ████████
    ██████████████████████████████████████████████████ Minne Decl. ¶ 15,

25  Ex. 17 (*Rimini II*, Frank Depo.) at 74:7-10 (emphasis added). At most, these ████ show
    automated copying that may (but need not) precede testing. Rimini ████████████████████

26  ██████████████████████████████████████████████████████████████████████████ *Id.*

27  at 75:10-15. In contrast, Brenda Davenport, Rimini's Vice President of Quality Assurance,
    explained that ████████████████████████████████████████████████████████████

28  ██████████████████████ ECF No. 1385-3-s ¶ 3. Rimini identifies no evidence of this
    testing having been performed before delivery to Matheson Trucking.

15

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

updates or modifications for the benefit of any other customer, Rimini has violated the Injunction.

## IV.   RIMINI SHOULD BE HELD IN CONTEMPT FOR THE ADDITIONAL PEOPLESOFT CONDUCT FOR WHICH THE COURT ORDERED RIMINI TO SHOW CAUSE

The Court also issued an order to show cause regarding five additional examples in which Rimini unlawfully used and reproduced Oracle's PeopleSoft software.  In each, Rimini violated the PeopleSoft prohibitions of the Injunction and should be held in contempt for these violations.

### A.   Rimini Violated the Injunction When It Copied Protected Oracle Expression into RSPCMPAY.cbl

The Court ordered an evidentiary hearing "to determine if Rimini's [RSPCMPAY.cbl] file contains *protected* Oracle expression that Rimini is prohibited from having on its systems."  ECF No. 1459 at 22 (emphasis added).  Rimini does not dispute that RSPCMPAY.cbl is a file on Rimini's internal systems that contains Oracle code, and that Rimini distributed it 14 times to 7 customers.  ECF No. 1459 at 21–22; Response at 15; ECF No. 1392 at 8–9.

At the evidentiary hearing, Ms. Frederiksen-Cross will testify that Rimini literally copied substantial swaths of Oracle code found in file PSPTARRY.cbl into Rimini's RSPCMPAY.cbl file.  ECF No. 1368-1-s, at ¶¶ 45 & n.3, 77–78.  Ms. Frederiksen-Cross will further explain that in addition to copying 32% of the lines of code in the Oracle file PSPTARRY.cbl, Rimini copied certain non-functional (*i.e.*, not required for the code to function) elements directly from Oracle code (which Rimini omits from its Response), including typographical idiosyncrasies that could only be the result of copying.  ECF No. 1368-1-s at ¶¶ 77–78 & Ex. 1.

In response to this Injunction violation, Rimini incorrectly argues that Ms. Frederiksen-Cross's opinion is insufficient because she did not perform analytic dissection in her analysis.  In fact, Ms. Frederiksen-Cross did perform analytic dissection, although she did not use the same type of analytic dissection favored by Rimini and its expert.  This issue was previously before the Court on Rimini's Motion to Exclude Ms. Frederiksen-Cross's opinions, which the Court denied, finding her opinions will "likely help the Court decide the issues of fact in these contempt proceedings."  ECF No. 1459 at 12–14.  Moreover, experts performing analytic dissection are not required to follow one "formal" methodology.  *Computer Assocs. Int'l v. Quest Software, Inc.*,

16

1   333 F. Supp. 2d 688, 694 (N.D. Ill. 2004); *In re Countrywide Fin. Corp. Mortgage-Backed Secs.*

2   *Litig. v. Countrywide Fin. Corp.*, 984 F. Supp. 2d 1021, 1036 (C.D. Cal. 2013).  Rimini cites no

3   authority requiring the application of its preferred method of analytic dissection in this Circuit.

4   Response at 15.  The only requirement is that "where two works are found to be similar without

5   regard to the scope of the copyright in the plaintiff's work … the source of the similarity must be

6   identified and a determination made as to whether this source is covered by plaintiff's copyright."

7   *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992).  Ms. Frederiksen-

8   Cross's analysis readily meets this standard.[9]

9          Ms. Frederiksen-Cross also will explain ███████████████████████████████████

10  ██████████████████████████████████████████████████████████████.  BFC

11  Decl. ¶ 14, Ex. 3, (*Rimini II* Frederiksen-Cross Surrebuttal Report) at 2–7.  Professor Astrachan

12  further elevates form over substance (and ignores common sense), again for Rimini's benefit.

13  ECF No. 1409 at 13–14.  ██████████████████████████████████████

14  █████████████████████████████████████████████████████████████████

15  ██████████████████████   ECF No. 1409-4-s (*Rimini II*, Astrachan Depo.) at 252:10–253:12.

16         Finally, no evidence supports Rimini's assertion that RSPCMPAY.cbl is the "*only*" file

17  where Rimini copied a portion of an Oracle file onto its systems.  Response at 16.  Oracle did not

18  present in its Motion for Order to Show Cause *all* identified examples of files on Rimini's

19  systems that are substantially similar to Oracle protected expression.  In fact, Ms. Frederiksen-

20  Cross identified at least nine other files that ██████████████████████████████

21  █████████████████████████████████   BFC Decl. Ex. 2 (BFC Rpt. ¶ 372).

22     **B.     Rimini Violated the Injunction When It Cross-Used COEX to Resolve a Support Case for Customer Johnson Controls (JHN)**

23

24         The Court ordered an evidentiary hearing on whether a "W-2 update [that] was tested in

25  _____

26  [9] *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc), does not disturb settled Ninth

27  Circuit law that analytic dissection is unnecessary to prove copyright infringement where, as here, the infringer has engaged in direct, literal copying and thus necessarily copied all protected

28  expression within the work.  *See* ECF No. 1409 at 13-14 (citing cases).

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1  COEX for Rimini client JHN" constitutes cross-use.  ECF No. 1459 at 19–20.  This cross-use

2  occurred on January 24, 2019, when Rimini was working to solve a support case with customer

3  Johnson Controls (JHN) and its ███████████  ECF No. 1369-20-s.  On that date, ████████

4  █████████████████████████████████████████████████████████████████████████████

5  █████████████████████████████████████████████████████████  ECF No. 1369-

6  20-s.  This is a straightforward violation of Paragraph 6 of the Injunction: Rimini used and

7  reproduced the PeopleSoft environment associated with City of Eugene "to support, troubleshoot,

8  and perform development or testing" for Johnson Controls.  Injunction ¶ 6.  This conduct also

9  violated Paragraph 4 of the Injunction because Rimini's use and reproduction of PeopleSoft in

10  COEX did not support City of Eugene's "internal data processing operations."  *Id.* ¶ 4.

11       In its Response, Rimini offers three distractions.  Rimini first argues "the update at issue

12  concerns a change to the font size in an Adobe PDF, *not* any Oracle code."  Response at 17

13  (emphasis in original).  Whether the update resulting from Rimini's cross-use contains Oracle

14  code is irrelevant; the question is whether Rimini used one customer's PeopleSoft environment to

15  test the update for another customer.  It did.  Rimini does not deny using and reproducing

16  PeopleSoft software in COEX to resolve the W-2 print issue experienced by Johnson Controls.

17  Rimini's use of PeopleSoft software is evident from █████████████████████████████

18  █████████████████████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████.  *Compare*

20  Rimini Ex. F *with* Minne Decl. ¶ 16, Ex. 18 (RSI007075266–267).

21       Rimini next argues that "the testing performed in COE's environment was for COE

22  because COE needed this update."  Response at 17.  Yet Rimini offers no evidence to support the

23  assertion that COE needed the update.  Rimini's own exhibit states: ███████████████████

24  ██████████████████  for additional customers needing the fix.  Rimini Ex. F.

25       Finally, Rimini argues that "the modifications to JHN's template were implemented

26  specifically for JHN and tested specifically with JHN."  Response at 17.  ██████████████████

27  █████████████████████████████████████████████████████████████████████  Minne

28  Decl. ¶ 17, Ex. 19 (RSI007090478) ████████████████████████████████████████████

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1   ████████████).  As discussed above, even if Rimini had tested the fix before delivery, that

2   would not excuse its cross-use of PeopleSoft software in COEX to benefit Johnson Controls.[10]

3       **C.    Rimini Violated the Injunction When It Cross-Used COEX to Develop and
               Test Updates to rsi940a.sqr for Spherion (SPH) and Smead (SME)**

4

5           Rimini also cross-used the PeopleSoft software associated with City of Eugene to deliver

6   an updated rsi940a.sqr program to SPH and SME.  Rimini admits ███████████████████

7   ███████████████████████████████████████.  Response at 19; Rimini Ex. C

8   at '448.  Yet, rather than develop the update in the PeopleSoft environments associated with these

9   customers, Rimini ██████████████████████████████████████████

10  ████.  After having ███████████████████████████, Rimini █████████

11  ███████████████████████████████████████ Rimini

12  Ex. C at '442 (emphasis added).

13          As the Court indicated in its Order, "[t]his appears to be a classic example of unlawful

14  cross-use and Rimini using one client's environment under color of license for another client."

15  ECF No. 1453 at 20.  This conduct violates Paragraphs 4 and 6 of the Injunction and parallels

16  Rimini's cross-use of PeopleSoft environments associated with City of Eugene to test its PPACA

17  updates that the Court held infringing in *Rimini II*.  *Rimini II*, ECF No. 1253 at 49–55.  As the

18  Court explained in its Order to Show Cause, it "was not expressly licensed" for Rimini to have

19  "'prototyped' [an] update in City of Eugene's environment, and then sent it to three other clients

20  without any testing or development in their respective environments."  ECF No. 1459 at 18.

21  "[T]his conduct also violates the permanent injunction," and squarely fits the facts at hand.  *Id.*

22          Rimini admits it ████████████████████████████████

23  ████████████████████████████.  Response at 19.  Rimini then ████████████

24  ██████████████████████.  *Id.*  Contrary to its Response, ███████████████

25  _____

26  [10] The Court should disregard Rimini's lengthy footnote seeking to argue that "[t]he essential step
    defense precludes all of the alleged injunction violations here."  Response at 18 n.7.  In this

27  action, Rimini affirmatively waived its defenses under 17 U.S.C. § 117.  ECF No. 401 ¶¶ 13–14.
    Rimini's argument is also contrary to settled Ninth Circuit law.  *See Vernor v. Autodesk, Inc.*, 621

28  F.3d 1102, 1111–12 (9th Cir. 2010).

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    ██████████████████████ SPH and SME. ████████████████████████████████

2    ███████████████████████████████████ Minne Decl. ¶ 21, Ex. 23 (RSI007087466). ████

3    ███████████████████████████████████████████████████████████████████████████

4    ███████████████████████████ *Id.* This is further cross-use in violation of the Injunction.[11]

5         Rimini attempts to defend this conduct by arguing ██████████████████████████████

6    ███████████████████████████████████████████████████████████████████████████

7    Response at 19. Rimini's argument lacks factual support. When Rimini ████████████████

8    ███████████████████████████████████████████████████████████████████ Rimini

9    Ex. C at '442.[12] Rimini's conduct is evidence that City of Eugene-associated environments are

10   Rimini's new "generic environments," *i.e.,* environments like those Rimini previously hosted on

11   its own systems as a development environment for multiple customers. Rimini also does not—

12   and cannot—say that its development work was to support *only* the City of Eugene. As this Court

13   previously ruled, "[i]f the update was being created and tested in the City of Eugene's

14   environment, for other customers, the court must find that it was not being developed and created

15   solely for City of Eugene's 'internal data processing operations.'" *Rimini II*, ECF No. 1253 at 53.

16   **D.    Rimini Violated the Injunction in Developing and Distributing Its 1099**
          **Derivative Work Update to Easter Seals**
17

18        The Court's Order to Show Cause concluded that the 1099 update that Rimini sent to

19   Easter Seals on January 3, 2019 (RS18F07) is "one example of a derivative work." ECF No.

20   1459 at 24. Rimini's attempts to relitigate this issue are without merit.

21        Rimini agrees that its 1099 update included files that print data to complete 1099-INT and

22   1099-MISC forms. Response at 20–21. Ms. Frederiksen-Cross confirmed that this 1099 update

23

24   [11] Rimini incorrectly cites to ██████████████████████, claiming they are ██████████████████
          ████████ Response at 19. As explained earlier, these documents are only ████ associated with
25   applying an update to an environment.

26   [12] Rimini alleges it "did not send any files from COE's environment to any other environment,"
     and instead ██████████████████████████████████ Response at 20. This is a
27   distinction without a difference. After using and reproducing the PeopleSoft software associated
     with City of Eugene to modify rsi940a.sqr, Rimini ███████████ SPH and SME. Rimini Ex. C.
28   Regardless of the specific manner of transmission, this is cross-use.

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1

2                                                                                    ECF No. 1368-

3   1-s at ¶ 85.  Her analysis further confirmed

4

5                                                                    ECF No. 1368-1-s at ¶ 85.

6          Rimini's 1099 update is a derivative work because it "was designed to interact with

7   PeopleSoft," is accessed by customers through "signing into their existing PeopleSoft software,"

8   and "[n]othing … supports a finding that the update could be used with other software programs

9   other than PeopleSoft."  *Rimini II*, ECF No. 1253 at 52–53; *Micro Star v. Formgen Inc.*, 154 F.

10  3d 1107, 1111–12 (9th Cir. 1998).  Rimini reprises the same arguments that this Court rejected in

11  its *Rimini II* summary judgment order and that Rimini untimely raised in its *Rimini II* Motion for

12  Interlocutory Certification.  *Rimini II*, ECF No. 1253 at 52–53; *Rimini II*, ECF No. 1298.

13         Because Rimini's 1099 update is a derivative work, and Rimini admits that the underlying

14  files                                        (Response at 21), Rimini is violating Paragraph 5 of the

15  Injunction.  *See* Injunction ¶ 5 ("Rimini Street shall not reproduce, *prepare derivative works*

16  *from*, or use PeopleSoft software or documentation on, with, or to any computer systems other

17  than a specific licensee's own computer systems") (emphasis added).  Rimini also violated

18  Paragraphs 4 and 6 of the Injunction because this update was not created solely for Easter Seals

19  using Easter Seals' licensed PeopleSoft Software.  Rimini develops and distributes its PeopleSoft

20  1099 updates on an annual basis through the cross-use of Oracle's PeopleSoft software.

21

22

23                         Minne Decl. ¶ 18, Ex. 20; ECF 1326-s at ¶ 161 & n.154 (explaining MD5 hash

24  values).

25                                                                                Minne

26  Decl. ¶¶ 19–20; Exs. 21, 22.

27

28                                              ECF No. 1368-1-s at ¶ 45 & n.3.

21

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1        Rimini also fails to demonstrate that the Easter Seals license agreement permits Rimini to

2   create derivative works on behalf of Easter Seals, as this Court required in its Order to Show

3   Cause.  ECF No. 1459 at 24.  Rimini acknowledges ████████████████████████████████

4   ██████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████  Rimini Ex. M at § 14.  But as this

6   Court has explained, Rimini as a Designate may not exercise rights granted only to a Licensee.

7   ECF No. 474 at 18–19 (finding infringement where Rimini failed to identify an express license to

8   a Designate authorizing Rimini's conduct).  Here, the Easter Seals license ████████████████

9   ██████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████████

11  ██████  Rimini Ex. M at § 1.1.  ████████████████████████████████████████████████

12  ████████████████████████████  *Id.*  Under the license, ████████████████████████████

13  ██████████████████████████████████████████████████████████████████████

14  *Id.* § 2.1(k).  Rimini identifies no such express provision applicable to Designates.

15       Furthermore, Section 4.1 states that █████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████  and further provides that

18  ██████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████  Rimini Ex. M at § 4.1 (emphasis added).  Even if Rimini could prove a

22  right to *create* derivative works for Easter Seals, nothing in the license authorized a third-party

23  like Rimini to ██████████████  its derivative work modifications.

24      **E.**    **Rimini Violated the Injunction in Cross-Using Its "One Code for All"**
      **rsiqtrtx.sqr File to Deliver HCM200105 to Rockefeller Group and Home**

25              **Shopping Network**

26       Rimini offers no evidence and identifies nothing in the discovery record to support its

27  claim that it developed the HCM200105 update for Rockefeller Group and Home Shopping

28  Network without cross-use.  Response at 22–23.  Rather than provide a detailed description of the

1   development process, Rimini again offers vague "evidence will show" boilerplate.[13]

2       Rimini attempts to obfuscate by discussing the HCM200105 fix as a whole.  But Rimini

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ██████████████████████████████████ Response at 22.[14]  This is a violation of

7   the Injunction because Rimini created rsiqtrtx.sqr in one customer's environment and then sent

8   the file to other customers.

9       The ████████████ is another example of Rimini working to create a single file with

10  uniform code that it can cross-use between large groups of its customers.  Rimini ███████████

11  ████████████████████████████████████ Minne Decl. ¶ 22, Ex. 24

12  (RSI007329092).  As Ms. Frederiksen-Cross explains, ███████████████████████

13  ████████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████

15  ██████████ ECF No. 1326-s at ¶¶ 267–69.  Rimini's development and testing of ███████

16  ████████ using one customer's environment and distribution of that file to other customers is

17  cross-use in violation of the Injunction.  Injunction ¶¶ 4–6.

## V.   RIMINI SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE INJUNCTION'S JD EDWARDS PROHIBITIONS

### A.   Rimini Copies "J.D. Edwards Software Source Code"

21      Paragraph 8 of the Injunction prohibits Rimini from "copy[ing] J.D. Edwards software

22  source code to carry out development and testing of software updates."  Injunction ¶ 8.  The

---

[13] Oracle objects to Rimini Exhibit N, ████████████████████████████████████
████████████ that was not produced in discovery and reflects a last edited date of April 1, 2021,
well after Oracle no longer had access to Rimini's Jira system.  Oracle is therefore unable to
determine whether the screenshot reflects contemporaneous development records.

[14] Rimini's claim ████████████████████████████████████████████████████
████████ is irrelevant to whether the Injunction was violated; Dev Instruction or no, Rimini admits
that it took the SQR file (one component of the update) that it developed in one customer's
environment and sent it to other customers.

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1  Court ordered an evidentiary hearing to address the parties' "dispute over the definition of source

2  code." ECF No. 1459 at 25. "Source code" is "code in a human-readable format." ECF No.

3  1368-1-s at ¶ 88. Oracle's JD Edwards software platform has a variety of source code files,

4  including ".h" and ".c" files (written in the C programming language), Business Functions,

5  Interactive Applications, Batch Applications, and Event Rules code. *Id.* ¶ 89.

6       Neither Rimini nor Professor Astrachan disputes that source code generally refers to code

7  in a human-readable format. ECF No. 1368-s at 24 n.13. Rimini instead manufactures a new

8  distinction between what it calls JD Edwards "open code" (apparently meaning all source code

9  written by Oracle and made available to Oracle's JD Edwards licensees) and JD Edwards "closed

10  code" (apparently meaning all source code written by Oracle not made available to Oracle's JD

11  Edwards licensees), conveniently arguing that the Injunction only prohibits copying of the latter.

12  Rimini's definition is pure sophistry, as Rimini is arguing that it is free to use all the code it can

13  access, and that the Injunction only prevents Rimini from using code it could never access.

14  Under Rimini's contrived definition of "source code," Paragraph 8 of the Injunction does nothing,

15  as it prohibits Rimini from doing things Rimini could never do. Rimini's own expert, Professor

16  Astrachan, refused to endorse Rimini's sleight-of-hand. Minne Decl. ¶ 23, Ex. 25 (Astrachan

17  Depo.) at 252:13–253:3 (taking no position on "J.D. Edwards software source code").

18       The Injunction prohibits copying of software source code, regardless of whether Rimini

19  describes it as "open" or "closed." ███████████████████████████████████████████

20  ██████████████████. ECF No. 1369-6-s at 135:5–20. Rimini also offers the irrelevant

21  and extrinsic opinions of Mr. Lanchak, apparently in an attempt to change the meaning of the

22  Injunction after the fact. But Mr. Lanchak ████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████

24  ██████ ECF No. 1405-1-s at 173:8–174:11. Rimini cites no authority that would allow parol

25  opinions from a third party who did not testify at trial and played no part in permanent injunction

26  briefing to somehow inform the meaning of an Injunction that this Court already issued.

27       Rimini's litigation position is further contradicted by its own documents, ████████████

28  ████████████████████████████████████████   ████████████████████████████████

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  Minne Decl. ¶ 24, Ex. 26 (RSI2_014273468) (emphasis added).  ██████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  Minne Decl. ¶ 25, Ex. 27 (RSI2_013418086) (emphasis added).  ████████████

7  ██████████████████████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  ██████████████████████████   Minne Decl. ¶¶ 26–27, Ex. 28 (RSI2_015588159) (emphasis

10  added); Ex. 29 (RSI2_013094139) ███████████████████████████████████

11  ██████████████████████████████████████████ (emphasis in original).

12  ██████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████  ECF No.

14  1369-6-s at 132:8–134:21; ECF No. 1369-7-s.  These admissions show that what Rimini calls

15  "open code" is in fact "J.D. Edwards software source code" under the Injunction.

16  To distract from these facts, Rimini asserts that enforcing Paragraph 8 "would function as

17  a total ban on Rimini providing JDE support."  Response at 25.  But its own documents tell a

18  different story.  In October 2016, after the first permanent injunction went into effect, Rimini's

19  President Sebastian Grady ████████████████████████████████████████████

20  ████████████████████████████   Minne Decl. ¶ 28, Ex. 30 (RSI2_025104432).  A

21  few months later in an investor presentation, Rimini █████████████████████████

22  ███████████████████████████████████████████████

23  █████████████████████████████████████████████  Minne Decl. ¶ 29, Ex.

24  31 (RSI2_030635285).  According to Rimini, ████████████████████████████

25  ██████████████████████████████████████████████████████████

26  ████████████████████████████████████  *Id.*  Rimini's words to its own

27  employees and to its investors show that the Injunction can be enforced without halting Rimini's

28  entire JD Edwards support business.

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1    Rimini next contends that enforcing the plain and ordinary meaning of Paragraph 8 of the

2    Injunction would render Paragraph 10 "superfluous."  This is incorrect.  Though there is overlap

3    between Paragraphs 8 and 10 (just as there is overlap between the Injunction's PeopleSoft

4    prohibitions), the two paragraphs are not co-extensive.  Paragraph 10, for example, prohibits

5    copying and use of JD Edwards documentation and software (such as user interface screens) on

6    one licensee's computer systems to support another licensee.  Paragraph 8 prohibits copying of

7    source code even for the sole benefit of the associated licensee.  Oracle's reading gives meaning

8    to both paragraphs and seeks to give "source code" its commonly understood meaning as code in

9    a human-readable format.  Rimini, by contrast, wants to render Paragraph 8 superfluous.  In

10   Rimini's retelling, "source code" in Paragraph 8 refers only to "closed code" that Rimini

11   concededly does not copy when developing and testing updates—in other words, Paragraph 8

12   could never be violated without reverse engineering or similar extreme measures.

13   Finally, Rimini collaterally attacks the Injunction by complaining that the "meaning of

14   'J.D. Edwards software source code' and whether Rimini copies that code was not adjudicated,"

15   and ███████████████████████████████████████████.  Response at 26.

16   But "[t]he collateral attack on an injunction during contempt proceedings is prohibited if earlier

17   review of the injunction was available."  *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th

18   Cir. 1994).  Rimini's arguments also fail on the merits.  At summary judgment, the Court ruled

19   that JD Edwards licenses "do[] not permit Rimini to access the software's source code to carry

20   out development and testing of software updates."  ECF No. 474 at 22.  The jury was similarly

21   instructed that the "J.D. Edwards software license agreements" do not authorize Rimini "to make

22   copies of the J.D. Edwards software application and documentation to, among other things, access

23   the software's source code to carry out development and testing of software updates …."  ECF

24   No. 880 at 27–28.  The jury found Rimini liable for infringement of Oracle's JD Edwards

25   copyrights (ECF No. 896 at 2), and the Ninth Circuit affirmed the copyright infringement verdict.

26   **B.    Rimini Copied "J.D. Edwards Software Source Code" into Its Technical Specifications**

27

28   The Court ordered an evidentiary hearing to determine if Rimini's technical specification

for its JDE105328 update "did in fact copy Oracle source code in violation of the permanent

injunction." ECF No. 1459 at 25. Rimini copied two JD Edwards source code files into this

specification: P06767 from JD Edwards World A9.3 and R89078652 from EnterpriseOne.

Rimini does not address its copying of P06767 into this technical specification. *See* ECF

No. 1368-s-1 at ¶ 101. Rimini's documents ████████████████████████████████████████

Minne Decl. ¶ 30, Ex. 32 (RSI2_031739263). As for R89078652, Rimini ███████████

████████████████████████████████████████ Response at 27 (emphasis in original). ████

███████████████████████████████████████ ECF No. 1368-s-1 at ¶¶ 97–99;

ECF No. 1369-s-5. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ ECF No. 1386-s-2 at ¶ 22. Typing is one of many methods of copying.

*Micro-Sparc, Inc. v. Amtype Corp.*, 592 F. Supp. 33, 36 (D. Mass. 1984) (copyright infringement

against "typing service" that typed a magazine's computer programs into a computer).[15]

## VI.    RIMINI HAS NOT SUBSTANTIALLY COMPLIED WITH THE INJUNCTION

Rimini has failed to substantially comply with the Injunction for several reasons. *First*,

Rimini has already violated the Injunction on three separate occasions by maintaining PeopleSoft

software and documentation on its computer systems and by cross-using PeopleSoft software.

Eight additional Injunction violations are to be adjudicated at the September 20, 2021, evidentiary

hearing. The limited discovery that Oracle received during these post-Injunction proceedings

establishes that Rimini acted in contempt of the Court's Injunction. Complete discovery into

Rimini's support processes would show the full extent of its Injunction violations.

---

[15] Rimini also provides no evidence to support its assertion that "prvtsidx.plb" is not a JD
Edwards file. Putting aside this lack of proof, this file at the very least is an Oracle Database file
and its existence on Rimini's systems is a violation of Paragraph 15 of the Injunction. Injunction
¶ 15 ("Rimini Street shall not reproduce, prepare derivative works from, or distribute Oracle
Database software."). The Court's Oracle Database summary judgment order ruled that neither
the Oracle Developer License nor the Oracle License and Service Agreement permitted Rimini to
maintain copies of Oracle Database files on its systems for commercial purposes. ECF No. 476 at
7–15. The Court's reasoning, applied here, establishes another violation of the Injunction.

*Second*, Rimini's Injunction violations are substantive.  The violations already found by the Court go to the core of what the Injunction forbids: cross-use and local copies of PeopleSoft software and documentation.  The violations to be adjudicated at the evidentiary hearing are directed to the same PeopleSoft prohibitions as well as the prohibition that Rimini cannot copy JD Edwards source code.  *Henry Schein, Inc. v. Certified Bus. Supply, Inc.*, No. SA CV 03-1662, 2008 WL 9452685, at *8 (C.D. Cal. Aug. 20, 2008) (finding contempt because an injunction "does not permit sporadic violations, where those violations go to the heart of the [i]njunction").

*Third*, Rimini fails to show that it "took all reasonable steps to comply with the [Injunction]."  *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016).  In its Response, Rimini does not argue that it was unable to comply with the Court's Injunction.  Rimini could have complied with the Injunction, but instead chose not to do so.  In fact, ███████████████████ ██████████████████████████████████████████  Rimini also downplayed its alleged compliance efforts by repeatedly telling the public that the Injunction does not affect its current support processes because Rimini stopped doing what the Injunction forbids years before the Injunction issued.  Rimini's strained, implausible interpretations of the Injunction are evidence of its efforts to evade the Injunction, not evidence of efforts to comply with it.

*Finally*, Rimini asserts that "[i]f errors were made with respect to a handful of updates, out of ██████, that certainly does not show contempt for the Court's order."  Response at 23.  But Rimini does not offer proof that ██████ updates is an accurate number, much less that any one of these purported ██████ updates complies with the Injunction.  The Court should not make the "illogical" comparison between Injunction violations and Rimini's unsupported attorney argument.  *Black Lives Matter Seattle-King County v. City of Seattle, Seattle Police Dep't*, --- F. Supp. 3d. ----, 2021 WL 289334, at *4 (W.D. Wash. Jan. 28, 2021) (finding city and police department in contempt based on four deployments of force that violated an injunction and refusing to weigh those violations "against all 122 deployments" not in evidence).  Oracle certainly did not receive full custodial discovery into Rimini's ██████ updates; instead, Rimini fought to limit Oracle to discovery from just 10 custodians and only one corporate deposition.  Rimini also would not catalogue its updates and fixes during post-Injunction discovery, including

28

the names of the underlying files, and the persons involved in developing and testing them—

claiming instead that ███████████████████████████████████████████████████████████

███████████ .  Rimini also fought to limit Oracle to issuing just five third-party subpoenas (when

over 700 issued in *Rimini II*).  Having successfully argued for limited discovery, Rimini should be

judicially estopped from arguing that its overall practices now show substantial compliance.

*Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) ("[J]udicial estoppel applies to a party's

stated position, regardless of whether it is an expression of intention, a statement of fact, or a

legal assertion"); *Lee v. United States*, Case No. 2:14-cv-00606, 2016 WL 3360653, at *5 (D.

Nev. June 9, 2016) (a party "may not resist discovery and later use documents or evidence it has

not timely produced in motion practice or at trial").  The discovery record does not show how

Rimini developed, tested, or otherwise distributed its ██████ updates—much less that they

comply with the Court's Injunction.

**VII.   IMPOUNDMENT/ESCROW, COMPENSATORY DAMAGES, AND ATTORNEYS' FEES ARE APPROPRIATE REMEDIES**

Rimini claims that, even if the Court were to find Rimini in contempt, "well-settled law

forecloses all of the sanctions sought by Oracle."  Response at 28.  The Court already rejected this

argument.  ECF No. 1459 at 29–30.

***Impoundment.***  The Court noted in its Order to Show Cause that "impoundment is a

statutory remedy permitted under the Copyright Act for copyright infringement" and that in "a

civil contempt proceeding, the Court may find impoundment appropriate if Rimini willfully

violated the Court's orders."  ECF No. 1459 at 29.

When the Court issued the original injunction in 2016, it declined to order impoundment,

reasoning that "Oracle's disposition remedy - preclusion of Rimini from using the infringing

works - is achieved the same with a permanent injunction as it would be with a disposition order."

ECF No. 1049 at 10.  Unfortunately, the record demonstrates that the Injunction alone was

insufficient to discourage Rimini's continued infringement.  Rimini has continued to create and

distribute updates in violation of the Injunction, and it has taken almost three years to bring the

issue of Rimini's violations before the Court for a hearing.  Rimini also openly flouts the

1    Injunction and this Court's authority when it makes public statements about how the Order to

2    Show Cause was some sort of Rimini victory.  Impoundment, or some version of escrow that

3    allows monitoring and discovery of infringing conduct, is necessary to prevent and/or detect

4    Rimini's continued Injunction violations and avoid years of discovery and Court involvement to

5    detect further infringement of Oracle's copyrights.  The Court stated: "If the Court finds Rimini

6    in contempt, the Court will determine at that time how to fashion equitable and appropriate

7    sanctions and reopen discovery if it sees fit to do so."  ECF No. 1459 at 30.  During the

8    evidentiary hearing, Oracle will discuss the logistical details of the various impoundment and

9    escrow options that would best enforce the Injunction while imposing the least burden possible on

10    Rimini's continued operation.

11        ***Compensatory Damages***.  The Court already has ruled that "compensatory damages may

12    be awarded for Oracle's actual damages and any additional profits of the infringer."  ECF No.

13    1459 at 30.  Contrary to Rimini's assertion that "Oracle conceded it has no evidence of actual,

14    compensatory damages," Oracle's Motion for Order to Show Cause noted that damages discovery

15    had not yet been permitted and requested that the Court reopen discovery to determine damages.

16    ECF No. 1368-s at 30.  In its Order to Show Cause, the Court noted that "damages will be

17    assessed by the jury in *Rimini II*" for some of Rimini's conduct at issue here (ECF No. 1459 at

18    17–18) and further noted that the Court would consider reopening discovery into compensatory

19    damages upon a finding of contempt.  *Id.* at 30.  Should the Court find contempt, Oracle will seek

20    leave to take discovery into and brief the issue of any compensatory damages that resulted from

21    Rimini's conduct in violation of the Injunction and are non-duplicative of any *Rimini II* damages.

22        ***Attorneys' Fees***.  The Court ruled that "it is well established that the prevailing party may

23    be awarded attorneys' fees and costs in civil contempt proceedings and the Court has discretion to

24    determine if a fee award is an appropriate remedial measure."  ECF No. 1459 at 30.  The fees and

25    costs Oracle incurred in exposing Rimini's conduct (which is described in detail above and will

26    be further described at the hearing) and enforcing the Injunction satisfy the Court's criteria for

27    awarding attorneys' fees under the Copyright Act.  ECF No. 1164 at 10–15.  Following the

28    Court's ruling, Oracle will request the opportunity to brief this issue.

DATED:  June 9, 2021                          MORGAN, LEWIS & BOCKIUS LLP

                                              By: _____
                                                          /s/ Benjamin P. Smith
                                                          Benjamin P. Smith

                                              Attorneys for Plaintiffs Oracle USA, Inc., Oracle
                                              America, Inc., and Oracle International Corporation

ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2021, I electronically transmitted the foregoing

**ORACLE'S RESPONSE TO RIMINI'S RESPONSE TO ORDER TO SHOW CAUSE** to

the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic

Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

MORGAN, LEWIS & BOCKIUS LLP

DATED: June 9, 2021

By:  _____ */s/ Benjamin P. Smith*_____
Benjamin P. Smith

Attorneys for Plaintiffs Oracle USA, Inc., Oracle
America, Inc., and Oracle International
Corporation

---

CERTIFICATE OF SERVICE