GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: 925.264.7736
dwinslow@riministreet.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: 336.908.6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: 702.667.4843
wwa@h2law.com

*Attorneys for Defendant*
*Rimini Street, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>RIMINI STREET, INC., et al.,<br><br>          Defendants. | Case No. 2:10-cv-00106-LRH-VCF<br><br>**RIMINI'S REPLY REGARDING ORDER TO SHOW CAUSE**<br><br>***PUBLIC REDACTED VERSION***<br><br>**Hearing**:<br>Date:    September 20, 2021<br>Time:   9:00 a.m.<br>Place:  Bruce R. Thompson<br>          Courthouse, Reno, NV<br>Judge:  Hon. Larry R. Hicks |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................................1

II. ARGUMENT .............................................................................................................................1

    A.    Oracle Misstates the Facts and the Law............................................................................1

        1.    Oracle Misstates the Discovery Record .................................................................1

        2.    Oracle Misstates the Legal Standard for Contempt ..............................................2

        3.    Oracle Contradicts This Court's Rulings Regarding "Cross-Use".........................................................................................................................2

    B.    Rimini Should Not Be Held in Contempt for the Two Violations the Court Found ................................................................................................................4

        1.    Rimini Should Not Be Held in Contempt for the Isolated Files on Its Systems, Sent by Clients ................................................................................4

        2.    Rimini Should Not Be Held in Contempt Regarding Its Update for Matheson Trucking.........................................................................................5

    C.    Rimini Did Not Violate the Injunction, and Certainly Did Not Act Contumaciously for the Eight Other Discrete Instances Set for Hearing ...........7

        1.    Rimini's RSPCMPAY.cbl File Did Not Violate the Injunction .............7

        2.    Rimini's JHN Update Did Not Violate the Injunction..........................8

        3.    Rimini's Rsi940a.sqr Updates for ▇ and ▇ Did Not Violate the Injunction................................................................................9

        4.    Rimini's 1099 Update for Easter Seals Did Not Violate the Injunction ..........................................................................................10

        5.    Rimini's Updates for Rockefeller Group and Home Shopping Network ("HSP") Did Not Violate the Injunction ................................11

        6.    Rimini Complied With the JDE Software Source Code Provision ..........................................................................................12

    D.    Rimini Substantially Complied with the Injunction ............................................14

    E.    Rimini Relied on a Good Faith and Reasonable Interpretation of the Injunction ................................................................................................15

    F.    No Sanctions Are Warranted .................................................................15

III. CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Comput., Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994)......................................................................................................7

*Automation by Design, Inc. v. Raybestos Prods. Co.*,
  463 F.3d 749 (7th Cir. 2006)....................................................................................................11

*DropzoneMS, LLC v. Cockayne*,
  2019 WL 7630788 (D. Or. Sep. 12, 2019)................................................................................8

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993).............................................................................................2, 7, 15

*Gopher Protocol, Inc. v. Discover Growth Fund, LLC*,
  2019 WL 6307615 (D. Nev. Nov. 25, 2019) ............................................................................2

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
  349 F. Supp. 2d 509 (E.D.N.Y. 2004) ....................................................................................15

*Int'l Rectifier Corp. v. IXYS Corp.*,
  383 F.3d 1312 (Fed. Cir. 2004)..................................................................................................5

*Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*,
  564 F.3d 1115 (9th Cir. 2009)....................................................................................................2

*Laborers Health & Welfare Tr. Fund v. Kaufman & Broad*,
  707 F.2d 412 (9th Cir.1983).....................................................................................................13

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
  964 F.2d 965 (9th Cir. 1992)....................................................................................................10

*United States v. Bright*,
  596 F.3d 683 (9th Cir. 2010).....................................................................................................2

**TREATISES**

2 *Nimmer on Copyright* § 8.08[D][2] ..........................................................................................11

4 *Nimmer on Copyright* § 13.03[F][1][c]......................................................................................7

# I. INTRODUCTION

As the Court recently reiterated, the September 20, 2021 evidentiary hearing will be limited to ten discrete issues. ECF No. 1476. As to eight of them, Rimini is in compliance with the injunction. For the two the Court identified as injunction violations—a small number of files sent by clients to Rimini, and a single update for Matheson Trucking—Rimini should not be held in contempt because it substantially complied with the injunction and at all times acted in good faith based on a reasonable interpretation of the injunction.

As to all ten issues, Oracle has the burden to prove the elements of contempt by clear and convincing evidence, as it expressly acknowledged in its Motion for an Order to Show Cause. ECF No. 1368-s at 11. In an about-face, Oracle now claims that it only has the burden to prove an injunction violation, and that Rimini must show compliance was impossible. That is legally incorrect; Oracle had it right the first time, and has changed course only because it knows it cannot carry its burden of proving contempt under the proper legal standard.

Rimini is not in contempt of this Court's injunction. Based on the parties' submissions, the Court's clarifying orders, and the evidence to be presented at the hearing, Rimini respectfully requests that the show-cause order be discharged in its entirety.

# II. ARGUMENT

## A.   Oracle Misstates the Facts and the Law

Oracle misconstrues the discovery proceedings that led to Oracle's Motion, misstates the legal standard for contempt, and ignores this Court's prior rulings regarding "cross-use."

### 1.   Oracle Misstates the Discovery Record

Oracle asserts that Rimini "stonewalled" Oracle in discovery, and goes so far as to represent that Oracle did not receive "full discovery into Rimini's support processes." Oracle's Brief ("OB") at 2, 5–7. These and other complaints about discovery are not only untimely, but also demonstrably false. Oracle sought—and received—wide-ranging discovery into Rimini's post-trial support processes. *See* ECF No. 1374-3-s ¶¶ 28–46. Rimini produced hundreds of thousands of employee emails, and hundreds of thousands of non-custodial files, including: (1) copies of Rimini's updates; (2) update documentation describing the updates;

(3) documents describing the code changes that encompass the updates; and (4) log files related to updates and testing. *Id.* ¶ 36. Oracle was also given live access to Rimini's development and testing platforms (█████, █, and ███). *Id.* ¶ 41. This discovery was *in addition to* the 10 million documents (40 million pages) and 4.2 terabytes of data that Oracle received in *Rimini II* (*id.* ¶ 2), which the Court permitted Oracle to use here (*Rimini II*, ECF No. 1237).

After carefully managing discovery and holding several hearings and status conferences, Magistrate Judge Ferenbach recognized Rimini's discovery efforts and the breadth of discovery that Rimini provided to Oracle, remarking that: "a ton of discovery has been given" and "you've [Oracle] gotten an awful lot of discovery." ECF No. 1310 at 23:15–18; ECF No. 1294 at 47:20–21. Oracle has been virtually living in Rimini's systems for years; it should not be heard to complain about lack of discovery. Rimini would venture that Oracle has received more discovery in this proceeding than in any contempt proceeding in this District.

### 2.   Oracle Misstates the Legal Standard for Contempt

As Oracle itself has previously recognized, "[t]o hold Rimini in contempt, Oracle must show (1) Rimini violated the Court's Injunction, (2) beyond substantial compliance, (3) that Rimini's violations were not based on a good faith and reasonable interpretation of the Injunction, and (4) by clear and convincing evidence." ECF No. 1368-s at 11 (citing *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010)); *see also Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Oracle now backtracks, claiming that it need only show an injunction violation and then the burden "shifts to [Rimini] to demonstrate why they were unable to comply." OB at 7. That is wrong. The burden shifts to Rimini to demonstrate that it was unable to comply *only if* Oracle proves *all* of the required elements of contempt by clear and convincing evidence. *See, e.g., Gopher Protocol, Inc. v. Discover Growth Fund, LLC*, 2019 WL 6307615, at *2 (D. Nev. Nov. 25, 2019). Oracle's attempt to evade its burden is a tacit concession that it cannot meet that burden.

### 3.   Oracle Contradicts This Court's Rulings Regarding "Cross-Use"

Oracle continues to advance the argument that unlawful "cross-use" occurs whenever

Client B receives any benefit whatsoever as a result of Rimini's use of Client A's software for Client A. *See* OB at 15–16. But the Court already made clear—twice—that not every ancillary benefit to Client B from Rimini's use of Client A's software is "cross-use."

For example, the Court held that Rimini may re-use experience and know-how gained while using Client A's software to become faster at implementing the same or similar updates for other clients. *Rimini II*, ECF No. 1253 at 87; ECF No. 1459 at 16 ("It would be inapposite to find that simply because Rimini's developers are able to develop updates faster, with less testing, after they have built the update for another client, Rimini is violating the permanent injunction against cross-use."). The Court also rejected Oracle's argument that testing for one client "benefits" other clients that require the same update. ECF No. 1459 at 19 ("[S]o long as Rimini is testing the update in its client's individual environments, the testing itself (and necessarily, the copies made in the process of testing the update) is for the benefit of each individual client."). It further held that even if "Rimini [chooses] to not test the update because it ha[s] previously been tested and worked for other clients," that is not "cross-use." *Id.* at 26.

Since Process 2.0, the Court has found "cross-use" only in "limited circumstance[s]" based on unique facts. *Rimini II*, ECF No. 1253 at 87. The Court found an update for Campbell Soup was "cross-use" because Campbell Soup told Rimini it did not want the update, yet Rimini created the update using Campbell Soup's software, and then sent that update "outright" to another client, "without any *separate development or testing* in [that client's] environment." *Id.* at 45–46; ECF No. 1459 at 17 (emphasis in original).[1] Similarly, the Court found that a second update involving City of Eugene ("COE") constituted "cross-use" when Rimini developed the update in COE's environment and then sent it "outright" to three other clients "*without any testing or development* in their respective environments." *Rimini II*, ECF No. 1253 at 53; ECF No. 1459 at 17–18 (emphasis added); *see also id.* at 26 (finding lack of "any indication [an update] was developed or tested in [a] client's environments" dispositive). Thus,

---

[1] In its Order Granting Rimini's Motion for Reconsideration, the Court struck page 17, line 1, through page 18, line 23 of the Court's Order to Show Cause because those pages relate to pre-injunction events that could not be injunction violations. ECF No. 1476 at 2. Rimini cites that stricken portion of the Order only to illustrate the Court's guidance regarding "cross-use" and the Court's summary of its prior rulings.

whether there is "separate development or testing" of an update is a key issue.

Oracle ignores or contravenes this framework throughout its brief and even argues that implementation and testing in a recipient client's environment is "irrelevant." OB at 15. Oracle is applying the wrong set of rules. Under this Court's orders, Oracle's attempts to show that Rimini engaged in "cross-use" prohibited by the injunction fail.

**B.   Rimini Should Not Be Held in Contempt for the Two Violations the Court Found**

  **1.   Rimini Should Not Be Held in Contempt for the Isolated Files on Its Systems, Sent by Clients**

Over the one-year period covered by this proceeding, Rimini provided support to almost ▊▊▊▊ clients. Despite Rimini cautioning its clients not to do so (Rimini's Brief ("RB") at 11), three of those clients sent PeopleSoft materials to Rimini. Oracle devotes much of its brief to arguing that Rimini violated the injunction by creating "reproductions" of these files when it, for example, forwarded an email with the files attached. OB at 9. But that is not in dispute—the Court already found a violation. The issue before the Court now is whether Rimini should be held *in contempt* for having those isolated files on its systems, and on that issue Oracle falls far short.

Oracle does not dispute that the three instances in which clients sent Rimini PeopleSoft files were a *violation* of Rimini's policies, *not* Rimini's normal process. ▊▊▊▊

▊▊▊▊

▊▊▊▊

▊▊▊▊

▊▊▊▊

▊▊▊▊ In other words, whereas clients were required by Rimini's policies to place these files in their own environments where Rimini was authorized to access them, these clients sent the files to Rimini, and Rimini then placed them in the clients' environments. The fact that the files touched Rimini's systems in this process may be a technical violation, but it is not contumacious.

Oracle does not and cannot allege that it was harmed by those mistakes. Oracle argues that Rimini "used" the files, but only in the most technical sense of opening a file or moving it to a client's environment—there is no evidence that Rimini tried to use the files for its own benefit or for any improper purpose. Oracle likewise offers no evidence that Rimini acted willfully to violate the injunction. If anything, the small number of incidents shows that Rimini's efforts to comply with the injunction and educate clients not to send Rimini Oracle software or support materials have been successful. *See* RB at 11.[2]

### 2. Rimini Should Not Be Held in Contempt Regarding Its Update for Matheson Trucking

Rimini acted based on a good faith and reasonable interpretation of the injunction and substantially complied with the injunction. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Rimini reasonably believed this update was not "cross-use," and Oracle will not be able to prove to the contrary by clear and convincing evidence. ████████████████

████████████████████████████████████████████████████████

---

[2] Oracle attempts to raise new alleged violations not raised in its Motion. OB at 16. The Court has ruled twice now that this is improper (ECF No. 1459 at 35; ECF No. 1476 at 2), and in any event the claims lack merit. For example, ████████████████

████████████████████████████████████████████████████████

[3] Rimini preserves its contention that Oracle's RAM copy theories are precluded by the essential step defense. RB at 18 n.7. Oracle asserts that Rimini waived any Section 117 defense to contempt by withdrawing a Section 117 defense in *Rimini I*. OB at 19 n.10. But waiver principles do not apply to the withdrawal of a defense and reassertion of that defense in contempt proceedings (*see Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1318 (Fed. Cir. 2004)), and Rimini has a due process right to assert the defense in this context. Indeed, because Oracle's contempt motion is based on events not adjudicated in *Rimini I*, Rimini could not have "waived" this defense in the previous proceeding.

Case 2:10-cv-00106-LRH-VCF   Document 1478   Filed 06/21/21   Page 9 of 19

1 ████████████████████████████████████████
2 ████████████████████████████████████████
3 ████████████████████████████████████████
4 ████████████████████████████████████████
5 ████████████████████████████████████████
6 ████████████████████████████████████████
7 ████████████████████████████████████████

Oracle's arguments that Rimini did not act in good faith all lack merit.

*First*, Oracle argues that this was "prototypical cross-use" because Rimini sent a single version of a ███████████████████████████ to multiple clients from its systems. OB at 12–13. But those files do not contain any Oracle code, sending them does not reproduce any Oracle software, and thus there is no violation, much less contempt.

*Second*, Oracle analogizes this update to the PPACA update for COE that this Court adjudicated on summary judgment in *Rimini II*. Notwithstanding that the Court's Order on that update occurred *after* this Matheson update and thus could not have affected Rimini's reasonable beliefs, the analogy fails because the two updates are materially different. The Court found that the PPACA update was "cross use" because it was "only developed in [COE]'s environment," was not "developed or tested in any other client's environment," and was sent "outright" from COE's environment to other customers. *Rimini II*, ECF No. 1253 at 53; ECF No. 1459 at 18 (noting the absence of "any testing or development in [recipient clients'] respective environments"). None of those factors applies to the Matheson update, ███████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████.

*Third*, Oracle claims that there is no evidence that COE needed the update (OB at 13), but that is false. ████████████████████████████████████████████████████████ ████████████████████████[4] Oracle's attempts to analogize this update to Rimini's update for

---

[4] Exhibits A through P were submitted with Rimini's initial brief (ECF No. 1469-s); Exhibits Q and R are attached to the Reply Declaration of Eric D. Vandevelde submitted herewith.

Gibson, Dunn & Crutcher LLP

6

RIMINI'S REPLY REGARDING ORDER TO SHOW CAUSE
CASE NO. 2:10-CV-00106-LRH-VCF

Campbell Soup adjudicated on summary judgment in *Rimini II* fall flat. OB at 13–14. The Court found "cross-use" for the Campbell Soup update in *Rimini II* "[b]ecause Campbell Soup *specifically told Rimini that it did not want the PPACA Phase 1 update*," and thus Rimini's work in Campbell Soup's environment was "not solely for Campbell Soup's internal use." *Rimini II*, ECF No. 1253 at 45 (emphasis added). Nothing of the sort occurred here.

*Fourth*, this update—one of ▇ in the relevant period—cannot rise to the level of substantial non-compliance with the Court's injunction. *Dual-Deck*, 10 F.3d at 695 (small number of "technical violations" insufficient to hold party in contempt). Oracle claims that Rimini "does not offer proof that ▇ updates is an accurate number" (OB at 28), but Rimini listed, by update identification number and client, more than ▇ updates in its response to Oracle's Interrogatory No. 5, noting that this was only a partial list.

**C.  Rimini Did Not Violate the Injunction, and Certainly Did Not Act Contumaciously for the Eight Other Discrete Instances Set for Hearing**

  **1.  Rimini's RSPCMPAY.cbl File Did Not Violate the Injunction**

To show that Rimini's RSPCMPAY.cbl file violates the injunction, Oracle must demonstrate via "analytic dissection" that the file "contains protected Oracle expression that Rimini is prohibited from having on its systems." ECF No. 1459 at 21–22. Oracle's expert did not conduct analytic dissection, and thus Oracle cannot meet its burden. Oracle's claim that Rimini's file "cop[ied]" lines of code from an Oracle file (OB at 16) is false and misleading because, by failing to perform analytic dissection, Oracle fails to acknowledge that the limited similarities are due to unprotectible, functional elements, such as both files needing to pull data from a specific database. RB at 15–16.

Oracle now contends that Ms. Frederiksen-Cross *did* perform analytic dissection (OB at 16), but that is wrong. Ms. Frederiksen-Cross simply did not perform either of the core steps of analytic dissection—she did not filter out unprotectible elements from RSPCMPAY.cbl, nor did she compare the remaining elements to PSPTARRY.cbl to determine whether any protectible portions are substantially similar. *See, e.g., Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994); 4 *Nimmer on Copyright* § 13.03[F][1][c]; ECF No. 1392-s

at 5–8. Instead, the *only* work she did was to create a computer-generated comparison—similar to a "redline"—between the two files and assert that certain lines in the Rimini file "match" the Oracle file. Indeed, as Rimini pointed out, Ms. Frederiksen-Cross did precisely the same thing in another case, which led the court to deem her opinions insufficient as a matter of law to establish infringement. *DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *14 (D. Or. Sep. 12, 2019). Oracle has no response and thus, tellingly, it simply ignores that case.

Oracle also argues that analytic dissection is not required when "the infringer has engaged in direct, literal copying and thus necessarily copied *all protected expression within the work*." OB at 17 n.9 (emphasis added). That is not the law. *See* ECF No. 1418-s at 2–4. But, in any event, Oracle does not even contend that RSPCMPAY.cbl is a literal copy of "all the protected expression" within PSPTARRY.cbl (let alone PeopleSoft, the copyrighted work), and thus even if Oracle had accurately characterized this rule, it would not apply here.

### 2. Rimini's JHN Update Did Not Violate the Injunction

Oracle argues that Rimini committed "cross-use" by supposedly testing an update in COE's environment for JHN. OB at 18. That is false. The update related to a W-2 form that affected many clients, including COE, and Rimini's testing in COE's environment was to support COE. Rimini separately implemented and tested the update for JHN. RB at 17.

[redacted] *See, e.g., id.* at '273, '272, '270. No evidence supports Oracle's claim that JHN's update was not tested or that COE did not need this update.

Oracle's "cross-use" argument is that by testing an update in COE's environment for COE and knowing it "will work" (OB at 18) Rimini engaged in "cross-use" when it

Gibson, Dunn & Crutcher LLP

implemented and tested the same update for JHN. But the Court already rejected that argument. ECF No. 1459 at 16 ("It would be inapposite to find that simply because Rimini's developers are able to develop updates faster, with less testing, after they have built the update for another client, Rimini is violating the permanent injunction against cross-use."); *see also id.* at 19, 26.

### 3. Rimini's Rsi940a.sqr Updates for ▮ and ▮ Did Not Violate the Injunction

Oracle does not dispute that HCM200049 involved editing "2 GIF files" and modifying a Rimini-created file called rsi940a.sqr, none of which contain any Oracle code. OB at 19; RB at 18–19. Oracle contends the update "parallels" the PPACA update this Court adjudicated on summary judgment in *Rimini II* (OB at 19), in which this Court held that "cross-use" occurred where an update was created using PeopleSoft tools in COE's environment, was "only developed in [COE]'s environment," was not "developed or tested in any other client's environment," and was "sent outright" from COE's environment to other customers (*Rimini II*, ECF No. 1253 at 53). But there is nothing "parallel" about those updates.

*First*, the evidence will show that, unlike the PPACA update the Court adjudicated, development occurred in ▮ and ▮'s environments. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5]

*Second*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Moreover, even if ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that still would not be "cross-use" based on the Court's rulings because "Rimini is not required to

---

[5] Oracle wrongly criticizes Rimini for attaching only a portion of its evidence to its Response and indicating what the evidence will show at the hearing. OB at 1. As Rimini noted, due to the page limits on evidence, Rimini submitted only exemplary documentary evidence and will present additional documents and testimony at the hearing. RB at 2 n.2.

test updates and if Rimini chooses to send a client an untested update, developed in that client's environment, the Court cannot find that conduct violates the injunction." ECF No. 1459 at 26 (no "cross-use" where "Rimini was unable to conduct QA testing due to an issue with the client's environment" and "Rimini chose to not test the update because it had previously been tested and worked for other clients before distribution").

*Third,* ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Oracle's claim that COE's environment was a "generic" environment (OB at 20) is unfounded—using a *client-specific* environment on the client's own system to develop an update for that client is nothing like the Rimini-hosted generic environments, not associated with any client, used in Process 1.0.

    **4. Rimini's 1099 Update for Easter Seals Did Not Violate the Injunction**

  Oracle does not dispute that Rimini's 1099 update for Easter Seals does not contain *any* Oracle code and does not identify any Oracle "protected expression" supposedly incorporated into the file. Accordingly, it is not a derivative work under Ninth Circuit law. *E.g.*, *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 968 (9th Cir. 1992).

  *First,* Oracle claims that this Court "concluded" that the update is a derivative work, but that is false; the Court simply acknowledged Oracle's *allegation,* noting that *"Oracle points to only one example of a derivative work,"* ECF No. 1459 at 24 (emphasis added). Oracle also argues the 1099 update must be a derivative work because it "was designed to interact with PeopleSoft" and is not for use with other software programs. OB at 21. But even if true, that would not make it a derivative work because a derivative work must substantially "incorporate a portion of the copyrighted work," and this update does not. *E.g.*, *Lewis Galoob Toys,* 964 F.2d at 967, 969 (Game Genie that could only operate with a Nintendo System and was "useless

by itself" was not a derivative work); see *Rimini II*, ECF No. 1298 at 8–14.

*Second*, contrary to Oracle's arguments, the 1099 update is materially different from the update this Court held to be a derivative work in *Rimini II* because the 1099 update was not created using PeopleTools. *Rimini II*, ECF No. 1253 at 52. Rimini noted this in its brief, and Oracle does not dispute the point. RB at 21; OB at 21.

*Third*, Oracle contends that Rimini "cross-used" this update because ███████ ███████████████████████████████████ Oracle did not contend in its Motion that the 1099 update for Easter Seals was "cross-used"; it argued only that it was a derivative work, and Oracle cannot raise new arguments now. ECF No. 1368-s at 23. In any event, ███████████████████████████████████████████ ███████████ does not reproduce Oracle software and cannot violate the injunction.

*Fourth*, ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████ licensees may have agents exercise the *same rights* they have under a license agreement. *See Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757–58 (7th Cir. 2006); *see also* 2 *Nimmer on Copyright* § 8.08[D][2] (licensees can "fix, update, debug, customize, test and modify [their] copy of [the licensed software]" and have "unbridled authority to 'authorize' others to effectuate those activities for [them]"). Oracle's contrary argument is wrong as a matter of law.

> 5. **Rimini's Updates for Rockefeller Group and Home Shopping Network ("HSP") Did Not Violate the Injunction**

Rimini's update HCM200105 for Rockefeller and HSP involved several components, ███████████████████████████████████████████
███████████████ RB at 22. Oracle now claims that it is challenging only one aspect of the update: ███████████████████████████████████████████
███████████

1   ██████████████████████████████████████████████████████████
2   ██████████████████████████████████████████ As Oracle does not
3   dispute, Rimini developed the update in those environments (separately for each) and tested
4   them. RB at 22–23; OB at 22–23; ECF No. 1369-36-s (████████████).

5   Oracle offers no coherent argument for how this could be "cross-use." It argues that
6   ██████████████████████████████████████████████████████████
7   ██████████████, but that is false. ████████████████████████████
8   ██████████████████████████████████████████████████████████
9   ██████████████████████████████████████████████████████████
10  ████████████████████████████████████████████████ See ECF
11  No. 1459 at 18 (describing "cross-use" where update was "prototyped" and then sent to other
12  clients "without any testing or development in their respective environments"). Oracle does
13  not even attempt to explain how this update could be "cross-use" under the Court's prior rulings.

14      **6.   Rimini Complied With the JDE Software Source Code Provision**

15  "J.D. Edwards software source code," as used in the injunction ████████████
16  ████████, means the proprietary closed code that is core to JDE and not known to anyone outside
17  of Oracle. ECF No. 1386-3-s ¶¶ 24, 68–83. It does not mean the open code shipped openly to
18  all licensees that Oracle encourages licensees to access and modify.

19  Oracle does not dispute that ████████████████████████████████
20  ██████████████████████████████████████████████████████████
21  ██████████████████████████████████████████████████████████
22  ██████████████████████████████████████████████████████████
23  ██████████████████████████████████████████████████████████
24  ██████████████████████████████████████████████████████████
25  ██████████████████████████████████████████████████████████
26  ██████████████████████████████████████████████████████████
27  ██████████████████████████████████████████████████████████
28  ██████████████████████████████████████████████████████████

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Oracle's arguments that modifying non-proprietary open
2 code is nonetheless a violation of the injunction are baseless.

3     *First*, Oracle claims that Rimini's interpretation is "sophistry" because closed code can
4 only be accessed through reverse engineering and decompiling. OB at 24. ▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7     *Second*, Oracle falsely claims that Professor Astrachan supports Oracle's interpretation.
8 OB at 24. To the contrary, as a computer scientist and not a licensing expert, Professor
9 Astrachan stated that he had no opinion regarding the legal definition of "J.D. Edwards software
10 source code" or how that term is understood in the JDE support industry. ECF No. 1369-38-s
11 ¶ 307. He noted, however, that "typically 'source code' is not shipped with software; it is
12 proprietary hidden code meticulously guarded internally at companies," consistent with
13 Rimini's view that code shipped openly with JDE is not JDE "software source code." *Id.* ¶ 309.

14     *Third*, Oracle has no evidentiary rebuttal to Rimini's ERP industry expert, Stephen
15 Lanchak, who has knowledge regarding how "J.D. Edwards software source code" was
16 interpreted by JDE and the industry, Oracle's encouragement of licensees to copy and modify
17 open code, the tools provided with JDE to do so, and JDE's industry success *because* it is
18 modifiable. RB at 25. Oracle dismisses this testimony as an attempt "to change the meaning
19 of the Injunction after the fact." OB at 24. But the meaning of "J.D. Edwards software source
20 code" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and was never litigated in the underlying trial.
21 Evidence of Oracle's practice regarding, and the industry's understanding of, that term is
22 critically relevant to interpreting it. *See, e.g., Laborers Health & Welfare Tr. Fund v. Kaufman
23 & Broad*, 707 F.2d 412, 418 (9th Cir.1983) (noting that course of performance under a contract
24 "is to be given great weight" in interpreting an ambiguous contract).

25     *Fourth*, Oracle claims that certain emails' use of the term "source code" contradicts
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ OB at 24–25.
27 There is no conflict. As Rimini's witnesses have consistently testified, the term "source code,"
28 by itself, can mean different things in different contexts. Indeed, Oracle's own witness, Samuel

1  Chan, who has a degree in computer science, testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
3  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
4  But here, the question is not what "source code" means, but what "J.D. Edwards software source
5  code" means in the specific context of specific licenses. To answer that question, the Court
6  should look to the license agreements, the injunction language, the conduct of JDE and Oracle
7  with respect to their licenses, how Oracle has interpreted that term ▇▇▇▇▇▇▇▇▇▇
8  ▇▇▇▇▇▇ and the industry understanding. *See* RB at 24–26.

      *Fifth*, while Oracle does not dispute that reading Oracle's licenses to prevent third-party JDE support would be copyright misuse (RB at 25 n.9; OB at 25), Oracle argues that Rimini could continue to provide some limited support for JDE licensees even if the injunction were interpreted to apply to both open and closed code. OB at 25. But Oracle conspicuously does not dispute that clients need updates and that third-party support providers cannot provide those updates without accessing open code.

      *Sixth*, in responding to Rimini's point that Oracle's reading of Paragraph 8 of the injunction would render Paragraph 10 superfluous (RB at 24–25), Oracle contends that— despite "overlap"—those paragraphs can coexist. OB at 26. Not so. Paragraph 10 permits Rimini to "reproduce, prepare derivative works from, or use" a licensee's JDE software "to develop or test software updates or modifications," so long as the update or modification is not "for the benefit of any other licensee." But to do any of these permitted activities, Rimini *must* copy open code (RB at 24–25), which Oracle does not dispute. Paragraph 10 proclaims that Rimini "shall not use a specific licensee's J.D. Edwards environment to develop or test software updates or modifications for the benefit of any other licensee," but under Oracle's interpretation, that prohibition is superfluous because "develop[ing] or test[ing] software updates or modifications" necessarily involves modifying open code and would be prohibited by Paragraph 8.

### D. Rimini Substantially Complied with the Injunction

      Even if the Court finds after the hearing that Rimini violated the injunction in any

respect, Oracle cannot prove that a few incidents out of ▆▆ updates amounts to "substantial" non-compliance. Quite the opposite—it confirms that Rimini has substantially revised its processes and made every effort to comply. Oracle claims Rimini failed to take "all reasonable steps" to comply with the injunction (OB at 28), but it does not deny that Rimini changed its processes, implemented separate client environments outside of Rimini's systems, adopted new policies, informed employees of the injunction, conducted trainings, and reminded clients not to send it Oracle files. *See* RB at 3–4. Rimini cannot ensure that no employee will ever make a mistake, and Oracle fails to identify what else Rimini as a company should have done.

### E. Rimini Relied on a Good Faith and Reasonable Interpretation of the Injunction

In the Ninth Circuit, a company "should not be held in contempt if [its] action appears to be based on a good faith and reasonable interpretation of" the injunction. *Dual-Deck*, 10 F.3d at 695; RB at 13 (citing cases). The instances set for hearing on "cross-use" present, at the very least, debatable situations that have not been settled by any prior ruling, and certainly were not addressed by any ruling made prior to the events. They concern issues such as Rimini's use of its own work product and knowledge that were never addressed or adjudicated in *Rimini I*, and which have been and continue to be hotly debated by the parties. Similarly, "J.D. Edwards software source code" has never been interpreted by this Court or the Ninth Circuit. Rimini submits that its interpretation of that term is correct for all the reasons stated. But even if the Court disagrees, Rimini's interpretation was at the very least reasonable.

### F. No Sanctions Are Warranted

Impoundment as a sanction is wildly disproportionate to the ten discrete issues identified by the Court, and legally unavailable because it is not compensatory. RB at 28–29. Oracle cannot seek damages without evidence of any harm. And no attorney fees are warranted here where "there was an effort to comply [with the court's injunction] and there is no evidence that the Defendants willfully or deliberately attempted to defy [the] injunction." *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 521 (E.D.N.Y. 2004).

### III. CONCLUSION

Rimini respectfully requests that the Court discharge the order to show cause.

1  Dated: June 21, 2021

2                                       GIBSON, DUNN & CRUTCHER LLP

3

4                                       By: /s/ Eric D. Vandevelde
                                                Eric D. Vandevelde

5                                       *Attorneys for Defendant
                                        Rimini Street, Inc.*