BOIES SCHILLER FLEXNER LLP
Richard J. Pocker (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV  89101
Telephone: 702.382.7300
Facsimile:  702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
William A. Isaacson (*pro hac vice*)
Karen Dunn (*pro hac vice*)
2001 K Street, NW
Washington, DC  20006
Telephone: 202.223.7300
Facsimile:  202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

MORGAN, LEWIS & BOCKIUS LLP
Benjamin P. Smith (*pro hac vice*)
Sharon R. Smith (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone: 415.442.1000
Facsimile:  415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com

ORACLE CORPORATION
Dorian Daley (*pro hac vice*)
James C. Maroulis (*pro hac vice*)
500 Oracle Parkway, M/S 5op7
Redwood City, CA  94070
Telephone: 650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,*
*Oracle America, Inc. and Oracle International*
*Corp.*

GIBSON, DUNN & CRUTCHER LLP
Mark A. Perry (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone: 202.955.8500
mperry@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas (*pro hac vice*)
Blaine H. Evanson (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
Casey J. McCracken (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
jgorman@gibsondunn.com
cmccracken@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Samuel G. Liversidge (*pro hac vice*)
Eric D. Vandevelde (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA  94566
Telephone:  925.264.7736
dwinslow@riministreet.com

RIMINI STREET, INC.
John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV  89169
Telephone:  336.908.6961
jreilly@riministreet.com

HOWARD & HOWARD ATTORNEYS
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone: 702.667.4843
wwa@h2law.com

*Attorneys for Defendants Rimini Street, Inc.,*
*and Seth Ravin*

1

2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3

ORACLE USA, INC.; a Colorado
Corporation; ORACLE AMERICA, INC., a
Delaware corporation; and ORACLE
INTERNATIONAL CORPORATION, a
California corporation,

4

5

6

Plaintiffs,

7

v.

8

RIMINI STREET, INC., a Nevada
corporation, and SETH RAVIN, an
individual,

9

10

Defendants.

11

CASE NO. 2:10-cv-0106-LRH-VCF

**JOINT PRE-HEARING ORDER RE
ORDER TO SHOW CAUSE**

Judge:   Hon. Larry R. Hicks

**PUBLIC REDACTED VERSION**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   BRIEF STATEMENT OF ISSUES TO BE TRIED

Pursuant to the Court's Order (ECF No. 1459 at 35), and based on the Court's orders setting forth the issues for hearing, the parties submit the following brief statement of the issues to be tried:

1.   The parties were unable to agree on a brief statement regarding the first issue to be decided and set forth their respective positions in the below chart:

| Oracle's Position | Rimini's Position |
|---|---|
| **Oracle's Statement of the Issue:** Whether Rimini should be held in contempt for violating Paragraph 5 of the Injunction by having the "'psptaxdt.dms' source code file and emails containing PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents" and similar such files and documents on its systems. *See* ECF No. 1459 at 22.<br><br>**Oracle's Position**: Oracle statement of this issue to be decided is a direct quotation from the Court's OSC Order. It is unclear why Rimini is disputing this aspect of the Court's Order. As Oracle further explained in its OSC Response, Rimini has incorrectly suggested that the PeopleSoft files and documents on its systems were only limited to the examples that Oracle presented in its OSC Motion. Oracle is mindful of the Court's rulings and will be prepared to present additional examples of violations of Paragraph 5 of the Injunction at the hearing if the Court believes that doing so is appropriate. Furthermore, to the extent the Court is not inclined to consider these files as additional Injunction violations in connection with these OSC proceedings, they are nonetheless relevant evidence refuting Rimini's allegations of substantial compliance and its claim that its Injunction violations are somehow isolated in nature. | **Rimini's Statement of the Issue:** Whether Rimini should be held in contempt for violating Paragraph 5 of the Injunction by having the "psptaxdt.dms" file and certain emails containing PeopleSoft allegedly copyrighted documentation and PeopleSoft Payroll update documents on its systems. *See* ECF No. 1459 at 22.<br><br>**Rimini's Position:** Oracle's proposed statement improperly expands the hearing to include alleged unspecified "similar such files and documents" that were not part of the Order to Show Cause. *See* ECF No. 1459 at 22. This violates the Court's twice-stated admonition that the hearing is limited to the specific issues identified by the Court in the Order to Show Cause. *See id.* at 35 ("[T]he Court cautions the parties to stay strictly within the bounds articulated above for its argument and evidence presentation; violations will not be tolerated."); ECF No. 1476 ("[T]he parties are not to argue or present evidence on any issue not specifically permitted by this Order at the upcoming hearing."). |

**2.**     Whether Rimini should be held in contempt for violating the Injunction with respect to update HCM200049 delivered to client Matheson Trucking. *See* ECF No. 1459 at 26–27.

**3.**     Whether Rimini violated Paragraphs 4 and 6 of the Injunction with respect to its testing of a W-2 update that Rimini delivered to customer Johnson Controls, and if so, whether Rimini should be held in contempt. *See id.* at 19–20.

**4.**     Whether Rimini violated Paragraphs 4 and 6 of the Injunction, with respect to an update affecting rsi940a.sqr delivered to clients ███████ and ███████, and if so, whether Rimini should be held in contempt. *See id.*

**5.**     Whether Rimini violated paragraph 5 of the injunction with respect to its RSPCMPAY.cbl file, and if so, whether Rimini should be held in contempt.  Relatedly, whether Rimini's RSPCMPAY.cbl file contains "protected Oracle expression that Rimini is prohibited from having on its systems." *See id.* at 22.

**6.**     Whether Rimini's 1099 update that Rimini emailed to Easter Seals on January 3, 2019 is a derivative work, and if so, whether Rimini's conduct violated the Injunction, and if so, whether Rimini should be held in contempt. *See id.* at 24.

**7.**     Whether Rimini violated Paragraph 8 of the Injunction by allegedly copying "J.D. Edwards software source code" in the development and testing of updates, and if so, whether Rimini should be held in contempt. *See id.* at 25.

**8.**     The parties were unable to agree on a brief statement regarding the eighth issue to be decided and set forth their respective positions in the below chart:

| Oracle's Position | Rimini's Position |
| --- | --- |
| **Oracle's Statement of the Issue:** Whether Rimini violated the injunction by copying the file prvtsidx.plb, and if so, whether Rimini should be held in contempt. *See id.* at 24–25.<br><br>**Oracle's Response:** The Court issued an Order to Show Cause as to the prvtsidx.plb file on Rimini's systems. ECF No. 1459 at 24–25.  During post-Injunction discovery | **Rimini's Statement of the Issue**:  This issue is moot.  The original issue was whether Rimini violated Paragraph 8 of the Injunction regarding J.D. Edwards software by allegedly copying the file prvtsidx.plb, and if so, whether Rimini should be held in contempt. *See id.* at 24–25.<br><br>Oracle admits that this is an Oracle Database file (not J.D. Edwards) and thus no longer |

and in the briefing on Oracle's OSC Motion, both parties presented arguments with the understanding that prvtsidx.plb is a JD Edwards file. *See, e.g.*, ECF No. 1386-1 at ¶ 204 (Professor Astrachan acknowledging that prvtsidx.plb is a "JD Edwards file"). Though the parties are now in apparent agreement that prvtsidx.plb is an Oracle Database file (which has often been included as part of JD Edwards software releases), this does not excuse Rimini's violation of the Injunction with respect to this file and the Court's prior rulings on Oracle Database. *See* ECF No. 476 at 7–15. Consistent with the arguments set forth in its OSC Response (ECF No. 1474 at 27), and set forth herein, Oracle intends to present evidence regarding this Injunction violation at the evidentiary hearing.

contends that Rimini violated Paragraph 8 of the Injunction with respect to this file. Accordingly, this issue should simply be dropped.

**Rimini's Position:** The issue presented in Oracle's OSC Motion was whether the file prvtsidx.plb, sent to Rimini by a client, allegedly violated Paragraph 8 of the Injunction prohibiting the copying of "J.D. Edwards software source code." ECF No. 1368 at 24–25. As stated in Oracle's proposed statements of fact below, Oracle now admits that prvtsidx.plb is not a J.D. Edwards file at all, but is an Oracle Database file. *See, infra*, Oracle Fact No. 80 (admitting that "[t]he prvtsidx.plb source code file is an Oracle Database file"). Oracle is no longer making the argument that it made in its OSC Motion—that this file allegedly represents copying of "J.D. Edwards software source code." It now seeks to present a new argument—not raised in its OSC Motion, and not even raised in its expert's reports—that Rimini violated some other paragraph of the injunction with respect to Oracle Database. The Court's Order to Show Cause only addressed Oracle's mistaken allegation made in its Motion—not this new allegation—and limited the issue to whether the file constitutes "J.D. Edwards software source code" under Paragraph 8. *See* ECF No. 1459 at 24 (recounting Oracle's allegation that Rimini violates "paragraph 8 of the permanent injunction" and that "Rimini allegedly copies [J.D. Edwards software] source code … when Rimini copied source code file, prvtsidx.plb."). The Court also expressly held that "the Court shall not issue an order to show cause as to Oracle Database." *Id.* at 28. To be clear, this Oracle Database file does not violate the injunction in any respect, and it complies with Oracle's licenses, but this is simply not an issue for this proceeding. There can be no clearer example of Oracle attempting to expand the issues beyond those set for hearing.

1

2       **9.**      Whether Rimini violated Paragraph 8 of the Injunction with respect to Rimini's

3   technical specification document for Rimini's JDE105328 update, and if so, whether Rimini

4   should be held in contempt.  *See* ECF No. 1459 at 25.

5       **10.**     Whether Rimini violated the Injunction with respect to update HCM200105,

6   delivered to clients Rockefeller Group International and Home Shopping Network, and if so,

7   whether Rimini should be held in contempt.  *See id.* at 27.

8       **11.**     For each of the foregoing, to the extent the Court finds that Rimini is in

9   contempt of the injunction, whether any sanctions are appropriate, and if so, what sanction.

10      **A.    Oracle's Separate Statement of the Issues to Be Tried**

11      The September 20, 2021, evidentiary hearing in this case will adjudicate Rimini Street,

12  Inc.'s ("Rimini") repeated and flagrant violations of the Court's permanent injunction

13  enjoining Rimini from continuing to infringe on Oracle's copyrighted software (ECF No.

14  1166, "Injunction").  Rimini should be held in contempt for its multiple Injunction violations

15  because they represent the same pattern and practice of infringing Oracle's copyrights that the

16  Court—and the *Rimini I* jury—have already held unlawful.

17      Over seven years ago in February 2014, the Court granted partial summary judgment

18  to Oracle, holding that Rimini infringed Oracle's copyrights on two primary grounds: cross-

19  use and local hosting of PeopleSoft software.  Those very same acts are at the core of seven of

20  the Injunction violations at issue in the contempt hearing, two of which have already been

21  found by the Court (see Violations 1 and 2, set forth below).  Rimini's claims of unintentional

22  violations and innocence are not credible given that its pattern and practices here are so

23  similar to its adjudicated infringement of Oracle's copyrights.  Rimini continues to treat

24  PeopleSoft environments ostensibly associated with City of Eugene as generic environments

25  for developing and testing updates for other PeopleSoft customers.  Rimini continues to

26  develop derivative work updates akin to the PPACA update that the Court held was an

27  infringing derivative work in its *Rimini II* summary judgment order.  Despite being ordered to

28

show cause by the Court, Rimini has failed to explain why repeatedly engaging in the same unlawful acts does not warrant the sanction of contempt.

The Court also ruled in its February 2014 summary judgment order that Oracle's JD Edwards licenses do not permit Rimini to copy JD Edwards source code (ECF No. 474 at 22), and similarly instructed the jury at trial in October 2015 that the "J.D. Edwards software license agreements" do not authorize Rimini "to make copies of the J.D. Edwards software application and documentation to, among other things, access the software's source code to carry out development and testing of software updates …."  ECF No. 880 at 27–28.  After the jury found Rimini liable for infringement of Oracle's JD Edwards copyrights, and the Ninth Circuit affirmed the copyright infringement verdict, the Court entered the Injunction, which plainly prohibits Rimini from "copy[ing] J.D. Edwards software source code to carry out development and testing of software updates."  Injunction ¶ 8.

Despite these multiple rulings from the Court, and its own documents acknowledging that its engineers copy JD Edwards source code, Rimini now claims that the meaning of  "J.D. Edwards software source code" has never been adjudicated and can only refer to what Rimini now calls "closed code" (which apparently refers to source code written by Oracle that is not made available to Oracle licensees).  These arguments lack merit.  First, *Rimini I* was not about Rimini attempting to reverse engineer or otherwise gain access to "closed code."  Rather, the trial concerned Rimini's copying and cross-use of the JD Edwards source code and software that it used to create updates for customers.  Thus, the conduct enjoined by the Injunction necessarily includes use of so-called "open source code" because that was the conduct at issue in *Rimini I*.  Second, Rimini's narrow definition of source code that excludes "open source code" would render Paragraph 8 of the Injunction superfluous.  Under Rimini's contrived definition, Paragraph 8 would only prevent Rimini from using source code that it neither has access to nor needs to have access to in order to service its clients while permitting Rimini to use and copy the very source code that the jury in *Rimini I* held Rimini had inappropriately copied.  Third, Rimini's attempt to re-litigate *Rimini I* and the meaning of Oracle's license agreements is a procedurally improper collateral attack on the Injunction.  *W.*

*Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th Cir. 1994).  If Rimini truly thought there was any ambiguity about the meaning of "J.D. Edwards software source code," then Rimini could have—and should have—raised vagueness challenges along with the myriad other complaints about the Injunction it twice presented to this Court and the Ninth Circuit.  Rimini never did so and never changed its J.D. Edwards support practices, thereby requiring Oracle to institute these post-injunction proceedings to enforce the plain language of the Injunction.

As Oracle established in its OSC briefing, and will prove at the contempt hearing, the evidence establishes the following ten violations of the Injunction:

*Violation 1*.  In its OSC Order, the Court held that "Rimini is violating the permanent injunction" by maintaining "the 'psptaxdt.dms' source code file and emails containing PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents" on its systems.  ECF No. 1459 at 22–23.  Rimini labels these violations "isolated," but ignores the numerous instances in which Rimini has used and reproduced PeopleSoft material on its own computer systems to provide support for customers.  To the extent required, Oracle intends to prove up additional such violations at the evidentiary hearing in order to rebut Rimini's allegations of substantial compliance and establish its contempt.

*Violation 2*.  In its OSC Order, the Court ruled that that Rimini's "update HCM200049, delivered to Rimini's client Matheson Trucking, without any indication it was developed or tested in that client's environment, is a clear violation of the permanent injunction."  ECF No. 1459 at 26.  Rimini now acknowledges that ████████████████ ████████████████████████████████████████████████████████ ███████████████████.  Yet Rimini attempts to avoid contempt with an improper rearguing of the predicate facts and cramped interpretations of the Court's prior orders.  Rimini also ignores that it ████████████████████████████████ ████████████████████████████████████████████████████ ████████████.  This serial cross-use warrants contempt sanctions.

*Violation 3*.  Rimini also cross-used the PeopleSoft software associated with the City of Eugene ████████████████████████████████████

1  ███████████████████████████. Rimini inexplicably ████████████

2  ████████████████████████████████████████████████

3  ███████████████████████████. Rimini's repeated cutting of corners

4  to use environments associated with City of Eugene to develop and test updates meant for

5  other clients demonstrates Rimini's continued reliance on cross-use as a means of support for

6  its customers.

7  **Violation 4**.  While Violation 4 was ongoing, Rimini also cross-used the PeopleSoft

8  software associated with City of Eugene ████████████████████████

9  ████████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ███████████████████████████████████. ECF No.

12  1469-3 at '442.  With its conduct at issue in Violations 2–4, Rimini engaged in at least three

13  acts of cross-use in just three business days, confirming that cross-use remains the centerpiece

14  of Rimini's support practices.

15  **Violation 5**.  Rimini copied protected expression found in Oracle's PSPTARRY.cbl

16  source code file into Rimini's RSPCMPAY.cbl source code file.  Rimini's copying of

17  protected expression includes variable names as well as the overall organization, spacing, and

18  divisions found in Oracle's PSPTARRY.cbl file.  Despite the jury's findings, Rimini

19  continues to inappropriately copy Oracle's PeopleSoft source code and store those copies on

20  its systems.

21  **Violation 6**.  The 1099 PeopleSoft update that Rimini emailed to Easter Seals on

22  January 3, 2019, is a derivative work that was not authorized by any provision of the Easter

23  Seals PeopleSoft license agreement and is therefore a violation of the Injunction.  Rimini also

24  violated Paragraph 5 of the Injunction by developing and maintaining this derivative work

25  update on its own computer systems, and further violated Paragraphs 4 and 6 of the Injunction

26  by developing this update through cross-use, as evidenced by █████████████████

27  ████████████████████████████. These facts prove the

28  absence of customer-by-customer development required by the Injunction.

*Violation 7*.  Rimini violates Paragraph 8 of the Injunction by "copy[ing] J.D. Edwards software source code to carry out development and testing of software updates." Injunction ¶ 8.  Rimini concedes that its JDE support processes involve copying and modifying what it calls the "open code" portions of its customer's JD Edwards software. Because what Rimini calls "open code" is in fact "J.D. Edwards software source code," Rimini should be held in contempt for this violation of the Injunction.  Nor would enforcing the Injunction as written amount to a "functional ban" on Rimini's providing JD Edwards support.  Rimini's own President has acknowledged that "most of our JDE work doesn't even touch source code. It is configurations and other things."  ECF No. 1474-28.

*Violation 8*.  Rimini also violated the Injunction by maintaining Oracle's prvtsidx.plb file on its systems.  The parties agree that this source code file is part of Oracle Database, and the Court has previously ruled at summary judgment that neither the Oracle Developer License nor the Oracle License and Service Agreement permitted Rimini to maintain copies of Oracle Database files on its systems for commercial purposes. ECF No. 476 at 7–15. The Court's reasoning, applied here, establishes another violation of the Injunction.  Rimini's allegations of false representations lack merit, not only because prvtsidx.plb is often included in JD Edwards software releases, but also because both parties have previously presented arguments acknowledging that this file is part of and used with JD Edwards.

*Violation 9*.  Rimini also violated Paragraph 8 of the Injunction with respect to the technical specification for its JDE105328 update.  The violation was twofold.  First, Rimini engaged in near verbatim copying of source code found in Oracle's R89078652 and P06767 J.D. Edwards software source code files.  Second, the technical specification instructs developers to ████████████████████████████████████, thus providing a blueprint for further Injunction violations.

*Violation 10*.  Rimini also violated the Injunction in cross-using its ████████ ████████████████████████████████████ ████████████████████████████████████

1    ███████████████████████████████.  Rimini's one code for all files are yet another

2    example of Rimini attempting to maximize its unlawful cross-use of Oracle software.

3         The breadth, depth, and substantive nature of these ten separate violations confirms

4    that Rimini is not in substantial compliance with the Injunction.  In addition, Rimini failed to

5    take all reasonable steps to comply with the Injunction.  Rimini made no changes to its JD

6    Edwards support processes after the Injunction went into effect.  Rimini continues to

7    incorrectly assert that its purported "Process 2.0" reforms should excuse any Injunction

8    violation, despite this Court ruling that "Process 2.0 could include such [enjoined] conduct,

9    just as Process 1.0 did."  ECF No. 1459 at 10–11.  Rimini continues to repackage previously-

10   rejected arguments into an alleged good faith and reasonable interpretation of the Injunction.

11   And Rimini's unsupported claim that its Injunction violations are minimal compared to the

12   overall volume of its support practices ignores that Rimini afforded Oracle only limited

13   discovery into its support practices.

14        Rimini also advances an erroneously narrowed definition of cross-use, asserting that

15   since "Process 2.0, the Court has found cross-use only in limited circumstances based on

16   unique facts."  ECF No. 1480 at 3 (quotations and alterations omitted).  Rimini's assertion

17   finds no support in the language of the Injunction, the Court's prior summary judgment

18   orders, or the Ninth Circuit's rulings on cross-use.  For example, if the Court finds that Rimini

19   used or otherwise reproduced PeopleSoft software associated with one customer "to support,

20   troubleshoot, or perform development and testing for another licensee," then Rimini has

21   violated the Injunction.  Injunction ¶ 6.  Similarly, if the Court finds that Rimini used or

22   otherwise reproduced PeopleSoft software associated with one customer "to develop or test

23   updates or modifications for the benefit of any other customer," then Rimini has violated the

24   Injunction.  *Id.*  Oracle will establish these and other Injunction violations at the evidentiary

25   hearing.

26        This Court should find Rimini in contempt and either impound Rimini's computer

27   systems or require that they be placed in escrow to allow monitoring by Oracle for additional

28   Injunction violations.  During the evidentiary hearing, Oracle will discuss the logistical details

1    of the various impoundment and escrow options that would best enforce the Injunction while

2    imposing the least burden possible on Rimini's continued operation.  Oracle also reserves the

3    right to submit further briefing on the appropriate impoundment sanction after the evidentiary

4    hearing.  Should the Court find contempt, Oracle will also seek leave to take discovery into

5    and brief the issue of any compensatory damages that resulted from Rimini's conduct in

6    violation of the Injunction and are non-duplicative of any *Rimini II* damages.  Oracle will also

7    seek leave to request the attorneys' fees that it incurred in exposing Rimini's conduct and

8    enforcing the Injunction.

9         Rimini offers little substance in response to these Injunction violations and instead

10   levies process-driven complaints about the preparation of this pre-hearing order.  Rimini

11   complains that Oracle designated too much deposition testimony, despite Oracle's

12   commitment to significantly reduce its designations before the evidentiary hearing and

13   concrete proposal for doing so that is set forth in Section VI.B.[1]  Rimini also complains about

14   the length of Oracle's exhibit list, but the vast majority of Oracle's exhibits are identical sets

15   of 1099 derivative work PeopleSoft update files from Rimini's systems.  Oracle would have

16   been willing to withdraw these exhibits had Rimini not contested Oracle's proposed

17   statements of fact that these files are in fact identical.  The remainder of Oracle's exhibits are

18   relevant and responsive to the issues to be tried and Oracle is committed to further

19   streamlining its presentation of evidence before the hearing.  These and other Rimini

20   complaints ring hollow, particularly because Rimini is refusing to allow the three fact

21   witnesses that it intends to call at the hearing to sit for depositions during these post-

22   Injunction proceedings.

23

24   _____

25   [1] Even the two examples offered by Rimini negate any claim of "overreaching."  Rimini
         complains that Oracle designated the testimony of AFW developer Rick Frank even
26       though Oracle told Rimini weeks ago that Oracle intends to use its designated testimony
         relating to Rimini's AFW tools only insofar as such testimony is relevant to and relates to
27       conduct underlying the violations to be adjudicated at the evidentiary hearing.  Rimini
         likewise complains that Oracle designated testimony from Easter Seals even though that
28       customer and Rimini's reproduction and use of its associated PeopleSoft software is
         directly at issue in these contempt proceedings.

Rimini's complaints about Ms. Frederiksen-Cross's supplement to her expert reports are also without merit. Ms. Frederiksen-Cross's supplement is slightly over two pages long, and simply declares that she (1) considered additional evidence marshaled by the parties and included on their respective exhibit lists, (2) is of the opinion that this additional evidence provides further support to the opinions previously set forth in her report, and (3) if asked to do so, will explain why at the evidentiary hearing. Her supplement is entirely consistent with the Court's repeated directive that it wishes to hear further testimony to determine whether Rimini should be held in contempt for its violations of the Injunction.[2]

The point of an evidentiary hearing is to explore the evidence. Rimini, by contrast, prefers unfair surprise and since the very start of these post-Injunction proceedings has resisted all discovery into whether its support processes comply with the Injunction. Rimini now seeks to unjustifiably limit the scope of Ms. Frederiksen-Cross at the evidentiary hearing. Yet, at the same time, Rimini has ignored the Court's directive to show cause, held its defenses in reserve, stated repeatedly in its briefing "the evidence will show" instead of revealing the evidence, refuses to allow any exploration of the testimony of its individual witnesses before the evidentiary hearing by deposition or informally, and seeks to upend the orderly and traditional procedure in which the moving party presents first. Each of Rimini's attempts to gain an unfair advantage is improper and should be rejected by the Court.

**B.     Rimini's Statement of the Issues to Be Tried**

The Court set this hearing to resolve conflicting evidence regarding ten discrete issues identified in its Order to Show Cause (ECF No. 1459): two acts by Rimini that the Court found were actual violations of the Injunction, and eight that the Court identified as potential

_____

[2] *See, e.g.*, ECF No. 1459 at 20 ("The Court, as fact finder, must hear from both parties competing experts to determine if Rimini's testing in this context constitutes unlawful cross-use in violation of the permanent injunction."); *id.* at 22 ("The Court, as fact finder, must hear from both parties competing experts to determine if Rimini's file contains protected Oracle expression that Rimini is prohibited from having on its systems."); *id.* at 24 ("[A]n evidentiary hearing is needed to determine if the creation and distribution of the update violated the permanent injunction."); *id.* at 25 ("The Court finds that the parties dispute over the definition of source code is material to the Court's ruling, and therefore, an evidentiary hearing on the issue is necessary before the Court can determine whether Rimini's conduct violates the injunction."); *id.* at 25, 27.

violations.  For each issue, Oracle has the burden to prove by clear and convincing evidence that: (1) Rimini violated the Injunction (other than the two violations already found); (2) Rimini was not in substantial compliance with the Injunction; and (3) Rimini's actions were not based on a good faith and reasonable interpretation of the Injunction.  As set out at length in Rimini's briefing in response to the Court's Order to Show Cause (ECF Nos. 1469, 1480), Oracle cannot meet its burden for any of the ten discrete issues.

### Oracle's Violation of Court Orders

Today, mere *hours* before this Joint Pre-Hearing Order was due to be filed and on the eve of trial, Oracle served a new, "supplemental" expert report—5 months after the Court's Order to Show Cause, and 14 months after the close of expert discovery, in violation of the Federal Rules of Civil Procedure, this Court's scheduling order and Order to Show Cause, and the Local Rules.  The new report claims that Oracle's expert, Barbara Frederiksen-Cross, has reviewed hundreds of additional exhibits not previously cited or discussed in her prior reports in this matter, and that she will provide further opinions about these documents at the upcoming hearing.  She states:  "I will explain why these additional documents provide further support for my opinions."  She does not analyze, explain, or otherwise comment on *any* of these hundreds of documents, nor describe how they support her (undisclosed) "opinions," nor even identify what opinions they relate to—apparently opting to attempt to do so for the first time at the hearing.  This is prejudicial and improper.  Rimini intends to file a motion to strike the eleventh-hour report.  Both parties' experts should be limited to the opinions they disclosed and the documents they relied on and cited for those opinions, as the rules require.

Oracle also has indicated that it intends to violate the Court's order to limit evidence to the ten issues set for hearing.  Although the Court has made clear in its orders—twice—that "the parties are not to argue or present evidence on any issue not specifically permitted by [its Order to Show Cause] at the upcoming hearing" (ECF No. 1476 at 2; ECF No. 1459 at 35), Oracle's sections of this Prehearing Order indicate it has no intention of heeding the Court's instructions.  Indeed, Oracle's Statement above claims that Oracle intends to "prove up" unspecified "additional such violations" of the Injunction, confirming Oracle's desire to flout

the Court's twice-repeated admonishment to adhere to the issues raised in Oracle's motion to show cause and set for hearing by the Court's Order to Show Cause.

Likewise, of the 17 depositions included in Oracle's deposition designations, *14 of them took place during the Rimini II discovery period*, years before the Injunction was in effect and years before the specific acts at issue in this hearing took place. Moreover, Oracle has designated many hours, likely multiple days in total, of testimony that relate to topics the Court already ruled will not be addressed during the hearing, such as Rimini's AFW tools, Dev Instructions, and Rimini's clients' use of the cloud. ECF No. 1459 at 15 ("the Court denies Oracle's motion as it relates to the Dev Instructions and AFW Tools software outright"), 20 ("Oracle's motion for an order to show cause as it relates to Windstream, and/or cloud hosting in general, will not be considered in these contempt proceedings."). For example, Oracle designated almost the entire deposition of Rick Frank, the Rimini engineer responsible for maintaining Rimini's AFW tools and whose deposition was *entirely* about those tools. Similarly, Oracle designated lengthy portions of testimony from the *Rimini II* deposition of Rimini client Easter Seals, which focused on Easter Seals' use of Windstream cloud-hosting services. Oracle has also listed more than *1,300 exhibits* on its exhibit list, and many hundreds of these exhibits are irrelevant to the specific acts that are the subject of the Court's Show Cause Order.

Moreover, one of the issues set for hearing concerns the file prvtsidx.plb. *See* ECF No. 1459 at 24. In its Motion to Show Cause briefing, Oracle repeatedly argued that the file is a J.D. Edwards file, and that Rimini violated Paragraph 8 of the Injunction by copying it. *See, e.g.*, ECF 1368 at 24–25 ("Rimini also copied J.D. Edwards source code onto its own systems, as evidenced by Rimini copying the J.D. Edwards source code file prvtsidx.plb onto its own systems and then making modifications."). The Court relied on Oracle's representation and set this disputed issue for the show cause hearing. ECF 1459 at 24. Now, in its Separate Statement of Facts below, Oracle admits for the first time that its representations were false and that the file is in fact an *Oracle Database* file that has nothing to do with J.D. Edwards or Paragraph 8 of the Injunction. *See, infra*, Oracle Fact No. 80 (admitting that "[t]he prvtsidx.plb source code

file is an Oracle Database file"). Undeterred, Oracle now raises a new argument—not presented in its Motion to Show Cause, not addressed in the Court's Order, and not set for hearing—that the file violates the Oracle Database provision of the Injunction despite the fact that this Court has already explicitly held that *Oracle Database will not be at issue at the show cause hearing*. ECF No. 1459 at 28 ("[T]he Court shall not issue an order to show cause as to Oracle Database.").

These are merely examples of Oracle's overreach. While Oracle has chosen to violate the Court's repeated admonitions about the limited scope of the hearing, Rimini respects the Court's orders and intends to adhere to them.

### Rimini Has Complied with the Injunction

During the period at issue here, Rimini had more than 1,400 employees, operating in 21 countries, and delivered over ███ PeopleSoft and J.D. Edwards updates to support nearly 400 clients, each of which has tens of thousands of licensed files that Rimini must interact with to provide support. After extensive discovery, only a small number of discrete updates are at issue in this hearing. Rimini's successful implementation of thousands of updates in compliance with the Injunction is a testament to its compliance efforts.

Rimini will show at the hearing that it did not violate the Injunction with respect to the eight disputed issues, and that at all times, including with respect to the two issues on which the Court found violations, Rimini was in substantial compliance with the Injunction and acted reasonably and in good faith.

**Issue 1 (Isolated Files on Rimini's Systems):** The Court found that Rimini violated the Injunction in three instances in which clients sent Rimini Oracle copyrighted files "contrary to [Rimini's] express instructions," thereby causing those files to exist on Rimini's systems in violation of the Injunction. ECF No. 1459 at 22–23. Rimini should not be held in contempt based on these incidents because it substantially complied with the Injunction's provision that Rimini not reproduce PeopleSoft software or documentation on its computer systems. These violations are isolated incidents—three incidents totaling eleven files over the course of more than one year. In each case, Rimini did not seek to have these files on its systems; clients sent

them to Rimini, despite the reasonable steps Rimini took to warn clients not to do so.  Rimini substantially complied with the Injunction and acted in good faith, and should not be held in contempt for these isolated instances.

**Issue 2 (Matheson):**  The Court found one violation of the Injunction relating to "cross-use" involving update HCM200049 for Matheson Trucking.  Rimini should not be held in contempt because its conduct with respect to this update was based on a good faith, reasonable interpretation of the Injunction.  This update ████████████████████████████████ ████████████████████████████████████████████████████████████ — none of which is copyrighted by Oracle.  ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. It was reasonable for Rimini to believe that it could re-use its knowledge and work product in this manner.  Rimini did not copy any client's software "for" any other client.

**Issue 3 (JHN):**  Oracle contends that Rimini supposedly "cross-used" an update by testing it in City of Eugene's environment but not in JHN's environment.  Oracle is wrong.  The update at issue concerned ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ No "cross-use" occurred.

**Issue 4 (rsi940a.sqr):**  Oracle contends that Rimini "cross-used" City of Eugene's environment by testing a Rimini-created file, rsi940a.sqr, in City of Eugene's environment and later implementing the same update including that Rimini file, in other clients' environments.  Again, Oracle fails to recognize that Rimini is permitted to address the same issue for multiple clients so long as it does not use one client's software to support a different client.  Here, Rimini's ████████████████████████████████████████████████████████

17

1  ████████████████████████████████.  Likewise its re-use of its own knowledge

2  and its own work product—not containing Oracle intellectual property—to implement and test

3  the same update for other clients in those clients' environments is not "cross-use."

4      **Issue 5 (RSPCMPAY.cbl)**:  The Court set a hearing to "hear from both parties[']

5  competing experts to determine if Rimini's file [RSPCMPAY.cbl] contains protected Oracle

6  expression that Rimini is prohibited from having on its systems." *Id.* at 20–22.  Rimini's file

7  does not contain any Oracle copyrighted expression.  The similarities in a portion of the two

8  files are purely functional—because both files need to pull data from the same database using

9  a specific interface.  Otherwise, the files perform different tasks and are dissimilar.  And, Oracle

10  cannot meet its burden to show that the RSPCMPAY.cbl contains protected Oracle expression

11  because, unlike Rimini's expert, Oracle's expert did not perform any analysis of the

12  protectability of the code at issue.

13      **Issue 6 (Easter Seals)**: Oracle contends that the update that Rimini emailed to Easter

14  Seals on January 3, 2019, is a derivative work that violates the Injunction.  It is not a derivative

15  work.  It consists entirely of Rimini-written files and does not incorporate any protected

16  material from any Oracle work.

17      **Issue 7 (J.D. Edwards Software source code)**:  Paragraph 8 of the Injunction prohibits

18  copying of "J.D. Edwards software source code."  The Court set this issue for a hearing to

19  resolve the parties' dispute "over the definition of [J.D. Edwards software] source code."  ECF

20  1459 at 25.  Oracle wrongly interprets the term to encompass even the "open code" portions of

21  J.D. Edwards that Oracle delivers and intentionally makes accessible to licensees and that

22  Oracle *intended* licensees to copy and modify.  Oracle admits that Rimini *must* copy this code

23  to create software updates for clients.  And because even accessing and viewing such files

24  would necessarily load them into memory, Oracle contends that the Court's Injunction prohibits

25  Rimini from even *looking* at such files.  Moreover, if the Injunction were read to prohibit Rimini

26  copying such code, it would render paragraph 10 of the Injunction superfluous (which allows

27  Rimini to create software updates for J.D. Edwards so long as Rimini does not engage in "cross-

28  use") and would act as a functional ban on Rimini providing support for J.D. Edwards—

something the Court has already ruled the Injunction was not meant to do.  ECF No. 1459 at 26.

**Issue 8 (prvtsidx.plb)**: As noted above, Oracle repeatedly told this Court in briefing that the prvtsidx.plb file was a J.D. Edwards file, and based on those representations, this Court set a hearing on whether the presence of that file on Rimini's systems meant that Rimini had copied "J.D. Edwards software source code" in violation of paragraph 8 of the Injunction. Oracle now admits that its prior contentions to this Court were incorrect—the file is not a J.D. Edwards file at all, but is in fact an Oracle Database file.  Rather than drop the issue, Oracle has changed its allegations to claim that Rimini violated the Injunction's prohibitions regarding Oracle Database.  That is wrong, but the Court should not even reach the issue because Oracle's new theory was not addressed by the Court's Order to Show Cause, and Oracle Database is explicitly not at issue.  ECF No. 1459 at 28 ("[T]he Court shall not issue an order to show cause as to Oracle Database.").

**Issue 9 (J.D. Edwards technical specification)**:  Oracle claims that Rimini copied J.D. Edwards software source code into a technical specification in violation of paragraph 8. Oracle's argument fails because any such code copied into the tech spec is "open code," and paragraph 8 does not prohibit copying it.  Moreover, Oracle's argument is highly misleading.



**Issue 10 (Update for Rockefeller and Home Shopping Network):** Oracle contends that Rimini committed "cross-use" with respect to a file it wrote called rsiqtrtax.sqr as part of its HCM200105 update, when it provided the file, as part of a larger update, to clients Rockefeller and Home Shopping Network in 2019.  Rimini did not engage in "cross-use."  This particular file was written on Rimini's own systems and consists entirely of Rimini-written

code. ███████████████████████████████████

█████████████████████████████████████████

████████—which is precisely what Oracle has argued that Rimini must do to avoid infringement.

## II.    ORDER OF PRESENTATION

### A.    Oracle's Separate Statement Regarding Order of Presentation

As the moving party and the party with the burden of proof, Oracle should present its evidence in support of its motion for contempt first, followed by Rimini's rebuttal evidence. This order would best facilitate the clear presentation of the evidence to the Court. The parties have significantly refined and expanded on their arguments on the narrowed issues identified in the Court's order to show cause. If Rimini were to present its responses to Oracle's allegations at the hearing "in a vacuum," without Oracle first presenting its narrowed and refined allegations, it would only lead to confusion and inefficiency. Further, it is Oracle's understanding that this is the standard practice in the District of Nevada and in all district courts in the Ninth Circuit. *See, e.g.*, *Aevoe Corp. v. AE Tech Co., et al.*, No. 2:12-cv-00053 (D. Nev. Nov. 19, 2012), ECF No. 166 (party moving for contempt for violation of preliminary injunction presented first at order to show cause evidentiary hearing); *Cuviello v. City of Oakland*, No. C-06-5517 (N.D. Cal. Jan. 15, 2008), ECF No. 71 (same); *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917 (D. Or. Oct. 21, 2020), ECF No. 209 (same). Oracle has not identified any instance of the non-moving party presenting first at an order to show cause evidentiary hearing regarding contempt in the Ninth Circuit, and Rimini has pointed to none.

### B.    Rimini's Separate Statement Regarding Order of Presentation

Rimini should proceed first at the upcoming evidentiary hearing because—although Oracle bears the burden of proof, *see United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010)); *Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009); *Gopher Protocol, Inc. v. Discover Growth Fund*, LLC, 2019 WL 6307615, at *2 (D. Nev. Nov. 25, 2019); *see also* ECF Nos. 1467 & 1478—the hearing was ordered to allow Rimini

to respond to the Court's order to show cause.  The evidence presentation most sensibly should begin with the factual foundation from Rimini's evidence and witnesses—not with Oracle's expert (*and only*) witness.

Following discovery, Oracle moved "for an order to show cause why Rimini should not be held in contempt for violating the Court's permanent injunction."  ECF No. 1459 at 35.  The Court granted in part and denied in part Oracle's motion, ultimately holding that "Rimini is ORDERED to **SHOW CAUSE** why it should not be held in contempt for violating the permanent injunction."  *Id.* (emphasis in original).  The Court entered a briefing schedule that, notably, had *Rimini* proceed first, followed by a response from Oracle, and then a reply from Rimini.  *Id.*  The Court's order also set the upcoming evidentiary hearing for a discrete set of issues on which the parties would present evidence and elicit live testimony.  *Id.*; *see also* ECF No. 1476.

Although Oracle bears the burden of proof at the hearing, Rimini should proceed first at the hearing, as it did in the briefing, because Rimini is responding to the Court's order that Rimini show cause.  Rimini's witnesses have direct knowledge of the facts regarding the discrete issues set for hearing.  Oracle's only witness is an expert who has no personal knowledge and cannot establish those facts.  It makes most sense for Rimini's witnesses to lay the factual foundation before Oracle's expert witness offers opinions regarding those facts.  Rimini's witnesses will also testify at the show cause hearing about Rimini's efforts to comply with the Court's permanent injunction, testimony that—naturally—must come from Rimini.

Similar contempt proceedings, including in this District, support Rimini's position that when an order to show cause has issued and there is a subsequent evidentiary hearing, the party ordered to appear before the Court proceeds first.  *See, e.g.*, *Forsythe v. Brown*, No. 3:10-cv-00716 (D. Nev.), ECF Nos. 112 (show cause order), 124 (alleged contemnor presented first), 130 at 3–4 (same); *see also Forsythe v. Brown*, 281 F.R.D. 577 (D. Nev. 2012); *FTC. v. Leshin*, No. 06-61851-CIV (S.D. Fla.), ECF Nos. 519 (motion for order to show cause), 543 at 1–2 (alleged contemnor presented first); *Green v. Blitz, USA, Inc.*, No. 2:07-cv-372 (E.D. Tex.), ECF Nos. 243 (show cause order), 250 at 1–19 (alleged contemnor presented first).

Oracle's cited authority is not on point because the court in those cases had not (as here) issued a show cause order prior to the evidentiary hearing. *See Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917 (D. Or.); *Cuviello v. City of Oakland*, No. C 06-5517 (N.D. Cal.). So the evidentiary hearing was held on the moving party's motion—not on an order requiring the alleged contemnor to show cause why it should not be held in contempt.

Rimini thus respectfully submits that Rimini should proceed first in its presentation of evidence and witness testimony at the upcoming hearing as to "why [Rimini] should not be held in contempt for violating the permanent injunction." ECF No. 1459 at 35.

Alternatively, if the Court permits Oracle to call its expert (and only) witness first, Rimini requests that, at a minimum, Rimini's direct examinations of its own employees precede their cross-examinations by Oracle. That is the normal and natural course of examinations, which makes good sense, as those employees will testify as to the underlying facts for the ten issues set for hearing. In contrast, it makes little sense—and will be unhelpful and confusing to the Court in trying to understand and determine *what* happened—to have those facts disjointedly elicited via leading questions by an adversary on cross-examination. It cannot reasonably be disputed, particularly in a proceeding where Rimini's employees are the *only* witnesses with personal knowledge of any facts at issue, that direct examination (rather than cross-examination) is a better vehicle to aid in the Court's understanding of such facts. Oracle can then cross-examine Rimini's witnesses as appropriate, building on the foundational factual testimony presented during their direct examinations.

## III. UNCONTESTED FACTS DEEMED MATERIAL TO THE HEARING

The following facts are undisputed, and the Parties will stipulate to them for incorporation into the hearing record without the necessity of supporting testimony or exhibits, subject to the Court's rulings, and other pre-hearing issues:

1. Plaintiff Oracle America, Inc. ("Oracle America") is a Delaware corporation. At the time of the events at issue in this hearing, Oracle America had its principal place of business in Redwood City, California. Currently, Oracle America has its principal place of business in Austin, Texas.

2.      Oracle America is the successor in interest to Oracle USA and PeopleSoft USA, Inc., as well as a successor in interest to certain PeopleSoft and J.D. Edwards entities.

3.      Intellectual property rights formerly held by certain PeopleSoft and JD Edwards entities were transferred to OIC as part of the acquisitions of PeopleSoft and JD Edwards by Oracle.

4.      Oracle's PeopleSoft and J.D. Edwards product lines are Enterprise Resource Planning ("ERP") software. At a high level of generality, ERP software helps companies perform complex tasks such as human resource functions, payroll, taxes, and customer relationship management.

5.      Unlike off-the-shelf consumer software used by individuals, Oracle Software is used by organizations, and can be modified and customized by the organizations for their own business purposes.

6.      Software support is often necessary for ERP software, particularly software relating to payroll or human resources functions, because it must be frequently updated to work properly.

7.      As tax laws and other laws and regulations change, Oracle's PeopleSoft and J.D. Edwards software generally must be updated to account for the change.  For example, if a payroll tax rate changes, the software must be updated to reflect the new rate.

8.      A common feature of ERP software, including Oracle's PeopleSoft and J.D. Edwards software, is that a licensee can modify and customize the software for the licensee's own business purposes, subject to the terms of the applicable license.

9.      In addition to the license to the underlying software, Oracle also enters into separate support contracts with its customers, which entitle them to receive, for an annual maintenance fee, software upgrades (including new versions of the software) and software support, including fixes, patches, and updates typically made available for download from Oracle's password-protected websites.

10.      Rimini Street, Inc. ("Rimini") is a Delaware corporation founded in 2005, with its headquarters in Nevada.

11.     Rimini provides software support services to licensees of ERP software, including licensees of Oracle's PeopleSoft and J.D. Edwards software.

12.     Rimini offers updates and fixes to its clients for PeopleSoft and J.D. Edwards software as part of its support services for those product lines.

13.     The Court entered the permanent injunction ("Injunction") on August 15, 2018.

14.     On August 16, 2018, Rimini filed an Emergency Motion to Stay Enforcement of the Permanent Injunction. On September 11, 2018, the Court temporarily stayed the Injunction for a period of up to sixty days to allow Rimini to seek a stay pending appeal from the Ninth Circuit. The Ninth Circuit denied Rimini's motion to stay the Injunction pending appeal on November 5, 2018.

15.     The Injunction again went into effect on November 5, 2018.

16.     Rimini's PeopleSoft and JD Edwards clients related to the alleged injunction violations to be adjudicated at the evidentiary hearing entered into written license agreements with Oracle that granted these clients certain license rights to use Oracle's PeopleSoft and JD Edwards software.

17.     Development environments are distinct from a production environment, which is the version of the software that members of the enterprise ultimately employ.

18.     Rockefeller Group International became a Rimini client on or about December 21, 2018.

19.     Home Shopping Network became a Rimini client on or about March 29, 2019.

## IV.     CONTESTED ISSUES OF FACT

The parties exchanged proposed uncontested statements of fact on July 28, 2021 and exchanged responses to each other's proposed uncontested statements of fact on August 13, 2021.  After meeting and conferring, the parties could not agree on the following facts:

### A.     Oracle's Separate Statement of Facts[3]

1.      On August 14, 2018, this Court granted Oracle's renewed motion for a permanent injunction, which enjoins Rimini from continuing to infringe on Oracle's copyrighted software.

2.      The Ninth Circuit affirmed the Injunction, except instructing the Court to strike paragraphs nine and thirteen, and the words "or access" in paragraphs eight and twelve.

3.      Rimini made two changes to its PeopleSoft support processes after the Court entered the Injunction.

4.      In a "PeopleSoft Injunction Compliance Notice" sent to employees on November 13, 2018, Rimini stated: "███████████████████████████████ ████████████████████████████████████████."

5.      Rimini did not make any changes to its JD Edwards support processes after the Court entered the Injunction.

6.      In a "JD Edwards Injunction Compliance Notice" sent to employees on November 10, 2018, Rimini stated: "████████████████████████████████ ████████████████████████████████████████"

7.      In its March 31, 2021 Order, the Court "ORDERED" Rimini "to SHOW CAUSE why it should not be held in contempt for violating the permanent injunction."

8.      That same day, Rimini issued a press release entitled "Court Rules in Rimini Street's Favor on Key Matters, Denies Oracle's Motions and Cites 'Common Sense' and 'Absurd Result' in Denying Oracle's Claim."  Rimini did not mention it was facing contempt for multiple violations of the permanent injunction issued by this Court.

9.      In order to develop and test software updates for enterprise software, support service providers (such as Oracle and Rimini) create software environments. The term

---

[3] Oracle objects to Rimini's statements of fact as duplicative and improper.  Rimini has proposed 164 statements of fact, significantly more than the 120 statements of fact that Rimini proposed for the entire *Rimini II* litigation, the vast majority of which were not amenable to reasonable compromise.  Oracle objects to Rimini's attempts to unnecessarily complicate the issues to be decided at the September 20, 2021 evidentiary hearing.

"environment" refers to an installed copy of PeopleSoft or JD Edwards software. Creating an environment by installing Oracle software makes an exact copy of the software being installed.

10.     A development environment is a software environment that contains a copy of the software program which is then modified to develop and test software updates. Given the critical nature of enterprise software programs, updates to the software must be fully tested and verified in a development environment before they are provided to a customer.

11.     An environment used to test fixes or updates, or other modifications to the software is sometimes called a "test environment."

12.     The very work of maintaining customized software requires copying the software, which without a license to do so is a violation of the exclusive right of the copyright owner.

13.     Whenever Rimini creates development or testing environments, or accesses and uses such environments, a copy of Oracle software is loaded into the computer's memory, and Random Access Memory (or "RAM") copies of the software are made.

14.     It is not possible to use Oracle software or create and test Rimini's updates without making RAM copies of Oracle software.

15.     Development, testing, and distribution of software updates each create RAM copies of the individual updates. When a program runs, the copy of the program that is electronically stored is loaded into the computer's memory, so that its instructions can be executed. Without this step, the program cannot perform any useful function, so every use of the software necessarily results in the creation of additional in-memory copies.

16.     RAM copies are sufficiently permanent or stable to permit those copies to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.

17.     These RAM copies contain a substantial portion of the protected expression of the Oracle software being run.

18.     Without the RAM copies, Rimini would be unable to create and test its updates.

19.     Oracle owns and develops Oracle Database, database software that is often used in conjunction with enterprise software applications.

### a.  PeopleSoft Software and Documentation on Rimini's Systems

20.     In its March 31, 2021 Order, the Court found that it is uncontradicted that Rimini had copies of an Oracle "source code file" (psptaxdt.dms) and "PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents" on Rimini's systems.

21.     The Court held that by having this PeopleSoft source code file and PeopleSoft payroll documentation on its systems, Rimini violated the prohibitions in Paragraph 5 of the Injunction that "Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems."

22.     The Court also held that "at the hereafter hearing, the parties will not be permitted to re-argue the at-issue conduct; rather, the parties are only permitted to argue whether Rimini should be held in contempt for such a violation, and what sanctions are appropriate."

### i.  psptaxdt.dms

23.     Rimini customer ▮▮▮▮▮▮▮ sent a copy of Oracle's psptaxdt.dms PeopleSoft source code file to Rimini on March 27, 2019, as part of a support request.

24.     Rimini then opened the file, analyzed it, and used it to respond to the customer's support request, writing: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

### ii.  PeopleSoft Documentation (G6)

25.     On November 27, 2018, a Rimini employee sent an email asking Rimini PeopleSoft customer ▮▮▮▮▮▮▮: "we were looking for the Functional user documentation – do you have that?"

26.      ████████ responded to the Rimini employee by email, copying a second Rimini employee and attaching eight PeopleSoft documentation files.

27.      One of the Rimini employees forwarded the eight documents by email to two additional Rimini employees, stating: "████████████████████████████ ████████████████████████."

### iii.   PeopleSoft Documentation (ShareFile)

28.      Rimini created copies of two PeopleSoft documentation files on its internal ShareFile system.

### b.   Rimini's Cross-Use of Updates Related to Matheson Trucking

29.      Rimini delivered update HCM200049 to Matheson Trucking without any indication that the update was developed or tested in that client's environments.

30.      The Court held that these actions were "a clear violation of the permanent injunction" and further ordered that "at the hereafter hearing, the parties will not be permitted to re-argue the at-issue conduct; rather, the parties are only permitted to argue whether Rimini should be held in contempt for such a violation, and what sanctions are appropriate."

31.      Rimini ████████████████████████████████ ████████

32.      ████████████████████████████████ ████████████████████████████

33.      Rimini "████████████████████████████ ████████████████████" This is cross-use and a violation of the Injunction.

### c.   Rimini's Cross-Use of Peoplesoft Software Associated with City of Eugene to Resolve a Support Case for Customer Johnson Controls

34.      COEX is a ████████ PeopleSoft environment associated with City of Eugene.

35.      On or about January 24, 2019, Rimini was working to solve a support case that customer Johnson Controls (JHN) was experiencing ████████████.

28

36.     Rimini customer City of Eugene ███████████████████ ████████████████ .

37.     Rimini used and reproduced the PeopleSoft software in the environments associated with City of Eugene (COEX), at least through the making of RAM copies, to test Rimini's proposed solution for JHN.

38.     Rimini did not test its proposed solution in the PeopleSoft environments associated with JHN before giving its proposed solution to JHN.

39.     Rimini stated that it "████████████████████████ ██████████████████████████████████

40.     Rimini's use and reproduction of the PeopleSoft software associated with City of Eugene to test its proposed solution for JHN is cross-use and a violation of the prohibitions in Paragraphs 4 and 6 of the Injunction.

       **d.  Cross-Use of Peoplesoft Software Associated with City of Eugene to Develop and Test Updates to rsi940a.sqr for ████████████ and ██████████**

41.     On or about January 23, 2019, Rimini customers ███████ and ██ ████████████████████████

42.     Rimini customer City of Eugene ████████████████████ ████████████ .

43.     Rimini's solution to the problem experienced ████████████ ████████████████████████

44.     ████████████████████████████ ████████████████████████ ████████████████

45.     After having ████████████████████ ████████████████████

46.     ████████████████████ ████████████████████████████ ██████

47.     Rimini's use and reproduction of the PeopleSoft software associated with City of Eugene to test its proposed solution for JHN is cross-use and a violation of the prohibitions in Paragraphs 4 and 6 of the Injunction.

### e. Rimini's Copying of Protected Expression into RSPCMPAY.cbl

48.     RSPCMPAY.cbl is a file that Rimini stores on its internal systems.

49.     Rimini's RSPCMPAY.cbl file contains Oracle source code found in Oracle's PSPTARRY.cbl file.

50.     Rimini copied at least 32% of the lines of code found in the Oracle file PSPTARRY.cbl into its RSPCMPAY.cbl file.

51.     Rimini also copied non-functional (*i.e.*, not required for the code to function) elements directly from Oracle source code.

52.     During the post-Injunction period, Rimini ███████████████████████ ███████████████████████

53.     Rimini's RSPCMPAY.cbl file contains protected Oracle expression that Rimini is prohibited from having on its systems.

54.     By using, distributing, and maintaining RSPCMPAY.cbl on its systems, Rimini violated the prohibition in Paragraph 5 of the Injunction that "Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems."

### f. Rimini's Cross-Use in Developing and Distributing Its 1099 Derivative Work Update to Easter Seals

55.     On two occasions (first on September 27, 2018 and again on January 3, 2019) Rimini emailed its RS18F07 update from a Rimini computer system to Easter Seals New Hampshire ("Easter Seals").

56.     Rimini's RS18F07 update is a 1099 update.  This update modified the functionality of existing PeopleSoft environments by ███████████████████████ ███████████████████████

57.   Rimini's RS18F07 update is a derivative work because it was specifically tailored to operate only with and to modify Oracle's PeopleSoft Software, creating a new version of PeopleSoft that remains substantially similar to the original PeopleSoft work.

58.   The Court ruled in its March 31, 2021 Order that Rimini's 1099 update is "one example of a derivative work."

59.   Because Rimini's 1099 update is a derivative work, and the underlying files for Rimini's 1099 update are stored on Rimini's systems, Rimini is violating the prohibitions in Paragraph 5 of the Injunction that "Rimini Street shall not reproduce, *prepare derivative works from*, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems."

60.   Oracle's PeopleSoft license agreement with Easter Seals ███████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

█████

61.   Oracle's PeopleSoft license agreement with Easter Seals also ████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████

31

62.     Rimini develops and distributes 1099 updates for PeopleSoft on an annual basis.

63.     Rimini develops and distributes its 1099 updates for PeopleSoft through the cross-use of Oracle's PeopleSoft software.

64.     Rimini's RS18F07 update included ███████████████████████████ ████████████████████████████████████████████████████, when Rimini engaged in the local hosting of PeopleSoft environments for Easter Seals and other customers.

65.     As part of RS18F07 update, ██████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████

66.     In 2019, Rimini prepared a further PeopleSoft 1099 update.  Between July 2, 2019 and July 11, 2019, Rimini ███████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████

67.     Rimini's cross-use of PeopleSoft software to develop its derivative work 1099 updates for PeopleSoft violates the prohibitions in Paragraphs 4 and 6 of the Injunction.

**g.     Rimini's Copying of "J.D. Edwards Software Source Code"**

68.     Rimini uses Oracle's JD Edwards EnterpriseOne and JD Edwards World software to develop and test updates for its customers.

69.     "Source code" is code in a human-readable format.

70.     "Object code" is code that has been compiled for machine execution.

71.     Oracle's JD Edwards software platform has a variety of "J.D. Edwards software source code" files, including ".h" and ".c" files (written in the C programming language), Business Functions (*i.e.*, BSFNs), Interactive Applications (*i.e.*, APPLs), Batch Applications (*i.e.*, UBEs), and Event Rules code (*i.e.*, ER or NER).

32

72.     The primary tool used to create and modify JD Edwards EnterpriseOne source code is Oracle's Object Management Workbench (OMW).

73.     Rimini's documents admit that Object Management Workbench is a "JDE E1 development tool used to manage source code changes and migration to other Environments."

74.     Rimini copies JD Edwards source code whenever Rimini uses OMW to:

    a.  "Check out" source code.  This "check out" process copies the source code file from the Deployment Server to the Developer Client;

    b.  Display the contents of a JD Edwards source code file in OMW;

    c.  "Check in" source code.  This "check in" process copies the source code file from the Developer Client back to the Deployment Server; or

    d.  Promote JD Edwards source code between environments.

75.     When Rimini uses JD Edwards World, Rimini copies JD Edwards source code whenever Rimini:

    a.  Displays the contents of a JD Edwards source code member in a source editor; or

    b.  Promotes JD Edwards source code between environments.

76.     Rimini's documents admit that ███████████████████████ ████████████████████████████████████████████ ████████████

77.     Rimini's documents admit that when Rimini programs in JD Edwards World "███████████████████████████████████████████████ ████████████████████████████████████████████████████"

78.     Rimini's copying of J.D. Edwards software source code when developing and testing software updates violates the prohibitions in Paragraph 8 of the Injunction.

**h.  Oracle Database Files on Rimini's Systems**

79.     A copy of Oracle's prvtsidx.plb source code file is on Rimini's systems and is substantially similar to the GA (general availability) version of this file.

80.     The prvtsidx.plb source code file is an Oracle Database file.

81.     Oracle's Developer License does not permit copies of prvtsidx.plb on Rimini's systems.

82.     The terms of Oracle's License and Service Agreements (OLSAs) do not permit copies of prvtsidx.plb on Rimini's systems.

83.     Rimini's actions violated the prohibition in Paragraph 15 of the Injunction that "Rimini Street shall not reproduce, prepare derivative works from, or distribute Oracle Database software."

**i.     Rimini's Copying of "J.D. Edwards Software Source Code" into the Technical Specification for Its JDE105328 Update**

84.     Rimini copied source code found in the JD Edwards source code file R89078652 into Rimini's technical specification for its JDE105328 update.

85.     Rimini copied source code found in the JD Edwards World A.9.3 source code file P06767 into Rimini's technical specification for its JDE105328 update.

86.     Oracle's R89078652 and P06767 source code files are "J.D. Edwards software source code."

87.     Rimini's documents acknowledge that the P06767 source code file is JD Edwards "███████████████."

88.     Rimini's copying of J.D. Edwards software source code into the technical specification for its JDE 105328 update violates the prohibitions in Paragraph 8 of the Injunction.

**j.     Rimini's Cross-Use of Its "One Code for All" rsiqtrtx.sqr File to Deliver HCM200105 to Rockefeller Group and Home Shopping Network**

89.     Rimini's HCM200105 update included the rsiqtrtx.sqr file, ████████ ████████████████████████████████████.

90.     ████████████████████████████████████████████████████ ██████

91. Rimini's ████████████████████████████
████████████████████████████████████████████
██████████████████████████.

92. Rimini created its rsiqtrtx.sqr using the PeopleSoft software in an environment associated with one customer and then sent the file to other customers.

93. For example, ████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████.

94. ████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
██████████████████.

95. Rimini's cross-use of PeopleSoft software—at least with respect to its development and distribution of "rsiqtrtx.sqr"—violates the prohibitions in Paragraphs 4 and 6 of the Injunction.

**B.      Rimini's Separate Statement of Facts**

Although Rimini has no burden of proof at the hearing, and Oracle has the burden to prove all facts by clear and convincing evidence, Rimini intends to prove the following exemplary material facts in addition to those discussed in its briefs in response to the Court's Order to Show Cause.  The Court has also previously found certain facts in connection with prior rulings that are not necessarily repeated below.  Rimini respectfully submits that both parties should file proposed findings of fact and conclusions of law following the hearing.

**1.      Background Facts Regarding Rimini's Post-Injunction Support**

1. Oracle acquired PeopleSoft and J.D. Edwards companies and their software.

2.      Oracle grants perpetual licenses for its PeopleSoft and J.D. Edwards software ("Oracle Software") to its customers for a substantial one-time payment.

3.      Unlike off-the-shelf consumer software used by individuals in everyday life, the Oracle Software is used by organizations, and is designed and intended to be customized by the organizations and those working on their behalf, based on the organization's specific needs.

4.      Oracle Software typically must be customized to a particular organization's needs and preferences before it can be used.

5.      Oracle Software requires maintenance, including fixing bugs in the software and/or updating the software to account for changes in laws or regulations.

6.      PeopleSoft and J.D. Edwards are intended and designed to be modified and customized by the licensee and those working on the licensee's behalf.

7.      For this purpose, PeopleSoft and J.D. Edwards are shipped with accessible computer code that can be modified, and is intended to be modified, to keep the software up-to-date and functioning properly.

8.      The accessible computer code must be modified in order to keep the software up-to-date with tax and other law and regulatory changes, and to fix bugs.

9.      Some licensees of Oracle Software support and maintain the software themselves, but others outsource this work to support providers, such as Rimini, Oracle, or other support providers.

10.      Rimini provides software support services for Oracle Software in lawful competition with Oracle's support services.

11.      Rimini stands in the shoes of its clients with respect to the clients' rights under their license agreements with Oracle.

12.      To support their Oracle Software, licensees (or those working on the licensee's behalf) often create development and test environments. An "environment" is a term used in this litigation to mean a computing machine, real or virtual, on which specific software is installed and capable of being run.

13.     A development environment allows a software engineer to develop fixes, updates, or other modifications to the software, without altering the organization's "live" system, called a "production environment."

14.     A test environment, or quality assurance environment, is an environment used to test fixes or updates, or other modifications to the software, before they are implemented into the production environment.

15.     Oracle's licenses, and the Injunction, generally allow licensees to copy software into a development environment and have an in-house IT team, or third-party support provider, copy and modify the software for the licensee's data processing operations.

16.     Rimini clients were authorized under their license agreements with Oracle to copy and modify Oracle Software.

17.     On February 13, 2014, in the *Rimini I* case, the Court ruled on summary judgment that Rimini's Process 1.0 practices of local hosting and using generic environments, with respect to PeopleSoft support, fell outside the scope of Oracle's license agreements.

18.     Rimini spent millions of dollars to substantially revise its support processes, which included eliminating the aspects of its prior support processes that the court found problematic.

19.     By the end of July 2014, Rimini had completed its transition to Process 2.0.

20.     Under Rimini's post-injunction processes, every Rimini client has its own development and/or test environments located on the client's own systems, not Rimini's systems.

21.     Under Rimini's post-injunction processes, Rimini remotely accesses each client's environments, using login credentials provided by the client, to provide support to that particular client.

22.     Since July 2014, Rimini has not had an Oracle Software environment on its systems and has not used so-called generic environments.

23.     After the Injunction issued, Rimini made further changes to its processes, out of an abundance of caution.

24.     Rimini has rigorous compliance policies in place to ensure compliance with the Injunction and with Rimini's clients' license agreements with Oracle, including Rimini's Acceptable Use Policy ("AUP").

25.     After the Injunction issued, Rimini sent specific guidance to each product line team and required all personnel to affirm that they reviewed the Injunction.

26.     Since the Injunction issued, Rimini has trained employees periodically on the requirements of both the AUP and the Injunction.

27.     Rimini educated its clients regarding the Injunction and the AUP, including instructing its clients not to send any Oracle or other third-party intellectual property to Rimini.

28.     With respect to the eight issues set for hearing for which this Court has not found a violation of the Injunction, Rimini did not violate the Injunction.[4]

29.     With respect to all 10 issues set for hearing, Rimini substantially complied with the Injunction.

30.     With respect to all 10 issues set for hearing, the steps Rimini took to comply with the Injunction were reasonable.

31.     With respect to all 10 issues set for hearing, Rimini acted based on a good faith and reasonable interpretation of the Injunction.

32.     With respect to all 10 issues set for hearing, Rimini did not act contumaciously and should not be held in contempt of this Court.

33.     To the extent the Court finds that Rimini violated the Injunction in any respect, Rimini did not do so willfully.

### 2.     Issue #1:  Isolated Files on Rimini's Systems

34.     The psptaxdt.dms file and 10 specific Oracle PeopleSoft documentation files at issue came to be on Rimini's systems by virtue of being sent by Rimini's clients, contrary to Rimini's policies and its instructions to clients not to send such material.

---

[4]  Rimini respectfully contends that it did not violate the Injunction with respect to the other two issues set for hearing either, but understands that the Court has found otherwise.  Rimini expressly preserves the ability to challenge any and all aspects of the Court's ruling on appeal.

35.     Rimini did not use the files at issue for any improper purpose; rather, it caused the files to be placed on the clients' development systems where the files should have been placed by the clients in the first instance.

36.     Oracle was not harmed by the files reaching Rimini's systems.

37.     With respect to these isolated files that were sent by clients in violation of Rimini's policies, Rimini did not intend to violate the Injunction, and its actions were not willful.

38.     Rimini delivered ███████ of updates and fixes to clients in the time period at issue in this proceeding, involving tens of thousands of Oracle files.

39.     Rimini substantially complied with the Injunction notwithstanding these eleven files sent to it by clients.

40.     The steps Rimini took to comply with the Court's prohibition on having clients' PeopleSoft software and documentation on Rimini's systems were reasonable.

41.     Rimini's actions related to the instances of Oracle files on Rimini's systems were based on a good faith and reasonable interpretation of the Injunction.

42.     The accused conduct with respect to these specific files on Rimini's systems is very different from, and not analogous to, the issues decided in *Rimini I*.

### 3.     Issue #2:  Update for Matheson Trucking

43.     Rimini substantially complied with the Injunction with respect to its update HCM200049 delivered to client Matheson Trucking.

44.     The steps Rimini took to comply with the Injunction with respect to its update HCM200049 delivered to Matheson Trucking were reasonable.

45.     Rimini's actions related to its update HCM200049 delivered to Matheson Trucking were based on a good faith and reasonable interpretation of the Injunction.

46.     Update HCM200049 was a ████████████████████████████ ████████████████████████.

47.    The file that Oracle contends was modified in connection with this update (allegedly in violation of the Injunction) is rsi940a.sqr, which is a Rimini-written file that does not contain any Oracle copyrighted expression.

48.    Rimini determined that ███████████████████████████████████ ████████████████████████.

49.    ██████████████████████████████████████████ █████████████████████████.

50.    ██████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████, and did not violate the Injunction.

51.    ██████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████, and did not violate the Injunction.

52.    ██████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████, but such RAM copies are not fixed in a tangible medium, not actionable, and did not violate the Injunction.

53.    ██████████████████████████████████████████ ████████████████████.

54.    The accused conduct with respect to this update for Matheson Trucking is not analogous to any issue in *Rimini I*.

55.    Rimini reasonably believed that its actions complied with the Injunction and Oracle's licenses; it did not intend to violate the Injunction with respect to this update.

56.    Oracle was not harmed by Rimini's actions related to HCM200049.

### 4.    Issue #3:  Johnson Controls ("JHN") Update

57.    Rimini did not violate the Injunction with respect to the alleged JHN update.

58.    Rimini substantially complied with the Injunction with respect to the alleged JHN update.

59.    The steps Rimini took to comply with the Injunction with respect to the alleged JHN update were reasonable.

60.    Rimini's actions related to the alleged JHN update were based on a good faith and reasonable interpretation of the Injunction.

61.    The update at issue was designed to ████████████████████████ ████████████████████ .

62.    ████████████████████████████████████ , which does not involve, contain, or concern any Oracle code or copyrighted work.

63.    ████████████████████████████████ .

64.    ████████████████████████████████ ████████████████ .

65.    ████████████████████████████████ ██████ .

66.    ████████████████████████████████ ████████████████ .

67.    Oracle's allegations center around Rimini's alleged use of City of Eugene's software to test this update for City of Eugene. ████████████ ████████████████████████████████████████ ████████████████████████ , and did not violate the Injunction.

68.    ████████████████████████████████ ████████████████████████████████████████ ████████████████████████ , and did not violate the Injunction.

69.    ████████████████████████████████ ████████████████████████████████████████ ████████████████████████ , but such RAM copies are not fixed in a tangible medium, not actionable, and did not violate the Injunction.

70.    ████████████████████████████████ ████████████████████ .

41

71.     The accused conduct with respect to this update for JHN is not analogous to any issue in *Rimini I*.

72.     Rimini reasonably believed that its actions complied with the Injunction and Oracle's licenses; it did not, and certainly did not intend to, violate the Injunction.

73.     Oracle was not harmed by Rimini's actions related to this update.

**5.      Issue #4:  Rsi940.sqr Update**

74.     Rimini did not violate the Injunction with respect to the alleged rsi940a.sqr update.

75.     Rimini substantially complied with the Injunction with respect to the alleged rsi940a.sqr update.

76.     The steps Rimini took to comply with the Injunction with respect to the alleged rsi940a.sqr update were reasonable.

77.     Rimini's actions related to the alleged rsi940a.sqr update were based on a good faith and reasonable interpretation of the Injunction.

78.     Update HCM200049, a portion of which relates to the file rsi940.sqr that is at the center of Oracle's allegations, ██████████████████████████████████████████ ████████████████████████████████.

79.     Rsi940a.sqr is a Rimini-written file that does not contain any Oracle copyrighted expression.

80.     ████████████████████████████████████████████████████████████ ██████████████████████████████.

81.     ████████████████████████████████████████████████████████ ████████████████████.

82.     ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████, and did not violate the Injunction.

1  83.  ██████████████████████████████████████

2  ████████████████████████████████████████████

3  ██████████████████████████████████, and did not violate the Injunction.

4  84.  ██████████████████████████████████████

5  ████████████████████████████████████████████

6  ███████████████████, but such RAM copies are not fixed in a tangible medium, not

7  actionable, and did not violate the Injunction.

8  85.  ██████████████████████████████████████

9  ██████████████████████████████.

10  86.  Rimini tested each client's update in each client's respective test environment.

11  87.  The accused conduct with respect to this update is not analogous to any issue in

12  *Rimini I.*

13  88.  Rimini reasonably believed that its actions complied with the Injunction and

14  Oracle's licenses; it did not, and certainly did not intend to, violate the Injunction.

15  89.  Oracle was not harmed by Rimini's actions related to this update.

16  **6.  Issue #5:  RSPCMPAY.cbl**

17  90.  Rimini did not violate the Injunction with respect to its file RSPCMPAY.cbl.

18  91.  Rimini substantially complied with the Injunction with respect to its file

19  RSPCMPAY.cbl.

20  92.  The steps Rimini took to comply with the Injunction with respect to its file

21  RSPCMPAY.cbl were reasonable.

22  93.  Rimini's actions related to its RSPCMPAY.cbl file were based on a good faith

23  and reasonable interpretation of the Injunction.

24  94.  Rimini's RSPCMPAY.cbl file does not contain a substantial amount of

25  protected Oracle expression.

26  95.  Rimini's RSPCMPAY.cbl file is not substantially similar to Oracle's

27  copyrighted works.

28

96.     To the extent any code in Rimini's RSPCMPAY.cbl file matches any code in the alleged Oracle PSPTARRY.cbl file, such matching code is not copyright protectible, is not substantially similar, and is de minimis.

97.     The Rimini RSPCMPAY.cbl file and Oracle PSPTARRY.cbl files are different in total concept and feel.

98.     Oracle's expert did not perform an analytic dissection analysis necessary to make a determination regarding substantial similarity.

99.     Oracle was not harmed by Rimini's actions related to Rimini's RSPCMPAY.cbl file.

### 7.     Issue #6:  1099 Update for Easter Seals

100.     Rimini did not violate the Injunction with respect to its 1099 update for Easter Seals.

101.     Rimini substantially complied with the Injunction with respect to its 1099 update for Easter Seals.

102.     The steps Rimini took to comply with the Injunction with respect to its 1099 update for Easter Seals were reasonable.

103.     Rimini's actions related to its 1099 update for Easter Seals were based on a good faith and reasonable interpretation of the Injunction.

104.     Rimini's 1099 update for Easter Seals is not a derivative work.

105.     The files underlying Rimini's 1099 update for Easter Seals do not contain any Oracle copyrighted code or expression.

106.     Rimini reasonably believed that its 1099 update for Easter Seals, which does not contain any Oracle copyrighted code or expression, is not a derivative work, and it reasonably believed that its actions complied with the Injunction and Oracle's licenses; it did not, and certainly did not intend to, violate the Injunction.

107.     Oracle was not harmed by Rimini's actions related to its 1099 update for Easter Seals.

### 8.     Issue #7:  "J.D. Edwards Software Source Code"

44

108.   Rimini does not violate paragraph 8 of the Injunction when it develops or tests J.D. Edwards updates or modifications.

109.   J.D. Edwards software contains both closed code and open code.

110.   Open code is accessible to the licensee and intended to be modified and customized by the licensee so that it can be kept up to date with tax, legal, and regulatory changes.

111.   Open code must be modified for the software to function properly.

112.   Closed code, by contrast, is delivered in a compiled, obfuscated form and cannot be viewed without taking steps to reverse engineer or "decompile" it.

113.   The term "J.D. Edwards software source code" in the Injunction means the proprietary closed code, not the open code that is designed and intended to be modified.

114.   Rimini did not copy "J.D. Edwards software source code;" Rimini accesses and modifies open code, which is necessary to provide updates to J.D. Edwards software.

115.   The industry understands "J.D. Edwards software source code" to refer to the proprietary closed code, not the open code provided with the software that is designed and intended to be modified by licensees.

116.   Oracle, and formerly J.D. Edwards, have encouraged licensees to modify open code.

117.   Oracle, and formerly J.D. Edwards, provide specific tools with J.D. Edwards software, designed to allow licensees to copy and modify open code.

118.   Third-party support provider Spinnaker ███████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████.

119.   Only a subset of Oracle license agreements contain any restriction on copying "J.D. Edwards software source code."

120.   The meaning of "J.D. Edwards software source code" was not adjudicated in *Rimini I.*

121.    Rimini substantially complied with the Injunction with respect to "J.D. Edwards software source code."

122.    The steps Rimini took to comply with the Injunction with respect to "J.D. Edwards software source code" were reasonable.

123.    Rimini's understanding of "J.D. Edwards software source code" is a reasonable and good faith understanding of that term.

124.    Oracle was not harmed by the alleged conduct relating to "J.D. Edwards software source code."

### 9.    Issue #8:  Prvtsidx.plb

125.    Rimini did not violate the Injunction with respect to the file prvtsidx.plb.

126.    Rimini substantially complied with the Injunction with respect to the file prvtsidx.plb.

127.    The steps Rimini took to comply with the Injunction with respect to the file prvtsidx.plb were reasonable.

128.    Rimini's actions related to the file prvtsidx.plb were based on a good faith and reasonable interpretation of the Injunction.

129.    The prvtsidx.plb file at issue was sent to Rimini by a client contrary to Rimini's policies.

130.    Despite being contrary to Rimini's policies, the presence of prvtsidx.plb on Rimini's systems does not violate the Injunction or the relevant Oracle license agreement.

131.    The prvtsidx.plb file does not contain "J.D. Edwards software source code."

132.    The prvtsidx.plb file is not a J.D. Edwards file subject to any J.D. Edwards license agreement.

133.    Oracle was not harmed by Rimini's actions with respect to the prvtsidx.plb file.

### 10.    Issue #9:  J.D. Edwards Technical Specification

134.    Rimini did not violate the Injunction with respect to its technical specification for J.D. Edwards update JDE105328.

135.    Rimini substantially complied with the Injunction with respect to its technical specification for J.D. Edwards update JDE105328.

136.    The steps Rimini took to comply with the Injunction with respect to its technical specification for J.D. Edwards update JDE105328 were reasonable.

137.    Rimini's actions related to its technical specification for J.D. Edwards update JDE105328 were based on a good faith and reasonable interpretation of the Injunction.

138.    The technical specification document at issue for Rimini's JDE105328 update does not contain "J.D. Edwards software source code."

139.    Oracle was not harmed by any of Rimini's actions with respect to the technical specification for J.D. Edwards update JDE105328.

**11.    Issue #10:  Update HCM200105 for Rockefeller Group and Home Shopping Network Update**

140.    Rimini did not violate the Injunction with respect to update HCM200105 for Rockefeller Group and Home Shopping Network.

141.    Rimini substantially complied with the Injunction with respect to update HCM200105 for Rockefeller Group and Home Shopping Network.

142.    The steps Rimini took to comply with the Injunction with respect to update HCM200105 for Rockefeller Group and Home Shopping Network were reasonable.

143.    Rimini's actions related to update HCM200105 for Rockefeller Group and Home Shopping Network were based on a good faith and reasonable interpretation of the Injunction.

144.    Update HCM200105 for Rockefeller Group and Home Shopping Network ████████████████████████████████████████████████████████ ███████████████████████████████.

145.    Oracle is only challenging one aspect of the update:  a single Rimini-created file called rsiqtrtx.sqr.

146.    Rsiqtrtx.sqr is not alleged to contain any Oracle copyrighted code or expression.

1   147. ███████████████████████████████████████
2   ███████████████████████████████.

3   148. ███████████████████████████████████████
4   ███████████████████████████████████.

5   149. ███████████████████████████████████████
6   ███████████████.

7   150. ███████████████████████████████████████
8   ████████████████████████.

9   151.    Oracle was not harmed by any action Rimini took with respect to the

10  HCM200105 updates for Rockefeller Group and Home Shopping Network.

11  **V.    CONTESTED ISSUES OF LAW**

12      **A.    Oracle's Separate Statement of Issues of Law[5]**

13  Oracle believes the following contested issues of law warrant resolution at trial:

14      1.    Whether Rimini copies "J.D. Edwards software source code to carry out

15  development and testing of software updates" in violation of the Injunction.

16      2.    Whether Rimini waived its "open code" and "closed code" arguments by

17  failing to raise these arguments during the two rounds of briefing on Oracle's Motion for a

18  Preliminary Injunction and during its two appeals of this action to the Ninth Circuit.

19      3.    Whether Rimini cannot collaterally attack the Injunction during these contempt

20  proceedings because appellate review of the Injunction was available to and sought by

21  Rimini.

22      4.    Whether the Court should find Rimini in contempt based on its violations of

23  the Injunction.

24

25  _____

26  [5] Oracle objects to Rimini's statements of issues of law as duplicative and improper.  Rimini
    has proposed 95 statements of law, nearly twice as many as it proposed during pretrial
    preparations for the entire *Rimini II* litigation.  In addition, many of Rimini's statements of
27  law are duplicative, seek to interject issues with no legal support, or are otherwise foreclosed
    by the Court's prior orders, controlling law, and pretrial stipulations entered into by Rimini.
28  Oracle objects to Rimini's attempts to unnecessarily complicate the issues to be decided at the
    September 20, 2021 evidentiary hearing.

5.      Whether the Court should either impound Rimini's computer systems or require that they be placed in escrow to allow monitoring for additional Injunction violations.

6.      Whether the Court should grant all other sanctions that it deems just and proper based on Rimini's contempt, including without limitation an award of attorneys' fees to Oracle.

**B.      Rimini's Separate Statement of Issues of Law**

In advance of the hearing, Rimini identifies the following issues of law that are or may be disputed by the parties.  In addition, Rimini respectfully submits that both parties should file proposed findings of fact and conclusions of law following the hearing.

1.      Whether, before Rimini may be held in contempt, Oracle must prove by clear and convincing evidence (1) that Rimini violated the Injunction; (2) beyond substantial compliance; and (3) that any such violation was not based on a good faith and reasonable interpretation of the Injunction.

2.      Whether Rimini violated the Injunction with respect to any of the 10 issues set for hearing.

3.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether Rimini substantially complied with the Injunction.

4.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether such violations were technical violations not sufficient to show contempt.

5.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether such violations were not willful.

6.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues for hearing, whether the steps Rimini took to comply with the Injunction were reasonable.

7.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether Rimini acted based on a good faith and reasonable interpretation of the Injunction.

8.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether there was a fair ground of doubt of the wrongfulness of Rimini's conduct.

9.      To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether the Injunction was clear and definite with respect to its application to the accused conduct.

10.     To the extent Rimini is found to have violated the Injunction with respect to any of the 10 issues set for hearing, whether it would have been practically impossible to comply with the Injunction.

11.     Whether Rimini acted contumaciously with respect to any of the 10 issues set for hearing.

12.     Whether Rimini can be held in contempt for the conduct of other individuals, including Rimini's clients.

13.     With respect to the 10 issues set for hearing and to the extent the conduct of others, such as Rimini's clients, violated or caused a violation of the Injunction, whether Rimini has control over those persons.

14.     Whether Rimini should be held in contempt for violating paragraph 5 of the Injunction by having the psptaxdt.dms file and 10 specific Oracle PeopleSoft documentation files on its systems after they were sent to Rimini by certain clients.

15.     Whether Rimini substantially complied with the Injunction despite the psptaxdt.dms file and 10 specific Oracle PeopleSoft documentation files on its systems after they were sent to Rimini by certain clients.

16.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to the psptaxdt.dms file and 10 specific Oracle PeopleSoft documentation files on its systems after they were sent to Rimini by certain clients.

17.     Whether Rimini should be held in contempt for violating paragraph 3 of the Injunction with respect to update HCM200049 delivered to client Matheson Trucking.

18.     Whether Rimini substantially complied with the Injunction despite the Court's finding a violation of the Injunction with respect to update HCM200049 delivered to client Matheson Trucking.

19.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to its update HCM200049 delivered to client Matheson Trucking.

20.     Whether Rimini violated paragraph 6 of the Injunction with respect to its testing of a W-2 update for client JHN.

21.     Whether Rimini substantially complied with the Injunction with respect to its testing of a W-2 update for client JHN.

22.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to its testing of a W-2 update for client JHN.

23.     Whether Rimini violated paragraph 6 of the Injunction with respect to an update affecting rsi940.sqr delivered to clients ███████████.

24.     Whether Rimini substantially complied with the Injunction with respect to an update affecting rsi940.sqr delivered to clients ███████████.

25.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to an update affecting rsi940.sqr delivered to clients ███████████ ████.

26.     Whether Rimini violated paragraph 5 of the Injunction with respect to its RSPCMPAY.cbl file.

27.     Whether the RSPCMPAY.cbl file contains a substantial amount of protected Oracle expression and is substantially similar to Oracle's PSPTARRY.cbl file.

28.     Whether Oracle failed as a matter of law to meet its burden to prove substantial similarity between Rimini's RSPCMPAY.cbl file and Oracle's copyrighted works because its expert did not perform analytic dissection.

29.     Whether Rimini substantially complied with the Injunction with respect to its RSPCMPAY.cbl file.

30.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to its RSPCMPAY.cbl file.

31.     Whether Rimini's 1099 update that was emailed to Easter Seals in 2018 is a derivative work.

32.     If Rimini's 1099 update that was emailed to Easter Seals in 2018 is a derivative work, whether Rimini's conduct violated the Injunction.

33.     Whether Rimini substantially complied with the Injunction with respect to the 1099 update that was emailed to Easter Seals in 2018.

34.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to the 1099 update that was emailed to Easter Seals in 2018.

35.     Whether Rimini violated paragraph 3 of the Injunction with respect to update HCM200105, delivered to clients Rockefeller Group International and Home Shopping Network.

36.     Whether Rimini substantially complied with the Injunction with respect to update HCM200105, delivered to clients Rockefeller Group International and Home Shopping Network.

37.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to update HCM200105, delivered to clients Rockefeller Group International and Home Shopping Network.

38.     Whether Rimini violated paragraph 8 of the Injunction by allegedly copying "J.D. Edwards software source code" in the development and testing of updates.

39.     Whether Rimini substantially complied with the Injunction with respect to its alleged copying of "J.D. Edwards software source code" in the development and testing of updates.

40.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to its alleged copying of "J.D. Edwards software source code" in the development and testing of updates.

41.     Whether Rimini violated paragraph 8 of the Injunction by allegedly copying the file prvtsidx.plb.

42.     Whether Rimini substantially complied with the Injunction with respect to the file prvtsidx.plb.

43.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to the file prvtsidx.plb.

44.     Whether Rimini violated paragraph 8 of the Injunction with respect to Rimini's technical specification document for Rimini's JDE105328 update.

45.     Whether Rimini substantially complied with the Injunction with respect to Rimini's technical specification document for Rimini's JDE105328 update.

46.     Whether Rimini acted based on a good faith and reasonable interpretation of the Injunction with respect to Rimini's technical specification document for Rimini's JDE105328 update.

47.     Whether "J.D. Edwards software source code" in the Injunction means the software's proprietary closed code, not the open code provided with the software that is designed and intended to be modified by licensees.

48.     Whether it was reasonable for Rimini to conclude that "J.D. Edwards software source code" in the Injunction means the software's proprietary closed code, not the open code provided with the software that is designed and intended to be modified by licensees.

49.     Whether Oracle's proposed reading of what the Injunction prohibits related to copying "J.D. Edwards Software source code" would constitute copyright misuse.

50.     Whether it was reasonable for Rimini to interpret "J.D. Edwards software source code" to mean the software's proprietary closed code, because Oracle's contrary reading of the Injunction would constitute copyright misuse.

51.     Whether the Injunction's restrictions on copying J.D. Edwards software source code can apply to Rimini's work for J.D. Edwards licensees whose licenses do not contain restrictions on accessing J.D. Edwards software source code.

52.     To the extent violations of the Injunction are found by clear and convincing evidence, whether Rimini can be held in contempt of the Injunction based on a small number of discrete violations where it otherwise substantially complied with the Injunction.

53.     To the extent violations of the Injunction are found by clear and convincing evidence, whether Rimini can be held in contempt for violations of the Injunction that were based on a good faith and reasonable interpretation of the Injunction.

54.     To the extent violations of the Injunction are found by clear and convincing evidence, whether Rimini can be held in contempt for good faith violations of the Injunction.

55.     To the extent violations of the Injunction are found by clear and convincing evidence, whether Rimini can be held in contempt for actions taken that were contrary to its compliance policies.

56.     Whether the conduct for which Oracle seeks to hold Rimini in contempt was adjudicated unlawful in *Rimini I*.

57.     Whether the accused conduct at issue in this hearing is different from the conduct adjudicated unlawful in *Rimini I* such that holding Rimini in contempt is legally inappropriate.

58.     Whether the conduct for which Oracle seeks to hold Rimini in contempt is at issue in *Rimini II* and cannot be adjudicated in this contempt proceeding.

59.     Whether Rimini can be held in contempt for allegedly violating the Injunction's restrictions on J.D. Edwards software source code when the meaning of the phrase "J.D. Edwards software source code" was not adjudicated in *Rimini I*.

60.     Whether the accused conduct is protected by 17 U.S.C. § 117.

61.     Whether the accused conduct is protected by the fair use doctrine.

62.     Whether copying or sending a Rimini file that contains no protected Oracle code or expression constitutes reproduction or distribution of Oracle software under the Injunction.

63.     Whether it was reasonable for Rimini to believe that copying or sending a file that contains no protected Oracle code or expression does not constitute reproduction or distribution of Oracle software under the Injunction.

64.     Whether the Injunction permits Rimini to use the knowledge, experience, and know-how gained by supporting one client to support other clients.

65.     Whether it was reasonable for Rimini to believe that the Injunction does not prohibit Rimini from using the knowledge, experience, and know-how gained by supporting one client to support other clients.

66.     Whether implementation and development of an update that contains no protected Oracle code can violate the Injunction.

67.     Whether it was reasonable for Rimini to believe that implementation and development of an update that contains no protected Oracle code cannot violate the Injunction.

68.     Whether material that does not substantially incorporate protected expression from an Oracle copyrighted work can be a derivative work.

69.     The meaning of "reproduce, prepare derivative works from, or use a specific licensee's [PeopleSoft/J.D. Edwards] software or documentation other than to support the specific licensee's own internal data processing operations" as used in the Injunction, and whether it proscribes any of the accused conduct.

70.     The meaning of "reproduce, prepare derivative works from, or use [PeopleSoft/J.D. Edwards] software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's [PeopleSoft/J.D. Edwards] environment to develop or test software updates or modifications for the benefit of any other licensee" as used in the Injunction, and whether it proscribes any of the accused conduct.

71.     Whether it was reasonable for Rimini to believe that material that does not substantially incorporate protected expression from an Oracle copyrighted work is not a derivative work.

72.     Whether Rimini's own code, objects, files, scripts, tools, specifications, documents, notes, and other work product, not containing Oracle copyrighted expression, are derivative works.

73.    Whether it was reasonable for Rimini to believe that Rimini's own code, objects, files, scripts, tools, specifications, documents, notes, and other word product, not containing Oracle copyrighted expression, are not derivative works.

74.    Whether any of the Rimini files at issue contain protected Oracle expression.

75.    Whether any of the Rimini files at issue are substantially similar to Oracle copyrighted works.

76.    Whether Oracle failed as a matter of law to meet its burden to prove substantial similarity between the Rimini files at issue and Oracle's copyrighted works because it failed to perform analytic dissection.

77.    Whether the accused acts of "distribution" constitute distributions within the meaning of 17 U.S.C. § 106.

78.    Whether the creation of RAM copies when testing an update for a specific client in that client's environment violates the Injunction.

79.    Whether it was reasonable for Rimini to believe that the creation of RAM copies when testing an update for a specific client in that client's environment does not violate the Injunction.

80.    Whether the alleged acts of reproduction, distribution, and/or derivative works at issue in this hearing involve Oracle copyrighted works adjudicated in *Rimini I*, as distinguished from copyrighted works not adjudicated in *Rimini I* or uncopyrighted works, and whether the Injunction covers copyrighted works not adjudicated in *Rimini I*.

81.    Whether Oracle's interpretation of the Injunction constitutes copyright misuse.

82.    Whether Oracle was harmed by any of the alleged violations of the Injunction.

83.    Whether Rimini may be held in contempt for conduct that was not raised in Oracle's motion for an order to show cause.

84.    To the extent Rimini is held in contempt, whether any sanction is appropriate, and if so, what sanction.

85.     Whether non-compensatory sanctions can be awarded for violations of a complex injunction where the contemnor was denied the right to a jury trial and the proof beyond a reasonable doubt standard.

86.     Whether coercive civil sanctions can be awarded for violations of a complex injunction where the contemnor was denied the right to a jury trial and the proof beyond a reasonable doubt standard.

87.     Whether punitive sanctions can be awarded for violations of a complex injunction where the contemnor was denied the right to a jury trial and the proof beyond a reasonable doubt standard.

88.     To the extent Rimini is held in contempt and to the extent any sanctions are awarded, whether such sanctions that are ultimately awarded are punitive.

89.     To the extent Rimini is held in contempt and to the extent any sanctions are awarded, whether such sanctions that are ultimately awarded are non-compensatory.

90.     Whether any coercive civil sanctions ultimately awarded are the minimum sanction necessary to obtain compliance with the Injunction in the future.

91.     Whether Rimini must be given the opportunity to purge itself of any contempt sanctions.

92.     Whether impoundment is an appropriate sanction.

93.     Whether Oracle is entitled to any compensatory sanctions.

94.     Whether Oracle is entitled to an award of its attorneys' fees and costs.

95.     Whether Rimini is entitled to an award of its attorneys' fees and costs.

## VI.     EXHIBIT LISTS, DEPOSITION DESIGNATIONS, AND ELECTRONIC EVIDENCE

### A.     Exhibit Lists

**Appendix A** is Oracle's Exhibit List, along with Rimini's preliminary objections to Oracle's exhibits.

**Appendix B** is Rimini's Exhibit list, along with Oracle's preliminary objections to Rimini's exhibits.

The parties agree that the documents included in Appendices A and B, for which no objection is currently listed, can be admitted at the hearing subject to appropriate foundation being provided.  Each party agrees to waive authenticity objections as to the documents they produced that are listed on the other party's exhibit list. The parties further agree that they can remove exhibits from and reorder their exhibit list throughout the pre-hearing meet and confer process, and in response to the Court's rulings regarding the scope of the hearing.  The parties each reserve the right to use exhibits on the opposing party's exhibit list, including exhibits that a party withdraws after the filing of this pre-hearing order.

The parties also reserve the right to supplement and amend their objections, including for documents for which no objection is currently listed, throughout the pre-hearing meet and confer process and at the hearing, in response to Court rulings and the context within which the evidence is presented.

**<u>Oracle's Additional Statement</u>**

A significant portion of the exhibits on Oracle's list were submitted with Oracle's order to show cause briefing, and those exhibits were accepted and considered by the Court with no objection from Rimini or over Rimini's objection. Therefore, Oracle's position is that those exhibits should be pre-admitted at trial, and Oracle will request pre-admission from the Court if the parties cannot agree before the hearing.

Rimini baselessly complains that Oracle's exhibit list is too long. Oracle of course hopes to use only a fraction of the exhibits on its list at trial. However, the Court ordered Rimini to show cause as to why it should not be held in contempt on March 31, 2021, and Rimini ignored the Court's directive in its briefing, offering vague "evidence will show" platitudes instead of actual evidence.  Rimini admitted as much during the parties' meet and confer, likening its OSC Responses to a pretrial overview instead of a substantive filing.

Subsequently, Rimini has gone on to add dozens of exhibits to its list that were not previously in the record, and Rimini has included witnesses on its witness list who Oracle has not been able to depose for this proceeding, while also refusing to produce the witnesses for deposition. Contrary to Rimini's bald assertions below, no exhibits on Oracle's list are

1    irrelevant to the violations at issue and rebuttal of Rimini's potential defenses. While Oracle

2    remains hopeful that the parties will make meaningful progress in reducing their objections

3    and agreeing upon a set of preadmitted exhibits, Rimini should not be allowed to profit from

4    its serial withholding of evidence.

5           There is also no merit to Rimini's complaints about the PeopleSoft and JD Edwards

6    materials that Oracle produced in the litigations and intends to compile as Exhibit 1. Rimini

7    has no sound evidentiary objection to these materials and Oracle has told Rimini that it will

8    continue to meet and confer about this exhibit and others leading up to the hearing. Rimini

9    has also engaged in the same conduct about which it now complains. Rimini's exhibit list

10   includes the entire database for its AFW tools, and all Salesforce records that Rimini

11   produced during post-Injunction discovery, both of which are plainly overbroad and not

12   relevant to the issues to be decided at the evidentiary hearing.

13          **Rimini's Additional Statement**

14          The parties have met and conferred in good faith regarding their exhibit lists, and Rimini

15   will continue to do so, but so far there are a number of issues the parties have been unable to

16   resolve.

17          First, Oracle's exhibit list—which contains approximately 1,350 exhibits—is overbroad

18   and contains an overwhelming number of exhibits that are not relevant to the ten discrete issues

19   set for this evidentiary hearing. This Court has ordered, twice, that the hearing is to be limited

20   to the specific issues identified in the Court's order to show cause. ECF No. 1459 at 35 ("[T]he

21   Court cautions the parties to stay strictly within the bounds articulated above for its argument

22   and evidence presentation; violations will not be tolerated."); ECF No. 1476 ("[T]he parties are

23   not to argue or present evidence on any issue not specifically permitted by this Order at the

24   upcoming hearing."). Yet Oracle's exhibit list contains hundreds of exhibits that attempt to

25   introduce new issues. For example, Oracle's exhibit list contains dozens of exhibits that its

26   expert relied on to argue that Rimini's testing processes, and "test plans," constitute "cross-

27   use," even though the Court ruled that such processes were not at issue in the hearing. ECF

28   No. 1459 at 16, 18:24–19:23. As another example, roughly 200 of Oracle's exhibits *pre-date*

*the Injunction by years.*  Rimini has objected to these exhibits, and will seek resolution from the Court if the parties cannot reach an agreement before the hearing.

Oracle's statement above that "a significant portion of the [1,350] exhibits on Oracle's list were submitted with Oracle's order to show cause briefing" is not accurate, nor is its claim that Rimini does not, or did not, object to those exhibits or that those exhibits were somehow already received into evidence.  Rimini has been circumscribed in its objections, and in general, has not objected to exhibits that concern the ten issues set for hearing.

<u>Second</u>, some of Oracle's exhibits are clearly improper.  For example, Oracle's "Exhibit 1" is all "Oracle software, updates, documentation, and deposit materials for PeopleSoft and JD Edwards software, including physical software media productions in *Rimini I* and *Rimini II*." In other words, Exhibit 1 consists of thousands of unidentified documents and approximately 12 boxes of software disks consisting of terabytes of files that have been produced over the last 10 years.  Rimini asked Oracle to withdraw this exhibit—or limit it to some identifiable relevant file that it intends to introduce—but Oracle declined.[6]

<u>Third</u>, Oracle has objected to a large number of Rimini's exhibits as "Not in Rimini's OSC Filings," meaning that the exhibit was not attached to the pre-hearing briefing.  This is not a valid objection.  The pre-hearing briefing was limited to 100 pages of evidence, whereas the evidentiary hearing is set for three days per side.  It would have been impossible for Rimini to attach all of its evidence to the pre-hearing briefing, and it noted as much in the briefing itself and explained that the evidence submitted with its briefing was exemplary.  ECF No. 1467 at 2 n.2.  Oracle's claim above that Rimini is "withholding evidence" is false.  The exhibits on its list were produced during discovery, and Rimini attached to its briefing as much evidence as

---

[6] Oracle's complaint that Rimini's exhibit list includes its AFW database (which is also on Oracle's list) and certain Salesforce records is meritless as each is a specific file with a specific, identified Bates number, unlike Exhibit 1, which is some unspecified collection of things.

was reasonably possible within authorized briefing limits.[7]  Oracle similarly includes exhibits on its list that were not in its briefing.

Aside from the exhibit list issues, Rimini preserves its objection that experts should not be permitted to testify beyond the scope of their disclosures in this case.  Oracle has only one witness in this case—its expert, Barbara Frederiksen-Cross.  But a large number of the exhibits on Oracle's exhibit list were not opined on by Ms. Frederiksen-Cross nor cited in her reports.  Rimini intends to object to any attempt by Ms. Frederiksen-Cross to give new opinions regarding these documents.

### B.    Deposition Designations

**Appendix C** is a list of Oracle's deposition designations, along with Rimini's preliminary objections to Oracle's designations.

**Appendix D** is a list of Rimini's deposition designations, along with Oracle's preliminary objections to Rimini's designations.

In the interest of judicial efficiency, the parties propose to submit their final deposition designations to the Court with each party's objections to the other party's designations by the beginning of the hearing. This will allow the Court to consider and review the parties' designations and objections at the time of the Court's choosing.

The parties reserve the right to withdraw designations and/or counter-designations throughout the pre-hearing meet and confer process, and in response to the Court's rulings regarding the scope of the hearing.

The parties also reserve the right to supplement and amend their objections, including for testimony for which no objection is currently listed, throughout the pre-hearing meet and confer process and at the hearing, in response to Court rulings and the context within which the evidence is presented.  The parties reserve the right to use any testimony designated by the other party, subject to objections.

---

[7]  Oracle's complaint about depositions, which Oracle sought for the first time seven days ago, fifteen months after the close of discovery, is addressed by both parties in the "Witnesses" section below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Oracle's Additional Statement**

Oracle expects to significantly narrow its deposition designations before the hearing as the parties continue to meet and confer regarding the witnesses and documents that will be presented at trial.[8] Regardless, and contrary to Rimini's unsupported assertions, each of Oracle's deposition designations is directly relevant to the ten violations at issue, often as additional context regarding Rimini's support processes. Again, with Rimini's "hide the ball" tactics in its order to show cause briefing, and Rimini's unwillingness to produce for deposition its intended witnesses, Oracle has no choice but to come to trial fully prepared to rebut Rimini's evidence and defenses. Rimini's complaint that Oracle has designated deposition testimony from before the Injunction went into effect is also baseless. There was only one party deposition during the post-injunction discovery period, and seven out of the eight depositions Rimini designated preceded the Injunction's effective date. Rimini's complaint regarding Oracle's designation of substantial testimony related to Rimini's AFW tools is particularly hypocritical given that Rimini has identified its entire AFW database as an exhibit.

**Rimini's Additional Statement**

Oracle designated large portions of testimony from *17 depositions*, which, if played, would consume much more time than has been allocated for the entire hearing. Rimini's specific objections to Oracle's designations are contained in Appendix C, parts C-2, C-4, and C-6. But it is worth noting that the vast majority of these depositions are entirely irrelevant to the ten issues set for hearing. Almost all of them occurred years prior to the Injunction and contain no testimony regarding the discrete acts at issue that occurred post-Injunction. Many are from sales executives deposed in *Rimini II* who gave testimony relevant to the parties' respective business tort claims in *Rimini II*, but are not relevant to the ten technical issues set for this hearing. And some of the designated testimony is on topics expressly excluded from the hearing; for example, Rick Frank's deposition exclusively related to Rimini's AFW tools,

---

[8] Oracle defers to the Court's judgment on whether to count a party's deposition designations against the party's time to present testimony at the hearing.

which the Court expressly held is an issue for *Rimini II*, not this proceeding.  ECF No. 1459 at 15 ("[N]either Rimini's Dev Instructions nor its AFW Tools software were before the Court or held to be unlawful in *Oracle I* …. [T]he Court denies Oracle's motion as it relates to the Dev Instructions and AFW Tools software outright.").

Oracle claims it "expects to significantly narrow" its designations prior to the hearing. That would be welcome, and certainly is necessary.  In the meantime, Rimini has incurred significant costs objecting to and counter-designating more than a dozen irrelevant depositions.[9]

## VII.   WITNESSES

The parties submit the following lists of witnesses that may be called at the hearing other than solely for impeachment or rebuttal purposes. The Parties reserve the right to call additional witnesses for purposes of impeachment or rebuttal at the hearing.  The Parties also reserve the right to narrow or amend the witness lists to account for Court rulings, further proceedings, further stipulations, or further meeting and conferring.

**Oracle's Proposed Witness List[10]**

| Name | Affiliation | Address |
|---|---|---|
| Barbara Frederiksen-Cross | Oracle, Expert | c/o Morgan, Lewis & Bockius LLP, 1 Market Street, Spear Street Tower, San Francisco, CA 94105 |
| Oracle custodian of license records (if necessary) | Oracle | c/o Morgan, Lewis & Bockius LLP, 1 Market Street, Spear Street Tower, San Francisco, CA 94105 |
| Oracle custodian of source code, software, and documentation records (if necessary) | Oracle | c/o Morgan, Lewis & Bockius LLP, 1 Market Street, Spear Street Tower, San Francisco, CA 94105 |
| Oracle custodian of copyright registration records (if necessary) | Oracle | c/o Morgan, Lewis & Bockius LLP, 1 Market Street, Spear Street Tower, San Francisco, CA 94105 |
| Rimini custodian of records (if necessary) | Rimini | 3993 Howard Hughes Pkwy Suite 500, Las Vegas, NV 89169 |

[9]  Rimini believes deposition testimony submitted to the Court should count against the submitting party's trial time, to encourage the parties to submit only relevant testimony.

[10]  Oracle reserves the right to call any witnesses, either live or by deposition, identified on Rimini' witness list.

**Rimini's Proposed Witness List**

In addition to the witnesses identified in Rimini's deposition designations, Rimini lists the following witnesses that it may call at the hearing:[11]

| Name | Affiliation | Address |
|---|---|---|
| Owen Astrachan | Rimini, Expert | c/o Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612 |
| James Benge | Rimini | c/o Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612 |
| Brenda Davenport | Rimini | c/o Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612 |
| Stephen Lanchak | Rimini, Expert | c/o Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612 |
| Craig Mackereth | Rimini | c/o Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612 |
| Rimini Custodian of Records (if necessary) | Rimini | c/o Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612 |
| Oracle Custodian of Records (if necessary) | Rimini | c/o Morgan, Lewis & Bockius LLP, 1 Market Street, Spear Street Tower, San Francisco, CA 94105 |

Rimini does not anticipate that it will be necessary for either party to call any custodian of records, as the parties have been discussing and will likely work out an agreement concerning authentication.

**Oracle's Additional Statement**

Despite Oracle's request for five fact depositions (ECF No. 1231 at 4), Oracle was limited to one Rule 30(b)(6) deposition of Rimini in the post-injunction discovery period. Rimini's witness list now includes two witnesses who Oracle has not had the opportunity to depose at all during post-Injunction discovery (Brenda Davenport and James Benge) and one witness who Oracle has not had the opportunity to depose in his individual capacity (Craig Mackereth). These witnesses played a central role in the violations at issue at the hearing, and,

---

[11] Rimini opposes Oracle's "reservation of right" to call Rimini's witnesses in Oracle's case.

as discussed above, Rimini has introduced many new exhibits relating to those violations. Given Rimini's tactic in its order to show cause briefing of stating that "evidence will show" how Rimini's defenses are supported, while not disclosing the claimed evidence, Oracle lacks a clear understanding of what Rimini's witnesses will say about many of the documents on Rimini's exhibit list. Therefore, On August 13, 2021, Oracle noticed the depositions of these three witnesses for dates in early September. Rimini has refused to produce witnesses in response to those requests. Oracle objects to Rimini calling witnesses at the hearing that Oracle has not had the opportunity to depose in their individual capacity regarding the issues that will be tried at the hearing. Oracle will seek an order either reopening limited discovery and compelling Rimini to produce the requested witnesses for deposition or excluding those witnesses from testifying at the hearing.

Oracle also objects to the anticipated testimony of Stephen Lanchak. Mr. Lanchak is Rimini's "ERP industry expert," who Rimini asserts will support Rimini's interpretation of "J.D. Edwards software source code" in the injunction by explaining "at the hearing that—in the context of JDE support—'J.D. Edwards Software source code' means the proprietary 'closed' code that is not intended to be modified." ECF No. 1469 at 25:21-23. Mr. Lanchak is not an expert on the underlying support practices of Rimini or its industry competitors or the licenses at issue in those support practices, and he should not be qualified as an expert to aid in the interpretation of the injunction language at issue at the hearing.

### Rimini's Additional Statement

This Court expressly stated in its Show Cause Order that "No motions in limine will be heard without leave of the Court." ECF 1459 at 35. Ignoring that Order, Oracle argues in this PHO that Rimini should not be permitted to present witness testimony at the OSC hearing from three of its employees if Oracle is not afforded an opportunity to depose them (despite the fact that Oracle violated the Court's scheduling order and the Federal and Local Rules by serving deposition notices for these individuals one week ago, as discussed further below), and Oracle also claims that Rimini should be barred from presenting the testimony of its ERP industry

1   expert, Stephen Lanchak.  It is improper for Oracle to make these arguments in the PHO, and

2   in any event, Oracle's vague and untimely positions lack merit.

3          The  Court's scheduling order in this proceeding set a "DISCOVERY CUT OFF DATE"

4   of October 8, 2019, almost two years ago (ECF 1232 at 2), which was extended to January 17,

5   2020.  The order stated that "**Leave of Court will be required for any other discovery**," and

6   that "**Deadlines will be strictly enforced.**"  *Id.* (emphases added).  Oracle never sought

7   reconsideration of that order,[12] and Oracle subsequently acknowledged and agreed that it would

8   be required to seek leave to take any further discovery.  Specifically, Oracle's counsel told the

9   Court: "Since discovery just closed on January 17, [2020] … **if some issue comes up, we would**

10  **seek leave from you**" to pursue further discovery.  Jan. 22, 2020 Hrg. Tr. 5:24–6:3 (emphasis

11  added).

12         Despite the Court's clear order and Oracle's express assent, on August 13, 2021—that

13  is, one week ago—Oracle served Rimini with notices of deposition for three employees listed

14  on Rimini's witness list, to take place on September 8, 9, and 10, 2021.  Rimini informed Oracle

15  on August 18, 2021 that Oracle's deposition notices are invalid because they were served in

16  violation of the scheduling order entered in this proceeding and applicable rules, which require

17  Oracle to file a motion for leave to reopen discovery or pursue additional depositions beyond

18  what the Court permitted.  *See* Fed. R. Civ. P. 6(b)(1)(B) ("[T]he court may, for good cause,

19  extend the time: … on motion made after the time has expired if the party failed to act because

20  of excusable neglect."); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good

21  cause and with the judge's consent."); D. Nev. L.R. 26-3 (in addition to "good cause," "[a]

22  request made after the expiration of the subject deadline will not be granted unless the movant

23  also demonstrates that the failure to act was the result of excusable neglect.").

24

25

26  _____

27  [12]  Oracle previously sought five fact witness depositions in discovery, but the Court denied
     this request and instead permitted Oracle to take a 30(b)(6) deposition.  *See* ECF 1232 at 2.
     Oracle never moved for reconsideration, nor did it seek leave for further depositions at any
28   point.   Oracle's complaint—on the eve of the hearing—that it should have had more
     depositions is long since waived.

1    Oracle has not sought any such leave from the Court.  Nor is there justification for

2 Oracle's attempt to pursue this discovery more than 18 months after the close of discovery in

3 this case, on the eve of the OSC hearing.  The issues the Court set for the hearing are ones

4 Oracle had every opportunity to take discovery on, that Oracle in fact took extensive discovery

5 on (*see* ECF 1372-4), that Oracle's experts analyzed and opined on, and that Oracle felt were

6 sufficiently supported by the record to support its OSC motion.  Oracle is not entitled to a

7 discovery "do-over" or to pursue additional evidence on the very same issues that Oracle itself

8 selected, and felt sufficiently supported, to present to the Court more than a year ago.

9    Oracle also may not claim "surprise" by Rimini's designation of three employee

10 witnesses to testify at the hearing; there are no restrictions on Rimini presenting live witness

11 testimony in its defense, and Rimini's witnesses will respond to the very issues Oracle raised

12 in its OSC motion.  Oracle's contention that Rimini "introduced many new exhibits relating"

13 to the ten issues the Court has set for hearing is not correct because those exhibits were produced

14 long ago, and have been well-known to Oracle since before it filed its OSC motion.  If at any

15 time during the discovery period Oracle believed it needed additional depositions, it was

16 required to seek leave before the Court-ordered discovery cutoff; it told the Court it would do

17 so, and yet it did not do so.  Attempting to take three depositions ten days before the hearing is

18 unduly burdensome and prejudicial to Rimini, in addition to being in violation of the Court's

19 orders. Oracle also claims that Rimini should not be able to offer the testimony of its ERP

20 industry expert, Stephen Lanchak, at the OSC hearing.  Oracle's attempt to make a *Daubert*

21 motion at the last second via the PHO is procedurally improper—indeed it is a violation of the

22 Court's order concerning motions in limine (ECF 1459 at 35)—and in any event, Oracle's

23 "objection" to Mr. Lanchak has no merit.  Oracle seeks to exclude Mr. Lanchak because it has

24 no evidentiary response to his opinions, despite having every opportunity to designate its own

25 expert during the expert-discovery phase of this proceeding. Mr. Lanchak, who has decades of

26 experience working with JDE licensees in the ERP software support industry, has knowledge

27 regarding how "J.D. Edwards software source code" was interpreted by JDE and the industry,

28 Oracle's encouragement of licensees to copy and modify open code, the tools provided with

JDE to do so, and JDE's industry success *because* it is modifiable.  The meaning of "J.D. Edwards software source code" is disputed (*see* ECF 1459 at 24), was never litigated in the underlying trial, and evidence of Oracle's practice regarding, and the industry's understanding of, that term is critically relevant in interpreting it.  *See, e.g.*, *Laborers Health & Welfare Tr. Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir. 1998) (noting that course of performance under a contract "is to be given great weight" in interpreting an ambiguous contract).  Mr. Lanchak's testimony will assist the Court in resolving the parties' dispute, and there is no basis to exclude it.

## VIII.   RIMINI'S STATEMENT REGARDING APPELLATE PRESERVATION OF ISSUES

During this proceeding and the related proceeding in *Rimini II*, the Court has ruled on a number of Rimini's defenses to Oracle's claims and arguments supporting a finding of contempt.  Rimini maintains that certain of those rulings were legally and factually erroneous and expressly preserves its appellate rights.

Rimini has the constitutional right to assert every available defense.  *See, e.g.*, *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).  Oracle, however, has taken diametrically opposed positions with regard to Rimini's asserted defenses.  On the one hand, Oracle has (incorrectly) argued waiver at virtually every stage of this litigation.  *E.g.*, *Rimini I*, No. 16-16832, Dkt. 50 (Oracle's Answering Brief) at 55; *Rimini I*, No. 18-16554, Dkt. 23 (Oracle's Answering Brief) at 35, 38, 39; *Rimini I*, No. 10-0106, Dkt. 1139 (Oracle's Reply in Support of its Renewed Motion for Permanent Injunction) at 12.  On the other hand, whenever Rimini has expressly preserved its appellate rights, Oracle has (incorrectly) argued that Rimini's appellate preservation efforts are improper attempts to seek reconsideration of the Court's prior holdings, thereby supposedly "wasting the Court's time and resources," *Rimini II*, Dkt. 1265-s at 117.

In light of Oracle's past positions, Rimini includes this brief, non-exhaustive appellate preservation section ***not*** to relitigate any issues on which the Court has previously ruled, but to remove any doubt that Rimini has preserved (*i.e.*, has not waived or forfeited) all of its previously litigated issues for appeal.  As explained below, Rimini maintains that certain rulings

1  rejecting its defenses were legally and factually erroneous, and preserves its right (in this
2  contempt proceeding and otherwise) to appeal those rulings through appropriate vehicles.  In
3  so doing, Rimini does not forgo any other defense properly asserted in this litigation, nor does
4  it waive any other bases for appeal.

5  **A.    Derivative Works**

6  Rimini has argued throughout this contempt proceeding that the Rimini works at issue
7  cannot be derivative works as a matter of law because they do not "substantially incorporate
8  protected material from [any Oracle] preexisting work.'"  *E.g.*, *Rimini I*, Dkt. 1385-s at 17
9  (quoting *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998)); Dkt. 1469-s at 21;
10  Dkt. 1480-s at 10–11.  Relatedly, Rimini moved to exclude testimony of Oracle's expert witness
11  opining that various Rimini files at issue were derivative works because she (i) failed to apply
12  this well-settled definition of a derivative work; and (ii) did not conduct analytic dissection to
13  determine whether the files at issue were derivative works.  *See Rimini I*, Dkt. 1392-s.  In *Rimini*
14  *II*, Rimini raised these arguments with respect to certain files at issue in *Rimini II* and, after the
15  Court rejected them, sought intermediate appellate certification of the issue under 28 U.S.C.
16  § 1292(b).  *See Rimini II*, Dkt. 1298.

17  The Court declined in the contempt proceeding to exclude the testimony of Oracle's
18  expert, *see Rimini I*, Dkt. 1459 at 12, 21–22, 35, and reserved resolution of whether specific
19  Rimini files were derivative for after an evidentiary hearing, *see id.* at 21–22.  Rimini preserves
20  for appeal its position that all of the works at issue are as a matter of law not derivative works
21  because they do not substantially incorporate protected Oracle expression, and that the
22  testimony of Oracle's expert should have been excluded.

23  **B.    Inappropriateness of the Contempt Proceeding to Adjudicate Process 2.0**

24  The Court has acknowledged that Rimini reconfigured the support model that was
25  litigated in *Rimini I*.  *E.g.*, *Rimini II*, Dkt. 1253 at 6 (describing "Rimini's new support model,"
26  "Process 2.0," and how it differs from the support model adjudicated in *Rimini I*).  While an
27  adjudicated infringer should not be permitted to make insignificant changes to its practices to
28  skirt an injunction, the public policies behind intellectual property (and antitrust) favor

69

1  legitimate redesigns to avoid infringement and counsel against using a broad interpretation of

2  an injunction to prohibit materially reworked practices.  *See, e.g.*, *McCullouch Tool Co. v. Well*

3  *Surveys, Inc.*, 395 F.2d 230, 233 (10th Cir. 1968).  To balance these interests, courts ask whether

4  a redesigned process is "not more than colorably different" than the process previously

5  adjudicated.  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011); *see Rimini I*,

6  Dkt. 1323-s at 19–22.  Where a redesigned process is more than colorably different from that

7  previously adjudicated, adjudication of that new process in a summary contempt proceeding is

8  inappropriate and unconstitutional.  *TiVo*, 646 F.3d at 882.  Rather, the new issues raised by

9  different processes must be decided by a jury in a separate infringement suit.

10  Rimini repeatedly raised this objection to Oracle's attempt to have the legality of

11  Process 2.0 litigated in a summary contempt proceeding—especially given Oracle's failure to

12  even attempt to prove that Process 2.0 is not more than colorably different from Process 1.0.

13  *E.g.*, *Rimini I*, Dkt. 1385-s at 13–16.  Rimini explained the fundamental changes inherent in

14  Process 2.0—including removing entirely the processes of local hosting and generic

15  environments.  *See id.*  For example, Rimini's expert, Duke Computer Science Professor Owen

16  Astrachan, analyzed Process 1.0 (as characterized by Oracle at trial) and compared it to Process

17  2.0, and concluded that the two processes are "fundamentally different" because under Process

18  2.0, (1) every client has its own licensed Oracle software environments; (2) each client's

19  environments are located on the client's systems, not Rimini's; (3) there are no Oracle software

20  environments on Rimini's systems; (4) Rimini remotely accesses each client's separate

21  software environment individually; and (5) files containing Oracle code are not transferred from

22  one client to another. *Rimini I*, Dkt. 1327 ¶ 154; *see id.* ¶¶ 143–60.  Ms. Frederiksen-Cross

23  reviewed Professor Astrachan's analysis and served a surrebuttal report responding to portions

24  of it, but ***did not respond*** to Professor Astrachan's analysis of the fundamental differences

25  between Process 1.0 and 2.0.  Her declaration provides no analysis either.  *See Rimini I*,

26  Dkt. 1368-1.

27  This Court rejected Rimini's argument, reasoning that the "not more than colorably

28  different" standard applies only to injunctions against patent infringement.  *Rimini I*, Dkt. 1459

1    at 14.  Rimini noted its disagreement with that holding, and explicitly preserved the issue for

2    appeal.  *Rimini I*, Dkt. 1469-s at 7 n.5.  It continues to preserve the issue for appeal.

3            C.       **"Cross-Use" and Interpretation of the License Agreements**

4            Rimini respectfully submits that the Court erred in *Rimini II* in its rulings interpreting

5    the Oracle license agreements at issue and determining whether instances of Rimini's so-called

6    "cross-use" exceeded the scope of those license agreements.  *See, e.g.*, *Rimini II*, Dkt. 1253 at

7    84–88.  Rimini noted those rulings in its contempt briefing, and explicitly preserved resolution

8    of disputes over interpretation of Oracle license agreements and allegations of "cross-use" for

9    appeal should Rimini be found in contempt.  *E.g.*, *Rimini I*, Dkt. 1469-s at 18 n.7.  Rimini

10   continues to preserve those issues for appeal.

11           D.       **Noncompensatory Sanctions**

12           Supreme Court and Ninth Circuit precedent are clear that "noncompensatory sanctions

13   for violations of complex injunctions require[] heightened procedural protections including a

14   jury trial and a beyond reasonable doubt burden of proof."  *Ahearn ex rel. NLRB v. Int'l*

15   *Longshore & Warehouse Union*, 721 F.3d 1122, 1129–30 (9th Cir. 2013) (quoting *Int'l Union,*

16   *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1994)).  Because sanctions

17   sought by Oracle in this contempt proceeding were *punitive* (let alone noncompensatory), and

18   the injunction at issue is undisputedly complex, Rimini moved for a jury trial and a standard of

19   proof beyond a reasonable doubt.  *E.g.*, *Rimini I*, Dkt. 1389-s; Dkt. 1414-s.  The Court denied

20   that motion.  *See Rimini I*, Dkt. 1459 at 28–30.  Rimini subsequently noted its disagreement

21   with that holding (preserving the issue for appeal), and argued in light of it that any award of

22   sanctions in this proceeding *must now* be strictly compensatory.  *E.g.*, Dkt. 1469-s at 28–30.

23   Rimini continues to preserve the issue for appeal.

24           E.       **Copyright Misuse**

25           Rimini respectfully submits that the Court erred in *Rimini II* in dismissing Rimini's

26   claim for a declaration of copyright misuse and its affirmative copyright misuse defense to

27   Oracle's claims.  Rimini explained in its pretrial order in *Rimini II* both the legal basis for its

28   assertions of copyright misuse, and the evidence it would have presented establishing that

Oracle has sought to misuse its copyrights to obtain monopoly power over a separate market where it has no exclusive rights. *See Rimini II*, Dkt. 1265-s at 88–90.

Rimini also raised repeatedly its copyright misuse defense in this contempt proceeding as a basis to reject Oracle's reading of the Injunction and claims of violation. *E.g.*, *Rimini I*, Dkt. 1385-s at 28; Dkt. 1469-s at 25 n.9; Dkt. 1480-s at 14. Should Rimini be found in contempt for violating the Injunction, Rimini preserves for appeal its ability to argue copyright misuse as a defense.

### F.    17 U.S.C. § 117 Defense

The Court erred in *Rimini II* when it struck Rimini's 17 U.S.C. § 117 defense under *Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010). *See Rimini II*, Dkt. 90 at 3–4. Section 117 provides:

> (a) Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:
>
> > (1)    that such new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or
> >
> > (2)    that such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.

17 U.S.C. § 117(a). That provision precludes any finding of infringement in *Rimini I* or *Rimini II*—let alone a finding of contempt premised on allegedly infringing conduct. Congress expressly authorized third-party support of software in enacting Section 117(a), recognizing that copying is inherent in the provision of such support. That said, Rimini recognized that this Court's holding in *Rimini II* precluded Rimini from invoking Section 117(a) in this contempt proceeding and, rather than "re-argue" the issue, explained why Section 117(a) precludes a finding of contempt and preserved the issue for appeal. *Rimini I*, Dkt. 1469-s at 18 n.7; Dkt. 1480-s at 5 n.3. Were Rimini given the opportunity during the contempt proceeding, or at

trial in *Rimini II*, the evidence would demonstrate that Rimini did not infringe Oracle's copyrights because the copies at issue in this case fall squarely within Section 117: (1) Rimini's clients own the copy of Oracle software obtained in their license agreement; (2) Rimini's clients authorized Rimini to make additional copies; and (3) those copies were either an essential step in utilization of the software in conjunction with a machine and for no other purpose, or for archival purposes only. *See Krause v. Titleserv, Inc.*, 402 F.3d 119, 125 (2d Cir. 2005); *see also UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1183 (9th Cir. 2011).

Oracle's suggestion that Rimini "waived" its Section 117 defense for purposes of contempt by withdrawing it at the pleading stage on the merits in *Rimini I* is incorrect.  Whether a defense withdrawn pre-judgment is available "in a later proceeding," including "a contempt action" is decided in "that" later proceeding by "applying the normal rules of" *res judicata*, not waiver.  *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1318 (Fed. Cir. 2004).  This contempt proceeding does not involve "the same transactional nucleus of facts" as the *Rimini I* merits case, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003), and thus the defense would be available to Rimini barring this Court's view that Ninth Circuit law precludes its invocation.[13]

## IX.   ORACLE'S RESPONSE TO RIMINI'S STATEMENT ON APPELLATE PRESERVATION

Rimini's purported "Appellate Preservation" section is procedurally improper and, once again, a waste of judicial resources.  After the jury trial in *Rimini I*, this Court issued a permanent injunction on October 11, 2016 (ECF No. 1065), followed by a final judgment on October 18, 2016 (ECF No. 1076).  Rimini appealed, and the Ninth Circuit resolved that appeal on January 8, 2018 (ECF No. 1111).  On October 14, 2018, this Court granted Oracle's renewed motion for a permanent injunction (ECF No. 1164), which was issued the next day

---

[13] To the extent Ninth Circuit case law under *Vernor* and related cases forecloses licensees from invoking the essential step defense, it is "clearly irreconcilable," *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740–41 (9th Cir. 2009), with the Supreme Court's subsequent decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013).  *See* 2 Nimmer on Copyright § 8.12[b][1][d][i][III], at 8-284 to -285.  The correct approach is that taken by the Second Circuit in *Krause*, 402 F.3d at 125.

(ECF No. 1166).  Rimini appealed the second permanent injunction (ECF No. 1167), and on

August 16, 2019, the Ninth Circuit affirmed, with a few minor modifications to the language

of the injunction (ECF No. 1236). Thus, the deadline for a *Rimini I* appeal has long passed.

Rimini either preserved these issues during *Rimini I* and timely appealed them, or it

didn't.  Creating a "hot topics" list in the hopes that the Court will reconsider prior substantive

rulings from not only this *Rimini I* litigation—but also from the separate and subsequent

*Rimini II* litigation—is inappropriate.  The Court should ignore this unnecessary section—

which does not even request any relief—and direct Rimini to cease these and other

procedurally improper attempts to dispute its losses.

### A.   *Rimini II* Issues Cannot Be Preserved for Appeal in This *Rimini I* Contempt Proceeding

It is not procedurally possible for Rimini to preserve appellate issues in the distinct

*Rimini II* action in this *Rimini I* contempt proceeding.  Yet, Rimini devotes the majority of its

purported "Appellate Preservation" section to *Rimini II* rulings.  *See supra* Section VIII.A

(discussing this Court's rejection of Rimini's derivative works arguments in *Rimini II*);

Section VIII.C ("submit[ting] that the Court erred in *Rimini II* in its rulings interpreting the

Oracle license agreements at issue and determining whether instances of Rimini's so-called

'cross-use' exceeded the scope of those license agreements"); Section VIII.E ("submit[ting]

that the Court erred in *Rimini II* in dismissing Rimini's claim for a declaration of copyright

misuse and its affirmative copyright misuse defense to Oracle's claims"); Section VIII.F

(arguing that the Court "erred in *Rimini II* when it struck Rimini's 17 U.S.C. § 117 defense").

### B.   Rimini Withdrew Its Section 117 Defense in *Rimini I*

Rimini *withdrew* its Section 117 defense in *Rimini I*.  *See Rimini I*, ECF No. 401

¶¶ 13–14.  As a matter of law and logic, withdrawn defenses are not preserved for appeal.  *See*

*Henderson v. La Marque,* 82 F. App'x 182, 184 (9th Cir. 2003) (holding that an "issue was

not preserved for appeal because the prosecutor withdrew her Batson motions without

objection"); *United States v. Schmalfeldt*, 856 F.2d 197 (6th Cir. 1988) (argument withdrawn

in sidebar conference was not preserved for appeal).  Rimini fails to identify any contrary

1   authority in its purported "Appellate Preservation" section.

2       Rimini notes that this Court "struck Rimini's 17 U.S.C. § 117 defense under *Vernor v.*

3   *Autodesk, Inc.*, 621 F.3d 1102 (9th Cir. 2010)" in *Rimini II*.  *See supra* Section VIII.F.  Yet,

4   Rimini then devotes an entire subsection of this pre-hearing order in *Rimini I* to attempting to

5   present arguments barred by the Court's correct legal ruling in a subsequent case.  Par for the

6   course for Rimini—but likewise inappropriate and not appellate preservation.

7       **C.    Rimini Should Not Be Permitted to Reargue Substantive Rulings in This
              Contempt Proceeding Under the Guise of "Appellate Preservation"**

8

9       This Court already addressed each of the arguments that Rimini rehashes here as

10  purported "Appellate Preservation."  *See Rimini I,* ECF No. 1459 at 16–17, 23–24; *Rimini II*,

11  ECF No. 1253 at 50–53 (derivative works); *Rimini I*, ECF No. 1459 at 14 (rejecting patent

12  law standard in this copyright action); *Rimini II*, ECF No. 1253 at 39–48, 53–55, 84–88

13  (rejecting Rimini's cross-use arguments); *Rimini I*, ECF No. 1459 at 28–30 (rejecting

14  Rimini's jury trial request and contention that Oracle seeks punitive damages); *Rimini II*, ECF

15  No. 90 at 5–7 (rejecting Rimini's copyright misuse argument).  Rimini either already briefed

16  these issues, or, if it failed sufficiently to do so, finds itself faced with waiver.  Either way,

17  this section does nothing to preserve Rimini's appellate rights.  Rimini is just looking for yet

18  another bite at the apple.

19      This Court should disregard Rimini's procedurally improper "Appellate Preservation"

20  section.

21  **APPROVED AS TO FORM AND CONTENT:**

22  Dated:  August 20, 2021                    Dated:  August 20, 2021

23  MORGAN, LEWIS & BOCKIUS LLP        GIBSON, DUNN & CRUTCHER LLP

24

25  By:  */s/ Benjamin P. Smith*              By:  */s/ Eric D. Vandevelde*
         Benjamin P. Smith                           Eric D. Vandevelde

26  *Attorneys for Plaintiffs Oracle USA, Inc.,*   *Attorneys for Defendants Rimini Street, Inc.,*
    *Oracle America, Inc. and Oracle*              *and Seth Ravin*
27  *International Corp.*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PRE-HEARING ORDER
CASE NO. 2:10-CV-0106-LRH-VCF

**ATTESTATION OF FILER**

      The signatories to this document are Eric D. Vandevelde and I, and I have obtained his concurrence to file this document on his behalf.

Dated:  August 20, 2021

                    MORGAN, LEWIS & BOCKIUS LLP

                    By:  */s/ Benjamin P. Smith*
                         Benjamin P. Smith

                    *Attorneys for Plaintiffs Oracle USA, Inc., Oracle America, Inc. and Oracle International Corp.*

JOINT PRE-HEARING ORDER
CASE NO. 2:10-CV-0106-LRH-VCF