# EXHIBIT G

## Rimini's Closing Presentation



# *Oracle v. Rimini Street,* Case No. 2:10-cv-0106-LRH-VCF
# Show Cause Hearing

## Rimini's Closing Presentation

September 28, 2021

# Ten Issues Set for Hearing

**Rimini Street®**

## PeopleSoft local hosting (Inj. ¶ 5)

**Issue 1**   Isolated PeopleSoft files sent by clients

**Issue 5**   rspcmpay.cbl

## "J.D. Edwards software source code" (Inj. ¶ 8)

**Issue 7**   "J.D. Edwards software source code"

**Issue 9**   JDE105328 technical specification

## PeopleSoft "cross-use" (Inj. ¶¶ 4, 6)

**Issue 2**   rsi940a.sqr update for Matheson Trucking

**Issue 3**   W-2 update for Johnson Controls

**Issue 4**   rsi940a.sqr update for Smead and Spherion

**Issue 6**   1099 update for Easter Seals

**Issue 10**   HCM200105 update for Rockefeller and Home Shopping Network

## Oracle Database file prvtsidx.plb (Inj. ¶ 15)

**Issue 8**   prvtsidx.plb

DDX-802

# Closing Argument Roadmap

**Rimini Street**®

## ‹ **Oracle's heavy burden**

‹ Oracle hasn't proven Rimini should be held in contempt on any of the 10 issues

‹ Oracle grossly distorts the Injunction

‹ Rimini's substantial compliance efforts

‹ Oracle's proposed monitorship is unprecedented and contrary to law

# Oracle's Heavy Burden to Prove Contempt

**Rimini Street®**

Oracle's Motion for Order to Show Cause



(9th Cir. 2014) To hold Rimini in contempt, Oracle must show (1) Rimini violated the Court's Injunction, (2) beyond substantial compliance, (3) that Rimini's violations were not based on a good faith and reasonable interpretation of the Injunction, and (4) by clear and convincing evidence. *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010). In seeking an Order to

ECF 1368 at 11:16–19

DDX-804

# Clear and Convincing Evidence

**Rimini Street**®

Placing "in the ultimate factfinder an ==abiding conviction that the truth of its factual contentions are highly probable.=="

*Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal quotation omitted)

"[S]o clear as to leave ==no substantial doubt=="; "[S]ufficiently strong to command the ==unhesitating assent of every reasonable mind.=="

*Harbison v. Am. Motorists Ins. Co.*, 636 F. Supp. 2d 1030, 1044 (E.D. Cal. 2009)

"==[F]irm belief or conviction== that it is highly probable that the factual contentions of the claim or defense are true"

9th Cir. Model Civil Jury Instruction No. 1.7

"==[A]bsence of evidence … does not support a conclusion that [plaintiff] has met its burden by clear and convincing evidence.=="

*United States v. Valle*, 940 F.3d 473, 483 (9th Cir. 2019)

DDX-805

**Rimini Street®**

## Examples of Oracle's improper attempt to burden shift (and false statements):

**Rimini Has Not Substantially Complied with the Injunction**

- Rimini did not take all reasonable steps to comply with the Injunction.
- Limited discovery has established multiple, substantive violations.
- At the evidentiary hearing, Oracle will establish additional violations of Paragraph 5 that show a pattern of impertinence.
- Rimini does not follow its own Acceptable Use Policy.
- Rimini refused to provide complete discovery into its alleged "12,000 updates." Rimini has no evidence that they comply with the Injunction.

Rimini has no evidence that they comply with the Injunction.

Oracle Opening, Slide #5

---

There's no evidence that he was disciplined for his failure to do so -- in fact, our contention is based on the evidence that he was not. There's no evidence that it was quarantined, like

Opening Statement, Tr. at 40:23–25

---

compliance, by and large, I saw no evidence that Rimini was complying with this policy, in most cases, where I found

---

A    Again, I saw no evidence that this was reported to Rimini Street security.

---

A    No evidence that they tested it prior. I'm aware that

---

A    Again, I've seen no evidence that it was developed independently, because it was already existing at the time

Frederiksen-Cross Test., Tr. at 122:1–2; 155:16–17; 266:1; 285:2–3

# Closing Argument Roadmap

**Rimini Street**®

‹ Oracle's heavy burden

‹ **Oracle hasn't proven Rimini should be held in contempt on any of the 10 issues**

‹ Oracle grossly distorts the Injunction

‹ Rimini's substantial compliance efforts

‹ Oracle's proposed monitorship is unprecedented and contrary to law

# Ten Issues Set for Hearing

**Rimini Street**

## ‹ PeopleSoft local hosting (Inj. ¶ 5)

**Issue 1** Isolated PeopleSoft files sent by clients

**Issue 5** rspcmpay.cbl

## ‹ PeopleSoft "cross-use" (Inj. ¶¶ 4, 6)

**Issue 2** rsi940a.sqr update for Matheson Trucking

**Issue 3** W-2 update for Johnson Controls

**Issue 4** rsi940a.sqr update for Smead and Spherion

**Issue 6** 1099 update for Easter Seals

**Issue 10** HCM200105 update for Rockefeller and Home Shopping Network

## ‹ "J.D. Edwards software source code" (Inj. ¶ 8)

**Issue 7** "J.D. Edwards software source code"

**Issue 9** JDE105328 technical specification

## ‹ Oracle Database file prvtsidx.plb (Inj. ¶ 15)

**Issue 8** prvtsidx.plb

DDX-808

# Ten Issues Set for Hearing

**Rimini Street**

## PeopleSoft local hosting (Inj. ¶ 5)

**Issue 1**  Isolated PeopleSoft files sent by clients

**Issue 5**  rspcmpay.cbl

## "J.D. Edwards software source code" (Inj. ¶ 8)

**Issue 7**  "J.D. Edwards software source code"

**Issue 9**  JDE105328 technical specification

## PeopleSoft "cross-use" (Inj. ¶¶ 4, 6)

**Issue 2**  rsi940a.sqr update for Matheson Trucking

**Issue 3**  W-2 update for Johnson Controls

**Issue 4**  rsi940a.sqr update for Smead and Spherion

**Issue 6**  1099 update for Easter Seals

**Issue 10**  HCM200105 update for Rockefeller and Home Shopping Network

## Oracle Database file prvtsidx.plb (Inj. ¶ 15)

**Issue 8**  prvtsidx.plb

DDX-809

**Issue 1** **Isolated PeopleSoft Files Sent by Clients**

**Rimini Street®**



mfringement claims. Of importance to these proceedings was the Court's finding that Rimini violated the "facilities restriction" within PeopleSoft's standard licensing agreement when it hosted its clients' development environments on its own computer systems, a process called "local hosting." ECF No. 474; *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp.3d 1086, 1096–98 (D.

Order to Show Cause, EFC 1459 at 2–3

◄ **Admits that local hosting means running an environment on Rimini's system**

A   I understand local hosting to mean as enjoined here, the hosting of a client's systems on Rimini's systems, but that would be hosting it locally to Rimini's system.

Frederiksen-Cross Test., Tr. at 365:2–4

◄ **Admits that there is no PeopleSoft environment on Rimini's system**

Q   During your work in this contempt proceeding you found no evidence that Rimini had installed on its own computer systems any PeopleSoft environments, correct?

A   Any running environments, that is correct, sir.

Frederiksen-Cross Test., Tr. at 365:23–366:1

◄ **Admits isolated files on Rimini's system are not an environment**

Frederiksen-Cross Test., Tr. at 366:10–367:2

DDX-810

**Issue 1**   Isolated PeopleSoft Files Sent by Clients

**Rimini Street®**



**Barbara Frederiksen-Cross**

**‹** **Salesforce attachments by clients:**



4 support cases → 8 files

OREX_0103, OREX_0104,
OREX_0105, OREX_0013

OREX_0221, OREX_0213,
OREX_0222, OREX_0229,
OREX_0232, OREX_0234,
OREX_0235. OREX_0236

**‹** **Files emailed by clients:**



3 emails → 11 files

OREX_0004, OREX_0098,
DTX-0110

OREX_0005–OREX_0012,
OREX_0099, OREX_0094,
OREX_0096

(As testified by Frederiksen-Cross)

**‹** **Ms. Frederiksen-Cross admits each of these files was sent to Rimini by a client or Oracle partner**

Frederiksen-Cross Test., Tr. at 144:22–24, 152:7–15, 157:17–23,
370:4–9, 371:19–24, 372:5–14, 373:2–23

**Issue 1**   **Isolated PeopleSoft Files Sent by Clients**

**Rimini Street®**

## What Oracle told the Court:

◄ **NO** Warnings to clients

- Oracle Counsel: Rimini has "not identified a single reminder" sent to a client (Tr. at 26:8–19);
- Ms. Frederiksen-Cross: "I have not seen such evidence" (Tr. at 381:3–9)

◄ **NO** Quarantining files

- Oracle Counsel: "absolutely no demonstration . . . that any of this stuff was quarantined" (Tr. at 35:9–18);
- Ms. Frederiksen-Cross: "I was presented no evidence that they had been isolated or quarantined or locked down in any sense" (Tr. at 104:6–15)

◄ **NO** Reports to compliance

- Oracle Counsel: "There's no evidence of notification being sent to what is called Security@RiminiStreet.com" (Tr. at 34:18–19)

◄ **NO** Outreach to clients who sent files

- Oracle Counsel: "there's no communications back to them saying, oh, yeah, don't do this again" (Tr. at 34:16–18)

## What the evidence showed:

◄ **YES** Warnings to clients

- All clients told in Salesforce "Please do not upload any third-party software" (Tr. at 387:19–388:3; 390:14–19); Claim that there were "zero" warnings was "false" (Tr. at 390:20–23)
- Craig Mackereth testimony – clients repeatedly instructed in various ways not to send Oracle IP

◄ **YES** Automatic scanning and quarantining (Mackereth testimony)

◄ **YES** Routine training for employees (Benge Test., Tr. at 609:1–14; Mackereth testimony)

◄ **YES** Employees who fail to follow policy are disciplined (Benge Test., Tr. at 714:14–716:15; Mackereth testimony)

◄ **YES** Outreach to clients who sent files (Mackereth testimony)

**Issue 1**   **Other Alleged Database Files on Rimini's System**

**Rimini Street®**

**‹ Ms. Frederiksen-Cross's alleged identification of other Oracle Database files:**

- **No opinion on contents**
- **No opinion they were used**

> Q   And I think you said yesterday 984, but in your report you say 934.  I assume that's the right number?
> A   934 would be the correct number, I believe, yes.
> Q   And of those 934 documents, you didn't offer any opinions on the contents of those files, correct?
> A   Only with respect to the ones I presented yesterday in testimony.
> Q   And you didn't offer any opinions on whether any of those files were used, correct?
> A   I did not during this hearing, that is correct, with the exception of the one we specifically discussed again.

Tr. at 402:14–24

- **Admits that 98% are Oracle Database files**

> Q   In the last sentence you say of the [9]34 files which is referenced in the previous sentence roughly 98 percent have extensions .sql, .pkb, or .pls of file types intended to be used with instances of Oracle database, correct?
> A   That's correct.

Tr. at 404:14–18

- **Admits that Oracle Database license has no facilities restriction**

> Q   You're aware, correct, that the Oracle license and service agreement, the OLSA, which is the license that covers Oracle database, does not contain a facilities restriction, correct?
> A   My understanding is that to be true, but I have not independently sampled all of the licenses at issue to understand with certainty that that is true.

Tr. at 406:1–7







## ◄ Ms. Frederiksen-Cross's misleading analysis

- Side-by-side comparisons create **false positives** and are not reliable.
  *See DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788, at *7–8, *13–14 (D. Or. Sep. 12, 2019)
  (excluding similar analysis by Frederiksen-Cross)

- Claimed that ~30% of lines "matched" through normalized line matching, but then admitted that was **"before any filtering to apply any constraints or anything"** (Tr. at 513:10–21) and that only **"some of them were interesting"** (Tr. at 203:2–6)

- Claimed there were **"orphan"** asterisks and **"oddness"** with flower boxes (Tr. at 224:3–226:6), **when those were, in fact, false** (Astrachan Test., Tr. at 935:21–936:6)

- Claimed that actions could be named anything (*e.g.*, **"Go Get 'em"**) (Tr. at 230:7–15) when **convention dictates specific terms** (*e.g.*, **"Fetch"**) (Astrachan Test., Tr. at 964:9–19)

- **Ignored the API** (DTX-0500; Astrachan Test., Tr. at 952:21–953:19, 954:2–16, 962:8–964:4, 967:10–20, 972:8–973:2)

- Recognized that many **similarities were "non-probative"** (Tr. at 231:3–233:13), **but made no attempt to quantify how much was probative or opine why it was supposedly "substantial"**

## "Orphan little flower[s]" and "oddness" with asterisks was fake



**RSPCMPAY.cbl printed by Oracle without fix width font (fake orphans)**

OREX_0237 at 3



**RSPCMPAY.cbl as it appears to a developer in real life (no orphans)**

DTX-0501-004

Frederiksen-Cross Test., Tr. at 224:13, 225:4

# Ten Issues Set for Hearing

**Rimini Street**®

## PeopleSoft local hosting (Inj. ¶ 5)



**Issue 1**    Isolated PeopleSoft files sent by clients

**Issue 5**    rspcmpay.cbl

## "J.D. Edwards software source code"

## PeopleSoft "cross-use" (Inj. ¶¶ 4, 6)



**Issue 2**    rsi940a.sqr update for Matheson Trucking

**Issue 3**    W-2 update for Johnson Controls

**Issue 4**    rsi940a.sqr update for Smead and Spherion

**Issue 6**    1099 update for Easter Seals

**Issue 10**    HCM200105 update for Rockefeller and Home Shopping Network

## Oracle Database file prvtsidx.plb (Inj. ¶ 15)



**Issue 8**    prvtsidx.plb

to qualify as a derivative work. One of these is that a derivative work must exist in a "concrete or permanent form," *Galoob*, 964 F.2d at 967 (internal quotation marks omitted), and must substantially incorporate protected material from the preexisting work, *see Litchfield v.*

*Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998)





# Oracle's <span style="color:red">erroneous</span> definitions of derivative work:

‹ **"tailored only to work with" copyrighted software**
(Oracle's Motion for Order to Show Cause, ECF 1368 at 23)

‹ **"modifies" or "extends" copyrighted software**
(Frederiksen-Cross Test., Tr. at 112:10–17)

‹ **Cannot operate "independently of" other copyrighted software** (Frederiksen-Cross Test., Tr. at 112:10–17)

‹ **Uses #include** (e.g., Frederiksen-Cross Test., Tr. at 506:8–16)

*Oracle obfuscated, but later admitted, the fact that any copying relating to #include occurs in the client's environment.*
(Frederiksen-Cross Test., Tr. at 510:7–511:22)

# Court Already Ruled Re-Use of Know-how and Work Product Permited

**Rimini Street®**



(ECF 1459)

*(Rimni II*, ECF 1253)

## ‹ Court held Rimini is _**permitted**_ to...

- "create the same update file" *(Rimini II*, ECF 1253 at 87)
- "memorize" its work product *(Rimini II*, ECF 1253 at 87)
- "replicate the work" *(Rimini II*, ECF 1253 at 87)
- re-use work product like "test cases" (ECF 1459 at 19)
- "develop updates faster" (ECF 1459 at 16)
- perform "less testing" (ECF 1459 at 16)
- "use the same tests to ensure functionality of an update" (ECF 1459 at 19)
- "not test the update because it had previously been tested and worked for other clients" (ECF 1459 at 26)

**Issue 3** — **W-2 Update for Johnson Controls**

## ‹ IRS W-2 Forms for Johnson Controls



**Issue 3** W-2 Update for Johnson Controls

Rimini Street®

## ‹ City of Eugene affected by the W-2 Bug

– Bug affected a federal W-2 form used by all U.S. clients
(Frederiksen-Cross Test., Tr. at 408:13–15; Benge Test., Tr. at 634:24–635:4)

– City of Eugene was affected (Benge Test., Tr. at 636:6–9, 640:3–11)

– Contemporaneous emails show Rimini believed the update affected many clients (DTX-0302 at 1–2)

– City of Eugene contracted for updates to federal forms (DTX-0043 at 20)

– Ms. Frederiksen-Cross offered no opinion that City of Eugene did not need the bug fix (Tr. at 432:20–24, 433:17–434:1)

**ALLEGED CROSS-USE**

**Issue 3** | **W-2 Update for Johnson Controls**

**Rimini Street®**



**Jim Benge**

V.P. for PeopleSoft

**Rimini Street®**

> A    This is a federal U.S. form, something all of our clients receive updates for every year.  So, you know, we had just gone in and made changes in this area and ==thought that we could have introduced a bug for all of our clients.==

> A    ==He was working on the development for this for all of the clients that were impacted.  City of Eugene being one of them,== a client that receives U.S. Federal forms update, including this W-2 form.
>
> Q    What client was Rimini supporting when it tested this settings change in City of Eugene's environment?
>
> A    City of Eugene.

Tr. at 636:6–9; 640:5–11

**Issue 3** | **W-2 Update for Johnson Controls**

**Rimini Street®**

‹ **Emails indicate Rimini believed the bug affected multiple clients**

---

From: Jai Ramachandran

Sent: Thursday, January 24, 2019 4:33 PM

\*   \*   \*

All,

That worked ! Don, Catte   thanks for  jumping in at short notice.

Looks like this could be a potential problem for all new clients switching from tax960us to rsi960us who have left the formatting field blank.

Could be because the formatting is in the SQR for tax960us and rsi960us is looking at the config pages.

---

From: Teresa Hintz <THintz@riministreet.com>

Sent: Thursday, January 24, 2019 2:35 PM

\*   \*   \*

GPD – Please let me know after you scope if you think other clients could be impacted.

---

DTX-0302 at 1–2

**Issue 3**   **W-2 Update for Johnson Controls**





**Barbara Frederiksen-Cross**

Expert Witness for Oracle

Q    If City of Eugene and Johnson Controls are both affected by the W-2 issue, the misalignment that we saw, do you have an opinion on which client Rimini is required to start its work in?

A    No.

Q    They can start in either one, right?

A    Presumably.   Yes.

Tr. at 433:20–434:1

‹ **Rimini re-used its knowledge to implement and test
the update for Johnson Controls**



**Jim Benge**

V.P. for PeopleSoft

**Rimini Street**®

with box 17. So, we had a call with the client and the client
actually changed the print parameters for box 17, as we've
described, and actually tried it out while we were on the
phone with them and confirmed that it resolved their issue.

Tr. at 641:5–8



**Rimini Street**®   · · · · · · · ·   **Johnson Controls**



**Barbara Frederiksen-Cross**

Expert Witness for Oracle

> Q    If Don Sheffield had figured out the solution for City of Eugene to fix the print parameter, and then his colleague is working in Johnson Controls -- is working on Johnson Controls and the colleague says to Mr. Sheffield, hey, have you ever dealt with a situation like this?  And he says, yes, actually, I have, for City of Eugene.  I've changed this print parameter.  Go to this field in Johnson Controls and change it to this, I think it should work, that would be cross-use, right?
>
> A    If he gave him the very specific details of exactly what he changed it to, yes.  If he said just go and check the print parameter and try some different sizes, then I think that would be general know how.

Tr. at 455:3–15



B999999.99

**Rimini Street®**

**Issue 3** | **W-2 Update for Johnson Controls**

## ‹ Oracle's cross-use theory has absurd implications

- Don Sheffield cannot implement the same fix again
- Don Sheffield cannot tell his co-worker how to fix the bug
- Don Sheffield can tell his colleague to "check the print parameter," but cannot tell him to use B999999.99



Owen Astrachan

Expert Witness for Rimini

Duke
UNIVERSITY

Professor of
Computer Science

> Q   I want to ask you, so under Ms. Frederiksen-Cross'
> theories about cross-use, if Rimini had solved this issue,
> let's say for Johnson Controls, and determined that typing in
> B9999 into the field m fixes the issue, and let's say we have
> another client that shows up and is having another problem
> with their W-2 print form, is there any way that Rimini can
> fix that problem for the second client?
>
> A   They could type B999999.99 in there.  I don't know how
> they would do that without using the knowledge they'd gained.
> They would have to reuse their knowledge and know how.

Astrachan Test., Tr. at 998:6–15

**Issue 3** **W-2 Update for Johnson Controls**

**Rimini Street®**

## ‹ Ms. Frederiksen-Cross contradicts herself and the Court

**Cross examination:**

> A    Okay.  I would characterize this as cross-use, in the
>
> sense they are using -- it's not the act of sending the pdf,
>
> but the act of reusing the knowledge of the solution, and
>
> assuming that they could send that without further work to
>
> other clients.  But whether that's allowable or not, I think

Tr. at 441:7–11

**Cross examination:**

> parameter.  Go to this field in Johnson Controls and change it
>
> to this, I think it should work, that would be cross-use,
>
> right?
>
> A    If he gave him the very specific details of exactly what
>
> he changed it to, yes.  If he said just go and check the print

Tr. at 455:9–13

**Redirect testimony:**

> Q    Are any of your cross-use opinions based on Rimini's
>
> reuse of knowledge?
>
> A    No, I don't believe so.

Tr. at 583:8–10

**Court's Order:**

> update the for Client B exclusively using Client B's software.  Nor is it cross use for a Rimini
>
> engineer to "memorize and replicate the work" as Oracle claims.  [ ] Nos. 1053, 1085-.. at 20.

Rimini II, ECF 1253 at 87:8–9

IRS Schedule A (Form 940)



DTX-0421-005

**Issue 4**  rsi940a.sqr Update for Smead and Spherion

**Rimini Street**

## ‹ Rsi940a.sqr is Rimini work product



**Jim Benge**
V.P. for
PeopleSoft

**Rimini Street**



Q   Is rsi940A a Rimini written file?
A   Yes, it is.
Q   Does is it contain any Oracle software?
A   No.

Tr. at 646:3–6



**Owen Astrachan**
Expert Witness
for Rimini

Professor of
Computer Science

A   Once again, the update RSI 940A is completely Rimini work product.  There is no Oracle copyrighted expression in RSI 940A.  And many clients, including City of Eugene, were slated to receive this update.  When the testing was done in the City of Eugene's environment, it was for the City of Eugene, because they would be affected, potentially, by a change to form 940.

Tr. at 999:16–22



**Barbara Frederiksen-Cross**
Expert Witness
for Oracle

You have not disclosed any opinions in any of your expert reports or declarations about whether or not rsi940.sqr is substantially similar to any Oracle code, correct?
A   As I sit here, I do not recall having given any substantial similarity opinion.

Tr. at 472:22–473:1
(see also Tr. at 475:24–476:4, 476:12–16)

**Issue 4**   rsi940a.sqr Update for Smead and Spherion                    **Rimini Street**®

◄ **Rimini's testing of the update in City of Eugene's environment was for City of Eugene, who needed the update**

- **The update affects a federal form** (Benge Test., Tr. at 645:21–24, 646:9–17)

- **City of Eugene (and other clients) receive this update every year** (Benge Test., Tr. at 649:12–650:1, 658:25–659:2)

- **On January 25, 2019, when testing occurred, City of Eugene was slated to receive the update** (Benge Test., Tr. at 658:4–8, 658:20–24, 778:25–779:8)

- **Numerous documents show that this update was slated to go to <u>all U.S. clients</u> with software versions prior to release 2018-B.**
  - DTX-0414 at 1 (Tech Doc); Benge Test., Tr. at 651:7–653:5
  - DTX-0401 (Jira); Benge Test., Tr. at 654:22–655:25, 657:3–658:1
  - DTX-0412 at 2–3, 6; Benge Test., Tr. at 661:21–663:8
  - DTX-0407 at 5; Benge Test., Tr. at 669:4–24, 670:5–671:8

- **Ms. Frederiksen-Cross offered no opinion to the contrary**

## ◀ Update Developed and Tested for Spherion and Smead



**Jim Benge**
V.P. for PeopleSoft
**Rimini Street**

> A    We developed the change on our system, or made the changes on our system.   This is an RSI file, our work product.

Tr. at 776:22–23
(see also Tr. at 659:8–660:12, 663:18–22; DTX-0412 at 2)



**Brenda Davenport**
V.P., Global Quality Assurance
**Rimini Street**

> Q    So does this document tell you whether this update was tested for Smead Manufacturing?
>
> A    Yes.
>
> Q    And was that test successful?
>
> A    Yes, it was.

Tr. at 878:4–8
(see also 881:6–882:10 (Spherion); DTX-0402; DTX-0404)

**Issue 4**   **rsi940a.sqr Update for Smead and Spherion**



**July 2018**
Update contemplated for all U.S. clients <2018-B
(DTX-401 at 7; Benge Test., Tr. at 655:4–12)

**Jan. 2019**
All U.S. clients <2018-B set to receive update
(Benge Test., Tr. at 655:21–23)

**Jan. 14, 2019**
Spherion logs ticket regarding this update

**Jan. 15, 2019**
"Scope" field in Jira set to Spherion to reflect the ticket; not indicative that other clients will not receive the update
(Benge Test, Tr. at 657:8–658:1)

**Jan. 25, 2019**
Tech Doc reflects that update will go to all U.S. clients <2018-B (DTX-0414)

**Jan. 25, 2019**
Don Sheffield develops update "for all US clients that will ultimately get this update" (DTX-0412 at 2–3)

**Jan. 28, 2019 (morning)**
Business analyst email reflects update will go to all U.S. clients <2018-B
(DTX-0407 at 5)

**Jan. 28, 2019 (afternoon)**
Business analysts decide the update will be delivered on case-by-case basis
(DTX-0407 at 1; Benge Test., Tr. at 790:19–791:1)

July 2018          January          February

2019          2019

### ‹  Frederiksen-Cross accuses re-use of know-how, contrary to the Court's orders



**Barbara
Frederiksen-Cross**
Expert Witness
for Oracle

Q   Okay.   So even if that Rimini expression, if the engineer just remembers it, he can't even retype it for Spherion and Smead?   That's your opinion.

A   My understanding is that it needs to be developed in each client's development.   And merely doing a rote recreation, whether it's by copy and paste, by manually typing in from a printout; or, in your hypothetical, from having memorized this big file and then typing it in afresh, it is a recreation in the new customer's environment, for that benefit of that customer, of work that was done and developed in a new customer's environment.   And as I understand the injunction as it's written, that would be prohibited.

Tr. at 482:5-16

## Directly contradicts the Court:

update file for Client B exclusively using Chem B's software   Nor is it cross use for a Rimini engineer to "memorize and replicate the work" as Oracle claims.  ECF No. 1953: 1085-4 at 26.

Rimini II, ECF 1253 at 87:8-9

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

RIMINI STREET, INC.,                            Case No. 2:14-cv-01699-LRH-DJA
        Plaintiff/Counterdefendant,    ORDER

ORACLE INTERNATIONAL CORP. and
ORACLE AMERICA, INC.,
        Defendants/Counterclaimants

**Issue 6** **1099 Update for Easter Seals**

**Rimini Street**



**Issue 6**   1099 Update for Easter Seals

Rimini Street®

## ‹ Rsi1099i.sqr and Rsi1099m.sqr are Rimini work product

- Jim Benge testified they were written by Rimini from scratch (Tr. at 674:17–675:4)
- Professor Astrachan testified they did not contain Oracle copyrighted material (Tr. at 1010:14–19)
- Frederiksen-Cross does not contend they incorporate any Oracle protected expression (Tr. at 505:16–25)

## ‹ Developed and tested for Easter Seals in Easter Seals' environment

- Rimini documents show the update was developed and tested in Easter Seals' environment before the Injunction (DTX-0602; DTX-0603; Benge Test., Tr. at 680:8–685:24)
- Frederiksen-Cross offered no opinion on where or when the update was developed, other than to acknowledge that it was pre-Injunction (Tr. at 506:25–507:15, 508:4–6)

**Issue 6** # 1099 Update for Easter Seals

**Rimini Street**®



**Barbara Frederiksen-Cross**

Expert Witness for Oracle

> Q    Now you did not offer an opinion in any of your reports, your declarations, that the  ris1099-I and 1099-M files are substantially similar to any Oracle code in the universe, correct?
>
> A    As I sit here, I do not recall having done so.

> Q    You didn't offer or disclose any opinions on whether the update for Easter Seals was developed in Easter Seal's environments, did you?
>
> A    I don't believe so.  No.
>
> Q    And you didn't offer any opinions on whether the update, the 1099 update for Easter Seals was tested in an Easter Seals environment, did you?
>
> A    Again, I don't recall that specific opinion being offered.

Tr. at 505:16-20; 506:25-507:8

**No opinions on . . .**

- **Substantial similarity**
- **Development**
- **Testing**

**Issue 6**  **1099 Update for Easter Seals**                    **Rimini Street**®

## ◄ Frederiksen-Cross applies the wrong definition of derivative works

### The Law



### Frederiksen-Cross's **Erroneous** Definition

> to qualify as a derivative work. One of these is that a derivative work must exist in a "concrete or permanent form," *Galoob*, 964 F.2d at 967 (internal quotation marks omitted), and must substantially incorporate protected material from the preexisting work, *see Litchfield v.*

*Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998)

> Q   Okay.  But the file by itself could also be a derivative work, even if it contains no literal or nonliteral Oracle expression whatsoever, in you're view?
>
> A   That is my understanding, counsel, based on the guidance that I have been given, and that, as I understand, is based on prior case law that evaluated similar fact patterns.

Tr. at 503:2–7

**Issue 6** | **1099 Update for Easter Seals**

**Rimini Street**®

## ‹ #include does not incorporate any Oracle expression until the file is run in a client's specific environment for that client

- Professor Astrachan explained this (Tr. at 1016:23–1017:7)
- Frederiksen-Cross admitted this (Tr. at 510:7–11, 510:23–511:22)





**Barbara Frederiksen-Cross**

Expert Witness for Oracle

Q    And when you talk testified about the include and the merging of the Oracle with the Rimini code and the pre-compilation, and explained it, you didn't tell the judge that that was all happening in the client's system, did you?

A    I don't recall if I said anything about that or not yesterday.

Q    You didn't tell the judge that all of those steps are only within the client's systems, not Rimini's?

A    Well, they have it wherever it's being compiled, but, yes, because Rimini doesn't have a PeopleSoft environment, they would not be happening on Rimini's system.  I'll be very clear with that.

Tr. at 510:23–511:9

**Issue 10** HCM200105 Update for Rockefeller and Home Shopping Network

**Rimini Street®**



DTX-1008-002

- **Update involved 13 steps** (OREX_0053; Tr. at 695:4–708:4)

- **One step is integrating rsiqtrtx.sqr, which contains no Oracle copyrighted expression** (Benge Test., Tr. at 690:19–25; Astrachan Test., Tr. at 1021:18–1023:14)

- **Frederiksen-Cross does not contend rsiqtrtx.sqr contains any Oracle copyrighted expression** (Tr. at 485:13–16).

DDX-845

**Issue 10** HCM200105 Update for Rockefeller and Home Shopping Network

**Rimini Street**®

# ‹ Developed and tested specifically for Rockefeller and Home Shopping Network in their environments

**Dev Instruction**



OREX_0053; Benge Test.,
Tr. at 695:4–708:4

DTX-1004 at 2

## ‹ Frederiksen-Cross's retroactive cross-use theory makes no sense

> Q     So if Rimini has just one client and they're -- we hope
>
> we get more clients.  We're not sure.  If they end up do
>
> getting clients, then it somehow makes the prior use of that
>
> First Client's environment cross-use?
>
> A     That is my understanding just under the way the language
>
> of the injunction is framed.

Tr. at 491:12-17

**Issue 2** **rsi940a.sqr Update for Matheson Trucking**

**Rimini Street®**

IRS Schedule A (Form 940)



DTX-0421-005

**Issue 2**  **rsi940a.sqr Update for Matheson Trucking**

**Rimini Street**®

## ◄ Developed for Matheson

**From**: Don Sheffield <dsheffield@riministreet.com>

**Sent**: Monday, January 28, 2019 8:25 AM

**To**: Jim Benge <jbenge@riministreet.com>; Timothy Pringle <tpringle@riministreet.com>; Susan Tahtaras <stahtaras@riministreet.com>; Kim Martinez <kmartinez@riministreet.com>

**Cc**: Anil Yadav <ayadav@riministreet.com>; Teresa Hintz <THintz@riministreet.com>

**Subject**: RE: SF case 162054, Matheson Trucking

Jim,

I did complete the development for MAT as well. It should be ready to go.

OREX_0022 at 2–3 (see also Benge Test., Tr. at 729:25–730:7, 732:8–733:2)

## ◄ Tested for Matheson



DTX-0201-002

DTX-0201; DTX-0205; DTX-0200; Benge Test., Tr. at 734:9–735:23



**Jim Benge**

V.P. for PeopleSoft

Rimini Street®

Q    At the time of this informal delivery to Matheson

Trucking, did you believe you were violating the injunction?

A    No, not at all.

Q    Why not?

A    The work that was done here was done for Matheson, in

Matheson's environment.

Tr. at 737:21-738:1

**Issues 2, 3, 4, 6, 10**   Cross-use Summary

**Rimini Street**®

| Issue | Development | Testing | Rimini Expression | |
|:---:|:---:|:---:|:---:|:---|
| 2 | ✓ | ✓ | ✓ | No contempt |
| 3 | ✓ | ✓ | ✓ | No violation and no contempt |
| 4 | ✓ | ✓ | ✓ | No violation and no contempt |
| 6 | ✓ | ✓ | ✓ | No violation and no contempt |
| 10 | ✓ | ✓ | ✓ | No violation and no contempt |

# Ten Issues Set for Hearing

**Rimini Street**®

## ‹ PeopleSoft local hosting (Inj. ¶ 5)

- **Issue 1**  Isolated PeopleSoft files sent by clients
- **Issue 5**  rspcmpay.cbl

## ‹ "J.D. Edwards software source code" (Inj. ¶ 8)

- **Issue 7**  "J.D. Edwards software source code"
- **Issue 9**  JDE105328 technical specification

## ‹ PeopleSoft "cross-use" (Inj. ¶¶ 4, 6)

- **Issue 2**  rsi940a.sqr update for Matheson Trucking
- **Issue 3**  W-2 update for Johnson Controls
- **Issue 4**  rsi940a.sqr update for Smead and Spherion
- **Issue 6**  1099 update for Easter Seals
- **Issue 10**  HCM200105 update for Rockefeller and Home Shopping Network

## ‹ Oracle Database file prvtsidx.plb (Inj. ¶ 15)

- **Issue 8**  prvtsidx.plb

**"J.D. Edwards Software Source Code"**

**Rimini Street**®

Injunction



8. Rimini Street shall not copy J.D. Edwards software source code to carry out development and testing of software updates;

Injunction, ECF 1166 ¶ 8

‹ Oracle <u>agrees</u> with Rimini on factual distinction between "open"/"closed" code

> Q   Yes.   Accessible human-readable.
>
> A   Yes.   I am aware that they provide software code to their
>
> clients as a part of the delivery, as well as other

Frederiksen-Cross Test., Tr. at 519:15–17



| Payroll | Account | Logistics | Finance |
|---------|---------|-----------|---------|
| ✔ "Open" Code | | | |
| ✘ "Closed" Code | | | |

> obtains the software they've purchased from Oracle, that some
>
> of the components of that software of JDE is not easily
>
> accessible and not human readable?
>
> A   Right.   There are components of JD Edwards, whether it's

Frederiksen-Cross Test., Tr. at 520:21–24

**Issue 7** **"J.D. Edwards Software Source Code"**

**Rimini Street®**

‹ 9th Circuit *already* held that creating JDE software environments—which necessarily includes open and closed code—is permissible under JDE license.



This Court's JDE license construction:

(emphasis added)). These constructions ==would not preclude== ==Rimini from creating development environments for a== ==licensee== for various purposes *after* that licensee has become

*Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 957–58 (9th Cir. 2018)



**Buffy Ransom**

SVP of Global Customer Support Rule 30(b)(6) Witness

ORACLE®

Q.    And Oracle viewed those support policies as respectful of and non-infringing of Oracle's intellectual property?

A.    Yes.

Q.    And also that the support processes described in paragraph 14 do not violate Oracle's license agreements with its clients; is that correct?

A.    Correct.

Ransom 1/12/2018 Dep. at 163:16–23

**Issue 7** "J.D. Edwards Software Source Code"



**Buffy Ransom**

SVP of Global
Customer Support
Rule 30(b)(6) Witness

ORACLE®

Q.   And is it fair to say that Oracle concluded that it was proper for Spinnaker to develop fixes, updates and custom code solutions for its customers that may take the form of source code changes, configuration changes and data changes for its clients in the manner described in this paragraph?

A.   Yes.

Ransom 1/12/2018 Dep. at 164:4–10



ORACLE®

Based upon that review and the information provided, we have determined that (a) Spinnaker's current practices and procedures are respectful of and do not infringe upon Oracle's intellectual property rights and (b) do not violate Oracle's license agreements with its clients. Consequently,

DTX-0724-001

Oracle America, Inc.

By: Deborah K. Miller
Its: Vice President and Associate General Counsel

Oracle International Corporation

By: Deborah K. Miller
Its: Vice President and Associate General Counsel

DTX-0724-001

**Issue 7**   "J.D. Edwards Software Source Code"

‹ **Everyone agrees Oracle's theory would prevent support providers from** <span style="color:red">copying</span>, <span style="color:red">checking out</span>, <span style="color:red">displaying</span>, <span style="color:red">checking in</span>, <span style="color:red">promoting</span>, <span style="color:red">using tools</span>, **or** <span style="color:red">*doing anything*</span> **with JDE code.**

— **Oracle's expert:**



Tr. at 541:11–15; *see also* Tr. at 536:2–541:20



Frederiksen-Cross Direct slides 37–40

— **Craig Mackereth testimony**

— **Steven Lanchak testimony**

**Issue 7** "J.D. Edwards Software Source Code"

## Order to Show Cause



Case 2:10-cv-00106-LRH-VCF   Document 1459   Filed 03/31/21   Page 1 of 36

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

ORACLE USA, INC.; a Colorado corporations; ORACLE AMERICA, INC.; a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,

Defendants.

Case No. 2:10-cv-00106-LRH-VCF

ORDER

does not exist. However, **the permanent injunction only enjoins conduct that has been adjudicated unlawful.** The Court made this clear in its Order granting the permanent injunction, and on Oracle's

ECF 1459 at 11:7–8

injunction to issues not yet adjudicated unlawful, and this Court's specific ruling that **the injunction was narrowly tailored to only enjoin acts that have already been adjudicated unlawful,** Rimini's

ECF 1459 at 33:24–25

## Would make entire JDE support industry suddenly *illegal*

**Issue 7**   "J.D. Edwards Software Source Code"

**Rimini Street®**

**10/11/2016**

Original injunction issued

**12/6/2016**

Original injunction stayed

**1/8/2018**

Original injunction vacated: 9th Circuit held Rimini can create JDE environments

**1/12/2018**

Oracle 30(b)(6) testimony that "source code changes" and "custom code" are permissible
(Ransom Dep., 162:2–164:23; DTX-0724; DTX-0716)

**8/15/2018**

Injunction re-issued but stayed

**11/5/2018**

Injunction in effect

| 2016 | 2017 | 2018 |

Injunction



**any J.D. Edwards code (even accessible "open" code)**

8.  Rimini Street shall not copy ~~J.D. Edwards software source code~~ to carry out development and testing of software updates;

10. Rimini Street shall not reproduce, prepare derivative works from, or use J.D. Edwards software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including specifically that Rimini Street shall not use a specific licensee's J.D. Edwards environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction, ECF 1166 ¶¶ 8, 10

VArpt_mnOrigRoth457b............TH01="0"
Math N.........c To String

```
// Begin RS18JDEUSP09
VA rpt_mnCorrEquity83i_MATH01 = "0"
Math Numeric To String
     VA rpt_mnCorrEquity83i_MATH01 -> BF mnMathNumeric
     "N" -> BF cIncludeSign
     "9.00" -> BF mnBeforeDecimalPoint
     "N" -> BF cIncludeDecimalPoint
     "2.00" -> BF mnAfterDecimalPoint
     OC Corr Qual Equity Grant 83i (RCO)<- BF szString
//
VA rpt_mnOrigEquity83i_MATH01= "0"
Math Numeric To String
     VA rpt_mnOrigEquity83i_MATH01-> BF mnMathNumeric
     "N" -> BF cIncludeSign
     "9.00" -> BF mnBeforeDecimalPoint
     "N" -> BF cIncludeDecimalPoint
     "2.00" -> BF mnAfterDecimalPoint
     OC Orig Qual Equity Grant 83i (RCO) <- BF szString
// End RS18JDEUSP09                                    ADD
```

DTX-0901-012

DDX-863



# ‹ Professor Astrachan

- **Snippets are used merely as "markers"** (Tr. at 983:15–21)

- **Cannot be executed** (Tr. at 989:2–6)

- **Not even code** (Tr. at 983:21)

- **Not substantially similar** (Tr. at 986:25–987:2)

- **De minimis** (Tr. at 987:3–4)

## ◂ Oracle's expert…

- **Agreed snippets are used merely as "markers" and cannot be executed**

> Q   They're **used to indicate where to insert the Rimini written code**, correct?
>
> A   That appears to be their purpose in this document, **yes.**
>
> Q   These markers, **they can't be run**, right?
>
> A   **They cannot independently be executed.** They have

Tr. at 558:17-21

- **Agreed Rimini wrote the code to be added**

> instruction to add the **Rimini written code** beneath the red

Tr. at 342:8

- **Failed to conduct substantial similarity analysis**

> Q   And not just you didn't see whether they were the same, **you didn't offer any opinions on whether the J.D. tech spec is substantially similar** to either of the two Oracle files, correct?
>
> A   **No.** My analysis was concerning the lines that it

Tr. at 560:17-21

# Ten Issues Set for Hearing

**Rimini Street**

## PeopleSoft local hosting (Inj. ¶ 5)

- **Issue 1** Isolated PeopleSoft files sent by clients
- **Issue 5** rspcmpay.cbl

## "J.D. Edwards software source code" (Inj. ¶ 8)

- **Issue 7** "J.D. Edwards software source code"
- **Issue 9** JDE105328 technical specification

## PeopleSoft "cross-use" (Inj. ¶¶ 4, 6)

- **Issue 2** rsi940a.sqr update for Matheson Trucking
- **Issue 3** W-2 update for Johnson Controls
- **Issue 4** rsi940a.sqr update for Smead and Spherion
- **Issue 6** 1099 update for Easter Seals
- **Issue 10** HCM200105 update for Rockefeller and Home Shopping Network

## Oracle Database file prvtsidx.plb (Inj. ¶ 15)

- **Issue 8** prvtsidx.plb

**Issue 8**   Oracle Database file prvtsidx.plb

**Rimini Street**®

- ◀ **Client Australian Bureau of Statistics uploaded a single Database file to Rimini** (Tr. at 565:1–3)

- ◀ **Oracle's expert . . .**

  - ■ **Admitted she did not disclose any opinion regarding Database**

  > Before, just now, a few minutes ago, when I turned to this issue, **you have never disclosed any opinion in any of your reports about this file as it relates specifically to paragraph 15** of the injunction, have you?
  >
  > A    **That's correct.**  Prior to just very, very recently I was

  Tr. at 569:6–10

  - ■ **Admitted she did not take into account the Court's OSC**

  > Q    So **you didn't take into account the Court's order on this paragraph in forming your opinions** on this issue.
  >
  > A    **I did not recall that in forming my opinions** on this, counsel.

  Tr. at 573:20–23; ECF 1459 at 28

**Issue 8**   Oracle Database file prvtsidx.plb

**Rimini Street®**

Injunction



## Oracle Database

15. Rimini Street shall not reproduce, prepare derivative works from, or distribute Oracle Database software.

Injunction, ECF 1166 ¶ 15, ECF 1459 at 28

### Oracle admits there's no facilities restriction Tr. at 463:9–21
### ...but implies one anyway:

What's your theory as to why this violates paragraph 15 of the injunction?

A    Because it's a copy of the file that is present on Rimini's system, it's a reproduction, a copy of that file and

Tr. at 569:21–24

Oracle License and Service Agreement (OLSA)



# No "facilities" restriction in OLSA

DTX-0725

**Issue 8** **Oracle Database file prvtsidx.plb**

**Rimini Street®**

Ninth Circuit Opinion (Aug. 16, 2019)



Case 2:10-cv-00106-LRH-VCF   Document 1236   Filed 08/16/19   Page 1 of 7

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 16 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ORACLE USA, INC., a Colorado
corporation; et al.,

    Plaintiffs-Appellees,

v.

RIMINI STREET, INC., a Nevada
corporation,

    Defendant-Appellant.

No.  18-16554

D.C. No. CV 10-0106 LRH

Appeal from the United States
for the District of Ne
Larry R. Hicks, District Jud

Argued and Submitted Ju
Portland, Orego

Before:    TASHIMA, GRABER, and OWENS

Defendant-Appellant Rimini Street, Inc. ("

court's order entering a permanent injunction in fa

fees to, Plaintiffs-Appellees Oracle USA, Inc., Oracle America, Inc., and Oracle

    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Edwards, and Siebel. But ==only the PeopleSoft license limits the licensee to using== ==the licensed Software *"at its facilities . . . ."* (emphasis added), which is the basis== ==for the local-hosting requirement.  The J.D. Edwards and Siebel licenses do not== ==contain such a limitation.== See Oracle USA, Inc. v. Rimini Street, Inc., 879 F.3d

ECF 1236 ¶ 3

# Closing Argument Roadmap

**Rimini Street**®

‹ Oracle's heavy burden

‹ Oracle hasn't proven Rimini should be held in contempt on any of the 10 issues

‹ **Oracle grossly distorts the Injunction**

‹ Rimini's substantial compliance efforts

‹ Oracle's proposed monitorship is unprecedented and contrary to law

# Oracle Grossly Distorts Injunction

**Rimini Street®**

| Court's Injunction | Oracle's Distortion | Why It's Wrong |
|---|---|---|
| **¶ 5 re local hosting** | Client-sent files warrant contempt. | Oracle's expert acknowledged "local hosting ... <u>as enjoined here</u> [is] the hosting of a <u>client's environment</u> on Rimini's systems." (Tr. at 365:2–4). |
| **¶¶ 4, 6 re cross-use "for the benefit of"** | Support providers cannot re-use know-how and work product. (*E.g.*, Tr. at 441:9 ("reusing the knowledge of the solution"). | Court expressly rejected Oracle's theory. (ECF 1459 at 16, 18-19, 25–26 ("experience", work product like test plans); *Rimini II*, ECF 1253 at 87 ("same update file", "memorize and replicate the work"). |
| **¶ 8 re JDE "source code"** | Support providers can't "view", "look at", "check-out", "display", "check-in", or "promote" *any* JDE code. (Tr. at 536:2–543:18). | Oracle's Assistant General Counsel and Rule 30(b)(6) witness said "custom code solutions" and "source code changes" are "respectful of and non-infringing of Oracle's" IP and "do not violate" licenses. (DTX-0724; DTX-0716; Ransom Dep. at 162:3–166:1). |
| **¶ 15 re Database** | Implies local hosting prohibition, claiming violation because "the copy is on Rimini's systems." (*E.g.*, Tr. at 568:20–22, 569:23–25; 570:23–25, 571:1–9). | Oracle acknowledged there's <u>no facilities restriction</u> for Database (Tr. at 406:1–11), which 9th Circuit held is required (ECF 1236 ¶ 3). |

# Oracle Grossly Distorts Injunction – Cross-Use

**Rimini Street**

‹ **Rimini can't be held in contempt when Oracle's own expert can't keep Oracle's cross-use theories straight and doesn't know what is "allowable:"**

- **Acknowledged changed views on cross-use** (Tr. at 465:8–22)

- **Acknowledged some cross-use is allowable but doesn't know what it is** (Tr. at 440:25–441:12)

- **Said Rimini can't re-use knowledge but then said the opposite** (Tr. at 441:6–12; 583:8–10)

- **Repeated flip-flop on "intent"** (Tr. at 489–491)

- **Eventually said (correctly) that the "line" is whether the re-used work product includes protectible Oracle expression** (Tr. at 460:19–24)

> Q    So we're here in a contempt proceeding about what cross-use means, ==and you say there are allowable forms of cross-use and non-allowable forms of cross-use?  Where's the line?==
>
> A    Okay.  I would characterize this as cross-use, in the sense they are using -- it's not the act of sending the pdf, but ==the act of reusing the knowledge of the solution==, and assuming that they could send that without further work to other clients.  But ==whether that's allowable or not, I think is not my decision to make==.

Tr. at 441:3–12

# Closing Argument Roadmap

**Rimini Street**®

‹ Oracle's heavy burden

‹ Oracle hasn't proven Rimini should be held in contempt on any of the 10 issues

‹ Oracle grossly distorts the Injunction

‹ **Rimini's substantial compliance efforts**

‹ Oracle's proposed monitorship is unprecedented and contrary to law

# Rimini's Substantial Compliance Efforts

**Rimini Street®**

## ‹ Oracle's misleading claim about Rimini's compliance efforts:

impact injunction has, **but the only two things they do** -- and

it's highlighted in yellow -- is he claims that "as a part

our injunction compliance plan, the PeopleSoft team will

immediately **stop using two automating -- automation utilities**

**until further notice."**   And he references the Code Analyzer

**and the Dev Review Tool**.

Oracle's Opening Statement, Tr. at 25:13–18

DDX-875

**Rimini's Substantial Compliance Efforts**

**Rimini Street**

◄ **Rimini compliance efforts Oracle *didn't* mention, *refuses* to acknowledge, or *misled* the Court about:**

1. **Process 2.0** (e.g., Benge Test., Tr. at 606:5–608:7)

2. **Instructing clients <u>not</u> to send Oracle IP**
   (e.g., DTX-0041(a), DTX-0041 (Col. GB), Mackereth testimony)
   - **Oracle made repeated false statements that no warnings were sent**
     (e.g., Oracle's Opening Statement, Tr. at 27:1–5; Oracle Opening Slide 12)
   - **Oracle's own expert acknowledged Oracle's statements were false**
     (e.g., Tr. at 390:20–23)

3. **Scanning** (Mackereth testimony)

4. **Quarantining** (Mackereth testimony)
   - **Oracle falsely suggested there was none** (e.g., Tr. at 35:13–15)

5. **Discipline** (e.g., Benge Test., Tr. at 714:24–716:5)

# Closing Argument Roadmap

**Rimini Street**®

- Oracle's heavy burden

- Oracle hasn't proven Rimini should be held in contempt on any of the 10 issues

- Oracle grossly distorts the Injunction

- Rimini's substantial compliance efforts

- **Oracle's proposed monitorship is unprecedented and contrary to law**

**Oracle's Proposed Remedy Unprecedented and Unavailable**

**Rimini Street®**

## ‹ Oracle withdrew its request for a bar order...

> at 15–19. Oracle, in its response to this motion, withdrew its request for a complete ban on Rimini
>
> support services, but argues that impoundment is a coercive sanction, routinely permitted in civil

Order re Injunction Motions, ECF 1459 at 29:20–21

## ‹ But seeks one again by claiming all copying is illegal:

### Oracle Database

"distribute," it says Rimini shall not reproduce Oracle
database software.  What's your understanding of that?

A    That they shall not copy.

Q    Ever?

A    Oracle database software.  That would be my reading of
it, yes.

Tr. at 573:8–13

### JDE

out, displaying, checking in, and promotion, all of those
involve copying of what you contend is JDE source code in the
client's environment, correct?

A    In this scenario here, where we have no other
environments, it would be in the client's environment, yes.

Tr. at 541:11–15

# Oracle's Proposed Remedy Unprecedented and Contrary to Law

**Rimini Street®**

- ◄ **Oracle seeks "monitoring," *i.e., perpetual* discovery of its biggest competitor**

- ◄ **Monitorship unprecedented and contrary to law:**

  - Rule 53 requires statutory authorization for appointment of a monitor.

  - Copyright Act does not authorize monitorships.  17 U.S.C. 501 *et seq.*

  - A claim of a court's inherent power "must either be documented by historical practice … or supported by an irrefutable showing that the exercise of an undoubted authority would otherwise be set to naught."
  Cobell v. Norton, 334 F.3d 1128, 1141 (D.C. Cir. 2003).

  - Grave Due Process and other constitutional concerns

**Conclusion**

**Rimini Street**

◀ **Rimini respects Oracle's IP and the Court's orders**

◀ **Rimini fundamentally changed it processes 7+ years ago**

◀ **Rimini interpreted the Injunction consistent with the Court's rulings that permit lawful support, including the re-use of know-how and work product**

◀ **Rimini is in substantial compliance**