# EXHIBIT 1
# Oracle's Opening Slides



# *Oracle v. Rimini Street*

September 20, 2021 Contempt Hearing

Oracle's Opening Slides

1

## After Years of Litigation, The Court Enjoined Rimini's Infringing Practices

**¶ 5** — Rimini shall not use PeopleSoft software or documentation on any computer systems other than a Client's computer systems.

**¶¶ 4,6** — Rimini shall not use a Client's PeopleSoft environment to support or troubleshoot for any other Client.

**¶ 6** — Rimini shall not use a Client's PeopleSoft environment to develop or test software updates or modifications for any other Client.

**¶ 5** — Rimini shall not prepare derivative works from PeopleSoft software on any computer systems other than a Client's computer systems.

**¶ 8** — Rimini shall not copy J.D. Edwards software source code.

**¶ 15** — Rimini shall not reproduce Oracle Database software.

2

# Rimini is in Contempt of the Injunction

## Oracle Will Show:

 Rimini violated the Injunction

 Rimini's violations did not substantially comply with the Injunction

 Rimini's violations were not based on a good faith and reasonable interpretation of the Injunction

## Rimini Will Be Unable To Show:

 Rimini took all reasonable steps to comply with the Injunction

*United Artists Corp.* v. *United Artists Studios LLC*, 2019 WL 4640403, at *5 (C.D. Cal. Aug. 28, 2019); *United States* v. *Bright*, 596 F.3d 683, 694 (9th Cir. 2010); *Hook* v. *Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997).

3

# Rimini Continues to Engage in a Pattern and Practice of Prohibited Conduct

## The Court:

The "court finds that" the license "does not expressly authorize Rimini's copying of Oracle's copyrighted PeopleSoft-branded software as a matter of law." ECF 474 at 13 (Feb. 13, 2014); Injunction ¶ 5.

Where "the development environments were used to develop and test software updates for the" customer with rights to the environment "and other Rimini customers with similar software licenses . . . The court finds that Rimini's copying of the copyrighted software is outside the scope" of the license. ECF 474 at 13 (Feb. 13, 2014); Injunction ¶ 4, 6.

"This provision does not mean that a third party like Rimini Street is authorized to make copies of the J.D. Edwards software application and documentation to, among other things, access the software's source code to carry out development and testing of software updates, to make modifications to the software, or to use the customer's software or support materials to support other customers." ECF 880 (jury instructions); ECF 474 at 13 (Feb. 13, 2014); Injunction ¶ 8.

## Rimini's Practice:

Rimini continues to store PeopleSoft software and documentation on its systems.

Rimini continues to cross-use and treat PeopleSoft environments associated with specific clients as generic environments for supporting, troubleshooting, and developing and testing updates.

Rimini continues to make copies of JDE source code even though Rimini never previously challenged the meaning of "source code" as stated in the injunction.

4

## Rimini Has Not Substantially Complied with the Injunction

- Rimini did not take all reasonable steps to comply with the Injunction.

- Limited discovery has established multiple, substantive violations.

- At the evidentiary hearing, Oracle will establish additional violations of Paragraph 5 that show a pattern of impertinence.

- Rimini does not follow its own Acceptable Use Policy.

- Rimini refused to provide complete discovery into its alleged "12,000 updates." Rimini has no evidence that they comply with the Injunction.

## Rimini Refused to Demonstrate Any Compliance with the Injunction

**On January 9, 2019, Oracle contacted Rimini about the Injunction and requested that Rimini:**

- Confirm that Rimini's support practices comply with the Injunction;

- Discuss a process for preserving and escrowing materials related to Rimini's support processes; and

- Agree to modify the protective order to use *Rimini II* discovery in *Rimini I.*

**Rimini refused Oracle's proposals, opposed Oracle's motions for post-Injunction discovery, and otherwise delayed and objected to any discovery for years.**

6



# Rimini Has Made Only Superficial Efforts to Comply With the Injunction

# Rimini's Press Releases Constantly Misstate the Status of Legal Proceedings

## What Rimini Said:

Issues April 1, 2021 press release entitled "Court Rules in Rimini Street's Favor on Key Matters, Denies Oracle's Motions and Cites 'Common Sense' and 'Absurd Result' in Denying Oracle's Claim." OREX_0016.  Rimini did not mention it was facing contempt for violating the injunction.

During May 10, 2021 earnings call, CEO Seth Ravin told the public that the Court had "affirmed that there has been no finding of infringement by the court of the company's enterprise software support process 2.0 or Automation Framework, AFW tools . . ." OREX_0093, at 6.

During May 10, 2021 earning call, CEO Seth Ravin implied the case is complete and that the evidentiary hearing was set solely to address Rimini's motion for reconsideration: " The parties are also engaged in a dispute over a permanent injunction that has been in place since 2018 ... We have filed a motion with the court to correct the errors. The court has scheduled an evidentiary hearing in September 2021."  OREX_0093, at 6.

## What Actually Happened:

Court rules that Rimini violated the injunction.

In summarizing its rulings in Rimini II, the Court stated:  "In relevant part, the Court held that **Rimini had infringed four of Oracle's copyrights ... while following its new Process 2.0 support services** for its clients Campbell Soup and City of Eugene." Court's Order to Show Cause, ECF No. 1459 at 6 (emphasis added).

The Court scheduled an Order to Show Cause:  "In accordance with this Order, Rimini is ORDERED TO SHOW CAUSE why it should not be held in contempt for violating the permanent injunction, no later than Monday, May 10. 2021"  Court's Order to Show Cause, ECF No. 1459, at 35.   "IT IS FURTHER ORDERED that a hearing on the above discussed issues will be held in a courtroom to be designated at the Bruce R. Thompson Courthouse in Reno, Nevada, commencing on September 20 2021."  Court's Order to Show Cause, ECF No. 1459, at 35.

8

# Rimini Acknowledged the Injunction Impacted Its JDE Support Practices



OREX_0066 Page 18 of 24



OREX_0070 Page 5 of 7

- **SOME IMPACT:** The stayed injunction would limit the process of Rimini's currently offered JD Edwards Support Services, to the extent Rimini would not be able to access source code. Rimini would fulfill its Service obligations involving source code modification by (a) "looking over the shoulder" via remote access (GTM) of client's employees accessing the source code or (b) re-adjust annual support fees for the Services that client would rather obtain from another vendor.

Source: Public Document From Oracle Help Guides

Please see the link below that details the Source Code for JDE World Software
https://docs.oracle.com/cd/E26228_01/doc.93/e21958/ch_under_jde_wrld_lib.htm#WEATF236

The documentation indicates that the Source Code is stored within the JDFSRC library in three multi-member source files.

JDESRC – Source code for: RPG Programs, Printer files, Display files, CL Programs, DDS for Logical Files, DDS for Physical Files.

JDECPY – Source code for: Common Subroutines, Action Code, Date Routines

F98CRTCM – Pre-compiler commands (used to compile J.D. Edwards programs

As these are all Source Code, none of the members in the JDFSRC library can be 'accessed or copied' while the injunction is in place.

We are unable to do development in JDE World Software while the injunction is in place.
We are able to work on Functional and Data related cases while the injunction is in place.

You would not be able debug programs as this will bring up the source code.

9

# But Rimini Made No Changes to its JDE Support Practices

From    Ray Grigsby <rgrigsby@riministreet.com>

To:     Ainars Marnauzs <amarnauzs@riministreet.com>, Amarendran Manickam
        <amanickam@riministreet.com>, Bala Pavan Ponnapati <bponnapati@riministreet.com>,
        Carla Hile <chile@riministreet.com>, Chris Koloszar <ckoloszar@riministreet.com>, Fanny
        Palumbo <fpalumbo@riministreet.com>, Gary Tidwell <gtidwell@riministreet.com>, Gerard
        Roy <groy@riministreet.com>, Jim Kwawegen <jkwawegen@riministreet.com>, Karen
        Sublette <ksublette@riministreet.com>, Mohammed Khan <mkhan1@riministreet.com>, Ray
        Grigsby <rgrigsby@riministreet.com>, Richard Dorme <rdorme@riministreet.com>, Roger
        Franklin <rfranklin@riministreet.com>, Ron Teegarden <rteegarden@riministreet.com>, Sai
        Sharma <ssharma@riministreet.com>, Senthil Punniya <spunniya@riministreet.com>, Tim
        Wallenmeyer <twallenmeyer@riministreet.com>

Date:   Sat, 10 Nov 2018 20:21:20 +0000

We do not believe that we need to make any changes to current support processes for JD Edwards ("JDE") to comply with the Injunction. You must continue to comply with Rimini's Acceptable Use Policy ("AUP") and other internal policies. The JDE team will, consistent with the AUP and unless otherwise approved by Legal, continue to ensure: (a) that Rimini does not transfer or house JDE environments or documentation on Rimini's computer systems; instead, Rimini remotely accesses the JDE client's systems to support their JDE applications, (b) that Rimini does not engage in any downloading or transmission of any JDE applications or documentation from password-protected Oracle support websites or upload of such applications and documentation from any Oracle installation media onto Rimini's computer systems, and (c) that Rimini does not access, decompile, or otherwise manipulate JDE closed code.

OREX_0002

10

# Rimini Made Only Minimal Changes to its PeopleSoft Support Practices

From   Jim Benge <jbenge@riministreet.com>

To:    RSI - PS Dev & QA <ps_dev_qa@riministreet.com>, RSI - PS Dev & QA Mgrs
       <rsi_psdev&qamgrs@riministreet.com>

Cc:    Rick Frank <rfrank@riministreet.com>, Susan Tahtaras <stahtaras@riministreet.com>, Tim
       Conley <tconley@riministreet.com>, Brenda Davenport <bdavenport@riministreet.com>,
       Shelley Blackmarr <sblackmarr@riministreet.com>, Kaitland Conley
       <kconley@riministreet.com>, Kendall Grate <kgrate@riministreet.com>, Anoop Kathare
       <akathare@riministreet.com>, Laurie Gardner <lgardner@riministreet.com>, Paul Henville
       <phenville@riministreet.com>

**Rimini never told its employees that they could not use client-specific environments as the functional equivalent of generic environments.**

Date:  Tue, 13 Nov 2018 01:41:00 +0000

Rimini is examining its current processes in a good-faith effort to ensure compliance with the Injunction, notwithstanding its vagueness and overbreadth, and has identified additional modifications that it believes will bring its current processes into compliance with the constraints imposed by the Injunction. Therefore, as part of our Injunction compliance plan, the PeopleSoft team will immediately stop using two automation utilities until further notice: (1) Code Analyzer, and (2) the Dev Review tool. These are the only two changes to our current PeopleSoft support services, which we are implementing out of an abundance of caution to comply with the Injunction, even though we believe these tools are properly the subject of the ongoing Rimini II case and will ultimately be found non-infringing. As always, strict compliance with the Acceptable Use Policy is required.

OREX_0014

11

## Rimini Claims It Has Reminded Clients Not to Send Copyrighted Files, But Has Not Identified A Single Reminder That Was Sent to Any Client Involved in the Conduct Found to Violate the Injunction

**Rimini Street**

Rimini "Educated clients regarding the injunction and the AUP, including repeatedly instructing its clients—using a number of different methods—not to send any Oracle or other third-party intellectual property to Rimini." Rimini's Response to OSC, ECF No. 1467, at 3.

Rimini "repeatedly reminds clients of their obligation not to send Rimini any third-party copyrighted files." Rimini's Response to OSC, ECF No. 1467, at 11.

"Rimini takes steps to educate its clients regarding the third-party intellectual property restrictions in Rimini's AUP" OREX_0107, ¶ 13.

**Responsive Emails to Clients Who Sent Oracle IP to Rimini Identified in Violation No. 1**



12

# Rimini's Hides Injunction Violations Through Lack of Record-Keeping



**Barbara Frederiksen-Cross**

Report ¶¶ 163-164

"[B]ased on my own experience of over 40 years in software development, that I find Rimini's lack of record keeping extremely unusual for a professional software support company of its size, as maintaining clear development and deployment records is a basic principle that is widely practiced throughout the software industry."

"[I]n over twenty years as a forensic analyst, I have not seen a poorer example of recordkeeping for complex software development than that presented by Rimini."

"Rimini's failure to use a revision control system to track the development of the updates it provides to its customers and Rimini's inability to produce a detailed accounting of how, where, and when thousands of software updates were developed and validated, are simply astonishing."

"Rimini's failure to keep basic records is particularly significant in this situation, given that it has been enmeshed in litigation with Oracle since January 2010 and has been subject to a federal court injunction since November 5, 2018"

13



# Rimini Does Not Substantially Comply with the Injunction

14

## Rimini Persuaded Magistrate Judge Ferenbach to Require Only a Small Fraction of Discovery Compared with the *Rimini I* and *Rimini II* Litigations

|  | *Rimini I* | *Rimini II* | *Rimini I* Post-Injunction |
|---|---|---|---|
| Custodians | 54 | 50 | 10 |
| RFPs | Unlimited<br>Oracle served 98<br>Rimini served 57 | Unlimited<br>Oracle served 272<br>Rimini served 346 | 15 |
| RFAs | 250 | 175 | 10 |
| Interrogatories | 40 | 35 | 5 |
| Depositions (party) | 25 | 25 | 1 |
| Depositions (non-party) | 20 | 35 | 5 subpoenas for document production or testimony |
| Third-Party Subpoenas | Unlimited | Unlimited | |
| Number of Third-Party Productions Received | 317 | 607 | 5 |

Oracle's Resp. to Order to Show Cause at 7 (June 9, 2021), ECF No. 1474.

15

## If Rimini Is Substantially Complying, Why Are We Here to Discuss *Ten* Violations Identified from Only Limited Discovery?

### The Court Has Already Found 2 Violations:

1. Rimini maintains Oracle source code files and emails containing PeopleSoft copyrighted documentation on its systems.
2. Rimini delivered an update to Matheson Trucking that it developed and tested in City of Eugene's environment.

### Oracle Will Prove 8 Additional Violations:

3. Rimini cross-used City of Eugene's environment for Johnson Controls.
4. Rimini cross-used City of Eugene's environment to develop and test an update for Spherion and Smead.
5. Rimini copied protected expression found in Oracle's PSPTARRY.cbl source code file into Rimini's RSPCMPAY.cbl source code file and then stored the file on Rimini's systems.
6. Rimini created a derivative work in violation of the Easter Seals PeopleSoft license agreement.
7. Rimini copies J.D. Edwards source code to carry out development and testing of software updates.
8. Rimini has maintained an Oracle file that is part of Oracle Database on Rimini's systems.
9. Rimini copied J.D. Edwards software source code into Rimini's technical specification, which contains a blueprint for further Injunction violations.
10. Rimini cross-used it's "one code for all" rsiqtrtx.sqr file, developed in 2018 using PeopleSoft software in customer-associated environments, to deliver update HCM200105 to customers who joined months after the Injunction.

> The breadth, depth, and substantive nature of these ten separate violations confirms that **Rimini has a pattern and practice of violating the Injunction.**

16

## The Court Has Already Held that Rimini's Practice of Maintaining Local Copies of PeopleSoft Software on its Computer System Violated the Injunction

As to the "psptaxdt.dms" source code file and emails containing PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents, Rimini does not dispute that such content is on its systems. Rather, it contends that the content was sent to it by a client, contrary to express instructions. However, "[t]he absence of willfulness does not relieve from civil contempt." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). While Rimini may not have willfully intended to violate the permanent injunction by having such content on its computer systems, it is uncontradicted that such content is on its systems and that it is a violation of the permanent injunction. Rimini's intent may affect what sanction the Court finds is appropriate for the violation, but the Court still finds it necessary to issue an order to show cause why Rimini should not be held in contempt for these violations of paragraph 5 of the permanent injunction. *See TiVo*, 646 F.3d at 880 ("Although a defendant's diligence and good faith efforts are not a defense to contempt, these factors may be considered in assessing penalties, a matter as to which the district court has considerable discretion."). Because the Court finds, by clear and convincing evidence, that Rimini is violating the permanent injunction, the Court issues an order to show cause why Rimini should not be held in contempt. Consequently, at the hereafter hearing, the parties will not be permitted to re-argue the at-issue conduct; rather, the parties are only permitted to argue whether Rimini should be held in contempt for such a violation, and what sanctions are appropriate.

ECF No. 1459 at 22-23

17

## The Court Has Already Found Rimini's Delivery of HCM200049 to Matheson Trucking Violated the Injunction



Dkt. 1166, Permanent Injunction Order

4.   Rimini Street shall not reproduce, prepare derivative works from, or ==use a specific licensee's PeopleSoft software== or documentation ==other than to support the specific licensee's== own internal data processing operations;

6.   Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that ==Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee;==

"as to update HCM200049, delivered to Rimini's client Matheson Trucking, without any indication it was developed or tested in that client's environments, is a **clear violation of the permanent injunction**." Order at 26.

18



# Rimini Should Be Held in Contempt

# Rimini Should Be Held In Contempt

Rimini stored, accessed, and used PeopleSoft files and documentation on its computer systems.

Rimini used City of Eugene's environment as the functional equivalent of a generic environment

Rimini copied Oracle source code

Rimini created one version of files for all clients

Rimini maintained an Oracle Database file on its systems

Rimini copied JDE source code

Rimini maintained derivative works on its systems

20

## Rimini Should Be Held In Contempt for PeopleSoft Files and Documentation on Rimini's Computer Systems

The code display Oracle Copyright notices and/or contains substantial portions of Oracle code.

After receiving Oracle code from clients, Rimini did not instruct those clients not to send Oracle code.

There is no evidence of notification being sent to security@riministreet.com

After receiving Oracle code from clients, Rimini accessed the code.

After receiving Oracle code from clients, Rimini used the code, sometimes months later after it was stored.

After receiving Oracle code from clients, Rimini forwarded the code within Rimini, including to senior executives.

No documents showing Oracle code was quarantined.

These are not isolated incidents; there are additional examples in which Rimini used PeopleSoft software to resolve customer support issues.

## Rimini Should Be Held In Contempt for Using City of Eugene's Environment As the Functional Equivalent of a Generic Environment

Rimini's violations of the injunction evidence its lack of good faith.

Rimini's violations of the injunction were not based on a reasonable interpretation of the injunction – the violation was not based on *any* interpretation of the injunction.

Rimini's violations show that Rimini used pretexts to justify its cross use.

Rimini's violation shows that it did not take steps to comply with the injunction against cross-use.

Rimini's violations are part of a pattern and practice of violating the injunction.

Rimini's violations rely on cross-use from the City of Eugene environment, the same environment for which cross use was found in *Rimini II*.

The same Rimini individuals have committed repeated violations of the injunction.

22

## Rimini Should Be Held in Contempt for Copying Oracle Source Code

The evidence shows that Rimini copied Oracle protected source code into a file that it distributed to multiple customers.

That 32.74% of the Rimini file is code taken directly from Oracle's file shows that Rimini did not substantially comply with the Injunction.

Rimini's retention of an expert it coached to opine the file containing protected code does not constitute a derivative work evidences Rimini's bad faith.

Rimini's violation demonstrates it has not taken steps to comply with the injunction.

23

## Rimini Should Be Held in Contempt for Creating One Version for All Files

Using the same business practices found unlawful in *Rimini I,* Rimini engaged in unlawful cross-use by creating one version of the rsiqtrtx.sqr HCM200105 update file for all clients using Santa Clara Valley Water District's and Rimini's own environments, rather than creating and testing the update file solely for each client in the client's own environments, in violation of Paragraphs 4 and 6 of the Injunction.

The evidence shows Rimini's violation of the injunction with respect to rsiqtrtx.sqr was not an isolated incident, but rather a result of Rimini's pattern and practice of violating Paragraphs 4 and 6 of the Injunction.

Because Rimini has not substantially complied with the injunction with respect to rsiqtrtx.sqr, it should be held in contempt.

24

## Rimini Should be Held in Contempt for Maintaining an Oracle Database File on Its Systems

The Rimini employee that received the Oracle Database file did not tell the client not to send Oracle database documents to Rimini.

That Rimini employee was not disciplined for their failure to do so.

There is no evidence that Rimini quarantined the prvtsidx.plb file.

Rimini violated its own Acceptable Use Policy.

25

# Rimini Should be Held in Contempt for Copying JDE Source Code

Rimini never sought clarification from the Court on the meaning of "JDE software source code"

Rimini came up with the "open code" / "closed code" distinction after the injunction went into effect in November 2018

Rimini's "open code" / "closed code" distinction contradicts its long-standing approach to JDE software support

Rimini determined it could provide "over the shoulder" JDE support without touching JDE source code

Rimini did nothing to actually change its JDE support process following the injunction

In two appeals to the Ninth Circuit, Rimini never made any arguments about the term source code

Rimini's source code definition arguments are a collateral attack on the validity of the injunction

26

## Rimini Should Be Held in Contempt for Maintaining Derivative Works on Its Systems

Rimini did not change its practices to comply with the Injunction, evidencing disregard for the Court's orders.

Rimini stored and developed the RS18F07 files on its own systems in violation of Paragraph 5 of the Injunction, knowing that conduct was prohibited.

Using the same business practices found unlawful in *Rimini I,* Rimini unlawfully cross-used the 1099 Update by creating one version of the update for all clients and sending identical copies of the update to its clients, rather than creating the updates solely for each client in the client's own environments, in violation of Paragraphs 4 and 6 of the Injunction.

The evidence shows Rimini's violation of the injunction with respect to the 1099 Update sent to Easter Seals was not an isolated incident, but rather a result of Rimini's pattern and practice of violating Paragraphs 4-6 of the Injunction.

Because Rimini has not substantially complied with the injunction with respect to its 1099 Updates, it should be held in contempt.

27



**Sanctions to Monitor Rimini's Business Methods**

# Sanctions Are Warranted

Rimini has demonstrated a pattern and practice of cross-using City of Eugene's environment and treating it as the functional equivalent of a generic environment

Rimini is making up after-the-fact explanations for its cross-use

Rimini copied Oracle's protected source code into a file it distributed to multiple customers

Rimini concedes Oracle derivative works reside on its systems

Rimini denies it violated the Injunction prohibition regarding JDE source code by coming up with a false distinction between closed code and open code

Rimini maintained an Oracle database file, Prvtsidx.plb, on its systems

Rimini concedes it delivers one version for all Files developed in one client's environment to clients who later engage Rimini

29

## Necessary Actions to Prevent Further Violations

Third-party monitoring of Rimini's systems to avoid future prolonged discovery, motion practice, and use of judicial resources

Require Rimini to maintain archival copies of any files sent by or to Rimini to or from its clients

Limited discovery related to compliance and damages

30