# EXHIBIT 4
# Oracle's Closing Slides



# *Oracle v. Rimini Street*

Contempt Hearing

Oracle's Closing Slides
September 28, 2021

# Rimini Is In Contempt Of The Injunction

## Oracle Has Shown by Clear and Convincing Evidence:

 Rimini violated the Injunction

 Rimini did not substantially comply with the Injunction

 Rimini's violations were not based on a good faith and reasonable interpretation of the Injunction

## Rimini Did Not Show:

 Rimini took all reasonable steps to comply with the Injunction but was unable to do so

*United Artists Corp.* v. *United Artists Studios LLC,* 2019 WL 4640403, at *5 (C.D. Cal. Aug. 28, 2019); *United States* v. *Bright,* 596 F.3d 683, 694 (9th Cir. 2010); *Hook* v. *Arizona Dep't of Corrections,* 107 F.3d 1397, 1403 (9th Cir. 1997)

2

## Rimini Made Few Changes In Response To The Injunction

Seth Ravin, CEO of Rimini Street, told everyone at Rimini Street that the Injunction was focused on practices Rimini was no longer using.  Trial Tr. 743:2-7 (Benge); OREX_0019 at 1-2.

Seth Ravin said Rimini Street took "immediate responsibility" for the Injunction only by what it had already done in removing Oracle software from Rimini's system.  Ravin Dep. Tr. 158:20-159:18.

Rimini stated in response to the Injunction that "This ruling has no impact on our operations."  OREX_0347 at 3.

The General Counsel of Rimini told everyone at Rimini that "Because some provisions of the Injunction are undefined, vague, or ambiguous, it is important that you strictly follow your manager's direction how to comply with the Injunction." OREX_0018 at 2-3.

The only changes directed by managers after the Injunction are:

- Jim Benge told the PeopleSoft team to implement procedures to quarantine and not use 17 files.  DTX-0113.

- Jim Benge told the PeopleSoft team that Rimini would cease using two tools (Code Analyzer and Dev Review) "out of an abundance of caution." OREX_0014 at 1; Trial Tr. 746:2-22 (Benge).

- Ray Grigsby notified the Rimini JDE team that "We do not believe that we need to make any changes to current support processes for JD Edwards ("JDE") to comply with the Injunction." OREX_0002 at 1.

3

## Rimini Is Contemptuous Of The Injunction

Jim Benge testified that Rimini has attempted to do its "best" to comply with the Injunction on the basis of what Rimini did years before the Injunction went into effect.  Trial Tr. 743:2-18, 746:8-17 (Benge).

Grigsby, in his notice to the JDE team, also narrowed the Injunction so that it applied to only "closed code":  "We will continue to access open JDE code consistent with license terms and seek  further guidance from the District Court, as necessary, at the appropriate time."  OREX_002 at 1.

- Rimini never sought that guidance

4

# Rimini Is Contemptuous Of The Injunction

The General Counsel of Rimini told everyone at Rimini that "some provisions of the Injunction are **undefined, vague, or ambiguous**." DTX-0017 at 3. Ray Grigsby wrote to the JDE team at Rimini Street that Rimini was trying to comply with the Injunction "notwithstanding its **lack of definitions, vagueness and over breadth**." OREX_0002 at 1. Seth Ravin stated that "there was **so much ambiguity** around the Injunction." Ravin Dep. Tr. 162:16-163:13.

Seth Ravin told everyone at Rimini that the Injunction was one battle in a war made up of many, many battles. OREX_0019 at 3.

The President of Rimini Street told a customer that "we asked ourselves the same question often": "Why does this judge seem so out to get you [Rimini]?" Grady Dep. Tr. 109:7-17, 112:24-113:09; OREX_0349 at 1.

The General Counsel of Rimini responded "Judge Hicks, the trial judge, is not out to get us. He was **just sold a bill of goods** and was misled by Oracle and now the Circuit Court will correct our course." OREX_0349 at 1.

The President of Rimini, Sebastian Grady, then told customers "We believe Judge Hicks, the trial judge, was just trying to do his job when initially granting the Injunction. He was **just sold a bill of goods** and was misled by Oracle and now the Circuit Court will correct our course." OREX_0350 at 1.

5

# Rimini's History Of Deception

Throughout over five and one half years of this litigation, literally until trial, Rimini Street contended that it had not engaged in any conduct which could be considered copyright infringement, and, in particular, did not engage in cross-use of the copyrighted software and only used certain versions of the copyrighted software for archival purposes and disaster-related testing. In fact, it was on Rimini Street's assertions through various affidavits and deposition testimony submitted at summary judgment that the court denied portions of Oracle's motion for summary judgment on its copyright infringement claim and let these issues go to trial. However, at trial, defendant Ravin testified for the first time that Rimini Street did in fact engage in cross-use and other conduct which constitutes copyright infringement, but did so innocently and without knowledge that Rimini Street was acting improperly. This was a direct and major alteration, effectively a sea change, in Rimini Street's copyright defense throughout the litigation to that time and needlessly caused extensive investigation, discovery and expense to Oracle. As a result, Oracle was forced to spend substantially more time and resources to establish copyright infringement than should have been necessary.

Order Granting Motion for Permanent Injunction & Motion for Attorney Fees at 14

**Spoliation of Evidence**
Rimini Street had a location on its computer systems that some employees referred to as the "software library." This location contained a complete copy of at least 31 of Oracle's registered, copyrighted works. A list of the 31 works is in your juror notebook. Rimini breached its duty to preserve relevant evidence when it deleted certain material in the software library in January 2010. You may, but are not required, to infer that the deleted material included evidence that was favorable to Oracle's claims and unfavorable to Rimini Street's defenses in this case.

Jury Instruction No. 19,  at 20

6

## Rimini's Business Model Is Based On Copyright Violations

The evidence further establishes that Rimini Street's business model from 2006, and up until at least the court's summary judgment orders in February 2014, was built entirely on its infringement of Oracle's copyrighted software.

Order Granting Motion for Permanent Injunction & Motion for Attorney Fees at 6

## Rimini's Contempt Is Also Demonstrated Because It Is Relitigating What It Lost

### Rimini never argued "open" vs "closed" code

J.D. Edwards Software License Agreements

As to the J.D. Edwards software license agreements you are informed that the court has previously ruled as a matter of law that the J.D. Edwards software license agreements authorized a third party like Rimini Street - who was engaged by a licensee to provide support or other services - to copy the J.D. Edwards software application and related documentation onto its computer systems to the extent necessary for the customer's archival needs and to support the customer's use. An archival copy of the software application and documentation is an unmodified copy of the original software application and documentation for use in the event that production copy of the software - the copy used on a customer's systems - is corrupted or lost. This provision does not mean that a third party like Rimini Street is authorized to make copies of the J.D. Edwards software application and documentation to, among other things, access the software's source code to carry out development and testing of software updates, to make modifications to the software, or to use the customer's software or support materials to support other customers.

Jury Instruction No. 24, at 27-28

### Rimini stipulated to copying Oracle's original works

**Copyright Infringement - Direct Infringement**

To prevail on its claim for direct copyright infringement as to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation, Oracle International Corporation must prove the following by a preponderance of the evidence:

1. Oracle International Corporation is the owner or exclusive licensee of a valid copyright in an original work;

2. Rimini Street copied original elements from, created derivative works from, or distributed the original work; and

3. Rimini Street did not have permission to copy the original elements of the copyrighted work.

The parties have agreed that Oracle International Corporation owns or is the exclusive licensee of certain registered copyrighted works related to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation at issue in this action, which means that Oracle International Corporation has proven the first element for these registered works.

The parties have also agreed, as stated in your juror notebook, that defendant Rimini Street copied the J.D. Edwards and Siebel software applications and related documentation as well as the PeopleSoft documentation at issue in this action. This means that Oracle International Corporation has also proven the second element for these copyrighted works.

Jury Instruction No. 23, at 25

## Rimini already lost its arguments concerning Spinnaker

## We Know Rimini Is Violating The Injunction Because Rimini's Compliance Arguments Depend On A Revised Injunction

"open" vs. "closed" J.D. Edwards code: the Injunction says source code

Analytic dissection is required: the Injunction says no copying

Rimini says it may develop and test updates for Client A who needs it and then provide it to Clients B, C, D...

**Rimini is striking "solely" from the Injunction**

2. Rimini Street shall not reproduce, prepare derivative works from, or distribute PeopleSoft, J.D. Edwards, or Siebel software or documentation in any way unless both of the following conditions are met:

   a. Rimini Street shall not reproduce, prepare derivative works from, or distribute PeopleSoft, J.D. Edwards, or Siebel software or documentation unless solely in connection with work for a specific customer that holds a valid, written license agreement for the particular PeopleSoft, J.D. Edwards, or Siebel software and documentation authorizing Rimini Street's specific conduct; and

Injunction at ¶ 2(a)

**Rimini is striking "for the benefit of any other licensee"**

6. Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction at ¶ 6

9

## We Know Rimini Is Violating The Injunction Because Rimini's Compliance Arguments Depend On A Revised Injunction

Rimini says it may develop Rimini code and work using PeopleSoft software in the environment of Client A and deliver it to Clients B, C, D…including prototypes for future clients

> Additionally, it is undisputed that the development environments associated with the City of Flint were not used solely for the City of Flint's internal data processing operations. Instead, the development environments were used to develop and test software updates for the City of Flint and other Rimini customers with similar software licenses. *See* Doc. #242, Exhibit 50, Lester Depo., p.207:17-201:25; Exhibit 62, Williams Depo., p.9:22-10:6. Therefore, the court finds that Rimini's copying of the copyrighted software is outside the scope of Section 1.2(b)(i). Accordingly, and consistent with the court's rulings above, the court finds that Section 1.2(b) does not expressly authorize Rimini's copying of Oracle's copyrighted PeopleSoft-branded software as a matter of law.

*Rimini I* Summary Judgment Opinion at 13

10

## No Substantial Compliance: The Violations Show Rimini's Business Practices

Rimini copies and modifies JDE "open" code with JDE tools to provide development and support

Rimini uses informal delivery of updates without prior testing in a client's QA environment

Rimini uses easy to access environments not solely for the benefit of that client

Rimini copies Oracle code into technical specifications to use as pointers or markers

11

# Substantial Compliance And Bad Faith: Acceptable Use Policy Is Not Complete

**33.    APPENDIX**

'CAN'T COPY CONTENT' RULES

'CAN'T COPY CONTENT' means Other Companies' Software and Materials‡ that are not licensed to Rimini Street (*e.g.,* Oracle or SAP software documents and code).  It may include Other Companies' Software and Materials from our clients' systems or from other sources.

1.    DON'T BRING 'CAN'T COPY CONTENT' onto Rimini Street Computer Resources§.

2.    DON'T MOVE 'CAN'T COPY CONTENT' from one client to another.

3.    DON'T MOVE 'CAN'T COPY CONTENT" onto a client's system unless Rimini Street has permission to do so (*e.g.,* when we perform SAP archiving).

4.    IF YOU SEE 'CAN'T COPY CONTENT" on Rimini Street Computer Resources:

    a.    DON'T COPY IT.

    b.    DON'T DELETE IT.

    c.    DON'T FORWARD IT.

    d.    DO PROMPTLY REPORT IT to security@riministreet.com.

    Know of a violation or have a question?  Contact security@riministreet.com.

        "IF YOU SEE SOMETHING, SAY SOMETHING"

DTX-0025 at 26

6.    Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction at ¶ 6

12

# Rimini's Bad Faith Is Demonstrated By The Fact That It Continues To Use Infringing Files

## Must Read: Important Development Notice

From   Jim Benge <jbenge@riministreet.com>

Date:  Tue, 06 Nov 2018 19:54:06 +0000

Rimini is continually examining its current processes within the context of compliance with the Acceptable Use Policy, and the ongoing litigation with Oracle, in an effort to both ensure compliance and reduce potential legal risks. Specifically, Oracle has alleged in the Rimini v. Oracle lawsuit, that a number of files with RSI prefixes used by the PeopleSoft team contain Oracle IP/code that was improperly copied from Oracle PeopleSoft files, in alleged violation of copyright laws. Rimini is disputing this claim, and the issue is currently being litigated in the case. However, out of an abundance of caution, the PeopleSoft team must immediately implement the following prohibitions with regard to the files listed at the end of this notice ("Files"), unless and until Legal instructs otherwise.

The following activities are prohibited:

2.  Providing these Files to new onboarding clients (we will not provide these Files to new clients with other onboarding materials);

List of Prohibited Files

Below are the Files subject to the prohibited activities (1)–(5) above.

1.  rsiw2ssa.sqc          10.  rsitxdta.sqc
2.  tax960st/rsi960st.sqr  11.  rsi960xm.sqc
3.  rsiw2st.sqc           12.  rsicbr01.sqr
4.  rsistcd.sqc           13.  rsimmref.sqc
5.  rsi860fl.sqr          14.  rsi810dc.sqr
6.  rsieincd.sqc          15.  rsiosha300a.sqc
7.  rsi810st.sqr          16.  rsi960usxml.sqc
8.  rsibn733.sqc          17.  rsgethrs.sqc
9.  rsi960us.sqc



Q  So for every client that you provided the **17 quarantine files**, you -- if they had the files, you continued to provide updates for those files.

A  With those clients that had already received these files, yes, we continued to support them with the version of the file they had.

Trial Tr. 800:16-21 (Benge)

From: Jai Ramachandran

Sent: Thursday, January 24, 2019 4:33 PM

To: Don Sheffield <dsheffield@riministreet.com>; Catherine Castelo <ccastelo@riministreet.com>; Paula Smith <psmith@riministreet.com>

Cc: Timothy Pringle <tpringle@riministreet.com>; Laurie Gardner <lgardner@riministreet.com>; Teresa Hintz <THintz@riministreet.com>; Jim Benge <jbenge@riministreet.com>

Subject: RE: [PeopleSoft - Johnson Controls, Inc.]P2 - Production Impacted Case # 00161783 : W2 Prinfing for Box 14 - xmlp is off

All,

That worked !  Don, Catte   thanks for  jumping in at short notice.

Looks like this could be a potential problem for all new clients switching from tax960us to rsi960us who have left the formatting field blank.

Could be because the formatting is in the SQR for tax960us and rsi960us is looking at the config pages.

DTX-0113            DTX-0302 at 2            13

## Prof. Astrachan Did No Independent Investigation Of Whether Rimini Violated The Injunction



**Prof. Owen Astrachan**

Trial Tr. 1027:6-12

Q   Now, as I understand it, you were engaged by Rimini Street to evaluate and analyze Ms. Frederiksen-Cross's report.

A   **Yes, that's correct.**

Q   And you were not asked to do an investigation of your own to reach an opinion on whether Rimini Street has violated the Injunction; is that correct?

A   **That's correct.**

14

## Prof. Astrachan Only Knows What Rimini Told Him Or Wrote Down



**Prof. Owen Astrachan**

Trial Tr. 1027:19-23, 1028:6-9

Q   Right. So your technical analysis of Rimini's processes include what Rimini engineers told you, what Rimini documentation told you, and what you reviewed from the exhibits of the Frederiksen-Cross report.

**A   I think that's reasonable.**

Q   You did not undertake any factual investigation to verify the accuracy of any Rimini representation that was made to you, correct?

**A   I did not take specific actions for that, correct.**

15

## Prof. Astrachan On Giving Opinions On Whether The Injunction Was Violated

Q In your opinion, is what was – what happened with the psptaxdt.dms materials a violation of the Injunction?

A **My understanding that violation of the Injunction would be a legal determination, not something is that I would do.**

Q Are you giving the opinion that in every respect the Injunction has not been violated?

A **Only in responding to Ms. Frederiksen-Cross.**

Q Are you changing your testimony?

A **When you asked me the earlier question, I was thinking more about the cross-use issues rather than all the issues before me, and that may have been in my mind when I answered your question.**



**Prof. Owen Astrachan**

Trial Tr. 1033:25-1034:4



**Prof. Owen Astrachan**

Trial Tr. 1032:1-3



**Prof. Owen Astrachan**

Trial Tr. 1035:3-7

16

## Rimini's Reuse Of Knowledge And Know How Is Irrelevant To The Cross-Use Violations



**Barbara Frederiksen-Cross**

Trial Tr. 583:4-10

Q   You were asked a series of hypothetical questions about whether Rimini's reuse of knowledge is consistent with the Injunction. Do you recall that?

A   **I recall that.**

Q   Are any of your cross-use opinions based on Rimini's reuse of knowledge?

A   **No, I don't believe so.**

**All of the violations are tied to the express language of the Injunction**

17



# *Oracle v. Rimini Street*

Violation #7

Rimini copies J.D. Edwards source code

## Rimini's Copying Of J.D. Edwards Source Code Has Already Been Found Illegal

### Jury Instruction No. 24 at 27-28

**Copyright Infringement - Direct Infringement**

To prevail on its claim for direct copyright infringement as to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation, Oracle International Corporation must prove the following by a preponderance of the evidence:

1. Oracle International Corporation is the owner or exclusive licensee of a valid copyright in an original work;

2. Rimini Street copied original elements from, created derivative works from, or distributed the original work; and

3. Rimini Street did not have permission to copy the original elements of the copyrighted work.

The parties have also agreed, as stated in your juror notebook, that defendant Rimini Street copied the J.D. Edwards and Siebel software applications and related documentation as well as the PeopleSoft documentation at issue in this action. This means that Oracle International Corporation has also proven the second element for these copyrighted works.

19

## Rimini's Copying Of J.D. Edwards Source Code Has Already Been Found Illegal

### Jury Instruction No. 23 at 25

J.D. Edwards Software License Agreements

As to the J.D. Edwards software license agreements you are informed that the court has previously ruled as a matter of law that the J.D. Edwards software license agreements authorized a third party like Rimini Street - who was engaged by a licensee to provide support or other services - to copy the J.D. Edwards software application and related documentation onto its computer systems to the extent necessary for the customer's archival needs and to support the customer's use. An archival copy of the software application and documentation is an unmodified copy of the original software application and documentation for use in the event that production copy of the software - the copy used on a customer's systems - is corrupted or lost. This provision does not mean that a third party like Rimini Street is authorized to make copies of the J.D. Edwards software application and documentation to, among other things, access the software's source code to carry out development and testing of software updates, to make modifications to the software, or to use the customer's software or support materials to support other customers.

20

## Rimini Never Argued That The Term "Source Code" Was Objectionable Or Would Prevent Them From Providing J.D. Edwards Support



**Oct 11, 2016**
Permanent Injunction
first issued

Rimini first appeals
Injunction to Ninth Circuit

**Jan 8, 2018**
Ninth Circuit vacates
permanent Injunction

**Aug 15, 2018**
Operative Injunction issued

**Aug 16, 2018**
Rimini appeals Injunction to
Ninth Circuit for the second time

**Nov 10, 2018**
Ray Grigsby emails Rimini JDE support
team and mentions "closed code" / "open
code" distinction [OREX_0002 at 1-2]

**Nov 26, 2018**
Rimini submits opening appeal
brief for second appeal

**Mar 14, 2019**
Rimini submits reply
appeal brief for
second appeal

2016    2017    2018    2019

## Rimini Violated The Injunction By Copying J.D. Edwards Source Code

8.  Rimini Street shall not copy ██████ J.D. Edwards software source code to carry out development and testing of software updates;

Injunction at ¶ 8

## Rimini's Definition Of Source Code Is Intended To Thwart The Injunction

- Rimini has never provided support for what it calls "closed code" (object code)

- Rimini cannot even access or copy "closed code"

- At trial, the only J.D. Edwards code at issue was J.D. Edwards code that Rimini did access and copy

- Rimini's definition means that paragraph 8 of the Injunction is meaningless because it prohibits what Rimini has never done and permits the conduct held illegal at trial

23

## Rimini Knew It Needed Court Approval To Limit The Injunction To "Open" Code, But Never Sought It

## JD Edwards Injunction Compliance Notice

**From**   Ray Grigsby <rgrigsby@riministreet.com>

**Date:**   Sat, 10 Nov 2018 20:21:20 +0000

As you know, JDE has multiple layers of open code that are designed and intended to be accessed, customized, and maintained by licensees or their agents for purposes of supporting the software and maintaining its functionality.  JDE also has foundational code, which is closed.  Consistent with the Injunction and our existing practices, therefore, no one is permitted to copy or access any closed JDE code for development and testing of software updates.  For the time being, consistent with our current understanding of the scope and purpose of the Injunction in the context of JDE support, we will continue to access open JDE code consistent with license terms and seek further guidance from the District Court, as necessary, at the appropriate time.

OREX_0002 at 1-2

24

# The Plain Language Of The Injunction

**LABEL**

"open code"

**LABEL**

"closed code"

**LABEL**

**Craig Mackereth:**
Enterprise Industry
Terms
(not J.D. Edwards Terms)

**FACT** The U.S. Copyright Office and Webster's Dictionary define source code as human readable code

**FACT** Rimini's AUP references both source code and object code as "do not copy"

' "Other Companies' Software and Materials" mean all the materials that comprise software applications produced by an outside company or per, Oracle, SAP), including the object and source computer code, database designs, software updates, custom solutions, environments, software bug fixes and patches (code error corrections), and related documentation.

OREX_0017 at 26

**FACT** Rimini's expert's definition of source code

Q   Have you reviewed Professor Astrachan's book of, Computer Science Tapestry; Exploring Computer Science with C++?

**A   I have looked at portions of it. Yes.**

Q   Does Professor Astrachan make any distinction in the book between open code and closed code?

**A   No. None that I could find.**

Trial Tr. 305:23–306:3 (Frederiksen-Cross)

**FACT** **Object Management Workbench( OMW) –** A JDE E1 development tool used to manage source code changes and migration to other Environments. This tool is part of the application functions

OREX_0062 at 4

25

## Rimini's "Over The Shoulder" J.D. Edwards Support Process Shows That It Knew Copying "Open" Code Violated The Injunction



"So our whole process there was simply to say we wouldn't touch the code so that we could be in compliance with the broadest reading and interpretation of the Injunction, and still let the customers do it on our behalf. And we would just look over their shoulder and advise them."

Ravin Dep. Tr. 162:16-163:13

**Re: Article**

**From:**
sgrady@riministreet.com

**To:**
Michael Blough <mblough@riministreet.com>

**Cc:**
Kevin Maddock <kmaddock@riministreet.com>

**Date:**
Fri, 14 Oct 2016 02:28:02 +0000

They are always sensationalistic - many times in our favor.

That's why we need to do what we did at Praxair today.

The story gets even better - most of our JDE work doesn't even touch source code. It is configurations and other things. We will get more out on this in next couple of days.

I will send update to Sue at Praxair and copy Earl. That will be good news for her.

OREX_0065

26

# Oracle's Definition Of "Source Code" Does Not Render Paragraph 10 Of The Injunction Superfluous

**Only Paragraph 8 prohibits copying source code even for the benefit of the associated licensee**

8. Rimini Street shall not copy J.D. Edwards software source code to carry out development and testing of software updates;

10. Rimini Street shall not reproduce, prepare derivative works from, or use J.D. Edwards software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's J.D. Edwards environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction at ¶¶ 8, 10

**Only Paragraph 10 discusses cross-use**

---

8. Rimini Street shall not copy J.D. Edwards software source code to carry out development and testing of software updates;

**Only Paragraph 10 discussed derivative works**

10. Rimini Street shall not reproduce, prepare derivative works from, or use J.D. Edwards software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's J.D. Edwards environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction at ¶¶ 8, 10

**Only Paragraph 10 prohibits copying and use of software or documentation**

27

## Oracle's Audit Of Spinnaker Is Irrelevant To Rimini's Violation Of The Injunction

There is no evidence in the record of what J.D. Edwards customers were at issue in Oracle's review of Spinnaker's processes or what those customer' licenses prohibited or allowed

The Spinnaker declaration doesn't say that Spinnaker went into customer environments and directly copied the source code

- It doesn't say whether they make the source code changes directly or whether they tell the customer how to make them via the over-the-shoulder method
- It doesn't say whether the source code changes at issue are to a client's custom code, or to Oracle code

The Spinnaker audit was in 2011

The Injunction does not apply to Spinnaker; it applies to Rimini

The Injunction applies to unlawful conduct: Rimini's conduct has been adjudicated to be unlawful, but there has been no adjudication of Spinnaker's conduct

28



# *Oracle v. Rimini Street*

Violation #1

Reproducing and using PeopleSoft documentation
in violation of paragraph 5 of the Injunction

29

## The Court Has Already Held That Rimini's Practice Of Maintaining Local Copies Of Peoplesoft Software On Its Computer System Violated The Injunction

As to the "psptaxdt.dms" source code file and emails containing PeopleSoft copyrighted documentation and PeopleSoft Payroll update documents, Rimini does not dispute that such content is on its systems. Rather, it contends that the content was sent to it by a client, contrary to express instructions. However, "[t]he absence of willfulness does not relieve from civil contempt." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). While Rimini may not have willfully intended to violate the permanent injunction by having such content on its computer systems, it is uncontradicted that such content is on its systems and that it is a violation of the permanent injunction.

OSC at 22-23

the district court has considerable discretion."). Because the Court finds, by clear and convincing evidence, that Rimini is violating the permanent injunction, the Court issues an order to show cause why Rimini should not be held in contempt. Consequently, at the hereafter hearing, the parties will not be permitted to re-argue the at-issue conduct; rather, the parties are only permitted to argue whether Rimini should be held in contempt for such a violation, and what sanctions are appropriate.

OSC at 23

30

# Summary Of PeopleSoft Documentation On Rimini Systems

| | Oracle Files and Documentation on Rimini Systems | Sent to Rimini | Oracle Copyright Warnings | Internal Distribution by Rimini | Use by Rimini | Email to Rimini Security | Documentation of Quarantine at the Time | Violation of AUP | Discipline |
|---|---|---|---|---|---|---|---|---|---|
| **VIOLATIONS** | **psptoxdt.dms (OREX_0013)** | R.R. Donnelly | Yes | No | Yes, to resolve client case (OREX_0013) | No | No | Yes <br> Trial Tr. 832:6-9 <br> (Benge) | No |
| | **Functional User Documentation (OREX_0004)** | G6 Hospitality | Yes | Yes, to Benge & Blackmarr (OREX_0004) | Unknown | No | No | Yes <br> Trial Tr. 714:18-23 <br> (Benge) | Yes |
| | **PeopleSoft Tax Documentation (DTX-0110)** | Texas Children's Hospital | Yes | Yes, on the ShareFile (OREX_0095-97) | Yes (DTX-0110) | No | No | Yes <br> Trial Tr. 829:16-17 <br> (Benge) | No |
| **NO SUBSTANTIAL COMPLIANCE** | **PSPTCALC.lis file (OREX_0098)** | Evergreen Support | Yes | No | Unknown | No | No | Yes <br> Trial Tr. 836:7-9 <br> (Benge) | No |
| | **Tax.920us.txt, Tax922us.txt, Tax921us.txt, Tax923us.txt (OREX_0105)** | University of Oklahoma Health Sciences Center Services | Yes | No | Yes, to provide support (OREX_0105) | No | No | Yes | No |
| | **PeopleSoft programs (OREX_0103)** | Guest Services, Inc. | Yes | No | Unknown | No | No | Yes | No |

31

## Frederiksen-Cross Identified 934 PeopleSoft Documents With Copyright Warnings On Rimini's Systems



**Barbara Frederiksen-Cross**

Trial Tr. 110:13-23

Q   Did you find instances of copyrighted material, Oracle copyrighted material, on Rimini systems?

A   **Yes, I did.**

Q   How did you do that?

A   **My process for identifying Oracle copyrighted materials was based, principally, on searching for Oracle copyrights, JDE copyrights, PeopleTools copyrights, PeopleSoft copyrights in their various spelling incarnations. But, it's a very simple script that you learn that just searches the production specifically for copyrights statements.**

**Rimini waited over a year after the Injunction before deciding to scan for Oracle copyrights.**

Trial Tr. 1189:23-1190:5, 1191:3-4 (Mackereth)

32

## Rimini's Expert Confirmed 934 Examples Of PeopleSoft Files And Documents On Rimini's System



**Prof. Owen Astrachan**

Trial Tr. 1038:12-1039:5, 1040:10-17, 1042:20-1043:2 (Astrachan)

Prof. Astrachan confirmed the accuracy of the search and opined that 844 of 934 files were from clients

Prof. Astrachan discussed Frederiksen-Cross's findings with the Assistant General Counsel of Rimini, James Butler, who reported that Rimini "had already flagged these documents"

Butler said, "those 934 documents were flagged by a Rimini employee as potentially containing third-party intellectual property materials" and were quarantined

**What did Rimini do in response to enforce the Acceptable Use Policy?**

33

## Rimini Waited Years To Discipline Benge And MacEachern For Violating The AUP



### Jim Benge

Trial Tr. 828:8-14

Q   And how long after this event were you disciplined?

**A   It was quite some time.**

Q   This happened on -- well, how long ago were you disciplined?

**A   It was last year I believe.**

Q   So it would have been in the year 2020.

**A   Yes, it was some time after it occurred.**

**No other discipline has been established**

FW: PSFT-G6 -- Status meeting- Updates

| | |
|---|---|
| From: | Barbara MacEachern <bmaceachern@riministreet.com> |
| To: | Shelley Blackmarr <sblackmarr@riministreet.com> |
| Cc: | Jim Benge <jbenge@riministreet.com> |
| Date: | Tue, 27 Nov 2018 19:10:50 +0000 |
| Attachments : | CA_OVERTIME_ON_FLAT_SUM_BONUS_R92.doc (1.54 MB); PA32EIT18D.doc (46.08 kB); PA32EIT18D.xls (25.09 kB); R92_Tax_Update_18-D_Notes.doc (2.51 MB); R92_Update_Image_28.doc (376.83 kB); USA_Fluid_WorkCenter_Objects.xls (81.92 kB); W-2___W-2c_Fluid_Objects.xls (81.92 kB); YE18US92D.docx (2.47 MB) |

Hello all, Hope you had a good Holiday. I am not sure if you have seen these yet but here are the docs for PUM28 along with Tax 2018-D.

DTX-100 at 1

**Benge was then promoted in April 2021**
Trial Tr. 593:15-19 (Benge)

34

## Rimini Knows What It Should Do But Doesn't Do It



**Jim Benge**

Trial Tr. 829:8-17

Q   And when this -- when Thomas Glazer received these files, Thomas Glazer never responded, "Don't send me these files. Stop that."

**A   Yep, and that's what we need to be doing now. That's very clear. We are still, I think, learning, and this is a situation where we have had a few occasional cases where things like this have happened, and we've got to make the more clear to –**

Q   This was a violation of your policy, correct?

**A   It was, yes.**

35

## Rimini's Warning To Clients Is Boilerplate

Please do not upload any third party software (for example, code contained in either documentation, trace files or screen shots), or any other third party intellectual property or confidential data to this client portal or send such information to Rimini Street via email, unless Rimini Street has demonstrated authorization for Rimini Street to possess a copy of such material. Additionally, Rimini Street does not recommend clients upload their confidential production data (for example, personally identifiable information) on this client portal or send such data via any mechanism to Rimini Street, however, if you choose to so upload or send such data you are authorizing Rimini Street to have access and use of such data for the purpose of resolution of your particular request for support.
All access to your supported products will be via the Remote Access established during your onboarding process.

DTX-0041a

- The warning says "unless Rimini Street has demonstrated authorization for Rimini Street to possess a copy of such material."
  DTX_0041a

36

## What Was The Quarantine?

Jim Benge testified that "If it was reported, it would be quarantined" by the Compliance Department.  Trial Tr. 834:21-24 (Benge).  But the violations were not reported.

The files Prof. Astrachan saw were not quarantined.  Trial Tr. 1043:9-14 (Astrachan).

Prof. Astrachan saw no documentation of any quarantine.  Trial Tr. 1043:21-23 (Astrachan).

Craig Mackereth pointed to two SalesForce modifications (Evergreen and University of Oklahoma Health Sciences) that he said would be quarantined but the modifications took place during discovery.

37

## Rimini Engineers And The AUP

**No Rimini evidence from any Rimini engineer of their knowledge of the AUP**

**Except Senior PeopleSoft Developer Harika Mandla, who testified:**

"I don't remember the details inside the policy"

"I don't remember what is inside the document"

Mandla Dep. Tr. 248:6-249:12, 249:12-17

38



# *Oracle v. Rimini Street*

Violations #2-4

Cross-use in violation of Paragraphs 4 and 6 of the Injunction

# Rimini Should Be Held In Contempt For Using City Of Eugene's Environment To Support Other Clients In Violation Of The Injunction

**PeopleSoft**

3. Rimini Street shall not distribute PeopleSoft software or documentation or any derivative works created from or with PeopleSoft software or documentation;

4. Rimini Street shall not reproduce, prepare derivative works from, or use a specific licensee's PeopleSoft software or documentation other than to support the specific licensee's own internal data processing operations;

5. Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems;

6. Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction at ¶ ¶ 4, 6

40

# Violations 2-4: Rimini's Cross-Use Of The City Of Eugene

| Violation | Update or Bug Fix | Client Environment Used for Testing | Was It Needed by That Client | Was It Solely for the City of Eugene | Client Requesting Update | Testing in Client Environment Before Informal Delivery |
|---|---|---|---|---|---|---|
| 4 | rsi940a.sqr | City of Eugene / Kichler Lighting | No | No | Spherion / Smead | No, environments not accessible |
| 2 | rsi940a.sqr | City of Eugene | No | No | Matheson | No evidence |
| 3 | W-2 alignment bug | City of Eugene | No | No | Johnson Controls | No documentation |

41

## Rimini Has Demonstrated A Pattern And Practice Of Treating The Very Easy To Access City Of Eugene's Environment As The Functional Equivalent Of A Generic Environment



Requested that Rimini provide update to fix alignment issues with Form 940, Schedule A

Requested that Rimini provide update to fix issues with W-2 form



**The City of Eugene environment was the environment employed for cross-use in *Rimini II*.**
*Rimini II* Summary Judgment Order at 49-55

City of Eugene is a very easy environment to access.  OREX_1349 at 76

42

## City Of Eugene's Software License Prohibits Use Of The Software For Purposes Other Than Solely City Of Eugene's Internal Data Processing Operations

### SOFTWARE LICENSE AND SERVICES AGREEMENT

This Software License and Services Agreement ("**Agreement**") is made as of _6-23_, 1997 ("**Effective Date**") by and between PeopleSoft, Inc. ("**PeopleSoft**"), a Delaware corporation having an office at 4305 Hacienda Drive, P.O. Box 9085, Pleasanton, California 94566 and _Lane County, Oregon_ ("**Licensee**").

OREX_0402 at 1

**1.   LICENSE**
1.1    PeopleSoft grants Licensee a perpetual, non-exclusive, non-transferable license to use the licensed Software, solely for Licensee's internal data processing operations at its facilities in the Territory for the size of the entity specified in the Schedule(s).  Licensee shall use any third party software products or modules provided by PeopleSoft solely with PeopleSoft Software.

4.1.     PeopleSoft (or its third-party providers) retains title to all portions of the Software and any copies thereof. PeopleSoft retains title to all modifications created by Licensee as a derivative work, but Licensee shall have a perpetual, royalty free license to use such modifications in conjunction with the Software in accordance with this Agreement. Licensee may share modifications with other PeopleSoft customers only through PeopleSoft Forum, subject to PeopleSoft's right to modify and monitor modifications distributed through PeopleSoft Forum.   Except as stated above, Licensee shall have no rights to market or distribute modifications.  PeopleSoft shall have no obligation to support Licensee created modifications or third party modifications. Licensee is not obligated to disclose modifications to PeopleSoft.

"If the update was being created and tested in the City of Eugene's environment, for other customers, the court must find that it was not being developed and created solely for City of Eugene's 'internal data processing operations.'" *Rimini II* Summary Judgment Order at 53.

43

## Rimini's Expert Incorrectly Opined That In Order For There To Be Cross-Use, There Must Be A Reproduction Or Derivative Work

Q    Professor, how do you analyze whether some activity by Rimini is cross-use?

A    Right. So we see here, paragraph 4 from the permanent Injunction order, and there are two steps. One, there must be a reproduction or derivative work of Oracle software. And then two, if there is a reproduction or derivative work of Client A's Oracle software, we determine whether this was solely to support Client A, or to support another client. And it's not cross-use if the reproduction is to support Client A and not another client.

Q    **Is it cross-use if there is no reproduction or derivative work of Oracle software?**

A    **No, it is not. We must see both of these.**

8    Section 4.1 of City of Eugene's license provides: "Licensee may share modifications with
9    other customers *only* through PeopleSoft Forum, subject to PeopleSoft's right to modify and
10   monitor modifications distributed through PeopleSoft Forum. Except as stated above, Licensee
11   *shall have no rights to market or distribute modifications*." ECF No. 905-2-s at 8 (emphasis
12   added). Even if the individual update was not a derivative work, it was clearly a modification that
13   was created for and tested in City of Eugene's environment. The license agreement expressly
14   prohibits distribution and/or marketing of those modifications, created and tested for City of
15   Eugene, to anyone else. It is undisputed that Rimini distributed the PPACA Phase 3 update
16   HCM104288 to Rimini customers other than City of Eugene: specifically, Easter Seals, Shawnee
17   Mission Schools, and the City of Glendale. Emails from Rimini to these three clients indicate that
18   the update designated as "HCM104288" was available for them to download. *See* ECF No. 906-
19   17-s at 38 (Easter Seals); ECF No. 907-4 at 30 (Shawnee Mission Schools); ECF No. 907-2-s at
20   26 (City of Glendale). Nothing in the record supports finding that this update "HCM104288"
21   delivered to Easter Seals, Shawnee Mission Schools and City of Glendale was different than the
22   update "HCM104288" developed for City of Eugene. Therefore, Rimini violated Section 4.1 of
23   the license agreement.



**Prof. Owen Astrachan**
Trial Tr. 990:3-4, 7-17

*Rimini II* Summary Judgment Order at **54**

## The Court Has Held That A File Can Be A Derivative Work Even If It Contains Only Rimini-Written Expression



Following the *Micro Star* analysis, the Court first finds that the update exists in a concrete and permanent form. Neither party disputes this. See ECF No. 904-s at 28-29; ECF No. 1084-s at 31-32. Second, the Court finds that the update **substantially incorporated protected material from the preexisting work**. It is undisputed that Rimini used PeopleTools Application Designer utility to create object changes, like the PPACA updates.  It is also undisputed that this update was designed to interact with PeopleSoft, and Rimini's customers would access the new update by signing into their existing PeopleSoft software. ECF No. 906-12-s at 26. **Nothing in the record supports a finding that the update could be used with other software programs other than PeopleSoft**. These undisputed facts show, similarly to *Micro Star*, that **even if the individual update contained only Rimini written expression**, because it only interacts and is useable with PeopleSoft and it was designed using Oracle's utility tools software, it substantially incorporated protected material.

*Rimini II* Summary Judgment Order at 52-53

45

# The Form 940 Schedule A Update—rsi940a.sqr—Is A Derivative Work



**Barbara Frederiksen-Cross**

Trial Tr. 477:22-478:25, 479:22-480:6

Q   **Are you offering the opinion that the Injunction prohibits Rimini from sending that rsi file**, and that rsi form -- sorry -- that IRS form, **to Spherion or Smead from Rimini systems?**

A   **Yes, because it is my understanding**, based on the guidance I have been given by counsel, that **that Rimini code file is, in fact, a derivative work** insofar as it is a file that depends totally for its operation on the Oracle PeopleSoft environment, that is an extension and modification to the PeopleSoft environment; and that is, it's underlying dependence. Further, I have looked at this code file and I know that it includes -- and we discussed this on my testimony --

The fact that this file includes sqc(s), Oracle sqc(s), and we talked about those in my testimony the other day. So **the file itself, the individual lines of code in the file may be entirely Rimini authored, but the file, when run, includes Oracle code, because it brings that code into the file. And that's how we know it's dependent on that Oracle environment.**

**The 940a file "is a derivative work of the PeopleSoft environment" because "it depends solely for its operation on the PeopleSoft environment, and it is an extension and modification of that environment."**

46

## Violation #4: City Of Eugene Did Not Need The Form 940 Schedule A Update Delivered To Spherion And Smead Because It Does Not Operate In The Virgin Islands

### "Everyone knows" City of Eugene "doesn't operate in the U.S. Virgin Islands."

Trial Tr. 74:21-24 (Rimini's Opening Statement)



Nov 20, 2018

For 2018, there is one credit reduction state (U.S. Virgin Islands). If you paid any wages that are subject to the unemployment compensation laws of a credit reduction state, your credit against federal unemployment tax will be reduced based on the credit reduction rate for that credit reduction state. Use Schedule A (Form 940) to figure the credit reduction. For more information, see the Schedule A (Form 940) instructions or visit IRS.gov.

OREX_1351 at 1

## The Form 940 Schedule A Update Was Tested In The City Of Eugene Environment For Spherion And Smead In Response To Their Requests On January 24

From: Don Sheffield <dsheffield@riministreet.com>

Sent: Thursday, January 24, 2019 9:56 PM

To: Timothy Pringle <tpringle@riministreet.com>

Cc: RSI - PSFT Scrum Team 3 <rsi-psftscrumteam3@riministreet.com>

Subject: Re: Need another 940 A GIF file

Tim,

I tested in COEX, so tomorrow morning, I will get the objects out to the clients and create the tech doc.

OREX_0021 at 3

## Rimini Tested The Form 940 Schedule A Update In The City Of Eugene's Environment Because It Could Not Access Spherion's And Smead's



**Jim Benge**

Trial Tr. 777:21-778:1, 794:12-16

Q   When you tested the update in the City of Eugene environment, you didn't have access to the Spherion environment, correct?

A   True.

Q   That was also true for Smead, correct?

A   **Those two environments were inaccessible** at the time.

Q   At the same time, you do agree that **when they went -- wanted to test for these updates, and did in the City of Eugene, they didn't have access to Spherion and Smead?**

A   For a period of time **they did not have access**, and, yes, it was tested in City of Eugene for City of Eugene.

From: Timothy Pringle
Sent: Friday, January 25, 2019 10:28 AM
To: Jim Benge <jbenge@riministreet.com>
Cc: Laurie Gardner <lgardner@riministreet.com>
Subject: RSI940A Informal Delivery

Jim,

Don finalized the update for the 940A gif file and sqr modifications (HCM200049). He has moved it to Dev for the all clients in scope. I have not specifically test in SPF or SME due to issues accessing these clients. I have tested in KICX and COEX however and the results look good. Can we please do and informal delivery today to SPH and SME so that we may close these client cases?

OREX_0028 at 2

49

## The Business Analysis Team Had Determined Only Spherion Was In Scope When The Update Was Tested On January 24

Q   This is **Laurie Gardner** writing, and she's **ultimately making the decision, isn't she, about who is going to get this update?**

A   **Yes.**

Q   Right.

A   Development wouldn't have been able to make a determination about this.

Q   Tim Pringle can't override Laurie Gardner?

A   Laurie is Tim's manager.

Q   Right. And Don Sheffield can't override Laurie Gardner, right?

A   No. Don reports to me.

Trial Tr. 791:2-13
(Benge)

According to Rimini's Jira records, only Spherion was in scope between:

January 15 at 9:57am and January 25 at 5:21 am, and

January 25 at 5:34am and January 28 at 8:21 am.



DTX-0401 at 4

50

**Instead Of Offering A Good Faith Explanation, Mr. Benge's Claim Of Testing And Prof. Astrachan's Slide Were Misleading As To When The Form 940 Schedule A Update Was Tested In COEX**



**Jim Benge**

Trial Tr. 668:1-9



**Prof. Astrachan**

DDX-559

Q **What's the date of the e-mail where Don Sheffield says he's tested in City of Eugene** and sent the update files to the clients that need it?

A **January 25th, 2019**, he had completed the development work.



51

# Rimini Uses "Informal Delivery" To Violate The Injunction



### Jim Benge

Trial Tr. 760:7-17, 761:2-6

"Again, prior to delivery, updates will go through our Quality Assurance team. **There might be situations, such as an informal update**, where a client receives something before it has been through all of our usual steps and processes -- although **receiving something that hasn't been tested for them yet**, that we make it clear it will be subsequently tested and formally delivered."

"**I don't think it is a requirement**, necessarily, **that we test something** in a client's QA environment **prior to us delivering it**."

6.   Rimini street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on one licensee's computer systems to support, troubleshoot, or perform development or testing for any other licensee, including, specifically, that Rimini Street shall not use a specific licensee's PeopleSoft environment to develop or test software updates or modifications for the benefit of any other licensee;

Injunction at ¶ 6

Rimini developed the updated SQR file once—in City of Eugene's environment—and then sent the file to all US clients without even determining whether those clients needed the update.  Rimini now claims that sending the file out to all US clients constitutes development for all US clients.

52

## Violation #2: Cross-Use Of COEX For The Benefit Of Matheson Trucking

"In at least two instances, Rimini used City of Eugene's environment ('COEX' or 'COE') for the general purpose of testing updates for other customers . . . . Frederiksen-Cross further provides that Rimini update 'rsi940.sqr' was tested in COE and then sent to all clients in scope.  This appears to be a classic example of unlawful cross-use and Rimini using one client's environment under color of license for another client."

"As to update HCM200049, delivered to Rimini's client Matheson Trucking, without any indication it was developed or tested in that client's environments, is a **clear violation of the permanent Injunction . . . . The parties will not be permitted to re-argue** the at issue-issue conduct; rather, the parties are only permitted to argue whether Rimini should be held in contempt for such a violation and what sanctions are appropriate." OSC at 19-20, 26-27.

Professor Astrachan did try to re-argue this violation initially, opining that "in every respect the Injunction has not been violated" and then that "I was thinking more about the cross-use issues." Trial Tr. 1032:1-3, 1035:3-7 (Astrachan).

53

# Rimini Provided Matheson Trucking The Same Update As Spherion And Smead

**From**: Timothy Pringle
**Sent**: Friday, January 25, 2019 4:18 PM
**To**: Jim Benge <jbenge@riministreet.com>
**Subject**: SF case 162054, Matheson Trucking

Jim,

Matheson Trucking has logged a case for the 940a.  Is it possible to give them the In formal update too.

OREX_0022 at 4

**From**: Timothy Pringle
**Sent**: Monday, January 28, 2019 6:01 AM
**To**: Susan Tahtaras <stahtaras@riministreet.com>
**Cc**: Jim Benge <jbenge@riministreet.com>; Anil Yadav <ayadav@riministreet.com>; Teresa Hintz <THintz@riministreet.com>
**Subject**: FW: SF case 162054, Matheson Trucking

Susan,

Can you please deliver HCM200049 to client Matheson Trucking today.  I sent this request to Jim on Friday but I guess he was away.  The client has expressed they are not happy with us.  Jim has already delivered it to clients SPH and SME on Friday.

OREX_0022 at 4

54

## There Is No Evidence The Update Was Separately Tested In Matheson's Environment Other Than Jim Benge's Conflicting Testimony



**Jim Benge**

Trial Tr. 778:15-18, 805:18-23, 806:23-807:4

Q   **Before you delivered it to Matheson Trucking for informal delivery, it was not tested on their environment.** Am I correct?

A   **Not in their QA environment.**

Q   The -- now, as -- the other question was tested. Now, **Mr. Sheffield says, "I did complete the development for Matheson as well." He doesn't mention testing**, correct?

A   **He very well may have completed some unit testing** as part of the development effort, but that the QA testing he would not have conducted.

From: Don Sheffield
Sent: Monday, January 28, 2019 6:29 AM
To: Kim Martinez <kmartinez@riministreet.com>; Jim Benge <jbenge@riministreet.com>; Timothy Pringle <tpringle@riministreet.com>; Susan Tahtaras <stahtaras@riministreet.com>
Cc: Anil Yadav <ayadav@riministreet.com>; Teresa Hintz <THintz@riministreet.com>
Subject: RE: SF case 162054, Matheson Trucking

Kim,

I am not sure if it has been tested for MAT, and if it has been, who the tester was. But the objects modified are the same for all clients. They consist of 2 GIF image files, and one SQR (rsi940a.sqr) which is the same for all clients.

OREX_0022 at 1

Q   **The informal delivery to Matheson went forward without any written confirmation that there had been testing in the Matheson environment, correct?**

A   **In the DEV environment.** Again, Don, as part of applying it, would have conducted unit testing in DEV. And, again, this is an informal delivery. It's delivering it to the client with their understanding that it's work in progress, they're picking it up from the development area, not from QA.

Q   Right, but there wasn't -- I didn't hear the first part of your answer whether you were agreeing with me that you didn't -- so that **you did not know before you approved informal delivery what testing had been done in the Matheson environment for this update**; is that correct?

A   As far as the DEV environment, **I don't believe it had been tested in the DEV environment**.

55

## Violation #3: Cross-Use Of City Of Eugene For Johnson Controls

### Sheffield in COEX

**From:** Don Sheffield <dsheffield@riministreet.com>
**Sent:** Thursday, January 24, 2019 3:54 PM
**To:** Jai Ramachandran <jramachandran@riministreet.com>; Catherine Castelo <ccastelo@riministreet.com>; Paula Smith <psmith@riministreet.com>
**Cc:** Timothy Pringle <tpringle@riministreet.com>; Laurie Gardner <lgardner@riministreet.com>; Teresa Hintz <THintz@riministreet.com>; Jim Benge <jbenge@riministreet.com>
**Subject:** RE: [PeopleSoft - Johnson Controls, Inc.]P2 - Production Impacted Case # 00161783 : W2 Prinfing for Box 14 - xmlp is off

Jai,

Is the "Print Format" field also blank?

| Box: | 17 | State income tax |
| Print Line: | | Print Column: | 39 | Print Format: | B999999.99 |
| Print Text: | | |

DTX-0302 at 5

**From:** Don Sheffield <dsheffield@riministreet.com>
**Sent:** Thursday, January 24, 2019 4:08 PM

Jai,

Have them enter this "B999999.99" (without the quotes) into the "Print Format" field for box 17 and try it again.

DTX-0302 at 3

**From** Don Sheffield <"/o=exchangelabs/ou=exchange administrative group
**Date:** Thu, 24 Jan 2019 21:11:23 +0000   (4:11 PM)

Jai,

I think it will work. I tested it here locally on COEX.

DTX-0303 at 1

### Ramachandran in JHN

**From:** Jai Ramachandran
**Sent:** Thursday, January 24, 2019 3:56 PM
**To:** Don Sheffield <dsheffield@riministreet.com>; Catherine Castelo <ccastelo@riministreet.com>; Paula Smith <psmith@riministreet.com>
**Cc:** Timothy Pringle <tpringle@riministreet.com>; Laurie Gardner <lgardner@riministreet.com>; Teresa Hintz <THintz@riministreet.com>; Jim Benge <jbenge@riministreet.com>
**Subject:** RE: [PeopleSoft - Johnson Controls, Inc.]P2 - Production Impacted Case # 00161783 : W2 Prinfing for Box 14 - xmlp is off

Yes

DTX-0302 at 4

**From:** Jai Ramachandran
**Sent:** Thursday, January 24, 2019 4:08 PM

I am going to have them put in the Print format and see if that makes a difference.

DTX-0303 at 2

**From:** Jai Ramachandran
**Sent:** Thursday, January 24, 2019 4:33 PM

All,

That worked !. Don, Catte   thanks for jumping in at short notice.

DTX-0302 at 2

56

# City Of Eugene Did Not Need The W-2 Update



**Jim Benge**

Trial Tr. 773:15-18

Q   Am I correct **the City of Eugene never provided the data that would indicate they would need this fix** that Paula Smith was talking about?

A   **Not to my knowledge.**



RE: [PeopleSoft - Johnson Controls, Inc.]P2 - Production Impacted Case # 00161783 : W2 Printing for Box 14 - xmlp is off

From: Paula Smith <psmith@riministreet.com>

To: Teresa Hintz <thintz@riministreet.com>, Jai Ramachandran <jramachandran@riministreet.com>, Don Sheffield <dsheffield@riministreet.com>, Catherine Castelo <ccastelo@riministreet.com>

Cc: Timothy Pringle <tpringle@riministreet.com>, Laurie Gardner <lgardner@riministreet.com>, Jim Benge <jbenge@riministreet.com>

Date: Thu, 24 Jan 2019 22:00:45 +0000

We will be handling this on a case by case basis, as it will depend on the data they report. The turnaround if a client does need a fix is quick

Paula R. Smith, CSPO, CSM
PeopleSoft Business Analyst
Rimini Street, Inc.

OREX_0023 at 1

57

## Instead Of Offering A Good Faith Explanation, Jim Benge Made Up Post-Hoc Rationalizations For Troubleshooting In COEX That Are Contradicted By The Evidence



### Jim Benge

Trial Tr. 767:10-13, 768:13-769:10

Q    But the configuration that arose from the case that was entered by Johnson Controls, was tested in the city of Eugene I have that right, don't I?

A    Because **City of Eugene needed that update.**

Q    And then **you later figured out that it wasn't going to affect multiple clients?**

A    **That's correct.**

**Q    How long did that take to figure out?**

A    I'm sure it wasn't determined until the development was done. We had to be in there and understanding what was going on.

Q    So that would take **more than an hour?**

A    **Yeah.**

From   Don Sheffield <"/o=exchangelabs/ou=exchange administrative group
Date:   Thu, 24 Jan 2019 21:11:23 +0000
Jai,
I think it will work. I tested it here locally on COEX.                    DTX-0303 at 1

RE: [PeopleSoft - Johnson Controls, Inc.]P2 - Production
Impacted Case # 00161783 : W2 Printing for Box 14 - xmlp is
off

From   Paula Smith <psmith@riministreet.com>
:
To:    Teresa Hintz <thintz@riministreet.com>, Jai Ramachandran
       <jramachandran@riministreet.com>, Don Sheffield <dsheffield@riministreet.com>, Catherine
       Castelo <ccastelo@riministreet.com>
Cc:    Timothy Pringle <tpringle@riministreet.com>, Laurie Gardner <lgardner@riministreet.com>,
       Jim Benge <jbenge@riministreet.com>
Date:   Thu, 24 Jan 2019 22:00:45 +0000  (49 minutes after Sheffield tested in COEX)
We will be handling this on a case by case basis, as it will depend on the data they report.   The
turnaround if a client does need a fix is quick

Paula R. Smith, CSPO, CSM
PeopleSoft Business Analyst
Rimini Street, Inc.
+1 720.556.8461(c)
psmith@riministreet.com
www.riministreet.com

OREX_0023 at 1

58



# *Oracle v. Rimini Street*

Violation #5

Rimini copied protected expression from Oracle's PSPTARRY.cbl source code, saving it to Rimini's system, and distributing the file 14 times to 7 customers

59

## Rimini Violated The Injunction

- **RSPCMPAY.cbl was saved to Rimini systems**

- **The file was distributed at least 14 times to 7 clients**

Q. With respect to the amount of lines that match, **what was the number of lines that matched?**

A. If you take just a gross number of lines, it was, **roughly, a third of the lines.**



**Barbara Frederickson-Cross**

Trial Tr. 202:25–203:3

## Prof. Astrachan Does Not Deny Rimini's Direct Copying

The abstraction-filtration-comparison test is unnecessary to prove copyright infringement where there is evidence of direct, literal copying.

- *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065 (9th Cir. 2016):  a plaintiff need not prove substantial similarity or even access when there is "direct evidence of copying"

- *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2012 WL 13170064, at *3 (N.D. Cal. July 13, 2012):  the "abstraction/filtration/comparison test is not required where the alleged copying is literal code"

- *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996):  the substantial similarity analysis is invoked simply "Because direct evidence of copying is not available in most cases"

Prof. Astrachan was unsure if he would apply analytic dissection if he was told Rimini had copied 100% of a file

61

## Prof. Astrachan's Analytic Dissection Methodology Was Created Solely For This Case

He started with 8 criteria, then moved to 5 for the hearing

He could not say that any publication or court would rely on his factors individually or collectively

He could not recall whether he got his 8 dissection elements from counsel or himself

62

# Prof. Astrachan Is Rewriting The Law Of This Case And Copyright Law

## Prof. Astrachan

Developers are expected to use conventional code  Conventional code is not creative  Software code is not copyright protected

## Jury Instructions

### Copyright Infringement - Direct Infringement

To prevail on its claim for direct copyright infringement as to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation, Oracle International Corporation must prove the following by a preponderance of the evidence:

1. Oracle International Corporation is the owner or exclusive licensee of a valid copyright in an original work;

**2. Rimini Street copied original elements from, created derivative works from, or distributed the original work; and**

3. Rimini Street did not have permission to copy the original elements of the copyrighted work.

The parties have agreed that Oracle International Corporation owns or is the exclusive licensee of certain registered copyrighted works related to the J.D. Edwards and Siebel software applications and related documentation and PeopleSoft documentation at issue in this action, which means that Oracle International Corporation has proven the first element for these registered works.

The parties have also agreed, as stated in your juror notebook, that defendant Rimini Street copied the J.D. Edwards and Siebel software applications and related documentation **as well as the PeopleSoft documentation at issue in this action.** This means that Oracle International Corporation has also proven the second element for these copyrighted works.

Jury Instruction No. 23, at 25

Software programming is creative, an art

63

## Prof. Astrachan's Analytic Dissection Methodology Would Permit Direct Copying Of Code In Violation Of The Injunction

**Under Prof. Astrachan's methodology, Rimini would be free to copy:**

- Hundreds of exact lines of Oracle's code

- The structure and arrangement of Oracle's code

- Descriptive and discretionary comment fields

- Descriptive and discretionary variables

- Descriptive and discretionary field names

**There is no basis for this approach under the Injunction:**

5. Rimini Street shall not reproduce, prepare derivative works from, or use PeopleSoft software or documentation on, with, or to any computer systems other than a specific licensee's own computer systems;

Injunction at ¶ 5

64



# *Oracle v. Rimini Street*

**Violation #6:**

Easter Seals 1099 Update (RS18F07) in violation of Paragraphs 4, 5, and 6 of the Injunction

65

## The Court Asked For Necessary Information To Determine Whether Rimini's 1099 Update Emailed To Easter Seals Violated The Injunction

Here, Oracle points to only one example of a derivative work that violates the permanent injunction: Rimini's 1099 update that was emailed to Easter Seals in 2018. It is not clear from the record before the Court where this update came from, where it was developed, and for what client. If the update was developed for Easter Seals, in Easter Seals environment, and Easter Seals is permitted under its license to create derivative works and have a third-party servicer create those derivative works for it, then the Court could not find Rimini's conduct was a violation of the permanent injunction. However, because the Court lacks necessary information to make this finding, an evidentiary hearing is needed to determine if the creation and distribution of the update violated the permanent injunction. Accordingly, the Court issues an order to show cause on this issue.

OSC at 24

# Rimini Conceded That The RS18F07 Files "Reside" And "Were Modified On" Rimini's Systems

database and are designed to be run by the client one time.  *See, e.g.*, Ex. K.  Because none of these files contains any Oracle code (ECF No. 1386-1 ¶ 318 & n.313), they reside on Rimini's systems.  They were modified on Rimini's systems and sent to the development environments of clients who needed the update, including Easter Seals.  All of these files—the .sqr files and

Rimini's OSC Response at 21

67

# rsi1099m.sqr And rsi1099i.sqr Are Derivative Works

## rsi1099m.sqr and rsi1099i.sqr incorporate <u>five</u> Oracle source code files

These **#include** statements are instructions for PeopleSoft to copy all of the code from the referenced <u>.sqc Oracle source code files</u> into the .sqr files.  The .sqr files are derivative works because:

1. The .sqr files were developed to replace functionality that was already in PeopleSoft to print 1099 forms;

2. The .sqr files depend on the PeopleSoft environment and PeopleSoft source code to compile and run;

3. The .sqr files incorporate copies of the source code in the referenced Oracle's .sqc source code files files when executed or tested.

Trial Tr. 238:7-246:3 (Frederiksen-Cross), 1015:14-1017:7 (Astrachan);
OREX_0040 at 1, 17; OREX_0041 at 1, 16

**rsi1099m.sqr**

```
!***********************************************************

#include 'setenv.sqc' ! Set Environment Procedure

!***********************************************************
```

```
#include 'prcsapi.sqc'    ! Update Process Request API
#include 'prcsdef.sqc'    ! Update Process Request Variable Declaration
#include 'curdttim.sqc'   ! Get-Current-DateTime Procedure
#include 'datetime.sqc'   ! Routines for Date and Time Formatting
```

**rsi1099i.sqr**

```
!***********************************************************

#include 'setenv.sqc' ! Set Environment Procedure

!***********************************************************
```

```
#include 'prcsapi.sqc'    ! Update Process Request API
#include 'prcsdef.sqc'    ! Update Process Request Variable Declaration
#include 'curdttim.sqc'   ! Get-Current-DateTime Procedure
#include 'datetime.sqc'   ! Routines for Date and Time Formatting
```

68

# rsi1099m.sqr And rsi1099i.sqr Are Derivative Works

## Professor Astrachan's Windows analogy is misguided

"I have written, myself, hundreds of programs designed to work in a Windows environment.  They will only work in a Windows environment.  That doesn't make them derivative works of Windows"

Trial Tr. 1012:11-21 (Astrachan)

Derivative works.
*Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1111–12 & n.5 (9th Cir. 1998)



**Application Software**

Micro Star MAP files

**PeopleSoft Environment**

**Operating System** (e.g., Windows)

**Hardware**

"This program cannot run except in a PeopleSoft environment."
Trial Tr. 1015:18-19 (Astrachan)

69

# What Rimini Claims Happened Is An Injunction Violation



## Easter Seals' License Does Not Authorize Rimini To Create Or Commercialize Derivative Works On Behalf Of Easter Seals

Easter Seals' license distinguishes between Licensees (Easter Seals) and Designates (Rimini).  While Easter Seals is permitted to create derivative works, Designates like Rimini are only permitted to "access" Easter Seals' PeopleSoft Software.

1.   LICENSE

1.1   PeopleSoft grants Licensee a nonexclusive, nontransferable license to:

(a)   make and run copies of the Software for Licensee's internal data processing operations on one or more servers and/or workstations located at facilities owned or leased by Licensee in the Territory;

(b)   access and use the Software and provide access to Designates;

(c)   modify or merge the Software with other software, and use such modified or merged software and otherwise create and use derivative works.;

(d)   make and use copies of, and modify, the Documentation and use such Documentation as modified.

"Designates" means Licensee's customers, suppliers, vendors, benefits providers and other such third parties providing goods or services to Licensee that Licensee may provide with a right to access the Software to facilitate Licensee's use of the Software consistent with the terms of this Agreement.  In no event shall a Designate have the right to (i) install the Software on a server workstation or other computer for the purpose of processing the designates internal data, (ii) access or use the Software to run its internal data or support its internal operations except as such access or use relates to Licensee's use of the Software consistent with the terms of this Agreement, or (iii) access the source code for the Software for purposes other than providing services to the Licensee.  A breach by a Designate will be considered a breach by Licensee.

OREX_0310 at 1

71

# Easter Seals' License Does Not Authorize Rimini To Create Or Commercialize Derivative Works On Behalf Of Easter Seals

## The license does not authorize Rimini to assume Easter Seals' rights to create derivative works

**2.    LIMITATIONS ON LICENSE**

**2.1**    Licensee shall not:

a.    Access or use any portion of the Software not expressly licensed and paid for by Licensee;

b.    Access or use any Software, except through enterprise integration points documented by PeopleSoft;

c.    Cause or permit decompilation or reverse assembly of all or any portion of the Software, except as expressly provided by applicable law;

d.    Disclose or publish performance benchmark results for Software (as delivered or subsequently modified) without PeopleSoft's prior written consent;

e.    Transfer the Software to a different software database platform or operating system, except as may be specifically provided for in the Schedule;

f.    Export or use the Software or Documentation in violation of U.S., Canadian, or other applicable laws or regulations, including the U.S. Department of Commerce export administration regulations;

g.    Use, or authorize or permit the use of, the Software except as expressly permitted herein;

h.    Use Third Party Software as designated on a Schedule except solely in conjunction with the Software;

i.    Delete, fail to reproduce or modify, any patent, copyright, trademark or other proprietary rights notices which appear on or in the Software or Documentation;

j.    Directly or indirectly, sublicense, relicense, distribute, disclose, use, rent or lease the Software or Documentation, or any portion thereof for third party use, third party training, facilities management, time-sharing, use as an application service provider, or service bureau use; or

k.    Except as expressly provided herein, or in any Schedule referencing this Agreement, use the Software to create new applications, modules, products or services.

**2.2**    PeopleSoft reserves all rights not expressly granted in this Agreement.

OREX_0310 at 1

# Easter Seals' License Does Not Authorize Rimini To Create Or Commercialize Derivative Works On Behalf Of Easter Seals

## The license does not authorize either Rimini or Easter Seals to commercialize or distribute any derivative works

4. TITLE AND PROTECTION

4.1   The Software and Documentation contain valuable intellectual property rights and proprietary information. PeopleSoft (or its licensors) retains title to the Software and Documentation, and all copyright and other rights to all portions of the Software and Documentation, and all modifications and alterations thereto, and derivative works thereof (collectively the "Modifications"), and all copies of any of the foregoing   Licensee is granted license rights to use such Modifications, with such rights consistent with those delineated in this Agreement. For such portions of the Modifications that do not contain PeopleSoft intellectual property. this license grant is not revocable.   Except as specified herein, Licensee does not acquire any rights, express or implied, in the Software and Documentation, other than as provided in this Agreement, and has no right to commercialize or transfer any Software or Documentation, in whole or in part, or any Modifications thereto. No license, right, or interest in any PeopleSoft trademark, trade name, or service mark is granted pursuant to this Agreement.

OREX_0310 at 2

73

## What Really Happened Is An Injunction Violation



**Easter Seals Environment**

Oracle PeopleSoft Files / Rimini Code

1099i.sqr / 1099m.sqr

FSCM100130_1.DMS
FSCM100130_2.DMS

OREX_0090

**Easter Seals Development Environment**

1099i.sqr / 1099m.sqr

DTX-0602 at 2: DTX-0603 at 2

**Oakland County's Development Environment**

FSCM100130_1.DMS
FSCM100130_2.DMS

DTX-0604 at 2

**Rimini Street®**

Rimini Code

1099i.sqr / 1099m.sqr

FSCM100130_1.DMS
FSCM100130_2.DMS

*A derivative work*

1. **EZCORP** (OREX_0432)
2. Pikeville Medical Center (OREX_0431)
3. Texas Children's Hospital (OREX_0430)
4. **NASDAQ** (OREX_0429)

...............................................

**Q** The SQR and DMS files were identical when these were sent out to these different – to [EZCORP], Pikeville, Texas Children's Hospital, etc.

**A** That's correct. Those are sqrs that we wrote for a product, **one version for all clients.**

Trial Tr.
820:13-17 (Benge)

74

## The Answers To The Court's Questions From The Order To Show Cause Confirm Rimini Violated The Injunction With Respect To The Easter Seals 1099 Update

| In the Order to Show Cause, the Court said: | The evidence shows the answers to the Court's questions are: |
|---|---|
| "It is not clear from the record before the Court | |
| where this update came from, | Rimini's systems, in violation of Injunction ¶ 5 |
| where it was developed, | Rimini's systems, in violation of Injunction ¶ 5; the .sqr files were also developed in Easter Seals' environment; the data mover scripts were also developed in Oakland County's environments, in violation of ¶¶ 4 , 6 |
| and for what client. | Multiple clients, in violation of Injunction ¶¶ 4 , 6 |
| If the update was | |
| developed for Easter Seals, | It wasn't; it was developed for all Rimini 1099 clients. |
| in Easter Seals environment, | It wasn't entirely; it was also developed on Rimini's systems and in Oakland County's environment. |
| and Easter Seals is permitted under its license to create derivative works and have a third-party servicer create those derivative works for it, | It wasn't; the license does not permit Rimini to create derivative works, much less commercialize them. |
| then the Court could not find Rimini's conduct was a violation of the permanent Injunction." | The Court should find a violation of the Injunction because it is a derivative work. |

OSC at 24



# *Oracle v. Rimini Street*

Violation #8

Oracle Database file prvtsidx.plb on
Rimini's systems in violation of Paragraph
15 of the Injunction

# Rimini Violated Paragraph 15 Of The Injunction



Injunction

**Oracle Database**

15. Rimini Street shall not reproduce, prepare derivative works from, or distribute Oracle Database software.

77

# Australian Bureau Of Statistics Sent The Oracle Database File prvtsidx.plb To Rimini On December 5, 2018



| Case Comment ID: | a3m0z0000013m2P |
|---|---|
| Created Date | Dec 04 2018 22:59:00 |
| Last Modified Date | Dec 04 2018 |
| Customer | Australian Bureau of Statistics |
| Created By | Dae-Hyun Kim |
| Last Modified By | Dae-Hyun Kim |

Hi Quang,

Thanks for the update.

Apparently prvtsidx.plb was not called to recreate the type.
Can you please review "prvtsidx.plb" script and grab all SQL statements related to
SDO_INDEX_METHOD_10I (create /alter etc) ?

In addition, do you see any other log files apart from catupg
The error ora-6508 incurred while prvtoper.plb but I cannot s
And Phase numbers are not continuous. It jumps from phas

Regards,
Dae

OREX_1342 at 5

| Bates Number: | No Bates Provided |
|---|---|
| Attachment ID | 00P0z000017p9rTEAQ |
| Attachment Name | prvtsidx.zip |
| Created Date | Dec 05 2018 13:28:42 |
| Last Modified Date | Apr 04 2019 02:39:09 |
| Created By | |
| Name | Rimini Street Client |
| Email | sf-admins@riministreet.com |
| Last Modified By | |
| Name | Paul Stradling |
| Email | pstradling@riministreet.com |

OREX_1342 at 7

OREX_1342 at 7-8

| Case Comment ID: | a3m0z0000013p2D |
|---|---|
| Created Date | Dec 05 2018 14:46:00 |
| Last Modified Date | Dec 05 2018 |
| Customer | Australian Bureau of Statistics |
| Created By | Rimini Street Client |
| Last Modified By | Rimini Street Client |

|| Quang Le || I uploaded the file for Dae to check. Also, All logs in the zip file.
The problem is I can not upload more than 25MB. I emailed the files but probably will be blocked by your
mail exchange.

78

# Rimini Reproduced The prvtsidx.plb File Provided By The Client

| Case Comment ID: | a3m0z0000013pCw |
|---|---|
| Created Date | Dec 05 2018 16:18:00 |
| Last Modified Date | Dec 05 2018 |
| Customer | Australian Bureau of Statistics |
| Created By | Dae-Hyun Kim |
| Last Modified By | Dae-Hyun Kim |

Hi Quang,

I found "CREATE TYPE SDO_INDEX_METHOD_10I" command in catupgrd1.log
It was run as part of "prvtsidx.plb" as expected.

Although "create type sdo_index_method_10i" was run successfully, "create or replace type body
sdo_index_method_10i" has got error.
Since the TYPE BODY is INVALID, you are seeing all ORA-6508 errors related to this type.

OREX_1342 at 8



Trial Tr. at 353:14-23
(Frederiksen-Cross)

Q. And how did he use those files to diagnose the problem?

A. **Um, it appears to me, in looking at the exchange here, that he would have gone through the file to understand tell us was going on in this particular instance, and to determine just exactly where in the – where in the code the problem was, or tell us the problem was that was – that the Australian Bureau of Statistics was experiencing.**

Q. And does this indicate to you that Rimini opened the zip file and then opened the plb file?

A. **It appears to be the case.  Yes.**

79

# prvtsidx.plb Is A Reproduction Of The Oracle File

ORACLE®                                    Rimini Street®

```
27 begin                                        28    pragma exception_init(name_already_used, -00955);
28   begin                                      29 begin
29   execute immediate                          30   begin
30 'create type sdo_index_method_10i            31   execute immediate
31 OID ''A6AF3DC91710108FE034080020F7892A''     32 'create type sdo_index_method_10i
32 AUTHID current_user  AS OBJECT               33 OID ''A6AF3DC91710108FE034080020F7892A''
33 (                                            34 AUTHID current_user  AS OBJECT
34   scan_ctx raw(4),                           35 (
                                                36   scan_ctx raw(4),
                                                37
35   STATIC function ODCIGetInterfaces(ifclist OUT sy   38   STATIC function ODCIGetInterfaces(ifclist OUT sy
s.ODCIObjectList)                               s.ODCIObjectList)
36     return number,                           39     return number,
                                                40
37   STATIC function ODCIIndexCreate (ia sys.odciinde   41   STATIC function ODCIIndexCreate (ia sys.odciinde
xinfo, parms varchar2,                          xinfo, parms varchar2,
38                            env sys.ODCIEnv)   42                            env sys.ODCIEnv)
39     return number,                           43     return number,
                                                44
40   STATIC function ODCIIndexDrop (ia sys.odciindex   45   STATIC function ODCIIndexDrop  (ia sys.odciindex
info, env sys.ODCIEnv)                          info, env sys.ODCIEnv)
41     return number,                           46     return number,
                                                47
42   STATIC function ODCIIndexTruncate (ia sys.odciin   48   STATIC function ODCIIndexTruncate (ia sys.odciin
dexinfo, env sys.ODCIEnv)                       dexinfo, env sys.ODCIEnv)
43        return number,                        49     return number,
                                                50
44   STATIC function ODCIIndexCoalescePartition(ia sy   51   STATIC function ODCIIndexCoalescePartition(ia sy
s.odciindexinfo,                               s.odciindexinfo,
45                            env s             52                            env s
ys.ODCIEnv)                                    ys.ODCIEnv)
46       return number,                         53     return number,
```

OREX_0174 at 2

# The Australian Bureau Of Statistics License Agreement Does Now Allow Rimini To Copy Oracle Database Software

C.    **Rights Granted**

Upon Oracle's acceptance of your order, you have the non-exclusive, royalty free, perpetual (unless otherwise specified in the ordering document), limited right to use the programs and receive any services you ordered solely for your internal business operations and subject to the terms of this agreement, including the definitions and rules set forth in the order and the program documentation. For programs that are specifically designed to allow your customers and suppliers to interact with you in the furtherance of your internal business operations, such use is allowed under this agreement. You may allow your agents and contractors (including, without limitation, outsourcers) to use the programs for this purpose and you are responsible for their compliance with this agreement in such use. If accepted, Oracle will notify you and this notice will include a copy of your agreement. Program documentation is delivered with the programs, or you may access the documentation online at http://oracle.com/contracts. Services are provided based on Oracle's policies for the applicable services ordered, which are subject to change, and the specific policies applicable to you, and how to access them, will be specified on your order (except technical support services, which are as specified in section H of this agreement). Upon payment for services, you will have a perpetual, non-exclusive, non-assignable, royalty free license to use for your internal business operations anything developed by Oracle and delivered to you under this agreement; however, certain deliverables may be subject to additional license terms provided in the ordering document.

D.    **Ownership and Restrictions**

Oracle or its licensors retain all ownership and intellectual property rights to the programs. Oracle retains all ownership and intellectual property rights to anything developed by Oracle and delivered to you under this agreement resulting from the services. You may make a sufficient number of copies of each program (other than for Siebel programs), for your licensed use and one copy of each program media. With respect to Siebel programs, you may only make a sufficient number of copies of each such program to support the maximum number of users of such program(s).

DTX-0803 at 5; DTX-0804 at 5

> The Court has already ruled that Sections C and D of the OLSAs do not allow Rimini to make copies of the Oracle Database software

*Rimini I* Summary Judgment Opinion at 14-15

81



# *Oracle v. Rimini Street*

Violation #9

Copying J.D. Edwards source code into Rimini's JDE105328 Technical Specification in violation of Paragraph 8 of the Injunction

# Rimini Copied Source Code From J.D. Edwards  EnterpriseOne Source Code File R89078652



OREX_0212 at 7, 9



Rimini used Oracle code as "markers" and "pointers" for technical specifications used for development  and testing of software updates.

83



# *Oracle v. Rimini Street*

## Violation #10:

Rimini's HCM200105 Update was developed as one version for all clients, then delivered directly to Rockefeller Group International & Home Shopping Network in violation of Paragraphs 4 and 6 of the Injunction

84

## Rimini Concedes It Sent rsiqtrtx.sqr Directly To Rockefeller Group And Home Shopping Network From Rimini's Systems

It also included sending the Rimini-created SQR file and script from Rimini's systems to those environments and integrating those files with the environments.

Rimini's OSC Response at 22-23

85

## Rimini Concedes The HCM200105 Update Includes An rsiqtrtx.sqr File That Was "One Version For All Clients"

From: Sara Lu <slu@riministreet.com>

To: Sara Lu <slu@riministreet.com>, Don Sheffield <dsheffield@riministreet.com>

Date: Thu, 06 Dec 2018 20:07:49 +0000

Don Sheffield 2:51 PM:

but it is a brand new SQR that is one version for all clients

OREX_0052 at 1

# rsiqtrtx.sqr Is A Derivative Work

## rsiqtrtx.sqr incorporates Oracle source code files

These **#include** statements are instructions for PeopleSoft to copy all of the code from the referenced .sqc Oracle source code files into the .sqr file.  The .sqr file is a derivative work because:

1. The .sqr file was developed to extend functionality that was already in PeopleSoft;

2. The .sqr file depends on the PeopleSoft environment and PeopleSoft source code to compile and run;

3. The .sqr file incorporates copies of the source code in the referenced Oracle's .sqc source code files files when executed or tested.

rsiqtrtx.sqr



```
!*****************************************************************
! RSIQTRTX:    Create Quarterly Tax Report for Selected Localities    *
!*****************************************************************
!*****************************************************************
! Rimini Street Modification Log                                 *
!                                                                *
!  09/18/2018 RSI-HCM200105  v1.0                                *
!  Descr: Create Quarterly Tax Report for Selected Localities.   *
!                                                                *
!  02/26/2019 RSI-HCM200442  v2.3                                *
!  Descr: Update to create separate reports for CY and FY Balance ID's *
!                                                                *
!*****************************************************************

#include 'setenv.sqc'    ! Set Environment
#include 'rsicdver.sqc'   ! Client Specific PeopleSoft Application Information
#include 'setup32.sqc'   ! Printer and Page-Size Initialization
#Include 'curdttim.sqc'  ! Get-Current-DateTime procedure
#Include 'datetime.sqc'  ! Routines for date and time formatting
#Include 'stdapi.sqc'    ! Update Process API
#Include 'number.sqc'    ! Routines to format numbers
```

DTX-1008 at 2

**.sqc files  = Oracle Source Code Files**

87

**The Evidence Shows rsiqtrtx.sqr Was A "One Version For All Clients" Derivative Work Developed For An "Initial Set Of Clients In 2018" Using Testing In Santa Clara Valley Water District's Environment, Which Rimini Then Sent Directly To Home Shopping Network And Rockefeller In 2019**

**Develop rsiqtrtx.sqr**

```
Write rsiqtrtx.sqr on Rimini systems
to modify PeopleSoft software, which
was "one version for all clients"
(OREX_0052 at 2; OREX_0053)
```

**Test in SCVWD's environment**

```
Test rsiqtrtx.sqr in Santa Clara Valley Water
District's PeopleSoft environment OREX_0127 at 1;
Trial Tr. 312:14-19 (Frederiksen-Cross)
```

**Send to other clients**

```
Send to initial set of
clients in 2018
```

**New clients join**

```
New clients, including Rockefeller
and Home Shopping Network, join
Rimini and need the update
```

**Implement for new clients**



88

## Rimini Is Focusing Only On What Happened After The Already Developed rsiqtrtx.sqr Derivative Work Was Sent To Rockefeller And Home Shopping Network For Implementation



**Whether The rsiqtrtx.sqr File Was Tested In Home Shopping Network's And/Or Rockefeller's Environment After It Was Delivered Is Irrelevant Because The Violation Of The Injunction Had Already Occurred**



**Barbara Frederiksen-Cross**

Trial Tr. 295:5-13

Q   Assuming Rimini did test the HCM200105 update in both the environments of Rockefeller Group International and Home Shopping Network, would that change your opinion regarding cross-use with respect to this update?

A   **No because they were still being provided an update that already existed in advance of that test.** Any testing done after that, unless it was followed by subsequent development, would not be in any way indicative the development occurred in in those environments.

90

## The Apply Update Logs Do Not Show The rsiqtrtx.sqr File Was Tested In Home Shopping Network's Or Rockefeller's Environments

Q   And so what, if anything, does [Exhibit 1009, the apply update log] tell you about what HCM200105 was tested for Home Shopping Network?

**A   It was tested and it applied successfully.**

Q   Let's take a look at Exhibit 1013, which was pre-admitted.  Now, what is this document?

**A   So this is also an apply log.**

Q   So, in total, this document, Exhibit 1013, what does it tell you about whether HCM200105 was tested for Rockefeller Group International?

**A   It tells me it was successfully tested and applied.**



**Brenda Davenport**
Trial Tr. 868:4-869:19

Q   But the apply update tool, only shows that the file is placed in the customer's development or QA environment. And then the testing is done remotely by QA engineers. Isn't that true?

A   Yes. We go in and VPN into a client's specific environment and test it.

**Q   And so the apply update logs only show that the file was updated to the QA environment, right?**

**A   It shows which client and what was applied.**

**Q   And to get any more information about the actual QA testing, you would have to look outside of that apply update log, correct?**

**A   You would need to look in Spira, yes, the environment spreadsheet.**

**Brenda Davenport**
Trial Tr. 897:7-20

91

## The Environment Spreadsheet Does Not Credibly Show The rsiqtrtx.sqr File Was Tested In Home Shopping Network Or Rockefeller's Environments Before Delivery

| Client Name | Client Code | Application R | Client Tools | Last Oracle Updat | Client Type | Developer | Status | Tester | Status2 |
|---|---|---|---|---|---|---|---|---|---|
| Pikeville Medical Center,inc | PKV | 9.2 | 8.54.26 | 2018-C | Kanban | Yaswanth | Completed | Morarji | Completed |
| Novant Health | NOV | 9.2 | 8.55.14 | 2018-E | Kanban | Linda | Completed | Sara | Completed |
| Erickson Living Management,LLC | ELV | 9.1 | 8.54.21 | 2019-A | Kanban | Sarath | Completed | Vamsi | Completed |
| Matte,Inc | MAL | 9.2 | 8.56.05 | 2019-A | Kanban | Padmaja/srija | Completed | Sarath | Completed |
| NiSource Corporate Services Company | NSR | 9.1 | 8.51.09 | 2019-A | Kanban | Yaswanth | N/A | | N/A |
| Texas Childerns Hospital | TCH | 9.1 | 8.52 | 2019-A | Scrum | RAM | Completed | RK | Completed |
| Hospital Sisters Health System | HSH | 9.2 | 8.57.05 | 2019-B | Kanban | | N/A | | N/A |
| Home Shopping Network | HSP | 9.1 | 8.54.07 | 2019-B | Kanban | Yaswanth | Completed | Balamani | Completed |
| Rockefeller Grouo International | RKF | 9.2 | 8.54.13 | 2019-B | Kanban | Sarath | Completed | Savithri | Completed |

DTX-1004 at 2



Q   The "environment spreadsheet" doesn't indicate when the testing would have occurred, does it?

A   **That would be in Spira.**

Trial Tr. 913:21-23 (Davenport)

There is no record in Spira for testing in Home Shopping Network's environment

92

## The Spira Log Shows That The rsiqtrtx.sqr File Was Not Tested In Home Shopping Network's Environment Before Delivery; It Was Only Tested In Rockefeller's Environment





**"We keep very detailed records."**

Trial Tr. 790:13 (Benge)

OREX_0127 at 4, 5

93

## Rimini Believes It Is Allowed To Violate Paragraphs 4 And 6 Of The Injunction If An Update "Was Not Copied From A Prototype Client To Another Client"

Rimini is arguing that it can use derivative works developed for clients in 2018 for new clients  after 2018

- Rimini says there is no cross-use if the cross-use is to new clients

Rimini is even arguing that it can use 2018 files to create one version for all future clients