BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:    202.223.7300
Facsimile:    202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Plaintiffs Oracle USA, Inc.,
Oracle America, Inc., and Oracle
International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE USA, INC.; a Colorado corporation; ORACLE AMERICA, INC.; a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>            Plaintiffs,<br><br>    v.<br><br>RIMINI STREET, INC., a Nevada corporation; and SETH RAVIN, an individual,<br><br>            Defendants. | **Case No. 2:10-cv-00106-LRH-VCF**<br><br>**ORACLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

# TABLE OF CONTENTS

**Page**

ORACLE'S PROPOSED FINDINGS OF FACT ........................................................................ 1

I.   RIMINI ACTED IN BAD FAITH AND FAILED TO TAKE ALL
     REASONABLE STEPS TO COMPLY WITH THE INJUNCTION. ............................... 1

II.  ORACLE ESTABLISHED TEN INJUNCTION VIOLATIONS BY CLEAR AND
     CONVINCING EVIDENCE .................................................................................... 2

     A.   The History of the Case and the Plain Language of the Injunction Establish
          that JD Edwards "Source Code" Includes "Open" Code (Violation No. 7) .......... 2

     B.   Rimini's "Open Code" Arguments Show Its Bad Faith ...................................... 5

     C.   Rimini Has PeopleSoft Code and Documentation on Its Systems and Other
          Examples Showing Lack of Substantial Compliance (Violation No. 1) ............... 8

          1.   psptaxdt.dms (R.R. Donnelley) ............................................................ 8

          2.   PeopleSoft Documentation (G6 Hospitality) ........................................ 9

          3.   PeopleSoft Documentation (Texas Children's Hospital) ......................... 9

          4.   psptcalc.lis Source Code Compilation (Evergreen Support) .................... 10

          5.   gettxdta.sqc and getstdta.sqc (Guest Services) .................................. 10

          6.   PeopleSoft Tax Files (University of Oklahoma Health Sciences
               Center) ........................................................................................... 10

          7.   Rimini's Generic Salesforce Warning and Incomplete Quarantine ......... 11

     D.   Rimini Cross-Used PeopleSoft Environments Associated with the City of
          Eugene to Develop and Test the HCM200049 Update for Customers
          Spherion and Smead (Violation No. 4) ............................................................ 12

     E.   Rimini Cross-Used PeopleSoft Environments Associated with the City of
          Eugene to Develop and Test the HCM200049 Update for Matheson
          Trucking (Violation No. 2) ............................................................................... 14

     F.   Rimini Cross-Used PeopleSoft Environments Associated with the City of
          Eugene to Fix a W-2 Printing Bug for Johnson Controls (Violation No. 3) ......... 16

     G.   Rimini Copied Protected Expression from PSPTARRY.CBL into
          RSPCMPAY.CBL (Violation No. 5) ............................................................... 18

**TABLE OF CONTENTS**
(continued)

Page

H.   Rimini Created a Derivative Work 1099 Update (RS18F07) on Its Systems and Through Cross-Use of Customer Environments (Violation No. 6) ............... 20

I.   Rimini Developed a "One Code for All" File, rsiqtrtx.sqr, as Part of HCM200105 and Supplied the File to Rockefeller Group International and Home Shopping Network (Violation No. 10) ....................................................... 22

J.   Rimini Copied JD Edwards Source Code into Its Technical Specification (Violation No. 9) ................................................................................................. 23

K.   Rimini Unlawfully Reproduced the Oracle Database File prvtsidx.plb (Violation No. 8) ................................................................................................. 24

III.   CONTEMPT AND FURTHER REMEDIAL ACTIONS ARE WARRANTED ............. 25

ORACLE'S PROPOSED CONCLUSIONS OF LAW ............................................................. 25

A.   Violation 7 ......................................................................................................... 25

B.   Violation 1 ......................................................................................................... 26

C.   Violations 2–4 ................................................................................................... 26

D.   Violation 5 ......................................................................................................... 28

E.   Violation 6 ......................................................................................................... 29

F.   Violation 10 ....................................................................................................... 30

G.   Violation 9 ......................................................................................................... 30

H.   Violation 8 ......................................................................................................... 30

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Antonick v. Elec. Arts, Inc.*,
   841 F.3d 1062 (9th Cir. 2016) ............................................................................... 28

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. C 10-3428 PSG, 2012 WL 13170064 (N.D. Cal. July 13, 2012) ..................... 28

*Computer Assocs. Int'l v. Quest Software, Inc.*,
   333 F. Supp. 2d 688 (N.D. Ill. 2004) ..................................................................... 29

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v. Countrywide Fin.
   Corp.*,
   984 F. Supp. 2d 1021 (C.D. Cal. 2013) .................................................................. 29

*Inouye v. Kemna*,
   504 F.3d 705 (9th Cir. 2007) .................................................................................... 7

*Micro Star v. FormGen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ................................................................................. 29

*Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.*,
   974 F.2d 502 (4th Cir. 1992) ................................................................................... 26

*Oracle USA, Inc. v. Rimini St., Inc.*,
   879 F.3d 948 (9th Cir. 2018) ............................................................................... 8, 30

*In re Palmer*,
   207 F.3d 566 (9th Cir. 2000) .................................................................................... 7

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) ................................................................................... 28

*United States v. Patterson*,
   878 F.3d 215 (6th Cir. 2017) ................................................................................... 25

*W. Water Mgmt., Inc. v. Brown*,
   40 F.3d 105 (5th Cir. 1994) ..................................................................................... 26

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Oracle USA, Inc., Oracle America, Inc., and Oracle International Corp. ("Oracle") submit the following proposed findings of fact and conclusions of law.

### ORACLE'S PROPOSED FINDINGS OF FACT

**I.     RIMINI ACTED IN BAD FAITH AND FAILED TO TAKE ALL REASONABLE STEPS TO COMPLY WITH THE INJUNCTION**

1.     As directed by its CEO Seth Ravin, Rimini took the position that, with a few minor exceptions not material here, the Injunction had "no impact" on Rimini's operations or support processes.  OREX_2 at 1; OREX_19 at 1-2; OREX_347 at 3; DTX-19; Tr. 745:1-6 (Benge); OREX_1357 (Ravin Dep. 158:20-159:18).

2.     Rather than accept responsibility for its prior illegal conduct, Rimini discussed internally whether the Court was "out to get" it, and told customers that the Court was "sold a bill of goods" and the Ninth Circuit would reverse the Injunction (which the Ninth Circuit declined to do).  OREX_349 at 1; OREX_350 at 1; OREX_1356 (Grady Dep. 109:7-17, 112:24-113:09).

3.     Rimini's CEO, General Counsel, and executives internally declared that the Injunction was ambiguous.  OREX_2 at 1; OREX_151 at 7; OREX_1357 (Ravin Dep. Tr. 162:16-163:13); DTX-17 at 2-3.  But Rimini never sought guidance from the Court to ensure it appropriately complied.

4.     Rimini created an "Acceptable Use Policy" (AUP) to help protect Oracle's intellectual property (OREX_17), but: (a) the AUP did not prohibit conduct enjoined by the Injunction (*id.*; Tr. 756:13-759:16 (Benge)); (b) Rimini's engineers do not understand what the AUP prohibits (OREX_1360 (Mandla Dep. 247:07-251:04 (excerpted))); and (c) Rimini did not promptly discipline AUP violations (Tr. 753:5-754:3, 831:5-11 (Benge)).

5.     Despite partially quarantining 17 of its "one code for all files," Rimini continued to provide updates and support for versions of those cross-used PeopleSoft files that Rimini had already distributed to customers.  Tr. 803:7-12 (Benge); DTX-113 at 2-3; DTX-302 at 2.

6.     The trial showed that the violations found here were not isolated and instead derive from business practices that violate the Injunction.  Rimini revealed at trial that its JD Edwards support business depends on copying JD Edwards "source code" despite the clear prohibition of

that conduct in Paragraph 8 of the Injunction (Violation 7).   Likewise, Rimini's violations are drawn from other practices that Rimini has decided it may continue after the Injunction, including "informal" delivery of PeopleSoft updates to customers that are first tested in easy-to-access environments of another customer (Violations 2-4); direct copying of Oracle code based on the premise that Rimini may now challenge Oracle software as not original or copyright protected (Violation 5); using an environment associated with one customer to develop and test updates and fixes that are then sent directly to later, new customers (Violations 6, 10); and copying JD Edwards source code into technical specifications as long as the code is not run (Violation 9). Rimini will continue to violate the Injunction in the same manner without action from the Court.

7.      Mirroring Violation 1, Oracle's expert also identified 934 PeopleSoft files with copyright warnings on Rimini's system, a fact confirmed by Rimini's expert Professor Astrachan. *Infra* Section II.C.7.  Rimini's expert was also told by Rimini's Assistant General Counsel that Rimini had already known about these files.  Tr. 1043:14-1044:7, 1045:14-23, 1048:2-10 (Astrachan).  Rimini provided no explanation at trial about what it did in response to almost 1000 potential violations of its Acceptable Use Policy and the Injunction.

8.      Despite agreeing it was "very clear" that Rimini "can't use one client's environment for another client" (Tr. 760:7-761:3 (Benge)) based on the language of the Injunction ("unless *solely* in connection with work for a specific customer"), Rimini continued to use one customer's environment to develop and test updates and fixes that were then sent directly to other customers, including later new customers, in violation of Paragraphs 2(a), 4, and 6 of the Injunction.  *Infra* Violations 2, 3, 4, 6, 10.

## II.     ORACLE ESTABLISHED TEN INJUNCTION VIOLATIONS BY CLEAR AND CONVINCING EVIDENCE

### A.     The History of the Case and the Plain Language of the Injunction Establish that JD Edwards "Source Code" Includes "Open" Code (Violation No. 7)

9.      In opposing summary judgment in *Rimini I*, Rimini argued that it "typically does not access the source code of the local J.D. Edwards."  ECF No. 266 at 23.

10.     In its February 2014 summary judgment order, the Court found that the Giant Cement JD Edwards license (OREX_67) "does not permit Rimini to access the software's source

2

1  code to carry out development and testing of software updates," but found a disputed issue of fact

2  as to "whether Rimini accessed the software's source code." ECF No. 474 at 22-23.

3       11.    Evidence presented at the jury trial showed that Rimini accessed and copied JD

4  Edwards source code. ECF No. 785 at 182:5-24 (Oracle's Expert Prof. Davis discussing

5  "running" and "making some changes" to code); ECF No. 792 at 668:15-23 (Rimini's Mr. Ravin

6  explaining that Rimini's support process was to "go into the source code, which is the code of the

7  application, figure out what's wrong, design a change create a fix, right, in other words, change

8  the code"); ECF No. 862 at 3038:17-3041:20 (Rimini's Mr. Zorn discussing additional labor

9  costs under non-infringing, remote model and "availability of source code").

10       12.    The Court instructed the jury that "the J.D. Edwards software license agreements"

11  did *not* authorize Rimini "to make copies of the J.D. Edwards software application and

12  documentation to, among other things, *access the software's source code to carry out*

13  *development and testing of software updates*." ECF No. 880 at 27-28 (emphasis added).

14       13.    Rimini argues that the Injunction applies only to conduct that is illegal; here, the

15  Injunction prohibits what the jury found to be illegal.  The jury found that Rimini infringed

16  Oracle's copyrighted JD Edwards software by copying it "in a manner not authorized by the

17  terms of the J.D. Edwards software license agreements that the Court has explained."  ECF No.

18  896 (Jury Verdict) at 2 (Question 2).

19       14.    On October 11, 2016, the Court permanently enjoined Rimini from "copy[ing] or

20  access[ing] JD Edwards software source code." ECF No. 1065, ¶ 9.  Days later, Rimini's

21  President, Sebastian Grady, stated that "most of [Rimini's] JDE work doesn't even touch source

22  code. It is configurations and other things."  OREX_65.

23       15.    On appeal, Rimini did not raise the issue of whether it could lawfully access

24  source code, nor did Rimini challenge the relevant jury instruction.  The Ninth Circuit affirmed

25  the jury's verdict regarding JD Edwards copyright infringement.  ECF No. 1111.

26       16.    Following Rimini's appeal, the Court issued a revised Injunction in August 2018

27  that took effect on November 6, which also enjoined that "Rimini Street shall not copy or access

28  J.D. Edwards software source code to carry out development and testing of software updates."

ORACLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   ECF No. 1166, ¶ 8; ECF No. 1180.  On November 10, 2018, Rimini's V.P. of Global JD Edwards

2   Service Delivery, Ray Grigsby, told his team that Rimini could continue to copy "open" JD

3   Edwards code, not "closed" JD Edwards code, and did not "need to make any changes to current

4   support processes for JD Edwards ('JDE') to comply with the injunction."  OREX_2 at 1.

5        17.   Rimini does not dispute that it regularly copies JD Edwards source code (referred

6   to by Rimini during these proceedings as "open code") when it provides support to its JD

7   Edwards customers. Tr. 1128:24-1132:2 (Mackereth); Tr. 298:18-310:5, 320:2-322:25

8   (Frederiksen-Cross, "BFC").  Rimini copies J.D. Edwards source code whenever it (1) uses

9   Object Management Workbench or similar tools to check out, check in, or display a source code

10  file and (2) promotes JD Edwards source code between environments. Tr. 320:2-324:11 (BFC).

11       18.   "Source code" means "human-readable code;" object code refers to compiled, non-

12  human-readable code. Tr. 300:14-301:25, 308:10-309:3, 316:24-320:1 (BFC); Tr. 1021:5-16

13  (Astrachan); Tr. 1331:25-1332:15 (Lanchak); OREX_92 at ¶ 309; OREX_60; OREX_139 at 413.

14       19.   Rimini does not access or decompile, and there is no evidence that Rimini ever

15  accessed or decompiled, JD Edwards "object code," referred to by Rimini as "closed code."  Tr.

16  307:7-308:1 (BFC); Tr. 1133:20-1134:17, 1151:7-12, 1235:12-1236:21 (Mackereth).

17       20.   A separate provision in the Giant Cement JD Edwards license (at issue in the

18  Court's ruling on summary judgment) prohibits decompiling and reverse engineering JD Edwards

19  "closed" code.  OREX_67 at 1, § 7(i). This provision was never discussed at summary judgment

20  or in the *Rimini I* trial. ECF Nos. 246 (Oracle MPSJ), 266 (Rimini Opp.), 284 (Oracle Reply);

21  ECF Nos. 781, 785, 790, 792, 794, 801, 804, 815, 820, 822, 840, 842, 854, 862 (Trial Tr.).

22       21.   The term "J.D. Edwards software source code" in Paragraph 8 of the Injunction

23  refers to the human-readable, "open" code in JD Edwards because: (1) the plain language of the

24  Injunction expressly prohibits copying "source code"; (2) the parties do not dispute that

25  (a) "source code" is human-readable code and (b) object code ("closed code") is not human

26  readable; and (3) Rimini's copying of the JD Edwards "open" software source code was at issue

27  in *Rimini I* and decided by the jury, whereas Rimini's copying of JD Edwards "closed" object

28  code was not at issue in *Rimini I* and was not decided by the jury.

4

**B.      Rimini's "Open Code" Arguments Show Its Bad Faith**

22.      *First*, between entry of the Injunction in October 2016 and reinstatement in November 2018, Rimini interpreted the Injunction as applying to JD Edwards "open" code—consistent with the Injunction's plain terms.  OREX_70 (referencing inability to access source code during the injunction); Tr. 1205:7-1206:8 (Mackereth discussing OREX_70); OREX_1357 (Ravin Dep. 160:05-164:24) (Rimini's 2016 interpretation of the injunction); Tr. 1139:9-20, 1202:18-1203:3, 1232:11-18 (Mackereth admitting many at Rimini were confused about the Injunction); *cf.* OREX_58; Tr. 325:10-326:22 (BFC).  After November 2018, Rimini reinterpreted the Injunction to apply only to JD Edwards "closed" code without seeking the Court's guidance and even after notifying its JD Edwards team that it would "seek further guidance from the District Court, as necessary, at the appropriate time." OREX_2 at 1-2.  No one at Rimini has accepted responsibility for not coming to the Court with this reinterpretation of the Injunction. Instead, at the OSC hearing, Rimini argued it would be "incredulous" for the Injunction to apply to what Rimini now calls "open code." Tr. 1139:21-1140:12, 1232:7-10 (Mackereth).

23.      *Second*, based on its argument that the Injunction only prohibits illegal conduct, Rimini has flouted the plain language of the Injunction—which is based on conduct found illegal—and now seeks to relitigate what was already found to be illegal by this Court and a jury (and affirmed by the Ninth Circuit).  Rimini continues to build its illegal business, including JD Edwards support, on copyright violations that are only revealed in Court.  ECF No. 1164 at 6, 14.

24.      *Third,* Rimini has consistently referred to what it calls JD Edwards "open" code as "source code." OREX_70 (referring to "open" code as "source code"); Tr. 1205:5-1206:2 (Mackereth); OREX_68 at 4 (referring to "open" code as "source code"); OREX_69 at 1 ("of 155 cases only 3 required source code changes"); OREX_62 at 4; Tr. 1245:6-1248:14 (Mackereth).

25.      *Fourth*, there is no merit to Rimini's argument that "source code" can only include JD Edwards "closed" code because the entire JD Edwards support industry would not be able to operate if the Injunction is interpreted to prohibit copying JD Edwards "open" code.

      a.   Only Rimini has been determined to be violating JD Edwards copyrights in its support practices and is subject to the Injunction.

b. After entry of the Injunction in 2016, Rimini supported JD Edwards customers using an "over the shoulder" support model; in addition, only a relatively small portion of its JD Edwards support involves copying "open" code. OREX_65; Tr. 1208:24-1209:9 (Mackereth discussing OREX_65); OREX_1357 (Ravin Dep. 160:5-164:24) (describing "over the shoulder" JD Edwards support model during the 2016 injunction); OREX_1339 (Rimini: the customer "is fine even IF we have to look over their shoulder on the JDE issues that require source code changes"); Tr. 1218:23-1220:1 (Mackereth discussing OREX_1339); OREX_69.

c. Rimini's industry expert admitted that his opinions regarding Rimini's ability to support JD Edwards customers without copying JD Edwards source code were not based on an analysis of Rimini's support processes, and that it would be possible for Rimini to provide some level of support. Tr. 1333:2-1335:22 (Lanchak).

d. Rimini has not established that Spinnaker needs to copy JD Edwards "open code" to support JD Edwards customers. Rimini's industry expert acknowledged that his opinion regarding Spinnaker is not based on any analysis of Spinnaker's current or historical support processes. Tr. 1336:8-16 (Lanchak).

e. Rimini has not established that any other JD Edwards support provider would be foreclosed from supporting JD Edwards if the plain language of the Injunction is enforced. Rimini's industry expert acknowledged that his opinions are not based on any knowledge of the industry support providers' partner and license agreements with Oracle, and what rights those agreements give to those support providers separate and apart from any customer license. Tr. 1337:19-1342:15 (Lanchak). He also conceded that other support providers likely had Oracle partner agreements and he was not knowledgeable about any Oracle agreements with other industry support providers. *Id.* 1342:16-1344:18 (Lanchak).

26. *Fifth*, Oracle's determination in 2011 that Spinnaker's JD Edwards support processes did not infringe Oracle's JD Edwards copyrights fails to estop Oracle from arguing that the Injunction prohibits Rimini from copying JD Edwards "open" code.

6

a.  Rimini, not Spinnaker, is an adjudicated infringer of JD Edwards copyrights and is subject to the Injunction.  If there are other unlicensed infringers of Oracle copyrights, that is irrelevant to Rimini's contempt.

b.  Rimini has not established that Oracle ever stated it was permissible for Spinnaker to copy JD Edwards "open code."  Rimini points to a single sentence from a 2011 declaration of a Spinnaker employee and a 2011 letter from Oracle's counsel stating that, based on Oracle's limited review of Spinnaker's support processes, Oracle did not find that Spinnaker's practices infringe Oracle's copyrights. DTX-733 ¶ 14 (Spinnaker Declaration); Tr. 1336:8-1337:8 (Lanchak).  These materials nowhere establish that Spinnaker copied JD Edwards "open code," as opposed to an "over the shoulder" model, as noted in the next sentence of the declaration.  *Id.*

c.  Rimini also has not established which JD Edwards licensees Spinnaker was supporting in 2011, the terms of their JD Edwards licenses, or whether Spinnaker continued those same processes after 2011.  Tr. 1337:9-18 (Lanchak).

d.  Even if Rimini had established all of those required facts, Oracle would not be estopped from asserting its rights because no doctrine of estoppel or issue preclusion applies. *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000) (elements of collateral estoppel); *Inouye v. Kemna*, 504 F.3d 705, 709 n.3 (9th Cir. 2007) (settlement in prior case had "no final judgment on the merits" and thus "has no issue preclusion effects here").

27.    *Sixth*, Rimini's argument that reading "J.D. Edwards software source code" in the Injunction to include both "open" and "closed" code would make Paragraph 10 of the Injunction superfluous is unavailing.  Unlike Paragraph 8, Paragraph 10 of the Injunction prohibits cross-use of JD Edwards software and also covers derivative works, software, and documentation. ECF No. 1166, ¶ 10.  Rimini and its industry expert both agree it is possible to provide JD Edwards support without copying what Rimini calls JD Edwards "open code"; Rimini could therefore violate Paragraph 10 of the Injunction without violating Paragraph 8.  Tr. 329:5-19 (BFC).

28.    *Seventh*, Rimini claimed (for the first time) during closing argument that the Ninth

7

1    Circuit's ruling "*would not preclude Rimini from creating a development environment for a*

2    *licensee*, for JDE, and, again, it is undisputed that JDE contains both open and closed code so you

3    cannot create a JDE software environment without copying both of those components." Tr.

4    1529:13-20 (emphasis added); ECF No. 1527-7; DDX-855. Rimini misstates the Ninth Circuit's

5    ruling. When the Ninth Circuit stated that the JD Edwards licenses "would not preclude Rimini

6    from creating a development environment for a licensee," *Oracle USA, Inc. v. Rimini St., Inc.*,

7    879 F.3d 948, 958 (9th Cir. 2018), it was quoting from the Court's jury instructions regarding

8    Rimini's authorization to create an *archival* copy of JD Edwards software (ECF No. 880 at 27:25-

9    28:10). That jury instruction was clear that the archival copy license provision "does not mean

10   that a third party like Rimini Street is authorized to make copies of the J.D. Edwards software

11   application and documentation to, among other things, access the software's source code to carry

12   out development and testing of software updates." *Id.* And following the Ninth Circuit's

13   affirmance, this Court entered the Injunction.

14       **C.**    **Rimini Has PeopleSoft Code and Documentation on Its Systems and Other**
                **Examples Showing Lack of Substantial Compliance (Violation No. 1)**
15

16       29.    The Court already determined that Rimini violated Paragraph 5 of the Injunction

17   by maintaining the PeopleSoft "source code file" psptaxdt.dms and "copyrighted documentation

18   and PeopleSoft Payroll update documents" on its systems after it received these files from its

19   customers.  ECF No. 1459 at 22-23.

20              **1.    psptaxdt.dms (R.R. Donnelley)**

21       30.    Rimini customer R.R. Donnelley sent a copy of Oracle's psptaxdt.dms PeopleSoft

22   source code file containing Oracle copyright warnings to Rimini on March 27, 2019 as an email

23   attachment and as part of a Salesforce support request.  Tr. 141:4-142:15 (BFC); OREX_13;

24   OREX_227; OREX_1337.  The uploading to Salesforce or emailing to Rimini of any file creates

25   a copy of that record on Rimini's systems.  Tr. 174:3-16 (BFC).

26       31.    The psptaxdt.dms file on Rimini's systems is substantially similar to an Oracle

27   produced version of the file.  *Compare* OREX_1337 and OREX_227 *with* OREX_221;

28   OREX_20 (side-by-side comparison); Tr. 134:1-13, 136:6-137:17 (BFC).

8

32.     Rimini opened the psptaxdt.dms file, analyzed it, and used it to resolve the customer's Salesforce case, thus creating a further reproduction of the file.  OREX_13 at 9; Tr. 142:16-143:24, 144:3-145:15 (BFC); Tr. 835:6-11, 835:15-838:2 (Benge).

33.     Rimini concedes it violated its AUP by failing to (1) instruct R.R. Donnelley not to upload additional PeopleSoft source code files and (2) report the presence of Oracle files on its systems to Rimini security.  Tr. 835:6-11, 837:8-838:2 (Benge); Tr. 145:16-146:18 (BFC).

### 2.     PeopleSoft Documentation (G6 Hospitality)

34.     On November 27, 2018, Rimini requested "Functional user documentation" from a PeopleSoft payroll update from G6 Hospitality.  Tr. 149:1-15 (BFC); OREX_4.  G6 Hospitality responded by emailing eight PeopleSoft documentation files, which Rimini then forwarded to two additional Rimini employees, including Jim Benge, creating additional copies of the documentation.  Tr. 149:16-150:21 (BFC); Tr. 711:10-712:5 (Benge); OREX_4-OREX_12.

35.     Rimini did not quarantine the files or instruct G6 Hospitality not to send additional files, and no one at Rimini reported the files on Rimini systems.  Tr. 151:14-152:15 (BFC).

36.     Jim Benge conceded that Rimini it violated its AUP by (1) internally forwarding PeopleSoft documentation and (2) failing to report these Oracle files on Rimini's systems.  Jim Benge was not disciplined for his failure to report the 2018 violation until 2020; even then, he received only a warning.  Tr. 715:7-717:8, 831:1-19 (Benge).  He was promoted in 2021.

### 3.     PeopleSoft Documentation (Texas Children's Hospital)

37.     Rimini employee Thomas Glazer received two pieces of PeopleSoft payroll documentation from Texas Children's Hospital on January 18, 2019.  Tr. 152:22-155:16, 157:25-159:9, 174:3-6 (BFC); OREX_94; OREX_95; DTX_110.

38.     Mr. Glazer thanked the customer for providing the files and forwarded them to additional Rimini employees.  Tr. 157:25-159:17 (BFC); DTX_110.  Ten months later, on November 30, 2019, Mr. Glazer saved the PeopleSoft documentation to Rimini's internal ShareFile system.  Tr. 154:13-156:24, 159:2-9 (BFC); OREX_94-OREX_97; DTX_110.

39.     Mr. Benge conceded that Rimini violated its AUP by failing to (1) instruct Texas Children's not to send PeopleSoft documentation, (2) report the presence of Oracle files on

9

Rimini's systems, and (3) quarantine the files. He admitted it is "very clear" that Rimini needs to instruct customers not to send Oracle files. Tr. 832:5-15 (Benge); Tr. 160:23-161:11 (BFC).

#### 4.    psptcalc.lis Source Code Compilation (Evergreen Support)

40.    Rimini asked for and received a copy of Oracle's PeopleSoft file psptcalc.lis from Evergreen Support. Tr. 163:9-166:2 (BFC); OREX_98; OREX_99.

41.    The psptcalc.lis file is over 260 pages long and contains source code from numerous Oracle files, dozens of Oracle copyright notices, and Oracle's protected expression. Tr. 168:12-14, 171:11-172:6 (BFC); Tr. 838:15-839:3 (Benge); OREX_99.

42.    Mr. Benge conceded that Rimini violated its AUP by opening and using the psptcalc.lis file to support this customer. Tr. 839:4-19 (Benge); Tr. 163:9-170:21 (BFC); OREX_98; OREX_100. Rimini did not quarantine the file. Tr. 171:7-172:20 (BFC).

#### 5.    gettxdta.sqc and getstdta.sqc (Guest Services)

43.    Rimini customer Guest Services uploaded the PeopleSoft source code file gettxdta.sqc to Rimini's Salesforce system. Tr. 172:21-174:13 (BFC); OREX_103 at 4.

44.    Three weeks later, Guest Services uploaded another PeopleSoft source code file, getstdta.sqc, to Rimini's Salesforce system as part of an additional Salesforce case. Tr. 178:23-179:12 (BFC); *compare* OREX_104 at 1 *with* OREX_103 at 4. Rimini failed to instruct Guest Services not to send additional files. Tr. 177:25-178:14, 183:9-15, 184:3-7 (BFC).

45.    The gettxdta.sqc and getstdta.sqc files are substantially similar to versions produced by Oracle; both contain Oracle's protected expression. *Compare* OREX_231 *with* OREX_222; OREX_201 (side-by-side comparison); Tr. 177:11-24 (BFC); *compare* OREX_233 *with* OREX_213; OREX_203 (side-by-side comparison); Tr. 180:7-182:25 (BFC).

#### 6.    PeopleSoft Tax Files (University of Oklahoma Health Sciences Center)

46.    Rimini received copies of PeopleSoft source code files tax920us.txt, tax922us.txt, tax920.txt, tax921us.txt, and tax923us.txt uploaded to Salesforce by University of Oklahoma Health Sciences Center. Tr. 184:14-185:21, 188:3-189:20 (BFC); OREX_0105 at 6, 11-13.

47.    The tax920us.txt and tax922us.txt files on Rimini's systems are substantially similar to Oracle-produced versions of the files. *Compare* OREX_232 *with* OREX_216;

ORACLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1   OREX_202 (side-by-side comparison re tax920us.txt); *compare* OREX_229 *with* OREX_214;

2   OREX_199 (side-by-side comparison re tax922us.txt); Tr. 187:3-188:2, 190:15-22 (BFC).  The

3   tax920.txt and tax923us.txt files on Rimini's system were identical to Oracle produced versions.

4   The tax921us.txt file on Rimini's system was a 99.77% match to Oracle's file.  Each contained

5   Oracle's protected expression.  Tr. 198:22-199:7 (BFC); *compare* OREX_234 *with* OREX_233;

6   *compare* OREX_235 *with* OREX_217; *compare* OREX_236 *with* OREX_224.

7        48.    Rimini used the Oracle tax files to troubleshoot problems reported by the

8   customer.  Tr. 192:9-194:8, 199:8-201:21 (BFC); OREX_105 at 6-7, 13, 14.

9            **7.    Rimini's Generic Salesforce Warning and Incomplete Quarantine**

10       49.    Rimini's Salesforce system includes a generic message to customers "not [to]

11   upload any third party software … or any other third party intellectual property or confidential

12   data to this client portal or send such information to Rimini Street via email, unless Rimini Street

13   has demonstrated authorization for Rimini Street to possess a copy of such materials."  DTX-

14   41A; Tr. 581:4-582:3 (BFC).

15       50.    Rimini's generic message is not effective in preventing customers from uploading

16   Oracle's copyrighted materials to Rimini's systems.  Tr. 581:4-13 (BFC).  It also confuses

17   customers by stating that Rimini could demonstrate authorization when asking customers to send

18   copyrighted files.  Tr. 582:12-21 (BFC).

19       51.    Rimini did not quarantine Oracle's copyrighted materials until August 23 and 28,

20   2019, nearly a year after the Injunction took effect in November 2018 and only *after* Rimini

21   agreed to produce Salesforce records to Oracle in this proceeding.  Tr. 1185:10-1186:6, 1186:22-

22   1188:9, 1189:10-1190:17 (Mackereth); Tr. 1355:19-1357:15 (BFC); OREX_13; OREX_105.

23       52.    Ms. Frederiksen-Cross identified 934 documents with Oracle copyright warnings

24   on Rimini's systems.  Tr. 115:24-117:2, 1351:14-1353:5 (BFC).  Professor Astrachan confirmed

25   these numbers and opined that 844 of the 934 files were from customers and that Rimini already

26   knew about these files.  Tr. 1043:14-1044:7 (Astrachan).  The files Professor Astrachan viewed

27   were not quarantined, and he saw no documentation of any quarantine.  Tr. 1048:16-1049:5

28   (Astrachan).  Rimini identified no enforcement of its AUP with respect to these files.

11

**D.     Rimini Cross-Used PeopleSoft Environments Associated with the City of Eugene to Develop and Test the HCM200049 Update for Customers Spherion and Smead (Violation No. 4)**

53.     Rimini knows it "can't use one client's environment for another client."  Tr. 760:7-761:3 (Benge).  Yet Rimini cross-used the PeopleSoft environments associated with City of Eugene (COEX) to develop and test its HCM200049 update that it informally delivered to Spherion and Smead on January 25, 2019.  Tr. 255:13-256:10, 260:22-261:2 (BFC).

54.     In its *Rimini II* summary judgment order, the Court determined that PeopleSoft HRMS 8.3 (TX 5-469-032) and PeopleTools 8.48.10 (TX 7-092-819) were "installed in the City of Eugene environments WSM-H900COEX and WSM-H900COEM."  *Rimini II*, ECF No. 1253 at 49; OREX_269 at 10; OREX_274 at 1 (City of Eugene rows); OREX_259 at 3; OREX_260 at 8 (items 333 and 334 for City of Eugene); OREX_295 at 9.

55.     City of Eugene's PeopleSoft license states that the PeopleSoft software licensed to City of Eugene can be used "solely for Licensee's internal data processing operations." OREX_402 at 7, § 1.1.  The license further provides that "PeopleSoft retains title to all modifications created by Licensee as a derivative work," "Licensee may share modifications with other PeopleSoft customers only through PeopleSoft Forum," and "[e]xcept as stated above, Licensee shall have no rights to market or distribute modifications."  OREX_402 at 8, § 4.1.

56.     COEX is a Windstream-hosted PeopleSoft environment, which is easier to access than customer hosted environments.  OREX_243 at 9; OREX_246 at 4; Tr. 781:18-23 (Benge). Rimini also rated COEX as "very easy … to work with."  OREX_1349 at 76 ("1-Very Easy (Windstream)"); Tr. 781:24-782:20, 783:14-25 (Benge); OREX_1341; Tr. 273:16-274:10 (BFC); OREX_1362 (Tahtaras Dep. 160:1-162:14).  Rimini uses COEX more than other environments for development and testing.  Tr. 270:14-271:15 (BFC).

57.     Rimini's HCM200049 update consisted of "a single version of [two] GIF files and the rsi940a.sqr program for all clients."  OREX_21 at 2, 6.  The rsi940a.sqr program is a derivative work of PeopleSoft.  Tr. 479:5-480:8, 481:4-13 (BFC).

58.     Rimini's HCM200049 update relates to the 2018 version of IRS Form 940 Schedule A and a credit reduction for unemployment taxes.  Tr. 778:5-8 (Benge).  By November

12

20, 2018, the IRS published instructions for Form 940, stating that "For 2018, there is one credit reduction state (U.S. Virgin Islands)." OREX_1351 at 1; Tr. 789:16-790:4 (Benge). Rimini "rigorously" tracks what the IRS says about its tax forms. Tr. 778:17-779:2 (Benge).

59.     Consistent with the IRS's instructions, on January 15, 2019, Laurie Gardner, the head of Rimini's business analysis department, set the scope for HCM200049 to only Spherion in Rimini's Jira records. DTX-401 at 4; Tr. 657:11-18, 790:5-791:7 (Benge).

60.     On or about January 23, 2019, Rimini began attempting to fix the alignment issues associated with the Form 940 Schedule A for customers Spherion and Smead. Tr. 261:3-262:15 (BFC); OREX_21 at 8-16. On January 24, 2019, Rimini developer Don Sheffield stated that "whatever alignment issues we have with the latest version of the GIF file … we can resolve with a code change to the rsi940a.sqr program." OREX_21 at 6; Tr. 262:8-263:6 (BFC).

61.     Mr. Sheffield then developed the HCM200049 update (including code changes to rsi940a.sqr) in COEX by going "into City of Eugene's environment and ma[king] changes in City of Eugene to the sqr." Tr. 658:16-25 (Benge); Tr. 262:19-263:9 (BFC). "After developing and testing this update for City of Eugene," Rimini "made the changes in the rsi940A program on Rimini's systems." Tr. 659:15-21 (Benge). This is Rimini's practice despite its acknowledgment that modifications to an Oracle file in a customer's environment "cannot come back to Rimini systems" and must "stay within th[at] client environment." Tr. 764:12-19 (Benge).

62.     On January 24, Mr. Sheffield tested the HCM200049 update in COEX. OREX_21 at 3 ("I tested in COEX"); Tr. 787:9-20, 658:23-25 (Benge); Tr. 263:10-22 (BFC). When Mr. Sheffield tested HCM200049 in COEX, City of Eugene was not in scope to receive this update; only Spherion was in scope. Tr. 788:16-789:6 (Benge); Tr. 264:16-265:5 (BFC); OREX_21 at 2-3; DTX-401 at 4. Rimini's expert Professor Astrachan offered an incorrect demonstrative stating that the testing took place on January 25; Jim Benge also testified incorrectly that the testing took place on January 25. DDX-559; Tr. 1059:19-1062:11 (Astrachan); Tr. 668:21-669:6 (Benge).

63.     Mr. Sheffield tested HCM200049 in COEX because the Spherion and Smead "environments were inaccessible at the time," not because the City of Eugene needed the update. OREX_28 at 2; Tr. 780:5-10, 796:21-25 (Benge).

ORACLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

64.     On January 25, Mr. Sheffield "rolled the 2 GIF files and the modified version of the rsi940a.sqr program out to all US clients."  OREX_21 at 2; Tr. 659:14-21 (Benge).  To do so, Mr. Sheffield twice switched the scope in Jira for HCM200049 to all US customers and then back to Spherion.  Tr. 788:1-15, 792:3-15 (Benge); DTX-401 at 4.

65.     Only Laurie Gardner, the head of Rimini's business analysis department, had the authority to determine which customers were in scope to receive HCM200049.  Don Sheffield and Tim Pringle could not override her determination.  Tr. 793:6-17 (Benge); OREX_30 at 1-2.

66.     Rimini also tested HCM200049 in COEX and in KICX, an environment associated with customer Kichler Lighting.  Tr. 787:21-25, 797:13-24 (Benge); OREX_28 at 2.

67.     Rimini informally delivered HCM200049 to Spherion and Smead on January 25, 2019.  OREX_81; Tr. 665:3-666:19 (Benge re: Smead); OREX_82; Tr. 268:20-25, 472:3-473:6; *id.* at 667:6-16 (Benge re: Spherion). Mr. Benge did so even though Rimini "ha[d] not specifically test[ed] in SPF or SME due to issues accessing these clients."  OREX_28 at 2; Tr. 779:17-780:10, 797:16-22 (Benge); Tr. 904:22-905:2, 907:16-908:5 (Davenport: "You would have to talk to Jim [Benge]" for evidence of unit testing); Tr. 268:20-269:5 (BFC).

68.     City of Eugene never requested, needed, or received the HCM200049 update.  Tr. 781:3-8 (Benge); Tr. 269:10-12, 1361:18-21 (BFC).

69.     This violation again stemmed from a Rimini business practice, here the practice of "informal" delivery.  Rimini's QA department does not test informal delivery of updates (Tr. 904:15-21, 905:6-12, 914:17-19 (Davenport)), but believes its developers can do individual "unit" testing in an environment such as City of Eugene and then provide updates as informal deliveries to other customers as it did here.  Tr. 762:15-763:1, 763:10-14 (Benge); Tr. 1375:5-11 (BFC). Rimini justifies this practice by arguing that it will later provide testing to the customer receiving informal delivery after the update has been formally provided to other customers, *id.,* none of which changes that such informal delivery has already violated the Injunction.

**E.     Rimini Cross-Used PeopleSoft Environments Associated with the City of Eugene to Develop and Test the HCM200049 Update for Matheson Trucking (Violation No. 2)**

70.     Rimini also cross-used COEX to develop and test its HCM200049 update that it

14

1    informally delivered to Matheson Trucking on January 28, 2019.  Tr. 274:13-275:20 (BFC).  The

2    Court previously ruled that "update HCM200049, delivered to Rimini's client Matheson

3    Trucking, without any indication it was developed or tested in that client's environments, is a

4    clear violation of the permanent injunction."  ECF No. 1459 at 26.

5         71.     On January 25, 2019, Matheson Trucking opened a support case regarding the

6    same issue Rimini had just addressed for Spherion and Smead; Mr. Benge was asked to give

7    Matheson Trucking the same "[i]n formal update."  OREX_22 at 4; Tr. 805:4-14 (Benge).

8         72.     On January 28, 2019, Rimini informally delivered HCM200049 to Matheson

9    Trucking without any development or testing of that update for Matheson Trucking.  OREX_21;

10   OREX_22 at 1; OREX_84; Tr. 275:21-277:8, 809:17-25.  On the same day of January 28, when

11   Jim Benge was writing "I have absolutely no indication that HCM200049 was developed or

12   tested yet for MAT," Rimini confirmed it would not be releasing HCM200049 to all US clients:

13   "So far only 3 clients have requested the update and we have delivered it to them."  OREX_22 at

14   3; OREX_33 at 1; OREX_30 at 1.  Those three clients were Spherion, Smead, and Matheson

15   Trucking.  OREX_81; OREX_82; OREX_84.  Laurie Gardner further confirmed on January 29,

16   2019 that the "need [for this update] will be rather limited."  OREX_30 at 1.

17        73.     Rimini's cross-use in delivering HCM200049 to Matheson Trucking on January

18   28, 2019 is "the same set of facts" as its cross-use in delivering HCM200049 to Spherion and

19   Smead three days earlier on January 25: Rimini provided that "particular update, to these three

20   clients, without having developed it or tested it in their environments."  Tr. 275:3-20 (BFC).

21        74.     Even Rimini admitted that it did not conduct any QA testing before delivering

22   HCM200049 to Matheson Trucking.  Tr. 780:20-781:2, 810:1-8 (Benge).  Jim Benge also

23   admitted that when Matheson requested the update, Rimini "had already completed the

24   development" by going "into City of Eugene's environment."  Tr. 658:16-25, 731:3-11 (Benge).

25        75.     Mr. Benge asserted that Rimini performed development work for Matheson

26   Trucking that "involved running the create update folders utility, transferring the files to

27   Matheson's environment, and testing."  Tr. 731:3-11, 806:24-807:18 (Benge).  But the create

28   update folders and transfer files utilities are "just a part of the delivery process."  Tr. 1371:4-

15

1374:15 (BFC).  Ms. Frederiksen-Cross reviewed the AFW records identified by Mr. Benge and

confirmed "there is nothing in that log to indicate development or testing."  Tr. 1372:10-1373:1

(BFC).  Mr. Benge likewise agreed that "putting updates in folders" is not the same as

"developing the SQR file that makes the update run."  Tr. 807:24-808:1 (Benge).  If Rimini had

developed HCM200049 for Matheson Trucking, then there would have been no need for Rimini

to transfer that update to Matheson Trucking using its AFW tools.  Tr. 1374:16-25 (BFC).

76.    Mr. Benge also identified no evidence that Rimini unit tested HCM200049 in the

environments associated with Matheson Trucking.  The files delivered to Matheson Trucking

each have "1/25/2019 05:33" timestamps (OREX_84 at 1), establishing they were merely sent to

Matheson Trucking without any further testing from Rimini.

**F.     Rimini Cross-Used PeopleSoft Environments Associated with the City of Eugene to Fix a W-2 Printing Bug for Johnson Controls (Violation No. 3)**

77.    Rimini also cross-used COEX to fix a bug regarding the printing of a W-2 form for

customer Johnson Controls (JHN).  Tr. 277:9-13 (BFC).

78.    On January 23, 2019, Johnson Controls reported "having [an] issue generating [its]

W2 print file."  OREX_27 at 16; Tr. 277:14-278:23 (BFC).  Rimini attempted to solve this

problem by providing a "shrunken font template."  OREX_27 at 6-15; Tr. 278:24-279:12 (BFC).

79.    Rimini's "updated template" did not fix the problem because "Box 17 [was] still

off."  Rimini then investigated "reducing the pic size on the [p]rint parameters for XMLP."

OREX_27 at 5; DTX-303 at 5; Tr. 279:13-281:5 (BFC).

80.    Don Sheffield and Jai Ramachandran worked to troubleshoot Johnson Controls'

problem with W-2 Box 17: Mr. Sheffield pasted a portion of the PeopleSoft user interface from

an environment associated with the City of Eugene into an email to Mr. Ramachandran and asked

if "the 'Print Format' field" was "also blank."  OREX_27 at 2; DTX-303 at 2; Tr. 281:6-282:17

(BFC); *see also* OREX_12 at 24 (PeopleSoft screenshot); *id.* at 27 ("B999.99 (defines width of

field)").  Mr. Sheffield's PeopleSoft screenshot, which required the reproduction of PeopleSoft,

was "used as a reference point in diagnosing this particular problem."  Tr. 282:2-12 (BFC).

81.    Mr. Ramachandran confirmed that the Print Format field was blank in Johnson

16

1    Controls' environment, emailing a corresponding PeopleSoft screenshot. DTX-302 at 4.

2          82.    Mr. Sheffield, working from COEX, told Mr. Ramachandran to enter

3    "B999999.99" as the print format parameter for Johnson Controls.  OREX_23 at 3-4; OREX_27

4    at 2; Tr. 284:17-22 (BFC); DTX-302 at 2-3; DTX-303 at 1. Mr. Sheffield further stated that this

5    solution to Johnson Controls' Box 17 issue "will work" because "I tested it here locally on

6    COEX."  OREX_27 at 1; DTX-303 at 1; Tr. 639:22-24 (Benge). Mr. Ramachandran responded

7    22 minutes later that the solution worked for Johnson Controls.  DTX-302 at 2.

8          83.    Rimini's W-2 solution is cross-use, not general sharing of "know-how," because

9    (1) Rimini worked in the City of Eugene environment and obtained "very specific information

10   about what's happening in some other environment [COEX], to address the problem in a different

11   customer's environment [Johnson Controls]" (Tr. 284:3-16, 1366:25-1368:8, 1368:20-1371:3

12   (BFC)) and (2) Rimini tested its proposed solution in COEX for the benefit of Johnson Controls

13   (Tr. 283:2-6, 1365:22-1366:24 (BFC)).

14         84.    Rimini attempted to justify its unlawful cross-use by claiming that the Johnson

15   Controls bug "could be a potential problem for all new clients switching from tax960us to

16   rsi960us."  OREX_23 at 2; Tr. 635:14-19, 769:13-16 (Benge).[1]  But it was already known at the

17   time that Rimini was testing this bug fix (DTX-303) that the fix would be provided only on a

18   "case by case" basis to customers depending "on the data they report."  OREX_23.  And Rimini

19   decided to proceed on a "case by case" basis *less than an hour after* cross-using the PeopleSoft

20   software in COEX, despite Jim Benge testifying that such a decision would certainly have taken

21   more than an hour.  *Compare* OREX_27 at 1 *with* DTX-302 at 1-2; Tr. 770:17-771:18, 772:17-

22   774:5 (Benge).  This chronology confirms that Rimini made its "case by case" determination

23   before any such testing of the fix.  *Id.*

24         85.    City of Eugene never reported data indicating a problem or experienced any

25   problems with printing its W-2 forms.  Tr. 283:22-284:2, 437:6-20 (BFC); Tr. 775:23-776:1

26   (Benge).  Rimini also did not deliver the Johnson Controls bug fix to any other customers,

27   ─────────────

28   [1] The rsi960us file was on the list of quarantined files Jim Benge had sent to his team two months earlier, which could not be provided to new clients.  DTX-113; Tr. 802:21-803:23 (Benge).

1  including City of Eugene.  Tr. 641:20-22, 770:17-19 (Benge).

2  **G.  Rimini Copied Protected Expression from PSPTARRY.CBL into RSPCMPAY.CBL (Violation No. 5)**

3

4  86.    Rimini copied protected expression found in Oracle's PSPTARRY.cbl file into its

5  RSCPMPAY.cbl file.  Tr. 202:5-11, 233:23-234:5 (BFC); OREX_237; OREX_225; OREX_175.

6  Rimini stored RSPCMPAY.cbl on its systems and distributed it at least 14 times to seven

7  customers.  Tr. 202:12-203:11, 237:3-9 (BFC); Tr. 1072:20-1073:8 (Astrachan).

8  87.    Though RSPCMPAY.cbl is shorter than PSPTARRY.cbl and "provid[es] more

9  granularity in one specific area of the processing," clear and convincing evidence shows that

10  "Rimini incorporated portions of the Oracle file as it created the Rimini file."  Tr. 205:10-206:12

11  (BFC).  It is undisputed that RSPCMPAY.cbl was designed to "augment" the functionality of

12  PSPTARRY.cbl.  Tr. 203:12-204:18 (BFC); Tr. 1073:9-17 (Astrachan).  And Rimini copied

13  approximately one-third of the lines of code in RSPCMPAY.cbl from PSPTARRY.cbl.  Tr.

14  207:21-208:14 (BFC); OREX_175.  This establishes that RSPCMPAY.cbl "started, in all

15  likelihood, as a copy of" PSPTARRY.cbl.  Tr. 1388:7-1389:10 (BFC).  RSPCMPAY.cbl is also a

16  derivative work of PSPTARRY.cbl.  Tr. 220:24-221:9 (BFC).

17  88.    Ms. Frederiksen-Cross evaluated this evidence of direct copying and also

18  performed analytic dissection for substantial similarity by "look[ing] at the contents of the lines

19  that were similar, to understand whether those lines were the product of any constraint" and

20  whether they were "probative with respect to any copying."  Tr. 207:21-208:10 (BFC).

21  89.    Rimini copied protected Oracle expression in the form of variable names,

22  including "FETCH-YTD-SW," "FETCH-YTD-END," and "FETCH-YTD-START."  Tr. 210:20-

23  212:13, 221:10-222:8, 1393:12-1395:6 (BFC); OREX_175 at 5-6 (Oracle ln. 134-137, Rimini ln.

24  42-46).  "There's nothing that controls the use and choice of these particular names … and we see

25  the exact same code in the Rimini file."  Tr. 1394:5-1395:6 (BFC); *see also id.* at 229:10-231:11

26  (BFC).  Both files also use the same variable name "SQL-CURSOR," which is not required.  Tr.

27  1395:7-20 (BFC); OREX_175 at 6 (Oracle ln. 139, Rimini ln. 48).

28  90.    Rimini also copied protected Oracle expression by using the same function name

18

"AA000-MAIN SECTION" to describe the main logic.  Tr. 1396:17-1398:11, 224:9-25 (BFC); OREX_175 at 18 (Oracle ln. 479, Rimini ln. 192).  "[T]he choice of that paragraph name is completely at the discretion of the programmer."  Tr. 1396:17-1398:11 (BFC).  Rimini's choice to use the same "MAIN-EXIT" statement from the same portion of the Oracle file is further proof of copying.  Tr. 1398:12-1399:20 (BFC); OREX_175 at 19 (Oracle ln. 547, Rimini ln. 233).

91.     Rimini also copied source code comments such as Oracle's "ADDITIONAL LIBRARY FUNCTION PARAMETERS."  Tr. 1081:5-21 (Astrachan); Tr. 1395:21-1396:16 (BFC); OREX_175 at 16 (Oracle ln. 415, Rimini ln. 165).  This comment is protected Oracle expression because it is "not constrained" and "could have been omitted entirely."  *Id.*

92.     Rimini also copied protected Oracle expression by using the same "ZZ000-SQL-ERROR SECTION," placing it in the same location as in the Oracle file, and including the same comment "SQL ERROR PROCESSING" and same exit statement.  Tr. 224:9-25, 225:16-226:11 (BFC); OREX_175 at 56 (Oracle ln. 1895-1909, Rimini ln. 481-495).

93.     Rimini also copied parameter names found in PSPTARRY.cbl, such as "ACTION FETCH," which Rimini could have called anything at all, such as "go get 'em."  Tr. 232:5-233:18 (BFC); OREX_175 at 29 (Oracle ln. 890, Rimini ln. 365).  Rimini also copied some of the same unconstrained code referencing the Oracle API PTPSQLRT.  For example, instead of using the parameter name "STATEMENT," Rimini copied the parameter name "SQL-STMT" from the Oracle file.  Tr. 1390:1-1393:5 (BFC); OREX_175 at 20 (Oracle ln. 592, Rimini ln. 255).

94.     Formatting similarities provide further evidence of copying.  In both the PSPTARRY.cbl and RSPCMPAY.cbl files, "pic" words are aligned in column 39, "value" words are aligned in column 51, "comp" words are aligned in column 63, and many of the copy statements are aligned in the same column, none of which were required.  Tr. 1382:21-1385:17 (BFC).  The "flower boxes" surrounding comments in both files alternate between "*" and "/*" in the same idiosyncratic manner.  Tr. 1380:18-1382:20 (BFC); *see also* ECF No. 1531-3 at slides 9-10; DTX-501; DTX-502.  And both files include two spaces rather than one before and after the word "TO" in the same parts of the file.  Tr. 208:15-209:25 (BFC).

95.     Based on these unconstrained similarities, the RSPCMPAY.cbl file is substantially

1    similar to the PSPTARRY.cbl file.  Tr. 236:18-237:2 (BFC); *accord* Tr. 1399:21-1402:17 (BFC).

2    96.    Professor Astrachan did not speak to anyone at Rimini about RSPCMPAY.cbl and

3    whether it was copied from an Oracle file.  Tr. 1075:24-1077:20, 1463:15-22 (Astrachan).

4    97.    Professor Astrachan instead applied an arbitrary and significantly flawed analytic

5    dissection methodology.  The five-element analysis he applied during the contempt hearing

6    differs from the eight-element test he previously used in *Rimini II*.  Tr. 1085:15-1086:10, 1088:4-

7    1089:1 (Astrachan); Tr. 1375:17-1378:22 (BFC).  Professor Astrachan provided no citation to

8    support his initial eight-element test, nor had he written or spoken about analytic dissection when

9    he applied it.  Tr. 1086:11-1087:14 (Astrachan).  His unsupported methodology is "difficult" to

10   apply, not "reproducible," and outcome driven.  Tr. 1377:16-1379:6 (BFC).  Professor Astrachan

11   absurdly opined that one would need to apply analytic dissection even if Rimini copied 99 or

12   even 100 percent of an Oracle file.  Tr. 1089:17-1090:16 (Astrachan).

13   98.    Professor Astrachan also testified that he expects professional software developers

14   to follow convention when writing code, but he filters out (and deems unprotectable) code that

15   conforms to convention as a part of his analytic dissection analysis.  Tr. 1093:7-13, 1094:18-25

16   (Astrachan).  His analysis would thwart the Injunction because it would mean that, contrary to the

17   jury verdict, all software is expected to be conventional and not copyrightable.  At the same time,

18   Professor Astrachan agrees that software programming is "absolutely" a creative process and an

19   "art" rather than a science. Tr. 1095:2-12 (Astrachan).

20   **H.    Rimini Created a Derivative Work 1099 Update (RS18F07) on Its Systems
21          and Through Cross-Use of Customer Environments (Violation No. 6)**

22   99.    The RS18F07 update was specifically tailored to operate only with and modify

23   existing PeopleSoft environments.  Tr. 240:21-248:15 (BFC).  The modified PeopleSoft

24   environment created by the update is a derivative work.  Tr. 1017:21-1018:7 (Astrachan).

25   100.    The RS18F07 update included two SQR source code files that (a) modify and

26   extend PeopleSoft environments and functionality to generate 1099 tax forms and (b) copy

27   PeopleSoft source code into the SQR files using #include statements when executed or tested.  Tr.

28   240:21-246:18, 1405:18-1407:20 (BFC); Tr. 1020:6-1022:1, 1110:16-1113:9 (Astrachan);

20

OREX_90 at 11-43.  It is undisputed that these SQR programs use and depend upon, and could not run or compile without, a PeopleSoft environment and the PeopleSoft source code referenced in their #include statements.  Tr. 241:6-14, 244:19-245:11 (BFC); Tr. 1020:6-17 (Astrachan).

101.   The SQR programs were created in 2011 (OREX_90 at 11, 28; Tr. 241:22-242:14 (BFC)), when Rimini used locally hosted "generic environments" to develop updates for multiple customers.  Tr. 605:20-606:11 (Benge).  Rimini stored and modified those programs on its systems as part of the RS18F07 update (ECF No. 1469-s at 21), and "completed" their development and unit testing in a PeopleSoft environment associated with Easter Seals.  DTX-602 at 2-3; DTX-603 at 2-3; Tr. 681:9-683:19, 685:8-686:21 (Benge).

102.   RS18F07 also includes data mover scripts, or "DMS" files, which are source code files written in a proprietary Oracle source language that cannot operate or run without using PeopleSoft utility tools.  Tr. 239:20-240:3, 1408:2-15 (BFC); Tr. at 702:15-18 (Astrachan).

103.   Mr. Benge contended that the DMS files were written in a text editor on Rimini's systems (Tr. 702:19-22 (Benge)), but the evidence clearly and convincingly shows that Rimini used PeopleSoft utility tools to develop the DMS files.  First, Rimini's records show the development of the DMS files "was completed in the OAKs [Oakland County, Michigan] environment."  DTX-604 at 2; Tr. 815:11-816:18 (Benge).  Second, Rimini must have used PeopleSoft utility tools to write the DMS scripts to capture the PeopleSoft database tables and entries recited therein.  Tr. 1408:16-1411:7, 246:23-248:15 (BFC); OREX_90 at 3-5.  Third, Rimini used Oracle's PeopleSoft utility tools to test the DMS files.  Tr. 1408:21-1411:11 (BFC).

104.    On January 3, 2019, Rimini emailed the RS18F07 update from Rimini's computer systems to Easter Seals.  OREX_90 at 1.

105.   The RS18F07 SQR and DMS files emailed to Easter Seals were "one version for all clients" (Tr. 823:9-13 (Benge)), and Rimini emailed identical versions of those files from Rimini's systems to numerous other Rimini customers during the post-Injunction period, including EZCORP, Pikeville Medical Center, Texas Children's Hospital, and NASDAQ.  Tr. 819:3-821:4, 823:9-13 (Benge); OREX_429; OREX_430; OREX_431; OREX_432.

106.   Oracle's PeopleSoft license agreement with Easter Seals does not authorize Rimini

21

to create derivative works on behalf of Easter Seals because the license provides that while the "Licensee" (Easter Seals) may "create and use derivative works," "Designates" like Rimini may only be "provide[d] access" to the PeopleSoft software.  The license further provides that "Licensee shall not . . . Except as expressly provided herein . . . use the Software to create new applications, modules, products or services."  OREX_42, §§ 1.1(b)-(c), 2.1(k).

107.   Oracle's PeopleSoft license agreement with Easter Seals also does not authorize Rimini (or Easter Seals) to "commercialize or transfer" PeopleSoft software or any "modifications and alterations thereto and derivative works thereof."  OREX_42 at 2, § 4.1.

108.   Rimini's development team does not generally look at its customers' PeopleSoft license agreements.  Tr. 813:6-814:8 (Benge).

**I.     Rimini Developed a "One Code for All" File, rsiqtrtx.sqr, as Part of HCM200105 and Supplied the File to Rockefeller Group International and Home Shopping Network (Violation No. 10)**

109.   The Rimini HCM200105 update included rsiqtrtx.sqr, a derivative work that depends on a PeopleSoft environment and PeopleSoft source code for its operation, was designed to modify PeopleSoft software, and copies PeopleSoft source code into itself when executed or tested using #include statements.  Tr. 243:16-246:18, 291:3-11 (BFC); DTX-1008 at 2.

110.   Rsiqtrtx.sqr was a "one version for all clients" program (OREX_52 at 1; OREX_53 at 20; Tr. 284:23-286:11), that Rimini developed for an "initial set of clients in 2018" (ECF No. 1469-s at 22), and tested in October 2018 using a PeopleSoft environment associated with Santa Clara Valley Water District.  Tr. 313:11-315:23 (BFC); OREX_0127 at 1-2.  This is yet another Rimini business practice: use derivative works ("one version for all clients") developed in a PeopleSoft environment associated with a current customer for future customers.

111.   Rimini did not independently develop rsiqtrtx.sqr in environments associated with new customers Rockefeller Group International or Home Shopping Network, but rather sent the already developed file directly to those new customers multiple times during the second half of 2019.  Tr. 286:13-287:19, 294:2-295:23 (BFC); ECF No. 1469-s at 21-22.

112.   Rimini did not test HCM200105 for Home Shopping Network.  Rimini maintains Spira records for each test of a Rimini update (Tr. 916:24-917:1 (Davenport)), but none exist for

22

HCM200105 and Home Shopping Network.  Tr. 316:9-23 (BFC); OREX_0127.  The "environment spreadsheet" and apply update logs relied upon by Rimini (OREX_49; DTX-1004; DTX-1009, DTX-1013) do not establish testing because there is no matching Spira record and they do not provide any dates of testing or identify what, if anything, was tested for Home Shopping Network.  Tr. 295:24-297:2 (BFC); Tr. at 899:10-23, 915:20-917:1 (Davenport).

113.    Even if Rimini tested HCM200105 for Home Shopping Network, Rimini engaged in cross-use because Home Shopping Network was "still being provided an update that already existed in advance [of] that test."  Tr. 297:3-11 (BFC).

### J.    Rimini Copied JD Edwards Source Code into Its Technical Specification (Violation No. 9)

114.    Rimini copied JD Edwards software source code into the technical specification for its JDE105328 update (OREX_80) from the JD Edwards source code files R89078652 and P06767.  Tr. 329:20-330:3 (BFC); OREX_212; OREX_220; OREX_219.

115.    R89078652 is JD Edwards EnterpriseOne software source code.  Tr. 332:23-333:23 (BFC); OREX_220.  Rimini copied multiple lines of code from this file into its technical specification (with portions replaced by ellipses) as well as source code comments.  Tr. 332:23-339:21 (BFC); OREX_212.  Rimini copied protected Oracle expression because there is "no constraining factor" on the source code that was copied and "a sufficient quantity of this code [is] dispositive in identifying" where to insert modifications.  Tr. 339:22-24, 340:16-341:1 (BFC).

116.    P06767 is JD Edwards World software source code.  Tr. 342:10-343:12 (BFC); OREX_219.  Rimini copied multiple lines of code, as well as a source code comment, from P06767 into its technical specification.  Tr. 343:13-347:6 (BFC); ECF No. 1531-2 at slides 45-46.

117.    Instead of this literal copying, Rimini could have used a "narrative explanation" to identify where these source code files needed to be modified.  Tr. 341:3-342:9, 347:7-348:18 (BFC).  This Rimini copying also violated its AUP.  Tr. 348:19-25 (BFC).

118.    Rimini modified its technical specification after the Injunction went into effect, and then used that technical specification to deliver its JDE105328 update to customers in December 2018.  Tr. 586:14-24 (BFC); OREX_147 at 4, 9; OREX_148 at 1; OREX_149 at 1.

23

119.    Again, Rimini defended its business practice of copying JD Edwards source code into technical specifications as long as Rimini did not run the code that it copied and used the code as "markers" or "pointers" showing where to place modifications. Tr. 1251:5-15, 1252:4-8 (Mackereth); Tr. 1096:2-1099:1 (Astrachan).  Technical specifications are an integral part of Rimini's JD Edwards support processes.  Tr. 1123:2-1126:9 (Mackereth).

### K.    Rimini Unlawfully Reproduced the Oracle Database File prvtsidx.plb (Violation No. 8)

120.    Rimini reproduced a copy of the prvtsidx.plb file on its computer systems. OREX_0228; Tr. 351:5-20; 356:5-8 (BFC).

121.    Ms. Frederiksen-Cross initially identified prvtsidx.plb file as a JD Edwards file because it was included in JD Edwards EnterpriseOne version 9.0.  Tr. 115:8-22, 351:15-20 (BFC).  Dr. Astrachan agreed that prvtsidx.plb was "a JDE file."  Tr. 353:3-8 (BFC).  The parties now agree that prvtsidx.plb is an Oracle Database file.  ECF No. 1486 at 4-5.

122.    Australian Bureau of Statistics uploaded prvtsidx.plb to Salesforce in December 2018 after Rimini asked that customer to "review 'prvtsidx.plb' script" and "grab" the "SQL statements."  OREX_1342 at 5, 7-8; Tr. 353:13-355:15 (BFC).  Rimini opened (and thus reproduced) prvtsidx.plb to diagnose a problem in the code.  Tr. 355:16-356:8 (BFC).

123.    The prvtsidx.plb file on Rimini's computer systems is substantially similar to a version of the prvtsidx.plb file produced by Oracle.  *Compare* OREX_228 *with* OREX_226; OREX_0174 (side-by-side code comparison); Tr. 356:9-357:18 (BFC).

124.    After receiving prvtsidx.plb, Rimini never instructed this customer not to upload such files onto Salesforce; Rimini also violated its AUP.  Tr. 357:19-358:14 (BFC).

125.    The Oracle License and Service Agreement (OLSA) for Australian Bureau of Statistics does not permit this copying by Rimini.  Section C of the OLSA provides that the licensee has "the limited right to use [Oracle Database] and receive any service [the licensee] ordered solely for [the licensee's] internal business operations …. [The licensee] may allow [its] agents and contractors (including, without limitation, outsourcers) to use [Oracle Database] for this purpose …."  DTX-803 at 5; DTX-804 at 5 (Section C).  Section D of the OLSA further

24

provides that the licensee "may make a sufficient number of copies of each program (other than for Siebel programs), for [the licensee's] licensed use …." *Id.* (Section D).

## III.   CONTEMPT AND FURTHER REMEDIAL ACTIONS ARE WARRANTED[2]

126.    Rimini's Injunction violations—discovered from limited discovery and despite Rimini's poor recordkeeping—were not isolated incidents, but rather arose from Rimini's ongoing business practices intended to take business from Oracle, as well as bad faith and failure to take all reasonable steps to comply with the Injunction.  Rimini will not cease its efforts to build its business through copyright violations without serious attention from this Court.  Because Rimini is not in substantial compliance with the Injunction, further measures are necessary, including third-party monitoring of Rimini's support practices.

127.    The record also demonstrates that Rimini's recordkeeping is "woefully inaccurate," incomplete, and below applicable industry standards.  Tr. 112:5-21, 360:6-362:14 (BFC).  Specific recordkeeping requirements should be imposed on Rimini to ensure compliance with the Injunction and prevent additional Injunction violations from being obscured.

128.    Limited further discovery is also warranted to assess monetary damages. In addition, Oracle should be entitled to an award of attorneys' fees.

## ORACLE'S PROPOSED CONCLUSIONS OF LAW

### A.   Violation 7

1.    Rimini is in contempt of Paragraph 8 of the Injunction, which prohibits the copying of "J.D. Edwards software source code," which Rimini now calls JD Edwards "open code."  Rimini knowingly defied the Injunction by not changing its JD Edwards support processes.  This is the same conduct that the jury found to be a copyright violation.

2.    Rimini acted in bad faith by unilaterally adopting its "open code" and "closed code" interpretation of Paragraph 8 of the Injunction in violation of its plain terms.  Rimini failed to raise these arguments at trial, during the two rounds of briefing on Oracle's Motion for a Permanent Injunction, and during its two appeals of this action to the Ninth Circuit.  *E.g.*, *United*

---

[2] Oracle proposes supplemental briefing regarding appropriate and reasonable recordkeeping requirements and a third-party monitorship.

1   *States v. Patterson*, 878 F.3d 215, 218 (6th Cir. 2017); *Omni Outdoor Advertising, Inc. v.*

2   *Columbia Outdoor Advertising, Inc.*, 974 F.2d 502, 505 (4th Cir. 1992).

3        3.     Rimini's arguments about the meaning of "J.D. Edwards software source code" are

4   an improper collateral attack on the Injunction.  These arguments cannot be asserted in these

5   contempt proceedings because appellate review of the Injunction was available to and twice

6   sought by Rimini.  *W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 108 (5th Cir. 1994).

7        **B.**     **Violation 1**

8        4.     Contempt is warranted for Rimini maintaining PeopleSoft files and documentation

9   on its systems associated with R.R. Donnelley, G6 Hospitality, and Texas Children's Hospital.

10  Rimini is engaging in the same copying of PeopleSoft software and documentation that this Court

11  previously held was unlawful in its summary judgment ruling.  ECF No. 474 at 12-13.  For each

12  of the violations at issue, Rimini admittedly violated its own AUP and deliberately made

13  *additional* copies of the files or used them to provide support to its customers.

14       5.     Rimini also has not substantially complied with the Injunction given (1) the

15  additional violations established with respect to Evergreen Support, Guest Services, and the

16  University of Oklahoma Health Sciences Center and (2) Rimini's failure to take all reasonable

17  steps to remove copies of Oracle copyrighted materials from its computer systems, report them as

18  AUP violations, and educate its employees and customers about its legal obligations.

19       **C.**     **Violations 2–4**

20       6.     Rimini violated Paragraph 4 of the Injunction by using and reproducing the

21  PeopleSoft software in environments associated with City of Eugene (*i.e.*, COEX) to develop

22  HCM200049 for Spherion, Smead, and Matheson Trucking and to troubleshoot the W-2 printing

23  issue experienced by Johnson Controls.  Rimini's use and reproduction of PeopleSoft did not

24  support City of Eugene's "internal data processing operations."  Injunction ¶ 4.

25       7.     Rimini violated Paragraph 6 of the Injunction by using and reproducing the

26  PeopleSoft software in environments associated with City of Eugene (*i.e.*, COEX) to "develop or

27  test software updates and modifications for the benefit of" Spherion, Smead, Matheson Trucking,

28  and Johnson Controls and also to "support, troubleshoot, [and] perform develop or testing" for

these same customers.  Injunction ¶ 6; Tr. 283:7-12 (BFC).

8.      Even if City of Eugene was in scope to receive the HCM200049 update (or the proposed solution to the W-2 printing solution experienced by Johnson Controls), Rimini's development and testing in COEX was not "*work done solely on behalf of the City of Eugene.*" Tr. 1361:22-1364:14 (BFC) (emphasis added).  Rimini thus violated Paragraphs 2(a), 4, and 6 of the Injunction, as well as terms of the City of Eugene's PeopleSoft license.  Injunction ¶ 2(a) ("Rimini Street shall not reproduce, prepare derivative works from, or distribute PeopleSoft … software or documentation *unless **solely** in connection with work for a specific customer that holds a valid, written license agreement*") (emphasis added); *id.* at ¶¶ 4, 6; OREX_402 at 7-8.

9.      In its *Rimini I* summary judgment ruling, the Court held that Rimini could not use development environments associated with one customer "to develop and test software updates for [that customer] and other Rimini customers."  ECF No. 474 at 13.  In its *Rimini II* summary judgment ruling, the Court held that "[i]f [an] update was being created and tested in the City of Eugene's environment, for other customers, the court must find that it was not being developed and created solely for City of Eugene's 'internal data processing operations.'"  *Rimini II*, ECF No. 1253 at 53.  The Court additionally held that the City of Eugene "license agreement expressly prohibits distribution and/or marketing of [Rimini's] modifications, created and tested for City of Eugene, to anyone else."  *Id.*  Because Rimini is engaging in the same conduct that the Court previously held unlawful (*i.e.*, using PeopleSoft environments associated with City of Eugene to prototype updates and fixes for multiple customers and then distributing those updates and fixes to multiple customers), Rimini is in contempt of the Court's Injunction.

10.     Contempt is also warranted because Rimini's cross-use of PeopleSoft environments associated with the City of Eugene illustrates Rimini's pattern and practice of treating easy-to-access environments as the functional equivalent of generic environments that the Court found—over seven years ago—to be infringing.  ECF No. 474 at 8-15.  These Injunction violations are also emblematic of Rimini's business practices that cross-use PeopleSoft environments to provide informal delivery of updates to customers.

11.     With its conduct at issue in Violation Nos. 2-4, Rimini engaged in at least three

27

1   acts of cross-use in just three business days (January 24, 25, and 28, 2019) using the same

2   PeopleSoft environments associated with City of Eugene, confirming that cross-use remains the

3   centerpiece of Rimini's support practices.

4          12.    Whether the HCM200049 update is a derivative work is irrelevant to the Court's

5   determination that Rimini engaged in prohibited cross-use.  *See Rimini II*, ECF No. 1253 at 54

6   (finding cross-use "[e]ven if the individual update was not a derivative work").  In any event, the

7   HCM200049 update is a derivative work for the same reasons articulated in the Court's *Rimini II*

8   summary judgment order.  *Id.* at 52–53; Tr. 479:5-480:8, 481:4-13 (BFC).

9          13.    Rimini's repeated re-use of knowledge and know how hypotheticals are irrelevant

10  to its cross-use violations; Ms. Frederiksen-Cross's cross-use opinions are not based on Rimini's

11  reuse of knowledge.  Tr. 584:13-19 (BFC).

12         **D.     Violation 5**

13         14.    Rimini violated Paragraph 5 of the Injunction by copying protected expression

14  found in Oracle's PSPTARRY.cbl file into its RSCPMPAY.cbl file.  Rimini's RSCPMPAY.cbl

15  file is also substantially similar to and a derivative work of Oracle's PSPTARRY.cbl file.  Rimini

16  did not contest and the jury was instructed at trial that Rimini had copied the "original"

17  copyrighted software of Oracle.  ECF No. 880 at 25 (Instruction No. 23).  Rimini's analytic

18  dissection arguments improperly seek to relitigate the issue of the originality and protection of

19  Oracle's copyrighted works after the jury verdict and after the Injunction.  Under this argument,

20  Rimini would be free to copy (in violation of the Injunction) an unlimited number of exact lines

21  of Oracle code, as well as the structure and arrangement of Oracle's protected expression.

22         15.    Analytic dissection is not required to prove copyright infringement where there is

23  evidence of direct copying of literal code.  *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065 (9th

24  Cir. 2016); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996); *Brocade Commc'ns Sys., Inc. v.*

25  *A10 Networks, Inc.*, No. C 10-3428 PSG, 2012 WL 13170064, at *3 (N.D. Cal. July 13, 2012).

26         16.    Ms. Frederiksen-Cross performed analytic dissection, and her opinions are the

27  result of reliable principles grounded in computer forensics as well as COBOL programming

28  within PeopleSoft.  Experts performing analytic dissection are not required to follow one

1  "formal" methodology.  *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 694

2  (N.D. Ill. 2004); *In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v. Countrywide Fin.*

3  *Corp.*, 984 F. Supp. 2d 1021, 1036 (C.D. Cal. 2013).

4      **E.**    **Violation 6**

5      17.    The RS18F07 update, and its SQR and DMS files, are derivative works of Oracle's

6  PeopleSoft software.  The Court has previously held that if an update "only interacts and is

7  useable with PeopleSoft and it was designed using Oracle's utility tools software, it substantially

8  incorporated protected material" and thus qualified as a derivative work under *Micro Star v.*

9  *FormGen Inc.*, 154 F.3d 1107 (9th Cir. 1998).  *Rimini II*, ECF No. 1253 at 52-53.  The RS18F07

10  update and its SQR and DMS files meet these derivative work prerequisites.  RS18F07 and its

11  SQR files also substantially incorporate protected Oracle expression by copying PeopleSoft

12  source code with #include statements and relying on the PeopleSoft infrastructure.

13      18.    Rimini's use of PeopleSoft utility tools to develop its updates is not "the only

14  condition under which they could be derivative works."  Tr. 246:23-248:15 (BFC).  The evidence

15  nevertheless establishes that Rimini used these Oracle tools to develop and test its RS18F07

16  update.  Findings of Fact 102–103.

17      19.    Because Rimini modified, stored, and distributed RS18F07 (and its SQR and DMS

18  files) from its own computer systems, Rimini violated Paragraph 5 of the Injunction.

19      20.    Rimini also violated Paragraphs 2(a), 4, and 6 of the Injunction because it

20  developed and tested its "one version for all clients" SQR files that were not solely for Easter

21  Seals in the PeopleSoft environments associated with that customer, developed and tested the

22  DMS files comprising this update using the PeopleSoft environments associated with Oakland

23  County, and then sent identical copies of those files to other Rimini customers.  This Rimini

24  cross-use is not an isolated incident, but rather part of Rimini's business practice.  Tr. 684:15-25,

25  816:19-818:5 (Benge).

26      21.    Rimini's development and distribution of the RS18F07 update was not permitted

27  by Easter Seals' PeopleSoft license agreement.  Findings of Fact 106–107.

28

29

**F.     Violation 10**

22.     Rimini's development and testing of rsiqtrtx.sqr using one customer's environment and distribution of the "one code for all" rsiqtrtx.sqr file to other customers, including new customers Rockefeller Group International and Home Shopping Network, was cross-use in violation of Paragraphs 2(a), 4, and 6 of the Injunction.  *See* Tr. 490:2-497:12 (BFC).  Rsiqtrtx.sqr is also a derivative work of PeopleSoft.  Findings of Fact 109–110.

23.     Contempt is warranted because Rimini is engaging in the same cross-use that this Court previously held was unlawful.  ECF No. 474 at 13.

24.     Rimini's alleged "temporal conundrum"—that there can be no cross-use for future Rimini customers (Tr. 81:5-17)—is directly contrary to the Ninth Circuit's holding that "[a]ny work that Rimini performs under color of a license held by a customer for other existing customers cannot be considered work in support of that particular customer.  *The same logic applies to work Rimini performs for unknown, **future** customers*."  *Oracle*, 879 F.3d at 957 (emphasis added).

**G.     Violation 9**

25.     Rimini copied J.D. Edwards software source code into its technical specification for its JDE105328 update, which Rimini then used to deliver the JDE105328 update to customers.

**H.     Violation 8**

26.     Rimini violated Paragraph 15 of the Injunction by reproducing the prvtsidx.plb Oracle Database file on its systems.

27.     The Court previously ruled in its August 13, 2014 summary judgment order that "the plain language of Section C [in the OLSA] does not authorize Rimini's copying of the database software."  ECF No. 476 at 14.

28.     The Court also ruled in its August 13, 2014 summary judgment order that "the plain, unambiguous language of Section D [in the OLSA] does not expressly authorize Rimini to make copies of the licensed [Oracle Database] software."  ECF No. 476 at 15.

29.     Contempt is warranted because Rimini is engaging in the same reproduction of Oracle Database that this Court previously held was unlawful.

1

2    DATED: October 19, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS & BOCKIUS LLP

By: _____ */s/ Benjamin P. Smith* _____
                Benjamin P. Smith

Attorneys for Plaintiffs Oracle USA, Inc., Oracle
America, Inc. and Oracle International
Corporation

31

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on the 19th day of October, 2021, I electronically transmitted the

3    foregoing ORACLE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW to

4    the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic

5    Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

6    MORGAN, LEWIS & BOCKIUS LLP

7    DATED: October 19, 2021

8    By:  _____  */s/ Benjamin P. Smith*
                          Benjamin P. Smith

9

10    Attorneys for Plaintiffs Oracle USA, Inc., Oracle
       America, Inc. and Oracle International
11                          Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1